

January 11, 2019

*Via Electronic Filing*
Honorable Lewis A. Kaplan, U.S.D.J.
United States Courthouse
500 Pearl Street, Courtroom 21B
New York, NY 10007

Re:   In re: Customs and Tax Administration of the Kingdom of Denmark
      (SKAT) Tax Refund Litigation, Docket Number 18-md-2865 (LAK) ("MDL")

Dear Judge Kaplan:

I am in receipt of the Caplin & Drysdale proposed order that describes as its purpose "to outline the role of Mark A. Allison" as Lead Counsel for the now designated Consolidated Defendants in the MDL. We appreciate that effort, but as you predicted, I have some concerns.

I argued in the November 20, 2018 Status Conference that this case is not like "usual" MDL cases where the Defendants might be identically situated for purposes of advancing the task of coordinating discovery. This case is unusual for a number of reasons that follow.

Mr. Allison represents a large number of pension plans who have been sued, but not a large number of actual clients. Of the over 100 cases where Mr. Allison is identified as counsel, there are more than 100 pension plans named as defendants, but only five (5) individual trustees serve ion that role for those pension plans, meaning those five (5) persons act as a trustee for multiple plans. I further understand, that each of those pension plans has a single participant, namely the trustee of the particular pension plan. The proper analysis of the number of clients represented, therefore, is the number of trustees and that amounts to one client per trustee. Similarly, other counsel with cases involving multiple pension plans have a single trustee acting for multiple single participant pension plans. I do not know why one individual would act as trustee for twenty, thirty or more pension plans when that person is the only participant as well as the trustee. Mr. Allison's client, Mr. Tucci, for example, acts as trustee for twenty-seven (27) different single participant pension plans, Mr. Lehman acts as trustee for twenty-one (21) pension plans and Mr. Bradley acts as trustee for six (6) actual plans; that is fifty-four (54) pension plans, more than half of Mr. Allison's cases but only three (3) clients. All of this dispels the notion that somehow representing a large number of defendants in these cases assures that appointing that counsel accommodates the interests of the group as a whole. It does not.

**HANAMIRIAN LAW FIRM**
MAIN STREET TO WALL STREET

Next, I understand that each of those Defendants represented by Lead Counsel participated in the "investment" that is the subject of this litigation. Each of those Defendants, I understand, may have invested their monies through Sanjay Shah and his entity, Solo Capital Corporation. Sanjay Shah has been identified internationally as a subject and target of criminal investigations surrounding these types of transactions in Denmark and elsewhere I understand from various press accounts, that the Danish government has sued Sanjay Shah in the United Kingdom and has sought to otherwise obtain information from Mr. Shah whom remains in Dubai, protected from extradition. These "Sanjay Shah Defendants" that comprise the pension plans and trustees represented by Lead Counsel are persons who may have been aware of Sanjay Shah and Solo Capital's purported wrongful conduct; we do not know, but my clients may have to differentiate themselves from those Sanjay Shah Defendants at some point and my clients do not want to necessarily wait until after they have followed Lead Counsel's path to realize that is a mistake.

The very process of appointing a Lead Counsel under Rule 23 places the initial onus of appointment on the attorneys and there is not an obligation on the part of the Lead Counsel to be fair and just and consider and further the interests of those defendants with whom his clients may perceive as adverse or merely just not helpful to their defense. The Lead Counsel is not a fiduciary vis-à-vis my clients, and if I am not heard to raise these issues, it is essentially my fault if the designation of Lead Counsel harms my client's defense. I am not doing that.

In contrast to the Sanjay Shah Defendants history in this matter, my clients each participated in the investment that is the subject of this litigation through EDF & Mann, in London, England, one of the oldest brokerage/investment houses in the World. My clients' facts are different, and their defenses are going to be different than the Sanjay Shah Defendants. In addition, each of my clients had a single plan or, at most, two (2) plans, one for each active business they were engaged in and each plan held significant assets, both before and after these investments. Those pension plans, in some instances, held significant dollar figures representing a lifetime of plan contributions. Additionally, my clients who had pension plans in place complied with all Department of Labor and Internal Revenue Service reporting and other obligations. Some of those client's plans were administered by third-party pension plan administration companies. I do not know if any of that is the case with the Sanjay Shah Defendants, but the administration of twenty, thirty, forty or more pension plans by one trustee is costly and burdensome. I note too that an individual is generally not permitted to participate in more than one pension plan, with few exceptions, and those exceptions allow only a total of two pension plans per individual participant. There is no authority for one individual participating in forty (40) pension plans.

My clients are sophisticated professionals with experience and background in the investment arena. One of my clients considered and rejected the Solo Capital platform of investment in favor of EDF & Mann, expressing concern for the validity of the Solo Capital format. Others did not know who Sanjay Shaw was before this proceeding and relied on EDF & Mann for

# HANAMIRIAN
# LAW FIRM
## MAIN STREET TO WALL STREET

the validity of the transactions and the investment. Two of my clients have placed funds in what might be described as previous iterations of the investment that is the subject of this litigation. Those clients have had to formally address the alleged wrongful conduct of Sanjay Shah and others involved in Solo Capital. Some of my clients have had to respond to various inquiries from various domestic and international governmental bodies. Those inquiries have taken place over the past six (6) years in varied jurisdictions. The efforts expended by counsel, me, to address the inquiries have been extensive and deliberate. The responses involved evaluation of the appropriateness of invoking domestic Fifth Amendment rights or Fifth Amendment right-equivalents in international settings. The economic stakes in those inquiries were significant. I do not believe, but do not know whether any of the Sanjay Shah Defendants are also involved in those inquiries.

      My clients and the Sanjay Shah Defendants are not similarly situated, and I cannot have Lead Counsel or any other counsel act for my clients at any level or stage of any proceeding. Any action or inaction in this case must account for the parallel criminal investigation in Denmark, and any other civil and criminal investigations that are or might be ongoing or contemplated in other jurisdictions. Lead Counsel cannot perform that task for my clients, not because he is not competent, but because we may have differing interests and my clients don't want Lead Counsel acting for the, at the same time he is acting for the Sanjay Shah Defendants. There is no such thing as an innocuous act in civil litigation that does not or may not have some meaning in a criminal case. There are no ministerial acts that Lead Counsel can be delegated or designated to perform for my clients that do not require an analysis of the potential collateral consequences or effect in any other proceeding, or just in general and with an eye to the particular client.

      The Sanjay Shah Defendants have facts underlying their claims that are materially different that those of my clients. The likely event is that some of the EDF & Mann and other Defendants may have to point to the Sanjay Shah Defendants, or persons with whom they have been involved, as persons to whom liability should attach. I know with relative certainty that my clients are not aligned with the Sanjay Shah Defendants, at a minimum, because I have one client whom reviewed and rejected the Solo Capital investment platform. We are, or will be adverse to one other, even if not in this litigation, in some other existing proceeding in another country and potentially in any criminal investigation or proceeding in Denmark. We know there is an active criminal investigation in Denmark, both from press accounts and from the Motion for Letters Rogatory. As a result, I cannot share strategies, concerns, objections, and privileges with Mr. Allison's clients. The "wild card" in these cases is the existence of the criminal investigation in Denmark and the civil and criminal investigations in other jurisdictions. Mr. Allison may not have a concern as it appears that all of his Defendants are similarly situated, but I cannot make a mistake and assume his clients' interests are aligned with my clients or, again, wait until we are further down the road in this case to present my obligations and concerns.



During the roughly one-month period this Court's Order has been in place, I have been asked by Lead Counsel about whom might be an appropriate "test case", whom might be appropriate to provide deposition testimony or responses to the discovery, and I have not materially participated in the dialogue because I cannot for reasons I identify. I have been a party to one phone conversation and a handful of email with Lead Counsel. I know many, many more phone conversations have taken place and many emails have been exchanged, but I do not know the substance of either. How is it that Lead Counsel can differentiate between the role of defense counsel and the role of Lead Counsel and not have those roles overlap and that creates a conflict in this case. I simply cannot share mental impressions and defense strategy with counsel who is not aligned with my clients interests and being "forced" to do so in the name of judicial efficiency is a form of denial of my clients rights at a minimum, under the 5th Amendment. Respectfully, this is a runaway train in that regard. This Court's Order was entered and immediately discovery requests were propounded on the non-SDNY Defendants with a December 31, 2018 deadline for responses. How is it that we are compelled to provide discovery and the Lead Counsel is acting in that role with the Plaintiffs' counsel, agreeing to terms on behalf of the Defendants, when that Lead Counsel's scope of authority in that regard has not yet been established. If the Lead Counsel's scope of authority had been established, this Court would not have set forth this process for the filing of the proposed order and responses.

There is a conflict with the Sanjay Shah Defendants and I should not be compelled to disclose to the Court and to all counsel and parties to this litigation all of the bases for a conflict at every turn. As contemplated under the proposed order, I would have to confer with Lead Counsel in each instance where I disagree and presumably provide the basis for my disagreement. Thereafter, I understand that I may not be able to deal directly with Plaintiff's counsel as I would in the normal course and any issue I might raise would have to be addressed by the Court. Respectfully, I cannot be forced to articulate my basis for any objection to any part of this process to a potential adversary and then be identified as so disagreeing in each instance. It is prejudicial to my clients without any articulated overriding need that supersedes my client's rights.

This is the defense of a multi-billion-dollar fraud case with potential criminal ramifications. It's going to be a fight. In the normal course of the defense of a matter with this type of sensitivity, nobody outside of the attorney-client privilege relationship would be aware of the decision-making or its process and the fact of a MDL should not change that legally protected cocoon. I am not saying I will not participate in discovery on the basis of those Fifth Amendment and other defenses, but rather, that the decision-making as to whether or not to participate in any particular component of discovery is not something I can share with any other counsel or party that is not identically aligned and even then, I should not be compelled or dictated to about how to defend my cases. This proposed form of order and the format for proceeding in this case does just that. It makes me show my cards and the process is not even the doing of the Plaintiff. I suggest that even criminal joint defense agreements only contemplate certain levels of sharing and they

HANAMIRIAN LAW FIRM, P.C.
40 E. MAIN STREET MOORESTOWN, NJ 08057    30 WALL STREET NEW YORK, NY 10005
O 856.793.9092   F 856.793.9121   W hanamirian.com



certainly do not contemplate a single counsel's voice and a single counsel's participation in dialogue with an adversary. This case is more analogous to that criminal defense area then a MDL and we are forcing the MDL template over a criminal exposure. I suggest to the Court that this is not the usual MDL and that a single lead counsel may not work and that I cannot afford to allow the process to fail before I object. I should also not be compelled to perpetually distinguish and identify my clients as outliers, drawing a spotlight to them in each instance, as I am now.

I suggest that I can be identified as Co-Lead Counsel or "Co-Lead Executive Vice President in Charge of Nothing", but I need to participate in every part of the case, receive every communication and be a part of any dialogue with the Plaintiffs as the Plaintiffs are a governmental entity attempting to extract information from my clients and the Plaintiffs other arm is simultaneously conducting a criminal investigation. I have an objection to the process of discovery moving forward that I have not yet addressed and there remain unresolved Motions to Dismiss and an Order in my Connecticut case wherein the Court ordered the Plaintiff to respond to my Motion to Dismiss with facts to overcome a Rule 11 hurdle. Mr. Allison may or may not pursue these claims and defenses. That cannot be the right way to proceed.

If it helps, my narrow objection, of course, only pertains to my clients and perhaps the Court can allow everyone else to choose to follow Mr. Allison, or not, as the matter proceeds and that will achieve some uniformity and efficiency for the balance of the Defendants, but I simply cannot agree to allow Lead Counsel whose clients interests are different and likely adverse to those of my clients, to proceed on behalf of my clients as their advocate in any manner whatsoever, however ministerial that role may be identified and despite any limitations the Court may impose. I have to object and I have to continue to object until this Court tells me to stop. I suggest it is my obligation. This is not a simple case by way of the underlying claims. It is likely that despite the number of pension plans represented by Mr. Allison, that he has only three (3) or four (4) clients as the pension plans all have the same trustees and likely that same person is the sole participant. Mr. Allison's clients though have nearly over 100 pension plans. That fact concerns me about the transactions and whether those persons identified as trustees are actually trustees or whether these persons are merely the equivalent of "straw trustees". I do not suggest wrongdoing, but rather I suggest I am not advising my clients whom have decades old pension plans with significant assets to follow the lead of the Sanjay Shah Defendants as we know Sanjay Shah is the subject of at least one criminal investigation. We cannot follow "that guy" in the defense of our claims.

Counsel for the Sanjay Shah Defendants wants the lead counsel designation because despite what might be said about economy and efficiency of the litigation, they want to control the litigation and that is what is wrong with the single designation and the proposed form of order. The Order requires counsel to funnel all communications and efforts through Lead Counsel or be left designated with a Scarlet Letter. I would also be effectively gagged. Respectfully, make a motion and obtain a gag order, but so far that has not been done. All of the foregoing is not what



Rule 23 contemplates. Rule 23 contemplates that the parties' counsel confer to determine what is best for all of the defendants and if we cannot, then the court shall do so. I am asking the Court to do so. If that is not possible, I will ask the Court to conduct a plenary hearing. For that hearing, I would that Lead Counsel provide the source of the Sanjay Shah Defendants' engagement, the persons with whom Lead Counsel communicates for direction in the case and the source and basis for their fee payment.

This MDL is different because it is not just about money like a class action, and that makes mistakes particularly irreparable. If we have Co-Lead Counsel, Mr. Allison can, in each instance, identify that he speaks for all of whomever agrees with his proposed action and I will do the same. If I disagree, I am not forced to disclose the basis for my disagreement to all involved, but rather, I can try to work out my disagreements with Mr. Allison and/or Plaintiff's counsel first and then proceed to object or not. I am not mandated by an arbitrary process. The description of my role will assure my clients that no action and no communication is made on behalf of all defendants, but principally, my clients will know that no Defendant is left standing alone without a chair when the music stops. My clients hired me, some as many as ten (10) years ago to address the issues related in this case. They did not hire Lead Counsel or a lead counsel and my clients are not a commodity whose interests can be represented by literally anybody. This is a serious case with claims of civil fraud and it is shrouded by a seal order and a criminal investigation. I have a person or persons that are, in some manner, persons to whom questions have been directed in international criminal investigations relative to the investments that are the subject of this litigation. I should not need to say more and potentially prejudice any person in this case. There may be information sharing agreements, MLATS, or other informal sharing or interactions; I do not know, but I cannot agree to any action by any other counsel and be wrong and I cannot say "Oh, it doesn't matter, let Lead Counsel deal with it".

The proposed form of order articulates that Lead Counsel will be the clearinghouse for all information, arguments and thought processes. I object to the entirety of the proposed order for my clients. Given the scenario, I suggest there is no way I can agree to share thoughts, processes or allow another attorney to argue my client's objections. There will be instances where I cannot disclose the basis for any objections and I cannot agree to share that thought process with a potential adversary. This is a fraud claim and my clients' facts differ from Mr. Allison's clients and likely those of the other defendants. It is not appropriate or fair to a party to compel that party to have any part of their defense dictated by counsel not of their choosing, but rather the attorney of choice of their adversary and hope that it all works out; it is likely a deprivation of rights at a number of levels.



Thank you.

Respectfully,

John M. Hanamirian

JMH/lmt

HANAMIRIAN LAW FIRM, P.C.
40 E. MAIN STREET MOORESTOWN, NJ 08057   30 WALL STREET NEW YORK, NY 10005
O 856.793.9092   F 856.793.9121   W hanamirian.com