```
J1O8CUSC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

In Re:

CUSTOMS AND TAX ADMINISTRATION            18 MD 2865 (LAK)
OF THE KINGDOM OF DENMARK (SKAT)
TAX REFUND LITIGATION

------------------------------x

                                          January 24, 2019
                                          9:30 a.m.

Before:

            HON. LEWIS A. KAPLAN,

                                          District Judge

                    APPEARANCES

HUGHES HUBBARD & REED LLP
     Attorneys for Plaintiff SKAT
BY:  MARC A. WEINSTEIN
     WILLIAM P. MAGUIRE
     SARAH LOOMIS CAVE
     NEIL J. OXFORD

CAPLIN & DRYSDALE, CHARTERED
     Attorneys for Bradley London Pension Plan Defendants
BY:  MARK D. ALLISON
     ZHANNA A. ZIERING

WILLIAMS & CONNOLLY LLP
     Attorneys for Defendant Sander Gerber Pension Plan
BY:  AMY McKINLAY
     STEPHEN D. ANDREWS

MORVILLO, ABRAMOWITZ, GRAND, IASON & ANELLO P.C.
     Attorneys for Defendant Adam LaRosa
BY:  EDWARD M. SPIRO

J1O8CUSC

APPEARANCES (Cont'd)


GUSRAE, KAPLAN, NUSBAUM, PLLC
     Attorneys for Goldstein Defendants
BY:  MARTIN H. KAPLAN

KOSTELANETZ & FINK, LLP
     Attorneys for Defendants John Doscos, David Freelow,
      Sterling Alpha Plan and Delmar Plan
BY:  BRYAN SKARLATOS
     ERIC SMITH

JOHN M. HANAMIRIAN
     Attorney for Defendants Acorn Summers, Greggory Summer,
      Acron Nowell and Shree Shaw

SEWARD & KISSEL LLP
     Attorneys for Tew Defendants
BY:  THOMAS R. HOOPER

J1O8CUSC

1              (Case called)
2              THE DEPUTY CLERK:  Counsel for SKAT, are you ready?
3              MR. WEINSTEIN:  Yes.  Good morning, your Honor.  Marc
4    Weinstein, Bill Maguire, Sarah Cave, and Neil Oxford, from
5    Hughes Hubbard & Reed, for plaintiff.
6              THE COURT:  Good morning.
7              THE DEPUTY CLERK:  Defendants Bradley London Pension
8    Plan and Doston Bradley, are you ready?
9              MR. ALLISON:  Yes, your Honor.  Good morning.  Mark
10   Allison and Zhanna Ziering, Caplin & Drysdale, on behalf of
11   them and ten other defendants.
12             THE COURT:  Good morning.
13             THE DEPUTY CLERK:  Defendant Sander Gerber Pension
14   Plan, are you ready?
15             MS. McKINLAY:  Yes.  Good morning, your Honor.  Amy
16   McKinlay and Stephen Andrews.
17             THE COURT:  Good morning.
18             THE DEPUTY CLERK:  Defendant Adam LaRosa, are you
19   ready?
20             MR. SPIRO:  Yes.  Good morning, your Honor.  Edward
21   Spiro, Morvillo, Abramowitz, for Mr. LaRosa.
22             THE COURT:  Good morning.
23             THE DEPUTY CLERK:  Defendant Goldstein Law Group, are
24   you ready?
25             MR. KAPLAN:  Yes.  Good morning, your Honor.  Martin

1  H. Kaplan, Gusrae, Kaplan, Nusbaum, for the Goldstein
2  defendants.
3              THE COURT:  Good morning.
4              THE DEPUTY CLERK:  Defendant Robert Klugman, are you
5  ready?
6              MR. ALLISON:  Your Honor, Mark Allison again.  I am
7  here on behalf of the Klugman defendants as well.
8              THE COURT:  Thank you.
9              THE DEPUTY CLERK:  Defendant John Doscas, David
10 Freelow, Sterling Alpha Plan and Delmar Plan, are you ready?
11             MR. SKARLATOS:  Yes, your Honor.  Good morning.  Bryan
12 Skarlatos and Eric Smith, Kostelanetz & Fink.
13             THE DEPUTY CLERK:  Defendant Acorn Summers, et al.,
14 are you ready?
15             Mr. Hanamirian, can you hear me?
16             MR. HANAMIRIAN:  Yes.  It's very faint in the
17 background.  I can hear the judge's voice, but the balance of
18 it is very faint.
19             THE COURT:  We have had a technical malfunction here,
20 and as you may guess the reasons, nothing is getting fixed.
21             All right.  There are two matters I wanted to deal
22 with this morning.  One you knew about in advance, which was
23 the lead counsel matter.  I have read all the correspondence.
24 I doubt very much there is anything else to be said, and I can
25 give you my views in a minute.  I also want to discuss briefly

1    one facet of the pending application for letters rogatory.

2             Now, so far as the lead counsel contretemps is
3    concerned, I am looking at the Caplin & Drysdale letter of
4    December 18, which I find in most respects entirely
5    appropriate.  Here is the reason for the qualification, or the
6    reasons.

7             First of all, on page 2, in the second bullet point, I
8    take it what you're asking me to do is include a provision in
9    the order that would provide that communications between and
10   among lead counsel and other defendants would be privileged,
11   and that lead counsel can't waive any privileges without the
12   consent of all.

13            I know where you're coming from, of course.  This is a
14   matter that is normally handled by a joint defense agreement,
15   and I don't know that I have the authority to sprinkle holy
16   water on something and make it so.  So I suggest you handle it
17   in the traditional way and not in the order.

18            Anybody have a problem with that?
19            MR. ALLISON:  Your Honor, may I?
20            THE COURT:  Yes.
21            MR. ALLISON:  Thank you, your Honor.
22            With regard to the privileged communications,
23   obviously you're right.  We certainly understand that that is
24   something that should be addressed and worked out sort of among
25   counsel.  For reasons that are probably obvious from the

correspondence we have had, that may or may not be a workable solution. And we have already had one reference to a communication that we did not want disclosed. No particular harm done, I don't think, but I am obviously very sensitive to it.

We would like to at least have an understanding that any communications within that group, whether or not they are described as privileged, should remain within the group. Obviously, we can work out the characterization of them as privileged, but we still think it's important that we be able to have frank conversations, whether or not they are privileged.

THE COURT:  That's probably true, but you are going to have to work that out. If there is somebody who, one number of defendants, finds doesn't respect confidences, I imagine they will come to the point where they don't impart any.

MR. ALLISON:  I think that the rub is that part of what I have been trying to do, of course, is have discussions, for example, with plaintiff's counsel, relay that back obviously to the defense group. Sometimes it's necessary to provide some context and color, and sometimes some views. If I can't do any of that, then what I am left with is a very bare bones, rather meaningless communication, followed up by a separate privileged communication with those who would follow it. But maybe that's the answer, your Honor.

1          THE COURT:  Yes.  The long and short of it is that I
2     am not sure how I can solve that problem for you.  It may well
3     be that in the fullness of time everybody will understand that
4     they have a common interest, at least to that extent.  But I
5     can't force that down anybody's throats, at least at this
6     moment.
7          The fourth bullet point, of course, in appropriate
8     circumstances, I could issue a gag order, but I don't think we
9     are there.  So I don't propose to do it now.
10          Moving down the page, the third bullet point under
11     discovery matters, if I understand this correctly, what you're
12     proposing is that the responses and objections to the
13     plaintiff's discovery will be prepared and served separately by
14     counsel for each of the 140-plus defendants in this case.  That
15     is not acceptable.  Obviously, to the extent there are
16     differences of position, those need to be respected, but I
17     expect that, to the extent you can agree on objections to
18     discovery requests that are common to multiple defendants,
19     there will be one set of common objections on behalf of those
20     who go along with them.
21          MR. ALLISON:  May I, your Honor?
22          THE COURT:  Yes, of course.
23          MR. ALLISON:  So as a practical matter, what has been
24     happening, as far as I can tell, obviously we represent, Caplin
25     & Drysdale represent 110 or so defendants.  Obviously, there

was a single filing on behalf of those. We served objections on behalf of those 110 together. As far as I could tell, generally speaking, the other objections, maybe with one or two exceptions, have been consistent, and the meet-and-confer that we have done with plaintiff has been on behalf of all the defendants, regardless of their separate objections.

The problem has been -- and Mr. Hanamirian raised this, and it's something I will at least agree with -- that there are potentially unique defenses, unique objections, that obviously I wouldn't have the ability as lead counsel to marshal and determine, and Mr. Hanamirian or others may not feel comfortable sharing that information directly with me.

I respect that, and I also would feel uncomfortable, obviously, asserting objections and defenses on behalf of defendants who I don't represent and who I don't know. And that's been a rub. I will obviously defer to plaintiff's counsel as to whether there has been a problem with that as a process matter, but I have not sort of picked up on any specific issues there.

THE COURT: There are a couple of different ways in which this could arise. One way it could arise is that the plaintiff serve, for the sake of argument, a common set of interrogatories on all defendants.

Now, in those circumstances, there should be one set of responses and objections on behalf of all of the defendants,

1    to the extent they are asserting the same objections and
2    defenses.  And then if it's necessary for one or more
3    defendants to supplement with a filing unique to themselves,
4    fine.  All right.  But the paper in this case could take down
5    half of the forest of the western United States on any other
6    basis.
7             So that's my intention, and I think you need to
8    fine-tune this language.
9             Next point, with respect to depositions, I think there
10   is a difference here between depositions of the plaintiff,
11   depositions of nonparty witnesses, and depositions of
12   defendants, and they are not all the same.  Obviously, if the
13   plaintiffs are taking a deposition of defendant number 97, I
14   would expect that the lead role in defending a deposition will
15   be by the lawyer for defendant 97.  And then whatever
16   arrangements all the other defendants want to make to have the
17   deposition covered, if they want it covered, they will make.
18   It could be that Mr. Allison will cover it for everybody else,
19   or it may be some permutation.  Then there are depositions
20   conducted by defendants.
21            Now, to the extent more than one defendant wants a
22   deposition of John Jones, or the plaintiff, there is going to
23   be one deposition of that witness.  And unless you otherwise
24   agree, the lead at that deposition will be lead counsel.
25   You're free to agree otherwise.  But whoever has the lead is

the principal examiner, and if there then needs to be follow-up, not repetition, but follow-up to protect positions by individual defendants, fine. Nothing unusual about that.

And I think that pretty much covers my concerns about this.

Now, Mr. Hanamirian, I read your exceptionally long and repetitious letters, and my overall impression was that my reading of the proposal that came from Caplin & Drysdale and yours were based on having read two different documents. I just essentially couldn't figure out what you were talking about, to be perfectly blunt.

MR. HANAMIRIAN: In that context, I think that I am obviously, for lack of a better phrase, the problem. Would the Court entertain or would it be helpful to the Court if we sever?

THE COURT: No. That's not going to happen. I already ruled on that, in effect, and the multi-district panel already ruled on that, in effect. This is a consolidated pretrial proceeding and you're in it, whether you like it or not.

OK. I think that takes care of all of that.

I don't mean to suggest, Mr. Hanamirian, that the individual rights or positions of your clients won't be respected. They will. But you're going to have to work to avoid repetitious, needless divergence, and piles of

1   unnecessary papers.  To the extent there are common positions,
2   you are going to work with everybody else.
3           OK.  Now, the letters rogatory.  The reason I haven't
4   signed them yet is because I was waiting for today.
5           My recollection of the order, which I am frank to say
6   I haven't looked at since last month, is that there is a
7   provision in it in which I am asked, in effect, to certify to
8   the Danish authorities that this request is not for discovery
9   purposes.  And I infer that the reason for that is because
10  Denmark acceded to the Hague Evidence Convention with the
11  reservation opting out of executing these requests for the
12  purpose of discovery.
13          Am I right Mr. Allison?
14          MR. ALLISON:  I have to defer actually to the
15  plaintiff on that.
16          THE COURT:  Yes.  It's the plaintiff's letters.
17          Mr. Weinstein.
18          MR. WEINSTEIN:  I am trying to find that specific
19  provision, your Honor.  There a concern about how European
20  countries address Hague requests and that there may be
21  different standards.
22          THE COURT:  It's true that it's common to many
23  European countries, but the key point is that Denmark has such
24  a reservation, as I understand it, as does the U.K.  I just
25  happen to know that.

1   MR. WEINSTEIN: I think the law in U.K. is clearer on
2   that issue. But if the question is whether Denmark is subject
3   to the Hague on this, the answer is yes.
4   THE COURT: I'm sorry. If the question is?
5   MR. WEINSTEIN: If Denmark is --
6   THE COURT: They are one of the opt-outs, right?
7   MR. WEINSTEIN: We think so, yes.
8   THE COURT: So before I sign these, I would like to
9   have a written showing from the plaintiff, if you can
10  legitimately make it, as to how this is trial evidence, not
11  discovery. I think it would be useful also, in the
12  alternative, to address the question of whether the request
13  must be made under the Hague Evidence Convention as opposed to
14  being what I will call, for want of a better term, simply a
15  common law letter rogatory to the relevant authorities in
16  Denmark, which need not address the issue of discovery, at
17  least by me. Because one certainly sees requests like that
18  from time to time.
19  So I just want to be sure that I am not certifying
20  something, without a basis for doing so, to the Danish courts.
21  MR. WEINSTEIN: Understood.
22  THE COURT: All right. Anything else, folks?
23  MR. BLESSINGTON: If I may, we filed an opposition to
24  the request --
25  THE COURT: Forget it.

|   |   |
|---|---|
| 1 | MR. BLESSINGTON:  I thought it was worth a try. |
| 2 | THE COURT:  Well, maybe not. |
| 3 | Anything else?  I have a jury waiting in another case. |
| 4 | MR. WEINSTEIN:  May I raise two quick issues? |
| 5 | One, with respect to the lead counsel determination, |
| 6 | we had submitted a letter, your Honor, on one particular |
| 7 | provision. |
| 8 | THE COURT:  Oh, yes.  Do you really have any problem |
| 9 | with that, Mr. Allison? |
| 10 | MR. ALLISON:  No, not at all.  But I don't know that |
| 11 | the other defense counsel have weighed in on that particular |
| 12 | provision. |
| 13 | THE COURT:  Well, you know they have had Mr. |
| 14 | Weinstein's letter. |
| 15 | So you should be submitting to me in the form of a |
| 16 | proposed order, reflecting the points I have made today, what |
| 17 | you propose I sign, along with some electronic medium with Word |
| 18 | Perfect format so I can tinker with it if I need to do that, |
| 19 | and I will get that entered soon. |
| 20 | MR. WEINSTEIN:  Second issue, your Honor, we wanted to |
| 21 | give your Honor a heads-up because we don't know when the next |
| 22 | conference might be scheduled.  There is a distinct possibility |
| 23 | that we will be filing significantly more actions related to |
| 24 | those that are now before you. |
| 25 | THE COURT:  Because the government needs the money. |

1    MR. WEINSTEIN:  There has been long-standing
2 settlement negotiations with another group of plans.  We are
3 talking about over 100.  There had been a tolling agreement in
4 place that has now expired, although there was a provision in
5 which the tolling effect doesn't end until the end of February.
6 So I believe those decisions will be made by the end of
7 February.  But that could mean another 100 or so cases in front
8 of your Honor related to this.
9    THE COURT:  My first MDL we had 1200 cases.  So I am
10 not frightened off yet.
11    MR. WEINSTEIN:  I am pretty sure we will remain well
12 below your record.
13    THE COURT:  OK.  Thanks, folks.
14    (Adjourned)