**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: 18-cv-4899 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANT SANDER GERBER PENSION PLAN'S ANSWER AND AFFIRMATIVE DEFENSES TO SKAT'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendant Sander Gerber Pension Plan ("SGPP") through its undersigned counsel hereby answers Plaintiff's Complaint. This answer is based on SGPP's investigation to date, and SGPP reserves the right to supplement or amend this Answer during the course of litigation as new information is learned. Any allegation not specifically admitted herein is denied. To the extent that the headings of SKAT's Complaint require a response, they are hereby denied. SGPP requests a jury trial on all counts so triable.

## INTRODUCTION

1.      **Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.**

**ANSWER:** SGPP admits the allegations in paragraph 1 were true as of the date of the Complaint, but denies them as of the date of this Answer.

2.      **This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("DKK"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.**

**ANSWER:** SGPP denies the allegations in paragraph 2.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

**ANSWER:**  SGPP denies with respect to itself the allegations in the first sentence in paragraph 3, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in paragraph 3 with respect to others and therefore denies them. The remainder of paragraph 3 states legal conclusions to which no response is required.  To the extent any further response were found to be required, SGPP denies the remaining allegations in paragraph 3.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

**ANSWER:**  SGPP admits that documents reflect that Acupay submitted two reclaim applications to SKAT, purportedly on SGPP's behalf, claiming repayments of tax withheld on dividends earned on shares of Danish companies.  SGPP denies the remaining allegations in paragraph 4.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Sander Gerber, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

**ANSWER:**  SGPP denies with respect to itself the allegations in paragraph 5, and lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in the first

sentence in paragraph 5 with respect to others and therefore denies them.

6.    **On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.**

**ANSWER:**  SGPP lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in the first sentence of paragraph 6, and therefore denies them.  SGPP denies

the remaining allegations in paragraph 6 with respect to itself, and lacks knowledge or information

sufficient to form a belief as to the truth of the allegations with respect to others and therefore

denies them.

7.    **As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.**

**ANSWER:**  SGPP denies the allegations in paragraph 7 with respect to itself, and lacks

knowledge or information sufficient to form a belief as to the truth of the allegations with respect

to others and therefore denies them.

8.    **On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.**

**ANSWER:**  SGPP lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 8 and therefore denies them.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including:

a.      The Authorized Representatives of the claimants, such as Defendant Doscas, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

**ANSWER:** SGPP denies the allegations in paragraph 9 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

**ANSWER:** SGPP denies the allegations in paragraph 10 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

**ANSWER:** SGPP denies the allegations in paragraph 11 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

**ANSWER:** SGPP denies the allegations in paragraph 12 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect

to others and therefore denies them.

13.    **As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of at least $937,000 (US),[1] plus interest.**

ANSWER:  SGPP denies the allegations in paragraph 13.  SGPP lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in footnote 1 and therefore

denies them.

## JURISDICTION & VENUE

14.    **Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.**

ANSWER:  Paragraph 14 states a legal conclusion as to which no response is required.

15.    **Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.**

ANSWER:  Paragraph 15 states a legal conclusion as to which no response is required.

## PARTIES

16.    **Plaintiff SKAT is the Danish national agency charged with assessing and collecting taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.**

ANSWER:  SGPP admits the allegations in the first sentence of paragraph 16 were true as

of the date of the Complaint, but denies them as of the date of this Answer.  SGPP lacks knowledge

or information sufficient to form a belief as to the truth of the allegations in the remainder of

paragraph 16 and therefore denies them.

---

[1] This amount is the result of a conversion from May 29, 2018, utilizing a conversion rate of 1 U.S. Dollar to 6.4271 DKK.

17.    Defendant Sander Gerber is a pension plan, which, in its requests to SKAT for tax refunds, listed its address as 441 West End Avenue, Apartment 9A, New York, NY 10024, USA.  On information and belief, each member of Defendant Sander Gerber is a citizen of a state of the United States.  At all times material to the allegations in this Complaint, Defendant Sander Gerber purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

ANSWER:  SGPP admits that it is a pension plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and that it is a resident of the United States for purposes of U.S. taxation.  SGPP further admits that SKAT has provided copies of tax refund requests, which SKAT represents were submitted to it purportedly on SGPP's behalf, that list SGPP's address as Apartment 9A, 441 West End Avenue, New York, NY 10024.  SGPP denies the remaining allegations in paragraph 17.

18.    Defendant Doscas is a citizen of the state of New York.  At all times material to the allegations in this Complaint, Doscas served as the Authorized Representative for Defendant Sander Gerber.

ANSWER:  SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegation in the first sentence of paragraph 18 and therefore denies it.  The remainder of paragraph 18 states a legal conclusion to which no response is required.  To the extent any further response were found to be required, SGPP denies the remaining the allegations in paragraph 18.

## FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

19.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

ANSWER:  Paragraph 19 states a legal conclusion to which no response is required.

**20.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.**

**ANSWER:**  Paragraph 20 states a legal conclusion as to which no response is required.

**21.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.**

**ANSWER:**  Paragraph 21 states a legal conclusion as to which no response is required.

**22.    A double taxation treaty between Denmark and the United States[2] allows for a refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.**

**ANSWER:**  Paragraph 22 and footnote 2 state legal conclusions as to which no response is required.

**23.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.**

**ANSWER:**  SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 and therefore denies them.

**24.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.**

**ANSWER:**  SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore denies them.

**B.    The Fraudulent Scheme**

**25.    As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized**

---

[2] Convention and Protocol between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10, ¶ 2(c), May 6, 1948, S. Treaty Doc. No. 106-12 (effective date Jan. 1, 2001).

Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 32 through 50 below.

**ANSWER:** SGPP denies the allegations in paragraph 25 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

## 1.    The Fraudulent Refund Claims Process

**26.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("Acupay"), each of which submitted claims by mail or by email transmissions.**

**ANSWER:** SGPP denies the allegations in paragraph 26 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

**27.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.**

**ANSWER:** SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 and therefore denies them.

**28.    Each of the claimants provided the following documentation to SKAT through their designated agents:**

**a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;**

**b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "Claim Form"), which set out:**

**i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;**

**ii.    the amount of the tax refund claim;**

**iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and**

**iv.    the bank account to which SKAT should pay the claim;**

    **c.**    **a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;**

    **d.**    **a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and**

    **e.**    **in respect of United States-based pension plans, a statement from the Internal Revenue Service ("IRS"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "Code"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.**

**ANSWER:** SGPP admits that SKAT has provided copies to SGPP of the documentation described in subsections (a)-(e), which SKAT represents was submitted to it purportedly on SGPP's behalf. SGPP denies the remaining allegations in paragraph 28.

**29.**    **The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.**

**ANSWER:** SGPP denies the allegations in paragraph 29 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

**30.**    **It was SKAT's practice to pay claims that included the required supporting documentation.**

**ANSWER:** SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and therefore denies them.

**31.**    **SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.**

**ANSWER:** SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and therefore denies them.

    **2.**    <u>**Role of the Claimants**</u>

**32.**    **Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.**

**ANSWER:** SGPP denies the allegations in paragraph 32 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

**33.     Each of the claimants, including Defendant Sander Gerber, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.**

**ANSWER:** SGPP admits that SKAT has provided copies to SGPP of the documentation described in paragraph 28, which SKAT represents was submitted to SKAT purportedly on SGPP's behalf. SGPP denies the remaining allegations in paragraph 33.

**34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims. Defendant Sander Gerber represented that Defendant Doscas was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Sander Gerber's claims.**

**ANSWER:** SGPP denies the allegations in the first sentence of paragraph 34 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them. SGPP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 and therefore denies them.

**35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Sander Gerber represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.**

**ANSWER:** SGPP denies the allegations in the first sentence of paragraph 35 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them. SGPP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies them.

**36.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Sander Gerber made three (3) separate withholding tax refund claims, and represented that it was entitled to refunds totaling at least $937,000 (US).  The first claim submitted to SKAT was undated and the next two were dated December 31, 2012.**

**ANSWER:**  SGPP admits that SKAT has provided copies to SGPP of more than one withholding tax refund claim, which SKAT represents were made to SKAT purportedly on SGPP's behalf.  SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 36 and therefore denies them.  SGPP otherwise denies the remaining allegations in paragraph 36.

**37.    In fact, Defendant Sander Gerber did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.**

**ANSWER:**  SGPP denies the allegations in paragraph 37.

**38.    Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Sander Gerber on the following dates: September 19, 2012 and January 15, 2012.**

**ANSWER:**   SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 and therefore denies them.

**3.    The Role of the Claimants' Authorized Representatives**

**39.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.**

**ANSWER:**   SGPP denies the allegations in paragraph 39 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

**40.    Defendant Doscas executed at the direction of, and on behalf of, Defendant Sander Gerber a "Special Power of Attorney" dated July 30, 2012, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Sander Gerber's] name for which [Sander Gerber is] eligible, to oversee this process, and to collect**

refunds of excess withholding tax to which [Sander Gerber is] entitled on [Sander Gerber's] behalf." Defendant Doscas described himself as the "authorized signer" of Defendant Sander Gerber.

ANSWER: SGPP refers to a Special Power of Attorney dated July 30, 2012, which speaks

for itself. SGPP otherwise denies the remaining allegations in paragraph 40.

41.    Defendant Doscas signed Power of Attorney documents for at least one other claimant, The Sterling Alpha LLC 401K Profit Sharing Plan, which listed Defendant Doscas' home address of 11 Sterling Lane, Sands Point, NY 11050, in its requests to SKAT for tax refunds.

ANSWER: SGPP lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 41 and therefore denies them.

### 4.    The Role of the Payment Agents

42.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

ANSWER: SGPP denies the allegations in paragraph 42 with respect to itself, and lacks

knowledge or information sufficient to form a belief as to the truth of the allegations with respect

to others and therefore denies them.

43.    By means of the Power of Attorney described in paragraphs 39-40 above, each claimant authorized its respective Payment Agent to act on behalf of and subject to control of the claimant with respect to submitting the withholding tax refund claims.

ANSWER: SGPP denies the allegations in paragraph 43 with respect to itself, and lacks

knowledge or information sufficient to form a belief as to the truth of the allegations with respect

to others and therefore denies them.

44.    With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

ANSWER: SGPP lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 44, and therefore denies them.

45.    In connection with each Claim Form, the Payment Agent:

     **a.**    **provided its email address as the contact address for the claimant on whose behalf it was acting;**

     **b.**    **signed and stamped the form, and stated it was applying on behalf of the claimant;**

     **c.**    **enclosed the Power of Attorney executed by the claimant's Authorized Representative; and**

     **d.**    **requested that SKAT pay the claim to its bank account.**

**ANSWER:**  SGPP admits that SKAT has provided copies to SGPP of the Claim Form described in subsections (a)-(d), which SKAT represents was submitted to it purportedly on SGPP's behalf, and refers to the document which speaks for itself.  SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of paragraph 45, and therefore denies them.

**46.**    **As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.   On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.**

**ANSWER:**  SGPP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 46, and therefore denies them.  SGPP denies the allegations in the remainder of paragraph 46 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

     **5.**    <u>**Role of the Broker-Custodians**</u>

**47.**    **Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.**

**ANSWER:**  SGPP admits that SKAT has provided copies to SGPP of "credit advices," which SKAT represents were submitted to it purportedly on SGPP's behalf, and refers to the

documents which speak for themselves.  SGPP lacks knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in paragraph 47 and therefore denies them.

**48.    By way of example, with respect to Defendant Sander Gerber, one example of a "credit advice":**

> **a.    is made out by Solo Capital Partners LLP;**

> **b.    is dated December 17, 2012;**

> **c.    purports to certify Defendant Sander Gerber's ownership of 280,000 shares in Coloplast A/S (a genuine company), and whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and**

> **d.    states an International Securities Identification Number ("ISIN") for Coloplast A/S shares as "DK0010309657". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.**

**ANSWER:**  SGPP admits that SKAT has provided a copy to SGPP of a "credit advice"

dated December 17, 2012, which SKAT represents was submitted to it purportedly on SGPP's

behalf, and refers to the document which speaks for itself.  SGPP denies the remaining allegations

in paragraph 48.

**49.    Defendant Sander Gerber never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.**

**ANSWER:**  SGPP denies the allegations in paragraph 49.

**50.    In the course of its investigation, in or around August 2015, SKAT concluded that many of the withholding tax refund claims that had been made in the preceding years, including claims by Defendant Sander Gerber, were fraudulent and SKAT suspended further payments.**

**ANSWER:**  SGPP lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 50 and therefore denies them.

## CAUSES OF ACTION

### COUNT I
### (Fraud – Against Both Defendants)

**51.**    **SKAT repeats and realleges paragraphs 1 through 50 above as if fully set forth herein.**

**ANSWER:**  SGPP repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

**52.**    **Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 47 through 49 to support claims for withholding tax refund payments.**

**ANSWER:**  SGPP denies the allegations in paragraph 52.

**53.**    **Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.**

**ANSWER:**  SGPP denies the allegations in paragraph 53.

**54.**    **In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of at least $937,000 (US) and thereby suffered damages of that amount, plus interest.**

**ANSWER:**  SGPP denies the allegations in paragraph 54.

**55.**    **Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.**

**ANSWER:**  SGPP denies the allegations in paragraph 55.

## COUNT II
### (Aiding and Abetting Fraud – Against Both Defendants)

**56.**    **SKAT repeats and realleges paragraphs 1 through 55 above as if fully set forth herein.**

**ANSWER:**  SGPP repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

**57.**    **As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.**

**ANSWER:**  SGPP denies the allegations in paragraph 57.

**58.**    **As alleged in paragraphs 25 through 49 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.**

**ANSWER:**  SGPP denies the allegations in paragraph 58.

59.    The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

**ANSWER:**  SGPP denies the allegations in paragraph 59.

60.    The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 49 above.

**ANSWER:**  SGPP denies the allegations in paragraph 60.

61.    As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

**ANSWER:**  SGPP denies the allegations in paragraph 61.

62.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

**ANSWER:**  SGPP denies the allegations in paragraph 62.

<u>COUNT III</u>
<u>(Payment By Mistake – Against Both Defendants)</u>

63.    SKAT repeats and realleges paragraphs 1 through 62 above as if fully set forth herein.

**ANSWER:**  SGPP repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

64.    This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

**ANSWER:**  SGPP denies the allegations in paragraph 64.

65.    SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

**ANSWER:**  SGPP denies the allegations in paragraph 65.

66.    SKAT's mistaken belief was material to its decision to pay the claims.

**ANSWER:**  SGPP denies the allegations in paragraph 66.

67.    SKAT suffered a loss as a result of its mistaken payments.

**ANSWER:** SGPP denies the allegations in paragraph 67.

**68.    The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.**

**ANSWER:** SGPP denies the allegations in paragraph 68.

**COUNT IV**
**(Unjust Enrichment – Against Both Defendants)**

**69.    SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.**

**ANSWER:** SGPP repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

**70.    This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.**

**ANSWER:** Paragraph 70 states a legal conclusion to which no response is required.  To the extent any further response were found to be required, SGPP denies the allegations in paragraph 70.

**71.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.**

**ANSWER:** SGPP denies the allegations in paragraph 71.

**72.    SKAT suffered a loss because of the Defendants' unjust enrichment.**

**ANSWER:** SGPP denies the allegations in paragraph 72.

**73.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.**

**ANSWER:** SGPP denies the allegations in paragraph 73.

**COUNT V**
**(Money Had & Received – Against Both Defendants)**

**74.    SKAT repeats and realleges paragraphs 1 through 73 above as if fully set forth herein.**

**ANSWER:** SGPP repeats and reasserts its responses to each preceding paragraph as if

fully stated herein.

**75.    As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.**

**ANSWER:**  SGPP denies the allegations in paragraph 75.

**76.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.**

**ANSWER:**  SGPP denies the allegations in paragraph 76.

## COUNT VI
### (Negligent Misrepresentation – Against Both Defendants)

**77.    SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.**

**ANSWER:**  SGPP repeats and reasserts its responses to each preceding paragraph as if

fully stated herein.

**78.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.**

**ANSWER:**  Paragraph 78 states legal conclusions to which no response is required.  To

the extent any further response were found to be required, SGPP denies the allegations in paragraph

78.

**79.    Defendants made material misstatements described in paragraphs 28-29, 36 and 47 through 49 above in connection with every withholding tax refund claim submitted on behalf of Defendant Sander Gerber to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.**

**ANSWER:**  SGPP denies the allegations in paragraph 79.

**80.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.**

**ANSWER:**  SGPP denies the allegations in paragraph 80.

**81.    SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of at least $937,000 (US), plus interest.**

**ANSWER:**  SGPP denies the allegations in paragraph 81.

*** 

## AFFIRMATIVE DEFENSES

SGPP incorporates by reference herein the denials and admissions set forth above and asserts the following additional defenses, and those asserted by other defendants.  SGPP does not intend to assume the burden of proof with respect to those matters as to which Plaintiff SKAT bears the burden.  This statement of defenses is based on SGPP's investigation to date, and SGPP reserves the right to supplement, amend, or withdraw these defenses during the course of litigation as new information is learned.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Complaint is barred, in whole or in part, by the Revenue Rule.

### THIRD DEFENSE

The Complaint is barred, in whole or in part, because SGPP did not make any material misstatements or omissions.

### FOURTH DEFENSE

The Complaint is barred, in whole or in part, because at all relevant times SGPP acted in good faith and without intent to defraud.

### FIFTH DEFENSE

The Complaint is barred, in whole or in part, because SGPP was entitled to the withholding tax refunds at issue.

**SIXTH DEFENSE**

The Complaint is barred, in whole or in part, by the applicable statutes of limitations.

**SEVENTH DEFENSE**

The Complaint is barred, in whole or in part, because SGPP did not commit any act that constituted substantial assistance to any fraud.

**EIGHTH DEFENSE**

The Complaint is barred, in whole or in part, because SGPP did not authorize the pursuit or filing of any fraudulent refund claims.

**NINTH DEFENSE**

The Complaint is barred, in whole or in part, because SGPP did not receive the amounts SKAT alleges that it paid out in withholding tax refunds.

**TENTH DEFENSE**

The Complaint fails to allege facts sufficient to support a claim for fees, costs, expenses, or punitive damages.

**ELEVENTH DEFENSE**

The Complaint is barred, in whole or in part, by the doctrines of unclean hands, waiver, laches, or estoppel.

**TWELFTH DEFENSE**

The Complaint is barred, in whole or in part, due to the failure to join necessary or indispensable parties.

**THIRTEENTH DEFENSE**

The Complaint is barred because the Plaintiff failed to exhaust administrative remedies and other legal remedies.

## FOURTEENTH DEFENSE

Plaintiff's recovery is barred or limited because if any damages are proven, they are in whole or in part the result of the negligence or wrongful or unauthorized acts of Plaintiff or others for which SGPP is not liable.

Dated: February 22, 2019

Respectfully submitted,

  s/ Stephen D. Andrews
Stephen D. Andrews (admitted *pro hac vice*)
Amy B. McKinlay (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
sandrews@wc.com
amckinlay@wc.com

*Counsel for Sander Gerber Pension Plan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and copies will be sent to those indicated as nonregistered participants on February 22, 2019.

s/ Stephen D. Andrews
Stephen D. Andrews