**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to 1:18-CV-05053-LAK.

MASTER DOCKET

Case No. 1-18-MD-02865-LAK

**Jury Trial Demanded**

### DEFENDANTS THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN'S AND SHELDON GOLDSTEIN'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AGAINST SKATTEFORVALTNINGEN

Defendants the Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein Plan")

and Sheldon Goldstein ("Goldstein") (collectively, the "Goldstein Defendants"), by their attorneys

Gusrae Kaplan Nusbaum PLLC, answer the complaint (the "Complaint") as follows:

### GENERAL DENIAL

The Complaint contains allegations that pertain to the conduct of other unnamed

claimants.[1] Unless otherwise expressly admitted or denied, the Goldstein Defendants deny such

allegations based upon their lack of knowledge or information sufficient to form a belief regarding

the truth of allegations. No answer is required to these allegations or other allegations that pertain

to Danish withholding tax or the Danish Withholding Tax Act Convention and Protocol between

the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal

Evasion with Respect to Taxes on Income, U.S.–Den., art. ¶¶ 10 (3)(c), 22(2)(e), May 6, 1948, S.

Treaty Doc. No. 106-12 (effective date Jan. 1, 2001) (the "Double-Taxation Treaty").

---

[1] The Complaint contains allegations referring to conduct of unnamed parties, referred to in the Complaint as "claimants," who purportedly submitted fraudulent applications for repayment of taxes withheld of dividends on shares of Danish companies. Compl. ¶¶ 4–7; 9; 11; 23–24; 26–28; 32–36; 39; 41–45.

## SPECIFIC RESPONSES

1.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 1.

2.      Paragraph 2 asserts legal conclusions to which no response is required. To the extent that a response is required, Paragraph 2 is denied.

3.      Paragraph 3 asserts legal conclusions to which no response is required. To the extent that a response is required, Paragraph 3 is denied.

4.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 4, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

5.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 5, except deny the allegations that the Goldstein Plan submitted fraudulent requests for tax refunds to Plaintiff Skatteforvaltningen ("SKAT").

6.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 6, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

7.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 7, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

8.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 8, except aver that Plaintiff has wrongfully withheld no less than DKK 1,080,000 to which the Goldstein Defendants are rightfully entitled, as detailed infra in the Goldstein Defendants' Counterclaims.

9.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 9, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

10.     The Goldstein Defendants deny the allegations of Paragraph 10.

11.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 11, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

12.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 12.

13.     The Goldstein Defendants deny the allegations of Paragraph 13.

14.     The Goldstein Defendants admit the allegations of Paragraph 14.

15.     The Goldstein Defendants admit the allegations of Paragraph 15.

16.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 16.

17.     The Goldstein Defendants admit the allegations of Paragraph 17, except deny the allegations to the extent that they suggest that the Goldstein Plan was not a bona fide trust forming part of a pension plan qualified and exempt from taxation under the U.S. Internal Revenue Code and resident of the United States of America for purposes of U.S. taxation. The Goldstein Plan is, indeed, a bona fide trust forming part of a pension plan qualified under Section 401(a) of the U.S. Internal Revenue Code, exempt from taxation under Section 501(a) of the U.S. Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     The Goldstein Defendants admit the allegations of Paragraph 18.

19.     Paragraph 19 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 19.

20.     Paragraph 20 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 20.

21.     Paragraph 21 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 21.

22.     Paragraph 22 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 22.

23.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 23, except deny the allegations to the extent that they suggest that the Goldstein Defendants did not actually own the relevant shares giving rise to the claims filed with SKAT. The Goldstein Defendants only submitted refund claims for taxes paid on shares that the Goldstein Defendants owned at the time of the relevant dividends.

24.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 24, except aver that the Goldstein Defendants purchased the relevant shares and applied for the concomitant tax refunds in reliance on SKAT's "normal practice [of] accept[ing] claims from designated payment agents and[] transmit[ting] refunds to claimants through their designated payment agents."

25.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 25, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

26.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 26, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

27.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 27, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

28.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 28, except admit that the Goldstein Defendants submitted to SKAT similar documentation of the Goldstein Plan's ownership of shares and payment of tax on dividend when applying for tax refunds.

29.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 29.

30.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 30, except aver that the Goldstein Plan purchased the relevant shares and applied for the concomitant tax refunds in reliance on SKAT's "practice to pay claims that included the required supporting documentation."

31.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 31, except admit that SKAT properly refunded the Goldstein Plan for eight of the nine refund claims that the Goldstein Plan made to SKAT.

32.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 32.

33.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 33 of the Complaint, except admit that the

Goldstein Plan made nine withholding tax refund claims to SKAT through its payment agent, Goal Taxback Ltd. ("Goal").

34.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 34 of the Complaint, except deny that the Goldstein Defendants made any "fraudulent claims" to SKAT; admit that the Goldstein Plan "represented that Goldstein was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Goldstein Law Plan's claim," and deny any implication that such representation was false.

35.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 35 of the Complaint, except deny that the Goldstein Defendants made any "fraudulent claims" to SKAT; admit that the Goldstein Plan "represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims," and deny any implication that such representation was false.

36.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 36, except admit that the Goldstein Plan made nine separate withholding tax refund claims totaling approximately DKK 11,343,510 on or around March 26, 2014, April 4, 2014,  May 2, 2014, May 6, 2014, December 10, 2014, March 3, 2015, March 4, 2015, March 26, 2015, and August 10, 2015, and deny any implication that any claims made by the Goldstein Defendants were fraudulent or otherwise wrongful.

37.    The Goldstein Defendants deny the allegations of Paragraph 37.

38.    The Goldstein Defendants deny the allegations of Paragraph 38, and particularly that the refund claims were "false," except admit that the Goldstein Plan received refund payments from SKAT on or around April 30, 2014, May 2, 2014, January 20, 2015, and May 18, 2015.

39.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 39, except admit that the Goldstein Plan granted Goal authority to submit refund claims to SKAT on its behalf.

40.    Paragraph 40 purports to summarize a document that speaks for itself. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 40.

41.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 41, except deny that the Goldstein Defendants ever directed anyone to submit fraudulent withholding tax refund claims.

42.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 42, except admit that they authorized Goal to submit tax refund claims on its behalf, and deny any implication that they ever authorized anyone to submit fraudulent claims on their behalf.

43.    Paragraph 43 purports to summarize documents that speak for themselves. To the extent that a response is required, the Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 43, except admit that Goal submitted cover letters attaching documentation similar to that summarized in Paragraph 28.

44.    Paragraph 44 purports to summarize documents that speak for themselves. To the extent that a response is required, the Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 44, except admit that Goal submitted cover letters attaching documentation similar to that summarized in Paragraph 28.

45.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 45, except admit that the Goldstein Plan received

proceeds from eight of the refund claims they submitted to SKAT, and deny that said claims were fraudulent or that the Goldstein Defendants were "participants in the fraud."

46.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 46, except admit that tax vouchers reflecting the Goldstein Plan's ownership of the relevant shares were submitted with each refund claim to SKAT.

47.     Paragraph 47 purports to summarize a document that speaks for itself. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 47.

48.     The Goldstein Defendants deny the allegations of Paragraph 48.

49.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 49, except deny that any refund claims submitted by the Goldstein Plan were fraudulent, and admit that SKAT refused to refund the Goldstein Plan for one of its claims and demanded repayment of the refunds SKAT had already paid to the Goldstein Plan.

## CAUSES OF ACTION

### COUNT I
**(Fraud – Against both Defendants)**

50.     In response to Paragraph 50, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 49 as if fully set forth herein.

51.     The Goldstein Defendants deny the allegations of Paragraph 51.

52.     The Goldstein Defendants deny the allegations of Paragraph 52.

53.     The Goldstein Defendants deny the allegations of Paragraph 53.

54.     The Goldstein Defendants deny the allegations of Paragraph 54.

## COUNT II
### (Aiding and Abetting Fraud – Against both Defendants)

55.    In response to Paragraph 55, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 54 as if fully set forth herein.

56.    The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 56 of the Complaint, except deny any implication that the Goldstein Defendants perpetrated, indirectly or directly, any fraud on SKAT.

57.    The Goldstein Defendants deny the allegations of Paragraph 57.

58.    The Goldstein Defendants deny the allegations of Paragraph 58.

59.    The Goldstein Defendants deny the allegations of Paragraph 59.

60.    The Goldstein Defendants deny the allegations of Paragraph 60.

61.    The Goldstein Defendants deny the allegations of Paragraph 61.

## COUNT III
### (Payment by Mistake – Against Both Defendants)

62.    In response to Paragraph 62, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 61 as if fully set forth herein.

63.    The Goldstein Defendants deny the allegations of Paragraph 63.

64.    The Goldstein Defendants deny the allegations of Paragraph 64.

65.    The Goldstein Defendants deny the allegations of Paragraph 65.

66.    The Goldstein Defendants deny the allegations of Paragraph 66.

67.    The Goldstein Defendants deny the allegations of Paragraph 67.

## COUNT IV
### (Unjust Enrichment – Against both Defendants)

68.    In response to Paragraph 68, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 67 as if fully set forth herein.

69.    The Goldstein Defendants deny the allegations of Paragraph 69

70.    The Goldstein Defendants deny the allegations of Paragraph 70.

71.    The Goldstein Defendants deny the allegations of Paragraph 71.

72.    The Goldstein Defendants deny the allegations of Paragraph 72.

<u>**COUNT V**</u>
**(Money Had and Received – Against Both Defendants)**

73.    In response to Paragraph 73, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 72 as if fully set forth herein.

74.    The Goldstein Defendants deny the allegations of Paragraph 74.

75.    The Goldstein Defendants deny the allegations of Paragraph 75.

<u>**COUNT VI**</u>
**(Negligent Misrepresentation – Against Both Defendants)**

76.    In response to Paragraph 76, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 75 as if fully set forth herein.

77.    The Goldstein Defendants deny the allegations of Paragraph 77.

78.    The Goldstein Defendants deny the allegations of Paragraph 78.

79.    The Goldstein Defendants deny the allegations of Paragraph 79.

80.    The Goldstein Defendants deny the allegations of Paragraph 80.

<u>**AFFIRMATIVE DEFENSES**</u>

**FIRST AFFIRMATIVE DEFENSE**

81.    The Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

82.    Plaintiff's claims are barred, in whole or in part, under the doctrines of laches, waiver, and/or ratification.

### THIRD AFFIRMATIVE DEFENSE

83.    Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join necessary and indispensable parties.

### FOURTH AFFIRMATIVE DEFENSE

84.    Plaintiff's claims are barred, in whole or in part, because any and all losses sustained were due to Plaintiff's own acts and/or omissions.

### FIFTH AFFIRMATIVE DEFENSE

85.    Plaintiff's claims are barred, in whole or in part, under the doctrines of accord and satisfaction.

### SIXTH AFFIRMATIVE DEFENSE

86.    Plaintiff's claims are barred, in whole or in part, under the doctrine of estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

87.    Plaintiff's claims for equitable relief are barred by the doctrine of unclean hands and its bad faith in initiating its suit in this jurisdiction while, upon information and belief, Plaintiff is simultaneously pursuing remedies for the same allegations contained in the Complaint in foreign jurisdictions, as well as making referrals of the same allegations contained in the Complaint to other agencies in other jurisdictions for identical and / or substantially-similar relief.

### EIGHTH AFFIRMATIVE DEFENSE

88.    Plaintiff's claim for unjust enrichment seeks to recover damages that Plaintiff is not entitled to recover in this case and award of the judgment sought by Plaintiff would unjustly enrich Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

89.     Defendant reserves the right to add additional Affirmative Defenses as may become apparent during the course of this litigation.

## DEFENSES

## FIRST DEFENSE

90.     Plaintiff's claims are barred as the Goldstein Defendants did not participate in any fraudulent scheme or misrepresentations. Demonstrative of the lack of any wrongful conduct by the Goldstein Defendants are, inter alia, the following:

   a.   All transactions in Danish securities were purchased or sold by the Goldstein Plan through a registered broker–dealer, ED&F Man Capital Markets Ltd. ("ED&F Man"), which was subject to the rule of law governing broker–dealers in the United Kingdom at all relevant times[2] and issued various confirmations and written verification of the transactions for the Goldstein Plan;

   b.   In the United States, the use of derivative securities and other arbitrage strategies is legal and routine in sophisticated securities markets;

   c.   Neither of the Goldstein Defendants had any control over ED&F Man's back office nor was in any way, directly or indirectly, involved in the custody and control of the Danish securities that the Goldstein Plan transacted in its brokerage account at ED&F Man. The Goldstein Defendants relied on the excellent reputation of ED&F Man and the laws of the United Kingdom and United States and had no reason to believe that ED&F Man would inaccurately represent the Goldstein Plan's ownership of the relevant Danish securities or payment of the relevant Danish taxes. The course of activity relating to the trading and arbitrage activity in the Goldstein Plan's ED&F Man account was similar to various arbitrage strategies developed and used in the United States securities markets.

## SECOND DEFENSE

91.     The claims are barred, in whole or in part, because at all times the Goldstein Defendants acted with reasonable care with respect to the matters alleged in the Complaint, including, but not limited to, those matters represented in the Goldstein Plan's applications

---

[2] Upon information and belief, ED&F Man is an international entity founded in 1783, with approximately 6,000 employees in 60 countries and a balance sheet in excess of one billion dollars.

claiming repayment of tax withheld on dividends earned on shares of Danish companies (the "Reclaim Applications"). Relying on ED&F Man's compliance with U.K. laws and regulations, the Goldstein Defendants had reasonable grounds to believe, and did believe, that the Reclaim Applications were true.

**THIRD DEFENSE**

92.     Plaintiff's claims are barred, in whole or in part, because neither of the Goldstein Defendants, whether directly or indirectly, acted to induce any act or acts alleged in the Complaint to constitute any fraud.

**FOURTH DEFENSE**

93.     The Goldstein Defendants hereby reserve and assert all defenses and affirmative defenses available under any applicable federal or state law.  The Goldstein Defendants presently have insufficient knowledge or information upon which to form a belief regarding whether they may have available other, as yet unstated, defenses or affirmative defenses. Therefore, the Goldstein Defendants reserve their right to assert any additional defenses or affirmative defenses that discovery indicates may be appropriate.

## COUNTERCLAIMS AGAINST SKAT

As and for the counterclaims of the Goldstein Plan and Goldstein against SKAT, the Goldstein Plan and Goldstein ("Counterclaim–Plaintiffs") respectfully allege:

### The Parties

1.      Defendant / Counterclaim–Plaintiff the Goldstein Plan is a pension plan with its address as 6179 Seascape Terrace, Boynton Beach, Florida 33437.

2.      The Goldstein Plan is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

3.      Defendant / Counterclaim–Plaintiff Goldstein is a citizen of a state of the United States and the only participant in the Goldstein Plan.

4.      Goldstein served as a trustee for the Goldstein Plan during all relevant times herein.

5.      Plaintiff / Counterclaim–Defendant SKAT purports to be the Danish national agency charged with assessing and collecting taxes.

### Jurisdiction

6.      These counterclaims arise from the facts and circumstances relating to the transactions set forth in the Complaint filed by SKAT as plaintiff in this jurisdiction.

7.      As conceded in the SKAT's Complaint, this Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332(a)(4) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because it is between U.S. citizens and a foreign State.

8.    These Counterclaims are properly venued in this Court because the facts and circumstances relating to the Counterclaims arise out of the same transactions that are the subject of the Complaint initiated in this District. See Compl. ¶ 15.

9.    These Counterclaims are properly venued in this Court, as conceded in the Complaint, as the facts and circumstances relating to the transactions that are the subject of the Complaint and Counterclaims occurred in part in this District. See id.

### Counter-Statement of Facts

**SKAT Has No Rightful Basis to Believe that Counterclaim–Plaintiffs Participated in any Fraud at All, Let Alone One "Masterminded" by Sanjay Shah**

10.    This action is one of hundreds of actions filed by SKAT throughout the United States, consolidated for pre-trial purposes into one multi-district litigation ("MDL") in the Southern District of New York.

11.    The allegations that the Goldstein Plan did not own the shares of Danish companies on their respective record dates for which it submitted Reclaims to SKAT is false.

12.    Neither the Goldstein Plan nor Goldstein has ever attempted to defraud SKAT.

13.    During the relevant times herein, neither the Goldstein Plan nor Goldstein has been aware of any scheme to defraud SKAT, let alone aided and / or abetted one.

14.    Upon information and belief, SKAT failed to review the specific facts and circumstances relating to the Goldstein Plan transactions before SKAT haled Counterclaim–Plaintiffs into this Court.

15.    SKAT alleges that each of the defendants engaged in a fraudulent scheme to obtain tax refunds from SKAT by falsely representing that (a) they owned shares in Danish companies at the time the relevant Danish companies issued dividends, (b) Danish taxes had been withheld on the dividends, and (c) as tax-exempt entities, they were entitled to refunds pursuant to the Double-

Taxation Treaty. <u>See</u> Dkt. 37, Transfer Order, <u>In re: Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litigation</u>, Case MDL No. 2865 (Oct. 3, 2018); <u>see also</u>, <u>e.g.</u>, Compl. ¶¶ 3–4, 22, n.2, 37.

16.     SKAT's counsel has made oral representations to the Court that SKAT believes that one individual, Sanjay Shah, is the "mastermind" of the alleged fraudulent scheme set forth in the Complaint.

17.     SKAT has repeated the Shah-centric theory in other jurisdictions, as well, including in the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court, on or around March 6, 2019.

18.     For example, in the March 6 England and Wales filing, SKAT pleads, "The primary individual responsible for the fraudulent scheme (or the primary fraudulent scheme) was Mr[.] Sanjay Shah[] and entities controlled by him [ . . . ] the other Alleged Fraud Defendants were joint tortfeasors and/or co-conspirators with Mr[.] Shah and [entities controlled by him]."

19.     But SKAT has never alleged that Counterclaim–Plaintiffs are in any way connected to Mr. Shah.

20.     Upon information and belief, SKAT has never identified any connection between Counterclaim–Plaintiffs and Mr. Shah or entities he controls.

21.     Indeed, neither the Goldstein Plan nor Goldstein had ever heard of Mr. Shah or his controlled entities until SKAT initiated this lawsuit.

**Counterclaim–Plaintiffs have had No Reason to Doubt that
They Owned the Danish Shares at the Record Dates**

22.     The Goldstein Plan transactions identified in the Complaint were conducted in its brokerage account at ED&F Man.

23.     All nine of the dividends relevant to this litigation were paid to the Goldstein Plan for shares held in its brokerage account at ED&F Man.

24.     ED&F Man is a broker–dealer registered with the U.K. Financial Conduct Authority and must comply with U.K. law and regulations.

25.     The Goldstein Plan has maintained a brokerage account at ED&F Man since 2012.

26.     Upon opening the brokerage account, the Goldstein Plan signed various agreements governing the business relationship between it and ED&F Man.

27.     The Goldstein Plan engaged in securities transactions through its ED&F Man account in accordance with U.K. laws and in reliance on ED&F Man's compliance with all applicable laws and regulations.

28.     Upon information and belief, ED&F Man went into the market to buy and sell stocks on behalf of the Goldstein Plan.

29.     When dividends issued, ED&F Man issued proof of the Goldstein Plan's ownership of the relevant shares on their respective record dates, as well as the Plan's receipt of the dividends and payment of the Danish taxes (the "Tax Vouchers").

30.     ED&F Man then sent the Tax Vouchers to Goal, which completed and submitted Danish tax refund applications on the plans' behalf.

31.     At all relevant times, Counterclaim–Plaintiffs reasonably relied on ED&F Man's stellar reputation and history to trust that all activity in the Goldstein Plan's account was lawful.

32.     Consequently, Counterclaim–Plaintiffs have never had any reason to doubt the accuracy of the Tax Vouchers or any of the other documents and account statements relating to Counterclaim–Plaintiffs that ED&F Man created.

33.     Indeed, U.K. anti-money-laundering regulations required ED&F Man to verify (a) the identity of its clients, including the Goldstein Plan, (b) the sources of its clients' funds, and (c) the identities of its clients' authorized representatives.

34.     A general ledger reflecting all Danish securities transactions in the Goldstein Plan's brokerage accounts (the "General Ledger") shows that for each and every Reclaim Application the Goldstein Plan submitted to SKAT, the Goldstein Plan (a) owned the relevant shares on their respective record dates and (b) was paid the nine dividends, minus Danish taxes. A true and correct copy of the General Ledger reflecting disclosed account activity during the relevant period is attached hereto as Exhibit A.

**Counterclaim–Plaintiffs Lawfully Submitted the Reclaim Applications**

35.     The Goldstein Plan submitted tax refund claims to SKAT for only (a) taxes withheld by Denmark (b) on dividends the Goldstein Plan actually received (c) on stock the Goldstein Plan actually owned (d) on the dates necessary to be paid those dividends.

36.     The Goldstein Plan submitted nine such refund claims to SKAT, for dividends paid to the Goldstein Plan by (1) TDC Group on March 7, 2014; (2) Danske Bank on March 24, 2014; (3) Novo Nordisk on March 26, 2014; (4) D/S Norden on April 29, 2014; (5) Coloplast on December 9, 2014; (6) Novozymes on March 2, 2015; (7) Danske Bank on March 23, 2015; (8) Novo Nordisk on March 24, 2015; and (9) TDC Group on August 12, 2015.

37.     SKAT paid tax withholding refunds to the Goldstein Plan for eight of those nine claims.

38.     But after it paid those eight refunds, SKAT alleged that Mr. Shah "mastermind[ed]" a scheme whereby foreign pension plans would fraudulently submit refund claims.

**SKAT Unlawfully Refuses to Refund the Goldstein Plan for Taxes Paid on One Dividend**

39.     Although the Goldstein Plan had nothing to do with Mr. Shah, SKAT then refused to pay DKK 1,080,000 for a TDC Group dividend issued on August 10, 2015.

40.     On or about June 10, 2015, the Goldstein Plan purchased four million shares of TDC Group.

41.     TDC Group's record date for determining payment to shareholders of its August 11, 2015 dividend was August 10, 2015.

42.     The Goldstein Plan owned four million shares of TDC Group on August 10, 2015.

43.     On or around August 12, 2015, Goldstein Plan received the TDC Group dividend payment, minus the Danish tax withheld.

44.     Thereafter, the Goldstein Plan submitted an application for tax dividend reimbursement of DKK 1,080,000, along with the necessary documentation to establish ownership of shares of TDC Group.

45.     SKAT denied the Goldstein Plan's Reclaim Application for the tax the Goldstein Plan paid on the August 2015 TDC Group dividend.

**SKAT's Baseless Accusations and Litigation have Damaged Counter–Plaintiffs**

46.     SKAT had no lawful basis to refuse to refund the Danish tax withheld on the August 2015 TDC Group dividend.

47.     Compounding its wrongful conduct, SKAT has demanded that the Goldstein Plan return the refunds that SKAT paid for the other claims.

19

48.    By doing so, SKAT is forcing Counterclaim–Plaintiffs to defend themselves against a Complaint that is baseless on its face.

49.    The Goldstein Plan purchased the Danish stock at issue with knowledge of the Double-Taxation Treaty and SKAT's policy and practice of refunding Danish tax to U.S. pensions.

50.    If not for SKAT's promise to refund dividend taxes to U.S. pensions, the Goldstein Plan would never have invested in the Danish companies, let alone paid taxes on the resulting dividends.

51.    Indeed, as a general matter, it would have made no sense for the non-profit, U.S.-tax-exempt Goldstein Plan to purchase stock that would incur a 27% Danish tax, particularly when the United States has taxation treaties with over 60 other countries. See Internal Revenue Service, "United States Income Tax Treaties – A to Z," https://www.irs.gov/businesses/international-businesses/united-states-income-tax-treaties-a-to-z (last visited Mar. 13, 2019).

52.    SKAT's unjustified refusal to adhere to the Double-Taxation Treaty has damaged the Goldstein Plan in an amount no less than DKK 1,080,000, which as of April 8, 2019 is approximately USD 162,951.48, excluding interest and costs.

53.    Upon information and belief, SKAT decided that the existence of one allegedly-fraudulent refund scheme must mean that no U.S. pension plan rightfully owned shares or received dividends from Danish companies.

54.    Upon information and belief, consequently, SKAT commenced litigation against hundreds of U.S. pension plans without bothering to investigate whether each defendant bore any relation or similarity to Mr. Shah's alleged scheme.

55. Upon information and belief, SKAT has no good-faith basis to believe that one bad actor should eviscerate a fundamental premise of the Double-Taxation Treaty: that non-profit pensions such as the Goldstein Plan need not pay tax to the United States or Denmark.

56. SKAT is attempting to collect those eight refunds via this litigation and a parallel proceeding in Danish tax court.

57. Upon information and belief, SKAT has referred the allegations in the Complaint relating to the Goldstein Plan's transactions and Goldstein to civil and criminal authorities in Denmark.

58. SKAT is forcing Counterclaim–Plaintiffs to defend themselves in multiple jurisdictions against the same allegations as set forth in the Complaint, exposing the Parties to the likelihood of inconsistent decisions.

59. SKAT's course of conduct has subjected the Goldstein Plan and Goldstein to substantial harm, including significant costs.

### COUNTERCLAIM COUNT I
**(Declaratory Judgment that Decisions of this Court are Binding on SKAT and Estop SKAT from any other Efforts Outside this Jurisdiction to Obtain Remedies Arising out of or Relating to the Transactions in this Complaint)**

60. Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 59 as if fully set forth herein.

61. This is a counterclaim for judgment declaring that this Court's decisions in this action arising out of the transactions set forth in the Complaint are binding on SKAT in all jurisdictions and venues, including other U.S. courts and arbitrations, Danish administrative proceedings and/or investigations, Danish court actions, and any and all others.

62. This Court "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

63.    This Court has held that "[t]he intent [of the Declaratory Judgement Act] is to allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them." Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 585 (S.D.N.Y. 1990).

64.    Counterclaim–Defendant SKAT voluntarily availed itself of this Court's jurisdiction.

65.    SKAT alleges that Counterclaim–Plaintiffs engaged in fraud in connection with applications for tax dividend reimbursement in connection with certain transactions identified in the Complaint.

66.    Upon information and belief, concurrently with this litigation, SKAT is pursuing multiple actions and investigations against Counterclaim–Plaintiffs in Denmark and other jurisdictions arising out of the same transactions at issue in the Complaint.

67.    Counterclaim–Plaintiffs will suffer substantial harm if SKAT pursues multiple actions prosecuting the exact same conduct, across multiple jurisdictions and venues, against Counter–Plaintiffs.

68.    Moreover, SKAT's pursuit of the same causes of action against Counterclaim–Plaintiffs across multiple jurisdictions and venues gives rise to likely conflicting outcomes, which will only exacerbate the disputes between the Parties.

## COUNTERCLAIM COUNT II
### (Preliminary and Permanent Injunctive Relief)

69.     Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 68 as if fully set forth herein.

70.     By pursuing its claims in multiple jurisdictions, SKAT has forced Counterclaim–Plaintiffs to expend significant resources in defending the exact same conduct under different substantive and procedural laws in foreign jurisdictions.

71.     SKAT's actions also threaten the Parties with conflicting outcomes that will only exacerbate and prolong their disputes.

72.     Counterclaim–Plaintiffs will continue to suffer substantial harm if SKAT pursues these foreign actions while prosecuting its claims before this Court.

73.     Therefore, Counterclaim–Plaintiffs respectfully request that this Court issue a preliminary and permanent injunction prohibiting SKAT from taking any action that would impair or otherwise impact matters that SKAT has submitted for determination to this Court.

## COUNTERCLAIM COUNT III
### (Recovery of Denied Claims)

74.     Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 73 as if fully set forth herein.

75.     Although the Goldstein Plan had nothing to do with Mr. Shah, SKAT refused to pay a refund due to the Goldstein Plan in the amount of DKK 1,080,000 for a TDC/AS dividend issued on August 10, 2015.

76.     The amount owed to the Goldstein Plan as a result of the improper denial of this Reclaim Application is no less than DKK 1,080,000 (which as of April 8, 2019 is approximately USD 162,951.48), excluding interest and costs.

## COUNTERCLAIM COUNT IV
### (Promissory Estoppel)

77.     Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 76 as if fully set forth herein.

78.     Upon information and belief, for years, SKAT has refunded Danish tax paid to all U.S. pension plans that submit the documentation requested by SKAT.

79.     In reliance on SKAT's practice of paying all properly-documented claims, the Goldstein Plan purchased shares of the Danish companies delineated supra in Paragraph 38 in order to receive dividends from those companies.

80.     In reliance on SKAT's practice of paying all properly-documented claims, the Goldstein Plan submitted the nine refund claims to SKAT.

81.     But for SKAT's practice of paying all properly-documented claims, the Goldstein Plan never would have invested in those securities, let alone paid Danish tax on their dividends.

82.     Indeed, as a non-profit pension plan, the Goldstein Plan was exempt from all income tax levied by the United States and various countries with which the United States has tax treaties, including Denmark.

83.     Thus, SKAT is estopped from demanding that the Goldstein Plan pay Danish income tax on the dividends.

84.     The amount owed to the Goldstein Plan as a result of the improper denial of its application is no less than DKK 1,080,000 (which as of April 8, 2019 is approximately USD 162,951.48), excluding interest and costs.

WHEREFORE, for the reasons outlined above, Counterclaim–Plaintiffs request that this Court enter judgment in their favor as follows:

A.  Deny SKAT all relief sought in its Complaint against the Goldstein Defendants;

B.  For Counterclaim Count I, SKAT is bound by the decisions of this Court relating to or arising out of the transactions and facts set forth in the Complaint against the Goldstein Defendants in all other jurisdictions and venues;

C.  For Counterclaim Count II, SKAT is preliminarily and permanently enjoined from pursuing actions in other jurisdictions arising out of the same transactions at issue in the Complaint;

D.  For Counterclaim Counts III and IV, SKAT is liable to Counterclaim–Plaintiffs for damages sustained by SKAT's wrongful conduct in refusing to reimburse the Goldstein Plan in connection with the Goldstein Plan's Reclaim on dividends received in the amount of DKK 1,822,230, plus pre- and post-judgment interests, fees, costs and expenses;

E.  For all Counts, SKAT is liable for the costs of this action; and

F.  For all Counts, SKAT is liable for all other and further relief that is just and proper.

## JURY DEMAND

Counterclaim–Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

GUSRAE KAPLAN NUSBAUM PLLC


/s/ Martin H. Kaplan
Martin H. Kaplan
Kari Parks
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Defendants / Counterclaim-Plaintiffs
The Goldstein Law Group PC 401(K) Profit
Sharing Plan & Sheldon Goldstein*