**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case no. 18-CV-05053
(LAK).

MASTER DOCKET

18-MD-2865 (LAK)

**PLAINTIFF-COUNTERCLAIM-DEFENDANT**
**SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS THE AMENDED COUNTERCLAIMS**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................2

LEGAL STANDARDS ..............................................................................................6

ARGUMENT ..........................................................................................................6

I.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
    GOLDSTEIN'S REQUESTS FOR DECLARATORY AND INJUNCTIVE
    RELIEF..........................................................................................................6

    A.  Goldstein's Requests For Declaratory And Injunctive Relief Are Not
        Based On Rights Or Legal Relations Between The Parties....................7

    B.  Goldstein's Requests For Declaratory And Injunctive Relief
        Do Not Present A Sufficiently Immediate Dispute................................8

II. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION
    OVER GOLDSTEIN'S REQUEST FOR DECLARATORY RELIEF...........................11

III. GOLDSTEIN'S REQUEST FOR AN
     ANTI-FOREIGN-SUIT INJUNCTION IS FRIVOLOUS. ...............................12

IV. GOLDSTEIN FAILED TO STATE A CLAIM FOR PROMISSORY ESTOPPEL.........16

V.  RECOVERY OF DENIED CLAIMS IS NOT A CAUSE OF ACTION..........................17

CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989) ...................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................6

*C.D.S., Inc. v. Bradley Zetler, CDS, LLC*, 213 F. Supp. 3d 620 (S.D.N.Y. 2016) .................14, 15

*Calderon v. Ashmus*, 523 U.S. 740 (1998) .....................................................................................9

*Carr v. DeVos*, No. 17 Civ. 8790 (KPF), 2019 WL 917198 (S.D.N.Y. Feb. 25, 2019) ...............................................................................................................................8

*Casaburi v. U.S. Dep't of Agriculture*, No. 97-CV-1439 NPM DNH, 1998 WL 887278 (S.D.N.Y. Dec. 11, 1998)..........................................................................................17

*Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012) ...............................................................7

*China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987)..............................................................................................12, 13, 14, 15

*Cohen v. Avanade Inc.*, 874 F. Supp. 2d 315 (S.D.N.Y. 2012) .....................................................16

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39 (2d Cir. 1995).................................................................................................................16

*David Benrimon Fine Art LLC v. Durazzo*, No. 17 Civ. 6382 (JFK), 2017 WL 4857603 (S.D.N.Y. Oct. 26, 2017) ..........................................................................................15

*DDCLAB Ltd. v. E.I. Du Pont De Nemours and Co.*, No. 03 CV 3654GBD, 2005 WL 425495 (S.D.N.Y. Feb. 18, 2005)....................................................................................16

*Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) ....................................11, 12

*Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002) ...............8, 10, 14

*Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 14 Civ. 7222 (KPF), 2015 WL 4254033 (S.D.N.Y. Jul. 14, 2015) ..........................................................................................11

*ED Capital, LLC v. Bloomfield Inv. Res. Corp.*, 155 F. Supp. 3d 434 (S.D.N.Y. 2016) ................................................................................................................12, 13, 14

ii

Page(s)

*Empresa Generadora de Electricidad Itabo, S.A. v. Corporacion Dominicana de Empresas Electricas Estatales*, No. 05 CIV 5004 RMB, 2005 WL 1705080 (S.D.N.Y. Jul. 18, 2005) ..................................................................................15

*Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, No. 93 Civ. 8100, 1996 WL 157498 (S.D.N.Y. Apr. 4, 1996).............................................................15

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ...........................................6

*Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, No. 98 Civ. 861 RWS, 2003 WL 1345136 (S.D.N.Y. Mar. 19, 2003). .......................................................................17

*Hamilton Bank, N.A. v. Kookmin Bank*, 999 F. Supp. 586 (S.D.N.Y. 1998)................15

*Jenkins v. U.S.*, 386 F.3d 415 (2d Cir. 2004) ................................................................9

*Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348 (S.D.N.Y. 2017)....................................................................16

*Laker Airways, Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984) ........................................................................................................................12

*Makarova v. U.S.*, 201 F.3d 110 (2d Cir. 2000) ...........................................................6

*Marilyn Miglin, Inc. v. Gottex Indus., Inc.*, No. 90 Civ. 2915 (DNE), 1992 WL 170673 (S.D.N.Y. Jul. 9, 1992) ........................................................................17

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ............................9

*MasterCard Int'l Inc. v. Argencard Sociedad Anonima*, No. 01 CIV. 3027 (JGK), 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002) .........................................................13

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)............................................7

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008) ............................6

*N. Am. Airlines, Inc. v. Int'l Brotherhood of Teamsters, AFL-CIO*, No. 04 Civ. 9949 (KMK), 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ...................................11

*Obal v. Deutsche Bank Nat'l Trust Co.*, No. 14 Civ. 2463, 2015 WL 631404 (S.D.N.Y. Feb. 13, 2015)................................................................................11, 17

*Proffitt v. Village of Deposit*, No. 3:15-cv-750 (GLS/DEP), 2018 WL 1157940 (N.D.N.Y. Mar. 2, 2018)............................................................................................17

*Public Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237 (1952)..................9, 10

*Ray v. Samsung Elec. Am., Inc.*, No. 15cv8540 (DLC), 2016 WL 3406127
(S.D.N.Y. June 17, 2016) ............................................................................................8

*In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019) ...................... *passim*

*Software AG, Inc. v. Consist Software Sols., Inc.*, 323 F. App'x 11
(2d Cir. 2009) .............................................................................................................15

*Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012) .................................................8

*Viringo, Inc. v. ZTE Corp.*, No. 14-cv-4988 (LAK), 2015 WL 3498634 (S.D.N.Y.
Jun. 3, 2015)...............................................................................................................14

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) .........................................................................11

*Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*, No. 16 Civ. 5015
(KMW) (RLE), 2017 WL 1386357 (S.D.N.Y. Apr. 17, 2017) .............................................10

**Statutes**

28 U.S.C. § 2201(a) ......................................................................................................................7

Plaintiff-counterclaim-defendant Skatteforvaltningen ("SKAT"), the Customs and Tax Administration of the Kingdom of Denmark, respectfully submits this memorandum of law in support of its motion to dismiss the amended counterclaims of defendants-counterclaimants Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Plan") and Sheldon Goldstein (together with the Plan, "Goldstein").[1]

## PRELIMINARY STATEMENT

Having first failed to convince the Court that this action should be dismissed at the pleading stage, Goldstein now asserts nonsensical and premature counterclaims against SKAT. Goldstein seeks (i) a declaratory judgment that this Court's unspecified and, by definition, not-as-yet issued future decisions will bind SKAT in any jurisdiction throughout the world as to unidentified issues or claims in connection with non-existent causes of action against Goldstein in such other jurisdictions; (ii) injunctive relief enjoining non-existent claims by SKAT against Goldstein in other jurisdictions; and (iii) damages for SKAT's rejection of additional fraudulent refund submissions. Like its previous motion to sever, Goldstein's counterclaims are "completely baseless."[2]

First, the Court lacks subject matter jurisdiction over Goldstein's requests for declaratory and injunctive relief. Goldstein does not allege facts establishing a "case of actual controversy" within the meaning of the Declaratory Judgment Act for two reasons. Goldstein fails to identify any right or legal relationship between the parties on which to base the declaratory and injunctive

---

1. Defendants the Goldstein Law Group PC 401(K) Profit Sharing Plan's and Sheldon Goldstein's Amended Answer, Affirmative Defenses, and Counterclaims Against Skatteforvaltningen and Third-Party Complaint Against ED&F Man Capital Markets, Ltd., No. 1:18-MD-2865 (LAK), ECF No. 101. (Declaration of Sarah L. Cave, dated May 6, 2019 ("Cave Decl."), Ex. 1.)

2. Pretrial Order No. 2, No. 1:18-cv-04047-LAK, ECF No. 30. (Cave Decl. Ex. 3.)

relief it seeks.  Goldstein also does not establish that there is a sufficiently immediate justiciable case or controversy under Article III of the United States Constitution.

Second, even if subject matter jurisdiction over Goldstein's claims existed, the Court should decline to exercise it.  The declaratory and injunctive relief Goldstein requests would serve no useful purpose because SKAT has not initiated any claims against Goldstein in any other jurisdiction.

Third, Goldstein's request for an anti-foreign-suit injunction is nonsensical because the only Danish proceeding that involves Goldstein is the administrative appeal *Goldstein* filed. Goldstein has no right to enjoin its own appeal.  If Goldstein does not want its administrative appeal to proceed in Denmark, it can withdraw the appeal.

Finally, Goldstein's claims for promissory estoppel and "recovery of denied claims" should be dismissed for failure to state a claim upon which relief may be granted.

## BACKGROUND

SKAT is the Customs and Tax Administration of the Kingdom of Denmark, the agency responsible for assessing and collecting taxes in Denmark and issuing tax refunds to claimants. (Counterclaim ¶ 5.)  On June 6, 2018, SKAT filed its complaint against Goldstein, alleging that Goldstein submitted eight fraudulent applications to SKAT requesting refunds of tax withheld from dividends issued on shares of Danish stock that Goldstein purported to own.  (*See generally* Compl.)[3]  SKAT alleges that the applications were fraudulent because the Goldstein Plan did not own the shares that it claimed to own, did not earn the dividends it claimed to have earned, and was not entitled to the tax refunds it claimed.  (*Id.* ¶ 4.)  SKAT's complaint pleaded six causes of

---

3.  "Compl." refers to SKAT's complaint in its action captioned *SKAT v. The Goldstein Law Group PC 401(K) Profit Sharing Plan & Sheldon Goldstein*, No. 1:18-cv-05053, ECF No. 1.  (Cave Decl. Ex. 2.)

action against Goldstein for fraud, aiding and abetting fraud, payment by mistake, unjust enrichment, money had and received, and negligent misrepresentation. (*Id.* ¶¶ 50-80.)

Prior to filing its complaints in this MDL proceeding, in April and May 2018, SKAT issued determination letters to the pension plan defendants withdrawing its previous refund decisions and seeking repayment of the fraudulently obtained refunds. (Defs. Mem. 4.)[4] SKAT's administrative determinations are subject to appeal to Skatteankestyrelsen, or the Tax Appeals Agency. (*Id.*)

**Goldstein's Motion to Dismiss**

On August 15, 2018, Goldstein moved to dismiss SKAT's complaint under Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[5] Goldstein argued that SKAT's claims were barred by the revenue rule—a common law principle that "prohibits courts from hearing claims by foreign sovereigns that seek direct or indirect enforcement of their tax laws,"[6]—because whether it owned the shares of Danish stock it purported to own is a matter of Danish tax law "being vigorously challenged by [Goldstein] in ongoing Danish administrative tax appeals proceedings." (Defs. Mem. 1.)

On January 9, 2019, the Court denied the motion to dismiss. *In re Skat*, 356 F. Supp. 3d at 300. The Court held that the revenue rule did not require dismissal of SKAT's claims because SKAT was alleging that the defendants engaged in "garden variety commercial fraud." *Id.* at 308. Explaining that it did "not expect SKAT to sit idly by," the Court saw "no inconsistency in

---

4. "Defs. Mem." refers to the Consolidated Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss the Complaints Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b), No. 1:18-cv-04047-LAK, ECF No. 35. (Cave Decl. Ex. 5.)

5. Notice of Consolidated Defendants' Joint Motion to Dismiss the Complaints Pursuant to Fed. R. Civ P. 12(b)(1), 12(b)(6) and 9(b), No. 1:18-cv-04047-LAK, ECF No. 34. (Cave Decl. Ex. 4.)

6. *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 310 (S.D.N.Y. 2019).

SKAT's decision to withdraw its prior decision to refund dividend taxes, leading to administrative appeals in Denmark, and to file the complaints alleging fraud and seeking relief in this Court." *Id.* at 320. Nor, the Court found, was there any "indication at this point the Court will potentially render a determination with respect to Danish tax law that might conflict with a determination by an administrative or judicial body in Denmark." *Id.* at 319.

**Goldstein's Counterclaims**

On April 23, 2019, Goldstein filed its amended answer to SKAT's complaint and counterclaims against SKAT, purporting to assert four causes of action for (i) a declaratory judgment; (ii) preliminary and permanent injunctive relief; (iii) recovery of denied claims; and (iv) promissory estoppel. (Counterclaim ¶¶ 78-102.)

Goldstein alleges that the Plan submitted to SKAT nine applications for refunds of taxes withheld from dividends the Plan received on shares of Danish stock pursuant to the double taxation treaty between the United States and Denmark. (*Id.* ¶ 52.) Goldstein does not allege that SKAT ever promised to approve and pay its refund applications, or that, outside of the applications, it ever had any interaction with SKAT. Nor does Goldstein allege that it ever relied on any purported promise that SKAT made to it. Goldstein simply alleges that the Plan "purchased the Danish stock at issue with knowledge of the Double-Taxation Treaty and SKAT's policy and practice of refunding Danish tax to U.S. pensions." (*Id.* ¶ 65.)

For eight of its applications, SKAT initially paid Goldstein the requested refunds. (*Id.* ¶ 53.) But after SKAT discovered that it had been the victim of a massive fraud that it contends Goldstein participated in, SKAT denied Goldstein's ninth refund, and subsequently demanded that Goldstein return the refunds paid for its other eight claims. (*Id.* ¶¶ 54-55, 63.) Goldstein

alleges that it has lost $162,951.48, the amount of its unpaid ninth refund application, but does not allege that it suffered any out-of-pocket losses.  (*Id.* ¶ 68.)

Ignoring the Court's decision denying the motion to dismiss, Goldstein alleges that "SKAT is forcing" it "to defend . . . against a Complaint that is baseless on its face."  (*Id.* ¶ 64.) Goldstein further alleges that SKAT's denial of its ninth application was "unjustified," and that SKAT "is attempting to collect" the eight refunds it paid to Goldstein "via this litigation and a parallel proceeding in Danish tax court," (*id.* ¶¶ 68, 72), presumably referring to the administrative appeal of SKAT's refund decisions that Goldstein filed in Denmark.  (Defs. Mem. 4.)[7]  Goldstein also alleges, "upon information and belief," that SKAT has referred "Goldstein to civil and criminal authorities in Denmark." (Counterclaim ¶ 73.)

While Goldstein alleges that "SKAT is forcing [Goldstein] to defend [itself] in multiple jurisdictions," its pleading fails to identify any other action that SKAT has commenced against it. (*Id.* ¶ 74.)  Goldstein nevertheless seeks a declaratory judgment "that this Court's decisions in this action arising out of the transactions set forth in the Complaint are binding on SKAT in all jurisdictions and venues, including other U.S. courts and arbitrations, Danish administrative proceedings and/or investigations, Danish court actions, and any and all others." (*Id.* ¶ 79.) Goldstein also seeks preliminary and permanent injunctive relief enjoining SKAT "from pursuing actions in other jurisdictions arising out of the same transactions at issue in the

---

7.  Goldstein separately alleges that "[c]oncurrently with this litigation, SKAT is pursing multiple actions and investigations against [Goldstein] . . . in Denmark and, upon information and belief, other jurisdictions," but does not allege what these "multiple actions" are.  (*Id.* ¶ 84.)  SKAT is unaware what other proceedings Goldstein may be referring to, aside from Goldstein's own Danish administrative appeal of SKAT's decisions.

Complaint," although the only such proceeding is the Danish administrative appeal Goldstein filed.  (*Id.* pg. 29.)

## LEGAL STANDARDS

A court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(1) if it "lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  The party asserting federal subject matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  On a motion to dismiss under Rule 12(b)(1), the complaint's factual allegations are accepted as true, but the Court "will not draw inferences in the plaintiff's favor when determining whether there is jurisdiction," and "may consider evidence outside the pleadings."  *In re Skat*, 356 F. Supp. 3d at 310.

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are accepted as true and reasonable inferences are drawn in favor of the claimant.  *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Where the allegations are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 544 U.S. at 557).

## ARGUMENT

### I.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER GOLDSTEIN'S REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF.

Goldstein's requests for a declaratory judgment and injunctive relief should be dismissed for lack of subject matter jurisdiction.  The Declaratory Judgment Act provides that "[i]n a case

of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The phrase "'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the United States Constitution.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Goldstein's allegations fail to plead a justiciable "case of actual controversy" for two reasons.  First, Goldstein's pleading fails to identify any "rights or legal relations" for the Court to declare.  (*Infra*, I.A.)  Second, the pleading fails to allege a controversy or dispute that is sufficiently immediate to be justiciable.  (*Infra*, I.B.)

**A.    Goldstein's Requests For Declaratory And Injunctive Relief Are Not Based On Rights Or Legal Relations Between The Parties.**

Although the Declaratory Judgment Act gives courts discretion to declare the rights and other legal relations of any interested party, "that discretion does not extend to the declaration of rights that do not exist under law."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).  Instead, "[l]ike a preliminary injunction, a declaratory judgment" must be based on "a valid legal predicate," as the Act is "procedural only" and "does not create an independent cause of action."  *Id.* (internal quotations omitted) (vacating injunction barring enforcement of Ecuadorian judgment in any other jurisdiction for lack of legal predicate).  Goldstein does not identify any "legal predicate" for its requests for declaratory and injunctive relief under the Declaratory Judgment Act, and thus fails to plead "a case of actual controversy within" the Court's jurisdiction.[8]  Goldstein's request is similar to the one rejected by the Second Circuit in

---

8.   Counts III and IV of Goldstein's pleading seek to recover the Plan's ninth refund that was denied by SKAT, asserting causes of action for "recovery of denied claims" and promissory estoppel.  (Counterclaim ¶¶ 92-102.)  These claims, however, are unconnected to the declaratory and injunctive relief Goldstein seeks, as they are not "transactions set forth in the Complaint" or "matters SKAT has submitted for determination to this Court."  (*Id.*

*Springfield Hospital v. Hofmann*, 488 F. App'x 534, 535 (2d Cir. 2012). After finding that the hospital "lacked a private cause of action under the relevant Medicaid statutes" on which it based its claims, the Second Circuit held that it could not "maintain an action for a declaratory judgment" because "[a] prayer for relief, standing alone, simply does not satisfy the requirement that a case or controversy exist." *Id.* at 534-35.

Similarly, in *Ray v. Samsung Electronics America, Inc.*, this Court held that although plaintiff Ray's requests for "declaratory and injunctive relief" were enumerated as separate causes of action, "[d]eclaratory relief . . . and a request for an injunction are not separate causes of action; they are remedies." No. 15cv8540 (DLC), 2016 WL 3406127, at *8 (S.D.N.Y. June 17, 2016). "Because none of Ray's claims survive[d]" the motion to dismiss, the Court also dismissed her requests for declaratory and injunctive relief. *Id.* Similarly, in *Carr v. DeVos*, this Court dismissed plaintiff Carr's declaratory judgment action for, among other reasons, "the absence of a right of action." No. 17 Civ. 8790 (KPF), 2019 WL 917198, at *8 (S.D.N.Y. Feb. 25, 2019). The same is true here: Goldstein has not pleaded a right of action that could serve as the legal predicate for the relief it seeks.

### B. Goldstein's Requests For Declaratory And Injunctive Relief Do Not Present A Sufficiently Immediate Dispute.

Jurisdiction under the Declaratory Judgment Act is "circumscribe[d] . . . to real conflicts so as to preclude the courts from gratuitously rendering advisory opinions with regard to events in dispute that have not matured to a point sufficiently concrete to demand immediate adjudication and thus that may never materialize as actual controversies." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002) ("*Dow Jones I*"). As the

---

¶¶ 79, 91.) And, in any event, both counts should be dismissed under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. (*See infra* IV & V.)

Supreme Court explained in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 312 U.S. 270, 273 (1941).

"Where the relief sought 'would not resolve the entire case or controversy as to any party, but would merely determine a collateral legal issue governing certain aspects of pending or future suits,' a declaratory judgment action falls 'outside the constitutional definition of a case in Article III.'" *Jenkins v. U.S.*, 386 F.3d 415, 418 (2d Cir. 2004) (quoting *Calderon v. Ashmus*, 523 U.S. 740, 746-47 (1998)); *see also Public Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.").

The Court lacks subject matter jurisdiction because Goldstein fails to allege a dispute that is sufficiently immediate to establish a "case of actual controversy" under the Declaratory Judgment Act. Far from resolving the controversy between the parties, the declaratory relief that Goldstein seeks would only add to it. *Jenkins*, 386 F.3d at 417-18.

Courts have repeatedly dismissed "nebulous" and "contingent" declaratory judgment actions, like Goldstein's, seeking declaratory relief concerning disputes not sufficiently immediate or based on contingencies that may not occur. For example, in *Wycoff*, the plaintiff sought a declaratory judgment that certain of its business activities, in general, constituted interstate commerce. 344 U.S. at 244. The Supreme Court dismissed the case because Wycoff did "not request an adjudication that it ha[d] the right to do, or to have, anything in particular," or

that the Commission, which regulated Wycoff, was "without power to enter any specific order or take any concrete regulatory step."  344 U.S. at 244.

*Dow Jones I* is also instructive.  237 F. Supp. 2d at 394.  There, the Court found that plaintiff Dow Jones failed to meet "its burden to sufficiently demonstrate the existence of an actual controversy," where it sought a declaratory judgment that any judgment entered against it in the United Kingdom would be unenforceable on First Amendment grounds.  *Id.* at 407.  There was not enough "immediacy and reality in Dow Jones' claim" given the early stage of the United Kingdom litigation, and its "claim of impending harm, and its fears of enforcement of an adverse judgment, [were] too abstract, remote and hypothetical to constitute an actual controversy qualifying for the declaratory relief it" sought.  *Id.* at 408-09.  The same is true here:  the parties have only passed the pleading stage and begun document discovery, with the earliest cases not projected to proceed to trial for more than a year, and any potential judgment against Goldstein remains "abstract, remote and hypothetical."  *Id.*  Because SKAT has not commenced, or threatened to commence, any other proceeding against Goldstein, a declaration that this Court's decisions are binding on SKAT in "other U.S. courts and arbitrations," (Counterclaims ¶ 79), would be purely advisory.  *See Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*, No. 16 Civ. 5015 (KMW) (RLE), 2017 WL 1386357, at *7 (S.D.N.Y. Apr. 17, 2017) (dismissing request for declaratory judgment that none of its actions infringed the defendant's patents because it did not present "a case of actual controversy," as the pleading failed to "reference . . . any specific copyright . . . or any specific act of direct infringement," and thus sought "the kind

of hypothetical and advisory opinion, isolated from concrete facts, that cannot confer jurisdiction").[9]

## II. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER GOLDSTEIN'S REQUEST FOR DECLARATORY RELIEF.

Even if Goldstein's requested declaratory relief presented an actual controversy, the Court is not "require[d] to exercise its jurisdiction under the Declaratory Judgment Act." *Dresser-Rand*, 2015 WL 4254033, at *6. Rather, the Declaratory Judgment Act is "an enabling Act" that "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). "Courts have consistently interpreted" the permissive language in the Act "as a broad grant of discretion over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) ("*Dow Jones II*").

In *Dow Jones II*, the Second Circuit set forth a two-part test for courts to use in determining whether to exercise jurisdiction over a declaratory judgment action: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Id.* at 359. The *Dow Jones II* Court also listed three additional factors that courts may consider in determining whether to exercise jurisdiction: (1) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata;'" (2) "whether the use of a declaratory

---

9. *See also Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 14 Civ. 7222 (KPF), 2015 WL 4254033, at *8 (S.D.N.Y. Jul. 14, 2015) (dismissing action seeking a declaratory judgment that "depend[ed] upon contingent future events that may not occur as anticipated, or indeed may not occur at all"); *Obal v. Deutsche Bank Nat'l Trust Co.*, No. 14 Civ. 2463, 2015 WL 631404, at * 5 (S.D.N.Y. Feb. 13, 2015) (dismissing action seeking declaratory judgment because plaintiff failed to assert "any real and immediate legal controversy between [defendant] and himself"); *N. Am. Airlines, Inc. v. Int'l Brotherhood of Teamsters, AFL-CIO*, No. 04 Civ. 9949 (KMK), 2005 WL 646350, at *10 (S.D.N.Y. Mar. 21, 2005) (dismissing action seeking declaratory judgment that "would be purely advisory").

judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court;" and (3) "whether there is a better or more effective remedy." *Id.* at 359-60.

Goldstein's request fails the *Dow Jones II* test. Goldstein's requested declaratory relief will serve no useful purpose in clarifying or settling any legal issues and would only generate more controversy and uncertainty. The better remedy is obvious: if Goldstein does not want its own appeal in Denmark to proceed, then it can withdraw it.

As the Second Circuit has held, "parallel proceedings" in foreign countries "should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) (quoting *Laker Airways, Ltd*. *v. Sabena Belgian World Airlines*, 731 F.2d 909, 926-27 (D.C. Cir. 1984)). And, as this Court previously observed, there is "no inconsistency in SKAT's decision to withdraw its prior decision to refund dividend taxes, leading to administrative appeals in Denmark, and to file the complaints alleging fraud and seeking relief in this Court." *In re Skat*, 356 F. Supp. 3d at 320. Accordingly, the Court should decline to exercise jurisdiction.

## III. GOLDSTEIN'S REQUEST FOR AN ANTI-FOREIGN-SUIT INJUNCTION IS FRIVOLOUS.

Goldstein's request for injunctive relief, enjoining SKAT from participating in the Danish administrative appeal that Goldstein itself commenced, should obviously be denied. When a party "seeks to enjoin a foreign proceeding, an especially rigorous standard applies." *ED Capital, LLC v. Bloomfield Inv. Res. Corp.*, 155 F. Supp. 3d 434, 440 (S.D.N.Y. 2016) *vacated in part on other grounds*. That Goldstein's proposed injunction seeks to enjoin SKAT, rather than any Danish courts or administrative bodies, "does not eliminate the need for due regard to

principles of international comity because such an order effectively restricts the jurisdiction of the court of a foreign sovereign." *China Trade*, 837 F.2d at 35.

The Second Circuit has instructed that anti-foreign-suit injunctions should be "used sparingly" and "granted only with care and great restraint." *Id.* at 36 (internal quotations omitted). Indeed, the Second Circuit takes "a restrictive approach to injunctions against foreign proceedings, rarely permitting" them. *ED Capital*, 155 F. Supp. 3d at 440-41. And "in light of the sparing nature with which foreign-anti-suit injunctions should be issued, the important international comity interests at play, and the basic rule allowing parallel litigations in multiple forums . . . . absent extraordinary circumstances, the Court should only issue such an injunction if the [foreign] litigation presents either a threat to th[e] Court's jurisdiction or a threat to an important domestic policy." *MasterCard Int'l Inc. v. Argencard Sociedad Anonima*, No. 01 CIV. 3027 (JGK), 2002 WL 432379, at *10 (S.D.N.Y. Mar. 20, 2002).

In *China Trade*, the Second Circuit established a two-step test for courts to use to determine whether to grant an anti-foreign-suit injunction. 837 F.2d at 36. First, the Court must determine that the following two conditions are met: "(1) whether the parties to both suits are the same and (2) whether resolution of the case before the enjoining court would be dispositive of the enjoined action." *Id.* at 36. If these conditions are met, the Court should then consider the following five factors: (1) "frustration of a policy in the enjoining forum;" (2) whether "the foreign action would be vexatious;" (3) "a threat" to the enjoining court's "jurisdiction;" (4) the foreign proceedings' "prejudice" to "other equitable considerations;" and (5) whether "adjudication of the same issue in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." *Id.* The two most important of these factors are the frustration of a policy of the enjoining forum and threats to the enjoining court's jurisdiction.

*See id.*; *accord ED Capital*, 155 F. Supp. 2d at 441 ("especially important" are "whether the foreign action threatens the enjoining forum's jurisdiction, and whether strong public policies of the enjoining forum are threatened by the foreign action").

Goldstein's injunction fails to pass the first step of the test because the resolution of SKAT's causes of actions pending before this Court will not necessarily resolve the Plan's pending administrative appeal in Denmark that is sought to be enjoined. For instance, a determination that Goldstein is not liable to SKAT on its common law causes of action because SKAT failed to prove each element of its claims, such as Goldstein's fraudulent intent with respect to its fraud claim, would not necessarily mean that the Plan is entitled under Danish law to the refunds it claimed.[10] These circumstances are similar to *Viringo, Inc. v. ZTE Corp.*, where this Court denied the requested injunction because a "decision holding that ZTE breached the" parties' agreement "would not necessarily foreclose the antitrust action in the Shenzhen court." No. 14-cv-4988 (LAK), 2015 WL 3498634, at *11 (S.D.N.Y. Jun. 3, 2015); *see also C.D.S., Inc. v. Bradley Zetler, CDS, LLC*, 213 F. Supp. 3d 620, 628-29 (S.D.N.Y. 2016) (denying injunction given different claims asserted in French and United States actions such that "[r]esolution of this action may, therefore, not be dispositive of the French Action").

Because Goldstein has not met the first two conditions under *China Trade*, the Court need not consider the five secondary factors. *Cf. Dow Jones I*, 237 F. Supp. 2d at 422 ("[u]pon finding these requirements, a court should then consider" the five factors). These factors weigh against granting Goldstein's injunction in any event:

---

10. In addition, in denying Goldstein's motion to dismiss SKAT's complaint, the Court observed that while "there is no indication at this point that the Court potentially will render a determination with respect to Danish tax [or other] law that might conflict with a determination by an administrative or judicial body in Denmark," if, as the action continues, that "becomes a more tangible possibility, then it may be appropriate to revisit the issue." *In re Skat*, 356 F. Supp. 3d at 319.

- Allowing the Plan's Danish appeal to proceed will not frustrate any policy of the United States. *See China Trade*, 837 F.2d at 36 ("parallel proceedings are ordinarily tolerable" and "do[] not, without more, justify enjoining" a foreign suit).

- Nor will it threaten the Court's jurisdiction over this action. *See David Benrimon Fine Art LLC v. Durazzo*, No. 17 Civ. 6382 (JFK), 2017 WL 4857603, at *2 (S.D.N.Y. Oct. 26, 2017) (denying injunction because the foreign court was not "attempting to carve out exclusive jurisdiction" over the action and did not "threaten to undermine a federal judgment") (internal quotations omitted).

- Goldstein—not SKAT—commenced the pending Danish appeal, so the proceeding is in no sense a vexatious action on SKAT's part. *See C.D.S., Inc.*, 213 F. Supp. 3d at 629 (foreign action was "not vexatious because it was not brought . . . to undermine this Court's jurisdiction").

- Even absent Goldstein's requested injunction, it is "not clear" a "race to judgment" would "favor" SKAT, *Hamilton Bank, N.A. v. Kookmin Bank*, 999 F. Supp. 586, 590 (S.D.N.Y. 1998), and the Court has already observed that "there is no indication at this point" that the proceedings going forward concurrently would create a risk of inconsistent decisions. *In re Skat*, 356 F. Supp. 3d at 319.

- Equitable considerations counsel toward denying Goldstein's requested injunction. As the Court has observed already, there is no reason for SKAT to "sit idly by" and let stand its prior decisions approving Goldstein's refunds after discovering it had been the victim of fraud. *Id.* at 320.

Finally, Goldstein also fails to satisfy the ordinary test for a preliminary injunction.

Goldstein cannot demonstrate that it would suffer irreparable harm because it can withdraw its own appeal at any time without the need for an injunction.[11] And Goldstein cannot show a strong likelihood of success, or even a serious question, on the merits because its request is not predicated on a recognized cause of action. (*See* Section I.A., *supra*.)

---

11. *See Software AG, Inc. v. Consist Software Sols., Inc.*, 323 F. App'x 11, 12 (2d Cir. 2009) ("A preliminary anti-suit injunction may be entered only if the multi-factor test set forth in [*China Trade*], and the ordinary test for a preliminary injunction are both satisfied."); *Empresa Generadora de Electricidad Itabo, S.A. v. Corporacion Dominicana de Empresas Electricas Estatales*, No. 05 CIV 5004 RMB, 2005 WL 1705080, at *8 (S.D.N.Y. Jul. 18, 2005) (denying request for foreign-anti-suit injunction where plaintiff failed to meet "its heavy burden of establishing irreparable harm") (internal quotation omitted); *Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, No. 93 Civ. 8100, 1996 WL 157498, at *10 (S.D.N.Y. Apr. 4, 1996) ("to the extent that the Nigerian action presents a threat of monetary injury to Temple, such injury clearly does not constitute irreparable harm").

## IV. GOLDSTEIN FAILED TO STATE A CLAIM FOR PROMISSORY ESTOPPEL.

To state a claim for promissory estoppel under New York law,[12] a plaintiff must plead (i) "a clear and unambiguous promise," (ii) "reasonable and foreseeable reliance by the party to whom the promise is made," and (iii) "an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995). Goldstein fails to allege any of these three elements.

First, Goldstein fails to allege that SKAT made any promise to it at all, let alone a clear and unambiguous one. Rather, Goldstein alleges that it relied on "SKAT's *practice* of paying all properly-documented claims," (Counterclaim ¶¶ 97-99 (emphasis added)), but this is no substitute for the required clear and unambiguous promise. *See Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 361 (S.D.N.Y. 2017) (dismissing claim for failure to plead "any promise, much less a 'clear and unambiguous'" promise); *DDCLAB Ltd. v. E.I. Du Pont De Nemours and Co.*, No. 03 CV 3654GBD, 2005 WL 425495, at *6 (S.D.N.Y. Feb. 18, 2005) (same).

Second, having failed to allege a clear and unambiguous promise, Goldstein necessarily failed to allege that it reasonably relied on any such promise. *See Cohen v. Avanade Inc.*, 874 F. Supp. 2d 315, 322 (S.D.N.Y. 2012) (in absence of allegation of "clear and unambiguous promise" plaintiff could not allege reliance).

Finally, Goldstein failed to plead that it suffered any out-of-pocket loss from SKAT's denial of its ninth refund application. Rather, through its promissory estoppel claim, Goldstein

---

12. SKAT assumes, strictly for the purposes of this motion, that New York law applies to Goldstein's promissory estoppel and "recovery of denied claims" causes of action. SKAT does not concede that New York law applies to these claims or for all purposes in these actions, and reserves the right to argue the applicability of the laws of other jurisdictions as appropriate.

seeks the amount of the tax that was purportedly withheld from the dividend it purportedly received. (Counterclaim ¶ 102.) But, as the Court in *Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc.* aptly stated, Goldstein is "not entitled to the benefit of the bargain because there was no bargain." No. 98 Civ. 861 RWS, 2003 WL 1345136, at *4 (S.D.N.Y. Mar. 19, 2003). Instead, under the "doctrine of promissory estoppel" Goldstein is at most permitted "to recover out-of-pocket expenses that it has expended in reliance on a promise that [SKAT] fail[ed] to keep." *Marilyn Miglin, Inc. v. Gottex Indus., Inc.*, No. 90 Civ. 2915 (DNE), 1992 WL 170673, at *12 (S.D.N.Y. Jul. 9, 1992) (citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989)). Goldstein has failed to allege that it suffered any loss from its alleged transactions related to the ninth refund application.

## V.     RECOVERY OF DENIED CLAIMS IS NOT A CAUSE OF ACTION.

Goldstein's third cause of action is styled "recovery of denied claims," and alleges simply that "SKAT refused to pay a refund due to the" Plan. (Counterclaim ¶¶ 92-94.) But "recovery of denied claims" is not a recognized cause of action under New York law and thus this count should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. In *Obal*, the Court dismissed plaintiff's cause of action titled "Cancellation of Instruments" because the governing law of Nevada "d[id] not recognize a cause of action for 'cancellation of instruments.'" 2015 WL 631404, at *7. And in *Casaburi v. U.S. Department of Agriculture*, the Court held that because the "plaintiff fail[ed] to set forth what cause of action he [brought] against the USDA, the court may alternatively dismiss his action for failure to state a claim upon which relief can be granted." No. 97-CV-1439 NPM DNH, 1998 WL 887278, at *2 n.3 (S.D.N.Y. Dec. 11, 1998); *see also Proffitt v. Village of Deposit*, No. 3:15-cv-750 (GLS/DEP), 2018 WL 1157940, at *3 n.4 (N.D.N.Y. Mar. 2, 2018) (noting that "plaintiff's complaint fail[ed] to enumerate specific causes of action" and stating that "[w]hen plaintiffs are

represented by legal counsel, neither the court nor defendants should have to engage in guesswork to address every possible legal theory . . . that is not clearly delineated in their complaint").

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court dismiss with prejudice Goldstein's counterclaims.

Dated: New York, New York
May 6, 2019

HUGHES HUBBARD & REED LLP

By:＿＿＿/s/ Sarah L. Cave＿＿＿＿＿＿
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com
sarah.cave@hugheshubbard.com
john.mcgoey@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*