UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | MASTER DOCKET |
| CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | Case No. 1-18-MD-02865-LAK |
| This document relates to 1:18-CV-05053-LAK. | |

**DEFENDANTS–COUNTERCLAIM PLAINTIFFS–THIRD-PARTY PLAINTIFFS
THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN'S
AND SHELDON GOLDSTEIN'S OPPOSITION TO
PLAINTIFF–COUNTERCLAIM DEFENDANT SKATTEFORVALTNINGEN'S
<u>MOTION TO DISMISS THE AMENDED COUNTERCLAIMS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................ 2

    The Double-Taxation Treaty Established the Parties' Relevant Rights...................... 2

    The Goldstein Defendants Do Not Contest that Sanjay Shah Victimized SKAT ..... 4

    Despite Initiating Disputes with the Goldstein Defendants in Denmark and the
    United States, SKAT has Never Identified Any Connection Between the Goldstein
    Defendants and the Shah Scheme ............................................................................ 7

    SKAT Continues to Ignore Evidence Exonerating the Goldstein Defendants......... 10

LEGAL STANDARD........................................................................................................ 11

ARGUMENT.................................................................................................................... 12

    I.   This Court Should Issue Declaratory Judgment that Prohibits SKAT from
    Cherry-Picking Favorable Findings ......................................................................... 12

        A.   The "Actual Controversy" Between the Parties Vests this Court with
        Declaratory-Judgment Jurisdiction ................................................................ 13

        B.   SKAT's Duplicative Disputes Have Rendered Declaratory Judgment
        Mandatory, Not Discretionary........................................................................ 16

        C.   Because SKAT Initiated this Lawsuit, Equity Favors Entry of a Declaratory
        Judgment Holding SKAT to this Court's Decisions .................................... 19

    II.   The Counterclaims Adequately Plead that SKAT Had No Rightful Basis to
    Deny the Ninth Refund Application ........................................................................ 19

        A.   The Goldstein Defendants Reasonably Relied on SKAT's Promise to
        Refund Tax Paid on Danish Dividends........................................................... 19

        B.   Counterclaim III Gives SKAT "Fair Notice" of the Counterclaims Caused
        by SKAT's Denial of the Ninth Reclaim Application ............................... 21

    III.   SKAT's Resistance to this Court's Authority Suggests that Injunctive Relief
    May Be Necessary .................................................................................................... 23

    IV.   Should the Court Grant SKAT's Motion to Dismiss, it Should Also Grant the
    Goldstein Defendants Leave to Amend their Counterclaims.................................... 27

    CONCLUSION ...................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

AARP v. 200 Kelsey Assocs., LLC, No. 06 CIV 81 (SCR), 2009 WL 47499 (S.D.N.Y. Jan. 8, 2009) (Lynch, J.)------------------------------------------------------------------------------19

Abbott Laboratories v. Gardner, 387 U.S. 136 (1967)----------------------------------------------19

ACE Am. Ins. Co. v. Bank of the Ozarks, No. 11 Civ. 3146 PGG, 2014 WL 4953566 (S.D.N.Y. Sept. 30, 2014) (Gardephe, J.)---------------------------------------------- 17, 18

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937)----------------------------------------------14

Am. Home Assurance Corp. v. The Ins.Corp. of Ireland, Ltd., 603 F. Supp. 636 (S.D.N.Y. 1984) ----------------------------------------------------------------------------------------------27

Ashcroft v. Iqbal, 556 U.S. 662 (2009)-------------------------------------------------------------25

Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572 (S.D.N.Y. Sept. 19, 2008) (Sweet, J.)------------------------------------------------------------------------30

Bartholet v. Reishauer, A.G. (Zurich), 953 F.2d 1073 (7th Cir. 1992) -------------------------25

Bell Atlantic v. Twombly, 550 U.S. 544 (2007) -----------------------------------------11, 12, 25

Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998 (2d Cir. 1969)------------------------17

C.D.S., Inc. v. Bradley Zetler, CDS, LLC, 213 F. Supp. 3d 620 (S.D.N.Y. 2016) -------------27

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)------------------------------------12

China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33 (2d Cir. 1987)  20, 26, 27, 28

Choctaw Nation v. Okla., 397 U.S. 620 (1970)----------------------------------------------------22

Conley v. Gibson, 355 U.S. 41 (1957) -------------------------------------------------------------24

Cosa Instrument Corp. v. Hobre Instruments BV, 698 F. Supp. 2d 345 (E.D.N.Y. 2010) 17, 18

Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39 (2d Cir. 1995)----------------------21

Diamonds.net LLC v. Idex Online, Ltd., 590 F. Supp. 2d 593 (S.D.N.Y. 2008)--------------14

Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394 (S.D.N.Y. 2002)--------------15

Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384 (2d Cir. 2005) ------17

Faulkner v. Beer, 463 F.3d 130 (2d Cir. 2006)----------------------------------------------------12

Fountain v. Karim, 838 F.3d 129 (2d Cir. 2016) -------------------------------------------------11

Great Am. Ins. Co. v. Houston General Ins. Co., 735 F. Supp. 581 (S.D.N.Y. 1990) -- 13, 14

Henneberry v. Sumitomo Corp. of Am., No. 04 Civ 2128 (PKL), 2005 WL 991772 (S.D.N.Y. Apr. 27, 2005) (Leisure, J.)------------------------------------------------ 21, 22

Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738 (1976)----------------------11

Kramer v. Time Warner, 937 F.3d 767 (2d Cir. 1991)-------------------------------------------12

MasterCard Int'l Inc. v. Argencard Sociedad Anonima, No. 01 Civ. 3027(JGK), 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002) (Koetl, J.) ------------------------------------------ 26, 28

MedImmune, Inc. v. Genentench, Inc., 549 U.S. 118 (2007) -------------------------------- 15, 19

Philip v. Univ. of Rochester, 316 F.3d 291 (2d Cir. 2003)--------------------------------------24

Public Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237 (1952) -----------------------16

<u>R.G. Group v. Horn & Hardart Co.</u>, 751 F.2d 69 (2d Cir. 1984)----------------------------------21

<u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247 (7th Cir. 1995) ---------25

<u>Seminole Nation v. United States</u>, 316 U.S. 286 (1942)----------------------------------------22

<u>Starter Corp. v. Converse, Inc.</u>, 84 F.3d 592 (2d Cir. 1996) ----------------------------- 15, 17

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002)----------------------------------------------24

<u>United States v. Armstrong</u>, No. 99 Cr. 997(JFK), 2011 WL 292018 (S.D.N.Y. Jan. 28, 2011) (Keenan, J.) ---------------------------------------------------------------------------------29

<u>United States v. Walters</u>, 510 F.2d 889 (3d Cir. 1975)------------------------------------------12

<u>Viringo, Inc. v. ZTE Corp.</u>, No. 14-cv-4988(LAK), 2015 WL 3498634 (S.D.N.Y. June 3, 2015) (Kaplan, J.) --------------------------------------------------------------------------------27

<u>Wash. Dep't of Licensing v. Cougar Den, Inc.</u>, 139 S.Ct. 1000 (2019) -------------------------22

S<small>TATUTES</small>

28 U.S.C. § 2201 --------------------------------------------------------------------------------- 12, 18

O<small>THER</small> A<small>UTHORITIES</small>

Dep't of the Treasury Technical Explanation of the Double-Taxation Treaty Art. 25(2) (Jan. 1, 2001) ----------------------------------------------------------------------------------26

Restatement (Second) of Contracts § 90 (1981) ------------------------------------------------20

R<small>ULES</small>

Fed. R. Civ. P. 12(b)(1) -------------------------------------------------------------------------11

Fed. R. Civ. P. 12(b)(6) -------------------------------------------------------------------------11

Fed. R. Civ. P. 15-------------------------------------------------------------------------------27

Fed. R. Civ. P. 8 ------------------------------------------------------------------------- 11, 21

Defendants–Counterclaim Plaintiffs–Third-Party Plaintiffs The Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Plan") and Sheldon Goldstein (collectively, the "Goldstein Defendants") submit this memorandum in opposition to Plaintiff–Counterclaim Defendant Skatteforvaltningen's ("SKAT," and with the Goldstein Defendants, the "Parties") motion to dismiss the Goldstein Defendants' amended counterclaims (the "Motion").

## PRELIMINARY STATEMENT

SKAT is wrong on the facts and wrong on the law.

SKAT's suit against the Goldstein Defendants is just one of hundreds it has filed to try to mitigate its injury and embarrassment from one of the biggest political scandals in Danish history. While the Goldstein Defendants are sympathetic to SKAT's plight, they have no commonality with or connection to the "mastermind" of the alleged "scheme," his allegedly-numerous accomplices, the overwhelming majority of defendants in this multi-district litigation, or the SKAT employee now serving six years in prison for stealing millions from his employer.

In 1998, Mr. Goldstein founded non-party the Goldstein Law Group PC: a real law firm that was the successor to firms formed by Mr. Goldstein since 1980. All of Mr. Goldstein's firms were real, with real offices, employees, payrolls, benefit plans, and, of course, clients. The Plan is a real pension plan, established in 1999 to safeguard firm personnel's retirement savings and other investments. The Plan really did invest in Danish securities, expecting that Denmark would honor its treaty obligations and refund any taxes it levied on non-profit American pension plans.

1

When SKAT first announced its intention to claw back its refunds, the Plan presented evidence proving that all of its reclaim applications were genuine. But SKAT refuses to acknowledge the exonerating evidence produced by the Goldstein Defendants in both this litigation and the Danish Action.

Instead, SKAT presents just words, words, words. SKAT filed this lawsuit—but now argues there is no Article III case or controversy between the Parties. SKAT has invoked this Court's intervention—but insists that this Court's judgments should not bind it. SKAT pleads that it can claw back eight "mistakenly"-paid refunds—but that the Goldstein Defendants have no right to the wrongfully-withheld ninth refund. SKAT asserts the Goldstein Defendants' "guilt by association"—without alleging any association at all.

SKAT's "positions" are meritless. This Court should deny SKAT's motion to dismiss.

## BACKGROUND

### The Double-Taxation Treaty Established the Parties' Relevant Rights

Shortly after World War II, the United States (the "U.S.") negotiated and executed tax treaties with a number of other countries, including the Kingdom of Denmark ("Denmark").[1] The two countries executed the treaty intending to "provid[e] against any construction of the convention that would restrict in any manner any exemption, deduction, credit, or other allowances accorded by the laws of the respective

---

[1] See Convention with Denmark Relating to Double Taxation, Denmark–U.S., Dec. 8, 1948, https://www.irs.gov/pub/irs-trty/denmark.pdf.

countries" and "[s]afeguard the right of taxpayers to appeal" foreign decisions.[2]

Accordingly, both that original treaty and its 2001 replacement upon which the Parties'

pleadings rely (the "Double-Taxation Treaty") prohibit Denmark from taxing dividends

paid by Danish companies to non-profit U.S. pension plans.[3]

　　　　Accordingly, SKAT established an office that processed refund applications from

foreign investors like the Goldstein Plan, and did, in fact, process foreign refund

applications for years.[4] Throughout the relevant time period, SKAT entrusted employee

Sven Nielsen with processing all reclaim applications.[5] But Mr. Nielsen lacked the tools

to examine whether a pension plan actually owned the shares it claimed.[6] Instead, he

merely checked whether applications included the necessary documents and had

properly calculated refund amounts.[7] Mr. Nielsen's former employer, who had raised

concerns with SKAT for years before her 2013 retirement, told the New York Times that

"[Mr. Nielsen's] job was reduced to bookkeeping, essentially, checking if a form was

filled out properly. A monkey could do it."[8]

---

[2] Id. at 2, 1.

[3] Complaint, Dkt. 1 ¶ 22 (June 6, 2018) ("Compl").

[4] Id. ¶¶ 22–24.

[5] David Segal, Where in the World is Denmark's $2 Billion?, N.Y. Times (Oct. 5, 2018), www.nytimes.com/2018/10/05/business/denmark-skat-tax-scandal.html ("Where in the World").

[6] Id.

[7] Declaration of Martin H. Kaplan ("Kaplan Decl.") Exhibit A, Defence of ED&F Man Capital Markets, Ltd., CL-2018-000297, CL-2018-000404, CL-2018-00590, ¶ 40.2 (Dec. 13, 2018) ("English Answer").

[8] Where in the World.

**The Goldstein Defendants Do Not Contest that Sanjay Shah Victimized SKAT**

On August 26, 2015, SKAT revealed that a "foreign authority" had notified it of the allegations underlying this multi-district litigation ("MDL") and that SKAT had reported those allegations to the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK").[9]

SKAT argues that one individual, Dubai-based Sanjay Shah, is the "mastermind" of the alleged fraudulent "scheme" (the "Shah Scheme").[10] In England, SKAT has alleged that Mr. Shah effected the scheme through several entities "controlled by him," including several SKAT has discussed in various MDL complaints: Old Park Lane Capital Ltd., Salgado Capital, Solo Capital Partners LLP, Syntax GIS Ltd., Telesto Markets LLP, and West Point Derivatives Ltd. (the "Shah Entities").[11]

SKAT has neglected to mentioned that as early as 2011, it suspected Mr. Nielsen of stealing $5.7 million from SKAT, but did not fire him until Danish police raided his

---

[9] Compl. ¶ 8; Agence France-Presse ("AFP"), Denmark vows to recover billions stolen in tax fraud, The Local DK (Nov. 1, 2018, 14:02), https://www.thelocal.dk/20181101/denmark-vows-to-recover-billions-stolen-in-tax-fraud ("Denmark vows"); AFP, Denmark reveals £800m tax fraud – the country's biggest, The Guardian (Aug. 26, 2015, 22:44), www.theguardian.com/business/2015/aug/27/denmark-fears-it-has-been-victim-of-biggest-ever-800m-tax ("Denmark's biggest fraud").

[10] See generally Transcript of Record, In re SKAT Tax Refund Scheme Litig., 18-cv-4047 (June 26, 2018); Compl. ¶¶ 2, 3, 5, 25; Counterclaims ¶¶ 22–24.

[11] Counterclaims ¶¶ 23–24; Kaplan Decl. Exhibit B, Amended Particulars of Claim of SKAT, SKAT v. Solo Capital Partners LLP et al., CL-2018-000297, at ¶¶ 3(g), (h), 5(b), 50(j) (Mar. 6, 2019) ("English Claim").

home in connection with the Shah Scheme in fall 2015.[12] In December 2018, Mr. Nielsen was convicted of defrauding SKAT and sentenced to six years in prison.[13]

Mr. Nielsen also had at least one personal contact with Mr. Shah: the man who founded Shah Entity Syntax right before meeting Mr. Nielsen, and who sold it to Mr. Shah shortly thereafter.[14] SKAT has alleged Syntax's involvement in 72 of the 183 cases consolidated in this MDL.

As SKAT faced backlash for this and other scandals, it began undertaking significant reforms.[15] In August 2016, Denmark's tax minister announced that Denmark would budget billions of kroner to implement a new information technology infrastructure and hire 2000 new employees by 2020.[16] In 2017, Denmark revealed that it would close SKAT entirely and divide its responsibilities among seven new authorities.[17] The tax minister justified the reforms to Denmark's oldest continuously-operating newspaper, Berlingske: "[I]nstead of using money on patching up a SKAT

---

[12] See English Answer ¶¶ 40.1, 40.2.

[13] Where in the World; Denmark begins global legal campaign to recoup tax fraud billions, Reuters (May 23, 2018), https://www.reuters.com/article/us-denmark-tax/denmark-begins-global-legal-campaign-to-recoup-tax-fraud-billions-idUSKCN1IO1MR.

[14] See id.

[15] Denmark vows.

[16] Christian Wenande, Government eyeing overhaul of SKAT, Copenhagen Post (Aug. 29, 2016, 14:34), cphpost.dk/news/government-eyeing-overhaul-of-skat.html.

[17] Christian Wenande, So long 'min SKAT:' Denmark restructuring its tax authority, Copenhagen Post (June 13, 2017, 8:37), cphpost.dk/news/so-long-min-skat-denmark-restructuring-its-tax-authority.html.

that doesn't deliver, or if we are being completely honest has never really functioned, we should just completely stop SKAT from existing."[18]

The tax minister also proclaimed that "[Denmark] will fight for every single nickel that was taken from the treasury."[19] Consequently, SKAT not only reported the allegedly-criminal conduct to SØIK, but also has filed the 183 lawsuits in this MDL, as well as disputes in Canada, Luxembourg, and the United Kingdom.[20]

But SKAT has caught innocent parties like the Goldstein Defendants in its dragnet—and, even when presented with uncontroverted, exonerating evidence, refuses to let them go.[21]

---

[18] Id.
[19] Denmark vows.
[20] See Compl. ¶ 7; see also Kaplan Decl. Exhibit C, SKAT, Decision – Revocation of former decisions on dividend tax refunds (May 4, 2018) (the "Revocation Decision," and with related proceedings, the "Danish Action") (stating intention to issue proceedings against the Plan "to recover losses and damages," because of, inter alia, SKAT's "opinion" that the Goldstein Plan "form[ed] part of a large group of international cases [ . . . alleging] suspected fraud against the Danish State.").
[21] Counterclaims ¶¶ 17–27, 54–55, 62–76.

**Despite Initiating Disputes with the Goldstein Defendants in Denmark and the United States, SKAT has Never Identified Any Connection Between the Goldstein Defendants and the Shah Scheme**

81-year-old Sheldon Goldstein founded non-party The Goldstein Law Group PC in 1998 and managed it until he retired in 2014. In January 1999, the firm established the Plan, which is a non-profit exempt from U.S. taxation.[22]

Like other defendants in this MDL and across the world, the Plan invested in Danish securities, received dividends on those securities, paid Danish taxes, and submitted reclaim applications to SKAT.[23] Between March 2014 and August 2015, the Plan submitted nine reclaim applications to SKAT (the "Reclaim Applications").[24]

Like it did with the other defendants, SKAT issued refunds to the Plan for the first eight dividends, and then revoked them.[25] But less than two weeks after the Plan submitted its ninth reclaim application, SKAT announced that it had learned of the Shah Scheme and halted all refund processing.[26] SKAT never issued the ninth refund.[27]

But the Goldstein Defendants' similarities to the Shah Scheme end there. SKAT has never alleged that the Goldstein Defendants are in any way connected to "ringleader" Mr. Shah.[28] Similarly, while SKAT has sued the Goldstein Plan' executing broker, ED&F Man Capital Markets, Ltd. ("ED&F Man"), SKAT failed to allege any

---

[22] Counterclaims Against Skatteforvaltningen and Third-Party Claim Against ED&F Man Capital Markets, Ltd., Dkt. 101 ¶ 2 (Apr. 23, 2019) ("Counterclaims"); Compl. ¶ 17.
[23] Counterclaims ¶¶ 47, 52, 53.
[24] Id. ¶ 52.
[25] Id. ¶¶ 53, 54; Revocation Decision.
[26] Id. ¶ 52; Compl. ¶ 8.
[27] Counterclaims ¶ 61.
[28] Counterclaims ¶ 25.

connection between ED&F Man and Mr. Shah, despite mentioning the latter at least 64 times in the 81-page claim.[29] In fact, the Goldstein Defendants had never even heard of Mr. Shah or his entities until SKAT filed its complaint in this action.[30] Furthermore:

- While SKAT has not alleged any connection between the Goldstein Defendants and the Shah Entities, it did allege such connections between other MDL defendants and the Shah Entities in 154 of the 183 complaints;
- While SKAT has not alleged any connection between the Goldstein Defendants and any other MDL defendants, it did explicitly allege such connections in 125 other complaints;
- While just seven people served as the authorized representatives for 157 of the 183 plans, Mr. Goldstein only represented the Goldstein Plan;
- While SKAT alleged that the Goldstein Defendants submitted only eight reclaim applications, the average number of applications submitted per MDL defendant is 14.13; and
- While SKAT alleged that it wrongfully paid $1,490,000 to the Goldstein Defendants, the average alleged damages per complaint are $5,832,169.62.[31]

Moreover, while SKAT alleges that some of the pension plans were formed shortly before they began applying for Danish refunds, the Goldstein Plan has existed for two decades.

Despite receiving a full explanation of the Plan's financing and purchases and supporting documentation, including a statement of the Plan's ED&F Man account substantially similar to that annexed as Exhibit A to the Counterclaims, SKAT's May 2018 Revocation Decision is similarly devoid of any particularized allegation of mistake by the Goldstein Defendants, let alone of deceit or fraud. In revoking the previously-

---

[29] See generally English Claim.
[30] Counterclaims ¶ 27.
[31] See generally Complaints, 19-md-1865.

issued refunds, SKAT expressed its (1) "opinion" that the Plan's applications "form[ed] part of a large group of international cases which have been reported by SKAT to the State Prosecutor for Serious Economic and International Crime as suspected fraud against the Danish State" and (2) "opinion" that the Plan "never did own the shares" set forth in the reclaim applications or receive their respective dividends and "opinion" that the Plan "lacked the financial means to own shares on the scale set out" in the applications.[32]

SKAT has offered no explanation of its "opinion" that the Plan "form[ed] part of a large group of international cases."[33] In the Complaint, SKAT again fails to identify any ties between the Goldstein Defendants and other MDL defendants, except that the Plan (a) is a bona fide pension plan exempt from U.S. taxation that (b) submitted reclaim applications for Danish tax withheld on dividends.[34] SKAT also has not questioned the validity of the ED&F Man documents—nor has it in England, where it has argued, without pleading the reasons for its belief, that ED&F Man failed to properly conduct customer due diligence.[35]

Similarly, SKAT has never identified evidence that contradicts the ED&F Man records that the Goldstein Plan provided to contest the Revocation Decision—and in the United Kingdom, has alleged that ED&F Man is merely a "non-fraud" defendant liable

---

[32] Revocation Decision at 2, 12–13.
[33] See generally id.
[34] See generally Compl.
[35] See generally Revocation Decision; English Claim.

for negligent misrepresentation because it failed to properly conduct customer due diligence.[36]

**SKAT Continues to Ignore Evidence Exonerating the Goldstein Defendants**

On August 13, 2018, the Plan appealed the Revocation Decision, presenting essentially identical evidence and argument as it did in its objection to the proposed Revocation Decision, and as it has presented and will present in this federal litigation.[37] As it has in this action, the Plan emphasized that the Goldstein Defendants have never had any basis to doubt the validity of documents created for the Plan by ED&F Man, let alone the accuracy of the information in those documents.[38] The Plan also argued that the Revocation Decision "contravene[d]" the ED&F Man records provided by the Plan, which are exactly the type SKAT "still recommends" and "require[s]" to substantiate reclaim applications.[39]

But both in the Danish Action and this litigation, SKAT continues to demand that the Plan repay the first eight refunds. Furthermore, SKAT has never issued the $162,951.48 refund for the August 12, 2015 TDC Group dividend Reclaim Application.[40] Instead, less than a month after issuing the Revocation Decision, SKAT filed this

---

[36] English Claim ¶¶ 91–94.
[37] <u>See generally</u> Revocation Decision; Kaplan Decl., Exhibit D, Brief for Goldstein Plan, Ref. No. 61779 (Aug. 3, 2018) ("Danish Appeal").
[38] <u>Id.</u>; Counterclaims ¶¶ 47–48.
[39] Danish Appeal at 6.
[40] <u>Id.</u> ¶¶ 52–55, 61.

lawsuit, which pleads the same wrongs stated in the Revocation Decision, if with even less particularity.[41]

## LEGAL STANDARD

SKAT moves to dismiss Counterclaim Counts I and II under Rule 12(b)(1) and Counts III and IV under Rule 12(b)(6).

To adjudicate a 12(b)(1) motion, a district court must accept all factual allegations as true, drawing reasonable inferences in favor of the counterclaim-plaintiff. Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976) (reversing and remanding Rule 12 dismissal) . The court may resolve any disputed jurisdictional facts by referring to evidence outside the pleadings and, if necessary, holding an evidentiary hearing. Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (vacating district court's judgment dismissing declaratory judgment action for lack of subject matter jurisdiction, reinstating all claims, and remanding).

To survive a 12(b)(6) attack, counterclaims need only state a "plausible" basis for recovery that does not rely on "conclusory" or "speculative" allegations. Bell Atlantic v. Twombly, 550 U.S. 544, 555, 557 (2007); see also Fed. R. Civ. P. 8(a)(2) (a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). In adjudicating a Rule 12(b)(6) motion, this Court must accept as true all facts alleged in the counterclaims and draw all inferences in favor of the Goldstein Defendants. Twombly, 425 F.3d at 106 (citations and internal quotation marks omitted).

---

[41] Compare Compl. and Revocation Decision.

On a 12(b)(6) motion, the court must consider facts stated in the pleadings or in materials attached to the pleadings as exhibits or incorporated into the pleadings by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Courts may consider materials upon which pleadings rely so long as their authenticity and accuracy are undisputed, including documents filed in other courts. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Kramer v. Time Warner, 937 F.3d 767, 774 (2d Cir. 1991) (citing United States v. Walters, 510 F.2d 889, 890 n.4 (3d Cir. 1975)).

## ARGUMENT

In its moving papers, SKAT repeatedly conflates the different standards that govern declaratory and injunctive relief; invokes caselaw that relies upon irrelevant facts; mischaracterizes the pleadings, particularly those relating to promissory estoppel; and ignores controlling law, including Rule 8.

This Court should dismiss SKAT's motion in its entirety. But if this Court grants SKAT's motion, it should grant the Goldstein Defendants leave to amend their counterclaims, consistent with the Court's decision.

### I.     This Court Should Issue Declaratory Judgment that Prohibits SKAT from Cherry-Picking Favorable Findings

"[T]o allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them," the Declaratory Judgment Act allows a court to exercise jurisdiction over a declaratory action in a case of "actual controversy." Great Am. Ins. Co. v. Houston General Ins. Co., 735 F. Supp. 581, 585 (S.D.N.Y. 1990) (citing 28 U.S.C. § 2201(a)).

SKAT's duplicative disputes exemplify the "opponent's whims" targeted by the Declaratory Judgment Act. See id. While the Goldstein Defendants would expect SKAT to respect all decisions issued by the Court, SKAT's decision to oppose the Goldstein Defendants' simple, non-substantive declaratory-judgment counterclaim creates unjustifiable uncertainty: why would SKAT, which implored this Court to hear its cases in the first place, oppose being bound by this Court's decisions?

Because SKAT is pursuing the Goldstein Defendants for the exact same alleged injuries in multiple jurisdictions, the Goldstein Defendants seek a declaratory judgment that "this Court's decisions in this action arising out of the transactions set forth in the Complaint are binding on SKAT in all jurisdictions and venues." Counterclaims ¶ 79.

### A. The "Actual Controversy" Between the Parties Vests this Court with Declaratory-Judgment Jurisdiction

SKAT's pursuit of the Goldstein Defendants in both Denmark and the United States belies its argument that there is no "actual controversy" between the Parties. Compare Mot. at 7–8 and Diamonds.net LLC v. Idex Online, Ltd., 590 F. Supp. 2d 593, 598 (S.D.N.Y. 2008) (denying motion to dismiss declaratory judgment action; "an aggressive litigation strategy such as plaintiffs' may signal the existence of an actual controversy"); see also Great Am. Ins. Co., 735 F. Supp. at 585 (consider "the litigation situation as a whole" to determine propriety of declaratory judgment). The Parties' dispute is simple and real: whether the Goldstein Plan "owned the shares that [it] claimed to own," "earn[ed] the dividends [it] claimed to have earned," and was

"entitled to the tax refunds [it] claimed." Compl. ¶ 4; <u>accord</u> Counterclaims ¶¶ 17, 62–63.

But SKAT misrepresents the Declaratory Judgment Act's jurisdictional requirements. The question is not whether the Goldstein Defendants have affirmative claims against SKAT, <u>see</u> Mot. at 7–11; it is simply whether the Parties' dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," and "admi[ts] of specific relief through a decree of conclusive character," as opposed to seeking an unconstitutional advisory opinion on hypothetical "facts." <u>Diamonds.net</u>, 590 F. Supp. 2d at 597 (citing <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240–41, (1937) (reversing and remanding dismissal of declaratory judgment action where parties disagreed over whether insured must continue paying premiums or was entitled to disability benefits)). Indeed, jurisdiction would exist under even the Second Circuit's previous, more stringent test, which required a declaratory judgment plaintiff to show that the defendant had created a "real and reasonable apprehension" of liability on the part of the plaintiff and (2) plaintiff had engaged in a course of conduct which brought it into adversarial conflict with the defendant. <u>Starter Corp. v. Converse, Inc.</u>, 84 F.3d 592, 595 (2d Cir. 1996) (per curiam) (overruled by <u>MedImmune, Inc. v. Genentench, Inc.</u>, 549 U.S. 118 (2007)).

Unlike in <u>Dow Jones I</u>, SKAT not only has threatened, but has actually initiated, two separate legal actions alleging identically-wrongful conduct, requesting functionally-equivalent relief. <u>See</u> Mot. at 10–11 (discussing <u>Dow Jones & Co., Inc. v. Harrods, Ltd.</u>, 237 F. Supp. 2d 394 (S.D.N.Y. 2002)). There, the <u>Wall Street Journal's</u>

14

parent company attempted to invoke the First Amendment to shield against a (a) theoretical United Kingdom judgment that might someday be issued in a (b) nonexistent and (c) unthreatened litigation regarding (d) an April Fool's joke and (e) adjudicated under English defamation law, which is significantly more restrictive than the United States's rather unique speech jurisprudence. Dow Jones, 237 F. Supp. 2d at 408. Unlike the cultural differences raised by speech and defamation laws, this case's fundamental issue—the prohibition against theft—is universal. Dow Jones I is not "instructive" at all. See Mot. at 10.

Furthermore, the Goldstein Defendants do not ask this Court to issue a vague proclamation akin to "this is interstate commerce;" they ask the Court to enter a "specific order" that this Court's decisions "are binding on SKAT in all jurisdictions and venues." Compare Mot. at 9–10 (analyzing Public Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952) (reversing and ordering judgment modified to direct dismissal of declaratory judgment that transportation of motion film and newsreels constituted interstate commerce without identifying any rights or immunities predicated upon that finding)) and Counterclaims ¶ 79. Whether taken alone or with the Complaint, and regardless of whether Counterclaims III and IV survive, the Goldstein Defendants have pleaded exactly the type of "definite and concrete" dispute that warrants declaratory judgment.

### B. SKAT's Duplicative Disputes Have Rendered Declaratory Judgment Mandatory, Not Discretionary

When an "actual controversy" exists, the Court must consider whether declaratory judgment would (1) "serve a useful purpose in clarifying or settling the legal issues involved" or (2) "finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005) (affirming declaratory judgment as modified) (citing Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969)).

Although the decision to exercise declaratory jurisdiction sometimes is "denominated as discretionary," Starter, 84 F.3d at 597—including by SKAT, see Mot. at 11—this Court is "**required** to entertain a declaratory judgment action" if it would serve either factor. ACE Am. Ins. Co. v. Bank of the Ozarks, No. 11 Civ. 3146 PGG, 2014 WL 4953566, at *19 (S.D.N.Y. Sept. 30, 2014) (Gardephe, J.) (quoting Cosa Instrument Corp. v. Hobre Instruments BV, 698 F. Supp. 2d 345, 350 (E.D.N.Y. 2010)) (emphasis in original); Broadview, 417 F.2d at 1001 (reversing district court's denial of declaratory judgment; "[I]f either of these objectives can be achieved[,] the action should be entertained[,] and the failure to do so is error.").

The requested declaratory judgment furthers both factors. Despite issuing the Revocation Decision and understanding that the Plan would soon appeal, SKAT began relitigating the exact same allegations, arguments, and evidence in this Court as the Plan's appeal was pending, creating "uncertainty, insecurity, and controversy giving rise to" the Goldstein Defendants' declaratory-judgment counterclaim. Cf. ACE Am.

Ins. Co., 2014 WL 4953566, at *19 (entering declaratory judgment in "second lawsuit arising from the parties' ongoing disagreement about [defendant's] obligation to satisfy [plaintiff's] draw requests on the letter of credit," which presented "the same issues as those in the prior action before Judge Kaplan," who had dismissed the declaratory judgment claim in March 2010 because the Court believed the letter of credit would be terminated in June 2010). The requested declaratory judgment that "this Court's decisions [ . . .] are binding on SKAT" would not "generate, more controversy and uncertainty," see Mot. at 12; SKAT's duplicative disputes have.

Furthermore, the requested relief would clarify that SKAT does intend to abide by this Court's decisions, even if they are less favorable than those it may achieve in foreign proceedings like the Danish Action. Cf. Cosa Instrument Corp., 698 F. Supp. 2d at 350 (reversing denial of declaratory judgment where district court failed to consider plaintiffs' "legitimate concern" that defendants may reconsider their decision not to sue). This is particularly important because U.S. judgments do not have preclusive effect in Danish courts. See, e.g., Carsten Brink, Denmark, in Enforcement of Money Judgments DEN-4 (Lawrence W. Newman ed., 2018) ("At present it is not possible to enforce a civil judgment from the United States courts [in Denmark], as there is no [relevant] reciprocal agreement, treaty or convention between the two countries").

Moreover, the Supreme Court has rejected SKAT's "obvious" "better remedy:" that the Goldstein Defendants sacrifice their own rights in the Danish Action to avoid inconsistent judgments. See Mot. at 12 ("[I]f Goldstein does not want its own appeal in Denmark to proceed, then it can withdraw it."). "The dilemma posed by [SKAT's]

coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a 'dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" <u>MedImmune</u>, 549 U.S. at 129 (quoting <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 152 (1967)); <u>see also</u> <u>id.</u> at 134 ("The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively-contested legal rights finds no support in Article III."). "[N]either the [Declaratory Judgment] Act nor Article III requires a plaintiff to expose himself to liability before bringing a declaratory judgment action." <u>AARP v. 200 Kelsey Assocs., LLC</u>, No. 06 CIV 81 (SCR), 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009) (Lynch, J.).

This Court also should reject SKAT's attempt to buttress its declaratory-judgment argument with <u>China Trade & Dev. Corp. v. M.V. Choong Yong</u>, which does not analyze declaratory judgment at all. <u>Compare</u> Mot. at 12 (citing <u>China Trade</u>, 837 F.2d 33, 36 (2d Cir. 1987)); <u>and</u> <u>China Trade</u>, 837 F.2d at 35–36 (analyzing the propriety of a permanent injunction). SKAT's reliance on <u>China Trade</u> is particularly inappropriate because declaratory judgment "is a much milder form of relief than an injunction." <u>Steffel v. Thompson</u>, 415 U.S. 452, 471 (1974) (quoting 28 U.S.C. § 2201). "[E]ngrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress's intent to make declaratory relief available in cases where an injunction would be inappropriate." <u>Id.</u>

### C.  Because SKAT Initiated this Lawsuit, Equity Favors Entry of a Declaratory Judgment Holding SKAT to this Court's Decisions

The Goldstein Plan has appealed the Revocation Decision to preserve its rights in Denmark and delay any Danish judgment that SKAT may attempt to enforce in the United States, particularly while SKAT demands that this Court adjudicate the very same injuries. But SKAT's position vis-à-vis the declaratory judgment counterclaim confirms the Goldstein Defendants' worst fears: that SKAT is forcing the Goldstein Defendants to fight the same battle on multiple fronts without even promising that it will abide by any judgment in this action that it, itself, initiated.

SKAT requested this Court's involvement. SKAT either wants this Court's judgment to be binding, or it wants to waste the Court's time and the American public's resources. Assuming that SKAT does, in fact, think the Parties' dispute merits this Court's attention, there is no reason why it should oppose being bound by this Court.

### II.  The Counterclaims Adequately Plead that SKAT Had No Rightful Basis to Deny the Ninth Refund Application

Despite filing 183 separate lawsuits premised on the idea that the Double-Taxation Treaty created non-profit American pensions' right to full refunds of Danish dividend taxes, SKAT argues that the Goldstein Defendants have not alleged any right to the wrongfully-withheld ninth refund. SKAT doth protest too much.

### A.  The Goldstein Defendants Reasonably Relied on SKAT's Promise to Refund Tax Paid on Danish Dividends

To adequately plead promissory estoppel, the Counterclaims must allege (1) a clear and unambiguous promise; (2) that the Goldstein Defendants' reliance on that

promise was reasonable and foreseeable to SKAT; and (3) that reliance on that promise caused the Goldstein Defendants' injuries. <u>Henneberry v. Sumitomo Corp. of Am.</u>, No. 04 Civ 2128 (PKL), 2005 WL 991772, at *5–6 (S.D.N.Y. Apr. 27, 2005) (Leisure, J.) (citing <u>Cyberchron Corp. v. Calldata Sys. Dev., Inc.</u>, 47 F.3d 39, 44 (2d Cir. 1995); <u>R.G. Group v. Horn & Hardart Co.</u>, 751 F.2d 69, 78 (2d Cir. 1984); Restatement (Second) of Contracts § 90 (1981)). Even third parties to promises may state promissory estoppel claims where "the promisor should [have] reasonably expect[ed] to induce action or forbearance on the part of the promisee **or a third person**." <u>Id.</u> (emphasis in original) (citing Restatement (Second) of Contracts § 90).

While SKAT argues that the Counterclaims "fail[] to allege that SKAT made any promise to it at all, let alone a clear and unambiguous one," Mot. at 16, the Counterclaims explicitly plead, "If not for SKAT's promise to refund dividend taxes to U.S. pensions, the Plan would never have invested in the Danish companies, let alone paid taxes on the resulting dividends." Counterclaims ¶ 66.

Furthermore, both SKAT and the Goldstein Defendants plead that the Parties' relationship and all Reclaim Applications were premised on the Double-Taxation Treaty. <u>See</u> Compl. ¶ 3; Counterclaims ¶¶ 65. That Treaty includes the promise that is the foundation of the Parties' disputes: that Denmark will not tax U.S. pensions on Danish dividend income. <u>Cf.</u> <u>Wash. Dep't of Licensing v. Cougar Den, Inc.</u>, 139 S.Ct. 1000, 1016 (2019) (recognizing that promises comprise a treaty); <u>Choctaw Nation v. Okla.</u>, 397 U.S. 620, 635–36 (1970) (same); <u>Seminole Nation v. United States</u>, 316 U.S. 286, 293–94 (1942) (same; "This is a claim for $154,551.28 based on one of the provisions of

Article VIII of the Treaty of 1867, namely, the Government's promise to establish a $500,000 trust fund [ . . . ]").

The Counterclaims also plead foreseeable, reasonable reliance: that SKAT had established systems for dividend-holders like the Plan to apply for their tax refunds, and that without the promised refunds, the Plan—which is non-profit and exempt from taxes in the United States and over 60 other countries—never would have invested in those securities, received their dividends, or paid the Danish taxes. See Counterclaims ¶¶ 56–61, 65–67, 97–101.

Finally, the Goldstein Defendants have pleaded not just the existence of injury (which would, itself, be sufficient), but also the precise quantum of expectation damages. See id. ¶¶ 68, 102. The Counterclaims also allege facts sufficient to show reliance damages, should the Court eventually find that to be the proper remedy. See, e.g., id. ¶¶ 47, 53, 68, 75. The Counterclaims adequately plead promissory estoppel.

### B. Counterclaim III Gives SKAT "Fair Notice" of the Counterclaims Caused by SKAT's Denial of the Ninth Reclaim Application

SKAT again blows past controlling law to argue that dismissal is warranted because Counterclaim III "alleges simply that 'SKAT refused to pay a refund due to the Plan'" and "is styled 'recovery of denied claims,'" which "is not a recognized cause of action under New York law." Mot. at 17. In other words, SKAT wants this Court to dismiss Counterclaim III because it provides exactly what Rule 8 requires: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Absent special causes of action such as fraud, a pleading need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002). Counterclaim III does exactly that, pleading:

> Although the Plan had nothing to do with Mr. Shah, SKAT refused to pay a **refund due** to the Plan in the amount of DKK 1,080,000 for a TDC Group dividend issued on August 10, 2015. The amount owed to the Plan **as a result of the improper denial of this Reclaim Application** is no less than DKK 1,080,000 (which as of April 8, 2019 is approximately USD 162,951.48), excluding interest and costs.

Counterclaims ¶¶ 93–94 (emphasis added). This, let alone the numerous other relevant counterclaim allegations, is more than enough to give SKAT "fair notice" of the Goldstein Defendants' counterclaims. Philip v. Univ. of Rochester, 316 F.3d 291, 298–99 (2d Cir. 2003) (citing Swierkiewicz, 534 U.S. at 514); see also Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations").

Conversely, the form of pleading SKAT demands "was abolished by the Rules of Civil Procedure in 1938, which to signify the radical change from code pleading also replaced 'cause of action' with 'claim for relief.'" Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 250–51 (7th Cir. 1995) (citing Bartholet v. Reishauer, A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992)). If anything, SKAT demands allegations that would be nothing more than conclusory legal statements entitled to no weight at all on a motion to dismiss. Cf. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations"); <u>Twombly</u>, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations and quotation marks omitted).

"Complaints should be short and simple, giving the adversary notice while leaving the rest to further documents." <u>Bartholet</u>, 953 F.3d at 1078. The Goldstein Defendants expect that those further documents will show that SKAT's refusal to issue the ninth refund renders it liable not only for promissory estoppel, but also unjust enrichment, money had and received, breach of contract, breach of the covenant of good faith and fair dealing, and negligence. There is no reason to dismiss Counterclaim III.

## III.    SKAT's Resistance to this Court's Authority Suggests that Injunctive Relief May Be Necessary

SKAT's motion to dismiss the Goldstein Defendants' counterclaim for preliminary and permanent injunctive relief is premature. Although the Goldstein Defendants have put SKAT on notice of their intention to request that SKAT be enjoined from "taking any action that would impair or otherwise impact matters that SKAT has submitted for determination to this Court," the Goldstein Defendants have not yet moved for such relief. <u>See generally</u> Dkt. SKAT has not cited, and undersigned counsel has not found, any cases analyzing the propriety of injunction relief before a party has moved for it. <u>See generally</u> Mot. at 12–15. Regardless of timing, this Court should deny

SKAT's motion to dismiss the injunctive relief counterclaim; even without additional discovery or briefing, the Counterclaims plead all necessary elements.

"It is well-established that federal courts have the power to enjoin foreign suits by persons subject to their jurisdiction." MasterCard Int'l Inc. v. Argencard Sociedad Anonima, No. 01 Civ. 3027(JGK), 2002 WL 432379, at *9–10 (S.D.N.Y. Mar. 20, 2002) (Koetl, J.). To obtain the injunction, the movant must first show that (1) the parties are the same in both matters and (2) the enjoining court's resolution of the case would be dispositive of the action to be enjoined. China Trade, 837 F.2d at 35. Then, the Court may consider (1) frustration of a policy in the enjoining forum; (2) vexatiousness of a foreign action; (3) any threat to the issuing court's in rem or quasi in rem jurisdiction; (4) whether the other proceedings prejudice other equitable considerations; and / or (5) whether allowing both actions to continue would result in delay, inconvenience, expense, inconsistency, or a race to judgment. Id. at 35 (quoting Am. Home Assurance Corp. v. The Ins. Corp. of Ireland, Ltd., 603 F. Supp. 636, 643 (S.D.N.Y. 1984)).

This dispute meets the threshold requirements: the Parties in both actions are functionally identical—although Mr. Goldstein is not a party to the Revocation Decision, he is the Plan's trustee, member, and participant—and the disputed material factual issues are identical. See supra § I, pp. 13–19; see also Am. Home, 603 F. Supp. at 634 (granting anti-foreign-suit injunction where, inter alia, all parties to the foreign action were before the court, although the converse was not true). Neither of the cases relied upon by SKAT is relevant here: in Viringo, Inc. v. ZTE Corp., one suit alleged breach-of-contract and the other alleged antitrust, and in C.D.S., Inc. v. Bradley Zetler,

24

CDS, LLC, one suit alleged breach-of-contract and the other alleged copyright and trademark infringement. See Mot. at 14 (citing Viringo, Inc. v. ZTE Corp., No. 14-cv-4988(LAK), 2015 WL 3498634, at *11 (S.D.N.Y. June 3, 2015) (Kaplan, J.); C.D.S., Inc. v. Bradley Zetler, CDS, LLC, 213 F. Supp. 3d 620, 628–29 (S.D.N.Y. 2016).

The Goldstein Defendants' request for injunctive relief satisfies the five-factor test, as well. Every factor but the third is present here: far from being the typical "race to judgment" case, or even one in which a party anticipatorily files suit in a more favorable forum, here, SKAT, itself initiated both the Danish and the U.S. disputes. Despite being so inept that the Danish Tax Minister has said it "has never really functioned," SKAT has set aside tens of millions of dollars to "fight for every single nickel that was taken from the treasury" with the full force and fury of a sovereign. See Denmark vows. SKAT is unleashed from the typical concerns that would prevent a plaintiff from simultaneously pursuing the exact same injuries in multiple jurisdictions, and has brought its full weight to bear on the Plan and its solitary member, Mr. Goldstein, inflicting collateral damage and unjust costs that far exceed what any taxpayer have reasonably expected to incur when it invested in Danish securities. And SKAT's opposition to the declaratory judgment counterclaim, combined with Denmark's refusal to recognize U.S. judgments, suggests that SKAT will not honor the Court's decisions unless they please SKAT. Cf. Mot. at 12 (citing China Trade, 837 F.2d at 36) ("As the Second Circuit has held, 'parallel proceedings' in foreign countries "should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one **which can be pled as res judicata in the other**.") (emphasis added).

Finally, while SKAT correctly notes that an anti-foreign-suit injunction—which the Goldstein Defendants have not requested—should only issue "if the [foreign] litigation presents either a threat to th[e] Court's jurisdiction or a threat to an important domestic policy," Mot. at 13 (citing <u>MasterCard</u>, 2002 WL 432379, at *10), here, SKAT's extraterritorial behavior threatens both. SKAT's pursuit of identical remedies in multiple jurisdictions undermines the efficiency goals that prevent plaintiffs from simultaneously pursuing both state and federal actions. <u>Cf.</u> <u>United States v. Armstrong</u>, No. 99 Cr. 997(JFK), 2011 WL 292018, at *3 (S.D.N.Y. Jan. 28, 2011) (Keenan, J.) (noting disapproval of litigant's "history of filing similar or identical lawsuits in multiple jurisdictions[] and the consequent effect on the administration of justice"). And SKAT's pursuit of both the Danish Action and this litigation undermines the Double-Taxation Treaty's express dispute resolution procedures and purposes. <u>See</u> Dep't of the Treasury Technical Explanation of the Double-Taxation Treaty Art. 25(2) (Jan. 1, 2001) (The Double-Taxation Treaty "cannot operate to increase a taxpayer's liability;" "procedural limitations can be overridden only for the purpose of making refunds and not to impose additional tax.").

SKAT's resistance to being bound by this Court is troubling, to say the least. Therefore, should the propriety of an injunction become ripe, this Court should enjoin SKAT "from taking any action that would impair or otherwise impact matters that SKAT submitted for determination to this Court." <u>See</u> Counterclaims ¶ 91.

**IV.     Should the Court Grant SKAT's Motion to Dismiss, it Should Also Grant the Goldstein Defendants Leave to Amend their Counterclaims**

A court may permit a party to amend its pleadings when justice requires. Fed. R. Civ. P. 15(a)(2). The party opposing a motion to amend bears the burden of proving that amendment would be futile. <u>Ballard v. Parkstone Energy, LLC</u>, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008) (Sweet, J.) (denying defendant's motion for reargument and granting its motion to amend answer and counterclaim).

The Goldstein Defendants respectfully request that if the Court grants any portion of SKAT's motion to dismiss, it also grant the Goldstein Defendants leave to amend their counterclaims to allege, <u>inter alia</u>, claims arising out of SKAT's wrongful denial of the ninth Reclaim Application, as well as SKAT's abuse of process in filing this duplicative lawsuit. The Goldstein Defendants also would amend their counterclaims to specifically request that this Court enjoin SKAT from attempting to enforce any foreign judgment against them while this U.S. litigation is pending.

## CONCLUSION

For the foregoing reasons, the Goldstein Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety or grant the Goldstein Defendants leave to amend their counterclaims.

Dated: New York, New York
      June 3, 2019

GUSRAE KAPLAN NUSBAUM PLLC


/s/ Martin H. Kaplan
Martin H. Kaplan
Kari Parks
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Defendants / Counterclaim-*
*Plaintiffs / Third-Party Plaintiffs*
*The Goldstein Law Group PC 401(K) Profit*
*Sharing Plan & Sheldon Goldstein*