## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re
CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to:  18-cv-10464

MASTER DOCKET

18-md-2865 (LAK)

## DEFENDANT ACORN CAPITAL STRATEGIES LLC EMPLOYEE PENSION PROFIT SHARING PLAN & TRUST'S ANSWER AND AFFIRMATIVE DEFENSES TO SKAT'S COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant Acorn Capital Strategies LLC Employee Pension Profit Sharing Plan & Trust ("Acorn Strategies") through its undersigned counsel hereby answers Plaintiff's Complaint. This answer is based on Acorn Strategies' investigation to date, and Acorn Strategies reserves the right to supplement or amend this Answer during the course of litigation as new information is learned. Any allegation not specifically admitted herein is denied. To the extent that the headings of SKAT's Complaint require a response, they are hereby denied. Acorn Strategies requests a jury trial on all counts so triable.

## I.   **PARTIES**

1.      **Plaintiff SKAT is the Danish national agency charged with assessing and collecting taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.**

**ANSWER:** Acorn Strategies admits the allegations in the first sentence of paragraph 1 were true as of the date of the Complaint, but denies them as of the date of this Answer. Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of paragraph 1 and therefore denies them.

2.      Defendants Acorn Corp. and Acorn Strategies are pension plans, which, in their requests to SKAT for tax refunds, each listed their address as 6 Noble Lane, Green Brook, New Jersey 08812, USA. On information and belief, each of the members of Defendants Acorn Corp. and Acorn Strategies are citizens of a state of the United States. At all times material to the allegations in this Complaint, Defendants Acorn Corp. and Acorn Strategies purported to be trusts forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and residents of the United States of America for purposes of U.S. taxation.

ANSWER: Acorn Strategies admits that it is a pension plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and that it is a resident of the United States for purposes of U.S. taxation. Acorn Strategies further admits that SKAT has provided copies of tax refund requests, which SKAT represents were submitted to it purportedly on Acorn Strategies' behalf, that list Acorn Strategies' address as 6 Noble Lane, Green Brook, New Jersey 08812, USA. Acorn Strategies denies the remaining allegations in paragraph 2.

3.      Defendant Summers is a citizen of the state of New Jersey, and at all times relevant to this Complaint lived at 6 Noble Lane, Green Brook, New Jersey 08812, USA, the same address listed by Defendants Acorn Corp. and Acorn Strategies in their tax refund claims to SKAT. At all times material to the allegations in this Complaint, Defendant Summers served as the Authorized Representative for Defendants Acorn Corp. and Acorn Strategies.

ANSWER: Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegation in the first sentence of paragraph 3 and therefore denies it. The remainder of paragraph 3 states a legal conclusion to which no response is required. To the extent any further response were found to be required, Acorn Strategies denies the remaining the allegations in paragraph 3.

## II.   NATURE OF THE ACTION

4.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

ANSWER: Acorn Strategies admits the allegations in paragraph 4 were true as of the date

of the Complaint, but denies them as of the date of this Answer.

**5.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("DKK"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 5.

**6.      The essence of the fraudulent scheme is that each of over 300 claimants pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.**

**ANSWER:** Acorn Strategies denies with respect to itself the allegations in the first sentence in paragraph 6, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in paragraph 6 with respect to others and therefore denies them. The remainder of paragraph 6 states legal conclusions to which no response is required. To the extent any further response were found to be required, Acorn Strategies denies the remaining allegations in paragraph 6.

**7.      The claimants, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.**

**ANSWER:** Acorn Strategies admits that documents reflect that Acupay submitted two reclaim applications to SKAT, purportedly on Acorn Strategies' behalf, claiming repayments of tax withheld on dividends earned on shares of Danish companies. Acorn Strategies denies the remaining allegations in paragraph 7.

**8.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents**

obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendants Acorn Corp. and Acorn Strategies, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

ANSWER: Acorn Strategies denies with respect to itself the allegations in paragraph 8, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in paragraph 8 with respect to others and therefore denies them.

9.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

ANSWER: Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 9, and therefore denies them. Acorn Strategies denies the remaining allegations in paragraph 9 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

10.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, United Kingdom, and Luxembourg.

ANSWER: Acorn Strategies denies the allegations in paragraph 10 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

11.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and

International Crime ("SØIK"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies them.

12.    **The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including:**

a.    **The Authorized Representatives of the claimants, such as Defendant Summers, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;**

b.    **The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants; and**

c.    **The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 12 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

13.    **The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 13 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

14.    **SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 14 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with

respect to others and therefore denies them.

**15.** **As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 15 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

**16.** **As a result of the fraudulent claims by Defendants Acorn Corp. and Summers in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of at least $934,000 (US)[1], plus interest.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 16. Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 1 and therefore denies them.

**17.** **As a result of the fraudulent claims by Defendants Acorn Strategies and Summers in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of at least $4,605,000 (US), plus interest.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 17.

### III.   JURISDICTION & VENUE

**18.** **Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.**

**ANSWER:** Paragraph 18 states a legal conclusion as to which no response is required.

**19.** **Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.**

**ANSWER:** Paragraph 19 states a legal conclusion as to which no response is required.

### IV.   FACTUAL ALLEGATIONS

---

[1] This amount is the result of a conversion from DKK to U.S. Dollars performed on June 1, 2018, utilizing a conversion rate of 1 U.S. Dollar to 6.3861 DKK.

A.     **The Danish Withholding Tax System**

**20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority. In this case, the relevant tax authority is SKAT.**

**ANSWER:** Paragraph 20 states a legal conclusion to which no response is required.

**21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.**

**ANSWER:** Paragraph 21 states a legal conclusion as to which no response is required.

**22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.**

**ANSWER:** Paragraph 22 states a legal conclusion as to which no response is required.

**23.     A double taxation treaty between Denmark and the United States[2] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.**

**ANSWER:** Paragraph 23 and footnote 2 state legal conclusions as to which no response is required.

**24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax. The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore denies them.

**25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 and therefore denies them.

---

[2] Convention and Protocol between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10, ¶ 2(c), May 6, 1948, S. Treaty Doc. No. 106-12 (effective date Jan. 1, 2001).

B.      The Fraudulent Scheme

26.     As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 33 through 53 below.

ANSWER: Acorn Strategies denies the allegations in paragraph 26 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

1.      The Fraudulent Refund Claims Process

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("Acupay"), each of which submitted claims by mail or by email transmissions.

ANSWER: Acorn Strategies denies the allegations in paragraph 27 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

ANSWER: Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and therefore denies them.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

        a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

        b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "Claim Form"), which set out:

                i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

                ii.     the amount of the tax refund claim;

                iii.    a certification that the claimant was covered by the relevant

double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.    the bank account to which SKAT should pay the claim;

    c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

    d.    a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

    e.    in respect of United States-based pension plans, a statement from the Internal Revenue Service ("IRS"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "Code"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

**ANSWER:** Acorn Strategies admits that SKAT has provided copies to Acorn Strategies of the documentation described in subsections (a)-(e), which SKAT represents was submitted to it purportedly on Acorn Acorn Strategies' behalf. Acorn Strategies denies the remaining allegations in paragraph 29.

    **30.**    **The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 30 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

    **31.**    **It was SKAT's practice to pay claims that included the required supporting documentation.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and therefore denies them.

    **32.**    **SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 and therefore denies them.

2.      <u>Role of the Claimants</u>

33.     **Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 33 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

34.     **Each of the claimants, including Defendants Acorn Corp. and Acorn Strategies, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.**

**ANSWER:** Acorn Strategies admits that SKAT has provided copies to Acorn Strategies of the documentation described in paragraph 29, which SKAT represents was submitted to SKAT purportedly on Acorn Strategies' behalf.  Acorn Strategies denies the remaining allegations in paragraph 34.

35.     **As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims. Defendants Acorn Corp. and Acorn Strategies represented that Defendant Summers was their Authorized Representative and agent who had authority to act on their behalf with respect to their tax refund claims.**

**ANSWER:** Acorn Strategies denies the allegations in the first sentence of paragraph 35 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them. Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies them.

36.     **As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendants Acorn Corp. and Acorn Strategies represented that non-party Acupay was their agent and had authority to act on their behalf with respect to their claims.**

**ANSWER:** Acorn Strategies denies the allegations in the first sentence of paragraph 36 with

respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth

of the allegations with respect to others and therefore denies them. Acorn Strategies lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 36 and therefore denies them.

**37.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Acorn Corp. made three (3) separate withholding tax refund claims and represented that it was entitled to refunds totaling at least $934,000 (US). One refund claim was submitted to SKAT on August 20, 2012, and two other claims were undated.**

**ANSWER:** Acorn Strategies admits that SKAT has provided copies to Acorn Strategies

of more than one withholding tax refund claim, which SKAT represents were made to SKAT

purportedly on Acorn Strategies' behalf. Acorn Strategies lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 37 and

therefore denies them. Acorn Strategies otherwise denies the remaining allegations in paragraph 37.

**38.    Defendant Acorn Strategies made eight (8) separate withholding tax refund claims and represented that it was entitled to refunds totaling at least $4,605,000 (US). Two of these refund claims were undated, and the rest were submitted to SKAT on the following dates: August 20, 2012; April 22, 2013; January 6, 2014; January 21, 2014; and April 28, 2014.**

**ANSWER:** Acorn Strategies admits that SKAT has provided copies to Acorn Strategies of

more than one withholding tax refund claim, which SKAT represents were made to SKAT

purportedly on Acorn Strategies' behalf. Acorn Strategies lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in the first sentence of paragraph 38 and therefore

denies them. Acorn Strategies otherwise denies the remaining allegations in paragraph 38.

**39.    In fact, Defendants Acorn Corp. and Acorn Strategies did not hold the shares they represented to SKAT that they owned, and had no dividend tax withheld.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 39.

**40.    Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Acorn Corp. on the following dates: September 19, 2012 and January 15, 2013.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 and therefore denies them.

41. **Based on the false refund claims listed in paragraph 38, SKAT made payments to Defendant Acorn Strategies on the following dates: September 19, 2012; January 15, 2013; May 13, 2013; January 28, 2014; February 7, 2014; and May 28, 2014.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 and therefore denies them.

### 3.    The Role of the Claimants' Authorized Representatives

42. **Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 42 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

43. **Defendant Summers executed at the direction of, and on behalf of, Defendants Acorn Corp. and Acorn Strategies two separate "Power of Attorney" documents, both dated July 30, 2012, that granted to non-party Acupay authority to "pursue and file for reductions in rates of tax withholding in [Acorn Corp. or Acorn Strategies'] name for which [Acorn Corp. or Acorn Strategies are] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Acorn Corp. or Acorn Strategies are] entitled on [Acorn Corp. or Acorn Strategies'] behalf." On each of the two Power of Attorney documents, Defendant Summers described himself as the "authorized signer" of either Defendant Acorn Corp. or Defendant Acorn Strategies.**

**ANSWER:** Acorn Strategies refers to a Power of Attorney dated July 30, 2012, which speaks for itself. Acorn Strategies otherwise denies the remaining allegations in paragraph 43.

### 4.    The Role of the Payment Agents

44. **The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 44 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with

respect to others and therefore denies them.

46. **By means of the Power of Attorney described in paragraphs 42-43 above, each claimant authorized its respective Payment Agent to act on behalf of, and subject to control of, the claimant with respect to submitting the withholding tax refund claims.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 45 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

46. **With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, and therefore denies them.

47. **In connection with each Claim Form, the Payment Agent:**

    a. **provided its email address as the contact address for the claimant on whose behalf it was acting;**

    b. **signed and stamped the form, and stated it was applying on behalf of the claimant;**

    c. **enclosed the Power of Attorney executed by the claimant's Authorized Representative; and**

    d. **requested that SKAT pay the claim to its bank account.**

**ANSWER:** Acorn Strategies admits that SKAT has provided copies to Acorn Strategies of the Claim Form described in subsections (a)-(d), which SKAT represents was submitted to it purportedly on Acorn Strategies' behalf, and refers to the document which speaks for itself. Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of paragraph 47, and therefore denies them.

48. **As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 48, and therefore denies them. Acorn Strategies denies the allegations in the remainder of paragraph 48 with respect to itself, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations with respect to others and therefore denies them.

### 5.  Role of the Broker-Custodians

49.  **Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.**

**ANSWER:** Acorn Strategies admits that SKAT has provided copies to Acorn Strategies of "credit advices," which SKAT represents were submitted to it purportedly on Acorn Strategies' behalf, and refers to the documents which speak for themselves. Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 49 and therefore denies them.

50.  **By way of example, with respect to Defendant Acorn Corp., one example of a "credit advice":**

        a.    **is made out by Solo Capital Partners LLP;**

        b.    **is dated December 3, 2012;**

        c.    **purports to certify Defendant Acorn Corp.'s ownership of 980,000 shares in CHR Hansen Holding A/S (a genuine company), and whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and**

        d.    **states an International Securities Identification Number ("ISIN") for CHR Hansen Holding A/S shares as "DK0060227585". An ISIN is a twelve character alpha- numeric code that uniquely identifies securities for trading and settlement purposes.**

**ANSWER:** Acorn Strategies admits that SKAT has provided a copy to Acorn Strategies of a "tax advice," which SKAT represents was submitted to it purportedly on Acorn Strategies' behalf, and refers to the document which speaks for itself. Acorn Strategies denies the remaining

allegations in paragraph 50.

**51.** **With respect to Defendant Acorn Strategies, one example of a "credit advice":**

    **a.** **is made out by ED & F Man Capital Markets Limited;**

    **b.** **is signed by Christina MacKinnon as Head of Securities Operations;**

    **c.** **purports to certify Defendant Acorn Strategies' ownership of 1,800,000 shares in Coloplast A/S (a genuine company), and whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and**

    **d.** **states an ISIN for Coloplast A/S shares as "DK0060448595".**

**ANSWER:** Acorn Strategies admits that SKAT has provided a copy to Acorn Strategies of a "credit advice," which SKAT represents was submitted to it purportedly on Acorn Strategies' behalf, and refers to the document which speaks for itself. Acorn Strategies denies the remaining allegations in paragraph 51.

**52.** **Defendants Acorn Corp. and Acorn Strategies never owned the shares described above, never received any dividend from Danish companies in which they were purported shareholders, and were not entitled to claim a refund of dividend withholding tax.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 52.

**53.** **In the course of its investigation, in or around August 2015, SKAT concluded that many of the withholding tax refund claims that had been made in the preceding years, including claims by Defendants Acorn Corp. and Acorn Strategies, were fraudulent and SKAT suspended further payments.**

**ANSWER:** Acorn Strategies lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 and therefore denies them.

## CAUSES OF ACTION

### COUNT I
### (Fraud – Against Defendants Acorn Corp. and Summers)

**54.** **SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.**

**ANSWER:** Acorn Strategies repeats and reasserts its responses to each preceding

paragraph as if fully stated herein.

55.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, 49-50, and 52 to support claims for withholding tax refund payments.

ANSWER:  Acorn Strategies denies the allegations in paragraph 55.

56.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

ANSWER:  Acorn Strategies denies the allegations in paragraph 56.

57.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of at least $934,000 (US) and thereby suffered damages of that amount, plus interest.

ANSWER:  Acorn Strategies denies the allegations in paragraph 57.

58.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

ANSWER:  Acorn Strategies denies the allegations in paragraph 58.

## COUNT II
### (Fraud – Against Defendants Acorn Strategies and Summers)

59.  SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

ANSWER:   Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

60.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 38, 49, and 51-52 to support claims for withholding tax refund payments.

ANSWER:  Acorn Strategies denies the allegations in paragraph 60.

61.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

ANSWER:  Acorn Strategies denies the allegations in paragraph 61.

62.     In reliance on the false and fraudulent misrepresentations, SKAT paid

baseless withholding tax refund claims of at least $4,605,000 (US) and thereby suffered damages of that amount, plus interest.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 62.

63. **Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 63.

<u>**COUNT III**</u>
**(Aiding and Abetting Fraud – Against Defendants Acorn Corp. and Summers)**

64. **SKAT repeats and realleges paragraphs 1 through 63 above as if fully set forth herein.**

**ANSWER:** Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

65. **As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 65.

66. **As alleged in paragraphs 26 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 66.

67. **The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 67.

68. **The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 53 above.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 68.

69. **As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.**

**ANSWER:** Acorn Strategies denies the allegations in paragraph 69.

70. **Defendants' extensive fraudulent conduct demonstrates a high degree of**

moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 70.

## COUNT IV
### (Aiding and Abetting Fraud – Against Defendants Acorn Strategies and Summers)

71.    SKAT repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

**ANSWER:** Acorn Strategies repeats and reasserts its responses to each preceding

paragraph as if fully stated herein.

72.    As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 72.

73.    As alleged in paragraphs 26 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 73.

74.    The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 74.

75.    The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 53 above.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 75.

76.    As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 76.

77.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

**ANSWER:** Acorn Strategies denies the allegations in paragraph 77.

## COUNT V

**(Unjust Enrichment – Against Defendants Acorn Corp. and Summers)**

**78.**     **SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein**

**ANSWER:**  Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

**79.**     **This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.**

**ANSWER:**  Paragraph 79 states legal conclusions to which no response is required. To the extent any further response were found to be required, Acorn Strategies denies the allegations in paragraph 79.

**80.**     **By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 80.

**81.**     **SKAT suffered a loss because of the Defendants' unjust enrichment.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 81.

**82.**     **The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 82.

**COUNT VI**
**(Unjust Enrichment – Against Defendants Acorn Corp. and Summers)**

**83.**     **SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.**

**ANSWER:**  Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

**84.**     **This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.**

**ANSWER:**  Paragraph 84 states legal conclusions to which no response is required. To the

extent any further response were found to be required, Acorn Strategies denies the allegations in paragraph 84.

**85.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 85.

**86.     SKAT suffered a loss because of the Defendants' unjust enrichment.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 86.

**87.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 87.

## COUNT VII
### (Money Had & Received – Against Defendants Acorn Strategies and Summers)

**88.     SKAT repeats and realleges paragraphs 1 through 87 above as if fully set forth herein.**

**ANSWER:**  Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

**89.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 89.

**90.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 90.

## COUNT VIII
### (Money Had & Received – Against Defendants Acorn Strategies and Summers)

**91.     SKAT repeats and realleges paragraphs 1 through 90 above as if fully set forth herein.**

**ANSWER:**  Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

92.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

ANSWER:  Acorn Strategies denies the allegations in paragraph 92.

93.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

ANSWER:  Acorn Strategies denies the allegations in paragraph 93.

## COUNT IX
### (Negligent Misrepresentation – Against Defendants Acorn Corp. and Summers)

94.     SKAT repeats and realleges paragraphs 1 through 93 above as if fully set forth herein.

ANSWER:  Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

95.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

ANSWER:  Paragraph 95 states legal conclusions to which no response is required. To the extent any further response were found to be required, Acorn Strategies denies the allegations in paragraph 95.

96.     Defendants made material misstatements described in paragraphs 29-30, 37, 49-50, and 52 above in connection with every withholding tax refund claim submitted on behalf of Defendant Acorn Corp. to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

ANSWER:  Acorn Strategies denies the allegations in paragraph 96.

97.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.

ANSWER:  Acorn Strategies denies the allegations in paragraph 97.

98.     SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of at least $934,000 (US), plus interest.

ANSWER:  Acorn Strategies denies the allegations in paragraph 98.

## COUNT X
### (Negligent Misrepresentation – Against Defendants Acorn Corp. and Summers)

**99.     SKAT repeats and realleges paragraphs 1 through 98 above as if fully set forth herein.**

**ANSWER:**  Acorn Strategies repeats and reasserts its responses to each preceding paragraph as if fully stated herein.

**100.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.**

**ANSWER:**  Paragraph 100 states legal conclusions to which no response is required. To the extent any further response were found to be required, Acorn Strategies denies the allegations in paragraph 100.

**101.     Defendants made material misstatements described in paragraphs 29-30, 38, 49, and 51-52 above in connection with every withholding tax refund claim submitted on behalf of Defendant Acorn Corp. to SKAT. Defendants knew, or should have known, that these statements were inaccurate.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 101.

**102.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 102.

**103.     SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of at least $4,605,000 (US), plus interest.**

**ANSWER:**  Acorn Strategies denies the allegations in paragraph 103.

***

## AFFIRMATIVE DEFENSES

Acorn Strategies incorporates by reference herein the denials and admissions set forth above and asserts the following additional defenses, and those asserted by other defendants. Acorn Strategies does not intend to assume the burden of proof with respect to those matters as to which

Plaintiff SKAT bears the burden. This statement of defenses is based on Acorn Strategies' investigation to date, and Acorn Strategies reserves the right to supplement, amend, or withdraw these defenses during the course of litigation as new information is learned.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Complaint is barred, in whole or in part, by the Revenue Rule.

### THIRD DEFENSE

The Complaint is barred, in whole or in part, because Acorn Strategies did not make any material misstatements or omissions.

### FOURTH DEFENSE

The Complaint is barred, in whole or in part, because at all relevant times Acorn Strategies acted in good faith and without intent to defraud.

### FIFTH DEFENSE

The Complaint is barred, in whole or in part, because Acorn Strategies was entitled to the withholding tax refunds at issue.

### SIXTH DEFENSE

The Complaint is barred, in whole or in part, by the applicable statutes of limitations.

### SEVENTH DEFENSE

The Complaint is barred, in whole or in part, because Acorn Strategies did not commit any act that constituted substantial assistance to any fraud.

### EIGHTH DEFENSE

The Complaint is barred, in whole or in part, because Acorn Strategies did not authorize the pursuit or filing of any fraudulent refund claims.

## NINTH DEFENSE

The Complaint is barred, in whole or in part, because Acorn Strategies did not receive the amounts SKAT alleges that it paid out in withholding tax refunds.

## TENTH DEFENSE

The Complaint fails to allege facts sufficient to support a claim for fees, costs, expenses, or punitive damages.

## ELEVENTH DEFENSE

The Complaint is barred, in whole or in part, by the doctrines of unclean hands, waiver, laches, or estoppel.

## TWELFTH DEFENSE

The Complaint is barred, in whole or in part, due to the failure to join necessary or indispensable parties.

## THIRTEENTH DEFENSE

The Complaint is barred because the Plaintiff failed to exhaust administrative remedies and other legal remedies.

## FOURTEENTH DEFENSE

Plaintiff's recovery is barred or limited because if any damages are proven, they are in whole or in part the result of the negligence or wrongful or unauthorized acts of Plaintiff or others for which Acorn Strategies is not liable.

Dated: July 19, 2019

Respectfully submitted,

John M. Hanamirian, Esquire
Hanamirian Law Firm, P.C.
40 E. Main Street
Moorestown, NJ 08057
Telephone: (856) 793-9092
Facsimile: (856) 793-9121
jmh@hanamirian.com
*Attorney for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2019, the foregoing document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing, and copies will be sent to those indicated as nonregistered participants via United States First Class Mail.

John M. Hanamirian

Dated:  July 19, 2019