**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to: 19-cv-1781, 19-cv-1783,
19-cv-1785, 19-cv-1788, 19-cv-1791, 19-cv-1792,
19-cv-1794, 19-cv-1798, 19-cv-1800, 19-cv-1801,
19-cv-1803, 19-cv-1806, 19-cv-1808, 19-cv-1809,
19-cv-1810, 19-cv-1812, 19-cv-1813, 19-cv-1815,
19-cv-1818, 19-cv-1865, 19-cv-1866, 19-cv-1867,
19-cv-1868, 19-cv-1869, 19-cv-1870, 19-cv-1871,
19-cv-1873, 19-cv-1893, 19-cv-1894, 19-cv-1895,
19-cv-1896, 19-cv-1898, 19-cv-1904, 19-cv-1906,
19-cv-1911, 19-cv-1918, 19-cv-1922, 19-cv-1924,
19-cv-1926, 19-cv-1928, 19-cv-1929, 19-cv-1930,
19-cv-1931.

MASTER DOCKET

18-md-2865 (LAK)

---

**Declaration Regarding Danish Law**
**By**
**Mads Bryde Andersen,**
Professor of Law
Center for Market and Economic Law
University of Copenhagen

Copenhagen, Denmark
July 12, 2019

Mads Bryde Andersen, professor of law, declares and says:

## I.   QUALIFICATIONS

1.     Since 1991 I have served as a professor of private law at the University of Copenhagen, Denmark, from which university I graduated with a *candidatus juris* degree (LL.M.) in 1981. During the years 1981-1986 I worked as a lawyer for a mid-size Copenhagen law firm. I was admitted to the High Courts of Denmark in 1984. I joined the University of Copenhagen Law Faculty in 1987 where I took the doctor juris degree in 1989 with a dissertation on contract and tort liability for computer malfunctions.

2.     For further information on my background, I refer to the enclosed CV (attached as Appendix A).

3.     I have written this legal Declaration at the request of Plaintiff, Customs and Tax Administration of The Kingdom of Denmark (Skatteforvaltningen), in the following referred to as "**SKAT**".

4.     SKAT is compensating me for my work in preparing this Declaration on a per-hour basis.

## II.   DOCUMENTATION REVIEWED

5.     For the purpose of giving this Declaration, I have reviewed three examples of Complaints filed on 27 February 2019 by SKAT against the defendants who have filed motions to dismiss this litigation for SKAT's lack of standing. The said defendants are:

   a.   Avanix Management LLC,

   b.   Hadron Industries LLC, and

   c.   Cavus Systems LLC.

2

6.      I have also reviewed the declaration of Foreign Law of *Kasper Bech Pilgaard* in support of Defendants' Motion to Dismiss the Complaints Pursuant to Federal Rule of Civil Procedure 12(b)(1), dated 11 June 2019 (in the following referred to as "**the Pilgaard Declaration**"), with Exhibits.

7.      Furthermore, I have reviewed Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaints Pursuant to Federal Rule of Civil Procedure 12(b)(1), dated 12 June 2019 (in the following referred to as "**Defendants' Memorandum**").

8.      Counsel for SKAT has invited me to consider whether the allegation presented in Defendants Memorandum and – to the extent these allegations rely on conclusions presented herein – in the Pilgaard Statement, are correct, based upon my understanding of Danish law.

9.      First and in particular, I have been invited to consider whether SKAT– as it is alleged in the Defendants' Memorandum – is, according to Danish law, a *separate legal entity* in its own right, or alternatively whether SKAT is an integral *part of The Danish State* ("The Kingdom of Denmark"). This issue is addressed below at III.A.

10.      Secondly, I have been invited to comment upon how Danish ministries and ministerial branches appear before Danish courts of law. This issue is addressed below at III.B.

11.      True and correct copies of the Danish authorities that I have cited herein are attached as Appendices to this Declaration, with accompanying English translations.

### III.      DISCUSSION

#### A.      First Issue: Is SKAT a legal entity in its own right?

12.      The legal argumentation presented in Defendants' Memorandum assumes that *SKAT* and *the Danish treasury* (in the following referred to as **the Ministry of Finance**, in Danish: "Finansministeriet") each are two separate legal entities. This assumption leads the

Defendants to conclude that claims for compensation or restitution should be brought forward and litigated by the Ministry of Finance, being the injured party, and therefore not by SKAT.

13.     In my opinion this understanding is undoubtedly flawed. As I will explain in the following, both SKAT and the Ministry of Finance are ministries within the Danish government administration each of which are integral parts of one and the same legal entity, namely The Kingdom of Denmark.

14.     The Kingdom of Denmark bears the basic characteristics of any other separate legal entity: Whereas a *corporation* has its by-laws defining its legal personality and executive functions, The Kingdom of Denmark has its *constitution* (presented as <u>Exhibit A</u> of the Pilgaard Declaration) which, among other things, defines the *executive powers* at the supreme level. And likewise: Just like the by-laws of an association or corporation indicate how its *capital* is provided, the Danish constitution and additional regulations set forth the conditions by which Danish government finances are made available and spent.

15.     The Pilgaard Declaration offers a quite accurate description of a number of these characteristics of the Danish constitution and additional regulations. It also refers to some – however, as we shall see, not all relevant – of these constitutional roles and responsibilities that are necessary to understand the legal personality of The Kingdom of Denmark.

16.     In particular, I agree with the statements made in paragraphs 7 to 20 of the Pilgaard Declaration describing the rules of funding applicable to the Danish government.

17.     I also agree with the statements in paragraphs 21 to 27 in which Mr. Pilgaard underlines the central role played by the Danish Ministry of Finance in *administering* the Danish government budget.

18.     It should, however, be underlined that statutory and constitutional rules on how the government income of whatever origin should be *administered* and how this task is *distributed* between various government agencies *do not* affect the right of a Danish government agency to raise claims against private individuals or undertakings. Whether there is such a right, depends on the distribution of responsibilities, as decided by the government. I will revert to that issue below.

19.     It is also true and accurate, as indicated in paragraphs 28 to 46 of the Pilgaard Declaration, that SKAT is mandated with the competence to collect taxes. SKAT performs its duties and responsibilities with respect to the administration of Denmark's tax laws as the Kingdom of the Denmark. To perform its duties and responsibilities, SKAT has established bank accounts in its own name to hold tax revenues. I have reviewed an example of an account statement from a bank account in the name of SKAT Nordsjælland, which is attached as Exhibit B to the Declaration of Gry Ahlefeld-Engel dated July 12, 2019. When the account is in SKAT's name, it means that SKAT, and in effect the Kingdom of Denmark, holds ownership and legal title to said bank account. Since SKAT holds these accounts as the competent Agency within The Kingdom of Denmark, it is understood that these amounts will transferred to other accounts in accordance with applicable rules.

20.     Summing up, *none* of the observations made by Mr. Pilgaard on the Danish constitution may in any reasonable way lead to the conclusion that SKAT is a legal entity in its own right, separated from the Kingdom of Denmark.

21.     For my own part, I have not heard of any reported case law where allegations regarding the internal "bookkeepings" or internal control of Danish government funds have been

alleged as an argument for lack of legal standing by public entities. And for the reasons I will come revert to, it should surprise me if such case law existed.

22.     The rules that Mr. Pilgaard discusses in these paragraphs all serve the purpose of making sure that government income is subject to necessary control mechanisms. They do not affect the right of third parties who are subject to the legal liabilities that create the obligation to pay taxes or other monetary amounts to the public, or the right to claim monetary or other benefits from the government.

23.     The Pilgaard Declaration fails to address an important provision of the Danish constitution relevant for the question raised, namely Section 14 which in its entirety reads as follows:

> *"Section 14.*
>
> *The King shall appoint and dismiss the Prime Minister and the other Ministers. He shall decide upon the number of Ministers and upon the distribution of the duties of government among them. The signature of the King to resolutions relating to legislation and government shall make such resolutions valid, provided that the signature of the King is accompanied by the signature or signatures of one or more Ministers. A Minister who has signed a resolution shall be responsible for the resolution."*

24.     The important part of this provision appears from the last part of the *second sentence* according to which "the King" (which for all practical purposes, and as also agreed by Mr. Pilgaard, should be understood as ultimately the *Prime Minister*) "*...* shall decide upon the number of Ministers *and upon the distribution of the duties of government among them*" [italics inserted by me].

25.     This part of Section 14 does not give the Prime Minister the power to change the *substance* of the said "responsibilities" of the various government branches, i.e. the legal powers

provided by legislation and assumed in Section 13 of the constitution, as discussed in paragraph 5 of the Pilgaard Declaration.

26.     It does however make clear that regardless of any statutory act, the Prime Minister is by *government decree* empowered to decide *which branch* of the Danish government (and notably, which minister and ministry) should be in charge of any of the responsibilities as set forth by statute. In doing so Section 14 assumes that a minister (and a ministry) in the Kingdom of Denmark, is not a separate legal entity but merely a part of one and the same government administration and one legal entity: The Kingdom of Denmark.

27.     In accordance with the division of government tasks, decided by the Prime Minister, each *ministry* or other *administrative branch* or *agency* acts under the responsibility and supervision of a *minister* who is in turn appointed by the Prime Minister according to the Danish constitution. A ministry is therefore in itself not its own separate legal entity. It undertakes its tasks in the interest of the state (i.e. The Kingdom of Denmark) and in correspondence with the relevant rules and regulation.

28.     Accordingly, SKAT (being a part of the ministry of taxation) is like any other ministry an integral part of the Kingdom of Denmark.

29.     As rightfully stated by Mr. Pilgaard in paragraph 5, Article 13, 2 of the Danish constitution provides that "The ministers shall be responsible for the conduct of government; their responsibility shall be defined by statute." However, read in conjunction with Article 14, this provision does not indicate that a minister or a ministry is a separate legal entity. According to well-established legal principles, it merely indicates that the powers and tasks allocated to government should be defined by statute, not by government decree.

30.     It is also important to note that the responsibility for the conduct of government is not a delegated or assigned responsibility but an original and primary responsibility.

31.     Accordingly, the relevant ministry or governmental body will act as party in a) contracts, b) lawsuits and c) the general conduct of government.

32.     It follows as a consequence hereof, that any minister assigned with this task may also prosecute claims, e.g. for damages, either by negotiation or by way of litigation.

33.     My above reading of the said provision is supported by numerous statements in scholarly literature of which I limit myself to the following two quotations:

34.     In his 2018 book on Administrative Law ("Forvaltningsret"), on page 133, Professor, and today High Court Justice *Niels Fenger* states as follows:

> *"Under section 14 of the Danish Constitution, the Government (in practice the Prime Minister) may by Royal Decree transfer one duty established by law from one minister to another (from one ministerial department to another). The powers transferred in this manner are comparable to powers originally granted and, hence, in terms of administrative law, are not delegated powers.*
>
> *The distribution of duties can also occur purely administratively. ..."*

35.     A photocopy of the relevant page and of the title page of the Professor Fenger's book is attached to this statement as Appendix B.

36.     Furthermore, in his 1993 book "Administrative Law, Tasks, Authority, Organisation" (in Danish: "Forvaltningsret Opgaver Hjemmel Organisation"), on page 310, professor *Bent Christensen* makes the following statement:

> *"Section 14 of the Danish Constitution is a royal prerogative or a government prerogative exercised by the Prime Minister. The fact that it is a prerogative means that the Legislature cannot deprive the Prime Minister of these organizational powers.*
>
> *What this means is clear insofar as the number of ministers.*

8

*If a law, including an appropriation law, specifies a number of ministers, the Prime Minister is not required to abide by the number specified. He may appoint additional ministers.  Also, the additional ministers can demand payment even if their salary is not specified in the appropriation law. Their demands are thus considered equivalent to salary demands based upon guarantees, judgments etc. that do not require parliamentary appropriation.*

*This is not to imply, of course, that the legislature acts "unlawfully" in any sense by granting pay to a fixed number of ministers. To establish a budget, a fixed number of ministers must necessarily be established. However, the number specified is not binding, nor as a prerequisite for the budget.*

*Regarding the allocation of tasks between the ministers, or in the terminology of this book: the distribution of duties between the ministerial departments, the meaning of section 14 is not as clear.*

*It is well established that the legislature cannot remove or transfer the organizational powers vested in the Prime Minister under section 14.*

*It is also well established that the numerous designations in laws and decrees assigning specific duties to certain ministers or ministries do not prevent the Prime Minister from transferring such duties to another minister by Royal Decree without the involvement of the legislature. The referral to a specific minister in the law or decree is thus considered to be a depiction of the distribution of duties between different ministerial areas that existed at the time the law was passed. This is in line with the practice relating to consolidated laws.  If a law, after having been amended in part by a new law, is reprinted in a consolidated version with the amended content of the law, there is an opportunity that can be used to revise the ministerial designation even if it was not affected by the legal amendment, if the duties have since been transferred another minister by an intervening Royal Decree."*

37.     A photocopy of the relevant page and of the title page of the Professor

Christensen's book is attached to this statement as Appendix C.

38.     As indicated in the last paragraph of this quotation, the power rested with the

Prime Minister by Section 14 even gives the Prime Minister the right to *change the wording* of

statutory legislation in order to "rename" public authorities into the names that the Prime

Minister may decide in consequence of a decision to distribute government responsibilities. Such

renaming of government branches takes place every time a new administration takes over – as it

happened in Denmark in June 2019, following the recent election.

39.     Before leaving this issue I would like to make a final observation that confirms the conclusion above that the Kingdom of Denmark is in effect *one* legal entity, and not several legal entities. This observation pertains to the offset of claims between various government agencies within the Danish government administration.

40.     If, for example, government branch "D" is a debtor for a particular claim towards a particular *citizen*, and government "C" is a creditor in relation to a completely different claim towards that same citizen, then "D" may use "C"'s claim towards the citizen as a counterclaim to compensate or counterbalance its debt towards the citizen.

41.     This principle has been established for generations in Danish case-law since the first landmark decision from the Danish Supreme Court, reported in the Weekly Law Report ("Ugeskrift for Retsvæsen"), 1955 at page 13 and subsequent. The said practice has subsequently been upheld by the Supreme Court as reported in the Weekly Law Report and in various High Court decisions, including the one reported in the Weekly Law Report 2002, at page 2396.

42.     Summing up: The present dispute is not about whether the government budget should be set up in one way or the other. Consequently, the rules and contracts relied on by Mr. Pilgaard have no bearing on SKAT's standing to sue the defendants in the present litigation. The many rules and provisions referred to in the Pilgaard Declaration describe how decisions are taken on the supreme political level in the Kingdom of Denmark, and how the Danish government's budget is organized. These questions have nothing to do with how a Danish government entity should appear in the role of plaintiff in a case in which compensation or restitution is claimed towards parties who have allegedly deceived the Kingdom of Denmark into paying out major amounts of allegedly withheld dividend tax.

43.     The present litigation has caused substantial political concern in Denmark because of the magnitude of the amounts allegedly lost by the Kingdom of Denmark. Therefore, it is certain that the Ministry of Finance has already taken a profound interest in SKAT's claims in this case. Since, however, no decision has been taken to remove the responsibility to collect these amounts from SKAT to the Ministry of Finance, or any other government entity, it is clear that SKAT – as the deceived party and the party from whose bank account the funds were paid – has the responsibility to raise the claims presented in the present litigation.

**B.     Second Issue: How do Danish ministries and ministerial branches appear before Danish courts of law?**

44.     Section 240 of the Danish Administration of Justice Act ("Retsplejeloven") reads as follows:

> *(1) The home court of the State is the court for the judicial district in which the office of the authority being sued on behalf of the State is located.*
>
> *(2) Subject to Section 245, proceedings concerning judicial review of decisions made by a central government authority must be instituted in the plaintiff's home court if the plaintiff's home court is in Denmark.*

45.     By making reference to "the authority being sued on behalf of the State", the first sub-paragraph of this Section confirms the conclusions presented above, that the Kingdom of Denmark ("the State") may be sued by plaintiffs bringing action against the relevant "authority". However, the provision does not define *towards which* among several possible authorities proceedings should be instituted.

46.     The Law Report (no. 1082, published in 1985) that lead to the present wording of Section 240 offers on page 75 the following comment to this issue:

> *The question about which authority can be sued on behalf of the state must, as to date, be decided on the basis of general principles of administrative law. A lawsuit can, in general, be brought against the administrative authority that*

*has the capacity and competence on its own to reach a decision or ruling in the particular case.*

47.     A photocopy of the relevant page and of the said Law Report is attached to this statement as <u>Appendix D</u>.

48.     In accordance with the conclusions presented above, it is generally recognized in Danish law that public agencies act in their own name in cases where their decisions are being questioned. Accordingly, in Danish legal practice you will not find cases of such nature with "The Kingdom of Denmark" appearing on the government side, either as plaintiff or defendant.

49.     This conclusion is maintained on page 904 of Professor Niels Fengers aforementioned 2018 book on Administrative Law in which he states:

> *In most cases, it is self-evident who shall appear as litigating party on the administration's side, namely the authority that issued the disputed administrative decision …*
>
> *Additionally, the case must be brought against the authority responsible for the decision that is to be tried.*

50.     A photocopy of the relevant page and of the title page of the Professor Fenger's book is attached to this statement as <u>Appendix E</u>.

51.     In accordance with the conclusions above, I have reviewed examples of relevant case law, which all without exception show that cases against the Danish government have been brought against different branches and agencies of the Danish government administration. Although all of the reviewed cases involve amounts subject to government bookkeeping regulations, none of these cases have been brought against the Ministry of Finance.

## IV.    CONCLUSION

52.    The analyses presented above lead me to conclude that SKAT as the deceived and injured party has standing to raise claims brought forward in the complaints subject to the present litigation and evidenced by the three complaints referred to above in paragraph 8.

53.    I therefore strongly disagree on the conclusion drawn in the Preliminary Statement of the Defendant's Memorandum, that SKAT does not have legal standing to raise these claims.

54.    In particular, I disagree with the assumption that the legal standing of SKAT to raise the present litigation has anything to do with the fact that SKAT and the Danish Ministry of Finance are two parts of the Danish government administration, or on the fact that the amounts of which SKAT was allegedly deceived did not "belong" to SKAT directly.

55.    I do not see that the above conclusions may be subject to any doubt.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 12, 2019

_____
Mads Bryde Andersen