# Appendix C

BENT CHRISTENSEN

# Administrative Law

Tasks
Authority
Organisation

THE DANISH UNION OF JURISTS AND ECONOMISTS PRESS

Forvaltningsret. Opgaver. Hjemmel. Organisation
© 1991 By Jurist- og Økonomforbundets Forlag
Alle rettigheder forbeholdes.
Mekanjsk, [otografisk eller aodeo gengivelse eller
mangfoldiggørelse af denne bog eUer dele heraf
er uden forlagets skriftlige samtykke ikke tilladt
ifølge gældende dam.sk lov om ophavsret
Sat bos Viborg Maskinsærieri
Tryk: Naraya.na Press, Gylling
Indbinding: Damm's Bogbinderi, Randei:,;
Printed in Denmark 1991
ISBN 87-574-5183-4

Kap. XX. 2.

tisk betydning. Tendensen gar i retning af at lregge flere og flere opgaver til kommune me.

Grl. § 24 hindrer, at de retsakter, der bestar i benadning og amnesti, tilde les andre forvaltningsorganer end justitsministeren[32]). Bestemmelsens omrade er sa snrevert, at heller ikke den har st0rre praktisk betydning.

Det har derimod grl. § 14, nar den foreskriver, at kongen bestemmer ministre nes antal og forretningemes fordeling mellem dem[33]).

Section 14 of the Danish Constitution is a royal prerogative or a government prerogative exercised by the Prime Minister. The fact that it is a prerogative means that the Legislature cannot deprive the Prime Minister of these organisational powers. What this means is clear insofar as the number of ministers.

If a law, including an appropriation law, specifies a number of ministers, the Prime Minister is not required to abide by the number specified. He may appoint additional ministers. Also, the additional ministers can demand payment even if their salary is not specified in the appropriation law. Their demands are thus considered equivalent to salary demands based upon guarantees, judgments etc. that do not require parliamentary appropriation.[34]

This is not to imply, of course, that the legislature acts "unlawfully" in any sense by granting pay to a fixed number of ministers. To establish a budget, a fixed number of ministers must necessarily be established. However, the number specified is not binding, nor as a prerequisite for the budget.

Regarding the allocation of tasks between the ministers, or in the terminology of this book: the distribution of duties between the ministerial departments, the meaning of section 14 is not as clear.

It is well established that the legislature cannot remove or transfer the organisational powers vested in the Prime Minister under section 14.

It is also well established that the numerous designations in laws and decrees assigning specific duties to certain ministers or ministries do not prevent the Prime Minister from transferring such duties to another minister by Royal Decree without the involvement of the legislature. The referral to a specific minister in

---

32) *Ross* 420-21, *Zahle* 2.40-41.
33) *Ross* 418 jvf. 236, *Max Sørensen* 126-27, *Zahle* 2.36 Jørgen Albæk Jensen Parlamentarismens statsretlige betydning 1989.lll, *Germer* I 33, *Poul Andersen:* Statsret 163-64 and *Niels Petersen* Bet. 320/1962 appendix 137.
34) Budget guidelines (*Budgetvejledning*), 1989.61, 23-24.

Grl. § 14

the law or decree is thus considered to be a depiction of the distribution of duties between different ministerial areas that existed at the time the law was passed. This is in line with the practice relating to consolidated laws. If a law, after having been amended in part by a new law, is reprinted in a consolidated version with the amended content of the law, there is an opportunity that can be used to revise the ministerial designation even if it was not affected by the legal amendment, if the duties have since been transferred another minister by an intervening Royal Decree.[35]

Tvivl opstar, hvis der foreligger srerlige holdepunkter for, at lovgivningsmagten eller et folketingsflerta1 har lagt eller lregger srerlig vregt pa, at netop denne opgave ud0ves inden for netop dette ministeromrade. Holdepunkteme kan fremga af en lovs forarbejder eller ligefrem vrere udtalt i en folketingsbeslutning36). Hvilken betydning har sadanne tilkendegivelser for statsministerens ud0velse af sin organisationsmagt?

At tilkendegivelseme kan have faktisk eller politisk betydning og endda kan fore til et rnistillidsvotum, er en selvf0lge.

Lovgivningsmagten kan naturligvis ogsa g0re statsministerens organisationsmagt genstandsl0s ved at afskaffe opgaven, og den kan via l0n- og personalerammer pr0ve at udsulte en bestemt minister.

Sp0rgsmalet er, om tilkendegivelseme i no gen rimeligt handfast forstand kan siges retligt at begrrense statsrninisterens organisationsmagt. I sidste instans afhrenger svaret vist af, hvordan man i det hele vil betragte en mindretalsregerings forfatningsretlige stilling over for Folketinget. Folketinget har irnidlertid pa lige netop dette omrade for ganske nylig lagt til grund, at Folketingets tilkendegivelser ikke retligt begrrenser statsministerens organisationsmagt37). Denne l0sning har den store fordel, at den er klar.

Grl. § 14 omfatter kun forretningemes fordeling mellem ministrene - med den sprogbrug, som anvendes i denne bog: opgavemes fordeling pa ministeromrader. Helt op i begyndelsen af dette arhundrede findes – ganske vist uklare - spar af en opfattelse, hvorefter § 14 ogsa' omfattede opgavefordelingen inden for det enkelte rninisteromrade, altsa centralad-

---

35) N. Eilschou, Basic Law Book I (*Juridisk Grundbog I*) 1975, 109.
36) Således folketingsbeslutning af 22/S 1986, hvori folketinget opfozdrer statsministeren til i folketingssamlingen 1985-86 at overløre oominiatrationen af lov om jagt og vildtforvalming Wllt de dertil hørende institutioner til Miljøministeriet, Ff 1985-86 A 1125, B 1701 og C 813.
37) Ff 1982-83. 1219'} ff. især 122l6, Ff 1935-86. 2835 ff. ogl!S72 og Ff 1986187.13310.

BENT CHRISTENSEN

# Forvaltningsret

Opgaver
Hjemmel
Organisation

JURIST- OG ØKONOMFORBUNDETS FORLAG

Forvaltningsret. Opgaver. Hjemmel. Organisation
© 1991 By Jurist- og Økonomforbundets Forlag
Alle rettigheder forbeholdes.
Mekanisk, fotografisk eller anden gengivelse eller
mangfoldiggørelse af denne bog eller dele heraf
er uden forlagets skriftlige samtykke ikke tilladt
ifølge gældende dansk lov om ophavsret.
Sat hos Viborg Maskinsætteri
Tryk: Narayana Press, Gylling
Indbinding: Damm's Bogbinderi, Randers
Printed in Denmark 1991
ISBN 87-574-5183-4

Kap. XX. 2.

tisk betydning. Tendensen går i retning af at lægge flere og flere opgaver til kommunerne.

Grl. § 24 hindrer, at de retsakter, der består i benådning og amnesti, tildeles andre forvaltningsorganer end justitsministeren[32]). Bestemmelsens område er så snævert, at heller ikke den har større praktisk betydning.

Det har derimod grl. § 14, når den foreskriver, at kongen bestemmer ministrenes antal og forretningernes fordeling mellem dem[33]).

Grl. § 14 er et kongeligt prærogativ eller et regeringsprærogativ, der udøves af statsministeren. At der er tale om et prærogativ, betyder, at lovgivningsmagten ikke kan fratage statsministeren denne organisationsbeføjelse.

Hvad der nærmere ligger heri, er utvivlsomt for så vidt angår antallet af ministre.

Hvis en lov, herunder en bevillingslov, fastsætter antallet af ministre, behøver statsministeren ikke at respektere antalsangivelsen. Han kan udnævne yderligere. Og de yderligere ministre, hvis løn ikke er optaget på finansloven, har alligevel krav på løn. Deres krav sidestilles altså med de krav, der bygger på indfrielse af garantier, dom m.v., og som ikke behøver finanslovbevilling.[34])

Heri ligger naturligvis ikke, at lovgivningsmagten handler i nogen forstand »retsstridigt« ved at bevilge løn til et bestemt antal ministre. For at kunne opstille et budget må man nødvendigvis bygge på et bestemt antal ministre. Men antalsangivelsen er altså ikke bindende, heller ikke som bevillingsforudsætning.

For så vidt angår forretningernes fordeling mellem ministrene – eller med den sprogbrug, der anvendes i denne bog: opgavefordelingen mellem ministerområder – er § 14's betydning ikke helt så utvivlsom.

Det står fast, at lovgivningsmagten ikke kan fjerne eller flytte den organisationsmagt, som statsministeren har efter § 14.

Der er ligeledes fast praksis for, at de talrige bestemmelser i love og anordninger, der henlægger bestemte opgaver til bestemte ministre eller ministerier, ikke hindrer statsministeren i ved kongelig resolution og uden lovgivningsmagtens medvirken at flytte opgaverne til en anden minister.

---

32) *Ross* 420-21, *Zahle* 2.40-41.
33) *Ross* 418 jvf. 236, *Max Sørensen* 126-27, *Zahle* 2.36 *Jørgen Albæk Jensen* Parlamentarismens statsretlige betydning 1989.111, *Germer* I 33, *Poul Andersen:* Statsret 163-64 og *Niels Petersen* Bet. 320/1962 bilag 1 37.
34) Budgetvejledning 1989.61. 23-24.

Lovens eller anordningens henvisning til en bestemt minister betragtes således som en beskrivelse af den fordeling af opgaverne mellem ministerområder, der var gældende på det tidspunkt, hvor loven blev vedtaget. Hermed stemmer praksis vedrørende lovbekendtgørelser. Hvis en lov i anledning af, at den er blevet delvis ændret ved en ny lov, optrykkes samlet med det indhold, loven har efter ændringerne, kan man benytte lejligheden til at ændre ministerbetegnelsen selv i de paragraffer, der ikke er berørt af ændringsloven, hvis en mellemkommende kongelig resolution har flyttet opgaverne til en anden minister[35]).

Tvivl opstår, hvis der foreligger særlige holdepunkter for, at lovgivningsmagten eller et folketingsflertal har lagt eller lægger særlig vægt på, at netop denne opgave udøves inden for netop dette ministerområde. Holdepunkterne kan fremgå af en lovs forarbejder eller ligefrem være udtalt i en folketingsbeslutning[36]). Hvilken betydning har sådanne tilkendegivelser for statsministerens udøvelse af sin organisationsmagt?

At tilkendegivelserne kan have faktisk eller politisk betydning og endda kan føre til et mistillidsvotum, er en selvfølge.

Lovgivningsmagten kan naturligvis også gøre statsministerens organisationsmagt genstandsløs ved at afskaffe opgaven, og den kan via løn- og personalerammer prøve at udsulte en bestemt minister.

Spørgsmålet er, om tilkendegivelserne i nogen rimeligt håndfast forstand kan siges retligt at begrænse statsministerens organisationsmagt. I sidste instans afhænger svaret vist af, hvordan man i det hele vil betragte en mindretalsregerings forfatningsretlige stilling over for Folketinget. Folketinget har imidlertid på lige netop dette område for ganske nylig lagt til grund, at Folketingets tilkendegivelser *ikke* retligt begrænser statsministerens organisationsmagt[37]). Denne løsning har den store fordel, at den er klar.

Grl. § 14 omfatter kun forretningernes fordeling mellem ministrene – med den sprogbrug, som anvendes i denne bog: opgavernes fordeling på ministerområder. Helt op i begyndelsen af dette århundrede findes – ganske vist uklare – spor af en opfattelse, hvorefter § 14 også omfattede opgavefordelingen inden for det enkelte ministerområde, altså centralad-

---

35) N. Eilschou Holm i Juridisk Grundbog I 1975, 109.
36) Således folketingsbeslutning af 22/5 1986, hvori folketinget opfordrer statsministeren til i folketingssamlingen 1985-86 at overføre administrationen af lov om jagt og vildtforvaltning samt de dertil hørende institutioner til Miljøministeriet, FT 1985-86 A 1125, B 1701 og C 813.
37) FT 1982-83. 12199 ff. især 12206, FT 1985-86. 2835 ff. og 11572 og FT 1986/87. 13310.