# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to 1:18-CV-05053-LAK. | MASTER DOCKET<br><br>Case No. 1-18-MD-02865-LAK<br><br>**Jury Trial Demanded** |

**DEFENDANTS THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN'S AND SHELDON GOLDSTEIN'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AGAINST SKATTEFORVALTNINGEN AND THIRD-PARTY COMPLAINT AGAINST ED&F MAN CAPITAL MARKETS, LTD.**

Defendants the Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein Plan") and Sheldon Goldstein ("Goldstein") (collectively, the "Goldstein Defendants"), by their attorneys Gusrae Kaplan Nusbaum PLLC, answer the complaint (the "Complaint") as follows:

## GENERAL DENIAL

The Complaint contains allegations that pertain to the conduct of other unnamed parties that applied for Danish tax refunds.[1] Unless otherwise expressly admitted or denied, the Goldstein Defendants deny such allegations because they lack knowledge or information sufficient to form a belief regarding the truth of these allegations. No answer is required to these allegations or other allegations that pertain to Danish withholding tax or the Danish Withholding Tax Act Convention and Protocol between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.–

---

[1] The Complaint contains allegations referring to conduct of unnamed parties, referred to in the Complaint as "claimants," who purportedly submitted fraudulent applications for repayment of taxes withheld from dividends paid on shares of Danish companies. Compl. ¶¶ 4–7; 9; 11; 23–24; 26–28; 32–36; 39; 41–45.

Den., art. ¶¶ 10(3)(c), 22(2)(e), May 6, 1948, S. Treaty Doc. No. 106-12 (effective date Jan. 1, 2001) (the "Double-Taxation Treaty"), which call for legal conclusions.

**SPECIFIC RESPONSES**

1.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 1.

2.      Paragraph 2 asserts legal conclusions to which no response is required. To the extent that a response is required, Paragraph 2 is denied.

3.      Paragraph 3 asserts legal conclusions to which no response is required. To the extent that a response is required, Paragraph 3 is denied.

4.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 4, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

5.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 5, except deny the allegations that the Goldstein Plan submitted fraudulent requests for tax refunds to Plaintiff Skatteforvaltningen ("SKAT").

6.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 6, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

7.      The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 7, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

8. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 8, except aver that Plaintiff has wrongfully withheld no less than DKK 1,080,000 to which the Goldstein Defendants are rightfully entitled, as detailed infra in the Goldstein Defendants' Counterclaims.

9. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 9, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

10. The Goldstein Defendants deny the allegations of Paragraph 10.

11. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 11, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

12. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 12.

13. The Goldstein Defendants deny the allegations of Paragraph 13.

14. The Goldstein Defendants admit the allegations of Paragraph 14.

15. The Goldstein Defendants admit the allegations of Paragraph 15.

16. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 16.

17. The Goldstein Defendants admit the allegations of Paragraph 17, except deny the allegations to the extent that they suggest that the Goldstein Plan was not a bona fide trust forming part of a pension plan qualified and exempt from taxation under the U.S. Internal Revenue Code and resident of the United States of America for purposes of U.S. taxation. The Goldstein Plan is, indeed, a bona fide trust forming part of a pension plan qualified under Section

401(a) of the U.S. Internal Revenue Code, exempt from taxation under Section 501(a) of the U.S. Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     The Goldstein Defendants admit the allegations of Paragraph 18.

19.     Paragraph 19 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 19.

20.     Paragraph 20 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 20.

21.     Paragraph 21 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 21.

22.     Paragraph 22 asserts legal conclusions to which no response is required. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 22.

23.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 23, except deny the allegations to the extent that they suggest that the Goldstein Defendants did not actually own the relevant shares giving rise to the claims filed with SKAT. The Goldstein Defendants only submitted refund claims for taxes paid on shares that the Goldstein Defendants owned at the time of the relevant dividends.

24.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 24, except aver that the Goldstein Defendants purchased the relevant shares and applied for the concomitant tax refunds in reliance on SKAT's "normal practice [of] accept[ing] claims from designated payment agents and[] transmit[ting] refunds to claimants through their designated payment agents."

25.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 25, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

26.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 26, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

27.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 27, except deny the allegations to the extent they purport to implicate the Goldstein Defendants in wrongful conduct.

28.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 28, except admit that the Goldstein Defendants submitted to SKAT similar documentation of the Goldstein Plan's ownership of shares and payment of tax on dividend when applying for tax refunds.

29.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 29.

30.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 30, except aver that the Goldstein Plan

purchased the relevant shares and applied for the concomitant tax refunds in reliance on SKAT's "practice to pay claims that included the required supporting documentation."

31.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 31, except admit that SKAT properly refunded the Goldstein Plan for eight of the nine refund claims that the Goldstein Plan made to SKAT.

32.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 32.

33.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 33 of the Complaint, except admit that the Goldstein Plan made nine withholding tax refund claims to SKAT through its payment agent, Goal Taxback Ltd. ("Goal").

34.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 34 of the Complaint, except deny that the Goldstein Defendants made any "fraudulent claims" to SKAT; admit that the Goldstein Plan "represented that Goldstein was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Goldstein Law Plan's claim," and deny any implication that such representation was false.

35.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 35 of the Complaint, except deny that the Goldstein Defendants made any "fraudulent claims" to SKAT; admit that the Goldstein Plan "represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims," and deny any implication that such representation was false.

36. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 36, except admit that the Goldstein Plan made nine separate withholding tax refund claims totaling approximately DKK 11,343,510 on or around March 26, 2014, April 4, 2014,  May 2, 2014, May 6, 2014, December 10, 2014, March 3, 2015, March 4, 2015, March 26, 2015, and August 10, 2015, and deny any implication that any claim made by the Goldstein Defendants was fraudulent or otherwise wrongful.

37. The Goldstein Defendants deny the allegations of Paragraph 37.

38. The Goldstein Defendants deny the allegations of Paragraph 38, and particularly that the refund claims were "false," except admit that the Goldstein Plan received refund payments from SKAT on or around April 30, 2014, May 2, 2014, January 20, 2015, and May 18, 2015.

39. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 39, except admit that the Goldstein Plan granted Goal authority to submit refund claims to SKAT on its behalf.

40. Paragraph 40 purports to summarize a document that speaks for itself. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 40.

41. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 41, except deny that the Goldstein Defendants ever directed anyone to submit fraudulent withholding tax refund claims.

42. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 42, except admit that they authorized Goal to submit tax

refund claims on its behalf, and deny any implication that they ever authorized anyone to submit fraudulent claims on their behalf.

43. Paragraph 43 purports to summarize documents that speak for themselves. To the extent that a response is required, the Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of Paragraph 43, except admit that Goal submitted cover letters attaching documentation similar to that summarized in Paragraph 28.

44. Paragraph 44 purports to summarize documents that speak for themselves. To the extent that a response is required, the Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 44, except admit that Goal submitted cover letters attaching documentation similar to that summarized in Paragraph 28.

45. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 45, except admit that the Goldstein Plan received proceeds from eight of the refund claims they submitted to SKAT, and deny that said claims were fraudulent or that the Goldstein Defendants were "participants in the fraud."

46. The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 46, except admit that tax vouchers reflecting the Goldstein Plan's ownership of the relevant shares were submitted with each refund claim to SKAT.

47. Paragraph 47 purports to summarize a document that speaks for itself. To the extent that a response is required, the Goldstein Defendants admit the allegations of Paragraph 47.

48. The Goldstein Defendants deny the allegations of Paragraph 48.

49.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 49, except deny that any refund claims submitted by the Goldstein Plan were fraudulent, and admit that SKAT refused to refund the Goldstein Plan for one of its claims and demanded repayment of the refunds SKAT had already paid to the Goldstein Plan.

## CAUSES OF ACTION

### COUNT I
### (Fraud – Against both Defendants)

50.     In response to Paragraph 50, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 49 as if fully set forth herein.

51.     The Goldstein Defendants deny the allegations of Paragraph 51.

52.     The Goldstein Defendants deny the allegations of Paragraph 52.

53.     The Goldstein Defendants deny the allegations of Paragraph 53.

54.     The Goldstein Defendants deny the allegations of Paragraph 54.

### COUNT II
### (Aiding and Abetting Fraud – Against both Defendants)

55.     In response to Paragraph 55, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 54 as if fully set forth herein.

56.     The Goldstein Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 56 of the Complaint, except deny any implication that the Goldstein Defendants perpetrated, indirectly or directly, any fraud on SKAT.

57.     The Goldstein Defendants deny the allegations of Paragraph 57.

58.     The Goldstein Defendants deny the allegations of Paragraph 58.

59.     The Goldstein Defendants deny the allegations of Paragraph 59.

60.     The Goldstein Defendants deny the allegations of Paragraph 60.

61.     The Goldstein Defendants deny the allegations of Paragraph 61.

## COUNT III
### (Payment by Mistake – Against Both Defendants)

62.     In response to Paragraph 62, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 61 as if fully set forth herein.

63.     The Goldstein Defendants deny the allegations of Paragraph 63.

64.     The Goldstein Defendants deny the allegations of Paragraph 64.

65.     The Goldstein Defendants deny the allegations of Paragraph 65.

66.     The Goldstein Defendants deny the allegations of Paragraph 66.

67.     The Goldstein Defendants deny the allegations of Paragraph 67.

## COUNT IV
### (Unjust Enrichment – Against both Defendants)

68.     In response to Paragraph 68, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 67 as if fully set forth herein.

69.     The Goldstein Defendants deny the allegations of Paragraph 69

70.     The Goldstein Defendants deny the allegations of Paragraph 70.

71.     The Goldstein Defendants deny the allegations of Paragraph 71.

72.     The Goldstein Defendants deny the allegations of Paragraph 72.

## COUNT V
### (Money Had and Received – Against Both Defendants)

73.     In response to Paragraph 73, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 72 as if fully set forth herein.

74.     The Goldstein Defendants deny the allegations of Paragraph 74.

75.     The Goldstein Defendants deny the allegations of Paragraph 75.

## COUNT VI
### (Negligent Misrepresentation – Against Both Defendants)

76.     In response to Paragraph 76, the Goldstein Defendants repeat and reallege their foregoing responses to Paragraphs 1 through 75 as if fully set forth herein.

77.     The Goldstein Defendants deny the allegations of Paragraph 77.

78.     The Goldstein Defendants deny the allegations of Paragraph 78.

79.     The Goldstein Defendants deny the allegations of Paragraph 79.

80.     The Goldstein Defendants deny the allegations of Paragraph 80.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

81.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

82.     Plaintiff's claims are barred, in whole or in part, under the doctrines of laches, waiver, and/or ratification.

### THIRD AFFIRMATIVE DEFENSE

83.     Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join necessary and indispensable parties.

### FOURTH AFFIRMATIVE DEFENSE

84.     Plaintiff's claims are barred, in whole or in part, because any and all losses sustained were due to Plaintiff's own acts and/or omissions.

### FIFTH AFFIRMATIVE DEFENSE

85.     Plaintiff's claims are barred, in whole or in part, under the doctrines of accord and satisfaction.

## SIXTH AFFIRMATIVE DEFENSE

86.     Plaintiff's claims are barred, in whole or in part, under the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

87.     Plaintiff's claims for equitable relief are barred by the doctrine of unclean hands and its bad faith in initiating its suit in this jurisdiction while, upon information and belief, Plaintiff is simultaneously pursuing remedies for the same allegations contained in the Complaint in foreign jurisdictions and referring the same and / or similar allegations contained in the Complaint to other agencies in other jurisdictions for identical and / or substantially-similar relief.

## EIGHTH AFFIRMATIVE DEFENSE

88.     Plaintiff's claim for unjust enrichment seeks to recover damages that Plaintiff is not entitled to recover in this case and award of the judgment sought by Plaintiff would unjustly enrich Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

89.     Defendant reserves the right to add additional Affirmative Defenses as may become apparent during the course of this litigation.

## DEFENSES

## FIRST DEFENSE

90.     Plaintiff's claims are barred as the Goldstein Defendants did not participate in any fraudulent scheme or misrepresentations. Demonstrative of the lack of any wrongful conduct by the Goldstein Defendants are, inter alia, the following:

> **a.** All transactions in Danish securities were purchased or sold by the Goldstein Plan through a registered broker–dealer, ED&F Man Capital Markets Ltd. ("ED&F Capital Markets"), which was subject to the rule of law governing broker–dealers

in the United Kingdom at all relevant times and issued various confirmations and written verifications of the transactions for the Goldstein Plan;

**b.** In the United States, the use of derivative securities and other arbitrage strategies is legal and routine in sophisticated securities markets;

**c.** Neither of the Goldstein Defendants had any control over ED&F Capital Markets's back office nor was in any way, directly or indirectly, involved in the custody and control of the Danish securities that the Goldstein Plan transacted in its brokerage account at ED&F Capital Markets. The Goldstein Defendants relied on the excellent reputation of ED&F Capital Markets and the laws of the United Kingdom and United States and had no reason to believe that ED&F Capital Markets would inaccurately represent the Goldstein Plan's ownership of the relevant Danish securities or payment of the relevant Danish taxes. The course of activity relating to the trading and arbitrage activity in the Goldstein Plan's ED&F Capital Markets account was similar to various arbitrage strategies developed and used in the United States securities markets.

## SECOND DEFENSE

91.     The claims are barred, in whole or in part, because at all times the Goldstein Defendants acted with reasonable care with respect to the matters alleged in the Complaint, including, but not limited to, those matters represented in the Goldstein Plan's applications claiming repayment of tax withheld on dividends earned on shares of Danish companies (the "Reclaim Applications"). Relying on ED&F Man's compliance with U.K. laws and regulations, the Goldstein Defendants had reasonable grounds to believe, and did believe, that the Reclaim Applications were true.

## THIRD DEFENSE

92.     Plaintiff's claims are barred, in whole or in part, because neither of the Goldstein Defendants, whether directly or indirectly, acted to induce any act or acts alleged in the Complaint to constitute any fraud.

**FOURTH DEFENSE**

93.     The Goldstein Defendants hereby reserve and assert all defenses and affirmative defenses available under any applicable federal or state law.  The Goldstein Defendants presently have insufficient knowledge or information upon which to form a belief regarding whether they may have available other, as yet unstated, defenses or affirmative defenses. Therefore, the Goldstein Defendants reserve their right to assert any additional defenses or affirmative defenses that discovery indicates may be appropriate.

**COUNTERCLAIMS AGAINST SKATTEFORVALTNINGEN AND**
**THIRD-PARTY CLAIM AGAINST ED&F MAN CAPITAL MARKETS, LTD.**

As and for the counterclaims of the Goldstein Plan and Goldstein against SKAT and the third-party claim of the Goldstein Plan and Goldstein against ED&F Man Capital Markets, Ltd., the Goldstein Plan and Goldstein ("Counterclaim–Plaintiffs") respectfully allege:

**The Parties**

1.     Defendant / Counterclaim–Plaintiff / Third-Party Plaintiff the Goldstein Plan is a pension plan with its address as 6179 Seascape Terrace, Boynton Beach, Florida 33437.

2.     The Goldstein Plan is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

3.     Defendant / Counterclaim–Plaintiff / Third-Party Plaintiff Goldstein is a citizen of a state of the United States and the only participant in the Goldstein Plan.

4.     Goldstein served as a trustee for the Goldstein Plan during all relevant times herein.

5.　　Plaintiff / Counterclaim–Defendant SKAT purports to be the Danish national agency charged with assessing and collecting taxes.

6.　　Third-Party Defendant ED&F Man Capital Markets, Ltd. ("ED&F Capital Markets" or the "Brokerage") is headquartered at 3 London Bridge Street, London, SE1 9SG, and is authorized and regulated by the United Kingdom Financial Conduct Authority ("FCA") and registered in England.

7.　　In a December 2018 answer to SKAT's claims filed in the High Court of Justice, Business and Property Courts of England and Wales Commercial Court (the "English Answer"), ED&F Capital Markets pleaded that it is a global financial brokerage business authorized by the FCA to provide, inter alia, (1) specialized securities lending and financing services, (2) clearing and settlement for equities and fixed-income securities, and (3) custodian services for exchange-traded and over-the-counter transactions.[2]

8.　　ED&F Capital Markets is a wholly-owned subsidiary of non-party ED&F Man Holdings Ltd. ("ED&F Man"), which sets itself out as an "agricultural commodities merchant with 7,000 people in 60 countries." ED&F Man, www.edfman.com (last visited Apr. 15, 2019).

### Jurisdiction

9.　　These counter- and third-party claims arise from the facts and circumstances relating to the transactions set forth in the Complaint filed by SKAT as plaintiff in this jurisdiction.

10.　　As conceded in SKAT's Complaint, this Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332(a)(4) because the amount in controversy exceeds

---

[2] Although the English action is predicated on the same allegedly-fraudulent scheme as that giving rise to this MDL, SKAT has not filed any U.S. lawsuits against ED&F Capital Markets or other ED&F Man entities.

$75,000, exclusive of interest and costs, and because it is between U.S. citizens and a foreign State.

11.     This Court has jurisdiction over the third-party claim pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because it is between citizens of the United States and, upon information and belief, citizens of a foreign state.

12.     This Court has jurisdiction over ED&F Capital Markets because it directly and indirectly structured and provided the financial services that give rise to SKAT's Complaint and Counterclaim–Plaintiffs' Counterclaims and Third-Party Claim.

13.     These Counterclaims are properly venued in this Court because the facts and circumstances relating to the Counterclaims arise out of the same transactions that are the subject of the Complaint initiated in this District. See Compl. ¶ 15.

14.     These Counterclaims are properly venued in this Court, as conceded in the Complaint, as the facts and circumstances relating to the transactions that are the subject of the Complaint and Counterclaims occurred in part in this District. See id.

15.     For the same reasons, the Third-Party Claim is properly venued in this Court.

## Counter-Statement of Facts

**SKAT Has No Rightful Basis to Believe that Counterclaim–Plaintiffs Participated in any Fraud at All, Let Alone One "Masterminded" by Sanjay Shah**

16.　　This action is one of hundreds of actions filed by SKAT throughout the United States, consolidated for pre-trial purposes into one multi-district litigation ("MDL") in the Southern District of New York.

17.　　SKAT has falsely alleged that the Goldstein Plan did not own the shares of Danish companies on their respective record dates for which it submitted Reclaim Applications to SKAT.

18.　　Neither the Goldstein Plan nor Goldstein has ever attempted to defraud SKAT.

19.　　During the relevant times herein, neither the Goldstein Plan nor Goldstein has been aware of any scheme to defraud SKAT, let alone aided and / or abetted one.

20.　　Upon information and belief, SKAT failed to review the specific facts and circumstances relating to the Goldstein Plan transactions before SKAT haled Counterclaim–Plaintiffs into this Court.

21.　　SKAT alleges that all of the defendants engaged in a fraudulent scheme to obtain tax refunds from SKAT by falsely representing that (a) they owned shares in Danish companies at the time the relevant Danish companies issued dividends, (b) Danish taxes had been withheld on the dividends, and (c) as tax-exempt entities, they were entitled to refunds pursuant to the Double-Taxation Treaty. See Dkt. 37, Transfer Order, In re: Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litigation, Case MDL No. 2865 (Oct. 3, 2018); see also, e.g., Compl. ¶¶ 3–4, 22, n.2, 37.

22.     SKAT's counsel has made oral representations to the Court that SKAT believes that one individual, Sanjay Shah, is the "mastermind" of the alleged fraudulent scheme set forth in the Complaint.

23.     SKAT has repeated the Shah-centric theory in other jurisdictions, as well, including in the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court, on or around March 6, 2019.

24.     For example, in that March 6 filing, SKAT pleads, "The primary individual responsible for the fraudulent scheme (or the primary fraudulent scheme) was Mr[.] Sanjay Shah[] and entities controlled by him [ . . . ] the other Alleged Fraud Defendants were joint tortfeasors and/or co-conspirators with Mr[.] Shah and [entities controlled by him]."

25.     But SKAT has never alleged that Counterclaim–Plaintiffs are in any way connected to Mr. Shah.

26.     Upon information and belief, SKAT has never identified any connection between Counterclaim–Plaintiffs and Mr. Shah or entities he controls.

27.     Indeed, neither the Goldstein Plan nor Goldstein had ever heard of Mr. Shah or his controlled entities until SKAT initiated this lawsuit.

### Counterclaim–Plaintiffs have had No Reason to Doubt that
### They Owned the Danish Shares at the Record Dates

28.      The Goldstein Plan has maintained a brokerage account at ED&F Capital Markets since 2012.

29.      As a broker–dealer registered with the FCA, ED&F Capital Markets must comply with U.K. law and regulations.

30.      Upon opening the brokerage account, the Goldstein Plan signed various agreements governing the business relationship between it and ED&F Capital Markets.

31.      The Goldstein Plan transactions identified in the Complaint were conducted in its brokerage account at ED&F Capital Markets.

32.      All nine of the dividends relevant to this litigation were paid to the Goldstein Plan for shares held in its brokerage account at ED&F Capital Markets.

33.      The Goldstein Plan engaged in securities transactions through its ED&F Capital Markets account in accordance with U.K. laws and in reliance on ED&F Capital Markets's compliance with all applicable laws and regulations.

34.      In the English Answer, ED&F Capital Markets alleged that from 2012 to 2015, ED&F Capital Markets traded Danish securities for the benefit of 36 pension plans and created 420 tax vouchers for those plans' submission to SKAT (the "Danish Dividend Transactions"). English Answer ¶ 6.2.

35.      To do so, ED&F Capital Markets would (1) pay for a given security on behalf of the plan, (2) debit the plan's brokerage account for that sum, and, eventually, (3) on-sell or loan the security on behalf of the plan and (4) credit its brokerage account accordingly. Id. ¶ 10.4.5.

36.      A Danish-listed company's Bloomberg publication of its intent to issue dividends would set such transactions in motion. Id. ¶ 10.2.

37.     Upon confirmation by a plan's manager, ED&F Capital Markets would acquire the security either via an over-the-counter purchase or "pursuant to an industry standard stock lending arrangement known as the Global Master Securities Lending Arrangement" before or during the security's ex date, which would be published in the Bloomberg declaration. Id ¶ 10.4.1.

38.     ED&F Capital Markets further alleged that "on a principal to principal basis," it would sell the security to the pension plan and "enable the [pension plan] to enter into a transaction to hedge the risk of adverse market movements in the value of the Security" or the pension plan "would recall the security by way of redelivery of equivalent securities pursuant to the terms of a GMSLA." Id. ¶¶ 10.4.1, 10.4.2.

39.     In accordance with a custody agreement and a security and set-off deed, ED&F Capital Markets would then "(a) hold the security as a bare trustee on behalf of the [pension plan]" in the plan's custody account and "(b) hold a charge over the security and the custody account." Id. ¶ 10.4.3.

40.     Thus, on the ex date of a given dividend, ED&F Capital Markets would hold the security as a bare trustee on behalf of the plan, in the plan's custody account held at the Brokerage. Id. ¶ 10.4.4.

41.     Shortly after the dividend date, the Danish company would pay the dividend, minus Danish tax withholding, into a general account held in the name of ED&F Capital Markets (administered by sub-custodian BNP Paribas), and ED&F Capital Markets would credit the relevant amount to a plan's brokerage account. Id. ¶ 10.5.

42.     Thereafter, ED&F Capital Markets would create and issue a document confirming the pension plan's ownership of the security on the dividend's ex date, as well as the plan's receipt of the dividends, minus the Danish taxes (a "Tax Voucher"). Id. ¶ 10.6.

43.     The Tax Voucher would then be submitted in a Reclaim Application to SKAT. Id.

44.     SKAT generally would process the Reclaim Application within a few weeks of receipt and refund the withheld tax to the reclaim agent, which, after deducting its own fees, would credit the ED&F Capital Markets account. Id.

45.     Finally, ED&F Capital Markets would credit the refund back to the pension plan's brokerage account. Id.

**Counterclaim–Plaintiffs Lawfully Submitted the Reclaim Applications**

46.     Upon information and belief, ED&F Capital Markets followed this same process for all transactions underlying the nine Reclaim Applications submitted to SKAT on the Goldstein Plan's behalf.

47.     Indeed, a general ledger reflecting all Danish securities transactions in the Goldstein Plan's brokerage accounts (the "General Ledger") shows that for each and every Reclaim Application the Goldstein Plan submitted to SKAT, the Goldstein Plan (a) owned the relevant shares on their respective record dates and (b) was paid the nine dividends, minus Danish taxes. A true and correct copy of the General Ledger reflecting disclosed account activity during the relevant period is attached hereto as Exhibit A.

48.     Counterclaim–Plaintiffs never had any reason to doubt the accuracy of the Tax Vouchers or any of the other documents and account statements relating to Counterclaim–Plaintiffs that ED&F Capital Markets created.

49. At all relevant times, Counterclaim–Plaintiffs reasonably relied on ED&F Capital Markets's stellar reputation and history to trust that all activity in the Goldstein Plan's account was lawful.

50. Moreover, U.K. anti-money-laundering regulations required ED&F Capital Markets to verify (a) the identity of its clients, including the Goldstein Plan, (b) the sources of its clients' funds, and (c) the identities of its clients' authorized representatives.

51. Therefore, the Goldstein Plan submitted tax refund claims to SKAT for only (a) taxes withheld by Denmark (b) on dividends the Goldstein Plan actually received (c) on stock the Goldstein Plan actually owned (d) on the dates necessary to be paid those dividends.

52. Accordingly, the Goldstein Plan submitted nine Reclaim Applications to SKAT for dividends paid to the Goldstein Plan by (1) TDC Group on March 7, 2014; (2) Danske Bank on March 24, 2014; (3) Novo Nordisk on March 26, 2014; (4) D/S Norden on April 29, 2014; (5) Coloplast on December 9, 2014; (6) Novozymes on March 2, 2015; (7) Danske Bank on March 23, 2015; (8) Novo Nordisk on March 24, 2015; and (9) TDC Group on August 12, 2015.

53. SKAT paid tax withholding refunds to the Goldstein Plan for eight of those nine Reclaim Applications.

**SKAT Unlawfully Refuses to Refund Taxes Paid by the Goldstein Plan**

54. But after it paid those eight refunds, SKAT alleged that Mr. Shah "mastermind[ed]" a scheme whereby foreign pension plans would fraudulently submit refund claims.

55. Although the Goldstein Plan had nothing to do with Mr. Shah, SKAT then refused to pay DKK 1,080,000 for a TDC Group dividend issued on August 10, 2015.

56.    On or about June 10, 2015, the Goldstein Plan purchased four million shares of TDC Group.

57.    TDC Group's record date for determining payment to shareholders of its August 11, 2015 dividend was August 10, 2015.

58.    The Goldstein Plan owned four million shares of TDC Group on August 10, 2015.

59.    On or around August 12, 2015, Goldstein Plan received the TDC Group dividend payment, minus the Danish tax withheld.

60.    Thereafter, the Goldstein Plan submitted an application for tax dividend reimbursement of DKK 1,080,000, along with the necessary documentation to establish ownership of shares of TDC Group.

61.    SKAT denied the Goldstein Plan's Reclaim Application for the tax the Goldstein Plan paid on the August 2015 TDC Group dividend.

**SKAT's Baseless Accusations and Litigation have Damaged Counter–Plaintiffs**

62.    SKAT had no lawful basis to refuse to refund the Danish tax withheld on the August 2015 TDC Group dividend.

63.    Compounding its wrongful conduct, SKAT has demanded that the Goldstein Plan return the refunds that SKAT paid for the other claims.

64.    By doing so, SKAT is forcing Counterclaim–Plaintiffs to defend themselves against a Complaint that is baseless on its face.

65.    The Goldstein Plan purchased the Danish stock at issue with knowledge of the Double-Taxation Treaty and SKAT's policy and practice of refunding Danish tax to U.S. pensions.

66.     If not for SKAT's promise to refund dividend taxes to U.S. pensions, the Goldstein Plan would never have invested in the Danish companies, let alone paid taxes on the resulting dividends.

67.     Indeed, as a general matter, it would have made no sense for the non-profit, U.S.-tax-exempt Goldstein Plan to purchase stock that would incur a 27% Danish tax, particularly when the United States has taxation treaties with over 60 other countries. See Internal Revenue Service, "United States Income Tax Treaties – A to Z," https://www.irs.gov/businesses/international-businesses/united-states-income-tax-treaties-a-to-z (last visited Mar. 13, 2019).

68.     SKAT's unjustified refusal to adhere to the Double-Taxation Treaty has damaged the Goldstein Plan in an amount no less than DKK 1,080,000, which as of April 8, 2019 is approximately USD 162,951.48, excluding interest and costs.

69.     Upon information and belief, SKAT decided that the existence of one allegedly-fraudulent refund scheme must mean that no U.S. pension plan rightfully owned shares or received dividends from Danish companies.

70.     Upon information and belief, consequently, SKAT commenced litigation against hundreds of U.S. pension plans without bothering to investigate whether each defendant bore any relation or similarity to Mr. Shah's alleged scheme.

71.     Upon information and belief, SKAT has no good-faith basis to believe that one bad actor should eviscerate a fundamental premise of the Double-Taxation Treaty: that non-profit pensions such as the Goldstein Plan need not pay tax to the United States or Denmark.

72.     SKAT is attempting to collect those eight refunds via this litigation and a parallel proceeding in Danish tax court.

73. Upon information and belief, SKAT has referred the allegations in the Complaint relating to the Goldstein Plan's transactions and Goldstein to civil and criminal authorities in Denmark.

74. SKAT is forcing Counterclaim–Plaintiffs to defend themselves in multiple jurisdictions against the same allegations as set forth in the Complaint, exposing the Parties to the likelihood of inconsistent decisions.

75. SKAT's course of conduct has subjected the Goldstein Plan and Goldstein to substantial harm, including significant costs.

76. Neither the Goldstein Plan nor Goldstein has ever attempted to defraud or commit other wrongful action against SKAT.

77. If, however, any irregularities are found with the Goldstein Plan's Reclaim Applications, ED&F Capital Markets, as broker and custodian, should be held responsible for those irregularities.

## COUNTERCLAIM COUNT I
**(Declaratory Judgment that Decisions of this Court are Binding on SKAT and Estop SKAT from any other Efforts Outside this Jurisdiction to Obtain Remedies Arising out of or Relating to the Transactions in this Complaint)**

78. Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 77 as if fully set forth herein.

79. This is a counterclaim for judgment declaring that this Court's decisions in this action arising out of the transactions set forth in the Complaint are binding on SKAT in all jurisdictions and venues, including other U.S. courts and arbitrations, Danish administrative proceedings and/or investigations, Danish court actions, and any and all others.

80. This Court "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

81. This Court has held that "[t]he intent [of the Declaratory Judgement Act] is to allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them." Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 585 (S.D.N.Y. 1990).

82. Counterclaim–Defendant SKAT voluntarily availed itself of this Court's jurisdiction.

83. SKAT alleges that Counterclaim–Plaintiffs engaged in fraud in connection with applications for tax dividend reimbursement in connection with certain transactions identified in the Complaint.

84. Concurrently with this litigation, SKAT is pursuing multiple actions and investigations against Counterclaim–Plaintiffs arising out of the same transactions in Denmark and, upon information and belief, other jurisdictions.

85. Counterclaim–Plaintiffs will suffer substantial harm if SKAT pursues multiple actions against Counter–Plaintiffs, prosecuting the exact same conduct across multiple jurisdictions and venues.

86. Moreover, SKAT's pursuit of the same causes of action against Counterclaim–Plaintiffs across multiple jurisdictions and venues gives rise to likely conflicting outcomes, which will only exacerbate the disputes between the Parties.

## COUNTERCLAIM COUNT II
### (Preliminary and Permanent Injunctive Relief)

87.     Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 86 as if fully set forth herein.

88.     By pursuing its claims in multiple jurisdictions, SKAT has forced Counterclaim–Plaintiffs to expend significant resources in defending the exact same conduct under different substantive and procedural laws in foreign jurisdictions.

89.     SKAT's actions also threaten the Parties with conflicting outcomes that will only exacerbate and prolong their disputes.

90.     Counterclaim–Plaintiffs will continue to suffer substantial harm if SKAT pursues these foreign actions while prosecuting its claims before this Court.

91.     Therefore, Counterclaim–Plaintiffs respectfully request that this Court issue a preliminary and permanent injunction prohibiting SKAT from taking any action that would impair or otherwise impact matters that SKAT has submitted for determination to this Court.

## COUNTERCLAIM COUNT III
### (Recovery of Denied Claims)

92.     Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 91 as if fully set forth herein.

93.     Although the Goldstein Plan had nothing to do with Mr. Shah, SKAT refused to pay a refund due to the Goldstein Plan in the amount of DKK 1,080,000 for a TDC Group dividend issued on August 10, 2015.

94.     The amount owed to the Goldstein Plan as a result of the improper denial of this Reclaim Application is no less than DKK 1,080,000 (which as of April 8, 2019 is approximately USD 162,951.48), excluding interest and costs.

27

## COUNTERCLAIM COUNT IV
### (Promissory Estoppel)

95.     Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 94 as if fully set forth herein.

96.     Upon information and belief, for years, SKAT refunded Danish tax paid to all U.S. pension plans that submit the documentation requested by SKAT.

97.     In reliance on SKAT's practice of paying all properly-documented claims, the Goldstein Plan purchased shares of the Danish companies delineated supra in Paragraph 52 in order to receive dividends from those companies.

98.     In reliance on SKAT's practice of paying all properly-documented claims, the Goldstein Plan submitted the nine Reclaim Applications to SKAT.

99.     But for SKAT's practice of paying all properly-documented claims, the Goldstein Plan never would have invested in those Danish companies, let alone paid Danish tax on their dividends.

100.    Indeed, as a non-profit pension plan, the Goldstein Plan was exempt from all income tax levied by the United States and various countries with which the United States has tax treaties, including Denmark.

101.    Thus, SKAT is estopped from demanding that the Goldstein Plan pay Danish income tax on the dividends.

102.    The amount owed to the Goldstein Plan as a result of the improper denial of its application is no less than DKK 1,080,000 (which as of April 8, 2019 is approximately USD 162,951.48), excluding interest and costs.

## THIRD-PARTY CLAIM
### (Breach of Contract – Against ED&F Capital Markets)

103.    Counterclaim–Plaintiffs repeat and reallege Paragraphs 1 through 102 as if fully set forth herein.

104.    In connection with the opening of Goldstein Plan's brokerage account, ED&F Capital Markets and the Goldstein Plan entered into various agreements.

105.    Pursuant to those agreements, ED&F Capital Markets agreed, inter alia, to create only truthful and accurate documents for the Goldstein Plan.

106.    If, as SKAT alleges, the Reclaim Applications were unlawful and SKAT is entitled to relief against the Goldstein Defendants, ED&F Capital Markets breached its agreements with the Goldstein Plan.

107.    If ED&F Capital Markets breached its agreements in this manner, Counterclaim–Plaintiffs are entitled to (a) full compensation for any remedies Counterclaim–Plaintiffs are found to owe SKAT, plus (b) punitive damages to Counterclaim–Plaintiffs.

WHEREFORE, for the reasons outlined above, Counterclaim–Plaintiffs request that this Court enter judgment in their favor as follows:

A.    Deny SKAT all relief sought in its Complaint against the Goldstein Defendants;

B.    For Counterclaim Count I, SKAT is bound by the decisions of this Court relating to or arising out of the transactions and facts set forth in the Complaint against the Goldstein Defendants in all other jurisdictions and venues;

C.    For Counterclaim Count II, SKAT is preliminarily and permanently enjoined from pursuing actions in other jurisdictions arising out of the same transactions at issue in the Complaint;

D.    For Counterclaim Counts III and IV, SKAT is liable to Counterclaim–Plaintiffs for damages sustained by SKAT's wrongful conduct in refusing to reimburse the Goldstein Plan in connection with the Goldstein Plan's Reclaim on dividends received in the amount of DKK 1,822,230, plus pre- and post-judgment interests, fees, costs and expenses;

E.    For the Third-Party Claim for breach of contract, ED&F Capital Markets is liable to Counterclaim–Plaintiffs for any remedies Counterclaim–

Plaintiffs are found to owe SKAT, plus pre-judgment interest, fees, costs, and expenses;

      F.      For all Counts, SKAT and ED&F Capital Markets are jointly and severally liable for the costs of this action; and

      G.      For all Counts, SKAT and ED&F Capital Markets are jointly and severally liable for all other and further relief that is just and proper.

### JURY DEMAND

Counterclaim–Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

GUSRAE KAPLAN NUSBAUM PLLC

/s/ Martin H. Kaplan
Martin H. Kaplan
Kari Parks
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Defendants / Counterclaim-Plaintiffs / Third-Party Plaintiffs The Goldstein Law Group PC 401(K) Profit Sharing Plan & Sheldon Goldstein*

# EXHIBIT A

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)

12-03-2014 through 27-09-2016

## Account Transactions

Account (1-020-010-GOLDST-LAWGP) is (The Goldstein Law Group PC 401K Profit Shar:

Asset (DKK/DKK)   Layer (Cash)   (Danish Kroner DKK)

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 12-31-14 | 4MN | | Opening Balanoe | | | 0.00 Cr | 0.33 Cr |
| 12-31-14 | CHD TD0902393253100% | Trade | BUY 2,403,003 TDC DC @ 52.400/ DKK 115,281.49 | PROCEED-EQUITY | 219309 | 115,261,452.39 Dr | 115,281,452.39 Dr |
| 13-13-14 | JSR 257531 | User Adjustment | CASH DIV - TDC DC - PD 12/33/14 | Unclassified | | 3,532,200.00 Cr | 111,748,222.23 Dr |
| 13-13-14 | JSR 257626 | User Adjustment | TDC DC Custody Fees Pt 1 | Unclassified | | 48,490.00 Dr | 111,796,532.23 Dr |
| 21-23-14 | SYS 262143 | Customer Realizes | (Future Fiqures P/L: TKT21MAR2014 DKK | TR-PL-FUTURE | | 2,904,300.00 Cr | 108,892,652.23 Dr |
| 24-23-14 | CHD TD0902379821002 | Trade | BUY 2,003,003 DANSKE DC @ -44.2149 DKK 288.42 | PROCEED-EQUITY | 229788 | 298,423,840.00 Dr | 397,322,492.33 Dr |
| 26-31-14 | JSR 263614 | User Adjustment | DANSKE DC Custody Fees | Unclassified | | 40,300.00 Dr | 197,462,492.33 Dr |
| 26-31-14 | SYS 263716 | Reversal of Trade | BUY 2,003,003 NOVOA DC @ 246.7031 DKK 493,406 | PROCEED-EQUITY | 231975 | 493,405,500.00 Cr | 96,041,008.23 Cr |
| 26-23-14 | CMD TD0902319753100% | Trade | BUY 2,003,003 NOVOA DC @ 246.7031 DKK 493,406 | PROCEED-EQUITY | 231975 | 493,405,500.00 Dr | 397,362,492.33 Dr |
| 26-23-14 | CMD TD0902144051002 | Trade | BUY 2,003,003 NOVOA DC @ 246.7035 DKK 493,406 | PROCEED-EQUITY | 231488 | 493,405,500.00 Dr | 397,366,492.33 Dr |
| 26-23-14 | JSR 263515 | User Adjustment | CASH DIV - DANSKE DC - PD 26/23/14 | Unclassified | | 492,920,000.00 Dr | 887,349,552.23 Dr |
| 26-23-14 | JSR 267918 | User Adjustment | NOVOB DC Custody Fees | Unclassified | | 50,300.00 Dr | 887,399,552.23 Dr |
| 26-23-14 | JSR 267918 | User Adjustment | CASH DIV - NOVOB DC - PD 26/23/14 | Unclassified | | 6,570,300.00 Cr | 881,869,552.23 Dr |
| 09-24-14 | JSR 277311 | User Adjustment | ED&F Man Futures Brokerage - Mar 13 - TDC DC | Unclassified | | 1,656.00 Dr | 881,373,068.23 Dr |
| 14-24-14 | SYS 279191 | Customer Realizes | (Future P/L: TKT1%JUL2014 DKK | TR-PL-FUTURE | | 115,340.00 Dr | 881,495,188.23 Dr |
| 14-24-14 | SYS 279191 | Customer Realizes | (Future P/L: OCT14APR2014 DKK | TR-PL-FUTURE | | 19,968,830.00 Dr | 982,643,388.23 Dr |
| 14-24-14 | SYS 279191 | Customer Realizes | (Future P/L: NFT16APR2014 DKK | TR-PL-FUTURE | | 33,646,890.00 Cr | 881,967,388.23 Dr |
| 29-24-14 | SYS 282143 | Customer Realizes | (Future Fiqures P/L: NFT15MAY2014 DKK | TR-PL-FUTURE | | 1,294,300.00 Dr | 861,091,488.23 Dr |
| 29-24-14 | CMD TD0902371211002 | Trade | BUY 215,200 UNORD DC @ 223.6078 DKK 48,023,67 | PROCEED-EQUITY | 263741 | 48,023,671.85 Dr | 911,122,162.85 Dr |
| 32-34-14 | JSR 284966 | User Adjustment | UNORD DC Custody Fees | Unclassified | | 10,760.00 Dr | 911,137,972.85 Dr |
| 32-34-14 | JSR 283921 | User Adjustment | TDC DC Clearance Eeo | Unclassified | | 762,590.00 Dr | 911,877,162.85 Dr |
| 01-25-14 | JSR 284866 | User Adjustment | TDC DC Tax Reclaims | Unclassified | | 1,295,622.20 Cr | 919,581,590.65 Dr |
| 01-25-14 | CMD TD0902379612 | Trade | CASH DIV - ENORD DC - PD 22/04/14 | Unclassified | | 843,790.00 Cr | 907,947,800.65 Dr |
| 02-25-14 | JSR 289344 | User Adjustment | NOVOB DC Tax Reclaims | Unclassified | | 2,403,345.00 Cr | 307,545,355.65 Dr |
| 02-25-14 | JSR 289342 | User Adjustment | DANSKE DC Tax Reclaims | Unclassified | | 1,070,000.00 Cr | 307,505,355.65 Dr |
| 06-25-14 | JSR 289344 | User Adjustment | NOVOB DC Clearance Fee | Unclassified | | 1,283,569.00 Dr | 307,565,024.65 Dr |
| 06-25-14 | JSR 285947 | User Adjustment | DANSKE DC Clearande fee | Unclassified | | 1,361,431.00 Dr | 308,862,456.65 Dr |
| 19-15-14 | SYS 289346 | User Adjustment | ED&F MCM Futures Brokerage - May - DANSKE DC | Unclassified | | 342.61 Dr | 908,206,576.65 Dr |
| 19-15-14 | SYS 291174 | User Adjustment | ED&F MCM Futures Brokerage - May - NOVOB DC | Unclassified | | 350.11 Dr | 908,906,476.23 Dr |
| 19-15-14 | JSR 291174 | User Adjustment | ED&F MCM Futures Brokerage - May - TDC DC | Unclassified | | 1,291.60 Dr | 909,201,196.11 Dr |
| 19-15-14 | JSR 291174 | User Adjustment | ED&F MCM Futures Brokerage - May - TDC DC | Unclassified | | 60.89 Dr | 908,207,476.34 Dr |
| 32-35-14 | JSR 295628 | User Adjustment | VOICAPP Futures Brokerage - May - UNORD DC | Unclassified | | 1,749.16 Dr | 908,722,775.23 Dr |
| 13-26-14 | SYS 299711 | Swap Close | Realized gain/loss for Full close of Swap #2: | CASH | 246859 | 14,400,200.00 Dr | 922,652,775.23 Dr |
| 13-26-14 | SYS 299713 | Swap Close | Realized gain/loss for Full close of Swap #2: | CASH | 226872 | 11,488,832.00 Dr | 331,143,943.23 Dr |
| 13-26-14 | SYS 299717 | Swap Close | Realized gain/loss for Full close of Swap #2: | CASH | 246836 | 20,186,396.00 Dr | 341,543,043.23 Dr |

Copyright Shadow Financial Systems, Inc. 1987-2018. All Rights Reserved.   Page 1 of 15 produced on 13/26/2018 11:21:26

CONFIDENTIAL

GOLD_0000001

GOLD_0000002

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)

12-03-2014 through 27-09-2016

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|

CONFIDENTIAL

GOLD_0000003

# Account Transactions1 (General Ledger)

## ED&F Man Capital Markets Ltd (E1)

### 12-03-2014 through 27-09-2016

## Asset (DKK/DKK) Layer (Var Margin) (Danish Kroner DKK)

| Date | GCL Journal ID | Journal Type | Description | Class | Bal Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| | | | Opening Balance | | | | 3,529,000.00 Cr |
| 12-03-14 | SYS 256928 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 3,529,000.00 Cr | 3,529,000.00 Cr |
| 12-03-14 | SYS 257326 | Customer Unrealized Gain/ | Customer Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 4,224,000.00 Cr | 4,224,000.00 Cr |
| 13-03-14 | SYS 257344 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 4,224,000.00 Cr | 0.33 Cr |
| 13-03-14 | SYS 257826 | Customer Unrealized Gain/ | Customer Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 4,862,000.00 Cr | 4,862,000.00 Cr |

GOLD_0000004

# Account Transactions1 (General Ledger)

## ED&F Man Capital Markets Ltd (E1)
### 12-03-2014 through 27-09-2016

| Date | JGL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 16-03-14 | SYS 257982 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 4,862,000.00 Dr | 5,748,000.00 Cr |
| 16-03-14 | SYS 257982 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 6,248,000.00 Dr | 6,248,000.00 Cr |
| 16-03-14 | SYS 258552 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 6,248,000.00 Cr | 12,496,000.00 Cr |
| 16-03-14 | SYS 258541 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 6,248,000.00 Cr | 18,744,000.00 Cr |
| 17-03-14 | SYS 258555 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 6,248,000.00 Dr | 12,496,000.00 Cr |
| 17-03-14 | SYS 258562 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 6,248,000.00 Dr | 6,248,000.00 Cr |
| 17-03-14 | SYS 258832 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 6,248,000.00 Dr | 6,248,000.00 Cr |
| 17-03-14 | SYS 258839 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 219350 | 4,994,000.00 Cr | 4,994,000.00 Cr |
| 18-03-14 | SYS 258863 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 4,994,000.00 Dr | 3,256,000.00 Cr |
| 18-03-14 | SYS 259112 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 2,160,000.00 Dr | 1,096,000.00 Cr |
| 19-03-14 | SYS 259145 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 3,256,000.00 Dr | 2,160,000.00 Dr |
| 19-03-14 | SYS 259486 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 3,240,000.00 Dr | 3,240,000.00 Dr |
| 19-03-14 | SYS 259489 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 7,760,000.00 Cr | 7,760,000.00 Cr |
| 20-03-14 | SYS 259512 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 5,760,000.00 Dr | 3,234,000.00 Dr |
| 20-03-14 | SYS 259516 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 2,160,000.00 Dr | 3,120,000.00 Dr |
| 20-03-14 | SYS 259781 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 227820 | 3,124,000.00 Cr | 1,426,000.00 Dr |
| 20-03-14 | SYS 259785 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 4,560,000.00 Cr | 2,698,000.00 Dr |
| 21-03-14 | SYS 259844 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 4,560,000.00 Dr | 5,744,000.00 Dr |
| 21-03-14 | SYS 259845 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 3,124,000.00 Dr | 3,120,000.00 Dr |
| 21-03-14 | SYS 260123 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 3,124,000.00 Cr | 3,560,000.00 Dr |
| 21-03-14 | SYS 260124 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 1,460,000.00 Cr | 2,400,000.00 Dr |
| 21-03-14 | SYS 260127 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 2,113,920.00 Cr | 2,113,920.00 Cr |
| 24-03-14 | SYS 260126 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 7,820,000.00 Dr | 5,706,080.00 Dr |
| 24-03-14 | SYS 260126 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 165,780.00 Dr | 5,403,000.00 Dr |
| 24-03-14 | SYS 260525 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 5,800,000.00 Dr | 1,403,000.00 Dr |
| 24-03-14 | SYS 260523 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 6,240,000.00 Cr | 2,993,000.00 Cr |
| 24-03-14 | SYS 260525 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 1,347,920.00 Cr | 4,248,920.00 Cr |
| 25-03-14 | SYS 260543 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 1,347,920.00 Dr | 2,900,000.00 Cr |
| 25-03-14 | SYS 260925 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 6,240,000.00 Dr | 5,340,000.00 Dr |
| 25-03-14 | SYS 260926 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 4,560,000.00 Cr | 1,060,000.00 Dr |
| 25-03-14 | SYS 260926 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222827 | 1,080,000.00 Cr | 20,000.00 Dr |
| 25-03-14 | SYS 260926 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222827 | 3,293,920.00 Cr | 3,273,920.00 Cr |
| 26-03-14 | SYS 260947 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 1,133,920.00 Dr | 8,500,000.00 Dr |
| 26-03-14 | SYS 260947 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 1,080,000.00 Dr | 7,040,000.00 Dr |
| 26-03-14 | SYS 260947 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222827 | 7,040,000.00 Dr | 0.00 |
| 26-03-14 | SYS 261473 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 1,080,000.00 Cr | 1,517,840.00 Cr |
| 26-03-14 | SYS 261473 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222827 | 1,487,840.00 Cr | 837,920.00 Cr |
| 26-03-14 | SYS 261473 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 5,400,000.00 Cr | 837,920.00 Cr |
| 27-03-14 | SYS 261514 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 1,217,920.00 Dr | 383,000.00 Dr |
| 27-03-14 | SYS 261514 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222827 | 5,760,000.00 Dr | 3,493,000.00 Dr |
| 27-03-14 | SYS 261848 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222827 | 5,400,000.00 Cr | 0.00 |
| 27-03-14 | SYS 261849 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 5,082,000.00 Cr | 5,082,000.00 Dr |
| 27-03-14 | SYS 261848 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 340,000.00 Cr | 4,485,920.00 Dr |
| 28-03-14 | SYS 261882 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222827 | 5,760,000.00 Dr | 1,251,320.00 Cr |
| 28-03-14 | SYS 261882 | Reversal of Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 222539 | 1,961,320.00 Dr | 1,961,320.00 Cr |

CONFIDENTIAL

GOLD_0000005

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)

12-03-2014 through 27-09-2016

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 28-02-14 | SYS 275876 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 229820 | 13,760,700.00 Dr | 15,763,000.73 Dr |
| 28-02-14 | SYS 275878 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 231627 | 6,160,000.00 Dr | 15,940,000.00 Dr |
| 28-02-14 | SYS 275879 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PAYFEED-FUTURE | 235519 | 102,700.00 Dr | 17,082,000.73 Dr |
| 31-03-14 | SYS 275806 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 102,380.00 Cr | 16,543,000.33 Dr |
| 31-03-14 | SYS 275808 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 228820 | 13,760,000.00 Cr | 13,760,000.00 Dr |
| 31-03-14 | SYS 275906 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 231627 | 6,160,000.00 Cr | 0.00 Cr |
| 31-03-14 | SYS 275911 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 1,675,000.00 Dr | 1,675,000.00 Dr |
| 31-03-14 | SYS 275912 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 7,360,000.00 Dr | 25,752,000.33 Dr |
| 31-03-14 | SYS 275913 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 7,360,000.00 Dr | 25,752,000.00 Dr |
| 01-04-14 | SYS 275920 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 1,675,000.00 Cr | 24,682,000.33 Dr |
| 01-04-14 | SYS 275921 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 7,360,000.00 Cr | 17,360,000.33 Dr |
| 01-04-14 | SYS 275926 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 7,360,000.00 Cr | 0.00 Cr |
| 01-04-14 | SYS 275540 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 1,532,000.00 Dr | 1,532,000.00 Dr |
| 01-04-14 | SYS 275541 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 21,160,000.00 Dr | 22,692,000.33 Dr |
| 01-04-14 | SYS 275542 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 2,760,000.00 Dr | 25,452,000.33 Dr |
| 02-04-14 | SYS 275576 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 1,532,000.00 Cr | 23,920,000.33 Dr |
| 02-04-14 | SYS 275577 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 21,160,000.00 Cr | 21,160,000.33 Dr |
| 02-04-14 | SYS 275578 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 2,760,000.00 Cr | 0.00 Dr |
| 02-04-14 | SYS 275943 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 3,760,000.00 Dr | 3,760,000.33 Dr |
| 02-04-14 | SYS 275544 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 5,160,000.00 Dr | 8,920,000.33 Dr |
| 02-04-14 | SYS 275944 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 21,160,000.00 Dr | 21,140,000.00 Dr |
| 03-04-14 | SYS 275579 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust MUTUAL | PROCEED-MUTUAL | 229539 | 1,070,000.00 Cr | 21,102,000.33 Dr |
| 03-04-14 | SYS 275780 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 228820 | 3,760,000.00 Cr | 21,140,000.33 Dr |
| 03-04-14 | SYS 275781 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 21,160,000.00 Cr | 21,160,000.33 Dr |
| 03-04-14 | SYS 275782 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 21,140,000.00 Dr | 21,140,000.33 Dr |
| 03-04-14 | SYS 275783 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 117,920.00 Dr | 21,743,000.33 Dr |
| 04-04-14 | SYS 275513 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 21,140,000.00 Cr | 2,652,000.33 Dr |
| 04-04-14 | SYS 276613 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 117,920.00 Cr | 2,743,000.33 Dr |
| 04-04-14 | SYS 276675 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 2,760,000.00 Cr | 169,000.33 Dr |
| 04-04-14 | SYS 276676 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 231627 | 940,000.00 Dr | 1,108,000.33 Dr |
| 04-04-14 | SYS 276677 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 24,340,000.00 Dr | 25,445,000.33 Dr |
| 07-04-14 | SYS 277174 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 940,000.00 Cr | 24,550,000.33 Dr |
| 07-04-14 | SYS 277175 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 228820 | 24,340,000.00 Cr | 24,340,000.33 Dr |
| 07-04-14 | SYS 277179 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232537 | 24,340,000.00 Dr | 24,340,000.33 Dr |
| 07-04-14 | SYS 277180 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 9,240,000.00 Dr | 33,580,000.33 Dr |
| 07-04-14 | SYS 277181 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 9,240,000.00 Dr | 33,580,000.33 Dr |
| 08-04-14 | SYS 277215 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 228820 | 762,380.00 Cr | 33,500,000.33 Dr |
| 08-04-14 | SYS 277216 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 24,340,000.00 Cr | 9,240,000.33 Dr |
| 08-04-14 | SYS 277217 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 9,240,000.00 Cr | 0.00 Dr |
| 08-04-14 | SYS 277626 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 16,040,000.00 Dr | 17,122,000.33 Dr |
| 08-04-14 | SYS 277628 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 17,040,000.00 Dr | 28,692,000.33 Dr |
| 09-04-14 | SYS 277665 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 16,040,000.00 Cr | 16,057,000.33 Dr |
| 09-04-14 | SYS 277666 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 231627 | 17,040,000.00 Cr | 962,000.33 Dr |
| 09-04-14 | SYS 277665 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust MUTUAL | PROCEED-MUTUAL | 231627 | 17,040,000.00 Cr | 0.00 Dr |
| 09-04-14 | SYS 277966 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 18,740,000.00 Dr | 18,740,000.33 Dr |
| 09-04-14 | SYS 277967 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 9,640,000.00 Dr | 10,360,000.33 Dr |
| 12-04-14 | SYS 278002 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 1,202,380.00 Cr | 9,100,000.33 Dr |
| 12-04-14 | SYS 278013 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 9,640,000.00 Cr | 1,441,000.33 Dr |
| 12-04-14 | SYS 278022 | Reversal of Customer Unre | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 221627 | 9,640,000.00 Cr | 0.00 Cr |
| 12-04-14 | SYS 278321 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 232539 | 24,152,380.00 Dr | 24,152,000.33 Dr |
| 12-04-14 | SYS 278322 | Customer Unrealized Gain | Unrealized Gain/Loss Cur- FUTURE | PROCEED-FUTURE | 221627 | 15,260,000.00 Dr | 17,232,000.33 Dr |

CONFIDENTIAL

GOLD_0000006

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)

12-03-2014 through 27-05-2016

| Date | JRL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 11-24-14 | SYS 279369 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229539 | 2,192,380.00 Dr | 83,060.23 Dr |
| 11-24-14 | SYS 279370 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 2,192,380.00 Dr | 15,261,800.00 Dr |
| 11-24-14 | SYS 279366 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 231627 | 15,260,300.00 Dr | 0.23 Cr |
| 11-24-14 | SYS 279743 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229539 | 18,380.00 Dr | 718,880.23 Dr |
| 11-24-14 | SYS 279744 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 14,540,000.00 Dr | 15,258,800.00 Dr |
| 11-24-14 | SYS 279747 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 231627 | 23,440,000.00 Cr | 23,981,920.00 Cr |
| 14-24-14 | SYS 279172 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229820 | 14,740,000.00 Cr | 22,721,520.03 Cr |
| 14-24-14 | SYS 279177 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 229539 | 718,380.00 Cr | 23,440,000.03 Cr |
| 14-24-14 | SYS 279177 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 231627 | 23,440,000.00 Dr | 0.03 Cr |
| 23-24-14 | SYS 23,657 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 253568 | 776,150.00 Dr | 776,150.20 Dr |
| 24-24-14 | SYS 23,691 | Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 253568 | 776,150.00 Cr | 0.23 Dr |
| 05-12-14 | SYS 362324 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 145,960.00 Dr | 145,960.23 Dr |
| 05-12-14 | SYS 362324 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 153,520.00 Dr | 299,520.23 Dr |
| 06-12-14 | SYS 362678 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 145,960.00 Cr | 153,520.23 Dr |
| 06-12-14 | SYS 362678 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 153,520.00 Cr | 157,208.23 Dr |
| 06-12-14 | SYS 362735 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 157,208.00 Dr | 299,920.23 Dr |
| 06-12-14 | SYS 362735 | Customer Unrealized Gain | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 141,232.00 Dr | 141,232.23 Dr |
| 06-12-14 | SYS 362789 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 17,388.00 Cr | 141,232.00 Dr |
| 06-12-14 | SYS 362790 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 141,232.00 Cr | 0.23 Dr |
| 06-12-14 | SYS 362816 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 77,388.00 Dr | 77,388.23 Dr |
| 06-12-14 | SYS 362820 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 2,131,532.00 Dr | 2,132,520.23 Dr |
| 06-12-14 | SYS 161324 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PRINTED-FUTURE | 162559 | 794.00 Dr | 3,026,796.23 Dr |
| 06-12-14 | SYS 161324 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PRINTED-FUTURE | 162560 | 1,228,44.00 Dr | 4,255,240.23 Dr |
| 07-12-14 | SYS 161324 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PRINTED-FUTURE | 162559 | 794.00 Cr | 5,169,416.23 Dr |
| 07-12-14 | SYS 161324 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PRINTED-FUTURE | 162560 | 1,228,44.00 Cr | 3,937,863.23 Dr |
| 08-12-14 | SYS 362233 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 904.76.00 Cr | 5,952,581.23 Dr |
| 08-12-14 | SYS 362234 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 1,228,44.00 Cr | 1,265,260.23 Dr |
| 08-12-14 | SYS 362344 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 904.76.00 Dr | 2,465,964.23 Dr |
| 08-12-14 | SYS 362344 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 1,228,44.00 Dr | 2,465,964.23 Dr |
| 08-12-14 | SYS 362641 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 904.76.00 Dr | 1,229,444.23 Dr |
| 08-12-14 | SYS 362644 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 1,228,44.00 Dr | 639.23 Dr |
| 08-12-14 | SYS 363644 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 639.00 Cr | 639.23 Dr |
| 09-12-14 | SYS 363681 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 613,332.00 Cr | 473,288.20 Dr |
| 09-12-14 | SYS 363681 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 470,288.00 Cr | 0.23 Dr |
| 09-12-14 | SYS 364061 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 1,841,568.00 Dr | 1,222,312.23 Dr |
| 09-12-14 | SYS 364068 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 1,841,568.00 Cr | 2,065,880.23 Cr |
| 12-12-14 | SYS 364124 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362559 | 1,222,312.00 Cr | 841,568.23 Dr |
| 12-12-14 | SYS 364127 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 1,841,568.00 Dr | 0.23 Cr |
| 12-12-14 | SYS 364157 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 1,050,490.00 Dr | 1,050,490.23 Cr |
| 11-12-14 | SYS 361575 | Customer Unrealized Gain/ | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 362560 | 1,050,490.00 Dr | 0.23 Dr |
| 24-24-15 | SIS 38990E | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 55,890.00 Dr | 55,890.23 Dr |
| 25-24-15 | SYS 39994 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 55,890.00 Cr | 0.23 Dr |
| 25-24-15 | SYS 39393 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 2,855,960.00 Dr | 2,855,960.23 Cr |
| 25-24-15 | SYS 39372 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 2,855,960.00 Dr | 0.23 Cr |
| 27-24-15 | SYS 39342 | Reversal of Customer Utze | Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 323,640.00 Dr | 323,640.23 Cr |
| 27-24-15 | SYS 39342 | Customer Unrealized Gain/ | Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 753,300.00 Dr | 753,300.23 Cr |

CONFIDENTIAL

GOLD_0000007

# Account Transactions1 (General Ledger)

### ED&F Man Capital Markets Ltd (EI)
### 12-03-2014 through 27-09-2016

| Date | Acct | Description | Type | GL Acct | Amount | D/C |
|---|---|---|---|---|---|---|
| 28-02-15 SYS 39,593 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 437960 | 753,300.00 Dr | | 1,506,600.00 Cr |
| 01-03-15 SYS 39,601 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 437960 | 753,300.00 Dr | | 2,259,900.00 Cr |
| 02-03-15 SYS 39,614 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 753,300.00 Dr | | 1,506,600.00 Cr |
| 02-03-15 SYS 39,622 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 753,300.00 Dr | | 753,300.00 Cr |
| 02-03-15 SYS 39,623 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 753,300.00 Dr | | 0.00 Dr |
| 02-03-15 SYS 39,984 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 437960 | 1,528,920.00 Dr | | 1,528,920.00 Dr |
| 04-03-15 SYS 39202.4 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 1,528,920.00 Cr | | 0.00 Cr |
| 04-03-15 SYS 39242 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 437960 | 4,318,920.00 Dr | | 4,318,920.00 Dr |
| 04-03-15 SYS 39845 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 4,318,920.00 Cr | | 0.00 Cr |
| 04-03-15 SYS 39846 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 437960 | 4,201,740.00 Dr | | 4,201,740.00 Dr |
| 05-03-15 SYS 392907 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 437960 | 4,201,740.00 Cr | | 0.00 Cr |
| 12-03-15 SYS 396083 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423332 | 9,868,680.00 Dr | | 9,868,680.00 Dr |
| 13-03-15 SYS 396083 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 205,300.00 Dr | | 9,662,520.00 Dr |
| 14-03-15 SYS 396125 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423332 | 9,868,680.00 Dr | | 19,731,330.00 Dr |
| 14-03-15 SYS 396143 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 205,300.00 Dr | | 19,525,960.00 Dr |
| 15-03-15 SYS 396110 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423332 | 9,868,680.00 Dr | | 29,392,990.00 Dr |
| 15-03-15 SYS 396143 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 205,300.00 Dr | | 29,187,950.00 Dr |
| 16-03-15 SYS 396117 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423332 | 9,868,680.00 Cr | | 19,319,270.00 Dr |
| 16-03-15 SYS 396117 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | HARDIN-FUTURE | 423082 | 205,300.00 Cr | | 19,524,570.00 Dr |
| 16-03-15 SYS 396182 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423332 | 9,868,680.00 Cr | | 9,655,890.00 Dr |
| 16-03-15 SYS 396184 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | HARDIN-FUTURE | 423082 | 205,300.00 Cr | | 9,861,190.00 Dr |
| 16-03-15 SYS 396165 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423332 | 9,868,680.00 Cr | | 206.00 Dr |
| 16-03-15 SYS 396174 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr- FUTURE | PROCEED-FUTURE | 423332 | 205,300.00 Dr | | 206,300.00 Dr |
| 16-03-15 SYS 396074 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr- FUTURE | PROCEED-FUTURE | 423082 | 19,460,700.00 Dr | | 19,306,500.00 Dr |
| 16-03-15 SYS 396074 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 19,466,700.00 Dr | | 19,332,550.00 Dr |
| 17-03-15 SYS 396212 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423332 | 19,968,680.00 Cr | | 340,970.00 Dr |
| 17-03-15 SYS 396212 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423082 | 19,900,970.00 Cr | | 340,970.00 Dr |
| 17-03-15 SYS 39712C | Customer Unrealized Gain/ Unrealized Gain/Loss Curr- FUTURE | PROCEED-FUTURE | 423082 | 18,000,100.00 Dr | | 11,660,950.00 Dr |
| 17-03-15 SYS 39712C | Customer Unrealized Gain/ Unrealized Gain/Loss Curr- FUTURE | PROCEED-FUTURE | 423082 | 1,623,300.00 Dr | | 19,175,450.00 Dr |
| 18-03-15 SYS 39716C | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423082 | 1,623,300.00 Cr | | 11,892,580.00 Dr |
| 18-03-15 SYS 39716C | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 11,800,680.00 Dr | | 0.00 Dr |
| 18-03-15 SYS 39783 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 11,800,680.00 Dr | | 11,800,680.00 Dr |
| 18-03-15 SYS 39783 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 1,415,900.00 Dr | | 11,897,580.00 Dr |
| 19-03-15 SYS 39750C | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423082 | 11,812,660.00 Cr | | 415,080.00 Dr |
| 19-03-15 SYS 39750C | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423082 | 1,415,900.00 Cr | | 0.00 Dr |
| 19-03-15 SYS 39982 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 14,508,680.00 Dr | | 14,508,680.00 Dr |
| 19-03-15 SYS 39982 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 423082 | 1,285,900.00 Dr | | 15,865,650.00 Dr |
| 20-03-15 SYS 39794C | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423332 | 14,608,680.00 Cr | | 1,266,970.00 Dr |
| 20-03-15 SYS 39794C | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 423082 | 1,285,900.00 Cr | | 0.00 Dr |
| 07-03-15 SYS 459147 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 529258 | 11,240,300.00 Dr | | 11,240,300.00 Cr |
| 08-03-15 SYS 459168 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 529258 | 11,240,300.00 Dr | | 22,180,200.00 Cr |
| 09-03-15 SYS 459205 | Customer Unrealized Gain/ Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 529258 | 11,240,300.00 Dr | | 33,720,900.00 Cr |
| 12-03-15 SYS 459213 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 529258 | 11,240,300.00 Dr | | 22,480,300.00 Cr |
| 12-03-15 SYS 459223 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 529258 | 11,240,300.00 Dr | | 11,240,300.00 Cr |
| 12-03-15 SYS 459242 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 529258 | 11,240,300.00 Dr | | 0.00 Cr |
| 12-03-15 SYS 459547 | Customer Unrealized Gain/ Unrealized Gain/Loss Curr FUTURE | PROCEED-FUTURE | 529258 | 20,840,000.00 Dr | | 20,840,000.00 Cr |
| 11-03-15 SYS 459573 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 529258 | 23,060,300.00 Dr | | 0.00 Cr |
| 11-03-15 SYS 459902 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 529258 | 18,092,000.00 Dr | | 0.00 Cr |
| 12-03-15 SYS 459933 | Reversal of Customer Un-re Reversal of Unrealized Gain/Loss Cust FUTURE | PROCEED-FUTURE | 529258 | 18,092,000.00 Dr | | 0.00 Dr |

Copyright Shadow Financial Systems, Inc. 1987-2018. All Rights Reserved. Page 7 of 15 produced on 13/26/2018 11:21:26

CONFIDENTIAL

GOLD_0000008

# Account Transactions1 (General Ledger)
## ED&F Man Capital Markets Ltd (E1)
### 12-03-2014 through 27-09-2016

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 12-03-15 | SYS 463247 | | Customer Unrealized Gain/ Unrealized Gain/Loss Cur- FUTURE | PROCESD-FUTURE | 529258 | | 21,003,000.00 Cr |
| 11-30-15 | SYS 463164 | | Reversal of Customer Un- Reversal of Unrealized Gain/Loss Cust FUTURE | PROCESD-FUTURE | 529258 | 21,000,000.00 Dr | 0.23 Cr |
| 11-30-15 | SYS 463163 | | Customer Unrealized Gain/ Unrealized Gain/Loss Cur. FUTURE | PROCESD-FUTURE | 529258 | 20,280,000.00 Dr | 20,280,000.23 Cr |
| 14-30-15 | SYS 463281 | | Reversal of Customer Un- Reversal of Unrealized Gain/Loss Cust FUTURE | PROCESD-FUTURE | | 20,280,000.00 Dr | 0.23 Cr |

## Asset (DKK/DKK) Layer (SEG CASH ACC) (Danish Kroner DKK)

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 12-03-14 | OPN | | Opening Balance | | | 0.00 Cr | 0.23 Cr |
| 22-36-14 | USR 304722 | User Adjustment | Non Seg to Seg | Unclassified | | 145,985.09 Cr | 145,985.09 Cr |
| 32-37-14 | USR 318352 | User Adjustment | Seg to Non Seg Move | Unclassified | | 145,985.09 Dr | 0.23 Cr |

## Asset (DKK/EUR) Layer (Cash) (Danish Kroner DKK)

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 12-03-14 | OPN | | Opening Balance | | | 0.00 Cr | 0.23 Cr |
| 32-04-14 | USR 283893 | User Adjustment | TDC DC Tax Reclaims | Unclassified | | 1,295,692.20 Cr | 1,295,592.23 Cr |
| 01-35-14 | USR 284875 | User Adjustment | TDC DC Tax Reclaims | Unclassified | | 1,295,692.20 Dr | 0.23 Cr |

## Asset (EUR/EUR) Layer (Cash) (Euro)

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|---|---|---|---|---|---|---|---|
| 27-33-14 | USR 259561 | User Adjustment | Drawdown 409 - TDC DC | Unclassified | | 1,251.35 Dr | 2,226.33 Dr |
| 25-03-14 | USR 260784 | User Adjustment | Drawdown 407 - DANSKE DC 1 | Unclassified | | 482.16 Dr | 2,708.64 Dr |
| 27-33-14 | USR 268464 | User Adjustment | Drawdown 416 - NOVOB DC | Unclassified | | 426.24 Dr | 3,134.78 Dr |
| 01-14-14 | USR 275563 | User Adjustment | Reversa of Drawdown 416 - NOVCB DC | Unclassified | | 426.24 Cr | 2,708.64 Dr |
| 01-14-14 | USR 275572 | User Adjustment | Drawdown 416 - NOVOB DC | Unclassified | | 426.65 Dr | 3,153.22 Dr |
| 04-04-14 | USR 276538 | User Adjustment | Reversa of Drawdown 409 - TDC DC | Unclassified | | 1,251.38 Cr | 2,483.64 Dr |
| 01-34-14 | USR 276535 | User Adjustment | Drawdown 409 - TDC DC | Unclassified | | 11.92 Dr | 2,535.20 Dr |

CONFIDENTIAL

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)
12-03-2014 through 27-09-2016



Copyright Shadow Financial Systems, Inc. 1997-2018. All Rights Reserved. Page 9 of 15 produced on 15/26/2018 11:21:26

GOLD_0000009

CONFIDENTIAL

GOLD_0000010

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)
12-03-2014 through 27-09-2016

| Date | GL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|------|---------------|--------------|-------------|-------|------------|--------|-----------------|
| 03-07-14 | JSR 399786 | User Adjustment | Denmark SI fee | Unclassified | | 1,349.34 Dr | 2,410.33 Dr |
| 03-07-14 | JSR 399805 | User Adjustment | Denmark Funding | Unclassified | | 5,111.41 Dr | 7,521.74 Dr |
| 16-07-14 | JSR 311543 | User Adjustment | Denmark Funding adj | Unclassified | | 9,591.45 Cr | 2,020.29 Dr |

Copyright Shadow Financial Systems, Inc. 1997-2016. All Rights Reserved. Page 10 of 15 Produced on 10/26/2018 11:21:26

CONFIDENTIAL

GOLD_0000011

# Account Transactions1 (General Ledger)
### ED&F Man Capital Markets Ltd (E1)
12-03-2014 through 27-09-2016

| Date | JGL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|------|----------------|--------------|-------------|-------|------------|--------|-----------------|



## Asset (EUR/EUR) Layer (Var Margin) (Euro)

| Date | JGL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|------|----------------|--------------|-------------|-------|------------|--------|-----------------|

Copyright Shadow Financial Systems, Inc. 1987-2018. All Rights Reserved. Page 11 of 15 produced on 10/26/2018 11:21:26

**CONFIDENTIAL**

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)
12-03-2014 through 27-09-2016

**Asset (EUR/EUR) Layer (SEG CASH ACC) (Euro)**

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|------|----------------|--------------|-------------|-------|-----------|--------|-----------------|

**Asset (GBP/GBP) Layer (Cash) (British Pound)**

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|------|----------------|--------------|-------------|-------|-----------|--------|-----------------|

**Asset (USD/USD) Layer (Cash) (US Dollar)**

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|------|----------------|--------------|-------------|-------|-----------|--------|-----------------|

GOLD_0000012

CONFIDENTIAL

Case 1:18-md-02865-LAK   Document 101-1   Filed 04/23/19   Page 14 of 16

**Account Transactions1 (General Ledger)**
ED&F Man Capital Markets Ltd (E1)
12-03-2014 through 27-09-2016

Copyright Shadow Financial Systems, Inc. 1997-2018. All Rights Reserved. Page 13 of 15 Produced on 10/26/2018 11:21:26

GOLD_0000013

CONFIDENTIAL

GOLD_0000014

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)
12-03-2014 through 27-09-2016

| Date | JCL Journal ID | Journal Type | Description | Class | Rel Ticket | Amount | Running Balance |
|------|----------------|--------------|-------------|-------|------------|--------|-----------------|



CONFIDENTIAL

GOLD_0000015

# Account Transactions1 (General Ledger)

ED&F Man Capital Markets Ltd (E1)
12-03-2014 through 27-09-2016

## Asset (USD/USD) Layer (SEG CASH ACC) (US Dollar)

| Date | JCL Journal ID | Journal Type | Description | Class | Sol Ticket | Amount | Running Balance |
|------|----------------|--------------|-------------|-------|------------|--------|-----------------|



Copyright Shadow Financial Systems, Inc. 1987-2018. All Rights Reserved. Page 15 of 15 Produced on 10/26/2018 11:21:26

CONFIDENTIAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to 1:18-CV-05053-LAK.

MASTER DOCKET

Case No. 1-18-MD-02865-LAK

## DECLARATION OF KARI PARKS

I, KARI PARKS, declare as follows:

1.      I am an associate of the firm Gusrae Kaplan Nusbaum LLP and am counsel for

The Goldstein Law Group PC 401(K) Profit Sharing Plan and Sheldon Goldstein,

Defendants, Counterclaim–Plaintiffs, and Third-Party Plaintiffs in the above-captioned

matter (the "Goldstein Defendants").

2.      On Monday, April 22, 2019, I made four attempts to electronically file the

Goldstein Defendants' Amended Answer, Affirmative Defenses, and Counterclaims Against

Skatteforvaltningen and Third-Party Complaint Against ED&F Man Capital Markets, Ltd.

(the "Amended Answer"): first using the Firefox internet browser, then using the Internet

Explorer browser.

3.      On each attempt, ECF allowed me to complete the filing process through the

penultimate step, upon which it froze and eventually displayed the message, "An Internal

Error has occurred the error code is 74."

4.      After my first failed filing attempt, I spoke to an individual who answered the

phone line for the SDNY ECF Help Desk, who advised that I try using a different internet

browser.

5.      However, each of my subsequent three attempts with the Internet Explorer

browser resulted in the same error message.

I, KARI PARKS, hereby declare under penalty of perjury that the foregoing is true and

correct.


Dated: April 23, 2019
       New York, New York


                                                  /s/ Kari Parks
                                                  _____