**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION,

This document relates to 1:18-cv-05053-LAK

MASTER DOCKET

Case No. 1:18-md-02865-LAK

**THIRD-PARTY DEFENDANT ED&F MAN CAPITAL MARKETS, LTD.'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT PURSUANT TO RULE 12(b)(2) OR FOR *FORUM NON CONVENIENS* OR IN THE ALTERNATIVE TO STAY ALL PROCEEDINGS AGAINST IT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

    I.   The Relevant Agreements between ED&F Man and the Goldstein Plan ........................... 2

    II.  The Subject Transactions ........................................................................... 6

    III. The English Action and Claims Regarding Jurisdiction .................................. 6

ANALYSIS .................................................................................................................. 7

    I.   The Third-Party Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction ........................................................................ 7

        A. Standard for Motion to Dismiss for Lack of Personal Jurisdiction ............... 8

        B. Minimum Contacts ........................................................................... 9

            1. This Court Does Not Have General Jurisdiction Over ED&F Man Because It Is Neither Incorporated Nor Headquartered in New York. ......................... 11

            2. This Court Does Not Have Specific Jurisdiction Over ED&F Man Because Its Activities Were Not Directed at New York. ................................... 12

        C. The Reasonableness Inquiry ............................................................... 14

    II.  The Third-Party Complaint Should Alternatively Be Dismissed on *Forum Non Conveniens* Grounds ............................................................................... 18

        A. Plaintiff's forum choice ..................................................................... 19

        B. Whether an adequate alternative forum exists ........................................ 20

        C. The balance of public and private interests implicated in the choice of forum .......... 20

    III. Alternatively, the Court Should Grant a Stay of the Third-Party Claims Pending Resolution of the English Action ........................................................... 22

    CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800537 Ontario, Inc. v. World Imports U.S.A. Inc.*,
  145 F. Supp. 2d 288 (W.D.N.Y. 2001) ................................................................22

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
  956 F. Supp. 427 (S.D.N.Y. 1996) ......................................................................18

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
  480 U.S. 102 (1987)...............................................................................15, 16, 17, 18

*Bristol-Meyers Squibb Co. v. Superior Court of Cal.*,
  137 S Ct. 1773 (2017).........................................................................................14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).............................................................................................14

*Calder v. Jones*,
  465 U.S. 783 (1984).............................................................................................12

*Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*,
  770 F. Supp. 880 (S.D.N.Y. 1991) ......................................................................23

*Consol. Edison Co. of New York v. United States*,
  30 F. Supp. 2d 385 (S.D.N.Y. 1998).....................................................................22

*Contant v. Bank of Am. Corp.*,
  No. 17 CIV. 3139 (LGS), 2019 WL 2174233 (S.D.N.Y. May 17, 2019) ...............8, 9, 10, 11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................... passim

*E Television Networks, LLC v. Wish Factory Inc.*,
  No. 15-CV-1189 (DAB), 2016 WL 8136110 (S.D.N.Y. Mar. 11, 2016)...............17

*Evergreen Marine Corp. v. Welgrow Int'l Inc.*,
  954 F. Supp. 101 (S.D.N.Y. 1997) ......................................................................23

*Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*,
  368 F. Supp. 3d 681 (S.D.N.Y. 2019).....................................................................8

*Guerrini v. Amtel Corp.*,
  2016 WL 3548238 (2d Cir. June 27, 2016) .........................................................19

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)............................................................................18

*Hanson v. Denckla*,
   357 U.S. 235 (1958)............................................................................12

*In re Alcon S'holder Litig.*,
   719 F. Supp. 2d 263 (S.D.N.Y. 2010)....................................................21

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..............................................................................9

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001)..............................................................19, 21

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
   337 F. Supp. 3d 274 (S.D.N.Y. 2018)...................................................21

*Longo v. FlightSafety Int'l, Inc.*,
   1 F. Supp. 3d 63 (E.D.N.Y. 2014) ..................................................13, 19

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014).................................................................20

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d (2d Cir. 1996).............................................................15, 16, 18

*Patel v. Patel*,
   497 F.Supp. 2d 419 (E.D.N.Y. 2007) ...................................................14

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999)..............................................................................7

*Schwab v. Bank of America*,
   883 F.3d 68 (2d Cir. 2018)...................................................................12

*Sherwin-Williams Co. v. C.V.*,
   No. 14-CV-6227(RA), 2016 WL 354898 (S.D.N.Y. Jan. 28, 2016) ...............16, 17

*Tel. Sys. Int'l, Inc. v. Network Telecom PLC*,
   303 F. Supp. 2d 377 (S.D.N.Y. 2003)....................................................20

*Walden v. Fiore*,
   571 U.S. 277 (2014)........................................................................10, 12

*Walden v Fiore*,
   571 U.S. 286 ....................................................................................12

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)........................................................................................8, 9

*Wing Shing Prod. (BVI), Ltd. v. Simatelex Manufactory Co.*,
    479 F. Supp. 2d 388 (S.D.N.Y. 2007).......................................................10, 13, 14

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)...........................................................................................20

**Rules**

CPLR 302(a)(1) ...............................................................................................................10

CPLR § 302 ..............................................................................................................10, 13

Fed. R. Civ. P. 4(k)(1)(A) ...........................................................................................10

Fed. R. Civ. P. 12(b)(2)................................................................................1, 7, 8, 24

**Other Authorities**

Fifth and Fourteenth Amendments of the U.S. Constitution ...........................................8

Third-Party Defendant ED&F Man Capital Markets, Ltd. ("ED&F Man") respectfully submits this memorandum of law in support of its motion to dismiss the Third-Party Complaint of Defendants-Third-Party Plaintiffs Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein Plan") and Sheldon Goldstein ("Goldstein" and collectively with the Goldstein Plan, the "Goldstein Defendants") pursuant to the Federal Rules of Civil Procedure Rule 12(b)(2), or, alternatively, on *forum non conveniens* grounds or for a stay pending the resolution of a foreign action.

## PRELIMINARY STATEMENT

The Goldstein Defendants, seeking to bring ED&F Man as a third-party defendant into this already complex multi-district action, have attempted to assert a vague claim for breach of contract against a foreign corporation.

However, as more fully demonstrated below, the Third-Party Complaint fails to allege any basis for this Court to exercise its jurisdiction over ED&F Man. The contracts that are the subject of the purported breach of contract claim have no bearing on the underlying claims brought by SKAT, and are solely between ED&F Man and the Goldstein Plan. Moreover, these agreements were executed, delivered, and performed by ED&F Man exclusively in the United Kingdom; unequivocally select the laws of England to govern them; and clearly state that the courts of England are the most suitable forum for their enforcement. The Goldstein Defendants have failed to allege that ED&F Man has any contacts with the forum state, much less the sufficient minimum contacts required to assert the Court's jurisdiction over them in accordance with due process. Instead, the only basis they assert for this Court's jurisdiction is the underlying claims brought by SKAT against them voluntarily in this forum, which has jurisdiction over the Goldstein Defendants, but not over ED&F Man. For the reasons articulated in full below, the Court should dismiss the Third-Party claim for lack of personal jurisdiction over ED&F Man.

Moreover, the vague allegations in the Third-Party complaint appear to be derivative of the non-fraud claims SKAT has already brought against ED&F Man in proceedings in England. The proceedings in the English court are already well underway compared to the underlying multi-district proceedings. Accordingly, for the reasons stated herein, it would be burdensome, inefficient, a waste of judicial resources, and a strain on international comity risking inconsistent outcomes to allow the Third-Party claims to proceed in this action, and the Court should in the alternative dismiss the Third-Party Complaint on the grounds of *forum non conveniens*. Finally, for these reasons and those more fully stated below, the Court should alternatively stay the Third-Party Complaint pending the resolution of the proceedings in the United Kingdom.

## STATEMENT OF FACTS

The Goldstein Defendants' relevant allegations pertaining to ED&F Man in the Amended Answer, Affirmative Defenses (collectively with the Amended Answer, the "Answer"), and Counterclaims against Skatteforvaltningen ("SKAT") and Third-Party Complaint Against ED&F Man (collectively with the Counterclaims, the "Third-Party Complaint")[1] are recounted, with additional factual descriptions of the documentation referenced therein, as follows:

## I.     The Relevant Agreements between ED&F Man and the Goldstein Plan

ED&F Man is a broker-dealer registered and headquartered in London, England, and regulated by the United Kingdom Financial Conduct Authority (the "FCA"). (Answer ¶¶ 90(a); Third-Party Complaint ¶ 6). The Goldstein Plan maintains a brokerage account with ED&F Man, and has done so since 2012. (Third-Party Complaint ¶ 28). Upon opening its brokerage account,

---

[1] A true and correct copy of The Goldstein Defendants' Amended Answer, Affirmative Defenses, and Counterclaims against SKAT and Third-Party Complaint against ED&F Man, dated April 23, 2019, is annexed to the Declaration of Kristen G. Niven (the "Niven Decl.") as Exhibit A. ED&F Man waived service of summons by Waiver of the Service of Summons dated May 8, 2019, a true and correct copy of which is annexed to the Niven Decl. as Exhibit B.

the Goldstein Plan signed "various agreements governing the business relationship between it and [ED&F Man]." (*Id.*, ¶ 30).

The "various agreements" referenced in the Third-Party Complaint include: (i) the application form dated March 23, 2012, completed and signed by Goldstein on behalf of the Goldstein Plan (the "Application Agreement")[2]; (ii) the Power of Attorney dated March 23, 2012, signed by Goldstein on behalf of the Goldstein Plan in favor of Acer Investment Group, LLC (the "Power of Attorney")[3]; (iii) the Custody Agreement dated June 21, 2012, signed by Goldstein on behalf of the Goldstein Plan (the "Custody Agreement")[4]; (iv) the Terms and Conditions of Business for ED&F Man in effect at the time of the execution of the Application Agreement, with Variations thereto signed by Goldstein (the "Terms")[5]; and (v) a cover letter enclosing the Terms with a confirmation of election statement required under the then United Kingdom Financial Services Authority ("FSA") Rules, signed by Goldstein on April 18, 2012 (the "Cover Letter")[6]. Each of the signed agreements were sent from and returned to ED&F Man in the United Kingdom, where ED&F Man also executed the signed agreements. (*See generally* Application Agreement, at p. 1; Custody Agreement, at "Between" clause and ¶ 19(a)(ii); Cover Letter; Terms, at p. 1 ).

The Goldstein Plan explicitly acknowledged in the Application Agreement, among other things, that they accept ED&F Man's Terms of Business, that they "have read and understood the Product and Service Risk Disclosures and Execution Policy (if applicable)" and that they acknowledge that ED&F Man "does not give investment advice or make investment recommendations." (Application Agreement, Niven Decl. Ex. C, at section 9). The Power of

---

[2] A true and correct copy of the Application Agreement is annexed to the Niven Decl. as Exhibit C.
[3] A true and correct copy of the Power of Attorney is annexed to the Niven Decl. as Exhibit D.
[4] A true and correct copy of the Custody Agreement is annexed to the Niven Decl. as Exhibit E.
[5] A true and correct copy of the Terms is annexed to the Niven Decl. as Exhibit G.
[6] A true and correct copy of the Cover Letter is annexed to the Niven Decl. as Exhibit F.

Attorney, executed together with the Application Agreement, appoints the Goldstein Plan's Broker Dealer, Acer Investment Group, LLC ("Acer") as attorney-in-fact with respect to the Goldstein Plan's trading account with ED&F Man. The Goldstein Plan acknowledged in the Power of Attorney, among other things, that ED&F Man "shall be entitled to rely upon the instructions, orders and requests provided to it by [Acer] as if given or made by [the Goldstein Plan]" (Power of Attorney, Niven Decl. Ex. D, at section 1.3(b)) and that the Power of Attorney "shall be governed by and construed in accordance with the laws of England." (*Id.*, at section 2).

The Custody Agreement appoints ED&F Man as the Custodian of the Goldstein Plan's securities and cash accounts, and provides that "Each Custody Account shall be maintained in London, England." (Custody Agreement, Niven Decl., Ex. E, at clause 2(c)). It also expressly provides that ED&F Man "does not act as manager or investment adviser to [the Goldstein Plan] . . . and responsibility for the selection, acquisition and disposal of the Client Property remains with the [Goldstein Plan] at all times." (*Id.*, at clause 11(m)). Under the Custody Agreement, the Goldstein Plan agrees to indemnify ED&F Man against "each liability, loss and cost which may be suffered or incurred by [ED&F Man] in connection with the Client Property, this Agreement, or the performance of [ED&F Man's] obligations under this Agreement" and "any Tax for which [ED&F Man] is or may be liable or accountable in connection with the Client Property, this Agreement or the performance of [ED&F Man's] obligations under this agreement (including without limitation the purchase and/or sale of Client Securities, the collection and/or realization of coupons, dividends, interest or other payments, the receipt of or entitlement to receive any income . . . " (*Id.*, at clause 16(a)). Finally, the Custody Agreement provides that it "shall be governed by, and shall be construed in accordance with, the laws of England"; "the courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with

this Agreement" and "[t]he parties to this Agreement agree that the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary." (*Id.*, at clause 22(a), (d), and (e)). It further clarifies as to the non-exclusiveness of the jurisdiction of English courts that the parties "shall not be prevented from taking proceedings relating to a Dispute in any other courts ***with jurisdiction***." (*Id.*, at clause 22(f)) (emphasis added).

The Cover Letter enclosing the Terms provides that "These [Terms] set out the contractual terms that govern our relationship but are subject to, where relevant, any transaction-specific documentation (e.g. ISDA, GMRA) as entered into between you and us from time to time as the case may be." (Cover Letter, Niven Decl. Exhibit F, at p. 1). The Terms clearly define the Applicable Law as "all applicable laws and regulations of the UK." (Terms, Niven Decl. Exhibit G, at p. 1). The Terms further provide as follows:

> These Terms and Conditions, and any non-contractual obligations arising from or connected with them, are governed by construed in accordance with, English law.
>
> Subject to the next paragraph, we both irrevocably:
>
> - agree that the courts of England shall have jurisdiction to determine any proceedings arising out of or in connection with these Terms and Conditions (whether arising out of or in connection with contractual or non-contractual obligations) and irrevocably submit to their jurisdiction, but this will not prevent us from bringing an action in the courts of any other jurisdiction; and
>
> - waive any objection to the venue of any such proceedings.
>
> Where any Relevant Rules require us to we will, and where they so permit us to we may, refer any dispute relating to a Transaction to arbitration under such Relevant Rules prior to resorting to the jurisdiction of the courts.

Terms, Niven Decl., Ex. G, at p. 33

## II.    The Subject Transactions

The Goldstein Defendants identified nine tax withholding refund claims that the Goldstein Plan made to SKAT with respect to the receipt of dividend payments on shares it held in a Danish company, all but one of which were allegedly paid by SKAT. (Third-Party Complaint, ¶¶ 17, 21, 46-47, 51-53). These transactions were conducted in the Goldstein Plan's brokerage account at ED&F Man. (*Id.*, ¶ 32).

The Third-Party Complaint at no point alleges that ED&F Man misrepresented the Goldstein Plan's ownership of the securities subject to the dividend tax refund, perpetuated any fraudulent transactions, or otherwise engaged in any wrongdoing. The Goldstein Defendants allege, without stating any such wrongdoing, that they "reasonably relied on [ED&F Man's] stellar reputation and history to trust that all activity in the Goldstein Plan's account was lawful" under the applicable United Kingdom laws and regulations.  (*Id.*, at ¶¶ 49-50).

## III.    The English Action and Claims Regarding Jurisdiction

The Goldstein Defendants refer to ED&F Man's responsive pleading in an action initiated in the High Court of Justice, Business and Property Courts of England and Wales Commercial Court by SKAT against ED&F Man and others in the United Kingdom (the "English Action") to describe the transactions ED&F Man made on behalf of the Goldstein Plan.[7] The Goldstein Defendants further alleged upon information and belief that ED&F Man "followed the same process for all transactions underlying the nine Reclaim Applications submitted to SKAT on the Goldstein Plan's behalf." (*Id.*, ¶¶ 7, 34-46). In the Answer, the

---

[7] A true and correct copy of: (i) the Particulars of Claim in SKAT v. Solo Capital Partners LLP & Others, [2018] EWHC (Comm), Claim No's. CL-2018-000297; CL-2018-000404; CL-2018-000590 (Eng.), dated September 24, 2018, together with Schedule 5T thereto; (ii) the amended Particulars of Claim and Schedule 5T dated January 16, 2019; and (iii) the re-amended Particulars of Claim dated July 30, 2019, are collectively annexed to the Niven Decl. as Exhibit H. A true and correct copy of the Defence of the 69th Defendant ED&F Man Capital Markets Limited to the Consolidated Claims in the English Action, together with Annexes A-D thereto, is collectively annexed to the Niven Decl. as Exhibit I.

Goldstein Defendants' Seventh Affirmative Defense further alleges that SKAT's claims against them are barred because "Plaintiff is simultaneously pursuing remedies for the same allegations contained in the Complaint in foreign jurisdictions[.]" (Answer, ¶ 87).

The Third-Party Complaint alleges in conclusory fashion that "[t]his Court has jurisdiction over [ED&F Man] because it directly and indirectly structured and provided the financial services that give rise to SKAT's Complaint and Counterclaim-Plaintiffs' Counterclaims and Third-Party Claim." (Third-Party Complaint ¶ 12). The Goldstein Defendants additionally conclude that "the Third-Party Claim is properly venued in this Court" "for the same reasons" that the Counterclaims are properly venued in this Court, in which Plaintiff-Counterclaim Defendant SKAT voluntarily initiated the fraud action that is now a part of the multi-district litigation before this Court (the "MDL").

## ANALYSIS

### I. The Third-Party Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction

It is well established that the question of the court's jurisdiction over a particular case must be established as a threshold matter before the Court may consider the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). "The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception,' for '[j]urisdiction is power to declare the law,' and '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Id.* (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998)). "Jurisdiction to resolve cases on the merits requires both authority over the category of the claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Id.*

### A.    Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion pursuant to Rule 12(b)(2) to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Contant v. Bank of Am. Corp.*, No. 17 CIV. 3139 (LGS), 2019 WL 2174233, at *1 (S.D.N.Y. May 17, 2019) (citing *MacDermid, Inc., v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)); *Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 692 (S.D.N.Y. 2019) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). In order to defeat a motion to dismiss for lack of personal jurisdiction prior to any discovery or evidentiary hearing, the plaintiff must make a *prima facie* showing that personal jurisdiction exists via "legally sufficient allegations of jurisdiction." *Fire & Police Pension Ass'n of Colorado*, 368 F. Supp. 3d 681 at 692. Sufficient allegations must constitute "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id*. (citing *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

In order to make a prima facie showing of personal jurisdiction, the plaintiff must show: "(1) procedurally proper service of process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective' and (3) that 'the exercise of personal jurisdiction ... comport[s] with constitutional due process principles.'" *Id.*; *Contant*, 2019 WL 2174233 at *2; *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). ED&F Man challenges the Court's exercise of personal jurisdiction on the basis of the claims in the Third-Party Complaint on the grounds that it does not comport with constitutional due process. *See Daimler AG v. Bauman,* 571 U.S. 117, 125 (2014); *Contant*, 2019 WL 2174233, at *2.

"Pursuant to the due process clauses of the Fifth and Fourteenth Amendments, there are two parts to the due process test for personal jurisdiction . . . the "minimum contacts" inquiry and the "reasonableness" inquiry." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir.

2016); *see also Contant*, 2019 WL 2174233, at *2; *Daimler AG*, 571 U.S. 117, 126 (citing *International Shoe Co. v. Washington*¸ 326 U.S. 310 (1945) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564, U.S. 915, 922 (2011), for the canonical rule that "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice"'").

In order to establish the first prong, the Court must determine "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant." *Waldman*, 835 F.3d 317, 331 (citing *Daimler*, 134 S.Ct. at 754; *Calder v. Jones*, 465 U.S. 783, 788, (1984); *Int'l Shoe*, 326 U.S. at 316; and *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d at 567–68 (2d Cir. 1996)). The reasonableness prong "requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with "'traditional notions of fair play and substantial justice'" under the circumstances of the particular case. *Id.* (citing *Daimler*, 134 S.Ct. at 754; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

B.    **Minimum Contacts**

For the purpose of the minimum contacts inquiry, there are two potential exercises of personal jurisdiction: general jurisdiction and specific jurisdiction. *See generally, Daimler AG*, 571 U.S. 117*; Waldman*, 835 F.3d 317; *Int'l Shoe*, 326 U.S. 310. General, or all-purpose jurisdiction applies if a foreign entity is amenable to suit in the forum state for any and all claims against it. *See Daimler AG*, 571 U.S. at 127 (confirming, following *Int'l Shoe* and *Goodyear*, that general jurisdiction applies where a foreign corporation's operations in the state are "so 'continuous and systematic' as to render them essentially at home in the forum State"). "Specific jurisdiction depends on 'an affiliation between the forum and the underlying controversy,

principally, an activity or occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Contant* at *2. (citing *Bristol-Meyers Squibb Co. v. Superior Court of Cal.*, 137 S Ct. 1773, 1780 (2017); *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Pursuant to Rule 4, "[s]erving a summons or filing a waiver of service establishes jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Accordingly, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons" subject to the limits of federal due process. *Walden*, 571 U.S. 277, 283 (2014) (citing *Daimler AG*, 571 U.S. 117, 125 (2014). New York's long-arm statute, CPLR § 302, provides that a court of general jurisdiction in New York may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state."

As courts in this district have recognized, "[t]he New York Court of Appeals has identified two basic elements for predicating jurisdiction under 302(a)(1): '[L]ong-arm jurisdiction over a nondomiciliary exists where (i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business. If either prong of the statute is not met, jurisdiction cannot be conferred under CPLR 302(a)(1).'" *Wing Shing Prod. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 397 (S.D.N.Y. 2007) (citing *Johnson v. Ward*, 4 N.Y.3d 516 (2005)). Thus, the establishment of sufficient minimum contacts to a defendant subject to personal jurisdiction in this district must comport with New York law on what constitutes "transaction of business" within the State.

10

1.    This Court Does Not Have General Jurisdiction Over ED&F Man Because
It Is Neither Incorporated Nor Headquartered in New York.

"Aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *Daimler,* 571 U.S. at 137; *Contant*, 2019 WL 2174233 at *2 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018). ED&F Man is a corporation organized under the laws of the England and headquartered in London, and therefore is presumptively subject to general jurisdiction only in England, not in New York. "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the state in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S., at 122 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*). Because ED&F Man is neither headquartered in nor organized under the laws of New York, it not is essentially "at home" in New York. *See Daimler*, 571 U.S. at 136-137.

The regular trade or contracting with persons located in this jurisdiction does not rise to the level of constant and pervasive activity which would render a defendant essentially at home in this State, and the Goldstein Defendants cannot demonstrate that ED&F Man meets such a standard. Continuous activity of some kind by a corporation alone is not sufficient to give rise to general jurisdiction. *See Daimler,* 571 U.S. at 132. Accordingly, contracting with forum parties from time to time is not sufficiently continuous and systematic so as to render ED&F Man subject to general jurisdiction in New York.

Nor does the existence of affiliated corporate entities present in this State (e.g. ED&F Man Capital Markets, Inc.) subject ED&F Man to general jurisdiction in New York. The mere existence of parents or subsidiaries that are truly distinct corporate entities incorporated or domiciled in the State cannot subject the foreign entity to general jurisdiction in New York. *See*

11

*Damiler*, 571 U.S. at 134-136; *Goodyear*, 564 U.S. 915, at 930 (attributing a related entity's ties to the foreign corporation would in effect be to pierce the corporate veil for the purpose of finding jurisdiction). Therefore, this Court does not have general jurisdiction over ED&F Man.

> 2.    This Court Does Not Have Specific Jurisdiction Over ED&F Man Because Its Activities Were Not Directed at New York.

"For the exercise of specific personal jurisdiction to comport with due process, a 'defendant's suit-related conduct must create a substantial connection with the forum State." *Walden* at 284. Specific jurisdiction has also been described as "purposeful availment" (*see Hanson v. Denckla,* 357 U.S. 235, 253 (1958)) or arising out of conduct "expressly aimed" at the forum State. *See Calder v. Jones,* 465 U.S. 783, at 789 (1984); *Schwab v. Bank of America,* 883 F.3d 68 at 87 (2d Cir. 2018). The defendant's contacts must be with the state, not merely with persons, such as Goldstein, that reside there. *See Walden*, 571 U.S., at 284. The exercise of personal jurisdiction over ED&F Man in this instance therefore does not comport with the minimum contacts required to satisfy due process. *See Walden v Fiore*, 571 U.S. 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.")

A single contract with a New York party likewise does not constitute a "transaction of business" out of which the cause of action arises for the purpose of satisfying New York's long-arm statute conferring jurisdiction. To determine whether a nondomiciliary has "transacted business" within New York, courts should consider the totality of the circumstances, including "(1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York, and whether the defendant visited New York after executing the contract with the parties; (3) whether

there is a choice-of-law clause in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." *Wing Shing*, 479 F. Supp. 2d 388, 397-398 (finding no long-arm jurisdiction where "[t]he record is devoid of any evidence that [defendant] ever negotiated or executed a contract with Bank One in New York, maintained an ongoing contractual relationship with Bank One, visited New York, or otherwise availed itself of the benefits and protections of New York laws.").

The Complaint only alleges that ED&F Man "directly and indirectly structured and provided the financial services that give rise to SKAT's Complaint and [the] Third-Party Claim", and that "ED&F Capital Markets and the Goldstein Plan entered into various agreements[.]" However, the conclusory attribution of SKAT's forum selection to ED&F Man for the purpose of establishing personal jurisdiction fails to demonstrate *prima facie* that ED&F Man's own activities provided the requisite minimum contacts with New York to support the exercise of personal jurisdiction over it in accordance with due process. Nowhere does the Third-Party Complaint allege that these services were performed in New York, that the contract for these services was executed or otherwise directed to New York, that the choice-of-law provision selects New York, or any other factor that would weigh in favor of personal jurisdiction over ED&F Man arising out of their contract with the Goldstein Plan. (Third-Party Complaint ¶¶ 12, 103-104).[8]

---

[8] The agreements referenced in the Third-Party Complaint do not specifically select New York as the forum state. Indeed, they select the courts of England as the preferred forum. "The burden is on the plaintiff 'to make a strong showing in order to overcome the presumption of enforceability'" of a selection clause selecting a foreign forum, and "there is a strong presumption in favor of upholding the enforceability of forum-selection clauses." *Longo v. FlightSafety Int'l, Inc.*, 1 F. Supp. 3d 63, 67 (E.D.N.Y. 2014) (dismissing the action on the basis that the contract underlying the dispute selects the United Kingdom as the forum). Accordingly, this weighs against New York's exercise of long-arm jurisdiction under CPLR § 302.

It is clear that SKAT brought its claims against the Goldstein Defendants in this district based on their residence in the forum state. Accordingly, SKAT, as Plaintiff, voluntarily elected to bring its claims in this forum, and the Goldstein Defendants do not deny that the Court has personal jurisdiction over them. However, "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, [] the answer clearly is that it cannot" *Burger King*, 471 U.S. 432, 478; *see also Bristol-Meyers Squibb*, 137 S. Ct. 1773 (2017) ("The bare fact that [the defendant] contracted with [an in-state] distributor is not enough to establish personal jurisdiction in the State.") Moreover, the agreements on which the Goldstein Defendants rely make clear that ED&F Man conducted all of its business, including the trades that allegedly gave rise to the claims at issue, and the negotiation and execution of the contracts themselves, entirely from the United Kingdom. The agreements also select English law as the governing law, another factor considered by New York courts in determining whether an entity has directed its activities to this State. *See Wing Shing*, 479 F. Supp. 2d, at 397-398. ED&F Man's transaction of business from London does not purposefully avail itself of this forum's laws merely because it transacted with a New York resident, and "courts will likely not exercise jurisdiction over a non-resident when the contract was negotiated solely by mail, phone, or fax without any New York presence." *Patel v. Patel*, 497 F.Supp. 2d 419, 428 (E.D.N.Y. 2007).

Therefore, the Goldstein Defendants have failed entirely to allege that ED&F Man by its own actions has the requisite minimum contacts with this forum, which *prima facie* fails make out a legally sufficient basis for personal jurisdiction over ED&F Man.

C.    **The Reasonableness Inquiry**

Even if the Third-Party Defendants had sufficiently alleged that ED&F Man meets the minimum contacts prong of the personal jurisdiction analysis, which they have not, the assertion

of personal jurisdiction over ED&F Man is not reasonable under the circumstances, and therefore does not comport with "traditional notions of fair play and substantial justice."

Under the reasonableness analysis, the Court must determine: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life*, 84 F.3d 560, 568 (citing *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, at 113-114 (1987)).

Here, the burden on ED&F Man would be significant. All of ED&F Man's records, files, and witnesses with information about the agreements with the Goldstein Plan and the operation of its accounts are located in the United Kingdom, not in New York. *See Metro. Life*, 84 F.3d at 574 (finding that the necessity of a Delaware corporation domiciled also in Pennsylvania to litigate a dispute in Vermont where none of its records or witnesses are weighs in favor of the out-of-state defendant on this factor of the reasonableness inquiry). This burden is much higher than if ED&F Man had been merely in another state, which the Second Circuit Court of Appeals even found to be somewhat burdensome. *See id.* Even more significantly, as a foreign corporation, ED&F Man is being asked "not only to traverse the distance" between its headquarters in London and New York, but also to "submit its dispute . . . to a foreign nation's judicial system" *Asahi*, 480 U.S. 102, 114. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.*

Therefore the burden factor should weigh strongly against the reasonableness of asserting jurisdiction over ED&F Man.

The interests of New York in adjudicating the Third-Party Complaint are also minimal. ED&F Man is regulated by the laws of England and the FCA. The Goldstein Defendants have alleged that the Goldstein Plan has its principal place of business in Florida, not New York (Third-Party Complaint, ¶ 1), and has not alleged that Goldstein still resides in New York, merely that he is a resident of the United States. *See Metro. Life*, 84 F.3d at 574 (the state interest factor weighs heavily against a finding of reasonableness where the acts or omissions occurred elsewhere and the Plaintiff was not even domiciled in the forum). Finally, the choice of law provision in the relevant agreements selecting English law strongly indicates that New York does not have an interest in adjudicating the breach of contract claim. *See Sherwin-Williams Co. v. C.V.*, No. 14-CV-6227(RA), 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016) (holding that with respect to form state's interest factor of the reasonableness inquiry, New York had no interest in adjudicating the dispute where the agreements in question selected the law of a foreign country).

The claims against ED&F Man are additionally neither directed at this forum nor the subject of this litigation, which alleges that the defendants perpetrated a fraud in the various MDL districts, including New York. *See Asahi*, 480 U.S. at 114–15 (forum state's determination of its interest in protecting its consumers was not applicable to a dispute between a defendant and third-party defendant that "is primarily about indemnification rather than safety standards.") Neither SKAT nor any other party in the MDL has asserted any claims against ED&F Man in this district. The sole cause of action in the Third-Party Complaint against ED&F Man is for breach of contract, which is not alleged in any of the MDL actions in this district, and the contracts at issue are exclusively between ED&F Man and the Goldstein Plan. Therefore, the

third-party claims are not necessary to the adjudication of the claims in the MDL, and this forum accordingly has no significant interest in adjudicating the dispute between ED&F Man and the Goldstein Defendants. *See A + E Television Networks, LLC v. Wish Factory Inc.*, No. 15-CV-1189 (DAB), 2016 WL 8136110, at *11 (S.D.N.Y. Mar. 11, 2016) (dismissing third-party complaint for lack of personal jurisdiction where contacts to the forum are not those of third-party defendant, and although the third-party plaintiff may prefer to bring the claim where it is already litigating, judicial efficiency did not "weigh in favor of the exercise of jurisdiction [] where the issue is sufficiently distinct from the underlying [cause of action])."

The Goldstein Defendants have moreover explicitly agreed that the courts of England are an appropriate as well as the most convenient forum for adjudication of any dispute arising out of the contractual relationship between them and ED&F Man. They cannot claim, therefore, that the courts of New York are the only venue in which they can achieve convenient and effective relief. *See Asahi*, 480 U.S. at 102 (facts did not demonstrate that it would be more convenient for third-party claim to be litigated in California). On the contrary, they are precluded by their signed agreements from arguing that the courts of England are not the most suitable forum.

Finally, as to the interstate system and the shared interests of the states, the international nature of this dispute "calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [] court." *Asahi*, 480 U.S. at 115. The interests of the Courts of England in adjudicating disputes arising out of contracts formed under English law, and pursuant to the rules of its regulatory authorities, are significant, as memorialized in the very contracts at issue in this dispute. *See Sherwin-Williams*, 2016 WL 354898 at *6 (choice of foreign law in contract weighed in favor of dismissal on the factor of the international judicial system's interest in efficiency); *Aerogroup Int'l, Inc. v.*

*Marlboro Footworks, Ltd.,* 956 F. Supp. 427, 438 (S.D.N.Y. 1996) (finding that foreign nation "unquestionably has a strong interest in enforcing its own [laws]").

In fact, ED&F Man is already defending non-fraud claims arising out of the same facts in the English Court. Therefore, in view of the context of this dispute, the severe burden on ED&F Man, and the minimal interests of the Goldstein Defendants and the State of New York in litigating this dispute in this forum, the exercise of personal jurisdiction by this Court, in this instance, would be "unreasonable and unfair." *Asahi*, 480 U.S. at 116.

In light of the clear lack of minimum contacts of ED&F Man with this forum, the additional consideration that it would be unreasonable and unfair to require it to litigate this dispute in this forum confirms that due process requires that this Court dismiss the Third-Party Complaint for lack of personal jurisdiction. *See Metro. Life*, 84 F.3d at 568-59 (discussing the "sliding scale" effect of the two-step due process analysis); *Daimler*, 571 U.S. at 142 (citing *International Shoe* for the finding that "[c]onsiderations of international rapport thus reinforce our determination" that exercising personal jurisdiction over the defendant "would not accord with the 'fair play and substantial justice' due process demands.").

## II.    The Third-Party Complaint Should Alternatively Be Dismissed on *Forum Non Conveniens* Grounds

Even if the Court declines to dismiss the Third-Party Complaint on personal jurisdiction grounds, it should exercise its discretion to dismiss on the grounds of *forum non conveniens*. "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). *Forum non conveniens* challenges require courts to consider and determine three factors: "(i) the degree of deference due to the plaintiff's choice of forum; (ii) whether an adequate alternative forum exists; and (iii) the balance of public and

private interests implicated in the choice of forum." *Guerrini v. Amtel Corp.*, 2016 WL 3548238 at \*2 (2d Cir. June 27, 2016) (citation omitted).

### A.    Plaintiff's forum choice

The choice of forum in this instance was made by SKAT, which has not alleged any claims against ED&F Man in this case, not by the Goldstein Defendants. "The degree of deference given to a plaintiff's forum choice varies with the circumstances." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). Here, the only basis for the forum choice for the Third-Party Complaint is the Goldstein Defendants' desire to bring ED&F Man into the pending MDL.

Moreover, there is no nexus between the primary MDL claims and the Third-Party claims that would affect the degree of deference given to the forum choice for the claims against ED&F Man. The Goldstein Plan's claims for breach of contract based on agreements with ED&F Man are distinct from the underlying fraud claims and do not impact the adjudication of the fraud claims brought by SKAT against the various defendants.

The Third-Party claims alleged sound in breach of the various agreements, which are governed by English law and clearly specify that the courts of England are the most convenient forum. It is appropriate to dismiss on the basis of *forum non conveniens* in order to give deference to the forum selection clause of the subject agreement. *See Longo v. FlightSafety* Int'l, Inc., 1 F. Supp. 3d 63, 70 (E.D.N.Y. 2014) (dismissing on the basis of *forum on conveniens* upon finding that "determining whether claims or parties are subject to a forum-selection clause must be interpreted under the body of law specified in the agreement's choice-of-law provision, here English law" which selected England as the forum); *Martinez v. Bloomberg LP*, 740 F.3d 211, 229 (2d Cir. 2014) (applying English law to enforce forum selection clause in favor of the United Kingdom for claims arising out of employment contract). The parties clearly contemplated

England as being the most suitable, if not the exclusive, forum for the adjudication of disputes arising out of their agreements.

Accordingly, for the purpose of the Third-Party Complaint, the Goldstein Defendants' forum choice should not be accorded much deference because they did not initially choose it, and they have previously acknowledged in their written agreements that an alternative forum is more suitable for claims arising out of their contracts with ED&F Man.

### B.      Whether an adequate alternative forum exists

Not only is England the forum selected by both parties for the purpose of claims arising out of the contracts at issue, it is indisputably an adequate alternative forum. "[I]t is well-established that British courts are an adequate alternative forum for resolving disputes that may impact American corporations or citizens." *Tel. Sys. Int'l, Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 381–82 (S.D.N.Y. 2003). As the birthplace of much of the United States' jurisprudential tradition, the United Kingdom is universally well regarded for its rule of law. "We regard the British courts as exemplary in their fairness and commitment to the rule of law" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000). Accordingly, the courts of England are indisputably an adequate forum for the adjudication of the breach of contract claim against ED&F Man, and this factor weighs in favor of dismissal on the grounds of *forum non conveniens*.

### C.      The balance of public and private interests implicated in the choice of forum

The balancing of interests in this instance also weighs in favor of dismissal for *forum non conveniens*. There is already the pending English Action regarding ED&F Man's potential liability arising out of the same transactions on which the Goldstein Defendants base their nebulous breach of contract claim. "The doctrine of international comity may also militate against litigation in this country when an American citizen has voluntarily conducted business in

a foreign country, and parallel litigation is proceeding abroad." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 297 (S.D.N.Y. 2018). Accordingly, the Third-Party Complaint is duplicative of the ongoing English Action, and it would be a waste of judicial resources in both courts to litigate these issues simultaneously.

If the Third-Party Complaint were not dismissed, ED&F Man would have to defend substantially the same allegations in both jurisdictions simultaneously. In addition, all of the witnesses and evidence regarding the agreements and transactions by ED&F Man are located in the United Kingdom. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 ("[T]he court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues"). The predominant public policy of the United Kingdom weighs in favor of that forum resolving the dispute. There is generally a significant interest in having disputes "decided in the local forum in accordance with domestic law governing the case." *In re Alcon S'holder Litig.,* 719 F. Supp. 2d 263, 275 (S.D.N.Y. 2010) ("Because the core events, operative facts, applicable law, and associated public policy interests at issue are predominantly local to [the foreign jurisdiction], the Court agrees with [the defendant] and finds that the dispute should be resolved in [that jurisdiction]").

Finally, the Goldstein Defendants have explicitly agreed in writing that "the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary" (Custody Agreement, Niven Decl., Ex. E, at clause 22(e)) and "the courts of England shall have jurisdiction to determine any proceedings arising out of or in connection with these Terms and Conditions . . . and [the parites] irrevocably submit to their jurisdiction . . . and waive any objection to the venue of such proceedings" (Terms, Fraser Aff

Ex. G, at p. 33, ¶ 36). Because the parties have explicitly agreed that England has jurisdiction and is the most appropriate forum for adjudication of these contractual disputes in addition to the considerations against exercising personal jurisdiction, the Court should alternatively dismiss the Third-Party Complaint on the basis of *forum non conveniens*.

## III.     Alternatively, the Court Should Grant a Stay of the Third-Party Claims Pending Resolution of the English Action

Even if the Court does not find that the Third-Party Complaint should be dismissed for the reasons stated herein, the Court should stay the third-party claims pending resolution of the English Action. "Courts have the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction." *Consol. Edison Co. of New York v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998).

In evaluating whether to stay an action due to a pending related foreign proceeding, the courts consider several factors, including: "(1) whether the identity of the parties and issues in both actions are the same or similar; (2) whether the alternative forum is likely to render a prompt disposition; (3) the temporal sequence of the filing of the actions; (4) whether a stay will promote judicial efficiency; (5) the convenience of the parties, counsel and witnesses; and (6) the possibility of prejudice to the parties." *800537 Ontario, Inc. v. World Imports U.S.A. Inc.*, 145 F. Supp. 2d 288, 290–91 (W.D.N.Y. 2001).

In this instance, the English Action was initiated by SKAT, the Plaintiff in the primary case before this Court against the Goldstein Defendants and the other defendants in the MDL. The English Action was filed on September 24, 2018, well before the Third-Party Complaint, and is therefore both first in the temporal sequence, well underway, and therefore likely to render a disposition more promptly than tis Court in the MDL. (*See generally*, Particulars of Claim, Niven Decl. Ex. H).

In the English Action, SKAT makes fraud claims very similar to the claims against the Goldstein Defendants against several defendants, and makes negligent misrepresentation and unjust enrichment claims against ED&F Man, with respect to the trades it made and Tax Vouchers it issued for shares in Danish companies on behalf of U.S. pension plans, including the Goldstein Plan. (*See id.*, at ¶¶ 91-94, Schedule 5T; the English Defence, Niven Decl. Ex. I, ¶ 6.2, Annex B). Although the Goldstein Defendants purport to bring a claim sounding in breach of contract, their unpleaded assumption at the heart of a potential breach of contract claim is that ED&F Man made misrepresentations in breach of the agreements. The Goldstein Defendants even allege, as SKAT does in the English Action, that they "reasonably relied" on ED&F Man's reputation, and presumably, its representations as well. (Third-Party Complaint, at ¶¶ 49-50, 105-106). Therefore, the parties and issues are substantially similar, if not identical, between the Third-Party Complaint on the one hand, and the English Action on the other. Even to the extent the actions are not identical, "parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action." *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991).

A stay in the alternative to a dismissal will also promote judicial efficiency. *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 104 (S.D.N.Y. 1997) (finding a stay of the action pending resolution of the foreign action "will promote judicial efficiency by putting all parties and claims before a single tribunal, thus reducing duplicative discovery and litigation" and "will minimize the risk of inconsistent judgments with respect to related claims"). The primary focus of the MDL is on the fraud claims against the pension plan and individual defendants, to which a breach of contract claim against ED&F Man would be peripheral. Any claims against ED&F Man in fact cannot be resolved without a determination of the liability of

the pension plans, as the Third-Party Complaint acknowledges by pleading the breach of contract claim in hypothetical form. (*See* Third-Party Complaint, ¶ 106). The English Action, by contrast, is simultaneously considering claims against multiple fraud <u>and</u> non-fraud defendants. Moreover, taking discovery from United Kingdom-based defendants in the English Action will undoubtedly be more efficient than in the instant proceeding. Proceeding in the English Action, while staying the Third-Party Complaint will be more convenient for ED&F Man for the same reasons, and for the Goldstein Defendants as well, as they may reference public filings and determinations in that action once it has concluded, and may seek to take discovery from ED&F Man only if it becomes necessary based on the determinations in the MDL.

## CONCLUSION

For all of the foregoing reasons, ED&F Man respectfully requests that the Court issue an order dismissing the Third-Party Complaint as against ED&F Man in its entirety, on the basis of Rule 12(b)(2) for lack of personal jurisdiction, or alternatively on the basis of the doctrine of *forum non conveniens*. Should the motion to dismiss be denied, ED&F Man respectfully requests that the Court issue an order staying the Third-Party Complaint as against ED&F Man pending the resolution of the English Action.

24

Respectfully submitted,

Dated:    August 5, 2019
New York, New Yok

**AKERMAN LLP**

By:_____*/s/ Brian S. Fraser*_____
        Brian S. Fraser
        Kristen G. Niven
        brian.fraser@akerman.com
        kristen.niven@akerman.com
        666 Fifth Avenue, 20th Floor
        New York, NY 10103
        Telephone:  (212) 880-3800
        *Attorneys for Third-Party Defendant ED&F Man*
        *Capital Markets, Ltd.*