# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:      18-cv-09797<br><br>-----------------------------------------------------------<br><br>DW CONSTRUCTION, INC. RETIREMENT PLAN, KAMCO INVESTMENTS, INC. PENSION PLAN, KAMCO LP PROFIT SHARING PENSION PLAN, LINDEN ASSOCIATES DEFINED BENEFIT PLAN, MOIRA ASSOCIATES DEFINED BENEFIT PLAN, RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN, AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN, STACEY KAMINER, JOAN SCHULMAN, and DAVID SCHULMAN,<br><br>       Third-Party Plaintiffs,<br><br>v.<br><br>ED&F MAN CAPITAL MARKETS LTD.,<br><br>       Third-Party Defendant. | MASTER DOCKET<br><br>18-md-2865 (LAK)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**THIRD-PARTY COMPLAINT AND JURY DEMAND** |

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendants/Third-Party Plaintiffs DW Construction, Inc. Retirement Plan ("the DW Construction Plan"), Kamco Investments, Inc. Pension Plan ("the Kamco Investments Plan"), Kamco LP Profit Sharing Pension

Plan ("the Kamco LP Plan"), Linden Associates Defined Benefit Plan ("the Linden Plan"), Moira Associates Defined Benefit Plan ("the Moira Plan"), Riverside Associates Defined Benefit Plan ("the Riverside Plan") and American Investment Group of New York, L.P. Pension Plan ("the AIG Plan") (collectively, "the Plans," and each a "Plan") and Stacey Kaminer, Joan Schulman, and David Schulman (collectively, "the Trustees") (the Plans and Trustees are, collectively, the "Third-Party Plaintiffs"), bring the following third-party claims against the Plans' broker-custodian, Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F").

Third-Party Plaintiffs firmly believe the Plans are entitled to the withholding-tax refunds they claimed from Plaintiff Skatteforvaltningen ("SKAT") and that SKAT now wants returned in its actions against Third-Party Plaintiffs.[1]  If, however, SKAT's allegations against Third-Party Plaintiffs are proven to be true, then ED&F — not Third-Party Plaintiffs — should be responsible because ED&F (1) managed, controlled, and executed the Plans' Danish securities transactions, which are the focus of SKAT's claims; (2) provided all of the information concerning the Plans' securities, dividends, and withholding-tax information on which Third-Party Plaintiffs relied; and (3) collected fees in connection with the Plans' securities transactions and withholding-tax refunds.

---

[1]  SKAT's actions against Defendants/Third-Party Plaintiffs were consolidated in the United States District Court for the District of Utah and then transferred to this Court as part this multidistrict litigation pursuant to 28 U.S.C. § 1407.  Thus, the above-captioned related action comprises the following actions: *SKAT v. DW Construction Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

## PARTIES

1.       The Plans are U.S. pension plans.  Each Plan is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and residents of the United States of America for purposes of U.S. taxation.

2.       The DW Construction Plan, the Kamco Investments Plan, the Kamco LP Plan, the Linden Plan, the Moira Plan, and the Riverside Plan are located at 5532 Lillehammer Lane, Suite 103, Park City, Utah, 84098.  The AIG Plan is located at 3372 Woods Edge Circle, Suite 104, Bonita Springs, Florida, 34134.  At all relevant times, Acer Investment Group, LLC ("Acer") was the attorney in fact for each of the Plans in connection with the transactions involving ED&F that give rise to these third-party claims.  Acer is a limited liability company registered to do business in Utah with an office address of 5532 Lillehammer Lane, Suite 103, Park City, Utah, 84098.

3.       Stacey Kaminer is a citizen of the United States and a resident of the State of Utah. At all relevant times, Stacey Kaminer was trustee and duly authorized representative for the DW Construction Plan, the Kamco Investments Plan, the Kamco LP Plan, the Moira Plan, and the AIG Plan.

4.       Joan Schulman is a citizen of the United States and a resident of the State of New York.  At all relevant times, Joan Schulman was trustee and duly authorized representative for the Linden Plan.

5.       David Schulman is a citizen of the United States and a resident of the State of New York.  At all relevant times, David Schulman was trustee and duly authorized representative for the Riverside Plan.

6.      ED&F is a financial brokerage business and financial servicer headquartered at 3 London Bridge Street, London, SE1 9SG, United Kingdom.  At all relevant times, ED&F managed and controlled brokerage accounts for the Plans, executed trades in Danish securities for the Plans, provided documentation and information to the Plans in connection with the Plans' accounts and securities transactions, and collected fees in connection with the Plans' withholding-tax refund requests.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because the claims are between U.S. citizens and citizens of foreign states.  This Court also has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367 because the third-party claims form part of the same case or controversy as SKAT's claims.

8.      This action was transferred from the United States District Court for the District of Utah to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407.  This Court, as the transferee court, must apply the law the transferor court to determine whether it can exercise personal jurisdiction.

9.      This Court has personal jurisdiction over ED&F because ED&F's conduct giving rise to these third-party claims was purposefully directed toward residents of the State of Utah, ED&F transacted business with the Plans through the Plans' Utah-based representative and, if SKAT's claims are true, ED&F caused tortious injury in Utah.

10.      These third-party claims are properly venued for pretrial purposes in the United States District Court for the Southern District of New York because this action was transferred to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407.  These third-party claims are

properly venued for trial in the United States District Court for the District of Utah because ED&F

is subject to that court's personal jurisdiction.

11.     By filing these third-party claims in the United States District Court for the

Southern District of New York, Third-Party Plaintiffs do not waive their respective rights to have

SKAT's claims or these third-party claims transferred back to the United States District Court for

the District of Utah for purposes of trial.

## STATEMENT OF FACTS

**A. ED&F entered into various agreements with the Plans pursuant to which ED&F agreed to exercise reasonable care in relation to the Plans' transactions and accounts.**

12.     ED&F is a broker registered with the Financial Conduct Authority ("FCA"), which

regulates the UK financial and securities markets.

13.     In 2012, the Plans and ED&F executed various agreements (the "Agreements") that

set forth ED&F's obligations as broker-custodian for each of the Plans.  The Agreements include

each Plans' Custody Agreement, Security and Set-Off Deed, ISDA Master Agreement, and Terms

and Condition of Business, with variations thereto.

14.     Attached hereto are each Plans' Custody Agreement, specifically, for the DW

Construction Plan (Exhibit A), the Kamco Investments Plan (Exhibit B), the Kamco LP Plan

(Exhibit C), the Linden Plan (Exhibit D), the Moira Plan (Exhibit E), the Riverside Plan

(Exhibit F), and the AIG Plan (Exhibit G).

15.     Pursuant to the Agreements, the Plans have maintained separate brokerage accounts

with ED&F since at least June 2012.

16.     ED&F was required to exercise reasonable care when, among other things, (i)

buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans'

accounts and securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities

in compliance with FCA regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

17.      ED&F's obligations prohibited ED&F from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

18.      The Plans designated Acer as their attorney-in-fact in connection with investments in U.S. and foreign securities transactions conducted through the Plans' ED&F brokerage accounts.

19.      ED&F agreed to communicate with the Plans through Acer and, during all relevant times, ED&F routinely communicated with the Plans through Acer in relation to ED&F's dealings with the Plans, which are described more fully below.

**B. The Plans engaged ED&F in relation to Danish securities, received dividends net of withholding taxes on their holdings, and applied for withholding-tax refunds from SKAT based on the information provided by ED&F.**

20.      At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

21.      Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

22.      At all relevant times, SKAT served the Danish government as the agency responsible for refunding dividend withholding taxes, including refunds of dividend withholding taxes owed to U.S. pension plans.

23.      Between December 2013 and August 2015, the Plans engaged ED&F to buy and sell shares of certain Danish companies.

24.     As a result, ED&F generated a number of documents detailing and describing each of the transactions, including buy/sell confirmations for the Plan's transactions, account statements showing that the transactions occurred, and tax vouchers describing the Plans' security holdings and related withholding-taxes.

25.     ED&F provided documents and information concerning the Plans' holdings, security interests, and withholding-taxes to the Plans through Acer.

26.     According to the information and documents provided by ED&F, the Plans' holding of shares in Danish companies resulted in the crediting of dividends to the Plans' brokerage accounts.

27.     On information and belief, including information provided by ED&F, the Plans held securities in Danish companies in their ED&F brokerage accounts on or around the relevant record dates for payment of dividends (the "Holdings") and received dividends net of withholding taxes on those securities (the "Dividends").

**C. Third-Party Plaintiffs relied on ED&F when the Plans applied for withholding-tax refunds from SKAT.**

28.     Third-Party Plaintiffs entrusted ED&F, as custodian for the Plans, with the management and control of the Plans' brokerage accounts, the execution of securities transactions for the Plans, and the preparation of any tax vouchers related thereto.

29.     ED&F prepared such tax vouchers (the "Tax Vouchers") by which ED&F confirmed the Plans' relevant shareholdings over the applicable dividend dates and described the Dividends received by the Plans net of withholding taxes.

30.     ED&F prepared a Tax Voucher for each of the Plans' Holdings and Dividends.

31.     The Plans, through Acer, received the Tax Vouchers from ED&F.

32.     With each of the Tax Vouchers, ED&F stated that it "has no beneficial interest in the holding and will not be reclaiming the tax.  The dividends specified on this credit advice were paid net of withholding tax to [the Plan]."  For example:

## ED&F MAN

E D & F MAN CAPITAL MARKETS LIMITED

### Tax Voucher

We ED&F Man Capital Markets Ltd, based at Cotton's Centre, Hays Lane, London SE1 2QE and registered in the United Kingdom – confirm, Kamco L.P. Profit Sharing Plan FBO Stacey Kaminer – Suite 103, 5532 Lillehammer Lane, Park City, Utah, 84098, United States of America, was holding the below security over the dividend date.

| | |
|---|---|
| Security Description: | TDC A/S |
| ISIN: | DK0060228559 |
| SEDOL: | 5698790 |
| Ex Date: | 07th March 2014 |
| Record Date: | 11th March 2014 |
| Pay Date: | 12th March 2014 |
| Quantity: | 5,000,000 Shares |
| Gross Div Rate: | DKK 2.20 |
| Amount Received: | DKK 8,030,000.00 |
| WHT Suffered: | DKK 2,970,000.00 |
| WHT %: | 27% |

ED&F Man Capital Markets Limited has no beneficial interest in the holding and will not be reclaiming the tax. The dividends specified on this credit advice were paid net of withholding tax to Kamco L.P. Profit Sharing Plan FBO Stacey Kaminer. If you have any further concerns or issues please do not hesitate to contact us.

AUTHORISED SIGNATORY

Christina MacKinnon

*Mackinno*

Head of Securities Operations

33.     Attached hereto are the relevant Tax Vouchers provided by ED&F for the Plans' withholding-tax refunds, specifically, seven (7) Tax Vouchers for the DW Construction Plan

(Exhibit H), six (6) Tax Vouchers for the Kamco Investments Plan (Exhibit I), five (5) Tax Vouchers for the Kamco LP Plan (Exhibit J), twelve (12) Tax Vouchers for the Linden Plan (Exhibit K), eight (8) Tax Vouchers for the Moira Plan (Exhibit L), eleven (11) Tax Vouchers for the Riverside Plan (Exhibit M), and eleven (11) Tax Vouchers for the AIG Plan (Exhibit N).

34.     At all relevant times, ED&F was uniquely positioned to confirm the status of the Plans' Holdings, Dividends, brokerage accounts, securities transactions, and entitlement to dividend withholding taxes.

35.     Third-Party Plaintiffs placed their confidence in ED&F to act primarily for the benefit of the Plans and placed the Plans' property, interests, and trust in the charge of ED&F.

36.     On information and belief, ED&F was the only entity that had direct control over the information concerning, among other things, the Plans' brokerage accounts, securities in those accounts, receipt of dividends, and entitlement to dividend withholding taxes.

37.     After ED&F confirmed that the Plans received the Dividends net of withholding taxes, ED&F sent the Tax Vouchers to Goal Taxback Ltd. ("Goal Taxback"), a third-party payment-processing agent, who then submitted the applications for withholding-tax refunds to SKAT on behalf of the Plans.

38.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plans' Holdings and Dividends were accurate; (ii) the Plans actually held the securities they represented to SKAT that they owned; (iii) the Plans received the Dividends; (iv) dividend tax was withheld in relation to the Dividends and the Holdings; and (v) the Plans were entitled to withholding-tax refunds from SKAT.

39.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

40.     SKAT paid the Plans through Goal Taxback for all of the Plans' withholding-tax refunds until August 2015, at which point SKAT stopped paying withholding-tax refund claims. The Plans' refunds that SKAT refused to pay beginning in August 2015 are the subject of each of the Plans' counterclaims against SKAT, filed in *SKAT v. DW Construction Inc. Retirement Plan* (18-cv-09797, 18-md-2865 (S.D.N.Y.)) on July 29, 2019.

41.     In 2018, SKAT sued Third-Party Plaintiffs seeking damages and/or restitution in the amount of the withholding-tax refunds SKAT paid to the Plans, alleging fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, and money had and received.

42.     The refunds SKAT seeks to have returned in its actions against the Third-Party Plaintiffs are as follows:

| Plan / Trustee | Amount Claimed by SKAT |
|---|---|
| The DW Construction Plan / Kaminer | $ 2,130,000.00 |
| The Kamco Investments Plan / Kaminer | $ 1,643,000.00 |
| The Kamco LP Plan / Kaminer | $ 2,397,000.00 |
| The Linden Plan / Joan Schulman | $ 2,062,000.00 |
| The Moira Plan / Kaminer | $ 2,660,000.00 |
| The Riverside Plan / David Schulman | $ 1,992,000.00 |
| The AIG Plan / Kaminer | $ 3,388,000.00 |
| **TOTAL** | $16,272,000.00 |

**D.   If SKAT proves the Plans did not own the shares they claimed to own, did not earn the dividends they claimed to have earned, or were otherwise not entitled to the withholding taxes they claimed, then ED&F should be responsible for any amounts claimed by SKAT.**

43.     SKAT alleges Third-Party Plaintiffs misrepresented the Plans' Holdings and Dividends when the Plans requested the withholding-tax refunds.

44.     SKAT alleges that each Plan did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds that they claimed.

45.     SKAT also alleges that ED&F provided statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

46.     To be clear, the Plans have never attempted to defraud or commit other wrongful actions against SKAT.[2]

47.     If, however, SKAT proves its claims and establishes that Third-Party Plaintiffs are liable to SKAT for some or all of SKAT's alleged damages or amounts it claims to be owed, then ED&F should be responsible for such damages because of ED&F's obligations under the Agreements and because of its unique position by which it managed and controlled the Plans' brokerage accounts, executed securities transactions for the Plans, and confirmed the Plans' Holdings, Dividends, and withholding-tax refunds.

**E. Alternatively, ED&F must repay the fees it collected in relation to the Plans' transactions and withholding-tax refunds if SKAT is entitled to damages or restitution.**

48.     Parties that facilitate securities transactions and related transactions typically charge fees.  Fees are often charged as a percentage of the total profit or cost of the transaction.

---

[2] SKAT sued ED&F in the United Kingdom (the "U.K. Proceeding") over the same transactions that are the basis of SKAT's claims against Third-Party Plaintiffs.  Notably, however, in the U.K. Proceeding, SKAT did not allege that ED&F committed any fraud.  Instead, SKAT described ED&F as a "non-fraud defendant" and only accused ED&F of *negligent* misrepresentation. SKAT's positions in the two litigations are inconsistent.  Third-Plaintiffs wholly relied on documents and information provided by ED&F as custodian for the Plans.  Accordingly, SKAT should not be allowed to accuse Third-Party Plaintiffs of fraud in this litigation while taking the position in the U.K. Proceeding that ED&F is a "non-fraud defendant."

This is common in many service-oriented industries and is simply understood as the "cost of doing business."

49.     As should be expected, ED&F collected fees from the Plans in connection with the Plans' transactions, Holdings, Dividends, and/or withholding-tax refunds.

50.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT reimbursed or refunded to the Plans, then ED&F should be required, at a minimum, to return any fees it collected from the Plans in connection with the Plans' transactions, Holdings, Dividends, and/or withholding-tax refunds.

## THIRD-PARTY CLAIM COUNT I
### Breach of Contract – *The Plans v. ED&F*

51.     The Plans repeat and reallege paragraphs 1 through 50 of these Third-Party Claims as if set forth fully herein.

52.     The Agreements between the Plans and ED&F constitute binding and enforceable contracts.

53.     The Plans performed their obligations under the Agreements at all relevant times.

54.     ED&F's obligations required ED&F to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans' brokerage accounts and ownership of securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

55.     ED&F's obligations prohibited ED&F from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

56.     SKAT's claims against Third-Party Plaintiffs involve issues and circumstances for which any liability of the Plans or Trustees, if any exists, rests with ED&F.

57.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached the Agreements, and the Plans will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches of contract.

58.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to the Plans for any amounts or other remedies the Plans are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT II
### Breach of Fiduciary Duty – *Third-Party Plaintiffs v. ED&F*

59.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 58 of these Third-Party Claims as if set forth fully herein.

60.     ED&F, as custodian to the Plans, had a fiduciary relationship with Third-Party Plaintiffs.  Third-Party Plaintiffs placed their confidence in ED&F to act in good faith and primarily for the benefit of the Plans and placed the Plans' property, interests, and trust in the charge of ED&F.  ED&F was uniquely positioned to confirm the Plans' Holdings, Dividends, brokerage accounts, securities transactions, and entitlement to dividend withholding taxes.

61.     On information and belief, ED&F was the only entity that had direct control over information concerning, among other things, the Plans' brokerage accounts, securities transactions, receipt of dividends, and entitlement to dividend withholding taxes.

62.     Because of its fiduciary relationship with Third-Party Plaintiffs, ED&F was required to deal truthfully and primarily for the benefit of the Plans at all times, to exercise

reasonable care, skill, and diligence, and to advise Third-Party Plaintiffs of all relevant facts and circumstances known to ED&F.

63.     ED&F's fiduciary duties are separate and distinct from its contractual obligations to the Plans under the Agreements.

64.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached its fiduciary obligations owed to Third-Party Plaintiffs, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches.

65.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT III
### Promissory Estoppel – *Third-Party Plaintiffs v. ED&F*

66.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 65 of these Third-Party Claims as if set forth fully herein.

67.     ED&F promised to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans' brokerage accounts and ownership of securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

68.     ED&F promised to create only truthful and accurate documents in relation to the Plans' account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

69.     ED&F should have reasonably expected — and, on information and belief, did reasonably expect — its promises to induce Third-Party Plaintiffs to rely on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plans' Holdings and Dividends were, in fact, accurate and legitimate; (ii) the Plans actually held the securities they represented to SKAT that they owned; (iii) the Plans actually received the Dividends they claimed to have received; (iv) taxes were withheld in relation to the Dividends and Holdings; and (v) the Plans were entitled to the withholding-tax refunds.

70.     Third-Party Plaintiffs acted with prudence and in reasonable reliance on ED&F's promises when they authorized Goal Taxback to submit applications for the withholding-tax refunds from SKAT and refrained from seeking from any other party a tax voucher or other documentation to support the Plans' tax-withholding refund claims.  On information and belief, ED&F knew that Third-Party Plaintiffs so relied on ED&F's promises.

71.     ED&F knew all important and material facts concerning its promises, the Holdings, the Dividends, and the withholding-tax refunds.

72.     If, as SKAT alleges, the Plans never held the shares they claimed to own, never received the dividends they claimed to have received, and/or are otherwise not entitled to the withholding-tax refunds, then ED&F failed to fulfill its promises, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a result of ED&F's failure to fulfill its promises.

73.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT IV
### Unjust Enrichment – *Third-Party Plaintiffs v. ED&F*

74.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 73 of these Third-Party Claims as if set forth fully herein.

75.     ED&F collected fees from the Plans in connection with the Plans' transactions, Holdings, Dividends, and withholding-tax refunds.

76.     SKAT has alleged that the Plans' transactions, Holdings, and Dividends were falsified and that the Plans were not entitled to the withholding-tax refunds from SKAT.

77.     It would be unjust for ED&F to retain the fees it collected in connection with the Plans' transactions, Holdings, Dividends, and withholding-tax refunds if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plans.

78.     On information and belief, ED&F knowingly possesses the fees it collected from the Plans.

79.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plans, then ED&F will have been unjustly enriched in the amount of the fees it collected from the Plans, and ED&F should be liable to account and return the fees, plus interest.

## THIRD-PARTY CLAIM COUNT V
### Equitable Indemnification – *Third-Party Plaintiffs v. ED&F*

80.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 79 of these Third-Party Claims as if set forth fully herein.

81.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then Third-Party Plaintiffs will be liable to SKAT or will be obligated to repay SKAT the entire amount of the withholding-tax refunds paid by SKAT to the Plans.

82.     However, as alleged herein, Third-Party Plaintiffs relied on ED&F and ED&F's own statements, and furthermore, SKAT has alleged that it was ED&F that provided the statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

83.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to indemnify Third-Party Plaintiffs for all costs they have incurred and may incur as a result of any of SKAT's claims, including, but not limited to, (i) any amounts owed by Third-Party Plaintiffs to SKAT or, in the alternative, any amounts ED&F received in connection with the Plans' transactions, Holdings, Dividends, and withholding-tax refunds, and (ii) any of the Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest and other expenses arising out of or related to these third-party claims and SKAT's claims against the Third-Party Plaintiffs.

## THIRD-PARTY CLAIM COUNT VI
### Apportionment of Fault – *Third-Party Plaintiffs v. ED&F*

84.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 83 of these Third-Party Claims as if set forth fully herein.

85.     SKAT has filed claims against Third-Party Plaintiffs for damages and restitution arising out of and related to Third-Party Plaintiffs' dealings with ED&F.

86.     SKAT alleged that ED&F provided statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares, and thus, if SKAT proves its claims, then ED&F should be responsible for all or a portion of SKAT's alleged harm.

87.     Pursuant to the Utah Liability Reform Act, Utah Code §§ 78B-5-817, et seq., Third-Party Plaintiffs allege that all fault should be apportioned to ED&F for SKAT's claims against Third-Party Plaintiffs, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

88.     Third-Party Plaintiffs intend to include ED&F on a special verdict form for the purposes of allocation of fault, consistent with the above.

## JURY DEMAND

Third-Party Plaintiffs demand a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Third-Party Plaintiffs respectfully request that this Court enter judgment in their favor and against ED&F as follows:

I.      Enter judgment in favor of the Third-Party Plaintiffs against ED&F on the third-party claims against ED&F;

II.     Apportion all fault to ED&F for SKAT's claims against Third-Party Plaintiffs, pursuant to the Utah Liability Reform Act, Utah Code §§ 78B-5-817, et seq.;

III.    In the event SKAT successfully proves its claims against Third-Party Plaintiffs, require ED&F to indemnify Third-Party Plaintiffs for all costs arising out of or related to SKAT's claims against the Third-Party Plaintiffs and these third-party claims, including the Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest, costs, and expenses;

IV.     Award the Third-Party Plaintiffs their attorneys' fees and costs; and

18

V.   Grant such other preliminary, permanent, compensatory, or punitive relief against
     ED&F and in favor of the Third-Party Plaintiffs as the Court deems just and proper.

August 12, 2019                          Respectfully submitted,

                                         K&L GATES LLP


                                         */s/ John C. Blessington*
                                         John C. Blessington (*pro hac vice*)
                                           john.blessington@klgates.com
                                         Brandon R. Dillman (*pro hac vice*)
                                           brandon.dillman@klgates.com
                                         K&L GATES LLP
                                         State Street Financial Center
                                         One Lincoln Street
                                         Boston, MA  02111
                                         T: 617.261.3100
                                         F: 617.261.3175

                                         *Attorneys for Defendants / Third-Party Plaintiffs*
                                         *DW Construction, Inc. Retirement Plan,*
                                         *Kamco Investments, Inc. Pension Plan,*
                                         *Kamco LP Profit Sharing Pension Plan,*
                                         *Moira Associates Defined Benefit Plan,*
                                         *Linden Associates Defined Benefit Plan,*
                                         *Riverside Associates Defined Benefit Plan,*
                                         *American Investment Group of New York,*
                                         *L.P. Pension Plan, Stacey Kaminer, Joan*
                                         *Schulman, and David Schulman*