UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:   18-cv-10100<br><br>--------------------------------------------------------<br><br>NEWSONG FELLOWSHIP CHURCH 401(K) PLAN and ALEXANDER JAMIE MITCHELL III,<br><br>   Third-Party Plaintiffs,<br><br>v.<br><br>ED&F MAN CAPITAL MARKETS LTD.,<br><br>   Third-Party Defendant. | MASTER DOCKET<br><br>18-md-2865 (LAK)<br><br><br><br><br><br>**THIRD-PARTY COMPLAINT<br>AND JURY DEMAND** |

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendants/Third-Party Plaintiffs Newsong Fellowship Church 401(k) Plan ("the Plan") and Alexander Jamie Mitchell (the "Trustee") (together, "Third-Party Plaintiffs"), bring the following third-party claims against the Plan's broker-custodian, Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F"). Third-Party Plaintiffs firmly believe the Plan is entitled to the withholding-tax refunds the Plan claimed from Plaintiff Skatteforvaltningen ("SKAT") and that SKAT now wants returned in its actions against the Third-Party Plaintiffs. If, however, SKAT's allegations against Third-Party Plaintiffs are proven to be true, then ED&F — not Third-Party Plaintiffs — should be responsible

because ED&F (1) managed, controlled, and executed the Plan's Danish securities transactions, which are the focus of SKAT's claims; (2) provided all of the information concerning the Plan's securities, dividends, and withholding-tax information on which Third-Party Plaintiffs relied; and (3) collected fees in connection with the Plan's securities transactions and withholding-tax refunds.

## PARTIES

1.      The Plan was a U.S. pension plan.  Before it dissolved, the Plan was a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation. At all relevant times, the Plan was located at 1102 Millersville Pike, Lancaster, Pennsylvania, 17603.

2.      At all relevant times, Acer Investment Group, LLC ("Acer") was the attorney in fact for the Plan in connection with the transactions involving ED&F that give rise to these third-party claims.  Acer is a limited liability company registered to do business in Utah with an office address of 5532 Lillehammer Lane, Suite 103, Park City, Utah, 84098.

3.      Alexander Jamie Mitchell III is a citizen of the United States.  At all relevant times herein, Mitchell was a resident of the Commonwealth of Pennsylvania and trustee for the Plan.

4.      ED&F is a financial brokerage business and financial servicer headquartered at 3 London Bridge Street, London, SE1 9SG, United Kingdom.  At all relevant times, ED&F managed and controlled brokerage account for the Plan, executed trades in Danish securities for the Plan, provided documentation and information to the Plan in connection with the Plan's account and securities transactions, and collected fees in connection with the Plan's withholding-tax refund requests.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because the claims are between U.S. citizens and citizens of foreign states. This Court also has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367 because the third-party claims form part of the same case or controversy as SKAT's claims.

6. This action was transferred from the United States District Court for the Eastern District of Pennsylvania to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407. This Court, as the transferee court, must apply the law of the transferor court to determine whether it can exercise personal jurisdiction.

7. This Court has personal jurisdiction over ED&F because ED&F's conduct giving rise to these third-party claims was purposefully directed toward residents of the Commonwealth of Pennsylvania and because ED&F transacted business with the Plan at the time when it existed in Pennsylvania.

8. These third-party claims are properly venued for pretrial purposes in the United States District Court for the Southern District of New York because this action was transferred to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407. These third-party claims are properly venued for trial in the United States District Court for the Eastern District of Pennsylvania because ED&F is subject to that court's personal jurisdiction.

9. By filing these third-party claims in the United States District Court for the Southern District of New York, Third-Party Plaintiffs do not waive their respective rights to have SKAT's claims or these third-party claims transferred back to the United States District Court for the Eastern District of Pennsylvania for purposes of trial.

## STATEMENT OF FACTS

**A. ED&F entered into various agreements with the Plan pursuant to which ED&F agreed to exercise reasonable care in relation to the Plan's transactions and account.**

10. ED&F is a broker registered with the Financial Conduct Authority ("FCA"), which regulates the UK financial and securities markets.

11. In 2012, the Plan and ED&F executed various agreements (the "Agreements") that set forth ED&F's obligations as broker-custodian for the Plan. The Agreements include a Custody Agreement, Security and Set-Off Deed, ISDA Master Agreement, and Terms and Condition of Business, with variations thereto.

12. The Plan's Custody Agreement with ED&F is attached hereto as Exhibit A.

13. Pursuant to the Agreements, the Plan maintained a brokerage account with ED&F since at least June 2012.

14. ED&F was required to exercise reasonable care when, among other things, (i) buying or selling securities for the Plan; (ii) keeping records and statements concerning the Plan's account and securities; (iii) acting on the Plan's instructions; (iv) registering the Plan's securities in compliance with FCA regulations; and (v) crediting all income, dividends, and other proceeds on the Plan's securities only after actual receipt and reconciliation.

15. ED&F's obligations prohibited ED&F from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plan's securities holdings and brokerage account.

16. The Plan designated Acer as its attorney-in-fact in connection with investments in U.S. and foreign securities transactions conducted through the Plan's ED&F brokerage account.

17. ED&F agreed to communicate with the Plan through Acer and, during all relevant times, ED&F routinely communicated with the Plan through Acer in relation to ED&F's dealings

with the Plan, which are described more fully below. On information and belief, at all relevant times, ED&F was aware that its client, the Plan, was located in Pennsylvania.

**B. The Plan engaged ED&F in relation to Danish securities, received dividends net of withholding taxes on its holdings, and applied for withholding-tax refunds from SKAT based on the information provided by ED&F.**

18. At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

19. Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

20. At all relevant times, SKAT served the Danish government as the agency responsible for refunding dividend withholding taxes, including refunds of dividend withholding taxes owed to U.S. pension plans.

21. Between March 2014 and September 2014, the Plan engaged ED&F to buy and sell shares of certain Danish companies.

22. As a result, ED&F generated a number of documents detailing and describing each of the transactions, including buy/sell confirmations for the Plan's transactions, account statements showing that the transactions occurred, and tax vouchers describing the Plan's security holdings and related withholding-taxes.

23. ED&F provided documents and information concerning the Plan's holdings, security interests, and withholding-taxes to the Plan through Acer.

24. According to the information and documents provided by ED&F, the Plan's holding of shares in Danish companies resulted in the crediting of dividends to the Plan's brokerage account.

25. On information and belief, including information provided by ED&F, the Plan held securities in Danish companies in it ED&F brokerage account on or around the relevant record dates for payment of dividends (the "Holdings") and received dividends net of withholding taxes on those securities (the "Dividends").

### C. Third-Party Plaintiffs relied on ED&F when the Plan applied for withholding-tax refunds from SKAT.

26. Third-Party Plaintiffs entrusted ED&F, as custodian for the Plan, with the management and control of the Plan's brokerage account, the execution of securities transactions for the Plan, and the preparation of any tax vouchers related thereto.

27. ED&F prepared such tax vouchers (the "Tax Vouchers") by which ED&F confirmed the Plan's relevant shareholdings over the applicable dividend dates and described the Dividends received by the Plan net of withholding taxes.

28. ED&F prepared a Tax Voucher for the each of the Plan's Holdings and Dividends.

29. The Plan, through Acer, received the Tax Vouchers from ED&F.

30. With each of the Tax Vouchers, ED&F stated that it "has no beneficial interest in the holding and will not be reclaiming the tax. The dividends specified on this credit advice were paid net of withholding tax to [the Plan]." For example:



31. Attached hereto as Exhibit B are the four (4) Tax Vouchers provided by ED&F for the Plan's withholding-tax refunds.

7

32. At all relevant times, ED&F was uniquely positioned to confirm the status of the Plan's Holdings, Dividends, brokerage account, securities transactions, and entitlement to dividend withholding taxes.

33. Third-Party Plaintiffs placed their confidence in ED&F to act primarily for the benefit of the Plan and placed the Plan's property, interests, and trust in the charge of ED&F.

34. On information and belief, ED&F was the only entity that had direct control over the information concerning, among other things, the Plan's brokerage account, securities in that account, receipt of dividends, and entitlement to dividend withholding taxes.

35. After ED&F confirmed that the Plan received the Dividends net of withholding taxes, ED&F sent the Tax Vouchers to Goal Taxback Ltd. ("Goal Taxback"), a third-party payment-processing agent, who then submitted the applications for withholding-tax refunds to SKAT on behalf of the Plan.

36. Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plan's Holdings and Dividends were accurate; (ii) the Plan actually held the securities it represented to SKAT that it owned; (iii) the Plan received the Dividends; (iv) dividend tax was withheld in relation to the Dividends and the Holdings; and (v) the Plan was entitled to withholding-tax refunds from SKAT.

37. Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

38. SKAT paid the Plan through Goal Taxback for all of the Plan's withholding-tax refunds.

8

39. In 2018, SKAT sued Third-Party Plaintiffs seeking damages and/or restitution in the amount of the withholding-tax refunds SKAT paid to the Plan, alleging fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, money had and received, and payment by mistake.

40. SKAT voluntarily dismissed its claims for fraud, aiding and abetting fraud, and negligent misrepresentation on November 20, 2018. *See* Plaintiff's Notice of Partial Voluntary Dismissal (CA 18-cv-10100), Doc. No. 34. On June 12, 2019, the Court dismissed SKAT's payment-by-mistake claim. *See* Pretial Order No. 8 (CA 18-md-2865), Doc. No.133.

41. Thus, as currently pleaded, SKAT alleges Third-Party Plaintiffs owe SKAT $ 664,000.00 based on theories of unjust enrichment and money had and received.

**D. If SKAT proves the Plan did not own the shares it claimed to own, did not earn the dividends it claimed to have earned, or was otherwise not entitled to the withholding taxes it claimed, then ED&F should be responsible for any amounts claimed by SKAT.**

42. SKAT alleges Third-Party Plaintiffs misrepresented the Plan's Holdings and Dividends when the Plan requested the withholding-tax refunds.

43. SKAT alleges that each Plan did not own the shares that it claimed to own, did not earn the dividends it claimed to have earned, and was not entitled to the tax refunds that it claimed.

44. SKAT also alleges that ED&F provided statements falsely representing that the Plan owned shares in Danish companies and had earned dividends on those shares.

45. To be clear, the Plan have never attempted to defraud or commit other wrongful actions against SKAT.[1]

---

[1] SKAT sued ED&F in the United Kingdom (the "U.K. Proceeding") over the same transactions that are the basis of SKAT's claims against Third-Party Plaintiffs. Notably, however, in the U.K. Proceeding, SKAT did not allege that ED&F committed any fraud. Instead, SKAT described ED&F as a "non-fraud defendant" and only accused ED&F of *negligent* misrepresentation. SKAT's positions in the two litigations are inconsistent. Third-Plaintiffs wholly relied on

9

46. If, however, SKAT proves its claims and establishes that Third-Party Plaintiffs are liable to SKAT for some or all of SKAT's alleged damages or amounts it claims to be owed, then ED&F should be responsible for such damages because of ED&F's obligations under the Agreements and because of its unique position by which it managed and controlled the Plan's brokerage account, executed securities transactions for the Plan, and confirmed the Plan's Holdings, Dividends, and withholding-tax refunds.

### E. Alternatively, ED&F must repay the fees it collected in relation to the Plan's transactions and withholding-tax refunds if SKAT is entitled to damages or restitution.

47. Parties that facilitate securities transactions and related transactions typically charge fees. Fees are often charged as a percentage of the total profit or cost of the transaction. This is common in many service-oriented industries and is simply understood as the "cost of doing business."

48. As should be expected, ED&F collected fees from the Plan in connection with the Plan's transactions, Holdings, Dividends, and/or withholding-tax refunds.

49. If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT reimbursed or refunded to the Plan, then ED&F should be required, at a minimum, to return any fees it collected from the Plan in connection with the Plan's transactions, Holdings, Dividends, and/or withholding-tax refunds.

---

documents and information provided by ED&F as custodian for the Plan. Accordingly, SKAT should not be allowed to accuse Third-Party Plaintiffs of fraud in this litigation while taking the position in the U.K. Proceeding that ED&F is a "non-fraud defendant."

## THIRD-PARTY CLAIM COUNT I
### Breach of Contract – *The Plan v. ED&F*

50.     The Plan repeats and realleges paragraphs 1 through 49 of these Third-Party Claims as if set forth fully herein.

51.     The Agreements between the Plan and ED&F constitute binding and enforceable contracts.

52.     The Plan performed its obligations under the Agreements at all relevant times.

53.     ED&F's obligations required ED&F to exercise reasonable care when, among other things, (i) buying or selling securities for the Plan; (ii) keeping records and statements concerning the Plan's brokerage account and ownership of securities; (iii) acting on the Plan's instructions; (iv) registering the Plan's securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plan's securities only after actual receipt and reconciliation.

54.     ED&F's obligations prohibited ED&F from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plan's securities holdings and brokerage account.

55.     SKAT's claims against Third-Party Plaintiffs involve issues and circumstances for which any liability of the Plan or Trustees, if any exists, rests with ED&F.

56.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached the Agreements, and the Plan will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches of contract.

57.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to the Plan for any amounts or

11

other remedies the Plan is found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

## THIRD-PARTY CLAIM COUNT II
### Breach of Fiduciary Duty – *Third-Party Plaintiffs v. ED&F*

58. Third-Party Plaintiffs repeat and reallege paragraphs 1 through 57 of these Third-Party Claims as if set forth fully herein.

59. ED&F, as custodian to the Plan, had a fiduciary relationship with Third-Party Plaintiffs. Third-Party Plaintiffs placed their confidence in ED&F to act in good faith and primarily for the benefit of the Plan and placed the Plan's property, interests, and trust in the charge of ED&F. ED&F was uniquely positioned to confirm the Plan's Holdings, Dividends, brokerage account, securities transactions, and entitlement to dividend withholding taxes.

60. On information and belief, ED&F was the only entity that had direct control over information concerning, among other things, the Plan's brokerage account, securities transactions, receipt of dividends, and entitlement to dividend withholding taxes.

61. Because of its fiduciary relationship with Third-Party Plaintiffs, ED&F was required to deal truthfully and primarily for the benefit of the Plan at all times, to exercise reasonable care, skill, and diligence, and to advise Third-Party Plaintiffs of all relevant facts and circumstances known to ED&F.

62. ED&F's fiduciary duties are separate and distinct from its contractual obligations to the Plan under the Agreements.

63. If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached its fiduciary obligations owed to Third-Party Plaintiffs, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches.

64. Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT III
### Promissory Estoppel – *Third-Party Plaintiffs v. ED&F*

65. Third-Party Plaintiffs repeat and reallege paragraphs 1 through 64 of these Third-Party Claims as if set forth fully herein.

66. ED&F promised to exercise reasonable care when, among other things, (i) buying or selling securities for the Plan; (ii) keeping records and statements concerning the Plan's brokerage account and ownership of securities; (iii) acting on the Plan's instructions; (iv) registering the Plan's securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plan's securities only after actual receipt and reconciliation.

67. ED&F promised to create only truthful and accurate documents in relation to the Plan's account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plan's securities holdings and brokerage account.

68. ED&F should have reasonably expected — and, on information and belief, did reasonably expect — its promises to induce Third-Party Plaintiffs to rely on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plan's Holdings and Dividends were, in fact, accurate and legitimate; (ii) the Plan actually held the securities it represented to SKAT that it owned; (iii) the Plan actually received the Dividends it claimed to have received; (iv) taxes were withheld in relation to the Dividends and Holdings; and (v) the Plan was entitled to the withholding-tax refunds.

13

69. Third-Party Plaintiffs acted with prudence and in reasonable reliance on ED&F's promises when they authorized Goal Taxback to submit applications for the withholding-tax refunds from SKAT and refrained from seeking from any other party a tax voucher or other documentation to support the Plan's tax-withholding refund claims.  On information and belief, ED&F knew that Third-Party Plaintiffs so relied on ED&F's promises.

70. ED&F knew all important and material facts concerning its promises, the Holdings, the Dividends, and the withholding-tax refunds.

71. If, as SKAT alleges, the Plan never held the shares it claimed to own, never received the dividends it claimed to have received, and/or are otherwise not entitled to the withholding-tax refunds, then ED&F failed to fulfill its promises, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a result of ED&F's failure to fulfill its promises.

72. Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

**THIRD-PARTY CLAIM COUNT IV**
**Unjust Enrichment – *Third-Party Plaintiffs v. ED&F***

73. Third-Party Plaintiffs repeat and reallege paragraphs 1 through 72 of these Third-Party Claims as if set forth fully herein.

74. ED&F collected fees from the Plan in connection with the Plan's transactions, Holdings, Dividends, and withholding-tax refunds.

75. SKAT has alleged that the Plan's transactions, Holdings, and Dividends were falsified and that the Plan was not entitled to the withholding-tax refunds from SKAT.

14

76. It would be unjust for ED&F to retain the fees it collected in connection with the Plan's transactions, Holdings, Dividends, and withholding-tax refunds if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plan.

77. On information and belief, ED&F knowingly possesses the fees it collected from the Plan.

78. Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plan, then ED&F will have been unjustly enriched in the amount of the fees it collected from the Plan, and ED&F should be liable to account and return the fees, plus interest.

### THIRD-PARTY CLAIM COUNT V
### Equitable Indemnification – *Third-Party Plaintiffs v. ED&F*

79. Third-Party Plaintiffs repeat and reallege paragraphs 1 through 78 of these Third-Party Claims as if set forth fully herein.

80. If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then Third-Party Plaintiffs will be liable to SKAT or will be obligated to repay SKAT the entire amount of the withholding-tax refunds paid by SKAT to the Plan.

81. However, as alleged herein, Third-Party Plaintiffs relied on ED&F and ED&F's own statements, and furthermore, SKAT has alleged that it was ED&F that provided the statements falsely representing that the Plan owned shares in Danish companies and had earned dividends on those shares.

82. Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to indemnify Third-Party

Plaintiffs for all costs they have incurred and may incur as a result of any of SKAT's claims, including, but not limited to, (i) any amounts owed by Third-Party Plaintiffs to SKAT or, in the alternative, any amounts ED&F received in connection with the Plan's transactions, Holdings, Dividends, and withholding-tax refunds, and (ii) any of the Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest and other expenses arising out of or related to these third-party claims and SKAT's claims against the Third-Party Plaintiffs.

## **JURY DEMAND**

Third-Party Plaintiffs demand a jury trial on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Third-Party Plaintiffs respectfully request that this Court enter judgment in their favor and against ED&F as follows:

I. Enter judgment in favor of the Third-Party Plaintiffs against ED&F on the third-party claims against ED&F;

II. Apportion all fault to ED&F for SKAT's claims against Third-Party Plaintiffs;

III. In the event SKAT successfully proves its claims against Third-Party Plaintiffs, require ED&F to indemnify Third-Party Plaintiffs for all costs arising out of or related to SKAT's claims against the Third-Party Plaintiffs and these third-party claims, including the Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest, costs, and expenses;

IV. Award the Third-Party Plaintiffs their attorneys' fees and costs; and

V. Grant such other preliminary, permanent, compensatory, or punitive relief against ED&F and in favor of the Third-Party Plaintiffs as the Court deems just and proper.

<table>
<tr><td>August 12, 2019</td><td>Respectfully submitted,<br><br>K&L GATES LLP<br><br>*/s/ John C. Blessington*<br>John C. Blessington (*pro hac vice*)<br>  john.blessington@klgates.com<br>Brandon R. Dillman (*pro hac vice*)<br>  brandon.dillman@klgates.com<br>K&L GATES LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA  02111<br>T: 617.261.3100<br>F: 617.261.3175<br><br>*Attorneys for Defendants / Third-Party Plaintiffs*<br>*Newsong Fellowship Church 401(k) Plan*<br>*and Alexander Jamie Mitchell III*</td></tr>
</table>