**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos. 18-CV-09797;
18-CV-09836; 18-CV-09837; 18-CV-09838;
18-CV-09839; 18-CV-09840; 18-CV-09841.

MASTER DOCKET

18-MD-2865 (LAK)

**PLAINTIFF-COUNTERCLAIM-DEFENDANT
SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE PLAN DEFENDANTS' COUNTERCLAIMS**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
John T. McGoey
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ...........................................................................................................2

LEGAL STANDARDS ....................................................................................................5

ARGUMENT ................................................................................................................5

I.     THE UTAH PLANS' CLAIMS ARE BARRED
       BY THE ACT OF STATE DOCTRINE. ............................................................5

II.    THE UTAH PLANS' EQUITABLE CLAIMS SHOULD
       BE DISMISSED BECAUSE THEY FAIL TO PLEAD THEY
       EXHAUSTED AVAILABLE LEGAL REMEDIES.........................................8

III.   THE UTAH PLANS FAIL TO STATE
       A CLAIM FOR PROMISSORY ESTOPPEL. .................................................10

IV.    THE UTAH PLANS FAIL TO STATE
       A CLAIM FOR UNJUST ENRICHMENT.......................................................12

CONCLUSION............................................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................5

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ................................................5, 6, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................5

*Bivens v. Salt Lake City Corp.*, 416 P.3d 338 (Utah 2017).......................................................8, 10

*Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773 (Utah 1977).....................8, 13

*Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580 (Utah 2000).........................................12, 13

*Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co.*,
   652 F.2d 231 (2d Cir. 1981)..................................................................................7

*Evans v. ReconTrust Co., N.A.*, No. 2:11CV547DAK, 2012 WL 1076267
   (D. Utah Mar. 29, 2012).................................................................................12

*FOGADE v. ENB Revocable Trust*, 263 F.3d 1274 (11th Cir. 2001) .............................................7

*Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d
   1228 (D. Utah 2015) ....................................................................................11, 12

*Hogan v. Utah Telecomm. Open Infrastructure Agency*, 566 F. App'x 636
   (10th Cir. 2014)...........................................................................................11

*Hogan v. Utah Telecomm. Open Infrastructure Agency*, No. 1:11-CV-64 TS,
   2011 WL 4963021 (D. Utah Oct. 18, 2011) ...................................................11

*Knight v. Post*, 748 P.2d 1097 (Utah Ct. App. 1988) ...........................................................10, 13

*Konowaloff v. Metropolitan Museum of Art*, 702 F.3d 140 (2d Cir. 2012) .................................6, 7

*Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003 (10th Cir. 2002) ......................................................11

*Nickerson Co. v. Energy W. Mining Co.*, No. 20090221-CA, 2009 WL 4681778
   (Utah Ct. App. Dec. 10, 2009)......................................................................10

*Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077 (Utah 1999) ...........................................11

*In re Parmalat Secs. Litig.*, 377 F. Supp. 2d 390 (S.D.N.Y. 2005)..............................................8

*Riggs Nat'l Corp. v. Comm'r*, 163 F.3d 1363 (D.C. Cir. 1999) .................................................6, 7

ii

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ............................................................5

*Shappley v. Amedica Corp.*, No. 2:11-cv-1198, 2012 WL 13018829
(D. Utah Mar. 1, 2012)............................................................................................8

*In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019)..................9

*TFG-Ill., L.P. v. United Maint. Co.*, 829 F. Supp. 2d 1097 (D. Utah 2011).............8, 10

*Thorpe v. Washington City*, 243 P.3d 500 (Utah Ct. App. 2010) ....................................8

*Underhill v. Hernandez*, 168 U.S. 250 (1897)................................................................5

*UTCO Assocs., Ltd. v. Zimmerman*, 27 P.3d 177 (Utah Ct. App. 2001) ........................8

*VCS, Inc. v. Utah Cmty. Bank*, 293 P.3d 290 (Utah 2012) ............................................8

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400 (1990) .........6

*Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088 (Utah 2007).........................11, 12

**Statutes and Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................5

**Other Authorities**

United States-Denmark Tax Treaty, Article 25, May 6, 1948, Treaty Doc. No.
106-12 (effective date Jan. 1, 2001)........................................................................9

Plaintiff-counterclaim-defendant Skatteforvaltningen ("SKAT"), the Customs and Tax Administration of the Kingdom of Denmark, respectfully submits this memorandum of law in support of its motion to dismiss the counterclaims of the defendants-counterclaimants in these seven actions (the "Utah Plans").[1]

## PRELIMINARY STATEMENT

The Utah Plans' equitable claims for unjust enrichment and promissory estoppel—seeking to challenge SKAT's decisions that the Plans were not entitled to the refunds they claimed because they did not own the shares of stock they claimed to own and thus did not receive the dividends they claimed to have received—are barred by the act of state doctrine.

Based on separation of powers concerns, the doctrine requires the Court to abstain from deciding a case that turns on the validity of an official act by a foreign sovereign performed within its own territory. That the doctrine precludes the Utah Plans' claims is clear from the face of their pleadings. The Plans allege that SKAT is the Danish government authority charged with reviewing refund applications, and that in an exercise of its authority, SKAT determined that the claims should be denied. Under the act of state doctrine, that determination is not subject to review by this Court.

In addition, the Utah Plans' equitable claims—based on SKAT's refusal to continue paying withholding tax refunds to entities that deceived it into paying millions of dollars in

---

1. The Utah Plan defendant-counterclaimants are DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates LLC 401(k) Plan, Riverside Associates Defined Benefit Plan, and American Investment Group of New York, L.P. Pension Plan. The Utah Plan's answers to SKAT's complaints and counterclaims against SKAT are attached as exhibits 1-7 to the Declaration of Marc A. Weinstein, dated August 19, 2019 (the "Weinstein Decl.").

fraudulent refund applications—also should be dismissed for failure to state a claim on which relief can be granted.

The Utah Plans may not assert equitable claims against SKAT without first having exhausted their available legal remedies, which they have not done.  Although the Utah Plans contend that SKAT's refusal to pay their last refund applications violated the United States-Denmark tax treaty (the "Treaty"), they fail to allege that they availed themselves of their right to appeal SKAT's denial of these claims in Denmark or of the dispute resolution procedure provided for in the Treaty.

Further, the Plans fail to plead the elements of either claim.  The promissory estoppel claims fail principally because the Plans do not allege that SKAT ever made a reasonably certain and definite promise to pay their refund applications.  The Plans allege that SKAT's past practice of paying applications that were supported by certain documentation constituted a promise to continue paying similarly supported applications indefinitely—no matter the circumstances.  But the Plans' subjective understanding based on SKAT's past practice does not constitute a promise, let alone one on which they could have reasonably relied.

The unjust enrichment claims fail because the Plans do not allege circumstances under which SKAT's refusal to continue paying their refund applications was inequitable, particularly given that the Plans did not appeal SKAT's decisions to do so.

## <u>BACKGROUND</u>

SKAT is the Customs and Tax Administration of the Kingdom of Denmark, the authority responsible for assessing and collecting taxes in Denmark and issuing tax refunds to claimants.

(Counterclaim ¶ 2.)[2]  On June 7, 2018, SKAT filed its complaints against the Utah Plans and their authorized representatives, alleging that the defendants submitted fraudulent applications for refunds of tax withheld from dividends issued on shares of Danish stock that they purported to own.  (*See generally* Compl.)[3]  SKAT alleges that the applications were fraudulent because the Utah Plans did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed.  (*Id.* ¶ 4.)  SKAT's complaints plead five causes of action against the Utah Plans for fraud, aiding and abetting fraud, unjust enrichment, money had and received, and negligent misrepresentation.  (*Id.* ¶¶ 51-76.)

**The Utah Plans' Counterclaims**

On July 29, 2019, the Utah Plans filed their answers to SKAT's complaints and counterclaims against SKAT, each purporting to assert two causes of action for unjust enrichment and promissory estoppel.  (Counterclaim ¶¶ 44-59.)

The Utah Plans allege that during 2014 and 2015, they submitted to SKAT applications for refunds of taxes withheld from dividends the Plans received on shares of Danish stock pursuant to the Treaty.  (*Id.* ¶ 13.)  The Plans allege that SKAT paid their refund applications until August 2015, when SKAT discovered it had been the victim of a massive fraud that it contends the Utah Plans participated in and "stopped paying dividend-withholding tax refund

---

2.  The Utah Plans' counterclaims against SKAT are substantively identical.  "Counterclaim" refers to Riverside Associates Defined Benefit Plan's counterclaims in the action captioned *SKAT v. Riverside Associates Defined Benefit Plan & David Schulman*, No. 18-cv-09840, ECF No. 56.  (Weinstein Decl. Ex. 1.)

3.  SKAT's complaints against each of the Utah Plans and their authorized representatives are similar.  "Compl." refers to SKAT's complaint in its action captioned *SKAT v. Riverside Associates Defined Benefit Plan & David Schulman*, No. 18-cv-09840, ECF No. 2.  (Weinstein Decl. Ex. 8.)

requests." (*Id.* ¶ 17.)  The Plans allege that they each had either one or two refund applications pending that SKAT refused to pay.  (*Id.* ¶¶ 18, 42.)

In October 2016 and April 2017, SKAT issued decisions to each of the Plans denying their refund applications.  (Weinstein Decl. Ex. 9.)[4]  The decisions explained that the respective Plan did "not meet the requirements to receive repayment of withheld dividend tax from Danish shares," in that the Plan had not documented "the purchase of the shares for which the dividend tax is requested," the Plan's "ownership on the dividend date of the shares in question," or that the Plan "received dividends regarding the shares in question."  (*Id.* at 21.)  And each provided that if the Plan "disagrees with SKAT's decision, it can be appealed to the Tax Appeals Board," which "must receive the appeal at least three months from receipt of this decision."  (*Id.* at 22.) SKAT's decisions further informed the Plans of the required format for an appeal, directions on how to file an appeal, and the associated costs.  (*Id.*)  The Utah Plans do not allege that they appealed SKAT's decisions to deny their refund applications.

The Plans do not allege that they had any agreement with SKAT, SKAT ever promised to approve and pay their refund applications, or outside of submitting the applications, they ever had any interaction with SKAT.  Rather, the Plans simply allege that "SKAT created the process by which it would receive, review, and either deny or accept" refund applications, and that

_____

4.    SKAT's decisions denying each of the Plans' refund applications are substantively similar.  A copy of SKAT's decision denying the Riverside Associates Defined Benefit Plan's refund application, with an accompanying English translation, is attached as Exhibit 9 to the Weinstein Decl.

process constituted a "promise" by SKAT "to pay all dividend-withholding tax refund requests that were supported by" certain documentation. (Counterclaim ¶¶ 51-52.)

While the Plans allege that SKAT's refusal to pay their refund applications is "in contravention of" the Treaty, (*id.* ¶ 46), the Plans do not allege that they attempted to avail themselves of any remedies under the Treaty.

## LEGAL STANDARDS

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's factual allegations are accepted as true and reasonable inferences are drawn in favor of the claimant, but the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where the allegations are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 544 U.S. at 557).

## ARGUMENT

## I.     THE UTAH PLANS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE.

Under the act of state doctrine, "[e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 416 (1964) (quoting *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897)). The doctrine applies when "the relief sought or the defense interposed"

by a party "would [require] a court in the United State to declare invalid the official act of a foreign sovereign performed within" its boundaries. *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 405 (1990).

"The doctrine directs United States courts to refrain from deciding a case when the outcome turns upon the legality or illegality (whether as a matter of U.S., foreign, or international law) of official action by a foreign sovereign performed within its own territory." *Riggs Nat'l Corp. v. Comm'r*, 163 F.3d 1363, 1367 (D.C. Cir. 1999). And it arises out of separation of powers concerns, reflecting "'the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." *Kirkpatrick*, 493 U.S. at 404 (quoting *Sabbatino*, 376 U.S. at 423). Courts "may properly grant a motion to dismiss on the basis of [the act of state] doctrine when its applicability is shown on the face of the complaint." *Konowaloff v. Metropolitan Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012).

There is no dispute that SKAT is the Danish governmental authority responsible for reviewing withholding tax refund applications. (Counterclaim ¶ 2.) The Utah Plans allege that SKAT is the Danish authority that "created the process by which it would receive, review, and either deny or accept applications for dividend-withholding taxes." (*Id.* ¶ 51.) Further, the Utah Plans' pleadings are clear that it is SKAT's official decisions denying their applications that they seek to challenge by their claims. (*See, e.g.*, *id.* ¶ 47 ("By retaining the Unpaid Refunds to which the [Plan] is entitled, SKAT has been unjustly enriched.").)

When a foreign sovereign takes an official action, such as SKAT's decisions that the Plans did not document sufficiently that they owned the shares they claimed to own, the act of state doctrine requires that "the details of such action or the merit of the result cannot be

6

questioned but must be accepted by our courts as a rule for their decision." *Konowaloff*, 702 F.3d at 146 (internal quotation omitted).  The Utah Plans' counterclaims are thus barred by the act of state doctrine because their outcome turns on the validity of SKAT's, *i.e.* the Danish government's, official acts denying their refund applications for dividend withholding tax because the Plans never proved they owned the shares for which the dividends were paid.  *See Riggs*, 163 F.3d at 1368 (act of state doctrine "require[d] . . . abstain[ing] from even engaging in . . . an inquiry" concerning Brazilian "Minister's order to the Central Bank to withhold and pay the income tax on the interest paid to the Bank").

Nor is it significant to the applicability of the doctrine that SKAT has availed itself of this Court's jurisdiction.  *See Sabbatino*, 376 U.S. at 420, 437 (rejecting argument that "the doctrine may not be invoked by a foreign government plaintiff in our courts"); *FOGADE v. ENB Revocable Trust*, 263 F.3d 1274, 1296 (11th Cir. 2001) (act of state doctrine barred affirmative defenses asserted against Venezuelan governmental entity's claims).  As the Second Circuit has explained, while "[i]n certain cases . . . the result of applying the act of state doctrine may be inequitable in that it permits a foreign state to collect on its direct claim while avoiding counterclaim liability . . . otherwise applicable policy considerations require that the act of state doctrine not be abandoned merely because the sovereign appears as plaintiff." *Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co.*, 652 F.2d 231, 239 (2d Cir. 1981).

## II.    THE UTAH PLANS' EQUITABLE CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO PLEAD THEY EXHAUSTED AVAILABLE LEGAL REMEDIES.

Unjust enrichment and promissory estoppel are equitable claims under Utah law.[5]  *See Bivens v. Salt Lake City Corp.*, 416 P.3d 338, 350 (Utah 2017) (unjust enrichment); *UTCO Assocs., Ltd. v. Zimmerman*, 27 P.3d 177, 182 (Utah Ct. App. 2001) (promissory estoppel). Because "equitable remedies are secondary gap-fillers . . . . aimed at deficiencies left after exhaustion of primary legal claims," before "invoking equity," parties are "generally required to first 'exhaust any legal remedies available.'"  *VCS, Inc. v. Utah Cmty. Bank*, 293 P.3d 290, 299 (Utah 2012) (quoting *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977)).

A party that fails to exhaust its legal remedies or provide "a legitimate excuse" for failing to do so, "forfeit[s]" its "equitable claims."  *Bivens*, 416 P.3d at 351.  And "when seeking an equitable remedy, a plaintiff 'must affirmatively show a lack of an adequate remedy at law on the face of the pleading.'"  *TFG-Ill., L.P. v. United Maint. Co.*, 829 F. Supp. 2d 1097, 1117 (D. Utah 2011) (quoting *Thorpe v. Washington City*, 243 P.3d 500, 507 (Utah Ct. App. 2010)); *accord Shappley v. Amedica Corp.*, No. 2:11-cv-1198, 2012 WL 13018829, at *2 (D. Utah Mar. 1, 2012) ("Where the complaint wholly fails to allege the lack of an adequate legal remedy, equitable claims fail as a matter of law." (internal quotation omitted)).

The Utah Plans' equitable claims should be dismissed because they failed to plead exhaustion of their available legal remedies.  While the Plans allege that "SKAT refused to pay

---

5.  "As the transferee forum in [these] diversity actions, the Court applies the substantive law that would be applied by the transferor forum," in this case, the District of Utah.  *In re Parmalat Secs. Litig.*, 377 F. Supp. 2d 390, 402 n.78 (S.D.N.Y. 2005).  SKAT assumes, strictly for the purposes of this motion, that Utah law applies to the Plans' unjust enrichment and promissory estoppel causes of action.  SKAT does not concede that Utah law applies to these claims or for all purposes in these actions, and reserves the right to argue the applicability of the laws of other jurisdictions as appropriate.

the Unpaid Refunds," (Counterclaim ¶ 41), they do not allege that the Plans appealed SKAT's decisions to deny their refund applications in Denmark.  *See In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 319-20 (S.D.N.Y. 2019) (rejecting defendants' argument based on "the availability of an administrative appeal" in Denmark); (Weinstein Decl. Ex. 9 at 21 (if the Plan "disagrees with SKAT's decision, it can be appealed to the Tax Appeals Board")).[6]

Moreover, to the extent the Plans' claims are premised on a violation of the Treaty, (*see* Counterclaim ¶ 41 (alleging that SKAT's decision was "in contravention of the U.S-Denmark Tax Treaty")), the Plans do not allege that they availed themselves of remedies under Article 25 of the Treaty.  Article 25 of the Treaty provides that "[w]here a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may . . . present his case to the competent authority of the Contracting State of which he is a resident or national."  *See* Convention and Protocol Amending the Convention between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 25, May 6, 1948, Treaty Doc. No. 106-12 (effective date Jan. 1, 2001).  If "the objection appears . . . to be justified," the "competent authority shall endeavor . . . to resolve the case by mutual agreement with the competent authority of the other Contracting State."  *Id.*  The Plans do not allege to have taken any such steps.[7]

---

6.    The Court may consider, on this Rule 12(b)(6) motion, SKAT's decisions denying the Plans' refund applications as they are incorporated by reference in the Counterclaims and the Plans relied on their effect in alleging that SKAT refused to pay their applications.  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes," courts may consider "documents attached to the complaint as an exhibit or incorporated in it by reference" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

7.    SKAT does not agree that the provisions of Article 25 of the Treaty are, in fact, applicable to the Utah Plans' refund applications.  *See In re SKAT*, 356 F. Supp. 3d at 320 (rejecting argument that the Treaty bars SKAT's

The Utah Supreme Court's decision in *Bivens* is on point.  In *Bivens*, the plaintiffs alleged that defendant Salt Lake City "unjustly enriched itself by fining them for failing to use a parking meter at a time when there were no longer any parking meters in Salt Lake City."  416 P.3d at 341.  But "the plaintiffs failed to challenge their parking tickets before the hearing officers and in small claims court," and thus "failed to take advantage of available legal remedies for challenging the imposition of a parking fine."  *Id.* at 351.  "Because of this failure to exhaust available legal remedies," the Court held that the plaintiffs' "unjust enrichment claims . . . fail" and granted the city's motion to dismiss.  *Id.*; *accord TFG-Ill.*, 829 F. Supp. 2d at 1117 (dismissing unjust enrichment counterclaim because "even if United can show that TFG's retention of the $149,000 was improper, United has not persuasively alleged a lack of adequate legal remedy").[8]  The Utah Plans' equitable claims similarly fail because they did not plead exhaustion of their available legal remedies.

## III.     THE UTAH PLANS FAIL TO STATE A CLAIM FOR PROMISSORY ESTOPPEL.

To state a claim for promissory estoppel under Utah law, a plaintiff must allege that "(1) the plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the

---

claims because "[t]he Danish taxes that make up a 'revenue claim'" under the Treaty do not include "[m]oney obtained by fraud from SKAT.").

8.    *See also Nickerson Co. v. Energy W. Mining Co.*, No. 20090221-CA, 2009 WL 4681778, at *2 (Utah Ct. App. Dec. 10, 2009) (affirming summary judgment because "Nickerson's failure to make a timely claim on the payment bond from Employers Mutual Casualty Co. also barred any unjust enrichment claim"); *Knight v. Post*, 748 P.2d 1097, 1099-100 (Utah Ct. App. 1988) (reversing judgment on *quantum meruit* claim because plaintiff failed to exhaust his legal remedies).

promise and the reliance resulted in a loss to the plaintiff." *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007). The alleged promise "must be reasonably certain and definite, and a claimant's subjective understanding . . . cannot, without more, support a promissory estoppel claim." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1021 (10th Cir. 2002) (quoting *Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1089 (Utah 1999)). The Utah Plans fail to state a claim for promissory estoppel for three reasons.

First, the Plans fail to allege that SKAT made any promise to them at all, let alone a reasonably certain and definite one that SKAT should have expected to induce reliance. *Hogan v. Utah Telecomm. Open Infrastructure Agency*, No. 1:11-CV-64 TS, 2011 WL 4963021, at *10 (D. Utah Oct. 18, 2011) (dismissing promissory estoppel claim where "Plaintiff . . . failed to point to a single statement made by any of the Defendants that the Agreement would be renewed"). The Plans allege that pursuant to SKAT's process for reviewing refund applications, "and as evidenced by SKAT's prior course of conduct, its practices, policies, and procedures," SKAT "promised to pay all dividend-withholding tax refund requests that were supported by what it deemed to be sufficient Supporting Documentation." (Counterclaim ¶¶ 51-52.) But SKAT's "past practice, custom, or performance does not constitute a clear and definite promise expected to induce reliance that is necessary to support a claim for promissory estoppel." *Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1242 (D. Utah 2015). And "whatever [they] may have subjectively thought likely to happen," these "allegations do not suggest" SKAT "made a reasonably certain and definite promise" to pay refund applications that included certain documentation no matter the circumstances. *Hogan v. Utah Telecomm. Open Infrastructure Agency*, 566 F. App'x 636, 642 (10th Cir. 2014).

11

Second, having failed to allege a reasonably certain and definite promise, the Plans necessarily also fail to allege reasonable reliance. *See Evans v. ReconTrust Co., N.A.*, No. 2:11CV547DAK, 2012 WL 1076267, at *4 (D. Utah Mar. 29, 2012) ("It is . . . not objectively reasonable to rely on a promise that is not sufficiently definite.").

Finally, the Plans allege "on information and belief," that "[a]t the time of the . . . Refund claims," SKAT "knew all important and material facts." (Counterclaim ¶ 57.) But promissory estoppel requires "circumstances where a party promises that things will be a given way in the future, knowing *at the time of the promise* all of the material facts." *Youngblood*, 158 P.3d at 1092 (emphasis added). If, as the Plans allege, SKAT did not know all of the material facts until the Plans submitted their refund claims—after their alleged reliance—SKAT could not possibly have made a promise to the Plans with knowledge of all material facts on which the Plans could have relied. *See Global Fitness*, 127 F. Supp. 3d at 1244 ("Th[e] undisputed sequence of events shows that Paramount was not aware of all of the material facts at any time sufficient to enable it to make a promise . . . upon which Global could have relied.").

## IV.    THE UTAH PLANS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.

To state a claim for unjust enrichment under Utah law, a plaintiff must plead (1) "a benefit conferred on one person by another;" (2) that "the conferee . . . appreciate[d] or ha[d] knowledge of the benefit;" and (3) "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000) (internal quotation omitted). The Utah Plans fail to plead the third element—circumstances that would make it inequitable for SKAT to retain the withholding tax on the dividends the Plans' allegedly received.

The Plans allege that SKAT has been unjustly enriched because it "has refused to pay and knowingly possesses the Unpaid Refunds in contravention of the U.S.-Denmark Tax Treaty." (Counterclaim ¶ 46.)  But since the Plans fail to plead that they availed themselves of any of the means by which they could have challenged SKAT's decision (*see supra* Section II), they fail to plead circumstances under which it would be inequitable for SKAT to retain the refunds.  *See Desert Miriah*, 12 P.3d at 583 (affirming denial of unjust enrichment claim where there was no inequity in part because counterclaimant "failed to protect his security interest in the houseboat, and did not pursue other legal remedies").  And nor did the Plans allege "some misleading act" on SKAT's part that would make it inequitable to let stand SKAT's unchallenged decisions to deny the Plans' refund applications.  *Knight*, 748 P.2d at 1101 (quoting *Commercial Fixtures*, 564 P.2d at 774).

13

## CONCLUSION

For the reasons set forth above, SKAT respectfully requests that the Court dismiss with

prejudice the Utah Plans' counterclaims.

Dated:  New York, New York
        August 19, 2019

HUGHES HUBBARD & REED LLP

By:    /s/ Marc A. Weinstein
       William R. Maguire
       Marc A. Weinstein
       John T. McGoey
      One Battery Park Plaza
      New York, New York 10004-1482
      Telephone: (212) 837-6000
      Fax:  (212) 422-4726
      bill.maguire@hugheshubbard.com
      marc.weinstein@hugheshubbard.com
      john.mcgoey@hugheshubbard.com

      *Counsel for Plaintiff Skatteforvaltningen*
      *(Customs and Tax Administration of the*
      *Kingdom of Denmark)*