**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION<br>OF THE KINGDOM OF DENMARK<br>(SKATTEFORVALTNINGEN) TAX<br>REFUND SCHEME LITIGATION<br><br>This document relates to: 18-cv-09797,<br>18-cv-09836, 18-cv-09837, 18-cv-09838,<br>18-cv-09839, 18-cv-09840, 18-cv-09841 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**OPPOSITION TO SKATTEFORVALTNINGEN'S**
**MOTION TO DISMISS UTAH PLAN DEFENDANTS' COUNTERCLAIMS**

K&L GATES LLP
John C. Blessington
Brandon R. Dillman
State Street Financial Center
One Lincoln Street
Boston, MA  02111
617.261.3100

*Attorneys for Defendants / Plaintiffs-in-Counterclaim
DW Construction, Inc. Retirement Plan, Kamco
Investments, Inc. Pension Plan, Kamco LP Profit
Sharing Pension Plan, Linden Associates Defined
Benefit Plan, Moira Associates Defined Benefit
Plan, Riverside Associates Defined Benefit Plan,
American Investment Group of New York, L.P.
Pension Plan, Stacey Kaminer, Joan Schulman,
and David Schulman*

<u>**TABLE OF CONTENTS**</u>

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ....................................................................................... 1

**BACKGROUND** ................................................................................................................. 3

    **A.**    **SKAT routinely paid the Plans' tax-refund claims until it decided not to.** ............... 3

    **B.**    **SKAT unexpectedly stopped paying the Plans' tax-refund claims.** ........................... 4

**ARGUMENT** ...................................................................................................................... 5

    **I.**    **The act-of-state doctrine does not bar the Plans' compulsory counterclaims.** .......... 5

        *a.*  *SKAT's act-of-state doctrine argument applies to its own claims.* ............................ 6

        *b.*  *The Plans' compulsory counterclaims are exempt from the act-of-state doctrine* ..... 7

    **II.**    **Any collateral remedies did not need to be exhausted before filing compulsory counterclaims against SKAT.** ..................................................................................... 10

        *a.*  *The Foreign Sovereign Immunities Act does not require exhaustion* ...................... 10

        *b.*  *Requiring exhaustion of the U.S.-Denmark Tax Treaty's mutual agreement procedure would violate separation-of-powers principles.* ...................................... 13

    **III.**  **The Plans have adequately stated claims for promissory estoppel and unjust enrichment.** ...................................................................................................... 14

        *a.*  *The Plans sufficiently pleaded promissory estoppel.* ................................................ 14

        *b.*  *The Plans sufficiently pleaded unjust enrichment.* ................................................... 16

**CONCLUSION** ................................................................................................................ 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alfred Dunhill of London, Inc. v. Republic of Cuba,*
    425 U.S. 682, 96 S. Ct. 1854 (1976) ..........................................................................7, 8, 9, 10

*Allen v. Hall,*
    148 P.3d 939 (Utah 2006) ..........................................................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009)..........................................................................5

*Banco Nacional de Cuba v. Chase Manhattan Bank,*
    658 F.2d 875 (2d Cir. 1981)....................................................................................7, 10

*Banco Nacional de Cuba v. Sabbatino,*
    376 U.S. 398, 84 S. Ct. 923 (1964) ............................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007)..........................................................................5

*Bivens v. Salt Lake City Corp.,*
    416 P.3d 338 (Utah 2017) ..........................................................................................12

*Cabiri v. Gov't of Republic of Ghana,*
    165 F.3d 193 (2d Cir. 1999)....................................................................................9, 11

*Cottonwood Imp. Dist. v. Qwest Corp.,*
    296 P.3d 754 (Utah Ct. App. 2013) ...........................................................................14

*E&H Land, Ltd. v. Farmington City,*
    336 P.3d 1077 (Utah Ct. App. 2014) ....................................................................12, 17

*First Nat'l City Bank v. Banco Nacional de Cuba,*
    406 U.S. 759, 92 S. Ct. 1808 (1972)......................................................................7, 8, 9, 10

*Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.,*
    127 F. Supp. 3d 1228 (D. Utah 2015).....................................................................14, 15

*Gonzalez v. Hasty,*
    802 F.3d 212 (2d Cir. 2015).......................................................................................5

*Hogan v. Utah Telecom. Open Infrastructure Agency,*
    No. 1:11-cv-64 TS, 2011 WL 4963021 (D. Utah Oct. 18, 2011) ...........................15

*Lodge at Westgate Park City Resort and Spa Condominium Assoc Inc. v.*
  *Westgate Resorts Ltd.*,
  440 P.3d 793 (Utah Ct. App. 2019) ...............................................................14, 15

*Moore v. N.Y. Cotton Exchange*,
  270 U.S. 593, 46 S. Ct. 367 (1926) ...........................................................................9

*Nat'l Equip. Rental, Ltd. v. Fowler*,
  287 F.2d 43 (2d Cir. 1961) ......................................................................................16

*In re Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*,
  491 F. Supp. 161 (N.D. Ill. 1979) ..............................................................................7

*Philipp v. Fed. Republic of Germany*,
  894 F.3d 406 (D.C. Cir. 2018) .......................................................................11, 12, 16

*Republic of Argentina v. NML Capital, Ltd.*,
  573 U.S. 134, 134 S. Ct. 2250 (2014) ......................................................................11

*Simon v. Republic of Hungary*,
  911 F.3d 1172 (D.C. Cir. 2018) *cert. docketed*, No. 18-1447 (May 20, 2019) ...............11, 12

*In re SKAT Tax Refund Scheme Litig.*,
  356 F. Supp. 3d 300 (S.D.N.Y. 2019) ....................................................................1, 6

*TFG-Illinois, L.P., v. United Maintenance Co., Inc.*,
  829 F. Supp. 2d 1097 (D. Utah 2011) .....................................................................12

*UTCO Assocs. Ltd. v. Zimmerman*,
  27 P.3d 177 (Utah Ct. App. 2001) ...........................................................................12

## Statutes

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1604, 1607(b) .....................10, 11, 12

## Other Authorities

Fed. R. Civ. P. 13(a) ..................................................................................................9

U.S. CONST. art. II, § 2, cl. 2.......................................................................................13

Convention and Protocol Amending the Convention between the United States
  and Denmark for the Avoidance of Double Taxation and the Prevention of
  Fiscal Evasion with Respect to Taxes on Income, May 6, 1948, Treaty Doc.
  No. 106-12 ...................................................................................................3, 13, 17

Defendants / Plaintiffs-in-Counterclaim DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Moira Associates Defined Benefit Plan, Linden Associates Defined Benefit Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan (the "Plans") respectfully submit this memorandum of law in opposition to Plaintiff Skatteforvaltningen's ("SKAT") motion to dismiss the Plans' counterclaims (Doc. No. 180, Civil Action 18-md-2865 (S.D.N.Y.)).

## PRELIMINARY STATEMENT

The irony in SKAT's seeking dismissal of the Plans' compulsory counterclaims based on the act-of-state doctrine should not be lost on this Court. From the outset of this case, the Plans (and other defendants) argued that this dispute belongs in Denmark. Back in May and June of 2018, SKAT filed claims alleging that it mistakenly paid tax refunds to the Plans based on false information. The Plans moved to dismiss those claims based on the revenue rule, which, like the act-of-state doctrine, was developed in recognition of separation-of-powers principles and in order to protect against judicial interference in foreign relations.

In response to that motion to dismiss, SKAT argued that its claims "do[] not implicate any of the intertwined sovereignty and separation of powers concerns that underscore modern application of the revenue rule."[1] The Court agreed with SKAT when denying the motion, stating that "there is no indication at this point that the Court potentially will render a determination with respect to Danish tax law that might conflict with a determination by an administrative or judicial body in Denmark."[2]  Now, in disregard of its previous arguments and this Court's opinion, SKAT argues that the act-of-state doctrine bars the Plans' compulsory counterclaims because they would

_____

[1] *See* Plaintiff SKAT's Memorandum of Law in Opposition to the Consolidated Defendants' Motion to Dismiss the Complaints, at 9.

[2] *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 319 (S.D.N.Y. 2019).

implicate separation-of-powers concerns and disrupt foreign affairs by requiring this Court to invalidate SKAT's official tax-refund determinations. *See* SKAT's Memorandum, at 5–7.[3]

SKAT cannot have it both ways. As set forth below, if SKAT is correct that the act-of-state doctrine bars the Plans' compulsory counterclaims, then it only follows that SKAT should not be able to proceed with its claims in the U.S. Similarly, SKAT's argument that the Plans failed to exhaust other remedies prior to filing the compulsory counterclaims is at odds with positions SKAT has previously taken in this case.[4] Moreover, SKAT ignored the Danish tax-appeals process by filing claims in U.S. courts before the Plans had a chance to complete appeals of SKAT's final determinations. In the end, the bases and validity of those very determinations will be decided by this Court.

SKAT's arguments in support of its motion to dismiss only serve to reinforce the Plans' continued belief that this entire litigation belongs in Denmark. That said, if the parties are going to be required to litigate SKAT's claims in the U.S., a forum that SKAT chose and the Plans objected to, then the Plans' compulsory counterclaims should be litigated here as well and SKAT's motion should be denied. Alternatively, the Plans should be allowed to amend their pleadings to remedy any deficiencies.

---

[3]   Citations to "SKAT's Memorandum" refers to Plaintiff-Counterclaim-Defendant Skatteforvaltningen's Memorandum of Law in Support of its Motion to Dismiss the Plan Defendants' Counterclaims, filed August 19, 2019 (Doc. No. 180, Civil Action 18-md-2865 (S.D.N.Y.)).

[4] Once again, SKAT appears to contradict itself. With its latest motion, SKAT argues that the Plans should have first appealed SKAT's decisions in Denmark prior to filing compulsory counterclaims. However, when faced with other defendants' counterclaims, SKAT argued that those defendants should *withdraw* their appeals in Denmark. *See* Plaintiff-Counterclaimant-Defendant Skatteforvaltningen's Memorandum of Law in Support of Motion to Dismiss the Amended Counterclaims (Doc. No. 114, Civil Action 18-md-2865 (S.D.N.Y.)) ("if Goldstein does not want its own appeal in Denmark then it can withdraw it"). In any event, SKAT filed claims in the U.S. against the Plans prior to their appeals and, in doing so, effectively preempted those appeals of SKAT's final determinations regarding the tax refunds.

## BACKGROUND

SKAT filed suit in this Court alleging a massive, worldwide fraud that involved U.S. pension plans fabricating tax-refund claims to take advantage of tax benefits available under the treaty between the U.S. and Denmark[5] (the "U.S.-Denmark Tax Treaty" or the "Treaty"). In this consolidated action, SKAT sued the Plans and their "authorized representatives" seeking to recover tax refunds that SKAT believes it paid in error. SKAT's claims arise out of SKAT's tax-refund decisions by which it paid the Plans, while the Plans' counterclaims arise out of SKAT's tax-refund decisions by which SKAT refused to pay the Plans.[6]

### A.  SKAT routinely paid the Plans' tax-refund claims until it decided not to.

The Kingdom of Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company pursuant to the U.S.-Denmark Tax Treaty. Counterclaim ¶ 8; *see also* U.S.-Denmark Tax Treaty, Art. 10, § 3(c). Danish companies withhold and report to SKAT a portion of the dividend payments they pay to shareholders according to Danish law. Counterclaim ¶ 7. SKAT is responsible for collecting and refunding dividend-withholding taxes, including any refunds of taxes owed to U.S. pension plans. *Id.* ¶ 8. SKAT developed a process to accept and review tax-refund claims from U.S. pension plans who were entitled to tax refunds. *Id.* ¶¶ 9, 10. That process

---

[5] Convention and Protocol Amending the Convention between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, May 6, 1948, Treaty Doc. No. 106-12 (effective date Jan. 1, 2001).

[6] For purposes of this opposition, citations to the "Complaint" are to the complaint filed by SKAT against DW Construction, Inc. Retirement Plan and Stacey Kaminer, Dkt. No. 18-cv-09797 (S.D.N.Y.).  The Complaint is substantially identical to SKAT's complaints in the actions against other defendants.  The Complaint referenced herein is attached to the Declaration of Brandon R. Dillman as Exhibit 1.

Citations to the "Counterclaim" are to the answer and counterclaims against SKAT filed by DW Construction, Inc. Retirement Plan on July 29, 2019, Dkt. No. 18-cv-09797 (S.D.N.Y.). The Counterclaim is substantially identical to the other Plans' counterclaims against SKAT. The Counterclaim referenced herein is attached to the Declaration of Brandon R. Dillman as Exhibit 2.

required the Plans (and other U.S. pension plans) to submit only four documents to support their tax-refund claims. *Id.* ¶¶ 10, 11.

For nearly two years, SKAT consistently paid tax-refund claims that included the required supporting documentation, including tax-refund claims submitted by the Plans. *Id.* ¶¶ 12, 13, 16; *see also* Complaint ¶ 30 ("It was SKAT's practice to pay claims that included the required supporting documentation."). SKAT and the Plans operated in this manner (consistent with the Kingdom of Denmark's obligation to not tax dividends paid to U.S. pension plans) with the Plans submitting the required documentation and SKAT paying the tax refund.

**B.  SKAT unexpectedly stopped paying the Plans' tax-refund claims.**

The Plans relied on SKAT's consistent payment of tax-refund claims when, in the summer of 2015, they invested in Danish securities, collected dividends net of Danish withholding taxes, and submitted tax-refund claims. Counterclaim ¶¶ 43, 44. Beginning in August 2015, however, SKAT abruptly stopped paying *all* dividend-withholding-tax claims, including the Plans'. *Id.* ¶¶ 17, 18, 30–32. The Plans' tax-refund claims in the summer of 2015 remain unpaid. *Id.* ¶ 31.

SKAT's refusal to pay these tax-refund claims disregards its prior assurances that it would pay claims that were supported by the required documentation. SKAT's promise is established by its own practices, policies, and procedures and the parties' course of dealing by which SKAT always paid tax-refund claims supported by the documentation SKAT required. *Id.* ¶¶ 10–12, 16, 30, 35, 40, 41, 46. Moreover, SKAT's refusal to pay the Plans' tax-refund claims is in contravention of the U.S.-Denmark Tax Treaty. *Id.* ¶¶ 41, 46. Accordingly, the Plans allege SKAT should be liable to the Plans at least in an amount equal to the unpaid tax-refunds either in the form of reliance damages or restitution. *Id.* ¶¶ 33–48, Request for Relief ¶¶ 2, 3.

-4-

## ARGUMENT

The Plans' counterclaims must state a plausible claim on which relief can be granted, meaning the Plans' factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the [counterclaims'] allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable"). In addressing the sufficiency of the Plans' counterclaims, the Court must accept the Plans' factual allegations as true while drawing reasonable inferences in the Plans' favor. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955; *Gonzalez v. Hasty*, 802 F.3d 212, 225 (2d Cir. 2015).

**I.      The act-of-state doctrine does not bar the Plans' compulsory counterclaims.**

The act-of-state doctrine was developed as a result of international comity, conflict-of-laws principles, and the desire to avoid judicial interference in international relations. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428, 84 S. Ct. 923, 940 (1964). In *Sabbatino*, the Supreme Court stated U.S. courts

> will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates international law.

*Sabbatino*, 376 U.S. at 428, 84 S. Ct. at 940.

"[I]t cannot of course be thought that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Sabbatino*, 376 U.S. at 423, 84 S. Ct. at 938 (internal quotations and citation omitted). Indeed, an exception to the act-of-state doctrine does apply to the Plans' counterclaims, and they should not be dismissed. Nevertheless, even if the Court agrees

with SKAT and abstains from a review of the Plans' counterclaims, then the Court should consider the implications that the act-of-state doctrine has on SKAT's claims as well.

      *a.   SKAT's act-of-state doctrine argument applies to its own claims.*

The act-of-state doctrine, according to SKAT, "requires the Court to abstain from deciding a case that turns on the validity of an official act by a foreign sovereign performed within its own territory." SKAT's Memorandum, at 1. Now, over a year after SKAT initiated this litigation regarding the validity of its tax-refund decisions, SKAT appears to acknowledge that review of those decisions would implicate separation-of-powers concerns and disrupt foreign affairs. *See* SKAT's Memorandum, at 5–7.

In its complaints, SKAT stated that it relied on the Plans' alleged misrepresentations when it decided to pay the Plans' refund requests. Complaint ¶¶ 55, 77. When faced with a motion to dismiss its claims, SKAT successfully argued that its claims do not raise foreign relations or separation-of-powers concerns. *See* Plaintiff SKAT's Memorandum of Law in Opposition to the Consolidated Defendants' Motion to Dismiss the Complaints, at 9 (Doc. No. 47, Civil Action 18-cv-4047 (S.D.N.Y.)). The Court agreed and stated that "there is no indication at this point that the Court potentially will render a determination with respect to Danish tax law that might conflict with a determination by an administrative or judicial body in Denmark." *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 319 (S.D.N.Y. 2019).[7]

By its recent motion, SKAT has reversed course. It argues that its official tax-refund decisions are ***not*** subject to review because review of those decisions will question their validity.

---

[7] The Court also explained that it could foresee an issue wherein "harm and embarrassment" could result from inconsistent decisions with a Danish body. The Court mentioned this issue to "clarify a separate instance [apart from the revenue rule] in which foreign affairs may be implicated and another motion – though not one based on the revenue rule – may be appropriate." *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d at 319.

SKAT's Memorandum, at 1, 5–6. Thus, SKAT's own claims, which require a determination whether SKAT correctly paid the Plans' tax refund claims, challenge the validity of its decisions, and, according to SKAT, those decisions are "not subject to review by this Court." SKAT's Memorandum, at 1. Thus, if SKAT's argument is correct and its official tax-refund decisions cannot be questioned, then this Court should abstain from hearing SKAT's claims as well.

*b. The Plans' compulsory counterclaims are exempt from the act-of-state doctrine.*

Even if the act-of-state doctrine applies, the Plans' counterclaims are compulsory and application of the act-of-state doctrine would be unjust. *See In re Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 491 F. Supp. 161, 168–69 (N.D. Ill. 1979) (concluding that to allow a foreign sovereign "to litigate its claims in this country and to cloak itself with immunity, based on the act of state doctrine, as to counterclaims and third-party claims, would be unjust.").

Moreover, the Plans' compulsory counterclaims are strictly exempt from the act-of-state doctrine pursuant to the "*Bernstein* Exception." The *Bernstein* Exception states that "where the Executive Branch . . . expressly represents to the Court that application of the act-of-state doctrine would not advance the interests of American foreign policy, that doctrine should not be applied by the courts." *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 768, 92 S. Ct. 1808, 1813 (1972); *see Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S. Ct. 1854 (1976); *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 882 (2d Cir. 1981).

The Executive Branch has already addressed whether it believes compulsory counterclaims should be exempt from the act-of-state doctrine. In adopting the *Bernstein* Exception, the Supreme Court acknowledged a letter from the Legal Adviser of the State Department (the "*First National Letter*"), which stated, in part:

> . . . the act of state doctrine need not be applied when it is raised to bar adjudication of a counterclaim or setoff when (a) the foreign

state's claim arises from a relationship between the parties existing when the act of state occurred; (b) the amount of the relief to be granted is limited to the amount of the foreign state's claim; and (c) the foreign policy interests of the United States do not require application of the doctrine.

. . .

The Department of State believes that the act of state doctrine should not be applied to bar consideration of a defendant's counterclaim or setoff against the Government of Cuba in this or like cases.

*First National* Letter.[8] The *First National* Court exempted the counterclaims at issue from the act-of-state doctrine despite foreign-relations concerns because "the branch of government responsible for the conduct of those foreign relations ha[d] advised . . . that such a consequence need not be feared in this case." *First Nat'l City Bank*, 406 U.S. at 768, 92 S. Ct. at 1813.

In a later case, *Alfred Dunhill of London, Inc. v. Republic of Cuba*, the Executive Branch provided another position statement (the "*Dunhill* Letter") setting forth the Executive Branch's views on compulsory counterclaims against a foreign sovereign:

In our view, the ***adjudication of counterclaims against a foreign state, arising from the same transaction, occurrence, or subject matter as the claim of the foreign state, does not pose foreign relations difficulties.***

*Dunhill Letter*, at n.1 (emphasis added).[9] The Supreme Court acknowledged the *Dunhill* Letter and explained that the Executive Branch:

takes the position that sovereign immunity, as such, does not prevent entry of an affirmative judgment on a counterclaim arising out of the same "transaction or occurrence that is the subject matter of the claim of the foreign state," and inferentially that ***the act of state doctrine is likewise unavailable as a method of avoiding such an affirmative judgment.***

---

[8] Reprinted in part in *First Nat'l City Bank*, 406 U.S. at 781, 92 S. Ct. at 1820.

[9] Reprinted in *Alfred Dunhill of London*, 425 U.S. at 708, 96 S. Ct. at 1868.

*Alfred Dunhill of London*, 425 U.S. at 697, 96 S. Ct. at 1862 n.12 (emphasis added).[10] Thus, if the act-of-state doctrine prevents courts from interfering with foreign relations and the Executive Branch has already stated that compulsory counterclaims do not raise foreign relations issues, then the act-of-state doctrine should not apply to compulsory counterclaims. *See id.*

Here, the Plans' counterclaims are compulsory. Fed. R. Civ. P. 13(a); Counterclaim ¶ 5. The test to determine whether claims are compulsory is "flexible" and "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 610, 46 S. Ct. 367 (1926); *see Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 197 (2d Cir. 1999). Claims are compulsory if the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Cabiri*, 165 F.3d at 197 (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)). SKAT's claims and the Plans' counterclaims both concern, among other things, the Plans' tax benefits under the Treaty, SKAT's tax-refund process, the same types of documentation, the same third-party broker, and the same types of securities transactions. *Compare* Complaint ¶¶ 19–24, 28, 30, 49 *with* Counterclaim ¶¶ 7–16, 26–29.

As the Plans' counterclaims are compulsory, they should be exempt from the act-of-state doctrine because the Executive Branch has already stated that it does not believe the doctrine should apply to such claims. *See First Nat'l City Bank*, 406 U.S. at 768, 92 S. Ct. at 1813; *Alfred Dunhill of London*, 425 U.S. at 697, 96 S. Ct. at 1862 n.12. According to the *Bernstein* Exception and the Executive Branch's guidance in the *First National* and *Dunhill* Letters, this Court should

---

[10] The Supreme Court in *Alfred Dunhill* did not address whether the act-of-state doctrine should apply to compulsory counterclaims because the case was decided on other grounds. *Id.* Nevertheless, its interpretation of the *Dunhill* Letter is logical and compelling.

recognize the Executive Branch's position and exempt the Plans' compulsory counterclaims from the act-of-state doctrine.[11]

## II.     Any collateral remedies did not need to be exhausted before filing compulsory counterclaims against SKAT.

SKAT argues that the Plans' counterclaims are barred because the Plans did not plead exhaustion. However, the Plans did not have to plead exhaustion before filing its compulsory counterclaims. As set forth below, SKAT cannot avail itself of sovereign immunity, and its exhaustion arguments are an attempt to trigger sovereign immunity by other means.

### a.   The Foreign Sovereign Immunities Act does not require exhaustion.

As alleged, this Court has jurisdiction over the Plans' counterclaims pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1604, 1607(b), because "[SKAT] shall not be accorded immunity with respect to any counterclaim . . . arising out of the transaction or occurrence

---

[11] The Second Circuit applies a variation of the *Bernstein* Exception. *See Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875 (2d Cir. 1981). According to the Second Circuit, the act-of-state doctrine does not apply to a counterclaim where:

> (1) the Executive Branch has provided a Bernstein letter advising the courts that it believes [the] act of state doctrine need not be applied, (2) there is no showing that an adjudication of the claim will interfere with delicate foreign relations, and (3) the claim against the foreign sovereign is asserted by way of counterclaim and does not exceed the value of the sovereign's claim . . .

*Chase Manhattan Bank*, 658 F.2d at 884. The Plans' counterclaims satisfy this test. First, as discussed above, the Executive Branch already provided "*Bernstein* letters" that should apply in this case. *See* Letters in *First Nat'l City Bank* and *Alfred Dunhill of London*. Second, those same letters confirm foreign relations would not be affected by adjudication of compulsory counterclaims. And in any event, SKAT has failed to demonstrate how the Plans' counterclaims would interfere with foreign relations. *See Alfred Dunhill of London*, 425 U.S. at 694, 96 S. Ct. at 1861 (party asserting act-of-state defense carries burden). Third, the value of SKAT's claims far exceeds the value of the Plans' counterclaims. SKAT seeks $16,272,000.00 from the Plans, while the Plans seek $972,811.27 from SKAT. *See* Complaints and Counterclaims in Civil Actions 18-cv-09797, 18-cv-09836, 18-cv-09837, 18-cv-09838, 18-cv-09839, 18-cv-09840, 18-cv-09841 (S.D.N.Y.).

-10-

that is the subject matter of [its claims]." 28 U.S.C. 1607(b); *see* Counterclaims ¶ 5. As discussed

above, the Plans' counterclaims meet this standard because they are compulsory. *See Cabiri*, 165

F.3d at 197 (applying logical relationship test to FSIA's compulsory counterclaim test).

A party with claims under FSIA does not need to exhaust collateral remedies. *See Philipp*

*v. Fed. Republic of Germany*, 894 F.3d 406, 415 (D.C. Cir. 2018) (holding exhaustion not required

for claims, including equitable claims, under FSIA). To require exhaustion would simply open a

backdoor to sovereign immunity. *See Simon v. Republic of Hungary*, 911 F.3d 1172, 1180–81

(D.C. Cir. 2018) (determining any exhaustion requirement for claims under FSIA "would in

actuality amount to a judicial grant of immunity") *cert. docketed*, No. 18-1447 (May 20, 2019);

*see also* 28 U.S.C. §§ 1604, 1607(b) (exempting compulsory counterclaims from strictures of

sovereign immunity). Courts have determined that if FSIA required exhaustion of other remedies,

then Congress would have said so. Indeed, when Congress previously required exhaustion "as a

predicate to FSIA jurisdiction, it said so explicitly," but Congress subsequently removed that

provision. *Simon*, 911 F.3d at 1180–81; *see Philipp*, 894 F.3d at 415; *see also Republic of*

*Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 141–42, 134 S. Ct. 2250 (2014) ("any sort of

immunity defense made by a foreign sovereign in an American court must stand on the [FSIA's]

text. Or it must fall.").

For instance, in an analogous case, plaintiffs filed a claim in Germany seeking the return

of art stolen by the Nazi regime, but a German administrative body denied the plaintiffs any relief.

*Philipp*, 894 F.3d at 409–10. Rather than appealing or filing suit in Germany, the plaintiffs filed

suit in U.S. federal court against Germany and one of its agencies availing themselves of an

exception to sovereign immunity under FSIA. *See id.* at 410; *see also* 28 U.S.C. § 1605(a)(3). The

plaintiffs asserted legal and equitable remedies, "including replevin, conversion, unjust

enrichment, and bailment." *Id.* at 409–10. Seeking dismissal, the German defendants argued that the plaintiffs had failed to exhaust their other remedies in Germany. *Id.* at 415. The district court denied Germany's motion and the D.C. Circuit affirmed, concluding the plaintiffs were not required to exhaust their remedies prior to filing claims under FSIA. *Id.* at 409–10, 415–16.

Similarly, here, the Plans did not need to plead exhaustion. Like the German defendants in *Philipp*, SKAT argues that the Plans should have first exhausted other remedies before filing claims in the U.S. against SKAT. These arguments are an impermissible backdoor to sovereign immunity. *See, e.g.*, *Simon*, 911 F.3d at 1180–81; *Philipp*, 894 F.3d at 415. The authority from the D.C. Circuit makes clear that exhaustion is unnecessary under FSIA, including when a party alleges equitable claims. *See Simon*, 911 F.3d at 1180–91; *Philipp,* 894 F.3d at 415–16. To require exhaustion under FSIA would be to effectively allow SKAT to trigger sovereign-immunity protection to which it is otherwise not entitled.

None of the cases on which SKAT relies is on point.[12] First, as a preliminary matter, the cases that SKAT relies on do not involve a party filing claims against a foreign sovereign under FSIA. Second, in SKAT's cases, there is either a statutorily-imposed exhaustion requirement or an express contract governing the parties' relationship. It is only in those situations that exhaustion is required. *See, e.g.*, *E&H Land, Ltd. v. Farmington City*, 336 P.3d 1077, 1086 (Utah Ct. App. 2014) ("Like unjust enrichment and other equitable remedies, promissory estoppel is available

---

[12] *See, e.g.*, *Bivens v. Salt Lake City Corp*., 416 P.3d 338, 342, 351 (Utah 2017) (dismissing claims for unjust enrichment involving parking tickets because plaintiff failed to appeal administratively, as required by Utah statute); *UTCO Assocs. Ltd. v. Zimmerman*, 27 P.3d 177, 180–82 (Utah Ct. App. 2001) (plaintiff had contract claims pending in bankruptcy court against the same defendant, and thus, promissory estoppel claim in Utah state court was "premature"); *TFG-Illinois, L.P., v. United Maintenance Co., Inc.*, 829 F. Supp. 2d 1097, 1117 (D. Utah 2011) (equitable remedy of unjust enrichment unavailable where parties' relationship governed by express contract).

only to a party who has no right to relief under an enforceable contract.") (citing *Mile High Indus. v. Cohen*, 222 F.3d 845, 859 (10th Cir. 2000)).

  **b.   *Requiring exhaustion of the U.S.-Denmark Tax Treaty's mutual agreement procedure would violate separation-of-powers principles.***

Article 25 of the U.S.-Denmark Tax Treaty says that the Treaty's mutual agreement procedure "may" be utilized "irrespective of the remedies provided by the domestic law of those States and the time limits prescribed in such laws for presentation of claims for refund." U.S.-Denmark Tax Treaty, Article 25, ¶ 1. The Treasury Departments' Technical Explanation states, "No time limit is provided within which a case must be brought."[13]

The Plans did not need to plead exhaustion of the U.S.-Denmark Tax Treaty's mutual agreement procedure because that procedure is expressly permissive. Requiring exhaustion of the Treaty's remedial procedure prior to filing compulsory counterclaims would inject this Court into the treaty-making process and raise serious separation-of-powers issues. *See* U.S. CONST. art. II, § 2, cl. 2 (granting treaty powers to Executive Branch with the advice and consent of the Senate). If the Court agreed with SKAT and required exhaustion of the Treaty remedy prior to filing compulsory counterclaims against SKAT, the Court would be turning the Treaty's permissive remedy into a compulsory, time-constrained one. That is not what the Executive Branch contemplated. *See* U.S.-Denmark Tax Treaty, Article 25, ¶ 1.

---

[13] Technical Explanation of the Convention Between the Government of the United States of America and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income Signed at Washington on August 19, 1999 (available at: https://www.irs.gov/pub/irs-trty/dentech.pdf).

III.    **The Plans have adequately stated claims for promissory estoppel and unjust enrichment.**

a.   *The Plans sufficiently pleaded promissory estoppel.*

Under Utah law, a party pleading promissory estoppel must allege "(1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person." *Cottonwood Imp. Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (Utah Ct. App. 2013). That promise, which must be "reasonably certain and definite" and not based simply on a claimant's "subjective understanding," can be shown by the parties' course of dealing. *See Lodge at Westgate Park City Resort and Spa Condominium Assoc Inc. v. Westgate Resorts Ltd.*, 440 P.3d 793, 800 (Utah Ct. App. 2019); *see also Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1238 (D. Utah 2015).

Each of the elements of the Plans' promissory estoppel claims have been adequately alleged. First, the Plans have alleged a reasonably certain and definite promise when they alleged that SKAT created the tax-refund process that required the Plans to provide only four documents, including a form generated by SKAT. Counterclaim ¶¶ 9–12. As promised, for nearly two years, SKAT always paid the Plans' tax-refund requests that complied with that process. *Id.* ¶¶ 10–12, 40, 41. Thus, that promise was reinforced over the years through "SKAT's prior course of conduct, [and] its practices, policies, and procedures." *Id.* ¶¶ 8, 12, 16, 40, 41. This course of dealing shows that SKAT's promise to pay was reasonably certain and definite and based on more than the Plans' subjective understanding. *See Lodge at Westgate Park City*, 440 P.3d at 800 (parties' acting "in accordance" with promise established claimant's more-than-subjective understanding of promise).

Indeed, the authority on which SKAT relies supports the use of course-of-dealing allegations to support a defendant's promise. *See Global Fitness*, 127 F. Supp. 3d at 1242

(explaining such evidence is "relevant" if consistent with the alleged promise). Moreover, notwithstanding SKAT's arguments to the contrary, the court in *Global Fitness* never said that course-of-dealing evidence cannot support a clear and definite promise — only that the claimant *in that case* failed to provide course-of-dealing evidence consistent with the promise it sought to enforce.[14] Unlike the claimant in *Global Fitness*, which attempted to go beyond the parties' course of dealing, the Plans do not seek to bind SKAT to anything more than the tax-refund procedure that SKAT implemented and processed claims under for two years. *See* Counterclaim ¶¶ 9–12; 16.

Second, the Plans sufficiently alleged that its reliance on SKAT's promise was reasonable. For nearly two years prior to the summer of 2015, the Plans invested in Danish companies, collected dividends net of Danish withholding taxes, and submitted tax-refund requests to SKAT along with the supporting documentation that SKAT required. SKAT, as the entity responsible for receiving and processing tax-refund claims, always paid those tax-refund claims without question. *See* Counterclaim ¶¶ 9, 12, 13, 16, 17. The Plans once again relied on SKAT's promise to pay its tax-refund claims when they invested in Danish companies in the summer of 2015 and sought tax refunds from SKAT. *Id.* ¶¶ 19–20, 28, 43–45. It should not be surprising that the Plans submitted their tax-refund claims to SKAT consistent with SKAT's practices, policies, and procedures.

Finally, the Plans have sufficiently alleged that SKAT was aware of all material facts at all relevant times. *See Lodge at Westgate Park City*, 440 P.3d at 800 (party claiming promissory estoppel must show "the defendant was aware of all material facts"). As alleged, the tax-refund process was known to SKAT from the very beginning. SKAT created the tax-refund process at

---

[14] The only other case SKAT relies on for its argument that the Plans failed to allege a clear and definite promise is likewise inapplicable. That case did not involve any course-of-dealing evidence to establish that the alleged promise was based on more than just the plaintiff's subjective belief. *See Hogan v. Utah Telecom. Open Infrastructure Agency*, No. 1:11-cv-64 TS, 2011 WL 4963021, at *10 (D. Utah Oct. 18, 2011).

issue. *See* Counterclaims ¶¶ 9–12. That process required the Plans to submit only four documents, including a form created by SKAT. *Id.* ¶ 11. The tax-refund process was known to SKAT at all times, including when the Plans submitted its tax-refund requests. *Id.* ¶¶ 12, 57. It is not credible, as SKAT argues, that it was unaware of its own tax-refund processes, the requirements of the U.S. Denmark Tax Treaty, and the hundreds of tax-refund claims it received and paid over the years.

### b. *The Plans sufficiently pleaded unjust enrichment.*

A claim for unjust enrichment requires (1) a benefit conferred by one person on another; (2) appreciation or knowledge of the benefit by the conferee; and (3) "acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit." *Allen v. Hall*, 148 P.3d 939, 945 (Utah 2006). The Plans adequately alleged each of the elements for unjust enrichment.

SKAT argues that the Plans failed to sufficiently plead circumstances that would make it inequitable for SKAT to retain the dividend-withholding taxes owed to the Plans because they failed to plead exhaustion of other remedies. SKAT's Memorandum, at 13. As stated above, the Plans are not required to plead exhaustion. *See Philipp*, 894 F.3d at 415–16 (concluding plaintiffs had no obligation to exhaust collateral remedies prior to filing equitable claims in U.S. court). Moreover, by choosing to proceed in this forum, they have compelled the Plans to assert any compulsory counterclaims or risk forfeiting those claims entirely. *See Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) ("Penalty for failure to assert a compulsory counterclaim is the preclusion of a later assertion of that claim, the purpose of the compulsory counterclaim device being to bring all logically related claims into a single litigation, thereby avoiding a multiplicity of suits."). Finally, any exhaustion requirement for an unjust-enrichment claim is

based on whether there is an enforceable contract already governing the parties' relationship. *See E&H Land*, 336 P.3d at 1086.

Contrary to SKAT's arguments, the Plans have adequately alleged circumstance that would make it inequitable for SKAT to retain any dividend taxes owed to the Plans. As alleged, the U.S.-Denmark Tax Treaty entitles the Plans to one hundred percent of the dividends paid by Danish companies, and the Plans relied on SKAT to refund dividend-withholding taxes according to SKAT's policies and procedures. *See* Counterclaims ¶ 9–12, 35; *see also* U.S.-Denmark Tax Treaty, Art. 10, § 3(c). Because SKAT failed to pay certain of the Plans' tax-refund claims, SKAT has been unjustly enriched. Counterclaim ¶¶ 10–12, 27–30, 31, 34, 35.

## CONCLUSION

SKAT chose this forum to litigate whether or not it correctly paid the Plans' tax-refund claims, and it should not be able to escape counterclaim liability on compulsory counterclaims that it forced the Plans to file. The Court should deny SKAT's motion to dismiss the Plans' counterclaims or, in the alternative, allow the Plans to amend their pleadings.

September 10, 2019

Respectfully submitted,

K&L GATES LLP


*/s/ John C. Blessington*
John C. Blessington (*pro hac vice*)
  john.blessington@klgates.com
Brandon R. Dillman (*pro hac vice*)
  brandon.dillman@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
T: 617.261.3100
F: 617.261.3175

*Attorneys for Defendants / Plaintiffs-in-Counterclaim*
*DW Construction, Inc. Retirement Plan,*
*Kamco Investments, Inc. Pension Plan,*
*Kamco LP Profit Sharing Pension Plan,*
*Linden Associates Defined Benefit Plan,*
*Moira Associates Defined Benefit Plan,*
*Riverside Associates Defined Benefit Plan,*
*American Investment Group of New York,*
*L.P. Pension Plan, Stacey Kaminer, Joan*
*Schulman, and David Schulman*