**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION

This document relates to case nos. 18-CV-09797; 18-CV-09836; 18-CV-09837; 18-CV-09838; 18-CV-09839; 18-CV-09840; 18-CV-09841.

MASTER DOCKET

18-MD-2865 (LAK)

**PLAINTIFF-COUNTERCLAIM-DEFENDANT SKATTEFORVALTNINGEN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE PLAN DEFENDANTS' COUNTERCLAIMS**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...............................................................................................................................2

I. THE ACT OF STATE DOCTRINE BARS THE PLANS' COUNTERCLAIMS. ............2

II. THE ACT OF STATE DOCTRINE DOES NOT BAR SKAT'S CLAIMS. ......................5

III. UTAH LAW REQUIRES THE PLANS TO EXHAUST LEGAL REMEDIES BEFORE ASSERTING EQUITABLE CLAIMS. ...........................6

A. SKAT Does Not Argue That The FSIA Requires Exhaustion. ...............................6

B. Utah's Exhaustion Requirement Does Not Violate Separation Of Powers Principles. ...............................................................8

IV. THE PLANS FAILED TO PLEAD PROMISSORY ESTOPPEL. ....................................8

V. THE PLANS FAILED TO PLEAD UNJUST ENRICHMENT .........................................9

CONCLUSION ..........................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1976) ................................3, 4

*Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875 (2d Cir. 1981)...............3, 4, 5

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) .......................................................2

*Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij*, 210 F.2d 375 (2d Cir. 1954)..........................................................................................1, 3

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2000)..................................................................6

*Bivens v. Salt Lake City Corp.*, 416 P.3d 338 (Utah 2017)...........................................................8

*E & H Land, Ltd. v. Farmington City*, 336 P.3d 1077 (Utah Ct. App. 2014)................................7

*Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co.*, 652 F.2d 231 (2d Cir. 1981)..........................................................................................2, 3, 4, 5

*Evans v. ReconTrust Co., N.A.*, No. 2:11CV547DAK, 2012 WL 1076267 (D. Utah Mar. 29, 2012)..........................................................................................8, 9

*First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759 (1972)..............................3, 4, 5

*Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015) ............................................7

*Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228 (D. Utah 2015) ..........................................................................................9

*Lodge at Westgate Park City Resort and Spa Condo. Ass'n Inc. v. Westgate Resorts Ltd.*, 440 P.3d 793 (Utah Ct. App. 2019)...............................................8, 9

*Mitchell v. ReconTrust Co. NA*, 373 P.3d 189 (Utah Ct. App. 2016)............................................8

*In re Oil Spill by the Amoco Cadiz*, 491 F. Supp. 161 (N.D. Ill. 1979)..........................................3

*Philipp v. Fed. Republic of Germany*, 894 F.3d 406 (D.C. Cir. 2018)..........................................7

*Simon v. Republic of Hungary*, 911 F.3d 1172 (D.C. Cir. 2018)...................................................7

*In re SKAT Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019) ....................................6

*VCS, Inc. v. Utah Cmty. Bank*, 293 P.3d 290 (Utah 2012) ..........................................................6

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400 (1990) .......................5

**Statutes and Rules**

28 U.S.C. § 1606.......................................................................................................................7

SKAT[1] respectfully submits this reply memorandum of law in further support of its motion to dismiss the Utah Plans' counterclaims.

## PRELIMINARY STATEMENT

The *Bernstein* exception to the act of state doctrine (named after *Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij*, 210 F.2d 375 (2d Cir. 1954)), cannot help the Plans because they do not have a *Bernstein* letter from the State Department stating that the act of state doctrine need not be applied in this case.

The Plans point to the *Bernstein* letters the State Department provided the Supreme Court in the 1970s concerning counterclaims against Cuba for expropriating property. But the exception requires a *Bernstein* letter particular to *this* case, and Cuba's expropriations bear no comparison to SKAT's denial of applications for tax refunds. (Section I, *infra*.)

The argument that the act of state doctrine bars SKAT's claims is similarly wide of the mark. SKAT seeks to recover stolen property; its claims do not turn on the validity of any Danish governmental act, and therefore do not implicate the act of state doctrine. (Section II, *infra*.)

It does not matter whether the Foreign Sovereign Immunities Act requires exhaustion of remedies. The Plans assert equitable counterclaims under Utah law, and Utah requires exhaustion of legal remedies. Dismissing the Plans' counterclaims for failing to exhaust their remedies would not require the Court to rewrite the U.S.-Denmark Tax Treaty or to violate separation of powers principles. (Section III, *infra*.)

---

1. Capitalized terms not defined herein have the meanings ascribed to them in SKAT's Memorandum of Law in Support of its Motion to Dismiss the Plan Defendants' Counterclaims [ECF No. 180] ("SKAT Mem.").

Finally, the Plans fail to plead a reasonably clear and definite promise to support a claim for promissory estoppel, (Section IV, *infra*), and to explain why it would be inequitable for SKAT to retain the withholding tax, after the Plans chose not to appeal SKAT's denials of their applications or to avail themselves of remedies under the U.S.-Denmark Tax Treaty. (Section V, *infra*.)

## ARGUMENT

## I. THE ACT OF STATE DOCTRINE BARS THE PLANS' COUNTERCLAIMS.

The Plans' arguments that the Court should exempt their counterclaims from the act of state doctrine as "unjust" or under the "*Bernstein* Exception" are meritless. (Opp. 7-10.)

In *Banco Nacional de Cuba v. Sabbatino*, the Supreme Court rejected the argument that counterclaims against a foreign sovereign are exempt from the act of state doctrine. 376 U.S. 398, 438-39 (1964) (rejecting analogy to "sovereign immunity" where "if a foreign country seeks redress in our courts, counterclaims are permissible"). It did not matter that the counterclaims arose out of the same occurrences as the claims—Cuban expropriations—and were therefore compulsory counterclaims. *Id.*

> The Sabbatino Court has already faced and rejected the argument that a sovereign plaintiff which voluntarily brings an action in American courts should . . . also be stripped of its right to invoke the act of state doctrine as a defense to a counterclaim.

*Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co.*, 652 F.2d 231, 238 (2d Cir. 1981). In *Empresa*, the Second Circuit recognized that "[i]n certain cases . . . the result of applying the act of state doctrine may be inequitable," but "otherwise applicable policy

considerations require that the act of state doctrine not be abandoned merely because the sovereign appears as plaintiff." *Id.* at 239.[2]

Nor can the Plans avoid the doctrine by invoking the so-called "*Bernstein* Exception."[3] (Opp. 7.) As an initial matter, the Supreme Court has never "adopt[ed]" the *Bernstein* exception. (Opp. 7.) In *First National City Bank v. Banco Nacional de Cuba*, a three-justice plurality endorsed the *Bernstein* exception in reversing the Second Circuit's decision that the act of state doctrine barred counterclaims against Cuba but, in their concurring opinions,[4] both Justice Douglas and Justice Powell rejected the *Bernstein* exception, as did all four dissenting justices. 406 U.S. 759, 776-77 (1972) (Brennan, J., dissenting) ("The Court, nevertheless, affirms the Court of Appeals' rejection of the 'Bernstein' exception. Four of us in this opinion unequivocally take that step, as do Mr. Justice Douglas and Mr. Justice Powell in their separate opinions concurring in the result or judgment.").[5]

Following *First National City Bank*, the Second Circuit "[c]umulat[ed] the views of the Justices comprising the [*First National*] majority" to "arrive at the following phenomenological rule:"

---

2. To the extent that *In re Oil Spill by the Amoco Cadiz off the Coast of France on March 16, 1978*, 491 F. Supp. 161, 169 (N.D. Ill. 1979)—decided two years before *Empresa*—held otherwise, it is contrary to *Sabbatino* and *Empresa*. (Opp. 7.)

3. In *Bernstein*, the Second Circuit held that the act of state doctrine did not bar a plaintiff's claim arising from the Nazi government's "forcible acts of dispossession of a discriminatory and confiscatory nature" where there was an "expression of Executive Policy" to "relieve American courts from any restraint upon the exercise of their jurisdiction to pass upon the validity of the acts of Nazi officials." 210 F.2d at 376 (internal quotation omitted).

4. Justice Douglas, applying principles of sovereign immunity, concurred in the result because "[f]air dealing require[d] allowance of the setoff to the amount of the claim on which this suit is brought." *Id.* at 772. And Justice Powell concurred because he believed *Sabbatino* was wrongly decided. *Id.* at 773-74.

5. Nor did the Supreme Court adopt the *Bernstein* exception in *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1976). In *Dunhill*, the Court reversed the Second Circuit's decision that the act of state doctrine barred the counterclaims because "nothing in the record reveal[ed] an act of state." *Id.* at 690.

> where (1) the Executive Branch has provided a Bernstein letter advising the courts that it believes the act of state doctrine need not be applied, (2) there is no showing that an adjudication of the claim will interfere with delicate foreign relations, and (3) the claim against the foreign sovereign is asserted by way of counterclaim and does not exceed the value of the sovereign's claim, adjudication of the counterclaim for expropriation of the defendant's property is not barred by the act of state doctrine.

*Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 884 (2d Cir. 1981). The Utah Plans' counterclaims fail to satisfy these three conditions.

First, the Plans do not have a *Bernstein* letter. The Plans say they do not need a letter *in this case*, and can rely on the letters that the State Department issued in the 1970s concerning counterclaims against Cuba in the *First National* and *Dunhill* cases.[6] (Opp. 7-10.) The Second Circuit foreclosed this argument in *Empresa* by holding that it "need not concern" itself with the *Bernstein* exception because "[t]he Executive Branch has expressed no opinion regarding [the doctrine's] appropriateness *in the instant case*." 652 F.2d at 237 (emphasis added). Similarly, in *Banco Nacional de Cuba*, the Second Circuit distinguished *Empresa* on the grounds that "[t]he party seeking to recover from the Cuban government . . . had no Bernstein letter, and the Executive Branch had expressed no view as to the applicability of the act of state doctrine *in that case*." 658 F.2d at 884 n.12 (emphasis added).

Second, in the absence of a *Bernstein* letter, there is no need to consider whether determining SKAT's claims will interfere with foreign relations. *See Empresa*, 652 F.2d at 237

---

6. By their terms, the *First National* and *Dunhill* letters are expressly limited to the counterclaims against Cuba. The *First National* letter states that the doctrine "should not be applied to bar consideration of a defendant's counterclaim or setoff against the Government of Cuba in this or like cases." 406 U.S. at 764. And the *Dunhill* letter states that "[t]he present case is similar to Bernstein, Farr and First National City Bank" in that the "counterclaim in question alleged that an act of state violated customary international law," so "there would be no embarrassment to the conduct of foreign policy if the Court should decide in this case to adjudicate." 425 U.S. at 709-10.

(in absence of a *Bernstein* letter, no need to consider "cases where the applicability of the act of state doctrine has been influenced by our Executive Branch's representation of its view").

Finally, *Banco Nacional de Cuba's* third condition limits the exception to counterclaims asserted by way of setoff—which would not result in a judgment against the foreign sovereign. 658 F.2d at 884-85 (finding the third condition satisfied because the counterclaim was "asserted by way of setoff"); *see also First Nat'l*, 406 U.S. at 772 (Douglas, J., concurring) ("[f]air dealing requires allowance of the setoff to the amount of the claim on which this suit is brought"). The counterclaims of the Utah Plans, which seek an affirmative judgment, do not qualify. (Counterclaim at 25.)

## II. THE ACT OF STATE DOCTRINE DOES NOT BAR SKAT'S CLAIMS.

Throughout their Opposition, the Utah Plans invite the Court to apply the act of state doctrine to dismiss SKAT's affirmative claims. (Opp. 1-2, 5-7.) Apart from the impropriety of burying a motion to dismiss in the middle of an opposition brief, the Plans waived the act of state doctrine by failing to plead the defense in their answers.

The Plans' argument fares no better on the merits. In particular, the Plans fail to identify an act of state that the Court would be required to declare invalid to grant SKAT relief. *See W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990) ("In every case in which we have held the act of state doctrine applicable, the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory."). The doctrine does not bar "factual findings that may cast doubt upon the validity of foreign sovereign acts." *Id.* at 406. The doctrine "only arise[s] when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *Id.*

The Plans argue that SKAT's claims "require a determination whether SKAT correctly paid the Plans' tax refund claims [and] challenge the validity of its decisions." (Opp. 7.) Not so. The correctness or validity of SKAT's prior decisions is not an element of SKAT's claims, which are based on allegations of "garden variety commercial fraud." *In re SKAT Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308 (S.D.N.Y. 2019). As the Court noted, in denying a motion to dismiss based on the revenue rule, "there is no indication at this point that the Court potentially will render a determination with respect to Danish tax law that might conflict with a determination by an administrative or judicial body in Denmark." *Id.* at 319.[7]

## III. UTAH LAW REQUIRES THE PLANS TO EXHAUST LEGAL REMEDIES BEFORE ASSERTING EQUITABLE CLAIMS.

Under Utah law, the Plans were required to "first exhaust any legal remedies available" before asserting their equitable claims for promissory estoppel or unjust enrichment. *VCS, Inc. v. Utah Cmty. Bank*, 293 P.3d 290, 299 (Utah 2012) (internal quotation omitted). The Plans provide no basis to avoid Utah's exhaustion requirement.

### A. SKAT Does Not Argue That The FSIA Requires Exhaustion.

The Utah Plans argue that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, does not require exhaustion, (Opp. 10-13), but SKAT never argued that it did. Exhaustion is a requirement of Utah law. (SKAT Mem. 8-10.) The Plans miss this critical point. They rely on two recent decisions, in which the District of Columbia Circuit (in direct conflict with a holding of the Seventh Circuit) held that requiring exhaustion, on comity or international

7. The argument that SKAT's claims "challenge" its decisions to pay the Plans' false applications, (Opp. 6-7), fails on the additional ground that SKAT has already withdrawn those decisions. *See In re SKAT*, 356 F. Supp. 3d at 320 (noting "SKAT's decision to withdraw its prior decision to refund dividend taxes"); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 453 (2d Cir. 2000) (act of state doctrine did not apply in part because "the current government . . . ha[d] apparently repudiated the acts in question").

law grounds, would amount to creating an immunity not recognized by the FSIA statute.[8] This Court need not address that conflict between the circuits, which concerns a foreign state's claim *as a sovereign* to be afforded an exhaustion defense *under comity and international law*. SKAT is not seeking special treatment as a sovereign, and nor is it invoking comity or international law. SKAT's motion rests on Utah's general exhaustion defense, which applies to any private party that defends an equitable claim. (SKAT Mem. 8-10.)

The Plans cite no authority holding a claimant that invokes jurisdiction under FSIA to be exempt from an exhaustion defense under state law for obvious reasons: FSIA concerns immunities of foreign sovereigns, not defenses generally applicable to private persons. Thus, FSIA expressly provides that, where a foreign sovereign is not entitled to immunity, the sovereign is "liable in the same manner *and to the same extent as a private individual under like circumstances*." 28 U.S.C. § 1606 (emphasis added). Accordingly, SKAT may invoke Utah's exhaustion defense to the same extent as any private litigant.

Next, the Plans argue that Utah law requires exhaustion only where there is a "statutorily-imposed exhaustion requirement" or "an express contract governing the parties' relationship." (Opp. 12.) This rule is made up: the Plans cite only one case for this proposition, and it says nothing of the sort.[9]

---

8. Opp. at 11 (citing *Philipp v. Fed. Republic of Germany*, 894 F.3d 406 (D.C. Cir. 2018); *Simon v. Republic of Hungary*, 911 F.3d 1172 (D.C. Cir. 2018), cert. docketed, No. 18-1447); *but see Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847, 852 (7th Cir. 2015).

9. *E & H Land, Ltd. v. Farmington City*, the only case cited by the Utah Plans in support of this proposition, does not discuss exhaustion. 336 P.3d 1077 (Utah Ct. App. 2014). It holds that "promissory estoppel is available only to a party who has no right to relief under an enforceable contract." *Id.* at 1086. Thus, it would make no sense to limit exhaustion to contract cases—where equitable relief is not available, in any event.

Finally, the Plans fail to distinguish between their failure to appeal the denial of their refund applications from the failure by plaintiffs in *Bivens v. Salt Lake City Corporation* to appeal their parking tickets, which caused "their unjust enrichment claims [to] fail." 416 P.3d 338, 351 (Utah 2017).

**B. Utah's Exhaustion Requirement Does Not Violate Separation Of Powers Principles.**

Applying Utah's general requirement that parties asserting equitable claims first exhaust available legal remedies would not "inject" the Court "into the treaty-making process." (Opp. 13.) Dismissing the Plans' counterclaims would not affect any remedies the Plans may have under the Treaty.

## IV. THE PLANS FAILED TO PLEAD PROMISSORY ESTOPPEL.

In addition to the failure to plead exhaustion, the Plans fail to plead a "reasonably certain and definite promise." (Opp. 14.) The process by which SKAT required refund applications to be accompanied by supporting documents did not constitute such a promise. A subjective understanding on the part of the Plans is insufficient. *See Mitchell v. ReconTrust Co. NA*, 373 P.3d 189, 203 (Utah Ct. App. 2016) (statement that plaintiffs "could apply for a loan modification" showed "at most . . . a subjective understanding that they had been assured that a loan modification would occur" (internal quotations omitted)). A mere "course of dealing"—namely, SKAT's paying refund applications until it discovered the fraud—cannot substitute for the required promise. (Opp. 14.)[10]

The Plans similarly fail to explain how any alleged reliance could have been reasonable. *See Evans v. ReconTrust Co., N.A.*, No. 2:11CV547DAK, 2012 WL 1076267, at *4 (D. Utah

10. The Plans' cases confirm that a mere course of dealing is insufficient. (Opp. 14.) In *Lodge at Westgate Park City Resort and Spa Condominium Association Inc. v. Westgate Resorts Ltd.*, the court held that the parties' written "Budget Methodology" resulting from "five months of negotiations" was "a clear and definite promise."

Mar. 29, 2012) ("It is . . . not objectively reasonable to rely on a promise that is not sufficiently definite.").

Finally, the Plans fail to explain how "SKAT was aware of all material facts at all relevant times." (Opp. 15.) The only relevant time is when SKAT made the alleged promise, *i.e.*, when SKAT created the tax refund process. *See Global Fitness*, 127 F. Supp. 3d at 1238 (promissory estoppel requires that the defendants made the promise when they knew that the plaintiff was acting in reliance on it). Where the Plans assert that SKAT made the alleged promise "nearly two years" earlier, they cannot explain how SKAT could have known then that the Plans would rely on it. (Opp. 14-15.)

## V. THE PLANS FAILED TO PLEAD UNJUST ENRICHMENT.

Other than repeating arguments about exhaustion, the Plans offer nothing to support their claims of unjust enrichment. (Opp. 16-17.) In particular, the Plans fail to explain why, having chosen not to avail themselves of their right to appeal SKAT's determinations of their refund claims or to pursue remedies under the U.S.-Danish Tax Treaty, it would be inequitable to hold them to those determinations. (*See* SKAT Mem. 12-13.)

---

440 P.3d 793, 800 (Utah Ct. App. 2019). The court found it significant that the parties were able "to act in accordance with [it] for no less than four years," but did not find that the parties' course of dealing could support a claim where a reasonably certain and definite promise did not exist in the first place. *Id.* (internal quotation omitted).

Similarly, in *Global Fitness Holdings, LLC v. Federal Recovery Acceptance, Inc.*, the court rejected the argument that past dealings were "effectively" a promise. 127 F. Supp. 3d 1228, 1242 (D. Utah 2015). The court held that "Paramount's past practice, custom, or performance does not constitute a clear and definite promise expected to induce reliance that is necessary to support a claim for promissory estoppel. Rather, *Global must point to some affirmative statement made by Paramount, which Global has not done*." *Id.* (emphasis added).

**CONCLUSION**

For the reasons set forth above and in SKAT's Memorandum of Law in Support of its Motion to Dismiss, SKAT respectfully requests that the Court dismiss with prejudice the Utah Plans' counterclaims.

Dated: New York, New York
September 24, 2019

HUGHES HUBBARD & REED LLP

By: /s/ Marc A. Weinstein

William R. Maguire
Marc A. Weinstein
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*