# EXHIBIT G

SECURITY AND SET-OFF DEED

**THIS SECURITY AND SET-OFF DEED** is made on 21 June 2012.

**BETWEEN:**

(1) **E D & F MAN CAPITAL MARKETS LIMITED** , registered in England and Wales with company number 1292851, whose registered office is at Cottons Centre, Hay's Lane, London, SE1 2QE in its capacity as chargee (the "**Chargee**"); and

(2) **E D & F MAN CAPITAL MARKETS LIMITED** , registered in England and Wales with company number 1292851, whose registered office is at Cottons Centre, Hay's Lane, London, SE1 2QE in its capacity as Custodian under the Custody Agreement (the "**Custodian**"); and

(3) **THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN FBO SHELDON AND SCOTT GOLDSTEIN** (the "**Chargor**").

**1. DEFINITIONS**

**1.1 Definitions**

Capitalised terms in this Deed have the meaning given to them below:

"**Business Day**" means a day on which TARGET is open.

"**Charged Property**" means the property, assets, undertaking and rights for the time being comprised in or subject to the security interests created by this Deed;

"**Custody Accounts**" has the meaning given to such term in the Custody Agreement, including all credit balances now or at any time in future on such accounts, all debts from time to time represented by such credit balances and all other rights accruing or arising in relation to each of such accounts;

"**Custody Agreement**" means the custody agreement dated on or about the date hereof between the Chargor and the Custodian;

"**Derived Investments**" means all present and future rights, moneys and property whatsoever which may from time to time or at any time be derived from, accrue on or be offered in respect of the Investments whether by way of redemption, conversion, exchange, substitution, bonus or otherwise;

"**Enforcement**" (and all grammatical variations or derivations thereof) means the taking of steps (or attempting to do so) by the Chargee to:

(a) sell, repossess or take possession of any rights or assets the subject of the security conferred by this Deed; or

(b) appoint an administrator in respect of the Chargor; or

(c) enforce any security interest created by or pursuant to this Deed or to exercise any rights or powers in relation to enforcement conferred by this Deed after the security conferred by this Deed has become enforceable,

unless such action is taken to preserve or protect (rather than to enforce) such security interest.

"**Event of Default**" means the occurrence of any of the following events:

(a)    the Chargor fails to perform any of its obligations under the Transaction Documents; or

(b)    a Bridging Event (as defined in the ISDA Master Agreement) and a default, event of default or other similar condition or event (however described) in respect of the Chargor under any Transaction Document; or

(c)    an event of default (howsoever described) or termination event (howsoever described) occurs under any of the Transaction Documents; or

(d)    any representation made by the Chargor under the Custody Agreement is untrue when made; or

(e)    a material adverse change occurs, in the opinion of the Chargee, in the financial condition, results of operations or business of the Chargor; or

(f)    the Chargor becomes or is deemed for the purposes of any law to be insolvent or unable to pay its debts as they fall due, or the value of its assets is less than the amount of its liabilities (taking into account contingent and prospective liabilities); or

(g)    any step is taken with a view to a composition or similar arrangement with any of its creditors by the Chargor, or with a view to rescheduling or avoiding default, or a moratorium or suspension of payments in relation to any of its debts or any analogous procedure or step is taken in any jurisdiction; or

(h)    any step is taken with a view to the winding-up or reorganisation of, or the appointment of an administrator, receiver or administrative receiver in relation to, the Chargor or any of its assets, or the holder of any Security over any asset of the Chargor takes any step to enforce that Security or any analogous procedure or step is taken in any jurisdiction; or

(i)    any asset of the Chargor is subject to attachment or execution or similar process; or

(j)    it becomes unlawful or impossible for the Chargee to perform any of its obligations or to fund amounts outstanding under any Transaction Document; or

(k)    it becomes unlawful for the Chargor to perform any of its obligations under any Transaction Document or the Chargor repudiates, or threatens to repudiate, any Transaction Document.

"**Investment**" means the Securities, all Derived Investments, all dividends, interest and other distributions and income paid or payable in respect of the Securities, or any Derived Investments, all rights from time to time attached to any of the foregoing, all rights to acquire the foregoing and all proceeds of sale of any of the foregoing;

"**ISDA Master Agreement**" means the ISDA Master Agreement dated on or about the date hereof between the Chargor and Deutsche Bank Custody Services or BNP Paribas Security Services , including all confirmations or transactions entered into under or in accordance with that agreement;

"**LPA 1925**" means the Law of Property Act 1925;

"**Relevant Business Day**" means a day on which TARGET is open and securities markets are open for trading in the place in which the exchange is situated on which relevant Securities are traded and in such other place(s) as the Bank may notify to the Borrower from time to time.

"**Secured Liabilities**" means all moneys and liabilities whatsoever which now are or at any time hereafter may (whether before or after demand) become due, owing or payable to the Chargee by the Chargor, whether actually or contingently and whether owed jointly or severally or in any other capacity whatever, under or in respect of any of the Transaction Documents, together with all costs (including legal costs), charges, expenses and damages sustained or incurred by the Chargee in connection with the Transaction Documents or in connection with the enforcement, defence or protection of the security constituted by this Deed or the appointment of any receiver or other insolvency practitioner, delegate or sub-delegate hereunder or the pursuit of any rights herein contained or under or in connection with the other Transaction Documents;

"**Securities**" means all securities and cash from time to time credited to or recorded in the Custody Accounts;

"**TARGET**" means the Trans-European Automated Real-time Gross settlement Express Transfer (TARGET) system;

"**Terms of Business**" means any applicable terms of business under which the Chargee, in any capacity, provides services to the Chargor; and

"**Transaction Documents**" means:

(a)     the Custody Agreement;

(b)     this Deed;

(c)     any Terms of Business;

(d)     the ISDA Master Agreement; and

(e)     any other document designated as such by the Chargor and the Chargee.

**1.2**     **Construction of particular terms**

In this Deed, unless otherwise specified, any reference to:

(a)     "**assets**" includes properties, revenues and rights of every kind, present, future and contingent, and whether tangible or intangible;

(b)     "**authorisation**" or "**consent**" shall be construed as including, without limitation, any authorisation, consent, approval, resolution, licence, exemption, filing, notarisation or registration;

(c)     a "**company**" includes any company, corporation or other body corporate, wherever and however incorporated or established;

(d)     "**this Deed**" or any other agreement or instrument is a reference to this Deed or other agreement or instrument as it may have been amended, supplemented, replaced or novated from time to time and includes a reference to any document which amends, supplements, replaces, novates or is entered into, made or given pursuant to or in accordance with any of the terms of this Deed or, as the case may be, the relevant deed, agreement or instrument;

(e) "**indebtedness**" includes any obligation (whether incurred as principal or as surety) for the payment or repayment of money, whether present or future, actual or contingent;

(f) "**law**" includes common or customary law, principles of equity and any constitution, code of practice, decree, judgement, decision, legislation, order, ordinance, regulation, bye-law, statute, treaty or other legislative measure in any jurisdiction or any present or future directive, regulation, guideline, request, rule or requirement (in each case, whether or not having the force of law but, if not having the force of law, the compliance with which is in accordance with the general practice of persons to whom the directive, regulation, guideline, request, rule or requirement is intended to apply) of any governmental, intergovernmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation;

(g) a "**person**" includes any natural person, firm, company, corporation, undertaking, government, state or agency of a state, any local or municipal authority, trust, any association or partnership (whether or not having separate legal personality) of two or more of the foregoing or other legal entity;

(h) a "**regulation**" includes any regulation, rule, official directive, request or guideline (in each case, whether or not having the force of law but, if not having the force of law, the compliance with which is in accordance with the general practice of persons to whom the regulation, rule, official directive, request or guideline is intended to apply) of any governmental, intergovernmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation;

(i) "**rights**" includes all rights, title, benefits, powers, privileges, interests, claims, authorities, discretions, remedies, liberties, easements, quasi easements and appurtenances (in each case, of every kind, present, future and contingent);

(j) "**security**" or "**security interest**" includes any mortgage, charge, pledge, lien, security assignment, hypothecation or trust arrangement for the purpose of providing security and any other encumbrance or security interest of any kind having the effect of securing any obligation of any person (including, without limitation, the deposit of moneys or property with a person with the intention of affording such person a right of set-off or lien) and any other agreement or any other type of arrangement having a similar effect; and

(k) "**subsidiary**" means a subsidiary within the meaning of section 1159 of the Companies Act 2006 and a subsidiary undertaking within the meaning of section 1161 of the Companies Act 2006.

## 2.   INTERPRETATION

(a) Words importing the singular shall include the plural and vice versa.

(b) Unless a contrary indication appears, a reference to any party or person shall be construed as including its and any subsequent successors in title, permitted transferees and permitted assigns, in each case in accordance with their respective interests.

(c) Unless a contrary indication appears, a reference to a time of day shall be construed as referring to London time.

(d) Section, clause and Schedule headings are for ease of reference only and shall be ignored in construction.

(e)     Unless a contrary indication appears, references to any provision of any law or regulation are to be construed as referring to that provision as it may have been, or may from time to time be, amended or re enacted, and as referring to all bye laws, instruments, orders and regulations for the time being made under or deriving validity from that provision.

(f)     A reference to any document is a reference to that document as amended, restated, supplemented, novated or replaced from time to time (except where the context otherwise requires).

## 3.     DELIVERY OF SECURITIES

The Chargor covenants with the Chargee that it will, upon acquiring the Securities, deliver those Securities to the relevant Custody Account or to such other account as the Chargee, in its capacity as custodian under the Custody Agreement, shall notify to the Chargor.

## 4.     COVENANT TO DISCHARGE SECURED LIABILITIES

The Chargor covenants with the Chargee that it will pay and discharge to the Chargee the Secured Liabilities at the time or times when, in the manner in which and in the currencies in which, they are expressed to be due and payable under the Transaction Documents.

## 5.     SECURITY

### 5.1     Fixed Charge and assignment

(a)     The Chargor with full title guarantee, hereby charges by way of first fixed legal mortgage to the Chargee, as a continuing security for the full and punctual payment or discharge of the Secured Liabilities, all of its rights, title, interest and benefit, present and future, in, to and under the Investments;

(b)     The Chargor with full title guarantee, hereby charges by way of first fixed legal mortgage to the Chargee, as a continuing security for the full and punctual payment or discharge of the Secured Liabilities, all of its rights, title, interest and benefit, present and future, in, to and under the Custody Accounts; and

(c)     The Chargor with full title guarantee, as a continuing security for the full and punctual payment or discharge of the Secured Liabilities, hereby assigns absolutely and charges by way of first fixed charge to the Chargee all of its rights under the Custody Agreement, the assignment of which is hereby notified to, and acknowledged by the Custodian.

### 5.2     Floating Charge

(a)     **Creation of Floating Charge**

The Chargor with full title guarantee, hereby charges by way of floating charge, all its present and future rights and interests in the Charged Property expressed to be assigned or charged by clause 5.1 (*Fixed Charge and assignment*).

(b)     **Ranking**

The floating charge created by the Chargor in clause 5.2(a) (*Creation of Floating Charge*) shall rank behind all the fixed charges and mortgages created by clause 5.1 (*Fixed Charge*

*and assignment*) but shall rank in priority to any other security created by it after the date of this Deed.

(c)   **Crystallisation by notice from Chargee**

The Chargee may, at any time after an Event of Default has occurred or if the Chargee considers any of the Charged Property to be in danger of being seized or sold under any form of distress, attachment, execution or other legal process or to be otherwise in jeopardy, convert the floating charge created by clause 5.2(a) (*Creation of Floating Charge*) into a fixed charge on all or such of the Charged Property of the Chargor as shall be specified (whether generally or specifically) by notice to the Chargor.

(d)   **Automatic crystallisation**

In the event that, without the prior written consent of the Chargee:

(i)    the Chargor creates or permits to subsist any security interest on, over or with respect to any of the Charged Property, or attempts to do so; or

(ii)   any person levies or attempts to levy any distress, attachment, execution or other legal process against any of the Charged Property; or

(iii)  an administrator is appointed in respect of the Chargor,

the floating charge created by this Deed shall, with effect from the instant before such event occurs, automatically convert into a fixed charge over the Charged Property which is the subject of such security interest or process or, in the case of the appointment of an administrator, over all of the Charged Property.

6.   **PERFECTION OF SECURITY**

The Chargor shall, if requested by the Chargee, promptly deliver to the Chargee:

(a)   all certificates, documents of title and other documentary evidence of ownership in relation to the Investments; and

(b)   transfers of the Investments duly executed by it or its nominee with the name of the transferee left blank or, if the Chargee so requires, in favour of the Chargee or its nominee and duly stamped.

7.   **CONTINUING SECURITY**

(a)   The security created by this Deed shall be a continuing security and will extend to the ultimate balance of all the Secured Liabilities regardless of any intermediate discharge or payment in whole or in part and notwithstanding any settlement of account or the existence at any time of a credit balance on any current or other account or any other act.

(b)   The covenants and provisions of this Deed shall remain in force from the date of this Deed for so long as any of the Secured Liabilities are outstanding or any security interest created under this Deed has not been released or discharged.

(c)   The security created by this Deed is intended to secure further advances.

8.    **ADDITIONAL SECURITY**

The security created by this Deed and the rights of the Chargee under this Deed shall be in addition to, and not prejudiced by, any other security or guarantee or any other right which the Chargee has in respect of or in connection with any or all of the Secured Liabilities.  All such rights may be exercised from time to time as often as the Chargee may deem expedient.

9.    **IMMEDIATE RECOURSE**

The Chargee need not, before exercising any of the rights, title, benefit and interest conferred upon it by this Deed or by law (i) take action or obtain judgement against the Chargor or any other person in any court, (ii) make or file any claim or proof in the liquidation of the Chargor or any other person or (iii) enforce or seek to enforce the recovery of the moneys and liabilities hereby secured or enforce or seek to enforce any other security interest or guarantee.

10.   **WAIVER OF DEFENCES**

(a)   Without prejudice to the provisions of this Deed, neither this Deed nor the security created under this Deed nor the liability of the Chargor for the Secured Liabilities shall be prejudiced or affected by:

(i)     any variation or amendment of, or waiver or release granted under or in connection with, any other security or any guarantee or indemnity or other document; or

(ii)    any time or waiver granted, or any other indulgence or concession granted, by the Chargee to the Chargor or any other person; or

(iii)   the taking, holding, failure to take or hold, varying, realisation, non-enforcement, non-perfection or release by the Chargee or any other person of any other security or any guarantee or indemnity or other document; or

(iv)   the insolvency, administration, reorganisation, liquidation or dissolution of, or any analogous proceeding in respect of, the Chargor or any other person; or

(v)    any change in the constitution of the Chargor; or

(vi)   any amalgamation, merger or reconstruction that may be effected by the Chargee with any other person, including any reconstruction by the Chargee involving the formation of a new company and the transfer of all or any of its assets to that company, or any sale or transfer of the whole or any part of the undertaking and assets of the Chargee to any other person; or

(vii)  the existence of any claim, set-off or other right which the Chargor may have at any time against the Chargee or any other person; or

(viii) the making or absence of any demand for payment or discharge of any Secured Liabilities on the Chargor or any other person, whether by the Chargee or any other person; or

(ix)   any arrangement or compromise entered into by the Chargee with the Chargor or any other person; or

(x)    any other thing done or omitted or neglected to be done by the Chargee or any other person or any other dealing, fact, matter or thing which, but for this

provision, might operate to prejudice or affect any of the security interests created under this Deed or the liability of the Chargor for the Secured Liabilities.

(b)   No delay or omission by the Chargee in exercising any right provided by law or under this Deed shall impair, affect, or operate as a waiver of, that or any other right. The single or partial exercise by the Chargee of any right shall not preclude or prejudice any other or further exercise of that, or the exercise of any other, right. The rights of the Chargee under this Deed are in addition to and do not affect any other rights available to it by law.

## 11.   FURTHER ASSURANCE

In addition and without prejudice to any other provision of this Deed, the Chargor shall, at the request of the Chargee but at its own cost, promptly take whatever action the Chargee may from time to time require:

(a)   to ensure that the security intended to be created by this Deed is and remains valid, legally binding and enforceable;

(b)   to perfect, preserve or protect the security interests created or intended to be created under this Deed; and

(c)   to facilitate the exercise of any and all of the rights vested or intended to be vested in the Chargee by or pursuant to this Deed and to facilitate the realisation of the Charged Property;

and for such purposes it shall in particular, but without limitation, execute all such documents, transfers, conveyances, assignments and assurances in respect of the Investments and give all such notices, orders, instructions and directions as the Chargee may require.

## 12.   EXERCISE OF RIGHTS

(a)   Each of the assignments, mortgages and charges on the terms set out in clause 5 constitutes and effects an immediate and full mortgage, charge and assignment of the Charged Property and shall be effective, and the security intended to be created by this Deed shall be constituted, immediately upon its execution.

(b)   Notwithstanding but without prejudice to clause 12(a) above, the Chargee agrees that, subject to clause 12(c) below, the Chargor shall continue to be entitled to receive payments and to exercise all of the rights, powers, discretions, claims and remedies which would (but for this Deed) be vested in the Chargor under and in respect of the Charged Property unless and except to the extent that either the Chargee requires otherwise.

(c)   Nothing in this clause 12 limits or affects the rights of the Chargee under clause 17.

## 13.   COVENANTS

### 13.1   General

The Chargor covenants with the Chargee that from the date of this Deed for so long as any of the Secured Liabilities are outstanding or any security interest created under this Deed has not been released or discharged:

(a)   it shall not without the prior written consent of the Chargee at any time be entitled to, or agree or seek to, withdraw or require the repayment of, and the Chargee shall be under no obligation to repay or redeliver, all or any part of any credit balance on the Custody Accounts until all Secured Liabilities have been unconditionally and irrevocably paid or discharged in full and the Chargor does not have any further liability or obligation under any Transaction Document;

(b)   it shall not create or permit to subsist any security interest over any of the Charged Property without the prior written consent of the Chargee save for the security interests created by or pursuant to this Deed;

(c)   it shall promptly obtain, comply with and do all that is necessary to maintain in full force and effect any authorisation required under any law or regulation of its jurisdiction of incorporation to enable it to create security and perform its obligations under this Deed and to ensure the legality, validity, enforceability or admissibility in evidence in its jurisdiction of incorporation of this Deed and the security created under this Deed;

(d)   it shall comply in all respects with all laws and regulations to which it may be subject, if failure so to comply would materially impair the security created under or evidenced by this Deed or its ability to perform its obligations under this Deed;

(e)   it shall remain liable to observe and perform all of the obligations and liabilities assumed by it under or in respect of the Charged Property to the same extent as if the security interests under this Deed had not been created;

(f)   it shall duly and promptly pay, and indemnify the Chargee against all calls and other moneys which may lawfully be required to be paid and other liabilities that may be sustained, incurred or made against the Chargee in respect of the Investments;

(g)   it shall notify the Chargee immediately on the occurrence of any Event of Default.

## 13.2   Custodian direction

The Chargor hereby irrevocably directs the Custodian, and the Custodian agrees with each of the Chargor and the Chargee that, until such time as the Custodian receives written notice from the Chargee that all Secured Liabilities have been unconditionally and irrevocably paid or discharged in full and the Chargor does not have any further liability or obligation under any Transaction Document, the Custodian shall not act on any Client Instructions (as that term is defined in the Custody Agreement) without the prior consent of the Chargee.

## 14.   SET-OFF

(a)   The Chargee may, at any time, apply the Charged Property, or any of it, to satisfy any obligations of the Chargor to the Chargee under any Transaction Document.

(b)   The Chargee reserves the right as against the Chargor to effect a set off between any obligation of the Chargee (actual or contingent) to make a payment to the Chargor under any Transaction Document and any obligation of the Chargor (actual or contingent) to make a payment to the Chargee under any Transaction Document.  This right is in addition to the Chargee's rights under any Terms of Business, the ISDA Master Agreement and the Chargee's legal and equitable rights of set off and combination of account, whether arising by agreement (express or implied), operation of law or custom or otherwise.

(c)     The Chargee may but shall be obliged to notify the Chargor upon its exercise of any of its rights under this Clause 14.

## 15.     LIABILITY OF THE CHARGEE

### 15.1  Possession

If the Chargee shall take possession of the Charged Property, it or he may at any time relinquish such possession.

### 15.2  Chargee's liability

The Chargee will not in any circumstances (whether by reason of taking possession of the Charged Property or for any other reason whatsoever and whether as mortgagee in possession or on any other basis whatsoever):

(a)     be liable to account to the Chargor or any other person for anything except the Chargee's own actual receipts; or

(b)     be liable to the Chargor or any other person for any costs, charges, losses, damages, liabilities or expenses arising from or connected with any realisation of the Charged Property or from any act, neglect, default, omission or misconduct of any nature of the Chargee, or any of its officers, employees or agents in relation to the Charged Property, except to the extent that they shall be caused by the fraud or wilful default or gross negligence of the Chargee or any of their respective officers, employees or agents.

### 15.3  Indemnity

The Chargee shall be entitled to be indemnified out of the Charged Property in respect of all liabilities and expenses incurred by any of them in the execution or purported execution of any of its rights and against all actions, proceedings, costs, claims and demands in respect of any matter or thing done or omitted in anyway relating to this Deed or the Charged Property, and the Chargee may retain and pay all sums in respect of them out of any moneys received.

The obligations contained in this clause 15.3 shall survive the expiration of this Deed.

## 16.     RELEASE

### 16.1  Discharge of Secured Liabilities

(a)     If the Chargee is satisfied that all Secured Liabilities have been unconditionally and irrevocably paid or discharged in full then the Chargee shall at the request and cost of the Chargor release and discharge the security constituted by this Deed or such part thereof as may still be subsisting and vested in the Chargee from the security created under this Deed.

(b)     Any re-assignment, release, settlement or discharge (whether in respect of any of the Secured Liabilities or any security for those liabilities or otherwise) shall be conditional upon no payment to, or security provided to, the Chargee in respect of the relevant Secured Liabilities being avoided, invalidated or reduced or required to be restored or paid away by virtue of any requirement having the force of law.

**16.2  Request for Release**

Notwithstanding the provisions of Clause 16.1, the Chargor shall be entitled to request the release of an Investment from the security constituted by this Deed at any time but not fewer than 4 Relevant Business Days prior to the date of requested release, such release to be at the Chargee's absolute discretion.  In connection with any request, the Chargee shall be entitled to require evidence in a form satisfactory to the Chargee that the Chargor is able to discharge the Secured Liabilities.

**17.    ENFORCEMENT**

**17.1  Security enforceable**

(a)    Immediately upon and at any time after the occurrence of an Event of Default, the security created by this Deed shall become enforceable and the Chargee shall be entitled (whether or not it shall have taken possession or appointed a receiver) without notice or further demand to exercise all the rights, powers and remedies possessed by it according to law as a secured party in respect of the Charged Property in any manner it sees fit and to:

(i)     demand and receive all and any monies due under or arising out of the Charged Property and apply them in or towards the payment or discharge of the Secured Liabilities;

(ii)    exercise in relation to the Charged Property all such rights as the Chargor was then entitled to exercise in relation to the Charged Property or might, but for the terms of this Deed;

(iii)   apply, set off or transfer any or all of the Charged Property in or towards the payment or other satisfaction of the Secured Liabilities or any part of them; and

(iv)    the Chargee shall be entitled and authorised to arrange for any of the Investments which are in registered form to be registered in the name of the Chargee or its nominee or any purchaser.

(b)    If an Event of Default has occurred, the Chargee shall be entitled, without prior notice to the Chargor or prior authorisation from any court, to sell or dispose of all or any part of the Charged Property at the times and in the manner and on the terms it sees fit.  The Chargee shall be entitled to apply the proceeds of that sale or disposal in paying the costs of that sale or disposal and in or towards the discharge of the Secured Liabilities.

**17.2  Power of sale**

(a)    Notwithstanding any other provisions of this Deed, the Secured Liabilities shall be deemed for the purposes of section 101 of the LPA 1925 to have become due and payable within the meaning of section 101 of the LPA 1925, and the power of sale and other powers conferred on mortgagees by the LPA 1925 as varied or extended by this Deed including the power to appoint a receiver or an administrative receiver shall arise, immediately on execution of this Deed.

(b)    Section 103 of the LPA 1925 shall not restrict the exercise by the Chargee of the statutory power of sale conferred on it by section 101 of the LPA 1925 which power may be

exercised by the Chargee without notice to the Chargor on or at any time after the occurrence of an Event of Default and the provisions of the LPA 1925 relating to and regulating the exercise of the said power of sale shall, so far as they relate to the Charged Property, be varied and extended accordingly.

(c)   Sub-section 109(1) of the LPA 1925 shall not apply to this Deed.

### 17.3   Consolidation

The Chargee shall, so far as it is lawful, be entitled to consolidate all or any of the security created under this Deed with any other securities whether now in existence or hereafter created. The restriction on the right of consolidating mortgage securities which is contained in sub-section 93(1) of the LPA 1925 shall not apply to this Deed.

### 17.4   Other rights

At any time after an Event of Default has occurred, the Chargee shall do all such acts and things it may consider necessary or expedient for the realisation of any of the Charged Property or incidental to the exercise of any of the rights conferred on it under or in connection with this Deed or under applicable law.

### 17.5   Appropriation

To the extent that any of the Charged Property constitutes "financial collateral" and this Deed and the obligations of the Chargor hereunder constitute a "security financial collateral arrangement" (in each case for the purposes of the Financial Collateral Arrangements (No. 2) Regulations (SI 2003/3226)) the Chargee shall have the right to appropriate all or any part of such financial collateral in or towards discharge of the Secured Liabilities.

## 18.   ATTORNEY

(a)   The Chargor irrevocably and by way of security for the performance of its obligations under this Deed appoints the Chargee, every receiver and every delegate of the Chargee severally to be the attorney of the Chargor on its behalf and in its name or otherwise and as its act and deed, at such time and in such manner as the attorney may think fit:

(i)   to take any action which it is obliged to take under this Deed or the other Transaction Documents but has not taken promptly following a request to do so from the Chargee; and

(ii)   to take whatever action may be required for enabling the Chargee to exercise all or any of the rights, powers, authorities and discretions conferred on them by or pursuant to this Deed, the other Transaction Documents or by law,

and the taking of action by the attorney or attorneys shall (as between it and any third party) be conclusive evidence of its right to take such action.

(b)   The Chargor undertakes to ratify and confirm everything that any attorney does or purports to do in the exercise or purported exercise of the power of attorney under this Clause 18.

19.   **GOVERNING LAW AND JURISDICTION**

    (a)   This Deed is governed by, and shall be construed in accordance with, the laws of England.

    (b)   The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed (including a dispute regarding the existence, validity or termination of this Deed) (a "**Dispute**").

    (c)   The parties to this Deed agree that the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary.

    (d)   The parties to this Deed shall not be prevented from taking proceedings relating to a Dispute in any other courts with jurisdiction.  To the extent allowed by law, the parties may take concurrent proceedings in any number of jurisdictions.

20.   **SERVICE OF PROCESS**

The parties irrevocably consent to service of process or any other documents in connection with proceedings in any court by personal service at any address specified below, by mail, by facsimile or in any other manner permitted by English law, or by the law of the place of service and the law of the jurisdiction where proceedings are instituted.

21.   **PARTIAL INVALIDITY**

If, at any time, any provision of this Deed is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions hereof nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

22.   **NOTICES**

22.1   **Communications in writing**

Any communication to be made under or in connection with this Deed shall be made in writing and, unless otherwise stated, may be made by fax, e-mail or letter.

22.2   **Addresses**

The address, e-mail address and fax number (and the department or officer, if any, for whose attention the communication is to be made) of each Party for any communication or document to be made or delivered under or in connection with this Deed is that identified with its name below or any substitute address, e-mail address, fax number or department or officer as the Party may notify to the other Parties by not less than five Business Days' notice.

22.3   **Delivery**

    (a)   Any communication or document made or delivered by one person to another under or in connection with this Deed will only be effective:

        (i)   if by way of fax, when received in legible form; or

        (ii)   if by way of e-mail, at the time that the e-mail is sent for the attention of the legal department and trading contact and the sender's e-mail system shall not

immediately thereafter have generated an unsuccessful transmission report, and, in either case, if made to the Chargee, only if addressed in such manner as the Chargee may from time to time specify for this purpose; or

(iii)    if by way of letter, when it has been delivered at the relevant address noted on page one or, in the case of posting, upon one Business Day after the date of registered or recorded delivery posting addressed to it at that address,

and, if a particular department or officer is specified as part of its address details provided under clause 22.2 (Addresses), if addressed to that department or officer.

(b)    Any communication or document to be made or delivered to the Chargee will be effective only when actually received by the Chargee and then only if it is expressly marked for the attention of the department or officer identified with the Chargee's signature below (or any substitute department or officer as the Chargee shall specify for this purpose).

### 22.4  English language

Any notice given under or in connection with this Deed must be in English.

### 23.  THIRD PARTY RIGHTS

The Parties do not intend that any term of this Deed should be enforceable by virtue of the Contracts (Rights of Third Parties) Act 1999, by any person who is not a party to this Deed.

### 24.  ASSIGNMENT

(a)    The rights, interests and obligations of the Chargor under this Deed are personal to it. Accordingly, they are not capable of being assigned, transferred or delegated in any manner.  The Chargor undertakes that it shall not at any time assign or transfer any of its rights, interests or obligations under or in respect of this Deed to any person.

(b)    The Chargee may, at any time, without the consent of the Chargor, assign or transfer any of its rights and obligations under this Deed.

### 25.  EXECUTION AS A DEED

Each of the parties to this Deed intends it to be a deed and confirms that it is executed and delivered as a deed, in each case notwithstanding the fact that any one or both of the parties may only execute this Deed under hand.

### 26.  COUNTERPARTS

This Deed may be executed in any number of counterparts, and by the parties on separate counterparts, but will not be effective until each party has executed at least one counterpart. Each counterpart shall constitute an original of this Deed, but all the counterparts will together constitute one and the same instrument.

27. **MISCELLANEOUS**

Telephone conversations between the Chargee and Chargor may be recorded and monitored by the Chargee and any recording may be used as evidence in the case of a dispute.

**IN WITNESS** of which this document has been executed as a deed and delivered on the date stated at the beginning of this Deed.

SIGNATURES

**EXECUTED** as a deed for and on behalf of )
**THE GOLDSTEIN LAW GROUP PC** )
**401(K) PROFIT SHARING PLAN FBO** )
**SHELDON AND SCOTT GOLDSTEIN** by )
SHELDON E. GOLDSTEIN

being [a person/persons who], in
accordance with the laws of its
jurisdiction of incorporation, are duly
authorised to executed this deed on its
behalf

**Address for notices or other
communications**
Address:                                    61 Broadway
Attention:                                  Suite 1915
Facsimile No:                               New York
Telephone No:                               NY 10006
                                            USA

**EXECUTED** as a deed by )
**E D & F MAN CAPITAL MARKETS** )
**LIMITED** as Chargee )
acting by its attorney )
                                  )         Verrona Browne
in the presence of:                         COO Operations
Signature of witness: ....................................
..............................................
Name (in BLOCK CAPITALS)
Address: ..........................................
          ..........................................
          ..........................................
**Address for notices or other
communications**
Address:                                    Cottons Centre,
Attention:                                  Hay's Lane,
Facsimile No:                               London,
Telephone No:                               SE1 2QE

Sharon Heath
Compliance / Documentation

**EXECUTED** as a deed by  )
**E D & F MAN CAPITAL MARKETS**  )
**LIMITED** as Custodian  )
acting by its attorney  )
————————————  )

Verrona Browne
COO Operations

Sharon Heath
Compliance / Documentation

in the presence of:
Signature of witness: ......................................
......................................................
Name (in BLOCK CAPITALS)
Address: ..........................................
            ..........................................
            ..........................................

**Address for notices or other communications**
Address:
Attention:
Facsimile No:
Telephone No:

Cottons Centre,
Hay's Lane,
London,
SE1 2QE