**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:    18-cv-09797<br><br>---------------------------------------------------------<br><br>DW CONSTRUCTION, INC. RETIREMENT PLAN, KAMCO INVESTMENTS, INC. PENSION PLAN, KAMCO LP PROFIT SHARING PENSION PLAN, LINDEN ASSOCIATES DEFINED BENEFIT PLAN, MOIRA ASSOCIATES DEFINED BENEFIT PLAN, RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN, AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN, STACEY KAMINER, JOAN SCHULMAN, and DAVID SCHULMAN,<br><br>        Third-Party Plaintiffs,<br><br>v.<br><br>ED&F MAN CAPITAL MARKETS LTD.,<br><br>        Third-Party Defendant. | MASTER DOCKET<br><br>18-md-2865 (LAK)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**AMENDED THIRD-PARTY**<br>**COMPLAINT AND JURY DEMAND** |

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendants/Third-Party Plaintiffs DW Construction, Inc. Retirement Plan ("the DW Construction Plan"), Kamco Investments, Inc. Pension Plan ("the Kamco Investments Plan"), Kamco LP Profit Sharing Pension

Plan ("the Kamco LP Plan"), Linden Associates Defined Benefit Plan ("the Linden Plan"), Moira Associates Defined Benefit Plan ("the Moira Plan"), Riverside Associates Defined Benefit Plan ("the Riverside Plan") and American Investment Group of New York, L.P. Pension Plan ("the AIG Plan") (collectively, "the Plans," and each a "Plan") and Stacey Kaminer, Joan Schulman, and David Schulman (collectively, "the Trustees") (the Plans and Trustees are, collectively, the "Third-Party Plaintiffs"), bring the following amended third-party claims against the Plans' broker-custodian, Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F").

The Plans submitted withholding-tax refund requests to Plaintiff Skatteforvaltningen ("SKAT") based on information provided to the Plans by ED&F, including sixty (60) "tax vouchers" that confirmed the Plans' receipt of dividends net of withholding taxes from Danish issuers, suffering of withholding taxes, and entitlement to tax reclaims. Shortly after Third-Party Plaintiffs filed their Third-Party Complaint against ED&F in this consolidated action,[1] ED&F admitted that thirty-four (34) of the tax vouchers on which Third-Party Plaintiffs relied were false. The falsity of the tax vouchers were first discovered by Third-Party Plaintiffs in September 2019 after ED&F admitted in a court filing that they were inaccurate. Although ED&F claims the remaining tax vouchers are accurate, it remains to be seen whether that is the case or whether those are false as well.

---

[1] SKAT's actions against Defendants/Third-Party Plaintiffs were consolidated in the United States District Court for the District of Utah and then transferred to this Court as part this multidistrict litigation pursuant to 28 U.S.C. § 1407. Thus, the above-captioned related action comprises the following actions: *SKAT v. DW Construction Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

Notwithstanding the above, Third-Party Plaintiffs firmly believe the Plans are entitled to the withholding-tax refunds they claimed from SKAT and that SKAT now wants returned in its actions against Third-Party Plaintiffs. If, however, SKAT's allegations against Third-Party Plaintiffs are proven to be true or if SKAT is otherwise entitled to a return of the tax refunds from Third-Party Plaintiffs, then ED&F — not Third-Party Plaintiffs — should be responsible because ED&F (1) managed, controlled, and executed the Plans' Danish securities transactions, which are the focus of SKAT's claims; (2) provided all of the information concerning the Plans' securities, dividends, and withholding-tax information on which Third-Party Plaintiffs relied, including the now-disavowed tax vouchers; and (3) collected fees in connection with the Plans' securities transactions and withholding-tax refunds, including fees in connection with the now-disavowed tax vouchers.

## PARTIES

1.      The Plans are U.S. pension plans. Each Plan is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and residents of the United States of America for purposes of U.S. taxation.

2.      The DW Construction Plan, the Kamco Investments Plan, the Kamco LP Plan, the Linden Plan, the Moira Plan, and the Riverside Plan are located at 5532 Lillehammer Lane, Suite 103, Park City, Utah, 84098. The AIG Plan is located at 3372 Woods Edge Circle, Suite 104, Bonita Springs, Florida, 34134, and was previously located at 75 Claremont Road, Suite 309, Bernardsville, New Jersey 07924. At all relevant times, Acer Investment Group, LLC ("Acer") was the attorney in fact for each of the Plans in connection with the transactions involving ED&F that give rise to these third-party claims. Acer is a limited liability company registered to do

business in Utah with an office address of 5532 Lillehammer Lane, Suite 103, Park City, Utah, 84098.

3.      Stacey Kaminer is a citizen of the United States and a resident of the State of Utah. At all relevant times, Stacey Kaminer was trustee and duly authorized representative for the DW Construction Plan, the Kamco Investments Plan, the Kamco LP Plan, the Moira Plan, and the AIG Plan.

4.      Joan Schulman is a citizen of the United States and a resident of the State of New York.  At all relevant times, Joan Schulman was trustee and duly authorized representative for the Linden Plan.

5.      David Schulman is a citizen of the United States and a resident of the State of New York.  At all relevant times, David Schulman was trustee and duly authorized representative for the Riverside Plan.

6.      ED&F is a financial brokerage business and financial servicer headquartered at 3 London Bridge Street, London, SE1 9SG, United Kingdom.  At all relevant times, ED&F managed and controlled brokerage accounts for the Plans, executed trades in Danish securities for the Plans, provided documentation and information to the Plans in connection with the Plans' accounts, securities transactions, dividend receipts, and tax vouchers, and collected fees in connection with the Plans' withholding-tax refund requests.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because the claims are between U.S. citizens and citizens of foreign states.  This Court also has subject-matter jurisdiction

over these third-party claims pursuant to 28 U.S.C. § 1367 because the third-party claims form part of the same case or controversy as SKAT's claims.

8.      This action was transferred from the United States District Court for the District of Utah to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407. This Court, as the transferee court, must apply the law of the transferor court to determine whether it can exercise personal jurisdiction.

9.      This Court has personal jurisdiction over ED&F because ED&F's conduct giving rise to these third-party claims was purposefully directed toward residents of the State of Utah. ED&F transacted business with the Plans directly and/or through the Plans' Utah-based representative and caused tortious injury to the Plans in Utah throughout their brokerage relationship, including by providing inaccurate tax vouchers and other records on which the Utah-based Plans relied and which were received by the Plans' authorized agent in Utah. ED&F established a continuing and ongoing relationship with the Plans either directly or through the Plans' Utah-based representative, Acer, and therefore created a substantial connection to the State of Utah.

10.     These third-party claims are properly venued for pretrial purposes in the United States District Court for the Southern District of New York because this action was transferred to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407. These third-party claims are properly venued for trial in the United States District Court for the District of Utah because ED&F is subject to that court's personal jurisdiction.

11.     By filing these third-party claims in the United States District Court for the Southern District of New York, Third-Party Plaintiffs do not waive their respective rights to have

SKAT's claims and these third-party claims transferred back to the United States District Court for the District of Utah for purposes of trial.

## STATEMENT OF FACTS

**A. ED&F entered into various agreements with the Plans pursuant to which ED&F agreed to exercise reasonable care in relation to the Plans' transactions and accounts.**

12.     ED&F is a broker registered with the Financial Conduct Authority ("FCA"), which regulates the U.K. financial and securities markets.

13.     In 2012, the Plans and ED&F executed various agreements (the "Agreements") that set forth ED&F's obligations as broker-custodian for each of the Plans.  The Agreements include each Plans' Custody Agreement, Security and Set-Off Deed, ISDA Master Agreement, and Terms and Conditions of Business, with variations thereto.

14.     Attached hereto are each Plans' Custody Agreement, specifically, for the DW Construction Plan (Exhibit A), the Kamco Investments Plan (Exhibit B), the Kamco LP Plan (Exhibit C), the Linden Plan (Exhibit D), the Moira Plan (Exhibit E), the Riverside Plan (Exhibit F), and the AIG Plan (Exhibit G).

15.     Each of the Custody Agreements with ED&F for the Utah-based Plans identifies Utah as the location of the Plan.  Each of the Plans designated Acer, which operates out of Utah, as its attorney in fact to manage the Plans' ED&F account.  Furthermore, Kaminer, who is trustee for the DW Construction Plan, the Kamco Investment Plan, the Kamco LP Plan, the Moira Plan, and the AIG Plan, is a Utah resident and received, on behalf of all of those Plans, emails, telephone calls, and other communications, including the now-disavowed tax vouchers, from ED&F.

16.     For over three years, ED&F intentionally conducted business with, executed trades on behalf of, and prepared custody records for Utah-based Plans and/or through the Plans' Utah-based representative.

17.    Pursuant to the Agreements, the Plans have maintained separate brokerage accounts with ED&F since at least June 2012.

18.    ED&F was required to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans' accounts and securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities in compliance with FCA regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

19.    ED&F was prohibited from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

20.    The Plans designated Acer as their attorney-in-fact in connection with investments in U.S. and foreign securities transactions conducted through the Plans' ED&F brokerage accounts.

21.    ED&F agreed to communicate with the Plans through Acer and, during all relevant times, ED&F routinely communicated with the Plans through Acer in relation to ED&F's dealings with the Plans, which are described more fully below.

**B. The Plans traded in Danish securities through ED&F and intended to receive dividends net of withholding taxes from Danish issuers and to apply for withholding-tax refunds based on the information provided by ED&F.**

22.    At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

23.    Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

24.     At all relevant times, SKAT served the Danish government as the agency responsible for administering Danish taxes and refunding dividend withholding-taxes, including refunds of dividend-withholding taxes owed to U.S. pension plans.

25.     Between December 2013 and August 2015, the Plans traded in shares of certain Danish companies through ED&F.

26.     As a result, ED&F generated a number of documents detailing and describing each of the transactions, including buy/sell confirmations for the Plan's transactions, account statements showing that the transactions occurred, and tax vouchers describing the Plans' security holdings and receipt of dividends net of withholding-taxes from Danish issuers.

27.     ED&F provided documents and information concerning the Plans' holdings, security interests, and withholding-taxes to the Plans through Acer.

28.     According to the information and documents provided by ED&F, the Plans' holding of shares in Danish companies resulted in the crediting of dividends net of withholding taxes from those Danish companies to the Plans' brokerage accounts.

29.     Based on the documents and information provided by ED&F, the Plans were led to believe that they held securities in Danish companies in their ED&F brokerage accounts on or around the relevant record dates for payment of dividends from Danish issuers (the "Holdings") and actually received dividends net of withholding taxes from the relevant Danish issuer on those securities (the "Dividends").

## C. Third-Party Plaintiffs relied on ED&F when the Plans applied for withholding-tax refunds from SKAT.

30.     Third-Party Plaintiffs entrusted ED&F, as custodian for the Plans, with the management and control of the Plans' brokerage accounts, the execution of securities transactions for the Plans, and the preparation of any tax vouchers related thereto.

31.    ED&F prepared such tax vouchers (the "Tax Vouchers") by which ED&F purportedly confirmed the Plans' relevant shareholdings over the applicable dividend dates and described the Dividends received by the Plans from Danish issuers net of withholding taxes.

32.    ED&F prepared a Tax Voucher for each of the Plans' Holdings and Dividends.

33.    ED&F knew that the Plans intended to request withholding-tax refunds from SKAT through Goal Taxback Ltd. ("Goal Taxback"), a third-party payment-processing agent, recommended to the Plans by ED&F.

34.    ED&F would send the Tax Vouchers directly to Goal Taxback, who would then submit the applications for withholding-tax refunds to SKAT on behalf of the Plans.

35.    ED&F would also email copies of the Tax Vouchers to the Plans through Acer. The Plans, through Acer, received the Tax Vouchers from ED&F when Goal Taxback received the Tax Vouchers so the Plans would be aware whether a withholding-tax refund application would be submitted by Goal Taxback on their behalf.

36.    With each of the Tax Vouchers, ED&F confirmed the Plans' relevant shareholdings over the applicable dividend dates, described the Dividends received by the Plans from Danish issuers net of withholding taxes, and stated that ED&F "has no beneficial interest in the holding

and will not be reclaiming the tax.  The dividends specified on this credit advice were paid net of

withholding tax to [the Plan]."  For example:



**ED&F MAN**

E D & F MAN CAPITAL MARKETS LIMITED

## Tax Voucher

We ED&F Man Capital Markets Ltd, based at Cotton's Centre, Hays Lane, London SE1 2QE and registered in the United Kingdom – confirm, Kamco L.P. Profit Sharing Plan FBO Stacey Kaminer – Suite 103, 5532 Lillehammer Lane, Park City, Utah, 84098, United States of America, was holding the below security over the dividend date.

| | |
|---|---|
| Security Description: | TDC A/S |
| ISIN: | DK0060228559 |
| SEDOL: | 5698790 |
| Ex Date: | 07th March 2014 |
| Record Date: | 11th March 2014 |
| Pay Date: | 12th March 2014 |
| Quantity: | 5,000,000 Shares |
| Gross Div Rate: | DKK 2.20 |
| Amount Received: | DKK 8,030,000.00 |
| WHT Suffered: | DKK 2,970,000.00 |
| WHT %: | 27% |

ED&F Man Capital Markets Limited has no beneficial interest in the holding and will not be reclaiming the tax. The dividends specified on this credit advice were paid net of withholding tax to Kamco L.P. Profit Sharing Plan FBO Stacey Kaminer. If you have any further concerns or issues please do not hesitate to contact us.

AUTHORISED  SIGNATORY

Christina MacKinnon

*[signature]*

Head of Securities Operations

37.    Importantly, each of the Tax Vouchers stated the dividend "received" by each Plan

and the withholding-tax "suffered" by each Plan.

38.     Attached hereto are the relevant Tax Vouchers provided by ED&F for the Plans' withholding-tax refunds, specifically, seven (7) Tax Vouchers for the DW Construction Plan (Exhibit H), six (6) Tax Vouchers for the Kamco Investments Plan (Exhibit I), five (5) Tax Vouchers for the Kamco LP Plan (Exhibit J), twelve (12) Tax Vouchers for the Linden Plan (Exhibit K), eight (8) Tax Vouchers for the Moira Plan (Exhibit L), eleven (11) Tax Vouchers for the Riverside Plan (Exhibit M), and eleven (11) Tax Vouchers for the AIG Plan (Exhibit N).

39.     At all relevant times, ED&F owed a duty to the Plans to create true and accurate documents and was uniquely positioned to confirm the status of the Plans' Holdings, Dividends, brokerage accounts, securities transactions, and entitlement to dividend-withholding taxes.

40.     Third-Party Plaintiffs placed their confidence in ED&F to act primarily for the benefit of the Plans and placed the Plans' property, interests, and trust in the charge of ED&F.

41.     On information and belief, ED&F was the only entity that had direct control over the information concerning, among other things, ED&F's custody account(s), the Plans' brokerage accounts, securities in those accounts, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend withholding taxes.

42.     After ED&F apparently confirmed that the Plans received the Dividends from the Danish issuer net of withholding taxes, ED&F sent the Tax Vouchers to Goal Taxback.

43.     ED&F provided each Plan with account statements reflecting all Danish securities transactions in their ED&F brokerage accounts.  The account statements purportedly confirmed that for each transaction reflected on the Tax Vouchers, the Plans owned the relevant shares on their respective record dates and were paid the applicable dividends from the Danish issuer, minus Danish withholding taxes.

11

44.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

45.     SKAT paid the Plans through Goal Taxback for all of the Plans' withholding-tax refunds until August 2015, at which point SKAT stopped paying withholding-tax refund claims. The Plans' refunds that SKAT refused to pay beginning in August 2015 are the subject of each of the Plans' counterclaims against SKAT, filed in *SKAT v. DW Construction Inc. Retirement Plan* (18-cv-09797, 18-md-2865 (S.D.N.Y.)) on July 29, 2019.

46.     In 2018, SKAT sued Third-Party Plaintiffs seeking damages and/or restitution in the amount of the withholding-tax refunds SKAT paid to the Plans, alleging fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, and money had and received.

47.     The refunds SKAT seeks to have returned in its actions against Third-Party Plaintiffs are as follows:

| Plan / Trustee | Amount Claimed by SKAT |
|---|---|
| The DW Construction Plan / Kaminer | $ 2,130,000.00 |
| The Kamco Investments Plan / Kaminer | $ 1,643,000.00 |
| The Kamco LP Plan / Kaminer | $ 2,397,000.00 |
| The Linden Plan / Joan Schulman | $ 2,062,000.00 |
| The Moira Plan / Kaminer | $ 2,660,000.00 |
| The Riverside Plan / David Schulman | $ 1,992,000.00 |
| The AIG Plan / Kaminer | $ 3,388,000.00 |
| **TOTAL** | **$16,272,000.00** |

**D. Third-Party Plaintiffs relied on information provided by ED&F, including the Tax Vouchers, when they chose to defend against SKAT's claims and pursue appeals in Denmark challenging SKAT's revocations of its tax-refund payments to the Plans.**

48.     SKAT stopped paying withholding-tax refunds in August 2015, and, in early 2018, SKAT issued its decisions revoking its prior payments of withholding-tax refunds to the Plan.

49.     Since that time, significant fees and costs have been spent defending the Plans'
applications for withholding-tax refunds based on the documentation provided to the Plans by
ED&F.

50.     On or about the same day SKAT started filing civil actions against pension plans
in the United States concerning withholding-tax refunds, SKAT also rendered its "final
determinations" concerning the Plans' withholding-tax refund applications.

51.     In those final determinations concerning the Plans, SKAT determined that the Plans
were not entitled to the withholding-tax refunds paid by SKAT because SKAT's initial decisions
to pay the Plans had been made on a" false basis."

52.     Relying on the purported truthfulness of the documents and information provided
by SKAT, including the Tax Vouchers and account statements, the Plans appealed SKAT's
decisions in August 2018.

53.     Significant amounts have been spent defending the Plan's withholding-tax
applications and appealing SKAT's final determinations based on the documentation ED&F
provided to the Plans, including the Tax Vouchers and account statements, which showed the Plans
were entitled to the withholding-tax refunds from SKAT.

54.     Likewise, significant amounts have been spent in defense of Third-Party Plaintiffs
in these actions filed by SKAT.

**E.   In September 2019, ED&F admitted that certain of the Tax Vouchers that it created
for the Plans were inaccurate.**

55.     SKAT sued ED&F in the United Kingdom (the "U.K. Proceeding") over the same
transactions that are the basis of SKAT's claims against Third-Party Plaintiffs.

56.    In September 2019, ED&F filed its Amended Defence in the U.K. Proceeding and identified eighty (80) tax vouchers issued by ED&F to pension plans that it now, for the first time, alleged were inaccurate.

57.    ED&F stated that thirty-four (34) of the tax vouchers it prepared for the Plans contained false information and listed those tax vouchers (the "Disavowed Tax Vouchers") in Annex E to its Amended Defence.

58.    ED&F's list of the Disavowed Tax Vouchers is attached hereto as Exhibit O, with the tax vouchers relevant to the Plans' third-party claims highlighted.

59.    ED&F stated that each of the Disavowed Tax Vouchers was "inaccurate in that the [Plan] identified therein: had not '*received*' the amount set out therein by way of dividend from the Danish Listed Company; and had not '*suffered*' [withholding tax] in the amount set out therein in relation to such dividend at the stated (27%) or any rate."

60.    According to ED&F, twenty-nine (29) of the Disavowed Tax Vouchers are wholly inaccurate in that the identified Plan did not receive any actual dividend from a Danish issuer and did not suffer any withholding taxes.  For the remaining five (5) Disavowed Tax Vouchers, the Plan apparently received part of an actual dividend from a Danish company but did not receive the remaining amount by way of dividend from a Danish issuer.

61.    At the time of the transactions, ED&F sent all thirty-four (34) of the Disavowed Tax Vouchers to the Plans.

62.    At the time of the transactions, ED&F also provided the Plans with account statements showing that the Plans received cash dividends net of withholding taxes from the relevant Danish issuers.

63.     If ED&F is correct and its Disavowed Tax Vouchers contain false information, then the account statements provided by ED&F that show the Plans' receipt of cash dividends net of withholding taxes from the relevant Danish issuers also contain the same false information as the Disavowed Tax Vouchers.

64.     If the Plans had not received the inaccurate information contained in the Disavowed Tax Vouchers or misleading account statements from ED&F, the Plans never would have submitted withholding-tax refund applications to SKAT.

65.     Because of ED&F's unique position as broker-custodian for the Plans and its access to all relevant information concerning the Plans' securities, holdings, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend withholding taxes, ED&F possessed all of the information necessary to determine the accuracy of the information in the Disavowed Tax Vouchers and in the misleading account statements at the time ED&F sent the them to the Plans.

66.     With the Disavowed Tax Vouchers and misleading account statements, ED&F misrepresented the Plans' dividend receipts and withholding-tax-entitlement status while knowing that the Plans intended to rely on that information to support the Plans' refund applications.

67.     When ED&F transmitted the Disavowed Tax Vouchers and misleading account statements to the Plans, ED&F knew or should have known that the dividend and withholding-tax information contained in those documents was false.

15

68.     As a result of the Disavowed Tax Vouchers, ED&F admits that it misrepresented the withholding tax owed to the Plans in the following amounts:

| Plan | Overstated Withholding Tax Entitlement[2] |
|------|-------------------------------------------|
| The DW Construction Plan | $   1,651,792.50 |
| The Kamco Investments Plan | $      915,300.00 |
| The Kamco LP Plan | $   1,696,950.00 |
| The Linden Plan | $   1,112,433.75 |
| The Moira Plan | $   1,622,025.00 |
| The Riverside Plan | $   1,112,433.75 |
| The AIG Plan | $   1,291,950.00 |
| **TOTAL** | **$   9,402,885.00** |

69.     Third-Party Plaintiffs never had reason to doubt the veracity of the Tax Vouchers or any of the account statements provided by ED&F until September 2019, after ED&F filed its Amended Defence in the U.K. Proceedings.

70.     ED&F never warned the Plans that it had determined that the Disavowed Tax Vouchers were inaccurate or that it would be filing documents in the U.K. Proceedings declaring the Disavowed Tax Vouchers false.

71.     Indeed, it has only been through litigation involving SKAT that ED&F has communicated the apparent falsehoods to the Plans.

72.     Despite multiple inquires from Third-Party Plaintiffs, ED&F has refused to explain why the Disavowed Tax Vouchers are false or how ED&F reached that determination.  Even more concerning is that the Disavowed Tax Vouchers are identical in appearance, format and language to the other twenty-six (26) Tax Vouchers issued to the Plans by ED&F that ED&F has maintained are correct.

---

[2] This amount is the result of a conversion from DKK to U.S. Dollars performed on November 12, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.67 DKK.

73.     ED&F has offered no evidence that it did not know the Disavowed Tax Vouchers were false when first transmitted to the Plans and Goal Taxback.

74.     Despite being in the best position to know whether or not the Plans received actual dividends net of withholding taxes from Danish issuers and suffered withholding tax, ED&F nevertheless issued the Disavowed Tax Vouchers and misleading account statements reflecting that the Plans had actually received dividends from the Danish-listed company and had suffered withholding tax at a rate of 27% of such dividends.

75.     Third-Party Plaintiffs reasonably relied on documentation and information provided by ED&F, including the Disavowed Tax Vouchers, and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plans' Holdings and Dividends were accurate; (ii) the Plans actually held the securities they represented to SKAT that they owned; (iii) the Plans received the Dividends from Danish issuers net of withholding taxes; (iv) dividend tax was withheld in relation to the Dividends and the Holdings; and (v) the Plans were entitled to withholding-tax refunds from SKAT in the amount set out in the Tax Vouchers.

76.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers, including the Disavowed Tax Vouchers, and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

77.     But for the Tax Vouchers and other information prepared by ED&F, Third-Party Plaintiffs would not have requested withholding-tax refunds from SKAT.

78.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers, and other information provided by ED&F, including buy/sell confirmations and account statements, when significant

17

amounts of money were spent defending the Plans' withholding-tax applications and appealing SKAT's final determinations.

**F. If SKAT proves the Plans did not own the shares they claimed to own, did not earn the dividends they claimed to have earned, or were otherwise not entitled to the withholding taxes they claimed, then ED&F should be responsible for any amounts claimed by SKAT.**

79.    SKAT alleges Third-Party Plaintiffs misrepresented the Plans' Holdings and Dividends when the Plans requested the withholding-tax refunds.

80.    SKAT alleges that each Plan did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds that they claimed.

81.    SKAT also alleges that ED&F provided statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

82.    To be clear, the Plans and the Trustees have never attempted to defraud or commit other wrongful actions against SKAT.[3]

83.    If, however, SKAT proves its claims and establishes that Third-Party Plaintiffs are liable to SKAT for some or all of SKAT's alleged damages or amounts it claims to be owed, then ED&F should be responsible for such damages because of ED&F's obligations under the Agreements, its duty to transmit only truthful and accurate information to the Plans, and because of its unique position by which it managed and controlled its custody account(s), the Plans'

---

[3] SKAT sued ED&F in the United Kingdom (the "U.K. Proceeding") over the same transactions that are the basis of SKAT's claims against Third-Party Plaintiffs. Notably, however, in the U.K. Proceeding, SKAT did not allege that ED&F committed any fraud. Instead, SKAT described ED&F as a "non-fraud defendant" and only accused ED&F of *negligent* misrepresentation. SKAT's positions in the two litigations are inconsistent. Third-Party Plaintiffs wholly relied on documents and information provided by ED&F as custodian for the Plans. Accordingly, SKAT should not be allowed to accuse Third-Party Plaintiffs of fraud in this litigation while taking the position in the U.K. Proceeding that ED&F is a "non-fraud defendant."

brokerage accounts, executed securities transactions for the Plans, and could confirm the Plans'
Holdings, Dividends, and withholding-tax refunds.

84.    Moreover, if ED&F is correct regarding the veracity of the Disavowed Tax
Vouchers, then the Plans are still entitled to the amount of the withholding-tax they received;
however, in that instance, ED&F may be liable to SKAT.

**G. Alternatively, ED&F must repay the fees it collected in relation to the Plans' transactions and withholding-tax refunds if SKAT is entitled to damages or restitution.**

85.    Parties that facilitate securities transactions and related transactions typically
charge fees.  Fees are often charged as a percentage of the total profit or cost of the transaction.
This is common in many service-oriented industries and is simply understood as the "cost of doing
business."

86.    As should be expected, ED&F collected fees from the Plans in connection with the
Plans' transactions, Holdings, Dividends, and/or withholding-tax refunds.

87.    In its Amended Defence, ED&F admitted that it "received fees out of the proceeds
of any successful [withholding-tax] applications which included a Tax Voucher prepared by
ED&F."

88.    ED&F charged fees to and collected fees from the Plans out of the proceeds of the
successful withholding-tax applications that were supported by ED&F's Disavowed Tax
Vouchers.

89.    If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to
reimbursement of some or all of the amounts that SKAT reimbursed or refunded to the Plans, then
ED&F should be required, at a minimum, to return any fees it collected from the Plans in
connection with the Plans' transactions, Holdings, Dividends, and/or withholding-tax refunds,

including the fees charged to the Plans and collected by ED&F in relation to the Disavowed Tax Vouchers.

### THIRD-PARTY CLAIM COUNT I
### Fraud – *Third-Party Plaintiffs v. ED&F*

90.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 89 of this Amended Third-Party Complaint as if set forth fully herein.

91.     ED&F prepared and transmitted the Tax Vouchers, including the Disavowed Tax Vouchers, to the Plans.

92.     According to ED&F's recent admissions, the Disavowed Tax Vouchers contain false statements of material fact concerning each Plans' receipt of dividends and suffering of dividend-withholding taxes.

93.     If ED&F's admission is true, it is clear that the Plan's account statements provided by ED&F, which also show the Plan received dividends from Danish issuers net of withholding tax, are equally inaccurate.

94.     ED&F intentionally, knowingly, and/or recklessly made or caused to be made the false statements in the Disavowed Tax Vouchers and account statements for the purpose of inducing Third-Party Plaintiffs to request withholding-tax refunds from SKAT.

95.     ED&F had a financial interest in making the misstatements in the Disavowed Tax Vouchers and account statements because, in making those misstatements, it put itself in a position to charge the Plans for custody and clearance fees after SKAT accepted the withholding-tax applications based on the Disavowed Tax Vouchers.

96.     Third-Party Plaintiffs, without knowledge or reason to know of any false information in the Tax Vouchers, the Disavowed Tax Vouchers, or account statements reasonably

relied on ED&F's misstatements when the Plans requested the dividend-withholding taxes SKAT now wants returned.

97.    Third-Party Plaintiffs reasonably relied on the Tax Vouchers, including the Disavowed Tax Vouchers, and other information provided by ED&F, including buy/sell confirmations and account statements, when significant amounts of money were spent in defense against SKAT and in appeal of SKAT's final determinations.

98.    If SKAT is entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to damages, restitution, punitive damages, and/or fees and costs, plus interest.

99.    ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs spent in defense of Third-Party Plaintiffs against SKAT and in the appeals of SKAT's final determinations in Denmark.

100.    ED&F's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling Third-Party Plaintiffs to punitive damages.

**THIRD-PARTY CLAIM COUNT II**
**Negligent Misrepresentation – *Third-Party Plaintiffs v. ED&F***

101.    The Plans repeat and reallege paragraphs 1 through 100 of this Amended Third-Party Complaint as if set forth fully herein.

102.    At all relevant times herein, ED&F had a duty to provide truthful and accurate tax vouchers and other documentation concerning the Plan's securities and brokerage accounts.

103.    According to ED&F's own admissions, ED&F made material, factual misstatements in the Disavowed Tax Vouchers and certain account statements that it represented were true, but which were, in fact, not true when made.

21

104.    ED&F knew or should have known that the Disavowed Tax Vouchers were inaccurate when it prepared them for the Plans.

105.    ED&F failed to use reasonable care to determine whether misstatements in the Disavowed Tax Vouchers or account statements were true.

106.    ED&F was in a better position than Third-Party Plaintiffs to know the true facts.

107.    Third-Party Plaintiffs, without knowledge or reason to know of any false statements in the Tax Vouchers, Disavowed Tax Vouchers, or account statements reasonably relied on ED&F's misstatements when the Plans requested the dividend-withholding taxes SKAT now wants returned.

108.    If SKAT is entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to damages, restitution, punitive damages, and/or fees and costs, plus interest.

109.    ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs, plus interest, spent in defense of Third-Party Plaintiffs against SKAT and in the appeals of SKAT's final determinations in Denmark.

## THIRD-PARTY CLAIM COUNT III
### Breach of Contract – *The Plans v. ED&F*

110.    The Plans repeat and reallege paragraphs 1 through 109 of this Amended Third-Party Complaint as if set forth fully herein.

111.    The Agreements between the Plans and ED&F constitute binding and enforceable contracts.

112.    The Plans performed their obligations under the Agreements at all relevant times.

22

113.     ED&F's obligations required ED&F to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans' brokerage accounts and ownership of securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

114.     ED&F's obligations prohibited ED&F from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

115.     ED&F breached its obligations by, at the very least, making the false statements in the Disavowed Tax Vouchers and account statements.

116.     SKAT's claims against Third-Party Plaintiffs involve issues and circumstances for which any liability of Third-Party Plaintiffs, if any exists, rests with ED&F.

117.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached the Agreements, and the Plans will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches of contract.

118.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to the Plans for any amounts or other remedies the Plans are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

119.     ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs, plus interest, spent in defense of Third-Party Plaintiffs against SKAT and in the appeals of SKAT's final determinations.

**THIRD-PARTY CLAIM COUNT IV**
**Breach of Fiduciary Duty – *Third-Party Plaintiffs v. ED&F***

120.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 119 of this Amended Third-Party Complaint as if set forth fully herein.

121.    ED&F, as custodian to the Plans, had a fiduciary relationship with Third-Party Plaintiffs.  Third-Party Plaintiffs placed their confidence in ED&F to act in good faith and primarily for the benefit of the Plans and placed the Plans' property, interests, and trust in the charge of ED&F.  ED&F was uniquely positioned to confirm the Plans' Holdings, Dividends, brokerage accounts, securities transactions, and entitlement to dividend withholding taxes.

122.    On information and belief, ED&F was the only entity that had direct control over information concerning, among other things, the Plans' brokerage accounts, securities transactions, receipt of dividends, and entitlement to dividend withholding taxes.

123.    Because of its fiduciary relationship with Third-Party Plaintiffs, ED&F was required to deal truthfully and primarily for the benefit of the Plans at all times, to exercise reasonable care, skill, and diligence, and to advise Third-Party Plaintiffs of all relevant facts and circumstances known to ED&F.

124.    ED&F's fiduciary duties are separate and distinct from its contractual obligations to the Plans under the Agreements.

125.    ED&F breached its fiduciary duties by, at the very least, making the false statements in the Disavowed Tax Vouchers and in the account statements.

126.    If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached its fiduciary obligations owed to Third-Party Plaintiffs, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches.

127.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

128.    ED&F should further be liable to Third-Party Plaintiffs for any and all fees and costs, plus interest, spent in defense of Third-Party Plaintiffs against SKAT and in the appeals of SKAT's final determinations.

## THIRD-PARTY CLAIM COUNT V
### Promissory Estoppel – *Third-Party Plaintiffs v. ED&F*

129.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 128 of this Amended Third-Party Complaint as if set forth fully herein.

130.    ED&F promised to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans' brokerage accounts and ownership of securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

131.    ED&F promised to create only truthful and accurate documents in relation to the Plans' account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

132.    ED&F should have reasonably expected — and, on information and belief, did reasonably expect — its promises to induce Third-Party Plaintiffs to rely on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plans' Holdings and Dividends were, in fact, accurate and legitimate;

(ii) the Plans actually held the securities they represented to SKAT that they owned; (iii) the Plans actually received the Dividends they claimed to have received; (iv) taxes were withheld in relation to the Dividends and Holdings; and (v) the Plans were entitled to the withholding-tax refunds.

133.    Third-Party Plaintiffs acted with prudence and in reasonable reliance on ED&F's promises when they authorized Goal Taxback to submit applications for the withholding-tax refunds from SKAT and refrained from seeking from any other party a tax voucher or other documentation to support the Plans' tax-withholding refund claims.  On information and belief, ED&F knew that Third-Party Plaintiffs so relied on ED&F's promises.

134.    ED&F knew all important and material facts concerning its promises, the Holdings, the Dividends, the Tax Vouchers, and the withholding-tax refunds.

135.    ED&F failed to fulfill its promises by, at the very least, making the false statements in the Disavowed Tax Vouchers and account statements.

136.    If, as SKAT alleges, the Plans never held the shares they claimed to own, never received the dividends they claimed to have received, and/or are otherwise not entitled to the withholding-tax refunds, then ED&F failed to fulfill its promises, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a result of ED&F's failure to fulfill its promises.

137.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

138.    ED&F should further be liable to Third-Party Plaintiffs for any and all fees and costs, plus interest, spent in defense of Third-Party Plaintiffs against SKAT and in the appeals of SKAT's final determinations.

## THIRD-PARTY CLAIM COUNT VI
### Unjust Enrichment – *Third-Party Plaintiffs v. ED&F*

139.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 138 of this Amended Third-Party Complaint as if set forth fully herein.

140.    ED&F collected fees from the Plans in connection with the Plans' transactions, Holdings, Dividends, withholding-tax refunds, and Tax Vouchers, including the Disavowed Tax Vouchers.

141.    SKAT has alleged that the Plans' transactions, Holdings, Dividends, and Tax Vouchers were falsified and that the Plans were not entitled to the withholding-tax refunds from SKAT.

142.    ED&F has admitted that the Disavowed Tax Vouchers contained false information and has also, therefore, impliedly admitted that account statements provided to the Plans showing the Plans' receipt of dividends net of withholding taxes from Danish issuers likewise contain false information.

143.    It would be unjust for ED&F to retain the fees it collected from the Plans if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plans, and it would be further unjust for ED&F to retain the fees it collected in relation to the Disavowed Tax Vouchers.

144.    On information and belief, ED&F knowingly possesses the fees it collected from the Plans.

27

145.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plans, then ED&F will have been unjustly enriched in the amount of the fees it collected from the Plans, and ED&F should be liable to account and return the fees, plus interest.

**THIRD-PARTY CLAIM COUNT VII**
**Equitable Indemnification – *Third-Party Plaintiffs v. ED&F***

146.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 145 of this Amended Third-Party Complaint as if set forth fully herein.

147.    If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then Third-Party Plaintiffs will be liable to SKAT or will be obligated to repay SKAT the entire amount of the withholding-tax refunds paid by SKAT to the Plans.

148.    However, as alleged herein, Third-Party Plaintiffs relied on ED&F and ED&F's own statements, including false statements in the Disavowed Tax Vouchers and account statements.

149.    Furthermore, SKAT has alleged that it was ED&F that provided the statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

150.    ED&F has already admitted that it falsely represented the Plans' receipt of dividends net of withholding taxes from Danish issuers in the Disavowed Tax Vouchers and, by implication, in account statements showing the same information.

151.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to indemnify Third-Party Plaintiffs for all costs they have incurred and may incur as a result of any of SKAT's claims,

including, but not limited to, (i) any amounts owed by Third-Party Plaintiffs to SKAT or, in the alternative, any amounts ED&F received in connection with the Plans' transactions, Holdings, Dividends, withholding-tax refunds, and Tax Vouchers and (ii) any of Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest and other expenses arising out of or related to these third-party claims, SKAT's claims against Third-Party Plaintiffs, and/or the Plans' appeals of SKAT's final determinations.

### THIRD-PARTY CLAIM COUNT VIII
### Apportionment of Fault – *Third-Party Plaintiffs v. ED&F*

152.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 151 of this Amended Third-Party Complaint as if set forth fully herein.

153.    SKAT has filed claims against Third-Party Plaintiffs for damages and restitution arising out of and related to Third-Party Plaintiffs' dealings with ED&F.

154.    SKAT alleged that ED&F provided statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares, and thus, if SKAT proves its claims, then ED&F should be responsible for all or a portion of SKAT's alleged harm.

155.    Pursuant to the Utah Liability Reform Act, Utah Code §§ 78B-5-817, et seq., Third-Party Plaintiffs allege that all fault should be apportioned to ED&F for SKAT's claims against Third-Party Plaintiffs, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

156.    Third-Party Plaintiffs intend to include ED&F on a special verdict form for the purposes of allocation of fault, consistent with the above.

### JURY DEMAND

Third-Party Plaintiffs demand a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Third-Party Plaintiffs respectfully request that this Court enter judgment in their favor and against ED&F as follows:

I.    Enter judgment in favor of Third-Party Plaintiffs against ED&F on the third-party claims against ED&F;

II.    Apportion all fault to ED&F for SKAT's claims against Third-Party Plaintiffs, pursuant to the Utah Liability Reform Act, Utah Code §§ 78B-5-817, et seq.;

III.    Require ED&F to indemnify Third-Party Plaintiffs for all fees and costs arising out of or related to SKAT's claims against Third-Party Plaintiffs, the Plans' appeals of SKAT's final determination, and these third-party claims, including Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest, costs, and expenses;

IV.    Award Third-Party Plaintiffs their attorneys' fees and costs; and

V.    Grant such other preliminary, permanent, compensatory, or punitive relief against ED&F and in favor of Third-Party Plaintiffs as the Court deems just and proper.

November 12, 2019                          Respectfully submitted,

                                           K&L GATES LLP


                                           */s/ John C. Blessington*
                                           John C. Blessington (*pro hac vice*)
                                             john.blessington@klgates.com
                                           Brandon R. Dillman (*pro hac vice*)
                                             brandon.dillman@klgates.com
                                           K&L GATES LLP
                                           State Street Financial Center
                                           One Lincoln Street
                                           Boston, MA  02111
                                           T: 617.261.3100
                                           F: 617.261.3175

                                           *Attorneys for Defendants / Third-Party Plaintiffs*
                                           *DW Construction, Inc. Retirement Plan,*
                                           *Kamco Investments, Inc. Pension Plan,*
                                           *Kamco LP Profit Sharing Pension Plan,*
                                           *Moira Associates Defined Benefit Plan,*
                                           *Linden Associates Defined Benefit Plan,*
                                           *Riverside Associates Defined Benefit Plan,*
                                           *American Investment Group of New York,*
                                           *L.P. Pension Plan, Stacey Kaminer, Joan*
                                           *Schulman, and David Schulman*