# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:      18-cv-10100<br><br>---------------------------------------------------------<br><br>NEWSONG FELLOWSHIP CHURCH 401(K) PLAN and ALEXANDER JAMIE MITCHELL III,<br><br>        Third-Party Plaintiffs,<br><br>v.<br><br>ED&F MAN CAPITAL MARKETS LTD.,<br><br>        Third-Party Defendant. | MASTER DOCKET<br><br>18-md-2865 (LAK)<br><br><br><br><br><br><br><br><u>**AMENDED THIRD-PARTY COMPLAINT AND JURY DEMAND**</u> |

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendants/Third-Party Plaintiffs Newsong Fellowship Church 401(k) Plan ("the Plan") and Alexander Jamie Mitchell (the "Trustee") (together, "Third-Party Plaintiffs"), bring the following amended third-party claims against the Plan's broker-custodian, Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F").

The Plan submitted withholding-tax refund requests to Plaintiff Skatteforvaltningen ("SKAT") based on information provided to the Plan by ED&F, including four (4) "tax vouchers" that confirmed the Plan's receipt of dividends net of withholding taxes from Danish issuers,

suffering of withholding taxes, and entitlement to tax reclaims.  Shortly after Third-Party Plaintiffs filed their Third-Party Complaint against ED&F in this action, ED&F admitted that all four (4) of the tax vouchers on which Third-Party Plaintiffs relied were false.  The falsity of the tax vouchers was first discovered by Third-Party Plaintiffs in September 2019 after ED&F admitted in a court filing that they were inaccurate.

Notwithstanding the above, Third-Party Plaintiffs firmly believe the Plan is entitled to the withholding-tax refunds the Plan claimed from SKAT and that SKAT now wants returned in its actions against Third-Party Plaintiffs.  If, however, SKAT's allegations against Third-Party Plaintiffs are proven to be true or if SKAT is otherwise entitled to a return of the tax refunds from Third-Party Plaintiffs, then ED&F — not Third-Party Plaintiffs — should be responsible because ED&F (1) managed, controlled, and executed the Plan's Danish securities transactions, which are the focus of SKAT's claims; (2) provided all of the information concerning the Plan's securities, dividends, and withholding-tax information on which Third-Party Plaintiffs relied, including the now-disavowed tax vouchers; and (3) collected fees in connection with the Plan's securities transactions and withholding-tax refunds, including in connection with the now-disavowed tax vouchers.

## PARTIES

1.      The Plan was a U.S. pension plan.  Before it dissolved, the Plan was a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation. At all relevant times, the Plan was located at 1102 Millersville Pike, Lancaster, Pennsylvania, 17603.

2.      At all relevant times, Acer Investment Group, LLC ("Acer") was the attorney in fact for the Plan in connection with the transactions involving ED&F that give rise to these third-party claims.  Acer is a limited liability company registered to do business in Utah with an office address of 5532 Lillehammer Lane, Suite 103, Park City, Utah, 84098.

3.      Alexander Jamie Mitchell III is a citizen of the United States.  At all relevant times herein, Mitchell was a resident of the Commonwealth of Pennsylvania and trustee for the Plan.

4.      ED&F is a financial brokerage business and financial servicer headquartered at 3 London Bridge Street, London, SE1 9SG, United Kingdom.  At all relevant times, ED&F managed and controlled a brokerage account for the Plan, executed trades in Danish securities for the Plan, provided documentation and information to the Plan in connection with the Plan's account, securities transactions, dividends receipts, and tax vouchers, and collected fees in connection with the Plan's withholding-tax refund requests.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because the claims are between U.S. citizens and citizens of foreign states.  This Court also has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367 because the third-party claims form part of the same case or controversy as SKAT's claims.

6.      This action was transferred from the United States District Court for the Eastern District of Pennsylvania to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407.  This Court, as the transferee court, must apply the law of the transferor court to determine whether it can exercise personal jurisdiction.

7.     This Court has personal jurisdiction over ED&F because ED&F's conduct giving rise to these third-party claims was purposefully directed toward residents of the Commonwealth of Pennsylvania, ED&F transacted business with the Plan at the time when it existed in Pennsylvania, and ED&F caused tortious injury to the Plan throughout their brokerage relationship, including by providing inaccurate tax vouchers and other records on which the Pennsylvania-based Plan relied.  Through the parties' brokerage relationship, ED&F established a continuing and ongoing relationship with the Pennsylvania-based Plan and therefore created a substantial connection to the Commonwealth of Pennsylvania.

8.     These third-party claims are properly venued for pretrial purposes in the United States District Court for the Southern District of New York because this action was transferred to this Court for pretrial purposes only pursuant to 28 U.S.C. § 1407.  These third-party claims are properly venued for trial in the United States District Court for the Eastern District of Pennsylvania because ED&F is subject to that court's personal jurisdiction.

9.     By filing these third-party claims in the United States District Court for the Southern District of New York, Third-Party Plaintiffs do not waive their respective rights to have SKAT's claims and these third-party claims transferred back to the United States District Court for the Eastern District of Pennsylvania for purposes of trial.

## STATEMENT OF FACTS

**A. ED&F entered into various agreements with the Plan pursuant to which ED&F agreed to exercise reasonable care in relation to the Plan's transactions and account.**

10.     ED&F is a broker registered with the Financial Conduct Authority ("FCA"), which regulates the U.K. financial and securities markets.

11.     In 2012, the Plan and ED&F executed various agreements (the "Agreements") that set forth ED&F's obligations as broker-custodian for the Plan.   The Agreements include a Custody

Agreement, Security and Set-Off Deed, ISDA Master Agreement, and Terms and Conditions of Business, with variations thereto.

12.    The Plan's Custody Agreement with ED&F is attached hereto as Exhibit A.

13.    The Plan's Custody Agreement with ED&F identifies Pennsylvania as the Plan's location.

14.    ED&F required the Plan to execute a Letter of Agreement directed to the Plan in Pennsylvania and which further defined ED&F's brokerage relationship with the Pennsylvania-based Plan.

15.    ED&F's Letter of Agreement with the Plan is attached hereto as Exhibit B.

16.    For over two years, ED&F intentionally conducted business with, executed trades on behalf of, and prepared custody records for the Pennsylvania-based Plan.

17.    Pursuant to the Agreements, the Plan maintained a brokerage account with ED&F since at least June 2012.

18.    ED&F was required to exercise reasonable care when, among other things, (i) buying or selling securities for the Plan; (ii) keeping records and statements concerning the Plan's account and securities; (iii) acting on the Plan's instructions; (iv) registering the Plan's securities in compliance with FCA regulations; and (v) crediting all income, dividends, and other proceeds on the Plan's securities only after actual receipt and reconciliation.

19.    ED&F was prohibited from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plan's securities holdings and brokerage account.

**B. The Plan traded in Danish securities through ED&F and intended to receive dividends net of withholding taxes from Danish issuers and to apply for withholding-tax refunds based on the information provided by ED&F.**

20.     At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

21.     Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

22.     At all relevant times, SKAT served the Danish government as the agency responsible for administering Danish taxes and refunding dividend-withholding taxes, including refunds of dividend-withholding taxes owed to U.S. pension plans.

23.     Between March 2014 and September 2014, the Plan traded in shares of certain Danish companies through ED&F.

24.     As a result, ED&F generated a number of documents detailing and describing each of the transactions, including buy/sell confirmations for the Plan's transactions, account statements showing that the transactions occurred, and tax vouchers describing the Plan's security holdings and receipt of dividends net of withholding-taxes from Danish issuers.

25.     ED&F provided documents and information concerning the Plan's holdings, security interests, and withholding-taxes to the Plan through Acer.

26.     According to the information and documents provided by ED&F, the Plan's holding of shares in Danish companies resulted in the crediting of dividends net of withholding taxes from those Danish companies to the Plan's brokerage account.

27.     Based on the documents and information provided by ED&F, the Plan was led to believe that it held securities in Danish companies in its ED&F brokerage account on or around

the relevant record dates for payment of dividends from Danish issuers (the "Holdings") and actually received dividends net of withholding taxes from the relevant Danish issuer on those securities (the "Dividends").

**C. Third-Party Plaintiffs relied on ED&F when the Plan applied for withholding-tax refunds from SKAT.**

28.     Third-Party Plaintiffs entrusted ED&F, as custodian for the Plan, with the management and control of the Plan's brokerage account, the execution of securities transactions for the Plan, and the preparation of any tax vouchers related thereto.

29.     ED&F prepared such tax vouchers (the "Tax Vouchers") by which ED&F purportedly confirmed the Plan's relevant shareholdings over the applicable dividend dates and described the Dividends received by the Plan from Danish issuers net of withholding taxes.

30.     ED&F prepared a Tax Voucher for the each of the Plan's Holdings and Dividends.

31.     ED&F knew that the Plan intended to request withholding-tax refunds from SKAT through Goal Taxback Ltd. ("Goal Taxback"), a third-party payment-processing agent, recommended to the Plan by ED&F.

32.     ED&F would send the Tax Vouchers directly to Goal Taxback, who would then submit the applications for withholding-tax refunds to SKAT on behalf of the Plan.

33.     ED&F would also send copies of the Tax Vouchers to Plan through Acer.  The Plan, through Acer, received the Tax Vouchers from ED&F when Goal Taxback received the Tax Vouchers so the Plan would be aware whether a withholding-tax refund application would be submitted by Goal Taxback on its behalf.

34.     With each of the Tax Vouchers, ED&F confirmed the Plan's relevant shareholdings over the applicable dividend dates, described the Dividends received by the Plan from Danish issuers net of withholding taxes, and stated that ED&F "has no beneficial interest in the holding

and will not be reclaiming the tax.  The dividends specified on this credit advice were paid net of withholding tax to [the Plan]."  For example:



**ED&F MAN**

E D & F MAN CAPITAL MARKETS LIMITED

## Tax Voucher

We ED&F Man Capital Markets Ltd, based at Cotton's Centre, Hays Lane,  London SE1 2QE and registered in the United Kingdom – confirm, Newsong Fellowship Church  401K - 1102 Millersville Pike, Lancaster, PA 17603, USA, was holding the below security over the dividend date.

| | |
|---|---|
| Security Description: | Danske Bank A/S |
| ISIN: | DK0010274414 |
| SEDOL: | 4588825 |
| Ex Date: | 19/03/2014 |
| Record Date: | 21/03/2014 |
| Pay Date: | 24/03/2014 |
| Quantity: | 2,000,000.00 |
| Gross Div Rate: | 2 |
| Amount Received: | 2,920,000.00 |
| WHT Suffered: | 1,080,000.00 |
| Currency | DKK |
| WHT %: | 27% |

ED&F Man Capital Markets Limited has no beneficial interest in the holding and will not be reclaiming the tax. The dividends specified on this credit advice were paid net of withholding tax to Newsong Fellowship Church  401K. If you have any further concerns or issues please do not hesitate to contact us.

A U T H O R I S E D   S I G N A T O R Y

Christina MacKinnon

*C. MacKinnon*

Head of Securities Operations

35.     Importantly, each of the Tax Vouchers stated the dividend "received" by the Plan and the withholding-tax "suffered" by each Plan.

36.     Attached hereto as Exhibit C are the four (4) Tax Vouchers provided by ED&F for the Plan's withholding-tax refunds.

37.     At all relevant times, ED&F owed a duty to the Plan to create true and accurate documents and was uniquely positioned to confirm the status of the Plan's Holdings, Dividends, brokerage account, securities transactions, and entitlement to dividend-withholding taxes.

38.     Third-Party Plaintiffs placed their confidence in ED&F to act primarily for the benefit of the Plan and placed the Plan's property, interests, and trust in the charge of ED&F.

39.     On information and belief, ED&F was the only entity that had direct control over the information concerning, among other things, ED&F's custody account(s), the Plan's brokerage account, securities in that account, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend-withholding taxes.

40.     After ED&F apparently confirmed that the Plan received the Dividends from the Danish issuer net of withholding taxes, ED&F sent the Tax Vouchers to Goal Taxback.

41.     ED&F provided the Plan with account statements reflecting all Danish securities transactions in its ED&F brokerage account.  The account statements purportedly confirmed that for each transaction reflected on the Tax Vouchers, the Plan owned the relevant shares on the respective record dates and was paid the applicable dividends from the Danish issuer, minus Danish withholding taxes.

42.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

43.     SKAT paid the Plan through Goal Taxback for all of the Plan's withholding-tax refunds.

44.     In 2018, SKAT sued Third-Party Plaintiffs seeking damages and/or restitution in the amount of the withholding-tax refunds SKAT paid to the Plan, alleging fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, money had and received, and payment by mistake.

45.     SKAT voluntarily dismissed its claims for fraud, aiding and abetting fraud, and negligent misrepresentation on November 20, 2018.  *See* Plaintiff's Notice of Partial Voluntary Dismissal (CA 18-cv-10100), Doc. No. 34.  On June 12, 2019, the Court dismissed SKAT's payment-by-mistake claim.  *See* Pretial Order No. 8 (CA 18-md-2865), Doc. No.133.

46.     Thus, as currently pleaded, SKAT alleges Third-Party Plaintiffs owe SKAT $ 664,000.00 based on theories of unjust enrichment and money had and received.

**D.  Third-Party Plaintiffs relied on information provided by ED&F, including the Tax Vouchers, when they chose to defend against SKAT's claims and pursue appeals in Denmark challenging SKAT's revocations of its tax-refund payments to the Plan.**

47.     SKAT stopped paying withholding-tax refunds in August 2015, and, in early 2018, SKAT issued its decisions revoking its prior payments of withholding-tax refunds to the Plan.

48.     Since that time, significant fees and costs have been spent defending the Plan's applications for withholding-tax refunds based on the documentation provided to the Plan by ED&F.

49.     On or about the same day SKAT started filing civil actions against pension plans in the United States concerning withholding-tax refunds, SKAT also rendered its "final determinations" concerning the Plan's withholding-tax refund applications.

50.     In that final determination concerning the Plan, SKAT determined that the Plan was not entitled to the withholding-tax refunds paid by SKAT because SKAT's initial decisions to pay the Plan had been made on a "false basis."

51.     Relying on the purported truthfulness of the documents and information provided by SKAT, including the Tax Vouchers and account statements, the Plan appealed SKAT's decision in August 2018.

52.     Significant amounts have been spent defending the Plan's withholding-tax applications and appealing SKAT's final determination based on the documentation ED&F provided to the Plan, including the Tax Vouchers and account statements, which showed the Plan was entitled to the withholding-tax refunds from SKAT.

53.     Likewise, significant amounts have been spent in defense of Third-Party Plaintiffs in this action filed by SKAT.

**E.  In September 2019, ED&F admitted that all of the Tax Vouchers that it created for the Plan are inaccurate.**

54.     SKAT sued ED&F in the United Kingdom (the "U.K. Proceeding") over the same transactions that are the basis of SKAT's claims against Third-Party Plaintiffs.

55.     In September 2019, ED&F filed its Amended Defence in the U.K. Proceeding and identified eighty (80) tax vouchers issued by ED&F to pension plans that it now, for the first time, alleged were inaccurate.

56.     ED&F stated that all four (4) of the tax vouchers it prepared for the Plan contained false information and listed those tax vouchers in Annex E to its Amended Defence.

57.     ED&F's list of the now-disavowed tax vouchers is attached hereto as Exhibit D, with the now-disavowed Tax Vouchers relevant to the Plan highlighted.

58.     ED&F stated that each of the now-disavowed Tax Vouchers was "inaccurate in that the [Plan] identified therein: had not '*received*' the amount set out therein by way of dividend from the Danish Listed Company; and had not '*suffered*' [withholding tax] in the amount set out therein in relation to such dividend at the stated (27%) or any rate."

11

59.     According to ED&F, the Plan's Tax Vouchers are wholly inaccurate in that the Plan did not receive any actual dividend from a Danish issuer and did not suffer any withholding taxes.

60.     At the time of the transactions, ED&F sent all four (4) of the Tax Vouchers to the Plan.

61.     At the time of the transactions, ED&F also provided the Plan with accounts statements showing that the Plan received cash dividends net of withholding taxes from the relevant Danish issuers.

62.     If ED&F is correct and its now-disavowed Tax Vouchers contain false information, then the account statements provided by ED&F showing the Plan's receipt of cash dividends net of withholding taxes from the relevant Danish issuers also contain the same false information as the Tax Vouchers.

63.     If the Plan had not received the inaccurate information contained in the now-disavowed Tax Vouchers or misleading account statements from ED&F, the Plan never would have submitted withholding-tax refund applications to SKAT.

64.     Because of ED&F's unique position as broker-custodian for the Plan and its access to all relevant information concerning the Plan's securities, holdings, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend withholding taxes, ED&F possessed all of the information necessary to determine the accuracy of the information in the now-disavowed Tax Vouchers and in the misleading account statements at the time ED&F sent the them to the Plan.

65.     With the Tax Vouchers and misleading account statements, ED&F misrepresented the Plan's dividend receipts and withholding-tax-entitlement status while knowing that the Plan intended to rely on that information to support the Plan's refund applications.

66.     When ED&F transmitted the now-disavowed Tax Vouchers and misleading account statements to the Plan, ED&F knew or should have known that the dividend and withholding-tax information contained in those documents was false.

67.     As a result of the Tax Vouchers now being disavowed, ED&F admits that it misrepresented the withholding tax owed to the Plan by the full amount set out in each Tax Voucher, totaling, approximately, $ 664,000.00.

68.     Third-Party Plaintiffs never had reason to doubt the veracity of the Tax Vouchers or any of the account statements provided by ED&F until September 2019, after ED&F filed its Amended Defence in the U.K. Proceedings.

69.     ED&F never warned the Plan that it had determined that the Tax Vouchers were inaccurate or that it would be filing documents in the U.K. Proceedings declaring the Tax Vouchers false.

70.     Indeed, it has only been through litigation involving SKAT that ED&F has communicated the apparent falsehoods to the Plan.

71.     Despite multiple inquires from Third-Party Plaintiffs, ED&F has refused to explain why the Tax Vouchers are false or how ED&F reached that determination.

72.     ED&F has offered no evidence that it did not know the Tax Vouchers were false when first transmitted to the Plan and Goal Taxback.

73.     Despite being in the best position to know whether or not the Plan received actual dividends net of withholding taxes from Danish issuers and suffered withholding tax, ED&F nevertheless issued the now-disavowed Tax Vouchers and misleading account statements reflecting that the Plan had actually received dividends from the Danish-listed company and had suffered withholding tax at a rate of 27% of such dividends.

74.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers issued by ED&F and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plan's Holdings and Dividends were accurate; (ii) the Plan actually held the securities it represented to SKAT that it owned; (iii) the Plan received the Dividends from Danish issuers net of withholding taxes; (iv) dividend tax was withheld in relation to the Dividends and the Holdings; and (v) the Plan was entitled to withholding-tax refunds from SKAT in the amount set out in the Tax Vouchers.

75.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

76.     But for the Tax Vouchers and other information prepared by ED&F, Third-Party Plaintiffs would not have requested withholding-tax refunds from SKAT.

77.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers, and other information provided by ED&F, including buy/sell confirmations and account statements, when significant amounts of money were spent defending the Plan's withholding-tax applications and appealing SKAT's final determinations.

**F.  If SKAT proves the Plan did not own the shares it claimed to own, did not earn the dividends it claimed to have earned, or was otherwise not entitled to the withholding taxes it claimed, then ED&F should be responsible for any amounts claimed by SKAT.**

78.     SKAT alleges Third-Party Plaintiffs misrepresented the Plan's Holdings and Dividends when the Plan requested the withholding-tax refunds.

79.     SKAT alleges that the Plan did not own the shares that it claimed to own, did not earn the dividends it claimed to have earned, and was not entitled to the tax refunds that it claimed.

14

80.     SKAT also alleges that ED&F provided statements falsely representing that the Plan owned shares in Danish companies and had earned dividends on those shares.

81.     To be clear, Third-Party Plaintiffs have never attempted to defraud or commit other wrongful actions against SKAT.[1]

82.     If, however, SKAT proves its claims and establishes that Third-Party Plaintiffs are liable to SKAT for some or all of SKAT's alleged damages or amounts it claims to be owed, then ED&F should be responsible for such damages because of ED&F's obligations under the Agreements, its duty to transmit only truthful and accurate information to the Plan, and because of its unique position by which it managed and controlled its custody account(s), the Plan's brokerage account, executed securities transactions for the Plan, and could confirm the Plan's Holdings, Dividends, and withholding-tax refunds.

83.     Moreover, if ED&F is correct regarding the veracity of the now-disavowed Tax Vouchers, then the Plan is still entitled to the amount of the withholding-tax it received; however, in that instance, ED&F may be liable to SKAT.

**G. Alternatively, ED&F must repay the fees it collected in relation to the Plan's transactions and withholding-tax refunds if SKAT is entitled to damages or restitution.**

84.     Parties that facilitate securities transactions and related transactions typically charge fees.  Fees are often charged as a percentage of the total profit or cost of the transaction.

---

[1] SKAT sued ED&F in the United Kingdom (the "U.K. Proceeding") over the same transactions that are the basis of SKAT's claims against Third-Party Plaintiffs.  Notably, however, in the U.K. Proceeding, SKAT did not allege that ED&F committed any fraud.  Instead, SKAT described ED&F as a "non-fraud defendant" and only accused ED&F of *negligent* misrepresentation. SKAT's positions in the two litigations are inconsistent.  Third-Party Plaintiffs wholly relied on documents and information provided by ED&F as custodian for the Plan.  Accordingly, SKAT should not be allowed to accuse Third-Party Plaintiffs of fraud in this litigation while taking the position in the U.K. Proceeding that ED&F is a "non-fraud defendant."

This is common in many service-oriented industries and is simply understood as the "cost of doing business."

85.     As should be expected, ED&F collected fees from the Plan in connection with the Plan's transactions, Holdings, Dividends, and/or withholding-tax refunds.

86.     In its Amended Defence, ED&F admitted that it "received fees out of the proceeds of any successful [withholding-tax] applications which included a Tax Voucher prepared by ED&F."

87.     ED&F charged fees to and collected fees from the Plan out of the proceeds of the successful withholding-tax applications that were supported by ED&F's now-disavowed Tax Vouchers.

88.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT reimbursed or refunded to the Plan, then ED&F should be required, at a minimum, to return any fees it collected from the Plan in connection with the Plan's transactions, Holdings, Dividends, and/or withholding-tax refunds, including the fees charged to the Plan and collected by ED&F in relation to the now-disavowed Tax Vouchers.

### THIRD-PARTY CLAIM COUNT I
### Fraud - *Third-Party Plaintiffs v. ED&F*

89.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 88 of this Amended Third-Party Complaint as if set forth fully herein.

90.     ED&F prepared and transmitted the Tax Vouchers to the Plan.

91.     According to ED&F's recent admissions, the now-disavowed Tax Vouchers contain false statements of material fact concerning the Plan's receipt of dividends and suffering of dividend-withholding taxes.

92.     If ED&F's admission is true, it is clear that the Plan's account statements provided by ED&F, which also show the Plan received dividends from Danish issuers net of withholding tax, are equally inaccurate.

93.     ED&F intentionally, knowingly, and/or recklessly made or caused to be made the false statements in the Tax Vouchers and account statements for the purpose of inducing Third-Party Plaintiffs to request withholding-tax refunds from SKAT.

94.     ED&F had a financial interest in making the misstatements in the disavowed Tax Vouchers and account statements because, in making those misstatements, it put itself in a position to charge the Plan for custody and clearance fees after SKAT accepted the withholding-tax applications based on the Tax Vouchers.

95.     Third-Party Plaintiffs, without knowledge or reason to know of any false information in the Tax Vouchers or account statements, reasonably relied on ED&F's misstatements when the Plan requested the dividend-withholding taxes SKAT now wants returned.

96.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers, and other information provided by ED&F, including buy/sell confirmations and account statements, when significant amounts of money were spent in defense against SKAT and in appeal of SKAT's final determinations.

97.     If SKAT is entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to damages, restitution, punitive damages, and/or fees and costs, plus interest.

98.     ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs spent in defense of Third-Party Plaintiffs against SKAT and in appeal of SKAT's final determination.

99.     ED&F's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonest, entitling Third-Party Plaintiffs to punitive damages.

### THIRD-PARTY CLAIM COUNT II
#### Negligent Misrepresentation - *Third-Party Plaintiffs v. ED&F*

100.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 99 of this Amended Third-Party Complaint as if set forth fully herein.

101.    At all relevant times herein, ED&F had a duty to provide truthful and accurate tax vouchers and other documentation concerning the Plan's securities and brokerage account.

102.    According to ED&F's own admissions, ED&F made material, factual misstatements in the Tax Vouchers and certain account statements that it represented were true, but which were, in fact, not true when made.

103.    ED&F knew or should have known that the now-disavowed Tax Vouchers were inaccurate when it prepared them for the Plan.

104.    ED&F failed to use reasonable care to determine whether misstatements in the Tax Vouchers or account statements were true.

105.    ED&F was in a better position than Third-Party Plaintiffs to know the true facts.

106.    Third-Party Plaintiffs, without knowledge or reason to know of any false statements in the Tax Vouchers or account statements, reasonably relied on ED&F's misstatements when the Plan requested the dividend-withholding taxes SKAT now wants returned.

107.    If SKAT is entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe

SKAT, including, but not limited to damages, restitution, punitive damages, and/or fees and costs, plus interest.

108.    ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs, plus interest, spent in defense of Third-Party Plaintiffs against SKAT and in appeal of SKAT's final determination.

**THIRD-PARTY CLAIM COUNT III**
**Breach of Contract – *The Plan v. ED&F***

109.    The Plan repeats and realleges paragraphs 1 through 108 of this Amended Third-Party Complaint as if set forth fully herein.

110.    The Agreements between the Plan and ED&F constitute binding and enforceable contracts.

111.    The Plan performed its obligations under the Agreements at all relevant times.

112.    ED&F's obligations required ED&F to exercise reasonable care when, among other things, (i) buying or selling securities for the Plan; (ii) keeping records and statements concerning the Plan's brokerage account and ownership of securities; (iii) acting on the Plan's instructions; (iv) registering the Plan's securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plan's securities only after actual receipt and reconciliation.

113.    ED&F's obligations prohibited ED&F from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plan's securities holdings and brokerage account.

114.    ED&F breached its obligations by, at the very least, making the false statements in the Tax Vouchers and account statements.

115.    SKAT's claims against Third-Party Plaintiffs involve issues and circumstances for which any liability of Third-Party Plaintiffs, if any exists, rests with ED&F.

116.    If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached the Agreements, and the Plan will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches of contract.

117.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to the Plan for any amounts or other remedies the Plan is found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

118.    ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs spent in defense of Third-Party Plaintiffs against SKAT and in appeal of SKAT's final determination.

### THIRD-PARTY CLAIM COUNT IV
### Breach of Fiduciary Duty – *Third-Party Plaintiffs v. ED&F*

119.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 118 of this Amended Third-Party Complaint as if set forth fully herein.

120.    ED&F, as custodian to the Plan, had a fiduciary relationship with Third-Party Plaintiffs.  Third-Party Plaintiffs placed their confidence in ED&F to act in good faith and primarily for the benefit of the Plan and placed the Plan's property, interests, and trust in the charge of ED&F.  ED&F was uniquely positioned to confirm the Plan's Holdings, Dividends, brokerage account, securities transactions, and entitlement to dividend withholding taxes.

121.    On information and belief, ED&F was the only entity that had direct control over information concerning, among other things, the Plan's brokerage account, securities transactions, receipt of dividends, and entitlement to dividend withholding taxes.

122.     Because of its fiduciary relationship with Third-Party Plaintiffs, ED&F was required to deal truthfully and primarily for the benefit of the Plan at all times, to exercise reasonable care, skill, and diligence, and to advise Third-Party Plaintiffs of all relevant facts and circumstances known to ED&F.

123.     ED&F's fiduciary duties are separate and distinct from its contractual obligations to the Plan under the Agreements.

124.     ED&F breached its fiduciary duties by, at the very least, making the false statements in the now-disavowed Tax Vouchers and in the account statements.

125.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached its fiduciary obligations owed to Third-Party Plaintiffs, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches.

126.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

127.     ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs spent in defense of Third-Party Plaintiffs against SKAT and in appeal of SKAT's final determination.

### THIRD-PARTY CLAIM COUNT V
### Promissory Estoppel – *Third-Party Plaintiffs v. ED&F*

128.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 127 of this Amended Third-Party Complaint as if set forth fully herein.

129.   ED&F promised to exercise reasonable care when, among other things, (i) buying or selling securities for the Plan; (ii) keeping records and statements concerning the Plan's brokerage account and ownership of securities; (iii) acting on the Plan's instructions; (iv) registering the Plan's securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plan's securities only after actual receipt and reconciliation.

130.   ED&F promised to create only truthful and accurate documents in relation to the Plan's account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plan's securities holdings and brokerage account.

131.   ED&F should have reasonably expected — and, on information and belief, did reasonably expect — its promises to induce Third-Party Plaintiffs to rely on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plan's Holdings and Dividends were, in fact, accurate and legitimate; (ii) the Plan actually held the securities it represented to SKAT that it owned; (iii) the Plan actually received the Dividends it claimed to have received; (iv) taxes were withheld in relation to the Dividends and Holdings; and (v) the Plan was entitled to the withholding-tax refunds.

132.   Third-Party Plaintiffs acted with prudence and in reasonable reliance on ED&F's promises when they authorized Goal Taxback to submit applications for the withholding-tax refunds from SKAT and refrained from seeking from any other party a tax voucher or other documentation to support the Plan's tax-withholding refund claims.  On information and belief, ED&F knew that Third-Party Plaintiffs so relied on ED&F's promises.

133.   ED&F knew all important and material facts concerning its promises, the Holdings, the Dividends, the Tax Vouchers, and the withholding-tax refunds.

134.    ED&F failed to fulfill its promises by, at the very least, making the false statements in the now-disavowed Tax Vouchers and account statements.

135.    If, as SKAT alleges, the Plan never held the shares it claimed to own, never received the dividends it claimed to have received, and/or are otherwise not entitled to the withholding-tax refunds, then ED&F failed to fulfill its promises, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a result of ED&F's failure to fulfill its promises.

136.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

137.    ED&F should be further liable to Third-Party Plaintiffs for any and all fees and costs spent in defense of Third-Party Plaintiffs against SKAT and in appeal of SKAT's final determination.

### THIRD-PARTY CLAIM COUNT VI
### Unjust Enrichment – *Third-Party Plaintiffs v. ED&F*

138.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 137 of this Amended Third-Party Complaint as if set forth fully herein.

139.    ED&F collected fees from the Plan in connection with the Plan's transactions, Holdings, Dividends, withholding-tax refunds, and Tax Vouchers.

140.    SKAT has alleged that the Plan's transactions, Holdings, Dividends, and Tax Vouchers were falsified and that the Plan was not entitled to the withholding-tax refunds from SKAT.

141.    ED&F has admitted that the Tax Vouchers contained false information and has also, therefore, impliedly admitted that account statements provided to the Plan showing the Plan's

receipt of dividends net of withholding taxes from Danish issuers likewise contain false information.

142.    It would be unjust for ED&F to retain the fees it collected from the Plan if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plan, and it would be further unjust for ED&F to retain the fees it collected in relation to the Disavowed Tax Vouchers.

143.    On information and belief, ED&F knowingly possesses the fees it collected from the Plan.

144.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plan, then ED&F will have been unjustly enriched in the amount of the fees it collected from the Plan, and ED&F should be liable to account and return the fees, plus interest.

### THIRD-PARTY CLAIM COUNT VII
### Equitable Indemnification – *Third-Party Plaintiffs v. ED&F*

145.    Third-Party Plaintiffs repeat and reallege paragraphs 1 through 144 of this Amended Third-Party Complaint as if set forth fully herein.

146.    If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then Third-Party Plaintiffs will be liable to SKAT or will be obligated to repay SKAT the entire amount of the withholding-tax refunds paid by SKAT to the Plan.

147.    However, as alleged herein, Third-Party Plaintiffs relied on ED&F and ED&F's own statements, including the false statements in the now-disavowed Tax Vouchers and account statements.

148.    Furthermore, SKAT has alleged that it was ED&F that provided the statements falsely representing that the Plan owned shares in Danish companies and had earned dividends on those shares.

149.    ED&F has already admitted that it falsely represented the Plan's receipt of dividends net of withholding taxes from Danish issuers in the now-disavowed Tax Vouchers and, by implication, in account statements showing the same information.

150.    Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to indemnify Third-Party Plaintiffs for all costs they have incurred and may incur as a result of any of SKAT's claims, including, but not limited to, (i) any amounts owed by Third-Party Plaintiffs to SKAT or, in the alternative, any amounts ED&F received in connection with the Plan's transactions, Holdings, Dividends, and withholding-tax refunds, and Tax Vouchers, and (ii) any of Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest and other expenses arising out of or related to these third-party claims, SKAT's claims against Third-Party Plaintiffs, and/or the Plan's appeal of SKAT's final determination.

## JURY DEMAND

Third-Party Plaintiffs demand a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Third-Party Plaintiffs respectfully request that this Court enter judgment in their favor and against ED&F as follows:

I.    Enter judgment in favor of Third-Party Plaintiffs against ED&F on the third-party claims against ED&F;

II.    Apportion all fault to ED&F for SKAT's claims against Third-Party Plaintiffs;

III.    Require ED&F to indemnify Third-Party Plaintiffs for all fees and costs arising out of or related to SKAT's claims against Third-Party Plaintiffs, the Plan's appeal of SKAT's final determination, and these third-party claims, including Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest, costs, and expenses;

IV.    Award Third-Party Plaintiffs their attorneys' fees and costs; and

V.    Grant such other preliminary, permanent, compensatory, or punitive relief against ED&F and in favor of Third-Party Plaintiffs as the Court deems just and proper.


November 12, 2019               Respectfully submitted,

K&L GATES LLP


*/s/ John C. Blessington*
John C. Blessington (*pro hac vice*)
  john.blessington@klgates.com
Brandon R. Dillman (*pro hac vice*)
  brandon.dillman@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
T: 617.261.3100
F: 617.261.3175

*Attorneys for Defendants / Third-Party Plaintiffs*
*Newsong Fellowship Church 401(k) Plan*
*and Alexander Jamie Mitchell III*