**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION,<br><br>This document relates to 1:18-cv-05053-LAK | MASTER DOCKET<br><br>Case No. 1:18-md-02865-LAK |

### THIRD-PARTY DEFENDANT ED&F MAN CAPITAL MARKETS, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED THIRD-PARTY COMPLAINT PURSUANT TO RULE 12(b)(2) OR FOR *FORUM NON CONVENIENS* OR IN THE ALTERNATIVE TO STAY ALL PROCEEDINGS AGAINST IT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

    I.      The Relevant Agreements between ED&F Man and the Goldstein Plan .............. 3

    II.     The Subject Transactions ...................................................................................... 8

           A.      The Conclusory Allegations of ED&F Man's "Solicitation" of the Goldstein Plan ........................................................................................ 9

           B.      The Alleged Communications with the Goldstein Defendants ................. 10

    III.    The English Action and Claims Regarding Jurisdiction ...................................... 11

ANALYSIS ................................................................................................................. 12

    I.      The Third-Party Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction ..................................................................... 12

           A.      Standard for Motion to Dismiss for Lack of Personal Jurisdiction ......... 12

           B.      Minimum Contacts .................................................................................... 14

           C.      ED&F Man Lacks Sufficient Nationwide Minimum Contacts to Support Personal Jurisdiction Over Federal Claims ................................ 24

           D.      The Reasonableness Inquiry ..................................................................... 25

    II.     The Third-Party Complaint Should Alternatively Be Dismissed on *Forum Non Conveniens* Grounds ................................................................................. 28

           A.      Plaintiff's forum choice ............................................................................ 29

            B.      Whether an adequate alternative forum exists ......................................... 30

            C.      The balance of public and private interests implicated in the choice of forum ................................................................................................... 30

    III.    Alternatively, the Court Should Grant a Stay of the Third-Party Claims Pending Resolution of the English Action ........................................................ 32

    CONCLUSION ..................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800537 Ontario, Inc. v. World Imports U.S.A. Inc.*,
145 F. Supp. 2d 288 (W.D.N.Y. 2001)................................................................32

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
956 F. Supp. 427 (S.D.N.Y. 1996) .....................................................................28

*In re Alcon S'holder Litig.*,
719 F. Supp. 2d 263 (S.D.N.Y. 2010)..................................................................31

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
480 U.S. 102 (1987).............................................................................25, 26, 27, 28

*Beatie & Osborn LLP v. Patriot Sci. Corp.*,
431 F. Supp. 2d 367 (S.D.N.Y. 2006)..................................................................19

*Bristol-Meyers Squibb Co. v. Superior Court of Cal.*,
137 S Ct. 1773 (2017).....................................................................................14, 23

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).........................................................................................14, 23

*Calder v. Jones*,
465 U.S. 783 (1984).........................................................................................14, 17

*Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*,
770 F. Supp. 880 (S.D.N.Y. 1991) .....................................................................33

*Consol. Edison Co. of New York v. United States*,
30 F. Supp. 2d 385 (S.D.N.Y. 1998)...................................................................32

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*,
586 F. App'x 768 (2d Cir. 2014) .........................................................................21

*Contant v. Bank of Am. Corp.*,
No. 17 CIV. 3139 (LGS), 2019 WL 2174233 (S.D.N.Y. May 17, 2019) .................12, 13, 14

*D&R Glob. Selections, 29 N.Y.3d at 299*..................................................................17

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..............................................................................13, 14, 21, 22 28

*Dec. 6, 1990 v. B Commc'ns Ltd.*,
No. 17-CV-4937 (JPO), 2019 WL 1407453 (S.D.N.Y. Mar. 28, 2019)...................24

*Dennis v. JPMorgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018)...................................................................................20

*DiStefano v. Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001)...................................................................................................16

*E Television Networks, LLC v. Wish Factory Inc.*,
    No. 15-CV-1189 (DAB), 2016 WL 8136110 (S.D.N.Y. Mar. 11, 2016)..............................27

*Evergreen Marine Corp. v. Welgrow Int'l Inc.*,
    954 F. Supp. 101 (S.D.N.Y. 1997) .....................................................................................33

*Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*,
    368 F. Supp. 3d 681 (S.D.N.Y. 2019).................................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915, 131 S. Ct. 2846 (2011)....................................................................13, 14, 21

*Guerrini v. Amtel Corp.*,
    2016 WL 3548238 (2d Cir. June 27, 2016) ........................................................................28

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)............................................................................................................28

*Hanson v. Denckla*,
    357 U.S. 235 (1958)............................................................................................................17

*International Shoe Co. v. Washington¸*
    326 U.S. 310 (1945)......................................................................................................13, 14

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001).............................................................................................29, 31

*Johnson v. Ward*,
    4 N.Y.3d 516 (2005) ...........................................................................................................15

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 12 CIV. 3419 (GBD), 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ............................22

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
    337 F. Supp. 3d 274 (S.D.N.Y. 2018).................................................................................31

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)................................................................................................22

*Longo v. FlightSafety Int'l, Inc.*,
    1 F. Supp. 3d 63 (E.D.N.Y. 2014) ................................................................................23, 29

*MacDermid, Inc., v. Deiter*,
    702 F.3d 725 (2d Cir. 2012)................................................................................13

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)................................................................................30

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d (2d Cir. 1996)..............................................................14, 25, 26, 28

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247, 130 S. Ct. 2869 (2010)................................................................25

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
    667 F. Supp. 2d 369 (S.D.N.Y. 2009) (Kaplan, J.)............................................17

*Patel v. Patel*,
    497 F.Supp. 2d 419 (E.D.N.Y. 2007) ................................................................24

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)..................................................................................13

*Rosenblatt v. Coutts & Co. AG*,
    750 F. App'x 7 (2d Cir. 2018) ...............................................................17, 18, 19

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)............................................................................................12

*Schultz v. Safra Nat. Bank of New York*,
    377 F. App'x 101 (2d Cir. 2010) .......................................................................21

*Schwab v. Bank of America*,
    883 F.3d 68 (2d Cir. 2018)..................................................................................17

*Sherwin-Williams Co. v. C.V.*,
    No. 14-CV-6227(RA), 2016 WL 354898 (S.D.N.Y. Jan. 28, 2016) ...............26, 28

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998)..............................................................................................12

*Sullivan v. Barclays PLC*,
    No. 13-CV-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) .............22

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)..................................................................................18

*Tel. Sys. Int'l, Inc. v. Network Telecom PLC*,
    303 F. Supp. 2d 377 (S.D.N.Y. 2003)................................................................30

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)................................................................................13

*Thackurdeen v. Duke Univ.*,
    660 F. App'x 43 (2d Cir. 2016).............................................................................16

*Timothy Coffey Nursery Landscape Inc. v. Soave*,
    760 F. App'x 58 (2d Cir. 2019).......................................................................16, 21

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................15, 16, 17. 20

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016).................................................................................13

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001).................................................................................16

*Wing Shing Prod. (BVI), Ltd. v. Simatelex Manufactory Co.*,
    479 F. Supp. 2d 388 (S.D.N.Y. 2007)..........................................................15, 18, 24

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)..................................................................................30

**Statutes**

§ 10(b) of the Securities and Exchange Act........................................................24

**Rules**

N.Y. C.P.L.R. § 302(a)(1)........................................................................15, 18

N.Y. C.P.L.R. § 302(a)(3)........................................................15, 16, 19, 20, 21

Fed. R. Civ. P. 4(k)(1)(A).....................................................................................14

Fed. R. Civ. P. 9................................................................................................9

Fed. R. Civ. P. 12(b)(2)....................................................................1, 8, 12, 34

Fed. R. Civ. P. 12(c)..........................................................................................8

Fed. R. Civ. P. 12(g)(2)......................................................................................8

Fed. R. Civ. P. 12(h)(2)......................................................................................8

**Other Authorities**

Fifth Amendment...............................................................................................13

Fourteenth Amendment ....................................................................................................................13

Third-Party Defendant ED&F Man Capital Markets, Ltd. ("ED&F Man") respectfully submits this memorandum of law in support of its motion to dismiss the third-party claims in the Second Amended Answer, Affirmative Defenses, and Counterclaims against Skatteforvaltningen ("SKAT") and Amended Third-Party Complaint Against ED&F Man (the "Third-Party Complaint")[1] of Defendants-Third-Party Plaintiffs Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein Plan") and Sheldon Goldstein ("Goldstein" and collectively with the Goldstein Plan, the "Goldstein Defendants") pursuant to the Federal Rules of Civil Procedure Rule 12(b)(2), or, alternatively, on *forum non conveniens* grounds or for a stay pending the resolution of a foreign action.

## PRELIMINARY STATEMENT

It is indisputable that a plaintiff has the burden of establishing personal jurisdiction over the defendant and asserting facts in its complaint that make out a *prima facie* case for jurisdiction. The Third-Party Complaint fails to make that *prima facie* case.

General jurisdiction is not at issue here, as the Goldstein Defendants concede that they are only relying on their allegations for potential specific jurisdiction. The Goldstein Defendants fail to meet their burden of establishing specific jurisdiction because they do not and cannot allege that ED&F Man engaged in any suit-related conduct in this jurisdiction that bears a substantial nexus to their claims. Indeed, the only New York connection to these claims is the Goldstein Plan's New York address, and it is black letter law that it must be the defendant's <u>own</u> contacts with the forum, and <u>not</u> the plaintiff's, that provides a basis for personal jurisdiction consistent with due process.

---

[1] A true and correct copy of The Goldstein Defendants' Amended Answer, Affirmative Defenses, and Counterclaims against SKAT and AmendedThird-Party Complaint against ED&F Man, dated November 5, 2019, with exhibits, is annexed to the Declaration of Kristen G. Niven (the "Niven Decl.") as Exhibit A.

The Goldstein Defendants are attempting to tie the claims specific to the England-centered contractual relationship between ED&F Man and the Goldstein Plan to the claims brought by SKAT in this forum. But in their Amended Third-Party Complaint, the Goldstein Defendants offer new theories that go well beyond any forum-based activity or nexus with the underlying claims by SKAT. The contracts that are the subject of the purported breach of contract claims have no bearing on the underlying claims brought by SKAT, and are solely between ED&F Man and the Goldstein Plan. Moreover, these agreements were executed, delivered, and performed by ED&F Man exclusively in the United Kingdom; unequivocally select the laws of England to govern them; and clearly state that the courts of England are the most suitable forum for their enforcement.

In their original third-party complaint dated April 23, 2019 (ECF Doc. No. 101) the Goldstein Defendants failed to allege that ED&F Man has any contacts with New York, much less the sufficient minimum contacts required to assert the Court's jurisdiction over them in accordance with due process. The Amended Third-Party Complaint does nothing to improve upon their position regarding jurisdiction over ED&F Man. All they have done is add irrelevant, conclusory, or patently false allegations that are contradicted by their own pleadings and supporting exhibits, and do nothing to establish personal jurisdiction with respect to any of the claims. The Third-Party Complaint should be dismissed in its entirety on this basis.

In addition, the third-party claims appear to be derived from the allegations underlying the non-fraud claims that SKAT has been pursuing against ED&F Man and others since May, 2018 in the High Court of Justice, Business and Property Courts of England and Wales Commercial Court (the "English Action"), which they continuously reference. The Goldstein Defendants' attempt to duplicate the resolution of these issues before this Court, if permitted to proceed, in addition to

2

contravening due process would be unduly burdensome, a waste of judicial resources, and a strain on international comity risking inconsistent outcomes.

For these reasons, as articulated in full below, the Court should dismiss the Third-Party Complaint in its entirety for lack of personal jurisdiction over ED&F Man. Alternatively, the Court should dismiss the Third-Party Complaint on the grounds of *forum non conveniens*. Finally, the Court should alternatively stay the Third-Party Complaint pending the resolution of the proceedings in the United Kingdom.

## STATEMENT OF FACTS

The Goldstein Defendants' relevant allegations pertaining to ED&F Man in the Third Party Complaint are set out below, with additional detail from the documents referenced therein.

## I.     The Relevant Agreements between ED&F Man and the Goldstein Plan

ED&F Man is a broker-dealer registered and headquartered in London, England, and regulated by the United Kingdom Financial Conduct Authority (the "FCA"). (Third-Party Complaint ¶ 143). The Goldstein Plan maintains a brokerage account with ED&F Man, and has done so from 2012-2019. (Third-Party Complaint ¶ 105). In connection with opening its brokerage account, the Goldstein Plan signed various agreements with ED&F Man (*Id.*, ¶¶ 390, 400).

The agreements referenced in the Third-Party Complaint include: (i) the application form dated March 23, 2012, completed and signed by Goldstein on behalf of the Goldstein Plan (the "Application Agreement")[2]; (ii) the Power of Attorney dated March 23, 2012, signed by Goldstein on behalf of the Goldstein Plan in favor of Acer Investment Group, LLC (the "Power of Attorney")[3]; (iii) the Custody Agreement dated June 21, 2012, signed by Goldstein on behalf of

---

[2] A true and correct copy of the Application Agreement is annexed to the Niven Decl. as Exhibit B.
[3] A true and correct copy of the Power of Attorney is annexed to the Niven Decl. as Exhibit C.

the Goldstein Plan (the "Custody Agreement")[4] together with (iv) a related Security and Set-Off Deed dated June 21, 2012 (the "Security and Set-Off Deed")[5]; (v) the Terms and Conditions of Business for ED&F Man in effect at the time of the execution of the Application Agreement, with Variations thereto signed by Goldstein (the "Terms")[6]; and (v) a cover letter enclosing the Terms with a confirmation of election statement required under the then United Kingdom Financial Services Authority Rules, signed by Goldstein on April 18, 2012 (the "Cover Letter")[7]. Each of the signed agreements were sent from and returned to ED&F Man in the United Kingdom, where ED&F Man also executed the signed agreements. (*See generally* Application Agreement, at p. 1; Custody Agreement, at "Between" clause and ¶ 19(a)(ii); Cover Letter; Terms, at p. 1 ).

The Goldstein Plan explicitly acknowledged in the Application Agreement, among other things, that they accept ED&F Man's Terms of Business, that they "have read and understood the Product and Service Risk Disclosures and Execution Policy (if applicable)" and that they acknowledge that ED&F Man "does not give investment advice or make investment recommendations." (Application Agreement, Niven Decl. Ex. B, at section 9). The Goldstein Defendants also answered "Yes" in response to Question C under Section 4 of the Application Agreement, stating that the controlling individuals of the Goldstein Plan and their designated Authorized Signatory, Stacey Kaminer, have "substantial experience of trading, making [their] own investment decisions", have "adequate knowledge of the products [they] wish to trade, and "understand the risks involved in trading these products." Finally, the Goldstein Defendants provided the details of the Goldstein Plan's bank account with J.P. Morgan Chase in New York,

---

[4] A true and correct copy of the Custody Agreement is included as Exhibit "F" to the Third-Party Complaint, Niven Decl. Ex. A.
[5] A true and correct copy of the Security and Set-off Deed is included as Exhibit "G" to the Third-Party Complaint.
[6] A true and correct copy of the Terms is annexed to the Niven Decl. as Exhibit E.
[7] A true and correct copy of the Cover Letter is annexed to the Niven Decl. as Exhibit D.

for the purpose of making and receiving payments in connection with the trading activities on the ED&F Man brokerage account.

The Power of Attorney, executed together with the Application Agreement, appoints the Goldstein Plan's Broker Dealer, Acer Investment Group, LLC ("Acer") as attorney-in-fact with respect to the Goldstein Plan's trading account with ED&F Man. The Goldstein Plan acknowledged in the Power of Attorney, among other things, that ED&F Man "shall be entitled to rely upon the instructions, orders and requests provided to it by [Acer] as if given or made by [the Goldstein Plan]" (Power of Attorney, Niven Decl. Ex. C, at section 1.3(b)) and that the Power of Attorney "shall be governed by and construed in accordance with the laws of England." (*Id.*, at section 2). The Power of Attorney lists Acer's address as located in Park City, Utah. (*Id.*, at 1.1).

The Custody Agreement appoints ED&F Man as the Custodian of the Goldstein Plan's securities and cash accounts, and provides that "Each Custody Account shall be maintained in London, England." (Custody Agreement, Exhibit "F" to the Third-Party Complaint, Niven Decl. Ex. A, at clause 2(c)). It further provides that Client Property may be held "by a Sub-Custodian in the United Kingdom or elsewhere, at [ED&F Man's] absolute discretion", and that the "Client Securities shall be held, recorded, registered and segregated in accordance with the FSA Rules or, where held outside the United Kingdom, the equivalent of the FSA Rules relating solely to these matters, provided that [ED&F Man] shall not be required to comply with any equivalent of the FSA Rules which require any consent to be obtained or notification to be given by the Custodian." (*Id.*, at clause 2(d)-(e)). It also expressly provides that ED&F Man "does not act as manager or investment adviser to [the Goldstein Plan] . . . and responsibility for the selection, acquisition and disposal of the Client Property remains with the [Goldstein Plan] at all times." (*Id.*, at clause 11(m)).  Under the Custody Agreement, the Goldstein Plan agrees to indemnify ED&F Man

against "each liability, loss and cost which may be suffered or incurred by [ED&F Man] in connection with the Client Property, this Agreement, or the performance of [ED&F Man's] obligations under this Agreement" and "any Tax for which [ED&F Man] is or may be liable or accountable in connection with the Client Property, this Agreement or the performance of [ED&F Man's] obligations under this agreement (including without limitation the purchase and/or sale of Client Securities, the collection and/or realisation of coupons, dividends, interest or other payments, the receipt of or entitlement to receive any income . . . " (*Id.*, at clause 16(a)).

Of particular note in light of the conclusory and unsubstantiated claim which peppers the Third-Party Complaint that ED&F Man somehow "solicited"[8] the Goldstein Plan, this insufficient allegation is completely contradicted by the terms of the Custody Agreement which the Goldstein Defendants annexed to their Third-Party Complaint. Under the express terms of the Custody Agreement, the Goldstein Plan explicitly "acknowledges that the provision of services outlined in this Agreement by [ED&F Man] to [the Goldstein Plan] arose solely as a consequence of the initiative of the [Goldstein Plan] and did not result from any form of solicitation on the part of [ED&F Man]." (*Id.*, at clause 20(b)).

Finally, the Custody Agreement provides that it "shall be governed by, and shall be construed in accordance with, the laws of England"; "the courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement" and "[t]he parties to this Agreement agree that the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary." (*Id.*, at clause 22(a), (d), and (e)). It further clarifies as to the non-exclusiveness of the jurisdiction of English courts that the parties "shall not be prevented from taking proceedings relating to a Dispute in any other

---

[8] *See, e.g.* Third-Party Complaint, Niven Decl. Ex. A, at ¶¶ 105-106, 120-121, 144, 162, 180, 245, 293, 378, 432.

courts **with jurisdiction**." (*Id.*, at clause 22(f)) (emphasis added). The Security and Set-Off Deed, executed simultaneously with and with reference to the Custody Agreement appoints ED&F Man as Custodian and "bare trustee for the purpose of safekeeping the Client Property" (Security and Set-Off Deed, Exhibit "G" to the Third-Party Complaint, Niven Decl. Ex. A, at Section 2(a)) and provides the same provision for Governing Law and Jurisdiction as the Custody Agreement. (*Id.*, at Section 19).

The Cover Letter enclosing the Terms provides that "These [Terms] set out the contractual terms that govern our relationship but are subject to, where relevant, any transaction-specific documentation (e.g. ISDA, GMRA) as entered into between you and us from time to time as the case may be." (Cover Letter, Niven Decl. Exhibit D, at p. 1). The Terms clearly define the Applicable Law as "all applicable laws and regulations of the UK." (Terms, Niven Decl. Exhibit E, at p. 1). The Terms further provide as follows:

> These Terms and Conditions, and any non-contractual obligations arising from or connected with them, are governed by construed in accordance with, English law.
>
> Subject to the next paragraph, we both irrevocably:
>
> - agree that the courts of England shall have jurisdiction to determine any proceedings arising out of or in connection with these Terms and Conditions (whether arising out of or in connection with contractual or non-contractual obligations) and irrevocably submit to their jurisdiction, but this will not prevent us from bringing an action in the courts of any other jurisdiction; and
>
> - waive any objection to the venue of any such proceedings.
>
> Where any Relevant Rules require us to we will, and where they so permit us to we may, refer any dispute relating to a Transaction to arbitration under such Relevant Rules prior to resorting to the jurisdiction of the courts.
>
> Terms, Niven Decl., Ex. E, at p. 33

## II.   **The Subject Transactions**

The Goldstein Defendants identified nine tax withholding refund claims that the Goldstein Plan made to SKAT with respect to the receipt of dividend payments on shares it held in a Danish company, all but one of which were allegedly paid by SKAT. (Third-Party Complaint, ¶¶ 179-189, 193-195). These transactions were conducted in the Goldstein Plan's brokerage account at ED&F Man. (*Id.*).

The Third-Party Complaint relies heavily upon ED&F Man's Amended Defence which it submitted on September 6, 2019 in the English Action. In the Amended Defence, ED&F Man duly corrected its previous pleadings in response to SKAT's only claims against it sounding in negligence, upon the discovery of previously unknown facts, and stated that that 80 of the Tax Vouchers ED&F Man prepared for and submitted to its clients with respect to withholdings on dividends paid on Danish securities contained incorrect information. However, the Amended Defence explicitly denies any wrongful conduct by ED&F Man, stating, among other defenses, that ED&F Man owed SKAT no duty of care, that it made no representations to SKAT and that it was SKAT's own negligence that was the proximate cause of its losses. (*See* Amended Defence, Exhibit "A" to the Third-Party Complaint, Niven Decl. Ex. A, at ¶ 4.5).

From this, the Goldstein Defendants imagine a vaguely articulated improper motive by ED&F Man, without any relevant or particularized facts upon which to base their claims.[9] The Goldstein Parties attempt to avoid the clear fact that they have not properly alleged, because they

---

[9] This motion based on Fed. R. Civ. P. 12(b)(2) or alternatively on the doctrine of *forum non conveniens* if granted, is entirely dispositive of the Third-Party Complaint, and indeed any third-party claims by ED&F Man clients against ED&F Man in this jurisdiction, and for this reason, the present motion is limited to these bases for dismissal. However, ED&F Man does not waive and explicitly reserves its right to assert defenses to and make a motion to dismiss the Third-Party Complaint or any other claims against ED&F Man for failure to state a claim pursuant to Fed. R. Civ. P. 12(c). *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion") (emphasis added); Rule 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)").

do not have any basis for alleging, any facts demonstrating that ED&F Man intentionally mislead them. Instead the Third-Party Complaint pleads in an improper, intentionally opaque manner such vague speculations as "[s]ubsequent investigation has revealed that ED&F Man defrauded the [Goldstein Defendants]" (*see* Third-Party Complaint, Niven Decl. Ex. A, at ¶ 136); "ED&F Man's 2019 behavior and statements increasingly have suggested that the Brokerage defrauded the Plan and its agents" (*id.*, at ¶ 263); "ED&F Man's refusal to explain how it came to issue the 80 incorrect vouchers . . . suggests that its misstatements were intentional and systemic, not accidental or causal" (*id.*, at ¶ 315); and "[t]he fact that the European CEO personally signed the Spring 2014 Transactions' custody letters further suggests that something is amiss." (*Id.*, at ¶ 316). The Goldstein Defendants, in an attempt to save their baseless claims from dismissal, invent a conspiracy based on alleged transfers of securities through other non-U.S. entities affiliated with ED&F Man's holding company, apparently masterminded through a completely separate entity which allegedly previously employed some of ED&F Man's employees. Yet, even aside from the implausibility and baselessness of the Third-Party Complaint's complex narrative, it is completely devoid of any allegation that any trades conducted in the Goldstein Plan's brokerage account with ED&F Man in London, took place in or were directed at the forum, nor that any of these complete speculations of fraud were based on <u>any</u> identifiable, much less identifiably forum-directed activities.[10]

## A.   The Conclusory Allegations of ED&F Man's "Solicitation" of the Goldstein Plan

The Goldstein Defendants have attempted to infuse the allegations of ED&F Man's acts with an air of purposeful availment by scattering throughout the Third-Party Complaint entirely

---

[10] As another issue potentially for another motion, the Goldstein Defendants' allegations of fraud could never pass muster under Fed. R. Civ. P. Rule 9.

unfounded and conclusory allegations that it "solicited" the Goldstein Defendants to engage their broker-dealer services and to enter into the specific trades at issue.[11] However, notwithstanding that such "solicitation" would not create the requisite "minimum contacts" with the forum (*see* Section I.B.1, infra), several of the Goldstein Defendants' allegations directly contradict such a conclusion. The Third-Party Complaint alleges that, far from originating with ED&F Man, the Goldstein Plan was already solicited by and transacting in European securities through a completely separate entity, which was also not domiciled in the U.S., and only later moved to ED&F Man through existing relationships. (*See* Third-Party Complaint, Niven Decl. Ex. A, ¶¶ 227-238, 315). The Goldstein Defendants further suggest that to the extent there was an alleged strategy to facilitate European transactions for specifically U.S. clients, this did not originate with ED&F Man. (*Id.*, ¶¶ 238, 310-315). The Third-Party Complaint's speculations about ED&F Man's business strategy, intentions, or some kind of incomprehensible and unarticulated "bargain" (the terms of which were entirely unpled and missing from the Third-Party Complaint) (*id.*, ¶¶ 310, 314), do nothing to support imputing such vague strategies to ED&F Man, and completely negate any claim that ED&F Man "solicited" U.S.-based clients to these ends.

### B.     The Alleged Communications with the Goldstein Defendants

During the course of ED&F Man's contractual relationship with the Goldstein Plan, the Goldstein Defendants allege a series of communications between the parties. The alleged location

---

[11] The claim in ¶ 182 of the Third-Party Complaint that "ED&F Man claims that when it became aware of a Danish issuer's intent to issue dividends, ED&F Man would solicit a U.S. Pension plan client and, after ascertaining the plan's interest, acquire the security" is baseless and a misrepresentation of the Amended Defence. On the contrary, ED&F Man pled in the Amended Defence, ¶ 10, with respect to a pension plan's acquisition of a security, that the Danish Listed Companies' intent to issue a dividend would be published by Bloomberg, and then "ED&F Man would (1) (upon instruction from the [pension plan's] Investment Manager) (purchase the Security [)]" *See* Amended Defence, Exhibit "A" to the Third-Party Complaint, Niven Decl. Ex. A, at ¶ 10.4. Therefore, the Goldstein Defendants' allegation in ¶ 182 is contradicted by the documents referenced and attached to the Third-Party Complaint, which demonstrate that ED&F Man would acquire the securities at the behest of the investment managers for the pension plans.

and direction of these communications is inconsistently pled and contradictory throughout the Third-Party Complaint.

The Third-Party Complaint claims that "All of the correspondence and contracts between ED&F Man and the Plan are addressed to the Plan's Manhattan address" (Third-Party Complaint, Niven Decl. Ex. A, ¶ 149). However, the referenced and attached agreements clearly state that the contracts were issued by ED&F Man from their London office and, once executed, were delivered back to ED&F Man in London.[12]   Moreover, the Third-Party Complaint also alleges that all communications between ED&F Man and the Plan were conducted via the Plan's authorized agent, Acer Investment Group, LLC which is based in Utah, and not with the Goldstein Defendants directly. (*Id.*, ¶ 106, FN 2; see also ¶ 276).

The Third-Party Complaint makes no allegation that the specific transactions at issue were the result of a communication directed from ED&F Man to a party in the United States. Rather, the location of the Plan or its Authorized Agent was incidental to the transaction, and communications with them were part of ED&F Man's duty to perform the brokerage services contract and facilitate trades of European securities through the London-based brokerage account.

## III.   The English Action and Claims Regarding Jurisdiction

The Goldstein Defendants refer to and rely upon ED&F Man's responsive pleading in the English Action to describe the transactions ED&F Man made on behalf of the Goldstein Plan and as a basis for their causes of action.[13] The Goldstein Defendants' Seventh Affirmative Defense further claims that SKAT's claims against them are barred because "Plaintiff is simultaneously

---

[12] *See,* Application Agreement, Niven Decl. Ex. B, at p. 1; Terms Cover Letter, Niven Decl. Ex. D, at pp. 2-3.

[13] A true and correct copy of: (i) the Particulars of Claim in SKAT v. Solo Capital Partners LLP & Others, [2018] EWHC (Comm), Claim No's. CL-2018-000297; CL-2018-000404; CL-2018-000590 (Eng.), dated September 24, 2018, together with Schedule 5T thereto; (ii) the amended Particulars of Claim and Schedule 5T dated March 13, 2019; and (iii) the re-amended Particulars of Claim dated July 30, 2019 are collectively annexed to the Niven Decl. as Exhibit F.

pursuing remedies for the same allegations contained in the Complaint in foreign jurisdictions[.]" (Third-Party Complaint, Niven Decl. Ex. A, ¶ 87).

While recognizing and relying upon the fact that related claims by SKAT are being litigated in foreign jurisdictions, including in England where ED&F Man is domiciled and subject to the English Court's jurisdiction, the Third-Party Complaint makes only conclusory allegations on this Court's jurisdiction over ED&F Man and the propriety of the venue for these claims. (*Id.*, ¶¶ 160-161, 166). For the reasons articulated in full below, the conclusory claims that this Court may exercise specific personal jurisdiction over ED&F Man are unfounded.

## ANALYSIS

### I.   The Third-Party Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction

It is well-established that the question of the court's jurisdiction over a particular case must be established as a threshold matter before the Court may consider the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 1567 (1999). "The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception,' for '[j]urisdiction is power to declare the law,' and '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Id.* (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 118 S.Ct. 1003 (1998)). "Jurisdiction to resolve cases on the merits requires both authority over the category of the claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Id.*

### A.   Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion pursuant to Rule 12(b)(2) to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Contant v. Bank of Am. Corp.*, No. 17 CIV. 3139 (LGS), 2019 WL 2174233, at *1 (S.D.N.Y. May 17, 2019) (citing

*MacDermid, Inc., v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)); *Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 692 (S.D.N.Y. 2019) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). In order to defeat a motion to dismiss for lack of personal jurisdiction prior to any discovery or evidentiary hearing, the plaintiff must make a *prima facie* showing that personal jurisdiction exists via "legally sufficient allegations of jurisdiction." *Fire & Police Pension Ass'n of Colorado*, 368 F. Supp. 3d 681 at 692. Sufficient allegations must constitute "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* (citing *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

In order to make a prima facie showing of personal jurisdiction, the plaintiff has the burden to show: "(1) procedurally proper service of process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective' and (3) that 'the exercise of personal jurisdiction ... comport[s] with constitutional due process principles.' " *Id.*; *Contant*, 2019 WL 2174233 at *2; *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). ED&F Man challenges the Court's exercise of personal jurisdiction on the basis of the claims in the Third-Party Complaint on the grounds that it does not comport with constitutional due process. *See Daimler AG v. Bauman,* 571 U.S. 117, 125, 134 S.Ct. 746, 753 (2014); *Contant*, 2019 WL 2174233, at *2.

"Pursuant to the due process clauses of the Fifth and Fourteenth Amendments, there are two parts to the due process test for personal jurisdiction . . . the "minimum contacts" inquiry and the "reasonableness" inquiry." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016); *see also Contant*, 2019 WL 2174233, at *2; *Daimler AG*, 571 U.S., at 126, 134 S.Ct., at 754 (citing *International Shoe Co. v. Washington‚* 326 U.S. 310 (1945) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564, U.S. 915, 922 (2011), for the canonical rule that "a State

may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice"'").

In order to establish the first prong, the Court must determine "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant." *Waldman*, 835 F.3d 317, 331 (citing *Daimler*, 134 S.Ct. at 754; *Calder v. Jones*, 465 U.S. 783, 788 (1984); *Int'l Shoe*, 326 U.S. at 316; and *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d at 567–68 (2d Cir. 1996)). The reasonableness prong "requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with "'traditional notions of fair play and substantial justice'" under the circumstances of the particular case. *Id.* (citing *Daimler*, 134 S.Ct. at 754; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### B.    Minimum Contacts

For the purpose of the minimum contacts inquiry, there are two potential exercises of personal jurisdiction: general jurisdiction and specific jurisdiction. *See generally, Daimler AG*, 571 U.S., at 117, 134 S.Ct., at 746; *Waldman*, 835 F.3d 317; *Int'l Shoe*, 326 U.S. 310, 66 S.Ct. 154. General, or all-purpose jurisdiction applies if a foreign entity is amenable to suit in the forum state for any and all claims against it. *See Daimler AG*, 571 U.S. at 127, 134 S.Ct. at 127 (confirming, following *Int'l Shoe* and *Goodyear*, that general jurisdiction applies where a foreign corporation's operations in the state are "so 'continuous and systematic' as to render them essentially at home in the forum State"). "Specific jurisdiction depends on 'an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Contant* at *2. (citing *Bristol-

*Meyers Squibb Co. v. Superior Court of Cal.*, 137 S Ct. 1773, 1780 (2017); *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 1122 (2014).

Pursuant to Rule 4, "[s]erving a summons or filing a waiver of service establishes jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Accordingly, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons" subject to the limits of federal due process. *Walden*, 571 U.S., at 283, 134 S.Ct., at 1121 (citing *Daimler AG*, 571 U.S., at 125). New York's long-arm statute, CPLR § 302, provides that a court of general jurisdiction in New York may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . (3) commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]"

As courts in this district have recognized, "[t]he New York Court of Appeals has identified two basic elements for predicating jurisdiction under 302(a)(1): '[L]ong-arm jurisdiction over a nondomiciliary exists where (i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business. If either prong of the statute is not met, jurisdiction cannot be conferred under CPLR 302(a)(1).'" *Wing Shing Prod. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 397 (S.D.N.Y. 2007) (citing *Johnson v. Ward*, 4 N.Y.3d 516 (2005)).

For jurisdiction to be proper under § 302(a)(3), the injury must have occurred "within the state." *Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 46–47 (2d Cir. 2016) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84–85 (2d Cir. 2001)). In determining whether a non-physical injury took place within the state, courts must apply a "situs-of-injury test, determining "the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 209 (2d Cir. 2001) (internal citations omitted) (finding no personal jurisdiction where the original event which caused the alleged injury, withholding of payment or the allegedly intentional structuring of a partnership to withhold payment, all took place outside of New York); *see also Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 61 (2d Cir. 2019). Moreover, courts in this district have consistently held that "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Whitaker*, 261 F.3d 196, at 209 (internal citations omitted); *Timothy Coffey Nursery Landscape Inc*. 760 F. App'x 58, at 61.

Thus, the sufficient minimum contacts by a forum defendant with the forum such that it may be subject to personal jurisdiction in this district must comport with New York law on what constitutes "transaction of business" or an "injury within the State."

       1.     <u>This Court Does Not Have Specific Jurisdiction[14] Over ED&F Man Because Its Activities Were Not Directed at New York.</u>

"For the exercise of specific personal jurisdiction to comport with due process, a 'defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S., at 284, 134 S.Ct., at 1121. Specific jurisdiction has also been described as

---

[14] The Third-Party Complaint concedes that there is no general jurisdiction over ED&F Man, and purports to allege only specific jurisdiction. (*See* Third-Party Complaint, Niven Decl. Ex. A, at ¶¶ 160-161).

"purposeful availment" (*see Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958)) or arising out of conduct "expressly aimed" at the forum State. *See Calder v. Jones,* 465 U.S., at 789, 104 S.Ct., at 1487; *Schwab v. Bank of America,* 883 F.3d 68 at 87 (2d Cir. 2018). The defendant's contacts must be with the state, not merely with persons, such as Goldstein, that reside there. *See Walden*, 571 U.S., at 284. The exercise of personal jurisdiction over ED&F Man in this instance therefore does not comport with the minimum contacts required to satisfy due process. *See Walden*, 571 U.S., at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.")

Recent decisions in the Second Circuit and this District have time and again shown that random or incidental contacts with the forum are irrelevant to the legal analysis for asserting personal jurisdiction. For a specific jurisdiction analysis, the number of contacts that a defendant has with the forum is irrelevant. The question, rather, is whether any of the contacts are sufficiently tied to the plaintiff's claim that it could be said to be the cause or the basis for the claim, creating a nexus therewith. *See Rosenblatt v. Coutts & Co. AG,* 750 F. App'x 7, 12 (2d Cir. 2018) (on a breach of contract claim, "plaintiffs must provide 'an articulable nexus or substantial relationship between defendant's New York activities and the parties' contract, defendant's alleged breach thereof, and [plaintiff's] potential damages'") (citing D&R Glob. Selections, 29 N.Y.3d at 299).

The existence of a contract with a New York party does not constitute a "transaction of business" out of which the cause of action arises for the purpose of satisfying New York's long-arm statute. *See Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009) (Kaplan, J.) ("the mere fact that an out-of-state defendant enters into a contract with a company headquartered in New York does not establish the requisite minimum contacts unless

that contract "projects [the defendant] into the New York market"). To determine whether a nondomiciliary has "transacted business" within New York, courts should consider the totality of the circumstances, and the Second Circuit has identified four non-exclusive factors to aid in this determination: "(i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what choice-of-law clause is in any such contract; and (iv) whether the contract requires [parties to that contract] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." *Rosenblatt*, 750 F. App'x at 10 (citing *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir. 2004)); *see also Wing Shing*, 479 F. Supp. 2d 388, 397-398 (finding no long-arm jurisdiction where "[t]he record is devoid of any evidence that [defendant] ever negotiated or executed a contract with Bank One in New York, maintained an ongoing contractual relationship with Bank One, visited New York, or otherwise availed itself of the benefits and protections of New York laws").

The Third-Party Complaint alleges that ED&F Man and the Goldstein Plan entered into "various agreements" governed by English law and providing for jurisdiction in England.[15] It further alleges that ED&F Man communicated with the Goldstein Defendants' Utah-based authorized agent and investment manager to "solicit" the Goldstein Defendants to engage in the relevant transactions, in the ordinary performance of those already-executed agreements.[16] Finally, the Third-Party Complaint alleges communications on which the Goldstein Defendants

---

[15] Third-Party Complaint, Niven Decl. Ex. A, at ¶ 390.
[16] *Id.*, at ¶¶ 285-293.

allegedly relied, which were representations from or implied by the same English agreements and tax vouchers issued to the Goldstein Plan's investment manager.[17]

It is well-established that contracting with a New York party is insufficient to constitute "doing business" for the purpose of N.Y. C.P.L.R. § 302(a)(1) *See Rosenblatt*, 740 F. App'x at 10 (affirming dismissal for lack of personal jurisdiction under 302(a)(1) where although Swiss bank "through its loan and mortgage agreement, had a contractual relationship with [the plaintiff], the agreement concerned [plaintiff] not in his capacity as a resident of New York, but rather in his capacity as the owner of the mortgaged residence in Switzerland").  Similarly, communications in furtherance of the out-of-state performance of a contract, even if those communications were with New York residents, do not rise to the level of continuous and directed contacts with the forum sufficient to confer personal jurisdiction under the long-arm statute. *See Rosenblatt*, 740 F. App'x at 10-11 ("long-distance communication with a New York plaintiff does not require a conclusion that the defendant transacted business in New York" and place of drafting, negotiation and execution of the contract weighed against concluding that defendant transacted business in New York); *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 387-88 (S.D.N.Y. 2006) (communications about an existing contract from out-of-state defendant was not transaction of business under New York's long-arm statute). Although the Third-Party Complaint misleadingly refers to "solicitations" of trades, these were not solicitations of business, but communications that were sent in the course of ED&F Man's performance of the various agreements with the Goldstein Plan, all of which were remitted to England., apply English law, and concern the Goldstein Plan's ED&F Man brokerage account in England. Therefore, none of these communications constitute transaction of business under New York's long-arm statute or purposeful availment under the

---

[17] *Id.*, at ¶¶ 122-125; 366-367.

standards of due process, even if they had been with a New York resident instead of, as they were, with the Goldstein Defendants' Utah-based advisor.

The Goldstein Defendants have also failed to properly allege that any injury occurred "within the state" so as to confer long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3).[18] The tort-related allegations include an imagined scheme between ED&F Man, organized and headquartered in London, and Volcafe, a Swiss company owned by ED&F Man Holdings, Ltd. ("Holdings"), also based in London, to devise a trading plan with the Goldstein Plan's out-of-state investment advisor involving the subject transactions, which it baselessly calls "self-dealing," simply because the existence of the Double-Taxation treaty made shares in Danish companies owned by American pension plans eligible for dividend reclaim applications. However, this theory does not allege any forum-directed transactions, regardless of the alleged web of interrelated profit motives which the Goldstein Defendants assume to be tortious. *See Dennis v. JPMorgan Chase & Co.,* 343 F. Supp. 3d 122, 205 (S.D.N.Y. 2018) (Kaplan J.) (the alleged harm was not caused by any transactions that the Defendants entered into in the forum, and such transactions were not acts in furtherance of the alleged conspiracy)

The Goldstein Defendants also invent a preconceived deceptive motive to ED&F Man's issuance of incorrect tax vouchers affecting four of the Goldstein Plan's transactions in Danish Securities, from an alleged lack of communication, not from any act or communication directed at the forum. However, these allegations, which form the basis of the Goldstein Defendants' tort claims, do not confer long-arm jurisdiction over ED&F Man, because the only injury alleged stemmed from the issuance of incorrect Tax Vouchers, which the Third-Party Complaint does not

---

[18] It is at least questionable whether an injury felt in the state by itself would ever be sufficient to exercise jurisdiction consistent with due process. *See Walden v. Fiore*, 571 U.S. 277, 289–90, 134 S. Ct. 1115, 1125, (mere injury to a forum resident is not a sufficient connection to the forum).

allege were issued in New York, resulting in purely economic damages of hypothetical losses for liability to SKAT and ED&F Man's alleged fees. *See Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.,* 586 F. App'x 768, 772 (2d Cir. 2014) (no personal jurisdiction where situs of injury was Turkey because the first effect of the tort was the loss of customers in Turkey, despite foreseeable New York consequences); *Schultz v. Safra Nat. Bank of New York,* 377 F. App'x 101, 103 (2d Cir. 2010) (no personal jurisdiction where claims arose from alleged transaction by foreign bank in Brazil, and other conditions of jurisdiction pursuant to § 302(a)(3) were not applicable); *Timothy Coffey Nursery Landscape Inc.*, 760 F. App'x 58, at 61 (("[T]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes.") (internal quotation marks and citations omitted).

In an attempt to allege any possible instance of New York contact by ED&F Man, the Goldstein Defendants further allege that: a U.S. affiliate of ED&F Man hired employees from the same entity as ED&F Man; ED&F Man's website promotes its "access" to Manhattan-based U.S. equity and options markets, that it advertises its use of "onsite servers" in New York to facilitate faster trading; and that ED&F Man transfers money to and from the Goldstein Plan's own U.S. bank account, which it designated in the Application Agreement.

The latter allegations also fail to demonstrate *prima facie* specific jurisdiction over ED&F Man in this forum under New York's long arm statute. It is undisputed that personal jurisdiction must be based on ED&F Man's own contacts with the forum, not on those of separate entities or distant corporate cousin such as an unnamed U.S. affiliate of the Swiss entity Volcafe. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930, 131 S. Ct. 2846, 2857 (2011) (rejecting the theory that the petitioners' ties to corporate affiliates in the U.S. should be consolidated); *Daimler AG v. Bauman*, 571 U.S. 117, 134–36, 134 S. Ct. 746, 759-60 (2014).

Moreover, if every commercial entity that had access to New York markets or potential contact with New York residents was thereby made subject to personal jurisdiction in this forum, there would be virtually no limitation on this Court's jurisdiction. *See Daimler*, 571 U.S. at 137–39, 134 S. Ct. at 760-61 (2014) ("Plaintiffs would have us…approve the exercise of general jurisdiction in every state in which a corporation 'engages in a substantial, continuous, and systematic course of business.…Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (citations omitted).

Likewise, trade or communication data traffic through servers located in New York is insufficient to confer jurisdiction. *See Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12 CIV. 3419 (GBD), 2017 WL 1113080, at *4 (S.D.N.Y. Mar. 10, 2017) ("Plaintiffs plead no facts to suggest that ICAP expressly aimed the effects of their alleged manipulative conduct at the United States" based on electronic chats routed through servers in New York); *Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *44 (S.D.N.Y. Feb. 21, 2017) ("[P]laintiffs' allegations concerning defendants' misconduct does not allege a United States nexus to UBS's Euribor manipulation."). Finally, the fact that the Goldstein Defendants designated a U.S. bank account to receive and transfer funds to and from their London-based ED&F Man brokerage account is entirely immaterial for the purpose of New York's long-arm jurisdiction, as ED&F Man has not purposefully availed itself of New York's banking system in order to facilitate the alleged conduct underlying the third-party claims. *See Waldman*, 835 F.3d 317, at 342 (finding no personal jurisdiction where there was no connection between the conduct on which the alleged personal jurisdiction is based and the forum). *C.f. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013) (finding that recurring use of the foreign defendant's own

22

correspondent bank account in New York to achieve the very wrong alleged could establish personal jurisdiction).

The conclusory attribution of SKAT's forum selection to ED&F Man for the purpose of establishing personal jurisdiction fails to demonstrate *prima facie* that ED&F Man's own activities provided the requisite minimum contacts with New York to support the exercise of personal jurisdiction over it in accordance with due process. Nowhere does the Third-Party Complaint allege that these services were performed in New York, that the contract for these services was executed or otherwise directed to New York, that the choice-of-law provision selects New York, or any other factor that would weigh in favor of personal jurisdiction over ED&F Man arising out of their contract with the Goldstein Plan.[19]

It is clear that SKAT brought its claims against the Goldstein Defendants in this district based on <u>their</u> one-time residence in the forum state. Accordingly, SKAT, as the Plaintiff, voluntarily elected to bring its claims in this forum, and the Goldstein Defendants do not deny that the Court has personal jurisdiction over them. However, "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, [] the answer clearly is that it cannot" *Burger King*, 471 U.S. 432, 478; *see also Bristol-Meyers Squibb*, 137 S. Ct. 1773 ("The bare fact that [the defendant] contracted with [an in-state] distributor is not enough to establish personal jurisdiction in the State.") Moreover, the agreements on which the Goldstein Defendants rely make clear that ED&F Man conducted all of its business, including the trades that allegedly gave rise to the claims

---

[19] The agreements referenced in the Third-Party Complaint do not specifically select New York as the forum state. Indeed, they select the courts of England as the preferred forum. "The burden is on the plaintiff 'to make a strong showing in order to overcome the presumption of enforceability'" of a selection clause selecting a foreign forum, and "there is a strong presumption in favor of upholding the enforceability of forum-selection clauses." *Longo v. FlightSafety Int'l, Inc.*, 1 F. Supp. 3d 63, 67 (E.D.N.Y. 2014) (dismissing the action on the basis that the contract underlying the dispute selects the United Kingdom as the forum). Accordingly, this weighs against New York's exercise of long-arm jurisdiction under CPLR § 302.

at issue, and the negotiation and execution of the contracts themselves, entirely from the United Kingdom. The agreements also select English law as the governing law, another factor considered by New York courts in determining whether an entity has directed its activities to this State. *See Wing Shing*, 479 F. Supp. 2d, at 397-398. ED&F Man's transaction of business from London does not purposefully avail itself of this forum's laws merely because it transacted with a New York resident, and "courts will likely not exercise jurisdiction over a non-resident when the contract was negotiated solely by mail, phone, or fax without any New York presence." *Patel v. Patel*, 497 F.Supp. 2d 419, 428 (E.D.N.Y. 2007).

Therefore, the Goldstein Defendants have failed entirely to allege that ED&F Man by its own actions has the requisite minimum contacts with this forum, which *prima facie* fails make out a legally sufficient basis for personal jurisdiction over ED&F Man.

### C.     ED&F Man Lacks Sufficient Nationwide Minimum Contacts to Support Personal Jurisdiction Over Federal Claims

In a clear attempt to plead around the Third-Party Complaint's manifest deficiencies[20] in alleging ED&F Man's New York-based contacts, the Goldstein Defendant's have added a baseless federal claim under Section 10(b) of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder. Some courts have found that with respect to causes of action arising under a federal statute that provides for nationwide service of process, the relevant forum for the contacts analysis under the due process inquiry for personal jurisdiction is the United States as a whole, rather than the specific forum state. *See Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, No. 17-CV-4937 (JPO), 2019 WL 1407453, at *6 (S.D.N.Y. Mar. 28, 2019) ("Because Plaintiffs' invocation of this Court's jurisdiction 'is premised on a federal statute' that authorizes nationwide

---

[20] The Goldstein Defendants had ample notice of the deficiencies from the parties' briefing on ED&F Man's motion to dismiss the original third-party complaint (*See* ECF Doc. Nos. 169-171, 197).

service of process, 'the forum applicable for contacts analysis is the United States rather than the forum state.'") (internal citations omitted). Here, the Goldstein Defendants have not alleged that ED&F Man traded any domestic securities, issued any filings in the United States, traded on a United States exchange, or otherwise purposefully availed itself of the securities laws of the United States.[21] On the contrary, the only alleged misrepresentations appeared on documents prepared in England, regarding Danish securities, sent to investment managers, some, but not all of which were located in the U.S. Such tenuous connections fail to demonstrate purposeful availment of the securities laws of the United States for the purpose of attempting to establish minimum contacts.

### D.    The Reasonableness Inquiry

Even if the Third-Party Defendants had sufficiently alleged that ED&F Man meets the minimum contacts prong of the personal jurisdiction analysis, which they have not, the assertion of personal jurisdiction over ED&F Man is not reasonable under the circumstances, and therefore does not comport with "traditional notions of fair play and substantial justice."

Under the reasonableness analysis, the Court must determine: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life*, 84 F.3d 560, 568 (citing *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, at 113-114, 107 S.Ct. 1026, at 1032-1033 (1987)).

---

[21] We leave for another day the fact that under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010) which barred federal securities law claims against foreign defendants trading securities on foreign exchanges. *Id.*, at 266-67.

Here, the burden on ED&F Man would be significant. All of ED&F Man's records, files, and witnesses with information about the agreements with the Goldstein Plan and the operation of its accounts are located in the United Kingdom, not in New York. *See Metro. Life*, 84 F.3d at 574 (finding that the necessity of a Delaware corporation domiciled also in Pennsylvania to litigate a dispute in Vermont where none of its records or witnesses are weighs in favor of the out-of-state defendant on this factor of the reasonableness inquiry). Even more significantly, as a foreign corporation, ED&F Man is being asked "not only to traverse the distance" between its headquarters in London and New York, but also to "submit its dispute . . . to a foreign nation's judicial system" *Asahi*, 480 U.S., at 114, 107 S.Ct., at 1033. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* Therefore the burden factor should weigh strongly against the reasonableness of asserting jurisdiction over ED&F Man.

The interests of New York or the United States in adjudicating the Third-Party Complaint are also minimal. ED&F Man is regulated by the laws of England and the FCA. Moreover, the choice of law provision in the relevant agreements selecting English law strongly indicates that this forum does not have an interest in adjudicating the breach of contract claim. *See Sherwin-Williams Co. v. C.V.*, No. 14-CV-6227(RA), 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016) (holding that with respect to form state's interest factor of the reasonableness inquiry, New York had no interest in adjudicating the dispute where the agreements in question selected the law of a foreign country).

This forum additionally does not have a strong interest in adjudicating the other related claims between the Goldstein Defendants and ED&F Man.  The contracts at issue, and the alleged duties incident thereto, are exclusively between ED&F Man and the Goldstein Plan. *See Asahi*,

26

480 U.S. at 114–15 (forum state's determination of its interest in protecting its consumers was not applicable to a dispute between a defendant and third-party defendant that "is primarily about indemnification rather than safety standards.") Therefore, the third-party claims are not necessary to the adjudication of the claims in the MDL, and this forum accordingly has no significant interest in adjudicating this dispute between ED&F Man and the Goldstein Defendants. *See A + E Television Networks, LLC v. Wish Factory Inc.*, No. 15-CV-1189 (DAB), 2016 WL 8136110, at *11 (S.D.N.Y. Mar. 11, 2016) (dismissing third-party complaint for lack of personal jurisdiction where contacts to the forum are not those of third-party defendant, and although the third-party plaintiff may prefer to bring the claim where it is already litigating, judicial efficiency did not "weigh in favor of the exercise of jurisdiction [] where the issue is sufficiently distinct from the underlying [cause of action])."

The Goldstein Defendants have moreover explicitly agreed that the courts of England are an appropriate as well as the most convenient forum for adjudication of any dispute arising out of the contractual relationship between them and ED&F Man. They cannot claim, therefore, that the courts of New York are the only venue in which they can achieve convenient and effective relief. *See Asahi*, 480 U.S. at 102 (facts did not demonstrate that it would be more convenient for third-party claim to be litigated in California). On the contrary, they are precluded by their signed agreements from arguing that the courts of England are not the most suitable forum.

Finally, as to the interstate system and the shared interests of the states, the international nature of this dispute "calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [] court." *Asahi*, 480 U.S. at 115. The interests of the Courts of England in adjudicating disputes arising out of contracts formed under English law, and pursuant to the rules of its regulatory authorities, are significant,

as memorialized in the very contracts at issue in this dispute. *See Sherwin-Williams*, 2016 WL 354898 at \*6 (choice of foreign law in contract weighed in favor of dismissal on the factor of the international judicial system's interest in efficiency); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.,* 956 F. Supp. 427, 438 (S.D.N.Y. 1996) (finding that foreign nation "unquestionably has a strong interest in enforcing its own [laws]"). Therefore, in view of the context of this dispute, the severe burden on ED&F Man, and the minimal interests of the Goldstein Defendants and the State of New York in litigating this dispute in this forum, the exercise of personal jurisdiction by this Court, in this instance, would be "unreasonable and unfair." *Asahi*, 480 U.S. at 116.

In light of the clear lack of minimum contacts of ED&F Man with this forum, the additional consideration that it would be unreasonable and unfair to require it to litigate this dispute in this forum confirms that due process requires that this Court dismiss the Third-Party Complaint for lack of personal jurisdiction. *See Metro. Life*, 84 F.3d at 568-59; *Daimler*, 571 U.S. at 142.

## II.     The Third-Party Complaint Should Alternatively Be Dismissed on *Forum Non Conveniens* Grounds

Even if the Court declines to dismiss the Third-Party Complaint on personal jurisdiction grounds, it should exercise its discretion to dismiss on the grounds of *forum non conveniens*. "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842 (1947). *Forum non conveniens* challenges require courts to consider and determine three factors: "(i) the degree of deference due to the plaintiff's choice of forum; (ii) whether an adequate alternative forum exists; and (iii) the balance of public and private interests implicated in the choice of forum." *Guerrini v. Amtel Corp.*, 2016 WL 3548238 at \*2 (2d Cir. June 27, 2016) (citation omitted).

### A.     Plaintiff's forum choice

The choice of forum in this instance was made by SKAT, which has not alleged any claims against ED&F Man in this case, not by the Goldstein Defendants. "The degree of deference given to a plaintiff's forum choice varies with the circumstances." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). Here, the only basis for the forum choice for the Third-Party Complaint is the Goldstein Defendants' desire to bring ED&F Man into the pending MDL.

Moreover, there is no nexus between the primary MDL claims and the third-party claims that would affect the degree of deference given to the forum choice for the claims against ED&F Man. The Goldstein Plan's claims for breach of contract and breach of fiduciary duties based on agreements with ED&F Man are distinct from the underlying fraud claims and do not impact the adjudication of the fraud claims brought by SKAT against the various defendants. Moreover, the Goldstein Defendants have not properly alleged an indemnification claim tied specifically to SKAT's claims against the Goldstein Defendants, but rather have alleged securities and common law fraud based on an invented and unrelated deal between ED&F Man and an alleged affiliate, or alternatively on ED&F Man's non-communications after the third-party claims were filed and the brokerage account closed. Finally, the negligence claim mirrors the claim already being litigated by SKAT against ED&F Man in the English Action, but notably, SKAT has made no negligence claims in this forum to which this cause of action can be attached.

The Third-Party claims sound in breach of the various agreements and the corresponding duties arising therefrom, which are governed by English law and clearly specify that the courts of England are the most convenient forum. It is appropriate to dismiss on the basis of *forum non conveniens* in order to give deference to the forum selection clause of the subject agreement. *See Longo v. FlightSafety* Int'l, Inc., 1 F. Supp. 3d 63, 70 (E.D.N.Y. 2014) (dismissing on the basis of *forum on conveniens* upon finding that "determining whether claims or parties are subject to a

forum-selection clause must be interpreted under the body of law specified in the agreement's choice-of-law provision, here English law" which selected England as the forum); *Martinez v. Bloomberg LP*, 740 F.3d 211, 229 (2d Cir. 2014) (applying English law to enforce forum selection clause in favor of the United Kingdom for claims arising out of employment contract). The parties clearly contemplated England as being the most suitable, if not the exclusive, forum for the adjudication of disputes arising out of their contractual relationship.

Accordingly, for the purpose of the Third-Party Complaint, the Goldstein Defendants' forum choice should not be accorded much deference because they did not initially choose it, and they have previously acknowledged in their written agreements that an alternative forum is more suitable for claims arising out of their contracts with ED&F Man.

### B.      Whether an adequate alternative forum exists

Not only is England the forum selected by both parties for the purpose of claims arising out of the contracts at issue, it is indisputably an adequate alternative forum. "[I]t is well-established that British courts are an adequate alternative forum for resolving disputes that may impact American corporations or citizens." *Tel. Sys. Int'l, Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 381–82 (S.D.N.Y. 2003). As the birthplace of much of the United States' jurisprudential tradition, the United Kingdom is universally well regarded for its rule of law. "We regard the British courts as exemplary in their fairness and commitment to the rule of law" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000). Accordingly, the courts of England are indisputably an adequate forum for the adjudication of the breach of contract claim against ED&F Man, and this factor weighs in favor of dismissal on the grounds of *forum non conveniens*.

### C.      The balance of public and private interests implicated in the choice of forum

The balancing of interests in this instance also weighs in favor of dismissal for *forum non conveniens*. There is already the pending English Action regarding ED&F Man's potential liability

arising out of the same transactions on which the Goldstein Defendants base their nebulous claims. "The doctrine of international comity may also militate against litigation in this country when an American citizen has voluntarily conducted business in a foreign country, and parallel litigation is proceeding abroad." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 297 (S.D.N.Y. 2018). Accordingly, the Third-Party Complaint is duplicative of the issues being adjudicated in the ongoing English Action, and it would be a waste of judicial resources in both courts to litigate these issues simultaneously.

If the Third-Party Complaint were not dismissed, ED&F Man would have to defend claims based upon the same facts in both jurisdictions simultaneously. In addition, all of the evidence regarding the agreements and transactions by ED&F Man is located in the United Kingdom. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 ("[T]he court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues"). The predominant public policy of the United Kingdom weighs in favor of that forum resolving the dispute. There is generally a significant interest in having disputes "decided in the local forum in accordance with domestic law governing the case." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 275 (S.D.N.Y. 2010) ("Because the core events, operative facts, applicable law, and associated public policy interests at issue are predominantly local to [the foreign jurisdiction], the Court agrees with [the defendant] and finds that the dispute should be resolved in [that jurisdiction]").

Finally, the Goldstein Defendants have explicitly agreed in writing that "the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary" (Custody Agreement, Exhibit "F" to Third-Party Complaint, Niven Decl. Ex. A, at clause 22(e)) and "the courts of England shall have jurisdiction to determine any

proceedings arising out of or in connection with these Terms and Conditions . . . and [the parties] irrevocably submit to their jurisdiction . . . and waive any objection to the venue of such proceedings" (Terms, Niven Decl. Ex. E, at p. 33, ¶ 36). Because the parties have explicitly agreed that England has jurisdiction and is the most appropriate forum for adjudication of these contractual disputes in addition to the considerations against exercising personal jurisdiction, the Court should alternatively dismiss the Third-Party Complaint on the basis of *forum non conveniens*.

## III. Alternatively, the Court Should Grant a Stay of the Third-Party Claims Pending Resolution of the English Action

Even if the Court does not find that the Third-Party Complaint should be dismissed for the reasons stated herein, the Court should stay the third-party claims pending resolution of the English Action. "Courts have the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction." *Consol. Edison Co. of New York v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998).

In evaluating whether to stay an action due to a pending related foreign proceeding, the courts consider several factors, including: "(1) whether the identity of the parties and issues in both actions are the same or similar; (2) whether the alternative forum is likely to render a prompt disposition; (3) the temporal sequence of the filing of the actions; (4) whether a stay will promote judicial efficiency; (5) the convenience of the parties, counsel and witnesses; and (6) the possibility of prejudice to the parties." *800537 Ontario, Inc. v. World Imports U.S.A. Inc.*, 145 F. Supp. 2d 288, 290–91 (W.D.N.Y. 2001).

In this instance, the English Action was initiated by SKAT, the Plaintiff in the primary case before this Court against the Goldstein Defendants and the other defendants in the MDL. The

English Action was initiated on May 4, 2018,[22] well before the Third-Party Complaint, and is therefore both first in the temporal sequence, well underway, and therefore likely to render a disposition more promptly than this Court in the MDL. (*See generally*, Particulars of Claim, Niven Decl. Ex. F).

In the English Action, SKAT makes fraud claims very similar to the claims against the Goldstein Defendants against several defendants, and makes negligent misrepresentation and unjust enrichment claims against ED&F Man, with respect to the trades it made and Tax Vouchers it issued for shares in Danish companies on behalf of U.S. pension plans, including the Goldstein Plan. (*See id.*, at ¶¶ 91-94, Schedule 5T; the Amended Defence, Exhibit "A" to the Third-Party Complaint, Niven Decl. Ex. A, ¶ 6.2, Annex B). The Goldstein Defendants essentially allege that ED&F Man made misrepresentations in breach of the agreements and related duties that led to damages or potential damages. Therefore, the parties and issues are substantially similar, if not identical, between the Third-Party Complaint on the one hand, and the English Action on the other. Even to the extent the actions are not identical, "parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action." *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991).

A stay in the alternative to a dismissal will also promote judicial efficiency. *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 104 (S.D.N.Y. 1997) (finding a stay of the action pending resolution of the foreign action "will promote judicial efficiency by putting all parties and claims before a single tribunal, thus reducing duplicative discovery and litigation" and "will minimize the risk of inconsistent judgments with respect to related claims"). The primary focus of the MDL is on the fraud claims against the pension plan and individual defendants, to

---

[22] *See* Amended Defence, Exhibit "A" to the Third-Party Complaint, Niven Decl. Ex. A, at ¶ 1) (Claim initiated on May 4, 2018, though the Particulars of claim were filed later).

which a breach of contract claim against ED&F Man would be peripheral. Any claims against ED&F Man in fact cannot be resolved without a determination of the liability of the pension plans, as the Third-Party Complaint acknowledges by pleading the breach of contract claim in hypothetical form. (*See* Third-Party Complaint, Niven Decl. Ex. A, ¶ 106). The English Action, by contrast, is simultaneously considering claims against multiple fraud <u>and</u> non-fraud defendants. Moreover, taking discovery from United Kingdom-based defendants in the English Action will undoubtedly be more efficient than in the instant proceeding. Proceeding in the English Action, while staying the Third-Party Complaint will be more convenient for ED&F Man for the same reasons, and for the Goldstein Defendants as well, as they may reference public filings and determinations in that action once it has concluded, and may seek to take discovery from ED&F Man only if it becomes necessary based on the determinations in the MDL.

## CONCLUSION

For all of the foregoing reasons, ED&F Man respectfully requests that the Court issue an order dismissing the Third-Party Complaint as against ED&F Man in its entirety, on the basis of Rule 12(b)(2) for lack of personal jurisdiction, or alternatively on the basis of the doctrine of *forum non conveniens*. Should the motion to dismiss be denied, ED&F Man respectfully requests that the Court issue an order staying the Third-Party Complaint as against ED&F Man pending the resolution of the English Action.

Respectfully submitted,

Dated:    December 6, 2019
New York, New Yok

**AKERMAN LLP**

By:___*/s/ Brian S. Fraser*_____
        Brian S. Fraser
        Kristen G. Niven
        brian.fraser@akerman.com
        kristen.niven@akerman.com
        666 Fifth Avenue, 20th Floor
        New York, NY 10103
        Telephone:  (212) 880-3800
        *Attorneys for Third-Party Defendant ED&F Man*
        *Capital Markets, Ltd.*