UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION,<br><br>This document relates to 1:18-cv-05053-LAK | MASTER DOCKET<br><br>Case No. 1:18-md-02865-LAK |

**THIRD-PARTY DEFENDANT ED&F MAN CAPITAL MARKETS, LTD.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED THIRD-PARTY COMPLAINT PURSUANT TO RULE 12(b)(2) OR FOR *FORUM NON CONVENIENS* OR IN THE ALTERNATIVE TO STAY ALL PROCEEDINGS AGAINST IT**

Third-Party Defendant ED&F Man[1] respectfully submits this reply memorandum of law in support of its motion to dismiss the ATPC pursuant to Rule 12(b)(2), or, alternatively, for *forum non conveniens*, or for a stay pending the resolution of a foreign action.

## PRELIMINARY STATEMENT

In its moving Memorandum, ED&F Man analyzed each allegation in the Goldstein Defendants' ATPC bearing on this Court's exercise of personal jurisdiction over ED&F Man and the considerations weighing against the third-party claims proceeding in this Court at this time. ED&F Man applied recent precedent to a liberal construction of the self-contradicting and tenuous claims, showing that they do not support personal jurisdiction over ED&F Man in New York (or anywhere else in the United States for that matter). In their Opp., the Goldstein Defendants double down, further contorting the contradicted or irrelevant facts to fit their narrative. They ignore key aspects of the due process analysis, and insist on an impractical and ultimately unconstitutional application of the personal jurisdiction jurisprudence. Now, despite it being their fourth chance to establish a *prima facie* basis, they still fail to allege the facts necessary to establish personal jurisdiction.

## ARGUMENT

### I. The Goldstein Defendants Fail to Allege Any Facts Supporting the Court's Exercise of Personal Jurisdiction Over ED&F Man

The Goldstein Defendants' Opp. relies on pointed phrasing rather than substantive facts to transform irrelevant or contradicted allegations into a basis for personal jurisdiction, to no avail. This underscores the fact that the ATPC fails to allege non-conclusory, uncontroverted facts that make out a prima facie case for personal jurisdiction. *See Charles Schwab Corp. v. Bank of Am.*

---

[1] For the purposes of this reply memorandum, all capitalized undefined terms shall have the same referents as the same terms in the moving memorandum of law in support of the instant motion (the "Memorandum"), and the Amended ATPC shall be referred to as the "ATPC" as defined in the Goldstein Defendants' Opposition ("Opp.").

1

*Corp.*, 883 F.3d 68, 81–82 (2d Cir. 2018) (*prima facie* showing must be based on "legally sufficient" allegations of jurisdiction); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (courts will take as true uncontroverted factual allegations, but will not draw argumentative inferences in plaintiff's favor).

    A.    <u>The ATPC Fails to Allege ED&F Man's Minimum Contacts Within the Forum</u>

The Goldstein Defendants continue to offer allegations regarding contacts that corporate affiliates have with New York that are not ED&F Man's contacts and that are wholly unrelated to the third-party claims. (Opp. pp. 4-5). The Opp. further argues, though the ATPC does not allege, that ED&F Man "uses the same services, infrastructure, and personnel" as two New York City-based affiliates, citing a webpage that links to the U.S.-based affiliate. (Opp. p. 5). Yet the ATPC does not (and cannot) allege that ED&F Man is a mere alter ego of any New York affiliate, or should otherwise be treated as the same entity for purposes of personal jurisdiction. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (a court will not accept legal conclusions couched as factual allegations that foreign corporation is a "mere department" of its U.S. affiliate in determining personal jurisdiction); *SPV Osus Ltd. v. UniCredit Bank Austria*, No. 18-CV-3497(AJN), 2019 WL 1438163, at *8 (S.D.N.Y. Mar. 30, 2019) (declining to consider facts and theories raised in the first time in opposition briefing on alter ego theory for jurisdiction). This is merely an improper attempt to conflate separate legal entities for purposes of jurisdictional analysis, a tactic that courts in this District reject. *See, e.g., Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12 Civ. 3419 (GBD), 2017 WL 1113080, at *7 (Mar. 10, 2017); *Daimler AG v. Bauman*, 571 U.S. 117, 134–36, 134 S. Ct. 746, 759-60 (2014).

Personal jurisdiction must be based on ED&F Man's <u>own contacts</u> with the forum, not those of its holding company or affiliates. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930, 131 S. Ct. 2846, 2857 (2011) (rejecting that petitioners' ties to corporate

2

affiliates in the U.S. should be consolidated). The Goldstein Defendants' claims about the brand's advertisements, which are not the basis for any of the claims, do not unite the entities into one for personal jurisdiction. *Schwab*, 883 F.3d, at 83–84. Even if the alleged statements about ED&F Man's "unfettered access to New York markets" (Opp. p. 17) or the use of "co-location facilities" (essentially servers to facilitate global transfer of information) near New York financial exchanges were ED& Man's direct statements, these are not contacts with the forum sufficient to constitute purposeful availment.[2] "*Laydon v. Mizuho Bank, Ltd.*, No. 12 CIV. 3419 GBD, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015) (Communications that 'passed through and/or were stored within the United States' are insufficient to assert personal jurisdiction over a defendant."); *Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2017 WL 1113080, at *4.

Finally, suggesting that a foreign entity that either has, or holds itself out as having, mere access to U.S. markets is somehow by that fact subject to the personal jurisdiction of U.S. courts vastly exceeds the limits of due process, and makes the Court's jurisdiction potentially limitless. *See Daimler*, 571 U.S. at 137–39, 134 S. Ct. at 760-61 ("Such exorbitant exercises of all-purpose jurisdiction" would deprive foreign corporations of notice of which acts would render them liable to suit in the United States).

    A.    <u>ED&F Man Is Not Subject to Personal Jurisdiction under New York Law</u>

The Goldstein Defendants' allegations purporting to demonstrate ED&F Man's projection into New York are either conclusory, irrelevant, or contradicted by their other allegations or by documents they referenced in the ATPC or submitted to the Court. They fail to allege a basis for long-arm jurisdiction over ED&F Man under New York law.

---

[2] The Opp. attempts to add a further basis for long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(4), though this is nowhere alleged as a basis for jurisdiction in the ATPC. (Opp. p. 17).

It is undisputed that a contractual relationship with a resident is not enough to confer long-arm jurisdiction over a non-resident in New York. *See Bristol-Meyers Squibb v. Superior Ct. of California, San Francisco Cty.,* 137 S. Ct. 1773, 1777 (2017). While the Opp. recites this standard (Opp. p. 15), the Goldstein Defendants nevertheless argue that the mere fact that ED&F Man knew the Goldstein Plan was domiciled in New York is sufficient to subject it to the Court's jurisdiction. (Opp. pp. 18-19). The agreements between ED&F Man and the Goldstein Plan were not negotiated in New York, and the ATPC does not allege any communications about the terms between the parties, in New York or otherwise. (Memorandum, pp. 17-20). The agreements are contracts of adhesion, stating the same terms and obligations between ED&F Man and the Goldstein Plan as with any other client anywhere in the world.[3]

The Opp. misleadingly refers to "solicitations" of trades underlying the primary claims in the MDL, but these were merely communications sent in the course of ED&F Man's performance of the agreements. Performing these England-centered contracts necessarily required transactions "presented, structured, funded, and executed" exclusively from ED&F Man's office in London, communicating pursuant to the contract to the Goldstein Plan or its agent, and transferring funds from the Goldstein Plan's brokerage account to its designated account. Yet, these facts follow from the mere fact that the Goldstein Plan is domiciled in New York – they were not the result of ED&F Man independently and purposefully directing its activities to the United States. Thus, the Goldstein Defendants are relying on their own contacts with the forum, which is insufficient to subject ED&F Man to the Court's jurisdiction. *See Walden v. Fiore,* 571 U.S. 277, 284–85, 289, 134 S. Ct. 1115, 1122, 1125 (2014). None of these communications constitute transaction of business under New York's long-arm statute or purposeful availment under the standards of due

---

[3] *See generally,* ATPC Exs. F, G, Niven Decl. Exs. B-E.

process. *See Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 387-88 (S.D.N.Y. 2006) (communications about an existing contract from out-of-state defendant was not transaction of business under New York's long-arm statute).

Nor did ED&F Man's business as a whole project it into the forum. As the agreements indisputably show, ED&F Man's business model, far from the predatory, ever-soliciting specter the Goldstein Defendants raise, is simply a custodian facilitator of trades at the express instruction and initiative of the client or their representative.[4] ED&F Man provides no investment advice or strategies, only information incident to the transaction of the desired trades.[5] Far from projecting itself into the United States, the location of the client does not affect its operation in the slightest. *See Walden*, 571 U.S. at 286, 134 S. Ct. at, 1123.

The Goldstein Defendants' claims that ED&F Man "solicited" them to enter into this contractual relationship, intentionally borrowing the language of New York's long-arm statute, are contradicted by their own pleadings and the referenced agreements. They claim that ED&F Man targeted and solicited them to open an account in exchange for ED&F Man "bring[ing] dividend arbitrage opportunities" (Opp. p. 24) but this claim is directly refuted by their allegation that the Goldstein Plan specifically sought out dividend arbitrage, and came to ED&F Man through a prior relationship trading in these securities. (Opp. p. 3; ATPC, at ¶ 324).[6] Moreover, they claim that the agreements memorialized this, yet nowhere is this specific promise stated. (*See* ATPC Exs. F, G).

The Goldstein Defendants continue to recite the baseless argument that ED&F Man engaged in "banking activity" in the forum sufficient to confer long-arm jurisdiction, through a

---

[4] *Compare* ATPC at ¶¶ 119-125 with ATPC Ex. F ¶¶ 2, 8-9, 11-12, Niven Decl,. Exs. C, ¶ 1.3, and E, ¶¶ 3, 17, 22.
[5] See Niven Decl. Ex. E, ¶ 3; ECF Doc No. 190-3 (The Goldstein Defendants filed a document purporting to demonstrate the solicitation of the Novo Nordisk trade from April 2014 in particular, yet it shows only ED&F Man informing them on trade opportunities, and the direction from the Goldstein Plan's agent to proceed with the trade. The email disclosure specifically disclaims any investment advice or instruction.)
[6] The Goldstein Defendants failed to allege any basis for imputing an alleged business model of a separate, non-party and now defunct entity to ED&F Man, and their allegations contradict any claim that it originated with ED&F Man.

5

bank account owned by the Goldstein Plan, not by ED&F Man. None of the cases they cite in support of this are applicable, as each considers the exercise of personal jurisdiction over foreign banks that maintained and used their own U.S. correspondent accounts to facilitate transferring money to customer accounts, not direct transfers to customers' U.S. accounts like the Goldstein Plan's. *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013); *Gucci America, Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 95 (S.D.N.Y. 2015); *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, No. 18 Civ. 1876 (BAE), 2019 WL 3252907 (S.D.N.Y. July 19, 2019).

The Goldstein Defendants' allegations that they were harmed while domiciled in New York are insufficient under N.Y. C.P.L.R. 203(a)(3) to confer jurisdiction over ED&F Man, because the situs of the harm was not in New York. The Goldstein Plan's ED&F Man brokerage account, through which all trading activity occurred, was maintained in London. The Goldstein Plan could have been located anywhere else and the effect on them would have been the same, therefore there was no New York situs sufficient to bring ED&F Man within its jurisdiction. *See Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 220–21 (2d Cir. 2013).[7] The ATPC also fails to establish that under CPLR 302(a)(3) ED&F Man derived "substantial revenue" from its services.[8] They make no allegations of the sum of ED&F Man's fees or how it meets this

---

[7] The Opp. incorrectly cites as the opinion of the Court in the cases cited in ED&F Man's Memorandum the mandatory disclosure under the Second Circuit's rule in the reporter legend. Although Second Circuit summary orders are not binding, they may be cited (Fed. R. App. P. 32.1) and have frequently been held to be persuasive authority that should not be lightly ignored by the district court. *See, e.g., Liana Carrier Ltd. v. Pure Biofuels Corp.*, No. 14-CV-3406 (VM), 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015), aff'd, 672 F. App'x 85 (2d Cir. 2016) ("[C]ourts in the Second Circuit have often noted that unpublished opinions and Summary Orders from the Second Circuit Court of Appeals, while not binding, can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future.").
[8] The Opp. misleadingly states that ED&F Man "charg[ed] the Plan fees once SKAT processed its Reclaim Applications, which totaled nearly $1.5 million" as satisfying this prong of the long-arm statute, but the $1.5 million figure refers to the damages alleged by SKAT against the Goldstein Defendants (ATPC ¶ 207), not ED&F Man's fees.

standard.[9] *See AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 332 (S.D.N.Y. 2017). Nor have they alleged that ED&F Man rendered services "in the state." On the contrary, the contract was performed entirely in England. *See Schwab*, 883 F.3d, at 88.

ED&F Man facilitated the transactions in England of Danish securities on European exchanges for numerous clients, some of whom happen to be domiciled in the U.S. It did not project itself into the United States, and any tenuous contact with the forum is merely incidental *See id.*; *Walden*, 571 U.S., at 289, 134 S. Ct., at 1125 Therefore, the Goldstein Defendants have not met their burden of establishing *prima facie* this Court's exercise of personal jurisdiction over ED&F Man under New York's long-arm statute.

### B. The Goldstein Defendants Failed to Allege Any Other Basis for Jurisdiction

The Goldstein Defendants failed to allege facts demonstrating that ED&F Man purposefully availed itself of the U.S. securities laws. None of their cited authority considers facts in which the defendant both: (i) traded in foreign securities, <u>and</u> (ii) traded on foreign exchanges, thus not directly utilizing or affecting the U.S. securities and exchange infrastructure. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 130 S. Ct. 2869, 2883 (2010). The Goldstein Defendants also unconvincingly attempt to use the examples of other defendants in the MDL as a basis for conferring long-arm jurisdiction over ED&F Man in New York. The long-arm statutes of other states do not apply to the analysis of the Goldstein Defendants' claims, which must have a nexus with this forum. *See Schwab*, 883 F.3d, at 83–84 (plaintiff failed to establish personal jurisdiction with respect to each claim asserted based on each defendant's individual forum contacts).

### II. Exercise Of Jurisdiction Would Be Inconsistent With Due Process

---

[9] They also do not allege ED&F Man's substantial revenue from international commerce, reciting only revenue and assets of separate corporate affiliates, not of ED&F Man itself. (Opp. p. 26).

7

The Goldstein Defendants' claims that New York has a significant interest in adjudicating this dispute are misplaced. Unlike in *State Farm Fire & Cas. Co. v. Sqizz Style, Inc.*, 246 F. Supp. 3d 880 (S.D.N.Y. 2017), which found New York's interests in protecting domestic consumers to be significant in a products liability case, the Goldstein Plan's voluntary submission to the laws and courts of England for disputes arising out if its London brokerage account do not weigh in favor of exercising personal jurisdiction. Because none of ED&F Man's activities were directed at New York, the fact that the relationship with a New York resident gave rise to the alleged claims is irrelevant. *See Sullivan v. Barclays PLC*, 2017 WL 685570, at *45 (S.D.N.Y. Feb. 21, 2017).

Moreover, the Opp. ignored the fourth and fifth factors of the reasonableness inquiry of the due process analysis for personal jurisdiction, incorrectly asserting "because this case does not involve parties based in different United States jurisdictions, [these factors] are not relevant here." (Opp. p. 21). This is contrary to the controlling precedent articulated in *Asahi Metal Industry Co. v. Superior Ct. of California, Solano Cty.*, which "calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [] court." 480 U.S. 102, 115, 107 S. Ct. 1026, 1033 (1987). Those factors, which the Court should consider, weigh in favor of dismissal. (*See* Memorandum, pp. 27-28).

### III.   The Goldstein Defendants Agreed that England Is the More Convenient Forum

The Goldstein Defendants' claims that the Court should not dismiss ED&F Man on *forum non conveniens* grounds ignores the fact that they specifically agreed not to dispute that the Courts of England are the most convenient forum (*See* Custody Agreement, ATPC Ex. F, at clause 22(e)), and that submitting to the courts of a foreign legal system in a dispute governed by English law places a burden on ED&F Man. (Memorandum, p. 26). The Opp. overstates the Goldstein Defendants' burden of bringing their action in England, particularly since they already agreed to the non-exclusive jurisdiction of the Courts of England for all disputes with ED&F Man. Their

8

reliance on *Giudi v. Inter-Continental Hotels Corp.* is inapposite because it accorded more weight to the burden factor based on the "atypical" fact that the plaintiffs in that action were victims of a terrorist act in Egypt. 224 F.3d 142, 147 (2d Cir. 2000). The Goldstein Defendants, as sophisticated and willing investors with an English broker-dealer, are not so burdened. Accordingly, the Court should dismiss the claims in this forum.

### IV.   The Court Should Alternatively Stay All Proceedings Against ED&F Man

The Opp. incorrectly argues that the concurrent English Action "would not resolve the Goldstein Parties' issues with ED&F Man." The English Action will make determinations dispositive of the Goldstein Defendants' claims, because it will illuminate what happened with the trades for which ED&F Man issued the incorrect vouchers and determine whether ED&F Man was at all culpable in issuing them, which ED&F Man denies. (*See* ATPC Ex. A). Thus a court with jurisdiction over ED&F Man will make critical findings of fact and conclusions of law on the precise trades at issue, but the Goldstein Defendants urge this Court to simultaneously make the same determinations, risking inconsistent outcomes. *See Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 104 (S.D.N.Y. 1997). The Goldstein Defendants would moreover have the opportunity of full recourse if the action were stayed, and they could subpoena ED&F Man for any necessary documents in the interim.[10] While they complain of needing to "rely on the kindness of strangers" for information, they have not even attempted to subpoena ED&F Man, instead electing to bring spurious third-party claims. They therefore cannot claim prejudice simply because they do not want to use the appropriate vehicle for obtaining relevant documents.

---

[10] The Goldstein Defendants could seek non-party discovery from ED&F Man even if the Court finds no personal jurisdiction, through requesting the Court to issue letters rogatory for the production of relevant documents *See Joseph v. Gnutti Carlo S.p.A.*, No. 15-CV-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016). If the Court finds it has personal jurisdiction over ED&F Man, it may subpoena ED&F Man pursuant to 28 U.S.C. § 1783.

9

V.      **The Court Should Deny Jurisdictional Discovery and Further Amendments**

The ATPC still fails to plead a basis for the Court's exercise of personal jurisdiction over ED&F Man, and these deficiencies are not cured by the Opp. The Goldstein Defendants' claims, even taken as true, utterly fail to demonstrate *prima facie* personal jurisdiction over ED&F Man, and further amendment to the increasingly complex, contradictory and implausible allegations would not remedy the deficiencies, but would only increase the time and cost of this litigation. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Likewise, jurisdictional discovery would be futile because the contracts at issue are already in the record and undisputed, and discovery into the legally deficient allegations would not illuminate the issue of personal jurisdiction. *See Bank of Tokyo-Mitsubishi,* 2017 WL 1113080, at *8. The Court should therefore deny the broad discovery the Goldstein Defendants seek under the guise of jurisdictional discovery, and deny any further amendment to their already over-complicated third-party claims.

## CONCLUSION

For all of the foregoing reasons, ED&F Man respectfully requests that the Court issue an order dismissing the ATPC as against ED&F Man, or alternatively staying the ATPC as against ED&F Man pending the resolution of the English Action.

Respectfully submitted,

**AKERMAN LLP**

By: /s Brian S. Fraser
    Brian S. Fraser
    Kristen G. Niven
    brian.fraser@akerman.com
    kristen.niven@akerman.com
    666 Fifth Avenue, 20th Floor
    New York, NY 10103
    Telephone: (212) 880-3800
    *Attorneys for Third-Party Defendant ED&F Man Capital Markets, Ltd.*

10