UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND
LITIGATION

18-md-2865 (LAK)

This paper applies to: 18-cv-9797; 18-cv-9836;
18-cv-9837; 18-cv-9838; 18-cv-9839; 18-cv-9840;
18-cv-9841.
------------------------------------x

## MEMORANDUM OPINION

Appearances:

>   William R. Maguire
>   Marc A. Weinstein
>   John T. McGoey
>   HUGHES HUBBARD & REED LLP
>   *Attorneys for Plaintiff*

>   John C. Blessington
>   Brandon R. Dillman
>   K&L GATES LLP
>   *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

In response to SKAT's complaints against them, each of the Utah Plans raised materially identical counterclaims against SKAT under Utah law for unjust enrichment and promissory estoppel. Each alleges that SKAT, an agency of Denmark responsible, pursuant to a treaty between the United States and Denmark, for refunding Danish withholding taxes on dividends paid to certain U.S. shareholders of Danish companies, unlawfully refused to refund the

counterclaimant for at least one such tax.[1]

SKAT moved to dismiss the counterclaims on the grounds that they are barred by the act of state doctrine and that the Utah Plans failed to state a claim under Utah law.[2]

*Discussion*

I.  Act of State Doctrine

Under the act of state doctrine,

> "the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law."[3]

The act of state doctrine applies here. Holding that an agency of Denmark unlawfully denied an application for a tax refund would require examining the validity of a sovereign act by the Danish government in Denmark. Although the Utah Plans refer to the treaty between the United States and Denmark, they do not argue that it or any other unambiguous agreement supplies controlling legal principles.

The Utah Plans raise several arguments against applying the act of state doctrine. They contend first that it would be unfair to allow SKAT to pursue claims against them while barring

---

[1] *See* Declaration of Marc. A. Weinstein Exs. 1-9 [DI-182] (collecting the complaints); *see, e.g.*, Ex. 1 ¶¶ 9, 44-59.

[2] The parties assume that Utah law applies here. I make the same assumption.

[3] *Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co.*, 652 F.2d 231, 237 (2d Cir. 1981) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964)).

3

counterclaims that they believe are compulsory. However, "[t]he [Supreme Court] has . . . faced and rejected the argument that a sovereign plaintiff [that] voluntarily brings an action in American courts should . . . be stripped of its right to invoke the act of state doctrine as a defense to a counterclaim."[4] Any potential unfairness therefore is legally unavailing.

The Utah Plans' more substantial challenge is that the *Bernstein* exception to the act of state doctrine should allow them to proceed with their counterclaims. In *Bernstein*, the Second Circuit, "as an exception to the act of state doctrine," authorized an "adjudication of the validity of acts of the Nazi government of Germany . . . after receiving advice from the Acting Legal Advisor to the State Department that" the executive branch did not oppose the adjudication.[5] As the court later explained, "*Bernstein* arose out of a unique set of circumstances calling for special treatment, and hence should be narrowly construed and, insofar as is possible, limited to its facts."[6]

Moreover, in the context of counterclaims against a foreign state plaintiff, the Second Circuit since has held that,

> "where (1) the Executive Branch has provided a *Bernstein* letter advising the courts that it believes act of state doctrine need not be applied, (2) there is no showing that an adjudication of the claim will interfere with delicate foreign relations, and (3) the claim against the foreign sovereign is asserted by way of counterclaim and does not exceed the value of the sovereign's claim, adjudication of the counterclaim for

---

[4] *Empresa Cubana*, 652 F.2d at 238 (citing *Sabbatino*, 376 U.S. at 438-39).

[5] *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 882 (2d Cir. 1981) (citation omitted); *see also Bernstein v. N. V. Nederlandsche-Amerikaansche, Stoomvaart-Maatschappij*, 210 F.2d 375 (2d Cir. 1954).

[6] *Banco Nacional de Cuba v. First Nat. City Bank of New York*, 442 F.2d 530, 534 (2d Cir. 1971), *rev'd on other grounds, First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759 (1972).

4

expropriation of the defendant's property is not barred by the act of state doctrine."[7]

To satisfy the *Bernstein* letter requirement, the Utah Plans point to letters that the executive branch wrote in 1970 and 1975 and submitted in certain Cuban expropriation cases then pending before the Supreme Court. From these letters, the Utah Plans would have the Court draw a general principle that the executive branch *never* opposes the adjudication of compulsory counterclaims against a foreign state plaintiff where the counterclaims arise from the same transaction or occurrence as the foreign state's claims.

The parties have not adequately briefed the question of whether this in fact was the executive branch's position or whether the letters were specific to the cases for which they were written. Nor have the parties adequately briefed the separate question of whether, even if those letters written for particular cases were intended to apply generally, the Second Circuit's requirement that the executive branch provide a *Bernstein* letter requires a case-specific letter. But even assuming these problems away, the Court could not apply the *Bernstein* exception on this record. The idea behind the *Bernstein* exception is that the act of state doctrine's comity goals are not advanced where the executive branch has indicated that federal courts would not interfere with foreign policy by passing on certain acts of a foreign state. A letter from the executive branch is the best evidence of its view, particularly where such a letter was written for and about the case at hand. It is perhaps out of an abundance of caution and respect for the executive branch's primacy in the realm of foreign relations that the Second Circuit is unwilling to apply the *Bernstein* exception absent such a letter. That same caution is appropriate here, where the only evidence of whether the

---

[7] *Chase Manhattan Bank*, 658 F.2d at 884.

5

executive branch would suspend the act of state doctrine is two letters from the 1970s written in the context of Cuban expropriation claims.

The Utah Plans have offered no evidence whatsoever that the current administration holds the general views on compulsory counterclaims that the Utah Plans would have the Court attribute to the Nixon and Ford administrations. Moreover, it is entirely possible that between 1975 and 2019, any of the eight administrations that occupied the executive branch took a different position in some letter of policy of which the Court is not aware. It is clear also that different policy considerations might apply where a defendant raises counterclaims in 2019 against Denmark, an ally of the United States, and Cuba, with which the United States did not have diplomatic relations in the 1970s. The Utah Plans fail to address this possible distinguishing factor and, again, offer no evidence as to the executive's current position, let alone its view on these particular cases.

*II.    Utah Law*

SKAT moves to dismiss also on the ground that the Utah Plans have not stated claims for promissory estoppel and unjust enrichment under Utah law. The Court agrees as to promissory estoppel, as Utah law requires that a promise be "reasonably certain and definite."[8] "[P]ast practice, custom, or performance does not constitute a clear and definite promise expected to induce reliance that is necessary to support a claim for promissory estoppel. Rather, [a claimant] must point to some affirmative statement made by [the defendant]."[9] The Utah Plans have pointed only to SKAT's

---

[8] *See Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1089 (Utah 1999).

[9] *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1242 (D. Utah 2015); *see also Nunley*, 989 P.2d at 1089 ("[A] claimant's subjective

6

practice of processing refund applications pursuant to the United States-Denmark treaty.[10] Nothing in Utah law that they have identified suggests that this practice constituted a promise.[11]

*Conclusion*

The motion to dismiss the Utah Plans' counterclaims [DI-179] is granted.[12]

SO ORDERED.

Dated: January 23, 2020

                                              /s/ Lewis A. Kaplan
                                             Lewis A. Kaplan
                                             United States District Judge

---

understanding of the promissor's statements cannot, without more, support a promissory estoppel claim.").

[10] *See, e.g.*, Declaration of Marc. A. Weinstein Ex. 1 [DI-182] ¶¶ 51-52 (characterizing SKAT's "promise" as "the process by which it would receive, review, and either deny or accept applications for dividend-withholding taxes pursuant to the U.S.-Denmark Tax Treaty" and "SKAT's prior course of conduct, its practices, policies, and procedures" where certain supporting documents were submitted with the refund application).

[11] A more detailed discussion will be found in a subsequent opinion addressing whether counterclaimants raising similar claims under New York law stated a claim against SKAT in the absence of a requisite "clear and unambiguous promise."

[12] As I do not reach SKAT's remaining grounds for dismissal, I express no opinion on their validity.