**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX<br>ADMINISTRATION OF THE<br>KINGDOM OF DENMARK (SKAT)<br>TAX REFUND LITIGATION<br><br>This paper applies to: 19-cv-01791 | Case No. 18-MD-2865-LAK<br><br><br>__ANSWER AND COUNTERCLAIMS__<br><br><br>__JURY TRIAL DEMANDED__ |

Defendants Fairlie Investments LLC Roth 401(K) Plan ("Fairlie") and Joseph Herman ("Herman") (collectively, the "Herman Defendants"), by and through their attorneys Kaplan Rice LLP, hereby answers and asserts affirmative defenses, other defenses and counterclaims as follows to the February 26, 2019 complaint of plaintiff Skatteforvaltningen ("SKAT") (the "Complaint"). The Herman Defendants deny each and every allegation in the Complaint except as specifically admitted or responded to as follows. The paragraphs that follow align with the numbered paragraphs in the Complaint, and the counterclaims are asserted thereafter..

I.      __INTRODUCTION__

1.      The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.      Paragraph 2 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 as to others.

3.      Paragraph 3 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, the Herman Defendants deny the allegations as

1

to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 as to others.

4.     Paragraph 4 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 as to others.

5.     Paragraph 5 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 as to others.

6.     Paragraph 6 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 as to others.

7.     Paragraph 7 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 as to others.

8.     Paragraph 8 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.     Paragraph 9 of the Complaint and its subparagraphs state legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants

deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 as to others.

10.     The Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 as to other defendants.

11.     Paragraph 11 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 as to others.

12.     Paragraph 12 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 as to others.

13.     Paragraph 13 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 as to others.

## II.     JURISDICTION & VENUE

14.     Paragraph 14 of the Complaint states legal conclusions to which no response is required.

15.     Paragraph 15 of the Complaint states legal conclusions to which no response is required.

### III.    PARTIES

16.    The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.    The Herman Defendants admit the allegations set forth in Paragraph 17 except deny the implication that Fairlie was not a bona fide pension plan.

18.    The Herman Defendants admit the allegations in Paragraph 18 that Herman is a citizen of the State of New York and was the sole participant in Fairlie.  The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

19.    Paragraph 19 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and admit, upon information and belief, the allegations concerning Defendant Ben-Jacob.

### IV.    FACTUAL ALLEGATIONS

#### A.    The Danish Withholding Tax System

20.    The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21.    Paragraph 21 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants respectfully refer the Court to section 65 of the Danish Withholding Tax Act for a complete and accurate statement of its contents.

22.    Paragraph 22 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants respectfully refer the

4

Court to the double taxation treaty between Denmark and the shareholder's country of residence for a complete and accurate statement of its contents.

23.     Paragraph 23 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants respectfully refer the Court to the double taxation treaty between Denmark and the United States for a complete and accurate statement of its contents.

24.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

**B.     The Fraudulent Scheme**

26.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

**1.     The Fraudulent Refund Claims Process**

27.     Paragraph 27 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28.     The Herman Defendants admit that Fairlie received payments and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28.

29.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and each of its subparagraphs and

respectfully refer the Court to the documents referred to in Paragraph 29 and each of its subparagraphs for a complete and accurate statement of their contents.

30.     Paragraph 30 of the Complaint state legal conclusion to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 as to others.

31.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

32.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.

### 2.     The Role of the Claimants

33.     Paragraph 33 of the Complaint states legal conclusions to which no response is required.  To the extent that a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 as to others.

34.     *See* the Herman Defendants' answer to Paragraph 29.

35.     Paragraph 35 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the fraud allegation and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35.

36.     Paragraph 36 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the fraud allegations

and deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36.

37.      The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 except admits, upon information and belief, that tax refund claims were submitted by or on behalf of Fairlie.

38.      Paragraph 38 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the implied fraud allegation as to Fairlie and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.

39.      Paragraph 39 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations and deny knowledge or information sufficient to form a belief as to the truth of the payment date allegations in Paragraph 39.

40.      Paragraph 40 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations except admits that Herman was the sole participant in Fairlie.

**3.      The Role of the Claimants' Authorized Representatives**

41.      The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and respectfully refer the Court to the Power of Attorney for a complete and accurate statement of its contents.

42.      *See* the Herman Defendants' answer to Paragraph 41.

Case 1:19-cv-01791-LAK   Document 47   Filed 02/03/20   Page 8 of 28

43.    Paragraph 43 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43.

44.    Paragraph 44 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 as to others.

45.    As Paragraph 45 does not contain allegations concerning the Herman Defendants, no response is required.

46.    Paragraph 46 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 as to others.

47.    Paragraph 47 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 as to others.

### 4.    The Role of the Payment Agents

48.    Paragraph 48 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 as to others.

49.     Paragraph 49 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 and refer to the Power of Attorney for a complete and accurate statement of its contents.

50.     As Paragraph 50 does not contain allegations concerning the Herman Defendants, no response is required.

51.     As Paragraph 51 and its subparagraphs do not contain allegations concerning the Herman Defendants, no response is required.

52.     The Herman Defendants deny the allegations as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52.

## 5.     The Role of the Broker-Custodians

53.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.     The Herman Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 and its subparagraphs and respectfully refers the Court to the Dividend Advice for a complete and accurate statement of its contents.

55.     Paragraph 55 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny allegations in Paragraph 55.

## CAUSES OF ACTION

### COUNT I
### (Fraud – Against Defendants Fairlie and Herman)

56.     The Herman Defendants repeat and reallege their answers to paragraphs 1 through 55 as if set forth fully herein.

57.     Paragraph 57 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 57.

58.     Paragraph 58 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 58.

59.     Paragraph 59 of the Complaint states legal conclusions to which no response is required.   To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 59.

60.     Paragraph 60 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 60.

### COUNT II
### (Aiding and Abetting Fraud – Against All Defendants)

61.     The Herman Defendants repeat and reallege their answers to paragraphs 1 through 60 as if set forth fully herein.

62.     Paragraph 62 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in

Paragraph 62 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 as to others.

63.     Paragraph 63 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 63 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 as to others.

64.     Paragraph 64 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 64 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 as to others.

65.     Paragraph 65 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 65 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 as to others.

66.     Paragraph 66 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 66 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 as to others.

67.     Paragraph 67 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 67 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 as to others.

## COUNT III
### (Payment By Mistake – Against All Defendants)

68.     The Herman Defendants repeat and reallege their answers to paragraphs 1 through 67 as if set forth fully herein.

69.     Paragraph 69 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 69 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 as to others.

70.     The Herman Defendants deny the allegations in Paragraph 70 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 as to others.

71.     Paragraph 71 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 71 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 as to others.

72.     Paragraph 72 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 72 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 as to others.

73.     Paragraph 73 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 73 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 as to others.

## COUNT IV
### (Unjust Enrichment – Against All Defendants)

74.    The Herman Defendants repeat and reallege their answers to paragraphs 1 through 73 as if set forth fully herein.

75.    Paragraph 75 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 75 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 as to others.

76.    Paragraph 76 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 76 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 as to others.

77.    Paragraph 77 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 77 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 as to others.

78.    Paragraph 78 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 78 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 as to others.

## COUNT V
### (Money Had & Received – Against All Defendants)

79.    The Herman Defendants repeat and reallege their answers to paragraphs 1 through 78 as if set forth fully herein.

80.     Paragraph 80 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 80 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 as to others.

81.     Paragraph 81 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 81 as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 as to others.

## COUNT VI
### (Negligent Misrepresentation – Against Defendants Fairlie and Herman)

82.     The Herman Defendants repeat and reallege their answers to paragraphs 1 through 80 as if set forth fully herein.

83.     Paragraph 83 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 83.

84.     Paragraph 84 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 84.

85.     Paragraph 85 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations in Paragraph 85.

86.     Paragraph 86 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Herman Defendants deny the allegations set forth in Paragraph 86.

## REQUEST FOR RELIEF

The allegations set forth in the "WHEREFORE" clause constitute SKAT's request for relief to which no response is required.  To the extent that a response is required, the Herman Defendants deny that SKAT is entitled to the relief requested, or any other relief.

## JURY DEMAND

The Herman Defendants demand a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, laches, waiver, and estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join necessary and indispensable parties.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's failure to exhaust its administrative or other legal remedies available to it.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any and all purported damages are the result of Plaintiff's conduct, including but not limited to: negligence, contributory negligence, assumption of risk, and wrongful or unauthorized acts.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because it lacks standing to assert claims on behalf of the sovereign.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the subject matter of this complaint is the subject of pending legal proceedings in another jurisdiction.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate its alleged damages.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of res judicata.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that such purported damages have or will be paid or indemnified by a collateral source.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against the Herman Defendants are barred, in whole or in part, because any purported loss, damages or injuries were caused, in whole or in part, by the negligence, assumption of risk, fault of other culpable parties and/or third parties to this action, other than the

Herman Defendants, for whose acts, omissions or breaches of legal duty the Herman Defendants are not liable.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, and any recovery by Plaintiff should be reduced by application of New York General Obligations Law § 15-108.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by collateral estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

The court lacks subject matter jurisdiction to hear this action.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by waiver and release.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The claims alleged in the Complaint are barred by the long-standing doctrine of the Revenue Rule, which prohibits one sovereign from using courts of another sovereign to enforce its revenue laws.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Herman Defendants reserve the right to add or amend these Affirmative Defenses based on information that may become known during the course of discovery.

## THE FAIRLIE INVESTMENTS LLC ROTH 401(K) PLAN'S COUNTERCLAIMS AGAINST THE CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant/Counterclaim-Plaintiff Fairlie Investments LLC Roth 401(K) Plan (the "Fairlie Plan") brings the following counterclaims against Plaintiff/Counterclaim-Defendant Skatteforvaltningen ("SKAT") based

17

on its refusal to reimburse the Fairlie Plan for the dividend-withholding tax owed pursuant to the double-taxation treaty between Denmark and the United States. [1] By bringing these counterclaims, the Fairlie Plan does not waive any arguments in support of dismissal of this action or in the collateral proceedings in Denmark.

As set forth more fully below, SKAT refuses to refund dividend-withholding tax to the Fairlie Plan despite SKAT's prior course of conduct and its own policies, practices and procedures – and in clear contravention of the U.S.-Denmark Tax Treaty. Thus, as and for its counterclaims against SKAT, the Fairlie Plan allege as follows:

## PARTIES

1.      The Fairlie Plan is a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation. The Fairlie Plan lists its address in the state of New York.

2.      At all relevant times herein, SKAT was the Danish government agency charged with the assessment and collection of Danish taxes.

## JURISDICTION AND VENUE

3.      The Court has subject-matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the civil action is between a foreign state and U.S. citizens.

---

[1]      Convention and Protocol Amending the Convention between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10 (3)(c) and 22(2)(e), May 6, 1948, Treaty Doc. No. 106-12 (effective date Jan. 1, 2001) (the "U.S.-Denmark Tax Treaty").

4. The Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 because the counterclaims form part of the same case or controversy as SKAT's claims.

5. The Court has personal jurisdiction over SKAT pursuant to 28 U.S.C. §§ 1605 and 1607 because SKAT has waived its sovereign immunity, if any, and because these counterclaims arise out of the transactions and occurrences set forth in SKAT's complaint.

6. These counterclaims are properly venued for purposes of trial in the United States District Court for the Southern District of New York because the factual allegations set forth in these counterclaims arise out of the same transactions and occurrences set forth in SKAT's complaint.

**STATEMENT OF FACTS**

**A. Pursuant to the U.S.-Denmark Tax Treaty, a U.S. pension plan that receives a dividend on shares of a Danish company is entitled to 100% of the dividend.**

7. At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

8. Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

9. At all relevant times, SKAT served the Danish government as the agency responsible for refunding dividend-withholding taxes, including refunds of dividend-withholding taxes owed to U.S. pension plans.

**B. Until 2015, SKAT paid dividend-withholding tax refund claims that included the required supporting documentation, including claims made on behalf of the Fairlie Plan.**

19

10.    SKAT created the process by which U.S. pension plans could apply for a refund of dividend-withholding taxes.

11.    Pursuant to that process, SKAT paid dividend-withholding tax claims that included the following supporting documentation (the "Supporting Documentation"):

    a.    Form 06.003, entitled "Claim to Relief from Danish Dividend Tax," which was a SKAT-issued form identifying, among other things, the U.S. pension plan claiming the refund and the amount of the refund claim;

    b.    A "tax voucher" (also known as a "credit advice") describing, among other things, the U.S. pension plan's shareholdings, the amount of the dividend received by the U.S. pension plan, and the amount of dividend tax withheld;

    c.    A statement from the IRS certifying the U.S. pension plan's tax-exempt status; and

    d.    A signed power of attorney from the U.S. pension plan's representative authorizing a designated payment agent to submit the withholding tax refund form on behalf of the claimant.

12.    SKAT routinely refunded dividend-withholding taxes that included the Supporting Documentation.  Upon information and belief, SKAT did so pursuant to its own policies and procedures and the requirements of the U.S.-Denmark Tax Treaty.

13.    In 2014 and 2015, the Fairlie Plan submitted seventeen dividend-withholding-tax refund claims to SKAT through Goal TaxBack Limited ("Goal TaxBack") in relation to the dividends net of withholding tax that the Fairlie Plan received based on its holding and ownership of stock in Danish companies on the dates necessary to be paid those dividends.

14.    West Point Derivatives Ltd ("West Point"), the Fairlie Plan's broker and custodian, provided tax vouchers for each of the Fairlie Plan's withholding-tax refund claims.

15.     For all the Fairlie Plan's withholding-tax refund claims, the Fairlie Plan relied upon West Point and reasonably believed that West Point would only create legitimate records of the Fairlie Plan's shareholding, dividend receipts, and withheld taxes.

16.     SKAT refunded dividend-withholding taxes to the Fairlie Plan for fifteen of the seventeen refund applications submitted on behalf of the Fairlie Plan.

17.     In August 2015, however, SKAT stopped paying dividend-withholding tax refund requests, even those that contained the required Supporting Documentation.

18.     At the time, two dividend-withholding tax refund claims submitted to SKAT by Goal TaxBack on behalf of the Fairlie Plan remained pending (the "Unpaid Refunds").

19.     Upon information and belief, at this time, there was no change to Denmark's tax laws, policies and treaties, including the method and manner in which applicants would receive refunds after submission of the Supporting Documentation to SKAT.

20.     Upon information and belief, SKAT did not assert any changes in requirements for the Supporting Documentation.

21.     Upon information and belief, due to mounting public and political pressure in Denmark concerning dividend arbitrage trading which led to the firing of SKAT's director general in 2016, SKAT refused to abide by the U.S.-Denmark Tax Treaty and retaliated against the Fairlie Plan and other similarly-situated U.S. pension plans by withholding payment of pending dividend-withholding tax refund claims submitted to SKAT.

**C.     SKAT wrongfully refuses to process the unpaid claims and owes the Fairlie Plan withheld dividend taxes.**

22.     Auriga Industries A/S ("Auriga"), a Danish company, announced its intention to issue dividend payments to its shareholders, with a record date of June 15, 2015 and a pay date of June 16, 2015.

23.     On June 15, 2015, which was the applicable dividend record date for Auriga, the Fairlie Plan, through its brokerage account with West Point, held and owned 29,917 shares.

24.     For the June 2015 Auriga dividend payment, Auriga paid DKK 323.00 for each share held and owned by its shareholders, including the Fairlie Plan.

25.     On information and belief, in accordance with Danish tax law, Auriga withheld and paid to SKAT 27% of the total dividend owed to the Fairlie Plan.

26.     The Fairlie Plan, through its brokerage account with West Point, received DKK 7,054,129.43, which, to its knowledge and belief and according to information provided to the Fairlie Plan, constituted the dividend payment owed to the Fairlie Plan for its holding and ownership of 29,917 shares of Auriga on June 15, 2015 net the applicable 27% dividend-withholding tax.

27.     The 27% dividend-withholding tax in relation to the Fairlie Plan's holding and ownership of 29,917 shares of Auriga on June 15, 2015 was DKK 2,609,061.57, which, as of February 3, 2020 equals approximately USD $386,527.64 (the "June Refund").[2]

28.     On information and belief, SKAT received at least the amount of the June Refund from Auriga in the form of dividend-withholding taxes in connection with Auriga's June 2015 dividend payment to the Fairlie Plan.

29.     West Point confirmed the Fairlie Plan's holding and ownership of 29,917 shares of Auriga over the dividend date with a credit advice (the "Auriga Credit Advice") that West Point provided to the Fairlie Plan.

---

[2]     This conversion is based on an exchange rate of 1.00 USD to 6.75 DKK, which, upon information and belief is the exchange rate on February 3, 2020.

30. The Auriga Credit Advice also described the Fairlie Plan's receipt of the dividend and the withholding tax suffered in relation to the Fairlie Plan's holding and ownership of 29,917 shares of Auriga.

31. Shortly after West Point issued the Auriga Credit Advice, Goal TaxBack submitted a dividend-withholding tax refund application for the June Refund on the Fairlie Plan's behalf.

32. TDC A/S ("TDC"), a Danish company, announced its intention to issue dividend payments to its shareholders, with a record date of August 11, 2015 and a pay date of August 12, 2015.

33. On August 11, 2015, which was the applicable dividend record date for TDC, the Fairlie Plan, through its brokerage account with West Point, held and owned 1,090,581 shares.

34. For the August 2015 TDC dividend payment, TDC paid DKK 1.00 for each share held and owned by its shareholders, including the Fairlie Plan.

35. On information and belief, in accordance with Danish tax law, TDC withheld and paid to SKAT 27% of the total dividend owed to the Fairlie Plan.

36. The Fairlie Plan, through its brokerage account with West Point, received DKK 796,124.13, which, to its knowledge and belief and according to information provided to the Fairlie Plan, constituted the dividend payment owed to the Fairlie Plan for its holding and ownership of 1,090,581 shares of TDC on August 11, 2015 net the applicable 27% dividend-withholding tax.

37. The 27% dividend-withholding tax in relation to the Fairlie Plan's holding and ownership of 1,090,581 shares of TDC on August 11, 2015 was DKK 294,456.87, which, as of February 3, 2020 equals approximately USD $43,623.24 (the "August Refund").

23

38.     Upon information and belief, SKAT received at least the amount of the August Refund from TDC in the form of dividend-withholding taxes in connection with TDC's August 2015 dividend payment to the Fairlie Plan.

39.     West Point confirmed the Fairlie Plan's holding and ownership of 1,090,581 shares of TDC over the dividend date with a credit advice (the "TDC Credit Advice") that West Point provided to the Fairlie Plan.

40.     The TDC Credit Advice also described the Fairlie Plan's receipt of the dividend and the withholding tax suffered in relation to the Fairlie Plan's holding and ownership of 1,090,581 shares of TDC.

41.     Shortly after West Point issued the TDC Credit Advice, Goal TaxBack submitted a dividend-withholding tax refund application for the August Refund on the Fairlie Plan's behalf.

42.     The information in the applications submitted to SKAT by Goal TaxBack in support of the Unpaid Refunds was, to the best of the Fairlie Plan's knowledge, truthful and accurate and provided sufficient information for SKAT to pay the Unpaid Refunds.

43.     Upon information and belief, there was no change to Denmark's tax laws, policies, and treaties during this time, including the method and manner in which SKAT would review and approve dividend-withholding tax refund requests.

44.     Upon information and belief, SKAT did not inform the Fairlie Plan and other similarly-situated U.S. pension plans of any changes in the method and manner in which dividend-withholding-tax refund requests would be reviewed and approved.

45.     Upon information and belief, SKAT has not made the determination that the Fairlie Plan is not entitled to the two-pending dividend-withholding refund claims submitted to SKAT by Goal TaxBack on behalf of the Fairlie Plan.

46. Nevertheless, despite SKAT's prior course of conduct and its practices, policies, and procedures, SKAT penalized the Fairlie Plan by refusing to pay the Unpaid Refunds to the Fairlie Plan.

47. Upon information and belief, SKAT acted in in contravention of the U.S.-Denmark Tax Treaty due to mounting public and political pressure in Denmark.

48. SKAT continues to knowingly possess the Unpaid Refunds and refuses to pay the Unpaid Refunds to the Fairlie Plan.

49. Upon information and belief, SKAT has not paid any dividend withholding-tax claims to anyone in accordance with the U.S.-Denmark Tax Treaty since before August 2015.

## COUNT 1

### Unjust Enrichment

50. The Fairlie Plan repeats and realleges paragraphs 1 through 48 of its counterclaims as though set forth fully herein.

51. The Fairlie Plan is entitled to the Unpaid Refunds pursuant to the U.S.-Denmark Tax Treaty.

52. SKAT knowingly possesses and refuses to pay the Unpaid Refunds in contravention of the U.S.-Denmark Tax Treaty.

53. By retaining and confiscating the Unpaid Refunds to which the Fairlie Plan is entitled, SKAT has been unjustly enriched.

54. The Fairlie Plan has suffered a loss because of SKAT's unjust enrichment.

55. SKAT is liable to account and pay to the Fairlie Plan the Unpaid Refunds, plus interest.

## COUNT II

### Promissory Estoppel

56.    The Fairlie Plan repeats and realleges paragraphs 1 through 54 of its counterclaims as though set forth fully herein.

57.    SKAT created the process by which it would receive, review, and either deny or accept applications for dividend-withholding taxes pursuant to the U.S.-Denmark Tax Treaty.

58.    Pursuant to that process, and as evidenced by SKAT's prior course of conduct, its practices, policies, and procedures – and in accordance with the U.S.-Denmark Tax Treaty – SKAT promised to pay all dividend-withholding tax refund requests that were supported by what it deemed to be sufficient Supporting Documentation.

59.    SKAT should – and, upon information and belief, did – reasonably expect its promises to induce the Fairlie Plan and other similarly-situated U.S. pension plans to (i) invest in Danish companies issuing dividends and (ii) submit withholding-tax refund claims with sufficient Supporting Documentation.

60.    Upon information and belief, SKAT did not inform the Fairlie Plan and other similarly-situated U.S. pension plans of any changes in the method and manner that all dividend-withholding tax refunds requests would be reviewed and approved.

61.    The Fairlie Plan acted with prudence and in reasonable reliance on SKAT's promise and invested in Auriga on or before June 2015 and TDC on or before August 2015 through its account with West Point.

62.    The Fairlie Plan further acted with prudence and in reasonable reliance on SKAT's promises and, with the assistance of West Point and Goal TaxBack, provided SKAT with sufficient Supporting Documentation for the Unpaid Refunds.

26

63.     SKAT should have known – and, upon information and belief, in fact knew – that the Fairlie Plan had relied on SKAT's promise.

64.     At the time of the Fairlie Plan's June Refund and August Refund claims, SKAT, upon information and belief, knew all important and material facts concerning the Fairlie Plan's refund claims, including that (i) the U.S.-Denmark Tax Treaty allowed U.S. pension plans to recover dividend-withholding tax; (ii) its own practices, policies, and procedures only required the submission of the Supporting Documentation; and (iii) based on the Supporting Documentation, the Fairlie Plan held and owned shares of Auriga and TDC

65.     on the applicable record dates, that the Fairlie Plan received dividends net withholding tax, and that the Fairlie Plan is entitled to the Unpaid Refunds.

66.     SKAT failed to fulfill its promise by failing to pay the Unpaid Refunds to the Fairlie Plan.

67.     Because of the Fairlie Plan's reliance on SKAT's promise and SKAT's failure to pay the Unpaid Refunds, it has been damaged at least in the amount of the Unpaid Refunds, plus interest.

## **JURY DEMAND**

The Fairlie Plan demands a jury trial on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, the Herman Defendants respectfully request that this Court enter judgment as follows:

A.     Dismissing the Complaint with prejudice;

B.     Enter judgment in favor of the Fairlie Plan on its counterclaims against SKAT;

Case 1:19-cv-01791-LAK Document 47 Filed 02/03/20 Page 28 of 28

C.      Award the Fairlie Plan the amount it was damaged and/or to which it is entitled, including but not limited to, the Unpaid Refund, together with pre-judgment interest, fees, costs, and expenses;

D.      Award the Herman Defendants their attorneys' fees and costs; and

E.      Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated: February 3, 2020
New York, New York

KAPLAN RICE LLP

By:  /s/Michelle A. Rice         

142 West 57th Street Suite 4A
New York, New York 10019
(212) 235-0300 (telephone)
(212) 235-0301 (facsimile)

*Attorneys for Defendants Joseph Herman and Fairlie Investments LLC Roth 401(k) Plan*