# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | MASTER DOCKET |
| CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | 18-md-2865 (LAK) |
| This document relates to: 18-cv-05053; 18-cv-09797; 18-cv-09836; 18-cv-09837; 18-cv-09838; 18-cv-09839; 18-cv-09840; 18-cv-19841; and 18-cv-10100. | |

**DEFENDANT ED&F MAN CAPITAL MARKETS LTD.'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF SKATTEFORVALTNINGEN**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3, Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F"), by and through its undersigned attorneys, Akerman LLP, hereby requests that Plaintiff SKATTEFORVALTNINGEN ("SKAT" or "You"), diligently search for and produce for inspection and copying the documents and tangible things requested in the following numbered paragraphs. Defendants are requested to produce all such documents within their possession, custody, or control at the office of Akerman LLP, 666 Fifth Avenue, 20th Floor, New York, NY 10103, within the time and in the manner provided by the Federal Rules of Civil Procedure, or within such other deadline as established by the Court.

## DEFINITIONS

1.     The definitions and rules of construction set forth in the Local Rules are incorporated herein by reference.

2.      "ED&F" refers to Third-Party Defendant ED&F Man Capital Markets Ltd., and includes any of its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

3.      "SKAT" refers to Plaintiff Skatteforvaltningen, and includes any of its agents, officers, directors, employees, representatives, servants, accountants, attorneys, and/or any other persons or entities acting for or on behalf of SKAT or under the authority or control of SKAT.

4.      "Shares" means any share of Danish securities which forms the basis of this litigation.

5.      "Dividends" means any dividends net withholding tax that were received for the ownership of Shares.

6.      "WHT" means the dividend withholding tax for which refund applications were submitted to SKAT based upon the ownership of Shares and receipt of Dividends.

7.      "Refunds" means any and all amounts paid by SKAT that resulted from the WHT applications.

8.      "Regnskab" refers to the administrative division of SKAT tasked with the processing and/or evaluation of applications for the refund of WHT related to Dividends, which was until around 2013 headed by Lisbeth Romer and whose employees included Sven Nielsen.

9.      "SIR" refers to the internal audit function of SKAT also referred to in translated documents received from SKAT as Internal Audit and Intern Revision.

10.      "Rigsrevisionen" refers to the national audit agency of the Kingdom of Denmark and an independent institution of the Danish parliament.

11.      "Permanent Secretary" refers to the most senior civil servant at the Danish Ministry of Taxation.

12.     "Danish Independent Commission" refers to the commission of inquiry on taxation, first established by the Ministry of Justice on July 3, 2017.

13.     "MDL" means the multi-district litigation consolidated in the Southern District of New York under the caption 1:18-md-02865-LAK in which this action is a constituent case.

14.     "English Action" means the related litigation in the United Kingdom with the caption *SKAT v. Solo Capital Partners LLP & Others*, [2018] EWHC (Comm), Claim No.'s CL-2018-000297; CL-2018-000404; CL-2018-000590 (Eng.).

15.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

16.     "Document" and "Documents" means any medium upon which information or intelligence can be recorded or retrieved, including, without limitation, any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes, electronic mail entries, bulletins, meetings or other communications, inter-office or intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind, including, without limitation, microfilm, photographs, charts, microfiche, videotape, recordings, voice messages, motion

pictures, mini-discs, floppy discs, CD-ROM discs, or mechanical or electronic recordings or representations of any kind (including without limitation, tapes, cassettes, discs, and records). The term "document" shall also encompass "electronically stored information," as defined herein. A draft or non-identical copy is a separate "document" within the meaning of this term.

17.     "Electronically Stored Information" shall have the fullest and most complete meaning ascribed to it under the law, and shall include sound recordings, images, emails, instant messages, text messages, voice messages, spreadsheets, PowerPoints, databases, including any meta data, and other data or data compilations stored in any medium from which information can be obtained.

18.     "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

19.     "Concerning" shall mean relating to, referring to, describing, evidencing or constituting.

20.     As used in these Requests, the terms "You," "Your," refers to SKAT, and includes any of its agents, officers, directors, employees, representatives, servants, accountants, attorneys, and/or any other persons or entities acting for or on behalf of SKAT or under the authority or control of SKAT.

21.     As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

22.     The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these Interrogatories any response or document which might otherwise be construed to be outside their scope.

## **INSTRUCTIONS**

4

1.      Electronically stored information ("ESI") as that term is used in Rule 34 of the Federal Rules of Civil Procedure should be produced as follows:

        A.      Format. ESI shall be produced as TIFF text searchable image files with metadata intact whenever possible.  Non-ESI shall be produced in PDF format.

        B.      Native files. Files not easily converted to image format, such as Excel and Access files, may be produced in native format.

        C.      E-mails and Attachments. If any email is responsive to a document request, all attachments to that email shall be deemed responsive to that request.  Likewise, if any attachment to an email is responsive to a document request, all portions of the email to which it is attached and all other attachments to that email shall be deemed responsive to that request.

        D.      Bates numbering. Each party shall assign to each page of its production of documents and ESI a Bates number that is a unique ID with a prefix that can be readily attributed to the producing party.  In the event documents are produced on a rolling basis, the parties shall use consecutive Bates numbering.

2.      Hard copy documents shall be produced as follows

        A.      PDF. All images shall be delivered as PDF files. File names should not contain spaces.

        B.      Unique IDs. Each file should have a unique file name and should be named with the Bates number assigned to it.

        C.      Database Load File/Cross-Reference Files. Records should be provided in a format compatible with the Relativity e-discovery platform.

D.     Unitizing of Records. In scanning hard copy records, distinct records should not be merged into a single record, and single records should not be split into multiple records (i.e., hard copy records should be logically unitized).

E.     Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

F.     Objective Coding Fields. The following objective coding fields should be provided: Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source/Custodian.

3.     Unless otherwise specified, the document requests set forth herein call for documents whenever generated, prepared or received.

4.     To the extent that the producing party reasonably determines that any ESI or hard copy documents that are responsive to a document request are not discoverable because they are subject to a privilege, the producing party shall produce a log treating each email and attachment withheld separately that sets forth the information required by the Federal Rules and Local Rules for privileged documents.

5.     You are required to produce all requested documents that are in your possession, custody or control, including, but not limited to, documents in the possession, custody or control of Your officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, agents, servants, and representatives, and all those acting or purporting to act on Your behalf.  Your search should include, but not be limited to, all desk files, personal files, chronological ("chron") files, personal notes, business diaries and calendars, records of meetings and telephone calls, and e-mail and documents stored in any computer memory (or retrievable by a computer).  All documents that respond, in whole or in part, to any part of any Request shall be produced in their entirety,

including all attachments and enclosures.  You are further requested to execute such consents or other documents as may be required in order to permit you to obtain copies of responsive documents from third-parties who have possession, custody or control over responsive documents and over whom you claim to have no control.

6.      In addition to producing the documents and things requested, you are required to serve upon ED&F in accordance with Federal Rule of Civil Procedure 34(b), a written response to each item or category of this Request stating that such documents and things (a) exist and are being produced, (b) do not exist, or (c) exist but are not being produced because of an objection. In the event of any objection, the reason for each such objection must be specifically stated.

7.      Notwithstanding the assertion of any objection, any document claimed to be privileged or otherwise protected from discovery that contains non-privileged material should be disclosed, with the purportedly privileged section redacted. The redacted portion should be listed on the privilege log or redaction log provided to ED&F, and should be clearly marked Redacted on each such document.

8.      The original or a duplicate of every document claimed to be privileged or otherwise protected from discovery (in whole or in part) shall be segregated and maintained for inspection by the Court or for production to ED&F if so ordered.

9.      If You do not have all of the documents responsive to any Request, please so state and identify each person whom You know or believe may have such documents. If any requested documents were, but are no longer in Your possession or subject to Your control, state what disposition was made of them.

10.      You must comply with Federal Rule 34(b) by producing the requested documents as they are kept in the usual course of business or by organizing and labeling them to correspond

with the categories in this Request. If any document responsive to this Request was maintained or kept in a file folder, binder or other storage device that was labeled (or otherwise bore any information), produce the original or a copy of such label (and such information), in a way that ED&F can determine the content of the label (or other information) on the file folder, binder or other storage device in which each such responsive document was maintained or kept.

11.     If a document was prepared in several copies, or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by any reason of subsequent notation or modification of any kind whatsoever, including, without limitation, notations on the front or back of the document, such non-identical copies must be produced.

12.     This request shall be deemed a continuing one in accordance with Rule 26(e) of the Federal Rules of Civil Procedure so as to require prompt further and supplemental production if the responding party obtains additional documents responsive to these requests between the time of the initial production and the time of the hearing or trial of this action.

## TIME PERIOD

1.     Unless otherwise stated in a Document Request (*e.g.*, by use of the phrase "ever," "without date limitations," or "at any time"), all documents requested are for the period commencing January 1, 2005 through Present (the "Time Period"), and include (1) all documents dated, prepared, or received during the Time Period, and (2) all documents that relate to, refer to, or contain any information concerning all or any portion of the Time Period, or to any event or circumstance during the Time Period, whether dated, prepared, or received, before, after, or during the Time Period.

## REQUESTS FOR PRODUCTION

1.      All documents or communications concerning early warnings submitted to the Danish Ministry of Taxation on the subject of WHT refunds from 2002 onwards.

2.      All requests for more resources to be allocated to Regnskab 2 for the purposes of processing WHT applications made by Lisbeth Romer to SKAT and the responses thereto.

3.      All internal audit or reports from 2000 onwards which show what percentage of WHT was being refunded or what percentage of WHT applications were being granted.

4.      Documents evidencing the terms of reference for Regnskab 2 in relation to the handling of WHT applications.

5.      All documents upon which the internal guidance for WHT review dated August 2015 was based.

6.      Documents evidencing the decision to assign the task of WHT application processing to Regnskab 2 in January 2009.

7.      Documents evidencing Peter Loft's instruction to SIR to conduct a review of the WHT application system in or around October 21, 2009 which led to the production of the 2010 SIR report.

8.      SIR memorandum to Peter Loft showing a negative tax position for 2006, dated in or about October 2009.

9.      Lisbeth Romer's memorandum submitted to SIR dated December 7, 2009.

10.     Any documents showing completion of action points contained in the 2010, 2013 and 2015 SIR reports.

11.     Minutes of meeting between Regnskab 2 and SIR on November 20, 2011.

12.     SIR report dated June 27, 2014 concerning progress on action points from 2013 SIR report.

13.    Minutes of meeting between SIR and directors of SKAT dated September 16, 2015.

14.    Reports on which the decision to reorganise SKAT was based.

15.    Documents showing the conclusions which led to the reorganisation of SKAT in 2018.

16.    SIR's risk analysis of the dividend area from February 2, 2012.

17.    All statements prepared by Lisbeth Rømer regarding the problems related to the refund of WHT.

18.    All notes from meetings between SIR and the dividend administration regarding the problems related to the refund of WHT.

19.    All notes from meetings between SIR and SKAT's management regarding the problems related to the refund of WHT, including the meeting between Kurt Wagner of SIR and the directors of SKAT which took place on November 9, 2015.

20.    All notes from meetings between SIR and the National Audit (Rigsrevisionen).

21.    All presentations to the Permanent Secretary regarding the problems related to the refund of WHT.

22.    All evidence that it has produced to the Danish Independent Commission, as well as any transcriptions of testimony before the Commission that it has produced (or instructed to be produced.

23.    Copies of the agreements entered into between SKAT and Danske Bank, Nordea and SEB which constituted the so-called "Bank Scheme/Programme" referred to in the SIR report dated September 24, 2015.

24.     Copies of any documents evidencing the termination of the so-called Bank Scheme/Programme in around 2015 and the explanation of the basis of the termination.

Dated:  March 23, 2020

Respectfully submitted,

*s/ Brian S. Fraser*
Brian S. Fraser
Kristen Niven
Akerman LLP
666 5th Avenue
New York, NY 10103
Tel:  (212) 259-6472
brian.fraser@akerman.com
kristen.niven@akerman.com
*Attorneys for Third-Party Defendant,*
 *ED&F Man Capital Markets Ltd.*