# Exhibit D

**UNITED STATES DISTRICT COURT**
~~NORTHERN~~SOUTHERN **DISTRICT OF** ~~ILLINOIS~~NEW YORK

| | |
|---|---|
| ~~SKAT~~SKATTEFORVALTNINGEN, | Civil Action No. ——————18-cv-10137 |
| Plaintiff, | Honorable ————————Lewis A. Kaplan |
| vs. | |
| BLUE OCEAN EQUITY LLC RETIREMENT PLAN,~~and~~ KEVIN KENNING, and TODD BERGERON, | ~~May 4, 2018~~ |
| Defendants. | March 27, 2020 |
| | **AMENDED COMPLAINT** |
| | **JURY TRIAL DEMANDED** |

~~PLAINTIFF SKATTEMINISTERIET'S COMPLAINT~~

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP ~~and Wiedner & McAuliffe, Ltd.~~, alleges against Defendants Blue Ocean Equity LLC Retirement Plan & Trust ("**Blue Ocean**") ~~and~~, Kevin Kenning ("**Kenning**"), and Todd Bergeron ("**Bergeron**") as follows:

## I.     INTRODUCTION

1. Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

---

[1]     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff changed its legal name to Skatteforvaltningen, effective July 1, 2018.

2.  This case stems from a fraudulent tax refund scheme ~~to deceive~~that deceived SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.  The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders that meet certain qualifications.

4.  The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, ~~they~~ did not earn the dividends they claimed to have earned, and ~~they~~ were not entitled to the tax refunds they claimed.  These applications were also fraudulent because the claimants falsely represented that they met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends.

5.  The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and ~~other documentation representing that the claimants~~ were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period ~~of~~ 2012 to 2015, SKAT received fraudulent requests

for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Blue Ocean, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.   On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, ~~that they~~ had earned substantial dividend income on their shares, and ~~that they~~ were entitled to refunds of tax withheld in respect of those dividends.   Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.   As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, United Kingdom, and Luxembourg.

8.   On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax, while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.   The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

3

a.      The Authorized Representatives of the claimants, such as Defendant Kenning, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and Authorized Representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these ~~arrangements~~false representations would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 105,633,585, or at least $16,950,000 (US), plus interest.

~~96554023_1~~96554023_1

## II.    JURISDICTION & VENUE

14.        Pursuant to 28 U.S.C. § 1332(a)(4), this Court[2] has subject matter jurisdiction over this matter as the Plaintiff is an agent or instrumentality of a foreign state and the Defendants are citizens of a state or of different states. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.   28 U.S.C. § 1332(a).

15.        This Court has personal jurisdiction over Defendants because the Plaintiff's claims arise from the Defendants:

         a.        transacting business in the state of Illinois;

         b.        causing tortious injury by an act or omission in the state of Illinois;

         c.        ownership of an interest in a trust administered within the state of Illinois; and/or

         d.        having citizenship of the state of Illinois.

16.        Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction.

## III.    PARTIES

17.        Plaintiff SKAT is the Danish national agency charged with assessing and collecting taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period

---

[2]    This action was originally filed in the United States District Court for the Northern District of Illinois and transferred to this Court for pretrial proceedings pursuant to Order of the United States Judicial Panel on Multidistrict Litigation dated October 3, 2018.   The jurisdictional allegations made in this Amended Complaint relate to the jurisdiction in which the original action was filed.

96554023_1 96554023_1

material to the events described in this Amended Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

18.      Defendant Blue Ocean is a pension plan, which, in its requests to SKAT for tax refunds, listed its address as 1 Pierce Place, Suite 150C, Itasca, IL 60143, USA. Each participant, or member, of the pension plan is a citizen of the stateState of Illinois.   At all times material to the allegations in this Amended Complaint,  Defendant Blue Ocean purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

19.      Defendant Kenning is a citizen of the stateState of Illinois.   At all times material to the allegations in this Amended Complaint, Defendant Kenning was one of two participants in and served as anthe Authorized  Representative for Defendant Blue Ocean.

20.      Defendant Bergeron is a citizen of the State of Illinois.   At all times material to the allegations in this Amended Complaint, Defendant Bergeron was one of two participants in Defendant Blue Ocean.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

21.      Withholding  tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority  is SKAT.

22.      Under the Danish Withholding  Tax Act section 65, Danish companies are required to withhold  27% of the dividend  distributed  as to their shares.

23.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

24.     A double taxation treaty between Denmark and the United States+3 ("the Treaty") allows for a full refund of tax withheld on dividends paid by Danish companies to qualified U.S. pension plans, which are exempt from taxation. In order to qualify for a full refund under the Treaty, the U.S. pension plans must possess tax-qualified status under section 401(a) of the Internal Revenue Code and the dividend serving as the basis of the refund request cannot arise from the carrying on of a business by the pension fund. For the reasons set forth in further detail below, the pension plan claimants, including Defendant Blue Ocean, did not satisfy these requirements and were therefore not entitled under the Treaty to the refunds they claimed from SKAT.

25.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they were qualified pension plans, had shareholdings in Danish companies, and that they had received dividends on those shareholdings net of the tax. The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

26.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

+    3    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol betweenBetween the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10, ¶ 2(c), May 6, 1948,U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12 (effective date Jan. 1, 2001).

96554023_1 96554023_1

B.    **The Fraudulent Scheme**

27.    As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.    The respective roles of each of these participants are described in further detail in paragraphs 33~~35~~ through ~~50~~63 below.

1.    **The Fraudulent Refund Claims Process**

28.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party ~~GOAL~~Goal TaxBack Limited ("~~GOAL~~**Goal**"), which submitted claims by mail or by email transmissions.

29.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

30.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

           iv.      the bank account to which SKAT should pay the claim;

        c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

31.      By filing a refund application requesting the full 27% refund and enclosing the statement from the IRS, the United States pension plan claimants falsely represented to SKAT that they were qualified U.S. pension plans entitled to the maximum refunds provided by the Treaty.

32.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

33.      It was SKAT's practice to pay claims that included the required supporting documentation.

34.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

        **2.**      **The Role of the Claimants**

35.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

9

36.        Each of the claimants, including Defendant Blue Ocean, made withholding tax refund claims through their Payment Agents, as described in paragraph ~~29~~30, above.

37.        As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims. Defendant Blue Ocean represented that Defendant Kenning was its Authorized Representative and agent who had authority to act on Defendant Blue Ocean's behalf with respect to its claims.

38.        As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that entity with respect to the claim. For example, Defendant Blue Ocean represented that non-party ~~GOAL~~Goal was its agent and had authority to act on Defendant Blue Ocean's behalf with respect to its claims.

39.        Each of the entities represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Blue Ocean made sixteen (~~16~~41) ~~separate~~ withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 105,633,585, or at least $16,950,000. These refund claims were submitted on the following dates: March 13, 2013; March 20, 2013; April 4, 2013; April 29, 2013; May 21, 2013; March 26, 2014; April 9, 2014; April 23, 2014; May 27, 2014; September 9, 2014; December 24, 2014; January ~~1~~6, 2015; April 7, 2015; April 22, 2015; April 29, 2015 and May 7, 2015.

40.        In fact, Defendant Blue Ocean did not ~~hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.~~own the shares it represented to SKAT that it owned, and had no dividend tax withheld.

41.        In addition to falsely representing that it owned the shares that were the subject of the refund claims, Defendant Blue Ocean falsely represented to SKAT in each refund claim that it

was a qualified U.S. pension plan entitled to a full refund under the Treaty. This representation was false because Defendant Blue Ocean did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly carried on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan.

42.      Far from being a qualified pension plan, Defendant Blue Ocean was a sham entity sponsored by a shell company, non-party Blue Ocean Equity LLC. Defendant Blue Ocean was created solely for the purpose of submitting false refund claims to SKAT to advance the Defendants' fraudulent scheme. Blue Ocean Equity LLC conducted no trade or business and had no employees. Further, Blue Ocean Equity LLC and Defendant Blue Ocean were both established shortly before Defendant Blue Ocean submitted its first refund claim to SKAT. As a result, Defendant Blue Ocean cannot have satisfied the requirements in section 401(a) of the Internal Revenue Code to be a qualified pension plan.

43.      Defendant Blue Ocean's representation that it was a qualified pension plan was false because it did not operate for the exclusive benefit of the sponsoring entity's employees and their beneficiaries. Blue Ocean Equity LLC did not conduct any trade or business, did not have any employees, and did not operate exclusively for the benefit of its employees. Rather, Defendant Blue Ocean was maintained principally for the benefit of its custodian, Salgado Capital, and/or other entities and individuals who were participants in the fraud. After SKAT paid the amount requested in Defendant Blue Ocean's refund claims, the plan subsequently directed or permitted the transfer of the large majority of the illicit proceeds of the scheme to these other individuals and entities.

44.      Defendant Blue Ocean's representation that it was a qualified pension plan was also false because it was not established with the intent that it be a "permanent" program. Defendant

96554023_196554023_1

Blue Ocean was created for the sole purpose of serving as a vehicle for making fraudulent refund claims to SKAT, and was only intended to operate for as long as the fraudulent scheme was undiscovered and ongoing.

45.    Defendant Blue Ocean's representation that it was a qualified pension plan was also false because it was not properly funded.  As an entity established by a shell corporation that conducted no trade or business and therefore had no employees, Defendant Blue Ocean cannot have obtained funding from a proper source and cannot have complied with the contribution rules in section 401(a) of the Internal Revenue Code. To the extent that Defendant Blue Ocean received funding from sources outside of its plan sponsor, such activity would similarly violate the funding requirements of the Internal Revenue Code and disqualify Defendant Blue Ocean from being a qualified pension plan.

46.    Defendant Blue Ocean also falsely represented to SKAT that it was entitled to a full refund under the Treaty to the extent that it engaged in any activities that were debt-financed, in breach of the Treaty's prohibition on the carrying on of leveraged investment activities by a pension fund.

47.    Based on the false representations in the refund claims ~~listed in paragraph 37,~~described in paragraphs 39 through 46, SKAT made payments totaling DKK 105,633,585, or at least $16,950,000, to Defendant Blue Ocean on the following dates: April 10, 2013; April 15, 2013; May 13, 2013; June 10, 2013; May 6, 2014; June 17, 2014; October 9, 2014; January 16, 2015; April 29, 2015; May 8, 2015; June 8, 2015; and July 1, 2015.

48.    On information and belief, Defendants Kenning and Bergeron caused Defendant Blue Ocean's fraudulent claims to be submitted to SKAT.  Defendants Kenning and Bergeron exerted control over Defendant Blue Ocean as the plan's sole participants, and used this control to

commit the fraud on SKAT. Defendant Kenning was a participant in at least three different pension plans that submitted fraudulent refund claims to SKAT, and Defendant Bergeron was a participant in at least two plans that similarly submitted fraudulent claims.

49.     At times relevant to the allegations in this Amended Complaint, Defendants Kenning and Bergeron served as officers of financial services firm Lotus Capital Management, based at 1 Pierce Place, Suite 150C, Itasca, IL 60143, the same address listed by Defendant Blue Ocean in its fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

50.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

51.     Defendant Kenning executed at the direction of, and on behalf of, Defendant Blue Ocean a "Power of Attorney" dated February 15, 2013, that granted to Payment Agent GOAL (defined in paragraph 27 above)Goal authority "to be the attorney of [Blue Ocean] and in [Blue Ocean's] name and otherwise on [Blue Ocean's] behalf and as [Blue Ocean's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [GOALGoal] shall consider requisite) for or in connection with the provision of any tax services provided to [Blue Ocean] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Blue Ocean] or through [GOALGoal] on behalf of [Blue Ocean]." Defendant Kenning described himself as the "Duly authorized signatory" and "President/Chairman" of Defendant Blue Ocean.

96554023_196554023_1

52.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Kenning and be subject to his direction and control with respect to Defendant Blue Ocean's claims to SKAT.

53.     Defendant Kenning executed the Power of Attorney with knowledge that the plan was a sham, was established by a shell entity with no business or trade or employees, was not properly funded, was not a permanent program, was not established for the exclusive benefit of its sponsor's employees, and was not entitled to a refund under the Treaty.

54.     Defendant Kenning signed Power of Attorney documents for at least two different entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Blue Ocean.

55.     In addition to his role as a plan participant in at least two different pension plans that submitted fraudulent refund claims to SKAT, Defendant Bergeron similarly signed a Power of Attorney document for at least one claimant that submitted fraudulent refund claims.

### 4.      The Role of the Payment Agents

56.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

57.     By means of the Power of Attorney described in paragraphs 40 50-41 51 above, each claimant and Authorized Representative authorized its their respective Payment Agent to act on their behalf of and subject to their control of the claimant with respect to submitting the withholding tax refund claims.

58.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above. 30 above. The documentation attached to the cover letter falsely represented to SKAT that Defendant Blue Ocean was a qualified pension plan that satisfied the criteria under the Treaty and was therefore entitled to a full 27% refund.

59.       In connection with each Claim Form, the Payment Agent:

a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's authorized representative; and

d.      requested that SKAT pay the claim to its bank account.

60.       As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. Upon information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.       The Role of the Broker-Custodians

61.       Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a broker-custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

62.       By way of example, with respect to Defendant Blue Ocean, one example of a credit advice:

a.      is made out by Salgado Capital;

b.      is signed by Andrew Moray Stuart, Director, dated March 7, 2013, and bears the letterhead of Salgado Capital;

c.      purports to certify Defendant Blue Ocean's ownership of 2,300,000 shares in Novozymes A/S (a genuine company, and whose shares were (and are) publicly traded on the Copenhagen Stock Exchange); and

15

d.       states an International Securities Identification Number ("**ISIN**") for Novozymes A/S shares as "DK0010272129."   An ISIN is a twelve character alpha-numerical code that uniquely identifies securities for trading and settlement purposes.

63.       Defendant Blue Ocean, which was not a qualified U.S. pension plan for purposes of the Treaty, never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

~~50.       In the course of its investigation, in or around August 2015, SKAT concluded that many of the withholding tax refund claims that had been made in the preceding years, including claims by Defendant Blue Ocean, were fraudulent and SKAT suspended further payments.~~

## CAUSES OF ACTION

### COUNT I

#### (Fraud – Against ~~Both~~All Defendants)

64.       SKAT repeats and realleges paragraphs 1 through ~~50~~63 above as if fully set forth herein.

65.       Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs ~~29 30, 37, and 47~~30-32, 39 through ~~49~~46, and 61-63 to support claims for withholding tax refund payments.

66.       Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

67.       In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 105,633,585, or at least $16,950,000 (US), and thereby suffered damages of that amount, plus interest.

## COUNT II

### (Aiding and Abetting Fraud – Against ~~Both~~All Defendants)

68.    SKAT repeats and realleges paragraphs 1 through ~~50~~67 above as if fully set forth herein.

69.    As alleged above, a massive fraud was perpetrated on SKAT by the claimants, including Defendant Blue Ocean, the Authorized Representatives, including the Defendant Kenning, the Payment Agents, and/or other non-parties.

70.    As alleged in paragraphs ~~26~~27 through ~~49~~63 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

71.    The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

72.    The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs ~~26~~27 through ~~49~~63 above.

73.    As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

## COUNT III

### (Unjust Enrichment – Against ~~Both~~All Defendants)

74.    SKAT repeats and realleges paragraphs 1 through ~~50~~73 above as if fully set forth herein.

75.    This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

76.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

17

77.        SKAT suffered a loss because of the Defendants' unjust enrichment.

78.        The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT IV

### (Money Had & Received – Against ~~Both~~All Defendants)

79.        SKAT repeats and realleges paragraphs 1 through ~~50~~78 above as if fully set forth herein.

80.        As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

81.        SKAT intended for these payments to be made only in connection with legitimate claims for tax refunds pursuant to the Danish withholding tax system described above.

82.        It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT V

### (Negligent Misrepresentation – Against ~~Both~~All Defendants)

83.        SKAT repeats and realleges paragraphs 1 through ~~50~~82 above as if fully set forth herein.

84.        ~~Defendants had a duty, as a result of their submission of~~In submitting claims for withholding tax refund payments, Defendants had a duty to SKAT to provide claims information that was truthful, accurate, and complete ~~information to SKAT~~ in all material respects ~~concerning their applications for such payments~~.

18

85.    Defendants made material misstatements described in paragraphs ~~29 30, 37, and~~ ~~47~~30-32, 39 through ~~49~~46, and 61-63 above in connection with ~~every~~the withholding tax refund ~~claim~~claims they submitted ~~on behalf of Defendant Blue Ocean~~or caused to be submitted to SKAT. Defendants knew, or should have known, that these statements were inaccurate.

86.    Defendants~~'~~ intended their material misstatements ~~were intended~~ to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.

87.     SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of DKK 105,633,585, or at least $16,950,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    ~~F~~ For Counts I, II and V, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.    For Counts III and IV, for unjust enrichment and money had and received, the damages sustained or the amounts by which the Defendants were unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

2.    ~~For Counts I, II and V, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.~~

3.    For Counts I and II, punitive damages.

19

4.      The costs of this action.

5.      All other and further relief that is just and proper.

96554023_196554023_1

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

_s/ Marc A. Weinstein_

William R. Maguire
*(pro hac vice motion to be filed)*
Marc A. Weinstein
*(pro hac vice motion to be filed)*
Sarah L. Cave
*(pro hac vice motion to be filed)*
John T. McGoey
*(pro hac vice motion to be filed)*
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.comMarc.weinstein@hugheshubbard.comSarah.cave@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark (SKAT)

Richard J. Leamy, Jr.
Rachel S. Nevarez
Kelly N. Flavin
Wiedner & McAuliffe, Ltd.
1 N. Franklin, Suite 1900
Chicago, Illinois 60606
(312) 855-1105 (t)
(312) 855-1792
Chicago, Illinois
60606rjleamy@wmlaw.comrsnevarez@wmlaw.com

21

knflavin@wmlaw.com

Counsel for Plaintiff Customs and Tax
Administration of the Kingdom of Denmark
(SKAT)

22

Document comparison by Workshare 9.5 on Friday, March 27, 2020 6:25:00 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://US-DMS/US/96554015/1 |
| Description | #96554015v1<US> - 1 NEW Draft Blue Ocean - IL Complaint - 83876285_3 |
| Document 2 ID | interwovenSite://US-DMS/US/96554016/1 |
| Description | #96554016v1<US> - 2 Blue Ocean 96444126_1 |
| Rendering set | HHR STRIKETHROUGH |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 133 |
| Deletions | 101 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 234 |