**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to 1:18-CV-05053-LAK.

MASTER DOCKET

Case No. 1:18-MD-02865-LAK

**THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN'S AND
SHELDON GOLDSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS COUNTERCLAIM</u>**

GUSRAE KAPLAN NUSBAUM PLLC
Martin H. Kaplan
Kari Parks
120 Wall Street
New York, New York 10005
(212) 269-1400
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Third-Party Counterclaim
Defendants The Goldstein Law Group PC
401(K) Profit Sharing Plan and
Sheldon Goldstein*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**                                                                    **I**

**TABLE OF AUTHORITIES**                                                              **III**

**PRELIMINARY STATEMENT**                                                         **1**

**BACKGROUND**                                                                          **2**

I.    Procedural Summary                                                                      2

II.   ED&F Man's September 2019 Admissions in the English Action Caused the
Goldstein Parties to Sue the Brokerage for Defrauding Its Very Own Pension Plan
Clients                                                                                              5

III.    ED&F Man's English Admissions Contradict Its American Allegations          7

IV.    SKAT Alleges that ED&F Man Engaged in "Systemic" Misconduct               8

V.    The Custody Agreement Only Allows ED&F Man to Claim "Indemnification" from
the Goldstein Plan if ED&F Man's Losses Do Not "Aris[e] Out of [Its Own] Willful
Default, Fraud, or Negligence"                                                          10

**ARGUMENT**                                                                              **11**

**I.    E**D&F Man's English and American Pleadings Cannot Both Be True          12

II.   Indemnify What?                                                                         14
   A.   Black-Letter Law Prohibits ED&F Man From Being Indemnified for Its Own
   Wrongful Acts                                                                             15
   B.   ED&F Man States No Contractual Indemnification Claim                      17

1.    Because SKAT Alleges Wide-Ranging Tortious Conduct Against ED&F Man, the Goldstein Plan Need Not Indemnify Any English Judgment    19

2.    The Contract Does Not Require the Goldstein Plan to "Indemnify" ED&F Man for Losing This Lawsuit to the Goldstein Parties    20

3.    The Goldstein Parties Need Not Indemnify ED&F Man for Hypothetical Adverse Judgments in Unidentified, Theoretical Proceedings    22

C.    ED&F Man States No Implied Indemnification Claim Because It Faces Direct Liability for Its Own Wrongful Acts, Not Vicarious Liability for the Goldstein Parties' Conduct    23

III.    ED&F Man Pleads No Allegations Against Sheldon Goldstein, Who is Not a Party to the Custody Agreement    26

**CONCLUSION**    **27**

# TABLE OF AUTHORITIES

## CASES

Ades v. Deloitte & Touche, Nos. 90 Civ. 4959(RWS), 90 Civ. 5056(RWS), 1993 WL 362364 (S.D.N.Y. Sept. 17, 1993) (Sweet, J.)----------------------------------------------------------11

Amusement Industry v. Stern, 693 F. Supp. 2d 319 (S.D.N.Y. 2010) (Kaplan, J.) -16, 23, 25

Anderson v. Greyhound Lines, Inc., No. 06 Civ. 13371 GBD, 2011 WL 3480945 (S.D.N.Y. Aug. 3, 2011) (Daniels, J.) ------------------------------------------------------------------------ 14, 22

Ashcroft v. Iqbal, 556 U.S. 662 (2009) -------------------------------------------------------------11

Ballard v. Parkstone Energy, LLC, 664 F. Supp. 2d 325 (S.D.N.Y. 2009) (Sweet, J.) -------18

Barbagallo v. Marcum LLP, No. 11-CV-1358, 2012 WL 1664238 (S.D.N.Y. May 11, 2012) (Weinstein, J.)------------------------------------------------------------------------------------------------24

Bd. of Managers of 125 N. 10th Condo. v. 125North10, LLC, 150 A.D.3d 1063 (2d Dep't 2017) ----------------------------------------------------------------------------------------------------- 23, 25

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)----------------------------------------------------11

Bunker v. Bunker, 80 A.D.2d 817 (1st Dep't 1981)------------------------------------------------14

Canada Steamship Lines Ltd v. The King [1952] AC 192------------------------------------------18

Capita (Banstead 2011) Ltd v. RFIB Grp. Ltd [2015] EWCA Civ 1310 ---------- 15, 16, 17, 18

CBS Corp. v. Eaton Corp., No. 07 Civ. 11344 (LBS), 2010 WL 1375169 (S.D.N.Y. Mar. 30, 2010) (Sand, J.)---------------------------------------------------------------------------------------------15

Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y., 808 F. Supp. 213 (2d Cir. 1992)--26

Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158 (S.D.N.Y. Apr. 16, 2004) (Cote, J.)-----------------------------------------------------------------12

D'Ambrosio v. City of New York, 55 N.Y.2d 454 (1982) --------------------------------------------14

DeBlasio v. Merrill Lynch & Co, Inc., No. 07 Civ. 318(RJS), 2009 WL 2242605 (S.D.N.Y. 2009) (Sullivan, J.) -----------------------------------------------------------------------------------------11

Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.), 747 F. Supp. 922 (S.D.N.Y. 1990) (Stewart, J.) ------------------------------------------------------------------------------------------------16

Dietrich v. Bauer, 76 F. Supp. 2d 312 (S.D.N.Y. 1999) (Sweet, J.)-------------------------------26

Fisk v. Letterman, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (Marrero, J.) --------------------------12

Gabriel Capital, L.P. v. Natwest Finance, Inc., 137 F. Supp. 2d 251 (S.D.N.Y. 2000)
(Scheindlin, J.) ------------------------------------------------------------------16

General Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. AON
Reinsurance Agency, Inc., 860 F. Supp. 983 (S.D.N.Y. 1994) (Conner, J.) -----------------24

Glaser v. M. Fortunoff of Westbury Corp., 71 N.Y. 2d 643 (1988) ----------------------------14

Globus v. Law Research Serv, Inc., 287 F. Supp. 188 (S.D.N.Y. 1968) (Mansfiled, J.), aff'd
in pertinent part, 418 F.2d 1276 (2d Cir. 1969) ------------------------------------------15

Handelsbanken v. Dandridge [2002] EWCA Civ 577------------------------------------------20

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) --------------------------------------------------11

Hooper Assoc. v. AGS Computers, 74 N.Y.2d 487 (1989) ---------------------------------18

IIG Capital LLC v. Van Der Mew & Anr [2008] EWCA Civ 542 --------------------------------15

In re Lehman Bros. Holdings Inc., 530 B.R. 601 (Bankr. S.D.N.Y. 2015) (Chapman, B.J.) 22

In re MF Global Inc., 496 B.R. 315 (S.D.N.Y. 2013) (Marrero, J.)-----------------------------17

In re Polling Transp. Corp., 784 F. Supp. 1045 (S.D.N.Y. 1992) (Sweet, J.)-------------------25

In re Richartz, Fliss, Clark & Pope, Inc., Bankr. No. 08-13919 (MG), 2010 WL 4502038
(S.D.N.Y. Bankr. Nov. 1, 2010) (Glenn, B.J.) -------------------------------------------- 11, 13

Knight v. H.E. Yerkes and Assocs., Inc., 675 F. Supp. 139 (S.D.N.Y. 1987) (Leisure, J.) --24

Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991) ---------------------------------11

Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458 (2d Cir. 2010) -18

Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortgage Funding, Inc.,  916 F.3d 116
(2d Cir. 2019)---------------------------------------------------------------------------20

Mas v. Two Bridges Assocs. By Nat'l Kinney Corp., 75 N.Y.2d 680 (1990) ------------------23

McDermott v. City of New York, 50 N.Y. 2d 211 (1980) -------------------------------------23

Monaghan v. SZS 33 Assoc. LP, 73 F.3d 1276 (2d Cir.1996) -------------------------------23

Peoples' Democratic Rep. of Yemen v. Goodpasture, Inc., 782 F.2d 346 (2d Cir. 1986) --14

Petroleo Brasileiro S.A. v. E.N.E. Kos 1 Ltd, [2012] UKSC 17----------------------------- 17, 20

Rock v. Reed-Prentice Div. of Package Mach. Co., 39 N.Y.2d 34 (1976)----------------------24

Rosado v. Proctor & Schwartz, 66 N.Y.2d 21 (1985)----------------------------------------15

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007) -----------------------------------------------11

Smith v. South Wales Switchgear [1968] 1 All ER 18 ---------------------------------------18

iv

Smith v. U.M.B. Chrysler (Scotland) Ltd [1978] WLR 165 ----------------------------------- 17, 18

The White Rose [1969] 1 WLR 1098 --------------------------------------------------------------------20

Tokio Marine and Fire Ins. Co., Ltd. v. Grodin, 05 Civ. 9153 (DLC), 2006 WL 3054321

   (S.D.N.Y. Oct. 27, 2006) (Cote, J.) --------------------------------------------------------------------14

Trs. Of Columbia Univ. v. Mitchell/Giurgola Assocs., 109 A.D.2d 449 (1st Dep't 1985) 23

U.S. Bank Nat. Ass'n v. Commonwealth Land Title Ins. Co., No. 13 Civ. 7626 NRB, 2015

   WL 1291151 (S.D.N.Y. Mar. 23, 2015) (Buchwald, J.) ------------------------------------- 23, 24

United States v. Persico, 832 F. 705 (2d Cir. 1987) ---------------------------------------------------26

Waite v. Paccar Financial PLC [2012] EWCA Civ. 901 -------------------------------------------21

Walters v. Whessoe Ltd and Others [1968] 1 WLR 1028 ----------------------------------------18

<u>RULES</u>

Fed. R. Evid. 801(d)(2)(C) -------------------------------------------------------------------------------------12

<u>TREATISES</u>

Sir Kim Lewison, The Interpretation of Contracts (2d supplement 12.06) ------------------15

Defendants–Third-Party Plaintiffs–Third-Party Counterclaim Defendants The Goldstein Law Group 401(K) Profit Sharing Plan and Sheldon Goldstein (together, the "**Goldstein Parties**") respectfully submit this memorandum of law in support of their Motion to Dismiss the counterclaim of Third-Party Defendant–Third-Party Counterclaim Plaintiff ED&F Man Capital Markets, Ltd ("**ED&F Man**" or the "**Brokerage**").

## PRELIMINARY STATEMENT

Plaintiff Skatteforvaltningen ("**SKAT**") and the Goldstein Parties have filed lawsuits against ED&F Man in England and in this American multi-district litigation ("**MDL**"), respectively, alleging that ED&F Man tortuously caused SKAT to pay out millions of dollars in meritless tax "refunds."

Because the Goldstein Parties had the temerity to sue ED&F Man—which solicited, arranged, financed, and executed all of the Goldstein Plan's relevant securities transactions—ED&F Man has counterclaimed for "Indemnification," arguing that the Goldstein Parties must pay if ED&F Man loses any litigation related to the Goldstein Plan's Danish dividend trading (the "**Counterclaim**"). The only extant proceedings that ED&F Man's Counterclaim identifies are the English Action—where the Goldstein Plan's Danish trading totals less than 2% of the wrongdoing alleged by SKAT—and the Goldstein Parties' own lawsuit against ED&F Man.

In other words, ED&F Man claims that if it loses this lawsuit to the Goldstein Parties, the Goldstein Parties must pay ED&F Man any damages that this Court orders ED&F Man to pay to the Goldstein Parties. Black-letter law prohibits this absurd position, barring parties from seeking indemnification of their own wrongful acts.

Absurdity aside, ED&F Man's Counterclaim also is prohibited by the very contract it purportedly seeks to enforce against the Goldstein Parties. The Custody Agreement—to which third-party counterclaim defendant Sheldon Goldstein is **not** a party—explicitly provides that the Goldstein Plan need not indemnify ED&F Man for any loss arising out of the Brokerage's own "willful default, fraud, or negligence." In fact, the Custody Agreement expressly contemplates that the Goldstein Plan may sue the Brokerage for exactly the misconduct alleged by both SKAT and the Goldstein Parties.

This Court should deny ED&F Man's Counterclaim with prejudice.

## BACKGROUND

### I.     Procedural Summary

SKAT has filed hundreds of lawsuits around the world alleging that defendants created false paper trails to obtain dividend tax refunds from the Danish government for dividends they never received and taxes that they never paid ("**Danish Arbitrage Transactions**"). Defendants The Goldstein Law Group PC 401(K) Profit Sharing Plan's and Sheldon Goldstein's Amended Answer, Affirmative Defenses, and Counterclaims Against Skatteforvaltningen and Amended Third-Party Complaint Against ED&F Man Capital Markets, Ltd and John Does 1–10, Dkt. 219 ¶¶ 94, 97, 18-md-2865 (Nov. 5, 2019) ("**ATPC**").

Here in the Southern District of New York, SKAT has sued the Goldstein Parties to claw back eight tax refunds that SKAT claims were baseless. <u>See generally</u> Complaint, Dkt. 1 ¶¶ 50–80, 18-cv-5053 (June 6, 2018) (pleading fraud, aiding and abetting fraud,

payment by mistake, unjust enrichment, money had and received, and negligent misrepresentation). SKAT has not sued the Goldstein Parties in any other jurisdiction.

The Goldstein Parties have never attempted to wrong SKAT and were unaware of any fraudulent scheme at all until SKAT sued them. ATPC ¶¶ 100, 230. While the majority of pension plan defendants in this MDL were founded just months before engaging in their first Danish Arbitrage Transactions, the Goldstein Plan is a bona fide pension plan founded in 1999: 15 years before the Plan's first Danish Arbitrage Transaction. See generally ATPC ¶¶ 101–04, 200–09.

All of the Goldstein Plan's Danish Arbitrage Transactions were created, structured, solicited, and executed by third-party defendant ED&F Man, a London-based broker–dealer that, at the time it solicited the Goldstein Plan to open a brokerage account, purported to specialize in cross-border securities transactions for American clients. Id. ¶¶ 230–59. The Danish Arbitrage Transactions were the brainchild of ED&F Man traders who joined the Brokerage from MF Global's London desk as MF Global went bankrupt. Id.

While SKAT has not sued ED&F Man in the United States, it has sued the Brokerage in England (the "**English Action**"). See generally Declaration of Kari Parks ("**Parks Decl.**") Exhibit 1, Amended Particulars of Claim, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Mar. 13, 2019) (the **"Amended English Complaint"** or "**AEC**"). SKAT alleges the Brokerage stole millions in a "unified scheme" that used American pension plan clients as fronts for ED&F Man's own undisclosed self-dealing. See generally Parks Decl. Exhibit 2,

Claimant's Further Particulars Regarding the Validity of WHT Refund Applications, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Feb. 28, 2020) (the "**Further Particulars**"); Parks Decl. Exhibit 3, Re-Amended Schedule 5T, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Feb. 28, 2020) ("**Schedule 5T**"). SKAT emphasizes that ED&F Man, not the pension plan clients, caused SKAT's harm. Id. ¶18(e).

In this American litigation, ED&F Man counterclaims for indemnification against the Goldstein Parties, alleging that:

> [I]n the event that judgment is entered against [ED&F Man] in any action or proceeding, either in this jurisdiction, or in the English Action, or in any other proceedings based upon the tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions, ED&F Man is entitled to complete indemnification by the Plans [sic] pursuant to the [Custody] Agreement, including for all costs incurred, as ED&F Man fully satisfied its obligations therein.

Parks Decl. Exhibit 4, Third-Party Defendant EDF& Man Capital Markets Limited's Answer to Amended Third-Party Complaint (the "**Counterclaim**" or "**Countercl.**") ¶ 367, Dkt. 280, 18-md-2865 (Mar. 2, 2020). ED&F Man's Counterclaim does not identify what those "other proceedings" might be. See generally Countercl.

## II.   ED&F Man's September 2019 Admissions in the English Action Caused the Goldstein Parties to Sue the Brokerage for Defrauding Its Very Own Pension Plan Clients

From 2012 to 2015, ED&F Man arranged over $314 million in Danish Arbitrage Transactions that gave rise to at least 30 separate cases filed by SKAT in this MDL. ATPC ¶¶ 256–58. One of ED&F Man's crucial services was the preparation and issuance of "**Tax Vouchers**" certifying its clients' (a) ownership of the Danish Transactions' securities on the dividends' record dates, (b) receipt of the dividends net of withholding, and (c) "suffering" of withheld taxes. ATPC ¶¶ 249–55. The Goldstein Plan was just one of those clients.

In 2014 and 2015, ED&F Man created, structured, financed, and facilitated nine Danish Arbitrage Transactions for the Goldstein Plan (the "**Goldstein Transactions**"). ATPC ¶¶ 162, 180. At all times, ED&F Man told the Goldstein Plan that all of the activity it conducted on the Plan's supposed behalf was legitimate. See, e.g., ATPC ¶¶ 246–47 260–62, 268. In its initial December 2018 answer in the English Action, ED&F Man pleaded that it had followed the exact same, lawful processes for all of its clients' Danish Arbitrage Transactions. Schedule 5T ¶ 5(b). Then-European CEO Steven Hawksworth personally affirmed the truth of ED&F Man's original English answer. Schedule 5T ¶ 19(d).

But in September 2019, ED&F Man admitted to the English Court—without any notice whatsoever to the Goldstein Plan or its other clients sued by SKAT in this MDL— that it had created and issued at least 80 false Tax Vouchers that wrongfully certified its clients' receipt of Danish dividends and "suffering" of Danish dividend taxes (the "**Disavowed Vouchers**"). ATPC Exhibit A, Amended Defence of ED&F Man Capital

Markets Ltd ¶ 4.2, Annex E, <u>SKAT v. ED&F Man Capital Markets Ltd et al.</u>, Claim Nos. CL-2018-000297; CL-2018-000404; CL-2018-000590, (the "**Amended English Answer**" or "**AEA**").

ED&F Man admits that its Disavowed Vouchers resulted in SKAT overpaying more than $27 million[1] in "refunds" of Danish dividend taxes that had never been withheld (though despite many inquiries from the Goldstein Parties, ED&F Man has never explained how, exactly, that could have happened). <u>See id.</u> ¶ 4.2; <u>id.</u> Annex E. Four of those Disavowed Vouchers resulted in SKAT "refunding" over $750,000[2] to the Goldstein Plan for divided withholding taxes that the Plan was shocked to learn it had never paid. <u>See id.</u> Annex E. ED&F Man Managing Director Christopher John Robert Smith personally affirmed the truth of ED&F Man's Amended English Answer. <u>Id.</u> at 27.

The Goldstein Parties' subsequent investigation revealed that ED&F Man created and issued fraudulent Tax Vouchers to profit from the Goldstein Plan's Danish Arbitrage Transactions. <u>See generally</u> ATPC ¶¶ 130–46. In early 2019, ED&F Man closed the department that had created, solicited, structured, financed, and arranged all of the Goldstein Plan's Danish Arbitrage Transactions, fired each and every person who worked in that department, and forced its European CEO, Mr. Hawksworth—who had not only affirmed ED&F Man's initial English answer, but also personally signed documents relating to all four of the Goldstein Plan's Disavowed Vouchers—to "resign"

---

[1] This amount represents converting DKK 183,902,400 to U.S. Dollars on March 30, 2020, using a conversion rate of 1 U.S. Dollar to 6.77 Danish Kroner.
[2] This amount represents converting DKK 5,107,050 to U.S. Dollars on March 30, 2020, using a conversion rate of 1 U.S. Dollar to 6.77 Danish Kroner.

just two weeks before it filed the Amended English Answer and admitted that dozens of the Tax Vouchers are baseless. <u>Id.</u> ¶ 145.

### III.    ED&F Man's English Admissions Contradict Its American Allegations

In its Amended English Answer, ED&F Man pleads that between 2012 and 2015, it created 420 Tax Vouchers to certify 36 pension plan clients' tax refund applications to SKAT. See AEA ¶ 6.2. ED&F Man alleges that throughout this four-year period, it followed the same procedures for all 420 Tax Vouchers and their associated Danish Arbitrage Transactions. <u>See, e.g.</u>, <u>id.</u> ¶¶ 2.2, 10.1-11, 27.3.

But now, just six months later, ED&F Man's Counterclaim now alleges that the Goldstein Plan—which did not engage in any Danish Arbitrage Transactions until 2014— "approached" ED&F Man with the trading concept and "originated the trading structures used by ED&F Man in the Danish [Arbitrage] Transactions." Countercl. ¶¶ 354, 357, 358; <u>see also</u> <u>id.</u> ¶¶ 348–64, 367. ED&F Man's single counterclaim invokes the parties' Custody Agreement and rests on the Plan's supposed "originat[ion]" of the Goldstein Transactions' structure to justify the indemnity. <u>See generally</u> <u>id.</u> ¶¶ 342–67.

## IV.    SKAT Alleges that ED&F Man Engaged in "Systemic" Misconduct

In the English Action, SKAT has sued ED&F Man in tort, arguing that ED&F Man owed SKAT duties to ensure the accuracy of the Tax Vouchers that it created to certify its clients' ownership of Danish securities, receipt of Danish dividends, and "suffering" of Danish taxes withheld from those dividend payments. See generally AEC.

While SKAT initially characterized ED&F Man as a "non-fraud defendant," AEC ¶¶ 2(c), 3(j), 4(b), SKAT has supplemented its original complaint against ED&F Man with more particularized allegations of unjust enrichment and negligent misrepresentation. See generally Further Particulars; Schedule 5T. SKAT's February 2020 allegations stress that ED&F Man wrongfully represented its pension plan clients' beneficial ownership of Danish securities. See, e.g., Schedule 5T ¶¶ 3–8, 18.

SKAT emphasizes that ED&F Man's fundamental securities brokerage business demonstrates both the duty of care that it owed SKAT and ED&F Man's many breaches thereof:

- "ED&F Man failed to exercise any care and skill. The scale of ED&F Man's admitted misstatements is such that it is a case of *res ipsa loquitur*. If ED&F Man had maintained the basic systems and control that are the standard practice of a securities custodian, it would not have [issued the dozens of false Tax Vouchers];"
- "[A]s an experienced and sophisticated market participant, ED&F Man ought to have known that the chain of transactions comprised in the ED&F Man Scheme did not vest beneficial ownership in the [pension plan clients];"
- ED&F Man implemented the Danish Arbitrage Transactions "with a careless disregard for basic systems and controls, proper accounting and / or proper record keeping. Such carelessness was systemic within ED&F Man;"
- "ED&F Man's apparent inability to explain the causes of the admitted [Tax Voucher] errors without some six months' work by external consultants implies a systemic failure of basic systems and

controls. It implies a failure by ED&F Man to perform its most basic duties as a custodian."

Id. ¶¶ 19(a), (b), (c), (c)(iii).

Finally, while SKAT's February 2020 pleadings note some of the Goldstein Parties' allegations against ED&F Man, SKAT's lawsuit against ED&F Man encompasses a far wider course of misconduct. See generally AEC; Further Particulars; Schedule 5T; accord Schedule 5T ¶18(c) (noting that "all or a substantial majority" of Tax Vouchers that ED&F Man created for certain other pension plans were baseless). Indeed, SKAT pleads that ED&F Man issued "Tax Vouchers[] in respect of many different [pension plans. . . . ] It is inherently probable that the single identical scheme which applied to [at least 36 different pension plans] was devised by ED&F Man, the entity common to all of the applications." Schedule 5T ¶ 5(b). SKAT's claims against the Goldstein Parties total less than 2% of the $86 million[3] that ED&F Man caused SKAT to "refund." See Compl. ¶ 13; Schedule 5T ¶ 8.

---

[3] This amount represents converting DKK 582,830,719.91 to U.S. Dollars on March 30, 2020, using a conversion rate of 1 U.S. Dollar to 6.77 Danish Kroner.

**V.  The Custody Agreement Only Allows ED&F Man to Claim "Indemnification" from the Goldstein Plan if ED&F Man's Losses Do Not "Aris[e] Out of [Its Own] Willful Default, Fraud, or Negligence"**

ED&F Man pleads that the Custody Agreement gives it the right to bring its single counterclaim, for "Indemnification," against the Goldstein Parties. <u>See generally</u> Countercl. ¶¶ 342–67. While Mr. Goldstein signed the Custody Agreement on behalf of the Goldstein Plan, he, himself, is not a party to the contract. <u>See</u> Custody Agreement at 1, 19.

ED&F Man correctly alleges that the Custody Agreement memorializes the Goldstein Plan's promise to indemnify ED&F Man against liabilities that ED&F Man incurs "in connection with the [Goldstein Plan's] Client Property, this [Custody] Agreement or other performance of [ED&F Man's] obligations under this [Custody Agreement]." <u>See</u> Countercl. ¶¶ 365, 366; Custody Agreement ¶¶ 22(a), 16(a).

But ED&F Man neglected to plead the rest of the indemnity clause:

[The Goldstein Plan's indemnity of ED&F Man] **shall not extend to any liability, loss or cost arising out of the willful default, fraud or negligence of [ED&F Man] or any Sub-Custodian appointed by [ED&F Man] under this [Custody] Agreement.**

Custody Agreement § 16(b) (emphasis added).

Moreover, the Custody Agreement expressly contemplates that the Goldstein Plan may sue ED&F Man for "[ED&F Man's] own "breach of duty," "willful default, fraud, or negligence" in providing Custody Agreement services. <u>Id.</u> § 13(a). English law governs the Custody Agreement. <u>Id.</u> § 22(a).

**ARGUMENT**

To survive a Rule 12(b)(6) motion to dismiss, a complaint's allegations must be more than just "speculative." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While the Court must accept the complaint's factual allegations as true and draw reasonable inferences in the plaintiff's favor, the plaintiff must allege enough facts to state a claim that is plausible on its face. Id. at 570; accord Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009)).

But the Court may reject allegations that are contradicted by documents, including public documents filed in other court proceedings. Roth v. Jennings, 489 F.3d 499, 510–11 (2d Cir. 2007) (documentary evidence trumps contradictory pleadings); Ades v. Deloitte & Touche, Nos. 90 Civ. 4959(RWS), 90 Civ. 5056(RWS), 1993 WL 362364, at *8 (S.D.N.Y. Sept. 17, 1993) (Sweet, J.) (citing Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)) (Second Circuit courts reviewing motions to dismiss may consider any documents attached to a complaint or any statements or documents incorporated by reference and make take notice of public records, "for no serious question as to the authenticity of documents required by law to be filed [publicly] can exist.").

The Court also may reject pleadings that are contradicted by a party's own allegations. DeBlasio v. Merrill Lynch & Co, Inc., No. 07 Civ. 318(RJS), 2009 WL 2242605, at *26 (S.D.N.Y. 2009) (Sullivan, J.) (citation omitted). "[T]he [C]ourt is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true." In re Richartz, Fliss, Clark & Pope, Inc., Bankr. No. 08-13919 (MG), 2010 WL 4502038, at *3 (S.D.N.Y. Bankr. Nov. 1, 2010) (Glenn, B.J.).

# I. ED&F Man's English and American Pleadings Cannot Both Be True

ED&F Man's unverified Counterclaim, which flatly contradicts its sworn pleadings in the English Action, warrants no weight at all. Accord, e.g., Fisk v. Letterman, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (Marrero, J.) (dismissing *pro se* litigant's complaint, which was contradicted by the amended complaint's annexed exhibits); Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158, at *7 (S.D.N.Y. Apr. 16, 2004) (Cote, J.) (dismissing claim where "the facts contained in [the plaintiff's] own pleading contradict any naked assertion that [the defendant's] statements about him were false."); cf. Fed. R. Evid. 801(d)(2)(C) (an opposing party's statement is not hearsay).

ED&F Man's Counterclaim begins and ends with its allegation that the Plan's Authorized Agent "approached" ED&F Man and "originated the trading structures used by ED&F Man in the [Goldstein] Transactions," which occurred in 2014 and 2015. Countercl. ¶¶ 92, 354, 357, 358; see also, e.g., id. ¶¶ 348–64, 367.

But in the English Action, ED&F Man consistently has pleaded that it used the exact same securities trading structures for all 420 of its Tax Vouchers and concomitant Danish Arbitrage Transactions, and that it began facilitating those Transactions in 2012 — two years before the Goldstein Plan ever engaged in any Danish Arbitrage Transaction. See Amended English Answer ¶¶ 10–11, 27.3, 27.5; accord Schedule 5T ¶ 5(b) ("Save for the [Disavowed Vouchers], ED&F Man Alleges that the Paragraph 10 Transactions occurred in respect of each of the Tax Vouchers it issued.").

ED&F Man's then-European CEO, Mr. Hawksworth, personally verified ED&F Man's initial December 2018 Answer. Schedule 5T ¶ 19(D). Less than a month after Mr.

Hawksworth's "resignation," ED&F Man filed its Amended English Answer, and an ED&F Man Managing Director made an identical personal affirmation that "the facts stated in [ED&F Man's Initial English Answer] [we]re true and [he was] duly authorized by [ED&F Man] to sign th[e] statement of truth on its behalf." <u>See</u> AEA at 27. But nobody—let alone an ED&F Man agent with personal knowledge—verified ED&F Man's March 2, 2020 Counterclaim against the Goldstein Parties. <u>See</u> Countercl. Given the Counterclaim's revisionist history, this silence speaks volume.

ED&F Man's own sworn pleadings demonstrate that the Goldstein Parties did not "originate[] the trading structures used by ED&F Man in the Danish Transactions," which ED&F Man deployed no later than 2012. ED&F Man can provide no reason why this Court should attempt to "reconcile" its Counterclaim with its Amended English Answer or accept it newest pleading as true. <u>See</u> <u>In re Richartz</u>, 2010 WL 4502038, at *3. This Court should dismiss ED&F Man's Counterclaim.

## II.     Indemnify What?

Contradictory pleadings aside, ED&F Man states no claim.

ED&F Man seeks indemnification of three separate categories of possible loss: (1) adverse judgment in this action filed by the Goldstein Parties; (2) adverse judgment in the English Action filed by SKAT; and (3) adverse judgment in "any other proceedings based upon the tax reclaim applications submitted by or on behalf of the Plan for the [Goldstein] Transactions." Countercl. ¶ 367.

New York law recognizes both explicit contractual and implied (sometimes dubbed "common-law") indemnification claims. Anderson v. Greyhound Lines, Inc., No. 06 Civ. 13371 GBD, 2011 WL 3480945, at *2 (S.D.N.Y. Aug. 3, 2011) (Daniels, J.).

In the "classic indemnification case," the party seeking indemnification has not committed any wrong, "but by virtue of some relationship with the tortfeasor or obligation imposed by law, was nevertheless held liable to the injured party." Glaser v. M. Fortunoff of Westbury Corp., 71 N.Y. 2d 643, 646–47 (1988) (quoting D'Ambrosio v. City of New York, 55 N.Y.2d 454, 461 (1982)); accord Tokio Marine and Fire Ins. Co., Ltd. v. Grodin, 05 Civ. 9153 (DLC), 2006 WL 3054321, at *3 (S.D.N.Y. Oct. 27, 2006) (Cote, J.) (applying New York law) ("A party is entitled to indemnification when it is held liable for a tort committed by a third party despite the fact that it has done no wrong.").

But "[a]n action does not become [one] for indemnity merely because the pleader has so denominated it." Peoples' Democratic Rep. of Yemen v. Goodpasture, Inc., 782 F.2d 346, 350 (2d Cir. 1986) (quoting Bunker v. Bunker, 80 A.D.2d 817, 817 (1st Dep't 1981)); accord Anderson, 2011 WL 3480945 WL at *4 ("In order to constitute a true

indemnification clause, the contractual obligation must be to assume the cost of liability irrespective of fault."); <u>IIG Capital LLC v. Van Der Mew & Anr</u> [2008] EWCA Civ 542 ("[I]t ultimately depends on the true construction of the agreement whether a particular label is the right one to apply to any instrument. [ . . . ] [T]he instrument must be construed by looking at it as a whole without preconceptions as to what it is.") (citation and quotation marks omitted).

### A. Black-Letter Law Prohibits ED&F Man From Being Indemnified for Its Own Wrongful Acts

As a threshold matter, it is black-letter law that ED&F Man cannot seek indemnification for its own wrongful acts. <u>See, e.g.</u>, <u>CBS Corp. v. Eaton Corp.</u>, No. 07 Civ. 11344 (LBS), 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30, 2010) (Sand, J.) ("[C]ontracts that would indemnify a party for intentional or fraudulent conduct are void as against public policy in New York"); <u>Rosado v. Proctor & Schwartz</u>, 66 N.Y.2d 21, 25–27 (1985)); <u>Capita (Banstead 2011) Ltd v. RFIB Grp. Ltd</u> [2015] EWCA Civ 1310 ¶ 10.3 ("The law, on public policy grounds, does not permit a party to exclude liability for the consequences of his own fraud.") (quoting Sir Kim Lewison, The Interpretation of Contracts (2d supplement 12.06)).

This common-law prohibition also applies to securities fraud, which the Goldstein Parties have alleged against ED&F Man. <u>See</u> <u>Globus v. Law Research Serv., Inc.</u>, 287 F. Supp. 188, 199 (S.D.N.Y. 1968) (Mansfield, J.), <u>aff'd in pertinent part</u>, 418 F.2d 1276, 1288– 89 (2d Cir. 1969) (holding that indemnification is not available in an action for securities fraud because "one cannot insure himself against his own reckless, willful or criminal misconduct"); <u>accord, e.g.</u>, <u>Gabriel Capital, L.P. v. Natwest Finance, Inc.</u>, 137 F. Supp. 2d

251, 267 (S.D.N.Y. 2000) (Scheindlin, J.) ("Because indemnification shifts the cost of tortious conduct to another party, it cannot apply when the party seeking the indemnification knowingly and willfully violated federal securities laws."); <u>Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)</u>, 747 F. Supp. 922, 930 (S.D.N.Y. 1990) (Stewart, J.) (same).

Moreover, a party cannot claim indemnity if its wrongful conduct was even just a concurrent cause of the alleged loss. <u>Capita</u> ¶¶ 25–26, 28, 46 (citation and quotation marks omitted) ("The short point is that the plaintiffs have contractually assumed the risk of their own negligence and cannot seek to avoid the consequences of that assumption of risk by seeking to rely on a breach of statutory duty.").

For example, in <u>Amusement Industry v. Stern</u>, this Court dismissed an indemnification claim where the third-party plaintiff "assert[ed] he was 'duped' by [the third-party defendant] and did nothing wrong," yet pleaded "[no] scenario under which [the third-party plaintiff] could be found both free from fault and at the same time liable for damages to [anyone] because of [the third-party defendant]." 693 F. Supp. 2d 319, 327 (S.D.N.Y. 2010) (Kaplan, J.).

As in <u>Amusement Industries</u>, because both the Goldstein Parties and SKAT pursue claims against ED&F Man for ED&F Man's tortious wrongdoing, there is no situation in which ED&F Man both (a) will have judgment entered against it **and** (b) will be entitled to indemnification for that judgment. ED&F Man's Counterclaim violates black-letter law and must be dismissed.

## B. ED&F Man States No Contractual Indemnification Claim

ED&F Man's allegations suggest a claim for contractual, not implied, indemnification. <u>See</u> Countercl. ¶¶ 365-66 (purporting to summarize Custody Agreement Section 16, but omitting the directive that the Goldstein Parties need not indemnify ED&F Man for "any liability, loss or cost arising out of the willful default, fraud or negligence of [ED&F Man]"); <u>id.</u> ¶ 367 (after casting the Goldstein Plan as the true "originators" of the Danish transactions, alleging that "ED&F Man is entitled to complete indemnification by the Plans [sic] pursuant to the [Custody] Agreement").

Both English and New York law apply common-sense, common-law contract interpretation principles to determine whether a contractual indemnity applies.[4] <u>See, e.g.,</u> <u>Capita</u> ¶ 10.2) ("[T]he task is always to ascertain what the parties intended in their particular commercial context in accordance with the established principles of construction.") (citations omitted); <u>Petroleo Brasileiro S.A. v. E.N.E. Kos 1 Ltd</u>, [2012] UKSC 17 ¶ 10 ("The scope and application of an indemnity clause depends upon its precise terms read in the context of the contract as a whole."); <u>Smith v. U.M.B. Chrysler (Scotland) Ltd</u> [1978] WLR 165 (a contractual indemnity must be "construed upon its own terms in the light of the circumstances of the particular case") (citation omitted); <u>In re MF Global Inc.</u>, 496 B.R. 315, 319 (S.D.N.Y. 2013) (Marrero, J.) (on appeal of MF Global's liquidation pursuant to the Securities Investor Protection Act where trustee was investigating negligence and breach of fiduciary duty claims against MF Global's officers and directors, noting "courts should read the integrated contract 'as a whole to ensure

---

[4] The Custody Agreement is governed by English law. <u>See</u> Custody Agreement ¶ 22(a).

that undue emphasis is not placed upon particular words and phrases and to safeguard against adopting an interpretation that would render any individual provision superfluous.'") (quoting <u>Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.</u>, 595 F.3d 458, 467 (2d Cir. 2010)); <u>Ballard v. Parkstone Energy, LLC</u>, 664 F. Supp. 2d 325, 329 (S.D.N.Y. 2009) (Sweet, J.) (court must construe "contractual language according to its plain meaning").

No indemnification action exists unless the contractual language's "ordinary meaning" clearly provides for the indemnity. <u>See, e.g.</u>, <u>Smith v. South Wales Switchgear</u> [1968] 1 All ER 18 (quoting <u>Canada Steamship Lines Ltd v. The King</u> [1952] AC 192, 208)); <u>accord</u> <u>Hooper Assoc. v. AGS Computers</u>, 74 N.Y.2d 487, 491–92 (1989) (an indemnity "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances.").

Indeed, given the common-law prohibition against indemnification of a party's wrongful acts (and just plain common sense), it is "inherently improbable that one party should agree to discharge the liability of the other party for acts for which he is responsible." <u>U.M.B. Chrysler</u> [1978] 1 WLR 165 (citation and quotation marks omitted); <u>accord</u> <u>Smith v. South Wales Switchgear</u> [1968] 1 WLR 168E.

Thus, the presumption against interpreting indemnification clauses to cover a party's own negligence is "well-established." <u>Id.</u> (citing <u>Walters v. Whessoe Ltd and Others</u> [1968] 1 WLR 1028). That presumption applies with "even greater force to dishonest wrongdoing, because of the inherent improbability of one party assuming responsibility for the consequences of dishonest wrongdoing by the other." <u>Capita</u> ¶ 10.

The gravamen of both SKAT's and the Goldstein Parties' claims against ED&F Man is precisely the type of "dishonest wrongdoing" that the Goldstein Plan need not indemnify.

## 1. Because SKAT Alleges Wide-Ranging Tortious Conduct Against ED&F Man, the Goldstein Plan Need Not Indemnify Any English Judgment

The English law-governed Custody Agreement's plain language explicitly incorporates the common-law prohibition forbidding indemnification of the tortious conduct for which SKAT has sued ED&F Man. See Custody Agreement § 16(b) (indemnification does not apply to "willful default, fraud, or negligence"); cf. id. §13(a) (The Goldstein Plan may hold ED&F Man liable for losses caused by ED&F Man's "own breach of duty," "willful default, fraud, or negligence").

SKAT has sued ED&F Man for negligence. See generally AEC; Schedule 5T. The Goldstein Transactions are just a small fraction of ED&F Man's misconduct: in monetary terms, less than 2% of the loss that ED&F Man caused SKAT to suffer. Schedule 5T ¶ 8; Compl. ¶ 13. Furthermore, SKAT is now pursuing claims against ED&F Man under the theory that "the single identical scheme which applied to [36 separate pension plans] was devised by ED&F Man, the entity common to all of the applications." Schedule 5T ¶¶ 5(b), 17(c).

But the Goldstein Plan only must indemnify ED&F Man for losses suffered "in connection with [the Goldstein Plan's] Property, this Agreement or the performance of [ED&F Man's] obligations under [the Goldstein Plan's Custody] Agreement." Custody Agreement § 16(b).

In other words, any adverse judgment in the English Action triggers both of the indemnification clause's disqualifiers: it (1) arises out of ED&F Man's negligent and unjust acts  and (2) was performed almost completely "in connection with" dozens of other pension plans, not the Goldstein Plan. Cf. Petroleo Brasileiro ¶ 43 (Indemnity clauses "cover consequences proximately caused, no more and no less."); Handelsbanken v. Dandridge [2002] EWCA Civ 577 ¶ 47 (when determining whether an indemnity clause applies, "the first task of the court is to look to see whether one of the causes is plainly the proximate cause of the loss"); The White Rose [1969] 1 WLR 1098, 1107 ("[T]he right to indemnity only arises if and insofar as the loss suffered by the shipowners can be proved to have been caused by compliance with the time charterers' instructions").

The Custody Agreement allows the Goldstein Plan to sue ED&F Man for "breach of duty," "willful default, fraud, or negligence" and explicitly prohibits ED&F Man from seeking indemnification for its own "willful default, fraud, or negligence." The Goldstein Parties need not indemnify ED&F Man for an adverse judgment in the English Action.

## 2. The Contract Does Not Require the Goldstein Plan to "Indemnify" ED&F Man for Losing This Lawsuit to the Goldstein Parties

ED&F Man also claims that the Goldstein Parties must indemnify it for "judgment entered against it [ . . . ] in this jurisdiction." Countercl. ¶ 367. But the Goldstein Parties' suit is the **only** action "in this jurisdiction" that arises "in connection with the [Goldstein Plan's] property, th[e Goldstein Plan's Custody] Agreement, or the performance of [ED&F Man's] obligations under th[e Goldstein Plan's Custody] Agreement." See Custody Agreement 16(b); cf. Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortgage Funding, Inc., 916 F.3d 116, 126 (2d Cir. 2019) (unless a contract "unequivocally" or

"unmistakably [and] clear[ly]" covers first-party claims, a contractual indemnity only contemplates "actual indemnification" paid to a third party). Is ED&F Man seriously arguing that the Goldstein Plan must pay ED&F Man if ED&F Man loses this lawsuit to the Goldstein Parties?

Absurdity aside, the Custody Agreement's indemnification clause does not apply to the Goldstein Parties' case because it alleges securities fraud, common-law fraud, negligence, tortious interference, fiduciary duty, and contract claims against ED&F Man. Compare ATPC ¶¶ 365–447 and Custody Agreement § 16(b) (Goldstein Plan "shall not" indemnify ED&F Man for any losses arising out of its "willful default, fraud, or negligence").

Moreover, the Custody Agreement expressly contemplates that the Goldstein Plan may sue ED&F Man for the exact misconduct alleged:

> [ED&F Man] shall only be liable to [the Goldstein Plan] for any liability, loss or cost suffered by or incurred by [the Goldstein Plan] to the extent that such liability, loss or cost is a direct result of its own breach of duty, the willful default, fraud, or negligence of [ED&F Man] in providing services under this Agreement.

Custody Agreement § 13(a).

Reading Section 13(a) in conjunction with Section 16 makes it particularly clear that the Goldstein Plan need not indemnify ED&F Man for losing this litigation to the Goldstein Parties. Cf. Waite v. Paccar Financial PLC [2012] EWCA Civ. 901 ¶ 27 ("It is[] necessary to read [a contract] as a whole in order to determine, not only the internal construction of each clause, but also the interrelation of each clause with every other insofar as they may overlap."). Holding otherwise would render Section 13(a)

"superfluous," "violat[ing] one of the most basic tenets of contract interpretation."). Anderson, 2011 WL 3480945, at *4 (granting motion for summary judgment dismissing contribution, indemnification, and breach of contract claims).

The Custody Agreement is clear: ED&F Man is liable to the Goldstein Plan for any willful default, fraud, or negligence—not vice versa.

### 3. The Goldstein Parties Need Not Indemnify ED&F Man for Hypothetical Adverse Judgments in Unidentified, Theoretical Proceedings

Finally, ED&F Man also seeks indemnification for "judgment[] entered against it [ . . . ] in any other proceedings based upon the tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions." Countercl. ¶ 367.

But ED&F Man fails to plead any hint of what those phantom proceedings might possibly be, violating the most basic notice principles. ED&F Man's silence is fatal to its Counterclaim. See, e.g., In re Lehman Bros. Holdings Inc., 530 B.R. 601, 612 (Bankr. S.D.N.Y. 2015) (Chapman, B.J.) (dismissing claim for contractual indemnification where debtor "failed to allege liability to a third party and therefore failed to state a claim for indemnification.").

**C. ED&F Man States No Implied Indemnification Claim Because It Faces Direct Liability for Its Own Wrongful Acts, Not Vicarious Liability for the Goldstein Parties' Conduct**

Common-law or "implied" indemnity is restitutionary, allowing loss-shifting if failing to do so would result in unjust enrichment. <u>Amusement Indus.</u>, 593 F. Supp. 2d at 325 (quoting <u>Mas v. Two Bridges Assocs. By Nat'l Kinney Corp.</u>, 75 N.Y.2d 680, 690 (1990)); <u>accord</u> <u>McDermott v. City of New York</u>, 50 N.Y. 2d 211, 216–17 (1980) ("It is nothing short of simple fairness to recognize that 'a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.'").

But common-law indemnification covers only "purely vicarious" liability. <u>Bd. of Managers of 125 N. 10th Condo. v. 125North10, LLC</u>, 150 A.D.3d 1063, 1064–65 (2d Dep't 2017); <u>accord</u> <u>U.S. Bank Nat. Ass'n v. Commonwealth Land Title Ins. Co.</u>, No. 13 Civ. 7626 NRB, 2015 WL 1291151, at *4 (S.D.N.Y. Mar. 23, 2015) (Buchwald, J.) (citation omitted) ("If defendant is found liable to petitioner for rescission based on fraud, it would not be able to obtain indemnification, since its loss would result from its own culpability in the transfer of title in violation of petitioner's rights.")).

Furthermore, implied indemnification is unavailable if "the party seeking indemnification was 'partially at fault' or 'responsible in any degree.'" <u>Monaghan v. SZS 33 Assoc. LP</u>, 73 F.3d 1276, 1284–85 (2d Cir.1996); <u>Trs. Of Columbia Univ. v. Mitchell/Giurgola Assocs.</u>, 109 A.D.2d 449, 453 (1st Dep't 1985) ("Since the predicate of common-law indemnity is vicarious liability without actual fault on the part of the

proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").

Even parties just partially at fault cannot seek indemnification. Rock v. Reed-Prentice Div. of Package Mach. Co., 39 N.Y.2d 34, 39 (1976) ("[C]ourts of this State, and throughout the National generally, refuse[] to imply a right to partial against another who played an effective role in causing the damage.") (citation and quotation marks omitted); accord, e.g., Barbagallo v. Marcum LLP, No. 11-CV-1358, 2012 WL 1664238, at *4 (S.D.N.Y. May 11, 2012) (Weinstein, J.) (New York law does not permit a party to indemnify itself for its own intentional torts); General Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. AON Reinsurance Agency, Inc., 860 F. Supp. 983, 988 (S.D.N.Y. 1994) (Conner, J.) ("[I]ndemnity cannot be implied if [the party seeking it] is at least partially at fault") (citation and quotation marks omitted); Knight v. H.E. Yerkes and Assocs., Inc., 675 F. Supp. 139, 143 (S.D.N.Y. 1987) (Leisure, J.) (same).

For the same reasons, "where the underlying action is one for breach of contract, a defendant may not seek indemnification because the defendant, if found liable to the plaintiff in the underlying action, will have necessarily participated in the wrongdoing by breaching the contract." U.S. Bank, 2015 WL 1291151, at *2 (granting motion to dismiss third-party implied indemnification) (citations omitted).

For example, the Second Department has affirmed the dismissal of an implied indemnification claim where the party seeking indemnification had retained "some responsibility" for the contract's performance, as "any liability [of that party] would be premised upon the affirmative wrongdoing of the sponsors and would not be purely

vicarious." 125 N. 10th Condo., 150 A.D.3d at 1064–65; accord In re Polling Transp. Corp., 784 F. Supp. 1045, 1048 (S.D.N.Y. 1992) (Sweet, J.) ("No right to implied indemnification exists when the proposed indemnitee retains a duty it owes directly to plaintiff.").

As discussed supra, ED&F Man does not face mere vicarious liability for the Goldstein Parties' actions. Indeed, ED&F Man has identified no jurisdiction where it faces vicarious liability for the Goldstein Parties' acts. See generally Countercl.

Instead, SKAT's English Action sues the Brokerage for breaching its own duties to SKAT by creating hundreds of false Tax Vouchers. See, e.g., Schedule 5T ¶¶ 3–8, 18. The Goldstein Plan's gross "profits" total less than 2% of the total damage that ED&F Man allegedly caused SKAT. Id. ¶ 8; Compl. ¶ 13. The Goldstein Parties, meanwhile, sue ED&F Man for wrongs that the Brokerage committed against the Goldstein Parties. See generally ATPC.

Furthermore, both the English Action and this American litigation allege that the entire purpose of the Brokerage's "unified scheme" was to unjustly enrich itself, and ED&F Man admits that it arranged over $86 million of Danish Arbitrage Transactions, reaping profits all the way. This situation is precisely the opposite of that which warrants an implied indemnity. See, e.g., Amusement Indus., 593 F. Supp. 2d at 325 (implied indemnity is restitutionary and designed to prevent unjust enrichment).

### III. ED&F Man Pleads No Allegations Against Sheldon Goldstein, Who is Not a Party to the Custody Agreement

Finally, a claim against multiple defendants "must give notice to **each** defendant of its alleged misconduct." <u>Dietrich v. Bauer</u>, 76 F. Supp. 2d 312, 329 (S.D.N.Y. 1999) (Sweet, J.) (emphasis in original) (citation and quotation marks omitted); <u>accord, e.g.</u>, <u>Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.</u>, 808 F. Supp. 213, 230 (2d Cir. 1992); <u>United States v. Persico</u>, 832 F. 705, 714 (2d Cir. 1987). "Without this requirement, the policies of giving fair notice to, and protecting the reputation of, each defendant would be frustrated—parties might be improperly swept into the discovery stage of a litigation with other parties against whom [misconduct] has been properly alleged." <u>Id.</u>

ED&F Man does not plead a single allegation against Sheldon Goldstein. <u>See generally</u> Countercl. ¶¶ 342–67. In fact, Mr. Goldstein is not even a party to the Custody Agreement. <u>See</u> Custody Agreement at 1, 19. This Court should dismiss him from ED&F Man's Counterclaim.

**CONCLUSION**

There is no contractual, legal, or even logical reason why the Goldstein Parties should indemnify ED&F Man for the fraud, negligence, and breaches of contractual and fiduciary duties it committed against SKAT and the Goldstein Parties. Sheldon Goldstein is not even a party to the Custody Agreement. The Goldstein Parties respectfully request that the Court dismiss ED&F Man's Counterclaim with prejudice.

Dated: New York, New York
     March 30, 2020

                                    GUSRAE KAPLAN NUSBAUM PLLC

                                    By: /s/ Martin H. Kaplan
                                    Martin H. Kaplan
                                    Kari Parks
                                    120 Wall Street
                                    New York, New York 10005
                                    Telephone: (212) 269-1400
                                    Fax: (212) 809-5449
                                    mkaplan@gusraekaplan.com
                                    kparks@gusraekaplan.com

                                    *Counsel for Third-Party Counterclaim Defendants The Goldstein Law Group PC 401(K) Profit Sharing Plan and Sheldon Goldstein*