# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: 18-cv-09797[1]<br>18-cv-10100 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**THIRD-PARTY PLAINTIFFS/COUNTERCLAIM-DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
ED&F MAN CAPITAL MARKETS LTD.'S COUNTERCLAIMS**

K&L GATES LLP
John C. Blessington
Brandon R. Dillman
One Lincoln Street
Boston, MA  02111
617.261.3100

*Attorneys for Defendants /
Third-Party Plaintiffs in the
above-captioned related
proceedings*

---

[1] SKAT's actions first filed in Utah federal court were consolidated and then transferred to this Court. The above-captioned related action, 18-cv-09797, comprises the following actions: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT .......................................................................... 1

BACKGROUND ................................................................................................ 2

    I.      The Custody Agreements' indemnification clause does
           not cover ED&F's "wilful default, fraud or negligence." ........................ 2

    II.     Whether ED&F's conduct constitutes negligence is
           central to the English Action. ............................................................... 3

    III.    The Plans' third-party claims against ED&F are
           based on misconduct by ED&F. .............................................................. 6

LEGAL STANDARDS ...................................................................................... 6

ARGUMENT ..................................................................................................... 8

CONCLUSION ................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**U.S. Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937 (2009) .........................................................................6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007) .........................................................................6

*Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*,
   773 F.3d 110 (2d Cir. 2014) ................................................................................8, 9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir.1991) .................................................................................7, 10

*DiMartino v. De Lage Landen Fin. Servs., Inc.*,
   209 F. Supp. 3d 783 (E.D. Pa. 2016) .........................................................................9

*Egan v. Marsh & McLennan Cos.*,
   No. 07 Civ 7134, 2008 WL 245511 (S.D.N.Y. Jan. 30, 2008) ...........................................7, 9

*Freund v. Utah Power & Light Co.*,
   793 P.2d 362 (Utah 1990) .......................................................................................8

*Haynes v. Kleinewefers & Lembo Corp.*,
   921 F.2d 453 (2d Cir. 1990) ....................................................................................8

*Kurek v. Port Chester Housing Authority*,
   223 N.E.2d 25 (N.Y. 1966) .....................................................................................8

*Lane v. Commonwealth*,
   954 A.2d 615 (Pa. Super. Ct. 2008) ......................................................................8, 10

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) .........................................................................7

*NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.*,
   745 F. App'x 416 (2d Cir. 2018) ..............................................................................8

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007) ......................................................................................7

*S. Ridge Homeowners' Ass'n v. Brown*,
   226 P.3d 758 (Utah Ct. App. 2010) ...........................................................................9

*Taussig v. Clipper Grp., L.P.*,
   787 N.Y.S.2d 10 (N.Y. App. Div. 2004) ...................................................................7

*Utah Transit Auth. v. Greyhound Lines, Inc.*,
   355 P.3d 947 (Utah 2015) ..............................................................................7, 10

*Wert v. Manorcare of Carlisle PA, LLC*,
   124 A.3d 1248 (Pa. 2015) ...............................................................................9

*Z-Corp v. Ancestry.Com Inc.*,
   382 P.3d 652 (Utah Ct. App. 2016) ..................................................................9

**English Cases**

*Canada Steamship Lines Ltd v The King*
   [1952] UKPC 1 ..............................................................................................7

*EE Caledonia Ltd v Orbit Valve Co Europe Plc*
   [1994] 1 W.L.R. 1515 .......................................................................................7

*Wood v. Capita Ins. Servs. Ltd.*
   [2017] EWCA (UKSC) 24 ...............................................................................7

**Other Authorities**

*Chitty on Contacts*, 33rd Edition, 2018, 15-018 ........................................................7–8

Federal Rule of Civil Procedure 12(b)(6) ................................................................6

Third-Party Plaintiffs DW Construction, Inc. Retirement Plan (the "DWC Plan"), Kamco Investments, Inc. Pension Plan (the "Kamco Investments Plan"), Kamco LP Profit Sharing Pension Plan (the "Kamco LP Plan"), Linden Associates Defined Benefit Plan (the "Linden Plan"), Moira Associates 401(K) LLC Plan (the "Moira Plan"), Riverside Associates Defined Benefit Plan (the "Riverside Plan"), American Investment Group of New York, L.P. Pension Plan (the "AIG Plan") (collectively, the "Utah Plans"), and Newsong Fellowship Church 401(k) Plan (the "Newsong Plan") (collectively with the Utah Plans, "the Plans" and each a "Plan"), respectfully submit this memorandum of law in support of their motion to dismiss the counterclaims of Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F").

## PRELIMINARY STATEMENT

With its counterclaims, ED&F has asked this Court to order the Plans to indemnify ED&F "in the event that judgment is entered against it in any action or proceeding, either in this jurisdiction, in the English Action, or in any other proceedings based upon the tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions." Counterclaims, ¶ 194.[2]

ED&F's counterclaims fail, however, because ED&F is not entitled to indemnification for any loss resulting from ED&F's "wilful default, fraud or negligence." All of the claims against ED&F in these proceedings and SKAT's collateral action in the United Kingdom are based on ED&F's intentional and/or negligent misconduct. Indeed, ED&F admits it created false tax

---

[2] ED&F's counterclaims against the Utah Plans [Doc. No. 281 in civil action 18-md-02865] (the "Utah Counterclaims") is Exhibit 1 to the Declaration of John C. Blessington ("Blessington Decl."). ED&F's counterclaims against the Newsong Plan [Doc. No. 282 in civil action 18-md-028652] (Blessington Decl. Ex. 2) (the "Newsong Counterclaim") is identical to the Utah Counterclaims in all material respects for purposes of this motion. The Utah and Newsong Counterclaims are collectively referred to as the "Counterclaims," but any direct citations are to the Utah Counterclaims (Exhibit 1 to the Blessington Declaration).

vouchers for the majority of the Plans' refund applications submitted to Plaintiff Skatteforvaltningen ("SKAT"), and those false tax vouchers are central to all of the allegations against ED&F.  SKAT has seized upon those false tax vouchers and made them a centerpiece to its claims against ED&F.

The law is clear that indemnification agreements should never assume that a party is entitled to indemnification for its intentional or negligent misconduct, and the custody agreements entered into by the Plans and ED&F expressly excluded indemnification for any liability, loss, or cost arising from ED&F's own misconduct.  Accordingly, ED&F cannot succeed on any of its indemnification claims against the Plans, and its counterclaims should be dismissed.

## BACKGROUND

I.    **The Custody Agreements' indemnification clause does not cover ED&F's "wilful default, fraud or negligence."**

The Plans and ED&F entered into custody agreements in 2012, pursuant to which ED&F traded in Danish securities on behalf of the Plans.  *Id.* at ¶¶ 170–71, 187.  According to "tax vouchers" prepared by ED&F at the time of the transactions, the Plans received dividends net of withholding tax as a result of the Plans' Danish-securities holdings.  Blessington Decl. Ex. 3, Amended Third-Party Complaint ("ATPC"), Exhibits H–N (describing, according to ED&F, the Utah Plans' Danish shareholdings and receipt of dividends from Danish companies); Blessington Decl. Ex. 4, Newsong Defendants' Amended Third-Party Complaint ("Newsong ATPC"), Exhibit B (purporting to describe the Newsong Plans' Danish shareholdings and receipt of dividends from Danish companies).[3]  The tax treaty between the U.S. and Denmark entitled the Plans (as recipients

---

[3] The ATPC and the Newsong ATPC are materially identical.  Any reference to the "ATPC" refers to the Utah Defendants' Amended Third-Party Complaint (Blessington Decl. Ex. 3).

of the dividends net of withholding taxes and as bona fide U.S. pension plans)[4] to a refund of the dividend-withholding taxes from SKAT.  ATPC ¶ 23.  Once the tax vouchers were certified by ED&F, non-party Goal Taxback would submit refund applications to SKAT on behalf of the Plans.  Counterclaims ¶ 191; ATPC ¶ 34.  SKAT then paid the Plans' refund requests based on the tax vouchers that ED&F prepared.  *See* Blessington Decl. Ex. 5, SKAT's Re-Re-Amended Particulars of Claim ("SKAT's English Claims"), at Schedule 5T, ¶ 15; ATPC ¶ 45.

The custody agreements contain an indemnification clause.  *See* Counterclaims ¶¶ 192, 193; ATPC, at Ex. A ("Custody Agreement"), § 16(a).[5]  They also contain an exclusion: ED&F's right to indemnification shall not extend to "any liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F or ED&F's sub-custodian]."  Custody Agreement 16(b).  In other words, under the express terms of the Custody Agreement, the Plans are not required to indemnify ED&F for ED&F's intentional or negligent misconduct.

**II.     Whether ED&F's conduct constitutes negligence is central to the English Action.**

In 2018, SKAT instituted an action against ED&F in the United Kingdom (the "English Action").  From the beginning, SKAT alleged that ED&F negligently misrepresented the Plans'

---

[4] The evidence will show the Plans are each qualified under section 401(a) of the United States Internal Revenue Code and exempt from taxation under section 501(a) of the United States Internal Revenue Code.  The evidence will also show each Plan was established long before they started trading in Danish securities: the AIG Plan (effective January 2002); the DWC Plan (effective January 2011); the Kamco Investments Plan (effective January 2002); the Kamco LP Plan (effective January 1999); the Linden Plan (effective January 1995); the Moira Plan (effective January 2011); the Riverside Plan (effective January 1995); and the Newsong Plan (effective January 2003 and terminated in 2016).

[5] All of the Utah Plans' custody agreements are attached to the ATPC.  *See* Blessington Decl. Ex. 3, at Exs. A–G.  The Newsong Plans' custody agreement is attached to the Newsong ATPC as Exhibit A.  *See* Blessington Decl. Ex. 4, at Ex. A.  These custody agreements are identical in all material respects for purposes of this motion.  References to the "Custody Agreement" or "Custody Agreements" are to the custody agreement between the DWC Plan and ED&F.

Danish shareholdings, while exempting ED&F from any allegations of fraud. In September 2019, ED&F filed an amended response to SKAT's claims in the English Action, and admitted that 38 of the 64 tax vouchers (the "Disavowed Vouchers"), that it prepared for the Plans contained false information. *See* Blessington Decl. Ex. 6, Amended Defence ("ED&F's Amended Defence") ¶ 4.2 & Annex E. The Disavowed Vouchers make up the majority of the tax vouchers prepared by ED&F for the Plans, including all four of the tax vouchers that ED&F prepared for the Newsong Plan.[6] *Id.*; *see also* SKAT's English Claim, Schedule 5T ¶ 18(c)(i) (noting 100% of the Newsong Plan's tax vouchers have now been disavowed by ED&F). Notwithstanding the fact that ED&F has since admitted the Disavowed Vouchers contained false information at the time of the Danish Transactions, the Plans had every reason to believe that they had received dividends from the relevant Danish issuers and that dividend taxes had actually been withheld. ATPC ¶ 36–44.

In its Amended Defence filed in the English Action, ED&F admitted that "SKAT's primary case is that ED&F Man is liable to SKAT in negligence." ED&F's Amended Defence ¶ 3.[7] ED&F has admitted that it generated numerous false tax vouchers that it knew would likely be submitted to SKAT for the Plans' refund applications. ED&F's Amended Defence ¶ 37.6.2 & Annex E.

---

[6] ED&F also admitted in its defense in the English Action that — commensurate with the services it provided the Plans — it received fees from its clients' successful tax-refund applications, including those applications which were based on the information in the Disavowed Vouchers. ED&F's Amended Defence ¶ 43.

[7] It is important to note that ED&F's allegations in the Counterclaims that the Plans designed the Danish trades is belied by ED&F's admissions in its Amended Defence as to when it started trading in Danish securities. Specifically, ED&F admits that it conducted these kinds of trades beginning in 2012 — prior to the Plans' first trades in Denmark, which was in December 2013. *See* ED&F's Amended Defence ¶¶ 6.2, 10–11, 27 (admitting ED&F was executing Danish trades for its pension plan clients as early as 2012); ATPC, Exhibits H–N (describing Utah Plans' Danish trades starting with a single trade in December 2013); Newsong ATPC, Exhibit B (describing Newsong Plans' apparent securities holdings in 2014). As such, ED&F's assertion that the Plans originated the Danish-trade "structures" is contradicted by ED&F's admissions that it started conducting these trades for others before the Plans even traded in Danish securities.

Importantly, SKAT alleges that "the *only* source of information concerning the purchase of shares and receipt of dividends by an individual [Plan] was ED&F Man." [8]  SKAT's English Claims, Schedule 5T ¶ 17(f) (emphasis added).

   In the end, SKAT alleges that ED&F misrepresented the Plans' ownership of Danish securities and either (a) harmed SKAT under a theory of negligence or (b) unjustly enriched itself at the expense of SKAT as a result of ED&F's negligent misrepresentations.  *See, e.g.*, SKAT's English Claims ¶ 94A ("[ED&F] owed to SKAT and breached a duty to exercise reasonable care and skill in making the ED&F Man Representations, on which SKAT relied and as a result of which it has suffered loss and damage."); ¶¶ 95–97 (alleging ED&F was unjustly enriched by SKAT's mistaken refund payments, which were induced by ED&F's negligent misrepresentations); ¶ 97 ("The enrichment of [ED&F] was at the expense of SKAT and was unjust by reason of the mistake induced by misrepresentation.").  Simply, SKAT's theory in the English Action is that ED&F — and not the Plans, the Plans' representatives, or anyone else — was the "only source of information" concerning the Plans' shareholdings and dividends and was the only party that created false tax vouchers for the Plans' refund claims. [9]

---

[8] SKAT has already acknowledged that the Plans relied on the apparent accuracy of ED&F's tax vouchers.  *See* Blessington Decl. Ex. 7, [SKAT's] Opposition to Third-Party Defendant [ED&F's] Motion for a Protective Order, Doc. No. 213-1, 18-md-2865, at 2 (noting that the Plans "rel[ied] on the supposed accuracy of ED&F's 'tax vouchers'").  In the English Action, "SKAT does not allege fraud or dishonesty against ED&F Man, or that the ED&F Man Applications were made as a fraudulent scheme."  SKAT's English Claims ¶ 3(k).  SKAT cannot allege that ED&F was the "only source of information" but only acted negligently and not part of some alleged scheme, while at the same time alleging that the Plans, who relied on ED&F's "information," intentionally defrauded SKAT.  These contradictory allegations underscore how baseless SKAT's fraud claims are against the Plans.

[9] SKAT also acknowledges that to the extent the Plans received dividends, then its claims are subsumed by tax law, based on a theory of liability arising from the relevant tax treaty.  Specifically, SKAT alleges that "[p]ending disclosure, . . . the [Plans] did not receive dividends (beneficially or otherwise) at least in respect of some transactions.  Insofar as they received dividends, the [Plans] were not entitled to relief under the applicable double tax treaties."

**III.    The Plans' third-party claims against ED&F are based on misconduct by ED&F.**

In this Court, as part of its claims against the Plans, SKAT has alleged that "[ED&F] . . . provided statements falsely representing that [the Plans] owned shares in Danish companies and had earned dividends on those shares." Blessington Decl. Ex. 9, SKAT's Complaint ¶ 9(c) ("[ED&F] . . . provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares."), ¶¶ 48–50 (alleging falsity of ED&F's tax vouchers).[10] In turn, the Plans filed third-party claims against ED&F, alleging that if SKAT proves its claims, then ED&F should be liable for having intentionally or negligently provided false documentation in relation to the Plans' refund applications. ATPC ¶¶ 79–83.

Any way you cut it, SKAT and the Plans have accused ED&F of, at the very least, negligent misconduct in relation to the tax vouchers it produced for the Plans. Accordingly, any judgment against ED&F in this action and in the English Action necessarily depends on, at least, ED&F's negligent misconduct. Therefore, ED&F is not entitled to indemnification.

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). A complaint's factual allegations are accepted as true and reasonable inferences are to be drawn in favor of the claimant.

---

Blessington Decl. Ex. 8, SKAT's Further Particulars Regarding the Validity of WHT Refund Applications ¶ 3.2.

[10] All of SKAT's complaints against the Plans are identical in all material respects for purposes of this motion. Any reference to "SKAT's Complaint" is to SKAT's Complaint filed against the DWC Plan, which is Exhibit 9 to the Declaration of John C. Blessington.

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  However, a court is not required to credit conclusory allegations or legal conclusions.  *Id.*

Furthermore, "[a]t the motion to dismiss stage, where a [claimant's] 'factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[.]'"  *Egan v. Marsh & McLennan Cos.*, No. 07 Civ. 7134, 2008 WL 245511, at *4 (S.D.N.Y. Jan. 30, 2008) (citing *Taussig v. Clipper Grp., L.P.*, 787 N.Y.S.2d 10, 11 (N.Y. App. Div. 2004)); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").  Even on a Rule 12(b)(6) motion, the court may also consider documents that are "integral" to a claimant's claim to relief, such as those relied upon in drafting a complaint.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("Where [claimant] has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

To sustain a claim for indemnification for damages arising from the indemnitee's own negligence, the intention to establish a right for indemnification for such conduct must be clearly stated in the parties' agreement.[11]  *Utah Transit Auth. v. Greyhound Lines, Inc.*, 355 P.3d 947, 953

---

[11]  The Custody Agreement is governed by English law.  Custody Agreement § 22(a) ("This Agreement shall be governed by, and shall be construed in accordance with, the laws of England.").  To the extent English law applies in determining whether ED&F has stated a claim for indemnification against the Plans, English law is the same as the applicable principles of Utah and Pennsylvania law, set forth above.  Under English law, "clear words" are required to indemnify a party against its own negligence. *Canada Steamship Lines Ltd v The King* [1952] UKPC 1; *see Wood v. Capita Ins. Servs. Ltd.* [2017] UKSC 24; *EE Caledonia Ltd (formerly Occidental Petroleum (Caledonia) Ltd) v Orbit Valve Co Europe Plc* [1994] 1 W.L.R. 1515; *see also Chitty*

(Utah 2015) ("[t]he rule of strict construction requires that if a party intends to 'assume ultimate financial responsibility for negligence of another,' then that intention must be 'clearly and unequivocally expressed'") (quoting *Freund v. Utah Power & Light Co.*, 793 P.2d 362, 370 (Utah 1990)); *Lane v. Commonwealth*, 954 A.2d 615, 619 (Pa. Super. Ct. 2008) ("a contract will not be construed to provide indemnification against a person's own negligence unless that intent is expressly and unequivocally stated"); *see also Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990) (citing *Kurek v. Port Chester Housing Authority*, 223 N.E.2d 25, 27 (N.Y. 1966) ("contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms")).

## ARGUMENT

ED&F fails to state an indemnification claim. ED&F is asking the Court to order the Plans to indemnify ED&F for any judgment against it in this or the English Action. However, any possible judgment against ED&F can only be for negligence, at a minimum, and the Plans and ED&F expressly agreed that ED&F's negligence would not be covered by the Custody Agreement. Without more, ED&F's Counterclaims should be dismissed.

The basis for ED&F's alleged right to indemnification is the Custody Agreement's indemnification clause. "When interpreting a contract, [a court's] 'primary objective . . . is to give effect to the intent of the parties as revealed by the language of their agreement."[12] *Chesapeake*

---

*on Contacts*, 33rd Edition, 2018, 15-018 ("The law presumes that a party will not readily be granted an indemnity against a loss caused by his own negligence.").

[12] To the extent English law applies, English law on contract interpretation is the same as set forth above: the plain meaning of the terms of the contract should control. *See NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.*, 745 F. App'x 416, 419 (2d Cir. 2018) (citing *Wood v. Capita Ins. Servs. Ltd.* [2017] UKSC 24) ("Under English law, [courts] determine the objective meaning of a contract's language, using the natural and ordinary meaning of the text, . . . and considering the contract as a whole and in light of the contract and disputed clause's purpose.").

*Energy Corp. v. Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 113–14 (2d Cir. 2014); *Z-Corp v. Ancestry.Com Inc.*, 382 P.3d 652, 653–54 (Utah Ct. App. 2016) ("Any contract interpretation properly begins with a consideration of the 'plain language' or 'plain meaning' of the contract.") (citing *S. Ridge Homeowners' Ass'n v. Brown*, 226 P.3d 758, 760 (Utah Ct. App. 2010)); *DiMartino v. De Lage Landen Fin. Servs., Inc.*, 209 F. Supp. 3d 783, 790 (E.D. Pa. 2016) ("Unless otherwise specified, a contract's language shall be given its plain and ordinary meaning.") (citing *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015)). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp.*, 773 F.3d at 113–14 (citations and alterations omitted).

The plain language of the Custody Agreement establishes that ED&F and the Plans specifically agreed that ED&F's indemnification right would ***not*** cover ED&F's fraud or negligence:

> The indemnity in Clause 16(a) shall not extend to any liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F] or any Sub-Custodian appointed by [ED&F] under this Agreement.

Custody Agreement, § 16(b).  ED&F's conclusory allegation that it is entitled to indemnification from the Plans is "flatly contradicted" by the express language of the Custody Agreement.  *See Egan*, 2008 WL 245511 at *4 (explaining "flatly contradicted" allegations and legal conclusions are not presumed to be true "or even accorded favorable inference").  ED&F's allegation is also contradicted by Section 13(a) of the Custody Agreement, which states that ED&F *shall* be liable to the Plans for ED&F's own "breach of duty, . . . wilful default, fraud or negligence." *See* Custody Agreement, § 13(a).  Given that ED&F cannot be liable for its own negligence under the express terms of the Custody Agreement, it goes without saying that the same agreement does not express

a clear intent to indemnify ED&F for its own misconduct, as ED&F alleges. *Utah Transit Auth.*, 355 P.3d at 953 (requiring clear expression); *Lane*, 954 A.2d at 619 (same).

The allegations against ED&F in the English Action and in these proceedings clearly show that all of the claims against ED&F are based on its own negligence and/or fraud.[13]  In the English Action, SKAT alleges that ED&F negligently misrepresented the Plans' dividend-withholding taxes and stock ownership, causing SKAT's purported overpayment of withholding taxes to the Plans and others.  *See, e.g.*, SKAT's English Claims, ¶¶ 94A, 95–97; Schedule 5T ¶ 3–19, 23–25. Likewise, in these proceedings, SKAT alleges that ED&F falsified tax vouchers that supported the Plans' tax refund applications, and the Plans allege that ED&F should be liable to the Plans due to ED&F's intentional or negligent misconduct.  *See* SKAT's Complaint, ¶¶ 9(c), 48–50; ATPC, ¶¶ 79–83.  Thus, any judgment against ED&F can only result from a claim based on ED&F's negligent misconduct, at a minimum.  Under these circumstances, ED&F's claims fail under the express terms of the Custody Agreements.

## CONCLUSION

Presented with claims based on negligence and fraud, ED&F has already admitted that it provided false information in the Disavowed Vouchers.  ED&F's wrongful conduct is central to any judgment that may be entered against it in these proceedings or in the English Action. Accordingly, ED&F is not entitled to indemnification for its misconduct, and ED&F's counterclaims should be dismissed.

---

[13] Given that ED&F is seeking indemnification for potential judgments in the English Action and in these proceedings, the nature of all of the claims against ED&F are relevant in deciding this motion.  *See Cortec Indus.*, 949 F.2d at 47 ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citing references omitted).

March 30, 2020                          Respectfully submitted,

                                        K&L GATES LLP

                                        */s/ John C. Blessington*
                                        John C. Blessington (*pro hac vice*)
                                          john.blessington@klgates.com
                                        Brandon R. Dillman (*pro hac vice*)
                                          brandon.dillman@klgates.com
                                        K&L GATES LLP
                                        State Street Financial Center
                                        One Lincoln Street
                                        Boston, MA  02111
                                        T: 617.261.3100
                                        F: 617.261.3175

                                        *Attorneys for Defendants / Third-Party Plaintiffs*
                                        *DW Construction, Inc. Retirement Plan,*
                                        *Kamco Investments, Inc. Pension Plan,*
                                        *Kamco LP Profit Sharing Pension Plan,*
                                        *Moira Associates LLC 401(k) Plan, Linden*
                                        *Associates Defined Benefit Plan, Riverside*
                                        *Associates Defined Benefit Plan, American*
                                        *Investment Group of New York, L.P. Pension*
                                        *Plan, Stacey Kaminer, Joan Schulman,*
                                        *David Schulman, Newsong Fellowship*
                                        *Church 401(k) Plan, and Alexander Jamie*
                                        *Mitchell III*