# EXHIBIT 13

A                    [COURT OF APPEAL]

## *E.E. CALEDONIA LTD. v. ORBIT VALVE CO. EUROPE

B   1994 April 19, 20, 21;                    Neill, Beldam and Steyn L.JJ.
    May 18

*Contract—Construction—Indemnity clause—Agreement between parties to indemnify against liability—Party incurring liability as result of concurrent negligence and breach of statutory duty—Whether indemnity clause applying*

C     By a contract made between the plaintiffs, the operators and occupiers of an oil drilling platform in the North Sea, and the defendants for the carrying out of work to the plaintiffs' order on the platform, each party agreed to indemnify the other against "any claim ... or liability ... arising by reason of ... death of any employee ... of the indemnifying party, resulting from or ... connected with the performance of this order." One of the
D   defendants' employees died in a fire which occurred on the platform. The plaintiffs made a payment in settlement of the claims of the deceased's estate and dependants on the basis that the death was caused by the negligence of the plaintiffs' servants and by breaches of the plaintiffs' statutory duty. The judge dismissed the plaintiffs' claim for indemnity under the contract holding that the indemnity clause did not apply to the consequences of the
E   negligence of the plaintiffs and their servants or the consequences of such negligence and the plaintiffs' concurrent breaches of statutory duty.
      On appeal by the plaintiff:—
      *Held*, dismissing the appeal, that the indemnity clause operated as an allocation of risks between the plaintiffs and the defendants, each party being contractually bound to bear the risk of his own negligence; that, therefore, the indemnity clause did not apply to
F   the consequences of the negligence of the plaintiffs and their servants, or to the consequences of such negligence and concurrent breaches of statutory duty; and that, accordingly, the plaintiffs were not entitled to an indemnity in respect of their liability to the deceased's estate and to his dependants (post, pp. 1523A, H, 1525D-H, 1527C-F).
      Dictum of Lord Morton of Henryton in *Canada Steamship*
G   *Lines Ltd. v. The King* [1952] A.C. 192, 208, P.C. considered.
      Decision of Hobhouse J. [1994] 1 W.L.R. 221; [1993] 4 All E.R. 165 affirmed.


The following cases are referred to in the judgment of Steyn L.J.:

H   *Ailsa Craig Fishing Co. Ltd. v. Malvern Fishing Co. Ltd.* [1983] 1 W.L.R. 964; [1983] 1 All E.R. 101, H.L.(Sc.)
    *Canada Steamship Lines Ltd. v. The King* [1952] A.C. 192 [1952] 1 All E.R. 305, P.C.
    *Gillespie Bros. & Co. Ltd. v. Roy Bowles Transport Ltd.* [1973] Q.B. 406; [1972] 3 W.L.R. 1003; [1973] 1 All E.R. 193, C.A.
    *Lamport & Holt Lines Ltd. v. Coubro & Scrutton (M. & I.) Ltd. (The Raphael)* [1982] 2 Lloyd's Rep. 42, C.A.

Caledonia Ltd. v. Orbit Valve Co. (C.A.) **[1994]**

*Mitchell (George) (Chesterhall) Ltd. v. Finney Lock Seeds Ltd.* [1983] 2 A.C. 803; [1983] 3 W.L.R. 163; [1983] 2 All E.R. 737, H.L.(E.)

*Nelson v. Atlantic Power and Gas Ltd.* (unreported), 22 October 1992, Ct. of Sess.

*Photo Production Ltd. v. Securicor Transport Ltd.* [1980] A.C. 827; [1980] 2 W.L.R. 283; [1980] 1 All E.R. 556, H.L.(E.)

*Smith v. South Wales Switchgear Co. Ltd.* [1978] 1 W.L.R. 165; [1978] 1 All E.R. 18, H.L.(Sc.)

A

B

No additional cases were cited in argument.

INTERLOCUTORY APPEAL from Hobhouse J.

By notice of appeal dated 22 July 1993 the plaintiffs, E.E. Caledonia Ltd. appealed against the decision of the judge dated 28 May 1993 that they were not entitled, as against the defendants, Orbit Valve Co. Europe (formerly Occidental Petroleum (Caledonia) Ltd.), to an indemnity under a service contract entered into on 7 June 1988 relating to work on the oil drilling platform, Piper Alpha, in the North Sea. They appealed on the grounds that (1) the judge erred in finding that upon its true construction article 10(b) was not wide enough to cover the consequences of the negligence of the plaintiffs or their own servants. The judge ought to have held that the clause was wide enough to provide an indemnity against liability of the plaintiffs caused or contributed to by the negligence of the plaintiffs or their servants; (2) the judge erred in holding that article 10(b) did not provide for indemnity against the liability of the plaintiffs for breach of statutory duty. The judge ought to have held that article 10(b) did provide for indemnity against the liability of the plaintiffs for breach of statutory duty irrespective of whether the plaintiffs might also be liable in negligence; and (3) the judge correctly determined the preliminary issue in the plaintiffs' favour, but made no order thereon because he found in the defendants' favour in respect of the two issues of law referred to in the preceding paragraphs.

C

D

E

*Richard Aikens Q.C.* and *Andrew Popplewell* for the plaintiffs.
*Ian Hunter Q.C.* for the defendants.

F

*Cur. adv. vult.*

18 May 1994. The following judgments were handed down.

STEYN L.J. In July 1988 an offshore installation known as Piper Alpha was situated in the North Sea about 110 miles north-east of Aberdeen. On the evening of 6 July 1988 an explosion occurred on the production deck of the platform which set in train a series of further explosions and a disastrous fire. The platform was destroyed. At the time there were 226 persons on board the platform. 165 persons died. It was the greatest disaster in the history of offshore operations.

G

One of those who lost his life was Mr. Terence Quinn. He was an employee of the defendants. On 7 June 1988 the defendants, an engineering firm, had entered into a written agreement with the plaintiffs, the joint owners and operators of the platform. Under the agreement the defendants agreed to provide the services of a service engineer to carry out the overhaul of 13 valves in the gas condensation module on the platform. The defendants had manufactured and supplied those valves. Mr. Quinn was the service engineer to whom the work of overhauling the valves was

H

A  entrusted. He started the work on 1 July 1988, and it was contemplated that the work would be completed within 10 days. At about 1800 hours on 6 July 1988 Mr. Quinn finished work for the day and went off duty. He left the gas condensation module and went to the accommodation module. At 2200 hours the explosions and fire started. Mr. Quinn died from inhalation of smoke and gas. Mr. Quinn was in no way responsible for the fire or in breach of any statutory or common law duty.

B  The dependants of Mr. Quinn claimed damages in tort against the plaintiffs. The claim was formulated in terms of breach of the common law duty of care and breach of statutory duties. The claims were settled at what was described as the "mid-Atlantic" level of £642,627·68.

On the facts, which the judge was asked to assume to be correct, the liability of the plaintiffs to the dependants of Mr. Quinn arose as a result
C  of two concurrent causes. First, it arose as a result of the negligence of Mr. Robert Vernon, the plaintiff's lead production operator, who was responsible for a leakage of condensate at the site of a pressure safety valve which was not leak tight. Secondly, it arose by reason of various breaches of statutory duty, namely duties under the Offshore Installations (Operational Safety, Health and Welfare) Regulations 1976 (S.I. 1976
D  No. 1019), which were made under section 6 of the Mineral Workings (Offshore Installations) Act 1971. By section 11(2) of the Act of 1971 there is no civil liability for breach of statutory duty under the Act or the Regulations except for personal injury. For reasons which will emerge later in this judgment it is not necessary to consider the nature of the breaches of statutory duty.

E  The plaintiffs claimed reimbursement from the defendants under an indemnity clause in the agreement of 7 June 1988. The question was whether, on the proper construction of the agreement, the plaintiffs were entitled to an indemnity. On facts assumed to be correct the matter came before Hobhouse J. On his construction of the agreement the judge dismissed the claim. By their appeal the plaintiffs challenge those parts of the judgment where the judge concluded that the plaintiffs had no right to
F  a contractual indemnity.

*The agreement*

It is now necessary to describe the material provisions of the order. The parties used a standard form document of the plaintiffs, which may
G  only be used for relatively small orders, viz. below a figure of £25,000. The order constituted an agreement for the provision by the defendants to the plaintiffs of one service engineer for a period of about 10 days to overhaul the valves. The defendants' remuneration was to be between £4,250 (the estimate) or £5,280 (the maximum). The agreement was a small (but important) facet in the huge operation of an offshore platform,
H  involving many personnel of the plaintiffs and other contractors and many functions. Most of the terms of the agreement cast no light on the problem before us. Only those provisions which are conceivably relevant need be mentioned. The only material typed provision is clause 5 which provides that the service engineer when arriving on board should submit a copy of the defendants' certificate of public and employers' liability insurance. That provision is mirrored by article 11 in the printed articles, which reads as follows:

> "The contractor undertakes to procure and maintain the following insurance cover in respect of the work (a) Employer's liability and worker's compensation insurance to comply with the statutory requirements. (b) General public liability insurance (including automobile if applicable) in respect of the persons and property of third parties with cover in an amount of not less than £500,000 for each incident arising out of the performance of the work. The contractor is asked to furnish the company with written conditions of insurance required herein."

Article 4 of the typed clauses is also relevant. It provides as follows:

> "The contractor shall be an independent contractor and neither the contractor nor any of his employees, agents or servants shall be the employees agents or servants of the company."

Article 6 provides that the company, other contractors and subcontractors may be working at the site during the performance of the agreement of 7 June 1988.

That brings me to the critical indemnity provisions which are contained in article 10. It reads as follows:

> "(a) Non compliance with laws. The contractor shall comply, and cause its employees to comply with all laws, ordinances, rules, regulations and orders directly or indirectly applicable to the work, including but not limited to the labour employed on the work, the safety and security of the work, and the preservation and public health and safety. The contractor shall indemnify and hold harmless the company and its affiliates against all liability arising from non-compliance with any such provisions. (b) Company's and contractor's employees and property. Each party hereto shall indemnify, defend and hold harmless the other, provided that the other party has acted in good faith, from and against any claim, demand, cause of action, loss, expense or liability (including the cost of litigation) arising by reason of any injury to or death of an employee, or damage, loss or destruction of any property, of the indemnifying party, resulting from or in any way connected with the performance of this order. (c) Third party employees and property. The contractor shall indemnify, defend and hold harmless the company, provided that the company has acted in good faith, from and against any claim, demand, cause of action, loss, expense or liability (including the cost of litigation) arising by reason of any injury, death, property damage, loss or destruction (other than such as is the subject of a company indemnity to contractor under article 10(b) above) resulting from or in any way connected with the performance of this order, except that the contractors indemnity pursuant to this article 10(c) shall apply only up to an amount of £500,000 per occurrence."

Article 12 provides as follows:

> "Notwithstanding any other provision of this order, in no event shall either the contractor or the company be liable to the other for any indirect or consequential losses suffered, including but not limited to, loss of use, loss of profits, loss of production or business interruption."

Case 1:18-md-02865-LAK   Document 305-13   Filed 03/30/20   Page 6 of 14

A  These are the provisions of the agreement which are conceivably relevant to the problems before us.

It is necessary, however, to refer to the choice of law clause. Article 17 reads as follows:

B
> "This order shall be governed by, construed and interpreted (according) to either English or Scots law, the choice to depend on the country with which the contractor is most closely connected, unless the contractor is connected with neither, in which case the governing law shall be English law. The parties agree to submission to the jurisdiction of the courts of the legal system governing this order."

The parties agreed that English law governs the order.

C  *The issues*

The plaintiffs brought their claim for an indemnity under article 10(b) of the agreement. The claim under that provision gave rise to three questions of construction. (1) Does the clause provide the plaintiffs with an indemnity where the liability in respect of which indemnity is sought arose by reason of the negligence of the plaintiffs or their employees? 
D  (2) If the answer to (1) is "No," does the clause provide the plaintiffs with an indemnity where the liability in respect of which an indemnity is sought was incurred by reason of the breach of statutory duty by the plaintiffs or their employees as well as their negligence? (3) Assuming that the answer to (1) and/or (2) was "Yes," did the death of Mr. Quinn "result from" or was it "in any way connected with" the performance of the agreement?

E  The judge decided the first and the second questions against the plaintiffs. That meant that the claim to an indemnity failed. The judge did, however, deal with the third question. He decided it in favour of the plaintiffs. On this appeal the plaintiffs challenge the decisions of the judge on the first and second questions. The defendants challenge the judge's decision on the third question.

F  *The scheme of article 10*

It will be useful to consider the scheme of article 10 before I turn to the three principal questions. Article 10(a) imposes obligations only on the contractor (the defendants). It provides that the contractor shall comply with all statutory obligations applicable to the work. It creates a contractual right in favour of the company (the plaintiffs) for it to be indemnified against all liability arising from non-compliance by the 
G  contractor with statutory duties.

Article 10(b) is a bilateral provision: it creates reciprocal rights and duties. The rationale of the clause is that, in each case, the liability shall be borne by the owner of the property or the employer of the person killed or injured. While it is helpful to bear in mind this objective, it does not by itself answer the first or second questions. The question still 
H  remains: what is the scope of article 10(b)? It is further important to observe that article 10(b), whatever its scope may be, allocates and distributes risks. It does so in two ways. In relation to property, it operates as an exception clause: it provides a defence to a claim by the other party. In relation to death or personal injury, it gives a cause of action for a contractual indemnity against the other party.

Article 10(c) is unilateral in effect. It imposes an obligation on the contractor, subject to a limit of £500,000 per occurrence, to indemnify the

company. It is headed "Third party employers or property." That is the intended subject matter of article 10(c).

*The first question: does article 10(b) cover negligence?*

The question before us is not to divine what the parties in fact intended. Our task is to determine what the words of article 10(b) mean. The plaintiffs argue that the language of article 10(b) covers negligence. The judge accepted the defendants' submission to a contrary effect. Our task is to decide which is the best interpretation.

The starting point must be the language of article 10(b). It contains no express reference to negligence. It contains no words synonymous with negligence, or words which in the case law has acquired a status equivalent to a reference to negligence: *Canada Steamship Lines Ltd. v. The King* [1952] A.C. 192, 208. Mr. Aikens said that the words "including the cost of litigation" in article 10(b) by itself indicated that the indemnity covered cases where negligence was alleged but none had occurred. I consider that Mr. Aikens attributes greater force to this subsidiary provision than is justified. Like the judge I reject this contention. Article 10(b) also does not contain any reference to a breach of statutory duty. The only express qualification of the potentially extravagant scope of article 10(b) are those flowing from the words "provided that the other party has acted in good faith" and the words of causation at the end of article 10(b) restricting its scope to liability, and so forth, "resulting from or in any way connected with the performance of this order." The concluding words of article 10(b) are an obvious restriction and tell us nothing about the first question. The judge held that the words "provided that the other party has acted in good faith" refer not to the origin of the liability but to the handling of any claim, the incurring of expense and the acceptance of liability. I agree. But even if that were wrong, this provision falls markedly short of a clear indication that the clause was intended to cover negligence. Since Mr. Aikens, who appeared on behalf of the plaintiffs, did not argue that the words in question were apt to indicate that negligence is covered, I need not pursue the point.

Article 10(b) is a truly elliptical provision. Naturally one turns to parts (a) and (c) of the clause to ascertain whether these provisions throw light on the meaning of (b). Mr. Aikens sought comfort in these provisions. He emphasised the wide wording of (a) and (c). That is so. But (a) deals specifically with the contractor's duty to comply with "laws," i.e. statutory duties. That cannot help in construing (b). For my part I cannot see that (c) helps. While (b) is intended to deal with the "Company's and the contractor's employees and property," as the heading indicates, (c) is referable to "Third party employees and property," as the heading indicates. Mr. Aikens pointed out that article 10(c) contains no reference to third parties in the text of the provision. But the heading of 10(c), as contrasted with the heading and text of 10(b), is relevant. I would hold that the intended operation of article 10(c) is as indicated by the heading. The judge held that the resort to the other two parts of article 10 did not ultimately assist on the question whether article 10(b) covers negligence. For my part I am also pursuaded that there is no meaningful assistance to be gained either way from article 10(a) and (c) on the question before us.

That leaves the question whether in construing article 10(b) assistance can be gained from other parts of the agreement. In argument two further

A  clauses were explored. Article 11 imposes a contractual obligation to insure on the contractor only. It is sometimes right to take into account an obligation to insure in construing an indemnity or exemption clause. That is so because that context may reveal an allocation of risks which are insurable and expected to be insured. On reflection Mr. Aikens conceded that article 11 cannot assist his interpretation. I agree. Article 12 is a clause providing for an exclusion of liability for consequential loss in
B  favour of both parties. Even if it is assumed that this provision is apt to cover negligence, it does not assist. It is a limitation of liability provision with its own special wording. And the law is more indulgent towards such clauses than towards exemption clauses and indemnities: *Ailsa Craig Fishing Co. Ltd. v. Malvern Fishing Co. Ltd.* [1983] 1 W.L.R. 964: *George Mitchell (Chesterhall) Ltd. v. Finney Lock Seeds Ltd.* [1983] 2 A.C. 803.
C  Since Mr. Aikens did not rely on article 12 I need not pursue the point.

That brings me to the approach of our law to exemption clauses and indemnities. The classic statement of the duty of a court is that of Lord Morton of Henryton in *Canada Steamship Lines Ltd. v. The King* [1952] A.C. 192. Lord Morton said, at p. 208:

> "(1) If the clause contains language which expressly exempts the person in whose favour it is made (hereafter called 'the proferens')
D  from the consequence of the negligence of his own servants, effect must be given to that provision.... (2) If there is no express reference to negligence, the court must consider whether the words used are wide enough, in their ordinary meaning, to cover negligence on the part of the servants of the proferens.... (3) If the words used are wide enough for the above purpose, the court must then consider
E  whether 'the head of damage may be based on some ground other than that of negligence,' to quote again Lord Greene in [*Aldersdale v. Hendon Laundry Ltd.* [1945] K.B. 189]. The 'other ground' must not be so fanciful or remote that the proferens cannot be supposed to have desired protection against it; but subject to this qualification, which is no doubt to be implied from Lord Greene's words, the existence of a possible head of damage other than that of negligence
F  is fatal to the proferens even if the words used are prima facie wide enough to cover negligence on the part of his servants."

These propositions were, of course, formulated in an opinion of the Judicial Committee of the Privy Council in a Canadian appeal. They correctly state the law of England, and were indeed applied by the House of Lords in *Smith v. South Wales Switchgear Co. Ltd.* [1978] 1 W.L.R.
G  165. Mr. Aikens does not demur. But he asked us to bear in mind the judgments in the Court of Appeal in *Lamport & Holt Lines Ltd. v. Coubro & Scrutton (M. & I.) Ltd. (The Raphael)* [1982] 2 Lloyd's Rep. 42 where the Court of Appeal emphasised the need always to have regard to the particular wording of each contract. Mr. Aikens particularly emphasised the following passage in the judgment of May L.J., at p. 50:

H  > "With respect to both sides in this appeal, I think that this is an over-legalistic approach to this problem. When two commercial concerns contract with one another, they do not, neither should they be deemed to, concern themselves with the legal subtleties of the law of private nuisance or the like. They in fact approach the problem, and so also should the courts, with a much broader brush. They consider, or must be deemed to have in mind, their respective responsibilities one to another more from a factual standpoint than

from a legalistic one. In seeking to apply Lord Morton's third test, we should not ask now whether there is or might be a technical alternative head of legal liability which the relevant exemption clause might cover and, if there is, immediately construe the clause as inapplicable to negligence. We should look at the facts and realities of the situation as they did or must be deemed to have presented themselves to the contracting parties at the time the contract was made, and ask what potential liabilities the one to the other did the parties apply their minds, or must they be deemed to have done so."

For my part I am not convinced that these observations add much to what was inherent in what Lord Morton said, But I willingly accept May L.J.'s gloss on Lord Morton's third test. Ultimately, the third test is not a rigid or mechanical rule. It simply is an aid in the process of construction. And the ordinary meaning of the words in their contractual setting is the dominant factor.

But this citation of *The Raphael* does not assist in the present case. In article 10(b) there is no reference to negligence nor words to a like effect. It is plain that neither the other parts of article 10 nor the rest of the agreement assist the plaintiffs' interpretation. That brings me back to article 10(b). Given that the words of article 10(b), although not indicative of an intent to cover negligence, are nevertheless wide enough to cover negligence of the parties, Lord Morton's second proposition is satisfied. Lord Morton's third proposition must therefore be considered. The question is whether liability may be based on some other ground than negligence. The answer is plainly "Yes." But that leaves the question whether such other heads of liability were fanciful or remote. The judge dealt with this matter [1994] 1 W.L.R. 221, 228:

> "In article 10(b) there is no express reference to negligence; therefore there is no express provision that the right to an indemnity should cover a liability arising out of negligence of the party seeking the indemnity. However, the words used are wide enough potentially to cover a liability arising from negligence. The words are 'any claim ... of liability.' Clearly such liability could, and will often be, a liability which has arisen from the negligence of the party liable or of those for whom he is responsible. But the liability need not arise from such negligence. It could arise as a result of a breach of a statutory duty which has occurred without any negligence of the party liable or his servants. This could be the situation with regard to both the company and the contractor; both are subject to statutory duties which could give rise to civil liabilities for death or personal injury. The examples are not fanciful; in an environment such as an offshore platform in an oil field where a strict statutory regime operates, the possibility of a strict liability arising is a real one and is directly within the contemplation of this contract. Accordingly it is clear that article 10(b), like (a) and (c), is capable of applying to situations where there has been no actual negligence of the relevant party or his own servants. This could have been the situation in the present case. The breaches of the regulations could in fact have been solely those of the employees of independent contractors working on the platform. In fact the disaster was also a result of the actual negligence of one of the plaintiffs' own servants."

Mr. Aikens has unambiguously conceded that the other heads of strict liability to which the judge referred are not in any way fanciful or remote.

Case 1:18-md-02865-LAK    Document 305-13    Filed 03/30/20    Page 10 of 14

The Weekly Law Reports 18 November 1994

1523

1 W.L.R.		Caledonia Ltd. v. Orbit Valve Co. (C.A.)		Steyn L.J.

A  It follows that the Lord Morton's third proposition is applicable. Reading article 10(b) against this well established aid to construction, it seems to me that article 10(b) should be construed as not covering the consequences of the negligence of the parties and their servants.

Mr. Aikens argued that the fact that article 10(b) contains reciprocal indemnities and exceptions takes it outside the scope of Lord Morton's third proposition. Rightly Mr. Aikens said that the rationale of this aid to construction, which is equally applicable to indemnities and exceptions, is the prima facie implausibility of a party agreeing to release the other from liability for negligence or assuming liability for the consequences of the other's negligence. The argument is that, if the reason for the aid to interpretation ceases, the "rule" ceases. If the premise of the argument was right, I would accept Mr. Aikens's argument. But in my judgment even in the case of a bilateral clause, such as the one before us, it is prima facie implausible that the parties would wish to release one another from the consequences of the other's negligence and agree to indemnify the other in respect of such consequences. The point is a matter of first impression and not capable of elaboration. But I would hold that Lord Morton's third proposition equally applies to a bilateral clause such as article 10(b).

If one assents to Mr. Aikens's invitation, relying on May L.J.'s dictum in *The Raphael* [1982] 2 Lloyd's Rep. 42, to have regard to the realities of the situation as they must have been in the minds of the parties at the time of contracting, the position becomes even clearer. While it is true that reciprocity is inherent in article 10(b) it does not follow that, if article 10(b) is interpreted to cover negligence, there is equal treatment of the parties. Leaving aside other contractors' employees, we know that the defendants had one engineer on board while the plaintiffs had 38 employees on board. The task of the defendants' one employee was limited to overhauling some 13 valves. By contrast the functions of the plaintiffs' employees were multifarious. As a matter of common sense the anticipated risk of death or injury through the negligence of the defendants' employee must have been of a lesser order than the risk of death or injury through the negligence of the plaintiffs' employees. There is either an inequality or imbalance inherent in the plaintiffs' interpretation, which is therefore prima facie implausible, or at the very least it has not been demonstrated that there is not such an implausibility.

There is one further matter to be considered. The third "rule" of Lord Morton is horn-book construction law. The printed conditions in the agreement in this case were plainly drafted by a lawyer. Why was an express reference to negligence not inserted? Similar questions have been posed on a number of occasions. Why do draftsmen not take note of the impact of a clear and consistent line of judicial decisions? For my part I have no doubt that the draftsman on the underground to whom such a question was addressed would say "one does not want to frighten off one or other of the parties." Omissions of express reference to negligence tend to be deliberate.

Ultimately, the only material question is the meaning of the words in article 10(b) read in the context of well established construction law. Taking into account the very general words of article 10(b), I am satisfied that the judge came to the right conclusion on the first question.

*The second question: does article 10(b) cover breach of a statutory duty even if there is negligence?*

  Mr. Aikens argued at first instance, and on this appeal, that since article 10(b) is wide enough to cover the plaintiffs' breaches of statutory duties it followed that the indemnity is applicable. He said that all that mattered was that the plaintiffs were liable for breaches of statutory duties. He said it was irrelevant that they were also liable in negligence.

  The judge did not accept this argument. He said that the second question was closely related to the first. He then observed, at pp. 231–232:

  "The question is one of construction but is not one which derives much assistance from a detailed analysis of the language of article 10(b). That clause makes no reference to statutory duties or to negligence. The question which I have to consider arises from the rules of construction which I have to apply to that clause and the principles upon which those rules of construction are based.
  "I consider that the plaintiff's arguments cannot be accepted. Where there are concurrent causes, each cause is a cause of the consequent event. If the event would have occurred in the absence of a particular fault, that fault is not a cause of the event. Accordingly, it is not correct to say in the present case that the plaintiffs were liable in respect of the death of Mr. Quinn because of the breaches of statutory duty; they were liable because of the breaches of statutory duty *and* the negligence of their servant. It was the concurrent effect of both those causes that gave rise to the death of Mr. Quinn and without either of those causes the death would not have occurred and the plaintiffs would not have been liable. Therefore the correct question remains whether the plaintiffs have a right to an indemnity from the defendants in respect of a liability of which a cause was the negligence of one of their servants. It is still necessary to ask whether, as a matter of the construction of the clause, it does cover such a liability.
  "For the purposes of considering the first question I have already quoted from judgments which state the principle to be applied. The principle is that in the absence of clear words the parties to a contract are not to be taken to have intended that an exemption or indemnity clause should apply to the consequences of a party's negligence. Applying that principle and adopting a correct understanding of causation, the parties to a contract such as that with which I am concerned should not be taken to have intended that a party whose servant has been negligent should be entitled to an exemption or an indemnity although there has also been, as a concurrent cause of the relevant loss, a breach of a strict statutory duty. The principle still applies."

I share the puzzlement of counsel on both sides about some of the observations of the judge concerning causation, notably in the third sentence of the second paragraph which I have quoted.

  I agree with the judge that on the supposition that article 10(b) does not apply to negligence, there is still a question of interpretation to be addressed, namely whether, despite their negligence, the plaintiffs are nevertheless entitled to an indemnity by the defendants. I further agree that the judge answered that question correctly. I would, however, express my reasons for that conclusion somewhat differently.

The Weekly Law Reports 18 November 1994

1525

1 W.L.R. Caledonia Ltd. v. Orbit Valve Co. (C.A.) Steyn L.J.

A   I start with the question of causation. This aspect must be approached on the basis that the facts set out in the points of claim and in the affidavit of Mr. Christopher Sprague (the plaintiffs' solicitor) are assumed to be correct. That is how the matter came before the judge, and that is how it was placed before us. On those assumed facts we are not concerned with the notions of causa sine qua non or other abstruse theories of causation.

B   The law is concerned with practical affairs and takes a common sense view. On the assumed facts there were two concurrent causes, each of which was in the eye of the law effective to cause the event which led to Mr. Quinn's death. The plaintiffs' negligence was an effective cause of Mr. Quinn's death and the plaintiffs' breaches of statutory duty were also an effective cause of Mr. Quinn's death.

C   That brings me directly to the issue of construction. It seems to me right to approach the interpretation of article 10(b) not in a technical way but in the way in which the commercial parties to the agreement would probably have approached it. The observations of Lord Diplock in *Photo Production Ltd. v. Securicor Transport Ltd.* [1980] A.C. 827, 851F–G, encourage me to think that such an approach to the construction of article 10(b) is realistic. And the supposition is that article 10(b) does not apply

D   to negligence. Given this premise it seems realistic to view article 10(b), operating as it does by way of reciprocal exceptions and indemnities, as an agreed distribution or allocation of risks. The rationale was that each party would bear the risk in respect of his own property and employees. To the extent that they released each other from liability, they thereby contractually assumed the risk. But article 10(b) should be construed as

E   containing a reservation of each party's right to sue the other in negligence, and a correlative agreement that the indemnities would not avail either if so sued in negligence. Properly construed article 10(b) provides that each party shall bear and assume the risk of his own negligence. If the approach I have adopted is correct, as I believe it is, the consequence is that article 10(b) should be construed as providing that the indemnities are not

F   applicable if the event in question has been caused not only by a party's breach of statutory duty but also by his negligence. The short point is that the plaintiffs have contractually assumed the risk of their own negligence and cannot seek to avoid the consequences of that assumption of risk by seeking to rely on a breach of statutory duty. If it were necessary to do so, I would base my view on a constructional implication in article 10(b):

G   see *Gillespie Bros. & Co. Ltd. v. Roy Bowles Transport Ltd.* [1973] Q.B. 400, 420F–G, per Buckley L.J. But I consider that the better view is that it arises as a matter of construction pure and simple. Mr. Aikens said that the plaintiffs could have sued only on the breach of statutory duty. But the point is one of substance. The defendants were entitled to raise it by way of defence as they have in fact done. As a matter of analysis I

H   therefore have come to the conclusion that the judge answered the second question correctly.

But I would add that this interpretation also better matches the reasonable expectations of the parties than the somewhat technical approach of the plaintiffs. Given that article 10(b) must be construed as not covering negligence, the judge's interpretation is in my view the more reasonable interpretation. After all, it is inherently improbable even in a

bilateral clause such as article 10(b) that a party would be willing to assume a risk of loss caused by the negligence of the other, notably when there is probably an imbalance and inequality in the risks of negligence by the one employee of the defendants and the many employees of the defendants.

In coming to these conclusions I have not lost sight of the fact that Mr. Aikens relied strongly on a decision of the Inner House of the Court of Session in *Nelson v. Atlantic Power and Gas Ltd.* (unreported), 22 October 1992. The pursuer sustained personal injury on an oil rig. He sued Amoco and Atlantic. Amoco admitted liability. An agreement between Amoco and Atlantic contained reciprocal indemnities between Amoco and Atlantic in very similar terms to article 10(b). In giving the judgment of the court Lord Murray said that Atlantic argued that the indemnity covered all breaches of statutory duty unless there was concurrent negligence. But Lord Murray recited that Atlantic accepted that the indemnity applied to a breach of statutory duty. Lord Murray said:

> "Starting with the construction of the clause itself, counsel for Amoco presented a short, incisive argument, not focused before the Lord Ordinary, based upon Atlantic's concessions in this case that the indemnity in clause 2.3 did apply to breach of statutory duty by Amoco and that their breach of statutory duty was a ground on which the pursuer's action had been settled. On a proper construction of the wording of the clause, it was said all that was required to bring the indemnity into play was loss, injury and damage caused to some extent by Amoco's breach of statutory duty. It was conceded that this had occurred, so the indemnity must apply. That there might be a concurrent ground of liability, namely, negligence at common law, was strictly irrelevant. It seemed to us that counsel for Atlantic had no very clear answer to this line of attack except that, for this consequence to follow, any breach of statutory duty had to be negligence-free, which was said to be excluded by the unqualified admission of liability of Amoco in the joint minute. We have difficulty in discerning an intelligible basis for importing this restriction when Atlantic accepts that, if the admission by Amoco had been that they admitted their breach of statutory duty, the indemnity would have applied. In that eventuality negligence would appear to have no relevance one way or the other. We conclude that Amoco's short argument is sound and that effect should be given to it. If so, the reclaiming motion fails at the first hurdle and there is strictly no need to pursue the contentions further."

The value of these observations is greatly undermined in an English court by the fact that surprisingly the very issue, which I have been considering, was conceded by Atlantic. As a result Lord Murray never had to consider the question of interpretation whether the indemnity in truth applies to a breach of statutory duty. In any event, if it were necessary, I would respectfully express disagreement with the tenor of Lord Murray's observations.

Mr. Aikens also relied on obiter dictum of Lord Fraser of Tullybelton in the *South Wales Switchgear* case [1978] 1 W.L.R. 165, 175. For the

A   reasons given by the judge in his reported judgment I do not consider that Lord Fraser's observations assist: [1994] 1 W.L.R. 221, 231–232.

It follows that I would reject the plaintiffs' submissions on the second question.

*The third question: did Mr. Quinn's death "result from" or was it "in any way connected with" the performance of the agreement?*

B   Mr. Hunter, who appeared for the defendants, submitted that the word "performance" in the context of the concluding words of article 10(b), viz. "resulting from or in any way connected with the performance of this order," refers to work done under the agreement. Accordingly, on his construction, only if Mr. Quinn's death had resulted from his actual work could the incident have come within the scope of the agreement. In my
C   view the answer to his submission is provided by the very wide words of article 10(b). It is an agreed fact, as Beldam L.J. pointed out in the course of the argument, that the parties contemplated that Mr. Quinn would be accommodated on the platform during the course of the work over some 10 days. It does not matter that he was off duty when the explosion and fire occurred. He had to live on the platform while doing the work. When the explosions and fire occurred Mr. Quinn was in every relevant
D   sense of the word on board the platform "in connection with" the performance of the order. That is the end of the matter. But I am also persuaded that Mr. Quinn's death "resulted from" the fact that he was on the platform to perform the order, i.e. the agreement. I agree with the judge's further observations on this point.

E   *Conclusion*

In view of my conclusions on the first and second questions it follows that I would dismiss the appeal.

BELDAM L.J.   I agree.

F   NEILL L.J.   I also agree.

*Appeal dismissed.*

Solicitors: *Ince & Co.; Elborne Mitchell.*

M. F.

G