UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND LITIGATION<br><br>This document relates to: 1:18-cv-10100-LAK | MASTER DOCKET<br><br>Case No.: 1:18-md-02865-LAK |
| NEWSONG FELLOWSHIP CHURCH 401(K) PLAN and ALEXANDER JAMIE MITCHELL III,<br><br>        Third-Party Plaintiffs,<br><br>  -against-<br><br>ED&F MAN CAPITAL MARKETS, LTD.,<br><br>        Third-Party Defendant. | |

**AMENDED COUNTERCLAIMS OF THIRD-PARTY DEFENDANT
<u>ED&F MAN CAPITAL MARKETS, LTD.</u>**

Third-Party Defendant ED&F Man Capital Markets, Ltd.("ED&F"), by and through its attorneys, Binder & Schwartz LLP, and pursuant to Rule 15 of the Federal Rules of Civil Procedure, submits its Amended Counterclaims against Third-Party Plaintiff Newsong Fellowship Church 401(k) Plan (the "Plan"). ED&F's Answer and Affirmative Defenses are not hereby amended.

## FIRST COUNTERCLAIM AGAINST THIRD-PARTY PLAINTIFF
## NEWSONG FELLOWSHIP CHURCH 401(K) PLAN
**(Indemnification)**

1. In June 2012, the Plan and ED&F entered into a Custody Agreement (the "Agreement") that established ED&F's contractual obligations as the Custodian for the Plan. The Agreement set forth the terms and conditions of business between ED&F as the Custodian and Newsong Fellowship Church 401(K) Plan as the Client.

2. The Plan's Custody Agreement with ED&F is attached to the Third-Party Complaint (MDL Dkt. No. 225) as Exhibit A.

3. Pursuant to the binding terms of the Agreement, the Plan maintained "responsibility for the selection, acquisition and disposal of the Client Property." (Ex. A, at 11(m)).

4. Client Property is defined as (i) "any securities (including evidence thereof, evidence of title thereto and all rights in respect thereof) deposited or transferred by the Client or on the Client's behalf to the Custodian or a Sub-Custodian or collected by the Custodian or a Sub-Custodian for the Client's account"; and (ii) all "cash in any currency arising out of or in connection with the Client Securities and any amounts standing to the credit of the Client Cash Account." (*Id*. at 1.1)

5. ED&F and the Plan explicitly agreed that ED&F "does not act as manager or investment adviser to" the Plan. (*Id*. at 11(m)).

6. In accordance with the parties' respective obligations under the Agreement, the Plan conceived, structured, and directed each of the Danish securities transactions ("Danish Transactions") that ED&F executed on behalf of the Plan.

7. The Plan designated its Authorized Agent (Acer Investment Group, LLC) as its attorney-in-fact with respect to its trading account[s] with ED&F pursuant to a Power of Attorney

dated March 23, 2012. A true and correct copy of the Power of Attorney is annexed hereto as Exhibit 1.

8. The Plan acknowledges in the Power of Attorney, among other things, that ED&F "shall be entitled to rely upon the instructions, orders and requests provided to it by [the Authorized Agent] as if given or made by [the Plan]." Power of Attorney, Ex. 1 at section 1.3(b).

9. Accordingly, all acts by the Authorized Agent as agent and attorney-in-fact on behalf of the Plan pursuant to the management of the Plan's ED&F brokerage account are imputed to the Plan as principal.

10. In or about March 2012, Stacey Kaminer ("Kaminer"), the principal for the Authorized Agent and authorized signatory for the Plan, participated in a conference call with ED&F to discuss "onboarding" several clients to ED&F for brokerage services, including the Plan. In that meeting, Kaminer represented that she was preparing the forms to open the accounts on behalf of the Plan.

11. In the same phone conference, ED&F and Kaminer discussed potential markets, and Kaminer agreed to send over indicative trade schedules and flow diagrams of various trade structures for the purpose of enacting trades with ED&F.

12. Kaminer subsequently sent the trading structures that would be the basis for the Danish Transactions to ED&F.

13. Pursuant to the trading structures sent by Kaminer, ED&F was to pay the Authorized Agent a significant fee in connection with the transactions.

14. At all relevant times, the Plan, acting through its Authorized Agent, was aware that ED&F would conduct transactions through its inter-dealer broker, Volcafe, as this was explicitly acknowledged in the communications between ED&F and the Authorized Agent.

15. Far from being "solicited" by ED&F for the purposes of engaging in trades, it was the Plan that approached ED&F, having been brought to ED&F by its Authorized Agent.

16. Upon information and belief, the Plan's Authorized Agent and/or Kaminer originated the trading structures used by ED&F in the Danish Transactions on behalf of their client, the Plan.

17. The Plan, through its Authorized Agent, originated, structured, and communicated the trading structures used in the Danish Transactions to ED&F.

18. ED&F executed the Danish Transactions at the specific direction of the Plan through its Authorized Agent.

19. The Plan, through their authorized agent, repeatedly notified ED&F of its interest in acquiring Danish securities, and for several transactions specifically requested specific numbers of shares, asking ED&F to provide liquidity for the equity purchase.

20. Having been made aware of the Plan's consistent trading strategy and interest in Danish securities, at times ED&F would notify the Plan through its Authorized Agent if there was liquidity in a Danish stock.

21. At all relevant times and for each Danish Transaction, ED&F only executed the trades at the specific request of the Plan, and in accordance with the trading structures it supplied.

22. Once the trades were executed at the direction and with the knowledge of the Plan, the Plan, through its Authorized Agent, specifically requested that ED&F send the Tax Vouchers from the Danish Transactions to Goal for the reclaim applications.

23. Pursuant to the Agreement, the Plan agreed to indemnify ED&F "fully and effectively [] against each liability, loss and cost which may be suffered or incurred by" ED&F in

connection with "the Client Property, this Agreement, or the performance of [ED&F's] obligations under this Agreement." (*Id*. at 16(a)(i)).

24. The Plan also agreed to indemnify ED&F "fully and effectively" against "any Tax for which [ED&F] is or may be liable or accountable in connection with the Client Property, this Agreement or the performance of [ED&F's] obligations under this Agreement (including without limitation the purchase and/or sale of Client Securities, the collection and/or realisation of coupons, dividends, interest or other payments, the receipt of or entitlement to receive any income, and the Custodian acting as or being deemed to be a trustee, branch, or agent of the Client) provided that this indemnity shall not extend to Tax on or attributable to any Fees." (*Id*. at 16(a)(ii)).

25. ED&F has fully satisfied all of its obligations under the Agreement.

26. ED&F's Terms and Conditions of Business (the "Terms and Conditions") set out contractual terms governing the relationship between ED&F and the Plan, subject, where relevant, to any transaction-specific documentation. A true and correct copy of the Terms and Conditions is annexed hereto as Exhibit 2.

27. The Plan agreed to be bound by, among other things, the Terms and Conditions. True and correct copies of the letter agreement executed by the Plan is annexed hereto as Exhibit 3.

28. Pursuant to the Terms and Conditions, the Plan agreed, among other things, to indemnify ED&F against "any loss, liability, costs and expenses" incurred by ED&F "either directly or indirectly in the due performance of [ED&F's] obligations" under the Terms and Conditions.

29.     ED&F is entitled to complete indemnification by the Plan pursuant to the Agreement and/or the Terms and Conditions, including, without limitation, for all liabilities, losses and/or costs suffered or incurred in connection with (i) the Agreement and/or the Terms and Conditions; (ii) the performance of ED&F's obligations under the Agreement and/or the Terms and Conditions; (iii) any tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions; and/or (iv) any action or proceeding—whether in this jurisdiction, in the English Action,[1] or in any other proceedings—related to the Agreement, the Terms and Conditions, the performance of ED&F's obligations under the Agreement and/or the Terms and Conditions, and/or any tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions.

## JURY DEMAND

ED&F demands a jury trial on all issues so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, Third-Party Defendant ED&F Man Capital Markets, Ltd. respectfully requests that this Court enter judgment against Third-Party Plaintiffs Newsong Fellowship Church 401(K) Plan and Alexander Jamie Mitchell III (collectively, the "Third-Party Plaintiffs"), as follows:

i.      Dismissing the Third-Party Complaint as against ED&F in its entirety;

ii.     Judgment in favor of ED&F against the Third-Party Plaintiffs;

iii.    Judgment ordering full and complete indemnification of ED&F;

iv.     An award of reasonable attorneys' fees and costs; and

---

[1] The "English Action" is the case titled *Skatteforvaltningen v. Solo Capital Partners LLP*, Nos. CL-2018-000297, CL-2018-000404 & CL-2018-000590 (2018), in the High Court of Justice, Business and Property Courts of England and Wales.

6

  v.  Such other and further relief as the Court deems just and appropriate.

Dated:  New York, New York
     April 20, 2020

              Respectfully submitted,

            **BINDER & SCHWARTZ LLP**

         By: /s/ Neil S. Binder

           Neil S. Binder
           Binder & Schwartz LLP
           366 Madison Avenue, 6th Floor
           New York, NY 10017
           Telephone: 212-510-7031
           Facsimile: 212-510-7299
           nbinder@binderschwartz.com

           *Attorneys for Third-Party Defendant / Third-Party Counter Claimant ED&F Man Capital Markets, Ltd.*