UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND LITIGATION<br><br>This document relates to: 1:18-cv-09797-LAK | MASTER DOCKET<br><br>Case No.: 1:18-md-02865-LAK |
| DW CONSTRUCTION, INC. RETIREMENT PLAN, KAMCO INVESTMENTS, INC. PENSION PLAN, KAMCO LP PROFIT SHARING PENSION PLAN, LINDEN ASSOCIATES DEFINED BENEFIT PLAN, MOIRA ASSOCIATES DEFINED BENEFIT PLAN, RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN, AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN, STACEY KAMINER, JOAN SCHULMAN, and DAVID SCHULMAN,<br><br>               Third-Party Plaintiffs,<br><br>    -against-<br><br>ED&F MAN CAPITAL MARKETS LTD.<br><br>               Third-Party Defendant. | |

**AMENDED COUNTERCLAIMS OF THIRD-PARTY DEFENDANT
<u>ED&F MAN CAPITAL MARKETS, LTD.</u>**

Third-Party Defendant ED&F Man Capital Markets, Ltd.("ED&F"), by and through its

attorneys, Binder & Schwartz LLP, and pursuant to Rule 15 of the Federal Rules of Civil

Procedure, submits its Amended Counterclaims against Third-Party Plaintiffs DW Construction,

Inc. Retirement Plan ("the DW Construction Plan"), Kamco Investments, Inc. Pension Plan ("the Kamco Investments Plan"), Kamco LP Profit Sharing Pension Plan ("the Kamco LP Plan"), Linden Associates Defined Benefit Plan ("the Linden Plan"), Moira Associates Defined Benefit Plan ("the Moira Plan"), Riverside Associates Defined Benefit Plan ("the Riverside Plan") and American Investment Group of New York, L.P. Pension Plan ("the AIG Plan") (collectively, the "Plans," and each a "Plan"). ED&F Man's Answer and Affirmative Defenses are not hereby amended.

### FIRST COUNTERCLAIM AGAINST THIRD-PARTY PLAINTIFFS DW CONSTRUCTION, INC. RETIREMENT PLAN, KAMCO INVESTMENTS, INC. PENSION PLAN, KAMPCO LP PROFIT SHARING PENSION PLAN, LINDEN ASSOCIATES DEFINED BENEFIT PLAN, MOIRA ASSOCIATES DEFINED BENEFIT PLAN, RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN, AND AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN
(Indemnification)

1. In June 2012, the Plans and ED&F entered into Custody Agreements (the "Agreements") that established ED&F's contractual obligations as the Custodian for each of the Plans. The Agreements set forth the terms and condition of business between ED&F as the Custodian and DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates Defined Benefit Plan, Riverside Associates Defined Benefit Plan, and American Investment Group of New York, L.P. Pension Plan as the Client.

2. The Plans' respective Custody Agreements with ED&F are attached to the Third-Party Complaint (MDL Dkt. No. 226) as Exhibits A through G.

3. Pursuant to the binding terms of the Agreements, the Plans maintained "responsibility for the selection, acquisition and disposal of the Client Property." (Exs. A-G, at 11(m)).

4. Client Property is defined as (i) "any securities (including evidence thereof, evidence of title thereto and all rights in respect thereof) deposited or transferred by the Client or on the Client's behalf to the Custodian or a Sub-Custodian or collected by the Custodian or a Sub-Custodian for the Client's account"; and (ii) all "cash in any currency arising out of or in connection with the Client Securities and any amounts standing to the credit of the Client Cash Account." (*Id.* at 1.1)

5. ED&F and the Plans explicitly agreed that ED&F "does not act as manager or investment adviser to" the Plans. (*Id.* at 11(m)).

6. In accordance with the parties' respective obligations under the Agreements, the Plans conceived, structured, and directed each of the Danish securities transactions (the "Danish Transactions") that ED&F executed on behalf of the Plans.

7. The Plans designated their Authorized Agent (Acer Investment Group, LLC) as their attorney-in-fact with respect to their trading account[s] with ED&F pursuant to Power of Attorney agreements. True and correct copies of the Power of Attorney for each respective Plan are annexed hereto as Exhibit 1.

8. The Plans acknowledge in their Powers of Attorney, among other things, that ED&F "shall be entitled to rely upon the instructions, orders and requests provided to it by [the Authorized Agent] as if given or made by [the Plan]." Power of Attorney, Exhibit 1 at section 1.3(b)

9. Accordingly, all acts by the Authorized Agent as agent and attorney-in-fact on behalf of the Plans pursuant to the management of the Plans' ED&F brokerage account are imputed to the Plans as principal.

10. In or about March 2012, Stacey Kaminer ("Kaminer"), the principal for the Authorized Agent and authorized signatory for the Plan, participated in a conference call with ED&F to discuss "onboarding" several clients to ED&F for brokerage services, including the Plan. In that meeting, Kaminer represented that she was preparing the forms to open the accounts on behalf of the Plan.

11. In the same phone conference, ED&F and Kaminer discussed potential markets, and Kaminer agreed to send over indicative trade schedules and flow diagrams of various trade structures for the purpose of enacting trades with ED&F.

12. Kaminer subsequently sent the trading structures that would be the basis for the Danish Transactions to ED&F.

13. Pursuant to the trading structures sent by Kaminer, ED&F was to pay the Authorized Agent a significant fee in connection with the transactions.

14. At all relevant times, the Plan, acting through its Authorized Agent, was aware that ED&F would conduct transactions through its inter-dealer broker, Volcafe, as this was explicitly acknowledged in the communications between ED&F and the Authorized Agent.

15. Far from being "solicited" by ED&F for the purposes of engaging in trades, it was the Plans that approached ED&F, having been brought to ED&F by their Authorized Agent.

16. Upon information and belief, the Plan's Authorized Agent and/or Kaminer originated the trading structures used by ED&F in the Danish Transactions on behalf of their client, the Plan.

17. The Plan, through its Authorized Agent, originated, structured, and communicated the trading structures used in the Danish Transactions to ED&F.

18. ED&F executed the Danish Transactions at the specific direction of the Plans through its Authorized Agent.

19. The Plans, through their authorized agent, repeatedly notified ED&F of its interest in acquiring Danish securities, and for several transactions specifically requested specific numbers of shares, asking ED&F to provide liquidity for the equity purchase.

20. Having been made aware of the Plans' consistent trading strategy and interest in Danish securities, at times ED&F would notify the Plans through their Authorized Agent if there was liquidity in a Danish stock.

21. At all relevant times and for each Danish Transaction, ED&F only executed the trades at the specific request of the Plan, and in accordance with the trading structures it supplied.

22. Once the trades were executed at the direction and with the knowledge of the Plans, the Plans, through their Authorized Agent, specifically requested that ED&F send the Tax Vouchers from the Danish Transactions to Goal for the reclaim applications.

23. Pursuant to the Agreements, the Plans agreed to indemnify ED&F "fully and effectively [] against each liability, loss and cost which may be suffered or incurred by" ED&F in connection with "the Client Property, this Agreement, or the performance of [ED&F's] obligations under this Agreement." (*Id*. at 16(a)(i)).

24. The Plans also agreed to indemnify ED&F "fully and effectively" against "any Tax for which [ED&F] is or may be liable or accountable in connection with the Client Property, this Agreement or the performance of [ED&F's] obligations under this Agreement (including without limitation the purchase and/or sale of Client Securities, the collection and/or realisation of coupons, dividends, interest or other payments, the receipt of or entitlement to receive any

income, and the Custodian acting as or being deemed to be a trustee, branch, or agent of the Client) provided that this indemnity shall not extend to Tax on or attributable to any Fees." (*Id.* at 16(a)(ii)).

25. ED&F has fully satisfied all of its obligations under the Agreements.

26. ED&F's Terms and Conditions of Business (the "Terms and Conditions") set out contractual terms governing the relationship between ED&F and the Plans, subject, where relevant, to any transaction-specific documentation. A true and correct copy of the Terms and Conditions is annexed hereto as Exhibit 2.

27. Each of the Plans agreed to be bound by, among other things, the Terms and Conditions. True and correct copies of letter agreements executed by each of the Plans are annexed hereto as Exhibit 3.

28. Pursuant to the Terms and Conditions, the Plans agreed, among other things, to indemnify ED&F Man against "any loss, liability, costs and expenses" incurred by ED&F Man "either directly or indirectly in the due performance of [ED&F Man's] obligations" under the Terms and Conditions.

29. ED&F is entitled to complete indemnification by the Plans pursuant to the Agreements and/or the Terms and Conditions, including, without limitation, for all liabilities, losses and/or costs suffered or incurred in connection with (i) the Agreements and/or the Terms and Conditions; (ii) the performance of ED&F's obligations under the Agreements and/or the Terms and Conditions; (iii) any tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions; and/or (iv) any action or proceeding—whether in this jurisdiction, in the English Action,[1] or in any other proceedings—related to the Agreements, the Terms and

---

[1] The "English Action" is the case titled *Skatteforvaltningen v. Solo Capital Partners LLP*, Nos. CL-2018-000297, CL-2018-000404 & CL-2018-000590 (2018), in the High Court of Justice, Business and Property Courts of England

6

Conditions, the performance of ED&F's obligations under the Agreements and/or the Terms and Conditions, and/or any tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions.

## **JURY DEMAND**

ED&F demands a jury trial on all issues so triable.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Third-Party Defendant ED&F Man Capital Markets Ltd. respectfully requests that this Court enter judgment against Third-Party Plaintiffs DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates Defined Benefit Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan and Stacey Kaminer, Joan Schulman, and David Schulman (collectively, the "Third-Party Plaintiffs"), as follows:

   i. Dismissing the Third-Party Complaint as against ED&F in its entirety;

   ii. Judgment in favor of ED&F against the Third-Party Plaintiffs;

   iii. Judgment ordering full and complete indemnification of ED&F;

   iv. An award of reasonable attorneys' fees and costs; and

   v. Such other and further relief as the Court deems just and appropriate.

---

and Wales.

Dated: New York, New York
April 20, 2020

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

By: /s/ Neil S. Binder

Neil S. Binder
Binder & Schwartz LLP
366 Madison Avenue, 6th Floor
New York, NY 10017
Telephone: 212-510-7031
Facsimile: 212-510-7299
nbinder@binderschwartz.com

*Attorneys for Third-Party Defendant / Third-Party Counter Claimant ED&F Man Capital Markets, Ltd.*