**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: All Cases. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR ISSUANCE OF A REQUEST FOR INTERNATIONAL JUDICIAL**
**ASSISTANCE TO OBTAIN EVIDENCE (LETTERS ROGATORY)**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (ALC)(JCF), 2014 WL 1285496
  (S.D.N.Y. Mar. 31, 2014) ..........................................................................................5

*Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557 (S.D.N.Y. 2013) .....................................5

*Elliott Assocs. v. Republic of Peru*, No. 96 CIV. 7916 (RWS), 1997 WL 436493
  (S.D.N.Y. Aug. 1, 1997) ..........................................................................................6

*Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433
  (S.D.N.Y. July 25, 2016) ..........................................................................................5

*Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co.*, 841 F. Supp. 2d 769
  (S.D.N.Y. 2012) ..................................................................................................5, 6

*In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011) ....................................6

**Statutes and Rules**

28 U.S.C. § 1781(b)(2) ..................................................................................................5

Fed. R. Civ. P. 26 ..........................................................................................................5

Fed. R. Civ. P. 28(b)(1)(B) ..........................................................................................5

i

Plaintiff SKATTEFORVALTNINGEN, the Customs and Tax Administration of the Kingdom of Denmark ("SKAT"), respectfully submits this memorandum of law in support of its motion (the "Motion") for the issuance of letters of request to obtain documents and limited testimony from witnesses in the British Virgin Islands pursuant to the Evidence (Proceedings in Foreign Jurisdictions) Ordinance, Cap. 24 (Oct. 1, 1988) (Virgin Is.) ("Evidence (Proceedings in Foreign Jurisdictions) Ordinance").  Proposed letters rogatory are attached as Exhibits 1-A – 1-H to the Declaration of Neil J. Oxford, dated April 27, 2020 ("Oxford Decl.").

## PRELIMINARY STATEMENT

SKAT seeks to recover $2.1 billion that it paid out in fraudulent dividend withholding tax ("DWT") refund claims.  The Defendants are pension plans (the "Plans") and affiliated individuals in the United States.  The Plans submitted to SKAT fraudulent DWT refund claim applications that falsely claimed that the Plans owned shares in Danish companies listed on the OMX Copenhagen 20 Index ("Danish Securities").  SKAT alleges the applications were fraudulent because the Plans did not actually own the shares of Danish Securities that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed.  These applications were also fraudulent because the claimants falsely represented that they met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends.  By submitting these claims, Defendants were able to receive refunds of DWT to which they were not entitled.

The fraudulent applications for DWT refunds that were submitted by Defendants that used custodians associated with Sanjay Shah[1] (representing the vast majority of the Defendants in these cases) were the culmination of a tax refund scheme that involved a number of entities, including entities located in the British Virgin Islands ("BVI") that are the subject of the letters of request discussed herein, to create false, fictitious book entry transactions and records that purported to record the purchase, transfer, or ownership of Danish Securities.  These Defendants relied on third parties located in the BVI (and elsewhere) to conduct the false, fictitious transactions that generated records purporting to evidence their purchase of shares. These Defendants purported to purchase fictitious shares from themselves in a circular transaction, the true nature of which was obscured by using a variety of trading counterparties that, in fact, were commonly owned and acting in concert.  In essence, the buyer would buy shares from a seller that did not own them; and the seller purported to borrow the (fictitious) shares from the buyer, using intermediaries to conceal the sham nature of the transaction: the Plan Defendant would buy the shares from a short seller, and lend the shares to an intermediary (or intermediaries), who would lend the shares to the short seller that had "sold" the shares to the Plan Defendant.  (The short sellers, stock loan intermediaries, and forward counterparties together, "BVI Trading Counterparties").  The legs of the fraudulent trading—the sale of shares from the purported short seller to the Plan Defendant; the stock loan from the Plan Defendant to the stock loan intermediary; and the loan from the stock loan intermediary to the short seller—all settled on the same date and at the same custodian controlled by Sanjay Shah.  The fraudulent trading scheme generated purported trading records, without any need to exchange actual shares

---

1. Sanjay Shah is alleged to be the central organizer of this fraudulent scheme and is a defendant in SKAT's litigation in England.

or for any actual shares to even exist.  These Defendants also purported to sell shares in a forward and/or futures contract to additional counterparties.  Attached as Oxford Decl. Ex. 4 is a document from Solo Capital Partners, one of the Shah-controlled custodians used by these Defendants, and sets out the fraudulent trading structure described above, with Solo Capital Partners acting as the custodian.[2]  The fraudulent transactions illustrated in Oxford Decl. Ex. 4 and described herein were then used by purported custodians to create false "credit advices," "income advices," "tax vouchers," or similar documents (each a "<u>Credit Advice</u>") that these Defendants submitted to SKAT to support Defendants' false DWT refund applications to SKAT.

These Defendants also relied on BVI third parties ("<u>BVI Conduit Entities</u>") to distribute the money obtained from SKAT in a way that obfuscated the true beneficiaries of the fraudulent applications.  Upon information and belief, through false invoices, charging for fictitious services, and other arrangements, the BVI Conduit Entities channeled the proceeds of the fraudulent applications to various participants in the fraud, including Defendant-controlled entities and BVI Trading Counterparties.

SKAT respectfully requests that this Court issue letters rogatory seeking documentary evidence and limited testimony relating to the BVI Trading Counterparties and BVI Conduit Entities (together, "<u>BVI Third Parties</u>") from the following registered agents of the BVI Third Parties ("<u>Registered Agents</u>"):  Harneys Corporate Services Limited; Intershore Consult (BVI) Ltd.; Intertrust Corporate Services (BVI) Limited; MMG Trust (BVI) Corp.; Mossack Fonseca & Co. (B.V.I.) Limited (by its liquidator, Deloitte Ltd. British Virgin Islands); Overseas

---

2.  Oxford Decl. Ex. 4 was obtained from a production made by the defendants in SKAT's action pending before the Dubai International Financial Centre Courts (the "<u>DIFC court</u>") against Elysium Global (Dubai) Limited and Elysium Properties Limited, another Shah-controlled company (together, "<u>Elysium</u>") that was in possession of documents from Solo Capital Partners.

Management Company Trust (B.V.I.) Ltd.; Sentinel International Management S.A.; Vistra (BVI) Limited.

Specifically, SKAT seeks from the Registered Agents, with respect to the BVI Third Parties, the following information to establish that the BVI Third Parties were controlled by or affiliated with Defendants and Shah, and that the Plans were not actual holders of the Danish Securities: register of shareholders; register of directors; customer due diligence records obtained by the Registered Agent pursuant to the Anti-Money Laundering Regulations, 2008 (as amended); documents obtained by the Registered Agent to identify the beneficial owners of the BVI Third Parties pursuant to the Beneficial Ownership Secure Search System Act 2017 (as amended) and the Anti-Money Laundering Regulations, 2008 (as amended); beneficial ownership records entered in the Registered Agent's RA Database pursuant to the Beneficial Ownership Secure Search System Act 2017 (as amended); statements of account prepared by employees of the Registered Agent acting as voluntary liquidator to the BVI Third Parties pursuant to the BVI Business Companies Act 2004; records and underlying documentation sufficient to show and explain the BVI Third Parties' transactions and to enable the financial position of the BVI Third Parties to be determined with reasonable accuracy prepared pursuant to the BVI Business Companies Act (as amended); correspondence between clients of record and the Registered Agent; correspondence between introducers and the Registered Agent; correspondence between directors and the Registered Agent; agreements for the provision of registered agent services between the Registered Agent and the BVI Third Parties, or those acting on their behalf; and invoices issued by the Registered Agents to any of the BVI Third Parties, or those acting on their behalf, and payment records showing the payment of such invoices including, but not limited to, (i) details of the bank from which payments were made

4

and (ii) supporting information to enable payments to be made including payee due diligence records obtained.

The Registered Agents are not parties to this lawsuit, are citizens of another country, and are not otherwise subject to the jurisdiction of this Court.  Accordingly, SKAT respectfully requests that the Court issue letters rogatory to the courts of the British Virgin Islands.  SKAT contacted lead counsel for the Defendants to inform them of the relief sought herein, and has received no objections to this Motion from Defendants.

## LEGAL STANDARD

Letters rogatory are the means by which a court in one country can formally request that a court in another country lend its judicial assistance in obtaining evidence or performing some other judicial act.  *Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co.*, 841 F. Supp. 2d 769, 775-76 (S.D.N.Y. 2012).  Rule 28(b)(1)(B) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2) authorize federal courts to issue letters rogatory that enable a U.S. litigant to obtain non-party evidence from a foreign entity.  Letters can be sent directly from this Court without transmittal by the State Department.  28 U.S.C. § 1781(b)(2).

In considering an application for issuance of letters rogatory, United States courts apply the discovery principles embodied by Rule 26.  The party seeking discovery bears the burden of demonstrating that the evidence sought is relevant.  *Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (ALC)(JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014).  "While not 'unlimited, relevance, for purposes of discovery, is an extremely broad concept.'"  *Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013)).  Once relevance is shown, the burden shifts to the party opposing discovery to show that the discovery is improper.  *Id*.

## ARGUMENT

## I.     LETTERS ROGATORY ARE THE PROPER DISCOVERY DEVICE

The United States is a party to the Convention of 18 March 1970 on the Taking of

Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention").  *See Hague*

*Evidence Convention Status Table*, HCCH (Mar. 1, 2019),

https://www.hcch.net/en/instruments/conventions/status-table/?cid=82.  In the British Virgin

Islands, the Evidence (Proceedings in Foreign Jurisdictions) Ordinance gives statutory effect to

the Hague Evidence Convention.  Accordingly, this Court has the authority to send the attached

letters of request to the British Virgin Islands.

Letters rogatory are appropriately used to obtain evidence from witnesses who

cannot be compelled to appear in a United States court.  *See In re Optimal U.S. Litig.*, 837 F.

Supp. 2d 244, 259 (S.D.N.Y. 2011).  Where, as here, the witnesses subject to the motion are not

parties to the lawsuit and are not otherwise subject to the jurisdiction of the U.S. court, it is

appropriate to turn to the Hague Evidence Convention (as made applicable in the British Virgin

Island through the Evidence (Proceedings in Foreign Jurisdictions) Ordinance).  *Elliott Assocs. v.*

*Republic of Peru*, Nos. 96 CIV. 7917 (RWS), 96 CIV. 7916 (RWS), 1997 WL 436493, at *2

(S.D.N.Y. Aug. 1, 1997); *Lantheus*, 841 F. Supp. 2d at 782 (S.D.N.Y. 2012) ("parties seek, and

U.S. courts will usually issue, letters rogatory where the court otherwise lacks jurisdiction to

compel discovery").  "The party opposing the issuance of a letter of request must show some

good reason to deny the application." *Elliott*, 1997 WL 436493, at *2.

## II.     SKAT'S REQUESTS ARE RELEVANT TO THE CLAIMS IN THIS ACTION

SKAT seeks documents and limited testimony from the Registered Agents of BVI

Third Parties, which helped Defendants defraud SKAT by: (i) engaging in purported share

trading to generate fraudulent trading records Defendants relied upon as evidence of share

6

ownership, and (ii) acting as conduits to distribute the proceeds of the refund applications in a way that obfuscated the true beneficiaries of the refund claims. Additional information regarding the structure of the fraudulent scheme and the role of each of the BVI Third Parties is contained in the Oxford Declaration.  (*See* Oxford Decl. ¶¶ 23-26.)

        The issue of whether the Defendants held the shares that they claimed to own is central to these proceedings.  Specifically, SKAT has alleged in the complaints commencing these actions that the Defendants' applications "were fraudulent because the claimants did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed."  (Oxford Decl. Ex. 2 ¶ 4.)  Accordingly, the documents that SKAT seeks from the Registered Agents of the BVI Trading Counterparties are expected to demonstrate that the BVI Trading Counterparties are owned or controlled by Defendants, Shah, or other entities involved in defrauding SKAT into paying DWT refunds on shares that Defendants never actually owned.

        The manner in which the proceeds of the refund applications were channeled to the various participants in the fraud is also a central issue in this case.  Specifically, SKAT has alleged that Defendants "obtain[ed] proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled."  (Oxford Decl. Ex. 2 ¶ 78.  *See also id.* ¶¶ 54, 82). Accordingly, the documents that SKAT seeks from the Registered Agents of the BVI Conduit Entities are expected to demonstrate that the BVI Conduit Entities are owned or controlled by Defendants, Shah, or other entities involved in perpetuating the fraud.  These connections will evidence how the refunds were distributed to parties who were not entitled to them.

        In the letters of request, SKAT seeks limited testimony to verify the accuracy and provenance of the documents provided by the Registered Agents.  This limited testimony is

7

intended to address any issues of admissibility that may arise in future proceedings before this Court and to avoid additional costs related to such issues.  To the extent possible, SKAT will seek certifications from the registered agents consistent with Federal Rule of Evidence 902(12) to obviate the need for testimony.

In sum, SKAT has reason to believe that the BVI Third Parties served critical roles in the DWT refund fraud, and expects that the documents and limited testimony requested from the Registered Agents will evidence the involvement of the BVI Third Parties and confirm the existence of the overall scheme.

## CONCLUSION

For the reasons set forth above, SKAT respectfully requests that the Court grant its Motion for Issuance of a Request for International Judicial Assistance to Obtain Evidence.


Dated:  New York, New York
        April 27, 2020

                                    HUGHES HUBBARD & REED LLP

                                    By:    /s/ Neil J. Oxford
                                        William R. Maguire
                                        Marc A. Weinstein
                                        Neil J. Oxford
                                        Dustin P. Smith
                                      One Battery Park Plaza
                                      New York, New York 10004-1482
                                      Telephone: (212) 837-6000
                                      Fax:  (212) 422-4726
                                      bill.maguire@hugheshubbard.com
                                      marc.weinstein@hugheshubbard.com
                                      neil.oxford@hugheshubbard.com
                                      dustin.smith@hugheshubbard.com

                                      *Counsel for Plaintiff Skatteforvaltningen*
                                      *(Customs and Tax Administration of the*
                                      *Kingdom of Denmark)*