

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

By ECF

Honorable Lewis A. Kaplan                                     May 13, 2020
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    In re Customs and Tax Administration of the Kingdom of Denmark
               (Skatteforvaltningen) Tax Refund Scheme Litigation, 18-md-2865 (LAK)

Dear Judge Kaplan:

      Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this letter motion, pursuant to Federal Rule of Civil Procedure 37, to compel third-party defendant ED&F Man Capital Markets Limited ("ED&F") to produce documents. This motion relates to 31 cases involving defendants that used ED&F as a purported custodian of Danish shares.[1] As the Court may recall from the March 5 conference, SKAT has been seeking ED&F's written explanations to its regulator and board concerning how it falsely certified tax vouchers that supported U.S. plan defendants' refund applications to SKAT.

      In an April 14, 2020 log, ED&F asserted privilege or work product protection (or both) over all such documents explaining its false tax vouchers, including (i) its reports and letters to its regulator, the Financial Conduct Authority ("FCA"); and (ii) a June 2019 board presentation and the minutes and other materials for an August 2019 board meeting.[2]

---

1. This motion relates to: 18-cv-05053; 18-cv-05374; 18-cv-08655; 18-cv-09797; 18-cv-09836; 18-cv-09837; 18-cv-09838; 18-cv-09839; 18-cv-09840; 18-cv-09841; 18-cv-10100; 18-cv-09549; 18-cv-09515; 18-cv-09511; 18-cv-09498; 18-cv-09507; 18-cv-09497; 18-cv-09489; 18-cv-09491; 18-cv-09439; 18-cv-09552; 18-cv-09434; 18-cv-09505; 18-cv-09494; 18-cv-09492; 18-cv-09490; 18-cv-10088; 18-cv-10090; 18-cv-10127; 18-cv-04894; 18-cv-10130.
2. ED&F's privilege log is annexed as Exhibit 1 hereto. The parties met and conferred regarding ED&F's privilege assertions in its log on April 27, May 5 and May 12, 2020, but were unable to resolve their disputes. SKAT seeks two categories of documents: (i) the FCA report and letters identified as HAS1_002_1_000000040-0884-5; HAS1_002_1_000000049-0239-3; and HAS1_002_1_000000049-2205-3; and (ii) the board meeting materials identified as HAS1_002_1_000000040-1310-1-1; HASI_002_1_00000040-1310-3-1; KU_002_1_000000001-0694-1; KU_002_1_000000001-1969-1; and KU_002_1_000000001-2787-4. We continue to meet and confer concerning documents exchanged among ED&F, its consultant that performed a review to determine which vouchers were false, and its outside law firm.

**ED&F is withholding critical information in these cases based on meritless privilege claims.**

ED&F issued 389 tax vouchers that defendants in 31 actions in this MDL submitted to SKAT, purporting to certify that defendants owned shares of Danish stock and received dividends from which tax was withheld. SKAT alleges that ED&F's vouchers were false, and defrauded SKAT into paying 537,607,464 Danish Kroner ("DKK"). In September 2019, ED&F admitted in an amended pleading that 89 of its vouchers were false and collectively overstated the amount of withholding tax the defendants purportedly suffered by DKK 184,214,519.[3] The information in ED&F's sole possession is critical to understand how ED&F issued the admittedly-false 89 vouchers and to determine whether the rest of its vouchers were also false.

On September 30, 2019, SKAT served requests seeking, among other things, "[a]ll documents . . . concerning the determination made by ED&F that any [tax vouchers] . . . contained any incorrect information." ED&F asserts that all such documents—including a report to its regulator and presentations to its board—are protected under one or more of: (i) "work product," (ii) "attorney-client privilege," or (iii) the "U.K. Financial Services and Markets Act 2000 § 348."[4]

**ED&F's reports to its regulator and board are not work product.**

Irrespective of any civil litigation or investigation by the FCA, ED&F had a regulatory requirement and therefore a business need to inform its regulator (which has the power to restrict or shut down its business) how it issued false custodial statements. Similarly, ED&F could not manage its business without informing its board about the false custodial statements. Between April and August 2019, the following significant business activities occurred at ED&F: ED&F shut down the business unit that handled defendants' fraudulent applications, ED&F communicated its issuance of false custodial statements to its regulator, and the CEO of that business, who swore that the now admittedly false tax vouchers were accurate, resigned abruptly.[5] ED&F's board could not have overseen these business matters without being informed how its custodial business issued false statements. Thus, ED&F is not entitled to withhold the essential business communications SKAT seeks on the basis of the work product doctrine because it cannot establish they were prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A).[6] As the party asserting the doctrine's protection, ED&F bears the burden of "demonstrating that the doctrine applies and that it has not been waived." *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007). Documents prepared in "anticipation of litigation" are those that "in light of the nature of the document and the factual situation in the particular case, . . . can fairly be said to have been prepared or obtained *because of* the prospect

---

3. *See* Letter Addressed to Judge Lewis A. Kaplan from Brian S. Fraser, Ex. A ¶ 4.2, *In re SKAT* (No. 18-md-02865), ECF No. 202. In its prior December 2018 pleading in the English action, ED&F asserted, under penalty of contempt of court, that its tax vouchers were accurate, with the exception of nine that overstated the amount purportedly withheld by DKK 312,120.
4. ED&F asserts that all of the documents identified in its log may be withheld on the basis of section 348 of the U.K. Financial Services and Markets Act 2000 ("FSMA"). But that section of the statute, in relevant part, provides only that *the FCA* may not disclose ED&F's confidential information without its consent. It does not create an evidentiary privilege that ED&F may assert to withhold documents from its production to SKAT.
5. *See* Luke Jeffs, ED&F Man's European Chief Hawksworth Resigns, GLOBALINVESTORGROUP (Aug. 29, 2019), https://www.globalinvestorgroup.com/articles/3693130/ed-and-f-mans-european-cheif-hawksworth-resigns.
6. Because the work product doctrine "is procedural in nature," the "rules of the forum court apply and it is . . . not subject to a choice of law analysis." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 73 (S.D.N.Y. 2010).

of litigation." *U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (internal quotation omitted). Documents, such as ED&F's, "that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of" any litigation are not protected. *Id.*

ED&F is a regulated custodian, subject to a number of requirements set forth in the FCA Handbook under which it "would have" been required to disclose to the FCA the circumstances of its false custodial statements irrespective of any litigation or investigation. *See, e.g.*, *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 109 (S.D.N.Y. 2000) (documents prepared "to respond to the City Council's request for information" were not protected).[7] Similarly, ED&F had to inform its board about the false custodial statements regardless of litigation.[8]

Further, any protection with respect to the FCA reports and letters was waived when ED&F sent them to the FCA. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("voluntary disclosure of work product to an adversary waives the privilege as to other parties"). The fact that the FCA was required to keep the documents confidential does not change the result. This is not a request for discovery against the FCA and so FSMA § 348 is irrelevant. *See also In re Initial Public Offering Secs. Litig.*, 249 F.R.D. 457, 465 (S.D.N.Y. 2008) (confidentiality agreement does not affect waiver "absent special circumstances").

Finally, even if any of the documents was created in anticipation of litigation, "this does not necessarily mean that" it should "be protected against discovery." *Adlman*, 134 F.3d at 1202. The materials are still discoverable upon SKAT's showing that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2013 WL 1087236, at *26-28 (S.D.N.Y. Mar. 15, 2013) ("Chevron's substantial need overcomes ordinary work product protection" (initial capitalization removed)). ED&F's explanations of its tax vouchers, as would-be factual work product, are "entitled to only the most minimal protection." *Nat'l Congress*, 194 F.R.D. at 110.

SKAT has substantial need for the documents. These are the only documents that ED&F has identified as its written explanations for issuing false custodial statements. They are therefore "essential to" SKAT's claims, "crucial to the determination of whether" the defendants are "liable" to SKAT, and "carr[y] great probative value on" the "contested issues" in these cases. *Gucci*, 271 F.R.D. at 74-75 (internal quotations omitted). Further, SKAT cannot obtain their substantial equivalent even *with* undue hardship. As the custodian that issued the false tax vouchers, only ED&F can explain why its vouchers are false, yet it seeks to cloak all such documents with privilege. *See, e.g.*, *Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592 (CS) (JCM), 2018 WL 557915, at *8 (S.D.N.Y. Jan. 24, 2018) (ordering production of factual report

---

7. Part 9A of the FSMA empowers the FCA to make the rules set out in the Handbook that apply to regulated entities and the Handbook thus carries the force of law. Under Principle 11 in the Handbook, ED&F "must disclose to the FCA appropriately anything relating to the firm of which that regulator would reasonably expect notice." Principle 11, FCA Handbook, FINANCIAL CONDUCT AUTHORITY, https://www.handbook.fca.org.uk/handbook/PRIN/2/1.html (last visited May 13, 2020). This means that ED&F must disclose to the FCA "any matter which could have a significant adverse impact on the firm's reputation" or "which could result in serious detriment to a customer of the firm." Supervision 15.3, FCA Handbook, https://www.handbook.fca.org.uk/handbook/SUP/15/3.html (last visited May 13, 2020).
8. To the extent the board materials reflect legal advice, such portions may be redacted.

of "the relevant information that PJI employees had at their disposal when considering and implementing" relevant policy).

**<u>The June and August 2019 board minutes and materials are not privileged.</u>**

Nor does the attorney-client privilege protect the critical business information in the June and August 2019 board meeting materials. Critical business information that a company provides—and has to provide for business reasons—to its management and board is not privileged. Under New York law,[9] the attorney-client privilege protects only "confidential communication[s] made between the attorney or his or her employee and the client in the course of professional employment." C.P.L.R. § 4503(a)(1). The "burden is on" ED&F as the "party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 WL 2977175, at *4 (S.D.N.Y. May 20, 2016) (internal quotation omitted). "For the privilege to apply, the communication from the attorney to client must be made for the purpose of facilitating the rendition of legal advice or services" and "must be primarily or predominantly of a legal character." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019) (internal quotation omitted). "While this privilege protects confidential communications 'relating to . . . legal matters,' there is no such protection for communications that relate primarily to business matters." *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 1579 (HB) (JCF), 2013 WL 1195545, at *9 (S.D.N.Y. Mar. 25, 2013) (quoting *Rossi v. Blue Cross & Blue Shield of Greater New York*, 73 N.Y.2d 588, 592 (1989)).

While ED&F may redact any portion of a document that reflects legal advice, the other parts of its documents are not privileged and should be produced. *See, e.g.*, *Royal Park*, 2016 WL 2977175 at *5-6 (ordering production of statements in board minutes that, among other things, "reveal that they are based on sources other than counsel"); *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 146 (S.D.N.Y. 2003) (ordering production of attorney communications "address[ing] business matters" with "legal advice" redacted).[10]

Accordingly, SKAT respectfully requests that the Court grant its motion to compel.

---

9. Federal Rule of Evidence 501 provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." No choice of law analysis is required, however, where the privilege law is substantively the same with respect to attorney-client communications. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (no choice of law analysis is needed "in the absence of an 'actual conflict' between the applicable rules of two relevant jurisdictions"); *see also Guiffre v. Maxwell*, No. 15 Civ. 7433 (RWS), 2016 WL 1756918, at *4 (S.D.N.Y. May 2, 2016) ("The privilege analysis under [English] law parallels the analysis under New York law, requiring (i) a communication between an attorney and client, (ii) made in the course of the representation, (iii) for the purpose of providing legal advice."). In the absence of an actual conflict, courts apply the law of the forum state, and for practical reasons, SKAT addresses only New York privilege law in this motion. *See, e.g.*, *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006) ("As there is no conflict, for practical reasons, that is, for ease of administering the case, New York, as the forum state, would apply its law.").
10. Further, ED&F's privilege log fails to identify who attended the board meetings and received the materials; to the extent any third parties "not involved in the legal issue" did so, "any privilege was waived." *See Ampa Ltd. v. Kentfield Capital LLC*, No. 00 Civ. 0508 NRB AJP, 2000 WL 1156860, at *1 (S.D.N.Y. Aug. 16, 2000).

Case 1:18-md-02865-LAK   Document 335   Filed 05/13/20   Page 5 of 5

5

        Respectfully submitted,

        /s/ Marc A. Weinstein
        Marc A. Weinstein

cc:   All counsel of record (via ECF)