

Binder & Schwartz LLP
366 Madison Avenue  6th Floor
New York, NY 10017

(T) 212.510.7008
(F) 212.510.7299
binderschwartz.com

May 15, 2020

**By ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:     *In re Customs and Tax Administration of the Kingdom of Denmark
(Skatteforvaltningen) Tax Refund Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

     We write on behalf of ED&F Man Capital Markets, Ltd. ("ED&F") in opposition to the
May 13, 2020 letter motion of Skatteforvaltningen ("SKAT").  Although SKAT has no claims
against ED&F in this action—ED&F is a third-party defendant—SKAT nevertheless seeks to
compel production of a report and related communications prepared by ED&F's counsel and
submitted on a confidential statutory basis to a U.K. financial regulator—the Financial Conduct
Authority (the "FCA")—as well as certain internal documents describing the contents of that
report and reflecting legal advice to the company.  SKAT's motion should be denied because the
documents SKAT seeks are protected from discovery under English and U.S. law.

     As an initial matter, SKAT's motion is premature.  SKAT seeks a finding of waiver over
privileged documents in advance of ED&F's document production, which will include
compilations of the records of ED&F's trades.  In seeking privileged discussions prior to
reviewing the non-privileged factual materials addressed by those discussions, SKAT is putting
the cart before the horse.  Additionally, as SKAT acknowledges in footnote 2 to its letter motion,
the parties "continue to meet and confer."  There are outstanding disputes concerning not only
privilege issues, but also SKAT's near complete refusal to search for documents responsive to
ED&F's production requests.  Judicial economy is best promoted by addressing these pending
discovery issues all together, rather than in piecemeal fashion.

     More importantly, SKAT's letter motion rests on a fundamentally flawed premise, as it
relies on U.S. law and seeks to ignore ED&F's separate, substantive claim of litigation privilege
under English law.  English courts hold that litigation privilege applies to reports and
communications prepared and provided in response to a statutory investigation (in this case by
the FCA) and in contemplation of litigation.  Unlike the federal work product doctrine—which is
procedural and qualified—the litigation privilege under English law is substantive and absolute.
*See Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 08 Civ. 9117 (GBD) (HBP), 2010 WL
11594991, at *3, 6 (S.D.N.Y. Oct. 14, 2010); *see also* Declaration of Anthony Steven Field ¶ 2
("Field Decl.") (attached hereto as Exhibit A).  The documents at issue here, including the "FCA
report and letters" sought by SKAT, were prepared in England by English counsel on behalf of
an English client in the context of an investigation conducted by a U.K. regulator.  They in no



way "touch base" with the United States, and thus English law privileges attach. *See Mitre*, 2010 WL 11594991, at *3-4 (English privilege law applied where relationship and communications were centered in England, particularly to the extent that work product protection did not fully cover the materials at issue); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 64-65 (S.D.N.Y. 2010) ("[C]ommunications regarding a foreign legal proceeding or foreign law 'touch base' with the foreign country."); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 305-07 (E.D.N.Y. 1992) (court made privilege determination under British law where communications with foreign patent agents "did not touch base with the United States").

Moreover, in a related proceeding pending in London between the same parties, ED&F is currently seeking a declaration of the High Court of Justice (the "English Court") confirming that the same documents sought by SKAT here are protected under the litigation privilege. *See* Field Decl. ¶ 2. That application explains that the documents are protected under English law because they are confidential documents created by counsel for litigation purposes at a time when adversarial proceedings against ED&F were reasonably contemplated. *See id.* ¶ 3. Under English law, the submission of these confidential documents to the FCA would not waive privilege because confidentiality is preserved in the submission; Section 348 of the Financial Services and Markets Act 2000 prohibits disclosure by the FCA—including to other government entities—without ED&F's consent. *See id.* Because the English Court will be deciding this issue under English law, ED&F respectfully requests, consistent with principles of international comity, that this Court defer to those forthcoming findings. If this Court is inclined to decide the issue in this proceeding, rather than deferring to the decision of the English Court, ED&F respectfully requests permission to file under seal the confidential witness statement submitted to the English Court and to more fully brief the English law issue to this Court.

Even were it necessary to look to U.S. law to decide this issue, and it is not, the "FCA report and letters" would be protected as work product. The documents were prepared by counsel during an adversarial investigation at a time when the prospect of an enforcement action by the FCA was clear. *See* Fed. R. Civ. P. 26(b)(3)(A); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691(LAK), 2013 WL 3294820, at *4 (S.D.N.Y. June 28, 2013).[1] SKAT's waiver argument is also unavailing. Although courts have held as a general matter that disclosure to U.S. regulators may constitute a waiver of work-product protection, the Second Circuit has also made clear that a "rigid rule" is not appropriate, including, for instance, where the regulatory agency and the disclosing party have entered into an "explicit agreement" to "maintain the confidentiality of the disclosed materials." *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1992). Following *Steinhardt*, courts in this district have held that work-product protection is not waived where such confidentiality agreement is sufficiently formal. *See, e.g., Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *5 (S.D.N.Y. Nov. 16, 2016) (no waiver where privilege proponent "entered into confidentiality or non-waiver agreements with the CFTC prior to producing any attorney work product . . . and Defendants

---

[1] Contrary to SKAT's suggestion, the fact that ED&F was legally bound to submit its report to the FCA does not transform the report into one prepared in the course of "ordinary business operations," or "strip away work-product protection." *See Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, 14-CV-9494 (CM)(JLC), 2016 WL 3260370, at *4 (S.D.N.Y. June 10, 2016); *see also U.S. v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998).



produced to Plaintiffs all the underlying transactional data"); *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186VMAJP, 2005 WL 1457666, at *9 (S.D.N.Y. June 21, 2005) (no waiver of work-product protection where, among other things, defendants had "written confidentiality and non-waiver agreements with the governmental agencies"); *Maruzen Co., Ltd. v. HSBC USA, Inc.*, No. 00 Civ. 1079(RO), 2002 WL 1628782, at *2 (S.D.N.Y. July 23, 2002).  The claim of work-product protection is even stronger here, where the submission of privileged materials to the FCA was protected not simply by an *ad hoc* agreement with the regulator, but by a statute that specifically protects ED&F's submissions from broader disclosure.

Nor has SKAT made the showing of substantial need that would be required to access work product.  SKAT cannot demonstrate that the information it seeks is unavailable from any other source, particularly given that ED&F is still in the process of making its document production.  The eighty tax vouchers in which ED&F found inaccuracies have already been individually identified by ED&F, and ED&F will be producing all of the trade documentation underlying each of those vouchers.  Moreover, no depositions have yet been taken of any ED&F witnesses.  Given access to both the underlying fact material and ED&F's ultimate conclusions about the tax vouchers via deposition, SKAT will have all of the information needed to perform its own analysis of the transactions at issue, and there is "no hardship" in requiring SKAT to do so.  *See In re Natural Gas Commodity Litig.*, 2005 WL 1457666, at *8-9 (no substantial need for analysis where "underlying documents and data on which the analyses were based" were produced); *see also Amtrust*, 2016 WL 3260370, at *5; *Chevron*, 2013 WL 3294820, at *1, 4.

Finally, SKAT seeks production of minutes and meeting materials of a Board meeting ***convened for the purpose of presenting the Board with the analysis and advice of ED&F's counsel***.  These documents and communications constitute core attorney-client communication and are protected by the English litigation privilege and the federal work-product doctrine.  *JA Apparel Corp. v. Abboud*, No. 07 Civ. 7797(THK), 2008 WL 111006, at *3 (S.D.N.Y. Jan. 10, 2008) (legal advice contained in board presentation subject to both attorney-client privilege and work-product doctrine); *Nat'l Edu. Training Grp., Inc. v. Skillsoft Corp.*, No. M8-85 (WHP), 1999 WL 378337, at *6 (S.D.N.Y. June 10, 1999) (board meeting notes protected work product).  SKAT's speculation regarding those Board materials provides no supported basis for concluding that the materials are not privileged.

For all of these reasons, ED&F's privileges should be affirmed and SKAT's application should be denied.

Respectfully submitted,

Wendy H. Schwartz

3