**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to 1:18-CV-05053-LAK.

MASTER DOCKET

Case No. 1:18-MD-02865-LAK

**THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN'S AND**
**SHELDON GOLDSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR**
<u>**MOTION TO DISMISS AMENDED COUNTERCLAIM**</u>

GUSRAE KAPLAN NUSBAUM PLLC
Martin H. Kaplan
Kari Parks
120 Wall Street
New York, New York 10005
(212) 269-1400
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Third-Party Counterclaim*
*Defendants The Goldstein Law Group PC*
*401(K) Profit Sharing Plan and*
*Sheldon Goldstein*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**   **I**

**TABLE OF AUTHORITIES**   **III**

**PRELIMINARY STATEMENT**   **1**

**BACKGROUND**   **3**

**I.   Procedural Summary**   **3**

**II.   SKAT Alleges that ED&F Man Engaged in "Systemic" Misconduct to Reap Over $86 Million from Danish Arbitrage Transactions**   **6**

**III.   ED&F Man's September 2019 Admissions in the English Action Caused the Goldstein Parties to Sue the Brokerage for Defrauding Its Own Clients**   **8**

**IV.   ED&F Man's English Admissions Contradict Its American Allegations**   **10**

**V.   The Contracts Only Allow ED&F Man to Claim "Indemnification" from the Goldstein Plan if ED&F Man's Losses Do Not "Aris[e] Out of [Its Own] Willful Default, Fraud, or Negligence"**   **11**

**LEGAL STANDARD**   **12**

**I.   ED&F Man Must Prove that the Court Has Subject-Matter Jurisdiction over the Amended Counterclaim**   **12**

**II.   ED&F Man Must Plead More than Just "Speculative" Allegations to State a Claim for Indemnification**   **13**

**ARGUMENT**                                                                                     **14**

**I.    ED&F Man's English and American Pleadings Cannot Both Be True**       **14**

**II.   Indemnify What?**                                                                         **16**
   **A.   The Amended Complaint Violates the Most Basic Notice Requirements**      17
   **B.   Because ED&F Man has Not Incurred Liability for Any Alleged Acts of the
Goldstein Parties, ED&F Man Cannot Establish Subject-Matter Jurisdiction over
Its Amended Counterclaim**                                                                        19
   **C.   ED&F Man Cannot Seek Indemnification of Its Own Wrongful Conduct**          21
   **1.   ED&F Man States No Contractual Indemnification Claim**                       24
     **a.   The Contracts Do Not Require the Goldstein Plan to "Indemnify" ED&F
Man for Losing This Lawsuit to the Goldstein Parties**                                             26
     **b.   Because SKAT Alleges Wide-Ranging Tortious Conduct Against ED&F
Man, the Goldstein Plan Need Not Indemnify Any English Judgment**                                  27
     **c.   The Goldstein Parties Cannot Indemnify ED&F Man for Hypothetical
Adverse Judgments in Unidentified, Theoretical Proceedings**                                       29
   **2.   ED&F Man States No Implied Indemnification Claim Because It Faces Direct
Liability for Its Own Wrongful Acts, Not Vicarious Liability for the Goldstein
Parties' Conduct**                                                                                30

**III.  ED&F Man Again Pleads No Allegations Against Sheldon Goldstein, Who is
Not a Party to the Contracts**                                                                    **33**

**CONCLUSION**                                                                                   **34**

# TABLE OF AUTHORITIES

## Cases

Ades v. Deloitte & Touche, Nos. 90 Civ. 4959(RWS), 90 Civ. 5056(RWS), 1993 WL 362364
(S.D.N.Y. Sept. 17, 1993) (Sweet, J.) .......... 14

Amusement Industry v. Stern, 693 F. Supp. 2d 319 (S.D.N.Y. 2010) (Kaplan, J.) . 23, 30, 32

Anderson v. Greyhound Lines, Inc., No. 06 Civ. 13371 GBD, 2011 WL 3480945 (S.D.N.Y.
Aug. 3, 2011) (Daniels, J.) .......... 21, 27

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .......... 13, 17, 18

Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243 (S.D.N.Y. 2013)
(Cote, J.) .......... 20

Barbagallo v. Marcum LLP, No. 11-CV-1358, 2012 WL 1664238 (S.D.N.Y. May 11, 2012)
(Weinstein, J.) .......... 31

Bd. of Managers of 125 N. 10th Condo. v. 125North10, LLC, 150 A.D.3d 1063 (2d Dep't
2017) .......... 30, 32

Bd. of Trustees of S. California IBEW-NECA Defined Contribution Plan v. Bank of New
York Mellon Corp., No. 09 CIV. 6273 RMB, 2011 WL 6130831 (S.D.N.Y. Dec. 9, 2011)
(Berman, J.) .......... 19, 21

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .......... 13, 17, 18

Bunker v. Bunker, 80 A.D.2d 817 (1st Dep't 1981) .......... 21

Canada Steamship Lines Ltd v. The King [1952] AC 192 .......... 25

Capita (Banstead 2011) Ltd v. RFIB Grp. Ltd [2015] EWCA Civ 1310 .......... 22, 24, 25

CBS Corp. v. Eaton Corp., No. 07 Civ. 11344 (LBS), 2010 WL 1375169 (S.D.N.Y. Mar. 30,
2010) (Sand, J.) .......... 22

Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y., 808 F. Supp. 213 (2d Cir. 1992) . 33

Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158
(S.D.N.Y. Apr. 16, 2004) (Cote, J.) .......... 14

Convergent Wealth Advisors LLC v. Lydian Holding Co., No. 12 CIV 1199, 2012 WL
2148221 (S.D.N.Y. June 13, 2012) (Scheindlin, J.) .......... 20

D'Ambrosio v. City of New York, 55 N.Y.2d 454 (1982) .......... 21

DeBlasio v. Merrill Lynch & Co, Inc., No. 07 Civ. 318(RJS), 2009 WL 2242605 (S.D.N.Y.
    2009) (Sullivan, J.)      14

Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.), 747 F. Supp. 922 (S.D.N.Y. 1990)
    (Stewart, J.)      23

Dietrich v. Bauer, 76 F. Supp. 2d 312 (S.D.N.Y. 1999) (Sweet, J.)      33

Fisk v. Letterman, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (Marrero, J.)      14

FSP, Inc. v. Societe Generale, No. 02 Civ. 4786, 2003 WL 124515 (S.D.N.Y. Jan. 14, 2003)
    (Daniels, J.)      19, 20

Gabriel Capital, L.P. v. Natwest Finance, Inc., 137 F. Supp. 2d 251 (S.D.N.Y. 2000)
    (Scheindlin, J.)      23

General Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. AON
    Reinsurance Agency, Inc., 860 F. Supp. 983 (S.D.N.Y. 1994) (Conner, J.)      31

Glaser v. M. Fortunoff of Westbury Corp., 71 N.Y. 2d 643 (1988)      21

Globus v. Law Research Serv, Inc., 287 F. Supp. 188 (S.D.N.Y. 1968) (Mansfiled, J.), aff'd
    in pertinent part, 418 F.2d 1276 (2d Cir. 1969)      22

Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found, Inc., 484 U.S. 49 (1987)      13

Handelsbanken v. Dandridge [2002] EWCA Civ 577      28

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009)      13

Hooper Assoc. v. AGS Computers, 74 N.Y.2d 487 (1989)      25

IIG Capital LLC v. Van Der Mew & Anr [2008] EWCA Civ 542      22

In re Lehman Bros. Holdings Inc., 530 B.R. 601 (Bankr. S.D.N.Y. 2015) (Chapman, B.J.) 29

In re MF Global Inc., 496 B.R. 315 (S.D.N.Y. 2013) (Marrero, J.)      24

In re Polling Transp. Corp., 784 F. Supp. 1045 (S.D.N.Y. 1992) (Sweet, J.)      32

In re Richartz, Fliss, Clark & Pope, Inc., Bankr. No. 08-13919 (MG), 2010 WL 4502038
    (Bankr. S.D.N.Y. Nov. 1, 2010) (Glenn, B.J.)      14, 16

Kline v. Kaneko, 685 F. Supp. 386 (S.D.N.Y. 1988) (Ward, J.)      13

Knight v. H.E. Yerkes and Assocs., Inc., 675 F. Supp. 139 (S.D.N.Y. 1987) (Leisure, J.)    31

Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991)      14

Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458 (2d Cir. 2010)   24

Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortgage Funding, Inc., 916 F.3d 116
  (2d Cir. 2019)                                                                    26

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000)                              12

Mas v. Two Bridges Assocs., 75 N.Y.2d 680 (1990)                                    30

McDermott v. City of New York, 50 N.Y. 2d 211 (1980)                                30

Monaghan v. SZS 33 Assoc. LP, 73 F.3d 1276 (2d Cir.1996)                            30

Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10 (2d Cir. 1993)                 19

Peoples' Democratic Rep. of Yemen v. Goodpasture, Inc., 782 F.2d 346 (2d Cir. 1986) 21

Ricciuti v. New York City Transit Auth., 941 F.2d 119 (2d Cir. 1991)               17

Robinson v. Gov't of Malaysia, 269 F.3d 133 (2d Cir. 2001)                          13

Rock v. Reed-Prentice Div. of Package Mach. Co., 39 N.Y.2d 34 (1976)                31

Rosado v. Proctor & Schwartz, 66 N.Y.2d 21 (1985)                                   22

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007)                                       13

Smith v. South Wales Switchgear [1968] 1 All ER 18                                  25

Tasini v. New York Times Co., 184 F. Supp. 2d 350 (S.D.N.Y. 2002) (Carter, J.)      13

The Charter Oak Fire Ins. Co. v. Bolding, No. 08-CV-02632 (KAM), 2009 WL 3246116
  (E.D.N.Y. Oct. 1, 2009) (Matsumoto, J.)                                           19

The White Rose [1969] 1 WLR 1098                                                    28

Tokio Marine and Fire Ins. Co., Ltd. v. Grodin, 05 Civ 9153 (DLC), 2006 WL 3054321
  (S.D.N.Y. Oct. 27, 2006) (Cote, J.)                                               21

Travelers Property Cas. Corp. v. Winterthur Int'l, No. 02 Civ 2406(SAS), 2002 WL
  1391920 (S.D.N.Y. June 25, 2002) (Scheindlin, J.)                      12, 13, 19, 21

Trs. Of Columbia Univ. v. Mitchell/Giurgola Assocs., 109 A.D.2d 449 (1st Dep't 1985) 30

U.S. Bank Nat. Ass'n v. Commonwealth Land Title Ins. Co., No. 13 Civ 7626 NRB, 2015
  WL 1291151 (S.D.N.Y. Mar. 23, 2015) (Buchwald, J.)                             30, 31

U.S. Underwriters Ins. Co. v. Kum Gang Inc., 443 F. Supp. 2d 348 (E.D.N.Y. 2006)
  (Glaser, J.)                                                                      20

United States v. Persico, 832 F. 705 (2d Cir. 1987)                                33

Virtual Countries, Inc. v. Republic of South Africa, 148 F. Supp. 2d 256 (S.D.N.Y. 2001)
  (Schwartz, J.)                                                                    13

<u>Waite v. Paccar Financial PLC</u> [2012] EWCA Civ. 901                                     27

R<small>ULES</small>

Fed. R. Civ. P. 12(b)(1)                                                                          12

Fed. R. Evid. 801(d)(2)(C)                                                                        15

T<small>REATISES</small>

Sir Kim Lewison, The Interpretation of Contracts (2d supplement 12.06)              22

Wright & Miller, Fed. Practice & Procedure, § 3532                                    19

Defendants–Third-Party Plaintiffs–Third-Party Counterclaim Defendants The Goldstein Law Group 401(K) Profit Sharing Plan and Sheldon Goldstein (together, the "**Goldstein Parties**") respectfully submit this memorandum of law in support of their Motion to Dismiss the Amended Counterclaim of Third-Party Defendant–Third-Party Counterclaim Plaintiff ED&F Man Capital Markets, Ltd ("**ED&F Man**" or the "**Brokerage**").

## PRELIMINARY STATEMENT

The Goldstein Parties and Plaintiff Skatteforvaltningen ("**SKAT**") have filed lawsuits against ED&F Man in this American multi-district litigation ("**MDL**") and England (the "**English Action**"), respectively, alleging that ED&F Man tortiously caused SKAT to pay out millions of dollars in meritless tax "refunds" by defrauding SKAT and dozens of American pension plans that were ED&F Man clients.

Because the Goldstein Parties had the gall to sue the Brokerage—which solicited, arranged, financed, and executed all of the Goldstein Plan's relevant securities transactions—ED&F Man has counterclaimed for "Indemnification," arguing that the Goldstein Parties must pay if ED&F Man loses any litigation related to the Goldstein Plan's Danish dividend trading (the "**Amended Counterclaim**"). But the only remotely relevant disputes that the Amended Counterclaim identifies—both unripe—are (1) the Goldstein Parties' own lawsuit against ED&F Man and (2) the English Action, where the Goldstein Plan's Danish trading "profits" total less than 2% of SKAT's claimed damages.

In other words, ED&F Man claims that if the Goldstein Parties win this lawsuit,

the Goldstein Parties must reimburse the Brokerage for its judgment in favor of the Goldstein Parties.

Absurdity aside, the very contracts that ED&F Man seeks to "enforce" prohibit its Amended Counterclaim. Both the Custody Agreement and ED&F Man's Terms and Conditions of Business (the "**T&C**" and together, the "**Contracts**")—to which third-party counterclaim defendant Sheldon Goldstein is **not** a party—expressly contemplate that the Goldstein Plan may sue the Brokerage for exactly the misconduct alleged by both SKAT and the Goldstein Parties. Indeed, the Custody Agreement's indemnity clause explicitly provides that the Goldstein Plan need not indemnify ED&F Man for any loss arising out of the Brokerage's own "willful default, fraud, or negligence."

ED&F Man's Amended Counterclaim fails to fix the fatal flaws raised by the Goldstein Parties' initial Motion to Dismiss. Instead, ED&F Man piles on even vaguer and more speculative "bases" of indemnification, again failing to identify a single case or controversy in which ED&F Man could possibly pin its own tortious conduct on the Goldstein Parties.

As ED&F Man's second bite at the apple has yielded no fruit at all, this Court should dismiss ED&F Man's Amended Counterclaim with prejudice.

2

# BACKGROUND

## I.      Procedural Summary

SKAT has filed hundreds of lawsuits around the world alleging that financial institutions and investors created false paper trails to obtain dividend tax refunds from the Danish government for dividends that the investors never received and taxes that they never paid (the "**Danish Arbitrage Transactions**"). Defendants The Goldstein Law Group PC 401(K) Profit Sharing Plan's and Sheldon Goldstein's Amended Answer, Affirmative Defenses, and Counterclaims Against Skatteforvaltningen and Amended Third-Party Complaint Against ED&F Man Capital Markets, Ltd and John Does 1–10, Dkt. 219 ¶¶ 94, 97, 18-md-2865 (Nov. 5, 2019) ("**ATPC**").

Here in the Southern District of New York, SKAT has sued the Goldstein Parties to claw back eight purportedly-baseless tax refunds. See generally Complaint, Dkt. 1 ¶¶ 50–80, 18-cv-5053 (June 6, 2018) (pleading fraud, aiding and abetting fraud, payment by mistake, unjust enrichment, money had and received, and negligent misrepresentation). SKAT has not sued the Goldstein Parties in any other jurisdiction.

The Goldstein Parties have never attempted to wrong SKAT and were unaware of any fraudulent scheme at all until SKAT sued them. ATPC ¶¶ 100, 230. While the majority of pension plan defendants in this MDL were founded just months before engaging in their first Danish Arbitrage Transactions, the Goldstein Plan is a bona fide pension plan founded in 1999: 15 years before the Plan's first Danish Arbitrage Transaction. See generally ATPC ¶¶ 101–04, 200–09.

All of the Goldstein Plan's Danish Arbitrage Transactions were created, structured, solicited, and executed by third-party defendant ED&F Man, a London-based broker–dealer that, at the time it solicited the Goldstein Plan to open a brokerage account, purported to specialize in cross-border securities transactions for American clients. Id. ¶¶ 230–59. The Danish Arbitrage Transactions were the brainchild of ED&F Man traders who joined the Brokerage from MF Global's London desk as MF Global went bankrupt. Id.

While SKAT has not sued ED&F Man in the United States, it has sued the Brokerage in England (the "**English Action**"). See generally Declaration of Kari Parks (May 18, 2020) ("**Parks Decl.**") Exhibit 1, Amended Particulars of Claim, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Mar. 13, 2019) (the **"Amended English Complaint"** or "**AEC**"). SKAT alleges that ED&F Man stole millions in a "unified scheme" that used American pension plan clients as fronts for ED&F Man's own undisclosed self-dealing. See generally Parks Decl. Exhibit 2, Claimant's Further Particulars Regarding the Validity of WHT Refund Applications, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Feb. 28, 2020) (the "**Further Particulars**"); Parks Decl. Exhibit 3, Re-Amended Schedule 5T, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Feb. 28, 2020) ("**Schedule 5T**"). SKAT pleads that ED&F Man breached its own duties to SKAT—not that the Brokerage is vicariously liable for its clients' alleged misdeeds. Id. ¶18(e).

In this American litigation, ED&F Man has counterclaimed for indemnification against the Goldstein Parties, initially alleging that:

> [I]n the event that judgment is entered against [ED&F Man] in any action or proceeding, either in this jurisdiction, or in the English Action, or in any other proceedings based upon the tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions, ED&F Man is entitled to complete indemnification by the Plans [sic] pursuant to the [Custody] Agreement, including for all costs incurred, as ED&F Man fully satisfied its obligations therein.

Third-Party Defendant EDF& Man Capital Markets Limited's Answer to Amended Third-Party Complaint (the "**Counterclaim**" or "**Countercl.**") ¶ 367, Dkt. 280, 18-md-2865 (Mar. 2, 2020). ED&F Man's Counterclaim did not identify what those "other proceedings" might be. See generally Am. Countercl.

After the Goldstein Parties moved to dismiss because ED&F Man's initial Counterclaim stated no claim—the Goldstein Parties could not possibly be obligated to pay ED&F Man for losing this case to the Goldstein Parties, the much broader English Action to SKAT, or the hypothetical "other proceedings"—ED&F Man amended its counterclaim, demanding that:

> ED&F Man is entitled to complete indemnification by the Goldstein Parties pursuant to the Custody Agreement and / or the [T&C], including, without limitation, for all liabilities, losses[,] and / or costs suffered or incurred in connection with (i) the Custody Agreement and / or the [T&C], (ii) the performance of ED&F Man's obligations under the Custody Agreement and / or the [T&C], (iii) any tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions; and / or (iv) any action proceeding—whether in this jurisdiction, in the English Action, or in any other proceedings—related to the Custody Agreement, the [T&C], the performance of ED&F Man's obligations under the Custody Agreement and /or the [T&C], and / or any tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions.

Parks Decl. Exhibit 4, Amended Counterclaims of Third-Party Defendant ED&F Man

Capital Markets, Ltd. ¶ 29, Dkt. 323, 18-md-2865 (Apr. 20, 2020).[1]

## II.    SKAT Alleges that ED&F Man Engaged in "Systemic" Misconduct to Reap Over $86 Million from Danish Arbitrage Transactions

In the English Action, SKAT has sued ED&F Man in tort, arguing that ED&F Man

owed SKAT duties to ensure the accuracy of the Tax Vouchers that it created to certify its

clients' ownership of Danish securities, receipt of Danish dividends, and "suffering" of

Danish taxes withheld from those dividend payments. See generally AEC. In February

2020, SKAT pleaded more particularized allegations of unjust enrichment and negligent

misrepresentation against ED&F Man. See, e.g., Schedule 5T ¶¶ 3–8, 18.

In February 2020, SKAT pleaded more particularized allegations against ED&F

Man, emphasizing that the Brokerage's fundamental securities brokerage business

demonstrates both the duty of care that it owed SKAT and ED&F Man's many breaches

thereof:

- "ED&F Man failed to exercise any care and skill. The scale of ED&F Man's admitted misstatements is such that it is a case of *res ipsa loquitur*. If ED&F Man had maintained the basic systems and control that are the standard practice of a securities custodian, it would not have [issued the dozens of false Tax Vouchers];"
- "[A]s an experienced and sophisticated market participant, ED&F Man ought to have known that the chain of transactions comprised in the ED&F Man Scheme did not vest beneficial ownership in the [pension plan clients];"
- ED&F Man implemented the Danish Arbitrage Transactions "with a careless disregard for basic systems and controls, proper accounting and / or proper record keeping. Such carelessness was systemic within ED&F Man;"
- "ED&F Man's apparent inability to explain the causes of the admitted [Tax Voucher] errors without some six months' work by

---

[1] The T&C is annexed to ED&F Man's Amended Counterclaim as Exhibit 3.

external consultants implies a systemic failure of basic systems and controls. It implies a failure by ED&F Man to perform its most basic duties as a custodian."

Id. ¶¶ 19(a), (b), (c), (c)(iii).

SKAT's claims against the Goldstein Parties total less than 2% of the $86 million[2] that ED&F Man caused SKAT to "refund." See Compl. ¶ 13; Schedule 5T ¶ 8; accord Schedule 5T ¶18(c) (noting that "all or a substantial majority" of Tax Vouchers that ED&F Man created for certain other pension plans were baseless). Indeed, SKAT pleads that ED&F Man issued "Tax Vouchers[] in respect of many different [pension plans. . . . ] It is inherently probable that the single identical scheme which applied to [at least 36 different pension plans] was devised by ED&F Man, the entity common to all of the applications." Schedule 5T ¶ 5(b).

---

[2] This amount represents converting DKK 582,830,719.91 to U.S. Dollars on March 30, 2020, using a conversion rate of 1 U.S. Dollar to 6.77 Danish Kroner.

### III.    ED&F Man's September 2019 Admissions in the English Action Caused the Goldstein Parties to Sue the Brokerage for Defrauding Its Own Clients

From 2012 to 2015, ED&F Man arranged over $314 million in Danish Arbitrage Transactions that gave rise to at least 30 separate cases filed by SKAT in this MDL. ATPC ¶¶ 256–58. One of ED&F Man's crucial services was the preparation and issuance of "**Tax Vouchers**" certifying its clients' (a) ownership of the Danish Transactions' securities on the dividends' record dates, (b) receipt of the dividends net of withholding, and (c) "suffering" of withheld taxes. ATPC ¶¶ 249–55. The Goldstein Plan was just one of those clients.

In 2014 and 2015, ED&F Man created, structured, financed, and facilitated nine Danish Arbitrage Transactions for the Goldstein Plan (the "**Goldstein Transactions**"). ATPC ¶¶ 162, 180. At all times, ED&F Man told the Goldstein Plan that all of the activity it conducted—supposedly to benefit the Plan—was legitimate. See, e.g., ATPC ¶¶ 246–47 260–62, 268. In its initial December 2018 answer in the English Action, ED&F Man pleaded that it had followed the exact same, lawful processes for all of its clients' Danish Arbitrage Transactions. Schedule 5T ¶ 5(b). Then-European CEO Steven Hawksworth personally affirmed the truth of ED&F Man's original English answer. Schedule 5T ¶ 19(d).

But in September 2019, ED&F Man admitted to the English Court—without any notice whatsoever to the Goldstein Plan or the Brokerage's other clients sued by SKAT in this MDL—that it had created and issued at least 80 false Tax Vouchers that wrongfully certified its clients' receipt of Danish dividends and "suffering" of Danish dividend taxes (the "**Disavowed Vouchers**"). ATPC Exhibit A, Amended Defence of ED&F Man Capital

Markets Ltd ¶ 4.2, Annex E, <u>SKAT v. ED&F Man Capital Markets Ltd et al.</u>, Claim Nos. CL-2018-000297; CL-2018-000404; CL-2018-000590, (the "**Amended English Answer**" or "**AEA**").

ED&F Man admits that its Disavowed Vouchers resulted in SKAT overpaying more than $27 million[3] in "refunds" of Danish dividend taxes that had never been withheld (though despite many inquiries from the Goldstein Parties, ED&F Man has never explained how, exactly, that could have happened). <u>See id.</u> ¶ 4.2; <u>id.</u> Annex E. Four of those Disavowed Vouchers resulted in SKAT "refunding" over $750,000[4] to the Goldstein Plan for axes that the Plan was shocked to learn it had never paid. <u>See id.</u> Annex E. While Mr. Hawksworth no longer worked for the Brokerage, ED&F Man Managing Director Christopher John Robert Smith personally affirmed the truth of ED&F Man's Amended English Answer. <u>Id.</u> at 27.

The Goldstein Parties' subsequent investigation revealed that ED&F Man created and issued fraudulent Tax Vouchers to cause SKAT to pay out refunds for the Danish Arbitrage Transactions. <u>See generally</u> ATPC ¶¶ 130–46. In early 2019, ED&F Man closed the department that had created, solicited, structured, financed, and arranged all of the Goldstein Plan's Danish Arbitrage Transactions, fired each and every person who worked in that department, and forced its European CEO, Mr. Hawksworth—who had not only affirmed ED&F Man's initial English answer, but also personally signed

---

[3] This amount represents converting DKK 183,902,400 to U.S. Dollars on March 30, 2020, using a conversion rate of 1 U.S. Dollar to 6.77 Danish Kroner.

[4] This amount represents converting DKK 5,107,050 to U.S. Dollars on March 30, 2020, using a conversion rate of 1 U.S. Dollar to 6.77 Danish Kroner.

documents relating to all four of the Goldstein Plan's Disavowed Vouchers—to "resign" just two weeks before it filed the Amended English Answer and admitted that dozens of the Tax Vouchers are baseless. Id. ¶ 145.

## IV.   ED&F Man's English Admissions Contradict Its American Allegations

In its Amended English Answer, ED&F Man pleads that between 2012 and 2015, it created 420 Tax Vouchers to certify 36 pension plan clients' tax refund applications to SKAT. See AEA ¶ 6.2. ED&F Man claims that it followed the same procedures for all 420 Tax Vouchers and their associated Danish Arbitrage Transactions throughout this four-year period. See, e.g., id. ¶¶ 2.2, 10.1-11, 27.3. But just six months later, ED&F Man alleged that the Goldstein Plan—which did not engage in any Danish Arbitrage Transactions until 2014—"approached" ED&F Man with the trading concept and "originated the trading structures used by ED&F Man in the Danish [Arbitrage] Transactions." Am. Countercl. ¶¶ 15–18; see also Countercl. ¶¶ 348–64, 367.

The Goldstein Parties' previous Motion to Dismiss noted that the Plan could not possibly have originated the Danish Arbitrage Transactions, because ED&F Man, itself, has pleaded that it used the exact same structures for all Transactions and began doing so in 2012. Dkt. 299 at 12–13. ED&F Man now claims that the Goldstein Plan's agent (the "**Agent**") "agreed to send over indicative trade schedules and flow diagrams of various trade structures" in a March 2012 conference call and "subsequently sent the trading structures that would be the basis for the Danish Transactions to ED&F Man." Am. Countercl. ¶¶ 10–12; see also Newsong Fellowship Church 401(k) Plan et ano. v. ED&F Man Capital Markets, Ltd., 18-md-2865 Dkt. 324 ¶¶ 10–12, 15–17 (Apr. 20, 2020) (same);

<u>DW Construction, Inc. et al. v. ED&F Man Capital Markets Ltd.</u>, 18-md-2865, Dkt. 325 ¶¶ 10–12, 15–17, 18-md-2865 (Apr. 20, 2020) (same).

Yet the very same day it filed the Amended Counterclaim, ED&F Man filed an amended counterclaim in a related case in which it alleged that **those** plans "conceived, structured, and directed" their Danish Arbitrage Transactions. <u>Del Mar Asset Mgmt. Savings and Retirement Plan, et al. v. ED&F Man Capital Markets, Ltd.</u>, 18-md-2865, Dkt. 326 ¶ 6 (Apr. 20, 2020).

## V.   The Contracts Only Allow ED&F Man to Claim "Indemnification" from the Goldstein Plan if ED&F Man's Losses Do Not "Aris[e] Out of [Its Own] Willful Default, Fraud, or Negligence"

ED&F Man pleads that the Contracts provide the right to bring its single counterclaim, for "Indemnification," against the Goldstein Parties. <u>See</u> Am. Countercl. ¶¶ 1, 26. While Mr. Goldstein signed both Contracts on behalf of the Goldstein Plan, he, himself, is not a party to either Contract. <u>See</u> Custody Agreement at 1, 19; T&C at 1, 3.

ED&F Man correctly alleges that the Custody Agreement memorializes the Goldstein Plan's promise to indemnify ED&F Man against liabilities that ED&F Man incurs "in connection with the [Goldstein Plan's] Client Property, this [Custody] Agreement or other performance of [ED&F Man's] obligations under this [Custody Agreement]." <u>See</u> Am. Countercl. ¶ 23; Custody Agreement ¶¶ 22(a), 16(a). The T&C contain a similar provision. Am. Countercl. ¶28; T&C §§ 2(e)(VIII), 19.

But as it failed to do in its initial Counterclaim,  ED&F Man again neglects to plead the rest of the Custody Agreement's indemnity clause:

> [The Goldstein Plan's indemnity of ED&F Man] **shall not extend to any liability, loss or cost arising out of the willful default, fraud or negligence of [ED&F Man] or any Sub-Custodian appointed by [ED&F Man] under this [Custody] Agreement.**

Custody Agreement § 16(b) (emphasis added).

Moreover,  the Custody Agreement expressly contemplates that the Goldstein Plan may sue ED&F Man for "[ED&F Man's] own "breach of duty," "willful default, fraud, or negligence" in providing Custody Agreement services. Custody Agreement § 13(a). The T&C similarly contemplates that the Goldstein Parties may hold ED&F Man liable for its "negligence, willful default, or fraud." T&C §2(e)(III). English law governs both Contracts. Custody Agreement § 22(a); T&C § 36.

## LEGAL STANDARD

### I.     ED&F Man Must Prove that the Court Has Subject-Matter Jurisdiction over the Amended Counterclaim

The Court may grant a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction where it lacks the statutory or constitutional power to adjudicate the issue. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). ED&F Man bears the burden of proving, by a preponderance of the evidence, that this Court has subject-matter jurisdiction over its Counterclaim. Travelers Property Cas. Corp. v. Winterthur Int'l, No. 02 Civ. 2406(SAS), 2002 WL 1391920, at *1 (S.D.N.Y. June 25, 2002) (Scheindlin, J.) (citing Makarova, 201 F.3d at 113). "It is well ingrained in the law that subject-matter jurisdiction can be called into question either by challenging the sufficiency of the allegation or by challenging the accuracy of the jurisdictional facts

12

alleged." Id. (quoting Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found, Inc., 484 U.S. 49, 68 (1987)).

When a plaintiff raises a factual challenge to jurisdiction, a court must draw jurisdictional facts from the complaint, affidavits, and exhibits submitted by the parties. Id. (citing Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001); Kline v. Kaneko, 685 F. Supp. 386, 389–90 (S.D.N.Y. 1988) (Ward, J.) ). If a defendant challenges the legal sufficiency of a plaintiff's jurisdictional allegations, a court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. (citing Robinson, 269 F.3d at 149; Tasini v. New York Times Co., 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (Carter, J.); Virtual Countries, Inc. v. Republic of South Africa, 148 F. Supp. 2d 256, 262 (S.D.N.Y. 2001) (Schwartz, J.)).

## II.   ED&F Man Must Plead More than Just "Speculative" Allegations to State a Claim for Indemnification

To survive a Rule 12(b)(6) motion to dismiss, a complaint's allegations cannot be merely "speculative." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While the Court must accept the complaint's factual allegations as true and draw reasonable inferences in the plaintiff's favor, the plaintiff must allege enough facts to state a claim that is plausible on its face. Id. at 570; accord Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009)).

But the Court may reject allegations that are contradicted by documents, including public documents filed in other court proceedings. Roth v. Jennings, 489 F.3d 499, 510–11 (2d Cir. 2007) (documentary evidence trumps contradictory pleadings); Ades v. Deloitte & Touche, Nos. 90 Civ. 4959(RWS), 90 Civ. 5056(RWS), 1993 WL 362364, at *8 (S.D.N.Y.

Sept. 17, 1993) (Sweet, J.) (citing <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991)) (courts reviewing motions to dismiss may consider any documents attached to a complaint or any statements or documents incorporated by reference and make take notice of public records, "for no serious question as to the authenticity of documents required by law to be filed [publicly] can exist.").

The Court also may reject pleadings that are contradicted by a party's own allegations. <u>DeBlasio v. Merrill Lynch & Co, Inc.</u>, No. 07 Civ. 318(RJS), 2009 WL 2242605, at *26 (S.D.N.Y. 2009) (Sullivan, J.) (citation omitted). "[T]he [C]ourt is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true." <u>In re Richartz, Fliss, Clark & Pope, Inc.</u>, Bankr. No. 08-13919 (MG), 2010 WL 4502038, at *3 (Bankr. S.D.N.Y. Nov. 1, 2010) (Glenn, B.J.).

## ARGUMENT

### I.    ED&F Man's English and American Pleadings Cannot Both Be True

ED&F Man's unverified Amended Counterclaim—which flatly contradicts its sworn pleadings in the English Action, its previous Counterclaim in this case, and even a pleading it filed in a related case on the very same day it filed the Amended Counterclaim—warrants no weight at all. <u>Accord, e.g.</u>, <u>Fisk v. Letterman</u>, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (Marrero, J.) (dismissing *pro se* litigant's complaint, which was contradicted by the amended complaint's annexed exhibits); <u>Colodney v. Continuum Health Partners, Inc.</u>, No. 03 Civ. 7276, 2004 WL 829158, at *7 (S.D.N.Y. Apr. 16, 2004) (Cote, J.) (dismissing claim where "the facts contained in [the plaintiff's] own pleading

contradict any naked assertion that [the defendant's] statements about him were false."); cf. Fed. R. Evid. 801(d)(2)(C) (an opposing party's statement is not hearsay).

In the English Action, ED&F Man consistently has pleaded that it used the exact same securities trading structures for all 420 of its Tax Vouchers and concomitant Danish Arbitrage Transactions, and that it began facilitating those Transactions in 2012—two years before the Goldstein Plan ever engaged in any Danish Arbitrage Transaction. See Amended English Answer ¶¶ 10–11, 27.3, 27.5; accord Schedule 5T ¶ 5(b) ("Save for the [Disavowed Vouchers], ED&F Man Alleges that the Paragraph 10 Transactions occurred in respect of each of the Tax Vouchers it issued.").

ED&F Man's then-European CEO, Mr. Hawksworth, personally verified ED&F Man's initial December 2018 Answer. Schedule 5T ¶ 19(D). Less than a month after Mr. Hawksworth's "resignation," ED&F Man filed its Amended English Answer, and an ED&F Man Managing Director made an identical personal affirmation that "the facts stated in [ED&F Man's Initial English Answer] [we]re true and [he was] duly authorized by [ED&F Man] to sign th[e] statement of truth on its behalf." See AEA at 27. But nobody—let alone an ED&F Man agent with personal knowledge—verified ED&F Man's March 2, 2020 Counterclaim against the Goldstein Parties, or even its April 20, 2020 Amended Counterclaim. See Countercl.; Am. Countercl.

ED&F Man's own sworn pleadings demonstrate that the Goldstein Parties did not "originate[] the trading structures used by ED&F Man in the Danish Transactions," which ED&F Man deployed no later than 2012. Even ED&F Man's unverified amended counterclaim against Del Mar and Federated Logistics—filed the very same day as the

15

Amended Counterclaim—claims that **those** plans "conceived, structured and directed" all of the Danish Arbitrage Transactions that ED&F Man conducted for those plans. See Dkt. 326 ¶ 6. ED&F Man's half-hearted insinuation that it outsourced a Brokerage-wide, $86 million trading strategy to a small American pension plan's Agent fails to thread the needle between its contradictory American and English pleadings.

ED&F Man can provide no reason why this Court should attempt to "reconcile" its Counterclaim with its Amended English Answer or accept it newest pleading as true. See In re Richartz, 2010 WL 4502038, at *3. This Court should dismiss ED&F Man's Amended Counterclaim.

## II.    Indemnify What?

Implausible pleadings aside, ED&F Man states no claim at all.

ED&F Man's original counterclaim sought indemnification of three types of possible loss: (1) adverse judgment in this action filed by the Goldstein Parties; (2) adverse judgment in the English Action filed by SKAT; and (3) adverse judgment in "any other proceedings based upon the tax reclaim applications submitted by or on behalf of the Plan for the [Goldstein] Transactions." Countercl. ¶ 367.

As the Goldstein Parties argued in their previous Motion to Dismiss, ED&F Man stated no claim because to the extent that its counterclaim was not wildly speculative, it asked the Goldstein Parties to indemnify ED&F Man for a future judgment in which ED&F Man would be held liable to the Goldstein Parties for defrauding the Goldstein Parties. Dkt. 299 at 14–15. Besides its inherent absurdity, ED&F Man's position was prohibited by the very contract upon which it relied, which expressly provides that the

16

Goldstein Parties need not indemnify ED&F Man for any loss caused by its own "willful default, fraud, or negligence." Id.

But instead of curing its initial complaint's fundamental flaw, ED&F Man has just piled on even more vague and speculative "bases" of indemnification:

> ED&F Man is entitled to complete indemnification by the Goldstein Parties pursuant to the Custody Agreement and / or the Terms and Conditions, including, without limitation, for all liabilities, losses, and / or costs suffered or incurred in connection with (i) the Custody Agreement and / or the Terms and Conditions; (ii) the performance of ED&F Man's obligations under the Custody Agreement and / or the Terms and Conditions; (iii) any tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions; and / or (iv) any action or proceeding—whether in this jurisdiction, in the English Action, or in any other proceedings—related to the Custody Agreement, the Terms and Conditions, the performance of ED&F Man's obligations under the Custody Agreement and / or the Terms and Conditions, and / or any tax reclaim applications submitted by or on behalf of the Plan for the Danish Transactions.

Am. Countercl. ¶ 29.

ED&F Man's second attempt still fails to answer the fundamental 12(b)(6) question: Indemnify what?

## A.  The Amended Complaint Violates the Most Basic Notice Requirements

As a threshold matter, the Amended Counterclaim is so vague that this Court should not require the Goldstein Parties to defend against it. See, e.g., Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (complaint must give adverse party sufficient notice of a claim to answer it and prepare for trial).

ED&F Man fails to allege that the Goldstein Parties broke the law at all, let alone how they broke the law. Cf. Iqbal, 556 U.S. at 696 ("a plaintiff must allege facts that, taken as true, are suggestive of illegal conduct") (citing Twombly, 550 U.S. 544, 564 n.8 (2007).

17

Instead, ED&F Man merely asserts that the Goldstein Parties must indemnify it for "all liabilities, losses, and / or costs suffered or incurred in connection with" (i) the Contracts, (ii) ED&F Man's performance under the Contracts, (iii) any Danish Arbitrage Transactions reclaim applications, and, finally, the same claim made in ED&F Man's initial Counterclaim: (iv) "any action or proceeding[,] whether in this jurisdiction, in the English Action, or in any other proceedings[,] related to" (a) the Contracts, (b) ED&F Man's performance under the Contracts, or (c) the Danish [Arbitrage] Transactions reclaim applications." Am. Countercl. ¶ 29.

ED&F Man's only semi-specific factual allegation—which contradicts its own numerous sworn pleadings in multiple jurisdictions—is that the Agent devised the Danish Arbitrage Transactions. Am. Compl. ¶¶ 12, 16, 17. But those allegations, without any explanation of why that activity might be wrongful, fail to nudge ED&F Man's claim from "possible" to "probable." Cf. Twombly, 550 U.S. at 552 (affirming dismissal where court concluded that "parallel business conduct allegations, taken alone, do not state a[n antitrust claim; plaintiffs must allege additional facts tending to exclude [legal] conduct as an explanation for the parallel actions").

As in Twombly, ED&F Man's allegations are "confined to naked legal conclusions []or consistent with legal conduct." Iqbal, 556 U.S. at 696–97 (citing Twombly, 550 U.S. at 552). ED&F Man states no claim.

**B. Because ED&F Man has Not Incurred Liability for Any Alleged Acts of the Goldstein Parties, ED&F Man Cannot Establish Subject-Matter Jurisdiction over Its Amended Counterclaim**

Indemnification claims "are not ripe for adjudication until liability has been imposed upon the party to be indemnified." FSP, Inc. v. Societe Generale, No. 02 Civ. 4786, 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003) (Daniels, J.) (collecting cases). The Court must dismiss the Counterclaim pursuant to Rule 12(b)(1) because ED&F Man has not alleged—and, for the foreseeable future, cannot allege—Article III's minimal "case or controversy" requirements for subject-matter jurisdiction. See Wright & Miller, Fed. Practice & Procedure, § 3532 at 241.

No indemnification claim arises where a party alleges liability that it has not yet incurred, let alone for "actions that do not currently exist." FSP, 2003 WL 124515, at *5; see also, e.g., Bd. of Trustees of S. California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp., No. 09 CIV. 6273 RMB, 2011 WL 6130831, at *2 (S.D.N.Y. Dec. 9, 2011) (Berman, J.) ("A claim resting on contingent future events that may occur as anticipated or may not occur at all[] is not ripe for adjudication.") (quoting Winterthur, 2002 WL 1391920, at *6); The Charter Oak Fire Ins. Co. v. Bolding, No. 08-CV-02632 (KAM), 2009 WL 3246116, at *5 (E.D.N.Y. Oct. 1, 2009) (Matsumoto, J.) ("even if the 'makings of a potential controversy' exist, they are insufficient to meet the case or controversy requirement.").

For the same reasons, no "actual controversy" exists where an indemnification claim rests on potential, unasserted, unfiled, or similarly speculative claims. Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (holding that no case or

controversy because whether the plaintiff "someday will be held subject to environmental liability at some unknown third-party site is speculative"); accord, e.g., U.S. Underwriters Ins. Co. v. Kum Gang Inc., 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) (Glaser, J.) ("A controversy cannot be a mere possibility or probability that a person may be adversely affected in the future.").

ED&F Man does not allege that the Goldstein Parties have committed any wrongful acts, let alone that those wrongful acts have caused ED&F Man any actionable harm. See generally Am. Countercl. Instead, ED&F Man merely (and inaccurately) summarizes the Contracts' indemnities and essentially claims that their mere existence is sufficient to make the Goldstein Parties counterclaim defendants. See generally id.

ED&F Man's position is far too vague and speculative to state a "case or controversy" ripe for adjudication. See, e.g., Convergent Wealth Advisors LLC v. Lydian Holding Co., No. 12 CIV 1199, 2012 WL 2148221, at *5 (S.D.N.Y. June 13, 2012) (Scheindlin, J.) (holding that the duty to indemnify is triggered by a determination of liability, not the filing of a lawsuit) (citing Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 216 (S.D.N.Y. 2013) (Cote, J.)); FSP, 2003 WL 124515, at *4 (dismissing indemnification claim as "not justiciable to the extent it [sought] a declaration regarding defendant's obligation to defend and indemnify plaintiff with regard to potential, unfiled claims, and [sought] reimbursement for losses arising from the eight filed actions and future, anticipated claims.").

Where, as here, "the facts on which the Court's decision depends have yet to unfold," the Court must dismiss the indemnification claim. <u>IBEW-NECA Defined Contribution Plan</u>, 2011 WL 6130831, at *2 (quoting <u>Winterthur</u>, 2002 WL 1391920, at *6).

### C.  ED&F Man Cannot Seek Indemnification of Its Own Wrongful Conduct

Because both black-letter law and the Contracts prohibit ED&F Man from being indemnified for its own wrongful acts, Rule 12(b)(6) provides a separate basis to dismiss the Amended Counterclaim.

In the "classic indemnification case," the party seeking indemnification has not committed any wrong, "but by virtue of some relationship with the tortfeasor or obligation imposed by law, was nevertheless held liable to the injured party." <u>Glaser v. M. Fortunoff of Westbury Corp.</u>, 71 N.Y. 2d 643, 646–47 (1988) (quoting <u>D'Ambrosio v. City of New York</u>, 55 N.Y.2d 454, 461 (1982)); <u>accord</u> <u>Tokio Marine and Fire Ins. Co., Ltd. v. Grodin</u>, 05 Civ. 9153 (DLC), 2006 WL 3054321, at *3 (S.D.N.Y. Oct. 27, 2006) (Cote, J.) (applying New York law) ("A party is entitled to indemnification when it is held liable for a tort committed by a third party despite the fact that it has done no wrong."). New York law recognizes both explicit contractual and implied (sometimes dubbed "common-law") indemnification claims. <u>Anderson v. Greyhound Lines, Inc.</u>, No. 06 Civ. 13371 GBD, 2011 WL 3480945, at *2 (S.D.N.Y. Aug. 3, 2011) (Daniels, J.).

But "[a]n action does not become [one] for indemnity merely because the pleader has so denominated it." <u>Peoples' Democratic Rep. of Yemen v. Goodpasture, Inc.</u>, 782 F.2d 346, 350 (2d Cir. 1986) (quoting <u>Bunker v. Bunker</u>, 80 A.D.2d 817, 817 (1st Dep't 1981)); <u>accord</u> <u>Anderson</u>, 2011 WL 3480945 WL at *4 ("In order to constitute a true

indemnification clause, the contractual obligation must be to assume the cost of liability irrespective of fault."); IIG Capital LLC v. Van Der Mew & Anr [2008] EWCA Civ 542 ("[I]t ultimately depends on the true construction of the agreement whether a particular label is the right one to apply to any instrument. [ . . . ] [T]he instrument must be construed by looking at it as a whole without preconceptions as to what it is.") (citation and quotation marks omitted).

Furthermore, black-letter law prohibits  ED&F Man from seeking indemnification of its own wrongful acts. See, e.g., CBS Corp. v. Eaton Corp., No. 07 Civ. 11344 (LBS), 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30, 2010) (Sand, J.) ("[C]ontracts that would indemnify a party for intentional or fraudulent conduct are void as against public policy in New York"); Rosado v. Proctor & Schwartz, 66 N.Y.2d 21, 25–27 (1985)); Capita (Banstead 2011) Ltd v. RFIB Grp. Ltd [2015] EWCA Civ 1310 ¶ 10.3 ("The law, on public policy grounds, does not permit a party to exclude liability for the consequences of his own fraud.") (quoting Sir Kim Lewison, The Interpretation of Contracts (2d supplement 12.06)). Even if its own wrongful conduct was just a concurrent cause of the alleged loss, the party cannot claim indemnity. Capita ¶¶ 25–26, 28, 46.

This common-law prohibition also applies to securities fraud, which the Goldstein Parties have alleged against ED&F Man. See Globus v. Law Research Serv, Inc., 287 F. Supp. 188, 199 (S.D.N.Y. 1968) (Mansfield, J.), aff'd in pertinent part, 418 F.2d 1276, 1288–89 (2d Cir. 1969) (holding that indemnification is not available in an action for securities fraud because "one cannot insure himself against his own reckless, willful or criminal misconduct"); accord, e.g., Gabriel Capital, L.P. v. Natwest Finance, Inc., 137 F. Supp. 2d

251, 267 (S.D.N.Y. 2000) (Scheindlin, J.) ("Because indemnification shifts the cost of tortious conduct to another party, it cannot apply when the party seeking the indemnification knowingly and willfully violated federal securities laws."); Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.), 747 F. Supp. 922, 930 (S.D.N.Y. 1990) (Stewart, J.) (same).

In Amusement Industry v. Stern, this very Court dismissed an indemnification claim where the third-party plaintiff "assert[ed] he was 'duped' by [the third-party defendant] and did nothing wrong," yet pleaded "[no] scenario under which [the third-party plaintiff] could be found both free from fault and at the same time liable for damages to [anyone] because of [the third-party defendant]." 693 F. Supp. 2d 319, 327 (S.D.N.Y. 2010) (Kaplan, J.).

As in Stern, because both the Goldstein Parties and SKAT pursue claims against ED&F Man for ED&F Man's tortious wrongdoing, there is no situation in which ED&F Man both (a) will have judgment entered against it **and** (b) will be entitled to indemnification of that judgment. The Court should dismiss the Amended Counterclaim.

### 1. ED&F Man States No Contractual Indemnification Claim

Both English and New York law apply common-sense, common-law contract interpretation principles to determine whether an indemnity controls.[5] See, e.g., Capita ¶ 10.2) ("[T]he task is always to ascertain what the parties intended in their particular commercial context in accordance with the established principles of construction.") (citations omitted); In re MF Global Inc., 496 B.R. 315, 319 (S.D.N.Y. 2013) (Marrero, J.) (on appeal of MF Global's liquidation pursuant to the Securities Investor Protection Act where trustee was investigating negligence and breach of fiduciary duty claims against MF Global's officers and directors, noting "courts should read the integrated contract 'as a whole to ensure that undue emphasis is not placed upon particular words and phrases and to safeguard against adopting an interpretation that would render any individual provision superfluous.'") (quoting Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010)).

Given the common-law prohibition against indemnification of a party's wrongful acts (and just plain common sense), the law recognizes that it is "inherently improbable that one party should agree to discharge the liability of the other party for acts for which he is responsible." U.M.B. Chrysler [1978] 1 WLR 165 (citation and quotation marks omitted); accord Smith v. South Wales Switchgear [1968] 1 WLR 168E. No claim exists

---

[5] ED&F Man's allegations suggest a claim for contractual, not implied, indemnification. See Am. Countercl. ¶¶ 23–28 29 (purporting to summarize the T&C and Custody Agreement Section 16, but omitting the directive that the Goldstein Parties need not indemnify ED&F Man for "any liability, loss or cost arising out of the willful default, fraud or negligence of [ED&F Man]"). English law governs the Contracts. See Custody Agreement ¶ 22(a); T&C § 36.

unless the contract's "ordinary meaning" clearly provides for the indemnity. See, e.g., Smith v. South Wales Switchgear [1968] 1 All ER 18  (quoting Canada Steamship Lines Ltd v. The King [1952] AC 192, 208)); accord Hooper Assoc. v. AGS Computers, 74 N.Y.2d 487, 491–92 (1989) (an indemnity "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances.").

Therefore, the presumption against interpreting indemnification clauses to cover a party's own negligence is "well-established." Smith (citation omitted). That presumption applies with "even greater force to dishonest wrongdoing, because of the inherent improbability of one party assuming responsibility for the consequences of dishonest wrongdoing by the other." Capita ¶ 10.

Here, the Custody Agreement explicitly incorporates the common-law prohibition forbidding indemnification of the tortious conduct for which SKAT has sued ED&F Man. See Custody Agreement § 16(b) (indemnification does not apply to "willful default, fraud, or negligence"); cf. id. §13(a) (The Goldstein Plan may hold ED&F Man liable for losses caused by ED&F Man's "own breach of duty," "willful default, fraud, or negligence"). The heart of both SKAT's and the Goldstein Parties' claims against ED&F Man is precisely the type of "dishonest wrongdoing" that the Goldstein Parties need not indemnify.

### a.  The Contracts Do Not Require the Goldstein Plan to "Indemnify" ED&F Man for Losing This Lawsuit to the Goldstein Parties

ED&F Man claims that the Goldstein Parties must indemnify it for "all liabilities, losses and / or costs suffered or incurred in connection with [ .. . ] any action or proceeding [ . . . ] in this jurisdiction." Am. Countercl. ¶ 29.

But the Goldstein Parties' suit is the **only** action "in this jurisdiction" that arises "in connection with the [Goldstein Plan's] property, th[e Goldstein Plan's Custody] Agreement, or the performance of [ED&F Man's] obligations under th[e Goldstein Plan's Custody] Agreement." See Custody Agreement 16(b); cf. Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortgage Funding, Inc.,  916 F.3d 116, 126 (2d Cir. 2019) (unless a contract "unequivocally" or "unmistakably [and] clear[ly]" covers first-party claims, a contractual indemnity only contemplates "actual indemnification" paid to a third party). Is ED&F Man seriously arguing that the Goldstein Plan must pay ED&F Man if ED&F Man loses this lawsuit to the Goldstein Parties?

Absurdity aside, the Contracts' indemnities do not apply to the Goldstein Parties' case because it alleges securities fraud, common-law fraud, negligence, tortious interference, breach of fiduciary duty, and contract claims against ED&F Man—all expressly exculpated from the Custody Agreement's indemnification provision. Compare ATPC ¶¶ 365–447 and Custody Agreement § 16(b) (Goldstein Plan "shall not" indemnify ED&F Man for any losses arising out of its "willful default, fraud, or negligence").

Moreover, both Contracts expressly contemplate that the Goldstein Plan may sue ED&F Man for the exact misconduct alleged:

> [ED&F Man] shall only be liable to [the Goldstein Plan] for any liability, loss or cost suffered by or incurred by [the Goldstein Plan] to the extent that such liability, loss or cost is a direct result of its own breach of duty, the willful default, fraud, or negligence of [ED&F Man] in providing services under this Agreement.

Custody Agreement § 13(a); accord T&C § 2(e)(III).

Reading Custody Agreement Section 13(a) in conjunction with Section 16 makes it particularly clear that the Goldstein Plan need not indemnify ED&F Man for losing this litigation to the Goldstein Parties. Cf. Waite v. Paccar Financial PLC [2012] EWCA Civ. 901 ¶ 27 ("It is[] necessary to read [a contract] as a whole in order to determine, not only the internal construction of each clause, but also the interrelation of each clause with every other insofar as they may overlap."). Holding otherwise would render Section 13(a) "superfluous," "violat[ing] one of the most basic tenets of contract interpretation."). Anderson, 2011 WL 3480945, at *4 (granting motion for summary judgment dismissing contribution, indemnification, and breach of contract claims).

The Custody Agreement is clear: the Goldstein Parties need not reimburse ED&F Man for any eventual judgments it must pay in connection with the "willful default, fraud, or negligence" that the Brokerage perpetrated against the Goldstein Parties.

### b. Because SKAT Alleges Wide-Ranging Tortious Conduct Against ED&F Man, the Goldstein Plan Need Not Indemnify Any English Judgment

ED&F Man also claims that the Goldstein Parties must indemnify it for losses suffered in connection with the English Action, Am. Compl. ¶ 29, where SKAT has sued ED&F Man for negligence and related torts, alleging that "the single identical scheme which applied to [36 separate pension plans] was devised by ED&F Man, the entity

27

common to all of the applications." Schedule 5T ¶¶ 5(b), 17(c). Because the Goldstein Parties need not indemnify ED&F Man for its own "willful default, negligence, or fraud," the inquiry ends there: under no circumstances must the Goldstein Parties indemnify ED&F Man for its own wrongful conduct.

Regardless, the misconduct alleged by SKAT ranges far more widely than any transactions that ED&F Man facilitated for the Goldstein Parties, which, in monetary terms, comprise less than 2% of the loss that ED&F Man caused SKAT. Schedule 5T ¶ 8; Compl. ¶ 13. Therefore, ED&F Man's liability in the English Action will encompass far more than that the Brokerage might suffer "in connection with [the Goldstein Plan's] Property, this Agreement or the performance of [ED&F Man's] obligations under [the Goldstein Plan's Custody] Agreement." See Custody Agreement § 16(b); cf. Petroleo Brasileiro ¶ 43 (Indemnity clauses "cover consequences proximately caused, no more and no less."); Handelsbanken v. Dandridge [2002] EWCA Civ 577 ¶ 47 (when determining whether an indemnity clause applies, "the first task of the court is to look to see whether one of the causes is plainly the proximate cause of the loss"); The White Rose [1969] 1 WLR 1098, 1107 ("[T]he right to indemnity only arises if and insofar as the loss suffered by the shipowners can be proved to have been caused by compliance with the time charterers' instructions").

In other words, any adverse judgment in the English Action triggers both of the indemnity's disqualifiers: it (1) arises out of ED&F Man's negligent, fraudulent, and otherwise wrongful acts and (2) was performed almost completely "in connection with"

dozens of other pension plans, not the Goldstein Plan. Neither Contract requires the Goldstein Parties to indemnify ED&F Man for an adverse judgment in the English Action.

   c. **The Goldstein Parties Cannot Indemnify ED&F Man for Hypothetical Adverse Judgments in Unidentified, Theoretical Proceedings**

Finally, ED&F Man also seeks indemnification of losses sustained in connection with "any other proceedings [ . . . ] related to the Custody Agreement, the [T&C], the performance of ED&F Man's obligations under the Custody Agreement and / or the [T&C], and / or any tax reclaim applications submitted by or on behalf of the [Goldstein] Plan for the Danish Transactions." Am. Countercl. ¶ 29.

But ED&F Man fails to plead any hint of what those phantom proceedings might possibly be, violating the most basic notice principles. See supra Argument § II(A). ED&F Man's silence is fatal to its Counterclaim. See, e.g., In re Lehman Bros. Holdings Inc., 530 B.R. 601, 612 (Bankr. S.D.N.Y. 2015) (Chapman, B.J.) (dismissing claim for contractual indemnification where debtor "failed to allege liability to a third party and therefore failed to state a claim for indemnification.").

**2. ED&F Man States No Implied Indemnification Claim Because It Faces Direct Liability for Its Own Wrongful Acts, Not Vicarious Liability for the Goldstein Parties' Conduct**

Common-law or "implied" indemnity is restitutionary, allowing loss-shifting if failing to do so would result in unjust enrichment. <u>Amusement Indus.</u>, 593 F. Supp. 2d at 325 (quoting <u>Mas v. Two Bridges Assocs.</u>, 75 N.Y.2d 680, 690 (1990)); <u>accord</u> <u>McDermott v. City of New York</u>, 50 N.Y. 2d 211, 216–17 (1980) ("It is nothing short of simple fairness to recognize that 'a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.'").

But common-law indemnification covers only "purely vicarious" liability. <u>Bd. of Managers of 125 N. 10th Condo. v. 125North10, LLC</u>, 150 A.D.3d 1063, 1064–65 (2d Dep't 2017); <u>accord</u> <u>U.S. Bank Nat. Ass'n v. Commonwealth Land Title Ins. Co.</u>, No. 13 Civ. 7626 NRB, 2015 WL 1291151, at *4 (S.D.N.Y. Mar. 23, 2015) (Buchwald, J.) (citation omitted) ("If defendant is found liable to petitioner for rescission based on fraud, it would not be able to obtain indemnification, since its loss would result from its own culpability in the transfer of title in violation of petitioner's rights.")).

Furthermore, implied indemnification is unavailable if "the party seeking indemnification was 'partially at fault' or 'responsible in any degree." <u>Monaghan v. SZS 33 Assoc. LP</u>, 73 F.3d 1276, 1284–85 (2d Cir.1996); <u>Trs. Of Columbia Univ. v. Mitchell/Giurgola Assocs.</u>, 109 A.D.2d 449, 453 (1st Dep't 1985) ("Since the predicate of common-law indemnity is vicarious liability without actual fault on the part of the

proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").

Even parties only partially at fault cannot seek indemnification. Rock v. Reed-Prentice Div. of Package Mach. Co., 39 N.Y.2d 34, 39 (1976) ("[C]ourts of this State, and throughout the Nation generally, refuse[] to imply a right to partial indemnification against another who played an effective role in causing the damage.") (citation and quotation marks omitted); accord, e.g., Barbagallo v. Marcum LLP, No. 11-CV-1358, 2012 WL 1664238, at *4 (S.D.N.Y. May 11, 2012) (Weinstein, J.) (New York law does not permit a party to indemnify itself for its own intentional torts); General Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. AON Reinsurance Agency, Inc., 860 F. Supp. 983, 988 (S.D.N.Y. 1994) (Conner, J.) ("[I]ndemnity cannot be implied if [the party seeking it] is at least partially at fault") (citation and quotation marks omitted); Knight v. H.E. Yerkes and Assocs., Inc., 675 F. Supp. 139, 143 (S.D.N.Y. 1987) (Leisure, J.) (same).

For the same reasons, "where the underlying action is one for breach of contract, a defendant may not seek indemnification because the defendant, if found liable to the plaintiff in the underlying action, will have necessarily participated in the wrongdoing by breaching the contract." U.S. Bank, 2015 WL 1291151, at *2 (granting motion to dismiss third-party implied indemnification) (citations omitted).

For example, the Second Department has affirmed the dismissal of an implied indemnification claim where the party seeking indemnification had retained "some responsibility" for the contract's performance, as "any liability [of that party] would be premised upon the affirmative wrongdoing of the sponsors and would not be purely

vicarious." <u>125 N. 10th Condo.</u>, 150 A.D.3d at 1064–65; <u>accord</u> <u>In re Polling Transp. Corp.</u>, 784 F. Supp. 1045, 1048 (S.D.N.Y. 1992) (Sweet, J.) ("No right to implied indemnification exists when the proposed indemnitee retains a duty it owes directly to plaintiff.").

As discussed <u>supra</u>, ED&F Man has identified no jurisdiction where it faces vicarious liability for the Goldstein Parties' acts. <u>See generally</u> Am. Countercl.

Instead, SKAT has sued the Brokerage for breaching its own duties to SKAT by creating hundreds of false Tax Vouchers. <u>See, e.g.</u>, Schedule 5T ¶¶ 3–8, 18. The Goldstein Plan's gross "profits" total less than 2% of the total damage that ED&F Man allegedly caused SKAT. <u>Id.</u> ¶ 8; Compl. ¶ 13. The Goldstein Parties, meanwhile, sue ED&F Man for wrongs that the Brokerage committed against the Goldstein Parties. <u>See generally</u> ATPC.

Furthermore, both the English Action and this American litigation allege that the entire purpose of the Brokerage's "unified scheme" was to unjustly enrich itself, and ED&F Man admits that it arranged over $86 million of Danish Arbitrage Transactions, reaping profits all the way. This situation is precisely the opposite of that which warrants an implied indemnity. <u>See, e.g.</u>, <u>Amusement Indus.</u>, 593 F. Supp. 2d at 325 (implied indemnity is restitutionary and designed to prevent unjust enrichment).

### III.     ED&F Man Again Pleads No Allegations Against Sheldon Goldstein, Who is Not a Party to the Contracts

Finally, a claim against multiple defendants "must give notice to **each** defendant of its alleged misconduct." Dietrich v. Bauer, 76 F. Supp. 2d 312, 329 (S.D.N.Y. 1999) (Sweet, J.) (emphasis in original) (citation and quotation marks omitted); accord, e.g., Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y., 808 F. Supp. 213, 230 (2d Cir. 1992); United States v. Persico, 832 F. 705, 714 (2d Cir. 1987). "Without this requirement, the policies of giving fair notice to, and protecting the reputation of, each defendant would be frustrated—parties might be improperly swept into the discovery stage of a litigation with other parties against whom [misconduct] has been properly alleged." Id.

The Goldstein Parties previously moved to dismiss ED&F Man's Counterclaim because it failed to "plead a single allegation against Sheldon Goldstein," who "is not even a party to the [Contracts]." See Dkt. 299 at 26 (citing Countercl. ¶¶ 342–67; Custody Agreement 1, 19). But ED&F Man still pleads no allegations against Mr. Goldstein!

This Court should dismiss him from the Amended Counterclaim.

33

## CONCLUSION

There is no contractual, legal, or even logical reason why the Goldstein Parties should indemnify ED&F Man for the fraud, negligence, and breaches of contractual and fiduciary duties it committed against SKAT and the Goldstein Parties. Sheldon Goldstein is not even a party to the Custody Agreement. And ED&F Man has twice failed to allege any indemnification bases ripe for adjudication.

Therefore, the Goldstein Parties respectfully request that the Court dismiss ED&F Man's Counterclaim with prejudice, pursuant to Rule 12(b)(1) and / or 12(b)(6).

Dated: New York, New York
       May 18, 2020

                                        GUSRAE KAPLAN NUSBAUM PLLC

                                        By: /s/ Martin H. Kaplan
                                        Martin H. Kaplan
                                        Kari Parks
                                        120 Wall Street
                                        New York, New York 10005
                                        Telephone: (212) 269-1400
                                        Fax: (212) 809-5449
                                        mkaplan@gusraekaplan.com
                                        kparks@gusraekaplan.com

                                        *Counsel for Third-Party Counterclaim
                                        Defendants The Goldstein Law Group PC
                                        401(K) Profit Sharing Plan and Sheldon
                                        Goldstein*