**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to:      18-cv-09797[1]
                               18-cv-10100

MASTER DOCKET

18-md-2865 (LAK)

**THIRD-PARTY PLAINTIFFS/COUNTERCLAIM-DEFENDANTS'**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**ED&F MAN CAPITAL MARKETS LTD.'S AMENDED COUNTERCLAIMS**

K&L GATES LLP
John C. Blessington
Brandon R. Dillman
One Lincoln Street
Boston, MA  02111
617.261.3100

*Attorneys for Defendants /*
*Third-Party Plaintiffs in the*
*above-captioned related*
*proceedings*

---

[1] SKAT's actions first filed in Utah federal court were consolidated and then transferred to this Court for pretrial purposes only. The above-captioned related action, 18-cv-09797, comprises the following actions: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ............................................................................................................2

    I.     The Plans engaged in sophisticated securities transactions
           with ED&F acting as their broker-custodian. .............................................2

    II.    SKAT filed a lawsuit against ED&F alleging that ED&F
          negligently misrepresented the Plans' shareholdings and
          receipt of dividends. .....................................................................................4

    III.   ED&F filed counterclaims against the Plans seeking
          indemnification under the Custody Agreement and its
          T&Cs...............................................................................................................6

LEGAL STANDARDS ..................................................................................................7

    I.     Federal Rule of Civil Procedure 12(b)(1) requires
          dismissal of a claim that has not accrued and is not ripe. .........................7

    II.    Federal Rule of Civil Procedure 12(b)(6) requires
          dismissal of a claim that is not plausible on its face. ................................9

ARGUMENT .................................................................................................................10

    I.     ED&F's indemnification claim has not accrued and is not
          ripe for judicial consideration. ..................................................................10

    II.    ED&F fails to state a claim on which relief can be granted
          because of the express language in the Custody Agreement
          and the T&Cs. ...............................................................................................12

CONCLUSION ..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**U.S. Cases**

*Access Ins. Co. v. Carpio*,
   861 F. Supp. 2d 539 (E.D. Pa. 2012) ......................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937 (2009) ....................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007) ....................................................................9

*Bd. of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*,
   No. 09 Civ. 6273, 2011 WL 6130831 (S.D.N.Y. Dec. 9, 2011) ............................12

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*,
   492 F.3d 89 (2d Cir. 2007) ....................................................................................8

*Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*,
   90 F.3d 671 (2d Cir. 1996) ........................................................................7, 11, 12

*Charter Oak Fire Ins. Co. v. Bolding*,
   No. 08-CV-02632, 2009 WL 3246116 (E.D.N.Y, Oct. 1, 2009) ............................12

*Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*,
   773 F.3d 110 (2d Cir. 2014) ............................................................................13, 14

*Convergent Wealth Advisors LLC v. Lydian Holding Co.*,
   No. 12 Civ. 1199, 2012 WL 2148221 (S.D.N.Y. June 13, 2012)............8, 10, 11, 12

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ................................................................................9, 15

*DiMartino v. De Lage Landen Fin. Servs., Inc.*,
   209 F. Supp. 3d 783 (E.D. Pa. 2016) ....................................................................14

*Egan v. Marsh & McLennan Cos.*,
   No. 07 Civ. 7134, 2008 WL 245511 (S.D.N.Y. Jan. 30, 2008)..........................9, 14

*Freund v. Utah Power & Light Co.*,
   793 P.2d 362 (Utah 1990) ....................................................................................13

*Haynes v. Kleinewefers & Lembo Corp.*,
   921 F.2d 453 (2d Cir. 1990) ..................................................................................13

*Kurek v. Port Chester Housing Authority*,
    223 N.E.2d 25 (N.Y. 1966) ........................................................................13

*Lane v. Commonwealth*,
    954 A.2d 615 (Pa. Super. Ct. 2008) ....................................................13, 15

*Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*,
    916 F.3d 116 (2d Cir. 2019) ..............................................................10, 11

*Marchi v. Bd. of Coop. Educ. Servs.*,
    173 F.3d 469 (2d Cir. 1999) ......................................................................8

*Musco v. Conte*,
    22 A.2d 121 (N.Y. App. Div. 1964) ...........................................................11

*NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.*,
    745 F. App'x 416 (2d Cir. 2018) ...............................................................13

*New Mexicans for Bill Richardson v. Gonzales*,
    64 F.3d 1495 (10th Cir. 1995) ............................................................7, 8, 9

*Pavoni v. Nielsen*,
    999 P.2d 595 (Utah Ct. App. 2000) ...........................................................11

*Philadelphia Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v.*
    *Ridge*,
    150 F.3d 319 (3d Cir. 1998) ......................................................................8

*In re Linerboard Antitrust Litig., MDL No. 1261*,
    Civ. A. 04-4001, 2005 WL 1625040 (E.D. Pa. July 11, 2005) ....................7

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................................................9

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    241 F.R.D. 435 (S.D.N.Y. 2007) ...............................................................7

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007) ........................................................................9

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................................8, 9

*Simmonds v. INS*,
    326 F.3d 351 (2d Cir. 2003) ......................................................................8

*S. Ridge Homeowners' Ass'n v. Brown*,
    226 P.3d 758 (Utah Ct. App. 2010) ...........................................................14

*Taussig v. Clipper Grp., L.P.*,
    787 N.Y.S.2d 10 (N.Y. App. Div. 2004) ...............................................................9

*Texas v. United States*,
    523 U.S. 296, 118 S. Ct. 1257 (1998) ..................................................................8

*Thomas v. Union Carbide Agr. Prods. Co.*,
    473 U.S. 568 (1985) ..........................................................................................8, 10

*Travelers Prop. Cas. Corp. v. Winterthur Int'l*,
    No. 02 Civ. 2406, 2002 WL 1391920 (S.D.N.Y. June 25, 2002) ..................8, 11, 12

*Utah Transit Auth. v. Greyhound Lines, Inc.*,
    355 P.3d 947 (Utah 2015) ..............................................................................13, 15

*Varo, Inc. v. Alvis PLC*,
    261 A.D.2d 262 (N.Y. App. Div. 1999) ...............................................................10

*Wert v. Manorcare of Carlisle PA, LLC*,
    124 A.3d 1248 (Pa. 2015) ....................................................................................14

*Z-Corp v. Ancestry.Com Inc.*,
    382 P.3d 652 (Utah Ct. App. 2016) .....................................................................14

**English Cases**

*Canada Steamship Lines Ltd v The King*
    [1952] UKPC 1 .......................................................................................................13

*EE Caledonia Ltd v Orbit Valve Co Europe Plc*
    [1994] 1 W.L.R. 1515 ............................................................................................13

*Wood v. Capita Ins. Servs. Ltd.*
    [2017] EWCA (UKSC) 24 .....................................................................................13

**Other Authorities**

*Chitty on Contacts*, 33rd Edition, 2018, 15-018 ..........................................................13

13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532 ...........................8

Third-Party Plaintiffs DW Construction, Inc. Retirement Plan (the "DWC Plan"), Kamco Investments, Inc. Pension Plan (the "Kamco Investments Plan"), Kamco LP Profit Sharing Pension Plan (the "Kamco LP Plan"), Linden Associates Defined Benefit Plan (the "Linden Plan"), Moira Associates 401(K) LLC Plan (the "Moira Plan"), Riverside Associates Defined Benefit Plan (the "Riverside Plan"), American Investment Group of New York, L.P. Pension Plan (the "AIG Plan") (collectively, the "Utah Plans"), and Newsong Fellowship Church 401(k) Plan (the "Newsong Plan") (collectively with the Utah Plans, "the Plans" and each a "Plan"), respectfully submit this memorandum of law in support of their motion to dismiss the Amended Counterclaims of Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F").

## PRELIMINARY STATEMENT

By its sole count for indemnification, ED&F asks this Court to order the Plans to indemnify ED&F "for all liabilities, losses and/or costs suffered or incurred in connection with (i) the Agreements and/or the Terms and Conditions; (ii) the performance of ED&F's obligations under the Agreements and/or the Terms and Conditions; (iii) any tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions; and/or (iv) any action or proceeding." Amended Counterclaims, ¶ 29.[2]  ED&F's amended counterclaims for indemnification are not ripe because ED&F is not subject to a judgment and, even according to its own amended pleading, ED&F has yet to incur any liability, loss, or cost.  In fact, ED&F's Amended Counterclaims do

---

[2] ED&F's Amended Counterclaims against the Utah Plans [Doc. No. 325 in civil action 18-md-02865] (the "Amended Utah Counterclaims") is Exhibit 1 to the Declaration of Brandon R. Dillman ("Dillman Decl."). ED&F's counterclaims against the Newsong Plan [Doc. No. 324 in civil action 18-md-028652] (the "Amended Newsong Counterclaims") is Exhibit 2 to the Dillman Decl., and is identical to the Amended Utah Counterclaims in all material respects for purposes of this motion. The Amended Utah and Newsong Counterclaims are collectively referred to as the "Amended Counterclaims," but any direct citations are to the Amended Utah Counterclaims (Exhibit 1 to the Dillman Decl.).

not even attempt to identify any losses it has suffered to date.  Because ED&F's purported indemnification claim has not accrued and is not ripe, it is beyond the Court's subject matter jurisdiction and should be dismissed.

Even if the Court had subject matter jurisdiction, ED&F's Amended Counterclaims fail because ED&F is not entitled to indemnification for any loss resulting from ED&F's own fraud or negligence.  All of the claims against ED&F in these proceedings and SKAT's related action in the United Kingdom are based on ED&F's intentional and/or negligent misconduct.  Indeed, ED&F admits it created false tax vouchers for the majority of the Plans' refund applications submitted to Plaintiff Skatteforvaltningen ("SKAT"), and those false tax vouchers are central to all of the claims against ED&F.  The law is clear that indemnification agreements never assume that a party is entitled to indemnification for its own intentional or negligent misconduct, and the custody agreements entered into by the Plans and ED&F expressly excluded indemnification for any liability, loss, or cost arising from ED&F's own misconduct.

In the end, ED&F's indemnification claim cannot survive against the Plans—both because it is not ripe and because ED&F has failed to state any claim.  Accordingly, ED&F's Amended Counterclaims should be dismissed.

## **BACKGROUND**

### I.     **The Plans engaged in sophisticated securities transactions with ED&F acting as their broker-custodian.**

The Plans engaged ED&F as their broker-custodian in 2012.  *See* Amended Counterclaims, ¶ 1; *see* Amended Third-Party Complaint ("ATPC"), at Ex. A ("Custody Agreement" or "Custody Agreements").[3]  During the broker-custodian relationship with ED&F, the Plans purchased Danish

---

[3] The ATPC and the Newsong ATPC are materially identical.  Any reference to the "ATPC" refers to the Utah Defendants' Amended Third-Party Complaint, which is Exhibit 3 to the Declaration of John C. Blessington ("Blessington Decl.") [Doc. No. 305 in 18-md-02865].  All of the Utah

securities and, according to documentation provided by ED&F, the Plans received dividends as a result of their Danish shareholdings.   ATPC ¶ 26.   According to documentation provided by ED&F, the Plans received those dividends from Danish companies net of withholding taxes, and ED&F "confirm[ed]" the Plans' shareholdings with "Tax Vouchers," which stated that the "dividends specified on this credit advice were paid net of withholding tax to [the Plans]."  *See* ATPC ¶¶ 28, 31, Exs. H-N (the "Tax Vouchers").   The Tax Vouchers were used to support the Plans' refund applications, which were submitted to SKAT by payment-agent Goal Taxback, Ltd. ATPC, ¶¶ 33-34.   SKAT reimbursed the Plans for the withholding-tax suffered according to the information in the Tax Vouchers and pursuant to the Kingdom of Denmark's obligations under the U.S. Denmark Tax Treaty.  *See* ATPC, ¶¶ 22, 23, 45.

The Custody Agreements contain an indemnification clause limiting ED&F's right to indemnification to "each liability, loss and cost which may be suffered or incurred by [ED&F] in connection with the Client Property, this Agreement or the performance of [ED&F]'s obligations under this Agreement (other than Tax)."   *See* Amended Counterclaims ¶¶ 23, 24; Custody Agreement, § 16(a).   Under the express terms of the Custody Agreement, ED&F's liabilities, losses, or costs must actually be "suffered or incurred by [ED&F]" before ED&F can demand indemnification.   In addition, ED&F and the Plans agreed that the Plans are not required to indemnify ED&F for ED&F's intentional or negligent misconduct:

> The indemnity in Clause 16(a) shall not extend to any liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F] or any Sub-Custodian appointed by [ED&F] under this Agreement.

---

Plans' custody agreements are attached to the ATPC.  *See* Blessington Decl. Ex. 3, at Exs. A–G. The Newsong Plans' custody agreement is attached to the Newsong ATPC as Exhibit A.  *See* Blessington Decl. Ex. 4, at Ex. A.  These custody agreements are identical in all material respects for purposes of this motion.  References to the "Custody Agreement" or "Custody Agreements" are to the custody agreement between the DWC Plan and ED&F.

Custody Agreement, § 16(b).  ED&F also alleges that the Plans agreed to be bound by ED&F's Terms and Conditions of Business (the "T&Cs").  The T&Cs contain an indemnification clause, which states that "[the Plans] agree to indemnify [ED&F] . . . against any loss, liability, costs and expenses, which [ED&F] incur[s] either directly or indirectly in the due performance of [its] obligations under these Terms and Conditions."  *See* Amended Counterclaims, ¶ 27; Ex. 2, T&Cs § 19.

## II. SKAT filed a lawsuit against ED&F alleging that ED&F negligently misrepresented the Plans' shareholdings and receipt of dividends.

In 2015, SKAT stopped paying tax refunds to the Plans.  In 2018, SKAT instituted an action against ED&F in the United Kingdom (the "English Action").  At the outset of the English Action and in its latest amended pleadings filed in the English Action, SKAT alleges that ED&F negligently misrepresented the Plans' Danish shareholdings and receipt of dividends in the Tax Vouchers.  *See* Blessington Decl. Ex. 5, SKAT's Re-Re-Amended Particulars of Claim ("SKAT's English Claims"), at Re-Amended Schedule 5T, ¶ 15; ATPC ¶ 83 n. 3.  Specifically, SKAT has alleged that ED&F misrepresented the Plans' ownership of Danish securities and receipt of dividends and either (a) harmed SKAT under a theory of negligence or (b) unjustly enriched itself at the expense of SKAT as a result of ED&F's negligent misrepresentations.[4]  Importantly, SKAT's theory in the English Action is that ED&F—and not the Plans, the Plans' representatives, or anyone else—was the "only source of information" concerning the Plans' shareholdings and dividends.  SKAT's English Claims, Schedule 5T ¶ 17(f) (emphasis added).

---

[4] *See, e.g.*, SKAT's English Claims ¶ 94A ("[ED&F] owed to SKAT and breached a duty to exercise reasonable care and skill in making the ED&F Man Representations, on which SKAT relied and as a result of which it has suffered loss and damage."); ¶¶ 95–97 (alleging ED&F was unjustly enriched by SKAT's mistaken refund payments, which were induced by ED&F's negligent misrepresentations); ¶ 97 ("The enrichment of [ED&F] was at the expense of SKAT and was unjust by reason of the mistake induced by misrepresentation.").

In September 2019, ED&F filed an amended response to SKAT's claims in the English Action.  *See* Blessington Decl. Ex. 6, Amended Defence ("ED&F's Amended Defence").  In its Amended Defence, ED&F admitted that "SKAT's primary case is that ED&F Man is liable to SKAT in negligence."  ED&F's Amended Defence ¶ 3.  ED&F also admitted that it generated numerous incorrect tax vouchers (the "Disavowed Vouchers") that it knew would likely be submitted to SKAT for the Plans' refund applications.  ED&F's Amended Defence ¶ 37.6.2 & Annex E.  It was through its Amended Defence that ED&F admitted—for the first time and over *four* years after the Tax Vouchers were issued—that a majority of the tax vouchers that it prepared for the Plans contained false information.[5]  *See* Blessington Decl. Ex. 6, Amended Defence ("ED&F's Amended Defence") ¶ 4.2 & Annex E; ATPC ¶¶ 55–56.

In this Court, as part of its claims against the Plans, SKAT has alleged that "[ED&F] . . . provided statements falsely representing that [the Plans] owned shares in Danish companies and had earned dividends on those shares."  Blessington Decl. Ex. 9, SKAT's Complaint ¶ 9(c), ¶¶ 48–50 (alleging falsity of ED&F's tax vouchers).[6]  In response to SKAT's claims against the Plans in this Court, the Plans filed third-party claims against ED&F, alleging that if SKAT proves its claims, then ED&F should be liable for having intentionally or negligently provided false documentation in relation to the Plans' refund applications.  ATPC ¶¶ 79–83.  Given

---

[5] Notwithstanding the fact that ED&F has since admitted the Disavowed Vouchers contained false information at the time of the Danish Transactions, the Plans had every reason to believe that they had received dividends from the relevant Danish issuers and that dividend taxes had actually been withheld.  ATPC ¶¶ 36–44.

[6] All of SKAT's complaints and amended complaints against the Plans are identical in all material respects for purposes of this motion.  Any reference to "SKAT's Complaint" is to SKAT's Complaint filed against the DWC Plan, which is Exhibit 9 to the Declaration of John C. Blessington.  While SKAT has filed amended complaints against the Plans, SKAT's allegation that ED&F provided false statements remains unchanged.  *See* Amended Complaint in *SKAT v. DWC Plan, et al.*, ¶ 9(c), Doc. No. 131, 18-cv-09797.

that SKAT and the Plans have accused ED&F of, at the very least, negligent misconduct in relation to the tax vouchers it produced for the Plans, any judgment against ED&F in this action and in the English Action will necessarily result from ED&F's own negligent misconduct.

### III. ED&F filed counterclaims against the Plans seeking indemnification under the Custody Agreement and its T&Cs.

ED&F initially counterclaimed[7] for indemnification against the Plans when it demanded indemnification arising from any "judgment . . . entered against it in any action or proceeding, either in this jurisdiction, in the English Action, or in any other proceedings based upon the tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions."  Initial Counterclaims, ¶ 194.  ED&F's Initial Counterclaims did not seek indemnification for any specified losses or costs, and ED&F only based its right to indemnification on the Custody Agreement.  Initial Counterclaims, ¶¶ 192–94.  The Plans moved to dismiss ED&F's Initial Counterclaims based on the express terms of the Custody Agreements, which excluded indemnification for ED&F's misconduct, and the legal principle that no party is entitled to indemnification for its own misconduct unless expressly agreed otherwise.  *See* Memorandum in Support of Plans' Motion to Dismiss ED&F Initial Counterclaims, at pp. 8-10, Doc. No. 303, 18-md-2865.

Instead of opposing the Plans' motion to dismiss, ED&F amended its counterclaims and expanded its indemnification claim to include unspecified "losses and/or costs," in addition to the potential liabilities and judgments ED&F identified in the Initial Counterclaims.  Amended

---

[7] ED&F's initial counterclaims against the Utah Plans [Doc. No. 281 in civil action 18-md-02865] is Exhibit 1 to the Blessington Decl.  ED&F's initial counterclaims against the Newsong Plan [Doc. No. 282 in civil action 18-md-028652] (Blessington Decl. Ex. 2) is identical to the initial counterclaims against the Utah Plans in all material respects.  The initial counterclaims against the Utah Newsong Plans are collectively referred to as the "Initial Counterclaims," but direct citations are to the Initial Counterclaims against the Utah Plans (Blessington Decl. Ex. 1).

Counterclaim, ¶ 29.  ED&F also relied on language in ED&F's T&Cs in addition to the Custody

Agreement as further support for its indemnification claim.  *Id.* at ¶¶ 27, 28.  Importantly, even

with its amendments, ED&F fails to identify *any* liabilities, losses, or costs it has actually suffered

or that would properly give rise to a claim for indemnification against the Plans.  Further, ED&F's

reliance on the T&Cs does not save the day, and the result remains the same—ED&F's Amended

Counterclaims should be dismissed.

## LEGAL STANDARDS [8]

I.  **Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a claim that has not accrued and is not ripe.**

Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss a controversy that is

not ripe.  *See Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671,

675-76 (2d Cir. 1996) (stating Rule 12(b)(1) is the proper standard on which to judge a challenge

to ripeness); *see also New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th

Cir. 1995) ("ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a

motion under Rule 12(b)(1)"); *Access Ins. Co. v. Carpio*, 861 F. Supp. 2d 539, 542 (E.D. Pa. 2012)

("The ripeness doctrine determines whether a party has brought an action prematurely, and

---

[8] SKAT first sued the Utah Plans in the District of Utah and the Newsong Plan in the Eastern District of Pennsylvania.  The claims have been consolidated in this Court for pre-trial purposes only.  Still, Second Circuit law governs this Court's ability to exercise jurisdiction, including subject matter jurisdiction.  *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007) ("In the context of pre-trial issues such as motions to dismiss . . . , § 1407 requires the application of the law of the transferee circuit where the motions are being considered."); *In re Linerboard Antitrust Litig.*, MDL No. 1261, Civ. A. 04-4001, 2005 WL 1625040, at *4 (E.D. Pa. July 11, 2005) ("the Court will apply Third Circuit law on the issue of subject matter jurisdiction").  However, the Plans have provided citations to Tenth and Third Circuit law where applicable for the purpose of showing that the law governing this motion is the same.

counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.") (internal citation omitted).

Federal Courts approach a ripeness challenge with a two-factor test based on an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 301, 118 S. Ct. 1257, 1260 (1998).[9] Thus, the core ripeness inquiry is "'whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Gonzales*, 64 F.3d at 1499 (quoting 13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532); *see Convergent Wealth Advisors LLC v. Lydian Holding Co.*, No. 12 CIV. 1199, 2012 WL 2148221, at *2 (S.D.N.Y. June 13, 2012) (noting ripeness and Article III standing often overlap and stating two-factor ripeness test) (citing *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 3332–33 (1985)); *see also Philadelphia Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) ("Under the 'fitness for review' inquiry, a court considers whether the issues presented are purely legal, as opposed to factual, and the degree to which the challenged action is final.").  The plaintiff bears the burden to allege facts demonstrating that a claim is ripe for judicial resolution.  *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 02 Civ. 2406, 2002 WL 1391920, at *1 (S.D.N.Y. June 25, 2002) ("Plaintiffs bear the burden of proving, by a preponderance of the evidence, that this Court has subject matter

---

[9] Even where cases are "fit for judicial decision," courts have declined to hear a case, finding that the hardship factor was not met.  *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 113 (2d Cir. 2007) (citing *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)).  Even in cases involving matters as serious as the availability of habeas review, courts have noted "the mere possibility of future injury . . . does not constitute hardship.  *Simmonds*, 326 F.3d at 357 (citing *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999)).

jurisdiction over the case."); *see Gonzales*, 64 F.3d at 1499 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

## II.     Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a claim that is not plausible on its face.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).   A complaint's factual allegations are accepted as true and reasonable inferences are to be drawn in favor of the claimant. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).   However, a court is not required to credit conclusory allegations or legal conclusions.   *Id.*

Furthermore, "[a]t the motion to dismiss stage, where a [claimant's] 'factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[.]'" *Egan v. Marsh & McLennan Cos.*, No. 07 Civ. 7134, 2008 WL 245511, at *4 (S.D.N.Y. Jan. 30, 2008) (citing *Taussig v. Clipper Grp., L.P.*, 787 N.Y.S.2d 10, 11 (N.Y. App. Div. 2004)); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").   Even on a Rule 12(b)(6) motion, the court may also consider documents that are "integral" to a claimant's claim to relief, such as those relied upon in drafting a complaint.   *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where [claimant] has actual notice of all the information in the movant's papers and

has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

## ARGUMENT

ED&F claims that it is due indemnification for all liabilities, losses, and/or costs resulting from the parties' broker-custodian relationship and the Plans' tax refunds.  *See* Amended Counterclaims, ¶ 29.  It fails to identify, however, any payments to date that it has actually suffered or incurred or that would otherwise fall under this broadly-defined category.  Rather, the only source of damages ED&F can point to is the possible liability that *may* be imposed by this Court or in the English Action. Without a specified loss other than the potential judgments that ED&F could face as a result of its own misconduct, ED&F's claim for indemnification fails and must be dismissed.

**I.      ED&F's indemnification claim has not accrued and is not ripe for judicial consideration.**

A party's claim filed before a cause of action has accrued is not ripe and is subject to dismissal.  *See Convergent Wealth Advisors, LLC*, 2012 WL 2148221, at *5 (dismissing a contractual indemnification claim because when "a claim for indemnification has not accrued, a breach of the duty to indemnify claim is not ripe"); *see also Thomas*, 473 U.S. at 580–81 (noting with approval dismissal of claims "involv[ing] contingent future events that may not occur as anticipated") (internal quotation omitted).  A contractual indemnification claim in particular does not accrue until the indemnitee has suffered an actual loss.  *See Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, 916 F.3d 116, 126 (2d Cir. 2019) ("a cause of action for contractual indemnification 'does not arise until liability is incurred by way of actual payment' to a third party") (quoting *Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262, 265 (N.Y. App. Div. 1999));

*Convergent Wealth Advisors, LLC*, 2012 WL 2148221, at *3 (dismissing indemnification claim as unripe because it had not accrued).[10]

ED&F's indemnification claim is not ripe.  ED&F fails to establish an actual controversy by failing to identify any liabilities, losses, or costs suffered or incurred by it to date.  ED&F's only identified source of potential indemnifiable loss is the possible future judgement against it in this action or the English action.  But even that claim is directed at obtaining indemnification for a judgement that has not been and may never actually be entered against ED&F.  Notwithstanding the arguments below that ED&F could not obtain indemnification for such a judgment because that judgment would necessarily arise out of ED&F's misconduct, such a claim could not be entertained before entry of a judgment against ED&F because the claim is not ripe.  *See St. Joe Minerals Corp.*, 90 F.3d at 675–76; *Lehman XS Tr.*, 916 F.3d at 126 ("a cause of action for contractual indemnification 'does not arise until liability is incurred by way of actual payment' to a third party"); *Pavoni*, 999 P.2d at 598 ("Under a contract to indemnify for damages or loss, an action does not arise until the indemnitee has actually incurred a loss."); *see also Convergent Wealth Advisors, LLC*, 2012 WL 2148221, at *5 (dismissing indemnification claim seeking coverage for hypothetical arbitration award as unripe because claim had not accrued).

Courts routinely dismiss indemnification claims that are similarly not ripe because of the lack of a judgment entered or liability imposed against the plaintiff.  *See, e.g.*, *St. Joe Minerals Corp.*, 90 F.3d at 675–76 (affirming dismissal of indemnification claim due to the lack of "a justiciable and ripe controversy"); *Convergent Wealth Advisors, LLC*, 2012 WL 2148221, at *3;

---

[10] *See also Musco v. Conte*, 22 A.D.2d 121, 125–26 (N.Y. App. Div. 1964) ("The general rule is established that the action accrues not at the time of the commission of the tort for which indemnity is sought, but at the time of the payment of the judgment"); *see also Pavoni v. Nielsen*, 999 P.2d 595, 598 (Utah Ct. App. 2000) ("Under a contract to indemnify for damages or loss, an action does not arise until the indemnitee has actually incurred a loss.").

*Bd. of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, No. 09 Civ. 6273, 2011 WL 6130831, at *2 (S.D.N.Y. Dec. 9, 2011).[11]  Because ED&F's claim for indemnification has not accrued—as evidenced by the absence of any allegation that ED&F has suffered or incurred an actual identifiable liability, loss, or cost—the claim does not constitute a case or controversy and should be dismissed.

## II.    ED&F fails to state a claim on which relief can be granted because of the express language in the Custody Agreement and the T&Cs.

Even if the Court exercised subject matter jurisdiction over ED&F's unripe indemnification claim, ED&F still fails to state a claim upon which this Court could grant relief.  As stated above, the only identifiable loss that ED&F may suffer is a judgment in the English Action or in this action.  However, any possible liability or loss incurred by ED&F can only be due to its own negligence at a minimum, and the Plans and ED&F never agreed in the Custody Agreement or by way of the T&Cs that ED&F's misconduct would be indemnified.  Without more, insofar as ED&F's Amended Counterclaims seek indemnification for liability arising from its own willful or negligent conduct, they should be dismissed.

To sustain a claim for indemnification for damages arising from the indemnitee's own negligence, the intention to establish a right for indemnification for such conduct must be clearly

---

[11] Even in the declaratory judgment context, courts have found that suits seeking a declaration of entitlement to indemnification could not be determined prior to liability actually being determined. *St. Joe Minerals Corp.*, 90 F.3d at 676; *Charter Oak Fire Ins. Co. v. Bolding*, No. 08-CV-02632, 2009 WL 3246116, at *5 (E.D.N.Y, Oct. 1, 2009); *Winterthur Int'l*, 2002 WL 1391920, at *6.  In *St. Joe Minerals Corp.*, the Second Circuit affirmed dismissal of a declaratory judgment action seeking a declaration of an insurer's indemnity obligations prior to imposition of any liability on the insured, finding "the case alleged [is] not currently a justiciable and ripe controversy."  90 F.3d at 676 (alteration in original).  Similarly, in *Bolding*, the court dismissed a declaratory judgment action for indemnification where the question of '[w]hether [plaintiff] will be held liable in the future is speculative and does not qualify as a "question of 'sufficient immediacy and reality' to warrant the issuance at this time of a declaratory judgment.'"  2009 WL 3246116, at *5.

stated in the parties' agreement.[12]  *See Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456

(2d Cir. 1990) (citing *Kurek v. Port Chester Housing Authority*, 223 N.E.2d 25, 27 (N.Y. 1966)

("contracts will not be construed to indemnify a person against his own negligence unless such

intention is expressed in unequivocal terms")); *see also Utah Transit Auth. v. Greyhound Lines,

Inc.*, 355 P.3d 947, 953 (Utah 2015) ("[t]he rule of strict construction requires that if a party intends

to 'assume ultimate financial responsibility for negligence of another,' then that intention must be

'clearly and unequivocally expressed'") (quoting *Freund v. Utah Power & Light Co.*, 793 P.2d

362, 370 (Utah 1990)); *Lane v. Commonwealth*, 954 A.2d 615, 619 (Pa. Super. Ct. 2008) ("a

contract will not be construed to provide indemnification against a person's own negligence unless

that intent is expressly and unequivocally stated").

    The primary basis for ED&F's alleged right to indemnification is the Custody Agreement's

indemnification clause.  "When interpreting a contract, [a court's] 'primary objective . . . is to give

effect to the intent of the parties as revealed by the language of their agreement.'"[13]  *Chesapeake

Energy Corp. v. Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 113–14 (2d Cir. 2014); *Z-Corp*

---

[12]  The Custody Agreement and the T&Cs are governed by English law.  Custody Agreement §
22(a); T&Cs § 36.  To the extent English law applies in determining whether ED&F has stated a
plausible claim for indemnification against the Plans, English law is the same as the applicable
principles of Utah and Pennsylvania law, set forth above.  Under English law, "clear words" are
required to indemnify a party against its own negligence.  *Canada Steamship Lines Ltd. V. The
King* [1952] UKPC 1 (Blessington Decl. Ex. 11); *see Wood v. Capita Ins. Servs. Ltd.* [2017] UKSC
24 (Blessington Decl. Ex. 12); *EE Caledonia Ltd. (formerly Occidental Petroleum (Caledonia)
Ltd.) v. Orbit Valve Co. Europe Plc.* [1994] 1 W.L.R. 1515 (Blessington Decl. Ex. 13); *see also
Chitty on Contacts*, 33rd Edition, 2018, 15-018 ("The law presumes that a party will not readily
be granted an indemnity against a loss caused by his own negligence.").

[13]  To the extent English law applies, English law on contract interpretation is the same as set forth
above: the plain meaning of the terms of the contract should control.  *See NCL (Bahamas) Ltd. v.
O.W. Bunker USA, Inc.*, 745 F. App'x 416, 419 (2d Cir. 2018) (citing *Wood v. Capita Ins. Servs.
Ltd.* [2017] UKSC 24) ("Under English law, [courts] determine the objective meaning of
a contract's language, using the natural and ordinary meaning of the text, . . . and considering
the contract as a whole and in light of the contract and disputed clause's purpose.").

*v. Ancestry.Com Inc.*, 382 P.3d 652, 653–54 (Utah Ct. App. 2016) ("Any contract interpretation properly begins with a consideration of the 'plain language' or 'plain meaning' of the contract.") (citing *S. Ridge Homeowners' Ass'n v. Brown*, 226 P.3d 758, 760 (Utah Ct. App. 2010)); *DiMartino v. De Lage Landen Fin. Servs., Inc.*, 209 F. Supp. 3d 783, 790 (E.D. Pa. 2016) ("Unless otherwise specified, a contract's language shall be given its plain and ordinary meaning.") (citing *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015)). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp.*, 773 F.3d at 113–14 (citations and alterations omitted).

The plain language of the Custody Agreement establishes that ED&F and the Plans specifically agreed that ED&F's indemnification right would ***not*** cover ED&F's fraud or negligence:

> The indemnity in Clause 16(a) shall not extend to any liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F] or any Sub-Custodian appointed by [ED&F] under this Agreement.

Custody Agreement, § 16(b).  ED&F's conclusory allegation that it is entitled to indemnification from the Plans is "flatly contradicted" by the express language of the Custody Agreement.  *See Egan*, 2008 WL 245511 at *4 (explaining "flatly contradicted" allegations and legal conclusions are not presumed to be true "or even accorded favorable inference").  ED&F's allegation is also contradicted by Section 13(a) of the Custody Agreement, which states that ED&F *shall* be liable to the Plans for ED&F's own "breach of duty, . . . wilful default, fraud or negligence." *See* Custody Agreement, § 13(a).  Likewise, the T&Cs establish that ED&F may be liable to the Plans for its own "negligence, wilful default or fraud." T&Cs, § 18.  Given that ED&F must be liable to the Plans for its own negligence under the express terms of the Custody Agreement and the T&Cs, it

follows that the same agreements do not allow ED&F to demand indemnification from the Plans for ED&F's own misconduct. *See Utah Transit Auth.*, 355 P.3d at 953 (requiring clear expression); *Lane*, 954 A.2d at 619 (same).

In short, the allegations against ED&F in the English Action and in these proceedings are based on ED&F's own negligence and/or fraud.[14]  In the English Action, SKAT alleges that ED&F negligently misrepresented the Plans' dividend-withholding taxes and stock ownership, causing SKAT's purported overpayment of withholding taxes to the Plans and others. *See, e.g.*, SKAT's English Claims, ¶¶ 94A, 95–97; Schedule 5T ¶ 3–19, 23–25.  In these proceedings, the Plans allege that ED&F should be liable due to ED&F's intentional or negligent misconduct, including the preparation of the Disavowed Vouchers. *See* ATPC, ¶¶ 79–83.  Thus, any judgment against ED&F can only result from claims based on ED&F's misconduct.  Without more, ED&F has failed to state an indemnification claim upon which this Court could grant relief, and the Amended Counterclaims should be dismissed.

## CONCLUSION

ED&F's claim for indemnification centers on unspecified losses or yet-to-be determined liability in this action and the English Action.  The claim is not ripe and is beyond the Court's subject matter jurisdiction as ED&F has not alleged any actual loss or cost to date and has not been held liable or paid any judgement.  Accordingly, ED&F's Amended Counterclaims should be dismissed.

---

[14] Given that ED&F is seeking indemnification for potential judgments in the English Action and in these proceedings, the nature of all of the claims against ED&F are relevant in deciding this motion. *See Cortec Indus.*, 949 F.2d at 47 ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citing references omitted).

Furthermore, presented with claims based on negligence and fraud, ED&F has already admitted that it provided false information in the Disavowed Vouchers.  ED&F's wrongful conduct is central to any liability or losses ED&F might incur in these proceedings or in the English Action. Accordingly, ED&F is not entitled to indemnification, and ED&F's counterclaims should be dismissed.

May 18, 2020

Respectfully submitted,

K&L GATES LLP

*/s/ John C. Blessington*
John C. Blessington (*pro hac vice*)
 john.blessington@klgates.com
Brandon R. Dillman (*pro hac vice*)
 brandon.dillman@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
T: 617.261.3100
F: 617.261.3175

*Attorneys for Defendants / Third-Party Plaintiffs*
*DW Construction, Inc. Retirement Plan,*
*Kamco Investments, Inc. Pension Plan,*
*Kamco LP Profit Sharing Pension Plan,*
*Moira Associates LLC 401(k) Plan, Linden*
*Associates Defined Benefit Plan, Riverside*
*Associates Defined Benefit Plan, American*
*Investment Group of New York, L.P. Pension*
*Plan, Stacey Kaminer, Joan Schulman,*
*David Schulman, Newsong Fellowship*
*Church 401(k) Plan, and Alexander Jamie*
*Mitchell III*