# EXHIBIT 3

2011 WL 6130831
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

THE BOARD OF TRUSTEES OF the SOUTHERN
CALIFORNIA IBEW–NECA DEFINED
CONTRIBUTION PLAN, on behalf of itself
and all others similarly situated, Plaintiff,
v.
The BANK OF NEW YORK MELLON
CORPORATION, et al., Defendants.

No. 09 Civ. 6273(RMB).
|
Dec. 9, 2011.

### DECISION & ORDER

[RICHARD M. BERMAN](), District Judge.

**\*1** Having reviewed the record herein, including **(i)** the third amended complaint ("Complaint"), filed March 11, 2011 by the Board of Trustees ("Plaintiff" or "Board") of the Southern California IBEW–NECA Defined Contribution Plan (the "Plan"), alleging, among other things, that The Bank of New York Mellon Corp. ("BNYM"), The Bank of New York, and BNY Mellon, N.A. (collectively, "Defendants") "failed to invest [the Plan's c]ollateral in a prudent manner" in violation of Defendants' fiduciary and other obligations under §§ 404 and 406 of the Employee Retirement Income Security Act of 1974, [29 U.S.C. §§ 1104](), [1106]() ("ERISA"), when they held the collateral under BNYM's Securities Lending Program ("SLP") in Lehman Brothers Holdings, Inc. ("Lehman") floating rate note ("Lehman Note") through Lehman's bankruptcy filing on September 15, 2008, resulting in a loss to the Plan in the amount of "almost $3 million" (Compl., dated Mar. 11, 2011, ¶¶ 1–6, 223–45; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., dated July 25, 2011 ("Pl.Opp'n"), at 1); **(ii)** Defendants' answer and Defendant BNYM's counterclaims against Plaintiff, filed March 25, 2011 ("Counterclaims"), for breach of fiduciary duty, breach of co-fiduciary duty, equitable indemnification, and contribution, alleging, among other things, that the Lehman Note was purchased and maintained by Defendants in compliance with applicable guidelines that the Board agreed to and approved, and that, "[i]n the event [Defendants a]re found liable to the ... Plan for losses as alleged in the ... Complaint, such losses were caused in whole or in part by the acts or omissions of the Board" (Counterclaims, dated Mar. 25, 2011, ¶¶ 5, 35, 39, 43, 47); **(iii)** Plaintiff's motion, filed April 21, 2011, to dismiss BNYM's Counterclaims as, among other things, "not ripe for adjudication at this juncture because no liability has been imposed on [Defendants]," and to strike all twenty-one of Defendants' affirmative defenses (Pl.'s Mem. of Law in Supp. of Mot. to Dismiss Counterclaims & to Strike Aff. Defenses, dated Apr. 21, 2011 ("Pl.Mem."), at 2, 16–17, 24–25); **(iv)** Defendants' cross-motion, filed May 25, 2011, for summary judgment as to Plaintiff's claims, arguing, among other things, that "Monday morning quarterbacking cannot overcome the fact that the [Lehman] bankruptcy was a surprise to BNYM as well as to Plaintiff, as shown by the fact that Plaintiff never asked BNYM or any of Plaintiff s other investment managers to divest the Plan's widely held investments in Lehman," and that "hindsight evaluations of an investment's performance cannot support a claim of imprudence under ERISA" (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. as to Pl.'s Claims, dated May 25, 2011 ("Defs.Mem."), at 2, 18); **(v)** Plaintiff's opposition to Defendants' cross-motion, filed July 25, 2011, arguing, among other things, that Defendants "had knowledge of the serious risk of a Lehman default" but took "***no steps whatsoever*** to protect Plaintiff from a Lehman default" (Pl. Opp'n at 1 (emphasis in original)); **(vi)** Defendants' reply, filed August 19, 2011 (*see* Defs.' Mem. of Law in Further Supp. of Mot. for Summ. J., dated Aug. 19, 2011 ("Defs.Reply")); **(vii)** Plaintiff's surreply, filed September 9, 2011 (*see* Pl.'s Surreply, dated Sept. 9, 2011); and applicable law, **the Court hereby grants Plaintiffs motion to dismiss BNYM's Counterclaims [# 150] without prejudice, respectfully denies Plaintiff's motion to strike Defendants' affirmative defenses [# 150], and respectfully denies Defendants' motion for summary judgment as to Plaintiff's claims [# 160],** as follows:

**\*2 (I)** *Counterclaims*—BNYM's Counterclaims, all of which presuppose a (prior) finding of Defendants' liability, are premature and are hereby respectfully dismissed without prejudice. (*See* Counterclaims ¶¶ 5, 29–30, 35, 39, 43, 47, & pp. 40–41 ("If BNYM or any affiliate is found liable, the equities in this case require the Board ... to bear the full share of responsibility for any alleged losses as a result of their own breaches of fiduciary duties to the ... Plan."); Pl. Mem. at 16 ("BNYM's claims for contribution and indemnification are not ripe for adjudication as liability has not yet been imposed

upon BNYM.").)[1] The Court is in no way ruling upon the merits of those Counterclaims.

"A claim resting on contingent future events that may occur as anticipated or may not occur at all, is not ripe for adjudication." *FSP, Inc. v. Societe Generale,* No. 02 Civ. 4786, 2003 WL 124515, at \*4 (S.D.N.Y. Jan. 14, 2003) ("Claims concerning indemnification obligations ... are not ripe for adjudication until liability has been imposed upon the party to be indemnified.") (collecting cases). "Where the facts on which the Court's decision depends have yet to unfold, ... 'dismissal of the [claims] without prejudice is the correct disposition of the action.' " *Travelers Prop. Cas. Corp. v. Winterthur Int'l,* No. 02 Civ. 2406, 2002 WL 1391920, at \*6 (S.D.N.Y. June 25, 2002) (quoting *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,* 90 F.3d 671, 676 (2d Cir.1996)).

**(II)** *Affirmative Defenses*—Plaintiff's request that the Court strike all of Defendants' twenty-one affirmative defenses (*see* Answer, dated Mar. 25, 2011, at 26–29), is respectfully denied. "[M]otions to strike are disfavored and should not be granted 'unless there is a strong reason for so doing.' " *Bailey v. Pataki,* No. 08 Civ. 8563, 2010 WL 234995, at \*3 (S.D.N.Y. Jan. 19, 2010) (quoting *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976)). Plaintiff's generalized and unsupported contention that "not a single affirmative defense, as pled, has put Plaintiff on notice of the basis for the defense" (Pl. Mem. at 24) does not constitute a "clear showing that the challenged defense[s] ha[ve] no bearing on the subject matter [of the case or] ... that permitting the defense[s] to stand would prejudice ... [P]laintiff." *Emmpresa Cubana Del Tabaco v. Culbro Corp.,* 213 F.R.D. 151, 155 (S.D.N.Y.2003) (collecting cases) (internal quotation marks omitted).

**(III)** *Summary Judgment*—Preliminarily, Defendants' contention that Plaintiff's § 406 claim (*see* Compl. ¶¶ 240–45) is "expressly exempted" by a U.S. Department of Labor Prohibited Transaction Exemption is without merit. (Defs. Mem. at 23.)[2] By its (express) terms, the relevant exemption does not cover BNYM's investment of Plaintiff s collateral. *See* U.S. Dep't of Labor, Prohibited Transaction Exemption 2006–16, 71 F.R. 63786 (Oct. 31, 2006), at § I(c) (hereinafter, "PTE 2006–16"). The exemption provides only that § 406(b) (1) of ERISA "shall not apply to the **payment** to a fiduciary [*e.g.,* BNYM] ... of **compensation for services** rendered in connection with loans of plan assets that are securities." U.S. Dep't of Labor, Prohibited Transaction Exemption 2006–16, 71 F.R. 63786 (Oct. 31, 2006), at § I(c) (emphases added). Plaintiff correctly points out that its § 406 claim "is not based on the fact that Defendant[s] loaned securities, received [c]ollateral [from the borrowers of those securities], or w[ere] paid a fee [by Plaintiff] for doing so. Instead, [Plaintiff's claim] ... is based on ... Defendant[s'] separate and subsequent act of imprudently investing the [c]ollateral" in the Lehman Note. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, dated Dec. 8, 2009, at 23); *see Bd. of Trustees of N.J. Carpenters Annuity & Pension Funds v. Bank of N.Y. Mellon,* No. 11 Civ. 1555, 2011 WL 4916302, at \*1 (S.D.N.Y. Oct.14, 2011) ("The agreements in a securities lending transaction typically mandate that the borrower provide the lender with a certain amount of collateral, usually in the form of cash and cash equivalents ..., equal to or greater than the value of the loaned securities."); *Stephenson v. Deutsche Bank AG,* 282 F.Supp.2d 1032, 1042 (D.Minn.2003).

**\*3** Resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-moving party, the Court concludes that genuine issues of fact exist which preclude summary judgment in favor of Defendants as to Plaintiff's claims for breach of fiduciary duty under ERISA § 404(a) (*see* Compl. ¶¶ 223–39) and for prohibited transactions under ERISA § 406 (*see* Compl. ¶¶ 240–45); *see also SCF Ariz. v. Wells Fargo Bank, N.A.,* No. 09 Civ. 9513, 2011 WL 3874889, at \*7 (S.D.N.Y. Sept. 1, 2011) (denying defendant summary judgment on plaintiff's breach of fiduciary duty claim where defendant, in securities lending arrangement, failed to sell its investment of plaintiff s collateral in a Lehman floating rate note prior to Lehman's bankruptcy); *Gray v. Briggs,* 45 F.Supp.2d 316, 327–28 (S.D.N.Y.1999) ("[P]laintiffs may be able to prove at trial that the[ ] investments, and their subsequent management by [defendants], demonstrate breaches of fiduciary duty to the Plans ...."); *Liss v. Smith,* 991 F.Supp. 278, 294–303 (S.D.N.Y.1998). The fiduciary standard imposed by ERISA requires the application of a reasonableness standard. Rarely will such a determination be appropriate on a motion for summary judgment. *See Hunt v. Magnell,* 758 F.Supp. 1292, 1297 n. 6 (D.Minn.1991) (citing *Pension Fund v. Omni Funding Grp.,* 731 F.Supp. 161, 169 (D.N.J.1990)). These genuine, disputed questions of fact include, among others, the following:

- **Whether Defendants discharged their duties with respect to the Plan with the care, skill, prudence, and**

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

See 29 U.S.C. § 1104(a)(1)(B).

Plaintiff contends that "[a] trier of fact could easily find that Defendant [s] acted imprudently" (Pl. Opp'n at 2) in light of evidence that Defendants held the Lehman Note through Lehman's September 2008 bankruptcy even though "BNYM classified Lehman as a purchase-restricted issuer" in November 2007, such that "[n]ew purchases of Lehman investments were disallowed" "until [Lehman's] eventual bankruptcy" (Pl.'s Rule 56.1 Stmt. of Material Facts, dated July 25, 2011 ("Pl.56.1"), ¶¶ 416, 421); BNYM's Risk, Fiduciary Risk Management, and Global Securities Lending Credit Committees held meetings in April, May, and June 2008, respectively, where various dangers in the SLP business were discussed, including an observation at one of the meetings that that "Lehman ... is trying to acquire more capital in case of bankruptcy" (Pl. 56.1 ¶¶ 382, 387, 394); and an email exchange that took place on June 6, 2008 between two SLP members in which one asked, "Are we doing anything different because of Lehman[?]," and the other responded in part, "Not so far" (Pl. 56.1 ¶ 389).

Defendants argue that, "[d]espite Plaintiff's attempt to muddy the record, Plaintiff's own admissions demonstrate that there is no dispute as to the dispositive facts," including testimony from one of Plaintiff's purported experts that the decision to purchase more Lehman investments is "very distinct" from the decision to sell existing Lehman investments "at a loss" (Defs.' Resp. to Pl. 56.1, dated Aug. 19, 2011 ("Defs. 56.1 Resp."), ¶ 421); and Plaintiff's admission that two Plan fiduciaries other than BNYM, which "placed Plan assets in Lehman bonds, held them there upon Lehman's bankruptcy, and lost Plan principal as a result," "were prudent" (Defs. Mem. at 10–11, 15–17); see *SCF Ariz.,* 2011 WL 3874889, at *7; *Gray,* 45 F.Supp.2d at 327–28.

*4 • **Whether Defendants discharged their duties by diversifying the investments of the plan so as to minimize the risk of large losses.** See 29 U.S.C. § 1104(a)(1)(C).

Plaintiff contends that the Lehman Note "accounted for more than 9% of [the Plan's] collateral account" between June 30, 2008 and August 31, 2008 (Pl. 56.1 ¶ 118); "[b]y June 2008, 65% of Plaintiff s total collateral portfolio consisted of fixed income securities issued by financial institutions" (Pl. 56.1 ¶ 119); and BNYM's Chief Risk Officer penned a memo on April 1, 2008 to the Risk Committee warning that "Bear [Stearns] is an example of the many exposure points we have with major broker dealers and raises some policy issues," including "our concentration risk in the Securities Lending business" (Pl. 56.1 ¶¶ 139, 384).

Defendants argue that "Plaintiff's collateral account had on average 50.3% of its portfolio invested in non-financial securities between February 2008 and August 2008" (Defs.' 56.1 Resp. ¶ 119); and "financial institutions are the primary issuers of ... the primary type of investments that complied with Plaintiff's [securities lending g]uidelines" for the collateral invested by BNYM (Defs. Reply at 19); see *DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 423 (4th Cir.2007) ("[T]he portfolio management theory teaches that an investment in a risky security as part of a diversified portfolio is, in fact, an appropriate means to increase return while minimizing risk."); *Liss,* 991 F.Supp. at 301 ("Congress ... imposed a requirement of diversification that depends upon the facts and circumstances surrounding each plan and investment.").

• **Whether Defendants discharged their duties with respect to the Plan solely in the interest of and for the exclusive purpose of providing benefits to the participants and beneficiaries.** See 29 U.S.C. § 1104(a)(1), (a)(1)(A)(i). **Relatedly, whether Defendants dealt with the assets of the Plan in Defendants' own interest or for their own account.** See 29 U.S.C. § 1106(b) (1).

Plaintiff contends that, because Plaintiff and Defendants "shared in the returns of collateral investments" but "the risk of investment loss [fell] on Plaintiff alone (Defs. 56.1 ¶¶ 80, 89), "continuing to hold the Lehman Note was a 'heads I win; tails you lose' investment for BNYM" (Pl. Opp'n at 25), as demonstrated by a June 11, 2008 email message written by SLP's Executive Director to other SLP personnel. In that email, which related to questions from the Federal Reserve Bank of New York (the "Fed") regarding BNYM's Lehman exposure in securities lending, the Executive Director wrote that "we remain concerned about [L]ehman name risk," "but it may be wise to

indicate explicitly in your response to the [F]ed that our process involves exclusively customer-money;[ ]neither indemnified or guaranteed by [BNYM]." (Pl. 56.1 ¶¶ 124, 391; Def. 56.1 Resp. ¶ 391.)

***5** Defendants argue that "Plaintiff never explains how ... a common industry fee arrangement is somehow evidence of a violation of [§ ] 406." (Defs. Reply at 21); *see* [Lowen v. Tower Asset Mgmt., Inc.,](http://www.westlaw.com/Link/Document/FullText?findType=Y&serNum=1987121484&pubNum=0000350&originatingDoc=...) 829 F.2d 1209, 1213 (2d Cir.1987) ("Section 406(b) [must] be broadly construed and ... liability [may] be imposed even where there is no taint of scandal, no hint of self-dealing, no trace of bad faith." (citation and internal quotation marks omitted)).

## Conclusion & Order

For the foregoing reasons, Plaintiff's motion to dismiss BNYM's Counterclaims [# 150] is granted without prejudice; Plaintiff's motion to strike Defendants' affirmative defenses [# 150] is denied; and Defendants' motion for summary judgment as to Plaintiff's claims [# 160] is denied.

A trial with respect to Plaintiff's claims is hereby scheduled to begin on Monday, April 2, 2012 at 9:00 a.m. The parties are also directed to appear before the Court with their principals for a status and settlement conference on Wednesday, January 4, 2012 at 10:30 a.m. in Courtroom 21B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 6130831

## Footnotes

1 Defendants do not respond to Plaintiff's motion in their briefs. Instead, Defendants refer the Court to their arguments in an earlier brief, dated January 10, 2011, filed in response to Plaintiff's December 20, 2010 motion to dismiss BNYM's counterclaims, which arose out of Plaintiff's second amended complaint in this matter, filed September 21, 2010. (Defs. Mem. at 3 n. 7.) As noted, Plaintiff's third amended complaint was filed on March 11, 2011.

2 Defendants do not argue the substance of this point in their briefs, but instead refer the Court to an earlier filed brief, dated November 9, 2009, relating to Defendants' motion to dismiss Plaintiff's first amended complaint in this matter, filed October 29, 2009. (*See* Defs. Mem. at 23–24.) Plaintiff responds by referring the Court to its earlier response, dated December 8, 2009, to Defendants' prior brief. (Pl. Opp'n at 27.)

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.