EXHIBIT 7

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Stoncor Group, Inc. v. Peerless Insurance Company, S.D.N.Y., August 15, 2018

2002 WL 1391920

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

TRAVELERS PROPERTY CASUALTY
CORPORATION a/s/o the Fisher Park–Lane
Company and Richard C. Fisher, Plaintiff,
v.
WINTERTHUR INTERNATIONAL and
Union Bank of Switzerland, Defendants.

No. 02 Civ. 2406(SAS).
|
June 25, 2002.

**Attorneys and Law Firms**

Nicholas R. Caiazzo, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, New York, for Plaintiff.

Brian A. Birenbach, James M. Mucklewee, Damon & Morey LLP, Buffalo, New York, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, J.

**\*1** Plaintiff Travelers Property Casualty Corporation ("Travelers"), as subrogee of The Fisher Park–Lane Company ("Park–Lane") and Richard C. Fisher (collectively "the Fishers"), seeks a declaration that it has the right to defense and indemnity from defendants Winterthur International ("Winterthur") and Union Bank of Switzerland ("UBS") (collectively "defendants") in an underlying personal injury action which names the Fishers and UBS as defendants. Plaintiff further seeks damages for defendants' failure to defend and indemnify the Fishers' litigation costs, as well as contribution and common law indemnification from UBS for any judgment rendered against the Fishers in the underlying action.

Defendant Winterthur now moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted; both defendants also move to dismiss on the ground that no actual controversy yet exists. In the alternative, they argue that this Court should abstain from exercising jurisdiction pending the resolution of the underlying state court action. For the reasons set forth below, Winterthur's motion is granted and UBS's motion is granted in part and denied in part.

## I. LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000) (quotation marks and citation omitted). "At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." ' *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (internal quotation marks omitted)). The task of the court in ruling on a Rule 12(b)(6) motion is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' *Sims,* 230 F.3d at 20 (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "take as true all of the allegations contained in plaintiff's complaint and draw all inferences in favor of plaintiff." *Weinstein v. Albright,* 261 F.3d 127, 131 (2d Cir.2001). Courts should "include in this analysis not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001).

### B. Rule 12(b)(1)[1]

"The court properly dismisses a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Tasini v. New York Times Co.,* 84 F.Supp.2d 350, 353 (S.D.N.Y.2002) (quotations, alterations omitted). Plaintiffs

bear the burden of proving, by a preponderance of the evidence, that this Court has subject matter jurisdiction over their case. *See* Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000).

**\*2** "It is well ingrained in the law that subject-matter jurisdiction can be called into question either by challenging the sufficiency of the allegation or by challenging the accuracy of the jurisdictional facts alleged." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 68 (1987). When faced with a Rule 12(b)(1) motion that contains a factual challenge, a court must draw jurisdictional facts from the complaint, affidavits and exhibits submitted by the parties. *See* Robinson v. Government of Malaysia, 269 F.3d 133, 140 (2d Cir.2001); Kline v. Kaneko, 685 F.Supp. 386, 389–90 (S.D.N.Y.1988).

If a defendant challenges only the legal sufficiency of a plaintiff's jurisdictional allegations, a court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *See* Robinson, 269 F.3d at 140; *Tasini,* 184 F.Supp.2d at 353 (referring to such a challenge as "facial" as distinguished from a "factual attack"); Virtual Countries, Inc. v. Republic of South Africa, 148 F.Supp.2d 256, 262 (S.D.N.Y.2001). Of course, "where evidence relevant to the jurisdictional question is before the court, the district court may refer to that evidence." Robinson, 269 F.3d at 140 (quotation marks, citation and alterations omitted).

## II. FACTUAL BACKGROUND

Beginning in 1981, UBS leased several floors of a building located at 299 Park Avenue in New York, New York from Park–Lane. Complaint ("Compl.") ¶ 14; 11/25/81 Agreement of Lease between the Fisher 299 Realty Company and Union Bank of Switzerland, New York Branch, Ex. B to Defendants' Notice of Removal ("the Lease"). The Lease contained the following clause:

> Tenant shall indemnify, defend, and save Landlord harmless from and against any liability or expense which is not the result of Landlord's negligence, willful act or willful omission, and which arises from the use or occupation of the demised premises by Tenant or anyone in the demised premises with Tenant's permission, or any breach of this Lease by Tenant.

Lease § 35.01: Indemnity ("the Lease Provision").

On April 2, 1998, Donna Martin, an employee of Sodexho Marriott, a food service company under contract with UBS, was allegedly injured by a defective cash register while working on the 27th floor of the building, one of the floors under lease. Compl. ¶ 16; 6/19/00 Underlying Complaint ¶¶ 17, 20, Ex. A to Defendants' Notice of Removal ("Und.Compl."). On June 19, 2000, Martin brought a personal injury suit in the Supreme Court of the State of New York in Kings County against UBS, Park–Lane, and Richard C. Fisher, whom she identified as general partner in Park–Lane and manager of the building at 299 Park Avenue. Compl. ¶¶ 2, 16; Und. Comp. ¶¶ 5–7. Martin's complaint alleged negligence on the part of all three defendants. Und. Compl. ¶¶ 23–27. In their answer, Park–Lane and Fisher cross-claimed against UBS for indemnity based on the Lease Provision. Defendants' Memorandum of Law ("Def.Mem.") at 3; Plaintiff's Memorandum of Law ("Pl.Mem.") at 2. The case is still pending in state court. Def. Mem. at 4; Pl. Mem. at 4.

**\*3** On July 12, 2000, plaintiff sent a demand letter to UBS for defense and indemnification of all costs arising from the Martin suit. 7/12/00 Travelers Letter, Ex. A to Affidavit of Nicholas R. Caiazzo ("Caiazzo Aff."), Attorney for Plaintiff. This triggered a correspondence between the parties in negotiation of their respective rights under the Lease Provision. Caiazzo Aff., Exs. A–G. On August 2, 2001, Winterthur, UBS's insurance company, sent a letter to plaintiff agreeing to assume the defense of and to indemnify Park–Lane with certain exceptions. 8/2/01 Winterthur Letter, Ex. E to Caiazzo Aff ("the August 2nd Letter"). The Letter stated that Winterthur would not pay the investigative costs or attorneys' fees incurred prior to its assumption of the defense. *Id.* It also stipulated that if it were established at any time during the litigation that Park–Lane had been negligent and had caused Martin's injuries, Park–Lane would resume the defense and pay any resulting judgment. *Id.*

In a letter dated September 5, 2001, plaintiff rejected the conditions set forth by Winterthur. 9/5/01 Travelers Letter, Ex. F to Caiazzo Aff. Plaintiff presented alternate terms and stated that "[s]hould the above counter-offer be rejected, the Travelers hereby rejects the terms of the August 2, 2001 conditional acceptance of the defense tender of the Fisher Park–Lane Company. Additionally, please be advised that a declaratory judgment action will be commenced should this matter not be resolved in the near future." *Id.* Winterthur responded by renewing its original offer, and further proposing a compromise by which it would add Fisher —who, Winterthur noted, was not named in the Lease—to the proposed defense agreement if Travelers would drop its claim for existing legal and investigative fees. 10/29/01 Winterthur Letter, Ex. G to Caiazzo Aff. Instead, Travelers followed through on its threat by bringing this action in New York state court. Defendants removed the case to this Court based on diversity of citizenship. Defendants' Notice of Removal ¶ 7.

## III. DISCUSSION

### A. Defendant Winterthur

Winterthur argues that its status as UBS's insurer does not give rise to liability for unadjudicated claims against UBS by a third party. Because plaintiff is neither insured by Winterthur nor in possession of a judgment against UBS, Winterthur contends that plaintiff fails to state a viable claim against it. In response, plaintiff argues that Park–Lane is an additional insured under the Winterthur–UBS policy, and alternatively that even an uninsured party who stands to benefit from a policy may bring an action for a declaratory judgment.

### 1. The Lack of Privity between Park–Lane and Winterthur

Plaintiff's only allegation against Winterthur is that UBS was and is insured by Winterthur. Compl. ¶¶ 17, 21. In its Memorandum, however, plaintiff argues that by virtue of Winterthur's August 2nd Letter, in which it agreed to assume the defense and indemnity of Park–Lane under specified terms, Winterthur effectively admitted that plaintiff was an additional insured under UBS's policy. Pl. Mem. at 6–7.

**\*4** Plaintiff did not reference the August 2nd Letter in the complaint nor attach it thereto; nevertheless, under an exception to the general rule that material outside the Complaint will not be considered on a Rule 12(b)(6) motion, plaintiff asks the Court to consider the document because plaintiff had actual notice of it and relied on it in bringing this suit. [2] *See Chambers v. Time Warner, Inc.,* 282 F.3d

147, 153 (2d Cir.2002). In any case, however, the Letter is unavailing: "[C]overage cannot be created through equitable estoppel" unless an insurer "undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." *See Interstate Indem. Co. v. Cont'l Ins. Co.,* No. 94 Civ. 5201, 1998 WL 118165, at *3. (S.D.N.Y. Mar. 16, 1998). No such reliance occurred, or is even alleged, in this case. The Letter was merely an offer made in the course of pre-litigation correspondence between the parties. Plaintiff rejected that offer and cannot revive it for other purposes here. By hypothesizing that Park–Lane is an additional insured under the Winterthur–UBS policy, plaintiff is attempting an end-run around the rule barring a stranger to a policy from suing the insurer in the absence of a judgment against the insured.

### 2. Third Party Suits Against Insurers

Plaintiff next contends that as a third party who stands to benefit from the Winterthur–UBS policy, it is permitted to bring a declaratory judgment action against Winterthur. If this were correct, the declaratory judgment action could proceed, but not the claim against Winterthur for damages.

Under New York law, a stranger to an insurance contract may not bring an action for damages against the insurer until and unless a judgment has issued against the insured. *See Jefferson v. Sinclair Refining Co.,* 10 N.Y.2d 422, 427 (1961). Section 3420 of the Insurance Law provides that a third party judgment creditor may sue an insurer. *See* N.Y. Ins. Law § 3420 (McKinney); [3] *Richards v. Select Ins. Co.,* 40 F.Supp.2d 163, 166 (S.D.N.Y.1999) (citing *Thrasher v. United States Liab. Ins. Co.,* 19 N.Y.2d 159, 166 (1967)). [4] Because plaintiff is a stranger to the Winterthur–UBS policy, and no judgment has yet been rendered against UBS, New York law precludes plaintiff's suit against Winterthur for damages. Whether the declaratory judgment action may proceed, however, presents a thornier question.

Only the Appellate Division Second Department holds that "[a] party who is not privy to an insurance contract but would nevertheless benefit from the insurance policy may bring a declaratory judgment action to determine whether the insurer owes a defense and/or coverage under the policy." *Watson v. Aetna Cas. and Sur. Co.,* 675 N.Y.S.2d 367, 368 (2d Dept.1998) (quoting *Tepedino v. Zurich–American Ins. Group,* 632 N.Y.S.2d 604, 605 (2d Dept.1995)). Not

surprisingly, all of the cases cited by plaintiff are from the Second Department. However, the other Departments that have spoken on the issue have adopted the opposite rule. *See, e.g., Abdalla v. Yehia,* 667 N.Y.S.2d 736, 737 (1st Dept.1998); *Hershberger v. Schwartz,* 604 N.Y.S.2d 428, 429 (4th Dept.1993).[5]

**\*5** Federal courts in this Circuit have adopted the latter view, both because the greater weight of state authority lies with the First and Fourth Departments, and because their reasoning better comports with the plain language of section 3420. *See Hartford Fire Ins. Co. v. Mitlof,* 123 F.Supp.2d 762, 768–69 (S.D.N.Y.2000); *NAP, Inc. v. Shuttletex, Inc.,* 112 F.Supp.2d 369, 377–78 (S.D.N.Y.2000); *Richards,* 40 F.Supp.2d at 169. "[A]bsent any legally cognizable interest in the insurance contracts at issue, there is no justiciable controversy between a third party and the insurer to give such party standing.... [A]ny declaratory relief under these circumstances would be premature if the third party's standing to maintain such action is contingent on the occurrence of a future event which may not happen." *NAP,* 112 F.Supp.2d at 378 (citing *Clarendon Place Corp. v. Landmark Ins. Co.,* 587 N.Y.S.2d 311, 313 (1st Dept.1992)) (internal quotation marks omitted).

Though the Declaratory Judgment Act gives federal courts broad discretion in entertaining suits seeking declaratory relief, a court sitting in diversity must tailor its decision to the substantive rights recognized by state law. *Id.* at 376–77; *Universal Acupuncture Pain Servs. v. State Farm Mut. Auto. Ins. Co.,* 196 F.Supp.2d 378, 384 (S.D.N.Y.2002). "A declaratory judgment is a remedy. Its availablity does not create an additional cause of action or expand the range of factual disputes that may be decided by a district court sitting in diversity." *Richards,* 40 F.Supp.2d at 169. As plaintiff's declaratory judgment action against Winterthur would most likely fail were it to reach New York's highest court, it cannot be heard in this diversity action governed by New York's substantive law. Plaintiff's claims against Winterthur must therefore be dismissed pursuant to Rule 12(b)(6).

### B. Defendant UBS
UBS argues that as long as the underlying personal injury suit is still pending, plaintiff's claims against it are not yet ripe for adjudication. UBS is partially correct. Plaintiff seeks a declaratory judgment that UBS has a duty both to defend and indemnify it in the underlying suit. Because those two duties are legally distinct, I will discuss each in turn.

### 1. The Duty to Defend
"A duty to defend is broader than the duty to indemnify." *Town of Oyster Bay v. Employers Ins. of Wausau,* 702 N.Y.S.2d 630, 632 (2d Dept.2000). The test is in the complaint: "The duty to defend arises whenever the allegations ... fall within the scope of the risks undertaken ... regardless of how false or groundless those allegations might be. The duty is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's coverage or within its exclusory provisions."[6] *Stonewall Ins. Co. v. Nat'l Gypsum Co.,* No. 86 Civ. 9671, 1992 WL 123144, at \*6 (S.D.N.Y. May 27, 1992) (quoting *Seabord Sur. Co. v. Gillette Co.,* 64 N.Y .2d 304, 310 (1984) (citations omitted)).

**\*6** Thus, if the complaint contains at least one allegation covered by the promise to defend, the insurer or promisor must provide a defense to the entire action. *See Physicians' Reciprocal Insurers v. Loeb,* 738 N.Y.S.2d 68, 70 (2d Dept.2002). Further, the same allegations that trigger a duty to defend trigger an obligation to pay defense costs. *See Lowy v. Travelers Prop. and Cas. Co.,* No. 99 Civ. 2727, 2000 WL 526702, at \*2 n. 1 (S.D.N.Y. May 2, 2000). Only where the promisor can prove as a matter of law that the claimed injury is excluded by the contract will the duty to defend be abrogated. *Id.* at \*2.

In the Lease Provision, UBS agreed to defend Park–Lane provided the latter is not at fault in causing the alleged injury. Because the Underlying Complaint attributed Martin's injury alternatively to the negligence of UBS, Park–Lane, and Fisher, plaintiff has stated a claim for a declaratory judgment as to UBS's duty to defend. For the same reason, plaintiff has also stated a claim for damages for UBS's failure to defend from the commencement of the underlying suit. Contrary to UBS's contentions, its duty to defend does not hinge on the resolution of the negligence issue in the underlying suit. In fact, although Park–Lane and Fisher's cross-claims have brought the question of UBS's duty to indemnify before the state court, the question of its duty to defend will not be addressed in that proceeding. At least as to the latter issue, then, the grounds for UBS's abstention argument fall away.

2. The Duty to Indemnify

In contrast to the duty to defend, the duty to indemnify turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts. *See* Stonewall, 1992 WL 123144, at *8 (citing *Servidone Constr. Corp. v. Sec. Ins. Co.,* 64 N.Y.2d 419, 424 (1985)). Where the facts on which the Court's decision depends have yet to unfold, a declaratory judgment action is "not currently a justiciable and ripe controversy and ... dismissal of the complaint without prejudice is the correct disposition of the action. This leaves open the possibility that at some future time a more complete development of the facts might lead to a different result." *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,* 90 F.3d 671, 676 (2d Cir.1996).

The Supreme Court has defined a justiciable controversy as one that is "definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character...." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41 (1937). There is no mechanical test for determining whether a suit presents such a controversy. *See* Lloyd's, 90 F.3d at 675 ("The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree...."). Nevertheless, in cases such as this—where the key facts can and will be established in an underlying proceeding—the lack of ripeness is palpable.

*See, e.g.,* *Pavarini Constr. Co. v. Liberty Mut. Ins. Co.,* 704 N.Y.S.2d 72 (1st Dept.2000) ("Whether the underlying plaintiff's injuries come within the policy's exclusion for injuries caused by the additional insureds' negligence is a question that must await a determination of liability in the underlying action.... [A]ccordingly, defendant's arguments on appeal bearing upon whether it has an obligation to indemnify the additional insureds are not properly before this Court."); *Statt v. Am. Home Assur. Co.,* 595 N.Y.S.2d 700, 701 (4th Dept.1993) ("This declaratory judgment action is premature. The extent of [defendant's] duty to indemnify must necessarily depend on the resolution of an issue that, if it arises, will be decided in the underlying action."). A decision by this Court as to UBS's duty to indemnify would be both hypothetical and speculative, and might be rendered moot by the result of Martin's suit.

**\*7** Plaintiff argues that based on the facts of the underlying case—chiefly, that UBS rather than Park–Lane was responsible for maintaining the equipment involved in the injury—a judgment of liability against Park–Lane or Fisher is exceedingly unlikely. In essence, plaintiff asks this Court to exercise jurisdiction over the action based on the ostensibly high probability that the Fishers will prevail in the underlying suit. In support of its argument, plaintiff cites *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,* 241 F .3d 154 (2d Cir.2001), in which the Second Circuit allowed a declaratory judgment action pertaining to insurers' future liabilities. "There are many issues still to be resolved in this lawsuit, and the ultimate resolution of those issues can very well affect the liability of each of the excess carriers.... [T]here is a substantial enough controversy that the matter should be fully resolved in this case and not left to future litigation when the claims are actually made against the excess policy." *Id.* at 176–77. In that case, the Court recognized that one or more of the issues to be decided in the suit rested on certain likely contingencies; the central difference, however, was that there was no underlying proceeding in which those contingencies would be resolved.

Here, the single decisive issue of negligence will be determined by the state court in the underlying action. Any decision on UBS's duty to indemnify plaintiff must therefore await that determination.[7] Accordingly, plaintiff's claim for a declaratory judgment regarding UBS's duty to indemnify, as well as plaintiff's related claims for damages, contribution, and common law indemnification, are dismissed pursuant to Rule 12(b)(1).

III. CONCLUSION

For the foregoing reasons, Winterthur's motion to dismiss is granted, and UBS's motion to dismiss is granted in part and denied in part. A conference is scheduled for July 16 at 4:30 p.m.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1391920

## Footnotes

1    Defendants' assertion that plaintiff's suit is not ripe amounts to an attack on subject matter jurisdiction, pursuant to Rule 12(b)(1), rather than an argument for dismissal based upon Rule 12(b)(6). *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41 (1937) (holding that the existence of an actual, justiciable controversy is a Constitutional prerequisite for the exercise of jurisdiction).

2    "We reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (emphasis in original). Whether plaintiff in this case *relied* on the Letter in drafting the Complaint is a question that need not be answered here for the reasons discussed below.

3    Both the Second Circuit and the New York Court of Appeals have held that although so-called "direct action statutes" have procedural consequences, they are substantive in character and therefore applicable in diversity cases under the *Erie* doctrine. *See Richards v. Select Ins. Co.,* 40 F.Supp.2d 163, 167 (S.D.N.Y.1999) ("the requirement of a judgment against the insured as a predicate to asserting a claim is best viewed as an element of the rights created in § 3420, and not merely a procedural, or timing, control") (citing *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 416 (2d Cir.1990); *Oltarsh v. Aetna Ins. Co.,* 15 N.Y.2d 111, 116 (1965).

4    Direct action statutes such as New York's mark a departure from the common law, which bars suits by third parties against insurers under all circumstances. *SeeRichards,* 40 F.Supp.2d at 167.

5    The Third Department has not ruled on this issue.

6    Although UBS is not Park–Lane's insurer, its promise in the Lease Provision to defend and indemnify Park–Lane contains language most often used in insurance contracts; therefore, the Court looks to insurance cases to aid in construing the clause.

7    Because these claims are not yet ripe, I need not reach the question of whether the abstention doctrine would require deference to the state court proceeding. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976) (setting forth "exceptional circumstances" test for whether a federal court should abstain from exercising jurisdiction over a suit while a parallel action proceeds in state court). *But see Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995) (prescribing discretionary standard for abstention in declaratory judgment suits). I note, however, that by virtue of Park–Lane and Fisher's cross-claims, the state court will directly address the issue of plaintiff's right to indemnification.

---

**End of Document**                                            © 2020 Thomson Reuters. No claim to original U.S. Government Works.