## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:  1:18-cv-05374; 1:18-cv-08655 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

## THIRD-PARTY PLAINTIFFS/COUNTERCLAIM-DEFENDANTS MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ED&F MAN CAPITAL MARKETS LTD.'S AMENDED COUNTERCLAIMS

KOSTELANETZ & FINK LLP

Bryan Skarlatos
Eric Smith
7 World Trade Center, 34th Floor
250 Greenwich Street
New York, NY  10007
T: 212-808-8100
F: 212-808-8108
bskarlatos@kflaw.com
esmith@kflaw.com

*Attorneys for Defendants / Third-Party Plaintiffs Del Mar Asset Management Savings and Retirement Plan and Federated Logistics LLC 401(K) Plan*

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................. i

**TABLE OF AUTHORITIES** ....................................................................................... ii

**PRELIMINARY STATEMENT** .................................................................................1

**BACKGROUND** ........................................................................................................2

**ARGUMENT** ..............................................................................................................5

      **I.**     **ED&F Cannot Be Indemnified for Its Own Fraud or Negligence.**..................6

           *a.*     *ED&F's Claims Are Prohibited as a Matter of Law.* ..............................7

           *b.*     *ED&F's Claims Are Prohibited by Contract.* ..........................................8

**CONCLUSION** .........................................................................................................11

## TABLE OF AUTHORITIES

### Federal Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ........................................ 5

*CBS Corp. v. Eaton Corp.*, No. 07 Civ. 11344 (LBS), 2010 WL 1375169 (S.D.N.Y. Mar. 30, 2010) ................................................................................................................... 7

*DeBlasio v. Merrill Lynch & Co, Inc.*, No. 07 Civ. 318(RJS), 2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009) ........................................................................................................... 6

*Egan v. Marsh & McLennan Cos.*, No. 07 Civ. 7134, 2008 WL 245511 (S.D.N.Y. Jan. 30, 2008) ...................................................................................................................... 6, 10

*Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) .......................................... 10

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) .................... 6, 10

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ...................................... 5

Rapoport v. Asia Elecs. Holding Co.,88 F.Supp.2d 179, 184 (S.D.N.Y. 2000) ........................... 10

### State Cases

*Eggeling v. Ryder Truck Rental, Inc.*, 254 A.D.2d 789, 677 N.Y.S.2d 845 (App. Div. 4th Dep't 1998) ..................................................................................................................... 8

*Great N. Ins. Co. v. Interior Const. Corp.*, 7 N.Y.3d 412, 857 N.E.2d 60 (2006) ........................ 9

*Kurek v. Port Chester Housing Authority*, 18 N.Y.2d 450, 223 N.E.2d 25 (1966) ...................... 8

*Messersmith v. American Fid. Co.*, 232 N.Y. 161, 133 N.E. 432 (1921) ................................ 7

*Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 425 N.E.2d 810 (1981) ......................... 7, 8

*Taussig v. Clipper Grp., L.P.*, 787 N.Y.S.2d 10 (N.Y. App. Div. 2004) ................................ 6

### Bankruptcy Court Cases

*In re Richartz, Fliss, Clark & Pope, Inc.*, Bankr. No. 08-13919 (MG), 2010 WL 4502038, at *3 (S.D.N.Y. Bankr. Nov. 1, 2010) .......................................................................... 6

### United Kingdom Cases

S*mith v. U.M.B. Chrysler (Scotland) Ltd* [1978] 1 WLR 165 ........................................ 9

Third-Party Plaintiffs and Defendants-in-Counterclaim Del Mar Asset Management Savings and Retirement Plan (the "Del Mar Plan") and Federated Logistics LLC 401(K) Plan (the "Federated Plan') (together, the "Plans"), respectfully submit this memorandum of law in support of their motion to dismiss the counterclaims of Third-Party Defendant and Counterclaimant ED&F Man Capital Markets Ltd. ("ED&F").

## PRELIMINARY STATEMENT

ED&F's counterclaims must fail and should be dismissed because they are based upon ED&F's intentional and/or negligent misconduct for which indemnification is not available. ED&F has admitted that it created 12 false tax vouchers (out of a total of 16) for the Plans' dividend withholding-tax reclaim applications submitted to Plaintiff Skatteforvaltningen ("SKAT"). The agreements between ED&F and the Plans exclude from any indemnity obligation those losses resulting from ED&F's own willful default, fraud, or negligence. The false tax vouchers are central to all of the claims against ED&F in this proceeding, as well as the concurrent proceeding by SKAT against ED&F in the United Kingdom. Now, having been shown the fundamental flaws in their claims as originally formulated, ED&F makes a desperate attempt to save its sinking ship by alleging the applicability of previously-overlooked language in a wholly separate alleged contract. It is of no effect because the newly-alleged contract terms, on their face, do not apply to this case where the more-specific Custody Agreements admittedly govern.

The law is clear that indemnification is not available for injuries intentionally caused by a party, and further, indemnification agreements must unequivocally and unmistakably demonstrate an intent to cover a party's own reckless or negligent misconduct. Here, by contrast, the agreements entered into by the Plans and ED&F expressly *exclude* indemnification for any liability, loss, or cost arising from ED&F's own misconduct. Meanwhile, ED&F has admitted to

the repeated creation of several false documents which necessarily is negligent, if not fraudulent. Accordingly, ED&F cannot succeed on any of its indemnification claims, and its counterclaims should be dismissed.

## BACKGROUND

The Plans and ED&F entered into custody agreements in 2013 and 2014, pursuant to which ED&F traded in Danish securities on behalf of the Plans.  *See* Amended Counterclaims of Third-Party Defendant ED&F Man Capital Markets Ltd. (the "Amended Counterclaims") ¶¶ 1–2, 6, Dkt. No. 326 (Apr. 20, 2020); *see also* Exhibits A and B to the Counterclaims, Dkt. Nos. 326-1, 326-2 (the "Custody Agreements").   Once the trades were executed, ED&F prepared and sent tax vouchers to another entity, Goal Taxback, who would then submit the reclaim applications to SKAT on behalf of the Plans.  ED&F Man Capital Markets Ltd.'s Answer to Third Party Plaintiffs Del Mar Asset Management Savings and Retirement Plan's, Federated Logistics LLC 401K Plan's, and David Freelove's Third-Party Complaint ("Answer") ¶ 32, Dkt. No. 283 (Mar. 2, 2020).  SKAT refunded dividend-withholding taxes to the Plans based on the tax vouchers that ED&F prepared.   Apparently, SKAT did not exercise any due diligence before paying these refunds.  *See* SKAT's Re-Re-Amended Particulars of Claim ("SKAT's English Claims"), Re-Amended Schedule 5T, ¶ 17(d) ("[I]n the absence of any [irregularity on the tax voucher], it was SKAT's practice not to subject the [tax refund] application[s] to any detailed due diligence"), both of which were filed in the English case captioned Skatteforvaltningen v. Solo Capital Partners LLP et al., CL2018-000297, CL-2018-00404, CL-2018-000590 (the "English Action").[1]

---

[1] SKAT's English Claims are Exhibit 3 to the Declaration of Eric Smith (the "Smith Decl.").  The Re-Amended Schedule 5T ("Schedule 5T") is Exhibit 4 to the Smith Decl.

The Custody Agreements contain indemnification clauses, *see* Amended Counterclaims ¶¶ 7, 8; Custody Agreements ¶ 16(a), but ED&F conveniently omits that those indemnification clauses clearly exclude ED&F's right to indemnification. Instead, the clauses expressly state that any indemnification obligation shall not extend to "*any* liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F or any ED&F-appointed sub-custodian]." Custody Agreements ¶ 16(b) (emphasis added).

In 2018, SKAT instituted the English Action. SKAT re-amended its claims against ED&F in the English Action, and continues to allege that ED&F negligently misrepresented the Plans' ownership of Danish securities and either (a) harmed SKAT under a theory of negligence or (b) unjustly enriched itself at the expense of SKAT as a result of ED&F's negligent misrepresentations. SKAT's English Claims ¶ 97 ("The enrichment of [ED&F] was at the expense of SKAT and was unjust by reason of the mistake induced by misrepresentation."); ¶ 52 ("SKAT decided to accept the . . . [ED&F] [a]pplications and make the payment there set out by reason of a mistake (or mistakes) induced by the . . . [ED&F] [a]pplications."); ¶ 94A ("[ED&F] owed to SKAT and breached a duty to exercise reasonable care and skill in making the ED&F Man Representations, on which SKAT relied and as a result of which it has suffered loss and damage."). SKAT further alleges ED&F stole millions in a "unified scheme" that used American pension plan clients as fronts for ED&F's own undisclosed self-dealing. *See generally* Schedule 5T and Smith Decl. Exhibit 5, Claimant's Further Particulars Regarding the Validity of WHT Refund Applications, (the "Further Particulars") filed in the English Action.

In September 2019, ED&F filed a response to SKAT's claims in the English Action. As part of that filing, ED&F admitted for the first time that it had provided false information in the tax vouchers supporting certain of the Plans' refund applications. *See* ED&F's Amended Defence,

¶ 4.2 & Annex E to ED&F's Amended Defence.[2]  Specifically, ED&F admitted that 12 of the 16 tax vouchers ED&F prepared to support the Plans' (and another 68 vouchers related to other ED&F clients) refund applications that SKAT ultimately paid did in fact contain false information concerning the Plans' receipt of dividends.  *See* Annex E to ED&F's Amended Defence.

As part of its claims against the Plans before this Court, SKAT alleged that "[ED&F] . . . provided statements falsely representing that [the Plans] owned shares in Danish companies and had earned dividends on those shares."  SKAT's Complaint ¶ 9(c) ("The non-party Broker-Custodians . . . provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares."), ¶¶ 48–50 (alleging falsity of ED&F's tax vouchers).[3]  In turn, the Plans filed third-party claims against ED&F, alleging that ED&F intentionally or negligently falsified documents in relation to the Plans' refund applications, and that ED&F should be responsible for any resulting fallout.  Third-Party Complaint (Dkt. No. 220) ¶¶ 39–101.

In its amended counterclaims against the Plans for indemnification, ED&F continues to rely on an incomplete statement of the Custody Agreements, but now raises the Terms and Conditions that "set out contractual terms governing the relationship between ED&F and the plans, *subject, where relevant, to any transaction-specific documentation*."  Amended Counterclaims ¶ 10 (emphasis added).  Accordingly, ED&F now claims it is entitled to:

> complete indemnification by the Plans [sic] pursuant to the [Custody] Agreements and/or the Terms and Conditions, including, without limitation, for all liabilities, losses and/or costs suffered or incurred in connection with (i) the Agreements and/or the Terms and Conditions; (ii) the performance of ED&F's obligations

---

[2] ED&F's Amended Defence, including Annex E, is attached as Exhibit 6 to the Smith Decl.

[3] SKAT's complaints against the Plans are identical in all material respects for purposes of this motion.  Any reference to "SKAT's Complaint" is to SKAT's Complaint filed against Del Mar Asset Management Savings and Retirement Fund, filed as Dkt. No. 1 in Case No. 1:18-cv-05374-LAK.

under the Agreements and/or the Terms and Conditions; (iii) any tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions; and/or (iv) any action or proceeding – whether in this jurisdiction, in the English Action, or in any other proceedings – related to the Agreements, the Terms and Conditions, and/or any tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions.

Amended Counterclaims ¶ 13. ED&F's Amended Counterclaims do not identify any "action[s] or proceeding[s]" other than this litigation and the English Action. *See generally*, Amended Counterclaims.

To the extent ED&F is liable to either SKAT or the Plans, its liability arises as a result of having created false tax vouchers (including the 12 tax vouchers issued to the Plans that ED&F admitted were false) and thereby negligently or fraudulently misrepresenting the Plans' Danish dividend-withholding taxes.   Inexplicably, ED&F demands this Court to order the Plans to indemnify ED&F "for all liabilities, losses, and/or costs suffered or incurred in connection with … any action or proceeding – whether in this jurisdiction, in the English Action, or in any other proceedings – related to the Agreements, the Terms and Conditions, and/or any tax reclaim applications submitted by or on behalf of the Plans for the Danish Transactions."   Amended Counterclaims ¶ 13.

## ARGUMENT

A complaint must "'state a claim to relief that is plausible on its face'" if it is to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).  While the complaint's factual allegations are accepted as true, and reasonable inferences are to be drawn in favor of the claimant, a court cannot credit conclusory allegations or legal conclusions.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

Furthermore, "where a [claimant's] 'factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[.]'" *Egan v. Marsh & McLennan Cos.*, No. 07 Civ. 7134, 2008 WL 245511, at *4 (S.D.N.Y. Jan. 30, 2008) (citing *Taussig v. Clipper Grp., L.P.*, 787 N.Y.S.2d 10, 11 (N.Y. App. Div. 2004)); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."). The Court also may reject allegations that are contradicted by other allegations or matters asserted or relied upon in the complaint. *DeBlasio v. Merrill Lynch & Co, Inc.*, No. 07 Civ. 318(RJS), 2009 WL 2242605, at *26 (S.D.N.Y. Jul. 27, 2009) (Sullivan, J.) (citation omitted). "[T]he [C]ourt is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true." *In re Richartz, Fliss, Clark & Pope, Inc.*, Bankr. No. 08-13919 (MG), 2010 WL 4502038, at *3 (S.D.N.Y. Bankr. Nov. 1, 2010) (Glenn, B.J.).

## I.    ED&F Cannot Be Indemnified for Its Own Fraud or Negligence.

ED&F seeks a judgment that is foreclosed by both law and the express terms of the contracts on which ED&F relies. ED&F seeks broad indemnification for liabilities that arise out of its own admitted creation of false documents. It is against public policy to contract around liability for fraud, and in any event, the contract to which ED&F agreed specifically limited indemnification to liabilities that did *not* arise out of ED&F's "willful default, fraud or negligence." Accordingly, ED&F has not stated a claim for relief that is plausible on its face, and the counterclaim should be dismissed.

### a.   ED&F's Claims Are Prohibited as a Matter of Law.

As a threshold matter, ED&F cannot seek indemnification for its own intentionally wrongful acts. *See CBS Corp. v. Eaton Corp.*, No. 07 Civ. 11344 (LBS), 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30, 2010) (Sand, J.) ("[C]ontracts that would indemnify a party for intentional or fraudulent conduct are void as against public policy in New York") (*citing Public Service Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 399, (1981)).  As explained in *Goldfarb*, permitting one to seek indemnity for intentionally caused harms would "violate the 'fundamental principle that no one shall be permitted to take advantage of his own wrong.'" *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 400, 425 N.E.2d 810, 814–15 (1981) (*quoting Messersmith v. American Fid. Co.*, 232 N.Y. 161, 165, 133 N.E. 432 (1921)).  This prohibition extends to both compensatory *and* punitive damages flowing from the intentionally caused injury. *Id.*

In connection with ED&F's admitted creation of false credit vouchers, the Plans have raised a claim for *intentional* fraudulent conduct.  Specifically, Count I of the Plans' third-party complaint (DE No. 220) asserts a claim for ED&F's intentional and knowing creation of false and fraudulent statements on which ED&F knew and intended the Plans would rely in seeking reclaims from SKAT.  Similarly, SKAT, in the English Action, has alleged claims for ED&F's conduct in creating documents falsely certifying the Plans' ownership of, and their receipt of dividends net of Danish withholding taxes in connection with, Danish securities. Specifically, SKAT alleges:

> The ED&F Man Applications were part of a trading scheme that was created for the sole purpose of manufacturing a claim to a [dividend tax] refund including by identifying, procuring, or assisting in the formation of seemingly eligible applicants for [dividend tax] refunds. There was no other commercial rationale for such trading, which did not result in any other material profits for any of [ED&F Man's pension plan clients].

Further Particulars ¶ 47.6

It is clear these were not isolated occurrences, but part of an intentional and systematic scheme by ED&F to defraud the Plans and SKAT.  ED&F has admitted to the falsity of 12 of the Plans' 16 credit vouchers, and to many more credit vouchers created on behalf of other ED&F clients.

Necessarily, any liability of ED&F flowing from the claims asserted by either the Plans or SKAT will fall under the umbrella of *Goldfarb*'s prohibition on indemnification for intentional injuries.  53 N.Y.2d at 400.  Even if ED&F had contracted with the Plans to secure indemnification for the acts ED&F is alleged to have taken, a fact the Plans strongly contest, New York would give no effect to the agreement.  As such, ED&F has not, and cannot, state a claim on which this Court can grant relief.

### b.   *ED&F's Claims Are Prohibited by Contract.*

ED&F still has not stated a claim on which relief can be granted even if its conduct is found not to have been fraudulent and intentional.  Instead, the plain language of the applicable agreement specifically excludes from any requirement to indemnify "any liability, loss or cost arising out of the willful default, fraud or negligence of [ED&F]."  Custody Agreements, ¶ 16(b).  Having admitted to preparing numerous false credit vouchers, ED&F cannot escape the only permissible construction of ¶ 16(b), which is to deny ED&F any claim for indemnification.

No alleged ambiguity in the contract, assuming it were present here, could save ED&F, as New York courts will only construe contracts to provide for indemnification of the indemnitee's own active negligence where the parties' intent is expressed in unequivocal terms. *Kurek v. Port Chester Housing Authority*, 18 N.Y.2d 450, 456, 223 N.E.2d 25, 27 (N.Y. 1966); *see also Eggeling v. Ryder Truck Rental, Inc.*, 254 A.D.2d 789, 789, 677 N.Y.S.2d 845, 846 (App. Div. 4th Dep't 1998) (finding that rental contracts did not clearly and unequivocally

express an intent to indemnify Ryder against its own negligence and noting New York law

"frowns upon contracts intended to exculpate a party from the consequences of his own

negligence") (internal quotation marks omitted).

      The absence of an unequivocal intent to indemnify ED&F's own negligence is readily

apparent from the text of paragraph 16(b) of the agreement, and underscored further by

comparison to a contract term that was held to have evidenced the required intent.  Whereas the

Custody Agreement *specifically excludes* ED&F's own negligence from coverage by the

indemnification provisions, the court in *Great Northern Insurance. Co. v. Interior Const. Corp.*

found that language indemnifying for "'any' accident occurring in Depository's premises 'unless

caused solely by [New Water's] negligence'" was drawn broadly enough to "unambiguously

evince[] an intent that Depository indemnify New Water for the latter's own negligence, provided

New Water was not 100% negligent." *Great N. Ins. Co. v. Interior Const. Corp.*, 7 N.Y.3d 412,

417, 857 N.E.2d 60, 62 (2006).  Conspicuously absent from the Custody Agreement is any

qualification on the category of ED&F's own negligence that would evidence an intent to make

*any* negligence subject to indemnity.

      English law would similarly deny ED&F any claim for indemnification in this case.[4]

There, as in New York, no indemnification action exists unless the contractual language's

"ordinary meaning" clearly provides for the indemnity. *See, e.g.*, S*mith v. U.M.B. Chrysler

(Scotland) Ltd* [1978] 1 WLR 165 (quoting *Canada Steamship Lines Ltd. v. The King* [1952] AC

192, 208)).  The presumption against interpreting indemnification clauses to cover a party's own

negligence is "well-established." *Smith* [1978] 1 WLR 165 (citing *Walters v. Whessoe Ltd. and*

---

[4] The Custody Agreements are purportedly governed by English law. *See* Custody Agreement ¶
22(a).

*Others* [1968] 1 W.L.R. 1028). As the language of paragraph 16(b) is not subject to reasonable debate, ED&F is stuck with the bargain it struck.

The willful or negligent nature of ED&F's conduct is also undisputed. Indeed, ED&F has admitted to preparing false credit vouchers. Further, any liability of ED&F (and, therefore, any claim for indemnification) turns on whether the false credit vouchers caused compensable injury to SKAT or to the Plans, so there is no scenario in which ED&F's liability will not be caused by its own "willful default, fraud or negligence." Either way, the express terms of ¶ 16(b) of the agreement plainly capture ED&F's conduct and preclude any indemnification in this Court.

ED&F's conclusory claims to the contrary are entitled to no weight. *See*, *e.g.*, *Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (Marrero, J.) (dismissing *pro se* litigant's complaint, which was contradicted by the amended complaint's annexed exhibits); *see also*, *Egan*, 2008 WL 245511 at *4 (explaining flatly contradicted allegations and legal conclusions are not presumed to be true "or even accorded favorable inference"). Rather, the Court may conclude, from the plain language of the document attached to ED&F's counterclaim, ED&F has pled no facts that give rise to a plausible claim for relief on its face. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 405–06; *see also Rapoport v. Asia Elecs. Holding Co.*, 88 F.Supp.2d 179, 184 (S.D.N.Y.2000) (granting motion to dismiss where the documents on which plaintiffs' claim purports to rely contradict allegations in plaintiffs' complaint). Because ED&F can state no claim for indemnification, the counterclaims are properly dismissed under Rule 12(b)(6).

ED&F gains no more traction by invoking the Terms and Conditions, which ED&F is forced to acknowledge, are "*subject* […] *to* any transaction-specific documentation" like the

Custody Agreements.  ED&F's potential liability arises directly out of its creation of false credit invoices.  As "evidence [of] or evidence of title to" securities, the false credit invoices created by ED&F fit squarely within ED&F's definition of "Client Property" over which the Custody Agreements prescribe the exclusive rights to any indemnification remedy.  Amended Counterclaims ¶ 4; Custody Agreements ¶ 16.  ED&F fails to even suggest how the facts of this case implicate the Terms and Conditions or give rise to any right to indemnification, and any claim that the creation of false invoices constitutes the "due performance of [ED&F's] obligations under the[] Terms and Conditions" is simply untenable.  *See* Terms and Conditions ¶ 19.  Meanwhile, ED&F conveniently glides past that part of the Terms and Conditions which, in perfect harmony with the Custody Agreements, limits ED&F's liability for losses sustained by clients *except* for those "arising directly from our … negligence, willful default or fraud."  *Id*. ¶ 18.  ED&F's feeble suggestion that the generic language of the Terms and Conditions provides the basis for any recovery in this case has no merit and must be dismissed.

## CONCLUSION

In the face of claims based on negligence and fraud, ED&F has already admitted that it provided false information to the Plans and to SKAT.  ED&F's wrongful conduct is central to any judgment that may be entered against it, either here or in the English Action.  Therefore, ED&F is not entitled to indemnification from the Plans, and ED&F's counterclaims should be dismissed.

May 18, 2020                           Respectfully submitted,

                                       KOSTELANETZ & FINK LLP


                                        /s/ Eric Smith
                                       Bryan Skarlatos
                                         bskarlatos@kflaw.com
                                       Eric Smith
                                         esmith@kflaw.com
                                       7 World Trade Center, 34th Floor
                                       250 Greenwich Street
                                       New York, NY  10007
                                       T: 212-808-8100
                                       F: 212-808-8108

                                       *Attorneys for Defendants / Third-Party Plaintiffs*
                                       *Del Mar Asset Management Savings and*
                                       *Retirement Plan, Federated Logistics LLC*
                                       *401(K) Plan, and David Freelove*