# EXHIBIT 7




[Home] [Databases] [World Law] [Multidatabase Search] [Help] [Feedback]

# United Kingdom House of Lords Decisions

**You are here:** BAILII >> Databases >> United Kingdom House of Lords Decisions >> Smith v UMB Chrysler [1977] UKHL 7 (09 November 1977)
URL: *http://www.bailii.org/uk/cases/UKHL/1977/1978_SC_HL_1.html*
Cite as: [1978] WLR 165, 8 BLR 1, 1978 SC (HL) 1, [1978] 1 All ER 18, 1978 SLT 21, [1978] 1 WLR 165, [1977] UKHL 7

[New search] [Buy ICLR report: [1978] 1 WLR 165] [Help]

JISCBAILII_CASE_SCOT_CONTRACT

09 November 1977

## SMITH

v.

## U.M.B. CHRYSLER (SCOTLAND) LTD

At delivering judgment on 9th November 1977,—

**LORD WILBERFORCE** .—MY LORDS, I have had the benefit of reading in advance the opinions of my noble and learned friends Lord Fraser of Tullybelton and Lord Keith of Kinkel. I agree with their conclusions. I would allow the appeal.

**VISCOUNT DILHORNE** .—MY LORDS, I have had the advantage of reading the speeches of my noble and learned friends Lord Fraser of Tullybelton and Lord Keith of Kinkel and I agree with their conclusions.

I agree with them in thinking that the 1970 edition of the General Conditions was the edition to be treated as incorporated in the contract. If the respondents had been asked to send a copy of the conditions and had sent an earlier edition, it would no doubt have been difficult for them successfully to contend that another edition was that to which the Purchase Order referred.

The main question for determination in this appeal is as to the construction to be placed on Clause 23(*b*) of the General Conditions. The view of their Lordships as expressed by Lord Morton of Henryton in *Canada Steamship Lines Ltd. v. The King* [1952] AC 192 as to the approach to be made in construing "such clauses" was summarised by the formulation of what has been referred to as three tests. In that case there was both an exemption clause and an indemnity clause. Although the tests themselves referred only to clauses exempting from liability, the reference by Lord Morton in the preceding sentence to "such clauses" shows that the tests were meant to apply both to exemption and to indemnity clauses.

It is, however, to be noted that after formulating these tests, Lord Morton at p. 211 said in relation to the indemnity provision "… if the Crown's contention as to this clause is correct, it imposes a very remarkable and burdensome obligation on the company. However widespread may be the destruction caused by the negligence of the Crown's servants in carrying out the Crown's obligations … the whole of the damage must be paid for by the company. In the present case the claims are heavy, and it is obvious that the damage caused by a fire such as this might be even greater. Such a liability for the negligence of others must surely be imposed by very clear words, if it is to be imposed at all."

It would seem in the light of these observations that it was the view of Lord Morton that a heavier burden lay on the proferens seeking to establish that the other party to an agreement had agreed to indemnify him against liability for his negligence and that of his servants than when he is merely seeking to establish exemption from liability for his negligence.

In *Gillespie Bros. & Co. Ltd. v. Roy Bowles Transport Ltd.* [1973] Q.B. 400 Buckley L.J. said at p. 419 "It is, however, a fundamental consideration in the construction of contracts of this kind that it is inherently improbable that one party to the contract should intend to absolve the other party from the consequences of the latter's own negligence. The intention to do so must therefore be made perfectly clear, for otherwise the court will conclude that the exempted party was only to be free from liability in respect of damage occasioned by causes other than negligence for which he is answerable."

While an indemnity clause may be regarded as the obverse of an exemption clause, when considering the meaning of such a clause one must, I think, regard it as even more inherently improbable that one party should agree to discharge the liability of the other party for acts for which he is responsible. In my opinion it is the case that the imposition by the proferens on the other party of liability to indemnify him against the consequences of his own negligence must be imposed by very clear words.

It cannot be said, in my opinion, that it has been in the present case.

The tests formulated by Lord Morton are applicable to the exempting or indemnity provision itself but in construing such a provision other parts of the contract which throw a light on the meaning to be given to it are not to be ignored. It would be wrong in this case only to have regard to Clause 23(*b*) to which the tests apply, and to ignore the other parts of the clause which in my opinion throw a revealing light on the meaning to be given to that provision.

In *Hollier v. Rambler Motors (A.M.C.) Ltd* . [1972] 2 QB 71, Salmon L.J., as he then was, at p. 80 made some observations on the passage in Lord Greene's judgment in *Alderslade v. Hendon Laundry Ltd* . [1945] 1 K.B. 189 which was cited with approval by Lord Morton in the *Canada Steamship* case. He pointed out that "in the end you are driven back to construing the clause in question to see what it means." My noble and learned friend Lord Salmon's observations met with the approval of Lord Denning M.R. in *Gillespie Bros. v. Roy Bowles Ltd* .(*supra*) and while the tests formulated by Lord Morton are a useful aid to construing such clauses, they must not be interpreted as if they were provisions in a statute. At the end of the day one must construe the clause in the light, *inter alia*, of other provisions of the contract. It might be, though I do not think it is the case, that applying the tests to Clause 23(*b*) alone might lead to the conclusion that the respondents succeeded while regard to the other provisions of the clause led to a contrary conclusion.

When one considers Clause 23(*b*) by itself in relation to the three tests, I agree with my noble and learned friend Lord Fraser that it did not expressly indemnify the respondents from the consequences of their or their servants' negligence, and so did not satisfy the first test. To satisfy that, there must be a clear and

unmistakable reference to such negligence; that is shown by the words "If there is no express reference to negligence" with which the second test begins. In *Gillespie Bros. v. Roy Bowles Ltd* .(*supra*) Buckley L.J. and Orr L.J. thought that the first test was satisfied by a clause whereby one party undertook "to saving harmless and keep" the other party "indemnified against all claims or demands whatsoever …" With that conclusion I must express my dissent.

Clause 23(*b*) begins with very wide words, but their width is restricted to liability for personal injuries or death or injury or damage to property arising out of or in the course of or caused by the execution of the order, that is to say, by the doing of the work the subject of the order. The liability in respect of which the respondents are to be indemnified is thus linked with the doing of the work. This appears to me to point to liability incurred by the respondents for acts or omissions of the appellants and their servants and not to liability of the respondents for their or their servants' negligence. Whether or not this be right, it cannot be said that the language of Clause 23(*b*) makes it perfectly clear that the respondents were to be indemnified against that.

On the assumption that I am wrong about this, and that the words of Clause 23(*b*) are wide enough to cover negligence on the part of the respondents and so are covered by the second part, I now turn to the third test. In my opinion it cannot be said that the clause was not intended to cover something other than negligence on the part of the respondents. The language is apt to cover negligence on the part of the appellants and their servants and to my mind the likely object of it was to make it clear that the respondents were to be indemnified against liability to the third parties in respect of acts or omissions of the appellants and their servants. I agree with my noble and learned friend Lord Keith of Kinkel in agreeing with the observations of Lord Justice-Clerk Thomson and Lord Patrick in *North of Scotland Hydro-Electric Board v. D. & R. Taylor* 1956 S.C.1 which he has cited. It does not suffice to show that this conclusion with regard to the third test is wrong, that at common law the respondents would have a remedy against the appellants if held liable for something which was the appellants' fault.

I think the view that Clause 23(*b*) considered by itself does not indemnify the respondents against liability for their own negligence is reinforced when one comes to consider the introductory words of that clause, sub-paragraph (*a*) and its concluding part.

The words "In the event of this order involving the carrying out of work by the Supplier … on land and/or premises of the Purchaser" support the view that the indemnity was intended to protect the respondents against liability resulting from the carrying out of the work by the appellants. Clause 23(*a*) makes it clear that all losses and costs incurred by reason of the supplier's breach of the statute, etc., are to be covered. This again points to the clause being intended to protect the respondents from any liability arising from conduct of the supplier. It was sought to attach significance to the omission of any reference in Clause 23 (*b*) to the supplier, but I do not think that omission significant. If, after providing that the indemnity was to cover liability for the appellants' breaches of statute, it was intended that Clause 23(*b*) should extend to indemnity against the consequences of the respondents' own negligence, that could easily have been made clear.

The final words of the clause as to insurance are difficult indeed to construe, I but I think they were intended to mean that the supplier and subcontractors were required to insure against liabilities they might incur under the contract or subcontracts. I cannot suppose that sub-contractors would be required to insure against a liability to indemnify the respondents against the consequences of their own negligence.

I, too, would allow the appeal.

**LORD SALMON** .—MY LORDS, I too have had the advantage of reading in advance the speeches of my noble and learned friends Lord Fraser of Tullybelton and Lord Keith of Kinkel. For the reasons they give I would allow this appeal.

**LORD FRASER OF TULLYBELTON** .—MY LORDS, This is an appeal from the Second Division of the Court of Session. The Lord Justice-Clerk, with whom Lord Kissen and Lord Leechman concurred, held that an indemnity clause had been incorporated in a contract between the appellants and the respondents and that its effect was to entitle the respondents to be indemnified against a liability solely caused by their own negligence. The appellants appeal against both parts of the decision.

The respondents are motor manufacturers with a factory at Linwood in Renfrewshire. For some years before 1970 they or their predecessors, Rootes Motors (Scotland) Ltd., had employed the appellants to carry out an annual overhaul of the electrical equipment in the factory. On 25th July 1970, while the appellants were carrying out the annual overhaul, an electrical fitter employed by them and engaged on the overhaul work was seriously injured. He raised this action for damages against the respondents as defenders and they later convened the appellants as third parties. After a proof, limited to the question of liability for the accident, the Lord Ordinary, Lord Brand, held that it had been wholly caused by negligence and breach of statutory duty on the part of the respondents, and his decision on that part of the case has been accepted. A separate proof was then held on the question of indemnity. The pursuer had no interest in this issue and took no part in the second proof. The Lord Ordinary held that the respondents were entitled to be indemnified by the appellants and, on a reclaiming motion, the Second Division affirmed his decision.

The respondents found on an indemnity clause in their General Conditions of Contract and the first question is whether the General Conditions were incorporated in the contract between the respondents and the appellants. If they were, there is a subsidiary question as to which of three versions of the conditions was incorporated, but this is of no practical importance because all three versions included an indemnity clause and there is no difference material to this issue between the clauses. If any of the versions was incorporated there arises a second question as to the construction of the indemnity clause.

The first question arises in this way. The contract was formed by several documents, one of which was a Purchase Order dated 27th May 1970 issued by the respondents to the appellants and included the words "Please supply goods or services specified below subject to the instructions and conditions on the facts hereof and our General Conditions of Contract 24001, obtainable on request, and to the following special conditions, if any, shown on the attached form and numbered." (The word "facts" is obviously a mistake for "face.") The appellants did not request a copy of the General Conditions. Some time later, on 1st July 1970, a copy of the General Conditions (January 1969 version) was sent to the appellants because it happened to be printed on the back of a Purchase Order Amendment issued by the respondents after confusion had arisen between this contract and another contract to which the respondents and appellants were parties. In May 1970 there were three versions of the conditions. The original version was headed "General Conditions of Contract (24001)" and the later versions bore the same heading with the addition of "Revised January 1969" and "Revised March 1970" respectively. The respondents' system of referring to General Conditions which would be sent on request was only in operation for about a year, during which period no supplier ever asked for a copy of them, but the evidence of the respondents' chief buyer at Linwood was that if anyone had asked, he would have sent whichever of the three versions happened to come first to hand. In that state of matters the Dean of Faculty argued that none of the versions had been incorporated by the reference in the Purchase Order because such a reference could only be effective if it was to a unique set of conditions. I cannot agree. If the argument had any validity, its logical result would seem to be that there was no contract at all, but that was rightly not maintained. The reference in the Purchase Order clearly shows that the respondents intended to

include the General Conditions in the contract. The appellants never raised any objection to their incorporation, nor any question as to their terms and a few days after receiving the copy of the January 1969 version, they proceeded to carry out the work. In these circumstances I agree with the Lord Justice-Clerk, who delivered the only opinion in the Second Division, that one or other of the three versions of the conditions was certainly incorporated. The only question is which.

The Lord Ordinary and the Second Division held that the original (unrevised) version had been incorporated because it was the only one that precisely fitted the description of the Purchase Order which made no mention of "revised January 1969" or "revised March 1970." In my opinion that view depends upon too strict a reading of the words in the Purchase Order. It seems to me that the reference to General Conditions without any further description must be taken to refer to the edition current at the date of the contract, that is, in the edition revised in March 1970. If the appellants had asked for a copy of the General Conditions that is the version which ought to have been sent, and, as the appellants do not suggest that they were in any way misled by the sending of the January 1969 edition in July 1970, I consider that the latest edition is to be taken as having been incorporated in the contract. I shall hereafter refer to the clause, clause 23, in the March 1970 edition, although as I have already mentioned, the argument on construction would be the same whichever edition had been incorporated.

I come now to the question of construction. The indemnity clause is as follows:

> "23. In the event of this order involving the carrying out of work by the Supplier and its subcontractors on land and/or premises of the Purchaser, the Supplier will keep the Purchaser indemnified against:—(a) All losses and costs incurred by reason of the Supplier's breach of any statute, bye-law or regulation. (b) Any liability, loss, claim or proceedings whatsoever under Statute or Common Law—(i) in respect of personal injury to, or death of, any person whomsoever; (ii) in respect of any injury or damage whatsoever to any property, real or personal, arising out of or in the course of or caused by the execution of this order. The Supplier will insure against and cause all sub-contractors to insure against their liability hereunder, and will produce to the Purchaser on demand the policies of insurance with current renewal receipts therefor."

The principles which are applicable to clauses which purport to exempt one party to a contract from liability were stated by Lord Greene in *Alderslade v. Hendon Laundry Ltd* . [1945] K.B. 189, 192 and were quoted with approval by Lord Morton of Henryton in the Privy Council in *Canada Steamship Lines Ltd. v. The King* [1952] AC 192, 208 where he summarised them as follows:—

> "(1) If the clause contains language which expressly exempts the person in whose favour it is made (hereafter called 'the proferens') from the consequence of the negligence of his own servants, effect must be given to that provision. (2) If there is no express reference to negligence, the court must consider whether the words used are wide enough, in their ordinary meaning, to cover negligence on the part of the servants of the proferens. If a doubt arises at this point, it must be resolved against the proferens. (3) If the words used are wide enough for the above purpose, the court must then consider whether 'the head of damage may be based on some ground other than that of negligence,' to quote again Lord Greene in the *Alderslade* case. The 'other ground' must not be so fanciful or remote that the proferens cannot be supposed to have desired protection against it; but subject to this qualification, which is no doubt to be implied from Lord Greene's words, the existence of a possible head of damage other than that of negligence is fatal to the proferens even if the words used are *prima facie* wide enough to cover

negligence on the part of his servants."

These rules were stated in relation to clauses of exemption, but they are in my opinion equally applicable to a clause of indemnity which in many cases, including the *Canada Steamship Lines Ltd*. is merely the obverse of the exemption. The statement has been accepted as authoritative in the law of Scotland, see *North of Scotland Hydro-Electric Board v. D. & R. Taylor* [1956 SC 1](), which was concerned with a clause of indemnity and it was accepted by both parties, rightly in my opinion, as being applicable to the present appeal.

The argument based on the first of Lord Morton's tests can be disposed of quickly. Mr. Cullen argued that paragraph (*b*) in the present indemnity clause contained language which "expressly" entitled the respondents to indemnity against the consequence of their own negligence and that the first test was satisfied. The argument was that the words "any liability, loss, claim or proceedings whatsoever" amounted to an express reference to such negligence because they covered any liability however caused. The argument was supported by reference to the opinions of Buckley L.J. and Orr L.J. in *Gillespie Bros. v. Roy Bowles Ltd* . [1973] Q.B. 400, 420, 421, where great emphasis was placed on the word "whatsoever" occurring in an indemnity clause as showing that the indemnity was intended to apply to all claims and demands however caused including claims for negligence. I agree with the decision in that case and with the statement by Buckley L.J. at page 421, that the clause was one "which cannot sensibly be construed as subject to an implied qualification" but I am unable to agree with the learned Lord Justice's conclusion that the clause contained "an agreement in express terms" to indemnify the proferens. I do not see how a clause can "expressly" exempt or indemnify the proferens against his negligence unless it contains the word "negligence" or some synonym for it and I think that is what Lord Morton must have intended as appears from the opening words of his second test ("If there is no express reference to negligence …"). On this point I agree with the opinion of the Lord Justice-Clerk in the present case and of Lord Maxwell in *Clark v. Sir William Arrol & Co. Ltd. and Others* 1974 S.L.T. 90, 92. The word "whatsoever" occurs in paragraph (*b*) of Clause 23 here, but in my opinion it is no more than a word of emphasis and it cannot be read as equivalent to an express reference to negligence. To hold that it could would be to invest it with the same sort of magic property as the word "allenarly" used to have in relation to an alimentary liferent in Scotland and there is no justification for that. In the present case I am clearly of opinion that there is no express provision that the respondents are to be indemnified against the results of their own negligence and that the Second Division were right in so holding.

I pass then to consider the second test. The words "any liability … whatsoever … under common law in respect of personal injury" which occur near the beginning of Clause 23(*b*), if read in isolation, are of course wide enough to cover liability arising from negligence of the respondents or their servants. But they cannot properly be read in isolation from their context in Clause 23 and in the General Conditions. I have reached the opinion that Clause 23(*b*), read as a whole, does not apply to liability arising from negligence by the respondents or their servants. The General Conditions are evidently intended to apply to many contracts where the respondents are "the Purchaser" and some other party is the supplier of goods or services to them. But Clause 23 applies only "in the event of [the particular contract] involving the carrying out of work by the supplier *and* its sub-contractors on" the respondents' premises. (The Dean of Faculty accepted, rightly in my opinion, that the word "and" which I have italicised must be read as if it were, or included, "or." Otherwise in a case such as the present, where no sub-contractors were involved, the clause would not apply at all. That seems absurd.) The clause is thus looking to cases where the employees of the supplier will be working on the respondents' premises and it very naturally provides for an indemnity against the consequences of negligence by those employees while working there. But the employees of the respondents would not require to do any work in carrying out the contract and it seems unlikely that the parties intended that the respondents were to be indemnified by the appellants against liability as occupiers of the factory, especially as the

indemnity is against claims in respect of injury to any person whomsoever and is not limited to servants of the suppliers or sub-contractors. Moreover, the indemnity is, in the final words of paragraph (b), in respect of injuries etc. "arising out of or in the course of or caused by the execution of this order" and the only parties who will be concerned in "execution" of the order are the appellants and any sub-contractors. "In the course of" must convey some connection with execution of the order beyond the merely temporal; and thus they appropriately apply to activities of the party who is carrying out work under the order.

The scope of the indemnity is defined in paragraph (a) and (b) of Clause 23. It was accepted by both parties in argument that sub-paragraph (a) is concerned only with breaches of criminal law. That appears rather less clearly in the March 1970 version ("all losses and costs incurred by reason of the Suppliers' breach of any statute, bye-law or regulation") than in the original version ("all fines, penalties and loss incurred …") but I think it is clear enough. Sub-paragraph (b) is evidently concerned with civil liability. In contrast with sub-paragraph (a) it is not expressly limited to liabilities incurred by reason of the acts or omissions of the supplier. So far as it goes, that contrast is in favour of the respondents, but it is not, in my opinion, enough to overcome the other indications that I have mentioned which point in favour of the appellants.

Some further support for the appellants' argument is to be derived from the final part of Clause 23 dealing with insurance. No doubt these provisions are obscure, and the reference to sub-contractors insuring against "their liability hereunder" (which I read as meaning "under this clause") is inept as no liability was imposed on sub-contractors under the clause nor could it have been as no sub-contractors were parties to the contract. But it evidently contemplates both suppliers and sub-contractors, if any, having liabilities under paragraph (b) of the clause; these must, I think, be separate liabilities arising from their respective acts or omissions. Otherwise the effect of the insurance provisions would be to require double (or multiple) insurance by suppliers and (apparently all) sub-contractors against liability arising from acts or omissions of any party including the respondents; it seems to me most unlikely that that can have been intended.

For these reasons the construction of Clause 23 goes, in my opinion, further than raising a doubt to be resolved against the respondents as the proferens under the second test, and leads to a positive conclusion adverse to them. That is enough for the decision of the appeal, but if it were necessary to go on to consider the third test I would hold that the head of damage under liability at common law for personal injury may be based on some ground other than the respondents' own negligence. The possibility of common law liability falling upon the respondents, as occupiers of the premises, through the fault of the suppliers' servants is in my opinion not fanciful or remote. Nor is the possibility of claims for nuisance or for breach of contract caused by defective work by the suppliers. No doubt the respondents would have a right of relief against the supplier in most if not all of these cases, but that is not a sufficient answer as they might well prefer to rely on the protection of an express right of indemnity rather than upon their right to raise an action of relief with all its inevitable hazards. See *North of Scotland Hydro-Electric Board* (*supra*) per Lord Justice-Clerk, and Lord Patrick.

The conclusion that I have reached is in harmony with several recent decisions both in Scotland and in England to which we were referred, particularly the *North of Scotland Hydro-Electric Board*, and *Gillespie Bros.*, both *cit supra*, and *Walters v. Whessoe Ltd. and Shell Refining Co. Ltd* . (unreported) but cited and followed in *A.M.F. International Ltd. v. Magnet Bowling Ltd. & Another* [1968] 1 W.L.R. 1028. We were supplied with a full transcript of the judgments in *Walters* and the decision seems to be unexceptionable, but there is a short passage in the opinion of Devlin L.J., (cited at [1968] 1 W.L.R. at 1057 H) which might be read as meaning that an indemnity against a breach of statutory duty by the proferens would in the absence of express provision apply only if it occurred "without negligence on his part." It is followed by this sentence:

"In none of these cases is there any negligence on his part and there is therefore no reason to presume an intention to exclude them from the indemnity."

I do not think that that can have been intended to mean that if the liability of the proferens is founded upon breach of statutory duty without any finding of negligence at common law against him he will lose his indemnity if the breach of statutory duty can be regarded as negligent. If it is intended to mean that, I would respectfully disagree. I do not consider that it can be relevant, for the purpose of ascertaining whether an indemnity applies or not, to enquire whether the breach of statutory duty involves negligence. A decision of my own in the Outer House in *McGlynn v. Robert Rome & Son Ltd* . 1968 S.L.T. (Notes) 16 was referred to by the Lord Justice-Clerk in his opinion in the present case. The decision turned entirely on the words of the particular clause and the circumstances of the case, and raised no question of general principle, but I think the statement near the end of the opinion that "there was no distinction for this purpose between claims for negligence at common law and claims arising out of breach of statutory duty" has to be read with reference to the clause then under consideration, and is not of general application. There are cases, of which *Murfin v. United Steel Companies Ltd* . [1957] 1 W.L.R. 104 is an example, where the terms of the indemnity clause clearly draw a distinction between statutory liability and negligence.

I would allow the appeal.

**LORD KEITH OF KINKEL** .—[His Lordship read the narrative quoted above and continued.] It was argued for the appellants before the Lord Ordinary and the Second Division that, since it was uncertain which of the three versions of the General Conditions of Contract would have been sent by the respondents to the appellants had the latter requested a copy, it had not been proved that any of the versions had in fact been incorporated into the contract. Reliance was placed upon the evidence of an employee of the respondents responsible for sending out the conditions. This witness stated that no supplier had ever asked for a copy of the conditions, and that he was unsure which version he could have sent if he had been asked. The Lord Ordinary and the Second Division both held that the original unrevised version of the conditions had been incorporated in the contract.

The Dean of Faculty, for the appellants, advanced the same argument to this House. In my opinion it is ill-founded. I consider that the contract was concluded by the appellants receiving the respondents' original Purchase Order dated 27th May 1970, coupled with their letter to the respondents dated 16th July 1970 saying that they had instructed the work to be carried out. It is true that at the same time they said they had been unable to trace the original order, but on a copy being sent to them they put the work in hand without demur. The Purchase Order referred to the respondents "General Conditions of Contract 24001 obtainable on request." It thus clearly indicated the manner in which the terms of these conditions could be ascertained, and that was sufficient in law, unconditional acceptance having followed, for their incorporation into the contract. A question however arises as to what in the circumstances is the meaning to be attributed to "General Conditions of Contract 24001, obtainable on request," it having emerged that the original terms of these conditions were revised by the respondents in January 1969 and again in March 1970. In my opinion the meaning reasonably to be attributed is that the conditions referred to are the current conditions, that is to say, the conditions as revised in March 1970. It is common experience that the general conditions of contract of various undertakers are revised from time to time, and anyone requesting a copy of such conditions would reasonably expect to receive the current up-to-date edition. Further, that is the edition which a responsible employee of the undertaker clearly ought to send to an inquirer. Viewing the matter objectively therefore, I am of opinion that the parties contracted on the basis of the respondents' General Conditions of Contract 24001 as revised in March 1970. I do not consider that the reference in the Purchase Order to "General Conditions of Contract 24001," without any mention of revision, precludes the relevant conditions from

being the latest revised version. All three versions in fact bore the number 24001. The situation does not differ from that which would exist had the reference simply been to "General Conditions of Contract" without any number. It would be unreasonable to suggest that wherever such conditions are revised the fact of revision must necessarily be indicated on any contractual reference to them. Any reference to conditions can only be understood, in the mind of an ordinary reasonable man, as a reference to the conditions currently in force. The circumstance that on 1st July 1970 the respondents sent to the appellants a Purchase Amendment Order having printed on the reverse a copy of the General Conditions as revised in January 1969 does not, in my view, affect the matter. This occurred at a time when both parties were erroneously attributing the number NQ492122 to contractual work which had been completed at the end of 1969, and engaged in fixing the price to be paid for that work. In that situation the January 1969 version of the General Conditions was quite rightly attributed to the particular work in question.

The second question in the appeal poses a much more difficult problem. It is whether Clause 23 of the General Conditions as revised in March 1970, upon a proper construction, requires the appellants to indemnify the respondents against the liability which they incurred to the pursuer by reason of their own negligence and breach of statutory duty. The matter is essentially one of ascertaining the intention of the contracting parties from the language they have used, considered in the light of surrounding circumstances which must be taken to have been within their knowledge. Certain guidelines of assistance in approaching this task where an exemption clause or a clause of indemnity is under consideration were, however, laid down in the Privy Council case of *Canada Steamship Lines Ltd. v. The King* [1952] AC 192. Lord Morton of Henryton, delivering the advice of the Board, expressed these as follows (at p. 208):—

> "(1) If the clause contains language which expressly exempts the person in whose favour it is made (hereafter called the 'proferens') from the consequence of the negligence of his own servants, effect must be given to that provision. … (2) If there is no express reference to negligence, the court must consider whether the words are wide enough, in their ordinary meaning, to cover negligence on the part of the servants of the proferens. If a doubt arises at this point, it must be resolved against the proferens. … (3) If the words are wide enough for the above purpose, the court must then consider whether 'the head of damage may be based on some ground other than that of negligence' … The 'other ground' must not be so fanciful or remote that the proferens cannot be supposed to have desired protection against it; but subject to this qualification … the existence of a possible head of damage other than that of negligence is fatal to the proferens even if the words used are *prima facie* wide enough to cover negligence on the part of his servants."

In *North of Scotland Hydro-Electric Board v. D. & R. Taylor* 1956 SC 1 the Second Division accepted that these principles applied in the law of Scotland. It is to be stressed that they do not represent rules of law, but simply particular applications of wider general principles of construction, the rule that express language must receive due effect and the rule *omnia praesumuntur contra proferentem*. While they apply to the construction both of a clause bearing to exempt from certain liabilities a party who has undertaken to carry out contractual work and of a clause whereby such a party has agreed to indemnify the other party against liabilities which would ordinarily fall upon him, they apply *afortiori* in the latter case, since it represents a less usual and more extreme situation.

In the contract under consideration the clause in question is an indemnity clause. In terms of its preamble, it is to apply only where the order involves the carrying out of work by the supplier and its sub-contractors on land or premises of the purchasers. This suggests that it is to be concerned with matters connected with acts of the supplier or its sub-contractors in the course of carrying out the work. Under paragraph (*a*) "all losses

and costs incurred by reason of the suppliers' breach of any statute, bye-law or regulation" are made the subject of indemnity by the supplier. It is here contemplated that such a breach by the supplier might involve the purchaser in losses or costs on the basis, it is to be inferred, of strict legal responsibility. There is no question here of the supplier indemnifying the purchaser against anything for which the supplier is not personally responsible. As regards paragraph (*b*), its language is of the widest possible import down to the point where there occur the words "arising out of or in the course of or caused by the execution of this order." In my view these words are naturally to be read as qualifying "any liability, loss, or proceedings whatsoever," and thus they impose a limit on the width of what has gone before. The words "out of or in the course of" go together with "arising." What then, is the extent of the limit so set? In my opinion the words "execution of this order" means "the doing by the suppliers of the contractual work." In so far as a liability on the purchaser may arise out of the doing by the suppliers of the contractual work, that must clearly, in my view, be a liability resulting from some act or omission on the part of the suppliers. It is not so clear what might constitute a liability "arising in the course of" the doing by the suppliers of the contractual work. It was accepted by Mr Cullen, for the respondents, that the significance of "in the course of" could not reasonably be purely temporal, otherwise the suppliers would have to indemnify the purchasers against some negligent act of the latter done in a part of the factory where no contractual work was going on, or even in some other factory. He submitted that "in the course of" meant "connected with." Accepting that as sound, I am of opinion that a liability incurred by the purchasers by reason of a breach by them of their common law duty of care towards a servant of the suppliers who is in the factory for the purpose of the contractual work is not, in a sufficiently proximate sense, connected with the doing by the suppliers of the contractual work. Any connection between the liability and the doing of the contractual work is purely fortuitous, resting merely on the circumstance that the doing of the contractual work led to the presence in the factory of the suppliers' servant and thus exposed him to the possibility of injury through the purchasers' negligence.

I conclude that the limit set by the concluding words of paragraph (b) is such that the negligence of the purchasers is not expressly made the subject of indemnity by the suppliers, and further that the words used are not wide enough, in their ordinary meaning, to cover such negligence. If I were wrong as regards the latter aspect, I should be of the opinion that the indemnity stipulated for is intended to apply, not to liabilities arising from the purchasers' own negligence, but to liabilities incurred by them by reason of acts or omissions on the suppliers' part in the course of carrying out the contractual work. There is no difficulty in envisaging situations where something done or left undone by the suppliers might result in the purchasers incurring liabilities at common law either as occupiers of the factory or as employers, or for breaches of the Factories Acts or the Electricity Acts. In my opinion the possibility of such situations must be taken to have been in the contemplation of parties and not only provides ample content for the clause but casts considerable light on the intention to be gathered from the language used.

It was argued for the respondents that the indemnity clause was unnecessary for the purpose of protecting the purchasers against claims arising through acts or omissions of the suppliers, since in relation to such claims the purchasers would have available to them an action of relief against the supplier. A similar argument was advanced in *North of Scotland Hydro-Electric Board v. D. & R. Taylor* (supra), but it was rejected. Lord Justice-Clerk Thomson said at p. 8:

> "The second answer was that the protection was unnecessary, as the Board would have an action of relief. Again that is true enough, but there is no reason why the Board should not seek to cover themselves directly and avoid the pitfalls of such a form of action."

Lord Patrick said, at p. 10:

"Moreover I do not think it is a good answer for the employers to say that they should not be assumed to have protected themselves *per expressum* in the contract against events in which the law would have afforded them relief without expression. Nothing is more common in protective clauses of all kinds than to find protection expressly provided for where the law would have afforded protection without expression."

I respectfully agree, and am of opinion that the argument fails in the present case for the same reason.

I have to add that I have found the final part of Clause 23, dealing with the suppliers' obligation to insure and cause all sub-contractors to insure "against their liability hereunder" extremely difficult of construction. In particular it is very uncertain whether "their liability hereunder" refers to liability under the indemnity clause or general liability that may be incurred by reason of the contract. Considering that the suppliers are not taken bound to require sub-contractors to grant an indemnity, there are difficulties in attributing the former meaning to the words. But in my opinion this part of the clause is not in any event significant for the purpose of ascertaining the extent of indemnity obligation, and it is therefore unnecessary to resolve the problems which it presents.

Your Lordships were referred to a decision in 1960 of the Court of Appeal in *Walters v. Whessoe Ltd. and Others* . This is incompletely reported in [1968] 1 W.L.R. 1028, but transcripts of the judgments were made available. A contractual indemnity clause in terms very similar to that under consideration in the present case was there held to afford no relief to the party founding upon it. While every such clause is to be construed upon its own terms in the light of the circumstances of the particular case, I consider that the decision is helpful as indicating the proper approach in principle to this question of construction. Sellers L.J. said in the course of his judgment:

> "It is well established that indemnity will not lie in respect of loss due to a person's own negligence or that of his servants unless adequate and clear words are used or unless the indemnity would have no reasonable meaning or application unless so applied."

Devlin L.J. said:

> "It is now well established that if a person obtains an indemnity against the consequences of certain acts, the indemnity is not to be so construed as to include the consequences of his own negligence unless those consequences are covered either expressly or by necessary implication."

In the present case I have come to the conclusion, for the reasons which I have indicated, that the indemnity clause relied on by the respondents does not cover, either expressly or by necessary implication, the consequences of their own negligence or that of their servants.

My Lords, I would allow the appeal.

[1978] SC(HL) 1

The permission for BAILII to publish the text of this judgment was granted by Scottish Council of Law Reporting and the electronic version of the text was provided by Justis Publishing Ltd. Their assistance is gratefully acknowledged.

URL: *http://www.bailii.org/uk/cases/UKHL/1977/1978_SC_HL_1.html*