

Neil S. Binder
Binder & Schwartz LLP
366 Madison Avenue  6th Floor
New York, NY 10017

(T) 212.510.7031
(F) 212.510.7299
nbinder@binderschwartz.com

June 1, 2020

**By ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

      We write on behalf of ED&F Man Capital Markets, Ltd. ("ED&F") to request the Court's assistance in requiring Skatteforvaltningen ("SKAT") to search for and produce documents responsive to ED&F's First Requests for Production of Documents (the "RFPs").[1]  As set forth below, SKAT has refused to search for documents requested by ED&F and advises that it will instead produce a set of documents previously provided by SKAT and/or the Danish Ministry of Taxation to the Bech-Bruun law firm as part of an inquiry by the Danish Parliament into SKAT's operations (the "Bech-Bruun Documents").[2]  However, SKAT has provided no sound basis for its apparent presumption that the Bech-Bruun Documents contain all of the relevant documents sought by the RFPs.  Notwithstanding repeated inquiries, SKAT has failed to explain how the Bech-Bruun Documents were compiled—including which documents were sought, whose files were searched, or what kinds of searches were conducted—and instead insists that ED&F seek the answers to such questions in the Bech-Bruun Documents themselves.  Moreover, SKAT has advised us—based on a determination by the Danish Attorney Disciplinary Board that Bech-Bruun had a conflict of interest—that Bech-Bruun's investigation was "not sufficiently independent or impartial" and, therefore, that the Bech-Bruun Report has "no evidentiary value."  Thus, SKAT itself does not regard Bech-Bruun's work as reliable, raising further questions about the thoroughness of Bech-Bruun's efforts to obtain documents from SKAT.

      In addition, SKAT has taken the untenable position that significant categories of responsive documents in its custody or control are irrelevant to the third-party claims against ED&F and thus need not be searched for or produced, notwithstanding that documents relevant to SKAT's allegations against the third-party claimants are necessarily also relevant to ED&F's defenses in the third-party actions.

**Background**

      ED&F was brought into this action when several pension fund defendants, all ED&F clients, filed various third-party claims against ED&F, asserting causes of action ranging from

---

[1] The parties have exchanged numerous letters and have met-and-conferred on several occasions (including on April 27, May 5, and May 12) but have been unable to resolve the issues set out in this letter.

[2] A copy of SKAT's Responses & Objections to the RFPs is attached hereto as Exhibit A.



securities fraud, to negligence, to breach of fiduciary duty, to common-law indemnification. The thrust of the third-party complaints is the contention that in the event that the pension fund defendants are found liable in this action, they are entitled to have their losses paid by ED&F in connection with its alleged role in the transactions at issue.[3]

As one group of defendants/third-party plaintiffs has alleged,

Third-Party Plaintiffs firmly believe the Plans are entitled to the withholding-tax refunds they claimed from SKAT and that SKAT now wants returned in its actions against Third-Party Plaintiffs. If, however, SKAT's allegations against Third-Party Plaintiffs are proven to be true or if SKAT is otherwise entitled to a return of the tax refunds from Third-Party Plaintiffs, then ED&F—not Third-Party Plaintiffs—should be responsible . . . .

*See* Amended Third-Party Complaint of DW Constr. *et al.*, ECF No. 226 at 3.

**ED&F's RFPs**

As part of its defense to these claims, ED&F seeks discovery to support its position that (i) the defendant/third-party pension funds owe no liability to SKAT, and (ii) even if the defendant/third-party pension funds are found liable to SKAT, ED&F has no liability to any of the defendant/third-party pension funds.

To that end, ED&F has served narrowly tailored requests seeking specific documents relevant to the core allegations made by SKAT against ED&F's clients.[4] Specifically, ED&F seeks documents pertaining to (1) whether ED&F's clients were required to and/or did hold beneficial interests in Danish stock at the time dividends were paid, *under SKAT's understanding of that requirement*; (2) SKAT's understanding of the facts supporting the withholding tax ("WHT") refund applications submitted by ED&F's clients; (3) SKAT's criteria for valid WHT refund applications and the guidance, if any, provided by SKAT to its employees regarding the evaluation of WHT refund applications; and (4) any systematic problems identified by SKAT related to the evaluation of WHT refund applications and any remedial measures proposed and/or implemented to correct such problems. Of the twenty-four requests served by ED&F, at least six seek the production of a single, specific document, and more than half seek at most a handful of documents. Only one seeks "all documents or communications" concerning a particular subject, and that request pertains narrowly to early warning whistleblower reports.

**SKAT's Response**

SKAT has refused to undertake any meaningful search in response to the RFPs. Instead, SKAT has proposed to provide documents already produced in other matters. Specifically, SKAT has directed ED&F to (i) millions of pages of documents produced to other parties that

---

[3] We note that ED&F is being sued as a "Non-Fraud Defendant" in a multi-defendant action in England seeking to reclaim WHT refunds allegedly paid to U.S. and Canadian pension funds that were ED&F's clients. SKAT is suing many of these same pension funds over the same WHT refunds in this action.

[4] *See, e.g.*, Amended Complaint, *SKAT v. The Goldstein Law Group PC 401(k) Profit Sharing Plan*, No. 18 Civ. 5053 (LAK), ECF No. 1, ¶¶ 3-4, 9(c), 40.

2



are not in any way relevant to claims concerning ED&F, and (ii) the Bech-Bruun Documents, which we understand comprise approximately 110,000 pages of predominantly Danish-language documents collected as part of a review of SKAT commissioned by the Danish government.

In response to seventeen of ED&F's twenty-four RFPs (Requests 1-5, 7-12, 14, 16, and 18-21), SKAT indicated that it would do nothing beyond producing the Bech-Bruun Documents, and in response to five of the RFPs (Requests 6, 15, and 22-24), SKAT indicated that it would produce no documents at all.[5]  While we expect that the Bech-Bruun Documents will include some responsive documents, SKAT has provided no basis for concluding that the Bech-Bruun Documents include all (or even most) of the responsive documents that ED&F seeks.[6]  Indeed, in response to specific questions raised at the meet-and-confer sessions, SKAT was either unable or unwilling to identify (i) the specific requests for documents made by Bech-Bruun, (ii) the custodians whose files were searched, or (iii) the search terms (if any) used for such searches.

Based on these meet-and-confer discussions, we can only conclude that SKAT has no meaningful information regarding how the Bech-Bruun Documents were collected, including whose custodial files were searched, which date ranges were applied, or what search terms were used.  SKAT has sought to deflect all such questions by suggesting in vague terms that the Bech-Bruun Documents will themselves include correspondence, presumably in Danish, reflecting at least some of Bech-Bruun's requests for information, as well as a handful of predecessor reports, also presumably in Danish, purportedly describing the "documents on which [those reports were] based and how those documents were collected."  SKAT contends that it is up to ED&F to assess the completeness of SKAT's production by poring through tens of thousands of pages of Danish-language documents in order to determine how the documents were collected, which of the documents may be responsive, and which responsive documents may have been left out.  But "[i]t is well-settled that a producing party cannot unilaterally shift the burden and expense of complying with its discovery obligations to its opponent by 'simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought.'" *Joint Stock Co. Channel One Rus. Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2019 WL 4727537, at *23 (S.D.N.Y. Sept. 26, 2019) (quoting 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2213, at 189-90 (3d ed. 2010) and collecting cases).  That is particularly true here, for the documents that SKAT proposes to produce are likely to include a vast number of non-responsive records, are likely to exclude responsive documents, and are also overwhelmingly—if not entirely—in a language other than English.

In fact, it is our understanding that SKAT has taken no steps at all to determine whether the Bech-Bruun Documents contain *any* records responsive to twelve of ED&F's twenty-four requests, the majority of which seek either single documents or narrow categories of documents.

---

[5] SKAT indicated that it "believe[d]" the Bech-Bruun Documents would include specifically responsive documents in response to only two of the RFPs (Request Nos. 8 and 12).

[6] Since serving its Responses and Objections, SKAT has advised us that it searched the Bech-Bruun Documents for records responsive to Requests 9, 11, and 16 and found none.  That the Bech-Bruun Documents contain no documents responsive to these requests underscores the inadequacy of SKAT's responses.  SKAT has advised us that Request 11 seeks records of a Sunday meeting (on November 20, 2011) and suggests that the date may be in error.  We are working to determine whether the date may be incorrect.



Request 4, for example, seeks the production of the terms of reference provided to Regnskab 2—SKAT's accounting arm—regarding the processing of WHT applications, a request which could be satisfied by the production of a single document. Similarly, Request 7 seeks documents "evidencing Peter Loft's instruction to SIR to conduct a review of the WHT application system in or around October 21, 2009 which led to the production of the 2010 SIR report." This request seeks at most a handful of documents regarding a specific subject matter. It is a basic tenet of discovery that documents sought by requests such as these should be searched for among the documents in SKAT's possession, custody or control. Blind reliance on a pre-existing document set cannot satisfy a party's discovery obligations.

Finally, SKAT's largely boilerplate objections to the five RFPs for which it has refused to produce any documents are unfounded. *See Metro Found. Contractors, Inc. v. Arch Ins. Co.*, No. 09 Civ. 6796(JGK), 2011 WL 70561, at *2 (S.D.N.Y. Jan. 6, 2011) (sanctioning plaintiff for failing to produce documents in response to request of third-party defendants). SKAT's suggestion that these requests are irrelevant to ED&F's claims or defenses is without merit, for given that ED&F is subject to claims for equitable indemnification by several third-party plaintiffs seeking to "shift[] liability" to ED&F—*see LNC Inv., Inc. v. First Fidelity Bank, N.A.*, 935 F. Supp. 1333, 1352 (S.D.N.Y. 1996)—documents regarding the existence of any such liability, or of any potential defenses to such liability, are relevant to ED&F's defense. Moreover, even without reference to SKAT's claims against the third-party plaintiffs, ED&F's alleged liability to the third-party plaintiffs will depend in large part on whether, in the controlling agency's view, the transactions at issue would have given rise to valid WHT refund applications. Thus, ED&F's requests for documents regarding this key question—including documents regarding SKAT's internal procedures for processing WHT refund applications—are necessarily relevant to ED&F's defense.[7]

For all of these reasons, we respectfully request that SKAT be compelled to search for and produce responsive documents in its possession, custody and control, and that its objections to ED&F's discovery requests be overruled.

Respectfully submitted,

Neil S. Binder

---

[7] Similarly, SKAT's position that any document searches should be confined to a three-and-a-half-year timespan (January 1, 2012 to June 15, 2015) is without basis. Even assuming that all of the WHT refund applications at issue were submitted within that timeframe, there is no reason to suppose that all relevant documents reflecting SKAT's policies, practices and procedures with respect to the WHT refund applications were created within that timeframe.