

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

June 3, 2020

BY ECF

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re:  *In re Customs and Tax Administration of the Kingdom of Denmark*
       *(Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

   We write on behalf of Plaintiff Skatteforvaltningen ("SKAT") to oppose ED&F Man
Capital Markets, Ltd. ("EDF")'s motion to compel.[1]

   ED&F's motion should be denied because SKAT has searched for and is producing non-
privileged responsive documents, and has agreed to consider any specific follow up request that
ED&F might make.  ED&F's motion asks the Court to compel SKAT to repeat its search for
documents based on nothing more than the speculative hope that perhaps new information will
turn up the second time around.

   ED&F's requests seek 24 categories of documents based on a December 2017, 613-page
publicly available Report by the Danish law firm Bech-Bruun.  That Report was the culmination
of an exhaustive investigation the Danish Parliament commissioned into SKAT's administration
of dividend withholding tax refunds.  In the course of Parliament's investigation, SKAT and
Denmark's Ministry of Taxation collected and produced over 18,000 documents, comprising
over 110,000 pages.  ED&F's requests ask for specific documents and for documents concerning
specific meetings, events or topics discussed in the Report.  Thus, SKAT is producing this
existing dataset compiled for the law firm that produced the Report into the very issues on which
ED&F seeks discovery, which will provide an extensive set of responsive documents.

   ED&F argues that SKAT's previous search for documents was no search at all, or at least
not a "meaningful" one (Mot. 1, 2), but fails to identify any deficiency.  Indeed, ED&F cut short
the parties' meet-and-confer process and filed its motion arguing it has no information about

---

1. Letter Motion to Compel SKAT to Produce Documents addressed to Judge Lewis A. Kaplan from Neil S.
  Binder, *In re SKAT* (No. 18-md-02865), ECF No. 351.

SKAT's search before bothering to review the information included in SKAT's production describing the documents that SKAT and the Ministry collected.  Further, ED&F argues that SKAT's production of these documents is a "document dump" because the documents are mainly "in a language other than English" (Mot. 3), but ED&F should not be surprised that internal Danish government documents are in Danish.

## Background

In September 2019, ED&F admitted in an amended pleading in England that it issued 89 "tax vouchers" falsely representing that defendants in 31 of SKAT's actions in this MDL owned Danish shares and suffered 184,214,519 Danish Kroner in withholding tax.[2]  Based in part on this admission, the defendants in 11 of SKAT's actions filed, or amended previously filed, third-party complaints against ED&F.

## ED&F's document requests and SKAT's response

On March 23, 2020, ED&F served its requests on SKAT seeking 24 categories of documents.  In a detailed May 26, 2020 letter responding to ED&F's inquiries, SKAT explained to ED&F that its requests "seek information and documents that were the subject of an exhaustive investigation resulting in the report issued following an inquiry by the Danish law firm Bech-Bruun on behalf of the Danish Parliament on December 15, 2017."  (Ex. 1 at 3.)[3]  As SKAT further explained, during the course of this inquiry, SKAT and the Ministry of Taxation collected and produced more than 18,000 documents, comprising 110,000 pages, which included documents used to create four previous reports on SKAT's administration of dividend withholding tax refunds,[4] and additional documents in response to approximately 20 follow up requests.  (*Id.* at 3-4.)[5]

Because 22 of ED&F's 24 requests "seek information that is covered extensively by" the documents SKAT collected during the course of Parliament's inquiry, SKAT explained that it would produce these documents in response to ED&F's requests and that "[a]t a minimum, ED&F should review" them and that SKAT would then consider any "specific, targeted" follow up requests.  (*Id.* at 1, 4.)  Instead, ED&F cancelled the meet-and-confer the parties scheduled for

---

2.  *See* Letter Addressed to Judge Lewis A. Kaplan from Brian S. Fraser, Ex. A ¶ 4.2, *In re SKAT* (No. 18-md-02865), ECF No. 202.

3.  In early 2017, the Danish Parliament initiated an inquiry of (i) the organization of SKAT's handling of dividend withholding tax refunds from 2010 to 2015, including SKAT's control measures; (ii) the legislative, managerial, systems and financial circumstances surrounding SKAT's administration of dividend withholding tax refunds; and (iii) whether and how SKAT's administration of dividend withholding tax refunds and related factors had an impact on the risk of fraud in relation to dividend withholding tax refund payments.  (*Id.*)

4.  These materials included (i) documents identified by keyword searches of the Ministry of Taxation's files; (ii) audit reports; (iii) Ministry of Taxation monthly revenue lists; (iv) SKAT's monthly accounting approvals; (v) minutes and recommendations on SKAT and the Ministry of Taxation's follow up on internal audit reports; (vi) performance pay contracts for SKAT's executive board; (vii) material prepared by SKAT and the Ministry in response to requests from Rigsrevisionen, the Danish national audit agency; and (viii) emails from three SKAT employees.  (*Id.* at 4.)

5.  This additional material included (i) employment-related information for specific employees; (ii) descriptions of tasks and job responsibilities; (iii) organizational charts; (iv) handbooks; (v) records of administrative procedures; and (vi) descriptions of overall account management procedures.  (*Id.*)

the next day, citing an unexplained "impasse," and filed this motion.  (Ex. 2.)

**SKAT conducted a reasonable search for documents responsive to ED&F's requests.**

ED&F's argument that "SKAT has refused to undertake any meaningful search in response to" its requests is untrue.  (Mot. 2)  It ignores the over 18,000 documents SKAT collected during the course of Parliament's inquiry into the same topics covered by ED&F's requests, over 12,500 of which it already has produced.  SKAT's search is more than reasonable and certainly "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).[6]

Further, ED&F's motion fails to provide any reason why SKAT's search was inadequate. *Cf. In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-1570 (GBD) (SN), 2018 WL 4062638, at *2 (S.D.N.Y. Aug. 27, 2018) ("When counsel represent that they have conducted a reasonable search and have not uncovered all requested documents, it is up to the requesting party to show that the search was inadequate." (internal quotation omitted).)  ED&F's "mere speculation" that "there ha[s] to be more" documents "does not constitute grounds for granting [its] motion to compel."  *Id.* (internal quotation omitted).

First, ED&F argues that "SKAT has provided no basis for concluding that the Bech-Bruun Documents include all (or even most) of the responsive documents that ED&F seeks" because "SKAT has no meaningful information regarding how" the documents "were collected." (Mot. 3.)  In fact, the Bech-Bruun Report and the previous reports referenced therein describe the information the reports are based on and how it was collected, and SKAT is producing the firm's correspondence with SKAT and the Ministry concerning its follow-up requests for more information.  (Ex. 1 at 4.)  Nor will ED&F need to "por[e] through tens of thousands of pages of Danish-language documents in order to determine how the documents were collected."  (Mot. 3.) As it offered to do before ED&F cut short the parties' meet and confer process (*see* Ex. 1 at 4), SKAT can point ED&F to the bates-ranges in its production that contain these explanations.[7]

Second, SKAT is not "simply dumping large quantities of unrequested materials" on ED&F.  (Mot. 3 (quoting *Joint Stock Co. Channel One Rus. Worldwide v. Infomir LLC*, No. 16 Civ. 1313, 2019 WL 4727537, at *23 (S.D.N.Y. Sept. 26, 2019)).)  SKAT is producing the documents underlying the specific Report on which ED&F based its requests.  Of course, the documents are "overwhelmingly—if not entirely—in a language other than English," *i.e.*,

---

6.  ED&F argues that its requests seek documents concerning "(1) whether ED&F's clients were required to and/or did hold beneficial interests in Danish stock at the time dividends were paid, *under SKAT's understanding of that requirement*; (2) SKAT's understanding of the facts supporting the withholding tax ('WHT') refund applications submitted by ED&F's clients; (3) SKAT's criteria for valid WHT refund applications and guidance, if any, provided by SKAT to its employees regarding the evaluation of WHT refund applications; and (4) any systematic problems identified by SKAT related to the evaluation of WHT refund applications and any remedial measures proposed and/or implemented to correct such problems."  (Mot. 2.)  ED&F's requests do not actually request documents concerning the first two topics.  The third and fourth topics, which are actually the subject of its 24 requests, are covered extensively in the 18,000 documents underlying the Report that SKAT is producing.

7.  ED&F also argues that the fact that Bech-Bruun had a conflict of interest raises "further questions about the thoroughness of [its] efforts to obtain documents from SKAT."  (Mot. 1.)  But ED&F fails to explain how that firm's prior representation of certain defendants in the English proceedings affected in any way SKAT and the Ministry's collection of documents.  (Ex. 1 at 3 n.1.)

Danish, because ED&F requested internal documents created by SKAT and the Danish Ministry of Taxation.  (Mot. 3.)

Third, ED&F's purported "understanding that SKAT has taken no steps at all to determine whether the Bech-Bruun Documents contain *any* records responsive to twelve of" its requests is an egregious misrepresentation.  (Mot. 3.)  SKAT informed ED&F that 22 of its requests, including the 12 that ED&F references in its motion, "seek information that is covered extensively" in the documents.  (Ex. 1 at 4.)  This representation was based on SKAT's review of the documents themselves, not "[b]lind reliance on a pre-existing document set."  (Mot. 4.)  The two examples ED&F provides illustrate SKAT's point.  For instance, request number 4 seeks "[d]ocuments evidencing the terms of reference for Regnskab 2 [SKAT's accounting division] in relation to the handling of WHT applications."  SKAT does not know what specific "terms of reference" ED&F is referring to, so objected to this request as vague and ambiguous, but the documents SKAT intends to produce cover extensively the involvement of SKAT's accounting division in the refund applications.  Similarly, request number 7 seeks "[d]ocuments evidencing Peter Loft's instruction to SIR [SKAT's internal audit division] to conduct a review of the WHT application system in or around October 21, 2009 which led to the production of the 2010 SIR report."  The documents SKAT is producing contain memoranda and other documents submitted to Peter Loft, the final SIR report, and documents evidencing the actions SKAT took in response to that report.

Finally, the fact that SKAT was unable to find the specific documents ED&F seeks in request numbers 9, 11 and 16 "underscores" that ED&F's motion lacks any basis.  (Mot. 3 n.6.)  SKAT told ED&F over a month ago that it was unable to locate these documents—based on a search of all the documents SKAT collected for this litigation—because it believes the requests contain incorrect identifying information and requested that ED&F clarify the requests.  (Ex. 1 at 4-5.)  For instance, request number 11 seeks "minutes of meeting between Regnskab 2 and SIR on November 20, 2011."  SKAT has no record of any such meeting—on a Sunday—and so advised ED&F during an April 27 meet-and-confer.  Yet, a month later, while ED&F is still "working to determine whether the date may be incorrect," it nevertheless asks the Court to compel production of minutes for a meeting that likely never occurred.  (Mot. 3 n.6.)[8]

For the reasons set forth above, SKAT respectfully requests that the Court deny ED&F's motion and enter such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

Cc:  All counsel of record (via ECF)

---

8.  ED&F's argument that SKAT has imposed an unduly restrictive timeframe for its production is a red herring.  (Mot. 4 n.7.)  SKAT is producing all non-privileged documents provided in response to the Danish Parliament's inquiry regardless of the date the document was created.  (Ex. 1 at 4 n.4.)  This includes documents dated at least as far back as 2005, or seven years before the events at issue in this litigation.