# Exhibit 1



Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

May 26, 2020

BY EMAIL

Neil S. Binder
Binder & Schwartz LLP
366 Madison Avenue, 6th Floor
New York, NY 10017

    Re:     In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation, 18-md-2865 (LAK)

Dear Neil:

    I write on behalf of Plaintiff Skatteforvaltningen ("SKAT") in response to your letters dated April 29 and May 19, 2020 concerning purported deficiencies in SKAT's responses to ED&F Man Capital Markets, Ltd.'s ("ED&F") First Requests for Production of Documents ("ED&F's Requests") in the above-captioned litigation.

    First, we disagree with your characterization of SKAT's responses and objections and our subsequent meet-and-confer calls. As we have explained to you, and describe more fully below, the Report Documents (defined below) contain materials that are responsive to all but two of ED&F's Requests. At the same time ED&F is failing to make any meaningful production, it is demanding that SKAT conduct a multi-decade search to confirm whether any additional documents might possibly exist that would potentially be responsive to ED&F's extraordinarily broad requests—this is not what the Federal Rules of Civil Procedure require, and it is not reasonable or proportional. No other defendant has demanded such an effort by SKAT. An existing data set, compiled for the law firm that conducted an inquiry for the Danish Parliament into the very issues that ED&F seeks discovery on, will provide a more than adequate set of responsive documents. At a minimum, ED&F should review these documents and if they have specific, targeted requests that are justified, we will consider them.

    Your demand for granular information about specific searches and demand for production by a certain date is deeply ironic given ED&F's own responses to SKAT's First Requests for Production of Documents ("SKAT's Requests"), in which ED&F failed to make any substantive response. SKAT is required to conduct searches for relevant documents only to the extent that they are proportional to the needs of the case. As you know, SKAT objected to ED&F's Requests on a number of grounds,

including that they are overly broad and disproportionate to the needs of the case (*e.g.*, dating back to 2000), seek the production of irrelevant documents (*e.g.*, SKAT's reorganization in 2018), and seek specific documents which do not appear to exist (*e.g.*, asking for documents relating to a meeting that took place on a Sunday, which we do not have reason to believe occurred). SKAT will not search for, review, or produce documents that are irrelevant to the third-party claims against ED&F or its defenses. As a third-party defendant that purported to act as a custodian for the shares the U.S. defendants claimed to own, records of ED&F's own holdings in Danish securities are directly relevant to SKAT's claims against the 31 U.S. pension plan defendants in this litigation. By contrast, ED&F is a party to just eleven of the 184 cases in this consolidated MDL. Furthermore, ED&F has already admitted that 67% of the amount of dividend withholding tax ("DWT") claimed on tax vouchers it issued to the third party complainant U.S. pension plans was based on its own false representations.

**SKAT's Productions to Date**

In addition to its forthcoming production of the Report Documents, SKAT has produced many millions of documents, including approximately 13,000 documents from SKAT's case files on each of the U.S. pension plan defendants, claims review guidelines describing the process followed by the employees who received and processed applications for DWT refunds, extracts of SKAT's accounting systems showing payments to the U.S. pension plan defendants, the emails received from the whistleblower mentioned in the complaints, custodial emails from SKAT employees, and, per the defendants' request, four publicly-available reports on its administration of DWT refunds. We are continuing to review the custodial files of SKAT employees and will produce relevant documents in the period January 1, 2012 to June 15, 2015, to the extent they are not subject to SKAT's objections to ED&F's Requests. As noted during our meet and confer calls, SKAT is preparing to produce more than 20,000 additional documents from SKAT's own files (including the Report Documents) along with additional documents from North Channel Bank. SKAT intends to substantially complete its productions by the end of May 2020, and we invite ED&F to do the same.

SKAT has also been collecting and producing documents from third parties in the U.S. and abroad that were involved in and facilitated the fraud, all of which it has produced to the defendants. SKAT has produced almost 132,000 documents acquired from the broker Novus Capital Markets Limited, an English broker that facilitated the purported trades underlying the U.S. Pension Plan Defendants' claimed acquisition of Danish shares; North Channel Bank GmbH & Co. KG ("North Channel Bank"), a German bank that served as alleged custodian of Danish shares for U.S. pension plans that submitted fraudulent refunds to SKAT; Vcorp, which incorporated certain of the U.S. pension plan defendants' sponsoring entities; and Maple Point LLC, which possessed documents and information about some of the U.S. pension plan defendants' trading and DWT refund applications to SKAT. SKAT has also produced approximately 8.3 million documents obtained in SKAT's action pending before the Dubai International Financial Centre Courts against Elysium Global (Dubai) Limited and Elysium Properties Limited.

**Report Documents**

ED&F's Requests seek information and documents that were the subject of an exhaustive investigation resulting in the report issued following an inquiry by the Danish law firm Bech-Bruun on behalf of the Danish Parliament on December 15, 2017 (the "December 2017 Report" or "Report").[1]  Indeed, while ED&F's Requests pre-date your involvement in the case, they were clearly written by someone who had read the report because, as we note below, several of the Requests seek specific documents identified in the Report.[2]

Rather than re-inventing the wheel, producing non-privileged materials underlying the December 2017 Report is the most reasonable, proportional response to the majority of the ED&F Requests, given the broad scope of the inquiry and its underlying materials, and that the Report directly addresses the subject of ED&F's Requests.

In early 2017, the Danish Parliament initiated an inquiry of the following areas:[3]

- the organization of SKAT's handling of DWT refunds from 2010 to 2015, including SKAT's control measures;

- the legislative, managerial, systems and financial circumstances surrounding SKAT's administration of DWT refunds; and

- whether and how SKAT's administration of DWT refunds and related factors had an impact on the risk of fraud in relation to DWT refund payments.

The Danish Parliament appointed the law firm Bech-Bruun (the "Report's Authors") to conduct the inquiry, and as part of that inquiry SKAT and the Ministry of Taxation provided more than 110,000 pages of documents (the "Report Documents").  The inquiry

---

1. https://www.skm.dk/media/1566675/advokatundersoegelse-af-forholdene-vedroerende-skats-udbetaling-af-refusion-af-udbytteskat.pdf, also produced as SKAT_MDL_001_0075162.  Subsequent to the publication of the December 2017 Report, it was discovered that Bech-Bruun had provided legal advice to some of the parties involved in the fraud committed against SKAT.  As determined by the Danish Advokatnævnet, or Attorney Disciplinary Board, Bech-Bruun operated under a conflict of interest when it undertook the assignment and issued the December 2017 Report.  It is SKAT's position that, as a result of the conflict, the investigation was not sufficiently independent or impartial, and the Report has no evidentiary value.  The conflict does not alter the comprehensive process undertaken by SKAT and the Ministry of Taxation to collect the relevant documents and information related to the issues addressed in the December 2017 Report or the documents underlying the four prior reports.

2. As we noted during our May 12, 2020 meet-and-confer, we have not obtained manual translations of the December 2017 Report, but of course have consulted with Danish-speaking colleagues.

3. The complete terms of reference for the inquiry are included in Chapter 1 of the December 2017 Report.

was "based on a review of all relevant material in the Ministry of Taxation and SKAT" concerning the period from 2010 to 2015.[4] (December 2017 Report, 26.) SKAT and the Ministry of Taxation provided the Report's Authors with documents used to create four prior reports on SKAT's administration of DWT refunds. (December 2017 Report, 25.) These materials are described in each of the reports, but include: (1) documents identified through keyword searches of the Ministry of Taxation's files covering DWT refund cases from mid-2007 to 2015, described more fully in the appendices to the Sept. 24, 2015 Internal Audit report; (2) audit reports; (3) Ministry of Taxation monthly revenue lists; (4) SKAT's monthly accounting approvals; (5) minutes and recommendations on SKAT and the Ministry of Taxation's follow up on internal audit reports; (6) performance pay contracts for SKAT's executive board; (7) material prepared by SKAT and the Ministry in response to requests from Rigsrevisionen; (8) emails from three SKAT employees[5]; and other materials. The Ministry also provided press releases and related material.

The Report's Authors also made approximately 20 follow up requests for information to SKAT and the Ministry of Taxation to obtain additional material, all of which were met in full. These requests covered employment-related information for specific employees, descriptions of tasks and job responsibilities, organizational charts, handbooks, records of administrative procedures, and descriptions of overall account management procedures. These documents, and correspondence between the Report's Authors and the Ministry of Taxation and SKAT, are included in the Report Documents. As per your request during our May 12 meet and confer, SKAT will identify the Bates numbers of such correspondence.

The gravamen of your April 29, 2020 letter is that SKAT must conduct a series of searches that will be duplicative of the efforts that SKAT and the Ministry of Taxation took in connection with the December 2017 Report. Your position is inconsistent with SKAT's obligations under the Federal Rules of Civil Procedure. The Report Documents contain information responsive to all but two of ED&F's Requests. Those two Requests (Requests 15 and 22) call for the production of irrelevant or otherwise objectionable documents and SKAT will not produce documents in response.

The remaining Requests seek information that is covered extensively by the Report Documents. First, with respect to the six Requests that seek production of a single document, where we were able to identify the requested document, we have agreed to produce it, and the document is contained in the Report Documents. *See* Responses to Requests 8, 12 and 13. For the remaining three, we were unable to locate the requested document and informed you that we believed the Request may contain incorrect

---

4. The Report Documents contain documents dated from approximately 2005 to 2018, and may include even earlier documents as electronic metadata is limited for hard copy documents. SKAT will not withhold these documents notwithstanding its objections to requests for documents during that expanded date range.

5. These three employees are also custodians included in SKAT's review and production of custodial emails.

information, descriptions, or dates.  For example, Request 11 seeks "minutes of meeting between Regnskab 2 and SIR on November 20, 2011."  SKAT was unable to identify this document after conducting a reasonable search.  As we noted at our meet-and-confer on April 27, the date in the request—November 20, 2011—was a Sunday.  Because it would be unusual for SKAT personnel to conduct a meeting on a Sunday, we asked you to confirm that this was the correct date or the basis for believing that a meeting occurred on this date.  Similarly, Request 9 seeks a Lisbeth Rømer memorandum submitted to SIR dated December 7, 2009.  SKAT was unable to identify such a document after conducting a reasonable search, and at the meet and confer we asked you to confirm that this was the correct date or the basis for believing that a report was created on this date.  SKAT conducted a similar search and we requested similar clarification for Request 16.  To date, you have not responded to this basic request for confirmation or clarification.  Your unwillingness to provide additional information or basic clarification in favor of a letter writing campaign further demonstrates your refusal to engage in the meet and confer process in good faith and confirms that you are using the discovery process as a litigation tactic to distract from ED&F's utter failure to make any meaningful production of documents from its own files and create delay in these proceedings.

Second, the responsiveness of the Report Documents to ED&F's Requests is readily apparent as both ED&F's Requests and the December 2017 Report address the same basic underlying events and issues.  Responsive documents are necessarily contained in the underlying materials used to create and referenced throughout that Report.  For example:

- Request 2 seeks "All requests for more resources to be allocated to Regnskab 2 for the purposes of processing WHT applications made by Lisbeth Rømer to SKAT and the responses thereto."  The Report Documents are responsive because the terms of reference for the inquiry include "the organizational situation, including the question of managerial anchoring and responsibility, the systemic support and the financial framework as well as interaction between these factors."  The Report Documents contain responsive emails, and SKAT is also producing relevant emails from Ms. Rømer's custodial documents.

- Request 3 seeks "All internal audit or reports from 2000 onwards which show what percentage of WHT was being refunded or what percentage of WHT applications were being granted."  The Report Documents contain internal audit reports on DWT administration from as far back as 2006.

- Request 6 calls for "Documents evidencing the decision to assign the task of WHT application processing to Regnskab 2 in January 2009."  SKAT's actions in 2009, and whatever organizational decisions were made by SKAT or the Ministry of Taxation years before any defendant submitted DWT reclaim applications to SKAT, are irrelevant.  However, as with ED&F's other vague and overly broad requests, the Report Documents are responsive and

- contain SKAT memoranda and other documents concerning the 2009 reorganization.

- Request 7 seeks "Documents evidencing Peter Loft's instruction to SIR to conduct a review of the WHT application system in or around October 21, 2009 which led to the production of the 2010 SIR report." The occasion for the 2010 SIR Report is not relevant to the third-party claims against ED&F or its defenses. Nevertheless, the Report Documents contain memoranda and other documents submitted to Peter Loft, the final 2010 SIR report, and documents evidencing the actions SKAT took in response to that report.

- Request 14 seeks "Reports on which the decision to reorganise [sic] SKAT was based." This request is vague: SKAT has undergone a number of organizational changes, and the Request does not specify a time period. The Report Documents are responsive and contain documents concerning the 2013 and 2015 reorganizations.

- Requests 23 and 24 seek documents about the "Bank Scheme/Programme," a method of applying for DWT refunds that SKAT does not allege to have been used by any defendant in the MDL. Notwithstanding the irrelevance of documents relating to the Bank Scheme/Programme, the Report Documents are responsive because they include documents about the Bank Scheme.

In sum, ED&F's Requests seek documentation related to issues that are addressed in the December 2017 Report, namely the historical organization of SKAT, the process by which SKAT reviewed DWT applications, and how the fraud was able to be committed. Thus, the documentation that was used as the basis for that report is clearly responsive to ED&F's Requests. This redundancy between ED&F's Requests and the content of the December 2017 Report is not surprising based on the specific factual references in ED&F's Requests, which lead us to believe that the ED&F Requests are based in whole or in part on a review of the December 2017 Report. Where SKAT indicated in its responses and objections to ED&F's Requests that it would produce the Report Documents, we believe that the Report Documents are a fulsome response to that specific request. *See, e.g.*, Requests 1-5, 7-14, and 16-21. Production of non-privileged Report Documents, an extensive and readily-identifiable set of documents, is a proportional response to ED&F's Requests for overly-broad and irrelevant documents.

      Third, your demand that SKAT indicate whether the Report Documents "contain *all* documents sought by ED&F" is inconsistent with SKAT's obligations under the Federal Rules of Civil Procedure. If further proof were needed, you need look only to ED&F's responses to SKAT's Requests, which do not come close to meeting the newly-invented standard you seek to impose upon SKAT.

      Consistent with SKAT's objections to ED&F's Requests, SKAT will produce the non-privileged Report Documents with minimal redactions and documents withheld. SKAT will not withhold any documents on the basis of irrelevance or applicable date range. SKAT will only withhold or redact documents as required under

Danish law: those relating to or containing (i) SØIK's ongoing criminal investigation of the dividend cases, (ii) information received from foreign tax authorities pursuant to confidentiality obligations in treaty or other cooperation agreements, (iii) information on third parties to the dividend cases (*e.g.*, personal and human resources-related information of SKAT employees and personally identifiable information about third party Danish taxpayers); and (iv) privileged material and communications. SKAT will provide a categorical log of any documents withheld within a reasonable time after production of the Report Documents, and is of course willing to meet and confer further at that time should you have additional questions.

**Other Requests**

Finally, we reject your assertion that ED&F's Requests seek the production of a "narrow and specific" set of documents. In fact, ED&F's very first request seeks "all" documents and communication concerning "early warnings" for the period of 2002 until the present. This single request covers an eighteen-year period, is premised on an ill-defined and nebulous concept of "early warning," and illustrates the breadth and vagueness of ED&F's Requests, regardless of how ED&F may try to recharacterize them now. Other of ED&F's Requests, such as Requests 6, 15, 23 and 24, discussed above, are either duplicative or patently irrelevant to the third party actions to which ED&F is a party.

Sincerely,

Neil J. Oxford