# **EXHIBIT A**



Neil S. Binder
Binder & Schwartz LLP    (T) 212.510.7031
366 Madison Avenue  6th Floor    (F) 212.510.7299
New York, NY 10017    nbinder@binderschwartz.com

April 29, 2020

Via Email

Neil J. Oxford, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6843
neil.oxford@hugheshubbard.com

Re:   *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Litigation*, 18-md-2865 –
SKAT's Responses to ED&F's Requests for Documents

Dear Neil:

We write to follow up on our meet-and-confer call of April 27, 2020 with respect to SKAT's Responses and Objections to Third-Party Defendant ED&F Man Capital Markets, Ltd.'s ("ED&F") First Requests for Production of Documents (the "R&Os") in the above-captioned proceeding.

SKAT has failed to respond to the vast majority of requests for documents served by ED&F.  Rather than agree to conduct searches for the narrow and specific documents sought by ED&F, SKAT's position is that it can substitute the production of a completely separate set of documents not collected for this litigation, which SKAT largely has made no effort to determine is responsive to ED&F's requests.  Such responses do not satisfy SKAT's obligations under the Federal Rules to search for documents "relevant to any party's claim or defense and proportional to the needs of the case"—a multi-billion-dollar multidistrict litigation that SKAT itself initiated—for the reasons discussed in further detail below.  As a step toward meeting SKAT's discovery obligations in this matter, ED&F requests that SKAT provide the following:

1. For each request made by ED&F, indicate whether a search was conducted, and, if so, the specific searches that were performed for the documents requested.  The response to this request should include: (a) the universe of documents searched (*e.g.*, the Bech-Bruun documents or, to the extent a broader category of documents were searched, the parameters of documents selected to search); (b) the date range for which documents were searched; (c) the search terms used, to the extent the search involved the use of search terms; and (d) any further restrictions on documents within the search, such as the exclusion of specific custodians, file types, or other information.



2. For each request for which SKAT responded that it will produce the Bech-Bruun Documents, indicate whether the Bech-Bruun Documents contain a complete set of the documents that SKAT believes are responsive to each such request and your basis for that assertion.

3. Confirm that you will not withhold responsive documents sought by ED&F solely on the basis that they were not created between January 1, 2012 and June 15, 2015.

4. To the extent discrete categories of documents are being withheld solely on the basis of confidentiality obligations or data privacy laws, rather than for privilege, immediately provide a brief description of each category of documents, the confidentiality provisions that allegedly apply, and the basis for asserting confidentiality as a reason to withhold. Please also provide the date that we can expect to receive a privilege log listing all of the documents withheld.

5. Produce an English translation of the 600-plus page Bech-Bruun Report, which is necessary to determine whether the Bech-Bruun Documents are likely to satisfy any of the requests made by ED&F.

**Basis for Requests**

We wrote to you on April 9, 2020, prior to the deadline for SKAT to serve the R&Os, because we were concerned that we would receive the same types of improper objections that were made in SKAT's responses to requests for production from the pension plan defendants. We had hoped to avoid the delay that results from having to meet and confer over broad, general objections that do not fairly respond to proper document requests. For that reason, we asked that, to the extent you intended to refuse the production of the specific documents sought by ED&F, you "state the basis for such refusal with sufficient specificity so that we may promptly meet and confer." Apr. 9 Ltr. at 2. You did not do that; rather, SKAT provided boilerplate objections that reflect no effort to respond to the requests for documents actually sought by ED&F. Indeed, it appears that rather than search for specific documents responsive to ED&F's requests, SKAT has simply decided that it will produce the "Bech-Bruun Documents," which you have told us will likely have some overlap with documents responsive to ED&F's requests. However, it is not clear which documents will be included in SKAT's productions and which will not, and thus SKAT's R&Os, as written, are insufficient for the following non-exhaustive reasons.

First, SKAT's R&Os do not sufficiently indicate whether a search for responsive documents has been or will be performed. Based on the R&Os, as further clarified by your responses to our questions on our April 27, 2020 call, we understand that SKAT's responses to ED&F's 24 requests fall into the following categories:

- No indication of whether responsive documents would be produced: **15 requests** (Nos. 1,

2



      2, 3, 4, 5, 7, 9, 10, 11, 14, 16, 18, 19, 20, and 21)
- Complete objection to production: **5 requests** (Nos. 6, 15, 22, 23, and 24)
- Indication that the Bech-Bruun documents likely contain the requested documents: **2 requests** (Nos. 8 and 12)
- Agreement to search for specific documents subject to objections: **2 requests** (Nos. 13 and 17)

Twenty of SKAT's responses thus either improperly refuse to provide any documents in response to ED&F's request or provide no indication as to whether such production of documents is forthcoming. Indeed, based on our call, with the exception of one or two specific documents ED&F requested, SKAT appears to have made the decision not to conduct any search whatsoever for the documents sought by ED&F's requests.

     Second, and relatedly, SKAT's statement that it would produce the Bech-Bruun Documents does not substitute for a statement as to whether or not any documents responsive to 15 of ED&F's 24 requests will be produced. When we asked whether the Bech-Bruun Documents—a set of documents identified and collected by SKAT in connection with an internal investigation culminating in a 600 page public report in Danish— would contain documents responsive to those requests, Mr. Weinstein responded that the Bech-Bruun Documents were "everything [we] would want to know" about SKAT, and that additional searches for many or most of the documents requested by ED&F would thus not be required. Although there may be important and responsive documents in the Bech-Bruun Documents, the Bech-Bruun Documents cannot contain "everything we would want to know" unless they include all of the documents sought by ED&F in its requests. In fact, even in response to the six requests for which ED&F requested production of only a single document, SKAT was unclear whether no search had been performed, or whether a search was performed but a responsive document was not located. For each of the 15 requests for which SKAT indicated that it would produce the Bech-Bruun Documents, but provided no indication as to whether, in SKAT's view, the Bech-Bruun Documents contained documents responsive to ED&F's requests or not, please indicate whether the Bech-Bruun Documents contain all the documents sought by ED&F in such category and your basis for that assertion.

     Third, SKAT's promise to produce documents only for the period January 1, 2012 through June 15, 2015 is overly narrow and excludes documents likely to be central to ED&F's defenses to the claims it faces in this litigation. Although SKAT did not indicate the basis for the date restriction in the R&Os, SKAT clarified on the call that January 1, 2012 was chosen as the start date for the relevant period because 2012 was the first year in which WHT applications at issue in this litigation were submitted, and June 15, 2015 was chosen as the end date because a whistleblower complaint was filed on or about that date, which SKAT contends led it to re-examine its own practices. We pointed out that, for example, the exclusion of documents authored before January 1, 2012, but that captured SKAT's policies, practices, or procedures for evaluating WHT applications during SKAT's view of the "relevant period," were relevant to whether the WHT applications submitted by ED&F clients were valid. We also pointed out that,

3



though many documents created after June 15, 2015 may reflect the input of attorneys and thus may be protected under a privilege, any non-privileged documents created after June 15, 2015 that analyzed SKAT's previous conduct were relevant for the same reasons.  Indeed, you told us that the Bech-Bruun Documents, to which SKAT refers in many of the responses to ED&F's requests, span the period of 2008 through 2015.  You indicated that you would reconsider your recitation of the relevant period.  We ask that you withdraw your objection as to the relevant period, particularly in view of the targeted requests propounded by ED&F that do not require broad searches of custodial documents.

Fourth, SKAT's general indication that documents would be withheld solely on confidentiality grounds—without a corresponding objection on the basis of privilege or relevance—is not specific enough for ED&F to evaluate the propriety of the withholding.  We asked you to describe the categories of documents you contend are completely protected from disclosure on confidentiality grounds, as well as the specific confidentiality provisions that mandate such protection.  You informed us that you would consider this request.  Please first provide a list of categories of documents withheld on confidentiality grounds, as well as the confidentiality provisions that apply to each category and the basis for withholding based on those asserted provisions.  Please also let us know the date by which SKAT will provide a privilege log of all such documents.

Fifth, given the prominent role that the Bech-Bruun Documents play in SKAT's contention that it has complied with its discovery obligations, SKAT must produce an English translation of the Bech-Bruun Report.  You indicated on our call that you did not intend to make such production.  Please reconsider your position, as the scope and analysis of the Report is now critical to understanding your contention that SKAT's production of the Bech-Bruun Documents fulfills some of SKAT's obligations to comply with ED&F's requests.  It is not reasonable to take the position that the Bech-Bruun Report explains the relevance of the documents SKAT intends to produce and then require ED&F to have a 600-page document translated and reviewed so that we may continue to meet and confer once we have done so.

Sixth, even if the Bech-Bruun Documents contain documents responsive to ED&F's requests, it would be improper to bury such responsive documents among millions of pages of Danish-language documents that do not respond to ED&F's requests.  It is impractical and improper to require our client to search for the documents they seek among those that SKAT has unilaterally decided to produce.

4



      We ask that you provide us with a response by May 4 so that we may promptly resume our meet and confer.

                                      Sincerely,

                                      Neil S. Binder

CC:    Mark A. Weinstein, Esq.
           Dustin Smith, Esq.
           Valerie Cahan, Esq.

5