**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND LITIGATION

This document relates to: 1:18-cv-05053-LAK;
1:18-cv-05374-LAK; 1:18-cv-08655-LAK;
1:18-cv-09797-LAK; 1:18-cv-10100-LAK

MASTER DOCKET

Case No.: 1:18-md-02865-LAK

**MEMORANDUM OF LAW IN OPPOSITION**
**TO MOTIONS TO DISMISS AMENDED COUNTERCLAIMS**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................ 3

I.    ED&F's Brokerage Services ............................................................................................ 4

     A.    The Responsibilities And Obligations Of The Third-Party Plaintiffs ......................... 5

     B.    The Indemnity Provisions And Limitations Of Liability ............................................ 6

II.    The Tax Refund Applications ....................................................................................... 7

III.    The English Action ........................................................................................................ 9

     A.    The Shah Scheme ...................................................................................................... 10

     B.    The Non-Fraudulent Applications ............................................................................ 10

     C.    The Amended Defence .............................................................................................. 11

IV.    The Multidistrict Litigation ......................................................................................... 12

     A.    SKAT's Allegations Against The Third-Party Plaintiffs ......................................... 12

     B.    The Third-Party Claims And Counterclaims ........................................................... 13

LEGAL STANDARD ............................................................................................................. 14

ARGUMENT ........................................................................................................................... 15

I.    The Court Has Subject Matter Jurisdiction Over The Amended Counterclaims ....... 15

II.    ED&F's Amended Counterclaims Are Not Precluded By Contract Or By Law ......... 17

III.    Proximate Cause Considerations Do Not Preclude Indemnification ........................... 22

IV.    ED&F's Counterclaims Are Consistent With Its Pleadings In The English Action.... 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

*Cases*

*Ades v. Deloitte & Touche*,
  No. 90 Civ. 4959(RWS), 1993 WL 362364 (S.D.N.Y. Sept. 17, 1993)...................................25

*AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*,
  11 N.Y.3d 146 (2008) ........................................................................................................20

*Amusement Indus., Inc. v. Stern*,
  693 F. Supp. 2d 319 (S.D.N.Y. 2010)...............................................................................18

*Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*,
  No. 93 CIV 3068 (WK), 1996 WL 361535, (S.D.N.Y. June 27, 1996) ..................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009).................................................................................15

*Associated Indem. Corp v. Fairchild Indus., Inc.*,
  961 F.2d 32 (2d Cir. 1992)...................................................................................................16

*Atlantic Aviation Corp. v. Estate of Costas*,
  332 F. Supp. 1002 (E.D.N.Y. 1971) ....................................................................................16

*Banque Financiere de la Cite v. Parc (Battersea) Ltd. & Ors.*
  [1998] UKHL 7.............................................................................................................21, 22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007)............................................................................14, 15

*Capitol Records, Inc. v. City Hall Records, Inc.*,
  No. 07 Civ. 6488(LTS)(KNF), 2008 WL 2811481 (S.D.N.Y. July 18, 2008)........................15

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir 2016)....................................................................................................14

*Ciocca v. Neff*,
  No. 02Civ.5067(LTS)(HBP), 2005 WL 1473819, (S.D.N.Y. June 22, 2005)........................21

*Citizens Union of City of N.Y. v. Attorney General of N.Y.*,
  No. 16 Civ. 9592 (RMB)(KHP), 2017 WL 2984167 (S.D.N.Y. June 23, 2017)....................14

*Colodney v. Continuum Health Partners, Inc.*,
  No. 03 Civ. 7276(DLC), 2004 WL 829158,  (S.D.N.Y. Apr. 15, 2004) ................................25

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) .........................................................................................................21

*Csaky v. Meyer*,
 No. 94 Civ. 8117 (JSM), 1995 WL 494574 (S.D.N.Y. Aug. 18, 1995) ................................. 18

*DeBlasio v. Merrill Lynch & Co., Inc.*,
 No. 07 Civ. 318(RJS), 2009 WL 2242605, (S.D.N.Y. July 27, 2009) ..................................... 25

*Emamian v. Rockefeller Univ.*,
 07 Civ. 3919 (DAB), 2018 WL 1010623, (S.D.N.Y. Feb. 21, 2018) ....................................... 21

*Fisk v. Letterman*,
 401 F. Supp. 2d 362 (S.D.N.Y. 2005) ..................................................................................... 25

*Glaser v. Upright Citizens Brigade, LLC*,
 377 F. Supp. 3d 387 (S.D.N.Y. 2019) ..................................................................................... 14

*Gramercy Advisors, LLC v. Coe*,
 No. 13-CV-9069 (VEC), 2014 WL 4197370 (S.D.N.Y. Aug. 25, 2014) ............................... 19

*Gramercy Advisors, LLC v. Coe*,
 No. 13-CV-9069 (VEC), 2015 WL 13780603 (S.D.N.Y. Apr. 17, 2015) ............................... 19

*Handelsbanken v. Dandridge*
 [2002] EWCA Civ 577 (Apr. 30, 2002) ................................................................................... 23

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
 74 N.Y.2d 487 (1989) .............................................................................................................. 18

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
 42 F. Supp. 3d 520 (S.D.N.Y. 2014) ................................................................................... 7, 16

*In re Lehman Bros. Holdings, Inc.*,
 602 B.R. 564 (Bankr. S.D.N.Y. 2019) ..................................................................................... 20

*In re Richartz, Fliss, Clark & Pope, Inc.*,
 No. 10-03317 (MG), 2010 WL 4502038, (Bankr. S.D.N.Y. Nov. 1, 2010) ............................ 25

*In re SKAT Tax Refund Scheme Litig.*,
 356 F. Supp. 3d 300 (S.D.N.Y. 2019) ................................................................................. 9, 21

*Index Fund, Inc. v. Hagopian*,
 91 F.R.D. 599 (S.D.N.Y. 1981) ............................................................................................... 16

*John v. Whole Foods Market Grp., Inc.*,
 858 F.3d 732 (2d Cir. 2017) ..................................................................................................... 14

*Kane v. Magna Mixer Co.*,
 71 F.3d 555 (6th Cir. 1995) ..................................................................................................... 16

*Katz v. Berisford Int'l PLC,*
　No. 96 Civ. 8695(JGK), 2000 WL 959721, (S.D.N.Y. July 10, 2000) .................................. 18

*Lynch v. Sperry Rand Corp.,*
　62 F.R.D. 78 (S.D.N.Y. 1973) ................................................................................................ 16

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,*
　418 F.3d 168 (2d Cir. 2005) .................................................................................................... 19

*Mukaddam v. Permanent Mission of Saudi Arabia to U.N.,*
　136 F. Supp.2d 257 (S.D.N.Y. 2001) ...................................................................................... 15

*Peter Fabrics, Inc. v. S.S. Hermes,*
　765 F.2d 306 (2d Cir. 1985) ........................................................................................ 16, 18, 20

*Petroleo Brasileiro S.A. v. E.N.E. Kos 1 Ltd.*
　[2012] UKSC 17 (May 2, 2012) .............................................................................................. 23

*Raila v. U.S.,*
　355 F.3d 118 (2d Cir. 2004) .................................................................................................... 14

*Roth v. Jennings,*
　489 F.3d 499 (2d Cir. 2007) .................................................................................................... 25

*Taeschner v. M & M Restorations, Ltd.,*
　295 A.D.2d 598 (2d Dep't 2002) ............................................................................................. 22

*The White Rose*
　[1969] 1 WLR 1098 ................................................................................................................ 23

Third-Party Defendant / Third-Party Counter Claimant ED&F Man Capital Markets, Ltd. ("ED&F") respectfully submits this memorandum of law in opposition to the motions of Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein Plan") and Sheldon Goldstein ("Goldstein") (collectively, the "Goldstein Parties"); Del Mar Asset Management Savings and Retirement Plan (the "Del Mar Plan") and Federated Logistics LLC 401(K) Plan (the "Federated Plan") (collectively, the "Del Mar Plans"); and DW Construction, Inc. Retirement Plan (the "DW Constr. Plan"), Kamco Investments, Inc. Pension Plan (the "Kamco Investments Plan"), Kamco LP Profit Sharing Pension Plan (the "Kamco LP Plan"), Linden Associates Defined Benefit Plan (the "Linden Plan"), Moira Associates 401(K) LLC Plan (the "Moira Plan"), Riverside Associates Defined Benefit Plan (the "Riverside Plan"), American Investment Group of New York, L.P. Pension Plan (the "AIG Plan"), and Newsong Fellowship Church 401(k) Plan (the "Newsong Plan") (collectively, the "DWC Plans" and together with the Goldstein Parties and the Del Mar Plans, the "Third-Party Plaintiffs") to dismiss the amended counterclaims of ED&F in the above-captioned actions.[1]

## PRELIMINARY STATEMENT

ED&F's allegations in this action are straightforward.  As set forth in ED&F's pleadings, the Third-Party Plaintiffs entered into contractual agreements to indemnify ED&F against liabilities, losses or costs incurred in connection with ED&F's financial and brokerage services, including liabilities, losses or costs associated with legal proceedings such as this MDL.  The Third-Party Plaintiffs deny that they owe any such indemnification obligations and, reaching far

---

[1] The Goldstein Plan, the Del Mar Plans and the DWC Plans are collectively referenced herein as the "Third-Party Plaintiff Plans."  The Goldstein Parties' memorandum of law in support of their motion to dismiss ED&F's amended counterclaim (Dkt. No. 342) is referenced herein as the "Goldstein Br."  The DWC Plans' memorandum of law in support of their motion to dismiss ED&F's amended counterclaims (Dkt. No. 344) is referenced herein as the "DWC Br."  The Del Mar Plans' memorandum of law in support of their motion to dismiss ED&F's amended counterclaims (Dkt. No. 347) is referenced herein as the "Del Mar Br."

beyond ED&F's pleadings, seek to persuade this Court—by repeated reference to their own allegations against ED&F—that they themselves have somehow been wronged.  But this is not the occasion to adjudicate the Third-Party Plaintiffs' claims against ED&F, and in considering the Third-Party Plaintiffs' motions to dismiss, the Court should give no weight to any pleadings beyond ED&F's own.  Simply put, the Third-Party Plaintiffs owe a duty to indemnify ED&F, and by the instant motions to dismiss, the Third-Party Plaintiffs seek to avoid that duty.  For the reasons set forth below, the Third-Party Plaintiffs' motions to dismiss should be denied in full.

The Third-Party Plaintiffs are among hundreds of defendants in this consolidated proceeding alleged to have obtained tax reclaims from the Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen, or "SKAT") on the basis of false withholding tax refund applications.  The Third-Party Plaintiffs maintain that their tax refunds were properly obtained but nevertheless urge this Court to find that if it is determined that they did receive any tax refunds to which they were not entitled, their broker-dealer, ED&F, should be required to cover their losses.  To this end, the Third-Party Plaintiffs have impleaded ED&F as a third-party defendant, notwithstanding that SKAT itself did not name ED&F as a defendant in this proceeding and, indeed, has not accused ED&F of any fraudulent wrongdoing in connection with the challenged tax refund applications.

Prior to bringing their claims against ED&F, the Third-Party Plaintiffs entered into binding contracts pursuant to which they agreed, among other things, to exculpate and indemnify ED&F in connection with ED&F's brokerage services.  The Third-Party Plaintiffs now seek to avoid their commitments to indemnify ED&F for its losses, costs and liabilities.  The Third-Party Plaintiffs do not dispute that the indemnification obligations are binding upon them but nevertheless seek to render those obligations unenforceable in this proceeding, arguing

principally that ED&F's counterclaims have not yet matured and that ED&F should not in any event be subject to indemnification for losses that, according to the Third-Party Plaintiffs, must somehow be attributable to ED&F's own intentional or negligent wrongdoing.  These arguments fall short for a number of reasons.  First, courts of the Southern District of New York—including this Court—have held that counterclaims for indemnification need not be withheld until a determination of underlying liability has been made, particularly where, as here, relegating such claims to separate proceedings would be a wasteful diversion of judicial resources.  Second, the claims asserted against ED&F—not only in this proceeding but also in the related proceeding pending in England—include some that require no showing of intentional or negligent wrongdoing; on the Third-Party Plaintiffs' own reading of the governing indemnification provisions, losses attributable to such claims fall within the terms of the indemnity.  Third, ED&F has already incurred costs to which it has an immediate right to indemnification, regardless of any finding of liability.  And finally, the Third-Party Plaintiffs overlook the fact that, should ED&F prevail on the claims asserted against it—whether here or in the English Action—ED&F will be entitled to full indemnification for the costs of its defense, including all such costs already incurred.

## BACKGROUND

ED&F is a global financial brokerage, registered in England and headquartered in London.  The Third-Party Plaintiff Plans allege that they are United States pension plans that have maintained brokerage accounts with ED&F.[2]  At the direction of the Third-Party Plaintiff

---

[2] The Goldstein Plan alleges that it had a brokerage account with ED&F from 2012 to 2019.  *See* Amended Answer and Amended Third-Party Complaint ("Goldstein Compl.") ¶¶ 105, 147-48, Dkt. No. 219, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Nov. 5, 2019).  The DWC Plans allege that they have maintained brokerage accounts with ED&F since at least June 2012.  *See* Amended Third-Party Complaint ("DWC Compl.") ¶¶ 1-2, 17, Dkt. No. 226, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Nov. 13, 2019); Amended Third-Party Complaint ("Newsong Compl.") ¶¶ 1, 17, Dkt. No. 225, *In re Customs & Tax Admin. of*

Plans and/or their authorized agents—and subject to the terms of the governing custody agreements—ED&F executed certain transactions in Danish securities which would become the basis for withholding tax refund applications submitted by the Third-Party Plaintiffs—through their tax reclaim agent, Goal Taxback Ltd. ("Goal Taxback")—pursuant to a double taxation treaty entered between Denmark and the United States.[3]

## I.     ED&F's Brokerage Services

ED&F provided brokerage services to the Third-Party Plaintiff Plans pursuant to substantially identical custody agreements (the "Custody Agreements") and Terms and Conditions of Business (the "Terms & Conditions").  *See* Am. Counterclaim (Goldstein) ¶¶ 1, 26-27; Am. Counterclaim (DWC) ¶¶ 1, 26-27; Am. Counterclaim (Newsong) ¶¶ 1, 26-27; Am. Counterclaim (Del Mar ) ¶¶ 1, 10-11[4]  Each of these agreements was, by its express terms, to be

---

*Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Nov. 12, 2019).  The Del Mar Plans allege that they have maintained brokerage accounts with ED&F since at least April 2013.  *See* Third-Party Complaint ("Del Mar Compl.") ¶¶ 1-2, 11, Dkt. No. 220, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Nov. 5, 2019).

[3] *See* Amended Counterclaims of Third-Party Defendant ED&F Man Capital Markets, Ltd. ("Am. Counterclaim (Goldstein)") ¶¶ 1, 6, 18, 21-22, Dkt. No. 323, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Apr. 20, 2020); Amended Counterclaims of Third-Party Defendant ED&F Man Capital Markets, Ltd. ("Am. Counterclaim (Newsong)") ¶¶ 1, 6, 18, 21-22, Dkt. No. 324, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Apr. 20, 2020); Amended Counterclaims of Third-Party Defendant ED&F Man Capital Markets, Ltd. ("Am. Counterclaim (DWC)") ¶¶ 1, 6, 18, 21-22, Dkt. No. 325, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Apr. 20, 2020); Amended Counterclaims of Third-Party Defendant ED&F Man Capital Markets, Ltd. ("Am. Counterclaim (Del Mar)") ¶¶ 1, 6, Dkt. No. 326, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Apr. 20, 2020).

[4] For the Court's convenience, we have attached the Custody Agreements as Exhibits A-K to the Declaration of Neil S. Binder.  One of the relevant Custody Agreements was entered between ED&F and Hamlyn LP (Del Mar was a limited partner in Hamlyn LP).  The Custody Agreements were originally attached as exhibits to the Goldstein Compl. (Exhibit F), the DWC Compl. (Exhibits A-G), the Newsong Compl. (Exhibit A), and ED&F's amended counterclaims against the Del Mar Plans (Exhibits A-B).  Because the Custody Agreements are substantially identical, all references to the "Custody Agreement" are to the custody agreement between ED&F and the Goldstein Plan.  The Terms & Conditions entered between ED&F and the Third-Party Plaintiffs are attached for convenience as Exhibit L to the Declaration of Neil S. Binder.  The Terms & Conditions were also attached as Exhibit 2 to ED&F's amended counterclaims against the Goldstein Parties, the Newsong Plan, the DWC Plans and the Del Mar Plans, respectively.  The Terms & Conditions are substantially identical; for purposes of convenience, all references to the "Terms & Conditions" are to the Terms & Conditions entered between ED&F and the Goldstein Plan.

governed by and construed in accordance with English law.  *See* Custody Agreement § 22(a);

Terms & Conditions § 36.[5]

### A.    The Responsibilities And Obligations Of The Third-Party Plaintiffs

ED&F's role as custodian was a limited one:  Under the Custody Agreements, ED&F

acted as a "bare trustee" for the purposes of safekeeping client cash and/or securities.  Custody

Agreement ¶ 2(a).  Responsibility for the "selection, acquisition and disposal" of securities was

to remain "at all times" with the Third-Party Plaintiff Plans.  *Id*. ¶ 11(m).  The Third-Party

Plaintiff Plans were also expressly responsible for, among other things, "all filings, returns,

reports and statements with any regulatory authority" that were required by the relevant

regulatory authority or under "applicable laws, rules or regulations."  *Id*. ¶ 11(l).  ED&F was

"under no duty to challenge or make any enquir[i]es" concerning the Third-Party Plaintiff Plans'

instructions.  *Id*. ¶ 8(g).[6]

Under the terms of the Custody Agreements, ED&F was reliant on the Third-Party

Plaintiff Plans for timely and accurate information, including tax-related information.  Among

other things, the Third-Party Plaintiff Plans were contractually obliged to provide ED&F with

"any relevant information" required in connection with "any Taxes required to be withheld or

otherwise paid in respect of interest, dividends, redemption proceeds or other income" arising

from client cash and/or securities, to keep ED&F apprised of any "changes affecting its Tax

position or status,"  and to "co-operate" with ED&F in "furnishing information, executing

---

[5] Although the Third-Party Plaintiffs agree that English law governs the respective custody agreements—*see* Goldstein Br. at 12, 24 n.5; DWC Br. at 13, n.12; Del Mar Br. at 9 n.4 (custody agreements "purportedly" governed by English law)—their motions to dismiss nevertheless rest predominantly on non-English law.

[6] *See also* Custody Agreement ¶ 11(g) ("Unless otherwise agreed in writing and subject to Clause 10," the Third-Party Plaintiff Plans "shall be responsible for all filings, Tax returns and reports on any transaction undertaken or settled pursuant to [the Custody Agreement] which must be made to any relevant authority whether governmental or otherwise for the payment of all unpaid calls, Taxes . . . or any other liability or payment arising out of or in connection with the Client Property.").

documents or otherwise." *Id*. ¶ 11(h).  The Custody Agreements expressly provide that ED&F "shall rely" on such information provided by the Third-Party Plaintiff Plans and that, except as otherwise expressly stated, ED&F "shall have no responsibility with regard to the Client's Tax position or status in any jurisdiction."  *Id*.

## B.      The Indemnity Provisions And Limitations Of Liability

The Terms & Conditions include an indemnification provision under which the Third-Party Plaintiffs agreed to indemnify ED&F "against any loss, liability, costs and expenses" incurred by ED&F "either directly or indirectly in the due performance" of its obligations.  *See* Terms & Conditions § 19.  The Custody Agreements include a similar indemnification clause, under which the Third-Party Plaintiff Plans agreed to indemnify ED&F "on demand" and to keep ED&F "fully and effectively indemnified" against, among other things, "each liability, loss and cost which may be suffered or incurred" by ED&F in connection with (i) the Custody Agreements, (ii) the performance of ED&F's obligations under the Custody Agreements ("other than Tax"), or (iii) the "Client Property."  Custody Agreement § 16(a).[7]  Similarly, ED&F was indemnified against "any Tax" for which ED&F "is or may be liable or accountable" in connection with (i) the custody agreements, (ii) the performance of ED&F's obligations under the Custody Agreements, or (iii) the Client Property.  *Id*. § 16(a).  The indemnity under the Custody Agreements does not extend to any "liability, loss or cost arising out of the wilful default, fraud or negligence" of ED&F or any of ED&F's appointed sub-custodians, *id*. § 16(b),

---

[7] Under the Custody Agreements, a "liability" is expansively defined to include "any loss, damage, cost, charge, claim, demand, expense, judgement, action, proceeding or other liability whatsoever (including, without limitation, in respect of taxes, duties, levies, imposts and other charges)."  Custody Agreement § 1.2(f).  "Client Property" is defined to mean "Client Cash and/or the Client Securities."  *Id*. § 1.1.  "Client Cash" is "cash in any currency arising out of or in connection with the Client Securities and any amounts standing to the credit of the Client Cash Account."  *Id*.  "Client Securities" include securities "deposited or transferred" by the client, or on the client's behalf, to ED&F or collected by ED&F for the client's account.  *Id*.

but the indemnity under the Terms & Conditions includes no such restriction.[8]  The Third-Party

Plaintiff Plans further agreed to reimburse ED&F "on demand" for all reasonable costs and

expenses—including legal fees—incurred by ED&F in connection with the Custody

Agreements.  *Id*. §§ 1.1, 14(b).[9]

      The Terms & Conditions further provide that ED&F cannot be held liable for "any direct

or indirect losses, damages, costs or expenses" incurred by the Third-Party Plaintiffs that does

not "aris[e] directly" from ED&F's own "negligence, wilful default or fraud."  Terms &

Conditions § 18.  Similarly, under the Custody Agreements, ED&F's liability to the Third-Party

Plaintiff Plans is restricted to any "liability, loss or cost" that is a "direct result" of ED&F's "own

breach of duty, the wilful default, fraud or negligence" in providing services under the Custody

Agreement. Custody Agreement § 13(a).  Accordingly, ED&F is not liable to the Third-Party

Plaintiff Plans for, among other things, acting on what it believed in good faith to be valid client

instructions or genuine documents.  *Id*. § 13(b)(iv).

## II.    The Tax Refund Applications

      ED&F's role in connection with the tax refund applications at issue here was limited to

the preparation of certain one-page tax vouchers.  *See* Amended Defence ("Am. Def.") ¶¶ 2.2,

10-11, *SKAT v. ED&F Man Capital Mkts. Ltd. & Ors*, Claim Nos. CL-2018-000297; CL-2018-

000404; CL-2018-000590.[10]  Between approximately August 2012 and April 2015, ED&F

prepared 420 such tax vouchers on behalf of three dozen pension plans.  *See id*. ¶ 17.  ED&F did

---

[8] The tax indemnity does not extend to "Tax on or attributable to" fees charged by ED&F for its services.  Custody Agreement §§ 14(a), 16(a)(ii).

[9] The fact this provision does not fall under the "Indemnity" heading of the Custody Agreement is of no consequence.  As this Court has found, there is no reason that a "contract's headings rather than its substance should control the Court's interpretation."  *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 42 F. Supp. 3d 520, 526 n.18 (S.D.N.Y. 2014) (LAK).

[10] The Amended Defence is attached as Exhibit M to the Declaration of Neil S. Binder.

not submit these tax vouchers to SKAT but instead provided them to the pension plans through the pension plans' agents. *See id.* ¶¶ 4.1, 10.6, 17, 17.1.[11]

SKAT alleges that these tax vouchers were included by the Third-Party Plaintiffs in tax refund applications submitted to SKAT by the Third-Party Plaintiffs through their tax reclaim agents. According to SKAT, the tax vouchers were only one component of the tax refund applications, which also included a cover letter from the relevant tax reclaim agent, a foreign residence certification (issued by a relevant foreign authority), and a SKAT form entitled "Claim to Relief from Danish Dividend Tax" (completed by the relevant tax reclaim agent) which identified the beneficial owner of the relevant shares, stated the amount (in Danish Kroner) of the requested withholding tax refund, and included a certification that the beneficial owner was covered by the "Double Taxation Convention" between Denmark and the relevant foreign jurisdiction (the "Tax Relief Form"). *See* Re-Re-Amended Particulars of Claim ("RRAPC") ¶¶ 10, 17-17A, *SKAT v. Solo Capital Partners LLP & Ors.*, Claim Nos. CL-2018-000297; CL-2018-000404; CL-2018-000590.[12] SKAT alleges that it was the tax reclaim agents—acting on behalf of the pension plans—who prepared the cover letters, completed the Tax Relief Forms,

---

[11] In their pleadings, the Goldstein Plan and the DWC Plans have identified Acer Investment Group LLC ("Acer") as their authorized agent and/or attorney-in-fact with respect to the Danish securities transactions at issue here. Goldstein Compl. ¶ 115 n.2; DWC Compl. ¶¶ 2, 15, 20; Newsong Compl. ¶ 2. In recently amended complaints, SKAT alleges that it was Acer that "determined which Danish security and the number of shares that would be listed" in the tax vouchers used to support withholding tax refund applications submitted by the Goldstein Plan, the DWC Plan and the Newsong Plan. *See* Amended Complaint ("SKAT-Goldstein Compl.") ¶¶ 61-62, Dkt. No. 155, No. 1:18-cv-5053-LAK, *Skatteforvaltningen v. Goldstein Law Grp. PC 401(K) Profit Sharing Plan* (S.D.N.Y. Apr. 22, 2020); Amended Complaint ("SKAT-DWC Compl.") ¶¶ 61-62, Dkt. No. 131, No. 1:18-cv-09797-LAK, *Skatteforvaltningen v. DW Constr., Inc.* (S.D.N.Y. Apr. 22, 2020); Amended Complaint ("SKAT-Newsong Compl.") ¶¶ 59-60, Dkt. No. 126, No. 1:18-cv-10100-LAK, *Skatteforvaltningen v. Newsong Fellowship Church 401K Plan* (S.D.N.Y. Apr. 20, 2020). SKAT further alleges that Acer "coordinated the submission" of these tax vouchers to Goal Taxback and "direct[ed]" ED&F to "take actions that caused the creation and submission" of these tax vouchers. SKAT-Goldstein Compl. ¶ 61; SKAT-DWC Compl. ¶ 61 Newsong Compl. ¶ 59. The Del Mar Plans have identified Duet Asset Management Limited as their investment manager. Del Mar Compl. ¶ 14.

[12] The RRAPC is attached as Exhibits 3a and 3b to the Declaration of Eric Smith, Dkt. No. 348, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. May 18, 2020).

and ultimately submitted the tax refund application packages to SKAT.  *See id*. ¶¶ 14A, 17-17A; *see also* Am. Def. ¶¶ 4.1, 10.6, 16.  It was also the tax reclaim agents who in the first instance received the withholding tax refunds remitted by SKAT.  *See* Am. Def. ¶¶ 10.6, 29.[13]

### III.    The English Action

In or about May 2018, SKAT—an agency of the Danish government "charged with the assessment and collection of Danish taxes"—brought suit in the United Kingdom (the "English Action").  Am. Def. ¶ 1; RRAPC ¶ 1.[14]  In the English Action, currently pending before the Commercial Court of the High Court of Justice (the "High Court"), SKAT alleges that it was induced to issue millions of dollars in unfounded tax refunds on the basis of thousands of purportedly fraudulent or inaccurate tax refund applications.  According to SKAT, the disputed tax refund applications were made by a handful of tax reclaim agents generally purporting to act on behalf of various United States pension funds and/or "certain entities in Malaysia, UK or Luxembourg."  RRAPC ¶¶ 3(b), 5(a), 13.

SKAT's claims in the English Action rest on two distinct sets of allegations implicating two distinct categories of disputed tax refund applications.  The first set of allegations involves a fraudulent scheme allegedly masterminded by a single individual, Sanjay Shah (the "Shah Scheme"), in which ED&F is not alleged to have had any knowledge or involvement.  The second set of allegations rest on alleged inaccuracies in a separate set of tax refund applications.

---

[13] The Goldstein Plan, the Del Mar Plans and the DWC Plans shared the same tax reclaim agent:  Goal Taxback.  *See* Am. Def., Annex B, C; *see also* Goldstein Compl ¶ 33; DWC Compl. ¶ 33; Del Mar Compl. ¶ 32; Newsong Compl. ¶ 31.

[14] One of SKAT's responsibilities is the issuance of "tax refunds to claimants under certain double taxation treaties between Denmark and other countries."  *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308 (S.D.N.Y. 2019).

A.      **The Shah Scheme**

The core allegations in the English Action involve disputed tax refund applications allegedly submitted pursuant to a fraudulent scheme allegedly organized by Sanjay Shah and perpetrated by entities under his control, in collaboration with various "joint tortfeasors and/or co-conspirators."  *Id.* ¶¶ 3(e), (g)-(h).  According to SKAT, the fraud was accomplished through the use of falsified tax refund applications—rooted in "fictitious and/or sham transactions" and/or "illegitimate trading"—that were purportedly made out on behalf of almost three hundred separate applicants, consisting largely of United States pension funds but also including a British pension fund, two dozen Malaysian companies, and a Luxembourg company.  *Id.* ¶¶ 3(c)-(e), 14.  Shah and his confederates are alleged to have diverted millions of dollars in improperly obtained tax refunds through a "complex web of transactions," including the "extensive use of offshore vehicles," in an apparent effort to "launder the proceeds of the monies."  *Id.* ¶¶ 3(e)-(f).

ED&F is not alleged to have played any role in, or to have had any knowledge of, the Shah Scheme.  Indeed, SKAT took special care in its pleading to make clear that ED&F is *not* alleged to have defrauded SKAT in any way or to have participated in any fraudulent scheme:

> For the avoidance of doubt, SKAT does not allege fraud or dishonesty against ED&F Man, or that the ED&F Man Applications were made as part of a fraudulent scheme.

*Id.*  ¶ 3(k).

B.      **The Non-Fraudulent Applications**

In addition to the allegations with respect to the Shah Scheme, SKAT's pleading in the English Action also includes separate allegations involving a different set of tax refund applications allegedly submitted on behalf of "33 US pension plans and 3 Canadian pension plans."  *Id.* ¶ 14A.  These allegations are premised on alleged inaccuracies in the tax refund applications and—in sharp contrast to the allegations made against Shah and his purported

10

confederates—do not sound in fraud.  ED&F is a defendant in the English Action only as to this set of allegations, and SKAT's only claims against ED&F with respect to these tax refund applications are for negligent misrepresentation and unjust enrichment / restitution.  *See id*. ¶¶ 3(b), 5(f), 24A, 94A, 95-98, 101, 103; Re-Amended Schedule 5T to the RRAPC ("Re-Amended Schedule 5T") ¶¶ 2, 15-22, 23-25.[15]  SKAT alleges that ED&F failed to "verify the correctness" of information set out in the relevant tax vouchers and that the relevant pension plans—including the Third-Party Plaintiff Plans—were not, as a legal matter, the beneficial owners of the indicated shares.  *See* Re-Amended Schedule 5T ¶¶ 17-18.

### C.    The Amended Defence

On September 6, 2019, ED&F filed an Amended Defence in the English Action, identifying inaccuracies in eighty of the 420 tax vouchers (the "Annex E Tax Vouchers").  As indicated in Annex E of the Amended Defence, the Annex E Tax Vouchers contained inaccurate information in that (i) the indicated amounts had not been "received" by the identified pension plans by way of dividend from the indicated Danish-listed company and (ii) the indicated withholding tax amounts had not been "suffered" by the identified pension plans in relation to such dividends.  *See* Am. Def., Annex E ¶ 2.  The Third-Party Plaintiffs rely heavily on the acknowledged inaccuracies in the Annex E Tax Vouchers, suggesting—inaccurately—that the Amended Defence is an admission by ED&F of intentional or negligent wrongdoing.[16]  In truth, the Amended Defence simply acknowledges inaccuracies in the Annex E Tax Vouchers and in no way suggests that those inaccuracies were the result of tortious wrongdoing on the part of

---

[15] Re-Amended Schedule 5T to the RRAPC is attached as Exhibit 4 to the Declaration of Eric Smith, Dkt. No. 348, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. May 18, 2020).

[16] *See, e.g.*, Goldstein Br. at 8; DWC Br. at 2, 16; Del Mar. Br. 1-2, 5. The Del Mar Plans go so far as to claim, incorrectly, that "[t]he willful or negligent nature of ED&F's conduct is . . . undisputed."  Del Mar Br. at 10.

ED&F.  Indeed, ED&F has consistently denied—and continues to deny—any liability in the English Action.  *See* Am. Def. ¶¶ 4, 36, 44.

## IV.      The Multidistrict Litigation

While proceedings were underway in the English Action, SKAT launched a wave of litigation in the U.S. courts, filing over a hundred federal actions in multiple districts against dozens of U.S. retirement and pension plans and their authorized representatives, among them the Third-Party Plaintiffs.  *See* Transfer Order (the "Transfer Order"), *In re SKAT Tax Refund Litig.*, Dkt. No. 1, *In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Litig.* No. 1:18-md-02865-LAK (S.D.N.Y. Oct. 9, 2018).[17]  These federal actions have been consolidated into the present MDL proceeding (the "MDL Proceeding").  *See id.*  SKAT has not sued ED&F or any of its affiliates in the MDL or in any other proceeding in the United States in connection with the challenged withholding tax refunds.

### A.      SKAT's Allegations Against The Third-Party Plaintiffs

In the MDL proceeding, SKAT alleges that the Third-Party Plaintiffs—each acting through the same designated payment agent, Goal Taxback—submitted improper claims for withholding tax refunds, based on false representations that they had earned dividends with respect to shares of Danish companies they did not own.[18]  Many of the Third-Party Plaintiffs are

---

[17] In June 2018, SKAT filed federal lawsuits against the Goldstein Parties and the Del Mar Plan in the Southern District of New York.  *See* Complaint, Dkt. No. 1, *SKAT v. Goldstein Law Group PC 401(K) Profit Sharing Plan*, No. 1:18-cv-05053-LAK (S.D.N.Y. June 6, 2018); Complaint, Dkt. No. 1, *SKAT v. Del Mar Asset Mgmt. Saving & Retirement Plan*, No. 1:18-cv-05374-LAK (S.D.N.Y. June 14, 2018).  SKAT's federal actions against the remaining Third-Party Plaintiffs were transferred to the Southern District of New York pursuant to the MDL transfer order.  *See* Transfer Order.

[18] *See, e.g.*, SKAT-Goldstein Compl. ¶¶ 3-5, 36-40; Amended Complaint ("SKAT-Del Mar Compl.") ¶¶ 3-5, 34-37, Dkt. No. 110, *Skatteforvaltningen v. Del Mar Asset Mgmt. Saving & Retirement Plan*, No. 1:18-cv-05374-LAK, (S.D.N.Y. Apr. 24, 2020); Amended Complaint ("SKAT-Federated Compl.") ¶¶ 3-5, 34-38, Dkt. No. 95, *Skatteforvaltningen v. Federated Logistics LLC 401K Plan*, No. 1:18-cv-08655-LAK, (S.D.N.Y. April. 22, 2020); SKAT-DWC Compl. ¶¶ 3-5, 36-40; SKAT-Newsong Compl." ¶¶ 3-5, 35-39.

alleged to have defrauded SKAT intentionally, extensively and with a "high degree of moral turpitude and wanton dishonesty."[19]

### B.    The Third-Party Claims And Counterclaims

The Third-Party Plaintiffs brought several actions impleading ED&F in this proceeding, asserting causes of action that run the gamut from tort (including common-law fraud and negligence) to contract (including breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing) to equity (including unjust enrichment and equitable indemnification).  While there is some variation among the third-party complaints, they all share the same underlying premise that the Third-Party Plaintiffs are entitled to the tax refunds they have received and, should the Court determine otherwise, that any responsibility for making SKAT whole should be borne entirely by ED&F.[20]

On March 2, 2020, ED&F responded to the Third-Party Plaintiffs' claims, asserting counterclaims for indemnification, and on April 20, 2020, ED&F filed amended counterclaims under Fed. R. Civ. P. 15.  Pursuant to its amended counterclaims, ED&F seeks indemnification for, among other things, all liabilities, losses or costs incurred in connection with the performance of its obligations under the Custody Agreements and the Terms & Conditions, including liabilities, losses or costs incurred by ED&F in connection with the MDL Proceeding

---

[19] *See, e.g.,* SKAT-Goldstein Compl. ¶¶ 67, 72, 74; SKAT-Del Mar Compl. ¶¶ 62, 67, 69; SKAT-Federated Compl. ¶¶ 61, 66, 68; SKAT-DWC Compl. ¶¶ 67, 72, 74.  SKAT voluntarily dismissed without prejudice the causes of action for fraud, aiding and abetting fraud, and negligent misrepresentation against the Newsong Plan.  *See* Plaintiff's Notice of Partial Voluntary Dismissal, *Skatteforvaltningen v. Newsong Fellowship Church 401K Plan*, Dkt. No. 35, 18-cv-10100-LAK (S.D.N.Y. Nov. 26, 2018).

[20] *See* Goldstein Compl. ¶ 377 ("[I]f any of the Plan's Reclaim Applications were improper, ED&F Man is responsible."); Del Mar Compl. ¶ 50 ("If SKAT establishes that Third-Party Plaintiffs are liable to SKAT to repay some or all of the withholding taxes that were refunded to the Plans or some or all of SKAT's alleged damages or amounts it claims to be owed, then ED&F Man should be responsible for such repaid withholding taxes and damages . . . ."); Newsong Compl. ¶ 82 ("If, however, SKAT proves its claims and establishes that Third-Party Plaintiffs are liable to SKAT for some or all of SKAT's alleged damages or amounts it claims to be owed, then ED&F should be responsible for such damages . . . ."); DWC Compl. ¶ 83 (same).

and the English Action.  *See* Am. Counterclaim (Goldstein) ¶ 29; Am. Counterclaim (Newsong) ¶ 29; Am. Counterclaim (DWC) ¶ 29; Am. Counterclaim (Del Mar) ¶ 13.[21]

## LEGAL STANDARD

The standards of review for motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) are "substantively identical." *Citizens Union of City of N.Y. v. Attorney General of N.Y.*, No. 16 Civ. 9592 (RMB)(KHP), 2017 WL 2984167, at *3 (S.D.N.Y. June 23, 2017) (citation and internal quotation marks omitted).  In either case, the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65 (2007); *Raila v. U.S.*, 355 F.3d 118, 119 (2d Cir. 2004).[22]

Dismissal for lack of subject-matter jurisdiction is "inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila*, 355 F.3d at 119.  Where, as here, a Rule 12(b)(1) motion is based on the pleadings, the plaintiff has "no evidentiary burden" and the task of the court is confined to determining whether the plaintiff's allegations "affirmatively and plausibly suggest" a basis for subject-matter jurisdiction.  *See John v. Whole Foods Market Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir 2016)); *see also Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 392-93 (S.D.N.Y. 2019); *Mukaddam v.*

---

[21] The Goldstein Parties profess confusion over ED&F's indemnification claim, *see* Goldstein Br. at 17-18, but the amended counterclaims leave no doubt as to what is at issue:  The amended counterclaims plainly direct the Third-Party Plaintiffs to specific indemnification provisions under which the Third-Party Plaintiffs are obliged to indemnify ED&F for, among other things, liabilities, losses or costs incurred in connection with the Custody Agreements, the Terms & Conditions, and related legal proceedings.  *See* Am. Counterclaim (Goldstein) ¶¶ 23-24, 28-29; Am. Counterclaim (DWC) ¶¶ 23-24, 28-29; Am. Counterclaim (Newsong) ¶¶ 23-24, 28-29; Am. Counterclaim (Del Mar ) ¶¶ 7-8, 12-13.

[22] For this reason, the Third-Party Plaintiffs' repeated invocation of their own pleadings in support of their motions to dismiss is improper.  *See, e.g.*, Goldstein Br. at 3, 8-10; DWC Br. at 3, 5.

*Permanent Mission of Saudi Arabia to U.N.*, 136 F. Supp.2d 257, 259-60 (S.D.N.Y. 2001)

(Kaplan, J.).

Under Rule 12(b)(6), a pleading need only state a claim that is "plausible on its face,"

*Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974, and will be held sufficient if its factual allegations

"allow[] the court to draw the reasonable inference that the defendant is liable. . . ."   *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *see also Capitol Records, Inc. v. City*

*Hall Records, Inc.*, No. 07 Civ. 6488(LTS)(KNF), 2008 WL 2811481, at *6 (S.D.N.Y. July 18,

2008) (allegations stated on "information and belief" regarding existence of oral and/or written

indemnification agreements sufficed to meet pleading standard for indemnification claim).  The

"pleading standards may be lessened somewhat for third-party claims," particularly where a

third-party claimant seeks relief in the form of "contribution or indemnity" and the third-party

claimant's allegations are "necessarily intertwined" with those of the underlying complaint.

*Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*, No. 93 CIV 3068 (WK), 1996 WL 361535, at *2

(S.D.N.Y. June 27, 1996) (citation and internal quotation marks omitted).

## ARGUMENT

### I.      The Court Has Subject Matter Jurisdiction Over The Amended Counterclaims

The Goldstein Parties and the DWC Plans seek dismissal under Rule 12(b)(1), arguing

that ED&F's counterclaims are not ripe for adjudication and will not be ripe unless and until a

judgment has been rendered against ED&F.  *See* Goldstein Br. at 19-21; DWC Br. at 1-2, 10-12.

The argument stands on an infirm premise for, as this Court has observed, courts of the Southern

District "generally permit counterclaims for indemnification to be brought under Rule 13 before

a determination of liability has been made in the underlying matter."  *In re Bank of N.Y. Mellon*

*Corp. Forex Transactions Litig.*, 42 F. Supp. 3d at 526 n.22.[23] Recognizing that the federal rules were "designed to encourage the litigation of all claims arising out of the same occurrences in the same lawsuit," courts in the Second Circuit have held that counterclaims for contribution and/or indemnification may be heard—and, for reasons of judicial economy, should be heard—in the same proceeding where primary liability is being adjudicated. *See Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 89-90 (S.D.N.Y. 1973) (rejecting plaintiffs' contention that counterclaim for contribution was "unmatured claim which cannot be asserted under Rule 13"); *see also Index Fund, Inc. v. Hagopian*, 91 F.R.D. 599, 605-06 (S.D.N.Y. 1981) (The "recent trend has been to permit counterclaims for contribution and, by implication, for indemnification, under Rule 13(a), in order to facilitate the litigation of all of the claims arising from the same occurrences in the same lawsuit."); *Atlantic Aviation Corp. v. Estate of Costas*, 332 F. Supp. 1002, 1006-07 (E.D.N.Y. 1971) ("[F]or procedural purposes a claim for indemnification is ripe for adjudication" and "may be tendered in a pending action in which primary liability is being adjudicated.").[24]  Requiring ED&F to bring its counterclaims in a separate proceeding would constitute a needless waste of judicial resources and would run counter to the efficient consolidation of proceedings under this MDL.[25]

---

[23] Contrary to the suggestion of the DWC Plans, *see* DWC Br. at 12 n.11, the Second Circuit has held that the mere fact that liability may be contingent will not defeat jurisdiction in a declaratory judgment action if there is a "practical likelihood that the contingencies will occur." *Associated Indem. Corp v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citation and internal quotation marks omitted).

[24] In *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306 (2d Cir. 1985), the Second Circuit Court of Appeals cited to all three of these decisions—*Lynch*, *Hagopian* and *Atlantic Aviation*—with apparent approval. *See Peter Fabrics*, 765 F.2d at 312.

[25] In *Kane v. Magna Mixer Co.*, 71 F.3d 555 (6th Cir. 1995), the Sixth Circuit held that a counterclaim for indemnification was not only permitted but compulsory, explaining that the assertion of the counterclaim in a separate lawsuit would "result in piecemeal litigation and a waste of judicial resources, and possibly lead to inconsistent results."  *See Kane*, 71 F.3d at 562.

Moreover, the Goldstein Parties and the DWC Plans ignore the fact that ED&F has already incurred significant litigation costs in both the MDL and the English Action, costs which the Third-Party Plaintiffs are contractually obliged to indemnify "on demand." Custody Agreement §§ 14(b), 16(a). There is nothing contingent or speculative about these expenses, which include the ever-mounting costs of responding to SKAT's discovery requests in the MDL. As the Goldstein Parties and the DWC Plans well know, such costs have been, and continue to be, incurred. For this reason, too, their motions to dismiss under Rule 12(b)(1) are not well-founded and should be dismissed in full.

## II.  ED&F's Amended Counterclaims Are Not Precluded By Contract Or By Law

The Third-Party Plaintiffs further contend that ED&F's indemnification claims are barred by Section 16(b) of the Custody Agreements, which restricts the contractual indemnity to losses, costs or liabilities that do not arise from ED&F's own "wilful default, fraud or negligence." The Third-Party Plaintiffs maintain that this provision swallows ED&F's indemnification counterclaims whole, arguing that ED&F will never sustain indemnifiable losses on anything less than a finding of intentional or negligent wrongdoing and, therefore, that there is "no scenario" under which ED&F's counterclaims for indemnification will not be contractually foreclosed. *See* Goldstein Br. at 24-26; DWC Br. at 12-15; Del Mar Br. at 6, 8-11.[26] The Goldstein Parties and the Del Mar Plans additionally argue, for similar reasons, that there is "no situation" in which ED&F's counterclaims for indemnification will not be foreclosed as a matter of common law. Goldstein Br. at 21-23; Del Mar Br. 6-8.[27] These arguments fail because they

---

[26] *See also* Goldstein Br. at 23; DWC Br. at 2 (asserting that "[a]ll of the claims against ED&F in these proceedings and SKAT's related action in the United Kingdom are based on ED&F's own intentional and/or negligent misconduct."), 5-6, 12, 15.

[27] The Goldstein Parties' reliance on this Court's ruling in *Amusement Indus., Inc. v. Stern* is misplaced, *see* Goldstein Br. at 23, among other things because there was no contractual indemnification in that case and,

rest on a fundamental misunderstanding of the claims asserted against ED&F and also of the

Third-Party Plaintiffs' indemnification obligations with respect to those claims.

First, the Third-Party Plaintiffs overlook the fact that ED&F will be entitled to

indemnification for the costs of its defense—including litigation expenses and attorneys' fees

incurred—if it prevails in the English Action.  Such costs plainly arise "in connection with" the

Custody Agreements and/or ED&F's obligations under the Custody Agreements, Custody

Agreement § 16(a)(i), and are among the kinds of expenses routinely held subject to

indemnification by New York courts.  *See Peter Fabrics*, 765 F.2d at 316 ("Legal fees and

expenses incurred in defending an indemnified claim . . . .fall squarely within the obligation to

indemnify" and are "presumed to have been the intent of the draftsman unless the agreement

explicitly says otherwise.").  ED&F will also be entitled to indemnification for litigation costs

and attorneys' fees if it prevails against the Third-Party Plaintiffs here in the MDL.  It is

undisputed that the Third-Party Plaintiffs' indemnification obligations under the Custody

Agreements (and the Terms & Conditions) are to be construed under English law; as a result,

these indemnification obligations should be "interpreted as encompassing the English rule that

the prevailing party may recover its attorneys' fees."  *See Katz v. Berisford Int'l PLC*, No. 96

Civ. 8695(JGK), 2000 WL 959721, at *7-9 (S.D.N.Y. July 10, 2000); *see also Csaky v. Meyer*,

No. 94 Civ. 8117 (JSM), 1995 WL 494574, at *2 (S.D.N.Y. Aug. 18, 1995) (under "English

Rule," there is "strong presumption in favor of payment of the prevailing party's attorneys' fees

by the loser").[28]  Even under New York law, the terms of the indemnification provisions here are

---

moreover, because the third-party plaintiff's demand for indemnification was expressly conditioned on a finding of his own liability.  *See Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 325-27 (S.D.N.Y. 2010).

[28] In *Hooper*, the New York Court of Appeals required an "unmistakably clear" showing of intent in order to enforce a "promise by one party to a contract to indemnify the other for attorneys' fees," explaining that such a promise would be "contrary to the well-understood rule that parties are responsible for their own attorney's fees."  *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989).  However, the *Hooper* presumption against

fully expansive enough to allow this Court to at least "plausibly infer" an intent to provide for indemnification of ED&F's litigation costs and attorneys' fees incurred in defending against the Third-Party Plaintiffs' claims.  *See Gramercy Advisors, LLC v. Coe*, No. 13-CV-9069 (VEC), 2014 WL 4197370, at *5 (S.D.N.Y. Aug. 25, 2014)*; see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 178-79 (2d Cir. 2005) (contractual indemnification for attorneys' fees "arising, growing out of, or otherwise connected with any activity under this Agreement" held sufficiently broad to cover attorneys' fees incurred in interparty litigation).[29]  In short, and contrary to the assertions of the Third-Party Plaintiffs, the indemnification obligations of the Third-Party Plaintiffs are not predicated exclusively on a finding of liability against ED&F, but also include a duty to reimburse ED&F for litigation costs and attorneys' fees should ED&F prevail against SKAT in the English Action or against the Third-Party Plaintiffs themselves in the MDL.[30]

Second, as noted above, ED&F has incurred—and continues to incur—significant costs in responding to the discovery requests propounded by SKAT in this MDL.  These discovery-related expenses fall within the scope of the Third-Party Plaintiffs' indemnification obligations and are independent of the Third-Party Plaintiffs' own claims against ED&F.  That the Third-Party Plaintiffs have sought to implead ED&F in this action does not divest them of their indemnification obligations with respect to discovery costs incurred by ED&F in responding to

---

reimbursement of an opposing party's attorneys' fees must necessarily work the other way around where, as here, the agreement is subject to English law and, therefore, the "English Rule."

[29] In *Gramercy Advisors, LLC v. Coe*, No. 13-CV-9069 (VEC), 2015 WL 13780603 (S.D.N.Y. Apr. 17, 2015), the Southern District considered an agreement which, like the Custody Agreements and the Terms & Conditions here, included both an exclusion of liability and a broad indemnification clause.  *See Gramercy Advisors*, 2015 WL 13780603, at *3.  Taking these provisions together, the *Gramercy Advisors* court concluded that the "only reasonable reading" was that, if the indemnitor were to sue the indemnitee "for something other than willful misconduct," it "would be forced to indemnify [the indemnitee] for the lawsuit."  *Id.*

[30] The Third-Party Plaintiffs are, moreover, expressly obliged to reimburse ED&F for any legal fees incurred by ED&F "in connection with" the Custody Agreements.  Custody Agreement §§ 1.1, 14(b).

SKAT's discovery requests in connection with its action against the Third-Party Plaintiffs. Indeed, if ED&F had been sued directly by SKAT in the MDL, and ED&F had cross-claimed against the Third-Party Plaintiffs, "there would have been no question about the applicability of the indemnity provision." *See Peter Fabrics*, 765 F.2d at 314. The "result should be no different" merely because ED&F was not named as a primary defendant, *see id.*, and the same would be true if ED&F had been required to produce documents pursuant to a subpoena without ever having been impleaded as a third-party defendant.

Third, the Third-Party Plaintiffs have asserted numerous causes of action against ED&F that require no finding of intentional, negligent or otherwise tortious wrongdoing.[31] These claims fall within the terms of the contractual indemnification, because the exclusionary language of Section 16(b)—"wilful default, fraud or negligence"—is the language of tort. *See In re Lehman Bros. Holdings, Inc.*, 602 B.R. 564, 590-91 (Bankr. S.D.N.Y. 2019) (simple breach of contract does not constitute "willful default" under English law, which entails culpable state of mind consistent with knowing or reckless misconduct). Thus, any losses, costs or liabilities arising from the Third-Party Plaintiffs' contract-based claims—for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel—are fully indemnifiable. *See AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 11 N.Y.3d 146, 155 (2008) (finding breach of contract claim subject to release notwithstanding exclusion based on "negligence, bad faith, or willful misconduct"); *Ciocca v. Neff*, No. 02Civ.5067(LTS)(HBP),

---

[31] The Third-Party Plaintiffs seek to elide this fact, asserting repeatedly—and incorrectly—that all of their claims turn on intentional or negligent misconduct by ED&F. *See* DWC Br. at 2 ("All of the claims against ED&F in these proceedings and SKAT's related action in the United Kingdom are based on ED&F's intentional and/or negligent misconduct."), 6 ("[A]ny judgment against ED&F in this action and in the English Action will necessarily result from ED&F's own negligent misconduct."), 12 ("[A]ny possible liability or loss incurred by ED&F can only be due to its own negligence at a minimum . . . ."), 15 ("[T]he allegations against ED&F in the English Action and in these proceedings are based on ED&F's own negligence and/or fraud.").

2005 WL 1473819, at *6 (S.D.N.Y. June 22, 2005) ("Promissory estoppel sounds in contract theory.").[32]  Similarly, the causes of action for unjust enrichment (asserted by the DWC and Del Mar Plans) require no finding of wrongdoing and, therefore, are subject to indemnification, even on the Third-Party Plaintiffs' reading of Section 16.  *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) (unjust enrichment typically available where defendant, "though guilty of no wrongdoing, has received money to which he or she is not entitled"); *see also In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325-26 (S.D.N.Y. 2019) (noting that "plaintiff's claims for fraud and negligent misrepresentation theoretically could fail and it still could prevail on the unjust enrichment claim").[33]

Fourth, the Third-Party Plaintiffs misapprehend the nature of the English Action.  In that proceeding, SKAT is pursuing two parallel theories of liability against ED&F, the first based on alleged negligent misrepresentation and the second based on alleged unjust enrichment.  *See* Re-Amended Schedule 5T") ¶¶ 2, 15-22, 23-25.[34]  The High Court could reject the claim for negligent misrepresentation and nevertheless find that ED&F is obliged, on a theory of unjust enrichment, to return fees earned in connection with the disputed transactions, even absent any finding of intentional or negligent wrongdoing.  *See Banque Financiere de la Cite v. Parc (Battersea) Ltd. & Ors.* [1998] UKHL 7 (Lord Hutton) ("[F]or a plaintiff to establish that it

---

[32] *See also Emamian v. Rockefeller Univ.*, 07 Civ. 3919 (DAB), 2018 WL 1010623, at *2-3 (S.D.N.Y. Feb. 21, 2018) (contrasting a "cause of action that lies in tort (negligence) with one that lies in contract (promissory estoppel)").

[33] The Third-Party Plaintiffs argue that the mere existence of inaccuracies in the Annex E Tax Vouchers is dispositive evidence of tortious misconduct on the part of ED&F.  But the question of ED&F's culpability—if any—for the inaccuracies in the Annex E Tax Vouchers remains unadjudicated, and ED&F has not admitted to any tortious wrongdoing.  Indeed, the fact that the Third-Party Plaintiffs have asserted non-tort claims against ED&F belies any suggestion that the inaccuracies in the Annex E Tax Vouchers "necessarily" establish tortious misconduct.  *See* Del Mar Br. at 1-2, 8.

[34] The DWC Plans misleadingly conflate the negligent misrepresentation and unjust enrichment theories of liability, incorrectly suggesting that SKAT's claim for unjust enrichment is necessarily premised on allegations of negligent misrepresentations by ED&F.  *See* DWC Br. at 4, 5-6, 15.

would be unjust for the defendant to keep the benefit which he had gained at the expense of the plaintiff, the plaintiff does not need to prove that the defendant was guilty of misconduct.").[35] ED&F disputes that it has been unjustly enriched, but were the High Court to find unjust enrichment in the absence of any misconduct, ED&F would be entitled to indemnification under Section 16 for all of its losses, costs and liabilities associated with the English Action.

Finally, as alleged in the amended counterclaims, ED&F executed all of the transactions at issue here at the specific direction of the Third-Party Plaintiff Plans (either directly or through their authorized agent).  Am. Counterclaim (Goldstein) ¶¶ 8, 17-18, 21-22; Am. Counterclaim (DWC) ¶¶ 8, 17-18, 21-22; Am. Counterclaim (Newsong) ¶¶ 8, 17-18, 21-22; Am. Counterclaim (Del Mar) ¶ 6.  Under the express terms of the Custody Agreements, ED&F cannot be held liable to the Third-Party Plaintiffs for adhering in good faith to the instructions given to it or for relying on the requests or documents of the Third-Party Plaintiffs.  *See* Custody Agreement § 13(b)(iv).  As a matter of common law, too, ED&F is entitled to indemnification for any amounts it may be required to pay to SKAT in the English Action as a result of ED&F's good-faith adherence to the Third-Party Plaintiffs' instructions.  *See Taeschner v. M & M Restorations, Ltd.*, 295 A.D.2d 598, 600 (2d Dep't 2002) ("Common-law indemnification is warranted where a defendant's role in causing the plaintiff's injury is solely passive, and, thus, its liability is purely vicarious.").

### III.     Proximate Cause Considerations Do Not Preclude Indemnification

The Goldstein Parties alone argue that their contractual obligation to indemnify ED&F cannot extend to an adverse judgment in the English Action because any such judgment, according to the Goldstein Parties, would necessarily rest on trades executed by or on behalf of

---

[35] A copy of *Banque Financiere de la Cite v. Parc (Battersea) Ltd. & Ors.* [1998] UKHL 7 is attached as Exhibit N to the Declaration of Neil S. Binder.

"dozens of other pension plans" in addition to the Goldstein Plan.  Goldstein Br. at 27-29.
Relying on a trio of wholly inapposite English decisions, the Goldstein Parties appear to argue
that their own dividend arbitrage transactions cannot be the "proximate cause" of any adverse
judgment in the English Action, inasmuch as SKAT's claims against the Goldstein Parties
represent just a small fraction—"less than 2%"—of SKAT's total claimed damages in that
action.  Goldstein Br. at 1, 7, 28.[36]  In effect, the Goldstein Parties ask this Court to establish a *de
minimus* exemption excusing them from their indemnification obligations.

The argument is meritless.  The Goldstein Parties could not avoid their duty to indemnify
ED&F even if their indemnification obligation amounted to a small percentage of SKAT's total
claimed losses (or ED&F's total indemnifiable losses) in the English Action.  ED&F is entitled
to indemnification from the Goldstein Parties for, at the very least, any portion of any adverse
judgment in the English Action—or any costs of defense incurred in the English Action—that
may be attributable to the Goldstein Parties' transactions, and the Goldstein Parties have cited no
authority to the contrary.[37]

---

[36] In each of the cases relied upon by the Goldstein Parties, the issue of proximate causation arose due to peculiar
factual circumstances not present here.  In *Petroleo Brasileiro*, the issue of proximate causation was examined
because the indemnification clause at issue—unlike the indemnification provisions here—applied by its terms only
to "consequences or liabilities" arising from compliance with orders issued by the ship's charterers or their agents.
*Petroleo Brasileiro S.A. v. E.N.E. Kos 1 Ltd.* [2012] UKSC 17 ¶¶ 8, 35-56 (May 2, 2012).  It was this language that
"raise[d] a question of causation."  *See id*. at ¶ 37.  Similarly, the *Handelsbanken* case addressed a scenario in which
an insured suffered loss as a result of two "rival causes," only one of which was covered under the policy, which
would require the court to determine "whether one of the causes is plainly the proximate cause of the loss."
*Handelsbanken v. Dandridge* [2002] EWCA Civ 577 ¶¶ 46-48 (Apr. 30, 2002).  Finally, in *The White Rose*, an
indemnity claim failed because there was not a necessary causal connection between a stevedore's injury and the
order to load the ship.  *See White Rose* [1969] 1 WLR 1098, 1106-08; *see also Petroleo* ¶¶ 44-47.  None of these
decisions suggests that an indemnitor cannot be held responsible for, at the very least, its proportionate share of an
indemnified loss.

[37] The Goldstein Parties argue that ED&F has asserted no basis for seeking indemnification from Sheldon Goldstein
individually, Goldstein Br. at 33, but it was Sheldon Goldstein who signed the acknowledgment that he had "read
and understood" the Terms & Conditions, including the indemnification provision therein, *see* Am. Counterclaim
(Goldstein) ¶ 27, Ex. 3, and the Custody Agreement was entered by the Goldstein Plan for the benefit of Sheldon
Goldstein.  *See* Custody Agreement, attached as Exhibit A to the Declaration of Neil S. Binder.

**IV.    ED&F's Counterclaims Are Consistent With Its Pleadings In The English Action**

Finally, the Goldstein Parties, again alone, purport to have found an inconsistency between ED&F's pleadings here and its pleadings in the English Action.  *See* Goldstein Br. at 10-11, 14-16 (claiming that ED&F's pleadings "cannot both be true" and asking that ED&F's pleadings in this proceeding be accorded "no weight at all").  Specifically, the Goldstein Parties take issue with ED&F's allegation that the "trading structures" underlying the Goldstein Parties' transactions in Danish securities originated not with ED&F but with Acer and/or its principal, Stacey Kaminer.  *See* Am. Counterclaim (Goldstein) ¶¶ 7, 10-13, 16-17; Goldstein Br. at 10, 15.[38]  The Goldstein Parties claim that these allegations are somehow contrary to ED&F's pleadings in the English Action wherein—according to the Goldstein Parties— ED&F asserted that it facilitated dividend arbitrage trades as early as 2012, "two years before the Goldstein Plan ever engaged in any Danish Arbitrage Transactions."   Goldstein Br. at 10-11, 15.

There is no inconsistency, and the Goldstein Parties' allegation to the contrary rests on a plain misreading of ED&F's pleadings.  Paragraph 10 of the Amended Defence is of course addressed to trading in Danish securities, but the services outlined in Paragraph 10 are not exclusive to trading in Danish securities.  To the contrary, Paragraph 10 sets forth in broad outline the standard brokerage, custody and settlement services which ED&F provided to all of its clients when effectuating their various dividend arbitrage strategies.  *See* Am. Def. ¶ 10.[39] Paragraph 10 thus describes the generic framework under which various clients' specific trading

---

[38] SKAT alleges that Acer "determined which Danish security and the number of shares that would be listed" in the tax vouchers used to support withholding tax refund applications submitted by the Goldstein Plan and "directed" ED&F to take actions in connection with the "creation and submission" of the tax vouchers.  *See* SKAT-Goldstein Compl. ¶¶ 61-62.

[39] As the Goldstein Parties acknowledge, dividend arbitrage trading strategies are "legal and routine" in the United States.  Goldstein Compl. ¶ 90(b).

structures were implemented, but it does not purport to describe the specific trading structures themselves, including the trading structures communicated to ED&F by the Goldstein Plan through its authorized agent, Acer.[40]  ED&F has never alleged that the standard brokerage services outlined in Paragraph 10 were the brainchild of any of the Third-Party Plaintiffs, nor has ED&F alleged that the general practice of dividend arbitrage trading "originated" with any of the Third-Party Plaintiffs.  Rather, what ED&F alleges in its amended counterclaims is simply that the Third-Party Plaintiffs conceived and designed specific dividend arbitrage trading strategies and structures with respect to Danish securities, communicated these strategies and structures to ED&F, and directed ED&F to execute them.[41]

## CONCLUSION

For the foregoing reasons, ED&F respectfully requests that this Court deny the Third-Party Plaintiffs' motions to dismiss ED&F's amended counterclaims.    However, should the Court decide to grant the Third-Party Plaintiffs' motions to dismiss in whole or in part, ED&F respectfully requests leave to further amend its counterclaims.

---

[40] In support of their contention that a party's pleadings may be dismissed for inconsistency with pleadings in a separate proceeding, the Goldstein Parties cite to one inapposite decision after another.  The case of *Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007), for example, stands simply for the proposition that a plaintiff's allegations about the contents of a document need not be credited when the actual contents of that document are to the contrary. *See Roth*, 489 F.3d at 510-11.  In *Ades v. Deloitte & Touche*, No. 90 Civ. 4959(RWS), 1993 WL 362364 (S.D.N.Y. Sept. 17, 1993), Judge Sweet merely observed that the court could take notice of public records—such as SEC filings—on a motion to dismiss.  *See Ades*, 1993 WL 362364, at *8.  The other decisions cited by the Goldstein Parties involve instances where a plaintiff's pleadings were found to be *internally* contradictory or at odds with the plaintiff's own proffered evidence in the same proceeding.  *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ. 318(RJS), 2009 WL 2242605, at *26 (S.D.N.Y. July 27, 2009) (court not obligated to accept truth of plaintiff's inconsistent allegations); *Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276(DLC), 2004 WL 829158, at *7 (S.D.N.Y. Apr. 15, 2004) (dismissing defamation claim brought by plaintiff who admitted in his own pleadings that allegedly defamatory statements were true); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 367-68 (S.D.N.Y. 2005) (psychiatric patient introduced evidence that refuted any suggestion that defendants exerted improper influence over her involuntary psychiatric admission); *In re Richartz, Fliss, Clark & Pope, Inc.*, No. 10-03317 (MG), 2010 WL 4502038, at *3 (Bankr. S.D.N.Y. Nov. 1, 2010) (bankruptcy trustee's conclusory allegation contradicted by documentation appended to trustee's own pleadings).

[41] Nor is there any inconsistency with ED&F's allegation that the Del Mar Plans, like the Goldstein Plan, developed their own dividend arbitrage strategies and directed ED&F to execute specific transactions in furtherance of those strategies.  *See* Am. Counterclaim (Del Mar) ¶ 6.

Dated:        New York, New York
              June 9, 2020

                              Respectfully submitted,

                              **BINDER & SCHWARTZ LLP**

                    By:    /s/ Neil S. Binder
                              Neil S. Binder
                              M. Tomas Murphy
                              Binder & Schwartz LLP
                              366 Madison Avenue, 6th Floor
                              New York, NY 10017
                              Telephone:   212-510-7008
                              Facsimile:    212-510-7299
                              nbinder@binderschwartz.com
                              tmurphy@binderschwartz.com

                              *Attorneys for Third-Party Defendant / Third-*
                              *Party Counter Claimant ED&F Man Capital*
                              *Markets, Ltd.*