# Exhibit M

**Amended by Order of The Honourable Mr Justice Teare dated 6 March 2019 (as varied by Order of The Honourable Mrs Justice Cockerill dated 20 May 2019)**

Claim Nos.: CL-2018-000297; CL-2018-000404; CL-2018-000590

IN THE HIGH COURT OF JUSTICE
BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES
COMMERCIAL COURT
B E T W E E N:

**SKAT**
**(The Danish Customs and Tax Administration)**

Claimant

- and -

**ED&F MAN CAPITAL MARKETS LIMITED & OTHERS**

Defendants

---

**AMENDED DEFENCE**

---

[References to paragraph numbers and defined terms in this Amended
Defence are (save where otherwise indicated) to paragraph numbers and
defined terms in the Amended Particulars of Claim ("POC")]

**OVERVIEW**

1.   This is the Amended Defence of the 69th Defendant, ED&F Man Capital Markets Limited ("**ED&F
     Man**"), to the First Claim (issued on 4 May 2018), as now consolidated with the Second and Third
     Claims (together, the "**Consolidated Claims**"), by which SKAT alleges that:

     1.1.   it was the victim of a sophisticated and extensive financial fraud which resulted in SKAT
            mistakenly paying out approximately £1.512 billion between August 2012 and July 2015 in
            respect of 4,590 WHT Applications for the refund of withholding tax ("**WHT**") payable in
            relation to shares held in Danish companies; and in particular that

     1.2.   the WHT Applications were made pursuant to a fraudulent scheme (the so-called WHT
            Scheme described at POC/49-51) perpetrated by Mr Sanjay Shah and a network of 75 further
            individual and corporate defendants related to him (the Alleged Fraud Defendants).

2.   However and for the avoidance of doubt:

2.1.    ED&F Man is not an Alleged Fraud Defendant and has no knowledge of: (1) the WHT Scheme to which it was not (and is not alleged to have been) a party; or (2) the Alleged Fraud Defendants who it is said were behind it;

2.2.    on the contrary, and as set out further below, ED&F Man's role in connection with the WHT Applications was limited to preparing a single document described as a "Tax Voucher" ("**the Tax Vouchers**"), which SKAT alleges was included in 420 of the WHT Applications (the "**Relevant WHT Applications**") on behalf of the applicants identified therein (the "**Relevant WHT Applicants**").

3.    Instead SKAT's primary case is that ED&F Man is liable to SKAT in negligence (under English law) on the grounds, in short summary, that (POC/21-24, 91-94):

3.1.    ED&F Man owed a duty of care to SKAT to take reasonable care to avoid causing SKAT loss due to inaccuracies in the Tax Vouchers;

3.2.    in respect of each of the Relevant WHT Applications, the Tax Vouchers contained representations (the so-called "**Custodian Representations**") that (inter alia) a specific number of shares in the Danish company identified therein "...*were held for the named WHT Applicant*..." (POC/21(a)) on the day before the dividend ex-date (being the date on or after which a security is traded without a previously declared dividend ("**the Ex-Date**"));

3.3.    in reliance on the Custodian Representations SKAT paid DKK582 million in respect of the Relevant WHT Applications; however

3.4.    the Custodian Representations were false principally because the Relevant WHT Applicants "...*did not own the relevant shares in the Danish companies beneficially or at all*..." prior to the Ex-Date (POC/23(a)).

4.    These allegations are unsustainable. In particular:

4.1.    no duty of care: ED&F Man owed no duty of care to SKAT in circumstances where (1) there was not a sufficiently proximate relationship between ED&F Man and SKAT; (2) ED&F Man had no involvement in the Relevant WHT Applications; and (3) ED&F Man did not assume

2

responsibility to SKAT for the contents of the Tax Vouchers which were prepared for ED&F Man's client only (and were not submitted by ED&F Man to SKAT);

4.2. <u>no misstatements</u>: with respect to the Tax Vouchers (with the exception of (1) the 9 identified at Annex A hereto ("**the Annex A Tax Vouchers**") <u>and (2) the 80 identified at Annex E hereto ("**the Annex E Tax Vouchers**")</u>) the Custodian Representations were accurate (as evidenced by the contemporaneous documentary records retained by ED&F Man in respect of the Relevant WHT Applications);

4.3. <u>no breach</u>: by reference to the same records <u>(with the exception of the Annex A Tax Vouchers)</u> ED&F Man did exercise reasonable skill and care in the preparation of the Tax Vouchers;

4.4. <u>no reasonable reliance</u>: in any event it was not reasonable for SKAT to rely on the alleged Custodian Representations in circumstances where it was SKAT, as the tax authority in Denmark with overall responsibility for processing WHT applications; yet further

4.5. <u>contributory negligence</u>: if (which is denied) SKAT has suffered loss and damages as a result of any representations made by ED&F Man, such loss was caused or contributed to by its own negligence in circumstances where its systems and procedures for managing the review and assessment of WHT reclaim applications were manifestly deficient.

**PREAMBLE TO PARTICULARS OF CLAIM**

5. As to paragraph 1 (description and legal status of SKAT):

5.1. it is admitted that until 1 July 2018 (and therefore at the time the First Claim was issued on 4 May 2018) SKAT was a function of the Danish Government and was charged with the assessment and collection of Danish taxes; however

5.2. it is not admitted (and SKAT is required to prove) that it has a legal entitlement to bring this claim against ED&F Man (SKAT having been replaced by 7 new agencies on 1 July 2018); in any event

5.3. it is denied (for the reasons set out below) that ED&F Man has committed any "*civil wrongs*" as alleged or at all.

3

6.      As to paragraph 2 (references in the <u>Amended</u> Particulars of Claim): (1) ED&F Man (the 69th Defendant to the First Claim) is (see POC/2(c)) a "Non-Fraud Defendant"; and (2) SKAT's claim against ED&F Man is supplemented by the facts and matters set out in <u>Amended</u> Schedule 5T to the <u>Amended</u> Particulars of Claim, to which ED&F Man pleads in the Schedule to this <u>Amended</u> Defence. For the avoidance of doubt ED&F Man:

6.1.    is a global financial brokerage business, authorised and regulated by the Financial Conduct Authority ("**FCA**") to provide (among other services): (1) specialised securities lending and financing services; (2) clearing and settlement for equities and fixed-income securities; and (3) custodian services for on-exchange and over-the-counter transactions;

6.2.    from 2012 and 2015, in relation to the trading of shares in companies listed on the Danish stock exchange ("**Danish Listed Companies**"), acted for 36 pension plans (the "**PPs**")[1].

**A. SUMMARY**

7.      As to paragraph 3 (SKAT's summary of its case):

7.1.    subparagraph 3 (a) (the potential refund of WHT) is admitted;

7.2.    subparagraph 3 (b) (the WHT Applications) is not admitted (being outside ED&F Man's knowledge);

7.3.    subparagraphs 3 (c) to (i) (the WHT Representations, WHT Applications and fraudulent scheme on the part of the Alleged Fraud Defendants and the claims against them) are noted but not pleaded to (as they do not concern ED&F Man);

7.4.    subparagraph 3(j) and the allegation against ED&F Man (as a Non-Fraud Defendant) of "…*negligent participation in the WHT Scheme and/or [its] receipt of the proceeds of the fraud*…" is denied for the reasons summarised above and amplified below.

**B. DEFENDANTS**

8.      Paragraph 4 (details of Defendants and alleged wrongdoing set out in Schedule 5) is noted.

---

[1] Comprising 33 United States pension plans and 3 Canadian pension plans identified in POC/Schedule 1 of which (1) 32 were direct clients of ED&F Man (see Annex B hereto); and (2) 4 were members of Gibraltarian partnerships, which were themselves clients of ED&F Man (the "**Gibraltarian Partnerships**") (see Annex C hereto).

9.      As to paragraph 5 (categorisation of Defendants) subparagraphs 5 (a) (c) and (d) are noted; and as to subparagraph 5 (b):

     9.1.      ED&F Man is (1) one of the 9 Defendants collectively described (at POC/5(b)) as "Custodians"; and (2) one of just two Non-Fraud Defendants amongst the "Custodians";

     9.2.      as to SKAT's allegation that the Custodians provided "…*"credit advice" notes (or similar)*…" (1) ED&F Man provided Tax Vouchers as set out below; and (2) pending disclosure of the "credit advice" notes allegedly provided by the other Custodians, it is not admitted that Tax Vouchers are "*similar*" to the same.

10.      The circumstances in which ED&F Man produced the Tax Vouchers were, in summary, as follows:

     10.1.      the PP's Investment Manager: by means of a power of attorney ("**the Power of Attorney**") the PP would: (1) appoint an investment manager ("**the Investment Manager**"); and (2) authorise the Investment Manager (inter alia) to take all actions required to conduct trading in equities and/or other financial instruments and to reclaim any deducted taxes in the name of and on behalf of the PP;

     10.2.      the Declaration Date: from time to time each of the Danish Listed Companies would make a "Declaration" ("**the Declaration Date**") as to the gross dividend rate and payable currency in relation to specified shares, which Declaration Date would be published by Bloomberg approximately one month prior to the reference date on which the holder of a dividend-bearing share has the right to receive a dividend ("**the Reference Date**");

     10.3.      the Dividend Window: the period between the Declaration Date and the Reference Date would give rise to a window ("**the Dividend Window**") in which the PP could acquire the shares in respect of which the dividend was payable ("**the Security**");

     10.4.      the PP's acquisition and sale of the Security:
          10.4.1.      on a date on or prior to the Reference Date ("**the Trade Date**"), ED&F Man would (1) (upon instruction from the PP's Investment Manager) purchase the Security by means of an over-the-counter transaction; ~~or (2) acquire the Security pursuant to an industry standard stock lending arrangement known as the Global Master Securities Lending Arrangement ("the GMSLA");~~ (3) on a principal to principal basis, on sell

the Security to the PP; and (4) enable the PP to enter into a transaction to hedge the risk of adverse market movements in the value of the Security ("**the Hedge**"); alternatively

10.4.2.  on the Trade Date, the PP would recall the Security from ED&F Man by way of redelivery of equivalent securities pursuant to ED&F Man's obligation to replace securities provided by the PP to ED&F Man as financial collateral ~~the terms of a GMSLA~~;

10.4.3.  from the Trade Date (and pursuant to (1) a Custody Agreement ("**the Custody Agreement**") (utilising the client securities and cash accounts defined therein (together "**the Custody Account**")); and (2) a Security and Set Off Deed ("**the Security and Set Off Deed**"), entered into between each of PP and ED&F Man at the inception of their relationship), ED&F Man would (1) hold the Security as a bare trustee on behalf of the PP in the Custody Account; and (2) hold a charge over the Security and the Custody Account; accordingly

10.4.4.  on the Reference Date, which would fall at least one day after the Trade Date, ED&F Man would hold the Security as a bare trustee on behalf of the PP in the Custody Account;

10.4.5.  on an agreed date after the Trade Date ("**the Settlement Date**"), ED&F Man would ~~(1)~~ pay for the Security on behalf of the PP (and debit the PP's Custody Account in that sum); and (~~2~~1) on-sell ~~or loan~~ the Security on behalf of the PP or (2) exercise its right to use and dispose of the Security in discharge of the PP's obligation to make payment (and credit the PP's Custody Account accordingly);

10.5.  the dividend Pay Date: shortly after the Settlement Date (1) the Danish company would pay the dividend net of WHT in respect of the Security ("**the Pay Date**"); (2) ED&F Man would receive payment of the dividend into a general account held in the name of ED&F Man (and administered by its sub-custodian BNP Paribas) which recorded transactions relating to multiple clients ("**the Omnibus Account**"); and (3) ED&F Man would credit the relevant amount of the dividend net of WHT to the PP's Custody Account:

10.6.  the WHT reclaim: (1) shortly after the Settlement Date ED&F Man would produce a Tax Voucher and send the same to the Investment Manager; (2) a tax reclaim agent would submit the Tax Relief Form to SKAT; and (3) upon acceptance of the application (typically a few weeks after the Settlement Date) (a) SKAT would credit the amount of the WHT to the reclaim agent; (b) the reclaim agent (after deducting its fees) would credit the Omnibus Account; and (c) ED&F Man would credit the PP's Custody Account.

11.  As to the nature and content of the Tax Voucher produced by ED&F Man:

11.1.  it contained information in 11 information categories as set out in the following format:

|    | Information category | Information supplied |
|----|----------------------|---------------------|
| 1  | Security Description | Name of Danish Listed Company |
| 2  | ISIN | Identification of International Securities Identification Number |
| 3  | SEDOL | Identification of Stock Exchange Daily Official List number |
| 4  | Ex Date | Date supplied |
| 5  | Record Date | Date supplied |
| 6  | Pay Date | Date supplied |
| 7  | Quantity | Specification of number of Danish shares |
| 8  | Gross Div Rate | Dividend rate applicable per share |
| 9  | Amount Received | Amount received by way of dividend |
| 10 | WHT Suffered | Amount withheld by way of withholding tax |
| 11 | WHT % | Percentage rate (27%) of withholding tax applied |

11.2.  it confirmed (in the circumstances summarised at paragraph 10 above):

11.2.1.  (in 380 of the 420 Tax Vouchers) that the PP "…*was holding…*" the security (identified in entries 1, 2, 3 and 7) "…*over the dividend date…*";

11.2.2.  (in the 40 Tax Vouchers where ED&F Man's direct client was a Gibraltarian Partnership), that (1) the Gibraltarian Partnership "*held*" the security (identified in entries 1, 2, 3 and 7) "*over dividend date*" for the PP; and (2) the PP was the "*beneficial owner*" of the security (the "**GP Tax Vouchers**");

11.3.  it (1) stated that ED&F Man (a) had "*no beneficial interest*" in the security; and (b) "…*will not be reclaiming…*" the WHT; (2) stated that the dividend (identified in entry 9) was paid to (or received by) the PP (or Gibraltarian Partnership) net of the WHT (identified in entry 10); and (3) was signed on behalf of ED&F Man by one or two authorised signatories.

7

**C. DIVIDEND WHT REGIME**

12.   Paragraph 6 (description of withholding tax) is admitted.

13.   Paragraphs 7 and 8 (Danish tax law provisions) are not admitted: ED&F Man does not hold itself out
as a tax adviser and had no knowledge at any material time of the provisions of Danish law relating
to withholding tax.

14.   As to paragraph 9 (double taxation treaty provisions), at the time of preparing the Tax Vouchers (all
of which related to shares held by PPs in Danish companies) ED&F Man was aware that:

14.1.   there existed double taxation treaties between (1) Denmark and the United States; and (2)
Denmark and Canada, the effect of each of which was that the PPs were not subject to any
tax by the Danish tax authority on dividends received in respect of shareholdings held in
Danish companies;

14.2.   as a result, PPs could submit a claim to the Danish tax authority for a refund of the totality of
all such withholding tax paid in respect of such dividends; however

14.3.   save as set out above, ED& Man does not plead to the existence and effect of the alleged
double tax treaties between Denmark and (1) Malaysia, (2) the United Kingdom or (4)
Luxembourg as set out at POC/9(b), (d) and (e).

15.   Paragraph 10 (the requirements of Tax Relief Form) is admitted. For the avoidance of doubt the Tax
Relief Form makes clear that the key declaration as to beneficial ownership is made (1) in the Tax
Relief Form itself (in the first prominent entry "*Beneficial Owner*"); and (2) by (or on behalf of) the
person claiming the WHT refund.

16.   Paragraphs 11 (signature of the Tax Relief Form) and 12 (payment of the WHT) are admitted.
However and for the avoidance of doubt ED&F Man (1) did not sign any of; and (2) had no
involvement in the completion of, the 420 Relevant WHT Applications.

**D. WHT APPLICATIONS**

17.   Save that between approximately August 2012 and April 2015 ED&F Man prepared 420 Tax
Vouchers (1) on behalf of 36 PPs; (2) which were submitted to the PPs' Investment Managers,

8

paragraphs 13 (time period of SKAT's claim) and 14 (identity of WHT Applicants) are not admitted. However (and for the avoidance of doubt):

17.1.    ED&F Man infers from Schedule 1 but does not know that the Investment Managers submitted Tax Vouchers to tax reclaim agents as follows:

| No | Tax reclaim agent | No of Tax Vouchers |
|---|---|---|
| 1 | Acupay | 16 |
| 2 | Global | 266 |
| 3 | Globe Tax Securities Incorporated Limited ("GTS") | 4 |
| 4 | Goal | 134 |
| Total | | 420 |

17.2.    ED&F Man notes that (1) the definition of Agents in POC/5(a) does not include GTS; (2) SKAT makes no claim at all against (a) GTS; or (b) (under English or Danish law) no claim against Global (save in relation to 35 of the 266 Relevant WHT Applications submitted by Global as set out in Amended Schedule 5P (paragraph 5) and Schedule 5P1); accordingly (3) SKAT advances no claims in English or Danish law against the reclaim agents which (it is alleged) submitted 270 235 of the 420 (64 56%) Relevant WHT Applications.

18.    As to paragraph 15 (extent of withholding tax claim relating to US, Canada and Malaysia), it is admitted that the Tax Vouchers prepared by ED&F Man on behalf of the PPs which were its clients were in respect of all the tax withheld.

19.    Paragraph 16 (extent of withholding tax claim relating to United Kingdom and Luxembourg) is not admitted.

20.    As to paragraph 17 (documentary content of each WHT Application), the actual documents comprising each Relevant WHT Application are not admitted. Paragraph 15 above is repeated.

21.    As to paragraph 18 (identity of Danish companies), the Relevant WHT Applications were made in relation to shareholdings in 16 of the Danish Listed Companies.

### E. THE WHT REPRESENTATIONS

22.    In Section E SKAT purports to set out: (1) the representations allegedly made by the Agents (the so-called "Agent Representations") and the Custodians (the so-called "Custodian Representations"); and (2) the falsity of such representations. However SKAT's case against ED&F Man in this regard is obscurely pleaded and difficult to comprehend given that:

9

22.1.   the Agent Representations (POC/19) and the Custodian Representations (POC/21) are materially different (the Agent Representations alleging that the WHT Applicant was "...*the beneficial owner*..." of the Danish shares and "...*had beneficially received the dividend*..."; whilst the Custodian Representations contain no allegation in relation to beneficial ownership and dividend receipt); yet

22.2.   for the purposes of the allegation of falsity, the representations are treated collectively and without differentiation as the "WHT Representations" (POC/22 and 23) relying on the same particulars of falsity (POC/23(a) - (d)); further

22.3.   in the case of ED&F Man and the fourth Custodian Representation (to the effect that "...*the Credit Advice Note was an honest and accurate statement of the facts set out therein*...") (POC/21(d)) SKAT's case against ED&F Man (as clarified in its Response to Request for Further Information dated 31 May 2019 ("**SKAT RFI Response**")) is that "...*the Tax Vouchers were inaccurate (but not dishonest)*..." (Response 2)); yet

22.4.   the alleged grounds for inferring falsity (POC/ 24) are pleaded generically and without distinction between (1) the Agent Representations and the Custodian Representations; and (2) the (very different) positions of (a) ED&F Man and (b) the Alleged Fraud Defendants.

### E1. The Agent Representations and the Custodian Representations

23.   ED&F Man does not plead to paragraphs 19 and 20 (the Agent Representations) in circumstances where paragraph 92(f) alleges that ED&F Man (as one of the Non-Fraud Custodians) only made the Custodian Representations.

24.   As to paragraph 21 (the Custodian Representations (POC/21)):

24.1.   the representations (if any) made by the Tax Vouchers fall to be construed in context and objectively according to their effect on a reasonable representee in the position and with the characteristics of the actual representee. Yet SKAT would (or should) have known the following matters:

24.1.1.   ED&F Man: (1) provided custody services to its clients in relation to shares held in companies domiciled across multiple jurisdictions and subject to numerous different

10

tax regimes; but (2) did not hold itself out as a tax adviser; and (3) was not qualified to advise on (a) the legal or beneficial ownership of security held in a Danish company under Danish law; or (b) the relevant double taxation treaty;

24.1.2.  the Tax Voucher (1) was addressed by ED&F Man to its client only, and not to SKAT; and (2) (save for the GP Tax Vouchers) did not address the question of the PP's beneficial ownership of the security; by contrast

24.1.3.  the Tax Relief Form, which was submitted by or on behalf of the PP (1) was addressed to SKAT; and (2) did contain the PP's declaration as to beneficial ownership of the security; further

24.1.4.  the concept of beneficial ownership was at the material time (and remains) legally uncertain in Danish law because: (1) historically Danish law did not distinguish between legal and beneficial ownership (a common law concept unfamiliar to Danish law); and (2) the Danish Supreme Court had not (and still has not) determined the meaning of the concept; and

24.1.5.  as the tax authority in Denmark with overall responsibility for processing WHT applications, SKAT was responsible for determining the beneficial ownership of shares held in Danish companies (which included publishing non-binding opinions in Danish on its website in relation to this issue);

24.2.  in the premises, it is denied that the Tax Vouchers contained the Custodian Representations:

24.2.1.  the Relevant WHT Applications did not contain *any* representations by ED&F Man to SKAT;

24.2.2.  such representations as the Relevant WHT Applications contained were made by (1) the tax reclaim agents which submitted the Relevant WHT Applications; and/or (2) the entity described as the "*beneficial owner*" on the Tax Relief Form, on whose behalf the Relevant WHT Applications were submitted;

24.2.3.  the Tax Vouchers (1) did not contain any separate or freestanding representations to SKAT; and (2) (save for the GP Tax Vouchers) did not contain any statement as to the beneficial ownership of the securities described in the Tax Vouchers.

25.  Paragraph 22 (definition of WHT Representations) is noted: paragraph 22.2 above is repeated.

**E2. Falsity of the WHT Representations**

26.  Paragraph 23 (falsity of WHT Representations) is denied in circumstances where:

26.1.  (as noted above) the allegations of falsity applicable to ED&F Man (POC/23(a)-(c)) do not correspond to the Custodian Representations allegedly made by ED&F Man (POC/21(a)-(c));

26.2.  it is not alleged that ED&F Man made any representation as to the beneficial ownership of shares and beneficial receipt of dividends described in the Tax Vouchers; and for the avoidance of doubt (and save in relation to the GP Tax Vouchers) (1) ED&F Man did not; and (2) SKAT could not reasonably have believed that it did, make any such representations; in any event

26.3.  the Custodian Representations (if made, which is denied) were true in circumstances where (with the exception of the Annex A and Annex E Tax Vouchers) the ED&F Man Records (as defined at subparagraph 27.5 below) confirmed that:

26.3.1.  the PP (or the Gibraltarian Partnership on its behalf) *was* holding the security (identified at entries 1, 2, 3 and 7) on the Reference Date;

26.3.2.  the PP (or the Gibraltarian Partnership on its behalf) *had* received the dividend (identified at entry 9) on the security; and

26.3.3.  the dividend *had* been received by the PP (or by the Gibraltarian Partnership on its behalf) net of WHT (identified at entry 10).

27.  As to paragraph 24 (grounds for inferring falsity of WHT Representations):

27.1.  in circumstances where (1) ED&F Man is not an Alleged Fraud Defendant; (2) ED&F Man was not a party to and had no knowledge of the WHT Scheme; and (3) (so far as ED&F Man understands the same) these subparagraphs do not contain allegations against ED&F Man, ED&F Man does not plead to: subparagraphs 24(b)(ii)(B) (the 6 individuals involved in WHT Scheme); 24(d) (Agents' payments to SCP); 24(e) and (f) (the BaFin Report); 24(e1) (the

Solo Model); 24(g) (same day Credit Advice Notes for same company); 24(h) (facts relating to WHT Scheme); 24 (i) (ii) (B) and (C) ("*circular transactions*" created by the Alleged Fraud Defendants); 24 (i) (iii) (A) to (F) ("*sham transactions*" manufactured by the Alleged Fraud Defendants);    24(i)(iv)(A) (trading of same shares multiple times around Ex-Date); and 24(i)(iv)(B)(i) and (ii) (WHT Applicant not the "*beneficial owner of the shares*");

27.2.    subparagraph 24(a) (substantial increase in WHT refund applications from August 2012 to July 2015) is not admitted. In any event it is not admitted that there is any correlation between (1) the matters pleaded in subparagraphs 24 (a) (i) to (iv) (if true); and (2) the accuracy of the Tax Vouchers used in the Relevant WHT Applications;

27.3.    subparagraph 24(b) (i) and (ii) (B) (PPs' lack of assets) is denied. The allegation that the Relevant WHT Applicants "*...did not have the assets necessary to make the very substantial investments...*" misunderstands the nature of the financial brokerage services provided by ED&F Man (identified at subparagraph 6.1 above). In particular where a PP did lack assets ED&F Man ~~extended short term credit to the PP in order to~~ facilitated the acquisition of the Security as follows:

27.3.1.    secured and hedged from the Trade Date: from the moment of ED&F Man's acquisition of the Security on the Trade Date on behalf of the PP (subparagraph ~~11.4.1~~ 10.4.1 above). ED&F Man (1) held a fixed charge over the Security and the PP's Custody Account with ED&F Man; and (2) was protected against market movements in the value of the Security by the Hedge;

27.3.2.    reimbursed on or shortly after Settlement Date: following (1) ED&F Man's payment (on the Settlement Date) for the Security and the debit of that amount to the PP's Custody Account (2) the Security was (a) on sold in the market or (b) acquired by ED&F Man pursuant to its rights of use and disposal for a sum of money which was then credited to the PP's Custody Account (and which substantially reversed the debit) (subparagraph 10.4.5 above);

27.3.3.    receipt of dividend: shortly thereafter ED&F Man (1) received funds into the Omnibus Account in respect of the relevant dividend net of WHT; and (2) credited that amount to the Custody Account (subparagraph 10.5 above);

13

27.3.4.  receipt of tax reclaim: within a further few weeks, and without fail, SKAT paid the WHT to the tax reclaim agent which sum was then also credited to the Custody Account (subparagraph 10.6 above), resulting (with the addition of any payment pursuant to the Hedge) in an overall net credit to the Custody Account arising out of the acquisition of the Security;

27.3.5.  no requirement for substantial assets: it was in these circumstances that the PPs did not need to have (1) the assets necessary to make "*very substantial investments*"; and/or (2) the means to "*afford*" the purchase of the relevant security. Instead ED&F Man, fully secured and protected against market movements, was prepared to (and did) enable the PPs to acquire the Security (and, for the avoidance of doubt, no third party provided any funding or collateral);

27.4.  subparagraph 24(c) (the PPs' response to preliminary decisions) is not admitted. Without prejudice to that non-admission and with respect to the PPs who were ED&F Man's clients, ED&F Man understands from documents filed in United States legal proceedings that (1) in April and May 2018 SKAT issued final determination letters to the PPs; and (2) each of those PPs has filed an administrative appeal of SKAT's determination to the Tax Appeals Agency (*Skatteankestyrelsen*) or is in the process of doing so (and each of the Tax Appeals Agency expects the review process to take approximately 30 months);

27.5.  subparagraphs 24(i)(i) and (ii) (A) (alleged "*fictitious records of transactions*" and "*circular transactions*")) are, with respect to the Relevant WHT Applications, denied. On the contrary ED&F Man has genuine records in respect of each of the Relevant WHT Applications ("**the ED&F Man Records**") including:

27.5.1.  the Declaration as published by Bloomberg in respect of the security;

27.5.2.  (1) the PP's order (ordinarily by email instruction) for both (a) the security and (b) the Hedge; and (2) ED&F Man's confirmation (again by email) of the same;

27.5.3.  a booking in ED&F Man's trading software recording ED&F Man's "Buy" of the Security and "Sell" or "Return" to the PP;

27.5.4.　a journal entry in ED&F Man's trading software identifying the nature, date and amount of a dividend payment credited to the PP in respect of the Security;

27.5.5.　entries in the PP's Custody Account recording ED&F Man's acquisition of the Security on the Trade Date;

27.5.6.　entries in the PP's Custody Account recording: (1) the credit of the net dividend payment in respect of the Security; (2) the credit of the tax reclaim to the PP a few weeks later; in the premises

27.5.7.　the Relevant WHT Applications were (1) based on "*genuine business records*" (in the words of counsel for SKAT when making this concession in relation to the PP Tveter LLC Pension Plan Trust at the hearing on 26 June 2018) (2) in relation to "*genuine transactions*" (in the words of Jacobs J. as accepted by counsel for SKAT in the course of the same hearing); and (3) (with the exception of the Annex E Tax Vouchers) resulted in an "*actual*" transfer of shares and dividends;

27.6.　subparagraph 24(i)(iv)(B)(iii) (WHT Applicant as "*mere nominee*") is denied. In particular:

27.6.1.　the reference to the WHT Applicant not being "*the beneficial owner*" of the shares is (as an allegation of falsity against ED&F Man) misconceived: the Custodian Representations do <u>not</u> contain any statement in relation to the WHT Applicant's beneficial ownership; in the premises

27.6.2.　the allegation that the Relevant WHT Applicant was a "*mere nominee*" of the shares is not understood: the relevant representation (if any) contained in the Tax Voucher in relation to the shares was that the PP "…*was holding [the Security] over the dividend date*…";

27.6.3.　that representation was true: subparagraph 26.3 above is repeated: further

27.6.4.　the matters set out in SKAT RFI Response/3 do not support SKAT's case that the WHT Applicant was a "*mere nominee*" as regards the Security with no control as to its disposition: subparagraph 27.3 is repeated; and (for the avoidance of doubt)

> 27.6.5. the WHT Applicant acquired (1) ownership of the Security; and (2) a right to receive any dividends thereon from the Trade Date, not the Settlement Date (as alleged in SKAT RFI Response/4.4 – 4.7).

## F. PROCEEDS OF THE WHT APPLICATIONS

28.  As to paragraph 25 (SKAT's payments to the Agents) it is not admitted that SKAT (1) made the payments "*in reliance on the WHT Representations*"; and (2) made the payments alleged to the Agents, and SKAT is put to strict proof of the same.

29.  ED&F Man does not plead to paragraphs 26 to 48 (payments by SKAT; transfers to SCP and the Alleged Fraud Defendants; and purchase of shares in Varengold and Dero) in circumstances where they do not contain any allegations against ED&F Man. For the avoidance of doubt (1) ED&F Man did not receive any payments directly from SKAT; and (2) subject only to the deduction of its fees, the amounts received into the accounts from the agents were credited in full to the relevant PP.

## G. THE WHT SCHEME

30.  As to paragraph 49 (the WHT Scheme), it is not admitted that the WHT Applications were made as part of the WHT Scheme in circumstances where ED&F Man (1) was not an Alleged Fraud Defendant; and (2) has no knowledge of the matters relied upon at subparagraphs 49 (a) to (d).

31.  ED&F Man does not plead to paragraphs 50 and 51 (the WHT Scheme and the role of the Alleged Fraud Defendants) which do not contain allegations against ED&F Man.

32.  As to paragraphs 52 to 54 (SKAT's decisions and purported rescissions), it is denied that SKAT is entitled to rescind the transactions by which payments were made in respect of the Relevant WHT Applications in circumstances where (1) paragraphs 24, 26 and 27 above are repeated; and (2) to the extent that such payments were ultimately received by ED&F Man (an innocent third party), rescission is not available.

## H. APPLICABLE LAW

33.  Paragraphs 55 and 56 (applicable law) are noted but not admitted. ED&F Man's defence is pleaded on the basis that English law, alternatively Danish law, is the law applicable to SKAT's claims.

## I. ENGLISH LAW CLAIMS AGAINST THE ALLEGED FRAUD DEFENDANTS

34.    ED&F Man does not plead to paragraphs 57 to 85 (claims against Alleged Fraud Defendants) which do not contain allegations against ED&F Man.

## J. ENGLISH LAW CLAIMS AGAINST THE NON-FRAUD DEFENDANTS
### J1. Tort/delict

35.    ED&F Man does not plead to paragraphs 86 to 90 (Agents' alleged liability for negligent misrepresentation) which do not contain allegations against ED&F Man.

36.    Paragraph 91 (ED&F Man's alleged liability for negligent representation) is denied, as further set out below.

37.    As to paragraph 92 (ED&F Man's alleged duty of care to SKAT):

    37.1.    it is denied that ED&F Man owed SKAT a duty to take reasonable care as alleged. In particular:

        37.1.1.    there was no contractual relationship between ED&F Man and SKAT, which was not ED&F Man's client;

        37.1.2.    the Tax Vouchers were prepared for ED&F Man's client only and were not submitted by ED&F Man to SKAT;

        37.1.3.    there were no written or oral communications at any material time between ED&F Man and SKAT in relation to the Tax Vouchers or otherwise;

        37.1.4.    by the Tax Vouchers, ED&F Man did not make any representations to SKAT: paragraph 245.2 above is repeated; moreover

        37.1.5.    at the time of receipt of the Tax Vouchers, SKAT knew or ought to have known from the matters set out at subparagraph 24.1 above that (1) ED&F Man was not assuming responsibility to SKAT for any (alleged) representations relating to the beneficial ownership of shares or dividends described in the Tax Vouchers; and (2) SKAT could not rely on such representations without independent inquiry.

    37.2.    it is denied that the facts and matters set out in sub-paragraphs 92 (a) to (i) support the imposition of the alleged duty of care. In particular:

17

37.3.  subparagraph 92(a) (the AML obligations) is admitted. However at all material times ED&F Man maintained suitable policies and procedures in accordance with these obligations;

37.4.  as to subparagraph 92(b) (ED&F Man's regulatory obligations), it is admitted that (1) ED&F Man is subject to Principles 2 and 3 and SYSC 6 of the Financial Conduct Authority Handbook; and (2) subparagraphs 92 (b) (i) and (ii) contain a broadly accurate summary of Principles 2 and 3 and (parts of) SYSC 6;

37.5.  subparagraph 92(c) (ED&F Man's access to trading activity records) is admitted;

37.6.  as to subparagraph 92(d) (ED&F Man's knowledge of Tax Vouchers' purpose):

37.6.1.  it is admitted (as alleged at subparagraph 92 (d)(i)) that ED&F Man knew that PPs engaged in the trading of shares in Danish companies for the purpose of making tax reclaim applications to SKAT; and

37.6.2.  it is admitted (as alleged at subparagraphs 92 (d)(ii) and (iii)) that ED&F Man knew that the Tax Vouchers which it produced for the PPs were likely to be (1) used for the purpose of the Relevant WHT Applications; and (2) communicated to SKAT for such purpose; however

37.6.3.  ED&F Man (1) had no role in the preparation of the Relevant WHT Applications; and (2) was not qualified to advise as to (and did not advise as to) the Relevant WHT Applicant's declaration as to beneficial ownership as contained in the Tax Relief Form;

37.7.  as to sub-paragraph 92(e) (alleged reliance on Tax Vouchers to seek large WHT refunds):

37.7.1.  as to subparagraph 92 (e)(i), it is denied that ED&F Man knew that the Tax Vouchers *"...would be relied upon to seek very large sums by way of WHT refunds..."* as alleged. In particular whilst (1) ED&F Man knew that the Tax Voucher was one of a number of documents which SKAT required to be submitted by ED&F Man's clients (the PPs) in support of WHT reclaim applications; (2) ED&F Man did not know what other documentation was required by SKAT and/or the criteria which SKAT applied in the assessment of a tax reclaim;

37.7.2.   as to subparagraph 92(e)(ii), it is admitted that ED&F Man knew that 8 different Investment Managers represented the 36 PPs but it is denied (insofar as it is apparently alleged) that the number of Investment Managers is relevant to the imposition of a duty of care upon ED&F Man;

37.7.3.   as to subparagraph 92(e)(iii) (payment of proceeds of WHT Applications), it is denied that ED&F Man knew that "...*they were paying the large majority of the proceeds of the [Relevant] WHT Applications to persons other than...*" the PPs: the tax reclaims received by ED&F Man via the relevant tax reclaim agent were credited directly to the PP's Custody Account;

37.8.   as to subparagraph 92(f) (alleged Custodian Representations), paragraph 24 above is repeated;

37.9.   as to subparagraph 92(g) (SKAT's reasonable reliance), it is denied that it was reasonable for SKAT to rely on any representations contained in the Tax Vouchers without further enquiry and subparagraph 24.1 above is repeated. Further:

37.9.1.   it was a matter for SKAT as the tax authority in Denmark with overall responsibility for processing WHT applications to devise and implement appropriate systems and procedures which ensured that such applications were fairly and accurately reviewed and assessed;

37.9.2.   insofar as the matters set out at subparagraphs 92 (g) (ii) to (v) are true, such that SKAT was unable fairly and accurately to review and assess the Relevant WHT Applications, that was as a result of SKAT's own negligence as set out at paragraphs 40 and 41 below; and

37.9.3.   it is denied that ED&F Man knew or ought to have known the matters set out at subparagraphs 92 (g) (i) to (v): the extent of ED&F Man's knowledge at the material time was as set out at subparagraphs 37.6 and 37.7 above; in the premises

37.10.   subparagraph 92(h) (ED&F Man's alleged knowledge of SKAT's reliance) and subparagraph 93(i) (alleged reasonable foreseeability of SKAT's losses) are denied; and

37.11.  ED&F Man did not assume responsibility to SKAT in respect of the accuracy of the representations (if any) contained in the Tax Vouchers; and/or there was not a sufficiently proximate relationship between ED&F Man and SKAT; and/or it would not be fair, just and reasonable to impose a duty of care on ED&F Man, whether as alleged or at all.

38.  Paragraph 93 (ED&F Man's alleged breach of duty) is inadequately pleaded: SKAT has not set out any particulars in support of its assertion that ED&F Man failed to take reasonable care to ensure that the Tax Vouchers were accurate statements of the matters set out therein. Without prejudice to the foregoing and the matters set out in SKAT RFI Response/5, it is denied that ED&F Man acted in breach of duty as alleged or at all:

38.1.  ED&F Man did not owe SKAT a duty of care: paragraph 37 above is repeated;

38.2.  insofar as such duty was owed and representations were made, it related only to the Custodian Representations which were true: paragraphs 26 and 27 above are repeated; and in any event

38.2A.  the WHT Applicants did not hold the Security identified in the Tax Vouchers as a "*mere nominee*": paragraph 27.6 above is repeated;

38.3.  with the exception of (1) the Annex A Tax Vouchers; and (2) the Annex E Tax Vouchers (in respect of which breach of duty is not admitted), ED&F Man exercised all due care and skill in making the Custodian Representations by reference to the ED&F Man Records (as to which subparagraph 27.5 above is repeated).

39.  As to paragraph 94 (payments made by SKAT in relation to the Relevant WHT Applications):

39.1.  it is denied that SKAT (1) reasonably relied on the Custodian Representations (if made); or (2) was thereby induced by ED&F Man to make payments in respect of the Relevant WHT Applications; or (3) would not otherwise have made such payments: paragraphs 24 and 37 above are repeated; in any event

39.2.  it is not admitted that SKAT made payments of DKK582 million in respect of the Relevant WHT Applications as alleged in subparagraph 94 (d) and SKAT is put to strict proof of the allegation;

39.3.   save as aforesaid, ED&F Man does not plead to paragraph 94 (payments relating to Credit Advice Notes from Indigo, North Channel Bank and Lindisfarne) which does not contain allegations against ED&F Man.

40.   Further or alternatively, between 2012 and 2015 the systems and procedures in place at SKAT for managing the review and assessment of WHT reclaim applications were manifestly deficient in numerous respects. In particular and pending full disclosure:

40.1.   ED&F Man relies on (1) the Rigsrevisionen Report dated February 2016; (2) the (undated) Intern Revision report relating to SKAT's administration of WHT tax; (3) judgments dated 7 December 2017 and 23 May 2018 in relation to criminal proceedings against Sven Jørgen Nielsen (the "**Nielsen Criminal Proceedings**"); and (4) the additional documentation requirements introduced by SKAT since its discovery of the WHT Scheme;

40.2.   SKAT had no written procedures in place to govern its processing of tax reclaim applications between 2012 and 2015 and:

40.2.1.   approximately 90% of the WHT reclaim applications to SKAT were handled by Sven Jørgen Nielsen ("**Sven Nielsen**"), who (despite the rapidly increasing number of WHT reclaim applications from 2012) was the sole individual in the department dealing with such applications ("**the WHT Department**") responsible for their approval;

40.2.2.   in practice Sven Nielsen did no more than check that: (1) the documents required by SKAT had been submitted; and (2) the amount claimed had been accurately calculated, in which event he authorised SKAT to pay the WHT reclaim application;

40.2.3.   further, during the same period SKAT had no means of independently verifying the identity of the beneficial owners of shares held by foreign shareholders in Danish companies in custody accounts maintained outside Denmark (such shares being registered as held by the custodian only);

40.2.4.   notwithstanding the foregoing, SKAT did not seek supporting documentation from the Relevant WHT Applicant or make other inquiries to verify whether the PP identified in the Tax Voucher (1) was the owner of the shares on the Reference Date and (2) had received the dividend described therein;

40.2.5.   instead, SKAT unlawfully delegated the evaluation and approval of the information and documentation submitted to SKAT in support of WHT applications to separate

schemes operated by (1) the Danish banks; and (2) VP Securities A/S (the Danish Central Securities Depository), which (in the absence of the necessary statutory authority) resulted in the termination of the schemes in September and November 2015;

40.2.6.    further, in breach of SKAT's guidance obligation (article 7 of *forvaltingslov*) and/or investigation obligation (*Officialmaksimen*) under Danish law, SKAT did not take any or any sufficient steps to (1) publish guidance in relation to (a) the information and documentation required from WHT applicants; or (b) the criteria governing beneficial ownership; and (2) obtain and verify such information and documentation;

40.2.7.    moreover (1) by 2011 SKAT had grounds to suspect that Sven Nielsen had dishonestly received illicit payments of up to DKK 2m from Torben Dilung between 2006 and 2011 (the "**Dilung Payments**"); however (2) in June 2011 SKAT indefinitely suspended its investigation into Sven Nielsen in relation to the Dilung Payments for no or no good reason and (3) SKAT permitted Sven Nielsen to remain as an employee of SKAT until he was charged with fraud in Denmark in relation to the Dilung Payments in May 2015; and

40.2.8.    in 2013 SKAT did not implement the control functions set out in a statutory order (the "**2013 Statutory Order**") which would have enabled SKAT upon receipt of a WHT application to compare (1) the information received by SKAT from a Danish Listed Company immediately after the Declaration as to (a) the identity of dividend recipients; and (b) the amount of WHT; with (2) the information set out in the WHT application in relation to (a) and (b);

40.3.    SKAT's senior management were aware of and/or complicit in the deficiencies set out above from 2012 at the latest (such deficiencies having been repeatedly raised with senior management by at least Lisbeth Rømer (Head of WHT Department between 2002 and 2013)) but took no or insufficient action to remedy the deficiencies until after the discovery of the WHT Scheme described in the Amended Particulars of Claim; in the premises

40.4.    SKAT failed adequately or at all:

40.4.1.    to develop or implement any or any sufficient processes and/or controls to verify whether applicants for WHT refunds were entitled to reclaim WHT;

        40.4.2.   to ensure that the WHT Department was appropriately staffed to deal with the volume of WHT applications received between 2012 and 2015;

        40.4.3.   to respond appropriately in 2011 to its discovery of the Dilung Payments which cast serious doubt on the honesty and integrity of Sven Nielsen;

        40.4.4.   to act on fundamental process issues raised by (at least) Lisbeth Romer prior to 2012 (including SKAT's inability to verify the underlying ownership of shares held in Danish companies); and

        40.4.5.   to implement the 2013 Statutory Order.

41.     In the premises, and in circumstances where SKAT assumed responsibility for deciding whether the shares described in the Tax Vouchers were beneficially owned by the PPs on whose behalf the Relevant WHT Applications were made:

      41.1.   insofar as SKAT paid the Relevant WHT Applications (1) mistakenly, believing that the shares described in the Tax Vouchers were beneficially owned by the PPs; or (2) recklessly, not caring whether such shares were beneficially so owned, such payments were made as a result of SKAT's negligence;

      41.2.   SKAT's own negligence was the only real and substantial cause of the losses claimed against ED&F Man and/or eclipsed any causative effect of ED&F Man's alleged negligence (if proven); further or alternatively

      41.3.   any damages payable to SKAT on account of ED&F Man's alleged negligence ought to be reduced because SKAT's contributory negligence caused or aggravated the alleged damage.

### J2. Unjust enrichment/restitution

42.     As to paragraph 95 (SKAT's alleged mistaken payments to Agents):

      42.1.   SKAT was not mistaken as to the information set out in the Tax Vouchers in circumstances where (1) factually (with the exception of the Annex A and Annex E Tax Vouchers), the Custodian Representations were true; and (2) legally, the Custodian Representations did not contain any representation as to the PP's beneficial ownership of the shares described in the Tax Vouchers; further

42.2.  SKAT was itself in a state of doubt as to the PP's beneficial ownership of such shares as a result of the matters set out at subparagraphs 24.1.4 and 40.2.3 above yet paid the tax reclaim agents anyway without taking reasonable or any steps to resolve such doubt, and therefore SKAT was not relevantly mistaken in relation to the PP's beneficial ownership of the shares described in the Tax Vouchers; in any event

42.3.  the Custodian Representations did not cause SKAT to make payments to tax reclaim agents in relation to the Relevant WHT Applications, which would have been made anyway;

42.4.  further, such payments as were made to Global and GTS in relation to 270 of the 420 Relevant WHT Applications were not made to the Agents (as defined); and

42.5.  in any event, it is not admitted that SKAT paid out the sums alleged to the Agents.

43.  As to paragraph 96 (ED&F Man's receipt of fees), it is admitted that ED&F Man received fees out of the proceeds of any successful WHT applications which included a Tax Voucher prepared by ED&F Man (the "**ED&F Man Fees**"). Save as aforesaid, paragraph 96 is denied:

43.1.  the ED&F Man Fees were not received as a result of SKAT's mistaken payment of WHT refunds (see paragraph 42 above); further,

43.2.  the receipt of the ED&F Man Fees was not unjust: the ED&F Man Fees were received by ED&F Man in good faith for payment of services provided to its clients; and in any event

43.3.  as a result of receiving the ED&F Man Fees, ED&F Man changed its position in good faith by making payment of bonuses to employees which ED&F Man would not ordinarily have made: accordingly, SKAT is not entitled to restitution in respect of such payments.

44.  Paragraph 97 (ED&F Man's unjust enrichment at SKAT's expense) is denied. Paragraphs 42 and 43 above are repeated.

45.  In the premises, it is denied that ED&F Man is liable to make restitution to SKAT of the ED&F Man Fees as alleged in paragraph 98 (ED&F Man's liability in restitution).

## K. ALTERNATIVE DANISH LAW CLAIMS
### K1. Danish law

46.  Paragraph 99 (Danish law) is admitted as a broadly accurate summary of Danish law, save that:

24

46.1.    the liability of (1) a tortfeasor (subparagraphs 99(a)(ii) and (b)) and (2) the accomplice of a tortfeasor (subparagraphs 99(c) and (d)) each fall to be assessed against the *culpa* standard by reference to the factors set out at subparagraph 99(b));

46.2.    a claimant's entitlement to restitution on the grounds of unjust enrichment (subparagraph 99(e)) is a discretionary remedy based on a residual legal principle which is rarely applied.

### K2.  Damages claims against the Alleged Fraud Defendants

47.    ED&F Man does not plead to paragraph 100 (misconduct of Alleged Fraud Defendants) which does not contain allegations against ED&F Man.

### K3.  Damages claims against other Defendants

48.    As to paragraph 101 (Danish law negligence claim against ED&F Man), ED&F Man does not plead to sub-paragraph (c) (conduct of Agents and Global) which does not relate to ED&F Man. Otherwise it is denied (1) that (with the exception of (a) the Annex A Tax Vouchers; and (b) the Annex E Tax Vouchers (in respect of which violation and/or breach is not admitted)) ED&F Man's conduct violated the *culpa* standard or any other requisite standard of care as alleged in sub-paragraphs (a) and (b) or (2) that SKAT suffered the losses set out in paragraph 90(d) as a result as alleged in sub-paragraph (d). Paragraphs 37 to 41 above are repeated.

49.    ED&F Man does not plead to paragraph 102 (other Non-Fraud Defendants) which does not contain allegations against ED&F Man.

### K4.  Unjust enrichment/restitution claims

50.    As to paragraph 103 (Danish law unjust enrichment claim against ED&F Man), (1) ED&F Man received payment (including the ED&F Man Fees) for the services it supplied and was not unjustly enriched thereby; (2) in the premises it is denied that ED&F Man is liable under Danish law in unjust enrichment and/or restitution. Paragraphs 42 to 44 and 0 above are repeated.

### K5.  Proprietary claim

51.    ED&F Man does not plead to paragraph 104 (proprietary claims against selected Alleged Fraud Defendants) which does not contain allegations against ED&F Man.

### K6.  Additional defences to Danish law claims

52.     Further or alternatively, under principles developed in Danish case law SKAT (as a public authority) is not entitled to rescind decisions to grant WHT refunds which were made properly and on the basis of Tax Vouchers prepared in good faith and where the information set out therein (save for the Annex A Tax Vouchers) was accurate.

53.     Further or alternatively, SKAT's claims against ED&F Man in respect of WHT refund payments made prior to 19 November 2012 are barred by the three year limitation period applicable in Danish law to public debt claims already obsolete on 19 November 2015.

**L. INTEREST**

54.     As to paragraph 105 (English law interest claim) and paragraph 106 (Danish law interest claim), (1) it is noted that SKAT claims interest against ED&F Man only if Danish law applies; (2) in the premises it is denied that SKAT is entitled to the interest claimed or at all.

**M. CURRENCY OF CLAIMS**

55.     Paragraphs 107 and 108 (currency of claims) are noted.

**N. REVENUE RULE**

56.     Further or alternatively, in circumstances where SKAT seeks to enforce in the English courts the revenue laws of Denmark (including (1) the right of Danish companies to withhold tax under the Danish Withholding Tax Act 1967 in respect of shares beneficially owned by foreign shareholders; and (2) double taxation treaties between Denmark and the United States and Canada), SKAT's claims against ED&F Man are liable to be struck out on the grounds that the English courts lack jurisdiction to determine such claims.

**O. SCHEDULE 5T**

57.     ED&F Man pleads to Amended Schedule 5T in Annex D to this Amended Defence.

**P. PRAYER FOR RELIEF**

58.    In the premises, it is denied that SKAT is entitled to the relief sought against ED&F Man in paragraph
(4) (damages), paragraph (5) (restitution), paragraph (7) (interest) and paragraph (8) (costs) or to any
relief.

ALI MALEK QC
MATTHEW HARDWICK QC
GEORGE McPHERSON

ALI MALEK QC
MATTHEW HARDWICK QC
GEORGE McPHERSON

Statement of Truth

The Defendant believes that the facts stated in this Amended Defence are true and I am duly authorised by
it to sign this statement of truth on its behalf.

Signed: .............................................................

Full Name: Christopher John Robert Smith
Title/Position: Managing Director of ED&F Man Capital Markets Limited
Date: 5ᵗʰ September 2019

Re-served this 6ᵗʰ day of September 2019 by Rosenblatt, of 9-13 St Andrew Street, London EC4A 3AF
solicitors to the 69ᵗʰ Defendant.

**Annex A – incorrect Tax Vouchers**

| | Schedule 1 reference | Pension Plan | Share and ISIN | Ex Date | Claimed shareholding | Claimed withheld dividend tax (DKK) | Actual shareholding | Actual withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 174 | JSH FARMS LLC 401 (K) PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 95,900 | 51,786.00 | 60,900 | 32,886.00 | 18,900.00 |
| 2. | 177 | KRH FARMS LLC 401 (K) PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 94,100 | 50,814.00 | 60,100 | 32,454.00 | 18,360.00 |
| 3. | 180 | MGH FARMS LLC 401 (K) PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 82,200 | 44,388.00 | 54,200 | 29,268.00 | 15,120.00 |
| 4. | 183 | MSJJ RETIREMENT GROUP TRUST | Lundbeck A/S DKK0010287234 | 22/03/2013 | 89,400 | 48,276.00 | 58,400 | 31,536.00 | 18,900.00 |
| 5. | 186 | SRH FARMS LLC 401 (K) PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 97,150 | 52,461.00 | 62,150 | 33,561.00 | 16,740.00 |
| 6. | 188 | SV HOLDINGS, LLC RETIREMENT PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 417,800 | 225,612.00 | 326,800 | 176,472.00 | 49,140.00 |
| 7. | 191 | TEW ENTERPRISES, LLC RETIREMENT PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 416,400 | 224,856.00 | 326,400 | 176,256.00 | 48,600.00 |
| 8. | 194 | TEW, LP RETIREMENT PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 420,300 | 226,962.00 | 223,300 | 120,582.00 | 106,380.00 |
| 9. | 198 | TRITON FARMS LLC 401 (K) PLAN | Lundbeck A/S DKK0010287234 | 22/03/2013 | 101,250 | 54,675.00 | 64,250 | 34,695.00 | 19,980.00 |
| | | | | | | | | Total | 312,120 |

### Annex B – further details in relation to ED&F Man clients

| | Client name | Agent | Jurisdiction |
|---|---|---|---|
| 1. | Acorn Capital Strategies LLC Employee Pension Profit Sharing Plan & Trust | Acupay System LLC | USA |
| 2. | American Investment Group of New York, L.P. Pension Plan | Goal Taxback Limited | USA |
| 3. | Autoparts Pension Group Trust | Global Equities GmbH | USA |
| 4. | Bluegrass Investment Management, LLC Retirement Plan | Global Equities GmbH | USA |
| 5. | Bluegrass Retirement Group Trust | Global Equities GmbH | USA |
| 6. | Cambridge Way LLC 401K Profit Sharing Plan | Acupay System LLC Correct | USA |
| 7. | Casting Pensions Group Trust | Global Equities GmbH | USA |
| 8. | Central Technologies Pensions Group Trust | Global Equities GmbH | USA |
| 9. | DW Construction, Inc. Retirement Place | Goal Taxback Limited | USA |
| 10. | Federated Logistics LLC 401 (K) Plan | Goal Taxback Limited | USA |
| 11. | GSA Trading (Canada) Corporation Pension Plan | Globe Tax Services Incorporated & Goal Taxback Limited | Canada |
| 12. | Industrial Pensions Group Trust | Global Equities GmbH | USA |
| 13. | JSH Farms LLC 401 (K) Plan | Global Equities GmbH | USA |
| 14. | Kamco Investments. Inc Pension Plan | Goal Taxback Limited | USA |
| 15. | Kamco LP Profit Sharing Pension Plan | Goal Taxback Limited | USA |
| 16. | Koutroulakis & Co Corporation Pension Plan | Goal Taxback Limited | Canada |
| 17. | KRH Farms LLC 401 (k) Plan | Global Equities GmbH | USA |
| 18. | Linden Associates Defined Benefit Plan | Goal Taxback Limited | USA |
| 19. | MGH Farms LLC 401 (k) Plan | Global Equities GmbH | USA |
| 20. | Moira Associates LLC 401 (k) Plan | Goal Taxback Limited | USA |
| 21. | MSJJ Retirement Group Trust | Global Equities GmbH | USA |
| 22. | New Song Fellowship Church 401 (k) Plan | Goal Taxback Limited | USA |

| | Client name | Agent | Jurisdiction |
|---|---|---|---|
| 23. | Oranje Canada Corporation Pension Plan | Goal Taxback Limited | Canada |
| 24. | Riverside Associates Defined Benefit Plan | Goal Taxback Limited | USA |
| 25. | SRH Farms LLC 401 (k) Plan | Global Equities GmbH | USA |
| 26. | Sterling Alpha LLC 401 (k) Profit Sharing Plan | Acupay System LLC | USA |
| 27. | SV Holdings, LLC Retirement Plan | Global Equities GmbH | USA |
| 28. | Tew Enterprises, LLC Retirement Plan | Global Equities GmbH | USA |
| 29. | Tew, LP Retirement Plan | Global Equities GmbH | USA |
| 30. | The Goldstein Law Group PC 401 (k) Profit Sharing Plan | Goal Taxback Limited | USA |
| 31. | Triton Farms LLC 401 (k) Plan | Global Equities GmbH | USA |
| 32. | Tveter LLC Pension Plan | Goal Taxback Limited | USA |

**Annex C – members of Gibraltarian Partnerships**

| Partner of Hamlyn LP | | | |
|---|---|---|---|
| 1. | Del Mar Asset Management Saving & Retirement Plan | Goal Taxback Limited | USA |
| **Partners of Cubix Managers Limited LLP** | | | |
| 2. | 5T Advisory Services Retirement Plan Trust | Goal Taxback Limited | USA |
| 3. | KK Law Firm Retirement Plan Trust | Goal Taxback Limited | USA |
| 4. | Uplands Consulting Retirement Plan Trust | Goal Taxback Limited | USA |

**ANNEX D:**
**RESPONSE TO AMENDED SCHEDULE 5T**

1.      References to paragraph numbers in this Annex D are to paragraph numbers in Amended Schedule 5T to the Amended Particulars of Claim.

### A. ED&F MAN CAPITAL MARKETS LIMITED
### A1. Description of Defendant

2.      Paragraph 1 (description of ED&F Man) is admitted. A description of ED&F Man and its business is set out at paragraph 6.1 of the Amended Defence.

3.      As to paragraph 2 (Custodian Representations), it is denied that ED&F Man made or SKAT relied on the Custodian Representations with respect to the Tax Vouchers. Section E of the Amended Defence is repeated.

4.      Paragraph 3 (attribution of individuals' knowledge to ED&F Man) is noted.

### A2. Unjust enrichment

5.      As to paragraph 4 (ED&F Man's receipt of fees), it is admitted that ED&F Man received fees in the circumstances described in paragraph 43 of the Amended Defence. It is denied that ED&F Man was unjustly enriched thereby, as further set out at paragraphs 42 to 45 of the Amended Defence.

### A3. Negligent misrepresentation

6.      As to paragraph 5 (Tax Voucher description), it is assumed that the reference to paragraph 92(s) of the Particulars of Claim (which does not exist) is an error and that SKAT intended to refer to paragraph 92, and ED&F Man pleads accordingly. The description of the documents produced by ED&F Man as "Tax Vouchers" does not support the inference of knowledge alleged. Paragraph 37 of the Amended Defence is repeated.

### A4. Danish law claims

7.      As to paragraph 6 (ED&F Man's alleged negligence), it is denied (with the exception of (1) the Annex A Tax Vouchers; and (2) the Annex E Tax Vouchers (in respect of which violation and/or breach is not admitted)) that ED&F Man's conduct violated the *culpa* standard or any other requisite standard of care under Danish law, whether as alleged or at all. Paragraphs 46.1 and 48 of the Amended Defence are repeated.

8.      Paragraph 7 (ED&F Man's alleged unjust enrichment) is noted. It is denied that ED&F
        Man is liable in unjust enrichment and/or restitution under Danish law. Paragraph 50 of
        the Amended Defence is repeated.

9.      Further, ED&F Man relies on the additional defences set out at paragraphs 52 and 53 of
        the Amended Defence.

## Annex E – incorrect Tax Vouchers (2)

1.  ED&F Man produced 80 Tax Vouchers as particularised in Schedule 1 (64 Tax Vouchers) and Schedule 2 (16 Tax Vouchers) to this Annex E (**the Annex E Tax Vouchers**).

2.  The information in the Annex E Tax Vouchers was inaccurate in that the PP identified therein:

    2.1.  had not "*received*" the amount set out therein by way of dividend from the Danish Listed Company; and

    2.2.  had not "*suffered*" WHT in the amount set out therein in relation to such dividend at the stated (27%) or any rate.

3.  Insofar as SKAT accepted or paid WHT reclaims in the sum of DKK183,902,400 or any sum in relation to the Relevant WHT Applications which included the Annex E Tax Vouchers, SKAT's own negligence was the real and substantial cause of such payments and/or eclipsed any causative effect of ED&F Man's negligence in relation to the Annex E Tax Vouchers (if proven). Paragraphs 40 and 41 of the Amended Defence are repeated.

## Annex E: Schedule 1 – incorrect Tax Vouchers

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| | Schedule 1 reference | Pension Plan | Shareholding | Ex Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 1. | 505 | DEL MAR ASSET MANAGEMENT SAVING & RETIREMENT PLAN | 500,000 Coloplast A/S – B | 06/12/2013 | 945,000.00 | - | 945,000 |
| 2. | 535 | DEL MAR ASSET MANAGEMENT SAVING & RETIREMENT PLAN | 7,850,000 Novozymes A/S - B | 27/02/2014 | 5,298,750.00 | - | 5,298,750 |
| 3. | 606 | DEL MAR ASSET MANAGEMENT SAVING & RETIREMENT PLAN | 24,000,000 TDC A/S | 07/03/2014 | 14,256,000.00 | - | 14,256,000 |
| 4. | 629 | DW CONSTRUCTION, INC. RETIREMENT PLAN | 3,300,000 TDC A/S | 07/03/2014 | 1,960,200.00 | - | 1,960,200 |
| 5. | 632 | KAMCO INVESTMENTS, INC. PENSION PLAN | 2,000,000 TDC A/S | 07/03/2014 | 1,188,000.00 | - | 1,188,000 |
| 6. | 634 | LINDEN ASSOCIATES DEFINED BENEFIT PLAN | 2,150,000 TDC A/S | 07/03/2014 | 1,277,100.00 | - | 1,277,100 |
| 7. | 637 | NEWSONG FELLOWSHIP CHURCH 401 (K) PLAN | 2,500,000 TDC A/S | 07/03/2014 | 1,485,000.00 | - | 1,485,000 |
| 8. | 640 | RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN | 2,150,000 TDC A/S | 07/03/2014 | 1,277,100.00 | - | 1,277,100 |
| 9. | 646 | THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN | 2,200,000 TDC A/S | 07/03/2014 | 1,306,800.00 | - | 1,306,800 |
| 10. | 659 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 8,000,000 TDC A/S | 07/03/2014 | 4,752,000.00 | - | 4,752,000 |
| 11. | 698 | AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN | 3,500,000 Novo Nordisk A/S - B | 21/03/2014 | 4,252,500.00 | - | 4,252,500 |
| 12. | 699 | DEL MAR ASSET MANAGEMENT SAVING & RETIREMENT PLAN | 2,600,000 Novo Nordisk A/S - B | 21/03/2014 | 3,159,000.00 | - | 3,159,000 |

| **A** | **B** | **C** | **D** | **E** | **F** | **G** | **H** |
|---|---|---|---|---|---|---|---|
| | Schedule 1 reference | Pension Plan | Shareholding | Ex Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 13. | 700 | DW CONSTRUCTION, INC. RETIREMENT PLAN | 2,000,000 Danske Bank A/S | 19/03/2014 | 1,080,000.00 | - | 1,080,000 |
| 14. | 701 | DW CONSTRUCTION, INC. RETIREMENT PLAN | 3,850,000 Novo Nordisk A/S - B | 21/03/2014 | 4,677,750.00 | - | 4,677,750 |
| 15. | 702 | FEDERATED LOGISTICS LLC 401(K) PLAN | 16,500,000 Danske Bank A/S | 19/03/2014 | 8,910,000.00 | - | 8,910,000 |
| 16. | 703 | FEDERATED LOGISTICS LLC 401(K) PLAN | 10,000,000 Novo Nordisk A/S - B | 21/03/2014 | 12,150,000.00 | - | 12,150,000 |
| 17. | 704 | KAMCO INVESTMENTS, INC. PENSION PLAN | 2,000,000 Danske Bank A/S | 19/03/2014 | 1,080,000.00 | - | 1,080,000 |
| 18. | 705 | KAMCO INVESTMENTS, INC. PENSION PLAN | 2,000,000 Novo Nordisk A/S - B | 21/03/2014 | 2,430,000.00 | - | 2,430,000 |
| 19. | 706 | KAMCO LP PROFIT SHARING PENSION PLAN | 7,375,000 Danske Bank A/S | 19/03/2014 | 3,982,500.00 | - | 3,982,500 |
| 20. | 708 | LINDEN ASSOCIATES DEFINED BENEFIT PLAN | 2,000,000 Danske Bank A/S | 19/03/2014 | 1,080,000.00 | - | 1,080,000 |
| 21. | 709 | LINDEN ASSOCIATES DEFINED BENEFIT PLAN | 2,000,000 Novo Nordisk A/S - B | 21/03/2014 | 2,430,000.00 | - | 2,430,000 |
| 22. | 710 | MOIRA ASSOCIATES LLC 401(K) PLAN | 2,000,000 Danske Bank A/S | 19/03/2014 | 1,080,000.00 | - | 1,080,000 |
| 23. | 711 | MOIRA ASSOCIATES LLC 401(K) PLAN | 3,150,000 Novo Nordisk A/S - B | 21/03/2014 | 3,827,250.00 | - | 3,827,250 |
| 24. | 712 | NEWSONG FELLOWSHIP CHURCH 401(K) PLAN | 2,000,000 Danske Bank A/S | 19/03/2014 | 1,080,000.00 | - | 1,080,000 |
| 25. | 713 | RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN | 2,000,000 Danske Bank A/S | 19/03/2014 | 1,080,000.00 | - | 1,080,000 |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| | Schedule 1 reference | Pension Plan | Shareholding | Ex Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 26. | 714 | RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN | 2,000,000 Novo Nordisk A/S - B | 21/03/2014 | 2,430,000.00 | = | 2,430,000 |
| 27. | 715 | THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN | 2,000,000 Danske Bank A/S | 19/03/2014 | 1,080,000.00 | = | 1,080,000 |
| 28. | 716 | THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN | 2,000,000 Novo Nordisk A/S - B | 21/03/2014 | 2,430,000.00 | = | 2,430,000 |
| 29. | 829 | DEL MAR ASSET MANAGEMENT SAVING & RETIREMENT PLAN | 350,000 Tryg A/S | 04/04/2014 | 2,551,500.00 | = | 2,551,500 |
| 30. | 830 | DEL MAR ASSET MANAGEMENT SAVING & RETIREMENT PLAN | 12,000 A.P. Møller Mærsk A/S - B | 01/04/2014 | 4,536,000.00 | = | 4,536,000 |
| 31. | 831 | FEDERATED LOGISTICS LLC 401(K) PLAN | 300,000 Tryg A/S | 04/04/2014 | 2,187,000.00 | = | 2,187,000 |
| 32. | 832 | FEDERATED LOGISTICS LLC 401(K) PLAN | 18,000 A.P. Møller Mærsk A/S - B | 01/04/2014 | 6,804,000.00 | = | 6,804,000 |
| 33. | 843 | DW CONSTRUCTION, INC. RETIREMENT PLAN | 5,000 A.P. Møller Mærsk A/S - B | 01/04/2014 | 1,890,000.00 | = | 1,890,000 |
| 34. | 844 | KAMCO LP PROFIT SHARING PENSION PLAN | 5,000 A.P. Møller Mærsk A/S - B | 01/04/2014 | 1,890,000.00 | = | 1,890,000 |
| 35. | 845 | LINDEN ASSOCIATES DEFINED BENEFIT PLAN | 175,000 Tryg A/S | 04/04/2014 | 1,275,750.00 | = | 1,275,750 |
| 36. | 846 | MOIRA ASSOCIATES LLC 401 (K) PLAN | 225,000 Tryg A/S | 04/04/2014 | 1,640,250.00 | = | 1,640,250 |
| 37. | 847 | MOIRA ASSOCIATES LLC 401 (K) PLAN | 5,000 A.P. Møller Mærsk A/S - B | 01/04/2014 | 1,890,000.00 | = | 1,890,000 |
| 38. | 848 | NEWSONG FELLOWSHIP CHURCH 401 (K) PLAN | 225,000 Tryg A/S | 04/04/2014 | 1,640,250.00 | = | 1,640,250 |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| | Schedule I reference | Pension Plan | Shareholding | Ex Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 39. | 849 | RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN | 175,000 Tryg A/S | 04/04/2014 | 1,275,750.00 | - | 1,275,750 |
| 40. | 850 | TVETER LLC PENSION PLAN | 1,000,000 TDC A/S | 07/03/2014 | 594,000.00 | - | 594,000 |
| 41. | 851 | TVETER LLC PENSION PLAN | 390,000 Danske Bank A/S | 19/03/2014 | 210,600.00 | - | 210,600 |
| 42. | 852 | TVETER LLC PENSION PLAN | 225,000 Novo Nordisk A/S - B | 21/03/2014 | 273,375.00 | - | 273,375 |
| 43. | 853 | TVETER LLC PENSION PLAN | 800 A.P. Møller Mærsk A/S - B | 01/04/2014 | 302,400.00 | - | 302,400 |
| 44. | 854 | TVETER LLC PENSION PLAN | 100,000 Tryg A/S | 04/04/2014 | 729,000.00 | - | 729,000 |
| 45. | 1092 | ACORN CAPITAL STRATEGIES LLC EMPLOYEE PENSION PROFIT SHARING PLAN & TRUST | 20,000 A.P. Møller Mærsk A/S - B | 01/04/2014 | 7,560,000.00 | - | 7,560,000 |
| 46. | 1093 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 5,000,000 Danske Bank A/S | 19/03/2014 | 2,700,000.00 | - | 2,700,000 |
| 47. | 1094 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 612,500 Tryg A/S | 04/04/2014 | 4,465,125.00 | - | 4,465,125 |
| 48. | 1095 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 20,000 A.P. Møller Mærsk A/S - B | 01/04/2014 | 7,560,000.00 | - | 7,560,000 |
| 49. | 1096 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 2,000,000 Novo Nordisk A/S - B | 21/03/2014 | 2,430,000.00 | - | 2,430,000 |
| 50. | 1163 | LINDEN ASSOCIATES DEFINED BENEFIT PLAN | 322,500 Dampskibsselskabet Norden A/S | 24/04/2014 | 435,375.00 | - | 435,375 |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| | Schedule 1 reference | Pension Plan | Shareholding | Ex Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 51. | 1164 | RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN | 322,500 Dampskibsselskabet Norden A/S | 24/04/2014 | 435,375.00 | = | 435,375 |
| 52. | 1165 | THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN | 215,00 Dampskibsselskabet Norden A/S | 24/04/2014 | 290,250.00 | = | 290,250 |
| 53. | 1166 | TVETER LLC PENSION PLAN | 240,00 Dampskibsselskabet Norden A/S | 24/04/2014 | 324,000.00 | = | 324,000 |
| 54. | 1391 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 425,000 Dampskibsselskabet Norden A/S | 24/04/2014 | 573,750.00 | = | 573,750 |
| 55. | 1508 | DEL MAR ASSET MANAGEMENT SAVING & RETIREMENT PLAN | 3,000,000 Coloplast A/S - B | 09/05/2014 | 3,240,000.00 | = | 3,240,000 |
| 56. | 1510 | DW CONSTRUCTION, INC. RETIREMENT PLAN | 1,300,00 Coloplast A/S - B | 09/05/2014 | 1,404,000.00 | = | 1,404,000 |
| 57. | 1511 | FEDERATED LOGISTICS LLC 401(K) PLAN | 1,300,000 Coloplast A/S - B | 09/05/2014 | 1,404,000.00 | = | 1,404,000 |
| 58. | 1513 | KAMCO INVESTMENTS, INC. PENSION PLAN | 1,300,000 Coloplast A/S - B | 09/05/2014 | 1,404,000.00 | = | 1,404,000 |
| 59. | 1520 | LINDEN ASSOCIATES DEFINED BENEFIT PLAN | 850,000 Coloplast A/S - B | 09/05/2014 | 918,000.00 | = | 918,000 |
| 60. | 1525 | RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN | 850,000 Coloplast A/S - B | 09/05/2014 | 918,000.00 | = | 918,000 |
| 61. | 1537 | TVETER LLC PENSION PLAN | 115,000 Coloplast A/S - B | 09/05/2014 | 124,200.00 | = | 124,200 |

5

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| | Schedule 1 reference | Pension Plan | Shareholding | Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 62. | 1583 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 2,850,000 Coloplast A/S - B | 09/05/2014 | 3,078,000.00 | - | 3,078,000 |
| 63. | 1945 | NEWSONG FELLOWSHIP CHURCH 401 (K) PLAN | 50,000 IC Group A/S | 25/09/2014 | 40,500.00 | - | 40,50 |
| 64. | 2064 | AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN | 750,000 Novozymes A/S - B | 26/02/2015 | 607,500.00 | - | 607,500 |
| | | | | | | Total | 161,586,900 |

## Annex E: Schedule 2 – incorrect Tax Vouchers

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| | Schedule 1 reference | Pension Plan | Shareholding | Ex Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 1. | 527 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 2,000,000 Coloplast A/S - B | 06/12/2013 | 3,780,000.00 | 2,835,000 | 945,000 |
| 2. | 615 | AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN | 5,000,000 TDC A/S | 07/03/2014 | 2,970,000.00 | 1,782,000 | 1,188,000 |
| 3. | 617 | AUTOPARTS PENSIONS GROUP TRUST | 3,705,000 TDC A/S | 07/03/2014 | 2,200,771.00 | 1,525,037 | 675,734 |
| 4. | 620 | BLUEGRASS INVESTMENT MANAGEMENT, LLC RETIREMENT PLAN | 4,248,000 TDC A/S | 07/03/2014 | 2,523,312.00 | 1,815,264 | 708,048 |
| 5. | 621 | BLUEGRASS RETIREMENT GROUP TRUST | 1,610,000 TDC A/S | 07/03/2014 | 956,340.00 | 716,958 | 239,382 |
| 6. | 623 | CASTING PENSIONS GROUP TRUST | 3,402,400 TDC A/S | 07/03/2014 | 2,021,025.60 | 1,543,628 | 477,398 |
| 7. | 624 | CENTRAL TECHNOLOGIES PENSIONS GROUP TRUST | 1,570,000 TDC A/S | 07/03/2014 | 932,580.00 | 700,920 | 231,660 |
| 8. | 631 | INDUSTRIAL PENSIONS GROUP TRUST | 3,713,200 TDC A/S | 07/03/2014 | 2,205,640.80 | 1,515,947 | 689,693 |
| 9. | 633 | KAMCO LP PROFIT SHARING PENSION PLAN | 5,000,000 TDCA/S | 07/03/2014 | 2,970,000.00 | 1,782,000 | 1,188,000 |
| 10. | 636 | MOIRA ASSOCIATES LLC 401 (K) PLAN | 6,000,000 TDC A/S | 07/03/2014 | 3,564,000.00 | 1,188,000 | 2,376,000 |
| 11. | 642 | SV HOLDINGS, LLC RETIREMENT PLAN | 3,073,200 TDC A/S | 07/03/2014 | 1,825,480.80 | 1,131,332 | 694,148 |
| 12. | 644 | TEW ENTERPRISES, LLC RETIREMENT PLAN | 4,569,000 TDC A/S | 07/03/2014 | 2,713,986.00 | 2,040,390 | 673,596 |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| | Schedule 1 reference | Pension Plan | Shareholding | Date | Withheld dividend tax (DKK) | Withheld dividend tax entitlement (DKK) | Amount of overpayment by SKAT (DKK) |
| 13. | 645 | TEW, LP RETIREMENT PLAN | 4,959,200 TDC A/S | 07/03/2014 | 2,945,764.80 | 1,989,425 | 956,340 |
| 14. | 658 | CAMBRIDGE WAY LLC 401K PROFIT SHARING PLAN | 7,900,000 Novozymes A/S - B | 27/02/2014 | 5,332,500.00 | 877,500 | 4,455,000 |
| 15. | 697 | AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN | 7,750,000 Danske Bank A/S | 19/03/2014 | 4,185,000.00 | 1,620,000 | 2,565,000 |
| 16. | 707 | KAMCO LP PROFIT SHARING PENSION PLAN | 4,400,000 Novo Nordisk A/S - B | 21/03/2014 | 5,346,000.00 | 1,093,500 | 4,252,500 |
| | | | | | | **Total** | **22,315,499** |

<u>Amended by Order of The Honourable Mr Justice Teare dated 6 March 2019 (as varied by Order of The Honourable Mrs Justice Cockerill dated 20 May 2019)</u>

Claim Nos.: CL-2018-000297; CL-2018-000404; CL-2018-000590

IN THE HIGH COURT OF JUSTICE

BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES

COMMERCIAL COURT

B E T W E E N:

SKAT
(THE DANISH CUSTOMS AND TAX ADMINISTRATION)
<u>Claimant</u>

- and -

ED&F MAN CAPITAL MARKETS LIMITED AND OTHERS
<u>Defendants</u>

---

<u>AMENDED</u> DEFENCE

---

Rosenblatt
9-13 St Andrew Street
London EC4A 3AF
Tel: (020) 7955 0880
Fax: (020) 7955 0888
DX: LDE 493

Solicitor's Ref: TS/ASF/EDF/1/57