UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re

CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION

This document relates to: 18-cv-09797[1]
18-cv-10100

MASTER DOCKET

18-md-2865 (LAK)

**THIRD-PARTY PLAINTIFFS/COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS ED&F MAN CAPITAL MARKETS LTD.'S AMENDED COUNTERCLAIMS**

K&L GATES LLP
John C. Blessington
Brandon R. Dillman
One Lincoln Street
Boston, MA 02111
617.261.3100

*Attorneys for Defendants / Third-Party Plaintiffs in the above-captioned related proceedings*

[1] SKAT's actions first filed in Utah federal court were consolidated and then transferred to this Court for pretrial purposes only. The above-captioned related action, 18-cv-09797, comprises the following actions: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

Third-Party Plaintiffs DW Construction, Inc. Retirement Plan (the "DWC Plan"), Kamco Investments, Inc. Pension Plan (the "Kamco Investments Plan"), Kamco LP Profit Sharing Pension Plan (the "Kamco LP Plan"), Linden Associates Defined Benefit Plan (the "Linden Plan"), Moira Associates 401(K) LLC Plan (the "Moira Plan"), Riverside Associates Defined Benefit Plan (the "Riverside Plan"), American Investment Group of New York, L.P. Pension Plan (the "AIG Plan") (collectively, the "Utah Plans"), and Newsong Fellowship Church 401(k) Plan (the "Newsong Plan") (collectively with the Utah Plans, "the Plans" and each a "Plan"), respectfully submit this reply in support of their motion to dismiss the amended counterclaims of Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F").

## INTRODUCTION

Despite ED&F's best efforts, it cannot escape the fact that its indemnification counterclaims have not accrued and therefore are not ripe. Recent decisions from both the Second Circuit and Southern District of New York make it clear that this Court lacks subject matter jurisdiction over ED&F's counterclaims. Turning a blind eye to this case law, ED&F unduly emphasizes district court cases decided 40 or 50 years ago that are of limited value. Nevertheless, the bottom line is that ED&F has not suffered any actual losses in connection with providing services to the Plans and it may never suffer such losses. This Court should not wade into a dispute that may never need to be decided.

Even if ED&F's indemnification counterclaims were ripe, such counterclaims fail to satisfy the federal pleading standard. The claims under which ED&F may incur losses are all based on factual allegations involving ED&F's own negligence or willful misconduct. Such losses are expressly excluded by the terms of the parties' relevant contracts. Furthermore, contrary to ED&F's assertions, any alleged entitlement to attorneys' fees or discovery costs does not save ED&F's claims from dismissal.

## ARGUMENT

### I. ED&F's speculative indemnification counterclaims are not ripe for review.

The Second Circuit has held that "a cause of action for contractual indemnification 'does not arise until liability is incurred by way of actual payment' to a third party."[2] *Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, 916 F.3d 116, 126 (2d Cir. 2019) (quoting *Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262, 265 (N.Y. App. Div. 1999)); *see Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) ("Ordinarily, a claim for contractual indemnification only accrues once the indemnitee has suffered a loss, i.e., made a payment."); *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 19 (2d Cir. 1996) ("the claim generally accrues when the indemnitee actually suffers a loss"); *see also Convergent Wealth Advisors, LLC v. Lydian Holdings Co.*, No. 12 CIV. 1199, 2012 WL 2148221, at *3 (S.D.N.Y. June 13, 2012) (noting that, unlike the duty to defend, the duty to indemnify does not accrue until "the underlying liability has been established"); *Tokio Marine & Nichido Fire Ins. Co., Ltd. v. Canter*, No. 07-Civ-5599, 2009 WL 2461048, at *6 (S.D.N.Y. August 11, 2009) ("a plaintiff's right to indemnification does not accrue until it suffers a loss by payment to the injured party").

ED&F does not challenge this on-point Second Circuit precedent, which includes a case decided just last year.[3] Moreover, contrary to ED&F's contention that the Plans' ripeness

[2] This requirement is supported by numerous policy considerations that underpin the ripeness doctrine, including avoiding "abstract questions," preserving judicial resources, and allowing "a more complete development of the facts." *See Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675–76 (2d Cir. 1996).

[3] ED&F misapplies *Associated Indem. Corp. v. Fairchild Indus., Inc.*—the only Second Circuit decision it cites as supposed support for the ripeness of its indemnification counterclaims. *Associated Indem. Corp.* did not involve an indemnification claim, but rather was a declaratory judgment action to determine the availability of insurance coverage from a primary and excess insurer. 961 F.2d 32, 33–34 (2d Cir. 1992). In that context, the Second Circuit noted, "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Id.* at 35

argument stands on an "infirm premise," there are many examples of courts of the Southern District of New York, including this Court, recognizing indemnification counterclaims as unripe when the counterclaimant has not suffered a loss or incurred a liability. *See, e.g.*, *Katzman v. Helen of Troy Texas Corp.*, No. 12 CIV. 4220 PAE, 2012 WL 3831745, at *2–4 (S.D.N.Y. Aug. 28, 2012) (dismissing defendant's indemnification counterclaims after determining that such counterclaims were not ripe because defendant's alleged loss was a "matter for conjecture"); *Bd. of Trustees of S. California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp.*, No. 09 CIV. 6273 RMB, 2011 WL 6130831, at *1–2 (S.D.N.Y. Dec. 9, 2011) (dismissing defendant's counterclaims, including counterclaims for equitable indemnification and contribution, because they "presuppose[d] a (prior) finding of Defendants' liability" and were therefore "premature"); *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 149–50 (S.D.N.Y. 2004) (Kaplan, J.) (stating, in the context of an indemnification counterclaim, that asserting a "claim under a loss or liability indemnification agreement" requires a party to "establish that the amount claimed is fixed," and such a showing can be established by proving that the party has paid the claims or that a judgment has been obtained against the party).

In an attempt to circumvent this case law, ED&F largely resorts to overstating the applicability of decades-old district court decisions. *See* ED&F Opposition [Doc. No. 357] at p. 16 (citing two cases from the early 1970s and one case from 1981).[4] For example, in *Index Fund, Inc. v. Hagopiani*, a case ED&F relies upon, the court explicitly recognized that "courts have held

(internal quotation omitted). The Second Circuit's commentary does not apply here because there is no claim for insurance coverage.

[4] While ED&F cites one case from this Court that is more recent, that case was not focused on when an indemnification claim accrues and the Court's discussion of accrual was confined to a footnote. *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 42 F. Supp. 3d 520, 527 n.22 (S.D.N.Y. 2014). Further, the Court did not acknowledge the above-referenced cases from the Southern District.

that counterclaims for indemnification or contribution based on the defendant's potential liability on a cross-claim are not yet mature and thus cannot be asserted under Rule 13(e)." 91 F.R.D. 599, 605 (S.D.N.Y. 1981). In another case cited by ED&F, *Atl. Aviation Corp. v. Costas' Estate*, the district court stated that "an indemnitor owes nothing until his indemnitee has suffered the loss from which the indemnitor has undertaken to save him harmless[.]" 332 F. Supp. 1002, 1006 (E.D.N.Y. 1971). The *Atl. Aviation Corp.* court's comments concerning ripeness were also dicta, with its holding instead premised on the plaintiff failing to reserve its alleged indemnification claim when it entered into settlement agreements. *Id.* at 1008.

Last, ED&F's assertion that it is entitled to indemnification for attorneys' fees it has already incurred is incorrect. ED&F's right to attorneys' fees is dependent upon a finding that such fees did not arise out of its "wilful default, fraud or negligence." Amended Third-Party Complaint, at Ex. A [Doc. No. 224-1] ("Custody Agreement" or "Custody Agreements"), § 16(b).[5] Indeed, ED&F concedes that an award of attorneys' fees is contingent on the outcome of a future event. *See* ED&F Opposition [Doc. No. 357] at p. 23 ("ED&F will be entitled to indemnification . . . ***if*** it prevails in the English Action" and "ED&F will also be entitled to indemnification . . . ***if*** it prevails against the Third-Party Plaintiffs here in the MDL.") (emphasis added). Furthermore, courts have expressly recognized that, even where an indemnification provision provides for the recovery of attorneys' fees, a claim for indemnification is not ripe prior to an award against a

---

[5] The Utah Plans' custody agreements are attached to the Declaration of John C. Blessington dated March 30, 2020 ("Blessington Declaration") [Doc. No. 305 in 18-md-02865] as Exhibits A–G of Exhibit 3. The Newsong Plan's custody agreement is attached to the Blessington Declaration as Exhibit A of Exhibit 4. These custody agreements are identical in all material respects for purposes of the Plans' motion. References to the "Custody Agreement" or "Custody Agreements" are to the custody agreement between the DWC Plan and ED&F. Blessington Declaration, Exhibit A of Exhibit 3.

would-be indemnitee. *See Convergent Wealth Advisors*, 2012 WL 2148221, at *3; *Tokio Marine & Nichido Fire Ins. Co.*, 2009 WL 2461048, at *6.

## II. The terms of the parties' contracts preclude ED&F's indemnification counterclaims.

The express language of the parties' contracts prevents ED&F from being indemnified for its own misconduct. The Custody Agreements exclude indemnification for "any liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F]." Custody Agreement, § 16(b). Similarly, the Terms and Conditions of Business between the Plans and ED&F ("T&Cs"), [Doc. No. 325-2], provide that ED&F may be liable to the Plans for its own "negligence, willful default or fraud." T&Cs, § 18.

In an attempt to avoid these unambiguous contractual terms, ED&F myopically focuses on how the claims it seeks indemnification for are styled, rather than on the facts underlying such claims. ED&F's approach is classic form over substance. ED&F's willful and negligent misconduct is the basis for all of the claims against it in both this action and the English action. Regardless of how such claims are labeled or characterized, ED&F cannot be indemnified for its own wrongful actions.

Regarding the current proceeding, the Plans' breach of contract, breach of fiduciary duty, and promissory estoppel claims are all premised on the fact that ED&F either willfully or negligently made false statements in tax vouchers and account statements.[6] Amended Third-Party Complaint at ¶¶ 116, 125, 135. Specifically, the Plans allege that "ED&F knew or should have

[6] The Plans have also asserted claims against ED&F for fraud and negligent misrepresentation, but ED&F tacitly concedes that it has no right to be indemnified for such claims. *See* ED&F Opposition [Doc. No. 357] at pp. 25–26 (arguing that the Plans' "contract-based claims—for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel" are subject to indemnification, but making no reference to the Plans' fraud and negligent misrepresentation claims).

known that the dividend and withholding-tax information contained in those documents was false" and "intentionally, knowingly, and/or recklessly made or caused to be made the false statements." *Id.* at ¶¶ 67, 94. The Custody Agreements and T&Cs preclude ED&F from being indemnified for this misconduct.

Regarding the English action, SKAT's entire theory is that tax vouchers created by ED&F and submitted as part of the Plans' tax reclaim applications contained negligent misrepresentations.[7] SKAT alleges that such tax vouchers were false at least in their description of the dividend received by the Plans, and their statement that the Plans were the beneficial owners of the shares. Re-Amended Schedule 5T at ¶ 18. SKAT further alleges that the preparation and submission of those false tax vouchers was a breach of ED&F's duty of care, and were the result of a failure to exercise due care and skill. *Id.* at ¶ 19. Therefore, the factual allegations in the English action sound in negligence, and assert only that ED&F was unjustly enriched as a result of such negligence.[8]

In an effort to identify some already incurred costs, ED&F next asserts that it is entitled to recover attorneys' fees and various discovery expenses incurred in this proceeding and the English action. This argument misses the mark. As discussed above, ED&F's entitlement to indemnification for attorneys' fees or discovery expenses is contingent upon the outcome of this

[7] ED&F's contention that SKAT is pursuing "parallel theories of liability" in the English action is misleading at best. SKAT's Re-Amended Schedule 5T, which devotes just one sentence to SKAT's unjust enrichment claim, reveals that the English action is focused on ED&F's negligence.

[8] The English case cited by ED&F, *Banque Financiere de la Cite v. Parc (Battersea) Ltd. & Ors.* [1998] UKHL 7, does not alter this conclusion. *Banque Financiere* held that misconduct is not a necessary element of an unjust enrichment award, it did not hold that an unjust enrichment claim could not be sustained if, factually, the defendant was unjustly enriched due to its own misconduct.

proceeding and the English action.[9] For that reason alone, the Court should not entertain ED&F's argument at this stage.

Notwithstanding the above, ED&F also mistakenly asserts that the English rule of awarding attorneys' fees to the prevailing party applies to its indemnification counterclaims in this action. A contractual choice of law provision, such as the Custody Agreements' English choice of law clause, only applies to substantive issues, and New York courts follow their own procedural rules irrespective of such a provision. *RLS Assocs. LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 214 (S.D.N.Y. 2006) (citing *Educ. Res. Inst., Inc. v. Piazza*, 17 A.D.3d 513, 513 (N.Y. App. Div. 2005)). New York courts have determined that rules governing the availability of attorneys' fees are procedural, and therefore are not governed by contractual choice of law provisions. *Bensen v. Am. Ultramar Ltd.*, No. 92-CIV-4420, 1997 WL 317343, at *13 (S.D.N.Y. June 12, 1997); *see Deutsche Bank Tr. Co. v. Am. Gen. Life Ins. Co.*, 2016 WL 5719783, at *14 (S.D.N.Y. Sept. 30, 2016) ("a New York court would consider the issue of attorneys' fees to be procedural rather than substantive"); *Atomi, Inc. v. RCA Trademark Mgmt., S.A.S.*, No. 14-CV-7456, 2015 WL 1433229, at *5 (S.D.N.Y. March 30, 2015) ("applying the French rule [regarding attorneys' fees] would be contrary to a 'fundamental policy' of the forum; accordingly, the Court believes that a New York court would conclude that the rule is procedural"). Therefore, the fact that the Custody Agreements are governed by English law has no bearing on ED&F's right to recover attorneys' fees incurred in connection with this action. Rather, any such right is governed by New York law.

---

[9] ED&F itself recognizes the contingent nature of this recovery. *See* ED&F Opposition [Doc. No. 357] at p. 23 ("ED&F will be entitled to indemnification for the costs of its defense—including litigation expenses and attorneys' fees incurred—***if*** it prevails in the English Action" and "ED&F will also be entitled to indemnification for litigation costs and attorneys' fees ***if*** it prevails against the Third-Party Plaintiffs here in the MDL.") (emphasis added).

Applying New York law, ED&F is not entitled to recover its attorneys' fees incurred in defending against the Plans' claims in this action. New York law imposes a strong presumption against reading a contractual indemnification provision to cover expenses incurred in litigation between parties to the contract. *In re Platinum-Beechwood Litig.*, 378 F. Supp. 3d 318, 323 (S.D.N.Y. 2019); *Hooper Assocs. v. AGS Computs., Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989). The Second Circuit has noted that "the test is whether the intent to indemnify [costs of inter-party litigation] is unmistakably clear from the language of the promise, not whether the agreement could be read to provide for indemnification." *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, Nos. 05-6885-cv, 05-7040-cv, 2006 WL 3370698, at *1 (2d Cir. Nov. 20, 2006). New York courts have identified a number of factors to consider when determining whether the presumption against indemnification in inter-party litigation has been rebutted, namely; (i) whether broad indemnification language—which will not support an indemnification award for the costs of inter-party litigation—was employed, (ii) the possibility of third-party claims at the time of contracting, and (iii) whether the parties distinguished between third party and inter-party claims in the contract. *In re Refco Secs. Litig.*, 890 F. Supp. 2d 332, 343–44 (S.D.N.Y. 2012) (collecting cases and listing factors).

Here, all of those factors weigh against finding that the Plans and ED&F intended to indemnify one another for the costs of inter-party litigation. First, the indemnification provision of the Custody Agreements contains broad language covering "each liability, loss and cost which may be suffered or incurred." Second, third-party claims were clearly possible at the time of contracting, as evidenced by the services ED&F was engaged in on behalf of the Plans directed

towards third parties. Third, the Custody Agreements do not distinguish between third-party claims and inter-party claims in the indemnification provisions.[10]

In a last-ditch effort to save its indemnification counterclaims, ED&F argues that it is entitled to common law indemnification from the Plans. ED&F Opposition [Doc. No. 357] at p. 27. ED&F has not, however, asserted a claim for common law indemnification against the Plans. Rather, ED&F has asserted a claim for "complete indemnification by the Plans pursuant to the [Custody] Agreements and/or the Terms and Conditions." Amended Counterclaims of Third-Party Defendant ED&F Man Capital Markets, Inc. [Doc. No. 325] at ¶ 29. ED&F cannot save its deficiently pled contractual indemnification claim by asserting a common law indemnification claim for the first time in opposition to a motion to dismiss.

## **<u>CONCLUSION</u>**

For the foregoing reasons, as well as those stated in the Plans' prior briefing, ED&F's indemnification claims are not ripe, and therefore beyond this Court's subject matter jurisdiction. Furthermore, even if the claims were ripe, ED&F has failed to satisfy the federal pleading standard. The Court should dismiss ED&F's counterclaims.

---

[10] Notably, the cases relied upon by ED&F as supposed support for indemnification of attorneys' fees involved indemnification provisions that specifically identified attorneys' fees as part of the available indemnity. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 178 (2d Cir. 2005) (analyzing indemnification provision that provided for recovery of "expenses (including reasonable attorney fees. . .)"); *Gramercy Advisors, LLC v. Coe*, No. 13–CV–9069, 2014 WL 4197370, at *5 n.6 (S.D.N.Y. August 25, 2014) (analyzing indemnification provision providing for recovery of all costs including "legal . . . costs and expenses"). Here, however, the Custody Agreement's indemnification provision does not reference or provide for the indemnification of the cost of attorneys' fees in any action, much less in inter-party litigation. Custody Agreement, § 16(a)(i).

June 23, 2020

Respectfully submitted,

K&L GATES LLP

*/s/ John C. Blessington*

John C. Blessington (*pro hac vice*)
john.blessington@klgates.com
Brandon R. Dillman (*pro hac vice*)
brandon.dillman@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
T: 617.261.3100
F: 617.261.3175

*Attorneys for Defendants / Third-Party Plaintiffs DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Moira Associates LLC 401(k) Plan, Linden Associates Defined Benefit Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan, Stacey Kaminer, Joan Schulman, David Schulman, Newsong Fellowship Church 401(k) Plan, and Alexander Jamie Mitchell III*