# EXHIBIT 3

2012 WL 3831745
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard D. KATZMAN, Plaintiff,
v.
HELEN OF TROY TEXAS CORPORATION
and Helen of Troy Limited, Defendants.

No. 12 Civ. 4220(PAE).
|
Aug. 28, 2012.

*OPINION & ORDER*

PAUL A. ENGELMAYER, District Judge.

***1** The Court has received plaintiff's letter, dated August 14, 2012, seeking permission to move to dismiss defendants' counterclaims; defendants' letter in response, dated August 20, 2012; and plaintiff's reply, dated August 20, 2012. The parties' letters are attached here.

The Court construes plaintiff's August 14 letter as a motion to dismiss the counterclaims set out in the Amended Answer (Dkt.20), the defendants' August 20 letter as opposition to that motion, and plaintiff's August 20 letter as a reply. For the reasons that follow, the Court grants plaintiff's motion to dismiss defendants' counterclaims.

**I. Background**
The Complaint in this case contains two causes of action. Both are tightly focused on the issue whether defendants were entitled to retain approximately $11 million in Escrow Funds after the May 15, 2012 deadline set in the Merger Agreement for relinquishing those funds to plaintiff. First is a breach of contract claim. This claim alleges that defendants breached the Merger Agreement when they failed to direct the escrow agent to release the Escrow Funds to plaintiff. In fact, plaintiff alleges that defendants had not "actually suffered or incurred" a Loss as defined in the Merger Agreement, as of the May 15, 2012 deadline, so as to justify retention of the Escrow Funds. Thus, the contract claim alleges, defendants were obliged to direct the release of those funds. Second, plaintiff seeks declaratory relief to the same effect. *See* Compl. ¶¶ 29–44.

On June 21, 2012, the Court held an extended phone conference with the parties, arising out of plaintiff's request to move for summary judgment without the benefit of discovery. The Court denied that request and granted defendants' request for discovery. However, the Court limited the scope of discovery to the information known to defendants, as of May 15, 2012, which formed the basis for defendants' assertion of a right to retain the funds in escrow beyond the May 15, 2012 deadline set in the Merger Agreement. The discovery permitted by the Court focused on whether defendants had paid any money, were formally obliged to pay any money, or were subject to actual claims by a taxing authority, with respect to the 18 alleged tax claims identified in defendants' "Indemnity Demand Notice" issued in ostensible support of their retention of the Escrow Funds.

However, in the discovery conference, the Court forcefully rejected defendants' persistent attempts to obtain broader discovery, including from plaintiffs, on the underlying issues of whether colorable tax claims might be developed in the future that could support a claim of indemnification under the Merger Agreement. Discovery seeking to establish such liability was irrelevant, the Court ruled, because the only issue in the case is whether it was proper under the Merger Agreement for defendants to retain the Escrow Funds after May 15, 2012.

On July 25, 2012, defendants brought counterclaims for (1) indemnification under the Merger Agreement; and (2) a declaratory judgment to the same effect, with respect to all 18 claims listed in the Indemnity Demand Notice. *See* Dkt. 20.

**derived *2** In a July 27, 2012 Order, the Court denied defendants' request to extend the deadline and scope of discovery. The Court reiterated that, to resolve plaintiff's claims, it is not necessary for defendants to probe whether bona fide claims by defendants for indemnification may one day arise. Rather, the issue in this case is solely whether defendants possessed a valid basis, as of May 15, 2012, to retain the Escrow Funds. "[W]hether indemnification will, at some future date, be required" under the Merger Agreement does "not bear on this narrow issue." Dkt. 21.

Following that Order, the Court received plaintiff's August 14, 2012 letter, seeking leave to move to dismiss defendants' counterclaims; defendants' response; and plaintiff's reply.

**II. Discussion**

Plaintiffs move to dismiss defendants' counterclaims seeking to establish plaintiff's duty of indemnification, on the grounds that these claims are premature and not ripe for adjudication. Defendants respond that the counterclaims are not premature because they are "compulsory counterclaims" within the meaning of Federal Rule of Civil Procedure 13.

Rule 13(a) provides: "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Rule 13(b), in turn, provides that "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim" is a permissive counterclaim.

The test under Rule 13(a) for "determining a compulsory counterclaim is identical to the Rule 13(g) test for cross-claims." Federman v. Empire Fire and Marine Ins. Co., 597 F.2d 798, 813 (2d Cir.1979). "To determine whether a cross-claim arises out of the same transaction or occurrence that is the subject matter of the original action ... the court examines (1) the identity of facts between the initial claim and the cross-claim; (2) mutuality of proof; and (3) the logical relationship between the original claim and the cross-claim." Bank of Montreal v. Optionable, Inc., No. 09–cv–7557, 2011 WL 4063324, at *3 (S.D.N.Y. Aug.12, 2011) (citing Federman, 597 F.2d at 812). "Although the 'logical relationship' test does not require 'an absolute identity of factual backgrounds,' the 'essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' " Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir.2004) (quoting Critical–Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 699 (2d Cir.2000)).

In the Court's assessment, the Rule 13(a) test is not met here, nor is it even close to being met. Simply put, the issue presented by plaintiff's Complaint (whether defendants were obliged under the Merger Agreement to transfer the Escrow Funds to plaintiff after May 15, 2012) is fundamentally distinct from the issue presented by defendants' counterclaims (whether, based on claims that may one day be made by third parties against Kaz, Inc., defendants will have a right to indemnification with respect to such claims).

*3 Of particular importance, the facts needed to establish defendants' counterclaims for indemnification sweep far beyond those necessary to resolve plaintiff's pending claim —that defendants' retention of Escrow Funds breached the Merger Agreement. Injecting defendants' counterclaims into the current litigation would expand, potentially dramatically, the scope of discovery and the factual and legal issues to be resolved. That is because, measured by the present Complaint, the issues to be resolved are focused narrowly on the information known to defendants as of May 15, 2012 that would justify their retention of the Escrow Funds. By contrast, the indemnification claims would necessitate a plenary review as to potential claims of liability that could be made by third parties (*e.g.,* tax authorities) but quite possibly may never be made as to many (if not most, or all) of the matters defendants seek to put at issue. Under these circumstances, the paramount interest of judicial economy strongly disfavors cleaving the counterclaims to the current lawsuit.

Indeed, the indemnification claims raised by defendants are not yet ripe for resolution. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (citation omitted). Whether third party tax authorities will one day come to claim tax liabilities or payment shortfalls by Kaz, Inc., and whether on that basis defendants will one day come to have a valid basis to claim to have suffered losses by virtue of breaches by Kaz of its representations and warranties in the Merger Agreement so as to merit indemnification, see Merger Agreement, Compl. Ex. A § 10.2, with respect to such matters is today unknown. It is a matter for conjecture. As such, it is entirely premature for the Court to adjudicate that issue. It is well-settled that "[u]nder an agreement to indemnify against loss, a right to indemnification does not accrue until the indemnified party has satisfied the judgment, *i.e.,* suffered a loss." Madeira v. Affordable Housing Found., Inc., 323 F. App'x 89, 91 (2d Cir.2009) (summ.order); Atlantic Richfield Co. v. Interstate Oil Transp. Co., 784 F.2d 106, 112 (2d Cir.1986) ("[A] claim for indemnity ... requires that an actual liability be sustained by the indemnitee."); see also Pfizer Inc. v. Stryker Corp., 348 F.Supp.2d 131, 150 (S.D.N.Y.2004) (citing McDermott v. New York, 50 N.Y.2d 211, 217, 428 N.Y.S.2d 643, 406 N.E.2d 460, (1980); Varo, Inc. v. Alvis, P.L.C., 261 A.D.2d 262, 265, 691 N.Y.S.2d 51, (1st Dep't 1999)).

Plaintiff asserts that "with two minor exceptions, none of the 18 claims in the Indemnity Demand Notice has been finally adjudicated or settled." Pl.'s Aug. 14, 2012 Letter at p. 1, 691 N.Y.S.2d 51. Defendants do not dispute this.

Moreover, adjudicating this speculative issue would expand significantly the facts and legal questions at issue. As the Court has advised defendants several times, the facts relevant to resolving the propriety of retention of the Escrow Funds are limited to what was known to defendants on May 15, 2012; by contrast, the facts and evidence bearing on numerous conjectural claims by third parties against Kaz, Inc., which might support a claim by defendants for indemnification, are potentially quite expansive, necessitating plenary discovery. Further, the legal issues are distinct. Plaintiff's Complaint addresses the right to temporary possession of the Escrow Funds, whereas defendants' counterclaims address the issue of ultimate entitlement to indemnification. Put differently, if the relief plaintiff seeks is granted and the Escrow Funds are returned in whole or large part to plaintiff, that will not in any way resolve the issue that defendants raise, which is whether, in the long term, assuming claims are made against Kaz, Inc., plaintiffs will have a duty to indemnify them on such claims. Rather, the grant of such relief would merely denote that, as of May 15, 2012, the conditions for defendants' continued retention of those Escrow Funds had not been met.

*4 Measured in terms of the *Federman* factors, it is, therefore, clear that defendants' premature claims are not compulsory within the meaning of Rule 13. See *Federman,* 597 F.2d at 812. First, there is a very limited overlap of facts between plaintiff's claim and defendants' counterclaims, because the propriety of defendants' retention of the escrow funds turns, overwhelmingly, on different facts than those needed to resolve whether a bona fide claim for indemnification could be made by a third party. Second, there is no mutuality of proof, because defendants' counterclaims would require additional, far more extensive discovery; and even proof that in theory a claim for tax liability might be lodged against Kaz does not establish that a tax authority will ever actually bring such a claim. Third, the relationship between plaintiff's claims with respect to the Escrow Funds and defendants' counterclaims is sufficiently attenuated—in that one is based on facts known to the defendants as of May 15, 2012, and the other is based on conjectural, non-ripe liability claims that third parties may or may not one day make—that the interests of economy do not require joining defendants' claims with plaintiff's. Finally, defendants are simply incorrect that *res judicata* would bar a subsequent suit on defendants' counterclaims. No suit for indemnification is yet ripe and thus defendants cannot be precluded from bringing suit in the future on the basis of a failure to do so now. Whether defendants had a basis, as of May 15, 2012, for asserting a right to retain the Escrow Funds is, therefore, not "so logically connected" to the issues underlying the counterclaims as to demand their resolution in a common lawsuit.

Accordingly, defendants' counterclaims relating to indemnification under the Merger Agreement are dismissed. This decision does not, of course, bar defendants from bringing such claims on a future date, when they are ripe to be made. They are not so today.

The Court, finally, admonishes defendants to focus on the issue at hand—whether or not their retention of the Escrow Funds was merited under the Merger Agreement. The Court is not receptive to, and indeed is dismayed by, defendants' repeated attempts to change the subject and (whether through aggressive and unwarranted discovery demands or non-ripe counterclaims) to attempt to develop leverage over plaintiff. The Court looks forward to promptly litigating to conclusion the issues presented by plaintiff's Complaint.

## CONCLUSION

The Court dismisses defendants' counterclaims, without prejudice to defendants' right to file such claims in a court of proper jurisdiction at a time when, and if, such claims are ripe for resolution. Plaintiff's request for an extension to the deadline to respond or otherwise move with respect to defendants' counterclaims is dismissed as moot.

The deadline for submitting any motion for summary judgment remains August 30, 2012.

SO ORDERED.

*5 Honorable Paul A. Engelmayer

United States District Judge

Southern District of New York

500 Pearl Street

New York, New York 10007–1312

Re: *Richard D. Katzman v. Helen of Troy Texas Corp. and Helen of Troy Ltd.,* 12 Civ. 4220(PAE)(GWG)

Dear Judge Engelmayer:
We write on behalf of Plaintiff Richard D. Katzman, pursuant to the Court's Individual Rule 3.H., to respectfully request the Court's permission to include a motion seeking summary dismissal of Defendants' counterclaims in our forthcoming motion for summary judgment on our affirmative claims, to be filed August 30, 2012. We recently advised Defendants' counsel of our intention to make this application. Defendants stated that they oppose the relief sought herein.

At the Court's direction, the parties are currently engaged in ongoing expedited discovery focused on two narrow factual issues: (1) whether, as of May 15, 2012, any of the 18 alleged claims identified in the Indemnity Demand Notice is the subject of an official notice by a relevant taxing authority (and if so, the procedural status of the notice or claim); and (2) whether, as of May 15, 2012, HoT had paid any money, or was formally obligated to pay any money, in order to satisfy any of the 18 alleged claims.

Plaintiff expects that expedited discovery will reveal that, with two minor exceptions, none of the 18 claims in the Indemnity Demand Notice has been finally adjudicated or settled; nor has HoT made out-of-pocket payments to satisfy the claims. Thus, its counterclaims for indemnity are premature and should be dismissed. *See Pfizer, Inc. v. Stryker Corp.,* 348 F.Supp.3d 131, 150 (S.D.N.Y.2004) (Kaplan, J.) ("[u]nder an agreement to indemnify against loss, a claim does not accrue until the indemnified party has made a payment or actually suffered a loss[ ]"); *Plantronics, Inc. v. U.S.A.,* 1990 U.S. Dist. LEXIS 54, *3–4 (S.D.N.Y. Jan. 8, 1990) (Wood, J.) (dismissing action for lack of subject matter jurisdiction because indemnification claim was "hypothetical" and damages were "speculative" until the underlying claim was resolved).[1]

Defendants' indemnity claims turn on the same issues the parties are now developing through discovery. Plaintiff can, therefore, brief his motion for summary judgment on Defendants' counterclaims using the same factual record and based on the same law he will put before the Court on August 30 in support of summary judgment on his affirmative claims. Permitting Plaintiff also to move against Defendants' Counterclaims in his August 30 papers is sensible and efficient: it eliminates the need for redundant motion practice and instead affords the Court the opportunity to dispose of the parties' entire dispute after a single round of briefing.

Finally, we note that Plaintiff's time to answer or otherwise respond to Defendants' Counterclaims expires on Monday, August 20. Our current intention is to answer the Counterclaims so that our motion to dismiss them will be under Fed.R.Civ.P. 56. In light of the time-sensitive nature of this request, we would be pleased to participate in either an in-person or telephonic conference at the Court's earliest convenience to discuss this matter.

**\*6** Respectfully yours,

Julie A. McCane

cc (by email): Mark D. Taylor, Esq.

Teresa H. Michaud, Esq.

Baker & McKenzie, LLP

Counsel for Defendants Helen of Troy Texas Corporation and Helen of Troy, Ltd.

Steven M. Kayman, Esq.

Proskauer Rose LLP

The Honorable Paul A. Engelmayer

United States District Court for the Southern District of New York

500 Pearl St, Room 670

New York, N.Y. 10007–1312

Re: *Katzman v. Helen of Troy Texas Corp. et al.,* Case No. 12 Civ. 4220(PAE)

Dear Judge Engelmayer

We write in response to Plaintiff's August 14, 2012 letter, which requests the Court's permission for Plaintiff (1) to extend the deadline for Plaintiffs Answer to Defendants' Counterclaims, and (2) to file a motion for summary judgment on Defendants' Counterclaims. Defendants have told Plaintiff that we are not opposed to Plaintiff's request for a brief two-day extension of his Answer date following this Court's ruling on the August 14, 2012 request However, we respectfully

oppose Plaintiffs request to file a motion for summary judgment on Defendants' Counterclaims and write to address the arguments made in the letter.

Contrary to Plaintiff's assertions that Defendants' counterclaims are "premature and should be dismissed," Defendants' claims for indemnification are ripe for adjudication and constitute compulsory counterclaims under Federal Rule of Civil Procedure 13 that must be brought in response to Plaintiff's Complaint in the present action, even if the full extent of Defendants' damages is unknown because Defendants will continue to suffer and incur additional damages. It is telling that Plaintiffs letter ignores Rule 13 but nevertheless explicitly argues three of the four factors that confirm Defendants' counterclaims are compulsory: (1) that the issues of fact and law raised by the claim and the counterclaim are largely the same; (2) that substantially the same evidence will support or refute the claims and counterclaims; and (3) that a logical relationship exists between the claims and counterclaims. *Banque Indosuez v. Trifinery,* 817 F.Supp. 386, 387 (S.D.N.Y. Mar.30, 1993) (A copy of the opinion is attached as Exhibit 3 to Defendants' July 20, 2012 letter to the Court). The fourth factor is whether res judicata would bar a subsequent suit on Defendants' claims absent a compulsory counterclaim. *Id.* Because this factor is also met, and because Plaintiff would certainly raise res judicata as a defense to any future action by Defendants for indemnification, Rule 13(a) requires Defendants "to assert all compulsory counterclaims in this action, or waive them." *See id.*

Moreover, even if Defendants had not yet suffered a "Loss" under the Merger Agreement, which they have, Defendants are entitled to a conditional judgment fixing Plaintiff's liability on the counterclaims "to obtain the earliest possible determination as to the extent to which [they] may expect to be reimbursed for any loss." *See McCabe v. Queensboro Farm Prods., Inc.,* 22 N.Y.2d 204, 208, 292 N.Y.S.2d 400, 239 N.E.2d 340 (N.Y.1968). In what this Court has cited as a "critical passage," the *McCabe* court held that a conditional judgment could be entered so that the claims for indemnification could be resolved expeditiously:

*7 "Despite the absence of any payment, however, it was still proper for [defendant] to implead [the third-party defendant]. This procedural device does not vitiate the requirement of a showing of actual loss before there may be recovery but does permit an indemnitee to obtain a conditional judgment fixing the potential liability without the need for payment until it is shown that the judgment in the principal action has been satisfied in whole or part Since the third-party judgment would not be subject to execution until there is proof of such payment of the main judgment ... the third-party action conveys no greater rights than could be obtained if the action were brought independently. It does, however, permit the third-party plaintiff to obtain the earliest possible determination to the extent to which he may expect to be reimbursed for any loss."

*Gomez v. Preferred Rentals,* No. 96 Civ. 2725, 1997 U.S. Dist LEXIS 19222, at *24 (S.D.N.Y. Dec. 3, 1997) (quoting *McCabe,* 22 N.Y.2d at 208, 292 N.Y.S.2d 400, 239 N.E.2d 340 (internal citations omitted)). The *McCabe* court added that to require a third-party plaintiff to have had an out-of-pocket loss, similar to what Plaintiff urges here, "would only 'postpone' the determination of the third-party plaintiff's rights until judgment was satisfied-a result which would run contrary to the 'administration of justice.' " *Id.* at *25, 292 N.Y.S.2d 400, 239 N.E.2d 340. A number of courts have followed *McCabe* under similar circumstances. *Id.* at *26, 292 N.Y.S.2d 400, 239 N.E.2d 340 (citing *Conley v. Salt City Energy Venture, LP,* 651 N.Y.S,2d 790, 792 (4th Dep't 1996) (holding that a third-party defendant's summary judgment motion for indemnification was not premature where judgment in the underlying action was not satisfied and issuing a conditional judgment); *Delaney v. Spiegel Assoc.,* 225 A.D.2d 1102, 639 N.Y.S.2d 637, 639 (4th Dep't 1996) (same); *Gillmore v. Duke/Fluor Daniel,* 221 A.D.2d 938, 634 N.Y.S.2d 588, 591 (4th Dep't 1995) (same); *Schwalm v. County of Monroe,* 158 A.D.2d 994, 550 N.Y.S.2d 970, 971 (4th Dep't 1990) (same); *Town of Wappinger v. Republic Ins. Co.,* 89 A.D.2d 621, 452 N.Y.S.2d 674, 675 (2d Dep't 1982) (same result in an action to recover on a performance bond)). Notably, the case Plaintiff relies upon, *Plantronics, Inc. v. U.S.A.,* is distinguishable from *McCabe* and the present case

because (among other reasons) the claims for indemnification in that case were brought by the plaintiff in an independent action under the Federal Tort Claims Act, not as either third-party claims or compulsory counterclaims.

In addition, Plaintiff's letter conspicuously ignores the fact that Defendants have not yet been able to obtain *any* discovery from Plaintiff or former Kaz, Inc. executives (some of whom are Selling Shareholders) in support of their defenses or counterclaims. And more importantly, Defendants have not even been permitted to develop all of their own evidence (that is within Kaz, Inc's control) under the current narrowly-focused and expedited discovery order, which Plaintiff himself describes as being focused on only "two narrow factual issues." Plaintiff has gone to great lengths in the short span of this case to prevent Defendants and the Court from delving into Kaz, Inc's breaches, focusing this Court solely on the subject of Defendants' losses. Yet, for the purposes of Defendants' defenses and counterclaims, discovery on Kaz, Inc's breaches is also necessary. As the opinions cited above demonstrate, even taking Plaintiffs assertions that Defendants had not suffered or incurred any losses as true—which they are not—a ruling on that issue alone would not resolve the case; Defendants could still obtain a conditional judgment on Plaintiff's and the Selling Shareholder's liability to indemnify Defendants for Kaz, Inc's breaches of the Merger Agreement Therefore, unless Plaintiff concedes that Kaz, Inc breached the Merger Agreement on each of the 18 claims (an admission Defendants invite, but doubt Plaintiff is willing to make), a resolution as to whether Defendants suffered or incurred losses will not "dispose of the parties' entire dispute." Rather, it would merely give Plaintiff additional time to avoid and/or delay responding directly to the 18 indemnity claims. But, just as Plaintiff was prohibited from hiding the content of the May 14, 2012 Indemnity Demand Letter from the Court, so too should he be prohibited from hiding the breaches of the Merger Agreement, including his and certain of the Selling Shareholders' responsibility for or involvement in the same.

**\*8** Moreover, Rule 56 requires that a nonmoving party has the opportunity to discover information that is essential to his opposition. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Dana Corp.,* 574 F.3d 129, 149–151 (2d Cir.2009); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 301–07 (2d Cir.2003). "The nonmoving patty must not be 'railroaded' into his offer of proof in opposition to summary judgment The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989) (citations and internal quotations omitted). Ample case law exists in this Circuit and others permitting a patty to obtain at least some discovery before responding to a motion for summary judgment *Sobering Corp. v. Home Ins. Co.,* 712 F.2d 4, 10 (2d Cir.1983) ( "From an evidently well-intentioned desire to resolve this troublesome litigation expeditiously, the trial court stayed this discovery, basing its acdon on the fact Schering had already produced 74,000 pages of documents and on its understanding that Home, as a party to the contract, had ample knowledge of intent As we have stressed, however, summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information.") (citing *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980); and *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 899 (2d Cir.1976)); *see also G–I Holdings, Inc. v. Baron & Budd,* 213 F.R.D. 146, 149 (S.D.N.Y. Mar.3, 2003); *White's Landing Fisheries p. Bulchholzer,* 29 F.3d 229, 231 (6th Cir.1994); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.,* 113 F.3d 1484, 1489–90 (8th Cir.1997).

Accordingly, Defendants request that this Court deny Plaintiff's request and permit Defendants to conduct discovery in support of their defenses and counterclaims. Alternatively, if this Court wishes to resolve all of the issues after a "single round of briefing" as Plaintiff urges, Defendants request the Court vacate its prior order, permit Defendants to conduct discovery in support of their defenses and counterclaims, and subsequently revisit the summary judgment schedule.

We look forward to discussing these issues at the Court's convenience.

Respectfully yours,

Teresa H. Michaud

Cc: Steven M. Kayman, Counsel for Plaintiff, By email: SKayman@proskauer.com

Julie A. McCane, Counsel for Plaintiff, By email; JMcCane@proskauer.com

Stuart A. Youngs, Counsel for Plaintiff, By email: SYoungs@proskauer.com

Mark D. Taylor, *of the firm*

Charles B. Cummings, *of the firm*

Honorable Paul A. Engelmayer

United States District Judge

Southern District of New York

500 Pearl Street

New York, New York 10007–1312

 **\*9**  Re: *Katzman v. Helen of Troy Texas Corp. et al.,* 12 Civ. 4220(PAE)(GWG)

Dear Judge Engelmayer:
We represent Plaintiff Richard Katzman and write in reply to Defendants' letter of August 17 opposing Plaintiff's request to move for summary judgment dismissing Defendants' counterclaims. Permission should be granted because the same contractual provisions, legal principles and undisputed facts that mandate summary judgment on Plaintiff's claim that Defendants improperly blocked release of the escrow also require the dismissal of Defendants' counterclaims.

Court-ordered expedited discovery has confirmed what Plaintiff knew or strongly suspected from the start: Defendants are attempting a "land grab" of approximately $11 million in escrow even though only 1 of their 18 purported tax claims has been satisfied, either as of the May 15, 2012 escrow release date or since. As to that one claim-Claim No. 7 in Defendants' Indemnity Demand Notice–Defendants paid approximately $38,000, and did so without giving Plaintiff the contractually required notice and in violation of his rights under the parties' Merger Agreement to consult and take part in the defense and/or resolution of disputes that could give rise to indemnifiable claims. Besides Claim No. 7, only a handful of the 17 other claims in the Indemnity Demand Notice have even been the subject of correspondence with taxing authorities.

Thus, the core flaw in Defendants' position is that they are seeking to litigate indemnity claims *now* which have not yet arisen and may never arise. This Court is not—and should not—be in the business of rendering advisory decisions. *Olin Corp. v. Consol. Aluminum Corp.,* 5 F.3d 10, 17 (2d Cir.1993). Nor should the precious time and resources of the Court and the parties be squandered litigating hypothetical disputes.

Because pre-motion letters should not be used as vehicles for duplicative motion practice, we will keep our responses to the specific points brief:

1. Defendants argue that New York courts have allowed "conditional judgments" when a party seeks contribution from a third party toward a *judgment* that has been rendered but not yet satisfied against the first party. Those cases, premised on efficiency considerations, are consistent with the general rule that indemnification may be sought *when money has been paid or liability has been fixed.* See *McCabe v. Queensboro Farm Prods.,* 22 N.Y.2d 204, 207, 292 N.Y.S.2d 400, 239 N.E.2d 340 (1968).[1] Neither is the case here, except as to the *de minimis* $38,000 payment and, as noted above, Defendants have other problems with that indemnity claim.

2. Stating the obvious, Defendants' counterclaims are not subject to the mandatory counterclaim rule under Fed.R.Civ.P. 13 if those claims cannot yet lawfully be asserted (and, indeed, may never be). Further, a determination that Defendants had no right to block the release of the escrow will have no *res judicata* effect on whether Defendants will, some day in the future, be entitled to indemnity on claims that do not yet exist.

 **\*10**  3. If, as we firmly believe, summary judgment is appropriate based solely on the parties' contract, legal principles and undisputed facts, Defendants have no need for wasteful discovery. Nor do Defendants have any need to discover any information that is "essential to [their] opposition" if Plaintiff's view of the case is correct. These issues will and should be for the Court to decide based on what we anticipate will be a narrow and straightforward summary judgment motion.

4. Defendants' attempt to distinguish *Plantronics* is unavailing, as the *Plantronics* court explicitly noted that New York law applied to the indemnity claims despite the fact that it was brought under the Federal Tort Claims Act. *See Plantronics v. U.S.A.,* 1990 U.S. Dist. LEXIS 54, \*2–3 (S.D.N.Y. Jan. 8, 1990). Moreover, quite tellingly, Defendants completely ignore *Pfizer,* which is the case Plaintiff has most relied on since his first letter to the Court.

Lastly, we respectfully request that the Court extend Plaintiff's time to answer the Complaint until two days after it renders a

decision on this matter. As confirmed in their August 17 letter, Defendants do not oppose this part of our application.

We remain available at the Court's convenience to discuss our client's request for permission.

Respectfully yours,

Steven M. Kayman

cc (by email): Mark D. Taylor, Esq.

Teresa H. Michaud, Esq.

Baker & McKenzie, LLP

Counsel for Defendants Helen of Troy Texas Corporation and Helen of Troy, Ltd.

Julie A. McCane, Esq.

Stuart A. Youngs, Esq.

Proskauer Rose LLP

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3831745

# Footnotes

| | |
|---|---|
| 1 | Even the two minor exceptions are, we believe, also subject to dismissal, though we will spare the Court the detailed reasons in this letter. |
| 1 | Other cases Defendants cite in support of their "conditional judgment" argument are wholly inapposite. In *Conley, Delaney, Gomez,* and *Gilmore* (*see* Defendants' Aug. 17 letter at p. 2) courts granted conditional judgments on common-law indemnification claims while the underlying claims were still pending, but all of the underlying claims arose under a New York Labor Law statute which imposed strict liability on the indemnitees. Here, by contrast, in order to make out a claim for *contractual* indemnity, Defendants must show that (i) they actually suffered or incurred a "Loss" and (ii) that the Loss stemmed from Plaintiff's breach of a representation or warranty in the parties' Merger Agreement. |

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.