# EXHIBIT 7

2015 WL 1433229
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

ATOMI, INC., Plaintiff,
v.
RCA TRADEMARK MANAGEMENT, S.A.S., and
John Doe # 1 through John Doe # 10, Defendants.

No. 14–CV–7456 (VEC).
|
Signed March 30, 2015.

*OPINION & ORDER*

VALERIE CAPRONI, District Judge.

**\*1** Plaintiff Atomi, Inc. sued Defendant RCA Trademark Management, S.A.S. ("RCA") for breach of contract, fraudulent inducement, and unjust enrichment related to the parties' trademark licensing agreement (the "Agreement"). RCA moved to dismiss the Complaint on the basis of *forum non conveniens* because the Agreement's forum-selection clause designated the courts of Paris, France as the exclusive forum. RCA also moved for attorneys' fees under French law.[1] For the reasons that follow, RCA's motion to dismiss is GRANTED and RCA's motion for attorneys' fees is DENIED.

## BACKGROUND[2]

Plaintiff markets consumer electronics, mobile accessories, and travel products. Compl. ¶ 9. RCA licensed the RCA trademark to Plaintiff in 2012. Compl. ¶ 10. According to Plaintiff, the Agreement granted Plaintiff an "exclusive, personal, non-sub-licensable and non-transferable limited license" to use RCA's trademarks on cellular phone accessories (the "Trademarks"). Compl. ¶¶ 11–12. In 2013, Voxx International Corporation ("Voxx") sued Plaintiff (the "Voxx Suit"), alleging, *inter alia,* that its exclusive license to the Trademarks was superior to Plaintiff's license. Compl. ¶¶ 20–22. Plaintiff alleges that RCA refused to defend the Voxx Suit despite an indemnification clause in the Agreement. Compl. ¶¶ 34–36, 41. As part of its settlement with Voxx, Plaintiff agreed to discontinue its use of the Trademarks. Compl. ¶ 41. Plaintiff now seeks damages from RCA for breach of contract, fraud in the inducement unjust enrichment, and restitution.

RCA moved to dismiss the Complaint for *forum non conveniens* based on the Agreement's exclusive forum-selection clause. Dkt. 20. Section 15.1 of the Agreement states: "THIS AGREEMENT SHALL BE GOVERNED BY FRENCH LAW." Cadieux Decl. Ex. A at 17. Section 15.2 provides:

> In case of any dispute regarding the Agreement, which cannot be settled by amicable negotiations between the Parties, the Court of Paris, France, shall have exclusive jurisdiction. Licensee [Atomi] hereby consents to personal jurisdiction and venue therein and hereby waives any right to object to personal jurisdiction or venue therein.

*Id.* Plaintiff argues that the forum-selection clause is unenforceable. Pl. Mem. at 2, 11–13.

Because Plaintiff is bound by the forum-selection clause, RCA's motion is GRANTED, and the Complaint is DISMISSED.

## LEGAL STANDARD

When a forum-selection clause points to a foreign forum, the appropriate way to enforce the clause is through the doctrine of *forum non conveniens*. *Martinez v. Bloomberg LP,* 740 F.3d 211, 216 (2d Cir.2014) (citing *Atl. Marine Constr. Co. v. U.S. District Court for the Western District of Texas,* ––– U.S. ––––, 134 S.Ct. 568, 580, 187 L.Ed.2d 487 (2013)). In deciding RCA's motion to dismiss based on the forum-selection clause, the Court may rely on the pleadings and affidavits submitted in support of the motion but must resolve all factual questions in favor of the Plaintiff. *Id.* at 216–17.

**\*2** "Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis. The first inquiry is whether the clause was reasonably communicated

to the party resisting enforcement." *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 383 (2d Cir.2007). The second step involves determining whether the clause is "mandatory or permissive," *i.e.,* "whether the parties are *required* to bring any dispute in to the designated forum or simply *permitted* to do so." *Id.* "Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* The final step is "to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.' " *Id.* at 383–84 (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). The enforceability of the forum-selection clause at step four is determined by federal law, and the resisting party faces the " 'heavy burden' of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.' " *Martinez,* 740 F.3d at 217–19 (quoting *M/S Bremen,* 407 U.S. at 18–19).

Plaintiff does not dispute that the Agreement's forum-selection clause was reasonably communicated, that it is mandatory, or that the claims and parties involved in the suit are subject to the clause. Plaintiff focuses solely on the fourth step but argues that RCA failed to carry the burden of demonstrating that the forum-selection clause would be enforceable under French law. Pl. Mem. at 13. Because Plaintiff has not contested the first three factors, the forum selection clause is presumptively enforceable, putting the "heavy burden" on the "resisting party" (here, the Plaintiff) to overcome the presumed enforceability of the clause by showing that enforcement would be "unfair, unjust, or unreasonable." *M/S Bremen,* 407 U.S. at 16–18.

The Circuit has established four factors for district courts to consider when determining whether a "resisting party" has met that heavy burden. *Martinez,* 740 F.3d at 227–28. A presumptively valid forum selection clause will not be enforced if:

> (1) [i]ts incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Martinez,* 740 F.3d at 228 (citing *Phillips,* 474 F.3d at 392) (quotation marks omitted).

**\*3** In this case, Plaintiff asserts that enforcement would be unjust because (1) it was fraudulently induced to enter into the contract; (2) French courts may not give judgments entered by United States courts the same preclusive effect that this Court would; [3] (3) Plaintiff would be deprived of its "day in court" in a French forum because French courts are less experienced in the interpretation and construction of American trademarks; and (4) litigating in France would be more expensive and less convenient. Pl. Mem. at 11–12. None of these arguments is persuasive.

The first argument does little to advance Plaintiff's cause because it is conclusory and presupposes that RCA's representations were fraudulent. On-going litigation brought by RCA against Voxx suggests that RCA had at least a good-faith belief that had the valid right to license the Trademarks. But, more important, under federal law fraud is only relevant to the extent that the forum-selection clause was *itself* the product of fraud; allegations that the entire transaction was tainted by fraud are insufficient. *See Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (under *M/S Bremen,* a "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"). If the law were otherwise, any Plaintiff could avoid the impact of a forum-selection clause through the simple expedient of alleging that it was fraudulently induced to enter into the contract. Similarly, Plaintiff's argument that U.S. court decisions may not have preclusive effect in a French forum—which may or may not be legally correct—does not make the French forum fundamentally unfair to Plaintiff. Indeed, the lack of preclusive effect of a U.S. judgment could be advantageous to Plaintiff if, for example, the U.S. judgment at issue were unfavorable to Atomi's position. Finally, Plaintiff's third and fourth arguments are

unpersuasive because the burden of litigating disputes in France was perfectly foreseeable when Plaintiff entered into the Agreement, and Plaintiff has made no showing that changed circumstances have somehow increased those burdens since the time the Agreement was executed. See *M/S Bremen,* 407 U.S. at 16 ("Of course, where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable."). Moreover, "it is not enough that the foreign law or procedure merely be different or less favorable than that of the United States." *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir.1993). "Instead, the question is whether the application of the foreign law presents a danger that [Plaintiff] 'will be deprived of *any* remedy or treated unfairly.' " *Id.* (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254–55, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

**\*4** In short, Plaintiff has not come close to demonstrating that it will be treated unfairly or deprived of any remedy by the French courts. Accordingly, the forum-selection clause is enforceable.

## ATTORNEYS' FEES

As the prevailing party, RCA argues that it is entitled to attorneys' fees under French law, which the parties agreed would govern the Agreement. Def. Mem. at 11–12. RCA asserts that fees are appropriate because French courts generally award attorneys' fees to the prevailing party even when there is no express fee-shifting provision in the contract. *Id.* at 11. The French rule conflicts with the general rule in New York that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assoc. Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). Under New York law, even express fee-shifting provisions "must be strictly construed to avoid inferring duties that the parties did not intend to create." *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 199 (2d Cir.2003) (citing *Hooper Assocs.,* 74 N.Y.2d at 491, 549 N.Y.S.2d 365, 548 N.E.2d 903).

Faced with a conflict of laws, a federal court sitting in diversity must "consider two conceptually distinct issues." *Liberty Synergistics Inc. v. Microflo Ltd.,* 718 F.3d 138, 151 (2d Cir.2013). First, the Court must apply New York choice-of-law rules to determine which rules of decision— New York's rule disfavoring attorneys' fee awards or France's rule favoring them—a New York court would apply. *Id.* Second, the Court must determine whether that rule of decision is "substantive" or "procedural" as a matter of federal law. *Id.* at 151–52. Because the *Erie* analysis is governed by federal principles, "a state's 'procedural' rules under its own choice-of-law principles can be 'substantive' for purposes of *federal* diversity jurisdiction." *Id.* at 152.

The first inquiry in a New York choice-of-law analysis is whether the rule is "considered procedural or substantive." *Tanges v. Heidelberg N. America, Inc.,* 93 N.Y.2d 48, 53, 687 N.Y.S.2d 604, 710 N.E.2d 250 (1999). Procedural matters "are governed by the law of the forum [New York]," *id.;* contractual choice of law provisions generally apply only to substantive issues, *Portfolio Recovery Assocs., LLC v. King,* 14 N.Y.3d 410, 416, 901 N.Y.S.2d 575, 927 N.E.2d 1059 (2010). Procedural matters "pertain[ ] to the remedy rather than the right," and substantive matters are "ingredient[s] of the cause" or "qualif[y] the right." *Tanges,* 93 N.Y.2d at 55, 57, 58, 687 N.Y.S.2d 604, 710 N.E.2d 250 (citations omitted). Generally, matters "affecting the conduct of the litigation" are procedural and are governed by the law of the forum. *Lerner v. Prince,* 119 A.D.3d 122, 128, 987 N.Y.S.2d 19 (1st Dep't 2014). In determining which side of the procedure-substance dichotomy an issue falls, New York courts also consider whether deeming a rule to be substantive would "tread[ ] on any policy considerations." *Tanges,* 93 N.Y.2d at 58, 687 N.Y.S.2d 604, 710 N.E.2d 250. If the right to an award of attorneys' fees is "substantive," then a New York court would apply the French rule.

**\*5** "Decisions in this circuit are in conflict regarding whether attorney fee shifting should generally be classified as substantive or procedural under New York law. There are no New York state cases directly on point." *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.,* 992 F.Supp.2d 316, 319 (S.D.N.Y.2014). Although it is indisputable that a New York court would enforce an unambiguous fee-shifting provision, *see* *A.G. Ship Maint. Corp. v. Lezak,* 69 N.Y.2d 1, 5, 511 N.Y.S.2d 216, 503 N.E.2d 681 (1986), it is unsettled

whether a choice-of-law clause providing that an agreement is governed by the law of a foreign legal system, where attorneys' fees are incidents of litigation borne only by the losing party, would alter the general rule in this country not to award a prevailing litigant attorneys' fees. *Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21–22, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979). The New York Court of Appeals explains that the rule that each litigant bears its own costs "reflects a fundamental policy decision that ... it is undesirable to discourage submission of grievances to judicial determination." *Id.* at 22, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (citations omitted). "The rule is based upon the high priority accorded free access to the courts and a desire to avoid placing barriers in the way of those desiring judicial redress of wrongs." *A.G. Ship Maint. Corp.,* 69 N.Y.2d at 5, 511 N.Y.S.2d 216, 503 N.E.2d 681.

Given New York's policy in this regard, applying the French rule would be contrary to a "fundamental policy" of the forum; accordingly, the Court believes that a New York court would conclude that the rule is procedural.

Because New York law does not award attorneys' fees to a prevailing litigant absent an unambiguous fee shifting agreement, and the award of attorneys' fees is governed by state law under *Erie, Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), RCA's motion for attorneys' fees is DENIED.

## CONCLUSION

Because Plaintiff has utterly failed to meet its burden to overcome the forum-selection clause, this action is DISMISSED on the grounds of *forum non conveniens*. RCA's motion for attorneys' fees is DENIED.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1433229

## Footnotes

1   RCA also moved to dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. The Court does not address that argument because *forum non conveniens* dismissal is appropriate.
2   All facts are taken from the Complaint unless otherwise indicated.
3   Voxx and RCA are currently entrenched in a separate dispute over ownership of the U.S. trademarks; Plaintiff claims that issues in this suit overlap with issues in that litigation.

**End of Document**                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.