# EXHIBIT 9

2014 WL 4197370
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

GRAMERCY ADVISORS, LLC and
Gramercy Financial Services LLC, Plaintiffs,
v.
Douglas COE and Jacqueline Coe, Defendants.

No. 13–CV–9069 (VEC).
|
Signed Aug. 25, 2014.

*MEMORANDUM OPINION AND ORDER*

VALERIE CAPRONI, District Judge.

**\*1** In 2001, Defendants—and many others—invested in a tax shelter scheme that the Internal Revenue Service ("IRS") discovered and disallowed. Plaintiffs played a role in executing Defendants' tax-motivated transactions, although they disclaimed all responsibility for the investment strategy or the tax advice underlying the strategy. Defendants, who incurred substantial liability to the IRS in connection with the scheme, have sued a number of entities, including Plaintiffs, in Illinois state court for their role in the unsuccessful tax shelter. Plaintiffs commenced this lawsuit seeking indemnification and advancement of costs incurred in defending against Defendants' Illinois lawsuit. Defendants moved to dismiss, asserting lack of personal jurisdiction, improper venue, and failure to state a claim. Defendants' motion is GRANTED IN PART and DENIED IN PART. Plaintiffs' second cause of action, for breach of contract under the Belief Letter, is dismissed.

### BACKGROUND[1]

In 2001, "ultra-high net worth Georgia residents" Douglas and Jacqueline Coe incurred a tax liability of $4.34 million based on Douglas's sale of his interest in a business. First Am. Compl. ("FAC") ¶ 10. Rather than paying the tax, Douglas Coe (on behalf of his wife and himself) consulted with non-parties BDO Seidman LLP ("BDO") and Proskauer Rose, LLP ("Proskauer"). *Id.* Based on the strategy that those entities devised, Douglas Coe (again on behalf on both Coes) engaged Plaintiffs and entered into a number of agreements with them to transfer the Coes' assets as advised by BDO and Proskauer. *Id.* ¶ 12. Plaintiffs frequently stated that they were not providing any tax advice, a fact that the Coes acknowledged in writing. *Id.* ¶¶ 12–14.

On November 5, 2001, Douglas Coe entered into an Investment Management Agreement ("IMA") with Gramercy Advisors, LLC, FAC Ex. A; and executed a "Belief Letter" in which he represented that "the investments made pursuant to the [IMA]" were, to the best of his belief based on consultation with legal advisors, "in accordance with all the laws, rules and regulations applicable." FAC Ex. B ¶¶ 1–2. Both the IMA and the Belief Letter contained language disclaiming Plaintiffs' liability to Coe. FAC Ex. A § 7(b)-(e); FAC Ex. B ¶ 2(c). Coe later entered into four Contribution Agreements through which he transmitted more than $3.5 million to Plaintiffs.[2] FAC Exs. E–G; Dkt. 42 Ex. 1. The Contribution Agreements effected the transactions contemplated by the IMA and the Belief Letter. FAC ¶ 22. Each Contribution Agreement contained a non-exclusive forum selection clause; the first three indicated that forum was New York City and the fourth chose Los Angeles County. FAC Ex. E–G § 3(d), Dkt. 42 Ex. 1 § 3(d).[3]

Pursuant to the BDO and Proskauer recommendations, the Coes included a loss of approximately $6 million on their 2001 tax return and a loss of approximately $5.1 million on their 2002 tax return. FAC ¶ 23. The IRS ultimately rejected the Coes' tax strategy, and the Coes had to pay "back-taxes, interest, and penalties as a direct result of their participation in" the tax-avoidance scheme. FAC Ex. C ¶¶ 106–07. The Coes then brought suit in the Circuit Court of Cook County, Illinois, against BDO, Gramercy Advisors LLC, Gramercy Financial Services LLC, Gramercy Capital Recovery Fund LLC, Gramercy Emerging Markets Fund LLC, KSHER AA LLC, and many others. FAC Ex. C.

**\*2** On December 16, 2013, Plaintiffs submitted a demand letter requiring Defendants to advance them $250,000 for their legal fees and to reimburse them for all expenses incurred in defending against the Illinois action. FAC ¶ 26. Defendants did not comply, and Plaintiffs promptly initiated this action alleging that Defendants breached the IMA and the Belief Letter and seeking specific performance of Defendants' alleged contractual obligations to advance Plaintiffs litigation costs and to indemnify and hold them harmless. Defendants moved to dismiss for lack of personal jurisdiction, improper

venue, and failure to state a claim. Br. at 1 (citing Fed.R.Civ.P. 12(b)(2), (3), and (6)).

## DISCUSSION

### I. The Court Has Specific Personal Jurisdiction Over the Defendants and New York Is an Appropriate Venue [4]

Defendants first argue that the Court lacks personal jurisdiction. "There are two types of personal jurisdiction: specific and general." Sonera Holding B.V. v. Çukurova Holding A., 750 F .3d 221, 225 (2d Cir.2014) (*per curiam*). Plaintiffs here do not allege general personal jurisdiction, but assert that the Court has jurisdiction pursuant to the forum selection clause in three Contribution Agreements. *See* FAC Exs. E–G § 3(d). A valid and enforceable forum selection clause confers personal jurisdiction consistent with New York's long-arm and constitutional due process requirements. *See* Rosenbaum v. DataCom Sys., Inc., No. 13–CV5484(PKC), 2014 WL 572529, at *4 (S.D.N.Y. Feb. 13, 2014) (collecting cases). The question before the Court is whether the forum selection clauses in the three Contribution Agreements that select New York as an appropriate forum confer jurisdiction over the Plaintiffs' claims, which are based on the IMA and the Belief Letter . [5]

The Second Circuit has adopted an extremely broad presumption in favor of the enforceability of forum selection clauses because they "reflect[ ] a strong federal public policy" in favor of " 'orderliness and predictability.' " Martinez v. Bloomberg LP, 740 F.3d 211, 218–19 (2d Cir.2014) (quoting Scherk v. Alberto–Culver Co., 417 U.S. 506, 516 (1974)). The Circuit has echoed the Supreme Court's instruction "that forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.' " TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 475 (2d Cir.2011) (quoting M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972)).

Defendants first argue that Plaintiffs cannot enforce the forum selection clauses in the Contribution Agreements because Plaintiffs were not parties to the agreements. The parties to the Contribution Agreements were Douglas Coe, KSHER AA LLC, and GFLIRB, LLC. *See* FAC Exs. E–G. GFLIRB, LLC is a plaintiff in the Illinois action, while KSHER AA LLC is a defendant in that action. FAC Ex. C. KSHER AA LLC, which "was under common management and control with Gramercy Advisors at the time the Contribution Agreements were entered" and "had identical indirect beneficial ownership and management personnel" with Gramercy Advisors, "entered into the three Contribution Agreements on Gramercy's behalf." Lanava Decl. ¶ 6.

**\*3** " 'In general, 'the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.' " Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 722 (2d Cir.2013) (quoting Aguas Lenders Recovery Grp., LLC v. Suez, S.A., 585 F.3d 696, 701 (2d Cir.2009)). "[A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the nonsignatory is 'closely related' to another signatory." *Id.* at 723. The Coes entered into the Contribution Agreements with KSHER AA LLC, an affiliate of the Gramercy companies, in order to effect the transactions contemplated by the IMA between the Coes and Gramercy Advisors. FAC ¶ 22, Lanava Decl. ¶ 6. It was certainly "foreseeable to [the Coes] that the [Gramercy companies] would seek to enforce the forum selection clauses in the [Contribution] Agreements." Magi XXI, 714 F.3d at 723. As a result, the fact that Gramercy Advisors LLC was not directly a party to the Contribution Agreements is of no moment.

Second, Defendants argue that even if Plaintiffs are considered parties to the Contribution Agreements, the forum selection clause from these agreements does not apply to Plaintiffs' action based on the IMA and the Belief Letter. Defendants rely heavily on Judge Lynch's decision in Sempra Energy Trading Corp. v. Algoma Steel, No. 00–CV–9227(GEL), 2001 WL 282684 (S.D.N.Y. Mar. 22, 2001). In *Sempra,* as here, the parties negotiated one underlying agreement and numerous subsequent agreements to effectuate the transactions contemplated by the original agreement. *Id.* at \* 1–3. Also as here, the *Sempra* plaintiff sued to enforce rights under the original contract while relying on the forum selection clauses in the subsequent agreements (which each contained a New York forum selection clause) to provide the court with venue and jurisdiction. *Id.* at *5. This is where the similarities end, however. In *Sempra,* the original agreement contained an Ontario choice of law provision, *id.;* the IMA here is governed by New York law, FAC Ex. A § 14(d).

Moreover, the forum selection clauses in the later agreements in *Sempra* referred "to 'any action or proceeding relating to *this agreement.*' " [2001 WL 282684, at \*6](#) (emphasis from *Sempra* ). The forum selection clauses in the Contribution Agreements, by contrast, provide that parties waive objection to suit in New York "with respect to any action, suit or proceeding arising out of or based upon this Agreement *or any matter relating hereto.*" FAC Exs. E–G § 3(d) (emphasis added).

"There is ample precedent that the scope of clauses similar to those at issue here is not restricted to pure breaches of the contracts containing the clauses." *Roby v. Corp. ofLloyd's,* 996 F.2d 1353, 1361 (2d Cir.1993); *see also KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC,* 812 F.Supp.2d 377, 383–85 (S.D.N.Y.2011); *Russbeer Int'l LLC v. OAO Baltika Brewing Co.,* No. 07–CV1212(CBA), 2008 WL 905044, at \*5 (E.D.N.Y. Mar. 31, 2008); *Ameritrust Co. Nat'l Ass'n v. Chanslor,* 803 F.Supp. 893, 895–96 (S.D.N.Y.1992) (applying a forum selection clause in notes that were executed to effect the purposes of a more general guarantee, in a suit under the guarantee). "In determining whether contracts are separable or entire, 'the primary standard is the intent manifested, viewed in the surrounding circumstances.' " *Davimos v. Halle,* 60 A.D.3d 576, 577 (1 st Dep't 2009) (quoting *Williams v. Mobil Oil Corp.,* 83 A.D.2d 434, 439 (2d Dep't 1981)). In this case, the parties executed the Contribution Agreements five, thirteen, and twentyfive months after executing the IMA and Belief Letter. *Compare* FAC Exs. E–G *with* FAC Exs. A–B. The later-executed agreements, however, specifically indicated that their forum selection clause would apply to "any action, suit or proceeding arising out of ... this Agreement *or any matter relating hereto.*" FAC Exs. E–G § 3(d) (emphasis added). The parties to the Contribution Agreements rightly understood these Agreements to be integral to the tax avoidance transaction that "was the central purpose of Defendants' retention of Gramercy." Lanava Decl. ¶ 4. As a result, the parties would understand the language of the forum selection clauses incorporating "any matter relating here" as applying to the retention of Gramercy through the IMA and the Belief Letter. The Defendants' therefore waived personal jurisdiction and forum objections to suit under the IMA and the Belief Letter through the forum selection clauses of the Contribution Agreements.

**\*4** This result is in keeping with the Second Circuit's oft-repeated exhortations that "[f]orum selection clauses are *prima facie* valid and should be enforced" and that courts must "give 'substantial deference' to the forum selected by the parties, particularly where this choice 'was made in an arm's-length negotiation by experienced and sophisticated businessmen.' " *Magi XXI,* 714 F.3d at 720–21 (quoting *New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997)) (other quotation marks and citations omitted). Defendants' motion to dismiss for lack of personal jurisdiction and improper venue is therefore denied.

## II. Plaintiffs State a Plausible Claim on Which Relief Could Be Granted

Defendants next move to dismiss several counts of the FAC for failure to state a claim pursuant to Rule 12(b)(6). "At this stage, dismissal is appropriate only where [Plaintiffs] can prove no set of facts consistent with the complaint that would entitle them to relief." *Meyer v. JinkoSolar Holdings Co., Ltd.,* —— F.3d ——, No. 13–616–cv, *slip op.* at 9 (2d Cir. July 31, 2014). "Under *Ashcroft v. Iqbal,* 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' to survive a motion to dismiss." *Nielsen v.. AECOM Tech. Corp.,* ——F.3d ——, No. 13–235–cv, *slip op.* at 7–8 (2d Cir. Aug. 8, 2014) (quoting *Iqbal,* 556 U.S. 662, 678 (2009)).

### A. The IMA and Belief Letter Provide for Inter–Party Indemnification

Defendants assert that the IMA and Belief Letter provide for indemnification only for third-party proceedings, not for lawsuits between the parties. "Under New York law, 'the court should not infer a party's intention' " to extend a general indemnification duty to cover actions between the parties. *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 199 (2d Cir.2003) (quoting *Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 492 (1989)). " '[W]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.' " *Tonking v. Port Auth. of N.Y. and N.J.,* 3 N.Y.3d 486, 490 (2004) (quoting *Hooper,* 74 N.Y.2d at 491). "On the other hand, neither the *Hooper* holding nor anything in the [laws of New York] *prohibits* such indemnification, and courts applying New York law have awarded such indemnification." *Happy Kids, Inc. v. Glasgow,* No. 01–CV–6434(GEL), 2002 WL 72937, at

*3 (S.D.N.Y. Jan. 17, 2002) (emphasis in original); *see, e.g.,* Sagittarius Broad. Corp. v. Evergreen Media Corp., 243 A.D.2d 325, 326 (1st Dep't 1997). "The Court must read the indemnification provision in conjunction with all other provisions in the agreement to avoid inconsistencies or an interpretation which would render another provision superfluous or without effect." Promuto v. Waste Mgmt., Inc., 44 F.Supp.2d 628, 650 (S.D.N.Y.1999).

**\*5** Defendants offer two arguments in support of their assertion that any indemnification provision does not cover inter-party suits. First, Defendants point out that section 7(e) refers to the possibility that Plaintiffs would be assessed "fines and penalties" or might plead *nolo contendere,* language that clearly contemplates the possibility of reimbursement as against government action. Br. at 21–22 (citing FAC Ex. A § 7(e)).[6] Certainly these provisions establish that this is a case in which the parties anticipated that there could be third-party claims (presumably they were most concerned about the United States government). The fact that the parties anticipated the possibility of third party claims is not dispositive of whether the parties also intended for the indemnification provision "to apply to 'actions of any kind or nature,' including actions between the parties." Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 178–79 (2d Cir.2005) (Sotomayor, J.).[7]

Second, Defendants argue that the language in the IMA does not unmistakably apply to inter-party suits. Admittedly, there is no language in section seven than applies *only* to suits between the parties, *cf.* Promuto, 44 F.Supp.2d at 652, and no limited indemnification provision against which this more expansive provision can be compared, *cf.* Mid–Hudson Catskill, 418 F.3d at 178. Nevertheless, the intent of the parties that Plaintiffs would not be liable for their own costs as against Defendants is evident from the text of the section as a whole. First, the IMA repeatedly and "[t]o the fullest extent permitted by law" provides that Plaintiffs cannot be liable to the Defendants. FAC Ex. A § 7(b); *see also id.* § 7(c). Second, in describing its indemnification provision, the IMA (again "[t]o the fullest extent permitted by law," *id.* § 7(e)), provides that Defendants will reimburse Plaintiffs for all costs associated with "investigating or defending against *any claim* or alleged claim, of *any nature* whatsoever," *id.* (emphasis added). The authors of these provisions indicated, in close proximity, that Plaintiffs could not be liable to Defendants and that Defendants would cover Plaintiffs' legal fees for *all* claims arising from the tax shelter transactions (to the fullest extent permitted by law). The Court could plausibly infer the authors' unmistakably clear intent that section seven of the IMA provide for indemnification for inter-party suits. *Accord* Crossroads ABL LLC v. Canaras Cap. Mgmt., LLC, 105 A.D.3d 645, 645–46 (1st Dep't 2013); Happy Kids, 2002 WL 72937, at \*3; *see also* Walker v. Schult, 717 F.3d 119, 124 (2d Cir.2013) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (citation omitted).

### B. Defendants cannot escape indemnification by pleading fraud.

Defendants next argue that the IMA's indemnification provision is inapplicable because fraud is alleged in the Illinois action. Br. at 22–23 (citing FAC Ex. C ¶¶ 24, 26, 35, and 40). There is no real dispute that the allegations in the Illinois action, if proven, would be sufficient to nullify Defendants' indemnification obligations. But this Court cannot simply assume that the allegations made in Defendants' pleadings in Illinois state court are true. *See, e.g.,* Leonard F. v. Isr. Discount Bank of N. Y., 199 F.3d 99, 107 (2d Cir.1999). Moreover, the IMA contains a specific provision requiring Defendants to advance Plaintiffs money "in defense or settlement of any claim that shall be subject to a right of indemnification," provided that Plaintiffs must "repay the amount advanced to the extent that it shall be determined ultimately that [they are] not entitled to be indemnified." FAC Ex. A § 7(f). The fact that Defendants pled fraud in Illinois does not limit their duty to advance costs; dismissal on this ground would therefore be premature. The duty to defend is not coextensive with the duty to indemnify; limitations on Defendants' ultimate liability do not necessarily affect their obligation to advance costs. *See, e.g.,* Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co., 16 N.Y.3d 257, 264 (2011) (the "duty to defend is liberally construed and is broader than the duty to indemnify, 'in order to ensure an adequate defense of the [Indemnitee],' without regard to the [Indemnitee's] ultimate likelihood of prevailing on the merits of a claim") (quoting General Motors Acceptance Corp. v. Nationwide Ins. Co., 4 N.Y.3d 451, 456 (2005)) (alterations omitted).

### C. The IMA and Belief Letter Do Not Contain a Covenant Not to Sue

**\*6** Finally, Defendants challenge Plaintiffs' assertion that the IMA and the Belief Letter contain covenants not to sue. The specific language that Plaintiffs allege to constitute a covenant not to sue in the IMA provides: "[t]o the fullest extent permitted by law, [Defendants] shall indemnify and save harmless [Plaintiffs] ... (the 'Indemnitees'), from and against any and all claims...." FAC Ex. A § 7(e). This language clearly constitutes an indemnification provision. It is limited, however, to cases in which Plaintiffs' "conduct did not constitute willful misconduct, gross negligence, a violation of applicable securities laws, or criminal wrongdoing." *Id.* The IMA also specifically disclaims Plaintiffs' liability to Defendants "[t]o the fullest extent permitted by law," again subject to the same limitations. *Id.* § 7(b).

Read together, these provisions provide that Defendants may sue Plaintiffs, but that they cannot collect damages and will be liable for all costs associated with Plaintiffs' defense of the lawsuit *unless they are able to prove fraud or Plaintiffs' bad faith.*[8] Cf. *Schneider v. Revici,* 817 F.2d 987, 993–94 (2d Cir.1987); *Bridgeport Music, Inc. v. Universal Music Grp.,* 440 F.Supp.2d 342, 345–46 (S.D.N.Y.2006). Insofar as the FAC's first cause of action asserts a claim for breach of the IMA's covenant not to sue, *see* FAC ¶ 32, this claim is dismissed.

Similarly, Defendants agreed in the Belief Letter that they "shall not have any claim against the [Plaintiffs] in the event that any tax liability, problem or issue should arise in connection with the [tax-avoidance] Transactions other than as a direct result of any negligence of the [Plaintiffs] in effecting the investments." FAC Ex. B ¶ 2(c). Like section 7(b) of the IMA, this language disclaims Plaintiffs' liability to Defendants under certain conditions. It does not, however, constitute a promise that Defendants would not sue Plaintiffs —particularly where, as in their Illinois suit, they claim that their cause of action accrued from an area that is not subject to the IMA and Belief Letter's bars to Plaintiffs' liability. Plaintiff's second cause of action, for breach of the Belief Letter's covenant not to sue, is dismissed.

### D. The FAC States a Cause of Action for Specific Performance

Defendants next challenge Plaintiffs' fourth cause of action for specific performance. Br. at 29. This cause of action is pled as an alternative to the breach of contract claims, presumably on the theory that if the Court finds that Defendants have an indemnification obligation but are not yet in breach of it, the Court should order them to comply with it. Defendants assert that the Plaintiffs do not sufficiently plead that they lack an adequate remedy at law. Plaintiffs' "adequate remedies at law" are their breach of contract claims. It is, however, permissible to plead specific performance and breach of contract claims in the alternative. *See, e.g., Richmond Shop Smart, Inc. v. Kenbar Dev. Ctr., LLC,* 32 A.D.3d 423, 423–24 (2d Dep't 2006).

### III. Jacqueline Coe Is Properly Named as a Defendant

**\*7** Defendants seek to dismiss Jacqueline Coe as a defendant, arguing that the allegations that her husband acted as her agent are conclusory. The Court is unpersuaded. The FAC contains allegations that Douglas Coe entered into the IMA, Belief Letter, and Contribution Agreement as Jacqueline Coe's agent. FAC ¶ 11. Under some circumstances this might be insufficient to withstand a motion to dismiss even at the pleadings stage. *See, e.g., RSM Prod. Corp. v. Fridman,* 643 F.Supp.2d 382, 408 (S.D.N.Y.2009). In this case, however, the connection between Douglas and Jacqueline Coe is less attenuated, as they are married. *See Jones–Soderman v. Mazawey,* No. 09–CV–3185(SCR), 2010 WL 54759, at \*4 (S.D.N.Y. Jan. 6, 2010). Moreover, Jacqueline Coe is suing Plaintiffs in Illinois to enforce her rights under the contracts to which she here alleges she is not a party. FAC Ex. C; FAC ¶ 25. She cannot have it both ways. *Am. Steamship Owners Mut. Prot. and Indem. Ass'n v. Am. Boat Co., LLC,* No. 11–CV–6804(PAE), 2012 WL 527209, at \*4–5 (S.D.N.Y. Feb. 17, 2012).

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' second cause of action is dismissed and the first cause of action is modified as discussed above. The Clerk of the Court is respectfully directed to terminate Dkt. 26.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4197370

**Footnotes**

| | |
|---|---|
| 1 | The Court presumes the truth of the Complaint's allegations at this stage in the litigation. *See Meyer v. JinkoSolar Holdings Co ., Ltd.,* —— F.3d ——, No. 13–616–cv, slip op. at 3, 8 (2d Cir. July 31, 2014). |
| 2 | The FAC mentions three contribution agreements. FAC ¶ 22. In their reply brief Defendants alluded to a fourth, which Plaintiffs produced as an attachment to their sur-reply. Dkt. 42 Ex. 1. |
| 3 | Specifically, the first three Contribution Agreements provided that "[t]he parties submit to and accept the nonexclusive jurisdiction of any court of appropriate jurisdiction of the State of New York and the United States of America located in New York City, New York, with respect to any action, suit or proceeding arising out of or based upon this Agreement or any matter relating hereto," FAC Exs. E–G § 3(d), while the fourth provided that "[t]he parties submit to and accept the nonexclusive jurisdiction of any court of appropriate jurisdiction sitting in the County of Los Angeles with respect to any action, suit or proceeding arising out of or based upon this Agreement or any matter relating hereto," Dkt. 42 Ex. 1 § 3(d). |
| 4 | Although Defendants present these arguments separately, Plaintiffs rely on the forum selection clauses of the Contribution Agreements to establish both personal jurisdiction and venue. Because the Court finds that the forum selection clauses apply, venue is appropriate in the Southern District of New York. If, however, the forum selection clauses did not apply, the case would be dismissed for lack of personal jurisdiction. |
| 5 | Defendants argue in their reply brief that the existence of a California forum selection clause in the fourth Contribution Agreement defeats the selection of New York in the other agreements. Because all selections explicitly provide that the parties accept the "nonexclusive" jurisdiction of the relevant forum, the Court rejects this argument. *See [Global Seafood Inc. v. Bantry Bay Mussels Ltd.,](#) 659 F.3d 221, 225 (2d Cir.2011).* |
| 6 | In its entirety, section 7(e) provides:<br>To the fullest extent permitted by law, the [Defendants] shall indemnify and save harmless the [Plaintiffs] ... ("the Indemnitees"), from and against any and all claims, liabilities, damages, losses, costs and expenses, including amounts paid in satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and expenses of investigating or defending against any claim or alleged claim, of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Indemnitee and arise out of or in connection with the business of the [Defendants], managing the Account, any investment made under or in connection with this Agreement, or the performance by the Indemnitee of [their] responsibilities hereunder and against all taxes, charges, duties or levies incurred by the [Plaintiffs] in connection with the purchase of sale or ownership of the Account, provided that an Indemnitee shall be entitled to indemnification hereunder only if the Indemnitee acted in good faith and in a manner the Indemnitee reasonably believed to be in or not opposed to the best interests of the [Defendants] and the Indemnitee's conduct did not constitute willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing. The termination of any proceeding by settlement, judgment, order or upon a plea of *nolo contendere* or its equivalent shall not, of itself, create a presumption that an Indemnitee did not act in good faith and in a manner that the Indemnitee reasonably believed to be in or not opposed to the best interests of the Client or that the Indemnitee's conduct constituted willful misconduct, gross negligence, a violation of applicable securities laws or criminal wrongdoing.<br>FAC Ex. A § 7(d). |
| 7 | This is not to say that it is irrelevant that the contract contemplated actions between third parties—this ratchets up the necessary showing that the parties *also* intended to include inter-party suits. *See, e.g., [Luna v. Am. Airlines,](#) 769 F.Supp.2d 231, 244 (S.D.N.Y.2011).* There is no reason, however, why contracting parties cannot demonstrate the clear intent to indemnify one party against both third-party and inter-party claims. *See, e.g., [Happy Kids,](#) 2002 WL 72937, at \*3.* |
| 8 | The Court is aware that this reading yields the same practical result as agreeing not to sue except in cases of fraud or bad faith—the Court's reading, however, is supported by the parties' contract. |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.