UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to 1:18-CV-05053-LAK. | MASTER DOCKET<br><br>Case No. 1:18-MD-02865-LAK |

## THE GOLDSTEIN LAW GROUP PC 401(K) PROFIT SHARING PLAN'S AND SHELDON GOLDSTEIN'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AMENDED COUNTERCLAIM

GUSRAE KAPLAN NUSBAUM PLLC
Martin H. Kaplan
Kari Parks
120 Wall Street
New York, New York 10005
(212) 269-1400
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Third-Party Counterclaim Defendants The Goldstein Law Group PC 401(K) Profit Sharing Plan and Sheldon Goldstein*

# TABLE OF CONTENTS

| | |
|---|---:|
| **TABLE OF CONTENTS** | i |
| **TABLE OF AUTHORITIES** | ii |
| **I. ED&F Cannot Ignore the Governing Contracts and Relevant Pleadings** | 2 |
| **II. The Goldstein Parties Need Not Indemnify Their Own Lawsuit Against ED&F** | 4 |
| A. The English Fee-Shifting Custom Does Not Save ED&F's Counterclaim | 4 |
| B. ED&F Cannot Be Indemnified for Its Own Negligence or Contract Breaches | 5 |
| **III. ED&F Cannot Pin the English Action on the Goldstein Parties** | 6 |
| A. ED&F is Solely Responsible for Its English Action Liabilities | 6 |
| B. Any English Action Indemnification Claim is Unripe | 8 |
| **CONCLUSION** | 10 |

# TABLE OF AUTHORITIES

### CASES

Arkwright Mut. Ins. Co. v. Bojoirve, Inc., No. 93 Civ 3068 (WK), 1996 WL 361535 (S.D.N.Y. June 27, 1996) (Knapp, J.) ............................................................................................. 3
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ......................................................................................... 3
Askey v. Golden Wine Co. Ltd. [1948] 2 All E.R. 35 .................................................................. 5
Atl. Aviation Corp. v. Costas' Estate, 332 F. Supp. 1002 (E.D.N.Y. 1971) ................................ 6
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................................ 3
Blais Const. Co., Inc. v. Hanover Square Assocs., 733 F. Supp. 149 (N.D.N.Y. 1990) .............. 9
Budinich v. Becton Dickinson & Co., 486 U.S. 196 (1988) ........................................................ 4
Capita (Banstead 2011) Ltd v. RFIB Grp. Ltd [2015] EWCA Civ 1310 .................................... 7
Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671 (2d Cir. 1996) ........................................................................................................................... 9, 10
Dresser-Rand Co. v. Ingersoll Rand Co., No. 14 Civ. 7222 KPF, 2015 WL 4254033 (S.D.N.Y. July 14, 2015) (Failla, J.) ............................................................................... 8
Falls Indus., Inc. v. Consol. Chem. Indus., Inc., 258 F.2d 277 (5th Cir. 1958) ........................... 9
In re Lehman Bros. Holdings Inc., 602 B.R. 564 (Bankr. S.D.N.Y. 2019) (Chapman, J.) ....... 5, 6
Katz v. Berisford Int'l PLC, No. 96 Civ. 8695 (JGK), 2000 WL 959721 (S.D.N.Y. July 10, 2000) (Koeltl, J.) ................................................................................................................ 5
Lafarge Canada Inc. v. Am. Home Assurance Co., No. 15-CV-8957 (RA), 2018 WL 1634135 (S.D.N.Y. Mar. 31, 2018) (Abrams, J.) ......................................................... 8, 9
Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co., 301 F.3d 50 (2d Cir. 2002) ................................................................................................................................... 2
O&G Indus., Inc. v. Nat'l R. R. Passenger Corp., 538 F.3d 153 (2d Cir. 2008) ......................... 4
Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306 (2d Cir. 1986) ................................................. 5
Salzman Sign Co. v. Beck, 10 N.Y.2d 63 (1961) ......................................................................... 2
Too, Inc. v. Kohl's Dep't Stores, Inc., 213 F.R.D. 138 (S.D.N.Y. 2003) (Marrero, J.) ........... 6, 7
U.S. Bank Nat. Ass'n v. Commonwealth Land Title Ins. Co., No. 13 Civ. 7626 NRB, 2015 WL 1291151 (S.D.N.Y. Mar. 23, 2015) (Buchwald, J.) .................................................... 5

### RULES

Supreme Court of the United Kingdom, The Supreme Court Rules 2009, 2009 No. 1603 (L. 17), Part 7: Fees and Costs ................................................................................................ 4

### TREATISES

20 Halsbury's Laws of England § 359 (4th ed. reissued 1993) ................................................... 6
5 Corbin on Contracts § 1037 (1964) ........................................................................................... 5
Chitty on Contracts § 16-146 ........................................................................................................ 5

This Court should dismiss ED&F Man Capital Markets, Ltd's ("**ED&F**") scattershot attempt to pin its own wide-ranging wrongdoing on pensioners like the Goldstein Law Group PC 401(K) Profit Sharing Plan (the "**Plan**") and Sheldon Goldstein (with the Plan, the "**Goldstein Parties**").

ED&F does not address, and therefore concedes, most arguments advanced in the Goldstein Parties' Motion to Dismiss.[1] No law or logic could possibly require the Goldstein Parties to "indemnify" ED&F for losing this lawsuit **to the Goldstein Parties**, and pleading "indemnification" of hypothetical adverse judgments arising out of non-existent proceedings states no claim at all, let alone a ripe one.[2] ED&F continues to insist, however, that the Goldstein Parties must "indemnify" any losses it incurs in "any action or proceeding" (a) "in this jurisdiction" or (b) "in the English Action."

But both the Contracts[3] and the law unequivocally prohibit ED&F from seeking indemnification for its own wrongful conduct, and ED&F has failed to allege or otherwise explain how an adverse judgment in the English Action—where Plaintiff

---

[1] The Amended Counterclaims of Third-Party Defendant ED&F Capital Markets, Ltd is filed as Dkt. 323 and also is annexed as Exhibit 4 to the Declaration of Kari Parks in Support of the Goldstein Parties' Motion to Dismiss ED&F's Amended Counterclaim ("**Parks Decl.**"), Dkt. 350-5.

[2] Compare generally Dkt. 357, Memorandum of Law in Opposition to Motions to Dismiss Counterclaims (June 9, 2020) ("**Opp.**" or the "**Opposition**") and Dkt. 342, The Goldstein Parties' Memorandum of Law in Support of their Motion to Dismiss Amended Counterclaim at 29–30 (the "**MTD**" or the "**Motion**").

[3] The "**Contracts**" are those pleaded in ED&F's Amended Counterclaims: (1) the **Custody Agreement** annexed as Exhibit F to the Goldstein Parties' Amended Third-Party Complaint against ED&F (Dkt. 219-6) and as Exhibit A to the Declaration of Neil S. Binder in Opposition to the Goldstein Parties' MTD (Dkt. 358-1) and (2) the "**T&C Contract**" annexed as Exhibit 2 to ED&F's Amended Counterclaim (Dkt. 324-2).

1

Skatteforvaltningen ("**SKAT**") has accused ED&F of stealing millions in a "unified scheme" that used American pension plans as fronts for its own self-dealing—could be blamed on the Goldstein Parties. See MTD at 4 (citing Further Particulars, Schedule 5T).[4]

Furthermore, ED&F fails to muster any authority supporting its claim against Sheldon Goldstein, whom the Brokerage mentions exactly zero times in its Amended Counterclaim, and who is not a party to either Contract. See Opp. at 23 n.37. Mr. Goldstein's execution of those Contracts "for and on behalf of" the Plan, see Custody Agreement at 19, does not render him personally liable for either Contract. Cf., e.g., Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co., 301 F.3d 50, 54 (2d Cir. 2002) (holding that even a personal liability clause does not establish signatory's intent to be bound individually; "where individual responsibility is demanded[,] the nearly universal practice is that the officer signs twice—once as an officer and again as an individual.") (quoting Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 67 (1961)).

**I. ED&F Cannot Ignore the Governing Contracts and Relevant Pleadings**

Because ED&F pleads contractual indemnification of MDL and English Action losses it may incur "in connection with" the Goldstein Parties, at least four documents govern the Brokerage's Amended Counterclaim: (1) the Custody Agreement, (2) the T&C Contract, (3) the Goldstein Parties' Amended Third-Party Complaint against ED&F (the

---

[4] See Parks Decl. Exhibit 2, Claimant's Further Particulars Regarding the Validity of WHT Refund Applications, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Feb. 28, 2020) (the "**Further Particulars**"); Parks Decl. Exhibit 3, Re-Amended Schedule 5T, Skatteforvaltningen v. Solo Capital Partners LLP et al., CL-2018-000297, CL-2018-00404, CL-2018-000590 (Feb. 28, 2020) ("**Schedule 5T**").

"**ATPC**"), and (4) SKAT's pleadings against ED&F in the English Action (with the ATPC, the "**Relevant Pleadings**"). See, e.g., Arkwright Mut. Ins. Co. v. Bojoirve, Inc., No. 93 Civ 3068 (WK), 1996 WL 361535, at *2–3 (S.D.N.Y. June 27, 1996) (Knapp, J.) (to evaluate motion to dismiss, court should read third-party claims "in conjunction with the original pleadings, "particularly[] in a claim for contribution or indemnity where the allegations are necessarily intertwined with those of the complaint.") (citation omitted).

Yet ED&F tells this Court that it must ignore the Relevant Pleadings. See, e.g., Opp. at 2 ("[T]he Court should give no weight to any pleadings beyond ED&F's own."); 14 n.22 ("[T]he Third-Party Plaintiffs' repeated invocation of their own pleadings in support of their motions to dismiss is improper."); but see id. at 2–3, 13–14 (purporting to summarize MDL claims against ED&F); id. at 8–11 (purporting to summarize SKAT's English Action claims against ED&F); id. at 17–18 (arguing that the Third-Party Plaintiffs' motions "rest on a fundamental misunderstanding of the claims asserted against ED&F").

ED&F should be careful what it wishes for. Standing alone, the Amended Counterclaim merely recites contractual clauses and sprinkles in some factual allegations of lawful activity; it does not state a claim. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 696–97 (2009) (holding that complaint does not state claim where it pleads nothing but "naked legal conclusions" and factual allegations "consistent with legal conduct") (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007)).

## II. The Goldstein Parties Need Not Indemnify Their Own Lawsuit Against ED&F

ED&F does not dispute the Goldstein Parties' own allegations comprise the only MDL claims arising "in connection with" the Goldstein Plan. See generally Opp.

### A. The English Fee-Shifting Custom Does Not Save ED&F's Counterclaim

Tacitly recognizing that there is no universe in which the Goldstein Parties must reimburse ED&F for costs arising out of its loss of this lawsuit to the Goldstein Parties, ED&F now pivots, arguing that its Amended Counterclaim should survive because English custom would award costs to ED&F if it defeats the Goldstein Parties in this MDL or SKAT in the English Action. See Opp. at 18–19.

But costs awarded pursuant to prevailing party provisions are mere remedies, not substantive claims, and thus cannot sustain the Amended Counterclaim. See, e.g., Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988) (holding that attorneys' fees awarded to prevailing party provisions are remedies, not claims, because they raise "issues collateral to and separate from the decision on the merits"); cf., e.g., O&G Indus., Inc. v. Nat'l R. R. Passenger Corp., 538 F.3d 153, 168 (2d Cir. 2008) ("[W]e apply the 'bright-line rule enunciated by the Supreme Court [ . . . ] 'that a decision on the merits is[] final [ . . . ] whether or not there remains for adjudication a request for attorney's fees."); Supreme Court of the United Kingdom, The Supreme Court Rules 2009, 2009 No. 1603 (L. 17), Part 7: Fees and Costs (costs are to be determined by court after judgment).

Moreover, while legal fees incurred in defending an indemnified claim fall within an indemnification obligation, legal fees incurred **to enforce** an indemnification claim— i.e., those that ED&F incurs in pursuing its Amended Counterclaim in this MDL—are not.

4

Compare Opp. at 18 (citing no authority to support argument that ED&F will be entitled to indemnification "if it prevails against the Third-Party Plaintiffs here in the MDL") and Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 315–16 (2d Cir. 1986) ("[C]osts incurred in suing for a breach of contract, to wit, the failure to indemnify" "are not by their nature a part of the claim indemnified against"); accord 5 Corbin on Contracts § 1037 (1964).

### B. ED&F Cannot Be Indemnified for Its Own Negligence or Contract Breaches

Ignoring the controlling Contracts and law, ED&F also argues that the Goldstein Parties must "indemnify" ED&F if the Brokerage loses any "contract-based claims." See Opp. at 20–21. But a party that loses a contract claim "necessarily [has] participated in the wrongdoing by breaching the contract" and therefore cannot seek indemnification. See MTD at 31 (quoting U.S. Bank Nat. Ass'n v. Commonwealth Land Title Ins. Co., No. 13 Civ. 7626 NRB, 2015 WL 1291151, at *2 (S.D.N.Y. Mar. 23, 2015) (Buchwald, J.)).

ED&F also completely ignores the fact that the Contracts expressly contemplate that the Goldstein Parties may sue ED&F for "breach of duty," "willful default," "fraud," and "negligence." Compare See Opp. at 20 (citing In re Lehman Bros. Holdings Inc., 602 B.R. 564, 590–91 (Bankr. S.D.N.Y. 2019) (Chapman, J.)) (arguing that the Goldstein Parties must indemnify ED&F for any of its own wrongful conduct except "willful default") and MTD at 12, 24–29; see also, e.g., Katz v. Berisford Int'l PLC, No. 96 Civ. 8695 (JGK), 2000 WL 959721, at *4 (S.D.N.Y. July 10, 2000) (Koeltl, J.) ("Under English law, an indemnity against the expenses and liabilities that result from the deliberate commission of a crime or fraud generally may not be enforced by the wrongdoer") (citing Askey v. Golden Wine Co. Ltd. [1948] 2 All E.R. 35, 38H; Chitty on Contracts § 16-146 (28th ed. 1999); 20

5

Halsbury's Laws of England § 359 (4th ed. reissued 1993)); Atl. Aviation Corp. v. Costas' Estate, 332 F. Supp. 1002, 1006 (E.D.N.Y. 1971) (holding that a party accused of negligence cannot claim indemnification).

Moreover, the Custody Agreement's "on demand" language is no reason to indemnify ED&F's supposed (and, again, unpleaded) "ever-mounting costs of responding to SKAT's discovery requests in this MDL," particularly since ED&F has repeatedly insisted—including to this Court during this MDL's March 5, 2020 status conference—that discovery in this MDL is duplicative and should follow the timeline of the English Action. See Opp. at 17.

Unlike in Lehman Bros., here, the Goldstein Parties have alleged dozens of facts "suggest[ing] a culpable state of mind consistent with intentional or reckless disregard of duties," pleading securities, common-law fraud, and breach of the covenant of good faith and fair dealing claims that ED&F never even moved to dismiss pursuant to Rule 12(b)(6). See 602 B.R. at 591. To the extent the Amended Counterclaim is rooted in this MDL, ED&F has failed to state a claim or plead subject-matter jurisdiction. See, e.g., Too, Inc. v. Kohl's Dep't Stores, Inc., 213 F.R.D. 138, 140 (S.D.N.Y. 2003) (Marrero, J.) (factors relevant to establishing ripeness of indemnification claim include whether the proposed third-party complaint states a claim).

### III. ED&F Cannot Pin the English Action on the Goldstein Parties

#### A. ED&F is Solely Responsible for Its English Action Liabilities

ED&F still fails to explain how its losses incurred in the English Action could arise "in connection with" the Goldstein Plan. See Opp. at 22–23. ED&F does not contest that

it faces primary, not vicarious, liability for breaching its own duties to SKAT. Compare generally Opp. and MTD at 4, 6–7 (citing Further Particulars; Schedule 5T). Yet—again without authority or analysis—ED&F claims that its Amended Counterclaim survives because an indemnitor like the Goldstein Plan (a) cannot "establish a *de minimis* exemption" to indemnification and (b) should be "held responsible for, at the very least, its proportionate share of the loss." Opp. at 23, 23 n.36.

But a party even just "partially at fault" or "responsible in any degree" cannot seek indemnification, and therefore there is no such thing as "proportionate indemnification." See MTD at 30–33; see also Capita (Banstead 2011) Ltd v. RFIB Grp. Ltd [2015] EWCA Civ 1310 ¶¶ 25–26, 28, 46 (party cannot claim indemnity even if its own wrongful conduct was only a concurrent cause of alleged loss); Too, Inc., 213 F.R.D. at 143 (indemnification is "barred altogether where the party seeking indemnification was itself at fault," even if "both tortfeasors violated the same duty to the plaintiff."); Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 23, 25 (1985) (granting motion to dismiss third-party indemnification claim, noting that "[i]n indemnity the party held legally liable shifts the entire loss to another. [ . . . ] The statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification.").

As in Rosado, billion-dollar Brokerage ED&F was "in the best position to know the dangers inherent in its product:" funding and facilitating European securities transactions for American pension plans. See id. at 26. Allowing ED&F "to shift the ultimate duty of care to others through boilerplate language in a sales contract would

7

erode the economic incentives [broker–dealers] have to maintain safety and give sanction to the marketing of dangerous, stripped down" services. See id.

### B. Any English Action Indemnification Claim is Unripe

Furthermore, because the Amended Counterclaim's "key facts can and will be established" in the English Action, its "lack of ripeness is palpable." See Travelers Prop. Cas. Corp. v. Winterthur Int'l, No. 02 Civ. 2406, 2002 WL 1391920, at *7 (S.D.N.Y. June 25, 2002) (Scheindlin, J.). ED&F essentially "asks this Court to exercise jurisdiction over the action based on the ostensibly high probability that [it] will prevail in the underlying suit" in England. See id. (dismissing claim for declaratory judgment of indemnification liability as unripe where underlying issues were being adjudicated in Kings County Supreme Court).

But the "central difference" between ED&F's pleading and ripe indemnification counterclaims is that this MDL will not adjudicate ED&F's "primary liability." Instead, the Brokerage's Amended Counterclaim necessarily depends on an "underlying[, separate] proceeding in which those contingencies would be resolved:" the English Action. Compare Opp. at 15–17 (citations omitted) and, e.g., Lafarge Canada Inc. v. Am. Home Assurance Co., No. 15-CV-8957 (RA), 2018 WL 1634135, at *6 (S.D.N.Y. Mar. 31, 2018) (Abrams, J.) ("Given the contentious and evolving nature of the [underlying] Canadian litigation, Lafarge's indemnification controversy is not ripe," as "[m]any critical threshold issues are presently unresolved"); Dresser-Rand Co. v. Ingersoll Rand Co., No. 14 Civ. 7222 KPF, 2015 WL 4254033, at *1 (S.D.N.Y. July 14, 2015) (Failla, J.) (dismissing indemnification claim contingent on Canadian litigation).

ED&F's refusal to allege or even just argue **how** its English Action losses could arise "in connection with" the Goldstein Parties demonstrates exactly why its claim is unripe. Compare Opp. at 18-19, 23 (arguing that the Goldstein Parties must indemnify "at the very least, any portion of any adverse judgment in the English Action—or any costs of defense incurred in the English Action—that may be attributable to the Goldstein Parties' transactions," "**should ED&F prevail**") (emphasis added) and, e.g., Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671, 673, 676 (2d Cir. 1996) (granting 12(b)(1) dismissal where parties seeking indemnification had "produced little evidence to demonstrate the likely magnitude of [the indemnitor's] liability," noting that "the facts on which the Court's decision depends have yet to unfold").

As in Lafarge, here, critical threshold issues cannot be resolved in this MDL: both ED&F and the Goldstein Parties deny all liability in their respective litigations, the English Action has made no factual findings of ED&F's potential liability, no trial date has been set in either action, and ED&F "asks the Court to find a duty to indemnify not only based on its as-yet-undetermined liability, but also based on other fact-intensive questions such as [ . . . ] how the underlying events will be tabulated" to calculate damages. 2018 WL 1634135, at *6; accord St. Joe Minerals, 90 F.3d at 674 (indemnification claim unripe where, inter alia, indemnitor "has viable defenses" and "there are numerous other [entities] to share the unestablished remedial costs"). It just is impossible for this "one lawsuit [to] do the work of two." See Blais Const. Co., Inc. v. Hanover Square Assocs., 733 F. Supp. 149, 153 (N.D.N.Y. 1990) (quoting Falls Indus., Inc. v. Consol. Chem. Indus., Inc., 258 F.2d 277, 283 (5th Cir. 1958)) (analyzing Rule 14 and dismissing third-

9

party complaint based on federal statutory law where main complaint based on state common law).

Neither the Amended Counterclaim nor ED&F's Opposition provides "any guide as to the extent or likelihood of [the Goldstein Parties'] potential liability" in the English Action, which alleges that ED&F breached its own duties to SKAT and perpetrated a massive scheme to enrich itself, using pension plans like the Goldstein Plan as mere patsies. See St. Joe Minerals, 90 F.3d at 673 (noting, inter alia, that indemnitor "was only one of sixteen suppliers" at issue). ED&F's speculative wishing cannot establish a ripe claim for this Court's adjudication.

## CONCLUSION

ED&F has abandoned all bases of its Amended Counterclaim except the MDL and English Action, whose allegations of fraudulent, tortious, bad-faith, and other wrongful conduct fall outside the Contracts' indemnification obligations. ED&F also fails to muster any argument that it has stated a claim against Sheldon Goldstein, whom the Amended Counterclaim does not name once. This Court should dismiss the Amended Counterclaim with prejudice pursuant to Rule 12(b)(6).

If and to the extent, however, the Court finds that the Amended Counterclaim states otherwise-viable claims that are unripe, the Court should dismiss the Amended Counterclaim without prejudice pursuant to Rule 12(b)(1).

Dated: New York, New York
      June 23, 2020

                                  GUSRAE KAPLAN NUSBAUM PLLC

                                  By: /s/ Martin H. Kaplan
                                  Martin H. Kaplan
                                  Kari Parks
                                  120 Wall Street
                                  New York, New York 10005
                                  Telephone: (212) 269-1400
                                  Fax: (212) 809-5449
                                  mkaplan@gusraekaplan.com
                                  kparks@gusraekaplan.com

                                  *Counsel for Third-Party Counterclaim Defendants The Goldstein Law Group PC 401(K) Profit Sharing Plan and Sheldon Goldstein*