# Exhibit 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br>Case No. 19-cv-01869 (LAK) | MASTER DOCKET<br><br>18-md-02865 (LAK)<br><br>**ANSWER**<br><br>**JURY TRIAL DEMANDED** |

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS RICHARD MARKOWITZ AND THE CAVUS SYSTEMS LLC ROTH 401(K) PLAN TO THE AMENDED COMPLAINT AND THE CAVUS SYSTEMS LLC ROTH 401(K) PLAN'S COUNTERCLAIMS AGAINST THE CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK – JURY TRIAL DEMANDED**

Defendants Richard Markowitz ("Markowitz") and the Cavus Systems LLC Roth 401(K) Plan (the "Cavus Plan") (together, "Defendants"), by and through their undersigned counsel, hereby answer and assert affirmative defenses, other defenses, and counterclaims as follows to the Amended Complaint (ECF No. 70, April 20, 2020) of Plaintiff Customs and Tax Administration of the Kingdom of Denmark ("Skatteforvaltningen" or "SKAT").  Except as hereinafter expressly admitted, qualified, or otherwise answered, Defendants deny each and every allegation and assertion set forth in the Amended Complaint.  The paragraphs that follow align with the numbered paragraphs in the Amended Complaint, and the counterclaims are asserted thereafter.

## I.   <u>INTRODUCTION</u>[1]

1.       Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 1.

2.       Defendants deny the allegations in Paragraph 2, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

3.       Defendants deny the allegations in Paragraph 3, except refer to the double taxation treaties between Denmark and other countries for a complete and accurate account of their contents and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

4.       Defendants deny the allegations in Paragraph 4, except refer to the double taxation treaty between Denmark and the United States for a complete and accurate account of its contents and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

5.       Defendants deny the allegations in Paragraph 5, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

6.       Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6.

---

[1]       The repetition of the headings and subheadings contained in the Amended Complaint is not an adoption of those headings, nor an admission of their truth.  Rather, Defendants include those headings in this Answer purely for the Court's ease of reference.

7.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7, except deny the allegations in the first sentence of Paragraph 7.

8.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 8.

9.      Defendants deny the allegations in Paragraph 9, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

10.     Defendants deny the allegations in Paragraph 10, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

11.     Defendants deny the allegations in Paragraph 11, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

12.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12.

13.     Defendants deny the allegations in Paragraph 13, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

II.     **JURISDICTION & VENUE**

14.     Paragraph 14 states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 14.

15.     Paragraph 15 states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 15.

III.    **PARTIES**

16.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16.

17.    Defendants admit the allegations in Paragraph 17, except deny any allegation that the Cavus Plan was not a bona fide pension plan under United States law.

18.    Paragraph 18 states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 18, except admit that Markowitz is a citizen of the State of New York.

19.    Defendants deny the allegations in Paragraph 19, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

IV.    **FACTUAL ALLEGATIONS**

   A.    **The Danish Withholding Tax System**

20.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20.

21.    Paragraph 21 states legal conclusions to which no response is required. To the extent a response is required, Defendants refer to the Danish Withholding Tax Act for a complete and accurate account of its contents.

22.    Paragraph 22 states legal conclusions to which no response is required. To the extent a response is required, Defendants refer to the double taxation treaties between Denmark and other countries for a complete and accurate account of their contents.

23.    Paragraph 23 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 23, except refer to Section 401(a) of the Internal Revenue Code and the Convention and Protocol between the

United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal
Evasion with Respect to Taxes on Income for a complete and accurate account of their contents.

24.     Defendants deny knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations in Paragraph 24.

25.     Defendants deny knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations in Paragraph 25.

**B.     The Fraudulent Scheme**

26.     Defendants deny knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations in Paragraph 26.

**1.     The Fraudulent Refund Claims Process**

27.     Defendants deny the allegations in Paragraph 27, except deny knowledge or
information sufficient to form a belief as to the truth or falsity of the allegations concerning other
parties.

28.     Defendants deny knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations in Paragraph 28, except admit that the Cavus Plan received
payments from Goal Taxback Limited ("Goal Taxback").

29.     Defendants deny knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations in Paragraph 29, except refer to the documents referenced in
Paragraph 29 for a complete and accurate account of their contents.

30.     Defendants deny the allegations in Paragraph 30, except deny knowledge or
information sufficient to form a belief as to the truth or falsity of the allegations concerning other
parties.

31.     Defendants deny the allegations in Paragraph 31, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

32.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32.

33.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33.

### 2.     The Role of the Claimants

34.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34.

35.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35, except admit that the Cavus Plan made withholding tax refund claims through Goal Taxback.

36.     Defendants deny the allegations in Paragraph 36, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

37.     Defendants deny the allegations in Paragraph 37, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

38.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38, except admit that the Cavus Plan made withholding tax refund claims through Goal Taxback.

39.     Defendants deny the allegations in Paragraph 39.

40.     Defendants deny the allegations in Paragraph 40, except refer to Section 401(a) of
the Internal Revenue Code and the double taxation treaty between Denmark and the United
States for a complete and accurate account of their contents.

41.     Defendants deny the allegations in Paragraph 41, except refer to Section 401(a) of
the Internal Revenue Code for a complete and accurate account of its contents.

42.     Defendants deny the allegations in Paragraph 42, except deny knowledge or
information sufficient to form a belief as to the truth or falsity of the allegations concerning other
parties.

43.     Defendants deny the allegations in Paragraph 43.

44.     Defendants deny the allegations in Paragraph 44, except refer to Section 401(a) of
the Internal Revenue Code for a complete and accurate account of its contents.

45.     Defendants deny the allegations in Paragraph 45, except refer to the double
taxation treaty between Denmark and the United States for a complete and accurate account of
its contents.

46.     Defendants deny the allegations in Paragraph 46, except deny knowledge or
information sufficient to form a belief as to the truth or falsity of the allegations concerning other
parties.

47.     Defendants deny the allegations in Paragraph 47, except deny knowledge or
information sufficient to form a belief as to the truth or falsity of the allegations concerning other
parties.

3.      **The Role of the Claimants' Authorized Representatives**

48.     Defendants deny the allegations in Paragraph 48, except refer to the power of
attorney form referenced in Paragraph 48 for a complete and accurate account of its contents and

deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

49.     Defendants deny the allegations in Paragraph 49, except refer to the power of attorney form referenced in Paragraph 49 for a complete and accurate account of its contents.

50.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 50, except refer to the power of attorney form referenced in Paragraph 50 for a complete and accurate account of its contents.

51.     Defendants deny the allegations in Paragraph 51, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

52.     Defendants deny the allegations in Paragraph 52, except admit that Markowitz served as a director of a financial services firm based at 40 West 57th Street, New York, NY, and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

53.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 53, except refer to the power of attorney form referenced in Paragraph 53 for a complete and accurate account of its contents.

54.     Defendants deny the allegations in Paragraph 54, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

55.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 55.

56. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 56, except refer to the power of attorney forms referenced in Paragraph 56 for a complete and accurate account of their contents.

57. Defendants deny the allegations in Paragraph 57, except refer to the power of attorney forms referenced in Paragraph 57 for a complete and accurate account of their contents and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

### 4. The Role of the Payment Agents

58. Defendants deny the allegations in Paragraph 58, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

59. Defendants deny the allegations in Paragraph 59, except refer to the power of attorney form referenced in Paragraph 59 for a complete and accurate account of its contents and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

60. Defendants deny the allegations in Paragraph 60, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

61. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 61.

62. Defendants deny the allegations in Paragraph 62, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning other parties.

5.     **The Role of the Broker-Custodians**

63.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 63.

64.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 64, except refer to the dividend credit advice referenced in Paragraph 64 for a complete and accurate account of its contents.

65.     Defendants deny the allegations in Paragraph 65.

## CAUSES OF ACTION

### COUNT I

**(Fraud – Against Defendants Cavus and Markowitz)**

66.     To the extent any answer is required to the allegations in this paragraph, Defendants restate and adopt the answers to Paragraphs 1 through 65.

67.     Paragraph 67 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 67.

68.     Paragraph 68 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 68.

69.     Paragraph 69 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 69.

70.     Paragraph 70 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 70.

### COUNT II

**(Aiding and Abetting Fraud – Against All Defendants)**

71.     To the extent any answer is required to the allegations in this paragraph, Defendants restate and adopt the answers to Paragraphs 1 through 70.

72.     Paragraph 72 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 72.

73.     Paragraph 73 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 73.

74.     Paragraph 74 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 74.

75.     Paragraph 75 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 75.

76.     Paragraph 76 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 76.

77.     Paragraph 77 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 77.

## COUNT III

### (Payment By Mistake – Against All Defendants)

78.     To the extent any answer is required to the allegations in this paragraph, Defendants restate and adopt the answers to Paragraphs 1 through 77.

79.     Paragraph 79 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 79.

80.     Paragraph 80 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 80.

81.     Paragraph 81 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 81.

82.     Paragraph 82 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 82.

83.     Paragraph 83 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 83.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

84.     To the extent any answer is required to the allegations in this paragraph, Defendants restate and adopt the answers to Paragraphs 1 through 83.

85.     Paragraph 85 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 85.

86.     Paragraph 86 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 86.

87.     Paragraph 87 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 87.

88.     Paragraph 88 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 88.

## COUNT V

### (Money Had & Received – Against All Defendants)

89.     To the extent any answer is required to the allegations in this paragraph, Defendants restate and adopt the answers to Paragraphs 1 through 88.

90.     Paragraph 90 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 90.

91.     Paragraph 91 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 91.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Cavus and Markowitz)

92.     To the extent any answer is required to the allegations in this paragraph, Defendants restate and adopt the answers to Paragraphs 1 through 91.

93.     Paragraph 93 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 93.

94.     Paragraph 94 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 94.

95.     Paragraph 95 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 95.

96.     Paragraph 96 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 96.

## REQUEST FOR RELIEF

Defendants state that no response is required to Plaintiff's request for relief in the paragraph following Paragraph 96.  To the extent that a response is required, Defendants deny that Plaintiff is entitled to the relief sought in the Amended Complaint, or any relief at all.

## JURY DEMAND

Defendants demand a trial by jury on all issues so triable.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof, persuasion or production not otherwise legally assigned to it as to any element of any claim asserted in the Amended Complaint, Defendants assert the following affirmative and other defenses:

## FIRST DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

SKAT's claims are barred by the doctrine of the Revenue Rule, which prohibits one sovereign from using courts of another sovereign to enforce its revenue laws.

## THIRD DEFENSE

Defendants acted at all times reasonably and with due care; reasonably relied upon the actions and statements of others; and did not directly or indirectly cause, induce, aid, or abet any acts constituting the claims asserted by SKAT.

## FOURTH DEFENSE

Defendants did not engage in any unlawful conduct, and Defendants are not liable for any unlawful acts that may have been committed by others.

## FIFTH DEFENSE

SKAT has failed to mitigate, minimize, or avoid any alleged damages.

## SIXTH DEFENSE

SKAT is barred from relief by the doctrines of unclean hands, estoppel, laches, release, unjust enrichment, and/or waiver due to SKAT's own acts and/or omissions with reference to the subject matter of the Amended Complaint.

## SEVENTH DEFENSE

The alleged damages sought by SKAT are barred, in whole or in part, by the applicable statute(s) of limitations.

## EIGHTH DEFENSE

The proximate cause of SKAT's injuries, if any, is the conduct of SKAT or others and not any act or omission by Defendants.

## NINTH DEFENSE

The claims alleged in the Amended Complaint are barred in whole or in part for failure to join indispensable or necessary parties.

## TENTH DEFENSE

The recovery by SKAT, if any, should be barred because the subject matter of this lawsuit is the subject of another pending legal or administrative proceeding.

## ELEVENTH DEFENSE

SKAT's action is barred because of SKAT's failure to exhaust administrative and other legal remedies available to it.

## TWELFTH DEFENSE

Defendants hereby adopt and incorporate by reference any and all other legally valid defenses to be asserted by any other defendant in this action to the extent they are applicable to Defendants.

## THIRTEENTH DEFENSE

The claims alleged in the Amended Complaint are barred in whole or in part by res judicata.

## FOURTEENTH DEFENSE

The Amended Complaint fails to plead fraud with the adequate degree of specificity and particularity.

## FIFTEENTH DEFENSE

If SKAT suffered any loss, damage, or injury, such loss, damage, or injury was caused in whole or in part by, and arose out of, SKAT's culpable conduct, including but not limited to, contributory negligence and assumption of the risk.

## SIXTEENTH DEFENSE

If SKAT suffered any loss, damage, or injury, such alleged loss, damage, or injury was caused in whole or in part by the negligence, assumption of risk, and/or fault of other culpable parties and/or third parties to this action, other than Defendants, for whose acts or omissions or breaches of legal duty Defendants are not liable.

## SEVENTEENTH DEFENSE

The claims alleged in the Amended Complaint are barred in whole or in part by collateral estoppel.

## EIGHTEENTH DEFENSE

SKAT's recovery, if any, should be reduced by application of New York's General Obligations Law § 15-108.

## NINETEENTH DEFENSE

This Court lacks subject matter jurisdiction to hear this action.

## TWENTIETH DEFENSE

Defendants complied with all applicable rules and regulations, including all applicable U.S. and Danish securities laws and all applicable SKAT policies and procedures, that were in effect when submitting reclaims for refunds of dividend-withholding tax.

## TWENTY-FIRST DEFENSE

Defendants were entitled to any money received from SKAT.

## TWENTY-SECOND DEFENSE

Plaintiff lacks standing to bring this action.

## TWENTY-THIRD DEFENSE

Defendants hereby reserve and assert all affirmative and other defenses available under any applicable federal or state law.  Defendants presently have insufficient knowledge or information

upon which to form a basis as to whether they may have additional, as yet unstated, affirmative or other defenses available. Defendants have not knowingly or intentionally waived any applicable affirmative defenses and reserve the right to assert additional defenses, counterclaims, cross-claims, and third-party claims at any subsequent stage of this action in the event that discovery indicates that such additional defenses or claims would be appropriate.

* * *

### THE CAVUS SYSTEMS LLC ROTH 401(K) PLAN'S COUNTERCLAIMS AGAINST THE CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK – JURY TRIAL DEMANDED

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant/Counterclaim-Plaintiff The Cavus Systems LLC Roth 401(K) Plan ("the Cavus Plan") brings the following counterclaims against Plaintiff/Counterclaim-Defendant the Customs and Tax Administration of the Kingdom of Denmark ("Skatteforvaltningen" or "SKAT") based on its refusal to reimburse the Cavus Plan for the dividend-withholding tax owed pursuant to the double-taxation treaty between Denmark and the United States.[2]  By bringing these counterclaims, the Cavus Plan does not waive any arguments in support of dismissal of this action or in the collateral proceedings in Denmark. The Cavus Plan recognizes these counterclaims are subject to dismissal under the Court's January 23, 2020 orders (ECF Nos. 261 & 262), but nonetheless asserts them here to preserve them for appeal.

As set forth more fully below, SKAT refuses to refund dividend-withholding tax to the Cavus Plan despite SKAT's prior course of conduct and its own polices, practices and procedures

---

[2]       Convention and Protocol Amending the Convention between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10 (3)(c) and 22(2)(e), May 6, 1948, Treaty Doc. No. 106-12 (effective date Jan. 1, 2001) (the "U.S.-Denmark Tax Treaty").

– and in clear contravention of the U.S.-Denmark Tax Treaty. Thus, as and for its counterclaims against SKAT, the Cavus Plan alleges as follows:

## PARTIES

1.     The Cavus Plan is a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation. The Cavus Plan is administered from the State of New York.

2.     At all relevant times herein, SKAT was the Danish government agency charged with the assessment and collection of Danish taxes.

## JURISDICTION AND VENUE

3.     The Court has subject-matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the civil action is between a foreign state and U.S. citizens.

4.     The Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 because the counterclaims form part of the same case or controversy as SKAT's claims.

5.     The Court has personal jurisdiction over SKAT pursuant to 28 U.S.C. §§ 1605 and 1607 because SKAT has waived its sovereign immunity, if any, and because these counterclaims arise out of the transactions and occurrences set forth in SKAT's Amended Complaint.

6.     Venue is proper in the United States District Court for the Southern District of New York because the factual allegations set forth in these counterclaims arise out of the same transactions and occurrences set forth in SKAT's Amended Complaint.

## STATEMENT OF FACTS

**A.** **Pursuant to the U.S.-Denmark Tax Treaty, a U.S. pension plan that receives a dividend on shares of a Danish company is entitled to 100% of the dividend.**

7.      At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

8.      Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

9.      At all relevant times, SKAT served the Danish government as the agency responsible for refunding dividend-withholding taxes, including refunds of dividend-withholding taxes owed to U.S. pension plans.

**B.** **Until 2015, SKAT paid dividend-withholding tax refund claims that included the required supporting documentation, including claims made on behalf of the Cavus Plan.**

10.      SKAT created the process by which U.S. pension plans could apply for a refund of dividend-withholding taxes.

11.      Pursuant to that process, SKAT paid dividend-withholding tax claims that included the following supporting documentation (the "Supporting Documentation"):

    a.      Form 06.003, entitled "Claim to Relief from Danish Dividend Tax," which was a SKAT-issued form identifying, among other things, the U.S. pension plan claiming the refund and the amount of the refund claim;

    b.      A "tax voucher" (also known as a "credit advice") describing, among other things, the U.S. pension plan's shareholdings, the amount of the dividend received by the U.S. pension plan, and the amount of dividend tax withheld;

    c.      A statement from the IRS certifying the U.S. pension plan's tax-exempt status; and

    d.      A signed power of attorney from the U.S. pension plan's representative authorizing a designated payment agent to submit the withholding tax refund form on behalf of the claimant.

12.     SKAT routinely refunded dividend-withholding taxes that included the Supporting Documentation.   On information and belief, SKAT did so pursuant to its own policies and procedures and the requirements of the U.S.-Denmark Tax Treaty.

13.     In 2014 and 2015, the Cavus Plan submitted 9 dividend-withholding-tax refund claims to SKAT through Goal Taxback Limited ("Goal Taxback") in relation to the dividends net of withholding tax that the Cavus Plan received based on its holding and ownership of stock in Danish companies on the dates necessary to be paid those dividends.

14.     During the relevant times, the Cavus Plan held accounts at Old Park Lane Capital PLC ("Old Park Lane") and Telesto Markets LLP ("Telesto"), each of which served as the Cavus Plan's broker and custodian and provided tax vouchers for each of the Cavus Plan's withholding-tax refund claims.

15.     For all the Cavus Plan's withholding-tax refund claims, the Cavus Plan relied on the reputation and integrity of Old Park Lane and Telesto and reasonably believed that they would only create legitimate records of the Cavus Plan's shareholding, dividend receipts, and withheld taxes.

16.     SKAT refunded dividend-withholding taxes to the Cavus Plan for 8 of the 9 refund applications submitted on behalf of the Cavus Plan.

17.     In August 2015, however, SKAT stopped paying dividend-withholding tax refund requests, even those that contained the required Supporting Documentation.

18.     At that time, one dividend-withholding tax refund claim submitted to SKAT by Goal Taxback on behalf of the Cavus Plan remained pending.

**B.      SKAT wrongfully refuses to process the unpaid claim and owes the Cavus Plan withheld dividend taxes.**

19.      Auriga Industries A/S ("Auriga"), a Danish company, announced its intention to issue dividend payments to its shareholders, with a record date of June 15, 2015 and a pay date of June 16, 2015.

20.      On June 15, 2015, which was the applicable Auriga dividend record date, the Cavus Plan, through its brokerage account with Telesto, held and owned 30,073 shares.

21.      For the 2015 Auriga dividend payment, Auriga paid DKK 323.00 for each share held and owned by its shareholders, including the Cavus Plan.

22.      On information and belief, in accordance with Danish tax law, Auriga withheld and paid to SKAT 27% of the total dividend owed to the Cavus Plan.

23.      The Cavus Plan, through its brokerage account with Telesto, received DKK 7,090,912.67, which, to its knowledge and belief and according to information provided by Telesto, constituted the dividend payment owed to the Cavus Plan for its holding and ownership of 30,073 Auriga shares on June 15, 2015 net the applicable 27% dividend-withholding tax.

24.      The 27% dividend-withholding tax in relation to the Cavus Plan's holding and ownership of 30,073 Auriga shares on June 15, 2015 was DKK 2,622,666.33 (the "Auriga Withholding").

25.      TDC A/S ("TDC"), a Danish company, announced its intention to issue dividend payments to its shareholders, with a record date of August 11, 2015 and a pay date of August 12, 2015.

26.      On August 11, 2015, which was the applicable TDC dividend record date, the Cavus Plan, through its brokerage account with Telesto, held and owned 1,092,402 shares.

27.     For the 2015 TDC dividend payment, TDC paid DKK 1.00 for each share held and owned by its shareholders, including the Cavus Plan.

28.     On information and belief, in accordance with Danish tax law, TDC withheld and paid to SKAT 27% of the total dividend owed to the Cavus Plan.

29.     The Cavus Plan, through its brokerage account with Telesto, received DKK 797,453.46, which, to its knowledge and belief and according to information provided by Telesto, constituted the dividend payment owed to the Cavus Plan for its holding and ownership of 1,092,402 TDC shares on August 11, 2015 net the applicable 27% dividend-withholding tax.

30.     The 27% dividend-withholding tax in relation to the Cavus Plan's holding and ownership of 1,092,402 TDC shares on August 11, 2015 was DKK 294,948.54 (the "TDC Withholding").

31.     The sum of the Auriga Withholding and TDC Withholding is DKK 2,917,614.87 (the "Unpaid Refunds"), which, as of February 3, 2020 equals approximately USD 431,976.22.[3]

32.     On information and belief, SKAT received at least the amount of the Unpaid Refunds from Auriga and TDC in the form of dividend-withholding taxes in connection with Auriga's June 16, 2015 dividend payment to the Cavus Plan and TDC's August 12, 2015 dividend payment to the Cavus Plan.

33.     Telesto confirmed the Cavus Plan's holding and ownership of 30,073 Auriga shares over the dividend date with a tax voucher (the "Auriga Tax Voucher") that Telesto provided to the Cavus Plan.

---

[3]     This conversion is based on an exchange rate of 1.00 USD to 6.75 DKK, which, on information and belief is the exchange rate on February 3, 2020.

34.     Telesto confirmed the Cavus Plan's holding and ownership of 1,092,402 TDC shares over the dividend date with a tax voucher (the "TDC Tax Voucher") that Telesto provided to the Cavus Plan.

35.     The Auriga Tax Voucher and TDC Tax Voucher also described the Cavus Plan's receipt of the dividends and the withholding taxes deducted in relation to the Cavus Plan's holding and ownership of 30,073 Auriga shares and 1,092,402 TDC shares.

36.     Shortly after Telesto issued the Auriga Tax Voucher and the TDC Tax Voucher, Goal Taxback submitted a dividend-withholding tax refund application for the Unpaid Refunds on the Cavus Plan's behalf.

37.     The information in the application submitted to SKAT by Goal Taxback in support of the Unpaid Refunds was, to the best of the Cavus Plan's knowledge, truthful and accurate and provided sufficient information for SKAT to pay the Unpaid Refunds.

38.     Nevertheless, despite SKAT's prior course of conduct and its practices, policies, and procedures, SKAT refused to pay the Unpaid Refunds to the Cavus Plan in contravention of the U.S.-Denmark Tax Treaty.

39.     SKAT continues to knowingly possess the Unpaid Refunds and refuses to pay the Unpaid Refunds to the Cavus Plan.

40.     On information and belief, SKAT has not paid any dividend withholding-tax claims to anyone since before August 2015.

## COUNT I

## Unjust Enrichment

41.     The Cavus Plan repeats and realleges paragraphs 1 through 40 of its counterclaims as though set forth fully herein.

42.     The Cavus Plan is entitled to the Unpaid Refunds pursuant to the U.S.-Denmark Tax Treaty.

43.     Despite SKAT's prior course of conduct and its practices, policies, and procedures, SKAT has refused to pay and knowingly possesses the Unpaid Refunds in contravention of the U.S.-Denmark Tax Treaty.

44.     By retaining the Unpaid Refunds to which the Cavus Plan is entitled, SKAT has been unjustly enriched.

45.     The Cavus Plan has suffered a loss because of SKAT's unjust enrichment.

46.     SKAT is liable to account and pay to Cavus Plan the Unpaid Refunds, plus interest.

## COUNT II

## Promissory Estoppel

47.     The Cavus Plan repeats and realleges paragraphs 1 through 46 of its counterclaims as though set forth fully herein.

48.     SKAT created the process by which it would receive, review, and either deny or accept applications for dividend-withholding taxes pursuant to the U.S.-Denmark Tax Treaty.

49.     Pursuant to that process, and as evidenced by SKAT's prior course of conduct, its practices, policies, and procedures – and in accordance with the U.S.-Denmark Tax Treaty – SKAT promised to pay all dividend-withholding tax refund requests that were supported by what it deemed to be sufficient Supporting Documentation.

50.     SKAT should – and, on information and belief, did – reasonably expect its promises to induce the Cavus Plan and other similarly-situated U.S. pension plans to (i) invest in Danish companies issuing dividends and (ii) submit withholding-tax refund claims with sufficient Supporting Documentation.

51.     The Cavus Plan acted with prudence and in reasonable reliance on SKAT's promise and invested in Auriga on or before June 2015 and TDC on or before August 2015 through its account with Telesto.

52.     The Cavus Plan further acted with prudence and in reasonable reliance on SKAT's promises and, with the assistance of Telesto and Goal Taxback, provided SKAT with sufficient Supporting Documentation for the Unpaid Refunds.

53.     SKAT should have known – and, on information and belief, in fact knew – that the Cavus Plan had relied on SKAT's promise.

54.     At the time of the Cavus Plan's Unpaid Refunds claim, SKAT, on information and belief, knew all important and material facts concerning the Cavus Plan's refund claim, including that (i) the U.S.-Denmark Tax Treaty allowed U.S. pension plans to recover dividend-withholding tax; (ii) its own practices, policies, and procedures only required the submission of the Supporting Documentation; and (iii) based on the Supporting Documentation, the Cavus Plan held and owned Auriga and TDC shares on the applicable record dates, that the Cavus Plan received dividends net withholding tax, and that the Cavus Plan is entitled to the Unpaid Refunds.

55.     SKAT failed to fulfill its promise by failing to pay the Unpaid Refunds to the Cavus Plan.

56.     Because of the Cavus Plan's reliance on SKAT's promise and SKAT's failure to pay the Unpaid Refunds, it has been damaged at least in the amount of the Unpaid Refunds, plus interest.

## **JURY DEMAND**

The Cavus Plan demands a jury trial on all issues so triable.

WHEREFORE, having fully answered all of the allegations of the Amended Complaint to which any answer is required, and for the reasons set forth above, the Cavus Plan and Markowitz pray for relief and judgment:

A.    Dismissing the Amended Complaint with prejudice;

B.    Denying Plaintiff the relief sought in the Amended Complaint;

C.    Ordering that Plaintiff take nothing and that judgment be entered against Plaintiff;

D.    For Counterclaim Counts I and II, SKAT is liable to the Cavus Plan for damages sustained by SKAT's wrongful conduct in refusing to reimburse the Cavus Plan in connection with the Cavus Plan's Reclaim on dividends received in the amount of DKK 2,917,614.87, plus pre- and post-judgment interests, fees, costs and expenses;

E.    Awarding Markowitz and the Cavus Plan costs and expenses incurred as a result of having to defend this action; and

F.    Granting Markowitz and the Cavus Plan such other relief as the Court may deem just and proper.


Dated: June 29, 2020
     New York, New York

By: /s/ Michael G. Bongiorno

MICHAEL G. BONGIORNO
ALAN E. SCHOENFELD
ALLISON STODDART
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800
Michael.Bongiorno@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com
Allison.Stoddart@wilmerhale.com


MICHAEL POSADA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006

(202) 663-6000
Michael.Posada@wilmerhale.com

*Counsel for Richard Markowitz and The
Cavus Systems LLC Roth 401(K) Plan*