# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to:        18-cv-05053,
18-cv-09797, 18-cv-09836, 18-cv-09837,
18-cv-09838, 18-cv-09839, 18-cv-09840,
18-cv-09841, 18-cv-10100

MASTER DOCKET

18-md-2865 (LAK)

## DEFENDANTS DARREN WITTWER, LOUISE KAMINER, ROBERT CREMA AND ACER INVESTMENT GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS SKAT'S AMENDED COMPLAINTS

K&L Gates LLP
John C. Blessington
Brandon R. Dillman
Michael R. Creta
John L. Gavin
One Lincoln Street
Boston, MA  02111
617.261.3100

*Attorneys for Darren Wittwer, Louise Kaminer, Robert Crema, and Acer Investment Group, LLC*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ........................................................................iii

**PRELIMINARY STATEMENT** .................................................................. 1

**BACKGROUND** .......................................................................................... 2

   **I.**      **The Danish Withholding Tax Refund Process** ............................. 2

   **II.**     **The Plans' Withholding Tax Refund Requests and the New Defendants** ........................................................................... 3

   **III.**    **SKAT's Amended Complaints** ...................................................... 4

**ARGUMENT** ................................................................................................ 5

   **I.**      **SKAT's claims against the New Defendants in the Utah and Newsong Actions are time barred.** ......................................... 5

       **A.**     **SKAT's claims against the New Defendants in the Utah Actions are barred by the applicable statutes of limitations.** ............................................................ 6

       **B.**     **SKAT's claims against Acer in the Newsong Action are barred by the applicable statutes of limitations.** ......................... 8

   **II.**     **The Court lacks personal jurisdiction over Louise Kaminer, Robert Crema, and, in the Newsong and Goldstein Actions, over Acer.** ......................................................... 9

       **A.**     **The Court cannot exercise personal jurisdiction over Louise Kaminer and Robert Crema.** ........................ 12

       **B.**     **The Court cannot exercise personal jurisdiction over Acer in the Newsong and Goldstein Actions.** ................................... 13

   **III.**    **SKAT fails to plead its fraud-based claims against the New Defendants with particularity.** .................................................. 14

**CONCLUSION** .......................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Secs. & Derivative Litig.*,
  No. 3-mdl-1529, 2013 WL 6838899 (S.D.N.Y. Dec. 27, 2013)................................................6

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005).........................................................................................15

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
  818 F.2d 145 (2d Cir. 1987).........................................................................................11

*Allen v. Stewart Title Guar. Co.*,
  No. 06-cv-2426, 2007 WL 916859 (E.D. Pa. March 20, 2007)................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................5

*Belcher v. Eli Lilly & Co.*,
  394 Fed. App'x 821 (2d Cir. 2010)................................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................7, 8

*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019) .....................................................................................7

*Boettcher v. Conoco Phillips, Co.*,
  721 Fed. App'x 823 (10th Cir. 2018) .............................................................................6

*Brock v. Thomas*,
  782 F. Supp. 2d 133 (E.D. Pa. 2011) .............................................................................9

*Celtig, LLC v. Perry*,
  347 F. Supp. 3d 976 (D. Utah 2018)...........................................................................9, 12

*Chufen Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020)......................................................................................11

*CIG Expl., Inc. v. State*,
  24 P.3d 966 (Utah 2001)...........................................................................................7

*Cole v. Lawrence*,
  701 A.2d 987 (Pa. Super. Ct. 1997) ..............................................................................8

*Commc'ns Network Int'l, Ltd. v. Mullineaux*,
   187 A.3d 951 (Pa. Super. Ct. 2018)......................................................................8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..............................................................................10, 14

*DOIT, Inc. v. Touche, Ross & Co.*,
   926 P.2d 835 (Utah 1996).....................................................................7

*Eaves v. Designs for Fin., Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011)....................................................16

*Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A.*,
   741 F. Supp. 2d 705 (E.D. Pa. 2010) ....................................................8

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
   No. 13-MD-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015).........................14

*Germinaro v. Fid. Nat. Title Ins. Co.*,
   107 F. Supp. 3d 439 (W.D. Pa. 2015).....................................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..............................................................................10

*Harris v. City of N.Y.*,
   186 F.3d 243 (2d Cir. 1999)...................................................................6

*Hatch v. Davis*,
   102 P.3d 774 (Utah Ct. App. 2004) .......................................................7

*Hinterberger v. Catholic Health Sys., Inc.*,
   284 F.R.D. 94 (W.D.N.Y. 2012)............................................................16

*Int'l Shoe Co. v Wash. Office of Unemp't Comp. & Placement*,
   326 U.S. 310 (1945)..............................................................................10

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011)..............................................................................10

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)............................................................15, 17

*In re Magnetc Audiotape Antitrust Litig.*,
   334 F.3d 204 (2d Cir. 2003)...................................................................9

*Nakahata v. N.Y.–Presbyterian Healthcare Sys. Inc.*,
   723 F.3d 192 (2d Cir. 2013)...................................................................16

iv

*Nat'l Westminster Bank, U.S.A. v. Ross*,
   130 B.R. 656 (S.D.N.Y. 1991) ......................................................................17

*Perelman v. Adams*,
   945 F. Supp. 2d 607 (E.D. Pa. 2013) ...........................................................8

*Pickett v. Migos Touring, Inc.*,
   420 F. Supp. 3d 197 (S.D.N.Y. 2019) ........................................................10

*Pilkington N. Am., Inc. v. Mitsui Suitomo Ins. Co. of Am.*,
   420 F. Supp. 3d 123 (S.D.N.Y. Oct. 30, 2019) ..........................................18

*Rabo Agrifinance, Inc. v. Bliss*,
   227 F. Supp. 3d 1249 (D. Utah 2017) ...........................................................6

*Robinson v. Johnson*,
   313 F.3d 128 (3d Cir. 2002) ..........................................................................6

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ........................................................................15

*Russell/Packard Dev., Inc. v. Carson*,
   78 P.3d 616 (Utah. Ct. App. 2003) ...............................................................7

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ........................................................................15

*Spinnato v. Unity of Omaha Life Ins. Co.*,
   322 F. Supp. 3d 377 (E.D.N.Y. 2018) ........................................................16

*U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ..................................................................10, 12

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) ..................................................................17, 18

*Williams v. Affinion Grp., LLC*,
   889 F.3d 116 (2d Cir. 2018) ........................................................................15

*Wilson 3 Corp. v. Deutsche Bank Nat't Tr. Co.*,
   172 A.D. 3d 960 (N.Y. App. Div. 2019) .....................................................16

*In re Zyprexa Prods. Liab. Litig.*,
   277 F.R.D. 243 (E.D.N.Y. 2011) ...................................................................6

**Statutes**

42 Pa. Cons. Stat. § 5322 ..................................................................................10

42 Pa. Cons. Stat. § 5325 .................................................................................................8

Utah Code Ann. §78B-2-305 ...........................................................................................6

Utah Code. Ann. § 78B-3-201 ........................................................................................10

**Other Authorities**

FED. R. CIV. P. 9(b) ...............................................................................14, 15, 16, 17

FED. R. CIV. P. 12(b)(6) ......................................................................................5

N.Y. C.P.L.R. § 302 ...........................................................................................10

Defendants Darren Wittwer ("Wittwer"), Louise Kaminer ("Kaminer"), and Robert Crema ("Crema") (collectively, the "Individual New Defendants"), and Acer Investment Group, LLC ("Acer" and with the Individual New Defendants, the "New Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the claims against them in the Amended Complaints[1] of Plaintiff Skatteforvaltningen ("SKAT").

## PRELIMINARY STATEMENT

After supposedly learning of alleged wrongdoing related to withholding tax refund applications on June 15, 2015, SKAT waited nearly three years before filing lawsuits against certain U.S. pension plans and related individuals.   Yet, even when it eventually took action, SKAT chose not to sue the New Defendants.  SKAT instead waited another two years before asserting claims against the New Defendants.  These new claims should have been brought years ago and are now barred by the applicable statutes of limitations.

In addition to being too late, the Amended Complaints reveal SKAT's one-size-fits-all approach to this litigation.[2]  SKAT's reliance on generic allegations devoid of any detail dooms

---

[1] "Amended Complaints" refers to the amended complaints identified in the index attached as Exhibit 1 to the Declaration of John Blessington submitted in connection with the New Defendants' motion ("Blessington Decl."). The Amended Complaints themselves are attached as Exhibit 2 to the Blessington Decl. SKAT's Amended Complaints were filed individually in the related actions, and are identical in all material respects for the purposes of this motion with respect to Acer. With respect to the Individual New Defendants, certain allegations differ between the Amended Complaints and those differences are identified where appropriate. The Amended Complaints are referred to collectively as the "Amended Complaints," and all citations to "Am. Compl." are to the amended complaint against DW Construction, Inc. Retirement Plan, et al [Doc. No. 131 in 1:18-cv-09797].

[2] There are a number of allegations in the Amended Complaints that, while they may apply to some of the over 180 U.S. pension plans SKAT has sued, they plainly do not apply to the New Defendants. Such allegations include (1) that the plans associated with the New Defendants are not qualified U.S. pension plans (they are), (2) the Danish trades at issue did not take place (they did), and (3) that the plans associated with the New Defendants used debt financing to conduct the Danish trades (they did not). SKAT ultimately will not be able to prove these unsupported allegations.

the claims against the New Defendants.  Notably, the Amended Complaints' cut-and-paste allegations fail to provide any basis for this Court to exercise personal jurisdiction over several of the New Defendants.  Further, and despite the fact that five years have passed since SKAT purportedly first learned of alleged misconduct, SKAT fails to plead its fraud-based claims with anything close to the required level of particularity.

In short, SKAT made a strategic decision as to which parties to pursue claims against in 2018, and any efforts to pursue the New Defendants at this late date is time barred.  SKAT sat on its rights and must live with the consequences of that decision.  Moreover, by treating all defendants in this multidistrict litigation the same, SKAT has prioritized efficiency over well-pleaded claims.  SKAT's claims against the New Defendants should be dismissed.

## BACKGROUND

### I.    The Danish Withholding Tax Refund Process

Danish companies are required to withhold 27% tax on dividends issued to their shareholders, meaning the shareholders are only entitled to 73% of the full amount of the dividend.[3]   Am. Compl. ¶¶ 3, 21, 22.  Danish companies are expected to report the 27% withholding tax ("WTH Tax") to SKAT, the Danish government entity responsible for the assessment and collection of taxes.  Am. Compl. ¶ 1, 21, 22.

The U.S.-Denmark Tax Treaty ("Tax Treaty"), however, states that such dividends "shall not be taxed" if the "beneficial owner" of the dividends is:

> a pension fund, which is described in subparagraph e) of paragraph 2 of Article 22 [of the Tax Treaty] (Limitation of Benefits), that is a resident of the [U.S.], provided that such dividends are not derived

---

[3] The New Defendants recite SKAT's allegations solely for the purposes of their motion to dismiss. The New Defendants do not admit that any of SKAT's allegations are true and expressly reserve all rights to deny SKAT's allegations should the Court not grant their motion to dismiss.

> from the carrying on of a business by the pension fund or through
> an associated enterprise.

Tax Treaty, Article 10, ¶ 3(c); Am. Compl. ¶ 24.  As such, certain shareholders of Danish companies are entitled to refunds of WTH Tax from SKAT.  Am. Compl. ¶ 23.  Even though SKAT was charged with the assessment and collection of taxes for the Kingdom of Denmark, it was apparently SKAT's "practice" to "accept [WTH Tax refund] claims from designated payment agents" and to "pay claims that included the required supporting documentation," without further investigation.  Am. Compl. ¶¶ 26, 33.

## II.    The Plans' Withholding Tax Refund Requests and the New Defendants

Acer, acting for the Plans,[4] engaged in Danish securities trades for the benefit of the Plans through ED&F Man Capital Markets Ltd. ("ED&F"), and received tax vouchers from ED&F identifying the Plans' shareholding in Danish companies and suffering of WTH Tax (the "ED&F Tax Vouchers").  Am. Compl. ¶¶ 58, 59, 61.  Goal Taxback Ltd., the Plans' payment agent, submitted the ED&F Tax Vouchers to SKAT along with the other required supporting documentation, including the power of attorney, the SKAT administrative form, and certifications from the IRS.  Am. Compl. ¶ 61.  All of the refund claims made to SKAT on behalf of the Plans—each of which was accompanied by and based on the accuracy of an ED&F Tax Voucher and IRS certification—were submitted between March 5, 2014 and April 8, 2015.  Am. Compl. ¶ 39; Goldstein Am. Compl. ¶ 39; Kamco Investments Am. Compl. ¶ 39; Kamco LP Am. Compl. ¶

---

[4] As used herein, "Plans" refers collectively to the DW Construction, Inc. Retirement Plan (the "DWC Plan"), Kamco Investments, Inc. Pension Plan (the "Kamco Investments Plan"), Kamco LP Profit Sharing Pension Plan (the "Kamco LP Plan"), Linden Associates Defined Benefit Plan (the "Linden Plan"), Moira Associates 401(K) LLC Plan (the "Moira Plan"), Riverside Associates Defined Benefit Plan (the "Riverside Plan"), American Investment Group of New York, L.P. Pension Plan (the "AIG Plan") (collectively, the "Utah Plans"), and Newsong Fellowship Church 401(k) Plan (the "Newsong Plan").  Each of the Plans is also referred to herein as a "Plan."

38; Linden Am. Compl. ¶ 38; Moira Am. Compl. ¶ 38; Riverside Am. Compl. ¶ 38; AIG Am. Compl. ¶ 39; Newsong Am. Compl. ¶ 38.  SKAT then issued payments to the Plans based on those applications between March 19, 2014, and May 8, 2015.  Am. Compl. ¶ 46; Goldstein Am. Compl. ¶ 46; Kamco Investments Am. Compl. ¶ 46; Kamco LP Am. Compl. ¶ 45; Linden Am. Compl. ¶ 45; Moira Am. Compl. ¶ 45; Riverside Am. Compl. ¶ 45; AIG Am. Compl. ¶ 46; Newsong Am. Compl. ¶ 45.

According to SKAT, the Individual New Defendants were each the sole participant in one of the Plans.  Wittwer was the sole participant in the DWC Plan.  Am. Compl. ¶ 18.  Kaminer was the sole participant in the Kamco Investments Plan.  Kamco Investments Am. Compl. ¶ 18.  Crema was the sole participant in the AIG Plan.  AIG Am. Compl. ¶ 18.

## III.    SKAT's Amended Complaints

SKAT claims that it first discovered the alleged "scheme" to defraud it into paying tax refunds on June 15, 2015 and that it subsequently stopped paying tax refunds on August 24, 2015. Am. Compl. ¶¶ 6, 8.  After waiting almost three years, SKAT filed claims in various U.S. federal courts against the Plans and certain related individuals seeking damages as a result of the "mistaken" tax refunds it paid to the Plans.  *See e.g.*, Complaint, SKAT v. DW Constr., Inc. Ret. Plan, No. 18-cv-00452 (D. Utah June 7, 2018), Doc. No. 2.  Then, after nearly two more years, SKAT moved for leave to amend its complaints on March 27, 2020.  The Court granted SKAT's request, and SKAT subsequently filed its Amended Complaints on April 22, 2020.

With the Amended Complaints, SKAT asserts claims against the New Defendants for the first time.  SKAT asserts that the Individual New Defendants "exerted control" over specific Plans and caused the alleged fraud.  Am. Compl. ¶ 47.  Regarding Acer, SKAT contends that it was authorized to take certain action in connection with the refund process, coordinated submission of

documents supporting the refunds, and received a fee for its services.  Am Compl. ¶ 61.  SKAT further claims that Acer was aware that the Plans allegedly did not own the shares listed in the refund applications.  Am. Compl. ¶ 62.

Wittwer, Kaminer, and Crema were each added as defendants in the action involving the DWC Plan (18-cv-09797), the action involving the Kamco Investments Plan (18-cv-09836), and the action involving the AIG Plan (18-cv-09841), respectively.  Each of those cases were among the cases transferred to this Court for pre-trial purposes from the District of Utah (collectively, the "Utah Actions").[5]  Acer was added as a defendant in all of the Utah Actions, as well as the Newsong Action (18-cv-10100)[6] and the Goldstein Action (18-cv-05053).[7]

## ARGUMENT

I.   **SKAT's claims against the New Defendants in the Utah and Newsong
     Actions are time barred.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

---

[5] "Utah Actions" refers to the following cases, which were pending in the District of Utah prior to transfer to this Court for pre-trial purposes: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

[6] "Newsong Action" refers to *SKAT v. Newsong Fellowship Church 401k Plan*, 18-cv-10100 (S.D.N.Y.), which was pending in the Eastern District of Pennsylvania prior to transfer to this Court for pre-trial purposes.

[7] "Goldstein Action" refers to *SKAT v. The Goldstein Law Group PC 401k Profit Sharing Plan*, 18-cv-05053 (S.D.N.Y.), which was pending in the Southern District of New York prior to consolidation to this Court for pre-trial purposes.

U.S. 544, 570 (2007)).   A claim may be dismissed on statute of limitation grounds when the "complaint clearly shows the claim is out of time." *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999); *see Boettcher v. Conoco Phillips, Co.*, 721 Fed. App'x 823, 824 (10th Cir. 2018) ("a limitations issue may be resolved on a motion to dismiss when it is evident from the complaint that the plaintiff's claims are untimely"); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (allowing statute of limitations to be raised on a Rule 12(b)(6) motion where the time bar appears applicable on the face of the complaint).

As detailed below, all of SKAT's causes of action against the New Defendants in the Utah and Newsong Actions are subject to limitations periods between two and four years.   SKAT's claims, which SKAT alleges were discovered five years ago, are therefore time barred.

A.   **SKAT's claims against the New Defendants in the Utah Actions are barred by the applicable statutes of limitations.**

In the Utah Actions, SKAT has filed claims against the New Defendants for fraud, negligent misrepresentation, money had and received, aiding and abetting fraud, and unjust enrichment. *See* Am. Compl. ¶¶ 63–88.   Under Utah law,[8]  fraud and aiding and abetting claims must be filed within three years after such claims arise, whereas claims of negligent misrepresentation, money had and received, and unjust enrichment must be filed within four years after such claims arise.   Utah Code Ann. §78B-2-305(3) (three-year limit on fraud claims); *Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 (D. Utah 2017) (three-year limit on aiding

---

[8] In multidistrict litigation, the transferee court "applies the choice of law and statute of limitations rules of the state in which the action was filed." *In re Zyprexa Prods. Liab. Litig.*, 277 F.R.D. 243, 249 (E.D.N.Y. 2011); *see Belcher v. Eli Lilly & Co.*, 394 Fed. App'x 821, 822 n.1 (2d Cir. 2010) (applying California statute of limitations to claim filed in California and transferred to New York as part of a multidistrict litigation); *In re Adelphia Commc'ns Corp. Secs. & Derivative Litig.*, No. 3-mdl-1529, 2013 WL 6838899, at *5 (S.D.N.Y. Dec. 27, 2013) (applying Pennsylvania statute of limitations to claims filed in Pennsylvania, but transferred to New York as part of a multidistrict litigation).

and abetting fraud claims); *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 842 (Utah 1996) (four-year limit on negligent misrepresentation claims); *CIG Expl., Inc. v. State*, 24 P.3d 966, 971 (Utah 2001) (four-year limit on money had and received claims); *Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 620 (Utah. Ct. App. 2003) (four-year limit for unjust enrichment claims).

Given these statutes of limitations, SKAT's claims against the New Defendants in the Utah Actions are time barred.  The limitations periods applicable to SKAT's claims began to run when all of the elements of such claims "c[a]me into being."  *See Bistline v. Parker*, 918 F.3d 849, 879 (10th Cir. 2019) (quoting *Hatch v. Davis*, 102 P.3d 774, 784 (Utah Ct. App. 2004)).  The claims in the Utah Actions are all centered on SKAT's purportedly "mistaken" payment of refunds to certain U.S. pension plans resulting in SKAT's alleged injury.  By SKAT's own admission, all of the elements of the torts allegedly committed by the New Defendants had come into being at some point between March 5, 2014, and May 8, 2015, during which time the Plans applied for WTH Tax refunds and SKAT paid such refunds.  *See* Am. Compl. ¶¶ 39, 46; Goldstein Am. Compl. ¶¶ 39, 46; Kamco Investments Am. Compl. ¶¶ 39, 46; Kamco LP Am. Compl. ¶¶ 38, 45; Linden Am. Compl. ¶¶ 38, 45; Moira Am. Compl. ¶¶ 38, 45; Riverside Am. Compl. ¶¶ 38, 45; AIG Am. Compl. ¶¶ 39, 46; Newsong Am. Compl. ¶¶ 38, 45.  Therefore, considering the Amended Complaints were filed five to six years after SKAT made the relevant refund payments, SKAT's claims against the New Defendants in the Utah Actions fall well outside of the applicable Utah statutes of limitations.

However, even if the limitations periods did not begin to run until June 15, 2015, i.e., when SKAT supposedly discovered the alleged misconduct, SKAT's claims in the Utah Actions are still time barred.  Assuming the limitations periods began to run on June 15, 2015, SKAT needed to file its fraud claims against the New Defendants by June 15, 2018, and its negligent misrepresentation and restitution claims by June 15, 2019.  Yet, SKAT waited until March 27,

7

2020 to even seek leave to amend its original complaints.  The Court should apply the applicable

Utah statutes of limitations and dismiss SKAT's claims against the New Defendants in the Utah

Actions.

**B.    SKAT's claims against Acer in the Newsong Action are barred
by the applicable statutes of limitations.**

In the Newsong Action, SKAT has filed claims against Acer for aiding and abetting fraud,

unjust enrichment, and money had and received.   Newsong Am. Compl. ¶¶ 61–75.   Under

Pennsylvania law,[9] the limitations period for fraud-based claims, including aiding and abetting

fraud, is two years.  *Germinaro v. Fid. Nat. Title Ins. Co.*, 107 F. Supp. 3d 439, 453–54 (W.D. Pa.

2015) ("Pennsylvania imposes a two-year statute of limitations period for [aiding and abetting

fraud]"); *Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 727 (E.D. Pa.

2010) (collecting cases and recognizing that "courts examining Pennsylvania law generally apply

a two-year statute of limitations on aiding and abetting claims").  The limitations period for unjust

enrichment and money had and received claims is four years.  *See Cole v. Lawrence*, 701 A.2d

987, 989 (Pa. Super. Ct. 1997) (citing 42 Pa. Cons. Stat. § 5525(a)(4)) (applying four-year limit

for contract implied in law claims to unjust enrichment claims); *Allen v. Stewart Title Guar. Co.*,

2007 WL 916859, at *2 (E.D. Pa. March 20, 2007) (applying four-year limit to money had and

received claim).  These statutes of limitations must be strictly enforced.  *See Perelman v. Adams*,

945 F. Supp. 2d 607, 614 (E.D. Pa. 2013) ("Pennsylvania courts favor the strict application of

statutes of limitations."); *Commc'ns Network Int'l, Ltd. v. Mullineaux*, 187 A.3d 951, 961 (Pa.

Super. Ct. 2018) (same).

---

[9] As discussed above, the statute of limitations applicable in the transferor court remains the
applicable statute of limitations even after transfer to a multidistrict litigation.  *Supra*, n.8.

Like its claims in the Utah Actions, SKAT's claims in the Newsong Action were filed substantially beyond the applicable limitations periods.  Under Pennsylvania law, a limitations period "begins to run on the date of injury." *Brock v. Thomas*, 782 F. Supp. 2d 133, 141 (E.D. Pa. 2011).  All of SKAT's injuries allegedly attributable to Acer in the Newsong Action occurred between April 23, 2014 and October 31, 2014—the time period SKAT paid WTH Tax refunds to the Newsong Plan.  Newsong Am. Compl. ¶ 45.  Because SKAT filed its claims against Acer in the Newsong Action over five years after paying such WTH Tax refunds, SKAT's claims were filed much too late

But, even if the limitations period did not begin to run until June 15, 2015, i.e., when SKAT supposedly discovered the alleged misconduct, SKAT's claims against Acer in the Newsong Action are still time barred.  Assuming the limitations periods began to run on June 15, 2015, SKAT needed to file its aiding and abetting fraud claim no later than June 15, 2017, and its unjust enrichment and money had and received claims no later than June 15, 2019.  As discussed above, rather than filing its claims by these dates, SKAT waited until March 27, 2020 to ask the Court for permission to amend its original complaints.  The Court should adhere to the applicable Pennsylvania statutes of limitations and dismiss SKAT's claims against Acer in the Newsong Action.

## II.   The Court lacks personal jurisdiction over Louise Kaminer, Robert Crema, and, in the Newsong and Goldstein Actions, over Acer.

When jurisdiction is challenged on a motion to dismiss, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetc Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  Traditionally, there are two categories of personal jurisdiction—general jurisdiction or specific jurisdiction.  A court "only has general jurisdiction over an individual" if he or she is "domiciled in the state." *Celtig, LLC v. Perry*, 347 F. Supp. 3d

976, 982 (D. Utah 2018); *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile").  With respect to a corporate defendant, such as Acer, general jurisdiction is appropriate only when the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v Wash. Office of Unemp't Comp. & Placement*, 326 U.S. 310, 317 (1945)).  A corporate defendant's "place of incorporation and principal place of business are paradigm bases for general jurisdiction."  *Daimler AG*, 517 U.S. at 137 (internal quotation and citations omitted).

On the other hand, to be subject to specific jurisdiction, a defendant must have "purposefully availed itself of the privilege of conducting activities within the forum, . . . the claim must arise out of or relate to the defendant's forum conduct, . . . [and] the exercise of jurisdiction must be reasonable."  *U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011)) (internal quotations omitted).[10]  In order to have purposefully availed itself of the privilege of conducting activities in the state, "the defendant's suit-related conduct must create a substantial connection with the forum."  *Id.*

---

[10] The exercise of personal jurisdiction must also satisfy the requirements of the forum state's long-arm statute.  Here, Utah and Pennsylvania's long arm statutes both authorize the exercise of personal jurisdiction to the fullest extent permitted by the U.S. Constitution.  42 Pa. Cons. Stat. § 5322(b); Utah Code. Ann. § 78B-3-201.  New York law, on the other hand, requires that a defendant's conduct satisfy one of the prongs of New York's long arm statute.  *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 203 (S.D.N.Y. 2019). As relevant here, New York's long-arm statute provides for the exercise of personal jurisdiction on a party who "transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . commits a tortious act within the state . . . ; or . . . commits a tortious act without the state causing injury to person or property within the state."  N.Y. C.P.L.R. § 302.

In multidistrict litigation, the transferee court may exercise personal jurisdiction over the parties only to the extent that the transferor court could. *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 163 (2d Cir. 1987).[11]  Further, when sitting in diversity, a federal court's exercise of personal jurisdiction is limited to the extent it is authorized under the law of the forum state. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497–98 (2d Cir. 2020).  Thus, the transferor courts' jurisdiction over the New Defendants named in the Utah, Newsong and Goldstein Actions would be determined by the laws of Utah, Pennsylvania and New York, respectively.  This Court may, therefore, exercise jurisdiction over Kaminer and Crema only to the extent a court in Utah could exercise such jurisdiction.  With respect to Acer, this Court may exercise jurisdiction over it in the Newsong and Goldstein Actions only to the extent that a court in Pennsylvania or New York could exercise such jurisdiction.

With these principles in mind, SKAT's barebones, cookie-cutter jurisdictional allegations fall woefully short of establishing personal jurisdiction for Kaminer or Crema, and Acer in the Newsong and Goldstein Actions.  As explained below, rather than allege which states Kaminer or Crema are domiciled in, SKAT simply alleges that they are each "a citizen of a State of the United States."[12]  AIG Plan Am. Compl. ¶ 18; Kamco Inv. Am. Compl. ¶ 18.  Similarly, SKAT does not allege that Acer is organized under the laws of Pennsylvania or New York, or maintain its principal place of business in such states.  *See* Goldstein Am. Compl. ¶ 20 (alleging that Acer is a Delaware

---

[11] SKAT implicitly recognizes this rule, as all of its "jurisdictional allegations [in the Amended Complaints] . . . relate to the jurisdiction in which the original action was filed," before transfer to this Court. Am. Comp. ¶ 14 n.3.

[12] SKAT's failure to identify in which "State of the United States" Kaminer or Crema are citizens, as compared to its allegation that Wittwer is a citizen of Utah, is a tacit admission that it cannot establish general jurisdiction over either Kaminer or Crema. *Compare* Am. Compl. ¶ 18 (alleging Wittwer is a citizen of Utah), *with* AIG Plan Am. Compl. ¶ 18 (alleging Crema is a "citizen of a State of the United States") *and* Kamco Inv. Am. Compl. ¶ 18 (alleging Kaminer is a "citizen of a State of the United States").

LLC, registered to do business in Florida, New Jersey, and Utah); Newsong Am. Compl. ¶ 19 (same).  SKAT further fails to allege any conduct by Kaminer or Crema directed at or occurring in Utah, or any conduct to connect Acer to Pennsylvania or New York, that could support the exercise of specific jurisdiction.

    **A.**    **The Court cannot exercise personal jurisdiction over Louise Kaminer and Robert Crema.**

SKAT has failed to plead facts that would permit the Court to exercise either general or specific jurisdiction over Kaminer or Crema.  First, regarding general jurisdiction, SKAT merely alleges that Kaminer and Crema are each "a citizen of a State of the United States."  AIG Plan Am. Compl. ¶18; Kamco Inv. Am. Compl. ¶ 18.  Importantly, SKAT does _not_ allege that Kaminer and Crema are domiciled in Utah, nor can it.  Had SKAT attempted to ascertain the domicile of either Kaminer or Crema, it would have learned that they in fact live in the states of Connecticut and Florida, respectively.  AIG Plan Answer to AIG Am. Compl. ¶ 18; Kamco Inv. Answer to Kamco Investments Am. Compl. ¶ 18.[13]  Thus, the Court is precluded from exercising general jurisdiction over Kaminer and Crema.  *See Celtig, LLC*, 347 F. Supp. 3d at 982 (limiting general jurisdiction over an individual to the individual's domicile).

Regarding specific jurisdiction, SKAT has failed to allege that Kaminer or Crema took actions purposefully directed at Utah, much less a claim arising out of actions creating a "_substantial_ connection with [Utah.]"[14]  *See U.S. Bank Nat'l Assoc.*, 916 F.3d at 150 (emphasis

---

[13] The Answers to the AIG Am. Compl. and the Kamco Investments Am. Compl. were filed concurrently with this motion, in case nos. 18-cv-09841 and 18-cv-09836, respectively.

[14] Based on SKAT's mistaken assertion that this case was transferred from New Jersey, SKAT in fact expressly disavows any attempt to connect Crema's alleged misconduct to Utah.  *See* AIG Plan Am. Compl. ¶ 14 n.2 ("This action was originally filed in the [District of New Jersey]. . . . The jurisdictional allegations made in this Amended Complaint relate to the jurisdiction in which the original action was filed.").

added).   SKAT only alleges that Kaminer and Crema "exerted control" over the Kamco Inv. and AIG Plans, respectively, to "commit the fraud on SKAT."  AIG Plan Am. Compl. ¶ 47; Kamco Inv. Am. Compl. ¶ 47.  Even if this were true (which it is not), the alleged misconduct giving rise to SKAT's claims occurred, according to SKAT, through tax-refund requests submitted by a payment agent to SKAT in Denmark—not in the State of Utah.  *See* AIG Plan Am. Compl. ¶ 5, 53; Kamco Inv. Am. Compl. ¶ 5, 53.  Furthermore, the Kamco Investments Amended Complaint, in which Kaminer is a New Defendant, contains only one allegation that could even tangentially connect Kaminer to Utah, which is that she was the sole participant of a pension plan that used a Utah address in connection with refund applications.  Kamco Investments Am. Compl. ¶¶ 17, 18. The AIG Amended Complaint, in which Crema is a New Defendant, contains even less to support an exercise of personal jurisdiction in Utah, as it lacks any reference to the State of Utah, and instead focuses its allegations on the AIG Plan's use of a New Jersey address in its refund applications, Crema's work for the Plan's sponsor, which used the same New Jersey address, and Acer's maintenance of an office at the same New Jersey address.  *See* AIG Am. Compl. ¶¶ 17–20. Those allegations are insufficient to allow an exercise of personal jurisdiction over Kaminer or Crema in Utah.

**B.    The Court cannot exercise personal jurisdiction over Acer in the Newsong and Goldstein Actions.**

SKAT has similarly failed to allege sufficient facts to allow the Court to exercise personal jurisdiction over Acer in the Newsong and Goldstein Actions under Pennsylvania and New York law, respectively.   In those actions, SKAT alleges Acer is a "Limited Liability Company incorporated in the State of Delaware and is or was registered to do business in the Sates of Florida, New Jersey, and Utah."  Newsong Am. Compl. ¶ 19; Goldstein Am. Compl. ¶ 20.  Notably absent, however, are any allegations regarding Acer's presence in either Pennsylvania or New York.

Therefore, SKAT has not alleged any facts to support an exercise of general personal jurisdiction over Acer in the Newsong or Goldstein Actions.  *See Daimler AG*, 571 U.S. at 118 ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (internal quotation omitted).

As to specific personal jurisdiction, SKAT has not alleged any actions taken by Acer directed at Pennsylvania or New York.  Instead, SKAT vaguely pleads that Acer engaged in certain activities related to Danish securities trades without specifying where such activities took place. *See* Newsong Am. Compl. ¶¶ 59–60 (alleging that Acer knowingly directed ED&F "to take actions that caused the creation and submission of fraudulent 'tax vouchers,' . . . determined which Danish security and number of shares that would be listed in the 'tax vouchers' . . . coordinated the submission of the 'tax vouchers' to non-party Goal . . . [and] received a portion of the dividend withholding tax refund"); Goldstein Am. Compl. ¶¶ 61–62 (same).  None of those allegations, or any other allegations in the Amended Complaints, directly tie Acer to either Pennsylvania or New York.

SKAT's decision to cut corners in an effort to streamline this litigation does not entitle it to fail to plead any facts related to issues as important as personal jurisdiction.  Without any allegations of a substantial connection between Acer's conduct that supposedly gave rise SKAT's claims and the states of Pennsylvania or New York, the exercise of specific jurisdiction over Acer in the Newsong and Goldstein Actions is unsupported.

### III.    SKAT fails to plead its fraud-based claims against the New Defendants with particularity.

Federal Rule of Civil Procedure Rule 9(b) requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  Specifically, the plaintiff must "detail the specific statements that are false or fraudulent,

identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Put another way, the plaintiff must allege the "who, what, when, were, and why of the fraud at issue." *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *33 (S.D.N.Y. Nov. 12, 2015). The rule also requires the plaintiff to "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). "[A] pleading technique that couples a factual statement with a conclusory allegation of fraudulent intent is insufficient to support the inference that the defendants acted . . . with fraudulent intent." *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (internal quotation omitted).

In addition to fraud claims, aiding and abetting fraud and negligent misrepresentation claims are also subject to Rule 9(b)'s heightened pleading requirements. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292–93 (2d Cir. 2006) (applying Rule 9(b) to aiding and abetting fraud claim); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (applying Rule 9(b) to negligent misrepresentation claim). With respect to an aiding and abetting claim, Rule 9(b) requires that the fraud itself be plead with particularity, in addition to the aider and abettor's knowledge and substantial assistance in the fraud. *See Lerner*, 459 F.3d at 492–93 (identifying three elements of aiding and abetting fraud, and analyzing whether knowledge was plead with particularity).

SKAT has failed to allege the "who, what, when, where and why" of the fraud allegedly perpetrated by the Individual New Defendants. According to SKAT, the allegedly fraudulent statements are identified in paragraphs 30 through 32, 39 through 45, and 58 through 62 of the Amended Complaints. *See* Am. Compl. ¶ 64. However, <u>*none*</u> of those identified paragraphs

contain any statements allegedly made by the Individual New Defendants and, in fact, do not even mention the Individual New Defendants.  SKAT's failure to identify even one allegedly fraudulent or misleading statement made by the Individual New Defendants is fatal to its attempt to assert fraud, aiding and abetting fraud, and negligent misrepresentation claims against those defendants. *See Hinterberger v. Catholic Health Sys., Inc.*, 284 F.R.D. 94, 110 (W.D.N.Y. 2012) (denying motion to amend complaint to add fraud claim where "not one statement of misrepresentation is attributed to any particular individual"); *Wilson 3 Corp. v. Deutsche Bank Nat't Tr. Co.*, 172 A.D.3d 960, 962, 102 N.Y.S.3d 102, 105 (N.Y. App. Div. 2019) (affirming dismissal of fraud claim where plaintiff "failed to allege or provide details of any misstatements or misrepresentations made").  Furthermore, SKAT's contention that the Individual New Defendants "controlled" the relevant Plans does not satisfy Rule 9(b)'s requirements.  *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 248 (S.D.N.Y. 2011) (finding plaintiff failed to satisfy Rule 9(b) where negligent misrepresentation claim was based on allegation that defendant "endorsed" a sales packet but "no facts [we]re provided explaining how or in what context [defendant] 'endorsed' the packet, or even what Plaintiffs mean by 'endorsed.'").

Even if SKAT had adequately alleged fraudulent statements made by the Individual New Defendants, SKAT has made no effort to plead fraudulent intent, as required under Rule 9(b).  This deficiency alone is fatal to SKAT's fraud-based claims against the Individual New Defendants. *See Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 377, 401 (E.D.N.Y. 2018) (quoting *Nakahata v. N.Y.–Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 198 (2d Cir. 2013)) ("To successfully plead a fraud claim in New York, [a plaintiff is] required to allege scienter . . . [and to] plead 'facts that give rise to a strong inference of fraudulent intent.'").

SKAT similarly fails to allege any facts indicating that Acer acted with fraudulent intent. Instead, SKAT merely alleges that Acer knew that the Plans "did not own the shares or receive the dividends listed in the 'tax vouchers.'"  Am. Compl. ¶ 62.  Other than that single, conclusory allegation, the Amended Complaints are completely devoid of any allegations concerning Acer's knowledge of supposed fraud, or that Acer intended to defraud SKAT.  Without more particular allegations, SKAT's Amended Complaints fail to state claims against Acer for fraud, aiding and abetting fraud, and negligent misrepresentation.  *See Lerner*, 459 F.3d at 492–93 (dismissing aiding and abetting fraud claim where plaintiff failed to make more than conclusory allegations of defendant's knowledge of underlying fraud); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 664 (S.D.N.Y. 1991) (dismissing fraud claims where intent was plead "in conclusory fashion").

Last, SKAT's reliance on allegations against the Individual New Defendants made upon information and belief is incompatible with Rule 9(b)'s heightened pleading standard.[15]  Although pleading a claim subject to Rule 9(b) based upon information and belief is permitted "when facts are peculiarly within the opposing party's knowledge", this is an "exception to the general rule" that "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."  *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).  Indeed, even when pleading on information and belief is permitted, the complaint nonetheless "must adduce

---

[15]  Notably, SKAT's only factual allegations specifically identifying the Individual New Defendants are made upon information and belief.  Against Louise Kaminer, SKAT alleges only the fact that she was the President of the Plan's sponsor company in support of its allegation that she "caused [the Plan's] fraudulent refund claims to be submitted to SKAT" and "exerted control over [the Plan]."  Kamco Inv. Am. Compl. ¶ 47.  With respect to Crema and Wittwer, SKAT focuses its allegations on the fact that refunds were submitted by Acer using each individual's office address.  Am. Compl. ¶ 47; AIG Plan Am. Compl. ¶ 47.  SKAT also alleges that Crema was the only officer or director of the AIG Plan's sponsoring entity.  AIG Plan Am. Compl. ¶ 48.

specific facts supporting a strong inference of fraud" and the plaintiff "still bears the burden of alleging facts upon which her or his belief is founded."  *Id.*; *Pilkington N. Am., Inc. v. Mitsui Suitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 142 (S.D.N.Y. Oct. 30, 2019).

Considering SKAT has had, at a minimum, nearly five years to investigate the purported fraud, the Individual New Defendants' supposed involvement in causing allegedly fraudulent tax refund claims to be submitted to SKAT is not "peculiarly within the [defendants'] knowledge" and cannot be alleged only upon information and belief.  *See Wexner*, 902 F.2d at 172.  But, even if SKAT's claims against the Individual New Defendants could be plead on information and belief, SKAT fails to provide any facts upon which its belief is founded.  Rather, SKAT's only factual allegations that specifically identify the Individual New Defendants are (1) allegations stating the physical address used in the Plans' refund applications, and (2) allegations stating the Individual New Defendants' role with the Plans or Plan sponsors.  Am. Compl. ¶ 47; AIG Plan Am. Compl. ¶¶ 47, 48; Kamco Inv. Am. Compl. ¶ 47.  These limited allegations do not provide any basis for SKAT's "information and belief" allegations and SKAT's fraud-based claims against the Individual New Defendants should be dismissed.  *See Wexner*, 902 F.2d at 142–43 (dismissing fraud and negligent misrepresentation claims that were based upon "information and belief" allegations).

## <u>CONCLUSION</u>

For the foregoing reasons, SKAT's claims against the New Defendants should be dismissed.

July 2, 2020

Respectfully submitted,

K&L GATES LLP

*/s/ John C. Blessington*
John C. Blessington (*pro hac vice*)
  john.blessington@klgates.com
Brandon R. Dillman (*pro hac vice*)
  brandon.dillman@klgates.com
Michael R. Creta (*pro hac vice*)
  michael.creta@klgates.com
John L. Gavin (*pro hac vice*)
  john.gavin@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
T: 617.261.3100
F: 617.261.3175

*Attorneys for Louise Kaminer, Darren*
*Wittwer, Robert Crema, and Acer Investment*
*Group, LLC*