# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Case No. 18-MD-2865-LAK |
| CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKAT) TAX REFUND LITIGATION | **Honorable Lewis A. Kaplan** |
| | **ANSWER AND COUNTERCLAIMS** |
| This paper applies to: 19-cv-01870 | **JURY TRIAL DEMANDED** |

      Defendants Eclouge Industry LLC Roth 401(K) Plan ("Eclouge") and Perry Lerner ("Lerner") (collectively, the "Lerner Defendants"), by and through their attorneys Kaplan Rice LLP, hereby answer and assert affirmative defenses, other defenses and counterclaims as follows to the April 20, 2020 amended complaint of plaintiff Skatteforvaltningen ("SKAT") (the "Amended Complaint"). The Lerner Defendants deny each and every allegation in the Amended Complaint except as specifically admitted or responded to as follows. The paragraphs that follow align with the numbered paragraphs in the Amended Complaint, and the counterclaims are asserted thereafter.

## I.    INTRODUCTION

      1.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

      2.    Paragraph 2 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, the Lerner Defendants deny the allegations as to themselves. For the allegations in Paragraph 2 against others, no response is required.

      3.    Paragraph 3 of the Amended Complaint states legal conclusions to which no

response is required.  To the extent a response is required, the Lerner Defendants deny the allegations as to themselves.  For the allegations in Paragraph 3 against others, no response is required.

4.      Paragraph 4 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny the allegations as to themselves.  For the allegations in Paragraph 4 against others, no response is required.

5.      Paragraph 5 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny the allegations as to themselves.  For the allegations in Paragraph 5 against others, no response is required.

6.      Paragraph 6 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny the allegations as to themselves.  For the allegations in Paragraph 6 against others, no response is required.

7.      Paragraph 7 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny the allegations as to themselves.  For the allegations in Paragraph 7 against others, no response is required.

8.      The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Amended Complaint and deny the implied allegations that they participated in a fraudulent scheme.

9.      Paragraph 9 of the Amended Complaint and its subparagraphs state legal

conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny the allegations as to themselves.  For the allegations in Paragraph 9 against others, no response is required.

10.    The Lerner Defendants deny the allegations in Paragraph 10 of the Amended Complaint as to themselves.  For the allegations in Paragraph 10 against others, no response is required.

11.    The Lerner Defendants deny the allegations in Paragraph 11 of the Amended Complaint that they participated in a fraud.  For the allegations in Paragraph 11 against others, no response is required.

12.    The Lerner Defendants deny the allegations in Paragraph 12 of the Amended Complaint that they participated in a fraud.  For the allegations in Paragraph 12 against others, no response is required.

13.    The Lerner Defendants deny the allegations in Paragraph 13 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 13 against others, no response is required.

## II.    JURISDICTION & VENUE

14.    Paragraph 14 of the Amended Complaint states legal conclusions to which no response is required.

15.    Paragraph 15 of the Amended Complaint states legal conclusions to which no response is required.

## III.    PARTIES

16.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Amended Complaint.

17.     The Lerner Defendants admit the allegations set forth in Paragraph 17 except deny the implication that Eclouge was not a bona fide pension plan.

18.     The Lerner Defendants admit the allegations in Paragraph 18 of the Amended Complaint that Lerner is a citizen of a State of the United States and was the sole participant in Eclouge.  The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

19.     The Lerner Defendants deny the allegations in Paragraph 19 of the Amended Complaint that they made fraudulent refund claims.  For the allegations in Paragraph 19 against others, no response is required.

20.     As Paragraph 20 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

21.     As Paragraph 21 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

22.     The first sentence of Paragraph 22 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response to that sentence is required, the Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in that sentence of Paragraph 22.  For the allegations in Paragraph 22 against others, no response is required.

23.     The first sentence of Paragraph 23 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny knowledge or information sufficient to form a belief the truth of the allegations in that sentence of Paragraph 23.  For the allegations in Paragraph 23 against others, no response is required.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

24.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25.    Paragraph 25 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants refer the Court to section 65 of the Danish Withholding Tax Act for a complete and accurate statement of its contents.

26.    Paragraph 26 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants refer the Court to the double taxation treaty between Denmark and the shareholder's country of residence for a complete and accurate statement of its contents.

27.    Paragraph 27 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny the allegations in Paragraph 27 as to themselves and refer the Court to the double taxation treaty between Denmark and the United States and section 401(a) of the Internal Revenue Code for a complete and accurate statement of their contents.

28.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Amended Complaint, except state, upon information and belief, that Eclouge was a qualified pension plan.

29.    As Paragraph 29 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

B.    **The Fraudulent Scheme**

30.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Amended Complaint as to what SKAT knew or did and deny that the Lerner Defendants participated in a fraudulent scheme.

1.    **The Fraudulent Refund Claims Process**

31.    The Lerner Defendants deny the allegations in Paragraph 31 of the Amended Complaint that they participated in a fraudulent scheme and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Amended Complaint concerning Payment Agents.

32.    The Lerner Defendants state that Eclouge received payments and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32 of the Amended Complaint concerning Payment Agents or SKAT.

33.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Amended Complaint and its subparagraphs and refer the Court to the documents referred to in Paragraph 33 and its subparagraphs for a complete and accurate statement of their contents.

34.    The Lerner Defendants deny the allegation in Paragraph 34 of the Amended Complaint that they participated in a fraudulent scheme and deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the refund applications or statement from the IRS and state, upon information and belief, that Eclouge was a qualified pension plan and refer the Court to the documents cited.  For the remaining allegations in Paragraph 34 against others, no response is required.

35.    The Lerner Defendants deny the allegations in Paragraph 35 of the Amended

Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 35 against others, no response is required.

36.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Amended Complaint.

37.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Amended Complaint.

## 2.    The Role of the Claimants

38.    The Lerner Defendants deny the allegation in Paragraph 38 of the Amended Complaint that they participated in a fraudulent scheme and deny knowledge or information sufficient to form a belief as to what SKAT has determined.  For the allegations in Paragraph 38 against others, no response is required.

39.    *See* the Lerner Defendants' answer to Paragraph 33.

40.    The Lerner Defendants deny the allegations in Paragraph 40 of the Amended Complaint that they participated in a fraudulent scheme and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40.

41.    The Lerner Defendants deny the allegations in Paragraph 41 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations  in Paragraph 41 against others, no response is required.

42.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Amended Complaint.

43.    The Lerner Defendants deny the implied allegation in Paragraph 43 of the Amended Complaint that they participated in a fraudulent scheme.

44.    The Lerner Defendants deny the allegations in Paragraph 44 of the Amended

Complaint that they participated in a fraudulent scheme, deny knowledge and information sufficient to form a belief as to the truth of the allegations concerning the refund claims submitted to SKAT and refer the Court to section 401(a) of the Internal Revenue Code and the double taxation treaty between Denmark and the United States referenced in Paragraph 44 for a complete and accurate statement of their contents. The Lerner Defendants also state, upon information and belief, that Eclouge was a qualified pension plan.

47. 45. Paragraph 45 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, the Lerner Defendants deny the allegations in Paragraph 45 of the Amended Complaint that they participated in a fraudulent scheme, state, upon information and belief, that Eclouge was a qualified pension plan, and refer the Court to section 401(a) of the Internal Revenue Code for a complete and accurate statement of its contents.

46. Paragraph 46 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, the Lerner Defendants deny the allegations in Paragraph 46 of the Amended Complaint that they participated in a fraudulent scheme and state, upon information and belief, that Eclouge was a qualified pension plan. For the allegations in Paragraph 46 against others, no response is required.

47. Paragraph 47 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, the Lerner Defendants deny the allegations in Paragraph 47 that they participated in a fraudulent scheme and state, upon information and belief, that Eclouge was a qualified pension plan.

48. Paragraph 48 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, the Lerner Defendants deny the

allegations in Paragraph 48 that they participated in a fraudulent scheme, state, upon information and belief, that Eclouge was a qualified pension plan, and refer the Court to section 401(a) of the Internal Revenue Code referenced in Paragraph 48 for a complete and accurate statement of its contents.

49.    Paragraph 49 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny the allegations in Paragraph 49 that they participated in a fraudulent scheme, and refer the Court to the double taxation treaty between Denmark and the United States referenced in Paragraph 49 for a complete and accurate statement of its contents.

50.    The Lerner Defendants deny the allegations in Paragraph 50 of the Amended Complaint that they participated in a fraudulent scheme, state that Eclouge received payments and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50.

51.    The Lerner Defendants deny the allegations in Paragraph 51 of the Amended Complaint that they participated in a fraudulent scheme except state, upon information and belief, that Lerner was the sole participant of five pension plans, including Eclouge.

### 3.    The Role of the Partner Defendants

52.    The Lerner Defendants deny the allegations in Paragraph 52 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 52 against others, no response is required.

53.    The Lerner Defendants deny the allegations in Paragraph 53 of the Amended Complaint that they participated in a fraudulent scheme, state, upon information and belief, that

Eclouge retained a small portion of the refunds and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 53.

54.     The Lerner Defendants state that Eclouge received payments, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Amended Complaint.  For the allegations in Paragraph 54 against others, no response is required.

55.     The Lerner Defendants deny the allegations in Paragraph 55 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 55 against others, no response is required.

56.     As Paragraph 56 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

57.     The Lerner Defendants deny the allegations in Paragraph 57 of the Amended Complaint that they submitted fraudulent reclaims.  For the allegations in Paragraph 57 against others, no response is required.

58.     As Paragraph 58 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

59.     The Lerner Defendants deny the allegations in Paragraph 59 of the Amended Complaint that they submitted fraudulent reclaims.  For the allegations in Paragraph 59 against others, no response is required.

60.     As Paragraph 60 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

61.     As Paragraph 61 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

62.    As Paragraph 62 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

### 4.    The Role of the Claimants' Authorized Representatives

63.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Amended Complaint and refer the Court to the Power of Attorney for a complete and accurate statement of its contents.

64.    *See* the Lerner Defendants' answer to Paragraph 63.

65.    Paragraph 65 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65.

66.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Amended Complaint.

67.    The Lerner Defendants deny the allegations in Paragraph 67 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 67 against others, no response is required.

68.    The Lerner Defendants deny the allegations in Paragraph 68 of the Amended Complaint as to themselves, refer the Court to the double taxation treaty between Denmark and the United States for a complete and accurate statement of its contents, and state, upon information and belief, that Eclouge was a qualified pension plan.  For the allegations in Paragraph 68 against others, no response is required.

69.    As Paragraph 69 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

70.     The Lerner Defendants deny the allegations in Paragraph 70 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 70 against others, no response is required.

71.     The Lerner Defendants deny the allegations in Paragraph 71 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 71 against others, no response is required.

### 5.     The Role of the Payment Agents

72.     The Lerner Defendants deny the allegations in Paragraph 72 of the Amended Complaint that they participated in a fraudulent scheme.  For the allegations in Paragraph 72 against others, no response is required.

73.     Paragraph 73 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and refer to the Power of Attorney for a complete and accurate statement of its contents.

74.     The Lerner Defendants deny the allegations in Paragraph 74 of the Amended Complaint that they participated in a fraudulent scheme, state, upon information and belief, that Eclouge was a qualified pension plan, and deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the documentation submitted by the Payment Agents.  For the allegations in Paragraph 74 against others, no response is required.

75.     The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Amended Complaint and its subparagraphs concerning the documentation submitted by the Payment Agents.

76.    The Lerner Defendants deny the allegations in Paragraph 76 of the Amended Complaint that they participated in a fraudulent scheme, and deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 concerning the submission to SKAT or distributions by the Payment Agents.

### 6.    The Role of the Broker-Custodians

77.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Amended Complaint.

78.    The Lerner Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Amended Complaint and its subparagraphs and refer the Court to the Dividend Credit Advice for a complete and accurate statement of its contents.

79.    Paragraph 79 of the Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, the Lerner Defendants deny allegations in Paragraph 79 of the Amended Complaint and state, upon information and belief, that Eclouge was a qualified pension plan.

### CAUSES OF ACTION

### COUNT I
### (Fraud – Against Defendants Eclouge, Lerner, Klugman, Markowitz, RAK and Routt)

80.    The Lerner Defendants repeat and reallege their answers to paragraphs 1 through 79 as if set forth fully herein.

81.    The Lerner Defendants deny the allegations in Paragraph 81 of the Amended Complaint as to themselves.  For the allegations in Paragraph 81 against others, no response is required.

82.      The Lerner Defendants deny the allegations in Paragraph 82 of the Amended Complaint as to themselves.  For the allegations in Paragraph 82 against others, no response is required.

83.      The Lerner Defendants deny the allegations in Paragraph 83 of the Amended Complaint as to themselves.  For the allegations in Paragraph 83 against others, no response is required.

84.      The Lerner Defendants deny the allegations in Paragraph 84 of the Amended Complaint as to themselves.  For the allegations in Paragraph 84 against others, no response is required.

<u>**COUNT II**</u>
**(Aiding and Abetting Fraud – Against All Defendants)**

85.      The Lerner Defendants repeat and reallege their answers to paragraphs 1 through 84 as if set forth fully herein.

86.      The Lerner Defendants deny the allegations in Paragraph 86 of the Amended Complaint as to themselves.  For the allegations in Paragraph 86 against others, no response is required.

87.      The Lerner Defendants deny the allegations in Paragraph 87 of the Amended Complaint as to themselves.  For the allegations in Paragraph 87 against others, no response is required.

88.      The Lerner Defendants deny the allegations in Paragraph 88 of the Amended Complaint as to themselves.  For the allegations in Paragraph 88 against others, no response is required.

89.     The Lerner Defendants deny the allegations in Paragraph 89 of the Amended Complaint as to themselves.  For the allegations in Paragraph 89 against others, no response is required.

90.     The Lerner Defendants deny the allegations in Paragraph 90 of the Amended Complaint as to themselves.  For the allegations in Paragraph 90 against others, no response is required.

91.     The Lerner Defendants deny the allegations in Paragraph 91 of the Amended Complaint as to themselves.  For the allegations in Paragraph 91 against others, no response is required.

## COUNT III
### (Payment By Mistake – Against All Defendants)

92.     The Lerner Defendants repeat and reallege their answers to paragraphs 1 through 91 as if set forth fully herein.

93.     As Paragraph 93 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

94.     As Paragraph 94 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

95.     As Paragraph 95 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

96.     As Paragraph 96 of the Amended Complaint does not contain allegations concerning the Lerner Defendants, no response is required.

97.     The Lerner Defendants deny the allegations in Paragraph 97 of the Amended Complaint as to themselves.  For the allegations in Paragraph 97 against others, no response is required.

## COUNT IV
**(Unjust Enrichment – Against All Defendants)**

98.    The Lerner Defendants repeat and reallege their answers to paragraphs 1 through 97 as if set forth fully herein.

99.    The Lerner Defendants deny the allegations in Paragraph 99 of the Amended Complaint as to themselves.  For the allegations in Paragraph 99 against others, no response is required.

100.    The Lerner Defendants deny the allegations in Paragraph 100 of the Amended Complaint as to themselves.  For the allegations in Paragraph 100 against others, no response is required.

101.    The Lerner Defendants deny the allegations in Paragraph 101 of the Amended Complaint as to themselves.  For the allegations in Paragraph 101 against others, no response is required.

102.    The Lerner Defendants deny the allegations in Paragraph 102 of the Amended Complaint as to themselves.  For the allegations in Paragraph 102 against others, no response is required.

## COUNT V
**(Money Had & Received – Against All Defendants)**

103.    The Lerner Defendants repeat and reallege their answers to paragraphs 1 through 102 as if set forth fully herein.

104.    The Lerner Defendants deny the allegations in Paragraph 104 of the Amended Complaint as to themselves.  For the allegations in Paragraph 104 against others, no response is required.

105.    The Lerner Defendants deny the allegations in Paragraph 105 of the Amended Complaint as to themselves.  For the allegations in Paragraph 105 against others, no response is required.

### COUNT VI
### (Negligent Misrepresentation – Against Defendants Eclouge, Lerner, Klugman, Markowitz, RAK and Routt)

106.    The Lerner Defendants repeat and reallege their answers to paragraphs 1 through 105 as if set forth fully herein.

107.    The Lerner Defendants deny the allegations in Paragraph 107 of the Amended Complaint as to themselves.  For the allegations in Paragraph 107 against others, no response is required.

108.    The Lerner Defendants deny the allegations in Paragraph 108 of the Amended Complaint as to themselves.  For the allegations in Paragraph 108 against others, no response is required.

109.    The Lerner Defendants deny the allegations in Paragraph 109 of the Amended Complaint as to themselves.  For the allegations in Paragraph 109 against others, no response is required.

110.    The Lerner Defendants deny the allegations in Paragraph 110 of the Amended Complaint as to themselves.  For the allegations in Paragraph 110 against others, no response is required.

### REQUEST FOR RELIEF

The allegations set forth in the "WHEREFORE" clause constitute SKAT's request for relief to which no response is required.  To the extent that a response is required, the Lerner Defendants deny that SKAT is entitled to the relief requested, or any other relief.

## JURY DEMAND

The Lerner Defendants demand a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, laches, waiver, and estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join necessary and indispensable parties.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's failure to exhaust its administrative or other legal remedies available to it.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any and all purported damages are the result of Plaintiff's conduct, including but not limited to: negligence, contributory negligence, assumption of risk, and wrongful or unauthorized acts.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because it lacks standing to assert claims on behalf of the sovereign.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the subject matter of this Amended Complaint is the subject of pending legal proceedings in another jurisdiction.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate its alleged damages.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of res judicata.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that such purported damages have or will be paid or indemnified by a collateral source.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against the Lerner Defendants are barred, in whole or in part, because any purported loss, damages or injuries were caused, in whole or in part, by the negligence, assumption of risk, fault of other culpable parties and/or third parties to this action, other than the Lerner Defendants, for whose acts, omissions or breaches of legal duty the Lerner Defendants are not liable.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, and any recovery by Plaintiff should be reduced by application of New York General Obligations Law § 15-108.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by collateral estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

The court lacks subject matter jurisdiction to hear this action.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by waiver and release.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The claims alleged in the Amended Complaint are barred by the long-standing doctrine of the Revenue Rule, which prohibits one sovereign from using courts of another sovereign to enforce its revenue laws.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Amended Complaint fails to plead fraud with the adequate degree of specificity and particularity.

## NINETEENTH AFFIRMATIVE DEFENSE

Defendants hereby adopt and incorporate by reference any and all other legally valid defenses to be asserted by any other defendant in this action to the extent they are applicable to Defendants.

## TWENTIETH AFFIRMATIVE DEFENSE

The recovery by SKAT, if any, should be barred because the subject matter of this lawsuit is the subject matter of another pending legal or administrative proceeding.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The Lerner Defendants reserve the right to add or amend these Affirmative Defenses based on information that may become known during the course of discovery.

## THE ECLOUGE INDUSTRY LLC ROTH 401(K) PLAN'S COUNTERCLAIMS AGAINST THE CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant/Counterclaim-Plaintiff Eclouge Industry LLC Roth 401(K) Plan (the "Eclouge Plan") brings the following counterclaims against Plaintiff/Counterclaim-Defendant Skatteforvaltningen ("SKAT") based on its refusal to reimburse the Eclouge Plan for the dividend-withholding tax owed pursuant to the double-taxation treaty between Denmark and the United States.[1] By bringing these counterclaims, the Eclouge Plan does not waive any arguments in support of dismissal of this action or in the collateral proceedings in Denmark.

As set forth more fully below, SKAT refuses to refund dividend-withholding tax to the Eclouge Plan despite SKAT's prior course of conduct and its own policies, practices and procedures – and in clear contravention of the U.S.-Denmark Tax Treaty.  Thus, as and for its counterclaims against SKAT, the Eclouge Plan allege as follows:

### PARTIES

1.  The Eclouge Plan is a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.  The Eclouge Plan lists its address in the state of New York.

2.  At all relevant times herein, SKAT was the Danish government agency charged with the assessment and collection of Danish taxes.

---

[1]    Convention and Protocol Amending the Convention between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10 (3)(c) and 22(2)(e), May 6, 1948, Treaty Doc. No. 106-12 (effective date Jan. 1, 2001) (the "U.S.-Denmark Tax Treaty").

## JURISDICTION AND VENUE

3.      The Court has subject-matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the civil action is between a foreign state and U.S. citizens.

4.      The Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 because the counterclaims form part of the same case or controversy as SKAT's claims.

5.      The Court has personal jurisdiction over SKAT pursuant to 28 U.S.C. §§ 1605 and 1607 because SKAT has waived its sovereign immunity, if any, and because these counterclaims arise out of the transactions and occurrences set forth in SKAT's Amended Complaint.

6.      These counterclaims are properly venued for purposes of trial in the United States District Court for the Southern District of New York because the factual allegations set forth in these counterclaims arise out of the same transactions and occurrences set forth in SKAT's Amended Complaint.

## STATEMENT OF FACTS

**A.      Pursuant to the U.S.-Denmark Tax Treaty, a U.S. pension plan that receives a dividend on shares of a Danish company is entitled to 100% of the dividend.**

7.      At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

8.      Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

9.      At all relevant times, SKAT served the Danish government as the agency responsible for refunding dividend-withholding taxes, including refunds of dividend-withholding taxes owed to U.S. pension plans.

> **B.      Until 2015, SKAT paid dividend-withholding tax refund claims that included the required supporting documentation, including claims made on behalf of the Eclouge Plan.**

10.     SKAT created the process by which U.S. pension plans could apply for a refund of dividend-withholding taxes.

11.     Pursuant to that process, SKAT paid dividend-withholding tax claims that included the following supporting documentation (the "Supporting Documentation"):

> a.      Form 06.003, entitled "Claim to Relief from Danish Dividend Tax," which was a SKAT-issued form identifying, among other things, the U.S. pension plan claiming the refund and the amount of the refund claim;
>
> b.      A "tax voucher" (also known as a "credit advice") describing, among other things, the U.S. pension plan's shareholdings, the amount of the dividend received by the U.S. pension plan, and the amount of dividend tax withheld;
>
> c.      A statement from the IRS certifying the U.S. pension plan's tax-exempt status; and
>
> d.      A signed power of attorney from the U.S. pension plan's representative authorizing a designated payment agent to submit the withholding tax refund form on behalf of the claimant.

12.     SKAT routinely refunded dividend-withholding taxes that included the Supporting Documentation.  Upon information and belief, SKAT did so pursuant to its own policies and procedures and the requirements of the U.S.-Denmark Tax Treaty.

13.     In 2014 and 2015, the Eclouge Plan submitted seventeen dividend-withholding-tax refund claims to SKAT through Goal TaxBack Limited ("Goal TaxBack") in relation to the dividends net of withholding tax that the Eclouge Plan received based on its holding and ownership of stock in Danish companies on the dates necessary to be paid those dividends.

14.      Old Park Lane Capital PLC ("Old Park Lane"), the Eclouge Plan's broker and custodian, provided tax vouchers for each of the Eclouge Plan's withholding-tax refund claims.

15.      For all the Eclouge Plan's withholding-tax refund claims, the Eclouge Plan relied upon Old Park Lane and reasonably believed that Old Park Lane would only create legitimate records of the Eclouge Plan's shareholding, dividend receipts, and withheld taxes.

16.      SKAT refunded dividend-withholding taxes to the Eclouge Plan for fifteen of the seventeen refund applications submitted on behalf of the Eclouge Plan.

17.      In August 2015, however, SKAT stopped paying dividend-withholding tax refund requests, even those that contained the required Supporting Documentation.

18.      At that time, two dividend-withholding tax refund claims submitted to SKAT by Goal TaxBack on behalf of the Eclouge Plan remained pending (the "Unpaid Refunds").

19.      Upon information and belief, at this time, there was no change to Denmark's tax laws, policies and treaties, including the method and manner in which applicants would receive refunds after submission of the Supporting Documentation to SKAT.

20.      Upon information and belief, SKAT did not assert any changes in requirements for the Supporting Documentation.

21.      Upon information and belief, due to mounting public and political pressure in Denmark concerning dividend arbitrage trading which led to the firing of SKAT's director general in 2016, SKAT refused to abide by the U.S.-Denmark Tax Treaty and retaliated against the Eclouge Plan and other similarly-situated U.S. pension plans by withholding payment of pending dividend-withholding tax refund claims submitted to SKAT.

C.    **SKAT wrongfully refuses to process the unpaid claims and owes the Eclouge Plan withheld dividend taxes.**

22.    Auriga Industries A/S ("Auriga"), a Danish company, announced its intention to issue dividend payments to its shareholders, with a record date of June 15, 2015 and a pay date of June 16, 2015.

23.    On June 15, 2015, which was the applicable dividend record date for Auriga, the Eclouge Plan, through its brokerage account with Old Park Lane, held and owned 90,719 shares.

24.    For the June 2015 Auriga dividend payment, Auriga paid DKK 323.00 for each share held and owned by its shareholders, including the Eclouge Plan.

25.    On information and belief, in accordance with Danish tax law, Auriga withheld and paid to SKAT 27% of the total dividend owed to the Eclouge Plan.

26.    The Eclouge Plan, through its brokerage account with Old Park Lane, received DKK 21,390,633.01, which, to its knowledge and belief and according to information provided to the Eclouge Plan, constituted the dividend payment owed to the Eclouge Plan for its holding and ownership of 90,719 shares of Auriga on June 15, 2015 net the applicable 27% dividend-withholding tax.

27.    The 27% dividend-withholding tax in relation to the Eclouge Plan's holding and ownership of 90,719 shares of Auriga on June 15, 2015 was DKK 7,911,603.99, which, as of February 3, 2020 equals approximately USD $1,172,089.48 (the "June Refund").[2]

28.    On information and belief, SKAT received at least the amount of the June Refund from Auriga in the form of dividend-withholding taxes in connection with Auriga's June 2015 dividend payment to the Eclouge Plan.

---

[2]    This conversion is based on an exchange rate of 1.00 USD to 6.75 DKK, which, upon information and belief is the exchange rate on February 3, 2020.

29. Old Park Lane confirmed the Eclouge Plan's holding and ownership of 90,719 shares of Auriga over the dividend date with a credit advice (the "Auriga Credit Advice") that Old Park Lane provided to the Eclouge Plan.

30. The Auriga Credit Advice also described the Eclouge Plan's receipt of the dividend and the withholding tax suffered in relation to the Eclouge Plan's holding and ownership of 90,719 shares of Auriga.

31. Shortly after Old Park Lane issued the Auriga Credit Advice, Goal TaxBack submitted a dividend-withholding tax refund application for the June Refund on the Eclouge Plan's behalf.

32. TDC A/S ("TDC"), a Danish company, announced its intention to issue dividend payments to its shareholders, with a record date of August 11, 2015 and a pay date of August 12, 2015.

33. On August 11, 2015, which was the applicable dividend record date for TDC, the Eclouge Plan, through its brokerage account with Old Park Lane, held and owned 3,225,571 shares.

34. For the August 2015 TDC dividend payment, TDC paid DKK 1.00 for each share held and owned by its shareholders, including the Eclouge Plan.

35. On information and belief, in accordance with Danish tax law, TDC withheld and paid to SKAT 27% of the total dividend owed to the Eclouge Plan.

36. The Eclouge Plan, through its brokerage account with Old Park Lane, received DKK 2,354,666.83, which, to its knowledge and belief and according to information provided to the Eclouge Plan, constituted the dividend payment owed to the Eclouge Plan for its holding and

ownership of 3,225,571 shares of TDC on August 11, 2015 net the applicable 27% dividend-withholding tax.

37.    The 27% dividend-withholding tax in relation to the Eclouge Plan's holding and ownership of 3,225,571 shares of TDC on August 11, 2015 was DKK 870,904.17, which, as of February 3, 2020 equals approximately USD $129,022.84 (the "August Refund").

38.    Upon information and belief, SKAT received at least the amount of the August Refund from TDC in the form of dividend-withholding taxes in connection with TDC's August 2015 dividend payment to the Eclouge Plan.

39.    Old Park Lane confirmed the Eclouge Plan's holding and ownership of 3,225,571 shares of TDC over the dividend date with a credit advice (the "TDC Credit Advice") that Old Park Lane provided to the Eclouge Plan.

40.    The TDC Credit Advice also described the Eclouge Plan's receipt of the dividend and the withholding tax suffered in relation to the Eclouge Plan's holding and ownership of 3,225,571 shares of TDC.

41.    Shortly after Old Park Lane issued the TDC Credit Advice, Goal TaxBack submitted a dividend-withholding tax refund application for the August Refund on the Eclouge Plan's behalf.

42.    The information in the applications submitted to SKAT by Goal TaxBack in support of the Unpaid Refunds was, to the best of the Eclouge Plan's knowledge, truthful and accurate and provided sufficient information for SKAT to pay the Unpaid Refunds.

43.    Upon information and belief, there was no change to Denmark's tax laws, policies, and treaties during this time, including the method and manner in which SKAT would review and approve dividend-withholding tax refund requests.

44.     Upon information and belief, SKAT did not inform the Eclouge Plan and other similarly-situated U.S. pension plans of any changes in the method and manner in which dividend-withholding-tax refund requests would be reviewed and approved.

45.     Upon information and belief, SKAT has not made the determination that the Eclouge Plan is not entitled to the two-pending dividend-withholding refund claims submitted to SKAT by Goal TaxBack on behalf of the Eclouge Plan.

46.     Nevertheless, despite SKAT's prior course of conduct and its practices, policies, and procedures, SKAT penalized the Eclouge Plan by refusing to pay the Unpaid Refunds to the Eclouge Plan.

47.     Upon information and belief, SKAT acted in in contravention of the U.S.-Denmark Tax Treaty due to mounting public and political pressure in Denmark.

48.     SKAT continues to knowingly possess the Unpaid Refunds and refuses to pay the Unpaid Refunds to the Eclouge Plan.

49.     Upon information and belief, SKAT has not paid any dividend withholding-tax claims to anyone in accordance with the U.S.-Denmark Tax Treaty since before August 2015.

## COUNT 1

### Unjust Enrichment

50.     The Eclouge Plan repeats and realleges paragraphs 1 through 49 of its counterclaims as though set forth fully herein.

51.     The Eclouge Plan is entitled to the Unpaid Refunds pursuant to the U.S.-Denmark Tax Treaty.

52.     SKAT knowingly possesses and refuses to pay the Unpaid Refunds in contravention of the U.S.-Denmark Tax Treaty.

53.    By retaining and confiscating the Unpaid Refunds to which the Eclouge Plan is entitled, SKAT has been unjustly enriched.

54.    The Eclouge Plan has suffered a loss because of SKAT's unjust enrichment.

55.    SKAT is liable to account and pay to the Eclouge Plan the Unpaid Refunds, plus interest.

**COUNT II**

**Promissory Estoppel**

56.    The Eclouge Plan repeats and realleges paragraphs 1 through 55 of its counterclaims as though set forth fully herein.

57.    SKAT created the process by which it would receive, review, and either deny or accept applications for dividend-withholding taxes pursuant to the U.S.-Denmark Tax Treaty.

58.    Pursuant to that process, and as evidenced by SKAT's prior course of conduct, its practices, policies, and procedures – and in accordance with the U.S.-Denmark Tax Treaty – SKAT promised to pay all dividend-withholding tax refund requests that were supported by what it deemed to be sufficient Supporting Documentation.

59.    SKAT should – and, upon information and belief, did – reasonably expect its promises to induce the Eclouge Plan and other similarly-situated U.S. pension plans to (i) invest in Danish companies issuing dividends and (ii) submit withholding-tax refund claims with sufficient Supporting Documentation.

60.    Upon information and belief, SKAT did not inform the Eclouge Plan and other similarly-situated U.S. pension plans of any changes in the method and manner that all dividend-withholding tax refunds requests would be reviewed and approved.

61.     The Eclouge Plan acted with prudence and in reasonable reliance on SKAT's promise and invested in Auriga on or before June 2015 and TDC on or before August 2015 through its account with Old Park Lane.

62.     The Eclouge Plan further acted with prudence and in reasonable reliance on SKAT's promises and, with the assistance of Old Park Lane and Goal TaxBack, provided SKAT with sufficient Supporting Documentation for the Unpaid Refunds.

63.     SKAT should have known – and, upon information and belief, in fact knew – that the Eclouge Plan had relied on SKAT's promise.

64.     At the time of the Eclouge Plan's June Refund and August Refund claims, SKAT, upon information and belief, knew all important and material facts concerning the Eclouge Plan's refund claims, including that (i) the U.S.-Denmark Tax Treaty allowed U.S. pension plans to recover dividend-withholding tax; (ii) its own practices, policies, and procedures only required the submission of the Supporting Documentation; and (iii) based on the Supporting Documentation, the Eclouge Plan held and owned shares of Auriga and TDC on the applicable record dates, that the Eclouge Plan received dividends net withholding tax, and that the Eclouge Plan is entitled to the Unpaid Refunds.

65.     SKAT failed to fulfill its promise by failing to pay the Unpaid Refunds to the Eclouge Plan.

66.     Because of the Eclouge Plan's reliance on SKAT's promise and SKAT's failure to pay the Unpaid Refunds, it has been damaged at least in the amount of the Unpaid Refunds, plus interest.

## **JURY DEMAND**

The Eclouge Plan demands a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, the Lerner Defendants respectfully request that this Court enter judgment as follows:

A.    Dismissing the Amended Complaint with prejudice;

B.    Enter judgment in favor of the Eclouge Plan on its counterclaims against SKAT;

C.    Award the Eclouge Plan the amount it was damaged and/or to which it is entitled, including but not limited to, the Unpaid Refund, together with pre-judgment interest, fees, costs, and expenses;

D.    Award the Lerner Defendants their attorneys' fees and costs; and

E.    Grant such other relief as the Court may deem just and proper.

Dated: July 3, 2020
New York, New York

Respectfully submitted,

KAPLAN RICE LLP

By:  _/s/Michelle A. Rice_____

142 West 57th Street Suite 4A
New York, New York 10019
(212) 235-0300 (telephone)
(212) 235-0301 (facsimile)

*Attorneys for Defendants Perry Lerner and*
*Eclouge Industry LLC Roth 401(k) Plan*

31