**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to: 18-cv-05053;
18-cv-09797; 18-cv-09836; 18-cv-09837;
18-cv-09838; 18-cv-09839; 18-cv-09840;
18-cv-09841; 18-cv-10100.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINTS**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ........................................................................................................................3

LEGAL STANDARD................................................................................................................10

ARGUMENT .............................................................................................................................11

I.     THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER ACER IN
THE GOLDSTEIN AND NEWSONG ACTIONS AND OVER ROBERT
CREMA AND LOUISE KAMINER IN THE UTAH ACTIONS. ...................................11

       A.     The Court has specific jurisdiction over Acer in SKAT's Newsong action. .........12

       B.     The Court has specific jurisdiction over Acer in SKAT's Goldstein action..........14

       C.     The Court has specific jurisdiction over Louise Kaminer and Robert
Crema.....................................................................................................................16

II.    SKAT'S UTAH AND PENNSYLVANIA CLAIMS ARE NOT TIME-BARRED. ........19

       A.     SKAT's claims in the Utah actions are not time-barred. .......................................20

       B.     SKAT's claims against Acer in the Newsong action are not time-barred. ............23

III.   SKAT'S NEW CLAIMS IN ITS UTAH AND PENNSYLVANIA ACTIONS
RELATE BACK TO ITS ORIGINAL COMPLAINTS...................................................24

       A.     SKAT's claims against the Acer
defendants relate back under Rule 15(c)(1)(C)......................................................24

       B.     SKAT's claims against the Acer defendants relate back under Utah law. ............27

IV.   SKAT PLEADED ITS CLAIMS SUFFICIENTLY..........................................................28

CONCLUSION...........................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) ...............................................................19

*Abdell v. City of New York*, 759 F. Supp. 2d 450 (S.D.N.Y. 2010) ........................25, 27

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................10

*Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez*, 305 F.3d 120 (2d Cir. 2002) ...............................................................................................................13, 15

*Berenda v. Langford*, 914 P.2d 45 (Utah 1996) ...........................................................21

*Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) ...........................................19, 21, 22

*Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153 (3d Cir. 1989) ................19

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017) .............11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174 (1985) ...............12, 15

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011) .............................................................................................................32

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018) ........11, 12, 17

*Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292 (S.D.N.Y. 2014) .....19

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) .....................16

*CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247 (D. Utah 2019) ................................................................................................................22

*In re Customs and Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2020 WL 3962066 (S.D.N.Y. Jul. 13, 2020) ....................31

*In re Customs and Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2020 WL 70938 (S.D.N.Y. Jan. 7, 2020) ........................16

*Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) ................10

*Drelles v. Mfrs. Life Ins. Co.*, 881 A.D.2d 822 (Pa. Super. Ct. 2005) ..........................24

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*In re Eur. Gov't Bonds Antitrust Litig.*, No. 19 Civ. 2601 (VM), 2020 WL 4273811 (S.D.N.Y. Jul. 23, 2020) ........................................................17

*Fine v. Checcio*, 870 A.2d 850 (Pa. 2005)..................................................23

*First Interstate Fin. LLC v. Savage*, 458 P.3d 1161 (Utah Ct. App. 2020) ..................................22

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ........................10

*Gary Porter Constr. v. Fox Constr., Inc.*, 101 P.3d 371 (Utah Ct. App. 2004).......................27, 28

*GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308 (S.D.N.Y. 2009) ........................................................16

*Global Mins. & Metals Corp. v. Holme*, 35 A.D.3d 93 (1st Dep't 2006)....................................32

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999).................................19

*Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996).................................................33

*Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 130 S. Ct. 2485 (2010) ....................................26

*LBBW Luxembourg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504 (S.D.N.Y. 2014) ........................................................33, 34

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13 Civ. 4650 (JFK), 2015 WL 769573 (S.D.N.Y. Feb. 24, 2015) ....................................32

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013)..........10, 11, 16

*Morgan v. Petroleum Prods. Equip. Co.*, 92 A.3d 823 (Pa. Super. Ct. 2014)..............................23

*MP Cool Invs. Ltd. v. Forkosh*, 142 A.D.3d 286 (1st Dep't 2016)................................32

*Nicolaou v. Martin*, 195 A.3d 880 (Pa. 2018) ...............................................23

*Nunez v. Albo*, 53 P.3d 2 (Utah Ct. App. 2002)...........................................28

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007).........................................12, 14

*Ottens v. McNeil*, 239 P.3d 308 (Utah Ct. App. 2010) ....................................28

*Outhouse PR, LLC v. Northstar Travel Media, LLC*, No. 19 Civ. 5979 (NRB), 2020 WL 2512092 (S.D.N.Y. May 15, 2020) ........................................10

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Parmalat Sec. Litig.*, 377 F. Supp. 2d 390 (S.D.N.Y. 2005)..................................19

*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270 (10th Cir. 2005)........................16

*Ramiro Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019) ....................10

*In re Refco Sec. Litig.*, 759 F. Supp. 2d 301 (S.D.N.Y. 2010).......................................29

*Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18 (2d Cir. 1998)...............................18

*RKA Film Fin., LLC v. Kavanaugh*, 171 A.D.3d 678 (1st Dep't 2019) ..........................32

*Robinson v. Morrow*, 99 P.3d 341 (Utah Ct. App. 2004) ..............................................21

*Ruddy v. Mt. Penn Borough Mun. Auth.*, Nos. 1120 C.D. 2013, 1200 C.D. 2013,
    2014 WL 1852002 (Pa. Commw. Ct. May 6, 2014)................................................23

*Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741 (Utah 2005)....................20, 21, 22

*S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10 Civ. 7547
    (KMW)(RLE), 2013 WL 1234937 (S.D.N.Y. Mar. 26, 2013).........................26, 27

*Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488 (BSJ)(HBP), 2012 WL
    6097726 (S.D.N.Y. Dec. 4, 2012)..........................................................................20

*In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019) .................... *passim*

*Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006) ............................................25

*Suez Equity Invs. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001)...................33

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143 (2d Cir. 2019)...............11, 12

*In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125 (E.D.N.Y. 2014)........................27

**Statutes and Rules**

42 Pa. Cons. Stat. Ann. § 5322(b).................................................................................12

42 Pa. Cons. Stat. Ann. § 5521(b).................................................................................20

CPLR § 302(a)(1) .........................................................................................................15

Fed. R. Civ. P. 4(m).................................................................................................24, 25

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Fed. R. Civ. P. 9(b) ...................................................................................................10

Fed. R. Civ. P. 12(b)(2) ............................................................................................10

Fed. R. Civ. P. 12(b)(6) ........................................................................................ *passim*

Fed. R. Civ. P. 15(c)(1)(A) .......................................................................................24

Fed. R. Civ. P. 15(c)(1)(C) .......................................................................................24

Fed. R. Civ. P. 15(c)(1)(C)(i) ....................................................................................25

Fed. R. Civ. P. 15(c)(1)(C)(ii) ...................................................................................26

Utah Code Ann. § 78-27-22 .......................................................................................16

Utah Code Ann. § 78B-2-103 .....................................................................................20

Utah Code Ann. § 78B-2-305(3) .................................................................................21

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to the motions to dismiss SKAT's amended complaints by (i) defendants Acer Investment Group, LLC ("Acer"), Darren Wittwer, Louise Kaminer, and Robert Crema (collectively, the "Acer defendants") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6),[1] and (ii) defendants The Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein plan"), Sheldon Goldstein and Scott Goldstein (collectively, the "Goldsteins") pursuant to Rule 12(b)(6).[2]

## PRELIMINARY STATEMENT

The Court should deny both motions because it has jurisdiction over Acer, Louise Kaminer and Robert Crema with respect to all of SKAT's claims against them, none of SKAT's claims is time-barred on the face of its pleadings, and, as the Court has already held, SKAT sufficiently pleaded each of its claims.

SKAT commenced the nine actions subject to these two motions in May and June 2018, along with 131 others, alleging in each that a U.S. pension plan submitted to SKAT fraudulent tax refund applications, in which the plan falsely claimed to own tens of millions of dollars of Danish stock and to have received dividends on those shares, from which tax was withheld.  In each of the nine actions, SKAT sued the pension plan itself and the plan's authorized representative.  SKAT commenced actions in New York, Pennsylvania and Utah, respectively, because those were forums where the pension plans identified themselves as being located in

---

1.  *See* Defs. Darren Wittwer, Louise Kaminer, Robert Crema, and Acer Inv. Grp., LLC's Mot. to Dismiss SKAT's Am. Compls., No. 18-md-2865 (LAK), ECF Nos. 392-94.

2.  *See* Goldstein Law Grp. PC 401(K) Profit Sharing Plan's, Sheldon Goldstein's, and Scott Goldstein's Mot. to Dismiss Am. Compl., No. 18-md-2865 (LAK), ECF Nos. 396-98.

their refund applications or where SKAT concluded the authorized representative was subject to jurisdiction.

During discovery, SKAT learned that in addition to the pension plans and their authorized representatives, whose identities were apparent on the face of the refund applications, others also participated in the fraud.  SKAT learned that Acer acted as agent for each of the nine pension plans in coordination with the plan's custodian, ED&F Man Capital Markets Limited, with respect to the plan's purported trading in Danish stocks, purportedly certified in ED&F's false tax vouchers, which were submitted to SKAT.  SKAT also learned that in some instances, the authorized representative who signed the power of attorney was not the participant, or not the sole participant, in the plan.

Thus, in March 2020, SKAT sought, and was subsequently granted, leave to amend its complaints to add Acer as a defendant in all nine actions, and to add Darren Wittwer, Louise Kaminer, Robert Crema and Scott Goldstein as a defendant in SKAT's action against their respective pension plan.

Acer argues that it is not subject to jurisdiction in SKAT's New York and Pennsylvania actions, but SKAT's pleadings, and the record thus far, clearly show that Acer purposefully directed its activities at those States and that SKAT's claims arise directly from Acer's suit-related contacts with each forum.  Similarly, Louise Kaminer and Robert Crema are subject to jurisdiction in Utah on SKAT's claims because their *alter ego* pension plans are subject to jurisdiction there and they have substantial suit-related contacts with the forum through the acts of their agent Acer.

Further, the Acer defendants argue that all SKAT's claims against them in the Utah and Pennsylvania actions are time-barred.  But on a Rule 12(b)(6) motion, a claim may be dismissed

as time-barred only if the complaint clearly shows that it is out of time.  When SKAT's causes of action against the Acer defendants in its Utah and Pennsylvania actions accrued is not clearly shown by SKAT's complaints because in each case a discovery rule applies.  SKAT's complaints do not show when SKAT knew or should have known the relevant facts underlying its claims against the Acer defendants, whose identity and roles were not disclosed in the refund applications submitted to SKAT.  And, in any event, each of SKAT's claims against the Acer defendants in its amended complaints relates back to its original complaints.

Finally, the arguments by the Acer defendants and the Goldsteins that SKAT did not plead sufficiently its claims fail.  Many repeat arguments that the Court rejected in denying a previous Rule 12(b)(6) motion in these multi-district proceedings, and the rest are similarly meritless.

## BACKGROUND

The nine actions that are the subject of these motions to dismiss are among the 184 that SKAT commenced in 11 federal District Courts, now consolidated in this multi-district litigation for pretrial purposes, against U.S. pension plans and related individuals and entities arising from the defendants' submission to SKAT of fraudulent applications for refunds of tax purportedly withheld from dividends that Danish companies issued to their shareholders.

### SKAT's original complaints in these actions.

In May and June 2018, SKAT commenced these nine actions in three jurisdictions: (i) seven in the District of Utah, each against a U.S. pension plan and its respective "authorized representative" Stacey Kaminer, Joan Schulman or David Schulman;[3] (ii) one in the Eastern

---

3.  SKAT's seven actions in the District of Utah were commenced against (i) DW Construction, Inc. Retirement Plan and Stacey Kaminer; (ii) Kamco Investments, Inc. Pension Plan and Stacey Kaminer; (iii) Kamco LP Profit Sharing Plan and Stacey Kaminer; (iv) Linden Associates Defined Benefit Plan and Joan Schulman; (v) Moira Associates LLC 401(K) Plan and Stacey Kaminer; (vi) Riverside Associates Defined Benefit Plan

District of Pennsylvania against defendants Newsong Fellowship Church 401K Plan and its authorized representative Alexander Jamie Mitchell III; and (iii) one in this Court against defendants the Goldstein plan and its authorized representative Sheldon Goldstein.

SKAT's complaints allege that in 2014 and 2015, the defendants submitted to SKAT fraudulent tax refund applications, representing falsely that the defendant pension plans owned shares of stock in Danish companies, received dividends on those shares from which tax was withheld, and were entitled to a refund of the purportedly withheld tax under the U.S.-Denmark Tax Treaty. (Compl. ¶¶ 2-5, 36.)[4]  SKAT paid the defendants' refunds because, as was its practice at the time, the applications "included the required support documentation." (*Id.* ¶¶ 30-31.) As SKAT later discovered, however, the applications were fraudulent because the defendant plans did not own the shares of Danish stock they purported to own and thus did not receive the dividends or suffer the claimed withholding tax. (*Id.* ¶ 4.)

In June 2015, SKAT received information indicating that certain Malaysian entities, unrelated to the defendants in these actions, "may have" submitted fraudulent refund applications under "the double taxation treaty between Denmark and Malaysia." (*Id.* ¶ 6.) SKAT investigated and subsequently discovered that the information was true, the Malaysian entities had in fact submitted fraudulent applications. (*Id.*) During its investigation, SKAT also discovered that the fraudulent scheme of which the Malaysian entities were a part "involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United

---

and David Schulman; and (vii) American Investment Group of New York, L.P. Pension Plan and Stacey Kaminer. SKAT's action against The American Investment Group of New York, L.P. Pension Plan was first filed in the District of New Jersey and then transferred by motion of the parties to the District of Utah, before being consolidated in this multi-district litigation.

4.   The allegations in SKAT's original complaints are substantively the same. Unless otherwise indicated, citations to SKAT's original complaints are to SKAT's complaint against DW Construction, Inc. Retirement Plan and Stacey Kaminer, a copy of which is attached as Exhibit 1 to the Declaration of Marc A. Weinstein, dated August 6, 2020 (the "Weinstein Decl.").

Kingdom, and Luxembourg." (*Id.* ¶ 7.)  By the spring of 2018, when SKAT commenced these actions, SKAT had determined that from 2012 to 2015, fraudulent refund applications had been submitted on behalf of 277 U.S. pension plans or other purportedly tax-exempt entities, including the nine defendant pension plans in these actions.  (*Id.* ¶ 32.)

 SKAT's original complaints named as defendants only the pension plans and their authorized representatives because, at the time, SKAT did not know who else may have participated in their fraud, and asserted common law claims against each for fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment and money had and received.[5] Each of the defendants' refund applications included four types of documentation: (i) a claim form that identified the defendant pension plan that purported to have suffered the claimed withholding tax; (ii) a "tax voucher" from the plan's purported custodian, in each case ED&F Man Capital Markets Limited, purporting to evidence the plan's ownership of the shares, receipt of the dividend, and suffering of the claimed withholding tax; (iii) a power of attorney, signed by defendant Stacey Kaminer, David Schulman, Joan Schulman or Sheldon Goldstein, respectively, authorizing a payment agent to submit the refund application to SKAT; and (iv) a statement from the Internal Revenue Service, purporting to verify the defendant pension plan's tax-exempt status.  (*Id.* ¶¶ 28, 40, 49.)  The defendants' refund applications thus did not identify the beneficiaries of the plans or other individuals or entities that participated in submitting the fraudulent applications.

**<u>Defendants' motion to dismiss the original complaints.</u>**

 On August 15, 2018, before these cases were consolidated in this multi-district litigation, the defendants in SKAT's 49 New York actions then-pending before this Court, including the

---

5. SKAT also pleaded the cause of action payment by mistake in its New York action against the Goldstein plan and Sheldon Goldstein, and in its Pennsylvania action against the Newsong plan and Mitchell.

Goldstein plan and Sheldon Goldstein, moved to dismiss SKAT's complaints, arguing that SKAT failed to state any of its claims.[6]  The New York defendants argued that (i) SKAT's claims for fraud and aiding and abetting fraud against the pension plans and authorized representatives should be dismissed because SKAT failed to allege sufficiently their "knowledge and intent" (*id.* at 19-23); (ii) SKAT's aiding and abetting fraud claims should be dismissed because SKAT failed to allege that any of the defendants provided substantial assistance to the fraud (*id.* at 23-24); (iii) SKAT failed to plead that the authorized representatives or individuals who incorporated the underlying companies that sponsored the pension plans made any false representations to SKAT (*id.* at 24-25); and (iv) SKAT's unjust enrichment, money had and received and payment by mistake claims should be dismissed as duplicative.  (*Id.* at 25-26.)

**The Court denied defendants' motion to dismiss.**

On January 9, 2019, the Court issued its decision denying the New York defendants' motion to dismiss in its entirety.[7]  The Court rejected defendants' argument that the authorized representatives did not make any false representations to SKAT, converting this aspect of the motion to one for summary judgment and concluding that there was "a genuine and disputed question of material fact" over whether a "principal-agent relationship" existed between the authorized representatives and the payment agents that submitted the fraudulent refunds to SKAT.[8]  The Court similarly found that SKAT pleaded facts from which it could be inferred that

---

6.  *See* Consol. Defs. Mem. of Law Supp. Their Joint Mot. to Dismiss Compls. Pursuant to Fed. R. Civ. P 12(b)(1), 12(b)(6) and 9(b), No. 18-cv-4047-LAK, ECF No. 35.

7.  *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019).

8.  *Id.* at 322.

the defendant who incorporated companies that sponsored certain of the plans could be liable for the plans' misrepresentations on an *alter ego* theory.[9]

The Court also rejected the defendants' *scienter* argument, holding that SKAT pleaded sufficiently with respect to all defendants "motive and opportunity to commit fraud" and "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[10]  The Court disagreed with the argument that SKAT had not pleaded substantial assistance because SKAT "alleged that the defendants acted in concert to carry out the scheme and each directly contributed to the alleged fraud."[11]  Finally, the Court declined to dismiss any of SKAT's restitution claims as duplicative.[12]

On January 10, 2019, the Court issued an order directing the defendants in SKAT's other actions to show cause "why the opinion should not govern in their cases."[13]  And on June 12, 2019, the Court ordered that its January 9, 2019 decision "applies fully to all cases" in this multi-district litigation, except, in relevant part, that the Court dismissed SKAT's payment by mistake claim in the Pennsylvania Newsong action as duplicative of its money had and received claim.[14]

**SKAT's motion to amend its complaints.**

On March 27, 2020, SKAT filed its motion to amend its complaints in the 184 actions comprising this multi-district litigation, including in the nine actions that are the subject of these

---

9.  *Id.* at 322-23.

10.  *Id.* at 323-24 (internal quotation omitted).

11.  *Id.* at 325.

12.  *Id.* at 325-26.

13.  Pretrial Order No. 7, No. 18-md-2865, ECF No. 63.

14.  Pretrial Order No. 8, No. 18-md-2865, ECF No. 133.  By notice dated November 20, 2018, SKAT voluntarily dismissed its fraud, aiding and abetting fraud and negligent misrepresentation claims in the Pennsylvania action against the Newsong plan and Mitchell.  No. 18-md-2865, ECF No. 35.

motions.[15]  SKAT sought leave to amend to (i) "name as defendants in certain cases additional

U.S.-domiciled entities and individuals SKAT has now identified as participating in the

fraudulent scheme," and (ii) allege in all of its cases that in addition to defendants' fraudulent

representations, identified in the original complaints, that the pension plans owned shares of

Danish stock and received dividends on those shares from which tax was withheld, "the

defendants also misrepresented to SKAT that the plans met the requirements in the tax treaty

between the United States and Denmark to be entitled to refunds in the first place."  (*Id.* at 1.)

SKAT requested leave to add Acer as a defendant in each of these nine actions because

SKAT "learned in discovery" that the defendant pension plans "granted Acer authority to act as

their representative and agent with respect to" ED&F, and "Acer used this authority to direct"

ED&F with respect to the plans' purported trading in Danish securities "that formed the basis of

the fraudulent dividend credit advices submitted to SKAT."  (*Id.* at 4-5.)  Further, SKAT

explained, it had learned that Acer received a percentage of the refunds SKAT paid to the plans

that "was significantly greater than the amount received by the pension plans themselves."  (*Id.*)

In addition, SKAT sought leave to add as defendants to the actions against their

respective pension plans Scott Goldstein, Louise Kaminer, Darren Wittwer and Robert Crema

because SKAT had "confirmed through discovery" that each "was either the sole participant, or

one of only two participants," in the plan.  (*Id.* at 5.)  On April 13, 2020, the Court granted

SKAT's motion.[16]

---

15.  Pl. Skatteforvaltningen's Mem. of Law Supp. Mot. for Leave to Amend Its Compls., No. 18-md-2865, ECF No. 295.

16.  No. 18-md-2865, ECF No. 317.

**SKAT's amended complaints.**

In April 2020, following the Court's order, SKAT filed its amended complaints in these nine actions, naming Acer as a defendant in each and asserting claims against it for aiding and abetting fraud, unjust enrichment and money had and received.[17]

In addition, based on their role as the sole, or one of two, participants in the defendant pension plan, SKAT named as a defendant: (i) Scott Goldstein in its New York action against the Goldstein plan; (ii) Louise Kaminer in its Utah action against Kamco Investments, Inc. Pension Plan; (iii) Robert Crema in its Utah action against American Investment Group of New York, L.P. Pension Plan; and (iv) Darren Wittwer in its Utah action against DW Construction, Inc. Retirement Plan; asserting claims against each for fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, and money had and received, and in the case of Scott Goldstein, an additional claim for payment by mistake.[18]

Finally, SKAT alleged in all nine amended complaints that in addition to falsely representing that the pension plan owned shares of Danish stock and suffered withholding tax on dividends issued on those shares, the defendants' refund applications "were also fraudulent because" they "falsely represented that" the plan "met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends."[19]

---

17. *See generally* Declaration of John C. Blessington (the "Blessington Decl."), Ex. 2, No. 18-md-2865, ECF No. 394-2. SKAT's amended complaints in these nine actions all are attached as Exhibit 2 to the Blessington Declaration. SKAT's amended complaint in the Goldstein New York action also asserted a claim against Acer for payment by mistake. *Id.* at 37 (Goldstein Am. Compl.¶¶ 75-80). SKAT's allegations against Acer in the amended complaints are otherwise substantively the same.

18. *Id.* at 16-19 (DW Constr. Am. Compl. ¶¶ 63-88), 35-39 (Goldstein Am. Compl. ¶¶ 63-93), 55-58 (Kamco Inv. Am. Compl. ¶¶ 63-88), 154-57 (AIG Am Compl. ¶¶ 64-88).

19. *See, e.g.*, *id.* at 2 (DW Constr. Am. Compl. ¶ 4).

**LEGAL STANDARD**

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction should be denied where the plaintiff "make[s] a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). Such a showing "may be established solely by allegations pleaded in good faith." *Ramiro Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 256 (S.D.N.Y. 2019). The Court also may consider materials outside the pleadings without converting the motion into one for summary judgment. *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). The Court accepts the allegations in the pleading as true and construes them, along with any supporting materials, "in the light most favorable to the" plaintiff. *Id.*

On a Rule 12(b)(6) motion to dismiss, all of the complaint's factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor, *see Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000), including "inferences from the acts alleged that defeat any affirmative defense asserted by the defendant." *Outhouse PR, LLC v. Northstar Travel Media, LLC*, No. 19 Civ. 5979 (NRB), 2020 WL 2512092, at *4 (S.D.N.Y. May 15, 2020). A complaint should not be dismissed if it contains sufficient factual allegations that, accepted as true, state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 669, 129 S. Ct. 1937, 1944 (2009). Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678, 1945.

With respect to fraud claims, while the circumstances constituting the fraud must be stated "with particularity," the "intent, knowledge, and other conditions of a person's mind" may be "alleged generally." Fed. R. Civ. P. 9(b).

10

## <u>ARGUMENT</u>

I. **THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER ACER IN THE GOLDSTEIN AND NEWSONG ACTIONS AND OVER ROBERT CREMA AND LOUISE KAMINER IN THE UTAH ACTIONS.**

Acer argues that the Court lacks jurisdiction over it with respect to SKAT's New York Goldstein action and Pennsylvania Newsong action, and Robert Crema and Louise Kaminer argue they are not subject to jurisdiction in Utah on SKAT's claims.  (Acer Br. 9-14.)[20]  But SKAT's allegations and information uncovered in discovery from the original defendants make a more than *prima facie* showing that the Court may exercise specific jurisdiction over each.[21]

For the Court to exercise jurisdiction in these diversity actions, there must be "a state-law statutory basis" and the exercise must "comport[] with due process."  *Charles Schwab*, 883 F.3d at 82.  Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017).

Courts undertake a two-step inquiry in determining whether exercising specific jurisdiction comports with due process.  *See Licci*, 732 F.3d at 170.  "First," the Court "evaluate[s] the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test."  *Id.* (internal quotation omitted).  The "minimum contacts requirement" is satisfied where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

---

20. Acer does not on this motion challenge that the Court has jurisdiction over it with respect to the seven Utah actions where it is a defendant.

21. In this multi-district litigation, the "relevant forum for jurisdictional purposes" is the forum from which the action was transferred, but the Court "nonetheless" applies the Second Circuit's "interpretations of federal law, not the constructions of federal law of the transferor circuit."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 n.4 (2d Cir. 2018).

(2d Cir. 2019) (internal quotation omitted).  "Second," the Court "considers those contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice."  *Charles Schwab*, 883 F.3d at 82.[22]

### A.       The Court has specific jurisdiction over Acer in SKAT's Newsong action.

Pennsylvania's long-arm statute authorizes personal jurisdiction "based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States," thus the Court may exercise jurisdiction over Acer in the Newsong action to the extent doing so comports with federal due process.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting 42 Pa. Cons. Stat. Ann. § 5322(b)).  Acer argues that the Court lacks personal jurisdiction over it because SKAT's pleading does not allege any act by Acer "directed at Pennsylvania."  (Acer Br. 14.)  But this ignores SKAT's allegations demonstrating that Acer "purposefully directed" its "activities at residents" of Pennsylvania.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182 (1985).

Specifically, SKAT's pleading alleges that Acer purposefully directed its activities at the forum by entering into a long-term relationship with the Pennsylvania-based Newsong plan, pursuant to which Acer acted as the plan's "representative and agent" with ED&F and "direct[ed]" ED&F, on behalf of the plan, "to take actions that caused the creation and submission of the fraudulent 'tax vouchers.'"  (Blessington Decl. Ex. 2 at 163, 172-73 (Newsong Am. Compl. ¶¶ 17, 59).)  Over the course of 2014, Acer coordinated the submission to SKAT of the Newsong plan's four fraudulent refund applications.  (*Id.* at 168, 172-73 (Am. Compl. ¶¶ 38,

---

22.  These factors include "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interests in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several States in furthering fundamental substantive social policies."  *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (internal quotations omitted).  Neither Acer, Crema, nor Louise Kaminer argue that should the Court find that sufficient suit-related minimum contacts exist, the Court should nonetheless find that exercising jurisdiction would offend traditional notions of fair play and substantial justice.

59).)  For facilitating the fraud, "Acer received a portion of the" 4,245,750 Danish Kroner

(approximately $664,000) SKAT paid as a result of the Newsong plan's fraudulent refund

applications.  (*Id.* at 162, 172-73 (Am. Compl. ¶¶ 13, 59).)  By "purposefully avail[ing] itself of

the privilege of doing business in" Pennsylvania, Acer should easily be able to "foresee being

haled into court there" for SKAT's claims that its business there was fraudulent.  *Bank Brussels*

*Lambert v. Fiddler Gonzales & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (internal quotation

omitted).

Further, discovery conducted thus far in the Newsong action bears out that Acer

purposefully directed its activities at Pennsylvania.  Defendant Mitchell, the Newsong plan's

authorized representative and sole participant, (Blessington Decl. Ex. 2 at 163 (Newsong Am.

Compl. ¶ 18)), testified at his deposition that, in 1999, Acer's Robert Crema and Dan Kaminer

"came out to Lancaster [Pennsylvania] and met with myself and the board of the church" to

solicit Mitchell's business.  (Weinstein Decl. Ex. 2 (Mitchell Dep. Tr.) at 27:4-8.)[23]  Following

that meeting, defendant Mitchell established the Newsong plan and Acer began conducting

"dividend arbitrage trades" on the plan's behalf.[24]  Acer continued this purported trading on the

plan's behalf over the next approximately 15 years, including, in 2014, the purported trading

---

23. *See id.* at 25:17-26-4 (Q:  "In 1999, did you or the church retain Mr. Crema or a company related to Mr. Crema as an investment advisor?" . . . .  A:  "Yeah, I don't . . . think as an investment advisor, but we definitely talked with Mr. Crema, Mr. Kaminer, about how their business could be a help to us and potentially to represent us – and bring us to the table for some possible trades . . . ."), 26:5-8 (Q:  "Mr. Crema, I understand, is associated with a company called Acer.  Is that correct?"  A:  "That's correct."), 26:16-21 (Q:  "And prior to his passing, was Mr. Kaminer associated with Acer as well?"  A:  "I'm not sure.  The original company was called AIG.  Then they changed their name somewhere along the line to Acer.").

24. *Id.* at 30:20-24 (Q:  "And then at some point after the establishment of your retirement plan, did you conduct some dividend arbitrage trades?"  A:  "I didn't.  I know that, you know, Mr. Crema and Acer did on behalf of the plan.").

underlying the plan's fraudulent refund applications to SKAT.[25]  During that time, Acer repeatedly sent "paperwork" and "notifications" to Mr. Mitchell in Pennsylvania related to the "trades."[26]  And Acer took a fee from the proceeds of the tax refunds obtained on behalf of the Newsong plan.[27]

Thus, SKAT's allegations and the record so far demonstrate that Acer is subject to specific jurisdiction in SKAT's Newsong action because SKAT's claims arise directly out of Acer's long-term business relationship with a Pennsylvania resident.  *See, e.g.*, *O'Connor*, 496 F.3d at 318 (specific jurisdiction existed where defendant "deliberately reached into Pennsylvania to target two of its citizens" by "mailing" them "seasonal newsletters" and "a brochure" and "trad[ing] phone calls with" them "for the purpose of forming an agreement").

## B.    The Court has specific jurisdiction over Acer in SKAT's Goldstein action.

To exercise jurisdiction over Acer in SKAT's Goldstein action, the Court "must determine if" New York's long-arm statute "would confer upon its courts the jurisdiction to reach the defendant" and "whether New York's extension of jurisdiction in such a case would be

---

25.  *See, e.g.*, *id.* at 43:16-23 ("But Mr. Crema, when there were opportunities in different countries to do the trades that we've been talking about, he would then be an agent in some respects and . . . he would have the contacts with the banks and with the stock owners and . . . be able to . . . guide the trade."), 91:12-18 (Q:  "Which—focusing on the Newsong plan, which European or other stocks did you trade in with the assistance of Acer?"  A:  "The countries that I remember . . . Germany, Ireland, Switzerland, and obviously Denmark."), 149:4-11 (Q:  "We obviously know that through ED&F and Acer the Newsong plan made some . . . tax refund re-claims to Danish stocks.  Is that correct?" . . . . A:  "Correct."), 222:8-11 (Q:  "So in connection with those trades that were conducted in Denmark through ED&F, did you rely entirely on Acer?"  A:  "Absolutely.").

26.  *See, e.g.*, *id.* at 44:21-45-12 ("There were different banks that were involved, different countries that we were doing trades with.  So I would receive paperwork to understand what was happening in a general way, and then as those opportunities came, Mr. Crema would, I guess, execute those trades and I would receive notice of them.  Back in the day, we had a fax machine, . . . the day that we would then be assigned the stock and earn the dividend, you would receive a fax. . . .").

27.  *See id.* at 156:16-24 (Q:  "You understood that . . . Acer . . . would be making a fee that they would take out of the refund from, for example, the Danish government, correct?" . . . . A:  "Absolutely.").

permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels*, 305 F.3d at 124.

First, the Court's exercise of personal jurisdiction over Acer in the Goldstein action comports with federal due process for the same reason discussed above with respect to the exercise of jurisdiction over Acer in the Newsong action.  (*See supra*, I.A.)  Thus, Acer's argument that SKAT does not allege any acts by Acer "directed at" New York fails for the same reason.  (Acer Br. 14.)  SKAT alleges specifically that Acer and the New York-based Goldstein plan entered into a long-term arrangement pursuant to which Acer "act[ed]" as the plan's "representative and agent" with ED&F and "direct[ed]" ED&F "to take actions that caused the creation and submission of the fraudulent 'tax vouchers.'"  (Blessington Decl. Ex. 2 at 25, 35 (Goldstein Am. Compl. ¶¶ 17, 61).)

Acer "coordinated the submission" to SKAT of the Goldstein plan's eight fraudulent refund applications in 2014 and 2015, and "received a portion of the" 9,521,280 Danish Kroner (approximately $1,490,000) that SKAT paid as a result of those fraudulent applications.  (*Id.* at 24, 30, 35 (Am Compl. ¶¶ 13, 39, 61).)  Acer "purposefully directed" its activities at New York in arranging fraudulent tax refund applications for the Goldstein plan and it should not be surprised to be sued in New York for doing so.  *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182.

Second, for similar reasons, jurisdiction over Acer is authorized by New York's long-arm statute, which permits New York courts to "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  CPLR § 302(a)(1).  Specific jurisdiction under CPLR § 302(a)(1) requires only "a relatedness between the transaction and the

legal claim such that the latter is not completely unmoored from the former." *Licci*, 732 F.3d at 168-69. New York's long-arm statute is "a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities . . . were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (internal quotation omitted).

"By engaging in a long-term business relationship with a New York entity," Acer "purposefully availed itself of the benefits of doing business in New York," and SKAT's suit thus "is authorized by . . . New York's long arm-statute." *In re Customs and Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2020 WL 70938, at *1 & n.8 (S.D.N.Y. Jan. 7, 2020).

## C.   The Court has specific jurisdiction over Louise Kaminer and Robert Crema.

Since Utah's long-arm statute authorizes its courts to exercise "jurisdiction over nonresidents to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution," the Court may exercise jurisdiction over Louise Kaminer and Robert Crema so long as doing so comports with due process. *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1282 (10th Cir. 2005) (quoting Utah Code Ann. § 78-27-22).

The Court has specific jurisdiction over Louise Kaminer and Robert Crema in SKAT's Utah actions because each has sufficient suit-related contacts with the forum through their *alter ego* pension plan and by virtue of the acts of their agent Acer. For jurisdictional purposes, the *alter ego* standard is "less stringent . . . than that necessary to pierce the corporate veil for purposes of liability." *GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (internal quotation omitted). The "question is only whether the allegedly controlled entity was a shell for the allegedly controlling party." *Id*. (internal quotation omitted).

16

Due process "allows for jurisdiction" over a principal for the acts of its agent "where 'the alleged agent acted in [the forum] for the benefit of, with the knowledge and consent of, and under some control by, the nonresident princip[al]." *In re Eur. Gov't Bonds Antitrust Litig.*, No. 19 Civ. 2601 (VM), 2020 WL 4273811, at *6 (S.D.N.Y. Jul. 23, 2020) (quoting *Charles Schwab*, 883 F.3d at 85).

### 1. Louise Kaminer.

SKAT's pleading alleges that Louise Kaminer is the sole participant in defendant Kamco Investments plan and the president of non-party Kamco Investments, Inc., the plan's sponsoring entity.  (Blessington Decl. Ex. 2 at 45, 51-52 (Kamco Inv. Am. Compl. ¶¶ 18, 47).)  As the plan's sole participant and president of the plan's sponsor, SKAT alleges that Louise Kaminer "exerted control over" the Kamco Investments plan "and used this control to commit the fraud on SKAT."  (*Id.* at 51-52 (Am. Compl. ¶ 47).)  Defendant Kamco Investments plan does not dispute that it is subject to personal jurisdiction in Utah on SKAT's claims.[28]  Thus, because the Court has jurisdiction over the Kamco Investments plan, the Court likewise has jurisdiction over the plan's *alter ego* Louise Kaminer.

Further, SKAT alleges that the Kamco Investments plan authorized Acer "to act as its representative and agent" with ED&F and that Acer "used this authority to direct" ED&F "to take actions that caused the creation and submission" of the fraudulent tax vouchers. (Blessington Decl. Ex. 2 at 55 (Kamco Inv. Am. Compl. ¶ 61).)  Acer "took the[se] actions" in Utah through Utah resident defendant Stacey Kaminer, Louise Kaminer's daughter, and others at Acer.  (*Id.* at 45, 55 (Am. Compl. ¶¶ 18, 62); Kamco Answer ¶ 19 (stating that Stacey Kaminer "resides in the State of Utah").)  That Acer's suit-related conduct occurred in Utah is shown by

---

28.  *See generally* Kamco Invs., Inc. Pension Plan and Stacey Kaminer's Answer to Skatteforvaltningen's Am. Compl., No. 18-md-2865, ECF No. 391-2.

SKAT's allegations that Stacey Kaminer signed the plan's power of attorney authorizing the payment agent to submit the plan's fraudulent refund applications to SKAT and the plan's address listed on its refund applications was Acer's address in Utah.  (Blessington Decl. Ex. 2 at 45-46, 52 (Kamco Inv. Am. Compl. ¶¶ 17-20, 49-50).)

### 2.   Robert Crema.

Similarly, SKAT's pleading alleges that Robert Crema, an officer or employee of Acer, was the sole participant of the defendant AIG plan, and based on a 2011 Annual Report, was the only officer or director of the plan's sponsor, non-party American Investment Group of New York, L.P.  (*Id.* at 143-44, 150 (AIG Am. Compl. ¶¶ 18, 48).)  In those roles, Crema "exerted control" over the plan "and used this control to" cause the plan's fraudulent refund applications, which used Crema's former New Jersey office address as the plan's address, to be submitted to SKAT.  (*Id.* at 143-44, 150 (Am. Compl. ¶¶ 17-18, 47-48).)  Because Crema's *alter ego*, the AIG plan, does not dispute that it is subject to jurisdiction in Utah on SKAT's claims, Crema himself is likewise subject to the Court's jurisdiction.[29]

Crema is also subject to jurisdiction in Utah by virtue of the suit-related contacts that Acer—the agent of his plan and *alter ego*—had with the State.  (Blessington Decl. Ex. 2 at 153-54 (AIG Am. Compl. ¶¶ 62-63).)  SKAT alleges that Acer acted on behalf of the AIG plan and Crema through Utah resident Stacey Kaminer, who signed the power of attorney authorizing the payment agent to submit the AIG plan's fraudulent refund applications to SKAT.  (*Id.* at 144, 153-54 (Am. Compl. ¶¶ 19, 62-63).)[30]

---

29.  *See generally* Am. Inv. Grp. of N.Y., L.P. Pension Plan and Stacey Kaminer's Answer. to Skatteforvaltningen's Am. Compl., No. 18-md-2865, ECF No. 391-7.

30.  Crema is subject to jurisdiction in Utah on SKAT's claims for the additional reason that he was an officer or employee of Acer, who stood to benefit directly from Acer's fraudulent activities within the State and plausibly exercised control over those activities.  *See, e.g.*, *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d

II.   **SKAT'S UTAH AND PENNSYLVANIA CLAIMS ARE NOT TIME-BARRED.**

The Acer defendants argue that all SKAT's claims in the Utah and Pennsylvania actions

should be dismissed as time-barred under the applicable statutes of limitations in those

jurisdictions.  (Acer Br. 5-9.)[31]  But under both Utah and Pennsylvania law, the statute of

limitations is an affirmative defense on which the defendant bears the burden of proof.  *See*

*Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019) (applying Utah law) (the "complaint need

not anticipate affirmative defenses . . . including the statute of limitations; it is the defendant's

burden to plead an affirmative defense"); *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d

1153, 1161 (3d Cir. 1989) (applying Pennsylvania law) ("The statute of limitations is an

affirmative defense, and the burden of establishing its applicability to a particular claim rests

with the defendant." (internal quotation omitted)).

Thus, on a Rule 12(b)(6) motion such as this, SKAT's claims "may be dismissed as time-

barred 'only if [the] complaint clearly shows the claim is out of time.'"  *Childers v. New York &*

*Presbyterian Hosp.*, 36 F. Supp. 3d 292, 301 (S.D.N.Y. 2014) (quoting *Harris v. City of New*

*York*, 186 F.3d 243, 250 (2d Cir. 1999)).  SKAT had no obligation "to anticipate" the

defendants' "potential affirmative defenses, such as the statute of limitations," in its pleadings or

"to affirmatively plead facts in avoidance of such defenses."  *Abbas v. Dixon*, 480 F.3d 636, 640

(2d Cir. 2007).

---

Cir. 1998) (exercising jurisdiction satisfied due process where company "engaged in purposeful activities in the state" and defendant officers "both benefitted from those activities and exercised extensive control" over them).

31.   As the transferee forum in these diversity actions, "the Court applies the substantive law that would be applied by the transferor forum."  *In re Parmalat Sec. Litig.*, 377 F. Supp. 2d 390, 402 n.78 (S.D.N.Y. 2005).  SKAT assumes, strictly for the purposes of these motions, that Utah law applies to SKAT's Utah actions, Pennsylvania law applies to the Newsong action, and New York law applies to the Goldstein action.  SKAT does not otherwise concede that these jurisdictions' laws apply to SKAT's claims, and reserves the right to argue what law applies in these actions.

SKAT's amended pleadings in its Utah and Pennsylvania actions do not clearly show that any of the new claims it asserted are time-barred because in each case, the applicable discovery rule tolls the limitations period.[32]

### A.      SKAT's claims in the Utah actions are not time-barred.

Under Utah law, the discovery rule tolls the statute of limitations "until the discovery of facts forming the basis for the cause of action" in two "settings." *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005) (internal quotation omitted).  First, when "a relevant statute of limitations, by its own terms, mandates application of the discovery rule." *Id.*  Second, as a matter of equity, "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct," or "where the case presents exceptional circumstances." *Id.* at 747 (internal quotation omitted).

When the discovery rule applies by statute, the question is when the "plaintiff first ha[d] actual or constructive knowledge of the relevant facts forming the basis of the cause of action." *Id.* at 746.  When the rule applies as a matter of equity, the question is when the "plaintiff would reasonably be on notice to inquire into a defendant's wrongdoing despite the defendant's efforts to conceal it," and "would reasonably have, with due diligence, discovered the facts forming the

---

32.  Pennsylvania and Utah law both include a borrowing statute under which a claim that accrues in another jurisdiction may be time-barred if the law of that jurisdiction so provides.  *See* 42 Pa. Cons. Stat. Ann. § 5521(b) ("The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim."); Utah Code Ann. § 78B-2-103 ("A cause of action which arises in another jurisdiction, and which is not actionable in the other jurisdiction by reason of the lapse of time, may not be pursued in this state, unless the cause of action is held by a citizen of this state who has held the cause of action from the time it accrued.").  As the Acer defendants do not argue that a limitations period shorter than Pennsylvania's or Utah's would apply to any of SKAT's claims under these statutes, SKAT does not address any jurisdiction's limitations period, including Denmark's, other than the Pennsylvania and Utah limitations periods that the Acer defendants argue bar SKAT's claims.  *Cf. Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488 (BSJ)(HBP), 2012 WL 6097726, at *3 (S.D.N.Y. Dec. 4, 2012) (party raising an issue of foreign law bears the burden of "proving [the] foreign law to enable" the Court's "application of it").

basis of the cause of action despite the defendant's efforts to conceal those facts." *Berenda v. Langford*, 914 P.2d 45, 52 (Utah 1996).[33]

Under both versions, "the identity of the tortfeasor" is "considered an underlying fact that gives rise to a cause of action." *Robinson v. Morrow*, 99 P.3d 341, 344-45 (Utah Ct. App. 2004) (internal quotation omitted). Further, when either applies, determining when a cause of action accrued is a highly fact-intensive inquiry that cannot be resolved as a matter of law except in the clearest of cases. *See, e.g.*, *Bistline*, 918 F.3d at 881 (the "fraud statute of limitations involved here almost always presents a question of fact as to when plaintiff did discover or should have discovered the defendants' wrongdoing"); *Berenda*, 914 P.2d at 54 ("we explicitly acknowledge that weighing the reasonableness of the plaintiff's conduct in light of the defendant's steps to conceal the cause of action necessitates the type of factual findings which preclude summary judgment in all but the clearest of cases").

The discovery rule applies to SKAT's claims for fraud and aiding and abetting fraud because the statute that supplies the limitations period provides that such claims do "not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code Ann. § 78B-2-305(3). And the equitable version of the rule applies to SKAT's negligent misrepresentation, unjust enrichment and money had and received claims by virtue of the defendants' misleading conduct in submitting fraudulent applications to SKAT, and in concealing Acer's and the plan participants' roles in the fraud. *See, e.g.*, *Russell Packard*, 108

---

33. For the concealment version of the equitable discovery rule to apply where the plaintiff "either knew or reasonably should have known of the facts underlying his or her cause of action *before* a limitations period expired," the plaintiff must "show that, given the defendant's actions, the plaintiff acted reasonably in failing to file suit before the limitations period expired." *Russell Packard*, 108 P.3d at 748. In which case, "the concealment version of the discovery rule will operate to toll the limitations period until the point at which the plaintiff either discovered or reasonably should have discovered the relevant facts forming the basis of the cause of action." *Id.* A plaintiff is precluded from invoking the equitable discovery rule only "where the plaintiff has failed to file a complaint before the limitations period expired and a reasonable plaintiff would necessarily have done so." *Id.* at 748 n.6.

P.3d at 751-52 (allegations that "Defendants committed overt acts to defraud" plaintiffs as part of underlying fraud "raise[d] a factual question as to whether the concealment version of the equitable discovery rule" applied to unjust enrichment claim); *cf. First Interstate Fin. LLC v. Savage*, 458 P.3d 1161, 1166 (Utah Ct. App. 2020) ("we do not read *Russell Packard* as necessarily requiring active concealment by the defendant after the plaintiff discovers the facts underlying the cause of action").

Thus, the Acer defendants' argument that SKAT's fraud and aiding and abetting fraud claims are time-barred under Utah law fails because SKAT's complaints do not clearly show that SKAT knew or should have known the relevant facts underlying its claims against Acer and the Utah plan participants by April 2017, *i.e.*, three years before SKAT filed its amended complaints. *See, e.g.*, *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1258 (D. Utah 2019) ("at what point a party should have reasonably discovered its claim is a fact-intensive inquiry that precludes dismissal in all but the clearest of cases" (internal quotation omitted)). Nor do SKAT's pleadings clearly show when SKAT was on inquiry notice of its negligent misrepresentation, unjust enrichment and money had and received claims against Acer and the participants, and would have with reasonable diligence discovered the relevant facts despite the defendants' fraud. *See, e.g.*, *Bistline*, 918 F.3d at 885 (the "prior conclusion that this is question of fact inappropriate for dismissal under the statutory discovery rule for fraud applies equally to the fraudulent concealment analysis").

The Acer defendants argue that even if the discovery rule applies, June 15, 2015 was the date "SKAT supposedly discovered the alleged misconduct." (Acer Br. 7.) But this argument misconstrues SKAT's pleadings. SKAT alleged that June 15, 2015 was the date "SKAT received information indicating that" certain Malaysian entities "may have" submitted fraudulent

refund applications "based on the double taxation treaty between Denmark and Malaysia." (*See, e.g.*, Blessington Decl. Ex. 2 at 3 (DW Constr. Am. Compl. ¶ 6).) That SKAT received information about fraudulent refund applications by claimants other than any of the Utah defendants under a different tax treaty did not provide SKAT with actual or constructive notice of the Utah defendants' fraud, let alone Acer's or the plan participants' concealed roles in the fraud.

### B.   SKAT's claims against Acer in the Newsong action are not time-barred.

Acer's argument that the aiding and abetting fraud, unjust enrichment and money had and received claims SKAT asserted against it in the Newsong action are time-barred fails for the same reason. (Acer Br. 8-9.)

Under Pennsylvania law, "the discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct." *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018).[34] In assessing when a cause of action accrues under the discovery rule, the Court must "address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). "Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it," unless "reasonable minds would not differ." *Id.* at 858-59.

SKAT's amended pleading in the Newsong action does not clearly show when SKAT should have known of its injury from the Pennsylvania defendants' fraud and that Acer was a

---

34. In Pennsylvania, the "discovery rule . . . applies to all causes of action." *Morgan v. Petroleum Prods. Equip. Co.*, 92 A.3d 823, 828 (Pa. Super. Ct. 2014); *see also Ruddy v. Mt. Penn Borough Mun. Auth.*, Nos. 1120 C.D. 2013, 1200 C.D. 2013, 2014 WL 1852002, at *2-3 (Pa. Commw. Ct. May 6, 2014) (applying discovery rule to unjust enrichment claim).

cause of it, and thus Acer's argument presents a factual issue that cannot be resolved on a motion to dismiss.  *See, e.g.*, *Drelles v. Mfrs. Life Ins. Co.*, 881 A.D.2d 822, 834 (Pa. Super. Ct. 2005) (when "a case involves a factual determination of what constitutes a reasonable time for the plaintiff to discover his or her injury and its cause, this issue is usually for the jury").

## III.     SKAT'S NEW CLAIMS IN ITS UTAH AND PENNSYLVANIA ACTIONS <u>RELATE BACK TO ITS ORIGINAL COMPLAINTS.</u>

Even if any of SKAT's claims against the Acer defendants in the Utah and Pennsylvania actions were time-barred, each of those claims relates back to SKAT's original complaints. Under Federal Rule of Civil Procedure 15(c), SKAT's claims against the Acer defendants relate back if either (i) "the law that provides the applicable statute of limitations allows relation back," or (ii) they meet the federal standard for relation back set forth in Rule 15(c)(1)(C).  *See* Fed. R. Civ. P. 15(c)(1)(A) & (C).  All of SKAT's claims against the Acer defendants relate back under the federal standard, and SKAT's new claims in its Utah action relate back under Utah law.

### A.     SKAT's claims against the Acer <u>defendants relate back under Rule 15(c)(1)(C).</u>

Under Rule 15(c)(1)(C), an amended pleading asserting a claim against a new defendant relates back to the original pleading when (i) the "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," and (ii) "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: received such notice of the action that it will not be prejudiced in defending on the merits; and knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ P. 15(c)(1)(C).

As an initial matter, SKAT's claims against Acer and the plan participants in its amended complaints clearly arise "out of the conduct, transaction, or occurrence" set forth in SKAT's

original complaints, as its claims arise out of the same fraud "set forth in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation omitted); *accord Abdell v. City of New York*, 759 F. Supp. 2d 450, 454 (S.D.N.Y. 2010) (this requirement is "easily satisfied" where the new defendant "participated in" the same conduct challenged in the original complaint). Thus, SKAT's original pleadings provided the Acer defendants with "adequate notice of the matters raised in the amended pleading[s] . . . within the statute of limitations" to the extent the other requirements of the rule are satisfied. *Slayton*, 460 F.3d at 228 (internal quotation omitted).

Second, Acer and the plan participants received notice of SKAT's actions within the 90-day period provided in Rule 4(m), so they "will not be prejudiced" by defending SKAT's actions "on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). In the original complaints, SKAT asserted claims against Acer's clients arising out of Acer's services for them, and named Acer's Stacey Kaminer as a defendant in five actions. (*See supra*, pgs. 3-5.) In its amended complaints, SKAT added as defendants Acer itself, Acer's Robert Crema (sole participant in the AIG plan), Louise Kaminer (Stacey' mother and sole participant in defendant Kamco Investments plan), and Darren Wittwer (Stacey's husband and sole participant in the DW Construction plan).[35]

As confirmed by defendant Mitchell's deposition testimony in the Newsong action, Acer and Robert Crema had actual knowledge of SKAT's lawsuits at or about the time they were filed in spring 2018.[36] Further, Acer has been participating in these suits from the beginning by

---

35. Blessington Decl. Ex. 2 at 6 (DW Constr. Am. Compl. ¶ 18), 45 (Kamco Invs. Am. Compl. ¶ 18), 143-44 (AIG Am. Compl. ¶ 18).

36. Weinstein Decl. Ex. 2 (Mitchell Dep. Tr.) at 104:19-105:20 (Q: "When did you first learn that—to use your terminology—there was a problem with SKAT?" A: "Oh, boy. I don't know if I got a heads up from Mr. Crema or received some document via service. . . ." Q: "Just to orient us in the timeline, you were—when were you transitioning from Florida to North Carolina?" A: "Well, we made the decision to leave Florida in March of 2018. We actually made the move in June . . . ." Q: "And to the best of your recollection, can you

paying for the original defendants' counsel, who now also represents Acer and the other new plan participant defendants.[37]  The Acer defendants fail to identify any prejudice they would suffer in defending SKAT's claims on the merits.  (*See generally* Acer Br.)  Nor could they given that each has a close relationship with the original defendants and their counsel has been participating in these actions from the beginning.  *See S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10 Civ. 7547 (KMW)(RLE), 2013 WL 1234937, at *5 (S.D.N.Y. Mar. 26, 2013) (notice requirement satisfied where new defendants "d[id] not suggest . . . they had been prejudiced," the "evidence of notice [was] . . . bolstered by the new Defendants' close relationship to the original Defendant," and one of the new defendants was "represented by the same attorneys" as the original defendant).

Finally, the Acer defendants "knew or should have known" that SKAT's action "would have been brought against" them, "but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).  SKAT did not, as the Acer defendants suggest, make "a strategic decision" not to sue them in 2018.  (Acer Br. 2.)  SKAT did not sue them in its original complaints because it did not know their identities or the roles they played in the fraud.

As the Supreme Court explained in *Krupski v. Costa Crociere S.p.A.*, if a plaintiff sues "party B instead of party A" because it "misunderstand[s] the roles that" each "played in the conduct, transaction, or occurrence giving rise to" the claim, this constitutes "a mistake

---

tell us everything that you remember about your discussions with Mr. Crema in that period?"  A:  "Well, I . . . just remember him saying that there was a . . . potential problem with Denmark . . . ."), 107:10-108:1 ("[S]ome of our conversations talked about the whole issue of Denmark and their tax problems and what was happening in their government.  And that there were some bad . . . people who were doing bad trades in Denmark . . . and directed me or encouraged me to look at this and to become familiar with what was happening, because . . . we potentially were going to be involved with some of this because of the trades that we were doing that Denmark was going after a whole bunch of companies."), 108:11-15 (Q:  "Have you discussed this lawsuit with Mr. Crema?"  A:  "Yeah, different times we talked about the lawsuit.  Not in great detail once counsel was involved . . . .").

37.  *Id.* at 219:11-14 (Q:  "Are you paying him for his services or is someone else paying for Mr. Blessington's legal bills?"  A:  "Acer is.").

concerning the proper party's identity" within the meaning of Rule 15(c).  560 U.S. 538, 549,

130 S. Ct. 2485, 2494 (2010).  Following *Krupski*, district courts in this Circuit have recognized

"that a mistake 'concerning the proper party's identity' under Rule 15(c) includes," as is the case

here, "lack of knowledge regarding the conduct or liability of that party."  *Abdell*, 759 F. Supp.

2d at 457; *accord S.A.R.L. Galerie Enrico Navarra*, 2013 WL 1234937 at *6 ("The Court agrees

with other courts that have held . . . that Rule 15(c) can be satisfied where the plaintiff lacked

knowledge regarding the conduct or liability of the newly added party." (internal quotation

omitted)); *but see In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014) (no

"mistake 'concerning the proper party's identity'" where "plaintiff has sued the right defendant"

and seeks to add another defendant).

## B.      SKAT's claims against the Acer defendants relate back under Utah law.

The claims against the Acer defendants are timely for the additional and independent

reason that those claims relate back under Utah law.  Under Utah law, an amended pleading

adding a new defendant relates back when "(1) the amended pleading alleged only claims that

arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

original pleading and (2) the added party had received (actual or constructive) notice that it

would have been a proper party to the original pleading such that no prejudice would result from

preventing the new party from using a statute of limitations defense that otherwise would have

been available."  *Gary Porter Constr. v. Fox Constr., Inc.*, 101 P.3d 371, 382 (Utah Ct. App.

2004).  Because the Acer defendants "had sufficient notice that" they "would have been a proper

party to the original pleading, the purpose of the statute of limitation is not defeated by applying

the relation back doctrine" to SKAT's claims against them.  *Id.* at 380.

First, for the same reason as described above, SKAT's claims against them clearly arise

out of the same "conduct, transaction, or occurrence" set forth in its original complaints, and so

provided the defendants adequate notice of SKAT's claims against them.  *See, e.g.*, *Nunez v. Albo*, 53 P.3d 2, 9 (Utah Ct. App. 2002) (claims against university arising from employee's conduct set forth in original complaint related back).

Second, as discussed above, Acer and Robert Crema clearly had actual knowledge of SKAT's actions from their earliest stages and have been participating in them informally from the beginning, including by paying for the original defendants' counsel, so they will not be prejudiced by application of the relation back doctrine.  *See id.* (university had actual notice where "[i]n recognizing its potential liability, the University took steps to provide counsel for" the original defendant).

Further, defendants Wittwer and Louise Kaminer had constructive notice of SKAT's actions.  Under Utah's "Notice Transfer Test," constructive notice is established if "the original and new party share 'the same interest' concerning the litigation, including their legal defenses and positions, such that 'notice of the action against one serves to provide notice of the action to the other."  *Ottens v. McNeil*, 239 P.3d 308, 323 (Utah Ct. App. 2010) (internal citation and quotation omitted).  Defendants Wittwer and Louise Kaminer clearly share the "same interest," including the same defenses and positions, in this litigation as their respective defendant pension plans of which they were the sole participant and with whom they share counsel.  *Cf. Gary Porter*, 101 P.3d at 382 ("a consideration . . . relevant to imputing notice to a new party[] is whether it shared counsel with a named party prior to the running of the statute of limitations").

## IV.    <u>SKAT PLEADED ITS CLAIMS SUFFICIENTLY.</u>

Finally, reprising arguments that the Court rejected in denying the Rule 12(b)(6) motion to dismiss SKAT's original complaints, the Acer defendants argue that SKAT failed to plead its

"fraud-based" claims against them, and the Goldsteins argue that SKAT failed to state any claim against them.  (Acer Br. 14-18; Goldstein Br. 16-34.)[38]

First, defendants Wittwer, Crema, and Louise Kaminer argue that SKAT failed to plead that they made any fraudulent statements, and Sheldon and Scott Goldstein argue SKAT failed to plead they engaged in any wrongful conduct.  (Acer Br. 15-16; Goldstein Br. 34.)[39]  These are substantially the same as the argument that the Court rejected in its January 9, 2019 decision, when the Court held that SKAT pleaded sufficiently "a claim for individual liability under the *alter ego* doctrine" against Gavin Crescenzo.  *In re SKAT*, 356 F. Supp. 3d at 322.  Specifically, the Court found it "reasonable to infer" from SKAT's allegations against Crescenzo, including that he incorporated and dissolved 15 companies that sponsored the defendant pension plans and his home address was listed in five plans' refund application, that he controlled the companies and "the pension plans themselves." *Id.* at 323.  The Court also held that SKAT sufficiently pleaded facts from which it could plausibly be inferred that the plans were the *alter egos* of the authorized representatives "[f]or those plans that list the same address as the home address of the authorized representative" in the refund applications.  *Id*. at 323 n.120.

SKAT's allegations against Wittwer, Crema, Louise Kaminer and Scott Goldstein similarly are sufficient to hold them liable for their pension plans' misrepresentations under the *alter ego* doctrine:

---

38. The Goldstein plan and Sheldon Goldstein already moved unsuccessfully to dismiss SKAT's claims against them and repeat some of the same arguments from their first motion to dismiss.  *See* Not. of Consol. Defs.' Joint Mot. to Dismiss the Compls. Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 9(b), No. 18-cv-04047 (LAK), ECF No. 34.  There is nothing in SKAT's amended complaint "that would change" the Court's previous decision rejecting those arguments and "therefore" the Court's rulings are "the law of the case." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 328 (S.D.N.Y. 2010).

39. With respect to Sheldon Goldstein, the Court has concluded already that "there is a genuine and disputed question of material fact regarding the existence of a principal-agent relationship between" Sheldon Goldstein and the payment agent that submitted the Goldstein plan's refund applications to SKAT, such that Sheldon Goldstein may be liable for the fraudulent misrepresentations included therein. *In re SKAT*, 356 F. Supp. 3d at 322.

- SKAT alleges that Darren Wittwer (i) was the sole participant in defendant DW Construction plan; (ii) was an "officer or employee" of the plan's sponsoring company; (iii) listed his office address in the plan's refund applications (also the same as Acer's address); and (iv) "exerted control over" the DW Construction plan "as the plan's sole participant, and used this control to commit the fraud on SKAT."  (Blessington Decl. Ex. 2 at 6, 12 (DW Constr. Am. Compl. ¶¶ 18, 47).)

- SKAT alleges that Robert Crema (i) was the sole participant in defendant AIG plan; (ii) was listed as the "only 'officer' or 'director'" of the plan's sponsoring company in its 2011 annual report; (iii) listed his office address in the plan's refund applications; and (iv) "exerted control over" the AIG plan "as the plan's sole participant, and used this control to commit the fraud on SKAT."  (*Id.* at 143-44, 150 (AIG Am. Compl. ¶¶ 18, 47, 48).)

- SKAT alleges that Louise Kaminer (i) was the sole participant in defendant Kamco Investments plan; (ii) was "the President" of the plan's sponsoring entity; and (iii) "exerted control over" the Kamco Investment plan "as the plan's sole participant, and used this control to commit the fraud on SKAT."  (*Id.* at 45, 51-52 (Kamco Inv. Am. Compl. ¶¶ 18, 47).)

- SKAT alleges that Scott Goldstein (i) was one of two participants, along with his father Sheldon, in the Goldstein plan; (ii) was "the managing partner" of the plan's sponsor; (iii) listed his home address in the Goldstein plan's refund applications; and (iv) "exerted control over" the Goldstein plan, along with his father, "as the plan's sole participants, and used this control to commit the fraud on SKAT."  (*Id.* at 25, 31-32 (Goldstein Am. Compl. ¶¶ 18, 47, 48).)

Second, the Acer defendants and the Goldsteins argue that SKAT failed to sufficiently allege their knowledge of the fraud or intent to deceive SKAT.  (Acer Br. 16-18; Goldstein Br. 21-25.)[40]  But in doing so, neither explains why the Court's previous holding that SKAT "established a genuine issue of fact with respect to *scienter*" does not apply equally to SKAT's claims against them in the amended pleadings.  *In re SKAT*, 356 F. Supp. 3d at 325.

As the Court's previous decision shows, SKAT's amended pleadings sufficiently allege with respect to the new defendants both (i) motive and opportunity to commit fraud, and (ii) strong circumstantial evidence of conscious misbehavior or recklessness.  *Id.* at 323-24.  For

---

40.  Again, with respect to the Goldstein plan and Sheldon Goldstein, the Court has held already that SKAT pleaded sufficiently their *scienter*.  *In re SKAT*, 356 F. Supp. 3d at 323-24.

instance, "the complaints clearly allege motive by stating, for example, that the" AIG plan

"claimed refunds in the amount of" $3.3 million "and received payments from SKAT on those

claims." *Id.* at 324.  Further, "[t]he complaints adequately allege that all" the new "defendants

had the requisite opportunity to commit the fraud by describing each's role in the scheme." *Id.*

Finally, SKAT "sufficiently allege[d] strong circumstantial evidence of conscious misbehavior

or recklessness" with respect to the new defendants, as "the most plausible inference one could

draw from the facts is that the defendants knew exactly what they were doing and that what they

were doing was fraudulent." *Id.*

Third, the Court should reject the Goldsteins' argument, (Goldstein Br. 16), that SKAT's

claims based on what it calls the "Shah Scheme allegations" should be dismissed because it is

contrary to the standard on this Rule 12(b)(6) motion requiring the Court to accept SKAT's

factual allegations as true.  *See In re Customs and Tax Admin. of Kingdom of Denmark (SKAT)

Tax Refund Litig.*, No. 18-md-2865 (LAK), 2020 WL 3962066, at *2 n.11 (S.D.N.Y. Jul. 13,

2020) (denying "as frivolous" the Goldstein plan and Sheldon Goldstein's similar argument with

respect to ED&F's counterclaim against them).

Fourth, the Goldsteins' argument that SKAT's claims should be dismissed on the ground

that there is no private cause of action under the Internal Revenue Code is meritless.  (Goldstein

Br. 17-20.)  SKAT is not asserting a claim under the Internal Revenue Code or that the

Goldsteins owed SKAT any duty under the Code.  Rather, SKAT's amended pleading alleges

that the Goldstein plan falsely represented that it owned shares of Danish stock on which

dividends were issued and tax withheld, and that the plan met the requirements under the U.S.-

Denmark tax treaty to be entitled to a refund in the first place.  (*See* Blessington Decl. Ex. 2 at 22

(Goldstein Am. Compl. ¶ 4).)

Fifth, the Goldsteins argue that SKAT's fraud claims should be dismissed for failing to plead justifiable reliance.  (Goldstein Br. 25-28.)  But whether a plaintiff reasonably relied "on alleged misrepresentations is an intensely fact-specific inquiry and is generally considered inappropriate for determination on a motion to dismiss."  *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13 Civ. 4650 (JFK), 2015 WL 769573, at *3 (S.D.N.Y. Feb. 24, 2015).

The cases on which the Goldsteins rely are all inapposite.  (Goldstein Br. 25-28.)  For instance, SKAT did not invest in the Goldstein plan, thus the "affirmative duty" of "sophisticated investors" under New York law "to protect themselves from misrepresentations made during business acquisitions" has no applicability to this case.  *Global Mins. & Metals Corp. v. Holme*, 35 A.D.3d 93, 100 (1st Dep't 2006); *see also MP Cool Invs. Ltd. v. Forkosh*, 142 A.D.3d 286, 291-92 (1st Dep't 2016) ("experienced and sophisticated investor" failed to plead reasonable reliance where it had "total, unfettered access" to information); *RKA Film Fin., LLC v. Kavanaugh*, 171 A.D.3d 678, 679 (1st Dep't 2019) ("plaintiff, a sophisticated investor, did not demonstrate that it fulfilled its affirmative obligation to verify the nature and quality of its investment").  Nor did SKAT know that the Goldsteins were concealing relevant information when SKAT relied on their misrepresentations.  *See Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 279 (2011) (plaintiffs failed to plead justifiable reliance where "according to the facts alleged in the complaint, plaintiffs knew that defendants had not supplied them with the financial information . . . that they were entitled to").

Sixth, the Goldsteins' argument that SKAT failed to plead substantial assistance with respect to its aiding and abetting fraud claims, (Goldstein Br. 28-29), fails for the same reason it did the first time they made it:  SKAT "has alleged that the defendants acted in concert to carry

out the scheme and each directly contributed to the alleged fraud." *In re SKAT*, 356 F. Supp. 3d at 325.

Seventh, the Goldsteins argue that SKAT's negligent misrepresentation claim should be dismissed because they owed no duty to SKAT.  (Goldstein Br. 30-32.)  "To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that (1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information given." *LBBW Luxembourg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014).

Courts weigh "three factors" in determining whether "a special relationship exists:" (i) "whether the person making the representation held or appeared to hold unique or special expertise;" (ii) "whether a special relationship of trust or confidence existed between the parties;" and (iii) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Suez Equity Invs. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (internal quotation omitted).  "Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996).

The Goldsteins argue that SKAT failed to plead a special relationship as a matter of law because "SKAT's Amended Complaint presents just another case of an arm's length business transaction gone awry."  (Goldstein Br. 31.)  But the Goldsteins' refund applications were not a "business transaction" and thus the cases the Goldsteins rely on are inapposite.  Rather, SKAT's allegations clearly show that the Goldsteins were aware that SKAT would rely on the

33

representations in their refund applications in determining whether to issue the Goldsteins the tax refunds they claimed and indeed, made them for that purpose.  Further, the truth of those representations was "peculiarly within" the Goldsteins' "knowledge," thus making "a special relationship . . . more likely to exist."  *LBBW*, 10 F. Supp. 3d at 526.

Finally, the Goldsteins argue that SKAT's unjust enrichment, payment by mistake, and money had and received claims should be dismissed because (i) "SKAT's own negligence caused it to pay refunds" and "SKAT caused the Goldstein Parties to change their positions to their detriment," and (ii) "SKAT has failed to allege any non-tortious reason why the Goldstein Parties should return the tax refunds," so the claims should be dismissed as duplicative. (Goldstein Br. 32-33.)  The first argument does not go to the sufficiency of SKAT's allegations and raises fact issues inappropriate to resolve on a Rule 12(b)(6) motion.

The second argument fails for the reasons the Court explained in its previous decision rejecting this same argument.  Since SKAT's "claims for fraud and negligent misrepresentation theoretically could fail," as "both *scienter* and the defendants' liability for alleged misrepresentations are disputed," and SKAT "still could prevail on the unjust enrichment claim," the Goldsteins' motion "with respect to the unjust enrichment claim" is still "premature."  *In re SKAT*, 356 F. Supp. 3d at 325-26.[41]

---

41. Similarly, the Court's decision denying defendants' motion to dismiss SKAT's money had and received claim as duplicative of the unjust enrichment claim because "money had and received is a claim that has been considered an action at law" and "the claims, while similar, are not identical," and that the motion to dismiss the payment by mistake claim is denied "[f]or the same reasons" apply here as well.  *Id.* at 326.

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court deny

defendants' motions to dismiss the amended complaints.

Dated:  New York, New York
       August 6, 2020

                                HUGHES HUBBARD & REED LLP

                                By:   /s/ Marc A. Weinstein
                                      William R. Maguire
                                      Marc A. Weinstein
                                      Neil J. Oxford
                                  One Battery Park Plaza
                                  New York, New York 10004-1482
                                  Telephone: (212) 837-6000
                                  Fax:  (212) 422-4726
                                  bill.maguire@hugheshubbard.com
                                  marc.weinstein@hugheshubbard.com
                                  neil.oxford@hugheshubbard.com

                                *Counsel for Plaintiff Skatteforvaltningen*
                                  *(Customs and Tax Administration of the*
                                  *Kingdom of Denmark)*