# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to:    18-cv-05053,
18-cv-09797, 18-cv-09836, 18-cv-09837,
18-cv-09838, 18-cv-09839, 18-cv-09840,
18-cv-09841, 18-cv-10100

MASTER DOCKET

18-md-2865 (LAK)

## DEFENDANTS DARREN WITTWER, LOUISE KAMINER, ROBERT CREMA AND ACER INVESTMENT GROUP, LLC'S REPLY IN SUPPORT OF <u>THEIR MOTION TO DISMISS SKAT'S AMENDED COMPLAINTS</u>

K&L Gates LLP
John C. Blessington
Brandon R. Dillman
Michael R. Creta
John L. Gavin
One Lincoln Street
Boston, MA 02111
617.261.3100

*Attorneys for Darren Wittwer, Louise
Kaminer, Robert Crema, and Acer
Investment Group, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 1

I.      SKAT's claims are untimely and do not relate back to the
filing of the original complaints. ........................................................... 1

      A.      SKAT has known about the New Defendants' roles
in the alleged fraud since 2015. ................................................ 2

      B.      SKAT asks the Court to misapply relation back to
save its time-barred claims. ...................................................... 5

II.      The New Defendants are not subject to the Court's
personal jurisdiction. ............................................................................. 9

      A.      SKAT's "alter ego" theory does not apply to Louise
Kaminer and Robert Crema. ..................................................... 10

      B.      Acer's Utah conduct directed at Denmark does not
expose it to suit in Pennsylvania or New York. ........................ 12

III.      SKAT has failed to plead its fraud-based claims against
the New Defendants with particularity. ................................................ 13

CONCLUSION. .................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdell v. City of N.Y.*,
   759 F. Supp. 2d 450 (S.D.N.Y. 2010)...................................................................8

*Bank of Am. v. Apollo Enter. Sols., LLC*,
   No. 10-civ-5707-DLC, 2010 WL 4323273 (S.D.N.Y. Nov. 1, 2010) .....................12

*Barrow v. Wethersfield Police Dep't*,
   66 F.3d 466 (2d Cir. 1995)..................................................................................7

*Chunn v. Amtrak*,
   No. 14-Civ-6140-PAC-HBP, 2017 WL 9538164 (S.D.N.Y. May 11, 2017)..........6

*CIG Expl., Inc. v. State*,
   24 P.3d 966 (Utah 2001) ....................................................................................2

*Cole v. Lawrence*,
   701 A.2d 987 (Pa. Super. Ct. 1997) ...................................................................2

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
   949 F.2d 42 (2d Cir. 1991)..................................................................................3

*In re Customs & Tax Admin. of the Kingdom of Den. (SKAT) Tax Refund Scheme
   Litig.*,
   No. 18-md-2865-LAK, 2020 WL 70938 (S.D.N.Y. Jan. 7, 2020) .........................13

*DOIT, Inc. v. Touche, Ross & Co.*,
   926 P.2d 835 (Utah 1996) ..................................................................................2

*GEM Advisors, Inc. Corporaction Sidenor, S.A.*,
   667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009).........................................................10

*Germinaro v. Fid. Nat. Title Ins. Co.*,
   107 F. Supp. 3d 439 (W.D. Pa. 2015)..................................................................2

*Hogan v. Fischer*,
   738 F.3d 509 (2d Cir. 2013)................................................................................7

*Jeppesen v. Bank of Utah*,
   438 P.3d 81 (Utah Ct. App. 2018) ......................................................................4

*Krupski v. Costa Crociere S.p.A.*,
   560 U.S. 538, 130 S. Ct. 2485 (2010)...............................................................8, 9

*In re Mission Constr. Litig.*,
   No. 10-CIV-4262(LTS)(HBP), 2013 WL 4710377 (S.D.N.Y. Aug. 30, 2013) ......................6

*Packer v. TDI Sys., Inc.*,
   959 F. Supp. 192 (S.D.N.Y. 1997)..........................................................................................11

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
   No. 08-CV-43(JG)(VVP), 2015 WL 13650032 (E.D.N.Y. June 24, 2005) ...........................7

*Ramiro Aviles v. S & P Global, Inc.*,
   380 F. Supp. 3d 221 (S.D.N.Y. 2019)...............................................................................11, 12

*Russell/Packard Dev., Inc. v. Carson*,
   78 P.3d 616 (Utah. Ct. App. 2003) ...........................................................................................2

*Russell Packard Dev., Inc. v. Carson*,
   108 P.3d 741 (Utah 2005) .........................................................................................................5

*Schiavone v. Fortune*,
   477 U.S. 21, 106 S. Ct. 2379 (1986) .........................................................................................6

*In re SKAT Tax Refund Scheme Litig.*,
   356 F. Supp. 3d 300 (S.D.N.Y. 2019).....................................................................................14

*S. New Eng. Tele. Co. v. Global NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010).....................................................................................................12

*Velasquez v. Digital Page, Inc.*,
   No. CV 11–3892(LDW)(AKT), 2014 WL 2048425 (E.D.N.Y. May 19, 2014) .....................7

*In re Vitamin C Antitrust Litig.*,
   995 F. Supp. 2d 125 (E.D.N.Y. 2014) ...................................................................................7, 8

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984).....................................................................................................11

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990).....................................................................................................15

*Williams H. McGee & Co. v. M/V Ming Plenty*,
   164 F.R.D. 601 (S.D.N.Y. 1995) ...........................................................................................6, 7

*Young Resources Ltd. P'ship v. Promontory Landfill LLC*,
   427 P.3d 457 (Utah Ct. App. 2018) ...........................................................................................4

**Other Authorities**

Fed. R. Civ. P. 15 (c)(1)(C) ............................................................................................................7, 8

Utah Code Ann. §78B-2-305(3) ...................................................................................................2

Utah R. Civ. P. 15 ..........................................................................................................................6

Defendants Darren Wittwer ("Wittwer"), Louise Kaminer ("Kaminer"), and Robert Crema ("Crema") (collectively, the "Individual New Defendants"), and Acer Investment Group, LLC ("Acer" and with the Individual New Defendants, the "New Defendants"), respectfully submit this reply[1] in support of their motion to dismiss the Amended Complaints[2] of Plaintiff Skatteforvaltningen ("SKAT").

## INTRODUCTION

SKAT cannot bring claims against the New Defendants for the first time over tax reclaims that were submitted to it at least five years ago.  Faced with time-barred claims, and having failed to allege any facts to establish jurisdiction over the New Defendants, SKAT now attempts to stretch the bounds of tolling, relation back, and alter ego theories in a last ditch effort to save its claims. Despite its best efforts, SKAT cannot show (1) that its claims are timely, (2) that this Court has jurisdiction over the New Defendants, or (3) that its fraud-based claims have been pled with particularity.

## ARGUMENT

I.   **SKAT's claims are untimely and do not relate back to the filing of the original complaints.**

SKAT's assertion that the applicable statutes of limitations were tolled by the discovery rule, or that its Amended Complaints relate back to the filing dates of its original complaints, relies

---

[1] Mindful of the Court's admonition to defendants to submit joint motion papers where appropriate, Memorandum Opinion [Doc. No. 400] at p. 4 n.10, the New Defendants submit this reply separately from the Goldstein parties because the New Defendants' motion to dismiss presents substantially different arguments than the Goldstein parties' motion.

[2] "Amended Complaints" refers to the amended complaints attached as Exhibit 2 to the Declaration of John Blessington [Doc. No. 394] submitted in connection with the New Defendants' motion. The Amended Complaints are referred to collectively as the "Amended Complaints," and all citations to "Am. Compl." are to the amended complaint against DW Construction, Inc. Retirement Plan, et al [Doc. No. 131 in 1:18-cv-09797].

on an unfounded interpretation of its pleadings in this case.  SKAT's arguments are further undermined by pension plan documentation that is referenced in and integral to the Amended Complaints.  Ultimately, neither tolling nor relation back can save SKAT's time-barred claims.

**A.    SKAT has known about the New Defendants' roles in the alleged fraud since 2015.**

SKAT's contention that it only recently learned of the New Defendants' roles in the alleged fraud is contradicted by (1) the Amended Complaints' allegations and (2) documents referenced in and integral to the Amended Complaints.

The Amended Complaints allege that SKAT first became aware of alleged fraud on June 15, 2015.  Am. Compl. ¶ 6.  In its opposition, SKAT seeks to confine this date to only reclaim applications by "certain Malaysian entities."  *See* Plaintiff Skatteforvaltningen's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaints [Doc. No. 436] ("SKAT Opposition") pp. 22–23.  But, even if the June 15, 2015 date only relates to "certain Malaysian entities," SKAT admits that it subsequently learned of the involvement of "entities and individuals . . . in the United States" and that within two months, i.e., by August 24, 2015, it had decided to stop paying "all claims for refunds of dividend withholding tax," including reclaims by U.S. entities.  Am. Compl. ¶¶ 7, 8.  Further, as of August 24, 2015, SKAT already had enough information to "report[] the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime."  *Id.* ¶ 8.  Assuming that the relevant statutes of limitations did not begin to run until August 24, 2015, which was over three months after SKAT made its last payment on applications related to the New Defendants, SKAT's claims are still time-barred.[3]

---

[3] Assuming the applicable statutes of limitations began to run on August 24, 2015, SKAT needed to file its Utah fraud claims against the New Defendants by August 24, 2018, and its Utah negligent misrepresentation and restitution claims by August 24, 2019.  *See* Utah Code Ann. §78B-2-305(3) (three-year limit on fraud claims); *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 842 (Utah 1996) (four-year limit on negligent misrepresentation claims); *CIG Expl., Inc. v. State*, 24 P.3d

Documents referenced in and integral to the Amended Complaints[4] only confirm that the relevant limitations periods expired long before SKAT even sought leave to amend its original complaints on March 27, 2020.   In the first week of December 2015, SKAT received the pension plan documentation for the Kamco Investments Plan, AIG Plan, and DWC Plan.   *See* Declaration of John C. Blessington ("Blessington Decl.") at Exs. A–C[5].   Among other things, these documents state that Kaminer, Crema, and Wittwer, were legal representatives and trustees of the Kamco Investments Plan, AIG Plan, and DWC Plan, respectively.   *See id.*   In other words, it is undisputed

---

966, 971 (Utah 2001) (four-year limit on money had and received claims); *Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 620 (Utah. Ct. App. 2003) (four-year limit for unjust enrichment claims).  Similarly, assuming an August 24, 2015 accrual date, SKAT must have filed its aiding and abetting fraud claim in the Newsong action no later than August 24, 2017, and its unjust enrichment and money had and received claims no later than August 24, 2019.  *See Germinaro v. Fid. Nat. Title Ins. Co.*, 107 F. Supp. 3d 439, 453–54 (W.D. Pa. 2015) ("Pennsylvania imposes a two-year statute of limitations period for [aiding and abetting fraud]"); *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997) (applying four-year limit for contract implied in law claims to unjust enrichment claims).

[4] In deciding a motion to dismiss, the Court is not constrained to the allegations contained in the complaint, but may also consider attached documents, or those incorporated by reference into the complaint.  *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  The Court may also consider documents that are integral to the complaint, and upon which the plaintiff relied in drafting the complaint.  *Id.*  Further, the Second Circuit has held that, where a plaintiff has notice of a document, and used that document in framing the complaint, a court can consider the document on a motion to dismiss without converting the motion into a motion for summary judgment.  *Id.* at 48 (allowing consideration of documents that were not "public disclosure documents required by law to be filed with the SEC, nor documents actually filed with the SEC, nor attached as exhibits to the complaint or incorporated by reference in it").  The documents attached as Exhibits A, B, and C to the Blessington Declaration, which are limited to the pension plan documentation for the Kamco Investments Plan, AIG Plan, and DWC Plan, can be considered by the Court under the above-referenced precedent.  The plan documents are integral to SKAT's Amended Complaints and were used by SKAT to frame its allegations, as the documentation sets forth the Individual New Defendants' involvement with the applicable pension plans.  Indeed, SKAT directly references the Kamco Investment "plan formation documentation" in the relevant Amended Complaint.  Kamco Inv. Am. Compl. ¶ 47.

[5] Exhibits A, B, and C were each produced by SKAT in discovery in this MDL.

that SKAT was aware of the Individual New Defendants' role and involvement in the pension plans by December 2015 at the latest.

Given this knowledge, SKAT has no reasonable basis to assert that the identities of the Individual New Defendants were hidden. The Amended Complaints' allegations and the pension plan documentation show that SKAT was fully aware of the New Defendants' involvement in the alleged fraud no later than 2015. SKAT, therefore, cannot rely on the discovery rule to toll the applicable statutes of limitations.

SKAT's assertion that its non-fraud-based claims are timely because the applicable statutes of limitations were equitably tolled is also untenable. Equitable tolling is available only where "a plaintiff does not discover the cause of action due to the defendant's concealment or misleading conduct or due to other exceptional circumstances that would make the application of the limitations period unjust." *Jeppesen v. Bank of Utah*, 438 P.3d 81, 87 (Utah Ct. App. 2018). SKAT does not allege that the application of the limitations period would be unjust, and instead relies entirely on supposed concealment. SKAT Opposition p. 21. Although Utah courts are undecided on whether a complaint must contain allegations of fraudulent concealment, or whether it is sufficient to raise those factual allegations in an opposition brief, *see Young Resources Ltd. P'ship v. Promontory Landfill LLC*, 427 P.3d 457, 466 (Utah Ct. App. 2018), SKAT has not established fraudulent concealment under either approach.

The Amended Complaints fail to include any allegations concerning wrongful concealment, how SKAT was supposedly prevented from discovering its claims, or SKAT's level of diligence in discovering such claims. Nor could SKAT make such allegations. As Exhibits A, B, and C to the Blessington Declaration make clear, not only were the New Defendants not concealing their involvement in the trades and reclaims at issue, their involvement was voluntarily

-4-

disclosed to SKAT at least by December 2015, as part of SKAT's investigation into these claims. *See* Blessington Decl. Exs. A–C.

Like the Amended Complaints, SKAT's Opposition fails to provide any support for equitable tolling.  In the only sentence addressing fraudulent concealment, SKAT's Opposition simply states that equitable tolling applies based on the New Defendants' "conduct in submitting fraudulent applications to SKAT, and in concealing [the New Defendants]' roles in the fraud." SKAT Opposition p. 21.  The mere assertion of a fraud claim against a defendant, however, is insufficient to establish that the defendant fraudulently concealed a claim from the plaintiff.  *See Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 752 (Utah 2005).  The remainder of SKAT's sole statement in support of equitable tolling is the conclusory assertion that the New Defendants "conceal[ed the New Defendants]' roles in the fraud."  SKAT Opposition p. 21.  SKAT makes no attempt to explain how the New Defendants' supposedly concealed their alleged "roles in the fraud."

Moreover, SKAT's assertion that tolling is a "highly fact-intensive inquiry" focuses on the wrong part of the equitable tolling standard.  Although a plaintiff's diligence in discovering a cause of action after a defendant has taken steps to conceal it is a "highly fact-dependent . . . question," that question is not relevant until a plaintiff has adequately alleged fraudulent concealment.  *See Russell Packard Dev.*, 108 P.3d at 750–51.  Considering SKAT has not made sufficient allegations of fraudulent concealment in its Amended Complaints or Opposition, the Court need not reach the question of SKAT's diligence.

**B.    SKAT misapplies the relation back rule in an attempt to save its time-barred claims.**

SKAT wrongly asserts that its claims are not time-barred because the Amended Complaints relate back to the dates of SKAT's original complaints.  As an initial matter, SKAT relies on a

Utah state law relation back rule, yet offers no explanation as to why such rule is relevant to the current dispute.[6]  "[T]he standard for evaluating whether a proposed amendment relates back is a procedural question and is, therefore, governed by *federal law*[.]"  *In re Mission Constr. Litig.*, No. 10-CIV-4262(LTS)(HBP), 2013 WL 4710377, at *14 n.16 (S.D.N.Y. Aug. 30, 2013).  Further, the Utah cases SKAT cites were all decided before a 2016 amendment to Utah Rule of Civil Procedure 15, which added language identical to Federal Rule of Civil Procedure 15 limiting relation back to cases where a newly added defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Compare* Utah R. Civ. P. 15 (2011), *with* Utah R. Civ. P. 15 (2017) (adding section (c)(3)).  In short, SKAT's suggestion that Utah law allows relation back without proof of such a mistake is based on an outdated understanding of an inapplicable rule.

Federal Rule of Civil Procedure 15(c), which provides the applicable relation back standard for this dispute, involves four factors, "all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period." *Williams H. McGee & Co. v. M/V Ming Plenty*, 164 F.R.D. 601, 604–05 (S.D.N.Y. 1995) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S. Ct. 2379, 2384 (1986)).

A key requirement for satisfying this standard is demonstrating that the plaintiff mistakenly sued the wrong party in its original complaint. *See Chunn v. Amtrak*, No. 14-Civ-6140-PAC-HBP,

---

[6] SKAT's lack of explanation for relying on the Utah relation back doctrine is particularly vexing given that SKAT's claims in the Newsong and Goldstein actions are governed by Pennsylvania and New York law, respectively, and are unrelated to Utah law in any way.

2017 WL 9538164, at *11 (S.D.N.Y. May 11, 2017) ("Assuming, without deciding, that the first two requirements . . . are met, plaintiff's claims nevertheless fail because the third requirement for relation back -- a mistake concerning the proper party's identity -- is not met.").   "The misidentification of similarly named or related companies [(a "wrong party" case)] is the classic case for application of Rule 15(c)[.]"  *William H. McGee & Co.*, 164 F.R.D. at 606.  Where a plaintiff seeks to add a new defendant, rather than replace a previously named defendant (an "additional party" case), "there generally will be no mistake concerning the proper party's identity[, because t]he plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable."  *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014) (internal quotations omitted).  Importantly, the Second Circuit has repeatedly held that Rule 15 "preclude[s] relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996).

The New Defendants are not substitutes for "wrong parties," but rather are "additional parties."  Courts in the Second Circuit have commonly held that relation back under Rule 15(c) is not available in such "additional party" cases.  *See, e.g.*, *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-43(JG)(VVP), 2015 WL 13650032, at *12 (E.D.N.Y. June 24, 2005) ("the court is persuaded . . . that the plain meaning of Rule 15, the Rule's Advisory Committee Notes, and *Krupski* all evince a preference for limiting Rule 15(c) mistakes to wrong-party cases"); *Velasquez v. Digital Page, Inc.*, No. CV 11–3892(LDW)(AKT), 2014 WL 2048425, at *3 (E.D.N.Y. May 19, 2014) ("Rule 15(c) does not apply in cases where a plaintiff seeks to add an *additional* party as a defendant") (emphasis in original); *In re Vitamin C Antitrust Litig.*, 995 F.

-7-

Supp. 2d at 129 ("As a matter of plain language, [Rule 15] would appear to include only 'wrong party' cases, and not 'additional party' cases.").

While SKAT relies on *Krupski v. Costa Crociere S.p.A.* as supposed support for its position that it has made a "mistake concerning the proper party's identity," such reliance is misplaced for at least three reasons. *See* SKAT Opposition pp. 26–27 (citing *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549, 130 S. Ct. 2485, 2494 (2010)). First, *Krupski* involved a classic "wrong party" case for the application of Rule 15(c) — the plaintiff sued "Costa Cruise" instead of "Costa Crociere". *Id.* at 548. As discussed above, the present dispute is an "additional party," not a "wrong party" case.

Second, *Krupski* noted that the key inquiry under Rule 15(c) is "whether [the new defendant] knew or should have known that it would have been named as a defendant but for an error." *Id.*; *see Abdell v. City of N.Y.*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010) ("the focus of the Rule 15 inquiry is a potential defendant's reasonable beliefs regarding whether a plaintiff failed to name him because of a mistake") (internal quotation omitted). Given the parties that SKAT named in the various lawsuits consolidated in this multidistrict litigation, the Individual New Defendants could not possibly have known that SKAT would have named them but for a mistake. SKAT originally filed approximately 140 U.S. complaints in connection with the alleged withholding tax refund fraud. As of this filing, the New Defendants are not aware of a single one of those cases in which SKAT sued any individual based on their role as a participant in any pension plan. SKAT also failed to sue the allegedly unknown pension plan participants as John or Jane Doe defendants in these actions. In other words, the Individual New Defendants were not put on notice that other similarly situated individuals had been sued or that SKAT intended to sue such individuals. *See In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d at 129 ("Not every party with some exposure

would know that a mistake had been made in not suing it."). To the contrary, the Individual New Defendants had every reason to believe that SKAT made a strategic decision to sue only pension plans and their authorized representatives, and elected not to sue plan participants.

Third, although Krupski recognized that "a misunderstanding about [the newly named defendant's] status or role in the events giving rise to the claims at issue" will not prevent relation back where the plaintiff "mistakenly choose[s] to *sue a different defendant* based on that misimpression," that is not the case here. *See Krupski*, 560 U.S. at 549 (emphasis added). SKAT's alleged "misunderstanding" about the New Defendants' role did not cause it to sue a different defendant. Instead, SKAT argues only that it recently learned of the roles of the New Defendants, and therefore seeks to add them now.[7]

## II.    The New Defendants are not subject to the Court's personal jurisdiction.

Given the Amended Complaints' absence of any specific allegations of conduct by the Individual New Defendants in Utah, or by Acer in Pennsylvania and New York, SKAT has been forced to rely upon rarely applied theories in an attempt to establish personal jurisdiction over the New Defendants. Undeterred by the lack of any law or allegations to support such theories, SKAT mistakenly claims that previously-sued pension plan defendants are "alter egos" of the Individual New Defendants, and that conduct occurring many years ago subjects Acer to jurisdiction in New York and Pennsylvania. This Court should see these novel theories for what they really are — a misguided attempt to manufacture jurisdiction where there is none.

---

[7] It should be noted that, nowhere in the Amended Complaints does SKAT allege that it only recently discovered the New Defendants' identity or involvement.

A.    SKAT's "alter ego" theory does not apply to Louise Kaminer and Robert Crema.

SKAT tacitly concedes that (1) the Court cannot exercise general jurisdiction over Kaminer and Crema, and (2) Kaminer and Crema have not personally taken actions that were purposefully directed at Utah.  Unable to show any direct contact with Utah, SKAT resorts to arguing that the Court has jurisdiction over Kaminer and Crema because they have "sufficient suit-related contacts with [Utah] through their *alter ego* pension plan and by virtue of the acts of their agent Acer[.]" SKAT Opposition p. 16.  This argument is meritless.

As a preliminary matter, SKAT does not, and cannot, allege the existence of any agency relationship between Kaminer or Crema as plan participants and Acer.  SKAT does not allege the existence of any contractual relationship between Kaminer or Crema and Acer, or any action taken by Acer on behalf of Kaminer or Crema.  Instead, the only possible agency relationship is between their plans, the Kamco Investments and AIG Plans, and Acer.  *See id.* pp. 17−18 ("the Kamco Investments plan authorized Acer 'to act as its . . . agent' . . . . Crema is also subject to jurisdiction in Utah by virtue of the suit-related contacts that Acer—the agent of his plan and alter ego—had with the State.").  As such, if the pension plans are not Kaminer and Crema's alter egos, Acer's Utah activities are irrelevant to whether the Court can exercise jurisdiction over those individuals.

SKAT asks the Court to stretch the alter ego theory far beyond its intended application.  In the jurisdictional context, the alter ego theory allows the exercise of jurisdiction where a "controlled entity 'was a shell' for the allegedly controlling party."  *GEM Advisors, Inc. Corporaction Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009).  The alter ego theory has been almost exclusively limited to cases involving corporate entities, such as parents and subsidiaries or corporations and their controlling officers.  Underscoring the limited nature of the doctrine, the factors relevant to determining alter ego jurisdiction are plainly inapplicable to a

relationship between a pension plan participant and a pension plan. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120–21 (2d Cir. 1984) (identifying common ownership, financial dependency, "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," and "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent"); *see also Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 202 (S.D.N.Y. 1997) (identifying "(1) the absence of corporate formalities normally attendant on corporate existence . . . ; (2) inadequate capitalization; (3) the intermingling of corporate and personal finances; and (4) the amount of business discretion displayed by the purported alter ego corporation" as the relevant factors to consider in exercising personal jurisdiction over a corporate officer under an alter ego theory).

SKAT asks the Court to subject pension plan participants to jurisdiction based on the conduct of the pension plans themselves, but fails to identify a single case, or compelling reason, to support such an expansive application of the alter ego doctrine. The only case SKAT cites involves a parent/subsidiary corporation relationship that has little in common with the current dispute. *See* SKAT Opposition p. 16–17 (citing only *GEM Advisors, Inc.*). The New Defendants have similarly been unable to locate any cases applying an alter ego theory to pension plans and their participants.

Even if alter ego jurisdiction were available, SKAT has nonetheless failed to adequately plead facts to support its assertion that the Kamco Investments and AIG Plans were the alter egos of Kaminer and Crema, respectively. In order to establish jurisdiction based on an alter ego theory, the complaint must contain a "'specific averment of facts that, if credited,' could create a plausible inference that [the defendants] 'operated as a single economic unit.'" *Ramiro Aviles v. S & P*

*Global, Inc.*, 380 F. Supp. 3d 221, 263 (S.D.N.Y. 2019) (quoting *S. New Eng. Tele. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)).  SKAT's Amended Complaints are largely limited to (1) a conclusory allegation that Kaminer and Crema "exerted control over [the relevant pension plan] as the plan's sole participant" and (2) an allegation that Kaminer and Crema were officers of the plans' sponsoring entities.  AIG Am. Compl. ¶¶ 47–48; Kamco Inv. Am. Compl. ¶ 47.  SKAT does not allege that monies owed to the pension plans or earned as part of the tax reclaims were paid directly to the Individual New Defendants, that there was any comingling of assets between the pension plans and the New Defendants, or that the plans did not follow the necessary formalities and regulations to be pension plans.  Without more, the requirements for alter ego jurisdiction have not been satisfied.  *See Bank of Am. v. Apollo Enter. Sols., LLC*, No. 10-civ-5707-DLC, 2010 WL 4323273, at *9–10 (S.D.N.Y. Nov. 1, 2010) (finding lengthy allegations that parent corporation placed two of its managing members in control of a subsidiary, and used those members to "dominate and control" the subsidiary to be conclusory and insufficient to establish alter ego jurisdiction); *see also Ramiro Aviles*, 380 F. Supp. 3d at 263 (finding a plaintiff failed to establish personal jurisdiction over a corporate officer defendant on an alter ego theory, despite allegations that the officer "received self-dealing fees" from the corporate defendant).  If SKAT's alter ego argument was accepted, nearly every participant in a sole-participant pension plan would be subject to alter ego jurisdiction.

### B.   Acer's Utah conduct directed at Denmark does not expose it to suit in Pennsylvania or New York.

As SKAT recognizes, Acer's conduct relevant to the allegations in the Amended Complaints took place in Utah.  *See* SKAT Opposition pp. 17–18.  In fact, the Amended Complaints nowhere mention any activity on the part of Acer in the states of Pennsylvania or New

York.  *See, e.g.*, Am. Compl. ¶¶ 20, 61, 62 (failing to identify, in the only paragraphs referencing Acer, where Acer's actions took place).[8]

Unable to identify any Acer activities that occurred in Pennsylvania or New York, SKAT asserts that its "claims arise directly out of Acer's long-term business relationship with a Pennsylvania resident [and New York entity]" and cites this Court's January 7, 2020 decision regarding personal jurisdiction as supposed support.  SKAT Opposition pp. 14, 16 (citing *In re Customs & Tax Admin. of the Kingdom of Den. (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865-LAK, 2020 WL 70938 (S.D.N.Y. Jan. 7, 2020)).  But, the Court's January decision is easily distinguishable.  There, the Court decided that ED&F Man's withdrawal of money from the Goldstein Plan's New York brokerage account, and use of that money in a way that was injurious to the Goldstein Plan (a New York entity), exposed ED&F Man to jurisdiction in a suit in New York by the Goldstein Plan.  *In re Customs & Tax Admin. of the Kingdom of Den. (SKAT) Tax Refund Scheme Litig.*, 2020 WL 70938, at *1.  Unlike the Goldstein Plan's claims against ED&F, however, SKAT's claims against Acer arise out of Acer's alleged misconduct in Utah directed into Denmark, with alleged injury to a Danish entity.  In other words, the alleged injured party is in Denmark, not New York or Pennsylvania.  Given these fundamental differences, the Court's January 7, 2020 decision has no bearing on the present dispute, and Acer's business relationships with the Newsong and Goldstein Plans is insufficient to subject Acer to personal jurisdiction.

## III.  SKAT has failed to plead its fraud-based claims against the New Defendants with particularity.

In an effort to defend the sufficiency of the Amended Complaints' fraud-related allegations, SKAT misapplies this Court's previous decisions.  First, SKAT's reliance on this

---

[8] The Amended Complaints are all identical with respect to the allegations against Acer.

Court's decision with respect to Gavin Crescenzo ignores the striking distinctions between the allegations against Crescenzo and the Amended Complaints' allegations against the New Defendants.  For example, this Court stressed that Crescenzo "participated in incorporating limited liability companies associated with fifteen different claimants that were created shortly before the claimants submitted their initial tax refund claims to SKAT and that Crescenzo had a hand in dissolving those same entities, all on the same date."  *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 323 (S.D.N.Y. 2019) (internal quotation omitted).  Nowhere does SKAT allege that the New Defendants had any hand in organizing multiple plan sponsors, that the sponsors were created shortly before submitting tax reclaims, or that the sponsors were dissolved shortly after submitting the reclaims.  SKAT's assertion that the Court's reasoning with respect to Crescenzo applies equally to the New Defendants, despite obvious differences between Crescenzo's alleged activities and the conclusory allegations against the New Defendants, defies reason.[9]

Similarly, the fact that the Court has previously ruled on Rule 9(b) arguments with respect to other defendants does not undermine the New Defendants' Rule 9(b) arguments.  The Court's January 9, 2019 decision emphasized that SKAT had sufficiently pled fraud because the complaints "describe[ed] each [defendant]'s role in the scheme," and then listed numerous specific allegations set forth against each class of defendants.  *See In re SKAT*, 356 F. Supp. 3d at 324. Such descriptions of the New Defendants' alleged roles are conspicuously missing from the Amended Complaints.  Instead, the Amended Complaints' allegations concerning the Individual New Defendants' roles are largely limited to conclusory assertions, made upon information and

---

[9] It bears repeating, as discussed in the New Defendants' Memorandum in Support of its Motion to Dismiss [Doc. No. 393] at 1 n.2, that while a number of those allegations may apply to some of the over 180 U.S. pension plans SKAT has sued, they plainly do not apply to the New Defendants.

belief,[10] that they "exerted control over" the relevant plans.  Although SKAT claims that the Individual New Defendants can be held "liable for their pension plans' misrepresentations under the *alter ego* doctrine" (SKAT Opposition p. 29),  SKAT's attempt to treat the Plans and Individual New Defendants as one-and-the-same is (1) not supported by the law, and (2) not supported by the Amended Complaints' allegations.  *See supra* II. A.

Last, the Amended Complaints fail to sufficiently allege any fraudulent intent on the New Defendants' part, and instead only allege that Acer knew that the Plans "did not own the shares or receive the dividends listed in the 'tax vouchers.'" Am. Compl. ¶ 62.  Such allegations are insufficient under Rule 9(b), and this Court's January 9, 2019 decision with respect to more well-pled allegations against other defendants does nothing to alter that conclusion.

## CONCLUSION

For the foregoing reasons, as well as those stated in the New Defendants' prior briefing, SKAT's claims against the New Defendants should be dismissed.

---

[10] As set forth in the New Defendant's prior briefing, such information and belief pleading is insufficient under Rule 9(b) where, as here, the plaintiff has conducted a lengthy investigation, such that the "facts are [not] peculiarly within the opposing party's knowledge."  *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

August 20, 2020

Respectfully submitted,

K&L GATES LLP

*/s/ John C. Blessington*
John C. Blessington (*pro hac vice*)
  john.blessington@klgates.com
Brandon R. Dillman (*pro hac vice*)
  brandon.dillman@klgates.com
Michael R. Creta (*pro hac vice*)
  michael.creta@klgates.com
John L. Gavin (*pro hac vice*)
  john.gavin@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
T: 617.261.3100
F: 617.261.3175

*Attorneys for Louise Kaminer, Darren*
*Wittwer, Robert Crema, and Acer*
*Investment Group, LLC*