# EXHIBIT E

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 2 of 12

Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

2017 WL 9538164
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Christopher CHUNN, Plaintiff,
v.
AMTRAK, et al., Defendants.

14 Civ. 6140 (PAC) (HBP)
|
Signed 05/11/2017

**Attorneys and Law Firms**

Cleland B. Welton, II, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, for Plaintiff.

Ronald E. Joseph, Jonathan B. Adler, Tina S. Bhatt, Landman Corsi Ballaine & Ford PC, Kirti Vaidya Reddy, U.S. Attorney's Office, New York, NY, for Defendants.

REPORT AND RECOMMENDATION

HENRY PITMAN, United States Magistrate Judge

 *1  TO THE HONORABLE PAUL A. CROTTY, United States District Judge,

I. Introduction

Plaintiff Christopher Chunn brings this action seeking the recovery of $10,400 in United States currency that was seized from him by Amtrak police and subsequently forfeited in an administrative forfeiture proceeding by the United States Drug Enforcement Administration (the "DEA"), as well as compensatory and punitive damages. By notice of motion dated November 28, 2016, defendants Amtrak and Amtrak Police Officers ("P.O.") Looney [1] and Coleman (the "Amtrak Defendants") move for summary judgment (Notice of Motion, dated Nov. 28, 2016 (Docket Item ("D.I.") 105) ). For the reasons set forth below, I respectfully recommend that the Amtrak Defendants' motion for summary judgment be granted. In addition, to the extent that plaintiff's opposition to the Amtrak Defendants' motion can be deemed to be a motion to amend the complaint, I further recommend that that motion be denied.

II. Facts

The facts that give rise to this action are set forth in detail in my Report and Recommendation, dated July 14, 2016 (D.I. 88), recommending that plaintiff's motion for summary judgment be denied as to all defendants, that his Section 983(e) motion directed against the DEA, Alex Colon and John Hannon [2] (the "DEA Defendants") be denied and that the DEA Defendants' summary judgment motion be granted. Familiarity with that Report and Recommendation is assumed. I recite the facts here only to the extent necessary for an understanding of the pending motion.

A. The Seizure

On September 15, 2011, plaintiff was arrested in New York's Pennsylvania Station ("Penn Station") by P.O. Coleman, P.O. Looney and other officers for disorderly conduct, trespassing and resisting arrest (Declaration of T. Bhatt in Support of Amtrak Defendants' Motion for Summary Judgment, dated Nov. 28, 2016 (D.I. 107) ("Bhatt Decl."), Ex. D, at 15:11-17:3, 18:12-19:2 & Ex. F ¶ 3; Amtrak Defendants' Local Civil Rule 56.1(a) Statement of Undisputed Material Facts, dated Nov. 28, 2016 (D.I. 109) ("Def.'s 56.1 Stmt.") ¶ 1; Plaintiff's Response to the Amtrak Defendants' Rule 56.1 Statement of Material Facts, dated Feb. 24, 2017 (D.I. 124) ("Pl.'s Response to 56.1 Stmt.") ¶ 1). During a search incident to the arrest, the officers discovered and seized $10,400 in cash on plaintiff's person (Def.'s 56.1 Stmt. ¶ 3; Pl.'s Response to 56.1 Stmt. ¶ 3).

Upon being notified of the cash, Amtrak Sergeant Sharon Patterson notified defendant Colon, an Amtrak officer who is also a member of the Amtrak Police Department-DEA joint task force, of the money seized from plaintiff, and Colon initiated a brief investigation into the source of the funds (Bhatt Decl., Ex. F ¶¶ 2-7; Def.'s 56.1 Stmt. ¶¶ 5, 9-10). According to the Amtrak Defendants, Colon's investigation disclosed that plaintiff (1) had purchased an Amtrak train ticket to North Carolina, a 12-hour train ride, less than seven hours before the train's departure time, (2) planned on staying in North Carolina for only a few days and (3) was traveling without luggage (Def.'s 56.1 Stmt. ¶ 10). Additionally, Colon learned that plaintiff had a receipt indicating that plaintiff had withdrawn $20,000 in cash from a bank on September 14, 2011 (Def.'s 56.1 Stmt. ¶ 10). Colon also investigated plaintiff's criminal background and discovered that plaintiff had eleven prior criminal convictions, including convictions for drug possession and intent to sell (although the most recent felony drug conviction was 15 years old), and an outstanding warrant for failure to appear in state court (Bhatt

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 3 of 12

Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

Decl., Ex. F ¶ 5 & Ex. G; Def.'s 56.1 Stmt. ¶¶ 4, 10). Additionally, according to Colon, a Port Authority police dog gave a positive indication for the scent of narcotics on the money confiscated from plaintiff (Bhatt Decl., Ex. F ¶ 6). Finally, Colon claims that plaintiff refused to answer questions regarding his employment and why he was in possession of $10,400 in cash (Bhatt Decl., Ex. F ¶ 7). Colon discussed this information with Patterson and advised her that the DEA was seizing the $10,400 (Bhatt Decl., Ex. H ¶ 14; Def.'s 56.1 Stmt. ¶¶ 11, 15). In response to his request, Patterson gave Colon the $10,400 (Bhatt Decl. Ex. H ¶ 15; Def.'s 56.1 Stmt. ¶ 16). Colon transported the money to the DEA's New York Field Office to begin administrative forfeiture proceedings (Bhatt Decl., Ex. F ¶ 8).

**\*2** Plaintiff denies that he was interviewed by Colon (Pl.'s Response to 56.1 Stmt. ¶ 9). Thus, he denies being asked where he was going, how he was employed, why he did not have luggage and why he was in possession of the money (Pl.'s Response to 56.1 Stmt. ¶ 10(a), (c), (e); Declaration of Christopher Chunn, dated Mar. 3, 2017 (D.I. 127) ("Chunn Decl.") ¶ 17). He also denies any knowledge of a positive indication by a Port Authority police dog, stating that he "never saw a dog during the course of his arrest and was not informed of a positive indication for the odor of narcotics on the money" (Pl.'s Response to 56.1 Stmt. ¶ 10(f) ). In addition, plaintiff claims that the cash in his possession was not related to any illegal activity but was instead a portion of the proceeds of a settlement he had reached in a prior lawsuit (Chunn Decl. ¶ 8).[3]

Following his arrest, plaintiff was given a receipt for the $10,400; the receipt was entitled "Amtrak Police Department Property Record" and had "04/DEA" listed under the heading "Removal Code & Location" (Bhatt Decl., Ex. L; Def.'s 56.1 Stmt. ¶¶ 18-19; Pl.'s Response to 56.1 Stmt. ¶¶ 18-19). Plaintiff subsequently pled guilty to resisting arrest in satisfaction of all the charges against him and was sentenced to two days of community service and a one-year term of conditional discharge (Def.'s 56.1 Stmt. ¶ 21; Pl.'s Response to 56.1 Stmt. ¶ 21).

Shortly after his arrest, plaintiff returned to the Amtrak police office at Penn Station and inquired about the $10,400 that had been seized from him (Def.'s 56.1 Stmt. ¶ 23; Pl.'s Response to 56.1 Stmt. ¶ 23). Plaintiff showed the Amtrak officer with whom he spoke the receipt he was given on the day of the arrest, and a supervisor informed plaintiff that plaintiff had to contact the DEA to get his money back (Def.'s 56.1 Stmt. ¶¶ 23-24; Pl.'s Response to 56.1 Stmt. ¶¶ 23-24). Plaintiff left without asking any further questions (Def.'s 56.1 Stmt. ¶ 25; Pl.'s Response to 56.1 Stmt. ¶ 25).

Approximately one month after his arrest, plaintiff returned to Penn Station again and spoke with Amtrak Officer Jennifer Acosta (Def.'s 56.1 Stmt. ¶ 26; Pl.'s Response to 56.1 Stmt. ¶ 26). Plaintiff again inquired about the $10,400 seized from him and showed Acosta the receipt he was given on the day of his arrest (Def.'s 56.1 Stmt. ¶ 27; Pl.'s Response to 56.1 Stmt. ¶ 27). Upon reviewing the receipt, Acosta noted "DEA" in the "Removal Code & Location" section and advised plaintiff that the DEA had his money and that he had to contact the DEA to get it back (Def.'s 56.1 Stmt. ¶ 28; Pl.'s Response to 56.1 Stmt. ¶ 28). Acosta also called Colon in plaintiff's presence to inquire about plaintiff's money (Def.'s 56.1 Stmt. ¶¶ 29-30; Pl.'s Response to 56.1 Stmt. ¶¶ 29-30). She transferred the call to a nearby booth so that plaintiff could speak directly with Colon (Def.'s 56.1 Stmt. ¶ 30; Pl.'s Response to 56.1 Stmt. ¶ 30). During that call, Colon advised plaintiff that the DEA had his money and that plaintiff would receive a letter in the mail regarding the process by which plaintiff could seek return of the money (Def.'s 56.1 Stmt. ¶ 31; Pl.'s Response to 56.1 Stmt. ¶ 31). Plaintiff did not make any further attempts to contact Amtrak about the money (Def.'s 56.1 Stmt. ¶ 32; Pl.'s Response to 56.1 Stmt. ¶ 32).

**\*3** Plaintiff did not timely file a claim with the DEA for the return of his money, and on January 26, 2012, after the deadline for plaintiff to file a claim had passed, the DEA forfeited the $10,400 seized from plaintiff (Def.'s 56.1 Stmt. ¶¶ 66-67; Pl.'s Response to 56.1 Stmt. ¶¶ 66-67).

B. Relevant Procedural History

Plaintiff commenced this action pro se on July 24, 2014 against Amtrak, the DEA, "P.O. Coleman" and "P.O. Looney," who plaintiff identified as being employed by Amtrak, and "John Doe," who plaintiff identified as being employed by the DEA (Complaint, dated July 24, 2014 (D.I. 1) ("Compl.") ). In his initial complaint, plaintiff alleged that he "went back to Amtrak to get [his] money. They said the D.E.A. came to pick up [his] money" (Compl., at 3).

On September 23, 2014, the Court received a letter from plaintiff in which plaintiff stated that he "want[ed] to challenge the forfeiture proceeding on the grounds of why was my money taken, what was the probable cause to take it and why I didn't receive any notice" (Letter from Plaintiff to Judge Crotty, dated Sept. 14, 2014 (D.I. 8) ).

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 4 of 12

**Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)**
2017 WL 9538164

Plaintiff subsequently amended his complaint on November 28, 2014, substituting Hannon and Colon for defendant "John Doe" (Amended Complaint, dated Nov. 28, 2014 (D.I. 16) ("Amended Compl.") ). He also alleged in his amended complaint that he "would like for any supervising ... officer or Agent who gave the authorization or order for [Colon and Hannon] to take custody of my money and not return it to it's [sic] rightful owner (me) be held liable" (Amended Compl., at 4 [4] ).

On December 26, 2014, the Amtrak Defendants moved to dismiss plaintiff's claims against them (Notice of Motion, dated Dec. 26, 2011 [5] (D.I. 24) ). I issued a Report and Recommendation on August 6, 2015 recommending that the motion be granted in part and denied in part. Specifically, I concluded that plaintiff's amended complaint attempted to assert Due Process and Fourth Amendment claims against the Amtrak Defendants as well as conversion claims under New York law, and recommended that the motion to dismiss be granted with respect to plaintiff's Fourth Amendment claim and denied with respect to the conversion and Due Process claims. Chunn v. Amtrak, 14 Civ. 6140 (PAC)(HBP), 2015 WL 10520663 at *5-*10 (S.D.N.Y. Aug. 6, 2015) (Report & Recommendation). On March 17, 2016, Judge Crotty adopted my Report and Recommendation in full. Chunn v. Amtrak, 14 Civ. 6140 (PAC)(HBP), 2016 WL 1071029 (S.D.N.Y. Mar. 17, 2016).

On January 18, 2016, plaintiff moved for (1) summary judgment with respect to his claims against all defendants and (2) to set aside the forfeiture proceedings, pursuant to 18 U.S.C. § 983(e) (Notice of Motion, dated Jan. 18, 2016 (D.I. 64) ). The DEA Defendants cross-moved for summary judgment (Notice of Motion, dated Feb. 10, 2016 (D.I. 67) ); the Amtrak Defendants did not respond to plaintiff's motion. I issued a Report and Recommendation on July 14, 2016 recommending that plaintiff's motions be denied and that the DEA Defendants' motion for summary judgment be granted. Specifically, with respect to the Amtrak Defendants, I concluded that there was a genuine issue of fact as to whether plaintiff received a voucher with the constitutionally-required notice on it, an element of his Due Process claim. Chunn v. Amtrak, 14 Civ. 6140 (PAC)(HBP), 2016 U.S. Dist. LEXIS 92419 at *25-*26 (S.D.N.Y. July 14, 2016) (Report & Recommendation). I also concluded that plaintiff had not demonstrated the absence of a genuine issue of fact as to whether the Amtrak Defendants exercised unauthorized dominion over plaintiff's funds when they transferred the money to the DEA, an element of plaintiff's conversion claim. Chunn v. Amtrak, supra, 2016 U.S. Dist. LEXIS 92419 at *26-*27. On August 4, 2016, Judge Crotty granted an application by plaintiff for the appointment of pro bono counsel for the limited purpose of filing any objections to the Report and Recommendation (Order, dated Aug. 4, 2016 (D.I. 94) ). [6] To date, Judge Crotty has not ruled on the Report and Recommendation. On May 4, 2017, Judge Crotty stayed all proceedings as to the DEA Defendants pending the outcome of settlement discussions (Order, dated May 4, 2017 (D.I. 134) ).

**\*4** On November 28, 2016, the Amtrak Defendants filed the present motion seeking summary judgment with respect to all claims against them (Notice of Motion, dated Nov. 28, 2016 (D.I. 105) ). Plaintiff submitted his opposition on February 24, 2017.

III. Analysis

A. Applicable Principles

1. Summary Judgment Standards

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party ... is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). To grant the motion, the court must determine that there is no genuine issue of material fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. 2505. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise,"

Case 1:18-md-02865-LAK    Document 445-5    Filed 08/20/20    Page 5 of 12
Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L.Ed.2d 731 (1999). It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (brackets in original); accord Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000);[7] Estate of Gustafson ex rel. Reginella v. Target Corp., 819 F.3d 673, 675 (2d Cir. 2016); Cortes v. MTA N.Y.C. Transit, 802 F.3d 226, 230 (2d Cir. 2015); Deep Woods Holdings, L.L.C. v. Savings Deposit Ins. Fund of Republic of Turk., 745 F.3d 619, 622-23 (2d Cir. 2014); Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011).

"Material facts are those which 'might affect the outcome of the suit under the governing law' ...." Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248. " '[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]' " Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007) (second alteration in original), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

### 2. Section 1983 and Procedural Due Process

**\*5** Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

In order to establish a claim under Section 1983, a plaintiff must show that "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994), citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); accord Fiedler v. Incandela, No. 14-cv-2572 (SJF)(AYS), 2016 WL 7406442 at \*6 (E.D.N.Y. Dec. 6, 2016); Guttilla v. City of New York, 14 Civ. 156 (JPO), 2015 WL 437405 at \*5 (S.D.N.Y. Feb. 3, 2015) (Oetken, D.J.); Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 475 (E.D.N.Y. 2002). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986), citing McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); accord Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013); Lebron v. Mrzyglod, 14 Civ. 10290 (KMK), 2017 WL 365493 at \*3 (S.D.N.Y. Jan. 24, 2017) (Karas, D.J.).

"[T]o succeed on a procedural due process claim, a plaintiff must show that he '1) possessed a protected liberty or property interest 2) of which he was deprived without due process.' " McMillan v. City of New York, No. 03 CV 626 (SLT)(LB), 2009 WL 261478 at \*11 (E.D.N.Y. Feb. 4, 2009), quoting Rutigliano v. City of New York, 07 Civ. 4614 (JSR), 2008 WL 110946 at \*4 (S.D.N.Y. Jan. 2, 2008) (Rakoff, D.J.), aff'd, 326

Case 1:18-md-02865-LAK    Document 445-5    Filed 08/20/20    Page 6 of 12
Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

F. App'x 5 (2d Cir. 2009) (summary order); accord [Ahlers v. Rabinowitz, 684 F.3d 53, 62 (2d Cir. 2012)](); Cabral v. City of New York, 12 Civ. 4659 (LGS), [2014 WL 4636433 at *9 (S.D.N.Y. Sept. 17, 2014)]() (Schofield, D.J.), aff'd, [662 F. App'x 11 (2d Cir. 2016)]() (summary order). Procedural Due Process entails both notice and an opportunity to be heard. [Fuentes v. Shevin, 407 U.S. 67, 80 (1972)](); [Wisconsin v. Constantineau, 400 U.S. 433, 436 (1971)](); [Ceja v. Vacca, 503 F. App'x 20, 22 (2d Cir. 2012)]() (summary order); [Spinelli v. City of New York, 579 F.3d 160, 168 (2d Cir. 2009)](). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." [Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)](). An "opportunity to be heard must be 'at a meaningful time and in a meaningful manner.' " [Karpova v. Snow, 497 F.3d 262, 270 (2d Cir. 2007)](), quoting [Mathews v. Eldridge, 424 U.S. 319, 333 (1976)](). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." [Mathews v. Eldridge, supra, 424 U.S. at 334]() (alteration in original; internal quotation marks omitted).

### 3. Conversion

**\*6** "In New York, conversion is 'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.' " AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc., 04 Civ. 8832 (KMK), [2007 WL 2962591 at *4 (S.D.N.Y. Oct. 10, 2007)]() (Karas, D.J.), quoting [Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006)](). To state a claim for conversion, plaintiff must allege that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." [AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc., supra, 2007 WL 2962591 at *4]() (internal quotation marks omitted); accord [Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96, 100 (2006)](). " 'Some affirmative act ... has always been an element of conversion.' " [Frederique v. County of Nassau, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016)]() (alteration in original), quoting [Anghel v. New York State Dep't of Health, 947 F. Supp. 2d 284, 303 (E.D.N.Y. 2013)](), aff'd, [589 F. App'x 28 (2d Cir. 2015)]() (summary order); accord [Amusement Indus., Inc. v. Midland Ave. Assocs., LLC, 820 F. Supp. 2d 510, 534 (S.D.N.Y. 2011)]() (Kaplan, D.J.) (adopting report and recommendation), citing [State v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 260, 774 N.E.2d 702, 711, 746 N.Y.S.2d 637, 646 (2002)]().

"When a defendant's possession of the property was initially lawful, there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made." [Regions Bank v. Wieder & Mastroianni, P.C., 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007)]() (Conner, D.J.), aff'd, [268 F. App'x 17 (2d Cir. 2008)]() (summary order), citing [MacDonnell v. Buffalo Loan, Tr. & Safe Deposit Co., 193 N.Y. 92, 101, 85 N.E. 801, 803 (1908)](); see also [East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1011-12 (S.D.N.Y. 1992)]() (Sweet, D.J.), citing [Gonzalez v. Port Auth. of N.Y. & N.J., 119 A.D.2d 628, 629, 500 N.Y.S.2d 782, 783 (2d Dep't 1986)]().

> Although wrongful intent or knowledge of another person's superior property right are not prima facie elements of a conversion claim, cases affirming liability based on the defendant's transfer of property have involved conduct by the defendant that was wrongful, unlawful, selfishly motivated, or known by the defendant to be in violation of another's rights.

[Regions Bank v. Wieder & Mastroianni, P.C., supra, 526 F. Supp. 2d at 416]().

### B. Application of the Foregoing Principles

#### 1. Procedural Due Process Claim

##### a. Coleman and Looney

Coleman and Looney's initial seizure of plaintiff's money was authorized as a seizure incident to a lawful arrest. Chunn

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 7 of 12
Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

v. Amtrak, supra, 2015 WL 10520663 at *6. Thus, no Due Process claim against them lies for the initial seizure of plaintiff's cash. Additionally, neither Coleman nor Looney participated in Amtrak's decision to retain and later transfer plaintiff's money to the DEA or in the transfer itself (Bhatt Decl., Ex. E, at 58:24-59:2; Def.'s 56.1 Stmt. ¶¶ 5, 16; Pl.'s Response to 56.1 Stmt. ¶¶ 5, 16). Indeed, plaintiff does not challenge these facts (Plaintiff's Memorandum of Law in Opposition to Amtrak Defendants' Motion for Summary Judgment, dated Feb. 24, 2017 (D.I. 123) ("Pl.'s Mem."), at 25). Because Coleman and Looney's initial seizure of the money was authorized under the Constitution and because they had no involvement with Amtrak's decision to retain plaintiff's money or the subsequent decision to transfer it to the DEA, they had no personal involvement in the events that give rise to plaintiff's Due Process claim. Accordingly, Coleman and Looney are entitled to summary judgment dismissing the Due Process claim against them.

### b. Amtrak

**\*7** A threshold issue with respect to plaintiff's Due Process claim against Amtrak that is not addressed by Amtrak is whether it was acting under color of state law when it seized and later transferred plaintiff's money to the DEA. Amtrak is deemed a state actor for purposes of Section 1983, DeSilvis v. National R.R. Passenger Corp., 97 F. Supp. 2d 459, 460 n.2 (S.D.N.Y. 2000) (Buchwald, D.J.) ("Amtrak is also a state actor for purposes of liability under [S]ection 1983...."); Merola v. National R.R. Passenger Corp., 683 F. Supp. 935, 940-41 (S.D.N.Y. 1988) (Cedarbaum, D.J.), and I shall, therefore, assume that it is a state actor for purposes of plaintiff's Due Process claim. Thus, the issue presented is whether Due Process requires that a state agency that legally seizes assets pursuant to a search incident to a lawful arrest must provide the owner of the assets with notice and an opportunity to be heard prior to transferring those assets to the DEA.

"When drug proceeds ... have been seized by state or local authorities, a federal agency may 'adopt' the seizure and commence federal forfeiture." In re U.S. Currency, $844,520.00, 136 F.3d 581, 583 (8th Cir. 1998) (per curiam); see 28 C.F.R. § 8.3(b) (1).[8] An adoption occurs when the state or local law enforcement agency turns over property it seized to the federal agency for federal forfeiture. See Madewell v. Downs, 68 F.3d 1030, 1034-35 (8th Cir. 1995).

"[C]ourts have long held that a federal agency's adoption of a seizure has the same effect as if the federal agency had originally seized the property on the date it was seized by the local authorities." Madewell v. Downs, supra, 68 F.3d at 1039, citing, inter alia, United States v. One Ford Coupe Auto., 272 U.S. 321, 321 (1926) and The Caledonian, 17 U.S. 100, 103 (1819).[9] "[N]o preseizure notice or hearing is required before a federal agency may seize personal property subject to forfeiture for violation of federal drug laws." Madewell v. Downs, supra, 68 F.3d at 1038, citing, inter alia, United States v. $8,850 in U.S. Currency, 461 U.S. 555, 562 n.12 (1983) and Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 676-80 (1974). Due Process is satisfied by the post-seizure forfeiture proceedings set forth in 18 U.S.C. §§ 981-987. See Madewell v. Downs, supra, 68 F.3d at 1044; North Carolina ex rel. Haywood v. Barrington, 256 F. Supp. 2d 452, 464-65 (M.D.N.C. 2003). Therefore, "due process does not require any notice of the federal adoption of a seizure and an opportunity to protest." Madewell v. Downs, supra, 68 F.3d at 1039; see 28 C.F.R. § 8.3(b) (1).

Applying the principles set forth above, Amtrak's transfer of plaintiff's funds to the DEA effected an adoption of Amtrak's seizure by the DEA.[10] By virtue of this adoption, the initial seizure of the funds from plaintiff should be viewed as if the DEA itself made the seizure. Madewell v. Downs, supra, 68 F.3d at 1039. Because the availability of post-seizure forfeiture proceedings set forth in 18 U.S.C. §§ 981-987 defeats any Due Process claim against the DEA, the availability of those procedures also defeats any Due Process claim against Amtrak. Stated differently, because the DEA was not required to provide plaintiff with any pre-seizure notice and hearing, neither was Amtrak. See Madewell v. Downs, supra, 68 F.3d at 1044 (state agency did not violate Due Process by transferring the plaintiff's money to a federal agency because "[a]dherence to the requirements of 21 U.S.C. § 881 provides the due process protections necessary to ensure that persons are not unconstitutionally deprived of property"); Martin v. Indiana State Police, 537

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 8 of 12

**Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)**
2017 WL 9538164

F. Supp. 2d 974, 989 (S.D. Ind. 2008) ("[The plaintiff's] due process rights were protected when the federal government notified him of the federal forfeiture proceedings and gave him an opportunity to respond."); North Carolina ex rel. Haywood v. Barrinqton, supra, 256 F. Supp. 2d at 464-65 (motion to set aside forfeiture pursuant to 18 U.S.C. § 983(e) "is all that is due" to satisfy due process); see also Kshel Realty Corp. v. City of New York, 293 F. App'x 13, 15 (2d Cir. 2008) (summary order) ("[A]lthough notice and predeprivation hearing are generally required, the lack of such predeprivation process will not violate due process in certain circumstances provided there is sufficient postdeprivation process available to the person deprived of his property interest."), citing Parratt v. Taylor, supra, 451 U.S. at 538.

**\*8** Thus, Amtrak is also entitled to summary judgment dismissing the Due Process claim against it.

### 2. Conversion Claim

#### a. Coleman and Looney

As explained above, the record demonstrates that Coleman and Looney played no role in the decision to transfer the funds to the DEA or in the transfer itself, and they cannot, therefore, be liable on the theory that they wrongfully transferred plaintiff's property. Frederique v. County of Nassau, supra, 168 F. Supp. 3d at 485 (granting summary judgment to individual officers who were not involved in the act that constituted conversion). The only basis for a conversion claim against Coleman and Looney is their seizure of the cash at the time of plaintiff's arrest.

Plaintiff concedes that the cash was seized from him incident to the arrest (Pl.'s Response to 56.1 Stmt. ¶ 3); there is no claim that the cash was seized prior to plaintiff's being arrested. In addition, plaintiff makes no claim that his arrest was unlawful.

"Conversion is defined under New York law as 'any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' " Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC, 77 F. Supp. 3d 364, 369 (S.D.N.Y. 2015) (Ramos, D.J.) (footnote omitted), amended by, 2015 WL 5439217 (S.D.N.Y. Sept. 14, 2015) (Ramos, D.J.), quoting Thypin Steel Co. v. Certain Bills of Lading Issued for Cargo of 3017 Metric Tons, More or Less, of Hot Rolled Steel Plate Laden on Bd. M/V Geroi Panfilovsky, 96 Civ. 2166 (RPP), 1998 WL 912100 at \*5 (S.D.N.Y. Dec. 30, 1998) (Patterson, D.J.), aff'd in part, dismissed in part sub nom., Thypin Steel Co. v. Asoma Corp., 215 F.3d 273 (2d Cir. 2000). Thus, if Coleman and Looney's seizure of the cash was not wrongful, summary judgment dismissing plaintiff's conversion claim is appropriate.

There are at least two lawful bases for Coleman and Looney's seizure of plaintiff's funds. First, because plaintiff was being arrested, Coleman and Looney had a right to search plaintiff incident to that arrest. New York v. Belton, 453 U.S. 454, 457 (1981) (plurality opinion); Chimel v. California, 395 U.S. 752, 762-63 (1969). And in conducting that search, the officers were not limited to seizing weapons or evidence of the offenses for which plaintiff was being arrested; evidence of any offense could be seized. United States v. Robinson, 414 U.S. 218, 230-35 (1973); Gustafson v. Florida. 414 U.S. 260, 263-66 (1973).

In addition, Coleman and Looney's seizure of the cash was not wrongful because it was authorized as an inventory seizure pursuant to a lawful arrest, regardless of whether there was probable cause to justify the seizure of the cash independent of the probable cause for the arrest. Illinois v. Lafayette, 462 U.S. 640, 645-46 (1983). Although plaintiff cites purported factual disputes concerning whether there was probable cause to believe that the seized funds were related to an illegal drug transaction, those factual disputes are immaterial; probable cause is not required for an inventory search and seizure. United States v. Edwards, 415 U.S. 800, 804 (1974).

**\*9** Because Coleman and Looney's search of plaintiff and their seizure of the cash was authorized, they did not commit the tort of conversion.

#### b. Amtrak

Amtrak is also entitled to summary judgment on plaintiff's conversion claim. The conversion claim against Amtrak appears to be based on Amtrak's transfer of the funds to the DEA and, as noted at Section III.A.3. above, an essential element of a conversion claim arising out of Amtrak's transfer of plaintiff's property is that the transfer must be wrongful.

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 9 of 12

Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

Title 21, United States Code, Section 881(a) (6) permits the forfeiture of, among other things, "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance ..., all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violations" of the federal narcotics laws. Section 881(b) provides that "property subject to forfeiture to the United States ... may be seized by the Attorney General in the manner set forth in section 981(b) of Title 18."

Title 18, United States Code, Section 981(b) provides:

> (b)(1) Except as provided in section 985, any property subject to forfeiture to the United States ... may be seized by the Attorney General....
>
> (2) Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a seizure may be made without a warrant if--
>
>> (A) a complaint for forfeiture has been filed in the United States district court and the court issued an arrest warrant in rem pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims;
>>
>> (B) there is probable cause to believe that the property is subject to forfeiture and--
>>
>>> (i) the seizure is made pursuant to a lawful arrest or search; or
>>>
>>> (ii) another exception to the Fourth Amendment warrant requirement would apply; or
>>
>> (C) the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency.

Assuming that Amtrak can be deemed a state actor, see DeSilvis v. National R.R. Passenger Corp., supra, 97 F. Supp. 2d at 460 n.2 ("Amtrak is also a state actor for purposes of liability under [S]ection 1983...."); Merola v. National R.R. Passenger Corp., supra, 683 F. Supp. at 940-41, the DEA was authorized to take possession of the funds recovered from plaintiff pursuant to Title 18, United States Code, Section 981(b)(2)(C). The statute does not require a warrant or any showing by the DEA prior to taking possession of the funds where, as here, the funds were "lawfully seized by a State or local law enforcement agency." Because the DEA was authorized by law to take possession of the funds that had been lawfully recovered by Amtrak, Amtrak's transfer of the funds was not wrongful, and an essential element of a conversion claim is absent.

### 3. Motion to Amend the Complaint

In his memorandum of law in opposition to the Amtrak Defendants' motion for summary judgment, plaintiff argues that he should be permitted to amend his complaint to add Patterson as a defendant and to assert conversion and procedural Due Process claims against her (Pl.'s Mem., at 25).

#### a. The Motion is Procedurally Improper

**\*10** Plaintiff's motion is procedurally improper. In this District, all motions must include a notice of motion, a memorandum of law and supporting affidavits and exhibits. Local Civil Rule 7.1(a). Additionally, motions to amend a complaint must be accompanied by the proposed amended complaint. See, e.g., Vasauez v. County of Rockland, 13 Civ. 5632 (HBP), 2016 WL 413107 at *3 (S.D.N.Y. Feb. 2, 2016) (Pitman, M.J.) (collecting cases). Plaintiff has not filed a notice of motion to amend the complaint, a supporting memorandum of law, an affidavit or the proposed amended complaint, and has instead simply requested this relief in a memorandum of law opposing a motion for summary judgment. Thus, the motion to amend could be denied on that basis alone. See Williams v. Rosenblatt Sec. Inc., 14 Civ. 4390 (JGK), 2016 WL 4120654 at *5 (S.D.N.Y. July 22, 2016) (Koeltl, D.J.) (failure to include supporting memorandum, "standing alone, is sufficient ground for denying a motion"); Sbarra v. Port Auth. of N.Y. & N.J., 10 Civ. 8580 (CM), 2011 WL 4344078 at *8 (S.D.N.Y. Sept. 9, 2011) (McMahon, D.J) (denying cross-motion because party did not file notice of cross-motion); see also Malin v. XL Capital. Ltd., 312 F. App'x 400, 402 (2d Cir. 2009) (summary order) ("Detailed explanations" are not required "when denying cursory or boilerplate requests for this form of discretionary relief, made solely in a memorandum").

#### b. The Proposed Claims are Futile

Even if I were to consider the merits of the motion, the proposed claims are futile. "[M]otions to amend should generally be denied in instances of futility...." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (per curiam), citing Foman v. Davis, 371 U.S. 178, 182 (1962); accord American Home Assurance Co. v. Jacky Maeder (H.K.) Ltd., 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997) (Kaplan, D.J.). A proposed amended complaint is futile when it fails to state a claim. AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 726 (2d Cir. 2010); Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 257 (S.D.N.Y. 1999) (Sweet, D.J.).

To the extent a proposed amendment would add new parties, the motion is technically governed by Rule 21, which provides that "the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21; Otegbade v. New York City Admin. for Children Servs., 12 Civ. 6298 (KPF), 2015 WL 851631 at *2 (S.D.N.Y. Feb. 27, 2015) (Failla, D.J.); FTP Corp. v. Banker's Tr. Co., 954 F. Supp. 106, 109 (S.D.N.Y. 1997) (Stein, D.J.). However, "the same standard of liberality" that applies to a motion to amend applies under Rule 21. Otegbade v. New York City Admin. for Children Servs., supra, 2015 WL 851631 at *2; FTP Corp. v. Banker's Tr. Co., supra, 954 F. Supp. at 109; see Sly Magazine, LLC v. Weider Publ'ns L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (Casey, D.J.); Chowdhury v. Haveli Rest., Inc., 04 Civ. 8627 (RMB)(JCF), 2005 WL 1037416 at *1 (S.D.N.Y. May 3, 2005) (Francis, M.J.).

Plaintiff's proposed claims against Patterson are futile because they are time-barred. The statute of limitations for actions for conversion under New York law is three years; the claim accrues when the conversion occurs. Universitas Educ., LLC v. T.D. Bank, N.A., 15 Civ. 5643 (SAS), 2015 WL 9304551 at *2 (S.D.N.Y. Dec. 21, 2015) (Scheindlin, D.J.), reconsideration denied, 2016 WL 80210 (S.D.N.Y. Jan. 5, 2016) (Scheindlin, D.J.), citing N.Y. C.P.L.R. § 214(3); Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (Kaplan, D.J.). The statute of limitations applicable to Section 1983 actions is the statute of limitations applicable to personal injury actions in the state in which the federal court sits. Dory v. Ryan, 999 F.2d 679, 681 (2d Cir. 1993), modified, 25 F.3d 81 (2d Cir. 1994). In New York, the statute of limitations applicable to Section 1983 actions is also three years. Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997), citing Owens v. Okure, 488 U.S. 235, 251 (1989). Federal law controls the date on which a Section 1983 claim accrues, and a Section 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks omitted); Ormiston v. Nelson, supra, 117 F.3d at 71 (internal quotation marks omitted). In other words, "the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994).

**\*11** Here, both the conversion and the procedural Due Process claims against Patterson accrued no later than September 15, 2011, when Patterson transferred plaintiff's money to the DEA. Because plaintiff filed his opposition to Amtrak's motion and first sought to amend his complaint on February 24, 2017, the proposed claims against Patterson are time-barred unless the proposed amendments relate back to the date of the original complaint under either federal or New York law. As explained below, the proposed amendments do not relate back.

A motion to amend seeking to assert an otherwise time-barred claim may be granted if the proposed amendment "relates back" to the date the plaintiff filed the original complaint. Fed.R.Civ.P. 15(c)(1). Under federal law, an amended complaint that names an additional defendant will relate back to the date of the original complaint if: (1) the new claim arises "out of the conduct, transaction, or occurrence set out ... in the original pleading"; (2) within the time for serving the original pleading under Rule 4(m), the new party "received such notice of the action that it will not be prejudiced in defending on the merits"; and (3) within the time for serving the original pleading under Rule 4(m), the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed.R.Civ.P. 15(c)(1)(C); see VKK Corp. v. National Football League, 244 F.3d 114, 128 (2d Cir. 2001); Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35 (2d Cir. 1996); Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 289 F.R.D. 401, 405 (S.D.N.Y. 2013) (Cote, D.J.). "The 'period provided by Rule 4(m)' is 120 days after the filing of the complaint." Ish Yerushalayim v.

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 11 of 12

Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

United States, 374 F.3d 89, 91 (2d Cir. 2004) (per curiam); see Fed.R.Civ.P. 4(m). [11]

Assuming, without deciding, that the first two requirements for relation back are met, plaintiff's claims nevertheless fail because the third requirement for relation back -- a mistake concerning the proper party's identity -- is not met. There has been no showing that Patterson knew or should have known that the action would have been brought against her but for a mistake concerning her identity. "Where a plaintiff has not mistakenly sued the wrong party, a court need not consider what a defendant knows and when the defendant knew it; the threshold requirement for Rule 15(c)(1)(C) -- a 'mistake concerning the proper party's identity' -- has not been met." In re Vitamin C Antitrust Litig., 995 F. Supp. 2d 125, 130-31 (E.D.N.Y. 2014). "Courts in this Circuit have held relation back is only permitted where plaintiff named the wrong party in the original complaint, and not where plaintiff named one but not all of the right defendants." Pikos v. Liberty Maint., Inc., No. 09-CV-4031 (WFK)(RER), 2015 WL 6830670 at *3-*4 (E.D.N.Y. Nov. 6, 2015) (proposed claims did not relate back where plaintiff "attempt[ed] to add ... additional parties while maintaining" the original defendant); see Hocran v. Fischer, 738 F.3d 509, 517-18 (2d Cir. 2013); Hahn v. Office & Prof'l Emps. Int'l Union, 107 F. Supp. 3d 379, 384-86 (S.D.N.Y. 2015) (Koeltl, D.J.) (finding no mistake where "[t]he plaintiff has sued [what he believes is] the right defendant, and simply neglected to sue another defendant who might also be liable" (alteration in original; internal quotation marks omitted) ).

*12 Rule 15(c)(1)(A) also permits relation back if "the law that provides the applicable statute of limitations allows relation back." Like Rule 15, New York law -- specifically, N.Y. C.P.L.R. § 203 -- permits relation back only if, inter alia, "the new party knew or should have known that, but for a mistake as to the identity of the proper part[y], the action would have been brought against [her] as well." Strada v. City of New York, No. 11-CV-5735 (MKB), 2014 WL 3490306 at *6 (E.D.N.Y. July 11, 2014) (internal quotation marks omitted); accord Naughright v. Robbins, 10 Civ. 8451 (RWS), 2014 WL 5315007 at *3, *5 (S.D.N.Y. Oct. 17, 2014) (Sweet, D.J.) ( " '[W]hen a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired.' "), quoting Buran v. Coupal, 87 N.Y.2d 173, 181, 661 N.E.2d 978, 983, 638 N.Y.S.2d 405, 410 (1995). Because plaintiff did not make a mistake, the proposed claims against Patterson cannot relate back under New York law either.

Therefore, because plaintiff did not make a mistake concerning Patterson's identity, plaintiff's claims against Patterson are time-barred and, therefore, futile. Thus, the motion to amend the complaint to add Patterson as a defendant should be denied as well.

IV. Conclusion

For the foregoing reasons, I respectfully recommend that the Amtrak Defendants' summary judgment motion be granted and that all claims against the Amtrak Defendants be dismissed. In addition, to the extent that plaintiff's opposition papers can be construed as a motion to amend his complaint to add Patterson as a defendant, I further recommend that that motion be denied as well.

V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul A. Crotty, United States District Judge, 500 Pearl Street, Room 1350, and to the Chambers of the undersigned, 500 Pearl Street, Room 1670, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9538164

Case 1:18-md-02865-LAK   Document 445-5   Filed 08/20/20   Page 12 of 12

Chunn v. Amtrak, Not Reported in Fed. Supp. (2017)
2017 WL 9538164

**Footnotes**

| | |
|---|---|
| 1 | The Amtrak Defendants refer to P.O. Looney as P.O. Loney in their brief. I shall refer to the defendant as P.O. Looney, the name used in the Amended Complaint. |
| 2 | The Amtrak Defendants refer to DEA Special Agent Hannon as DEA Special Agent Hannan in their brief. I shall refer to the defendant as Hannon, the name used in the Amended Complaint. |
| 3 | In connection with plaintiff's motion for summary judgment, plaintiff had submitted a letter from Stuart L. Finz, Esq., stating that, on September 2, 2011 -- less than two weeks prior to his arrest -- plaintiff received $206,849.02 pursuant to a settlement he had reached with the New York City Housing Authority (Notice of Motion, dated Jan. 18, 2016 (D.I. 64), Ex. C). There is also evidence, in the form of a J.P. Morgan Chase Bank balance statement, that plaintiff deposited the majority of the settlement proceeds into his bank account on September 2, 2011 and subsequently withdrew $20,000 from that account the day before his arrest (Declaration of Vicki L. Rashid, dated Feb. 3, 2016 (D.I. 70), Ex. 10). |
| 4 | Because plaintiff's amended complaint is not consistently paginated, I refer to the page numbers assigned by the Court's ECF system. |
| 5 | The Amtrak Defendants' notice of motion appears to have been incorrectly dated because they filed it in 2014. |
| 6 | Pro bono counsel has also submitted opposition papers on behalf of plaintiff to the Amtrak Defendants' summary judgment motion. |
| 7 | Although the Court in Reeves was reviewing the denial of a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50, the same standards apply to a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Reeves v. Sanderson Plumbing Prods., Inc., supra, 530 U.S. at 150-51. |
| 8 | 28 C.F.R. § 8.3(b)(1) provides:<br>(b) Turnover of assets seized by state and local agencies.<br>(1) Property that is seized by a state or local law enforcement agency and transferred to a seizing agency for administrative or civil forfeiture may be adopted for administrative forfeiture without the issuance of any federal seizure warrant or other federal judicial process. |
| 9 | The additional authorities cited by the Court in Madewell for the proposition quoted in the text include United States v. $119,000 in U.S. Currency, 793 F. Supp. 246, 249 (D. Haw. 1992); United States v. Certain Real Prop. Known as Lot B, Governor's Rd., Milton, N.H., 755 F. Supp. 487, 490 (D.N.H. 1990) and United States v. Alston, 717 F. Supp. 378, 380 (M.D.N.C. 1989), aff'd sub nom., United States v. Winston-Salem/Forsyth Cty. Bd. of Educ., 902 F.2d 267 (4th Cir. 1990). |
| 10 | Any doubt that the DEA adopted the seizure is resolved by the fact that the DEA itself commenced proceedings to forfeit the cash to the United States. |
| 11 | A December 1, 2015 amendment to the Federal Rules of Civil Procedure changed the Rule 4(m) period from 120 days to 90 days. However, because plaintiff filed his complaint on July 24, 2014, the 120-day period applies here. |

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.