# EXHIBIT H

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 2 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

2013 WL 4710377
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

In re MISSION CONSTRUCTION LITIGATION.

Nos. 10 Civ. 4262(LTS)(HBP), 10 Civ. 9344(LTS)(HBP), 11 Civ. 1565(LTS)(HBP).
|
Aug. 30, 2013.

OPINION AND ORDER

PITMAN, United States Magistrate Judge.

I. *Introduction*

 **\*1** This is a construction damage case arising out of renovations done on a building in midtown Manhattan that was to serve as the Permanent Mission of the Republic of Namibia to the United Nations. Like many buildings in Manhattan, the building that was being renovated abuts the adjacent building. While concrete was being poured to construct a wall in the building that was being renovated, the concrete broke through the party wall shared with the adjacent building causing extensive damage to that building and its contents. The parties to these actions include the owners of both properties, the general contractor, the subcontractor, the architect and several insurance companies.

Several motions are currently pending for leave to amend the various pleadings in these three consolidated actions: (1) plaintiff USAA Casualty Insurance Company ("USAA"), as subrogee of Robert Adelman, moves pursuant to Fed.R.Civ.P. 15 and 20 to join LMW Engineering Group, LLC ("LMW") as a defendant and to file a second amended complaint in 10 Civ. 4262 (Docket Item 108 in 10 Civ. 4262, Docket Item 39 in 10 Civ. 9344, Docket Item 35 in 11 Civ. 1565); (2) defendant Ryback Development and Construction Corp. ("Ryback") moves pursuant to Fed.R.Civ.P. 14 for leave to file a third party complaint against LMW, Robert Silman Associates, P.C. ("Silman") and David Smotrich & Partners, LLP Architects/Planners ("Smotrich") in 10 Civ. 4262 (Docket Item 113 in 10 Civ. 4262) and (3) defendant the Permanent Mission of the Republic of Namibia ("the Mission") moves for leave to amend its answers in all three actions (10 Civ. 4262, 10 Civ. 9344 and 11 Civ. 1565) to assert negligence and nuisance counterclaims as a set-off against plaintiffs Robert Adelman ("Adelman"), Rag Jaw LLC ("Rag Jaw"), USAA and National Union Fire Insurance Co. of Pittsburgh ("National Union"), as subrogee of Rag Jaw (Docket Item 118 in 10 Civ. 4262).[1]

For the reasons explained below, USAA's motion is denied, Ryback's motion is granted and the Mission's motion is granted in part and denied in part.

II. *Background*

The facts giving rise to these actions are set forth in the decision of the Court of Appeals for the Second Circuit, affirming the denial of the Mission's motion to dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"):

> At some point before the events that gave rise to this action, the Republic of Namibia made the decision to house the chancery, or base of operations, of its Permanent Mission to the United Nations in a Manhattan townhouse located at 135 E. 36th Street (the "Building"). The Mission commissioned extensive interior construction in order to render the Building suitable for a diplomatic mission. To perform the proposed construction, the Mission hired an independent general contractor, Federation Development Corporation ("Federation"), which in turn hired a subcontractor, Ryback Development, Inc. ("Ryback") (together with Federation, the "Contractors").

>  **\*2** The townhouse adjoining the Building, 133 E. 36th Street, was then owned by Robert Adelman and insured by USAA Casulty Insurance Co. ("USAA"). The Building was separated from the Adelman townhouse by a brick and mortar party wall, upon which the support beams of the Adelman townhouse rested.

> In early December 2008, Ryback employees began pouring a reinforced concrete wall in the interior of the Building, alongside the existing party wall. On December 15, as the concrete wall was being poured, the party wall collapsed, causing substantial damage to Adelman's property. Adelman filed an insurance claim with USAA, which paid Adelman $397,730 for his damages.

USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, 681 F.3d 103, 105 (2d Cir.2012).

Three separate actions were commenced arising out of this construction accident (the "Accident"). First, in an action

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 3 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

originally commenced in New York State Court on April 21, 2010, and then removed to this court on May 26, 2010, USAA, as subrogee of Adelman, sued the Mission, Federation and Ryback (the "USAA Action"). Second, in an action commenced on December 15, 2010, National Union, as subrogee of Rag Jaw,[2] sued the Mission, Federation, Ryback, LMW, Silman and Smotrich (the "National Union Action"). Finally, in an action commenced on March 8, 2011, Rag Jaw and Adelman sued the Mission, Federation, Ryback, LMW, Silman, Smotrich and John Doe 1–10 (the "Rag Jaw Action").

In the USAA Action, the Mission moved to dismiss the claims against it on various grounds, including failure to state a claim and lack of subject matter jurisdiction under the FSIA.[3] By Memorandum Order dated November 17, 2010, Judge Swain denied the motion to dismiss the action for lack of subject matter jurisdiction, but granted the motion to dismiss the claims for trespass and injury from ultrahazardous activity for failure to state a claim. *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia,* 10 Civ. 4262(LTS), 2010 WL 4739945 at *3, *4 (S.D.N.Y. Nov. 17, 2010). As noted above, the Court of Appeals affirmed Judge Swain's denial of the motion to dismiss the action for lack of subject matter jurisdiction under the FSIA. *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, supra,* 681 F.3d at 113–14. No issue was raised on that appeal with respect to Judge Swain's dismissal of the trespass and injury from an ultrahazardous activity. *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, supra,* 681 F.3d at 106.

While the Mission's interlocutory appeal was pending, Judge Swain, by an Order dated January 31, 2011, stayed all proceedings in the USAA Action (Docket Item 71). On October 18, 2011, the National Union and Rag Jaw Actions were consolidated with the USAA Action; the proceedings in those actions were also stayed (Docket Item 76). The stay was lifted on July 18, 2012 (Docket Item 82). After adjourning a scheduling conference several times at the request of counsel, Judge Swain issued a pre-trial scheduling Order on December 13, 2012, which set February 1, 2013 as the deadline for any applications to amend pleadings or join parties (Docket Item 99).

III. *Analysis*

   A. *USAA's Motion to Amend*

**\*3** USAA seeks leave to file a second amended complaint[4] that adds LMW as a defendant and asserts claims against it for negligence, nuisance and *res ipsa loquitor*[5] (Declaration of Robert W. Phelan, Esq. in Support of Motion for Leave to Join a Defendant and File Plaintiff's Second Amended Complaint (Docket Item 109) ("Phelan Decl.") Ex. 10 ("Proposed Compl.")).

As alleged in the Proposed Complaint, USAA insured Adelman against certain losses, including additional living expenditures, resulting from any damage to Adelman's townhouse (Proposed Compl. ¶ 16). After the Accident, USAA paid Adelman $397,730 for alternative living expenditures he incurred as a result of the Accident (Proposed Compl. ¶¶ 22, 28). As relevant here, USAA alleges that the Accident was caused by the negligence of LMW, which served as the supervising or field engineer for the Mission's construction project (Proposed Compl. ¶¶ 15, 18, 23–28). USAA, as subrogee of Adelman, seeks to recover from LMW the payment it made to Adelman.

   1. *Applicable Law: Motion to Amend under Rule 15*

The standards applicable to a motion to amend a pleading are well settled and require only brief review. In general, a motion to amend is governed by Fed.R.Civ.P. 15(a), which provides that leave to amend should be freely granted when justice so requires. Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 603 (2d Cir.2005); *Dluhos v. Floating & Abandoned Vessel, Known as "New York",* 162 F.3d 63, 69 (2d Cir.1998); *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984); *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 287 (2d Cir.1974). "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." *Lee v. Regal Cruises, Ltd.,* 916 F.Supp. 300, 303 (S.D.N.Y.1996) (Kaplan, D.J.), *aff'd,* 116 F.3d 465 (2d Cir.1997); *see McCarthy v. Dun & Bradstreet Corp., supra,* 482 F.3d at 200; *Ellis v. Chao,* 336 F.3d 114, 126–27 (2d Cir.2003); *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.,* 00 Civ. 3235(LTS) (MHD), 2003 WL 21108261 at *1 (S.D.N.Y. May 14, 2003) (Swain, D.J.); *Am. Home Assur. Co. v. Jacky Maeder (Hong Kong) Ltd.,* 969 F.Supp. 184, 187–88 (S.D.N.Y.1997) (Kaplan, D.J.).[6]

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 4 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

A proposed amendment is futile when it fails to state a claim. *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990); *Mina Inv. Holdings Ltd. v. Lefkowitz,* 184 F.R.D. 245, 257 (S.D.N.Y.1999) (Sweet, D.J.); *Parker v. Sony Pictures Entm't, Inc.,* 19 F.Supp.2d 141, 156 (S.D.N.Y.1998) (Kaplan, D.J.), *aff'd in pertinent part, vacated in part on other grounds sub nom.,* *Parker v. Columbia Pictures Indus.,* 204 F.3d 326 (2d Cir.2000); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271, 274 (S.D.N.Y.1996) (Koeltl, D.J.); *Prudential Ins. Co. v. BMC Indus.,* 655 F.Supp. 710, 711 (S.D.N.Y.1987) (Sweet, D.J.); *see generally* *Dluhos v. Floating & Abandoned Vessel Known as "New York", supra,* 162 F.3d at 69–70. The party opposing the amendment has the burden of demonstrating that a proposed amendment would be futile. *Staskowski v. Cnty. of Nassau,* 05 Civ. 5984(SJF)(WDW), 2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007); *see also Lugosch v. Congel,* 00 Civ. 784(RFT), 2002 WL 1001003 at *1 (N.D.N.Y. May 14, 2002).

**\*4** "Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations." *Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir.2000); *accord In re WorldCom, Inc. Sec. Litig.,* 303 F.Supp.2d 385, 390–91 (S.D.N.Y.2004) (Cote, D.J.). In addition, a proposed amendment may be denied as futile "where the claim or defense proposed to be added has no colorable merit." *Oliver v. DeMarinis & Co.,* 90 Civ. 7950(SS), 1993 WL 33421 at *2 (S.D.N.Y. Jan. 29, 1993) (Lee, M.J.) (internal quotations omitted); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 783 (2d Cir.1984) (if the movant has "colorable grounds for relief," justice requires that leave to amend be granted in the absence of undue delay, bad faith, or prejudice). The " 'colorable grounds' requirement mandates that a district court may not deny a motion for leave to amend a pleading [on futility grounds] when said pleading is sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Children First Found. Inc. v. Martinez,* 04 Civ. 0927(NPM), 2007 WL 4618524 at *5 (N.D.N.Y. Dec. 27, 2007), *citing in part* *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 244 (2d Cir.2007); *see also Estate of Ratcliffe v. Pradera Realty Co.,* 05 Civ. 10272(JFK), 2007 WL 3084977 at *4 (S.D.N.Y. Oct. 19, 2007) (Keenan, D.J.); *Journal Publ'g Co. v. Am. Home Assur. Co.,* 771 F.Supp. 632, 635 (S.D.N.Y.1991) (Leisure, D.J.); *Prudential Ins. Co. v. BMC Indus., Inc., supra,* 655 F.Supp. at 711. In assessing whether a proposed amended pleading is futile, the court must assume the truth of the factual allegations set forth in the proposed amended pleading. *Edwards v. City of N.Y.,* 07–CV–5286 (CPS) (RML), 2009 WL 1910740 at *1 (E.D.N.Y. June 29, 2009); *Da Cruz v. Towmasters of N.J.,* 217 F.R.D. 126, 128 n. 1 (E.D.N.Y.2003); *Binder v. Nat'l Life of Vt.,* 02 Civ. 6411(GEL), 2003 WL 21180417 at *2 (S.D.N.Y. May 20, 2003) (Lynch, then D.J., now Cir. J.); *Gabourel v. Bouchard Transp. Co.,* 901 F.Supp. 142, 144 (S.D.N.Y.1995) (Chin, then D.J., now Cir. J.).

In evaluating a motion under Rule 12(b)(6), the court must determine whether the plaintiff has alleged any facially plausible claims. *See Virgil v. Town of Gates,* 455 F. App'x 36, 37 (2d Cir.2012); *Smith v. NYCHA,* 410 F. App'x 404, 405–06 (2d Cir.2011). A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal, supra,* 556 U.S. at 696 (internal quotations omitted). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal, supra,* 556 U.S. at 679, *quoting* Fed.R.Civ.P. 8(a)(2).

**\*5** The Court of Appeals has also repeatedly noted that the trial court has broad discretion in ruling on a motion to amend. *See, e .g., Gurary v. Winehouse,* 235 F.3d 792, 801 (2d Cir.2000); *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998); *Guzman v. Bevona,* 90 F.3d 641, 649 (2d Cir.1996); *see generally Grace v. Rosenstock, supra,* 228 F.3d at 53–54.

2. *Application of the Foregoing Legal Principles*
USAA contends that joinder of LMW as a new defendant in the USAA Action is appropriate because its proposed

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 5 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

claims against LMW (1) arise out of the same transaction and occurrence as the claims asserted in its original complaint and (2) relate back to its original complaint and are, therefore, timely. LMW opposes the motion, arguing that the claims are barred by the statute of limitations because they do not relate back and that USAA unduly delayed in bringing this motion.

   a. *Timeliness of Proposed Claims*

New York law provides a three-year statute of limitations for claims of nuisance and negligence. N.Y. C.P.L.R. § 214(4). "A negligence claim accrues on the date of injury, that is, when the cause of action is 'complete' and a plaintiff may plead all the required elements." *Coleman & Co. Sec., Inc. v. Giaquinto Family Trust,* 236 F.Supp.2d 288, 299 (S.D.N.Y.2002) (Chin, then D.J., now Cir. J.), *citing Brooklyn Union Gas Co. v. Hunter Turbo Corp.,* 241 A.D.2d 505, 506, 660 N.Y.S.2d 877, 878 (2d Dep't 1997). When a claim for nuisance accrues under New York law is not so clear. [7]

New York recognizes that some nuisance claims give rise to a continuing tort that accrues anew on each day the nuisance continues. Unfortunately, it is difficult to discern from New York case law when a nuisance will be deemed continuing and when it will not. For example, in *Covington v. Walker,* 3 N.Y.3d 287, 292, 819 N.E.2d 1025, 1027–28, 786 N.Y.S.2d 409, 411–12 (2004), the New York Court of Appeals explained that courts have applied the continuing tort doctrine

> in certain cases such as nuisance or continuing trespass where the harm sustained by the complaining party is not exclusively traced to the day when the original objectionable act was committed. The rule is based on the principle that continuous injuries create separate causes of action barred only by the running of the statute of limitations against each successive trespass. The repeated offenses are treated as separate rights of action and the limitations period begins to run as to each upon its commission.

(citations omitted).

However, in *Bloomingdales, Inc. v. New York City Transit Auth.,* 13 N.Y.3d 61, 915 N.E.2d 608, 886 N.Y.S.2d 663 (2009), the New York Court of Appeals affirmed the application of the continuing tort doctrine despite the fact that the source of the injury could be traced to a single act, finding that the single act gave rise to an ongoing encroachment on the plaintiff's right of way. 13 N.Y.3d at 66, 915 N.E.2d at 610–11, 886 N.Y.S.2d at 665–66.

**\*6** Happily, however, there is no need to wrestle with the issue of when USAA's nuisance claim accrued in this case. There appears to be no dispute that the damage to the wall was repaired by December, 2009. Thus, even if the nuisance is deemed to have been a continuing tort, it was abated no later than December, 2009. Therefore, the three-year limitations period expired in December 2012. Accordingly, the proposed negligence and nuisance claims against LMW are time-barred unless they relate back to the original complaint, which was timely filed on April 21, 2010. [8]

Because USAA's proposed second amended complaint names a new party, Rule 15(c)(1) applies. Under this Rule, an amended complaint that names an additional defendant will relate back to the date of the original complaint if three requirements are satisfied: (1) the new claim arises "out of the conduct, transaction, or occurrence ... set out in the original pleading[;]" (2) within the time for serving the original pleading under Rule 4(m), the new party "received such notice of the action that it will not be prejudiced in defending on the merits[;]" and (3) within the time for serving the original pleading under Rule 4(m), the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity ." Fed.R.Civ.P. 15(c)(1)(C); *VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 128 (2d Cir.2001); *Soto v. Brooklyn Corr. Facility,* 80 F.3d 34, 35 (2d Cir.1996); *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC,* 289 F.R.D. 401, 405 (S.D.N.Y.2013) (Cote, D.J.); *In re Alstom SA,* 406 F.Supp.2d 402, 430 (S.D.N.Y.2005) (Marrero, D.J.). "The 'period provided by Rule 4(m)' is 120 days after the filing of the complaint." *Ish Yerushalayim v. United States,* 347 F.3d 89, 91 (2d Cir.2004); Fed.R.Civ.P. 4(m). Because USAA filed its original complaint on April 21, 2010, the 120 day period expired on August 19, 2010.

USAA's proposed second amended complaint plainly satisfies the first requirement. Its claims against LMW are

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 6 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

based on the same transaction—the December 2008 Accident—that gave rise to the original complaint. *W.B. David & Co. v. DeBeers Centenary AG,* 507 F. App'x 67, 70 (2d Cir.2013). Thus, whether USAA's proposed amendment relates back turns on the notice and mistake requirements of Rule 15(c).

USAA has not satisfied the second requirement for relation back—notice. "Under federal law, the 'linchpin' of the relation back doctrine is notice to the defendant." *Baez v. JetBlue Airways,* 745 F.Supp.2d 214, 222 (E.D.N.Y.2010). In order for USAA's proposed second amended complaint to relate back to the date of the original complaint, Rule 15(c) requires that USAA demonstrate that LMW received notice of the lawsuit "within the period provided by Rule 4(m)" so that it will not be prejudiced in defending this action on the merits. Fed.R.Civ.P. 15(c)(1)(C)(i). As noted above, the Rule 4(m) period expired on August 19, 2010 and there is no basis here to conclude that LMW received notice of USAA's complaint by that date. The National Union and Rag Jaw Actions—in which LMW is named as a defendant—were both commenced after this date, and, thus, could not have provided notice to LMW within the 120 day period. The defendants named in USAA's original complaint—the Mission, Federation and Ryback—are all represented by counsel other than counsel for LMW. There is no indication that there was any communication between these parties or their counsel and LMW or its counsel within the 120 day period after USAA filed its original complaint. Thus, USAA's proposed second complaint does not relate back because LMW did not receive notice within the required 120 day period.

**\*7** Even though I conclude that USAA has failed to satisfy the notice requirement of Rule 15(c), for the sake of completeness I shall address the third element required for an amendment to relate back—a mistake concerning the identity of the correct party. The Supreme Court has recently addressed the mistake requirement of Rule 15 in *Krupski v. Costa Crociere, S.p.A.,* ––– U.S. ––––, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010). In that case, the plaintiff was injured while aboard a cruise ship. Her ticket required that she sue the carrier—Costa Crociere—to recover for any injuries. *Krupski v. Costa Crociere, S.p.A., supra,* 130 S.Ct. at 2490. The plaintiff instead sued the sales and marketing agent, Costa Cruise. *Krupski v. Costa Crociere, S.p.A., supra,* 130 S.Ct. at 2490–91. Costa Cruise informed the plaintiff that it was not the proper party and that the proper party was Costa Crociere. *Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2491.

After the applicable limitations period had expired, the district court granted the plaintiff leave to amend her complaint to name Costa Crociere as a defendant. *Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2491. Costa Crociere then moved to dismiss the amended complaint, arguing that it did not relate back under Rule 15(c) and was, therefore, untimely. *Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2491–92. The district court agreed, and the Court of Appeals for the Eleventh Circuit affirmed. *Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2492. The Court of Appeals concluded that because the plaintiff's ticket clearly identified Costa Crociere as the carrier, the plaintiff knew or should have known that it was a potential party, and the plaintiff, therefore, had not made a mistake within the meaning of Rule 15, but rather a deliberate choice to name one party over another. *Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2492.

The Supreme Court reversed, explaining:

> The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint.

*Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2493. Despite the fact that the plaintiff was aware of the existence of both Costa Cruise and Costa Crociere, the Court concluded that the plaintiff had still made a mistake within the meaning of the Rule. *Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2494. It reasoned that "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 7 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

to sue a different defendant based on that misimpression."

*Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2494. The Court further explained:

> ***8** A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2494.

The Court noted, however, that "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identify, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Krupski v. Costa Crociere S.p.A., supra,* 130 S.Ct. at 2496; *see also* 130 S.Ct. at 2494 ("We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity."). [9]

Here, USAA has satisfied the mistake requirement of Rule 15(c). As explained in *Krupski,* the relevant question is whether LMW knew or should have known that, but for USAA's mistake, it would have been named as a defendant. In naming the property owner (the Mission), the general contractor (Federation) and the subcontractor (Ryback) involved with the Accident, it is clear from the face of the complaint that USAA intended to sue all those entities potentially responsible for the Accident. Contrary to LMW's assertion, the fact that USAA initially only named these defendants does not demonstrate that LMW's omission was a deliberate choice rather than a mistake. According to USAA, it was not aware of LMW's role and potential liability until discovery began in this action. [10] For example, USAA has received in discovery: (1) letters between Federation and the Mission that stated that LMW had been performing structural inspections on the Building and that it was onsite when the Accident occurred (Phelan Decl. Exs. 5–6); (2) a letter from Smotrich to the Mission made reference to LMW's alleged responsibility for the Accident (Phelan Decl. Ex. 7); (3) a report prepared by LMW for Federation concerning the Accident (Phelan Decl. Ex. 8); and (4) emails from LMW to the New York City Department of Buildings addressing LMW's role in the Accident (Phelan Decl. Ex. 9). It was only upon receiving these documents that USAA understood the role that LMW played in connection with the renovation of the Building and its alleged involvement in the Accident. Under *Krupski,* this sort of misunderstanding constitutes a mistake within the meaning of Rule 15(c). *Krupski v. Costa Crociere, S.P.A.,* 130 S.Ct. at 2494; *see, e.g., Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, supra,* 289 F.R.D. at 406 (plaintiff had made a mistake within the meaning of Rule 15(c) where, prior to discovery, it did not have knowledge of new defendant's role in the transaction giving rise to the action and thus misunderstood that defendant's liability); *Michalow v. E. Coast Restoration & Consulting Corp.,* CV 2009–5475(SLT)(MDG), 2012 WL 6962199 at *7 (E.D.N.Y. Oct. 22, 2012) (Report & Recommendation), *adopted,* 2013 WL 357820 (E.D.N.Y. Jan.29, 2013) (mistake requirement under Rule 15(c) satisfied; "the mistake of plaintiff here consisted of not understanding the extent to which prospective defendants were intertwined with, and had authority in the operation of, the business of defendants and the alleged conduct that violated the FLSA"); *Oladokun v. Ryan,* 06 Civ. 2330(KMW), 2011 WL 4471882 at *8 (S.D.N.Y.2011) (Wood, D.J.) (Rule 15(c) satisfied; "Smith, who was well aware of the role he and Ryan played under SUNY's Maritime's rules, should have known that, but for Oladokun's misunderstanding of Ryan and Smith's roles in his disenrollment, Oladokun would have sued Smith in his individual capacity instead of Ryan"); *Abdell v. City of New York,* 759 F.Supp.2d 450, 457 (S.D.N.Y.2010) (Sullivan, D.J.) ("The most logical explanation for [plaintiffs'] failure to name Galati in the original Complaint is that Plaintiffs misunderstood his role in the arrest decision giving rise to their claim. Accordingly, the Court holds that Plaintiffs committed a mistake within the meaning of Rule 15(c) as modified by the *Krupski* decision."). Thus, I conclude that USAA has made a mistake within the meaning of Rule 15(c) in failing to name LMW as a defendant in its original complaint.

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 8 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

**\*9** Although the other requirements for an amendment to relate back are present, I conclude that USAA's proposed second amended complaint does not relate back under Rule 15(c) because, as explained above, LMW did not receive notice within the Rule 4(m) period. Accordingly, USAA's motion for leave to file a second amended complaint and to join LMW as a defendant is denied as futile because its proposed claims are untimely. [11]

B. *Ryback's Motion For Leave to File a Third–Party Complaint*

In the USAA Action, defendant Ryback seeks leave to file a third-party complaint against LMW, Silman and Smotrich.

According to Ryback, LMW served as the supervising engineer for the Mission's construction project and was responsible for supervising the concrete pour that gave rise to this action (Declaration of William S. Matlin, Esq. in Support of Motion for Leave to File a Third–Party Summons and Complaint ("Matlin Decl.") (Docket Item 114) Ex. 15 ("Third Party Compl.") ¶¶ 9–13). Silman also provided engineering services, including structural calculations, drawings and specifications for the construction project on the Mission's property (Third Party Compl. ¶¶ 14–18). Smotrich provided architectural services (Third Party Compl. ¶ 19). Ryback alleges that LMW, Silman and Smotrich acted negligently in rendering their services for the Mission's construction project and that it was their negligence that caused the Accident (Third Party Compl. ¶ 21). Thus, Ryback claims that in the event that it is found liable for USAA's damages, LMW, Silman and Smotrich will be liable to Ryback (Third Party Compl. ¶¶ 23–34).

LMW opposes this motion, arguing that Ryback unduly delayed in seeking leave and that permitting impleader at this stage in the litigation would be prejudicial. Neither Silman nor Smotrich has filed any response.

1. *Applicable Law: Impleader and* Rule 14

Rule 14(a) of the Federal Rules of Civil Procedure provides, in relevant part, that a "defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The defendant must, however, obtain leave of court if it seeks to file the third-party complaint more than 14 days after serving its original answer. Fed.R.Civ.P. 14(a)(1). The resolution of such a motion is left to the sound discretion of the district court. *See* *Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 605 F.2d 1228, 1247 (2d Cir.1979); *Nova Prods., Inc. v. Kisma Video, Inc.,* 220 F.R.D. 238, 240 (S.D.N.Y.2004) (Ellis, M.J.); *Murphy v. Keller Indus., Inc.,* 201 F.R.D. 317, 319 (S.D.N.Y.2001) (Motley, D.J.). "[T]he traditional grounds for a third-party action are indemnification, contribution, or subrogation." *Doucette v. Vibe Records, Inc.,* 233 F.R.D. 117, 120 (E.D.N.Y.2005); *accord* *Balbino De Jesus v. AKAM Assocs., Inc.,* 09 Civ. 4450(TPG), 2009 WL 3644025 at \*1 (S.D.N.Y. Nov. 4, 2009) (Griesa, D.J.).

**\*10** " 'Timely motions for leave to implead non-parties should be freely granted to promote judicial efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim.' " *Farrell Family Ventures, LLC v. Sekas & Assocs., LLC,* 863 F.Supp.2d 324, 330–31 (S.D.N.Y.2012) (Forrest, D.J.) (internal citation and alteration omitted). Factors relevant to the determination of whether to permit the filing of a third-party complaint include: "(i) whether the movant deliberately delayed or was derelict in filing the motion; (ii) whether impleading would unduly delay or complicate the trial; (iii) whether impleading would prejudice the third-party defendant; and (iv) whether the third-party complaint states a claim upon which relief can be granted." *Too, Inc. v. Kohl's Dep't Stores, Inc.,* 213 F.R.D. 138, 140 (S.D.N.Y.2003) (Marrero, D.J.); *accord* *National Westminster Bank PLC v. Empire Energy Mgmt. Sys., Inc.,* 93 Civ. 5331(LMM), 1996 WL 709763 at \*8 (S.D.N.Y. Dec. 10, 1996) (McKenna, D.J.).

2. *Application of the Foregoing Legal Principles*

The application of these factors demonstrates that Ryback's motion for leave to file a third-party complaint should be granted.

First, Ryback did not deliberately delay in filing its motion. According to LMW, by at least March 2011, Ryback knew that LMW was a potential third-party defendant because both Ryback and LMW were named as defendants in National Union and Rag Jaw Actions, and accordingly, Ryback should have sought to implead LMW at that time. This argument is without merit because it overlooks the fact that from January 31, 2011 through July 18, 2012, all proceedings in this action was stayed. Accordingly, during this period, Ryback could not have sought to implead LMW. In addition, the fact that Ryback did not move until February 2013 even

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 9 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

though the stay was lifted in July 2012 does not establish undue delay. The initial pretrial conference was not held until December 2012, and the scheduling order entered set February 1, 2013 as the deadline for filing motions to join parties or amend pleadings. Ryback's motion was timely filed under this scheduling order. [12]

LMW's argument that Ryback must show a justification for its delay is also plainly without merit. The cases that LMW relies upon are inapplicable because they address the "good cause" requirement under Rule 16(b)(4) when a party's motion is untimely under a scheduling order, *see, e.g., iBasis Global, Inc. v. Diamond Phone Card, Inc.,* 278 F.R.D. 70, 76 (E.D.N.Y.2011) (applying Rule 16 and denying motion for leave to implead because party had failed to comply with deadline set in scheduling order); *Dos Santos v. Terrace Place Realty, Inc.,* 433 F.Supp.2d 326, 336 (S.D.N.Y.2006) (McMahon, D.J.) (denying leave to amend under Rule 16(a), not Rule 14); *New York v. Waterfront Airways, Inc.,* 620 F.Supp. 411, 416 (S.D.N.Y.1985) (Duffy, D.J.) (denying motion to implead because moving party had failed to make motion within time period set by local rule), or are factually distinguishable, *see, e.g., New York v. Niagra Mohawk Power Corp.,* 217 F.R.D. 299, 304 (N.D.N.Y.2003) (18 year delay significantly longer than approximately 7 month delay here). As noted above, Ryback's motion was timely under the scheduling order and, accordingly, there is no need to show good cause. *Cf. Parker v. Columbia Pictures Indus., supra,* 204 F.3d at 340; *Scoran v. Overseas Shipholding Grp., Inc .,* 07 Civ. 10307(DF), 2008 WL 4499472 at *1 (S.D.N.Y. Oct. 7, 2008) (Freeman, M.J.).

**\*11** Next, permitting the impleader of LMW, Silman and Smotrich would not unduly delay or complicate the trial in this action. The claims in Ryback's third-party complaint arise out of the same facts underlying the claims in the original complaint in the USAA Action, as well as the other two actions in which LMW, Silman and Smotrich are named as defendants. Ryback's proposed claims for contribution and indemnification on based on the alleged negligence of these three proposed defendants. Given that their alleged negligence is also at issue in the National Union and Rag Jaw Actions, permitting their impleader in the USAA Action will not complicate the trial. Moreover, permitting the proposed impleader eliminates the potential need for Ryback to file a separate suit against LMW, Silman and Smotrich upon the resolution of the USAA Action. Accordingly, impleader will streamline the litigation and promote judicial efficiency by eliminating the potential for duplication of suits on these closely related matters.

Next, there is no prejudice to LMW, Silman or Smotrich. Each is named in the National Union and Rag Jaw Actions, both of which, as noted above, are based on the same underlying facts as the USAA Action. It is, therefore, unlikely that any of the proposed third-party defendants will have to alter their litigation strategy. While LMW argues that it has a limited insurance policy, the prejudice inquiry does not turn on a proposed party's financial resources, but rather on the party's ability to defend against a claim on the merits. Discovery is ongoing in these actions, and LMW, Silman and Smotrich have each had an opportunity to participate given their status as defendants in the other two actions. Their inclusion in the USAA Action would not require them to expend significant additional resources beyond what they are expending in their defense of the other two related actions. *See AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.,* 626 F.3d 699, 727 (2d Cir.2010) (an amendment may be prejudicial if the new claim would require the defending party to "expend significant additional resources" or would "significantly delay the resolution of the dispute" (internal citation and quotation marks omitted)). Accordingly, no prejudice will result from impleader.

Finally, Ryback's claims for contribution and indemnification against LMW, Silman and Smotrich are the precise sort of claims contemplated by Rule 14(a) and do not appear to be unmeritorious. As an initial matter, I note that none of the proposed third-party defendants contend that Ryback's claims are not properly brought in an impleader action. Indeed, Ryback's contribution and indemnification claims appear to be viable. Ryback has alleged that the negligence of these proposed third-party defendants contributed, in whole or in part, to the Accident, and, thus, to the extent that Ryback is found liable for the damages of USAA, as subrogee of Adelman, they are liable to Ryback. *See* N.Y. C.P.L.R. § 1401 ("[T]wo or more persons who are subject to liability for damages for ... injury to property ... may claim contribution among them."); *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.,* 769 F.Supp.2d 322, 329 (S.D.N.Y.2011) (Sullivan, D.J.) ("Under New York law, the common law right to indemnification arises when one party is compelled to pay for the wrong of another" and requires a showing that "(1) the party seeking idemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." (internal citations omitted)). In other words, Ryback's

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 10 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

claims against LMW, Silman and Smotrich are dependent on USAA's claims against Ryback, and, as such, are properly brought in an impleader action under Rule 14. See *Falcone v. MarineMax, Inc.,* 659 F.Supp.2d 394, 402 (E.D.N.Y.2009) ("It is well-settled that a third party action, also known as an impleader action, must be dependent on, or derivative of, the main claim," citing *Bank of India v. Trendi Sportswear, Inc.,* 239 F.3d 428, 438 (2d Cir.2000)).

**\*12** Accordingly, for these reasons, Ryback's motion for leave to file a third-party complaint against LMW, Silman, and Smotrich is granted.

### C. *The Mission's Motion to Amend Its Answers*

In all three actions, the Mission seeks leave to amend its answers to assert counterclaims for negligence and nuisance, in the form of a set-off, against plaintiffs USAA, National Union, Adelman and Rag Jaw (collectively, "Plaintiffs"), based on Adelman and Rag Jaw's purported delay in completing the repairs to the party wall.[13] In addition, its proposed amended answers omit its responses to the claims—trespass and injury from an ultrahazardous activity—that have since been dismissed by Judge Swain.

For the purposes of this motion, I assume the facts alleged in the Mission's proposed counterclaims to be true and draw all inferences in favor of the Mission. *Horvarth v. Daniel,* 423 F.Supp.2d 421, 423 (S.D.N.Y.2006) (Conner, D.J.); *see* Section III.A.1, *supra.*

After the Accident, the New York City Department of Buildings ("DOB") issued a Stop Work Order with respect to the construction work at the Building (Declaration of Nipun J. Patel, Esq., in Support of Motion for Leave to Amend Defendant Permanent Mission of the Republic of Namibia's Answers to Plaintiffs' Respective Complaints ("Patel Decl.") (Docket Item 120) Ex. 16 ("Proposed Amended Answer") ¶ 45). The DOB held a meeting on December 24, 2008 which was attended by representatives of Plaintiffs and Federation (Proposed Amended Answer ¶ 47). In connection with this meeting, Federation submitted a letter stating they it was ready to commence reconstruction of the party wall immediately, but Plaintiffs chose to use a different contractor to complete the repairs to the party wall (Proposed Amended Answer ¶ 48). Tim Lynch, a DOB employee, indicated that the preparatory tasks for the repairs to the party wall should be expedited so that repairs could begin no later than January 15, 2009 (Proposed Amended Answer ¶ 50). According to the Mission, the DOB confirmed that repairs to the party wall could have been completed in a few weeks (Proposed Amended Answer ¶ 52). The Mission alleges that Adelman and Rag Jaw failed to begin the repairs on the party wall until they received an indemnification letter from the Mission (Proposed Amended Answer ¶¶ 53–56). Although not expressly alleged, it appears, drawing all reasonable inferences in favor of the Mission, that the necessary repairs to the party wall could not have been completed without access to Rag Jaw and Adelman's property. As a result of these alleged delays, the DOB did not lift the Stop Work Order on the Building until December 8, 2009, almost a year after the Accident (Proposed Amended Answer ¶ 58). The Mission claims that because of the delay in completing the repairs to the party wall, it incurred thousands of dollars in otherwise avoidable rental expenses and was prevented from resuming its own construction work for almost a year (Proposed Amended Answer ¶¶ 59–60).

**\*13** The Mission argues that leave to amend is warranted because it did not unduly delay in bringing this motion, there is no prejudice as its negligence and nuisance claims arise out of the same transaction underlying Plaintiffs' complaints and its proposed counterclaims are not futile. Plaintiffs oppose the motion for various reasons, which are discussed below.

#### 1. *Applicable Law Rule 15 & Motion to Amend*

As explained in greater detail in Section III.A.1, *supra,* under Rule 15, leave to amend a pleading should be freely granted when justice so requires. Fed.R.Civ.P. 15(a)(2). A court may deny a motion for leave if the amendment "(1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." *Lee v. Regal Cruises, Ltd., supra,* 916 F.Supp. at 303. Whether to grant leave is within the court's discretion. *Gurary v. Winehouse, supra,* 235 F.3d at 801.

#### 2. *Application of the Foregoing Legal Principles*

##### a. *Procedural Deficiency*

As an initial matter, Plaintiffs argue that the Mission's motion for leave should be denied as procedurally deficient because it failed to attach copies of the complaints. This argument is without merit. Rule 7(b) of the Federal Rules of Civil Procedure provides that motions must "state with particularity the grounds for seeking the order" and "state the relief sought." Fed.R.Civ.P. 7(b)(1) (B), (C). To satisfy

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 11 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

this particularity requirement, a motion to amend must be accompanied by a copy of the proposed amended pleading "so that both the Court and opposing parties can understand the exact changes sought." Smith v. Planas, 151 F.R.D. 547, 550 (S.D.N.Y.1993) (Lowe, D.J.); accord Kneitel v. Danchuk, 04–CV–0971 (NGG)(LB), 2007 WL 4441224 at *8 (E.D.N.Y. Dec. 17, 2007); Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 233 F.R.D. 327, 329 (S.D.N.Y.2005) (Lynch, then D.J., now Cir. J.); Jonas v. Rich, 02 Civ. 498(BSJ), 2004 WL 1542231 at *2 (S.D.N.Y. July 8, 2004) (Jones, D.J.). Here, the Mission provided copies of the pleading sought to be amended, i.e., its proposed amended answers and counterclaims (see Patel Decl. Ex. 16). Its failure to provide copies of the complaints, which it does not and could not seek to amend, does not render its motion procedurally deficient. Thus, the Mission has satisfied the requirements of Rule 7 and its motion is not procedurally deficient.

b. *Undue Delay*

Plaintiffs' claim that the Mission unduly delayed in seeking leave to amend its answers is also without merit. As explained above, all proceedings in these actions were stayed from January 31, 2011 until July 18, 2012, and, thus, the Mission could not have sought leave during this period. The February 1, 2013 deadline for joinder of parties and amendment of pleadings was not set until the pre-trial conference held on December 13, 2012. There is no question that the Mission's motion complied with this scheduling order. Accordingly, the Mission did not unduly delay in bringing its motion.

c. *Futility*

***14** Plaintiffs claim that the Mission's motion should be denied as futile because its proposed counterclaims are barred by the statute of limitations and fail to state a claim upon which relief can be granted. I shall address each argument below.

i. *Timeliness*

The proposed counterclaims for negligence and nuisance are not barred by the statute of limitations.[14] As noted above, New York law provides a three-year statute of limitations for negligence and nuisance claims based on injury to property. N.Y. C.P.L.R. § 214(4). The Mission's negligence claim accrued no later than December 2009 when the repairs to the party wall were completed. See Coleman & Co. Sec., Inc. v. Giaquinto Family Trust, supra, 236 F.Supp.2d at 299. As explained above, the latest point at which the Mission's nuisance claim could have accrued is December 2009 when the party wall was repaired. See Section III.A.2.a., *supra*. Accordingly, the statute of limitations on the Mission's negligence and nuisance claims would have expired, at the latest, in December 2012, rendering its proposed counterclaims untimely unless they relate back under Rule 15(c)(1)(B).[15] This Rule provides, in pertinent part, that an "amendment to a pleading relates back to the date of the original pleading when: ... (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1)(B).[16]

The proposed counterclaims satisfy these relation back provisions. The basis of the proposed counterclaims—the alleged delay in the repairs to the party wall—arose from the same occurrence giving rise to the complaints—namely the Accident that necessitated the repairs in the first place. Accordingly, Rule 15(c)(1)(B) is satisfied and the proposed claims relate back to the filing of the Mission's answer and are timely.

ii. *Sufficiency of Negligence Counterclaim*

Under New York law, to state a counterclaim for negligence, a defendant must show that (1) the plaintiff owed the defendant a cognizable duty of care; (2) the plaintiff breached that duty and (3) the defendant suffered damages as a proximate result of that breach. Alfaro v. Wal–Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir.2000), citing Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333, 424 N.E.2d 531, 535, 441 N.Y.S.2d 644, 648 (1981); King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir.1997), citing Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir.1995) and Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294–95, 499 N.Y.S.2d 392, 392–93 (1985). "A person breaches a duty of care owed to another if the person fails to exercise reasonable care under the circumstances in the discharge of that duty." Dilworth v. Goldberg, 914 F.Supp.2d 433, 458 (S.D.N.Y.2012) (Gorenstein, M.J.).

As succinctly explained by the Honorable Alvin K. Hellerstein, United States District Judge:

Case 1:18-md-02865-LAK    Document 445-8    Filed 08/20/20    Page 12 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

**\*15** In New York, the existence of a duty is a " 'legal, policy-laden declaration reserved for judges.' " *Palka v. Servicemaster Mgmt. Servs. Corp.,* 83 N.Y.2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189, 192 (1994). The injured party must show that the a defendant owed not merely a general duty to society but a specific duty to the particular claimant, for "without a duty running directly to the injured persons there can be no liability in damages, however careless the conduct or foreseeable the harm." *Lauer v. City of New York,* 95 N.Y.2d 95, 711 N.Y.S.2d 112, 733 N.E.2d 184, 187 (2000). Courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Palka,* 611 N.Y.S.2d at 817, 634 N.E.2d at 193.

*In re Sept. 11 Litig.,* 280 F.Supp.2d 279, 290 (S.D.N.Y.2003).

The relevant question here is whether Adelman, as coowner of the party wall, owed any duty to the Mission, the other co-owner of the party wall.

A party wall, as commonly defined, "is a division wall between two adjacent properties belonging to different persons and used for the mutual benefit of both parties." *145 W. 10 Realty LLC v. Whelan,* 107 A.D.3d 461, 462, 968 N.Y.S.2d 432, 432 (1st Dep't 2013); *accord Wade v. Village of Whitehall,* 17 A.D.3d 813, 814, 793 N.Y.S.2d 251, 252 (3d Dep't 2005). Under New York law, each owner of a party wall has certain responsibilities. "A party wall is for the mutual convenience and benefit of adjoining property owners, and the only restriction upon its use by either is that use shall not be detrimental to the other." *Negus v. Becker,* 143 N.Y. 303, 308, 38 N.E. 290, 291 (1894); *see also Lei Chen Fan v. N.Y. SMSA Ltd. P'ship,* 94 A.D.3d 620, 621, 943 N.Y.S.2d 451, 452–53 (1st Dep't 2012) ("Although an owner may not weaken a party wall or encroach onto the property of the adjoining property owner, commercial use of a party wall that is on the owner's property is permissible."). Accordingly, "[e]ach may subject it to whatever uses are proper to a wall, if the like freedom of the other is not curtailed thereby." *Varriale v. Brooklyn Edison Co.,* 252 N.Y. 222, 224, 169 N.E. 284, 284 (1929); *accord Sakele Bros., LLC v. Safdie,* 302 A.D.2d 20, 26, 752 N.Y.S.2d 626, 632 (1st Dep't 2002) ("This principle means that neither owner may subject a party wall to a use for the benefit of its own property that renders the wall unavailable for similar use for the benefit of the other property owner."). In addition, "[a] property owner is permitted to make changes, additions, and *repairs* to a party wall within the limits of his own premises, provided the use of the wall by the other party for which it was intended is not impaired." *Wechsler v. Elbeco Realty Corp.,* 119 Misc. 178, 180, 196 N.Y.S. 190 (N.Y.Sup.Ct.1922) (emphasis added).

**\*16** The Mission has alleged facts sufficient to state a claim for negligence. First, consistent with the principles outlined above, when undertaking repairs to the party wall, Adelman and Rag Jaw, as owners of the party wall, owed a duty to the other owner, the Mission, to perform those repairs in a reasonable manner such that the Mission's use of the party wall is not impaired. The Mission has alleged that Rag Jaw and Adelman failed to repair the party wall with reasonable promptness by (1) insisting on an indemnification letter before beginning repairs and (2) not completing the repairs for close to a year after the Accident notwithstanding the Department of Building's estimate that such repairs would only take a few weeks.

Neither the parties' research nor my own has found any authority addressing the duty of the joint owner of a party wall to repair damage caused to the party wall by the adjoining land owner. I conclude that the more correct view is that the tortious conduct of the adjoining land owner with respect to the party wall does not relieve the injured land owner of his obligation to make repairs, but that it is an important factor to be considered in determining whether the injured land owner acted reasonably. It seems unreasonable to conclude that Adelman and Rag Jaw could have left the damage unrepaired indefinitely. Yet, if I were to conclude that the Mission's initial wrongdoing relieved Adelman and Rag Jaw of their duty to make repairs (or to permit repairs to be made by the Mission), that result is the logical conclusion. To be sure, any assessment of the reasonableness of Adelman and Rag Jaw's conduct must take into account the fact that the Mission allegedly caused the party wall to be breached. Nevertheless, it simply seems unreasonable to conclude that the Mission's conduct relieved Adelman and Rag Jaw of all responsibility for an indefinite period of time.

Finally, the Mission has sufficiently alleged damages because it claims that it incurred otherwise unnecessary rental expenses while it was awaiting the completion of the repairs

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 13 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

to the party wall. Although Adelman and Rag Jaw argue that the economic loss rule bars the Mission's tort claims, I conclude that it is not applicable here. The economic loss rule provides, in general terms, that negligence is not actionable in the absence of personal injury or property damage. See *Amin Realty, LLC v. K & R Constr. Corp.,* 306 A.D.2d 230, 231, 762 N.Y.S.2d 92, 93 (2d Dep't 2003); accord *King Cnty., Wash. v. IKB Deutsche Industriebank AG,* 863 F.Supp.2d 288, 302 (S.D.N.Y.2012) (Scheindlin, D.J.) ("Under New York's 'economic loss' rule, a plaintiff cannot recover in tort for purely economic losses caused by a defendant's negligence." (citing cases)). The New York Court of Appeals has explained, however, that the economic loss rule does not apply across-the-board in all negligence actions. See *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,* 96 N.Y.2d 280, 288 n. 1, 750 N.E.2d 1097, 1101 n. 1, 727 N.Y.S.2d 49, 53 n. 1 (2001). Indeed, as noted by the Court of Appeals for the Second Circuit, the economic loss rule in New York "developed as a way of enforcing the dictates of privity in product liability law and preventing tort remedies from eliminating the customary limitations involved in cases addressing the sale of goods." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 16 (2d Cir.2000); accord *Travelers Cas. & Sur. Co. v. Dormitory Authority–State of New York,* 734 F.Supp.2d 368, 378–79 (S.D.N.Y.2010) (Cote, D.J.). Thus, "[t]he economic loss rule reflects the principle that damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort." *Bristol–Myers Squibb, Indus. Div. v. Delta Star, Inc.,* 206 A.D.2d 177, 181, 620 N.Y.S.2d 196, 198–99 (4th Dep't 1994).

**\*17** Here, the Mission's claims derive solely from a tort theory of recovery. The concerns animating the economic loss rule, *i.e.,* the potential subversion of traditional limits on contract damages, are not present. Cf. *King Cnty., Wash. v. IKB Deutsche Industriebank AG, supra,* 863 F.Supp.2d at 302 ("[T]he economic loss doctrine serves two purposes: (1) it 'protect[s] defendants from disproportionate, and potentially limitless, liability'; and (2) it disentangles contract and tort law by restricting plaintiffs who suffer economic losses to the benefits of their bargains." (internal footnotes omitted)); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.P.A.,* 244 F.R.D. 204, 220 (S.D.N.Y.2007) (Scheindlin, D.J.) (economic loss role attempts to keep "contract law from drowning in a sea of tort" and thus "restrict[s] plaintiffs who have suffered economic loss, but not personal or property injury, to an action for the benefit of their bargains" (internal alterations, quotation marks and citations omitted)). Thus, the economic loss rule does not apply here, and does not bar the Mission's negligence claim.

Accordingly, the Mission's motion for leave to amend its answers to assert a counterclaim for negligence is granted.

iii. *Sufficiency of Nuisance Counterclaim*

"A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land." *Copart Indus., Inc. v. Consol. Edison Co. of N.Y.,* 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169, 172 (1977) (internal citations omitted); accord *Balunas v. Town of Owego,* 56 A.D.3d 1097, 1098, 867 N.Y.S.2d 788, 789 (3d Dep't 2008) ("[A] private nuisance is an intentional interference with a person's right to use and enjoy his or her property that is 'substantial in nature' and 'unreasoanble in character.' "). "The term 'use and enjoyment' encompasses the pleasure and comfort derived from the occupancy of land and the freedom from annoyance." *Domen Holding Co. v. Aranovich,* 1 N.Y.3d 117, 123–24, 802 N.E.2d 135, 139, 769 N.Y.S.2d 785, 789 (2003). Under New York law, "one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." *Copart Indus., Inc. v. Consolidated Edison Co. of N.Y., supra,* 41 N.Y.2d at 569, 362 N.E.2d at 971, 394 N.Y.S.2d at 172; accord *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, supra,* 2010 WL 4739945 at \*5; *Abbatiello v. Monsanto Co.,* 522 F.Supp.2d 524, 540 (S.D.N.Y.2007) (Marrero, D.J.); *Tanus Corp. v. City of New York,* 279 F.Supp.2d 305, 312 (S.D.N.Y.2003) (Hellerstein, D.J.).

The Mission has not alleged facts sufficient to give rise to a claim for private nuisance. The fundamental flaw with the Mission's nuisance claim is that it is ultimately based on its own conduct, rather than Plaintiffs' conduct. The alleged delay in completing the repairs to the party wall, which the Mission contends was a substantial interference with its use and enjoyment of its property, was the result of its own conduct or the conduct of its agents, *i.e.,* the pouring of

the concrete that led to the collapse of the party wall. It is counterintuitive that a nuisance claim could lie in favor of the party that created the situation that gave rise to the alleged nuisance. There is no dispute that Plaintiffs were not responsible for the concrete pouring accident that precipitated the need for the repairs to the party wall. These repairs, and any alleged delay therefrom, would not have been necessary but for the acts or omissions of the Mission or its agents. Although I concluded that the Mission's antecedent role in the damage to the party wall did not preclude its claim for negligence, its nuisance claim stands on different footing. Unlike a negligence claim, a nuisance claim is not dependent on the existence of a duty. As explained above, Rag Jaw and Adelman were not absolved of their duty to behave reasonably just because the Mission created the situation that triggered that duty. In contrast, a nuisance claim asks not whether a party breached a duty, but whether there was an substantial and intentional interference with a party's property, and here, the Mission's own actions—not those of Rag Jaw or Adelman—effectively caused the alleged nuisance of which it now complains. The Mission has cited no authority, and I am aware of none, that has found similar or analogous facts actionable as a private nuisance. Thus, the Mission's motion for leave to assert a counterclaim for private nuisance is denied as futile.

c. *Against Whom the Counterclaim May Be Asserted*

**\*18** Finally, Plaintiffs argue that the Mission's proposed counterclaim may not be asserted against the insurance carrier plaintiffs or Adelman, as tenant of the Adelman townhouse.

i. *Claims against the Insurance Carriers*

The insurance carrier plaintiffs—USAA and National Union—each assert that the Mission's counterclaims cannot be asserted against them in a subrogation action. This argument is without merit.

"Subrogation is the equitable doctrine that 'allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.' " *Reade v. Reva Holding Corp.,* 30 A.D.3d 229, 232, 818 N.Y.S.2d 9, 13 (1st Dep't 2006), *quoting Kaf–Kaf, Inc. v. Rodless Decorations,* 90 N.Y.2d 654, 660, 687 N.E.2d 1330, 1332, 665 N.Y.S.2d 47, 49 (1997). While USAA and National Union are correct that as subrogees of the insureds, there can be no affirmative recovery against them based on the alleged conduct of the insured, it does not follow that the counterclaims are futile. The Mission does not seek an affirmative recovery from either USAA or National Union; rather, it seeks to set-off any amount of its potential liability to them as subrogees because of the alleged negligence of their subrgors Adelman and Rag Jaw. Such set-off claims are properly asserted in a subrogation action. *See Peerless Ins. Co. v. Michael Beshara, Inc.,* 75 A.D.3d 733, 736, 903 N.Y.S.2d 833, 836 (3d Dep't 2010) (counterclaim may be asserted against subrogee in the nature of a set-off, but does not permit affirmative recovery); *U.S. Underwriters Ins. Co. v. Greenwald,* 31 Misc.3d 1206(A), 2010 WL 6422981 at \*3 (N.Y.Sup.Ct.2010) (table) ("[T]he alleged tortfeasor defendant's claims against the insurer may be interposed as counterclaims in a subrogation action; however, they are considered as set-offs only, and cannot effect an affirmative recovery by the defendant against the subrogated carrier ."). Accordingly, the Mission may assert its counterclaim for negligence as a set-off against USAA and National Union.

ii. *Claims against Adelman*

Finally, Adelman argues that the Mission may not assert a counterclaim against him because he is only a tenant of the Adelman property, and that any counterclaim is properly asserted only against the owner Rag Jaw. In support of this argument, Adelman cites to cases that address a tenant's duty of repair under a lease agreement with respect to a third party. *See Collado v. Cruz,* 81 A.D.3d 542, 542, 917 N.Y.S.2d 178, 179–80 (1st Dep't 2011); *Tucciarone v. Windsor Owners Corp.,* 306 A.D.2d 162, 163, 761 N.Y.S.2d 181, 182 (1st Dep't 2003). These cases, however, have no bearing on the matter here. The focus of the futility inquiry under Rule 15 is limited to the factual allegations set forth in the proposed amended pleading. These allegations do not include a reference to a lease. Whether the Mission may ultimately recover from Adelman does not alter my conclusion with respect to the legal sufficiency of the Mission's counterclaims.

d. *Summary*

**\*19** Accordingly, the Mission's motion for leave to amend its answers is denied to the extent that it seeks to assert counterclaims for nuisance and granted to the extent that it seeks to assert counterclaims for negligence. The negligence counterclaims may be asserted only as a set-off against USAA and National Union. Finally, as noted above, the Mission's proposed amended answers also seek to delete its responses to claims that Judge Swain has dismissed. In view of the fact that none of Plaintiffs has objected to this last amendment and

Case 1:18-md-02865-LAK   Document 445-8   Filed 08/20/20   Page 15 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

that such an amendment will add clarity to the pleadings, the Mission's motion is also granted to that extent.

IV. *Conclusion*

For the foregoing reasons, USAA's motion for leave to file a second amended complaint is denied (Docket Item 108 in 10 Civ. 4262; Docket Item 39 in 10 Civ. 9344 and Docket Item 35 in 11 Civ. 1565); Ryback's motion for leave to file a third-party complaint is granted (Docket Item 113 in 10 Civ. 4262) and the Mission's motion for leave to file amended answers (Docket Item 118 in 10 Civ. 4262) is granted to the extent it seeks to assert counterclaims for negligence and to delete its responses to claims dismissed by Judge Swain and is denied in all other respects. The parties are directed to file the amended pleadings allowed by this Order no later than 14 days from issuance. The Clerk of the Court is directed to close Docket Items 108, 113 and 118 in 10 Civ. 4262; Docket Item 39 in 10 Civ. 9344 and Docket Item 35 in 11 Civ. 1565.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4710377

## Footnotes

1     Unless otherwise stated, all further docket references will be to 10 Civ. 4262.

2     At the time of the events in issue, Rag Jaw was the legal owner of the damaged building and was entirely owned by Adelman.

3     The Mission moved for relief only in the USAA Action. Shortly after the National Union and Rag Jaw Actions were commenced, each was stayed along with the USAA Action for reasons explained in the following text.

4     USAA filed an amended complaint on July 8, 2010 (Docket Item 23). The amended complaint asserted additional claims against the same parties—the Mission, Federation and Ryback—that were named in the original complaint.

5     As noted by the Court of Appeals for the Second Circuit in its decision affirming Judge Swain's denial of the Mission's motion to dismiss, "the doctrine of *res ipsa loquitor* does not constitute a separate cause of action." *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, supra,* 681 F.3d at 105 n. 6, *citing Frew v. Hosp. of Albert Einstein Col. of Med. Div. of Montefiore Hosp. & Med. Ctr.,* 76 A.D.2d 826, 428 N.Y.S.2d 300 (2d Dep't 1980).

6     To the extent that a proposed amendment would add new parties, the motion is technically governed by Rule 21, which provides that "the court may at any time, on just terms, add or drop a party," rather than Rule 15(a). Fed.R.Civ.P. 21; *FTP Corp. v. Banker's Trust Co.,* 954 F.Supp. 106, 109 (S.D.N.Y.1997) (Stein, D.J.). However, " 'the same standard of liberality' applies under either Rule." *FTP Corp. v. Banker's Trust Co., supra,* 954 F.Supp. at 109, *citing Fair Hous. Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972) and *Expoconsul Int'l, Inc. v. A/E Sys., Inc.,* 145 F.R.D. 336, 337 n. 4 (S.D.N.Y.1993) (Preska, D.J.); *see also* *Sly Magazine, LLC v. Weider Publ'ns L.L.C.,* 241 F.R.D. 527, 532 (S.D.N.Y.2007) (Casey, D.J.); *Chowdhury v. Haveli Rest., Inc.,* 04 Civ. 8627(RMB)(JCF), 2005 WL 1037416 at *1–*2 (S.D.N.Y. May 3, 2005) (Francis, M.J.).

7     Inexplicably, none of the parties address this issue in their submissions.

8     USAA raises no argument concerning whether the stay of proceedings in this matter tolled the statute of limitations. Thus, I deem any such argument to have been waived.

9     Although the parties did not address it, there is some uncertainty in this District about the impact of *Krupski* on existing Second Circuit precedent—in particular, *Barrow v. Wethersfeld Police Department,* 66 F.3d 466 (2d Cir.1995), *modified,* 74 F.3d 1366 (2d Cir.1996). As noted by the Honorable Naomi Reice Buchwald, United States District Judge, *Krupski* "has engendered a split in the district courts as to whether *Barrow* remains good law." *Askins v. City of New York,* 09 Civ. 10315(NRB), 2011 WL 1334838 at *1 n. 3 (S.D.N.Y.

Case 1:18-md-02865-LAK    Document 445-8    Filed 08/20/20    Page 16 of 16

In re Mission Const. Litigation, Not Reported in F.Supp.2d (2013)
2013 WL 4710377

Mar. 25, 2011) (citing cases); see also Callicut v. Scalise, No. 1:11–CV–1282 (LEK/RFT), 2013 WL 432913 at *4 (N.D.N.Y. Feb.4, 2013) ("The law on cases of 'mistake' and 'knowledge' under Rule 15, however, is currently in a state of flux.").

In this matter, it is unnecessary to resolve the impact of *Krupski,* if any, on *Barrow. Barrow* addressed the plaintiff's failure to timely identify John Doe defendants after being informed of the need to do so, and is inapplicable here. In *Barrow,* the issue was whether a plaintiff makes a mistake within the meaning of Rule 15(c) when he does not name defendants who he knows that must be named because he lacks knowledge of their identity. The Court of Appeals concluded that lack of knowledge, in those circumstances, did not constitute a mistake. 66 F.3d at 470. In contrast, here, the issue is the completeness of USAA's knowledge of the potential defendants. Unlike the situation in *Barrow,* USAA did not sue the wrong defendant because it was unaware of the identity of the proper defendant. Rather, it sued an incomplete group of defendants. There is no indication that USAA was informed of the need to sue an entity in the position of LMW and that it failed to do so or that it failed to name LMW sooner because it was unaware of its identity. Thus, I conclude that *Barrow* is inapplicable.

10   LMW claims that because USAA indicated in September 2010 that it had received hundreds of pages of documents from the New York City Department of Buildings (Ex. D attached to Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Join a Defendant and File a Second Amended Complaint (Docket Item 129)), USAA should have been able to determine LMW's involvement in the accident at that time. However, from the record presented here, there is no indication of what was contained in those documents and whether they disclosed LMW's involvement.

11   In light of my conclusion that the Mission's proposed second amended complaint does not relate back, I need not address whether the Mission's alleged undue delay in bring the motion for leave justifies its denial.

12   Although Ryback's motion is dated February 11, 2013, it is still timely. Ryback submitted a letter on February 1, 2013 requesting permission to commence an impleader actions against LMW, Silman and Smotrich (Docket Item 106). That same day, in a memo endorsement, Judge Swain directed that any motion to file a third party complaint be submitted by February 11, 2013 (Docket Item 106).

13   The Mission has attached copies of the proposed amended answers it seeks to file in all three actions. Because the proposed counterclaims at issue here are the same, I address the proposed amended answers collectively.

14   The Mission argues that its claims are timely because they are compulsory counterclaims under Rule 13 and are, therefore, tolled by the filing of the complaint. The cases that it cited in support of this argument, however, predate the 2009 amendments to Rule 13, which deleted subsection (f). This subsection had provided that "The court may permit a party to amend a pleading to add a counterclaim if it was omitted through oversight, inadvertence, or excusable neglect or if justice so requires." As noted in the 2009 Advisory Committee Notes to Rule 13, "[d]eletion of Rule 13(f) ensures that relation back is governed by the tests that apply to all other pleading amendments." Thus, I shall analyze the timeliness of the Mission's proposed counterclaims under Rule 15 rather than Rule 13.

15   In contrast to USAA's motion to amend, subsection (1)(B), not subsection (1)(C), of Rule 15(c) applies because the Mission's proposed amendments do not include a change in parties.

16   I note that in support of their statute of limitations argument, plaintiffs Adelman and Rag Jaw have cited inapplicable New York state cases. Even though determining the applicable statute of limitations is a substantive question and thus defined by state law, the standard for evaluating whether a proposed amendment relates back is a procedural question and is, therefore, governed by federal law. Fed.R.Civ.P. 15(c); Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

---

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.