**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to: 18-cv-04833.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANT ALEXANDER BURNS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................3

LEGAL STANDARD................................................................................................9

ARGUMENT ........................................................................................................10

I.     SKAT'S CLAIMS ARE NOT TIME-BARRED. ................................................10

     A.     SKAT's claims are not time-barred under New York law. ...................................11

          1.     SKAT's fraud, aiding and abetting fraud, and negligent misrepresentation claims are not time-barred. ...........................................12

          2.     SKAT's unjust enrichment, money had and received, and payment by mistake claims are not time-barred. ........................................14

     B.     SKAT's claims are not time-barred under Danish law.........................................15

II.     SKAT'S CLAIMS AGAINST BURNS RELATE  BACK TO ITS ORIGINAL COMPLAINT. ....................................................17

     A.     SKAT's claims against Burns relate back under Rule 15(c)(1)(C). .....................17

     B.     SKAT's claims against Burns relate back under New York law..........................20

III.     SKAT PLEADED ITS CLAIMS SUFFICIENTLY........................................................22

IV.     SKAT'S CLAIMS ARE NOT BARRED BY THE REVENUE RULE..........................24

CONCLUSION.....................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) ................................................................11

*Abdell v. City of New York*, 759 F. Supp. 2d 450 (S.D.N.Y. 2010) ...................18, 19, 20

*Adams v. Deutsche Bank AG*, No. 11 Civ. 1893 (RJS), 2012 WL 12884365
  (S.D.N.Y. Sep. 24, 2012) .........................................................................................13

*AE Liquidation Corp. v. Segre*, No. 96 CIV. 0889 CSH, 2000 WL 204525
  (S.D.N.Y. Feb. 18, 2000) .........................................................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................10

*Bano v. Union Carbide Corp.*, 361 F.3d 696 (2d Cir. 2004) ........................................11

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 289 F.R.D. 401 (S.D.N.Y.
  2013) .......................................................................................................................20

*Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632 (S.D.N.Y. 2005)..............................22

*Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292 (S.D.N.Y. 2014) ....11

*De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274 (S.D.N.Y. 2013) ...................15

*Deaner v. Solomon*, No. 02 Civ. 8772 (LAK), 2003 WL 1565949 (S.D.N.Y. Mar.
  12, 2003) .................................................................................................................19

*Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 34 N.Y.3d 327 (2019) ...........16

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) .........................................10

*Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525 (1999)............................................11

*Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509 (2d Cir. 2001) ..........14

*Haidt v. Kurnath,* 86 A.D.3d 935 (4th Dep't 2011).......................................................22

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999).......................................11, 14

*Indovino v. Tassinari*, No. CV-05-4167 JS AKT, 2006 WL 2505232 (E.D.N.Y.
  Aug. 28, 2006) ...................................................................................................14, 15

*K&E Trading & Shipping, Inc. v. Radmar Trading Corp.*, 174 A.D.2d 346 (1st
  Dep't 1991)..............................................................................................................12

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 130 S. Ct. 2485 (2010) ...................................19

*LBBW Luxembourg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504 (S.D.N.Y. 2014) ........................................................................................................................................23

*Mabry v. New York City Dep't of Corr.*, No. 05 Civ. 8133 (JSR)(JCF), 2008 WL 619003 (S.D.N.Y. Mar. 7, 2008) ..................................................................................21

*Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014) ...............................15

*New York City Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78 (1st Dep't 2000) ........................................................................................................................................12

*Outhouse PR, LLC v. Northstar Travel Media, LLC*, No. 19 Civ. 5979 (NRB), 2020 WL 2512092 (S.D.N.Y. May 15, 2020) ..........................................................................10

*Pape v. Bd of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07-CV-8828 (KMK), 2009 WL 3151200 (S.D.N.Y. Sep. 29, 2009) ............................................................................20

*Perez v. MVNBC Corp.*, No. 15 Civ. 6127 (ER), 2016 WL 6996179 (S.D.N.Y. Nov. 29, 2016) ...................................................................................................................19

*Petruzzi v. Purrow*, 180 A.D.3d 1083 (2d Dep't 2020) ................................................................22

*Ramirez v. Elias-Tejada*, 168 A.D.3d 401 (1st Dep't 2019) ........................................................22

*Rivera v. Wyckoff Heights Med. Ctr.*, 175 A.D.3d 522 (2d Dep't 2019) .....................................21

*S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10 Civ. 7547 (KMW)(RLE), 2013 WL 1234937 (S.D.N.Y. Mar. 26, 2013) .........................................19, 20

*Sargiss v. Magarelli*, 12 N.Y.3d 527 (2009) ................................................................................13

*Sea Trade Maritime Corp. v. Coutsodontis*, No. 09 Civ. 488(BSJ)(HBP), 2012 WL 6097726 (S.D.N.Y. Dec. 4, 2012) ..............................................................................10, 16

*In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019) .................... *passim*

*Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006) ...........................................................18

*Twine v Four Unknown N.Y. Police Officers*, No. 10 Civ. 6622 (DAB)(JLC), 2012 WL 6184014 (S.D.N.Y. Dec. 12, 2012) ............................................................................18, 22

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002) ...........................................................24

iii

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Vincent v. Money Store*, 304 F.R.D. 446 (S.D.N.Y. 2015)............................................................15

*In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125 (E.D.N.Y. 2014).......................................20

*Von Hoffman v. Prudential Ins. Co. of Am.*, 202 F. Supp. 2d 252 (S.D.N.Y. 2002) ....................11

*Xavier v. RY Mgmt. Co.*, 45 A.D.3d 677 (2d Dep't 2007)............................................................21

*Yaniv v. Taub*, 256 A.D.2d 273 (1st Dep't 1998) ........................................................................21

**Statutes and Rules**

CPLR § 202........................................................................................................................11, 15

CPLR § 213(1)...........................................................................................................................12

CPLR § 213(8)....................................................................................................................11, 12

Fed. R. Civ. P. 9(b) ....................................................................................................................10

Fed. R. Civ. P. 15(c) ......................................................................................................17, 19, 21

Fed. R. Civ. P. 15(c)(1)(A) ........................................................................................................17

Fed. R. Civ. P. 15(c)(1)(C) ..................................................................................................17, 18

Fed. R. Civ. P. 15(c)(1)(C)(ii)....................................................................................................19

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to the motion to dismiss SKAT's amended complaint by Alexander Burns pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

The Court should deny the motion because none of SKAT's claims is time-barred on the face of the amended complaint, and, in any event, all of SKAT's claims are timely because they relate back to the date of SKAT's original complaint. The remaining arguments—that the revenue rule proscribes this action and that SKAT pleaded Burns' fraud insufficiently—should be rejected for the same reasons set forth in the Court's decision denying the first motion to dismiss this action.

SKAT commenced this action in May 2018, alleging that defendant Raubritter LLC Pension Plan defrauded SKAT with fraudulent tax refund applications, in which the plan falsely claimed to own tens of millions of dollars of Danish stock and to have received dividends on those shares, from which tax was withheld. SKAT's original complaint named as defendants the Raubritter plan itself and the plan's authorized representative Adam LaRosa, whose identities and roles were apparent from the fraudulent refund applications.

During discovery, SKAT learned that defendant Burns was the sole participant in the Raubritter plan, created the plan and its sponsoring company, Raubritter LLC, solely for the purpose of submitting fraudulent tax refund applications, and entered into an agreement (on behalf of the plan) to share 90 percent of the plan's profits from the scheme with newly added defendants Richard Markowitz and John van Merkensteijn. As such, in March 2020, SKAT sought leave to amend its pleadings in this action, along with its pleadings in the 183 others

---

1.  *See* Not. of Def. Alexander Burns's Mot. to Dismiss SKAT's Am. Compl., No. 18-md-04833 (LAK), ECF Nos. 136-37.

comprising this multi-district litigation. Following the Court's grant of leave, SKAT filed its amended complaint on April 27, 2020, naming Burns as a defendant.

Burns argues that SKAT's claims should be dismissed because they are "largely" time-barred under New York law and barred entirely under the Danish limitations period, made applicable by New York's borrowing statute. Burns is wrong on both counts. At this stage of the proceedings, SKAT's claims may be dismissed as time-barred only if the pleading clearly shows they are out of time. SKAT's amended pleading does not establish that any of its claims is out of time under either New York or Danish law because in each case, the claim was filed within the applicable limitations period or a discovery or tolling rule applies. There are factual questions under New York law that include when SKAT learned or reasonably should have learned about its claims against Burns, and when Burns obtained the monies that SKAT claims in unjust enrichment. Similarly, there are factual questions under Danish law, which include when SKAT learned sufficient information to assess its claims against Burns. Such factual questions cannot be determined on this motion.

SKAT's pleading does not establish that any claim is time-barred under New York law. SKAT claims that certain payments occurred within six years of filing the amended complaint, so those payments are clearly timely under the six-year period for bringing claims for fraud or misrepresentation. With respect to payments that SKAT made more than six years before SKAT sued Burns, the pleading does not show when SKAT knew or should have known of Burns' concealed role in the fraud, and therefore does not establish that any such claim is time-barred. Similarly, the pleading does not show when SKAT's restitution claims accrued because it does not show when Burns was unjustly enriched by SKAT's payments of the Raubritter plan's fraudulent refunds. To the extent that any of these claims accrued more than six years before

SKAT amended its pleading, the limitations period should be equitably tolled based on the self-concealing nature of the defendants' fraudulent scheme.

SKAT's claims likewise are not time-barred under Danish law. SKAT's claims did not accrue under Danish law until SKAT had, or should have had, sufficient knowledge to assess the basis for its claims against Burns. This factual question cannot be determined on this motion because the amended complaint does not plead when SKAT obtained that knowledge.

Moreover, all of the claims are timely in any event, because they all relate back to SKAT's original pleading against the Raubritter plan, both under the federal standard set forth in Federal Rule of Civil Procedure 15(c)(1)(C) and under New York law, made applicable by Rule 15(c)(1)(A). SKAT's claims against Burns clearly arise out of the same fraudulent scheme that SKAT pleaded in its original complaint, Burns received timely notice of SKAT's action, SKAT did not sue Burns in its original complaint because at the time, it did not know the role he played in the fraud, not as a tactical decision, and Burns knew or should have known as much, as the original pleading makes clear SKAT's intent to sue all those responsible for the Raubritter plan's fraud.

Finally, Burns' arguments that the revenue rule requires dismissal and that SKAT failed to plead that he acted with *scienter* are meritless.

## BACKGROUND

This action is one of 184 that SKAT commenced in 11 federal District Courts, now consolidated in this multi-district litigation for pretrial purposes, against U.S. pension plans and related individuals and entities arising from the defendants' submission to SKAT of fraudulent applications for refunds of tax purportedly withheld from dividends that Danish companies issued to their shareholders.

3

**SKAT's original complaint.**

On May 31, 2018, SKAT commenced this action in this Court against defendant Raubritter LLC Pension Plan and its "authorized representative" Adam LaRosa.  SKAT's complaint alleges that over the course of 2013 and 2014, the defendants submitted to SKAT fraudulent tax refund applications, collectively including 26 credit advices, representing falsely that the Raubritter plan owned shares of stock in Danish companies, received dividends on those shares from which tax was withheld, and was entitled to a refund of the purportedly withheld tax under the U.S.-Denmark Tax Treaty.  (Compl. ¶¶ 2-5, 36.)[2]

LaRosa authorized a payment agent to submit the Raubritter plan's fraudulent refund applications to SKAT totaling 59,825,380.94 Danish kroner ("DKK"), and SKAT paid the purported tax refunds to the payment agent on: February 11, 2013 (DKK 2,415,150); April 10, 2013 (DKK 4,540,050); May 13, 2013 (DKK 11,124,000); June 10, 2013 (DKK 5,848,200); October 17, 2013 (DKK 1,447,875); December 20, 2013 (DKK 1,280,847); January 28, 2014 (DKK 1,706,670); May 28, 2014 (DKK 26,041,244); July 3, 2014 (DKK 4,240,889); and August 29, 2014 (DKK 1,180,452).  (*Id.* ¶¶ 11, 38, 40; Am. Compl. ¶ 13.)[3]  The payment agent then distributed the proceeds to other participants in the fraud.  (Compl. ¶ 11.)

SKAT paid the Raubritter plan's refunds because, as was its practice at the time, the applications "included the required supporting documentation."  (*Id.* ¶¶ 30-31.)  As SKAT later discovered, however, the applications were fraudulent because the Raubritter plan did not own the shares of Danish stock it purported to own and thus did not receive the dividends or suffer the claimed withholding tax.  (*Id.* ¶ 4.)  In June 2015, SKAT received information indicating that

---

2.    SKAT's complaint against the Raubritter plan and Adam LaRosa is attached as Exhibit 1 to the Declaration of Marc A. Weinstein, dated November 24, 2020 (the "Weinstein Decl.").

3.    SKAT's amended complaint is attached as Exhibit 2 to the Weinstein Declaration.

certain Malaysian entities "may have" submitted fraudulent refund applications under "the double taxation treaty between Denmark and Malaysia."  (*Id.* ¶ 6.)  SKAT investigated and subsequently discovered that the Malaysian entities had in fact submitted fraudulent applications. (*Id.*)

    During its investigation, SKAT also discovered that the fraudulent scheme of which the Malaysian entities were a part "involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg."  (*Id.* ¶ 7.)  By May 2018, when SKAT commenced this action, SKAT had determined that from 2012 to 2015, fraudulent refund applications had been submitted on behalf of 277 U.S. pension plans or other purportedly tax-exempt entities, including the Raubritter plan.  (*Id.* ¶¶ 5, 32.)

    SKAT's original complaint named as defendants only the Raubritter plan and its authorized representative because, at the time, SKAT did not know who else may have participated in their fraud, and asserted common law claims against both for fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, payment by mistake, and money had and received.  Each of the Raubritter plan's refund applications included four types of documentation: (i) a claim form that identified the Raubritter plan as the claimant that purportedly suffered the claimed withholding tax; (ii) a "credit advice" from the Raubritter plan's purported custodian Solo Capital Partners LLP, purporting to evidence the plan's ownership of the shares, receipt of the dividend, and suffering of the claimed withholding tax; (iii) a power of attorney, signed by Adam LaRosa, authorizing the payment agent to submit the refund application to SKAT; and (iv) a statement from the Internal Revenue Service, purporting to verify the Raubritter plan's tax-exempt status.  (*Id.* ¶¶ 28, 40, 48.)  The Raubritter plan's

refund applications thus did not identify the beneficiary of the plan or other individuals who participated in submitting or otherwise benefitted from the fraudulent applications.

**SKAT's service of the complaint on the Raubritter plan.**

On August 25, 2018, the Court enlarged the time for SKAT to serve process on the Raubritter plan by 90 days, until November 26, 2018, because despite its diligent efforts, SKAT had not been able to effect service on the plan by the deadline provided for in Federal Rule of Civil Procedure 4(m).[4]

On October 29, 2018, SKAT moved the Court to deem sufficient the methods by which SKAT already had attempted to effect service on the Raubritter plan.[5] These methods included hiring a process server to serve the Raubritter plan at the address, shared by defendant Burns, listed in the plan's fraudulent refund applications, mailing service to that same address, and requesting that counsel for Adam LaRosa, the plan's authorized representative, accept service on the plan's behalf.[6] In addition, SKAT retained an investigation firm to search online databases for information about the Raubritter plan.[7] This investigation revealed that on October 2, 2013, defendant Burns, as "Authorized Person," changed the name of Raubritter LLC, the plan's sponsoring company, to Heartland Family Group, LLC, and two addresses for the registered agent of Heartland, to which SKAT mailed service.[8] On November 20, 2018, the Court granted

---

4.    Order granting Letter Mot. for Extension of Time, No. 18-cv-04833-LAK, ECF No. 19.

5.    Not. of Mot. to Approve Alternative Service, No. 18-cv-04833-LAK, ECF No. 27.

6.    Mem. of Law in Supp. of Pl. SKAT's Mot. to Approve Alternative Service, No. 18-cv-04833-LAK, ECF No. 28, at 2, 3.

7.    *Id.* at 4-5.

8.    *Id.*; Decl. of Sarah L. Cave, Ex. 11, No. 18-cv-04833-LAK, ECF No. 29-11, at 3.

SKAT's motion, "deem[ing] good and effective service" SKAT's "efforts to serve Defendant Raubritter to date."[9]

**Defendants' motion to dismiss the original complaints.**

On August 15, 2018, before this case was consolidated in this multi-district litigation, the defendants in SKAT's 49 New York actions then-pending before this Court, including Adam LaRosa in this action, moved to dismiss SKAT's complaints.[10]  The New York defendants argued in part that (i) all SKAT's claims are barred by the revenue rule because they seek to recover purported tax refunds paid by SKAT (*id.* at 6-19); and (ii) SKAT's claims for fraud and aiding and abetting fraud should be dismissed because SKAT failed to allege sufficiently the defendants' "knowledge and intent."  (*Id.* at 19-23.)

**The Court denied defendants' motion to dismiss.**

On January 9, 2019, the Court issued its decision denying the New York defendants' motion to dismiss in its entirety.[11]  The Court rejected defendants' argument that the revenue rule requires dismissal of the claims because if SKAT "can prove that the defendants never in fact owned the relevant Danish stocks . . . the revenue rule would not apply because the substance of the claims would be for garden variety commercial fraud."[12]  The Court also rejected the defendants' *scienter* argument, holding that, with respect to all defendants, SKAT alleged

---

9.  Order Granting in Part and Denying in Part Pl. SKAT's Mot. to Approve Alternative Service, No. 18-cv-04833-LAK, ECF No. 33, at 2.

10.  *See* Consol. Defs. Mem. of Law Supp. Their Joint Mot. to Dismiss Compls. Pursuant to Fed. R. Civ. P 12(b)(1), 12(b)(6) and 9(b), No. 18-cv-4047-LAK, ECF No. 35.

11.  *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019).

12.  *Id.* at 308.

sufficiently "motive and opportunity to commit fraud" and "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[13]

**SKAT's motion to amend its complaints.**

On March 27, 2020, SKAT filed its motion to amend its complaints in the 184 actions comprising this multi-district litigation, including in its action against the Raubritter plan.[14] SKAT sought leave to amend to (i) "name as defendants in certain cases additional U.S.-domiciled entities and individuals SKAT has now identified as participating in the fraudulent scheme," and (ii) allege in all of its cases that in addition to defendants' fraudulent representations, identified in the original complaints, that the pension plans owned shares of Danish stock and received dividends on those shares from which tax was withheld, "the defendants also misrepresented to SKAT that the plans met the requirements in the tax treaty between the United States and Denmark to be entitled to refunds in the first place." (*Id.* at 1.)

SKAT requested leave to add defendant Burns as a defendant in this action because SKAT had "confirmed through discovery" that he was "the sole participant" in the Raubritter plan. (*Id.* at 5.) SKAT also requested leave to add Richard Markowitz and John van Merkensteijn as defendants in this action because "during discovery" SKAT "learned" that they entered into a partnership agreement with Burns (on behalf of the Raubritter plan) pursuant to which they ultimately "received the large majority of the pension plan's fraudulent proceeds." (*Id.* at 3.) On April 13, 2020, the Court granted SKAT's motion.[15]

---

13. *Id.* at 323-24 (internal quotation omitted). On September 12, 2019, SKAT voluntarily dismissed its claims against Adam LaRosa. Stipulation of Partial Voluntary Dismissal pursuant to F.R.C.P. 41(a)(1)(A)(ii), No. 18-cv-04833-LAK, ECF No. 63.

14. Pl. Skatteforvaltningen's Mem. of Law Supp. Mot. for Leave to Amend its Compls., No. 18-md-2865, ECF No. 295.

15. Order, No. 18-md-2865, ECF No. 317.

**SKAT's amended complaint.**

On April 27, 2020, SKAT filed its amended complaint in this action, naming Burns as a defendant and asserting claims against him for fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, payment by mistake, and money had and received.[16]

SKAT's amended pleading alleges that Burns controlled the Raubritter plan "and used this control to commit the fraud on SKAT."  (Am. Compl. ¶ 48.)  Burns signed the "Certificate of Formation" for Raubritter LLC, the plan's sponsor, in August 2012, creating the LLC "less than five months before Defendant Raubritter submitted its first refund claims to SKAT."  (*Id.* ¶ 49.)  Raubritter LLC was a "shell company" that "conducted no trade or business and had no employees," and the Raubritter plan it sponsored was "a sham entity . . . . created solely for the purpose of submitting false refund claims to SKAT."  (*Id.* ¶ 42.)[17]  Burns was the "sole participant" in the Raubritter plan, which used Burns' address in its fraudulent refund applications.  (*Id.* ¶¶ 18, 48.)  Further, Burns signed on the plan's behalf the "General Partnership Agreement of the Raubritter General Partnership," under which defendants Markowitz and van Merkensteijn, and the plan's other partners, ultimately were to receive "the lion's share" of the fraudulent refunds.  (*Id.* ¶¶ 52-53.)

## LEGAL STANDARD

Burns moves to dismiss pursuant to Rule 12(b)(1), presumably because he argues that the revenue rule deprives the Court of jurisdiction to hear SKAT's claims.  As the Court explained in denying the first motion to dismiss on that ground, however, it is not clear that "the defendants'

---

16.  SKAT's amended complaint also added Markowitz and van Merkensteijn as defendants.

17.  For these and other reasons, SKAT alleges that in addition to falsely representing that the Raubritter plan owned shares of Danish stock and suffered withholding tax on dividends issued on those shares, the defendants' refund applications "were also fraudulent because" they "falsely represented that" the Raubritter plan "met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends."  (*See, e.g.*, *id.* ¶ 4.)

premise here is correct." *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 309 n.24

(S.D.N.Y. 2019).  In any event, Burns' argument fails (Section IV, *infra*) "regardless of whether

the revenue rule is appropriately invoked under Rule 12(b)(1) or 12(b)(6)." *Id.*

On a Rule 12(b)(6) motion to dismiss, all of the complaint's factual allegations are

accepted as true and all reasonable inferences are drawn in the plaintiff's favor, *see Ganino v.*

*Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000), including "inferences from the acts alleged

that defeat any affirmative defense asserted by the defendant." *Outhouse PR, LLC v. Northstar*

*Travel Media, LLC*, No. 19 Civ. 5979 (NRB), 2020 WL 2512092, at *4 (S.D.N.Y. May 15,

2020).  A complaint should not be dismissed if it contains sufficient factual allegations that,

"accepted as true, state a claim" for "relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plausibility "is not

akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that

a defendant has acted unlawfully." *Id.* (internal quotation omitted).

With respect to fraud claims, while the circumstances constituting the fraud must be

stated "with particularity," the "intent, knowledge, and other conditions of a person's mind" may

be "alleged generally." Fed. R. Civ. P. 9(b).

The party raising an issue of foreign law bears the burden of "proving [the] foreign law to

enable" the Court's "application of it." *Sea Trade Maritime Corp. v. Coutsodontis*, No. 09 Civ.

488(BSJ)(HBP), 2012 WL 6097726, at *3 (S.D.N.Y. Dec. 4, 2012).

## <u>ARGUMENT</u>

### I.    <u>SKAT'S CLAIMS ARE NOT TIME-BARRED.</u>

Burns argues that all SKAT's claims against him should be dismissed as time-barred

under New York's limitations period or the limitations period supplied by Danish law, made

applicable by New York's borrowing statute.  (Br. 5-11.)[18]  But the statute of limitations is an

affirmative defense on which the defendant bears the burden of proof.  *See Bano v. Union*

*Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) ("statute of limitations is normally an

affirmative defense on which the defendant has the burden of proof" (internal citation omitted)).

On this Rule 12(b)(6) motion, SKAT's claims "may be dismissed as time-barred 'only if

[the] complaint clearly shows the claim is out of time.'"  *Childers v. New York & Presbyterian*

*Hosp.*, 36 F. Supp. 3d 292, 301 (S.D.N.Y. 2014) (quoting *Harris v. City of New York*, 186 F.3d

243, 250 (2d Cir. 1999)).  SKAT had no obligation "to anticipate" defendant Burns' "potential

affirmative defenses, such as the statute of limitations," in its pleading or "to affirmatively plead

facts in avoidance of such defenses."  *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

SKAT's amended pleading does not establish that any of its claims against Burns is out

of time under either New York or Danish law because in each case, the claim was filed within

the applicable limitations period or a discovery or tolling rule applies.

A.    **SKAT's claims are not time-barred under New York law.**

Under New York law, the limitations period for SKAT's fraud, aiding and abetting fraud,

and negligent misrepresentation claims is "the greater of six years from the date the cause of

action accrued or two years from the time" that SKAT "discovered the fraud, or could with

reasonable diligence have discovered it."  CPLR § 213(8); *see Von Hoffman v. Prudential Ins.*

*Co. of Am.*, 202 F. Supp. 2d 252, 263 (S.D.N.Y. 2002) ("In New York, a claim for negligent

misrepresentation based on the same facts as a claim for fraud is governed by the six-year statute

---

18.  New York's borrowing statute provides that "[a]n action based upon a cause of action accruing without the state
cannot be commenced after the expiration of the time limited by the laws of either the state or the place without
the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident
of the state the time limited by the laws of the state shall apply."  CPLR § 202.  For purposes of the borrowing
statute, SKAT's claims accrued in Denmark, the "place where" SKAT "resides and sustain[ed] the economic
impact of" defendants' fraud.  *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999).

of limitation for fraud under CPLR § 213(8).").  The limitations period for SKAT's claims for

unjust enrichment, money had and received, and payment by mistake is similarly six years.

CPLR § 213(1) (six-year limitations period for "an action for which no limitation is specifically

prescribed by law").

> **1.      SKAT's fraud, aiding and abetting fraud, and negligent misrepresentation claims are not time-barred.**

In each instance, CPLR section 213(8)'s six-year limitation period applicable to SKAT's

fraud, aiding and abetting fraud, and negligent misrepresentation claims began to run when

SKAT paid the Raubritter plan's respective fraudulent refund to the plan's payment agent.  *See,*

*e.g.*, *New York City Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 85 (1st Dep't 2000)

("a cause of action for fraud cannot accrue until every element of the claim, including injury, can

truthfully be alleged").  SKAT's claims against Burns arising from the Raubritter plan's

fraudulent refunds paid on May 28, July 3, and August 29, 2014, therefore are timely because

each accrued less than six years before SKAT sued Burns on April 27, 2020.  (Am. Compl.

¶ 47.)

Burns' argument that SKAT's claims arising from the remaining refunds are time-barred

fails because the pleading does not clearly show SKAT discovered or reasonably should have

discovered Burns' fraud more than two years before SKAT filed its amended complaint.  (Br. 8-

11.)  The two-year discovery period runs from the time when "the plaintiff possessed knowledge

of facts from which he could reasonably have inferred the fraud."  *K&E Trading & Shipping,*

*Inc. v. Radmar Trading Corp.*, 174 A.D.2d 346, 347 (1st Dep't 1991) ("mere suspicion will not

suffice as a ground for imputing knowledge of the fraud").  "Where it does not conclusively

appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred,

a complaint should not be dismissed on motion and the question should be left to the trier of the

facts." *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009) (internal quotation omitted); *cf. Adams v. Deutsche Bank AG*, No. 11 Civ. 1893 (RJS), 2012 WL 12884365, at *3 (S.D.N.Y. Sep. 24, 2012) ("A complaint should be dismissed where it conclusively appears that the plaintiff has knowledge of facts which should have caused her to inquire and discover the alleged fraud." (internal quotation omitted)).

"The proper focus in determining whether" SKAT's claims against Burns are "timely is not, as defendant [Burns] suggests, on the date of [SKAT's] actual or imputed knowledge of the general fraudulent scheme." *AE Liquidation Corp. v. Segre*, No. 96 CIV. 0889 CSH, 2000 WL 204525, at *7 (S.D.N.Y. Feb. 18, 2000). "Rather, the controlling date is the date on which [SKAT] had or should reasonably have had knowledge of sufficient facts to suggest [Burns'] probable involvement in that fraudulent scheme." *Id.* at *7-8 (collecting cases that "lead inexorably to the conclusion that the two-year discovery period does not always run from the same date for all defendants involved in the same fraud"). SKAT's pleading does not conclusively establish when SKAT knew or reasonably should have known about Burns' participation in the fraud, including that he formed Raubritter LLC as a "shell company" that "conducted no trade or business and had no employees," solely so that the Raubritter plan, "a sham entity," could then submit fraudulent refund applications to SKAT. (Am. Compl. ¶¶ 42, 49.)

For instance, that SKAT knew when it filed its original complaint in May 2018 that "Raubritter's address was 160 Central Park South, 1726, New York, New York 10019" and that SKAT alleged "on information and belief" that "each member [of the plan] is a citizen of a state of the United States,'" (Br. 9; Compl. ¶ 17), does not conclusively establish that SKAT knew or should have known before April 27, 2018 that Burns established Raubritter LLC and the plan for

13

the purpose of submitting fraudulent refund applications and "exerted control over" the plan with respect to the fraudulent refund applications submitted to SKAT.  (Am. Compl. ¶¶ 42, 48.)  And publicly available documents showing Burns as an "Authorized Person" for Raubritter LLC, (Br. 9), did not disclose that Burns was the Raubritter plan's participant.  (Am. Compl. ¶ 48.)

## 2.    SKAT's unjust enrichment, money had and received, and payment by mistake claims are not time-barred.

SKAT's claims against Burns for unjust enrichment, money had and received and payment by mistake accrued, and the six-year limitations period began to run, "upon the occurrence of the wrongful act giving rise to a duty of restitution," or, in other words, when Burns was "unjustly enrich[ed]."  *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 520 (2d Cir. 2001) (limitations period began upon "FDIC's *payment of interest* to itself" because "mere *accrual of interest*" did "not unjustly enrich the FDIC nor d[id] it *accrue the cause of action*").[19]

SKAT's pleading does not allege, because SKAT does not know, the dates when Burns was unjustly enriched by SKAT's payments of the Raubritter plan's fraudulent refunds.  Rather, the pleading alleges the dates when SKAT made "the payments to the" Raubritter plan's "Payment Agent[]," who then "distributed the proceeds to other participants in the fraud" on dates unknown to SKAT.  (Am. Compl. ¶ 11.)  SKAT's pleading thus does not clearly show that any of its restitution claims against Burns accrued before April 27, 2014, and Burns' motion to dismiss them on the face of that pleading should be denied.  *See Harris*, 186 F.3d at 250 ("dismissal is appropriate only if a complaint clearly shows the claim is out of time").

---

19.  *See also Indovino v. Tassinari*, No. CV-05-4167 JS AKT, 2006 WL 2505232, at *4 (E.D.N.Y. Aug. 28, 2006) ("A cause of action for monies had and received accrues at the same time as a claim for unjust enrichment.").

Finally, to the extent that any of SKAT's restitution claims against Burns accrued before April 27, 2014, equitable tolling applies. Under New York law, "[e]quitable tolling applies where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action." *Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014). The doctrine may apply where the plaintiff "plausibly allege[s] . . . that the wrong itself was of such a nature as to be self-concealing." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 318 (S.D.N.Y. 2013) (internal quotation omitted). Where the defendant's fraudulent scheme itself "require[d] affirmative acts of concealment, the plaintiffs in those cases do not need to show additional independent affirmative steps of concealment" for the doctrine to apply. *Vincent v. Money Store*, 304 F.R.D. 446, 459 (S.D.N.Y. 2015) (internal quotation omitted).

SKAT's pleading plausibly alleges a fraudulent scheme by the defendants, including Burns, that was self-concealing in nature and included repeated affirmative acts of concealment by the defendants in representing falsely that the Raubritter plan suffered withholding tax and was entitled to a tax refund under the U.S.-Denmark tax treaty. (*See, e.g.*, Am. Compl. ¶ 4.) Accordingly, the limitations period with respect to SKAT's restitution claims "should, at a minimum, be equitably tolled for the period" from accrual until June 2015, when SKAT first received information indicating that fraudulent refund applications may have been submitted under the Denmark-Malaysia tax treaty. *Indovino*, 2006 WL 2505232 at *5. "Excluding this time from the six-year limitations period calculation," SKAT's claims are timely. *Id.* (applying equitable tolling doctrine to claims for unjust enrichment and money had and received).

### B.    SKAT's claims are not time-barred under Danish law.

Nor are SKAT's claims against Burns untimely under Danish law. (Br. 11.) In "borrowing" Denmark's "statute of limitations under CPLR 202," the Court "import[s]" Denmark's "limitations period, along with the extension and tolls applied in" Denmark, "so that

the *entire* foreign statute of limitations . . . applies, and not merely its period." *Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 34 N.Y.3d 327, 339 (2019) (internal quotation omitted).

Under the Danish Limitations Act, the limitations period under Danish law for all SKAT's claims against Burns is three years. (Declaration of Mads Bryde Andersen, dated November 23, 2020 ("Andersen Decl."), ¶¶ 21-23.)[20] Importantly, however, the Act provides that where the plaintiff is unaware of its claim, including the role the defendant played, the three-year limitation period does not begin to run until "the claimant *became aware* or should have become aware of its claim." (*Id.* ¶ 29.) Under Danish law, knowledge of the claim means that the plaintiff has the basis to assess its claims against the defendants, "which includes (but is not limited to) knowing what is necessary to plead a claim"—that the plaintiff has been damaged by the tortious conduct of others, the identity of the defendant and the defendant's role in the misconduct. (*Id.* ¶¶ 35-36.)

Burns falls far short of meeting his burden "to prove" Danish limitations law "to enable" the Court's "application of it," *Sea Trade Maritime Corp.*, 2012 WL 6097726, at *3, in arguing without explanation that "SKAT's claims accrued in 2015 and expired three years later, in 2018." (Br. 11.) SKAT's amended complaint does not show when its claims against Burns accrued under Danish law. (Andersen Decl. ¶¶ 43-45.) SKAT's allegations that it received information in June 2015 indicating that fraudulent refund applications may have been submitted pursuant to the Denmark-Malaysia tax treaty and that it stopped paying refund applications in August 2015 do not establish that the limitations period for SKAT's claims against Burns began

---

20. Under Danish law, claims that are "of a *proprietary* nature fall outside the" Danish Limitations Act and are not subject to any limitations period. (*Id*. ¶ 15.) Proprietary claims include those to recover "monetary sums that can be individualized," such as stolen money held in a separate account and not commingled with other funds. (*Id.* ¶ 17.) It is not possible to determine based on the facts alleged in the Amended Complaint whether any of SKAT's claims against Burns are proprietary in nature and thus not subject to any statute of limitations. (*Id.* ¶ 18.)

to run at either of those times.  (*Id.* ¶ 47.)  This is because the limitations period did not begin to

run until SKAT had, or should have had, sufficient knowledge to assess the basis for its claims

against Burns—the mere discovery that persons unknown may have committed fraud is

insufficient.  (*Id.* ¶¶ 47-48.)[21]

## II.    SKAT'S CLAIMS AGAINST BURNS RELATE  BACK TO ITS ORIGINAL COMPLAINT.

In any event, all SKAT's claims relate back to SKAT's original complaint, and are

therefore timely.  Under Federal Rule of Civil Procedure 15(c), SKAT's claims against Burns

relate back if either (i) "the law that provides the applicable statute of limitations allows relation

back," or (ii) they meet the federal standard for relation back set forth in Rule 15(c)(1)(C).  *See*

Fed. R. Civ. P. 15(c)(1)(A) & (C).  SKAT's claims against Burns relate back under both the

federal standard and New York law.

### A.    SKAT's claims against Burns relate back under Rule 15(c)(1)(C).

Under Rule 15(c)(1)(C)'s federal standard, an amended pleading asserting a claim against

a new defendant relates back to the original pleading when (i) the "amendment asserts a claim . .

. that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in

---

21.  Burns misstates Danish law in asserting that the three-year limitations period "may be subject to a one-year tolling or suspension of the limitations period where the plaintiff is 'unaware of the debt.'"  (Br. 11.)  Burns conflates the general principle embodied in Section 3(2) of the Danish Limitations Act that the limitations period does not begin to run until the creditor received knowledge or ought to have received knowledge of the claim or the debtor with the rule in Section 14(1) of the Act, which applies in very different circumstances where a plaintiff already knows about its claim and the identity and role of the defendant, but simply cannot find the defendant.  (Andersen Decl. ¶ 49.)  The rule in Section 14(1) applies where a claim has accrued and where the creditor has been unable to otherwise suspend the limitations period, such as by commencing legal action, because of unawareness of the debtor's whereabouts or because of an obstacle which is not caused by the creditor's circumstances.  (*Id.*)  In such special circumstances, the earliest the limitations period may end is one year after the creditor obtained, or should have obtained, knowledge of the debtor's whereabouts and one year after the obstacle ceased to exist, respectively.  (*Id.* ¶ 50.)  The materials Burns cites are not to the contrary.  *See* Weinstein Decl. Ex. 3 at 3 (stating generally that "a creditor's unawareness of a debt may suspend the limitation period"); Ex. 4 at 1 ("The creditor's unawareness of the debt or the debtor may postpone the date at which time begins to run.  Unawareness of the whereabouts of the debtor . . . may also postpone the limitation period for 1 year.").  Where, as here, the creditor (SKAT) is unaware of the debt (SKAT's claims against Burns) or the debtor (Burns), as opposed to simply "the whereabouts of the debtor," the time by which the limitations period may be tolled or suspended is not, as Burns contends, limited to one year.  (Andersen Decl. ¶¶ 51-52.)

the original pleading," and (ii) "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: received such notice of the action that it will not be prejudiced in defending on the merits; and knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ P. 15 (c)(1)(C).

As an initial matter, SKAT's claims against Burns in the amended complaint clearly arise "out of the conduct, transaction, or occurrence" set forth in the original complaint, as its claims arise out of the same fraud "set forth in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation omitted); *accord Abdell v. City of New York*, 759 F. Supp. 2d 450, 454 (S.D.N.Y. 2010) (this requirement is "easily satisfied" where the new defendant "participated in" the same conduct challenged in the original complaint).  Thus, SKAT's original pleading provided Burns with "adequate notice of the matters raised in the amended pleading . . . within the statute of limitations" to the extent the other requirements of the rule are satisfied.  *Slayton*, 460 F.3d at 228 (internal quotation omitted).

Second, Burns received notice of SKAT's actions within the period provided in Rule 4(m) as extended by the Court, so he will not be prejudiced by defending SKAT's actions on the merits. *See Twine v Four Unknown N.Y. Police Officers*, No. 10 Civ. 6622 (DAB)(JLC), 2012 WL 6184014, at *14 (S.D.N.Y. Dec. 12, 2012) (concluding that for relation back, "the Rule 4(m) period expired" at the deadline as extended by the Court for good cause).  During the Rule 4(m) period, SKAT mailed its pleading to the address Burns shared with the Raubritter plan and to the registered agent for Heartland Family Group, LLC, for whom Burns was the "authorized person."  (*See supra,* pg. 5.)  Further, SKAT served its pleading on Adam LaRosa, whom Burns designated as the Raubritter plan's authorized representative, and asked LaRosa's counsel to

18

accept service on behalf of Burns. *Cf. S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10 Civ. 7547 (KMW)(RLE), 2013 WL 1234937, at *5 (S.D.N.Y. Mar. 26, 2013) ("evidence of notice [was] further bolstered by the new Defendants' close relationship to the original Defendant").    Even absent actual notice, the notice SKAT provided within the Rule 4(m) period to the Raubritter plan, over which Burns exerted control as the plan's sole participant, and to the plan's agent LaRosa may be imputed to Burns. *See Deaner v. Solomon*, No. 02 Civ. 8772 (LAK), 2003 WL 1565949, *1 (S.D.N.Y. Mar. 12, 2003) (rejecting as "absurd" the principal's notice argument because agent's "knowledge of the suit is imputed" to the principal); c*f. Perez v. MVNBC Corp.*, No. 15 Civ. 6127 (ER), 2016 WL 6996179, at *7 (S.D.N.Y. Nov. 29, 2016) ("Where two parties are closely related in their business activities or linked in their corporate structure, such as by shared common officers, knowledge by one party can be imputed to the related party.").

Finally, Burns "knew or should have known" that SKAT's action "would have been brought against" him, "but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). As the Supreme Court explained in *Krupski v. Costa Crociere S.p.A.*, if a plaintiff sues "party B instead of party A" because it "misunderstand[s] the roles that" each "played in the 'conduct, transaction, or occurrence' giving rise to" the claim, this constitutes "a mistake concerning the proper party's identity" within the meaning of Rule 15(c). 560 U.S. 538, 549, 130 S. Ct. 2485, 2494 (2010). Following *Krupski*, district courts in this Circuit have recognized "that a mistake 'concerning the proper party's identity' under Rule 15(c) includes," as is the case here, "lack of knowledge regarding the conduct or liability of that party." *Abdell*, 759 F. Supp. 2d at 457; *accord S.A.R.L. Galerie Enrico Navarra*, 2013 WL 1234937 at *6 ("The Court agrees with other courts that have held . . . that Rule 15(c) can be satisfied where the

19

plaintiff lacked knowledge regarding the conduct or liability of the newly added party." (internal

quotation omitted)); *but see In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y.

2014) (no "'mistake concerning' the proper party's 'identity'" where "plaintiff has sued the right

defendant" and seeks to add another defendant).

SKAT did not, as Burns suggests, make a "deliberate choice" not to sue him in 2018.

(Br. 13.)  SKAT did not sue him in its original complaint because it did not know the role he

played in the fraud.  Burns "should have known that, but for" SKAT's "misunderstanding of"

Burns' "role in" the fraud, Burns "would have been sued . . . along with" the Raubritter plan and

its agent LaRosa.  *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 289 F.R.D. 401, 406

(S.D.N.Y. 2013).  "The original complaint makes clear that" SKAT "intended to sue . . . those

responsible for" the plan's fraudulent refund applications.  *Id*. at 406-07.

## B.  SKAT's claims against Burns relate back under New York law.

The claims against Burns also relate back to SKAT's original complaint under New

York's relation back doctrine, considered "more generous" than the pre-*Krupski* federal

standard.  *S.A.R.L. Galerie Enrico Navarra*, 2013 WL 1234937, at *6 (quoting *Pape v. Bd of

Educ. of the Wappingers Cent. Sch. Dist.*, No. 07-CV-8828 (KMK), 2009 WL 3151200, at *15

(S.D.N.Y. Sep. 29, 2009)).[22]  Under New York law, an amended pleading adding a new

defendant relates back when (i) "both claims arose out of [the] same conduct, transaction or

occurrence;" (ii) "the new party is united in interest with the original defendant, and by reason of

that relationship can be charged with such notice of the institution of the action that he will not

be prejudiced in maintaining its defense on the merits;" and (iii) "the new party knew or should

have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the

---

22.  Before the Supreme Court's decision in *Krupski*, "the existing Second Circuit rule" was "that lack of knowledge
d[id] not constitute a 'mistake' for relation back purposes."  *Abdell*, 759 F. Supp. 2d at 456.

action would have been brought against that party as well." *Xavier v. RY Mgmt. Co.*, 45 A.D.3d 677, 678 (2d Dep't 2007). "The linchpin of the relation-back doctrine is whether the new defendant had notice within the applicable limitations period." *Rivera v. Wyckoff Heights Med. Ctr.*, 175 A.D.3d 522, 524 (2d Dep't 2019) (internal quotation omitted).

First, for the same reason described above, SKAT's claims against Burns clearly arise out of the same "conduct, transaction, or occurrence" set forth in its original complaint, and so provided Burns adequate notice of SKAT's claims against him. *See, e.g.*, *Yaniv v. Taub*, 256 A.D.2d 273, 275 (1st Dep't 1998) (claims against professional services corporation arising from employee's conduct set forth in original complaint related back).

Second, Burns and the Raubritter plan are "united in interest with respect to the actionable wrong," such that Burns will not be prejudiced in defending on the merits, because SKAT seeks to hold Burns liable for the Raubritter plan's fraudulent refund applications as the plan's *alter ego*. *Id.* Burns, as the sole participant in the Raubritter plan and creator of its sponsoring company, may be charged with notice of SKAT's actions. *Cf. id.* ("because Dr. Weg is the principal of the corporation, his knowledge of the pendency of this action . . . is imputed to the corporation he controls").

Finally, "[a]lthough the language of the relation back test under state law mirrors that of Rule 15(c), the 'mistake' requirement under New York law is more forgiving than the [pre-*Krupski*] federal rule." *Mabry v. New York City Dep't of Corr.*, No. 05 Civ. 8133 (JSR)(JCF), 2008 WL 619003, at *6 (S.D.N.Y. Mar. 7, 2008). New York courts "considering" this "third element typically deem dispositive the presence or absence of bad faith on the part[] of the party seeking the amendment," and find "[t]he requirement . . . satisfied if the omission to name the new party in the original complaint was not an attempt to secure some tactical advantage in the

21

litigation." *Beck v. Consol. Rail Corp.*. 394 F. Supp. 2d 632, 640 (S.D.N.Y. 2005) (internal

quotations omitted); *see also Petruzzi v. Purrow*, 180 A.D.3d 1083, 1085 (2d Dep't 2020) ("the

third prong of the test . . . focuses . . . on whether the defendant could have reasonably concluded

that the failure to sue within the limitations period meant that there was no intent to sue that

person at all" (internal quotation omitted)).

For example, in *Haidt v. Kurnath*, the Appellate Division—Fourth Judicial Department

affirmed denial of the defendant's summary judgment motion, finding that the plaintiff satisfied

this requirement by "demonstrating that she did not have sufficient knowledge of defendant's

role" in the alleged medical malpractice, and "her failure to include defendant in the original

complaint was a mistake and not the result of a strategy to obtain a tactical advantage." 86

A.D.3d 935, 936 (4th Dep't 2011) (internal quotation omitted); *see also, e.g.*, *Ramirez v. Elias-*

*Tejada*, 168 A.D.3d 401, 404 (1st Dep't 2019) (plaintiff established mistake by "explain[ing]

that certain important information was not available to him" until after the limitations period

"because of the delay in depositions").[23]  As discussed above, SKAT did not sue Burns in its

original complaint because it did not have sufficient knowledge of his role in the fraud, not to

gain any tactical advantage.

### III.    SKAT PLEADED ITS CLAIMS SUFFICIENTLY.

Burns argues that SKAT's fraud and aiding and abetting fraud claims should be

dismissed because SKAT failed to plead Burns' "fraudulent intent," incorporating by reference

---

23.  On this Rule 12(b)(6) motion, the Court should apply relation back because SKAT's pleading alleges facts that make it plausible that it applies.  *See Twine*, 2012 WL 6184014 at *13 n.12 ("in light of the fact that there has not yet been any discovery in this case, as well as the applicable standard on a Rule 12(b)(6) motion, I consider only whether Twine has stated a plausible basis to conclude that relation back is proper").  In contrast to *Haidth* and *Ramirez*, which were before the courts at the summary judgment stage, SKAT need not at this stage offer evidence to show that the requirements for relation back are met in order to defeat Burns' motion to dismiss.

the same (unsuccessful) argument from the previous motion to dismiss this action.  (Br. 14-15.)[24] But in doing so, Burns fails to explain why the Court's previous holding that SKAT "established a genuine issue of fact with respect to *scienter*" should not apply equally to SKAT's claims against Burns in the amended pleading.  *In re SKAT*, 356 F. Supp. 3d at 325.

As the Court's previous decision shows, SKAT's amended complaint sufficiently alleges with respect to Burns both (i) motive and opportunity to commit fraud, and (ii) strong circumstantial evidence of conscious misbehavior or recklessness.  *Id.* at 323-24.  This is particularly true in light of SKAT's allegations, not included in the original complaint subject to the Court's previous decision, that Burns established the Raubritter plan as "a sham entity," sponsored by "a shell company," just "for the purpose of submitting false refund claims" and that Burns agreed to give away 90 percent of the plan's fraudulent refunds to individuals who were not participants in the plan.  (Am. Compl. ¶¶ 42, 53.)

Thus, SKAT "sufficiently allege[d] strong circumstantial evidence of conscious misbehavior or recklessness" with respect to Burns, as "the most plausible inference one could draw from the facts is that [he] knew exactly what [he was] doing and that what [he was] doing was fraudulent."  *In re SKAT*, 356 F. Supp. 3d at 324.  Further, "the complaint[] clearly allege[s] motive by stating, for example, that the" Raubritter plan "claimed refunds in the amount of" $9.3 million "and received payments from SKAT on those claims."  *Id.*  And "[t]he complaint[]

---

24. Burns also argues that SKAT's negligent misrepresentation claim should be dismissed for this reason, but to state a claim for negligent misrepresentation, SKAT need allege only that Burns "negligently provided incorrect information," not that he acted with fraudulent intent.  *LBBW Luxembourg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014)

adequately allege[s] that" Burns "had the requisite opportunity to commit the fraud by describing [his] role in the scheme." *Id.*[25]

## IV.    SKAT'S CLAIMS ARE NOT BARRED BY THE REVENUE RULE.

Finally, Burns argues that the revenue rule bars SKAT's claims, again incorporating by reference the argument from the first motion to dismiss this action.  (Br. 15.)  As the Court explained in rejecting this argument the first time, if SKAT "can prove that the" Raubritter plan "never in fact owned the relevant Danish stocks," as is alleged, then "the revenue rule would not apply because the substance of the claims would be for garden variety commercial fraud."  *In re SKAT*, 356 F. Supp. 3d at 308.  The Court's ruling on this issue is the law of the case and Burns provides no reason to derogate from it, let alone any that is "cogent and compelling."  *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).

---

25. Nor are SKAT's allegations that Burns controlled the plan "conclusory."  (Br. 15.)  SKAT alleges that Burns, the sole participant in the Raubritter plan, created Raubritter LLC, a "shell company" that "conducted no trade or business and had no employees," less than five months before the plan submitted its first fraudulent refund application to SKAT, which listed Burns' home address as the plan's address.  (Am. Compl. ¶¶ 42, 48, 49.)  SKAT thus pleaded sufficiently Burns' liability for the plan's fraud under the *alter ego* doctrine because "[i]t is reasonable to infer from these allegations that" Burns "controlled the very existence of" Raubritter LLC "and indeed that he created [it] for the purpose of receiving tax refunds."  *In re SKAT*, 356 F. Supp. 3d at 323.  "This inference, coupled with the allegation that" Burns' "home address is the same as the address listed by" the Raubritter plan in its refund applications, "permits a second inference: [Burns] controlled the" Raubritter plan itself.  *Id.*

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court deny

defendant Burns' motions to dismiss the amended complaint.

Dated:  New York, New York
        November 24, 2020

                                   HUGHES HUBBARD & REED LLP

                                   By:   /s/ Marc A. Weinstein
                                     William R. Maguire
                                     Marc A. Weinstein
                                     Neil J. Oxford
        One Battery Park Plaza
        New York, New York 10004-1482
        Telephone: (212) 837-6000
        Fax:  (212) 422-4726
        bill.maguire@hugheshubbard.com
        marc.weinstein@hugheshubbard.com
        neil.oxford@hugheshubbard.com

        *Counsel for Plaintiff Skatteforvaltningen*
        *(Customs and Tax Administration of the*
        *Kingdom of Denmark)*