**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND
SCHEME LITIGATION

Consolidated Multidistrict Action

Docket No. 1:18-md-02865-LAK

SKATTEFORVALTNINGEN,

                Petitioner,

      v.

RAUBRITTER LLC PENSION PLAN, ALEXANDER
BURNS, RICHARD MARKOWTIZ, AND JOHN VAN
MERKENSTEIJN,

              Defendants.

This document relates to:
1:18-cv-04833-LAK

---

## DEFENDANT ALEXANDER BURNS'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS SKAT'S AMENDED COMPLAINT

Michael Tremonte
Anna Estevao
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Email: mtremonte@shertremonte.com

*Attorneys for Defendant Alexander Burns*

New York, New York
October 27, 2020

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT .............................................................................................................................. 5

I.     SKAT'S CLAIMS AGAINST DEFENDANT BURNS ARE TIME BARRED.................. 5

       A.     Applicable law ......................................................................................................... 5

       B.     SKAT's Claims Are Untimely Under New York Law .................................................. 7

       C.     SKAT's Claims Are Untimely Under Danish Law ..................................................... 11

II.    SKAT'S CLAIMS DO NOT RELATE BACK TO THE ORIGINAL COMPLAINT
       UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(C)(1)(C) .................................. 12

III.   SKAT FAILS TO PLEAD ITS FRAUD-BASED CLAIMS AGAINST BURNS
       WITH PARTICULARITY ............................................................................................ 14

IV.    SKAT'S CLAIMS MUST BE DISMISSED BECAUSE THE REVENUE
       RULE BARS THIS COURT FROM ASSERTING JURISDICTION................................ 15

CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005)................................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................... 5

*Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
  268 F.3d 103 (2d Cir. 2001)................................................................................. 15

*Barrow v. Westhersfield Police Dep't*,
  66 F.3d 466 (2d Cir. 1995).................................................................................. 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................... 5

*Brass v. American Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1992).................................................................................. 6

*Buran v. Coupal*,
  87 N.Y.2d 173 (1995) .......................................................................................... 12

*Calcutti v. SBU, Inc.*,
  224 F. Supp. 2d 691 (S.D.N.Y. 2002)................................................................... 7

*Cantor Fitzgerald Inc. v. Lutnick*,
  313 F.3d 704 (2d Cir. 2002).................................................................................. 6

*Coleman & Co. Sec. v. Giaquinto Family Tr.*,
  236 F. Supp. 2d 288 (S.D.N.Y. 2002).................................................................. 10

*Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*,
  34 N.Y.3d 327 (2019) ........................................................................................... 6

*Ghartey v. St. John's Queens Hosp.*,
  869 F.2d 160 (2d Cir. 1989).................................................................................. 5

*Glob. Fin. Corp. v. Triarc Corp.*,
  93 N.Y.2d 525 (1999) ........................................................................................... 6

*Gutkin v. Siegal*,
  85 A.D.3d 687 (1st Dep't 2011) ...................................................................... 8, 10

*Harris v. City of N.Y.*,
    186 F.3d 243 (2d Cir. 1999).................................................................................. 6

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013).................................................................................. 13

*In re Coudert Bros. LLP*,
    673 F.3d 180 (2d Cir. 2012).................................................................................. 6

*Ins. Co. of N. Am. v. ABB Power Generation, Inc.*,
    91 N.Y.2d 180 (1997) ........................................................................................... 6

*K&E Trading & Shipping v. Radmar Trading Corp.*,
    174 A.D.2d 346 (1st Dep't 1991) ......................................................................... 7

*Krupski v. Costa Crociere S.p.A.*,
    560 U.S. 538 (2010) ............................................................................................. 13

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)............................................................................ 14, 15

*Sands Bros. Venture Capital II, LLC v. Metro. Paper Recycling, Inc.*,
    67 Misc. 3d 1216(A) (N.Y. Sup. Ct. 2020)......................................................... 8

*Schiavone v. Fortune*,
    477 U.S. 21 (1986)............................................................................................... 12

*Scott v. Vill. of Spring Valley*,
    No. 11-cv-4167 (NSR), 2013 WL 5807405 (S.D.N.Y. Oct. 28, 2013) ............ 12

*Sejin Precision Indus. Co. v. Citibank, N.A.*,
    726 F. App'x 27 (2d Cir. 2018) .......................................................................... 11

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008)................................................................................ 11

*Williams H. McGee & Co. v. M/V Ming Plenty*,
    164 F.R.D. 601 (S.D.N.Y. 1995) ........................................................................ 12

*Williams-Guillaume v. Bank of Am., N.A.*,
    130 A.D.3d 1016 (2d Dep't 2015) ....................................................................... 7

**Rules**

C.P.L.R. § 202 ........................................................................................................ 6

C.P.L.R. § 203(g) .................................................................................................... 8

C.P.L.R. § 213(1) .................................................................................................... 7

C.P.L.R. § 213(8) .................................................................................................... 7

Federal Rule of Civil Procedure 9(b) ............................................................... 14, 15

Federal Rule of Civil Procedure 12(b) ................................................................... 5

Federal Rule of Civil Procedure 15(c) ...................................................... 2, 12, 13, 14

**Other Authorities**

Bang & Regnarsen Advokatfirma – Denmark, The New Danish Limitations Act,
    LexUniversal (Mar. 31, 2008) ......................................................................... 11

Litigation & Enforcement in Denmark: Overview,
    Practical Law Country Q&A 0-594-0727 ....................................................... 11

Defendant Alexander Burns ("Burns" or "Defendant"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his Motion to Dismiss the Amended Complaint[1] filed by Plaintiff Skatteforvaltningen ("SKAT" or "Plaintiff").

## PRELIMINARY STATEMENT

Five years after learning of the alleged scheme to unlawfully withhold tax refund applications, SKAT belatedly sued Alexander Burns, an individual known to SKAT long before it filed this litigation. Rather than investigate the claimants at the center of the scheme within a reasonable time, SKAT sat on its hands for years, letting all applicable statutes of limitations pass. Only now, at this late stage, over two years after it easily could have learned Burns's identity from publicly available documents, and a year and a half after it *knew* about Burns yet chose not to add him as a defendant, does SKAT attempt to widen its net. It cannot do so.

Under New York's borrowing statute, SKAT's claims must meet the limitations period in both New York and Denmark, the place where the claims accrued. It cannot do either. Under New York law, the majority of the transactions fall outside the applicable six-year limitations period. Nor can SKAT claim that it only recently discovered its claims against Burns, as any reasonable person in SKAT's shoes would have investigated the identity of the sole member of Defendant Raubritter Pension Plan LLC. Had it done so, it quickly would have discovered Burns's name on publicly available documents. Even if the claims were timely under the New York discovery rule, they must still be dismissed because they fall outside the three-year limitations period mandated by the Danish Limitations Act.

---

[1]   The "Amended Complaint" or "Am. Compl." refers to the refers to the amended complaint filed as document number 82 on April 27, 2020 on the civil docket No. 18-cv-04833 (LAK) (S.D.N.Y.). Unless otherwise noted, citations to "ECF #" refer to documents filed on civil docket No. 18-cv-04833 (LAK) (S.D.N.Y.).

Finally, the claims do not "relate back" under Federal Rule of Civil Procedure 15(c). To invoke Rule 15(c), SKAT must establish that it had mistakenly sued Defendant Raubritter when it really intended to sue Burns. This is contradicted, however, by all of SKAT's litigation tactics, especially the fact that SKAT did not bring claims against Burns even after it learned his identity in October 2018. SKAT also cannot establish that Burns both knew of the claims against Raubritter back in 2018 and knew that SKAT meant to sue him instead.

Therefore, the claims against Burns are barred by the applicable statutes of limitations. For these and other reasons stated herein, the claims against Burns in the Amended Complaint should be dismissed.

## BACKGROUND

On May 31, 2018, Plaintiff filed this action against Defendants Raubritter LLC Pension Plan ("Raubritter") and Adam LaRosa, alleging claims of fraud and related counts associated with a tax refund scheme that purportedly deceived SKAT into paying withheld dividend tax. *See* ECF #1 ("Orig. Compl."). On June 26, 2018, this case was consolidated for pretrial purposes with the multidistrict litigation under Master Docket Number 18-md-2865-LAK. Nearly two years later, on April 27, 2020 SKAT filed an Amended Complaint adding Alexander Burns, Richard Markowitz, and John Van Merkensteijn as defendants. *See* ECF #82 ("Am. Compl."). The allegations are summarized as follows.

Danish companies are required to withhold 27% of the dividend distributed to shareholders. Am Compl. ¶ 22. A treaty between the United states and Denmark provides for the refund of tax withheld on dividend payments to shareholders that are U.S. pension plans, which are exempt from taxation. *Id.* ¶ 24.

Plaintiff SKAT is the Danish agency responsible for assessing and collecting taxes in Denmark and issuing tax refunds to claimants under certain double taxation treaties between Denmark and other counties. *Id.* ¶ 1. According to SKAT's Amended Complaint, Defendants and other entities and individuals participated in a scheme to submit fraudulent applications for tax refunds to SKAT. This involved the entities applying to SKAT for repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. *Id.* ¶¶ 4, 24-25. They did so by appointing agents to apply to SKAT for the refunds, who then submitted the applications on behalf of the claimants and their authorized representatives. *Id.* ¶¶ 5, 28-31. The claimants were identified in the documentation submitted to SKAT. *See id*. ¶¶ 30, 62, 66, 67. Defendant Raubritter was one of 277 pension plans in the United States that allegedly requested and received such tax refunds. *Id.* ¶¶ 5, 35-36.

All of the refund claims made by Defendant Raubritter to SKAT were submitted on the following dates: January 21, 2013; March 19, 2013; April 19, 2013; May 16, 2013; September 20, 2013; December 10, 2013; January 6, 2014; April 17, 2014; May 27, 2014; June 11, 2014; and August 19, 2014. *Id.* ¶ 39. SKAT made payments based on these representations on the following dates: February 11, 2013; April 10, 2013; May 13, 2013; June 10, 2013; October 17, 2013; December 20, 2013; January 28, 2014; May 28, 2014; July 3, 2014; and August 29, 2014. *Id.* ¶ 47.

SKAT claims that it first learned of the alleged scheme to defraud on June 15, 2015 and that it undertook an investigation and subsequently stopped paying tax refunds on August 24, 2015. *Id.* ¶¶ 6, 8.

Nearly three years after that, on May 31, 2018, SKAT filed this lawsuit against Defendant Raubritter and a related individual, Adam LaRosa.[2]  *See* Orig. Compl.  At the time, the scheme was already "under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions," and at least three individuals had already been criminally charged.  Orig. Compl. ¶ 8.  At that time, SKAT was already aware of Raubritter's address at 160 Central Park South, 1726, New York, New York 10019, and that each member of Raubritter was a citizen of the United States.  *Id.* ¶ 17.

SKAT attempted to serve Raubritter by personal service via a process server, who made a single attempt to ring the doorbell and knock on the door of the Central Park South address and received no answer.  ECF #19 at 1.  SKAT moved for and was granted an additional 90 days to serve Raubritter.  *Id.*  On October 29, 2018, SKAT moved for the approval of alternate service, stating that it had "identified the entity Raubritter LLC, which, further research revealed, changed its name to Heartland Manufacturing LLC."  ECF #28 at 4-5; *see also* ECF #29.  In fact, as reflected by the appended exhibit reflecting State of Delaware Certificate of Formation and Certificate of Amendment, the name was changed to Heartland Family Group, LLC on October 2, 2013, and Alexander Burns was listed as the sole authorized representative.  *See* ECF #29 Ex. 11.  SKAT mailed service packages to the addresses for the registered agent of Heartland Family Group, LLC.  ECF #28 at 5.  On November 20, 2018, the Court granted SKAT's motion and deemed the described service as sufficient.  ECF #33.

---

[2]      SKAT also filed dozens of separate actions in various federal district courts against the 180 pension plans and related individuals seeking damages as a result of the tax refunds paid to the Plans, which were eventually consolidated for pretrial purposes with the multidistrict litigation under Master Docket Number 18-md-2865-LAK.

A year and a half later, on March 27, 2020, SKAT moved for leave to amend its complaints in this and the related cases. ECF #76. In doing so, SKAT stated that it sought to amend to "include as defendants the pension plans' participants where SKAT has confirmed through discovery that the individual was either the sole participant, or one of only two participants, in the pension plan," in some cases by adding "the newly identified plan participant as a new defendant." Dkt. No. 19-CV-10713-LAK, ECF #51 at 5. The Court granted SKAT's request, and SKAT filed its Amended Complaints on April 22, 2020.

SKAT's Amended Complaint asserts claims against Defendant Burns for the first time. Its basis for alleging that Burns exerted control over Raubritter is based on two facts: first, that "Raubritter used Defendant Burns' New York home address in its fraudulent refund claims to SKAT," and, second, that Burns "exerted control over Defendant Raubritter as the plan's sole participant." Am. Compl. ¶ 48. Plaintiff brought these claims nearly five years after it learned of the alleged scheme, a year and a half after SKAT had actual knowledge of Burns's identity, and many years after it *could have* learned his identity through publicly available documents.

## ARGUMENT

## I.    SKAT'S CLAIMS AGAINST DEFENDANT BURNS ARE TIME BARRED

### A.    Applicable law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss on statute of limitations grounds is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). A claim may be dismissed on statute of limitation grounds when the "complaint clearly shows the claim

is out of time." *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999). When determining the sufficiency of Plaintiff's claims, the Court may consider "matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1992).

Under New York law,[3] "[w]hen a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999). The underlying purpose of New York's borrowing statute is to "guard[] against forum shopping by out-of-state plaintiffs by mandating use of the *shortest* statute of limitations available." *In re Coudert Bros. LLP*, 673 F.3d 180, 190 (2d Cir. 2012); *accord Ins. Co. of N. Am. v. ABB Power Generation, Inc.*, 91 N.Y.2d 180, 187-88 (1997) ("CPLR 202 requires that a court, when presented with a cause of action accruing outside New York, should apply the limitation period of the foreign jurisdiction if it bars the claim."). To determine the location of accrual, New York courts "have consistently employed the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury—in tort cases involving the interpretation of CPLR 202." *Id.* at 485; *accord Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 34 N.Y.3d 327, 338 (2019) ("We reaffirm that a cause of action accrues at the time and in the place of the injury." (internal quotation marks omitted)). "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Glob. Fin. Corp.*, 93 N.Y.2d at 529.

---

[3]    A federal court sitting in diversity applies the applicable state law to determine the statute of limitations for common law claims. *See Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002).

Here, the injury accrued in Denmark.  SKAT is an "agency of the government of Denmark" and "located at "Østbanegade 123, 2200 København Ø, Denmark."  Am. Compl. ¶ 16. Its address "[d]uring the period material to the events" was "Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark."  *Id.*  SKAT's injury – the payment of allegedly baseless withholding tax refund claims – is purely economic in nature.  These allegations sufficiently establish that SKAT's principal office was in Denmark when the cause of action accrued and the alleged economic damages occurred in Denmark.  Therefore, Plaintiff's claims must meet the statute of limitations periods in both New York and Denmark.

**B.**    **SKAT's Claims Are Untimely Under New York Law**

Under New York law, claims for fraud and aiding and abetting fraud carry a six-year statute of limitations subject to a two-year discovery rule.  *See* C.P.L.R. § 213(8) ("the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.").[4] In other words, an action for fraud must be commenced either within six years of the occurrence of the fraud or within two years of the actual or imputed discovery thereof, whichever is longer." *See K&E Trading & Shipping v. Radmar Trading Corp.*, 174 A.D.2d 346 (1st Dep't 1991).

---

[4]    Likewise, SKAT's claims for payment by mistake, unjust enrichment, money had and received, and negligent misrepresentation are also governed by the six-year statute of limitations. *See* C.P.L.R. § 213(1) (providing a six year limitations period for "an action for which no limitation is specifically prescribed by law"); *see also Williams-Guillaume v. Bank of Am., N.A.*, 130 A.D.3d 1016, 1017 (2d Dep't 2015) ("The cause of action alleging unjust enrichment is governed by the six-year statute of limitations of CPLR 213(1) . . . ."); *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002) ("In New York, a negligent misrepresentation claim that is based on the same factual situation as a fraud claim is subject to a six-year statute of limitations.").

SKAT's claims against Burns largely fall outside the six-year statute of limitations. With three exceptions, the refund claims were submitted and paid out on dates prior to April 27, 2014. *See* Am. Compl. ¶¶ 39, 47. The remaining payments are not timely under New York's discovery rule, which provides that "where the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer." C.P.L.R. § 203(g). "The test as to when fraud should with reasonable diligence have been discovered is an objective one." *Gutkin v. Siegal*, 85 A.D.3d 687, 688 (1st Dep't 2011) (quotation marks omitted). SKAT bears the burden of establishing that it could not have reasonably discovered Burns's involvement in the fraud until after April 2018. *See Sands Bros. Venture Capital II, LLC v. Metro. Paper Recycling, Inc*., 67 Misc. 3d 1216(A), at 6 (N.Y. Sup. Ct. 2020) ("[W]here fraud is alleged more than six years after the actual occurrence thereof, the burden is on the plaintiff . . . of proving that the fraud was not discovered and reasonably could not have been discovered until within two years of the commencement of the action."). It cannot do so.

SKAT's claims against Burns clearly could have been commenced prior to April 27, 2018, more than two years prior to the filing of the Amended Complaint. SKAT first learned of the scheme in June 2015 and had the following *three years* to investigate. Very early on in the investigation, in August 2015, SKAT stopped paying claims for refunds for all of the claimants, including Defendant Raubritter. In the years that followed, and by the time of the filing of the Original Complaint in May 2018, the scheme had been "under investigation by law enforcement

authorities in Denmark, the United Kingdom, Germany, and other jurisdictions," and at least three individuals had already been criminally charged.  Orig. Compl. ¶ 8.  During this time, SKAT learned that it had claims against Raubritter, that Raubritter allegedly wrongfully made withholding tax refund claims, Orig. Compl. ¶ 33, and that Raubritter did not in fact hold the shares in Danish companies that it claimed to own, *id.* ¶¶ 37, 49.  By the time of the filing of the original complaint in May 2018, SKAT was also aware that Raubritter's address was 160 Central Park South, 1726, New York, New York 10019, and that "each member . . . is a citizen of a state of the United States."  Orig. Compl. ¶ 17.  And, while SKAT did not include in its original complaint the fact that the German word "raubritter" translates to "robber baron" in English, *see* Am. Compl. ¶ 50, this information was available to it at the time[5] and would have prompted any diligent plaintiff to investigate the entity's membership and the identity of the person who formed the LLC.

Yet SKAT conducted no further investigation into the identity of Raubritter's sole member, who was presumably behind the entity's allegedly fraudulent actions.  Well before April 2018, publicly-available documents made clear that Raubritter LLC had – years earlier, in 2013 – changed its name to Heartland Family Group, LLC.  *See* ECF #29-11.  Those publicly available documents also identified Alexander Burns as the only "Authorized Person[]" for the entity.  *See id.*  It was months after filing its initial complaint against Raubritter, in October 2018, that SKAT chose to conduct this simple investigation while attempting to effect service.  *See id.*  Even then, SKAT chose not to bring Heartland Family Group, LLC or Burns into this action, but instead chose to wait another year and a half to file the Amended Complaint.  This delay alone

---

[5]     A simple google search of the word "raubritter" yields this definition immediately.  *See* https://www.google.com/search?q=raubritter&rlz=1C1ZCEB_enUS828US828&oq=raubritter&a qs=chrome.0.69i59j46j69i59j0l5.1469j0j15&sourceid=chrome&ie=UTF-8.

prevents SKAT from invoking the discovery rule.  *See Coleman & Co. Sec. v. Giaquinto Family Tr.*, 236 F. Supp. 2d 288, 299 (S.D.N.Y. 2002) ("To be within the rule, a plaintiff must show justifiable reliance on the misrepresentations as the cause of the delay in filing, and must exercise diligence in filing the action in a reasonable time after the facts giving rise to the estoppel have ceased to operate." (citation omitted)).

Nor was SKAT waiting to develop additional facts to determine Burn's liability independent of his association with Raubritter.  As the Amended Complaint makes clear, the current allegations of Burns's exertion of control over Raubritter are based on the allegations that (1) "Defendant Raubritter used Defendant Burns' New York home address in its fraudulent refund claims to SKAT" and (2) that Burns "exerted control over Defendant Raubritter as the plan's sole participant."  Am. Compl. ¶ 48.  This information was clearly available to SKAT well before April 2018.

An allegedly defrauded party should not be permitted to sue only the most obvious entity and then wait until years later to delve any deeper.  SKAT had an objective duty to determine who defrauded it.  *See Gutkin*, 85 A.D.3d at 688 ("Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." (quotation marks omitted)).  Here, that objective duty required SKAT to determine more than just the names of the claimants that had submitted refund requests; it demanded that SKAT determine the parties responsible.  Any reasonable person in SKAT's shoes would have conducted a reasonable investigation into Raubritter LLC and discovered that Burns was its sole member and with whom it shared an address.  SKAT's failure to do so renders its claims

untimely under New York law.  *See Sejin Precision Indus. Co. v. Citibank, N.A.*, 726 F. App'x 27, 31 (2d Cir. 2018) (summary order) (finding that plaintiffs were not reasonably diligent in discovering defendants' conduct in time, in part because information was "available in publicly filed documents"); *see also Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (determining that district court did not err in taking judicial notice of regulatory filings).

C.    **SKAT's Claims Are Untimely Under Danish Law**

The Danish Limitations Act provides a three-year statute of limitations for the claims at issue here.  *See* Litigation & Enforcement in Denmark: Overview, Practical Law Country Q&A 0-594-0727 ("The standard limitation period is three years form the breach of contract or when the damage occurred.  This applies to: Contractual claims[;] Claims in tort."); Bang & Regnarsen Advokatfirma – Denmark, The New Danish Limitations Act, LexUniversal (Mar. 31, 2008), https://lexuniversal.com/en/news/4906 ("Under the new Act, the standard limitation period is 3 years from the due date of the claim.").  This period may be subject to a one-year tolling or suspension of the limitations period where the plaintiff is "unaware[] of the debt."  *Id*.

Under the Danish Limitations Act, SKAT's claims accrued in 2015 and expired three years later, in 2018.  Therefore, because the claims expired nearly two years before the Amended Complaint, they are untimely.  Further, the latest possible time that SKAT actually learned of Burns's involvement was in October 2018.  Thus, even if the three-year limitations period is tolled, it only extended the period from October 2018 to October 2019.  Because these deadlines had come and gone before SKAT filed the Amended Complaint, the claims are untimely under Danish law.

In sum, the Danish Limitations Act, as applied by the New York borrowing statute, precludes SKAT's claims against Burns.

## II.    SKAT'S CLAIMS DO NOT RELATE BACK TO THE ORIGINAL COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(C)(1)(C)

Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure provides that an amended

pleading against a new defendant relates back to the original pleading when, "within the period

provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by

amendment: (i) received such notice of the action that it will not be prejudiced in defending on

the merits; and (ii) knew or should have known that the action would have been brought against

it, but for a mistake concerning the proper party's identity."  In other words, to invoke this Rule,

four requirements must be satisfied:  "(1) the basic claim must have arisen out of the conduct set

forth in the original pleading; (2) the party to be brought in must have received such notice that it

will not be prejudiced in maintaining its defense; (3) that party must or should have known that,

but for a mistake concerning identity, the action would have been brought against it; and (4) the

second and third requirements must have been fulfilled within the prescribed limitations period."

*Williams H. McGee & Co. v. M/V Ming Plenty*, 164 F.R.D. 601, 604–05 (S.D.N.Y. 1995)

(quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)).[6]  The burden is on Plaintiff to establish

that all these requirements have been met.  *See Scott v. Vill. of Spring Valley*, No. 11-cv-4167

(NSR), 2013 WL 5807405, at *2 (S.D.N.Y. Oct. 28, 2013).

At the latest, the limitations period under Rule 4(m) in this case was November 26, 2018,

the date by which service was required, as extended by an Order of the Court.  *See* ECF #19.

Thus, the question is whether SKAT can prove that Burns knew by November 26, 2018 that the

---

[6]    The requirements are similar under New York law, including the requirement that "the new party knew or should have known that, but for . . . mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well."  *Buran v. Coupal*, 87 N.Y.2d 173, 178 (1995) (citation and quotation marks omitted).

lawsuit had been commenced and that, but for a mistake, the action would have also been brought against him.  It cannot do so.

  As an initial matter, SKAT's ignorance of Burns's identity at the time of the filing of the original complaint does not allow relation back under Rule 15(c).  *See Barrow v. Westhersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) (Rule 15(c) "does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities").  This is because "Rule 15(c) explicitly allows for the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake."  *Id.*; *see also Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) ("the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" (citation omitted)).

  Second, in filing its original complaint, SKAT clearly did not make a mistake concerning the proper party's identity.  As explained above, Burns's identity was easy to establish because his name appeared on publicly available documents associated with Raubritter.  By choosing not to conduct further investigation into the entity, SKAT deliberately chose not to bring claims against him.  This deliberate choice is further evidenced by SKAT's decision not to amend the complaint back in October 2018, when it finally took the steps to learn Burns's name and Raubritter's changed name while attempting to effect service.  At no point did SKAT sue Heartland Family Group LLC or Burns, whose name appeared on the corporate documents.  *See* ECF #29 Ex. 11.  Because SKAT made the "fully informed decision" to bring suit against Raubritter; it cannot do so now at this late stage.  *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 552 (2010) ("When the original complaint and the plaintiff's conduct compel the conclusion

that the failure to name the prospective defendant in the original complaint was the result of a

fully informed decision as opposed to a mistake concerning the proper defendant's identity, the

requirements of Rule 15(c)(1)(C)(ii) are not met.").

Third, SKAT cannot establish that Burns in fact knew about this lawsuit, let alone that

Burns knew that SKAT mistakenly sued Raubritter instead of him. SKAT's attempts at service

were clearly insufficient to alert Burns to the lawsuit. SKAT first attempted to serve Raubritter

at Burns's home address at 160 Central Park South, Suite 1726, by ringing the doorbell knocking

on the door on a single occasion. ECF #28 at 2-3 n.1. The process server was told by "a

building concierge" that "Raubritter was not listed as a resident or owner in the building" and

presumably did not return. *See id.* Rather than make further attempts, SKAT sought a 90-day

extension in which to serve Raubritter. ECF #19. SKAT then learned that Raubritter changed its

name to Heartland Family Group and mailed service packages to that entity's registered agent's

addresses in Delaware. *Id.* at 4-5. The Court granted SKAT's motion for alternate service. ECF

#31. However, none of these attempts establish Burns's knowledge of the lawsuit let alone his

knowledge that SKAT had *mistakenly* sued Raubritter when it meant to bring claims against

Burns personally.

## III.    SKAT FAILS TO PLEAD ITS FRAUD-BASED CLAIMS AGAINST BURNS WITH PARTICULARITY

Federal Rule of Civil Procedure Rule 9(b) requires a plaintiff asserting claims of fraud or

mistake to "state with particularity the circumstances constituting fraud or mistake." Likewise,

aiding and abetting fraud and negligent misrepresentation claims must also meet Rule 9(b)'s

heightened pleading requirements. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir.

2006) (applying the heightened Rule 9(b) requirements to aiding and abetting fraud); *Aetna Cas.*

& *Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (applying Rule 9(b) to

allegations of negligent misrepresentation).

SKAT fails to allege with particularity that Defendant Burns acted with fraudulent intent.

The Amended Complaint asserts only that Burns shared an address with Raubritter, and that

Burns was Raubritter's sole participant. *See* Am. Compl. ¶ 48. SKAT's conclusory allegation

that Burns exerted control over Raubritter based on these facts alone, *see id.*, is merely

speculative and falls short of the heightened requirements of Rule 9(b). Because SKAT has

failed to allege the fraud-based claims with particularity, those claims must be dismissed. *See*

*Lerner*, 459 F.3d at 492-93. For these reasons, and the reasons articulated in the motion to

dismiss filed on June 12, 2019, in Master Docket No. 18-md-02865-LAK, ECF #134, and the

accompanying declarations and memoranda of law, the Amended Complaint should be

dismissed.

## IV.    SKAT'S CLAIMS MUST BE DISMISSED BECAUSE THE REVENUE RULE BARS THIS COURT FROM ASSERTING JURISDICTION

The action should be dismissed because it is barred by the revenue rule, which prohibits

courts from hearing claims by foreign sovereigns that seek enforcement of their tax laws. *See*

*Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 108 (2d Cir. 2001).

For the reasons articulated in the motion to dismiss filed on June 12, 2019, in Master Docket No.

18-md-02865-LAK, ECF #134, and the accompanying declarations and memoranda of law, the

Amended Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's claims against Defendant Alexander Burns in the

Amended Complaint should be dismissed.


Date:   New York, New York
        October 27, 2020


                                By:  */s/ Michael Tremonte*
                                Michael Tremonte
                                Anna Estevao
                                SHER TREMONTE LLP
                                90 Broad Street, 23rd Floor
                                New York, New York 10004
                                Email: mtremonte@shertremonte.com

                                *Attorneys for Defendant Alexander Burns*