UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
In re

SKAT TAX REFUND SCHEME LITIGATION

18-md-2865 (LAK)

This document relates to: 18-cv-05053

------------------------------------------------x

## MEMORANDUM OPINION

Appearances:

>William R. Maguire
>Marc A. Weinstein
>Neil J. Oxford
>HUGHES HUBBARD & REED LLP
>*Attorneys for Plaintiff*

>Martin H. Kaplan
>Kari Parks
>GUSRAE KAPLAN NUSBAUM PLLC
>*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

In this multidistrict litigation, the Customs and Tax Administration of the Kingdom of Denmark ("SKAT") alleges that U.S. pension plans fraudulently obtained refunds of dividend tax withholdings to which they were not entitled. The crux of SKAT's claim is that, contrary to representations in their refund applications, the plans were not qualified pension plans under Section 401(a) of the U.S. Internal Revenue Code and did not own securities subject to dividend tax withholdings.[1] SKAT contends that the plans therefore were not entitled to any tax refunds under

---

[1] *See* Goldstein Am. Compl. [18-cv-5053, DI 155] ¶¶ 40-41.

2

the double taxation treaty between Denmark and the U.S.[2] This case is before the Court on the motion of the Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein Plan" or the "Plan"), Sheldon Goldstein, and Scott Goldstein (collectively the "Goldstein Parties") to dismiss SKAT's claims against them.

*Background*

This is the second motion to dismiss by the Goldstein Plan and Sheldon Goldstein – the first having been denied by this Court on January 9, 2019.[3] SKAT subsequently amended its complaint and added allegations against Scott Goldstein. According to the amended complaint, Scott was a participant in the Goldstein Plan and the managing partner of the Plan's sponsor.[4] SKAT alleges also that Scott's address was listed on the Plan's refund applications.[5]

On December 2, 2020, while this motion was pending, the Court denied a separate motion to dismiss SKAT's claims by other defendants, including plan participants who are situated similarly to Scott Goldstein.[6] As the Goldstein Parties raise arguments that the Court already

---

[2] *Id.* ¶¶ 4, 24.

[3] *See generally In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019). The Court assumes familiarity with its prior opinions.

[4] Goldstein Am. Compl. ¶¶ 19, 48.

[5] *Id.*

[6] *See generally In re SKAT Tax Refund Scheme Litig.*, No. 18-cv-05053 (LAK), 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020).

3

addressed in its prior opinions or which cannot be decided at this stage of the litigation, their motion is denied as well.

## Discussion

### I. Right of Action

As an initial matter, the Goldstein Parties' argument that SKAT improperly is trying to enforce a private right of action under the Internal Revenue Code (the "IRC") is without merit.

SKAT does not dispute that there is no private right of action under Section 401 of the IRC. Accordingly, "to establish a common-law cause of action" based on the Goldstein Plan's alleged misrepresentation that it was a qualified pension plan under Section 401(a), SKAT "must identify to the court a common-law duty owed by the defendants to the plaintiff that did not arise out of the applicable statute."[7]

SKAT has done so. It alleges that the Goldstein Parties are liable for the refunds that SKAT paid in reliance on their misrepresentations.[8] SKAT does not allege that it was injured by

---

[7] *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005) (In particular, a claim for fraud must allege "a misrepresentation or omission sufficient to support a claim for common-law fraud" and a claim for unjust enrichment must "allege . . . actionable wrongs independent of the requirements of the statute." *Id*. at 200, 203.) (citing *HANYS Servs., Inc. v. Empire Blue Cross & Blue Shield*, 721 N.Y.S.2d 750, 753 (N.Y. Sup. Ct. 2001), aff'd, 737 N.Y.S.2d 140 (N.Y. App. Div. 2002)). *See also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 387 (S.D.N.Y. 2002) ("[C]ourts have permitted a common law fraud claim premised on the same set of facts to which a statute applies, despite the fact that there is no private cause of action in the statute" where "the claim was premised on a substantive injury or loss independent of the statutory violation.").

[8] *See e.g.*, Goldstein Am. Compl. ¶ 41 (alleging that "Defendant Goldstein Law Plan falsely represented to SKAT in each refund claim that it was a qualified U.S. pension plan entitled to a full refund under the Treaty.").

4

the Goldstein Parties' violation of any duty, right, or obligation owed to or conferred by the IRC.[9] It raises common law claims, and the Goldstein Parties point to no reason why the Court cannot hear these claims.[10]

## II.   *Justifiable Reliance*

To state a legally sufficient claim for fraud, a plaintiff must allege that it reasonably believed that the alleged misrepresentations were true – a requirement described as "justifiable reliance."[11] Typically, a plaintiff needs to exercise "minimal diligence . . . negating its own recklessness," but a "heightened degree of diligence is required where the victim of fraud had hints

---

[9] The cases cited by the Goldstein Parties are inapplicable. At most, each stands for the proposition that the IRC cannot create private duties or obligations where none exist otherwise. *See e.g.*, *Sirna v. Prudential Sec., Inc.*, No. 95-cv-8422 (LAK), 1997 WL 53194, at *2-3 (S.D.N.Y. Feb. 10, 1997) (suggesting that IRC does not create fiduciary duties); *Suozzo v. Bergreen*, No. 00-cv-9649 (JGK), 2003 WL 256788, at *2 (S.D.N.Y. Feb. 5, 2003) (same).

[10] In fact, the Supreme Court frequently has "confronted issues of subject matter jurisdiction presented by state common-law claims that incorporate federal standards of conduct. . . . In none of these cases has the Supreme Court even suggested that the absence of a private right of action under a federal statute would prevent state law from providing a cause of action based in whole or in part on violations of the federal law." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581-82 (7th Cir. 2012) (referring to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, in which the Supreme Court held that federal jurisdiction existed over quiet title action that turned on notice under the IRC, despite the lack of a private right of action. 545 U.S. 308 (2005)).

[11] *Banque Franco-Hellenique de Commerce Int'l et Mar., S.A. v. Christophides*, 106 F.3d 22, 26 (2d Cir. 1997).

of its falsity."[12]  Despite this requirement, "when matters are . . . peculiarly within defendant's knowledge . . . plaintiff may rely without prosecuting an investigation, as [the plaintiff] had no independent means of ascertaining the truth."[13]  In addressing whether a matter is within a defendants' peculiar knowledge, courts assess a plaintiff's "(1) level of sophistication and (2) access to the information underlying the alleged misrepresentation."[14]

The Goldstein Parties argue that SKAT was aware of the risks posed by dividend arbitrage and accordingly was not justified in relying on the representations in the Plan's refund applications without taking steps to avoid deception. They rely on a host of materials outside of the pleadings in support of this argument.

Generally, "[w]hen matters outside the pleadings are presented in . . . a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material."[15]  Here, the Goldstein Parties do not argue that the Court should convert their motion to one for summary judgment and, given the stage of the litigation, the Court declines to do so.

---

[12] *Id.* at 27 (internal quotation marks omitted).

[13] *Crigger v. Fahnestock & Co., Inc.,* 443 F.3d 230, 234 (2d Cir. 2006) (*quoting Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir. 1980), *abrogated in part on other grounds by Peltz v. SHB Commodities,* 115 F.3d 1082, 1090 (2d Cir. 1997)).

[14] *DIMON Inc. v. Folium, Inc.,* 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1999).

[15] *Friedl v. New York,* 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted).

6

Instead, the Goldstein Parties argue that the Court should take judicial notice of these documents without converting their motion to one for summary judgment. The Court may "take judicial notice of official documents attached to a responsive pleading merely for the fact of their existence, rather than for the truth of the matters asserted in them."[16] This "does not run afoul of the rule that a district court must confine itself to the four corners of the complaint when deciding a motion to dismiss under Rule 12(b)(6)" because such documents are "not relied on for [their] truth."[17] For the Court properly to take judicial notice of the documents offered by the Goldstein Parties "no serious question as to [the documents'] authenticity can exist."[18]

In support of their claim that SKAT had notice that its tax refund process was inadequate, the Goldstein Parties refer to a May 2010 audit conducted by the Danish Ministry of Taxation (the "2010 Audit") and a February 2016 report by the National Audit Office of Denmark to the Danish Public Accounts Committee (the "2016 Audit").[19] They claim that the Court may take judicial notice of these materials because SKAT has not disputed the documents' authenticity and that it had notice of the 2010 Audit before processing the refund applications.[20] Even if the

---

[16] *Berk v. City of New York*, No. 13-cv-3917 (LAK), 2015 WL 7162239, at *4 (S.D.N.Y. Nov. 9, 2015). *See also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (Court can take judicial notice of documents "offered to show that certain things were said in the press . . . to trigger inquiry notice.").

[17] *Id.*

[18] *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020) (same).

[19] Def. Br. [18-md-2865, DI 397] at 12-13.

[20] Def. Reply Br. [18-md-2865, DI 443] at 7.

Goldstein Parties have made out a basis for judicial notice, which I need not decide, these documents would not help them on their motion.

As an initial matter, the 2016 Audit was published after SKAT stopped paying dividend tax refunds, so the fact of its publication cannot be relevant to SKAT's reliance on the Plan's refund applications.[21]

With regard to the 2010 Audit, even assuming that SKAT had notice of the shortcomings described therein, SKAT's allegations are sufficient to plead justifiable reliance.[22] According to the amended complaint, the Goldstein Plan's refund applications included "tax vouchers" or similar documentation from a broker-custodian confirming that the Plan owned the relevant Danish securities.[23] Ultimately, whether SKAT was justified in relying on these certifications in light of what it knew at the time is a factual question that cannot be decided at this stage of litigation.[24]

---

[21] Even if the Court decided the motion under Rule 56 and considered the 2016 Audit, the Court's conclusion would be the same. Questions of material would fact remain as to the reasonable interpretation of the "red flags" discussed in that document, and – as discussed below – what SKAT could have uncovered even if it had undertaken additional diligence.

[22] The Goldstein Parties reference a U.S. Senate Report and U.S. news articles discussing dividend tax abuse. Def. Br. at 5-6. Judicial notice of these materials may be appropriate to the extent that their publication reflects on SKAT's "inquiry notice." *Staehr*, 547 F.3d at 425. But the relevance of these materials is far from clear because the Goldstein Parties have not demonstrated that Danish and U.S. dividend taxes pose similar risks of abuse.

[23] Goldstein Am. Compl. ¶¶ 58-59.

[24] It is unclear whether the Goldstein Parties argue also that SKAT was not justified in relying on their claim that the Goldstein Plan was a qualified pension plan. To the extent this argument is raised, it is rejected. The claim forms submitted to SKAT included a statement from the Internal Revenue Service certifying that applicants were qualified plans and tax exempt under U.S. law. *See* Goldstein Am. Compl. ¶ 30. The Goldstein Parties do not challenge SKAT's reliance on this certification, nor do they explain how SKAT could have

8

In any case, the Goldstein Parties have not demonstrated that SKAT reasonably could have verified the information in their claim forms. "[T]he peculiar knowledge exception applies not only where the facts allegedly misrepresented literally were within the exclusive knowledge of the defendant, but also where the truth theoretically might have been discovered, though only with extraordinary effort or great difficulty."[25] Here, for example, defendants – including the Goldstein Plan and Sheldon Goldstein – previously argued to this Court that ownership of Danish securities cannot necessarily be determined based on the central securities depository in Denmark.[26] Because it is unclear whether SKAT reasonably could have discovered the alleged misrepresentations, the Court cannot properly conclude that SKAT's reliance was unjustified as a matter of law.[27]

### III. Negligent Misrepresentation

Claims of negligent misrepresentation are actionable only where "the relationship of the parties, arising out of contract or otherwise, is such that in morals and good conscience the one has the right to rely upon the other for information."[28] Such a relationship can arise where "1) the defendant makes a statement with the awareness that the statement was to be used for a

---

verified this claim.

[25] *DIMON*, 48 F. Supp. 2d at 368.

[26] *See* Def. Consolidated Br. [18-cv-4047, DI 35] at 11.

[27] For mostly the same reasons, the Goldstein Parties' argument that SKAT's equitable claims must be dismissed as unjust because "SKAT's own negligence caused it to pay refunds" fails. Def. Br. at 32.

[28] *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 405 (2d Cir. 2015) (*quoting Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)).

9

particular purpose; 2) a known party or parties rely on this statement in furtherance of that purpose; and 3) there is some conduct by the defendant linking it to the party or parties and evincing defendant's understanding of their reliance."[29]  SKAT's allegations, assuming their truth, are sufficient to satisfy this burden.

According to the amended complaint, the Goldstein Parties submitted various documents and certifications to SKAT in order to obtain refunds from the Danish government.[30] The Goldstein Parties cannot claim plausibly that they did not intend for SKAT to rely on the statements and information that they submitted specifically for that purpose.

IV.   The Shah Scheme

The Goldstein Parties argue that the Court should dismiss any allegations relating to the "Shah Scheme" because SKAT's pleadings in a related English action supposedly exclude the Goldstein Parties from the "Shah Scheme."[31] But, as the Court previously explained, "[i]t would be inappropriate for the Court to determine, in the course of resolving a motion to dismiss in which the pleadings are presumed true, whether [SKAT's] assertions have been inconsistent and, if so, which assertions in fact are accurate."[32]

---

[29] *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005). *See also Fin. Guar. Ins. Co.*, 783 F.3d at 405-06 (same).

[30] *See e.g.*, Goldstein Am. Compl. ¶ 30.

[31] Def. Br. at 16.

[32] *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-05053 (LAK), 2020 WL 3962066, at *2 n. 11 (S.D.N.Y. July 13, 2020).

V.   *Remaining Arguments*

The Court has considered the Goldstein Parties' remaining arguments and concludes that they are without merit for the reasons explained in the Court's prior opinions.[33]

*Conclusion*

The motion by the Goldstein Law Group PC 401(K) Profit Sharing Plan, Sheldon Goldstein, and Scott Goldstein to dismiss the amended complaint as to them (filed in 18-md-2865 [DI 396] and 18-cv-5053 [DI 198]) is denied in all respects.

SO ORDERED.

Dated:   December 21, 2020

/s/ Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge

---

[33] *See In re SKAT*, 356 F. Supp. 3d at 322-26; *In re SKAT*, 2020 WL 7059843, at *9-10. While the Goldstein Parties argue the Plan's broker-custodian, ED&F Man Capital Markets Ltd., assumed responsibility for issuing the fraudulent tax vouchers included in the Plan's refund applications, this does not necessarily rule out the Goldstein Parties' role in submitting the applications.