**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:  18-cv-05053, 18-cv-09797, 18-cv-09836, 18-cv-09837, 18-cv-09838, 18-cv-09839, 18-cv-09840, 18-cv-09841, 18-cv-10100[1]<br><br>-----------------------------------------------------------<br><br>ACER INVESTMENT GROUP, LLC,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>ED&F MAN CAPITAL MARKETS LTD.,<br><br>    Third-Party Defendant. | MASTER DOCKET<br><br>18-md-2865 (LAK)<br><br><br><br>**THIRD-PARTY COMPLAINT AND JURY DEMAND** |

---

[1] The related actions include the following cases, which were pending in the District of Utah prior to transfer to this Court for pre-trial purposes: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.) (together, the "Utah Actions").  The related actions also include *SKAT v. Newsong Fellowship Church 401k Plan*, 18-cv-10100 (S.D.N.Y.), which was pending in the Eastern District of Pennsylvania prior to transfer to this Court for pre-trial purposes, and *SKAT v. The Goldstein Law Group PC 401k Profit Sharing Plan*, 18-cv-05053 (S.D.N.Y.), which was pending in the Southern District of New York prior to consolidation to this Court for pre-trial purposes.

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendant/Third-Party Plaintiff Acer Investment Group, LLC (the "Acer") brings the following third-party claims against Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F") in connection with the services ED&F provided to the Pension Plan Defendants in the above related actions.[2]

Acer served as the Plans' authorized agent in connection with the Plans' investments in Danish securities through ED&F between 2013 and 2015. The trades were simple: the Plans would purchase Danish securities, own and hold them over a dividend record date, collect the relevant dividend minus any withholding taxes, and apply for and collect a dividend-withholding-tax refund from Plaintiff Skatteforvaltningen ("SKAT"), the Danish taxing authority. Through this investment strategy, ED&F would provide truthful and accurate information to Acer and the Plans, and the Plans would submit withholding-tax refund requests to SKAT based on ED&F's information, including ED&F's "tax vouchers" that confirmed the Plans' receipt of dividends net of withholding taxes, suffering of withholding taxes, and entitlement to tax reclaims. After the Plans collected any withholding-tax refund from SKAT, ED&F would charge fees to the Plans. Subsequently, ED&F would pay Acer a fee. Five years after ED&F first started creating tax vouchers for all of the Plans in connection with the Danish transactions, ED&F admitted that forty-two (42) of the tax vouchers on which the Plans relied were inaccurate.

---

[2] The "Pension Plan Defendants" in the above related actions are DW Construction, Inc. Retirement Plan, The Goldstein Law Group PC 401(k) Profit Sharing Pension Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates 401(K) LLC Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan and Newsong Fellowship Church 401(k) Plan (collectively, "the Plans," and each a "Plan"). Other defendants in the above-captioned related actions are Stacey Kaminer, Robert Crema, Darren Wittwer, David Schulman, Joan Schulman, Jamie Mitchell, Sheldon Goldstein, and Scott Goldstein (the "Individual Defendants").

Acer firmly believes the Plans were entitled to the withholding-tax refunds they claimed from SKAT and that SKAT now wants returned. Acer also believes it was entitled to the fees it collected from ED&F. If, however, SKAT's allegations against Acer are proven to be true and Acer is required to pay to SKAT any of the fees it received from ED&F, then ED&F should be responsible because ED&F (1) managed, controlled, and executed the Plans' Danish securities transactions, which are the basis of SKAT's claims; and (2) provided all of the information concerning the Plans' securities, dividends, and withholding-tax information on which the Plans and Acer relied, including the ED&F's inaccurate tax vouchers.

## PARTIES

1.      Acer is a limited liability company established in the State of Delaware. Its principal place of business is in the State of Florida, and it is also registered to do business in the State of Utah.

2.      ED&F is a financial brokerage business and financial servicer headquartered at 3 London Bridge Street, London, SE1 9SG, United Kingdom. At all relevant times, ED&F managed and controlled a brokerage account for the Plans, executed trades in Danish securities for the Plans, provided documentation and information to the Plans, through Acer, in connection with the Plans' accounts, securities transactions, dividend receipts, and tax vouchers, and collected fees in connection with the Plans' withholding-tax refund requests.

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because the claims are between a U.S. citizen and a citizen of a foreign state. This Court also has subject-matter

jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367 because the third-party claims form part of the same case or controversy as SKAT's claims against Acer.

4. By filing these third-party claims in the United States District Court for the Southern District of New York, Acer does not waive its right to have SKAT's claims or these third-party claims transferred back to the United States District Court for the District of Utah (related actions 18-cv-09797, 18-cv-09836, 18-cv-09837, 18-cv-09838, 18-cv-09839, 18-cv-09840, 18-cv-09841) or the United States District Court for the Eastern District of Pennsylvania (related action 18-cv-10100) for purposes of trial.

## STATEMENT OF FACTS

**A. ED&F entered into various agreements with the Plans pursuant to which ED&F agreed to exercise reasonable care in relation to the Plans' transactions and accounts.**

5. ED&F is a broker registered with the Financial Conduct Authority ("FCA"), which regulates the UK financial and securities markets.

6. In 2012, the Plans and ED&F executed agreements (the "Agreements") that set forth ED&F's obligations as broker-custodian with each of the Plans. The Agreements include the Plans' Custody Agreements, Security and Set-Off Deeds, ISDA Master Agreements, and Terms and Condition of Business.

7. Pursuant to the Agreements, the Plans maintained brokerage accounts with ED&F since at least June 2012.

8. ED&F was required to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) settling the Plans' trades; (iii) managing the Plans' custodian and sub-custodian accounts; (iv) keeping records and statements concerning the Plans' accounts and securities; (v) acting on the Plans' instructions; (vi) registering the Plans' securities

in compliance with FCA regulations; and (vii) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

9. ED&F was prohibited from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

10. The Plans each designated Acer as their attorney-in-fact in connection with investments in U.S. and foreign securities transactions conducted through the Plans' ED&F brokerage accounts.

11. ED&F agreed to communicate with the Plans through Acer and, during all relevant times, ED&F routinely communicated with the Plans through Acer in relation to ED&F's dealings with the Plans, which are described more fully below.

**B. The Plans traded in Danish securities through ED&F and intended to receive dividends net of withholding taxes from Danish companies and to apply for withholding-tax refunds based on the information provided by ED&F.**

12. At all relevant times herein, Danish law required Danish companies to withhold and report to SKAT 27% of the dividends those companies distributed to their respective shareholders.

13. Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot retain taxes withheld on dividends paid to a U.S. pension plan by a Danish company. As such, U.S. pension plans that suffered a withholding tax on dividends were entitled to reclaim that withheld tax from the Danish Government.

14. At all relevant times, SKAT served the Danish government as the agency responsible for administering Danish taxes and refunding dividend withholding taxes, including refunds of dividend withholding taxes owed to U.S. pension plans.

15. Between December 2013 and August 2015, the Plans traded in shares of certain Danish companies through ED&F.

16. As a result, ED&F generated a number of documents detailing and describing each of the transactions, including buy/sell confirmations for the Plans' transactions, account statements showing that the transactions occurred, and tax vouchers describing the Plans' security holdings and receipt of dividends net of withholding taxes.

17. ED&F provided those documents to the Plans through Acer.

18. According to those documents, the Plans' holding of shares in Danish companies resulted in the crediting of dividends net of withholding taxes to the Plans' brokerage accounts.

19. Based on those documents, Acer and the Plans were led to believe that the Plans held securities in Danish companies in its ED&F brokerage account on or around the relevant record dates for payment of dividends (the "Holdings") and received dividends net of withholding taxes on those securities (the "Dividends").

**C. ED&F provided the Plans with the documents and information they needed to support their withholding-tax refunds claims.**

20. Acer entrusted ED&F, as broker/custodian for the Plans, with the management and control of the Plans' brokerage accounts, the execution and settlement of securities transactions for the Plans, and the preparation of any tax vouchers related thereto.

21. ED&F prepared such tax vouchers (the "Tax Vouchers") by which ED&F purportedly confirmed the Plans' relevant shareholdings over the applicable dividend dates and described the Dividends received by the Plans net of withholding taxes.

22. ED&F prepared Tax Vouchers for the each of the Plans' Holdings and Dividends.

23. ED&F knew that the Plans intended to request withholding-tax refunds from SKAT through Goal Taxback Ltd. ("Goal Taxback"), a third-party payment-processing agent.

24. Accordingly, ED&F would send the Tax Vouchers directly to Goal Taxback, who would then submit the applications for withholding-tax refunds to SKAT on behalf of the Plans.

25. ED&F would also email copies of the Tax Vouchers to Acer. The Plans, through Acer, received the Tax Vouchers from ED&F when Goal Taxback received the Tax Vouchers so the Plans and Acer would be aware of whether withholding-tax refund applications would be submitted by Goal Taxback on the Plans' behalf.

26. The relevant Tax Vouchers that ED&F provided to the Plans are attached hereto as Exhibit A.

27. With each of the Tax Vouchers, ED&F confirmed the Plans' relevant shareholdings over the applicable dividend dates, described the Dividends received by the Plans net of withholding taxes and stated that ED&F "has no beneficial interest in the holding and will not be

reclaiming the tax.  The dividends specified on this credit advice were paid net of withholding tax to [the relevant Plan]."  For example:



28.     Each of the Tax Vouchers stated the dividend "received" by the Plans and the withholding-tax "suffered" by the Plans.

29.     On information and belief, ED&F was the only entity that had direct control over the information concerning, among other things, ED&F's custody account(s), the Plans' brokerage accounts, securities in those accounts, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend withholding taxes.

30. After ED&F apparently confirmed that the Plans received the Dividends from the relevant Danish issuer net of withholding taxes, ED&F sent the Tax Vouchers to Goal Taxback.

31. ED&F provided the Plans, through Acer, with account statements reflecting all the Danish securities transactions in the Plans' ED&F brokerage accounts. The account statements confirmed that for each transaction reflected on the Tax Vouchers, the Plans owned the relevant shares on the respective record dates and were paid the applicable dividends from the Danish issuer, minus Danish withholding taxes.

32. Acer reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when Acer continued conducting trades for Plans through ED&F in 2014, 2015, and 2016.

33. SKAT paid the Plans through Goal Taxback for all of the Plans' withholding-tax refunds until August 2015, at which point SKAT stopped paying withholding-tax refund claims.

34. In a court filing in the U.K., ED&F stated that it would only receive fees from the Plans out of the proceeds of any successful withholding-tax applications that included one of ED&F's Tax Vouchers.

35. After the Plans received a withholding-tax refund from SKAT, ED&F charged the Plans clearance fees.

36. After ED&F charged clearance fees to the Plans, Acer would charge fees to ED&F.

37. Thus, only when ED&F provided Tax Vouchers to the Plans, the Plans received a withholding-tax reclaim, and ED&F charged the Plans a fee, would Acer be in a position to charge ED&F a fee.

38. Acer reasonably relied on the accuracy of ED&F's Tax Vouchers and other documentation when Acer charged fees to ED&F.

39. ED&F paid the fees that Acer charged.

40. In 2018, SKAT sued the Plans and certain of the Individual Defendants seeking damages and/or restitution in the amount of the withholding-tax refunds SKAT paid to the Plans, alleging fraud, aiding and abetting fraud, negligent misrepresentation, and various equitable claims.

41. In 2020, SKAT sued Acer as a co-defendant in each of the actions, alleging that Acer aided and abetted the purported fraud against SKAT. SKAT seeks damages from Acer for allegedly aiding and abetting the Plans' purported fraud against SKAT and/or restitution.

42. SKAT seeks to have approximately $18,334,862.50 in refunds returned in its actions against the Plans, the Individual Defendants, and Acer.

**D. In September 2019, ED&F admitted that certain of the Tax Vouchers that it created for the Plans and provided to Acer were inaccurate.**

43. SKAT sued ED&F in the United Kingdom (the "U.K. Proceeding") over the same transactions that are the basis of SKAT's claims against the Plans and Acer.

44. In September 2019, ED&F filed its Amended Defence in the U.K. Proceeding and identified 80 tax vouchers issued by ED&F to pension plans that it now, for the first time, stated were inaccurate.

45. ED&F stated that forty-two (42) of the seventy-two (72) tax vouchers it prepared for the Plans contained false information and listed those tax vouchers (the "Disavowed Tax Vouchers") in Annex E to its Amended Defence.

46. ED&F's list of the Disavowed Tax Vouchers is attached hereto as Exhibit B, with the tax vouchers relevant to the Plans highlighted.

47. ED&F stated that each of the Disavowed Tax Vouchers was "inaccurate in that the [Plan] identified therein: had not '*received*' the amount set out therein by way of dividend from

the Danish Listed Company; and had not '*suffered*' [withholding tax] in the amount set out therein in relation to such dividend at the stated (27%) or any rate."

48. According to ED&F, thirty-seven (37) of the Disavowed Tax Vouchers are wholly inaccurate in that the Plans did not receive the actual dividend from a Danish company and did not suffer any withholding taxes. According to ED&F, the Plans' other five (5) Disavowed Tax Vouchers are partially inaccurate in that the Plans received part of an actual dividend from a Danish company but did not, apparently, receive the remaining amount by way of dividend from a Danish issuer.

49. The Disavowed Tax Vouchers were transmitted from ED&F to the Plans and Acer.

50. The Plans submitted withholding-tax refund requests based on those Disavowed Tax Vouchers.

51. SKAT paid the Plans' withholding-tax refund requests.

52. Once the Plan received SKAT's withholding-tax refund, the Plan paid ED&F its fees.

53. Acer, in turn, charged fees to ED&F.

54. For instance, on March 24, 2014, ED&F provided the Plans and Acer with nine (9) Tax Vouchers in relation to the Plans' trades in TDC A/S, a Danish company (the "TDC Tax Vouchers").

55. At the time ED&F provided the TDC Tax Vouchers to the Plans and Acer, ED&F did not inform the Plans or Acer that they contained false information concerning the Plans' receipt of dividends or suffering of withholding tax.

56. In September 2019, ED&F stated that the TDC Tax Vouchers contained inaccurate information.

57. ED&F's September 2019 statement that the TDC Tax Vouchers contained false information was made more than five years after the Plans and Acer first received the TDC Tax Vouchers and after SKAT had already paid reclaims to the Plans.

58. If Acer and the Plans had not received the TDC Tax Vouchers or any of the other Disavowed Tax Vouchers from ED&F, the Plans would never have submitted those or further refund applications to SKAT.

59. Further, the Plans would not have received withholding-tax refunds from SKAT, and ED&F would not have charged fees to the Plans, and Acer would not have charged ED&F its fees.

60. After the TDC Tax Vouchers, Acer conducted another sixty-one (61) trades in Danish securities, thirty-three (33) of which resulted in ED&F providing tax vouchers which it later disavowed as being false—and all of which SKAT has alleged were fraudulent.

61. Because of ED&F's unique position as broker-custodian for the Plans and its access to all relevant information concerning the Plans' securities, holdings, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend withholding taxes, ED&F possessed all of the information necessary to determine the accuracy of the information of the Disavowed Tax Vouchers at the time ED&F sent them to the Plans and Acer.

62. When ED&F transmitted the Disavowed Tax Vouchers, on behalf of the Plans, ED&F knew or should have known that the dividend and withholding-tax information in the Disavowed Tax Vouchers was false.

63. As a result of the now-disavowed Tax Vouchers according to ED&F's Annex E, attached as Exhibit B, ED&F's Tax Vouchers were "inaccurate" in the following amounts:

| Plan | Amount[3] |
|---|---|
| The DW Construction Plan | $ 1,790,560.98 |
| The Kamco Investments Plan | $ 992,195.12 |
| The Kamco LP Plan | $ 1,839,512.20 |
| The Linden Plan | $ 1,205,890.24 |
| The Moira Plan | $ 1,758,292.68 |
| The Riverside Plan | $ 1,205,890.24 |
| The AIG Plan | $ 1,400487.80 |
| The Goldstein Law Group Plan | $ 830,414.63 |
| The Newsong Plan | $ 690,365.85 |
| Total: | $ 11,713,609.80 |

64. According to the information provided by ED&F, including account statements and trade confirms, the Plans purchased the Danish-listed shares described in the Disavowed Tax Vouchers.

65. Acer never had reason to doubt the veracity of the Tax Vouchers provided by ED&F until September 2019—after ED&F filed its Amended Defence in the U.K. proceedings.

66. ED&F never warned Acer or the Plans that it had determined that the Disavowed Tax Vouchers were wrongful or that it would be filing documents in the U.K. Proceedings in which it would declare the Disavowed Tax Vouchers false.

67. Indeed, it has only been through litigation involving SKAT that ED&F has communicated the apparent falsehoods in the Disavowed Tax Vouchers.

68. Despite multiple inquires, ED&F has refused to explain why the Disavowed Tax Vouchers are false or how ED&F reached that determination.

---

[3] This amount is the result of a conversion from Danish Krone ("DKK") to U.S. Dollars performed on January 27, 2021, utilizing a conversion rate of 1 U.S. Dollar to 6.15 DKK.

69. Even more concerning is that the Disavowed Tax Vouchers are identical in appearance, format and language to the other Tax Vouchers issued to the Plans by ED&F that ED&F has not identified as being inaccurate.

70. ED&F has offered no evidence that it did not know the Disavowed Tax Vouchers were false when first transmitted to Acer.

71. Despite being in possession of information upon which it has subsequently determined that there were forty-two (42) transactions in which the Plans apparently did not receive a dividend from a Danish-listed company and did not suffer withholding tax at any rate, ED&F fraudulently issued the Disavowed Tax Vouchers reflecting that the Plans had actually received dividends from the Danish-listed company and had suffered withholding tax at a rate of 27% of such dividends.

72. ED&F now says that with the Disavowed Tax Vouchers inaccurately represented the Plans' dividend receipts and withholding-taxes at a time when ED&F knew that the Plans intended to rely on that information to support the Plans' refund applications.

73. Acer reasonably relied on the Tax Vouchers issued by ED&F, including the Disavowed Tax Vouchers, and other information provided by ED&F, as well as the resulting reclaims and fees charged to the Plans when Acer charged its fees to ED&F.

**E. If SKAT proves Acer is liable for any purported harm caused by the Plans' refund applications, then ED&F should be responsible for any amounts claimed by SKAT.**

74. SKAT alleges Acer aided and abetted the Plans' alleged misrepresentations when the Plans requested the withholding-tax refunds from SKAT and/or inappropriately collected portions of SKAT's refund payments.

75. SKAT's allegations are false as Acer never collected any of SKAT's withholding-tax refunds or in any way aided the alleged fraud described in SKAT's amended complaints.

76. SKAT also alleges that ED&F provided statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

77. Acer was reasonable in relying on the accuracy of the information ED&F provided in connection with the Plans' withholding tax refund requests.

78. Thus, if SKAT proves its claims and establishes that Acer is liable to SKAT for SKAT's alleged damages, then ED&F should be responsible for them.

## THIRD-PARTY CLAIM COUNT I
### Fraud

79. Acer repeats and realleges paragraphs 1 through 78 of this Third-Party Complaint as if set forth fully herein.

80. ED&F prepared and transmitted the Tax Vouchers, including the Disavowed Tax Vouchers, to the Plans and Acer.

81. ED&F charged fees to the Plans in connection with successful withholding-tax refund applications based on ED&F's Tax Vouchers, including the Disavowed Tax Vouchers.

82. Acer, in turn, charged its fees to ED&F.

83. According to ED&F's admissions, the Disavowed Tax Vouchers contain false statements of material fact concerning the Plans' receipt of dividends and suffering of dividend-withholding taxes.

84. ED&F intentionally, knowingly, and/or recklessly made or caused to be made the false statements in the Disavowed Tax Vouchers for the purpose of inducing the Plans and Acer to act upon those false statements.

85. ED&F had a financial interest in making the misstatements in the Disavowed Tax Vouchers because, in making those misstatements, it put itself in a position to charge the Plans for custody and clearance fees after SKAT accepted the withholding-tax applications based on the Disavowed Tax Vouchers.

86. Acer, without knowledge or reason to know of any false statements in the Tax Vouchers, reasonably relied on the information provided by ED&F when Acer charged its fees to ED&F.

87. If SKAT is entitled to the amounts it claims to be owed, then ED&F should be liable to Acer for any amounts or other remedies Acer is found to owe SKAT, including, but not limited to damages, restitution, punitive damages, and/or fees and costs, plus interest, and for any and all legal fees spent in defense of Acer against SKAT.

88. ED&F's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling Acer to punitive damages.

### THIRD-PARTY CLAIM COUNT II
### Negligent Misrepresentation

89. Acer repeats and realleges paragraphs 1 through 88 of this Third-Party Complaint as if set forth fully herein.

90. At all relevant times herein, ED&F had a duty to provide truthful and accurate tax vouchers and other documentation concerning the Plans' securities.

91. According to ED&F's own admissions, ED&F made material, factual statements in the Disavowed Tax Vouchers that it represented were true, but which were, in fact, not true when made.

92. ED&F knew or should have known that the Disavowed Tax Vouchers were inaccurate when it prepared them for the Plans.

93. ED&F failed to use reasonable care to determine whether misstatements in the Disavowed Tax Vouchers were true.

94. ED&F was in a better position than Acer to know the true facts.

95. Acer, without knowledge or reason to know of any false statements in the Tax Vouchers, reasonably relied on the information provided by ED&F when Acer charged its fees to ED&F.

96. If SKAT is entitled to the amounts it claims to be owed, then ED&F should be liable to Acer for any amounts or other remedies Acer is found to owe SKAT, including, but not limited to damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT III
**Equitable Indemnification**

97. Acer repeats and realleges paragraphs 1 through 96 of this Third-Party Complaint as if set forth fully herein.

98. If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then Acer will be liable to SKAT or will be obligated to repay SKAT up to the entire amount of the withholding-tax refunds paid by SKAT to the Plans.

99. However, as alleged herein, Acer relied on ED&F and ED&F's own statements, including the Disavowed Tax Vouchers.

100. Furthermore, SKAT has alleged that it was ED&F that provided the statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

101. Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to indemnify Acer for all costs incurred and that Acer may incur as a result of any of SKAT's claims, including, but not limited to, (i) any amounts owed by Acer to SKAT and (ii) any of Acer's attorneys' fees and costs, plus pre-judgment interest and other expenses arising out of or related to these third-party claims and SKAT's claims against Acer in this or any jurisdiction.

## THIRD-PARTY CLAIM COUNT IV
**Apportionment of Fault – *Utah Actions*[4]**

102. Acer repeats and realleges paragraphs 1 through 101 of this Third-Party Complaint as if set forth fully herein.

103. SKAT has filed claims against Acer for damages and restitution arising out of and related to the Plans' dealings with ED&F.

104. SKAT alleged that ED&F provided statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares, and thus, if SKAT proves its claims, then ED&F should be responsible for all or a portion of SKAT's alleged harm.

---

[4] This Claim is only made by Acer in the related-actions filed in the District of Utah, 18-cv-09797, 18-cv-09836, 18-cv-09837, 18-cv-09838, 18-cv-09839, 18-cv-09840, and 18-cv-09841.

105. Pursuant to the Utah Liability Reform Act, Utah Code §§ 78B-5-817, et seq., Acer alleges that all fault should be apportioned to ED&F for SKAT's claims against Acer, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

106. Acer intends to include ED&F on a special verdict form for the purposes of allocation of fault, consistent with the above.

## JURY DEMAND

Acer demands a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Acer respectfully requests that this Court enter judgment in its favor and against ED&F as follows:

I. Enter judgment in favor of Acer and against ED&F on the third-party claims against ED&F;

II. In the Utah Actions, apportion all fault to ED&F for SKAT's claims against Acer, pursuant to the Utah Liability Reform Act, Utah Code §§ 78B-5-817, et seq.;

III. In the event SKAT successfully proves its claims against Acer, require ED&F to indemnify Acer for all costs arising out of or related to SKAT's claims against Acer and these third-party claims, including Acer's attorneys' fees and costs, plus pre-judgment interest, costs, and expenses;

IV. Award Acer its attorneys' fees and costs; and

V. Grant such other preliminary, permanent, compensatory, or punitive relief against ED&F and in favor of Acer as the Court deems just and proper.

January 29, 2021                              Respectfully submitted,

                                              K&L GATES LLP


                                              */s/ John C. Blessington*
                                              John C. Blessington (*pro hac vice*)
                                                john.blessington@klgates.com
                                              Brandon R. Dillman (*pro hac vice*)
                                                brandon.dillman@klgates.com
                                              Michael R. Creta (*pro hac vice*)
                                                michael.creta@klgates.com
                                              John L. Gavin (*pro hac vice*)
                                                john.gavin@klgates.com
                                              K&L GATES LLP
                                              State Street Financial Center
                                              One Lincoln Street
                                              Boston, MA  02111
                                              T: 617.261.3100
                                              F: 617.261.3175

                                              *Attorneys for Defendant / Third-Party Plaintiff*
                                              *Acer Investment Group LLC*