Exhibit 19



**SKATTEMINISTERIET**

**Revisionsrapport**

**Intern Revision**
Revisionscenter København

internrevision@skat.dk

10. maj 2010

J.nr. 09-172022
Plan nr.: 09-203
Finansår: 2009

Departementschef
Peter Loft

*Læst*

*18. 5. 10*

# Undersøgelse af Provenuet fra kildebeskatningen af udlændinge – udbytteskat

## 1.    Indledning

*Baggrunden for undersøgelsen*

Skatteministeriet har i forbindelse med et forsøg på at opgøre provenuet fra kildebeskatningen af valutariske udlændinges udbytter fra danske aktieselskaber og investeringsforeninger stødt på den problemstilling, at det ikke kan udelukkes, at der refunderes for meget kildeskat via den såkaldte refusionsordning.

Ca. 75.000 danske selskaber udlodder hvert år udbytte, og den årlige udlodning har været op til ca. 300 milliarder ifølge modtagne angivelser.

Intern Revision har den 21. oktober 2009 fået en henvendelse fra Departementschefen om en revisionsmæssig undersøgelse vedrørende refusionsordningen.

*Kort om udbytteskat*

Når et selskab udlodder udbytte, skal udbytteskat behandles efter reglerne i Kildeskattelovens §§ 65-67.

Efter kildeskattelovens § 66, stk. 2 skal selskaber, der vedtager udbetaling af udbytte meddele oplysning om vedtagelsen (angivelse). Meddelelsen skal indgives senest i den følgende måned efter nævnte vedtagelse af udbytteudlodning samtidig med udløbet af selskabets frist for indberetning til indkomstregisteret af indeholdt A-skat og arbejdsmarkedsbidrag.

Efter skattekontrolloven § 9B, stk. 1 og 2 og § 10A skal selskaber og foreninger m.v., som har pligt til at indeholde udbytteskat i henhold til kildeskattelovens § 65, hvert år foretage indberetning af udbyttemodtagere, hvortil der er udloddet udbytte i det forudgående kalenderår.

I de tilfælde, hvor et dansk børsnoteret selskab udlodder udbytte til aktionærerne, administreres udbytteskatten og reduktion af Værdipapircentralen (VP). Selskabet angiver på baggrund af modtagne oplysninger fra VP. VP fremsender elek-

SKAT_MDL_001_00265003

tronisk indberetning til SKAT den 20. i januar året efter udlodningsåret.

Unoterede selskaber angiver og indberetter selv udloddet udbytte til SKAT. Angivelse af udbytte skal ske senest den 10. i den efterfølgende måned efter vedtagelsen af udbyttet og indberetning til SKAT den 20. januar året efter udlodningsåret.

Hvor modtageren af udbyttet er omfattet af kildeskattelovens § 2, stk. 1 (begrænset skattepligt) kan der ansøges om at få refunderet skatten ned til satsen i dobbeltbeskatningsoverenskomsten.

## 2.    Revisionsområde

Undersøgelsen har omfattet en gennemgang af hvordan opgørelsen af nettoprovenuet fra Kildebeskatningen af udlændinge understøttes af relevante love, systemer samt data- og statistisk materiale.

Undersøgelsen blev gennemført i perioden oktober 2009 til april 2010.

## 3.    Afgrænsning

Undersøgelsen har omfattet udbytter udloddet af selskaber og investeringsforeninger i Danmark, som omfattet af Ligningslovens § 16A.

Indeholdesfri udlodninger til udenlandske moderselskaber indgår ikke i denne undersøgelse.

Undersøgelse har ligeledes ikke omfattet maskeret udbytte eksempelvis i forbindelse med goder/bolig mv.

## 4.    Revisionsmål

Målet med den revisionsmæssige undersøgelse har været, at undersøge om:

- Der kan opgøres et korrekt nettoprovenu fra refusionsordningen ud fra de indberetninger, der indsendes til SKAT om udbytter,
- SKAT mangler indberetninger/oplysninger til at kunne opgøre et korrekt nettoprovenu fra refusionsordningen,
- Forretningsprocesserne til opkrævning af udbytteskat er dokumenteret og kendte,
- Regnskab og IT-systemer i tilstrækkelig grad understøtter en korrekt opgørelse af nettoprovenu fra refusionsordningen.

SKAT_MDL_001_00265004

## 5.    Vurderingskriterier

Undersøgelsen omfattede følgende vurderingskriterier:

- Lovbekendtgørelse 2009-03-11 nr. 176 om påligningen af indkomstskat til staten (ligningsloven),
- Lovbekendtgørelse 2005-11-14 nr. 1086 om Kildeskatteloven,
- Bekendtgørelse 2009-12-11 nr. 1247 om kildeskat (kildeskattebekendtgørelsen)
- Lovbekendtgørelse 2009-10-26 nr. 1001 om indkomstbeskatning af aktieselskaber mv. (selskabsskatteloven),
- Lovbekendtgørelse 2005-11-24 nr. 1126 om Skattekontrolloven,
- Dobbeltbeskatningsoverenskomsterne,
- Cirkulære nr. 63 af 1993-04-28 om reduktion af udbytteskat i henhold til dobbeltbeskatningsoverenskomster (VP-ordningen).

## 6.    Revisionsmetode

Revisionen er foretaget ved hjælp af møder og interviews med Skatteministeriet Jura og Samfundsøkonomi, det daværende Hovedcenter, Proces & Digitalisering – nu Borger og Virksomhed samt Midtjylland, Regnskab.

Endvidere er der foretaget indsamling, gennemgang og vurdering af relevant materiale i form af interne beskrivelser, vejledninger og forretningsgange.

Undersøgelsen er gennemført af Jens Lundgaard, Tina Laustsen, Linda Severinsen og Bo Daugaard.

## 7.    Iagttagelser

### 7.1    Organisering og ansvarsplacering af opgaven

Ansvaret for SKATs proces til håndtering af udbyttebeskatning deles af flere procesejere. Der er ikke defineret et overordnet ansvar for hele processen.

Pr. 1. oktober 2006 blev der i Skattecenter Ballerup oprettet et kompetencecenter vedrørende udbytte- og royaltyskat. Pr. 1. januar 2009 blev kompetencecentret organisatorisk flyttet til Midtjylland, Regnskab, i en afdeling benævnt Regnskab 2.

Ifølge intern meddelelse af 21. november 2006 (gældende til 2. november 2009) er det kompetencecentrets arbejdsopgaver, at taste blanketter vedrørende indberetning og angivelse, foretage rykkerprocedure vedrørende manglende indberetninger og angivelse, behandling af ansøgninger om refusion, attestation af skattepligt for danskere med udenlandske aktier, bogholderiopgaven vedrørende udbytte samt kontrol og afstemning af betaling og angivelse mv.

SKAT_MDL_001_00265005

Regnskab 2 har oplyst, at det ikke ligger indenfor deres arbejdsområde at udføre egentlig kontrol omkring udbytteindberetningerne. Regnskab 2 udfører kun kontrol med, at der er angivet det udbytte, som er vedtaget i det enkelte selskab. Al anden form for kontrol omkring udbyttebeskatning ligger i Indsats.
Intern Revision har modtaget en procesbeskrivelse for udbytteskat. Intern Revision har i samarbejde med Regnskab 2 opdateret denne (se bilag 1).

Borger og Virksomhed er procesejer for udbytteangivelserne og de obligatoriske indberetninger om udbyttemodtagere. For udbytteangivelserne har der været en navngiven procesejer, men det er først ultimo 2009, at der er udpeget en navngiven procesejer for indberetningerne af udbytteskat. Årsagen hertil er, at der ikke har været fokus på området tidligere.

## 7.2    Indberetning og angivelse af udbytteskat

Der modtages årligt op til 150.000 blanketter, der tastes manuelt ind i systemerne. TastSelv blev indført 1. januar 2004 og brugen heraf er kun langsomt blevet forøget. Der er p.t. ca. 20 % af selskaberne, som anvender TastSelv.

Det udloddende selskab skal angive og betale udbytteskat i måneden efter vedtagelsen af udbytte, mens indberetning af udbyttemodtagere skal ske senest den 20. januar det efterfølgende år, jf. skattekontrollovens § 9.

### 7.2.1   Børsnoterede selskaber

Børsnoterede selskaber/investeringsforeninger angiver udbytte på baggrund af afstemningslister fra VP. Indberetning af udbyttemodtagere foretages elektronisk af VP på vegne af det kontoførende pengeinstitut.

SKAT har en aftale med VP og de kontoførende pengeinstitutter om at danske børsnoterede aktier i depot i Danmark, som ejes af skattepligtige personer i 12 lande, kan få indeholdt den efter dobbeltbeskatningen relevante udbytteskat (nettoafregning). Denne ordning kaldes VP-ordningen.

Ordningen sikrer, at der af udbytte til udlændinge alene indeholdes udbytteskat med den sats, udbyttet kan beskattes med i Danmark efter den relevante dobbeltbeskatningsoverenskomst. Dermed opstår der ikke en refusionssag.

Forudsætninger for at deltage i VP-ordningen er, at såvel aktionær som depotfører har valgt at gå med i ordningen, at de udbyttegivende aktier er indlagt i et depot i et dansk pengeinstitut i ejerens eget navn, ejeren afgiver dokumentation til pengeinstituttet om sine bopæls- og skatteforhold, og at dokumentationen skal fornys hver 5. år eller ved flytning til et andet land.

Udenlandske pengeinstitutter uden selvstændig konto i VP samarbejder med et (dansk) pengeinstitut, der har konto i VP for at kunne håndtere danske aktier/investeringsbeviser. Det udenlandske pengeinstitut opretter en konto med tilhørende depot i et dansk pengeinstitut, og placerer de danske aktier/investerings-

SKAT_MDL_001_00265006

beviser, som det udenlandske pengeinstituts kunder ejer, i dette depot, i det udenlandske pengeinstituts eget navn. Dette depot betegnes omnibusdepot (se bilag 2 – beskrivelse af omnibusdepoter).

Omnibusdepoter fremtræder som ejet af det udenlandske pengeinstitut og kan derfor ikke være med i VP-ordningen. Det betyder, at der skal indeholdes udbytteskat efter hovedreglen, p.t. 28 %.

En række danske investeringsforeninger og andre store investorer har desuden udlagt administrationen af danske aktier/investeringsbeviser til amerikanske og andre udenlandske banker. I dette tilfælde er der ikke tale om et ægte omnibusdepot, men et nominee-depot, som efter det oplyste kun indeholder værdipapirer tilhørende én investor, hvis danske skattestatus er kendt. Men da depotet fremtræder som ejet af det udenlandske pengeinstitut, kan det ikke være med i VP-ordningen. Der skal derfor indeholdes 28 % udbytteskat, som investorerne må søge refunderet.

### 7.2.2  Unoterede selskaber

Unoterede selskaber angiver og indberetter selv udbytte til aktionærerne ved at indsende udbytteindberetning til SKAT eller ved anvendelse af TastSelv.  Indberetningen af udbyttemodtagere foretages ofte samtidig med angivelsen, selvom indberetning af udbyttemodtagere først skal ske senest den 20. januar det efterfølgende år, jf. skattekontrollovens § 9.

VP har udvidet sit forretningsområde til også at administrere unoterede selskaber. Fra 2010 skal VP også indberette udbyttemodtagere for disse selskaber.

### 7.2.3  Efterfølgende korrektioner

Regnskab 2 har oplysninger fra deres samarbejde med bankerne om, at de kontoførende institutter foretager korrektioner af de enkelte indberetninger af udbyttemodtagere som følge af fejl. Disse korrektioner kender det udloddende selskab ikke, idet det kontoførende institut ikke giver disse oplysninger videre. Det udloddende selskab har derfor ikke mulighed for at indsende korrigeret angivelse. Regnskab 2 har oplyst, at de ikke får viden om rettelser og ikke har modtaget korrigerede angivelser.

De kontoførende institutter retter fejlene via korrigeret indberetning. Regnskab 2 har oplyst, at hvis et kontoførende institut efter udlodning retter grundlaget for udlodningen får SKAT oftest ikke oplysning herom og afregningen ændres ikke. Det betyder, at der i disse situationer er forskel på det angivne og det indberettede. Såfremt det kontoførende institut opdager og retter fejl, er det uden økonomisk betydning for det udloddende selskab og SKAT.

Når det kontoførende institut retter fejl afregnes for lidt indeholdt eller for meget indeholdt udbytteskat. Dette beløb debiteres/krediteres bankkundens konto og afregnes til SKAT via regnearksordningen. Som følge heraf vil det økonomiske

SKAT_MDL_001_00265007

mellemværende mellem kunde og SKAT være korrekt opgjort.

Det udloddende selskab, som har afregnet udbytteskat på baggrund af oplysninger fra VP har ikke modtaget information om foretagne rettelse i det kontoførende pengeinstitut. Regulering af udbytteskat investor og SKAT i mellem sker udenom det udloddende selskab. Det udloddende selskabs afregning af udbytte og indeholdt udbytteskat påvirkes derfor ikke, idet det udloddende selskabs udbytte før afregning af udbytteskat fortsat er uændret. Resultatet er udelukkende, at det udloddende selskabs angivelse ikke stemmer overens med indberetningen.

### 7.2.4 Afstemninger mellem angivelse og indberetning

Der er ingen automatiske afstemninger i SKATs systemer mellem angivelser og indberetninger. Der foretages heller ikke manuelle afstemninger.

Årligt gennemføres der en rykning på baggrund af en samkøring mellem det udloddende selskabs selvangivelses felt 37 (udloddet udbytte ifølge regnskabet) og de indgivne udbytteangivelser. Regnskab 2 har oplyst, at mangler selskabets udbytteangivelse rykkes selskabet. Såfremt der er difference foretages intet.

For 2008 udbyttekørslen var startdifferencen 34 milliarder, hvor størstedelen ifølge Regnskab 2 formentlig er udlodninger datter/moder-selskaber og fejlagtigt indkomstår i TastSelv.

Regnskab 2 har oplyst, at der udsendes rykkerskrivelser til de selskaber, som ikke har angivet udbytte.

Det udloddende selskab angiver udbytteskat i måneden efter vedtagelsen af udbytte, mens indberetning af udbyttemodtagere skal ske senest den 20. januar det efterfølgende år (se bilag 3 – tidslinie over udbytteskat). Dette betyder, at der er en stor tidsforskel på, hvornår de forskellige oplysninger er SKAT i hænde, hvilket gør at en eventuel afstemning mellem det angivne og det indberettede først kan ske op til et år efter angivelse er modtaget. Den udarbejde tidslinie er konfereret og godkendt både af Regnskab 2 samt Borger og Virksomhed.

Regnskab 2 har i april 2010 foretaget en afstemning mellem VPs oplysninger til de udloddende selskaber og indberetningen til Skat vedrørende C20-indexets oplysning om udloddet udbytte udloddet i 2009 (de 20 mest omsatte aktier på Københavns Fondsbørs). 9 af C20-indexets selskaber har udloddet og indgår i afstemningen.

Afstemningen er foretaget på grundlag af de i 3S angivne udbytter med reduceret udbytteskat ifølge dobbeltbeskatningsoverenskomst og de løbende indberetninger fra VP.

Afstemningen for de 9 C20-selskaber viser, at 1 selskab stemmer, og at 8 selskaber ikke stemmer.

SKAT_MDL_001_00265008

3 selskaber fremstår uden indberetning af udbyttemodtager omfattet af VP-ordningen uagtet de 3 selskaber har oplyst udlodninger til aktionærer i VP-ordningen på kr. 5.202.583.

Regnskab 2 har oplyst, at de øvrige 5 selskaber udviser mindre differencer, som må tilskrives, at der er ændret i tallene i tiden mellem udarbejdelse af afstemningsliste og indberetning af de aktionærer, som indgår i tallet.

Samlet set er det ikke muligt, at efterforske differencerne, da der mangler revisionsspor om hvilket kontoførende pengeinstitut aktien er i depot.

Borger og Virksomhed er af den opfattelse, at det på tværs af systemerne er muligt at lave udsøgninger, således at en tilnærmelsesvis afstemning kan finde sted.

Det er Regnskab 2's opfattelse, at afstemning mellem angivelse og indberetning skal ske ved at "vende processen om", således at angivelse og indberetning skal ske samtidig (fremrykning af indberetningspligten). Dermed kan der indføres automatisk afstemning. Endvidere skal VP/pengeinstitutterne afstå fra, at rette når optælling (afstemningslister) er udarbejdet. Eventuelle efterfølgende rettelser skal foretages i samarbejde med SKAT.

En fremrykning af indberetningspligten kræver, at Skatteministeren benytter sin bemyndigelse i Skattekontrollovens § 9 A, stk. 5 til ændring af fristerne for indberetning af udbyttemodtagere.

### 7.3    Refusion af indeholdt skat

Refusioner knytter sig primært til ejere af børsnoterede aktier og investeringsbeviser, der ikke er omfattet af VP-ordningen.

Er aktieejer ikke fuldt skattepligtig til Danmark, kan der, hvis der er en dobbeltbeskatningsoverenskomst (DBO) med det land, hvori der er skattepligt, søges om refusion efter den gældende DBO. Refusion er en tilbagesøgning af for meget indeholdt udbytteskat, og dermed en ændring af det først angivne og indberettede.

### 7.3.1 Anmodning om refusion

Udbyttenota sendes til aktionæren få dage efter, det er vedtaget, at der skal udloddes udbytte. Når aktionæren har modtaget udbyttenotaen, kan der anmodes om refusion. Refusioner sker ved fremsendelse af blanket (06.003) og kopi af udbyttenota. Blanketten skal være stemplet af den udenlandske skattemyndighed i det land, aktionæren er skattepligtig til.

Efter rentecirkulæret skal SKAT tilbagebetale refusionen inden 1 måned efter kravets fremsættelse for at undgå rentebetaling. Imidlertid kan angivelses- og betalingsfristen medføre, at der kan gå op til henholdsvis 40 og 60 dage fra generalforsamlingen til betalingen skal ske. Derfor kan en hurtig anmodning om refu-

sion bevirke tilbagebetaling af udbytteskat til aktionærer, inden den indeholdte udbytteskat er angivet og betalt. Regnskab 2 berosætter dog ofte refusionssagerne indtil, der er sket angivelse og/eller en betaling fra selskabet. Regnskab 2 har oplyst, at problemet kan løses ved at angivelse og indberetning foretages samtidig (fremrykning af indberetningspligten).

Regnskab 2 udfører ikke kontrol af, om den pågældende investor reelt er aktionær i det pågældende selskab, eller om den pågældende investor reelt er skattepligtig til det pågældende udland. Blanketten gennemses af Regnskab 2 for at kontrollere, om alle oplysninger er med. Herefter udbetales refusionen.

Anvendelsen af Omnibusdepoter betyder, at der udskrives flere udbyttenotaer (swift-meddelelser) for den enkelte aktie. Det er Regnskab 2s opfattelse, at denne problemstilling besværliggør en kontrol af, hvorvidt der tilbagesøges udbytteskat mere end en gang pr. aktie.

Omnibusdepoter og nominee depoter (depot hvor de deponerede aktier ejes af andre end den registrerede depotindehaver) medfører desuden, at der ikke er kendskab til de reelle ejere af aktierne, hvorfor refusion udbetales uden dokumentation for ejerskabet og den faktiske udlodning.

Regnskab 2 har oplyst, at refusioner indtastes i 3S, med oplysning om navn, adresse/bankkonto, beløb, udloddende selskab (CVR), bundtnr. (systemjournal og revisionsspor). Bundnummeret gør det muligt at følge sporet fra SAP38 tilbage til 3S og de(n) fysiske blanket(ter) i Regnskab 2's arkiv.

Blanketter arkiveres fysisk i Regnskab 2's arkiv i de tastede bundter. Der oprettes ingen journalsager.

### 7.3.2 Regnearksordningen

For at reducere SKATs ressourceforbrug i forbindelse med anmodning om refusion, er der indgået en aftale mellem SKAT, Danske Bank, Nordea, SEB og Amagerbanken om en regnearksordning. Ved denne ordning indsender bankerne regneark udvisende hvilke udenlandske kunder, der har fået indeholdt udbytteskat med for høj sats i forhold til dobbeltbeskatningsaftalen mellem Danmark og det pågældende udland. For hver kunde oplyses identitet, aktie, udbyttes størrelse og den ønskede reduktion i udbytteskatten. Der sker ingen registrering af refusion i 3S.

Regnearket arkiveres elektronisk på H-drevet på det udloddende selskab samt udskrives og arkiveres fysisk med bilag i Regnskab 2.

### 7.3.3 Bogføring og udbetaling af refusion

Ved modtagelse hos Regnskab 2 tastes blanketten i 3S på de relevante år. På grundlag heraf dannes i 3S en udbetalingsrapport.

Udbetalingsrapporten redigeres efter den enkelte indsenders ønsker eller SKATs valg af bundtning af flere refusionsanmodninger.

Alle refusioner bogføres manuelt i SAP 38.

Hvis der er flere udbetalinger til samme investor eller pengeinstitut bogføres refusionerne som ét beløb til udbetaling via SAP 38. Vurdering af hensigtsmæssigheden i at slå beløb sammen og underretningen til pengeinstituttet foretages af den, som behandler refusionsanmodningen.

Anmodning om refusion kan vedrøre udbytte for flere år, og vil i dette tilfælde blive bogført samlet i SAP38 på udbetalingsåret. Udbytte kan refunderes i op til 20 år efter indeholdelse af kildeskatten. Fra og med 2011 ændres dette til 3 år.

### 7.4    IT-understøttelse af opgaven

Til brug for udbytteskatteadministrationen benyttes et specielt modul i selskabsskattesystemet 3S. I 3S tastes angivelse for alle selskaber, indberetning for unoterede selskaber og refusion for alle selskaber på de relevante år. 3S modtager også indberetning fra VP-ordningen om danske modtagere af udbytte fra børsnoterede og unoterede selskaber. For udenlandske modtagere modtages kun oplysning fra børsnoterede selskaber.

Borger og Virksomhed har oplyst, at 3S fungerer, som et indberetningsmodul i lighed med øvrig manuel indberetning til eKapitaldelsystemerne på andre områder. Det vil sige, at 3S videresender de indtastede oplysninger til delsystemet UDBY under eKapital (det tidligere RKO), hvor alle oplysninger om udbyttemodtagere samles for både unoterede og børsnoterede aktier samt alle investeringsbeviser/aktier i investeringsforeninger/selskaber. Dette sker uanset om de er børsnoterede/unoterede eller opdelt i personer og selskaber.

Udbetaling af refusion nedskriver den angivne udbytteskat i 3S og udbetales gennem SAP38. Der er en indbygget kontrol i 3S, der gør opmærksom på, såfremt der anmodes om mere i refusion end der er angivet i udbytteskat. Regnskab 2 har kun 1 gang været udsat for, at denne situation opstod.

Indberetninger om udbyttemodtagere, hvor der er indeholdt udbytteskat fra børsnoterede selskaber, sker elektronisk via VP til RKO/eKapital.

I 2008 er oplysninger fra 3S om udbytter og udbytteskat blevet tilgængelige via Business Object. Oplysninger modtaget i RKO/eKapital er også tilgængelige i Business Objects.

### 7.5    Opgørelse af nettoprovenu fra refusionsordningen

Provenuet fra kildebeskatningen af valutariske udlændinge kan ikke opgøres på baggrund af tallene i bogholderisystemet (SAP 38), da beløbene ikke splittes op på det år, refusionen reelt vedrører. Det betyder f.eks., at beløb bogført i 2009

SKAT_MDL_001_00265011

reelt kan vedrøre et eller flere tidligere indkomstår.

En opgørelse vil kræve, at tal til brug for opgørelse af nettoprovenuet skal udsø-
ges, sammenstilles og beregnes ud fra SAP38, 3S, RKO/eKapital og BO. Hertil
kommer usikkerheder i datamaterialet i form af, at refusioner fra regnearksord-
ningen ikke tastes i 3S, samt at bogføring af refusioner sker på udbetalingsåret.

Departementet har i samarbejde med Borger og Virksomhed samt Regnskab 2
udarbejdet en opgørelse over nettoprovenuet. Det er samstemmende oplyst, at de
foretagne udsøgninger er behæftet med stor usikkerhed. Der er dog i enhederne
ikke enighed om, dels hvordan nettoprovenuet bør opgøres, dels om det kan bli-
ve negativt, og dels om det overhovedet kan opgøres.

## 7.6    Tidligere undersøgelser

Intern Revision har erfaret, at området udbytteskat tidligere har været undersøgt
ved 3 tilfælde. Det ses ikke umiddelbart, at der er sket en opfølgning på de ne-
denstående undersøgelser.

### 7.6.1 Rapport om reduceret udbytteskat for udenlandske investorer

Told- og Skatteregion København har i sommeren 2000 udarbejdet en rapport
(j.nr. 99-5129-354) om den dokumentation, som de kontoførende institutter har
liggende vedrørende kontohavere, som er omfattet af VP-ordningen. Undersø-
gelsen omfattede 2 danske banker. Regionen konkluderede, at der kun i 37 % af
tilfældene var den korrekte dokumentation til stede i bankerne. Regionen anbefa-
lede, at SKAT følger op på denne undersøgelse, samt at der sker en undersøgelse
af andre banker.

### 7.6.2 Notat om udbytteadministrationen

På baggrund af et notat udarbejdet af den daværende udbytteadministration og
kontrolkontor den 16. marts 2005 til SKATs direktion omhandlende udbyttead-
ministrationen og de problemer, der knytter sig hertil, blev der nedsat en ar-
bejdsgruppe i sommeren 2006. Arbejdsgruppen havde til hensigt at arbejde vide-
re med problemstillingerne fra nævnte notat.

I maj 2007 har arbejdsgruppen udarbejdet et notat, hvori der oplistes fordele og
ulemper i forbindelse med en fremrykning af den obligatoriske indberetnings-
pligt. Herudover har arbejdsgruppen anbefalet, at der igangsættes et nærmere
analysearbejde vedrørende konsekvenserne ved en sådan fremrykning af indbe-
retningspligten. Notatet var en del af et problemkatalog vedrørende udbytteskat.

Borger og Virksomhed har oplyst, at rapporten fra denne gruppe blev opstarten
til projekt "Fremrykket ligning" og efterfølgende "Projekt e-kapital", for så vidt
angår indberetningsdelen af udbytte (ikke angivelse).

Regnskab 2 har oplyst, at manglende fokus og organisationsændringer gjorde, at

SKAT_MDL_001_00265012

der på angivelsesdelen ikke kom noget ud af arbejdsgruppens problemkatalog.

*7.6.3 Revision af udbytteadministration ved Skattecenter Ballerup*

Intern Revision har i 2005 foretaget revision af udbytteadministrationen ved Skattecenter Ballerup (J.nr. 05-0721-006524). Intern Revision konkluderede bl.a. i denne forbindelse, at det ikke var tilfredsstillende, at det i visse situationer er muligt for modtagere af udbytte at få udbetalt udbytteskat, selvom der ikke til SKAT er indbetalt den indeholdte udbytteskat. Intern Revision bemærkede desuden, at udbytteadministrationen har ydet en stor indsats med at gøre opmærksom på de problemer der er/har været, bl.a. ved udarbejdelse af et problemkatalog (som er udarbejdet til brug for ovenstående arbejdsgruppe).

## 8.  Konklusion

Formålet med undersøgelsen har været, at undersøge refusionsordningen i forbindelse med for meget betalt kildeskat af udbytte, herunder opgørelse af SKATs provenu fra kildebeskatningen af udlændinge.

Intern Revision konstaterer på baggrund heraf, at

- der kun med stor usikkerhed kan opgøres et tilnærmelsesvist korrekt nettoprovenu fra refusionsordningen ud fra de oplysninger, der er i SKATs systemer om udbytte og refusioner, idet en opgørelse af provenuet fra kildebeskatningen af valutarisk udlændinge vil kræve, at tal skal udsøges, sammenstilles og beregnes ud fra SAP38, 3S, RKO og BO. Hertil kommer usikkerheder i datamaterialet,

- SKAT mangler indberetninger/oplysninger til at kunne opgøre et korrekt nettoprovenu fra refusionsordningen, idet refusion via regnearksordningen ikke tastes i 3S, hvilket gør datamaterialet ufuldstændigt,

- forretningsprocesserne til registrering, opkrævning og sagsbehandling af udbytteskat er dokumenteret, men har ikke været fuldt opdateret,

- regnskabs- og IT-systemer ikke i tilstrækkelig grad understøtter en korrekt opgørelse af nettoprovenu fra refusionsordningen. Baggrunden herfor er, at refusioner kan tilbagesøges i op til 20 år, og bogføring i SAP38 af refusioner sker på udbetalingsåret. Indberetning af udbyttemodtagere lagres i RKO/eKapital eller 3S afhængigt af aktien/papirets art og aktionærens skattestatus.

SKAT_MDL_001_00265013

Intern Revision konstaterer yderligere, at

- SKAT ikke har etableret en egentlig proces til styring af de samlede indberet-
ninger, der skal benyttes ved opgørelse af nettoprovenuet, da der afhængigt af
aktien/papirets art indberettes enten til 3S eller RKO/eKapital,

- der foretages ingen afstemninger mellem de udbytter, som selskaberne angi-
ver, og de udbytter, som indberettes for udbyttemodtagere. Der gennemføres
ligeledes ikke kontrol af, om den udbytteskat, som selskaberne indbetaler, og-
så stemmer med den af udbyttemodtagere selvangivne udbytteskat. Afstem-
ningsproblematikken er desuden påvirket af den tidsmæssige forskydning på
næsten 1 år mellem angivelse og indberetning,

- der kan refunderes udbytteskat før, skatten er indbetalt/indberettet til SKAT,

- anvendelsen af Omnibusdepoter betyder, at der udskrives flere udbyttenotaer
(swift-meddelelser) for den enkelte aktie. Der foretages ingen kontrol af, hvor-
vidt der tilbagesøges udbytteskat mere end en gang pr. aktie,

- der føres ingen kontrol i forbindelse med refusionsanmodninger med om inve-
stor reelt er aktieejer og om investor reelt er skattepligtig til Danmark eller ej,

- der ses ikke, at være fulgt op på de undersøgelser, som tidligere har været
igangsat af SKAT på området.


## 9.    Anbefaling

Intern Revision skal på basis af ovenstående konklusion anbefale, at

- der etableres et overordnet ansvar for hele processen til håndtering af udbyt-
tebeskatningen,

- der etableres et kontrolmiljø, som sikrer at der er overensstemmelse mellem
angivelse og indberetning,

- der foretages en fornyet vurdering af den tidligere etablerede arbejdsgruppes
problemkatalog for udbytteskat,


## 10.    Høring hos de reviderede enheder

Udkast til rapport har været til udtalelse hos de reviderede enheder.

Intern Revision har efter en gennemgang af de modtagne høringssvar taget en af
konklusionerne ud.

SKAT_MDL_001_00265014

Koncerncentret, Jura og Samfundsøkonomi har ikke haft bemærkninger til rapporten.

Bemærkninger fra Regnskab 2 samt Borger og Virksomhed af faktuel karakter er indsat løbende under afsnittene 1-7. Høringssvar fremgår af bilag 4.


Mads Blokhus        /        Bo Daugaard

SKAT_MDL_001_00265015

Bilag 1



SKAT_MDL_001_00265016

Bilag 2

## Beskrivelse af Omnibusdepoter



IR – marts 2018

SKAT_MDL_001_00265017



Bilag 3a

SKAT_MDL_001_00265018



Bilag 3b

Tidslinie over udbytteskat fra 2010

SKAT_MDL_001_00265019



**SKATTEMINISTERIET**

**Bilag 4**

**Intern Revision**

10. maj 2010

## Høringssvar

*Regnskab 2 har følgende bemærkninger til rapporten:*

*Bemærkning til rapporten*

Til afsnit 7.2.4 anfører Regnskab 2, at der ikke foretages afstemning mellem angivelse og indberetning. Derfor opdages en manglende angivelse (og betaling) ikke, hvis der kun er indsendt indberetning af udbyttemodtagere. Og indberetningen medfører godskrivning af udbytteskatten.

For de ca 2 millioner aktionærer i børsnoterede selskaber giver indberetningen af udbyttemodtagere ingen afstemningsmulighed overfor det udloddende selskabs angivelse.

Til afsnit 8, Konklusion anfører Regnskab 2 vedrørende den manglende afstemning af refusioner, at da udlændinge typisk får indeholdt udbytteskat med 28%, som er hovedreglen, er det ikke muligt at udskille udlændinges udbytte før refusion i 3S.

*Ønsker til løsning af uhensigtsmæssighederne*

Med forårspakken 2010 er der åbnet mulighed for, at fristen for indberetning af udbyttemodtagerne kan blive sammenfaldende med fristen for at angive og betale udbytteskat. Det må forventes, at denne mulighed udnyttes. Kombineres denne mulighed for fristsammenfald med en elektronisk indberetningsordning af udbytteangivelse/indberetning af udbyttemodtagere opnås en optimal løsning på området. Der kan herved spares en blanket baseret forretningsgang, ligesom den pt manglende afstemningsmulighed opnås.

VP ordningen udvides til at omfatte alle lande, som Danmark har en dobbeltbeskatningsoverenskomst med og til alle aktionærer, såvel fysiske som juridiske personer. Derved vil problemet med afstemning af refusioner og indeholdt udbytteskat blive løst. Samtidig sikres det, at der pr aktie kun gives reduktion 1 gang, hvor refusion i princippet kan ske for samme aktie i flere led.

SKAT_MDL_001_00265020

Det må kræves for at være med i VP ordningen, at udenlandske aktieejere indberettes som aktieejere. Pengeinstitutterne, som står for depoterne, indestår for rigtigheden af den særlige skattestatus, som er markeret på depoterne.

*Opfølgning på udbytteadministrationen*

Som bemærkning til revisionens konklusion om opfølgning på tidligere undersøgelser samt bemærkningen i afsnit 7.6.2 om manglende fokus skal det oplyses, at siden 2003 har udbytteskatteadministrationen/Regnskab 2 haft adskillige tiltag overfor og sammen med HC og andre.

Summarisk oversigt:

2003
Udvidelse af VP ordningen

2004
Nedsættelse af arbejdgruppe for at finde ansvarligt kontor i HC
Nedsættelse af arbejdgruppe til genoptagelse af brug af 3 S

2005
Fortsat arbejde med brug af 3 S
Nedsættelse af arbejdsgruppe om fristændring for indberetning af udbyttemodtagere

2006
Henvendelse til HC om manglende afstemning mellem angivelse og godskrivning af udbyttemodtagere.

I forbindelse med etablering af kompetencecenter Udbytte- og Royaltyskat blev udsendt en Intern meddelelse 30.11.2006, som i bilag 3 havde en opregning af udbytteskat og de udfordringer som pressede på at blive løst.

2007
Refusioner og fristerne herfor
Udvidelse af VP ordningen sammen med Finansrådet

2008
Med i Projekt Fremrykket Ligning – fremrykket indberetning af udbyttemodtagere

Møde med Departementet
(som har resulteret i lovændringer)

Foreslået hurtig digitalisering af udbytteadministrationen

2009
Vedtaget nyt lovgrundlag for indberetningsfristen, bemyndigelse til ministeren

2010
Fremsat ovenanførte forslag om harmonisering af angivelse/indberetningsfrister
og digitaliseret indberetningordning af udbytteangivelse/indberetning

*Borger og Virksomhed har følgende bemærkninger til rapporten:*

*Bemærkninger til rapporten*

Udlodninger fra investeringsforeninger indberettes ikke gennem 3S, selvom de
er unoterede. Dette gælder, fra og med 2010 også de unoterede investeringssel-
skaber.

Tasteopgaven gennem 3S omfatter (efter ændringen i L201) alene unoterede
danske aktier som ikke er indskrevet i Værdipapircentralen. De ikke indskrevne
unoterede selskaber kan dog indberette elektronisk (TP- indberetning eller bånd,
kassette mv.) udenom 3S og direkte til delsystem UDBY.

 Der indberettes om udenlandske udbyttemodtagere uanset om udlodningen
stammer fra børsnoterede eller unoterede aktier/beviser

BO er en kopiregistrering af oplysninger indberettet efter de obligatoriske indbe-
retningspligter og er derfor ikke noget selvstændigt register.

Afsnit 7.2.3 efterfølgende korrektioner omhandler alene indberetningen foretaget
af de kontoførende. Retter selskabet selv, som har indberetningspligt vil de jo
også kunne rette angivelsen, da de selv står for begge dele.

Afsnit 7.2.4 omtales i 6 afsnit en undersøgelse der siger, at 3 børsnoterede sel-
skaber fremstår uden indberetning om udbyttemodtagerne. Borger og Virksom-
hed har vanskelig ved at tro at det er sandt, da indberetningen kommer fra de
kontoførende og ikke fra selskabet selv. Det skulle være et sammentræf, såfremt
der ikke er flere udbyttemodtagere og at de alle skulle have samme kontoførende
institut.

Hvis den omtalte undersøgelse alene omfatter den administrative indberetning
om VP-ordningen, hvilket Borger og Virksomhed formoder, så kan undersøgel-
sen virke misvisende, idet indberetningerne om udbyttemodtagerne (uanset VP-
ordning eller ej) vil indgå i e-Kapitalindkomstregistret UDBY eller IFPA.

I afsnit 7.2.4, tredjesidste afsnit anføres, at Borger og virksomhed er af den op-
fattelse at det på tværs af systemerne er muligt at lave udsøgninger, således at en
tilnærmelsesvis afstemning kan finde sted. Dette er korrekt for de unoterede, idet
der er sammenfald mellem angivelsen og indberetningspligt om udbyttemodta-
gerne og, som I selv og udbytteadministrationen anfører, at både angivelse og
indberetning for de unoterede i de fleste tilfælde indsendes samtidig. Det mener
Borger og Virksomhed fortsat.

SKAT_MDL_001_00265022

For de børsnoterede er det først muligt når ændringen (L201) slår igennem fra og med 2010. Dog vil den optimale afstemning først kunne etableres når den løbende indberetning forhåbentlig indføres fra og med 2011. Ovenstående har Borger og Virksomhed sagt flere gange på vores møder, og det vil være unfair at skrive den tekst der står.

Til bilag 1 bemærkes, at alle indberetninger samles (børsnoterede/unoterede og investeringsforeninger/selskaber i samme indgangstest under delsystem e-Kapital). Er oplysningerne korrekte, kan de umiddelbart ikke deles i danske og udenlandske, idet såfremt der for de udenlandske er en dansk identifikation, så sendes disse samme vej som de danske, hvilket betyder, at de kommer på R75, skattemappe eller medtages på årsopgørelsen såfremt det viser sig at oplysningen om valutarisk udlænding var forkert og personen fx er fuld skattepligtig. Som supplement hertil kan nævnes:

- at afviste sendes ud til den indberetningspligtige (det kontoførende/depotføreren eller selskabet).

- at de valutariske udlændinge uanset dansk identifikation udveksles med udlandet efter EU-rentebeskatningsdirektivet eller ud fra en DBO – aftale, hvis oplysningerne er omfattet af disse.

Til bilag 3 bemærkes, at der er nogle faktuelle fejlinformationer. Dels med definitionen af børsnoteret og unoteret kontra indberetningsreglerne efter SKL, dels vedr. sidste frist for indberetning til SKAT. Det er ikke sidste frist for indberetning til SKAT, det er rettidig frist for indberetning til SKAT efter SKL. Indberetning til SKAT kan altid foretages, men via edb medie kun frem til og med 1. juli indkomståret (modtagerens indkomstår) + 2 (2010 regler). For 2009 og tidligere var fristen 1. oktober i året efter indkomståret. Intern Revision har efterfølgende opdelt bilag 3 i regelsættet før og efter 2010.

Afslutningsvis skal nævnes, at VP–ordningen (den administrative indberetning, der indberettes til Ballerup) ikke kommer i e-Kapital som anført i bilag 3.
*Tiltag på området*

Borger og Virksomhed har oplyst, at der er sket en række tiltag på området, her kan nævnes:

2009:
Indberetningen vedrørende indkomståret 2009 (udbyttemodtagerens)
Der indføres obligatorisk indberetningspligt af CVR/SE nr. og navn på den udloddende investeringsforening mv. (før frivillig)

Gennem e-Kapital projektet sættes fokus på, at alle opfylder den pålagte indberetnings-pligt

Der indføres obligatorisk indberetningspligt om depotkoden
(investeringsforeninger mv.). Dvs. aktier/beviser i pensionsdepoter er ikke
længere undtaget fra indberetningspligt.

2010:
Indberetningen vedrørende indkomståret 2010 (udbyttemodtagerens)
Generelt ændres definitionen af børsnoterede og unoterede til – optaget til handel
på et reguleret marked, eller ikke optaget til handel på et reguleret marked.

Den ændrede definition betyder, at flere af de tidligere unoterede aktier vil blive
indberettet elektronisk via de kontoførende institutter. Det betyder, at
indberetningerne fra selskaberne selv indskrænkes og der sikres en bedre og
fyldestgørende indberetning.

Der indføres obligatorisk indberetningspligt af CVR/SE nr. på den udloddende
selskab (børsnoterede) mv.

Der indføres obligatorisk indberetningspligt om depotkoden (aktier mv.). Dvs.
aktier i pensionsdepoter er ikke længere undtaget fra indberetningspligt.

5 % reglen om undtagelse fra indberetningspligt ophæves og der skal indberettes
om den hvortil udlodningen er foretaget.

Åbningstiderne udvides for IT-indberetning til 1. juli indkomståret + 2

2011:
Der indføres løbende indberetningspligt om udloddede udbytter til både personer
og selskaber

Konklusionens sidste afsnit synes unfair ud fra de ændringer, som SKAT har
gennemført med L201. Der kan gøres mere, men der er med disse ændringer,
samt en indberetningsmæssig afstemning gennem 3S og UDBY, så er der gjort et
stort gennembrud på området.

Det er desuden Borger & Virksomheds opfattelse, at der med de løbende korrek-
tioner af indberetningssystemerne og lovgrundlaget for indberetningerne 2009 –
2011 er gjort væsentlige tiltag til understøttelse af afstemningen og indberetnin-
gen, men mener dog, at følgende løsningsforslag kunne være relevante:

- Afstemninger - f.eks vil en styrket indberetningskontrol på kildegrundla-
  get (selskab/depotregistrering) være en god løsning.
- Indførsel af en hjemmel, som gør de forskellige kontoførende institutter
  ansvarlige for korrekt administration/indberetning af udbytteskat. En
  hjemmel som svarer til hjemlen i Kildeskattelovens § 65 omkring hæftel-
  se ved anvendelse/administration af frikort.
- Indberetning af råderet (fuldmagtsforhold) over de enkelte depoter, idet
  man herved vil få at vide, hvem der har det reelle ejerskab over aktierne
  (Gennemsigtighed i deponeringen).

SKAT_MDL_001_00265024

- Ændret kunderegistrering og indberetning af ejerforhold, således at et par enkelte af de eksisterende ejerstatuskoder splittes yderligere op. Fx i ejerforhold der på udlandssiden gælder eneejer person, eneejer selskab, flere end 2 ejere og administrator.
- IT – understøttelse af hele frikortproceduren (udstedelse, registrering) og udstilling i lighed med Forespørgsel på udbytteindeholdelsesprocent
- En indberetningsmarkering for at personen er med i den såkaldte "VP – ordning"

Med skattereformen blev det muligt at foretage forskellige systemtiltag der vil kunne forbedre indberetningen om udbyttemodtagerne, og som ligeledes kan bane vejen for at foretage en bedre afstemning af udlodninger fra både børsnoterede, unoterede og investeringsforeningsbeviser mv.

SKAT_MDL_001_00265025