**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: 18-cv-04434; 18-cv-04899; 18-cv-05053; 18-cv-07824; 18-cv-07827; 18-cv-07828; 18-cv-07829; 18-cv-09797; 18-cv-09836; 18-cv-09837; 18-cv-09838; 18-cv-09839; 18-cv-09840; 18-cv-09841; 18-cv-10100; 19-cv-01781; 19-cv-01783; 19-cv-01785; 19-cv-01788; 19-cv-01791; 19-cv-01792; 19-cv-01794; 19-cv-01798; 19-cv-01800; 19-cv-01801; 19-cv-01803; 19-cv-01806; 19-cv-01808; 19-cv-01809; 19-cv-01810; 19-cv-01812; 19-cv-01813; 19-cv-01815; 19-cv-01818; 19-cv-01865; 19-cv-01866; 19-cv-01867; 19-cv-01868; 19-cv-01869; 19-cv-01870; 19-cv-01871; 19-cv-01873; 19-cv-01893; 19-cv-01894; 19-cv-01895; 19-cv-01896; 19-cv-01898; 19-cv-01904; 19-cv-01906; 19-cv-01911; 19-cv-01918; 19-cv-01922; 19-cv-01924; 19-cv-01926; 19-cv-01928; 19-cv-01929; 19-cv-01930; 19-cv-01931; 19-cv-10713. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR ISSUANCE OF REQUESTS FOR INTERNATIONAL JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE IN DENMARK**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ................................................................................................................4

      Defendants' Rule 30(b)(6) Notice and SKAT's responses thereto.....................................4

      SKAT's witnesses.............................................................................................................5

      Defendants' Motion .........................................................................................................7

LEGAL STANDARD.........................................................................................................8

ARGUMENT.....................................................................................................................9

      I.       DEFENDANTS SHOULD NOT BE PERMITTED TO TAKE
                  EVIDENCE FROM ANY OF THE FOURTEEN WITNESSES TO THE
                  EXTENT THEY ARE UNABLE TO DO SO BEFORE THE JUNE 30,
                  2021 DISCOVERY DEADLINE. ...............................................................9

      II.     THE DISCOVERY DEFENDANTS SEEK IS IRRELEVANT
                  OR IS UNREASONABLY CUMULATIVE AND CAN
                  BE OBTAINED ELSEWHERE MORE CONVENIENTLY. .............................10

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blagman v. Apple, Inc.*, No. 12 Civ. 5453(ALC)(JCF), 2014 WL 1285496
(S.D.N.Y. Mar. 31, 2014) ................................................................................................9

*Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, No. 05 Civ.
5741(HB), 2005 WL 3030816 (S.D.N.Y. Nov. 10, 2005).............................................11

*Gucci Am., Inc. v. Weixing Li*, No. 10 Civ. 4974(RJS), 2012 WL 5992142
(S.D.N.Y. Nov. 15, 2012) .............................................................................................10

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769
(S.D.N.Y. 2012) ..............................................................................................................8

*Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117 (S.D.N.Y. 2019) .....................................8

*Seoul Semiconductor Co. Ltd. v. Nichia Corp.*, 590 F. Supp. 2d 832 (E.D. Tex.
2008) ..............................................................................................................................10

*Skyline Steel, L.L.C. v. Pilepro, L.L.C.*, No. 13-CV-8171 (JMF), 2015 WL
13832108 (S.D.N.Y. Jan. 28, 2015).............................................................8, 9, 12, 13

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of
Iowa*, 482 U.S. 522, 107 S.Ct. 2542 (1987).................................................................9

*Viasat, Inc. v. Space Systems/Loral, Inc.*, No. 12-CV-0260-H (WVG), 2013 WL
12061801 (S.D. Cal. Jan. 14, 2013).............................................................................12

*Villella v. Chem. Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2018 WL
2958361 (S.D.N.Y. Jun. 13, 2018) ................................................................................8

*Yukos Capital S.A.R.L. v. Feldman*, No 15-cv-4964 (LAK), 2016 WL 3545947
(S.D.N.Y. Jun. 21, 2016) ...............................................................................................9

**Statutes and Rules**

Fed. R. Civ. P. 26(b)(1)......................................................................................................8

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................................8

Fed. R. Civ. P. 26(b)(2)(C)(ii) ..........................................................................................8

ii

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to defendants' motion for issuance of fourteen letters of request to obtain testimony and documents from fourteen individuals in Denmark who are not parties to these actions, pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").[1]

## PRELIMINARY STATEMENT

SKAT opposes defendants' motion in its entirety to the extent it would extend discovery indefinitely while defendants pursue discovery from fourteen individuals in Denmark, many of whose testimony is entirely irrelevant or cumulative of discovery that SKAT already has agreed to provide. Discovery in these actions has been ongoing for more than two years. One year ago, the parties jointly proposed that all fact discovery would cut-off on December 15, 2020. Notwithstanding the impact the COVID-19 pandemic had on the discovery schedule, SKAT managed to depose 23 witnesses prior to December 15 (and an additional six since then) and did not depose all defendants by that date in large part due to those defendants refusing to schedule their depositions prior to year-end. By contrast, defendants deposed a single SKAT witness in 2020. Defendants refused to depose a former SKAT employee in late February and further refused to depose SKAT's designated 30(b)(6) witnesses in early March (notwithstanding having noticed the 30(b)(6) deposition for late December 2020).

The parties recently agreed on a new June 30, 2021 fact discovery deadline. Now, when discovery should be wrapping up as that deadline approaches, defendants instead ask the Court

---

1.  *See* Mot. for Issuance of a Request for Int'l Judicial Assistance to Obtain Evidence in Denmark, No. 18-md-02865 (LAK), ECF Nos. 548-50. SKAT does not oppose the issuance of letters of request seeking discovery from Dorthe Pannerup Madsen, René Frahm Jørgensen, Laurits Cramer, Jens Sørensen and Helen Sørensen, but does oppose defendants continuing to seek discovery pursuant to any such letters the Court should issue after the parties' agreed-on June 30, 2021 fact discovery deadline.

to start the lengthy and uncertain process of issuing fourteen letters rogatory pursuant to the

Hague Convention requesting that testimony be taken in Denmark.  This comes on the heels of

defendants requesting additional letters rogatory for the testimony of nine former Tax Ministers

in Denmark.  In total, defendants are seeking to take 32 depositions (23 through the Hague

Convention, five whom SKAT has agreed to produce, and another four current employees whom

SKAT has not agreed to produce) before fact discovery can close.

Defendants offer no explanation for why they waited so long to seek this relief from the

Court, particularly when the delays associated with seeking testimony pursuant to the Hague

Convention are so well known.  Defendants could have made their motion months, if not years,

ago, because most of the witnesses from whom they seek testimony are named in the public

reports and news articles cited in their motion, and in the thousands of documents SKAT

produced throughout 2020.  Indeed, defendants identified to SKAT more than five months ago a

laundry list of potential witnesses, many of whom they now seek to depose via the Hague

Convention.  SKAT should not be prejudiced by defendants' dilatory tactics.  Thus, to the extent

that the Court exercises its discretion to issue any of defendants' proposed letters rogatory, any

such discovery should be subject to the agreed June 30, 2021 fact discovery deadline, and

defendants should not be permitted to use any of this discovery to prolong fact discovery past

that deadline.

SKAT further opposes defendants' motion to extent that defendants seek discovery from

Leif Normann Jeppesen, Jette Zester, Birgitte Normann Grevy, Richard Hanlov, Peter Loft,

Kjeld Rasmussen, Ivar Nordland, Carl Helman and Ditte Juulsgaard Andersen.  Notwithstanding

that defendants waited until the end of discovery to begin this process, they nonetheless assert

that "each of these witnesses is essential" to establishing SKAT's and the Ministry of Taxation's

purported "aware[ness] of the risks and problems associated with the inadequate controls,"

supposed "proposals made since at least 2006 to remedy these risks," and alleged "ultimate

decisions to reject these proposals."  (Defs. Mem. 2.)  But even if any of that were either true or

relevant—both of which SKAT disputes—defendants will obtain the information they seek (and

in a much more timely fashion) from the witnesses SKAT already agreed to produce—without

the need to resort to the expense and delay of the Hague Convention.

Defendants served SKAT with a notice of deposition pursuant to Federal Rule of Civil

Procedure 30(b)(6) that covers a wide range of topics, including all the information that

defendants purportedly seek from these nine individuals, *i.e.*, SKAT's processes and controls;

reports, audits, investigations and analyses of the refund process; any action to respond to those

reports, audits, investigations and analyses; and "early warnings" that SKAT issued to the

Ministry of Taxation.

In response to defendants' notice, SKAT has designated two representative witnesses

who will testify on its behalf and in their individual capacities, one of whom, Jens Brøchner, was

the permanent secretary to the Minister of Taxation during the relevant period, and the other of

whom, Christian Ekstrand, led SKAT's investigation into defendants' fraud.  In addition, SKAT

has agreed to make available for deposition Lisbeth Rømer, who was in charge of SKAT's

refund unit during the relevant period, Bo Daugaard, who worked in the internal audit unit and

co-authored the 2010 audit report to which defendants cite repeatedly in their memorandum, and

Anne Munksgaard, who supervised Mr. Ekstrand's investigation into the fraud perpetrated upon

SKAT.

Accordingly, to the extent it seeks testimony from these nine individuals, defendants'

motion should be denied because it fails to identify any relevant testimony that defendants

3

purportedly need from them that they cannot obtain much more easily from SKAT's 30(b)(6)

and other witnesses.

## BACKGROUND

These actions are among the 183 that SKAT commenced in 11 federal District Courts,

now consolidated in this multi-district litigation for pretrial purposes, against U.S. pension plans

and related individuals and entities arising from the defendants' submission to SKAT of

fraudulent applications for refunds of tax purportedly withheld from dividends that Danish

companies issued to their shareholders.[2]  On February 26, 2020, the parties jointly submitted to

the Court a proposed discovery schedule that included a December 15, 2020 fact discovery

deadline.[3]  SKAT deposed 23 defendants, and attempted to depose others, prior to that date, and

has deposed an additional six defendants since.  Defendants deposed a single witness in

December 2020.  In part due to the impact of the COVID-19 pandemic, the parties have agreed

to a revised schedule that includes a June 30, 2021 fact discovery deadline, for which the parties

intend to seek the Court's approval.

**Defendants' Rule 30(b)(6) notice and SKAT's responses thereto**

On November 13, 2020, defendants served their notice to take SKAT's deposition under

Federal Rule of Civil Procedure 30(b)(6), identifying 24 topics for the deposition.[4]  The topics

included in defendants' notice seek testimony concerning the precise subjects about which

---

2.  SKAT and defendants Christopher Nowell and Tveter LLC Pension Plan stipulated to the voluntary dismissal of the action captioned *SKAT v. Tveter LLC Pension Plan*, No. 18-cv-10130 (LAK) (S.D.N.Y. Jan. 29, 2021).  *See* Stipulation and Order of Voluntary Dismissal, No. 18-md-02865 (LAK), ECF No. 526.

3.  Letter addressed to Judge Lewis A. Kaplan from Marc A. Weinstein re: Joint Status Report, No. 18-md-02865 (LAK), ECF No. 279.

4.  Defendants' Rule 30(b)(6) deposition notice is attached as Exhibit 1 to the Declaration of Marc A. Weinstein, dated March 15, 2021 (the "Weinstein Decl.").  Defendants noticed the deposition for December 22 and 23, 2020, or such other dates as agreed by the parties.  SKAT had offered to schedule the 30(b)(6) deposition for the first week of March 2021.  Defendants claimed they could not conduct the deposition then or at any time in March.  The parties currently are negotiating dates for the deposition.

defendants now seek additional testimony, which they claim is relevant to "SKAT's equitable

claims" and "defenses relating to causation, failure to mitigate, contributory or comparative fault,

the statute of limitations, and even the revenue rule." (Defs. Mem. 2.)  On January 7, 2021,

SKAT served its responses and objections to defendants' notice.  The designated topics for

which SKAT has agreed to provide a witness include:

- Topic 2:  "SKAT's policies, procedures, practices, protocols, or processes for processing, reviewing, approving or denying, and paying dividend withholding tax refunds and/or claims";

- Topic 3:  "Standards, rules, and protocols . . . for determining ownership of shares and entitlement to dividends";

- Topic 4:  "SKAT's system(s) for verifying ownership of shares, receipt of dividends, and withholding of taxes paid";

- Topic 7:  "SKAT's controls related to the collection and/or payment of withheld tax refunds and/or claims";

- Topic 10: "investigations, reports, audits, or analyses drafted or conducted by or on behalf of SKAT or the Ministry of Taxation regarding the payment of dividend withholding taxes . . . and . . . refunds," including the 2006 "Problemkatalog" and 2010 internal audit (*see* Defs. Mem. 3-5), among others, "as well as any remedial or other actions taken in response" thereto;

- Topic 11:  "Any 'early warning' issued by SKAT to the Ministry of Taxation"; and

- Topic 21:  "The rationale and process for revoking the prior approval of the Defendants' dividend withholding tax claims."

(Weinstein Decl. Ex. 1 at 4-5, 7.)

**SKAT's witnesses**

SKAT has agreed to produce for deposition six witnesses, who collectively can provide

the defendants with the information they require.  SKAT designated two individuals to testify on

its behalf on the 30(b)(6) topics sought by defendants: Jens Brøchner and Christian Ekstrand,

both of whom will also testify in their individual capacities.  Mr. Brøchner is the permanent

secretary to the Minister of Taxation and has served in that position since 2012.  Mr. Brøchner

will be able to answer any questions defendants have about the Ministry of Taxation's

knowledge of relevant matters and any particular decisions it made.

Mr. Ekstrand is a Chief Consultant at SKAT and led SKAT's investigation following its

receipt of information in June 2015 indicating that certain claimants may have submitted

fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.

Mr. Ekstrand can answer questions about SKAT's processes and controls related to refunding

dividend withholding tax and SKAT's discovery of the fraud, including SKAT's actions taken in

response to "investigations, reports, audits, or analyses drafted or conducted by or on behalf of

SKAT or the Ministry of Taxation regarding the payment of dividend withholding taxes." (*See*

Weinstein Decl. Ex. 1 at 5 (Topic 10).)

SKAT also has agreed to produce Lisbeth Rømer, who was employed by SKAT until

2013 and will testify in her individual capacity.[5]  According to defendants, Ms. Rømer "began

sounding alarm bells" in 2002 when she became head of SKAT's dividend tax unit.  (Defs.

Mem. 3.)  In 2006, Ms. Rømer wrote what defendants term a "formal memorandum" about a

particular refund application, in which she purportedly "outlined why SKAT had no ability to

verify the fundamental facts alleged in the reclaim application."  (Defs. Mem. 3.)  Also in 2006,

Ms. Rømer, along with her colleague Jette Zester, whose duplicative testimony defendants now

seek, drafted the "Problemkatalog," which defendants characterize as "an almost 30-page set of

policy proposals to improve SKAT's controls."  (Defs. Mem. 4.)

In addition, though SKAT believes their testimony will be unnecessarily cumulative,

SKAT has agreed to make available Bo Daugaard and Anne Munksgaard to the extent

---

5.  SKAT offered to produce Ms. Rømer for deposition on February 25, 2021.  Defendants insisted they could not
    depose Ms. Rømer in late February or even March.  The parties are still negotiating a date for the deposition.

defendants deem those depositions necessary after taking the depositions of Mr. Ekstrand and

Ms. Rømer.  Mr. Daugaard served in the Ministry of Taxation's internal audit unit until

approximately 2011 and co-authored the 2010 audit report that made the supposedly "key

observations" bullet-pointed in defendants' memorandum.  (Defs. Mem. 4-5; Declaration of

Sharon L. McCarthy, dated March 6, 2021 ("McCarthy Decl."), Ex. 20 at 13.)  Ms. Munkgaard is

a Director and supervised Mr. Ekstrand's investigation of defendants' fraud.[6]

**Defendants' motion**

On March 6, 2021—over two months after the original December 15, 2020 fact discovery

deadline and with under four months left before the new, agreed-upon June 30, 2021 deadline—

defendants filed their motion requesting that the Court issue fourteen letters rogatory to the

judicial authority in Denmark seeking testimony and documents from fourteen individuals who

have information purportedly relevant to these actions.  This motion comes just a few weeks

after defendants' February 15 motion requesting that the Court issue letters rogatory to Denmark

for the testimony of nine former Tax Ministers.  Thus, in addition to the five agreed upon

depositions that defendants have yet to take, defendants seek 23 total depositions through letters

rogatory to Denmark.

Glaringly omitted from the motion is any explanation why defendants waited until the

end of discovery to begin a process of such a lengthy and uncertain duration as seeking evidence

through the Hague Convention.  Nor does the motion offer any basis to justify what would be

egregiously cumulative discovery in light of the witnesses that SKAT already has agreed to

---

6.   The sixth witness is Hanne Hald, who was at SKAT until 2018, and who SKAT, at defendants' request,
     produced for deposition on December 3, 2020.  Defendants also seek the depositions of four additional
     members of SKAT's investigative team.

provide without resort to the Hague Convention, which is generally reserved for seeking foreign

judicial assistance that is necessary for the determination of an action.

## LEGAL STANDARD

Letters rogatory are requests, premised on "the comity existing between nations," by the

court in which an action is pending to a foreign court to perform some judicial act.  *Lantheus*

*Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 778 (S.D.N.Y. 2012) (internal

quotation omitted).  In issuing such requests, "courts should be mindful of the possible burden

placed on [the] foreign judiciary."  *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y.

2019).

"In determining whether to issue a letter of request, courts apply the discovery principles

contained in Federal Rule of Civil Procedure 26."  *Villella v. Chem. Mining Co. of Chile Inc.*,

No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *3 (S.D.N.Y. Jun. 13, 2018) (internal quotation

omitted).  Thus, letters rogatory may be issued to "obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case,"

but courts must not permit discovery that "is unreasonably cumulative or duplicative, or can be

obtained from some other source that is more convenient, less burdensome, or less expensive,"

or where "the party seeking discovery has had ample opportunity to obtain the information by

discovery in the action."  Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i) & (ii).  "The party seeking

discovery through the Convention bears the burden of demonstrating that proceeding in that

manner is necessary and appropriate."  *Skyline Steel, L.L.C. v. Pilepro, L.L.C.*, No. 13-CV-8171

(JMF), 2015 WL 13832108, at *1 (S.D.N.Y. Jan. 28, 2015) (internal quotation omitted).

Whether to "issue letters rogatory is committed to the court's discretion."  *Blagman v. Apple,*

*Inc.*, No. 12 Civ. 5453(ALC)(JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014).

## ARGUMENT

**I.    DEFENDANTS SHOULD NOT BE PERMITTED TO TAKE EVIDENCE FROM ANY OF THE FOURTEEN WITNESSES TO THE EXTENT THEY ARE UNABLE TO DO SO BEFORE THE JUNE 30, 2021 DISCOVERY DEADLINE.**

Even were the Court, in its discretion, to issue any of the defendants' fourteen proposed letters rogatory, defendants should be precluded from continuing to take evidence pursuant to any such letter rogatory after the parties' agreed June 30, 2021 fact discovery deadline, and thereby effecting an indefinite, lengthy extension of fact discovery in these actions. "Efforts to obtain depositions by . . . means" of the Hague Convention "often involve substantial delay for which there is no justification here given defendants failure to seek such relief far earlier in this litigation." *Yukos Capital S.A.R.L. v. Feldman*, No 15-cv-4964 (LAK), 2016 WL 3545947, at *1 (S.D.N.Y. Jun. 21, 2016); *accord Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 542, 107 S.Ct. 2542, 2555 (1987) (obtaining evidence through the Hague Convention can be "unduly time consuming and expensive").

Defendants offer no justification for their delay in seeking this relief and nor could they. *See Skyline Steel*, 2015 WL 13832108 at *2 (declining to issue letters rogatory where defendant "offered no reason for why it waited until . . . only two months before the close of fact discovery . . . to seek discovery under a procedure the Supreme Court has noted is often 'unduly time consuming and expensive'") (quoting *Aerospatiale*, 482 U.S. at 542, 107 S.Ct. at 2555)). In fact, the very materials on which defendants rely establish that defendants learned, or should have learned, the identities and roles of the individuals they now seek to depose months, if not years, ago. For instance, the so-called "Bech-Bruun Report" has been publicly available since it was published in 2017 (McCarthy Decl. ¶ 44); all the news articles defendants cite were published months, or in many cases, over a year, ago (*see generally* McCarthly Decl. (listing publication dates)); SKAT produced the 2010 audit report in May 2020, and it has been publicly available

9

since 2015 (*see* McCarthy Decl. Ex. 19); and even the Danish podcast on which defendants so

heavily rely has been available since November 2020.  (*See* McCarthly Decl. ¶¶ 19, 20, 23, 24,

42, 43.)

Thus, defendants' assertion that "each of" their fourteen proposed "witnesses is

essential," (Defs. Mem. 2), cannot be squared with their unjustified delay in seeking to secure

this supposedly essential testimony.  *See Seoul Semiconductor Co. Ltd. v. Nichia Corp.*, 590 F.

Supp. 2d 832, 835 (E.D. Tex. 2008) ("Defendants' delay in requesting documents from, and

deposition of, Mr. Lapoux" by way of the Hague Convention "indicates to the court that they

may not be as important as Defendants claim.").  And defendants should not be permitted to

leverage their dilatory motion into an indefinite extension of the fact discovery deadline.  *See*

*Gucci Am., Inc. v. Weixing Li*, No. 10 Civ. 4974(RJS), 2012 WL 5992142, at *8 n.4 (S.D.N.Y.

Nov. 15, 2012) (declining to issue letter rogatory where the "request smack[ed] of

gamesmanship designed to further delay discovery"), *rev'd on other grounds*, 768 F.3d 122 (2d

Cir. 2014).  Accordingly, even were the Court to issue any of defendants' proposed letters

rogatory, defendants should not be permitted to continue seeking discovery pursuant to them

after the parties' agreed-on June 30, 2021 fact discovery deadline.

II.     **THE DISCOVERY DEFENDANTS SEEK IS IRRELEVANT**
        **OR IS UNREASONABLY CUMULATIVE AND CAN**
        **BE OBTAINED ELSEWHERE MORE CONVENIENTLY.**

Even setting aside the lateness of defendants' motion, the discovery it seeks from nine of

the fourteen proposed witnesses is irrelevant or unreasonably cumulative and duplicative of the

information SKAT already has produced or agreed to produce.[7]  *Cf. Commodity Futures Trading*

---

7.   While SKAT does not agree that these individuals have relevant, non-cumulative information, SKAT does not
     oppose the motion on this ground with respect to Dorthe Pannerup Madsen, René Frahm Jørgensen, Laurits
     Cramer, Jens Sørensen and Helen Sørensen.

10

*Comm'n v. Commodity Inv. Grp., Inc.*, No. 05 Civ. 5741(HB), 2005 WL 3030816, at *1

(S.D.N.Y. Nov. 10, 2005) ("Although a witness might have discoverable information, a party is

not always entitled to depose that individual.").

As an initial matter, defendants' attempt to use the Hague Convention to take testimony

from Ditte Juulsgaard Andersen, "a caseworker at the Danish National Tax Tribunal (DNTT)" is

nothing short of an abuse of process.  (Defs. Mem. 19.)  The DNTT is the highest administrative

appeals body in Denmark that hears appeals of tax-related matters, including, as defendants note,

appeals by certain of the pension plan defendants in this litigation of SKAT's decisions revoking

its previous approvals of their refund applications.  (Defs. Mem. 19.)  Defendants seek Ms.

Andersen's testimony because she is "likely to be knowledgeable about SKAT's basis for

believing the reclaims ought to be rescinded" (Defs. Mem. 19), but—relevance objections

aside—this is a transparent waste of time because defendants are active parties to those

proceedings, receive and respond to SKAT's pleadings, and thus are fully aware of SKAT's

basis for rescinding its prior approvals.  Equally, the DNTT's view of the basis for that

determination is just as well known to defendants because they are parties to the DNTT

proceedings and have presumably read and digested the DNTT's extensive written reasons for

rejecting every single one of their appeals before the DNTT.  Thus, defendants' request for the

testimony of Ms. Andersen should be seen for what it is: an improper attempt to re-litigate a

Danish administrative decision, akin to asking to depose an administrative law judge in the

United States.  Finally, to the extent "how and why [SKAT's revocation] decision was made" is

relevant, SKAT has agreed to produce a witness to testify about it.  (Defs. Mem. 24; Weinstein

Decl. Ex. 1 at 7 (Topic 21).)

Nor do defendants need Jette Zester to "testify to the complete range of efforts that she and Lisbeth Rømer took." (Defs. Mem. 22.)  Even were such "efforts" relevant, SKAT already has agreed to produce Ms. Rømer to testify about them.  *See Skyline Steel*, 2015 WL 13832108 at *2 (declining to issue letter rogatory where, among other things, the requesting party "ha[d] not made a showing that the information it [sought] . . . could not be obtained through other, more efficient means").

The "recollections" of Carl Helman, a former Ministry of Taxation lawyer, about "his own interactions and concerns" and "warnings he received" in 2007 and 2008—years before the start of defendants' fraud in 2012—are irrelevant. (Defs. Mem. 18, 22.)  But even so, SKAT already has agreed to produce a witness in response to defendants' 30(b)(6) notice to testify about the two "early warning[s]" SKAT issued to the Ministry of Taxation.  (Weinstein Decl. Ex. 1 at 5 (Topic 11).)

The same is true with respect to Leif Normann Jeppesen, the author of what defendants call "the 2007 Early Warning memorandum." (Defs. Mem. 9, 22.)  Even if it were relevant, SKAT already has agreed to produce a witness on the topic.  *See Viasat, Inc. v. Space Systems/Loral, Inc.*, No. 12-CV-0260-H (WVG), 2013 WL 12061801, at *7 (S.D. Cal. Jan. 14, 2013) (declining to issue letter rogatory that "seeks unnecessarily duplicative information which Plaintiffs can request from the" defendant).  Further, defendants fail to explain the relevance of Mr. Jeppesen's personal "understanding of Danish tax law and the prerequisites to establishing that a shareholder is a beneficial owner of Danish shares" (Defs. Mem. 8), particularly where SKAT will produce a witness to testify about, "Standards, rules, and protocols . . . for determining ownership of shares and entitlement to dividends" and "SKAT's system(s) for

verifying ownership of shares, receipt of dividends, and withholding of taxes paid." (Weinstein Decl. Ex. 1 at 4 (Topics 3 & 4).)

Birgitte Normann Grevy's testimony likewise will be unreasonably cumulative because, as defendants note, Ms. Grevy worked "under Lisbeth Rømer" (Defs. Mem. 11), who SKAT is producing for deposition. *See Skyline Steel*, 2015 WL 13832108 at *2 (expressing "doubts about whether the discovery sought by [defendant] could, in fact, ever lead to the discovery of non-cumulative evidence relevant to its defense"). And, in any event, SKAT's "purported lack of controls and resources" is already covered by topic 7 of defendants' 30(b)(6) notice. (Defs. Mem. 11; Weinstein Decl. Ex. 1 at 4.)

Defendants also fail to explain the relevance of the purported "IT proposals" Richard Hanlov made but which were never implemented. (Defs. Mem. 11-12, 23.) Indeed, the news article defendants rely on quotes Mr. Hanlov as saying, "I had not dealt with dividend tax at all." (McCarthy Decl. Ex. 33 at 2.)

Testimony from Peter Loft is unnecessary because, as defendants acknowledge, Mr. Loft was replaced by Jens Brøchner as "the Ministry of Taxation's chief civil administrative official" in March 2012—the onset of defendants' fraud. (Defs. Mem. 14.) Nor is Mr. Loft's testimony needed about "the 2010 Audit Report." (Defs. Mem. 23.) Even if it were relevant, that report, and the responses to it, is the subject of topic 10 of defendants' 30(b)(6) notice. (Weinstein Decl. Ex. 1 at 5.) And if defendants think it necessary after questioning SKAT's 30(b)(6) witness on that topic, SKAT also has agreed to produce Bo Daugaard, who co-authored the 2010 report. (McCarthy Decl. Ex. 20 at 13.)

To the extent relevant, Ivar Nordland's testimony will be unreasonably cumulative and duplicative of Lisbeth Rømer's. (Defs. Mem. 16, 23.) There is no need for Mr. Nordland to

testify about whether he "understood the risks raised by Ms. Rømer and others" or whether he

purportedly "stop[ped] the implementation of a solution to the problems that Ms. Rømer

identified." (Defs. Mem. 23.) Defendants will be able to ask Ms. Rømer directly about

purported "risks" she raised and any purported "solution" to problems she identified.

Finally, the supposedly "critical 2010 and 2013 audit reports" defendants seek to ask

Kjeld Rasmussen about are among the reports covered by topic 10 in defendants' 30(b)(6)

notice. (Defs. Mem. 16, 23; Weinstein Decl. Ex. 1 at 5.) Thus, assuming *arguendo* the reports

are relevant in the first place, Mr. Rasmussen's testimony about them is unnecessary. And

should defendants have any more questions with respect to the 2010 report, Mr. Daugaard, who

worked in the same "internal auditing unit" as Mr. Rasmussen, and actually authored the 2010

report, can answer them. (Defs. Mem. 15.)

**CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court deny

defendants' motion for letters rogatory seeking evidence from Leif Normann Jeppesen, Jette

Zester, Birgitte Normann Grevy, Richard Hanlov, Peter Loft, Kjeld Rasmussen, Ivar Nordland,

Carl Helman and Ditte Juulsgaard Andersen.  Should the Court, in its discretion, issue any other

of defendants' proposed letters rogatory, SKAT respectfully requests that the Court proscribe

defendants from continuing to take evidence pursuant to those letters rogatory after the parties'

agreed-on June 30, 2021 fact discovery deadline.

Dated: New York, New York
       March 15, 2021

HUGHES HUBBARD & REED LLP

By:＿＿/s/ Marc A. Weinstein＿＿＿＿
     William R. Maguire
     Marc A. Weinstein
     Neil J. Oxford
 One Battery Park Plaza
 New York, New York 10004-1482
 Telephone: (212) 837-6000
 Fax:  (212) 422-4726
 bill.maguire@hugheshubbard.com
 marc.weinstein@hugheshubbard.com
 neil.oxford@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

15