**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

CUSTOMS AND TAX ADMINISTRATION OF          MASTER DOCKET
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND          18-md-02865-LAK
SCHEME LITIGATION

This document relates to:     The cases identified in
                              Appendix A

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THEIR MOTION FOR ISSUANCE OF A REQUEST FOR INTERNATIONAL**
**<u>JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE IN DENMARK</u>**

## I.      <u>Introduction</u>

SKAT asserts that it is entitled to an alleged $2.1 billion in damages from claims based

on its payment of dividend withholding tax refunds to U.S. entities but seeks to shield from

discovery facts that are central to the Danish dividend tax regime.  SKAT cannot have it both

ways.  By bringing 183 cases in 11 federal district courts, SKAT opened the door to discovery

into what diligence, if any, it exercised in paying those refunds, the warnings and alarms its

employees raised in the mid-2000s, and the response (or lack of response) of their superiors and

the Ministry of Taxation.  All of this information—and the proof that the Danish government

knew about the trading strategy that SKAT has now decided is fraudulent—is critical to multiple

defenses, bearing directly on the timeliness of SKAT's claims, the materiality of Defendants'

alleged misrepresentations, and its own contributory negligence.

SKAT is flatly wrong to assert that much of the discovery Defendants seek is duplicative

or cumulative of the limited discovery that SKAT itself has agreed to provide.  Each of the

witnesses Defendants seek to depose is likely to have relevant information about the claims and

defenses at issue and, as described in our motion and more fully below, their knowledge is likely to extend beyond what is known by the few witnesses SKAT has affirmatively agreed to tender.

SKAT's arguments against discovery are unavailing.  SKAT recycles from its previous brief its claim that it will provide testimony through its Rule 30(b)(6) designee on the same topics Defendants seek through this Motion.  *See* Dkt. 553 ("Opp.").  The record does not support the claim.  In response to Defendants' 30(b)(6) Notice, SKAT served a sweeping set of objections, and confirmed in subsequent correspondence that it categorically refuses to offer testimony on topics including SKAT's communications with foreign governments about dividend arbitrage trading, its own conversations with other arms of the Danish government, or about anything at all that took place before 2012 or after 2015.  SKAT's willingness to provide testimony on some, but not all, of the topics Defendants seek cannot preclude Defendants from seeking other testimony from other witnesses.  Defendants' motion is aimed at seeking testimony on the many topics and time frames that SKAT wishes to avoid.  The information Defendants seek is specific, relevant, and well within the ambit of Rule 26.

Nor is this request untimely.  Discovery in this very complex litigation spanning multiple countries and dozens of parties—involving witnesses located outside the United States and documents in a foreign language—has necessarily been a time-consuming endeavor.  And while SKAT chides Defendants for filing this motion well into the discovery period, it declines to acknowledge the fact of its own multi-month delay in identifying which of the witnesses whose testimony Defendants now seek are represented by SKAT.  Both sides continue to produce documents, serve discovery requests, and schedule depositions; this motion is not too late.

Ultimately, SKAT's position is that it should be allowed to control the bounds of discovery.  It will tolerate, reluctantly, six depositions; it insists that testimony from nearly

anybody else with knowledge of and involvement in Denmark's tax reclaim process would be cumulative and duplicative.  SKAT cannot dictate by fiat the witnesses Defendants may depose. SKAT assents to the issuance of letters rogatory as to five witnesses: Dorthe Pannerup Madsen, René Frahm Jørgensen, Laurits Cramer, Jens Sørensen, and Helen Sørensen.  This Court should grant those unopposed requests.  As to the balance of the witnesses, SKAT is wrong to characterize their testimony as irrelevant and duplicative.  Their testimony remains critical to many defenses, and the motion should be granted.

## II.     **The Testimony Is Relevant And Not Cumulative**

Defendants seek testimony from several witnesses who held various positions during different moments in time and so have unique perspectives on the relevant facts.  There is nothing unusual about this approach.  SKAT insists that because Defendants seek testimony from multiple witnesses, they must be cumulative.  Not so.  There is likely a wide divergence between the testimony of the few witnesses who have agreed to cooperate with SKAT (and whom SKAT has agreed to make available for deposition) and those who have not (whom SKAT has said it does not represent and whose testimony Defendants must therefore seek through this motion). Moreover, to the extent SKAT seeks to rebut Defendants' time-based, causation, and contributory negligence defenses by suggesting that *no one* within SKAT or the Ministry of Taxation knew or could have known that SKAT had inadequate controls, proving the defenses requires the testimony of multiple witnesses.

### A.     Leif Normann Jeppesen

Leif Normann Jeppesen, who served as the director of SKAT's legal department starting in 2006, was one of the first SKAT employees to sound the alarm that SKAT paid refunds

blindly.[1]  He tried to right the ship by writing an "Early Warning" memorandum highlighting

these risks.  Jeppesen's testimony about his experience is highly relevant to the defenses related

to SKAT's early notice of its claims because he alerted SKAT to problems with the payment of

dividend withholding tax all the way back in 2007.  The longer SKAT's trail of dereliction, the

more likely it is that SKAT should have known of its claims earlier than it asserts.

SKAT asserts that none of this matters because it has already agreed to produce a witness

who will testify about the Early Warning.  Opp. 12.  Besides the fact that Defendants intend to

ask Jeppesen about much more than the warning itself, such as experiences that prompted the

report and the reaction he received (or did not), there can be no better witness to testify about the

warning than its author—*Jeppesen*.  As SKAT itself acknowledges one page later, the best

person to question about a document is the person who "actually authored" it.  Opp. 14.

Defendants will also seek testimony from Jeppesen on SKAT's practices in applying Danish tax

law, the information upon which SKAT relied to determine that a shareholder was the beneficial

owner of shares of Danish securities, and SKAT's understanding of the concept of beneficial

ownership under Danish law.

B.    Jette Zester

Jette Zester, who served as a special consultant on control deficiencies working in

SKAT's Head Office, has unique experiences and knowledge related to SKAT's failure to

properly control refund payments.[2]  While she co-authored the 2006 Problemkatalog that

outlined fine-grained proposals for addressing the control gaps within SKAT's refund payment

process, she also had a broad perspective as an employee working in SKAT's Head Office in

---

[1] Tr. of Episode 1, *The Secret Shareholders*, DR (Nov. 6, 2020), https://www.dr.dk/radio/p1/de-hemmelige-aktionaerer, McCarthy Decl. Ex. 17 at 43:00.
[2] Tr. of Episode 2, *The Secret Shareholders*, DR (Nov. 6, 2020), McCarthy Decl. Ex. 18, at 2:00.

Østerbro.[3]  This bridging of nitty-gritty policy problems and overarching bureaucratic governance makes her testimony particularly relevant as Defendants determine when SKAT knew it had inadequate controls and how it failed to respond at the highest levels.

SKAT objects, claiming that Rømer's testimony about the Problemkatalog will be sufficient—as though that were the only topic Defendants will explore with Zester.  Opp. 12.  But even if it *were* the only topic, Zester's testimony will be distinctly important because of her insight into SKAT's upper echelons, which allowed her to understand SKAT's failure to adopt the solutions she proposed.  This perspective is one Rømer cannot share.

C.     Peter Loft

Peter Loft, the chief civil administrative official of the Ministry of Taxation until March 2012, will provide relevant and unique testimony about SKAT's foreign shareholder refund controls—or lack thereof.  In 2009, concerned with high volumes of refunds issued to foreign shareholders, Loft ordered an internal audit, which led to the 2010 Audit Report.[4]  The report concluded that SKAT had virtually no controls.  And like other warnings, it went unheeded.  It went unheeded even by Loft, the person who had ordered it.  According to SKAT, though, none of Loft's testimony about these issues is of any interest because SKAT replaced Loft with Brøchner in 2012, when SKAT's allegations against Defendants begin.  Opp. 13.  Loft's tenure, however, represents a key period during which SKAT learned more about its failures and then left them unremedied.  No one is better situated than Loft to testify as to the impetus for, and the

---

[3] *Id.* at 2:30.
[4] Jakob Ussing, *Tidligere skatte-topchef: Jeg har et medansvar – men det er der flere, der har* [*Former chief tax officer: I have a co-responsibility - but there are several who have*] DR (Oct. 27, 2020), https://www.dr.dk/nyheder/penge/tidligere-skatte-topchef-jeg-har-et-medansvar-men-det-er-der-flere-der-har, McCarthy Decl. Exs. 28, 29 at 3.

nonreaction to, the 2010 Audit Report.  In addition, Defendants will seek Loft's testimony as to

SKAT's collection of withholding tax from payors.

D.    Carl Helman

Carl Helman, a former Ministry of Taxation lawyer, received many communications

from SKAT about inadequate refund payment controls in 2007 and 2008.[5]  Helman is also

familiar with the results of studies by economists at the Ministry who determined that SKAT

paid large amounts of refunds to foreign shareholders.  His testimony on these communications

will be essential to establishing SKAT's knowledge of its insufficient verifications, beyond

testimony related only to the formal "early warnings."  In response to this request, SKAT again

mistakenly assumes no developments before 2012 are relevant.  Opp. 12.  Instead, SKAT's

notice of inadequate controls before 2012 is highly relevant, because it serves to show the length

and depth of SKAT's negligence.

As Helman himself has put it, "I think back to hearing Lisbeth Rømer warn . . . .  I

realised from the start that she was right and that we should have listened more to her.  And

obviously, one might say, I also think I have personal responsibility for this."[6]  No wonder

SKAT hopes to preclude his testimony.

E.    Birgitte Normann Grevy

Unlike the more senior officials and employees whose testimony Defendants seek,

Birgitte Normann Grevy was a bookkeeping employee at SKAT with significant knowledge of

the accounting of reports, payments of dividend tax, and payments of refunds.[7]  She will testify

---

[5] Tr. of Episode 3, *The Secret Shareholders*, DR (Nov. 6, 2020), McCarthy Decl. Ex. 41 at 5:00-6:30.

[6] Tr. Episode 6, *The Secret Shareholders*, DR, (Nov. 6, 2020), McCarthy Decl. Ex. 22 at 35:30.

[7] Asger Skovdal Jepsen, *Afhøringer i udbyttesagen: Knappe ressourcer, rodede IT-systemer og manglende control skabte kaos* [*Interrogations in the dividend case: Scarce resources, cluttered IT systems and lack of control created chaos*], Berlingske (Mar. 19, 2019), https://www.berlingske.dk/business/afhoeringer-i-udbyttesagen-knapperessourcer- rodede-it-systemer-og, McCarthy Decl. Exs. 30, 31 at 3.

about the specific processes SKAT used to pay refunds and the tracking of ballooning payments.

SKAT presents a blinkered view of her experience, assuming that because she was a lower level

employee, she will not provide any additional relevant testimony beyond that of her bosses.

Opp. 13.  But Grevy is *more* likely—not less—to provide the intricate building blocks that show

SKAT's knowledge about the refunds that flew out its doors.  She can also testify about SKAT's

receipt of dividend withholding tax from Danish corporations, concerns relating to the mismatch

in timing between payments received and payments required to be made, and the records upon

which SKAT relied in processing reclaim applications.

      F.     Kjeld Rasmussen

Kjeld Rasmussen, who served as the head of the Ministry of Taxation's internal auditing

unit between 2010 and 2013, will testify about the critical 2010 and 2013 audit reports, the

process for creating them, and SKAT's failure to address them properly.[8]  SKAT has not agreed

to produce a witness who has Rasmussen's tenure and experience spanning both reports and his

specific knowledge of SKAT's failure to heed the reports' warnings and recommendations.

      G.     Ivar Nordland

Ivar Nordland, formerly the head of the Ministry of Taxation's international office, halted

Rømer's efforts to improve refund payment controls and then cut off communications with her.[9]

His testimony about his reasoning for these decisions will establish the initial failures to improve

controls.  SKAT asserts that Defendants can instead ask Rømer about these events.  Opp. 14.

But Rømer's testimony will not reveal why *Nordland* decided to halt the efforts and cease

---

[8] Mathias Sommer, *Rigsrevisor revser vigtig vagthund: Risiko for milliardsvindel nåede aldrig frem til de ansvarlige* [*Auditor General reprimands important watchdog : Risk of billion-dollar fraud never reached those responsible*] (Nov. 10, 2020), https://www.dr.dk/nyheder/penge/rigsrevisor-revser-vigtig-vagthund-risikomilliardsvindel- naaede-aldrig-frem-til-de, McCarthy Decl. Exs. 38, 39 at 5-6.

[9] Tr. of Episode. 5, *The Secret Shareholders*, DR (Nov. 6, 2020), https://www.dr.dk/radio/p1/de-hemmeligeaktionaerer, McCarthy Decl. Ex. 40 at 30:30-36:00.

communicating with her.  Defendants are entitled to probe both sides of the story and establish

not only what problems existed and how they might be fixed (from Rømer) but also why those

solutions were heard and ignored (from Nordland).  Nordland will also testify about the role that

Danish banks played in ensuring that changes to the dividend withholding tax reclaim process

were not made.

      H.     Richard Hanlov

Richard Hanlov is a former deputy director whom SKAT fired in 2015 after he proposed

an IT system he claims would have helped SKAT avoid its control problems.[10]  His testimony

will clarify the technological problems SKAT had that contributed to its blindness and bear on

the ease of implementing certain controls.

      I.     Ditte Juulsgaard Andersen

Ditte Juulsgaard Andersen, a caseworker at the Danish National Tax Tribunal (DNTT)

with responsibility for reviewing SKAT's decision to reverse or revoke the refunds it issued, will

provide testimony related to Defendants' revenue rule defense, which would bar SKAT's claims

because a foreign sovereign cannot seek unpaid taxes in U.S. courts.  Andersen can speak to

decision-making related to Danish authorities' view of erroneous refunds as taxes.  SKAT argues

that this testimony is unnecessary because Defendants already know the grounds SKAT raised *in*

*Denmark* for its revocation decisions.  Opp. 11.  But the proceedings in Denmark for the return

of allegedly unpaid Danish taxes did not address the elements of the revenue rule defense

precisely because they occurred in Denmark's *domestic* bodies.  Defendants seek Andersen's

testimony because she can provide evidence related to Danish authorities' view that allegedly

---

[10] Jakob Ussing, *Tidligere chef i Skat beskylder Karsten Lauritzen for politisk indblanding i hjemsendelser* [*Former head of Tax accuses Karsten Lauritzen of political interference in repatriations*], DR (May 22, 2019), https://www.dr.dk/nyheder/penge/tidligere-chef-i-skat-beskylder-karsten-lauritzen-politisk-indblanding-i-hjemsendelser, McCarthy Decl. Exs. 32, 33.

erroneous refunds constitute unpaid taxes, which would not have been a topic addressed in proceedings *in* Denmark.

III.   **SKAT's Timing Objections Are Baseless And Immaterial**

SKAT's objection to the timing of Defendants' motion provides no basis to deny it.  The parties have been discussing Defendants' proposed list of deponents for months but SKAT only recently confirmed which witnesses it represents and which it will tender for a deposition.  Both sides are continuing to engage in the full range of discovery efforts.  Both have recently served additional document requests; both are continuing to schedule and defend depositions.  SKAT also intends to finally produce tens of thousands of English-language translations of documents (following its production of several hundred thousand pages of Danish documents) within the next several weeks—a production that will obviously be invaluable to Defendants' ability to depose the Danish witnesses who are the subject of this motion.

Nor did the parties agree that the end of fact discovery in the United States would terminate the ability to obtain testimony in Denmark.  Instead, Lead Counsel informed SKAT that its proposal to end fact discovery in June 2021 "does not in any way turn on the outcome of the process for requesting letters rogatory," and noted that "[t]o the extent the Danish authorities approve the taking of any discovery in Denmark after June 30, 2021, the parties can discuss at that time any issues regarding the use of such discovery in this litigation."[11]  There is no deadline for the close of expert discovery, the filing of summary judgment motions, and certainly no trial date.  There is no good reason to limit Defendants' ability to take any deposition in Denmark if this Court and the Danish authorities authorize that discovery.

---

[11] *See* February 17 letter from A. Schoenfeld, McCarthy Decl. Ex. 43 at 1-2.

IV.     **Conclusion**

The law is clear:  Defendants' burden in this context "is not heavy."  *Pearlstein v.*

*BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019).  The motion should be granted.


Dated: New York, New York
         March 17, 2021


                                    Respectfully submitted,


                                    KOSTELANETZ & FINK, LLP


                              By:  /s/ Sharon L. McCarthy
                                    SHARON L. MCCARTHY
                                    7 World Trade Center, 34th Floor
                                    New York, New York 10007
                                    Tel:    (212) 808-8100
                                    Fax:    (212) 808-8108
                                    smccarthy@kflaw.com


                                    *Attorneys for Defendants John van Merkensteijn,*
                                    *III, Elizabeth van Merkensteijn, Azalea Pension*
                                    *Plan, Basalt Ventures LLC Roth 401(K) Plan,*
                                    *Bernina Pension Plan, Bernina Pension Plan Trust,*
                                    *Michelle Investments Pension Plan, Omineca*
                                    *Pension Plan, Omineca Trust, Remece Investments*
                                    *LLC Pension Plan, Starfish Capital Management*
                                    *LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo*
                                    *Productions LLC Roth 401(K) Plan, Xiphias LLC*
                                    *Pension Plan*


                                    WILMER CUTLER PICKERING
                                     HALE AND DORR LLP


                              By:  /s/ Alan E. Schoenfeld
                                    ALAN E. SCHOENFELD
                                    7 World Trade Center
                                    250 Greenwich Street
                                    New York, NY 10007


                                         10

Telephone: (212) 230-8800
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Richard Markowitz,*
*Jocelyn Markowitz, Avanix Management LLC Roth*
*401(K) Plan, Batavia Capital Pension Plan,*
*Calypso Investments Pension Plan, Cavus Systems*
*LLC Roth 401(K) Plan, Hadron Industries LLC*
*Roth 401(K) Plan, RJM Capital Pension Plan, RJM*
*Capital Pension Plan Trust, Routt Capital Pension*
*Plan, Routt Capital Trust*

CAPLIN & DRYSDALE,
 CHARTERED

By:  /s/ Mark D. Allison
      Mark D. Allison
      CAPLIN & DRYSDALE, CHARTERED
      600 Lexington Avenue, 21st Floor
      New York, New York 10022
      Phone: (212) 379-6060
      Email: mallison@capdale.com

*Attorneys for Defendants Robert Klugman, RAK*
*Investment Trust, Aerovane Logistics LLC Roth*
*401K Plan, Edgepoint Capital LLC Roth 401K*
*Plan, Headsail Manufacturing LLC Roth 401K*
*Plan, The Random Holdings 401K Plan, The Stor*
*Capital Consulting LLC 401K Plan*

KAPLAN RICE LLP

By: /s/ Michelle A. Rice
      Michelle A. Rice
      Kaplan Rice LLP
      142 West 57th Street
      Suite 4A
      New York N.Y. 10019
      (212) 333-0227
      mrice@kaplanrice.com

*Attorneys for Defendants Joseph Herman, David Zelman, Edwin Miller, Ronald Altbach, Perry Lerner, Robin Jones, Ballast Ventures LLC Roth 401(K) Plan, Bareroot Capital Investments LLC Roth 401(K)Plan, Albedo Management LLC Roth 401(K) Plan, Dicot Technologies LLC Roth 401(K) Plan, Fairlie Investments LLC Roth 401(K) Plan, First Ascent Worldwide LLC Roth 401(K) Plan, Battu Holdings LLC Roth 401(K) Plan, Cantata Industries LLC Roth 401(K) Plan, Crucible Ventures LLC Roth 401(K) Plan, Monomer Industries LLC Roth 401(K) Plan, Limelight Global Productions LLC Roth 401(K) Plan, Loggerhead Services LLC Roth 401(K) Plan, PAB Facilities Global LLC Roth 401(K) Plan, Plumrose Industries LLC Roth 401(K) Plan, Pinax Holdings LLC Roth 401(K) Plan, Roadcraft Technologies LLC Roth 401(K) Plan, Sternway Logistics LLC Roth 401(K) Plan, Trailing Edge Productions LLC Roth 401(K) Plan, True Wind Investments LLC Roth 401(K) Plan, Eclouge Industry LLC Roth 401(K) Plan, Vanderlee Technologies Pension Plan, Vanderlee Technologies Pension Plan Trust, Cedar Hill Capital Investments LLC Roth 401(K) Plan, Green Scale Management LLC Roth 401(K) Plan, Fulcrum Productions LLC Roth 401(K) Plan, Keystone Technologies LLC Roth 401(K) Plan, Tumba Systems LLC Roth 401(K) Plan*

DEWEY PEGNO & KRAMARSKY LLP

By: /s/ Thomas E.L. Dewey
    Thomas E.L. Dewey
    777 Third Avenue – 37th Floor
    New York, New York 10017
    Tel.: (212) 943-9000
    Fax: (212) 943-4325
    E-mail:  tdewey@dpklaw.com

*Attorneys for Defendant Michael Ben-Jacob*

12

WILLIAMS & CONNOLLY LLP

By:  /s/ Stephen D. Andrews
     Stephen D. Andrews
     Amy B. McKinlay
     Williams & Connolly LLP
     725 Twelfth Street, N.W.
     Washington, DC 20005
     (202) 434-5000
     amckinlay@wc.com
     sandrews@wc.com

*Attorneys for Defendants Sander Gerber and Sander Gerber Pension Plan*

K&L GATES LLP

By:  /s/ John C. Blessington
     John C. Blessington (*pro hac vice*)
     K&L GATES LLP
     State Street Financial Center
     One Lincoln Street
     Boston, MA  02111
     T: 617.261.3100
     F: 617.261.3175
     E: john.blessington@klgates.com

*Attorneys for Defendants / Third-Party Plaintiffs Acer Investment Group LLC, American Investment Group of New York, L.P. Pension Plan, DW Construction, Inc. Retirement Plan, Kamco Investments Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates LLC 401K Plan, Newsong Fellowship Church 401K Plan, Riverside Associates Defined Benefit Plan, Robert Crema, Stacey Kaminer, Alexander Jamie Mitchell III, David Schulman, Joan Schulman, and Darren Wittwer*

13

GUSRAE KAPLAN NUSBAUM PLLC

By:  /s/ Martin H. Kaplan
     Martin H. Kaplan
     Kari Parks
     Gusrae Kaplan Nusbaum PLLC
     120 Wall Street
     New York, NY  10005
     T: (212) 269-1400
     Mkaplan@gusraekaplan.com
     Kparks@gusraekaplan.com

*Attorneys for Defendants Sheldon Goldstein, Scott Goldstein, and the Goldstein Law Group PC 401(K) Profit Sharing Plan*

14

APPENDIX A

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| John van Merkensteijn, III | Sharon L. McCarthy<br>Caroline Ciraolo<br>Nicholas S. Bahnsen<br>Kostelanetz & Fink LLP<br>7 World Trade Center, 34th Floor<br>New York, New York 10007<br>Tel: (212) 808-8100<br>Fax: (212) 808-8108<br>cciraolo@kflaw.com<br>smccarthy@kflaw.com<br>nbahnsen@kflaw.com | 19-cv-01866<br>19-cv-01865<br>19-cv-01906<br>19-cv-01894<br>19-cv-01911<br>19-cv-01871<br>19-cv-01930<br>19-cv-01873<br>19-cv-01794<br>19-cv-01798<br>19-cv-01788<br>19-cv-01918<br>19-cv-01928<br>19-cv-01931<br>19-cv-01800<br>19-cv-01803<br>19-cv-01809<br>19-cv-01818<br>19-cv-01801<br>19-cv-01810<br>19-cv-01813 |
| Elizabeth van Merkensteijn | | 19-cv-01893 |
| Azalea Pension Plan | | 19-cv-01893 |
| Basalt Ventures LLC Roth 401(K) Plan | | 19-cv-01866 |
| Bernina Pension Plan | | 19-cv-01865 |
| Bernina Pension Plan Trust | | 19-cv-10713 |
| Michelle Investments Pension Plan | | 19-cv-01906 |
| Omineca Pension Plan | | 19-cv-01894 |
| Omineca Trust | | 19-cv-01794<br>19-cv-01798<br>19-cv-01788<br>19-cv-01918<br>19-cv-01928 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| | | 19-cv-01931 |
| | | 19-cv-01800 |
| | | 19-cv-01803 |
| | | 19-cv-01809 |
| | | 19-cv-01818 |
| | | 19-cv-01801 |
| | | 19-cv-01810 |
| | | 19-cv-01813 |
| Remece Investments LLC Pension Plan | | 19-cv-01911 |
| Starfish Capital Management LLC Roth 401(K) Plan | | 19-cv-01871 |
| Tarvos Pension Plan | | |
| | | 19-cv-01930 |
| Voojo Productions LLC Roth 401(K) Plan | | 19-cv-01873 |
| Xiphias LLC Pension Plan | | |
| | | 19-cv-01924 |
| Richard Markowitz | Alan E. Schoenfeld Wilmer Cutler Pickering Hale and Dorr LLP 7 World Trade Center 250 Greenwich Street New York, NY 10007 Telephone: (212) 230-8800 alan.schoenfeld@wilmerhale.com | 19-cv-01867 19-cv-01895 19-cv-01869 19-cv-01868 19-cv-01898 19-cv-10713 19-cv-01896 19-cv-01783 19-cv-01922 19-cv-01926 19-cv-01929 19-cv-01812 19-cv-01870 19-cv-01792 19-cv-01806 19-cv-01808 19-cv-01815 |
| Jocelyn Markowitz | | 19-cv-01904 |
| Avanix Management LLC Roth 401(K) Plan | | 19-cv-01867 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| Batavia Capital Pension Plan Calypso Investments Pension Plan | | 19-cv-01895 19-cv-01904 |
| Cavus Systems LLC Roth 401(K) Plan | | 19-cv-01869 |
| Hadron Industries LLC Roth 401(K) Plan | | 19-cv-01868 |
| RJM Capital Pension Plan | | 19-cv-01898 |
| RJM Capital Pension Plan Trust | | 19-cv-10713 |
| Routt Capital Pension Plan | | 19-cv-01896 |
| Routt Capital Trust | | 19-cv-01783 19-cv-01922 19-cv-01926 19-cv-01929 19-cv-01812 19-cv-01870 19-cv-01792 19-cv-01806 19-cv-01808 19-cv-01815 |
| Rob Klugman | Mark D. Allison Caplin & Drysdale, Chartered 600 Lexington Avenue 21st Floor New York, NY 10022 Tel: (212) 379-6000 mallison@capdale.com zziering@capdale.com | 18-cv-07828 18-cv-07827 18-cv-07824 18-cv-07829 18-cv-04434 |
| RAK Investment Trust | | |
| Aerovane Logistics LLC Roth 401(K) Plan | | 18-cv-07828 |
| Edgepoint Capital LLC Roth 401(K) Plan | | 18-cv-07827 |
| Headsail Manufacturing LLC Roth 401(K) Plan | | 18-cv-07824 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| The Random Holdings 401(K) Plan | | 18-cv-07829 |
| The Stor Capital Consulting LLC 401(K) Plan | | 18-cv-04434 |
| Joseph Herman | Michelle A. Rice | 1:19-cv-01785 |
| | Kaplan Rice LLP | 1:19-cv-01781 |
| | 142 West 57th Street | 1:19-cv-01791 |
| | Suite 4A | 1:19-cv-01794 |
| David Zelman | New York N.Y. 10019 | 1:19-cv-01918 |
| | (212) 333-0227 | 1:19-cv-01783 |
| | mrice@kaplanrice.com | 1:19-cv-01798 |
| | | 1:19-cv-01788 |
| Edwin Miller | | 1:19-cv-01926 |
| | | 1:19-cv-01922 |
| | | 1:19-cv-01928 |
| | | 1:19-cv-01929 |
| | | 1:19-cv-01931 |
| Ronald Altbach | | 1:19-cv-01809 |
| | | 1:19-cv-01800 |
| | | 1:19-cv-01803 |
| | | 1:19-cv-01812 |
| | | 1:19-cv-01818 |
| Perry Lerner | | 1:19-cv-01806 |
| | | 1:19-cv-01870 |
| | | 1:19-cv-01792 |
| | | 1:19-cv-01808 |
| | | 1:19-cv-01815 |
| Robin Jones | | 1:19-cv-01801 |
| | | 1:19-cv-01810 |
| | | 1:19-cv-01813 |
| Ballast Ventures LLC Roth 401(K) Plan | | 1:19-cv-01781 |
| Bareroot Capital Investments LLC Roth 401(K) Plan | | 1:19-cv-01783 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| Albedo Management LLC Roth 401(K) Plan | | 1:19-cv-01785 |
| Dicot Technologies LLC Roth 401(K) Plan | | 1:19-cv-01788 |
| Fairlie Investments LLC Roth 401(K) Plan | | 1:19-cv-01791 |
| First Ascent Worldwide LLC Roth 401(K) Plan | | 1:19-cv-01792 |
| Battu Holdings LLC Roth 401(K) Plan | | 1:19-cv-01794 |
| Cantata Industries LLC Roth 401(K) Plan | | 1:19-cv-01798 |
| Crucible Ventures LLC Roth 401(K) Plan | | 1:19-cv-01800 |
| Monomer Industries LLC Roth 401(K) Plan | | 1:19-cv-01801 |
| Limelight Global Productions LLC Roth 401(K) Plan | | 1:19-cv-01803 |
| Loggerhead Services LLC Roth 401(K) Plan | | 1:19-cv-01806 |
| PAB Facilities Global LLC Roth 401(K) Plan | | 1:19-cv-01808 |
| Plumrose Industries LLC Roth 401(K) Plan | | 1:19-cv-01809 |
| Pinax Holdings LLC Roth 401(K) Plan | | 1:19-cv-01810 |
| Roadcraft Technologies LLC Roth 401(K) Plan | | 1:19-cv-01812 |
| Sternway Logistics LLC Roth 401(K) Plan | | 1:19-cv-01813 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| Trailing Edge Productions LLC Roth 401(K) Plan | | 1:19-cv-01815 |
| True Wind Investments LLC Roth 401(K) Plan | | 1:19-cv-01818 |
| Eclouge Industry LLC Roth 401(K) Plan | | 1:19-cv-01870 |
| Vanderlee Technologies Pension Plan | | 1:19-cv-01918 |
| Vanderlee Technologies Pension Plan Trust | | 1:19-cv-01918 |
| Cedar Hill Capital Investments LLC Roth 401(K) Plan | | 1:19-cv-01922 |
| Green Scale Management LLC Roth 401(K) Plan | | 1:19-cv-01926 |
| Fulcrum Productions LLC Roth 401(K) Plan | | 1:19-cv-01928 |
| Keystone Technologies LLC Roth 401(K) Plan | | 1:19-cv-01929 |
| Tumba Systems LLC Roth 401(K) Plan | | 1:19-cv-01931 |
| Sander Gerber | Stephen D. Andrews | 18-cv-4899 |
| Sander Gerber Pension Plan | Amy B. McKinlay<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>(202) 434-5000<br>amckinlay@wc.com<br>sandrews@wc.com | 18-cv-4899 |
| Michael Ben-Jacob | Thomas E. L. Dewey<br>Dewey Pegno & Kramarsky LLP<br>777 Third Avenue – 37th Floor<br>New York, New York 10017<br>Tel.: (212) 943-9000<br>Fax: (212) 943-4325<br>E-mail:  tdewey@dpklaw.com | 1:18-cv-04434<br>1:18-cv-07824<br>1:18-cv-07827<br>1:18-cv-07828<br>1:18-cv-07829<br>1:19-cv-01781<br>1:19-cv-01783 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| | | 1:19-cv-01785 |
| | | 1:19-cv-01788 |
| | | 1:19-cv-01791 |
| | | 1:19-cv-01792 |
| | | 1:19-cv-01794 |
| | | 1:19-cv-01798 |
| | | 1:19-cv-01800 |
| | | 1:19-cv-01801 |
| | | 1:19-cv-01803 |
| | | 1:19-cv-01806 |
| | | 1:19-cv-01808 |
| | | 1:19-cv-01809 |
| | | 1:19-cv-01810 |
| | | 1:19-cv-01812 |
| | | 1:19-cv-01813 |
| | | 1:19-cv-01815 |
| | | 1:19-cv-01818 |
| | | 1:19-cv-01866 |
| | | 1:19-cv-01867 |
| | | 1:19-cv-01868 |
| | | 1:19-cv-01869 |
| | | 1:19-cv-01870 |
| | | 1:19-cv-01871 |
| | | 1:19-cv-01873 |
| | | 1:19-cv-01894 |
| | | 1:19-cv-01896 |
| | | 1:19-cv-01918 |
| | | 1:19-cv-01922 |
| | | 1:19-cv-01926 |
| | | 1:19-cv-01928 |
| | | 1:19-cv-01929 |
| | | 1:19-cv-01931 |
| Acer Investment Group LLC | John C. Blessington<br>K&L GATES LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA  02111<br>T: 617.261.3100<br>F: 617.261.3175<br>E:  john.blessington@klgates.com | 18-cv-09841<br>18-cv-09797<br>18-cv-09836<br>18-cv-09837<br>18-cv-09838<br>18-cv-09839<br>18-cv-09840<br>18-cv-10100<br>18-cv-05053 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| American Investment Group of New York, L.P. Pension Plan | | 18-cv-09841 |
| DW Construction, Inc. Retirement Plan | | 18-cv-09797 |
| Kamco Investments Inc. Pension Plan | | 18-cv-09836 |
| Kamco LP Profit Sharing Pension Plan | | 18-cv-09837 |
| Linden Associates Defined Benefit Plan | | 18-cv-09838 |
| Moira Associates LLC 401K Plan | | 18-cv-09839 |
| Newsong Fellowship Church 401K Plan | | 18-cv-10100 |
| Riverside Associates Defined Benefit Plan | | 18-cv-09840 |
| Robert Crema | | 18-cv-09841 |
| Stacey Kaminer | | 18-cv-09841<br>18-cv-09797<br>18-cv-09836<br>18-cv-09837<br>18-cv-09839 |
| Alexander Jamie Mitchell III | | 18-cv-10100 |
| David Schulman | | 18-cv-09840 |
| Joan Schulman | | 18-cv-09838 |
| Darren Wittwer | | 18-cv-09797 |
| Sheldon Goldstein<br><br>Scott Goldstein | Martin H. Kaplan<br>Kari Parks<br>Gusrae Kaplan Nusbaum PLLC<br>120 Wall Street | 18-cv-5053 |

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| The Goldstein Law Group PC 401(k) Profit Sharing Plan | New York, NY 10005<br>T: (212) 269-1400<br>mkaplan@gusraekaplan.com<br>kparks@gusraekaplan.com | |