

VIA ECF

Alan E. Schoenfeld

+1 212 937 7294 (t)
+1 212 230 8888 (f)
alan.schoenfeld@wilmerhale.com

March 31, 2021

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, No. 18-md-02865-LAK

Dear Judge Kaplan:

On behalf of the defendants,[1] we respectfully submit this letter in opposition to SKAT's motion seeking to limit its obligation to testify pursuant to Rule 30(b)(6).

### 1. SKAT Must Prepare A Witness On The Factual Bases For Its Allegations

Beginning in 2018, SKAT filed more than one hundred lawsuits across the country alleging that dozens of American investors filed fraudulent applications to recover dividend withholding tax, causing SKAT to improperly pay out billions of kroner. The allegations are salacious: SKAT claims that defendants embarked upon a "fraudulent scheme," "did not own the shares they claimed they owned," "did not earn the dividends they claimed to have earned," and, notwithstanding the IRS's determination that the pension plan defendants were qualified under US law, "did not meet the criteria for a qualified pension plan." Surely, SKAT had *some* basis under Fed. R. Civ. P. 11 to levy these serious accusations. And yet, now three years later, SKAT continues to refuse to disclose the factual basis supporting its charges.

In an effort to discover whatever facts SKAT is aware of that led it to bring its claims, defendants initially served a set of interrogatories designed to elicit that information. SKAT deemed them "contention interrogatories" and has refused to answer them.[2] Accordingly, defendants have sought to use a different discovery tool—the 30(b)(6) deposition—to obtain the basic information that SKAT refused to provide in writing.

---

[1] We submit this letter on behalf of defendants listed in Schedule B of Defendants' Notice to Take Deposition of Skatteforvaltningen, ECF No. 557-1, except the Tveter LLC Pension Plan and Christopher Nowell.

[2] In response to SKAT's recent request that defendants re-serve those interrogatories, on March 18, 2021, defendants re-served them. SKAT's current deadline to respond to the interrogatories is April 19, 2021—barely over two months prior to the date the parties have agreed to as the close of US fact discovery. Given that the Local Rules require such interrogatories to be served "*at least* 30 days prior to the discovery cut-off date" (Civ. L.R. 33.3(c)), SKAT can hardly continue to resist answering on the grounds that such discovery is premature.

It is well established that a party may seek factual information, including the factual basis for a plaintiff's claims, through a 30(b)(6) witness. *See, e.g.*, *Travelers Prop. Cas. Co. of Am., LLC v. Daimler Trucks N. Am., LLC*, 2015 WL 1728682, at *4 (S.D.N.Y. Apr. 14, 2015) (rejecting plaintiff's motion and allowing defendant to take 30(b)(6) deposition of plaintiff regarding "the underlying facts in support of [plaintiff's] claims"); *Woelfle v. Black & Decker (U.S.) Inc.*, 2020 WL 1180749, at *4 (W.D.N.Y. Mar. 12, 2020) ("As a general matter, the factual bases of contentions, denials, and affirmative defenses are properly subject to questioning under Fed. R. Civ. P. 30(b)(6)."); *White v. City of Cleveland*, 417 F. Supp. 3d 896, 910 (N.D. Ohio 2019) ("[N]umerous courts have held that a part may use a Rule 30(b)(6) deposition to inquire into the factual basis for another party's claims or defenses."). SKAT's motion itself cites authority for the proposition that "depositions, including 30(b)(6) depositions, are designed to discover facts." That is all defendants seek to do. *See, e.g.*, *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38 (S.D.N.Y. 2009) ("The proper scope of the questioning of a Rule 30(b)(6) witness is not defined by the notice of deposition, but by Rule 26(b)(1) of the Federal Rules of Civil Procedure, unless a court otherwise directs.") (citation omitted). The Court should require SKAT to provide testimony in response to Topics 1, 5, 6, 22, 23, and 24.

SKAT's argument that Topic 1 has not been described with "reasonable particularly" fails based upon the same cases cited above. Defendants are entitled to know the factual basis for SKAT's claims. That is hardly an amorphous or ambiguous request, and to the extent SKAT finds it difficult, that is a function of SKAT's litigation strategy rather than defendants' 30(b)(6) notice.

Finally, SKAT argues that the allegations in its English pleadings, "to the extent [they are] not duplicative of its allegations here, have no relevance to these U.S. actions against entirely different defendants." This is false: Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F Man") is a party in both proceedings, and SKAT has accused ED&F of having created purportedly false documents upon which SKAT relied in approving reclaim requests. Despite these accusations, and despite accusing ED&F Man's pension plan clients of fraud, SKAT has not asserted any claim of fraud against ED&F Man in either jurisdiction. The defendants involved in third-party claims against ED&F Man are entitled to know the factual basis for SKAT's accusations concerning ED&F Man in both proceedings.

### 2. SKAT Must Provide Testimony From 2005 To Present

SKAT cannot seriously dispute the relevance to the parties' claims and defenses of actions that occurred between the mid-2000s and present day. As one example, SKAT's claims will be barred by the statute of limitations to the extent SKAT knew or should have known of those claims more than three years before it filed suit. And there is a trove of evidence suggesting that SKAT should have known of its claims many years before it sued. Presumably for this reason, SKAT has agreed (and says so at page 3 of its motion) to provide testimony relating to warnings SKAT received in 2006 and 2010. In responses to written discovery requests, SKAT also has

agreed to search for and produce responsive documents dating back to 2006. This Court's recent rulings confirm the relevance of the mid-2000s timeframe, allowing defendants' motion to obtain through the Hague Convention the testimony of Jette Zester, who coauthored the 2006 "Problemkatalog," and Lief Normann Jeppesen, who was the director of SKAT's legal department in 2006 and drafted a 2007 "Early Warning" memorandum, although it remains to be seen whether the Kingdom of Denmark will authorize the depositions.

Having agreed that responsive documents and information exist as far back as 2006—and having agreed to provide certain testimony dating back to 2006—SKAT cannot demonstrate that "all topics should be limited to the 2012 to 2015 period." Indeed, that limitation would substantially impair defendants' ability to secure discovery in support of their statute of limitations defense, and defenses relating to causation, failure to mitigate, and contributory negligence.

   3.   **Topic 10 Should Not Be Limited**

Defendants are entitled to testimony regarding *any* investigations, reports, audits, or analyses drafted or conducted by or on behalf of SKAT or the Ministry of Taxation regarding the payment of dividend withholding taxes by listed Danish companies to SKAT and dividend withholding tax refunds paid to claimants. SKAT's insistence that this Topic is "self-evidently overbroad" does not make it so, and SKAT offers no reason to believe that there are materially *more* investigations, reports, audits, or analyses of SKAT's administration of the dividend withholding tax than the six that defendants enumerated within the Topic. Nor does the phrase "including but not limited to" render the Topic overbroad. *Woelfle*, 2020 WL 1180749, at *2 (rejecting argument that "30(b)(6) topical designations containing the language 'including but not limited to' … are overbroad"); *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Royal Bank of Scotland Grp. PLC*, 2015 WL 13634404, at *2 (D. Conn. Aug. 20, 2015) (30(b)(6) notice was not overbroad when it included the phrase "including but not limited to"). Defendants enumerated several of the investigations, reports, audits, and analyses they knew about as of the date on which they served the 30(b)(6) notice; if SKAT is aware of others, it ought to be prepared to discuss them.

   4.   **SKAT Must Testify About Its Communications With The Rest Of The Danish Government And The United States**

SKAT does not contest the relevance of its communications with the Ministry of Taxation, the Danish State Prosecutor for Serious Economic and International Crime (SOIK), or the United States government (including the IRS) regarding SKAT's payment of dividend withholding tax refunds. It simply asserts that this subject lacks "discernible boundaries." But a search of SKAT's document production fails to reveal a single email between anyone at SKAT and anyone with a US government email address (.gov). At a minimum, there is no reason to suggest that Topic 13 is unwieldy. As for Topic 12, it is true that SKAT has produced some emails with the

Ministry of Taxation and SOIK.  But SKAT has refused to make available for deposition more than a handful of fact witnesses, so that to the extent defendants have questions about SKAT's correspondence and, more importantly, its oral dealings with Danish authorities, their only recourse is to ask a 30(b)(6) designee.  Defendants ought not be deprived that opportunity.

### 5. SKAT Is Wrong That Topics 15 and 21 "Are Irrelevant"

Neither of SKAT's remaining objections is sufficient to warrant a protective order.  Topic 15 seeks testimony concerning communications between SKAT and foreign government officials concerning dividend-arbitrage trading, including proposals to curb or prohibit dividend-arbitrage trading.  SKAT's argument that Topic 15 is irrelevant is highly disingenuous.  This topic is highly relevant—while other European nations (including Denmark's next-door neighbor Germany) enacted legal reforms designed to limit the trading strategy at issue in this litigation, Denmark did not.  Its awareness of dividend arbitrage trading and its willingness to remain a haven for such trading goes directly to the core of many of the defenses in this case.  The fact that SKAT alleges that the defendants in this case did not *in fact* own the shares for which they sought reclaims is of no moment:  defendants vigorously deny the allegation and intend to establish as a factual matter that they did indeed own the shares at issue.  SKAT cannot assume that it will prove its claims at trial and argue from that assumption that evidence relevant to multiple defenses is irrelevant.  The relevance of SKAT's communications regarding dividend arbitrage trading is underscored by the fact that SKAT itself has asked defendants myriad questions about this very topic during depositions in this case.[3]

Finally, with respect to Topic 21, SKAT has agreed to produce a witness to testify concerning SKAT's rationale relied upon and internal approval process for revoking the prior approval of the Defendants' dividend withholding tax claims.  ECF No. 557-3 at 20.  SKAT's only quarrel is with the portion of Topic 21 that seeks testimony concerning SKAT's "mechanism for enforcing that revocation."  All defendants want to know is how SKAT intends to operationalize its revocation of approved reclaims.  This should not be difficult to explain, and it will provide relevant context for this case, potentially elucidating (for instance) SKAT's strategy for "recovering" assets in proceedings unfolding in Denmark, Dubai, London, and beyond.

---

[3] As one of many possible examples, during the deposition of Svetlin Petkov, SKAT asked:  "What is your general understand of what 'dividend arbitrage strategy' means?"  "Did you participate in a dividend arbitrage strategy?"  "Did you recommend to anyone else to enter into this dividend arbitrage strategy?"  And so on.

WilmerHale

Very truly yours,


 /s/ Alan E. Schoenfeld
Alan E. Schoenfeld