**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to: The cases identified in
Appendix A.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION FOR ISSUANCE OF A
REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO
OBTAIN EVIDENCE (LETTERS ROGATORY)**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this reply memorandum in further support of its motion (the "Motion")[1] for the issuance of letters of request to obtain documents and testimony from witnesses in the United Kingdom pursuant to the Hague Evidence Convention.

## Reply

Through the letter rogatory, SKAT seeks to confirm what it (and the Defendants despite their protestations to the contrary) already knows: the dividend credit advices issued by the Solo Custodians, so the Defendants could make their refund applications, were false.  The pension plan defendants held no shares, received no dividends, and thus suffered no withholding tax.

I.   The discovery SKAT seeks is relevant and important.

Defendants concede that information may be sought through a Hague request so long as it is within the scope of discovery established by Rule 26, which permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The discovery SKAT seeks—account records and FCA correspondence that will establish Defendants' fraud—is more than just relevant, it bears directly on a central issue in these proceedings.

Defendants seek to avoid the discovery sought in the letters rogatory by arguing that other records from the Solo Custodians—that SKAT contends also are part of the fraud— confirm the false representations in the dividend credit advices.  (Defs Mem. 2, ECF No. 564.) But Defendants' argument only serves to underscore the relevance of this discovery to confirm that the Solo Custodians held no Danish Securities, received no dividends related to any Danish

---

1.   Mot. for Issuance of a Request for Int'l Judicial Assistance to Obtain Evidence in the United Kingdom, No. 18-md-02865 (LAK), ECF Nos. 561-63.  Capitalized terms used herein and not otherwise defined have the meaning ascribed to them in the Motion.

Securities, and, as a result, that the various false "account statements," "trade confirmations," and other documents on which Defendants intend to rely at trial are false.

Indeed, even the most cursory review of the documents filed in support of Defendants' opposition confirms the dubious nature of the materials Defendants rely upon.  For example, the 2015 account statements for Hadron Industries LLC Roth 401(K) Plan and Avanix Management LLC Roth 401(K) Plan attached as Exhibit B and C to the opposition show opening cash balances on January 1, 2015 of zero Euros, zero U.S. dollars, and zero Danish Kroner.  (Dulberg Decl. 24, 29, ECF No. 565.)  Yet, between February and late March 2015, both Plans claimed to have purchased about 4 *billion* Danish Kroner worth of stock each—over $550 million USD at the time.  Further, both Plans were formed in June 2014, less than a year before those purchases.  Put simply, the discovery sought by the letters rogatory will bear directly on the veracity of the documents referenced by the Defendants in their own objection, which the Defendants have made clear their intention to rely upon at trial.[2]  The opposition confirms that the information sought through the letters rogatory is relevant to these proceedings.[3]

The Defendants' argument that what was in (or not in) the Sub-Custodian accounts is irrelevant demonstrates a misunderstanding as to how the Solo Custodians would have had to hold any actual Danish Securities.  (Defs Mem. 4.)  The Solo Custodians did not meet the criteria

---

2.  Similarly, the fact that the Defendants repeated their false representations of Danish share ownership to the U.S. government does not make them true.

3.  Defendants also take issue with SKAT's definition of the Solo Custodians, meaning Solo Capital, Old Park Lane Capital Limited, Telesto Markets LLP, and West Point Derivatives Limited.  They refer to the latter three as "a completely different set of custodians" and claim that SKAT's belief that they may represent, as Solo Capital has, that they used the Referenced Sub-Custodians "is nowhere near enough to warrant discovery into the Solo Custodians."  (Defs Mem. 3; *see also* Mot. 2, ECF No. 562.)  Yet, far from being distinct entities, these custodians are commonly owned.  (*See* Mot. 2.)  Defendants themselves exhibit an account statement from West Point Derivatives Ltd and refer to it along with an account statement from Solo Capital to support their claim that they owned shares.  (Defs Mem. 2; Dulberg Decl. Exs. B, C).  Further, the letter of request seeks documentation to demonstrate the sub-custodians used by Old Park Lane Capital Limited, Telesto Markets LLP, and West Point Derivatives Limited, which would moot this issue.

under relevant securities regulations to hold Danish Securities themselves, thus the Danish Securities listed on the fraudulent Credit Advices would have needed to be held through Sub-Custodians. Accordingly, to the extent that the Solo Custodians held any Danish Securities, including any Danish Securities for the Defendants that served as the basis of their refund claims, these holdings would be reflected in the account statements of their Sub-Custodians, which makes the documentation related to the Sub-Custodians held by Solo Administrators directly relevant to these proceedings.[4]

The Defendants' argument that the documentation sought through the letters of request is not relevant because the Defendants did not see the records of Solo Capital's Sub-Custodians begs the question in that it assumes the Defendants were not otherwise aware they were participating in a fraud. SKAT, of course, disputes that. While the documents sought through the letters of request need not weigh on every element of every claim brought by SKAT in order to be relevant, the documents sought are directly relevant to each of SKAT's claims. The veracity of the representations regarding holdings of Danish Securities contained in the Credit Advices produced by the Solo Custodians and submitted to SKAT by the Defendants lies at the heart of all of SKAT's claims, whether for fraud, negligence or for restitution. And of course Defendants' purported lack of knowledge of Solo Capital's fraud is a subject for discovery, not a basis to limit it.

The argument that SKAT has failed to provide a basis for its request for correspondence

---

4. This point is reinforced by statements contained in Exhibits 4 and 5 of the Oxford Declaration where the Shah Defendants and counsel for the Solo Custodians identify the specific Sub-Custodians that the Solo Custodians allegedly used to custody Danish Securities. (Oxford Decl. Exs. 4, 5; ECF Nos. 563-4, 563-5.) The Defendants have argued that these statements do not support the proposition that the Solo Custodians would have used the specified Sub-Custodians to hold the Danish Securities that relate to their claims. However, this argument raises the question of where, if anywhere, the Solo Custodians were holding the Danish Securities that served as the basis of the Defendants' refund claims. A question that the Defendants fail to answer in their objection.

between the Solo Custodians' counsel and the FCA is directly contradicted by the letter sent on behalf of the Solo Custodians to the FCA dated March 11, 2016 (the "March Letter").  (Oxford Decl. Ex. 5.)  First, the March Letter contains a direct response to the FCA's request regarding the Solo Custodians' sub-custodians during the period of January 1, 2014 to August 24, 2015 and states that Société Générale SA, Zurich Branch was the sub-custodian used by the Solo Custodians during this period: an issue clearly relevant to the claims in these proceedings for the reasons stated above.  The March Letter also admits that the Solo Custodians "did not receive dividends on Danish Securities in Cash" and that dividend entitlements had been credited to client accounts despite the fact that cash had not been received: another issue directly relevant to the claims in these proceedings.  (Oxford Decl. Ex. 5 at 3.)  These statements, including the specific references to attachments of additional documents related to the Danish Securities, are a far cry from the "two ambivalent sentences" description used by the Defendants.  (Defs Mem. 5.)  Further, while the March Letter itself was sent after the discovery of the Defendants' fraudulent scheme, it addresses events and documents going back to January 1, 2014, which overlaps with the period in which the Defendants were submitting refund claims, and references other correspondence seeking information for the same period, including the February 23, 2016 letter from the FCA.  Accordingly, despite the Defendants' assertions to the contrary, there is a strong basis to believe that additional relevant correspondence exists.

II.   SKAT's motion is timely.

        Finally, the Defendants' argument that SKAT's motion is untimely is also misplaced. (Defs Mem. 5-6.)  By contrast with Defendants, who sat on their hands until the next-to-last minute to seek supposedly critical foreign discovery from 23 witnesses in Denmark, SKAT has been diligently seeking information from the Solo group's insolvency Administrators to confirm

Defendants' fraud since discovery began.  Indeed, as it explained in its memorandum, SKAT has secured the Administrators' agreement in principle to provide voluntarily the information SKAT seeks.  (Mot. 4.)  Thus, SKAT seeks the letter rogatory as a belt-and-suspenders approach in light of the upcoming June 30 fact discovery cut-off to ensure that it receives the requested information from the Administrators in a timely fashion.  In further contrast with the Defendants, who sought wide-ranging document and deposition discovery from 23 witnesses, SKAT's proposed letter rogatory is limited to account statements and correspondence with the FCA that will further evidence Defendants' fraud, and testimony (or a certification pursuant to Federal Rule of Evidence 902(12)) to establish the admissibility of the documents.

## <u>Conclusion</u>

For the reasons stated above and in SKAT's memorandum in support, the Court should grant SKAT's motion for the issuance of the Letter of Request.

Dated:  April 9, 2021
        New York, New York

                                   HUGHES HUBBARD & REED LLP

                                   By:___/s/ Neil J. Oxford_____
                                       William R. Maguire
                                       Marc A. Weinstein
                                       Neil J. Oxford
                                       Dustin P. Smith
                                   One Battery Park Plaza
                                   New York, New York 10004-1482
                                   Telephone: (212) 837-6000
                                   Fax:  (212) 422-4726
                                   bill.maguire@hugheshubbard.com
                                   marc.weinstein@hugheshubbard.com
                                   neil.oxford@hugheshubbard.com
                                   dustin.smith@hugheshubbard.com

                                   *Counsel for Plaintiff Skatteforvaltningen
                                   (Customs and Tax Administration of the
                                   Kingdom of Denmark)*

## APPENDIX A

**Case Nos.**

1:18-cv-04047
1:18-cv-04049
1:18-cv-04050
1:18-cv-04051
1:18-cv-04052
1:18-cv-04430
1:18-cv-04434
1:18-cv-04522
1:18-cv-04531
1:18-cv-04536
1:18-cv-04538
1:18-cv-04541
1:18-cv-04543
1:18-cv-04767
1:18-cv-04770
1:18-cv-04771
1:18-cv-04890
1:18-cv-04892
1:18-cv-04896
1:18-cv-04898
1:18-cv-04899
1:18-cv-04900
1:18-cv-05045
1:18-cv-05057
1:18-cv-05147
1:18-cv-05150
1:18-cv-05151
1:18-cv-05158
1:18-cv-05164
1:18-cv-05180
1:18-cv-05183
1:18-cv-05185
1:18-cv-05186
1:18-cv-05188
1:18-cv-05189
1:18-cv-05190
1:18-cv-05192
1:18-cv-05193
1:18-cv-05194
1:18-cv-05299
1:18-cv-05300
1:18-cv-05305

1:18-cv-05307
1:18-cv-05308
1:18-cv-05309
1:18-cv-07824
1:18-cv-07827
1:18-cv-07828
1:18-cv-07829
1:18-cv-09565
1:18-cv-09570
1:18-cv-09587
1:18-cv-09588
1:18-cv-09589
1:18-cv-09590
1:18-cv-09650
1:18-cv-09665
1:18-cv-09666
1:18-cv-09668
1:18-cv-09669
1:18-cv-10028
1:18-cv-10030
1:18-cv-10031
1:18-cv-10032
1:18-cv-10035
1:18-cv-10036
1:18-cv-10039
1:18-cv-10049
1:18-cv-10060
1:18-cv-10061
1:18-cv-10062
1:18-cv-10063
1:18-cv-10064
1:18-cv-10065
1:18-cv-10066
1:18-cv-10069
1:18-cv-10070
1:18-cv-10071
1:18-cv-10073
1:18-cv-10074
1:18-cv-10076
1:18-cv-10077
1:18-cv-10080
1:18-cv-10082
1:18-cv-10083
1:18-cv-10086
1:18-cv-10091
1:18-cv-10092

1:18-cv-10093
1:18-cv-10094
1:18-cv-10095
1:18-cv-10096
1:18-cv-10098
1:18-cv-10099
1:18-cv-10118
1:18-cv-10119
1:18-cv-10122
1:18-cv-10123
1:18-cv-10124
1:18-cv-10125
1:18-cv-10126
1:18-cv-10127
1:18-cv-10129
1:18-cv-10133
1:18-cv-10134
1:18-cv-10135
1:18-cv-10136
1:18-cv-10137
1:19-cv-01781
1:19-cv-01783
1:19-cv-01785
1:19-cv-01788
1:19-cv-01791
1:19-cv-01792
1:19-cv-01794
1:19-cv-01798
1:19-cv-01800
1:19-cv-01801
1:19-cv-01803
1:19-cv-01806
1:19-cv-01808
1:19-cv-01809
1:19-cv-01810
1:19-cv-01812
1:19-cv-01813
1:19-cv-01815
1:19-cv-01818
1:19-cv-01865
1:19-cv-01866
1:19-cv-01867
1:19-cv-01868
1:19-cv-01869
1:19-cv-01870
1:19-cv-01871

1:19-cv-01873
1:19-cv-01893
1:19-cv-01894
1:19-cv-01895
1:19-cv-01896
1:19-cv-01898
1:19-cv-01904
1:19-cv-01906
1:19-cv-01911
1:19-cv-01918
1:19-cv-01922
1:19-cv-01924
1:19-cv-01926
1:19-cv-01928
1:19-cv-01929
1:19-cv-01930
1:19-cv-01931
1:19-cv-07829
1:19-cv-10713