**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK        Case No. 1:18-MD-2865 (LAK)
(SKATTEFORVALTNINGEN) TAX
REFUND LITIGATION

Pertains to case numbers:

18-CV-9797, 18-CV-9841

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT ED&F**
**MAN CAPITAL MARKETS, LTD.'S MOTION TO DISMISS**
**THE THIRD-PARTY COMPLAINTS OF DARREN WITTWER AND ROBERT CREMA**

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ........................................................................ ii

**PRELIMINARY STATEMENT** ................................................................. 1

**STATEMENT OF FACTS** .......................................................................... 3

**ARGUMENT** ............................................................................................. 6

I.    ED&F Is Not Subject To Personal Jurisdiction In Utah ...................... 6

    A.    ED&F Is Not Subject To General Jurisdiction In Utah ...................... 7

    B.    ED&F Is Not Subject To Specific Jurisdiction in Utah ...................... 7

II.    Utah Law Applies To Both Disputes .................................................. 9

III.    Wittwer And Crema's Complaints Are Not Permitted Under Rule 14 Of The Federal Rules Of Civil Procedure ..................................... 10

IV.    Wittwer and Crema Fail To State A Claim ........................................ 13

    A.    Wittwer And Crema Fail To State  Claim For Fraud .......................... 13

        1.    Wittwer And Crema Do Not Allege Any False Representation Made To Them ................................................. 14

        2.    Wittwer And Crema Fail To Allege That The False Statements Were Material .................................................. 15

        3.    Wittwer And Crema Fail To Plead Reliance On The Disavowed Tax Vouchers ................................................... 15

        4.    The TPCs Fail To Plead That ED&F Acted With Requisite State Of Mind ................................................... 16

    B.    Wittwer And Crema's Negligent Misrepresentation Claims Fail For The Same Reasons As Their Fraud Claims ................................ 17

    C.    Wittwer And Crema Fail To State A Claim For Breach Of Fiduciary Duty Because ED&F Owed Them No Such Duty ................................ 17

    D.    All Of Wittwer And Crema's Tort Claims Are Barred By The Economic Loss Doctrine ................................................... 19

    E.    Wittwer And Crema's Quasi-Contract Causes Of Action Fail To State A Claim ................................................................................... 20

    F.    The TPCs Fail To State A Claim For Equitable Indemnification ........................ 22

    G.    The TPCs' Apportionment of Fault Claims May Not Be Maintained As Independent Causes Of Action ................................... 24

    **CONCLUSION** .................................................................................. 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*,
  578 P.2d 850 (Utah 1978) ............................................... 7

*Armed Forces Ins. Exch. v. Harrison*,
  70 P.3d 35 (Utah 2003) ............................................... 14

*Arnett v. Howard*,
  No. 2:13-CV-591, 2014 WL 1165851 (D. Utah Mar. 21, 2014).................... 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................... 17

*Borgognone v. Patricia's Pizza & Pasta II, Inc.*,
  No. 10 Civ. 0841, 2010 WL 445820 (S.D.N.Y. Nov. 3, 2010).................... 11

*Brown v. Cranston*,
  132 F.2d 631 (2d Cir. 1942) ............................................... 12

*CE Providers v. Stearns Bank*,
  No. 2:18-CV-100, 2018 WL 3448335 (D. Utah July 17, 2018).................... 19

*Cerveny v. Aventis, Inc.*,
  No. 2:14-CV-545-DB, 2017 WL 5897406 (D. Utah Nov. 29, 2017)............... 14

*ClearOne, Inc. v. Revolabs, Inc.*,
  369 P.3d 1269 (Utah 2016) ............................................... 8

*Consol. Rail Corp. v. Metz*,
  115 F.R.D. 216 (S.D.N.Y. 1987)............................................... 11

*Coppelson v. Serhant*,
  No. 19-CV-8481, 2021 WL 148088 (S.D.N.Y. Jan. 15, 2021).................... 16

*Cottonwood Improvement Dist. v. Qwest Corp.*,
  296 P.3d 754 (Utah Ct. App. 2013)............................................... 21

*Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*,
  794 P.2d 11 (Utah 1990) ............................................... 12, 22

*Desert Miriah, Inc. v. B&L Auto, Inc.*,
  12 P.3d 580 (Utah 2000) ............................................... 22

*DiStefano v. Carozzi N. Am. Inc.*,
  286 F.3d 81 (2d Cir. 2001) .......................................................................... 6

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ...................................................................... 14

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
  928 F. Supp. 2d 735 (S.D.N.Y. 2013) ......................................................... 6

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
  786 P.2d 1326 (Utah 1990) ........................................................................ 18

*Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*,
  127 F. Supp. 3d 1228 (D. Utah 2015) ................................................... 20, 21

*Hermansen v. Tasulis*,
  48 P.3d 235 (Utah 2002) ............................................................................ 19

*iBasis Global v. Diamond Phone Card, Inc.*,
  278 F.R.D. 70 (E.D.N.Y. 2011) .................................................................. 10

*IKB Int'l S.A. v. Bank of Am. Corp.*,
  584 F. App'x 26 (2d Cir. 2014) .................................................................. 16

*In re Lehman Bros. Securities and ERISA Litigation*,
  903 F.Supp.2d 152 (S.D.N.Y. 2012) ......................................................... 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ......................... 6

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
  No. 03-cv-8208, 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ................................... 16

*In re Platinum & Palladium Antitrust Litig.*,
  No. 14-CV-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ......................... 6

*In re SKAT Tax Refund Scheme Litig.*,
  No. 18-md-2865, 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020) ...................................... 6

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) ......................................................................... 7

*Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945) ...................................................................................... 7

*J.R. Simplot Co. v. Sales King Int'l, Inc.*,
  17 P.3d 1100 (Utah 2000) ............................................................................ 21

*Kenneth Leventhal & Co. v. Joyner Wholesale Co.*,
  736 F.2d 29 (2d Cir. 1984) ................................................................. 10

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ........................................................................... 9

*KTM Health Care, Inc. v. SG Nursing Home, LLC*,
  436 P.3d 151 (Utah Ct. App. 2018) .................................................. 19

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ............................................................. 12

*Mann v. Am. W. Life Ins. Co.*,
  586 P.2d 461 (Utah 1978) ................................................................. 20

*McMillan v. Equifax Credit Info. Servs., Inc.*,
  153 F. Supp. 2d 129 (D. Conn. 2001) ................................... 10, 11, 12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ................................................................. 6

*MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*,
  886 F.2d 1249 (10th Cir. 1989) ........................................................ 18

*Mikkelson v. Quail Valley Realty*,
  641 P.2d 124 (Utah 1982) ................................................................. 15

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  737 F. Supp. 2d 137 (S.D.N.Y. 2010) .............................................. 16

*Mower v. Nibley*,
  382 P.3d 614 (Utah Ct. App. 2016) .................................................... 7

*Oberg v. Sanders*,
  184 P.2d 229 (Utah 1947) ........................................................... 13, 15

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ................................................................. 6

*Perry v. Pioneer Wholesale Supply Co.*,
  681 P.2d 214 (Utah 1984) ............................................... 12, 13, 22, 23

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*,
  713 P.2d 55 (Utah 1986) ................................................................... 17

*Rabo Agrifinance, Inc. v. Bliss*,
  227 F. Supp. 3d 1249 (D. Utah 2017) ............................................... 11

*Raser Techs., Inc. ex rel. Houston Phoenix Group LLC v. Morgan Stanley & Co.*,
    449 P.3d 150 (Utah 2019) ........................................................................ 7

*Reiersen v. Smith*,
    No. 150900184, 2015 WL 11185811 (Utah Dist. Ct. June 17, 2015)...................... 13, 24

*Reighard v. Yates*,
    285 P.3d 1168 (Utah 2012) ...................................................................... 19

*Robinson v. Robinson*,
    368 P.3d 105 (Utah Ct. App. 2016) ............................................................ 18

*Roskelley & Co. v. Lerco, Inc.*,
    610 P.2d 1307 (Utah 1980) ...................................................................... 7

*Salt Lake City Corp. v. ERM-West, Inc.*,
    984 F. Supp. 2d 1156 (D. Utah 2013) ........................................................ 19

*Savin v. Ranier*,
    898 F.2d 304 (2d Cir. 1990). .................................................................. 7

*Shah v. Intermountain Healthcare, Inc.*,
    314 P.3d 1079 (Utah Ct. App. 2013)........................................................... 17

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
    299 F. Supp. 2d 242 (S.D.N.Y. 2004) ........................................................ 10

*Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*,
    230 P.3d 1000 (Utah 2010) ..................................................................... 19

*TruGreen Cos., LLC v. Mower Bros., Inc.*,
    199 P.3d 929 (Utah 2008) ...................................................................... 21

*U.S. Fidelity v. U.S. Sports Specialty*,
    270 P.3d 464 (Utah 2012) ...................................................................... 21

*Vicidiem, Inc. v. Christensen*,
    No. 2:19-CV-0358-DBB-DBP, 2020 WL 7027869 (D. Utah. Nov. 30, 2020)............. 23

*Waddoups v. Amalgamated Sugar Co.*,
    54 P.3d 1054 (Utah 2002) ....................................................................... 9

*Walden v. Fiore*,
    571 U.S. 277, 134 S. Ct. 1115 (2014) ..................................................... 7, 8, 9

*Youngblood v. Auto-Owners Ins. Co.*,
    158 P.3d 1088 (Utah 2007) ..................................................................... 21

**Statutes**

28 U.S.C. § 1332(a)(4) ................................................................................ 4

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1446
    (2d ed. 1990) ................................................................................. 10, 12

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1451
    (3d ed. 2021) ....................................................................................... 12

Restatement (Second) Conflict of Laws § 145(2) (1971) ............................... 9

**Rules**

Fed. R. Civ. P. 12(b)(2) ........................................................................ 1, 6

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1

Fed. R. Civ. P. 14 ............................................................................ 1, 10-13

Fed. R. Civ. P. 9(b) ........................................................................... 13, 16

Third-Party Defendant ED&F Man Capital Markets, Ltd. ("ED&F") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Third-Party Complaints of Darren Wittwer ("Wittwer") (ECF No. 528), (the "Wittwer TPC") and Robert Crema ("Crema," and together with Wittwer, the "Third-Party Plaintiffs") (ECF No. 529) (the "Crema TPC" and, with the Wittwer TCP, collectively the "TPCs") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 14.

## PRELIMINARY STATEMENT

The third-party actions at issue here are brought by two individuals, Wittwer and Crema, both of them participants in pension plans that have already brought their own third-party claims against ED&F in these proceedings.  Wittwer and Crema bring their suits pursuant to Federal Rule of Civil Procedure 14.  They assert claims of fraud, negligent misrepresentation, breach of fiduciary duty, promissory estoppel, unjust enrichment, equitable indemnification and apportionment of fault.

As an initial matter, each of the complaints should be dismissed because ED&F is not subject to personal jurisdiction in Utah, the location of the two actions prior to MDL consolidation.  ED&F is a United Kingdom limited company with no business operations in the United States.  The pension plans in which Wittwer and Crema were participants were represented by and interacted with ED&F through Acer Investment Group, LLC, a Delaware corporation with its principal place of business in Florida.  And Crema is a Florida resident, and the pension plan in which he participates is located in New Jersey.  Simply put, there are no purposeful contacts between ED&F and Utah upon which personal jurisdiction over ED&F may be premised.

Second, Wittwer and Crema's complaints are also not properly brought pursuant to Rule 14 of the Federal Rules of Civil Procedure because they are not, as required, derivative of or

1

dependent on Skatteforvaltningen's ("SKAT's") claims against Acer.  Rule 14 does not permit a claim to be brought simply because it arises out of the same transaction or set of facts as the original claim.  Rather, the claim asserted must seek to "transfer to the third-party defendant the liability asserted against defendant by the original plaintiff."  In other words, Rule 14 is for claims in the nature of contribution or indemnification, not independent torts or separate theories of quasi-contract.  Each of the tort and quasi-contract claims Wittwer and Crema assert against ED&F are premised on an alleged independent wrong that is in no way dependent on any determination of SKAT's claims against them.

For instance, an allegation that ED&F acted knowingly or negligently in making false statements to Wittwer and Crema individually is not (and cannot be) dependent on any determinations made in the underlying action brought by SKAT.  Moreover, their claims are necessarily predicated on a finding of their own improper conduct or inequitable possession of funds, which would be fatal to the claims they assert.  Even Wittwer and Crema's claims for equitable indemnification are improper under Rule 14 because Utah law (applicable here) does not permit such a claim until after both the alleged indemnitor and indemnitee alike have judgment entered against them on claims brought by the original plaintiff, and Rule 14 does not create substantive rights that do not otherwise exist.

Third, neither Wittwer nor Crema has stated a claim for any cause of action: (i) their fraud allegations fail to identify a statement directed to them, that such statements were material, that they relied upon them, or that they were made with scienter; (ii) their negligent misrepresentation claims fail for these same reasons, for such claims require the same elements as fraud, other than scienter; and (iii) the breach of fiduciary duty claims fails because ED&F owed them no duty and, the alleged duties they identify are contractual duties to the Pension Plans.  Further, even were Wittwer and Crema permitted to bring claims on the basis of ED&F's

communications with the pension plans in which Wittwer and Crema were participants, such claims would be barred by the economic loss doctrine, because ED&F's relationship with the Pension Plans was governed by a contract that covers the very conduct at issue in the complaints.

Fourth, the existence and admitted applicability of a contract is similarly fatal to the quasi-contract claims of promissory estoppel and negligent misrepresentation, which are not available where an express contract exists.

Finally, Wittwer and Crema's equitable indemnification claims fail because ED&F has not been found liable to SKAT, and their apportionment of fault claims cannot be asserted as standalone causes of action. The third-party claims asserted by Wittwer and Crema should therefore be dismissed in their entirety.

## STATEMENT OF FACTS[1]

Since June 2012, Acer Investment Group, LLC ("Acer"), acting as attorney-in-fact for the DW Construction, Inc. Retirement Plan ("DW Construction Plan") and the American Investment Group of New York, L.P. Pension Plan ("AIG Plan" and with DW Construction Plan, "the Pension Plans") has managed "foreign securities transactions conducted through the [Pension] Plan[s'] ED&F brokerage account[s]." TPCs ¶¶ 12, 15.[2] The foreign securities transactions were governed by a Custody Agreement executed between the Pension Plans and ED&F. *See* TPCs Ex. A. ED&F "routinely communicated with the [Pension] Plan[s] through Acer." *Id.* ¶ 16.

---

[1] The Statement of Facts relies on the allegations in the complaints for purposes of this motion only and is not an admission of any of those facts.

[2] Citations to "TPCs" refer to the same numbered paragraph in both the Wittwer complaint and the Crema complaint where they contain an identical allegation.

Between December 2013 and August 2015, the Pension Plans executed trades in the stock of numerous Danish companies, entitling the Pension Plans to dividends in the stocks that they held. *Id.* ¶¶ 20, 23-24.  ED&F prepared tax vouchers that confirmed the shareholdings of the Pension Plans and described the dividends received. *Id.* ¶¶ 24-26.  Denmark assesses a 27% tax on dividends issued by Danish companies, which is withheld upon payment. *Id.* ¶ 17.  Under a Tax Treaty between the United States and Denmark, United States pension plans are entitled to reclaim this tax through SKAT. *Id.* ¶ 18.  ED&F prepared tax vouchers for the DW Construction and AIG Plans that confirmed the relevant shareholdings of the Pension Plans, the dividends received, and the tax withheld. *Id.* ¶¶ 31-32.  ED&F provided the tax vouchers directly to Goal Taxback Ltd. ("Goal Taxback"), a United Kingdom limited company which acted as the third-party payment processing agent for the tax refund applications and submitted the requests to SKAT. *Id.* ¶¶ 28-29, 36, 38.  ED&F also emailed "copies" of the tax vouchers to Acer. *Id.* ¶ 30.

In 2018, SKAT determined that the dividend tax refund amounts it had paid to U.S. pension plans, including the DW Construction and AIG Plans, were invalid, and initiated lawsuits against the Pension Plans in the United States. *Id.* ¶¶ 42-43.  The lawsuits filed by SKAT allege diversity jurisdiction under 28 U.S.C. § 1332(a)(4). *See, e.g.*, ECF No. 89, Am. Compl. & Demand for Jury Trial ¶ 14, Case No. 18-CV-9841, *Skatteforvaltningen v. Am. Inv. Grp. of N.Y., L.P. Pension Plan, et al.* (S.D.N.Y. Apr. 22, 2020).  In August 2019, the DW Construction and AIG Plans, among others, filed Third-Party Complaints against ED&F (ECF No. 172), which were amended in November 2019 (ECF No. 226) ("Plans TPC").

SKAT separately sued ED&F in the United Kingdom to recover the same tax reclaim amounts for which it had sued the Pension Plans in the United States.  TPCs ¶ 47. During the course of that proceeding, ED&F identified inaccuracies in some of the tax vouchers that had been included in tax reclaim applications submitted to SKAT, and ED&F disclosed the

inaccuracies in a responsive pleading filed in the English proceeding between SKAT and ED&F. *Id.* ¶ 48 and Ex. C. Wittwer and Crema refer to the inaccurate tax vouchers as the "Disavowed Tax Vouchers." TPCs ¶ 49. Wittwer and Crema allege that the Pension Plans would not have submitted tax reclaim applications to SKAT if not for the tax vouchers prepared by ED&F, *id.* ¶ 54, but they nevertheless maintain that those tax reclaim applications were valid (notwithstanding their knowledge of ED&F's determination that the vouchers contained inaccuracies). *See id.* at 2.

ED&F is a broker headquartered and registered in the United Kingdom. *Id.* ¶¶ 2, 7. Between January 2012 and the present, ED&F has maintained no offices in, nor has it conducted any business in, Utah. Declaration of Gary Allan Pettit ("Pettit Decl."), ¶ 3.[3]

Crema, a resident of Florida, is the sole participant in the AIG Plan, located in New Jersey. Crema TPC ¶¶ 1, 11. Wittwer is a resident of Utah and the sole participant in the DW Construction Plan, also located in Utah. Wittwer TPC ¶¶ 1, 11. Crema and Wittwer both allege that "the [Pension] Plan[s] designated Acer . . . as its attorney in fact to manage the Plan[s'] ED&F account." TPCs ¶ 11. Crema and Wittwer also allege that they were each "a representative" of their respective Pension Plans, *id.* ¶ 38, though they assert no claims on behalf of those Plans.

---

[3] ED&F Man Holdings, Ltd is the ultimate parent company of ED&F. Pettit Decl. ¶ 3. ED&F Man Holdings Limited has two separate subsidiaries that conduct business in the United States: ED&F Man Capital Markets, Inc. and ED&F Man Derivative Products, Inc. *Id.* These two entities are separate legal entities from ED&F. *Id.* The clients of ED&F, and not ED&F itself, specify the bank accounts from which funds to support their trading will be drawn. *Id.* ¶ 4. ED&F plays no role in the selection of the market or location of such accounts. *Id.*

<u>**ARGUMENT**</u>

**I.      ED&F IS NOT SUBJECT TO PERSONAL JURISDICTION IN UTAH**

The TPCs should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2),

because ED&F is not subject to personal jurisdiction in Utah.  "In multidistrict litigation . . .

personal jurisdiction must be proper in the forum from which each complaint was transferred."

*In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865, 2020 WL 7059843, at *2 (S.D.N.Y.

Dec. 2, 2020); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262

NRB, 2015 WL 6243526, at *22, 27-28 (S.D.N.Y. Oct. 20, 2015).  In diversity actions, as here,

personal jurisdiction "is determined in accordance with the law of the state where the court sits,

with 'federal law' entering the picture only for the purpose of deciding whether a state's

assertion of jurisdiction contravenes a constitutional guarantee."  *Metro. Life Ins. Co. v.*

*Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

As an initial matter, on a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears

the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks

to bring suit."  *In re Platinum & Palladium Antitrust Litig.*, No. 14-CV-9391-GHW, 2017 WL

1169626, at *39 (S.D.N.Y. Mar. 28, 2017) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*,

609 F.3d 30, 34 (2d Cir. 2010)).  On such a motion to dismiss, the Court may examine materials

beyond the pleadings, including declarations submitted by a defendant in support of its motion to

dismiss.  *See, e.g.*, *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp.

2d 735, 737 n.1 (S.D.N.Y. 2013) (citing defendants' declarations on Rule 12(b)(2) motion

because the rule allows the court to "consider all pleadings and accompanying affidavits and

declarations") (citing *DiStefano v. Carozzi N. Am. Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).  The

Third-Party Plaintiffs must put forward "an averment of facts that, if credited by the ultimate

trier of fact, would suffice to establish jurisdiction," *see id.* (quoting *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

For there to be jurisdiction, the defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The contacts between the defendant, the forum, and the litigation must be those "that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 1122 (2014) (emphasis in original). Further, although the exercise of jurisdiction must comport with the constitutional limits of jurisdiction, the exact contours of jurisdiction in diversity actions are governed by the relevant state's long-arm statute. *See, e.g.*, *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).

### A. ED&F Is Not Subject To General Jurisdiction In Utah

General jurisdiction requires "substantial and continuous local activity," such that the defendant can be said to be a "pseudo resident" of Utah. *Mower v. Nibley*, 382 P.3d 614, 619 (Utah Ct. App. 2016) (quoting *Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*, 578 P.2d 850, 853 n.6 (Utah 1978) and *Roskelley & Co. v. Lerco, Inc.*, 610 P.2d 1307, 1311 (Utah 1980)). The TPCs acknowledge that ED&F maintains its principal place of business in the United Kingdom. *See* TPCs ¶ 2. There is no allegation, nor could there be, that ED&F maintains an office in Utah or that it conducts business in that state. *See* Pettit Decl., ¶ 3.

### B. ED&F Is Not Subject To Specific Jurisdiction in Utah

To determine the existence of specific personal jurisdiction over a defendant, Utah applies a version of the "effects test" that takes into consideration the United States Supreme Court's guidance in *Walden*. *See Raser Techs., Inc. ex rel. Houston Phoenix Group LLC v. Morgan Stanley & Co.*, 449 P.3d 150, 161-62 (Utah 2019). This effects test has three prongs:

"the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *ClearOne, Inc. v. Revolabs, Inc.*, 369 P.3d 1269, 1274 (Utah 2016).

Crema is a resident of Florida, Crema TPC ¶ 1, and the AIG Plan is located in New Jersey, *id.* at ¶ 11.[4]  Thus, there is no relationship at all between ED&F and Utah alleged in his complaint.  Crema alleges only that ED&F communicated with the AIG Plan's "Utah-based representative."  *Id*. at ¶ 5.  But such communications cannot create personal jurisdiction.  First, Acer is the AIG Plan's representative, not Crema's.  Second, Acer has itself alleged that it is a *Delaware* corporation, with its principal place of business in *Florida*.  Acer TPC ¶ 1 (ECF No. 527).  Third, the allegation that Acer is registered to do business in Utah is irrelevant to determining jurisdiction over ED&F:  Acer's registration in Utah may subject *Acer* to personal jurisdiction in that state, but it is not a sufficient basis for haling ED&F into court in Utah. Rather, personal jurisdiction must be premised on defendant's "own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden*, 571 U.S. at 286, 134 S. Ct. at 1123.  Crema's complaint should thus be dismissed.

As for Wittwer, he is a resident of Utah as is the DW Construction Plan.  *See* Wittwer TPC ¶¶ 1, 11.  But there is not even an allegation that ED&F communicated with either one of

---

[4] Crema alleges that ED&F "transacted business with *Utah-based pension plans* directly and/or through those Plans' Utah-based representative and caused tortious injury to those Plans in Utah," Crema TPC ¶ 5 (emphasis added). Crema is referring to pension plans other than AIG Plan, which is located not in Utah, but in New Jersey.  Specific personal jurisdiction with respect to Crema's claims cannot be based on unspecified business allegedly conducted by ED&F with pension plans in which Crema had no participation.  In any event, the location of a pension plan does not, by itself, create personal jurisdiction.  *See Walden*, 571 U.S. at 286, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

8

them at all, let alone in Utah.  Wittwer's assertion of personal jurisdiction over ED&F is based

on alleged communications with *Acer*, and such communications are an insufficient basis for

personal jurisdiction over Wittwer's claims.  *Walden*, 571 U.S. at 286, 134 S. Ct. at 1123.

Accordingly, Wittwer's complaint should be dismissed.

## II.      UTAH LAW APPLIES TO BOTH DISPUTES

The TPCs were originally filed in federal court in Utah on the basis of diversity

jurisdiction between SKAT and Wittwer and Crema.  *See* TPCs ¶ 3.  Thus, the law that governs

these third-party claims must be determined in the first instance by the choice of law rules of the

forum state, here Utah.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Utah applies the "most significant relationship" test to determine which state's

substantive law should apply.  *See Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059

(Utah 2002).  For tort claims specifically, Utah courts consider "(a) the place where the injury

occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence,

nationality, place of incorporation and place of business of the parties, and (d) the place where

the relationship, if any, between the parties is centered."  *Id.* at 1060 (quoting Restatement

(Second) Conflict of Laws § 145(2) (1971)).

Utah is the only state mentioned in the TPCs in connection with any of the alleged

claims.  And though Wittwer and Crema do not describe any conduct directed toward them as

individuals, they both make the conclusory allegation that ED&F caused "tortious injury" in

Utah to the respective Pension Plans of which they are participants.  *See, e.g.,* TPCs at ¶ 5.

Although these allegations are insufficient to state a claim, for purposes of this motion to

dismiss, they are the only alleged link to any state whatsoever with respect to either of Wittwer's

or Crema's claims.  Thus, for purposes of this motion to dismiss, Utah law should apply.

9

**III.      WITTWER AND CREMA'S COMPLAINTS ARE NOT PERMITTED UNDER RULE 14 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Wittwer and Crema's claims are improperly brought pursuant to Rule 14 of the Federal Rules of Civil Procedure and should be dismissed.  Rule 14 allows a third-party plaintiff to implead only one "who is or may be liable to [the third-party plaintiff] for all or part of the [plaintiff's] claim against [the third-party plaintiff]."  Fed. R. Civ. P. 14(a).  The third-party claim must assert that the third-party defendant is "secondarily liable as a contributor to the defendant or where the third party's liability is dependent upon the outcome of the main action." *McMillan v. Equifax Credit Info. Servs., Inc.*, 153 F. Supp. 2d 129, 131 (D. Conn. 2001) (citing *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984)).  "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff," and it is "not enough" under Rule 14 "that the alleged third-party claim arises from the same transaction or set of facts as the original claim." *Siemens Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1446, at 377 (2d ed. 1990)).  Rather, the third-party defendant's liability must be "dependent on, or derivative of, the main claim." *iBasis Global v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 74 (E.D.N.Y. 2011).  "The traditional grounds for a third-party action are indemnification, contribution, or subrogation." *Id.*

Each of Wittwer and Crema's claims, other than equitable indemnification and apportionment of fault, assert that ED&F engaged in specific wrongful conduct directed at them, or that ED&F is in possession of funds that rightfully belong to them.  These claims do not seek to have ED&F assume some or all of the liability they face, nor, as set forth in Section IV below, is ED&F's liability for such claims "dependent upon the outcome of the main action."

10

For example, Wittwer and Crema's claims of promissory estoppel would require them to prove that ED&F made specific promises directed toward them, which induced them personally to act to their detriment.  Wittwer and Crema's fraud claims would require them to prove that ED&F made a materially false statement to them, with scienter, on which they actually relied. And their breach of fiduciary duty claims require them to prove that ED&F owed them fiduciary duties that ED&F did not fulfill.  None of these issues may be resolved based on, or depend on, a determination of Wittwer and Crema's liability to SKAT in the underlying action, and thus they are not proper under Rule 14.  *See Borgognone v. Patricia's Pizza & Pasta II, Inc.*, No. 10 Civ. 0841, 2010 WL 445820, at *3 (S.D.N.Y. Nov. 3, 2010) (Kaplan, J.) (holding that "claims of fraud, conversion and an accounting do not rest on any assertion that [the third-party defendant] is or may be liable to the defendants for any liability they may have to the plaintiffs on the first-party complaint"); *McMillan*, 153 F. Supp. 2d at 132-33 (holding that third-party plaintiff's claims of "intentional and negligent misrepresentation and indemnification" lacked sufficient nexus to underlying claims under Rule 14).

Adjudication of these issues under Rule 14 thus does not further "Rule 14(a)'s purpose . . . to promote judicial economy." *Consol. Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y. 1987).  Indeed, because the disputes Wittwer and Crema raise remains purely abstract, the underlying claims they face may be resolved in several ways that are inconsistent with ED&F's liability in this third-party action.  For instance, SKAT brings claims of aiding and abetting fraud against Wittwer and Crema, *see, e.g.*, ECF No. 131, Am. Compl. ¶¶ 68-74, No. 18-CV-9797 (S.D.N.Y. Apr. 22, 2020), that Utah does not even recognize, *see, e.g.*, *Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 n.1 (D. Utah 2017).

And, even if SKAT could bring aiding-and-abetting claims against Wittwer and Crema, such claims would require SKAT to prove that they had "actual knowledge" of the fraudulent

11

scheme.  *See, e.g., Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).  If that is true, then Wittwer and Crema knew that the Pension Plans' tax reclaim applications were false, and thus must have either known ED&F's alleged misrepresentations were false, or the misrepresentations were immaterial to the reason the Pension Plans' tax reclaim applications were false.  Likewise, any finding that Wittwer and Crema are liable to SKAT for fraud would also require a determination that they *knew* the tax reclaim applications were false, undermining the essential elements of a plaintiff's ignorance of falsity and a statement's materiality in their own fraud claims against ED&F.

Furthermore, although contribution and indemnity claims may in some circumstances be brought under Rule 14, the Rule does not create a right to relief under the applicable substantive law when one would otherwise not exist.  *See McMillan*, 153 F. Supp. 2d at 131; 6 Arthur R. Miller, et al., *Federal Practice & Procedure* § 1446 (3d ed. Oct. 2020).  Utah law holds that claims of equitable indemnification do "not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment," and the statute of limitations on such a claim does not run until the payment or judgment occurs.  *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984); *see also Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990).  For example, where the plaintiff must "secure a joint judgment against tortfeasors as a precondition to the accrual of any right of contribution [or indemnity] between or among them, an alleged joint tortfeasor who was not sued by the original plaintiff cannot be made a third-party defendant."  6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1451 (3d ed 2021) (citing *Brown v. Cranston*, 132 F.2d 631, 633-34 (2d Cir. 1942)). Indeed, the Second Circuit has held that it would not construe Rule 14 to "give the defendant a recovery which could not be obtained through any remedy available in the [applicable] State

12

Courts." *Brown*, 132 F.2d at 633-34.  Utah requires a previous finding of liability against both

joint tortfeasors as a predicate to a right of indemnification or contribution.  *See, e.g.*, *Perry,* 681

P.2d at 218) (requiring that both the "prospective indemnitee" and "prospective indemnitor"

must be found "liable to the third person").  ED&F has not been found liable to SKAT, and thus

a claim of equitable indemnification cannot be maintained under Utah law.  Nor can Wittwer and

Crema assert apportionment of fault as a standalone cause of action "in the absence of an

independent substantive claim entitling them to affirmative relief."  *Reiersen v. Smith*, No.

150900184, 2015 WL 11185811, at *1 (Utah Dist. Ct. June 17, 2015).

Accordingly, none of the causes of action are properly asserted under Rule 14, and both

TPCs should be dismissed.

## IV.      WITTWER AND CREMA FAIL TO STATE A CLAIM

Wittwer and Crema's complaints should be dismissed for the independent reason that

they fail to state a claim for fraud, negligent misrepresentation, breach of fiduciary duty,

promissory estoppel, unjust enrichment, equitable indemnification, and apportionment of fault.

### A.      Wittwer And Crema Fail To State  Claim For Fraud

To state a claim of fraud under Utah law, Wittwer and Crema must allege "(1) a

representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or

ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner

reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth;

(8) his right to rely thereon; (9) his consequent and proximate injury."  *Oberg v. Sanders*, 184

P.2d 229, 234 (Utah 1947).  The claim must be pled with particularity, *see* Fed. R. Civ. P. 9(b), a

heightened pleading standard requiring the plaintiff to "(1) detail the statements (or omissions)

that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the

statements (or omissions) were made, and (4) explain why the statements (or omissions) are

fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). Although Crema and Wittwer fail to state a claim for fraud under any standard, their allegations are particularly deficient under the heightened pleading standard of Rule 9(b).

Wittwer and Crema fail to plead a claim of fraud for several reasons. First, the misrepresentations they allege were not made to them, but to Goal Taxback, acting as agent for the Pension Plans. Second, Wittwer and Crema's complaints make clear that the alleged misstatements were not material, since Wittwer and Crema assert that the inaccuracies in the tax voucher did nothing to alter the Pension Plans' right to receive withholding tax. Third, the TPCs fail to plead facts supporting a "strong inference of fraudulent intent" and in fact allege no facts at all showing that ED&F knew the statements in the tax vouchers were false at the time they were made; to the contrary, the most reasonable inference to be drawn from the facts as alleged is that ED&F was unaware of the inaccuracies in the so-called Disavowed Tax Vouchers at the time they were prepared. Fourth, Wittwer or Crema do not allege facts that support an inference that they individually relied on the alleged misrepresentations, or indeed that they took any action at all in response to the alleged misrepresentations.

### 1. Wittwer And Crema Do Not Allege Any False Representation Made To Them

Wittwer and Crema premise their claims of fraud on allegedly fraudulent statements made in the Disavowed Tax Vouchers. TPCs ¶¶ 81-82. However, under Utah law, a claim for fraud exists only where a "false statement is *directed toward the plaintiff* and is intended to induce the plaintiff to act." *Cerveny v. Aventis, Inc.*, No. 2:14-CV-545-DB, 2017 WL 5897406, at *3 (D. Utah Nov. 29, 2017) (emphasis added); *see also Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (stating that fraud requires the misrepresentation be made "for the purpose of inducing the other party to act upon it"). As alleged in their complaints, ED&F sent

14

tax vouchers (including the Disavowed Tax Vouchers) "directly to Goal Taxback," TPCs ¶ 29, and sent copies "to Acer in Utah" so that "the Plan would be aware whether a withholding-tax refund application would be submitted by Goal Taxback on its behalf," *id.* ¶ 30.  The TPCs do not allege that ED&F sent the tax vouchers to Wittwer or Crema, or that Wittwer or Crema ever saw the tax vouchers or knew of their contents.  Thus, neither Wittwer nor Crema have alleged any misrepresentation that could give rise to a claim for fraud under Utah law.

### 2.  *Wittwer And Crema Fail To Allege That The False Statements Were Material*

An additional essential element of a claim of fraud is that the false statement be material to the plaintiff's conduct.  *See Oberg*, 184 P.2d at 234.  Here, Crema and Wittwer each allege that they "firmly believe[]" to this day that the Pension Plans "were entitled to the withholding-tax refunds [they] claimed from SKAT," notwithstanding the alleged falsity of the Disavowed Tax Vouchers.  *See* TPCs at 2.  In other words, years after learning of inaccuracies in the Disavowed Tax Vouchers, *see* TPCs ¶ 52, and with the full benefit of hindsight and the guidance of counsel, Wittwer and Crema contend that the inaccuracies in the Disavowed Tax Vouchers— the only false statements alleged—in no way altered the Pension Plans' entitlement to the tax refunds they claimed.  The inaccuracies were thus concededly *not* material.

### 3.  *Wittwer And Crema Fail To Plead Reliance On The Disavowed Tax Vouchers*

Third, Wittwer and Crema fail to plead, as required, that they "did in fact rely upon" the tax vouchers and were "thereby induced to act."  *Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982).  Though Wittwer and Crema state that they "reasonably relied" on the tax vouchers, TPCs ¶ 67, this conclusory statement is entirely unsupported and is insufficient to allege reliance.  The TPCs allege that the Disavowed Tax Vouchers were sent "directly to Goal Taxback, which would then submit the applications for withholding-tax refunds to SKAT on behalf of the [Pension] Plan."  TPCs ¶ 29.  It was Goal Taxback that acted upon receipt of the

Disavowed Tax Vouchers.  In any event, there is no allegation whatsoever that Wittwer or

Crema ever received, saw, or even heard about the tax vouchers.  Nor is there any allegation that

either of the two took any action at all in response to the tax vouchers.  Indeed, the complaints do

not contain a single allegation that Crema or Wittwer, as individuals, ever did anything at all.

*See generally* TPCs.  Wittwer and Crema cannot be said to have been induced to act if they did

not, in fact, act at all.

### 4.   The TPCs Fail To Plead That ED&F Acted With Requisite State Of Mind

Under Rule 9(b)'s particularity requirement, a plaintiff asserting a claim of fraud must

allege facts sufficient to support a "strong inference of fraudulent intent."  *IKB Int'l S.A. v. Bank*

*of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014); *see also Arnett v. Howard*, No. 2:13-CV-591,

2014 WL 1165851, at *5 (D. Utah Mar. 21, 2014) (finding failure to plead fraud claim where

complaint did not allege, among other things, "facts demonstrating . . .  that the defendant knew

the statement was false"); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03-

cv-8208, 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006) (However, without more,

"[a]llegations that defendants stand[ ] to gain economically from fraud do not satisfy the

heightened pleading requirements of Rule 9(b)." (internal quotation marks and citations

omitted)).

As an initial matter, the TPCs here allege only that "ED&F had a financial interest in

making the misstatements in the Disavowed Tax."  This allegation of motive, common to every

business, "do[es] not constitute the type of 'concrete benefit' necessary to allege fraudulent

intent." *Coppelson v. Serhant*, No. 19-CV-8481, 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15,

2021); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143 (S.D.N.Y. 2010)

("earning fees on transactions" and preserving deposited amounts insufficient allegation of

scienter).  Third-Party Plaintiffs failure to plead facts sufficient to support an inference of scienter requires dismissal of their claims for fraud.

Moreover, the allegations in these third-party complaints support a reasonable inference that ED&F lacked knowledge of the error at the time that the Disavowed Tax Vouchers were prepared.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568-69 (2007) (citing presence of reasonable inference against alleged cause of action as relevant when heightened pleading standard applies to claim); *In re Lehman Bros. Sec. and ERISA Litig.*, 903 F. Supp. 2d 152, 170 (S.D.N.Y. 2012).  It was ED&F that brought the inaccuracies in the Disavowed Tax Vouchers to the court in a proceeding in England. Wittwer and Crema came to learn about the inaccuracies in the tax vouchers only after ED&F's disclosure.

## B.   Wittwer And Crema's Negligent Misrepresentation Claims Fail For The Same Reasons As Their Fraud Claims

Wittwer and Crema also allege tort claims for negligent misrepresentation.  *See* TPCs ¶¶ 89-97.  "The elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation 'does not require the intentional mental state necessary to establish fraud.'"  *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1085 (Utah Ct. App. 2013) (quoting *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986)).  Accordingly, all of the arguments for Wittwer and Crema's failure to state fraud claims, other than scienter, are equally a basis for the dismissal of Wittwer and Crema's negligent misrepresentation claims.

## C.   Wittwer And Crema Fail To State A Claim For Breach Of Fiduciary Duty Because ED&F Owed Them No Such Duty

To state a claim for a breach of fiduciary duty, a plaintiff must allege facts that support an inference that such a duty existed.  *See, e.g.*, *Robinson v. Robinson*, 368 P.3d 105, 117 (Utah Ct. App. 2016).  Wittwer and Crema's claims for breach of fiduciary duty fail because they do not

17

allege that ED&F owed any fiduciary duty to them.  *See* TPCs ¶¶ 98-106.  Rather, they allege that "ED&F owed a duty *to the [Pension] Plan[s]* to create true and accurate documents and was uniquely positioned to confirm the status of the [Pension Plans'] Holdings, Dividends, brokerage account, securities transactions, and entitlement to dividend withholding taxes."  TPCs ¶ 34 (emphasis added).  The TPCs do not plead any basis to find a fiduciary duty running from ED&F to either Wittwer or Crema as individuals.  Their breach of fiduciary duty claims should be dismissed on that basis alone.

Even if Wittwer and Crema could impute a fiduciary duty owed to the Pension Plans to themselves in their individual capacity—and they cannot—ED&F did not owe any such duties. In analyzing whether a relationship between a broker-dealer and a customer gives rise to fiduciary duties, courts generally look to whether the broker "holds itself out to a customer as possessing special knowledge or expertise with respect to security investment advice or recommends an investment by the customer in a particular activity."  *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 886 F.2d 1249, 1258 (10th Cir. 1989).  Utah courts specifically hold that a fiduciary is in "a position to have and exercise and does have and exercise influence over another."  *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990).  The TPCs assert only that ED&F executed trades for the Pension Plans and provided tax vouchers to Goal Taxback that memorialized the trades it performed.  The TPCs do not assert that ED&F ever provided any investment advice to the Pension Plans and, thus, do not allege that ED&F owed any fiduciary duties to the Pension Plans.  It follows *a fortiori* that ED&F did not owe fiduciary duties to Wittwer and Crema individually, as their relationships with ED&F are even further removed.

### D.     All Of Wittwer And Crema's Tort Claims Are Barred By The Economic Loss Doctrine

To the extent that Wittwer and Crema seek to bring suit on the basis of contracts between ED&F and the Pension Plans, the economic loss doctrine bars their tort claims. Utah's economic loss rule provides "that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such breach *absent an independent duty of care* under tort law." *See KTM Health Care, Inc. v. SG Nursing Home, LLC*, 436 P.3d 151, 169-70 (Utah Ct. App. 2018) (quoting *Hermansen v. Tasulis*, 48 P.3d 235 (Utah 2002)) (emphasis court's). In other words, the economic loss doctrine prevents parties from asserting tort claims that arise out of subject matter covered by a contract, unless the parties have sustained some non-economic injury. *See, e.g.*, *Reighard v. Yates*, 285 P.3d 1168, 1176-77 (Utah 2012); *Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010); *Salt Lake City Corp. v. ERM-West, Inc.*, 984 F. Supp. 2d 1156, 1160 (D. Utah 2013) ("Once there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract."). The economic loss doctrine applies to both intentional and negligent torts, *see KTM Health Care*, 436 P.3d at 169-73, including breach of fiduciary duty, *see, e.g.*, *CE Providers v. Stearns Bank*, No. 2:18-CV-100, 2018 WL 3448335, at *4 (D. Utah July 17, 2018).

Wittwer and Crema each affirmatively allege that ED&F executed trades and prepared tax vouchers for the Pension Plans pursuant to "agreements . . . that set forth ED&F's obligations as broker-custodian with each of the Plans," including each Pension Plan's "Custody Agreement, Security and Set-Off Deed, ISDA Master Agreement, and Terms and Conditions of Business." TPCs ¶ 9. Although they are not individually parties to the contracts, Wittwer and Crema attach them to their pleadings, suggesting that they regard them as relevant. *See* TPCs ¶ 10 & Ex. A. Wittwer and Crema nowhere allege that ED&F owed them duties in their individual capacities

separate and apart from ED&F's obligations under the contracts with the Pension Plans.  In

*Grynberg v. Questar Pipeline Co.*, 70 P.3d 1 (Utah 2003), the court held that where a contractual

claim may be stated on the basis of "the exact same conduct . . . , and the exact same facts and

circumstances are at play," the tort and contractual duties are "overlapping" and the tort claims

are barred.  *Id.* at 14.  That reasoning applies with even greater force here because, as is made

clear by the Third-Party Complaint filed by the Pension Plans, a contractual claim *was* brought

on the basis of the exact same facts that Wittwer and Crema here re-allege.  *See* ECF No. 226,

Am. Third-Party Compl. & Jury Demand, ¶¶ 110-119.  The harm that Wittwer and Crema allege

is not only contingent (as discussed above), but it is also purely economic.  It is thus subject to

the economic loss doctrine, and the tort claims should be dismissed.

### E.      Wittwer And Crema's Quasi-Contract Causes Of Action Fail To State A Claim

Wittwer and Crema bring causes of action for promissory estoppel, seeking to hold

ED&F liable for allegedly not living up to the "promises" made in ED&F contracts with the

Pension Plans, *see* TPCs ¶¶ 107-116.  They bring claims for unjust enrichment, seeking to

recoup fees the Pension Plans (not they) paid to ED&F pursuant to the contract between ED&F

and the Pension Plans, *see* TPCs ¶¶ 117-123.

 "Recovery in quasi contract is not available where there is an express contract covering

the subject matter of the litigation."  *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah

1978).  Utah law is clear that "a promissory estoppel claim is clearly prohibited where a contract

exists."  *Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228,

1240 (D. Utah 2015) (It is a "prerequisite to bringing a promissory estoppel claim [that] the

plaintiff must establish that the parties do not have a formal contract controlling their rights and

obligations.").  Similarly, Utah courts hold that the doctrine of unjust enrichment "may be

invoked 'only when no express contract is present.'" *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012) (quoting *TruGreen Cos., LLC v. Mower Bros., Inc.*, 199 P.3d 929, 933 (Utah 2008)).  Here, the contracts between ED&F and the Pension Plans are the source of both the promises that Wittwer and Crema allege, see TPCs ¶¶ 8-13, as well as the fees that ED&F collected, see TPCs Ex. A at 12 (Section 14, "Fees and Expenses").  Accordingly, both claims should be dismissed.

Further, the claims for promissory estoppel fail for multiple other reasons.[5]  First, the TPCs identify no "clear and definite" promise made by ED&F.  *See Global Fitness Holdings*, 127 F. Supp. 3d at 1241 ("To support a claim for promissory estoppel, the alleged promise must be 'clear and definite.'" (quoting *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1093 (Utah 2007))).  The TPCs vaguely allege that ED&F promised to "exercise reasonable care" and to "create only truthful and accurate documents" in connection with its services for the DW Construction and the AIG Plans.  *See* TPCs ¶¶ 13, 108-09.  Second, these alleged "promises" were directed to the Pension Plans, not to Wittwer and Crema individually (with whom there is no allegation that ED&F interacted), so no reasonable inference can be drawn that ED&F could expect Wittwer or Crema to act in reliance.  *See Cottonwood Improvement Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (Utah Ct. App. 2013) (promissory estoppel claims must allege a "promise reasonably expected to induce reliance").  Finally, the TPCs fail to point to any affirmative statement made by ED&F.  *See Global Fitness Holdings*, 127 F. Supp. 3d at 1241 (Implied

---

[5] Under Utah law, the elements of promissory estoppel are the following: "(1) The promisee acted with prudence and in reasonable reliance on a promise made by the promisor; (2) the promisor knew that the promisee had relied on the promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person; (3) the promisor was aware of all material facts; and (4) the promisee relied on the promise and the reliance resulted in a loss to the promisee." *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1107 (Utah 2000).

promises are not actionable because the plaintiff "must point to some affirmative statement" made by the promisor.).

As to unjust enrichment, Wittwer and Crema contend that "if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the [Pension Plans], then ED&F will have been unjustly enriched in the amount of the fees it collected from the [Pension Plans], and ED&F should be liable to account and return the fees, plus interest."  TPCs ¶ 123.  In other words, Wittwer and Crema are seeking to have ED&F pay to *them* money that the *Pension Plans* paid to ED&F, and then only in the event that SKAT prevails in its litigation against the Pension Plans.  Wittwer and Crema do not allege, as they must, that they themselves conferred any benefit on ED&F.  *See Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582-83 (Utah 2000) (stating that the "first required element" of the claim is "whether [plaintiff] had conferred a benefit on [defendant].").  The only benefit allegedly conferred on ED&F are the fees that the DW Construction and AIG Plans—not Wittwer, not Crema—paid to ED&F.  *See* TPCs ¶ 118 ("ED&F collected fees from the Plan in connection with the Plan's transactions.").  This identical claim has been asserted in these proceedings by the Pension Plans for the fees that they paid to ED&F.

F.     **The TPCs Fail To State A Claim For Equitable Indemnification**

Crema and Wittwer also bring claims against ED&F for equitable indemnification.  TPCs ¶¶ 124-29.  Under Utah law, "a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment," and the statute of limitations on such a claim does not run until the payment or judgment occurs.  *Perry*, 681 P.2d at 218; *see also Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990).

Wittwer and Crema each seek indemnification from ED&F based on the possibility that they may ultimately be found liable to SKAT, a contingency which has not yet occurred. Wittwer and Crema acknowledge they have no present legal obligation to SKAT.  TPCs ¶ 128 ("[I]f SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to indemnify Third-Party Plaintiff.").  The United States District Court for the District of Utah recently dismissed a nearly identical recitation of an indemnification claim, because "possible future liability that could result from a payment someday clearly does not meet the requirement of a 'payment of the underlying claim or the payment of a judgment or a settlement.'"  *Vicidiem, Inc. v. Christensen*, No. 2:19-CV-0358-DBB-DBP, 2020 WL 7027869, at *4 (D. Utah. Nov. 30, 2020) (dismissing claim stating that "to the extent, if any, [indemnitee] is liable to [the third party], such liability is the result of the unlawful conduct of [indemnitor]").

Further, even if a claim for equitable indemnification could be brought prior to any judgment or settlement, it would fail because Wittwer and Crema fail to satisfy the elements of such a claim.  To establish a claim for equitable indemnification, "(1) the payor (prospective indemnitee) must discharge a legal obligation the payor owes to a third person; (2) the prospective indemnitor must also be liable to the third person; and (3) as between the claimant payor and the prospective indemnitor, the obligation ought to be discharged by the indemnitor." *Perry*, 681 P.2d at 218.  Each of the first two elements are absent for the reasons discussed above.  Indeed, Wittwer and Crema "firmly believe" that the tax refunds sought by the Pension Plans were completely justified and correct, which would preclude any finding that ED&F is liable to SKAT for the refund amounts.  For this reason, too, the claim for equitable indemnification should be dismissed.

### G.      The TPCs' Apportionment of Fault Claims May Not Be Maintained As Independent Causes Of Action

Wittwer and Crema may not assert apportionment of fault as a standalone cause of action "in the absence of an independent substantive claim entitling them to affirmative relief." *Reiersen*, 2015 WL 11185811, at *1.  For the reasons stated above, none of the other causes of action that Wittwer or Crema assert against ED&F are actionable.  Accordingly, the claims for apportionment of fault under Utah law lack the necessary predicate and must be dismissed as well.

<u>**CONCLUSION**</u>

For the reasons set forth above, ED&F Man Capital Markets, Ltd. respectfully requests an order dismissing the Wittwer TPC and Crema TPC in their entirety, with prejudice, as well as such other and further relief that the Court deems reasonable and proper under the circumstances.


Respectfully submitted,


Dated: April 15, 2021
          New York, NY


By:   */s/ Neil S. Binder*
        Neil S. Binder
        M. Tomas Murphy
        Gregory C. Pruden
        BINDER & SCHWARTZ LLP
        366 Madison Avenue, Sixth Floor
        New York, NY 10017
        Tel: 212.510.7008
        Fax: 212.510.7299
        nbinder@binderschwartz.com
        tmurphy@binderschwartz.com
        gpruden@binderschwartz.com