## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND LITIGATION

Case No. 1:18-MD-2865 (LAK)

Pertains to case numbers:

18-CV-5053, 18-CV-9797, 18-CV-9836, 18-
18-CV-9837, 18-CV-9838, 18-CV-9839, 18-
CV-9840, 18-CV-9841, 18-cv-10100

## MEMORANDUM OF LAW IN SUPPORT OF
## THIRD-PARTY DEFENDANT ED&F MAN CAPITAL MARKETS, LTD.'S
## MOTION TO DISMISS THE THIRD-PARTY COMPLAINT OF
## ACER INVESTMENT GROUP, LLC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

ARGUMENT ...................................................................................................... 4

I.     ED&F Is Not Subject To Personal Jurisdiction In Utah, Pennsylvania, Or New York .................................................................................................... 4

     A.     ED&F Is Not Subject To Personal Jurisdiction In Utah ...................... 6

          1.     General Jurisdiction ................................................................. 6

          2.     Specific Jurisdiction ................................................................ 6

     B.     ED&F Is Not Subject To Personal Jurisdiction In Pennsylvania .......... 7

          1.     General Jurisdiction ................................................................. 7

          2.     Specific Jurisdiction ................................................................ 7

     C.     ED&F Is Not Subject To Personal Jurisdiction In New York .............. 8

          1.     General Jurisdiction ................................................................. 8

          2.     Specific Jurisdiction ................................................................ 8

II.    Utah Law Applies To The Dispute .............................................................. 10

III.   Acer's Complaint Is Not Permitted Under Rule 14 Of The Federal Rules of Civil Procedure ....................................................................................... 11

IV.   Acer Fails to State A Claim ........................................................................ 14

     A.     Acer Fails To State A Claim for Fraud .............................................. 14

          1.     Acer Does Not Allege Any False Statement Was Made To Induce It To Act .................................................................. 15

          2.     Acer Fails To Allege That The False Statements Were Material ............ 15

          3.     Acer Fails To Plead That ED&F Acted With Requisite State Of Mind ............................................................................ 16

     B.     Acer Fails To State A Claim for Negligent Misrepresentation............. 17

     C.     Acer's Fraud and Negligent Misrepresentation Claims Are Barred By The Economic Loss Doctrine ........................................................ 17

     D.     Acer Fails To State A Claim For Equitable Indemnity ...................... 19

     E.     The TPC's Apportionment of Fault Claims May Not Be Maintained As Independent Causes of Action ...................................................... 20

CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*,
  578 P.2d 850 (Utah 1978) ................................................................................... 6

*Armed Forces Ins. Exch. v. Harrison*,
  70 P.3d 35 (Utah 2003) ...................................................................................... 15

*Arnett v. Howard*,
  No. 2:13-CV-591, 2014 WL 1165851 (D. Utah Mar. 21, 2014) ............................................. 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 17

*Borgognone v. Patricia's Pizza & Pasta II, Inc.*,
  No. 10 Civ. 0841, 2010 WL 445820 (S.D.N.Y. Nov. 3, 2010).................................................. 12

*Brown v. Cranston*,
  132 F.2d 631 (2d Cir. 1942)................................................................................... 13

*Cerveny v. Aventis, Inc.*,
  No. 2:14-CV-545-DB, 2017 WL 5897406, (D. Utah Nov. 29, 2017) ..................................... 15

*ClearOne, Inc. v. Revolabs, Inc.*,
  369 P.3d 1269 (Utah 2016) ..................................................................................... 7

*Consol. Rail Corp. v. Metz*,
  115 F.R.D. 216 (S.D.N.Y. 1987)................................................................................ 12

*Coppelson v. Serhant*,
  No. 19-CV-8481, 2021 WL 148088 (S.D.N.Y. Jan. 15, 2021)......................................... 16, 17

*DiStefano v. Carozzi N. Am. Inc.*,
  286 F.3d 81 (2d Cir. 2001).................................................................................... 5

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)................................................................................... 14

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
  928 F. Supp. 2d 735 (S.D.N.Y. 2013) ........................................................................... 5

*Hermansen v. Tasulis*,
  48 P.3d 235 (Utah 2002) ...................................................................................... 18

*Holness v. Maritime Overseas Corp.*,
    656 N.Y.S.2d 540 (N.Y. App. Div. 1998)..................................................... 8

*iBasis Global v. Diamond Phone Card, Inc.*,
    278 F.R.D. 70 (E.D.N.Y. 2011) ................................................................ 11

*IKB Int'l S.A. v. Bank of Am. Corp.*,
    584 F. App'x 26 (2d Cir. 2014)................................................................. 16

*In re Lehman Bros. Sec. and ERISA Litig.*,
    903 F. Supp. 2d 152 (S.D.N.Y. 2012) ...................................................... 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ................... 5

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
    No. 03-cv-8208, 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)............................ 16

*In re Platinum & Palladium Antitrust Litig.*,
    No. 14-CV-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) .................... 5

*In re SKAT Tax Refund Scheme Litig.*,
    No. 18-md-2865, 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020) ................................. 4

*Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945) ................................................................................. 6

*Kenneth Leventhal & Co. v. Joyner Wholesale Co.*,
    736 F.2d 29 (2d Cir. 1984) ...................................................................... 11

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487, 61 S. Ct. 1020 (1941) ......................................................... 10

*KTM Health Care, Inc. v. SG Nursing Home, LLC*,
    436 P.3d 151 (Utah Ct. App. 2018)............................................................ 18

*Landoil Res. Corp. v. Alexander & Alexander Servs.*,
    77 N.Y.2d 28 (N.Y. 1990)........................................................................... 8

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ..................................................................... 13

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007)....................................................................... 7

*McMillan v. Equifax Credit Info. Servs., Inc.*,
    153 F. Supp. 2d 129 (D. Conn. 2001) ............................................. 11, 12, 13

*Melville v. Am. Home Assur. Co.*,
  584 F.2d 1306 (3d Cir. 1978) ................................................................................... 10

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  737 F. Supp. 2d 137 (S.D.N.Y. 2010) ...................................................................... 17

*Mower v. Nibley*,
  382 P.3d 614 (Utah Ct. App. 2016) ............................................................................ 6

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007) ....................................................................................... 8

*Oberg v. Sanders*,
  184 P.2d 229 (Utah 1947) ................................................................................... 14, 16

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ......................................................................................... 5

*Perry v. Pioneer Wholesale Supply Co.*,
  681 P.2d 214 (Utah 1984) ................................................................................... 13, 19

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*,
  713 P.2d 55 (Utah 1986) ........................................................................................... 17

*Rabo Agrifinance, Inc. v. Bliss*,
  227 F. Supp. 3d 1249 (D. Utah 2017) ...................................................................... 12

*Raser Techs., Inc. ex rel. Houston Phoenix Group LLC v. Morgan Stanley & Co.*,
  449 P.3d 150 (Utah 2019) ........................................................................................... 6

*Reeves v. Am. Broad. Co.*,
  719 F.2d 602 (2d Cir. 1983) ..................................................................................... 10

*Reiersen v. Smith*,
  No. 150900184, 2015 WL 11185811 (Utah Dist. Ct. June 17, 2015) ................. 14, 20

*Reighard v. Yates*,
  285 P.3d 1168 (Utah 2012) ....................................................................................... 18

*Roskelley & Co. v. Lerco, Inc.*,
  610 P.2d 1307 (Utah 1980) ......................................................................................... 6

*Savin v. Ranier*,
  898 F.2d 304 (2d Cir. 1990) ....................................................................................... 6

*Shah v. Intermountain Healthcare, Inc.*,
  314 P.3d 1079 (Utah Ct. App. 2013) ........................................................................ 17

*Shields v. Citytrust Bancorp. Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................... 16

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
    299 F. Supp. 2d 242 (S.D.N.Y. 2004) ............................................................ 11

*Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*,
    230 P.3d 1000 (Utah 2010) ............................................................................ 18

*Vicidiem, Inc. v. Christensen*,
    No. 2:19-CV-0358-DBB-DBP, 2020 WL 7027869 (D. Utah. Nov. 30, 2020) ........................ 20

*Waddoups v. Amalgamated Sugar Co.*,
    54 P.3d 1054 (Utah 2002) .............................................................................. 10

*Walden v. Fiore*,
    571 U.S. 277, 134 S. Ct. 1115 (2014) ..................................................... 6, 7, 10

**Statutes**

28 U.S.C. § 1332(a)(4) ........................................................................................ 3

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1446 (3d ed. Oct.
    2020) ............................................................................................................. 13

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1446, at 377 (2d ed.
    1990) ............................................................................................................. 11

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1451 (3d ed. Apr.
    2021) ............................................................................................................. 13

**Rules**

42 Pa. C.S.A. § 5322 ........................................................................................... 7

Fed. R. Civ. P. 12(b)(2) .............................................................................. 1, 4, 5

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1

Fed. R. Civ. P. 14 .................................................................................. 1, 11-14

N.Y. CPLR 302(a) .............................................................................................. 9

Third-Party Defendant ED&F Man Capital Markets, Ltd. ("ED&F") respectfully submits this Memorandum of Law ("Memorandum") in support of its Motion to Dismiss the Third-Party Complaint of Acer Investment Group, LLC ("Acer") (ECF No. 527) ("TPC") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 14.

## PRELIMINARY STATEMENT

Acer brings this third-party action pursuant to Federal Rule of Civil Procedure 14 asserting claims of fraud, negligent misrepresentation and equitable indemnification.

As an initial matter, the complaint should be dismissed because ED&F is not subject to personal jurisdiction in any of the fora in which Acer purports to bring claims. Acer is a Delaware limited liability company with its principal place of business in Florida. It is registered to do business in Utah. Acer brings this action against ED&F—a United Kingdom limited company with no business operations in the United States—on the basis of contingent liabilities in lawsuits filed against Acer in Utah, Pennsylvania, and New York. None of ED&F's alleged conduct establishes the requisite minimum contacts between ED&F and the forum states.

Further, Acer's complaint is not properly brought pursuant to Rule 14 because the claims are not, as required, derivative of or dependent on the claims brought by Skatteforvaltningen ("SKAT") against Acer. Rule 14 does not permit a claim to be brought simply because it arises out of the same transaction or set of facts as the original claim, rather the claim asserted must seek to "transfer to the third-party defendant the liability asserted against defendant by the original plaintiff." In other words, Rule 14 is for claims in the nature of contribution or indemnification, not independent torts. Each of the tort claims Acer asserts against ED&F must be premised on an alleged independent wrong on the part of ED&F that is in no way dependent on any determination against Acer. For instance, Acer's allegations that ED&F knowingly made false statements or acted in a negligent manner is not (and cannot be) dependent on any

1

determinations made in the action between SKAT and Acer.  Moreover, Acer's claims are necessarily predicated on a finding of its own improper conduct, which would be fatal to the claims of fraud or negligent misrepresentation it asserts.  The claim for equitable indemnification is also not properly brought pursuant to Rule 14 because Utah law (applicable here) does not permit such a claim until after both the indemnitor and indemnitee alike have had judgment entered against them on claims brought by the original plaintiff, and Rule 14 does not create substantive rights that do not otherwise exist.

Finally, Acer fails to state claims against ED&F.  Acer fails to state a claim for fraud because it does not allege facts with particularity that support an inference that (i) ED&F directed any statements toward Acer and that it intended Acer to act on those statements, (ii) any of the alleged false statements were material, or (iii) ED&F acted with scienter.  Acer fails to state a claim for negligent misrepresentation for the same reasons because the elements are the same as fraud (other than scienter).  Both of these tort claims are also barred by the economic loss doctrine because ED&F made the alleged misstatements pursuant to an express contract.  And, Acer fails to state a claim for equitable indemnification because it does not allege that ED&F is liable to SKAT for the underlying claims asserted against Acer, a required element of the claim.

## STATEMENT OF FACTS[1]

Since June 2012, Acer has acted as attorney-in-fact for numerous pension plans (the "Plans") and has managed "foreign securities transactions conducted through the Plan[s'] ED&F brokerage account[s]."  TPC ¶ 10.  The foreign securities transactions were governed by Custody

---

[1] The Statement of Facts relies on the allegations in the complaint for purposes of this motion only and is not an admission of any of those facts.

Agreements executed between the Plans and ED&F.  *Id.* at 6.  Between December 2013 and August 2015, the Plans executed trades in the stock of numerous Danish companies, entitling the Plans to dividends in the stocks that they held.  *Id.* ¶¶ 15, 18-19.

Denmark assesses a 27% tax on dividends issued by Danish companies, which is withheld upon payment.  *Id.* ¶ 12.  Under a Tax Treaty between the United States and Denmark, United States pension plans are entitled to reclaim this tax through SKAT.  *Id.* ¶ 13.  ED&F prepared tax vouchers that confirmed the relevant shareholdings of the Plans, the dividends received, and the tax withheld.  *Id.* ¶¶ 21-22, 26-27 & Ex. A.  ED&F provided the tax vouchers directly to Goal Taxback Ltd. ("Goal Taxback"), a United Kingdom limited company which acted as the third-party payment processing agent for the Plans' tax refund applications.  *Id.* ¶¶ 23-24, 30.  ED&F also emailed "copies" of the tax vouchers to Acer as agent for the various Plans.  *Id.* ¶ 25.

In 2018, SKAT determined that the dividend tax refund amounts it had paid to the Plans were invalid, and it initiated lawsuits against the Plans in the United States.  *Id.* ¶ 40.  The lawsuits filed by SKAT allege diversity jurisdiction under 28 U.S.C. § 1332(a)(4).  *See, e.g.*, ECF No. 89, Am. Compl. & Demand for Jury Trial ¶ 14, Case No. 18-CV-9841, *Skatteforvaltningen v. Am. Inv. Grp. of N.Y., L.P. Pension Plan, et al.* (S.D.N.Y. Apr. 22, 2020) ("SKAT Compl.").  SKAT separately sued ED&F in the United Kingdom to recover the same tax reclaim amounts for which it has sued the Plans in the United States.  TPC ¶ 43.  During the course of that proceeding, ED&F identified inaccuracies in some of the tax vouchers that had been included in tax reclaim applications submitted to SKAT, and ED&F disclosed the inaccuracies in a responsive pleading filed in the English proceeding between SKAT and ED&F.  *Id.* ¶¶ 44-45 & Ex. B.  Acer refers to the inaccurate tax vouchers as the "Disavowed Tax Vouchers."  *Id.* ¶ 45.  Acer alleges that the Plans submitted tax reclaim applications based on tax

vouchers prepared by ED&F, *id.* ¶ 50, but Acer also maintains that those tax reclaim applications were valid (notwithstanding its knowledge of ED&F's determination that the vouchers contained inaccuracies).  *See id.* at ¶ 3.

ED&F is a broker headquartered and registered in the United Kingdom.  TPC ¶¶ 2, 5. Between January 2012 and the present, ED&F has maintained no offices in, nor has it conducted any business in, Utah, Pennsylvania, or New York.  Declaration of Gary Allan Pettit ("Pettit Decl.") ¶ 3.[2]

Acer is a Delaware limited liability company with its principal place of business in Florida.  TPC ¶ 1.  Acer alleges that it is "registered to do business in Utah."  *Id.*

## ARGUMENT

## I.   ED&F IS NOT SUBJECT TO PERSONAL JURISDICTION IN UTAH, PENNSYLVANIA, OR NEW YORK

Acer's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), because ED&F is not subject to personal jurisdiction in any of the states in which Acer purports to sue ED&F: Utah, Pennsylvania, and New York.  "In multidistrict litigation . . . personal jurisdiction must be proper in the forum from which each complaint was transferred."  *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865, 2020 WL 7059843, at *2 (S.D.N.Y. Dec. 2, 2020); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *22, 27-28 (S.D.N.Y. Oct. 20, 2015).[3]  In diversity actions, as here, personal jurisdiction is

---

[2] ED&F Man Holdings, Ltd is the ultimate parent company of ED&F.  Pettit Decl. ¶ 3.  ED&F Man Holdings Limited has two separate subsidiaries that conduct business in the United States: ED&F Man Capital Markets, Inc. and ED&F Man Derivative Products, Inc. *Id.*  These two entities are separate legal entities from ED&F.  *Id.*  The clients of ED&F, and not ED&F itself, specify the bank accounts from which funds to support their trading will be drawn.  *Id.* ¶ 4.  ED&F plays no role in the selection of the market or location of such accounts.  *Id.*

[3] Acer filed its TPC on the MDL docket and listed nine related actions.  *See* TPC at 1.  ED&F assumes, though it is not clear, that Acer intended to file the TPC in each of the nine related actions.  Seven of these related actions were transferred from Utah, one was transferred from Pennsylvania, and one originated in New York.  *See* TPC ¶ 4.  Acer purports to reserve its rights to transfer the TPC to the District of Utah or the Eastern District of Pennsylvania for the purposes of trial, *see id.*, suggesting that it intended to file the TPC in each of those jurisdictions in the first instance.

"determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

As an initial matter, on a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *In re Platinum & Palladium Antitrust Litig.*, No. 14-CV-9391-GHW, 2017 WL 1169626, at *39 (S.D.N.Y. Mar. 28, 2017) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  On such a motion to dismiss, the Court may examine materials beyond the pleadings, including declarations submitted by a defendant in support of its motion to dismiss.  *See, e.g.*, *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013) (citing defendants' declarations on Rule 12(b)(2) motion because the Rule allows the court to "consider all pleadings and accompanying affidavits and declarations") (citing *DiStefano v. Carozzi N. Am. Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).  Acer must put forward "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction." *See In re Platinum & Palladium*, 2017 WL 1169626, at *39 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

For there to be jurisdiction, the defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).  The contacts between the defendant, the forum, and the litigation must be those "that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 1122 (2014) (emphasis in original).  Further, although the exercise of jurisdiction must comport with the constitutional limits of jurisdiction, the exact

contours of jurisdiction in diversity actions are governed by the relevant state's long-arm statute. *See, e.g.*, *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).

### A.    ED&F Is Not Subject To Personal Jurisdiction In Utah

#### 1.  *General Jurisdiction*

General jurisdiction requires "substantial and continuous local activity," such that the defendant can be said to be a "pseudo resident" of the relevant state. *Mower v. Nibley*, 382 P.3d 614, 619 (Utah Ct. App. 2016) (quoting *Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*, 578 P.2d 850, 853 n.6 (Utah 1978) and *Roskelley & Co. v. Lerco, Inc.*, 610 P.2d 1307, 1311 (Utah 1980)).  The TPC acknowledges that ED&F is registered in the United Kingdom, TPC ¶ 1, and that its principal place of business is in the United Kingdom.  There is no allegation, nor could there be, that ED&F maintains an office in Utah or that it conducts business in that state.  *See* Pettit Decl. ¶ 3.

#### 2.  *Specific Jurisdiction*

To determine the existence of specific personal jurisdiction over a defendant, Utah applies a version of the "effects test" that takes into consideration the United States Supreme Court's guidance in *Walden*.  *See Raser Techs., Inc. ex rel. Houston Phoenix Group LLC v. Morgan Stanley & Co.*, 449 P.3d 150, 161-62 (Utah 2019).  The effects test has three prongs: "the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state."  *ClearOne, Inc. v. Revolabs, Inc.*, 369 P.3d 1269, 1274 (Utah 2016).

Acer is a Delaware corporation, with its principal place of business in Florida, and is registered to do business in Utah.  TPC ¶ 1.  Though Acer's registration to do business in Utah may subject *Acer* to personal jurisdiction in that state, it is not a sufficient basis for haling ED&F

6

into Utah.  Rather, personal jurisdiction must be premised on a defendant's "own affiliation with

the State, not the 'random, fortuitous, or attenuated' contacts he makes by interacting with other

persons affiliated with the State." *Walden*, 571 U.S. at 286, 134 S. Ct. at 1123.  Here, ED&F

took no actions that would subject it to personal jurisdiction in Utah.  ED&F conducts no

business there, and the allegations against ED&F in the TPC arise solely out of conduct

undertaken by ED&F in the United Kingdom to execute securities transactions in the stock of

Danish companies.  Thus, Acer's third-party complaints filed in connection with the seven

actions against it in the District of Utah should be dismissed.

> **B.     ED&F Is Not Subject To Personal Jurisdiction In Pennsylvania**

> > *1.  General Jurisdiction*

Pennsylvania Courts find general jurisdiction where "a defendant has maintained

systematic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296

(3d Cir. 2007); *see also* 42 Pa. C.S.A. § 5322.  Given that ED&F maintains no offices in

Pennsylvania, and conducts no business in the state, *see* ___ Decl. ¶ 3, there is no basis to

conclude that ED&F is subject to general jurisdiction in Pennsylvania.

> > *2.  Specific Jurisdiction*

Neither is ED&F subject to specific jurisdiction in Pennsylvania.  Pennsylvania courts

employ a three-part test for specific jurisdiction: (1) "the defendant must have purposefully

directed [its] activities at the forum"; (2) "the litigation must arise out of or relate to at least one

of those activities"; and (3) the exercise of jurisdiction must otherwise "comport with fair play

and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)

(internal quotation marks and citations omitted).

In order to support specific jurisdiction, a defendant's activities must take the form of a

"deliberate targeting of the forum"; "the unilateral activity of those who claim some relationship

with a nonresident defendant is insufficient." *Id.* (internal quotation marks and citations omitted). Moreover, "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.* There is no allegation supporting any activity of ED&F in the state of Pennsylvania. Indeed, Acer does not allege any connection on its part with Pennsylvania. According to Acer itself, ED&F communicated with the pension plans through Acer, a Delaware LLC with its principal place of business in Florida. TPC ¶¶ 1, 10-11. Even assuming, *arguendo*, that ED&F could be said to have indirect contact with a Pennsylvania citizen thorough its communications with Acer "outside the state," (a fact not alleged) such indirect contacts provide no basis for asserting personal jurisdiction over ED&F in Pennsylvania. Thus, Acer's third-party complaint filed in connection with the action against it in the Eastern District of Pennsylvania should be dismissed.

### C.     ED&F Is Not Subject To Personal Jurisdiction In New York

#### 1.   General Jurisdiction

In New York, general jurisdiction over a "foreign corporation" exists under CPLR 301 only if the corporation has "a permanent and continuous presence in the state, as opposed to merely occasional or casual contact with the state." *See Holness v. Maritime Overseas Corp.*, 656 N.Y.S.2d 540, 542 (N.Y. App. Div. 1998) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33 (N.Y. 1990)). No such basis for jurisdiction exists over ED&F. As discussed above, ED&F maintains no presence in New York, let alone a "permanent and continuous" one. Therefore, there is no basis for general jurisdiction over ED&F in New York.

#### 2.   Specific Jurisdiction

There is also no basis for specific jurisdiction over ED&F in New York. New York's long-arm statute allows the exercise of specific jurisdiction over tort claims against a foreign

8

defendant who either "commits a tortious act within the state" or "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. CPLR 302(a).  Neither prong of the test for specific jurisdiction provides any basis for the exercise of personal jurisdiction over ED&F here.

First, Acer's claims do not arise out of any alleged tortious act committed within New York.  The entirety of the relevant conduct here occurred in the United Kingdom and resulted in the submission of a tax voucher by a United Kingdom corporation to a Danish government agency.

Second, ED&F has not caused Acer any alleged injury in New York.  Acer has no presence in New York.  In fact, Acer has taken the position in this MDL that it is not subject to personal jurisdiction in New York.[4]  Moreover, ED&F does not "regularly do or solicit business" in New York or otherwise render services in New York from which it derives substantial revenue, *see* ___ Decl. ¶ __, and ED&F had no basis to expect that its actions should "have consequences" in New York when all of its relevant business was conducted in the United Kingdom and all of its communications with the Plans were conducted through Acer, which was

---

[4] Acer previously argued in its own motion to dismiss that *it* is not subject to personal jurisdiction in New York because SKAT did not allege that it did any business or maintained any presence there.  *See* ECF No. 393, Defendants Darren Wittwer, Louise Kaminer, Robert Crema and Acer Investment Group, LLC's Mem. of Law in Support of their Mot. to Dismiss SKAT's Am. Compls. at 13-14, No. 18-MD-2865 (S.D.N.Y. July 2, 2020).

not located in New York.  *See* TPC ¶ 11.[5]  Thus, Acer's third-party complaint filed in connection

with the action against it in the Southern District of New York should be dismissed.

## II.      UTAH LAW APPLIES TO THE DISPUTE

The TPC was originally filed in federal court in an MDL proceeding on the basis of

diversity jurisdiction between SKAT and Acer.  *See* TPC ¶ 3.  Thus, the law that governs these

third-party claims must be determined in the first instance by the choice of law rules of the forum

state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941).

Here, Acer's TPC relates to claims transferred to the MDL proceeding from Utah, Pennsylvania,

and New York.  *See* TPC ¶ 4.  Though Utah, New York and Pennsylvania all look to the state

with the most significant relationship to the underlying action to determine which state's law to

apply, *see Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002); *Reeves v.*

*Am. Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983); *Melville v. Am. Home Assur. Co.*, 584 F.2d

1306, 1311 (3d Cir. 1978), here there is no allegation suggesting that any state has any

relationship to the dispute.  Acer is a Delaware corporation with its principal place of business in

Florida, *see* TPC ¶ 1, but Acer makes no allegations connecting the dispute to either Delaware or

Florida.  Because some state's law must apply, Utah is the most logical choice.  Seven of the

nine related actions in which Acer files this claim—and for which it seeks reimbursement from

ED&F—were transferred from Utah, and in those seven actions, Acer asserts a Utah statutory

---

[5] Although the Court previously found a prima facie case of personal jurisdiction over ED&F in New York at the pleading stage based on allegations made against ED&F in the Third-Party Complaint filed by the Goldstein Law Group PC 401(k) Profit Sharing Plan and Sheldon Goldstein, *see* ECF No. 255, Memorandum Opinion, at 3, that decision was premised on allegations that are inconsistent with those made by Acer here.  As the TPC makes clear, ED&F communicated with the Plans through Acer as the Plans' attorney-in-fact.  *See* TPC ¶ 11.  Acer facilitated the business relationship between ED&F and Goldstein entirely outside of New York, and the fact that Goldstein and the Goldstein Plan have ties to New York is constitutionally insufficient to justify the exercise of personal jurisdiction over ED&F with respect to Acer's claims.  *See Walden*, 571 U.S. at 284, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

claim against ED&F.  *See id.* ¶¶ 102-106.  Acer also alleges it is registered to do business in

Utah, *see* TPC ¶ 1, presumably because it thinks that fact has some bearing on its claims.  Thus,

ED&F will apply Utah law for the purposes of this Motion.

## III.       ACER'S COMPLAINT IS NOT PERMITTED UNDER RULE 14 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Acer's claims are improperly brought pursuant to Rule 14 of the Federal Rules of Civil

Procedure and should be dismissed.  Rule 14 allows a third-party plaintiff to implead only one

"who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against

the third-party plaintiff."  Fed. R. Civ. P. 14(a).  The third-party claim must assert that the third-

party defendant is "secondarily liable as a contributor to the defendant or where the third party's

liability is dependent upon the outcome of the main action."  *McMillan v. Equifax Credit Info.*

*Servs., Inc.*, 153 F. Supp. 2d 129, 131 (D. Conn. 2001) (citing *Kenneth Leventhal & Co. v.*

*Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984)).  "The crucial characteristic of a Rule 14

claim is that defendant is attempting to transfer to the third-party defendant the liability asserted

against him by the original plaintiff," and it is "not enough" under Rule 14 "that the alleged

third-party claim arises from the same transaction or set of facts as the original claim."  *Siemens*

*Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) (quoting 6

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1446, at 377 (2d ed.

1990)).  Rather, the third-party defendant's liability must be "dependent on, or derivative of, the

main claim."  *iBasis Global v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 74 (E.D.N.Y. 2011).

"The traditional grounds for a third-party action are indemnification, contribution, or

subrogation."  *Id.*

Acer's claims for fraud and negligent misrepresentation assert that ED&F engaged in

specific wrongs directed at Acer.  These tort claims are not claims for contribution, nor is

ED&F's liability in tort "dependent upon the outcome of the main action."  To prevail on a claim

of fraud, Acer would have to establish, among other things, that ED&F made a material false

statement to Acer with fraudulent intent, and that Acer relied on such statement.  Adjudication of

these issues is not dependent on any liability Acer may have to SKAT for aiding and abetting

fraud.  *See Borgognone v. Patricia's Pizza & Pasta II, Inc.*, No. 10 Civ. 0841, 2010 WL 445820,

at *3 (S.D.N.Y. Nov. 3, 2010) (Kaplan, J.) (holding that "claims of fraud, conversion and an

accounting do not rest on any assertion that [the third-party defendant] is or may be liable to the

defendants for any liability they may have to the plaintiffs on the first-party complaint").  The

same is true for negligent misrepresentation, which would require proof that ED&F acted in a

negligent manner, a determination that, again, does not depend on any findings in the primary

actions*.  McMillan*, 153 F. Supp. 2d at 132-33 (holding that third-party plaintiff's claims of

"intentional and negligent misrepresentation and indemnification" lacked sufficient nexus to

underlying claims under Rule 14).

Adjudication of these issues under Rule 14 thus does not further "Rule 14(a)'s

purpose . . . to promote judicial economy."  *Consol. Rail Corp. v. Metz*, 115 F.R.D. 216, 218

(S.D.N.Y. 1987).  Indeed, because the dispute Acer raises remains purely abstract, the underlying

claims Acer faces may be resolved in several ways that are inconsistent with ED&F's liability to

Acer in this third-party action.  For instance, SKAT brings claims of aiding and abetting fraud

against Acer, SKAT Compl. ¶¶ 68-74, that Utah does not even recognize, *see, e.g.*, *Rabo

Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 n.1 (D. Utah 2017).  And, even if SKAT

could bring aiding-and-abetting claims against Acer, such claims would require SKAT to prove

that Acer had "actual knowledge" of the fraudulent scheme.  *See, e.g., Lerner v. Fleet Bank,

N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).  If that is true, then Acer knew that the Plans' tax reclaim

applications were false, and thus must have either known ED&F's alleged misrepresentations

were false, or the misrepresentations were immaterial to the reason the Plans' tax reclaim

applications were false.  Because, as discussed below, a plaintiff's ignorance of falsity and a

statement's materiality are required elements of a claim of fraud, Acer's liability would preclude

its assertion of a fraud claim against ED&F.

Furthermore, although contribution and indemnity claims may in some circumstances be

brought under Rule 14, the Rule does not create a right to relief under the applicable state

substantive law where one would otherwise not exist.  *See McMillan*, 153 F. Supp. 2d at 131; 6

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1446 (3d ed. Oct.

2020).  For example, where the plaintiff must "secure a joint judgment against tortfeasors as a

precondition to the accrual of any right of contribution [or indemnity] between or among them,

an alleged joint tortfeasor who was not sued by the original plaintiff cannot be made a third-party

defendant."  6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1451

(3d ed. Apr. 2021) (citing *Brown v. Cranston*, 132 F.2d 631, 633-634 (2d Cir. 1942)).  Indeed,

the Second Circuit has held that it would not construe Rule 14 to "give the defendant a recovery

which could not be obtained through any remedy available in the [applicable] State Courts."

*Brown*, 132 F.2d at 633-34.  Utah requires a previous finding of liability against both joint

tortfeasors as a predicate to a right of indemnification or contribution.  *See, e.g.*, *Perry v. Pioneer

Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984) (requiring that both the "prospective

indemnitee" and "prospective indemnitor" must be found "liable to the third person").  ED&F

has not been found liable to SKAT, and thus a claim of equitable indemnification cannot be

maintained under Utah law.  Nor can Acer assert apportionment of fault as a standalone cause of

action "in the absence of an independent substantive claim entitling them to affirmative relief."

*Reiersen v. Smith*, No. 150900184, 2015 WL 11185811, at *1 (Utah Dist. Ct. June 17, 2015).

Thus, none of the causes of action are properly asserted under Rule 14, and the TPC should be dismissed.

## IV.     ACER FAILS TO STATE A CLAIM

Acer's complaint should be dismissed for the independent reason that it fails to state a claim for fraud, negligent misrepresentation or equitable indemnification.

### A.     Acer Fails To State A Claim for Fraud

To state a claim of fraud under Utah law, Acer must allege "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury." *Oberg v. Sanders*, 184 P.2d 229, 234 (Utah 1947). The claim must be pled with particularity, *see* Fed. R. Civ. P. 9(b), requiring the plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

Acer fails to state a claim for fraud under any standard, but its allegations are particularly deficient under the heightened pleading standard of Rule 9(b). First, Acer fails to allege that ED&F made statements to Acer with the intent of inducing Acer to act. Second, Acer's complaint makes clear that none of the alleged misstatements was material, because according to Acer itself, the inaccuracies in the tax vouchers did nothing to alter any Plan's entitlement to claim and receive withholding tax. Third, Acer fails to plead any facts supporting a "strong inference of fraudulent intent." In fact, Acer alleges no facts at all suggesting that ED&F knew the statements in the tax vouchers were false at the time they were made; to the contrary, the

most reasonable inference to be drawn from the facts as alleged is that ED&F was unaware of the inaccuracies in the so-called Disavowed Tax Vouchers.

### 1. *Acer Does Not Allege Any False Statement Was Made To Induce It To Act*

Acer asserts that its claim of fraud arises out of the allegedly false statements that ED&F made in what it describes as the Disavowed Tax Vouchers.  TPC ¶¶ 80-81.  However, under Utah law, a claim for fraud exists only where a "false statement is *directed toward the plaintiff* and is intended to induce the plaintiff to act."  *Cerveny v. Aventis, Inc.*, No. 2:14-CV-545-DB, 2017 WL 5897406, at *3 (D. Utah Nov. 29, 2017) (emphasis added); *see also Armed Forces Ins. Exch.*, 70 P.3d at 40 (stating that fraud requires the misrepresentation be made "for the purpose of inducing the other party to act upon it").  As alleged in its complaint, ED&F sent tax vouchers (including the Disavowed Tax Vouchers) "directly to Goal Taxback," TPC ¶ 24, which ED&F "knew" would submit the requests for the withholding tax refunds on behalf of the plans, *id.* ¶ 23.  Although ED&F sent "copies" of the vouchers to Acer, Acer admits that ED&F did so only so that "Acer would be aware of whether the withholding-tax refund applications would be submitted by Goal Taxback."  *Id.* ¶ 25.  In other words, Acer admits that ED&F did not intend for Acer to do anything at all based on the receipt of the tax vouchers.  That admission alone is fatal to Acer's claim of fraud, which should be dismissed.

### 2. *Acer Fails To Allege That The False Statements Were Material*

A claim of fraud requires an allegedly false statement to be material to the plaintiff's conduct.  *See Oberg*, 184 P.2d at 234.  Here, Acer "firmly believes" that the Plans "were entitled to the withholding-tax refunds [they] claimed from SKAT," notwithstanding its purported knowledge that the Disavowed Tax Vouchers were false.  *See* TPC at 3.  In other words, years after learning of inaccuracies in the Disavowed Tax Vouchers, *see* TPC ¶ 65, and with the full benefit of hindsight and the guidance of counsel, Acer contends that the inaccuracies in the

15

Disavowed Tax Vouchers—the only false statements alleged in its complaint—in no way altered

the Pension Plans' entitlement to the tax refunds they claimed.  According to Acer itself, the

inaccuracies made no difference and, thus, were concededly *not* material.

### 3.  *Acer Fails To Plead That ED&F Acted With Requisite State Of Mind*

In order to satisfy Rule 9(b)'s particularity requirement, a plaintiff asserting a claim of

fraud must allege facts sufficient to support a "strong inference of fraudulent intent." *IKB Int'l*

*S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014); *see also Arnett v. Howard*, No.

2:13-CV-591, 2014 WL 1165851, at *5 (D. Utah Mar. 21, 2014) (finding failure to plead fraud

claim where complaint did not allege, among other things, "facts demonstrating . . . that the

defendant knew the statement was false").  A "strong inference" of intent flows from either: (1)

"motive and opportunity" to commit fraud; or (2) "strong circumstantial evidence of conscious

misbehavior or recklessness." *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir.

1994).  However, without more, "[a]llegations that defendants 'stand[ ] to gain economically

from fraud do not satisfy the heightened pleading requirements of Rule 9(b).'" *In re Morgan*

*Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03-cv-8208, 2006 WL 1008138, at *10

(S.D.N.Y. Apr. 18, 2006); *see also Coppelson v. Serhant*, No. 19-CV-8481, 2021 WL 148088, at

*8 (S.D.N.Y. Jan. 15, 2021).  The TPC here alleges only that ED&F stood to gain from the fraud,

nothing more.  Acer states that "ED&F had a financial interest in making the misstatements in

the Disavowed Tax Vouchers because, in making those misstatements, it put itself in a position

to charge the Plan for custody and clearance fees after SKAT accepted the withholding-tax

applications based on the Disavowed Tax Vouchers." TPC ¶ 85.  Courts have repeatedly held

that the ability to earn fees or commissions, without more, is inadequate to support a claim of

fraud.  *See, e.g., MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143

(S.D.N.Y. 2010) ("earning fees on transactions" and preserving deposited amounts insufficient

allegation of scienter); *Coppelson*, 2021 WL 148088, at *8 (earning commission on real estate transaction inadequate to allege scienter).  Acer's allegations here are similarly insufficient.

Indeed, Acer's allegations support a reasonable inference that ED&F lacked knowledge of the error at the time that the Disavowed Tax Vouchers were prepared.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568-69 (2007) (citing presence of reasonable inference against alleged cause of action as relevant when heightened pleading standard applies to claim); *In re Lehman Bros. Sec. and ERISA Litig.*, 903 F. Supp. 2d 152, 170 (S.D.N.Y. 2012).  It was ED&F that voluntarily brought the inaccuracies in the Disavowed Tax Vouchers to the court in a proceeding in England.  TPC ¶ 44.  Acer came to learn about the inaccuracies in the tax vouchers only after ED&F disclosed them.  *Id.*

### B.     Acer Fails To State A Claim for Negligent Misrepresentation

Under Utah law, the "elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation 'does not require the intentional mental state necessary to establish fraud.'"  *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1085 (Utah Ct. App. 2013) (quoting *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986)).  Accordingly, an intention for the plaintiff to rely on the alleged misstatement and materiality are essential elements of negligent misrepresentation just as they are essential elements of fraud.  Because, as discussed above, Acer has failed to plead that any of ED&F's alleged misrepresentations were material, Acer's pleading fails to state a claim for negligent misrepresentation as well as fraud.

### C.     Acer's Fraud and Negligent Misrepresentation Claims Are Barred By The Economic Loss Doctrine

Acer's claims for fraud and negligent misrepresentation are also barred by the economic loss doctrine.  Utah's economic loss rule provides "that a party suffering only economic loss

from the breach of an express or implied contractual duty may not assert a tort claim for such breach *absent an independent duty of care* under tort law." *See KTM Health Care, Inc. v. SG Nursing Home, LLC*, 436 P.3d 151, 169-70 (Utah Ct. App. 2018) (quoting *Hermansen v. Tasulis*, 48 P.3d 235 (Utah 2002)) (emphasis in original).  In other words, the economic loss doctrine prevents parties from asserting tort claims that arise out of subject matter covered by a contract, unless the parties have sustained some non-economic injury.  *See, e.g.*, *Reighard v. Yates*, 285 P.3d 1168, 1176-77 (Utah 2012); *Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010); *Salt Lake City Corp. v. ERM-West, Inc.*, 984 F. Supp. 2d 1156, 1160 (D. Utah 2013) ("Once there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract.").  The economic loss doctrine applies to both intentional and negligent torts.  *See KTM Health Care*, 436 P.3d at 169-73.

Acer alleges that it interacted with ED&F as the "attorney-in-fact" for the Plans, which interacted with ED&F pursuant to contracts.  *See* TPC ¶¶ 7, 10-11.  As a result, any duties that ED&F owed to Acer arose out of the express contract between ED&F and Acer as the attorney-in-fact for the pension plans.  In *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1 (Utah 2003), the Court held that where a contractual claim may be stated on the basis of "the exact same conduct . . . , and the exact same facts and circumstances are at play," the tort and contractual duties are "overlapping" and the tort claims are barred.  *Id.* at 14.  That reasoning applies with even greater force here because, as is made clear by the Third-Party Complaints filed by the Plans for which Acer acted as attorney-in-fact, a contractual claim *was* brought on the basis of the same facts that Acer now alleges.  *See* ECF No. 226, Am. Third-Party Compl. & Jury

Demand, ¶¶ 110-119.[6]  Moreover, the injury that Acer seeks is purely economic, for Acer is

asking to be reimbursed for any monetary damages it may be required to pay to SKAT.  TPC ¶

87.  Accordingly, Acer's tort claims are barred by the economic loss doctrine.

### D.      Acer Fails To State A Claim For Equitable Indemnity

Even if a claim for equitable indemnification could be brought prior to any judgment or

settlement—for the reasons discussed above, it cannot—any such claim would fail because Acer

has not pleaded each element.  To establish a claim for equitable indemnification, "(1) the payor

(prospective indemnitee) must discharge a legal obligation the payor owes to a third person; (2)

the prospective indemnitor must also be liable to the third person; and (3) as between the

claimant payor and the prospective indemnitor, the obligation ought to be discharged by the

indemnitor."  *Perry*, 681 P.2d at 218.  In short, in order to support a claim for equitable

indemnity, Acer and ED&F both must be found liable to SKAT.  As discussed above, Acer has

not been found liable to SKAT.  Indeed, the United States District Court for the District of Utah

recently dismissed a nearly identical recitation of an indemnification claim, because "possible

future liability that could result from a payment someday clearly does not meet the requirement

of a 'payment of the underlying claim or the payment of a judgment or a settlement.'"  *Vicidiem,

Inc. v. Christensen*, No. 2:19-CV-0358-DBB-DBP, 2020 WL 7027869, at *4 (D. Utah. Nov. 30,

2020) (dismissing claim stating that "to the extent, if any, [indemnitee] is liable to [the third

party], such liability is the result of the unlawful conduct of [indemnitor]").  Acer has also failed

to plead a claim for equitable indemnification, for there is no allegation here that ED&F is liable

---

[6] The Plans that were clients of Acer have all filed their own claims against ED&F as part of three third-party complaints.  The Goldstein Law Group PC 401(k) Profit Sharing Plan filed one such complaint (ECF No. 219), the Newsong Fellowship Church 401(k) Plan filed another (ECF No. 225), and the DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates 401(k) LLC Plan, Riverside Associates Defined Benefit Plan, and the American Investment Group of New York, L.P. Pension Plan filed a third (ECF No. 226).

to SKAT for any amounts claimed.  Indeed, by Acer's own account, the tax refunds were completely justified, an allegation completely at odds with a claim that ED&F has liability to SKAT.  *See* TPC ("Acer firmly believes the Plans were entitled to the withholding-tax refunds they claimed from SKAT . . . .").  For this reason, too, Acer's claim for equitable indemnification should be dismissed.

### E.       The TPC's Apportionment of Fault Claims May Not Be Maintained As Independent Causes of Action

Acer may not assert apportionment of fault as a standalone cause of action "in the absence of an independent substantive claim entitling them to affirmative relief."  *Reiersen v. Smith*, No. 150900184, 2015 WL 11185811, at *1 (Utah Dist. Ct. June 17, 2015).  For the reasons stated above, none of the other causes of action that Acer assert against ED&F are actionable.  Accordingly, the claim for apportionment of fault under Utah law lacks the necessary predicate and must be dismissed as well.

20

## **CONCLUSION**

For the reasons set forth above, ED&F Man Capital Markets, Ltd. respectfully requests an order dismissing Acer's Third-Party Complaint in its entirety, with prejudice, as well as such other and further relief that the Court deems reasonable and proper under the circumstances.


Respectfully submitted,

Dated: April 15, 2021
     New York, NY


By: * /s/ Neil S. Binder *
    Neil S. Binder
    M. Tomas Murphy
    Gregory C. Pruden
    BINDER & SCHWARTZ LLP
    366 Madison Avenue, Sixth Floor
    New York, NY 10017
    Tel: 212.510.7008
    Fax: 212.510.7299
    nbinder@binderschwartz.com
    tmurphy@binderschwartz.com
    gpruden@binderschwartz.com