

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

VIA ECF

The Honorable Lewis A. Kaplan          May 18, 2021
United States District Judge
Southern District of New York
500 Pearl St.
New York, New York 10007

      Re:    *In Re: Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-02865 (LAK)

Dear Judge Kaplan:

      Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this letter motion, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), to compel Defendants to produce documents concerning limited liability companies that were established to sponsor the pension plans that submitted fraudulent refund applications.[1]

**SKAT alleges that the pension plans were shams sponsored by shell companies.**

      In addition to representing falsely that the Defendant pension plans owned shares of Danish stock on which they had received dividends, net of withholding tax, SKAT's amended pleadings allege that the Defendants' refund applications also were fraudulent because, contrary to the representations therein, the pension plans were not qualified plans entitled to a full refund under the U.S.-Denmark tax treaty. (Am. Compl. ¶ 4.)[2] In particular, SKAT alleges that each of the plans "was a sham entity sponsored by a shell company . . . . created solely for the purpose of submitting false refund claims to SKAT." (*Id.* ¶ 45.) The sponsoring companies "conducted no trade or business and had no employees," and almost always were established, along with the plan, "shortly before" the plan "submitted its first refund claim to SKAT." (*Id.*) The shell companies were created at the direction of defendants Richard Markowitz and John van

---

1. This motion relates to case nos. 19-cv-01781; 19-cv-01783; 19-cv-01785; 19-cv-01788; 19-cv-01791; 19-cv-01792; 19-cv-01794; 19-cv-01798; 19-cv-01800; 19-cv-01801; 19-cv-01803; 19-cv-01806; 19-cv-01808; 19-cv-01809; 19-cv-01810; 19-cv-01812; 19-cv-01813; 19-cv-01815; 19-cv-01818; 19-cv-01870; 19-cv-01918; 19-cv-01922; 19-cv-01926; 19-cv-01928; 19-cv-01929; and 19-cv-01931. "Defendants" are David Zelman, Edwin Miller, Joseph Herman, Perry Lerner, Robin Jones, and Ronald Altbach, the defendant pension plans in which they were the sole participants, and one related trust, as set forth in Exhibit A hereto.

2. SKAT's allegations in the actions related to this letter motion are substantially similar. Citations to "Am. Compl." are to SKAT's amended complaint filed in *Skatteforvaltningen v. Bareroot Capital Investments LLC Roth 401(K) Plan et al.*, 19-cv-01783, ECF No. 62, a copy of which is attached hereto as Exhibit B.

Merkensteijn, who then allocated the companies among Defendants, who were friends of Mr. van Merkensteijn or family members of Mr. Markowitz.[3]  These family members and friends became the sole participants in the sham pension plans.  The Defendant pension plans then entered into partnership agreements with entities controlled by Mr. Markowitz and Mr. van Merkensteijn (and defendant Robert Klugman), as a result of which the latter entities "received the lion's share of the refunds, while the pension plan Defendants retained only a small percentage." (*Id.* ¶ 53.)[4]  The Defendants' representations in their refund applications that the plans possessed tax-qualified status under section 401(a) of the Internal Revenue Code ("IRC") thus were false because the sponsoring companies and the plans were shams.  Among other things, the plans (1) "did not operate for the exclusive benefit of" their "sponsoring entity's employees or their beneficiaries"; (2) were not "established with the intent that" they be "'permanent' program[s]"; and (3) were "not properly funded." (*Id.* ¶¶ 46-48.)

**Defendants are withholding relevant documents based on unfounded objections.**

On March 3, 2021, SKAT served Rule 34 document requests on Defendants seeking (i) bank account statements for the companies that sponsored the plans; (ii) documents from the opening and closing of any such bank accounts; (iii) documents "reflecting the conduct of any business, or provision of any services" by those companies; and (iv) communications related to any of the foregoing.[5]  On April 8, 2021, Defendants served responses and objections, in which they refused to produce any documents on grounds including that all the documents sought purportedly are irrelevant, the requests are somehow untimely, and the phrases "conduct of any business" and "provision of any services" supposedly makes the third request "vague, ambiguous, overbroad and unduly burdensome."[6]  The parties met and conferred on May 3, 2021, during which Defendants stood on their objections to SKAT's requests.[7]

---

3. Ronald Altbach, Perry Lerner, Edwin Miller, and David Zelman were friends and colleagues of Mr. van Merkensteijn.  Robin Jones is Mr. Markowitz's sister and Joseph Herman is his brother-in-law.

4. Specifically, the Defendant plans ended up with only about one percent of the total refunds for which they applied.  First, 75 percent of a refund was paid to an entity controlled by Sanjay Shah, and other fees were paid to other participants in the scheme.  Second, through partnership agreements, 95 percent of the remainder was paid to entities controlled by defendants Klugman, Markowitz, and/or van Merkensteijn; and only five percent of this remainder was left for the plan.  Thus, after all these payments, the Defendant plans' final take was only about one percent of the refunds SKAT paid on their applications.

5. SKAT's March 3, 2021 document requests are attached hereto as Exhibit C.  SKAT previously served requests on Defendants in May 2019 that called for the production of these same documents.  Defendants refused to produce them, however, arguing that they were not responsive to any of the requests.  To remove any doubt, SKAT served the requests at issue here.

6. Each Defendant's responses and objections to SKAT's requests are substantially similar.  Defendant Lerner and his pension plans' responses and objections are attached hereto as Exhibit D.

7. During the meet and confer, Defendants proposed producing IRS Schedule C Forms for the sponsoring companies while continuing to withhold all other relevant documents called for by SKAT's requests.  These forms, which report cumulative profits or losses for sole proprietorships, are indeed relevant and responsive, but their production would not obviate SKAT's need for the bank statements, invoices, and other documents that reflect the activities (or lack thereof) of the sponsoring entities.

**The Court should overrule Defendants' objections and compel production.**

The Court should overrule Defendants' objections and compel them to produce the documents SKAT seeks.

<u>First</u>, Defendants' relevance objections should be set aside. Discovery is permitted on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y. 2004) ("relevance, for purposes of discovery, is an extremely broad concept"). The documents SKAT seeks bear directly on the allegations that the plans were not qualified under the IRC. For instance, the documents will prove SKAT's allegations that the plans were improperly funded. Section 401(a) of the IRC sets requirements for pension plans to be qualified as tax-exempt. If a pension plan does not meet those requirements it loses its tax-exempt status. *See Powell v. United States*, No. 10-381T, 2016 WL 1043195 (Fed. Cl. Mar. 15, 2016). One of those requirements is that the pension plan be funded from money derived from its sponsor's underlying business. I.R.C. § 401(a)(1). The bank account and other records SKAT seeks will show whether the funding for each of the Defendant plans derived from its sponsoring company's underlying business, and, indeed, whether that company had any such business at all. Defendants' objection that their production of bank account statements showing the "transfers into and out of the Pension Plans" is sufficient falls short. (Ex. D at 4.) Such records do not show whether the source of any funding the plans received was proper under the IRC.

The documents further will show that the Defendant plans did not meet the IRC's requirement that a pension plan be established with the intent that it be a "permanent" as opposed to a "temporary" program. 26 C.F.R. § 1.401-1(b)(2). As defendant Michael Ben-Jacob[8] put it, the plans "must have been formed with the intention of embarking on a permanent or long term [sic] business enterprise." (Ex. E (April 4, 2016 email from M. Ben-Jacob).) To satisfy this requirement, the plan sponsors needed to make "recurring and substantial contributions" to the plans from their profits. 26 C.F.R. § 1.401-1(b)(iv)(2). The documents SKAT seeks will show how much (if any) profits the plan sponsors made, and whether they made "recurring and substantial contributions" to the plans from any such profits.

The documents also are generally relevant to SKAT's allegations that the companies were shells and the plans were shams created for the purpose of submitting fraudulent refund applications. Each Defendant pension plan's formation document states that the plan was created to promote the sponsoring company's business. If that company had no business, the plan would be in violation of its own charter and unqualified under the IRC. Further, defendants Markowitz and van Merkensteijn directed Kaye Scholer LLP to create companies and plans using 30 "dissimilar random names," evidencing their fraudulent intent in attempting to disguise that the plans were all related and created primarily for the benefit of the same individuals, *i.e.*, them.[9] That these randomly named companies in fact conducted no business will further show that they were established for the purpose of submitting fraudulent refund applications.

---

8. Certain of the Defendants have claimed that Mr. Ben-Jacob served as their counsel. *See, e.g.*, Ex. F (Sept.16, 2020 P. Lerner Tr.) at 54:24-55:4; Ex. G (Oct. 30, 2020 R. Altbach Dep. Tr.) at 62:16-22.

9. Ex. H (June 19, 2014 email from J. van Merkensteijn). Mr. Markowitz instructed Kaye Scholer to make sure the names were not all "financial sounding," and Mr. van Merkensteijn directed that the names not all be drawn

4

Second, there is no merit to Defendants' objection that the phrases "conduct of any business" and "provision of any services" make SKAT's third request "vague, ambiguous, overbroad and unduly burdensome." (Ex. D at 5.) SKAT alleges that the sponsoring companies conducted no business and had no employees. (Am. Compl. ¶ 45.) Particularly with that context, SKAT's request for documents showing the "conduct of any business, or provision of any services" by the plan sponsors is neither vague, ambiguous, overbroad, nor unduly burdensome. *Cf. Melendez v. Greiner*, No. 01 Civ. 07888 (SAS)(DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) ("General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.").

Third, Defendants' argument that SKAT's third request is unduly burdensome rings particularly hollow in light of Defendants' own testimony that their companies conducted little to no business. For instance, Defendant Zelman testified that he formed Vanderlee Technologies LLC without "any intention to use it as a company to conduct business," but subsequently it "came to [his] attention" by way of Mr. van Merkensteijn that, for reasons he did not know, it was "useful to have business through . . . Vanderlee," so he issued "invoices" using Vanderlee's name to some of the clients of his pre-existing executive coaching business.[10] Similarly, Defendant Jones testified that the only business her three companies conducted was "advertising advice" she gave to her brother Mr. Markowitz's companies in a single phone call with him, for which he paid each of her companies approximately $13,000.[11] And Defendant Lerner testified that his five companies conducted no business whatsoever.[12]

Finally, there is nothing to Defendants' timeliness objection. (Ex. D at 4.) SKAT served these narrow requests on March 3, 2021, well in advance of the parties' agreed-to June 30, 2021 fact discovery cut-off. Defendants can hardly complain that rather than argue about whether these documents were responsive to its previous requests, SKAT served new requests squarely calling for their production.[13]

Accordingly, SKAT respectfully requests that the Court grant its motion to compel.

Respectfully submitted,

/s/ DRAFT
Marc A. Weinstein

Cc: All counsel of record via ECF

---

from the same genus of objects, *i.e.*, only "one name from rocks one from fish. Etc." Ex. I (June 10, 2014 email from R. Markowitz).

10. Ex. J (Dec. 11, 2020 D. Zelman Dep. Tr.) at 39:14-18, 40:4-42:8, 43:24-45:1.

11. Ex. K (Nov. 4, 2020 R. Jones Dep. Tr.) at 36:23-37:4, 38:16-19, 39:6-14, 43:1-11, 47:16-48:23, 49:19-23, 53:2-19, 54:14-19.

12. Ex. E (Sept. 16, 2020 P. Lerner Dep. Tr.) at 86:8-16, 90:16-22, 92:17-93:2.

13. The Defendants also incorporate their general objections into each of their responses to SKAT's requests, "violating Rule 34(b)(2)(B)'s specificity requirement." *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017). In any event, Defendants' general objections provide no firmer ground on which to withhold documents than the specific objections they made to each request.