**KAPLAN RICE** LLP

142 West 57th Street, Suite 4A, New York, NY 10019

Michelle A. Rice
Partner
Email: mrice@kaplanrice.com
Direct: 212.333.0227

May 20, 2021

<u>VIA ECF</u>
The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   In Re:  Customs and Tax Administration of the Kingdom of Denmark <u>Skatteforvaltningen) Tax Refund Scheme Litigation,</u> 18-md-02865 (LAK)

Dear Judge Kaplan:

Defendants David Zelman, Edwin Miller, Joseph Herman, Perry Lerner, Robin Jones and Ronald Altbach and their pension plans (the "Plan Defendants")[1] submitted appropriate tax refund applications in Denmark and the *ipse dixit* May 18, 2021 letter motion submitted by Plaintiff Skatteforvaltningen ("SKAT") is a feint.  The Plan Defendants oppose SKAT's letter motion because (i) SKAT has received the documents and information it pretends to need; (ii) the fragments of authorities cited in SKAT's motion are incomplete and inaccurate; and (iii) the premises underlying SKAT's requests for bank and other documents from the Delaware single member limited liability companies ("SMLLCs") sponsoring the 401K plans that are the subject of this motion (the "26 Plans") are flawed.

**<u>SKAT ALREADY KNOWS HOW THE 26 PLANS WERE FUNDED</u>**

In response to SKAT's May 2019 document requests, the 26 Plans and other defendants (that are not the subjects of this motion) produced 401K plan bank records and other documents for the relevant period, showing contributions to and distributions from each plan.  SKAT did not request the SMLLC bank records at that time because SKAT did not then and does not now need them.  The Plan Defendants strenuously disagree with SKAT's insinuated premises that the SMLLCs were required to have bank accounts and the contributions to the 401K plans were required to originate from those SMLLC bank accounts.[2]  But, regardless of that disagreement, the 401K bank account statements and other documents produced to SKAT

---

[1]    Exhibit A of the Letter Motion ("Mot.") identifies the pension plans of the Plan Defendants.

[2]    SKAT ignores that an SMLLC is a "disregarded entity" – *i.e.,* an entity with one owner that is not recognized for tax purposes as an entity separate from its owner.  The owner of an SMLLC reports all profits and losses on Schedule C of his or her tax return.  The individual Plan Defendants offered to produce the Schedule C from their returns for 2014 and 2015 as a compromise.  Although SKAT now claims that Schedule Cs are relevant, SKAT did not request such schedules in either of its document requests nor accepted the Plan Defendants' offer of compromise, likely because the schedules do not support its newly manufactured theory.

**KAPLAN RICE** LLP

show the sources of the funds.[3]  In other words, SKAT's argument, such as it is, either is supported or unsupported by the documents it already has.[4]

Moreover, SKAT provides a misleading snippet of I.R.C. § 401(a)(1), which purports to require a pension plan to be "funded from money derived from its sponsor's underlying business." Mot. at 3.  SKAT inappropriately omits the portion of the Code that permits an employee to make contributions with his or her own funds.  I.R.C. § 401(a)(1) provides that contributions to the trust can be made by the "employer, or employees, or both".  The plan documents for the 26 Plans contain a salary deferral feature for its "employees," a term defined to include "Self-Employed Individuals," the owners of the SMLLCs. Exhibit 1 at 5-6, 9 and 12.  Relatedly, the plan documents – approved by the IRS – provide that the SMLLCs may make contributions to the 26 Plans in their discretion.  *Id.* at 18-19.  Thus, in accordance with the plan documents and the IRC, the owners of the SMLLCs are permitted to contribute, and the SMLLCs may but are not required to contribute, to the 401K plans.  Accordingly, the requested SMLLC bank documents, which reflect contributions of the employer, are irrelevant even if SKAT did not already have the documents and information showing the sources of the contributions to the 26 Plans.

SKAT also claims to seek these documents to bolster its spurious argument that the 26 Plans were shams because they were not established with the intent that they be permanent programs.  Mot. at 3.  But, SKAT is incorrect that the SMLLCs had to make "recurring and substantial contributions" to the plans in order to meet the IRC "requirement that a pension plan be established with the intent that it be permanent".  26 C.F.R. § 1.401-1(b)(iv)(2), relied on by SKAT, provides examples of the facts and circumstances that are taken into account in determining whether a plan is intended to be permanent.  Remarkably, the particular example cited by SKAT relates to profit sharing plans, not 401K plans such as those sponsored by the SMLLCs.  Indeed, plans that have salary deferral features – such as with the 26 Plans – cannot be profit-sharing plans, which permit only employer contributions.  *See* https://www.irs.gov/retirement-plans/choosing-a-retirement-plan-profit-sharing-plan.  Thus, bank account statements, account opening documents and documents relating to the SMLLCs do not bear on a relevant issue.

With respect to the requests themselves, SKAT nowhere addresses the unquestionably overbroad time period for which the SMLLC documents are requested, namely from January 1, 2012 to the present.  These cases concern refund applications for 2014 and 2015 for the 26 Plans.  Bank and other records for 26 SMLLCs covering nearly a 10-year period goes well

---

[3]     As but one example, financial statements (balance sheets, profit and loss statements and cash flow statements) for each of the 26 Plans were produced, which show, among other things, contributions made on behalf of the 26 Plans.  *See, e.g.,* MPSKAT0001072-73 (marked highly confidential and not attached here).  The Plan Defendants and other defendants were questioned at length about these documents.

[4]     As noted in the Plan Defendants' Objections, it appears that SKAT actually seeks to ascertain whether the Plan Defendants have adequate funds to satisfy a judgment in the event that SKAT prevails in these cases, which is impermissible.  *See Pasternak v. Dow Kim,* 275 F.R.D. 461, 461 (S.D.N.Y. 2011) (denying discovery request for financial information prior to resolution of motion for summary judgment).

beyond the relevant period and should not be allowed. *See Pane v. Greenburgh,* No. 07 Civ. 3216 (LMS), 2009 WL 10740040, at *1 (S.D.N.Y. Nov. 16, 2009) (application denied because time period requested for documents overbroad); *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Solow Bldg. Corp.*, 54 A.D.2d 830, 830 (1st Dep't 1976) ("Plaintiff is entitled only to disclosure of those records which are relevant to this lawsuit and may not use the records obtains as the basis for an untrammeled review of the defendants' business transactions").

**<u>SKAT ALREADY KNOWS WHETHER THE SMLLCs CONDUCTED BUSINESS</u>**

In addition to producing documents, five of the individual Plan Defendants were deposed and gave testimony in response to questions regarding the business conducted by each of their SMLLCs. As SKAT states in its motion, certain individual Plan Defendants testified that they performed consulting work through their SMLLCs. *See* Mot. Exhibits J and K; *see also* Exhibit 2. Certain individual Plan Defendants testified that they did not conduct an operating business through their SMLLCs.[5] Mot. Exhibit F. Thus, as SKAT concedes, the recently requested documents at best would be cumulative evidence supporting the individual Plan Defendants' testimony and Defendants' objections to these requests are entirely appropriate. *See Chen-Oster v. Goldman, Sachs & Co.,* 285 F.R.D. 294, 303 (S.D.N.Y. 2012); *see generally* Fed. R. Civ. P 26(b)(2)(C)(i) (limits discovery where it is "unreasonably cumulative or duplicative").

Here, too, SKAT's unsupported premise – *i.e.,* that the SMLLCs are sham companies unless they had ***operating*** businesses – is unsound. The already produced operating agreements for the SMLLCs set forth their business purpose, specifically "to invest in property of any kind, domestic or foreign, real, personal, mixed or choses in action, and including but not limited to stocks . . ., by any method including but not limited to puts, calls, strips, straddles, short sales, futures, margin or by the exercise of any options of any sort irrespective of any statute, case rule or custom limiting the investment of Company funds." Exhibit 3 at 1-2. Consistently, under Delaware law, an SMLLC is not required to have an operating business; the business may be formed to passively invest in stocks and the like. *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 672 (Del. Ch. 2012) ("Delaware law recognizes that an entity may be 'formed and maintained as a passive instrumentality—for example, an entity that does no more than take and hold title to tangible investments is a commonly encountered phenomenon.' *Giancarlo v. OG Corp.,* 1989 WL 72022 (Del.Ch. June 23, 1989) (Allen, C.). '[F]unctioning as a passive instrumentality that is holding title to assets, a corporate function that is both lawful and common,' is a form of conducting business.' (*citing In re Seneca Invs. LLC,* 970 A.2d 259, 263 (Del. Ch. 2008)").

SKAT's ostensible concern about the SMLLC contributions to the 26 Plans and the nature of the business activities of the SMLLCs, and the recent issuance of a document request

---

[5] In response to such answers, counsel for SKAT did not question these particular deponents as to why they elected not to conduct non-passive activities in their SMLLCs, perhaps because the answer would not further SKAT's theory of liability.

3

**KAPLAN RICE** LLP

to address that concern, is belied by SKAT's actual practices in analyzing and approving the tax refund applications submitted by the Plan Defendants and others. Indeed, in response to Defendants' First Request for Admissions, SKAT has admitted both that ***"SKAT did not, at any point prior to August 24, 2015, inquire into or verify the source of any contributions to any U.S. pension plan Claimant"*** and that ***"SKAT did not, at any point prior to August 24, 2015, inquire into or verify the nature of any business activities conducted by any sponsoring entity associated with any U.S. pension plan Claimant"***. Exhibit 4 at Responses 54 and 55 (emphasis added). Having failed to make any inquiries concerning either topic before approving the refund applications, it is disingenuous for SKAT to now argue the relevance of such information. And, in any event, SKAT already has received documents and information reflecting the sources of the contributions to the 26 Plans from the Plan Defendants and the business activities of the SMLLCs.

**SKAT's ARGUMENT REGARDING THE "QUALIFICATION" OF THE SUBJECT PLANS IS SPECIOUS AND MISLEADING**

Littered throughout the letter motion is SKAT's unsupported and deceptive suggestion that the 26 Plans are not "qualified" tax-exempt plans. SKAT asserts that the Plan Defendants made false representations that they were tax-exempt plans entitled to full refunds under the U.S.-Denmark double taxation treaty. Mot. at 1. SKAT ignores, however, that documents produced in discovery establish that each of the 26 Plans was approved as a qualified 401K plan by the IRS. Exhibit 5. Thus, it is axiomatic that the 26 Plans did not misrepresent their tax-exempt status to SKAT. Nor is there any allegation that the 26 Plans misrepresented their tax-exempt status to the IRS in the Amended Complaints. SKAT's requests – which appear to be seeking documents for the purpose of relitigating the IRS's determinations that the 26 Plans were qualified tax-exempt plans – are improper and should be rejected out of hand.

\*   \*   \*   \*   \*

Fact discovery concludes in a little more than a month. That SKAT waited until the eleventh hour to submit this motion is in itself persuasive evidence of the motion's untimeliness and the overall lack of relevance of the documents sought by SKAT's recent request. The Plan Defendants respectfully submit that SKAT's letter motion to compel be denied because the newly-requested documents are not relevant and are, at most, cumulative of the documents and information already produced to SKAT by the Plan Defendants concerning the contributions to the 26 Plans and the business activities of the related SMLLCs.

Respectfully submitted,

*/s/ Michelle A. Rice*

Michelle A. Rice

cc:   All counsel of record via ECF

4