# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
 2           Master docket No. 18-MD-2865(LAK)
                   Case Nos. 18-cv-09505
 3    _____
                                       )
 4    IN RE:                           )
                                       )
 5    CUSTOMS AND TAX ADMINISTRATION OF )
      THE KINGDOM OF DENMARK (SKATTEFOR )
 6    VALTNINGEN) TAX REFUND SCHEME    )
      LITIGATION,                      )
 7                                     )
      _____)
 8

 9

10

11

12

13

14      REMOTE VTC VIDEOTAPED DEPOSITION UNDER ORAL

15                    EXAMINATION OF

16                    DAVID SCHULMAN

17                 DATE: October 21, 2020

18

19

20

21

22

23

24

25          REPORTED BY:  MICHAEL FRIEDMAN, CCR
```

David Schulman - October 21, 2020

Page 218

```
1    tax-exempt status.
2            MS. CAHAN:  Just give me one
3    moment.  I think I might be finished.
4            MR. BLESSINGTON:  Do you want to go
5    off the record?
6            MS. CAHAN:  No, I don't think so.
7            I think I have no further
8    questions, Mr. Schulman.  Thank you very
9    much for your patience.  I know it's
10   been a long day.
11           THE WITNESS:  You're welcome.
12           MR. BLESSINGTON:  Others may have
13   questions.
14           THE WITNESS:  Oh, I'm sorry, go
15   ahead.
16           MR. BINDER:  I have questions.
17
     EXAMINATION BY MR. BINDER:
18
19      Q   Mr. Schulman, my name is Neil
20   Binder with the law firm of Binder &
21   Schwartz.  We represent ED&F Man Capital
22   Markets, Limited.
23           I think I will extend this by only
24   a few minutes, so don't worry.
25      A   Okay.
```

David Schulman - October 21, 2020

Page 219

```
1          Q    First thing I would like to do is
2     to just show you a document.  I'm not sure
3     the best way -- how to mark it.  I don't know
4     what the convention is.
5               THE VIDEOGRAPHER:  Stand by.  The
6          time is 4:37 p.m. and we're going off
7          the record.
8               (Whereupon a discussion was held
9          off the record.)
10              THE VIDEOGRAPHER:  Stand by.  The
11         time is 4:28 p.m. and we're back on
12         record.
13              MR. BINDER:  This is 879.
14              (Whereupon the above mentioned was
15         marked for Identification.)
16         Q    So we just put on the screen,
17    Mr. Schulman, an exhibit.  It's Exhibit 879.
18    It's -- the Bates stamp is River 288 through
19    290.
20              We'll just scroll through the
21    document, or I think you can scroll through
22    the document.  Really what I want to just ask
23    you is to take a look at it, and then let me
24    know if that's your signature on the last
25    page.
```

```
 1        A    Okay.  I have it cut off.
 2             MR. BLESSINGTON:  Yeah, Neil, I
 3        apologize.  We cannot see the last page
 4        down.
 5             THE WITNESS:  I only see -- oh,
 6        wait.
 7        Q    I think you have to use the "Next
 8   Page" tab on the left.  You can't scroll all
 9   the way down.
10             MR. BLESSINGTON:  Okay.  Got it.  I
11        see that over here.
12             (Whereupon a discussion was held
13        off the record.)
14        A    We're down to my signature, which
15   looks to be my signature.  No promises,
16   but...
17        Q    Do you recognize that as your
18   signature?
19        A    I can't say that for a hundred
20   percent sure.  This could have been a
21   document that Stacey called and asked me if
22   it was all right for her to sign for me,
23   because I -- I don't know.
24        Q    So if it was signed, if you weren't
25   the one who put the signature there, is it
```

```
1     fair to say that Stacey Kaminer put your
2     signature there with your authority?
3          A    Yes.
4          Q    Thank you.  Okay.  So that's all we
5     have with that.  Maybe we can take that down.
6               So Mr. Schulman, I just want to
7     clarify an answer that you gave when
8     Ms. Cahan was asking you earlier about shares
9     that plans purchased and the issuing of
10    dividends.
11         A    Yes.
12         Q    Do you recall that conversation
13    with her?
14         A    I -- I recall some of those words,
15    but not the specific conversation, no.
16         Q    I'm just going to read you back
17    some of her questions and your answers.  And
18    then I'm just going to ask you to clarify, if
19    you will.
20         A    Okay.
21         Q    So Ms. Cahan asked you:
22              "Question:  But did you understand
23    whether the stocks that the plans purchased
24    would issue dividends?"
25              "Answer:  I understood your
```

David Schulman - October 21, 2020

Page 222

1    question, but I don't have any knowledge of
2    that, since I never knew what they were
3    purchasing or when."
4           "Question:  Were you ever aware of
5    the plans receiving dividends from stock that
6    they had purchased?"
7           "Answer:  Not that I know of."
8       A    Right.
9       Q    That was the question-answer.  And
10   I just want to clarify.
11          When you said "not that I know of,"
12   did you mean that you just don't know one way
13   or the other whether the plans received
14   dividends?
15      A    I just had no knowledge of the
16   transactions.  I mean, I see all of these
17   documents and everything, now that we're in
18   the middle of this lawsuit.  So obviously
19   they bought stock and obviously there were
20   dividends.
21          But I was answering did I know at
22   that particular time, and I didn't.  I had no
23   involvement with the mechanics.
24      Q    Right.  I just want to -- you
25   weren't saying that there were no dividends.

1    You were just saying you didn't know at the
2    time?
3        A    I was not saying that there were no
4    dividends.
5        Q    Thank you.  No further questions.
6        A    Okay.
7            MR. BLESSINGTON:  You know what?
8    If I could just have -- could we go off
9    the record for like five minutes?  I
10   just want to confer and I think we'll be
11   done.
12           THE VIDEOGRAPHER:  Stand by.  The
13   time is 4:33 p.m. and we're going off
14   the record.
15           (Brief recess taken.)
16           THE VIDEOGRAPHER:  Stand by.  The
17   time is 4:41 p.m. and we're back on
18   record.
19           MR. BLESSINGTON:  I have no
20   questions for you, Mr. Schulman.  So
21   thank you for your time.
22           THE WITNESS:  Okay.
23           MR. BLESSINGTON:  I trust we're
24   done?
25           MS. CAHAN:  Yes, we are.