**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION OF          MASTER DOCKET
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND          18-md-02865-LAK
SCHEME LITIGATION

This document relates to:          The cases
                                   identified in
                                   Appendix A

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR ISSUANCE OF A REQUEST FOR INTERNATIONAL JUDICIAL
<u>ASSISTANCE TO OBTAIN EVIDENCE IN DENMARK</u>**

# TABLE OF AUTHORITIES

## CASES

*Elliott Assocs. v. Republic of Peru*, Nos. 96-civ-7917 (RWS), 96-civ-7916(RWS), 1997 WL
    436493 (S.D.N.Y. Aug. 1, 1997)............................................................................................. 15

*Joseph v. Gnutti Carlo S.p.A.*, 15-cv-8910-AJN, 2016 WL 4083433 (S.D.N.Y. July 25, 2016) . 15

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769 (S.D.N.Y. 2012)...... 15

*Netherby Ltd. v. Jones Apparel Grp. Inc.*, No. 04-civ-7028-GEL, 2005 WL 1214345 (S.D.N.Y.
    May 18, 2005).................................................................................................................... 15

*R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164 (2d Cir. 1991)........................................... 18

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522
    (1987)............................................................................................................................... 15

*Villella v. Chem. & Mining Co. of Chile Inc.*, 15-civ-2106-ER, 2018 WL 2958361 (S.D.N.Y.
    June 13, 2018).................................................................................................................. 15

## STATUTES

28 U.S.C. § 1781.......................................................................................................................... 14

## OTHER AUTHORITIES

U.S. Dep't of State, Office of the Legal Advisor, Treaties in Force: A List of Treaties and Other
    International Agreements of the United States in Force on January 1, 2012 (2012)................ 15

## RULES

Fed. R. Civ. P. 26........................................................................................................................ 15
Fed. R. Civ. P. 28........................................................................................................................ 14

Defendants respectfully submit this memorandum of law in support of their motion (the "Motion") for the issuance of letters of request to obtain testimony from non-party witnesses in Denmark pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"). Proposed forms of letters of request are attached as Exhibits 1 through 6 to the Declaration of Sharon L. McCarthy, dated May 25, 2021 ("McCarthy Decl.").

## PRELIMINARY STATEMENT

This is a sprawling MDL in which SKAT has brought nearly 200 cases, alleging a fraud supposedly perpetrated by unrelated investors across America (and beyond) over a multi-year period resulting in billions of kroner of losses to the Kingdom of Denmark. In support of its claims, SKAT has taken or scheduled 40 depositions. Defendants, by contrast, have taken just three, with only three more scheduled. SKAT, believing itself to be the judge of what discovery Defendants ought to take, refuses to tender any additional witnesses within its control. And as to witnesses beyond SKAT's control, they are also beyond the Court's subpoena power by virtue of their residence in Denmark. Defendants' only recourse is to ask the Court to order SKAT to produce additional witnesses within its control and to seek the Court's assistance in issuing letters rogatory to obtain testimony from witnesses beyond SKAT's control.

Defendants now move the Court to issue letters for six witnesses located in Denmark. There is no question that these individuals would be deposed if they lived in the United States. Defendants should not be prejudiced in their ability to take discovery relevant to their defenses simply because they have been sued by a foreign government and nearly all witnesses relevant to this case live beyond the Court's subpoena power. Defendants' burden under the Hague Convention is low, and for the reasons set forth more fully below, Defendants have more than met

it.  These witnesses are not controlled or represented by SKAT and there is thus no burden to SKAT whatsoever if Defendants are permitted to take these depositions.  SKAT has no compelling basis to oppose these requests.

On March 6, 2021, Defendants filed a second motion for the issuance of requests for international judicial assistance to obtain testimony of witnesses located in Denmark under the Hague Evidence Convention (the "Second Motion").[1]  ECF No. 548.  In the Second Motion, Defendants identified fourteen individuals whose testimony is directly relevant to a resolution of this matter because of their personal knowledge of SKAT's payment of dividend withholding tax refunds despite its inattention to repeated warnings of insufficient internal controls and resources. SKAT did not oppose the Second Motion as to five individuals—Dorthe Pannerup Madsen, Rene Frahm Jørgensen, Laurits Cramer, Jens Sørensen, and Helen Sørensen.  On March 30, 2021, the Court granted the Second Motion only as to Leif Normann Jeppesen and Jette Zester, and denied the motion without prejudice to renewal following the depositions of SKAT's corporate representatives, Jens Brøchner and Christian Ekstrand and the depositions of Jeppesen and Zester.[2] Defendants have taken the Brøchner and Ekstrand depositions, and SKAT informed defendants in a May 21, 2021 e-mail that " SKAT is unable to tender Ms. Zester and Mr. Jeppesen at this time.  If that changes, we will let you know."[3] Defendants seek leave to renew, in part, their Second Motion, seeking the testimony of six witnesses, each of whom was the subject of the Second Motion.  Specifically, Defendants seek letters rogatory as to:

---

[1]  Defendants had previously filed a motion on February 15, 2021, seeking letters rogatory for the testimony of nine former Ministers of Taxation in Denmark. *See* ECF Nos. 533-535.

[2]  ECF No. 558 (Pretrial Order No. 18, Order on Second Motion for Foreign Judicial Assistance).

[3]  McCarthy Decl. Ex. 29 (E-mail dated 05/21/2021 from SKAT counsel).

- Dorthe Pannerup Madsen, the former head of SKAT's Accounting 2 department, which handled the payment of dividend tax reclaim applications until she was terminated in 2015;

- Kjeld Rasmussen, the former head of SIR, the Ministry of Taxation's internal audit department, which produced multiple reports critical of SKAT during Rasmussen's tenure;

- Rene Frahm Jørgensen, the former head of SKAT's Payment and Accounting department, who was responsible for overseeing the account statements reflecting SKAT's steadily increasing amount of dividend tax refunds to foreign investors;

- Laurits Cramer, a former member of SKAT's Accounting 2 department, who was personally responsible for reviewing the dividend tax refund applications, and who has publicly stated that he had no ability to verify the information in those applications;

- Jens Sørensen, the former Head of Recovery at SKAT, who was responsible for overseeing working groups set up following scathing audit reports on SKAT's deficiencies but that ultimately took no meaningful remedial actions; and

- Helen Sørensen, a current product manager at VP Securities, the Danish central securities depository, who can speak to relevant topics outside SKAT's knowledge regarding trading in and ownership of Danish securities.

SKAT did not oppose the Second Motion with respect to five of these witnesses:  Madsen, Jørgensen, Cramer, Jens Sørensen, and Helen Sørensen.[4]

Notwithstanding SKAT's previous position—that it did not object to the precise relief this motion seeks when Defendants raised it in the context of the Second Motion—SKAT has reversed course and will oppose this motion.  Its opposition is outrageous.  Specifically, SKAT's counsel informed defense counsel that SKAT intends to oppose the current motion on the ground that it cannot be heard until *after* the depositions of two witnesses whose testimony the Court approved, but whom SKAT  now claims it is unable to tender, Jette Zester and Leif Normann Jeppesen.

---

[4]     ECF No. 553 at 1 n.1 (Plaintiff Skatteforvaltningen's Memorandum of Law in Opposition to Defendants' Motion for Issuance of Requests for International Judicial Assistance to Obtain Evidence in Denmark).

While it is correct that the Court denied the prior motions "without prejudice to renewal after the completion of defendants' Rule 30(b)(6) deposition of the plaintiff and those of Ms. Zester and Mr. Jeppesen,"[5]  it is far from clear that Defendants will be able to take the depositions of Ms. Zester and Mr. Jeppesen.  Although the Danish authorities have received this Court's letters rogatory, SKAT itself recognizes the "lengthy and uncertain process" of discovery under the Hague Convention, and the possibility that the Danish authorities may never act on the request.[6] At the same time, SKAT has informed the defendants that, despite the fact that Zester and Jeppesen are Danish citizens and residents who previously worked for the Danish government, SKAT is "unable" to tender them for depositions.  SKAT then holds out the possibility that this could change: "If that changes, we will let you know."[7]  In the meantime, SKAT objects to any effort to obtain additional testimony of Danish citizens.

SKAT's position is indefensible.  In one breath, it says it will not make two witnesses who used to work for SKAT available to be deposed (notwithstanding this Court's order authorizing that testimony).  In the next, it says it opposes Defendants' request to seek additional testimony until Defendants take the depositions of witnesses that SKAT refuses to tender.  Then, SKAT protests that Defendants' request is somehow too late (because the close of fact discovery is approaching), while simultaneously premature (because Defendants have not deposed Ms. Zester or Mr. Jeppesen).  This is gamesmanship at its apogee.  Defendants respectfully request that the Court grant this relief as to these six witnesses.

---

[5]      ECF No. 558.

[6]      ECF 553 at 2.

[7]      McCarthy Decl. Ex. 29.

## BACKGROUND

### I.    SKAT's Documents And Testimony Support Defendants' Need To Take The Testimony Of These Witnesses

Defendants respectfully request that the Court issue letters of request as to these six witnesses.  Their testimony is key to establishing SKAT's awareness of significant control deficiencies and is essential to understanding SKAT's and the Ministry of Taxation's decisions to reject proposals to cure these deficiencies prior to 2015.  SKAT knew that its dividend tax refund system was designed to permit foreign investors, including certain U.S. investors, to seek refunds of dividend withholding tax under double taxation treaties.  SKAT had a responsibility to review the documentation from foreign investors to assess whether each investor was the "beneficial owner" of shares of a Danish company as of the dividend record date.  SKAT knew that its systems were designed in a way that could permit more than one investor to claim a refund for the same share.  SKAT did nothing, however, to change its tax laws or review procedures to amend the eligibility requirements or otherwise guard against the possibility that multiple applicants could— lawfully—seek refunds for the same shares.

SKAT was warned numerous times since at least 2006 by the Danish government's own auditors that the processes surrounding the dividend tax reclaim applications were deficient.  A 2010 audit by SIR, the Ministry of Taxation audit group, found that SKAT did not check whether the tax refund applicant actually owned the shares he purported to own and did not take any steps to reconcile the amount of dividends declared by Danish companies with the amount of dividends reportedly received by dividend recipients.[8]  Bridging the disconnect between those two metrics was critical to ensuring the accuracy of refund applications.

---

[8]    McCarthy Decl. Exs. 7, 8 (2010 Audit Report (SKAT_MDL_001_00281058; SKAT_MDL_001_00281058_T)).

A few years later in 2013, another SIR audit report reiterated certain of these conclusions and added the critical point that SKAT did not have any mechanism to prevent the submission of more than one reclaim request for the same share without SKAT's knowledge.[9]   To be sure, Defendants do not concede that multiple reclaims were, in fact, ever submitted for the same share, but SKAT's early awareness of—and failure to remedy—significant control deficiencies are indicia of its own negligence and is further evidence that SKAT paid out reclaims blindly.  Despite knowing about its inability to verify reclaim applicants' stock ownership or determine whether dividend taxes had been withheld and in what amount, SKAT continued paying dividend withholding tax refunds without implementing any mechanisms to address these issues.

Each SKAT witness at issue in this motion worked either in a division at SKAT that was the subject of these audits or in a role at SIR, which conducted the audits.  Their testimony bears directly on defenses relating to causation, failure to mitigate, contributory or comparative fault, the statute of limitations, and the revenue rule, as well as SKAT's equitable claims.  In addition, Defendants seek to depose Helen Sorensen, an employee of VP Securities, the central depository for Danish securities, who can speak to issues surrounding the trading of Danish corporate stock beyond the ken of SKAT's corporate designees.

### A.      Dorthe Pannerup Madsen

SKAT did not oppose Defendants' prior request for Madsen's testimony.[10]   While at SKAT, Madsen was the head of the Accounting 2 unit and, in this capacity, was one of a small number of individuals directly responsible for the oversight of SKAT's payment of dividend

---

[9]      McCarthy Decl. Exs. 9, 10 (2013 Audit Report (SKAT_MDL_001_00281103; SKAT_MDL_001_00281103_T)).

[10]     ECF No. 553 at 1 n.1.

withholding tax refunds from June 1, 2013 (when Madsen assumed that role)[11] through her termination in 2015—a critical period for statute of limitations purposes in this case.[12] She raised concerns about her team's ability to competently assess and monitor the payment of dividend withholding tax refunds, noting that "[d]ividend tax has become very vulnerable as the operating unit has had a very high staff turnover and there are few employees who are very specialized in the individual areas."[13]

During Madsen's tenure, the volume of dividend tax reclaims requested and paid out by Accounting 2 increased substantially,[14] a fact that the National Audit Office (called "Rigsrevisionen") later deemed a red flag that should have led SKAT to investigate the reclaims sooner than it did.[15] Madsen herself pointed this out at the time: in a July 1, 2014 email, Madsen described an "increase of DKK 1.265.024.765 billion" in reimbursement to foreign shareholders between 2013 and mid-2014, and noted her understanding that this increase was due to "several US pension funds mak[ing] acquisitions in Danish companies" and those funds "not hav[ing] to pay Danish tax, so therefore the very large repayments."[16] Given her role and the documentary evidence reflecting her knowledge at the time, she is well-positioned to testify to her understanding

---

[11] McCarthy Decl. Ex. 11A (Email from Dorthe Pannerup Madsen to employees in Accounting (June 4, 2013), A*dvokatundersogelse* ("Bech-Bruun Report") (SKAT_MDL_001_0075162_ T) at 321-322).

[12] McCarthy Decl. Exs. 12, 13 (Mathias Sommer, *Tidligere leder I Skat om udbytteskandalen: Det hele var så uvirkeligt* [*Former head of Tax on the dividend case: It was all so unreal*], DR (Sep. 24, 2019), https://www.dr.dk/nyheder/penge/tidligere-leder-i-skat-om-udbyttesagen-det-hele-var-saa-uvirkeligt).

[13] McCarthy Decl. Ex. 11B (Email from Dorthe Pannerup Madsen to Randi Merete Nielsen (June 19, 2014), Bech-Bruun Report at 379-380).

[14] McCarthy Decl. Exs. 12, 13.

[15] McCarthy Decl. Exs. 14, 15 (Rigsrevisionen's Report No. 11/2015 (Feb. 17, 2016) (SKAT_MDL_001_0075124; SKAT_MDL_001_0075124_T)). Rigsrevisionen is an independent audit office under the control of the Danish Parliament. It is a separate entity from SIR, which is the Ministry of Taxation's internal audit function.

[16] McCarthy Decl. Ex. 11C (Email from Dorthe Pannerup Madsen to Bente Ekelund Oddershede (July 1, 2014) Bech-Bruun Report at 391-392).

of the explanation for the dramatic increase in volume between 2013 and 2014, and SKAT's response—or lack thereof—to the increase.

The testimony of SKAT's corporate witnesses only underscores the need for Madsen's testimony.  In particular, Defendants seek to examine Madsen regarding SKAT's decision to suspend payments of dividend withholding tax.  On June 16, 2015, SKAT received a warning from an external source making allegations of fraud in connection with dividend tax refunds, but SKAT continued to pay out refunds for about 50 days, until August 6, 2015.[17]  The facts relating to the decision to suspend payments, and why SKAT did not stop payments sooner, are directly relevant to a failure to mitigate defense.  SKAT's 30(b)(6) witness, Christian Ekstrand, was tasked with investigating the allegations of fraud.  But he testified that he was not authorized to make recommendations concerning the suspension of payments on dividend reclaims.[18]  Rather, it was Madsen who had that authority and "made a recommendation" to deputy director René Frahm Jørgensen "to stop payment" after an August 6, 2015 meeting that Madsen convened to discuss Ekstrand's investigation.[19]  Ekstrand further testified that he could not explain what happened with respect to the decision to stop paying reclaims after this meeting "because that process was out of [his] hands [and] was solely a process handled by Dorthe."[20]

The Court should grant Defendants' request to depose Dorthe Pannerup Madsen.

---

[17]      McCarthy Decl. Ex. 16 (May 7, 2021 Tr. ("Day 2 Ekstrand Tr."), 198:13-204:1; 300:2-21).

[18]      *Id.*, 230:6-13.

[19]      *Id.,* 229:6-230:13.

[20]      *Id.*, 277:7-15.

## B.     Kjeld Rasmussen

Between 2010 and 2013, Kjeld Rasmussen served as the head of SIR, the Ministry of Taxation's internal auditing unit that conducted reviews of SKAT and produced the critical 2010 and 2013 audit reports identifying serious control gaps and administrative failures at SKAT.[21] Brøchner admitted during his testimony that he never spoke with Rasmussen during Rasmussen's tenure as head of SIR.[22]   Defendants thus need to hear from Rasmussen himself about his oversight of SIR, his knowledge of the facts underlying SIR's highly critical reports about SKAT, and what, in his view, needed to be done at SKAT to remedy the problems that SIR identified.   In particular, Defendants seek to examine Rasmussen about the 2013 audit report, which warned that it was possible for multiple applications for refund of dividend withholding tax to be submitted for the same share without SKAT's knowledge and that SKAT needed to develop procedures to examine the underlying substance of refund applications prior to payment.[23]   Despite the report's detailed account of SKAT's deficient controls, Brøchner repeatedly described SIR's 2013 report as "not very critical of the procedures" and he stated that he would not have taken specific steps to address the concerns identified in the report if he had received it in 2013.[24]   Brøchner's testimony stands in stark contrast to the language in the report itself, and Defendants should be able to test his testimony by asking Rasmussen, who was the head of the department responsible for issuing these reports, about the criticisms.

---

[21]      McCarthy Decl. Exs. 17, 18 (Mathias Sommer, *Rigsrevisor revser vigtig vagthund: Risiko for milliardsvindel nåede aldrig frem til de ansvarlige* [*Auditor General reprimands important watchdog : Risk of billion-dollar fraud never reached thoseresponsible*] (Nov. 10, 2020), https://www.dr.dk/nyheder/penge/rigsrevisor-revser-vigtig-vagthund-risiko-milliardsvindel-naaede-aldrig-frem-til-de).

[22]      McCarthy Decl. Ex. 19 (Brøchner Tr. 71:2-9).

[23]      McCarthy Decl. Exs. 9, 10.

[24]      McCarthy Decl. Ex. 19 (Brøchner Tr. 128:5-25; 136:19-137:6).

In addition, prior to Brøchner's tenure as permanent secretary, Rasmussen arranged for the establishment of an audit committee tasked with ensuring that the concerns raised in SIR's audit reports were addressed.[25]  Defendants need to depose Rasmussen to learn more about the audit committee's work, which Brøchner did not know about.[26]  In short, Defendants should be able to take Rasmussen's testimony to better understand the SIR audit reports his office prepared, and the actions taken—or not taken—in response.  The Court should grant this request.

### C.    René Frahm Jørgensen

SKAT did not oppose Defendants' prior request for Jørgensen's testimony.[27]  Jørgensen was the deputy director of SKAT's Payment and Accounting Division—where dividend withholding tax refunds were processed and paid—from 2013 to 2015.[28]  Jørgensen's testimony to the Commission on Inquiry into SKAT reflects that he has relevant first-hand knowledge of SKAT's failings.  According to media reports, in that testimony, Jørgensen blamed significant budget cuts and a lack of resources for impeding the proper administration of SKAT's Accounting 2 department.[29]  While SKAT was slashing Accounting 2's resources, the amount of dividend tax refund payments increased dramatically from about DKK 2.7 billion in 2013 to approximately DKK 6.1 billion in 2014.[30]  Meanwhile, Jørgensen approved statements on more than one occasion

---

[25]     McCarthy Decl. Ex. 20, 21 (Mathias Sommer, *Hårde konfrontationer i skattekommissionen: Departementschef afviser ansvar i svindelsag for 12,7 milliarder [Fierce Confrontations in the Tax Commission: Head of department denies responsibility in fraud case for 12.7 billion]*, DR (Oct. 28, 2020), https://www.dr.dk/nyheder/penge/haarde-konfrontationer-i-skattekommissionen-departementschef-afviser-ansvar-i).

[26]     McCarthy Decl. Ex. 19 (Brøchner Tr. 116:13-24).

[27]     ECF No. 553 at 1 n.1.

[28]     McCarthy Decl. Exs. 22, 23 (Mathias Sommer and Jakob Ussing, *Tidligere skattedirektør i skudlinjen: Godkendte månedsregnskaber, mens pengene fossede ud af statskassen [Former Tax Director in the firing line: approved monthly accounts while the money flowed out of the treasury]*, DR (Apr. 30, 2019), https://www.dr.dk/nyheder/penge/tidligere-skattedirektoer-i-skudlinjen-godkendte-maanedsregnskaber-mens-pengene).

[29]     *Id.*

[30]     *Id.*

that showed that SKAT paid more in tax refunds than it received from Danish companies in withheld tax.  Even so, Jørgensen described the difference between collected tax revenues and disbursements as "reasonable" and did not flag the issue for his superiors.[31]  Defendants ought to be able to ask him why.

Further, Lisbeth Rømer, a former head of Accounting 2, emailed memos to Jørgensen flagging SKAT's insufficient control over the disbursement of withheld dividend tax.   In particular, she sent him a November 20, 2013 memo addressed to SKAT Director Jesper Rønnow Simonsen that detailed a lack of reconciliation between the payment and collection of withheld dividend tax, as well as technical challenges to establishing such a reconciliation.[32]  Curiously, Jørgensen decided not to disclose Rømer's memo to Simonsen.[33]  Jørgensen's decision-making and knowledge of SKAT's deficient processes while he had responsibility for dividend withholding tax administration are directly relevant to Defendants' arguments that SKAT's failures were known at the time and avoidable.  The Court should grant this request.

### D.      Laurits Cramer

SKAT did not oppose Defendants' prior request for Cramer's testimony.[34]  Cramer was a chief consultant at SKAT's Accounting 2 unit until the end of 2013.  Ekstrand testified that Cramer was personally responsible for opening each reclaim application SKAT received, "check[ing] whether it was a Danish or a foreign account number … and check[ing] that the correct

---

[31]      *Id.*

[32]      McCarthy Decl. Ex. 11D (Email from Lisbeth Rømer to Rene Frahm Jørgensen (Nov. 15, 2013) Bech-Bruun Report at 347-350).  Rømer wrote to Jørgensen, "It is not easy to describe the big gaps that I think are currently in the dividend tax administration. But here's a try. I hope you will read it, as a little more outsider, and give your comments to me so that the paper can be good and hopefully speed up the process."

[33]      McCarthy Decl. Ex. 11E (Bech-Bruun Report at 593).

[34]      ECF No. 553 at 1 n.1.

documentation was available with it."[35]  In addition, Lisbeth Rømer described Cramer as the individual who "prepares everything" and "knows most about everything" in a June 4, 2013 note to Jørgensen concerning dividend tax administration, including the reimbursement of dividend tax to foreign shareholders.[36]  Cramer has publicly stated that SKAT's well-documented resource constraints precluded any meaningful review of the underlying substance of dividend reclaim applications, and that he was instructed to push through applications that had documents with a stamp of any kind, despite employees in Accounting 2 not knowing how to verify the authenticity of stamps from a foreign jurisdiction.[37]  Given his public statements that SKAT acted blindly in paying billions of Danish kroner in refunds to foreign shareholders and that he and colleagues warned SKAT's management for years about risks posed by control problems,[38] it is clear that Cramer has relevant testimony about the deficiencies of SKAT's process for reviewing refund applications by foreign shareholders, as well as SKAT's knowledge of those deficiencies at the time.  The Court should grant this request.

### E.    Jens Sørensen

SKAT did not oppose Defendants' prior request for Sørensen's testimony.[39]  Sørensen was the Director of Recovery at SKAT between 2013 and 2015.  Brøchner described Sørensen as being responsible for overseeing Accounting 2, the department with "the responsibility for collection, payment, and accounting" of claims for dividend withholding tax refunds during the relevant

---

[35]    McCarthy Decl. Ex. 24 (May 6, 2021 Tr. ("Day 1 Ekstrand Tr."), 36:16-38:14).

[36]    McCarthy Decl. Ex. 11F (Bech-Bruun Report at 317-319).

[37]    McCarthy Decl. Exs. 25, 26 (Rasmus Bøttcher Christensen, *Tidligere medarbejder i Skat om milliardsvindel: - Det var en åben ladeport*[*Former employee of Skat about billion fraud: It was an open charging port*] DR (Sept. 3, 2015), https://www.dr.dk/nyheder/penge/tidligere-medarbejder-i-skat-om-milliardsvindel-det-var-en-aaben-ladeport).

[38]    *Id*.

[39]    ECF No. 553 at 1 n.1.

period.[40]  When Defendants examined Brøchner about what was done in response to SIR's audit reports, he testified that a "working group had been established" after the 2010 audit report, but he was not able to speak to the working group's recommendations and he did not know whether the working group's report resulted in the implementation of any changes to the administration of dividend withholding tax refunds.[41]  Documents in the record and witness testimony before the Commission on SKAT establish that Sørensen was in charge of these working groups.[42] Sørensen's testimony is therefore crucial to understanding the role of the working groups and whether any changes were made as a result of recommendations reported by the working groups. Given his oversight of these working groups, Defendants seek to examine Sørensen about the failure to take any concrete steps in response to the 2013 SIR report and SKAT's failure to remedy its deficiencies prior to 2015.

### F.     Helen Sørensen

SKAT did not oppose Defendants' prior request for Sørensen's testimony.[43]  Ekstrand's testimony highlighted the importance of deposing Sørensen, a product manager at VP Securities, the Danish central securities depository.  Ekstrand testified that VP Securities played a significant role in the Danish dividend tax refund system.  In particular, VP Securities calculates the amount each Danish company will pay in dividends and what amount of taxes should be withheld, and VP Securities' records are used to determine where the shares are located and with which custodian.[44]

---

[40]     McCarthy Decl. Ex. 19 (Brøchner Tr. 39:24-40:8).

[41]     *Id.*, 93:2-9; 95:14-25.

[42]     McCarthy Decl. Exs. 27, 28 (Mathias Sommer, *Arbejdsgruppe i Skat 'løste' problemerne: Samtidig fossede udbytte-milliarder ud af statskassen* [*Working group in Tax 'solved' the problems: At the same time, dividend billions flowed out of the treasury*], DR (Mar. 4, 2020), https://www.dr.dk/nyheder/penge/arbejdsgruppe-i-skat-loeste-problemerne-samtidig-fossede-udbytte-milliarder-ud-af).

[43]     ECF No. 553 at 1 n.1.

[44]     McCarthy Decl. Ex. 24 (Day 1 Ekstrand Tr. 74:15-25; 148:9-19).

Defendants should be able to examine Sørensen on topics central to the administration of dividend withholding tax refunds that fall outside SKAT's knowledge—for example, Ekstrand testified that a question about securities reporting requirements was "more suited for somebody working for VP Securities."[45]

As Ekstrand identified, Sørensen could testify as to Danish securities processes and regulations relevant to the transactions in this case, given her position at VP Securities.  These topics include VP Securities' registration of share ownership (as Ekstrand testified that "there were some problematic registrations within VP, which means that VP did not necessarily report the beneficial owner of the share"[46]), as well as net settlement, book entry, dematerialized shares, dividend entitlement, stock lending and/or short selling, entitlement to dividend withholding tax refunds, and the process by which VP Securities and SKAT verified facts related to these topics or if such facts were verified at all.

*     *     *

Defendants seek to obtain this evidence under the Hague Evidence Convention because none of these witnesses is a party to this lawsuit, and all are foreign citizens and not otherwise subject to the jurisdiction of this Court.  At this time, Defendants do not contemplate bringing additional requests for assistance.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 28(b) and 28 U.S.C. § 1781(b)(2), federal courts have the authority to issue letters rogatory enabling a U.S. litigant to obtain non-party discovery from a foreign entity.  *See Netherby Ltd. v. Jones Apparel Grp. Inc.*, No. 04-civ-7028-

---

[45]   *Id.*, 154:15-155:1.

[46]   *Id.*, 135:13-19.

14

GEL, 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005).  When considering a motion for the issuance of letters rogatory, U.S. courts apply the discovery principles in Rule 26, including that a party may seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Although the party seeking discovery through letters rogatory bears the burden of showing relevance, "that burden is not a heavy one," *Villella v. Chem. & Mining Co. of Chile Inc.*, 15-civ-2106-ER, 2018 WL 2958361, at *3 (S.D.N.Y. June 13, 2018), and relevance, as defined in Rule 26, is "an extremely broad concept," *Joseph v. Gnutti Carlo S.p.A.*, 15-cv-8910-AJN, 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013)).  Once the moving party shows the relevance of the discovery sought, the burden shifts to the responding party to show "some good reason to deny the application." *Elliott Assocs. v. Republic of Peru*, Nos. 96-civ-7917 (RWS), 96-civ-7916(RWS), 1997 WL 436493, at *2-3 (S.D.N.Y. Aug. 1, 1997) (granting motion for issuance of letters rogatory over objection that testimony sought would be irrelevant and duplicative).

Denmark is a signatory to the Hague Evidence Convention, as is the United States.  U.S. Dep't of State, Office of the Legal Advisor, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2012 (2012), 398.  It is thus appropriate to turn to the procedures of the Hague Convention "whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 541 (1987); *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 782 (S.D.N.Y. 2012) ("[P]arties seek, and U.S. courts will usually issue, letters rogatory where the court otherwise lacks jurisdiction to compel discovery[.]").

**ARGUMENT**

SKAT filed this case in the United States and, by the simple fact of that choice, any witnesses outside SKAT's control are also beyond the Court's subpoena power.  As demonstrated above, these six witnesses possess knowledge relevant to the facts alleged in SKAT's claims and critical to Defendants' defenses.  Each of these witnesses' testimony is directly relevant to understanding whether the conduct of SKAT or the Ministry of Taxation contributed to the alleged injuries and the date on which the facts underlying SKAT's claims were known to SKAT.  They would surely be deposed if they were located in the United States.  Since they are not, Defendants seek relief from this Court to issue letters rogatory to Denmark.    The Court previously ordered that Defendants could renew their motions for the issuance of these six letters rogatory following the depositions of SKAT's corporate representatives and the depositions of Jeppesen and Zester. Defendants have completed the depositions of SKAT's corporate representatives but are unable to depose either Jeppesen or Zester because the Danish government has yet to act on the letters rogatory seeking their testimony and SKAT, for whom each of the witnesses previously worked, claims to be "unable" to tender them.  Given the quickly approaching discovery deadline of June 30, Defendants are between the proverbial rock and hard place:   if we wait for Denmark to order Jeppesen and Zester to testify before seeking the relief sought in this motion, the discovery deadline may have passed and the opportunity to obtain crucial evidence from these six witnesses will be lost.  Defendants therefore are left with no choice but to ask the Court to issue the requested letters rogatory.

The testimony of each of the witnesses at issue would advance the record in this case:

- Dorthe Pannerup Madsen would be asked what, if any, steps were taken to address control gaps and administrative failures in SKAT's processes. Madsen can also testify about her recollections and interactions

concerning SKAT's decision to suspend payments of dividend withholding tax.

- Kjeld Rasmussen, former head of the Ministry of Taxation's internal audit division, SIR, can testify to the contents of SIR's damning 2010 and 2013 audit reports that quite clearly identified failings in SKAT's control functions. Notably, the 2010 SIR Report said that SKAT was not verifying the substance of reclaim applications, including whether refund applicants owned the shares and were entitled to refunds of dividend taxes.[47] The 2010 report also warned that SKAT was not checking whether dividend tax was being requested more than once per share, and that SKAT did not take any steps to reconcile declarations by Danish companies of the amounts of dividends paid out and reported by dividend recipients of the amount received.[48] The 2013 SIR Report flagged that those issues had not been cured and that SKAT did not have any mechanism to detect, much less prevent, multiple reclaim applications from being submitted for the same share.[49]

- Defendants will ask Rene Frahm Jørgensen about his approval of monthly account statements showing that refund payments were increasing dramatically and at a rate that outpaced the collection of the corresponding tax payments from Danish companies, as well as his decision not to raise this issue with his superiors or to otherwise inquire further.

- When deposing Jens Sørensen, Defendants will ask about the complete failure of the working groups he oversaw to address deficiencies identified in critical audit reports prior to 2015.

- Defendants will also ask Laurits Cramer to explain the basis for his statements criticizing SKAT's control gaps and resource constraints affecting the review of refund applications by foreign shareholders, who he warned of those issues, and specifically what he warned them about.

- Finally, given her role at VP Securities, Helen Sørensen, has valuable information about processes and regulations relevant to the Danish securities transactions in this case, VP Securities' calculation of dividends and withheld taxes, and its registration of share ownership—testimony that could not be addressed by SKAT's corporate designees.

---

[47]  McCarthy Decl. Exs. 7, 8.

[48]  *Id.*

[49]  McCarthy Decl. Exs. 9, 10.

With their knowledge of separate aspects of the administration of dividend withholding tax during the key period, these witnesses can offer testimony relevant to causation, failure to mitigate, statute of limitations, contributory or comparative fault, and other defenses in this litigation. Where, as here, the witnesses cannot be compelled to appear in a U.S. court, letters rogatory are an appropriate mechanism to obtain relevant evidence and testimony. *See R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 169 (2d Cir. 1991).

## II.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant the Motion for Issuance of Requests for International Judicial Assistance to Obtain Evidence.

Dated: New York, New York
      May 25, 2021

                    Respectfully submitted,

                    KOSTELANETZ & FINK, LLP

By:    /s/ Sharon L. McCarthy
        Sharon L. McCarthy
        7 World Trade Center, 34th Floor
        New York, New York 10007
        Tel:    (212) 808-8100
        Fax:    (212) 808-8108
        smccarthy@kflaw.com

        *Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, BerninaPension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan,Xiphias LLC Pension Plan*

18

WILMER CUTLER PICKERING HALE AND
DORR LLP

By:   /s/ Alan E. Schoenfeld
        Alan E. Schoenfeld
        7 World Trade Center250 Greenwich Street
        New York, NY 10007
        Telephone: (212) 230-8800
        alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Richard Markowitz,
Jocelyn Markowitz, Avanix Management LLC Roth
401(K) Plan, Batavia Capital Pension Plan,
Calypso Investments Pension Plan, Cavus Systems
LLC Roth 401(K) Plan, Hadron IndustriesLLC Roth
401(K) Plan, RJM CapitalPension Plan, RJM
Capital Pension Plan Trust, Routt Capital Pension
Plan, Routt Capital Trust*

CAPLIN & DRYSDALE,CHARTERED

By:   /s/ Mark D. Allison
        Mark D. Allison
        CAPLIN & DRYSDALE,CHARTERED
        600 Lexington Avenue, 21st Floor
        New York, New York 10022
        Phone: (212) 379-6060
        Email: mallison@capdale.com

*Attorneys for Defendants Robert Klugman, RAK
Investment Trust, Aerovane Logistics LLC Roth
401K Plan, Edgepoint Capital LLC Roth 401K
Plan, Headsail ManufacturingLLC Roth 401K Plan,
The Random Holdings 401K Plan, The Stor Capital
Consulting LLC 401K Plan*

KAPLAN RICE LLP

By:   /s/ Michelle A. Rice
        Michelle A. Rice
        Kaplan Rice LLP 142 West 57th Street
        Suite 4A
        New York N.Y. 10019

19

(212) 333-0227
mrice@kaplanrice.com

*Attorneys for Defendants Joseph Herman, David
Zelman, Edwin Miller, Ronald Altbach, Perry
Lerner, Robin Jones, Ballast Ventures LLC Roth
401(K) Plan, Bareroot Capital Investments LLC
Roth 401(K)Plan, Albedo Management LLC Roth
401(K) Plan,Dicot Technologies LLC Roth 401(K)
Plan, Fairlie Investments LLC Roth 401(K) Plan,
First Ascent Worldwide LLC Roth 401(K) Plan,
Battu Holdings LLC Roth 401(K) Plan, Cantata
Industries LLC Roth 401(K) Plan, Crucible
Ventures LLC Roth 401(K) Plan, Monomer
Industries LLC Roth 401(K) Plan, Limelight Global
Productions LLC Roth 401(K) Plan, Loggerhead
Services LLC Roth 401(K) Plan, PAB Facilities
Global LLC Roth 401(K) Plan, Plumrose Industries
LLC Roth 401(K) Plan, Pinax Holdings LLC Roth
401(K) Plan, Roadcraft Technologies LLC Roth
401(K) Plan, Sternway Logistics LLC Roth 401(K)
Plan, Trailing Edge Productions LLC Roth 401(K)
Plan, True Wind Investments LLC Roth 401(K)
Plan, Eclouge Industry LLC Roth 401(K) Plan,
Vanderlee Technologies Pension Plan, Vanderlee
Technologies Pension Plan Trust, Cedar Hill
Capital Investments LLC Roth 401(K) Plan, Green
Scale Management LLC Roth 401(K) Plan, Fulcrum
Productions LLC Roth 401(K) Plan, Keystone
Technologies LLC Roth 401(K) Plan,Tumba
Systems LLC Roth 401(K) Plan*


DEWEY PEGNO & KRAMARSKYLLP

By:   /s/ Thomas E.L. Dewey
      Thomas E.L. Dewey
      777 Third Avenue – 37th Floor
      New York, New York 10017
      Tel.: (212) 943-9000
      Fax: (212) 943-4325
      E-mail:  tdewey@dpklaw.com

      *Attorneys for DefendantMichael Ben-Jacob*

20

K&L GATES LLP

By:     /s/ John C. Blessington
        John C. Blessington (*pro hac vice*)
        K&L GATES LLP
        State Street Financial Center
        One Lincoln Street
        Boston, MA  02111
        T: 617.261.3100
        F: 617.261.3175
        E: john.blessington@klgates.com

        *Attorneys for Defendants / Third-Party Plaintiffs*
        *Acer Investment Group LLC, American Investment*
        *Group of New York, L.P. PensionPlan, DW*
        *Construction, Inc. Retirement Plan, Kamco*
        *InvestmentsInc. Pension Plan, Kamco LP Profit*
        *Sharing Pension Plan, Linden Associates Defined*
        *Benefit Plan, Moira Associates LLC 401K Plan,*
        *Newsong Fellowship Church 401K Plan, Riverside*
        *Associates Defined Benefit Plan, Robert Crema,*
        *Stacey Kaminer, Alexander Jamie Mitchell III,*
        *David Schulman, Joan Schulman,* and *Darren*
        *Wittwer*


        KOSTELANETZ & FINK, LLP

By:     /s/ Bryan C. Skarlatos
        Bryan C. Skarlatos
        Eric Smith
        Kostelanetz & Fink, LLP
        7 World Trade Center, 34th Floor
        New York, New York 10007
        T:  (212) 808-8100
        F:  (212) 808-8108
        bskarlatos@kflaw.com
        esmith@kflaw.com

        *Attorneys for Defendants John Doscas, David*
        *Freelove, Sterling Alpha LLC 401(K) Profit Sharing*
        *Plan, Federated Logistics LLC 401(k) Plan, and*
        *Del Mar Asset Management & Retirement Plan*

21

**APPENDIX A**

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| John van Merkensteijn, III | Sharon L. McCarthy<br>Caroline Ciraolo<br>Nicholas S. Bahnsen<br>Kostelanetz & Fink LLP<br>7 World Trade Center, 34th Floor<br>New York, New York 10007<br>Tel: (212) 808-8100<br>Fax: (212) 808-8108<br>cciraolo@kflaw.com<br>smccarthy@kflaw.com<br>nbahnsen@kflaw.com | 19-cv-01866<br>19-cv-01865<br>19-cv-01906<br>19-cv-01894<br>19-cv-01911<br>19-cv-01871<br>19-cv-01930<br>19-cv-01873<br>19-cv-01794<br>19-cv-01798<br>19-cv-01788<br>19-cv-01918<br>19-cv-01928<br>19-cv-01931<br>19-cv-01800<br>19-cv-01803<br>19-cv-01809<br>19-cv-01818<br>19-cv-01801<br>19-cv-01810<br>19-cv-01813 |
| Elizabeth van Merkensteijn | | 19-cv-01893 |
| Azalea Pension Plan | | 19-cv-01893 |
| Basalt Ventures LLC Roth 401(K) Plan | | 19-cv-01866 |
| Bernina Pension Plan | | 19-cv-01865 |
| Bernina Pension Plan Trust | | 19-cv-10713 |
| Michelle Investments Pension Plan | | 19-cv-01906 |
| Omineca Pension Plan | | 19-cv-01894 |
| Omineca Trust | | 19-cv-01794<br>19-cv-01798<br>19-cv-01788<br>19-cv-01918<br>19-cv-01928<br>19-cv-01931 |

| | | 19-cv-01800 |
| | | 19-cv-01803 |
| | | 19-cv-01809 |
| | | 19-cv-01818 |
| | | 19-cv-01801 |
| | | 19-cv-01810 |
| | | 19-cv-01813 |
| Remece Investments LLC Pension Plan | | 19-cv-01911 |
| Starfish Capital Management LLC Roth 401(K) Plan | | 19-cv-01871 |
| Tarvos Pension Plan | | 19-cv-01930 |
| Voojo Productions LLC Roth 401(K) Plan | | 19-cv-01873 |
| Xiphias LLC Pension Plan | | 19-cv-01924 |
| Richard Markowitz | Alan E. Schoenfield Wilmer Cutler Pickering Hale and Dorr LLP 7 World Trade Center 250 Greenwich Street New York, NY 10007 Telephone: (212) 230-8800 alan.schoenfeld@wilmerhale.com | 19-cv-01867 19-cv-01895 19-cv-01869 19-cv-01868 19-cv-01898 19-cv-10713 19-cv-01896 19-cv-01783 19-cv-01922 19-cv-01926 19-cv-01929 19-cv-01812 19-cv-01870 19-cv-01792 19-cv-01806 19-cv-01808 19-cv-01815 |
| Jocelyn Markowitz | | 19-cv-01904 |
| Avanix Management LLC Roth 401(K) Plan | | 19-cv-01867 |
| Batavia Capital Pension Plan | | |

| | | |
|---|---|---|
| Calypso Investments Pension Plan | | 19-cv-01895<br>19-cv-01904 |
| Cavus Systems LLC Roth 401(K) Plan | | 19-cv-01869 |
| Hadron Industries LLC Roth 401(K) Plan | | 19-cv-01868 |
| RJM Capital Pension Plan | | 19-cv-01898 |
| RJM Capital Pension Plan Trust | | 19-cv-10713 |
| Routt Capital Pension Plan | | 19-cv-01896 |
| Routt Capital Trust | | 19-cv-01783<br>19-cv-01922<br>19-cv-01926<br>19-cv-01929<br>19-cv-01812<br>19-cv-01870<br>19-cv-01792<br>19-cv-01806<br>19-cv-01808<br>19-cv-01815 |
| Rob Klugman | Mark D. Allison<br>Caplin & Drysdale, Chartered<br>600 Lexington Avenue<br>21st Floor<br>New York, NY 10022<br>Tel: (212) 379-6000 | 18-cv-07828<br>18-cv-07827<br>18-cv-07824<br>18-cv-07829<br>18-cv-04434 |
| RAK Investment Trust | mallison@capdale.com<br>zziering@capdale.com | |
| Aerovane Logistics LLC Roth 401(K) Plan | | 18-cv-07828 |
| Edgepoint Capital LLC Roth 401(K) Plan | | 18-cv-07827 |
| Headsail Manufacturing LLC Roth 401(K) Plan | | 18-cv-07824 |

| | | |
|---|---|---|
| The Random Holdings 401(K) Plan | | 18-cv-07829 |
| The Stor Capital Consulting LLC 401(K) Plan | | 18-cv-04434 |
| Joseph Herman<br><br><br>David Zelman | Michelle A. Rice<br>Kaplan Rice LLP<br>142 West 57th Street<br>Suite 4A<br>New York N.Y. 10019<br>(212) 333-0227<br>mrice@kaplanrice.com | 1:19-cv-01785<br>1:19-cv-01781<br>1:19-cv-01791<br>1:19-cv-01794<br>1:19-cv-01918<br>1:19-cv-01783<br>1:19-cv-01798<br>1:19-cv-01788 |
| Edwin Miller | | 1:19-cv-01926<br>1:19-cv-01922<br>1:19-cv-01928<br>1:19-cv-01929<br>1:19-cv-01931 |
| Ronald Altbach | | 1:19-cv-01809<br>1:19-cv-01800<br>1:19-cv-01803<br>1:19-cv-01812<br>1:19-cv-01818 |
| Perry Lerner | | 1:19-cv-01806<br>1:19-cv-01870<br>1:19-cv-01792<br>1:19-cv-01808<br>1:19-cv-01815 |
| Robin Jones | | 1:19-cv-01801<br>1:19-cv-01810<br>1:19-cv-01813 |
| Ballast Ventures LLC Roth 401(K) Plan | | 1:19-cv-01781 |
| Bareroot Capital Investments LLC Roth 401(K) Plan | | 1:19-cv-01783 |

| | | |
|---|---|---|
| Albedo Management LLC Roth 401(K) Plan | | 1:19-cv-01785 |
| Dicot Technologies LLC Roth 401(K) Plan | | 1:19-cv-01788 |
| Fairlie Investments LLC Roth 401(K) Plan | | 1:19-cv-01791 |
| First Ascent Worldwide LLC Roth 401(K) Plan | | 1:19-cv-01792 |
| Battu Holdings LLC Roth 401(K) Plan | | 1:19-cv-01794 |
| Cantata Industries LLC Roth 401(K) Plan | | 1:19-cv-01798 |
| Crucible Ventures LLC Roth 401(K) Plan | | 1:19-cv-01800 |
| Monomer Industries LLC Roth 401(K) Plan | | 1:19-cv-01801 |
| Limelight Global Productions LLC Roth 401(K) Plan | | 1:19-cv-01803 |
| Loggerhead Services LLC Roth 401(K) Plan | | 1:19-cv-01806 |
| PAB Facilities Global LLC Roth 401(K) Plan | | 1:19-cv-01808 |
| Plumrose Industries LLC Roth 401(K) Plan | | 1:19-cv-01809 |
| Pinax Holdings LLC Roth 401(K) Plan | | 1:19-cv-01810 |
| Roadcraft Technologies LLC Roth 401(K) Plan | | 1:19-cv-01812 |
| Sternway Logistics LLC Roth 401(K) Plan | | 1:19-cv-01813 |

| | | |
|---|---|---|
| Trailing Edge Productions LLC Roth 401(K) Plan | | 1:19-cv-01815 |
| True Wind Investments LLC Roth 401(K) Plan | | 1:19-cv-01818 |
| Eclouge Industry LLC Roth 401(K) Plan | | 1:19-cv-01870 |
| Vanderlee Technologies Pension Plan | | 1:19-cv-01918 |
| Vanderlee Technologies Pension Plan Trust | | 1:19-cv-01918 |
| Cedar Hill Capital Investments LLC Roth 401(K) Plan | | 1:19-cv-01922 |
| Green Scale Management LLC Roth 401(K) Plan | | 1:19-cv-01926 |
| Fulcrum Productions LLC Roth 401(K) Plan | | 1:19-cv-01928 |
| Keystone Technologies LLC Roth 401(K) Plan | | 1:19-cv-01929 |
| Tumba Systems LLC Roth 401(K) Plan | | 1:19-cv-01931 |
| Michael Ben-Jacob | Thomas E. L. Dewey<br>Dewey Pegno & Kramarsky LLP<br>777 Third Avenue – 37th Floor<br>New York, New York 10017<br>Tel.: (212) 943-9000<br>Fax: (212) 943-4325<br>E-mail:  tdewey@dpklaw.com | 1:18-cv-04434<br>1:18-cv-07824<br>1:18-cv-07827<br>1:18-cv-07828<br>1:18-cv-07829<br>1:19-cv-01781<br>1:19-cv-01783<br>1:19-cv-01785<br>1:19-cv-01788<br>1:19-cv-01791<br>1:19-cv-01792<br>1:19-cv-01794<br>1:19-cv-01798<br>1:19-cv-01800<br>1:19-cv-01801 |

| | | 1:19-cv-01803 |
|---|---|---|
| | | 1:19-cv-01806 |
| | | 1:19-cv-01808 |
| | | 1:19-cv-01809 |
| | | 1:19-cv-01810 |
| | | 1:19-cv-01812 |
| | | 1:19-cv-01813 |
| | | 1:19-cv-01815 |
| | | 1:19-cv-01818 |
| | | 1:19-cv-01866 |
| | | 1:19-cv-01867 |
| | | 1:19-cv-01868 |
| | | 1:19-cv-01869 |
| | | 1:19-cv-01870 |
| | | 1:19-cv-01871 |
| | | 1:19-cv-01873 |
| | | 1:19-cv-01894 |
| | | 1:19-cv-01896 |
| | | 1:19-cv-01918 |
| | | 1:19-cv-01922 |
| | | 1:19-cv-01926 |
| | | 1:19-cv-01928 |
| | | 1:19-cv-01929 |
| | | 1:19-cv-01931 |
| Acer Investment Group LLC | John C. Blessington<br>K&L GATES LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA  02111<br>T: 617.261.3100<br>F: 617.261.3175<br>E:  john.blessington@klgates.com | 18-cv-09841<br>18-cv-09797<br>18-cv-09836<br>18-cv-09837<br>18-cv-09838<br>18-cv-09839<br>18-cv-09840<br>18-cv-10100<br>18-cv-05053 |
| American Investment Group of New York, L.P. Pension Plan | | 18-cv-09841 |
| DW Construction, Inc. Retirement Plan | | 18-cv-09797 |
| Kamco Investments Inc. Pension Plan | | 18-cv-09836 |
| Kamco LP Profit Sharing Pension Plan | | 18-cv-09837 |

| | | |
|---|---|---|
| Linden Associates Defined Benefit Plan | | 18-cv-09838 |
| Moira Associates LLC 401K Plan | | 18-cv-09839 |
| Newsong Fellowship Church 401K Plan | | 18-cv-10100 |
| Riverside Associates Defined Benefit Plan | | 18-cv-09840 |
| Robert Crema | | 18-cv-09841 |
| Stacey Kaminer | | 18-cv-09841<br>18-cv-09797<br>18-cv-09836<br>18-cv-09837<br>18-cv-09839 |
| Alexander Jamie Mitchell III | | 18-cv-10100 |
| David Schulman | | 18-cv-09840 |
| Joan Schulman | | 18-cv-09838 |
| Darren Wittwer | | 18-cv-09797 |
| John Doscas<br><br>David Freelove<br><br>Sterling Alpha LLC 401(K) Profit Sharing Plan<br><br>Federated Logistics LLC 401(k) Plan<br><br>Del Mar Asset Management & Retirement Plan | Bryan C. Skarlatos<br>Eric Smith<br>Kostelanetz & Fink, LLP<br>7 World Trade Center, 34th Floor<br>New York, New York 10007<br>(212) 808-8100 (Office)<br>(212) 808-8108 (Fax)<br>bskarlatos@kflaw.com<br>esmith@kflaw.com | 18-cv-4894<br>18-cv-4899<br>18-cv-8655<br>18-cv-5374 |