# EXHIBIT 14

RIGSREVISIONEN



# Beretning til Statsrevisorerne om SKATs forvaltning af og Skatteministeriets tilsyn med refusion af udbytteskat

Februar 2016



SKAT_MDL_001_0075124

# Indholdsfortegnelse

1. Introduktion og konklusion ............................................................................................. 1
   1.1. Formål og konklusion ............................................................................................. 1
   1.2. Baggrund ............................................................................................................... 3
   1.3. Revisionskriterier, metode og afgrænsning ........................................................... 5

2. Formodet svindel med refusion af udbytteskat ............................................................... 8
   2.1. SKATs opgørelse af den formodede svindel ......................................................... 8
   2.2. SKATs forvaltning af refusion af udbytteskat ....................................................... 10
   2.3. Skatteministeriets tilsyn ........................................................................................ 19

Bilag 1. Statsrevisorernes anmodning ............................................................................. 32
Bilag 2. Metodisk tilgang .................................................................................................. 33
Bilag 3. Ordliste ............................................................................................................... 35

Undersøgelsen er en statsrevisoranmodning, og Rigsrevisionen afgiver derfor beretningen til Statsrevisorerne i henhold til § 8, stk. 1, og § 17, stk. 2, i rigsrevisorloven, jf. lovbekendtgørelse nr. 101 af 19. januar 2012.

Beretningen vedrører finanslovens § 9. Skatteministeriet og § 38. Skatter og afgifter.

I undersøgelsesperioden har der været følgende ministre:

Kristian Jensen: august 2004 - februar 2010
Troels Lund Poulsen: februar 2010 - marts 2011
Peter Christensen: marts 2011 - oktober 2011
Thor Möger Pedersen: oktober 2011 - oktober 2012
Holger K. Nielsen: oktober 2012 - december 2013
Jonas Dahl: december 2013 - februar 2014
Morten Østergaard: februar 2014 - september 2014
Benny Engelbrecht: september 2014 - juni 2015
Karsten Lauritzen: juni 2015 -

Beretningen har i udkast været forelagt Skatteministeriet, hvis bemærkninger er afspejlet i beretningen.

# 1. Introduktion og konklusion

## 1.1. Formål og konklusion

1. Denne beretning handler om SKATs forvaltning af og Skatteministeriets tilsyn med refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015, som Statsrevisorerne i september 2015 anmodede Rigsrevisionen om at undersøge. Anmodningen er fremsat på baggrund af den formodede svindel med refusion af udbytteskat for 6,2 mia. kr., som SKAT anmeldte til Statsadvokaturen for Særlig Økonomisk og International Kriminalitet (SØIK) den 24. august 2015. SKAT har efterfølgende anmeldt formodet svindel for yderligere 2,9 mia. kr., og det er ifølge Skatteministeriet sandsynligt, at den igangværende gennemgang af området vil vise, at der har været yderligere svindel.

2. Formålet med undersøgelsen er at vurdere, om SKATs forvaltning af refusion af udbytteskat og Skatteministeriets tilsyn hermed har været tilfredsstillende. Rigsrevisionen har derfor bl.a. undersøgt:

- om SKAT har haft tilstrækkelige interne kontroller
- om Skatteministeriet har forholdt sig til de oplysninger, ministeriet fik gennem sit almindelige tilsyn, og om ministeriet har reageret på andre indikationer på problemer i forhold til refusion af udbytteskat.

Derudover har Rigsrevisionen undersøgt, om SKAT har opgjort det fulde omfang af den formodede svindel med refusion af udbytteskat.

> **KONKLUSION**
>
> Rigsrevisionen vurderer samlet, at SKATs forvaltning af og Skatteministeriets tilsyn med refusion af udbytteskat har været meget kritisabelt. SKAT har ført en helt utilstrækkelig kontrol med udbetalingerne af refusion af udbytteskat, og Skatteministeriets tilsyn med området har været særdeles mangelfuldt.
>
> SKAT har anmeldt formodet svindel for foreløbig 9,1 mia. kr. Skatteministeriet har dog oplyst, at det er sandsynligt, at SKATs igangværende gennemgang af de resterende udbetalinger på 5,1 mia. kr. i perioden, hvor den formodede svindel er foregået via blanketordningen, vil afdække yderligere formodet svindel.

*Refusion af udbytteskat*
*I undersøgelsesperioden har udenlandske aktionærer kunnet anmode om refusion af udbytteskat via 2 ordninger: blanketordningen og bankordningen.*

*Ved anmodning om refusion af udbytteskat via blanketordningen skal aktionæren indsende en udfyldt blanket til SKAT med anmodning om refusion af udbytteskat.*

*Bankordningen, som SKAT opsagde i september 2015, var en aftale mellem SKAT og 3 banker, der bestod i, at de 3 banker kunne anmode SKAT om refusion på vegne af udenlandske aktionærer.*

SKAT_MDL_001_0075127

Både SKAT og Skatteministeriet har i hvert fald siden 2010 været vidende om, at der var problemer med refusion af udbytteskat. På trods heraf kom der først opmærksomhed på den formodede svindel med refusion af udbytteskat, fordi SKAT modtog oplysninger herom udefra. Der er ikke noget i Rigsrevisionens undersøgelse, der peger på, at SKAT eller Skatteministeriet uden disse oplysninger ville have reageret på den markante stigning i refusionen af udbytteskat fra 0,68 mia. kr. for hele 2010 til 9,3 mia. kr. i de første godt 7 måneder af 2015, svarende til en stigning på ca. 1.300 %. Tværtimod var SKAT i gang med at oplære nye medarbejdere for bl.a. at kunne håndtere et stigende antal refusionsanmodninger, da SKAT modtog oplysninger udefra om den formodede svindel.

SKAT har i den periode, hvor den formodede svindel er foregået, refunderet udbytteskat for 14,2 mia. kr. via blanketordningen. Denne refusion er sket på et helt utilstrækkeligt grundlag, og SKAT har ikke kontrolleret helt grundlæggende oplysninger i anmodningerne, fx ejerskab til aktierne, og om ansøger har fået indeholdt udbytteskat.

SKAT har i samme periode refunderet udbytteskat for 5,4 mia. kr. via bankordningen, hvor SKAT ifølge sin egen vurdering uden lovhjemmel har uddelegeret kontrolbeføjelser og kontrolpligt til 3 banker. SKAT har i efteråret 2015 vurderet, at bankordningen ikke har været lovlig, og har derfor opsagt aftalen med de 3 banker ultimo september 2015. SKAT har, da bankordningen eksisterede, ikke kontrolleret, om de 3 banker har udført den uddelegerede myndighedsopgave. SKAT har oplyst, at refusionerne via bankordningen vil blive analyseret med henblik på at vurdere, om der er risiko for eventuel svindel og dermed behov for en nærmere kontrol af grundlaget for disse refusioner.

SKAT har udbetalt 3,2 mia. kr. i refusion af udbytteskat efter det tidspunkt, hvor SKAT modtog oplysninger udefra om den formodede svindel, og indtil udbetalingerne blev sat i bero. Skatteministeriet har oplyst, at SKAT på baggrund af de oplysninger, der fremkom hen over sommeren 2015, først den 6. august 2015 havde det nødvendige grundlag for at stoppe udbetalingerne. Rigsrevisionen kan konstatere, at SKAT, da de modtog oplysninger udefra om den formodede svindel, var vidende om, at antallet af anmodninger og det samlede refusionsbeløb var steget markant, og SKAT var samtidig vidende om, at de interne kontroller var mangelfulde. Rigsrevisionen finder, at SKAT – allerede da de modtog oplysninger udefra – burde have undersøgt området nærmere, inden der blev foretaget yderligere udbetalinger af refusion.

Skatteministeriet har i sit tilsyn reelt ikke forholdt sig til udviklingen i udbytteskat, herunder refusioner. Skatteministeriet har således ikke reageret på udsving i refusion af udbytteskat, som ministeriet flere gange er blevet gjort opmærksom på i forbindelse med de månedlige regnskabsgodkendelser fra SKAT, fx at refusionerne af udbytteskat var stigende, og at udbetalingerne i én måned i 2015 var steget med 200 % i forhold til samme måned året før. Skatteministeriet har i forbindelse med sine godkendelser af ministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg heller ikke forholdt sig til og reageret på fx den negative udvikling i nettoindtægterne fra udbytteskat. Hertil kommer, at Skatteministeriet ikke har reageret på flere indikationer på problemer med refusion af udbytteskat, som ministeriet har modtaget.

SKAT_MDL_001_0075128

> Sammenfattende må Rigsrevisionen konstatere, at Skatteministeriets tilsyn har været fragmenteret og reaktivt. Skatteministeriet har således ikke sammenholdt de oplysninger, som ministeriet fik som led i sit almindelige tilsyn, med de øvrige indikationer på problemer med refusion af udbytteskat, som ministeriet løbende modtog gennem årene. Havde Skatteministeriet ført et mere proaktivt tilsyn, herunder sammenholdt de oplysninger, som ministeriet fik på forskellig vis, ville det klart have peget på behovet for en nærmere undersøgelse af området. Rigsrevisionens undersøgelse viser, at helt simple analyser af udviklingen i refusion af udbytteskat ville have peget på problemer på området, som burde have givet anledning til at undersøge området nærmere.

## 1.2. Baggrund

3. Den 24. august 2015 anmeldte SKAT formodet svindel med refusion af udbytteskat for 6,2 mia. kr. til SØIK. SKAT har efterfølgende anmeldt yderligere formodet svindel for 2,9 mia. kr. Den formodede svindel med refusion af udbytteskat er således på nuværende tidspunkt opgjort til 9,1 mia. kr. og er ifølge SKAT foregået i perioden 1. januar 2012 - 5. august 2015. Den formodede svindel kan ifølge en undersøgelse fra Skatteministeriets Interne Revision (SIR) fra 2015 være foregået ved, at udenlandske formodede svindlere har fået refunderet udbytteskat ved at foregive at eje danske aktier, for hvilke der er indeholdt udbytteskat. Skatteministeren oplyste i forbindelse med anmeldelserne til SØIK, at sagen endnu ikke er fuldt afdækket, og at det derfor ikke kan udelukkes, at SKAT vil anmelde yderligere svindel. SKATs afdækning af den formodede svindel forventes afsluttet inden sommerferien 2016.

*SIR's undersøgelse af SKATs administration af udbytteskat og refusion af udbytteskat* fra september 2015 er en intern undersøgelse af årsagerne til den formodede svindel. Undersøgelsen blev bestilt af Skatteministeriet i forlængelse af SKATs 1. anmeldelse til SØIK om formodet svindel.

*SIR reviderer Skatteministeriets enheder efter aftale mellem Skatteministeriet og Rigsrevisionen i henhold til § 9 i rigsrevisorloven. SIR refererer til Skatteministeriets departementschef.*

*Dobbeltbeskatningsoverenskomst*

*Refusion af udbytteskat sker som udgangspunkt til aktionærer i lande, som Danmark har en dobbeltbeskatningsoverenskomst med. De respektive dobbeltbeskatningsoverenskomster fastsætter, hvor meget aktionæren skal betale i udbytteskat i henholdsvis Danmark og i hjemlandet. For aktionærer bosat i lande, der har en dobbeltbeskatningsoverenskomst med Danmark, betyder det, at den udenlandske modtager af dansk aktieudbytte kan anmode SKAT om at få refunderet den indeholdte udbytteskat helt eller delvist, afhængigt af hvad der er fastsat i dobbeltbeskatningsoverenskomsten.*

4. Figur 1 viser processen for refusion af udbytteskat.



Kilde: Rigsrevisionen på baggrund af SIR's undersøgelse fra 2015.

Det fremgår af figur 1, at når et dansk selskab udbetaler udbytte til sine aktionærer, indbetaler selskabet som udgangspunkt 27 % af udbyttet i udbytteskat til SKAT. En række lande har en dobbeltbeskatningsoverenskomst med Danmark, der betyder, at udenlandske aktionærer kan være berettiget til at få refunderet udbytteskatten helt eller delvist. Aktionærer fra lande med en dobbeltbeskatningsoverenskomst har i undersøgelsesperioden kunnet anmode SKAT om at få den for meget indbetalte udbytteskat refunderet via blanketordningen eller via bankordningen.

5. Det fremgår af SIR's undersøgelse fra 2015, at svindlen formodes at være foregået via blanketordningen, hvor formodede svindlere har foregivet at have modtaget aktieudbytte fra danske selskaber, hvor der er indeholdt udbytteskat. De formodede svindlere har således anmodet SKAT om at få refunderet udbytteskat for aktier, de aldrig har ejet, og har herved fået refunderet udbytteskat, de ikke har betalt.

## 1.3. Revisionskriterier, metode og afgrænsning

**Revisionskriterier**

6. Statsrevisorerne bad os om at undersøge 5 konkrete forhold, jf. bilag 1. Rigsrevisionen har i et notat til Statsrevisorerne i oktober 2015 beskrevet, hvordan vi ville tilrettelægge undersøgelsen og besvare anmodningen.

Formålet med undersøgelsen er at vurdere, om SKATs forvaltning af refusion af udbytteskat og Skatteministeriets tilsyn hermed har været tilfredsstillende.

7. Rigsrevisionen har undersøgt, om SKATs forvaltning af refusion af udbytteskat har været tilfredsstillende. Vi har i den forbindelse undersøgt, om SKATs interne kontroller, herunder datagrundlag og systemunderstøttelse vedrørende refusion af udbytteskat, har været tilstrækkelige til at kontrollere refusionsanmodninger fra udlandet. Vi har lagt til grund, at tilstrækkelig kontrol indebærer nedskrevne eller på anden måde fastsatte forretningsgange, efterprøvning af de oplysninger, som ligger til grund for udbetalingen, tilstrækkelig systemunderstøttelse, tydelig ansvarsfordeling, overvågning af området og opfølgning på kritiske revisionsrapporter og på udefrakommende oplysninger.

8. Rigsrevisionen har derudover undersøgt, om Skatteministeriet har ført et tilstrækkeligt tilsyn med SKATs forvaltning af refusion af udbytteskat. Vi har lagt til grund, at Skatteministeriet som led i sit almindelig tilsyn har det overordnede styrings- og tilsynsansvar for SKAT. Af "Ministerieinstruks for Skatteministeriet" (gældende fra januar 2013) fremgår bl.a. de opgaver, som Skatteministeriet varetager på regnskabsområdet som overordnet myndighed for bl.a. SKAT. Det fremgår, at Skatteministeriet som led i sit almindelige tilsyn bl.a. foretager en overvågning af skatte- og afgiftsindtægter. I den forbindelse fremgår det, at Skatteministeriet skal overvåge, om indtægterne er rimelige.

Derudover har vi lagt til grund, at et tilfredsstillende tilsyn omfatter, at Skatteministeriet reagerer på kritiske revisionsrapporter og forholder sig til øvrige informationer, der indikerer problemer eller risici på et givent område. Det fremgår af ministerieinstruksen, at SKATs forvaltning af udgifter og indtægter skal tilrettelægges ud fra hensyntagen til de konkrete forhold, dvs. væsentlighed og risiko samt størrelsen og arten af de forskellige typer indtægter og udgifter. Det fremgår endvidere, at Skatteministeriet som overordnet myndighed er ansvarlig for at sikre, at forvaltningen inden for Skatteministeriets koncern foretages på en forsvarlig måde. Hvis Skatteministeriet har kendskab til, at et område er risikofyldt, bør ministeriet således sikre, at der er de fornødne resurser og kompetencer til et effektivt tilsyn, indtil forholdene er rettet op. Endvidere har vi lagt til grund, at Skatteministeriet indhenter viden om SKATs forvaltning i et omfang, så ministeriet kan varetage sit overordnede styrings- og tilsynsansvar for SKAT.

Skatteministeriet har i sin koncernstyringsstrategi for 2014-2017 selv udpeget SKAT som en styrelse med behov for udvidet tilsyn og styring, bl.a. med begrundelse i, at der er mange identificerede risici, som kan få meget væsentlige konsekvenser, og samtidig en meget stor kompleksitet i opgaveløsningen. Det fremgår også af Rigsrevisionens beretning til Statsrevisorerne om Skatteministeriets økonomistyring, at Skatteministeriet – efter departementet blev genetableret i 2013 – udpegede SKAT som et område, hvor der på grund af store risici er behov for et udvidet tilsyn.

Skatteministeriet har anført, at Rigsrevisionen på den ene side lægger til grund, at ministeriet har det overordnede styrings- og tilsynsansvar for SKAT, og på den anden side reelt lægger til grund, at ministeriet bør udføre et særdeles detaljeret tilsyn med SKAT. Skatteministeriet er ikke enig i den sidste præmis. Skatteministeriet tilføjer, at ministeriets opgave er at udøve det tilsyn, der bl.a. sikrer en betryggende økonomisk og materiel styring inden for de politisk udstukne rammer, at der er et opdateret risikobillede for SKAT, og at der er etableret en intern styring mv., som sikrer, at der handles på de identificerede risici.

Rigsrevisionen er for så vidt enig i Skatteministeriets definition af tilsyn og opfatter ikke denne definition som værende i konflikt med undersøgelsens revisionskriterier og konklusioner. Rigsrevisionen lægger således ikke til grund, at Skatteministeriet skal føre et særdeles detaljeret tilsyn med alle SKATs enkeltområder, men at Skatteministeriet har pligt til at følge op i forhold til ethvert område i SKAT, som ministeriet bliver bekendt med er et problemområde. I forlængelse heraf har Rigsrevisionen derfor lagt til grund, at Skatteministeriet skal forholde sig til og sammenholde de oplysninger, som ministeriet får igennem sit almindelige tilsyn, med de eventuelt øvrige indikationer på problemer, som ministeriet modtager.

9. Skatteministeriet har oplyst, at departementet (jf. pkt. 8) har besluttet at føre et udvidet tilsyn med SKAT. Skatteministeriet forstår dog ikke dette tilsyn som et meget detaljeret tilsyn, men et tilsyn, hvor departementet agerer mere aktivt end i en "normalsituation" for at sikre, at der bliver gjort noget for at løse de strukturelle udfordringer, som fx ligger bag SKATs administration af refusion af udbytteskat.

Skatteministeriet har videre oplyst, at det er ministeriets opfattelse, at ministeriet i meget høj grad har påtaget sig rollen med at føre et udvidet tilsyn med SKAT, fx ved at gennemføre en turnusanalyse af afdelingen Betaling og Regnskab. At det tager tid at implementere en turnusanalyse, fører ifølge Skatteministeriet ikke naturligt til, at ministeriet også skal foretage en meget detaljeret normering af de aktuelle arbejdsprocesser. Rigsrevisionen finder det positivt, at Skatteministeriet har gennemført en turnusanalyse. Rigsrevisionen konstaterer samtidig, at et sådant initiativ har et langsigtet perspektiv, men at der i Skatteministeriets tilsyn også ligger en forpligtelse til at forholde sig til og agere på oplysninger og indikationer, som peger på problemer, der bør løses på kort sigt.

10. Vi har undersøgt, om SKAT har opgjort det fulde omfang af den formodede svindel med refusion af udbytteskat i perioden 1. januar 2012 - 5. august 2015, hvor SKAT formoder, at svindlen har fundet sted.

11. Skatteministeriet har i sit høringssvar anført, at Rigsrevisionen synes at vurdere sagen med afsæt i den viden, som er til stede i dag, og har anført, at det også ses afspejlet i, at Rigsrevisionen i løbet af undersøgelsesperioden har modtaget de samme revisionsrapporter fra SIR som departementet, uden at der har været advaret kraftigere om risikoen end sket.

Rigsrevisionen skal hertil bemærke, at Skatteministeriet har det overordnede styrings- og tilsynsansvar for SKAT, hvilket bl.a. indebærer, at ministeriet skal følge med i og reagere på kritiske revisionsrapporter, der indikerer problemer eller risici på området, jf. pkt. 8.

Rigsrevisionens revisionsberetning fra 2013 omhandler hele Skatteministeriets regnskab og er baseret på en vurdering af risiko og væsentlighed for hele regnskabet. Rigsrevisionen har i revisionsberetningen henvist specifikt til SIR's revisionsrapport om udbytteskat fra 2013. Rigsrevisionen baserer sig på SIR's arbejde og har via SIR gentagne gange fulgt op på spørgsmål om manglende kontroller på området for udbytteskat.

**Metode**
12. Undersøgelsen er bl.a. baseret på en gennemgang af SIR's undersøgelse fra september 2015 af SKATs administration af udbytteskat og refusion af udbytteskat. Udvalgte resultater fra undersøgelsen er inddraget i beretningen. Herudover indgår Rigsrevisionens løbende årsrevision og it-revision af området for udbytteskat for regnskabsåret 2015. Derudover indgår materiale og revisionsrapporter fra SIR.

Desuden er undersøgelsen baseret på en gennemgang af skriftligt materiale fra SKAT og Skatteministeriet, bl.a. redegørelser, mødereferater, Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg og SKATs månedlige regnskabsgodkendelser. Endelig har vi holdt møder med SKAT, Skatteministeriet og SØIK.

I perioden 2010-2012 udgjorde Skatteministeriets departement og SKAT en enhedsorganisation. Skatteministeriet bestod af koncerncentret og SKAT. Departementschefen var således øverste administrative leder af koncerncentret, som varetog de centrale drifts-, udviklings- og styringsopgaver for enhedsorganisationen. Den 1. januar 2013 blev SKAT udskilt i en selvstændig styrelse under departementet. Derfor behandler Rigsrevisionen i undersøgelsen udelukkende SKATs opfølgning på SIR's revisionsrapport fra 2013, mens SIR's revisionsrapport fra 2010 alene er behandlet i afsnit 2.3 om Skatteministeriets tilsyn.

13. I beretningen indgår en række analyser af udviklingen på området for udbytteskat i perioden 1. januar 2010 - 5. august 2015. Skatteministeriet har haft indvendinger mod Rigsrevisionens periodeafgrænsning og metode for fremskrivning. Disse indvendinger og Rigsrevisionens bemærkninger hertil fremgår af bilag 2.

Revisionen er udført i overensstemmelse med god offentlig revisionsskik, jf. boks 1.

> **BOKS 1. GOD OFFENTLIG REVISIONSSKIK**
>
> God offentlig revisionsskik er baseret på de grundlæggende revisionsprincipper i rigsrevisionernes internationale standarder (ISSAI 100-999).

**Enhedsorganisation**
*Det fremgår af bekendtgørelse nr. 1438 af 14. december 2009, § 1: "De opgaver, der ved skatteforvaltningslovens § 1 er tillagt told- og skatteforvaltningen, varetages af Skatteministeriet. Ved denne opgavevaretagelse kan der fortsat gøres brug af betegnelsen SKAT".*

**Afgrænsning**

14. Undersøgelsen vedrører på baggrund af Statsrevisorernes anmodning perioden 1. januar 2010 - 5. august 2015. SKAT satte refusion af udbytteskat i bero den 6. august 2015. Svindlen, som formodes at være foregået i perioden 1. januar 2012 - 5. august 2015, er opgjort pr. 13. november 2015, hvor SKAT indgav den 2. anmeldelse til SØIK om formodet svindel for yderligere 2,9 mia. kr.

15. Beretningen har været i høring hos SØIK, og en række oplysninger er på SØIK's foranledning udeladt af beretningen af hensyn til efterforskningen. Rigsrevisionen har vurderet, at de udeladte oplysninger ikke har haft betydning for undersøgelsens hovedkonklusioner. Rigsrevisionen har af hensyn til SØIK's efterforskning således ikke kunnet formidle, hvilke oplysninger SKAT har modtaget udefra, og hvordan SKAT og Skatteministeriet har behandlet disse oplysninger om formodet svindel. Rigsrevisionen har derfor heller ikke kunnet formidle, hvordan SKAT har opgjort den formodede svindel på indtil videre 9,1 mia. kr. Statsrevisorernes anmodning herom har derfor ikke fuldt ud kunnet besvares.

16. Undersøgelsen handler om SKATs forvaltning af og Skatteministeriets tilsyn med refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015. Undersøgelsen omfatter ikke VP-ordningen, som er en nettoafregningsmodel for udbytteskat, hvor den endelige udbytteprocent indeholdes, dvs. at der ikke efterfølgende kan anmodes om refusion af udbytteskat. Undersøgelsen indeholder således heller ikke en analyse af SKATs kontrol med VP-ordningen. SKAT har vurderet, at VP-ordningen ikke har haft den fornødne hjemmel i lovgivningen, og har derfor opsagt ordningen i november 2015.

17. Statsrevisorernes anmodning og angivelse af, hvor i beretningen punkterne er behandlet, fremgår af bilag 1. I bilag 2 redegør vi for de metoder, der er anvendt i undersøgelsen. Bilag 3 indeholder en ordliste, der forklarer udvalgte ord og begreber.

# 2. Formodet svindel med refusion af udbytteskat

18. Rigsrevisionen har undersøgt SKATs opgørelse af den formodede svindel med refusion af udbytteskat. Derudover har vi undersøgt SKATs forvaltning af refusion af udbytteskat, herunder SKATs kontrol i forbindelse med udbetalinger af refusion. Endelig har vi undersøgt Skatteministeriets tilsyn med området, herunder om ministeriet har forholdt sig til de oplysninger, som ministeriet har fået gennem sit almindelige tilsyn, og om ministeriet har reageret på indikationer på problemer med refusion af udbytteskat.

19. I undersøgelsesperioden har udenlandske aktionærer kunnet anmode om refusion af udbytteskat via 2 ordninger: blanketordningen og bankordningen.

Blanketordningen består i, at udenlandske aktionærer kan indsende en udfyldt blanket til SKAT med anmodning om refusion af udbytteskat. Blanketten hentes på SKATs hjemmeside. Aktionæren udfylder blanketten med oplysninger om det beløb, som søges refunderet, samt aktionærens bankoplysninger og adresse. Derudover skal aktionæren vedlægge bilag med oplysninger om ejerskab af aktierne og udbetalt udbytte samt en attest fra skattemyndigheden i sit hjemland, der bekræfter, at aktionæren er skattepligtig i det pågældende land.

Bankordningen, som SKAT opsagde i september 2015, bestod i en aftale indgået mellem SKAT og 3 banker, hvor disse 3 banker kunne anmode om refusion af udbytteskat på vegne af udenlandske aktionærer. En udenlandsk bank med danske aktier i depot sendte en samlet refusionsanmodning for alle de danske aktier til én af de 3 banker. Herefter sendte dén af de 3 banker, som anmodningen gik gennem, en samlet refusionsanmodning til SKAT i form af et regneark, som indeholdt en opgørelse af det samlede beløb, der blev anmodet om refusion for. SKAT refunderede udbytteskat til de 3 banker på baggrund af sådanne anmodninger, og de 3 banker videresendte refusionen til de udenlandske banker.

## 2.1. SKATs opgørelse af den formodede svindel

20. Rigsrevisionen har undersøgt, om SKAT har opgjort det fulde omfang af den formodede svindel med refusion af udbytteskat i perioden 1. januar 2012 - 5. august 2015, hvor SKAT formoder, at svindlen har fundet sted.

21. SKAT blev opmærksom på den formodede svindel efter at have modtaget oplysninger herom udefra og satte på den baggrund udbetalingerne af refusion af udbytteskat i bero den 6. august 2015.

SKAT oplyste i en pressemeddelelse i forbindelse med den 1. anmeldelse til SØIK den 24. august 2015, at SKAT havde modtaget i alt 2.120 anmodninger om refusion af udbytteskat, der formodes at kunne relateres til svindlen. Anmodningerne er modtaget i perioden 1. januar 2012 - 5. august 2015 og beløber sig til i alt 6,2 mia. kr.

SKAT har efterfølgende i november 2015 anmeldt yderligere formodet svindel for 2,9 mia. kr. til SØIK. Den 2. anmeldelse til SØIK er omfattet af fortrolighed af hensyn til SØIK's efterforskning.

22. Figur 2 giver et overblik over refusion af udbytteskat via blanketordningen og bankordningen.



Det fremgår af figur 2, at der i perioden 1. januar 2012 - 5. august 2015 blev udbetalt refusion af udbytteskat for i alt 19,6 mia. kr., hvoraf 14,2 mia. kr. blev udbetalt via blanketordningen og 5,4 mia. kr. via bankordningen.

SKAT har opgjort den formodede svindel via blanketordningen til foreløbig 9,1 mia. kr., dvs. ca. ⅔ af det refusionsbeløb, der samlet blev udbetalt i perioden via blanketordningen. SKAT er i gang med at gennemgå de resterende 5,1 mia. kr., som blev udbetalt via blanketordningen, for yderligere formodet svindel. Skatteministeriet har oplyst, at gennemgangen forventes at afdække yderligere formodet svindel. Gennemgangen forventes afsluttet inden sommerferien 2016.

Skatteministeriet har oplyst, at der i foråret 2016 igangsættes et analysearbejde af udbetalingerne af refusion via bankordningen. Analysearbejdet skal afdække, om der i refusionerne via bankordningen er spor til den formodede svindel via blanketordningen, og om der er risiko for andre typer uretmæssige refusioner. SKAT har oplyst, at der vil blive foretaget en nærmere kontrol af grundlaget for disse refusioner, hvis analysen afdækker sådanne forhold. Skatteministeriet har videre oplyst, at det ikke kan udelukkes, at der har været svindel via bankordningen.

**Resultater**

23. Rigsrevisionens undersøgelse viser, at SKAT indtil videre har anmeldt formodet svindel for 9,1 mia. kr. ud af de 14,2 mia. kr., som blev udbetalt via blanketordningen i perioden 1. januar 2012 - 5. august 2015. SKAT er i gang med at gennemgå de resterende 5,1 mia. kr., som blev udbetalt via blanketordningen. Skatteministeriet har oplyst, at det er sandsynligt, at gennemgangen vil afdække yderligere formodet svindel ud over de 9,1 mia. kr., der indtil videre er anmeldt til SØIK.

Skatteministeriet vil primo 2016 igangsætte et analysearbejde af udbetalingerne af refusion via bankordningen, som skal afdække, om der er risiko for uretmæssig refusion. Hvis analysen afdækker sådanne forhold, vil SKAT foretage en nærmere kontrol af grundlaget for disse refusioner. Skatteministeriet har oplyst, at det ikke kan udelukkes, at der har været svindel via bankordningen.

### 2.2. SKATs forvaltning af refusion af udbytteskat

24. Rigsrevisionen har undersøgt, om SKATs forvaltning af refusion af udbytteskat har været tilfredsstillende. Vi har i den forbindelse undersøgt SKATs interne kontroller. Vi har lagt til grund, at tilstrækkelig kontrol indebærer nedskrevne eller på anden måde fastsatte forretningsgange, efterprøvning af de oplysninger, som ligger til grund for udbetalingen, tilstrækkelig systemunderstøttelse, tydelig ansvarsfordeling, overvågning af området og opfølgning på kritiske revisionsrapporter og andre indikationer på problemer.

25. SKAT og Skatteministeriet har efterfølgende oplyst, at de finder det meget alvorligt og dybt beklageligt, at der har kunnet foregå svindel i det påviste omfang. Skatteministeriet tilføjer, at med den viden om området og den hertil forbundne risiko, som SKAT og Skatteministeriet har i dag, må det således konstateres, at kontrollen forbundet med refusion af udbytteskat skulle have været tilrettelagt anderledes. Skatteministeriet tilføjer, at det, at svindel kan foregå, bl.a. er et resultat af den risikobaserede tilgang, som er valgt for den danske skatte- og afgiftsmodel, hvor udgangspunktet er, at der er tillid til, at borgere og virksomheder generelt betaler den rette skat. Rigsrevisionen skal i den forbindelse henvise til en vismandsrapport fra 2011 (Dansk Økonomi, foråret 2011), hvoraf det fremgår, at det ikke er manglende lyst til snyd, men primært manglende muligheder for snyd, som holder niveauet af skattesnyd i Danmark lavt.

SKAT_MDL_001_0075136

26. I forlængelse af SKATs 1. anmeldelse til SØIK om formodet svindel iværksatte Skatteministeriet en intern undersøgelse af årsagerne til den formodede svindel. Undersøgelsen blev foretaget af SIR. Vi har i dette afsnit inddraget resultaterne fra den interne undersøgelse. Boks 2 viser uddrag af undersøgelsen.

---

**BOKS 2. ÅRSAGER TIL KONTROLSVIGTET IFØLGE SIR'S UNDERSØGELSE**

**Interne kontroller**
- SKATs rutiner for godkendelse af refusionsanmodninger og efterfølgende udbetaling har omfattet en vurdering af, om refusionsanmodningerne har været bilagt påkrævet dokumentation, og en efterregning af refusionsbeløbet for at efterprøve, om beløbet er opgjort korrekt i henhold til den konkrete dobbeltbeskatningsoverenskomst.
- SKAT har i mindre omfang vurderet udsving i refusionsanmodningernes størrelse samt identifikation af refusionsanmodninger fremsendt af nye ukendte mellemmænd.
- SKAT har i begrænset omfang efterprøvet, om der foreligger reelle aktionærforhold bag refusionsanmodninger, samt om en refusionsanmodning kan henføres til en forudgående indeholdelse af udbytteskat.
- SKATs opfølgning på regnskabsdata i forbindelse med de løbende regnskabsgodkendelser har været mangelfuld. Perioderegnskaberne, der omfatter udbytteskat og refusion heraf, er godkendt uden forbehold. SIR vurderer, at den løbende regnskabsgodkendelse ikke er funderet i en systematisk regnskabsanalytisk efterprøvning af regnskabstallene.

**Systemunderstøttelse**
- SKATs it-systemer indeholder ikke oplysninger om ejerskab for aktier, der er placeret i omnibusdepoter.
- Registreringer i it-systemerne danner et utilstrækkeligt datagrundlag for at udføre en effektiv grundlagskontrol i forbindelse med anmodninger om refusion af udbytteskat.

**Ansvarsfordeling**
- Processen for udbytteskat har været fordelt mellem 4 direktørområder i SKAT.
- Der har ikke været et samlet organisatorisk forankret procesansvar, og det har medført væsentligt øget risiko for utilstrækkelig overvågning og vurdering af området, herunder en løbende vurdering af kontrollerne i arbejdsgangene.

SIR konkluderer endvidere:

- At SKAT ved en lovændring fra 2009, som udmøntes i 2 bekendtgørelser, der har virkning fra 2012 (unoterede aktier) og 2013 (unoterede aktier), fik mulighed for at harmonisere fristerne for virksomhedernes udlodning af udbytte og indberetning af udbyttemodtagere. Lovændringen gav bl.a. SKAT mulighed for at sammenholde refusionsanmodningen med modtaget udbytte og indeholdt udbytteskat. SKAT har endnu ikke implementeret de afstemningsrutiner for børsnoterede aktier, som der blev givet mulighed for i 2013.
- At SKAT ikke har fulgt op på revisionsrapporter og implementeret anbefalinger fra SIR med henblik på bl.a. at sikre, at der ikke sker uretmæssig refusion af udbytteskat.

Kilde: SIR's undersøgelse fra 2015.

---

*Omnibusdepot er et samledepot, som typisk er ejet af en udenlandsk bank, hvori danske aktier, der er ejet af udenlandske aktionærer, kan være placeret. I disse tilfælde indeholder SKATs it-systemer ikke oplysninger om den enkelte ejer af aktierne, men kun oplysninger til identifikation af ejeren af omnibusdepotet.*

### Kontrol af anmodning om refusion via blanketordningen

27. De 9,1 mia. kr., som den formodede svindel indtil videre er opgjort til, blev udbetalt via den såkaldte blanketordning, hvor ansøger ved anmodning om refusion indsender en udfyldt blanket til SKAT vedlagt bilag med dokumentation.

28. SKAT har ifølge SIR's undersøgelse alene kontrolleret, om anmodninger via blanketordningen har været vedlagt påkrævede bilag med dokumentation, og om det ansøgte refusionsbeløb er opgjort korrekt i henhold til den gældende dobbeltbeskatningsoverenskomst. SIR's undersøgelse viser, at SKAT i begrænset omfang har efterprøvet, om udbyttemodtageren har ejet aktierne ved udlodningen, og om der forud for udbetalingen af refusion er indeholdt udbytteskat. SIR's undersøgelse viser således, at SKAT har udbetalt det ansøgte refusionsbeløb, hvis ansøgningen var udfyldt, og der var vedlagt den krævede dokumentation.

29. Rigsrevisionens undersøgelse viser, at SKAT i forbindelse med en ansøgning om refusion via blanketordningen har modtaget en udfyldt blanket, hvortil der har været vedhæftet en meget forskelligartet dokumentation for, at ansøger har krav på refusion. Dokumentationen for ansøgers krav har haft forskellig form. Fx har dokumentationen for ejerskab ikke i alle tilfælde været en depotoversigt, men har i stedet været udfærdiget af ansøger selv. Det fremgår ikke af hjælpeteksten på blanketten, hvilken form for dokumentation SKAT anmoder om. SKAT har endvidere ikke udarbejdet en vejledning til sagsbehandleren om, hvilken form dokumentationen bør have.

Ved gennemgangen af SKATs forretningsgange har Rigsrevisionen konstateret, at SKAT i forbindelse med behandling af refusionsanmodninger via blanketordningen mangler væsentlige nøglekontroller. Et eksempel på en manglende kontrol er, at SKAT ikke har verificeret, om den modtagne blanket er stemplet af en kompetent autoritet, så det kan verificeres, at ansøger er skattepligtig i det pågældende land og dermed omfattet af dobbeltbeskatningsoverenskomsten. SKAT kontrollerer heller ikke ejerforhold for aktier, og om de pågældende selskaber har udbetalt udbytte til ansøgeren.

Boks 3 opsummerer, hvad SKAT har foretaget sig i forbindelse med anmodninger om refusion af udbytteskat via blanketordningen.

---

**BOKS 3. SKATS BEHANDLING AF REFUSIONSANMODNINGER VIA BLANKETORDNINGEN**

SKAT har efterset følgende i forbindelse med modtagelse af en anmodninger om refusion af udbytteskat:

- om de påkrævede bilag er vedlagt
- om der er stempel fra en udenlandsk skattemyndighed
- om der foreligger en dobbeltbeskatningsoverenskomst med ansøgers hjemland, og om det ansøgte beløb er opgjort korrekt i henhold til denne.

---

30. Boks 4 viser eksempler på oplysninger, som SKAT ikke har kontrolleret, men som Rigsrevisionen vurderer ville have været relevante at undersøge i forbindelse med udbetalingen af refusion via blanketordningen.

---

**BOKS 4. EKSEMPLER PÅ OPLYSNINGER, SOM SKAT IKKE HAR KONTROLLERET I FORBINDELSE MED UDBETALING AF REFUSION**

- om selskabet har udbetalt udbytte til den pågældende ansøger
- om ansøgeren har fået indeholdt udbytteskat
- ægtheden af bilagene vedlagt ansøgningen, herunder oplysninger om ejerskab af aktier
- ægtheden af stempel fra udenlandsk skattemyndighed.

---

31. Rigsrevisionen konstaterer, at SKAT har udbetalt refusion af udbytteskat uden at kontrollere gyldigheden af de oplysninger, som SKAT har modtaget. SKAT har ikke fastsatte og nedskrevne forretningsgange for kontrol med refusion af udbytteskat. Rigsrevisionen finder, at et fravær af sådanne forretningsgange øger risikoen for en mangelfuld forvaltning.

### Kontrol af anmodning om refusion via bankordningen

32. Ifølge SIR's undersøgelse har SKAT i bankordningen uddelegeret sine kontrolopgaver til 3 banker. SKAT har været afhængig af, at de 3 banker har etableret effektive kontroller på området. SIR vurderer, at SKAT ikke har fulgt op på, om disse kontroller var effektive. SIR's undersøgelse viser endvidere, at SKAT ikke overførte oplysninger fra refusionsanmodningerne via bankordningen til det interne it-system, og at det dermed ikke var muligt for SKAT at foretage en sammenholdelse med eventuelle udbyttemodtagere, som selskaberne havde indberettet til SKAT. SIR konkluderer, at det ikke kan udelukkes, at udbyttemodtageren, som fik refusion via bankordningen, også søgte om refusion via blanketordningen.

33. Rigsrevisionens undersøgelse viser ligeledes, at SKAT ikke foretog indholdsmæssig kontrol af refusionsanmodninger, som SKAT modtog fra de 3 banker i bankordningen, ligesom SKAT heller ikke kontrollerede, om der var udloddet udbytte for de aktier, der blev søgt om refusion på baggrund af.

De 3 banker skulle ifølge aftalen med SKAT alene kontrollere, at der var afregnet udbytte til den udenlandske bank, og at udbytteskatten var indeholdt. SKAT havde ifølge aftalen ikke stillet krav om, at de 3 banker i bankordningen sammen med refusionsanmodningerne fra udenlandske banker skulle modtage dokumentation for aktiernes ejerforhold eller for, at aktionæren var skattepligtig i det pågældende land.

SKAT kontrollerede ikke, om de 3 banker i bankordningen udførte den aftalte kontrol. SKAT udbetalte refusionen alene på baggrund af de samlede opgørelser, som bankerne indsendte. De 3 banker videresendte refusionen til de udenlandske banker, der efterfølgende foretog den endelige afregning til aktionærerne.

SKAT førte heller ikke kontrol med, om ansøgere, som fik refusion via bankordningen, også søgte om refusion via blanketordningen, dvs. om den indeholdte udbytteskat uretmæssigt blev refunderet flere gange.

34. Rigsrevisionen konstaterer, at SKAT ved refusion af udbytteskat via bankordningen ikke har været vidende om, hvorvidt den udenlandske bank foretager kontrol af ejerforholdet for de aktier, der søges om refusion på baggrund af, ligesom SKAT heller ikke har været vidende om, hvorvidt beløbet, der ønskedes refunderet, var opgjort efter den korrekte dobbeltbeskatningsoverenskomst.

35. Skatteministeriet har oplyst, at SKAT har vurderet, at bankordningen ikke kan anses for at udgøre en fornøden retlig ramme for anmodning om refusion af udbytteskat, og har derfor opsagt aftalerne med de 3 banker ultimo september 2015. SKATs vurdering af ordningen er, at der ikke foreligger et gyldigt repræsentationsforhold (banken optræder på vegne af udbyttemodtagerne), og at SKAT ikke uden lovhjemmel kan uddelegere sine kontrolbeføjelser og sin kontrolpligt. De aktionærer, der har benyttet sig at bankordningen, er nu henvist til at bruge blanketordningen.

SKAT_MDL_001_0075139

### Systemunderstøttelse af kontrollen

36. SIR's undersøgelse viser, at SKATs it-understøttelse af udbytteområdet er utilstrækkelig til at gennemføre en effektiv grundlagskontrol med baggrund i de registrerede data. En grundlagskontrol omfatter kontrol af, om der ligger et ægte aktionærforhold til grund for anmodningen om refusion af udbytteskat, og om udbytteskatten er indeholdt.

37. Rigsrevisionens undersøgelse viser, at SKATs it-system til behandling af udbytteskat anvender obligatoriske felter, som skal udfyldes, fx navn, adresse, udbytte og vedtagelsesdato (for udbytteudlodning). Bortset fra krav om, at feltet "udbytte" skal indeholde tal, og at datofelterne skal opfylde et bestemt datoformat, har SKAT ikke fastsat krav til indholdet i felterne. Dette medfører risiko for en uensartet og ufuldstændig registrering af refusion af udbytteskat til udenlandske udbyttemodtagere, hvilket svækker muligheden for kontrol af refusionsanmodninger.

38. SKATs it-system til behandling af udbytteskat indeholder en kontrolfunktion, der orienterer sagsbehandleren, hvis der for det enkelte udloddende selskab anmodes om refusion af et større beløb end det, der i alt er indbetalt i udbytteskat. Rigsrevisionens undersøgelse viser, at kontrolfunktionen har været sat ud af drift for nogle selskaber fra 2013 og frem til juli 2015. I denne periode har SKAT således ikke kontrolleret, om der rent faktisk har været "dækning" for den refunderede udbytteskat for disse selskaber. Ifølge SKAT er der ikke udført kompenserende kontroller af refusionerne i denne periode, hvor kontrollen var ude af drift. SIR's undersøgelse viser eksempler på, at SKAT for nogle selskabers vedkommende har refunderet mere udbytteskat, end selskabet har indbetalt. I 2014 blev der fx refunderet 111 % af den indbetalte udbytteskat for et enkelt selskab.

39. Det er Rigsrevisionens vurdering, at SKATs it-understøttelse af kontrollen med refusion af udbytteskat har været helt utilstrækkelig. Dette har bl.a. betydet, at der har manglet kontrol af inddata, ligesom der er eksempler på, at der er refunderet mere udbytteskat, end selskabet samlet har indbetalt i udbytteskat.

### Ansvarsfordelingen

40. SIR's undersøgelse viser, at der er 4 direktørområder, som har været involveret i administrationen af udbytteskat og refusionen heraf, hvilket har betydet, at der ikke har været et samlet organisatorisk forankret procesansvar. Dette har ifølge SIR været medvirkende til, at der ikke har været en tilstrækkelig overvågning af området, og at der heller ikke har været en vurdering af kontrollerne med refusion af udbytteskat.

41. Rigsrevisionens løbende årsrevision for regnskabsåret 2015 viser også, at SKAT heller ikke i 2015 har sikret en klar og entydig ansvars- og opgavefordeling mellem forretningsområderne og de underliggende processer. SKAT har heller ikke nedskrevne eller på anden måde fastsatte forretningsgange og interne kontroller vedrørende den samlede proces for udbytteskat.

42. Rigsrevisionens undersøgelse viser desuden, at SKATs direktion for 2013 og 2014 har modtaget resultatløn for sine ansvarsområder, mens enkelte medarbejdere, der har arbejdet med refusion af udbytteskat, har modtaget engangsvederlag. Begrundelserne for resultatløn og engangsvederlag er dog af mere generel karakter og er ikke begrundet med ekspedition af et stort antal refusionsanmodninger.

### Overvågning

43. Rigsrevisionens undersøgelse viser, at SKAT ikke har foretaget en grundlæggende overvågning som led i kontrollen med refusion af udbytteskat. Rigsrevisionen finder, at en helt grundlæggende, simpel overvågning ville have peget på behovet for en nærmere gennemgang af området. Figur 3-6 viser udviklingen i refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015.



Kilde: Rigsrevisionen på baggrund af SIR's undersøgelse fra 2015 og oplysninger fra Skatteministeriet. Fremskrivningen i figur 5 er Rigsrevisionens egen beregning.

Det fremgår af figur 3, at den samlede refusion af udbytteskat (både via bankordningen og blanketordningen) i perioden er steget fra 0,68 mia. kr. til 9,3 mia. kr., hvilket svarer til en stigning på ca. 1.300 %, mens indtægterne fra udbytteskat er steget fra 6,4 mia. kr. til 19 mia. kr. i samme periode, hvilket svarer til en stigning på ca. 200 %.