# EXHIBIT 14

Det fremgår af figur 4, at refusionsprocenten, som er forholdet mellem indtægter fra udbytteskat og refusion af udbytteskat, steg markant i perioden 1. januar 2010 - 5. august 2015. Refusionsprocenten er således steget fra ca. 11 % i 2010 til ca. 49 % i perioden. Refusionsprocenten omfatter den totale refusion af udbytteskat, dvs. både bankordningen og blanketordningen. Det fremgår endvidere, at refusionsprocenten særligt fra 2013 til 2014 steg markant fra ca. 24 % til ca. 46 %.

Det fremgår af figur 5, at antallet af anmodninger om refusion af udbytteskat via blanketordningen steg fra 6.019 i 2010 til 16.374 i 2014. I 2015 er der alene i perioden 1. januar 2010 - 5. august 2015 modtaget 12.041 anmodninger. Den stiplede linje er en fremskrivning af udviklingen for hele 2015 på baggrund af det gennemsnitlige antal dagligt modtagne ansøgninger fra 1. januar til 5. august 2015 for at illustrere, hvordan udviklingen i antal ansøgninger via blanketordningen kunne være fortsat, hvis SKAT ikke havde modtaget oplysninger udefra om formodet svindel og reageret ved at sætte udbetalingerne i bero.

Det fremgår af figur 6, at det gennemsnitlige beløb, som aktionærerne anmodede om at få refunderet via blanketordningen, er steget markant fra 37.113 kr. i 2010 til 681.007 kr. i 2015. Dette svarer til en stigning på ca. 1.700 %. Rigsrevisionen skal hertil tilføje, at SKATs 1. anmeldelse til SØIK omhandler 2.120 refusionsudbetalinger for i alt 6,2 mia. kr., jf. afsnit 2.1. Dette svarer til, at der for disse anmodninger er udbetalt gennemsnitligt knap 3 mio. kr. pr. anmodning, og disse anmodninger har således ligget på et markant højere beløb end det gennemsnitlige ansøgte beløb for alle anmodninger.

44. Rigsrevisionen konstaterer ud fra figur 3-6, at helt simple analyser af refusion af udbytteskat – på baggrund af de data, som SKAT allerede er i besiddelse af – klart peger på på behovet for en grundig gennemgang af udviklingen i refusion af udbytteskat og dens årsager. Rigsrevisionen kan imidlertid konstatere, at end ikke den store stigning i antallet af anmodninger i undersøgelsesperioden gav anledning til, at SKAT undersøgte udviklingen i refusion af udbytteskat nærmere. SKAT har således i juni 2015 oplyst til SIR, at SKAT var i gang med at oplære nye medarbejdere for bl.a. at kunne håndtere det stigende antal anmodninger om refusion af udbytteskat.

Skatteministeriet har hertil anført, at Rigsrevisionen fremhæver det som noget negativt, at SKAT oplærer nye medarbejdere. Skatteministeriet tilføjer, at det objektivt set kan fremhæves som, at SKAT resursetilpasser på grund af forøget aktivitetsniveau vedrørende refusionsanmodninger. Dertil kommer, at svigomfanget antalsmæssigt kun udgør en meget lille andel af de samlede antal anmodninger. Rigsrevisionen skal hertil bemærke, at Rigsrevisionen ikke isoleret set fremhæver det som negativt, at SKAT oplærer nye medarbejdere. Dog finder Rigsrevisionen, at den store stigning i antallet af ansøgninger sammenholdt med den markante stigning i den samlede refusion burde have givet anledning til, at SKAT undersøgte området nærmere. Rigsrevisionen konstaterer, at SKAT ikke foretog en sådan undersøgelse, men at SKAT oplærte nye medarbejdere for at kunne håndtere det stigende antal anmodninger uden at reflektere over de bagvedliggende årsager.

**SKATs opfølgning på SIR's revisionsrapport fra 2013**
45. Rigsrevisionens undersøgelse viser, at SKAT i 2013 modtog en revisionsrapport fra SIR. Rapporten indeholder 8 bemærkninger, som SIR anbefaler, at SKAT følger op på. Bemærkningerne er markeret med en farveskala, der angiver væsentligheden af bemærkningen. Rapporten indeholder 5 røde, 2 gule og 1 grøn bemærkning. SIR anbefaler i rapporten bl.a., "at SKAT sikrer sig bedre mod uretmæssig refusion af udbytteskat". Bemærkningen er markeret med gult, hvilket ifølge rapporten er udtryk for en betydelig svaghed, der vurderes som et problem, der bør tages hånd om.

SKAT har en procedure for opfølgning på revisionsrapporter, hvor SKAT i en opfølgnings-protokol bl.a. rapporterer om, hvilke handlinger der vil blive foretaget i SKAT som opfølgning på kritikken, og angiver en tidsfrist for afslutning af denne handling. Opfølgningsprotokollen forelægges SKATs direktion, inden den sendes til Skatteministeriet til orientering.

46. Tabel 1 viser uddrag af SKATs opfølgningsprotokoller. Af uddragene fremgår, hvordan SKAT har fulgt op på SIR's bemærkning i revisionsrapporten fra 2013 om at sikre sig bed-re mod uretmæssig refusion af udbytteskat.

Tabel 1. Uddrag af SKATs opfølgningsprotokoller vedrørende SKATs arbejde med at sikre sig bedre mod uretmæssig refusion af udbytteskat

| Tidspunkt | Handling i SKAT | Tidsfrist |
|---|---|---|
| 2. og 3. kvartal 2013 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. Der nedsættes en arbejdsgruppe. | 31. december 2013. |
| 4. kvartal 2013 | Arbejdsgruppen er påbegyndt beskrivelse af opgaver og ansvarsområder. Arbejdet hermed forventes færdigt ultimo januar 2014. | 30. april 2014. |
| 1. kvartal 2014 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. | Frist udskydes til 30. september 2014. |
| 2. kvartal 2014 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. | Frist udskudt til 30. september 2014. |
| 3. kvartal 2014 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. | Frist udskydes til 31. december 2014. |
| 4. kvartal 2014 | Proces for refusion af udbytteskat er under udarbejdelse via SKATs deltagelse i OECD-projektet TRACE. | Arbejdet med bemærk-ningen afsluttes. |

Det fremgår af tabel 1, at SKAT i 2013 erkender, at der er behov for at afklare, om det er muligt at indlægge yderligere kontroller for at sikre sig bedre mod uretmæssig refusion af udbytteskat. Imidlertid udskydes fristen for den opgave flere gange, inden den afsluttes med henvisning til SKATs deltagelse i OECD-projektet TRACE.

47. Rigsrevisionen konstaterer, at SKATs direktion godkender, at arbejdet med at forbedre kontrollen med refusion af udbytteskat angives som afsluttet i opfølgningsprotokollen på et tidspunkt, hvor tidsplanen er overskredet med mere end 1 år, uden at SKAT har foretaget ændringer i det eksisterende kontrolsystem for refusion af udbytteskat. Arbejdet afsluttes alene med henvisning til dansk deltagelse i OECD-projektet TRACE. Skatteministeriet har oplyst, at OECD offentliggjorde en færdig TRACE-model i februar 2013, men modellen er endnu ikke blevet implementeret i Danmark eller i noget andet land. Det er på den baggrund Rigsrevisionens vurdering, at SKAT reelt ikke har arbejdet med bemærkningen fra SIR om at forbedre kontrollen med refusion af udbytteskat.

**SKATs håndtering af oplysninger udefra om formodet svindel**

48. Rigsrevisionens undersøgelse viser, at SKAT modtog oplysninger udefra om formodet svindel. På den bagrund satte SKAT udbetalingerne af refusion af udbytteskat i bero den 6. august 2015. Rigsrevisionen konstaterer, at der i perioden, fra SKAT modtog oplysninger udefra om formodet svindel, til refusion af udbytteskat sættes i bero, blev udbetalt yder-ligere 3,2 mia. kr. i refusion af udbytteskat. Rigsrevisionen har af hensyn til SØIK's efter-forskning ikke kunnet formidle, hvilke oplysninger SKAT har modtaget udefra, og hvordan SKAT og Skatteministeriet har behandlet disse oplysninger om formodet svindel.

*OECD-projektet TRACE (Treaty Relief and Compliance Enhancement)* Formålet med projektet var at etablere et system, hvor der foretages automatisk nettoin-deholdelse af udbytteskat i henhold til den relevante dob-beltbeskatningsoverenskomst i forbindelse med udbetaling af udbytte til udenlandske aktio-nærer. Ved nettoindeholdelse af udbytteskat foretages ikke refusion.

SKAT_MDL_001_0075143

Rigsrevisionen konstaterer, at SKAT har udbetalt 3,2 mia. kr. i refusion af udbytteskat efter det tidspunkt, hvor SKAT modtog oplysninger udefra om den formodede svindel, og indtil udbetalingerne blev sat i bero. Skatteministeriet har oplyst, at SKAT på baggrund af de oplysninger, der fremkom hen over sommeren 2015, først den 6. august 2015 havde det nødvendige grundlag for at stoppe udbetalingerne. Skatteministeriet har endvidere anført, at SKAT efter kildeskattelovens § 69 B er forpligtet til at refundere for meget indeholdt udbytteskat, og at der skal foreligge helt særlige grunde, før de samlede udbetalinger kan stilles i bero. Rigsrevisionen skal hertil anføre, at SKAT, da de modtog oplysninger udefra om formodet svindel, var vidende om, at antallet af anmodninger og det samlede refusionsbeløb var steget markant, og SKAT var samtidig vidende om, at de interne kontroller var mangelfulde.

Rigsrevisionen finder derfor, at SKAT burde have undersøgt området nærmere, inden de foretog yderligere udbetalinger af refusion. Rigsrevisionen finder ikke, at en nærmere undersøgelse, inden yderligere udbetalinger blev foretaget, ville være i strid med kildeskattelovens § 69 B. Ifølge kildeskattelovens § 69 B har SKAT 6 måneder til at refundere for meget indeholdt udbytteskat, fra den dag grundlaget for udbetaling er tilstrækkelig oplyst, hvorefter der tilskrives renter. Denne bestemmelse blev indsat i kildeskatteloven i juni 2012.

**Resultater**
49. Rigsrevisionens undersøgelse viser, at SKATs forvaltning af refusion af udbytteskat – både via bankordningen og blanketordningen – har været helt utilstrækkelig i undersøgelsesperioden, og at der ikke har været ledelsesmæssigt fokus på området.

SKAT har ingen nedskrevne og heller ikke fastsatte forretningsgange for, hvad der skal kontrolleres i forbindelse med behandling af anmodninger om refusion af udbytteskat, og hvordan dette skal ske. SKAT har ikke kontrolleret grundlæggende oplysninger i anmodningerne, fx ejerskab, og om ansøger har fået indeholdt udbytteskat. SKAT har haft en utilstrækkelig systemunderstøttelse, som ikke muliggør kontrol af grundlæggende oplysninger. SKAT har ligeledes ikke sikret en klar og entydig ansvars- og opgavefordeling mellem forretningsområderne og de underliggende processer vedrørende administrationen af udbytteskat og refusion heraf.

Ifølge SKATs egen vurdering har SKAT via bankordningen uden lovhjemmel uddelegeret sine kontrolbeføjelser og kontrolpligt, og bankordningen har således efter SKATs egen vurdering ikke været lovlig. SKAT har opsagt aftalen med de 3 banker ultimo september 2015. SKAT har ikke kontrolleret, om de 3 banker i bankordningen har udført den aftalte kontrol. SKAT har derudover ikke foretaget indholdsmæssig kontrol af refusionsanmodninger, som SKAT har modtaget fra de 3 banker i bankordningen, ligesom SKAT heller ikke har kontrolleret, om der er udloddet udbytte for de aktier, der er søgt om refusion på baggrund af. Endelig har SKAT ikke ført kontrol med, om aktionærer, som har fået refusion via bankordningen, også har søgt om refusion via blanketordningen, dvs. om den indeholdte udbytteskat uretmæssigt blev refunderet flere gange.

SKAT har reelt ikke fulgt op på en kritisk revisionsrapport fra 2013, hvori SIR bl.a. anbefalede, at SKAT skulle sikre sig bedre mod uretmæssig refusion af udbytteskat. Endelig har SKAT ikke overvåget området og som del heraf udarbejdet helt simple grundlæggende analyser, der klart ville have peget på behovet for en grundig undersøgelse af udviklingen i refusion af udbytteskat. Tværtimod var SKAT, da de modtog oplysninger udefra om formodet svindel, i gang med at oplære nye medarbejdere for at kunne håndtere det stigende antal anmodninger om refusion af udbytteskat uden at undersøge årsagen til stigningen nærmere.

SKAT_MDL_001_0075144

SKAT har udbetalt 3,2 mia. kr. i refusion af udbytteskat efter det tidspunkt, hvor SKAT mod-
tog oplysninger udefra om den formodede svindel, og indtil udbetalingerne blev sat i bero.
Skatteministeriet har oplyst, at SKAT på baggrund af de oplysninger, der fremkom hen over
sommeren 2015, først den 6. august 2015 havde det nødvendige grundlag for at stoppe
udbetalingerne. Rigsrevisionen skal hertil anføre, at SKAT, da de modtog oplysninger ude-
fra om formodet svindel, var vidende om, at antallet af anmodninger og det samlede refu-
sionsbeløb var steget markant, og SKAT var samtidig vidende om, at de interne kontroller
var mangelfulde. Rigsrevisionen finder, at SKAT burde have undersøgt området nærmere,
inden de foretog yderligere udbetalinger af refusion.

## 2.3.  Skatteministeriets tilsyn

50. Rigsrevisionen har undersøgt, om Skatteministeriet har ført et tilstrækkeligt tilsyn med
SKATs forvaltning af refusion af udbytteskat. Vi har lagt til grund, at Skatteministeriet som
led i sit almindelig tilsyn har det overordnede styrings- og tilsynsansvar for SKAT. Af "Mi-
nisterieinstruks for Skatteministeriet" fremgår bl.a. de opgaver, som Skatteministeriet vare-
tager på regnskabsområdet som overordnet myndighed for bl.a. SKAT. Det fremgår, at Skat-
teministeriet som led i sit almindelige tilsyn bl.a. foretager en overvågning af skatte- og af-
giftsindtægter. I den forbindelse fremgår det, at Skatteministeriet skal overvåge, om indtæg-
terne er rimelige.

Derudover har vi lagt til grund, at et tilfredsstillende tilsyn omfatter, at Skatteministeriet rea-
gerer på kritiske revisionsrapporter og forholder sig til øvrige informationer, der indikerer
problemer eller risici på et givent område. Det fremgår af ministerieinstruksen, at SKATs
forvaltning af udgifter og indtægter skal tilrettelægges ud fra hensyntagen til de konkrete
forhold, dvs. væsentlighed og risiko samt størrelsen og arten af de forskellige typer indtæg-
ter og udgifter. Det fremgår endvidere, at Skatteministeriet som overordnet myndighed er
ansvarlig for at sikre, at forvaltningen inden for Skatteministeriets koncern foretages på en
forsvarlig måde. Hvis Skatteministeriet har kendskab til, at et område er risikofyldt, bør mi-
nisteriet således sikre, at der er de fornødne resurser og kompetencer til et effektivt tilsyn,
indtil forholdene er rettet op. Endvidere har vi lagt til grund, at Skatteministeriet indhenter
viden om SKATs forvaltning i et omfang, så ministeriet kan varetage sit overordnede sty-
rings- og tilsynsansvar for SKAT.

Skatteministeriet har i sin koncernstyringsstrategi for 2014-2017 udpeget SKAT som en sty-
relse med behov for udvidet tilsyn og styring, bl.a. med begrundelse i, at der er mange iden-
tificerede risici, som kan få meget væsentlige konsekvenser, og samtidig en meget stor kom-
pleksitet i opgaveløsningen. Det fremgår ligeledes af Rigsrevisionens beretning til Statsre-
visorerne om Skatteministeriets økonomistyring, at Skatteministeriet – efter departementet
blev genetableret i 2013 – udpegede SKAT som et område med store risici, hvor der er be-
hov for et udvidet tilsyn.

**Skatteministeriets almindelige tilsyn**
51. Skatteministeriet har oplyst, at ministeriet som led i sit almindelige tilsyn foretager en
løbende overvågning af skatte- og afgiftsindtægter, hvilket som nævnt også fremgår af mi-
nisterieinstruksen. Overvågningen tager bl.a. udgangspunkt i Skatteministeriets kvartals-
vise regnskabsgodkendelser af SKATs regnskab. Skatteministeriets kvartalsvise regnskabs-
godkendelser er baseret på SKATs godkendelser af egne kvartalsregnskaber, SKATs må-
nedlige regnskabsgodkendelser og informationer fra de månedlige indtægtslister, som Skat-
teministeriet månedligt udarbejder til Folketingets Skatteudvalg og Finansudvalg.

52. Rigsrevisionens undersøgelse viser, at hverken Skatteministeriets kvartalsvise regn-
skabsgodkendelser eller SKATs godkendelser af egne kvartalsregnskaber for § 38 har in-
deholdt informationer, der har bidraget til overvågningen af området for udbytteskat.

*Indtægtslisten udarbejdes én
gang om måneden til Folketin-
gets Skatteudvalg og Finans-
udvalg og er efterfølgende til-
gængelig på Skatteministeriets
hjemmeside.*

*Indtægtslisten indeholder regn-
skabsoplysninger om nettoind-
tægterne fra skatter og afgifter
for den pågældende måned.
Indtægtslisten indeholder end-
videre oplysning om indtæg-
terne hidtil i året og sammen-
ligner med det tilsvarende tids-
punkt året før.*

*SKATs månedlige regnskabsgodkendelser*

53. Skatteministeriet modtager månedligt regnskabsgodkendelser fra SKAT, som indeholder regnskabsmæssige forklaringer på udvalgte udsving i regnskabsposter, herunder fx udbytteskat. Det fremgår af Skatteministeriets virksomhedsinstruks for § 38, at SKATs ledelse i forbindelse med godkendelsen af SKATs månedlige regnskaber bl.a. skal vurdere, om indtægter og udgifter forekommer rimelige. For afvigelser, der undersøges i forbindelse med sandsynlighedskontrollen, skal forklaringerne dokumenteres eller vedlægges.

Rigsrevisionens undersøgelse viser, at Skatteministeriet via SKATs månedlige regnskabsgodkendelser bliver gjort opmærksom på, at udgifterne til refusion af udbytteskat er markant stigende. Fx blev der i maj 2015 udbetalt 4,2 mia. kr., hvilket er 2,8 mia. kr. mere end samme måned året før, svarende til en stigning på 200 %. I en bemærkning til regnskabsgodkendelsen for maj 2015 forklarer SKAT en del af stigningen med, at amerikanske pensionskasser foretager opkøb i danske selskaber.

Endvidere gør SKAT via regnskabsgodkendelsen for juni 2015 Skatteministeriet særskilt opmærksom på, at der er en stigende tendens i refusionerne af udbytteskat, og at der år-til-dato i juni 2015 er refunderet 6,6 mia. kr. mod 4,1 mia. kr. år-til-dato i juni 2014 og 1,7 mia. kr. år-til-dato i juni 2013. En del af stigningen forklares også i denne regnskabsgodkendelse med, at amerikanske pensionskasser foretager opkøb i danske selskaber.

Skatteministeriet spørger ikke ind til og beder ikke om dokumentation for denne forklaring fra SKAT, på trods af at den samme forklaring benyttes gentagne gange i 2014 og 2015 til forklaring af den stigende refusion af udbytteskat. Rigsrevisionens undersøgelse viser, at SKAT ikke har dokumentation for denne årsagsforklaring, som efterfølgende viser sig at være ukorrekt. Rigsrevisionen konstaterer således, at hverken SKAT eller Skatteministeriet – heller ikke kort før, den formodede svindel blev opdaget – fandt anledning til at undersøge, om forklaringen med amerikanske pensionskassers opkøb i danske selskaber kunne forklare den stigende tendens i refusion af udbytteskat.

54. Boks 5 viser uddrag af regnskabsgodkendelser for maj og juni 2015.

---

**BOKS 5. EKSEMPLER PÅ OPLYSNINGER OM REFUSION AF UDBYTTESKAT I DE MÅNEDLIGE REGNSKABSGODKENDELSER**

**Maj 2015**
Periodens refunderede udbytteskatter udgør 4,2 mia. kr., hvilket er en stigning på 2,8 mia. kr. i forhold til samme periode sidste år, hvor de refunderede udbytteskatter udgjorde 1,4 mia. kr. En del af stigningen kan henføres til, at flere amerikanske pensionskasser foretager opkøb i danske selskaber. Da disse ikke skal betale dansk skat, medfører disse opkøb store refusioner af udbytteskat.

**Juni 2015**
Der er – som for ordinære indtægter vedrørende udbytteskat – år-til-dato en stigende tendens vedrørende refusion af udbytteskat. Refunderede udbytteskatter udgjorde således 6,6 mia. kr. ultimo juni 2015 mod 4,1 mia. kr. ultimo juni 2014 og 1,7 mia. kr. ultimo juni 2013. En del af stigningen kan henføres til, at flere amerikanske pensionskasser foretager opkøb i danske selskaber. Da disse ikke skal betale dansk skat, medfører disse opkøb store refusioner af udbytteskat.

Kilde:  SKATs regnskabsgodkendelser for maj og juni 2015.

---

SKAT_MDL_001_0075146

55. Skatteministeriet har efterfølgende oplyst, at stigningen i refusionen i 2015 skal ses i sammenhæng med, at indtægterne for udbytteskat i perioden april-juni 2015 er fordoblet i forhold til samme periode året før. Dette fremgår også af regnskabsgodkendelser, fx for april 2015, hvor indbetalingerne udgjorde 10,4 mia. kr., hvilket er 5,8 mia. kr. mere end samme måned året før. Rigsrevisionen konstaterer, at indtægterne fra udbytteskat i perioden 1. januar 2010 - 5. august 2015 er steget fra 6,4 mia. kr. til 19 mia. kr., hvilket svarer til en stigning på ca. 200 %. Til sammenligning er refusionerne af udbytteskat steget fra 0,68 mia. kr. i 2010 til 9,3 mia. kr. i 2015 (1. januar 2015 - 5. august 2015), svarende til en stigning på ca. 1.300 %, jf. afsnit 2.2.

56. Rigsrevisionen finder, at Skatteministeriet på baggrund af de regnskabsgodkendelser fra 2014 og 2015, hvori der peges på den stigende refusion af udbytteskat, burde have set nærmere på udviklingen i refusion af udbytteskat. Rigsrevisionen konstaterer, at Skatteministeriet ikke har spurgt ind til eller bedt om dokumentation for forklaringen om amerikanske pensionskassers opkøb i danske selskaber fra SKAT, på trods af at forklaringen går igen gentagne gange.

57. Skatteministeriet har anført, at kritikken forekommer uproportionel, idet ministeriet har modtaget godkendte regnskaber fra SKAT uden anmærkninger og med forklaring på afvigelser, hvorfor regnskabsgodkendelserne ikke efterlader indtryk af, at der er problemer. Rigsrevisionen finder det utilfredsstillende, at SKAT har afgivet en ukorrekt og udokumenteret forklaring på stigningen af refusion af udbytteskat. Rigsrevisionen skal dog hertil anføre, at de månedlige regnskabsgodkendelser fra SKAT tilgår Skatteministeriet som led i ministeriets tilsyn, og at ministeriet skal godkende regnskabet på baggrund af de underliggende regnskabsgodkendelser og eventuelle bemærkninger. Det er på den baggrund Rigsrevisionens vurdering, at Skatteministeriet burde have bedt om dokumentation for forklaringen eller spurgt ind til den – særligt i lyset af at samme forklaring går igen gentagne gange, hvor der konstateres en stigning i refusionen af udbytteskat.

*Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg*
58. Skatteministeriet udarbejder månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg, bl.a. på baggrund af SKATs månedlige regnskabsgodkendelser. Det fremgår af Skatteministeriets "Beskrivelse af arbejdsgangen i departementet for opgaver beskrevet i SKATs virksomhedsinstruks for § 38", at der udarbejdes kommentarer på indtægtslisten, i det omfang der er særlige forhold, der tilsiger det, herunder fra SKATs månedlige regnskabsgodkendelser.

Skatteministeriet har oplyst, at forretningsgange for godkendelse af indtægtslisten består af et "visuelt tjek" i 4 kontroller, før indtægtslisten bliver sendt til Folketingets Skatteudvalg og Finansudvalg. Først godkendes tallene for udbytteskat af den ansvarlige for det relevante indtægtsområde. Herefter bliver den samlede indtægtsliste godkendt af chefrådgiveren, af afdelingschefen og til sidst af departementschefen.

Rigsrevisionens undersøgelse viser, at Skatteministeriet ikke har haft retningslinjer for, hvilken kontrol der ligger til grund for godkendelsen af indtægtslisterne. Skatteministeriet har oplyst, at kontrollen består af et "visuelt tjek" af, om udviklingen i indtægtslistens poster synes plausibel. Udviklingen vurderes ved at sammenligne månedens nettoindtægt fra udbytteskat med nettoindtægten for samme måned året før og de samlede nettoindtægter år-til-dato sammenholdt med det foregående år. Skatteministeriet har oplyst, at det er ministeriets vurdering, at det ikke i praksis via den løbende overvågning af statens indtægter generelt vil være muligt at identificere stigende svindel.

59. Rigsrevisionen har med udgangspunkt i tallene fra Skatteministeriets månedlige ind-tægtslister sammenlignet de månedlige nettoindtægter fra udbytteskat i perioden januar 2012 – december 2014, jf. figur 7, og de samlede nettoindtægter år-til-dato for 2014 sam-menholdt med 2013, jf. figur 8.



**Figur 7. Månedlige nettoindtægter fra udbytteskat i perioden januar 2012 - december 2014 (1.000 kr.)**

- - - Normalt udsving på grund af modregning af selskabsskat i november

**– – –** Første gang, at nettoindtægten er negativ (bortset fra i november)

Kilde: Rigsrevisionen på baggrund af Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg.

Det fremgår af figur 7, at der var store udsving i nettoindtægten i løbet af året, og at der i november 2012, 2013 og 2014 var en negativ nettoindtægt. Skatteministeriet har oplyst, at dette skyldes, at der modregnes selskabsskat hvert år i november. Det fremgår også af figu-ren, at det i juni 2014 var første gang, at der var en direkte negativ nettoindtægt fra udbyt-teskat, og at dette fortsatte i de 2 efterfølgende måneder.



Figur 8. Nettoindtægter år-til-dato for 2013 og 2014 (1.000 kr.)

Kilde: Rigsrevisionen på baggrund af Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg.

Det fremgår af figur 8, at den samlede nettoindtægt fra udbytteskat i juni 2014 var lavere end samme måned i 2013, og at denne udvikling fortsatte i de resterende 6 måneder af 2014. Den samlede nettoindtægt i 2014 var således 2,3 mia. kr. lavere end i 2013. Rigsrevisionen konstaterer, at den samlede nettoindtægt i 2014 var lavere end i 2013, på trods af at indtægterne fra udbytteskat steg fra 11,7 mia. kr. i 2013 til 13,2 mia. kr. i 2014.

60. Rigsrevisionen konstaterer, at Skatteministeriet som led i ministeriets interne godkendelse af indtægtslisterne ikke har bedt om en nærmere undersøgelse, selv om der i 2014 i flere måneder var en direkte negativ nettoindtægt fra udbytteskat. Dertil kommer, at der var en negativ udvikling i nettoindtægten fra udbytteskat i 2014 sammenlignet med 2013, hvor der i 7 måneder i træk var lavere nettoindtægter, og det samlede nettoresultat for 2014 var 2,3 mia. kr. lavere end i 2013, på trods af at indtægterne fra udbytteskat var steget i samme periode. Rigsrevisionen er opmærksom på, at en negativ nettoindtægt i én eller flere måneder ikke i sig selv er tegn på svindel, men finder det naturligt, at Skatteministeriet i sit tilsyn beder om forklaring på en så markant negativ udvikling.

61. Rigsrevisionens undersøgelse viser, at Skatteministeriet i undersøgelsesperioden 6 gange har haft en bemærkning til de månedlige indtægtslister. Det drejer sig om 5 gange i 2010 og én gang i 2013, dvs. én gang i den periode, hvor svindlen formodes at have fundet sted. I bemærkningen fra 2013 fremgår det, at der i provenuet fra udbytteskat for maj 2013 indgår et beløb på 1,3 mia. kr. fra ca. 4.500 modtagne, men ikke-indtægtsførte angivelser.

*Early warnings*
*Skatteministeriet, SKAT og*
*Skatteankestyrelsen har et*
*"early warning-institut", hvor*
*der er fastlagt en klar procedu-*
*re for, hvordan der internt kan*
*advares om huller i lovgivnin-*
*gen e.l., som medfører en trus-*
*sel mod statskassen. Early*
*warnings bruges fx i tilfælde,*
*hvor der er tale om organiseret*
*misbrug af skattelovgivningen,*
*hvor skatteregler bruges i strid*
*med lovgivers intention, eller*
*hvor der træffes afgørelser i*
*strid med praksis eller regel-*
*grundlaget med betydning for*
*et større antal sager. "Early*
*warning-instituttet" blev indført*
*med det formål at sikre en klar*
*ansvarsfordeling i forhold til*
*eventuelle advarsler for at si-*
*kre, at alle advarsler blev be-*
*handlet og hurtigt besvaret.*

62. Rigsrevisionen konstaterer, at Skatteministeriet alene har foretaget et "visuelt tjek" af, om udviklingen i indtægtslistens poster synes plausibel. Skatteministeriet har oplyst, at der ved bemærkninger i regnskabsgodkendelsen, eller hvis en udvikling skønnes ikke at være plausibel, efterspørges yderligere information hos SKAT. Rigsrevisionen finder, at Skatte-ministeriet i forbindelse med godkendelsen af de månedlige indtægtslister burde have efter-spurgt helt grundlæggende analyser, der kunne forklare udviklingen i nettoindtægten. Så-danne analyser ville klart have peget på behovet for en grundig undersøgelse af udviklingen i refusion af udbytteskat, jf. afsnit 2.2.

Rigsrevisionen konstaterer, at Skatteministeriet således ikke i forbindelse med godkendel-sen af de månedlige indtægtslister har vurderet, at der var særlige forhold i udviklingen af refusion af udbytteskat, som skulle medføre en bemærkning til indtægtslisten. Rigsrevisio-nen konstaterer desuden, at selv om det fremgår i 3 af SKATs månedlige regnskabsgodken-delser fra 2014, at refusionerne af udbytteskat var stigende, har Skatteministeriet heller ik-ke på den baggrund haft bemærkninger til indtægtslisterne i 2014 eller efterspurgt analyser heraf.

**Indikationer på problemer med refusion af udbytteskat**
63. Rigsrevisionen har undersøgt, om Skatteministeriet har modtaget andre indikationer på problemer med refusion af udbytteskat, herunder kritiske revisionsrapporter, early warnings og andre typer skriftlige henvendelser. Vi har i den forbindelse undersøgt, om Skatteministe-riet som led i sit tilsyn har reageret på sådanne indikationer.

64. Rigsrevisionens undersøgelse viser, at Skatteministeriet i undersøgelsesperioden har modtaget adskillige indikationer på problemer i forbindelse med refusion af udbytteskat. Fi-gur 9 viser de skriftlige indikationer, som Skatteministeriet har modtaget i perioden 1. janu-ar 2010 - 5. august 2015.



Figur 9. Indikationer til Skatteministeriet på problemer med refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015

2010
1. indikation
SIR's revisionsrapport

2011
2. indikation
Medarbejder advarer om risiko
for uretmæssig refusion

3. indikation
Medarbejder advarer igen om risiko
for uretmæssig refusion og lang
tidshorisont i OECD-projektet TRACE

2012
÷34 mio. kr.

2013
4. indikation
SIR's revisionsrapport

5. indikation
Rigsrevisionens revisionsberetning

6. indikation
Opfølgningsprotokoller fra SKAT

÷608 mio. kr.

2014
7. indikation
SIR's rapport

÷3,1 mia. kr.

2015
8. indikation
Early warning

÷5,9 mia. kr.
9. indikation
Oplysninger udefra om formodet svindel

÷9,1 mia. kr.

6. august 2015
SKAT sætter
udbetalingerne i bero

Kilde: Rigsrevisionen.

Det fremgår af figur 9, at Skatteministeriet i perioden 1. januar 2010 - 5. august 2015 har modtaget flere skriftlige indikationer på problemer i forbindelse med refusion af udbytteskat. Figuren viser endvidere den indtil videre opgjorte formodede svindel, som er akkumuleret i perioden 2012 - 5. august 2015.

65. Skatteministeriet har anført, at figur 9 er misvisende, fordi den giver indtryk af, at vidensniveauet i ministeriet var stigende. Skatteministeriet har videre anført, at indikationer på risiko for uretmæssig refusion ikke er ensbetydende med, at der har været indikationer på risiko for konkret og systematisk svindel. Skatteministeriet finder, at der er tale om en lang række informationer fra forskellige kilder, hvis sammenhæng ikke var umiddelbart åbenlys på de pågældende tidspunkter.

Rigsrevisionen skal hertil bemærke, at det er korrekt, at figur 9 illustrerer, at Skatteministeriet har modtaget flere indikationer på problemer med refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015, og at Rigsrevisionen netop finder det af afgørende betydning, at ministeriet reagerer på viden fra flere forskellige kilder, der akkumuleres over tid, og sammenholder denne viden med de oplysninger, som ministeriet har via sit almindelige tilsyn. Rigsrevisionen er desuden enig i, at de enkelte indikationer ikke nødvendigvis peger på konkret og systematisk svindel, men at de indikerer problemer med refusion af udbytteskat.

*1. indikation – SIR's revisionsrapport fra 2010*
66. SIR afgav i maj 2010 en revisionsrapport vedrørende refusion af udbytteskat. Det fremgår af revisionsrapporten, at det var den daværende departementschef i Skatteministeriet, der ultimo oktober 2009 havde bedt SIR om at foretage en revisionsmæssig undersøgelse af refusionsordningen. Baggrunden var, at der i perioden 2006-2008 var registreret et meget lavt eller direkte negativt nettoprovenu for udbytteskat vedrørende udenlandske aktionærer, dvs. der var refunderet næsten ligeså meget eller mere udbytteskat til udenlandske aktionærer, som der samlet var indeholdt for disse. Det fremgår af forelæggelsen for departementschefen fra oktober 2009, at det ikke kan udelukkes, at der refunderes for meget udbytteskat. Det fremgår ligeledes, at SKAT ikke har været i stand til at kontrollere, om skatteydere, der ansøger om refusion, ikke allerede én gang har modtaget refusion, dvs. får refunderet indeholdt udbytteskat flere gange. Endelig fremgår det, at der i tidligere rapporter fra Told- og Skatteregion København i 2000 og fra SIR i 2005 samt i notat fra en intern arbejdsgruppe i SKAT i 2007 er peget på problemer vedrørende refusion af udbytteskat.

SIR behandler i revisionsrapporten fra 2010 ikke direkte problemstillingen vedrørende det lave eller direkte negative nettoprovenu og forholder sig ikke til, om det kan være et udtryk for svindel eller anden form for uretmæssig refusion. I stedet fremgår det af rapporten, at der er uenighed om, hvorvidt SKATs datagrundlag kan sikre en troværdig opgørelse af nettoprovenu for udbytteskat vedrørende udenlandske aktionærer.

SIR peger i revisionsrapporten fra 2010 på en række mangler og problemer i kontrollen med refusion af udbytteskat. Boks 6 viser uddrag af rapporten.

---

**BOKS 6. BUDSKABER I SIR'S REVISIONSRAPPORT FRA 2010**

SIR peger i revisionsrapporten fra 2010 bl.a. på:

- at SKAT ikke kontrollerer, om den udbytteskat, som selskaberne indbetaler, stemmer overens med den udbytteskat, som udbyttemodtager søger refusion for
- at SKAT kan refundere udbytteskat, før skatten er indbetalt/indberettet til SKAT
- at SKAT alene kontrollerer, om blanketten er korrekt udfyldt, før der udbetales refusion
- at SKAT ikke kontrollerer, om der foreligger et reelt ejerskab af de aktier, den anmodes om refusion på baggrund af
- at SKAT ikke kontrollerer, om aktionæren reelt er skattepligtig i et land med en dobbeltbeskatningsoverenskomst
- at ansvaret for SKATs proces til håndtering af udbyttebeskatning bliver delt af flere procesejere, og at der ikke er defineret et overordnet ansvar for hele processen
- at der ikke er fulgt op på 3 tidligere undersøgelser fra 2000, 2005 og 2007, som har påpeget problemstillinger vedrørende refusion af udbytteskat.

Kilde: SIR's revisionsrapport fra 2010.

---

67. Problemstillingen med, at SKAT refunderede udbytteskat, før skatten var indberettet/indbetalt til SKAT, blev på initiativ af Skatteministeriet løst ved, at en lovændring fra 2009 blev udmøntet i 2 bekendtgørelser gældende fra henholdsvis 2012 og 2013. Ændringen indebar bl.a., at fristerne for angivelse og indberetning af udbytte blev harmoniseret.

Ovennævnte lovændring med bekendtgørelser imødekom imidlertid fortsat ikke en række af de udfordringer, som SKAT havde i forhold til refusion af udbytteskat, herunder med kontrol af refusionsanmodninger for aktier placeret i omnibusdepoter. SIR har i sin undersøgelse fra 2015 på baggrund af en stikprøve vurderet, at danske aktier, der er ejet af udenlandske aktionærer, i langt overvejende grad er placeret i omnibusdepoter, dvs. samledepoter. I disse tilfælde har SKAT ikke oplysninger om den enkelte ejer af aktierne, men kun oplysninger om ejeren af depotet, der fremstår som udbyttemodtager. Lovændringen mv. imødekom således ikke udfordringen med kontrol af refusionsanmodninger for hovedparten af de udenlandsk ejede aktier.

Skatteministeriet har oplyst, at ministeriet var opmærksom på denne problemstilling, hvilket bl.a. var årsagen til, at ministeriet i 2010 besluttede at deltage i OECD-projektet TRACE. Rigsrevisionens undersøgelse viser, at beslutningen om deltagelsen i projektet blev forelagt departementschefen i februar 2010. Det fremgår af forelæggelsen, at Danmark havde særlig stor interesse i deltagelse, da den danske ordning for refusion af udbytteskat ikke lod til at fungere tilfredsstillende.

68. Rigsrevisionen konstaterer, at Skatteministeriets løsning på SKATs problemer i forhold til kontrol af ejerforholdet for de udenlandsk ejede danske aktier i omnibusdepoter var deltagelse i et projekt, der først på langt sigt eventuelt ville kunne forbedre kontrollen. På trods heraf tog Skatteministeriet ikke initiativ til at sikre, at SKAT iværksatte kompenserende kontroller i TRACE-projektperioden. Derudover konstaterer Rigsrevisionen, at en eventuel TRACE-løsning kun ville løse problemet vedrørende kontrol med refusion af udbytteskat for udenlandsk ejede danske aktier placeret i banker, der ville vælge at implementere TRACE. Skatteministeriet har oplyst, at banker i de lande, der ikke ville indføre TRACE, kunne tilslutte sig ordningen. Det afgørende for ordningen var således, at kildelandet indførte ordningen, at bankerne ville implementere den, og at aktionærerne ville benytte sig af den. Rigsrevisionen finder på den baggrund, at TRACE ikke i sig selv ville være en tilstrækkelig løsning på problemet med SKATs utilstrækkelige kontrol med refusion af udbytteskat.

69. Rigsrevisionen konstaterer, at SIR's revisionsrapport fra 2010, som var udarbejdet på departementschefens foranledning, klart advarede om problemer med refusion af udbytteskat. Rigsrevisionen konstaterer endvidere, at SKAT og Skatteministeriet hverken som opfølgning på revisionsrapporten eller efterfølgende har undersøgt, om det lave eller negative nettoprovenu i perioden 2006-2008 kunne skyldes svindel eller anden form for uretmæssig refusion.

*2. indikation – medarbejderhenvendelse i oktober 2011*
70. Skatteministeriet modtog i oktober 2011 en skriftlig henvendelse fra en centralt placeret medarbejder i SKAT, der havde et indgående kendskab til arbejdet med udbytteskat og til OECD-projektet TRACE. Medarbejderen pegede på alvorlige problemer i forbindelse med kontrollen med refusion af udbytteskat. Medarbejderen påpegede bl.a., at der var risiko for uretmæssig refusion af udbytteskat, da SKAT ikke havde mulighed for at kontrollere ejerforholdet for en del af de udenlandsk ejede danske aktier. Medarbejderen pegede desuden på, at der var risiko for refusion af udbytteskat for samme udlodning flere gange, da SKAT ikke kontrollerede, om en aktionær anmodede om refusion via blanketordningen, samtidig med at depotbanken anmodede om refusion via bankordningen.

Skatteministeriet besvarede henvendelsen med henvisning til, at der blev arbejdet intensivt på at finde en løsning i OECD-regi.

*3. indikation – medarbejderhenvendelse i november 2011*
71. Samme medarbejder rettede herefter i november 2011 fornyet henvendelse til Skatteministeriet og udtrykte endnu engang bekymring, idet TRACE-projektet ifølge medarbejderen havde en meget lang tidshorisont. Medarbejderen understregede, at Skatteministeriet dermed ikke fulgte op på den kritiske revisionsrapport fra 2010 (1. indikation). Medarbejderen gav over for Skatteministeriet udtryk for, at refusionen af udbytteskat blev foretaget i blinde. Skatteministeriet besvarede ikke denne henvendelse.

72. Rigsrevisionen konstaterer, at Skatteministeriet i 2011 fra en centralt placeret medarbejder blev gjort opmærksom på, at anmodninger om refusion af udbytteskat var stigende, og at der var store problemer med kontrollerne på området. Således blev refusionerne af udbytteskat ifølge medarbejderen udbetalt i blinde. Endvidere bemærker Rigsrevisionen, at Skatteministeriet blev gjort opmærksom på, at tidshorisonten for en eventuel løsning i OECD-regi var lang. Rigsrevisionen finder, at henvendelsen havde en sådan karakter, at Skatteministeriet burde have taget den alvorligt.

73. Skatteministeriet har oplyst, at de 2 henvendelser fra medarbejderen ikke har haft en sådan karakter og et sådant indhold, at den kan anses som en indikation på svindel med refusion af udbytteskat. Rigsrevisionen er enig i, at henvendelserne fra medarbejderen ikke er i sig selv en indikation på svindel med udbytteskat, men at de 2 henvendelser indikerer problemer med refusion af udbytteskat. Rigsrevisionen skal hertil bemærke, at medarbejderen påpegede, at det er vanskeligt at kontrollere for svig i forbindelse med refusion af udbytteskat.

*4. indikation – SIR's revisionsrapport fra maj 2013*

74. SIR afgav som tidligere nævnt en revisionsrapport vedrørende refusion af udbytteskat i 2013. SIR's vurdering var, at SKATs kontrol af refusionsanmodninger via bankordningen ikke var tilstrækkelig, og at det burde beskrives, hvad der skulle kontrolleres, inden en anmodning blev imødekommet, ligesom grundlaget for refusion i højere grad burde kontrolleres. SIR anbefalede endvidere, at SKAT sikrer sig bedre mod uretmæssig refusion af udbytteskat.

75. Skatteministeriets departement modtog den 31. maj 2013 revisionsrapporten fra SIR. Skatteministeriet har oplyst, at revisionsrapporten på grund af en beklagelig ekspeditionsfejl i Skatteministeriet ikke blev behandlet af ministeriet. Rigsrevisionen finder, at der bør være etableret en arbejdsgang i Skatteministeriet, der sikrer, at en kritisk revisionsrapport bliver behandlet i ministeriet.

76. SIR's revisionsrapport fra 2013 vedrører først og fremmest refusion af udbytteskat via bankordningen. Revisionsrapporten pegede dog på et generelt behov for, at SKAT sikrer sig bedre mod uretmæssig refusion af udbytteskat. Derudover var revisionsrapportens hovedkonklusion, at det samlet var SIR's vurdering, at forvaltningen på udbytte- og royaltyområdet ikke har fungeret helt tilfredsstillende.

Revisionsrapporten fra 2013 følger ligeledes op på resultaterne i revisionsrapporten fra 2010 vedrørende den manglende kontrol i forbindelse med refusion via blanketordningen. Det fremgår endvidere af rapporten, at TRACE-projektet ikke har løst problemerne vedrørende kontrol af ejerforholdet af udenlandsk ejede danske aktier.

*5. indikation – Rigsrevisionens revisionsberetning fra august 2013*

77. Rigsrevisionen sendte i august 2013 en revisionsberetning om Skatteministeriets regnskaber for 2012 til Skatteministeriet, som ministeriet tog til efterretning. Der henvises heri til SIR's revisionsrapport fra maj 2013. Rigsrevisionen konstaterer, at Skatteministeriet herigennem igen blev gjort bekendt med SIR's revisionsrapport fra 2013.

*6. indikation – opfølgningsprotokoller fra SKAT*

78. Skatteministeriet har oplyst, at ministeriet siden 2013 har modtaget SKATs kvartalsvise opfølgningsprotokoller fra SKATs direktion vedrørende SKATs opfølgning på SIR's revisionsrapport fra 2013. Skatteministeriet har herigennem kunnet følge SKATs arbejde med opfølgning på bemærkningen i revisionsrapporten fra 2013 om bedre sikring mod uretmæssig refusion af udbytteskat. Rigsrevisionen konstaterer, at SKATs opfølgning på revisionsrapporten fra 2013 i opfølgningsprotokollerne fra 4. kvartal 2014 angives som arbejdet i TRACE, der netop skulle følge op på problemstillinger vedrørende blanketordningen.

Rigsrevisionens undersøgelse viser, at TRACE-projektet blev afsluttet i februar 2013, men at projektet ikke er implementeret i Danmark eller i andre lande, jf. afsnit. 2.2. Undersøgelsen viser desuden, at departementet har deltaget i arbejdet med TRACE i OECD-regi gennem deltagelse i en arbejdsgruppe.

Skatteministeriet har således ikke reageret på, at SKAT reelt ikke har arbejdet med at forbedre kontrollen med refusion af udbytteskat, på trods af at ministeriet deltog i arbejdsgruppen for TRACE og dermed var vidende om, at TRACE-projektet ikke havde løst de konstaterede problemer med refusion af udbytteskat.

SKAT_MDL_001_0075155

*7. indikation – SIR's rapport fra 2014*

79. SIR afgav i 2014 rapporten "SKATs opfølgning på SIR's anbefalinger og identificerede ikke-korrigerede fejl fra tidligere år". Rapporten indeholder en generel status over SKATs opfølgning på SIR's anbefalinger, og det fremgår af rapporten, at 57 ud af i alt 107 anbefalinger fra SIR er uafsluttede. SIR anbefaler i rapporten, at SKAT opprioriterer behandlingen af anbefalinger og får fokus på identificerede ikke-korrigerede fejl. Det fremgår af SIR's undersøgelse fra 2015, at anbefalingen om bedre sikring mod uretmæssig refusion af udbytteskat er blandt de 57 uafsluttede anbefalinger. Rigsrevisionen konstaterer, at det ikke er et enkeltstående tilfælde, at Skatteministeriet ikke har fulgt op på SIR's anbefalinger. Skatteministeriet har oplyst, at ministeriet efterfølgende har etableret en fast procedure for opfølgning på rapporter fra SIR.

Skatteministeriet har videre oplyst, at ministeriet i sommeren 2014 igangsatte en omfattende analyse af afdelingen Betaling og Regnskab i SKAT. Baggrunden var ifølge SKAT, at der forelå en række indikationer fra Rigsrevisionen, SIR og andre på, at risikoen for utilsigtede hændelser var særlig stor på dette område. Ud af analysen kom bl.a. en anbefaling om generelt at styrke kontrolmiljøet markant og at etablere en central regnskabsfunktion samt en række andre anbefalinger om forbedringer af kvalitet og organisering af regnskabet for § 38. Rigsrevisionen finder initiativerne positive, men konstaterer samtidig, at initiativerne har et langsigtet perspektiv og derfor ikke på nuværende tidspunkt har løst de problemer, som SKAT har i forhold til refusion af udbytteskat.

*8. indikation – early warning om risiko for uretmæssig refusion*

80. Skatteministeriet har modtaget en early warning om risiko for uretmæssig refusion af udbytteskat i forbindelse med aktieudlån den 7. juli 2015. Den mulige uretmæssige refusion af udbytteskat i forbindelse med aktieudlån vedrører en anden type af uretmæssig refusion og formodes at være foregået uafhængigt af den formodede svindel via blanketordningen. Skatteministeriet har anført, at den modtagne early warning ikke omhandler svindel med refusion af udbytteskat. Skatteministeriet har endvidere oplyst, at ministeriet i overensstemmelse med retningslinjerne har udarbejdet en vurdering af den modtagne early warning.

Rigsrevisionen er enig i, at den modtagne early warning ikke nødvendigvis omhandler svindel med refusion af udbytteskat. Rigsrevisionen konstaterer dog, at Skatteministeriet med denne early warning igen er blevet gjort opmærksom på mulige problemer vedrørende refusion af udbytteskat og behovet for at undersøge udbytteområdet nærmere, herunder udviklingen i indtægterne fra og refusionen af udbytteskat.

*9. indikation – oplysninger udefra om formodet svindel*

81. SKAT og Skatteministeriet modtog i sommeren 2015 oplysninger udefra om formodet svindel med refusion af udbytteskat. SKAT udbetalte i perioden, efter de modtog oplysningerne, og indtil udbetalingerne blev stillet i bero, 3,2 mia. kr. i refusion af udbytteskat. SKAT stillede udbetalingerne i bero den 6. august 2015.

**Resultater**

82. Rigsrevisionens undersøgelse viser, at Skatteministeriets tilsyn med refusion af udbytteskat har været særdeles mangelfuldt, og at der ikke har været ledelsesmæssigt fokus på området.

Skatteministeriet har ført et fragmenteret tilsyn uden at sammenholde oplysninger fra sit almindelige tilsyn med de indikationer på problemer med refusion af udbytteskat, som ministeriet har modtaget. Hvis Skatteministeriet havde ført et mere proaktivt tilsyn og sammenholdt sine tilgængelige oplysninger, ville ministeriet være blevet opmærksom på behovet for en nærmere undersøgelse af området. Undersøgelsen viser, at helt simple analyser af udviklingen i refusion af udbytteskat ville have peget på problemer på området.

Skatteministeriet har ikke undersøgt stigningen i refusion af udbytteskat nærmere, selv om ministeriet via regnskabsgodkendelserne fra SKAT fx blev gjort bekendt med, at der i maj 2015 blev udbetalt 4,2 mia. kr., hvilket er 2,8 mia. kr. mere end samme måned året før, svarende til en stigning på 200 %. Endvidere gjorde SKAT via regnskabsgodkendelsen for juni 2015 Skatteministeriet opmærksom på, at der var en stigende tendens i refusionerne af udbytteskat, og at der til år-til-dato i juni 2015 var refunderet 6,6 mia. kr. mod 4,1 mia. kr. år-til-dato i juni 2014 og 1,7 mia. kr. år-til-dato i juni 2013.

Rigsrevisionen konstaterer desuden på baggrund af indtægtslisterne, at der var en negativ udvikling i nettoindtægten fra udbytteskat i 2014, hvor der i 7 måneder i træk var lavere nettoindtægter sammenlignet med de samme måneder i 2013. Dertil kommer, at den samlede nettoindtægt i 2014 var 2,3 mia. kr. lavere end i 2013, på trods af at indtægterne fra udbytteskat var steget i samme periode. Endvidere konstaterer Rigsrevisionen, at nettoindtægten fra udbytteskat i 2014 for første gang – bortset fra i forbindelse med den årlige modregning af selskabsskat – var direkte negativ og det i en række på hinanden følgende måneder. På trods heraf fandt Skatteministeriet ikke anledning til at undersøge denne udvikling nærmere i forbindelse med ministeriets godkendelse af de månedlige indtægtslister.

Skatteministeriet har derudover ikke forholdt sig til og reageret på flere indikationer på problemer med refusion af udbytteskat. Skatteministeriet har i undersøgelsesperioden modtaget indikationer i form af diverse rapporter om udbytteskat fra SIR, henvendelser fra en medarbejder og en early warning om risiko for uretmæssig refusion af udbytteskat i forbindelse med aktieudlån. Der er ikke noget i Rigsrevisionens undersøgelse, der peger på, at Skatteministeriet uden oplysninger udefra om formodet svindel ville have reageret.

Rigsrevisionen, den 17. februar 2016

Lone Strøm

/Peder Juhl Madsen

SKAT_MDL_001_0075157

Bilag 1. Statsrevisorernes anmodning

Undersøgelsen er igangsat på baggrund af en anmodning fra Statsrevisorerne.

Statsrevisorerne bad om, at undersøgelsen skulle afdække nedenstående forhold. Det er desuden angivet, hvor i beretningen punkterne er behandlet.

| Statsrevisorerne har bedt Rigsrevisionen om | Her behandles punkterne |
|---|---|
| At gennemgå resultatet af Skatteministeriets Interne Revisions undersøgelse af kontrolsvigtet i forbindelse med refusion af udbytteskat, herunder de væsentligste årsager til kontrolsvigtet. | Udvalgte resultater fra Skatteministeriets Interne Revisions undersøgelse behandles i afsnit 2.2, men indgår også som baggrundsinformation og kilde i afsnit 2.1 og 2.3. |
| At undersøge Skatteministeriets departements tilsyn med SKATs forvaltning af refusion af udbytteskat siden 2010. | Skatteministeriets tilsyn behandles i afsnit 2.3. |
| At vurdere den ledelsesmæssige opfølgning i SKAT og i Skatteministeriet på bemærkninger og anbefalinger vedrørende refusion af udbytteskat fra Skatteministeriets Interne Revision og Rigsrevisionen siden 2010. | Den ledelsesmæssige opfølgning i SKAT og Skatteministeriet behandles i henholdsvis afsnit 2.2 og 2.3. |
| At vurdere de aktuelle forretningsgange og kontroller i SKAT ved refusion af udbytteskat, herunder vurdere om datagrundlag og systemunderstøttelse har været tilstrækkelige til at kontrollere refusionsanmodninger fra udlandet. I den forbindelse anmodes også om en undersøgelse af, om SKAT har anvendt resultatløn eller lignende bonusordninger for at få ekspederet et stort antal refusionssager. | SKATs forretningsgange og kontroller, herunder datagrundlag og systemunderstøttelse, i forbindelse med refusion af udbytteskat behandles i afsnit 2.2.<br><br>SKATs anvendelse af resultatløn eller lignende bonusordninger behandles i afsnit 2.2. |
| At redegøre for, hvordan SKAT har opgjort, at der er svindlet for ca. 6,2 mia. kr.<br><br>SKAT har efter Statsrevisorernes anmodning om en undersøgelse anmeldt formodet svindel for yderligere ca. 2,9 mia. kr. | SKATs opgørelse af den formodede svindel for ca. 6,2 mia. kr. og den efterfølgende anmeldelse af yderligere ca. 2,9 mia. kr. behandles i afsnit 2.1. |

SKAT_MDL_001_0075158

**Bilag 2. Metodisk tilgang**

Rigsrevisionens undersøgelse er bl.a. baseret på en gennemgang af Skatteministeriets Interne Revisions (SIR) undersøgelse af SKATs administration af udbytteskat og refusion af udbytteskat fra september 2015. Undersøgelsen blev bestilt af Skatteministeriet. SIR gør i rapporten opmærksom på, at undersøgelsen ikke er revision i overensstemmelse med de internationale principper og standarder for offentlig revision, da SIR bl.a. ikke har udført review af de anvendte regnskabstal og oplysninger fra SKAT. Undersøgelsen er alene udarbejdet med det formål at understøtte skatteministeren i at vurdere SKATs administration af udbytteskat og refusion heraf med henblik på at orientere Folketingets Skatteudvalg herom. Vi har baseret vores undersøgelse på de opgørelser, som fremgår af SIR's undersøgelse. Vi har dog bedt Skatteministeriet verificere de anvendte opgørelser i forbindelse med høringen.

**Møder**

Vi har holdt møder med Skatteministeriet, SKAT og SØIK. Formålet med møderne har været at få supplerende forklaringer til det materiale, vi har modtaget, og at få en dybere forståelse for dele af området, fx opgørelsen af den formodede svindel.

**Væsentlige dokumenter**

Vi har gennemgået en række dokumenter, herunder:

- SIR's undersøgelse fra 2015 af SKATs administration af udbytteskat og refusion af udbytteskat
- SIR's revisionsrapporter fra 2010 og 2013
- Skatteministeriets månedlige indtægtslister
- SKATs månedlige regnskabsgodkendelser
- referater og indstillinger om SKATs og Skatteministeriets opfølgning på rapporter fra SIR og Rigsrevisionen
- resultatlønskontrakter for SKATs direktion
- resultater fra Rigsrevisionens løbende årsrevision og it-revision vedrørende udbytteskat for regnskabsåret 2015
- diverse notater/redegørelser udarbejdet af SKAT eller Skatteministeriet på Rigsrevisionens forespørgsel
- materiale fra kvartalsmøder
- spørgsmål fra Folketinget
- orientering af Folketingets Skatteudvalg
- øvrigt materiale fra SIR.

**Analyser af udviklingen i refusion af udbytteskat**

I afsnit 2.2 indgår analyser af udviklingen i refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015 (figur 3-6). Skatteministeriet har anført, at det giver et misvisende billede udelukkende at se på udviklingen i udbytteskat i perioden 2010-2015. Skatteministeriet har oplyst, at hvis man ser på udviklingen over en længere periode, er udviklingen ikke markant anderledes end de historiske udsving. Rigsrevisionen skal hertil bemærke, at undersøgelsesperioden er fastsat på baggrund af Statsrevisorernes anmodning, og at periodeafgrænsningen i analyserne i øvrigt er den samme, som anvendes i SIR's undersøgelse fra 2015. Rigsrevisionen finder, at analyser på baggrund af data for perioden 1. januar 2010 - 5. august 2015 klart peger på et behov for at vurdere området nærmere.

Skatteministeriet har endvidere anført, at den metode, som Rigsrevisionen har anvendt til fremskrivningen af antal refusionsanmodninger, er grundlæggende forkert, da de fleste anmodninger om refusion modtages i april, maj og juni, og at fremskrivningen dermed giver et misvisende billede. Rigsrevisionen skal hertil anføre, at fremskrivningen er baseret på det gennemsnitlige dagligt modtagne antal ansøgninger i perioden 1. januar 2015 - 5. august 2015, og konstaterer, at juli var den måned i 2015, hvor der blev udbetalt næstmest hele året, og at der alene i de første 5 dage af august, indtil udbetalingerne blev sat i bero, blev udbetalt mere end i januar, februar og marts 2015 tilsammen. Rigsrevisionen finder på den baggrund, at fremskrivningen illustrerer, hvordan udviklingen i antal ansøgninger via blanketordningen kunne være fortsat, hvis SKAT ikke havde modtaget oplysninger udefra om formodet svindel og efterfølgende havde reageret ved at sætte udbetalingerne i bero.

**Analyser af indtægtslister**
Rigsrevisionen har gennemgået Skatteministeriets indtægtslister til Folketingets Skatteudvalg og Finansudvalg for hele undersøgelsesperioden. I afsnit 2.3 indgår analyser af udviklingen i nettoindtægter på baggrund af oplysninger fra Skatteministeriets månedlige indtægtslister i perioden 2012-2014. Skatteministeriet har anført, at de udsving i indtægterne fra udbytteskat, som Rigsrevisionen gengiver i figur 7 og 8, ikke nødvendigvis ligger uden for de historiske erfaringer set over en længere periode end den, Rigsrevisionen anvender. Rigsrevisionen er uforstående over for Skatteministeriets indvending og finder, at fx en negativ nettoindtægt flere måneder i træk, eller når den samlede nettoindtægt år-til-dato er mindre end samme periode året før, bør give anledning til, at Skatteministeriet undersøger området nærmere. Rigsrevisionen skal hertil tilføje, at Skatteministeriets indtægtslister netop sammenligner opgørelse i nettoindtægter med foregående år. Rigsrevisionen bemærker endvidere, at der heller ikke i 2010 og 2011 har været en negativ nettoindtægt, bortset fra i november, hvor selskabsskatten modregnes, og i maj 2010, hvor den negative nettoindtægt skyldes en ekstraordinær refusion på 1,5 mia. kr. begrundet i en domskendelse. Rigsrevisionen finder, at analyserne på baggrund af information fra indtægtslisterne i perioden 2012-2014 klart peger på et behov for at undersøge baggrunden for udviklingen nærmere.

**Bilag 3. Ordliste**

| | |
|---|---|
| Aktieudlån | Ejeren af en aktie kan låne aktien ud til anden part. Aktielåneren har råderetten over aktien i en på forhånd fastsat periode, eller indtil aktien tilbagekaldes. |
| Bankordningen | En aftale mellem SKAT og 3 banker, der bestod i, at de 3 banker kunne anmode SKAT om refusion af udbytteskat på vegne af udenlandske aktionærer. |
| Blanketordningen | Ved anmodning om refusion af udbytteskat via blanketordningen skal aktionæren indsende en udfyldt blanket til SKAT med anmodning om refusion af udbytteskat. |
| Dobbeltbeskatnings-overenskomst | De respektive dobbeltbeskatningsoverenskomster fastsætter, hvor meget aktionæren skal betale i udbytteskat i henholdsvis Danmark og i hjemlandet. For aktionærer bosat i lande, der har en dobbeltbeskatningsoverenskomst med Danmark, betyder det, at den udenlandske modtager af dansk aktieudbytte kan anmode SKAT om at få refunderet den indeholdte udbytteskat helt eller delvist, afhængigt af hvad der er fastsat i dobbelt-beskatningsoverenskomsten. |
| Early warning | Betegnelse for system til håndtering af henvendelser til SKAT, Skatteministeriet eller Skatteankestyrelsen om huller i lovgivningen e.l., der medfører en trussel mod stats-kassen. |
| Indtægtsliste til Folketingets Skatteudvalg og Finansudvalg | Regnskabsoplysninger om nettoindtægterne fra skatter og afgifter for den pågældende måned og for samme måned året før. Indtægtslisten indeholder endvidere oplysninger om indtægterne år-til-dato og sammenligner år-til-dato året før. |
| Nettoindtægt fra udbytteskat | Indtægterne fra udbytteskat fraregnet refusion og modregnet selskabsskat. |
| Omnibusdepot | Et samledepot, som typisk er ejet af en udenlandsk bank, hvori danske aktier, der er ejet af personer hjemmehørende i udlandet, kan være placeret. I disse tilfælde inde-holder SKATs it-systemer ikke oplysninger om den enkelte ejer af aktierne, men kun oplysninger til identifikation af ejeren af omnibusdepotet. |
| Opfølgningsprotokoller | Protokoller udarbejdet i SKAT og godkendt af SKATs direktion. Protokollerne giver et overblik over SKATs arbejde med at følge op på bemærkninger og anbefalinger fra SIR. |
| Refusion af udbytteskat | Tilbagebetaling af for meget indbetalt udbytteskat for udenlandske aktionærer i henhold til en dobbeltbeskatningsoverenskomst. |
| Regnskabsgodkendelse | Den afsluttende godkendelse af et regnskab for en periode, fx en måned eller et kvartal. |
| Sandsynlighedskontrol | En vurdering af, om indtægter og udgifter forekommer rimelige i den forløbne periode under iagttagelse af indtægter og udgifter de seneste 2 regnskabsår med udgangspunkt i udviklingen i de enkelte perioder samt år-til-dato (sandsynlighedskontrol). For afvigel-ser, der undersøges i forbindelse med sandsynlighedskontrollen, skal forklaringerne do-kumenteres eller vedlægges som bilag. |
| Skatteministeriets Interne Revision (SIR) | Ifølge rigsrevisorlovens § 9, stk. 1, kan der indgås aftale om, at revisionsopgaver i hen-hold til lovens § 2, stk. 1, nr. 1 og 2, varetages i et nærmere fastlagt samarbejde mel-lem rigsrevisor og et organ for intern revision. Ifølge den indgåede § 9-aftale mellem Skatteministeriet og Rigsrevisionen sikrer departementschefen i samarbejde med re-visionschefen, at den interne revision har en sådan kapacitet og kompetence, at den til enhver tid kan løse sine opgaver på en for departementschefen og Rigsrevisionen tilfredsstillende måde. |
| TRACE-projekt (Treaty Relief and Compliance Enhancement) | Et OECD-projekt med det formål at etablere et system, hvor der foretages automatisk nettoindeholdelse af udbytteskat i henhold til den relevante dobbeltbeskatningsover-enskomst i forbindelse med udbetaling af udbytte til udenlandske aktionærer. Ved net-toindeholdelse af udbytteskat foretages ikke refusion. |
| Udbytteskat | Beskatning af aktionærers udbytte fra aktier i danske virksomheder. |
| VP-ordning | En aftale om nettoindeholdelse af udbytteskat for udenlandske investorer. Blev admi-nistreret af VP-Securities (Værdipapircentralen). |