# EXHIBIT 24

CONFIDENTIAL
Christian Ekstrand - May 6, 2021

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MASTER DOCKET 18-MD-2865(LAK)
CASE NO. 18-CV-09797

_____
                                    )
IN RE:                              )
                                    )
CUSTOMS AND TAX ADMINISTRATION OF   )
THE KINGDOM OF DENMARK              )
(SKATTEFORVALTNINGEN) TAX REFUND    )
SCHEME LITIGATION                   )
                                    )
_____)


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*                                   \*
\*            CONFIDENTIAL           \*
\*                                   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


REMOTE VTC VIDEOTAPED DEPOSITION UNDER ORAL
EXAMINATION OF
CHRISTIAN EKSTRAND - VOLUME I
DATE: May 6, 2021


REPORTED BY: CHARLENE FRIEDMAN, CCR, RPR, CRR

Page 2

                    TRANSCRIPT of the videotaped deposition of the
witness, called for Oral Examination in the above-captioned
matter, said deposition being taken by and before CHARLENE
FRIEDMAN, a Notary Public and Certified Court Reporter of
the State of New Jersey, via WEBEX, ALL PARTIES REMOTE, on
May 6, 2021, commencing at approximately 6:02 in the
morning, EST, and 2:42 p.m., Denmark time.

Page 3

A P P E A R A N C E S:

HUGHES, HUBBARD & REED
One Battery Park Plaza
New York, NY  10004
BY:   NEIL OXFORD, ESQ.
      BILL MAGUIRE, ESQ.
      MARC A. WEINSTEIN, ESQ.
      BRITTANY LLEWELLYN, ESQ.
      Via VTC
Attorneys for SKAT

HANAMIRIAN LAW FIRM
40 E. Main Street
Moorestown, NJ  08057
BY:   JOHN M. HANAMIRIAN, ESQ.
      ELZA GRIGORYAN
      Via VTC
Attorneys for Acorn Capital

CAPLIN & DRYSDALE
600 Lexington Avenue
New York, NY  10022
BY:   MARK ALLISON, ESQ.
      Via VTC
Attorneys for Klugman

KAPLAN RICE
142 West 57th Street
New York, NY  10019
BY:   MICHELLE RICE, ESQ.
      Via VTC
Attorneys for Albedo, et al

Page 4

A P P E A R A N C E S:

KOSTELANETZ & FINK
250 Greenwich Street
New York, NY  10007
BY:   NICHOLAS H. BAHNSEN, ESQ.
      CAROLINE CIRAOLO, ESQ.
      SHARON MCCARTHY, ESQ.
      Via VTC
Attorneys for Azalea, et al

K&L GATES
One Lincoln Street
Boston, MA  02111
BY:   JOHN GAVIN, ESQ.
      BRANDON DILLMAN, ESQ.
      ANNA E. L'HOMMEDIEU, ESQ.
      Via VTC
Attorneys for Alexander Jamie Mitchell, et al

GUSRAE, KAPLAN & NUSBAUM
120 Wall Street
New York, NY  10005
BY:   KARI PARKS, ESQ.
      Via VTC
Attorneys for Goldstein

Page 5

A P P E A R A N C E S:

WILMER HALE
7 World Trade Center - 250 Greenwich Street
New York, NY  10007
BY:   ALAN SCHOENFELD, ESQ.
      CARY GLYNN, ESQ.
      JULIA C. PILCER, ESQ.
      RACHEL CRAFT, ESQ.
      ANDREW DULBERG, ESQ.
      Via VTC
Attorneys for Avanix, et al

BINDER & SCHWARTZ
366 Madison Avenue
New York, NY  10017
BY:   NEIL S. BINDER, ESQ.
      GREGORY C. PRUDEN, ESQ.
      Via VTC
ATTORNEYS for ED&F Man

DEWEY, PEGNO & KRAMARSKY
777 Third Avenue
New York, NY  10017
BY:   SEAN MULLEN, ESQ.
      Via VTC
Attorneys for Michael Ben-Jacob

WILLIAMS & CONNOLLY
725 12th STREET, NW
Washington, DC  20005
BY:   AMY B. MCKINLAY, ESQ.
      STEPHEN D. ANDREWS, ESQ.
      NOT PRESENT
Attorneys for Sander Gerber Pension Plan

Page 6

```
 1  A P P E A R A N C E S:
 2
 3  KATTEN
    575 Madison Avenue
 4  New York, NY  10022
    BY:    DAVID GOLDBERG, ESQ.
 5         MICHAEL ROSENAFT, ESQ.
           NOT PRESENT
 6  Attorneys for Klugman
 7
    SEWARD & KISSEL
 8  One Battery Park Plaza
    New York, NY  10004
 9  BY:    SHREY SHARMA, ESQ.
           THOMAS R. HOOPER, ESQ.
10         MARK J. HYLAND, ESQ.
           NOT PRESENT
11  Attorneys for Bernard Tew
12
    LAW OFFICES OF SHELDON S. TOLL
13  2000 Town Center
    Southfield, MI  48075
14  BY:    SHELDON S. TOLL, ESQ.
           NOT PRESENT
15  Attorneys for Hoffmeister
16
    MORVILLO, ABROMOWITZ, GRAND, IASON & ANELLO
17  565 5th Avenue
    New York, NY  10017
18  BY:    RICHARD WEINBERG, ESQ.
           NOT PRESENT
19  Attorneys for Clove Pension Plan, Mill River
    Pension Plan, Traden Investment Pension Plan
20
21
22
23
24
25
```

Page 7

```
 1  ALSO PRESENT:   JOSE RIVERA, Videographer
 2                  THOMAS SPILLER
                    ROSENBLATT LAW
 3
                    ANNE CHRISTINE KJAER EGHOLM
 4
                    CHRISTINE P. VINTHER
 5
                    CHRISTIAN B□LOW
 6
                    HELENE SCHWEIERING
 7
                    JENS KJAERGAARD
 8
                    INGDR GREGERSEN,    Interpreter
 9
                    KIRSTEN FOLLIN, Interpreter
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 8

```
 1              I N D E X
 2  WITNESS NAME                          PAGE
 3  CHRISTIAN EKSTRAND
 4
 5  Examination By:  Mr. Schoenfeld        12
 6
 7           E X H I B I T S
 8  EKSTRAND NO.  DESCRIPTION              PAGE
 9  3000          Deposition notice         21
10  3016          WH_MDL_00089256           38
11  3005          SKAT_MDL_001_00278652 -   55
                  00278659
12
    3006          SKAT_MDL_001_00278056 -   62
13                00278061
14  3007          SKAT_MDL_001_0075835 -    68
                  0075957
15
    3060          Skat's Responses and      93
16                Objections to
                  Defendant's Second Set
17                of Interrogatories
18  3061          SKAT_MDL_001_00450445    103
19  3026          Novo Nordisk's 2015      112
                  Annual Report
20
    3012          SKAT_MDL_001_00420463 -  133
21                00420473
22  3014          Printout of Skat's       138
                  website
23
    3077          MPSKAT00169675 -         165
24                00169686
25
```

Page 9

```
 1                  - - -
 2           Deposition Support Index
 3                  - - -
 4
 5  Direction to Witness Not to Answer
 6  Page  Line     Page  Line     Page  Line
 7  None
 8
 9  Request for Production of Documents
10  Page  Line     Page  Line     Page  Line
11  None
12
13  Stipulations
14  Page  Line     Page  Line     Page  Line
15  None
16
17  Questions Marked
18  Page  Line     Page  Line     Page  Line
19  None
20
21
22
23
24
25
```

Page 34

1   THE INTERPRETER: I think it's time
2 for a break.
3   MR. WEINSTEIN: Alan, Madam
4 Interpreter just asked for a break.
5   MR. SCHOENFELD: Sure. How long do
6 you need?
7   MR. WEINSTEIN: Five minutes.
8   MR. SCHOENFELD: Yep.
9   VIDEO OPERATOR: Please stand by.
10 The time is 7:04 a.m. New York time, and we
11 are going off the record.
12   (Brief recess taken.)
13   VIDEO OPERATOR: The time is
14 7:16 a.m. New York time, and we are back on
15 record.
16   Q   Mr. Ekstrand, before we went on a
17 break, we were talking about Mr. Nielsen.
18 And I asked you whether anyone had
19 responsibility for auditing his work.
20   And you said, "When you're talking
21 about payments of disbursements, there's a
22 functional separation as always."
23   Can you explain what you meant by
24 that?
25   A   Yes. The process is that there's

Page 35

1 always several pairs of eyes working on
2 handling such a task. Sven has input from
3 the day man.
4   At the end of the day, a report is
5 printed out and that is reviewed by Sven and
6 another employee to verify if it's in
7 accordance -- whether it's the same, what is
8 input and what is in the report. The next
9 thing, then, what he has checked and verified
10 really for disbursement, again, goes on for a
11 check of two persons to check whether it's
12 correct.
13   And then the amount is released for
14 disbursement.
15   Q   Who was the second person who
16 checked and verified amounts for disbursement
17 with Sven Neilsen?
18   A   That was one of the other employees
19 at the office.
20   Q   Do you know who it was during the
21 period January 2012 to August 2015?
22   A   As I said, one of the employees of
23 the department. It could be any one of the
24 other people in the department.
25   Q   So it wasn't one particular person?

Page 36

1 It was just someone else in the department
2 would be the second set of eyes?
3   A   Yes.
4   Q   You described that there was a
5 second set of eyes with respect to approving
6 disbursements.
7   With respect to the actual approval
8 of the reclaims themselves, was there a
9 second set of eyes after Sven's?
10   MR. WEINSTEIN: Objection to form.
11   A   So you can say that, in the
12 process, opening the reclaim requests, there
13 is a second set of eyes. But there's not on
14 the input, the actual input that he makes,
15 except for the reconciliation at the end.
16   Q   What was the second set of eyes on
17 the -- opening the reclaim request?
18   A   I understood that the person,
19 Mr. Laurits Cramer, opened the mail and
20 checked the contents. And then Sven was
21 doing the processing later.
22   Q   Do you know professionally what
23 Mr. Cramer did, like what steps he took with
24 respect to received reclaim applications?
25   A   He opened the mail and checked

Page 37

1 whether it was a Danish or a foreign account
2 number. He put them into piles and checked
3 that the correct documentation was available
4 with it.
5   THE INTERPRETER: And the witness
6 says that he could explain that further.
7   Q   Please do.
8   A   Several documents. One is a form
9 which for the U.S. which is 06003, and it
10 documents that is the -- who's the beneficial
11 owner and what the reclaim request concerns,
12 and the account number.
13   And then there's document 6161,
14 which is a -- it's a document stating the
15 country of residence for tax purposes. And
16 there's further documentation -- yes, there's
17 also -- I'll start from the beginning.
18   So there's a dividend credit
19 advice. It's issued by a bank or custodian.
20 So this is a third party. And this refers to
21 the U.K., but it's also applied generally.
22   In our case, it's from the U.K.,
23 but it could be from a custodian in any
24 country.
25   MR. WEINSTEIN: So Alan, just

Page 38

1  before the next question, two things.  I
2  think earlier in his answer, there was a
3  reference to a Form 6 -- the interpreter said
4  Form 6161.  I think Mr. Ekstrand may have
5  said Form 6166, but we can ask him.
6          And then, if I can, I just want
7  to -- and if you can interpret this, I want
8  to ask Mr. Ekstrand if he can, if his answer
9  is long, to try to shorten it into pieces and
10 it will make it easier to get the translation
11 correct.  If they go long, it's harder for
12 her to recall exactly what you said.
13     A    Yes, I misunderstood that.  It is
14 Form 6166 we're talking about.
15     Q    Let's turn to the form you
16 mentioned, which is at Exhibit 3016.
17          (Above-mentioned document marked
18 for Identification.)
19          THE INTERPRETER:  Did you say 3016
20 or 3060?
21          MR. SCHOENFELD:  3-0-1-6.
22     Q    Do you have that exhibit in front
23 of you, Mr. Ekstrand?
24     A    Yes.
25     Q    Okay.  Are you familiar with this

Page 39

1  form?  Is this the form -- sorry.
2          Are you familiar with this form?
3     A    Yes.
4     Q    And is this the form you referenced
5  as the English language form for dividend
6  reclaim submissions?
7     A    Yes.
8     Q    And so English-speaking applicants
9  for dividend withholding tax refunds were
10 required to submit this form to SKAT,
11 correct?
12     A    Yes.
13     Q    Was this the form that was in
14 effect during the entire time period, 2012
15 through 2015?
16     A    I'm not quite certain whether it
17 was this.  But there was a two-page version,
18 which might have been used in 2012, but it's
19 the same information that has to be stated.
20     Q    So were any changes made to the
21 requirements for submitting a dividend
22 withholding tax refund application during the
23 period 2012 through 2015?
24     A    No.
25     Q    Okay.  And before -- before

Page 40

1  approving refunds, SKAT reviewed the
2  information provided on this form, correct?
3     A    Yes.
4     Q    Was Mr. Nielsen able to read and
5  understand English?
6          MR. WEINSTEIN:  Objection to form.
7     A    It's difficult for me to answer
8  what Sven Neilsen was able to do in terms of
9  English, but as he was processing these
10 claims, we must assume that he was able to
11 understand them.
12     Q    Why do you we have to assume that?
13     A    Because he wouldn't be able to
14 process these claims if he doesn't know what
15 they say.
16     Q    Well, you thought Mr. Nielsen was
17 incompetent, correct?
18          THE INTERPRETER:  Did you say --
19          MR. SCHOENFELD:  Incompetent.
20          MR. WEINSTEIN:  Objection to form.
21     A    Incompetent?  I don't remember
22 saying that.
23     Q    Mr. Nielsen's in jail right now,
24 correct?
25     A    Yes, it's correct that he's got

Page 41

1  a -- got a prison penalty.
2     Q    For crimes relating to the
3  processing of dividend withholding tax,
4  correct?
5          MR. WEINSTEIN:  Objection.  And you
6  prefaced many questions saying you're talking
7  about a period of 2012 to 2015.  So just to
8  be clear, are you asking about that period of
9  time in that question?
10     Q    Mr. Ekstrand, do you know why
11 Mr. Nielsen is in prison?
12     A    I know that he has a judgment and
13 that he's in prison, but I don't know
14 exactly, precisely, the grounds for the
15 judgment.
16          But I know that he did have a
17 concern that he received some money and that
18 he contributed to fraud.
19     Q    And was that fraud in connection
20 with dividend withholding tax refunds?
21     A    Yes.
22     Q    Was the process for reviewing
23 dividend withholding tax refund applications
24 written down anywhere for the period 2012 to
25 2015?

Page 74

1  basis without withholding, correct?
2       MR. WEINSTEIN: Objection to form.
3       THE INTERPRETER: Can I just ask
4  you to repeat the question, please? That the
5  U.S. pension plan --
6       Q    A U.S. pension plan owning shares
7  in a Danish company couldn't require that
8  company to pay its dividend on a gross basis
9  without withholding, correct?
10      MR. WEINSTEIN: Objection.
11      A    No. And maybe we just need to
12 understand the process because it is not the
13 company handling the payment. So -- and we
14 need to understand the process.
15           This is not handled by
16 VP Securities. The company itself are the
17 ones who would hold the amount that they will
18 pay as dividends.
19           Subsequently, VP Securities will
20 make a calculation to see how much is to be
21 paid in dividend and how much is to be
22 withhold for taxes. And then, subsequently,
23 the funds will be paid out to the relevant
24 parties as well and the taxes will be
25 withheld.

Page 75

1            And the relevant dividend
2  recipients are the ones that are known to VP.
3       Q    A U.S. pension plan can't say to
4  the company, the Danish company issuing the
5  dividend, "I don't want to deal with the
6  refund process, just pay me a gross
7  dividend," correct?
8       MR. WEINSTEIN: Objection to form.
9       A    No.
10      Q    No, it can't, correct?
11      A    No, it cannot.
12      Q    Okay. So in this case, SKAT
13 received the defendant's refund applications,
14 right?
15      A    Yes.
16      Q    And SKAT reviewed those
17 applications, right?
18      A    Yes.
19      Q    And SKAT made the decision to pay
20 out withheld dividend tax to the pension plan
21 in each of these cases, correct?
22      A    Yes. SKAT went through the
23 documentation that we have received.
24           And upon this review, we have
25 decided to refund the amounts.

Page 76

1       Q    And SKAT determined that each
2  claimant was subject to a double taxation
3  treaty, correct?
4       A    Yes. Because the claimant has
5  included documentation as to where they are
6  taxable, that they are domiciled in the U.S.
7  and are obligated to pay taxes in the U.S.
8       Q    I think you testified earlier that
9  there's an operative definition of
10 "beneficial owner" within SKAT.
11           Is that right?
12      A    What I said was that you had to be
13 the rightful owner of the shares in order to
14 claim a refund. But one of the conditions
15 also is that you, in actuality, are domiciled
16 at a location where we have a double taxation
17 agreement so that there is taxes to refund.
18      Q    Right. I'm focused on this
19 question of the rightful owner.
20           I believe you testified earlier
21 that there's a definition that SKAT applies
22 to determine whether someone is the rightful
23 beneficial owner of the dividends for
24 purposes of processing these refund
25 applications, correct?

Page 77

1       MR. WEINSTEIN: Objection to form.
2  Misstates his testimony.
3       A    So as I mentioned earlier, we have
4  a -- legal guidelines, including the
5  definition. And I also said earlier that if
6  you want an elaboration of the concept
7  "beneficial owner," I'm not the right person
8  to ask.
9       Q    But in approving the refund claims,
10 SKAT determined that the claimant was a
11 beneficial owner under SKAT's guidelines for
12 determination of who's the beneficial owner,
13 correct?
14      A    The control is performed by SKAT of
15 the documentation that the person in question
16 is the beneficial owner. And why would we
17 then think otherwise, since we receive a
18 declaration to that effect as well as
19 documentation of the domicile of the entity
20 in question?
21           And we also received dividend
22 credit advice saying that the entity in
23 question has received a dividend, and that
24 there is -- and that taxes have been
25 withheld.

Page 134

1  for Identification.)
2      Q    So Mr. Ekstrand, tell me when
3  you're there.
4      A    Yes, I'm there.
5      Q    Okay.  Have you seen this document
6  before?
7      A    Yes.
8      Q    What is it?
9      A    This is an early warning on stock
10 lending.
11     Q    Mr. Ekstrand, my understanding was
12 that this is a response to an early warning,
13 not the early warning itself.
14          Do I have that right?
15     A    Correct.
16     Q    And the reply comes from the
17 Ministry of Taxation, correct?
18     A    Yes.
19     Q    And the two early warnings it
20 addresses come from within SKAT, right?
21 There's a March 27, 2015 warning from the
22 large companies division and a July 7, 2015
23 warning from the Jura, SKAT's legal
24 authority, correct?
25          THE INTERPRETER:  The second date

Page 135

1  is July 7th?
2          MR. SCHOENFELD:  Correct.
3      A    Correct.
4      Q    Did you play any role in drafting
5  or approving this reply document?
6      A    Not at all.
7      Q    What is an "early warning?"
8      A    So an early morning is something
9  that you prepare if it comes to your
10 knowledge that there is the possibility of an
11 unforeseen effect of legislation that has
12 come into force.
13     Q    And can you describe, based on your
14 familiarity with this document, what the two
15 early warnings at issue here were disclosing?
16     A    So as far as I remembered, there
17 were some problematic registrations within
18 VP, which means that VP did not necessarily
19 report the beneficial owner of the share.
20          And, for example, that means that
21 if I own shares and then I lend them to you,
22 then they will be registered with your
23 custodian bank.  They will then be
24 registered -- I will lend them to you.
25          They will then be registered with

Page 136

1  your custodian bank and therefore, they will
2  be registered as owned by you.
3      Q    So the upshot of the early warnings
4  was that as a result of securities lending in
5  the market, SKAT wasn't receiving accurate
6  information about who owned securities.
7          Is that right?
8          MR. WEINSTEIN:  Objection to form.
9      A    Yes.  You can say that because VP
10 did not have the possibility to check a box
11 saying that this was stock lending.
12     Q    And so the large companies division
13 shares this concern on March 27, 2015,
14 correct?
15     A    Yes.
16     Q    And the response from the Ministry
17 of Taxation comes six months later, correct?
18     A    Yes.
19     Q    Is anything done in those six
20 months to address the issue that the large
21 companies division raised?
22     A    Not to my knowledge, no.  But
23 the -- the answer to this early warning is
24 quite clear, which is that you have to be the
25 beneficial owner in order to claim a refund.

Page 137

1      Q    So on Page 10 of the reply, do you
2  see the paragraph beginning "Som svar?"
3      A    Yes.
4      Q    And you see the last sentence of
5  the paragraph beginning "Det er?"
6      A    Yes.
7      Q    And am I correct that what the
8  Ministry is saying there is that it's the
9  view of the Ministry of Taxation that in
10 situations where the borrower has resold the
11 securities in question to a third party, that
12 the third party becomes the beneficial owner
13 of the dividends?
14     A    Correct.  Exactly as I said
15 earlier.
16     Q    And so that's an accurate statement
17 of SKAT's policy towards beneficial ownership
18 in these circumstances?
19     A    This is how the rules are.
20     Q    SKAT's website says the same thing
21 to taxpayers, correct?
22     A    I don't -- I have not seen that for
23 myself.
24     Q    Did you review the website in
25 preparation for today's deposition as a

Page 146

1        MR. WEINSTEIN:  Objection to form.
2     A    Well, that seems quite a
3  theoretical question, because that situation
4  should not occur as the shares, at that
5  point, would be -- should be with the buyer's
6  custodian.
7     Q    Okay.  We've been talking about the
8  fact that the bearer of shares is entitled to
9  a dividend if they buy the share before the
10 dividend is declared.
11        A purchaser is entitled to the
12 reclaim even if they purchase the share a
13 nanosecond before the end of the day on which
14 the dividend is declared, correct?
15        THE INTERPRETER:  So can I ask you
16 to repeat the question?
17        MR. SCHOENFELD:  Sure.
18     Q    Let me ask the question this way.
19        There's no minimum amount of time a
20 stockholder has to own shares in order to be
21 entitled to a dividend, correct?
22        MR. WEINSTEIN:  Objection.
23     A    No, there's no minimum time.  As
24 long as there's a proper business like this
25 of the purchase, you can buy right up until

Page 147

1  the general meeting.
2     Q    And between 2012 and 2015, SKAT
3  didn't say that in order to own shares, the
4  settlement date had to occur on or before the
5  date on which the dividend distribution is
6  decided at the general meeting, correct?
7        MR. WEINSTEIN:  Objection to form.
8     A    So you need to buy the share, at
9  the latest, on the day of the general
10 meeting.
11     Q    Does settlement need to occur as of
12 the general meeting?
13     A    No.  Because in Denmark, shares are
14 traded with T plus 2, and I think this is the
15 norm for whatever shares are traded, which
16 means that this is the trading date plus 2,
17 which is when the settlement takes place.
18        This is why the record date is two
19 days after the general meeting, because then
20 you are sure that the trading has been
21 settled within the system.
22     Q    Okay.
23        MR. SCHOENFELD:  We've been going
24 about an hour.
25        Shall we take a short break?

Page 148

1        MR. WEINSTEIN:  Sure.
2        VIDEO OPERATOR:  Stand by.  The
3  time is 1:09 p.m. New York time.  We're going
4  off the record.
5        (Brief recess taken.)
6        VIDEO OPERATOR:  The time is
7  1:23 p.m. New York time, and we're back on
8  record.
9     Q    Mr. Ekstrand, a company that
10 declares a dividend pays that dividend on the
11 dividend date based on VP records reflecting
12 who the owner of record is as of the record
13 date.
14        Is that correct?
15     A    So it is correct that -- that the
16 dividends are declared based on VP
17 registration of where the shares are located
18 with the custodian, where the shares are with
19 what custodian.
20     Q    As of the record date, correct?
21     A    So the custodian receiving the
22 dividend is the custodian where the shares
23 are located on the record date, which is not
24 necessarily with the beneficial owner.
25     Q    It's with the legal owner, correct?

Page 149

1        MR. WEINSTEIN:  Objection to form.
2     A    With the civil law owner, to my
3  understanding.
4     Q    Okay.  And if I purchase shares, I
5  become the owner of record, the civil owner,
6  on settlement date, correct?
7        MR. WEINSTEIN:  Objection.  And to
8  the extent these questions are requesting him
9  for, you know, a legal analysis, we object
10 and he's not answering in a 30(b)(6)
11 capacity.
12     Q    You can go ahead and answer.
13     A    So as I said, I'm not necessarily
14 legally -- legal -- I do not necessarily have
15 any legal knowledge, but I would need to know
16 the date on which he purchased the share.
17     Q    Why do you need to know the date on
18 which he purchased the share?
19        MR. WEINSTEIN:  Objection to form.
20     A    Well, you were asking me about the
21 record date, so maybe I misunderstood the
22 question.
23        Maybe you could rephrase?
24     Q    Sure.
25        It's on the settlement date that a

Page 154

1 capital gains tax question --
2    A    So I don't think that there is a
3 simple answer to this question. It depends
4 on what kind of investor he is.
5         Are we talking about a private
6 individual? Is this somebody operating a
7 business?
8         But anyway, if there is a capital
9 gain, this is subject to taxation. In the
10 most general terms, if there is a capital
11 gain, there will be some sort of taxation
12 depending on whether this is capital income,
13 whether this is categorized as private income
14 or company income.
15   Q    Would the investment question be
16 required to report these two transactions to
17 be securities?
18        MR. WEINSTEIN: Objection. And
19 again, well beyond the scope of any capacity
20 he's here to testify to.
21   A    So, in general, VP would have
22 access to this information through custodian
23 registrations. But as regard the procedures,
24 VP Securities -- that is probably a question
25 more suited for somebody working for

Page 155

1 VP Securities.
2    Q    Could these two transactions be
3 netted against each other?
4         MR. WEINSTEIN: Objection to form.
5 For what purpose now?
6         I don't even understand what the
7 question is getting at.
8    Q    Mr. Ekstrand, do you understand
9 what the question is getting at?
10        VIDEO OPERATOR: I'm sorry. I'm
11 really --
12        THE INTERPRETER: I don't
13 understand the question. I can't translate
14 the question because I don't understand it.
15 Can I ask you to rephrase?
16        MR. SCHOENFELD: Sure.
17   Q    There's a purchase at 100 kroner
18 per share at 10:00 in the morning, and a sale
19 at 130 per share in the afternoon.
20        For purposes of reporting these
21 shares, can they be netted -- these
22 transactions, can they be netted against each
23 other?
24        MR. WEINSTEIN: Objection to form.
25 Beyond the scope of any capacity that this

Page 156

1 witness is here to testify in.
2         THE INTERPRETER: And I heard your
3 question. My problem as the translator is I
4 don't know how to translate the word
5 "netted."
6         MR. WEINSTEIN: Alan, just let the
7 record reflect that Danish counsel has
8 conferred. I think they agree on what the
9 word should be in Danish, so we're going to
10 have the interpreter use that word.
11   A    The two -- the two purchases at 100
12 and 130 cannot be netted against one another.
13 So I need -- if that's not the answer, I need
14 for you to elaborate on your question.
15   Q    Can you explain why the two can't
16 be netted against each other?
17        MR. WEINSTEIN: Same objection as
18 to form.
19   A    I don't see how the two can be
20 netted against each other. Because if the
21 purchase is made at 100 and the sale is made
22 at 130, these two elements mean that there is
23 a profit or a loss to be made.
24        So the two -- I can't see how the
25 two can be netted against each other.

Page 157

1    Q    Well, they would cash out to 30,000
2 kroner, right?
3         MR. WEINSTEIN: Objection to form.
4 Same objections as before.
5    A    Well, that is what I'm saying. If
6 you buy at 100 and you sell at 130, then that
7 is 30 per however many shares you have
8 purchased.
9    Q    Could an account holding
10 institution net trades in the same stock by
11 merging trades within their institution into
12 fewer trades for reporting to a central
13 clearing counterparty?
14        MR. WEINSTEIN: I'm going to guess
15 that's going to be a tough one to translate
16 as quick as you just did that. But before we
17 get there, objection. He's not here as a
18 securities law expert, a securities industry
19 expert, or any other capacity other than the
20 30(b)(6) topics in the notice that the judge
21 allowed, and his factual capacity of what he
22 did when he was at SKAT.
23        This is far beyond the field.
24   Q    You can go ahead and answer.
25        THE INTERPRETER: I'm going to need

CONFIDENTIAL
Christian Ekstrand - May 6, 2021

46 (Pages 178 to 181)

## Page 178

1      C E R T I F I C A T E
2      I, CHARLENE FRIEDMAN, a Certified Court
3  Reporter and Notary Public, qualified in and for
4  the State of New Jersey do hereby certify that
5  prior to the commencement of the examination
6  CHRISTIAN EKSTRAND was duly sworn by me to testify
7  to the truth the whole truth and nothing but the
8  truth.
9      I DO FURTHER CERTIFY that the foregoing
10 is a true and accurate transcript of the testimony
11 as taken stenographically by and before me at the
12 time, place and on the date hereinbefore set forth.
13     I DO FURTHER certify that I am neither a
14 relative of nor employee nor attorney nor counsel
15 for any of the parties to this action, and that I
16 am neither a relative nor employee of such attorney
17 or counsel, and that I am not financially
18 interested in the action.
19
20
21
22     CHARLENE FRIEDMAN, RPR, CRR, CCR of the
23     State of New Jersey
24     License No:  30XI00204900
25     Date:  May 6, 2021

## Page 179

1            LAWYER'S NOTES
2  PAGE  LINE
3  ____  ____    _____
4  ____  ____    _____
5  ____  ____    _____
6  ____  ____    _____
7  ____  ____    _____
8  ____  ____    _____
9  ____  ____    _____
10 ____  ____    _____
11 ____  ____    _____
12 ____  ____    _____
13 ____  ____    _____
14 ____  ____    _____
15 ____  ____    _____
16 ____  ____    _____
17 ____  ____    _____
18 ____  ____    _____
19 ____  ____    _____
20 ____  ____    _____
21 ____  ____    _____
22 ____  ____    _____
23 ____  ____    _____
24 ____  ____    _____
25 ____  ____    _____

## Page 180

1          DEPOSITION ERRATA SHEET
2
3
4
5
6
7     DECLARATION UNDER PENALTY OF PERJURY
8      I declare under penalty of perjury
9   that I have read the entire transcript of
10  my Deposition taken in the captioned matter
11  or the same has been read to me, and
12  the same is true and accurate, save and
13  except for changes and/or corrections, if
14  any, as indicated by me on the DEPOSITION
15  ERRATA SHEET hereof, with the understanding
16  that I offer these changes as if still under
17  oath.
18
19
20
21     Signed on the _____ day of
22     _____, 20____
23
24     _____
25           CHRISTIAN EKSTRAND

## Page 181

1          DEPOSITION ERRATA SHEET
2  Page No._____Line No._____Change to:_____
3  _____
4  Reason for change:_____
5  Page No._____Line No._____Change to:_____
6  _____
7  Reason for change:_____
8  Page No._____Line No._____Change to:_____
9  _____
10 Reason for change:_____
11 Page No._____Line No._____Change to:_____
12 _____
13 Reason for change:_____
14 Page No._____Line No._____Change to:_____
15 _____
16 Reason for change:_____
17 Page No._____Line No._____Change to:_____
18 _____
19 Reason for change:_____
20 Page No._____Line No._____Change to:_____
21 _____
22 Reason for change:_____
23
24 SIGNATURE:_____DATE:_____
25           CHRISTIAN EKSTRAND

CONFIDENTIAL
Christian Ekstrand - May 6, 2021

47 (Page 182)

Page 182

```
 1              DEPOSITION ERRATA SHEET
 2   Page No._____Line No._____Change to:_____
 3   _____
 4   Reason for change:_____
 5   Page No._____Line No._____Change to:_____
 6   _____
 7   Reason for change:_____
 8   Page No._____Line No._____Change to:_____
 9   _____
10   Reason for change:_____
11   Page No._____Line No._____Change to:_____
12   _____
13   Reason for change:_____
14   Page No._____Line No._____Change to:_____
15   _____
16   Reason for change:_____
17   Page No._____Line No._____Change to:_____
18   _____
19   Reason for change:_____
20   Page No._____Line No._____Change to:_____
21   _____
22   Reason for change:_____
23
24   SIGNATURE:_____DATE:_____
25              CHRISTIAN EKSTRAND
```