June 14, 2021

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, No. 18-md-02865-LAK (S.D.N.Y.)

Dear Judge Kaplan:

Pursuant to the Court's Pretrial Order No. 22 (ECF No. 604), Defendants[1] respectfully submit this reply to SKAT's submission regarding its failure to retain copies of documents submitted to the Danish Commission of Inquiry on Taxation (the "Commission").

In light of SKAT's admission that it has an "index of the files that were produced" and a copy of those files, Defendants renew their motion to compel SKAT to produce documents submitted to the Commission. The documents are relevant—the Commission's investigation into SKAT's mismanagement of dividend tax refunds covers key material relevant to Defendants' defenses beyond the remit of the Bech-Bruun investigation—and SKAT has overstated the burdens it faces in producing these documents. To the extent that SKAT faces any such burdens, they will be far from undue.

SKAT's representations about these documents have been inconsistent. In its initial response to the request for "all documents [SKAT] transmitted to the Commission," SKAT wrote that it "cannot comply" "because it does not have a copy of that set of materials." Opp. 1-2, ECF No. 602. But SKAT now admits that it possesses "an index of the files that were produced" and "stores the original documents in its IT systems"—admissions that only came following a Court order. Ahlefeld-Engel Decl. ¶¶ 12-13, ECF No. 617-1. Contrary to its initial representation to the Court that it "cannot comply" with the request because it "does not have a copy," SKAT quite obviously *can* comply and it *does* have the documents. It can use its preexisting index to identify and access the documents it now admits it possesses. SKAT buries these newly disclosed facts in its declaration because they reveal that any "burdens" SKAT faces will be far less onerous than SKAT previously suggested.

---

[1]     This motion relates to all cases in this multi-district litigation.

### 1. The Commission documents are relevant and not duplicative.

The Commission is investigating "SKAT's payment of refund of dividend tax," the precise conduct relevant to Defendants' defenses, including contributory negligence and statute of limitations. Ex. 2 to Ltr. Mot. to Compel, ECF No. 601-2. SKAT does not dispute this. As Defendants previously explained, the Commission will determine whether negligence or malfeasance by SKAT is responsible for its purported losses. The documents SKAT has submitted to the Commission are thus relevant to defenses based on SKAT's mismanagement of requests for and payment of dividend tax refunds.

The Commission's remit is far broader than the Bech-Bruun investigation, which SKAT incorrectly contends renders the Commission documents duplicative. ECF No. 617 at 2. The Commission documents are likely to be materially different in four ways. *First*, the Bech-Bruun investigation only encompassed documents created before December 1, 2017, yet the Commission investigation will cover material produced at least as of June *2019*, and likely later.[2] During the period from December 2017 to at least June 2019, SKAT continued its internal efforts to learn more about its perceived control deficiencies and develop new policies for administration of dividend tax refunds. Just as important, in 2019 SKAT reversed many of its decisions to previously pay Defendants' refunds. Given these ongoing developments, SKAT would have discovered and generated new documents on dividend tax refunds during this period, which will be central to the defenses here and omitted from prior investigations. *Second*, the Bech-Bruun investigation concentrated mainly on the period from 2010 to 2015, while the Commission will investigate relevant matters before 2010 and up to September 2017. Ex. 2 to Ltr. Mot. to Compel, ECF No. 601-2. *Third*, the Bech-Bruun investigation was limited to topics that would not compromise any criminal investigations, while the Commission is no longer so cabined. *Id*. *Finally*, as SKAT puts it, "under the Danish Commission of Inquiry Act SKAT *had no choice* but to provide the Commission with the documents it requested," so SKAT was likely much more forthcoming with the Commission than with the private attorneys exploring its policies. ECF No. 617 at 2 (emphasis added).

There are other indicia of gaps in SKAT's productions that suggest it has not given Defendants all the documents it produced to the Commission that are relevant to this case. For instance, SKAT produced fewer than 20 documents dated in the first nine months of 2019 and only four documents, in total, for which Dorthe Frederiksen was the custodian, even though she was a signatory to many refund cancellations. And while SKAT previously claimed that it was unaware that transcripts of testimony before the Commission existed (Ex. 1 to Ltr. Mot. to Compel at 40-41, ECF No. 601-1), and declined to produce such transcripts on that basis, SKAT employee Bo Daugaard testified in his deposition last week that he has a transcript of his testimony before the Commission, and it is on SKAT's email servers.

---

[2] Exhibit 1, Translation of https://kommissionenomskat.dk/nyheder/orientering-nr-8-oktober-2019.3518.html; Exhibit 2, Translation of https://kommissionenomskat.dk/nyheder/orientering-nr-9-december-2019.3519.html.

SKAT admits that the large majority of topics for which it submitted documents to the Commission "relate to dividend withholding tax," despite its intimations that its submissions are overinclusive. Ahlefeld-Engel Decl. ¶ 8. If anything, SKAT appears to undercount the topics relevant to Defendants' defenses here by suggesting that only topics expressly addressing dividend withholding tax refunds are relevant. SKAT fails to count various topics that cover issues such as "general efficiency measures" and are indeed relevant to multiple defenses because attempts at "efficiency" are one way SKAT mismanaged dividend tax refunds. Ahlefeld-Engel Decl. ¶ 4.

SKAT's citation to *Alaska* is unconvincing—in that case, the requesting party *did* receive what Defendants request here: copy sets of documents produced to government investigators. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *1-2 (S.D.N.Y. Nov. 16, 2016). The documents that were the subject of the motion in *Alaska* were the defendants' communications with regulators and white papers. The court declined to order production, citing to their "marginal utility," precisely because the plaintiffs there already had a copy of the documents produced to an investigative body. SKAT's analogy thus falters out of the gate.

### 2. Production of the Commission documents is proportional to the needs of the case.

Producing the Commission documents is necessary to Defendants' development of their defenses. Now that SKAT has changed its story and disclosed that it *does* possess the documents and an index cataloging them, SKAT complains of two burdens. Neither is undue.

SKAT first complains that Deloitte, SKAT's IT vendor, will need roughly a week of four employees' time to compile the set of documents. But SKAT was under an obligation to retain a set of the materials because at the time those productions were made it had already initiated litigation in the United States.[3] SKAT should have known that these precise documents would be relevant in this litigation. SKAT's purported burden is thus "self-made" and it "would be unfair to allow [SKAT] to derive a benefit from its poor recordkeeping." *Sasikumar v. Brooklyn Hosp. Ctr.*, 2011 WL 1642585, at *3 (E.D.N.Y. May 2, 2011). In any event, any associated cost is a mere drop in the bucket of the roughly $400 million SKAT will spend on lawsuits about dividend tax refunds, including over $100 million in 2021 alone.[4] As Justice Baker wrote after dismissing SKAT's litigation in the UK, "[t]he litigation was brought and aggressively pursued,

---

[3]     SKAT's citation to various Danish and European data privacy standards to explain why it did not retain a copy set is unpersuasive where it has availed itself of the United States court system and knew it would likely be asked to turn over a copy set of its productions to the Commission.

[4]     Exhibit 3, Richard Crump, *Denmark Hit With £46M Legal Bill In Failed UK Cum-Ex Suit*, Law360, June 9, 2021, https://www.law360.com/tax-authority/articles/1392335/denmark-hit-with-46m-legal-bill-in-failed-uk-cum-ex-suit.

by a sovereign state with a willingness to expend effectively unlimited resources," and "[i]t was litigation that was politically as well as financially motivated."[5]

SKAT next grumbles that it must review the Commission documents for relevance and privacy concerns. But SKAT was previously content to dump the entire Bech-Bruun database on Defendants, even though Defendants did not specifically request it and it is teeming with irrelevant documents—requiring *Defendants* to expend unnecessary time and resources sorting wheat from chaff.[6] SKAT was apathetic when Defendants objected to this overbreadth. There is no need to screen for relevance because Defendants have requested all the Commission documents as relevant to various defenses. The Protective Order addresses any privacy concerns because it expressly protects foreign confidential data and covers the EU General Data Protection Regulation, the Danish Data Protection Act, and other relevant laws. As with SKAT's gripes about putting back together the sets it deleted, the cost of any pre-production review SKAT voluntarily imposes on itself will be a small sliver of the costs incurred by SKAT and Defendants in this sprawling litigation. If SKAT has already produced or reviewed any of these documents, it can de-duplicate the Commission documents to eliminate the cost of any repeated review, as SKAT acknowledges. Ahlefeld-Engel Decl. ¶ 14. Ultimately, not only are any costs comparatively minor, but they are also merely the costs of any ordinary production of relevant documents. Because SKAT has failed to show that its current productions contain all relevant documents, it cannot avoid its discovery obligations by complaining about the ordinary costs of production.

In short, the risk of Defendants not receiving Commission documents relevant to their defenses outweighs any potential cost to SKAT of its basic discovery duties.

Accordingly, Defendants respectfully request that the Court grant their renewed motion.

       Respectfully submitted,

| | |
|---|---|
| */s/ Sharon L. McCarthy* | */s/ Alan E. Schoenfeld* |
| Sharon L. McCarthy | Alan E. Schoenfeld |
| Kostelanetz & Fink LLP | Wilmer Cutler Pickering Hale and Dorr LLP |

Cc:    All counsel of record (via ECF)

---

[5] Exhibit 4, *Skatteforvaltningen v. Solo Capital Partners LLP*, No. CL-2018-000297, [2021] EWHC 1222 (Comm) ¶ 18(iii) (May 11, 2021).

[6] SKAT states that Defendants now "ask SKAT to reinvent the wheel a third time." ECF No. 617 at 3. Defendants ask no such thing. Defendants had nothing to do with the Commission's or Bech-Bruun's requests for documents, nor should Defendants be faulted for requiring SKAT to engage in comprehensive discovery where it has filed almost 200 cases.