UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND LITIGATION<br><br>Pertains to case numbers:<br><br>18-CV-5053, 18-CV-9797, 18-CV-9836, 18-18-CV-9837, 18-CV-9838, 18-CV-9839, 18-CV-9840, 18-CV-9841, 18-cv-10100 | Case No. 1:18-MD-2865 (LAK) |

**THIRD-PARTY DEFENDANT ED&F MAN CAPITAL MARKETS, LTD.'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTIONS TO DISMISS THE THIRD-PARTY COMPLAINTS OF
<u>ACER INVESTMENT GROUP, LLC, DARREN WITTWER, AND ROBERT CREMA</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................................... 1

ARGUMENT ....................................................................................................................................... 1

I. ED&F Is Not Subject To Personal Jurisdiction ................................................................. 1

    A. Third-Party Plaintiffs Have Failed To Demonstrate Personal Jurisdiction ............ 1

    B. ED&F Has Not Waived Its Personal Jurisdiction Defense ..................................... 3

II. Third-Party Plaintiffs' Claims May Not Be Brought Under Rule 14 ................................. 5

III. Third-Party Plaintiffs Fail To State A Claim Against ED&F ............................................. 5

    A. Fraud And Negligent Misrepresentation .................................................................. 5

    B. Equitable Indemnity .................................................................................................. 7

    C. Breach Of Fiduciary Duty ......................................................................................... 8

    D. Promissory Estoppel And Unjust Enrichment ......................................................... 8

    E. Economic Loss Rule .................................................................................................. 9

    F. Apportionment Of Fault .......................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Cranston*,
  132 F.2d 631 (2d Cir. 1942) ............................................................................................... 7

*CE Providers v. Stearns Bank*,
  No. 2:18-CV-100, 2018 WL 3448335 (D. Utah July 17, 2018) ............................................ 10

*Cerveny v. Aventis, Inc.*,
  No. 2:14-CV-545-DB, 2017 WL 5897406 (D. Utah Nov. 29, 2017) ....................................... 6

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) .................................................................................................. 3

*China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*,
  882 F. Supp. 2d 579 (S.D.N.Y. 2012) .................................................................................. 4

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ................................................................................................ 4

*Cont'l Bank, N.A. v. Meyer*,
  10 F.3d 1293 (7th Cir. 1993) ............................................................................................... 4

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Queen Carpet Corp.*,
  5 F. Supp. 2d 1246 (D. Utah 1998) .................................................................................... 10

*Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*,
  127 F. Supp. 3d 1228 (D. Utah 2015) .................................................................................. 9

*Hack v. Stang*,
  No. 13-cv-5713, 2014 WL 4652596 (S.D.N.Y. Sept. 18, 2014) ............................................ 3

*Hamilton v. Atlas Turner, Inc.*,
  197 F.3d 58 (2d Cir. 1999) .................................................................................................. 4

*In re Houbigant, Inc.*,
  914 F. Supp. 964 (S.D.N.Y. 1995) ....................................................................................... 4

*In re Mobile Telecom. Techs. LLC*,
  243 F. Supp. 3d 545 (D. Del. 2017) ..................................................................................... 3

*In re Platinum & Palladium Antitrust Litig.*,
  No.14-CV-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) .................................... 1

*In re Refco Secs. Litig.*,
  759 F. Supp. 2d 301 (S.D.N.Y. 2010) .................................................................................. 9

*In re SKAT Tax Refund Scheme Litig.*,
  No. 18-md-2865 (LAK), 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020).................................... 7

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) ............................................................................................... 2

*Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*,
  866 F. Supp. 682 (E.D.N.Y. 1994) ...................................................................................... 5

*Kantlehner v. United States*,
  279 F. Supp. 122 (E.D.N.Y. 1967) ...................................................................................... 8

*Keller v. A.O. Smith Harvestore Prods., Inc.*,
  819 P.2d 69 (Colo. 1991)................................................................................................... 10

*Klinghoffer v. S.N.C. Achille Lauro*,
  937 F.2d 44 (2d Cir. 1991) .................................................................................................. 3

*KTM Health Care, Inc. v. SG Nursing Home, LLC*,
  436 P.3d 151 (Utah Ct. App. 2018) ..................................................................................... 9

*Level 3 Commc'ns LLC v. Liebert Corp.*,
  535 F.3d 1146 (10th Cir. 2008) ......................................................................................... 10

*Mann v. Am. W. Life Ins. Co.*,
  586 P.2d 461 (Utah 1978)................................................................................................ 8, 9

*MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*,
  886 F.2d 1249 (10th Cir. 1989) ........................................................................................... 8

*Nickerson Co. v. Energy W. Mining Co.*,
  No. 20090221-CA, 2009 WL 4681778 (Utah Ct. App. Dec. 10, 2009).................................... 9

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) .................................................................................................. 2

*Perry v. Pioneer Wholesale Supply Co.*,
  681 P.2d 214 (Utah 1984)................................................................................................... 7

*Reiersen v. Smith*,
  No. 150900184, 2015 WL 11185811 (Utah Dist. Ct. June 17, 2015) .................................. 10

*Sokolow v. Palestine Liberation Org.*,
  583 F. Supp. 2d 451 (S.D.N.Y. 2008) ................................................................................. 3

*Sullivan v. Scoular Grain Co. of Utah*,
  853 P.2d 877 (Utah 1993)................................................................................................. 10

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
   210 F.3d 1207 (10th Cir. 2000) .................................................................................... 10

*Vicidiem, Inc. v. Christensen*,
   No. 2:19-CV-0358-DBB-DBP, 2020 WL 7027869 (D. Utah. Nov. 30, 2020) ......................... 7

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...................................................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(2) ........................................................................................................ 1

Fed. R. Civ. P. 14 ................................................................................................... 1, 5, 7, 10

Fed. R. Civ. P. 9(b) ............................................................................................................. 6

Third-Party Defendant ED&F Man Capital Markets, Ltd. ("ED&F") respectfully submits this reply memorandum of law in further support of its motions to dismiss the Third-Party Complaints of Acer Investment Group, LLC ("Acer"), Darren Wittwer ("Wittwer"), and Robert Crema ("Crema") (together, "Third-Party Plaintiffs").

## PRELIMINARY STATEMENT

The claims asserted by Third-Party Plaintiffs are jurisdictionally, procedurally, and substantively unsound. The claims are jurisdictionally unsound because personal jurisdiction is lacking: Third-Party Plaintiffs plead no facts to support personal jurisdiction, do not challenge ED&F's declaration averring that it conducts no business in the relevant jurisdictions, and have no basis to argue that ED&F forfeited its right to challenge jurisdiction when it moved to dismiss on jurisdictional grounds at its earliest opportunity. The claims are procedurally unsound because Third-Party Plaintiffs have asserted independent torts that are not premised on derivative liability, thus running afoul of Rule 14. And the claims are substantively unsound because Third-Party Plaintiffs fail to allege key elements of their causes of action, going so far as to assert claims for fraud and negligent misrepresentation even while they equivocate as to whether any false statements were made to them at all. Because the claims asserted by Third-Party Plaintiffs are legally defective, the Third-Party Complaints should be dismissed in full.

## ARGUMENT

I. **ED&F IS NOT SUBJECT TO PERSONAL JURISDICTION**

    A. **Third-Party Plaintiffs Have Failed To Demonstrate Personal Jurisdiction**

"It is well established that, on a motion to dismiss pursuant to Rule 12(b)(2), the 'plaintiff bears the burden of demonstrating personal jurisdiction over a person . . . against whom it seeks to bring suit.'" *In re Platinum & Palladium Antitrust Litig.*, No.14-CV-9391-GHW, 2017 WL 1169626, at *39 (S.D.N.Y. Mar. 28, 2017) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*,

1

609 F.3d 30, 34 (2d Cir. 2010)).  The allegations in the Third-Party Complaints do not support personal jurisdiction, and Third-Party Plaintiffs have failed to submit an "averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction," *Id.* at *39 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).  In fact, the declaration submitted by ED&F attesting to the fact that it has conducted no business in the relevant jurisdictions has gone entirely unchallenged.  *See* Decl. of Gary A. Pettit, ECF No. 578.

Unable to put forward any facts in support of their jurisdictional argument, Third-Party Plaintiffs have resorted instead to misleading recharacterizations of their own allegations.  Nowhere, for example, do the Third-Party Complaints allege that ED&F "was aware that Acer was operating out of Utah," Opp. at 14, or that ED&F communicated with the Plans "through Acer's Utah office." *Id*. at 4.  The cited paragraphs allege only that ED&F communicated with the Plans, and provided documents to the Plans, "through Acer."  Acer TPC ¶¶ 11, 17-18, Individuals' TPCs ¶¶ 15-16.  Nothing in these pleadings suggests that ED&F, by communicating "through Acer," subjected itself to personal jurisdiction in Utah.  Indeed, the deposition testimony of Stacey Kaminer—one of two principals of Acer—confirms that Acer's principal place of business was at all relevant times not Utah, but New Jersey or Florida.  *See* Decl. of Neil S. Binder ("Binder Decl.") Ex. A at 385:13-386:5.[1]

Third-Party Plaintiffs also point to tax vouchers suggesting that some of the Plans maintained addresses in Utah, Pennsylvania, or New York.  *See* Opp. at 4.  But the Plans are not parties to these actions, and fortuitous contacts with non-parties do not subject a defendant to

---

[1] Acer's other principal, Crema, lived between New Jersey and Florida, Binder Decl., Ex. A at 386:6-386:17, Acer employees Robert Messina and Alan Goldman did not live in Utah, *id.* at 386:18-387:11, and Acer sent ED&F invoices listing a Florida address.  *Id.* at 387:12-388:22 & Ex. 2524.

personal jurisdiction. *See* ED&F-Acer Mem. 6-7 (ECF No. 577); ED&F-Individuals Mem. 8-9 (ECF No. 574); *Walden v. Fiore*, 571 U.S. 277, 284-286 (2014).[2]

### B. ED&F Has Not Waived Its Personal Jurisdiction Defense

Third-Party Plaintiffs seek to avoid the jurisdictional infirmities in their pleadings by arguing that ED&F forfeited its personal jurisdiction defense. The argument is without merit, for ED&F contested personal jurisdiction at the first opportunity in pre-answer motions to dismiss. *See Hack v. Stang*, No. 13-cv-5713, 2014 WL 4652596, at *2-3 (S.D.N.Y. Sept. 18, 2014).

Nor is it relevant that ED&F has been defending itself against other third-party complaints in separate actions consolidated in this MDL, for personal jurisdiction must be "determined on a case-by-case basis." *Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451, 460 (S.D.N.Y. 2008); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88-89 (2d Cir. 2018) (finding no forfeiture of personal jurisdiction defense even where defendants failed to challenge personal jurisdiction in earlier actions in MDL). Even if ED&F had gone so far as to consent to jurisdiction in another case—and, to the contrary, it has consistently challenged personal jurisdiction—such consent would "extend[] to that case alone" and would "in no way [open ED&F] up to other lawsuits in the same jurisdiction. . . ." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991). Nor can ED&F have waived its personal jurisdiction defenses by participating in MDL discovery at the direction of this Court. *See In re Mobile Telecom. Techs. LLC*, 243 F. Supp. 3d 545, 552 (D. Del. 2017).

Even assuming that ED&F's conduct in other consolidated proceedings were relevant to the jurisdictional inquiry here, such conduct would still not amount to waiver, for ED&F promptly challenged personal jurisdiction in response to the first third-party complaint filed

---

[2] Even if the locations of the underlying Plans were jurisdictionally relevant, this would not avail Crema, for the addresses indicated for the AIG Plan are in Florida or New Jersey. *See* Crema TPC, Ex. B.

3

against it in the MDL. *See* ECF No. 169.[3] ED&F moved thereafter for a protective order to avoid participating in merits discovery in light of its pending motion to dismiss, ECF No. 208, moved for reconsideration after that motion was denied, ECF No. 230, and preserved its jurisdictional defenses in its answers to third-party complaints. *See, e.g.*, ECF No. 280 ¶ 339.

Third-Party Plaintiffs make much of the fact that ED&F filed counterclaims in other proceedings in the MDL, but the filing of those counterclaims did not forfeit ED&F's personal jurisdiction argument *even as to those proceedings*. Although the case law is not unanimous, this Court has concluded that the "better view" is that counterclaims "filed contemporaneously with objections to personal jurisdiction in a responsive pleading should 'be treated as conditional, [their] assertion being hypothecated upon an adverse ruling on the defendant's jurisdictional defenses.'" *China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 591 (S.D.N.Y. 2012) (Kaplan, J.) (citations omitted).[4]

The waiver cases cited by Third-Party Plaintiffs raise starkly different facts. In *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999), the defendant waited "four years"—a stretch of time that included transfers to and from an MDL court, completion of pretrial proceedings, and the scheduling of trial—to argue the personal jurisdiction defense first raised in its answer. *Id.* at 61-62.[5] In contrast, ED&F challenged jurisdiction at every stage and filed no counterclaims in the instant actions. It has not waived its jurisdictional defense.

---

[3] That motion was granted with leave to amend, ECF No. 212, and ED&F renewed its motion to dismiss following amendment of the pleadings, ECF No. 239. The Court denied the later motion on the basis of ED&F's alleged contacts with New York. ECF No. 255.

[4] In *In re Houbigant, Inc.*, 914 F. Supp. 964 (S.D.N.Y. 1995), relied upon by Third-Party Plaintiffs, the defendants not only filed counterclaims, but also introduced "ten additional counterclaim defendants" through their pleadings. *See id.* at 979-80.

[5] *See also Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (defendants "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction"); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 139-41 (2d Cir. 2011) (defendant caused "de facto interlocutory review" by defaulting on defense after receiving adverse 12(b)(2) ruling rather than litigating as ordered).

4

## II. THIRD-PARTY PLAINTIFFS' CLAIMS MAY NOT BE BROUGHT UNDER RULE 14

As explained in ED&F's opening brief, Third-Party Plaintiffs' claims may not be brought under Rule 14. *See* ED&F-Acer Mem. 11-14; ED&F-Individuals Mem. 10-13. Wittwer and Crema do not even argue that their claims of breach of fiduciary duty, promissory estoppel or unjust enrichment are proper under Rule 14; those claims should therefore be deemed abandoned. The claims for fraud and negligent misrepresentation fare no better. Third-Party Plaintiffs recognize that "independent fraud [and negligent misrepresentation] claims seeking separate damages cannot be asserted under Rule 14." Opp. at 20. Indeed, as one of their own cited cases makes clear, "Rule 14 requires that the liability of the third party be *dependent* upon the outcome of the main claim"; such liability may not, as here, "arise out of a separate and independent claim." *Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 686-87 (E.D.N.Y. 1994) (emphasis in original, citations and internal quotation marks omitted).

Third-Party Plaintiffs' unsupported insistence that their claims necessarily depend on SKAT's does not make it so. As set forth in ED&F's opening briefs, all of the claims against ED&F—excepting only the equitable indemnification and apportionment claims—require findings entirely independent of SKAT's claims against Third-Party Plaintiffs. *See* ED&F-Acer Mem. 11-13, ED&F-Individuals Mem. 10-12. As for equitable indemnification and apportionment, those claims fail as a matter of Utah law, *see infra* §§ III.B, F, and Rule 14 cannot salvage substantively deficient causes of action.

## III. THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ED&F

### A. Fraud And Negligent Misrepresentation

To state a claim for fraud or negligent misrepresentation, a plaintiff must in the first instance identify a falsehood. Remarkably, Third-Party Plaintiffs appear unable to take a

position on whether ED&F made any false statements at all.  Third-Party Plaintiffs hedge their bets, referring equivocally to the "supposed falsity" of tax vouchers prepared by ED&F and adding that until those tax vouchers are "proven to be false in this Court, Third-Party Plaintiffs remain entitled to the refunds paid by SKAT." Opp. at 22.  An alleged possibility that the tax vouchers *might* be determined to be false at some future date is insufficient to sustain a claim for fraud or negligent misrepresentation.  And a purported falsehood that is alleged to have no effect on Third-Party Plaintiffs' entitlement to tax refunds is not a *material* falsehood.[6]

Third-Party Plaintiffs also fail meaningfully to address ED&F's arguments that the alleged misrepresentations were neither intended for nor relied upon by them.  Third-Party Plaintiffs have not alleged that they took any particular action as a result of any statement made by ED&F, or that ED&F intended them to take any particular action.  Instead, Third-Party Plaintiffs rely on the vague supposition that ED&F must have "intended the Third-Party Plaintiffs (and many others) to rely on the information in the Tax Vouchers . . . ." Opp. at 22.  Such a generalization falls well short of alleging that a particular false statement was "directed toward the plaintiff and . . . intended to induce the plaintiff to act." *See, e.g., Cerveny v. Aventis, Inc.*, No. 2:14-CV-545-DB, 2017 WL 5897406, at *3 (D. Utah Nov. 29, 2017).

Third-Party Plaintiffs additionally argue that ED&F was motivated to commit fraud, and thus acted with the requisite scienter, because it could "charge the Plans for custody and clearance fees." Opp. at 23.  But the mere claim that a defendant may stand to gain economically from an alleged falsehood does not satisfy the particularized pleading requirements of Rule 9(b).  *See* ED&F-Acer Mem. at 16-17.  Third-Party Plaintiffs' reliance on a prior ruling of this Court is thoroughly misplaced, for while this Court found scienter properly pleaded where

---

[6] In fact, Third-Party Plaintiffs characterize the alleged falsehoods in the tax vouchers as "mistakes." Opp. at 24.

SKAT had described "each defendant's role in the scheme," *see* Opp. at 24 (quoting *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL 7059843, at *9 (S.D.N.Y. Dec. 2, 2020), Third-Party Plaintiffs here plead no "scheme," nor do they plead the role of ED&F—or any individuals within ED&F—in any such scheme.

### B. Equitable Indemnity

Third-Party Plaintiffs do not dispute that their indemnification claims are not cognizable under Utah law, insofar as Third-Party Plaintiffs have not been found liable to SKAT. *See Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984) ("As a general rule, a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, *either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment*." (emphasis added)); *see also Vicidiem, Inc. v. Christensen*, No. 2:19-CV-0358-DBB-DBP, 2020 WL 7027869, at *4 (D. Utah. Nov. 30, 2020) (common law indemnity may not rest on "[p]ossible future liability that could result in a payment someday"). Indeed, Utah allows claims for indemnity to be brought only where *both* the "prospective indemnitee" *and* the "prospective indemnitor" have been found liable to the original plaintiff. *See Perry*, 681 P.2d at 218. Here, not only has ED&F not been found liable to SKAT, but in SKAT's lawsuit against ED&F, which was brought in England, ED&F was found *not liable* to SKAT. *See* Binder Decl. Ex. B.

Third-Party Plaintiffs nevertheless insist that their indemnification claims may stand, maintaining that state law requirements are no barrier in the Rule 14 context. Opp. at 17-18, 25-26. Third-Party Plaintiffs are wrong. Rule 14 does not "give the defendant a recovery which could not be obtained through any remedy available in the [applicable] State Courts," particularly in states, like Utah, that require judgments against both alleged joint tortfeasors as a substantive prerequisite for a cause of action. *Brown v. Cranston*, 132 F.2d 631, 633-634 (2d

7

Cir. 1942) (holding Rule 14 does not allow impleader for contribution when cause of action requires judgment against joint tortfeasors); *see also Kantlehner v. United States*, 279 F. Supp. 122, 124-25 (E.D.N.Y. 1967). The invocation of Rule 14 cannot change the fact that ED&F is not subject to a claim of equitable indemnification as a matter of Utah law.

### C. Breach Of Fiduciary Duty

Wittwer and Crema's breach of fiduciary duty claims are likewise unfounded. For a fiduciary relationship to exist between a broker and its customers, the broker must provide security investment advice or recommend investments to those customers. *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 886 F.2d 1249, 1258 (10th Cir. 1989). Crema and Wittwer do not purport to be customers of ED&F, and they nowhere allege that ED&F recommended any investments to them (or, for that matter, to the Plans). They allege only that they "placed their confidence in ED&F to act in good faith and for the benefit of the Plans." Opp. at 26 (citing Individuals' TPCs ¶ 99). This vague allegation is insufficient to plead a fiduciary relationship.

Relying on the general proposition that contractual parties may owe fiduciary duties to intended third-party beneficiaries, Crema and Wittwer also claim—for the first time in their opposition brief—that they are intended third-party beneficiaries of agreements between ED&F and the Plans. *See* Opp. at 26-27. Having failed to make such an allegation in their pleadings, Crema and Wittwer may not now argue ED&F owed them fiduciary duties on that basis.

### D. Promissory Estoppel And Unjust Enrichment

Crema and Wittwer do not dispute that "recovery in quasi contract is not available" under Utah law where, as here, an express contract covers the "subject matter of the litigation." *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978). Rather, they argue that they may nevertheless bring quasi contractual claims against ED&F because the express contracts here

8

"existed between ED&F and the Plans, not between ED&F and Crema and Wittwer." Opp. at 30. No authority is cited for this proposition, and the argument is in fact contrary to Utah law, which precludes quasi contractual recovery where, as here, there is an "express contract *covering the subject matter of the litigation.*" *See Mann*, 586 P.2d at 465 (emphasis added); *see also Nickerson Co. v. Energy W. Mining Co.*, No. 20090221-CA, 2009 WL 4681778, at *1-2 (Utah Ct. App. Dec. 10, 2009). Wittwer and Crema additionally fail to address the fact that they have alleged no "clear and definite" promise, a critical element of promissory estoppel. *See Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1241 (D. Utah 2015). They similarly provide no support for their contention that they may recover, on a theory of unjust enrichment, monies that the *Plans* paid to ED&F, particularly given that the Plans are seeking those same monies in their own lawsuits against ED&F.

E. **Economic Loss Rule**

Third-Party Plaintiffs' claims for fraud, negligent misrepresentation, and breach of fiduciary duty are all additionally barred by the economic loss rule, which precludes the assertion of tort claims absent some allegation of an independent, non-contractual duty of care. *See KTM Health Care, Inc. v. SG Nursing Home, LLC*, 436 P.3d 151, 169-70 (Utah Ct. App. 2018). Seeking to avoid the implications of the economic loss rule, Third-Party Plaintiffs argue that their fraud claims are "brought under" allegedly non-contractual duties arising out of the "relationship of trust and confidence . . . between a broker and a customer." *See* Opp. at 31 (quoting *In re Refco Secs. Litig.*, 759 F. Supp. 2d 301, 317 (S.D.N.Y. 2010)). The argument fails for the simple reason that no Third-Party Plaintiff alleges that it was ED&F's customer. As for the claim for negligent misrepresentation, Third-Party Plaintiffs unaccountably rely on cases

9

from Colorado, not Utah, and those cases are in any event unavailing. *See* Opp. at 31-32.[7] And even if ED&F had been a fiduciary to Crema or Wittwer—it was not—any claim for breach of fiduciary duty would be barred by the economic loss rule, for Crema and Wittwer have alleged no duty that was not "wholly related" to ED&F's contractual obligations to the Plans. *See CE Providers v. Stearns Bank*, No. 2:18-CV-100, 2018 WL 3448335, at *4 (D. Utah July 17, 2018).

### F. Apportionment Of Fault

The claims for apportionment likewise fall short. Apportionment is not a standalone cause of action, let alone one that may be brought under Rule 14. *Reiersen v. Smith*, No. 150900184, 2015 WL 11185811, at *1 (Utah Dist. Ct. June 17, 2015). Moreover, the case on which Third-Party Plaintiffs rely has been superseded by statute. In *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Queen Carpet Corp.*, 5 F. Supp. 2d 1246 (D. Utah 1998), the court recognized that apportionment claims would not normally be permitted under Rule 14 but allowed the claim because Utah did not at that time allow apportionment to be allocated to non-parties. *See id.* at 1251. Utah law has since been amended to permit allocation of fault to non-parties. *See* 2005 Utah S.B. 10, *available at* https://le.utah.gov/~2005/bills/static/SB0010.html (Section 78-27-41(4)). Under current Utah law, an apportionment claim is impermissible as a standalone cause of action and cannot be brought under Rule 14.[8]

---

[7] Third-Party Plaintiffs' lead case—*Level 3 Commc'ns LLC v. Liebert Corp.*, 535 F.3d 1146 (10th Cir. 2008)—holds that "a statement made in fulfilling a specific duty under the contract," as here, falls *within* the economic loss rule under Colorado law. *Id.* at 1163. Third-Party Plaintiffs also cite a ruling of the Colorado Supreme Court—*Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69 (Colo. 1991)—and another Tenth Circuit ruling applying Colorado law. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207 (10th Cir. 2000).

[8] Dismissal of Third-Party Plaintiffs' apportionment claim does not prejudice them, for "the apportionment process merely ensures that no defendant is held liable to any claimant for an amount of damages in excess of the percentage of fault attributable to that defendant," even where claims against other defendants have been dismissed. *Sullivan v. Scoular Grain Co. of Utah*, 853 P.2d 877, 878 (Utah 1993).

10

Respectfully submitted,

Dated: June 15, 2021
New York, NY

By: */s/ Neil S. Binder*
Neil S. Binder
M. Tomas Murphy
Gregory C. Pruden
BINDER & SCHWARTZ LLP
366 Madison Avenue, Sixth Floor
New York, NY 10017
Tel: 212.510.7008
Fax: 212.510.7299
nbinder@binderschwartz.com
tmurphy@binderschwartz.com
gpruden@binderschwartz.com

11