UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND
LITIGATION

This paper applies to:          All Cases
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18-md-2865 (LAK)

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED: 6/16/2021            │
└─────────────────────────────────┘
```

## PRETRIAL ORDER NO. 24
(Order for Status Report and Conference)

LEWIS A. KAPLAN, *District Judge.*

1.     Counsel, on or before July 15, 2021, are to meet and confer (in person or electronically) regarding the status of all of these cases, the completion of discovery, the handling of dispositive motions, the framing of a pretrial order or orders, and the possibility of settlement of some or all of these cases.

2.     On or before July 29, 2021, the parties shall file a **joint** report on behalf of all parties summarizing the status of discovery to that date, the discovery remaining to be completed or conducted, and a proposed schedule for its completion. To the extent that the plaintiff and any defendant or group of defendants differ as to the discovery remaining to be completed or proposed schedules for its completion, their differences shall be set out succinctly in one or more appendices to the joint report. The parties' joint report should address also whether any parties anticipate filing any further complaints or third party complaints or seeking leave to amend any existing pleading. The parties shall endeavor to propose a **joint** schedule for the completion of all such filings.

3.     On or before July 16, 2021, the parties shall file a **joint** report on the status of the actions filed in the United Kingdom (the "U.K. actions"), any pending foreign administrative appeals, and any other foreign actions related to this case, and address the extent – if any – to which these actions may impact setting an efficient schedule in this matter.

4.     It seems possible that motions for summary judgment or partial summary judgment conceivably could reduce the issues for trial quite significantly, or be dispositive, in these cases or groups of these cases. The prospect of many motions for summary judgment or partial summary judgment, each with its own slant in facts common to all cases or to identifiable groups of cases, seems real, not to mention probably costly and time consuming. Accordingly, a more focused strategy for dealing with such motions could prove extremely valuable. The Court solicits the views of counsel on how best to approach this. A **joint** report on behalf of all parties addressing this subject shall be filed on or before August 27, 2021. To the extent that the plaintiff and any defendant or group of defendants advocate different approaches, their differences shall be set out succinctly in one

2

or more appendices to the joint report.

Among the matters counsel are invited to consider in this regard is whether it would be desirable to exchange, without prejudice, outlines of proposed motions for summary judgment or partial summary judgment and then to negotiate complete or partial joint Rule 56(f) statements to govern all cases or groups of cases before any such motions are prepared. *See* attached transcript from *In re Parmalat,* 04-md-1653 (May 10, 2007).

In addition, counsel should consider whether it would be desirable to proceed with one or multiple bellwether cases, at least for the purpose of summary judgment motions. Counsel should consider also the goals and selection criterion for potential bellwether cases.

5.      Under either approach, the Court and the parties would benefit from better understanding of which cases or groups of cases involve overlapping or similar issues.  In order to facilitate this analysis, on or before August 27, 2021, the parties shall provide the Court with a **joint** report identifying cases that are analytically similar with regard to underlying facts, such as but not limited to: (a) the applicable state law, (b) involvement of key parties, such as the plans' broker-custodians, (c) the relevant time periods when the plans' tax refunds were submitted to SKAT, (d) whether the parties are named also in the U.K. actions, and (e) whether the parties have filed counterclaims or third-party complaints.

4.      The Court will hold a status conference on September 28, 2021, at 3 pm.

SO ORDERED.

Dated:      June 16, 2021

_____
Lewis A. Kaplan
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------
--x

3

IN RE: PARMALAT, ALL CASES,
7JaBbare

                              04 MD 1653 (LAK)
------------------------------          New York,
x                                       N.Y. May 10,
                                        2007 2:15
                                        p.m.


Before:

                HON. LEWIS A. KAPLAN,

                              District Judge

                APPEARANCES

GRANT & EISENHOFER, P.A.
     Attorney for Class
Plaintiffs BY: JAMES J. SABELLA

SPECTOR ROSEMAN & KODROFF
Attorney for Class Plaintiffs
BY: ROBERT M. ROSEMAN

DIAMOND MCCARTHY LLP
     Attorney for Plaintiff Food Holdings, Dairy Holdings,
PCFL BY: GREG TAYLOR
QUINN EMANUEL              Parmala
     Attorneys for        t
Plaintiff BY: MARC L.
GREENWALD BRIAN TIMMONS

HERBERT P. MINKEL, JR.

     ATTORNEY for Gerald Smith as Trustee & Peter Pappas as
Plan Administrator
DAVIS POK & WARDWELL
Attorney for Deloitte BY:
DANIEL F. KOLB
& Touche LLP

                APPEARANCES CONTINUED
WINSTON & STRAWN LLP              At

                SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

75a9parc

```
        torney for Grant Thornton LL
BY: LINDA T. COBERLY              P

STROOCK & STROOCK & LAVAN LLP

     Attorney for Grant Thornton
International BY: JAMES L. BERNARD

CLIFFORD CHANCE US LLP
     Attorney for Citibank, Citigroup, and
Capeland BY: MARK A. KIRSCH

KRAMER LEVIN NAFTALIS & FRANKEL LLP
     Attorney for Deloitte & Touche and James
Capeland BY: MICHAEL J. DELL

ALLEN & OVERY
     Attorneys for Defendant Credit
Suisse BY: TODD S. FISHMAN
     MICHAEL FELDBERG

DAVIS POLK & WARDWELL
     Attorney for Banca National Del
Lavoro BY: NANCY B. LUDMERER

HELMS MULLISS WICKER
     Attorney              Americafor Bank of
BY: PETER J. COVINGTON

SIDLEY AUSTIN LLP
     Attorneys for Bank of America
BY: ALAN C. GEOLOT
     JOSEPH B. TOMPKINS
     DANIEL McLAUGHLIN

HENNIGAN BENNETT & DORMAN LLP
     Attorneys for the Monumental Plaintiff, Principle
Plaintiff, Allstate & Prudential
BY: LAUREN SMITH
     ROBERT L. PALMER

KITTREDGE, DONLEY, ELSON, FULLEM & EMBICK,
```

5

75a9parc

LLP Attorney for Defendant Pavia e Ansaldo
BY: CHRISTOPHER M. BRUBAKER

(In open court; case called)

THE COURT: Good afternoon everybody. I appreciate
the effort that went into the letters concerning summary
judgment. But as my order calling this conference indicates,
it doesn't go nearly as far as we're going to need to go.

The amount of paper with which everyone, quite
understandably, has inundated me thus far makes it clear to
me, particularly given the amount of discovery you've taken,
that if I just let you all go off and make summary judgment
motions you all want to make, I will probably not live long
enough to decide, let alone read them. I mean I just don't
even see how it could happen. So something is going to have
to be done to boil this all down and to do it in a way that
will enable the case to be resolved on some meaningful
scale.

Now, I've given a little bit of thought to this but
I don't profess to have a definitive answer, and I just
thought I would share some thoughts about a way we might go
and hear briefly whatever reactions you might have this
afternoon, and then give you just a little bit more time to

6

75a9parc

see if you can't refine some of these ideas or come up with better ones, but in any event, try to come to something workable, failing which, I'll just have to do the best I can. If I'm not as informed about everything as you are, and the result of my trying to do it without more guidance from you, I'm afraid might not be satisfactory.

I was thinking something along the following lines. That a useful first step might be for everybody who intends to make a summary judgment motion, to draft and serve on the other side, but not file, two things, your rule 56.1 statement and an outline of the motion, not to exceed four pages; no brief, no affidavits, just that much.

And then the nonmoving party or parties would, in a suitable period of time, respond to the 56.1 statements -- and I want to come back to talking about the 56.1 statements -- and then have you all, however wish to argue it, confer with a view to there being prepared, to the extent the 56.1 statements reveal areas of no disagreement -- I hesitate to say agreement -- a single stipulation of facts that would apply to the extent it's relevant, in all cases, and a single list of propositions of fact, which at least some

75a9parc

movants claim are actually undisputed and some nonmoving

parties claim are disputed, with relevant citations to the

record, and also, of course, the nonparties would also serve

a four-page outline of their responses.

I would hope by that to essentially have a very

substantial part of the case, if not stipulated in formal

terms, established as really undisputed. Because I expect

that a great deal is undisputed. And there is no point in my

reading 12 or 15 or 18 motions, reciting all of that, all

over again. And I think that might tee up for ready and

quick and

easy disposition those propositions that

people claim are material and where you can't agree as

to whether there's a genuine dispute or not.

Then once have you done that and you've exchanged

these outlines, the next step I had in mind is that you

would confer with a view to having a joint or a master brief

on each side with respect to the issues that are common, and

there are bundles of them here, I anticipate. I'm just

judging by things that come immediately to mind. Based on

the motions to dismiss, I imagine there will be a certain

8

75a9parc

amount of discussion of standards under 10(b)(5)(a) and (c)

that's going to be common to more than one of the motions. I

certainly hope I don't have to again read the culpable

participation and section 20(a) arguments again, but I

imagine that's going to be some of it, but obviously there's

a lot more.

        And then after you go through some process toward

that and identify for me what the joint submission would be

and what other submissions you contemplate, then depending

on how overwhelming it is or isn't, at that point I would

see whether I want to bring in a magistrate or a special

master in essence to knock heads to try to broaden the areas

of agreement and narrow the areas of disagreement and

dispute.

        I certainly don't conceive of this as a surefire

solution. I haven't had enough time and don't have enough

background with the intricacies of the evidence for it to be

that at this stage, but I thought it might be just something

useful to start a more constructive discussion than we've

had up to now, but I have organized this.

        I realize I am hitting you all cold with that. But

75a9parc

if anybody has any thoughts or suggestions or objections,

you're not going to be precluded if you don't say anything

now, but I think it might be helpful to hear what anybody

has to say, if there is anything at this point.

      Mr. Bernard.

      MR. BERNARD: Your Honor, I was asked by the defense

group, and offered to the defense group to address these

issues today since I had addressed them in a letter to the

court. Mr. Geolot and Mr. Dell have separate issues that

they submitted in connection with experts but I'll focus at

least on this for now.

      I think, your Honor, first of all, that your

message came through loud and clear in the order of last

week. And I should emphasize, though, that as a group -- and

when I mean a group, I mean both defense counsel and

plaintiffs' counsel, I think we worked together very well as

far as trying to put something together. Just by way of

example, since your Honor's order of last Thursday, defense

counsel have now spoken three times and actually we're

prepared to address an idea different from the idea that

your Honor proposed, but nonetheless an idea, today that we

75a9parc

thought would get to more of what your Honor was asking for,

which as I read it, was really quite simple, specifics; not

the general, but exactly what did you plan on doing,

defendants.

I also say I spoke to Mr. Sabella and I spoke to

Mr. Greenwald's colleague, Mr. Witt, in connection with

putting together the submission that came to your Honor last

week. And we worked together as well with plaintiffs.

So I think that this is something that can be done,

and I would endorse your Honor's idea of thinking about

these issues further because you have hit us cold with them.

They are important issues. There are some complications I'd

like to inform the court about so that you can understand a

little bit more about what we're struggling with on our

side. But I think this is something that we can work

through, and I would endorse the idea of giving us a little

more time to try and do that. I am prepared to do something

further today. I don't know, in light of what your Honor has

suggested, whether that's still going to make sense, but

I'll explain that in a moment.

But by way of complications -- and I don't mean to

75a9parc

focus on these, but I do mean to raise them so that the

Court understands. I think a primary one is timing, and the

reason for that is this, Judge. Right now we're struggling,

all sides, with some 60 expert reports. They are -- the

rebuttal reports to the expert reports that were served are

due, I believe, June 4. That both creates a timing issue.

Resource is one issue. One aspect of that. But another one

that's equally as important, Judge, which is that defendants

would be at a significant disadvantage if we were asked to

exchange these kinds of outlines with respect to the points

that we would be making on summary judgment before those

reports are in.

          Now, I don't want to overstate the point. Of

course, it's quite clear -- I'm not revealing a state

secret, for example, that defendants intend to raise issues

like in pari delicto with respect to Dr. Bondy's complaint.

But there are other issues that defendants intend to raise

in connection with other matters, that if we were forced to

preview at this point in time with the plaintiffs, it would

be a problem.

          I should add, your Honor, that that was really the

12

75a9parc

primary reason why the submission that we made to you, that
came under my signature, was in the nature that it was. We
did not want to front a lot of the issues in explicit
detail.

　　　　We are prepared to discuss those in more detail
today. We've been working, and that's been the purpose of
our calls these last few days, to come up with a more
detailed list that we could give your Honor.

　　　　We were going to propose today that a smaller group
of us meet with the court in the robing room, smaller group
of defendants, ex parte, with -- obviously, with plaintiffs'
permission to discuss that in more detail, if everyone
believed that that would be a fruitful way to proceed.

　　　　At the same time, we recognize that with respect to
how plaintiffs respond to that, that that poses some problem
because we can't ask them fairly to respond to something in
a vacuum. They can't answer the question of what would they
do jointly without knowing what we will do jointly. So we
would imagine that that process would unravel and would move
forward in a serial process; that is, that after we had
worked through it and after the submissions were in, then

75a9parc

would then do it, much the way your Honor –

       THE COURT: I guess you mean unfold, not unravel.

       MR. BERNARD: Unfold would be a better word.

       THE COURT: Sometimes I fear that the process in
this case has unraveled more than once.

       MR. BERNARD: It's not unraveling. It's unfolding.
It's a difficult unfolding at times, but it's not an
unraveling.

       The other complication, Judge, that we're
struggling with, that we've had some discussions about, but
it is somewhat preliminary, and I'll confess, it is
complicated, it's choice of law issues. And the reason for
that is that while conceivably one can see how certain
issues, at a factual level, are common, when you start
getting into details and nuances of certain points; whether,
for instance, North Carolina law is going to apply to some
of the Bank of America actions or Illinois law as to others,
those are things that we're still working through to figure
out whether, in fact, it is an issue and whether or not,
therefore, it can be joint or whether or not it needs to be
separate.

75a9parc

I'm confident we can get through that because
there's a lot of really smart people working on this and we
can ultimately figure out whether or not these are really
substantive differences or whether or not they're going to
be the kind of thing that you can handle with a footnote in
some kind of a joint submission. But we're working on that
as well.

The last point that I would say, Judge, just in
terms of thinking about this -- and again, I think that as
this unfolds it will become more clear -- is that while I
think the court, in outlining, for example, the few issues
that you've already done the 10(b) issues, the culpable
participation, the 20(a) issues, there is a very real
concern on the part of defendants that although in some
broad sense culpable participation 20(a) is something that's
applicable to a great many of us, that as applied to
specific defendants, the issues are quite different,
depending on what facts on discovery reveal. And therefore,
the concern is: Well how would a joint submission work like
that? How would you jointly brief, for instance, the core
legal standard on Section 20(a) but yet leave enough room

15

75a9parc

for each defendant to address the cases and the things that

they need to address or how the common cases

apply to them in a way that's unique.

And so, we've been working through that as well.
And frankly, some issues, we've just decided there may be
some common overlap but at the end of the day, it's not
enough common overlap to justify an individual brief to the
court. Instead we're going to have to do it in a way that
recognizes the differences between us.

I should say, though, because I think the process
has been productive from our perspective, that your Honor's
message has come through loud and clear. And I should say
that it is in our collective best interests to not inundate
the court with 35-page briefs on each case in which we're
defendants. We are keenly aware of that. And that's why I
think –

THE COURT: You know what Judge Pollack's solution to
this always used to be. I'm going back 25, 30 years. He just
locked all the lawyers in a jury room until a stipulation came
out.

MR. BERNARD: I hope your Honor is not endorsing

75a9parc

that approach.

THE COURT: I've learned a lot from Judge Pollack in various ways, easy and otherwise, but I'm not threatening that at the moment.

MR. BERNARD: I think, also, Judge -- again in all seriousness, we have worked together well on this. I think it is something that we can continue to pursue.

I'm not sure if the way in which your Honor has presented it today really moots the idea that I came in here prepared to discuss in more detail, which was some ex parte conference where we gave you a little more detail about what we were seeking to do. I also don't know what plaintiffs' position with respect to that would be.

But I am confident that in light of what you've just said and in light of what we've already discussed, that we can come up with a plan that does this and that does it in a way what is efficient and that satisfies both the court's needs and also addresses some of the legitimate concerns that some of us have in at least the three areas that I've already laid out.

THE COURT: Thank you. Anybody want to say anything

17

75a9parc

from the plaintiffs?

MR. SABELLA: Your Honor, Jim Sabella for the class plaintiffs.

My initial reaction to the court's proposal is that I like it. As with anything, the devil often is with the details. And the idea of a joint 56.1 statement is a great idea in practice, it's so rare that you ever find either side in a case putting in 56.1 statements that make any sense. How many times have you seen 56.1 statements where people put in essentially conclusions of law masquerading as facts.

THE COURT: That's a point I'm going to come back to. MR. SABELLA: It's one thing to say this happened on

thus and such a date. But your Honor has seen this more than I have where people always put in: We acted completely properly. They acted grossly recklessly. That kind of stuff.

So but, hopefully, if your Honor -- given your Honor's directions that we know we can't go in that direction, something could come out of that and then the 56.1 exercise will actually mean something; whereas, in so

75a9parc

many cases, as your Honor knows, it doesn't.

So, my initial reaction is it would be favorable, and I can't really respond to what Jamie said at this point, other than I have no objection to ex parte meetings on this or any other topic.

THE COURT: I'm not sure that's the best way to go at the moment.

Look, I think Mr. Bernard's point about not wanting to show, at least some of the cards in the defendants' hands before June 4, perfectly understandable, so we can take that into account in setting a schedule.

I certainly do think that, as I said when came in, I'm prepared to give you some time to take this a little further among yourselves with the guidance of what I've said before and what I've said today, and so we can just talk about that schedule in a minute.

One other thing you might think of, in coming up with a proposal, is that to the extent that your discussions reveal that there are certain issues -- and the one that prompts this comment is choice of law, but there might be others -- that, if resolved first, would vastly simplify

75a9parc

what follows, I don't rule out a procedure that would be
focused on resolving those pivotal points so that we could
then have a simplified process subsequently.

Now, I'm glad Mr. Sabella said what he said about
56.1 statements because it reminded me that I wanted to talk
about that. Everything he said, in my experience, is
absolutely correct. Most of them -- or many of them, any way
-- are a complete waste of time and I'm not going to have
that here.

The rule, I think, is very clearly and well drawn
and it is designed to force a moving party to think through
that which is truly material, not something that's a nice
piece of background, but something on which a dispositive
conclusion of law turns, and state the fact in a clear,
unequivocal, nonargumentative way and see whether that fact,
in truth, is admitted, or at least not disputed or not
controverted by admissible evidence. That's what I have in
mind.

Over the years I've had occasion more than once to
write about these things. And a case that comes immediately
to mind is something called Archie Comics against I think

75a9parc

DeCarlo, but I think there have been others, in which I
talked about some of these problems any way, and I would
hope that you would all approach the 56.1 statement exercise
with that in mind. I've read so many that sort of take off
from the plaintiffs saying, for the sake of discussion, the
parties met on June 4, 1997, and the response is admitted
but the defendant says that that was a Tuesday and the sun
was shining, and the other side is implying that it was a
nice day and it wasn't a nice day, and on, and on it goes,
and all for no good purpose. Now, that's not to say the
lawyer at the time didn't think it was a good purpose, but
it's not the purpose that the rule is designed to serve. So
I hope in the process we can strip this down to its bare
essentials. We have plenty of time to argue the case at the
appropriate time, but let's just find out what facts are in
controversy and what facts aren't. So much for that.

Now, let's talk about schedule. Given the June 4
date, is it unreasonable to expect that I should have a
report from you by June 18 on what the proposal or proposals
is or are?

MR. BERNARD: I haven't had a chance, your Honor, to

75a9parc

refer or to confer with my colleagues, but I think that's

eminently reasonable. If anyone does have an issue that I

haven't thought of -- there is one issue I know that's

lurking out there that people are going to want to discuss

with the court, which is that right now the current schedule

contemplates a June 4 cutoff for the submission of rebuttal

reports, and then a July 2 cutoff with respect to expert

discovery, which would be depositions. And right now I think

a bunch of us are thinking how are we going to take the 60

depositions in that period of time, in particular when some

may require more than a day.

        I don't know if that impacts this date as much.

I toss it out there to see if anyone else in the room who

has been thinking this through has any issues with

respect -

        THE COURT: You probably need, from what you say, a

little more time on the expert depositions, and within

reason I will give you more time. I mean I wouldn't have a

problem with you taking the summer to get them done, and

hopefully you'll agree, and you'll give me a stip on it. I

do not want it dragging on because -- for the obvious

75a9parc                                                                22

reasons.

          Anything else on this subject, which is really the

main point of business for today, but I gather we have

others.

          MR. PALMER: Just clarification, your Honor. The

June 18 reports, are you thinking about our either

individual or collective comments and suggestions on the

process to be followed?

          THE COURT: Yes, on the process. And I'm hoping to

get one.

          MR. PALMER: From each side?

          THE COURT: No. One.

          MR. BERNARD: Your Honor, I'll volunteer to

get everybody in line and get one submission to the

court.

          THE COURT: Illustrative of my concerns about

summary judgment, I have had five letters in the space of

hours about allegations of noncompliance with Rule 26. And I

have not made a judgment about this, but what I'm going to

say is the following. And I don't propose -- if somebody

wants to make a comment I'll listen to it this afternoon,

75a9parc

but I'm not going to decide anything today.

Mr. Bondy, and I guess the class plaintiffs, have now heard screams of objection here. And if having seen and heard them you amend these reports in some way -- and I'm not saying your obliged to, I haven't even looked at them -- in the next ten days, well, I'm just not going to get too bent out of shape about whether it was on the precise due date or within ten days thereafter. But beyond that, the chances are good that you will sink or swim on the state of the record in ten days as to these witnesses.

So, for the benefit of further consideration, you think it might be a good idea to supplement some of these reports and try to meet some of the objections, you've got ten days to do it. And fair warning because if I conclude afterward that there has not been very substantial compliance with the rules, the experts as to whom that's true may simply be out of the case without any further opportunity to cure. You're on fair warning.

Is there anything else we can accomplish this afternoon?

Mr. Tompkins.

MR. TOMPKINS: Your Honor, since we're all here I

75a9parc

wanted the court to be aware of an issue that may come up

and it has to do with the role of Price Waterhouse in this

proceeding. It's recently become clear, in letters from Mr.

Bondy's counsel, that Price Waterhouse, at least several

Price Waterhouse people have been retained to give testimony

in these proceedings and will be subject to

cross-examination.

Bank of America thinks that there's an inherent

conflict in Price Waterhouse giving testimony against the

bank because Price Waterhouse is the bank's auditor, both in

the United States and in Italy. And it only became clear

recently that that is what is intended to do.

The bank has not waived that conflict and has no

intention of voluntarily waiving that conflict. So I wanted

the court to be aware of that and if we have to deal with it

formally, we will.

THE COURT: I'm aware of it. All right.

Well, thank you all very much. I look forward

to success crowning your efforts and to good process

that ultimately results in a very short set of summary

judgment papers.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

75a9parc

      (Adjourned)