UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND                    18-md-2865 (LAK)
SCHEME LITIGATION

This document relates to:     No. 18-cv-4833 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


Appearances:

          William R. Maguire
          Marc A. Weinstein
          Neil J. Oxford
          HUGHES HUBBARD & REED LLP
          *Attorneys for Plaintiff*

          Michael Tremonte
          Anna Estevao
          SHER TREMONTE LLP
          *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

          The Customs and Tax Administration of the Kingdom of Denmark ("SKAT") claims

that it was defrauded into issuing tax refunds totaling over $2 billion to more than a hundred pension

plans that were not entitled to them.  It filed approximately 140 complaints against these plans and

their agents and authorized representatives.  These actions were consolidated for pretrial purposes

in this Court.[1]  The Court assumes familiarity with the underlying facts, which are detailed in its

prior decisions, including several decisions denying motions to dismiss SKAT's claims.[2]

### Background

The motion now before the Court was filed by Alexander Burns, the sole participant

in the Raubritter LLC Pension Plan ("Raubritter") which SKAT claims defrauded it out of at least

$9 million dollars.[3]  SKAT claims that Burns controlled Raubritter and caused it to submit fraudulent

tax refund applications.  In particular, it alleges that Burns formed Raubritter's plan sponsor –

Raubritter LLC – and signed its Certificate of Formation as the entity's "Authorized Person."[4]  It

further alleges that Raubritter LLC, which is German for "robber baron," had no employees and

---

[1]

*In re Customs and Tax Adm'n of the Kingdom of Denmark,* 338 F. Supp.3d 1347 (J.P.M.L. 2018).

[2]

*See In re Skat Tax Refund Scheme Litig.,* 356 F. Supp. 3d 300, 307-09 (S.D.N.Y. 2019); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.,* No. 18-cv-5053 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020); *In re SKAT Tax Refund Scheme Litig.,* No. 18-cv-5053 (LAK), 2020 WL 400718, at *1 (S.D.N.Y. Jan. 23, 2020); *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.,* No. 18-cv-5053 (LAK), 2020 WL 3962066, at *1 (S.D.N.Y. July 13, 2020); *In re SKAT Tax Refund Scheme Litig.,* No. 18-cv-05053 (LAK), 2020 WL 7059843, at *1-2 (S.D.N.Y. Dec. 2, 2020); *In re SKAT Tax Refund Scheme Litig.,* No. 18-cv-05053 (LAK), 2020 WL 7496272, at *1 (S.D.N.Y. Dec. 21, 2020).

[3]

Amended Complaint [Dkt. 82] (hereinafter Am. Compl.) at ¶¶ 18, 47.  All docket references are to 18-cv-4833 unless otherwise noted.

[4]

*Id.* at ¶ 49.

carried out no business or trade.[5]  In 2013, Burns changed Raubritter LLC's name to the more innocuous Heartland Family Group, LLC.[6]

SKAT alleges also that Burns entered into a general partnership agreement (the "General Partnership Agreement") with co-defendants Markowitz and van Merkensteijn (the "Partner Defendants") who coordinated the submission of Raubritter's allegedly fraudulent tax refund applications.[7]  Pursuant to the General Partnership Agreement, the Partner Defendants received 90 percent of the refunds issued by SKAT.[8] Raubritter received the remaining 10 percent.[9] According to SKAT, Burns' home address was listed on Raubritter's tax refund applications.[10] These refund claims were submitted from 2013 to August 2014.[11] SKAT paid the requested refunds during that same period.[12]

---

[5]  *Id.* at ¶¶ 42, 50.

[6]  *Id.* at ¶ 50.

[7]  *Id.* at ¶¶ 51, 53-54.

[8]  *Id.* at ¶ 53.

[9]  *Id.*

[10]  *Id.* at ¶ 48.

[11]  *Id.* at ¶ 39.

[12]  *Id.* at ¶ 47.

4

In June 2015, SKAT discovered a fraudulent scheme by certain Malaysian entities to obtain unwarranted tax refunds.[13]  By August 2015, it stopped paying all refund claims – including claims from U.S. entities – and reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime.[14]  SKAT filed this action against Raubritter on May 31, 2018 and added Burns as a defendant on April 27, 2020.[15]  Burns now moves to dismiss SKAT's claims against him.  For the reasons discussed below, that motion is denied.

### *Discussion*

I.    *Statute of Limitations*

A motion to dismiss may raise an affirmative defense such as the statute of limitations "where the facts necessary to establish the defense are evident on the face of the complaint."[16]  In response, the plaintiff bears the "usual burden of a motion to dismiss . . . which is to say [it] must plead sufficient facts to plausibly suggest that [it is] entitled to relief."[17]  Accordingly, a motion to dismiss raising an affirmative defense "may be granted only where it appears beyond doubt that the

---

13

   *Id.* at ¶ 6.

14

   *Id.* at ¶ 8.

15

   Dkt. 1, 82.

16

   *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (*citing McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

17

   *Id.*

5

plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief."[18]  In

addition, the plaintiff "is entitled to all reasonable inferences from the facts alleged, not only those

that support [its] claim, but also those that [could] defeat the [affirmative] defense."[19]

Under N.Y. C.P.L.R. § 202, SKAT's claims must be timely under "the limitation

periods of both New York and the jurisdiction where the cause of action accrued."[20]  The parties

agree that SKAT's claims accrued in Denmark.  Accordingly, its claims must be timely under both

New York and Danish law.


*A.    New York*

SKAT asserts claims for fraud, payment by mistake, unjust enrichment, money had

and received, and negligent misrepresentation.  The parties agree that all of these claims generally

are governed by a six-year statute of limitations under New York law.[21]  According to the Amended

Complaint, Raubritter applied for and received tax refunds from SKAT from 2013 to August 2014.[22]

Burns was named as a defendant in April 2020.  Accordingly, claims based on the refunds paid on

---

[18]

       *McKenna*, 386 F.3d at 436 (internal quotation marks omitted) (*citing Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992)).

[19]

       *Id.*

[20]

       *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).

       "[I]t is well established that in diversity cases state law governs . . . the limitations period." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002).

[21]

       Br. [Dkt. 137] at 7 n. 4; C.P.L.R. §§ 213(1), (8).

[22]

       Am. Compl. at ¶¶ 39, 47.

or after April 2014 are timely under New York law.  The parties dispute whether SKAT's claims based on the earlier refund applications are timely as well.

       *i.*    *The Fraud Claims*

      New York law provides a two-year discovery period for claims based on fraud.[23]  For such claims, "the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."[24]  The "proper focus" to determine when the discovery period began is "not . . . the date of plaintiff's actual or imputed knowledge of the ***general*** fraudulent scheme."[25]  Instead, "[t]he salient question is" when the plaintiff knew "facts suggesting a ***particular defendant's participation***."[26]  According to the amended complaint, SKAT discovered a scheme to obtain fraudulent tax refunds in 2015.[27]  However, to trigger the discovery period with regard to SKAT's claims against Burns, SKAT must have been aware of facts suggesting that Burns participated in this scheme.

---

[23]

    N.Y. C.P.L.R. § 213(8).

[24]

    *Id.*

[25]

    *AE Liquidation Corp. v. Segre*, No. 96-cv-0889 (CSH), 2000 WL 204525, at *7 (S.D.N.Y. Feb. 18, 2000) (emphasis added).

[26]

    *Id.* (emphasis added) ("Under the New York discovery rule, a cause of action for fraud does not necessarily accrue at the same time for all of the participants in a single fraudulent scheme. Instead, the discovery period may commence with respect to different actors in an alleged fraudulent scheme at different times").

[27]

    Am. Compl. ¶¶ 6, 8.

Burns contends that SKAT should have discovered his role in the scheme at least two years before he was named as a defendant. He makes two arguments. First, he claims that once SKAT discovered that it had been defrauded by some pension plans, it should have known that Raubritter had defrauded it as well because Raubritter means "robber baron" in German.[28] He contends also that once SKAT discovered that Raubritter means "robber baron," it should have investigated the individuals behind the plan.[29] This argument is completely frivolous and possibly even sanctionable. It would be unreasonable for any plaintiff – let alone the Kingdom of Denmark – to suspect and prosecute fraud based on an entity's name. In fact, if Burns actually thought that Raubritter's name would alert SKAT to the fact that his pension plan was involved in fraud, he might not have chosen this name.[30] In any case, a name – however baleful it may seem in retrospect – is insufficient to trigger the discovery period.

Next, Burns argues that SKAT should have discovered his role in the alleged scheme at least a month before it filed the original complaint against Raubritter – i.e. by April 2018.[31]

---

[28] Br. at 9.

[29] *Id.*

[30] If it turns out that Burns or Raubritter engaged in fraud or other tortious misconduct or unlawful activity, it will not have been the first time that a wrongdoer has chosen an inadvisable name for an entity engaged in misconduct. In *Wellman v. Dickinson*, 475 F. Supp. 783 (S.D.N.Y. 1979), an oil company formed a subsidiary named L.H.I.W., Inc. to carry out an aggressive and unconventional stock acquisition program ultimately found to have violated the Williams Act, Section 10(b) of the Exchange Act, and Rule 10b-13 thereunder. *Id.* at 837. L.H.I.W., Inc. was an acronym for "Let's Hope It Works." *Id.* at 790.

[31] Br. at 8-9.

8

According to Burns, once SKAT knew that Raubritter had submitted fraudulent tax refund claims, it should have discovered that he was "behind the entity's allegedly fraudulent actions" because SKAT had access to documents identifying him as the plan's sole participant and the "Authorized Person" for the plan's sponsor.[32]  The Court disagrees.  As an initial matter, Burns fails to establish that SKAT knew about Raubritter's role in the fraud a month before suing it.[33]  In any case, even if SKAT had been aware of all the information that Burns contends was available in April 2018, these facts would not conclusively establish that Burns controlled Raubritter and caused it to submit the refund applications to SKAT.[34]  SKAT would not necessarily have known that Burns was involved in the fraud until it discovered additional facts, such as that Burns' home address was listed on the plan's refund applications, that Raubritter's sponsor was a shell company, or that Burns had executed the General Partnership Agreement that allegedly set the fraud in motion.  Burns does not claim that SKAT should have known any of these facts in April 2018.[35]  He therefore has failed to establish sufficiently that SKAT should have discovered his role in the alleged scheme at that time.

---

[32]  *Id.*

[33]  In the spring of 2018, SKAT filed substantially similar complaints against more than a hundred pension plans.  Accordingly, once SKAT identified Raubritter as a defendant, it would not necessarily haven taken a month to prepare and file a complaint against it.

[34]  In fact, the Court previously concluded that SKAT's allegations were insufficient where it alleged only that a defendant was the sole participant in a plan that submitted fraudulent tax refund claims and had served as the president of the plan's sponsor. *See In re SKAT*, 2020 WL 7059843, at *9.

[35]  Burns asserts that in April 2018 SKAT was aware that his home address was listed on the plan's refund applications (Br. at 10) but he does not explain how SKAT would have known or discovered his home address.

Accordingly, the Court is not persuaded that SKAT's fraud claims are untimely under New York law.

    ii.    *The Non-Fraud Claims*

The statutory discovery period does not apply to SKAT's non-fraud based claims.[36] Instead, SKAT contends that these claims are timely under the doctrine of equitable tolling.

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'"[37] "However, the Court of Appeals has held . . . that equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action."[38]

---

[36]

    N.Y. C.P.L.R. § 213(1).

[37]

    *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (*quoting Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794 (4th Dep't. 2005)).

[38]

    *Kaufman v. Cohen*, 307 A.D.2d 113, 122 (1st Dep't. 2003) (*citing Rizk v Cohen*, 73 NY2d 98, 105-106 (1989); *Chesrow v Galiani*, 234 AD2d 9, 10-11 (1st Dep't. 1996)). *See also Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006) (same); *Noskov v. Roth*, No. 19-cv-7431 (RA), 2020 WL 4041125, at *7 (S.D.N.Y. July 17, 2020) ("Equitable estoppel thus requires an additional act, 'separate and distinct' from the alleged misconduct underlying the action." (*citing Bisson v. Martin Luther King Jr. Health Clinic*, 399 F. App'x 655, 656-67 (2d Cir. 2010)).

    SKAT cites *De Sole v. Knoedler Gallery* for the proposition that equitable tolling may be proper if the plaintiff plausibly alleges "that the wrong itself was of such a nature as to be self-concealing." 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013). *De Sole* cites to *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988), in support of this statement. The Second Circuit there addressed the statute of limitations for a claim under the Clayton

SKAT alleges that defendants falsely claimed tax refunds for dividends issued by Danish companies whose stock they did not own and submitted fraudulent documentation purporting to confirm their ownership of these shares.[39]  These allegations are sufficient to claim plausibly that SKAT delayed filing its claims because of the defendants' misrepresentations.  However, they are the same facts underlying SKAT's substantive causes of action.  Accordingly, these allegations are insufficient to toll the statute of limitations as to SKAT's claims.

In the alternative, SKAT argues that the statute of limitations did not begin to run when it paid the tax refunds – at least with regard to its unjust enrichment claims.  According to the Amended Complaint, the plan's "Payment Agents received payment of the refunds from SKAT on behalf of the claimants" and "[o]n information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud."[40]  SKAT therefore contends that the limitations period would begin only when the payment agents distributed the refunds to Raubritter, not when SKAT sent the funds to the payment agents.  And as the Amended Complaint does not allege when the funds were distributed, SKAT asserts that its claim are not untimely on the face of the complaint.

---

Act and therefore applied the federal doctrine of equitable tolling.  But "[t]he federal doctrine of 'equitable tolling' does not apply to New York causes of action."  *Dowe v. Leeds Brown L., P.C.*, 419 F. Supp. 3d 748, 761 n. 6 (S.D.N.Y. 2019) (*citing Jang Ho Choi v. Beautri Realty Corp.*, 135 A.D.3d 451 (1st Dep't. 2016)).  Accordingly, this case is inapplicable here.

[39]  Am. Compl. at ¶¶ 30, 69-70.

[40]  *Id.* at ¶ 68.

In support of this argument, SKAT contends that according to *Golden Pacific Bancorp v. F.D.I.C.*[41] a claim for unjust enrichment accrues only when the defendant has either "been enriched" or "possesse[s] any of [plaintiff's] 'money or property' that 'equity and good conscience' would require it to return."[42] This statement, on SKAT's theory, means that its claim accrued only when Burns "possessed" its property after the payment agents distributed the funds from SKAT. The Court disagrees. *Golden Pacific* acknowledges that a claim for unjust enrichment may accrue when the defendant is "enriched," not only when it "possesse[s]" plaintiff's money or property.[43] Accordingly, "*Golden Pacific* does not . . . hold that a transfer of *money* is the only kind of enrichment that can support an unjust enrichment claim."[44] "To the contrary, any increase in wealth—even if unrealized or illiquid—is an enrichment."[45]

Here, SKAT alleges that the payment agent was Raubritter's agent and accepted the refunds from SKAT on Raubritter's behalf.[46] Accordingly, Burns – as the sole participant in the

---

[41] 273 F.3d 509, 520 (2d Cir. 2001).

[42] *Id.*

[43] *Id.*

[44] *JPMorgan Chase Bank, N.A. v. Maurer*, No. 13-cv-3302 (NRB), 2015 WL 539494, at *6 (S.D.N.Y. Feb. 10, 2015) (emphasis in original).

[45] *Id.* (holding that unjust enrichment claim accrued when defendants obtained "something valuable: if not the securities in the IRA themselves, then at least a cause of action to require Bear Stearns to disburse the IRA."). *See also City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 805 (S.D.N.Y. 2017) ("the claim accrues as soon as the unjust enrichment occurs, even if the increase in wealth is unrealized or illiquid.").

[46] Am. Compl. at ¶ 9 ("The non-party Payment Agents . . . are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants

12

Raubritter plan – was enriched as soon as SKAT paid the payment agent on Raubritter's behalf.[47]
The limitations period therefore began at that time.

For each of these reasons, SKAT's payment by mistake, unjust enrichment, money
had and received, and negligent misrepresentation claims that are based on tax refunds paid before
April 2014 were not timely filed under New York law. But that is not the end of the issue. SKAT's
claims still would be timely under New York law if they relate back to the original complaint filed
against Raubritter.

### iii.    Relation Back

According to the Amended Complaint, SKAT paid the first refund to Raubritter on
February 11, 2013. SKAT filed its complaint against Raubritter less than six years later – in May
2018. Accordingly, if SKAT's claims against Burns relate back to the original complaint, then they
would be timely under New York's six-year statute of limitations.

The Court applies either the New York or federal relation back doctrine, depending
on which "affords a more forgiving principle of relation back."[48] Federal Rule of Civil Procedure
15(c) allows relation back where, among other requirements, "the party to be brought in by

_____

and Authorized Representatives.").

[47]    SKAT does not dispute that Burns was enriched when Raubritter received the funds, even though the funds may not have been distributed to him individually at that time. In any case, this argument would fail. As the sole participant in the plan, Burns was enriched by the plan's enrichment.

[48]    *Hogan v. Fischer*, 73 8 F.3d 509, 518 (2d Cir. 2013) (*quoting* Fed.R.Civ.P. 15, Advisory Comm. Notes 1991).

amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[49]  This Court previously explained that Rule 15(c) does not "appl[y] when an amended complaint adds a defendant instead of substituting one defendant for another" as SKAT seeks to do here.[50]

However, the "New York relation back doctrine . . . is more generous than [the] federal relation back doctrine."[51]  The New York Court of Appeals has explained that New York's relation back "doctrine enables a plaintiff to correct a pleading error – by *adding* either a new claim or *a new party* – after the statutory limitations period has expired."[52]  In fact, New York law allows the addition of parties who "but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against that party *as well*."[53]  This language clearly encompasses more than the federal rule and allows relation back to add new defendants in addition to the parties originally named.  Because New York's relation back doctrine is more favorable to SKAT, the Court applies it here.

---

[49]     Fed. R. Civ. P. 15(c).

[50]     *In re SKAT*, 2020 WL 7059843, at *6.

[51]     *Abdell v. City of New York*, No. 05-cv-8453 (KMK), 2006 WL 2620927, at *5 (S.D.N.Y. Sept. 12, 2006).

[52]     *Buran v. Coupal*, 87 N.Y.2d 173, 177 (N.Y. 1995) (emphasis added) (allowing relation back to add original defendant's wife as defendant when plaintiffs discovered that she was a co-owner of the property at issue).

[53]     *Losner v. Cashline, L.P.*, 303 A.D.2d 647, 648 (2nd Dep't. 2003) (*citing, inter alia, Buran*, 87 N.Y.2d at 178).

14

Under New York law, an amended complaint relates back to the original complaint when: "(1) both claims arose out of the same conduct, transaction or occurrence, (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that the new party will not be prejudiced in maintaining its defense on the merits by the delayed, otherwise stale, commencement, and (3) the new party knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against that party as well."[54] SKAT's allegations are sufficient to claim plausibly that these requirements are satisfied.

First, SKAT's claims against Burns and Raubritter arise from the same conduct, transaction, or occurrence – i.e., the submission of allegedly fraudulent tax refund claims to SKAT.

Second, Burns and Raubritter are united in interest with regard to this litigation because SKAT alleges plausibly that Burns acted as Raubritter's *alter ego* in submitting the tax refund applications. To establish an *alter ego* relationship, a party "must establish that '(1) the owners exercised complete domination of the corporation in respect to the transaction attacked[] and (2) that such domination was used to commit a fraud or wrong against the plaintiff [that] resulted in the plaintiff's injury.'"[55] Here, SKAT alleges that Burns is the sole participant in the Raubritter plan and the "Authorized Person" for Raubritter's sponsor – a shell entity that Burns formed and named.[56] In addition, it alleges that Burns executed the General Partnership Agreement to facilitate

54        *Id.* at 647-8 (*citing, inter alia, Buran*, 87 N.Y.2d at 178).

55        *Verizon New York, Inc. v. Labarge Bros. Co.*, 81 A.D.3d 1294, 1296 (4th Dep't. 2011).

56        Am. Compl. ¶¶ 42, 48-49.

the submission of tax refund claims to SKAT and listed his home address on Raubritter's tax refund claims.[57]  As the Court explained previously with regard to other defendants in this multidistrict litigation, these allegations are sufficient to aver plausibly that Burns dominated Raubritter and caused it to commit the alleged fraud.[58]  Accordingly, SKAT sufficiently alleges that Raubritter and Burns are *alter egos* and are therefore united in interest with regard to SKAT's claims against them.

      This relationship supports also a plausible inference that Burns knew about the litigation against Raubritter when this action was initiated.  SKAT served Raubritter by mailing service packages to Heartland Family Group's registered agent in Delaware.[59]  It is at least plausible that Burns, who formed Heartland Family Group and was its "Authorized Person," was notified of the service on its registered agent.

      Finally, for the reasons discussed above, SKAT alleges adequately that Burns was behind Raubritter's fraudulent tax refund applications.  Accordingly, it is plausible that Burns knew he would have been named as a defendant if SKAT had been aware of his role in the scheme.  This is sufficient to establish the final prong of the relation back doctrine.[60]  For the forgoing reasons,

---

[57]

    *Id.* at ¶¶ 48, 53-54.

[58]

    *See In re SKAT*, 2020 WL 7059843, at *9.

[59]

    The Court authorized this alternative method of service.  Dkt. 33.

[60]

    *See e.g. Haidt v. Kurnath*, 86 A.D.3d 935, 936 (4th Dep't. 2011) ("Plaintiff established that her failure to include defendant in the original complaint was a mistake and not the result of a strategy to obtain a tactical advantage" where "plaintiff submitted evidence demonstrating that she did not have sufficient knowledge of defendant's role" in the alleged medical malpractice at the time it occurred or when the action was commended.) (cleaned up); *Abdell*, 2006 WL 2620927, at *6 (collecting cases allowing relation back where the plaintiff did not know defendant's role in the alleged misconduct). *See also Blakeslee v.*

SKAT's claims against Burns relate back to the initial complaint filed in 2018 and are timely under New York law.

### B.   *Denmark*

Under N.Y. C.P.L.R. § 202, SKAT's claims must be timely also under Danish law. In applying this rule, the "entire foreign statute of limitations . . . applies, and not merely its period."[61]

SKAT contends that under Danish law its claims would be subject to a three year statute of limitations that began to run only when it knew or should have known of its claims against Burns.[62] Burns does not dispute that this is the correct standard under Danish law. Accordingly, the Court proceeds under the premise – accepted by Burns – that the three years' limitations period did not begin to run until SKAT should have "become aware" of its claims against Burns.[63]

---

*Royal Ins. Co. of America*, No. 93-cv-1633 (MBM), 1998 WL 209623, at *6 (S.D.N.Y. Apr. 29, 1998) (Explaining that under the "third prong of [New York's relation back] test, courts should focus on whether the party invoking the relation back doctrine acted intentionally or in bad faith in not including all the appropriate parties in the original pleading.").

[61]  *Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 34 N.Y.3d 327, 339 (2019) (cleaned up and citations omitted).

[62]  Opp. [Dkt. 142] at 16 (*citing* Declaration of Mads Bryde Andersen [Dkt. 144]).

[63]  Reply [Dkt. 148] at 8 ("The same basic question applies under Danish Law (as applied by the New York borrowing statute): when SKAT should have 'become aware' that it had claims against Burns.").

A "party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the district court to apply it in a particular case." *Yukos Cap. S.A.R.L. v. Feldman*, No.

As discussed with regard to the discovery rule under New York law, it is not apparent from the face of the complaint when SKAT should have discovered its claims against Burns. Accordingly, the Court denies Burns' motion to dismiss SKAT's claims based on the statute of limitations.

## II.    *Sufficiency of the Substantive Allegations*

Burns argues also that SKAT fails to allege with particularity that he acted with fraudulent intent.[64]   As explained in the Court's prior decisions, "SKAT adequately can plead scienter either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"[65]

As discussed above, SKAT alleges adequately that Burns controlled Raubritter. These allegations permit an inference that Burns caused Raubritter to submit the fraudulent refund applications to SKAT.   In addition, SKAT alleges that Burns was the sole participant in the Raubritter plan, which received 10 percent of the $9 million in tax refunds issued by SKAT.[66]   These allegations adequately allege Burns' motive even without regard to the inference of culpable intent

---

15-cv-4964-(LAK), 2016 WL 183360, at *2 (S.D.N.Y. Jan. 11, 2016) (citation omitted) (collecting cases).   Burns does not challenge SKAT's arguments with regard to the applicable Danish law and therefore fails to carry this burden.

[64]   Br. at 15.

[65]   *In re SKAT*, 2020 WL 7059843, at *9 (*quoting In re SKAT*, 356 F. Supp. 3d at 323-24 (*quoting Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995))).

[66]   Am. Compl. at ¶¶ 18, 47, 53.

18

that might be drawn from the choice of the German word for "robber baron" as the name of the pension plan that submitted these allegedly fraudulent refund application.  Accordingly, Burns' intent is alleged sufficiently.[67]

III.     *The Revenue Rule*

Burns claims that this action is barred by the revenue rule.[68]  The Court already addressed this argument and concluded that the revenue rule did not require it to dismiss SKAT's claims at this point.[69]  That conclusion applies here as well.

### Conclusion

For the forgoing reasons, defendant's motion to dismiss [18-cv-4833, Dkt. 136; 18-md-2865, Dkt. 500] is denied.

SO ORDERED.

Dated: June 30, 2021

_____
Lewis A. Kaplan
United States District Judge

---

[67]     Burns also incorporates the arguments raised by other defendants in 18-md-2865, Dkt. 134. The Court previously denied that motion and that decision applies here as well. *See* 18-md-2865, Dkt. 243.

[68]     Burns purports to rely on a motion to dismiss filed by other defendants in support of this argument. *See* Br. at 15 (*citing* 18-md-2865, Dkt. 134).  The cited motion did not address the revenue rule.  In any case, as noted above, the Court denied that motion.  18-md-2865, Dkt. 243.

[69]     *See In re Skat*, 356 F. Supp. 3d at 319.