

Hughes Hubbard & Reed LLP<br>
One Battery Park Plaza<br>
New York, New York 10004-1482<br>
Telephone: +1 (212) 837-6000<br>
Fax: +1 (212) 422-4726<br>
hugheshubbard.com<br>
<br>
Marc A. Weinstein<br>
Partner<br>
Direct Dial: +1 (212) 837-6460<br>
Direct Fax: +1 (212) 299-6460<br>
marc.weinstein@hugheshubbard.com

BY ECF

Honorable Lewis A. KaplanJuly 12, 2021
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
KaplanNYSDChambers@nysd.uscourts.gov

      Re:    *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

      We write on behalf of plaintiff Skatteforvaltningen ("SKAT") to (i) respond to the July 8, 2021 letter to the Court from defendant Gregory Summers and his two pension plans, defendants Acorn Capital Corporation Employee Profit Sharing Plan and Acorn Capital Strategies, LLC Employee Pension Profit Sharing Plan and Trust, asking for leave to file "a dispositive motion, before any further discovery takes place," or, alternatively, "a confidential form of motion to sever from the MDL," and (ii) move to compel defendant Summers and his plans, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), to produce by July 19, 2021, documents in their possession, custody, or control that are responsive to SKAT's document requests served over two and a half years ago in November 2018.[1]

      Defendant Summers, his pension plans, and the non-party entity Chartwell Trading, Inc. he controls, have been playing games to delay discovery from them for over two years.  After many attempts by SKAT to schedule it, defendant Summers' deposition is noticed for July 26, 2021, two weeks from now.  On June 22, 2021, defendant Summers informed SKAT that he had located a hard drive of documents from Chartwell (of which defendant Summers is president, and which SKAT subpoenaed on January 5, 2021), and that he would produce any responsive documents before his deposition.  Setting aside the recently discovered Chartwell hard drive, in response to SKAT's November 29, 2018 requests seeking documents concerning the fraudulent tax refund applications that defendant Summers' two plans submitted to SKAT over a three-year period to recover over 35 million Danish kroner (over $5 million) in tax purportedly withheld

---

1. Ltr. addressed to Judge Lewis A. Kaplan from John M. Hanamirian, Esq. dated Jul. 8, 2021, No. 18-md-02865, ECF No. 638, at 3.  Defendants' letter and this response and letter motion relate to case number 18-cv-10088.

from 11 dividends, defendants have produced just *one* document and implausibly claim to have no others, while refusing to answer SKAT's questions about how they have searched for them.[2]

Now, in a last-ditch attempt to continue to avoid their discovery obligations, defendants ask the Court to stay discovery and grant them leave to make a "dispositive motion," arguing that the revenue rule proscribes SKAT's claims as pleaded—a motion the Court already denied—or, alternatively, grant them leave to move to sever this action from this multi-district litigation—a request the Court also previously denied. (Jul. 8 Ltr. 3.)[3] The Court should deny leave on both counts because neither of defendants' proposed motions is likely to succeed nor would they be an efficient use of the parties' or the Court's resources, and there is no cause to stay discovery. Instead, to avoid further delay, the Court should order that defendant Summers' deposition take place on July 26, 2021, and that defendants produce no later than July 19, all responsive documents in their possession, custody, or control, including from the Chartwell hard drive.

### **The Court should compel defendants to participate in discovery.**

Defendant Summers and his plans, thus far, effectively have refused to participate in discovery. In response to SKAT's November 2018 document requests, defendants produced no documents for over a year, and then on December 2, 2019, produced the same ED&F Man Capital Markets, Ltd. account statement four times—which remains the sum total of their production to date. Until May 2021, defendants informed SKAT that they were refusing to produce documents on Fifth Amendment grounds under the act of production doctrine.[4] Up until then, defendant Summers similarly informed SKAT that he would invoke the Fifth Amendment in response to any questions SKAT posed to him at his deposition. On May 4, 2021, however, defendant Summers informed SKAT that, contrary to his previous representations, he would answer questions concerning his plans' Danish tax refund applications, and would assert the Fifth Amendment only in response to questions about his activities in other jurisdictions. When SKAT subsequently asked for the documents related to those refund applications he would testify about, which defendants previously asserted they were withholding on Fifth Amendment

---

2. SKAT's document requests to defendants are attached hereto as Exhibits 1 and 2, respectively.

3. Defendants purport to write "in response to the" Court's Pretrial Order No. 24, but in truth they ignore it. (Jul. 8 Ltr. 1.) The Court's Pretrial Order No. 24, in relevant part, directed the parties to meet and confer and by July 29, "file a **joint** report on behalf of all parties summarizing the status of discovery to that date, the discovery remaining to be completed or conducted, and a proposed schedule for its completion," and by August 27, file a "**joint** report on behalf of all parties" concerning how best to approach motions for summary or partial summary judgment given that the "[t]he prospect of many" such motions, "each with its own slant in facts common to all cases or to identifiable groups of cases, seems real, not to mention probably costly and time consuming." (ECF No. 630.) Defendants' July 8 letter pays no heed to the Court's order in proposing to stay, rather than complete, discovery, while the Court considers their own particular "dispositive motion" based on the revenue rule, which they concede is likely to be similar to summary judgment motions that the defendants in SKAT's other actions pending before the Court may file.

4. Setting aside whether defendant Summers properly invoked the act of production doctrine as to himself, the defendant pension plans (and non-party Chartwell) cannot refuse to produce documents on Fifth Amendment grounds. *See In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985) ("There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege.").

grounds, defendants responded that, in fact, they have no such documents and stonewalled SKAT's inquiries into how that could be so.

Chartwell likewise has failed to produce any documents in response to the January 5, 2021 subpoena SKAT served on it.  On June 22, 2021, defendant Summers informed SKAT that he had located a Chartwell hard drive from which he would produce any responsive documents before his July 26 deposition.  Now, however, defendants ask in their July 8 letter that the Court stay discovery.

To avoid further unnecessary delay in this action, in addition to denying defendants the relief they seek in their letter, the Court should order that defendant Summers' deposition take place on July 26, as noticed.  The Court also should compel defendant Summers to produce all documents in his possession, custody, or control, including those from the Chartwell hard drive, that are responsive to SKAT's document requests no later than July 19.  *See S.E.C. v. Strauss*, No. 09 Civ. 4150 (RMB)(HBP), 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) ("a party has control over material that it has the practical ability to obtain" or "a legal right to obtain").  To the extent defendants stand on their representation that they have no such documents, the Court should order them to provide an explanation of the efforts they have made to locate them.

**The Court should deny defendants' request for leave to file a dispositive motion.**

Defendants' primary request in their July 8 letter is for leave to file a "dispositive motion" based on the revenue rule and in the meantime to put off indefinitely defendant Summers' deposition and production of the Chartwell documents.  (Jul. 8 Ltr. 3.)  Defendants argue that their proposed motion is likely to succeed, while further discovery, in particular Mr. Summers' deposition, will "forever compromise[]" his "domestic and international constitutional rights."  (*Id.* at 2-3.)  Neither of these propositions withstands scrutiny.

Contrary to their letter, defendants' proposed renewed motion to dismiss SKAT's claims based on the revenue rule and "entirely upon the law and the pleadings as they exist in this Litigation and in the United Kingdom litigation" is not likely to succeed.  (*Id.* at 3.)  As defendants acknowledge, the Court already rejected the argument that the revenue rule required dismissal of SKAT's claims on the pleadings.  *See In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308 (S.D.N.Y. 2019) ("If plaintiff can prove that the defendants never in fact owned the relevant Danish stocks—and the Court is obliged to accept their allegations as true for present purposes—the revenue rule would not apply because the substance of the claims would be for garden variety commercial fraud.").  A decision which the Court reaffirmed just last week. *See In re Customs and Tax Administration of the Kingdom of Denmark (Skat) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908, at *8 (S.D.N.Y. Jun. 30, 2021) ("The Court already addressed this argument and concluded that the revenue rule did not require it to dismiss SKAT's claims at this point.").

Nor will Mr. Summers' purported "domestic and international constitutional rights" be "compromised" if his deposition goes forward on July 26.  (Jul. 8 Ltr. 2-3.)  Defendants bluster that discovery "is not a license to conduct an international fishing expedition" and that it "cannot be used for international criminal discovery," as if that were what SKAT is seeking to do.  (*Id.* at 2.)  But questions concerning Mr. Summers' previous participation in other illegal purported

"dividend arbitrage" schemes are not a "fishing expedition." Mr. Summers' knowledge of and participation in previous similar schemes is relevant to whether Mr. Summers knew that his plans' refund applications to SKAT were false and his intent to defraud SKAT. If Mr. Summers would incriminate himself by answering certain of SKAT's deposition questions, then he may invoke his Fifth Amendment right to refuse to answer those questions.[5] Finally, defendants ignore the stipulated protective order governing discovery in this litigation, which, among other things, limits the parties' use of discovery material to SKAT's civil litigation seeking to recover amounts it paid as a result of fraudulent dividend withholding tax refund applications. (ECF No. 489 ¶ 21.)[6]

**The Court should deny defendants' request for leave to file a motion to sever.**

There likewise is no basis for defendants' alternative request for leave to file a "motion to sever from the MDL." (Jul. 8 Ltr. 3.) Defendants' counsel already proposed to the Court that this action be severed based on similar "concerns" as expressed in their July 8 letter, to which the Court responded, "That's not going to happen. I already ruled on that, in effect, and the multi-district panel already ruled on that, in effect. This is a consolidated pretrial proceeding and you're in it, whether you like it or not." (Jan. 24, 2019 Hr'g Tr. 10:16-20.)[7] Nothing has changed since to make severance of the action against defendant Summers and his pension plans any more appropriate now.

Accordingly, SKAT respectfully requests that the Court (i) deny defendants' request for leave to file a dispositive motion based on the revenue rule, or, in the alternative, a motion to sever, (ii) order that defendant Summers' deposition shall take place on July 26, 2021, as noticed by SKAT, (iii) compel defendants to produce all documents responsive to SKAT's requests in their possession, custody, or control, including those from the Chartwell hard drive, no later than July 19, and (iv) to the extent defendants stand on their representation that they have no such documents, order defendants to disclose the steps they have taken to locate them.

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

cc:   All counsel of record (via ECF)

---

5. SKAT reserves the right to challenge any of Mr. Summers' invocations to the extent they are improper, including by moving to compel Mr. Summers to answer its questions.

6. Defendants' "concern[]" that the other defendants in this multi-district litigation may use Mr. Summers' deposition as an opportunity to ask about "any testimony or any dialogue that Mr. Summers may have had in any other jurisdiction" where they all may (or may not be) suspected of criminal wrongdoing similarly ignores the protective order's limitations on the use of information obtained through discovery. (Jul. 8 Ltr. 2.) And to the extent Mr. Summers believes he would be prejudiced by the disclosure of any of his testimony to other defendants, he may seek to designate any such testimony "highly confidential" under the protective order if appropriate, thus precluding it from being disclosed to them (as opposed to their counsel). (ECF No. 489 ¶ 11.)

7. A copy of the transcript of the January 24, 2019 conference is attached hereto as Exhibit 3.