```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK


In re:                             :
                                     Docket #1:18-md-02865-
IN RE:  CUSTOMS AND TAX ADMINIS-   : LAK-RWL
TRATION OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND   :
SCHEME LITIGATION                    New York, New York
                                   : June 17, 2021

----------------------------------- : TELEPHONE CONFERENCE

                      PROCEEDINGS BEFORE
            THE HONORABLE JUDGE ROBERT W. LEHRBURGER,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:           HUGHES HUBBARD & REED LLP
                         BY:  WILLIAM R. MAGUIRE, ESQ.
                         One Battery Park Plaza
                         New York, New York 10004
                         212-837-6000


For Defendant:           WILMER CUTLER PICKERING HALE AND DORR
                         BY:  ANDREW S. DULBERG, ESQ.
                         60 State Street
                         Boston, Massachusetts 02109
                         617-526-6352




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
 1                          PROCEEDINGS                   3
 2              HONORABLE ROBERT W. LEHRBURGER (THE COURT):   Good
 3    afternoon, this is Judge Lehrburger in In Re Customs or
 4    what is known as SKAT, number 18 multidistrict 02865 and
 5    other related cases under the multidistrict label.
 6              We're here because of an issue that's been raised
 7    about material that the plaintiffs feel should be produced
 8    based on waiver of attorney-client privilege.  Counsel who
 9    is going to speak, please identify yourself, starting with
10    plaintiff.
11              MR. WILLIAM R. MAGUIRE:  Good afternoon, your
12    Honor.  This is Bill Maguire from Hughes Hubbard & Reed for
13    the plaintiff.
14              THE COURT:  All right.  And for the defense?
15              MR. ANDREW DULBERG:  Drew Dulberg from Wilmer Hale
16    for the defendants.
17              THE COURT:  All right, is there anybody else on
18    who will be speaking?
19              All right.  So I know you all are talking to me
20    for the first time.  I know this has been before Judge
21    Kaplan.  And he referred this to me, and I don't know if
22    he'll refer other things to me -- maybe he will.  But I
23    have gained familiarity with this, and I have looked at
24    your letters and the cases, so I feel that I understand
25    generally what is going on.  And I do have a few questions.
```

1                                  PROCEEDINGS                          4

2     Certainly, you're free to say whatever you'd like to

3     address.

4              But I would like to start with a couple of

5     questions directed at the plaintiff.  First, you know, one

6     thing that does make this a little different or seems to

7     possibly is that the attorney, Mr. Ben-Jacob, is a

8     defendant.  What is the theory of liability against him, in

9     particular?

10             MR. MAGUIRE:  The theory of liability against him

11    in particular, your Honor, is one of aiding and abetting

12    the fraud committed by the other defendants.  There are

13    some claims in which he himself made representations, and

14    for those there are fraud and other claims.  But the

15    overarching claim, which includes, not only where he

16    personally made representations but also where he assisted

17    the defendants in making their representations to SKAT in

18    which they obtained hundreds of millions of dollars from

19    SKAT is aiding and abetting fraud.

20             THE COURT:  Okay.  All right.  Thanks.

21             And what exactly is it that you are asking or

22    looking for that hasn't been turned over?  I've seen a few

23    different formulations between the parties.  Defendants are

24    saying you're asking for the entire file.  You're citing

25    some cases that use terms short of that.  What would you

```
 1                          PROCEEDINGS                    5
 2   say it is exactly that you're asking for that you don't --
 3             MR. MAGUIRE:  Yeah, I think it's correct to say
 4   we're asking for the entire file, your Honor.  Effectively,
 5   what we're looking for is the entire transaction file for
 6   the transactions.  So Mr. Ben-Jacob was the lawyer at Kaye
 7   Scholer for his clients, who are the defendants here.  He,
 8   too, is a defendant also facing a claim of fraud.  And what
 9   we're seeking is the entire historic file for those
10   transactions.  We agree, frankly, with the defendants that
11   the issue here is one of relevance, not of work product.
12   And the issue, frankly, is Mr. Ben-Jacob's historic
13   transaction file for these transactions, which are the
14   subject of all of SKAT's claims and relevant to those
15   claims.
16             THE COURT:  Right.  And one of the cases you rely
17   on or the principal case you seem to rely on is *Matsushita*,
18   is that right?
19             MR. MAGUIRE:  That's right, your Honor.
20             THE COURT:  So in there, the Court says or
21   characterizes what should be discovered or can be
22   discovered as follows:  "Information and analyses
23   defendant's counsel relied upon or considered in rendering
24   the advice."  That seems to me something short of the
25   entire file.  Would you agree or no?
```

| 1 | PROCEEDINGS 6 |

```
 2          MR. MAGUIRE:  No.  I think you're probably right,
 3   your Honor.  I think, as phrased that way, there could be
 4   some things that don't quite fit within that.  I would
 5   think that would be broad enough to cover almost everything
 6   of importance.  I think that would leave out, frankly,
 7   things of sort of an administrative nature or things that
 8   wouldn't, you know, make their way into the file but maybe
 9   weren't accorded as much time.  But I don't think, frankly,
10   we should spend a lot of time on that because I think that
11   kind of carveout only creates room for mischief, frankly.
12   I think in a fraud case involving a transaction, it's hard
13   to see how the transaction file for the transaction that is
14   the subject of the fraud would not be relevant in its
15   entirety.
16          THE COURT:  Right.  And you mentioned at the end
17   of your letter the crime-fraud exception to privilege,
18   although here we're not necessarily focusing on material
19   that is privileged, given that that has been produced.  But
20   you didn't really go into that that much, I thought.  Is
21   that what you're relying on principally?
22          MR. MAGUIRE:  No, not at all, your Honor.  We put
23   that in.  Obviously, crime-fraud would involve a much
24   bigger showing than we could fit into a discovery motion
25   letter.  So that was really put in in the event there was a
```

| 1 | PROCEEDINGS 7 |

dispute about that.  But there is no dispute about that.

The defendants have, I think correctly, framed the issue

here as one of relevance, not of work product, in

opposition to our motion.  There is no declaration by

anyone saying that anything here was prepared in

anticipation of litigation.  And, frankly, there couldn't

be.  This is a transaction file.  The Kaye Scholer lawyers

working on this were all transaction lawyers.  There's no

litigator, no trial counsel; there's no issue of litigation

strategies.  And so the crime-fraud exception I think is

off the table.

THE COURT:  Okay.  That makes sense.  All right,

let me ask Mr. Dulberg for the defendants, you know, what

do you have to say, particularly given some of the things

you've just heard Mr. Maguire say, you know, where this

is about discovery, the only issue here is relevance;

work product and attorney-client are off the table;

you have a defendant who is in fact the attorney or an

attorney who worked on the file?  Why isn't this a

case where the entire file should be produced as

potentially relevant?

MR. DULBERG:  Well, good question, your Honor.

And I think it's important to recognize that the motion

today is brought against defendants who are not the lawyer,

```
 1                         PROCEEDINGS                      8
 2   Mr. Ben-Jacob.  And so the discovery that the defendants at
 3   issue in this motion produced is relevant only to an
 4   advice-of-counsel defense, and that's the barometer that
 5   matters here.  And so the entire file, as Ecostar and other
 6   cases, including subsequent cases in the Southern District
 7   made clear, what's relevant to an advice-of-counsel defense
 8   is the advice and any internal communications reflecting
 9   that advice or any information the client provided.  And
10   that's what we've turned over.  I mean, the volume of
11   information the defendants at issue in this motion have
12   produced is staggering.  Between 2019 and this April, we've
13   turned over almost 75,000 documents weighing -- more than
14   400,000 pages.  And the advice-of-counsel production alone
15   was about 30,000 of those documents and almost a quarter-
16   million pages.  The argument from SKAT's motion that, well,
17   some of the advice was rendered orally and therefore we
18   need the entire file falls short when the exhibits they
19   attach to their motion make clear that we turned over their
20   talking points before a call, their summary of the call
21   afterwards.  So there's really nothing that's missing that
22   could be relevant to what matters here, which is the
23   advice-of-counsel defense.
24            THE COURT:  Well, you say -- was Mr. Ben-Jacob
25   involved in providing the advice?
```

```
 1                        PROCEEDINGS                      9

 2             MR. DULBERG:  Yes, yes, he absolutely was.  But my

 3   point is, from the perspective of the parties to the

 4   motion, what's relevant is our state of mind, which can

 5   only be elucidated by information that was given to us.

 6   And so the fact that Mr. Ben-Jacob is separately a

 7   defendant in cases that both include the parties to this

 8   motion and also do not include the parties to this motion

 9   is kind of beside the point.

10             THE COURT:  But isn't part of the inquiry in

11   regards to advice of counsel the reasonableness of the

12   counsel advice, and isn't the material that's in the file

13   that hasn't been produced potentially relevant to the

14   reasonableness of that advice?

15             MR. DULBERG:  I think it's hard to know.  The

16   answer to your first question is yes; the reasonableness of

17   the advice is a consideration -- that's clear.  It is not

18   clear to me that that fact necessitates the production of

19   the entire file or even the parts of it that the Matsushita

20   court thought were appropriate for production.  You know,

21   the advice here is very complicated and involves U.S. tax

22   law, international treaties, etc.  But we think the

23   reasonableness of it can be assessed from the quarter-

24   million pages of back-and-forth with counsel, including, as

25   I said, a significant number of internal emails that have
```

```
 1                        PROCEEDINGS                  10
 2  already been produced.  And it's hard to imagine that more
 3  is going to shed light in a way that is going to move the
 4  needle on whether the advice itself was reasonable or not.
 5            THE COURT:  And what is or how would you describe
 6  the volume of what we're talking about that hasn't been
 7  produced that would have to be produced if that were so
 8  ordered?
 9            MR. DULBERG:  My understanding is it's roughly
10  11,000 documents.  And, again, part of the issue here is
11  that Kaye Scholer and the lawyers involved provided advice
12  on a range of topics, including estate -- personal estate
13  planning, that had nothing to do with dividend arbitrage in
14  Europe.  And so, you know, it's not quite as easy as
15  pushing a button and turning over what Mr. Maguire called
16  the entire file.
17            THE COURT:  Right.  And is the 11,000 what you
18  are estimating as including just the ones that are
19  pertaining to the particular transaction, or does it
20  include the ones --
21            MR. DULBERG:  No, no, we have essentially -- we
22  have sort of an undifferentiated set of materials that we
23  would have to go through if so ordered.
24            THE COURT:  I see.  And what is the current
25  discovery schedule situation?  I know that Mr. Ben-Jacob is
```

```
 1                            PROCEEDINGS                    11
 2  supposed to be deposed in just a few days or so.  But what
 3  else is going on that these documents might be pertinent
 4  to?
 5            MR. DULBERG:  Well, for the past --
 6            THE COURT:  Why don't we have Mr. Maguire answer
 7  that once, since he's the one looking for the documents?
 8            MR. DULBERG:  Sure.  Thank you, your Honor.
 9            MR. MAGUIRE:  Yes, your Honor.  These documents
10  are fairly fundamental to the entire fraud.  So there are a
11  number of letters of request, letters rogatory that are
12  outstanding.  And there are a number of witnesses who still
13  need to be deposed.  It's a little complicated, frankly,
14  because of the fact that this is international.
15            But just to give you a sense of how fundamental
16  this is, in the documents that the defendants submitted, A
17  and B, they give an example, I think to reassure us that
18  there's nothing missing here.  But those examples show
19  basically the template for plans, and there were many --
20  dozens and dozens and dozens of plans and partnerships.
21  And there were dozens of partnerships involving many, many
22  defendants here.  So this is a very potentially far-
23  reaching matter.  It's hard for me to tell you what exactly
24  and who exactly it would implicate without seeing the
25  documents.  But the real point is this is the transaction
```

```
 1                        PROCEEDINGS              12

 2  file, so this goes to the very heart of the transactions.

 3            MR. DULBERG:  Your Honor, if I could just --

 4            THE COURT:  Wait.  Hold on.  Hold on.  Just one

 5  thing.  Where are we in terms of discovery, like, what's

 6  the end date for discovery, and where are you in terms of

 7  depositions, etc.?

 8            MR. MAGUIRE:  Your Honor, in terms of discovery,

 9  Judge Kaplan issued an order this morning in which he asked

10  the parties to confer and report to him with respect to

11  remaining discovery and issues and ordered the parties to

12  meet and confer and come back to the Court with I guess

13  effectively a plan for the conclusion of discovery.  We

14  have not yet -- we had independently reached out to the

15  defendants today before we got Judge Kaplan's order, but we

16  have not begun that process.  We have notified them, and

17  they are obviously aware of a number of open items that we

18  have, but I think we're talking, clearly, in terms of a

19  number of months to wrap everything up.

20            MR. DULBERG:  If I could --

21            THE COURT:  Yes, and I'm trying to -- hold on.

22  One more thing.  And I'm trying to understand where, even

23  without respect to time, just where this is fitting in.  Is

24  this like the tail end, are you going to use it to go back

25  and try to depose people who've already been deposed, that
```

```
 1                          PROCEEDINGS                    13

 2   type of thing?

 3           MR. MAGUIRE:  Our hope is very much not to

 4   reinvent the wheel, so I do not expect that we will be

 5   going back, as a general matter, to redepose people.  I

 6   can't exclude completely the possibility that there might

 7   be a defendant or maybe a couple of defendants, but we are

 8   certainly not looking at this as a way to sort of reopen

 9   discovery or prolong discovery or to go back and redepose

10   people.

11           THE COURT:  Right.  And, Mr. Dulberg, I kept on

12   holding you off.  What did you want to say?

13           MR. DULBERG:  And I apologize for continuing to

14   interrupt.  It's a phenomenon of hearings by phone that I

15   would hope to avoid in person.  But I just need to strongly

16   disagree with a number of things Mr. Maguire said.  Since

17   essentially December of 2020, the parties have agreed that

18   fact discovery would close on June 30th, which is in two

19   weeks.  About a week ago the plaintiff said that discovery

20   simply will not end because its appetite for further

21   discovery is somewhat insatiable, and they've continued --

22   you know, this is a case where the plaintiff has taken more

23   than 40 depositions.  They've scheduled more depositions in

24   July and August, notwithstanding their agreement and the

25   fact that they've told the Court repeatedly that the
```

```
 1                        PROCEEDINGS                    14
 2   parties have agreed on a June 30 close of fact discovery.
 3            So before this issue arose, SKAT had taken the
 4   deposition of every client of Michael Ben-Jacob that is the
 5   subject of this motion.  We are at the tail of discovery.
 6   The suggestion that these documents are fundamental and yet
 7   they're moving to -- discovery has been going on for three
 8   years in this case.  This production was completed in
 9   March.  Now it truly is the 11th hour that this issue is
10   arising.  And while it is true that earlier today Judge
11   Kaplan issued an order setting a status conference for
12   September and requiring some pleadings before then to talk
13   about summary judgment and the path forward, it is very
14   much the case that discovery should be ending.  We've, as I
15   said, produced hundreds of thousands of documents.  And the
16   idea that we're going to open the door for marginally
17   relevant information that will not bear on the mental state
18   of the defendants in this case, who have been deposed
19   months ago, is, from our perspective, just not the case.
20            THE COURT:  All right, Mr. Maguire, anything
21   lastly -- you want to say last?
22            MR. MAGUIRE:  If I might?  Thank you, your Honor.
23   I would just -- it appears, from what we've heard this
24   afternoon is that the defendants, frankly, were using the
25   wrong standard of relevance.  They were looking at
```

1
2  relevance in a very cribbed way as to what was relevant
3  only to the advice-of-counsel defense and not relevance to
4  the pleadings that are before the Court and to all the
5  claims that have been asserted, including the claims
6  against Mr. Ben-Jacob.  So there's really no basis for that
7  kind of cribbed, attenuated version of relevance.
8          With respect to the logistics here, we certainly
9  are not going to reinvent the wheel, and there's no way the
10 Court would allow us to go back and depose people again.
11 So I have no concern whatever on that ground.
12          In terms of getting these documents and having to
13 review them again, I really don't believe there's a basis
14 to review documents which were already reviewed, I
15 understand, by Arnold & Porter when they collected these
16 documents and gave them to the defendants so they could be
17 produced to us and then were reviewed again by the
18 defendants before they made their productions.  If there is
19 something that slipped through the cracks, if there's
20 somebody's estate planning, we have no interest in that;
21 we're not going to use that.  And they can turn over those
22 documents right away.  If there's something that got
23 through that, we will send it back, they can claw it back.
24 We undertake absolutely not to use anything like that, and
25 everything will be subject to the protections of the

```
 1                        PROCEEDINGS                    16
 2   Court's Protective Order.  So we would respectfully submit
 3   that there's no reason not to proceed with the immediate
 4   production of this file.
 5            THE COURT:  And, Mr. Dulberg, I'll give you the
 6   last word.
 7            MR. DULBERG:  Sure.  I appreciate it.  There
 8   certainly were not discovery requests issued to the parties
 9   that are at issue in this motion that have anything to do
10   with Mr. Ben-Jacob's personal defense.  I couldn't even
11   tell you what requests for production SKAT issued to
12   Mr. Ben-Jacob.  The production we're talking about today
13   was only made to support an advice-of-counsel defense; and
14   under the law of this Court and from Ecostar and many other
15   cases, our production complies with the scope of relevance
16   to an advice-of-counsel defense.  That's all that the
17   defendants before the Court today should have to produce.
18   And I thank you very much for your time, for jumping into
19   this case, and for your consideration.
20            THE COURT:  Not a problem.
21            All right, I'm ready to rule.  I am going to
22   order production of the documents.  Granted, it's near the
23   end of discovery, but it's still discovery.  The privileged
24   material that was produced was produced back in March.
25   That's not that long ago, quite frankly, and it's not
```

PROCEEDINGS                    17

surprising that the issue -- this particular issue may not

have been ripe until a little bit more recently.  And there

are issues of potential oral advice.  I understand the

defendants produced communications with -- both internal

and external involving oral communications, but that does

not mean it shows the complete picture.  And as I said,

there's also the issue of reasonableness.

        I think there's a very narrow view that could be

given to saying that the advice-of-counsel defense does not

require any consideration of documents that don't reflect

communication to the client, either directly or as an

indication of what was said.  But this case strikes me as

one where such a narrow reading would not be appropriate.

So I am ordering their production.

        And, Mr. Dulberg, what do you need in terms of

timing?  You asked for more time than what I think the

plaintiffs were seeking, given the timing of Mr. Ben-

Jacob's deposition.

        MR. DULBERG:  Well, I think one question for your

Honor is you had suggested at the outset that the scope --

the appropriate scope is less than everything.  And I think

that's absolutely right.  Even *Matsushita*, the case

Mr. Maguire put forward as sort of the best case for

SKAT, limited the production to information relied upon

PROCEEDINGS                 18

1
2   or considered in formulating the advice.  I think that
3   would be an appropriate limitation here.  But I think,
4   you know, my answer will depend on that, but I think
5   four weeks or 30 days would be a reasonable amount of
6   time to comply with an order, given the magnitude of
7   information we will need to review.
8              THE COURT:  Right.  And, Mr. Maguire, why
9   don't you comment on both of those, both with regard to
10  the fact that the scope as was just articulated is
11  what I mentioned at the beginning and it is what is
12  set forth in *Matsushita*, which is the case that you
13  principally rely on and also comment on timing?
14             MR. MAGUIRE:  Yes, I hear your Honor, yes.
15  Well, I think as you noted, your Honor, the
16  distinguishing feature here with *Matsushita,* which is
17  a very persuasive case, very compelling case and well-
18  reasoned by Magistrate Judge Dolinger, but the one
19  compelling difference is that here counsel is a
20  defendant; there are claims against counsel.  So where
21  one might normally try to slice and dice things a
22  little bit, it's very hard to do that here.  I can't
23  think of any case in which any court has ever held
24  that a defendant who is facing a claim of fraud in
25  connection with a transaction would produce anything less

PROCEEDINGS                    19

1

2    than the entire file that was put together under that

3    defendant's supervision in connection with that

4    transaction.

5         I do think you're right, your Honor, that there

6    may be some administrative stuff or there may be some

7    things that get into a law firm file that don't really rise

8    to the level of significance to the partner.  It is

9    possible there's something like that.  I just don't think

10   it's worth our while to try to craft wording around that.

11   If it's not that important, I think it should just be

12   produced; we're obviously not going to use it.  So,

13   respectfully, I think, given that we have a fraud case --

14   it is very complex, as Mr. Dulberg said -- I think prudence

15   really -- in fact, I can't think of any consideration,

16   really, that would go in this case against producing the

17   entire file.

18        In terms of the timing, we, of course, are willing

19   to extend every courtesy to the defendants in terms of

20   timing, anything that's reasonable at all.  Our issue,

21   however, is that the deposition is coming up on Tuesday.

22   So we have to get the documents before that.  If that

23   deposition were to move, then we would have more time, and

24   then, obviously, we would be willing to extend whatever

25   courtesies are appropriate.  But as of now, you know,

PROCEEDINGS                    20

1

2  unless Mr. Ben-Jacob and his counsel agree that they will

3  make themselves available at another later date, then we

4  need to have those documents for that deposition, in which

5  case I would respectfully ask that defendant simply turn

6  over the file immediately.  And, obviously, that will be

7  subject to the Protective Order, everything would be

8  confidential.  And if there is somebody's estate plan in

9  there somewhere and it doesn't get caught or we get it,

10 we're obviously not going to use it and it can be clawed

11 back.

12          THE COURT:  But help me understand something --

13 and I'm sorry to be getting back into substance here, but

14 it's something that you both have alluded to but seem to be

15 talking past each other one and I think I need a lot of

16 help with -- so the defendants at least seem to be saying

17 that Mr. Ben-Jacob is not part of this motion, and it's

18 what's coming from the defendants themselves that's being

19 sought, which may be different, so why is Mr. Ben-Jacob

20 that relevant, then, and why aren't these documents being

21 gotten from whatever, you know, wherever he was or from

22 him, etc.?

23          MR. MAGUIRE:  Yes.  Mr. Ben-Jacob was at Kaye

24 Scholer and currently at Arnold & Porter.  We've spoken

25 with his counsel on a number of occasions; we've also

```
 1                          PROCEEDINGS                    21

 2   spoken with Arnold & Porter.  We have made clear to them

 3   that we are not seeking duplicative discovery from them;

 4   we're not going to serve -- we are serving a subpoena, but

 5   we're not requiring them to produce documents that they've

 6   already produced to the defendants.  What was done here I

 7   think was pretty much best practice, which is that the law

 8   firm that had all the documents provided all of -- the

 9   entire file for production, basically, to the defendants so

10   that the defendants could then make the decision as to what

11   they were asserting privilege over and what they were not

12   asserting privilege over and what was subject to production

13   and not subject to production.

14          So we did not independently require Mr. Ben-

15   Jacob's law firm to produce the documents separately,

16   because any privilege or any protection or prerogative

17   belong to the client, not to the law firm.  So we've made

18   clear in our discussions with outside counsel for Arnold &

19   Porter and with Mr. Ben-Jacob that we expect them to fully

20   collect all responsive documents and to provide all

21   responsive documents, and they have assured us that the

22   entire file was collected and was provided to defendants so

23   it could be produced to us.  But it was then defendants who

24   asserted privilege.  And then in January of this year they

25   started to change that and started producing the documents.
```

1                                PROCEEDINGS                    22

2  But they are the source for all of these documents.  So

3  that is why procedurally we're looking to the defendants to

4  produce all of these documents.

5          THE COURT:  And when exactly did this issue about

6  the portion of the file that hasn't been produced, when did

7  that come to your attention?

8          MR. MAGUIRE:  So initially we got the production,

9  which included internal documents.  So we assumed, frankly,

10 that it was everything.  And it was quite a large

11 production.  So we started to go through that.  As we went

12 through it, we realized that there were internal documents

13 but there just didn't seem to be very many of them, and we

14 just would have expected there to be more emails and draft

15 memos.  Now, we did get drafts -- there were draft

16 memos -- but it didn't seem like there were an awful lot of

17 them or an awful lot of emails.  So, frankly, we went around a

18 little bit in circles.  We assumed that the defendants had

19 produced everything to us, so we went back to Mr. Ben-Jacob's

20 counsel to see if a proper production had been, you know,

21 collected by Arnold & Porter.  And we talked to him on a

22 number of occasions in April; and then ultimately in June, we

23 talked -- early June -- we talked with outside counsel for

24 Arnold & Porter, and we were assured that a full collection

25 and reasonable search was done by the law firm and all of the

```
 1                        PROCEEDINGS                    23
 2   documents, including the entire file, was provided to the
 3   defendants.
 4        So that's when we circled back and asked, you
 5   know, what's -- it appears that your production is
 6   incomplete.  And then we were told, oh, our view is you're
 7   not entitled to the internal documents.  And that was the
 8   first time we heard that.  I think that was May 28th.
 9        THE COURT:  Well, again, they've produced some
10   internal documents.
11        MR. MAGUIRE:  They have produced some internal
12   documents.  I think the distinction they were making, as I
13   understand it, is they're saying internal documents that we
14   think reflect communications we're producing to you;
15   internal communications that we think don't reflect
16   communications with the client we are not producing to you.
17   And that's a hard definition to apply, but that seems like
18   that's what they've been -- what they told us on May 28th.
19   Up until then, we thought we had the internal
20   communications.  And when we saw that there wasn't very
21   many of them, we went back and questioned whether the
22   proper search terms had been used or whether Arnold &
23   Porter had collected documents appropriately.  But we
24   understand that they did.
25        THE COURT:  All right, well, look, I'm going to
```

```
 1                        PROCEEDINGS              24
 2   stick by what I said, which is not as narrow as Mr. Dulberg
 3   is asking for, just because, again, I think this case is
 4   even different than Matsushita and others and requires
 5   the fulsome production.  But I'm also not going to
 6   order him to produce 11,000 documents in the course of
 7   four days.  They need whatever time they need, not --
 8   that doesn't mean just -- I'm no ordering that he just
 9   has to turn over an entire file regardless of what's
10   in it.  Because I don't know what's in it; and, yes,
11   there may be some things that aren't relevant but that
12   doesn't mean they should be produced willy-nilly.
13           So you're going to get your documents, but you
14   just may not have them for a deposition on Tuesday.  And
15   then whatever comes of that, you'll have to deal with or
16   the parties will have to deal with, or there'll have to be
17   a rescheduled deposition.
18           MR. MAGUIRE:  Very good, your Honor.
19           THE COURT:  So that's how we are proceeding.
20   And, Mr. Dulberg, I'll give you four weeks, 28 days, to
21   produce the material.  Okay?
22           MR. DULBERG:  Thank you, your Honor.
23           THE COURT:  All right.  Anything else.  Anything
24   else from you, Mr. Maguire?
25           MR. MAGUIRE:  Nothing from me, your Honor.  Thank
```

```
 1                        PROCEEDINGS                 25
 2   you.
 3           THE COURT:  Anything else, Mr. Dulberg?
 4           MR. DULBERG:  No.  But to the extent there has
 5   been some discussion of advice that has nothing to do --
 6   legal advice that is sort of beyond the scope of this case,
 7   am I correct in understanding you to be saying that
 8   defendants need not produce that advice, for example, the
 9   estate planning advice?
10           THE COURT:  Correct.
11           MR. DULBERG:  Okay.  All right.  Thank you, your
12   Honor.
13           THE COURT:  All right.  Take care, everybody.
14   Good speaking with you.  Be well.
15           (Whereupon, the matter is adjourned.)
16
17
18
19
20
21
22
23
24
25
```

26

C E R T I F I C A T E

         I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of In Re: Customs and

Tax Administration of the Kingdom of Denmark

(Skatteforvaltningen) Tax Refund Scheme Litigation, Docket

#18-md-02865-LAK-RWL, was prepared using digital

transcription software and is a true and accurate record of

the proceedings.

Signature_____*Carole Ludwig*_____

                 Carole Ludwig

Date:    June 24, 2021