**Exhibit 1**

***In re Customs and Tax Administration of the Kingdom of Denmark (SKAT)***
***Tax Refund Litigation*, 18-md-2865 (LAK)**

**Parties' Status Report on Summary Judgment Motions and Groupings of Cases**

Pursuant to paragraphs 4 and 5 of the Court's June 16, 2021 Pretrial Order No. 24, the parties respectfully set forth their proposed plans for summary judgment motions and the grouping of cases for such motions.

**Plaintiff SKAT's Proposal**:

SKAT believes that for at least 90% of the reclaim applications in this MDL, it can establish beyond genuine dispute as to any material fact that the shares that defendants represented that their pension plans owned and for which they claimed dividend withholding tax refunds did not exist. On this basis, SKAT intends to move for (i) summary judgment on its unjust enrichment and money had and received claims, and (ii) partial summary judgment on the false statement element of the fraud and negligence claims with respect to the representation that the pension plans were the beneficial owners of the shares for which they claimed dividend withholding tax refunds. SKAT proposes to proceed with summary judgment using bellwether cases, and to negotiate complete or partial joint Local Rule 56.1 statements on the factual issues pertinent to these motions.

Different defendants used different custodians or groups of custodians. Most defendants by far used the Solo Capital Partners group of custodians, a few used North Channel Bank, and others used ED&F Man Capital Partners Ltd. ("ED&F"). We discuss these three groups of cases separately below.

<u>Cases in which the pension plans used the Solo Capital Partners group of custodians</u>

One-hundred seventy-three of the 203 pension plans in this MDL used one or more of Solo Capital Partners LLC, and its related entities, Telesto Markets LLC, Old Park Lane Capital PLC, and West Point Derivatives Ltd. (the "Solo Custodians") as custodian, covering approximately 2,560 of the approximately 3,040 refund applications for which SKAT seeks to recover damages in the MDL. The defendant plans that used these custodians entered into transactions in Danish securities that were entirely circular and involved no delivery of any actual shares. In each case, the seller from which the pension plan purported to "purchase" Danish securities did not own the securities it purported to sell. In each case, the seller purported to cover its sale of the securities by purporting to borrow those same securities from the same pension plan to which it was purporting to sell the securities.

Approximately 320 of those refund applications represented that the pension plans purchased Danish securities in 2012 or 2013. During that two-year period, the share transactions formed a simple three-step loop: (i) the seller purported to sell Danish securities to a pension plan; (ii) the pension plan purported to lend those same shares to a stock loan counterparty; and (iii) the stock loan counterparty purported to lend those same shares to the original seller. In short, no shares ever existed other than on paper. The "seller" was "selling" the plan non-

existent shares that it "borrowed" from the plan, which did not have any shares to begin with. During this period of time, this group of pension plans used Solo Capital Partners as custodian.

Approximately 2,240 of the refund applications represented that the pension plans purchased Danish securities in 2014 or 2015. During that two-year period, the share transactions formed a slightly more complicated, but substantively identical, four-step loop, in which additional intermediaries were included, to add one additional step before the supposed shares ostensibly returned full circle to the original purported seller. During this period of time, the pension plans used a combination of the four Solo Custodians, but the trading followed the same circular pattern.

SKAT proposes selecting five bellwether cases for purposes of summary judgment for those who used the Solo Custodians: one case from the 2012-2013 period during which this group of defendants used Solo Capital Partners as custodian, and four cases from the 2014-2015 period to include one case for each of the four Solo Custodians used by the defendants during this period. These bellwether cases involve the same circular trading patterns used by all the defendant plans that used the Solo Custodians. Accordingly, the Court's findings on summary judgment for the bellwether cases will be directly applicable to all other defendants in this group.

SKAT believes that it can work with the defense group to prepare a partial joint Local Rule 56.1 statement with respect to the details of all transactions included in this group. While the parties may disagree as to the legal implications of these facts, the details of the transactions are all documented, and should be something the parties can agree upon.

<u>Cases in which North Channel Bank was the custodian</u>

Two of the pension plans in this MDL used North Channel Bank as custodian, covering 11 of the refund applications for which SKAT seeks to recover damages. Similar to the plans that used the Solo Custodians, in each case the original seller did not own the securities which the pension plans purported to "purchase," and only covered its position by borrowing the same securities from the same pension plan to which it was purporting to sell those securities.

The eleven refund applications were submitted in 2014. The share transactions formed a simple three-step loop: (i) the purported seller sold Danish securities to a pension plan; (ii) the pension plan purported to lend those same shares to a stock loan counterparty; and (iii) the stock loan counterparty purported to lend those same shares to the original ostensible seller. In short, no shares ever existed other than on paper.

SKAT believes that it can work with the defense group to prepare a partial joint Local Rule 56.1 statement with respect to the details of these transactions.

SKAT proposes using one of the two plans that used North Channel Bank as a custodian as a bellwether case for purposes of summary judgment. Because the plans' purported trades involved the same circular trading patterns, the Court's findings on summary judgment for the bellwether case will be directly applicable to all defendants in this group.

<u>Cases in which ED&F was the custodian</u>

Thirty of the pension plans in this MDL used ED&F as custodian, covering approximately 380 of the refund applications for which SKAT seeks to recover damages in the MDL.[1]  These refund applications were submitted from 2012 through 2015.  The trading patterns in the ED&F cases are different from those where the Solo Custodians and North Channel Bank were custodians, and also are not consistent throughout the ED&F cases.  As a result, with respect to the ED&F cases, SKAT proposes to select categories of trading patterns as test cases for summary judgment.

For example, for 80 of the 380 refund applications (the "Annex E Vouchers") in the ED&F cases,[2] ED&F has admitted that it issued incorrect "tax vouchers" wrongly certifying that the pension plans held Danish shares and received dividends on those shares net of withholding tax for which they were entitled to refunds, which the plans used to claim 183,902,399 DKK from SKAT.  (*See* Letter Addressed to Judge Lewis A. Kaplan from Brian S. Fraser, Ex. A ¶ 4.2, In re SKAT (No. 18-md02865), ECF No. 202.)  Accordingly, SKAT would select one or more applications involving Annex E Vouchers as test cases for all applications involving Annex E Vouchers.  SKAT is not yet in a position to propose the most efficient categories for test cases involving non-Annex E vouchers as discovery in the ED&F cases continues, and SKAT has not yet had an opportunity to depose ED&F's 30(b)(6) witness or received documents from BNP Paribas SA, one of ED&F's sub-custodians.  Once that discovery has been completed, SKAT will update the Court on its proposal for summary judgment with respect to the remaining 300 ED&F refund applications.

Similar to the Solo cases, SKAT believes that it can work with the defense group to prepare a partial joint Local Rule 56.1 statement with respect to the documented details of the ED&F-related transactions.

<u>Application of State Law</u>

This MDL includes cases originally filed in 11 federal jurisdictions, and thus the application of common law from potentially 11 different states.[3]  In its actions in 10 of those 11 jurisdictions, SKAT asserts restitution-based claims against the defendants for unjust enrichment

---

1.  ED&F issued 408 Danish tax vouchers to US pension plans.  SKAT has settled its claims against pension plans and related individuals relating to 28 of those vouchers, leaving 380 ED&F tax vouchers at issue in this MDL. In addition, SKAT has reached an agreement in principle with the Tew defendant group relating to SKAT's claims in respect of 89 of the ED&F tax vouchers, but that settlement agreement is subject to the approval of the Bankruptcy Court in Kentucky.  *In re Bernard V. Tew and Andrea B. Tew*, 5:20-bk-51078 (Bankr. E. D. Ky.); *In re Tew Limited Partnership*, 5:20-bk-51079 (Bankr. E. D. Ky.).  If that settlement is approved, the number of ED&F tax vouchers at issue in this MDL would drop to 291.

2.  Of the 80 reclaims based on the Annex E Vouchers, six were submitted by the Tveter LLC Pension Plan, which has settled with SKAT.

3.  The actions consolidated in this MDL were commenced by SKAT in the States of New York, Massachusetts, Connecticut, New Jersey, Pennsylvania, Kentucky, Florida, Ohio, Illinois, Texas and Utah.

and money had and received, while in one jurisdiction, Texas, the only restitution-based claim SKAT asserts against the defendants is for money had and received.[4]

Ultimately, however, for purposes of SKAT's motion for summary judgment, the particular jurisdictions in which the cases were commenced is not significant because what SKAT needs to prove to prevail on its unjust enrichment and money had and received claims is substantially the same under any potentially applicable law, including the law of Denmark.  For unjust enrichment, that (i) the defendant received a benefit (ii) at SKAT's expense (iii) under circumstances that would make it unjust for the defendant to retain the benefit.[5]  And for money had and received, that (i) the defendant holds money, (ii) which in equity and good conscience belongs to SKAT.[6]

Counterclaims, Third-Party Complaints and Defendants in England

There are no counterclaims pending against SKAT in any of the actions in this MDL.  Defendants in 31 cases filed counterclaims, but each such counterclaim was dismissed by the Court (ECF Nos. 261, 262) or by stipulation of the parties (ECF Nos. 271, 435).

Defendants in 11 actions filed third-party claims, in each case against ED&F.  Defendants' third-party claims against ED&F remain pending before the Court.

None of the Defendants in the MDL is named as a defendant in the English proceedings.  Third-party Defendant ED&F was named as a defendant in England, and the parties reported on the status of those proceedings in the July 21 Joint Status Report (ECF No. 650).

SKAT opposes Defendants' summary judgment proposal

SKAT opposes Defendants' proposal for piecemeal summary judgment motions whereby they would once again brief their Revenue Rule argument while halting all other aspects of the proceedings for at least six months.  Defendants fail to explain what has changed since the Court decided the issue on the pleadings.

In fact, the only change is that, on summary judgment, SKAT will establish as beyond genuine factual dispute what it previously pleaded—that Defendants did not own the shares that

---

4.  In its New York actions, SKAT also asserts claims against the defendants for payment by mistake.

5.  *See, e.g.*, *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) ("in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution"); *Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d 51, 58 (1st Cir. 2011) ("To recover for unjust enrichment under Massachusetts law," the plaintiff "must show that (1)" defendant "knowingly received a benefit (2) at his expense (3) under circumstances that would make retention of that benefit unjust.").

6.  *See, e.g.*, *Graman v. Graman*, No. 05-14-01254-CV, 2016 WL 235055, at *5 (Tex. App. Jan. 20, 2016) ("a plaintiff must show that (1) a defendant holds money (2) which in equity and good conscience belongs to the plaintiff").

they purported to own.[7]  Defendants' reliance on documentation from non-party custodians that falsely certified the existence of the shares may be a basis for disputing scienter at trial, but is irrelevant to the question whether the representations that the defendant pension plans owned the shares were false.  Nor does the existence of such fraudulent documentation establish that the pension plans received any shares or dividends, or suffered withholding tax on such dividends entitling them to refunds.

Defendants' proposal to delay addressing whether they owned the shares, received the dividends and suffered withholding tax on the dividends, in favor of prioritizing their motion based on the Revenue Rule also ignores that a finding on summary judgment that Defendants never owned the shares—or even that that issue is a factual issue for trial—would dispose of Defendants' motion under the Revenue Rule.  As this Court held on the pleadings,

> [i]f plaintiff can prove that the defendants never in fact owned the relevant Danish stocks—and the Court is obliged to accept their allegations for present purposes—the revenue rule would not apply because the substance of the claims would be for garden variety commercial fraud.

(*Id.* at 308.)  Efficiency and common sense counsels in favor of considering the motions of Plaintiff and Defendants, which will be based on the same record, at once.

---

7.  Defendants' premise – that the facts concern SKAT's system of administering withholding tax refunds, which necessarily implicates Danish tax law such that the Court "must step into the shoes of the Kingdom of Denmark" in violation of the Revenue Rule – is at odds with this Court's Revenue Rule decision in this case. As the Court found in denying Defendants' motion to dismiss, "even if there were a Danish tax law or laws concerning beneficial ownership, the Court's consideration of those laws in determining whether the defendants owned the shares in any respect would not necessarily implicate the revenue rule." *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 317 (S.D.N.Y. 2019).  The Court found that it "need not pass on the validity of Denmark's tax laws to determine whether the defendants were the beneficial owners of the shares," but rather it "merely would recognize any relevant law and determine its effect." *Id*. at 317-18.  The Court concluded, SKAT's "claims," at least as pleaded, "have no bearing on the executive branch's responsibility to decide when to aid other sovereigns in enforcing their tax laws" because the claims "are not ones for tax revenue but for money stolen from the plaintiff by fraud." *Id*. at 318.  Discovery has confirmed SKAT's pleadings, and thus compels the same conclusion now.

**Defendants' Proposal**:

Defendants propose that the schedule for dispositive motion practice proceed as follows:

I.        Motion for Summary Judgment on Revenue Rule

The Court should first decide the threshold question of whether the Revenue Rule applies to bar SKAT's claims.  As Defendants explained in their proposed schedule for the completion of discovery (ECF No. 651), the application of the Revenue Rule is a preliminary question that asks whether SKAT's claims amount to a request to enforce Denmark's sovereign rights under Danish tax law and thus cannot properly be heard by this Court.  If the Court agrees with Defendants that the Revenue Rule bars SKAT's claims, none of the cases in the MDL needs to proceed any further.  Because this question is potentially dispositive of the entire MDL, judicial economy is best served if the Court answers this question first.

Unlike the motion that SKAT proposes to file, Defendants' motion for summary judgment on the basis of the Revenue Rule does not turn on questions of fact that are unique to any Defendant.  The facts relevant to this motion concern the Danish system for applications for the reimbursement of withholding tax as administered by SKAT and whether that system necessarily implicates the Danish tax laws such that SKAT has effectively asked the Court to step into the shoes of the Kingdom of Denmark—something the Revenue Rule and its many decades of history say the Court may not do.  Nor does this Court's ruling at the motion to dismiss stage (in which the Court was "obliged to accept [Plaintiff's] allegations as true") support SKAT's suggestion that the Court has already made up its mind; as the Court acknowledged in its decision, "Whether in light of discovery and a fuller presentation, the revenue rule will be of greater aid to the defendants must await developments."  356 F. Supp. 3d at 308.

SKAT is wrong when it says that nothing has changed since the Court previously examined this question.  Nearly three years have passed since the Court's ruling, and during that time, SKAT witnesses confirmed through deposition testimony that this case represents nothing more than an effort to enforce Danish tax law, and SKAT itself provided written admissions bearing on this precise question.  In addition, Defendants produced voluminous records establishing their ownership of the shares at issue.

Moreover, with respect to approximately 10% of the reclaim applications in this MDL— which we understand to be entirely or primarily reclaim applications of pension plans for which ED&F provided brokerage, settlement and/or custody services—SKAT itself does not contend that it can establish on summary judgment that the shares at issue "did not exist."  In other words, of the 380 reclaim applications submitted by pension plans for which ED&F provided such services, SKAT intends to seek summary judgment with respect to no more than 80.

The Revenue Rule question can and should be decided independently of the underlying merits of SKAT's claims.  Importantly, the Revenue Rule question does not require this Court to resolve the question of whether the pension plan defendants were the beneficial owners of Danish shares and indeed Defendants will explain why doing so would necessitate the precise exercise the Revenue Rule bars.

A short preview of the issues going to the merits illustrates this point. The Defendants disagree with SKAT's characterization of the trading. But notwithstanding SKAT's insistence that Solo Capital Partners and North Channel Bank—neither of which is a defendant in this action—facilitated transactions that were circular in nature, the fact of the matter is that every US pension plan defendant in this case purchased Danish securities via an FCA-authorized and regulated brokerage firm, that the broker confirmed the purchases of those securities, that the custodian credited every US pension plan's account with a book entry of those securities, and that the custodian issued account statements reflecting the purchases of those securities. SKAT's quarrel with the sellers of those securities (not defendants in this case) or the conduct of parties to whom the defendants in this case loaned their shares (who themselves are also not defendants) does not undermine the basic truth that every US pension plan that purchased Danish securities received trade confirmations and account statements reflecting their purchase and ownership of those securities.

SKAT insists that it will prove that some of the shares at issue "did not exist," and, separately, that it can establish "that Defendants did not own the shares that they purported to own." Black letter law supports the exact opposite conclusion: when a broker provides an investor with a trade confirmation and a custodian supplies an account statement reflecting the ownership of shares, the investor owns the shares. Whether or not the operations, regulatory/compliance requirements and market practices of financial intermediaries such as the non-defendant custodians result in there being shares or not does not affect the defendants' entitlement to such shares. And if, as SKAT submits, the existence of such shares matters for purposes of establishing a claim for dividend withholding tax under Danish law, then that is a matter to be decided under Danish tax law. So too is the question of whether an investor in these circumstances may claim to be the beneficial owner of shares on the SKAT-issued reclaim form, as every US pension plan defendant did.

These questions must be answered by application of Danish tax law, such that their resolution would require this Court to engage in the precise exercise that the Revenue Rule prohibits. In short, Defendants ask the Court to answer the predicate question of whether this case is fundamentally an action to enforce foreign tax law, regardless of the characterizations in SKAT's pleadings. If the answer is yes, the cases should be dismissed.

Defendants propose that the parties complete expert discovery on the Revenue Rule by January 31, 2022. Following expert discovery and the submission of an expert report or reports, Defendants will file one common motion for summary judgment on the Revenue Rule. Remaining expert discovery will be stayed pending resolution of that motion. If the Court rules in Defendants' favor, that ruling would extinguish all cases in the MDL.

Defendants propose the following schedule for briefing summary judgment on the Revenue Rule issue alone:

- Defendants' Opening Brief:  February 28, 2022
- Plaintiff's Opposition Brief:  March 28, 2022
- Defendants' Reply Brief:  April 22, 2022

21 days before filing the motion, Defendants will serve Plaintiff with a draft statement pursuant to Local Rule 56.1.  14 days before the motion is due, Plaintiff will indicate which statements of fact it disputes and state concisely the basis for its disagreement.  The parties will meet and confer in an effort to submit a single set of agreed-upon facts.

*If the Court does not rule for Defendants on the Revenue Rule:*

II.    Motions for Summary Judgment on Common Questions of Fact

The parties will commence expert discovery on all remaining topics and will serve expert reports.  Defendants anticipate that this phase of expert discovery, including expert depositions, will require four months.  Thereafter, Defendants may file motions for summary judgment relating to issues that apply broadly to these cases:

- Statute of Limitations

    o This motion rests largely on facts related to SKAT and its insufficient diligence despite warnings of upticks in reclaim applications from foreign pension plans.
    o While certain Defendants traded and/or were sued at different times, the argument about when SKAT knew or should have known about the allegedly fraudulent reclaims will be common to all Defendants.

- Standing

    o Like statute of limitations, this motion would also rest largely on facts about SKAT and how the Danish government is organized.  There should not be many, if any, individualized facts with respect to this motion.

- Falsity

    o This motion would address the falsity of the statements made in the reclaim applications, and in particular, whether the applicants were the beneficial owners of the shares and whether the pension plans were properly constituted.

    o Because SKAT is also moving for summary judgment on falsity, Defendants will endeavor to reach an agreement with SKAT on a common Rule 56.1 statement for both sides' motions.

    o Here, there will be some variation in facts.  To address those distinctions efficiently, we propose the joinder process discussed below.

To aid the Court's review, Defendants are amenable to common groupings based on the custodians through which the various parties traded, though do not concede the existence of any factual commonality among the parties within each group, nor the relevance of any conduct by the custodian to claims that Defendants themselves are liable for return of the reclaim proceeds. Defendants will select a set of individuals or plans from each of the three custodian groups— Solo Capital Partners; North Channel Bank; and ED&F—to put forward as a bellwether set

whose facts will form the basis for the parties' motions for summary judgment. SKAT may also select its own set of bellwether parties. The parties need not select the sets of bellwether parties until after the Court sets a plan for summary judgment. In addition, various groups of defendants would be permitted to file short briefs that join the main brief submitted on behalf of all defendants, but set forth any facts unique to them, or raise unique bases for summary judgment.

We anticipate that the following parties (and their related pension plans) would submit their own joinders jointly or separately:

- Richard and Jocelyn Markowitz;

- John and Elizabeth van Merkensteijn;

- Ronald Altbach, Joseph Herman, Robin Jones, Perry Lerner, Edwin Miller, David Zelman;

- Robert Klugman, Kevin Kenning, Todd Bergeron;

- Roger Lehman, Doston Bradley, Bradley Crescenzo, Gavin Crescenzo, Sean Driscoll, Michtell Protass, Matthew Tucci, Carl Vergari, Thomas Kertelits, Vincent Natoli, John La Chance, Svetlin Petkov;

- Gregory Summers, Shreepal Shah;

- Michael Ben Jacob;

- Sheldon Goldstein; Scott Goldstein; David Freelove, John Doscas;

- Stacey Kaminer, Darren Wittwer, Alexander Mitchell, Robert Crema, David Schulman, Joan Shulman; Acer Investment Group LLC;

- Sander Gerber.

21 days before filing any motion, the moving party will serve the other party/parties with a draft statement pursuant to Local Rule 56.1. 14 days before the motion is due, the opposing party/parties will indicate which statements of fact they dispute and state concisely the basis for the disagreement. The parties will meet and confer in an effort to submit a single set of agreed-upon facts.

Defendants propose the following schedule for briefing summary judgment:

- Opening Briefs: 60 days after the close of expert discovery

- Opposition Briefs: 45 days after opening briefs

- Reply Briefs: 30 days after opposition briefs

**Defendants Dispute SKAT's Characterizations with Respect to ED&F-Related Reclaim Applications**:

ED&F and the defendant pension plans for which ED&F provided brokerage, settlement and/or custody services note that the 10% of reclaim applications with respect to which SKAT does not contend it has a basis for summary judgment consist entirely or primarily of the reclaim applications of pension plans for which ED&F provided brokerage, settlement and/or custody services.  In addition, SKAT's characterizations of the so-called "Annex E Vouchers" and the so-called "Danish tax vouchers"—contained in the second paragraph of the section headed, "Cases in which ED&F Man was the custodian" and in footnotes 1 and 2—are inaccurate and misleading.  For example and without limitation, contrary to SKAT's representations to the Court, ED&F never admitted that these Annex E tax vouchers "wrongly certif[ied] that the pension plans held Danish shares and received dividends on those shares net of withholding tax" or that ED&F's pension plan clients "used" the Annex E tax vouchers to "claim 183,902,399 DKK from SKAT."  Rather, ED&F's pleadings in the English proceeding indicated simply that the Annex E tax vouchers contained errors with respect to dividend amounts received and/or amounts of dividend tax withheld, and that the total value of these errors came to 183,902,399 DKK.[8]

**Third-Party Claims Proposal**:

Seven third-party complaints have been filed against ED&F.[9]  The defendants/third-party plaintiffs in each of these actions and ED&F (collectively, the "Third Parties") agree that it would not be beneficial to the Court or the Third Parties for summary judgment motions on the third-party claims to be brought at this stage of the proceedings.  Among other things, the third-party claims involve several issues that are specific to each third-party plaintiff, including application of the laws of different states.  The Third Parties accordingly propose that summary judgment with respect to the third-party claims be deferred until—and the Third Parties reserve their rights to file summary judgment motions in their respective cases after—all summary judgment motions involving SKAT and the third-party plaintiffs have been ruled on by the Court and any appeals have been resolved.

---

8.  In addition, ED&F objects to SKAT's characterization of "80 reclaims" as having been "based on the Annex E Vouchers" and to SKAT's representation that ED&F "issued 408 Danish tax vouchers to US pension plans."

9.  The third-party complaints can be found on the MDL docket, 18-MD-2865, at ECF Nos. 220, 225, 226, 519, 527, 528, and 529.