USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/26/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND
LITIGATION

This document applies to:   18-cv-05053, 18-cv-09797,
18-cv-09836, 18-cv-09837, 18-cv-09838, 18-cv-09839,
18-cv-09840, 18-cv-09841, 18-cv-10100
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18-md-2865 (LAK)

**MEMORANDUM OPINION**

Appearances:

John C. Blessington
Brandon R. Dillman
Micahel R. Creeta
John L. Gavin
K&L GATES LLP
*Attorneys for Defendants and Third Party Plaintiffs Darren
Wittwer, Robert Crema, and Acer Investment Group, LLC*

Neil S. Binder
M. Tomas Murphy
Gregory C. Pruden
BINDER & SCHWARTZ LLP
*Attorneys for Third-Party Defendant ED&F Man Capital
Markets, Ltd.*

LEWIS A. KAPLAN, *District Judge.*

        This multidistrict litigation includes more than a hundred actions brought by the

Customs and Tax Administration of the Kingdom of Denmark ("SKAT") to recover funds allegedly

obtained from it by fraud.  The matter is before the Court on motions by third-party defendant ED&F

Man Capital Markets, Ltd. ("ED&F") to dismiss the third-party claims of defendants and third-party

2

plaintiffs Acer Investment Group, LLC ("Acer"), Darren Wittwer, and Robert Crema (collectively "TPPs").

### Factual Background

The Court previously has described the essence of the SKAT's case as follows:

> "Danish companies are required by law to withhold a certain percentage of dividends distributed to shareholders as tax, which may be refunded to shareholders in certain circumstances under a double taxation treaty. The Kingdom of Denmark here claims that the defendants defrauded it of millions of dollars by submitting tax refund claims in which they falsely claimed to own stocks in Danish companies that had paid dividends net of withholding tax. In fact, the complaints allege, the defendants did not own those stocks and had no taxes withheld from any dividends. Nevertheless, the defendants allegedly obtained many millions of dollars in tax refunds from the Danish treasury under false and fraudulent pretenses."[1]

The defendants are mainly pension plans but include a number of individuals, including Wittwer and Crema. Wittwer and Crema were the trustees and sole participants of the DW Construction, Inc. Retirement Plan (the "DWC Plan") and the American Investment Group of New York, L.P. Pension Plan (the "AIG Plan"), respectively.[2] In 2012, each of those plans executed a

---

[1]

*In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 307-08 (S.D.N.Y. 2019).

Additional factual background is described in detail in the Court's prior decisions. *See e.g., In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-5053 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020); *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-5053 (LAK), 2020 WL 3962066, at *1 (S.D.N.Y. July 13, 2020); *In re SKAT Tax Refund Scheme Litig.*, No. 18-cv-05053, 2020 WL 7059843, at *1-2 (S.D.N.Y. Dec. 2, 2020).

[2]

Third-Party Complaint of Robert Crema [Dkt. 529] and Third-Party Complaint of Darren Wittwer [Dkt. 528] (hereinafter the "Individual TPCs") at ¶¶ 1, 99.

Unless otherwise noted, all docket references are to 18-md-2865.

3

custody agreement with ED&F (the "Custody Agreements") pursuant to which ED&F maintained

a brokerage account for the plan.[3]  ED&F also executed trades in Danish securities for the plans and

prepared tax vouchers confirming their receipt of dividends net of withholding taxes (the "Tax

Vouchers") for those securities.[4]  The Tax Vouchers were submitted to SKAT along with the plans'

claims for refunds of Danish tax withholdings.[5]

      SKAT asserts claims also against the pension plans' agents and authorized

representatives, including Acer.  Each plan appointed Acer as an attorney-in-fact to manage the

plan's ED&F brokerage accounts.[6]  According to the TPPs, "ED&F communicated with the Plans

through Acer"[7] and provided Acer with documentation regarding the plans' holdings and

withholding taxes – including copies of the plans' Tax Vouchers.[8]

      The TPPs' claim, in substance and on a variety of legal theories, that ED&F is

responsible for the allegedly inaccurate Tax Vouchers submitted to SKAT.  They contend that "[i]f

SKAT's theory is correct, then ED&F's Tax Vouchers . . . are the root cause of any inaccuracies of

---

[3]  *Id.* at ¶ 9.

[4]  *Id.* at ¶¶ 2, 21, 26.

[5]  *Id.* at ¶ 29.

[6]  *Id.* at ¶¶ 11, 15; Acer Third-Party Complaint [Dkt. 527] (hereinafter "Acer TPC") at ¶ 10.

[7]  Individual TPCs at ¶ 16; Acer TPC at ¶ 11.

[8]  Individual TPCs at ¶¶ 22, 30; Acer TPC at ¶¶ 17, 25.

4

the Plans' tax refunds that SKAT claims are false,"[9] in which case, they claim, they are entitled to recover from ED&F.

ED&F seeks dismissal of these claims on the grounds that (a) the Court lacks personal jurisdiction over it, (b) the TPPs' claims may not be asserted under Rule 14 of the Federal Rules of Civil Procedure, and (c) the TPPs in any case fail to state a legally sufficient claim.

## Discussion

### I.    Personal Jurisdiction

The TPPs' claims against ED&F were asserted in actions commenced in the District of Utah that were transferred here for coordinated or consolidated pretrial proceedings by the Judicial Panel on Multidistrict Litigation (the "Utah Actions").[10]  In addition, Acer has filed third-party claims against ED&F in actions initially filed in this court (the "New York Action") and the Eastern District of Pennsylvania (the "Pennsylvania Action"), the later of which was transferred here by the

---

9

Opp. Br. [Dkt. 595] at 2. *See also* Acer TPC at ¶ 78 ("if SKAT proves its claims and establishes that [the TPPs are] liable to SKAT for SKAT's alleged damages, then ED&F should be responsible for them."); Individual TPCs at ¶ 78.

10

The Utah Actions include: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

Acer has filed third-party claims against ED&F in each of these actions. Wittwer's third-party claim is filed in *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.) and Crema's third-party claim is filed in *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.).

panel.[11]

   "In multidistrict litigation . . . personal jurisdiction must be proper in the forum from which each complaint was transferred."[12]  In diversity actions, as here, personal jurisdiction "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."[13]  Accordingly, the personal jurisdiction aspect of ED&F's motion initially turns on Utah, Pennsylvania, or New York law, depending on where the relevant action initially was filed, and in each instance is subject to the Due Process Clause of the Constitution.

   As an initial matter, it is undisputed that ED&F is not subject to general jurisdiction in Utah, Pennsylvania, or New York.  The TPPs, however, argue that it is subject to personal jurisdiction on two theories – forfeiture and specific personal jurisdiction.  The Court considers each argument in turn.

### A.  Forfeiture

   The defense of lack of "[p]ersonal jurisdiction. . .  can . . . be purposely waived or inadvertently forfeited."[14]  The latter may occur by reason of "actions . . . [during the litigation that]

---

11
   *SKAT v. The Goldstein Law Group PC 401k Profit Sharing Plan*, 18-cv-05053 (S.D.N.Y.) (New York); *SKAT v. Newsong Fellowship Church 401k Plan*, 18-cv-10100 (S.D.N.Y.) (Pennsylvania).

12
   *In re SKAT*, 2020 WL 7059843, at *2.

13
   *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

14
   *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011).

amount to a legal submission to the jurisdiction of the court, whether voluntary or not."[15]  "In assessing whether forfeiture . . . occurred," the Court "consider[s] all of the relevant circumstances."[16] For example, and relevant here, the Second Circuit has concluded that a defendant may forfeit its jurisdictional defense, despite timely asserting the defense in its answer, if it nonetheless fails to challenge jurisdiction by motion for a significant amount of time while participating "in considerable pretrial activity" including "merits discovery" and depositions.[17]

The TPPs rely heavily on this theory of forfeiture.  However, they ignore the context in which ED&F's pretrial activities occurred.  Almost two years before the third-party complaints at issue in this motion were filed, other defendants in the Utah, New York, and Pennsylvania Actions (the "Original Third-Party Plaintiffs") separately filed third-party claims against ED&F.[18]  ED&F moved to dismiss one of those third-party complaints on the ground that the court lacked personal

---

[15]

    *Id.* at 134 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (internal quotation marks omitted)).

[16]

    *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999).

[17]

    *Id.* (personal jurisdiction defense forfeited, even when asserted in a timely answer, where defendant did not first move to dismiss and where "considerable pre-trial activity occurred," over the course of four years including a deposition and other merits discovery); *see also Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (personal jurisdiction defense lost where defendants "participated in lengthy discovery, filed various motions and opposed a number of motions" and "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction").

[18]

    *See e.g.*, Dkt. 172, 173; 18-cv-5053, Dkt. 59.

7

jurisdiction over it.[19]  The Court denied that motion.[20]  Following that decision, in March 2020, ED&F filed answers to all of the third-party complaints, which asserted its jurisdictional defense.[21] ED&F's discovery efforts pointed to by TPPs generally occurred over the year and a half since ED&F filed those answers.[22]

Analyzed against that background, the TPPs overstate the significance of ED&F's decision to participate in discovery instead of moving to dismiss on jurisdictional grounds – particularly after its first motion to dismiss was denied, and in light of the Court's encouragement to streamline motion practice.  In addition, activity by ED&F in these cases since it filed its answers cannot properly be characterized as having been "significant" in multidistrict litigation of the size and scope of this case.  In all the circumstances, the Court cannot properly interpret ED&F's conduct as having consented to the Court's jurisdiction.

For similar reasons, ED&F did not forfeit its objection to the Court's personal jurisdiction by filing counterclaims against the Original Third-Party Plaintiffs.  As this Court has explained, counterclaims "filed contemporaneously with objections to personal jurisdiction in a responsive pleading should 'be treated as conditional, [their] assertion being hypothecated upon an

---

19

    Dkt. 239.

20

    Dkt. 255.

21

    Dkt. 280, 281, 282.

22

    Dillman Decl. [Dkt. 596], Ex. A–H, Ex. K.

adverse ruling on the defendant's jurisdictional defenses.'"[23]

In any case, the majority of ED&F's pre-trial activity occurred *before* Wittwer, Crema, and Acer filed their third-party complaints.[24] While ED&F continued to engage in discovery after those complaints were filed, the TPPs have not provided any basis to conclude that ED&F's discovery efforts were in response to the newly filed claims as opposed to a continuation of discovery with the Original Third-Party Plaintiffs. In any case, ED&F timely moved to dismiss the TPPs' claims on jurisdictional grounds. The minimal participation in discovery between the filing of the TPPs' complaints and ED&F's motion to dismiss does not amount to forfeiture of its jurisdictional defense.

Finally, to the extent that ED&F's pretrial activities related to other cases in this multidistrict litigation, they are irrelevant to personal jurisdiction in these cases. "[A] 'party's consent to jurisdiction in one case . . . extends to that case alone' and 'in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given.'"[25] That principle applies in cases like these – cases within the same multidistrict litigation – just as in other circumstances.[26] Accordingly, none of ED&F's pretrial activities constituted consent to, nor forfeited its objection to,

---

[23]
        *China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 591 (S.D.N.Y. 2012).

[24]
        Dillman Decl., Ex. A–E, Ex. G, Ex. K-L.

[25]
        *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n. 5 (2d Cir. 1991)).

[26]
        *Id.* at 88-89 (the presence of multiple cases within an MDL "do[es] not command a different result").

personal jurisdiction in these cases.

### B.    *Specific Personal Jurisdiction*

In the alternative, the TPPs claim that the Court may exercise specific jurisdiction over ED&F.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing jurisdiction.[27]  The applicable standard depends upon the procedural context in which the jurisdictional challenge is raised.[28]  Where no discovery has taken place, the plaintiff need make only a *prima facie* showing of jurisdiction "by pleading in good faith, . . . legally sufficient allegations of jurisdiction."[29]  If documents beyond the pleadings are submitted, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[30]

In this case, ED&F has submitted deposition testimony in support of its motion to dismiss.  The TPPs have not submitted any evidence relating to personal jurisdiction.  They instead

---

[27]    *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990).

[28]    *Id.* at 197.

[29]    *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball*, 902 F.2d at 197) (internal quotations marks omitted); *accord In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

[30]    *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985)).  *See also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

rely on the allegations in the their complaints and the attached documents. The Court considers the sufficiency of these allegations for each of the relevant jurisdictions: Utah, Pennsylvania, and New York.

### i.    *The Utah Actions*

Utah's Nonresident Jurisdiction Act permits the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution.[31]  Accordingly, Utah courts "often assume the application of the [long-arm] statute—and go straight to the due process issue—because [Utah's] legislature has directed [courts] to construe it so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[32]  This Court does the same.

As the Supreme Court has made clear, the exercise of personal jurisdiction over a non-resident generally is permissible under the Due Process Clause where the non-resident has "certain minimum contacts [with the forum state] . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.'"[33]  That minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with

---

[31]      Utah Code Ann. § 78b- 3-201(3).

[32]      *Gardner v. SPX Corp.*, 272 P.3d 175, 179 (Utah App. 2012) (quoting *Anderson v. American Soc'y of Plastic and Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990) (internal quotation marks omitted)).

[33]      *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (in turn *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940))).

persons who reside there."[34] Accordingly, an "individual's contract with an out-of-state party ***alone*** [cannot] automatically establish sufficient minimum contacts."[35] Likewise, "mere injury to a forum resident" or the "direct[ion] [of] conduct at plaintiffs whom [defendant] knew had [] connections" to the forum does not establish sufficient minimum contacts.[36] Instead, "[f]or a State to exercise jurisdiction consistent with due process, the ***defendant's suit-related conduct*** must create a substantial connection with the forum State."[37]

Here, it is undisputed that ED&F is a United Kingdom entity that created Tax Vouchers for submission to the Kingdom of Denmark. For the Court to have specific jurisdiction over ED&F, the TPPs must make a *prima facie* showing that ED&F's conduct nonetheless was directed at the forum state.

The Court begins first with Wittwer's and Crema's allegations. Their minimum contacts argument, as alleged in their complaints, goes as follows:

- Wittwer and Crema each was the sole participant in the DWC and AIG Plans, respectively.[38]

---

34

    *Id.* at 285.

35

    *Id.* at 286 (emphasis in original) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

36

    *Id.* at 289-90.

37

    *Id.* at 284 (emphasis added).

38

    Individual TPCs ¶ 1.

- In 2012, each of the plans entered into a Custody Agreement with ED&F.[39]

- The plans designated Acer, allegedly "operating out of Utah," as a representative to manage the plans' ED&F accounts.[40]

- "ED&F agreed to communicate with the Plan through Acer and, during all relevant times, ED&F routinely communicated with the Plan through Acer in relation to ED&F's dealings with the Plan."[41]

- Accordingly, ED&F transacted business with both the DWC and AIG Plans, as well as other Utah-based plans, "directly and/or through the [p]lan's Utah-based representative," Acer.[42]

- In particular, "ED&F would [] email copies of the Tax Vouchers to Acer in Utah."[43]

These allegations, Wittwer and Crema contend, indicate that ED&F's suit related conduct was directed at and created an ongoing relationship with Acer in Utah.

But the facts concerning Acer's location appear to be more nuanced than is suggested by the allegations that it operated out of Utah. ED&F does not dispute that Acer is registered to do

---

[39]     *Id.* at ¶ 9.

[40]     *Id.* at ¶ 11.

[41]     *Id.* at ¶ 16.

[42]     *Id.* at ¶ 5.

[43]     *Id.* at ¶ 30.

business in Utah.[44]  However, it contends that Acer did not in fact operate there.  Stacey Kaminer,

one of the two Class A members of Acer, testified at her deposition that Acer's principal place of

business was in New Jersey in 2012, later relocated to Florida, and never was anywhere else.[45]  She

testified also that the other Class A member of Acer was Crema, who at all relevant times lived in

New Jersey or Florida.[46]

However, at this initial stage of the proceedings, and bearing in mind that the Court

must construe all factual disputes in plaintiffs' favor, the deposition testimony does not defeat

Wittwer and Crema's *prima facie* showing of jurisdiction.  Kaminer's testimony indicates that

Acer's principal place of business was not in Utah and that members and employees of Acer did not

live or work in Utah.  Nevertheless, even assuming the truth of that testimony it would not foreclose

the possibility that Acer operated, at least in part, from Utah, where it undisputedly was registered

to do business.  The Court therefore cannot conclude as a matter of law that jurisdiction over ED&F

is lacking with respect to the complaints of Wittwer and Crema.

The analysis is less straightforward with regard to Acer's third-party complaint.

Unlike the Individual TPPs, Acer inexplicably does not allege that it operated in Utah.  Instead, it

alleges only that it is a Delaware entity with its principal place of business is Florida and is registered

to do business in Utah.[47]  It fails also to allege that any of its interactions with ED&F occurred in

---

[44]    Dkt 574 at 8.

[45]    Binder Decl. [Dkt. 626] Ex. A.

[46]    *Id.*

[47]    Acer TPC at ¶ 1.

14

Utah. Accordingly, it fails to allege that ED&F's conduct on behalf on the pension plans created a continuous relationship with Acer in Utah.

Acer also does not allege that any of the pension plans it represented was located in Utah. On the other hand, Tax Vouchers attached to its complaint indicate that all but one of the plans in the Utah Actions were located -- or at least had an address -- in Utah.[48] That fact may be relevant because Acer alleges that ED&F had an ongoing contractual relationship with the plans. For instance, it alleges that ED&F was the plans' broker-custodian and entered into a number of agreements regarding ED&F's obligations to the plans.[49] It alleges also that "ED&F managed and controlled a brokerage account for the Plans, executed trades in Danish securities for the Plans, provided documentation and information to the Plans . . . and collected fees in connection with the Plans' withholding-tax refund requests."[50] ED&F allegedly also prepared the plans' Tax Vouchers, which are the subject of this litigation, and sent the Tax Vouchers to a third-party payment processor for submission to SKAT.[51] That conduct occurred repeatedly over the course of multiple years on behalf of many plans arguably located in Utah.

On the other hand, Acer alleges that ED&F only "communicated with the Plans

---

[48]      Dkt. 527-1 at 13-19, 28-58, 63-73.

[49]      Acer TPC at ¶ 6.

[50]      *Id.* at ¶ 2.

[51]      *Id.* at ¶¶ 22-24.

15

through Acer" and provided the plans with documentation and information through Acer.[52] Accordingly, ED&F submits that its contractual obligations with the Utah-based plans did not create sufficient "minimum contacts" with Utah because it performed those obligations by interacting only with Acer.[53] And, as noted above, Acer does not allege that it operated or interacted with ED&F in Utah. While the issue is not black and white, ED&F's argument has some force.

Nevertheless, it is unnecessary to wade further into this thicket at this point. In all the circumstances, and in light of Wittwer's and Crema's allegations regarding Acer's operations in Utah – which apparently were drafted by the same counsel as Acer – the issue quite possibly is academic. Any shortcomings in Acer's jurisdictional allegations perhaps would be remedied in an amended complaint. Accordingly, in the interest of efficiency, the Court will grant ED&F's motion to dismiss Acer's claims in the Utah Actions without prejudice to a motion by Acer for leave to file an amended complaint which might bolster its jurisdictional allegations.

ii.    *The Pennsylvania Action*

Pennsylvania's long arm statute authorizes the Court to exercise personal jurisdiction to the full extent permitted by the Constitution.[54] Hence, the personal jurisdiction analysis with

---

[52]

Id. at ¶¶ 2, 11, 25, 31.

[53]

Br. [Dkt. 577] at 10 n. 5 (quoting *Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.")); Reply Br. [Dkt. 625] at 2-3.

[54]

42 Pa. Cons. Stat. Ann. § 5322(b).

regard to the Pennsylvania Action is substantially similar to that discussed above.

The pension plan at issue in the Pennsylvania Action is the Newsong Fellowship Church 401(k) Plan (the "Newsong Plan"). The Tax Vouchers attached to Acer's complaint refer to a Pennsylvania address for the Newsong Plan.[55] However, as discussed above, ED&F contends that it is not properly subject to specific jurisdiction in Pennsylvania based on the Newsong Plan's connections to that state because it performed all of its obligations to the Newsong Plan through Acer. And there is no allegation that Acer conducted any business or interacted with ED&F from Pennsylvania.

As in the Utah Actions, the Court is inclined to agree. However, given the possibility that Acer may be able to supplement its jurisdictional allegations, the Court will grant ED&F's motion to dismiss without prejudice to a motion by Acer for leave to file an amended complaint.

### iii.    The New York Action

New York's long arm statute allows for the exercise of jurisdiction over a non-domiciliary which, in certain circumstances, transacts business, commits a tort, causes injury, or owns property in New York.[56] In any case, the exercise of personal jurisdiction must be consistent with the Due Process Clause.

As an initial matter, Acer does not allege any facts directly connecting ED&F to New York. The pension plan at issue in the New York Action is the Goldstein Law Group PC 401(k)

---

[55]     Dkt. 527-1 at 59-62.

[56]     N.Y. C.P.L.R. § 302(a).

17

Profit Sharing Pension Plan (the "Goldstein Plan").  However, Acer's TPC does not allege where

the Goldstein Plan is located or whether ED&F had any contact with the Goldstein Plan in New

York.  As with the Utah Actions, the Tax Vouchers for the Goldstein Plan reference a New York

address.[57]  However, even assuming that the Court properly could infer that the Goldstein Plan was

based in New York, it would not conclude that the exercise of personal jurisdiction would be proper

here.

Acer contends only that jurisdiction is proper under C.P.L.R. § 302(a)(3)(ii), which

authorizes the exercise of jurisdiction over a defendant which "commits a tortious act without the

state causing injury to person or property within the state . . . if he expects or should reasonably

expect the act to have consequences in the state and derives substantial revenue from interstate or

international commerce."[58]  However, courts "determining whether there is injury in New York

sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks

them to locate the 'original event' which caused the injury.'"[59]  With regard to a "commercial

injury," the situs of the injury is generally "not where any financial loss or damages occurred."[60]

Instead, "the critical question is [] where the first effect of the tort was located that ultimately

---

[57]

    Dkt. 527-1 at 20-27.

[58]

    Opp. Br. at 13 (*quoting* N.Y. C.P.L.R. § 302(a)(3)).

[59]

    *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999).

[60]

    *McBride v. KPMG Int'l*, 135 A.D.3d 576, 577, 24 N.Y.S.3d 257, 260 (App. Div. 1st Dep't. 2016) (quoting *CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470, 471–472, 925 N.Y.S.2d 439 (App. Div. 1st Dep't. 2011)).

18

produced the final economic injury."[61]

Acer does not identify any "original event" in New York that produced its alleged injury in this case.[62] To the contrary, it claims to have been injured in Denmark by ED&F's alleged fraud on SKAT. In fact, the only alleged connection to New York is that the arguably New York-based Goldstein Plan may incur liability to SKAT based on ED&F's conduct. But Acer has not explained how the Goldstein Plan's potential liability is the original source of any injury it may suffer.[63] Accordingly, it has not established that jurisdiction is proper under New York's long arm statute.

In addition, it is doubtful that Acer's allegations are sufficient to establish personal jurisdiction over ED&F under the Due Process Clause of the Constitution. As discussed above, Acer does not allege that ED&F interacted with the Goldstein Plan or Acer in New York. Accordingly, as with the Utah and Pennsylvania Actions, the Court grants ED&F's motion to dismiss, albeit without prejudice to the filing of a motion for leave to amend.

---

61

*Bank Brussels*, 171 F.3d at 792.

62

Opp. Br. at 13 (stating only that ED&F "caused injury in New York").

63

*See Seiden v. Schwartz, Levitsky, & Feldman LLP*, No. 16-cv-5666 (RA), 2017 WL 2591785, at *4 (S.D.N.Y. June 14, 2017) ("the fact that [plaintiff's] investors resided in New York, or even that these investors may have relied upon [] statements regarding the audit opinion while in New York, provides no basis for concluding that the "original event" causing [plaintiff's] injury occurred in New York.").

II.    *Permissibility of the Third Party Complaints*

    A.    *Nature of the Third Party Claims*

ED&F seeks dismissal of the TPPs' claims on the basis that they allegedly are impermissible under the terms of Rule 14(a) of the Federal Rules of Civil Procedure, which governs when a defending party may bring a third party into a lawsuit. Rule 14(a) provides in relevant part that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it.*"[64] Here, the TPPs are defendants on SKAT's claims. ED&F is not a party to them. Accordingly, the permissibility of the third-party complaints against ED&F depends upon whether ED&F is or may be liable to the TPPs for all or part of the claims against them by SKAT.

SKAT raises five claims against Wittwer and Crema based on theories of fraud, aiding and abetting fraud, unjust enrichment, money had and received, and negligent misrepresentation. At the heart of all of these claims lies SKAT's contention that Wittwer's and Crema's plans improperly obtained refunds of Danish withholding taxes to which those plans were not entitled.[65] SKAT's claims against Acer are similar. They generally are premised on the theory that Acer directed ED&F to create the allegedly fraudulent Tax Vouchers that were submitted to SKAT and that Acer received a percentage of the money that SKAT paid to the pension plans.[66] All of SKAT's claims seek to recover the millions of dollars that the plans obtained, supposedly as tax

---

[64]    Fed. R. Civ. P. 14(a) (emphasis added).

[65]    *See In re SKAT*, 2020 WL 7059843, at *1-2.

[66]    *Id.*

refunds to which they were entitled.

The TPPs assert several claims for relief against ED&F on theories of fraud, negligent misrepretation, breach of fiduciary duty, promissory estoppel, unjust enrichment, equitable indemnification, and apportionment of fault. The essence of all of those claims, however, is the same. In sum, they assert that:

- The TPPs relied on ED&F in all material respects in relation to the allegedly fraudulent or otherwise improper claims for the Danish tax refunds.[67]

- They did so in reliance on misrepresentations by ED&F as well as on ED&F's promises, contractual obligations, and fiduciary duties.[68]

- While TPPs deny any liability to SKAT, they contend that "ED&F should be responsible for [any] damages [for which TPPs may be liable to SKAT] because of ED&F's [breaches of its] obligations under the Agreement [and] its duty to transmit only truthful and accurate information to the Plan, and because of its unique position by which it managed and controlled the Plan's brokerage account, executed securities transactions for the Plan, and could confirm the Plan's Holdings, Dividends, and withholding-tax refunds."[69]

- In sum, they contend that in the event that "SKAT proves its claims and

---

[67] Individual TPC at ¶¶ 25, 38; Acer TPC at ¶¶ 32, 38, 73.

[68] Individual TPC at ¶¶ 84, 95, 99, 109, 126; Acer TPC at ¶¶ 86, 95.

[69] Individual TPC at ¶ 73; Acer TPC at ¶ 78.

establishes that the Third-Party Plaintiff is liable to SKAT for some or all of SKAT's alleged damages or amounts it claims to be owed,"[70] then ED&F should be liable over to them.

For reasons that are quite difficult to understand, ED&F contends that none of the TPPs' claims (save those for equitable indemnification and apportionment of fault) come within Rule 14(a) because they "assert that ED&F engaged in specific wrongful conduct directed at them, or that ED&F is in possession of funds that rightfully belong to them."[71] Its argument appears to boil down to the fact that the TPPs' claims will turn on certain additional facts or elements that are not at issue in SKAT's underlying suit. However, "Rule 14 does not require that the facts and legal issues in the third-party claim be completely identical to those in the main action."[72]

Moreover, the Second Circuit has instructed that Rule 14(a) may encompass a claim by which the defendant "attempt[s] to pass on to the third party . . . all or part of the liability asserted against the defendant."[73] Such claims are "derivative of [the plaintiff's] claim against [the third-party plaintiff] in that [the third-party plaintiff] would have no claim against [the third-party defendant]

---

[70]
    *Id.*

[71]
    Br. [Dkt. 574] at 10.

[72]
    *Lamberson v. Washington Int'l Ins. Co.*, No. 93-cv-0471 (MBM), 1993 WL 524855, at *2 (S.D.N.Y. Dec. 16, 1993) (quoting *Argonaut Ins. Co. v. Halvonan Ins. Co.*, 545 F.Supp. 21, 23 (S.D.N.Y. 1981) and citing *Givoh Assocs. v. American Druggists Ins. Co.*, 562 F.Supp. 1346, 1350 (E.D.N.Y. 1983) (disagreeing with theory that " Rule 14(a) may only be used as a vehicle against a party who may be liable to a third-party plaintiff on precisely the same theory supporting the plaintiff''s claim against that third party plaintiff' as an "unnecessarily restrictive approach to Rule 14(a)," which is "intended to permit a defendant to obtain relief from the true wrongdoer.")).

[73]
    *Bank Of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000).

if it were not itself found to be liable to [the plaintiff]."[74]  That is the case here, and ED&F has not

pointed to any case holding that Rule 14(a) requires anything more.[75]

In addition, to the extent that ED&F suggests that claims under Rule 14(a) must be

limited to indemnification or contribution, the Court disagrees.  Instead, "the Court may deem []

claims [other than indemnification and contribution] 'derivative' if the defendant 'bears [its] burden

of showing that if [it] is found liable to the plaintiff, then the third-party will in turn be liable to

[it].'"[76]  That is precisely what these third party complaints seek to do – i.e., they seek to make a

nonparty (ED&F) liable to the third party plaintiffs (Wittwer, Crema, and/or Acer) for all or part of

---

[74]

Bank of India v. Trendi Sportswear, Inc., No. 89-cv-5996 (JSM), 2002 WL 84631, at *3 (S.D.N.Y. Jan. 18, 2002), aff'd, 64 F. App'x 827 (2d Cir. 2003).  See also Hobby Lobby Stores, Inc. v. Christie's Inc., No. 20-cv-2239(AMD), 2021 WL 4301542, at *6 (E.D.N.Y. Jan. 5, 2021) ("[third-party plaintiff's] claims-that [third-party defendant's] broke both express and implied warranties and committed fraud to procure the sale of the Tablet – are entirely dependent on the outcome of the government's forfeiture action. If the government proves that the Tablet was stolen, [defendant and third-party plaintiff] can seek to recover the purchase price from [third-party defendant] . . . Conversely, if the government . . . has no basis to seize the Tablet [then] [the third-party plaintiff] has no action against [third-party defendant].").

[75]

The two cases cited by ED&F in this regard are inapposite substantially for the reasons explained in the TPPs' opposition brief.  See Opp. Br. at 20.

[76]

E.C. Contracting, Inc. v. D.F. Pray, Inc., No. 19-cv-6813 (FB), 2021 WL 1152938, at *2 (E.D.N.Y. Mar. 26, 2021) (quoting Schoenholtz v. Doniger, No. 83-cv-2740 (IBC), 1984 WL 374, at *5 (S.D.N.Y. May 4, 1984)).  See also Doucette v. Vibe Recs., Inc., 233 F.R.D. 117, 120 (E.D.N.Y. 2005) ("the traditional grounds for a third-party action are indemnification, contribution, or subrogation . . . [but] [t]his general rule is only a result of the nature of the claims for contribution, subrogation and indemnification, which inherently seek secondary liability, but does not foreclose other types of claims in a third-party complaint" (citations omitted)); accord Campen v. Greenamayer, 940 F.2d 1533, 1991 WL 148750, at *5 (9th Cir. 1991) ("Rule 14 requires that there be some sort of derivativeness or nexus between the primary liability . . . and the basis for the attempt to assign third party liability . . . But we have never held that such derivativeness must take the form of an indemnity or contribution claim.").

SKAT's claims. Indeed, nothing could be clearer in light of the TPPs' explicit allegation that their claims against ED&F are contingent upon SKAT prevailing against the TPPs. Accordingly, the TPPs' claims for fraud, negligent misrepresentation, breach of fiduciary duty, promissory estoppel and unjust enrichment are properly asserted in this action.

     *B.*     *Impact of State Law – Utah Actions*

       Where a federal rule of civil procedure is on point and the application of the federal rule would not alter the enforcement of state substantive law – but merely its mode of enforcement – the court properly applies the federal rule.[77] Here, Rule 14(a) allows defendants in federal court to implead parties that "may be liable to it for all or part of the claim" asserted against it by the plaintiff.[78] Rule 14(a) therefore governs the method of presenting such contingent claims. Nonetheless, "[f]ederal impleader cannot . . . operate to enlarge the third-party plaintiffs' right to recovery beyond that available under the controlling substantive law."[79]

       ED&F argues that the TPPs' claims in the Utah Actions may not be asserted under Rule 14(a) because they seek to enforce claims that would not be available under Utah law. It bases this argument on three grounds:

       *First*, it contends that the TPPs' claims have not accrued under Utah law and thus

---

[77]     *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965).

[78]     Fed. R. Civ. P. 14.

[79]     *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994).

may not be asserted here.[80]  The Second Circuit, however, has recognized that Rule 14(a) "permits a defendant to bring in a third-party defendant even though the defendant's claim is purely inchoate – i.e., has not yet accrued under the governing substantive law – so long as the third-party defendant may become liable for all or part of the plaintiff's judgment."[81]  That conclusion governs here.  And as the Second Circuit explained, the Court can avoid conflicting with state substantive law by making any impleader judgment contingent on the TPPs' payment of any judgment to SKAT.[82]  In fact, all of the TPPs' claims expressly recognize that contingency.  Accordingly, their claims are properly asserted under Rule 14(a) regardless of whether they have yet accrued under state law.

     *Second*, ED&F contends that the TPPs' claims must be dismissed because "Utah

---

[80]

    For an indiscernible reason, ED&F raises this argument with regard to the Individual TPPs only.  However, as ED&F has not pointed to any relevant difference between Acer and the Individual TPPs' claims, the Court considers the issue without distinguishing between the relevant third-party complaints.

    In general, ED&F's filing of separate briefs in support of its motions to dismiss the third-party complaints is unnecessary and a waste of judicial resources.  This should be avoided in the future.

[81]

    *Id.* at 1233-4 (concluding that while "[u]nder New York law, the right to contribution does not arise in favor of the defendant unless and until the defendant pays the plaintiff an amount exceeding its equitable share of the primary judgment . . . In a federal case governed by New York law, Rule 14(a) nevertheless permits a defendant to implead a joint tortfeasor for contribution before the right to contribution accrues, because that third party 'may be' liable to the defendant for a share of the plaintiff's primary judgment." (internal citation omitted)).  *See also Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 480 (S.D.N.Y. 2014) ("federal courts often authorize the joinder of indemnitors as third parties under Rule 14, even where state substantive law would adjudge such claims unripe were they brought independently").

[82]

    *Andrulonis*, 26 F.3d at 1233-4 ("Because the underlying right to contribution is necessarily conditioned upon the defendant's satisfaction of the primary judgment, the judgment entered upon that claim should reflect this contingency").  *See also* 3 MOORE'S FEDERAL PRACTICE – CIVIL § 14.05.

[law] requires a previous finding of liability against both joint tortfeasors as a predicate to a right of indemnification" and ED&F has not been found liable to SKAT.[83]  However, the sole case cited by ED&F states only that equitable indemnification requires that "the prospective indemnitor . . . also be liable to the third person."[84]  But it does not follow that the indemnitor must have been *adjudged* liable to the underlying plaintiff.  In fact, Utah courts have sustained claims for indemnification where the original plaintiff had not sued the prospective indemnitor.[85]  Accordingly, the Court sees no principled reason to preclude the TPPs from bringing their claims for equitable indemnification under Rule 14(a).

*Finally*, ED&F argues that the TPPs may not state a claim for apportionment of fault in the "absence of an independent substantive claim entitling them to affirmative relief."[86]  However, because the Court concludes that the TPPs' other claims may be asserted under Rule 14(a), that

---

[83]

Dkt. 574 at 13 ("ED&F has not been found liable to SKAT, and thus a claim of equitable indemnification cannot be maintained under Utah law" (*citing Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984))); Dkt. 577 at 13 (same).

[84]

*Perry*, 681 P.2d at 218.

[85]

*See, e.g., Flowell Elec. Ass'n, Inc. v. Rhodes Pump, LLC*, 361 P.3d 91, 96 (Utah 2015) (explaining that a claim for equitable indemnification accrues when the party seeking indemnification is held liable to the original plaintiff); *Salt Lake City Sch. Dist. v. Galbraith & Green, Inc.*, 740 P.2d 284, 288 (Utah Ct. App. 1987) (equitable indemnification is proper where there are "sufficient facts in the record to support the finding that" the indemnitor is liable to the original plaintiff). *Bylsma v. R.C. Willey*, 416 P.3d 595, 607 (Utah 2017) ("[i]mplied indemnity is a doctrine applying in a limited number of scenarios that shifts the entire burden of a plaintiff's loss from a non-culpable party to a culpable party . . . on the back end, after the plaintiff has fully recovered." (citations omitted)).

[86]

Dkt. 574 at 13; Dkt. 577 at 13 (*quoting Reiersen v. Smith*, No. 150900184, 2015 WL 11185811, at *1 (Utah Dist. Ct. June 17, 2015) (dismissing apportionment of fault claim based on dismissal of contractual indemnification claim where third-party plaintiffs "ha[d] not alleged any other independent substantive claim for relief.")).

principle is irrelevant here. The TPPs claim that ED&F is responsible for any liability imposed against them based on the allegedly improper Tax Vouchers submitted to SKAT on their behalf. Accordingly, assuming the existence of personal jurisdiction, they may seek an apportionment of fault with regard to these claims under Rule 14(a).

## III.    Sufficiency of the Allegations

ED&F moves to dismiss the third-party complaints also on the ground that they fail to state a sufficient claim to relief under Rule 12(b)(6). In light of the Court's decision to allow Acer to move for leave to amend its jurisdictional allegations, there seems little point to deciding the motion to dismiss under Rule 12(b)(6) at the time. In all the circumstances, the motion to dismiss is granted without prejudice, and purely as a matter of efficiency and administrative convenience, so that the parties may move for leave to amend in light of ED&F's motion to dismiss.

### Conclusion

ED&F's motions to dismiss the third-party complaints by Darren Wittwer, Robert Crema, and Acer Investments Group [18-md-2865, Dkt. 573, 575; 18-cv-09797, Dkt. 237, 239] are granted. Wittwer, Crema, and Acer's third-party complaints are dismissed without prejudice to motions for leave to file amended third-party complaints, copies of which shall be submitted along with any such motion, on or before November 29, 2021.

SO ORDERED.

Dated: October 26, 2021

_____
Lewis A. Kaplan
United States District Judge