
Hughes
Hubbard
& Reed

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Neil J. Oxford
Partner
Direct Dial: +1 (212) 837-6843
Direct Fax: +1 (212) 299-6843
neil.oxford@hugheshubbard.com

By ECF

Honorable Lewis A. Kaplan                                         October 26, 2021
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:    *In re Customs and Tax Administration of the Kingdom of Denmark*
>        *(Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this letter motion, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(ii), to compel ED&F Man Capital Markets Limited ("ED&F") to produce a properly prepared witness to testify about certain of the topics set forth in SKAT's Federal Rule of Civil Procedure 30(b)(6) deposition notice that are critical to the parties' claims and defenses in these actions and for which ED&F's representative witness Shahab Hashemi was egregiously unprepared at his October 7 and 8, 2021 deposition.[1]

**ED&F is obstructing SKAT from discovering the circumstances of its issuance of the false tax vouchers.**

In September 2019, ED&F admitted in an amended pleading it filed in England that it issued 80 false tax vouchers identified on Annex E thereto that collectively overstated the amount of withholding tax the defendant pension plans purportedly suffered by 183,902,399 Danish kroner ("DKK").[2]  The false Annex E tax vouchers were in addition to nine other tax vouchers identified on Annex A to the pleading that ED&F had previously admitted overstated the amount purportedly withheld by DKK 312,120.  Yet, over two years later and as the newly set December 4, 2021 fact discovery deadline approaches, ED&F still refuses to disclose to

---

1.   This motion relates to the 30 pending actions in this multi-district litigation involving defendants that submitted to SKAT fraudulent dividend withholding tax refund applications that included false tax vouchers issued by ED&F purporting to certify that the defendant pension plans owned Danish shares on which they received dividends, net of withholding tax: 18-cv-05053; 18-cv-05374; 18-cv-08655; 18-cv-09797; 18-cv-09836; 18-cv-09837; 18-cv-09838; 18-cv-09839; 18-cv-09840; 18-cv-09841; 18-cv-10100; 18-cv-09549; 18-cv-09515; 18-cv-09511; 18-cv-09498; 18-cv-09507; 18-cv-09497; 18-cv-09489; 18-cv-09491; 18-cv-09439; 18-cv-09552; 18-cv-09434; 18-cv-09505; 18-cv-09494; 18-cv-09492; 18-cv-09490; 18-cv-10088; 18-cv-10090; 18-cv-10127; 18-cv-04894.

2.   *See* Letter Addressed to Judge Lewis A. Kaplan from Brian S. Fraser, Ex. A ¶ 4.2, *In re SKAT* (No. 18-md-02865), ECF No. 202.

SKAT facts surrounding the false tax vouchers that are highly relevant to the parties' claims and defenses, especially now that the Court has directed the parties to select a case involving Annex E vouchers as a summary judgment bellwether.  In response to SKAT's document requests, ED&F asserted (wrongly) that all written explanations of how it came to issue the Annex E vouchers are privileged under English law, including the materials it provided to its board and the report it provided to its regulator, the U.K.'s Financial Conduct Authority ("FCA"), all of which it continues to withhold on that ground, even though in November 2020, the English High Court of Justice rejected ED&F's baseless privilege claims.[3]  Now, in response to SKAT's Rule 30(b)(6) deposition notice, ED&F refuses to produce a properly prepared corporate representative witness to testify about all facts known or reasonably available to ED&F about its issuance of the false tax vouchers.

## SKAT's Rule 30(b)(6) notice of deposition of ED&F.

On September 29, 2021, SKAT served on ED&F its final Rule 30(b)(6) deposition notice, identifying 29 topics for the deposition, which remained unchanged from when SKAT first noticed the deposition on March 18, 2021.  (*See generally* Ex. 1.)[4]  The designated topics included (i) the Annex E tax vouchers themselves, including ED&F's basis for admitting they are false, as well as (ii) the "timing, terms, and counterparties of the transactions by which ED&F acquired the Shares it purported to sell to the Plans;" (iii) "Dividends or other cash payments that ED&F or the Plans received related to the Shares;" (iv) the "Tax Vouchers, including the representations made by ED&F contained in the Tax Vouchers;" (v) "ED&F's internal decision to issue each Tax Voucher;" (vi) "any ED&F internal approvals related to the issuance of the Tax Vouchers;" (vii) "the process for the creation of such Tax Vouchers;" (viii) the "Refunds, including ED&F's receipt and distribution of the Refunds;" and (ix) the "U.K. Financial Conduct Authority's investigation into ED&F Man's custody business and trading in Danish shares."  (*Id.* (Topics No. 6, 11, 19, 20, 22, 23, 24).)  ED&F neither objected to SKAT's notice nor moved for a protective order.

## ED&F's Rule 30(b)(6) witness was unprepared and evasive.

On October 7 and 8, 2021, SKAT took the deposition of ED&F's corporate representative witness Mr. Hashemi, who ED&F designated to testify on its behalf with respect to all topics in SKAT's notice.  (Ex. 2 at 23:8-24:9.)[5]  Mr. Hashemi was woefully unprepared, answering "I don't know" or "I don't recall" over a hundred times, in each instance to a question squarely within the noticed topics.  (*See generally* Exs. 2 & 3.)  And he also was evasive in his answers, repeatedly impeding the efficient conduct of the deposition by slowly reading aloud the documents put in front of him instead of answering SKAT's straightforward questions about them.  (*See, e.g.*, Ex. 3 at 292:2-298:23, 339:11-340:10.)  On October 18, SKAT wrote to ED&F to request that it produce a properly prepared witness to testify about topics from SKAT's notice

---

3.   SKAT's May 13, 2020 motion to compel ED&F (No. 18-md-02865, ECF No. 335) to produce the withheld FCA report and board materials is pending before the Court.  ED&F's appeal of the English court's denial of its privilege application is stayed until the English Court of Appeal determines SKAT's appeal of the English High Court of Justice's dismissal of SKAT's claims in the underlying proceeding.

4.   Exhibit 1 is a copy of SKAT's final Rule 30(b)(6) notice of deposition of ED&F.

5.   Exhibits 2 and 3, respectively, are transcripts of Mr. Hashemi's October 7 and 8 deposition.

of particular importance to these actions.  (*See* Ex. 4.)[6]  The parties met and conferred on October 22, during which ED&F refused to produce a witness.

**ED&F should be compelled to produce a properly prepared witness.**

Under Rule 30(b)(6), ED&F was required to designate a witness to testify about all "information known or reasonably available to" it concerning the tax vouchers it issued, including the Annex A and E vouchers, ED&F's determination that the other vouchers it issued are accurate, and the FCA's investigation of ED&F as it pertains to its issuance of those vouchers.  Fed. R. Civ. P. 30(b)(6).  "To satisfy" this obligation, ED&F had "an affirmative duty" to designate a witness for each topic who could "give complete, knowledgeable and binding answers on its behalf."  *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (internal quotation omitted).  Thus, to the extent Mr. Hashemi lacked personal knowledge about the topics, ED&F had a duty to prepare him "to the extent matters are reasonably available, whether from documents, past employees, or other sources."  *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, No. 10 Civ. 1391 (LGS)(JCF), 2013 WL 1286078, at *2 (S.D.N.Y. Mar. 28, 2013) (internal quotation omitted).  ED&F's failure to do so "is tantamount to a failure to appear," *id.* (internal quotation omitted), so the Court should compel ED&F to produce a witness properly prepared to testify about the following four topics:

The Annex E vouchers: With respect to the Annex E vouchers, covered by topics number 6, 11, 19, 20, and 22, Mr. Hashemi's "knowledge was either uselessly general or nonexistent." *Agniel v. Central Park Boathouse LLC*, No. 12 Civ. 7227 (NRB), 2015 WL 463971, at *3 (S.D.N.Y. Jan. 23, 2015.)  It is implausible, to say the least, that Mr. Hashemi's testimony represented the full extent of the information "known or reasonably available" to ED&F about the Annex E vouchers.  On the critical question of why ED&F issued the false Annex E vouchers, Mr. Hashemi testified that in preparing for the deposition, all he learned was that "[t]he vouchers were produced incorrectly because the person producing them thought that it was . . . to be produced."  (Ex. 3 at 256:12-18.)  He did not even know why that person thought that the vouchers were "to be produced."  (*Id.* at 256:19-22.)  Yet, ED&F provided reports to the FCA and its board on how ED&F came to issue the Annex E vouchers that surely provided more of an explanation than that a particular employee, for reasons unknown, thought the false tax vouchers were "to be produced."  SKAT is entitled to those same facts, regardless of ED&F's baseless assertion that the reports and board minutes themselves are privileged.  *See, e.g.*, *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003) (30(b)(6) "corporate representative was obliged to gain some understanding of the underlying facts, regardless of the source identifying underlying facts . . . .  It matters not that the witness['] understanding was gleaned from documents protected as work product, as the facts within those documents are not subject to protection.").  Nor was Mr. Hashemi able to answer basic questions about the Annex E vouchers, such as (i) from whom ED&F's affiliate MPT Dubai acquired the shares identified in the vouchers that it purportedly delivered (without a right to a dividend) to the defendant plans, (ii) whether MPT Dubai purported to cover its short sales to the plans with the very shares it supposedly sold to them, (iii) the purpose of what appear to be "wash" trades underlying the vouchers entered into between ED&F's equity finance desk and interdealer broker, respectively, and a plan and a non-ED&F broker, and (iv) why specific vouchers

---

6.   Exhibit 4 is a copy of SKAT's October 18 letter to ED&F.

identified on Annex E are inaccurate.  (Ex. 3 at 254:18-255:10, 278:14-279:23, 286:15-289:25, 373:4-376:13.)

       How ED&F determined the non-Annex E vouchers are accurate: Mr. Hashemi's testimony also was incomplete and inadequate in that he was unable to respond fully to questions covered by the same topics about how ED&F determined that the non-Annex E vouchers did not share the same problems as the Annex E vouchers.  Instead, Mr. Hashemi made broad references to certain categories of documents allegedly unique to the non-Annex E trades, including SWIFT messages, correspondence from market counterparties, and cash statements purportedly showing that dividends were paid.  (*Id.* at 306:23-308:24.)  However, these documents exist for both Annex E and non-Annex E tax vouchers alike, and so could not serve as a basis to declare the non-Annex E vouchers accurate.  Beyond that limited and obviously incorrect answer, Mr. Hashemi was unable to provide any explanation how ED&F determined that the non-Annex E tax vouchers were not subject to the same infirmities as the Annex E vouchers.  (*Id.* at 310:21-312:11.)

       The Annex A vouchers: Mr. Hashemi testified that he does not "actually know anything about Annex A" and learning about it was not part of his preparation for his deposition.  (*Id.* at 325:20-326:6.)  But questions about ED&F's issuance of the incorrect tax vouchers identified on Annex A and what became of the amounts that SKAT paid based on refund applications including them, (*see id.* at 316:16-325:10), fit easily within the scope of topics number 19 ("The Tax Vouchers"), 20 ("ED&F's internal decision to issue each Tax Voucher"), and 22 ("The Refunds, including ED&F's receipt and distribution of the Refunds").

       The FCA investigation: Mr. Hashemi testified that with respect to topic number 24 (the FCA's investigation), all he did to prepare was ask ED&F's "attorneys" about it, who told him that "there was an investigation" and "it hasn't concluded."  (Ex. 2 at 39:10-40:12.)  That is clearly insufficient.  Even on ED&F's own misguided privilege theories, not all information known or reasonably available to ED&F about the FCA's investigation is privileged.  SKAT asked Mr. Hashemi questions about key documents related to that investigation that ED&F itself prepared, sent to the FCA, and produced to SKAT.  Mr. Hashemi was unable to answer basic questions about those documents, further confirming that the witness was inadequately prepared.  (Ex. 2 at 183:17-186:24, 187:14-189:9, 190:9-19, 204:25-207:23; Ex. 3 at 300:21-303:23.)

       That Mr. Hashemi testified that he spent a substantial amount of time preparing for the deposition is of no moment (*see* Ex. 2 at 20:20-21:14), as he could not answer basic questions falling squarely within the noticed topics.  *See Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701 (JPO)(JCF), 2013 WL 6439069, at *3 (S.D.N.Y. Dec. 9, 2013) ("what is determinative . . . is whether" the witness is "unable to testify about pertinent subject matter within the scope of the notice").  Accordingly, SKAT respectfully requests that the Court grant its motion to compel ED&F to produce a witness prepared to testify about the above four topics.

                       Respectfully submitted,

                       /s/ Neil J. Oxford
                        Neil J. Oxford

cc:     All counsel of record (via ECF)