

Neil S. Binder
Binder & Schwartz LLP
366 Madison Avenue  6th Floor
New York, NY 10017

(T) 212.510.7031
(F) 212.510.7299
nbinder@binderschwartz.com

October 28, 2021

**By ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

      We write on behalf of third-party defendant ED&F Man Capital Markets, Ltd. ("ED&F"), in response to plaintiff Skatteforvaltningen's ("SKAT") letter motion to compel dated October 26, 2021 (the "Letter Motion").  As set forth below, the Letter Motion should be denied, for ED&F has fully complied with its obligations under Fed. R. Civ. P. 30(b)(6).

      The notice of deposition served by SKAT upon ED&F was expansive and wide-ranging, encompassing 29 topics touching on every aspect of the trades underlying hundreds of tax reclaim applications submitted over a period of several years by almost three dozen ED&F clients.  In response, ED&F designated a corporate representative—Shahab Hashemi—who provided more than ten hours of testimony over the course of two consecutive days.  Mr. Hashemi's preparation for those two days of testimony was thorough and extensive.  As explained at deposition, Mr. Hashemi spent 50-75 hours reviewing ED&F documents, met with ED&F employees on approximately six separate occasions, and held fifteen separate meetings or calls with counsel, ranging in length from several hours to a full day. Tr. at 20:20-21:22, 54:18-55:15, 57:10-58:2, 78:8-80:12, 117:1-7, 118:11-20, 228:3-14, 249:20-250:20, 414:16-415:3.[1]  Having questioned Mr. Hashemi for a full ten hours over two successive days, SKAT now contends, remarkably, that the witness was not sufficiently prepared to testify.  *See* Ltr. Mot. at 1.  The contention is baseless.

      ED&F's equity finance desk—the division responsible for executing the trades underlying the relevant tax reclaim applications—has been closed down for years, *see* Tr. at 396:7-21, and the individuals involved in the trading and/or the tax vouchers at issue are no longer employed by ED&F.  As a result, there is much information that is not now known or available to the company.  Nonetheless, in order to prepare himself for deposition, Mr. Hashemi availed himself of every resource available to ED&F, more than fulfilling his obligation to review the information that was "reasonably available, whether from documents, past employees, or other sources."  *See Jenkins v. XpresSpa Grp., Inc.*, No. 19 Civ. 1774 (VEC)(SLC), 2020 WL 1644012, at *3 (S.D.N.Y. Apr. 2, 2020) (citation and internal quotation marks omitted); *see also*

---

[1] The amount of preparation was so extraordinary that counsel for SKAT quipped that Mr. Hashemi should be awarded an "honorary degree for all of that effort."  Tr. at 21:15-17.



*Bigsby v. Barclays Cap. Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (Where corporation does not possess knowledge of noticed topics, "its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization." (citation and internal quotation marks omitted)).

  Among the materials reviewed by Mr. Hashemi were trade-specific compilations of documents organized by counsel and provided to SKAT well in advance of the deposition. These "trade packs" contained contemporaneous documents evidencing the trades underlying the tax vouchers, including client trade instructions, trade confirmations for equity trades and hedge trades, SWIFT messages for receipt of equity shares, dividend reconciliation sheets, dividend receipt confirmations (to the extent such confirmations existed), and various account statements. Mr. Hashemi additionally reviewed, among other things, key communications and agreements, funding and fee documents, business loan statements, account opening documentation, and relevant policies and procedures.[2]  Mr. Hashemi also had numerous discussions with current ED&F employees who, though they did not themselves have direct, personal knowledge of the relevant facts, were able to assist him in understanding ED&F's policies, systems, and certain documentation.[3]  And Mr. Hashemi attempted to speak to former employees with first-hand knowledge of relevant transactions, but they declined to make themselves available.[4]

  SKAT's contention that all this preparation was inadequate is without merit, and the alleged deficiencies that SKAT purports to find in Mr. Hashemi's testimony do not withstand scrutiny.  As the deposition transcript makes clear, SKAT's examination of Mr. Hashemi was deeply flawed, marked by confusing questioning and persistent efforts to press the witness into affirming SKAT's own preconceived notions and litigation position.  *See Oakley v. Fed. Emp. & Guidance Servs., Inc.*, No. 10 Civ. 7739(JSR), 2011 WL 2946133, at *3 (S.D.N.Y. July 12, 2011) (In examining sufficiency of Rule 30(b)(6) testimony, courts should consider "problematic nature of plaintiff's counsel's questions," including whether they are "argumentative, compound, confusing, or otherwise improper.").  SKAT's counsel declined to permit Mr. Hashemi to review documents needed to answer the questions posed and repeatedly used terminology that Mr. Hashemi indicated he did not understand.  *See, e.g.*, Tr. at 76:25-77:6, 102:11-103:17; 112:10-17, 259:23-262:2.  For example, SKAT claims dissatisfaction with Mr. Hashemi's testimony regarding so-called "wash" trades, *see* Ltr. Mot. at 3, but SKAT's counsel introduced the term "wash trade" in the second day of the deposition and persisted in using it, without clarification, even after Mr. Hashemi indicated that he did not know what it meant.  *See* Tr. 299:17-24,

---

[2] In order to help make the deposition more productive, ED&F asked SKAT to identify any specific documents on which the witness should be prepared to testify.  Rather than identifying specific documents on which the witness could realistically be expected to prepare, SKAT provided an unprioritized list of 90 transactions, involving trades in ten different Danish securities by over 30 different pension plans.  *See* Ex. A (Table of Proposed Trades).

[3] In preparation for his deposition, Mr. Hashemi spoke to six ED&F employees:  Carlos Fernandez, Sara Hayward, Lucy Jenkins, Catherine Odigie, Richard Reid and Sue Wood.  *See* Tr. 21:15-22.

[4] Through counsel, Mr. Hashemi sought to arrange meetings with ED&F's former CEO, the former head of the equity finance desk, the former lead trader on the equity finance desk, the former head of securities operations, and the former employee who prepared the tax vouchers at issue.



300:14-20, 374:23-375:1.[5] That Mr. Hashemi did not acquiesce to SKAT's leading questions or adopt SKAT's version of events does not reflect any lack of preparation on the part of the witness, and Mr. Hashemi's hesitancy to assent to assertions he did not understand or to draw conclusions from documents presented to him out of context was in no sense "evasive."[6]

  SKAT purports to take issue with Mr. Hashemi's testimony regarding the tax vouchers listed on Annex E of ED&F's Re-Amended Defence (the "Annex E vouchers"). *See* Ltr. Mot. at 3-4. However, in testimony that SKAT pointedly declines to cite, Mr. Hashemi provided a full response regarding ED&F's position on the inaccuracies in the Annex E vouchers. *See* Tr. at 252:2-253:22 (explaining that the vouchers were inaccurate because "on the trade date, MPT Dubai did not have a contractual right to the shares in which it sold"). SKAT does not appear to find fault with this testimony, but instead quibbles over answers given to a handful of highly specific questions. SKAT cites, for example, to Mr. Hashemi's inability to recall the particular inter-dealer broker(s) used by non-party MPT Dubai to acquire "Annex E shares," *see* Ltr. Mot. at 3-4; Tr. 254:18-255:2, but it is well-settled that a Rule 30(b)(6) deposition is not a "memory contest." *Jenkins*, 2020 WL 1644012, at *5 (citation and internal quotation marks omitted).

  SKAT further maintains that Mr. Hashemi was unable adequately to explain "why specific vouchers identified on Annex E are inaccurate." Ltr. Mot. at 3-4. SKAT omits Mr. Hashemi's testimony on this question, *see* Tr. 252:2-253:22, and cites instead to the end of a long line of questioning in which Mr. Hashemi, having been presented with multiple isolated email communications and two different tax vouchers, was asked to draw an inference about the total shareholding indicated in one line-item of one of the Annex E schedules. Tr. 257:5-279:23. The unsurprising fact that this uncontextualized and confusing series of questions was unproductive does not even suggest—much less establish—that the witness was unprepared to testify regarding inaccuracies in specific Annex E vouchers. In contrast, over the course of ten hours of testimony, SKAT's counsel never took the witness through all (or even a majority) of the documents evidencing any given trade, nor did SKAT's counsel walk the witness through the sequence of actions involved in any given trade, let alone an Annex E trade.

  SKAT similarly claims that Mr. Hashemi was "unable to respond fully to questions . . . about how ED&F determined that the non-Annex E vouchers did not share the same problems as the Annex E vouchers." Ltr. Mot. at 4. But as SKAT acknowledges, Mr. Hashemi gave a full and direct explanation of the difference between the Annex E and non-Annex E vouchers: in the case of the non-Annex E vouchers, the receipt of the relevant

---

[5] SKAT did not define, or even reference, "wash trades" in its Rule 30(b)(6) notice, and SKAT has yet to explain what it means by the term. Similarly, although SKAT's counsel established early in the deposition that the witness was not able to define "cum ex trading," Tr. at 22:13-19, SKAT's counsel continued to ask questions that presumed an understanding of the term. *See id*. at 263:17-21, 310:7-11; 310:12-20; 310:21-311:16; 311:17-312:11.

[6] SKAT's tally of "I don't know" and "I don't recall" responses, *see* Ltr. Mot. at 2, is meaningless without reference to the questions asked. To take just one example of many, Mr. Hashemi was asked numerous questions calling for speculation about state of mind or the conduct of unaffiliated third parties. *See*, *e.g.*, Tr. 35:25-36:8 (expected conduct of FSA); 109:9-15 (relationship of Zeta Financial Partners and Solo Capital Partners); 205:23-206:5 (seeking testimony "from the perspective of the ED&F interdealer broker"); 256:12-24 (state of mind of former ED&F employee); 417:11-21 (states of mind of pension plans).



dividends was supported by documentation that was not present in the case of the Annex E vouchers.  Tr. at 306:20-307:23; 308:3-310:6; 310:21-311:16; *see also* Ltr. Mot. at 4.  Mr. Hashemi's answers accurately conveyed ED&F's corporate position, and if SKAT's counsel believed that further specificity was required, he could have asked for clarification at the deposition.  SKAT's contention that Mr. Hashemi's answers were "obviously incorrect," *see* Ltr. Mot. at 4, does not make it so, is contrary to ED&F's position, and is contradicted by the documentary evidence produced in this case.

      SKAT further objects that Mr. Hashemi was unprepared to answer questions regarding the small subset of tax vouchers listed on Annex A to ED&F's Re-Amended Defence.  *See* Ltr. Mot. at 4.  SKAT's objection is disingenuous, for in marked contrast to the Annex E tax vouchers, the Annex A tax vouchers were not specifically identified as a topic of deposition, nor would ED&F have had reason to expect that the Annex A tax vouchers would be the focus of questioning in light of the fact that, as SKAT noted in its motion, Annex A reflected a total overpayment of only DKK 312,120 (approximately $50,000).  Further, the Annex A tax vouchers relate exclusively to cases that ED&F understands to have been resolved pursuant to settlement agreements approved earlier this year by a federal bankruptcy court in Kentucky.[7]

      Finally, SKAT contends that ED&F's witness was not properly prepared to discuss the ongoing investigation of ED&F by its U.K. regulator, the Financial Conduct Authority (the "FCA").  *See* Ltr. Mot. at 4.  Mr. Hashemi was prepared to discuss the *factual* information that is the subject of the FCA investigation.  However, Mr. Hashemi was not asked to review privileged documents (as to which he would not have been able to testify in any event), nor was he asked to review communications between ED&F's counsel and the FCA (as to which any testimony beyond what was apparent from the face of the documents could likewise have implicated the privilege).  SKAT's apparent belief that the Rule 30(b)(6) deposition may be used as an end-run around ED&F's claim of privilege is misplaced.  SKAT has received all of the documentation on which ED&F's counsel relied in preparing the report to the FCA, and Mr. Hashemi was appropriately prepared to testify about the factual information contained in that documentation.[8]

      In short, Mr. Hashemi was fully prepared to testify on the factual information that was available to ED&F.  There is nothing more that Mr. Hashemi could reasonably have done to prepare himself for the deposition, and no other employee of ED&F would have been or will be better able to serve as ED&F's corporate representative.  SKAT's motion should be denied.

                                 Respectfully submitted,

                                 /s/ Neil S. Binder
                                   Neil S. Binder

---

[7] *See In re Bernard V. & Andrea B. Tew*, 20-51078 (Bankr. E.D. Ky); *In re Tew LP*, 20-51079 (Bankr. E.D. Ky.).

[8] It has never been ED&F's position that "all written explanations of how it came to issue the Annex E vouchers are privileged under English law."  *See* Ltr. Mot. at 2.  Rather, ED&F has asserted privilege over internal documents reflecting legal advice and communications prepared by counsel for submission on a confidential basis to the FCA.