Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

# Hughes Hubbard & Reed

VIA ECF

The Honorable Lewis A. Kaplan  November 23, 2021
United States District Judge
Southern District of New York
500 Pearl St.
New York, New York 10007

Re: *In Re: Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-02865 (LAK)

Dear Judge Kaplan:

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this letter motion, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), to compel defendants Richard Markowitz and John van Merkensteijn to produce documents concerning the purported dividend arbitrage schemes in which they participated before, or contemporaneously with, their submission of fraudulent dividend withholding tax refund applications to SKAT.[1]

**Defendants Markowitz, van Merkensteijn, Klugman and Ben-Jacob participated in purported dividend arbitrage schemes in addition to their fraud on SKAT.**

SKAT alleges in these actions that over a three-year period from 2012 to 2015, defendants Markowitz and van Merkensteijn submitted to SKAT more than a hundred fraudulent tax refund applications, which included false "dividend credit advices," in almost each case issued by Sanjay Shah's Solo Capital Partners LLP or its affiliates, purporting to show that U.S. pension plans in which defendants Markowitz, van Merkensteijn, or their friends or family members were the sole participants collectively owned billions of dollars of Danish stock on which they received hundreds of millions of dollars in dividends, net of withholding tax. But defendants' fraudulent Danish tax refund applications were not the first time they participated in so-called "dividend arbitrage" schemes, including with Mr. Shah.

Specifically, in 2010, defendant Robert Klugman introduced defendants Markowitz and van Merkensteijn (and their two former partners in Argre Management LLC, both of whom are

---

1. This motion relates to case nos. 18-cv-04833; 19-cv-01781; 19-cv-01783; 19-cv-01785; 19-cv-01788; 19-cv-01791; 19-cv-01792; 19-cv-01794; 19-cv-01798; 19-cv-01800; 19-cv-01801; 19-cv-01803; 19-cv-01806; 19-cv-01808; 19-cv-01809; 19-cv-01810; 19-cv-01812; 19-cv-01813; 19-cv-01815; 19-cv-01818; 19-cv-01865; 19-cv-01866; 19-cv-01867; 19-cv-01868; 19-cv-01869; 19-cv-01870; 19-cv-01871; 19-cv-01873; 19-cv-01894; 19-cv-01895; 19-cv-01896; 19-cv-01898; 19-cv-01906; 19-cv-01911; 19-cv-01918; 19-cv-01922; 19-cv-01924; 19-cv-01926; 19-cv-01928; 19-cv-01929; 19-cv-01930; 19-cv-01931; 19-cv-10713.

101770391_2

non-parties in these actions) to Mr. Shah, as a result of which the Argre principals invested in an Irish entity called Broadgate Fund set up to take advantage of the Ireland-Germany tax treaty and for which Solo Capital served as "investment manager." (Markowitz Dep. Tr. 26:21-28:21, 34:3-35:7.)[2]  Then, in December 2010, Argre, Solo and defendant Klugman's Stor Capital Consulting LLC entered into a Memorandum of Understanding for the purpose of setting forth the "terms and conditions" to which the parties agreed so that they would "have a way of working on [purported dividend arbitrage] transactions together on a going-forward basis." (*Id.* at 75:2-76:16.)  Next, in 2011, the Argre partners invested in another Solo dividend arbitrage scheme, this time involving the Ezra Academy, a non-profit school in Queens, New York identified by defendant Ben-Jacob, that would, as defendant Ben-Jacob put it, "take advantage of certain loopholes in German tax law and permit [his] clients to receive a tax refund from the German government for taxes that they did not in fact pay." (Ex. 2; Markowitz Dep. Tr. 79:13-81:21.)  Finally, in 2013, at the same time they were submitting fraudulent refund applications to SKAT supported by false Solo-issued dividend credit advices, defendants Markowitz and van Merkensteijn participated in a separate purported dividend arbitrage scheme with Duet Asset Management Limited that involved submitting tax refund applications to the Belgian government. (Markowitz Dep. Tr. 117:10-24, 119:19-122:11.)

**Defendants are refusing to produce relevant documents concerning their other dividend arbitrage schemes.**

On June 8, 2021, SKAT served discovery requests on defendants Markowitz and van Merkensteijn seeking all documents and communications concerning (i) the Broadgate Fund, (ii) Ezra Academy, (iii) Duet, (iv) the Argre-Solo-Stor Capital Memorandum of Understanding, and (v) any other "contemplated or executed dividend-arbitrage transaction or strategy." (Ex. 3.)[3]  On July 8, defendants Markowitz and van Merkensteijn served separate responses and objections to the requests, in which they both refused to produce any documents. (Exs. 5, 6.)  Defendant Markowitz objected that the requests are "untimely, overly broad and unduly burdensome," and seek "information or documents that are not relevant to any claim or defense in this litigation, and not proportional to the needs of the case." (Ex. 5 at 7.)  Defendant van Merkensteijn similarly objected that the requests are "overly broad, unduly burdensome, and not proportionate to the needs of the cases," and "[a]ny relevance of the documents sought . . . is at the absolute margins and cannot sustain SKAT's demand that Defendants expend significant resources after the close of the agreed-upon discovery deadline." (Ex. 6 at 4.)  On October 19 and November 5, respectively, SKAT asked defendants Markowitz and van Merkensteijn whether they intended to stand on their timeliness objections in light of the December 4, 2021 fact discovery deadline the Court set at the October 5 status conference. (Exs. 7, 8.)  On October 20 and November 9, respectively, defendants Markowitz and van Merkensteijn responded that they stood on their objections (*id.*), and subsequently declined SKAT's offer to meet and confer.

---

2. Excerpts from the transcript of defendant Markowitz's April 8 and 9, 2021 deposition are attached hereto as Exhibit 1.

3. On May 20, 2021, SKAT informed defendants Markowitz and van Merkensteijn that documents concerning their other dividend arbitrage schemes were missing from their document productions made in response to SKAT's pending requests. (Ex. 4.)  Defendants responded on May 28, arguing that documents concerning their other schemes "are not responsive to SKAT's requests (subject to Defendants' objections)," and refused to produce them on that ground. (*Id.*)  Rather than argue about whether the documents are responsive to its previous requests, on June 8, SKAT served additional requests squarely calling for their production. (*Id.*)

**The Court should overrule Defendants' objections and compel production.**

The Court should overrule Defendants' objections and compel them to produce the documents SKAT seeks.

First, defendants' relevance objections are meritless. "[R]elevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). The documents SKAT seeks are not, as defendant van Merkensteijn contends, at the "absolute margins." (Ex. 6 at 4.) Rather, they are central to SKAT's claims in that they bear directly on whether defendants Markowitz, van Merkensteijn, Klugman and Ben-Jacob acted with fraudulent intent, or at the very least were negligent, in submitting tax refund applications to SKAT.

To execute the pension plans' purported trading in Danish stock, Solo did not require defendants (or anyone else) to put up any capital to purchase the shares, as the trading supposedly was 100-percent financed by stock loan transactions. (Markowitz Dep. Tr. 147:23-148:19, 151:15-152:19, 218:13-23.) Nonetheless, despite that defendants had to do nothing more than create a pension plan to participate, they received tens of millions of dollars of the refunds SKAT paid in response to their pension plans' refund applications. (Markowitz Dep. Tr. 459:7-17; van Merkensteijn Dep. Tr. 275:11-24.)[4] Defendants must have known this was too good to be true based on their previous dividend arbitrage schemes. For instance, to participate in the Broadgate Fund, the four Argre principals and a "corporate client" put up "approximately $50 million," to which Broadgate's prime broker Merrill Lynch added up to 20 times that amount in leverage, and the Argre principals made a "[20] to 25 percent" profit in return. (Markowitz Dep. Tr. 38:22-39:16, 43:3-46:4.) Likewise, with respect to the Ezra Academy, a "corporate client" of Argre's entered into a "total return swap" with Ezra, pursuant to which Ezra received $40 million, which it deposited in its account at Deutsche Bank, which provided "less than 20 percent" leverage. (*Id.* at 87:17-93:10.) And in 2013, with Duet, the Argre principals invested "under [$1] million," which was leveraged to generate a profit of "[u]nder $2 million." (*Id.* 118:3-121:25.) Before investing in Duet's Belgian scheme, the Argre principals spent months negotiating with Duet on a Danish dividend arbitrage scheme as well, but ultimately declined to move forward because Duet's terms, which would have required an approximate €700,000 investment to generate an approximate €1.1 million return, were no match for Solo's offer of no money down and tens of millions of dollars in profit. (Ex. 10.)

Further, the documents SKAT seeks also are relevant in that the circumstances leading up to their pension plans' opening accounts at Solo in 2012 undermine defendants' arguments that they acted in good faith. By 2011, Solo was finding it increasingly difficult to find willing financial institutions with sufficient capital to support its dividend arbitrage schemes. For example, in May 2010, less than two weeks after the Broadgate Fund started trading, Merrill Lynch declined to support the Fund's trading and required it to liquidate its positions. (Ex. 11.) Brown Brothers Harriman similarly declined to participate in the Ezra transaction because of what Mr. Shah suspected were "reputational concerns." (Markowitz Dep. Tr. 101:7-106:10.) And in August 2011, Solo's Guenther Grant-Klar reported to defendant Markowitz that they had "done the rounds with all the likely leverage providers, and other than Macquarie, there is no appetite to provide leverage for dividend trading, mainly due to reputational reasons." (Ex. 12.)

---

4. Excerpts from the transcript of defendant van Merkensteijn's April 19 and 20, 2021 deposition are attached hereto as Exhibit 9.

Macquarie would consider it, Mr. Grant Klar reported, but "would require more than half of the P&L as a fee," (*id.*), an amount Mr. Markowitz testified was too high. (Markowitz Dep. Tr. 135:3-136:16.)  Yet, just a few months later, in April 2012, Solo postulated that there was no need for a financial institution such as Merrill Lynch or Brown Brothers Harriman to provide leverage after all, and that Solo itself could arrange apparently unlimited financing for the entire amount of all stock purchases via stock loan agreements with counterparties in the Cayman Islands that the defendants admit they had never heard of before. (Markowitz Dep. Tr. 157:24-160:17, 176:23-179:9, 190:4-191:19; van Merkensteijn Dep. Tr. 77:21-78:10, 80:24-81:10, 216:13-218:2.)

Second, particularly in light of its relevance, defendants' "[g]eneral and conclusory objections" as to "overbreadth" and "burden are insufficient to exclude discovery of [the] requested information" and should be overruled. *Melendez v. Greiner*, No. 01 Civ. 07888 (SAS)(DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).

Finally, defendants' timeliness objections also should be set aside.  SKAT served these targeted requests on June 8, 2021, well in advance of the December 4, 2021 fact discovery deadline.  Defendants argue that the requests should be considered untimely because under Federal Rule of Civil Procedure 34, their responses were due after the parties' previously agreed-on June 30 fact discovery cut-off.  (Exs. 5, 6.)  But the fact that the June 30 deadline did not hold is entirely of defendants' own doing, in particular, their strategic decision to wait until January 2021 to reveal that they intended to assert as a defense that they relied on the advice of their counsel and to continue producing documents in support of that defense until May 2021.  Nor is there anything to defendants' argument that SKAT failed to raise this dispute with the Court before or at the October 5 conference.  (Exs. 7, 8.)  The Court itself identified the schedule for completing discovery as a topic for the conference (*see* Pretrial Order No. 24, ECF No. 630), and resolved the issue by setting a December 4 fact discovery deadline.[5]

Accordingly, SKAT respectfully requests that the Court grant its motion to compel.

        Respectfully submitted,

        /s/ Marc A. Weinstein
        Marc A. Weinstein

cc: All counsel of record via ECF

101770391_2

---

5. Defendants Markowitz and van Merkensteijn also incorporate their general objections into each of their responses to SKAT's requests, "violat[ing] Rule 34(b)(2)(B)'s specificity requirement." *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE)(AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017).  In any event, defendants' general objections provide no firmer ground on which to withhold documents than the specific objections they made to each request.