# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND LITIGATION<br><br>This document relates to the cases identified on Schedule A hereto.[1] | MASTER DOCKET<br><br>Civil Action No. 18-MD-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF CONTENTION INTERROGATORIES TO PLAINTIFF SKATTEFORVALTNINGEN**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), Plaintiff Skatteforvaltningen ("SKAT") hereby responds and objects to the First Set of Contention Interrogatories to Plaintiff SKAT (the "Contention Interrogatories"), dated May 28, 2021, of Defendants listed on Schedule A hereto (the "Propounding Defendants").

The response to any particular Contention Interrogatory is not an admission of the relevance or the admissibility into evidence of such response.  No statement contained in these responses shall be deemed to constitute an admission that any statement or characterization in the Contention Interrogatories is complete or accurate.  SKAT reserves the right to supplement or correct these responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review.

These objections and responses are made solely for purposes of discovery in the Schedule A Actions.  SKAT, in responding to these Contention Interrogatories, does not waive

---

1.  These cases are referred to herein collectively as the "Schedule A Actions."

any objection based on relevance, materiality, competence, privilege, admissibility, authenticity, vagueness, ambiguity, undue burden, or other grounds, all of which objections and grounds are reserved and may be interposed at the time of any hearing or at trial.  Further, Plaintiff makes the responses and objections herein without in any way implying that it considers the Contention Interrogatories, or responses to the Contention Interrogatories, to be relevant or material to the subject matter of these actions.  SKAT further does not waive the right to object on any ground at any time to a request for further responses to these Contention Interrogatories.  SKAT does not waive the attorney-client privilege, work product privilege, or any other privileges with respect to the information called for in the Contention Interrogatories.

SKAT responds to the Contention Interrogatories to the extent that the Contention Interrogatories' instructions do not impose obligations that are beyond the scope of the Federal Rules of Civil Procedure and the Local Rules applicable to discovery in this matter.

No objection made herein, or lack thereof, shall be deemed a statement by SKAT as to the existence or non-existence of any information.  Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice and are not a waiver of Plaintiff's right to rely on other facts or documents at trial.

## GENERAL STATEMENTS & OBJECTIONS TO THE INSTRUCTIONS AND DEFINITIONS

In the interests of brevity and clarity, SKAT describes and summarizes certain limitations to its responses and common bases for objections to the Contention Interrogatories.

1.      SKAT objects to the Definitions, Instructions, and Contention Interrogatories to the extent they call for information that is outside SKAT's possession, custody, or control; seek information and/or materials already within the Propounding Defendants' knowledge,

possession, and/or control; or seek information that is publicly available or obtainable from some

other source that is more convenient, less burdensome, or less expensive.  SKAT has no

obligation or duty (and will undertake no such obligation or duty) to search for or produce

information that is in the possession, custody, or control of any third party.  (Throughout these

Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection

1.")

      2.     SKAT objects to the Definitions, Instructions, and Contention Interrogatories to

the extent they are vague, ambiguous, argumentative, cumulative or duplicative, overly broad,

unduly burdensome or oppressive, or to the extent they seek information that is not relevant to

the claims or defenses in the Schedule A Actions.  SKAT objects to the definitions and

instructions to the extent they purport to impose obligations or definitions beyond those set out in

Local Civil Rule 26.3 and Local Civil Rule 33.3.  SKAT objects to the Contention

Interrogatories because more practical methods of obtaining the information sought exist.

(Throughout these Responses, SKAT refers collectively to the objections contained in this

paragraph as "Objection 2.")

      3.     SKAT objects to the Definitions, Instructions, and Contention Interrogatories to

the extent they seek information that are protected from discovery by the attorney-client

privilege, the work product doctrine, the common interest privilege, confidentiality orders or

agreements, or that are otherwise immune to or protected from disclosure.  The inadvertent

production of any information which is confidential, privileged, or protected shall not constitute

a waiver of any privilege or any other ground for objecting to discovery with respect to such

information, the subject matter thereof, or the information contained therein; nor shall such

inadvertent production constitute a waiver of SKAT's right to object to the use of the information during this or any other proceeding.

4.      SKAT objects to the Definitions, Instructions, and Contention Interrogatories to the extent that it has already produced documents containing information responsive to the Contention Interrogatories.

5.      SKAT responds to the Definitions, Instructions, and Contention Interrogatories without waiving or intending to waive, but on the contrary, preserving:  (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; and (b) the right to object on all grounds, at any time, to document requests or other discovery procedures involving or relating to the subject of the Contention Interrogatories to which SKAT has responded herein.

6.      SKAT objects to the definition of "Document" to the extent that it includes documents not in SKAT's possession, custody, or control.  SKAT responds to the Contention Interrogatories only to the extent that such information is in the possession, custody, or control of SKAT, as set forth in the Federal Rules of Civil Procedure.  SKAT does not control any other agency or instrumentality of the Kingdom of Denmark or any third parties.

7.      SKAT objects to the definition of "Identify" to the extent that it calls for the production of information that SKAT is prohibited from disclosing under Danish law, including but not limited to: the Danish Tax Administration Act, the Danish Public Administration Act, the Danish Data Protection Act, the European General Data Protection Regulation, the Danish Securities Trading Act, and the Danish Capital Markets Act.  SKAT further objects to the

definition of "Identify" with respect to a Communication as broader than the uniform definition
of "Identify" set out in Local Civil Rule 26.3.

8.      SKAT objects to the definition of "Person" as broader than the uniform definition
of "Person" set out in Local Civil Rule 26.3.

9.      SKAT objects to the definition of "Plaintiff," "You," and "Your" as vague,
ambiguous, overbroad, unduly burdensome, not proportional to the needs of the case, and
seeking information privileged or exempt from discovery.  SKAT objects to these definitions to
the extent they include any third parties outside of its control.  SKAT further objects to these
definitions to the extent they include its representatives, attorneys, agents, investigators,
consultants, and counsel working on its behalf in connection with this or any other litigation, or
persons or entities acting or purporting to act on behalf of any of the individuals or entities
covered by the definition.  To the extent that SKAT provides any information in response to a
Contention Interrogatory, SKAT will interpret the terms "Plaintiff," "You," and "Your" to
include SKAT and its current or former employees in their capacity as such who were involved
in any of the matters at issue in this lawsuit during the Relevant Time Period.

10.     SKAT objects to Instruction No. 1 to the extent it calls for the production of
information or identification of documents that were created, generated, dated, issued, executed,
or received during a time period that is overly broad, unduly burdensome and/or oppressive, not
proportional to the needs of the case, and that is not relevant to the claims and defenses in the
Schedule A Actions.  SKAT will only produce information and identify documents created,
generated, dated, issued, executed, or received during the period from January 1, 2012 to June
15, 2015 (the "Relevant Time Period"), unless otherwise specified in the Responses.

11.     SKAT objects to Instruction No. 4 as vague, ambiguous, overbroad, unduly burdensome, seeking information or the identification of documents that are not relevant to the claims or defenses in the Schedule A Actions, and seeking to expand SKAT's obligations beyond those required by the Federal Rules of Civil Procedure or the Local Rules.

12.     SKAT objects to Instruction No. 6 on the grounds that the instructions are overly broad, unduly burdensome, and purport to impose obligations on SKAT in excess of those imposed by the Federal Rules of Civil Procedure.  SKAT will supplement or correct its response in a timely manner if it learns that the response is incomplete or incorrect in some material respect; if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the Court.

## RESPONSES TO CONTENTION INTERROGATORIES

### Contention Interrogatory No. 1

For the 7 Plans for which the Individual Plan Participants did not serve as the Authorized Representatives, do You contend that the Individual Plan Participants saw, reviewed or were provided information concerning the contents of the documents identified in paragraphs 33, 34, 75 and 76 of the Amended Complaint (*see, e.g.* Case 1:19-cv-01781-LAK, Doc. 60 ("Ballast Am. Compl."))[2] and, if not, what are the legal and factual bases for Your contention in paragraph 79 of the Amended Complaint (*id.*) that the Individual Plan Participants "intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements" in those documents?

### Response to Contention Interrogatory No. 1

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that all six Individual Plan Participants were aware of, or should have been aware of, multiple factors demonstrating that they were not engaged in a legitimate investment.  These include, but are not limited to, the following: (i) that

---

2.   Identical allegations are contained in the same paragraphs in the Amended Complaints against each of the 7 Plans.

either three or five LLCs had been created for them, without any apparent business purpose, other than to be able to create associated tax-exempt pension plans for purposes of submitting tax refund applications, *see, e.g.*, WH_MDL_00297405 (Ex. R. Markowitz-2265), Lerner Tr. 84:13 – 87:5, 92:2 – 93:16; (ii) that they were signing forms to create either three or five pension plans, with little to no explanation of why one plan was insufficient, if in fact any of the plans were being set up for legitimate purposes, *see, e.g.*, Lerner Tr. 124:25 – 125:7; Altbach Tr. 38:11 – 39:2; (iii) that the LLCs were not formed with the intention to generate income to fund the employer-sponsored plans; (iv) that they entered their plans into partnership agreements pursuant to which the vast majority of the plans' tax refund application proceeds would be distributed to others in the scheme, *see, e.g.*, RA00000502 (Ex. Altbach-1086); and (v) that they would be receiving payments in the hundreds of thousands of dollars for their participation, without having to contribute more than a de minimis amount, if any, to their plans, *see, e.g.*, PL00000440 (Ex. Lerner-596); Altbach Tr. 38:11 – 39:10.[3]

Despite this knowledge, the Individual Plan Participants of all 26 Plans each signed a power of attorney with Michael Ben-Jacob ("Ben-Jacob") effective as of June 30, 2014. MBJ_0005107 (Ex. Altbach-965); MBJ_0021894 (Herman); MBJ_0020965 (Ex. Jones-1172); MBJ_0005104 (Ex. Lerner-591); MBJ_0005110 (Miller); MBJ_0005095 (Ex. Zelman-1439). These powers of attorney authorized Ben-Jacob to "execute any and all documents and forms related to the organization and establishment" of "one or more limited liability companies and related qualified pension plans under Section 401(a) of the Internal Revenue Code of 1986."  The sole reason for the establishment of the limited liability companies and related pension plans was

---

3.  Unless otherwise noted, SKAT's statements in this response apply to all 26 Plans and to all six Individual Plan Participants.

for the pension plans to submit refund applications to SKAT.  The powers of attorney also authorized Ben-Jacob to "execute any and all . . . tax reclaim agreements and any other such related documents in connection with the Transactions."  Using the authority granted under these powers of attorney, Ben-Jacob signed powers of attorney with the Payment Agents on behalf of the Individual Plan Participants authorizing the Payment Agents to submit refund applications to SKAT on behalf of the Plans.

In addition, Individual Plan Participant Zelman signed a power of attorney with Donald Donaldson ("Donaldson") that allowed Donaldson to sign a power of attorney with a Payment Agent authorizing the Payment Agent to submit refund applications to SKAT on behalf of the Vanderlee Technologies Pension Plan ("Vanderlee Plan").  *See* MPSKAT00004752 (Ex. Zelman-1437).

As Ben-Jacob and/or Donaldson were the Individual Plan Participants' and their respective Plans' agents, the knowledge of and false statements by Ben-Jacob and/or Donaldson can be attributed to the Individual Plan Participants.  Ben-Jacob, Donaldson, and others acting at their direction were aware that the Plans could not afford to purchase and did not receive the dividends on the volume of shares the Plans claimed to have owned, and this knowledge can be imputed to the Individual Plan Participants.

Further, the Individual Plan Participants were each the only participant in his/her respective Plan and the only member in the LLC that sponsored each Plan.  *See* ELYSIUM-08942166 (Ex. Lerner-593); MBJ_0020968 (Ex. Jones-1178).  Thus, the Plans were the alter egos of each Individual Plan Participant, and the knowledge and acts of the Plans' agents— including the false statements made by the Payment Agents and Ben-Jacob and/or Donaldson— are imputed to the Individual Plan Participants.  Further, the Individual Plan Defendants acted

recklessly in so far as they chose not to review or seek to review submissions made to SKAT, trading confirmations, account statements from Broker-Custodians, or other documents related to the purported trading and/or receipt of dividends. As the sole members of the LLCs and the sole participants and trustees of the Plans, it was incumbent on the Individual Plan Participants to review these documents.

In addition, the 26 Plans appointed either Richard Markowitz ("Markowitz") or John van Merkensteijn ("van Merkensteijn") as authorized traders.  Both Markowitz and van Merkensteijn were aware that the 26 Plans did not own the relevant Danish securities or receive dividends on those securities, and their knowledge is imputed to the 26 Plans and the Individual Plan Participants.

**Contention Interrogatory No. 2**

> For the 7 Plans for which the Individual Plan Participants did not serve as the Authorized Representatives, do You contend that the Individual Plan Participants communicated with SKAT or with the Payment Agents and/or Broker-Custodians associated with the 7 Plans and, if so, what is the factual basis for Your contention?

**Response to Contention Interrogatory No. 2**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that the Individual Plan Participants empowered Ben-Jacob and/or Donaldson to communicate with SKAT, the Payment Agents, and the Broker-Custodians on their behalf through the powers of attorney described in Response to Contention Interrogatory No. 1.   Further, as stated in SKAT's Response to Contention Interrogatory No. 1, the knowledge of the Plans and the Plans' agents—including Ben-Jacob, Markowitz, and van Merkensteijn—can be imputed to the Individual Plan Participants.

In addition, Individual Plan Participant Zelman communicated directly with Broker-Custodian Solo Capital Partners LLP ("Solo Capital") in connection with his attempt to

onboard the Vanderlee Plan with Solo Capital in early 2013.  ELYSIUM-08491698 (Ex.

Zelman-1450).  Zelman also communicated directly with Broker-Custodian North Channel Bank

in connection with transferring funds out of the Vanderlee Plan's account in August 2015

(DZ000000548) and closing the Vanderlee Plan's account in August 2016 (DZ000000561).

**Contention Interrogatory No. 3**

> For the 7 Plans, what do You contend are the "material, false and fraudulent statements"
> that the Individual Plan Participants "intentionally, knowingly and or recklessly" made to
> SKAT?

**Response to Contention Interrogatory No. 3**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by stating that for each of the 26 Plans, the "material,

false and fraudulent statements" that the Individual Plan Participants "intentionally, knowingly

and/or recklessly made to SKAT" are: (i) the Plan owned the shares it claimed to own in the

refund applications to SKAT; (ii) the Plan was entitled to, and (iii) received the dividends

associated with those shares; (iv) the Plan suffered withholding tax on those dividends; and (v)

the Plan was a qualified U.S. pension plan entitled to claim a full refund of withholding tax

under the double taxation treaty between Denmark and the United States.

**Contention Interrogatory No. 4**

> For the 19 Plans for which the Individual Plan Participants served as the Authorized
> Representatives, do You contend that the Individual Plan Participants had actual
> knowledge that the documents identified in paragraphs 33, 34, 77 and 78 of the Amended
> Complaints (*see, e.g.* Monomer Am. Compl.)[4] contained "material, false and fraudulent
> statements" and, if so, what is the factual basis for Your contention?

---

4.  These allegations appear in the same paragraphs in the Amended Complaints against each of the 19 Plans
    except for: Fairlie Investments LLC Roth 401(K) Plan (¶¶ 33, 34, 76 and 77); Keystone Technologies LLC
    Roth 401(K) Plan (¶¶ 33, 34, 76 and 77) and Cantata Industries LLC Roth 401(K) Plan (¶¶ 33, 34, 78 and 79).

**Response to Contention Interrogatory No. 4**

   SKAT incorporates by reference Objections 1 and 2.  As to facts demonstrating

the Individual Plan Participants' knowledge, SKAT refers to its Response to Contention

Interrogatory No. 1.  Further, as stated in SKAT's Response to Contention Interrogatory No. 1,

the knowledge of the Plans and the Plans' agents—including Ben-Jacob, Markowitz, and van

Merkensteijn—can be imputed to the Individual Plan Participants.

**Contention Interrogatory No. 5**

   For the 19 Plans for which the Individual Plan Participants served as the Authorized
Representatives, do You contend that the Authorized Representatives performed any acts
other than the execution of powers of attorney "grant[ing] the Payment Agent authority to
act on behalf of the claimant" to further the alleged "fraudulent tax refund scheme" and,
if so, identify the acts performed by the Authorized Representatives for the 19 Plans?

**Response to Contention Interrogatory No. 5**

   SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by stating that the Individual Plan Participants

performed the following acts, among others:

- <u>Altbach</u>: Altbach signed documents to create the LLCs that sponsored his Plans, to create

  the Plans themselves, and to onboard the Plans with the Broker-Custodians

  (WH_MDL_00228582); signed partnership agreements between his Plans and Omineca

  Trust, Routt Capital Trust, and RAK Investment Trust to distribute the proceeds of the

  scheme (KF_MDL_13662 (Ex. Altbach-983); KF_MDL_13674; KF_MDL_13685;

  WH_MDL_00029401 (Ex. R. Markowitz-2194); KF_MDL_13696); signed reports to the

  Federal Reserve Banks regarding his Plans' purported activities (*see, e.g.,*

  WH_MDL_00254179; WH_MDL_00324076; WH_MDL_00251478;

  WH_MDL_00251489; WH_MDL_00192260); communicated with representatives of the

Federal Reserve Bank of New York regarding the True Wind Investments LLC Roth 401(K) Plan (RA00000526 (Ex. Altbach-1136)); and signed forms authorizing Ben-Jacob to file Reports of Foreign Bank and Financial Accounts ("FBARs") for his Plans (MBJ_0001802 (Ex. Altbach-1130)).  As stated in Response to Contention Interrogatory No. 1, Altbach also signed a power of attorney with Ben-Jacob authorizing Ben-Jacob to sign any other paperwork necessary to carry out the scheme.  In addition, Altbach authorized the opening of bank accounts for his Plans and LLCs.  Altbach Tr. 143:9-11; 145:7-12.  Altbach also transferred proceeds of the scheme from his Plans' bank accounts to bank accounts belonging to Omineca Trust, Routt Capital Trust, and RAK Investment Trust pursuant to the terms of the partnership agreements.  *See* GUNDERSON 00007583; CB00000043 (Ex. Altbach-1075); CB00000080 (Ex. Altbach-1074); LL00000042 (Ex. Altbach-1086); PR00000027 (Ex. Altbach-1094); RC00000100 (Ex. Altbach-1098); TW00000024 (Ex. Altbach-1108).  Altbach also attended at least two meetings at Kaye Scholer offices in 2014: an initial meeting in July, and a second meeting at which Altbach signed documents necessary for the scheme.  Altbach Tr. 58:19 – 60:4; 65:3 – 68:1. In addition, in January 2015, Altbach participated in a conference call with Markowitz, van Merkensteijn, and Ben-Jacob, during which Altbach approved his Plans' continued participation in the scheme.  *See* WH_MDL_00246930 (Ex. J. van Merkensteijn-2304); DZ000001890 (Ex. Zelman-1465); Zelman Tr. 125:4 – 127:18.

- <u>Herman</u>: Herman signed documents to create the LLCs that sponsored his Plans (MBJ_0031195; MBJ_0007955; MBJ_0007851), to create the Plans themselves (MBJ_0010780 (Ex. Herman-350); WH_MDL_00028506; MBJ_0007982; MBJ_0007981; MBJ_0007880; MBJ_0007879), and to onboard the Plans with the

Broker-Custodians (MBJ_0030935); signed partnership agreements between his Plans
and Routt Capital Trust and RAK Investment Trust to distribute the proceeds of the
scheme (WH_MDL_00008217 (Ex. Herman-431); WH_MDL_00008227 (Ex. Herman-
432); WH_MDL_00008237 (Ex. Herman-433)); signed reports to the Federal Reserve
Banks regarding his Plans' purported activities (*see, e.g.*, WH_MDL_00321956); and
signed forms authorizing Ben-Jacob to file FBARs for his Plans (MBJ_0001203).  As
stated in Response to Contention Interrogatory No. 1, Herman also signed a power of
attorney with Ben-Jacob authorizing Ben-Jacob to sign any other paperwork necessary to
carry out the scheme.  Herman also attended a meeting at Kaye Scholer offices in 2014
with Markowitz and Peter Wells ("Wells") at which he signed documents necessary for
the scheme.  Herman Tr. 38:15 – 41:17; 48:3-22.  In addition, Herman transferred small
amounts of money from his LLCs to his Plans' bank accounts to maintain the appearance
of an employer-sponsored plan being funded by the employer.  JH00000004 (Ex.
Herman-359); Herman Tr. 178:1 – 183:1.  Herman also transferred proceeds of the
scheme from his Plans' bank accounts to bank accounts belonging to Routt Capital Trust
and RAK Investment Trust pursuant to the terms of the partnership agreements.  *See*
JH00000022 (Ex. Herman-402); AB00000013 (Ex. Herman-399); BL00000019 (Ex.
Herman-400); FR00000013 (Ex. Herman-401).

- Jones: Jones signed documents to create the LLCs that sponsored her Plans
  (WH_MDL_00029047; MBJ_0008105; MBJ_0008067), to create the Plans themselves
  (MBJ_0010630 (Ex. Jones-1168); WH_MDL_00029044; MBJ_0008131;
  MBJ_0008208; WH_MDL_00008656; MBJ_0008056), and to onboard the Plans with
  the Broker-Custodians (WH_MDL_00192095); signed partnership agreements between

14

her Plans and Omineca Trust and RAK Investment Trust to distribute the proceeds of the

scheme (WH_MDL_00029377 (Ex. Jones-1174); WH_MDL_00029389 (Ex. Jones-

1175); WH_MDL_00029420 (Ex. Jones-1176)); signed reports to the Federal Reserve

Banks regarding her Plans' purported activities (*see, e.g.*, MBJ_0022337); and signed

forms authorizing Ben-Jacob to file FBARs for her Plans (MBJ_0001794 (Ex. Jones-

1232)).  As stated in Response to Contention Interrogatory No. 1, Jones also signed a

power of attorney with Ben-Jacob authorizing Ben-Jacob to sign any other paperwork

necessary to carry out the scheme.  In addition, Jones opened bank accounts for her Plans

and LLCs (MPSKAT00005436 (Ex. Jones-1197); MPSKAT00005433 (Ex. Jones-1198);

MPSKAT00005439; Jones Tr. 44:3-13; 50:13-17; 54:24 – 55:9) and transferred small

amounts of money from the LLCs to the Plans' bank accounts to maintain the appearance

of an employer-sponsored plan being funded by the employer (WH_MDL_00007707

(Ex. Jones-1203); Jones Tr. 120:2-6.  Jones also transferred proceeds of the scheme from

her Plans' bank accounts to bank accounts belonging to Omineca Trust and RAK

Investment Trust pursuant to the terms of the partnership agreements.  *See*

WH_MDL_00007762 (Ex. Jones-1213); MN00000001 (Ex. Jones-1212); PX00000001

(Ex. Jones-1201); ST00000001 (Ex. Jones-1202).

- Lerner: Lerner signed documents to create the LLCs that sponsored his Plans, to create

   the Plans themselves, and to onboard the Plans with the Broker-Custodians

   (WH_MDL_00162237); signed IRS Forms 8802 (Applications for United States

   Residency Certifications) for his Plans (WH_MDL_00026781; WH_MDL_00026787;

   WH_MDL_00026790; WH_MDL_00026793; WH_MDL_00026799); signed partnership

   agreements between his Plans and Routt Capital Trust and RAK Investment Trust to

distribute the proceeds of the scheme (WH_MDL_00012540; WH_MDL_00012555; WH_MDL_00012567 (Ex. Lerner-712); WH_MDL_00012587; WH_MDL_00012603); signed reports to the Federal Reserve Banks regarding his Plans' purported activities (*see, e.g.*, MBJ_0012828 (Ex. Lerner-708)); and signed forms authorizing Ben-Jacob to file FBARs for his Plans (MBJ_0001176 (Ex. Lerner-706)).  Lerner attended two meetings at Kaye Scholer offices in 2014: an initial meeting with Ben-Jacob, Wells, van Merkensteijn, and Markowitz to discuss the scheme, and a second meeting with Ben-Jacob and Wells to sign necessary documents for the scheme.  Lerner Tr. 54:20 – 56:17; 57:1-15; 59:13-21; 63:23 – 64:11; 67:5 – 72:15.  As stated in Response to Contention Interrogatory No. 1, Lerner also signed a power of attorney with Ben-Jacob authorizing Ben-Jacob to sign any other paperwork necessary to carry out the scheme.  In addition, Lerner transferred proceeds of the scheme from his Plans' bank accounts to bank accounts belonging to Routt Capital Trust and RAK Investment Trust pursuant to the terms of the partnership agreements.  *See* GUNDERSON 00007306; EC00000135; FA00000131; LH00000078; TE00000069.  In addition, in January 2015, Lerner participated in a conference call with Markowitz, van Merkensteijn, and Ben-Jacob, during which Lerner approved his Plans' continued participation in the scheme.  *See* WH_MDL_00246930 (Ex. J. van Merkensteijn-2304); DZ000001890 (Ex. Zelman-1465); Zelman Tr. 125:4 – 127:18.

- <u>Miller</u>: Miller signed documents to create the LLCs that sponsored his Plans, to create the Plans themselves, and to onboard the Plans with the Broker-Custodians (WH_MDL_00229238; WH_MDL_00229250); signed IRS Forms 8802 (Applications for United States Residency Certifications) for his Plans (MBJ_0050862; MBJ_0050874;

16

WH_MDL_00162513; MBJ_0050880; MBJ_0050886); signed partnership agreements between his Plans and Omineca Trust, Routt Capital Trust, and RAK Investment Trust to distribute the proceeds of the scheme (WH_MDL_00267276; WH_MDL_00254244; WH_MDL_00254300; WH_MDL_00339163; WH_MDL_00254264); signed reports to the Federal Reserve Banks regarding his Plans' purported trading activities (*see, e.g.*, WH_MDL_00250685); and signed forms authorizing Ben-Jacob to file FBARs for his Plans (MBJ_0001181).  As stated in Response to Contention Interrogatory No. 1, Miller also signed a power of attorney with Ben-Jacob authorizing Ben-Jacob to sign any other paperwork necessary to carry out the scheme.  In addition, Miller funded his Plans' bank accounts with small amounts from his personal bank account to create the appearance that the Plans were properly funded.  CH00000023; FC00000031; GS00000063; KF_MDL_00051; KF_MDL_00364.  Miller also transferred proceeds of the scheme from his Plans' bank accounts to bank accounts belonging to Omineca Trust, Routt Capital Trust, and RAK Investment Trust pursuant to the terms of the partnership agreements.  *See* GUNDERSON 00007294; CH00000050; CH00000065; FC00000085; GS00000008; KF_MDL_00051; KF_MDL_00364.  In addition, in January 2015, Miller participated in a conference call with Markowitz, van Merkensteijn, and Ben-Jacob, during which Miller approved his Plans' continued participation in the scheme.  *See* WH_MDL_00246930 (Ex. J. van Merkensteijn-2304); DZ000001890 (Ex. Zelman-1465); Zelman Tr. 125:4 – 127:18.

- Zelman: Zelman signed documents to create the LLCs that sponsored his Plans, to create the Plans themselves, and to onboard the Plans with the Broker-Custodians (GUNDERSON 00008653 (Ex. Zelman-1434); Zelman Tr. 105:14 – 107:23).  Zelman

also generated false invoices from the sponsoring LLCs to his coaching company,

Transitions Institute, Inc., to create the false appearance that the LLCs had income.

JHVM_0008895; Zelman Tr. 39:14 – 44:13; 89:25 – 93:7; 99:12 – 100:10; 188:3 –

196:22.  Zelman signed IRS Forms 8802 (Applications for United States Residency

Certifications) for his Plans (WH_MDL_00026778; KF_MDL_15413; KF_MDL_15416;

KF_MDL_15392; KF_MDL_15434); signed partnership agreements between his Plans

and Omineca Trust, Routt Capital Trust, and RAK Investment Trust to distribute the

proceeds of the scheme (WH_MDL_00029366 (Ex. Zelman-1448); MBJ_STOR-

0002765 (Ex. Zelman-1444); KF_MDL_13708; KF_MDL_13718; KF_MDL_13728);

signed a partnership agreement between his Vanderlee Plan and Maple Point LLC

("Maple Point") to distribute the proceeds of the scheme (MPSKAT00060920 (Ex.

Zelman-1442)); signed reports to the Federal Reserve Banks regarding his Plans'

purported activities (*see, e.g.*, DZ000001947); and signed forms authorizing Ben-Jacob to

file FBARs for his Plans (DZ000001363).  As stated in Response to Contention

Interrogatory No. 1, Zelman also signed powers of attorney with Ben-Jacob and

Donaldson authorizing them to sign any other paperwork necessary to carry out the

scheme.  In addition, Zelman opened bank accounts for his Plans and LLCs

(GUNDERSON 00002067 with attachments GUNDERSON 00002069-93;

MBJ_0021448; DZ000001848 (Ex. Zelman-1488); DZ000001503 (Ex. Zelman-1492))

and funded his Plans' bank accounts with small amounts from his personal savings to

create the appearance that the Plans were properly funded (KF_MDL_00146;

JHVM_0004428 (Ex. Zelman-1513); KF_MDL_00183; JHVM_0004224 (Ex. Zelman-

1508); VL00000128 (Ex. Zelman-1505); Zelman Tr. 148:4 – 149:7; 160:23 – 161:23;

173:25 – 174:23).  Zelman also transferred proceeds of the scheme from his Plans' bank

accounts to bank accounts belonging to Omineca Trust, Routt Capital Trust, RAK

Investment Trust, and Maple Point pursuant to the terms of the partnership agreements.

*See* GUNDERSON 00007300 (Ex. Zelman-1509); BR00000044; BU00000113;

JHVM_0004428 (Ex. Zelman-1513); DT00000084; VL00000064 (Ex. Zelman-1506);

JHVM_0004224 (Ex. Zelman-1508).  In addition, in January 2015, Zelman participated

in a conference call with Markowitz, van Merkensteijn, and Ben-Jacob, during which

Zelman approved his Plans' continued participation in the scheme.  *See*

WH_MDL_00246930 (Ex. J. van Merkensteijn-2304); DZ000001890 (Ex. Zelman-

1465); Zelman Tr. 125:4 – 127:18.

**Contention Interrogatory No. 6**

For the 26 Plans, do You contend that the Individual Plan Participants knew the 26 Plans
were "shams" and, if so, what are the factual and legal bases for Your contention?

**Response to Contention Interrogatory No. 6**

SKAT incorporates by reference Objections 1 and 2.  As to the Individual Plan

Participants' knowledge, SKAT refers to its Responses to Contention Interrogatory Nos. 1, 2,

and 5.  Further, in November 2015, the Individual Plan Participants received large sums from

Solo Capital in their Plans' bank accounts, which the Individual Plan Participants then

distributed to their Plans' partners, further demonstrating their knowledge that the Plans were

operating for the benefit of others.  *See* CB00000083; LL00000063 (Ex. Altbach-1085);

PR00000090 (Ex. Altbach-1093); RC00000069 (Ex. Altbach-1097); TW00000082 (Ex. Altbach-

1107); AB00000013 (Ex. Herman-399); BL00000019 (Ex. Herman-400); FR00000013 (Ex.

Herman-401); MN00000001 (Ex. Jones-1212); PX00000001 (Ex. Jones-1201); ST00000001

(Ex. Jones-1202); EC00000109 (Ex. Lerner-657); FA00000065; LH00000069; TE00000139;

CH00000054; FC00000040; GS00000092; KF_MDL_00051; KF_MDL_00364; BR00000044; BU00000113; JHVM_0004428 (Ex. Zelman-1513); DT00000084; JHVM_0004224 (Ex. Zelman-1508).

As to the legal basis why these facts demonstrate that the 26 Plans were shams, SKAT responds by stating that the 26 Plans were created as part of a scheme to commit fraud on SKAT. They were created with the intention to appear that they were tax-exempt entities so as to receive full refunds of allegedly withheld dividend taxes, despite the fact that the vast majority of the money paid by SKAT was not retained by the Plans.

In addition, the Plans did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code because they (i) violated the exclusive benefit requirement, *see* 26 C.F.R. § 1.401-1(a)(3)(ii); (ii) violated the permanency requirement, *see* 26 C.F.R. § 1.401-1(b)(2); 26 C.F.R. § 1.401-1(b)(4)(ii)); and (iii) were improperly funded, *see* 26 U.S.C. § 401(a)(1). Further, to constitute a qualified pension plan under the Internal Revenue Code, the Plans must have met the requirements of the Internal Revenue Code both when they were formed and throughout their operation. The Plans were not qualified at their inception, and were in continuing violation of the Code during the years in which they submitted reclaims to SKAT.

Further, as stated in Response to Contention Interrogatory No. 1, the acts and knowledge of the Individual Plan Participants' and the Plans' agents—including Ben-Jacob, Markowitz, and/or van Merkensteijn—are imputed to the Individual Plan Participants. Ben-Jacob, Markowitz, and van Merkensteijn were all aware that the Plans were not qualified under section 401(a) of the Internal Revenue Code and were designed solely to conceal the true nature of the scheme.

**Contention Interrogatory No. 7**

For the 26 Plans, what is the factual basis for Your contention that the Individual Plan Participants and the 26 Plans intentionally joined a "civil conspiracy in furtherance of the fraud"?

**Response to Contention Interrogatory No. 7**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that the Individual Plan Participants and the 26 Plans entered into a corrupt agreement with Ben-Jacob, Markowitz, van Merkensteijn, Klugman and others, the purpose of which was to defraud SKAT; and the Individual Plan Participants committed multiple overt acts in furtherance of the corrupt agreement, as described in Responses to Contention Interrogatory Nos. 1, 2, and 5.

**Contention Interrogatory No. 8**

For the 26 Plans, what are the factual and legal bases for Your contention in paragraph 51 that the Individual Plan Participants "exerted control over [the 26 Plans] as [their] plan's sole participant[s], and used this control to commit the fraud on SKAT"? *See, e.g.* Ballast Am. Compl. and Monomer Am. Compl.

**Response to Contention Interrogatory No. 8**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by referring to its Responses to Contention Interrogatory Nos. 1, 2, and 5.

In addition, in January 2015, Altbach, Lerner, Miller, and Zelman had a conference call with Markowitz, van Merkensteijn, and Ben-Jacob to discuss whether to stop their plans' purported trades in light of a Wall Street Journal article detailing investigations by British and German authorities into participants in dividend arbitrage strategies.  Altbach, Lerner, Miller, and Zelman decided to move forward with their plans' purported trades.  *See* WH_MDL_00246930 (Ex. J. van Merkensteijn-2304); Wall Street Journal, Pressure Rises on

Tax-Trading Strategies (Ex. J. van Merkensteijn-2305); DZ000001890 (Ex. Zelman-1465);

Zelman Tr. 125:4 – 127:18.

**Contention Interrogatory No. 9**

For the 26 Plans, do You contend that the Individual Plan Participants knew or should have known that the 26 Plans "did not own the shares [they] represented to SKAT that [they] owned, and had no dividend tax withheld" and, if so, what are the legal and factual bases for Your contention?

**Response to Contention Interrogatory No. 9**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by referring to its Responses to Contention

Interrogatory Nos. 1 and 5.   Further, as stated in Response to Contention Interrogatory No. 1, the

acts and knowledge of the Individual Plan Participants' and the Plans' agents—including Ben-

Jacob, Markowitz, and/or van Merkensteijn—are imputed to the Individual Plan Participants, and

Ben-Jacob, Markowitz, and van Merkensteijn were all aware that the Plans did not own the

shares they claimed to own and had no dividend tax withheld.

**Contention Interrogatory No. 10**

For the 26 Plans, what is the factual basis for Your contention in paragraph 86 of the Amended Complaint that the Individual Plan Participants "acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds"? (*see* Ballast Am. Compl.)[5]

**Response to Contention Interrogatory No. 10**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by referring to its Responses to Contention

---

5.   Though Ballast Ventures LLC is not a plan for which the Individual Plan Participant is alleged to have acted as an authorized representative, the same allegations are brought where the Individual Plan Participant is alleged to have acted as authorized representative. See, e.g. Monomer Am. Compl. at ¶ 88.

Interrogatory Nos. 1, 5, 6, and 9.  Further, as stated in Responses to Contention Interrogatory No.

1, the acts and knowledge of the Individual Plan Participants' and the Plans' agents—including

Ben-Jacob, Markowitz, and/or van Merkensteijn—are imputed to the Individual Plan

Participants, and Ben-Jacob, Markowitz, and van Merkensteijn were all aware that the Plans

were not entitled to the refunds paid by SKAT.

**Contention Interrogatory No. 11**

For the 26 Plans, what is the factual basis for Your contention in paragraph 87 of the
Amended Complaint that the Individual Plan Participants "intentionally furthered the
fraud and substantially assisted the fraud"? (Id.)[6]

**Response to Contention Interrogatory No. 11**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by referring to its Responses to Contention

Interrogatory Nos. 1, 2, and 5.

**Contention Interrogatory No. 12**

Do You contend that U.S. pension plans that were the actual beneficial owners of the
shares and dividends that were the subject of dividend tax refund applications submitted
to SKAT, as a matter of law, cannot serve as nominees for themselves and others and, if
so, what is the legal basis for Your contention?

**Response to Contention Interrogatory No. 12**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by stating that it does not contend that the defendant

plans were the beneficial owners of the shares or dividends that were the subject of the refund

applications submitted to SKAT.  Nor does SKAT contend that the plans could not serve as

nominees or agents for others, but to the extend the plans were serving as nominees or agents for

---

6.   Again, though Ballast is one of the 7 Plans, the same allegations are brought against the 19 Plans. See, e.g.
      Monomer Am. Compl. at ¶ 89.

others, the plans could not purport to be the beneficial owner of any shares or dividends

purportedly held or received as nominee or agent for others.  Nor is SKAT contending that a plan

could not serve as nominee or agent for itself, although SKAT does not understand how a person

could be an agent or nominee for itself.  SKAT contends that the plans were not the beneficial

owners of the shares and the dividends that were the subject of the refund applications.  The

shares that the plans purported to own did not exist.

**Contention Interrogatory No. 13**

> Do You contend that SKAT has the legal or other authority to disregard the IRS
> determinations that the 26 Plans were qualified plans and, if so, what is the legal basis for
> Your contention?

**Response to Contention Interrogatory No. 13**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by stating that, to the extent the Forms 6166 reflect a

"determination" that the Plans were qualified under the Internal Revenue Code, that

"determination" was only "to the best of the [the IRS's] knowledge."  And, to the extent the IRS

made any determination that the Plans were qualified under the Internal Revenue Code, the IRS

did so based on false and misleading representations from the Plans, the Individual Plan

Participants, and their agents.

Further, to qualify as tax-exempt under the Internal Revenue Code, the Plans must

have met the requirements of the Internal Revenue Code both when they were formed and

throughout their operation.  The Plans were not qualified at their inception, and were in

continuing violation of the Code during the years in which they submitted reclaims to SKAT.

Further, in part because the Plans relied on stock plan formation documents, the IRS did not

conduct an independent investigation into the whether the Plans were qualified as tax-exempt

under Section 401(a) of the Internal Revenue Code.  As stated in SKAT's Response to

Contention Interrogatory No. 6, the Plans were not tax-exempt because they were not operated in

accordance with the requirements of the Internal Revenue Code.

**Contention Interrogatory No. 14**

>    Do You contend that, as a matter of law, the SMLLCs were required to conduct a trade or
>    business in order to sponsor a 401K plan and, if so, what is the legal basis for Your
>    contention?

**Response to Contention Interrogatory No. 14**

>        SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by stating that without any trade or business, and

without earnings from a trade or business from which to contribute to each Plan, the Plans could

not and did not comply with the funding requirements of the Internal Revenue Code, as stated in

SKAT's Response to Contention Interrogatory No. 6.

**Contention Interrogatory No. 15**

>    Do You contend that, as a matter of law, that the investment activity authorized by the
>    SMLLCs' operating agreements does not constitute a trade or business sufficient to
>    sponsor a 401K plan and, if so, what is the legal basis for Your contention?

**Response to Contention Interrogatory No. 15**

>        SKAT incorporates by reference Objections 1 and 2.  Subject to and without

waiving any objections, SKAT responds by stating that the SMLLCs that sponsored the Plans

did not conduct any investment activity with which they could properly fund the Plans, as stated

in SKAT's Response to Contention Interrogatory No. 6.  If any "investment activity" occurred, it

was carried on by the Plans and the entities with which the Plans entered into partnership

agreements.

**Contention Interrogatory No. 16**

Do You contend that, as a matter of law, the SMLLCs were required to have employees other than the owners of the SMLLCs in order to sponsor a 401K plan and, if so, what is the legal basis for Your contention?

**Response to Contention Interrogatory No. 16**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that it does not contend the SMLLCs were required to have employees other than each Plan's single member (*i.e.*, the Individual Plan Participants).  However, the SMLLCs were required to carry on a trade or business in order that the Plans be properly funded, as stated in SKAT's Response to Contention Interrogatory No. 6.

**Contention Interrogatory No. 17**

Do You contend that, as a matter of law, the SMLLCs were required to establish bank accounts in order to sponsor the 26 Plans and, if so, what is the legal basis for Your contention?

**Response to Contention Interrogatory No. 17**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that the SMLLCs were required to have bank accounts in order to hold income earned by the SMLLCs from any trade or business carried on by the SMLLCs.  And, as referenced in SKAT's Response to Contention Interrogatory No. 6, the Plans could not be qualified under Section 401(a) without being funded from the proceeds of the SMLLCs' trade or business.

**Contention Interrogatory No. 18**

What is the legal basis for Your contention in paragraph 48 of the Amended Complaint that "[t]o the extent that [the 26 Plans] received funding from sources outside of [their] plan sponsor[s], such activity would similarly violate the funding requirements of the Internal Revenue Code and disqualify [the 26 Plans] from being [] qualified pension plan[s]"? *See, e.g.* Ballast Am. Compl and Monomer Am. Compl.

**Response to Contention Interrogatory No. 18**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that 26 U.S.C. § 401(a)(1) provides that, for a trust created or organized in the United States to qualify as a retirement plan, contributions must be made:

> to the trust by such employer, or employees, or both, or by another employer who is entitled to deduct his contributions under section 404(a)(3)(B) (relating to deduction for contributions to profit-sharing and stock bonus plans) … for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan[.]

Further, contributions to a Plan must be made from revenue earned by a trade or business of the Plan's sponsoring entity, and, with limited exceptions not applicable here, if a Plan is not funded from said revenue, it loses its tax-qualified status.

**Contention Interrogatory No. 19**

Do You contend that the Individual Plan Participants and/or the 26 Plans are liable for damages in amounts that exceed the amounts they retained after the payment of expenses and any amounts paid to the "Partnerships" (as that term is used in paragraphs 53 and 54, for example, of the Ballast Am. Compl.[7]) and others in connection with any trading conducted on behalf of the 26 Plans and, if so, what are the legal and factual bases for Your contention?

**Response to Contention Interrogatory No. 19**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that the Individual Plan Participants knowingly participated in a years-long fraud on the Danish government, furthered by acts described in Responses to Contention Interrogatory Nos. 1, 2, 5, and 6.

---

7.   See also, Monomer Am. Compl. at ¶¶ 52 and 53.

For SKAT's allegations sounding in fraud, aiding-and-abetting fraud, and negligent misrepresentation, the Individual Plan Participants and the 26 Plans are liable for the entirety of SKAT's loss claimed in each Amended Complaint.  *See, e.g.*, *Manganiello v. Agostini*, No. 07 CIV 3644(HB), 2009 WL 151724, at *2 (S.D.N.Y. Jan. 21, 2009) ("Intentional tortfeasors are held jointly and severally liable for assessed compensatory damages, provided they have caused a single injury to the plaintiff. . . . If the tortfeasors are jointly and severally liable, one tortfeasor is not relieved from liability simply because the other tortfeasor also committed liability-causing actions, nor are the damages against either tortfeasor diminished to his or her proportion of fault.") (internal citations omitted); *Gov't Emps. Ins. Co. v. Parkway Med. Care*, P.C., No. 15CIV3670FBVMS, 2017 WL 1133282, at *14 (E.D.N.Y. Feb. 21, 2017), *report and recommendation adopted*, No. 15CV3670FBVMS, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017) ("New York law provides for joint and several liability where defendants acted jointly or concurrently to produce a single injury."); *Visual Arts Found., Inc. v. Egnasko*, 91 A.D.3d 578, 579, 939 N.Y.S.2d 13, 14 (2012) ("Having been found liable on the aiding and abetting claims, Egnasko's co-defendants are jointly and severally liable for the damages resulting from Egnasko's fraud[.]"); *Int'l Ore & Fertilizer Corp. v. SGS Control Servs. Inc.*, 743 F. Supp. 250, 258 (S.D.N.Y. 1990), *aff'd*, 38 F.3d 1279 (2d Cir. 1994) ("Under the law of negligent misrepresentation, a person will be held liable for damages arising from the reliance by another on a representation that the person knows, or should have known, was not true.").

**Contention Interrogatory No. 20**

What is the factual basis for Your contention in paragraph 82 of the Amended Complaint (*see, e.g.* Ballast Am. Compl.)[8] that the Individual Plan Participants' conduct "demonstrates a high degree of moral turpitude and wanton dishonesty"?

---

8.   The same allegations are brought against the 19 Plans. See, e.g. Monomer Am. Compl. at ¶ 84.

**Response to Contention Interrogatory No. 20**

SKAT incorporates by reference Objections 1 and 2.  Subject to and without waiving any objections, SKAT responds by stating that the Individual Plan Participants knowingly participated in a years-long fraud on the Danish government, furthered by acts described in Responses to Contention Interrogatory Nos. 1, 2, 5, and 6.


Dated: New York, New York
       July 15, 2021

HUGHES HUBBARD & REED LLP

By:     /s/ William R. Maguire
     William R. Maguire
     Marc A. Weinstein
     Neil J. Oxford
     One Battery Park Plaza
     New York, New York 10004-1482
     Telephone: (212) 837-6000
     Fax: (212) 422-4726
     bill.maguire@hugheshubbard.com
     marc.weinstein@hugheshubbard.com
     neil.oxford@hugheshubbard.com

     *Counsel for Plaintiff Skatteforvaltningen*
     *(Customs and Tax Administration of the*
     *Kingdom of Denmark)*

**Schedule A**

| Defendants | Associated Cases |
|---|---|
| Ronald Altbach | 1:19-cv-01781 |
| | 1:19-cv-01783 |
| Joseph Herman | 1:19-cv-01785 |
| | 1:19-cv-01788 |
| Robin Jones | 1:19-cv-01791 |
| | 1:19-cv-01792 |
| Perry Lerner | 1:19-cv-01794 |
| | 1:19-cv-01798 |
| Edwin Miller | 1:19-cv-01800 |
| | 1:19-cv-01801 |
| David Zelman | 1:19-cv-01803 |
| | 1:19-cv-01806 |
| Albedo Management LLC Roth 401(K) Plan | 1:19-cv-01808 |
| | 1:19-cv-01809 |
| Ballast Ventures LLC Roth 401(K) Plan | 1:19-cv-01810 |
| | 1:19-cv-01812 |
| Bareroot Capital Investments LLC Roth 401(K) Plan | 1:19-cv-01813 |
| | 1:19-cv-01815 |
| Battu Holdings LLC Roth 401(K) Plan | 1:19-cv-01818 |
| | 1:19-cv-01870 |
| Cantata Industries LLC Roth 401(K) Plan | 1:19-cv-01918 |
| | 1:19-cv-01922 |
| Cedar Hill Capital Investments LLC Roth 401(K) Plan | 1:19-cv-01926 |
| | 1:19-cv-01928 |
| Crucible Ventures LLC Roth 401(K) Plan | 1:19-cv-01929 |
| | 1:19-cv-01931 |
| Dicot Technologies LLC Roth 401(K) Plan | |
| Eclouge Industry LLC Roth 401(K) Plan | |
| Fairlie Investments LLC Roth 401(K) Plan | |
| First Ascent Worldwide LLC Roth 401(K) Plan | |
| Fulcrum Productions LLC Roth 401(K) Plan | |
| Green Scale Management LLC Roth 401(K) Plan | |
| Keystone Technologies LLC Roth 401(K) Plan | |
| Limelight Global Productions LLC Roth 401(K) Plan | |
| Loggerhead Services LLC Roth 401(K) Plan | |

| Defendants | Associated Cases |
|---|---|
| Monomer Industries LLC Roth 401(K) Plan | |
| PAB Facilities Global LLC Roth 401(K) Plan | |
| Pinax Holdings LLC Roth 401(K) Plan | |
| Plumrose Industries LLC Roth 401(K) Plan | |
| Roadcraft Technologies LLC Roth 401(K) Plan | |
| Sternway Logistics LLC Roth 401(K) Plan | |
| Trailing Edge Productions LLC Roth 401(K) Plan | |
| True Wind Investments LLC Roth 401(K) Plan | |
| Tumba Systems LLC Roth 401(K) Plan | |
| Vanderlee Technologies Pension Plan | |
| Vanderlee Technologies Pension Plan Trust | |

VERIFICATION

I, Christian Baden Ekstrand, am Chief Consultant.  I am the agent of

Skatteforvaltningen for the purpose of the Defendants' First Set of Contention Interrogatories

dated May 28, 2021.  I have read the foregoing responses to the interrogatories, which were

prepared by counsel based on discovery in these proceedings, and believe the responses to be

true based on information supplied to me by counsel.  I declare under penalty of perjury under

the laws of the United States of America that the foregoing is true and correct.

Executed on November _11_, 2021.

_____
Christian Baden Ekstrand