# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

IN RE:

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND LITIGATION

Pertains to case numbers:

18-CV-5053, 18-CV-9797, 18-CV-9836,
18-CV-9837, 18-CV-9838, 18-CV-9839,
18-CV-9840, 18-CV-9841, 18-cv-10100

Case No. 1:18-MD-2865 (LAK)

### THIRD-PARTY DEFENDANT ED&F MAN CAPITAL MARKETS, LTD.'S OPPOSITION TO MOTION TO AMEND OF ACER INVESTMENT GROUP, LLC, ROBERT CREMA, AND DARREN WITTWER

### TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

LEGAL STANDARD ........................................................................................... 3

ARGUMENT ......................................................................................................... 3

I.    THE PROPOSED AMENDMENTS DO NOT REMEDY THE JURISDICTIONAL DEFICIENCIES IN THE THIRD-PARTY COMPLAINTS ............................................................................ 3

    A.    ED&F Is Not Subject To General Jurisdiction In Pennsylvania, New York or Utah ................................................................. 4

    B.    ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In Pennsylvania, New York or Utah ..................... 5

        1.    ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In Pennsylvania ......................... 5

        2.    ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In New York ................................ 6

        3.    ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In Utah ........................................ 7

II.    THE PROPOSED AMENDMENTS FAIL TO STATE A CLAIM AGAINST ED&F ............................................................................ 9

    A.    Third-Party Plaintiffs Fail To State A Claim for Fraud ............................ 9

        1.    The PACs Do Not Allege That False Statements Were Made To Induce Third-Party Plaintiffs To Act ............................ 10

        2.    The PACs Do Not Adequately Allege That The False Statements Were Material ................................................ 11

        3.    The PACs Identify No Facts Supporting A Strong Inference That ED&F Acted With The Requisite State of Mind ................. 12

        4.    The PACs Do Not Adequately Allege Detrimental Reliance On The Tax Vouchers ................................................ 14

B.  Third-Party Plaintiffs Fail To State A Claim for Negligent Misrepresentation ........................................................................ 16

C.  ED&F Owed No Fiduciary Duties To Wittwer Or Crema ...................... 17

D.  All Of The Alleged Tort Claims Are Barred By The Economic Loss Doctrine ........................................................................... 18

E.  The Promissory Estoppel And Unjust Enrichment Claims Cannot Stand In The Presence Of An Applicable Express Contract .................... 19

F.  The Equitable Indemnification Claims Are Barred ................................ 22

G.  Apportionment Of Fault Is Not A Cause Of Action ............................... 22

CONCLUSION .......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andresakis v. City of Milford Connecticut,*
  No. 98 Civ. 0214(LMM), 1998 WL 397888 (S.D.N.Y. July 16, 1998) ................................... 8

*Armed Forces Ins. Exch. v. Harrison,*
  70 P.3d 35 (Utah 2003) ............................................................................................. 10, 11

*Arnett v. Howard,*
  No. 2:13-CV-591 TS, 2014 WL 1165851 (D. Utah Mar. 21, 2014) ....................................... 13

*Austin v. Ford Models, Inc.,*
  149 F.3d 148 (2d Cir. 1998) .............................................................................................. 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  171 F.3d 779 (2d Cir. 1999) ................................................................................................ 7

*Carlton v. Brown,*
  323 P.3d 571 (Utah 2014) ........................................................................................... 14, 15

*Carmona v. Travelers Casualty Ins. Co. of Am.,*
  428 P.3d 65 (Utah Ct. App. 2018) ................................................................................ 16, 17

*CE Providers v. Stearns Bank,*
  No. 2:18-CV-100 TS, 2018 WL 3448335 (D. Utah July 17, 2018) ....................................... 18

*Cerveny v. Aventis, Inc.,*
  No. 2:14-cv-545-DB, 2017 WL 5897406 (D. Utah Nov. 29, 2017) ....................................... 11

*CHG Cos. v. Medina Memorial Hosp.,*
  No. 2:17-cv-00551-DB, 2017 WL 5712689 (D. Utah Nov. 27, 2017) ..................................... 8

*Coppelson v. Serhant,*
  No. 19-CV-8481, 2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) .............................................. 14

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v.
  Queen Carpet Corp.,*
  5 F. Supp. 2d 1246 (D. Utah 1998) .................................................................................... 23

*Cottonwood Improvement Dist. v. Qwest Corp.,*
  296 P.3d 754 (Utah Ct. App. 2013) .................................................................................... 21

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.,*
  375 F.3d 168  (2d Cir. 2004) .............................................................................................. 10

*Far W. Cap. Inc. v. Towne*,
  46 F.3d 1071 (10th Cir. 1995) ........................................................................ 8

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
  786 P.2d 1326 (Utah 1990) ........................................................................... 17

*Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*,
  127 F. Supp. 3d 1228 (D. Utah 2015) ....................................................... 20, 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ......................................................................................... 4

*Grynberg v. Questar Pipeline Co.*,
  70 P.3d 1 (Utah 2003) .................................................................................... 19

*Hartman v. Dyncorp Int'l, LLC*,
  No. 2:12-cv-00364-TS, 2012 WL 4480553 (D. Utah Sept. 28, 2012) ............... 8, 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ......................................................................................... 4

*Hermansen v. Tasulis*,
  48 P.3d 235 (Utah 2002) ................................................................................ 18

*IKB Int'l S.A. v. Bank of Am. Corp.*,
  584 F. App'x 26 (2d Cir. 2014) ...................................................................... 12

*In re Customs & Tax Admin. Of Kingdom of Den. (SKAT) Tax Refund Litig.*,
  18-md-2865 (LAK), 2021 WL 4993536 (S.D.N.Y. Oct. 26, 2021) ............... 4, 5, 6, 7

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
  No. 03 Civ. 8208(RO), 2006 WL 1008138  (S.D.N.Y. Apr. 18, 2006) ................. 14

*In re Platinum & Palladium Antitrust Litig.*,
  1:14-cv-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ..................... 3

*In re SKAT Tax Refund Scheme Litig.*,
  No. 18-md-2865 (LAK), 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020) ................. 14

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) ............................................................................. 4

*J.R. Simplot Co. v. Sales King Int'l, Inc.*,
  17 P.3d 1100 (Utah 2000) .............................................................................. 21

*Jones v. Mackey Price Thompson & Ostler*,
  355 P.3d 1000 (Utah 2015) ............................................................................ 20

iv

*KTM Health Care, Inc. v. SG Nursing Home, LLC*,
    436 P.3d 151 (Utah Ct. App. 2018) ...................................................................... 18

*Lucente v. Int'l Bus. Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002) ............................................................................... 3

*Mann v. Am. W. Life Ins. Co.*,
    586 P.2d 461 (Utah 1978) .................................................................................. 19

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ............................................................................... 3

*MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*,
    886 F.2d 1249 (10th Cir. 1989) ......................................................................... 17

*Mikkelson v. Quail Valley Realty*,
    641 P.2d 124 (Utah 1982) .................................................................................. 15

*MLSMK Invs. Co. v. JP Morgan Chase & Co.*,
    737 F. Supp. 2d 137 (S.D.N.Y. 2010) ............................................................... 14

*Nickerson Co. v. Energy W. Mining Co.*,
    No. 20090221-CA, 2009 WL 4681778 (Utah Ct. App. Dec. 10, 2009) .............. 19

*Oberg v. Sanders*,
    184 P.2d 229 (Utah 1947) ................................................................ 9, 11, 14, 15

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) .............................................................................. 3, 4

*Perry v. Pioneer Wholesale Supply Co.*,
    681 P.2d 214 (Utah 1984) .................................................................................. 22

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*,
    713 P.2d 55 (Utah 1986) .................................................................................... 16

*Raser Techs., Inc. ex rel. Hous. Phx. Grp. LLC v. Morgan Stanley & Co.*,
    449 P.3d 150 (Utah 2019) .................................................................................. 7

*Reiersen v. Smith*,
    No. 150900184, 2015 WL 11185811 (Utah Dist. Ct. June 17, 2015) ................. 22

*Reighard v. Yates*,
    285 P.3d 1168 (Utah 2012) ................................................................................ 18

*Rio Algom Corp. v. Jimco Ltd.*,
    618 P.2d 497 (Utah 1980) .................................................................................. 17

*Robinson v. Robinson*,
   368 P.3d 105 (Utah Ct. App. 2016) ..................................................................... 17

*Salt Lake City Corp. v. ERM-West, Inc.*,
   984 F. Supp. 2d 1156 (D. Utah 2013) ................................................................. 18

*Savin v. Ranier*,
   898 F.2d 304 (2d Cir. 1990) ................................................................................ 4

*Shah v. Intermountain Healthcare, Inc.*,
   314 P.3d 1079 (Utah Ct. App. 2013) ................................................................. 16

*Shields v. Citytrust Bancorp. Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ............................................................................... 13

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) ........................................................................... 8

*Smith v. Frandsen*,
   94 P.3d 919 (Utah 2004) .................................................................................... 16

*Spira v. Nick*,
   876 F. Supp. 553 (S.D.N.Y. 1995) .................................................................... 13

*Sullivan v. Scoular Grain Co. of Utah*,
   853 P.2d 877 (Utah 1993) .................................................................................. 23

*Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*,
   230 P.3d 1000 (Utah 2010) ................................................................................ 18

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ........................................................................................... 12

*TruGreen Cos., LLC v. Mower Bros., Inc.*,
   199 P.3d 929 (Utah 2008) .................................................................................. 20

*U.S. Fidelity & Guarantee Co. v. U.S. Sports Specialty Assoc.*,
   270 P.3d 464 (Utah 2012) .................................................................................. 20

*Vista Food Exch. v. Champion Foodservice, LLC*,
   124 F. Supp. 3d 301 (S.D.N.Y. 2015) ............................................................... 13

*Walden v. Fiore*,
   571 U.S. 277 (2014) ......................................................................................... 4, 7

*Youngblood v. Auto-Owners Ins. Co.*,
   158 P.3d 1088 (Utah 2007) ................................................................................ 21

**Statutes**

Utah Code § 78B-5-818 ........................................................................................ 23

Utah Code § 78B-5-820 ........................................................................................ 23

Utah Code § 78B-5-821 ........................................................................................ 23

**Rules**

Fed. R. Civ. P. 9 ........................................................................................ 9, 10, 13

Fed. R. Civ. P. 12 ........................................................................................... 3

**Other Authorities**

2005 Utah S.B. 10 ............................................................................................... 23

Third-Party Defendant ED&F Man Capital Markets, Ltd. ("ED&F") respectfully submits this memorandum of law in opposition to the motion of Acer Investment Group, LLC ("Acer"), Robert Crema ("Crema") and Darren Wittwer ("Wittwer" and collectively, "Third-Party Plaintiffs") for leave to file amended third-party complaints against ED&F (the "Motion").

## PRELIMINARY STATEMENT

At the conclusion of over two years of discovery, Third-Party Plaintiffs remain unable to assert a single actionable claim against ED&F.  No relevant facts remain to be discovered, and still the proposed amended complaints (the "PACs") fail to remedy the jurisdictional and substantive deficiencies of the dismissed pleadings.  Indeed, the proposed amendments are almost entirely conclusory and add nothing of substance to Third-Party Plaintiffs' claims.  Leave to amend the complaints is therefore futile, and the Motion should be denied.

First, the Court lacks jurisdiction over ED&F.  It lacks general jurisdiction because ED&F does not do business in the United States.  It lacks specific jurisdiction because Acer, Wittwer, and Crema fail to allege sufficient contacts between ED&F and any of the three States in which they purport to sue.  With respect to Pennsylvania and New York, Acer's only jurisdictional allegation is that it acted as an authorized agent for one or more pension plans located in these States.  But as this Court previously held, the mere fact that a pension plan may be located in a given State does not establish jurisdiction over ED&F in that State.  As for Utah, Third-Party Plaintiffs rest their jurisdictional argument on the allegation that ED&F had a business relationship with Acer—a Delaware company with its principal place of business in Florida—which Third-Party Plaintiffs now allege "operated out of" an office address in Utah at all relevant times.  This new allegation does not suffice to confer jurisdiction:  All of

ED&F's business pursuant to its agreements with the pension plans was conducted outside of Utah, and the communications between ED&F and Acer were not the direct basis for any of the claims asserted against ED&F.  Because the PACs do not allege facts sufficient to support jurisdiction over ED&F, the proposed amendments should be rejected as futile.

Second, the PACs are not only jurisdictionally unsound, but also fail to state any claim against ED&F under any legal theory.  The fraud and negligent misrepresentation claims are based on statements that were neither intended for nor material to Third-Party Plaintiffs, and the fraud claims fail for the additional reason that they are unsupported by any alleged fact giving rise to a reasonable inference of scienter.  The breach of fiduciary duty claims brought by Wittwer and Crema are not actionable because ED&F did not owe any fiduciary duties to either Wittwer or Crema.  And all of the tort claims are barred in any event by the economic loss doctrine, because as Third-Party Plaintiffs themselves admit, ED&F's actions were undertaken pursuant to express contracts with the pension plans.  The existence of these contracts also bars the quasi-contract claims of promissory estoppel and unjust enrichment brought by Wittwer and Crema, and even if such claims were not barred, they would be untenable:  the promissory estoppel claim because it is not premised on any express promise by ED&F, and the unjust enrichment claim because Wittwer and Crema do not allege that ED&F was enriched at their expense.  Nor do the indemnity theories advanced in the PACs state a claim.  The equitable indemnification cause of action is not available where, as here, the putative indemnitor has not been found liable to the third party, and apportionment of fault is not even a cause of action, but a defense that limits a party's liability to its comparative proportion of fault.

2

## LEGAL STANDARD

Under Rule 15 of the Federal Rules of Civil Procedure, the "district court has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay, and undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). An amendment is futile if the proposed pleading could not withstand a motion to dismiss. *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

## ARGUMENT

### I. THE PROPOSED AMENDMENTS DO NOT REMEDY THE JURISDICTIONAL DEFICIENCIES IN THE THIRD-PARTY COMPLAINTS

As an initial matter, the proposed amendments are futile because none of the PACs alleges facts sufficient to confer jurisdiction over ED&F. The claims Acer brings in the actions originating in Pennsylvania and New York have no nexus at all to those States, and the jurisdictional allegations that Acer, Crema, and Wittwer make with respect to Utah are improperly premised on *their own* alleged contacts with Utah, not on any alleged contacts by ED&F. The Third-Party Plaintiffs' claims are all subject to dismissal for lack of jurisdiction, particularly given that discovery has closed and no further facts supporting jurisdiction may be discovered.

The proposed amendments are therefore futile because the PACs could not survive a motion to dismiss pursuant to Rule 12(b)(2) . On such a motion, the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *In re Platinum & Palladium Antitrust Litig.*, 1:14-cv-9391-GHW, 2017 WL 1169626, at *39 (S.D.N.Y. Mar. 28, 2017) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). To satisfy this burden, a plaintiff must put forward "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish

jurisdiction," whether general or specific. *See id.* (quoting *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists where the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *id.*, while specific jurisdiction exists only where the plaintiff establishes minimum contacts "that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original, internal quotation marks omitted). In diversity actions, as here, the exercise of jurisdiction must additionally comport with the relevant State's long-arm statute. *See, e.g.*, *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).

### A. ED&F Is Not Subject To General Jurisdiction In Pennsylvania, New York or Utah

It was and remains "undisputed that ED&F is not subject to general jurisdiction in Utah, Pennsylvania, or New York." *See In re Customs & Tax Admin. Of Kingdom of Den. (SKAT) Tax Refund Litig.* ("*SKAT Tax Refund Litig.*"), 18-md-2865 (LAK), 2021 WL 4993536, at *2 (S.D.N.Y. Oct. 26, 2021). As all three PACs allege, ED&F is headquartered in London, *see, e.g.*, Acer PAC ¶ 2, and as ED&F has previously averred, it has no personnel and does no business in Utah, Pennsylvania, or New York. *See* Decl. of Gary A. Pettit, ECF No. 578. ED&F does not have "continuous and systematic general business contacts" in any of those States, is not "essentially at home" in any of those States, and thus cannot be subject to general jurisdiction in any of those States. *See Goodyear*, 564 U.S. at 919, 924, 929 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

**B. ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In Pennsylvania, New York or Utah**

As this Court has explained, the question of personal jurisdiction in this action "initially turns on Utah, Pennsylvania, or New York law, depending on where the relevant action initially was filed . . . ." *SKAT Tax Refund Litig.*, 2021 WL 4993536, at *2.  In order to survive a motion to dismiss for lack of personal jurisdiction, Acer would need to make a *prima facie* showing that ED&F, though based in London, nonetheless directed its conduct at Utah, Pennsylvania, or New York.  *See id.* at *5.  As discussed in detail below, Third-Party Plaintiffs' allegations are insufficient to support jurisdiction over ED&F in any of these three States.

*1.  ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In Pennsylvania*

Acer's contention that ED&F is subject to specific jurisdiction in Pennsylvania rests solely on the allegation that one of Acer's pension plan clients—Newsong Fellowship Church 401(k) Plan (the "Newsong Plan")—had a Pennsylvania resident as participant and "used a Pennsylvania address."  *See* Acer PAC ¶¶ 4, 8, 16, 18.  But as this Court has already found, the mere fact that the Newsong Plan may be located in Pennsylvania is jurisdictionally insufficient inasmuch as ED&F "performed all of its obligations to the Newsong Plan through Acer."  *See SKAT Tax Refund Litig.*, 2021 WL 4993536, at *7; see also Acer PAC ¶ 15 (alleging that ED&F "agreed to communicate" and "routinely communicated with the Plans through Acer").  The PACs, like the initial pleadings, fail to allege that Acer itself "conducted any business or interacted with ED&F from Pennsylvania."  *See SKAT Tax Refund Litig.*, 2021 WL 4993536, at *7.  To the contrary, Acer is alleged to have "operated out of its Utah office" at all relevant times.  Acer PAC ¶ 1.  Because Acer never alleges that ED&F conducted business or

5

communicated directly with anyone in Pennsylvania, the proposed amendments fail to

demonstrate specific jurisdiction in Pennsylvania.

2.  *ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In New York*

Acer's jurisdictional allegations regarding New York are likewise insufficient.  The

proposed amended pleadings, like Acer's earlier pleadings, do not "allege any facts directly

connecting ED&F to New York."  *SKAT Tax Refund Litig.*, 2021 WL 4993536, at *7.  Instead,

Acer alleges in conclusory fashion that ED&F "maintained a business relationship" with a

pension plan—the Goldstein Law Group, PC 401(k) Profit Sharing Plan ("Goldstein")—that

"used a New York address."  Acer PAC ¶¶ 4, 8.  Acer further alleges that Goldstein's

"trustees/participants" resided in New York and that trustees and participants of two other

pension plans—the Linden Associates Defined Benefit Plan ("Linden") and the Riverside

Associates Defined Benefit Plan ("Riverside")—also resided in New York.  *Id.* ¶ 8.  None of

these allegations supports jurisdiction over ED&F in New York, because Acer nowhere alleges

that ED&F had any contact with any of the plans—or with any of their trustees or

participants—in New York.  *See SKAT Tax Refund Litig.*, 2021 WL 4993536, at *7-8 (finding

Acer's prior allegations insufficient where Acer did not "allege that ED&F interacted with the

Goldstein Plan or Acer in New York").  As noted above, Acer's allegations are in fact to the

contrary:  Acer alleges that ED&F communicated with the pension plans *through Acer* and

that Acer operated *out of Utah* at all relevant times. *See* Acer PAC ¶¶ 1, 15.  Because there is

no allegation that ED&F performed any actions in or directed any of its communications to

New York, Acer's proposed amendments do not support specific jurisdiction over ED&F in New York.[1]

### 3.  *ED&F's Alleged Conduct Does Not Give Rise To Specific Jurisdiction In Utah*

The jurisdictional allegations with respect to Utah also fail to meet Third-Party Plaintiffs' burden.  The PACs allege, in essence, that ED&F is subject to jurisdiction in Utah because ED&F communicated with Acer at a time when Acer—a Delaware company with its principal place of business in Florida—was allegedly "operat[ing] out of" an address in Utah.  *See* Acer PAC ¶¶ 1, 4, 14-16; Wittwer PAC ¶¶ 5, 18-21; Crema PAC ¶¶ 5, 18-21.  This bare allegation that Acer "operated out of" Utah is not nearly enough to establish jurisdiction over ED&F in that State, because personal jurisdiction must be premised on a *defendant's* "own affiliation with the State, not the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden*, 571 U.S. at 286; *see also Raser Techs., Inc. ex rel. Hous. Phx. Grp. LLC v. Morgan Stanley & Co.*, 449 P.3d 150, 161-62 (Utah 2019) (incorporating Supreme Court guidance in *Walden* in restating Utah's effects test for personal jurisdiction).  Specific jurisdiction is proper only where a defendant has "purposefully reach[ed] out" into another jurisdiction "by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts *in the forum State*."  *Walden*, 571 U.S. at 286 (emphasis added, internal quotation marks omitted).

Here, the contractual relationship between ED&F and the pension plans did not envision "continuing and wide-reaching contacts" in Utah.  In *CHG Cos. v. Medina Memorial*

---

[1] Acer's PAC also fails to identify any injury-causing "original event" that would support specific jurisdiction in New York under NY CPLR § 302(a)(3)(h).  *See SKAT Tax Refund Litig.*, 2021 WL 4993536, at *7 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)).

*Hosp.*, No. 2:17-cv-00551-DB, 2017 WL 5712689, at *3 (D. Utah Nov. 27, 2017), for example, the court found that the existence of a contract governed by Utah law with a Utah-based plaintiff, as well as emails and telephone calls with that Utah-based plaintiff, were not sufficient to confer jurisdiction over the defendant, because "the heart of the contract was to arrange for a physician who would provide his services exclusively in New York," not Utah. *Id.* The same analysis applies here. Acer, on behalf of the pension plans, contracted with ED&F, a London-based "financial brokerage business and financial servicer," to execute trades in Danish securities. Acer PAC ¶ 2; *see also* Wittwer PAC ¶ 2; Crema PAC ¶ 2. The contractual relationship between the pension plans and ED&F, and the trades that ED&F was allegedly contracted to execute, had nothing to do with Utah, and thus cannot support specific jurisdiction.

Further, "[i]t is well established that phone calls and letters are not necessarily sufficient themselves to establish minimum contacts." *Far W. Cap. Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995); *see also Andresakis v. City of Milford Connecticut*, No. 98 Civ. 0214(LMM), 1998 WL 397888, at *2 (S.D.N.Y. July 16, 1998) (finding no jurisdiction where defendant's alleged contacts with forum state were "limited to the letters sent and telephone calls made"). Electronic communications by a party outside of Utah to a party within Utah confer jurisdiction only where "the e-mails or other contacts directly give rise to the cause of action." *Hartman v. Dyncorp Int'l, LLC*, No. 2:12-cv-00364-TS, 2012 WL 4480553, at *4 (D. Utah Sept. 28, 2012) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1247 (10th Cir. 2011)). In *Hartman*, the court found that injury from the alleged tort claims would have occurred "regardless of whether [the defendant] had contacts in Utah," and thus there was "no nexus between [the defendant's] forum-related contacts and [the plaintiff's] causes of action." 2012

WL 4480553 at *4.  The court concluded that because the defendant's emails and telephone calls did not directly give rise to the causes of action, they did not support the exercise of jurisdiction over the defendant.  The same analysis applies here:  The claims brought by Third-Party Plaintiffs arise out of Danish securities transactions allegedly executed by ED&F and tax vouchers allegedly prepared by ED&F in connection with those transactions.  *See* Acer PAC at 3; Wittwer PAC at 2; Crema PAC at 2.  Moreover, each PAC alleges that ED&F sent tax vouchers "directly to Goal Taxback, who would then submit the applications for withholding-tax refunds to SKAT on behalf of the Plans."  Acer PAC ¶ 32; Wittwer PAC ¶ 37; Crema PAC ¶ 37.  In short, the allegedly injurious conduct would have occurred regardless of where Third-Party Plaintiffs were located, and thus the PACs do not satisfy "[e]ven . . . the least restrictive 'but for' test" for establishing jurisdiction over ED&F in Utah.  *Hartman*, 2012 WL 4480553 at *4.

## II.      THE PROPOSED AMENDMENTS FAIL TO STATE A CLAIM AGAINST ED&F

### A. Third-Party Plaintiffs Fail To State A Claim for Fraud

To state a claim of fraud under Utah law,[2] a plaintiff must allege "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury."  *Oberg v. Sanders*, 184 P.2d 229, 234 (Utah 1947) (citation and internal quotation marks omitted).  In order to plead these elements with the particularity required under the Federal Rules, *see* Fed. R. Civ. P. 9(b), a

---

[2] For the reasons set out in support of ED&F's motion to dismiss the Third-Party Plaintiffs' original complaints, ED&F will apply Utah law.  *See* ECF No. 574 at 9; ECF No. 577 at 10-11.

plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *accord Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (Utah courts similarly require that "relevant surrounding facts . . . be set forth with sufficient particularity to show what facts are claimed to constitute" fraud).

Third-Party Plaintiffs fail to state a claim for fraud under any standard, and their allegations are particularly deficient under the heightened pleading standard of Rule 9 (b). First, neither Acer nor Wittwer nor Crema allege that ED&F made any statements to *them* with the intent of inducing them to act.  Second, Third-Party Plaintiffs should not be permitted to escape the admissions made in their initial third-party complaints, which clearly established that none of the alleged misstatements was material.  Third, none of the PACs contains any facts supporting a "strong inference of fraudulent intent" or even suggesting that ED&F knew that the statements in the tax vouchers were false at the time the statements were made. Fourth, Third-Party Plaintiffs do not adequately plead that they ever acted in detrimental reliance on the tax vouchers provided by ED&F.

1. *The PACs Do Not Allege That False Statements Were Made To Induce Third-Party Plaintiffs To Act*

Third-Party Plaintiffs premise their fraud claims on alleged misstatements purportedly contained in tax vouchers prepared by ED&F.  *See* Acer PAC ¶¶ 92-101; Wittwer PAC ¶¶ 93-102; Crema PAC ¶¶ 93-102.  In order to support a cause of action for fraud under Utah law, Third-Party Plaintiffs must allege that these purported misstatements were "directed toward

the plaintiff" and were "intended to induce the plaintiff to act."  *Cerveny v. Aventis, Inc.*, No.

2:14-cv-545-DB, 2017 WL 5897406, at *3 (D. Utah Nov. 29, 2017); *see also Armed Forces*

*Ins. Exch.*, 70 P.3d at 40 (stating that fraud requires the misrepresentation be made "for the

purpose of inducing the other party to act upon it").  But the PACs allege no such thing.

Instead, each of the PACs alleges that ED&F sent tax vouchers "directly to" non-party Goal

Taxback, *see, e.g.*, Acer PAC ¶ 32, and while Acer alleges that it was emailed "copies" of the

tax vouchers by ED&F, the PAC explains that this was done so that "the Plans and Acer would

be aware of whether the withholding-tax refund applications would be submitted by Goal

Taxback . . . ."  *Id.* ¶ 33.  Thus, the PAC alleges that tax vouchers were forwarded to Acer for

informational purposes, not that the tax vouchers were in any way directed at Acer (much less

Wittwer or Crema) or that the tax vouchers were intended by ED&F to induce any action by

Acer (much less Wittwer or Crema).[3]  Because the PACs do not allege that the tax vouchers

were directed at Third-Party Plaintiffs or were intended to induce them to act, the amended

fraud claims are unsustainable under Utah law, and the proposed amendments are therefore

futile.

   *2.  The PACs Do Not Adequately Allege That The False Statements Were Material*

      An allegedly false statement must in addition be material to the plaintiff in order to

support a claim of fraud.  *See Oberg*, 184 P.2d at 234.  In their original pleadings, filed after

over a year of discovery, Third-Party Plaintiffs each underscored their "firm[] belie[f]" that the

---

[3] Indeed, Wittwer and Crema do not allege that they were even aware of the tax vouchers at the time.  Rather, they allege that ED&F emailed copies of the tax vouchers to *Acer* in order to ensure that the relevant pension plans—the DW Construction, Inc. Retirement Plan (the "DW Construction Plan") and the American Investment Group of New York, L.P. Pension Plan (the "AIG Plan"), respectively—"would be aware whether a withholding-tax refund application would be submitted by Goal Taxback . . . ."  Wittwer PAC ¶ 38, Crema PAC ¶ 38.

pension plans "were entitled to the withholding-tax refunds [they] claimed from SKAT," *see* ECF No. 527 at 3, ECF No. 528 at 2, ECF No. 529 at 2, notwithstanding their purported knowledge since 2019 of the alleged falsehood of the so-called Disavowed Tax Vouchers. *See, e.g.*, ECF No. 527 ¶ 65.  These statements make clear that the alleged misrepresentations in the Disavowed Tax Vouchers were not material, for they had no effect on Third-Party Plaintiffs' view as to the validity of their tax reclaim applications.  Recognizing that these statements fatally undercut their fraud and negligent misrepresentation claims, Third-Party Plaintiffs now seek, without any stated justification, to strike them from their PACs.  *See* Acer PAC at 3, Wittver PAC at 2, Crema PAC at 2.  But Third-Party Plaintiffs should not be permitted to expunge these admissions simply because they realize in retrospect that the admissions cannot be reconciled with their causes of action.  *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (affirming denial of motion for leave to amend where plaintiff sought to omit admissions contained in prior pleading), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  As set out by ED&F in support of its motions to dismiss Third-Party Plaintiffs' claims—*see* ECF No. 574 at 15, ECF No. 577 at 15-16—those admissions establish that the alleged falsehoods in the tax vouchers made no difference to the Third-Party Plaintiffs and, thus, were not material.  For this reason, too, the amended pleadings would be futile.

### 3. The PACs Identify No Facts Supporting A Strong Inference That ED&F Acted With The Requisite State of Mind

In order to assert a viable fraud claim, a plaintiff must allege facts sufficient to support a "strong inference of fraudulent intent."  *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014); *see also Arnett v. Howard*, No. 2:13-CV-591 TS, 2014 WL 1165851, at

*5 (D. Utah Mar. 21, 2014) (finding failure to plead fraud claim where complaint did not allege, among other things, "facts demonstrating . . . that the defendant knew the statement was false").  A "strong inference" of intent flows from either: (1) "motive and opportunity" to commit fraud; or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Despite the fact that discovery has closed, Third-Party Plaintiffs rest their fraud claims on an unsupported assertion, alleged "[u]pon information and belief," that "ED&F knew or should have known that it did not hold the rights to the shares which they sold to the Plans."  Acer PAC ¶ 59; Wittwer PAC ¶ 63; Crema PAC ¶ 63.  Because these allegations are made on information and belief, they "must be accompanied by a statement of the facts upon which the belief is founded." *Vista Food Exch. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 310 (S.D.N.Y. 2015); *see also Spira v. Nick*, 876 F. Supp. 553, 557 (S.D.N.Y. 1995) (Kaplan, J.) ("[F]raud allegations made on information and belief do not satisfy Rule 9 (b) unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief.").  That requirement has particular force here, where Third-Party Plaintiffs have had over two years to depose relevant witnesses, to seek appropriate written discovery, and to review the approximately 650,000 pages of documents produced by ED&F in these proceedings.

The closest that Third-Party Plaintiffs come to pleading indicia of fraudulent intent is their assertion that alleged misstatements in the tax vouchers "put [ED&F] in a position to charge the Plans for custody and clearance fees . . . ." *See* Acer PAC ¶ 98, Wittwer PAC ¶ 97, Crema PAC ¶ 97.  However, without more, bare "allegations that defendants 'stand[ ] to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9 (b).'"

13

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208(RO), 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006); *see also Coppelson v. Serhant*, No. 19-CV-8481, 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021).  Courts have repeatedly held that the ability to earn fees or commissions, without more, is inadequate to support a strong inference of fraudulent intent.  *See, e.g.*, *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143 (S.D.N.Y. 2010) ("earning fees on . . . transactions" and preserving deposited amounts insufficient allegation of scienter); *Coppelson*, 2021 WL 148088, at *8 (earning commission on real estate transaction inadequate to allege scienter).[4]

### 4.  *The PACs Do Not Adequately Allege Detrimental Reliance On The Tax Vouchers*

Finally, Third-Party Plaintiffs fail adequately to plead detrimental reliance in support of their fraud claims.  Under Utah law, Third-Party Plaintiffs must allege that they acted in reliance on the alleged misrepresentations in the tax vouchers and that such reliance resulted in injury.  *See Oberg*, 184 P.2d at 234; *see also Carlton v. Brown*, 323 P.3d 571, 582 (Utah 2014) (affirming dismissal of fraud claim where plaintiff "failed to plead detrimental reliance").  Acer alleges vaguely that it relied on the tax vouchers when it "continued conducting trades for Plans through ED&F" in 2014-2016, Acer PAC ¶ 40, and more specifically that it relied on the tax vouchers when it "charged its fees to ED&F."  *Id.* ¶¶ 47, 86, 99, 108.  But Acer cannot very well claim to have relied *to its detriment* on the tax vouchers when the alleged upshot of its purported reliance is that it was enabled to collect fees from ED&F.  Because Acer has not

---

[4] In its memorandum opinion on Third-Party Plaintiffs' motion to dismiss SKAT's amended complaints, the Court found that scienter had been adequately pled where SKAT "describ[ed] each defendant's role in the scheme" and explained how each defendant stood to benefit.  *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL 7059843, at *9 (S.D.N.Y. Dec. 2, 2020).  Here, the PACs do not plead any concerted "scheme" at all, much less ED&F's role in any such scheme.

alleged how its purported reliance on the tax vouchers was in any way detrimental, its fraud claims cannot be sustained.  *See Carlton*, 323 P.3d at 582; *Oberg*, 184 P.2d at 234.

Wittwer and Crema, for their part, fail to make the required pleading that they "did in fact rely upon" the tax vouchers and were "thereby induced to act."  *Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982).  Instead, what the PACs allege is reliance by the pension plans, not reliance by Wittwer and Crema individually.  Thus, the PACs allege that each "Plan"—with no noted involvement of Wittwer or Crema—"submitted withholding-tax refund requests based on [the] Disavowed Tax Vouchers in reliance on the perceived truthfulness of ED&F's representations."  Wittwer PAC ¶ 65, Crema PAC ¶ 65.  Similarly, the PACs allege that the "Plan[s]"—again, not Wittwer and Crema individually—relied "on the purported truthfulness of the documents and information provided by ED&F" when they "appealed SKAT's decision in August 2018."  Wittwer PAC ¶ 53, Crema PAC ¶ 53.  Wittwer and Crema do not plead any personal involvement in these decisions, nor do they allege that they reviewed the tax vouchers in connection with the pension plans' alleged decision to appeal SKAT's determination of the withhold-tax refund claims.  Such facts are peculiarly within the control of Wittwer and Crema, and yet they do not allege them, presumably because they cannot.  Indeed, Wittwer and Crema nowhere allege that they even saw the tax vouchers, much less that they relied upon them.[5]  For this reason, too, Wittwer and Crema fail to state a claim for fraud, and the proposed amended pleadings should be rejected as futile.

---

[5] The PACs allege that ED&F provided copies of the tax vouchers to "Acer and Stacey Kaminer, the Utah-based Acer principal authorized to operate the ED&F accounts for the Plan."  Wittwer PAC ¶ 32, Crema PAC ¶ 32.  There is no allegation that ED&F provided the tax vouchers to Wittwer or Crema.

### B.  Third-Party Plaintiffs Fail To State A Claim for Negligent Misrepresentation

Under Utah law, the "elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation 'does not require the intentional mental state necessary to establish fraud.'"  *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1085 (Utah Ct. App. 2013) (quoting *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986)).  A plaintiff bringing a claim for negligent misrepresentation must, however, "demonstrate the existence of a duty running between the parties."  *Smith v. Frandsen*, 94 P.3d 919, 922 (Utah 2004).  As discussed above, the PACs fail to allege any material false statements and do not adequately plead reliance, deficiencies as fatal to their claims for negligent misrepresentation as to their claims for fraud.  Nor do the PACs allege that ED&F owed a duty to Third-Party Plaintiffs.  To the contrary, as alleged in the PACs, ED&F's agreements were with the pension plans, *see* Acer PAC ¶ 7, Wittwer PAC ¶ 9, Crema PAC ¶ 9, and ED&F's alleged duty was to the pension plans, *see* Acer PAC ¶ 103, Wittwer PAC ¶¶ 42, 87, 104, Crema PAC ¶¶ 42, 87, 104, not to Wittwer or Crema personally, and not to Acer, which allegedly drew fees from ED&F.  Acer PAC ¶¶ 45-48, 65, 71, 86, 95, 99, 108.[6] The PACs accordingly fail to state viable claims for negligent misrepresentation.

---

[6] In response to ED&F's motion to dismiss, Wittwer and Crema argued that they were intended third-party beneficiaries of agreements between ED&F and the pension plans, *see* Opp. at 26-27, and in their proposed pleadings, Wittwer and Crema have included a bare allegation that each was a "third-party beneficiary of the Plan's relationship with ED&F."  Wittwer PAC ¶ 11, Crema PAC ¶ 11.  However, neither Wittwer nor Crema has alleged any new facts to support this claim to intended third-party beneficiary status.  Under Utah law, "it is not enough that the parties to [a] contract know, expect or even intend that others will benefit from the contract."  *See Carmona v. Travelers Casualty Ins. Co. of Am.*, 428 P.3d 65, 69 (Utah Ct. App. 2018) (citation and internal quotation marks omitted).  Rather, for a third party to have enforceable rights under a contract, the contract must affirmatively evince the parties' clear intention to "confer a separate and distinct benefit upon the third party . . . ."  *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980) ("A third-party beneficiary who is incidentally benefited may not

16

### C.  ED&F Owed No Fiduciary Duties To Wittwer Or Crema

To state a claim for breach of fiduciary duty, a plaintiff must in the first instance allege facts to support an inference that such a duty existed.  *See, e.g.*, *Robinson v. Robinson*, 368 P.3d 105, 117 (Utah Ct. App. 2016).  Wittwer and Crema have failed to take this first step, for they do not allege that ED&F owed them any fiduciary duty.  *See* Wittwer PAC ¶¶ 112-120, Crema PAC ¶¶ 112-120.  Rather, what they allege is that "ED&F owed a duty *to the Plan* to create true and accurate documents."  Wittwer PAC ¶ 42, Crema PAC ¶ 42 (emphasis added).  The PACs do not allege any basis for finding a fiduciary duty running from ED&F to either Wittwer or Crema as individuals.  Because the breach of fiduciary duty claims would be subject to dismissal on that basis alone, the proposed amendments are futile.

Indeed, Wittwer and Crema do not plead facts sufficient to support even an inference that a fiduciary duty ran from ED&F to the *pension plans*.  In analyzing whether a relationship between a broker-dealer and a customer gives rise to fiduciary duties, courts generally look to whether the broker "holds itself out to a customer as possessing special knowledge or expertise with respect to security investment advice or recommends an investment by the customer in a particular security."  *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 886 F.2d 1249, 1258 (10th Cir. 1989).  Utah courts specifically hold that a fiduciary is in "a position to have and exercise and does have and exercise influence over another."  *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990).  But the PACs

---

recover."); *see also Carmona*, 428 P.3d at 69.  Wittwer and Crema have not alleged any facts to support the inference that ED&F's agreements with the pension plans reflect anything like a clear intention to confer a "separate and distinct benefit" upon them.  To the contrary, the Custody Agreement—which they have attached to their pleadings—contains no statement that would support their conclusory claim that they are intended third-party beneficiaries.

do not allege that ED&F recommended any investments to Wittwer or Crema (or even to the pension plans with which they are associated).  Nor do the PACs allege that ED&F ever exercised (or was ever in a position to exercise) control over the pension plans or over Wittwer and Crema individually.  Because Wittwer and Crema have not alleged any fiduciary duties owed to them as individuals, ED&F cannot be liable to them for breach of fiduciary duty.

### D.  All Of The Alleged Tort Claims Are Barred By The Economic Loss Doctrine

Utah's economic loss rule provides that a "party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law."  *See KTM Health Care, Inc. v. SG Nursing Home, LLC*, 436 P.3d 151, 169-70 (Utah Ct. App. 2018) (quoting *Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002)) (emphasis in original).  In other words, the economic loss doctrine prevents parties from asserting tort claims that arise out of subject matter covered by a contract, unless such parties have sustained some non-economic injury.  *See, e.g.*, *Reighard v. Yates*, 285 P.3d 1168, 1176-77 (Utah 2012); *Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010); *Salt Lake City Corp. v. ERM-West, Inc.*, 984 F. Supp. 2d 1156, 1160 (D. Utah 2013) ("Once there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract.").  The economic loss doctrine applies to intentional and negligent torts, *see KTM Health Care*, 436 P.3d at 169-73, and to breaches of fiduciary duty, *see, e.g.*, *CE Providers v. Stearns Bank*, No. 2:18-CV-100 TS, 2018 WL 3448335, at *4 (D. Utah July 17, 2018).

Third-Party Plaintiffs all assert that ED&F executed trades and prepared tax vouchers for the pension plans pursuant to "agreements . . . that set forth ED&F's obligations as broker-custodian with each of the Plans," including each pension plan's "Custody Agreement,

Security and Set-Off Deed, ISDA Master Agreement, and Terms and Conditions of Business." Acer PAC ¶ 7; Wittwer PAC ¶ 9, Crema PAC ¶ 9.  Wittwer and Crema attach those agreements to their pleadings, underscoring their belief that the agreements are relevant to their claims.  *See* Wittwer PAC Ex. A; Crema PAC Ex. A.  In *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 14 (Utah 2003), the court held that where contract and tort claims may be stated on the basis of "the exact same conduct . . . , and the exact same facts and circumstances are at play," the contractual and tort duties are "overlapping" and the tort claims are barred. Here, not only *could* a breach of contract claim be brought against ED&F, a breach of contract claim *was* brought by the pension plans, and on the basis of the same facts that Acer, Wittwer, and Crema now re-allege.  *See* ECF No. 226, ¶¶ 110-119.  Nowhere do Acer, Wittwer, or Crema allege any non-economic harm caused by ED&F, nor do they adequately allege any independent, extra-contractual duty owed to them by ED&F.  Their tort claims are thus barred by the economic loss doctrine, such that amendment of the pleadings would be futile.

### E.  The Promissory Estoppel And Unjust Enrichment Claims Cannot Stand In The Presence Of An Applicable Express Contract

Wittwer and Crema bring two quasi-contract claims against ED&F—promissory estoppel and unjust enrichment, Wittwer PAC ¶¶ 121-137; Crema PAC ¶¶ 121-137—each of which fails to state a claim.  As an initial matter, Utah law holds that "[r]ecovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation."  *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978); *see also Nickerson Co. v. Energy W. Mining Co.*, No. 20090221-CA, 2009 WL 4681778, at *1-2 (Utah Ct. App. Dec. 10, 2009).  Thus, "a promissory estoppel claim is clearly prohibited where a contract exists."  *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d

1228, 1238 (D. Utah 2015) (It is a "prerequisite to bringing a promissory estoppel claim [that] the plaintiff must establish that the parties do not have a formal contract controlling their rights and obligations."). Similarly, the doctrine of unjust enrichment "may be invoked 'only when no express contract is present.'" *U.S. Fidelity & Guarantee Co. v. U.S. Sports Specialty Assoc.*, 270 P.3d 464, 468 (Utah 2012) (quoting *TruGreen Cos., LLC v. Mower Bros., Inc.*, 199 P.3d 929, 933 (Utah 2008)). Here, the contracts between ED&F and the pension plans are the sources of the promises that Wittwer and Crema allege, *see, e.g.*, Wittwer PAC ¶¶ 8-16, and the basis of the fees that ED&F allegedly collected, *see* Wittwer PAC Ex. A at 12 (Section 14, "Fees and Expenses"). Given the existence of these express contractual agreements, the promissory estoppel and unjust enrichment claims could not survive dismissal.

Moreover, as to the unjust enrichment claim, Wittwer and Crema never allege that ED&F was enriched at their expense. Indeed, Wittwer and Crema affirmatively plead that "ED&F collected fees *from the Plan* in connection with the Plan's transactions, Holdings, Dividends, withholding-tax refunds, and Tax Vouchers, including the Disavowed Tax Vouchers." Wittwer PAC ¶ 132, Crema PAC ¶ 132; *see also, e.g.*, Wittwer PAC ¶ 137 ("ED&F will have been unjustly enriched in the amount of fees *it collected from the Plan*" (emphasis added)). But "[f]or an unjust enrichment claim, the substantive law purpose is to restore to the plaintiff the benefit *he or she conferred* upon the defendant, when the retention of this benefit would be unjust." *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1016 (Utah 2015). Because Wittwer and Crema do not allege that they conferred any benefit upon ED&F, they cannot state a claim for unjust enrichment.

The claims for promissory estoppel are similarly unsustainable.[7]  First, Wittwer and Crema have failed to identify any "clear and definite" promise made by ED&F.  *See Glob. Fitness Holdings*, 127 F. Supp. 3d at 1241 ("To support a claim for promissory estoppel, the alleged promise must be 'clear and definite.'" (quoting *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1093 (Utah 2007))).  The PACs vaguely allege that ED&F promised to "exercise reasonable care" and to "create only truthful and accurate documents" in connection with its services for the DW Construction and the AIG Plans, but these purported "promises" were allegedly directed to the pension plans, not to Wittwer and Crema individually (with whom there is no allegation that ED&F even interacted).  *See* Wittwer PAC ¶¶ 122-23; Crema PAC ¶¶ 122-23.  No reasonable inference can be drawn from these allegations that ED&F would have expected to induce Wittwer or Crema to act in reliance.  *See Cottonwood Improvement Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (Utah Ct. App. 2013) (promissory estoppel claims must allege a "promise reasonably expected to induce reliance").  The promises that Wittwer and Crema allege are in any event implied promises, not promises grounded in any alleged affirmative statements, and thus they cannot form the basis of a promissory estoppel claim as a matter of law.  *See Glob. Fitness Holdings*, 127 F. Supp. 3d at 1242 (Implied promises are not actionable because the plaintiff "must point to some affirmative statement" made by the promisor.).

---

[7] Under Utah law, the elements of promissory estoppel are the following: "(1) The promisee acted with prudence and in reasonable reliance on a promise made by the promisor; (2) the promisor knew that the promisee had relied on the promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person; (3) the promisor was aware of all material facts; and (4) the promisee relied on the promise and the reliance resulted in a loss to the promisee."  *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1107 (Utah 2000).

**F.  The Equitable Indemnification Claims Are Barred**

Under Utah law, a claim for equitable indemnification requires that: "(1) the payor (prospective indemnitee) must discharge a legal obligation the payor owes to a third person; (2) the prospective indemnitor must also be liable to the third person; and (3) as between the claimant payor and the prospective indemnitor, the obligation ought to be discharged by the indemnitor."  *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984). Although the Court previously held that Federal Rule of Civil Procedure 14 allows Third-Party Plaintiffs to assert a claim of equitable indemnification, even though their liability to SKAT has not yet accrued,[8] the equitable indemnification claims are nevertheless without basis because SKAT's claims against ED&F in the English proceedings have been dismissed, *see* ECF No. 626-2, and are not (and cannot be) at issue in the MDL.  SKAT's claims against ED&F having been dismissed as a matter of substantive law, ED&F is not "liable to the third person [*i.e,*, SKAT]," *Perry*, 681 P.2d at 218, and thus cannot be sued by Third-Party Plaintiffs on a theory of equitable indemnity.

**G.  Apportionment Of Fault Is Not A Cause Of Action**

Finally, Third-Party Plaintiffs misunderstand the law of apportionment of fault in Utah, in essence treating it as a claim for contribution from ED&F.  Apportionment of fault is not a standalone cause of action.  *Reiersen v. Smith*, No. 150900184, 2015 WL 11185811, at *1 (Utah Dist. Ct. June 17, 2015).  Rather, the mechanism of apportionment functions as a defense and "merely ensures that no defendant is held liable to any claimant for an amount of damages in excess of the percentage of fault attributable to that defendant." *Sullivan v.*

---

[8] For the avoidance of doubt, ED&F does not re-address this point only because it was previously decided by the Court.  ED&F does not waive, and expressly preserves, this issue for potential appeal.

*Scoular Grain Co. of Utah*, 853 P.2d 877, 878 (Utah 1993); *see also* Utah Code § 78B-5-820 ("the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant").  Apportionment of fault applies with respect to co-defendants that have been dismissed from the case, *see id.*, and (since 2005[9]) with respect to non-parties to claims brought by the original plaintiff.  Utah Code §§ 78B-5-818(4)(a), 78B-5-821(4).[10]  Utah statutory law is moreover clear that a "defendant is not entitled to contribution from any other person."  Utah Code § 78B-5-820(2).  Accordingly, if apportionment of fault is to be asserted by Third-Party Plaintiffs, it can only be asserted as a defense to SKAT's pleading against them, not as an affirmative claim against ED&F.

---

[9] In response to ED&F's original motion to dismiss, Third-Party Plaintiffs argued that *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Queen Carpet Corp.*, 5 F. Supp. 2d 1246 (D. Utah 1998), allowed a defendant to implead a third-party through apportionment of fault.  However, in that case—which preceded the 2005 amendment to Utah law allowing apportionment to non-parties—the court recognized that apportionment of fault would not normally be permitted as a standalone cause of action and allowed the claim only because Utah did not at that time allow apportionment to be allocated to non-parties.  *See id.* at 1251.  Utah statutory law has since been amended to allow apportionment to be allocated to non-parties, and the rationale underlying the *Queen Carpet* decision has thus been superseded by statute.

[10] *See also* 2005 Utah S.B. 10, *available at* https://le.utah.gov/~2005/bills/static/SB0010.html (establishing amendment as of 2005).

## <u>CONCLUSION</u>

For the reasons set forth above, the Motion to Amend should be denied, and the Court should not allow Third-Party Plaintiffs further leave to replead.

Respectfully submitted,

Dated: February 4, 2022
       New York, NY

By: /s/ Neil S. Binder
    Neil S. Binder
    M. Tomas Murphy
    Gregory C. Pruden
    **BINDER & SCHWARTZ LLP**
    366 Madison Avenue, Sixth Floor
    New York, NY 10017
    Tel: 212.510.7008
    Fax: 212.510.7299
    nbinder@binderschwartz.com
    tmurphy@binderschwartz.com
    gpruden@binderschwartz.com

24