UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: 18-cv-05053, 18-cv-09797, 18-cv-09836, 18-cv-09837, 18-cv-09838, 18-cv-09839, 18-cv-09840, 18-cv-09841, 18-cv-10100[1] | MASTER DOCKET<br><br>18-md-2865 (LAK) |

# THIRD-PARTY PLAINTIFFS ROBERT CREMA, DARREN WITTWER, AND ACER INVESTMENT GROUP, INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AMENDED THIRD-PARTY COMPLAINTS

K&L Gates LLP
John C. Blessington
Brandon R. Dillman
Michael R. Creta
John L. Gavin
One Lincoln Street
Boston, MA 02111
617.261.3100

*Attorneys for Darren Wittwer, Robert Crema, and Acer Investment Group, LLC*

---

[1] The related actions include the following cases, which were pending in the District of Utah prior to transfer to this Court for pre-trial purposes: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.) (together, the "Utah Actions"). The related actions also include *SKAT v. Newsong Fellowship Church 401k Plan*, 18-cv-10100 (S.D.N.Y.), which was pending in the Eastern District of Pennsylvania prior to transfer to this Court for pre-trial purposes, and *SKAT v. The Goldstein Law Group PC 401k Profit Sharing Plan*, 18-cv-05053 (S.D.N.Y.), which was pending in the Southern District of New York prior to multi-district consolidation.

Third-Party Plaintiffs Robert Crema ("Crema"), Darren Wittwer ("Wittwer"), and Acer Investment Group, Inc. ("Acer") (collectively, the "Third-Party Plaintiffs") respectfully submit this reply in support of their motion for leave to file amended third-party complaints. ED&F's opposition to the motion for leave to amend ignores many of Third-Party Plaintiff's new allegations and the Court's prior decisions. For the reasons set forth below and in Third-Party Plaintiff's memorandum in support of its motion, Third-Party Plaintiffs should be given leave to file their proposed amended third-party complaints (together, the "PAC" or "PACs").

## ARGUMENT

### I. The PACs adequately assert jurisdiction over ED&F.

The PACs sufficiently plead personal jurisdiction over ED&F by alleging that ED&F purposefully directed activities at the relevant states, and Third-Party Plaintiffs' claims arise out of or relate to those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985).

*a. Wittwer and Crema's PACs adequately plead jurisdiction over ED&F in Utah.*

This Court has previously concluded that there were no jurisdictional deficiencies in Crema and Wittwer's Complaints. *See In re Customs & Tax Admin. of Kingdom of Den. (SKAT) Tax Refund Litig.* ("*SKAT Tax Refund Litig.*"), No. 18-md-2865, 2021 WL 4993536, at *5 (S.D.N.Y. Oct. 26, 2021) ("The Court therefore cannot conclude . . . that jurisdiction over ED&F is lacking with respect to the complaints of Wittwer and Crema."). ED&F ignores this and attempts to reargue what the Court already decided. Nevertheless, Wittwer and Crema's PACs allege further facts:

- "At all relevant times, the [DW Construction] Plan used a Utah address and its two trustees, Stacey Kaminer and [Wittwer] (also the plan participant), resided in the State of Utah." Wittwer PAC ¶ 13.

- "At all relevant times, one of the [AIG Plan]'s trustees, Stacey Kaminer, resided in the State of Utah." Crema PAC ¶ 13.

- "[A]t all relevant times, ED&F purposefully engaged in a business relationship with the Plan in Utah." Individuals' PAC ¶ 21.

- "Third-Party Plaintiff's claims arise out of ED&F's business relationship with Acer and the Plan[s] in Utah." Individuals' PAC ¶ 23.

These allegations bolster the Court's earlier conclusion that ED&F's "suit-related conduct . . . creates a substantial connection" with Utah. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).

    b. *Acer's PAC adequately pleads jurisdiction over ED&F.*

Acer's PAC remedies the jurisdictional deficiencies the Court noted were present in Acer's Complaint. The Court should conclude that Acer's jurisdictional allegations are sufficient.

    i.    Acer's PAC sufficiently pleads jurisdiction over ED&F in Utah.

With respect to Acer's Utah claims, the Court noted that jurisdiction was lacking because Acer did not allege it operated out of, or interacted with ED&F in, Utah. *SKAT Tax Refund Litig.*, 2021 WL 4993536, at *6. However, the Court indicated any "short comings in Acer's jurisdictional allegations perhaps would be remedied in an amended complaint," *id.*, which the PAC does by alleging, among other things:

- "At all times relevant…Acer operated out of its Utah office." Acer PAC ¶ 13.
- Seven of the Plans used a Utah address, at least one trustee of each Plan and several Plans' participants resided in Utah. Acer PAC ¶ 8.
- ED&F maintained a business relationship with Acer and seven of the Plans located in Utah, and Acer's claims arise out of that relationship. Acer PAC ¶ 4.
- ED&F established a continuing and ongoing relationship with the Plans and/or Acer and therefore created a substantial connection to Utah. Acer PAC ¶ 4.
- Acer was the authorized agent for each of the Plans and ED&F agreed to communicate with the Plans through Acer. Acer PAC ¶¶ 9, 15.
- Each of the Plans designated Stacey Kaminer, a principal of Acer and Utah resident, as authorized signatory for the ED&F accounts. Acer PAC ¶ 14.

These allegations sufficiently allege jurisdiction over ED&F in Utah. *See Walden*, 571 U.S. at 283.

    ii.    Acer's PAC sufficiently pleads jurisdiction over ED&F in Pennsylvania and New York.

Acer's PAC further establishes that ED&F is subject to jurisdiction in Pennsylvania and

New York because ED&F had sufficient suit-related conduct connected with those states, and Acer's claims arise out of that conduct. These allegations satisfy both New York's long-arm statute and the due process requirements for personal jurisdiction.[2]

With respect to Acer's Pennsylvania claims, Acer's PAC alleges, among other things:

- ED&F maintained a business relationship with the Newsong Plan in Pennsylvania, which gives rise to Acer's claims. Acer PAC ¶ 4.

- "[The Newsong Plan] used a Pennsylvania address and its trustee and participant . . . resided in the Commonwealth of Pennsylvania." Acer PAC ¶ 8.

- The Newsong Plan entered into agreements with ED&F and maintained a brokerage account with ED&F, with Acer as the authorized agent. Acer PAC ¶¶ 7, 9.

- "ED&F purposefully engaged in a business relationship with the Plans in . . . Pennsylvania." Acer PAC ¶ 16.

- "ED&F executed trades in Danish securities for the Plans, provided account statements related to the Plan's accounts, and prepared tax vouchers to support the Plans' refund applications." Acer PAC ¶ 17.

- "Acer's third-party claims against ED&F arise out of ED&F's business relationships with . . . entities in . . . Pennsylvania." Acer PAC ¶ 18.

With respect to Acer's New York claims, the PAC similarly alleges that:

- ED&F maintained a business relationship with the Goldstein Plan in New York, which gives rise to Acer's claims. Acer PAC ¶ 4.

- "[The Goldstein Plan] used a New York address, and its trustees/plan participants . . . resided in the State of New York." Acer PAC ¶ 8.

- The Goldstein Plan entered into agreements with ED&F and maintained a brokerage account with ED&F, with Acer as the authorized agent. Acer PAC ¶¶ 7, 9.

- "ED&F purposefully engaged in a business relationship with the Plans in . . . New York." Acer PAC ¶ 16.

- "ED&F executed trades in Danish securities for the Plans, provided account statements related to the Plan's accounts, and prepared tax vouchers to support the Plans' refund applications." Acer PAC ¶ 17.

- "Acer's third-party claims against ED&F arise out of ED&F's business relationships

---

[2] New York law allows jurisdiction over any non-domiciliary who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). Pennsylvania's long-arm statute requires only that due process be satisfied. 42 Pa. Cons. Stat. § 5322(b).

-3-

with . . . entities in . . . New York." Acer PAC ¶ 18.

ED&F's deliberate business arrangements in Pennsylvania and New York created "continuing obligations" in those states sufficient to establish personal jurisdictional. *See Burger King Corp.*, 471 U.S. at 475–76. As this Court has already determined, ED&F's long-term relationships with the Plans is sufficient to subject ED&F to jurisdiction. *See In re Customs & Tax Admin. of the Kingdom of Den. (SKAT) Tax Refund Litig.*, No. 18-CV-5053 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020) ("By engaging in a long-term business relationship with a New York entity, ED&F . . . purposefully availed itself of the benefits of doing business in New York. . . . As [the] claims arise out of these purposeful contacts with New York, and asserting jurisdiction under these circumstances would comport with traditional notions of fair play and substantial justice, the Court has specific jurisdiction over ED&F."). Acer's claims against ED&F arise out of those same relationships between ED&F and the Plans in New York and Pennsylvania.

Critically, jurisdiction over ED&F does not turn on whether Acer and ED&F interacted in the forum. ED&F's relationships with the forum-based Plans and this litigation are determinative. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (identifying specific jurisdiction considerations as only "the relationship among the defendant, the forum, and the litigation"); *see also Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 43 (E.D.N.Y. 2019) ("There is no requirement . . . that a plaintiff's claim must arise exclusively from New York conduct.").

**II. The PACs' allegations state plausible claims for relief.**

  *a. The PACs adequately plead fraud.*

ED&F's argument that Third-Party Plaintiffs' fraud claims are not adequately pled asks this Court to ignore ED&F's own admission that a majority of the Tax Vouchers were false and that ED&F never should have prepared them in the first place. In spite of its admission that it prepared false documents for use by the Plans in applying for refunds of dividend tax, ED&F

asserts that: 1) it did not make any statements to induce Third-Party Plaintiffs to act, 2) that its statements were not material, 3) that there is no strong inference that it acted with the requisite state of mind, and 4) that Third-Party Plaintiffs did not rely on ED&F's statements to their detriment. Each of these contentions are baseless.

ED&F's contentions that its admittedly false statements in the Disavowed Tax Vouchers were not meant to induce any action by Third-Party Plaintiffs, and that Third-Party Plaintiffs did not rely on those statements, would undermine the very purpose of the Tax Vouchers if it were true. Without the Tax Vouchers prepared by ED&F, no tax refund claims would have been submitted to SKAT. Acer PAC ¶ 70; Individuals' PAC ¶ 66. ED&F's claim that the Tax Vouchers were sent to Third-Party Plaintiffs for "informational purposes" is further undermined by the fact that the Tax Vouchers were a necessary part of SKAT's tax-refund process. Additionally, ED&F's argument is undercut by its own testimony at its February 23, 2022 30(b)(6) deposition, when ED&F admitted that "ED&F knew that the purpose to which the tax vouchers that it issued to the [Plans] would be put was . . . reclaiming of dividend withholding tax[.]" *See* Dillman Decl., Ex. 1.

ED&F's materiality argument also misses the mark, and improperly conflates the Third-Party Plaintiffs' litigation defenses with the underlying tax-reclaim submissions. Third-Party Plaintiffs' position remains that they have a number of valid defenses to SKAT's claims that entitle them to the refunds paid by SKAT. Furthermore, the PACs' removal of an allegation that "the Plan was entitled to the withholding-tax refunds it claimed from SKAT" is not an effort to remedy that allegation's effect on the materiality analysis. Rather, the proposed amendment is the result of ED&F's own testimony in its October 8, 2021 30(b)(6) deposition, which detailed how the Disavowed Tax Vouchers "should not have been produced…." *See* Dillman Decl., Ex. 2.

ED&F's intent argument misstates the law and effectively asks the Court to ignore its own

-5-

earlier decision in this case. The only cases ED&F cites in support of its proposition that "bare allegations that defendants stand to gain economically from fraud do not satisfy the heightened pleading requirements" for fraud are inapplicable, because those cases involved only general allegations of financial incentive, without corresponding allegations of fraudulent activity.[3] Unlike the allegations in *Coppelson* and *Morgan Stanley*, Third-Party Plaintiffs have alleged particular facts constituting sufficient evidence of conscious misbehavior or recklessness by ED&F. ED&F was the only party in position to know the material facts related to the Plans' Tax Vouchers and entitlement to the tax refunds, and yet it made material misstatements as to those facts. Acer PAC ¶¶ 36, 96, 104; Individuals' PAC ¶¶ 43, 95, 105, 114. With respect to the Disavowed Tax Vouchers, ED&F's misstatements were not one-off, simple mistakes, as ED&F now admits that they "should not have been produced." *See* Dillman Decl., Ex. 2; *see also* Acer PAC ¶ 60; Individuals' PAC ¶ 64. Moreover, ED&F could only earn its fees from the Plans after the Tax Vouchers were created and the refunds were paid by SKAT. Acer PAC ¶¶ 63–64; Individuals' PAC ¶ 69. Those allegations satisfy the pleading requirements of intent in light of the Court's previous holding that "alleging the amount that defendants had received in payments . . . and describing each defendants' role in the scheme" is sufficient to plead fraud. *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 , 2020 WL 7059843, at *9 (S.D.N.Y. Dec. 2, 2020).

  b. *The PACs adequately plead negligent misrepresentation.*

ED&F's arguments with respect to the negligent misrepresentation claim essentially boil

---

[3] *See Coppelson v. Serhant*, No. 19-CV-8481 (LJL), 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021) ("Plaintiffs do not allege that Defendants knew that the statements were false or were reckless with respect to their truth or falsity or engaged in conscious misbehavior or recklessness."); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03-CIV-8208 (RO), 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006) ("the actions of Defendants . . . are not fraudulent, so it was not possible for Defendants to form 'fraudulent intent.'").

down to rehashing its fraud arguments, and alleging that it owed no duty to the Third-Party Plaintiffs—both of those contentions are incorrect. ED&F's arguments with respect to reliance and materiality are addressed above, and should be disregarded for the same reasons discussed above. Additionally, ED&F's argument that duty is an element of negligent misrepresentation fails to recognize the broad circumstances under which Utah courts have found a duty in this context. All that is necessary is that one party had "a pecuniary interest in a transaction, [was] in a superior position to know material facts, and carelessly or negligently [made] a false representation concerning them." *DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1008 (Utah Ct. App. 1992). The PACs allege that ED&F obtained fees based on the reclaim requests, that ED&F was the only party in a position to know the materials facts, and negligently made false statements through the Disavowed Tax Vouchers. Acer PAC ¶¶ 37, 46, 105-06; Individual PAC ¶ 67, 97–98, 106, 114. Those allegations meet Third-Party Plaintiffs' burden of alleging a duty. *See DeBry*, 825 P.2d at 1008.

   c. *ED&F owed a fiduciary duty to Crema and Wittwer.*

ED&F next asserts that the PACs do not allege that it owed any fiduciary duty to Crema and Wittwer individually, but only to the Plans.[4] As an initial matter, ED&F's argument that Crema and Wittwer "do not allege that ED&F owed them any fiduciary duty" is plainly false. Individuals' PAC ¶ 113 ("ED&F . . . had a fiduciary relationship with Third-Party Plaintiff."). Crema and Wittwer have alleged specific facts to support the existence of that relationship as well. They allege that ED&F was the only entity that had direct control over information concerning the Plans' brokerage accounts, securities transactions, receipt of dividends, and entitlement to dividend

---

[4] ED&F additionally argues that it owed no fiduciary duty to the Plans. However, ED&F's arguments as to why it owed no fiduciary duty to the Plans is improper for inclusion here, and as such will not be addressed.

withholding taxes. Individuals' PAC ¶¶ 67, 114. Moreover, Crema and Wittwer have alleged that they were the individual participants of their respective Plans. *Id.* at ¶¶ 11, 13. They have also alleged that the Disavowed Tax Vouchers were submitted based on ED&F's advice and that ED&F received an economic benefit from that submission. *Id.* at ¶¶ 97–98. ED&F was in the position to exercise, and did exercise, influence over Crema and Wittwer through its control over these accounts, and therefore owed a fiduciary duty to them, which it breached.

### d. Third-Party Plaintiffs' claims are not barred by the economic loss doctrine.

ED&F next attempts to contort Utah's economic loss doctrine rule to bar Third-Party Plaintiffs' claims. ED&F asks the Court to conclude that Utah's economic loss doctrine would bar any tort claim that arises out of a subject-matter covered by a contract. However, Utah's economic loss doctrine is not so broad. Under Utah law, a plaintiff can recover in tort and contract "if the plaintiff can point to separate duties—one in contract and one in tort." *Preventative Energy Sols., LLC v. nCap Ventures 5 LLC*, No. 16-CV-809-PMW, 2017 WL 87028, at *6 (D. Utah 2017). Utah courts recognize that "[t]hat is a much narrower question than whether the **subject matter** of a dispute is covered by a contract." *Layton Constr. Co. v. Wrapid Specialty, Inc.*, No. 2:14-CV-00402, 2015 WL 7312896, at *17 (D. Utah 2015). The existence of the Custody Agreements between ED&F and the Plans does not affect Third-Party Plaintiffs' claims. As ED&F repeatedly points out, it had no contractual relationship with the Third-Party Plaintiffs. Therefore, any tort claims by the Third-Party Plaintiffs against ED&F necessarily arose not from a contractual duty, but from the above-detailed fiduciary duties. As detailed in the Third-Party Plaintiffs' prior briefing on these issues, the nature of the tort claims further reveals this to be true: the claims are inherently based on non-contractual duties and obligations. *See* Third-Party Plaintiffs' Memo. in Opposition to ED&F's Motion to Dismiss at pp. 31–32, Doc. No. 595, 18-md-2895.

### e. The PACs adequately plead promissory estoppel and unjust enrichment.

ED&F's position with respect to Crema and Wittwer's promissory estoppel and unjust enrichment claims rely on opposite, but equally un-compelling, arguments. ED&F asserts that the claims are barred because they are premised on explicit contractual promises, and that the claims fail to identify any clear and definite promises.

As an initial matter, and as discussed above, no contract exists between Crema and Wittwer, and ED&F. Crema and Wittwer's claims cannot be barred by the existence of contracts between other parties, and the cases ED&F cites stand only for the proposition that parties to a contract, with a valid breach of contract claim, cannot also assert quasi-contractual claims. *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1238 (D. Utah 2015); *U.S. Fid. & Guarantee Co. v. U.S. Sports Specialty Ass'n*, 270 P.3d 464, 468 (Utah 2012); *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978).

Turning to ED&F's argument that there was no clear and definite promise, this argument is also unavailing. Crema and Wittwer have alleged that ED&F promised to exercise reasonable care in performing its obligations, and to create only truthful and accurate documents. Individuals' PAC ¶¶ 15, 16, 122, 123. These promises were clear and definite promises made by ED&F. As the sole participants in their Plans, it is reasonable that Crema and Wittwer would rely on ED&F's promises, and that ED&F intended to induce Crema and Wittwer, as the sole participants of their respective Plans, to continue trading through ED&F.

ED&F additionally argues that the unjust enrichment claim is not adequately pled because Wittwer and Crema did not provide a benefit directly to ED&F. However, Utah law does not require that the unjust enrichment flow directly from one party to the other. Rather, where the alleged benefit "was not so far removed from [one party's] actions" a claim of unjust enrichment

could be made out. *Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582–83 (Utah 2000). The fees paid to ED&F by the Plans are not so far removed from the Plans' sole participants to prevent a finding that Crema and Wittwer provided the benefit. *See id.*

    f. *The PACs' equitable indemnification claims are not barred.*

ED&F's equitable indemnification agreement attempts an end-run around the Court's prior decision. As the Court has previously held, "it does not follow that the indemnitor must have been **adjudged** liable to the underlying plaintiff" to sustain an equitable indemnification claim. *SKAT Tax Refund Litig.*, 2021 WL 4993536, at *10. The fact that an English court concluded that SKAT's claims against ED&F were not properly brought **in England** does nothing to impact the Court's prior ruling that Third-Party Plaintiffs' claims for equitable indemnification were proper.

    g. *The PACs adequately plead apportionment of fault.*

ED&F's last-ditch effort to avoid Third-Party Plaintiffs' claims is to argue that Utah has done away with apportionment of fault claims, and limits it only to a defense to liability. However, ED&F cites to no decision by any Utah court interpreting the law in that manner; and with good reason, as it appears no court has done so. On the contrary, since 2005 (the date ED&F alleges Utah law changed to bar stand-alone apportionment of fault claims), Utah courts have allowed claims for apportionment of fault as a third-party claim.[5] ED&F's argument that Utah no longer represents apportionment of fault claims is plainly incorrect.

## **CONCLUSION**

  For the foregoing reasons, Third-Party Plaintiffs motion for leave to file amended third-party complaints should be granted.

---

[5] *See Zeco Equip., LLC v. Greentown Oil Co.*, No. 2:15-CV-464, 2017 WL 4217251, at *1 (D. Utah Sept. 21, 2017) ("[defendants] filed a Third-Party Complaint . . . on August 23, 2016 alleging apportionment of fault"); *Bee v. Anheuser-Busch, Inc.*, 204 P.3d 204, 208 (Utah Ct. App. 2009) ("the third-party complaint . . . raised issues of . . . apportionment of fault").

March 4, 2022                               Respectfully submitted,

                                                  K&L GATES LLP

                                                  */s/ John C. Blessington*
                                                  John C. Blessington (*pro hac vice*)
                                                    john.blessington@klgates.com
                                                 Brandon R. Dillman (*pro hac vice*)
                                                   brandon.dillman@klgates.com
                                                 Michael R. Creta (*pro hac vice*)
                                                   michael.creta@klgates.com
                                                 John L. Gavin (*pro hac vice*)
                                                   john.gavin@klgates.com
                                                 K&L GATES LLP
                                                 State Street Financial Center
                                                 One Lincoln Street
                                                 Boston, MA  02111
                                                 T: 617.261.3100
                                                 F: 617.261.3175

                                                 *Attorneys for Darren Wittwer, Robert*
                                                 *Crema, and Acer Investment Group, LLC*