# Exhibit 29

spørgsmål. De vigtigere udvalg mødes jævnligt, nogle ugentligt.

Minisreren

Endelig fungerer ministeren som selvstændig myndighed. Ministeren står i spidsen for et ministerium og er dermed den øverste i det statslige hierarki, for så vidt dette hører under centraladministrationen. Ministeren udøver i denne forbindelse funktioner i flere retninger: Ministeren har det sidste ord i de sager, der skal afgøres af ministeriet, ministeren står for ministeriets standpunkt udadtil i forhold til offentligheden, i forhold til organisationer og private, som ministeriets afgørelser retter sig til, og i forhold til Folketinget, hvor ministeren i forhold til plenum og udvalg varetager de opgaver, der emnemæssigt hører under ministeriets område.

### 13.6 Ministerens personlige stilling

Uafhængig

Regeringen består som nævnt af ministre. De enkelte ministre er indbyrdes uafhængige af hinanden i den forstand, at den ene ikke kan meddele den anden direktiver eller i øvrigt øve indflydelse på den pågældendes virksomhed. Denne ramme må også statsministeren respektere. Statsministeren kan således ikke bindende fastsætte, hvordan en fagminister skal administrere et område, eller hvordan en konkret sag skal afgøres.

Regeringsbeslutning

I vidt omfang forekommer cirkulærer fra én minister, der følges af andre ministerier, og som formentlig er bindende for disse. Dette beror på, at de udgår fra – eller i hvert fald tilskrives – regeringen som helhed. Statsministeriets cirk nr 159 af 16.9.1998 om bemærkninger til lovforslag er naturligvis gældende for alle ministerier.

Statsministeren

Ikke desto mindre har det også retlige konsekvenser, at regeringen, som det er nævnt, består af ministre under forsæde af statsministeren. Statsministeren er nemlig beføjet til at træffe beslutning om, at fagministre skal afskediges, eller at yderligere ministre skal antages. Beslutningen skal bekræftes formelt af regenten, men der gælder ikke noget krav om, at beslutningen om afskedigelse eller ansættelse af enkelte ministre skal træffes eller godkendes af regeringen.

I denne beslutningsfrihed er der den indholdsmæssige grænse, som følger af reglerne om parlamentarisme. Disse er for regeringen som helhed omtalt ovenfor. Tilsvarende

så fald vil det efter min opfattelse være betænkeligt, om regeringen ændrede ressortfordelingen i strid med den i loven i forbindelse med dens forarbejder forudsatte ministerielle placering. Det er svært at se nogen forfatningsretlig begrundelse for, at regeringen skulle kunne beslutte sig for en ressortfordeling, som er i strid med Folketingets klart tilkendegivne forudsætninger for tildeling af den kompetence, som indgår i ressortfordelingen, sml P. Germer 1995 s 36 om forudsætning om ministerens *person*. Betydningen af den udtrykkelige hjemmel i grl § 14, 2.pkt, svækkes af, at bestemmelsen er introduceret i dansk forfatningsret som et led i sammenkoblingen af den danske forfatningsret med hertugdømmernes forfatningsforhold.

Men bortset fra denne særegne situation er det praktisk, at regeringen på egen hånd kan træffe bestemmelse om ressortomlægning.

**Udenrigspolitik**
Grl § 19

3. Af stor praktisk betydning er grl § 19, hvorefter regenten «handler på rigets vegne i mellemfolkelige anliggender«. Bestemmelsen omfatter såvel dispositioner vedrørende traktatindgåelse og -opsigelse, § 19, stk 1, som anvendelse af militære magtmidler mod fremmed stat, § 19, stk 2. Det er imidlertidig ikke hensigtsmæssigt at beskrive regeringens optræden i udenrigspolitiske sammenhænge alene med udgangspunkt i en »regeringsbeføjelse«. Bestemmelsen indeholder udførlige regler om folketingskontrol, og de internationalretlige rammer for dansk ret har en retskildemæssig betydning, som fortjener selvstændig behandling.

*Om udenrigspolitik, kapitel 51-55*
Regulering ved lov eller folketingsbeslutning

*Om folketingsbeslutninger, kapitel 26*

På dette sted skal blot gøres nogle bemærkninger om muligheden for ved lov eller folketingsbeslutning at supplere de i grl § 19 udtrykkeligt omtalte kontrolformer. Uanset om folketingsbeslutninger antages at indebære informationsforpligtelser for ministeren eller har en videregående retlig relevans for vurderingen af ministerens optræden, bør regeringsprærogativet ikke blokere for en parlamentarisk styring, som supplerer den i grl § 19 udtrykkeligt hjemlede kontrol i form af samtykke og rådgivning. Fortolkningen af trufne beslutninger bør ske med erkendelse af behovet for en effektiv og selvstændig udenrigspolitisk ledelse, og denne fortolkningsfaktor må anerkendes som vægtig. Også med dette forbehold vil en anerkendelse af den retlige karakter af den parlamentariske styring af den uden-

<div style="margin-left: marginal-note"><em>The Minister</em></div>

[…] questions. The more important committees meet regularly, some weekly.

Finally, the Minister acts as an independent authority. The Minister is in charge of a ministry and is there at the top of the state hierarchy, insofar as this falls under the central administration. In this connection, the Minister performs functions in several ways: The Minister has the final say in the cases to be decided by the Ministry, the Minister is responsible for the Ministry's position in relation to the public, in relation to organizations and private individuals to which the Ministry's decisions are addressed, and in relation to the Parliament, where in relation to the plenary and committees, the Ministry handles the tasks that fall under the subject area of the Ministry.

### 13.6 Minister's personal position

<div><em>Independent</em></div>

As mentioned, the government consists of ministers. The individual ministers are mutually independent in the sense that one cannot notify the other of directives or otherwise exercise influence over their business. This framework must also be respected by the Prime Minister. Thus, the Prime Minister cannot bindingly determine how a professional minister is to administer an area or how a specific case is to be decided.

<div><em>Government decision</em></div>

To a large extent, there are circulars from a minister that are followed by other ministries and that are probably binding on them. This is because they are based on - or at least attributed to - the government as a whole. Prime Minister's Circular No. 159 of 09/16/1998 on comments on bills is of course applicable to all ministries.

<div><em>The Prime Minister</em></div>

Nevertheless, it also has legal consequences that the government, as it is mentioned, consists of ministers under chair of the Prime Minister. The Prime Minister is in fact empowered to decide that professional ministers must be dismissed or that additional ministers must be appointment. The decision must be formally confirmed by the regent, but there is no requirement that the decision on dismissal or appointment of individual ministers must be made or approved by the government.

In this freedom of decision there is the substantive limit which follows from the rules on parliamentarism. For the government as a whole, this is discussed above. Corresponding

in that case, in my view, it would be worrying if the government changed the division of responsibilities in contravention of the ministerial division required by law in connection with its preparatory work for presumed ministerial placement. It is difficult to see any constitutional justification for the government to be able to decide on a division of responsibilities which is in conflict with the Folketing's clear stated preconditions for the allocation of the competence included in the division of responsibilities, cf. P. Germer 1995

p. 36 on presupposition about the Minister's person. The provision of the express legal basis in grl § 14, 2.pkt, is weakened by the fact that the provision has been introduced into Danish constitutional law as a

part of the interconnection of the Danish constitutional law with the constitutional conditions of the duchies.

But apart from this peculiar situation, it is practical for the government to decide on its own reorganization.

**Foreign policy**
Grl § 19

3. ==Of great practical importance is grl § 19, according to which the regent "Acts on behalf of the kingdom in international affairs".== The provision covers both provisions concerning the conclusion and termination of the treaty, § 19, para. 1, and the application of

military force against foreign state, § 19, paragraph 2. However, it is not appropriate to describe the government's actions in foreign policy contexts solely on the basis of a 'governmental power'. The provision contains detailed rules on parliamentary control, and the international legal framework for Danish law is important as a source of law that deserves independent consideration.

*On Foreign Policy, chapter 51-55*
Regulation by law or the decision of the people

*On Parliament's decisions, chapter 26*

At this point, only a few remarks need to be made about the possibility of supplementing by law or a parliamentary resolution to supplement the forms of control explicitly mentioned in Grl § 19. Regardless of whether parliamentary resolutions are assumed to entail information obligations for the Minister or have a higher legal relevance for the assessment of the Minister's performance, the government prerogative should not block a parliamentary

management, which complements the control explicit in grl § 19 in the form of consent and advice. Interpretation

of decision-making should be done with the recognition of the need for an effective and independent foreign policy leadership. and this factor of interpretation must be recognized as significant. Also, with this reservation, there must be a recognition of the legal character of the parliamentary control of the foreign [...]



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK      )
                       )                ss:
COUNTY of NEW YORK     )

### CERTIFICATE OF ACCURACY

This is to certify that the attached document, "Henrik Zahle, Dansk Forfatningsret (Danish constitutional law) at 232, 126" - originally written in Danish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 4/14/2022

_____
Heather Cameron
Projects Manager
Consortra Translations

Sworn to and signed before ME
This 14th day of April, 2022

_____
Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your legal translation partner

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  Hong Kong