# Exhibit 30



U.2009.58

# Ø.L.D. 31. oktober 2007 i sag 11. afd. nr. B-3624-06

**Sidetal:** 58

**Ministerium havde ikke søgsmålskompetence til sagsanlæg mod ankenævn.**

Arbejdsmarkedets Ankenævn, A, traf afgørelse i en klagesag vedrørende B, hvorved A ændrede en afgørelse truffet af Arbejdsdirektoratet, således at B, der modtog efterløn, ikke nødvendigvis skulle tåle et fradrag i efterlønnen i forbindelse med afholdelse af ferie. Beskæftigelsesministeriet, der var uenig i A's afgørelse, og som skønnede, at konsekvensen af afgørelsen kunne blive en udgift for staten på mere end 400 mio kr., ønskede afgørelsens lovlighed prøvet ved domstolene. Landsretten afviste sagen i overensstemmelse med A's påstand herom, idet ministeriet ikke fandtes at have søgsmålskompetence i sagen. [Note 1]

(Finn Morten Andersen, Norman E. Cleaver, Ole Græsbøll Olesen).*Beskæftigelsesministeriet (Km.adv.)* mod *Arbejdsmarkedets Ankenævn (adv. Per Magid, Kbh.).*

## Østre Landsret

Under denne sag, der er anlagt den 30. november 2006, har sagsøgeren, Beskæftigelsesministeriet, nedlagt påstand om, at sagsøgte, Arbejdsmarkedets Ankenævn (i det følgende benævnt Ankenævnet), tilpligtes at anerkende, at Ankenævnets afgørelse af 4. september 2006 vedrørende B er ugyldig.

Ankenævnet har nedlagt principal påstand om afvisning, subsidiært frifindelse.

Beskæftigelsesministeriet har heroverfor nedlagt påstand om, at sagen fremmes til realitetsbehandling i overensstemmelse med påstanden i stævningen.

Landsretten har i medfør af retsplejelovens § 253, stk. 1, udskilt spørgsmålet om, hvorvidt Beskæftigelsesministeriet har søgsmålskompetence til særskilt forhandling og afgørelse.

*Ankenævnets afgørelse*

Ankenævnet traf den 4. september 2006 afgørelse i en klagesag rejst af B, hvorved nævnet ændrede en afgørelse truffet af Arbejdsdirektoratet den 29. maj 2006. Afgørelsen har følgende indhold:

». . .

Ankenævnet har behandlet Deres klage på møde den 31. august 2006.

Nævnet traf denne

AFGØRELSE

De har ikke modtaget tilstrækkelig vejledning.

De har ret til at holde ferie med optjente feriepenge mod fradrag i efterlønnen eller at undlade at holde ferie og få feriepengene udbetalt uden fradrag i efterlønnen.

De bedes rette henvendelse til a-kassen med henblik på at modtage vejledning om hvilket af disse valg, De ønsker at foretage.

Ankenævnet ændrer således Arbejdsdirektoratets afgørelse af 29. maj 2006.

BEGRUNDELSE

Ankenævnet har lagt til grund, at

*59*

• De den 10. juni 2005 afleverede ferie-Kontobevis til a-kassen. De rettede ikke anden henvendelse til a-kassen,

• a-kassen attesterede ferie-Kontobeviset og foretog fradrag for den angivne ferie ved udbetalingen af efterlønnen. A-kassen har blandt andet forklaret, at man ikke har ønsket direkte at fraråde sine medlemmer at holde ferie, men at man i juni 2005 på hjemmesiden orienterede sine medlemmer om muligheden for at undgå fradrag i efterlønnen ved at undlade at holde ferien og i stedet hæve feriepengene kontant ved ferieårets udløb.

• ifølge ferieloven § 34 b, stk. 3 vil feriepenge, der ikke er hævet af lønmodtageren inden udløbet af ferieåret, under visse betingelser kunne udbetales til lønmodtageren. Ifølge § 34 b, stk. 4 kan feriepengene, hvis lønmodtageren har fået arbejdsløshedsdagpenge, ydelse efter lov om børnepasningsorlov eller kontanthjælp i ferieåret kun udbetales efter godkendelse af direktøren for Arbejdsdirektoratet og antallet af dage med de nævnte ydelser skal trækkes fra det antal dage, de uhævede feriepenge svarer til, og

• direktoratet i sit nyhedsbrev nr. 2/2006 om ferieloven har oplyst, at det er rigtigt, at modtagere af efterløn har 2 muligheder. Medlemmet kan enten holde ferie med optjente feriepenge mod fradrag i efterlønnen eller medlemmet kan undlade at holde ferie og få feriepengene udbetalt efter ferieåret udløb i henhold til ferielovens § 34 b uden fradrag.

Ifølge § 34 i bekendtgørelsen om fleksibel efterløn medfører ferie med feriegodtgørelse fradrag på ferietidspunktet i forhold til det antal feriedage, der holdes.

Efter § 65 i arbejdsløshedsforsikringsloven skal a-kassen vejlede medlemmet om de rettigheder og pligter, der følger af loven samt om medlemmets rettigheder og pligter i øvrigt efter arbejdsmarkedslovgivningen.

Af bekendtgørelsen om en a-kasses pligt til at vejlede, § 5, fremgår, at en a-kasse altid skal give det enkelte medlem individuel og personlig vejledning, hvis medlemmet har særligt behov herfor. Dette indebærer, at der skal vejledes, når et medlem fx står over for at miste en ret eller at et medlem fx har misforstået noget omkring sine rettigheder og pligter, jf. vejledningen til nævnte § 5.

Ankenævnet har ved sin afgørelse lagt vægt på direktoratets nyhedsbrev nr. 2/2006. Ankenævnet finder ikke grundlag for en anden fortolkning af reglerne end direktoratets.

På denne baggrund finder ankenævnet, at a-kassen i forbindelse med attestationen af Deres ferieKonto-bevis burde have vejledt om Deres muligheder for at vælge mellem at holde ferie med optjente feriepenge mod fradrag i efterlønnen eller at undlade at holde ferie og få feriepenge udbetalt efter ferieårets udløb i henhold til ferielovens § 34 b uden fradrag.

. . .«

*Baggrunden for Ankenævnets afgørelse*

Baggrunden for Ankenævnets afgørelse var, at B, der er efterlønsmodtager, den 10. juni 2005 afleverede sit ferie-Kontobevis til sin a-kasse, Ledernes Arbejdsløshedskasse. Af et print fra a-kassens feriesystem fremgår, at hun havde planlagt at holde ferie fra fredag den 1. til mandag den 11. juli 2005, dvs. 6½ feriedag. Ifølge Ledernes Arbejdsløshedskasse efterspurgte hun hverken vejledning eller rådgivning i forbindelse med ferien.

Ledernes Arbejdsløshedskasse attesterede ferie-Kontobeviset den 14. juni 2005 og fradrog et beløb svarende til antallet af feriedage i efterlønnen. Ledernes Arbejdsløshedskasse henvendte sig ikke af egen drift til B med information om muligheden for at undlade at afvikle ferie og dermed få sine feriepenge udbetalt ved ferieårets udløb uden fradrag i efterlønnen.

Efter en henvendelse fra B fastholdt Ledernes Arbejdsløshedskasse fradraget i efterlønnen ved en afgørelse af 21. marts 2006 og redegjorde for, hvordan man generelt havde informeret om muligheden for at undgå fradraget for feriepengene i efterlønnen, og oplyste, at a-kassen fandt, at man havde informeret korrekt.

B påklagede afgørelsen til Arbejdsdirektoratet, som ved afgørelse af 29. maj 2006 tiltrådte, at Ledernes Arbejdsløshedskasse med rette havde foretaget fradrag i efterlønnen svarende til antallet af feriedage. Arbejdsdirektoratet vurderede, at Ledernes Arbejdsløshedskasse ikke havde vejledt B mangelfuldt om ferie, og tilføjede, at det ikke var a-kassernes opgave af egen drift at vejlede om eventuelle omgåelsesmuligheder i efterløns- og feriereglerne, der ville give medlemmet mulighed for at undgå fradrag i efterlønnen.

B påklagede Arbejdsdirektoratets afgørelse til Ankenævnet, som den 4. september 2006 traf den omhandlede afgørelse.

*Yderligere oplysninger af relevans*

Arbejdsdirektoratet havde i et nyhedsbrev om ferieloven (nr. 2/2006) den 20. marts 2006 orienteret om, at efterlønsmodtagere og modtagere af fleksydelse kunne vælge enten at holde ferie med feriepenge, mod at der skete fradrag i efterlønnen eller fleksydelsen, eller kunne undlade at holde ferie og få feriepengene udbetalt efter ferieårets udløb uden fradrag i efterløn eller fleksydelse.

Af Ankestyrelsens Sociale Meddelelser (SM Y-2-06) fremgår, at Ankestyrelsen i en sag, der blev afgjort den 4. oktober 2006 på det beslægtede fleksydelsesområde lagde til grund, at Arbejdsdirektoratet efter forvaltningslovens

§ 7, stk. 1, ikke havde pligt til af egen drift at vejlede om muligheden for udnyttelse af særreglerne i ferielovens § 34 b, med det resultat, at den

*60*

pågældende opnår dobbeltforsørgelse. Af meddelelsen fremgår således blandt andet:

»Arbejdsdirektoratet Fleksydelseskontoret havde om sin vejledningsforpligtelse udtalt, at det ikke kunne anses for en statslig myndigheds opgave af egen drift at rådgive om, hvordan man kunne undgå at få foretaget fradrag i fleksydelsen - og dermed opnå dobbeltforsørgelse - ved at udnytte særregler i anden lovgivning, fx. de særlige regler i ferielovens § 34 b om udbetaling af feriegodtgørelse efter ferieårets udløb.

Ankestyrelsen lagde til grund, at der ikke gjaldt en sådan generel vejledningsforpligtelse.«

AK-Samvirke, der er en brancheorganisation for danske a-kasser, fik den 10. oktober 2006 foretræde for Folketingets Arbejdsmarkedsudvalg. Af et talepapir i denne forbindelse fremgår, at AK-Samvirke skønnede, at Ankenævnets afgørelse ville få betydning for ca. »30.000 medlemmer, som er blevet modregnet i efterløn for afholdt ferie, og som ikke har fået den rigtige vejledning«. Af talepapiret fremgår videre, at samvirket henstillede til beskæftigelsesministeren at finde en løsning, således at staten påtog sig ansvaret for den opståede situation.

Af en pressemeddelelse, som Beskæftigelsesministeriet herefter udsendte den 25. oktober 2006, fremgår blandt andet:

»Beskæftigelsesminister Claus Hjort Frederiksen har besluttet at anlægge sag mod Arbejdsmarkedets Ankenævn for at få prøvet Ankenævnets afgørelse om a-kassernes vejledningspligt, når det gælder reglerne om fradrag for feriepenge i efterlønnen.

Baggrunden er, at Arbejdsmarkedets Ankenævn i begyndelsen af september har truffet afgørelser i to sager, hvor efterlønsmodtagere har klaget over, at de har fået foretaget fradrag for feriepenge i deres efterløn uden at være blevet vejledt om mulighederne for at undgå fradrag. Afgørelserne betyder, at mange efterlønsmodtagere vil kunne kræve kompensation for, at a-kasser ikke har fortalt dem, hvordan de kunne undgå at få modregnet feriepenge i deres efterløn.

Der er to grunde til, at beskæftigelsesministeren vil have Ankenævnets afgørelse om a-kassernes vejledningspligt prøvet ved en domstol: Først og fremmest, at Beskæftigelsesministeriets jurister og Kammeradvokaten har vurderet, at Arbejdsmarkedets Ankenævn har truffet en forkert afgørelse. Her er det også af betydning, at Ankestyrelsen på et beslægtet område er kommet til et andet resultat end ankenævnet.

Den anden meget vigtige grund er, at Kammeradvokaten ydermere har tilkendegivet, at Ankenævnets afgørelse kan få afsmittende virkning for andre forvaltningsområder. I yderste konsekvens kan det betyde, at offentlige myndigheder i en lang række simple ekspeditionssager skal undersøge, om der er forhold, der bør vejledes om, selv om borgeren ikke har bedt om at blive vejledt.

Beskæftigelsesminister Claus Hjort Frederiksen siger om sin beslutning:

»Når både ministeriets jurister og Kammeradvokaten siger, at ankenævnets afgørelse er forkert, så er jeg nødt til at reagere. I hvert tilfælde er vi bange for, at Ankenævnets afgørelse vil blive brugt som løftestang for krav om vidtgående vejledning over for andre myndigheder. Der er derfor stor risiko for, at vi under alle omstændigheder får

en retssag om spørgsmålet inden for nærmeste fremtid. Vi opnår derfor ikke noget ved at knibe uden om en retssag nu.

Jeg mener derfor, at jeg og regeringen har en forpligtelse til at få afprøvet ved domstolene, om Ankenævnets afgørelse er korrekt.«

. . .

Det, at Beskæftigelsesministeriet anlægger sag ved domstolene, betyder ikke, at a-kassernes medlemmer kommer til at hænge på en kæmperegning:

»Hvis vi vinder sagen, så er kasserne frikendt for at skulle have vejledt, selvom medlemmet ikke havde bedt om det. Dermed slipper kasserne for at kompensere medlemmerne for ikke at have fået fradrag. Og taber vi sagen, er jeg indstillet på at betale refusion til a-kasserne i de sager, hvor der ikke er bedt om vejledning. Vi har jo selv haft den samme opfattelse som kasserne, og jeg synes derfor ikke det er rimeligt, hvis de skal bære regningen alene.

Men det vil også være sådan, at det er a-kassen der skal betale i de sager, hvor medlemmet har bedt om vejledning og er blevet vejledt forkert - lige som det altid gælder. Det synes jeg kun er rimeligt«, slutter Claus Hjort Frederiksen.«

Kammeradvokaten har i stævningen i nærværende sag oplyst, at refusion til a-kasserne vil medføre en betydelig udgift for staten - formentlig i størrelsesordenen 400-600 mio. kr.

Som svar på en henvendelse fra advokat Lars Svenning Andersen på vegne af AK-Samvirke har Beskæftigelsesministeriet den 30. november 2006 afslået at give a-kasserne refusion i tilfælde, hvor a-kasserne efter et medlems anmodning om vejledning om ferie- og efterlønsreglerne har givet forkert eller utilstrækkelig vejledning herom. Kammeradvokaten har for landsretten oplyst, at AK-Samvirke har anlagt sag ved Københavns Byret mod Beskæftigelsesministeriet i anledning heraf.

*Ændringen af ferieloven ved lov nr. 1200 af 27. december 2003.*

Parterne har for landsretten oplyst, at det konkrete spørgsmål om vejledning om reglerne om feriepenge er opstået som følge af en ændring af ferieloven, der blev gennemført ved lov om ændring af ferieloven (Udbetaling af uhævede feriepenge), jf. lov nr. 1200 af 27.

*61*

december 2003, der trådte i kraft den 1. januar 2004, og hvorved ferieloven ændredes således, at uhævede feriepenge i visse tilfælde kan udbetales til lønmodtageren efter ferieårets udløb.

Parterne har i den forbindelse navnlig henledt opmærksomheden på følgende i relation til lovforslaget:

I forbindelse med udarbejdelsen af lovforslaget udarbejdede kontorchef i Arbejdsdirektoratet Søren Balslev et internt notat af 18. juni 2003 til daværende arbejdsretschef i Beskæftigelsesministeriet Ejnar Edelberg. Af notatet fremgår, at man drøftede mulighederne for sikring mod dobbeltforsørgelse. Direktoratets synspunkt var, at »sikringen mod dobbeltforsørgelse bør ske i de respektive overførselsindkomstsystemer, som traditionelt er ydelser efter lov om arbejdsløshedsforsikring, orlov og kontanthjælp.« Reguleringen skulle således ikke ske ved fradrag i feriepengene.

Med lovens § 34 b, stk. 4, indførtes en ordning, der skulle sikre mod dobbeltforsørgelse ved modtagelse af arbejdsløshedsdagpenge, ydelser efter lov om børnepasningsorlov eller kontanthjælp i ferieåret. Sikring mod dobbeltforsørgelse ved modtagelse af efterløn er ikke omhandlet i loven eller forarbejderne.

En konsekvens af lovændringen var, at der ikke ville blive foretaget fradrag i efterløn, hvis feriepengene blev udbetalt efter ferieårets udløb. Hvis feriepenge blev udbetalt i ferieåret, skulle der således som hidtil ske fradrag i efterlønnen.

Der er for landsretten fremlagt notater af 27. januar 2004 og 29. januar 2004, som begge blev sendt fra Arbejdsdirektoratet til departementschefen i Beskæftigelsesministeriet. I notatet af 27. januar 2007 indstilledes det til departementschefen, »at der ikke fastsættes regler om fradrag m.v. i overførselsindkomsterne for udbetaling af feriepenge efter de nye regler på nuværende tidspunkt.« Det anføres i notatet, at det er direktoratets opfattelse, at der med modregningsreglen i ferieloven er gjort op med spørgsmålet om dobbeltforsørgelse, og at fradragsregler i de forskellige regelsæt vil indebære en bureaukratisering. I relation til overførselsindkomster anføres det i notatet af 29. januar 2004, at der ikke er behov for at foretage regelændringer, men at spørgsmålet kan tages op, hvis reglerne får en utilsigtet brug.

Ved bekendtgørelse nr. 335 af 19. april 2006 om ændring af bekendtgørelse om fleksibel efterløn, der trådte i kraft den 29. april 2006, ændredes bekendtgørelsen, således at der skal foretages fradrag i efterlønnen ved udbetaling af feriepenge på det tidspunkt, hvor medlemmet får udbetalt feriepengene.

*Parternes procedure*

*Beskæftigelsesministeriet* har navnlig gjort gældende, at ministeriet har den fornødne retlige interesse i at få prøvet lovligheden af den retsopfattelse, som Ankenævnet har lagt til grund i den omhandlede afgørelse. Der kan ikke kræves en særlig lovhjemmel til støtte for søgsmålskompetence i denne sag. Beskæftigelsesministeren har en tilsynsforpligtelse over for myndigheder inden for sit ressort. En sådan tilsynsforpligtelse tilkommer principielt enhver minister, men er i øvrigt særlig forudsat i arbejdsforsikringsloven. Behovet for en domstolsafgørelse skyldes navnlig, at Ankenævnet og Ankestyrelsen på 2 beslægtede retsområder har truffet modsatrettede afgørelser om vejledningspligten, når en lønmodtager ikke selv har bedt om vejledning. Hermed er der ikke den ensartethed i praksis, som blev forudsat, da de to klageorganer fik fælles sekretariat ved en lovændring i 2004. Ankenævnets uafhængighed anfægtes ikke af en domstolsprøvelse af nævnets afgørelse under en sag anlagt af den ansvarlige minister. Det kan heller ikke føre til afvisning, at sagen er anlagt mellem to statslige myndigheder. Det er i nyere praksis anerkendt, at domstolene kan behandle tvister mellem statslige myndigheder, og en retslig afgørelse er eneste mulighed for at få en afklaring i den foreliggende situation. B lider ikke noget retstab, hvis sagen fremmes til realitetsbehandling, og der afsiges dom i overensstemmelse med Beskæftigelsesministeriets påstand, da B's forhold alene er et spørgsmål mellem a-kassen og hende. Hvorvidt der består en retlig forpligtelse til at refundere a-kassernes efterbetaling til de efterlønsmodtagere, der som følge af Ankenævnets afgørelse skal have efterbetalt den fradragne efterløn, eller om der alene er tale om en kulancemæssig refusion, er uden betydning for landsrettens stillingtagen til ministeriets søgsmålskompetence.

*Ankenævnet* har navnlig gjort gældende, at Beskæftigelsesministeriet ikke har den fornødne konkrete - økonomiske eller anden - interesse i dette søgsmål. Ministeren har ikke nogen instruktionsbeføjelser over for Ankenævnet vedrørende de enkelte sagers behandling og afgørelse. Det vil indebære en begrænsning af nævnets reelle uafhængighed, hvis et ministerium, der er uenig i nævnets afgørelser, kan rejse sag mod nævnet. Beskæftigelsesministeriet er ikke part i den afgørelse, der er truffet, og er ikke direkte påvirket af afgørelsen, som har et snævert anvendelsesområde, og som er uden betydning for ministeriets fremtidige myndighedsudøvelse, idet lovgivningen er ændret. Der er ikke nogen uoverensstemmelse mellem Ankenævnets afgørelse, der drejer sig om a-kassernes vejledningspligt, og Ankestyrelsens afgørelse, der drejer sig om offentlige myndigheders vejledningspligt. A-kasserne er i lovgivningen pålagt en videregående vejledningspligt end den, der følger af forvaltningsloven. Ministeriets almindelige styringsmæssige interesse som ansvarlig for lovgivningen om a-kassers

vejledning kan ikke i sig selv begrunde en retlig interesse. Den omstændighed, at Beskæftigelsesministeriet kulancemæssigt har givet tilsagn om at friholde a-kasserne for det tab, de måtte lide som

*62*

følge af Ankenævnets afgørelse, kan ikke danne grundlag for en retlig interesse. Det vil have vidtrækkende utilsigtede konsekvenser, hvis der indrømmes Beskæftigelsesministeriet en retlig interesse i denne sag, hvor en afgørelse mest vil få karakter af et responsum. Hertil kommer, at der er tale om en begunstigende afgørelse over for en borger, som ikke er inddraget i sagen. Søgsmålskompetence for Beskæftigelsesministeriet ville kræve særlig lovhjemmel.

### Landsrettens begrundelse og resultat:

Ved Ankenævnets afgørelse af 4. september 2006 ændrede nævnet en afgørelse truffet af Arbejdsdirektoratet den 29. maj 2006, således at klageren, B, fik mulighed for enten at holde ferie med optjente feriepenge mod fradrag i efterlønnen eller at undlade at holde ferie og få feriepengene udbetalt uden fradrag i efterlønnen. Baggrunden herfor var, at nævnet fandt, at hendes a-kasse af egen drift burde have vejledt hende om valgmuligheden, selvom hun ikke havde henvendt sig med anmodning om en sådan vejledning.

Selvom afgørelsen måtte indebære, at der skal ske udbetaling af ydelser i størrelsesordenen 400-600 mio. kr. til efterlønsmodtagere, finder landsretten ikke, at Beskæftigelsesministeriet har en økonomisk interesse i den trufne afgørelse, der kan begrunde søgsmålskompetence. Landsretten lægger herved vægt på, at ministeriet ikke har været retligt forpligtet til at friholde a-kasserne for det tab, de eventuelt måtte lide som følge af Ankenævnets afgørelse, men har valgt at tilbyde at friholde a-kasserne ud fra mere kulancemæssige overvejelser.

Afgørelsen, der er truffet af et uafhængigt ankenævn, har ikke nogen direkte betydning for Beskæftigelsesministeriets udførelse af sin opgave. Afgørelsen har endvidere ikke betydning for a-kassernes fremtidige vejledning om ferielovgivningen, idet lovgivningen er ændret. Den omstændighed, at der eventuelt kan være en uoverensstemmelse mellem Ankenævnets afgørelse og en afgørelse truffet af Ankestyrelsen på et beslægtet - men dog ikke identisk - område, kan heller ikke begrunde en retlig interesse for Beskæftigelsesministeriet til et sagsanlæg mod en anden statslig myndighed. Det bemærkes herved, at der består en mulighed for lovgivningsmæssigt at tage højde for eventuelle utilsigtede uoverensstemmelser.

Da landsretten endelig ikke finder, at beskæftigelsesministerens generelle tilsynsforpligtelse over for myndigheder inden for sit ressort i hvert fald under de foreliggende omstændigheder kan begrunde, at ministeriet har en retlig interesse i at få en domstolsprøvelse af det konkrete spørgsmål om vejledningspligtens udstrækning, savner Beskæftigelsesministeriet søgsmålskompetence, hvorfor Arbejdsmarkedets Ankenævns påstand om afvisning tages til følge.

Under hensyn til sagens karakter og sagsforberedelsens omfang indtil formalitetsproceduren forholdes der med sagens omkostninger som nedenfor bestemt.

### Thi kendes for ret:

*Denne sag afvises.*

*I sagsomkostninger skal Beskæftigelsesministeriet inden 14 dage betale 50.000 kr. til Arbejdsmarkedets Ankenævn.*

**Fodnoter**

[1] Rigsrevisionens Beretning til Statsrevisorerne om udbetaling af uhævede feriepenge til efterlønsmodtagere, september 2008, s. 25 ff.

UfR
2009
U.2009.58

# Ø.L.D. 31 October 2007 in case 11. section no. B-3624-06

Number of pages: 58

The Ministry did not have jurisdiction to bring an action against the Board of Appeal.

The Labor Market Appeals Board, A, decided in an appeal case concerning B, whereby A changed a decision made by the Directorate of Labor so that B, who received early retirement pay, did not necessarily have to suffer a deduction in early retirement pay in connection with vacations. The Ministry of Employment, which disagreed with A's decision and who estimated that the consequence of the decision could be an expense to the state of more than DKK 400 million, wanted the legality of the decision tested in the courts. The High Court dismissed the case in accordance with A's claim to that effect, as the Ministry was not found to have jurisdiction in the case. [Note 1]

(Finn Morten Andersen, Norman E. Cleaver, Ole Græsbøll Olesen). *Ministry of Employment (Public attorney)*
The Labor Market Appeals Board (attorney Per Magid, Copenhagen).

## Eastern High Court

In this action, brought on 30 November 2006, the applicant, the Ministry of Employment, has requested that the defendant, the Labor Appeals Board (hereinafter referred to as the Appeals Board), be ordered to acknowledge that the Appeals Board's decision of 4 September 2006 concerning B is void.

The Board of Appeal has filed a principal claim for dismissal, in the alternative acquittal.

The Ministry of Employment has, on the other hand, filed a claim that the case be heard in accordance with the claim in the application.

Pursuant to the Administration of Justice Act, section 253, subsection 1, the High Court has separated the question of whether the Ministry of Employment has jurisdiction to separate negotiation and decision.

*The decision of the Board of Appeal*

On 4 September 2006, the Appeals Board decided in an appeal case raised by B, whereby the Board changed a decision made by the Directorate of Labor on 29 May 2006. The decision has the following content:

». . .

The Board of Appeal considered your complaint at its meeting on 31 August

2006. The board took this

DECISION

They have not received adequate guidance.

They have the right to take a vacation with earned vacation pay against a deduction to the early retirement pay or to refrain from taking a vacation and receive the vacation pay without a deduction in the early retirement pay.

Please contact the unemployment insurance fund in order to receive guidance on which of these choices you wish to make.

The Board of Appeal thus amends the Directorate of Labor's decision of 29 May

2006. JUSTIFICATION

The Board of Appeal has ruled that

59

- On 10 June 2005, they handed over vacation account certificates to the unemployment insurance fund. They did not address any other inquiries to the unemployment insurance fund,

- the unemployment insurance fund certified the vacation account certificate and made deductions for the specified vacation when paying the early retirement pension. Among other things, the unemployment insurance fund has explained that it did not want to directly dissuade its members from taking a vacation, but that in June 2005 it informed its members on the website about the possibility of avoiding deductions from early retirement pay by not taking the vacation and instead withdrawing the vacation pay in cash at the end of the vacation year.

- according to the Holiday Act § 34 b, para. 3 vacation pay that has not been withdrawn by the employee before the end of the vacation year may, under certain conditions, be paid to the employee. According to § 34 b, para. 4, the vacation pay, if the employee has received an unemployment benefit, a benefit under the Childcare Leave Act or cash benefits during the vacation year can only be paid after approval by the director of the Directorate of Labor and the number of days with the mentioned benefits must be deducted from the number of days, and

- the directorate in its newsletter no. 2/2006 on the Holiday Act has stated that it is true that recipients of early retirement pay have 2 options. The member can either take a vacation with earned vacation pay against deduction in the early retirement pay or the member can refrain from taking a vacation and have the vacation pay paid after the vacation year has expired in accordance with section 34 b of the Holiday Act without deduction.

According to section 34 of the Executive Order on flexible early retirement pay, vacation with vacation allowance entails a deduction at the time of the vacation in relation to the number of vacation days taken.

Pursuant to section 65 of the Unemployment Insurance Act, the unemployment insurance fund must advise the member on the rights and obligations that follow from the Act as well as on the member's rights and obligations in general under labor market legislation.

The executive order on an unemployment insurance fund's duty to provide guidance, section 5, states that an unemployment insurance fund must always provide the individual member with individual and personal guidance if the member has a special need for this. This means that guidance must be given when a member is facing the loss of a right or that a member has, for example, misunderstood something about his rights and duties, cf. the guidance to the mentioned section 5.

In its decision, the Appeals Board has emphasized the directorate's newsletter no. 2/2006. The Board of Appeal finds no basis for a different interpretation of the rules than the Directorate's.

Against this background, the Board of Appeal finds that the unemployment insurance fund in connection with the attestation of your vacation account certificate should have provided guidance on your options for choosing between taking a vacation with earned vacation pay against deduction in the early retirement pay or to refrain from taking a vacation and receiving vacation pay after the end of the vacation year in accordance with section 34 b of the Holiday Act without a deduction.

. . . «

*The background for the Appeals Board's decision*

The background for the Appeals Board's decision was that B, who is an early retirement pension recipient, on 10 June 2005 handed in his vacation account to his unemployment insurance fund, the Leaders' Unemployment Insurance Fund. A printout from the unemployment insurance fund's vacation system states that she had planned to take a vacation from Friday 1 to Monday 11 July 2005, i.e. 6½ vacation days. According to the Leaders' Unemployment Insurance Fund, she did not request guidance or advice in connection with the vacation.

The Leaders' Unemployment Insurance Fund certified the vacation account certificate on 14 June 2005 and deducted an amount corresponding to the number of vacation days in the early retirement pay. The managers' Unemployment Insurance Fund did not contact B on its own initiative with information about the possibility of not taking a vacation and thus having their vacation pay paid out at the end of the vacation year without deduction from early retirement pay.

Following an inquiry from B, the Leaders' Unemployment Insurance Fund maintained the deduction in early retirement pay by a decision of 21 March 2006 and explained how they had generally been informed about the possibility of avoiding the deduction for vacation pay in early retirement pay, and stated that the unemployment insurance fund found that had informed correctly.

B appealed the decision to the Directorate of Labor, which, by decision of 29 May 2006, agreed that the Managers' Unemployment Insurance Fund had rightly made deductions in the early retirement pay corresponding to the number of vacation days. The Directorate of Labor assessed that the Leaders' Unemployment Insurance Fund had not adequately supervised B on vacation, and added that it was not the task of the unemployment insurance funds on their own initiative to advise on any circumvention of the early retirement and vacation day rules that would allow the member to avoid early retirement. .

B appealed the decision of the Directorate of Labor to the Board of Appeal, which on 4 September 2006 made the decision in question.

Additional information of relevance

In a newsletter on the Holiday Act (no. 2/2006) on 20 March 2006, the Directorate of Labor had informed that early retirement pension recipients and recipients of flexible benefits could choose to either take vacation with vacation pay,

against that there was a deduction in the early retirement pay or flexi-benefit, or could fail to take a vacation and have the vacation pay paid out after the end of the vacation year without a deduction in early-retirement pay or flexi-benefit.

The National Board of Appeal's Social Announcements (SM Y-2-06) state that in a case decided on 4 October 2006 in the related flexi-benefit area, the National Board of Appeal assumed that the Directorate of Labor after the Public Administration Act§7, item 1, was not obliged to advise on its own initiative about the possibility of utilizing the special rules in the Holiday Act section34 b, with the result that the

*60*

the person in question obtains double support. The announcement states, among other things:

»The Labor Directorate flexi-benefit office had stated about its supervision obligation that it could not be considered a state authority's task of its own accord to advise on how to avoid having a deduction made in the flexi-benefit - and thus obtain double support - by utilizing special rules in other legislation, e.g. the special rules in the Holiday Act §34 b on the payment of vacation allowance after the end of the vacation year.

The National Board of Appeal assumed that there was no such general supervision obligation. "

On 10 October 2006, AK-Samvirke, an industry organization for Danish unemployment insurance funds, was represented before the Folketing's Labor Market Committee. A speech paper in this connection states that AK-Samvirke estimated that the Appeals Board's decision would have significance for approx. "30,000 members who have been set off against early retirement pay and who have not received the right guidance". The speech paper further states that the cooperative recommended to the Minister of Employment to find a solution so that the state assumed responsibility for the situation that arose.

A press release issued by the Ministry of Employment on 25 October 2006 states, among other things:

»Minister of Employment Claus Hjort Frederiksen has decided to file a case against the Labor Market Appeals Board to have the Appeals Board's decision on the unemployment insurance funds' duty to provide guidance regarding the rules on deductions for vacation pay in early retirement pay reviewed.

The background is that the Labor Market Appeals Board in early September has made decisions in two cases where early retirement recipients have complained that they have been deducted for vacation pay in their early retirement pay without being instructed on the possibilities of avoiding deductions. The decisions mean that many early retirement pension recipients will be able to claim compensation for the fact that unemployment insurance funds have not told them how they could avoid having vacation pay offset in their early retirement pay.

There are two reasons why the Minister of Employment wants the Appeals Board's decision on the unemployment insurance funds' duty to provide guidance tried in a court of law: First and foremost, that the Ministry of Employment's lawyers and the Chamber Advocate have assessed that the Labor Market Appeals Board has made the wrong decision. Here it is also important that the National Board of Appeal in a related area has come to a different result than the Board of Appeal.

The other very important reason is that the Chamber Advocate has further stated that the Appeals Board's decision may have a contagious effect on other administrative areas. In the extreme, this may mean that public authorities in a large number of simple administrative cases must investigate whether there are matters that should be guided about, even if the citizen has not asked to be guided.

Minister for Employment Claus Hjort Frederiksen says about his decision:

"When both the ministry's lawyers and the Chamber Advocate say that the Appeals Board's decision is wrong, then I have

to react. In each case, we are afraid that the Board of Appeal's decision will be used as a lever for demands for extensive guidance to other authorities. There is therefore a great risk that we will in any case get a lawsuit on the issue in the near future. We are therefore not achieving anything by pinching a lawsuit now.

I therefore believe that I and the government have an obligation to have the courts review whether the Appeals Board's decision is correct. "

. . .

The fact that the Ministry of Employment is suing the courts does not mean that the members of the unemployment insurance funds will hang on to a huge bill:

"If we win the case, then the boxes are acquitted of having to provide guidance, even if the member had not asked for it. Thus, the funds do not have to compensate the members for not having received a deduction. And if we lose the case, I am prepared to pay reimbursement to the unemployment insurance funds in those cases where no guidance has been requested. We ourselves have had the same opinion as the cashiers, and I therefore do not think it is fair if they have to bear the bill alone.

But it will also be the case that it is the unemployment insurance fund that has to pay in the cases where the member has asked for guidance and has been guided incorrectly - just as it always applies. I think that is only reasonable, "concludes Claus Hjort Frederiksen."

In his application in the present case, the Bar Advocate has stated that reimbursement to the unemployment insurance funds will entail a significant expense for the state - probably in the order of DKK 400-600 million.

In response to an inquiry from lawyer Lars Svenning Andersen on behalf of AK-Samvirke, the Ministry of Employment on 30 November 2006 refused to grant reimbursement to the unemployment insurance funds in cases where the unemployment insurance funds, following a member's request for guidance on vacation and early retirement rules, incorrect or insufficient guidance in this regard. The Chamber Advocate has informed the High Court that AK-Samvirke has brought an action before the Copenhagen City Court against the Ministry of Employment in connection with this.

*Amendment of the Holiday Act with Act No. 1200 of 27 December 2003.*

The parties have informed the High Court that the specific question of guidance on the rules on vacation pay has arisen as a result of an amendment to the Holiday Act, which was implemented by Act amending the Holiday Act (Payment of unclaimed vacation pay), cf. Act no. 1200 of 27

*61*

December 2003, which entered into force on 1 January 2004, whereby the Holiday Act was amended so that unclaimed vacation pay can in certain cases be paid to the employee after the end of the vacation year.

In this connection, the parties have drawn particular attention to the following in relation to the bill:

In connection with the preparation of the bill, Søren Balslev, head of office in the Directorate of Labor, prepared an internal memorandum of 18 June 2003 to the then head of employment at the Ministry of Employment, Ejnar Edelberg. The memorandum states that the possibilities for securing against double support were discussed. The Directorate's view was that "the insurance against double maintenance should take place in the respective transfer income systems, which are traditionally benefits under the Unemployment Insurance, Leave and Cash Benefit Act." The adjustment should thus not be made by deduction of the vacation pay.

With section 34 b, subsection 4, a scheme was introduced to ensure against double maintenance upon receipt of unemployment benefits, benefits under the Childcare Leave Act or cash benefits during the vacation year. Insurance against double maintenance when receiving early retirement pay is not provided for in the law or the preparatory work.

One consequence of the change in the law was that no deduction would be made in early retirement pay if the vacation pay was paid out after the end of the vacation year. If vacation pay was paid out during the vacation year, as before, a deduction should be made in the early retirement pay.

Notes of 27 January 2004 and 29 January 2004 have been submitted to the High Court, both of which were sent from the Directorate of Labor to the head of department in the Ministry of Employment. In the memorandum of 27 January 2007, it was recommended to the head of department that »no rules be laid down on deductions, etc. in the transfer income for the payment of vacation pay according to the new rules at present. "It is stated in the memorandum that it is the Directorate's opinion that the set-off rule in the set of rules will involve bureaucratization. In relation to transfer income, the memorandum of 29 January 2004 states that there is no need to make rule changes, but that the issue can be addressed if the rules have an unintended use.

With [Executive Order no. 335 of 19 April 2006](Executive Order no. 335 of 19 April 2006) amending the Executive Order on flexible early retirement pay, which entered into force on 29 April 2006, the Executive Order was amended so that deductions must be made in the early retirement pay upon payment of vacation pay at the time when the member receives the vacation pay.

*Procedure of the parties*

In particular, the Ministry of Employment has argued that the Ministry has the necessary legal interest in having the legality of the legal view on which the Board of Appeal based the decision in question is tested. No special legal basis can be required in support of jurisdiction in this case. The Minister of Employment has a supervisory obligation to authorities within his area of responsibility. Such a supervisory obligation belongs in principle to any minister, but is otherwise specifically provided for in the Labor Insurance Act. The need for a court decision is mainly due to the fact that the Board of Appeal and the National Board of Appeal in 2 related areas of law have made opposite decisions on the duty to provide guidance when an employee has not asked for guidance himself. Thus, there is not the uniformity in practice that was assumed when the two appellate bodies were given a joint secretariat by an amendment to the law in 2004. The independence of the Board of Appeal is not challenged by a judicial review of the Board's decision in a case brought by the responsible minister. Nor can it lead to inadmissibility that the case has been brought between two state authorities. In recent practice, it has been recognized that the courts can deal with disputes between state authorities, and a judicial decision is the only way to obtain a clarification in the present situation. B does not suffer any loss of rights if the case is brought to a substantive hearing and a judgment is handed down in accordance with the Ministry of Employment's claim, as B's relationship is only a matter between the unemployment insurance fund and her. Whether there is a legal obligation to reimburse the unemployment insurance funds' post-payment to those early retirement pay recipients who, as a result of the Appeals Board's decision, must have paid the deducted early retirement pay, or whether it is only a matter-of-fact reimbursement, is irrelevant to the High Court's decision.

In particular, the Board of Appeal has argued that the Ministry of Employment does not have the necessary concrete - financial or other - interest in this action. The Minister has no power of instruction vis-à-vis the Board of Appeal regarding the processing and decision of the individual cases. It will mean a restriction of the board's real independence if a ministry that disagrees with the board's decisions can bring an action against the board.
The Ministry of Employment is not a party to the decision taken and is not directly affected by the decision, which has a narrow scope and which is of no significance for the ministry's future exercise of authority, as the legislation has been changed. There is no discrepancy between the Appeals Board's decision, which deals with the unemployment insurance funds 'duty to provide guidance, and the National Board of Appeal's decision, which concerns the public authorities' duty to provide guidance. The unemployment insurance funds are required by law to have a higher duty to provide guidance than that which follows from [the Public Administration Act](the Public Administration Act). The Ministry's general management interest as responsible for the legislation on unemployment funds

guidance cannot in itself justify a legal interest. The fact that the Ministry of Employment has given a commitment to exempt the unemployment insurance funds from the loss they may suffer as

62

a result of the Appeals Board's decision, may not form the basis of a legal interest. It will have far-reaching unintended consequences if the Ministry of Employment is granted a legal interest in this case, where a decision will mostly have the character of a response. In addition, this is a favorable decision for a citizen who is not involved in the case. Jurisdiction for the Ministry of Employment would require special

legal authority.

## Justification and result of the High Court:

By the Board of Appeal's decision of 4 September 2006, the Board amended a decision made by the Directorate of Labor on 29 May 2006, so that the complainant, B, was given the opportunity to either take a vacation with earned vacation pay against a deduction in the early retirement pay or to refrain from taking a vacation and have the vacation pay paid without a deduction in the early retirement pay. The reason for this was that the board found that her unemployment insurance fund of its own accord should have guided her about the option, even though she had not approached with a request for such guidance.

Although the decision may imply that payments must be made in the order of DKK 400-600 million. DKK to early retirement pension recipients, the High Court does not find that the Ministry of Employment has a financial interest in the decision made, which can justify legal action. The High Court hereby emphasizes that the Ministry has not been legally obliged to indemnify the unemployment insurance funds for the loss they may suffer as a result of the Appeals Board's decision, but has chosen to offer to exempt the unemployment insurance funds on the basis of more strict considerations.

The decision made by an independent appeals board has no direct significance for the Ministry of Employment's performance of its task. Furthermore, the decision does not affect the unemployment insurance funds' future guidance on vacation legislation, as the legislation has been changed. The fact that there may be a discrepancy between the Appeals Board's decision and a decision made by the National Board of Appeal in a related - but not identical - area cannot justify a legal interest in the Ministry of Employment in a lawsuit against another state authority. It is hereby noted that there is an opportunity for legislation to consider any unintended discrepancies.

Finally, as the High Court does not find that the Minister of Employment's general duty of supervision vis-à-vis authorities within its jurisdiction can at least in the present circumstances justify that the Ministry has a legal interest in having a judicial review of the specific question of the extent of the duty to provide guidance, the Ministry of Employment lacks jurisdiction. why the Labor Market Appeals Board's claim for rejection is upheld.

Considering the nature of the case and the scope of the case preparation until the admissibility procedure, the costs of the case are determined as determined below.

## The judgement of the court:

*This case is inadmissible.*

*In case costs, the Ministry of Employment must pay DKK 50,000 to the Labor Market Appeals Board within 14 days.*

**Footnotes**

The Danish Realm's Audit Report to the State Auditors on the payment of unclaimed vacation pay to early retirement recipients, September 2008, p. 25 ff.



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK      )
                       )              ss:
COUNTY of NEW YORK     )

### CERTIFICATE OF ACCURACY

This is to certify that the attached document, "UfR 2009.58 Ø" - originally written in Danish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 4/14/2022

_____
Heather Cameron
Projects Manager
Consortra Translations

Sworn to and signed before ME
This 14th day of April, 2022

_____
Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your legal translation partner

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  Hong Kong