# Exhibit 48

Retsinformation

**Date printed: November 12, 2021**

**Danish Consolidated Act No. 322 of April 11, 2011 (Historic)**

Danish Executive Order on the Danish Act on Public Limited Companies and Private Limited Companies (The Danish Companies Act)

| Ministry: The Danish Ministry for Industry, Business and Financial Affairs | Journal number: The Danish Ministry for Industry, Business and Financial Affairs, The Danish Business Authority, Journal no 2011-0024287 |
| --- | --- |

**Later amendments to the regulation**

Danish Act No. 477 of 30 May 2012, § 1 - Danish Act No. 1231 of 18 December 2012, § 1 –

Danish Act No. 1383 of 23 December 2012, § 1 – Danish Act No. 616 of 12 June 2013, § 1 –

Danish Act No. 634 of 12 June 2013, § 5 - Danish Act No. 1367 of 10 December 2013, Section 2

Danish Act No. 1284 of 9 December 2014, § 47 – Danish Consolidated Act No, 610 of 28 April 2015

Danish Executive Order on Public and Private Limited Companies (the Danish Companies Act) (lov om aktie-
og anpartsselskaber (selskabsloven))[1)]

Notice is hereby given of the Danish Act on Public and Private Limited Companies (The Danish Companies
Act), Act No. 470 of 12 June 2009, with the amendments following from § 1 in Act No. 159 of 16 February
2010, § 20 in Act No. 718 of 25 June 2010, § 2 in Act No. 720 of 25 June 2010 and § 1 in Act No. 1557 of 21
December 2010.

The provisions of the Act are supplemented by temporary provisions, which are stipulated in §§ 7 and 8 of
Announcement No. 172 of 22 February 2010 regarding partial consolidation of the Danish Act on Public and
Private Limited Companies (The Danish Companies Act).

Part 1

*Scope of the Act, etc.*

*Scope*

**§ 1.** *(1)* This Act applies to all public and private limited companies (limited liability companies).
*(2)* The holders of shares in public and private limited companies (the shareholders) are not personally liable
for the obligations of the limited liability company but are liable only to the extent of their contributions. The
shareholders have a right to a share of the profits of the limited liability company in proportion to their
ownership interest, unless otherwise provided by the company's articles of association.
*(3)* A private limited company may not offer its shares to the public.

*Name of the limited liability company*

**§ 2.** *(1)* Only public and private limited companies have the right and duty to use in their names the
designations "aktieselskab" (in English, public limited company) and "anpartsselskab" (in English, private
limited company) respectively, or the abbreviations "A/S" and "ApS" respectively.
*(2)* The name of a limited liability company must be clearly distinguishable from the names of other businesses
registered with the Danish Commerce and Companies Agency (Erhvervs- og Selskabsstyrelsen). The name may
not include any family name, business name, distinctive name of real property, trademark, distinctive mark or
similar feature not belonging to the limited liability company, or anything likely to cause confusion with such
name or mark.
*(3)* The name of a limited liability company must not be capable of being misleading. Where the name of a
limited liability company indicates a specific activity, the company may not continue using that name if the
company significantly changes its principal activity.
*(4)* Limited liability companies must specify their name, registered office and Central Business Register (CVR)
number on letters and other business papers, including electronic messages and on their website.

**§ 3.** *(1)* § 2 also applies to any secondary names of limited liability companies.
*(2)* If a limited liability company registers more than five secondary names, an amount of DKK 1,000 will be
payable for each secondary name. However, this requirement does not apply to secondary names that pre-date
any reorganization, merger or division.

*Share capital*

**§ 4.** *(1)* Limited liability companies within the meaning of this Act must have a share capital to be denominated
in Danish kroner or euro, cf. subsection 3.
*(2)* Public limited companies must have a minimum share capital corresponding to DKK 500,000 and private
limited companies must have a minimum share capital corresponding to DKK 80,000.
*(3)* The Commerce and Companies Agency may prescribe detailed rules governing the right to denominate the
share capital in a currency other than Danish kroner or euro.

*Definitions*

**§ 5.** *(1)* In this Act, the following terms have the following meanings:
1) *Public limited company:*
A limited liability company, including a limited partnership company, in which the capital paid in by the
shareholders is divided into shares. The shares may be offered to the public. Shareholders are liable only to the
extent of their contributions to the company.
2) *Private limited company:*

A limited liability company in which the capital paid in by the shareholders is divided into shares. Private limited companies may not offer their shares to the public, see § 1, subsection 3. Shareholders are liable only to the extent of their contributions to the company.

3) *Subsidiary:*

A business controlled by a parent company, see §§ 6 and 7.

4) *The central governing body:*

    a) the board of directors of companies having a board of directors, see § 111, subsection 1, paragraph 1;

    b) the executive board of companies having only an executive board, see § 111, subsection 1, paragraph 2; and

    c) the executive board of companies having both an executive board and a supervisory board, see § 111, subsection 1, paragraph 2;

5) *The supreme governing body:*

    a) the board of directors of companies having a board of directors, see § 111, subsection 1, paragraph 1;

    b) the executive board of companies having only an executive board, see § 111, subsection 1, paragraph 2; and

    c) the supervisory board of companies having both an executive board and a supervisory board, see § 111, subsection 1, paragraph 2;

6) *Shareholders' agreement:*

An agreement governing the ownership and management of the company entered into between the shareholders.

7) *Share certificates:*

Evidence of ownership of a share, see §§ 59 and 60.

8) *Register of shareholders:*

A complete register of all shareholders that must be kept by the limited liability company, see § 50.

9) [2]) *Public register of shareholders:*

The register kept by the Commerce and Companies Agency that records the shareholdings of certain shareholders, see § 58.

10) *Bonus shares:*

Shares issued in connection with a bonus share issue, see § 165.

11) *Cross-border relocation of registered office:*

A limited liability company's relocation of its registered office from one EU or EEA Member State to another EU or EEA Member State.

12) *Cross-border merger or division:*

A merger or division involving limited liability companies which are subject to the laws of at least two different EU or EEA Member States.

13) *Registered office:*

The address in Denmark at which the company may be contacted.

14) *Share:*

A share as specified in, see §§ 45 to 49.

15) *Shareholder:*

An owner of one or more shares.

16) *Share class:*

A group of shares carrying the same rights or obligations.

17) *Limited liability company:*

A private limited company or a public limited company, including a limited partnership company.

18) *Group:*

A parent company and its subsidiaries, see § 7.

19) *Management:*

All of the bodies specified in paragraphs 4 and 5 of this §. Any member of management may be a member of the company's supervisory board, board of directors or executive board.

20) *Parent company:*

A limited liability company controlling one or more subsidiaries, see §§ 6 and 7.

21) *Limited partnership company:*

A limited partnership, see § 2, subsection 2 of the Danish Act on Certain Commercial Enterprises (lov om visse erhvervsdrivende selskaber)) in which the limited partners have contributed a certain amount of capital which is divided into shares, see Part 21 of this Act.

22) *Restoration:*
Temporary reinstatement of a company after it has been deleted from the IT system of the Commerce and Companies Agency, see § 235.

23) *Public limited shipping company:*
A public limited company carrying on shipping activities, see § 112, subsection 2.

24) *Date of registration:*
The date on which a shareholder's right to attend and vote on his shares at a general meeting is determined.

25) *Capital represented:*
Voting or non-voting shares represented at the general meeting and carrying the right of representation as provided by the articles of association.

26) *Right of representation:*
A right that can be attached to non-voting shares, allowing the shareholder to attend general meetings and be counted in the assessment of capital represented at the general meeting. Voting shares always carry a right of representation, see § 46.

27) *Share capital:*
The contribution amount representing the extent of shareholder liability under this Act, see § 4.

28) *State-owned public limited companies:*
A public limited company with which the Danish Government has a connection similar to that of a parent company and a subsidiary, see §§ 6 and 7.

*Groups*

**§ 6.** *(1)* A group consists of a parent company and one or more subsidiaries. No business may have more than one direct parent company. If more than one company satisfies one or more of the criteria in, see § 7, only the company that has actual control of the financial and operating decisions of the business is deemed to be the parent company.

**§ 7.** *(1)* Control means the power to exercise decisive influence over a subsidiary's financial and operating decisions.

*(2)* Control of a subsidiary exists where the parent company owns, directly or indirectly through a subsidiary, more than half of the voting rights in a business, unless, in exceptional circumstances, it can be clearly demonstrated that such ownership does not constitute control.

*(3)* Where a parent company holds half or less than half of the voting rights in a business, control exists if the parent company has

1) the power to exercise more than half of the voting rights by virtue of an agreement with other investors;

2) the power to control the financial and operating policies of a business under any articles of association or agreement;

3) the power to appoint or remove the majority of the members of the supreme governing body, and this body has control of the business; or

4) the power to exercise the actual majority of votes at general meetings or an equivalent body and thus the actual control of the business;

*(4)* The existence and effect of potential voting rights, including rights to subscribe for and purchase shares that are currently exercisable or convertible, must be considered when assessing whether a company has control;

*(5)* Any voting rights attaching to shares owned by the subsidiary itself or by its subsidiaries must be disregarded in the determination of the voting rights in a subsidiary.

*Powers of the bankruptcy courts and the Maritime and Commercial Court*

**§ 8.** *(1)* Any powers granted to the bankruptcy courts under this Act must be exercised by the bankruptcy court that has jurisdiction over the place where the company's registered office is situated. However, such powers must be exercised by the Maritime and Commercial Court in Copenhagen for areas that fall within the jurisdiction of the Copenhagen City Court, the Court of Frederiksberg, and the Courts of Glostrup and Lyngby, see § 4 of the Danish Bankruptcy Act (konkursloven)).

Part 2

*Registration and time limits*

*Registration*

**§ 9.** *(1)* All information to be registered under this Act must be recorded in the Commerce and Companies Agency's IT system no later than two weeks after the date of the operative resolution, unless otherwise provided by or under this Act. Where the applicant does not register the information directly in the Commerce and Companies Agency's IT system, see § 12, subsection 2, paragraph 1, an application for registration must be received by the Agency no later than two weeks after the date of the operative resolution.
 *(2)* The company's central governing body is responsible for ensuring that the information is registered, or that an application for registration is filed with the Commerce and Companies Agency.
 *(3)* Subsections 1 and 2 also apply to the publication of documents and other notices in the Commerce and Companies Agency's IT system. Where the applicant does not publish the document or notice in the Commerce and Companies Agency's IT system, see § 12, subsection 2, paragraph 2, the Agency must receive the document or notice no later than two weeks after the date of the relevant event.

**§ 10.** *(1)* All members of the executive board, board of directors and supervisory board of a limited liability company as well as the company's auditor, if applicable, must be registered in the Commerce and Companies Agency's IT system.
 *(2)* If an auditor, see § 144, subsection 1, resigns or is removed before the end of his term, the registration of that information or the application for registration must be accompanied by an adequate account by the central governing body of the reason for such termination of office.

**§ 11.** *(1)* Any amendment to the articles of association of a limited liability company or changes to any other information registered with the Commerce and Companies Agency must be registered directly in the Agency's IT system or submitted to the Agency for registration, see § 9.

**§ 12.** *(1)* Applications for registration, financial statements and other documents received by the Commerce and Companies Agency under this Act may be in hard copy or electronic form, cf. subsection 2. The documents have equal legal status, whatever their form. Where this Act requires a document to be signed, such requirement may be satisfied by a personal signature, an automatically reproduced signature, or a digital or similar electronic signature.
 *(2)* The Commerce and Companies Agency prescribes rules on
1) the use of and registration in the Agency's IT system, including which information the applicant can or must register;
2) the publication of documents and other notices, including which documents and notices the applicant can or must publish in the Agency's IT system;
3) the electronic filing of documents with the Agency under this Act, including which documents the applicant can or must file electronically, the form of the documents filed, the requirements of the electronic systems used, and the use of electronic signatures;
4) which information must be made available to the public as soon as possible,
5) whether information, etc. must be made available to the public;
6) fees for registration, printouts and other services, fees for announcements, fees for use of the Agency's IT system, and fees for reminders, etc. in connection with late payment and

7) the payment of an annual fee for the administration of the provisions of this Act and for services for which no particular price has been fixed.

**§ 13.** *(1)* The Commerce and Companies Agency may prescribe rules stipulating the language to be used in the documentation submitted in connection with registrations or applications for registration by limited liability companies.

*(2)* The Agency prescribes rules stipulating that voluntary registration and publication of company information may also be made in any other official language of the European Union in addition to the statutory publication in one of the languages permitted under subsection 1.

*(3)* If there is any inconsistency between the documents and information that are subject to compulsory registration and publication under subsection 1 and any translations of such documents and information that have been voluntarily published under subsection 2, the company cannot rely on the translation as against third parties. However, third parties may rely on the text that has been voluntarily published as against the company, unless it is established that the third party had knowledge of the registrable version published in the IT system of the Commerce and Companies Agency. Section 9, subsection 1, does not apply to documents published voluntarily.

**§ 14.** *(1)* The Commerce and Companies Agency keeps a register of companies registered under this Act. All registrations and publications under this Act must be made in the Agency's IT system.

*(2)* All information published in the IT system is deemed to have been communicated to third parties. However, the first sentence does not apply to transactions made on or before the 16th day after the date of publication if it is established that the third party could not have known about the published information.

*(3)* Information that is required to be registered and published cannot be enforced against third parties until it has been published in the IT system, unless it is established that the third party knew about the information. Third parties are not prevented from relying on information that has not yet been published.

**§ 15.** *(1)* Information cannot be registered if it does not comply with the provisions in or made under this Act, or the company's articles of association. The subject matter of any resolution cannot be registered if the resolution has not been passed in accordance with the provisions in or made under this Act, or the company's articles of association.

*(2)* Any applicant registering information directly or filing an application for registration in the IT system of the Commerce and Companies Agency warrants that the registration or application is lawful, including that the applicant is duly authorized, and that the documentation required for the registration or application is valid.

*(3)* Subsections 1 and 2 also apply to documents, etc. published in the IT system of the Commerce and Companies Agency or filed with the Agency for publication, etc. under this Act.

**§ 16.** *(1)* If the Commerce and Companies Agency believes that there is an error or defect in any information that has been filed for registration, and the error or defect can be rectified by a resolution of the general meeting or the central governing body of the limited liability company, the Agency may set a deadline for remedying the matter. If the defect is not remedied within the time stipulated, registration cannot be made.

*(2)* If registration is refused under subsection 1, the applicant must be notified in writing to such effect, including the reason for non-registration.

*(3)* If the Commerce and Companies Agency learns that the legality of any registration, whether pending or completed, is questionable, the Agency may decide to discontinue registrations under § 9, subsection 1 until the matter has been clarified. The applicant must be notified in writing that registration cannot take place, including the reason for non-registration. The Agency may also publish a statement in its IT system explaining the reason for the decision.

*(4)* For matters falling within subsection 3, the Commerce and Companies Agency may also register any resignations of management.

**§ 17.** *(1)* The Commerce and Companies Agency may request any information necessary to determine whether a limited liability company is in compliance with this Act, any rules made pursuant to this Act, and the company's articles of association.

 *(2)* For the purposes of direct registration or an application for registration under the rules in this Part of the Act, the Commerce and Companies Agency may request evidence of legal registration or application for registration for up to three years after the date of registration. In special cases, the Agency may also demand that the company submit a declaration by an auditor that the financial transactions relating to the registration or the application for registration were legal. If the requirements in the first and second sentence are not complied with, the Agency will set a time limit for remedying such non-compliance. If remedial action is not taken within the time stipulated, the Agency may, if necessary, take steps to have the limited liability company dissolved under the rules in § 226.

**§ 18.** *(1)* Particulars of the names and addresses of a company's promoters and the names, positions and addresses of the members of management must be available at any time in the IT system of the Commerce and Companies Agency, whether the company is active or has been dissolved. The Agency can make rules stipulating that certain information is not to be disclosed.

 *(2)* The personal information in subsection 1 will stop being updated once ten years have passed since the person in question ceased to be registered in respect of a business registered in the Agency's IT system.

**§ 19.** *(1)* Letters, printouts and any other documents issued by the Commerce and Companies Agency can be in either hard copy or electronic form. The documents have equal legal status, whatever their form. The documents may be signed or unsigned and may include an automatically reproduced signature, or a digital or similar signature at the Agency's discretion. However, the authenticity of electronic documents must be confirmed by a digital or similar electronic signature.

**§ 20.** *(1)* If anyone asserts, except as provided in § 109, that the registration of a resolution passed by the general meeting or the management of a company is detrimental to them, the question of deregistration is to be determined by the courts.

 *(2)* Such legal proceedings must be commenced against the company within six months from the date of publication of the registration in the Commerce and Companies Agency's IT system. The court will send a transcript of the judgment to the Agency for publication of the outcome of the case in the Agency's IT system.

*Time limits*

 **§ 21.** *(1)* Where it is provided in this Act or in any rules or regulations made pursuant to this Act that an action can or must be taken within a certain number of days, weeks, months or years before a specific event, the time allowed for taking such action is calculated from the day before the event.
*(2)* If the time limit for acting expires on a weekend, public holiday, 5 June (Constitution Day), 24 December or 31 December, action must be taken on or before the last preceding working day.

 **§ 22.** *(1)* Where it is provided in this Act or in any rules or regulations made pursuant to this Act that an action or a decision cannot be taken or made until a certain number of days, weeks, months or years after a specific event has occurred, the time allowed for taking such action or making such decision is calculated from the day after the event. Such action or decision can only be taken or made from the day after expiry of the time limit.

**§ 23.** *(1)* Where it is provided in this Act or in any rules or regulations made pursuant to this Act that an action must be taken within a certain number of days, weeks, months or years after a specific event has occurred, the time allowed for taking such action is calculated from the day after the event, see subsections 2 to 4.

*(2)* If the time limit in subsection 1 is stated in weeks, the time limit for acting expires on the same day of the week that the event took place.

*(3)* If the time limit in subsection 1 is stated in months, the time limit for acting expires on the same day of the month that the event took place. If the event took place on the last day of a month, or if the time limit expires on a date that does not exist in that month, the time limit always expires on the last day of the month, irrespective of the number of days in that month.

*(4)* If the time limit in subsection 1 is stated in years, the time limit for acting expires on the anniversary of the date of the event.

*(5)* If the time limit expires on a weekend, public holiday, 5 June (Constitution Day), 24 December or 31 December, action must be taken on or before the next working day.

*Part 3 Formation*

*Promoters*

**§ 24.** *(1)* A limited liability company can be established by one or more promoters.

*(2)* A promoter must not have had any application for suspension of payments filed against them and must not be the subject of any pending bankruptcy proceedings.

*(3)* If the promoter is a natural person, that person must have full legal capacity and may not be under guardianship under § 5 of the Danish Guardianship Act (værgemålsloven), nor may any surrogate decision maker have been appointed for the promoter under § 7 of the Guardianship Act.

*(4)* If the promoter is a legal person, that person must be authorized to acquire rights, enter into commitments and be a party to legal proceedings.

*Memorandum of association*

**§ 25.** *(1)* The promoters must sign a memorandum of association, which includes the articles of association of the limited liability company.

**§ 26.** *(1)* The memorandum of association must specify
1) the names, addresses and Central Business Register (CVR) numbers, if applicable, of the promoters of the limited liability company;
2) the subscription price of the shares;
3) the time limits for subscribing and paying for the shares;
4) from which date formation takes legal effect, see § 40, subsection 3 to 5;
5) from which date formation takes effect for accounting purposes, see § 40, subsection 6 and
6) whether the limited liability company must pay the initial expenses and, if so, the estimated amount of such expenses.

**§ 27.** *(1)* The memorandum of association must also include provisions on the following matters if so resolved:
1) special rights or benefits accruing to the promoters or others;
2) any agreement entered into with the promoters or others that may impose a major financial obligation on the limited liability company;
3) that shares may be subscribed against contribution of assets other than cash, see § 35;
4) that the annual report of the limited liability company is not to be audited if the company qualifies for an audit exemption under the Danish Financial Statements Act (årsregnskabsloven) or any other statute; and
5) the amount of the subscribed share capital that is paid up at the date of formation.

*(2)* In the memorandum of association, the promoters must give an account of the circumstances affecting the assessment of the provisions included pursuant to subsection 1. The account must include the names and addresses of the persons who are subject to the provisions.

*(3)* Documents that are referred to in the memorandum of association without their main contents being reproduced must be annexed to the memorandum of association.

*(4)* Agreements on matters that are dealt with but not approved in the memorandum of association are not enforceable against the limited liability company.

*Articles of association*

**§ 28.** *(1)* The articles of association of a limited liability company must include information on:
1) the company's name and any secondary name(s);
2) the company's object(s);
3) the amount of the share capital and the number or nominal value of the shares;
4) the rights attaching to the shares;
5) the company's governing bodies;
6) notice of general meetings; and
7) the company's financial year;

**§ 29.** *(1)* The articles of association of a limited liability company must also specify the resolutions to be included in the articles of association as required by this Act and the latest date for termination of the company if its existence is time limited.

*Subscriptions for share capital*

**§ 30.** *(1)* Any subscription for shares must be specified in the memorandum of association with appendices (if any).

**§ 31.** *(1)* No share subscriptions may be made subject to reservations or at a discount.

**§ 32.** *(1)* The promoters decide whether to accept subscriptions for shares, cf. § 31.

*(2)* Where shares are oversubscribed, the promoters must decide how many shares to allot to each individual subscriber before registration or application for registration, see §§ 9 and 40. No promoter may be allotted shares of a smaller amount than that subscribed for by that promoter in the memorandum of association.

*(3)* The promoters must notify any subscriber for shares in a limited liability company as soon as possible if
1) the subscription is not accepted;
2) the promoters consider the subscription to be invalid; or
3) the amount subscribed for has been reduced because of oversubscription.

*(4)* Any proposal to form a limited liability company with a larger or smaller share capital than that specified in the articles of association is subject to the consent of all promoters and subscribers for capital, see § 39, subsection 2.

*(5)* Where the share capital or any prescribed minimum capital has not been fully subscribed for and accepted by the promoters, the formation of the limited liability company and the subscribers' obligations lapse. Any amount paid on the shares must be refunded. However, all initial expenses may be deducted from the refunded amount where so stipulated in connection with the subscription.

*Payment of share capital*

**§ 33.** *(1)* An amount equal to 25% of the share capital, but not less than DKK 80,000, must be paid up at all times. Where a premium is fixed, it must be fully paid up, notwithstanding that part of the share capital is not paid up. Payment must be made on each individual share. However, where all or part of the share capital is paid up by way of non-cash contributions, see § 35, the entire share capital must be paid up.

*(2)* The limited liability company's central governing body may call up share capital that has not been paid up. Two weeks or more must be allowed for payment. The articles of association may provide a longer period for payment, but this must not exceed four weeks.

*(3)* The limited liability company's claims for payment on shares cannot be transferred or used as security.

*(4)* If the amount of the share capital is stated on the limited liability company's letters and other business papers, including electronic messages, and on the company's website, both the subscribed and the paid-up share capital amounts must be stated.

**§ 34.** *(1)* The rights of a shareholder under this Act subsist regardless of whether their shares are fully paid up, cf. subsection 3.

*(2)* A shareholder must make payment on a share upon request from the central governing body, see § 33, subsection 2. However, any shareholder is entitled to pay the amount outstanding on a share at any time, notwithstanding that the central governing body has not called up such capital. In that case, the shareholder must pay the full amount outstanding on the share, unless otherwise provided by the articles of association.

*(3)* If a shareholder has failed to duly comply with the central governing body's request for payment of the amount outstanding on a share, the shareholder may not exercise the voting rights attaching to any part of his shareholding in the limited liability company at general meetings and his shares will be considered unrepresented at general meetings until the amount has been paid to and registered by the company. However, this does not apply to the right to dividends and other payments, nor to the right to subscribe for new shares in connection with a capital increase. The central governing body may set off the limited liability company's claim for payment of the share capital against distributions from the company which the shareholder is entitled to receive as a shareholder.

*(4)* Shareholders cannot set off a claim against the limited liability company against their obligation to pay outstanding amounts without the consent of the company's central governing body. Such consent may not be given if the set off may be detrimental to the limited liability company or its creditors.

*(5)* Shareholders cannot contribute assets other than cash to the limited liability company in discharge of their obligations to pay outstanding amounts without the consent of the company's central governing body. Such consent may not be given if the contribution may be detrimental to the limited liability company or its creditors. A valuation report must also be prepared under the provisions of §§ 36 and 37, unless the contribution is governed by § 38.

*(6)* Where a shareholder transfers a share that has not been fully paid up, he will be jointly and severally liable with the transferee and any subsequent transferees for payment of the outstanding amount on the share.

*Special provisions on non-cash contributions*

**§ 35.** *(1)* Any contribution of assets other than cash - a non-cash contribution - must have a value that can be expressed as a money equivalent and may not consist of an obligation to do work or perform services.

*(2)* Claims against promoters or shareholders may not be contributed or acquired, regardless of whether the claims are secured by a charge.

**§ 36.** *(1)* If the limited liability company is to acquire assets other than cash, the memorandum of association must be accompanied by a valuation report. The report must include

1) a description of each contribution;

2) information on the valuation method applied;

3) the amount of the consideration to be paid for the acquisition; and

4) a declaration that the financial value of the assets as assessed in the report is no less than the agreed consideration, including the nominal value of the shares to be issued, if applicable, and any premium on them.

*(2)* The valuation may not be made more than four weeks before the date of signing of the memorandum of association. If the four-week period is exceeded, a new valuation must be made.

*(3)* Where, in connection with its formation, the limited liability company acquires an existing business or a controlling interest in another limited liability company, the valuation report must also include an opening balance sheet for the limited liability company. The opening balance sheet must be prepared in accordance with the Danish Financial Statements Act. The opening balance sheet must be without any qualifications. If the limited liability company is subject to audit obligations under the Financial Statements Act or any other statute, the opening balance sheet must contain an unqualified audit report.

**§ 37.** *(1)* The valuation report must be prepared by one or more impartial valuation experts. The promoters can appoint as valuation experts approved auditors or persons appointed by the Danish Minister of Justice as expert nominees in connection with negotiations for compulsory compositions. In other cases, valuation experts may be appointed by the bankruptcy court that has jurisdiction over the place where the limited liability company's registered office is to be situated.

*(2)* Sections §§ 133 and 149 of this Act and § 24 of the Danish Act on Registered and State-Authorized Public Accountants (revisorloven) also apply to valuation experts.

*(3)* The valuation experts must be allowed to make any investigation deemed necessary by them and may request any information and assistance from the promoters or the limited liability company that is required for the performance of their work.

**§ 38.** *(1)* The requirement for the preparation of a valuation report under § 36, subsection 1 does not apply to contributions of:

1) Assets measured individually and presented in financial statements or consolidated financial statements for the previous financial year that have been prepared in accordance with the provisions of the Danish Financial Statements Act or international accounting standards (as specified in the Regulation of the European Parliament and of the Council on the application of international accounting standards) in accordance with accounting rules included in or made under financial services law, or in the financial statements of a foreign business prepared under the rules of the Fourth Council Directive of 25 July 1978 (78/660/EEC), as amended, or the Seventh Council Directive of 13 June 1983 (83/349/EEC), as amended, and containing an audit report.

2) Securities or money market instruments recorded at the average price at which they have been traded on one or more regulated markets over the four weeks preceding the date of signing of the memorandum of association. However, a valuation report must be prepared in accordance with § 36, subsection 1 if the central governing body of the limited liability company assesses that the average price is affected by extraordinary circumstances or otherwise cannot be assumed to reflect the current value.

*(2)* The central governing body of the limited liability company is responsible for ensuring that contributions made under subsection 1 are not detrimental to the company, its shareholders or creditors, and must issue a declaration containing

1) a description of the asset and its value;

2) information on the valuation method applied;

3) a statement that the values stated at least correspond to the value of and, if applicable, the premium on the shares to be issued as consideration for the contribution; and

4) a statement that no new circumstances have arisen that affect the original valuation.

*(3)* The central governing body must publish its declaration under subsection 2 in the Commerce and Companies Agency's IT system on or before the date of registration or application for registration of the company's formation.

*Election of management and, if applicable, auditor, etc.*

**§ 39.** *(1)* Where the management and auditor, if applicable, of the limited liability company have not been elected in connection with the company's formation, the promoters must hold a general meeting to elect the management and auditor no later than two weeks after signing the memorandum of association. The company's formation and the elected management and auditor, if applicable, must be registered directly or an application for registration must be filed as provided in § 9.

*Registration*

**§ 40.** *(1)* The limited liability company must be registered directly in the Commerce and Companies Agency's IT system or an application for registration must be submitted, see § 9 no later than two weeks after the date of signing of the memorandum of association. If no registration has been made or no application for registration has been received by the Commerce and Companies Agency before expiry of the two-week period, the company cannot be registered.

*(2)* The limited liability company may only be registered if at least 25% of the aggregate share capital, but not less than DKK 80,000, see § 4, subsection 2 has been paid up, see § 33, subsection 1, first sentence. Where a premium has been fixed, this must be paid up in full, see § 33, subsection 1, second sentence. For registration or application in accordance with subsection 1,

proof must be submitted that the share capital has been paid into the company no later than when the registration or application takes place.

 *(3)* The formation of the limited liability company will be effective from the date of signing of, or from any later date specified in, the memorandum of association, cf. subsections 4 and 5.

 *(4)* If the share capital is paid up by way of cash contributions, formation may be effected no later than 12 months after the memorandum of association has been signed.

 *(5)* If the limited liability company acquires assets other than cash in connection with its formation, the formation must be effected on or before the date of registration or application for registration of the company, see subsection 1.

 *(6)* If the limited liability company acquires an existing business or a controlling interest in another limited liability company in connection with its formation, the formation may take effect for accounting purposes from the first day of the current financial year of the business which is acquired or in which an interest is acquired.

 **§ 41.** *(1)* A limited liability company that has not been registered may not acquire rights, undertake obligations or be a party to any legal action other than actions to recover subscribed share capital and other actions relating to the subscription for shares. The company must add the words "under stiftelse" (in English, in the process of formation) to its name.

 *(2)* Where a limited liability company is formed and the date of formation falls after the date on which the memorandum of association is signed, no rights may be acquired and no obligations may be entered into on behalf of the company in the period until the company's formation becomes legally effective.

 *(3)* Anyone who has undertaken an obligation on behalf of the limited liability company after the date on which the memorandum of association is signed, but before the date of registration, or who has joint responsibility in this respect, will be jointly and severally liable for that obligation. Upon registration, the limited liability company acquires the rights and obligations stipulated in the memorandum of association or conferred on the company after the signing of the memorandum of association.

 *(4)* Where a contract is made before the limited liability company has been registered and the contracting party knew that the company was not registered, the contracting party may terminate the contract if the company is not registered with the Commerce and Companies Agency on or before expiry of the time limit specified in § 40, subsection 1, or if registration is refused. However, this only applies in the absence of an agreement to the contrary. If the contracting party did not know that the limited liability company was not registered, the contracting party may terminate the contract as long as the company remains unregistered.

*Subsequent acquisitions*

 **§ 42.** *(1)* Where a public limited company acquires assets from a promoter, the central governing body of the company must issue a statement giving particulars of the circumstances of the acquisition if

1) the acquisition takes place in the period between the date of signing of the memorandum of association and 24 months after the date of registration of the limited liability company; and

2) the consideration corresponds to no less than one tenth of the share capital.

 *(2)* The central governing body of the public limited company is responsible for ensuring that no acquisition of shares is detrimental to the company, its shareholders or creditors.

 **§ 43.** *(1)* Where a public limited company acquires assets from a promoter and that acquisition falls within § 42, subsection 1, a valuation report must also be prepared as provided by §§ 36 and 37, unless the acquisition is governed by § 38.

 *(2)* However, if the asset acquired under subsection 1 is an existing business, the opening balance sheet to be prepared under § 36, subsection 3 must be prepared as a pre-acquisition balance sheet for the acquired business.

 **§ 44.** *(1)* The statement under § 42 and the valuation report under § 43 must be published by the central governing body in the Commerce and Companies Agency's IT system no later than two weeks after the date of the resolution to make the contribution.

 *(2)* §§ 42 and 43 do not apply to the usual business transactions of the public limited company.

*Part 4*

*Shares, registers of shareholders, etc.*

*Shares*

**§ 45.** *(1)* In limited liability companies, all shares carry equal rights. However, the articles of association of a company may provide that the company must have different share classes, in which case the articles must specify the different characteristics and size of each class.

**§ 46.** *(1)* All shares carry voting rights. However, the articles of association of a limited liability company may provide that certain shares carry no voting rights, and that the voting power of certain shares differs from that of the other shares.
*(2)* Non-voting shares only carry a right of representation if so provided by the articles of association.

**§ 47.** *(1)* Limited liability companies may issue par value shares or non-par value shares, or any combination of such shares.
*(2)* Non-par value shares have no nominal value. Each non-par value share represents an equal amount of the share capital.
*(3)* The amount of the share capital represented by par value shares is based on the proportion between the par value and the share capital, and the amount represented by non-par value shares is based on the number of shares issued.

**§ 48.** *(1)* Shares are freely transferable and non-redeemable, unless otherwise provided by statute.
*(2)* Shares may be registered in the names of the holders. The articles of association may include restrictions on the transferability of registered shares, or rules on their redemption. Shares may also be issued to bearer.

**§ 49.** *(1)* No purchaser of a registered share may exercise the rights conferred on that purchaser as a shareholder unless and until the purchaser has been registered in the register of shareholders or has given notice of his acquisition of the shares to the company and established good title to them. However, this does not apply to the right to receive dividends and other distributions, or to the right to subscribe for new shares issued in connection with a capital increase.

*Register of shareholders*

**§ 50.** *(1)* As soon as possible after the formation of the company, the central governing body must set up a register of shareholders.
*(2)* [3] The company may keep the register of shareholders by registering the information specified in § 52 and § 56, subsection 2, in the Commerce and Companies Agency's IT system, see § 58.
*(3)* The articles of association may provide that the register of shareholders must be kept by a person designated by the company to keep the register on its behalf. The articles of association must set out the name and address of the person charged with keeping the register of shareholders. If that person is a legal person, only the Central Business Register (CVR) number needs to be stated. The Commerce and Companies Agency may prescribe detailed rules permitting persons to keep registers of shareholders, including the requirements that must be met by such persons.

**§ 51.** *(1)* The register of shareholders must be kept available for inspection by public authorities. The articles of association must specify the place where the register of shareholders is to be kept if it is not kept at the company's registered office. The register of shareholders must be kept within the EU/EEA.
*(2)* For companies whose employees are entitled to elect representatives to the company's supreme governing body under § 140, but that right has not been exercised, the register of shareholders must also be kept available for inspection by an employee representative. For groups whose employees have not elected members to the company's supreme governing body under § 141, the register of shareholders of the parent company must be kept available for inspection by employee representatives from the other Danish group companies.
*(3)* Subsection 2, that applies to companies with no employee representatives on the board of directors also applies to European Companies (SEs) in which no employee representatives have been elected to the

administrative or supervisory body in accordance with the rules governing employee participation in SEs.

*(4)* [4] The articles of association may provide that the register of shareholders must also be kept available for inspection by the shareholders, including in electronic form, cf. subsections 5 and 6. A resolution to such effect must be passed by the general meeting with the majority of votes required to amend the articles.

*(5)* [5] Where the register of shareholders as specified in § 50, subsection 2 is kept available for inspection in electronic form, the company may fulfill its obligations under subsections 1 to 4 by giving those entitled to inspect the register under subsections 1 to 4 access to the electronic register. The company may discharge its obligations by registering the information specified in § 52 in the Commerce and Companies Agency's IT system (the public register of shareholders) in accordance with § 58, subsection 2.

*(6)* In private limited companies, the register of shareholders must be kept available for inspection by all shareholders.

**§ 52.** *(1)* Unless issued through a securities center, shares must be entered in the register of shareholders in numerical order. For companies that have not issued share certificates or have issued registered shares, or whose shares have not been issued through a securities center, the register of shareholders must contain information about all holders of shares and charges, the date of acquisition, disposal of or charge over the shares, the voting rights attaching to the shares, the names and addresses of the shareholders or, in the case of businesses, their name, Central Business Register (CVR) number and registered office. If the shareholder or charge holder is a foreign national or a foreign legal person, the notice to be given under § 53, subsection 1 must be accompanied by other documentation ensuring unambiguous identification of the shareholder.

**§ 53.** *(1)* The shareholder or charge holder must notify the limited liability company of any change in share ownership or charge. The notice from the shareholder or charge holder must be received by the company no later than two weeks after the date of the change of ownership or charge. The notice must contain information about the new shareholder or charge holder as specified in § 52. Where shares are transferred, the name of the new holder need not be registered, cf. § 54, subsection 3.

*(2)* Any notice of a change of ownership or charge must be entered in the register of shareholders, including particulars of the new shareholder or charge holder, provided that the articles of association do not prevent the acquisition. The company or, respectively, the keeper of the register of shareholders can make registration subject to the new shareholder or charge holder establishing good title to the shares or charge. Entries in the register of shareholders must be dated.

*(3)* The company or, respectively, the keeper of the register of shareholders must provide evidence of registration in the register of shareholders upon request from a shareholder or charge holder.

**§ 54.** *(1)* In public limited companies that have not issued share certificates or have not issued shares through a securities center, the information specified in § 52 must be set out in the register of shareholders, but bearer shares need only be registered with a serial number. Unless issued through a securities center, the shares must be entered in the register of shareholders in numerical order.

*(2)* Where a share certificate is issued for more than one share, the register of shareholders must also contain information about the serial number of the share certificate, the serial numbers of the shares covered by the certificate and their nominal value.

*(3)* Where a registered share is transferred, and the articles of association do not prevent the new owner's acquisition of the share, the name of the new owner must be registered if the new owner so requests and establishes good title to the share. The company or, respectively, the keeper of the register of shareholders must endorse the registered share to the effect that registration has been made, or, if so provided by the articles of association, issue evidence of registration subject to the share certificate being deposited.

*Notification of significant shareholdings*

**§ 55.** *(1)* Any holder of shares in a limited liability company must notify the company if
1) the voting rights attaching to the shares represent 5% or more of the voting rights of the share capital, or represent 5% or more of the share capital; or

2) any change occurs to a previously notified shareholding to the effect that the 5, 10, 15, 20, 25, 50, 90 or 100% thresholds and the thresholds of one third or two thirds of the voting rights or of the share capital are reached or no longer reached.

 *(2)* Shareholdings under subsection 1 include

1) shares whose voting rights are held by a business controlled by the shareholder as specified in § 7; and

2) shares that the holder has provided as security, unless the charge holder controls the voting rights and declares an intention to exercise them.

 *(3)* The Commerce and Companies Agency may prescribe detailed rules on the holding of shares and notification of shareholdings under subsections 1 and 2. The Agency may also prescribe rules deviating from subsection 1 for shares in public limited companies whose shares are admitted to trading on a regulated market, including rules on a shorter notice period.

**§ 56.** *(1)* Notification under § 55 must be provided to the company no later than two weeks after a change that affects one of the thresholds specified in § 55, subsection 1 with the result that a new threshold is reached, or a threshold that was previously satisfied is no longer reached. The company must enter the information in the register of shareholders.

 *(2)* The notification must include information on the date of acquisition or disposal of the shares, the number and, if applicable, the class of shares, the shareholder's full name and address or, in the case of a business, its name, Central Business Register (CVR) number and registered office. If the shareholder is a foreign national or a foreign legal person, the notification must be accompanied by other documentation ensuring clear identification of the shareholder. The Commerce and Companies Agency may prescribe detailed rules in this respect.

 *(3)* The notification must also include information on the size and nominal value, respectively, of the shares and the voting rights attaching to them. The notification to the company may be given in connection with the notice to be given under § 53, subsection 1.

 **§ 57.** *(1)* The Commerce and Companies Agency prescribes rules on the notification of shareholdings in state-owned public limited companies in accordance with § 55, including rules stipulating

1) the definition of a shareholding; and

2) that notification must be given to the company as soon as possible.

*Public register of shareholders*

 **§ 58.** [6)] *(1)* Upon receipt of a notification under § 55, subsection 1, the company must register the information in the Commerce and Companies Agency's IT system as soon as possible.

 *(2)* The company must also provide notice as soon possible of any changes to the information notified under subsection 1 that affect the thresholds in § 55, subsection 1 and mean that any new thresholds are reached, or any that were previously satisfied are no longer reached.

 *(3)* All information received under subsections 1 and 2 must be published in the Commerce and Companies Agency's IT system. The provisions of Part 2 governing registration apply with such changes as are necessary.

*Share certificates*

 **§ 59.** *(1)* A share certificate may be issued for one or more shares. If a share certificate is issued for more than one share, the certificate must state its own serial number and the serial numbers and nominal value, if applicable, of the shares covered by the certificate.

 **§ 60.** *(1)* The central governing body can resolve to issue and cancel share certificates. Share certificates may only be issued if so provided by the articles of association, cf. § 64, subsection 1, or if the share certificates are negotiable instruments or issued to bearer, in which case share certificates must be issued for all shares, unless they are issued through a securities center, see § 7, subsection 1, paragraph 3 of the Danish Securities Trading Act (lov om værdipapirhandel m.v.

*(2)* However, if the shares are subject to restrictions on transferability or the shareholders are required to have their shares redeemed, no share certificates may be issued to bearer, and no transfer of share certificates to bearer will be binding on the public limited company.

*(3)* No share certificates may be delivered until the capital subscription has been registered with the Commerce and Companies Agency. Registered shares may only be delivered to shareholders registered in the company's register of shareholders.

*(4)* Share certificates must state the name, registered office and registration number of the company, and the serial number, size or nominal value of the share. Share certificates must also state whether the certificate is to be registered in the name of the holder or whether it may be issued to bearer and must indicate the date or month of issue. Share certificates must be signed by the central governing body. However, the signature may be mechanically reproduced.

*(5)* If the articles of association provide that shares of different classes can be issued, the share certificate must state the class of the share.

*(6)* Share certificates must also reference any provisions of the articles of association that stipulate that
1) the shares must be registered in the names of the holders in order to carry voting rights;
2) certain shares carry special rights;
3) shareholders are required to have their shares redeemed;
4) the shares are non-negotiable instruments;
5) the shares are subject to restrictions on transferability; and
6) the shares may be cancelled without a court order.

*(7)* Share certificates must contain a proviso that the particulars set out in subsection 6, paragraphs 3 to 5, may have been changed subsequent to the date of issue, altering the legal position of the shareholder. Where such changes are made, the central governing body must take all reasonable steps to have the share certificates endorsed to such effect or replaced by new share certificates.

*Shares issued through a securities center*

**§ 61.** *(1)* For shares issued through a securities center, the limited liability company's central governing body must ensure that the securities center receives the following particulars as well as information on any subsequent changes to these as soon as possible:
1) The company's name, registered office, postal address and registration number in the register of limited liability companies.
2) The company's share capital, including the number and size of the shares, and, for registered shares, also the names and addresses of the shareholders. Companies with more than one class of shares must list the information by class.
3) Any particular rights or obligations attaching to specific shares.
4) Any requirement for the shares to be registered in order to carry voting rights.

*(2)* No shares may be issued through a securities center until the company has been registered in the Commerce and Companies Agency's IT system.

*(3)* In connection with any capital increases, the central governing body must ensure that pre-emption rights and rights to bonus shares are registered and specify the number of rights required for new shares. For new shares, the date from which they confer rights in the company must be specified. If the capital increase has not been registered in the register of limited liability companies, or if a share has not yet been fully paid up, the central governing body must register information to that effect with the securities center.

*(4)* The central governing body must ensure that any resolution to reduce capital, and the amount of the reduction, is registered with the securities center as soon as possible after the resolution is passed.

*(5)* The Commerce and Companies Agency may prescribe detailed rules on the information to be provided under subsections 1 to 4.

**§ 62.** *(1)* If the shares in a public limited company are to be issued through a securities center, the company must provide the securities center with the information specified in § 61 as soon as possible.

*(2)* Any share certificates for shares in the public limited company must be delivered to an account-holding bank in the manner prescribed by the registration notice issued by the securities center. The shareholder and the company must provide the information prescribed in the registration notice.

(3) The public limited company must pay all of the costs associated with issuing its shares, etc. through a securities center. The public limited company must enter into an agreement with one or more account-holding banks stipulating that the shareholders may, at the company's expense,
1) have their shares, etc. registered and held in safe keeping by such banks; and
2) receive notification of dividends, etc. and an annual statement of their account.
 (4) The shareholders are entitled to appoint an account-holding bank of their choice to provide the services listed in paragraphs 1 and 2, provided that that bank agrees to provide these services at the same cost to the public limited company as would have been charged by the bank with which the company has an arrangement.

§ 63. (1) Where the company's shares are required to be registered with a securities center, and three years after the call for registration has been made there are still some shares that have not been registered, the central governing body may, by notice in the Commerce and Companies Agency's IT system, request that the shareholders register their shares within an additional period of six months. Upon expiry of that six-month period, the central governing body may sell any unregistered shares, at the expense of the relevant shareholder(s), through a securities dealer as defined in § 4, subsection 3 of the Danish Securities Trading Act. The public limited company is entitled to deduct the expenses incurred in connection with the notice and sale of the shares from the proceeds of the sale. Any proceeds not claimed within three years of the sale will accrue to the public limited company.

*Cancellation of share certificates*

§ 64. (1) Where a company's shares are admitted to trading on a regulated market, see § 7, subsection 1, paragraph 2, of the Danish Securities Trading Act, the shareholders are not entitled to demand that share certificates be issued.
 (2) Where a limited liability company has issued share certificates, the company may request the shareholders to return the certificates for cancellation. The company must provide at least three months' notice in accordance with the rules provided by this Act and the company's articles of association regarding notice of annual general meetings and must provide notice in writing to all shareholders registered in the register of shareholders. The rights conferred on a shareholder may not be exercised until the share certificate has been returned to the limited liability company. However, this does not apply to the right to receive dividends and other distributions or the right to subscribe for new shares issued in connection with a capital increase.
 (3) Subsection 1 does not apply to shares that are negotiable instruments or bearer shares.

*Transfer of shares*

§ 65. (1) Any transfer of a share that has not been issued through a securities center, or for which no share certificate has been issued in ownership or by way of security, will only be effective against the creditors of the transferor if the limited liability company or the keeper of the register of shareholders, see § 50, subsection 3, has received notice of such transfer from the transferor or the transferee.
 (2) Where a shareholder has transferred the same share to more than one transferee and the share is governed by subsection 1, any subsequent transferee takes priority over prior transferees once the limited liability company or the keeper of the register of shareholders, see § 50, subsection 3, has received notice of the transfer to the subsequent transferee, provided that the subsequent transferee acted in good faith when the company or the keeper of the register of shareholders received the notice.

§ 66. (1) Where a share certificate is transferred in ownership or by way of security, the provisions of § 14, subsection 1 and 2 of the Danish Debt Instruments Act (lov om gældsbreve) apply, with such changes as are necessary. However, such provisions do not apply if a clear and unambiguous reservation has been made on the share certificate in accordance with the limited liability company's articles of association, stipulating, for instance, that the certificate is a non-negotiable instrument. Any share certificate issued to bearer remains a bearer security unless the owner's name is stated on the certificate, even if it is endorsed by the public limited company to the effect that the share is registered in the name of the holder.
 (2) The provisions of §§ 24 and 25 of the Danish Debt Instruments Act apply to dividend coupons.

*(3)* Share certificates may be cancelled without a court order only when the articles of association of the limited liability company and the share certificate provide for such cancellation. Notice of cancellation must be provided in the Commerce and Companies Agency's IT system as follows:
1) at least four weeks' notice for cancellation of share certificates that are non-negotiable instruments; and
2) at least six months' notice for cancellation of other share certificates.

 *(4)* The provisions of subsection 3 apply, with such changes as are necessary to coupons and renewal coupons (talons). Coupon sheets and the accompanying share certificates may be cancelled without a court order unless otherwise provided by the articles of association.

Part 5

*Restrictions on negotiability and redemption*

*Pre-emption rights*

 **§ 67.** *(1)* If the articles of association grant a pre-emption right to shareholders or others in the event of a transfer of shares, the articles of association must include detailed rules on such pre-emption rights, including the time allowed for exercising those rights. If these provisions lead to a price or terms that are obviously unfair, they may be set aside in whole or in part by a court order.

 *(2)* For the purpose of the court proceedings, see subsection 1, second sentence, the parties may rely on the rules in subsection 3 and have an expert appointed to assess whether the price is obviously unfair and to fix an appropriate price.

 *(3)* If the articles of association do not include any provisions about calculating the price payable on the exercise of a pre-emption right, the price must, in the absence of agreement, be fixed at the value of the shares as assessed by an expert appointed by the court with jurisdiction over the place where the limited liability company's registered office is situated. The expert's opinion may be brought before the court. Such proceedings must be commenced within three months of receipt of the expert opinion. All costs pertaining to the expert must be paid by the shareholder requesting the expert opinion but may be imposed on the company if the opinion differs significantly from the price and is used in whole or in part as a basis for calculation.

 *(4)* Where more than one share is transferred, the pre-emption right cannot be exercised for only part of the shares unless authorized by the articles of association.

*Consent to sale*

 **§ 68.** *(1)* If the articles of association make the transfer of shares subject to consent, a decision as to consent must be made as soon as possible after receipt of a request for consent. The person requesting such consent must be notified of the decision as soon as possible. If no notification has been given within four weeks of receipt of the request, consent will be deemed to have been given.

 *(2)* If the articles of association make the transfer of shares subject to the consent of the limited liability company, the central governing body must make the decision, unless such decision is to be made by the general meeting. The reason for any refusal of consent must be stated in the notification, see subsection 1.

*Redemption*

 **§ 69.** *(1)* If the articles of association include provisions on redemption, such provisions must specify the terms of redemption and the persons entitled to demand redemption. § 67 applies with such changes as are necessary. The shares held by a shareholder may be redeemed only in aggregate, unless otherwise provided by the articles of association.

 **§ 70.** *(1)* Any shareholder holding more than nine tenths of the shares in a limited liability company and a corresponding share of the votes may demand that the other shareholders have their shares redeemed by that shareholder. In this case, the

other shareholders must be requested, under the rules governing notice for general meetings, to transfer their shares to the shareholder within four weeks.

*(2)* The terms of redemption and the basis used for determining the redemption price must be set out in the request. It must also be stated in connection with the redemption that in the event that no agreement can be reached on the redemption price, such price will be fixed under the rules in § 67, subsection 3 by an expert appointed by the court with jurisdiction over the place where the registered office of the limited liability company is situated. If the redemption is carried out for the purpose of a takeover bid under the rules in Part 8 of the Danish Securities Trading Act, the rules in that Act on price determination apply to the redemption, unless a minority shareholder requests that the price be fixed by an expert. The request must also include the information referred to in subsection 3, first sentence. Finally, the request must include a statement by the central governing body of the limited liability company on the general terms of redemption.

*(3)* Where the expert opinion or a decision made pursuant to § 67, subsection 3 leads to a redemption price that is higher than that offered by the shareholder, the higher price will also be valid for the holders of shares of the same class who have not requested an opinion. The costs pertaining to the price determination are payable by the shareholder who has requested such determination. Where an opinion or decision leads to a redemption price that is higher than that offered by the redeeming shareholder, the court that appointed the expert may order the redeeming shareholder to pay the costs in whole or in part.

**§ 71.** *(1)* If an acquisition of shares in a limited liability company which has one or more shares admitted to trading on a regulated market in an EU/EEA Member State leads to redemption under § 70, subsection 1 or to an obligation to make a general offer under § 31, subsection 1 of the Danish Securities Trading Act, the price determination rules provided for in the Securities Trading Act apply, unless a minority shareholder requests that the price be fixed by an expert, see § 67, subsection 3.

*(2)* If the redemption is carried out for the purpose of a takeover bid, see § 70, subsection 2, third sentence, the consideration for the redemption may be in the same form as specified in the offeror's initial takeover bid, or it may be payable in cash. Minority shareholders are always permitted to demand cash payment as consideration for redemption.

*(3)* Any request for redemption in connection with a takeover bid, see § 70, subsection 2, third sentence must be made within three months of expiry of the offer period stipulated in the offeror's takeover bid.

*(4)* The Commerce and Companies Agency prescribes rules governing offeror redemptions of shares which are held by the other shareholders, and also specify how share acquisitions are to be determined in connection with a takeover bid, see § 70, subsection 2, third sentence.

**§ 72.** *(1)* If all of the shareholders have not transferred their shares to the redeeming shareholder within the time limit provided for in § 70, subsection 1, they must be requested, by a statement published in the Commerce and Companies Agency's IT system, to transfer their shares in accordance with § 70, and must be given three months to do so.

*(2)* The statement under subsection 1 must include the information referred to in § 70, subsection 2 and the date of any expert opinion or court order given under § 67, subsection 1. Finally, it must be stated that the shares, after expiry of the time limit in subsection 1, will be registered in the name of the redeeming shareholder in the limited liability company's register of shareholders, and that the right to demand an expert opinion will be forfeited on expiry of this time limit.

*(3)* Where any shares have not been transferred to the redeeming shareholder within the time limit stipulated in the statement published in the Commerce and Companies Agency's IT system pursuant to subsection 1, the redeeming shareholder must, as soon as possible, without qualifications and in favor of the relevant shareholders, deposit the amount necessary to redeem the shares that have not been transferred (see the Danish Escrow Account Act (lov om skyldneres ret til at frigøre sig ved deponering)).

*(4)* Upon the deposit, the share certificates for the redeemed shares will be considered cancelled. The company's central governing body must ensure that the new share certificates are endorsed to the effect that they replace the cancelled share certificates.

**§ 73.** *(1)* If a shareholder holds more than nine-tenths of the shares in a company and a corresponding share of the votes, each minority shareholder of the company may demand redemption by that shareholder. § 67, subsection 3, the second sentence of § 70, subsection 2, and subsection 3, second and third sentences, apply with such changes as are necessary.

*Amortization*

**§ 74.** *(1)* The articles of association of the limited liability company may include provisions for a reduction of the share capital by redemption of shares in accordance with existing applicable rules.
 *(2)* In connection with a capital reduction under subsection 1, the shareholders may be paid by the issue of bonds if so provided for in the articles of association.
 *(3)* Amortization may be initiated by the central governing body in respect of shares subscribed for after inclusion of the provisions on reduction in the articles of association. The central governing body can make the necessary amendments to the articles of association.

**§ 75.** *(1)* Capital reductions by way of amortization can be implemented without publication of a request in the Commerce and Companies Agency's IT system asking creditors of the limited liability company to file their claims against the company, provided that the reduction takes place by way of cancellation of shares that have been fully paid up, see § 193.

Part 6

*General meetings*

*Shareholders' rights to pass resolutions*

**§ 76.** *(1)* The shareholders' rights to pass resolutions are exercised at the general meetings of the limited liability company.
 *(2)* Shareholders can pass resolutions at a general meeting without complying with the requirements as to form and notice in this Act and the company's articles of association, provided that all shareholders agree to do so, cf. subsection 5.
 *(3)* Resolutions made by shareholders at a general meeting can, in general, be passed without complying with the rules on form and notice provided by this Act, cf. subsection 5. A resolution to that effect must be passed by unanimous agreement, and rules that provide for passing such resolutions must be set out in the articles of association. § 106 applies to any amendment to or abolition of such rules. However, where shareholders holding more than 10% of the share capital so request, general meetings must be held by physical attendance.
 *(4)* The central governing body may determine that persons other than those specified in this Act are entitled to attend general meetings, unless otherwise provided by the articles of association.
 *(5)* The shareholders of state-owned public limited companies and public limited companies whose shares are admitted to trading on a regulated market in an EU or EEA Member State may not pass resolutions without complying with the rules on form and notice provided by this Act, see subsections 2 and 3. This also applies to public limited companies whose general meetings must be open to the press by virtue of statute or an executive order.
 *(6)* General meetings of state-owned public limited companies must be open to the press.

*Electronic general meetings*

**§ 77.** *(1)* Unless otherwise provided by the company's articles of association, the central governing body may determine that in addition to a right to physically attend general meetings, shareholders may be given the right to attend electronically, including using electronic voting that does not require physical attendance at the meeting, so that the general meeting will be partly electronic, see subsections 3 to 6.
 *(2)* The general meeting may resolve to hold general meetings electronically without any opportunity for parties to physically attend, so that the meeting is held by electronic means alone, see subsections 3 to 6. A resolution to that effect must explain how electronic media can be used to attend

the general meeting. The resolution must be recorded in the company's articles of association. § 106 applies to the resolution and to any amendments made to it.

*(3)* The central governing body must prescribe the requirements for electronic systems to be used to conduct general meetings that are held electronically, in whole or in part. The notice convening the general meeting must specify those requirements and explain how shareholders can register to attend the general meeting electronically and where they can find information about the procedure for attending.

*(4)* General meetings may only be held electronically, in whole or part, if the central governing body of the limited liability company ensures that the general meeting can be properly conducted. The system to be used must be set up in a manner that satisfies the requirements of this Act for holding general meetings, including shareholder rights to attend, speak and vote at general meetings. The system must also be able to reliably determine which shareholders attend the general meeting, the capital and voting rights represented by them, and the outcome of voting.

*(5)* If a public limited company has issued bearer shares without specifying a date of registration, see § 84, the notice convening the general meeting, see subsection 3 must also specify how the holders of such shares must establish their right to electronically attend the general meeting.

*(6)* All of the provisions in this Act that regulate the holding of general meetings apply, with any necessary modifications, to general meetings conducted in whole or in part by electronic means.

*Right to attend and vote, etc.*

**§ 78.** *(1)* All shareholders are entitled to attend and speak at general meetings, cf. § 84, subsection 1.

**§ 79.** *(1)* If a share is jointly held by multiple shareholders, the rights attaching to the share may only be exercised against the limited liability company by a proxy jointly appointed by such shareholders.

**§ 80.** *(1)* All shareholders are entitled to attend general meetings by proxy.

*(2)* The proxy must produce a written and dated instrument of proxy. Proxy appointments may be revoked at any time. Notice of revocation must be given in writing and may be given to the limited liability company. Shareholders can make and revoke proxy appointments electronically.

*(3)* If a proxy has been appointed by more than one shareholder, the proxy may vote differently on behalf of the different shareholders.

*(4)* Management of the limited liability company can be appointed as proxy for terms no longer than 12 months and only for the purpose of a specific general meeting for which the agenda is known in advance.

*(5)* Any public limited company whose shares are admitted to trading on a regulated market must make hard copy or electronic proxy forms available to all shareholders entitled to vote at general meetings and must offer the shareholders at least one method of notifying the company of electronic proxy appointments. The appointment of a proxy, the notice of the appointment to the public limited company, and the issue of any voting instructions to the proxy can only be made subject to such formal requirements as are necessary and reasonable for the purpose of identifying the shareholder and the proxy as well as verifying the contents of the voting instructions. This also applies to the revocation of proxy appointments.

**§ 81.** *(1)* All shareholders and proxies may attend general meetings together with an adviser.

**§ 82.** *(1)* Shareholders' agreements are not binding on the limited liability company, or with regard to resolutions passed at general meetings.

**§ 83.** *(1)* If a public limited company whose shares are admitted to trading on a regulated market has designated a bank through which the company's shareholders may exercise their financial rights, the company must notify the shareholders.

**§ 84.** *(1)* In public limited companies whose shares are admitted to trading on a regulated market, a shareholder's right to attend a general meeting and to vote on their shares must be determined on the basis of the shares held by the shareholder at the date of registration. The date of registration is one week before the date of the general meeting. The articles of association of a public limited company may provide that shareholders are required to notify the company that they will attend a general meeting no later than three days before the date of the meeting.

*(2)* The shareholding of each individual shareholder must be determined at the date of registration, based on the number of shares held by that shareholder as registered in the register of shareholders and on any notice of ownership received by the public limited company for the purpose of registration in the register of shareholders, but not yet registered.

*(3)* In public limited companies whose shares are not admitted to trading on a regulated market, and in private limited companies, the articles of association may provide that subsections 1 and 2 apply with such changes as are necessary.

**§ 85.** *(1)* Voting rights may not be exercised where they attach to shares held by a limited liability company itself, or to shares in a parent company that are held by a subsidiary. Such shares are excluded where the validity of any resolution or the exercise of any power is subject to the consent of all shareholders or to a certain majority of votes of either the shares represented at the general meeting or of the entire share capital of the limited liability company.

**§ 86.** *(1)* A shareholder may not participate, on their own behalf, by proxy or acting as a proxy for others, in any vote at a general meeting that relates to legal proceedings against the shareholder or relates to the shareholder's liability to the company. A shareholder may not participate in any vote relating to legal proceedings against others or relating to the liability of others if that shareholder has a significant interest in the matter, which may be contrary to the interests of the limited liability company.

*Time and place*

**§ 87.** *(1)* General meetings must be held at the registered office of the limited liability company, unless the articles of association specify another place at which the meetings must or can be held. If special circumstances require it, a general meeting may, in isolated cases, be held elsewhere.

**§ 88.** *(1)* The annual general meeting must pass resolutions on the following:
1) adoption of the annual report;
2) appropriation of profit or loss as recorded in the adopted annual report;
3) any change to a resolution about auditing the limited liability company's future annual reports if the company is not subject to audit obligations under the Danish Financial Statements Act or any other statute; and
4) any other business to be transacted by the general meeting pursuant to the company's articles of association.

*(2)* The annual general meeting must be held in time for the adopted annual report to reach the Commerce and Companies Agency within the time limit specified in the Financial Statements Act. The annual report must be submitted to the general meeting.

*Extraordinary general meetings*

**§ 89.** *(1)* Extraordinary general meetings must be held upon request from the central governing body, the supervisory board or the auditor elected by the general meeting.

*(2)* For private limited companies, any shareholder can request an extraordinary general meeting. Extraordinary general meetings to consider specific issues must be convened within two weeks of receipt of a request to such effect.

*(3)* For public limited companies, the articles of association may provide that shareholders that hold 5% of the share capital, or any smaller fraction of the capital as prescribed by the articles of association, and shareholders that are so authorized under the articles can request an extraordinary general meeting in writing. Extraordinary general meetings to consider specific issues must be convened within two weeks of receipt of a request to such effect.

*Agenda*

**§ 90.** *(1)* All shareholders are entitled to nominate specific issues for inclusion on the agenda for an annual general meeting, cf. subsection 2.

*(2)* In public limited companies, shareholders must submit a written request to the central governing body in order to nominate a specific issue for consideration at the annual general meeting. Shareholders are entitled to have their nominated issues included on the agenda for the general meeting where their request is received by the central governing body at least six weeks before the date of the meeting. If the request is received less than six weeks before the date of the general meeting, the central governing body must decide whether the request has been made with enough time for the issues to be included on the agenda.

*(3)* No later than eight weeks before the scheduled date for an annual general meeting, public limited companies whose shares are admitted to trading on a regulated market must announce the date for the meeting as well as the deadline for any shareholder requests to include specific issues on the agenda, unless both dates are specified in the articles of association.

**§ 91.** *(1)* Any matter, which is not on the agenda, can only be determined by the general meeting if all of the shareholders consent. However, at any time the annual general meeting can pass resolutions under § 88, subsection 1, resolutions to be passed at annual general meetings under the articles of association, and resolutions to convene extraordinary general meetings to consider specific issues.

*Electronic communications*

**§ 92.** *(1)* The general meeting may pass a resolution on electronic means of communication, enabling the limited liability company and its shareholders to exchange documents electronically and communicate by e-mail instead of sending and submitting documents in hard copy form under this Act, see subsections 2 and 3. Electronic modes of communication may be used by the limited liability company and its shareholders regardless of any requirements as to form contained in the provisions that specifically govern the documents and notices, cf. subsection 5 and § 12, subsection 1, third sentence.

*(2)* The resolution referred to in subsection 1, must specify which notices, etc. are covered by the resolution as well as how the electronic modes of communication must or can be used. The resolution must also state where the shareholders can find information about the requirements for the systems to be used and the procedures to be followed when communicating electronically.

*(3)* The resolution made by the general meeting under subsections 1 and 2, must be included in the articles of association, cf. subsection 4. § 106 applies to the resolution and to any amendments made to it.

*(4)* Even if the general meeting has not resolved to introduce electronic communication between the limited liability company and its shareholders under subsection 1, the company and one or more shareholders can agree to communicate electronically.

*(5)* The right to use electronic communication as set out in subsection 1, must not replace public notification of meetings or notices to be published in the Danish Official Gazette (the Statstidende) or in the Commerce and Companies Agency's IT system where the limited liability company is required by statute to provide notices, etc. to its shareholders by publication of an advertisement or statement in the Official Gazette or in the Agency's IT system. This does not apply to the circumstances outlined in § 95, subsection 3, second sentence.

*(6)* For subsections 1 and 4, limited liability companies must request that the shareholders recorded in the register of shareholders provide an electronic address to which notices, etc. can be sent. The shareholders are responsible for ensuring that the company has their correct electronic address. The limited liability company must pay its own costs for electronic communication.

*Notice of general meetings*

**§ 93.** *(1)* General meetings must be convened and organized by the central governing body.

 *(2)* If a limited liability company has no central governing body, or if the central governing body fails to convene a general meeting required to be held by statute, by the articles of association or by a resolution of the company at a general meeting, such general meeting must be convened by the Commerce and Companies Agency upon request from a member of the company's supreme or central governing body, the auditor elected by the general meeting, if any, see § 144, subsection 1, or a shareholder. The Agency may determine the agenda for the general meeting.

 *(3)* General meetings convened by the Commerce and Companies Agency must be presided over by a person authorized by the Agency for such purpose, and the central governing body of the limited liability company must provide such person with the company's register of shareholders, minutes of general meetings, and audit records where such records must be kept under the Danish Act on Approved Auditors (lov om godkendte revisorer) or any other statute, or where the auditor has agreed with the company to keep such records. All expenses incidental to the general meeting must initially be paid for by the Commerce and Companies Agency but must be finally paid by the limited liability company.

 *(4)* Notwithstanding § 77, the Commerce and Companies Agency may decide that a general meeting that it convenes under subsection 2 of this section can only be attended in person or can be held as an electronic meeting in whole or in part, and that, notwithstanding § 87, the meeting must be held in the municipality in which the Agency is situated.

 **§ 94.** *(1)* Notice of general meetings must be given no earlier than four weeks before the meeting date, and no later than two weeks before the meeting date unless the articles of association stipulate a longer period of notice. If the general meeting is adjourned to a later date that is more than four weeks after the date of the meeting, notice of the adjourned meeting must be provided.

 *(2)* In public limited companies whose shares are admitted to trading on a regulated market, notice of general meetings must be given no earlier than five weeks before the meeting date, and no later than three weeks before the meeting date unless the articles of association stipulate a longer period of notice (cf.§ 339, subsection 4 and § 343.

 **§ 95.** *(1)* Notice must be given in accordance with the provisions in the articles of association.

 *(2)* The general meeting may resolve that notice must be provided on the limited liability company's website, cf. subsection 3. Such a resolution must be included in the company's articles of association. §106 applies to the resolution and any amendments made to it.

 *(3)* In public limited companies, notice of general meetings must, where requested, be given in writing to any shareholder registered in the register of shareholders. If the shares in a public limited company can be issued to bearer, the notice must be published in the Commerce and Companies Agency's IT system.

 *(4)* Regardless of whether notice is also given by other means, notice of a general meeting for a public limited company whose shares are admitted to trading on a regulated market must be published on the company's website. The costs of the publication must be paid by the company.

 **§ 96.** *(1)* Notices of general meetings must specify the time and place for the meeting as well as agenda items covering the business to be dealt with at the meeting. If any proposed resolution to amend the articles of association is to be put forward for consideration at the general meeting, the main contents of the resolution must be specified in the notice.

 *(2)* Notices of general meetings at which resolutions are to be passed in accordance with § 77, subsection 2, § 92, subsection 1 or 5, or § 107, subsection 1 or 2 must set out the full text of the proposed resolution to amend the articles.

 **§ 97.** *(1)* In public limited companies whose shares are admitted to trading on a regulated market, the notice must include the following information in addition to that specified in § 96:
1) the amount of the share capital and the voting rights of the shareholders;
2) a clear and accurate description of the procedures to be observed by the shareholders in order to attend and vote at the general meeting, see subsection 2;
3) the date of registration see § 84, subsection 1, specifying that only persons who are shareholders at such date are entitled to attend and vote at the general meeting;
4) where and how the full, unabridged texts of the documents referred to in § 99, subsection 1, paragraphs 3 and 4, as well as the agenda of the meeting are available; and
5) the website on which the information specified in § 99 will be made available.

*(2)* A clear and accurate description of the procedures to be observed by the shareholders in order to attend and vote at the general meeting as provided by subsection 1, paragraph 2, must include
1) the shareholders' rights to ask questions, including a time limit, if applicable, see § 102, subsection 3;
2) the procedure for voting by proxy, particularly the voting forms to be used, and the means of communication accepted by the limited liability company in connection with electronic notice of proxy appointments; and
3) the procedures for voting by post or electronically.

*(3)* In state-owned public limited companies, the notice of general meetings must include the full text of all proposed resolutions to be submitted to the meeting and, in the case of extraordinary general meetings, also the reason for holding the meeting. The notice must be published in the Commerce and Companies Agency's IT system at the same time or before it is provided to the shareholders.

**§ 98.** In public limited companies, the agenda and the full text of any proposal to be submitted to the general meeting and, in the case of the annual general meeting the audited annual report must be made available for inspection by the shareholders no later than two weeks before the date of the meeting, cf. § 99.

**§ 99.** *(1)* A public limited company whose shares are admitted to trading on a regulated market must, for a consecutive period of three weeks beginning no later than three weeks before the general meeting, including the date of the meeting, make at least the following information available to shareholders on the company's website:
1) The notice convening the meeting.
2) The aggregate number of shares and voting rights at the date of the notice, including the aggregate number for each class of shares if the company's share capital is divided into two or more classes.
3) The documents to be submitted to the general meeting.
4) The agenda and the full text of any proposals to be submitted to the general meeting.
5) The forms to be used for voting by proxy and by post, if applicable, unless such forms are sent directly to the shareholders. If, for technical reasons, such forms cannot be made available over the internet, the limited liability company must specify on its website how they may be obtained in hard copy and must send the forms to any shareholder who requests them. All costs involved must be paid by the company.

*(2)* If notice of a general meeting under § 339, subsection 4 and § 343 is provided less than three weeks before the date of the meeting, the time limit specified in subsection 1 will be reduced accordingly.

*Conduct at general meetings*

**§ 100.** *(1)* General meetings must be held in Danish, cf. subsections 2 to 4.

*(2)* The general meeting may resolve by a simple majority of votes to hold the meeting in a language other than Danish, offering all participants simultaneous interpretation to and from Danish. The resolution can be included in the articles of association without a separate resolution being passed by the general meeting to such effect.

*(3)* The general meeting may resolve by a simple majority of votes to hold the meeting in Swedish, Norwegian or English without offering all participants simultaneous interpretation to and from Danish. The resolution may be included in the articles of association without a separate resolution being passed by the general meeting.

*(4)* The general meeting may resolve that the meeting must be conducted in a language other than Danish, Swedish, Norwegian or English without offering all participants simultaneous interpretation to and from Danish. A resolution to such effect must be included in the articles of association, and § 107, subsection 2, paragraph 6, and § 110 apply to the resolution and any amendments made to it.

*(5)* If it has been resolved to conduct the general meeting in a language other than Danish, the meeting may resolve by a simple majority of votes that all future general meetings must be conducted in Danish. The resolution may be included in the articles of association without a separate resolution being passed by the general meeting. If a resolution

to hold general meetings in a language other than Danish is already included in the articles of association, a resolution made under the first sentence of this subsection must specify whether the new resolution is to be included in the articles of association or whether no provisions regarding the language to be used at general meetings will be included in the articles of association.

*(6)* All documents prepared for use by a general meeting at or after the general meeting must be in Danish, cf. subsections 7 and 8.

*(7)* The general meeting may resolve by a simple majority of votes that the documents referred to in subsection 6 must be prepared in Swedish, Norwegian or English. Such resolution may be included in the articles of association without a separate resolution being passed by the general meeting.

*(8)* The general meeting may resolve that the documents referred to in subsection 6 must be prepared in a language other than Danish, Swedish, Norwegian or English. A resolution to such effect must be included in the articles of association and § 107, subsection 2, paragraph 7, and § 110 apply to the resolution and to any amendments made to it.

**§ 101.** *(1)* A chairman of the general meeting, who may or may not be a shareholder, must be elected, unless otherwise provided by the articles of association.

*(2)* The chairman must preside over the general meeting and ensure that it is conducted properly and efficiently. The chairman has all powers necessary for that purpose, including the right to manage discussions, identify matters to be voted on, decide when to close discussions, bring speeches to an end and, if necessary, expel participants from the general meeting.

*(3)* Minutes recording the proceedings at general meetings must be kept and must be signed by the chairman. All resolutions must be recorded in the limited liability company's minute book.

*(4)* No later than two weeks after the general meeting, the minutes of the meeting or a certified copy of the minutes must be made available to the shareholders.

*(5)* Public limited companies whose shares are admitted to trading on a regulated market must, for every resolution passed, specify at least

1) the number of shares for which valid votes have been cast;

2)  the proportion of the share capital represented by such votes;

3) the total number of valid votes;

4) the number of votes in favor of and against each proposed resolution; and 5. the number of abstentions, if relevant.

*(6)* If none of the shareholders of a public limited company whose shares are admitted to trading on a regulated market request a complete account of the vote as provided in subsection 5, only the result of the vote needs to be specified in order to establish that each resolution was passed by the required majority.

*(7)* A public limited company whose shares are admitted to trading on a regulated market must announce the results of all votes on its website no later than two weeks after the general meeting.

*(8)* State-owned public limited companies must file a certified copy of the minutes of general meetings with the Commerce and Companies Agency on or before the date the minutes are made available to the shareholders as provided in subsection 4.

**§ 102.** *(1)* Upon request from a shareholder and when deemed by the supreme governing body not to cause any significant detriment to the limited liability company, the company's management must disclose to the general meeting the information at hand about all matters of importance to the assessment of the annual report and the company's position in general, or to any proposed resolution put forward for vote at the general meeting. The disclosure requirement also applies to the limited liability company's relationship with other group companies.

*(2)* If the answer to a request requires information that is not at hand at the general meeting, such information must be made available to the shareholders no later than two weeks after the meeting and must also be sent to any shareholder upon request.

*(3)* The central governing body may resolve that shareholders can ask questions about agenda items or documents, etc. to be used for the general meeting, subject to a time limit stipulated in the articles of association. The central governing body can make the necessary amendments to the articles of association.

*(4)* For public limited companies whose shares are admitted to trading on a regulated market and state-owned public limited companies, the disclosure requirements under subsections 1 and 2 also apply to questions submitted in writing by a shareholder within the three months prior to the general meeting. The answer may be given in writing, in which case both the question and answer must be made available to the shareholders at the beginning of the general meeting. No answer is required to be provided if the shareholder is not represented at the general meeting. Any questions that are the same may be answered together. Questions will be deemed to be answered if the relevant information is made available on the public limited company's website in the form of a 'Question and Answer' feature.

**§ 103.** *(1)* Any auditor elected by the limited liability company in general meeting, see § 144, subsection 1 is entitled to attend general meetings. The auditor elected by the general meeting, see § 144, subsection 1, if any, must attend general meetings if so requested by a member of the supreme or central governing body, or a shareholder.

*(2)* At general meetings, the auditor elected by the limited liability company in general meeting, see § 144, subsection 1, if any, must answer questions about the annual report and similar matters considered at the meeting.

*(3)* Any auditor elected by the general meeting, see § 144, subsection 1 is entitled to attend meetings of the supreme governing body where the annual report and similar matters are considered. The auditor must attend such meetings if so requested by any member of the supreme governing body.

*(4)* For public limited companies whose shares are admitted to trading on a regulated market and state-owned public limited companies, the auditor elected by the company in general meeting must attend the annual general meeting.

*Votes*

**§ 104.** *(1)* Each shareholder must vote on his shares in aggregate, unless otherwise provided by the articles of association, cf. subsection 3.

*(2)* Shareholders may vote by post by casting their votes in writing before the general meeting. Written votes can only be subject to requirements and restrictions that are reasonably necessary to ensure identification of the shareholders.

*(3)* For public limited companies, where a shareholder acts in a professional capacity on behalf of other natural or legal persons (clients), that shareholder will be entitled to distinguish between the different shares and exercise the voting rights attaching to the different shares in different ways.

**§ 105.** *(1)* Unless otherwise provided by this Act or the articles of association of the limited liability company, all business transacted at general meetings must be decided by a simple majority of votes. If the number of votes for and against are the same, the proposed resolution will not be passed. Where votes involve electing people or casting only one vote against several options, these votes must be decided by a relative, simple majority of votes. Where a vote that involves electing people results in a tie, the tie must be decided by lot, unless otherwise provided by the articles of association.

**§ 106.** *(1)* Any proposed resolution to amend the articles of association must be passed by at least two-thirds of the votes cast as well as at least two-thirds of the share capital represented at the general meeting, cf. subsection 2. Resolutions to amend the articles of association must also fulfill any other requirements stipulated in the articles of association and comply with the special rules in § 107.

*(2)* Proposed resolutions to amend the articles of association under § 74, subsection 3, § 102, subsection 3, § 175, subsection 2, § 176, subsection 2, § 247, subsection 1, § 265, subsection 1, § 282, subsection 1 and § 302, subsection 1 cannot be passed by the general meeting.

**§ 107.** *(1)* Any proposed resolution to amend the articles of association and increase shareholder obligations to the limited liability company requires the unanimous agreement of all shareholders.

*(2)* The following proposed resolutions to amend the articles of association must be passed by at least nine-tenths of the votes cast as well as at least nine-tenths of the share capital represented at the general meeting:

1) Resolutions to reduce shareholder rights to receive dividends or distribution of the company's assets, including subscriptions for shares at a favorable price, to the benefit of parties other than the shareholders and the employees of the limited liability company or its subsidiary.

2) Resolutions to restrict the transferability of the shares or increase existing restrictions, including the adoption of provisions that make share transfers subject to the consent of the limited liability company or prevent any shareholder from holding shares that exceed a specific amount of the share capital.

3) Resolutions to require shareholders to redeem their shares on equal terms, except on dissolution of the company or in circumstances governed by Part 5 of this Act.

4) Resolutions whereby shareholder rights to exercise voting rights in respect of their own or other shareholders' shares is restricted to a specific part of the votes or the voting share capital.

5) Resolutions that the shareholders, in connection with a division of the company, will not receive votes or shares in each of the transferee companies in the same proportion as in the transferor company.

6) Resolutions to hold general meetings in a language other than Danish, Swedish, Norwegian or English without providing for simultaneous interpretation to and from Danish for all participants.

7) Resolutions to adopt a language other than Danish, Swedish, Norwegian or English for internal documents, where internal documents means documents prepared for the company's own use in connection with or following general meetings.

*(3)* If the limited liability company has more than one class of shares, any proposed amendments to the articles of association that alter the respective rights attaching to each of the share classes, either by changing existing distinctions or creating new distinctions between such rights, must be adopted by shareholders attending the general meeting who hold at least two-thirds of the shares in the share class whose rights will be prejudiced.

*Void resolutions by general meetings*

**§ 108.** *(1)* The general meeting may not pass a resolution if it is clear that that resolution is likely to give certain shareholders or others an undue advantage over other shareholders or the limited liability company.

**§ 109.** *(1)* Legal proceedings can be instituted by a shareholder or member of management if a resolution passed by the general meeting has not been lawfully passed or is contrary to this Act or to the limited liability company's articles of association.

*(2)* Legal proceedings must be instituted no later than three months after the date of the resolution, or the resolution will be deemed to be valid.

*(3)* Subsection 2 does not apply where

1) the resolution could not be passed lawfully even with the consent of all shareholders;

2) this Act or the limited liability company's articles of association require the consent of all or certain shareholders and such consent has not been obtained;

3) there has been a serious failure to comply with the rules governing notice of general meetings; or

4) a shareholder who has instituted the proceedings after expiry of the time limit specified in subsection 2, but within 24 months after the date of the resolution, can demonstrate reasonable grounds for the delay and the court, for this reason and in view of all the circumstances, finds that it would be clearly unreasonable to apply subsection 2.

*(4)* If the court finds that the resolution is subject to subsection 1, it must be amended or declared invalid by a court ruling. However, the resolution may only be amended if a claim is made to such effect and the court is able to establish the proper contents of the resolution. The ruling of the court also applies to shareholders who have not instituted proceedings.

*Right of redemption*

**§ 110.** *(1)* Shareholders who have opposed the amendments to the articles of association referred to in § 107, subsection 2, paragraphs 1 to 4, 6 and 7, at the general meeting may demand that their shares be redeemed by making a written request to such effect no later than four weeks after the date of the general meeting.

*(2)* However, if a shareholder has been asked to declare before the vote whether he wishes to exercise the right of redemption under subsection 1, they must make that declaration at the general meeting in order to receive that right.

*(3)* On redemption, the limited liability company must buy the shareholder's shares at a price corresponding to the value of the shares, which, in the absence of agreement, must be determined by experts appointed by the court with jurisdiction over the place where the limited liability company's registered office is situated. The experts' costs must be paid by the shareholder that requests the valuation but may be imposed on the company if the valuation differs significantly from the price proposed by the company and the valuation is used in whole or in part for the redemption. Either party may bring the expert opinion before the court. Such proceedings must be commenced within three months of receipt of the expert opinion.

Part 7

*Management of the limited liability company, etc.*

*Choice of management structure*

**§ 111.** *(1)* A limited liability company may adopt one of the following management structures:

1) A management structure where the limited liability company is managed by a board of directors responsible for overall and strategic management. The board of directors must appoint an executive board to be responsible for the day-to-day management of the company. The executive board must either consist of one or more persons who are also members of the board of directors or consist of persons who are not members of the board of directors. In both cases, persons in charge of day-to-day management will be designated as executive officers, and together they form the executive board of the limited liability company. The majority of the members of the board of directors of public limited companies must be non-executive directors. No executive officer in a public limited company may be chairman or vice-chairman of the board of directors of that company.

2) A management structure where the limited liability company is managed by an executive board. In public limited companies, the executive board must be appointed by a supervisory board that oversees the executive board. No member of the executive board may be a member of the supervisory board.

*(2)* The board of directors or the supervisory board of a public limited company must have at least three members.

*(3)* Private limited companies in which the employees exercise their rights under § 140 to elect members to serve on the supreme governing body must have a board of directors or a supervisory board. If a private limited company has no board of directors or supervisory board but is required to have one of these bodies under the first sentence of this subsection, any proposed resolution to amend the articles of association to the effect that the company must have a board of directors or a supervisory board will be deemed to have been validly passed if it is approved by the vote of any one shareholder.

*(4)* The provisions in this Act that govern members of the board of directors and the supervisory board also apply to their alternate members.

*General provisions on executive and supervisory functions*

**§ 112.** *(1)* Members of management in a limited liability company must have full legal capacity and cannot be under guardianship under § 5 of the Danish Guardianship Act or be in the care of a surrogate decision maker designated under § 7 of the Guardianship Act.

*(2)* Executive officers in public limited shipping companies may be sole proprietorships or partnerships, provided that the proprietors or partners meet the requirements in subsection 1.

**§ 113.** *(1)* Members of the board of directors or the supervisory board and executive officers may not engage in speculative transactions involving shares in the limited liability company or in limited liability companies in the same group.

**§ 114.** *(1)* For limited liability companies whose shares are admitted to trading on a regulated market and state-owned public limited companies, the chairman of the board of directors or the supervisory board may not perform any duties for the limited liability company that are unrelated to his duties as chairman. However, the chairman of the board of directors may, where special circumstances so require, perform any work, which they are requested to perform by and for the board of directors.

*Duties of the board of directors*

**§ 115.** *(1)* In limited liability companies that have a board of directors, the board must, in addition to performing overall management duties and strategic management duties and ensuring proper organization of the company's business, ensure that
1) the bookkeeping and financial reporting procedures are satisfactory, having regard to the circumstances of the limited liability company;
2) adequate risk management and internal control procedures have been established;
3) the board of directors receives ongoing information as necessary about the limited liability company's financial position;
4) the executive board performs its duties properly and as directed by the board of directors; and that
5) the financial resources of the limited liability company are adequate at all times, and that the company has sufficient liquidity to meet its current and future liabilities as they fall due. The limited liability company is therefore required to continuously assess its financial position and ensure that the existing capital resources are adequate.

*Duties of the supervisory board*

**§ 116.** *(1)* In limited liability companies that have a supervisory board, the board must ensure that
1) the bookkeeping and financial reporting procedures are satisfactory, having regard to the circumstances of the limited liability company;
2) adequate risk management and internal control procedures have been established;
3) the supervisory board receives ongoing information as necessary about the limited liability company's financial position;
4) the executive board performs its duties properly; and
5) the financial resources of the limited liability company are adequate at all times, and that the company has sufficient liquidity to meet its current and future liabilities as they fall due. The limited liability company is therefore required to continuously assess its financial position and ensure that the existing capital resources are adequate.

*Duties of the executive board*

**§ 117.** *(1)* In limited liability companies that are managed under § 111, subsection 1, paragraph 1, the executive board is in charge of day-to-day management. The executive board must follow the guidelines and directions issued by the board of directors. Day-to-day management does not include decisions of an unusual nature or of major importance, having regard to the circumstances of the limited liability company. Such decisions may only be made by the executive board if specifically authorized by the board of directors unless it will cause considerable inconvenience to the limited liability company's activities to wait for authorization by the board of directors. If so, the board of directors must be notified of the decision as soon as possible.
*(2)* In limited liability companies falling within § 111, subsection 1, paragraph 2, the executive board is responsible for overall, strategic and day-to-day management. The executive board must also ensure proper organization of the limited liability company's business.

**§ 118.** *(1)* The executive board must ensure that the limited liability company's bookkeeping complies with the applicable statutory rules, and that its assets are properly managed.
*(2)* The executive board must also ensure that the financial resources of the limited liability company are adequate at all times, and that the company has sufficient liquidity to meet its current and future liabilities as they fall due. The limited liability company is required to continuously assess its financial position and ensure that the existing capital resources are adequate.

*Loss of capital*

**§ 119.** *(1)* If it is established that the equity of a limited liability company represents less than half of the subscribed capital, the management of the company must ensure that a general meeting is held within six months. However, regardless of the value of the company's subscribed capital, the first sentence will apply to all cases where the company's equity falls below DKK 62,500. At the general meeting, the central governing body must report the financial position of the limited liability company and, if necessary, submit a proposal for measures that should be taken, including a proposal for dissolution of the limited liability company.

*Election of members of the board of directors and the supervisory board*

**§ 120.** *(1)* In public limited companies, the majority of the members of the board of directors or the supervisory board must be elected by the general meeting.
*(2)* The articles of association may provide public authorities or other parties with the right to appoint one or more members of the board of directors or the supervisory board.
*(3)* Before holding elections for members of the board of directors or the supervisory board at the general meeting, public limited companies must provide information on managerial posts held by the candidates in other commercial enterprises, except for posts held in the public limited company's own wholly owned subsidiaries. If a candidate is a member of management in both another parent company and in one or more of its wholly owned subsidiaries, notwithstanding the first sentence, it will be sufficient to state the name of the parent company and the number of subsidiaries in which the candidate is a member of management. The shareholders may deviate from this subsection by unanimous decision.
*(4)* The members of the board of directors or supervisory board elected by the general meeting hold office in the period specified in the articles of association. The members' term of office expires with the closing of an annual general meeting held no later than four years after their election.
Resignation of members of the board of directors and the supervisory board

**§ 121.** *(1)* Members of the board of directors or the supervisory board may resign at any time. Notice of resignation must be given to the board of directors or the supervisory board of the limited liability company and, if the member has not been elected by the general meeting, also to the appointing party. Members of the board of directors or the supervisory board may be removed at any time by the electing or appointing party.
*(2)* If there is no alternate member to replace the member, the other members of the board of directors or the supervisory board must arrange for the election of a new member to replace the resigning member during the remainder of his term of office. This also applies if a member elected by the employees under § 140 or § 141 ceases to be employed by the limited liability company or within the group. However, if the election is to be held at the general meeting, it may be postponed until the next annual general meeting for the election of members of the board of directors or supervisory board, provided that the remaining members and alternate members of the board of directors or the supervisory board can form a quorum.

*Election of chairman*

**§ 122.** *(1)* The board of directors or the supervisory board of a public limited company elects its own chairman, unless otherwise provided by the articles of association. In the event of a tied vote, the election will be resolved by lot.

*Meetings of the board of directors and the supervisory board*

**§ 123.** *(1)* The chairman of the board of directors or the supervisory board of a public limited company must ensure that the supreme governing body convenes meetings when necessary and that all members are invited to attend. Any member of management, or the company's auditor elected by the general meeting under § 144, can demand that the supreme governing body be invited to attend. Executive officers, including executive officers who are not members of the board of directors or the supervisory board, have a right to attend and speak at meetings of the board of directors or the supervisory board, unless otherwise determined in each case by the board of directors or the supervisory board.

*Quorum of the board of directors and the supervisory board*

**§ 124.** *(1)* The board of directors or the supervisory board forms a quorum when more than half of its members are represented, unless a higher number of members is required by the articles of association. However, resolutions cannot be passed without all members being given, as far as possible, access to participate in the transaction of the business.

*(2)* If a member is absent, and an alternate member has been elected, the alternate member must have the right to replace the member for as long as he is absent. Unless otherwise resolved by the board of directors or the supervisory board, or provided in the articles of association, in special cases members can grant a proxy to another member instead of calling an alternate member if it is considered appropriate having regard to the issue to be discussed.

*(3)* All resolutions by the board of directors or the supervisory board must be passed by a simple majority of votes, unless a special majority is required by the articles of association. It may be stipulated in the articles of association that the chairman, or in his absence the vice-chairman, casts the deciding vote in the event that there is a tied vote.

*Meetings of the board of directors and the supervisory board by written procedure or electronic means*

**§ 125.** *(1)* Meetings of the board of directors and the supervisory board may be held by written procedure to the extent that this does not prevent the board from performing its duties. Any member of management may, however, demand an oral discussion. The provisions of this Act that apply to meetings of the board of directors and the supervisory board also apply to meetings by written procedure, subject to any necessary amendments.

*(2)* Meetings of the board of directors and the supervisory board may be held electronically to the extent that this does not prevent the board from performing its duties. Any member of management may, however, demand an oral discussion. The provisions of the Danish Act on Public and Private Limited Companies that apply to meetings of the board of directors and the supervisory board, and to electronic communications, also apply to meetings held electronically and to all communication for this purpose, subject to any necessary deviations. Language of meetings of the board of directors and the supervisory board

**§ 126.** *(1)* Meetings of the board of directors or the supervisory board must be held in Danish, cf. subsections 2 and 3.

*(2)* Meetings of the board of directors or the supervisory board may, if so determined by the majority, be held in a language other than Danish if all participants are at the same time offered simultaneous interpretation to and from Danish. Any decision to hold meetings in a language other than Danish without simultaneous interpretation must be unanimously agreed by the members of the board of directors or the supervisory board.

*(3)* Notwithstanding subsection 2, meetings of the board of directors and the supervisory board may be held in Swedish, Norwegian or English without simultaneous interpretation if that language is also the official group language as provided by the articles of association.

*(4)* Where documents that are to be used for the purposes of carrying out the work of the board of directors or the supervisory board are not prepared in Danish, any member of the board of directors or the supervisory board may demand that such documents be translated into Danish. This does not apply, however, if the documents are prepared in Swedish, Norwegian or English, and such language is the official group language as provided by the company's articles of association.

*Voidable transactions and agreements with sole shareholders*

**§ 127.** *(1)* Members of management in a limited liability company may not enter into any transaction that is clearly capable of providing certain shareholders or others with an undue advantage over other shareholders or the limited liability company. Members of management in the limited liability company must not comply with any resolution passed by the general meeting or any other governing body if that resolution is invalid or contravenes the law or the company's articles of association.

*(2)* Agreements entered into between a sole shareholder and the limited liability company are only valid if drafted in a manner that can subsequently be verified, except for agreements made on usual terms in the ordinary course of business.

*Minutes of proceedings at meetings of the supreme governing body*

**§ 128.** *(1)* If the supreme governing body is made up of more than one member, minutes must be taken to record the proceedings at its meetings, and those minutes must be signed by all members present.

*(2)* Any member who dissents on a matter at the meeting is entitled to have his opinion entered in the records of the meeting.

*Audit records*

**§ 129.** *(1)* The members of the supreme governing body must sign the records prepared by the auditor if the auditor is required by the Danish Act on Registered and State-Authorized Public Accountants or any other statute to keep audit records, or if the auditor has kept such records in accordance with an agreement with the limited liability company.

*Rules of procedure for the board of directors and the supervisory board*

**§ 130.** *(1)* If the board of directors or the supervisory board of a limited liability company is made up of more than one member, rules of procedure to govern the performance of the board's duties must be adopted.

*(2)* For the purpose of drawing up the rules of procedure, the nature of the limited liability company's business and its needs must be considered. In this regard, the board of directors or the supervisory board should consider in particular whether the rules of procedure should include provisions on the composition of the board, the division of responsibilities, supervision of the executive board's day-to-day management, the keeping of books, minutes, etc., any written and electronic meetings, the duty of confidentiality, alternate members, accounting control, signing of audit records, and provisions to ensure that there is the requisite basis for auditing.

*(3)* Rules of procedure adopted by the board of directors or the supervisory board in state-owned public limited companies must be published in the Commerce and Companies Agency's IT system within four weeks of their adoption. The same time limit applies if a public limited company converts to a state-owned public limited company under Part 20, or in the event that changes are made to the rules of procedure for a state-owned public limited company.

*Disqualification*

**§ 131.** *(1)* No member of management may participate in the transaction of business that involves any agreement between the limited liability company and that member, or legal proceedings against that member, or the transaction of business that involves any agreement between the limited liability company and a third party, or legal proceedings against a third party, if the member has a material interest in such business and that material interest could conflict with the interests of the limited liability company.

*Duty of confidentiality*

**§ 132.** *(1)* Members of the board of directors or the supervisory board, executive officers, valuation experts and scrutinizers, including their assistants and alternates, may not make unauthorized disclosure of any information gained in the performance of their duties.

*Disclosure of information, etc. to the auditor*

**§ 133.** *(1)* The management of a limited liability company must provide any auditor or scrutinizer who is elected by the general meeting to make a declaration on the limited liability company's situation with such information as is likely to influence the assessment of the limited liability company and, if the limited liability company is a parent company, its group as defined by the Danish Financial Statements Act.

*(2)* The management of a limited liability company must provide any auditor or scrutinizer who is elected by the general meeting to make a declaration on the limited liability company's situation with access to make such examinations as he deems necessary to perform the work and must provide the auditor or scrutinizer with such information and assistance as he deems necessary to perform the work.

*(3)* The management of a Danish limited liability company, where that company is a subsidiary in a group of companies, owes a similar duty to the auditor of the parent company.

*Notification of group relations*

§ 134. *(1)* The central governing body of a Danish parent company must notify the central governing body of a subsidiary as soon as any group relationship has been established. The central governing body of a Danish subsidiary must provide the parent company with such information as is necessary to assess the group's position and the results from its activities.

*Right of representation and power to bind the company*

§ 135. *(1)* Members of the board of directors and the executive board act on behalf of the limited liability company in relation to third parties.

*(2)* The limited liability company is bound by agreements made on behalf of the company by the entire central governing body, by a member of the board of directors, or by a member of the executive board. Members of the supervisory board have no power to bind the limited liability company.

*(3)* The power of each member of the board of directors and executive board to bind the company, as conferred by subsection 2, may be restricted by the articles of association so that it can only be exercised by members acting jointly or by one or more specific members acting jointly or alone. No other restrictions on the power to bind the company may be registered.

*(4)* Notwithstanding subsection 1, where limited liability companies have a supervisory board, the supervisory board may act on behalf of the company where legal action is brought against one or more members of the company's executive board. The supervisory board may also act on behalf of the company where legal action is brought against the company by a member of its executive board. The same applies where members of the executive board are either disqualified or cannot represent the company for any other reason.

*(5)* Power of procuration may only be granted by the central governing body.

§ 136. *(1)* Any agreement or commitment that is made on behalf of the limited liability company by persons authorized to bind the company under § 135 will be binding on the limited liability company, unless
1) the persons authorized to bind the company have not acted within the limitations of their powers as provided by this Act;
2) the agreement or commitment does not fall within the objects of the limited liability company, and the company proves that the third party knew or should have known this; or
3) the person authorized to bind the company has exceeded his authority or has seriously failed to act in the company's interests, and the third party knew or should have known this.

*(2)* It will not be sufficient evidence under subsection 1, paragraph 2, of this provision that the limited liability company has published a statement of its objects, as provided by the articles of association, in the Commerce and Companies Agency's IT system.

§ 137. *(1)* Where an election or appointment of members of the management of a limited liability company has been published in the Commerce and Companies Agency's IT system in accordance with § 14, no defect in the election or appointment may be relied upon against any third party, unless the limited liability company proves that the third party had knowledge of that defect.

*Remuneration for members of management*

§ 138. *(1)* Members of management in a limited liability company may receive fixed or variable remuneration. The amount of remuneration may not exceed what is considered usual, considering the nature and extent of the work, and what is considered reasonable with regard to the limited liability company's financial position and, in the case of parent companies, the group's financial position.

*(2)* If a limited liability company is administered in bankruptcy, members of its management must repay any variable remuneration received in the five-year period preceding the date of presentation of the bankruptcy petition, even if they have acted in good faith, and provided that the limited liability company was insolvent when the amount of the variable remuneration was fixed.

§ 139. *(1)* Before a public limited company whose shares are admitted to trading on a regulated market can enter into a specific agreement for incentive-based remuneration for a member of its management, the limited liability company's supreme governing body must set general guidelines for incentive-based remuneration for the company's management. The guidelines must be considered and adopted by the limited liability company in general meeting.

*(2)* If the general meeting has adopted guidelines for incentive-based remuneration for the limited liability company's management under subsection 1, a provision must be included in the company's articles of association to that effect. Inclusion of the provision in the articles of association is not subject to a separate resolution by the general meeting. As soon as possible following their adoption by the general meeting, the guidelines must be made available to the public on the limited liability company's website and must specify the date they were adopted.

*(3)* Specific agreements for incentive-based remuneration under subsection 1 may be entered into the day after publication of the guidelines, as adopted, on the company's website, see subsection 2, and not before. When entering into specific incentive agreements, the existing guidelines, as adopted, must be observed.

*(4)* Subsections 1 to 3 apply also to any agreements to renew or amend specific existing agreements for incentive-based remuneration for members of the limited liability company's management.

Part 8

*Employee representation*

*Representation at company level*

**§ 140.** *(1)* In limited liability companies that have employed an average of at least 35 employees for the preceding three years, the employees are entitled to elect representatives and alternate representatives to the company's supreme governing body, corresponding to half the number of the other management members. However, the employees always have the right to elect at least two representatives with alternate members. If the number of representatives to be elected by the employees is not a whole number, it must be rounded up.

*(2)* The employees are entitled to elect fewer representatives than the number of representatives specified by subsection 1, where that many representatives cannot be elected.

*Representation at group level*

**§ 141.** *(1)* § 140 also applies to the employees of a Danish parent company, see §§ 6 and 7 and its subsidiaries registered in Denmark as well as branches of foreign subsidiaries.

*(2)* If the parent company is subject to § 140, its employees are entitled to elect two representatives, with alternate representatives. The total number of employee representatives elected to the parent company's supreme governing body must constitute half the number of the other members, provided that the number of employee representatives is at least three. However, the employees are entitled to elect a lesser number if the number of representatives specified in the first sentence cannot be elected.

*(3)* Subject to the rules on cross-border mergers and divisions in Part 16 of the Danish Act on SEs (lov om SE-selskaber), the parent company in general meeting may decide that the employees of one or more foreign subsidiaries are eligible to be elected and are entitled to vote. If the group has employees in Danish subsidiaries, those employees may elect at least one representative at any time. If the employees of the Danish subsidiaries constitute more than 10% of the total number of employees eligible to be elected, such employees may elect at least two representatives. If the majority required for representation at group level as provided in § 142 is not reached, but the majority of the Danish subsidiaries vote in favor of group representation, employee representation will be deemed to have been adopted by the employees of the Danish subsidiaries to the effect that elections for group representatives will only be held in the Danish subsidiaries.

*Election of employee representatives*

**§ 142.** *(1)* A proposed resolution to elect board members under §§ 140 and 141 cannot be adopted unless it is passed by at least half of the employees in the limited liability company and its subsidiaries, respectively, unless

the management and employees agree not to vote on this. Notice of the resolution must be given to the supreme governing body in a manner that can subsequently be verified.

**§ 143.** *(1)* The Commerce and Companies Agency may prescribe rules on the following:
1) which persons are considered employees for the purpose of employee representation;
2) calculation of the average number of employees under §§ 140 and 141;
3) the conduct for elections under §§ 140 to 142, including rules to ensure secret ballot;
4) derogation from any of the specific rules made under this section, where derogation is by agreement between the management and employees;
5) how the employees in limited liability companies and groups in which board members have been elected under §§ 140 and 141 must be informed about the company's affairs;
6) security of employment for employee representatives in management bodies, including representatives elected by voluntary arrangements, and resolution of related disagreements;
7) the consequences of any contravention of statute and rules made under statute;
8) that the register of shareholders must also be made available to employee representatives in companies and parent companies in which no employees have been elected to the board of directors under §§ 140 and 141; and
9) requirements for providing notice of general meetings to the employees of the company and the group, respectively, if the employees have notified the board of directors that employee representatives are to be elected.


Part 9

*Auditing and scrutiny*

*Auditing*

**§ 144.** *(1)* If a limited liability company is subject to audit obligations under the Danish Financial Statements Act or any other statute, or if the general meeting otherwise resolves that the company's financial statements must be audited, the general meeting must elect one or more approved auditors, and alternate auditors if applicable. Such resolution may be passed by a simple majority of votes under § 105. The articles of association may also grant other parties the right to appoint one or more additional auditors.

*(2)* Any shareholder may request the Commerce and Companies Agency to appoint an additional approved auditor to participate in the audit together with the other auditor(s) until the next general meeting where
1) shareholders holding no less than one-tenth of the capital have voted in favor of an additional auditor at a general meeting whose agenda included the election of an auditor; and
2) the request is made no later than two weeks after the date of the general meeting.

*(3)* The Commerce and Companies Agency may appoint an auditor if a limited liability company which is subject to audit obligations has no statutory auditor and a member of management or a shareholder so requests. The appointment remains in force until a new auditor has been elected by the general meeting.

*(4)* Where an auditor is appointed under subsections 2 or 3, the appointment must be registered directly, without any application for registration. The Commerce and Companies Agency must determine the remuneration for the appointed auditor. Costs incidental to the statutory audit of the limited liability company's annual report are payable out of public funds but must be reimbursed by the company.

*(5)* If the auditor is to express an opinion about the affairs of a limited liability company, the auditor has the rights and obligations provided by this Act, unless a distinction has been made by the company between the auditors elected by the general meeting to audit the financial statements as provided in subsection 1, and other auditors.

**§ 145.** *(1)* Any subsidiary in a group, as defined by the Danish Financial Statements Act, in which the parent company is a state-owned public limited company or a business whose securities are admitted to trading on a regulated

market, must, where possible, elect the same auditor as the auditor elected by the parent company in general meeting. Where this is not possible, the subsidiary must elect an auditor who is a partner of the auditor elected by the parent company in general meeting, unless this is also not possible.

**§ 146.** *(1)* Auditors may be removed by the party that appointed them. An auditor elected to audit the company's financial statements under § 144 may only be removed before his term of office expires if such removal is based on reasonable grounds.

 *(2)* If an auditor elected by the general meeting, see § 144, subsection 1, resigns or is removed from office, or if an auditor's appointment is otherwise terminated before the auditor's term of office expires, the auditor must notify the Commerce and Companies Agency to such effect as soon as possible. The notice must be accompanied by an adequate account of the reason for the termination if this took place before expiry of the auditor's term. In companies whose securities are admitted to trading on a regulated market, an auditor elected by the general meeting must also notify the market of his resignation or removal as soon as possible in accordance with the provisions of the Danish Securities Trading Act.

 *(3)* If the auditor elected to audit the company's financial statements as provided in § 144, subsection 1, resigns or is removed from office, or if the auditor's appointment is otherwise terminated, see subsection 1, and no alternate auditor has been elected to replace the auditor, the central governing body must cause a new auditor to be elected as soon as possible in accordance with § 144, subsection 1. An extraordinary general meeting must be convened to elect a new auditor no later than two weeks after the company has been notified of the resignation or removal. However, in state-owned public limited companies and companies whose securities are admitted to trading on a regulated market, the general meeting must be convened no later than eight days after the company has been notified of the resignation or removal.

 **§ 147.** *(1)* The auditor elected to audit the company's financial statements as provided in § 144, subsection 1, must comply with any audit requirements made by the general meeting as far as such requirements are not contrary to statute, the company's articles of association or generally accepted auditing standards.

 *(2)* The auditor must also ensure that the company's management complies with its obligations to draw up rules of procedure and prepare and keep books, records and minutes, and whether the rules on the submission and signing of audit records are complied with.

 *(3)* If the auditor finds that the requirements referred to in subsection 2, are not fulfilled, the auditor must prepare a separate declaration to that effect to accompany the annual report at the general meeting.

 **§ 148.** *(1)* Any changes with respect to an auditor elected under § 144, must be registered in the Commerce and Companies Agency's  IT system or reported to the Board, see § 9. If an auditor is replaced before expiry of their term of office, then the provisions in § 10, subsection 2, shall apply.

 **§ 149.** *(1)* The auditor may demand that members of the company's management provide any information that is deemed to be of importance to the assessment of the company and, if the company is a parent company, its group, see § 7. This also applies to members of the management of a Danish company which is a subsidiary in a group as defined by the Danish Financial Statements Act.

*Scrutiny*

 **§ 150.** *(1)* Any shareholder may, at the annual general meeting or at a general meeting whose agenda includes such issues, submit a proposal for scrutiny of the company's formation, of any specific matter relating to the administration of the company, or of certain financial statements. If the proposal is adopted by a simple majority of votes, the general meeting must elect one or more scrutinizers.

 *(2)* If the proposal is not adopted, but shareholders representing 25% of the share capital vote in favor of the proposal, any shareholder may, no later than four weeks after the general meeting, request that scrutinizers be appointed by the bankruptcy court with jurisdiction over the place where the company's registered office is situated. The bankruptcy court must provide the company's management and any auditor elected by the general meeting to audit the company's financial statements, see § 144, subsection 1, and, if relevant, the person whose affairs are the subject-matter of the request, with the right to make a statement to the court before it makes its decision. The request will only be allowed if the bankruptcy court finds it to be based on reasonable

grounds. The bankruptcy court determines the number of scrutinizers. The court's decisions are subject to appeal.

*(3)* The provisions on independence in § 24 of the Danish Act on Registered and State-Authorized Public Accountants apply, with such changes as are necessary to scrutinizers elected or appointed under subsections 1 and 2.

**§ 151.** *(1)* The scrutinizer may demand from the company's management any information deemed to be of importance to the assessment of the company and, if the company is a parent company, its group as defined by the Danish Financial Statements Act. This also applies to the management of a Danish company that is a subsidiary in a group as defined by the Financial Statements Act.

**§ 152.** *(1)* The scrutinizers must submit a written report to the general meeting and are entitled to receive remuneration from the company. If the scrutinizers have been appointed by the bankruptcy court, their remuneration will be determined by the court.

*(2)* No later than eight days before the date of any general meeting, the report prepared by the scrutinizers must be made available for inspection by the shareholders.

Part 10

*Capital increases*

**§ 153.** *(1)* The capital of a limited liability company may be increased by
1) subscriptions for new shares;
2) conversion of the company's reserves into share capital by the issue of bonus shares; or
3) the issue of convertible debt instruments or warrants.

*(2)* No new shares may be subscribed for at a discount or subject to any reservations. Resolution by the general meeting to increase the capital

**§ 154.** *(1)* The general meeting may pass a resolution to increase the share capital in accordance with the rules in this Part of the Act.

*(2)* Any resolution under subsection *(1)* must be passed by the same majority required for amendments to the articles of association.

**§ 155.** *(1)* The general meeting may authorize the central governing body to increase the capital by including a provision to this effect in the articles of association. The authorization may be given for one or more periods of up to five years at a time.

*(2)* The general meeting may also authorize the central governing body to issue convertible debt instruments or warrants under § 169 by including a provision to this effect in the articles of association, provided that it also authorizes the central governing body to implement the capital increase required for this purpose, see subsection 1. The authorization may be given for one or more periods of up to five years at a time.

*(3)* In connection with any authorization under subsections 1 and 2, the articles of association must specify as follows:
1) for which type of capital increase, as set out in this Part of the Act, the authorization is given;
2) the expiry date for the period specified in subsection 1 or 2, second sentence;
3) the maximum amount of the capital increase that may be implemented by the central governing body; and
4) provisions governing the matters referred to in § 158, paragraphs 5, 6, 9, 10 and 11.

*(4)* If the capital can be increased in whole or in part by contribution of assets other than cash, this must be stipulated in the articles of association. Also, any resolution made by the general meeting to depart from the existing shareholders' pre-emption rights under § 162, must be specified.

*Procedural requirements for capital increases*

**§ 156.** *(1)* Any proposal to increase capital in a public limited company must be made available to the shareholders as prescribed in §§ 98 and 99 and be submitted to the general meeting.

*(2)* If the annual report for a public limited company for the last financial year is not going to be under consideration by the same general meeting, the following documents must be submitted:

1) the latest annual report as adopted;
2) a report by the company's central governing body that includes information about events of major importance to the company's position that have occurred after presentation of the annual report, unless such information may be detrimental to the company because of special circumstances; and
3) a declaration by the company's auditor about the report made by the central governing body if the company's annual report is subject to audit obligations under the Danish Financial Statements Act or any other statute.
 *(3)* The shareholders may deviate from subsections 1 and 2 by unanimous agreement.

*Requirements for the notice*

 **§ 157.** *(1)* In connection with an increase in capital for a public limited company, the notice of the general meeting must include information about the preemption rights of shareholders or others and instructions on how to exercise such rights.
 *(2)* In case of deviation from the shareholders' preemption rights under § 162, the reason for the deviation and for the proposed subscription price must be stated in the notice.
 *(3)* The shareholders may agree to deviate from subsections 1 and 2.

*The substance of the resolution*

 **§ 158.** *(1)* The resolution to increase capital by a subscription for new shares must specify
1) the minimum and maximum amount by which the share capital may be increased;
2) the subscription price and the size or number of the shares;
3) when the new shares will confer on the holders a right to receive dividends and other rights in the limited liability company;
4) the estimated costs of the capital increase that are payable by the limited liability company;
5) the share class for the new shares if different classes exist or are contemplated;
6) the pre-emption rights of the shareholders or others and any restrictions on the new shareholders' pre-emption rights in the event of future increases, see § 162;
7) the time allowed for subscription and a time limit that allows shareholders at least two weeks from the date they are notified to exercise their pre-emption rights;
8) the last day of payment for the shares and, where the allotment is not left to the central governing body, the rules governing allotment in case of oversubscription of any shares not subscribed for by the exercise of a pre-emption right;
9) any restrictions on the negotiability of the new shares or any obligation on the new shareholders to have their shares redeemed;
10) whether the new shares are negotiable instruments; and
11) whether the new shares will be registered shares or bearer shares.

 **§ 159.** *(1)* If the company's central governing body exercises any authority under § 155, the resolution must specify
1) the minimum and maximum amount by which the share capital may be increased;
2) the subscription price and the size or number of the shares;
3) when the new shares will confer on the holders a right to receive dividends;
4) the costs of the increase that are payable by the limited liability company;
5) whether the new shares may be paid for by contribution of assets other than cash, see § 160; or
6) whether the new shares may be paid for by conversion of debt, see § 161.
 *(2)* Any resolution passed by the central governing body under subsection *(1)* is also subject to §§ 163 and 164.
 *(3)* The central governing body may make any amendments to the articles of association that are necessary because of the capital increase.

*Non-cash contributions or contributions by conversion of debt*

**§ 160.** *(1)* If new shares can be paid for by contribution of assets other than cash, this must be specified in the resolution on the increase, and a valuation report must be prepared in accordance with §§ 36 and 37. If the central governing body issues a declaration under § 38, subsection 2, it is not required to obtain a valuation report in connection with the contribution of shares as set out in § 38 subsection 1. The central governing body must publish the declaration in the Commerce and Companies Agency's IT system no later than two weeks after the date of the resolution on the contribution, see § 9, subsection 3. The balance sheet to be prepared under § 36, subsection 3 must be prepared as a pre-acquisition balance sheet for the acquired business.

**§ 161.** *(1)* If new shares can be paid for by conversion of debt, this must be specified in the resolution on the increase.

*(2)* The central governing body must explain the reason for and the point in time at which the debt was incurred, as well as the reasons for the proposed conversion.

*(3)* In public limited companies, the central governing body's explanation and any additional documents must be made available to the shareholders as provided in §§ 98 and 99 and must be submitted to the general meeting.

*(4)* Subsection *(2)* may be departed from by agreement between the shareholders.

*(5)* The shareholders may agree to depart from the requirement in subsection 3.

*Right to proportionate subscription*

**§ 162.** *(1)* In the event of a cash increase of the share capital, shareholders are entitled to subscribe for new shares in proportion to their existing shareholdings. It may be stipulated in the articles of association that the pre-emption rights are non-transferable to any third party.

*(2)* The general meeting may resolve, by the same majority of votes that is required to amend the articles of association, see § 106, to depart from the pre-emption rights in subsection 1 for the benefit of any other persons.

*(3)* If there are different share classes carrying different rights to vote and different rights to receive dividends or other distributions from the company, it may be stipulated in the articles of association that holders of the same class of shares have a priority right to subscribe for shares within their own share class. In this case, holders of shares of other classes may exercise their pre-emption rights under subsection 1 only after such subscription.

*(4)* The general meeting may resolve, by the same majority of votes that is required to amend the articles of association (see § 106), to depart from the pre-emption rights in subsections 1 and 3 for the benefit of employees in the company or in any of its subsidiaries. With the same majority of votes, the general meeting may fix a favorable price for the shares that are offered to the employees.

*(5)* However, a derogation from the shareholders' pre-emption rights which is greater than specified in the notice of the meeting can only be adopted by the general meeting with the consent of the shareholders whose rights are prejudiced.

*(6)* If the company has more than one class of shares, any resolution affecting the legal rights attaching to any of those classes will only be valid if it is adopted by shareholders attending the general meeting who hold at least two-thirds of the shares in the share class whose rights will be prejudiced.

*Subscription for new shares*

**§ 163.** *(1)* Any subscription for new shares must be in writing.

*(2)* In connection with the subscription, the articles of association and the documents specified in § 156 must be produced, unless it is resolved not to prepare such documents, see § 156, subsection 3. If the capital subscription falls within §§ 160 and 161, the documents referred to in these provisions must be produced upon subscription, unless it is resolved not to prepare such documents.

*(3)* The shareholders must be notified about the opportunity for subscription and the time allowed for exercising their pre-emption rights under the rules governing notices of general meetings. In public limited companies where all the shareholders are known to the company, the individual shareholders may instead be notified in writing.

**§ 164.** *(1)* Any resolution to amend the articles of association that requires a capital increase will lapse if the prescribed minimum subscription amount for the capital increase has not been raised within the time period stipulated in the resolution. In this case, any amount paid in for the capital must be refunded as soon as possible.

*Issue of bonus shares*

**§ 165.** *(1)* The limited liability company may issue bonus shares by transferring amounts to the share capital that have been recorded in the company's latest annual report, as adopted, as
1) retained earnings; or
2) reserves with the exception of any reserve under §§ 35 a and 35 b of the Danish Financial Statements Act, cf. subsection 2.
*(2)* For the issue of bonus shares, the company may also use
1) any profit realized in the current financial year and not distributed, spent or tied up; or
2) any distributable reserves accumulated or released in the current financial year.
*(3)* Any resolution passed under subsections 1 and 2 must specify the amount of the share capital increase and the size and number of the shares. §158, subsection 1, paragraphs 3, 6 and 9 to 11, apply with such changes as are necessary.
*(4)* The capital increase can only be implemented when the resolution has been registered.
*(5)* If an application for registration of the bonus share issue is not filed within twelve months after the resolution for the capital increase, the resolution and any resulting amendments to the articles of association will be void.

**§ 166.** *(1)* If more than three years have passed since a bonus share issue was registered and not all shares have been transferred to the transferees, the central governing body of the limited liability company may request such transferee(s) to collect the shares within six months by publishing a notice in the Commerce and Companies Agency's IT system.
*(2)* If the time limit provided by subsection 1 has expired without any transferee having responded to the request, the central governing body may dispose of the shares at the shareholder's expense through a securities dealer, see § 4, subsection 1 of the Danish Securities Trading Act. The company may deduct its expenses for the publication of the notice and disposal of the shares from the proceeds of the sale. Any sales proceeds not claimed within three years after the sale will accrue to the limited liability company.

*Issue of convertible debt instruments and warrants*

**§ 167.** *(1)* The general meeting may resolve, by the same majority of votes that is required to amend the articles of association, to issue convertible debt instruments or warrants if it also resolves at the same time to increase the capital as required, see § 154.
*(2)* The resolution passed by the general meeting must specify the terms of the issue, including the maximum amount of the capital increase that may be subscribed on the basis of the security and the class to which the new shares will belong.
*(3)* A resolution passed by the general meeting under subsection 1, must also specify the rights that will accrue to the holder if they have not converted the debt instrument or exercised the warrant before the general meeting passes a resolution on one or more of the following transactions:
1) capital increase;
2) capital reduction;
3) issue of new warrants;
4) issue of new convertible debt instruments;
5) dissolution;
6) merger; or
7) division.
*(4)* The terms stipulated in any resolutions passed by the general meeting under subsections 2 and 3, must be communicated to the holders of convertible debt instruments or warrants.

**§ 168.** *(1)* The full text of any resolution passed by the general meeting under § 167 must be included in the articles of association. When the time allowed for subscription for the capital increase has expired, the company's central governing body may delete the provision.

**§ 169.** *(1)* If authorized under § 155, subsection 2, the central governing body may resolve to issue convertible debt instruments or warrants.
 *(2)* The resolution by the central governing body must specify the terms of the issue, including
1) the maximum amount of the capital increase that may be subscribed on the basis of the security;
2) the time allowed for subscription;
3) the class to which the new shares will belong;
4) the time allowed for subscription and a time limit that allows shareholders at least two weeks from the date they are notified to exercise their pre-emption rights;
5) the time when the rights start accruing;
6) the time for payment; and
7) the size or number of the shares and the subscription price.
 *(3)* In its resolution under subsection 1, the central governing body must also specify the rights that will accrue to the holder if he has not converted the debt instrument or exercised the warrant before one of the following is implemented:
1) a capital increase;
2) a capital reduction;
3) the issue of new warrants;
4) the issue of new convertible debt instruments;
5) dissolution;
6) merger; or
7) division.
 *(4)* The terms specified in any resolutions made by the central governing body under subsections 2 and 3, and the authorization of the central governing body under § 155, subsection 2 must be communicated to holders of convertible debt instruments or warrants.
 *(5)* § 159 also applies to any resolution by the central governing body to increase the capital by conversion of convertible debt instruments or by the exercise of warrants.

**§ 170.** *(1)* The full text of any resolution made by the central governing body under § 169 must be included in the articles of association. The central governing body may make any amendments to the articles of association that are necessary because of the resolution.

**§ 171.** *(1)* If the amount paid for a debt instrument is less than the nominal amount of the share(s) into which the debt instrument may be converted in accordance with the loan terms, the residual amount must be paid in accordance with § 33 on partial payment of the capital or be covered by the part of equity that is distributable for dividend purposes.

*Terms governing registration of convertible debt instruments by a securities center*

**§ 172.** *(1)* The Commerce and Companies Agency may prescribe rules
1) governing the registration of convertible debt instruments by a securities center;
2) providing for information to be delivered to a securities center;
3) requiring the company to pay all expenses involved with the issue of convertible debt instruments through a securities center and their registration and safe keeping, etc. by an account-holding bank; and
4) stipulating that § 63 is also to apply to convertible debt instruments.

*Application for registration of a resolution to increase the capital*

**§ 173.** *(1)* Any resolution by the general meeting or the central governing body to increase the capital under this Part of the Act must be registered directly or an application for registration must be filed with the Commerce and Companies Agency within two weeks after payment for the shares has been made or the time limit for making such payment has expired.

*(2)* Any resolution by the general meeting or the central governing body to issue convertible debt instruments or warrants and to amend the articles of association accordingly under §§ 168 and 170 must be registered or be the subject of an application for registration with the Commerce and Companies Agency no later than two weeks after the resolution is passed.

**§ 174.** *(1)* Any registration or application for registration of a capital increase is subject to payment of the share capital that is required to be paid up under § 33 of this Act or the articles of association. Where a premium has been fixed, this must be paid up in full.

*(2)* The new shares will confer on the holders a right to receive dividends and other rights in the limited liability company from the date of registration of the capital increase, unless otherwise provided in the resolution for the increase. However, such rights accrue no later than twelve months after the date of registration.

*(3)* When registration is complete, the share capital is considered to have been increased by the total amount of the capital increase.

**§ 175.** *(1)* No later than four weeks after the end of the financial year, the central governing body must register or apply to register the amount of any capital increase that occurred during the year if
1) shares are subscribed for on the basis of convertible debt instruments or warrants;
2) the time the resolution allows for subscription exceeds twelve months; and
3) the prescribed minimum amount of the capital increase has been subscribed and paid up, see § 33.

*(2)* The central governing body may make any amendments to the articles of association that are necessary because of the capital increase.

*(3)* If the registration or application for registration under subsection 1, has not reached the Commerce and Companies Agency within four weeks after expiry of the time allowed for subscription, or if registration is refused, any amount already paid must be refunded, see § 177, subsection 3.

**§ 176.** *(1)* As soon as possible after expiry of the time limit provided for conversion of convertible debt instruments or the exercise of warrants, the central governing body must register or apply for registration of the amount of convertible debt instruments or the number of warrants that have been converted into shares with the Commerce and Companies Agency. If the period allowed for exercise exceeds twelve months, the central governing body must make the registration or file the application for registration under the rules in § 175.

*(2)* The central governing body may make any amendments to the articles of association that are necessary because of the capital increase.

*Revocation of a resolution to increase the capital*

**§ 177.** *(1)* Any resolution to increase the capital will lapse if registration is refused.

*(2)* A resolution will also lapse if it has not been registered or no application for registration has been filed within twelve months after the date of the resolution.

*(3)* If a resolution on the capital increase has not been registered, any amounts already paid must be refunded as soon as possible without deduction for costs, and any assets other than cash must be promptly returned.
Profit-sharing debt instruments

**§ 178.** *(1)* The general meeting may resolve, by a simple majority of votes, see § 105, to raise loans against the issue of debt instruments carrying interest, the amount of which depends in whole or in part on the dividend paid on the limited liability company's shares, or on the profit for the year.

*(2)* The general meeting may also authorize the central governing body to raise loans under subsection 1. The authorization may be given for one or more periods of up to five years at a time.

Part 11

*Capital outflow*

**§ 179.** *(1)* The company's assets may only be distributed to its shareholders
1) as dividends, based on the latest adopted financial statements, see § 180;
2) as extraordinary dividends, see §§ 182 and 183;
3) in connection with capital reductions, see §§ 185 to 193; or
4) in connection with dissolution of the company, see Part 14.
*(2)* The company's central governing body is responsible for ensuring that distributions do not exceed a reasonable amount that has regard to the company's financial position and, for parent companies, the group's financial position, and that no distribution is made to the detriment of the company or its creditors, see § 115, paragraph 5, and § 116, paragraph 5. The central governing body is also responsible for ensuring that reserves that cannot be distributed, as specified by statute or the company's articles of association, are covered.

*Distribution of ordinary dividend*

**§ 180.** *(1)* The general meeting must decide how to distribute, by dividend, the amount available for distribution as recorded in the financial statements. The general meeting cannot decide to distribute dividends of a higher amount than that proposed or accepted by the company's central governing body.
*(2)* Dividends may only be distributed out of distributable reserves, which are amounts stated as retained earnings in the company's latest adopted financial statements, and reserves that are distributable under statute or the company's articles of association, less retained losses.

**§ 181.** *(1)* If non-cash assets are distributed as dividends, a valuation report must be prepared, see §§ 36 and 37. The report must state that the amount of the dividend corresponds to at least the value of the non-cash assets distributed. If the central governing body prepares and files a declaration under § 38, subsection 2, it has no obligation to obtain a valuation report in connection with the distribution of assets as set out in § 38, subsection 1. The central governing body must publish the declaration in the Commerce and Companies Agency's IT system no later than two weeks after the date of the resolution on the distribution, see § 9, subsection 3.

*Distribution of extraordinary dividend*

**§ 182.** *(1)* The general meeting may decide to distribute extraordinary dividends after the company has presented at least one ordinary annual report. The general meeting cannot decide to distribute extraordinary dividends of a higher amount than that proposed or accepted by the company's central governing body.
*(2)* The general meeting may authorize the central governing body to resolve to distribute extraordinary dividends after presentation of its first financial statements. The authority may be subject to financial restrictions and time constraints.
*(3)* Extraordinary dividends under subsections 1 and 2 may only be made up of the amounts referred to in § 180, subsection 2, and profit for the current financial year up to the date of the resolution on distribution if such profit has not been distributed, appropriated or tied up. Any distributable reserves created or released in the current financial year may also be distributed as extraordinary dividends.

**§ 183.** *(1)* In public limited companies, any resolution on the distribution of extraordinary dividends must be accompanied by a balance sheet. The central governing body must assess whether the balance sheet from the latest annual report is adequate, or whether an interim balance sheet showing that sufficient funds are available for distribution has to be prepared, cf. subsection 2.

*(2)* Notwithstanding subsection 1, public limited companies that pass a resolution on the distribution of extraordinary dividends more than six months after the balance sheet date as set out in the company's latest adopted annual report must always prepare an interim balance sheet showing that sufficient funds are available for distribution.

*(3)* In private limited companies, the central governing body must assess whether a resolution under subsection 1, is to be accompanied by a balance sheet. However, private limited companies that pass a resolution on the distribution of extraordinary dividends more than six months after the balance sheet date as set out in the company's latest adopted annual report must always prepare an interim balance sheet showing that sufficient funds are available for distribution.

*(4)* If an interim balance sheet is prepared under subsections 1 to 3, that balance sheet must be audited by the company's auditor if the company is subject to audit obligations. The interim balance sheet must be prepared in accordance with the rules on preparation of the limited liability company's annual report. The date of the interim balance sheet may not be more than six months before the date of the resolution to distribute extraordinary dividends.

*(5)* If extraordinary dividends are distributed as non-cash dividends, a valuation report must be prepared, see §§ 36 and 37. The report must state that the amount of the dividend is equal to or more than the value of the non-cash asset(s) distributed. If the central governing body prepares and files a declaration under § 38, subsection 2, it has no obligation to obtain a valuation report in connection with the distribution of assets as set out in § 38, subsection 1.

*(6)* The central governing body's resolution on the distribution of extraordinary dividends must be recorded in the company's minute book. The interim balance sheet or the balance sheet for the latest financial year must be included in the board of directors' minute book as an appendix to the resolution.

*Special disclosure requirements in connection with dividends*

**§ 184.** *(1)* A public limited company that is subject to the rules issued under Part 8 of the Danish Securities Trading Act may not distribute the company's assets, see § 179 to the offeror or parties related to the offeror within the first 12 months after the acquisition of the company.

*(2)* However, notwithstanding subsection 1, distribution may be made if the offeror has disclosed information on the distribution and the detailed terms in the offer document prepared under the applicable rules of the Securities Trading Act. However, such information need not be given if the distribution does not exceed the overall improvement of the company's financial position after the date of acquisition, and if the offeror could not have foreseen the distribution when preparing the offer document.

*Resolutions on capital reductions*

**§ 185.** *(1)* The provisions of § 156 on the procedure to be followed in connection with resolutions on capital increases apply, with such changes as are necessary to resolutions on capital reductions in public limited companies.

**§ 186.** *(1)* Any resolution reducing the share capital must be passed by the general meeting by the same majority of votes that is required to amend the articles of association.

**§ 187.** *(1)* In private limited companies, the general meeting may, by way of a provision in the articles of association, authorize the central governing body to reduce the capital to a specified amount. In that case, the time limit prescribed in § 191 runs from the date of the resolution to exercise the authority.

*(2)* The request to creditors referred to in § 192 must be published no later than two weeks after the date of the resolution by the central governing body to exercise the authority.

**§ 188.** *(1)* Resolutions on capital reductions must specify the amount by which the share capital is to be reduced and for which of the following purposes that amount is to be used:

1) payment of losses;
2) distribution to shareholders; or
3) transfer to a special reserve fund.

*(2)* The resolution must state if a higher amount of the limited liability company's assets is to be distributed than the amount of the reduction, specifying the premium, if applicable.

*(3)* Only capital reductions for the purpose of distribution or transfer to a special reserve fund as referred to in subsection 1, paragraphs 2 and 3, may be made at a discount.

**§ 189.** *(1)* The general meeting of a limited liability company may only pass a resolution to use the capital reduction amount for distribution to the shareholders or for transfer to a special reserve fund, see § 188, subsection 1, paragraphs 2 and 3, if the central governing body submits or approves a resolution to such effect.
 *(2)* Where the capital is reduced under subsection 1, at a price lower than the nominal value of the shares, the balance, up to the nominal value of the shares, must be transferred to the company's distributable reserves.

**§ 190.** *(1)* A valuation report, see §§ 36 and 37 must be available at the date of the resolution that reduces the capital if the reduction is implemented for the purpose of distributing non-cash assets to the shareholders.
 *(2)* The declaration in the valuation report referred to in § 36, subsection 1, paragraph 4, must state that at the date of the resolution, the capital reduction plus any premium corresponds to at least the estimated value of the non-cash asset(s) to be distributed. If the central governing body prepares and files a declaration under the provisions of § 38, subsection 2, it has no obligation to obtain a valuation report in connection with the distribution of assets as set out in § 38, subsection 1. The central governing body must publish the declaration in the Commerce and Companies Agency's IT system no later than two weeks after the date of the resolution on the distribution, see § 9, subsection 3.

*Registration of capital reductions*

**§ 191.** *(1)* Resolutions on capital reductions must be registered directly or an application for registration must be filed, see § 9, no later than two weeks after the date of the resolution. The resolution is invalid if no registration or application for registration is filed with the Commerce and Companies Agency within such time limit.

*Request to creditors*

**§ 192.** *(1)* In connection with capital reductions, notice must be given to creditors of the limited liability company, requesting them to file their claims against the company within four weeks. The company's central governing body must make the request for the purpose of publication in the Commerce and Companies Agency's IT system if the amount of the reduction is to be used, in whole or in part, for
1) distribution to the shareholders, see § 188, subsection 1, paragraph 2; or
2) transfer to a special reserve fund, see § 188, subsection 1, paragraph 3.
 *(2)* No request to creditors needs to be made under subsection 1, if at the same time the capital is increased by the same nominal amount, plus a premium, as the amount of the reduction.
 *(3)* Where capital reductions are for amortization purposes, see § 74, the request to creditors under subsection 1, must be published at least four weeks before the date of the first capital reduction that is to be implemented in connection with amortization under the articles of association.

*Implementation of capital reductions*

**§ 193.** *(1)* Capital reductions are deemed to be finally implemented four weeks after the expiry of the time limit for the filing of claims against the limited liability company under § 192, unless an application to register that the resolution has been changed or withdrawn has been received by the Commerce and Companies Agency before the expiry of such time limit. The first sentence does not apply to capital reductions for amortization purposes, see § 74.
 *(2)* In accordance with § 9, the company's central governing body must, before the expiry of the time limit prescribed in subsection 1, notify the Commerce and Companies Agency if the capital reduction cannot be implemented in accordance with the information published under § 192 or cannot justifiably be implemented, see § 115, paragraph 5, and § 116, paragraph 5. In addition, if any claims filed and payable have not been paid in full and adequate security has not been provided upon request for claims not past due or for disputed claims, the capital reduction cannot be implemented, and the central governing body must notify the Commerce and Companies Agency to such effect. Upon request from either party, the Commerce and Companies Agency must decide whether the security offered can be deemed adequate.

*(3)* If a private limited company has resolved to authorize its central governing body to reduce the capital by up to a certain amount, see § 187, the capital reduction will only be deemed to be final when it has been registered in the Commerce and Companies Agency's IT system that such authority has been exercised.

*Repayment*

**§ 194.** *(1)* If any distribution has been made to the shareholders in contravention of the provisions of this Act, the shareholders must repay the amount with interest accruing annually at the rate fixed under § 5, subsection 1 and 2 of the Danish Act on Interest on Late Payment (lov om renter ved forsinket betaling m.v.) plus 2%. However, dividends must only be repaid if shareholders realized or ought to have realized that the distribution was illegal.

*(2)* If the amount cannot be collected, or if the shareholder has no obligation to repay the amount, the persons that participated in the resolution to make the payment or the implementation of the payment, or in the preparation or approval of the incorrect financial report will be liable under the general law of damages.

*Charitable gifts*

**§ 195.** *(1)* The general meeting may resolve to give gifts for charitable or similar purposes out of the limited liability company's funds if this is deemed reasonable, having regard to the purpose of the gift, the company's financial position and the circumstances in general. For the purposes referred to in the first sentence, the central governing body may use amounts that are insignificant considering the company's financial position.

Part 12

*A company's own shares*

*Acquisition of own shares in ownership or by way of security*

**§ 196.** *(1)* Limited liability companies may only acquire their own shares if they are fully paid up. The shares may be acquired both in ownership and by way of security.

*Acquisition of own shares for consideration*

**§ 197.** *(1)* If a limited liability company acquires its own shares for consideration, such consideration may only consist of the funds that may be distributed as extraordinary dividends under § 182, subsection 3. The company's holding of its own shares must be disregarded when assessing whether the company satisfies the capital requirements specified in § 4.

*(2)* A company's holding of its own shares can include shares acquired by a third party in its own name, but at the company's expense.

**§ 198.** *(1)* An acquisition of a company's own shares for consideration cannot proceed without the central governing body of the limited liability company obtaining authority from the general meeting, cf.§ 199.

*(2)* Such authority may only be given for a specified time, which may not exceed five years.

*(3)* The authority must specify

1) the maximum permitted value of the company's own shares; and

2) the minimum and maximum amount that may be paid by the company as consideration for the shares.

**§ 199.** *(1)* Where it is necessary in order to avoid significant and imminent detriment to the limited liability company, the central governing body may acquire the company's own shares on behalf of the company for consideration under §§ 196 to 198, without authority from the general meeting.

*(2)* If the limited liability company has acquired its own shares under subsection 1, the central governing body must notify the next general meeting of

1) the reason for and the purpose of the acquisition;

2) the number and value of the shares acquired;

3) the proportion of the share capital represented by the acquired shares; and

4) the consideration provided for the acquired shares.

**§ 200.** *(1)* Notwithstanding §§ 196 to 198, limited liability companies may, directly or indirectly, acquire their own shares
1) in connection with a reduction of the share capital under Part 11;
2) in connection with a transfer of assets by merger, division or other universal succession;
3) in satisfaction of a statutory takeover obligation of the company;
4) in connection with the purchase of fully paid-up shares in a forced sale for the satisfaction of a claim held by the company.

*Subsidiaries' acquisition of shares in parent companies*

**§ 201.** *(1)* §§ 196 to 200 apply, with such changes as are necessary to a subsidiary's acquisition of shares in its parent company in ownership or by way of security.

*Disposal of acquired shares*

**§ 202.** *(1)* Shares acquired without consideration in accordance with § 196 and shares acquired in accordance with § 200, paragraphs 2 to 4, must be disposed of as soon as possible without detriment to the limited liability company, cf. subsection 2.
*(2)* The shares must be disposed of no later than three years after the acquisition unless the value of the limited liability company's and its subsidiaries' aggregate shareholding in the company does not exceed the company's distributable reserves.

**§ 203.** *(1)* Shares acquired in ownership in contravention of §§ 196 to 201 must be disposed of as soon as possible and no later than six months after the acquisition.
*(2)* If shares have been acquired by way of security in contravention of §§ 196 to 201, the security must be released as soon as possible and no later than six months after the acquisition.

**§ 204.** *(1)* If any shares have not been duly disposed of as provided by §§ 202 and 203, the central governing body of the limited liability company must cause the share capital to be reduced by the value of such shares, see Part 11.

*Subscription for own shares*

**§ 205.** *(1)* Limited liability companies may not subscribe for their own shares.
*(2)* Shares that are subscribed for by a third party in its own name, but at the company's expense, are deemed to be subscribed for at the third party's own expense.
*(3)* Shares subscribed for in the company's name in contravention of subsection 1 are deemed to be subscribed for by the promoters or, in case of a capital increase, by the members of the company's management at their own expense, and they will be jointly and severally liable for the purchase price. However, this does not apply to promoters or members of the company's management who can establish that they neither realized nor ought to have realized that the subscription for the shares was illegal.
*(4)* Subsection 1 applies, with such changes as are necessary to a company's subscription for shares in its parent company. The shares in the parent company will be deemed to be subscribed for by the management of the subsidiary, see subsection 3.

Part 13

*Financial assistance using the limited liability company's own funds*

*Financing of purchase of own shares*

**§ 206.** *(1)* A limited liability company may not, directly nor indirectly, advance funds, make loans or provide security for a third party's acquisition of the limited liability company's shares or shares in its parent company, cf. subsection 2 and §§ 213 and 214.
*(2)* However, if the requirements in subsection 3 and §§ 207 to 209 on approval by the general meeting, reasonableness of the resolution, report by the central governing body and arm's length terms are satisfied,

a limited liability company may, directly or indirectly, advance funds, make loans or provide security with a view to a third party's acquisition of the company's shares or shares in its parent company.

*(3)* The limited liability company's central governing body must ensure that any third party receiving financial assistance is credit rated, see subsection 2.

**§ 207.** *(1)* Grants of financial assistance under § 206, subsection 2 are subject to approval by the general meeting. For the purpose of a resolution by the general meeting, the company's central governing body must present a written report to the general meeting, including information about
1) the reason for the proposed financial assistance;
2) the company's interest in entering into the transaction;
3) the conditions on which the transaction is entered into;
4) the consequences of the transaction for the company's liquidity and solvency; and 5. the price to be paid by the third party for the shares.

*(2)* The general meeting must pass the resolution required to approve the financial assistance under subsection 1 by the same majority of votes that is required to amend the articles of association (see § 106).

*(3)* The report to be presented under subsection 1 must be published in the Commerce and Companies Agency's IT system or be received by the Agency for the purpose of publication under § 9 within two weeks after the date of approval by the general meeting.

**§ 208.** *(1)* The total financial assistance granted by the limited liability company to third parties under § 206, subsection 2, may at no time exceed what is reasonable having regard to the company's financial position. If the company is a parent company within the meaning of §§ 6 and 7, the aggregate financial assistance may not exceed what is reasonable having regard to the group's financial position. For this purpose, the limited liability company may only use funds that can be distributed as dividends, see § 180, subsection 2.

**§ 209.** *(1)* Where a third party acquires shares in the company with the financial assistance of a limited liability company, see § 206, subsection 2, such assistance must be granted at arm's length. The same applies if a third party subscribes for shares under § 162 in connection with an increase in the subscribed capital.

*Financial assistance to parent companies, shareholders, members of management and others*

**§ 210.** *(1)* A limited liability company cannot, directly or indirectly, advance funds to make loans to or provide security for its shareholders or members of the management except as provided in §§ 211 to 214. The same applies in relation to shareholders or members of management in the company's parent company or businesses other than parent companies that control the company. The first sentence also applies to persons who, by marriage or lineal consanguinity, are related to a person falling within the first or second sentence or who have other close affiliations to such person.

*(2)* Notwithstanding subsection 1, a limited liability company may grant the financial assistance referred to in subsection 1, for the purpose of financing any purchase of its own shares under the rules in §§ 206 to 209.

**§ 211.** *(1)* A limited liability company may, directly or indirectly, advance funds to make loans to or provide security for the obligations of Danish and certain foreign parent companies.

*(2)* The Commerce and Companies Agency prescribes more detailed rules specifying which foreign parent companies are subject to subsection 1.

**§ 212.** *(1)* Notwithstanding § 210, a limited liability company may, directly or indirectly, advance funds to make loans to or provide security for the persons specified in § 210 for the purpose of usual business transactions.

*Exception for banks, etc.*

**§ 213.** *(1)* §§ 206 and 210 do not apply to banks or to mortgage loans granted by mortgage credit institutions.

*Exception for employees*

**§ 214.** *(1)* Sections 206 and 210 do not apply to transactions for the acquisition of shares from, or the transfer of shares to, employees of the company or any subsidiary.

*(2)* Minutes of meetings held by the central governing body must include a note on any transaction falling within subsection 1.

*(3)* Transactions falling within subsection 1, may only be entered into using funds that can be distributed as dividends under § 180.

*Repayment*

**§ 215.** *(1)* If a limited liability company has granted financial assistance in contravention of §§ 206 and 210, the amount must be returned to the company together with interest that accrues annually at the rate specified in § 5, subsection 1 and 2 of the Danish Interest Rates Act (renteloven) with the addition of 2%, unless a higher rate of interest is agreed.

*(2)* Where repayment is not possible, or where agreements for other financial assistance cannot be terminated, the persons who have agreed to or continued any transactions in contravention of §§ 206 and 210 will be liable for any loss suffered by the limited liability company.

*(3)* Any provision of security in contravention of §§ 206 and 210 is binding on the company if the contracting party did not know that the security had been provided in contravention of these provisions.

Part 14

*Dissolution of limited liability companies*

*Dissolution by declaration*

**§ 216.** *(1)* Limited liability companies that have paid all creditors may be dissolved by the company's shareholders making a declaration to the Commerce and Companies Agency that all debts, whether due or not, have been paid and that it has been resolved to dissolve the company. The shareholders' names and addresses must be set out in the declaration.

*(2)* The Commerce and Companies Agency may only register the dissolution if the declaration under subsection 1, is received by the Agency no later than two weeks after the date it was signed, and it is accompanied by a declaration from the Danish tax authorities that there is no claim for direct taxes or indirect taxes against the limited liability company.

*(3)* The company is dissolved when it has been removed from the Commerce and Companies Agency's register of active companies.

*(4)* The shareholders have personal, joint and several, and unlimited liability for the company's debts existing at the date that the declaration was made, whether due or not due, or disputed. Any excess must be distributed to the shareholders.

*Resolution to enter into liquidation*

**§ 217.** *(1)* Unless otherwise provided by statute, any resolution voluntarily dissolving a limited liability company by liquidation must be passed by the general meeting.

*(2)* The resolution must be passed by the same majority of votes as that required to amend the articles of association, see § 106. Where dissolution is prescribed by statute, by the limited liability company's articles of association, or by the Commerce and Companies Agency under this Act, the resolution must be passed by a simple majority of votes, see § 105.

*Election of liquidator*

**§ 218.** *(1)* The general meeting elects one or more liquidators to liquidate the company. In the period from the date of the resolution on voluntary dissolution, see § 217, subsection 1, up to the date of election of a liquidator, § 229, subsection 1, applies, with such changes as are necessary to any transactions made by management.

*(2)* Shareholders holding at least 25% of the share capital are entitled to elect a liquidator at the general meeting who will liquidate the company together with other liquidators elected by the general meeting.

**§ 219.** *(1)* One or more liquidators will replace management. The provisions of this Act on company management also apply, with such changes as are necessary to one or more liquidators.

*(2)* Liquidators may be removed at any time by the governing body of the company or the authority that has elected the liquidator.

*(3)* The provisions of this Act and the Danish Financial Statements Act on financial reporting, auditing, general meetings, and the submission of annual reports to the Commerce and Companies Agency apply, with such changes as are necessary to companies in liquidation, subject to the modifications provided by this Part of the Act.

*Application for registration of liquidation*

**§ 220.** *(1)* The liquidator must ensure that any application for registration of a resolution whereby the company enters into liquidation reaches the Commerce and Companies Agency no later than two weeks after the date of the resolution. Notice of the resolution must be sent to all known creditors at the same time as the application for registration is sent to the Commerce and Companies Agency.

*(2)* A company that has entered into liquidation must keep its name with "i likvidation" (in English, in liquidation) added to it. § 228, subsection 1 on registration applies.

*(3)* When a limited liability company has resolved to enter into liquidation, no registrations may be made with respect to the company, other than changes with respect to any auditor appointed by the bankruptcy court to audit the annual report and capital increases.

*Request to creditors*

**§ 221.** *(1)* Upon registration and publication in the Commerce and Companies Agency's IT system under § 220, subsection 1, the company's creditors are requested to file their proofs of claim with the liquidator within three months. At the time of applying for registration of the resolution on liquidation under § 220, subsection 1, the liquidator must notify all the company's known creditors of the resolution.

*(2)* The liquidator may not close and dissolve the estate until expiry of the three-month period prescribed in subsection 1.

*(3)* If a claim is not admitted as proved by a creditor, the creditor must be notified to such effect by registered post or by any other means of communication providing the same degree of proof of receipt. The creditor must be notified that if he wishes to contest the decision not to admit his claim, the matter must be brought before the bankruptcy court no later than four weeks after dispatch of the letter or other communication.

*(4)* Claims filed after the estate has been closed and dissolved must be paid out of funds not yet distributed to the shareholders.

*Distribution of dividends and liquidation proceeds*

**§ 222.** *(1)* The shareholders may agree to distribute dividends in a company in liquidation based on the latest adopted annual report.

*(2)* Dividend distributions under subsection *(1)* must be made in accordance with the general rules on dividends and extraordinary dividends in §§ 180 to 183 and 194.

**§ 223.** *(1)* Liquidation proceeds may not be distributed to shareholders until the time limit stipulated in the request to creditors referred to in § 221, subsection 1, has expired and all debt to known creditors has been paid, cf. subsection 2.

*(2)* If adequate security is provided, an interim distribution may be made before the liquidation is complete where the time limit for claims, see § 221, subsection 1, has expired and creditor claims, if any, have been paid. Shareholders can be requested to repay liquidation proceeds distributed as an interim distribution under § 194.

**§ 224.** *(1)* When the liquidation proceeds have been distributed, administration of the estate is concluded, and the general meeting may pass a resolution on final liquidation. Administration of the estate may not be concluded until any disputes under § 221, subsection 3, have been settled.

*(2)* The liquidators' application for registration of the final liquidation accounts must reach the Commerce and Companies Agency no later than two weeks after the accounts have been approved by the shareholders. The liquidation accounts must be annexed to the application for registration. The liquidation accounts must be audited if the company is subject to audit obligations under the Danish Financial Statements Act or any other statute. The Commerce and Companies Agency will then remove the company from the register.

*Compulsory dissolution*

**§ 225.** *(1)* The Commerce and Companies Agency may request the bankruptcy court to dissolve a limited liability company, if necessary under § 226, where
1) the Agency has not duly received the company's audited annual report prepared in accordance with the Danish Financial Statements Act;
2) the company does not have the management or registered office prescribed by this Act or the company's articles of association;
3) the company has failed to register an auditor for the company despite having audit obligations under the Financial Statements Act or any other statute;
4) the company has failed to register an auditor for the company despite the general meeting having resolved that the company's annual report must be audited; or
5) the company's management has failed to respond to claims for called-up share capital that the company has been proven to be unable to satisfy.

*(2)* The Commerce and Companies Agency may prescribe a time limit within which the limited liability company must remedy a defect under subsection 1. If the defect is not remedied on or before expiry of the time limit prescribed by the Agency, the Agency may decide that the company must be compulsorily dissolved.

**§ 226.** *(1)* Where a limited liability company does not resolve to dissolve the company but is required to do so by statute or the company's articles of association or by the Commerce and Companies Agency under the provisions of this Act, see § 217, subsection 2, second sentence, or if no liquidator is elected, the Commerce and Companies Agency may request the bankruptcy court with jurisdiction over the place where the company's registered office is situated to dissolve the company.

*(2)* Subsection 1, applies, with such changes as are necessary to compulsory dissolution of a company by court order under § 230.

**§ 227.** *(1)* The Commerce and Companies Agency's decision to request the bankruptcy court to dissolve a limited liability company must be published in the Agency's IT system.

*(2)* The limited liability company must keep its name with "under tvangsopløsning" (in English, in the process of compulsory dissolution) added to it.

*(3)* The bankruptcy court may appoint one or more liquidators. The bankruptcy court may also appoint an auditor. The provisions on liquidation in this Part apply to compulsory dissolution, always provided that the bankruptcy court or anyone authorized by the court will make decisions with respect to the company's affairs. The costs of dissolution will be paid out of public funds, if necessary.

*(4)* Upon conclusion of administration of the estate, the bankruptcy court must notify the Commerce and Companies Agency to such effect, and the Agency must register the dissolution of the company in the Agency's IT system.

**§ 228.** *(1)* When the Commerce and Companies Agency has decided that a limited liability company must be compulsorily dissolved, no registrations may be made with respect to the company, other than changes with respect to any auditor appointed by the bankruptcy court to audit the annual report.

*(2)* Notwithstanding subsection 1, registration may be made when a company applies for a discontinuation of proceedings at the bankruptcy court and resumption of the company's activities under § 232.

**§ 229.** *(1)* In the period from the date that the request for dissolution of the limited liability company is filed with the bankruptcy court up to the point when a liquidator has been appointed, management may carry out any necessary transactions that are not to the detriment of the company and its creditors.

*(2)* After appointment of a liquidator, the former members of management must provide the liquidator with any information that is required about the company's activities up to the date of commencement of the liquidation procedure, including any information necessary for the liquidator's assessment of existing and future claims. For groups, this obligation also applies in respect of the liquidator for the parent company.

*(3)* The liquidator may request the bankruptcy court to summon former members of the company's management to a court meeting for the purpose of obtaining the information referred to in subsection 2.

*Compulsory dissolution by the court*

**§ 230.** *(1)* Where any shareholders in a limited liability company have willfully contributed to passing a resolution by the general meeting that is in contravention of § 108, or have otherwise abused the influence that they have over the company or contributed to a contravention of this Act or the company's articles of association, the court may, upon request from shareholders representing no less than one-tenth of the share capital, order that the company be dissolved if special grounds exist because of the duration of the abuse or other circumstances.

*Resumption of business*

**§ 231.** *(1)* If no distribution has been made under § 223 or the shareholders may resolve to resume the company's business in accordance with § 106. In this connection, a management and an auditor, if applicable, must be elected and a declaration must be made by a valuation expert, see § 37, that the required capital is available. The share capital must be reduced to the amount available. If the required share capital is less than the required capital, see § 4 subsection 2, then the capital must be increased to at least the required amount.

*(2)* An application for registration of a resolution on resumption of business must be filed no later than two weeks after the date of the resolution. The application must be accompanied by a declaration from an approved auditor that no loans, etc. have been advanced to the shareholders in contravention of Part 13 of this Act.

**§ 232.** *(1)* Section 231 applies, with such changes as are necessary, where a company that is in the process of compulsory liquidation by order of the bankruptcy court applies for discontinuation of the proceedings and resumption of the company's activities.

*(2)* If the Commerce and Companies Agency has not received an application under subsection *(1)* within three months after the Agency has requested the bankruptcy court to dissolve the company, or if the company has previously been in compulsory dissolution within the past five years, the company's activities cannot be resumed. The three-month deadline is suspended if the company has been placed in pre-insolvency proceedings.

*(3)* If a company with share capital is subject to a compulsory liquidation and wishes to begin trading again, then resumption of business activities is conditional upon the company ensuring that the conditions which resulted in the company being sent for compulsory liquidation are rectified. These conditions must be rectified no later than at the same time the decision is made to permit the company to resume its business activities, cf. §231, subsection 1. Documentation of the rectified conditions must be submitted no later than when the company submits its petition, cf. subsection 1.

*(4)* If the bankruptcy court has appointed a liquidator, then they must also consent to the resumption of business activities.

*(5)* If the court orders a company to undergo compulsory liquidation, cf. §230, then they may not resume business activities.

*Transition into pre-insolvency or bankruptcy*

**§233** *(1)* Only the central governing body or, if the company is in liquidation, the liquidator, may file a petition in bankruptcy on behalf of the company.

*(2)* If the liquidators consider that the creditors will not be satisfied in full in connection with the liquidation, they must file a petition in bankruptcy.

*(3)* Where a company is under compulsory dissolution under § 226, the liquidator must file a petition in bankruptcy. If no liquidator has been appointed, the bankruptcy court may issue a bankruptcy order of its own accord.

*(4)* When a bankruptcy petition has been filed, no registrations may be made with respect to the limited liability company, other than changes with respect to any auditor elected.

*(5)* In a company where the trustee has taken over management, registrations may not be performed for the company apart from changes relating to an auditor designated by the trustee or changes, which are decided at the general meeting with the trustee's consent.

**§234** *(1)* A company that has initiated restructuring proceedings must keep its name with "under rekonstruktionsbehandling" (in English, in restructuring) added to it.

*(2)* A company that has initiated bankruptcy proceedings must keep its name with "under konkurs" (in English, in bankruptcy) added to it. Section 228*(1)* also applies. The completion of the bankruptcy proceedings must be registered in the Commerce and Companies Agency's IT system, unless otherwise stipulated in the bankruptcy court's notice of completion.

*Restoration to the register*

**§235** *(1)* The bankruptcy court may order that a limited liability company that has been deleted from the register of active companies in the Commerce and Companies Agency's IT system following liquidation or compulsory dissolution (see sections 225 to 230) must be restored to the register if additional funds become available for distribution. The bankruptcy court may also order that the company be restored to the register if other circumstances provide grounds for restoration.

*(2)* The former liquidators will be responsible for administration of the estate. If this is not possible, the bankruptcy court or a liquidator appointed by the court will be responsible for administration of the estate.

*(3)* An application for restoration and its completion must be received by the Commerce and Companies Agency no later than two weeks after the date of the bankruptcy court's order on restoration.

Part 15

*Merger and division*

*Merger of limited liability companies*

**§ 236.** *(1)* Under the provisions of this Part of the Act, a limited liability company may be dissolved without liquidation by transferring its assets and liabilities as a whole to another limited liability company in return for consideration provided to the shareholders of the non-surviving companies, a "merger by absorption". The same applies where two or more limited liability companies merge into a new limited liability company, a "merger by formation of a new company".

*Merger plan*

**§ 237.** *(1)* The central governing bodies for the existing limited liability companies that participate in the merger must draw up and sign a joint merger plan, cf. subsection 2.

*(2)* If the merger only involves private limited companies, the shareholders may agree that no merger plan should be drawn up, cf. § 248, subsection 2 and 3.

*(3)* If the merger involves public limited companies, the merger plan must include information and provisions on

1) the names and any secondary names of the limited liability companies, including whether the name or secondary name of a non-surviving company is to be adopted as a secondary name for the surviving company;
2) the limited liability companies' registered offices;
3) the consideration offered for the shares in a non-surviving company;
4) the time from which any shares offered as consideration will confer on the holders a right to receive dividends;
5) the rights in the surviving company that accrue to any holders of shares and debt instruments carrying special rights in the non-surviving company;

6) any other measures taken for the benefit of holders of the shares and debt instruments referred to in paragraph 5;

7) registration of any shares offered as consideration and any delivery of share certificates;

8) the time from which the rights and obligations of the non-surviving company are considered to have been transferred for accounting purposes, see subsection 4;

9) any special benefits accruing to members of the limited liability companies' management; and

10) draft articles of association, see §§ 28 and 29 if a new limited liability company is formed by the merger.

 *(4)* Each of the existing limited liability companies must sign the merger plan by the end of the financial year in which the merger takes effect for accounting purposes, see subsection 3, paragraph 8. If this time limit is exceeded, notification that the Agency has received the merger plan cannot be published and, accordingly, the merger cannot be adopted.

*Merger statement*

 **§ 238.** *(1)* The central governing bodies for each of the existing limited liability companies participating in the merger must draw up a written statement that provides explanations and reasons for the merger plan. The statement must include information about how any consideration offered for shares in the non-surviving companies has been determined, including any particular difficulties in connection with such determination, and information about preparing the statement if this must be prepared in accordance with § 240.

 *(2)* In private limited companies, the shareholders may agree that no merger statement should be drawn up.

*Interim balance sheet*

 **§ 239.** *(1)* If the merger plan is signed more than six months after the end of the financial year to which the limited liability company's most recent annual report relates, an interim balance sheet must be prepared for the relevant limited liability company participating in the merger, cf. subsections 2 and 3. The date of the interim balance sheet, which must be prepared in accordance with the Danish Financial Statements Act, may not be more than three months before the date that the merger plan was signed. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act or any other statute.

 *(2)* In private limited companies, the shareholders may agree that no interim balance sheet should be prepared, notwithstanding that the merger plan (if any) has been signed more than six months after the end of the financial year to which the most recent annual report of the company relates.

 *(3)* The provision in Paragraph 1 shall not apply to capitalized companies who have equities issued on a regulated market om am EU/EEA Member state, and who have published an interim report pursuant to the Danish Financial Statements Act, if the interim report is made available to the company's shareholders.

*Valuation report on non-cash contributions*

 **§ 240.** *(1)* If a capital increase is implemented in the surviving public limited company in connection with the merger, or if a new public limited company is formed by the merger, a report must be obtained from a valuation expert (cf. subsection *(2)*) to be appointed under § 37, subsection 1. Section 37, subsections 2 and 3, also applies to the valuation experts' activities in relation to all of the merging limited liability companies.

 *(2)* No valuation report is required if a report is issued by the valuation experts regarding the merger plan cf. §241, or if a declaration on the creditors' position is received from the valuation expert, see § 242.

 *(3)* If a valuation report is to be prepared in connection with a merger, it must include

1) a description of each contribution;

2) information on the valuation method applied;

3) a specification of the agreed consideration; and

4) a declaration that the value of the contribution as assessed in the report is not less than the agreed consideration, including any nominal value of the shares to be issued and any premium on them.

 *(4)* The valuation report may not be drawn up more than three months before the date of the merger resolution, if any, see § 245. If this time limit is exceeded, the merger cannot be validly adopted.

*Statement by valuation expert(s) on the merger plan*

 **§ 241.** *(1)* For each of the limited liability companies participating in the merger, one or more independent valuation experts must make a written statement on the merger plan, including the consideration, see subsection 4. The shareholders may decide, by unanimous agreement, not to obtain a statement by a valuation expert on the merger plan.

 *(2)* The valuation experts must be appointed as specified in § 37, subsection 1. If the limited liability companies participating in the merger decide to use one or more joint valuation experts, the valuation experts must, at the companies' request, be appointed by the bankruptcy court that has jurisdiction over the place where the registered office of the surviving limited liability company is situated.

 *(3)* § 37, subsection 2 and 3, also applies to the valuation experts' activities in relation to all the merging limited liability companies.

 *(4)* The statement must include a declaration as to whether the consideration offered for the shares in the non-surviving company is fair and reasonable. The statement must specify the method(s) used for determining the consideration and assess whether such methods are appropriate. The statement must also specify the values that result from each method and the relative importance that should be attached to each individual method in connection with the valuation. Where the valuation gives rise to particular difficulties, these should be included in the statement.

*Declaration by valuation expert(s) on the creditors' position*

 **§ 242.** *(1)* In addition to the statement referred to in § 241, the valuation experts must make a declaration as to whether the creditors of each limited liability company can be considered to be sufficiently protected after the merger. However, the shareholders may decide, by unanimous agreement, not to obtain a declaration by a valuation expert on the creditors' position.

*Opportunity for creditors to file their claims*

 **§ 243.** *(1)* If the valuation experts, with their declaration on the position of the creditors in the limited liability company, see § 242, conclude that the creditors will not be sufficiently protected after the merger, or if no declaration has been made by a valuation expert on the creditors' position, creditors whose claims arose prior to the Commerce and Companies Agency's publication under § 244, may file their claims up to four weeks after the date on which all of the existing limited liability companies participating in the merger passed the resolution on the merger. However, no claims for which adequate security has been provided may be filed.

 *(2)* A request may be made for repayment of claims filed if they are due, and adequate security may be requested for claims filed that are not yet due.

 *(3)* Unless otherwise established, security under subsection 2, is not required if repayment of the claims is secured by a statutory arrangement.

 *(4)* If the limited liability company and any creditors who have filed their claims disagree as to whether security should be provided or whether the security offered is adequate, either party may, no later than two weeks after the claim is filed, bring the matter before the bankruptcy court that has jurisdiction over the place where the limited liability company's registered office is situated for a ruling on the issue.

 *(5)* In the agreement on which the claim is based, creditors may not, with binding effect, waive their rights to demand security under subsection 2.

 *(6)* If creditors have a right to file their claims, the implementation of the merger, see § 251, can only be registered upon expiry of the time allowed for filing such claims.

*Filing of merger plan and declaration by valuation expert(s) on the creditors' position*

**§ 244.** *(1)* The Commerce and Companies Agency must receive a copy of the merger plan (if any) no later than four weeks after it is signed, cf.§ 237, subsection 2. If this time limit is exceeded, notification that the Agency has received the merger plan cannot be published and, accordingly, the merger cannot be adopted. If valuation experts have made a declaration on the creditors' position, see § 242, this declaration may also be submitted to the Commerce and Companies Agency in connection with filing of the merger plan.

*(2)* The Commerce and Companies Agency must publish notification in its IT system that it has received the documents referred to in subsection 1. If creditors have a right to file their claims, see § 243, this must be stated in the Agency's notification.

*Resolution to implement a merger*

**§ 245.** *(1)* The resolution to implement a merger may be passed no earlier than four weeks after publication by the Commerce and Companies Agency of a notification that it has received the merger plan and a declaration by the valuation experts on the creditors' position, cf. subsection 2.

*(2)* If the merger only involves private limited companies, and if the valuation experts, with their declaration on the creditors' position under § 242, conclude that the creditors of each private limited company will be adequately secured after the merger, the shareholders may agree to disregard the time limit under subsection 1.

*(3)* If the non-surviving limited liability company has reached the end of its financial year without the general meeting having yet approved the annual report for the accounting period just ended, the general meeting must approve the annual report for this accounting period on or before the date of the resolution to implement the merger.

*(4)* Creditors must, upon request, be informed about the date on which it will be resolved to implement any merger.

*(5)* The merger must be implemented in accordance with the merger plan if such plan has been drawn up. If the merger is not adopted in accordance with any merger plan as published, the proposal is considered to have lapsed.

*(6)* If the following documents have been prepared, they must be made available for inspection by the shareholders no later than four weeks before the date on which the resolution to implement a merger is to be passed, unless the shareholders agree that the documents should not be made available to them before the general meeting:

1) The merger plan;
2) Annual reports for each existing limited liability company participating in the merger, as adopted for the last three financial years or any shorter period in which the company has existed;
3) A merger statement;
4) An interim balance sheet;
5) A valuation report on non-cash contributions;
6) The valuation experts' statements on the merger plan, including the consideration;
7) The valuation experts' declaration on the creditors' position.

*(7)* Shareholders must, upon request, be provided with access to the documents specified in subsection 6, free of charge.

**§ 246.** *(1)* In a non-surviving limited liability company, the merger resolution must be passed by the general meeting, cf. subsection 2 and § 252. If the company is in liquidation, a merger resolution may only be passed if the shareholders have not yet received any distributions, and if the general meeting resolves at the same time to suspend the liquidation process. Accordingly, § 231 on resumption of business will not apply.

*(2)* If a limited liability company is dissolved without liquidation by transferring its assets and liabilities as a whole to another limited liability company holding at least 90% of the share capital in the

non-surviving limited liability company, the merger resolution may be passed by the central governing body of the non-surviving limited liability company, cf. subsections 3 to 5.

*(3)* The resolution under subsection 2, must, however, be passed by the general meeting if shareholders holding 5% of the share capital make a written request no later than two weeks after notification is published that the merger plan has been received. The resolution must also be passed by the general meeting of the non-surviving limited liability company if so requested by the shareholders with the right to demand a general meeting under the articles of association, see § 89.

*(4)* The central governing body must call a general meeting within two weeks of such request being made.

*(5)* If the resolution is to be passed by the general meeting of the non-surviving limited liability company, it must be passed by the majority required under § 106 and in accordance with any other provisions in the articles of association that apply to dissolutions or mergers.

**§ 247.** *(1)* In the surviving limited liability company, the merger resolution must be passed by the central governing body, unless the general meeting is required to amend the articles of association for any purpose other than adopting a non-surviving limited liability company's name or secondary name as the surviving limited liability company's secondary name, cf. subsections 2 to 4.

*(2)* Shareholders holding 5% of the share capital, or shareholders with the right to demand a general meeting under the articles of association, see § 89, may also make a written request that the resolution be passed by the general meeting of the surviving limited liability company if the request is made no later than two weeks after the Commerce and Companies Agency publishes notification that it has received the merger plan.

*(3)* The central governing body must call a general meeting within two weeks of such request being made.

*(4)* If the resolution is to be passed by the general meeting of the surviving limited liability company, it must be passed by the majority required under § 106.

**§ 248.** *(1)* The central governing bodies of the existing limited liability companies participating in the merger must inform any general meeting at which the resolution to implement the merger is to be passed about any significant events, including any significant changes in assets and liabilities, which have occurred between the date the merger plan was signed and the date of the general meeting.

*(2)* If the merger only involves private limited companies, and if the shareholders have agreed under § 237 subsection 2, that no merger plan should be drawn up, the following issues must be addressed in connection with the adoption of the merger:

1) the names and any secondary names of the private limited companies, including whether the name or secondary name of any non-surviving company is to be adopted as a secondary name of the surviving company;
2) the consideration offered for the shares in a non-surviving private limited company;
3) the time from which any shares offered as consideration will confer on the holders a right to receive dividends;
4) the time from which the rights and obligations of a non-surviving private limited company are considered to have been transferred for accounting purposes; and
5) articles of association, see §§ 28 and 29, if a new private limited company is formed by the merger.

*(3)* If the merger only involves private limited companies, and if the shareholders have agreed under § 237, subsection 2, that no merger plan should be drawn up, identical resolutions must have been passed by all of the existing private limited companies participating in the merger with regard to the requirements in subsection 2. If this is not the case, the resolution to implement the merger is considered to have lapsed.

*Opportunity to claim compensation*

**§ 249.** *(1)* The shareholders in the non-surviving limited liability company or companies may claim compensation from the limited liability company if the consideration offered for the shares in the non-surviving limited liability company or companies is not fair and reasonable, and if they have made a reservation to this effect at the general meeting at which the merger resolution was passed.

*(2)* Proceedings pursuant to subsection *(1)* must be commenced within two weeks after the merger is adopted by all of the merging limited liability companies.

*(3)* If a reservation is made under subsection *(1)*, the merger resolution may only be registered after expiry of the time limit prescribed in subsection *(2)*, unless the valuation experts, with their statement on the merger plan and the consideration (see § 241), conclude that the consideration offered for the shares in the non-surviving limited liability company or companies is fair and reasonable.

*Legal effects of a merger*

**§ 250.** *(1)* The merger will be considered completed, and a non-surviving limited liability company will be considered dissolved and its rights and obligations will be considered to have been transferred as a whole to the surviving limited liability company when:

1) The resolution on the merger has been passed by all of the existing limited liability companies participating in the merger .

2) The claims filed by creditors under § 243, have been settled.

3) The shareholders' claims for compensation under § 249, have been settled, or adequate security has been provided for the claims. If valuation experts have drawn up a statement on the plan, including the consideration, and the statement assumes that the consideration is fair and reasonable, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts determine whether the security is adequate.

4) The requirements in subsection 5, concerning election of management and an auditor have been satisfied.

*(2)* When the requirements specified in subsection 1, are satisfied, the shareholders in the non-surviving limited liability company who receive shares as consideration become shareholders in the surviving limited liability company.

*(3)* Consideration cannot be offered for shares in a non-surviving limited liability company which are owned by the merging limited liability companies.

*(4)* Part 3 on formation will not apply if a merger results in a new limited liability company, unless stipulated in the provisions on mergers in §§ 236 to 252. Part 10 will not apply to capital increases in the surviving limited liability company which are based on the assets and liabilities of a non-surviving limited liability company. Part 14 will not apply to a non-surviving limited liability company which is dissolved as part of a merger.

*(5)* If the merger results in a new limited liability company, and if the supreme governing body and an auditor, if applicable, are not elected immediately after the adoption of the merger by the general meeting, a general meeting for the election of management and an auditor, if applicable, must be held in the new limited liability company within two weeks. The general meeting must also decide whether the future financial statements of the limited liability company are to be audited if the company is not subject to audit obligations under the Danish Financial Statements Act or any other statute.

*Application for registration of a merger*

**§ 251.** *(1)* For each limited liability company, the resolution adopting the merger must be registered with, or an application for registration must be submitted to, see § 9, the Commerce and Companies Agency. This must occur no later than two weeks after the resolution is passed by all of the existing limited liability companies participating in the merger. The surviving limited liability company may register or apply for registration of the merger on behalf of the limited liability companies. The registration or application for registration must be accompanied by the documents specified in § 245, subsection 6, paragraphs 3 to 7, if such documents have been prepared. Once adopted, the merger may only be registered when it has taken legal effect under § 250, subsection 1.

*(2)* The adopted merger must be registered directly or an application for registration must be filed under § 9 within the time allowed for filing an annual report for the period in which the merger takes legal effect, see § 237, subsection 3, paragraph 8, but not later than one year after the Agency has published notification of receipt of the merger plan under § 244. If one of these time limits is exceeded, the merger resolution will be invalid, and the merger plan prepared under § 237 will be considered to have lapsed.

*(3)* If a limited liability company resulting from a merger enters into an agreement before it is registered, and if the other party to the agreement is aware that the company is not registered, the other party may,

unless otherwise agreed, terminate the agreement if no registration has been made with, or no application for registration has been received by, the Commerce and Companies Agency by the end of the period provided in subsection 2, or if registration is refused. If the other contracting party was unaware that the limited liability company was not registered, the other party may terminate the agreement as long as the company remains unregistered. § 41, subsection 1, second sentence, applies with such changes as are necessary.

*(4)* §§ 42 to 44 apply, with such changes as are necessary, where a public limited company resulting from a merger acquires assets from a shareholder known to the company during the 24 months following registration of the company.

*Vertical mergers between parent companies and wholly owned subsidiaries*

**§ 252.** If a limited liability company is dissolved without liquidation by transferring its assets and liabilities as a whole to another limited liability company holding all of the shares in the non-surviving company, a "vertical merger", the merger resolution may be passed by the central governing body in the non-surviving limited liability company. § 237, subsection 1 and 2, subsection 3, paragraphs 1, 2, 5, 6 and 8 to 10, and subsection 4, § 239, §§ 242 to 245, § 246, first, second and third sentences, §§ 247 and 248 and §§ 250 and 251 also apply to vertical mergers.

*Transfer of the assets and liabilities of a limited liability company to the Danish Government or a Danish municipality*

**§ 253.** *(1)* If a limited liability company is dissolved without liquidation by transferring its assets and liabilities as a whole to the Danish Government or a Danish municipality, § 237, subsections 1 and 3, § 238, § 241, § 244, subsection 1, first and second sentences, and subsection 2, first sentence, § 245, subsection 1 and 3 to 6, §§ 246, 248 and 249, § 250, subsection 1, paragraph 1, and § 251, subsection 1, also apply.

*Division of limited liability companies*

**§ 254.** *(1)* The general meeting of a limited liability company may pass a resolution to divide the limited liability company. In connection with the division, the assets and liabilities are transferred as a whole to two or more existing or newly established public or private limited companies in exchange for consideration to the shareholders in the transferor limited liability company. The general meeting may resolve, with the same majority of votes, to implement a division, whereby the limited liability company transfers part of its assets and liabilities to one or more existing or newly established limited liability companies. The transfer is not subject to the consent of the creditors.

*(2)* If any claim made by a creditor of a limited liability company participating in the division is not satisfied, each of the other participating limited liability companies are jointly and severally liable for obligations that existed at the date of publication of the division plan, subject to the maximum amount of the net value contributed or remaining in the individual limited liability company at that time.

*(3)* If one or more of the transferee limited liability companies participating in a division are the result of another division or merger which has not been implemented, this must be specified in the division plan, see § 255. Any division into new transferee limited liability companies resulting from another division or merger must be implemented immediately after the division or merger that results in the new limited liability companies, see § 269.

*Division plan*

**§ 255.** *(1)* The central governing bodies of the existing limited liability companies participating in the division must draw up and sign a joint division plan, cf. subsection 2.

*(2)* If the division involves private limited companies only, the shareholders may agree that no division plan should be drawn up, cf. § 266, subsection 2 and 3.

*(3)* If the division involves public limited companies, the division plan must include information and provisions on

1) the names and any secondary names of the limited liability companies, including whether the name or secondary name of the transferor limited liability company is to be adopted as a secondary name of a transferee limited liability company;

2) the limited liability companies' registered offices;

3) an accurate description and distribution of the assets and liabilities that are to be transferred or to remain in each limited liability company participating in the division;

4) the consideration offered to the shareholders in the transferor limited liability company;

5) the distribution of the consideration, including shares in the transferee limited liability companies, to the shareholders in the transferor limited liability company and the distribution criterion;

6) the time from which any shares offered as consideration will confer on the holders a right to receive dividends;

7) the rights accruing in the transferee company to any holders of shares and debt instruments carrying special rights in the transferor company;

8) any other measures taken for the benefit of holders of shares and debt instruments referred to in paragraph 7;

9) registration of any shares offered as consideration and any delivery of share certificates;

10) the time from which the rights and obligations of the transferor company are considered to have been transferred for accounting purposes, see subsection 4;

11) any special benefits accruing to members of the limited liability companies' management; and

12) draft articles of association, see §§ 28 and 29, if one or more new limited liability companies are formed by the division.

 (4) For each of the existing limited liability companies, the division plan must be signed by the end of the financial year in which the division takes effect for accounting purposes, see subsection 3, paragraph 10. If this time limit is exceeded, notification that the Commerce and Companies Agency has received the division plan cannot be published and, accordingly, the division cannot be adopted.

 (5) If not all of the assets are distributed by the division plan, see subsection 3, paragraph 3, and their distribution cannot be determined by the plan, such assets or the value they represent will be distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each limited liability company according to the division plan.

 (6) If not all liabilities are distributed by the division plan, see subsection 3, paragraph 3, and the interpretation of this does not allow this to determine the distribution, each of the participating limited liability companies are jointly and severally liable, subject to the maximum amount of the net value contributed or remaining in each limited liability company. Such liabilities are distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each limited liability company according to the division plan.

*Division statement*

 **§ 256.** *(1)* The central governing bodies of each of the existing limited liability companies participating in the division must draw up a written statement that provides explanations and reasons for the division plan, see subsection 2 .The statement must include information about how the consideration for the shares in the transferor limited liability company was determined, including any particular difficulties in connection with such determination and information about preparing the valuation report if this must be prepared in accordance with § 258.

*(2)*The shareholders may, however, agree that no division statement should be prepared.

*Interim balance sheet*

 **§ 257.** *(1)* If the division plan is signed more than six months after the end of the financial year to which the limited liability company's most recent annual report relates, an interim balance sheet must be prepared for the relevant limited liability company participating in the division, see subsections 2 and 3. The date of the interim balance sheet, which must be prepared in accordance with the Danish Financial Statements Act, may not be more

than three months before the date that the division plan was signed. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act or any other statute.

*(2)* The shareholders may agree that no interim balance sheet should be prepared, notwithstanding that the division plan (if any) has been signed more than six months after the end of the financial year to which the limited liability company's most recent annual report relates.

*(3)* The provision in subsection 1 does not apply to companies that have one or more share classes admitted to trading on a regulated market in an EU or EEA Member State, and who have published an interim report pursuant to the Danish Financial Statements Act, if the interim report is made available to the company's shareholders.

*Valuation report on non-cash contributions*

**§ 258.** *(1)* If capital increases are implemented in one or more of the transferee public limited companies in connection with the division, or if one or more new public limited companies are formed by the division, a report must be obtained from a valuation expert, cf. subsection 2, to be appointed under § 37, subsection 1. § 37, subsection 2 and 3, also applies to the valuation experts' activities in relation to all of the limited liability companies participating in the division.

*(2)* The valuation may be excluded if a statement relating to the division is obtained from a valuation expert, cf. § 259 or a statement is submitted by the valuation expert regarding the creditors' position.

*(3)* If a valuation report is to be prepared in connection with a division, it must include

1) a description of each contribution;
2) information on the valuation method applied;
3) a specification of the agreed consideration; and
4) a declaration that the value of the contribution as assessed in the report is not less than the agreed consideration, including any nominal value of the shares to be issued and any premium on them.

*(4)* The valuation report may not be drawn up more than three months before the date of the division resolution, if any, see § 263. If this time limit is exceeded, the division cannot be validly adopted.

*Statement by valuation expert(s) on the division plan*

**§ 259.** *(1)* For each of the limited liability companies participating in the division, one or more independent valuation experts must make a written statement on the division plan, including the consideration, see subsection 4. The shareholders may decide, by unanimous agreement, not to obtain a statement by a valuation expert on the division plan.

*(2)* The valuation experts must be appointed as specified in § 37, subsection 1. If the limited liability companies participating in the division decide to use one or more joint valuation experts, the valuation experts must, at the companies' request, be appointed by the bankruptcy court that has jurisdiction over the place where the registered office of one of the transferee limited liability companies is situated.

*(3)* § 37, subsection 2 and 3, also applies to the valuation experts' activities in relation to all of the limited liability companies participating in the division.

*(4)* The statement must include a declaration as to whether the consideration offered to the shareholders in the transferor limited liability company is fair and reasonable. The statement must specify the method(s) used for determining the consideration and assess whether such methods are appropriate. The statement must also specify the values that result from each method and the relative importance that should be attached to each individual method in connection with the valuation. Where the valuation gives rise to particular difficulties, these should be included in the statement.

*Declaration by valuation expert(s) on the creditors' position*

**§ 260.** *(1)* In addition to the statement referred to in § 259, the valuation experts must make a declaration as to whether the creditors of each limited liability company can be considered to be sufficiently protected after the

division. However, the shareholders may decide, by unanimous agreement, not to obtain a statement by a valuation expert on the creditors' position.

*Opportunity for creditors to file their claims*

**§ 261.** *(1)* If the valuation experts, with their declaration on the position of the creditors in the limited liability company, see § 260, conclude that the creditors will not be sufficiently protected after the division, or if no declaration has been made by a valuation expert on the creditors' position, creditors whose claims arose prior to the Commerce and Companies Agency's publication under § 262, may file their claims up to four weeks after the date on which all of the existing limited liability companies participating in the division passed the resolution on the division. However, no claims for which adequate security has been provided may be filed.
  *(2)* A request may be made for repayment of claims filed if they are due, and adequate security may be requested for claims filed that are not yet due.
  *(3)* Unless otherwise established, security under subsection 2, is not required if repayment of the claims is secured by a statutory arrangement.
  *(4)* If the limited liability company and any creditors who have filed their claims disagree as to whether security should be provided or whether the security offered is adequate, either party may, no later than two weeks after the claim is filed, bring the matter before the bankruptcy court that has jurisdiction over the place where the limited liability company's registered office is situated for a ruling on the issue.
  *(5)* In the agreement on which the claim is based, creditors may not, with binding effect, waive their rights to demand security under subsection 2.
  *(6)* If creditors have a right to file their claims, the implementation of the division, see § 269, can only be registered upon expiry of the time allowed in subsection 1, for filing such claims.

*Filing of division plan and declaration by valuation expert(s) on the creditors' position*

**§ 262.** *(1)* The Commerce and Companies Agency must receive a copy of the division plan (if any) no later than four weeks after it is signed, cf.§ 255, subsection 2. If this time limit is exceeded, notification that the division plan has been received cannot be published and, accordingly, the division cannot be adopted. If valuation experts have made a declaration on the creditors' position, see § 260, this declaration may also be submitted to the Commerce and Companies Agency in connection with filing of the division plan.
  *(2)* The Commerce and Companies Agency must publish notification in its IT system that it has received the documents referred to in subsection 1. If creditors have a right to file their claims, see § 261, this must be stated in the Agency's notification.

*Resolution to implement a division*

**§ 263.** *(1)* The resolution to implement a division may be passed no earlier than four weeks after publication by the Commerce and Companies Agency of a notification that it has received the division plan and a declaration by the valuation experts on the creditors' position, cf. subsection 2.
  *(2)* If the division only involves private limited companies, and if the valuation experts, with their declaration on the creditors' position under § 260, conclude that the creditors of each private limited company will be adequately secured after the division, the shareholders may agree to disregard the time limit under subsection 1.
  *(3)* If the transferor limited liability company is dissolved following the division, and if it has reached the end of its financial year without the general meeting having yet approved the annual report for the accounting period just ended, the general meeting must approve the annual report for this accounting period on or before the date of the resolution to implement the division.
  *(4)* Creditors must, upon request, be informed about the date on which it will be resolved to implement any division.

*(5)* The division must be implemented in accordance with the division plan if such a plan has been drawn up. If the division is not adopted in accordance with any division plan as published, the proposal is considered to have lapsed.

*(6)* If the following documents have been prepared, they must be made available for inspection by the shareholders no later than four weeks before the date on which the resolution to implement a division is to be passed, unless the shareholders agree that the documents should not be made available to them before the general meeting:

1) The division plan.

2) Annual reports for each existing limited liability company that is participating in the division, as adopted for the last three financial years or any shorter period in which the company has existed.

3) A division statement.

4) An interim balance sheet.

5) A valuation report on non-cash contributions.

6) The valuation experts' statements on the division plan, including the consideration.

7) The valuation experts' declaration on the creditors' position.

*(7)* Shareholders must, upon request, be provided with access to the documents specified in subsection 6, free of charge.


**§ 264.** *(1)* In the transferor limited liability company, the division resolution must be passed by the general meeting with the majority required under §§ 106 and 107 and in accordance with any additional rules on dissolution and division provided by the articles of association, cf.§ 270. If the company is in liquidation, a division resolution may only be passed if the shareholders have not yet received any distributions, and if the general meeting resolves at the same time to suspend the liquidation process. Accordingly, § 231, on resumption of business will not apply.


**§ 265.** *(1)* In existing transferee limited liability companies, the division resolution must be passed by the central governing body, unless the general meeting is required to amend the articles of association for any purpose other than adopting the transferor limited liability company's name or secondary name as the transferee limited liability company's secondary name, cf. subsection 2.

*(2)* Shareholders holding 5% of the share capital, or shareholders with the right to demand a general meeting under the articles of association, see § 89, may also make a written request that the resolution be passed by the general meeting of the existing transferee limited liability companies if the request is made no later than two weeks after the Commerce and Companies Agency publishes notification that it has received the division plan.

*(3)* The central governing body must call a general meeting within two weeks of such request being made.

*(4)* If the resolution is to be passed by the general meeting of an existing transferee company, it must be passed by the majority required under § 106.


**§ 266.** *(1)* The central governing bodies of the existing limited liability companies participating in the division must inform any general meeting at which the resolution to implement the division is to be passed about any significant events, including any significant changes in assets and liabilities, which have occurred between the date the division plan was signed and the date of the general meeting.

*(2)* If the division only involves private limited companies, and if the shareholders have agreed under § 255, subsection 2, that no division plan should be drawn up, the following issues must be addressed in connection with adoption of the division:

1) the names and any secondary names of the private limited companies, including whether the name or secondary name of the transferor company is to be adopted as a secondary name of a transferee company;

2) the distribution of assets and liabilities that are transferred or repain in each of the companies that participate in the division,

3) the consideration offered for the shares in the transferor company;;

4) the time from which any shares offered as consideration will confer on the holders a right to receive dividends
5) the time from which the rights and obligations of the transferor private limited company are considered to have been transferred for accounting purposes;
6) articles of association, see §§ 28 and 29, if a new private limited company is formed by the division; and
  *(3)* If the division only involves private limited companies, and if the shareholders have agreed under § 255, subsection 2, that no division plan should be drawn up, identical resolutions must have been passed by all of the existing private limited companies participating in the division in respect of the requirements in subsection 2. If this is not the case, the resolution to implement the division is considered to have lapsed.

*Opportunity to claim compensation*

  **§ 267.** *(1)* The shareholders in the transferor limited liability company may claim compensation from the limited liability company if the consideration offered for the shares in the transferor limited liability company is not fair and reasonable, and if they have made a reservation to this effect at the general meeting at which the resolution to implement the division was passed.
  *(2)* Proceedings pursuant to subsection 1 must be commenced within two weeks after the division is adopted by all of the existing limited liability companies participating in the division.
  *(3)* If a reservation is made under subsection 1, the division resolution may only be registered after expiry of the time limit prescribed in subsection 2, unless the valuation experts, with their statement on the plan and the consideration, see § 259, conclude that the consideration offered for the shares in the transferor limited liability company is fair and reasonable.

*Legal effects of a division*

  **§ 268.** *(1)* The division will be considered completed, and all rights and obligations of the transferor limited liability company will be considered to have been transferred to the transferee limited liability companies when:
1) The resolution on the division has been passed by all of the existing limited liability companies participating in the division.
2) The claims filed by creditors under § 261, have been settled.
3) The shareholders' claims for compensation under § 267, have been settled, or adequate security has been provided for the claims. If valuation experts have drawn up a statement on the plan, including the consideration, and the statement assumes that the consideration is fair and reasonable, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts determine whether the security is adequate.
4) The requirements in subsection 5, concerning election of management and an auditor have been satisfied.
  *(2)* When the requirements specified in subsection 1, are satisfied, the shareholders in the transferor limited liability company who receive shares as consideration become shareholders in one or more of the transferee limited liability companies.
  *(3)* Consideration cannot be offered for shares in the transferor company which are owned by the limited liability companies participating in the division.
  *(4)* Part 3 on formation will not apply if a division results in a new limited liability company, unless otherwise provided by §§ 254 to 270. Part 10 on capital increases will not apply to capital increases in the transferee limited liability companies effected by contributions of assets and liabilities from the transferor limited liability company. Part 11 on capital disposals and Part 14 on dissolution will not apply if, as a result of the division, a capital reduction is implemented in the transferor company, or this company is dissolved.
  *(5)* If the division results in a new limited liability company, and if the supreme governing body and an auditor, if applicable, are not elected immediately after the adoption of the division by the general meeting, a general meeting for the election of management and an auditor, if applicable, must be held in the new limited liability company within two weeks. The general meeting must also resolve whether the future financial statements of the limited liability company

are to be audited if the company is not subject to audit obligations under the Danish Financial Statements Act or any other statute.

*Registration of implementation of a division*

**§ 269.** *(1)* The division resolution must, for each company, be registered directly, or an application for registration must be filed, see § 9, no later than two weeks after it is passed by all of the existing limited liability companies participating in the division. Each of the transferee limited liability companies may register the division on behalf of the participating limited liability companies. The registration or application for registration must be accompanied by the documents specified in § 263, subsection 6, paragraphs 3 to 7. Once adopted, the division may only be registered when it has taken legal effect under § 268, subsection 1.

*(2)* The adopted division must be registered directly, or an application for registration must be filed, see § 9, on or before expiry of the time limit for filing of the annual report covering the period in which the division takes legal effect, see § 255, subsection 3, paragraph 10, but not later than one year after publication by the Agency of the notification that it has received the division plan under § 262. If any of these two time limits is exceeded, the resolution implementing the division will be invalid, and the division plan prepared under § 255 will be considered to have lapsed.

*(3)* If a limited liability company resulting from a division enters into an agreement before it is registered, and if the other party to the agreement is aware that the company is not registered, the other party may, unless otherwise agreed, terminate the agreement if no registration or application for registration has been received by the Commerce and Companies Agency by the end of the period provided in subsection 2, or if registration is refused. If the other contracting party was unaware that the limited liability company was not registered, the other party may terminate the agreement as long as the company remains unregistered. § 41, subsection 1, second sentence, applies with such changes as are necessary.

*(4)* §§ 42 to 44 apply, with such changes as are necessary, where a public limited company resulting from a division acquires assets from a shareholder that is known to the company during the 24 months following registration of the company.

*Vertical divisions where the transferee companies hold all of the shares in the transferor company*

**§ 270.** *(1)* Where all of the shares in the transferor limited liability company are held by the transferee limited liability companies, a "vertical division", the division resolution can be passed by the central governing body of the transferor company. § 255, subsection 1, 2, and 3, paragraphs 1 to 3, 7, 8 and 10 to 12, and subsection 4, §§ 256, 257 and 260 to 263, § 264, second and third sentences, and §§ 265, 266, 268 and 269 also apply to vertical divisions, with such changes as are necessary.

*(2)* If one or more new companies emerge during a division and capital shares in these companies are allocated to the shareholders in the transferor limited company proportional to their holdings or votes in the transferor company, then the provisions in § §256, 257 and 259 and § 266, subsection 1, shall not apply.

Part 16

*Cross-border mergers and divisions*

*Cross-border mergers*

**§ 271.** *(1)* Limited liability companies that are subject to this Act may participate in cross-border mergers in which the other participating companies are also limited liability companies governed by the laws of the EU or EEA Member States.

*Merger plan*

**§ 272.** *(1)* The central governing bodies for the existing limited liability companies that participate in the merger must draw up and sign a joint merger plan, which must include information and provisions on

1) the corporate forms, names and registered offices of the participating limited liability companies and of the surviving company;
2) the consideration offered for the shares in the non-surviving limited liability company;
3) the distribution of the consideration, including shares in the surviving limited liability company, to the shareholders in the non-surviving limited liability companies, and the distribution criterion;
4) the likely impact of the cross-border merger on the number of employees in the participating limited liability companies;
5) the time from which the shares offered as consideration will confer on the holders a right to receive dividends, and a specification of any special conditions associated with such rights;
6) the time from which the rights and obligations of the non-surviving limited liability companies are considered to have been transferred for accounting purposes;
7) the rights accruing in the surviving limited liability company to any holders of shares carrying special rights and any holders of other securities or shares, or the actions proposed to be taken for the benefit of such persons;
8) any special benefits accruing to the valuation experts that make a statement on the merger plan, see § 276 and to the members of the limited liability companies' management;
9) the articles of association of the surviving limited liability company;
10) information about the procedures under §§ 311 to 317 for involving employees in the determination of their rights to representation in the surviving limited liability company, if appropriate;
11) valuation of the assets and liabilities transferred to the surviving limited liability company; and
12) the dates of the merging limited liability companies' financial statements used to establish the conditions of the cross-border merger.

*(2)* For each of the existing limited liability companies, the merger plan must be signed by the end of the financial year in which the merger takes effect for accounting purposes, see subsection 1, paragraph 6. If this time limit is exceeded, notification that the Commerce and Companies Agency has received the merger plan cannot be published and, accordingly, the merger cannot be adopted.

*Merger statement*

**§ 273.** *(1)*. The central governing bodies of each of the existing limited liability companies participating in the merger must draw up a written statement that provides explanations and reasons for the merger plan. If this must be prepared, as per § 275, then the statement must include information about how the consideration offered for the shares in the non-surviving limited liability companies was determined, including any particular difficulties in connection with such determination. The statement must also include a description of the consequences of the cross-border merger for the shareholders, creditors and employees.

*Interim balance sheet*

**§ 274.** *(1)* If the merger plan is signed more than six months after the end of the financial year to which the limited liability company's most recent annual report relates, an interim balance sheet must be prepared for the relevant limited liability company participating in the merger, cf. subsection 2 and 3. The date of the interim balance sheet, which must be prepared in accordance with the Danish Financial Statements Act, may not be more than three months before the date that the merger plan was signed. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act or any other statute.

*(2)* In private limited companies, the shareholders may agree that no interim balance sheet should be prepared, notwithstanding that the merger plan (if any) has been signed more than six months after the end of the financial year to which the company's most recent annual report relates.

*(3)* The provision in subsection 1 does not apply for limited liability companies one or more share classes admitted to trading on a regulated market in an EU or EEA Member State, and who have published an interim report pursuant to the Danish Financial Statements Act, if the interim report is made available to the company's shareholders.

*Valuation report on non-cash contributions*

**§ 275.** *(1)* If a capital increase is implemented in the surviving public limited company in connection with the merger, or if a new public limited company is formed by the merger, a report must be obtained from a valuation expert, see subsection 2. The valuation expert must be designated in accordance with §37, subsection 1. §37, subsection 2 and 3, shall similarly apply to the valuation experts' activities in all of the merging limited liability companies.

*(2)* The valuation report can be excluded if a valuation report for the merger is prepared by the expert, cf. §276 or there is a declaration by a valuation expert on the creditors' position, cf. §277.

*(3)* If a valuation report is to be prepared in connection with a merger, it must include
1) a description of each contribution;
2) information on the valuation method applied;
3) a specification of the agreed consideration; and
4) a declaration that the value of the contribution as assessed in the report is not less than the agreed consideration, including any nominal value of the shares to be issued and any premium on them.

*(4)* The valuation report may not be drawn up more than three months before the date of the merger resolution, if any, see § 280. If this time limit is exceeded, the merger cannot be validly adopted.

*Statement by valuation expert(s) on the merger plan*

**§ 276.** *(1)* For each of the limited liability companies participating in the merger, one or more independent valuation experts must make a written statement on the merger plan, including the consideration, see subsection 4. The shareholders may decide, by unanimous agreement, not to obtain a statement by a valuation expert on the merger plan.

*(2)* The valuation experts must be appointed as specified in § 37, subsection 1. If the limited liability companies participating in the merger decide to use one or more joint valuation experts, the valuation experts must, at the companies' request, be appointed by the bankruptcy court that has jurisdiction over the place where the registered office of the surviving limited liability company is situated.

*(3)* Section 37, subsection 2 and 3, also applies to the valuation experts' activities in relation to all the merging limited liability companies.

*(4)* The statement must include a declaration as to whether the consideration offered for the shares in the non-surviving limited liability company is fair and reasonable. The statement must specify the method(s) used for determining the consideration and assess whether such methods are appropriate. The statement must also specify the values that result from each method and the relative importance that should be attached to each individual method in connection with the valuation. Where the valuation gives rise to particular difficulties, these should be included in the statement.

*Declaration by valuation expert(s) on the creditors' position*

**§ 277.** *(1)* In addition to the statement referred to in § 276, the valuation experts must make a declaration as to whether the creditors of each limited liability company can be considered to be sufficiently protected after the merger. However, the shareholders may decide, by unanimous agreement, not to obtain a declaration by a valuation expert on the creditors' position.

*Opportunity for creditors to file their claims*

**§ 278.** *(1)* If the valuation experts, with their declaration on the position of the creditors in the limited liability company, see § 277, conclude that the creditors will not be sufficiently protected after the merger, or if no

declaration has been made by a valuation expert on the creditors' position, creditors whose claims arose prior to the Commerce and Companies Agency's publication under § 279, may file their claims up to four weeks after the date that all of the existing limited liability companies participating in the merger passed the resolution on the merger. However, no claims for which adequate security has been provided may be filed.

 (2) A request may be made for repayment of claims filed if they are due, and adequate security may be requested for claims filed that are not yet due.

 (3) Unless otherwise established, security under subsection 2, is not required if repayment of the claims is secured by a statutory arrangement.

 (4) If the limited liability company and any creditors who have filed their claims disagree as to whether security should be provided or whether the security offered is adequate, either party may, no later than two weeks after the claim is filed, bring the matter before the bankruptcy court that has jurisdiction over the place where the limited liability company's registered office is situated for a ruling on the issue.

(5) In the agreement on which the claim is based, creditors may not, with binding effect, waive their rights to demand security under subsection 2.

(6) If creditors have a right to file their claims, the certificate on the merger resolution, see § 289, can only be issued upon expiry of the time allowed in subsection 1, for filing such claims.

*Filing of merger plan and declaration by valuation expert(s) on the creditors' position*

**§ 279.** *(1)* The Commerce and Companies Agency must receive a copy of the merger plan no later than four weeks after it is signed. If this time limit is exceeded, notification that the merger plan has been received cannot be published and, accordingly, the merger cannot be adopted. If valuation experts have made a declaration on the creditors' position, see § 278, this declaration may also be submitted to the Commerce and Companies Agency in connection with filing of the merger plan.

 (2) The Commerce and Companies Agency must publish notification in its IT system that it has received the documents referred to in subsection 1. If creditors have a right to file their claims, see § 278, this must be stated in the Agency's notification.

*Resolution to implement a cross-border merger*

 **§ 280.** *(1)* The resolution to implement a merger may be passed no earlier than four weeks after publication by the Commerce and Companies Agency of a notification that it has received the merger plan and a declaration by the valuation experts on the creditors' position.

 (2) If the non-surviving limited liability company has reached the end of its financial year without the general meeting having yet approved the annual report for the accounting period just ended, the general meeting must approve the annual report for this accounting period on or before the date of the resolution to implement the merger.

 (3) Creditors must, upon request, be informed about the date on which it will be resolved to implement any merger.

 (4) The merger must be implemented in accordance with the merger plan. If the merger is not adopted in accordance with the merger plan as published, the proposal is considered to have lapsed.

 (5) If the following documents have been prepared, they must be made available for inspection by the shareholders no later than four weeks before the date on which the resolution to implement a merger is to be passed, unless the shareholders agree that the documents should not be made available to them before the general meeting, cf. subsection 6:

1) The merger plan.

2) Annual reports for each existing limited liability company participating in the merger, as adopted for the last three financial years or any shorter period in which the company has existed.

3) A merger statement.

4) An interim balance sheet.

5) A valuation report on non-cash contributions.
6) The valuation experts' statements on the merger plan, including the consideration.
7) The valuation experts' declaration on the position of the creditors.
  *(6)* Shareholders must, upon request, be provided with access to the documents specified in subsection 5, free of charge.
  *(7)* In connection with a cross-border merger, the merger statement, see § 273, must also be made available at the limited liability company's office for inspection by the employee representatives or, in the absence of such employee representatives in the relevant limited liability company, by the employees in general no later than four weeks before the date on which the merger resolution is to be passed.

  **§ 281.** *(1)* In a non-surviving limited liability company, the merger resolution must be passed by the general meeting with the majority required under § 106, and in accordance with any additional rules on dissolution and merger provided by the articles of association, cf. § 290. If the company is in liquidation, a merger resolution may only be passed if the shareholders have not yet received any distributions, and if the general meeting resolves at the same time to suspend the liquidation process. Accordingly, § 231, on resumption of business will not apply.

  **§ 282.** *(1)* In the surviving limited liability company, the merger resolution must be passed by the central governing body, unless the general meeting is required to amend the articles of association for any purpose other than adopting a non-surviving limited liability company's name or secondary name as the surviving limited liability company's secondary name, cf. subsections 2 to 4.
  *(2)* Shareholders holding 5% of the share capital, or shareholders with the right to demand a general meeting under the articles of association, see § 89, may also make a written request that the resolution be passed by the general meeting of the surviving limited liability company if the request is made no later than two weeks after the Commerce and Companies Agency publishes notification that it has received the merger plan.
  *(3)* The central governing body must call a general meeting within two weeks of such request being made.
  *(4)* If the resolution is to be passed by the general meeting of the surviving limited liability company, it must be passed by the majority required under § 106.

  **§ 283.** *(1)* The central governing bodies of the existing limited liability companies participating in the merger must inform any general meeting at which a resolution to implement a merger is to be passed about any significant events, including any significant changes in assets and liabilities, which have occurred between the date the merger plan was signed and the date of the general meeting.

  **§ 284.** *(1)* If the resolution to implement a cross-border merger is to be passed by the general meeting, the general meeting may decide that that resolution is subject to its subsequent approval of the guidelines on employee participation.

*Opportunity to claim compensation*

  **§ 285.** *(1)* The shareholders in the non-surviving limited liability company or companies may claim compensation from the limited liability company if the consideration offered for the shares in the non-surviving limited liability company or companies is not fair and reasonable, and if they have made a reservation to this effect at the general meeting at which the merger resolution was passed.
  *(2)* Proceedings pursuant to subsection 1, must be commenced within two weeks after the merger is adopted by all of the limited liability companies participating in the merger.
  *(3)* If a reservation is made under subsection 1, the merger resolution may only be registered after expiry of the two-week period prescribed in subsection 2, unless the valuation experts, with their statement on the plan, see § 276, conclude that the consideration offered for the shares in the non-surviving limited liability company or companies is fair and reasonable.

*Opportunity to claim redemption*

**§ 286.** *(1)* In connection with a cross-border merger, the shareholders in the non-surviving limited liability companies who opposed the merger at the general meeting may also demand redemption of their shares by the company by making a written request to this effect no later than four weeks after the date of the general meeting. § 109 applies with such changes as are necessary.

*(2)* The certificate to be issued under § 289, may only be issued when adequate security has been provided for the value of the shares. Experts appointed by the court with jurisdiction over the place where the registered office of the limited liability company is situated determine whether the security is adequate. If the experts' finding is challenged before the court, this will not delay the Commerce and Companies Agency in issuing the certificate, unless otherwise determined by the court.

*Formation, capital increases and dissolution in connection with a cross-border merger*

**§ 287.** *(1)* Consideration cannot be offered for shares in a non-surviving limited liability company which are owned by the merging limited liability companies.

*(2)* Part 3 on formation will not apply if a merger results in a new limited liability company, unless stipulated in the provisions on cross-border mergers in §§ 271 to 290. Part 10 on capital increases will not apply to capital increases in the surviving limited liability company which are based on the assets and liabilities of a non-surviving limited liability company. Part 14 on dissolution will not apply to a non-surviving limited liability company which is dissolved as part of a merger.

*(3)* If the merger results in the formation of a new limited liability company which is subject to Danish law, and if the supreme governing body and an auditor, if applicable, are not elected immediately after the adoption of the merger by the general meeting, a general meeting for the election of management and an auditor, if applicable, must be held in the new limited liability company within two weeks. The general meeting must also decide whether the future financial statements of the limited liability company are to be audited if the company is not subject to audit obligations under the Danish Financial Statements Act or any other statute.

*Application for registration of a cross-border merger*

**§ 288.** *(1)* For each limited liability company, an application for registration of the merger resolution must be received by the Commerce and Companies Agency no later than two weeks after the resolution is passed by all of the existing limited liability companies participating in the merger. The surviving company may apply for registration of the merger on behalf of the limited liability companies. The application for registration must be accompanied by the documents specified in § 280, subsection 5, paragraphs 3 to 7, if such documents have been prepared.

*(2)* The application for registration of the merger must be received by the Commerce and Companies Agency within the time limit allowed for filing an annual report for the period in which the merger takes effect for accounting purposes, see § 272, subsection 1, paragraph 6, but not later than one year after publication by the Agency of notification that it has received the merger plan under § 279. If one of these time limits is exceeded, the resolution implementing the merger will be invalid, and the merger plan prepared under § 272, will be considered to have lapsed.

*(3)* If a limited liability company resulting from a merger enters into an agreement before it is registered, and if the other party to the agreement is aware that the company is not registered, the other party may, unless otherwise agreed, terminate the agreement if no application for registration has been received by the Commerce and Companies Agency by the end of the period provided in subsection 2, or if registration is refused. If the other contracting party was unaware that the limited liability company was not registered, the other party may terminate the agreement as long as the company remains unregistered. Section 41, subsection 1, second sentence, applies with such changes as are necessary.

*(4)* §§ 42 to 44 apply, with such changes as are necessary, where a public limited company that is formed as a result of a merger acquires assets from a shareholder known to the company during the 24 months following registration of the company.

*Issue of certificate*

§ 289. *(1)* Upon receipt of an application for registration of a cross-border merger, the Commerce and Companies Agency ensures that all actions and formalities that are necessary to implement the merger have been taken or met. The Agency will issue a certificate to this effect to the participating limited liability companies that are subject to Danish law. The certificate will be issued as soon as possible after the following conditions are satisfied:

1) The merger has been adopted by all of the existing limited liability companies participating in the merger that are subject to Danish law.

2) The claims filed by creditors under § 278, have been settled.

3) The shareholders' claims for compensation under § 285, have been settled, or adequate security has been provided for such claims. If valuation experts have drawn up a statement on the plan, including the consideration, and the statement provides that the consideration is fair and reasonable, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts will determine whether the security is adequate.

4) The shareholders' claims for redemption under § 286, have been settled.

5) The requirements for the election of management and an auditor under § 287, subsection 3, have been met.

6) The requirement in § 316 on employee participation has been met.

*(2)* If the surviving limited liability company participating in a cross-border merger will be subject to Danish law, the regulatory authorities that govern each of the participating foreign limited liability companies must, for each company, submit a certificate to the Commerce and Companies Agency for the purpose of registering the merger. The certificate serves as conclusive evidence that all actions and formalities that are necessary to implement the merger in the relevant country have been taken or met, and that the foreign regulatory authority will register the merger in respect of the non-surviving company after receipt of a notification by the Commerce and Companies Agency. The certificate must be received by the Agency no later than six months after it is issued or it will be deemed invalid. Upon receipt of certificates for all of the companies participating in the merger, the Commerce and Companies Agency will register the implementation of the cross-border merger with respect to the surviving company and notify all registers in which the other participating companies are registered as soon as possible.

*(3)* For a cross-border merger where the surviving limited liability company will be subject to Danish law, the merger takes effect from the date that the Commerce and Companies Agency registers the merger.

*(4)* If the surviving limited liability company participating in a cross-border merger will not be subject to Danish law, the Commerce and Companies Agency will register the implementation of the merger in respect of the non-surviving limited liability companies that are subject to Danish law when the Agency has received notification as provided in subsection 2, from the competent regulatory authority governing the surviving limited liability company.

*Vertical cross-border mergers between parent companies and wholly owned subsidiaries*

§ 290. *(1)* If a limited liability company is dissolved without liquidation by transferring its assets and liabilities as a whole to another limited liability company holding all of the shares in the non-surviving limited liability company, a "vertical cross-border merger", the merger resolution may be passed by the central governing body in the non-surviving limited liability company. § 272, subsection 1, paragraphs 1, 4 and 6 to 12, §§ 273, 274 and 277 to 280, § 281, subsection 1, second and third sentences, §§ 282 to 284 and §§ 287 to 289 also apply to vertical cross-border mergers.

*Cross-border divisions*

§ 291. *(1)* Limited liability companies that are subject to this Act may participate in cross-border divisions in which the other participating companies are also limited liability companies governed by the laws of one or more other EU or EEA Member States.

*(2)* A cross-border division can only be implemented if the laws governing the other participating limited liability companies permit cross-border divisions. It is also a condition that any right of participation enjoyed by the employees of the Danish transferor company will be protected under the laws that will apply to the transferee limited liability company or companies after the division. If these conditions are not satisfied, a Danish limited liability company may not participate in any cross-border division.

*(3)* If any claim raised by a creditor of a limited liability company participating in the division is not satisfied, each of the other participating limited liability companies are jointly and severally liable for any obligations that existed at the date that the division plan was published, up to the maximum amount of the net value contributed or remaining in the limited liability company at that time.

*(4)* If one or more of the transferee limited liability companies participating in a division are the result of another division or merger which has not been implemented, this must be specified in the division plan, see § 292. Any division into new transferee limited liability companies resulting from another division or merger must be implemented immediately after the division or merger that results in the new limited liability companies, see § 308.

*Division plan*

**§ 292.** *(1)* The central governing bodies of the existing limited liability companies participating in the division must draw up and sign a joint division plan, which must include information and provisions on
1) the corporate forms, names and registered offices of the participating limited liability companies and of the transferee limited liability companies;
2) an accurate description and distribution of the assets and liabilities that are to be transferred or to remain in each limited liability company participating in the division;
3) the consideration offered to the shareholders in the transferor limited liability company;
4) the distribution of the consideration, including shares in the transferee limited liability companies, to the shareholders in the transferor limited liability company, and the distribution criterion;
5) the likely impact of the cross-border division on the number of employees in the participating limited liability companies;
6) the time from which the shares offered as consideration will confer on the holders a right to receive dividends, and a specification of any special conditions associated with such rights;
7) the time from which the rights and obligations of the transferor limited liability company are considered to have been transferred for accounting purposes;
8) the rights accruing in the transferee limited liability company to any holders of shares carrying special rights and any holders of other securities or shares, or the actions proposed to be taken for the benefit of such persons;
9) any special benefits accruing to the valuation experts that make a statement on the division plan, see § 296 and to the members of the companies' management;
10) the articles of association of the surviving limited liability company;
11) information about the procedures under § 318, for involving employees in the determination of their rights to representation in the surviving limited liability company, if appropriate;
12) valuation of the assets and liabilities transferred to the transferee limited liability companies; and
13) the dates of the participating companies' financial statements used to establish the conditions of the crossborder division.

*(2)* For each of the existing limited liability companies, the division plan must be signed by the end of the financial year in which the division takes effect for accounting purposes, see subsection 1, paragraph 7. If this time limit is exceeded, notification that the Commerce and Companies Agency has received the division plan cannot be published and, accordingly, the division cannot be adopted.

*(3)* If not all of the assets are distributed in the division plan, see subsection 1, paragraph 2, and the distribution cannot be determined by interpreting the plan, such assets or the value they represent will be distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each limited liability company according to the division plan.

*(4)* If not all of the liabilities are distributed in the division plan, see subsection 1, paragraph 2, and the distribution cannot be determined by interpreting the plan, each of the participating limited liability companies are jointly and severally liable, subject to the maximum amount of the net value contributed or remaining in the individual limited liability company. Such liabilities are distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each company according to the division plan.

*Division statement*

**§ 293.** *(1)* The central governing bodies of each of the existing limited liability companies participating in the division must draw up a written statement that provides explanations and reasons for the division plan. The statement, if this must be prepared pursuant to §295, must include information about how the consideration offered for the shares in the transferor limited liability company was determined, including any particular difficulties in connection with such determination. The statement must also include a description of the consequences of the cross-border division for the shareholders, creditors and employees.

*Interim balance sheet*

**§ 294.** *(1)* If the division plan is signed more than six months after the end of the financial year to which the limited liability company's most recent annual report relates, an interim balance sheet must be prepared for the relevant limited liability company participating in the division, cf. subsection 2 and 3. The date of the interim balance sheet, which must be prepared in accordance with the Danish Financial Statements Act, may not be more than three months before the date that the division plan was signed. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act or any other statute.

*(2)* The shareholders may agree that no interim balance sheet should be prepared, notwithstanding that the division plan (if any) has been signed more than six months after the end of the financial year to which the limited liability company's most recent annual report relates.

*(3)* The provision in subsection 1 does not apply to public limited companies whose shares are admitted to trading on a regulated market in an EU or EEA Member State and who have published an interim report in accordance with the Danish Financial Statements Act, if the interim report contains a revised half-yearly financial statement for the company and the interim report is available to the shareholders.

*Valuation report on non-cash contributions*

**§ 295.** *(1)* If a capital increase is implemented in one or more of the transferee public limited companies in connection with the division, or if one or more new public limited companies are formed by the division, a report must be obtained from a valuation expert, cf. subsection 2, to be appointed under § 37, subsection 1. § 37, subsection 2 and 3, also applies to the valuation experts' activities in relation to all of the limited liability companies participating in the division.

*(2)* However, if a statement by a valuation expert on the division plan, cf. § 296,  or a declaration by a valuation expert on the creditors' position, cf. § 297, are obtained, then the valuation report will not be required.

*(3)* If a valuation report is to be prepared in connection with a division, it must include
1) a description of each contribution;
2) information on the valuation method applied;
3) a specification of the agreed consideration; and

4) a declaration that the value of the contribution as assessed in the report is not less than the agreed consideration, including any nominal value of the shares to be issued and any premium on them.

*(4)* The valuation report may not be drawn up more than three months before the date of the division resolution, if any, see § 300. If this time limit is exceeded, the division cannot be validly adopted.

<em>Statement by valuation expert(s) on the division plan</em>

**§ 296.** *(1)* For each of the limited liability companies participating in the division, one or more independent valuation experts must make a written statement on the division plan, including the consideration, see subsection 4. However, the shareholders may decide, by unanimous agreement, not to obtain a statement by a valuation expert on the division plan.

*(2)* The valuation experts must be appointed as specified in § 37, subsection 1. If the limited liability companies participating in the division decide to use one or more joint valuation experts, the valuation experts must, at the companies' request, be appointed by the bankruptcy court that has jurisdiction over the place where the registered office of the surviving limited liability company is situated.

*(3)* Section 37, subsection 2 and 3, also applies to the valuation experts' activities in relation to all of the limited liability companies participating in the division.

*(4)* The statement must include a declaration as to whether the consideration offered for the shares in the transferor limited liability company is fair and reasonable. The statement must specify the method(s) used for determining the consideration and assess whether such methods are appropriate. The statement must also specify the values that result from each method and the relative importance that should be attached to each individual method in connection with the valuation. Where the valuation gives rise to particular difficulties, these should be included in the statement.

<em>Declaration by valuation expert(s) on the creditors' position</em>

**§ 297.** *(1)* In addition to the statement referred to in § 296, the valuation experts must make a declaration as to whether the creditors of each limited liability company are considered to be sufficiently protected after the division. However, the shareholders may decide, by unanimous agreement, not to obtain a declaration by a valuation expert on the creditors' position.

<em>Opportunity for creditors to file their claims</em>

**§ 298.** *(1)* If the valuation experts, with their declaration on the position of the creditors in the limited liability company, see § 297, conclude that the creditors will not be sufficiently protected after the division, or if no declaration has been made by a valuation expert on the creditors' position, creditors whose claims arose prior to the Commerce and Companies Agency's publication under § 299, may file their claims up to four weeks after the date that all of the existing limited liability companies participating in the division passed the resolution on the division. However, no claims for which adequate security has been provided may be filed.

*(2)* A request may be made for repayment of claims filed if they are due, and adequate security may be requested for claims filed that are not yet due.

*(3)* Unless otherwise established, security under subsection 2, is not required if repayment of the claims is secured by a statutory arrangement.

*(4)* If the limited liability company and any creditors who have filed their claims disagree as to whether security should be provided or whether the security offered is adequate, either party may, no later than two weeks after the claim is filed, bring the matter before the bankruptcy court that has jurisdiction over the place where the limited liability company's registered office is situated for a ruling on the issue.

*(5)* In the agreement on which the claim is based, creditors may not, with binding effect, waive their rights to demand security under subsection 3.

*(6)* If creditors have a right to file their claims, the certificate on the division resolution, see § 309, can only be issued upon expiry of the time allowed in subsection 1, for filing such claims.

*Filing of division plan and declaration by valuation expert(s) on the creditors' position*

**§ 299.** *(1)* The Commerce and Companies Agency must receive a copy of the division plan no later than four weeks after it is signed. If this time limit is exceeded, notification that the division plan has been received cannot be published and, accordingly, the division cannot be adopted. If valuation experts have made a declaration on the creditors' position, see § 297, this declaration may also be submitted to the Commerce and Companies Agency in connection with filing of the division plan.

*(2)* The Commerce and Companies Agency must publish notification in its IT system that it has received the documents referred to in subsection 1. If creditors have a right to file their claims, this must be stated in the Agency's notification.

*Resolution to implement a cross-border division*

**§ 300.** *(1)* The resolution to implement a division may be passed no earlier than four weeks after publication by the Commerce and Companies Agency of a notification that it has received the division plan and any declaration by the valuation experts on the creditors' position.

*(2)* If the transferor limited liability company is dissolved following the division, and if it has reached the end of its financial year without the general meeting having yet approved the annual report for the accounting period just ended, the general meeting must approve the annual report for this accounting period on or before the date of the resolution to implement the division.

*(3)* Creditors must, upon request, be informed about the date on which it will be resolved to implement any division.

*(4)* The division must be implemented in accordance with the division plan. If the division is not adopted in accordance with the division plan, the proposal is considered to have lapsed.

*(5)* If the following documents have been prepared, they must be made available for inspection by the shareholders no later than four weeks before the date on which the resolution to implement a division is to be passed, unless the shareholders agree that the documents should not be made available to them before the general meeting, cf. subsection 7:

1) The division plan.
2) Annual reports for each existing participating limited liability company, as adopted for the last three financial years or any shorter period in which the company has existed.
3) A division statement.
4) An interim balance sheet.
5) A valuation report on non-cash contributions.
6) The valuation experts' statements on the division plan, including the consideration.
7) The valuation experts' declaration on the creditors' position.

*(6)* Shareholders must, upon request, be provided with access to the documents specified in subsection *(5)*, free of charge.

*(7)* In connection with a cross-border division, the division statement, see § 293, must also be made available at the limited liability company's office for inspection by the employee representatives or, in the absence of such employee representatives in the relevant limited liability company, by the employees in general no later than four weeks before the date on which the division resolution is to be passed.

**§ 301.** *(1)* In the transferor limited liability company, the division resolution must be passed by the general meeting with the majority required under §§ 106 and 107 and in accordance with any additional rules on dissolutions and divisions provided by the articles of association, cf. § 310. If the company is in liquidation, a division resolution may only be passed if the shareholders have not yet received any distributions, and if the general meeting resolves at the same time to suspend the liquidation process. Accordingly, § 231, on resumption of business will not apply.

**§ 302.** *(1)* In existing transferee limited liability companies, the division resolution must be passed by the central governing body, unless the general meeting is required to amend the articles of association for any purpose other than adopting the transferor limited liability company's name or secondary name as the transferee limited liability company's secondary name, cf. subsections 2 to 4.

*(2)* Shareholders holding 5% of the share capital, or shareholders with the right to demand a general meeting under the articles of association, see § 89, may also make a written request that the resolution be passed by general meetings of the existing transferee limited liability companies if the request is made no later than two weeks after the Commerce and Companies Agency publishes notification that it has received the division plan.

*(3)* The central governing body must call a general meeting within two weeks of such request being made.

*(4)* If the resolution is to be passed by the general meeting of an existing transferee limited liability company, it must be passed by the majority required under § 106.

**§ 303.** *(1)* The central governing bodies of the existing limited liability companies participating in the division must inform any general meeting at which a resolution to implement a division is to be passed about any significant events, including any significant changes in assets and liabilities, which have occurred between the date the division plan was signed and the date of the general meeting.

**§ 304.** *(1)* If the resolution to implement a cross-border division is to be passed by the general meeting, the general meeting may decide that that resolution is subject to its subsequent approval of the guidelines on employee participation.

*Opportunity to claim compensation*

**§ 305.** *(1)* The shareholders in the transferor limited liability company may claim compensation from the limited liability company if the consideration offered for the shares in the transferor limited liability company is not fair and reasonable, and if they have made a reservation to this effect at the general meeting at which the division resolution was passed.

*(2)* Proceedings pursuant to subsection 1, must be commenced within two weeks after the division is adopted by all of the existing limited liability companies participating in the division.

*(3)* If a reservation is made under subsection 1, the division resolution may only be registered after expiry of the two-week period prescribed in subsection 2, unless the valuation experts, with their statement on the plan and the consideration, see § 296, conclude that the consideration offered for the shares in the transferor limited liability company is fair and reasonable.

*Opportunity to claim redemption*

**§ 306.** *(1)* In connection with a cross-border division, the shareholders in the transferor limited liability company who opposed the division at the general meeting may also demand redemption of their shares by the company by making a written request to this effect no later than four weeks after the date of the general meeting. § 110, applies with such changes as are necessary.

*(2)* The certificate to be issued under § 309, may only be issued when adequate security has been provided for the value of the shares. Experts appointed by the court with jurisdiction over the place where the registered office of the limited liability company is situated determine whether the security is adequate. If the experts' finding is challenged before the court, this will not delay the Commerce and Companies Agency in issuing the certificate, unless otherwise determined by the court.

*Formation, capital increases and capital reduction in connection with a cross-border division*

**§ 307.** *(1)* Consideration cannot be offered for shares in the transferor limited liability company which are owned by the limited liability companies participating in the division.

*(2)* Part 3 on formation will not apply if the division results in a new limited liability company, unless stipulated in the provisions on cross-border divisions in §§ 291 to 310. Part 10 on capital increases will not apply to capital increases in the transferee limited liability companies which are based on the assets and liabilities of the transferor limited liability company. Part 11 on capital disposals and Part 14 on dissolution will not apply if, as a result of the division, a capital reduction is implemented in the transferor limited liability company or the company is dissolved.

*(3)* If the division results in the formation of a new limited liability company which is subject to Danish law, and if the supreme governing body and an auditor, if applicable, are not elected immediately after the adoption of the division by the general meeting, a general meeting for the election of management and an auditor, if applicable, must be held by the new limited liability company within two weeks. The general meeting must also decide whether the future financial statements of the limited liability company are to be audited if the company is not subject to audit obligations under the Danish Financial Statements Act or any other statute.

*Application for registration of a cross-border division*

**§ 308.** *(1)* For each limited liability company, an application for registration of the division resolution must be received by the Commerce and Companies Agency no later than two weeks after the resolution is passed by all of the existing limited liability companies participating in the division. Each of the transferee limited liability companies may apply for registration of the division on behalf of the limited liability companies. The application for registration must be accompanied by the documents specified in § 300, subsection 5, paragraphs 3 to 7, if such documents have been prepared.

*(2)* The application for registration of the division must be received by the Commerce and Companies Agency within the time allowed for filing an annual report for the period in which the division takes effect for accounting purposes, see § 292, subsection 1, paragraph 7, but not later than one year after publication by the Agency of notification that it has received the division plan under § 299. If one of these two time limits is exceeded, the resolution implementing the division will be invalid, and the division plan prepared under § 292, will be considered to have lapsed.

*(3)* If a limited liability company resulting from a division enters into an agreement before it is registered, and if the other party to the agreement is aware that the company is not registered, the other party may, unless otherwise agreed, terminate the agreement if no application for registration has been received by the Commerce and Companies Agency by the end of the period provided in subsection 2, or if registration is refused. If the other contracting party was unaware that the limited liability company was not registered, the other party may terminate the agreement as long as the company remains unregistered. § 41, subsection 1, second sentence, also applies to divisions, with such changes as are necessary.

*(4)* §§ 42 to 44 apply, with such changes as are necessary, where a limited liability company that is the result of a division acquires assets from a shareholder known to the company during the 24 months following registration of the company.

*Issue of certificate*

**§ 309.** *(1)* Upon receipt of an application for registration of a cross-border division, the Commerce and Companies Agency ensures that all actions and formalities that are necessary to implement the division have been taken or met. The Agency will issue a certificate to this effect to the participating limited liability companies that are subject to Danish law. The certificate will be issued as soon as possible after the following conditions are satisfied:

1) The division has been adopted by all of the existing limited liability companies participating in the division that are subject to Danish law.

2) The claims filed by creditors under § 298, have been settled.

3) The shareholders' claims for compensation under § 305, have been settled, or adequate security has been provided for such claims. If valuation experts have drawn up a statement on the plan, including the consideration, and the statement provides that the consideration is fair and reasonable, the

valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts will determine whether the security is adequate.

4) The shareholders' claims for redemption under § 306, have been settled.

5) The requirements for the election of management and an auditor in § 307, subsection 3, have been met.

6) The requirement in § 316, subsection 1, see § 318, on employee participation has been met.

*(2)* If one or more of the transferee limited liability companies participating in a cross-border division will be subject to Danish law, the regulatory authorities that govern each of the participating foreign limited liability companies must, for each company, submit a certificate to the Commerce and Companies Agency for the purpose of registering the division. The certificate serves as conclusive evidence that all actions and formalities that are necessary to implement the division in the relevant country have been taken or met, and that the foreign regulatory authority will register the division in respect of the other participating companies after receipt of a notification by the Commerce and Companies Agency. The certificate must be received by the Agency no later than six months after it is issued or it will be deemed invalid. Upon receipt of certificates for all of the other limited liability companies participating in the division, the Commerce and Companies Agency will register the implementation of the cross-border division with respect to the transferee limited liability companies that are to be subject to Danish law and notify all registers in which the other participating limited liability companies are registered as soon as possible.

*(3)* For a cross-border division where one or more of the transferee limited liability companies will not be subject to Danish law, the division takes effect for these limited liability companies from the date that the Commerce and Companies Agency registers the division.

*(4)* If the transferee limited liability companies participating in a cross-border division will not be subject to Danish law, the Commerce and Companies Agency will register the implementation of the cross-border division in respect of the transferor limited liability company if that company is subject to Danish law. The Agency will make the registration when it has received notification as provided in subsection 2, from the competent regulatory authorities governing the transferee limited liability companies.

*Vertical cross-border divisions*

**§ 310** *(1)* Where all of the shares in the transferor limited liability company are held by the transferee limited liability companies, a "vertical cross-border division", the division resolution can be passed by the central governing body of the transferor limited liability company. § 292, subsection 1, paragraphs 1, 2, 5 and 7 to 13, and subsections 2 to 4, §§ 293, 294 and 297 to 300, § 301, second and third sentences, and §§ 302 to 304 and 307 to 309, also apply to vertical cross-border divisions, with such changes as are necessary.

*Employee participation in cross-border mergers*

**§ 311.** *(1)* For cross-border mergers, see § 271, in which the surviving limited liability company will be subject to Danish law, § 140, applies, unless

1) it does not result in at least the same level of employee participation as operated in the relevant merging limited liability companies, measured by reference to the proportion of employee representatives among the members of the administrative or supervisory bodies, committees or management groups, including the company's profit units, which have rules on employee participation;

2) it does not provide employees in establishments of the limited liability company resulting from the cross-border division that are situated in other Member States with the same entitlement to exercise participation rights as is enjoyed by the employees in Denmark; or

3) in the six months before publication of the notification of the cross-border merger plan, see § 137, subsection 1, the average number of employees covered by an employee participation system is more than 500 in at least one of the merging limited liability companies.

*(2)* If § 140 applies, §§ 312 to 316, will not apply.

**§ 312.** *(1)* If § 140 does not apply, see § 311, use § 2, subsection 4 to 6 and 11, § 33, § 15, subsection 1, subsection 2, paragraph 1, and subsection 3, § 17, paragraphs 1, 7 and 8, and §§ 41 to 43 of the Danish Act on the Involvement of Employees in SE Companies (lov om medarbejderindflydelse i SE-selskaber), and §§ 313 to 316 of this Act will apply.

 *(2)* Under § 313, subsection 1 of this Act, § 15, subsection 4 and 5, § 33, subsection 2, § 34 and §§ 36 to 40 of the Act on the Involvement of Employees in SE Companies may also apply.

 *(3)* If the provisions in the Act on the Involvement of Employees in SE Companies apply, § 120, subsection 1 and §§ 140 to 143 in this Act will not apply.

 *(4)* If the surviving limited liability company in any cross-border merger will be subject to the laws of another EU or EEA Member State, and if, for the purpose of the merger, rules are applied that are based on the Council Directive supplementing the Statute for a European company (SE) with regard to the involvement of employees, § 2, subsection 4 to 6 and 11 and §§ 3, 9, 36 to 39, and 41 to 43, of the Act on the Involvement of Employees in SE Companies and § 368, of this Act apply to the participating limited liability companies and the affected subsidiaries that are subject to Danish law and to establishments of the surviving limited liability company, participating limited liability companies or affected subsidiaries, where these establishments are situated in Denmark.

 **§ 313.** *(1)* Section 15, subsection 4 and 5, § 33, subsection 2 and §§ 34 and 36 to 40, of the Danish Act on the Involvement of Employees in SE Companies will only apply if one or more of the participating limited liability companies had an employee participation system before the merger, and if
1. the participating limited liability companies' competent bodies and the special negotiating body agree to apply these provisions;
2. no agreement has been made in the period provided for under § 12, of the Act on the Involvement of Employees in SE Companies, and the participating limited liability companies' competent bodies elect to apply these provisions and thus continue with the registration, cf. subsection 2; or
3. the participating limited liability companies' competent bodies elect to apply these provisions without prior negotiations with the special negotiating body.

 *(2)* In the situation referred to in subsection 1, paragraph 2, the application of § 15, subsection 4 and 5, § 33, subsection 2 and §§ 34 and 36 to 40, of the Act on the Involvement of Employees in SE Companies is also subject to the special negotiating body passing a resolution to this effect if, before the merger, less than one-third of the total number of employees in all of the participating limited liability companies were subject to one or more employee participation systems.

 *(3)* In the situations referred to in subsection 1, paragraphs 1 and 2, the proportion of employee representatives serving on management bodies may not exceed the number provided for in § 140 of this Act.

 **§ 314.** *(1)* Where § 15, subsection 4 and 5, § 33, subsection 2 and §§ 34 and 36 to 40, of the Danish Act on the Involvement of Employees in SE Companies, see § 313, subsection 1 of this Act apply, the special negotiating body determines:
1) how the seats on the board of directors or supervisory board are to be allocated between the members representing employees in states where the Council Directive supplementing the Statute for a European company with regard to the involvement of employees applies; or
2) how the employees in the surviving limited liability company can recommend or oppose the appointment of members of the board of directors or supervisory board that has regard to the number of employees employed in each state.

 **§ 315** *(1)*. The special negotiating body may, with no less than two-thirds of the votes from members representing no less than two-thirds of the employees employed in at least two countries, decide not to engage in negotiations or to break off negotiations and instead rely on the rules in § 140, on employee participation in management bodies.

**§ 316.** *(1)* If § 140 does not apply, see § 311, subsection 1, the cross-border merger may only be registered if an employee participation agreement has been entered into under § 17, paragraphs 1, 7 and 8, of the Danish Act on the Involvement of Employees in SE Companies, see § 312, subsection 1 or § 313, subsection 1, paragraph 1, of this Act,

or if a resolution has been passed under § 313, subsection 1, paragraph 3, or § 315 of this Act, or if the period provided for in § 12 of the Act on the Involvement of Employees in SE Companies, see § 313, subsection 1, paragraph 2, of this Act has expired without any agreement having been made.

*Subsequent national mergers and divisions*

**§ 317.** *(1)* §§ 311 to 316, on employee participation in cross-border mergers apply, with such changes as are necessary, if the surviving limited liability company in any cross-border merger participates in a national merger or division during the three years following the merger.

*Employee participation in cross-border divisions*

**§ 318.** *(1)* §§ 311 to 317 on employee participation in cross-border mergers apply, with such changes as are necessary, to cross-border divisions.

Part 17

*Conversion*

*Conversion of a private limited company into a public limited company*

**§ 319.** *(1)* The shareholders may, with the same majority required to amend the articles of association, resolve to convert a private limited company into a public limited company. Before passing the resolution on conversion, the shareholders must be advised of any valuation report prepared in accordance with §§ 36 to 38. §§ 42 to 44 apply, with such changes as are necessary, to acquisitions after the resolution on conversion has been passed. The conversion may be implemented without the consent of creditors.
 *(2)* Notice of the adopted conversion must be sent to all shareholders who did not participate in passing the resolution no later than two weeks after the date of the resolution.

**§ 320.** *(1)* Conversion of a private limited company into a public limited company will be deemed implemented when the company's articles of association have been amended to comply with the requirements for public limited companies and when the conversion has been registered in the Commerce and Companies Agency's IT system.

*Conversion of a public limited company into a private limited company*

**§ 321.** *(1)* The general meeting may, with the same majority required to amend the articles of association, resolve to convert a public limited company into a private limited company. The conversion may be implemented without the consent of creditors.
 *(2)* Notice of the adopted conversion must be sent to all shareholders who did not participate in passing the resolution no later than two weeks after the date of the resolution.

**§ 322.** *(1)* Conversion of a public limited company into a private limited company will be deemed implemented when the company's articles of association have been amended to comply with the requirements for private limited companies and when the conversion has been registered in the Commerce and Companies Agency's IT system.

*Conversion of a public limited company into a limited partnership company*

**§ 323.** *(1)* The general meeting may, with the same majority required to amend the articles of association, resolve to convert a public limited company into a limited partnership company. The conversion may be implemented without the consent of creditors.
 *(2)* Notice of the adopted conversion must be sent to all registered shareholders and to the new fully liable partners no later than two weeks after the date of the resolution.
 *(3)* Conversion of a public limited company into a limited partnership company will be deemed implemented when the company's articles of association have been amended to comply with the requirements for limited partnership companies and when the conversion has been registered in the Commerce and Companies Agency's IT system.

*Conversion of a limited partnership company into a public limited company*

§ 324. *(1)* The general meeting may, with the same majority required to amend the articles of association, and with the consent of the fully liable partners, resolve to convert a limited partnership company into a public limited company. The conversion may be implemented without the consent of creditors. Before passing the resolution on conversion, the general meeting must be advised of any valuation report prepared in accordance with §§ 36 to 38. §§ 42 to 44 apply, with such changes as are necessary, to acquisitions after the resolution on conversion has been passed.

*(2)* Notice of the adopted conversion must be sent to all partners who did not participate in passing the resolution no later than two weeks after the date of the resolution.

*(3)* Conversion of a limited partnership company into a public limited company will be deemed implemented when the company's articles of association have been amended to comply with the requirements for public limited companies and when the conversion has been registered in the Commerce and Companies Agency's IT system.

*(4)* When a limited partnership company has been converted into a public limited company, the fully liable partner remains liable for obligations incurred by the company before the conversion.

*Conversion of a co-operative society into a public limited company*

§ 325. *(1)* In a co-operative society with limited liability, the body authorized to amend the articles of association may resolve to convert the society into a public limited company, see §§ 326 to 337. The conversion may be implemented without the consent of creditors.

*Conversion plan*

§ 326. *(1)* The central governing body of the co-operative society must prepare and sign a conversion plan. The conversion plan must include the following information and provisions:
1) the name and any secondary name of the co-operative society before and after the conversion;
2) the registered office of the co-operative society;
3) the consideration offered to the members;
4) the time from which the shares in the public limited company will confer on the holders a right to receive dividends;
5) the rights accruing in the public limited company to any holders of ownership interests and debt instruments that enjoyed special rights in the co-operative society before the conversion;
6) any other measures taken for the benefit of holders of ownership interests and debt instruments as referred to in paragraph 5;
7) registration of the shares provided as consideration and delivery of share certificates, if any;
8) the time from which the conversion must be deemed effective for accounting purposes, see subsection 2;
9) any special benefits accruing to members of the company's management in connection with the conversion; and
10) draft articles of association, see §§ 28 and 29, for the public limited company after the conversion.

*(2)* The conversion plan must be signed before the end of the financial year in which the conversion takes effect for accounting purposes, see subsection 1, paragraph 8. If this time limit is exceeded, notification that the conversion plan has been received cannot be published and, accordingly, the conversion cannot be adopted.

*Conversion statement*

§ 327. *(1)* The central governing body of the co-operative society must draw up a written statement that provides explanations and reasons for the conversion plan. The statement must include information about how the consideration to members was determined, including any particular difficulties in connection with such determination.

*(2)* The members may agree that a conversion statement should not be prepared.

*Interim balance sheet*

§ 328. *(1)* If the conversion plan is signed more than six months after the end of the financial year to which the cooperative society's most recent annual report relates, an interim balance sheet must be prepared, cf. subsection 2. The date of the interim balance sheet, which must be prepared in accordance with the Danish Financial Statements Act, may not be

more than three months before the date that the conversion plan was signed. The interim balance sheet must be audited if the company is subject to audit obligations under the Financial Statements Act or any other statute.

  *(2)* The members may agree that no interim balance sheet should be prepared, notwithstanding that the conversion plan has been signed more than six months after the end of the financial year to which the most recent annual report of the co-operative society relates.

*Valuation report on non-cash contributions*

  **§ 329.** *(1)* In connection with the conversion, a report must be obtained from a valuation expert to be appointed under § 37, subsection 1. § 37, subsection 2 and 3, applies, with such changes as are necessary to the valuation experts' activities in relation to the co-operative society that is to be converted.

  *(2)* The valuation report must include

1) a description of each contribution;

2) information on the valuation method applied;

3) a specification of the agreed consideration; and

4) a declaration that the value of the contribution as assessed in the report is not less than the agreed consideration, including any nominal value of the shares to be issued and any premium on them.

  *(3)* The valuation report may not be drawn up more than three months before the date of the conversion resolution, if any, cf. § 334. If this time limit is exceeded, the conversion cannot be validly adopted.

*Statement by valuation expert(s) on the conversion plan*

  **§ 330.** *(1)* One or more independent valuation experts must make a written statement on the conversion plan, including the consideration, see subsection 4. The members of the co-operative society may decide, by unanimous agreement, not to obtain a statement by a valuation expert on the conversion plan.

  *(2)* The valuation experts must be appointed as specified in § 37, subsection 1.

  *(3)* § 37, subsection 2 and 3, applies, with such changes as are necessary to the valuation experts' activities in relation to the co-operative society that is to be converted.

  *(4)* The statement must include a declaration as to whether the consideration offered to the members of the co-operative society is fair and reasonable. The statement must specify the method(s) used for determining the consideration and assess whether such methods are appropriate. The statement must also specify the values that result from each method and the relative importance that should be attached to each individual method in connection with the valuation. Where the valuation gives rise to particular difficulties, these must be included in the statement.

*Declaration by valuation expert(s) on the creditors' position*

  **§ 331.** *(1)* In addition to the statement referred to in § 330, the valuation experts must make a declaration as to whether the creditors of the co-operative society can be considered to be sufficiently protected after the conversion. However, the members may decide, by unanimous agreement, not to obtain a declaration by a valuation expert on the creditors' position.

*Opportunity for creditors to file their claims*

  **§ 332.** *(1)* If the valuation experts, with their declaration on the position of the creditors, see § 331, conclude that the creditors will not be sufficiently protected after the conversion, or if no declaration has been made by a valuation expert on the creditors' position, creditors whose claims arose prior to the Commerce and Companies Agency's publication under § 333 may file their claims up to four weeks after the date that the members passed the resolution on the conversion. However, no claim for which adequate security has been provided may be filed.

*(2)* A request may be made for repayment of claims filed if they are due, and adequate security may be requested for claims filed that are not yet due.

*(3)* Unless otherwise established, security under subsection 2, is not required if repayment of the claims is secured by a statutory arrangement.

*(4)* If the co-operative society and any creditors who have filed their claims disagree as to whether security should be provided or whether the security offered is adequate, either party may, no later than two weeks after the claim is filed, bring the matter before the bankruptcy court that has jurisdiction over the place where co-operative society's registered office is situated for a ruling on the issue.

*(5)* In the agreement on which the claim is based, creditors may not, with binding effect, waive the right to demand security under subsection 2.

*(6)* If creditors have a right to file their claims, the implementation of the conversion, see § 337, can only be registered upon expiry of the time allowed in subsection 1, for filing such claims.

*Filing of conversion plan and declaration by valuation expert(s) on the creditors' position*

**§ 333.** *(1)* The Commerce and Companies Agency must receive a copy of the conversion plan no later than four weeks after it is signed. If this time limit is exceeded, notification that the conversion plan has been received cannot be published and, accordingly, the conversion cannot be adopted. If valuation experts have made a declaration on the creditors' position, see § 331, this declaration may also be submitted to the Commerce and Companies Agency in connection with filing of the conversion plan.

*(2)* The Commerce and Companies Agency must publish notification in its IT system that it has received the documents referred to in subsection 1. If the creditors have a right to file their claims, see § 332, this must be stated in the Agency's notification.

*Resolution to implement a conversion*

**§ 334.** *(1)* The resolution to implement a conversion may be passed no earlier than four weeks after publication by the Commerce and Companies Agency of a notification that it has received the conversion plan and a declaration by the valuation experts on the creditors' position. If the valuation experts' declaration on the creditors' position, see § 331, provides that the creditors of the co-operative society will be adequately secured after the conversion, the members of the co-operative society may agree to derogate from the four-week period.

*(2)* Creditors must, upon request, be informed about the date on which it will be resolved to implement any conversion.

*(3)* The conversion must be implemented in accordance with the conversion plan. If the conversion is not adopted in accordance with the conversion plan as published, the proposal is considered to have lapsed.

*(4)* If the following documents have been prepared, they must be made available for inspection by the members of the co-operative society no later than four weeks before the date on which the resolution to implement the conversion is to be passed, unless the members agree that the documents should not be made available to them before the general meeting:

1) The conversion plan.

2) Annual reports for the co-operative society, as adopted for the last three financial years or any shorter period in which the society has existed.

3) A conversion statement.

4) An interim balance sheet.

5) A valuation report on non-cash contributions.

6) The valuation experts' statements on the conversion plan, including the consideration.

7) The valuation experts' declaration on the creditors' position.

*(5)* Members of the co-operative society must, upon request, be provided with access to the documents specified in subsection 4, free of charge.

**§ 335.** *(1)* The resolution on conversion must be passed by the body authorized to amend the articles of association. The resolution must be passed by the same majority required for resolutions to dissolve the co-operative society and by not less than four-fifths of the members of the co-operative society or their votes where voting is based on shareholdings, revenue or the like. If the co-operative society is in liquidation, a conversion resolution may only be passed if the members have not yet received any distributions, and if the members resolve at the same time to suspend the liquidation process.

*(2)* The central governing body of the co-operative society must inform the meeting at which the resolution to implement the conversion is to be passed about any significant events, including any significant changes in assets and liabilities, which have occurred after the conversion plan was signed.

*(3)* Notice of the conversion must be provided to all members of the co-operative society within two weeks after the date of the resolution.

*(4)* If the supreme management and an auditor, if applicable, are not elected immediately after it has been resolved to implement the conversion, a general meeting to elect the supreme management and an auditor, if applicable, must be held no later than two weeks after the date of the resolution. In connection with the conversion or at the subsequent general meeting, the members of the co-operative society must resolve whether the society's future financial statements are to be audited if the society is not subject to audit obligations under the Danish Financial Statements Act or any other statute.

*Opportunity to claim compensation*

**§ 336.** *(1)* The members of the co-operative society may claim compensation from the society if the consideration offered to the members is not fair and reasonable, and if they have made a reservation to this effect at the meeting at which the conversion resolution was passed.

*(2)* Proceedings pursuant to subsection 1, must be commenced within two weeks after the conversion is adopted.

*(3)* If a reservation is made under subsection 1, the implementation of the conversion may only be registered after expiry of the two-week time limit prescribed in subsection 2, unless the valuation experts, with their statement on the plan and the consideration, see § 330, conclude that the consideration offered to the members of the co-operative society is fair and reasonable.

*Registration of implementation of a conversion*

**§ 337.** *(1)* The implementation of the conversion must be registered or an application for registration must be filed, see § 9, no later than two weeks after the date on which the resolution to implement the conversion is passed by the members of the co-operative society. The registration or application for registration must be accompanied by the documents specified in § 334. Subsection 4, paragraphs 3 to 7, if such documents have been prepared.

*(2)* The implementation of the conversion must be registered or an application for registration must be filed, see § 9, on or before expiry of the time limit for filing of the annual report covering the period in which the merger takes legal effect, see § 326, subsection 1, paragraph 8, but not later than one year after the Commerce and Companies Agency publishes notification of the conversion plan under § 333. If one of these two limits is exceeded, then the resolution implementing the conversion will be invalid, and the conversion plan prepared under § 326, will be considered to have lapsed.

*(3)* The conversion of a co-operative society into a public limited company may be registered when:

1) The members of the co-operative society have passed a resolution on the conversion, see § 335, subsection 1.
2) The claims filed by creditors under § 332, have been settled.
3) The requirements for the election of management and an auditor under § 335, subsection 4, have been met.
4) The members' claims for compensation under § 336, have been settled, unless adequate security has been provided for such claims. If valuation experts have drawn up a statement on the plan, including the consideration, and the statement assumes that the consideration is fair and reasonable, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts determine whether the security is adequate.

*(4)* Conversion of a co-operative society into a public limited company will be deemed implemented when the society's articles of association have been amended to comply with the requirements for public limited companies and when the conversion has been registered in the Commerce and Companies Agency's IT system.

*(5)* No registration may be made in the register of shareholders and no share certificates, if applicable, may be delivered until the conversion has been registered.

*(6)* If all those entitled to be registered in the company's register of shareholders have not made a request to such effect three years after the conversion, the central governing body may, by publication of a notification in the Commerce and Companies Agency's IT system, request the relevant shareholders to contact the company within six months. Where the company has not been contacted by expiry of the time limit, the board of directors may dispose of the shares at the shareholder's expense. The company may deduct its expenses of publishing the notification and any sale expenses from the sales proceeds. Any sales proceeds not claimed within three years after the sale will accrue to the company.

*(7)* §§ 42 to 44 apply, with such changes as are necessary, if the converted limited liability company acquires assets from a shareholder who is known to the company during a period of up to 24 months after registration of the conversion.

Part 18

*Takeover bids in public limited companies whose shares are admitted to trading on a regulated market or an alternative marketplace*

**§ 338.** *(1)* The provisions of this Part apply to public limited companies that have one or more share classes with voting rights and are admitted to trading on a regulated market or an alternative marketplace in an EU or EEA Member State, cf.§ 340, subsection 4.

*Special approval from the general meeting*

**§ 339.** *(1)* The general meeting may resolve to introduce a procedure whereby the central governing body of a public limited company whose shares are the subject of a takeover bid, see Part 8 of the Danish Securities Trading Act, must obtain the approval of the general meeting before taking any action that may hinder or frustrate a takeover bid, other than resolving to seek alternative bids.

*(2)* The general meeting must pass the resolution under subsection 1, in accordance with the requirements for a majority in § 106, subsection 1. The resolution must also comply with any other rules prescribed by the public limited company's articles of association under § 106, subsection 1. This also applies to any subsequent amendments to the resolution.

*(3)* The approval of the general meeting prescribed by subsection 1, is required from the time the offeror announces his intention to bid until the result of the bid is available and has been made public under the provisions of Part 8 of the Securities Trading Act, or the bid has lapsed. Accordingly, the approval of the general meeting must be obtained irrespective of whether it was resolved to take the relevant action before the central governing body received notice of the takeover bid.

*(4)* In order to obtain the general meeting's approval for any action referred to in subsection 1, the central governing body of the public limited company may convene the general meeting by providing at least two weeks' notice, notwithstanding § 94, subsection 2, and any longer period of notice prescribed by the articles of association.

*(5)* If the general meeting of a public limited company has introduced a procedure whereby the approval of the general meeting must be obtained as specified in subsection 1, the general meeting may resolve that that procedure only applies if the company's shares are made the subject of a bid from a company in an EU or EEA Member State that has introduced a similar procedure or is directly or indirectly controlled by a parent company, see §§ 6 and 7, that has introduced a similar procedure.

*(6)* The public limited company must give notice as soon as possible about the resolution made by the general meeting to introduce a procedure as specified in subsection 1. Notice must be provided to the Commerce and Companies Agency and the supervisory authorities in any EU or EEA Member State in which the company's shares are admitted to trading on a regulated market or an alternative

marketplace, or in which admission to trading has been applied for. Information about the resolution made by the general meeting must be published in the Commerce and Companies Agency's IT system.

*Suspension of special rights*

**§ 340.** *(1)* The general meeting may resolve to introduce a procedure whereby special rights or restrictions attaching to shareholdings in the public limited company or attaching to individual shares will be suspended if the company's shares become the subject of a takeover bid, see Part 8 of the Danish Securities Trading Act.

 *(2)* The general meeting must pass the resolution under subsection 1, in accordance with the requirements for a majority in § 106, subsection 1. The resolution must also comply with any other rules prescribed by the public limited company's articles of association under § 106, subsection 1. If the public limited company has more than one share class, the resolution must also satisfy the majority requirements prescribed by § 107, subsection 3. These requirements also apply to any subsequent amendments to the resolution.

 *(3)* The public limited company must give notice as soon as possible about the resolution made by the general meeting to introduce such a procedure. Notice must be provided to the Commerce and Companies Agency and the supervisory authorities in any EU or EEA Member State in which the company's shares are admitted to trading on a regulated market or an alternative marketplace, or in which admission to trading has been applied for. Information about the resolution of the general meeting must be published in the Commerce and Companies Agency's IT system.

 *(4)* Subsections 1 to 3 do not apply to public limited companies in which the Danish State holds voting shares that have special rights that are compatible with the EC Treaty.

*Legal effects of suspension*

**§ 341.** *(1)* As a result of the resolution of the general meeting on suspension under § 340, subsection 1, any restrictions on the right to transfer or acquire shares prescribed by the public limited company's articles of association or by agreement cannot be enforced against the offeror during the time allowed for acceptance of the bid, cf. § 342, subsection 1. If the offeror has stipulated any special conditions in the offer document, the restrictions are suspended until the offeror has decided, in accordance with the offer document, whether the bid can be completed.

 *(2)* At the general meeting referred to in § 339, a resolution on suspension under § 340, subsection 1, has the effect:
1) that any restrictions on voting rights prescribed by the public limited company's articles of association or by agreement cannot be enforced, cf.§ 342, subsection 2; and
2) that any share that is given greater voting weight by the public limited company's articles of association, see § 46, subsection 1, or by agreement only carries voting rights in proportion to its share of the aggregate voting share capital, cf.§ 342, subsection 2.

 *(3)* At the general meeting referred to in § 343, a resolution on suspension under § 340, subsection 1, has the effect:
1) that any restrictions on voting rights prescribed by the public limited company's articles of association or by agreement cannot be enforced, cf.§ 342, subsection 2;
2) that any share that is given greater voting weight by the public limited company's articles of association, see § 46, subsection 1, or by agreement only carries voting rights in proportion to its share of the aggregate voting share capital, cf.§ 342, subsection 2; and
3) that special rights conferred on certain shareholders to appoint members of management under the public limited company's articles of association cannot be enforced.

 *(4)* The general meeting may resolve that subsections 1 to 3, only apply if the public limited company's shares become the subject of a bid from a public limited company in an EU or EEA Member State that has passed a similar resolution on suspension or is directly or indirectly controlled by a parent company that has

passed a similar resolution on the suspension of special rights or restrictions attaching to shareholdings or to individual shares.

**§ 342.** *(1)* Any agreement restricting the right to transfer or acquire shares that is made before 31 March 2004 may, notwithstanding § 340, subsection 1, be enforced against an offeror.

*(2)* Any agreement on the exercise of voting rights that is made before 31 March 2004 may, notwithstanding § 340, subsection 1, be enforced at the general meetings referred to in §§ 339 and 343.

*Amendments to the articles of association following a successful takeover bid*

**§ 343.** *(1)* Where an offeror has acquired 75% or more of the voting capital in a public limited company, and that company has passed a resolution on suspension under § 340, subsection 1, the offeror may require the central governing body to convene a general meeting after the expiry of the bid for the purpose of amending the articles of association and appointing or replacing management members. This first general meeting may only be convened with at least two weeks' notice, notwithstanding § 94, subsection 2 and any longer notice period prescribed by the articles of association.

*Compensation to certain shareholders*

**§ 344.** *(1)* Where companies have passed a resolution on suspension under § 340, subsection 1 and the offeror's bid is successful and effected, the offeror must pay compensation to any shareholders that suffer economic loss because special rights or restrictions attaching to shareholdings or to individual shares under the public limited company's articles of association cannot be enforced, see § 341, subsections 1 to 3.

*(2)* The offeror's bid document must detail the compensation to be provided by the offeror to the shareholders, and the basis for calculating that compensation. The amount of the compensation must be based on the market value of the relevant shares.

*(3)* If an agreement cannot be reached on the amount of compensation, it must be determined by experts appointed by the court that has jurisdiction over the place where the public limited company's registered office is situated. The decision made by the experts may be brought before the court. Such proceedings must be commenced within three months of receipt of the experts' determination of the compensation amount.

*(4)* Shareholders are also entitled to compensation under subsections 1 to 3, if, during the period between 31 March 2004 and 26 June 2005, they entered into an agreement for special rights or restrictions, and those rights or restrictions cannot be enforced because of a takeover bid, see § 341, subsection 1 to 3.

Part 19

*Branches of foreign limited liability companies*

**§ 345.** *(1)* Foreign public limited companies, limited partnership companies, private limited companies, and companies with a similar corporate form that are resident in an EU or EEA Member State may operate via a branch in Denmark.

*(2)* Other foreign public limited companies, limited partnership companies, private limited companies, and companies with a similar corporate form may operate via a branch in Denmark if so authorized by an international agreement, or if the Commerce and Companies Agency considers that Danish limited liability companies are provided with a reciprocal right in the foreign company's home country, or the Agency otherwise grants permission.

**§ 346.** *(1)* The branch must be managed by one or more branch managers.

*(2)* Branch managers must be legally competent and not subject to guardianship under § 5, of the Danish Guardianship Act, and no surrogate decision-maker may have been designated for the manager under § 7, of the Guardianship Act. The provisions of this Act regarding members of management generally apply, with such changes as are necessary, to branch managers.

*(3)* The branch is bound by the signature or joint signatures of one or more branch managers. Branch managers may grant power of procuration.

**§ 347.** *(1)* A branch must have a name and may have secondary names, see § 3. A branch name must include the company's name with the word "filial" (in English, branch) added to it, and clearly indicate the nationality of the foreign company.

*(2)* On all letters and other business papers, including electronic messages, and on its website, if any, a branch must state its name, registered office, Central Business Register (CVR) number, and the name of any register and the registration number of the limited liability company in its home country. If the amount of the share capital is stated on these documents, both the subscribed and the paid-up capital must be stated.

**§ 348.** *(1)* The limited liability company is subject to Danish law and to the jurisdiction of the Danish courts for all legal matters arising out of its business activities in Denmark.

**§ 349.** *(1)* The establishment of a branch must be registered in the Commerce and Companies Agency's IT system or an application for registration must be filed with the Agency. Part 2 applies, with such changes as are necessary.

*(2)* The branch may not commence any activities until registration is complete or an application for registration has been filed. If registration is refused, or an existing branch is deregistered, see § 350, the branch may not continue its business in Denmark.

*(3)* If bankruptcy, compulsory composition or similar proceedings have been commenced against the foreign company, this must be registered in the Commerce and Companies Agency's IT system or an application for registration must be filed with the Agency no later than two weeks after the commencement of proceedings. Information about the status of the foreign company must be added to the company's name, see § 347, subsection 1.

**§ 350.** *(1)* A branch must be deleted from the Commerce and Companies Agency's IT system if
1) the company deletes the branch or applies to have the branch deleted;
2) the branch has no branch manager and this defect is not remedied before the expiry of a time limit set by the Commerce and Companies Agency;
3) the branch manager has failed to file the foreign company's audited annual report, if applicable, with the Commerce and Companies Agency in accordance with §§143 and 144, of the Danish Financial Statements Act, and this defect is not remedied by the expiry of a time limit set by the Agency; or
4) where the company is not resident in an EU or EEA Member State, a branch creditor establishes that his claim cannot be satisfied out of the company's assets in Denmark.

*(2)* If it appears that the matter that provided the basis for deletion from the IT system no longer exists after deletion, the Commerce and Companies Agency may re-register the branch upon request from the foreign company. The Commerce and Companies Agency may prescribe rules about the re-registration of branches.

*(3)* In the circumstances referred to in subsection 1, paragraph 4, the foreign company may not establish a new branch, and the branch may not be re-registered, until the creditor has either been paid in full or has consented to the establishment of a new branch.

Part 20

*State-owned public limited companies*

*Definition, etc.*

**§ 351.** *(1)* The rules governing public limited companies and the special rules governing state-owned public limited companies as provided by this Act, cf.§§ 352 and 353, apply to state-owned public limited companies.

**§ 352.** *(1)* The special rules in this Act governing state-owned public limited companies do not apply to public limited companies that are subsidiaries of state-owned public limited companies.

*(2)* State-owned public limited companies whose shares are admitted to trading on a regulated market in an EU or EEA Member State are exempted from the special rules in this Act governing state-owned public limited companies.

**§ 353.** *(1)* The Commerce and Companies Agency may prescribe rules that exempt state-owned public limited companies from the special rules under this Act where it is necessary to ensure consistency with the

corresponding rules applicable to limited liability companies whose securities are admitted to trading on a regulated market in an EU or EEA Member State.

*Special disclosure requirements, etc.*

**§ 354.** *(1)* State-owned public limited companies must notify the Commerce and Companies Agency as soon as possible about any significant matters relating to the company that can be assumed to affect the company's future, or its employees, shareholders or creditors. Parent companies, see sections 6 and 7, must give notice of significant matters relating to the group that can be assumed to affect the group's future, or its employees, shareholders or creditors.

**§ 355.** *(1)* The Commerce and Companies Agency prescribes rules on the publication of notices under § 354, and other documents, etc. that state-owned public limited companies are required to publish in the Agency's IT system under this Act.

**§ 356.** *(1)* A state-owned public limited company must publish its articles of association and annual reports on its website.

**§ 357.** *(1)* The board of directors or the supervisory board of a state-owned public limited company must oversee the establishment of guidelines to ensure that the company complies with the special rules governing state-owned public limited companies in this Act and in the Danish Financial Statements Act.
  *(2)* The Commerce and Companies Agency may compel the company to send any guidelines established under subsection 1, to the Agency.

Part 21

*Limited partnership companies*

**§ 358.** *(1)* The rules of this Act governing public limited companies also apply to limited partnership companies, subject to any necessary modifications.

**§ 359.** *(1)* Limited partnership companies have an obligation and an exclusive right to include the words "kommanditaktieselskab" or "partnerselskab" (in English, limited partnership company), or the abbreviation "P/S" in their name.

**§ 360.** *(1)* In addition to the information required to be included for public limited companies, the memorandum of association of a limited partnership company must include the following information:
1) The full name(s), address(es) and Central Business Register (CVR) number(s), if applicable, of the fully liable partner(s).
2) Whether the fully liable partner(s) is/are liable to make contributions and if so, the amount of each individual contribution. If the contribution has not been paid in full, the rules governing payment must be stated. If non-monetary contributions are made, the basis for the valuation must be detailed.
3) Any provisions contained in the articles of association regarding the level of influence held by the fully liable partner(s) over the company's affairs, and their share(s) in the profits or losses.
  *(2)* In addition to the information listed in §§ 28 and 29, the articles of association of a limited partnership company must prescribe rules governing the legal relationship between the shareholders and the fully liable partners.

Part 22

*Damages, forced transfer, etc.*

**§ 361.** *(1)* Promoters and members of management who, in the performance of their duties, have intentionally or negligently caused damage to the limited liability company are liable to pay damages. The same applies where the damage is caused to shareholders or any third party.
  *(2)* Subsection 1 imposes similar liability for damages upon valuation experts, keepers of the register of shareholders and scrutinizers.
  *(3)* If an auditing firm has been elected auditor, both the auditing firm and the auditor performing the audit are liable in damages.

**§ 362.** *(1)* Shareholders must provide compensation for any losses that they cause to the company, other shareholders or third parties through intentional acts or omissions, or gross negligence.

*(2)* If any shareholder has, intentionally or by gross negligence, caused a loss to the company, other shareholders, the company's creditors or other third parties, and there is a risk of continued abuse, the court may order that shareholder to redeem the shares belonging to the shareholder who suffers a loss at a reasonable price which is to be fixed with regard to the company's financial position and the circumstances of the case.

*(3)* If any shareholder has, intentionally or by gross negligence, caused a loss to the company, other shareholders or any third party, and there is a risk of continued abuse, the court may order that shareholder to sell his shares to the other shareholders or the company at a reasonable price which is to be fixed with regard to the company's financial position and the circumstances of the case.

**§ 363.** *(1)* Damages and compensation under §§ 361 and 362 may be reduced if it is considered reasonable having regard to the degree of fault, the amount of the loss and other circumstances of the case.

*(2)* If multiple persons are liable, they will be jointly and severally liable in damages. However, any person whose liability is reduced under subsection 1, is only liable for the reduced amount. If any of the liable persons have paid the damages amount, they have a right to receive contribution from each of the other liable persons with regard to the degree of fault attributable to each individual and the circumstances of the case.

**§ 364.** *(1)* Any resolution that the limited liability company should take legal action against its promoters, members of management, valuation experts, auditors, scrutinizers, keepers of the register of shareholders or shareholders under §§ 361 and 362, must be passed by the general meeting.

*(2)* Proceedings may be commenced notwithstanding any previous resolutions by the general meeting granting exemption from liability or waiving the right to take legal action if the information about the resolution or about the subject-matter of the proceedings which was provided to the general meeting before the resolution was passed was not essentially correct or complete.

*(3)* If shareholders that represent no less than one-tenth of the share capital oppose any resolution to grant exemption from liability or waive the right to take legal action, any shareholder can commence legal proceedings to recover damages for the limited liability company from the person(s) liable for the loss suffered. Shareholders who commence such proceedings must pay the legal costs involved but may have such costs reimbursed by the company to the extent that they do not exceed the amount recovered by the company as a result of the proceedings.

*(4)* If the company is declared bankrupt, and the date of presentation of the bankruptcy petition is no later than 24 months after the date on which the general meeting resolved to grant exemption from liability or waive the right to take legal action, the bankrupt estate may, however, bring an action for damages without regard to the resolution made by the general meeting.

**§ 365.** *(1)* Legal action pursuant to § 364, subsection 3, must be taken no later than six months after the date of the resolution by the general meeting that granted exemption from liability or waived the right to take legal action. If a scrutiny procedure has been initiated under § 150, action must be brought within six months of completion of the scrutiny.

*(2)* Legal action pursuant to § 364, subsection 4, must be taken no later than three months after the date of the limited liability company being declared bankrupt.

Part 23

*Penalty provisions, etc.*

**§ 366.** *(1)* In the absence of a more severe penalty under any other statute, any contravention of the rules of this Act regarding registrations in the Commerce and Companies Agency's IT system or the submission of applications for registration, valuation reports under § 43, or notices to the Agency is punishable by a fine.

*(2)* Where members of the management of a limited liability company or the liquidator, or the manager of a foreign limited liability company's branch fails to meet, in a timely manner, their obligations to the Commerce and Companies Agency under this Act or in accordance with provisions made under this Act, the Agency may, by way of sanction, impose fines that accrue on a daily or weekly basis.

**§ 367.** *(1)* Contraventions of § 1, subsection 3, §§ 2, 10 and 15, § 24, subsection 2, § 30, § 32, subsection 2 and 3, § 33, subsection 4, § 38, subsection 2, § 42, subsection 1, § 44, subsection 1, § 50, subsection 1, § 51, subsection 1, 2 and 6, § 52, § 53, subsection 1 and 2, §§ 54 to 56, 587) to 61, 89, 98 and 99, § 101, subsection 3, 4, 7 and 8, § 108 and 113 to 119, § 120, subsection 3, §§ 123, 125, 127-134, 138 and 139, § 160, third sentence., § 179, subsection 2, § 180, § 181, third sentence., § 182, subsection 3, § § 190, subsection 2, third sentence., § 192, subsection 1, § 193, subsection 2, 196, 198 and 202 to 204, § 205, subsection 1, § 206, § 207, subsection 3, § 210, § 214, subsection 2 and 3, § 215, subsection 1, § 218, subsection 2, § 227, subsection 2, §§ 228 and 234, § 339, subsection 6, § 340, subsection 3, § 347, § 349, subsection 2 and 3, and §§ 354, 356, 357 and 359 are punishable by a fine. If a company continues to participate in transactions that contravene § 206 or § 210, it will be subject to punishment by a fine.

*(2)* In the absence of a more severe penalty under any other statute, any person who wrongfully discloses or uses a password or other means of access to attend or electronically participate in an electronic meeting of the board of directors, see § 125, subsection 2 or an electronic general meeting, see § 77, subsection 1 or 2, including electronic voting, will be punished by a fine.

*(3)* In the absence of a more severe penalty under any other statute, any person who wrongfully discloses or uses a password or other means of access to read, modify or send electronic messages, etc. falling within the provisions on electronic communication in § 92 will be punished by a fine.

*(4)* Regulations issued pursuant to § 4, subsection 3, § 12, subsection 2, § 55, subsection 3, § 57, § 71, subsection 4, § 143, § 172, and § 372, subsection 1, may provide for punishment by a fine for contraventions of those regulations.

**§ 368.** *(1)* Any contravention of § 312, § 313 and § 318, see § 3, § 36, subsection 4, § 37, § 38, second sentence, and § 39, of the Danish Act on the Involvement of Employees in SE Companies is punishable by a fine.

*(2)* In the absence of a more severe penalty under any other statute, any person disclosing information which is confidential within the meaning of § 312 and § 318, see § 41, subsection 1 of the Act on the Involvement of Employees in SE Companies will be punished by a fine.

*(3)* Any person who makes false representations to the employees or their representatives before or after a cross-border merger or division, see Part 16, whether intentionally or because of gross negligence, and those representations are of major importance to the employees' participation in the surviving company, will be subject to punishment by a fine.

**§ 369.** *(1)* Companies, etc. (legal persons) may incur criminal liability under the rules in Part 5 of the Danish Penal Code (straffeloven).

Part 24

*Right to complain*

**§ 370.** *(1)* The Danish Minister for Industry, Business and Financial Affairs may prescribe rules governing complaints about decisions made pursuant to this Act, including rules stipulating that complaints may not be filed with any other administrative authority.

**§ 371.** *(1)* Decisions made by the Commerce and Companies Agency under this Act or regulations issued pursuant to the Act may be brought before the Danish Company Appeals Board (Erhvervsankenævnet) within four weeks after being communicated to the relevant party.

*(2)* However, decisions of the Commerce and Companies Agency with respect to failure to comply with time limits under § 40, subsection 1, § 165, subsection 5, § 177, subsection 2, § 191, § 225, subsection 2 and § 231, subsection 2, the setting of deadlines under § 16, subsection 1 and § 17, subsection 2, and decisions pursuant to § 93, subsection 2 to 4, § 225, subsection 1, § 226, § 232, subsection 2 and § 350, subsection 1, paragraphs 2 to 4, cannot be brought before any higher administrative authority.

Part 25

*Commencement*

**§ 372.** [8] *(1)* The Danish Minister for Industry, Business and Financial Affairs fixes the date of commencement of this Act. The Minister may also determine that different parts of the Act will enter into force at different times and prescribe rules that derogate from the provisions in this Act that require adjustments to the Commerce and Companies Agency's IT system in respect of registration and publication, until all necessary adjustments to the IT system have been completed. The Minister is authorized to repeal the Danish Public Companies Act (lov om aktieselskaber), see Consolidated Act no. 649 of 15 June 2006, as amended, and the Danish Private Companies Act (lov om anpartsselskaber), see Consolidated Act no. 650 of 15 June 2006, as amended.

*(2)* The Danish Minister for Industry, Business and Financial Affairs may prescribe rules providing for special transitional arrangements for companies, including affected employees, falling within the Act and for governing bodies, including their duties.

**§ 373.** *(1)* All applications for registration made under the Danish Public Companies Act or the Danish Private Companies Act which reach the Commerce and Companies Agency before the date of commencement of this Act will be considered according to the rules applicable until the date of commencement.

*(2)* All executive orders, rules and regulations issued pursuant to this Act and all information registered, including articles of association and authorizations of the company's management, permissions given, approvals, etc. will remain in force until changed, withdrawn, expired or terminated under the provisions of this Act.

**§ 374.** *(1)* The Danish Minister for Industry, Business and Financial Affairs will review this Companies Act or parts of it two years after the date of commencement of the provisions in § 4.

**§ 375.** *(1)* This Act does not apply in Greenland and the Faroe Islands, but may be extended to Greenland by Royal Decree, subject to such modifications as may be required by special local conditions.

————

The Danish Act, Act no. 159 of 16 February 2010 contains the following provision on entry into force, etc.:

### §3

*(1)* The Act enters into force the day after it is published in the official journal (Lovtidende).

*(2)* Section 1 of the Act does not apply in Greenland and the Faroe Islands, but may be extended to Greenland by Royal Decree, subject to such modifications as may be required by special local conditions

*(3)* (Omitted).

————

The Danish Act, Act no. 718 of 25 June 2010 contains the following provisions on entry into force, etc.

### §55

§ 1 [9] The Danish Minister for Justice lays down the date of entry into force of this Act.

### §56

*(1)* The Act does not apply in Greenland and the Faroe Islands

*(2)* (Omitted)

*(3)* The Acts §§ 6-10, 14, 15, 18, 20, 21, 24, 25, 27, 28, 31, 33 and 54 may either wholly or partly be extended to Greenland and the Faroe Islands by Royal Decree, subject to such modifications as may be required by special local conditions in Greenland.

————

The Danish Act, Act no. 720 of 25 June 2010 contains the following provisions on entry into force, etc.

### §3

*(1)* (omitted)

*(2)* [10]  The Danish Minister for Industry, Business and Financial Affairs fixes the date of commencement of Section 2. The Minister may also determine that different parts of the Act will enter into force at different times. The Minister may also prescribe rules that derogate from the provisions in this Act that require adjustments to the Commerce and Companies Agency's IT system in respect of registration and publication, until all necessary adjustments to the IT system have been completed.

### §4

The Act does not apply in Greenland and the Faroe Islands, but may be extended to Greenland by Royal Decree, subject to such modifications as may be required by special local conditions.

_____

The Danish Act, Act no. 1557 of 21 December 2010 contains the following provisions on entry into force, etc.

### §4

*(1)* [11] The Danish Minister for Industry, Business and Financial Affairs fixes the date of commencement for the Act. The Minister may also determine that different parts of the Act will enter into force at different times. *(2)* The Minister may also prescribe rules that derogate from the provisions in this Act that require adjustments to the Commerce and Companies Agency's IT system in respect of registration and publication, until all necessary adjustments to the IT system have been completed.

### §5

*(1)* The Act does not apply in Greenland and the Faroe Islands *(2)* The Act may either wholly or partly be extended to Greenland by Royal Decree, subject to such modifications as may be required by special local conditions in Greenland.

*Danish Minister for Industry, Business and Financial Affairs on 11 April, 2011*

BRIAN MIKKELSEN

/Betina Hagerup

The Act contains provisions implementing parts of Council Directive 1968/151/EEC of 9 March 1968 as regards disclosure requirements in respect of certain types of companies (the Official Journal of the European Communities 1968 no. L 065, p. 8), as amended most recently by Directive 2003/58/EC of the European Parliament and of the Council of 15 July 2003 (the Official Journal of the European Communities 2003 no. 221, p. 13), parts of Council Directive 1977/91/EEC of 13 December 1976 as regards the formation of public limited liability companies and the maintenance and alteration of their capital (the Official Journal of the European Communities 1977 no. L 26, p. 1), as amended most recently by Directive 2006/68/EC of the European Parliament and of the Council of 6 September 2006 (the Official Journal of the European Communities 2006 no. L 264, p. 32), parts of Council Directive 1978/660/EEC of 25 July 1978 on the annual accounts of certain types of companies (the Official Journal of the European Communities 1978 no. L 222, p. 11), as amended most recently by Directive 2003/51/EC of the European Parliament and of the Council of 18 June 2003 (the Official Journal of the European Communities 2003 no. L 178, p. 16), parts of Council Directive 1978/855/EEC of 9 October 1978 concerning mergers of public limited liability companies (the Official Journal of the European Communities 1978 no. L 295, p. 36), parts of Council Directive 1982/891/EEC of 17 December 1982 concerning the division of public limited liability companies (the Official Journal of the European Communities 1982 no. L 378, p. 47), parts of Council Directive 1983/349/EEC of 13 June 1983 on consolidated accounts (the Official Journal of the European Communities 1983 no. L 193, p. 1), as amended most recently by Directive 2003/51/EC of the European Parliament and of the Council of 18 June 2003 (the Official Journal of the European Communities 2003 no. L 178, p. 16), parts of Council Directive 1984/253/EEC of 10 April 1984 on the approval of persons responsible for carrying out the statutory audits of accounting documents (the Official Journal of the European Communities 1984 no. L 126, p. 20), parts of Council Directive 1988/627/EEC of 12 December 1988 on the information to be published when a major holding in a listed company is acquired or disposed of (the Official Journal of the European Communities 1988 no. L 348, p. 62), parts of Council Directive 1989/666/EEC of 21 December 1989 concerning disclosure requirements in respect of branches opened in a Member State by certain types of company governed by the law of another State (the Official Journal of the European Communities 1989 no. L 395, p. 36), parts of Council Company Law Directive 1989/667/EEC of 21 December 1989 on single member private limited-liability companies (the Official Journal of the European Communities 1989 no. L 395, p. 40), parts of Directive 2004/25/EC of the European Parliament and of the Council of 21 April 2004 on takeover bids (the Official Journal of the European Communities 2004 no. L 142, p. 12), parts of Directive 2005/56/EC of the European Parliament and of the Council of 26 October 2005 (the Official Journal of the European Communities 2005 no. L 310, p. 1) on cross-border mergers of limited liability companies, parts of Directive 2007/36/EC of the European Parliament and of the Council of 11 July 2007 (the Official Journal of the European Communities 2007 no. L 184, p. 17) on the exercise of certain rights of shareholders in listed companies, and parts of Directive 2007/63/EC of the European Parliament and of the Council of 13 November 2007 (the Official Journal of the European Communities 2007 no. L 300, p. 48), amending Council Directives 78/855/EEC and 82/891/EEC as regards the requirement of an independent expert's report on the occasion of merger or division of public limited liability companies and parts of the Council Directive 2009/109/EC of 16 September 2009, the Official Journal of the European Communities 2009 no. L 259, p. 14, amending Council Directives 77/91/EEC, 78/855/EEC and 82/891/EEC and Directive 2005/56/EC as regards the reporting and documentation requirement for mergers and divisions.

2)      § 5, No. 9, has not entered into force.

3)      § 50, subsection 2, has not entered into force.

4)      § 51, subsections 4 and 5 have not entered into force. Instead, the interim provision in § 7 of Danish Executive Order No. 172 of 22 February 2010 shall apply. The provision is worded as follows: "§7. As per Section 50, subsection 1, the Articles of Association may provide that the register of shareholders must be available to shareholders, also electronically, in addition to being available for inspection by public authorities and the persons mentioned in §51, subsections 1-3 of the Danish Consolidated Act on the Danish Act on Public Limited Companies and Private Limited Companies (The Danish Companies Act). The decision regarding this is made by the company shareholders with the quorum that is required to amend the Articles of Association. Subsection 2. If the register of shareholders is available in electronic form, then the company can fulfill its obligations under subsection 1 and § 51, subsections 1-3 of the Danish Companies Act by giving those who are entitled access to the electronic register of shareholders. Subsection 3. In private limited companies the register of shareholders must be available for inspection by all shareholders, cf. § 51, subsection 6. The register of shareholders is not public information unless otherwise specified in the Articles of Association or the share capital is DKK 500,000 or more."

5)      See note 4.

6)      §58 has not entered into force. Instead, the interim provision in § 8 of Danish Executive Order No. 172 of 22 February 2010 shall apply. The provision is worded as follows: "§ 8. A public limited company must keep a special list of notifications relating to certain shareholders' holdings, which the company receives in accordance with §§ 55 and 56 of the Danish Companies Act. The information must be entered into the register of shareholders as soon as possible. The register of shareholders constitutes a part of the company's register of shareholders but can be located outside the register of shareholders in a special designation irrespective of § 56, subsection 2, second sentence of the Danish Companies Act. Subsection 2. In accordance with subsection 1, the company's headquarters must be accessible to public authorities, shareholders, board members or members of supervisory authorities and employee representatives in companies where employee representatives are not elected to the board or the supervisory board in accordance with Part 8 of the Danish Companies Act or members to represent employees in the administrative body in accordance with the rules that apply to SE Companies with respect to employee influence. Anyone has the right to request a printout by paying a fee to cover printing costs and for postage. Subsection 3. If the register under subsection 1 is available in electronic form, then the company can fulfill its obligations under subsection 2 by granting access to this register."

7)      § 58 has not entered into force. Instead, the interim provision in § 8 of Danish Executive Order No. 172 of 22 February 2010 shall apply as mentioned in note 6. Breaches of the provision in question shall be punishable by fines, cf. § 52 in the Danish Executive Order No. 172 of 22 February 2010.

8)      The Danish Minister for Industry, Business and Financial Affairs has issued the following executive orders on entry into force of the Danish Companies Act: Danish Act No. 172 of 22 February 2010 on the phased entry into force of Public and Private Limited Companies (the Danish Companies Act), as amended by Danish Executive Order No. 142 of 22 February 2011, and Danish Executive Order No. 135 of 22 February 2011 on the phased entry into force of Public and Private Limited Companies (the Danish Companies Act), entry into force of § 2 of the Danish Act on Amending the Annual Accounts Act and the Danish Companies Act and entry into force of the Danish Consolidated Act on the Danish Act on Public Limited Companies and Private Limited Companies (The Danish Companies Act).

9)      Danish Act No. 718 of 25 June 2010 entered into force through Danish Executive Order No. 208 of 15 March 2011 on entry into force of the Danish Act on Amending the Danish Bankruptcy Act and miscellaneous other acts (Restructuring, etc.).

10)     Danish Act No. 720 of 25 June 2010 entered into force through Danish Executive Order No. 135 of 22 February 2011. See note 8.

11)     Danish Act No. 1557 of 21 December 2010 entered into force through Danish Executive Order No. 135 of 22 February 2011. See note 8.



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK          )
                          )                    ss:
COUNTY of NEW YORK         )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, "*Selskabsloven*"- originally written in Danish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 11/30/2021                        Sworn to and signed before ME
                                         This 30th day of November, 2021

_____

Heather Cameron                          Notary Public
Projects Manager
Consortra Translations



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your
legal
translation
partner