# Exhibit 78

SKAT.DK

# Share Loan Agreements - Dividend Compensation and Remuneration for the Borrower, traders and others, respectively - Binding advance notice

| | |
|---|---|
| Date of publication | Feb 4, 2004 1:23 p.m. |
| Date for of judgment / order / decision / control signal | Dec 19, 2003 |
| SKM-number | SKM2004.51.LSR |
| Authority | Tax Council |
| Case number | 2-2-1819-1023 |
| Document type | Ruling |
| Main topics | Tax |
| Main topics | Personal tax, corporate tax, shareholders and companies as well as capital gains taxation |
| Key words | Share loan agreement, dividend compensation, renumeration, borrower |

Share Loan Agreements - Dividend Compensation and

Printout of Share Loan Agreements - Dividend Compensation and….     https://skat.dk/display.aspx?oid=199510&vid=0

| | |
|---|---|
| Summary. | The case is about a binding advance notice regarding not traders' share loans, i.e., standardized agreements regarding listed shares, where the borrower receives a post for consideration shares that the borrower can then dispose of. At the end of the agreement, the shares must be returned to the lender. |
| | Question 1 Regarding the situation where the borrower resells the shares, does not receive dividends, however must compensate the lender for the dividend. The current remuneration and the compensation for the dividend should be included in the calculation of gains and losses at the event in accordance with the State Tax Act, Section 4 f. |
| | Question 2 Regarding the situation where the lender does not sell the borrowed shares and does not receive yield. The current remuneration was a loss on the event which, according to Section 4 f of the State Tax Act, is only deductible in gains on similar agreements. |
| | Question 3 Regarding the situation where the borrower does not resell shares and receives dividends, which the borrower must be compensated for. The dividend is not to be taxed at the borrower as it according to the agreement belongs to the lender. |
| Reference (s) | State Tax Act, Section 4 f |
| Editorial notes | See the Tax Assessment Council's binding advance notice of 18 June 2002, SKM2002.402.LR |

The complaint is regarding the Tax Assessment Council's binding advance notice as concerning the answer to questions A and C.

**The questions to the Tax Assessment Council were the following:**

**Question 1 (not appealed)**

Can it be confirmed that this is a loan and not a realization if the parties to an agreement concerning the loan of shares choose to use the internationally recognized framework agreements Morgan Stanley & Co. International Limited - Overseas Securities Lenders Agreement or Overseas Securities Lenders Association - Global Master Securities Lending Agreement, provided that the loan agreement includes listed shares and the duration of the loan period is determined by individual agreement.

**Question 2 (not appealed)**

Can it be confirmed that a loan of foreign listed shares is considered a loan and not a divestment of shares if the agreement has been entered into on terms corresponding to the "Standard Terms" approved by the Tax Assessment Council by TfS 1999.408 and other agreements approved by the Tax Assessment Council In this connection, foreign listed shares are to be understood as shares listed on markets that meet FIBV's market conditions.

Question A
Can it be confirmed that the profit statement for the borrower, in the case of resale of the borrowed shares, is made after the Capital Gains Tax Act and as one business in accordance with the decisions concerning bearish transactions (Notices from the National Tax Court 1966, no. 13 and TfS 1989, no. 471).

**Question B (not appealed)**

Can it be confirmed that the consideration, including compensation for dividends to the lender, is a deductible operating expense for traders with shares.

Question C
Can it be confirmed that other borrowers have a right to deduct for consideration, including compensation for dividends to the lender according to the following guidelines:

The borrower has resold the shares and therefore does not receive dividends, but must nevertheless compensate the lender for the dividends.

Printout of Share Loan Agreements - Dividend Compensation and….    https://skat.dk/display.aspx?oid=199510&vid=0

The consideration, including compensation for dividends, is regarded by the borrower as an expense and can be deducted from the borrower's profit statement at the sale of shares.

2. The borrower has not resold the shares and has not received dividends.

Expenses for remuneration cannot be deducted.

3. The borrower has not resold the shares, but has received dividends:

The borrower compensates the lender for the dividend. The compensated dividend is a necessary cost of acquiring dividends from the borrower, and can therefore be set off against the dividends that the borrower receives.

**The Tax Assessment Council answered the questions in this way:**

Question 1
Yes .....

Question 2
Yes ......

Question A
No, the borrower must calculate his profit according to Section 4 of the State Tax Act from sale to repurchase. This also applies to a borrower who has equity loans that fully or partially live off this, as to borrowers who don't.

Question B
There will be a presumption regarding this.

Question C
No ....

The case concerns the tax treatment of share loans, understood as standardized agreements on loans of listed shares, where the borrower receives a given item for consideration and possibly in connection with the provision of collateral, which the borrower can then dispose of by e.g. sales at the end of the agreement, the shares must be returned to the lender, possibly after the repurchase.

It is informed that the complainant after the introduction of share loan schemes in May 1999 did not establish the expected loan activity, which is due to the fact that only shares listed on the Copenhagen Stock Exchange are covered by the standard terms in the form approved by the Tax Assessment Council at TfS 1999.408 (hereinafter the standard terms).

One of the purposes of the formalized loan schemes is to make the settlement of concluded trades easier. Normally, Denmark has a well-functioning clearing and settlement, but there have been several settlement problems with the increasing number of foreign players in the Danish market. It is the complainant's experience that foreign players have difficulty delivering shares on time. One of the reasons is, among other things, that the foreign counterparties are used to the existence of a well-functioning loan scheme, which they can use if they cannot immediately acquire the shares in the market.

At the same time, it has been found that the foreign counterparties prefer internationally recognized framework agreements when entering into loan transactions. This can e.g. be Morgan Stanley & Co. International Limited - Overseas Securities Lender's agreement (hereinafter referred to as OSLA) or Overseas Securities Lenders Association - Global Master Securities Lending Agreement (hereinafter referred to as ISLA).

In general, the two agreements are in accordance with English contract law tradition are very detailed, and that they include several types of securities. The complainant's request for binding prior notice only covers agreements for the lending of listed shares. OSLA always has Morgan Stanley & Co. International Limited as the one party to the share lending, while ISLA is a framework agreement that can be entered into between arbitrary parties.

The two agreements do not include a maximum term, but both parties have the right to terminate the agreement with 15 days' notice. Section 7 of the standard terms contains a maximum term of 6 months The complainant's inquiry only concerns agreements where a final expiry date has been set, so that the parties have individually in the specific agreement set the expiry date for the agreement.

It is shown in OSLA Section.1 c and Section. 4 B and ISLA Section. 4.2, that the ownership of the shares is transferred to the borrower in connection with the lending, as the full financial and administrative rights are transferred to the borrower,

the borrower has the right to dispose of or re-lend the shares to a third party after the transfer of the shareholding. The transfer of ownership is registered in the relevant owner registers. Section 4 B of the OSLA agreement states, however, that the borrower, before exercising his administrative rights, must ask the lender how he wishes to exercise the right and act accordingly. The lender has the same obligation with respect to the rights arising from securities pledged as collateral for the primary share loan. Both obligations are subject to the condition that it is in fact one of the parties to the loan agreement who is in possession of the securities at the time the right is exercised.

In the case of the three different standard agreements, a consideration must be paid by the borrower to the lender for the lending of the shares. In the OSLA and ISLA agreements, this consideration is mentioned as "rates" and is calculated as an agreed percentage of the daily market price of the lent shares. The consideration, therefore, accrues as a general rule daily with monthly settlement to the lender, cf. OSLA Section 5 and ISLA Section 7. According to ISLA, an interest must also be calculated on the cash amount that the borrower - if this has been agreed - has transferred to the lender as security for the agreement. Due payment for the loan can be set off against the interest on the security. According to the standard terms, the consideration is calculated on the basis of the agreed term and the market value of the shares and falls due at the end of the loan period, cf. Section 11 of the standard terms.

With regard to dividends paid to the shares lent during the loan period, section 8. 1 of the standard terms stipulates that the dividend must accrue to the borrower if it falls due during the term of the loan, however, the dividend must be settled to the lender, regardless of whether the borrower is in possession of the shares. or have resold these. No decision is made on the "fruits" of any security.

According to OSLA Section 4 B, the borrower must settle income from the loans lent to the lender if there is such income during the term of the loan. From Section 5 B it can be deduced that any income from the collateral that may be received by the lender because he is in possession of the asset must be transferred to the borrower. Similarly, both the borrower and the lender according to ISLA section 4 are obliged to settle income that falls due to lent shares and cash amounts or securities pledged as security for the borrowed shares, respectively.

Under all three agreements, the right to receive dividends from the lent shares passes to the borrower, but at the same time, the borrower has an obligation to pay a corresponding amount to the lender, regardless of whether the borrower actually owns the shares and thus receives the dividend amount.

Under the standard terms, the lender has the right to demand that the borrower provide security for the return of shares and for the other obligations, as it is otherwise left to the parties to agree on the size and nature of this security. According to OSLA Section 6 A, a security must be provided by a transfer of either cash or securities to the lender, who obtains the same rights over the security as the borrower obtains over the lent shares. The amount must be adjusted on an ongoing basis according to the value of the lent shares, cf. Section 6 H. According to ISLA Section 5, security must be provided when transferring cash or securities to the lender, as the borrower can transfer full ownership of the asset provided to the transfer. security of the agreement, to the lender.

When the agreed loan period expires and the borrower does not return the borrowed securities as agreed, the lender may, in accordance with Section 13.2 of the Danish standard terms, make a cover purchase, after which the lender's claim against the borrower changes to a monetary claim. In the same situation, OSLA sections 7 C and D give the lender the choice between extending the loan or making a cover purchase. However, it is only possible to make a Cover Purchase when the borrower has been informed that the lender will make one on his account. According to ISLA Sections 9.1 and 2, both parties may make cover purchases of the securities that are not contractually returned to the party.

**Question A:**

The Tax Assessment Council is of the opinion that the borrower must calculate the profit from the sale to repurchase according to the State Tax Act, Section 4 (f), and that this also applies to borrowers who have shared loans that fully or partially live off this, as for borrowers who do not. This means that borrowers who are self-employed must include gains and have a deduction for losses, while other borrowers must include gains and not have a deduction for losses.

In support of this, i.a. stated that changes in assets may be due to increases in value or a decrease in the taxpayer's assets, as a starting point, the income statement is irrelevant, cf. Section 5a of the State Tax Act. All legislation that makes a profit or losses on assets in the taxpayer's possession taxable or deductible is, therefore, exceptions to this general rule. However, this principled starting point is - as tax law has developed - more theoretical than practical.

The capital gains tax is the taxation of increases in the value of assets that occur during the time the taxpayer has these in his possession. When capital gains tax has this content, one can therefore not talk about gain or loss by not owning an asset. In that case, it is not a question of a change in the value of the taxpayer's assets, but rather of

change in the value of other persons' property. The Capital Gains Tax Act is also based on taxation of increases in value and decreases in shares during the holding period. This is stated in the wording and systematics of the current law, as of the preparatory work for both the first adopted capital gains taxation law as well as the previous provisions in the law regarding special income tax of 11.6.1960. The Capital Gains Tax Act does not necessarily apply as long as it is a gain or loss resulting from two opposing share trades. There must be a gain or loss arising from the fact that the shares during the owner's holding period between an acquisition and a divestment have been exposed to price increases or price drops. Undoubtedly, in connection with the preparation of the rules on taxation of share gains, no thought has been given to a situation as in this situation, but the law has been prepared with traditional capital gains in mind. However, it is the opinion of the Tax Assessment Council that the wording and systematics of the Act are made in such a way that the Act does not authorize that gains from the sale to repurchase are taxed directly. A borrower in a share loan scheme can therefore not calculate his profit according to the rules in the Capital Gains Tax Act.

For the same reason, the Tax Assessment Council has rejected that Section 5 a of the State Tax Act can be considered to contain a legal basis for taxation if the Capital Gains Tax Act does not apply. This provision also presupposes a profit during the period in which the asset in question is owned by the taxpayer.

The Tax Assessment Council, on the other hand, is of the opinion that the repatriated or the loss that occurs when borrowed shares are sold and repurchased must be taxed according to the rules in the State Tax Act, similar to previous practice for taxation of financial instruments. This means that taxpayers who have it as a full or partial part of their business to borrow shares with bearish transactions in mind are taxed on profits and have a deduction for losses under section 4a of the State Tax Act. For other taxpayers, they are taxable on gains according to the State Tax Act, Section (4) f, cf. TfS 1998.625 H. Even if a taxpayer is already taxed on stock of certain shares covered by the Capital Gains Tax Act, a statement of gains and losses under the State Tax Act must only be made when the transaction has been completed. At this point, a decision can be made as to whether the agreement has been implemented in accordance with its content or has been breached.

The complainant's lawyer has filed a claim that the binding prior notice is amended, in principle so that taxation of gains and losses on the borrower's resale and repurchase of borrowed shares (the borrower's bearish business) must take place in accordance with the rules of the Capital Gains Tax Act. If the National Tax Court approves the Tax Assessment Council's view that there is no authority to tax gains and losses on the borrower's resale and repurchase of the borrowed shares in accordance with the rules of the Share Taxation Act, she has in the alternative argued that taxation must follow the rules in Section 5a of the State Tax Act. traders regarding speculation.

In support of the principal claim, she has, among other things, stated that there is a legal basis in Section 4 of the Capital Gains Tax Act for taxation of borrowers' gains and losses on the sale and repurchase of the borrowed shares and that it would be strange if the purchase and sale of shares as part of a share loan were to be treated as "lottery games and other games and bets", cf. the State Tax Act, Section 4 (f). When the sale and repurchase of shares as part of share loans must be incorporated into the legislation, it is logical to tax under the Capital Gains Tax Act, either directly or by analogous or parallel application of the Act, which exhaustively eliminates taxation on the purchase and sale of shares. The fact that the Capital Gains Tax Act is perceived as exhaustive does not call for a restrictive interpretation of the Act. It is clear that these purchases and sales of shares are far more similar to other purchases and sales of shares covered by the Capital Gains Tax Act than they are to Section 4 of the State Tax Act and the betting provision. This applies regardless of whether the Capital Gains Tax Act directly relates to the type of case that shares are acquired that are subsequently disposed of. It should be noted that these are actual sales and purchases, where the cash flows follow the dispositions, not futures transactions that do not require specific trades and which are typically settled by difference. Share loans must be assessed as a whole and as a total transaction, consisting of loans, sales, repurchases, and repayment of the borrowed shares. The shares are acquired through the loan, gain, and risk of loss that arise from the subsequent sale, and the size of this is determined by the repurchase of the shares.

In the alternative, she has approved that the taxation must comply with the State Tax Act, Section 5a, if it is the State Tax Act and not the Capital Gains Tax Act that applies.

**The National Tax Court states:**

First, it must be said that the Tax Assessment Council, in answering questions 1 and 2, confirmed that these are loans and not a realization of the share loan agreements in question. These questions have not been appealed to the National Tax Tribunal, and this view must therefore be taken into account when answering **question A**.

It must also be assumed that the binding advance notice only applies to cases where either the actual sale and subsequent purchase of the shares takes place or where the borrower retains the shares for the entire period, and not the cases where the agreement is breached. At the same time, it must be assumed that the borrower is not a trader in trading shares.

Printout of Share Loan Agreements - Dividend Compensation and….    https://skat.dk/display.aspx?oid=199510&vid=0

Finally, it must be considered undisputed that the borrower's loss or gain must be calculated on the basis of the difference between the surrender price on the sale of the shares and the purchase price on the repurchase of the shares.

According to the Capital Gains Taxation Act, Section 1, Subsection 2, the Act includes gains or losses on the disposal of shares, the disposal of a subscription right to shares, and the disposal of share rights.

The Act is arranged in such a way that, as far as non-traders are concerned, a distinction is made between, on the one hand, the cases where the acquisition of shares takes place at a time less than 3 years before the disposal (Section 2), and on the other hand, the cases where the acquisition takes place more than 3 years before the disposal (Section 4). The rules on the calculation of profit or loss are found in Section 5 and Section 6, both of which begin with the term gain or loss "on disposal of shares".

The Danish Capital Gains Tax Act is based on the premise that gains or losses are established on the acquisition and subsequent disposal of shares. In the case of share loans, gains or losses are established on the disposal and subsequent repurchase of shares. The National Tax Court believes that gains or losses on the sale and purchase of shares as part of an agreement on share loans are not covered by the Capital Gains Tax Act. This is because the gain and loss on such a transaction are not related to the borrower's holding of the shares, but to the period in which the borrower does not own the shares and to the agreement itself regarding the share loan. This construction is not covered under the Capital Gains Tax Act, which according to its wording and systematics includes gain or loss on disposal of shares, warrants, and share rights and presupposes that the gain or loss is ascertained by acquisition and subsequent disposal of the shares. It is therefore a precondition for the application of this Act that gains or losses are ascertained by disposal and are linked to the period during which the taxpayer has been the owner of the shares.

The agreement on share loans can also not be considered covered by Section 5a of the State Tax Act, as this statutory provision has to do with income from the sale of the taxpayer's assets, which is why an income established by the repurchase of shares is not covered.

On the other hand, the court is of the opinion that gains and losses from such share loan schemes must be regarded as covered under Section 4 f of the State Tax Act. This means that the net gain is taxable, while losses will not be deductible.

The court hereby approves the Tax Assessment Council's answer to question A, and the binding advance notice is confirmed on this point.

**Question C:**

The Tax Assessment Council believes that remuneration and compensation for dividends are costs of such nature that are not relevant to the profit and loss account. The Tax Assessment Council is of the opinion that no distinction should be made between situations where the shares have been sold and the situations where the borrower retains the shares. Remuneration and dividend compensation are qualified regardless of whether the borrower owns the shares and thus receives dividends from the company or not. The decisive factor for the possibility of adding costs to the acquisition cost of a shareholding is whether it is a cost that relates to the completion of the transaction. The borrower in a share loan receives a shareholding. Any transaction costs may be added to the acquisition cost of the shares if they are included in the acquisition of this item. Remuneration and compensation for dividends should, however, be regarded as an integral part of the loan agreement itself and not as a cost in connection with the acquisition of the shares. Actions for breach of contract may enter into the agreement if the amounts are not paid.
The costs are therefore not a cost in connection with the sale and repurchase of the shareholding or part of it at a later date. The costs are therefore also irrelevant to the replacement cost. This is seen, among other things, in the fact that the expense is incurred regardless of whether the entire borrowed shareholding is sold and repurchased, whether none of the borrowed shares are resold or as a third possibility that only part of the item is sold and repurchased. The costs are therefore independent of whether the shares are sold and repurchased.

The lawyer has filed a claim for amendment of the Tax Assessment Council's answer to this question. In support of this, she has argued that it is maintained that non-commercial borrowers should be taxed under Section 2 of the ABL. In the case of taxation in accordance with these rules, it has been maintained that consideration for the share loan to the lender can be deducted in the borrower's profit statement at the sale of the shares. The same is true of the debt for the compensatory dividend paid to the lender. If the borrowed shares have not been resold and the borrower has received dividends, which are passed on to the lender, the paid dividend can be offset for tax purposes in the dividend that the borrower receives. She thus does not agree with the Tax Assessment Council's view, where they believe that this is a cost that does not relate to the implementation of the transaction. Equity loans are a total transaction, and the expenses incurred for remuneration and dividends to the lender are costs incurred to acquire the gain on the sale and repurchase of shares, that is, the gain on the down payment. The share loan cannot be divided into individual components.

If the borrower receives dividends on the borrowed shares (which have not been sold at the time when dividends are declared) and in accordance with the agreement pays this dividend to the lender, the borrower has not acquired any income that is taxable. It is a basic condition of taxation of all income that an income has been acquired. If share loans are classified under Section 4 of the State Tax Act, the usual practice for deduction of non-business expenses must apply. For a non-commercial enterprise that is taxed in accordance with Section 4 of the State Tax Act, income is taxable income. Expenses incurred with a view to acquiring income from non-commercial activities are deducted from this income according to a net income principle, cf. Statement from the Tax Court, April 2001: "Memorandum on the income statement in no business enterprise. "In this note, it is also assumed that a loss on account of the fact that the costs of a non-commercial enterprise are greater than the income of the enterprise cannot be deducted from the total for the year. income statement and also not carried forward for set-off in next year's profit from a non-profit business. However, this practice can be modified if a direct correlation has been found between expenses that can be included in the loss for the year and income acquired in recent years. These expenses can probably be carried forward to be set off against the current income. It is argued accordingly that the borrower should not be taxed on the dividends which he receives for borrowed shares and after the contract gives to the lender. The borrower has not thereby acquired any taxable income. It is also claimed that all expenses incurred by the borrower will be deducted in any gain from the sale and repurchase of the borrowed shares and in other income that the borrower may receive, for example by dividends on the borrowed shares. This applies not only to share tax, purchase, and sale commissions as well as any legal and auditing expenses, but also the payment of unpaid dividends to the lender in cases where the shares are sold before and repurchased after the general meeting, and the costs paid to the lender as consideration. for the share loan. It is further argued that losses on share loan transactions can be deducted from gains on other share loan agreements if taxation takes place in accordance with Section 4 of the State Tax Act.

**The National Tax Court states**:

It must be assumed that question C only concerns the tax matters of persons or companies that are not traders in shares.

The first part of the question concerns the situation where the borrower has resold the shares and does not receive dividends but must compensate the lender for the dividends. The current consideration and the amount paid to the lender as compensation for the dividend have such a direct connection to the agreement regarding share loans that the expenses must be included in the calculation of the borrower's gain or in case of loss on sale and purchase of the shares according to the rules of the State Tax Act. 4 f. The answer to this part of the question must therefore be changed to an affirmation.

The second part of the question concerns the cases where the borrower does not sell the borrowed shares and does not receive any dividend during the loan period. The borrower has not received a gain from the loan agreement as he has not sold or repurchased the shares. The expenses relating to the consideration for borrowing the shares, therefore, constitute his loss on the agreement, and this loss is according to Section 4 f of the State Tax Act not deductible in the calculation of the taxable income, but only in any other gains on similar agreements in the same year. For this reason, the answer to this part of the question may be changed to a confirmation.

In the third situation, the borrower has not resold the shares but has received dividends during the loan period, for which he must compensate the lender. As the borrower has not become the owner of the shares by virtue of the loan agreement or in any other way, he is therefore not liable to tax on the dividends that accrue to the lender in accordance with the agreements entered into. This has the same tax effect as a set-off, and regardless of the wording of this part of the question, the answer to this part of the question can therefore be changed to an affirmation.

The binding advance notice with regard to question C will therefore be changed to a Yes.