# Exhibit 5_T




Special control 3

Kratbjerg 236

3480 Fredensborg
Denmark

www.skat.dk

6 April 2018

Ref. Caplia No: 16-1673052

TIN: 47 - 1865044

The Proper Pacific LLC 401K Plan 3
1W 21 ST Street apt 2n
New York
NEW 10010
United States

# Decision - Revocation of previous decisions on the refund of dividend taxes

In the past, when paying dividend taxes, SKAT decided to refund dividend taxes to The Proper Pacific LLC 401K Plan (hereinafter The Proper). The payments relate to the following claims for reimbursement of dividend taxes received by SKAT from Goal Taxback Limited on behalf of The Proper:

| | | |
|---|---|---|
| Request for | 20. April 2015 | DKK2,738,198 |
| Request for | 21. April 2015 27 | DKK17,451,42 |
| Total Request | April 2015 15 | 7 |
| | May 2015 | DKK8,488,604 |
| | | DKK357,659 |
| | | DKK29,035,88 |
| | | 8 |

SKAT's previous decisions on the refund of dividend taxes totaling DKK 29,035,888 . The Proper is revoked because The Proper has not been entitled to receive the amounts.

It is SKAT's assessment:

- The Proper does not own or have owned the shares indicated in the requests.
- that the dividends relating to the shares indicated in the requests have not been received by The Proper.

SKA further considers that The Proper did not have the capital to make the investments in Danish shares that underpinned the claims for the reimbursement of dividend tax.

In its assessment, SKAT emphasized that The Proper did not provide any evidence that The Proper owned the shares. The Proper also did not provide any evidence that the fund received dividends on the shares. The facts of the case do not justify such significant investments in Danish shares.

1

SKAT has emphasized:

- At The Proper is a newly formed pension fund.
- That The Proper has only one participant with the limited amount of deposits it makes.
- The Proper did not submit Form 5500 in the United States, so it must be assumed that The Proper fortune was below USD 250,000 at the end of the relevant income years.
- That SØIK cannot confirm, on the basis of the investigation carried out so far, that The Proper has held Danish shares or received share dividends as a result of the possession of Danish shares.

It is on the basis of the information currently available that SKAT's assessment that The Proper has not had financial opportunities to own shares to such an extent as indicated in The Proper's applications for the refund of Danish dividend tax. This is shown, for example, by:

- At The Proper under 3 months after the foundation had invested for 217,346,550 kr. in the share CHR. Hansen Holding A/S.

- At The Proper on March 19, 2015 was not a share of Novo Nordisk A/S with a total value of DKK 2,268,425,470.

The Proper has therefore not demonstrated that The Proper meets the conditions for having dividend taxes on Danish shares refunded. Article 10 of the Danish-US double taxation treaty.

The representative of The Property, the law firm TVC, did not provide any information or evidence in their objections to SKAT's proposal of 24 March 2017 that the Proper held the shares and received the dividends in accordance with the requests.

The decisions of SKA to refund dividend tax to The Proper are therefore based on a false basis. It therefore revokes the previous decisions on the reimbursement of dividend taxes.

This Decision does not require tax to be refunded unjustifiably. This is a change from SKA's previous proposal for a decision of 24 March 2017 to The Proper. The Attorney General will, on behalf of SKAT, submit a letter of formal notice in which SKAT makes a claim for reimbursement and compensation to The Proper.

For further reasons, please refer to the following summary.

Reference shall be made to Annexes 101-1-1 to 101-8-6 previously submitted and Annexes 101-A-l to 101-A-5 attached to this Decision.

2

Confidential Pursuant to Protective Order

TAX _MDL_001_046750

Description and justification

## Table of Contents

1. Facts ...................................................................................................................4

1.1. Description of the case .................................................................................4

1.2. Rationale for the resumption .......................................................................4

1.3. Description of the fund ................................................................................4

1.4. Reimbursement of dividend tax ...................................................................5

1.5. Calculation of investments ..........................................................................6

1.6. Information from IRS in the United States ..................................................6

1.7. Information from SØIK ................................................................................7

2. Rules of law .......................................................................................................8

2 .1. ....................................................................................................................8

2.2. Double Tax Convention. .............................................................................8

2.3. Case law .....................................................................................................8

3. SKA Ts comments .............................................................................................9

3.1. Law the basis ..............................................................................................9

3 .2. Reopening ..................................................................................................9

3.3. Own funds of investments of the fund .......................................................10

3.4. Pension fund ..............................................................................................11

4. SKA Ts preliminary decision ...........................................................................11

5.   Comments of the fund on SKAT's proposal ...............................................12

6.   Tax's comments. ..........................................................................................15

7.   Final tax ruling ............................................................................................16

Complaint Guide ..................................................................................................17

Laws and regulations ...........................................................................................18

3

# 1. Facts

## 1.1. Description of the case

Goal Taxback Limited, on behalf of The Proper, in the period from 20 April 2015 to 15 May 2015, has sent requests to SKAT to be reimbursed the withholding tax on Danish shares for a total of DKK 29,035,888.

On this basis, SKAT has paid the requested amounts to The Proper via Goal Taxback Limited's bank account 34015159 in NatWest Bank.

## 1.2. Rationale for the resumption

On 25 May 2016, SKAT denied the Proper's request of 24 August 2015 for a refund of withholding tax. During the proceedings, SKAT has asked The Proper for further documentation. However, the Proper has not responded to SKAT's inquiries. SKAT's decision of 25 May 2016 is not subject to appeal.

It should be noted that SKAT has received back the ruling of 25 May 2016. However, SKAT's proposal of 11 February 2016 has not been received back.

Since The Proper did not respond to SKA Ts inquiries, SKAT, via Competent Authority, has obtained additional tax return and registration information from IRS in the US. From the information provided, it appears that:

- At The Proper is a newly formed pension fund'.
- That The Proper did not submit FORM 5500 (tax returns), whereby The Proper indicated to the IRS that their assets at the end of 2014 and 2015 are below $250,000 $[2].
- That the annual deposit is limited to between $12,500 and $53,000 depending on the depositor's age[3].

On the basis of the information provided by the IRS, SKAT resumes the previous requests by The Proper for the reimbursement of dividend taxes where the Proper has been reimbursed for withholding tax on Danish shares.

## 1.3. Description of the fund

The Proper is registered as a pension fund in the United States [4].

The Proper was founded in September 2014[5].

[1] Annex 101-1-l to 101-1-2
[2] ~~Annexes 101-2-1 to 101-2-13 and Ann~~exes 101-3-1 to 101-3-2 [3] Annexes 101-4-1 to 101-4-9
[4] Annex 101-1-1 to 101-1-2
[5] Annex 101-1-1 to 101-1-2

4

## 1.4. Reimbursement of dividend tax

With reference to the double taxation treaty between Denmark and the United States, Goal Taxback Limited, as an agent, on behalf of The Proper, has requested and been refunded the dividend tax that it contains in respect of the following shares':

| SKATs bundle No | Date of the request | Stock | Quantity | Ex date | Total dividends DKK | Refunded dividend tax DKK |
|---|---|---|---|---|---|---|
| 35,015 | 2015-04-20 | CHR. Hansen Holding A/S | 839 500 | 2014-11-28 | 3 164 915 | 854 527 |
| 35,015 | 2015-04-20 | Coloplast A/S - B | 930 208 | 2014-05-12 | 6 976 560 | 1,883,671 |
| 35,215 | 2015-04-21 | A.P. Møller Mærsk A/S A | 7,879 | 2015-03-31 | 15 529 509 | 4 192 967 |
| 35,215 | 2015-04-21 | A.P. Møller Mærsk A/S B | 8,083 | 2015-03-31 | 15 931 593 | 4 301 530 |
| 35,215 | 2015-04-21 | Novo Nordisk A/S | 6 634 763 | 2015-03- | 33 173 815 | 8 956 930 |
| 39,015 | 2015-04-27 | Novozymes A/S B | 683 931 | 2015-02-26 | 2,051,793 | 553 984 |
| 39,015 | 2015-04-27 | Vestas Wind Systems A/S | 377 809 | 2015-03-31 | 1,473,455 | 397 832 |
| 39,015 | 2015-04-27 | TDC A/S | 3,293,727 | 2015-03-06 | 3,293,727 | 889 306 |
| 39,015 | 2015-04-27 | Gn Store Nord A/S, | 622 804 | 2015-03- | 560 523 | 151 341 |
| 39,015 | 2015-04-27 | Tryg A/S | 34 813 | 2015-03-26 | 1,009,577 | 272,585 |
| 39,015 | 2015-04-27 | Pandora A/S | 400 364 | 2015-03-19 | 3 603 276 | 972,884 |
| 39,015 | 2015-04-27 | FL Smidth & CO A/S | 81,037 | 2015-03-27 | 729 333 | 196 919 |
| 39,015 | 2015-04-27 | DSV A/S | 692 422 | 2015-03-13 | 1,107,875 | 299 126 |
| 39,015 | 2015-04-27 | Carlsberg A/S - B | 180 313 | 2015-03-27 | 1,622,817 | 438 160 |
| 39,015 | 2015-04-27 | Danske Bank A/S | 2,906,712 | 2015-03-19 | 15 986 916 | 4,316,467 |
| 40,115 | 2015-05-15 | Coloplast A/S - B | 294 370 | 2015-05-07 | 1,324,665 | 357 659 |
| Total | | | | | 107 540 349 | 29 035 888 |

The requests were accompanied by the following Annex [6]:

1. Form 06.003 ENG- Claim to Relief from Danish Dividend Tax.
2. Credit Advices,
3. FORM 6166 from the Internal Revenue Service (IRS) - Certificate President in USA (issued by the US tax authorities).
4. Power of Attorney to Goal Taxback Limited,

Ad 1: Form 06.003 states that The Proper is the legal owner of the shares and is subject to the Danish-US double taxation treaty.

Re. 2. According to Credit Advices prepared by custodian Old Park Lane Capital PLC or Telesto Markets LLP, Tue Proper has received net dividends of the shares.

Re 3. From the Certificate of Residence (FORM 6166) issued by the Department of the Treasury, US, it appears that:

*'I certify that, to the horse of our knowledge, the above-named entity is a trustforming part of a pension, profit sharing, or stock bonusplan qualified under section 401 (a) of the US. Internal Revenue Code, which is exempt from U S. taxation under section 5 0 l (a), and is a resident of the United States of America for purposes of US. taxation.'*

---

[6] Annex 101-5-1 to 101-8-6
[7] Annex 101-5-1 to 101-8-6

5

## 1.5. Calculation of investments

Assuming that The Proper will own the shares the day before the ex-date, the acquisition amounts for The Proper's purchase of the shares referred to in Request[8] are calculated on the basis of the closing price on the last trading day before the ex-date[9]:

| Tax bundle No | Stock | Course date | Quantity | Course | Calculated purchase price DKK |
|---|---|---|---|---|---|
| 35,015 | CHR. Hansen Holding A/S | 2014-11-27 | 839 500 | 258.90 | **217 346 550** |
| 35,015 | Colaplast A/S - B | 2014-04-12 | 930 208 | 527.00 | 490 219 616 |
| 39,015 | Novozymes A/S B | 2015-02-25 | 683 931 | 322.50 | 220,567,748 |
| 39,015 | TDC A/S | 2015-03-05 | 3,293,727 | 54.00 | 177 861 258 |
| 39,015 | DSVA/S | 2015-03-12 | 692 422 | 219.20 | 151 778 875 |
| 39,015 | Pandora A/S | 2015-03-18 | 400 364 | 614.50 | 246 023 678 |
| 39,015 | Danske Bank A/S | 2015-03-18 | 2,906.712 | 175.30 | 509 546 614 |
| 35,215 | Novo Nordisk A/S | 2015-03-19 | 6.634,763 | 341.90 | **2,268,425,470** |
| 39,015 | Gn Store Nord A/S, | 2015-03-19 | 622 804 | 154.20 | 96 036 377 |
| 39,015 | Tryg A/S | 2015-03-25 | 34.813 | 868.50 | 30 235 091 |
| 39,015 | Fl Smidth & CO A/S | 2015-03-26 | 81.037 | 314.00 | 25 445 618 |
| 39,015 | Carlsberg A/S - B | 2015-03-26 | 180 313 | 571.50 | 103 048 880 |
| 35,215 | A.P. Møller Mærsk A/S A | 2015-03-30 | 7.879 | 15,810.00 | 124 566 990 |
| 35,215 | A.P. Møller Mærsk A/S B | 2015-03-30 | 8,083 | 16,410.00 | 132 642 030 |
| 39,015 | Vestas Wind Systems A/S | 2015-03-30 | 377 809 | 290.20 | 109 640 164 |
| 40,115 | Co lo Plastic A/S - B | 2015-05-06 | 294.370 | 510.00 | 150 128 700 |

## 1.6. Information from IRS in the United States

SKAT has received information via the Competent Authority in Denmark and the USA
from the IRS tax office in the USA.

IRS has stated in a letter dated 4 December 2015,?. [11] At TI1e Proper was founded in September 2014.
    [11] At The Proper's address is the same as the Proper has provided to SKAT.

The IRS, in a meeting with SKAT, Competent Authority, at the end of February 2016, stated:

[11]    At FORM 6166 (Certification of U.S. Tax Residency) is issued by lRS on the basis of the submission of FORM 8802 (Application for United States Residency Certification) by the fund. The information in FORM 8802 shall be provided under responsibility and shall not be verified by the IRS when issuing FORM 6166.

By letter of 13 June 2016, the IRS attached Instructions for Form 5500-EZ, among others. appears.'!

[11] At *"Who Does Not Have To File Form 5500-EZ*
    *You do not have to file Form 5500-EZ/or the 2015 plan year fora ane-participant plan if the*
    *total of the plan's assets and the assets of all other ane-participant plans maintained by the*
    *employer at the end of the 2015 plan year does not exceed $250,000, unless 2015 is the*

---

[8] Annex 101-5-l to 101-8-6
[9] The course is on Nasdaq's website: http://www.nasdaqomxnordic.com [10] Annex
101-1-1 to 101-1-2
[11] Annex 101-2-1 to 101-2-13

6

*final plan year of the plan. For more information on final plan years, see Final Return later.'*

Based on the information provided by IRS SKA Ts, it is a 'OneParticipant (owners and their spouses) Retirement Plan'.

By letter dated 13 December 2016, the IRS provided the following information:

- That the IRS is not in possession of tax returns (FORM 5500) for The Proper as there are no submitted tax returns for 2014 or 2015.

The IRS has provided links in relation to general questions on pension plans and their deposits to the IRS website on 'Topics for Retirement Plans'[13]. The website shows, among other things:

- That a One-Participant 40l(k) plan covers a business owner with no employees other than the person and, if applicable, their associate.
- That the annual deposit is limited to between $12,500 and $53,000 according to the age of the depositor
  (over or under 50 years of age).

## 1.7. Information from SØIK

On 28 August 2017, SKAT applied to the Public Prosecutor for Special Economic and International Crime (SØIK) on:

1. To confirm or deny that the fund has received the benefits in question.

2. To indicate whether the seized material contains depositary receipts from financial institutions, showing the holdings of deposits held by the institution.

SØIK has partially granted the request of SKA Ts by letter dated 23 November 2017. This is shown in particular by: the following [14]

*'SØIK can inform you in response to SKAT's inquiries that, as a general rule, information from ongoing criminal proceedings is not provided to parties outside the criminal proceedings. The reasons for this are set out below in relation to the specific request for information from the ongoing criminal investigation.*
*However, in view of the exceptional nature of the case and the special need for SKAT to receive information for the purposes of the pending tax case, SØIK considers that it could provide the following information without any adverse effect on the investigation:*

*Re. 1.*

*On the basis of the investigation carried out so far, SØIK cannot confirm that the US pension plans referred to in the above emails have received dividends due to the possession of Danish shares.*

---

[12] Annex 101-3-1 to 101-3-2
[13] Annex 101-4-1 to 101-4-9
[14] Annex 101-A-l to 101-A-5

7

*Re. 2.*

*On the basis of the investigation carried out so far, SØIK cannot confirm that the pension plans mentioned in the above emails have held Danish shares. VP-Securities AIS has also not been contacted with information on the ownership of shares which would confirm the pension plans in question as having held Danish shares'.*

## 2. Rules of law

### 2.1. Statutes

Corporate Tax Law Regulation No. 1082 of 14 November 2012 and No. 680 of 20 May 2015: · Section 2(1) 1(c) and (c) 3, 2nd pt

Equation Act - Regulation No. 405 of 22 April 2013, as amended: · Section 16 A, paragraph 1 1.

Source Tax Act - Consolidation Act No. 1403 of 7 December 2010 as amended: §§ 65, par. 1 and 69 B, par. 1.

Law No. 522 of 6 June 2007, as amended: · Section 2(1) 1 and 3 par. 1 and 2.

### 2.2. Double taxation treaty

BKI No 13 of 14/4/2000 of the Agreement of 19/8/1999 between Denmark and the United States of America to avoid double taxation and to prevent tax evasion in respect of income taxes. As amended by BKI no. 1 of 18/2 2008 of Protocol of 2/5/2006:
    · Articles l 0 and 22.

### 2.3. Case law

SKM 2010.266 SR. Tax Council's binding response of 26 January 2010.
In the case of share lending, the Danish Tax Council considers that the lender continues to be regarded as the owner of the shares for tax purposes and the dividend is therefore subject to taxation in accordance with the rules applicable to the lender, including in the event of a double taxation treaty between Denmark and the State of the lender.

Dividends on shares lent must therefore be taxed at the lender's expense.

8

Confidential Pursuant to Protective Standards.

## 3. SKAT's comments

### 3.1. Legal basis Corporate Tax Act and
Withholding Tax Act

A foreign company receiving dividends from a Danish company is limited to Danish tax under Section 2(2) of the Danish Corporate Tax Act. I, point c.

In 2014 and 2015, a foreign company limited in tax liability to Denmark had to pay 27 % in tax on dividends, cf. Section 2(1) of the Corporate Tax Act. 3, and the Danish paying company thus contains 27 %. This is reflected in Section 65 of the Withholding Tax Act.

Double taxation treaty

In accordance with Article 10(1) Paragraph 2(b) of the double taxation treaty between Denmark and the United States, Denmark may tax dividends paid from a company resident in Denmark to a resident of the United States at 15 % of the gross amount.

However, Denmark may not tax dividends paid to a company resident in the United States if the beneficial owner is a pension fund as referred to in Article 22(2)(e); Article 10(1) of the double taxation treaty 3, point c.

A pension fund within the meaning of Article 22(2) 2(e) is a legal person, whether exempt from taxation or not, organized under the legislation of a Contracting State for the purpose of providing a pension or similar benefits under a prescribed scheme to employed persons, including self-employed persons, provided that more than 50 % of the total value of the benefits is attained. the beneficiaries, members or participants of that person are natural persons resident in one of the Contracting States.

Limitation Act

This is reflected in Section 2, para. 1, the limitation period shall begin at the earliest on the date on which the claimant was able to claim satisfaction of the claim, unless other rules provide otherwise.

Recovery of sums already paid out is generally subject to the three-year limitation period, cf. Section 3, para. 1.

The three-year limitation shall be suspended if the claimant was unaware of the claim or the debtor. In such cases, limitation shall begin to run on the day on which the claimant received or should have received such knowledge, in accordance with Article 3(3) of the statute of limitations. 2.

### 3.2. Reopening

SKAT takes up The Proper's previous requests for the reimbursement of dividend taxes, as SKAT has received information about The Proper from the IRS in the US.

Recovery of amounts paid shall, as a general rule, be subject to the three-year limitation period laid down in Article 3(3) of the statute of limitations. 1. The period of limitation shall be counted at the earliest from the date on which the creditor (TAX) was able to claim satisfaction of the claim; Article 2(2) of the statute of limitations. 1.

SKA Ts claims therefore expire at the earliest 3 years after the payment of the recovered amount to The

Proper.

9

The three-year limitation period is suspended if the claimant (SKAT) was not aware of the claim or debtor. In this case, the limitation period shall only start from the day on which the creditor (tax) received or ought to have become aware of it, cf. Section 3(3) of the statute of limitations 2.

On 4 December 2015, SKAT became aware that it was a newly created pension fund.

On 13 June 2016, SKAT learned that "401K" pension funds have only one participant - with the limited amounts of deposits (between $12,500 and $53,000 per year depending on the age of the depositor), and that pension funds do not have to submit tax returns if the pension funds' assets are below $250,000.

On 13 December 2016, SKAT learned that The Proper did not submit tax returns for 2014 and 2015. Since the Proper did not submit FORM 5500 (tax returns), they have indicated to the IRS that their assets at the end of 2014 and 2015 are below $250,000.

According to the foregoing, the tax will not be informed of the claim until 13 June 2016 at the earliest, when SKAT has both the information that it is a newly created pension fund and that the '401K' pension funds have only one participant, with the limited amount of deposits. The tax claim therefore expires on 13 June 2019 at the earliest.

## 3.3. The capital base for the pension fund investments The Proper was created in September 2014[15].

According to the information provided by the authorities in the United States, this is a pension fund where there is only one participant, as an annual max. can deposit 12,500/53,000 $[16] (approximately DKK 85,375/361,990)[17].

As The Proper has not submitted FORM 5500 (tax returns) for either 2014 and 2015, The Proper has indicated to the IRS that their assets at the end of 2014 and 2015 are below 250,000 $[18] (1,530,350 DKK/1,707,500 DKK)[19].

From the foundation in September 2014 until May 2015, the Proper received dividends for a total of DKK 107,540,349,[20]. The amount is seen from the above information about the pension fund's assets not being accessed by the pension fund. Of these, the recovered and refunded dividend taxes in total amount to DKK 29,035,888.

SKAT has calculated from the Credit Advices received that all of The Proper's investments in Danish shares[22] are well above The Proper's capital base. It shows, inter alia:

- At The Proper under 3 months after the foundation had invested for 217,346,550 kr. in the share CHR. Hansen Holding A/S.

---

[15] Annex 101-1-1 to 101-1-2
[16] Annex J0 1-4-1 to 101-4-9
[17] Price at end-2015 (683,00), cf. www.nationalbanken.dk  [18] Annex J0 1-2-1 to 101-2-13 and Annex 101-3-1 to IO 1-3-2
[19] Price at end 2014 (612, 14) and 2015 (683,00), cf. www.nationalbanken.dk  [20] Section 1.4
[21] Section 1.4
[22] Section 1.5

10

- At The Proper on March 19, 2015 was the owner of shares in Novo Nordisk A/S worth a total of DKK 2,268,425,470.

On this basis, SKA Ts estimates that The Proper, as a newly created pension fund that could inject a maximum of $53,000 (DKK 361,990) and with a capital base of less than $250,000 at the end of 2014 and 2015 (DKK 1,530,350/DKK 1,707,500), did not have the capital required to make the underlying investments The Proper's requests.

It should be noted that in the event of borrowed shares, The Proper cannot recover any dividend tax on them, cf. SKM 2010.266 SR.

## 3.4. Pension fund

The United States tax authorities (IRS) have indicated that the Certificate of Residence (FORM 6166) does not verify the information provided in the Application for United States Residency Certification (FORM 8802).

The Certificate of Residence (FORM 6166) cannot therefore only prove that The Proper is a pension fund which has the possibility to recover the full dividend tax under the double taxation treaty between Denmark and the United States, Article 22, par. 2, point (e)

## 4. Tax preliminary ruling

SKAT proposes that The Proper reimburse the refunded dividend tax of DKK 29,035,888 in total, as evidenced by the information received from the IRS:

- That The Proper did not have capital to buy/own the shares indicated in the requests.
- that the dividends relating to the shares indicated in the requests have not been received by The Proper.
- That the refund of dividend taxes has not been paid to The Proper.

It is SKAT's view that the Proper, as a newly created pension fund with a single participant with the limited amounts of deposits and that the pension fund's assets at the end of 2014 and 2015 were below $250,000, did not have the capital to make the investments that were the basis of the requests.

The Proper cannot therefore be the legal owner of the shares on which they have been refunded withholding tax.

Consequently, SKAT refunded the mentioned dividend taxes to The Proper on a false/incorrect basis. The Proper does not therefore meet the conditions for reimbursement of withholding tax on Danish shares, cf. Article 10 of the Danish-US double taxation treaty.

The tax therefore recovers the previously refunded dividend taxes in accordance with Section 69B(1) of the Withholding Tax Act. 1 as referred to in Article 10 of the Double Tax Convention.

11

Recovery of amounts paid shall, as a general rule, be subject to the three-year limitation period laid down in Article 3(3) of the statute of limitations. 1. The period of limitation is counted at the earliest from the date on which the creditor (tax) was able to claim for satisfaction of the claim. Article 2(2) of the statute of limitations. 1.

SKAT's claim therefore expires at the earliest 3 years after payment of the recovered amount to The Proper. The three-year limitation period is suspended if the claimant (SKAT) was not aware of the claim or debtor. In this case, the limitation period shall only start from the day on which the claimant (SKAT) received or should have become aware of it. 2.

On 4 December 2015, SKAT became aware that it was a newly created pension fund.

On 13 June 2016, SKAT became aware that '401K' pension funds have only one participant, with the limited amounts of deposits (between $12,500 and $53,000 per fund). income according to the age of the depositor) and that pension funds should not submit tax returns if the assets of the pension funds are less than $250,000.

As of 13 December 2016, SKAT has learned that Tue Proper did not submit tax returns for 2014 and 2015; since the Proper did not submit FORM 5500 (tax returns), they have indicated to the IRS that at the end of 2014 and 2015 their assets are below $250,000.

According to the foregoing, the tax will not be informed of the claim until 13 June 2016 at the earliest, when SKAT has both the information that it is a newly created pension fund and that the '401K' pension funds have only one participant, with the amount of the deposits that are limited. SKA Ts requirements therefore expire on 13 June 2019 at the earliest.

## 5. Comments of the fund on SKA Ts proposal

The law firm TVC, on behalf of The Proper, submitted the following comments in a letter dated 21 August 2017 to SKAT's earlier proposal of 24 March 2017:

' ... *The tax authorities in the draft decisions have emphasized the following points:*

> *1 The pension funds have not had capital to buy the owned shares. 2 The dividends paid have not been paid to the pension funds.*
> 3 *Pension funds have not been declared in the United States, so the assets of each pension fund must be less than $250,000.*
> *4 The pension funds are newly formed and with only one participant each.*

*In the following we will make our comments on the individual points of the SKA draft decision.*

### 1      LACK OF CAPITAL

*It is disputed that pension funds have not been able to acquire the shares from which dividends have been paid and which have subsequently been refunded.*

*In this respect, it is noted that pension funds in global financial markets have numerous possibilities to obtain financing for the purchase of shares without recourse to equity. In addition to the possibility of taking up traditional debt financing, there are also several other financial instruments*

12

                                                          TAX _MDL_001_046760

*instruments which can be used to obtain the necessary financing to acquire economic and legal ownership of the shares.*

*For example, in order to trade in shares, pension funds simply need to open bank accounts and separate custody accounts to hold the shares. The pension funds can then enter into so-called Global Master Securities Lending Agreements (GMSLA), which provide pension funds with access to a securities lending facility governed by a Prime Brooker Agreement or a Repurchase Agreement Facility.*

*Such agreements shall enable pension funds to acquire the shares without the need for own funds, on the understanding that at the time of the acquisition of the shares in question, the pension funds lend the shares to third parties. The payment received by the pension funds for the loan generates sufficient liquidity to pay for the shares on the payment date, with the time difference between purchase and payment usually being two days for standard transactions.*

*Such a transaction also implies that the pension funds put the custody account (in which the shares are held) as collateral for the lender. However, the only right that the lender obtains is the possibility of satisfaction of the shares in the event of the insolvency of the borrower or if the borrower is unable to cede the shares when payment is due.*

*In accordance with the Tax Council Decision in SKM 2010.26.SR, it is thus the pension funds which, as the lender of the shares to third parties, are also entitled to receive the dividends in these cases.*

*It is therefore not true that pension funds have not been able to finance the transactions in question.*

## 2  *THE DIVIDENDS RELATING TO THE SHARES SHOWN IN THE CLAIM.S AND THAT THE REFUNDED DIVIDEND TAX HAS NOT BEEN ADDED TO THE PENSION FUNDS;*

*In general, it is disputed that the pension funds have not received the disputed dividends or that the refunded dividend taxes have not been paid to the pension funds.*

*In the proposals for a decision, SKAT did not substantiate this view or demonstrate that the pension funds did not receive any dividends or refunds.*

*It should be noted in this connection that the Public Prosecutor for Special Economic and International Crime has seized a large number of information from Solo Capital in London, such as: documents the receipt of the dividends and the withholding tax. However, this information is not easily accessible to pension funds, so that it has not been possible at present to provide supporting evidence.*

## 3  *MISSING TAX RETURN IN US*

*In this respect, it is noted that under US tax law, a pension fund is exempt from tax if its assets do not exceed the $250,000 threshold on the last day of the fiscal year.*

13

Confidential Pursuant to Protective Order

*The assets of pension funds may therefore have exceeded* the *limit during the year, provided that the assets at the last accounting date were smaller.*

*There can be a wide range of concrete reasons why pension fund assets were less than $250,000 at the last reporting date.*

*For example, the completed stock transactions would typically have been completed at that time (purchase and sale completed) with the effect that the shares were no longer in the custody.*

*In addition, there are a number of costs associated with the operations carried out which also lead to a reduction in the assets of pension funds.*

*Distributions from pension funds are also possible, with the effect that the assets at the reporting date were less than $250,000.*

*Finally, it should be noted that, even if pension funds had wrongly failed to declare tax in the United States, the absence of a tax return could in no way lead to the pension funds not being the beneficial owners of the shares for which a dividend refund was requested.*

*In this respect, it should be noted that pension funds in the United States are properly constituted and have both formal and effective legal capacity.*

## 4    NEWLY FORMED PENSION FUNDS WITH ONE PARTICIPANT

*In general, it should be noted that the fact that the pension funds in question are newly formed or have only one participant each has no bearing on the eligibility of pension funds to receive dividend refunds.*

*If the pension funds meet the conditions of the double taxation treaty between Denmark and the United States, cf. Article 22, para. 2(e) referred to in Article 10(1) Under paragraph 3(c), pension funds are entitled to reimbursement of the withholding tax by agreement.*

*The agreement states that Denmark and U.SA define for themselves what constitutes a pension fund and that this, as also suggested by SKAT, is understood as*

> *'A juridical person organized under the legislation of a Contracting State for the purpose of granting pensions or similar benefits under a prescribed scheme to employed persons, including self-employed persons, provided that more than 50 % of its beneficiary members are natural persons resident in one of the Contracting States'.*

*Since the pension funds are under US law validly constituted and covered by the Agreement, Denmark must recognize that the pension funds are eligible for dividend reimbursement. It should be noted in this respect that it appears that the US authorities have not informed the SKAT that the pension funds are not validly constituted, etc., as SKAT has not referred to this in the proposals for a decision.*

*Moreover, the OECD commentary on the US double taxation treaties indicates that all 401 (kJ single-participant pension plans) are assumed to*

14

*be covered by the US agreements, as can also be documented in US Congress documents in the vote on the ratification of the US double taxation treaty.*

. . . . .

*Against this background, we consider that there is no basis for taking decisions* in *line with the SKAT draft decision of 24 March 2017 ..... "*

## 6. SKAT's comments

The law firm TVC has disputed, on behalf of The Proper, that the pension fund has not had any financial opportunity to acquire the shares from which dividends have been paid and on which dividend tax has subsequently been refunded. It is argued that the pension fund in the global financial markets has numerous opportunities to obtain financing for the purchase of shares without recourse to equity. The law firm has not provided any evidence that the fund obtained financing for the purchase of shares without the use of equity capital.

The law firm also disputes that the fund did not receive the disputed dividends or that the refund of dividend taxes was not paid to the pension funds. The law firm has not provided any evidence in this respect, as the law firm states that the Public Prosecutor for Special Economic and International Crime (SØIK) has seized a large amount of information from Solo Capital in London, and therefore it has not been possible to provide evidence in this respect.

SKAT notes that no evidence has been provided that:

- That the fund acquired the shares - with or without the use of equity
- The pension fund has received dividends from the shares
- The existence of dividend tax on the dividends of the shares

SØIK further states that, on the basis of the investigation carried out so far, SØIK cannot confirm that the pension fund has held Danish shares or received dividends as a result of the possession of Danish shares.

Therefore, it cannot be assumed that SØIK is in possession of the relevant material.

Against this background, SKAT continues to consider that The Proper has not demonstrated that the fund met the conditions for reimbursement of the dividend taxes paid on the shares in question.

15

## 7. SKA Ts final decision

SKAT's previous decisions on the refund of dividend taxes totaling DKK 29,035,888. The Proper is revoked because The Proper has not been entitled to receive the amounts.

It is SKAT's assessment:

- The Proper does not own or have owned the shares indicated in the requests.
- that the dividends relating to the shares indicated in the requests have not been received by The Proper.

SKA further considers that The Proper did not have the necessary capital to make the investments in Danish shares on which the claims for the reimbursement of dividend tax are based.

In its assessment, SKAT emphasized that The Proper did not provide any evidence that The Proper owned the shares. The Proper also did not provide any evidence that the fund received dividends on the shares. The facts of the case do not justify such significant investments in Danish shares.

SKAT has emphasized:

- At The Proper is a newly formed pension fund.
- That The Proper has only one participant with the limited amount of deposits it makes.
- The Proper did not submit Form 5500 in the United States, so it must be assumed that The Proper fortune was below USD 250,000 at the end of the relevant income years.
- That SØIK cannot confirm, on the basis of the investigation carried out so far, that The Proper has held Danish shares or received share dividends as a result of the possession of Danish shares.

It is on the basis of the information currently available that SKAT's assessment that The Proper has not had financial opportunities to own shares to such an extent as indicated in The Proper's applications for the refund of Danish dividend tax. This is shown, for example, by:

- At The Proper under 3 months after the foundation had invested for DKK 217,346,550. in the share CHR. Hansen Holding A/S.

- At The Proper on March 19, 2015 was the owner of shares in Novo Nordisk A/S worth a total of DKK 2,268,425,470.

The Proper has therefore failed to demonstrate that The Proper meets the conditions for reimbursement of the withholding tax on Danish shares, cf. Article 10 of the Danish-US double taxation treaty.

The representative of The Property, the law firm TVC, did not provide any information or evidence in their objections to SKA Ts proposal of 24 March 2017 that the Proper held the shares and received the dividends in the shares according to the requests.

The decisions of SKA Ts to refund the tax on profits to Tue Proper are therefore based on incorrect grounds. It therefore revokes the previous decisions on the reimbursement of dividend taxes.

16

Confidential Pursuant to Protective Order                    TAX _MDL_001_046764

This Decision does not require tax to be refunded unjustifiably. This is a change in comparison to SKAT's previous proposal for a decision of 24 March 2017 to The Proper. The Attorney General will, on behalf of SKAT, submit a letter of formal notice in which SKAT makes a claim for reimbursement and compensation to The Proper.

## Complaint Guide

**If you want to complain**
You must then write to the Danish Tax Agency within three months of the day on which you have received this
decision.

Write all the points you want to complain about and justify each point why you think the decision is wrong. Attach the decision and the presentation of the case. If you have documents supporting and substantiating your complaint, we also ask you to attach them. If you want a meeting with a caseworker at the Danish Tax Agency, you must write your phone number in the complaint.

It costs 400 kr. to complain. If you are fully or partially correct in your complaint, you get the

money back. **How to send the complaint and pay**
You can send the complaint
- electronically via Skatteankestyrelsen's complaint form at skatankestyrelsen.dk, where you are at the same time asked to pay by payment card or Mobile Pay.
- as digital post via borgs.dk. or virk.dk. Pay by transferring DKK 400 to the account with registration number 0216 and Account No. 4069029361, and write your name and TIN number. in the message box.
- by letter to the Danish Tax Agency, Ved Vesterport 6, 4th floor, 1612 København V. Pay by transferring DKK 400. to the account with registration number 0216 and Account No. 4069029361, and write your name and TIN number. in the message box.
- Payment from abroad can be made by transferring the amount to 0216 (registration number bank) 4069029361 (account number), IBAN DK 0502164069029361, SWIFT DABADKKK.

You can apply for your counsel
skat.dk/omkostningsgodtgørelse If you are given an advisor to assist with the complaint, you can apply for the advice to be paid in full or in part if the case is covered by the rules in Chapter 19 of the Tax Administration Act.

17

**Laws and regulations**
The laws and decisions referred to can be found at skat.dk/love or skat.dk/afgørelser,
Additional information/guidance on how to obtain a complaint can be found at skat.dk/klage or
skatteankestyrelsen.dk/english.

Yours sincerely

**Jun** Christiansen
Chief Consultant

E-mail: john.christiansen@skat.dk
Telephone No: (+45) 20 75 83 56

**Katrine Basballe**
Professional consultant

E-mail: katrine.basballe@skat.dk
Telephone No: (+45) 72 37 02 38

**Lill  Drost**
Head       of
function

E-mail: lill.drost@skat.dk

Copies of the decision and attached documents are sent to TVC Law Firm, Havneholmen 25, 9th,
1561 Copenhagen V

18

Confidential Pursuant to Protective Order

TAX _MDL_001_046766

**PUBLIC
PROSECUTOR**

Tax - Effort
Att. Christian Baden Ekstrand

Date: November 23rd, 20th! 7
Lnr.: SØK-76141-00005· 17
Proceedings: NV H

PUBLIC     PROSECUTOR     FOR
ECONOMIC   AND   INTERNATIONAL
CRIME

KAMPMANNSGADE    I
1604 COPENHAGEN I'

TELEPHONE 72 68 80
00 FAX 45 15 00 16

**s-mau: &aoekCank.l.dk**
www .· nkla g. myn dl g hed on.dk

**Request for receipt of information**

By e-mail of 28 August 2017, SKAT asked the Public Prosecutor for Special Economic and

International Crime (SØIK) to provide information as follows:

> 'SKAT has requested in the context of the administrative proceedings for the reimbursement of
> excess dividend tax, J US 401K pension plans
> to repay                                              •i  too much received refund of dividend tax.
>
> The net dividend received is in ah
>
> SKAT has received the objection (Annex 2) from TVC lawyers vfl'orben Bagge to the requests
> submitted by SKAT.
> The objection states only, under point 2 ... 'It should be noted in this connection that the Attorney
> General for Special Economic and International Crime has seized a number of information from
> Solo Capital in London, such as: document the receipt of the dividends and the withholding tax.
> However, this information is not easily accessible to pension funds, so it has not been possible at
> this stage to provide any evidence for this'...
>
> I.    SK.A T must therefore ask SØIK to confirm or deny that the pension funds referred to in
>        Annex 2 have received the said dividends.
> 2.    It should also be noted whether in some seized material there are any deposit certificates from
>        pension institutions of which the deposit book of the said pension plans
>        is shown.                                           ·
>
> The information is collected in accordance with Section 28 of the Danish Porvalningsloven.'

By subsequent e-mail dated 2 November 2017, SKAT provided the following information:

SKAT  Fredensborg

Bilag nr. _ _ _:·.l:-.:0.-:.l ._;-.A-=-.;:;:0.:.l

TAX_MDL_001_046767

'SKAT has received an objection from TVC on October 0, 2017 regarding further US pension plans. Against this background, SØ!K is asked for the same information concerning the rest-gutter USA pension plans.

For your information, the two objections from TVC and the data sheet (Appendix I and 2) for the total of the United States pension plans are attached."

**SØIK may partially grant the request for information by SKA T as set out in details below.**

SØIK can in response to SKAT's inquiries state that

as a general rule, information from ongoing criminal proceedings shall not be provided to the Parties outside the criminal proceedings. The reasons for this are set out below in the relation to the specific request for the provision of information by the pending criminal investigations.

Special Economic and International Attorney General re-CRIME

p10E 2

However, SØIK considers the exceptional nature of the case and SKAT's special need to receive information for the purposes of the pending tax case, provide the following information without prejudice to the investigation:

Re. 1,

On the basis of the investigation carried out so far, SØIK cannot confirm that the US pension plans mentioned in the above emails should have received dividends as a result of possession of Danish shares.

Re. 2.

On the basis of the investigation carried out so far, SØIK cannot confirm that the pension plans mentioned in the above emails have held Danish shares. Nor has Vl—Securities *AJS* been contacted with information on the ownership of shares which, on the basis of the information available, would confirm the pension plans in question have held Danish shares.

Reasons for partial refusal to receive information

SØIK is of the opinion that the rectified information is confidential information. Furthermore, SØIK is of the opinion that the provision of the information in question would at this stage run counter to essential considerations regarding the ongoing investigation concerning the unjustified reimbursement of dividend tax.

The point of departure for the transmission of information between authorities is that, to the extent that a managing authority is entitled to transmit an information, the Authority shall, at the request of another managing authority, transmit information

SKAT Fredensborg

Bilag nr. 101 -A-02

gene if it is significant to the functioning of the Authority or to a decision to be taken by the Authority as referred to in administrative law § 31, par. Whether the Authority is entitled to disclose information depends on the rules of the Administrative Law § 28 and the Personal Data Act as well as special confidentiality rules.

Under Section 31(1) of the Administrative Law Paragraph 2, the obligation to disclose shall not apply if the disclosure would involve additional work for the Authority that significantly exceeds the interest of the other authority in receiving the information;

In addition, SØIK considers that the obligation to disclose does not apply if a disclosure of the information would be contrary to essential considerations of public interest STATsA; This exception is not directly reflected in the wording of the Administrative Code, but is seen to CRIME

be provided for when the law is drawn up. Chapter 8 of the Administrative Law, which includes Article 31, was thus drawn up on the basis of, inter alia, report number 998/1984 on secrecy. Of the report s. Paragraph 161 states that the Committee was aware that there may be private or public interests that militate against the further dissemination of particularly sensitive information, with such emphasis that the information should not even be passed on to other authorities that have a material need for it. Against this background, the majority of the committee proposed that a new administrative law should provide for the disclosure of information between public authorities to *be* made, including a rule that disclosure *shall be refused* if this would be contrary to overriding considerations of private or public interest, cf. p. of the report 196 (Section 6b of the draft law).

The subsequent draft law (No. L 4 of 2 October 1985) was drawn up, as I said, on the basis of the report, including the draft law of the committee. However, in relation to the rules on the exchange of information between authorities, the provision on when one authority *must disclose information* to another managing authority was laid down in Article 31 of the Administrative Law and the provisions on when an authority *may disclose information* to other managing authorities were laid down in Article 28; the draft law did not contain any comments specifically relating to the committee's proposal that an authority should be able to refuse extradition on grounds of overriding public interest reasons;

With the adoption of the bill, Section 28 of the Administrative Code was worded as follows:

> "§ 28. Information on individuals' purely private circumstances, including information on race, religion and color, on political, associative, sexual and criminal matters, as well as information on health, major social problems and abuse of consumables and the like, may not be disclosed to another regulatory authority.
> *Para. 2.* Disclosure of the information referred to in paragraphs However, the information referred to in paragraph 1 may be provided when (1) the person concerned has given his consent:

SKAT  Fredensborg

Annex     No     _    _:1.::0.::.1...;.A;.....;.

0.:. .:........................................................................

...............................................................................

..................................................................................

Confidential Pursuant to Protective Order

TAX _MDL_001_046769



2)  it follows from laws or regulations of law that the information shall be disclosed;

3)  the transfer is for the protection of private or public interests which clearly exceed the interests to which the confidentiality is justified, including those relating to the information; or

4)  the disclosure is a necessary step in the proceedings or is necessary for an author to carry out supervisory or control tasks.

*Para. 3.* Other confidential information may, in addition to that set out in paragraph In the case referred to in paragraph 2, the information will be transmitted to another Managing Authority only where it is likely that the information will be of substantial importance for the Authority's activities or for a decision to be taken by the Authority. "

Article 28(1) 2, no. 3 (the so-called 'depreciation rule'), it was thus stated that the disclosure of information on, inter alia, criminal offenses could be made for the purposes of price
                                                          STATs11ovoKATEN FOR SPECIAL
vate or public interest which clearly exceeded the interest of be- øKoNoMisK AND INTERNATIONAL;
grounds for secrecy. Thus, with this provision followed that an adult - CRIMINALneT
to refuse to disclose such information where the interests, public or private, that     justified     secrecy
outweigh those

who moved the extradition request. By way of example, the preparatory work of the PAGE provision suggests that the social sector should be able to balance public interest 4 considerations to the detriment of the possibility, in general terms, of carrying out social work, which is often based on an open relationship of trust between the person who is to receive assistance and the person who is to provide it. See additional report of the Parliamentary Committee on Legal Affairs of 6 December 1985, 1985-86, Appendix B, p. 233.

It should also be noted that in the relevant provision of the Administrative Law § 28(1) 2, no. 4, according to the preparatory works of the provision, applied only when it was necessary for the supervisory or control tasks of the *sending* authority.

The rules on the disclosure of information have since been amended by the adoption of the Danish Act on Personal Data and by the amendments to Article 28 of the Danish Administrative Code which followed the Law No. 503 of 12 June 2009: the access granted to Lil to pass on confidential information to other managing authorities has been extended to some extent, but this is not intended to lead to a change in the legal situation whereby managing authorities are not obliged to pass on such information to another managing authority in a situation where this would be contrary to overriding public interests of the sending authority itself.

Thus, SØIK is of the opinion that the police and the public prosecutor's office may (still) refuse disclosure of confidential information if, for example, it: would conflict with essential considerations for the investigation of criminal proceedings.

SKAT  Fredensborg

Bliag nr. _ ___ _;.l.;,.01__;-.A..-.;,.04-;,.

Confidential Pursuant to Protective Order

As indicated! Above, SØIK considers that the provision of additional information at this stage would be contrary to essential considerations for the investigation, SØIK cannot further accede to SKAT's request.

SØIK notes that the above decision could be amended at the request of SKAT when the stated reasons necessitating secrecy are no longer present.

Appeals

My decision can be appealed to the Attorney General. The address is Frederiksholms Kanal 16,!220 København K, rigsadvokaten@ankl.dk.

The time limit for appealing is four weeks from the receipt of this letter.

Yours sincerely

*Niels Velbøi Hansen*
vicestatsadvokat

PUBLIC PROSECUTOR FOR SPECIAL
ECONOMIC AND INTERNATIONAL
CRIME

PAGE 5

SKAT Fredensborg

Bilag nr. _____ 101 -A-05

Confidential Pursuant to Protective Order

TAX _MDL_001_046771