# Exhibit 9_T

**TAX**

The FWC Capital LLC Pension Plan 49
E 21ST ST
New York
NEW 10010
United States

Special control

3 Kratbjerg 236

3480 Fredensborg
Denmark

www.skat.dk

6 April 2018

Ref. Caplia No: 16-1671856

TIN: 47-2069447

## Decision - Revocation of previous decisions on the refund of dividend taxes

In the past, when paying dividend taxes, SKAT decided to refund dividend taxes to The FWC Capital LLC Pension Plan (hereinafter FWC Capital). The payments relate to the following requests for the reimbursement of dividend taxes received by SKAT from Syntax GIS on behalf of FWC Capital:

| | | |
|---|---|---|
| Request by | 13 April 2015 | DKK21,231,986 |
| Request by | 16 April 2015 | DKK30,807,803 |
| Request by | 23 April 2015 | DKK6,300,495 |
| Request by | 28 April 2015 | DKK6,777,868 |
| Request by· | 30 April 2015 | DKK3.037,305 |
| Request by | 15 May 2015 | DKK1,786,282 |
| Request by | 28 May 2015 | DKK988,514 |
| Total | | DKK70,930,253 |

SKAT's previous decisions on the refund of dividend taxes totaling DKK 70,930,253. FWC Capital is revoked because FWC Capital has not been entitled to receive the amounts.

It is SKAT's assessment:
- That FWC Capital does not own or have owned the shares indicated in the requests.
- the dividends relating to the shares indicated in the requests have not been paid to FWC; Capital.

Furthermore, SKAT considers that FWC Capital did not have the capital to make the investments in Danish shares that were the basis for the requests for the reimbursement of dividend tax.

1

Confidential Pursuant to Protective Order
TAX_MDL_001_0064473

In its assessment, SKAT emphasized that FWC Capital did not provide any evidence that FWC Capital had owned the shares. FWC Capital has also not provided any evidence that the pension fund has received dividends from the shares. The facts of the case do not justify such significant investments in Danish shares.

SKAT has emphasized:
- At FWC Capital is a newly formed pension fund.
- That FWC Capital has only one participant with the limited amounts of deposits.
- That FWC Capital did not submit Form 5500 in the US, so it must be assumed that FWC Capital's assets were below USD 250 000 at the end of the relevant income years.
- That SØIK cannot confirm, on the basis of the investigation carried out so far, that FWC Capital has held Danish shares or received dividends as a result of the possession of Danish shares.

It is on the basis of the information now available that SKAT's assessment is that FWC Capital has not had financial opportunities to own shares to such an extent as indicated in FWC Capital's applications for the reimbursement of Danish dividend tax. This is shown, for example, by:

- That FWC Capital had invested for DKK 219,253,070 less than two months after the foundation. in the share CHR. Hansen Holding A/S.

- At FWC Capital on March 19, 2015 was the owner of shares in Novo Nordisk A/S worth a total of DKK 2,372,466,665.

FWC Capital has therefore not demonstrated that FWC Capital meets the conditions for reimbursement of the withholding tax on Danish shares, cf. Article 10 of the Danish-US double taxation treaty.

The representative of FWC Capital, the law firm TVC, did not provide any information or evidence in their objections to SKAT's proposal of 24 March 2017 that FWC Capital owned the shares and received the dividends according to the requests.

Thus, the decisions of SKAT to reimburse the dividend tax to FWC Capital are based on incorrect grounds, and SKAT therefore revokes the earlier dividend tax refund decisions.

This Decision does not require tax to be refunded unjustifiably. This is a change from SKA's previous proposal for a decision of 24 March 2017 to FWC Capital. The Attorney General will, on behalf of SKAT, submit a letter of formal notice in which SKAT will demand repayment and compensation from FWC Capital.

For further reasons, please refer to the following summary.

Reference shall be made to Annexes 3-1-1 to 3-11-5 previously submitted and Annexes 3-A-1 to 3-A-5 attached to this Decision.

2

TAX _MDL_001_0064474

**Description and justification**

## Table of Contents

1. Facts ..................................................................................................................... 4

1.1. Description of the case .................................................................................... 4

1.2. Rationale for the resumption .......................................................................... 4

1.3. Description of the fund .................................................................................... 4

1.4. Reimbursement of dividend tax ...................................................................... 5

1.5. Calculation of investments ............................................................................. 6

1.6. Information from the IRS in the United States ............................................... 6

1.7. Information from SØIK .................................................................................... 7

2. Rules of law ........................................................................................................ 8

2.1. ....................................................................................................................... 8

2.2. Double Tax Convention. ................................................................................. 8

2.3. Case law ......................................................................................................... 8

3. SKAT's comments .............................................................................................. 8

3.1. Law the basis .................................................................................................. 8

3 .2. Reopening ..................................................................................................... 9

3.3. Own funds for investments of the fund .......................................................... 10

3.4. Pension fund .................................................................................................. 11

4. SKA Ts preliminary decision ............................................................................. 11

5.   Comments of the fund on SKA Ts proposal .................................................... 12

6.   Comments from SKAT ..................................................................................... 15

7.   SKArf final decision ........................................................................................ 16

Complaint Guide ................................................................................................... 17

Laws and regulations ............................................................................................ 18

3

# 1. Facts

## 1.1. Description of the case

Syntax GIS, on behalf of FWC Capital, has sent requests to SKAT for the reimbursement of the withheld dividend taxes on Danish shares for a total of DKK 70,930,253, for the period from 13 April 2015 to 28 May 2015.

On this basis, SKAT has paid the requested amounts to FWC Capital via Syntax GIS bank account 46065800 in Barclays Bank Plc, England.

## 1.2. Rationale for the resumption

On 25 May 2016, SKAT rejected FWC Capital's request of 24 August 2015 for a refund of withholding tax. In the course of the proceedings, SKAT has asked FWC Capital for further evidence. However, FWC Capital has not responded to SKAT's inquiries. SKAT's decision of 25 May 2016 is not subject to appeal.

Since FWC Capital did not respond to SKAT's inquiries, SKAT, via Competent Authority, has obtained additional tax return and registration information from IRS in the US. From the information provided, it appears that:

- At FWC Capital is a newly established pension fund[1].
- That FWC Capital has not submitted FORM 5500 (tax returns), whereby FWC Capital has indicated to the IRS that their assets at the end of 2014 and 2015 are below $250,000[2].
- That the annual deposit is limited to between $12,500 and $53,000 depending on the depositor's
  age[3].

On the basis of the information provided by the IRS, SKAT shall resume the previous requests by FWC Capital for the reimbursement of dividend taxes where FWC Capital has been refunded any dividend taxes on Danish shares.

## 1.3. Description of the fund

FWC Capital is registered as a pension fund in the United States [4].

FWC Capital was founded in October 2015.

---

[1] Annex 3-1-1 to 3-1-2
[2] Annexes 3-2-1 to 3-2-13 and Annexes 3-3-1 to 3-2 [3] Annexes 3-4-1 to 3-4-9
[4] Annex 3-1-1 to 3-1-2
[5] Annex 3-1-1 to 3-1-2

4

 TAX _MDL_001_0064476

## 1.4. Reimbursement of dividend tax

With reference to the double taxation treaty between Denmark and the United States, Syntax GIS, as agent, on behalf of FWC Capital, has requested and been refunded the dividend tax that it contains in respect of the following shares':

| SKATs bundle No | Date of the request | Stock | Quantity | Ex date | Total dividends DKK | Refunded dividend tax DKK |
|---|---|---|---|---|---|---|
| 25,915 | 2015-04-13 | A.P. Møller Mærsk A/S A | 39 897 | 2015-03-31 | 78 636 987 | 21 231 986 |
| 33,415 | 2015-04-23 | Novozymes A/S B | 749 199 | 2015-02-26 | 2,247,597 | 606 851 |
| 33,415 | 2015-04-23 | TDCA/S | 2,542,375 | 2015-03-06 | 2,542,375 | 686 441 |
| 33,415 | 2015-04-23 | DSV A/S | 617 170 | 2015-03-13 | 987 472 | 266 617 |
| 33,415 | 2015-04-23 | Danske Bank A/S | 3 192 314 | 2015-03-19 | 17 557 727 | 4,740,586 |
| 33,515 | 2015-04-16 | A.P. Møller Mærsk A/S B | 40 288 | 2015-03-31 | 79 407 648 | 21 440 064 |
| 33,515 | 2015-04-16 | Novo Nordisk A/S | 6 939 066 | 2015-03-2015 | 34 695 330 | 9,367,739 |
| 37,515 | 2015-04-28 | Vestas Wind Systems A/S | 1 885 245 | 2015-03-31 | 7,352,455 | 1 985 162 |
| 37,515 | 2015-04-28 | Gn Store Nord A/S, | 651 369 | 2015-03-2015 | 586 232 | 158 282 |
| 37,515 | 2015-04-28 | Tryg A/S | 174 983 | 2015-03-26 | 5,074,507 | 1 370 116 |
| 37,515 | 2015-04-28 | Pandora A/S | 439 702 | 2015-03-19 | 3 957 318 | 1,068,475 |
| 37,515 | 2015-04-28 | Carlsberg A/S - B | 903 635 | 2015-03-27 | 8 132 715 | 2,195,833 |
| 37,815 | 2015-04-30 | CHR. Hansen Holding A/S | 846 864 | 2014-11-28 | 3 192 677 | 862 022 |
| 37,815 | 2015-04-30 | Coloplast A/5 - B | 1,074,214 | 2014-05-12 | 8,056,605 | 2,175,283 |
| 60,115 | 2015-05-15 | Coloplast A/S - B | 1 470 191 | 2015-05-07 | 6,615,859 | 1,786,282 |
| 60,215 | 2015-05-28 | FL Smidth & CO A/S | 406 796 | 2015-03-27 | 3 661 164 | 988,514 |
| Total | | | | | 262 704 668 | 70 930 253 |

The requests were accompanied by the following annexes':
1. Form 06.003 ENG- Claim to Relieffrom Danish Dividend Tax.
2. Credit Advices.
3. FORM 6166 from Intemal Revenue Service (IRS)- Certificate offsident in USA (issued by the US tax authorities).
4. Limited Power of Attomey to Syntax GIS.

On 1. In form 06.003, it is stated that FWC Capital is the legal owner of the shares and is subject to the Danish-US double taxation treaty.

Re. 2. According to Credit Advices of Custodian Old Park Lane Capital PLC or Solo Capital Partners LLP, FWC Capital has received net dividends of the shares.

Re 3. From the Certificate of Residence (FORM 6166) issued by the Department of the Treasury, US, it appears that:

 'I certify that, **to the horse of our knowledge,** *the above-named entity is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the US. Internat Revenue Code, which is example from US. taxation under section 501 (a), and is a resident of the United States of America for purposes of US. taxation.'*

---

[6] Annexes 3-5-1 to 3-11-5 [7] Annexes 3-5-1 to 3-11-5

5

## 1.5. Calculation of investments

Taking into account that FWC Capital must own the shares on the day before the ex-date, the purchase amounts of FWC Capital for the shares listed in the requests[8] are calculated on the basis of the closing price on the last stock exchange day before the ex-date':

| SKATs bundle No | Stock | Course date | Quantity | Course | Calculated purchase price DKK |
|---|---|---|---|---|---|
| 37,815 | CHR. Hansen Holding A/S | 2014-11-27 | 846 864 | 258.90 | 219 253 070 |
| 37,815 | Coloplast A/S - B | 2014-04-12 | 1,074,214 | 527.00 | 566 110 778 |
| 33,415 | Novozymes A/S B | 2015-02-25 | 749 199 | 322.50 | 241 616 678 |
| 33,415 | TDCA/S | 2015-03-05 | 2,542,375 | 54.00 | 137.288.250 |
| 33,415 | DSV A/S | 2015-03-12 | 617 170 | 219.20 | 135 283 664 |
| 37,515 | Pandora A/S | 2015-03-18 | 439 702 | 614.50 | 270 196 879 |
| 33,415 | Danske Bank A/S | 2015-03-18 | 3 192 314 | 175.30 | 559 612 644 |
| 37,515 | Gn Store Nord A/S, | 2015-03-19 | 651 369 | 154.20 | 100 441 083 |
| 33,515 | Novo Nordisk A/S | 2015-03-19 | 6 939 066 | 341.90 | 2,372,466,665 |
| 37,515 | Tryg A/S | 2015-03-25 | 174 983 | 868.50 | 151,972,736 |
| 37,515 | Carlsberg A/S - B | 2015-03-26 | 903 635 | 571.50 | 516 427 403 |
| 60,215 | FL Smidth & CO A/S | 2015-03-26 | 406 796 | 314.00 | 127 733 944 |
| 25,915 | A.P. Møller Mærsk A/S A | 2015-03-30 | 39 897 | 15,810.00 | 630 771 570 |
| 37,515 | Vestas Wind Systems A/S | 2015-03-30 | 1.885,245 | 290.20 | 547 098 062 |
| 33,515 | A.P. Møller Mærsk A/S B | 2015-03-30 | 40 288 | 16,410.00 | 661 126 080 |
| 60,115 | Colaplast A/S - B | 2015-05-06 | 1 470 191 | 510.00 | 749 797 353 |

# 1.6. Information from IRS in the United States

SKAT has received information via the Competent Authority in Denmark and the USA from the IRS tax authority in the USA.

By letter dated 4 December 2015, the IRS stated:'

- At FWC Capital was founded in October 2014.
- At FWC Capital's address is 49 E 21ST ST, New York, NY 10010.

IRS has stated at a meeting with SKAT, Competent Authority, at the end of February 2016:

- At FORM 6166 (Certification of U.S. Tax Residency) is issued by the IRS at the request of the institution to submit FORM 8802 (Application for United States Residency Certification). The information in FORM 8802 shall be provided under responsibility and shall not be verified by the IRS when issuing FORM 6166.

By letter dated 13 June 2016, the IRS has attached Instructions for Form 5 500-EZ, of which it is, inter alia,

appears:

- At *"Who Does Not Have To File Form 5500-EZ*
  *You do not have to file Form 5500-EZfor the 2015 planyear fora one-participantplan if the*
  *total of the plan's assets and the assets of all other participant plans maintained by the*
  ~~*employer at the end of*~~ *the 2015 plan year does not exceed $250,000, unless 2015 is the*

---

[8] Annex 3-5-1 to 3-11-5
[9] The price is shown on Nasdaq's website: http://www.nasdaqomxnordic.com *w*
Annex 3-1-1 to 3-1-2
[11] Annex 3-2-1 to 3-2-13

6

*final plan year of the plan. For more information on final plan years, see Final Return later. "*

Based on the information from IRS SKAT's assessment, it is a OneParticipant (owners and their spouses) Retirement Plan.

By letter of 13 December 2016, the IRS provided[12]:

- That the IRS does not hold tax returns (FORM 5500) for FWC Capital as there are no submitted tax returns for 2014 or 2015.

IRS has provided links to the IRS website on the 'Topics for Retirement Plans'[13] in general questions on pension plans and their deposits. The website shows, inter alia, the following:

- That a One-Participant 401(k) plan covers a business owner with no employees other than the person and, if applicable, their associate.
- That the annual deposit is limited to between $12,500 and $53,000 according to the age of the depositor (over or under 50 years).

## 1.7. Information from SØIK

On 28 August 2017, SKAT asked the Public Prosecutor for Special Economic and International Crime (SØIK):

1. To confirm or deny that the fund has received the benefits in question.

2. To indicate whether depositary receipts from financial institutions are present in the seized material; showing the holdings of deposits held by the institution.

By letter dated 23 November 2017, SØIK partially accepted SKAT's request. This is shown in particular by: the following [14]:

*'In response to SKAT's inquiries, SØIK can state that, as a general rule, information from ongoing criminal proceedings is not provided to parties outside the criminal proceedings. The reasons for this are set out below in relation to the specific request for information to be provided from the ongoing criminal investigation.*
*However, in view of the exceptional nature of the case and the special need for SKAT to receive information for the purposes of the pending tax case, SØIK considers that it can provide the following information without prejudice/has the investigation:*

*Re. 1.*

*In the light of the investigation carried out so far, SØIK cannot confirm that the US pension plans mentioned in the above emails should have received dividends as a result of the possession of Danish shares.*

---

[12] Annex 3-3-1 to 3-3-2
[13] Annex 3-4-1 to 3-4-9
[14] Annex 3-A-1 to 3-A-5

7

*Re. 2.*

*Based on the investigation carried out so far, SØJK cannot confirm that the pension plans mentioned in the above emails have held Danish shares. Nor has any information been provided to VP-Securities AIS on the ownership of shares which would confirm the pension plans in question as having held Danish shares'.*

## 2. Rules of law

## 2.1. Legal notices

Company Tax Act - ordinance m. 1082 of 14 November 2012 and m. 680 of 20 May 2015:
- · § 2, par. 1(c) and (c) 3, 2nd pt

Law of the Equation Act. 1017 of 28 October 2011 as amended (prior to 2013) and m. 405 of 22 April 2013 as amended (from 2013):
- · Section 16 A, paragraph 1 1.

Source Tax Act - Consolidation Act No. 1403 of 7 December 2010 as amended:
- · § 65, par. 1 and 69 B, par. 1.

The Law of Limitation - Act m. 522 of 6 June 2007, as amended:
- · Section 2(1) 1 and 3 par. 1 and 2.

## 2.2. Double taxation treaty

BKI No 13 of 14/4/2000 of the Agreement of 19/8/1999 between Denmark and the United States of America to avoid double taxation and to prevent tax evasion in respect of income taxes. As amended by BKI no. OJ L 18/2 2008, Protocol of 2/5/2006:
- · Articles 10 and 22.

## 2.3. Case law

SKM 2010.266 SR. Tax Council's binding response of 26 January 2010.
In the case of share lending, the Danish Tax Council considers that the lender continues to be regarded as the owner of the shares for tax purposes and the dividend is therefore subject to taxation in accordance with the rules applicable to the lender, including in the event of a double taxation treaty between Denmark and the State of the lender.

Dividends on shares lent must therefore be taxed at the lender's expense.

## 3. SKA Ts comments

## 3.1. Legal basis Corporate Tax Act and Withholding Tax Act

A foreign company that receives dividends from a Danish company is limited to Denmark under Section 2(1) of the Danish Corporate Tax Act. 1 (c)

8

In 2014 and 2015, a foreign company limited to Denmark was liable to pay 27 % tax on dividends, cf. Section 2(1) of the Corporate Tax Act. 3, and the Danish paying company thus contains 27 %. This is reflected in Section 65 of the Withholding Tax Act.

Double taxation treaty

In accordance with Article 10(1) 2(b) of the Danish-US double taxation treaty, Denmark may tax 15 % of the gross amount of dividends paid by a company resident in Denmark to a resident of the United States.

However, Denmark may not tax dividends paid to a US resident company if the beneficial owner is a pension fund as referred to in Article 22(2)(e); Article 10(1) of the double taxation treaty 3, point c.

A pension fund within the meaning of Article 22(2) 2(e) is a legal person, whether exempt from taxation or not, organized under the legislation of a Contracting State for the purpose of providing a pension or similar benefits under a prescribed scheme to employed persons, including self-employed persons, provided that more than 50 % of the total value of the benefits is attained. the beneficiaries, members or participants of that person are natural persons resident in one of the Contracting States.

Limitation Act

This is reflected in section 2, para. 1, the limitation period shall begin at the earliest on the date on which the claimant was able to claim satisfaction of the claim, unless other rules provide otherwise.

Recovery of sums already paid out is generally subject to the three-year limitation period, cf. Section 3, para. 1.

The three-year limitation shall be suspended if the claimant was unaware of the claim

or the debtor. In such cases, the limitation period shall begin to run on the day on which the claimant received, or should have had, knowledge of it, in accordance with Article 3(1) of the statute of limitations. 2.

## 3.2. Reopening

SKAT takes up FWC Capital's previous requests for the reimbursement of dividend taxes, as SKAT has received information on FWC Capital from the IRS in the USA.

Recovery of amounts paid shall, as a general rule, be subject to the three-year limitation period laid down in Article 3(3) of the statute of limitations. 1. The period of limitation shall be counted at the earliest from the date on which the creditor (TAX) was able to claim satisfaction of the claim; Section 2(2) of the statute of limitations 1.

SKA Ts claims therefore expire at the earliest 3 years after payment of the recovered amount to FWC Capital. The three-year limitation period is suspended if the claimant (SKAT) was not aware of the claim or debtor. In this case, the limitation period shall only start from the day on which the creditor (tax) received or ought to have become aware of it, cf. Article 3(3) of the statute of limitations. 2.

On 4 December 2015, SKAT became aware that it was a newly created pension fund.

9

On 13 June 2016, SKAT became aware that '401K' pension funds have only one participant, with the limited amounts of deposits (between $12,500 and $53,000 per fund). years according to the age of the depositor) and that pension funds should not submit tax returns if the pension funds' assets are less than $250,000.

On 13 December 2016, SKAT learned that FWC Capital did not submit tax returns for 2014 and 2015; since FWC Capital did not submit FORM 5500 (tax returns), they have indicated to the IRS that their assets at the end of 2014 and 2015 are below USD 250 000.

According to the foregoing, the tax will not be informed of the claim until 13 June 2016 at the earliest, when SKAT has both the information that it is a newly created pension fund and that the '401K' pension funds have only one participant, with the limited amount of deposits. The tax claim therefore expires on 13 June 2019 at the earliest.

## 3.3. The capital base for the pension fund investments FWC

Capital was created in October 2014[15].

According to the information provided by the authorities in the United States, this is a pension fund where there is only one participant, as an annual max. can deposit 12,500/53,000 $[16] (approximately DKK 85,375/361,990)[17].

As FWC Capital has not submitted FORM 5500 (tax returns) for either 2014 or 2015, FWC Capital has indicated to the IRS that their assets at the end of 2014 and 2015 are below $[18] 250,000 (DKK 1,530,350/DKK 1,707,500)!",

From the foundation in October 2014 until May 2015, FWC Capital has received dividends for a total of DKK 262,704,668 DKK [20] The amount is not accrued to the pension fund, based on the above information on the pension fund's assets. Of which, the total amount of recovered and refunded dividend taxes is DKK 70,930,253,

On the basis of the Credit Advices received, SKAT has calculated that all FWC Capital's investments in Danish shares[22] are well above FWC Capital's capital base. It shows, inter alia:

- That FWC Capital had invested for DKK 219,253,070 less than two months after the foundation. in the share CHR. Hansen Holding A/S.

- At FWC Capital on March 19, 2015 was the owner of shares in Novo Nordisk A/S for a total value of DKK 2,372,466,665.

---

[15] Annex 3-1-1 to 3-1-2
[16] Annex 3-4-1 to 3-4-9
[17] Price at end-2015 (683,00), cf. www.nationalbanken.dk [18]
Annexes 3-2-1 to 3-2-13 and Annexes 3-3-1 to 3-3-2
[19] Price at end-2014 (612,14) and 2015 (683,00), cf. www.nationalbanken.dk [20]
Section 1.4
[21] Section 1.4
[22] Section 1.5

10

Confidential Pursuant to Protective Order

On this basis, SKAT's assessment is that FWC Capital, as a newly created pension fund that could inject a maximum of $53,000 (DKK 361,990) and with a capital base of less than $250,000 at the end of 2014 and 2015 (DKK 530,350/DKK 1,707,500), did not have the capital required to make the investments underlying FWC WC Capital's requests.

It should be noted that in the event of borrowed shares, FWC Capital cannot recover any dividend tax on them, cf. SKM 20 l 0 .266 SR.

## 3.4. Pension fund

The United States tax authorities (IRS) have indicated that the Certificate of Residence (FORM 6166) does not verify the information provided in the Application for United States Residency Certification (FORM 8802).

The Certificate ofResidence (FORM 6166) cannot therefore alone prove that FWC Capital is a pension fund which has the possibility to recover the full dividend tax under the double taxation treaty between Denmark and the United States, Article 22(1). 2, point (e)

## 4. SKA Ts preliminary decision

SKAT proposes that FWC Capital reimburse the refund of the total dividend tax of DKK 70,930,253, as it is clear from the information received from the IRS:

- That FWC Capital did not have capital to buy/own the shares indicated in the requests.
- The dividends relating to the shares indicated in the requests have not been paid to FWC Capital.
- The refunded dividend taxes have not been paid to FWC Capital.

SKAT is of the opinion that FWC Capital, as a newly created pension fund - with a single participant with the limited deposits and that the assets of the pension fund at the end of 2014 and 2015 were below $250,000 - did not have the capital to make the investments that were the basis for the requests.

FWC Capital cannot therefore be the legal owner of the shares on which they have been refunded withholding tax.

Consequently, SKAT refunded the said dividend taxes to FWC Capital on an incorrect/incorrect basis.

Thus, FWC Capital does not meet the conditions for reimbursement of the withholding tax on Danish shares, cf. Article 10 of the Danish-US double taxation treaty.

The tax therefore recovers the previously refunded dividend taxes in accordance with Section 69B(1) of the Withholding Tax Act. 1 as referred to in Article 10 of the Double Tax Convention.

11

Confidential Pursuant to Protective Order

Recovery of amounts paid shall, as a general rule, be subject to the three-year limitation period laid down in Article 3(3) of the statute of limitations 1. The period of limitation shall be counted at the earliest from the date on which the creditor (TAX) was able to claim satisfaction of the claim; *Section* 2(2) of the statute of limitations 1.

SKA Ts claims therefore expire at the earliest 3 years after payment of the recovered amount to FWC Capital. The three-year limitation period is suspended if the claimant (SKAT) was not aware of the claim or debtor. In this case, the limitation period shall only start from the day on which the creditor (tax) received or ought to have become aware of it, cf. Article 3(3) of the statute of limitations. 2.

On 4 December 2015, SKAT became aware that it was a newly created pension fund.

On 13 June 2016, SKAT learned that "401K" pension funds have only one participant - with the limited deposits (between $12,500 and $53,000 per person). income according to age of depositor) and that pension funds should not submit tax returns if the pension funds' assets are less than $250,000.

On 13 December 2016, SKAT learned that FWC Capital did not submit tax returns for 2014 and 2015; since FWC Capital did not submit FORM 5500 (tax returns), they have indicated to the IRS that their assets at the end of 2014 and 2015 are below USD 250 000.

According to the foregoing, the tax will not be informed of the claim until 13 June 2016 at the earliest, when SKAT has both the information that it is a newly created pension fund and that the '401K' pension funds only have a single participant, with the limited deposits. The tax claim therefore expires on 13 June 2019 at the earliest.


## 5. Comments of the fund on SKA Ts proposal

In a letter dated 10 October 2017, the law firm TVC, on behalf of FWC Capital, submitted the following comments on SKAT's earlier proposal of 24 March 2017:

' ... *In the draft decisions, SKAT emphasized the following aspects:*

> *1 The pension funds have not had capital to buy the owned shares. 2*
> *The dividends paid have not been paid to the pension funds.*
> *3    Pension funds have not been declared in the United States, so the assets of each pension fund*
> *      must be less than USD 2 5 0 000.*
> *4 The pension funds are newly formed and with only one participant each.*

*We will make our comments in the following on the individual points in SKAT's draft decision.*


## 1      LACK OF CAPITAL

*It is disputed that the pension funds did not have financial resources to acquire the shares from which dividends were paid and which were subsequently refunded.*

*In this respect, it is noted that pension funds in global financial markets have numerous possibilities to obtain financing for the purchase of shares without recourse to equity. In addition*

12

the availability of traditional debt financing is also open to several other financial instruments that can be used to obtain the necessary financing to acquire economic and legal ownership of the shares.

For example, in order to trade in shares, pension funds simply need to open bank accounts and separate custody accounts to hold the shares. The pension funds can then enter into so-called Global Master Securities Lending Agreements (GMSLA), which provide pension funds with access to a securities lending facility governed by a Prime Brooker Agreement or a Repurchase Agreement Facility.

Such agreements shall enable pension funds to acquire the shares without the need for own funds, on the understanding that at the time of the acquisition of the shares in question, the pension funds lend the shares to third parties. The payment received by the pension funds for the loan generates sufficient liquidity to pay for the shares on the payment date, with the time difference between purchase and payment usually being two days for standard transactions.

Such a transaction also implies that the pension funds put the custody account (in which the shares are held) as collateral for the lender. However, the only right that the lender obtains is the possibility of satisfaction of the shares in the event of the insolvency of the borrower or if the borrower is unable to cede the shares when payment is due.

In accordance with the decision of the Tax Council in SKM 2010.26.SR, it is therefore the pension funds which, as the lender of the shares to third parties, are also entitled to receive the dividends in these cases.

It is therefore not true that pension funds have not been able to finance the transactions in question.


**2    THE DIVIDENDS RELATED TO THE SHARES SUBMITTED IN THE REQUESTS AND THAT THE REFUNDED DIVIDEND TAX HAS NOT BEEN ADDED TO THE PENSION FUNDS;**

In general, it is disputed that the pension funds have not received the disputed dividends or that the refunded dividend taxes have not been paid to the pension funds.

In the draft decisions, SKAT did not substantiate this view or demonstrate that the pension funds did not receive any dividends or reimbursement.

It should be noted in this connection that the Public Prosecutor for Special Economic and International Crime has seized a large number of information from Solo Capital in London, which, among other things, has not been published. documents the receipt of the dividends and the withholding tax. However, this information is not easily accessible to pension funds, so that it has not been possible at present to provide supporting evidence.

13

Confidential Pursuant to Protective Order

## 3    LACK OF US TAX RETURN

*In this respect, it is noted that under US tax law, a pension fund is exempt from tax if its assets do not exceed the $250,000 threshold on the last day of the fiscal year.*

*The assets of pension funds may therefore have exceeded the limit in the course of the year, provided that the assets at the last accounting date were smaller.*

*There can be a wide range of concrete reasons why the pension fund assets were less than $250,000 at the last reporting date.*

*For example, the completed stock transactions would typically have been completed at that time (purchase and sale completed) with the effect that the shares were no longer in the custody.*

*In addition, there are a number of costs associated with the transactions carried out which also lead to a reduction in the assets of pension funds.*

*Distributions from pension funds are also available, with the effect that the assets at the reporting date were less than $250,000.*

*Finally, it should be noted that, even if pension funds had wrongly failed to declare their income in the United States, the absence of a tax return could in no way lead to pension funds not being the beneficial owners of the shares for which dividend refunds have been applied for.*

*In this respect, it is noted that the US pension funds are properly constituted and both formally and effectively legally constituted.*

## 4    NEWLY CREATED SINGLE PARTICIPANT PENSION FUNDS

*In general, it should be noted that the fact that the pension funds in question are newly formed or have only one participant each has no bearing on the eligibility of pension funds to receive dividend refunds.*

*If the pension funds meet the conditions of the double taxation treaty between Denmark and the United States, cf. Article 22, para. 2(e) referred to in Article 10(1) Under paragraph 3(c), pension funds are entitled to reimbursement of the withholding tax by agreement.*

*The agreement states that Denmark and the United States define what constitutes a pension fund themselves and that this,* **including** *SKAT's own proposal, is understood as*

> *'A legal person organized under the legislation of a Contracting State for the purpose of granting pensions or similar benefits under a defined scheme to employed persons, including self-employed persons, provided that more than 50 % of the beneficiary members of that person are natural persons resident in one of the Contracting States'.*

*Since the pension funds are under US law validly constituted and covered by the Agreement, Denmark must recognize that the pension funds are eligible for dividend reimbursement. It is noted in this respect that it appears that the US authorities have* <u>*not*</u> *informed SKAT that:*

14

Confidential Pursuant to Protective Order

*the pension funds are not validly constituted, etc., as SKAT has not referred to this in the draft decision.*

*The OECD commentary on the US double taxation treaties further indicates that all 401 (ki pension plans with a single participant) are assumed to be covered by the US treaties, as evidenced by US Congress documents relating to the vote on the ratification of the US double taxation treaty.*

. . . . .

*Against this background, we believe that there is no basis for taking decisions in line with the SKAT proposal for a decision of 24 March 2017 .....'*

## 6. SKAT's comments

The law firm TVC has disputed on behalf of FWC Capital that the pension fund has not had any financial capacity to acquire the shares from which dividends have been paid and on which dividend tax has subsequently been refunded. It is argued that the pension fund in the global financial markets has numerous opportunities to obtain financing for the purchase of shares without recourse to equity. The law firm has not provided any evidence that the fund obtained financing for the purchase of shares without the use of equity capital.

The law firm also disputes that the fund did not receive the disputed dividends or that the refund of dividend taxes was not paid to the pension funds. The law firm has not provided any evidence in this respect, as the law firm states that the Public Prosecutor for Special Economic and International Crime (SØIK) has seized a large amount of information from Solo Capital in London, and therefore it has not been possible to provide evidence in this respect.

SKAT notes that no evidence has been provided that:
- That the fund acquired the shares - with or without the use of equity
- The pension fund has received dividends from the shares
- The existence of dividend tax on the dividends of the shares

SØIK further states that, on the basis of the investigation carried out so far, SØIK cannot confirm that the pension fund has held Danish shares or received dividends as a result of the possession of Danish shares.

Therefore, it cannot be assumed that SØIK has the relevant material.

In view of this, SKAT continues to consider that FWC Capital has not demonstrated that the pension fund met the conditions for obtaining reimbursement of the dividend taxes on the shares in question.

1
5

## 7. SKA Ts final decision

SKAT's previous decisions on the refund of dividend taxes totaling DKK 70,930,253. FWC Capital is revoked because FWC Capital has not been entitled to receive the amounts.

It is SKAT's assessment:

- That FWC Capital does not own or have owned the shares indicated in the requests.
- the dividends relating to the shares indicated in the requests have not been paid to FWC; Capital.

Furthermore, SKAT considers that FWC Capital did not have the capital to make the investments in Danish shares that were the basis for the requests for the reimbursement of dividend tax.

In its assessment, SKAT emphasized that FWC Capital did not provide any evidence that FWC Capital had owned the shares. FWC Capital has also not provided any evidence that the pension fund has received dividends from the shares. The facts of the case do not justify such significant investments in Danish shares.

SKAT has emphasized:

- At FWC Capital is a newly formed pension fund.
- That FWC Capital has only one participant with the limited amounts of deposits.
- That FWC Capital did not submit Form 5500 in the US, so it must be assumed that FWC Capital's assets were below USD 250 000 at the end of the relevant income years.
- that, on the basis of the investigation carried out so far, SØIK cannot confirm that FWC Capital has held Danish shares or received dividends as a result of the possession of Danish shares.

It is on the basis of the information now available that SKAT's assessment is that FWC Capital has not had financial opportunities to own shares to such an extent as indicated in FWC Capital's applications for the reimbursement of Danish dividend tax. This is shown, for example, by:

- That FWC Capital had invested for DKK 219,253,070 less than two months after the foundation. in the share CHR. Hansen Holding A/S.

- At FW C Capital on March 19, 2015 was not a share in Novo Nordisk *AJS* worth a total of DKK 2,372,466,665.

FWC Capital has therefore not demonstrated that FWC Capital meets the conditions for reimbursement of the withholding tax on Danish shares, cf. Article 10 of the Danish-US double taxation treaty.

The representative of FWC Capital, the law firm TVC, has not provided any information or evidence in their objections to SKA Ts proposal of 24 March 2017 that FWC Capital has owned the shares and received the dividends according to the requests.

16

The decisions of SKAT to refund the dividend tax to FWC Capital are therefore based on incorrect grounds. It therefore revokes the previous decisions on the reimbursement of dividend taxes.

This Decision does not require tax to be refunded unjustifiably. This is a change from SKAT's previous proposal for a decision of 24 March 2017 to FWC Capital. The Attorney General will, on behalf of SKAT, submit a letter of formal notice in which SKAT will demand repayment and compensation from FWC Capital.

## Complaint Guide

**If you want to complain**
Then you must write to the Danish Tax Agency within three months of the day on which you have received this decision.

Write all the points you want to complain about and justify each point why you think the decision is wrong. Attach the decision and the presentation of the case. If you have documents supporting and substantiating your complaint, we also ask you to attach them. If you want a meeting with a caseworker at the Danish Tax Agency, you must write your phone number in the complaint.

It costs 400 kr. to complain. If you are fully or partially correct in your complaint, you will get the money back. **How to send the complaint and pay**

You can send the complaint
- electronically via Skatteankestyrelsen's complaint form at skatankestyrelsen.dk, where you are at the same time asked to pay by payment card or Mobile Pay.
- as digital post via borgs.dk. or virk.dk. Pay by transferring DKK 400 to the account with registration number 0216 and Account No. 4069029361, and write your name and TIN number. in the message box.
- by letter to the Danish Tax Agency, Ved Vesterport 6, 4th floor, 1612 København V. Pay by transferring DKK 400. to the account with registration number 0216 and Account No. 4069029361, and write your name and TIN number. in the message box.
- Payment from abroad can be made by transferring the amount to 0216 (registration number bank) 4069029361 (account number), IBAN DK 0502164069029361, SWIFT DABADKKK.

**You can apply for your counsel**
If you are given an advisor to help with the complaint, you can apply for the advice to be paid in full or in part if the case is subject to the rules of Chapter 19 of the Tax Administration Act. More about this possibility can be read at skat.dk/omkostningsgodtgørelse.

17

Laws and regulations
The laws and decisions referred to can be found at skat.dk/love or skat.dk/afgørelser.
Additional information/instructions for appeals can be found at skat.dk/klage or
skatankestyrelsen.dk/ english.


Yours sincerely


**Katrine Basballe**
Professional consultant

E-mail: katrine.basballe@Skat.dk
Telephone No: (+45) 72 37 02 38

**Dorthe Frederiksen**
Consultant

E-mail: dorthe.frederiksen@skat.dk
Telephone No: (+45) 72 38 29 23

**Lill Drost.**
Function
Manager

E-mail: lill.drosl@skat.dk


Copies of the decision and attached documents are sent to TVC Law Firm, Havneholmen 25, 9th,
1561 Copenhagen V

18

TAX _MDL_001_0064490



**PUBLIC PROSECUTOR**

Tax - Effort
Att. Christian Baden Ekstrand

Date: 23 November 2017
Lnr.: SØK-76141-00005-17
Proceedings: NVH

PUBLIC PROSECUTOR FOR ECONOMIC
AND INTERNATIONAL CRIME

KAMPMANNSGADE    1
1604 KØBENHAVN V

TELEPHONE 72 68 90 00
FAX45150016

s-mau: saoekOankl.dk
www.prosecutor. dk

Request for receipt of information

By e-mail of 28 August 2017, SKAT asked the Public Prosecutor for Special Economic and International Crime (SØIK) to provide information as follows:

> "SK.A T has requested in connection with the handling of the administrative proceedings concerning the repayment of overpaid dividend tax, *)* US 401 K pension plans
> to repay the                                            · in too much received refund of dividend tax.
>
> The net dividend received is in air
>
> SKAT has received the objection (Annex 2) from TVC lawyers vforben Bagge to the requests submitted by SKAT.
> The statement of opposition shall indicate: under point 2 ... 'It should be noted in this respect that the Public Prosecutor for Special Economic and International Crime has seized a number of information from Solo Capital in London which, among other things, documents the receipt of the proceeds and the dividend tax. However, this information is not easily accessible to pension funds, so that at present not all the supporting documents have been provided'.
>
> 1.   It is therefore necessary for SKAT to request SØIK to confirm or deny that the pension funds referred to in Annex 2 have received the dividends in question.
> 2.   It should also be noted whether the seized material contains depositary receipts from pension institutions showing the holdings of pension plans.
>
> The information is collected in accordance with Section 28 of the Administrative Law.'

By subsequent e-mail dated 2 November 2017, SKAT provided the following information:

**SKAT Fredensborg**

Annex No _____ 3_-~A—

0_1_

Confidential Pursuant to Protective Order

TAX _MDL_001_0064491

'On 10 October 2017, SKAT received objections from TVC regarding further US pension plans. In view of this, SØIK is requested to provide the same information concerning the rest-gutter USA pension plans.

For your information, the two objections from TVC and the data sheet (Appendix I and 2) for the total US pension plans are attached.'

SØIK may partially grant SKA T's request to receive information, cf. details below.

In response to SKAT's inquiries, SØIK can state that there is an overwhelming majority as a general rule, information from ongoing criminal proceedings shall not be provided to the PUBLIC PROSECUTOR FOR SPECIAL ECONOMIC AND INTERNATIONAL Parties outside the criminal proceedings. The reasons for this are set out below in the re- KA1M1NALITY relation to the specific request for the provision of information by the pending criminal investigations.

black 2

However, SØIK considers the exceptional nature of the case and SKAT's special need to receive information for the purposes of the pending tax case, provide the following information without prejudice to the investigation:

Re. 1.

On the basis of the investigation carried out so far, SØIK cannot confirm that the US pension plans referred to in the above-mentioned e-mails have received dividends as a result of the possession of Danish shares.

Re. 2.

On the basis of the investigation carried out so far, SØIK cannot confirm that the pension plans mentioned in the above emails have held Danish shares. Furthermore, no information has been received by the VP-Securities *AIS* on the ownership of shares which would confirm the pension plans in question as having held Danish shares.

**Reasons for partial refusal to receive information**

SØIK is of the opinion that the rectified information is confidential information. Furthermore, SØIK is of the opinion that the disclosure of the information at this stage would be contrary to essential considerations regarding the ongoing investigation concerning the unjustified reimbursement of dividend tax.

The point of departure for the transmission of information between authorities is that, to the extent that a managing authority is entitled to transmit an information, the Authority shall, at the request of another managing authority, transmit information

SKAT Fredensborg

Annex No           3:....  ;-A....:-

.;.;02=-

Confidential Pursuant to Protective Order

TAX _MDL_001_0064492

gene if it is significant to the functioning of the Authority or to a decision to be taken by the Authority in accordance with administrative law § 31, par. 1. Whether the Authority is entitled to disclose information depends on the rules set out in  Section 28 of the Administrative Code and the Personal Data Act, as well as specific confidentiality rules.

Under Article 31, para. Paragraph 2, the obligation to disclose shall not apply if the disclosure would lead to additional work for the Authority that significantly exceeds the interest of the other Authority in receiving the information.

Furthermore, SØIK takes the view that the obligation to disclose does not apply if a the disclosure of the information would be contrary to the overriding requirements of the public interest PROSECUTOR FOR SPECIAL ECONOMIC AND INTERNATIONAL views. This exception is not directly reflected in the wording of the Administrative Law but is seen to

CRIME

Chapter 8 of the Administrative Law, which includes § 31, was therefore drawn up on the basis, inter alia, of: report No 998/1984 on secrecy. Of the report s. Paragraph 161 states that the Committee was aware that there may be private or

be provided for when the law is drawn up.

public interests that militate against the further dissemination of particularly sensitive information, with such emphasis that the information should not even be passed on to other authorities that have a factual need for it. The majority of the committee therefore proposed that a new administrative law should provide for the disclosure of information between public authorities to *be* made, including a rule that disclosure *should be refused* if this would be contrary to overriding considerations of private or public interest as set out in p. of the report 196 (Section 6b of the draft law).

The subsequent legislative proposal (No L 4 of 2 October 1985) was drawn up, as I said, on the basis of the report, including the draft legislation of the committee. *However,* in relation to the rules on the exchange of information between authorities, the provision on when one authority *must disclose information to another managing authority* was *placed* in Article 31 of the Administrative Law and the provisions on when an authority *may* disclose information to other managing authorities were placed in § 28.

With the adoption of the draft law, Section 28 of the Administrative Code was worded as follows:

"§ 28. Information on the purely private circumstances of individuals, including information on race, religion and color, on political, union, sexual and criminal matters, as well as information on health, major social problems and abuse of pleasures and the like, may not be disclosed to another managing authority.
*Para. 2.* Disclosure of the information referred to in paragraphs The information referred to in paragraph 1 may, however, be provided when (l) the person for whom the information is intended has given his consent:

**SKAT Fredensborg**

Annex No _____ 3_-A—

Confidential Pursuant to Protective Order                    TAX _MDL_001_0064493

2) it follows from laws or regulations laid down by law that the information is to be disclosed;

3) the disclosure is made for the protection of private or public interests which clearly exceed the interests justifying secrecy, including those relating to the disclosure; or

4) the disclosure is a necessary stage of the proceedings or is necessary for an authority to carry out supervisory or control tasks.

*Para. 3.* Other confidential information m~ in addition to the items in paragraph 1 In the cases referred to in paragraph 2, the information shall be transmitted to another Managing Authority only where it is considered that it will be of substantial importance for the Authority's activity or for a decision to be taken by the Authority. "

Article 28(1) 2, no. 3 (the so-called "jump rule"), it was thus stated that the disclosure of information about, inter alia, criminal offenses could be made for the execution of price good or public interest which clearly exceeded the interest to be grounds for secrecy. It follows that CRIME of authority It would refuse to disclose such information if it interests - public electricity is private - which justified secrecy, outweighed the interests who moved the extradition request. Of the preparatory works of the provision The report takes as an example the fact that the social sector should have the opportunity to balance public interest with the need to disseminate purely personal information harms the ability - generally - to perform social scars work which is often based on an open relationship of trust between the person who is to receive assistance and the person who is to provide it. See additional report of the Parliamentary Committee on Legal Affairs of 6 December 1985, 1985-86, Appendix B, sp. 233.

It should also be noted that the transfer title in the current provision of Article 28(1) of the Administrative Law 2, no. 4, according to the preparatory works of the provision, was only applicable when it was necessary for the purposes of supervision or control by the *sending* authority.

The rules on the disclosure of information have since been amended by the adoption of the Danish Act on Personal Data and by the amendments to Section 28 of the Danish Administrative Law which followed the Law No. 503 of 12 June 2009: some extension of access to confidential information to other managing authorities has taken place, but this does not appear to be intended to change the legal situation, according to which managing authorities are not obliged to disclose such information to another managing authority in a situation where this would be contrary to overriding public interest considerations of the sending authority itself.

Thus, it is the view of SØIK that the police and the public prosecutor's office (continued) can refuse the disclosure of confidential information if, for example, it would conflict with essential considerations for criminal investigation.

STATSAovoKATEN FOR SPECIAL øKoNoMisK og INTEAΓJATIONAL

PAGE 4

**SKAT Fredensborg**

Annex No _____3_-_A_-

_04_

As stated above, SØIK considers that providing additional information at this stage would be contrary to essential considerations for the investigation, SØIK cannot further grant SKAT's request.

SØIK notes that the above decision could be amended at the request of SKAT when the stated reasons necessitating secrecy would no longer exist.

**Appeals**

My decision is open to appeal to the Attorney General. The address is Frederiksholms Kanal 16, 1220 København K, rigsadvokaten@ankl.dk.

PUBLIC PROSECUTOR FOR ECONOMIC
AND INTERNATIONAL CRIME

The time limit for lodging a complaint is four weeks after receipt of this letter.

PAGE 5

Yours sincerely

*Niels Vejby Hansen*
vicestatsadvokat

SKAT Fredensborg

Annex No _____ 3_-A_-_05_

**Confidential Pursuant to Protective Order**