# Exhibit 14



Notat

13. januar 2016
J.nr. 15-2840696

Strategisk Styring

# Notat om forløbet i SKAT efter modtagelse af anmeldelser om formodet svindel med refusion af udbytteskat

SKAT har på et møde den 25. november 2015 med Rigsrevisionen redegjort for forløbet internt i SKAT omkring modtagelsen af den anonyme henvendelse om svindel med udbytteskatter og de efterfølgende henvendelser fra de engelske myndigheder i sommeren 2015. Opmærksomheden henledes på, at visse oplysninger i nærværende endnu er fortrolige, blandt andet under hensyntagen til den politimæssige efterforskning.

**Den første anmeldelse**
SKATs afdeling Særlig Kontrol har i perioden 16. juni 2015-18. juni 2015 modtaget anonyme henvendelser med anmeldelse af svindel med udbytteskatter mod den danske stat. Første henvendelse den 16. juni 2015 var en telefonisk henvendelse efterfulgt af en kort e-mail om formodet svindel ved hjælp af dobbeltbeskatningsoverenskomster vedrørende 18 ikke-navngivne selskaber. Disse henvendelser blev fulgt op af en e-mail den 17. juni 2015 med lidt flere oplysninger, herunder et kontoudtog. Den 18. juni 2015 modtog SKAT yderligere en e-mail med oplysninger om formodet svindel. Denne e-mail indeholdt navne på 25 selskaber, som ifølge anmelders oplysninger er skrevet af fra en håndskreven liste med forbehold for afskriftsfejl mv.

Disse henvendelser kom alle fra en advokat på vegne af en unavngiven klient. Advokaten oplyste, at hans klient ønskede anonymitet.

Underdirektøren i Særlig Kontrol kontaktede telefonisk underdirektøren i SKATs afdeling Betaling og Regnskab og orienterede om anmeldelsen.

Sagen blev umiddelbart efter modtagelsen tildelt en sagsbehandler i Særlig Kontrol, som straks foretog opslag og søgninger i SKATs sags- og journalsystemer med henblik på at be- eller afkræfte indholdet af anmeldelsen, herunder oplysningerne om de 25 selskaber.

Sagsbehandleren foretog opslag på de 25 selskaber i Captia og Skat Ligning, ligesom der blev foretaget søgning på selskaberne på internettet. SKAT havde alene navnene på de 25 selskaber at arbejde ud fra; der var således ingen SE-numre eller andre oplysninger vedrørende selskaberne, som kunne hjælpe med at identificere disse.

Arbejdet med søgning på selskaberne varede frem til den 24. juni 2015, uden at selskaberne kunne identificeres ud fra de foreliggende oplysninger. De selskabsnavne, der

blev søgt på, eksisterede således ikke i SKATs journal- og sagsbehandlingssystemer Captia og SKAT Ligning.

Det var således ikke muligt på dette tidspunkt ud fra de modtagne oplysninger i anmeldelsen at af- eller bekræfte, at der skulle være foretaget svindel i forbindelse med refusion af udbytteskat.

Særlig Kontrol kontaktede derfor den 24. juni 2015 Betaling og Regnskab med henblik på at få oplysninger om procedurer på området og eventuelle andre oplysninger som senere (efter sommerferien) skulle bruges til at vurdere om der var yderligere forhold der kunne undersøges yderligere i relation til anmeldelsen. Det viser sig senere at 1 af de pågældende selskaber kan være omfattet af den formodede svindel på området, som SKAT efterfølgende afdækker i forlængelse af en yderligere anmeldelse i slutningen af juli måned, jf. nedenfor.

**Den anden anmeldelse**
Den 27. juli 2015 modtog SKAT en telefonisk henvendelse fra HM Revenue and Customs, UK, med orientering om, at denne myndighed har fremsendt intelligence oplysninger (bistandsanmodning) til SKAT vedrørende formodet svindel med udbytteskatter mod den danske stat. Særlig Kontrol modtog denne anmodning skriftligt den 30. juli 2015 via SKATs enhed Kompetent Myndighed i henhold til den normale procedure på området.

Oplysningerne om selskaberne i bistandsanmodningen er på flere punkter sammenfaldende med oplysningerne i de anonyme henvendelser fra juni 2015.

Den 4. august 2015 blev det mellem Særlig Kontrol og Betaling og Regnskab aftalt, at Betaling og Regnskab skulle foretage undersøgelser vedrørende selskaberne. Den 5. august 2015 meddelte Betaling og Regnskab, at undersøgelserne ikke gav noget resultat.

Den 6. august 2015 modtog SKAT under hånden en e-mail fra de engelske myndigheder med oplysninger om 184 navngivne selskaber, som angiveligt kunne være benyttet til at tilbagesøge udbytteskat. Ved SKATs gennemgang kunne der konstateres sammenfald mellem selskaber på listen og selskaber omfattet af henvendelsen modtaget den 18. juni 2015. Oplysningerne fra de engelske myndigheder blev officielt modtaget den 11. august 2015.

På et møde den 6. august 2015 med deltagelse fra SKATs afdelinger Særlig Kontrol, Store Selskaber, Udvikling samt Betaling og Regnskab blev anmeldelserne gennemgået, og oplysningerne modtaget fra de engelske myndigheder blev fremlagt. På baggrund af oplysninger fra sidstnævnte om, at en større tilbagesøgning af udbytteskat vedrørende aktier fra et navngivent selskab var planlagt til den 10. august 2015, besluttede SKAT at stoppe alle udbetalinger, indtil der var overblik over situationen.

Highly Confidential Pursuant to Protective Order

Efter mødet blev materialet gennemgået manuelt. Det kunne herved konstateres, at der hos SKAT forelå mange refusionsanmodninger fra de i anmeldelsen nævnte custodians. Samtidig gav en stikprøvekontrol hits mellem udbyttemodtagere og flere selskaber fra e-mailen modtaget den 6. august 2015. Endelig kunne det konstateres, at der var foretaget store udbetalinger vedrørende flere af de udbyttemodtagere, der var nævnt i e-mailen.

I perioden umiddelbart efter indsamlede SKAT oplysninger om alle udbyttebetalinger til selskaber omfattet af e-mailen af 6. august 2015. SKAT opgjorde den 10. august 2015 beløbet fra den formodede svindel til ca. 5 mia. kr. SKAT kontaktede SØIK med henblik på eventuel bistand til SKAT eller overdragelse af sagen til SØIK.

SKAT holdt den 11. august 2015 møde med SØIK. Resultatet af mødet blev, at SKAT skulle frembringe yderligere dokumentation vedrørende udbetalinger til de pågældende selskaber og først herefter anmelde sagen til SØIK. Sagen har været drøftet flere gange med SØIK, førend SKAT og SØIK nåede til en fælles opfattelse af, at mistanken om svindel var begrundet.

Efter yderligere undersøgelser indgav SKAT den 24. august 2015 anmeldelse af sagen til SØIK. Beløbet fra den formodede svindel kunne på dette tidspunkt opgøres til 6,2 mia. kr.

**Afsluttende bemærkninger**
Det er SKATs opfattelse, at det først den 6. august 2015 var muligt for SKAT at konstatere, at der var hold i de oplysninger, som blev modtaget den 18. juni 2015. SKATs efterfølgende undersøgelser har vist, at der efter den første anmeldelse er udbetalt 1,8 mio. kr. (afrundet) til én deltager fra listen modtaget fra de engelske myndigheder den 6. august 2015. Dette beløb blev dog allerede indtastet i system 3S den 22. maj 2015 (dvs. før den første anmeldelse) og med overførselsdato den 26. juni 2015. Beløbet blev udbetalt den 6. juli 2015 og indgår i en samlet udbetaling på 118 mio. kr.

Det er SKATs opfattelse, at såfremt selskabernes navne var oplyst korrekt i den første anmeldelse, og såfremt der hurtigt var blevet foretaget en manuel undersøgelse af det materiale (blanketter med bilag mv.), som beroede hos Betaling og Regnskab, samt såfremt der hurtigt kunne indhentes supplerende oplysninger hos pengeinstitutter, 3. mand (fx udstedende selskab), Værdipapircentralen, udenlandske myndigheder mv., ville SKAT teoretisk set kunne have standset den udbetaling på 1,8 mio. kr., som fandt sted den 6. juli 2015. Det er dog ikke realistisk at antage, at undersøgelserne og fremskaffelsen af supplerende oplysninger ville kunne være sket tidsnok til, at udbetalingen kunne være stoppet.

SKAT modtager generelt mange anmeldelser om svindel. Anmeldelser visiteres og kommunikeres og efterprøves efter en risikovurdering.

Highly Confidential Pursuant to Protective Order    SKAT_MDL_001_00683941

I denne sag medførte beløbets størrelse, at der blev forespurgt om viden både i SKATs udbetalingsafdeling og i de afdelinger i SKAT, som har internationale kontakter på svigsområdet.

SKAT vurderede, at oplysningerne i den første anmeldelse fra juni 2015 gav grundlag for en mistanke om svindel, men oplysningerne var for sparsomme til, at der umiddelbart kunne handles på dem. Der var fx ikke grundlag for at sende en anmeldelse til SØIK, og det var nødvendigt at undersøge selskaberne nærmere.

Data i henvendelsen af 18. juni 2015 blev som nævnt undersøgt i systemerne, men undersøgelserne førte ikke til en bekræftelse eller underbyggelse af mistanken om svindel. Den anden anmeldelse indeholdt detaljerede oplysninger om, hvordan svindlen var foregået. Denne anmeldelse kom desuden fra en myndighed, og måtte derfor anses for at være mere pålidelig. Det var først efter den manuelle gennemgang efter modtagelsen af den anden anmeldelse, at der forelå konkret mistanke om dokumentfalsk og bedrageri. Mistanken var i øvrigt ikke stærkere, end at SKAT måtte have flere drøftelser med SØIK, førend man nåede til en fælles opfattelse af den formodede svindel.

Som nævnt er sagen under politimæssig efterforskning.

Highly Confidential Pursuant to Protective Order    SKAT_MDL_001_00683942

TAX

Note

13 January 2016
15-2840696

Strategic Management

# Notice of progress in tax upon receipt of notifications of suspected fraud involving the refund of dividend tax

SKAT, in a meeting with the National Audit Office on 25 November 2015, explained the progress within SK.A.T on receiving the anonymous inquiry about dividend tax fraud and subsequent inquiries from the UK authorities in the summer of 2015.

**The first notification**
SKAT's department Special Kontrol received anonymous subpoenas against the Danish State during the period 16 June 2015-18 June 2015. The first submission on 16 June 2015 was a telephone inquiry followed by a short email about suspected fraud by double taxation treaties concerning 18 unnamed companies. These inquiries were followed by an email on 17 June 2015 with a little more information, including a statement of account. On 18 June 2015, SI(..i\T received an additional email containing information on suspected fraud. This e-mail contained the names of 25 companies, which according to the information provided by the notifier are written off from a handwritten list with reservations for transcript errors, etc.

These inquiries all came from a lawyer on behalf of an unnamed client. The lawyer informed me that his client wanted anonymity.

The Deputy Director of Special Control contacted the Deputy Director of the Tax Department by telephone, Payment and Accounting, and informed about the notification.

The case was immediately awarded to a practitioner in Special Control who immediately carried out postings and searches in SKAT's case and record systems in order to confirm or deny the content of the notification, including the information about the 25 companies.

The case manager made postings on the 25 companies in Captia and Skat Equation, as well as searches on the companies on the internet. SKAT had the names of the 25 companies to work from; there was thus no tax exempt number or any other information concerning the companies which could help to identify these.

The search of the companies lasted until 24 June 2015 without identifying the companies on the basis of the information available. The company names

Highly Confidential Pursuant to Protective Order

Thus, no record of Captia and SKAT Equation was applied for.

*It* was therefore not possible at *this* stage, on the basis of the information received in the notification, to deduce or confirm that there had been fraud in connection with the refund of dividend tax.

On 24 June 2015, the Danish Court therefore contacted Pay and Accounting in order to obtain information on procedures in the area and any other information which would later (after the summer holidays) be used to assess whether there were further issues that could be further examined in relation to the notification. *It* later transpires that 1 of *the* companies in question may be covered by the alleged fraud in this area, which is subsequently uncovered by SKAT following a further notification at the end of July
month referred to in below.

**The second notification**
On 27 July 2015, SKAT received a telephone request from HM Revenue and Customs, UK, informing it that it has forwarded intelligence information (assistance request) to SKAT concerning suspected fraud in dividend taxes against the Danish State. Special Control received this request letter: fairly on 30 July 2015 via SKAT's Unit Competent Authority according to the normal procedure in the area.

The information on the companies in the request for assistance is similar in several respects to *the* information provided in anonymous submissions of June 2015.

On 4 August 2015, it was agreed between Special Control and Payment and Accounting that Payment and Accounting should carry out investigations concerning the companies. On 5 August 2015, Payment and Accounting reported that the investigations had no result.

On 6 August 2015, SKAT received an e-mail by hand from *the* UK authorities with information on 184 named companies which could allegedly have been used to recover dividend tax. The review by SI<-AT found that the companies on the list coincided with the companies covered by the submission received on 18 June 2015. The information provided by *the* UK authorities was officially received on 11 August 2015.

At *a* meeting on 6 August 2015 with the participation of SKAT's departments Special Control, Large Companies, Development and Payment and Accounting, the notifications were reviewed and the information received from *the* UK authorities was presented. On the basis of information provided by the latter that a major recovery of dividend tax on shares from *a* named company was planned for 10 August 2015, SKAT decided to stop all payments until the situation was clear.

Highly Confidential Pursuant to Protective Order

TAX _MDL_001_00683940

After the meeting, the material was reviewed manually. In this respect, it was found that there were many repayment applications from SKAT from *the* Custodians mentioned in the notification. At the same time, a sample check gave hits between the beneficiaries and several companies from the email received on 6 August 2015; finally, it was found that large payments were made for several of *the* beneficiaries mentioned in the email.

In the period immediately following, SI(_AT) gathered information on all dividend payments to companies covered by the e-mail of 6 August 2015. SI<-AT on 10 August 2015 calculated the amount of the alleged fraud at around EUR 5 billion. kr. SKAT contacted SØIK with a view to possible assistance to SI<-AT or transfer of the case to SØIK.

On August 11, 2015, Slv\T held a meeting *with* SØIK. The result of the meeting was that SKAT had to produce further documentation concerning payments to *the* companies concerned and only then to notify SØIK. The case has been discussed several times *with* SØIK before SI<-AT and SØIK reached a common view that the suspicion of fraud was justified.

On 24 August 2015, after further investigation, SKAT submitted a notification of the case to SØIK. The amount of the suspected fraud at *this* time could be estimated at EUR 6.2 billion. kr.

**Concluding remarks**
*It* is the view of SK._i\Ts that it was only on 6 August 2015 that it was possible for Slv\T to establish that *the* information received on 18 June 2015 was consistent. Subsequent investigations by SI<-AT have shown that after the first notification, EUR 1,8 million has been paid out. kr. (rounded) to a participant from the list received from *the* English authorities on 6 August 2015; however, this amount was already entered in system 3S on 22 May 2015 (i.e. for the first notification) and *with the* transfer date of 26 June 2015, the amount was disbursed on 6 July 2015 and is part of a total disbursement of EUR 118 million. kr.

It is SKAT's opinion that if the names of the companies were correctly disclosed in the first notification and if a manual examination of the material (forms *with* annexes etc.) held by Payment and Accounting had been carried out quickly, as well as if additional information could be quickly obtained from banks, third parties (e.g. issuing companies), the Central Securities Depository, foreign authorities etc., SKAT could theoretically have stopped the payment of 1,8 million. kr., which took place on 6 July 2015; however, it is not realistic to assume that the investigations and the provision of additional information could have been done in time for the payment to be stopped.

Even\T generally receives many fraud reviews. Notifications shall be searched and communicated and verified following a risk assessment.

**Highly Confidential Pursuant to Protective Order**

TAX _MDL_001_00683941

In the case in question, the amount involved was the result of a request for information both in SIZAT's payout department and in the tax departments which have international contacts in the area of fraud.

SKJ\T considered that the information in the first notification of June 2015 was a reason for suspicion of fraud, but the information was too sparse to be immediately tradable. For example, there were no grounds for submitting a notification to SØIK, and it was necessary to examine the companies more closely.

Data from the submission of 18 June 2015 were, as mentioned above, examined in the systems, but the investigations did not lead to a confirmation or substantiation of the suspicion of fraud. The second notification contained detailed information on how the fraud had occurred. This notification was also submitted by an authority and therefore had to be considered more reliable. It was only after the manual review, following receipt of the second notification, that there were concrete suspicions of forgery and fraud. The suspicion was, moreover, no stronger than that SKJ\T had to have more discussions with SØIK before reaching a common view on the alleged fraud.

As I said, the case is under police investigation.

**Highly Confidential Pursuant to Protective Order**

TAX _MDL_001_00683942