# Exhibit 92

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND LITIGATION<br><br>This document relates to: 18-cv-05053, 18-cv-05374, 18-cv-08655, 18-cv- 09797, 18-cv-09836, 18-09837, 18-cv-09838, 18- cv-09839, 18-cv-09840, 18-cv-19841, and 18-cv 10100.[1] | MASTER DOCKET<br><br>Civil Action No. 18-MD-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S RESPONSES AND OBJECTIONS TO THIRD PARTY DEFENDANT ED&F MAN CAPITAL MARKETS LTD.'S THIRD SET OF INTERROGATORIES TO PLAINTIFF SKATTEFORVALTNINGEN**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), Plaintiff Skatteforvaltningen ("SKAT") hereby responds and objects to the Third Set of Interrogatories to Plaintiff SKAT (the "Interrogatories"), dated November 3, 2021, of Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F"). SKAT designates these Responses and Objections "Confidential" under the Protective Order entered in the above-captioned case on March 5, 2020.

The response to any particular Interrogatory is not an admission of the relevance or the admissibility into evidence of such response. No statement contained in these responses shall be deemed to constitute an admission that any statement or characterization in the Interrogatories is complete or accurate. SKAT reserves the right to supplement or correct these

---

1.  These cases are referred to herein collectively as the "ED&F Third Party Actions."

responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review.

These objections and responses are made solely for purposes of discovery in the ED&F Third Party Actions. SKAT, in responding to these Interrogatories, does not waive any objection based on relevance, materiality, competence, privilege, admissibility, authenticity, vagueness, ambiguity, undue burden, or other grounds, all of which objections and grounds are reserved and may be interposed at the time of any hearing or at trial. Further, SKAT makes the responses and objections herein without in any way implying that it considers the Interrogatory, or responses to the Interrogatory, to be relevant or material to the subject matter of this action. SKAT further does not waive the right to object on any ground at any time to a request for further responses to these Interrogatories. Nor does SKAT waive the attorney-client privilege, work product privilege, or any other privileges with respect to the information called for in the Interrogatories.

SKAT responds to the Requests to the extent that the Requests' instructions do not impose obligations that are beyond the scope of the Federal Rules of Civil Procedure and the Local Rules applicable to discovery in this matter.

No objection made herein, or lack thereof, shall be deemed a statement by SKAT as to the existence or non-existence of any information. Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice and are not a waiver of Plaintiff's right to rely on other facts or documents at trial.

## <u>GENERAL STATEMENTS & OBJECTIONS TO THE<br>INSTRUCTIONS AND DEFINITIONS</u>

In the interests of brevity and clarity, SKAT describes and summarizes certain limitations to its responses and common bases for objections to the Interrogatories.

1.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent that they are not proportional to the needs of the case in light of the limited disputed factual issues to which the Interrogatories relate. Undertaking a comprehensive search and review of all SKAT's records for responsive information would impose on SKAT a burden and expense that far outweighs the likely benefit of the discovery. SKAT will respond to the Interrogatories by identifying known information that is responsive to the Interrogatories and will otherwise conduct reasonable searches for and produce discovery in compliance with Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules. (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "<u>Objection 1</u>.")

2.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent they seek or require the production of confidential, personal, business or financial information of third parties. SKAT further objects to the Interrogatories to the extent they call for the production of information that are subject to any confidentiality or non-disclosure requirement under (i) any applicable treaty, law, rule or regulation, including, but not limited to, any treaty, law, rule or regulation of the United States, Denmark, Britain, Germany, Canada, Dubai, Malaysia, or the European Union, (ii) an order of a foreign court, or (iii) any applicable agreement by which the information were provided to SKAT. SKAT further objects to the Interrogatories to the extent they call for the production of information that SKAT is prohibited from disclosing under Danish law, including but not limited to: the Danish Tax Administration Act, the Danish Public Administration Act, the Danish Data Protection Act, the European

General Data Protection Regulation, the Danish Securities Trading Act, and the Danish Capital Markets Act.  (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 2.")

3.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent they seek information that are protected from discovery by the attorney-client privilege, the work product doctrine, the common interest privilege, confidentiality orders or agreements, or that are otherwise immune to or protected from disclosure.  The inadvertent production of any information which is confidential, privileged, or protected shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, the subject matter thereof or the information contained therein; nor shall such inadvertent production constitute a waiver of SKAT's right to object to the use of the information during this or any other proceeding.  (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 3.")

4.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent they call for information that is outside SKAT's possession, custody, or control, seek information and/or materials already within ED&F's knowledge, possession and/or control (either collectively or individually); or seek information that is publicly available or obtainable from some other source that is more convenient, less burdensome, or less expensive.  SKAT has no obligation or duty (and will undertake no such obligation or duty) to search for or produce information that is in the possession, custody, or control of any third party, including any other agency or instrumentality of the government of the Kingdom of Denmark.  (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 4.")

5.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, argumentative, cumulative or duplicative, overly broad, unduly burdensome or oppressive, or to the extent they seek information that is not relevant to the claims or defenses in the ED&F Third Party Actions.  SKAT objects to the definitions and instructions to the extent they purport to impose obligations or definitions beyond those set out in Local Civil Rule 26.3 and Local Civil Rule 33.3.  SKAT objects to the Interrogatories because more practical methods of obtaining the information sought exist.   (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 5.")

6.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent that it has already produced documents containing information responsive to the Interrogatories.

7.      SKAT responds to the Definitions, Instructions, and Interrogatories without waiving or intending to waive, but on the contrary, preserving:  (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; and (b) the right to object on all grounds, at any time, to document requests or other discovery procedures involving or relating to the subject of the Interrogatories to which SKAT has responded herein.

8.      SKAT objects to the definition of "Pension Plans" as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information privileged or exempt from discovery to the extent that the scope of the definitions include claims submitted to SKAT by individuals or entities who are not parties to the ED&F Third Party Actions and seek information that is not relevant to the claims and defenses in the ED&F Third Party Actions.  To

the extent that SKAT provides any information in response to an Interrogatory, SKAT will interpret the term "Pension Plans" to refer to the defendant pension plans in the ED&F Third Party Actions.

9.      SKAT objects to Instructions 2 and 3 on the grounds that the instructions are vague, ambiguous, overly broad, unduly burdensome, purport to impose obligations on SKAT in excess of those imposed by the Federal Rules of Civil Procedure.  SKAT will supplement or correct its response in a timely manner if it learns that the response is incomplete or incorrect in some material respect, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the Court.

10.     SKAT objects to Instructions 4, 5, and 9 as overbroad, unduly burdensome, seeking information or the identification of documents that are not relevant to the claims or defenses in the ED&F Third Party Actions, and seeking to expand its obligations beyond those required by the Federal Rules of Civil Procedure or the Local Rules.  In creating any privilege log, SKAT will not log internal communications between or among any of its inside or outside counsel. To the extent SKAT withholds any information based on a claim of privilege, exemption, or immunity from discovery, it will set forth such information in its privilege log and will provide similar information in accordance with its obligation under Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2.

11.     SKAT objects to Instruction 8 as vague, ambiguous, overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information privileged or exempt from discovery.  SKAT objects to the definition to the extent it includes its representatives, attorneys, agents, investigators, consultants and counsel working on its behalf in connection with this or any other litigation, or persons or entities acting or purporting to act on

behalf of any of the individuals or entities covered by the definition.  To the extent that SKAT

provides any information in response to an Interrogatory, SKAT will interpret the term to include

SKAT, and its current or former employees in their capacity as such who were involved in any of

the matters at issue in this lawsuit during the period from January 1, 2012 to June 15, 2015 (the

"Relevant Time Period").

## RESPONSES TO INTERROGATORIES

This response does not represent that any documents or information exist that are

responsive to any of the Interrogatories.  The responses below to each Interrogatory shall be

deemed to incorporate the General Statements and Objections to the Instructions and Definitions

as if each were fully set forth therein.

## Interrogatory No. 11

Explain the definition of "beneficial ownership" under Danish domestic law adopted,
endorsed, or subscribed to by SKAT in or before 2015, and identify any documents that
support that SKAT in fact adopted, endorsed, or subscribed to that definition either
publicly or internally.

## Response to Interrogatory No. 11

SKAT incorporates by reference Objections 1, 2, 3, 4, and 5.  SKAT also objects

to Interrogatory No. 11 on the ground that it is overly broad and unduly burdensome for SKAT

to identify "any documents that support that SKAT in fact adopted, endorsed, or subscribed to

that definition either publicly or internally" in use in or before 2015.  Such documents are

equally available to Defendants in SKAT's document productions.

Subject to and without waiving any objections, SKAT responds that its

operational definition, in or before 2015, for the term "beneficial owner" was the same as that

term is defined in the Model Tax Convention and the associated Commentaries published by the

Organisation for Economic Cooperation and Development.  This understanding was reflected in

section C.D.1.2.3.5 of the Legal Guide on Danish Tax Matters in effect between January 23, 2012 and July 15, 2012. Between July 16, 2012 and July 30, 2015, the understanding was reflected in section C.F.8.2.2.10.1.3 of the Legal Guide on Danish Tax Matters.

**Interrogatory No. 12**

State the basis for Your contention that the Pension Plans were not entitled to reclaim withheld dividend tax in excess of 15% of the gross dividend they received on any Shares they owned, even if they were not entitled to a complete reclaim of withheld dividend tax as qualified tax-exempt entities.

**Response to Interrogatory No. 12**

SKAT incorporates by reference Objections 1, 2, 3, 4, and 5. Subject to and without waiving any objections, SKAT responds that the Pension Plans were not entitled to reclaim in excess of 15% of the gross dividend as they failed to meet the requirements of the double taxation treaty between Denmark and the United States, including but not limited to, the requirements of Article 22(2)(f).

**Interrogatory No. 13**

If You contend that the Pension Plans did not receive payment of a dividend from the relevant Danish issuer where ED&F received from its sub-custodian an MT566 SWIFT message showing payment of a dividend from a Danish issuer, state the basis for such contention.

**Response to Interrogatory No. 13**

SKAT incorporates by reference Objections 1, 2, 3, 4, and 5. SKAT further objects to Interrogatory No. 13 on the grounds that it is vague as to the scope and meaning of "receive" and "payment of a dividend."

Subject to and without waiving any objections, SKAT responds to Interrogatory No. 13 by stating that an MT566 SWIFT message does not prove that a dividend, upon which a valid reclaim application can be made, was paid by a Danish issuer. SKAT contends that an

MT566 SWIFT message is sent by a shareholder's custodian bank, not by the issuer, and can be issued for manufactured dividends, dividends received from the Danish issuer, or other forms of payments made in compensation for dividends depending on that bank's practices; MT566 messages can also be reversed. Additionally, SKAT contends that MT566 messages SWIFT merely purport to show that a consolidated cash payment was made to an account held by ED&F, but not the entity paying or the ultimate beneficiary of the payments. SKAT has requested from ED&F production of reconciliation documentation showing where and when a dividend was received from a Danish issuer on account of a specific holding by a Pension Plan, and to which accounts those dividends were deposited from ED&F. ED&F has not complied with this production request and has informed SKAT that relevant reconciliation documents were destroyed. As a result, SKAT infers that there is no documentation that would demonstrate that the MT566 SWIFT messages show proof of any Pension Plan receiving a dividend. Further, to the extent any payments were made to ED&F by a Danish issuer on behalf of a Pension Plan, pursuant to agreements between ED&F and the Pension Plans, ED&F held all right, title and interest, or otherwise had a beneficial interest, in all assets in the Pension Plans' custody accounts during the Relevant Time Period.

**Interrogatory No. 14**

> If You contend that the Pension Plans did not receive payment of a dividend from the counterparty to the purchase of the Shares where ED&F received email confirmation from the counterparty that such payment had been made, state the basis for such contention.

**Response to Interrogatory No. 14**

SKAT incorporates by reference Objection 6. SKAT further objects to Interrogatory No. 14 on the grounds that it is vague as to the scope and meaning of "receive" and "payment of a dividend."

Subject to and without waiving any objections, SKAT responds to Interrogatory No. 14 by stating that SKAT disagrees with the assertion that email confirmations are evidence of payments. Contrary to this assertion, an email confirmation is insufficient to show that any payment was actually made or received by any entity. SKAT further contends that ED&F is in possession of documents that would show whether cash payments or market claims were made by any counterparties. SKAT has been requesting production of these documents for over eighteen months, yet ED&F has not produced them.

SKAT has requested from ED&F production of documents that would demonstrate whether referenced payments were actually made on account of a specific holding by a Pension Plan, and to which accounts those payments were deposited from ED&F. ED&F has not complied with this production request. As a result, SKAT infers that there is no documentation that would demonstrate whether the referenced payments were actually made. Further, to the extent any payments were made to ED&F by a Danish issuer on behalf of a Pension Plan, pursuant to agreements between ED&F and the Pension Plans, ED&F held all right, title and interest, or otherwise had a beneficial interest, in all assets in the Pension Plans' custody accounts during the Relevant Time Period.

**Interrogatory No. 15**

If You contend that the Pension Plans were not entitled to reclaim withheld dividend tax where ED&F received from its sub-custodian an MT566 SWIFT message showing payment of a dividend from a Danish issuer, state the basis for such contention.

**Response to Interrogatory No. 15**

SKAT incorporates by reference Objection 6. SKAT further objects to Interrogatory No. 15 on the grounds that it is vague as to the scope and meaning of "payment of a dividend." SKAT also incorporates by reference its response to Interrogatory 13.

Subject to and without waiving objections, SKAT responds to Interrogatory No. 15 by asserting that the Pension Plans were not entitled to a reclaim because they were not qualified pension plans, under section 401(a) of the Internal Revenue Code. Under the double taxation treaty between Denmark and the United States, the Pension Plans must be qualified U.S. pension plans in order to be entitled to claim a full refund of the withholding tax. The Pension Plans did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code because they (i) violated the exclusive benefit requirement, *see* 26 C.F.R. § 1.401-1(a)(3)(ii); (ii) violated the permanency requirement, *see* 26 C.F.R. § 1.401-1(b)(2); 26 C.F.R. § 1.401-1(b)(4)(ii)); and (iii) were improperly funded, *see* 26 U.S.C. § 401(a)(1). Further, to constitute a qualified pension plan under the Internal Revenue Code, the Pension Plans must have met the requirements of the Internal Revenue Code both when they were formed and throughout their operation.

SKAT further contends that SKAT required dividend withholding tax refund applicants to be the beneficial owner of the shares and dividends underlying the applications, and as a result, were entitled to refunds. The MT566 messages do not contain evidence of a Pension Plans' ownership of shares or dividends, beneficial or otherwise. SKAT further contends that in order to be entitled to a reclaim, the Pension Plans must have suffered withholding tax on any received dividend payments. There is, however, nothing in the MT566 SWIFT messages that indicates that the Pension Plans suffered withholding tax on dividend payments.

SKAT further refers to its response to Interrogatory No. 13 and disagrees with the assertion that MT566 SWIFT message demonstrates that a dividend, upon which a valid reclaim application can be made, was paid by a Danish issuer. Contrary to this assertion, an MT566 SWIFT message is insufficient to show that a dividend, upon which a valid reclaim application

can be made, was made by a Danish issuer.  Finally, SKAT contends that the MT566 SWIFT

messages do not provide proof or indicate that the Pension Plans are entitled to receive a reclaim.

The MT566 SWIFTs do not show that: (i) the Pension Plan owned the shares it claimed to own

in the refund applications to SKAT; (ii) no other entity held a beneficial interest in the shares

listed on the refund application to SKAT; (iii) the Pension Plan was entitled to the dividend

associated with the shares listed on the refund application to SKAT; (iv) the Pension Plan

received the dividends associated with those shares; (v) the Pension Plan suffered withholding

tax on those dividends; or (vi) the Pension Plan was a qualified U.S. pension plan entitled to

claim a full refund of withholding tax under the double taxation treaty between Denmark and the

United States.

**Interrogatory No. 16**

> If You contend that the Pension Plans were not entitled to reclaim withheld dividend tax
> where ED&F received email confirmation from the ultimate counterparty to the Pension
> Plans that the Shares the Pension Plans acquired had a contractual right to a dividend and
> that such payment was made to the Pension Plans through ED&F, state the basis for such
> contention.

**Response to Interrogatory No. 16**

SKAT incorporates by reference Objection 6.  SKAT further objects to

Interrogatory No. 16 on the grounds that it is vague as to the scope and meaning of "email

confirmation," "payment" and "contractual right to a dividend."  SKAT also incorporates by

reference its response to Interrogatory 14.

Subject to and without waiving objections, SKAT responds to Interrogatory No.

16 by asserting that the Pension Plans were not entitled to a reclaim because they were not

qualified pension plans, under section 401(a) of the Internal Revenue Code.  Under the double

taxation treaty between Denmark and the United States, the Pension Plans must be qualified U.S.

pension plans in order to be entitled to claim a full refund of the withholding tax.  The Pension

Plans did not meet the criteria for a qualified pension plan set forth in section 401(a) of the

Internal Revenue Code because they (i) violated the exclusive benefit requirement, *see* 26 C.F.R.

§ 1.401-1(a)(3)(ii); (ii) violated the permanency requirement, *see* 26 C.F.R. § 1.401-1(b)(2); 26

C.F.R. § 1.401-1(b)(4)(ii)); and (iii) were improperly funded, *see* 26 U.S.C. § 401(a)(1).  Further,

to constitute a qualified pension plan under the Internal Revenue Code, the Pension Plans must

have met the requirements of the Internal Revenue Code both when they were formed and

throughout their operation.

       SKAT further contends that at all relevant times, SKAT required dividend-

withholding-tax applicants to represent that they were the beneficial owner of the shares and

dividends underlying the applications, and as a result, were entitled to refunds.  The email

messages do not contain evidence of a Pension Plans' ownership of shares or dividends,

beneficial or otherwise.  SKAT further contends that in order to be entitled to a reclaim, the

Pension Plans must have suffered withholding tax on any received dividend payments.  There is,

however, nothing in the email messages that indicates that the Pension Plans suffered

withholding tax on dividends.

       SKAT further refers to its response to Interrogatory No. 14 and disagrees with the

assertion that email confirmations are evidence of payments.  Contrary to this assertion, an email

confirmation is insufficient to show that any payment was actually made or received by any

entity, including the ultimate counterparties.  Finally, SKAT contends that the email messages do

not provide proof or indicate that the Pension Plans are entitled to receive a reclaim.  The email

messages do not show that: (i) the Pension Plan owned the shares it claimed to own in the refund

applications to SKAT; (ii) no other entity held a beneficial interest in the shares listed on the

refund application to SKAT; (iii) the Pension Plan was entitled to the dividend associated with the shares listed on the refund application to SKAT; (iv) the Pension Plan received the dividends associated with those shares; (v) the Pension Plan suffered withholding tax on those dividends; or (vi) the Pension Plan was a qualified U.S. pension plan entitled to claim a full refund of withholding tax under the double taxation treaty between Denmark and the United States.

**Interrogatory No. 17**

If You contend that ED&F did not apply credits to the Pension Plans' ED&F accounts in the amount of dividend payments received, state the basis for such contention.

**Response to Interrogatory No. 17**

SKAT incorporates by reference Objections 5 and 6. SKAT further objects to Interrogatory No. 17 on the grounds that it is vague as to the scope and meaning of "credits," "dividend payments," and "received."

Subject to and without waiving objections, SKAT refers to its responses to Interrogatories 13 and 14 and states that neither emails nor MT566 messages indicate receipt of any amount, whether a dividend or other equivalent amount. ED&F has not produced sufficient documentation to show that dividend payments were made from either Danish issuers or counterparties to the Pension Plans' accounts. Additionally, SKAT contends that any credits applied to the Pension Plan accounts do not constitute proof that the Pension Plans received a dividend for which they were entitled to claim a refund of the withholding tax.

Dated: New York, New York
        December 3, 2021

HUGHES HUBBARD & REED LLP

By:___ s/ Neil J. Oxford_____
        William R. Maguire
        Marc A. Weinstein
        Neil J. Oxford
        Dustin P. Smith
    One Battery Park Plaza
    New York, New York 10004-1482
    Telephone: (212) 837-6000
    Fax:  (212) 422-4726
    bill.maguire@hugheshubbard.com
    marc.weinstein@hugheshubbard.com
    neil.oxford@hugheshubbard.com
    dustin.smith@hugheshubbard.com

    *Counsel for Plaintiff Skatteforvaltningen
    (Customs and Tax Administration of the
    Kingdom of Denmark)*