# Exhibit 94

# AMERICAN INVESTMENT GROUP OF NEW YORK, L.P. PENSION PLAN

### Sponsored by

### AMERICAN INVESTMENT GROUP OF NEW YORK, L.P.

### PLAN 001

CONFIDENTIAL

AIG_00000368

# TABLE OF CONTENTS

ARTICLE 1 .................................................................................................. 2
DEFINITIONS ............................................................................................. 2
1.1   ADMINISTRATOR .............................................................................. 2
1.2   ADOPTING EMPLOYER ...................................................................... 2
1.3   AFFILIATED EMPLOYER ..................................................................... 3
1.4   AGE ................................................................................................. 3
1.5   ANNIVERSARY DATE .......................................................................... 3
1.6   ANNUITY STARTING DATE ................................................................. 3
1.7   BENEFICIARY .................................................................................... 3
1.8   BREAK IN SERVICE ............................................................................ 4
1.9   CODE ............................................................................................... 4
1.10  CODE §3401 COMPENSATION ............................................................ 4
1.11  CODE §415 COMPENSATION .............................................................. 4
1.12  COMPENSATION ............................................................................... 5
1.13  DISABILITY ....................................................................................... 6
1.14  EARLY RETIREMENT AGE ................................................................... 6
1.15  EARNED INCOME .............................................................................. 6
1.16  ELIGIBLE PARTICIPANT ...................................................................... 6
1.17  EMPLOYEE ....................................................................................... 7
1.18  EMPLOYER ....................................................................................... 7
1.19  ERISA .............................................................................................. 7
1.20  FIDUCIARY ....................................................................................... 7
1.21  FISCAL YEAR ..................................................................................... 7
1.22  FORFEITURE ..................................................................................... 7
1.23  FORM W-2 COMPENSATION ............................................................... 8
1.24  HCE ................................................................................................. 8
1.25  HIGHLY COMPENSATED EMPLOYEE .................................................... 8
1.26  HOUR OF SERVICE ............................................................................ 8
1.27  KEY EMPLOYEE ................................................................................. 9
1.28  LEASED EMPLOYEE ........................................................................... 9
1.29  LIMITATION YEAR ............................................................................. 10
1.30  MATERNITY OR PATERNITY LEAVE ..................................................... 10
1.31  NHCE ............................................................................................... 10
1.32  NON-HIGHLY COMPENSATED EMPLOYEE ............................................ 10
1.33  NON-KEY EMPLOYEE ......................................................................... 10
1.34  NORMAL RETIREMENT AGE ............................................................... 10
1.35  NORMAL RETIREMENT DATE .............................................................. 10
1.36  OWNER-EMPLOYEE ........................................................................... 10
1.37  PARTICIPANT .................................................................................... 10
1.38  PARTICIPANT'S ACCOUNT .................................................................. 11
1.39  PERMISSIVE AGGREGATION GROUP .................................................... 11
1.40  PLAN ............................................................................................... 11
1.41  PLAN YEAR ....................................................................................... 11
1.42  POLICY ............................................................................................. 11
1.43  QUALIFIED JOINT AND SURVIVOR ANNUITY ........................................ 11
1.44  QUALIFIED PRERETIREMENT SURVIVOR ANNUITY ............................... 11
1.45  REQUIRED AGGREGATION GROUP ...................................................... 11
1.46  REQUIRED BEGINNING DATE .............................................................. 11
1.47  ROLLOVER ACCOUNT ........................................................................ 12
1.48  ROLLOVER CONTRIBUTION ................................................................ 12
1.49  SELF-EMPLOYED INDIVIDUAL ............................................................. 12
1.50  SHAREHOLDER-EMPLOYEE ................................................................ 12
1.51  SPONSOR ......................................................................................... 12
1.52  SPOUSE ............................................................................................ 12
1.53  TERMINATION OF EMPLOYMENT ....................................................... 12
1.54  TERMINATED PARTICIPANT ............................................................... 12
1.55  TOP HEAVY ....................................................................................... 13
1.56  TOP HEAVY MINIMUM ALLOCATION ................................................... 13
1.57  TOP HEAVY RATIO ............................................................................. 13
1.58  TRUSTEE .......................................................................................... 14
1.59  TRUST FUND ..................................................................................... 14
1.60  VALUATION DATE .............................................................................. 14
1.61  VESTED AGGREGATE ACCOUNT ......................................................... 14
1.62  VESTED, VESTED INTEREST or VESTING .............................................. 14

1.63   VOLUNTARY EMPLOYEE CONTRIBUTION ............................................................... 14
1.64   VOLUNTARY EMPLOYEE CONTRIBUTION ACCOUNT ................................................ 14
1.65   YEAR OF SERVICE ......................................................................................................... 15

**ARTICLE 2** ................................................................................................................................. 17
**PLAN PARTICIPATION** ............................................................................................................. 17
2.1   ELIGIBILITY REQUIREMENTS ......................................................................................... 17
2.2   ENTRY DATE ..................................................................................................................... 17
2.3   WAIVER OF PARTICIPATION .......................................................................................... 18
2.4   PARTICIPATION UPON REEMPLOYMENT ...................................................................... 18
2.5   EXCLUSION OF ELIGIBLE EMPLOYEE ........................................................................... 18
2.6   INCLUSION OF INELIGIBLE EMPLOYEE ........................................................................ 18

**ARTICLE 3** ................................................................................................................................. 19
**CONTRIBUTIONS AND ALLOCATIONS** ................................................................................... 19
3.1   EMPLOYER CONTRIBUTIONS ........................................................................................ 19
3.2   ALLOCATION OF EMPLOYER CONTRIBUTIONS ............................................................ 20
3.3   ALLOCATION OF EARNINGS AND LOSSES ................................................................... 20
3.4   ALLOCATION OF FORFEITURES ..................................................................................... 20
3.5   TOP HEAVY MINIMUM ALLOCATION .............................................................................. 21
3.6   ROLLOVER CONTRIBUTIONS ......................................................................................... 22
3.7   VOLUNTARY EMPLOYEE CONTRIBUTIONS .................................................................. 23

**ARTICLE 4** ................................................................................................................................. 24
**PLAN BENEFITS** ...................................................................................................................... 24
4.1   BENEFIT UPON NORMAL RETIREMENT ........................................................................ 24
4.2   BENEFIT UPON LATE RETIREMENT ............................................................................... 24
4.3   BENEFIT UPON DEATH ................................................................................................... 24
4.4   BENEFIT UPON DISABILITY ............................................................................................ 24
4.5   BENEFIT UPON TERMINATION ....................................................................................... 24
4.6   DETERMINATION OF VESTED INTEREST ...................................................................... 25

**ARTICLE 5** ................................................................................................................................. 26
**DISTRIBUTION OF BENEFITS** ................................................................................................. 26
5.1   BENEFIT UPON RETIREMENT ........................................................................................ 26
5.2   BENEFIT UPON DEATH ................................................................................................... 26
5.3   DISABILITY BENEFITS ..................................................................................................... 27
5.4   BENEFIT UPON TERMINATION ....................................................................................... 28
5.5   CASH-OUT OF BENEFITS ................................................................................................ 28
5.6   RESTRICTIONS ON IMMEDIATE DISTRIBUTIONS ........................................................ 29
5.7   RESTORATION OF FORFEITED ACCOUNT BALANCE ................................................... 30
5.8   SPOUSAL CONSENT REQUIREMENTS .......................................................................... 31
5.9   APPLICATION OF CODE §401(a)(9) REQUIREMENTS ................................................... 33
5.10  STATUTORY COMMENCEMENT OF BENEFITS ............................................................ 33
5.11  SEGREGATION OF BENEFIT BEFORE DISTRIBUTION ................................................. 33
5.12  DISTRIBUTION IN EVENT OF INCAPACITY ................................................................... 33
5.13  MISSING PARTICIPANTS AND UNCLAIMED BENEFITS ................................................ 33
5.14  DIRECT ROLLOVERS ....................................................................................................... 35
5.15  DISTRIBUTION OF PROPERTY ....................................................................................... 35
5.16  FINANCIAL HARDSHIP DISTRIBUTIONS ....................................................................... 35
5.17  IN-SERVICE DISTRIBUTIONS ......................................................................................... 35

**ARTICLE 6** ................................................................................................................................. 36
**CODE §415 LIMITATIONS** ........................................................................................................ 36
6.1   MAXIMUM ANNUAL ADDITION ........................................................................................ 36
6.2   ADJUSTMENTS TO MAXIMUM ANNUAL ADDITION ...................................................... 36
6.3   MULTIPLE PLANS AND MULTIPLE EMPLOYERS .......................................................... 37
6.4   ADJUSTMENT FOR EXCESSIVE ANNUAL ADDITIONS ................................................. 37
6.5   MULTIPLE PLAN REDUCTION ......................................................................................... 37

**ARTICLE 7** ................................................................................................................................. 40
**DUTIES OF THE TRUSTEE** ..................................................................................................... 40
7.1   APPOINTMENT, RESIGNATION, REMOVAL AND SUCCESSION ................................... 40
7.2   INVESTMENT ALTERNATIVES OF THE TRUSTEE ........................................................ 40
7.3   VALUATION OF THE TRUST FUND ................................................................................. 42
7.4   COMPENSATION AND EXPENSES .................................................................................. 43

AIG_00000370

|       |                                                              |    |
|-------|--------------------------------------------------------------|----|
| 7.5   | PAYMENTS FROM THE TRUST FUND                                  | 43 |
| 7.6   | PAYMENT OF TAXES                                              | 43 |
| 7.7   | ACCOUNTS, RECORDS AND REPORTS                                 | 43 |
| 7.8   | EMPLOYMENT OF AGENTS AND COUNSEL                              | 43 |
| 7.9   | DIVISION OF DUTIES AND INDEMNIFICATION                       | 44 |
| 7.10  | APPOINTMENT OF INVESTMENT MANAGER                            | 45 |
| 7.11  | ASSIGNMENT AND ALIENATION OF BENEFITS                        | 45 |
| 7.12  | EXCLUSIVE BENEFIT RULE                                        | 45 |
| 7.13  | PURCHASE OF INSURANCE                                         | 46 |
| 7.14  | LOANS TO PARTICIPANTS                                         | 47 |
| 7.15  | DIRECTED INVESTMENT ACCOUNTS                                  | 49 |
| 7.16  | SUPERSEDING TRUST OR CUSTODIAL AGREEMENT                      | 51 |

**ARTICLE 8** ................................................................................ **52**
**DUTIES OF THE ADMINISTRATOR** .......................................... **52**

| 8.1   | APPOINTMENT, RESIGNATION, REMOVAL AND SUCCESSION            | 52 |
| 8.2   | POWERS AND DUTIES OF THE ADMINISTRATOR                      | 52 |
| 8.3   | APPOINTMENT OF ADMINISTRATIVE COMMITTEE                     | 52 |
| 8.4   | FINALITY OF ADMINISTRATIVE DECISIONS                        | 52 |
| 8.5   | MULTIPLE ADMINISTRATORS                                     | 52 |
| 8.6   | COMPENSATION AND EXPENSES                                   | 52 |
| 8.7   | APPOINTMENT OF AGENTS AND COUNSEL                           | 53 |
| 8.8   | CORRECTING ADMINISTRATIVE ERRORS                           | 53 |
| 8.9   | PROMULGATING NOTICES AND PROCEDURES                         | 53 |
| 8.10  | CLAIMS PROCEDURES                                           | 53 |
| 8.11  | QUALIFIED DOMESTIC RELATIONS ORDERS                         | 56 |

**ARTICLE 9** ................................................................................ **58**
**AMENDMENT, TERMINATION AND MERGER** .......................... **58**

| 9.1   | AMENDMENT OF THE PLAN                                       | 58 |
| 9.2   | TERMINATION OF PLAN BY SPONSOR                              | 58 |
| 9.3   | TERMINATION OF PARTICIPATION BY ADOPTING EMPLOYER           | 59 |
| 9.4   | MERGER OR CONSOLIDATION                                     | 59 |

**ARTICLE 10** ............................................................................. **60**
**MISCELLANEOUS PROVISIONS** ............................................. **60**

| 10.1  | NO CONTRACT OF EMPLOYMENT                                   | 60 |
| 10.2  | TITLE TO ASSETS                                             | 60 |
| 10.3  | QUALIFIED MILITARY SERVICE                                  | 60 |
| 10.4  | BONDING OF FIDUCIARIES                                      | 60 |
| 10.5  | SEVERABILITY OF PROVISIONS                                  | 60 |
| 10.6  | GENDER AND NUMBER                                           | 60 |
| 10.7  | HEADINGS AND SUBHEADINGS                                    | 60 |
| 10.8  | LEGAL ACTION                                                | 60 |
| 10.9  | QUALIFIED PLAN STATUS                                       | 61 |
| 10.10 | MAILING OF NOTICES TO ADMINISTRATOR, EMPLOYER OR TRUSTEE    | 61 |
| 10.11 | PARTICIPANT NOTICES AND WAIVERS OF NOTICES TO PARTICIPANTS  | 61 |
| 10.12 | NO DUPLICATION OF BENEFITS                                  | 61 |
| 10.13 | EVIDENCE FURNISHED CONCLUSIVE                               | 61 |
| 10.14 | RELEASE OF CLAIMS                                           | 61 |
| 10.15 | MULTIPLE COPIES OF PLAN AND/OR TRUST                        | 61 |
| 10.16 | LIMITATION OF LIABILITY AND INDEMNIFICATION                 | 61 |

AIG_00000371

## AMERICAN INVESTMENT GROUP OF NEW YORK, L.P.

## PENSION PLAN

**THIS AGREEMENT** is made and entered into as of the _29th_ day of _October_, _2002_, between **AMERICAN INVESTMENT GROUP OF NEW YORK, L.P.** (hereafter called the Employer) and **ROBERT CREMA and ELAINA CREMA** (hereafter collectively referred to as the Trustee).

## W I T N E S S E T H :

**WHEREAS**, the Sponsor wishes to establish a profit sharing plan in order to provide retirement and other incidental benefits to Employees who are eligible to participate therein;

**NOW, THEREFORE,** effective January 1, 2002, the Sponsor establishes this profit sharing plan and creates this trust (which plan and trust are hereafter referred to as the "Plan") in order to comply with the requirements of the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code of 1986, as amended by the Uruguay Round Agreements Act, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Internal Revenue Service Restructuring and Reform Act of 1998, the Community Renewal Tax Relief Act of 2000, and all applicable rulings and regulations issued thereunder, and the Trustee accepts the Plan under the following terms and conditions:

-1-

AIG_00000372

# ARTICLE 1
## DEFINITIONS

**1.1    ADMINISTRATOR**

The term Administrator means the Employer unless another Administrator is appointed by the Employer pursuant to the provisions of Section 8.1 of the Plan.

**1.2    ADOPTING EMPLOYER**

The term Adopting Employer means any entity that adopts this Plan with the consent of the Sponsor. An Employee's transfer to or from any Employer or Adopting Employer will not affect his or her Participant's Account balance, total Years of Service (or Periods of Service) and total Years of Service as a Participant (or Periods of Service as a Participant). All Adopting Employers will be subject to the following provisions:

(a)    **Multiple Employer Plan Provisions Under Code §413(c):** Notwithstanding any other provision in the Plan to the contrary, unless the Plan is a collectively bargained plan described in Regulation §1.413-1(a), the following provisions will apply with respect to any Adopting Employer that is not an Affiliated Employer of the Sponsor:

(1)    **Instances Of Separate Employer Testing:** Employees of any such Adopting Employer will be treated separately for purposes of testing under the provisions of Code §401(a)(4), Code §401(k), Code §401(m) and, if the Sponsor and the Adopting Employer do not share Employees, Code §416. Furthermore, the terms of Code §410(b) will be applied separately on an employer-by-employer basis by the Sponsor (and the Adopting Employers which are part of the Affiliated Group which includes the Sponsor) and each Adopting Employer that is not an Affiliated Employer of the Sponsor, taking into account the generally applicable rules described in Code §401(a)(5), §414(b) and §414(c).

(2)    **Instances Of Single Employer Testing:** Employees of the Adopting Employer will be treated as part of a single employer plan for purposes of eligibility to participate under Article 2 and under the provisions of Code §410(a). Furthermore, the terms of Code §411 relating to Vesting will be applied as if all Employees of all such Adopting Employers and the Sponsor were employed by a single employer, except that the rules regarding Breaks in Service will be applied under such regulations as may be prescribed by the Secretary of Labor.

(3)    **Common Trust:** Contributions made by any such Adopting Employer will be held in a common Trust Fund with contributions made by the Sponsor, and all such contributions will be available to pay the benefits of any Participant or Beneficiary who is an Employee of the Sponsor or any such Adopting Employer.

(4)    **Common Disqualification Provision:** The failure of either the Sponsor or any such Adopting Employer to satisfy the qualification requirements under Code §401(a), as modified by the provisions of Code §413(c), will result in the disqualification of the Plan for all such Employers maintaining the Plan.

(b)    **Termination of Adoption:** An Adopting Employer may terminate participation in the Plan by delivering written notice to the Sponsor, the Administrator and the Trustee; but in accordance with Article 9, only the Sponsor can terminate the Plan. If a request for and approval of a transfer of assets from this Plan to any successor qualified retirement plan

**-2-**

CONFIDENTIAL                                                                    AIG_00000373

maintained by the Adopting Employer or its successor is not made in accordance with Section 9.3, Participants who are no longer Employees because the Adopting Employer terminates Plan participation will only be entitled to the commencement of their benefits (1) in the case of Participants who are no longer Employees of an Adopting Employer that is an Affiliated Employer of the Sponsor, in accordance with Article 5 after their death, retirement, Disability or Termination of Employment from the Adopting Employer or former Adopting Employer; and (2) in the case of Participants who are no longer Employees of an Adopting Employer that is not an Affiliated Employer of the Sponsor, within a reasonable time thereafter as if the Plan had been terminated under Section 9.2.

**1.3    AFFILIATED EMPLOYER**

The term Affiliated Employer means any of the following of which the Employer is a part: (1) a controlled group of corporations as defined in Code §414(b); (2) a trade or business (whether or not incorporated) under common control under Code §414(c); (3) any organization (whether or not incorporated) which is a member of an affiliated service group under Code §414(m); and (4) any other entity required to be aggregated under Code §414(o).

**1.4    AGE**

The term Age means an Employee's actual attained age.

**1.5    ANNIVERSARY DATE**

The term Anniversary Date means December 31st.

**1.6    ANNUITY STARTING DATE**

The term Annuity Starting Date means the first day of the first period for which an amount is paid as an annuity, or, in the case of a benefit not payable as an annuity, the first day all events have occurred which entitle the Participant to such benefit. The first day of the first period for which a benefit is to be received by reason of Disability will be treated as the Annuity Starting Date only if such benefit is not an auxiliary benefit.

**1.7    BENEFICIARY**

The term Beneficiary means the recipient designated by the Participant to receive the Plan benefits payable upon the death of the Participant, or the recipient designated by a Beneficiary to receive any benefits which may be payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled. All such Beneficiary designations will be made in accordance with the following provisions:

(a)    **Beneficiary Designations By A Participant:** Subject to the provisions of Section 5.8 regarding the rights of a Participant's Spouse, each Participant may designate a Beneficiary on a form supplied by the Administrator, and may change or revoke that designation by filing written notice with the Administrator. If a Participant completes or has completed a Beneficiary designation form in which the Participant designates his or her Spouse as the Beneficiary, and the Participant and the Participant's Spouse are legally divorced subsequent to the date of such designation, then the designation of such Spouse as a Beneficiary hereunder will be deemed null and void unless the Participant, subsequent to the legal divorce, reaffirms the designation by completing a new Beneficiary designation form. In the absence of a written Beneficiary designation form, the Participant will be deemed to have designated the following Beneficiaries in the following order: (1) the Participant's Spouse, if then living; (2) the Participant's issue, per stirpes; and (3) the Participant's estate.

**-3-**

AIG_00000374

(b) **Beneficiary Designations By A Beneficiary:** In the absence of a Beneficiary designation or other directive from the deceased Participant to the contrary, any Beneficiary may name his or her own Beneficiary in accordance with Section 5.2(e) to receive any benefits which may be payable in the event of the Beneficiary's death prior to the receipt of all the Participant's death benefits to which the Beneficiary was entitled.

(c) **Beneficiaries Considered Contingent Until Death Of Participant:** Notwithstanding any provision in this Section, any Beneficiary named hereunder will be considered a contingent Beneficiary until the death of the Participant (or Beneficiary, as the case may be), and until such time will have no rights granted to Beneficiaries under the Plan.

**1.8    BREAK IN SERVICE**

The term Break in Service means a Plan Year during which an Employee does not complete more than 500 Hours of Service. If a Plan Year is less than 12 months, the 500 Hours of Service requirement will be proportionately reduced.

**1.9    CODE**

The term Code means the Internal Revenue Code of 1986, as amended, and the regulations and rulings promulgated thereunder by the Internal Revenue Service.

**1.10    CODE §3401 COMPENSATION**

The term Code §3401 Compensation means wages within the meaning of Code §3401(a) that are actually paid or made available in gross income for the purposes of income tax withholding at the source but determined without regard to any rules under Code §3401 that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code §3401(a)(2)).

**1.11    CODE §415 COMPENSATION**

The term Code §415 Compensation means Earned Income, wages, salaries, fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer maintaining the Plan, including, but not limited to, commissions paid salespersons, compensation for services based on a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements, or other expense allowances under a non-accountable plan as described in IRS regulation §1.62-2(c). A Participant's Code §415 Compensation will be determined subject to the following provisions:

(a) **Amounts Excluded From Code §415 Compensation:** Code §415 Compensation does not include (1) Employer contributions to a plan of deferred compensation which are not includible in gross income for the taxable year in which contributed, or Employer contributions to a simplified employee pension plan to the extent such contributions are deductible by the Employee, or any distributions from a plan of deferred compensation; (2) amounts realized from a non-qualified stock option, or when restricted stock or property held by the Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture; (3) amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and (4) other amounts which receive special tax benefits, or contributions made by an Employer (whether or not under a salary reduction agreement) towards the purchase of an annuity described in Code §403(b) (whether or not the amounts are excludible from an Employee's gross income).

(b) **Treatment Of Elective Deferrals And Other Amounts:** For Limitation Years beginning on or after January 1, 1998, Code §415 Compensation will include any elective deferrals

**-4-**

AIG_00000375

as defined in Code §402(g)(3), and any amounts contributed or deferred at the election of the Employee that were not includible in the gross income by reason of Code §125 or §457. Code §415 Compensation will also include elective amounts that are not includible in the gross income of the Employee by reason of Code §132(f)(4) for Limitation Years beginning on or after January 1, 2001 (or if elected by the Administrator on a non-discriminatory basis, any earlier Limitation Year beginning on or after January 1, 1998).

**1.12    COMPENSATION**

The term Compensation means a Participant's Form W-2 Compensation actually paid during a Compensation Determination Period, determined subject to the following provisions:

(a)    **Compensation Determination Period:** For purposes hereof, the term Compensation Determination Period means the Plan Year.

(b)    **Treatment Of Elective Deferrals:** Employer contribution amounts made pursuant to a salary reduction agreement which are not currently includible in the gross income of an Employee by reason of Code §125, §402(e)(3), §402(h)(1)(B), or §403(b) will be included in determining Compensation. In addition, if elected by the Administrator on a non-discriminatory basis, Compensation will also include elective amounts that are not includible in the gross income of the Employee by reason of Code §132(f)(4), beginning with the Plan Year elected by the Administrator but not earlier than the Plan Year beginning on or after January 1, 1998.

(c)    **Amounts Received Prior To Becoming A Participant:** Amounts that would otherwise be considered Compensation under any other provision of this Section but are received prior to the date an Employee becomes a Participant will be counted as Compensation.

(d)    **Compensation Received While A Member Of An Ineligible Class Of Employees:** Compensation will include any amount received while an Employee is a member of an ineligible class of Employees as described in Section 2.1(c).

(e)    **Compensation Used For Top Heavy Purposes:** Notwithstanding anything in this Section to the contrary, in determining Top Heavy allocations under Section 3.5, the term Compensation means the Form W-2 Compensation received by an Employee during an entire Compensation Determination Period.

(f)    **Compensation of Owner-Employees and Shareholder-Employees:** For purposes of this Plan, the Compensation of an Owner-Employee or a Self-Employed Individual will equal his or her Earned Income up to the dollar limit described in the next paragraph.

(g)    **Dollar Limitation On Compensation:** Notwithstanding anything in this Section to the contrary, a Participant's Compensation for any Compensation Determination Period will not exceed the limitation set forth in Code §401(a)(17) as in effect for that determination period. If a Compensation Determination Period consists of fewer than 12 months, the Code §401(a)(17) limitation will be multiplied by a fraction, the numerator of which is the number of months in that determination period, and the denominator of which is 12.

(h)    **Compensation Limitation Election Available To Certain Participants:** Except for purposes of determining Top Heavy allocation requirements under Section 3.5 or the Code §415 limitations under Article 6, any Participant who is a Key Employee, an Owner-Employee, a Self-Employed Individual, or a Highly Compensated Employee may

-5-

elect for any Plan Year, on a form prescribed by the Administrator to limit Compensation for all purposes under this Plan.

**1.13    DISABILITY**
The term Disability means a physical or mental condition arising after an Employee has become a Participant that totally and permanently prevents the Participant from performing his or her customary duties for the Employer. The determination as to whether a Participant has suffered a Disability will be made by a physician acceptable to the Administrator.

**1.14    EARLY RETIREMENT AGE**
There is no Early Retirement Age under the Plan.

**1.15    EARNED INCOME**
The term Earned Income means net earnings from self-employment in the trade or business with respect to which the Plan is established and for which personal services of the individual are a material income-producing factor. Net earnings (1) will be determined without regard to items not included in gross income and the deductions allocable thereto, and for taxable years beginning after December 31, 1989, with regard to the deduction allowed by Code §164(f); and (2) will be reduced by deductible Employer contributions to a qualified retirement plan for taxable years beginning after December 31, 1989.

**1.16    ELIGIBLE PARTICIPANT**
The term Eligible Participant means a Participant eligible under this Section to receive an allocation of Employer contributions and Forfeitures allocable for a Plan Year. Any Participant who is an Employee on the last day of the Plan Year and is in an eligible class of Employees as described in Section 2.1(c) will be an Eligible Participant under this Section. Any Participant who terminates employment with the Employer before the last day of the Plan Year will only be an Eligible Participant for that Plan Year in accordance with the following provisions:

(a)    **Retiring Participants:** A Participant who terminates employment before the last day of the Plan Year because of retirement after Normal Retirement Age will be an Eligible Participant for that Plan Year if he or she completes at least 501 Hours of Service during that Plan Year, provided such Participant is in an eligible class of Employees as described in Section 2.1(c).

(b)    **Deceased Participants:** A Participant who terminates employment before the last day of the Plan Year because of death will be an Eligible Participant for that Plan Year if he or she completes at least 501 Hours of Service during that Plan Year, provided such Participant is in an eligible class of Employees as described in Section 2.1(c).

(c)    **Disabled Participants:** A Participant who terminates employment before the last day of the Plan Year because of Disability will be an Eligible Participant for that Plan Year if he or she completes at least 501 Hours of Service during that Plan Year, provided such Participant is in an eligible class of Employees as described in Section 2.1(c).

(d)    **Terminated Participants:** A Participant who terminates employment before the last day of the Plan Year for reasons other than retirement, death or Disability will be an Eligible Participant for that Plan Year if he or she completes at least 501 Hours of Service during that Plan Year, provided such Participant is in an eligible class of Employees as described in Section 2.1(c).

-6-

**1.17   EMPLOYEE**

The term Employee means (a) any person reported on the payroll records of the Employer as an employee who is deemed by the Employer to be a common law employee; (b) except for determining eligibility to participate in this Plan, any person reported on the payroll records of an Affiliated Employer of the Sponsor or an Adopting Employer as an employee who is deemed by the Affiliated Employer to be a common law employee, even if the Affiliated Employer is not an Adopting Employer; (c) any Self-Employed Individual who derives Earned Income from the Employer; (d) any Owner-Employee; and (e) any person who is considered a Leased Employee but who (1) is not covered by a plan described in Code §414(n)(5), or (2) is covered by a plan described in Code §414(n)(5), but Leased Employees constitute more than 20% of the Employer's non-highly compensated workforce. However, the term Employee will not include any individual who is not reported on the payroll records of the Employer or an Affiliated Employer as a common law employee. If such person is later determined by the Sponsor or by a court or governmental agency to be or to have been an Employee, he or she will only be eligible for participation prospectively and may participate in the Plan as of the next entry date in Section 2.2 following such determination and after the satisfaction of all other eligibility requirements.

**1.18   EMPLOYER**

The term Employer means the Sponsor, any Adopting Employer, and any direct predecessor business entity of the Sponsor or an Adopting Employer that was or would have been considered an Affiliated Employer of the Sponsor or an Adopting Employer. Where applicable, such as determining Hours of Service, Periods of Service and Years of Service, the term Employer or Adopting Employer will also mean any business entity that was an Adopting Employer. As to any Employee, the term Employer at the time of reference means the employer of such Employee.

**1.19   ERISA**

The term ERISA means the Employee Retirement Income Security Act of 1974, as amended, and the regulations and rulings promulgated thereunder.

**1.20   FIDUCIARY**

The term Fiduciary means any individual or entity which exercises any discretionary authority or control over the management of the Plan or over the disposition of the assets of the Plan; renders investment advice for a fee or other compensation (direct or indirect); has any discretionary authority or responsibility over Plan administration; or acts to carry out a fiduciary responsibility, when designated by a named Fiduciary pursuant to authority granted by the Plan; subject, however, to any exception granted directly or indirectly by the provisions of ERISA or any applicable regulations. The Sponsor is the "named Fiduciary" for purposes of ERISA §402(a)(2).

**1.21   FISCAL YEAR**

The term Fiscal Year means the Employer's accounting year beginning January 1st and ending the following December 31st.

**1.22   FORFEITURE**

The term Forfeiture means the amount by which a Participant's Account balance exceeds his or her Vested Interest upon the earlier to occur of (1) the date the Participant receives a distribution of his or her Vested Interest under Article 5; or (2) the date the Participant incurs 5 consecutive Breaks in Service after Termination of Employment. No Forfeitures will occur solely as a result of the withdrawal of a Participant's own contributions to the Plan or a Participant's transfer to an Affiliated Employer or Adopting Employer. All Forfeitures will be placed in the Forfeiture Account pending allocation pursuant to Section 3.4.

**-7-**

CONFIDENTIAL                                                                   AIG_00000378

**1.23    FORM W-2 COMPENSATION**
The term Form W-2 Compensation means wages within the meaning of Code §3401(a) and all other payments of compensation actually paid or made available in gross income to an Employee by the Employer in the course of the Employer's trade or business for which the Employer is required to furnish the Employee a Form W-2 under Code §6041(d), §6051(a)(3) and §6052. Compensation must be determined without regard to any rules under Code §3401(a) limiting remuneration included in wages based on the nature or location of the employment or services performed (such as the exception for agricultural labor in Code §3401(a)(2)).

**1.24    HCE**
The term HCE means a Highly Compensated Employee.

**1.25    HIGHLY COMPENSATED EMPLOYEE**
The term Highly Compensated Employee means, for Plan Years beginning after December 31, 1996, any Employee who during the Plan Year or during the look-back year was a 5% owner as defined in Code §416(i)(1), or who for the look-back year had Code §415 Compensation in excess of $80,000 as adjusted in accordance with Code §415(d) (except that the base year will be the calendar quarter ending September 30, 1996). In determining who is a highly compensated former Employee, the rules for determining Highly Compensated Employee status as in effect for the Plan Year or look-back year for which the determination is being made (in accordance with temporary regulation 1.414(q)-1T, A-4 and Notice 97-45) will be applied. In determining if an Employee is a Highly Compensated Employee for Plan Years beginning in 1997, the amendments to Code §414(q) are deemed to have been in effect for years beginning in 1996. If the Employer maintains more than one qualified retirement plan, the definition of Highly Compensated Employee must be consistently applied to all such plans.

(a)    **Determination Of Look-Back Year:** The look-back year will be the 12 month period immediately preceding the Plan Year for which the determination is being made.

(b)    **Top Paid Group Election:** In determining if an Employee is a Highly Compensated Employee based on Code §415 Compensation, the top paid group election set forth in Code §414(q)(3) is not being applied by this Plan.

**1.26    HOUR OF SERVICE**
The term Hour of Service means, with respect to any provision of the Plan in which service is determined by reference to an Employee's Periods of Service, each hour for which an Employee is paid, or is entitled to payment, by the Employer or an Affiliated Employer for the performance of duties. With respect to any provision of the Plan in which service is determined by reference to an Employee's Years of Service, the term Hour of Service means the following:

(a)    **Determination Of Hours:** The term Hour of Service means (1) each hour an Employee is paid, or entitled to payment, for the performance of duties for the Employer or an Affiliated Employer, which will be credited to the Employee for the computation period in which the duties are performed; (2) each hour for which an Employee is paid, or entitled to payment, by the Employer or an Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, except that no more than 501 hours will be credited under this clause (2) for any single continuous period (whether or not such period occurs in a single computation period); and (3) each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer or an Affiliated Employer, except that the same hours will not be credited both

-8-

AIG_00000379

under clause (1) or clause (2) and under this clause (3), and these hours will be credited for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made. Hours of Service will be calculated and credited pursuant to DOL regulation 2530.200b-2(b) and (c), which are incorporated herein by reference.

(b)  **Maternity Or Paternity Leave:** In determining if a Break in Service for participation and vesting has occurred in a computation period, an individual on Maternity or Paternity Leave will receive credit for up to 501 Hours of Service which would otherwise have been credited but for such absence, or in any case in which such Hours of Service cannot be determined, 8 Hours of Service per day of such absence. Hours of Service credited for Maternity or Paternity Leave will be credited in the computation period in which the absence begins if the crediting is necessary to prevent a Break in Service in that period, or in all other cases, in the following computation period.

(c)  **Use Of Equivalencies:** Notwithstanding paragraph (a), the Administrator may elect for all Employees or for one or more different classifications of Employees (provided such classifications are reasonable and are consistently applied) to apply one or more of the following equivalency methods in determining the Hours of Service of an Employee paid on an hourly or salaried basis. Under such equivalency methods, an Employee will be credited with either (1) 190 Hours of Service for each month in which he or she is paid or entitled to payment for at least one Hour of Service; or (2) 95 Hours of Service for each semi-monthly period in which he or she is paid or entitled to payment for at least one Hour of Service; or (3) 45 Hours of Service for each week in which he or she is paid or entitled to payment for at least one Hour of Service; or (4) 10 Hours of Service for each day in which he or she is paid or entitled to payment for at least one Hour of Service.

## 1.27    KEY EMPLOYEE

The term Key Employee means any Employee, Former Employee, deceased Employee, or Beneficiary who at any time during the Plan Year containing the Determination Date for the Plan Year in question or any of the prior 4 Plan Years was one of the following:

(a)  **Officers:** An officer of the Employer whose Code §415 Compensation exceeds 50% of the amount in effect under Code §415(b)(1)(A), except that no more than fifty Employees (or, if lesser, the greater of three or 10% of the Employees) will be treated as officers.

(b)  **Owners:** An owner (or was considered an owner under Code §318) of one of the ten largest interests in the Employer whose Code §415 Compensation exceeds 100% of the dollar limitation in effect under Code §415(c)(1)(A), but if two Employees own the same interest in the Employer, the Employee with the greater annual Code §415 Compensation will be treated as owning a larger interest; or a 5% owner of the Employer as defined in Code §416(i)(1)(B)(i); or a 1% owner of the Employer as defined in Code §416(i)(1)(B)(ii) whose annual Code §415 Compensation is more than $150,000.

## 1.28    LEASED EMPLOYEE

The term Leased Employee means, for Plan Years beginning on or after January 1, 1997, any person within the meaning of Code §414(n)(2) and §414(o) who is not reported on the payroll records of the Employer as a common law employee and who provides services to the Employer if (a) the services are provided under an agreement between the Employer and a leasing organization; (b) the person has performed services for the Employer or for the Employer and related persons as determined under Code §414(n)(6) on a substantially full time basis for a period of at least one year; and (c) the services are performed under the primary direction and

**-9-**

AIG_00000380

control of the Employer. Contributions or benefits provided to a Leased Employee by the leasing organization attributable to services performed for the Employer will be treated as provided by the Employer. A Leased Employee will not be considered an Employee of the recipient if he is covered by a money purchase plan providing (a) a non-integrated Employer contribution rate of at least 10% of Code §415 Compensation, including amounts contributed by the Employer pursuant to a salary reduction agreement which are excludible from the Leased Employee's gross income under a cafeteria plan covered by Code §125, a cash or deferred plan under Code §401(k), a SEP under Code §408(k) or a tax-deferred annuity under Code §403(b), and also including, for Plan Years beginning on or after January 1, 2001, any elective amounts that are not includible in the gross income of the Leased Employee because of Code §132(f)(4); (b) immediate participation; and (c) full and immediate vesting. This exclusion is only available if Leased Employees do not constitute more than 20% of the recipient's non-highly compensated work force.

**1.29    LIMITATION YEAR**
The term Limitation Year means the Plan Year.

**1.30    MATERNITY OR PATERNITY LEAVE**
The term Maternity or Paternity Leave means that an Employee is absent from work because of the Employee's pregnancy; because of the birth of the Employee's child; because of the placement of a child with the Employee in connection with the adoption of such child by the Employee; or because of the need to care for such child for a period beginning immediately following the child's birth or placement as set forth above.

**1.31    NHCE**
The term NHCE means a Non-Highly Compensated Employee.

**1.32    NON-HIGHLY COMPENSATED EMPLOYEE**
The term Non-Highly Compensated Employee means any Employee who is not a Highly Compensated Employee.

**1.33    NON-KEY EMPLOYEE**
The term Non-Key Employee means any Employee who is not a Key Employee.

**1.34    NORMAL RETIREMENT AGE**
The term Normal Retirement Age means the later of the date a Participant reaches Age 65 or the 5th anniversary of the date he or she became a Participant. There is no mandatory retirement age.

**1.35    NORMAL RETIREMENT DATE**
The term Normal Retirement Date means the date a Participant reaches Normal Retirement Age.

**1.36    OWNER-EMPLOYEE**
The term Owner-Employee means (1) in the case of an Employer or Affiliated Employer which is an unincorporated trade or business, an individual who owns the entire interest in such Employer or Affiliated Employer; and (2) in the case of an Employer or Affiliated Employer which is a partnership, an individual who owns more than 10% of either the capital interest or the profit interest in such Employer or Affiliated Employer.

**1.37    PARTICIPANT**
The term Participant means any Employee who has met the eligibility and participation requirements of the Plan. However, an individual who is no longer an Employee will not be deemed a Participant if his or her entire Plan benefit (a) is fully guaranteed by an insurance company and is legally enforceable at the sole choice of such individual against such insurance company, provided that a contract, Policy, or certificate describing the benefits to which such

**-10-**

AIG_00000381

individual is entitled under the Plan has been issued to such individual; or (b) is paid in a lump sum distribution which represents such individual's entire interest in the Plan; or (c) is paid in some other form of distribution and the final payment thereunder has been made.

**1.38  PARTICIPANT'S ACCOUNT**

The term Participant's Account means the account to which is credited a Participant's share of Employer contributions, Forfeitures (if any) that are allocated under Section 3.4, investment earnings or losses allocated under Section 3.3, and the proceeds of insurance Policies (if any) that are purchased on a Participant's life under Section 7.13.

**1.39  PERMISSIVE AGGREGATION GROUP**

The term Permissive Aggregation Group means a Required Aggregation Group plus any Employer plan(s) which when considered as a group with the Required Aggregation Group would continue to satisfy Code §401(a)(4) and §410.

**1.40  PLAN**

The term Plan means this plan and trust agreement, which is named the American Investment Group of New York, L.P. Pension Plan.

**1.41  PLAN YEAR**

The term Plan Year means the Plan's accounting year beginning January 1st and ending the following December 31st.

**1.42  POLICY**

The term Policy means a life insurance policy or annuity contract purchased pursuant to the provisions of Section 7.13 of the Plan.

**1.43  QUALIFIED JOINT AND SURVIVOR ANNUITY**

The term Qualified Joint and Survivor Annuity means an immediate annuity for the life of the Participant with a survivor benefit for the life of the Participant's Spouse that is not less than 50% or more than 100% of the annuity payable during the joint lives of the Participant and his or her Spouse and is the benefit that can be purchased with the Participant's Vested Aggregate Account. The survivor benefit will be 50% unless a higher percentage is elected by the Participant.

**1.44  QUALIFIED PRERETIREMENT SURVIVOR ANNUITY**

The term Qualified Preretirement Survivor Annuity means a survivor annuity for the life of a deceased Participant's surviving Spouse that is equal to the amount of benefit that can be purchased by 50% of the deceased Participant's Vested Aggregate Account balance determined at the date of death. In determining a Participant's Vested Aggregate Account balance for purposes of this Section, any security interest held by the Plan because of a loan outstanding to the Participant will be taken into consideration.

**1.45  REQUIRED AGGREGATION GROUP**

The term Required Aggregation Group means (a) each qualified deferred compensation Plan of the Employer in which at least one Key Employee participates or participated at any time during the determination period (regardless of whether the plan has terminated), and (b) any other qualified deferred compensation plan of the Employer which enables a plan described in (a) to meet the requirements of Code §401(a)(4) or §410.

**1.46  REQUIRED BEGINNING DATE**

The term Required Beginning Date means for a Participant who is not a 5% owner, April 1st of the calendar year following the later of the calendar year in which the Participant reaches Age 70½ or the calendar year in which the Participant actually retires. For a Participant who is a 5%

**-11-**

CONFIDENTIAL

AIG_00000382

owner, the term Required Beginning Date means April 1st of the calendar year following the calendar year in which the Participant reaches Age 70½. A Participant will be treated as a 5% owner if he or she is a 5% owner as defined in Code §416 at any time during the Plan Year ending with or within the calendar year in which such Participant reaches Age 70½. Once distributions have begun to a 5% owner, they must continue even if the Participant ceases to be a 5% owner in a subsequent year.

**1.47   ROLLOVER ACCOUNT**

The term Rollover Account means the account to which a Participant's Rollover Contributions (if permitted under Section 3.4) are allocated. A Participant will at all times have a 100% Vested Interest in all amounts credited to his or her Rollover Account.

**1.48   ROLLOVER CONTRIBUTION**

The term Rollover Contribution means an amount transferred to this Plan (a) in a trustee to trustee transfer from another qualified plan; (b) from another qualified plan as a distribution eligible for tax free rollover treatment and which is transferred by the Participant to this Plan within 60 days following his receipt thereof; (c) from a conduit individual retirement account if the only assets therein were previously distributed to the Participant by another qualified plan as a distribution eligible for a tax free rollover within 60 days of receipt thereof and earnings on the assets; or (d) from a conduit individual retirement account meeting the requirements of (a) and transferred to this Plan within 60 days of receipt thereof. Any amount that is transferred to this Plan under clause (b) above from another qualified retirement plan which at the time of transfer was not subject to the Qualified Joint and Survivor Annuity and Qualified Pre-retirement Survivor Annuity requirements of Code §401(a)(11), or which is transferred to this Plan under clauses (c) or (d) above from a conduit individual retirement account, will not at any time be subject to the spousal consent requirements as set forth in Section 5.8.

**1.49   SELF-EMPLOYED INDIVIDUAL**

The term Self-Employed Individual means anyone who owns an interest (other than stock) in the Employer and has Earned Income for the Plan Year or who would have had Earned Income but for the fact the Employer had no net profits for the Plan Year.

**1.50   SHAREHOLDER-EMPLOYEE**

The term Shareholder-Employee means, in the case of an Employer or Affiliated Employer which is an electing small business corporation, an individual who is an employee or officer of such electing small business corporation and owns, or is considered as owning within the meaning of Code §318(a)(1), on any day during the taxable year of such corporation, more than 5% of the outstanding stock of the corporation.

**1.51   SPONSOR**

The term Sponsor means American Investment Group of New York, L.P. (and any successor thereto that elects to assume sponsorship of this Plan).

**1.52   SPOUSE**

The term Spouse means the person to whom a Participant is legally married.

**1.53   TERMINATION OF EMPLOYMENT**

The term Termination of Employment means that a Participant has ceased to be an Employee for reasons other than retirement, death, or Disability.

**1.54   TERMINATED PARTICIPANT**

The term Terminated Participant means a Participant who has ceased to be an Employee for reasons other than retirement, death or Disability.

-12-

CONFIDENTIAL

**1.55**    **TOP HEAVY**

The term Top Heavy means for any Plan Year beginning after December 31, 1983 (a) that the Top Heavy Ratio exceeds 60% and the Plan is not part of a Required Aggregation Group or Permissive Aggregation Group; or (b) that the Plan is a part of a Required Aggregation Group but not a Permissive Aggregation Group and the Top Heavy Ratio for the group exceeds 60%; or (c) that the Plan is a part of a Required Aggregation Group and a Permissive Aggregation Group and the Top Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

**1.56**    **TOP HEAVY MINIMUM ALLOCATION**

The term Top Heavy Minimum Allocation means an amount of Employer contributions and Forfeitures equal to 3% of an Employee's Compensation (or such higher or lesser percentage of Compensation as may otherwise be indicated in Section 3.5).

**1.57**    **TOP HEAVY RATIO**

In determining if this Plan is Top Heavy or Super Top Heavy, the Top Heavy Ratio will be determined in accordance with the following provisions:

(a)    **Rule 1:** If the Employer maintains one or more defined contribution plans (including any simplified employee pension plans) and has not maintained any defined benefit plan which during the 5-year period ending on the Determination Date had accrued benefits, the Top Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group is a fraction, the numerator of which is the sum of the account balances of all Key Employees as of the Determination Date (including any part of any account balance distributed during the 5-year period ending on the Determination Date), and the denominator of which is the sum of the account balances (including any part of any account balance distributed during the 5-year period ending on the Determination Date) determined under Code §416 and the regulations thereunder. Both the numerator and the denominator of the Top Heavy Ratio will be increased to reflect any contribution that are not actually made as of the Determination Date but that are required to be taken into account under Code §416 and the regulations thereunder.

(b)    **Rule 2:** If the Employer maintains one or more defined contribution plans (including a simplified employee pension plan) and maintains or has maintained one or more defined benefit plans which during the 5-year period ending on the Determination Date has had any accrued benefits, the Top Heavy Ratio for any Required or Permissive Aggregation Group is a fraction, the numerator of which is the sum of account balances under the aggregated defined contribution plans for all Key Employees determined in accordance with paragraph (a) above, and the present value of accrued benefits under the aggregated defined benefit plans for all Key Employees as of the Determination Date, and the denominator of which is the sum of the account balances under the aggregated defined contribution plans for all Participants, determined in accordance with paragraph (a), and the present value of accrued benefits under the aggregated defined benefit plans for all Participants as of the Determination Date, all determined under Code §416 and the regulations thereunder. The accrued benefits under a defined benefit plan in both the numerator and denominator of the Top Heavy Ratio are increased for any distribution made in the 5-year period ending on the Determination Date.

(c)    **Rule 3:** For purposes of paragraphs (a) and (b), the value of account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the 12-month period ending on the Determination Date, except as provided in Code §416 and the regulations thereunder for the first and second

**-13-**

AIG_00000384

Plan Years of a defined benefit plan. The account balances and accrued benefits will be disregarded for a Participant who (1) is not a Key Employee but who was a Key Employee in a prior year or (2) has not been credited with at least 1 Hour of Service with any Employer maintaining the Plan at any time during the 5-year period ending on the Determination Date. The calculation of the Top Heavy Ratio and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Code §416 and the regulations thereunder. When aggregating plans, the value of accounts and accrued benefits will be calculated with reference to the Determination Date that falls within the same calendar year. The accrued benefit of a Participant other than a Key Employee will be determined under (1) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer, or (2) effective as of the first Plan Year beginning after December 31, 1986, if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Code §411(b)(1)(C). Deductible employee contributions will not be taken into account in determining the Top Heavy Ratio.

(d)     **Definition Of Determination Date:** In determining the Top Heavy Ratio, the term Determination Date means the last day of the preceding Plan Year except for the first Plan Year when the Determination Date means the last day of such first Plan Year.

**1.58     TRUSTEE**
The term Trustee means the person(s) or entity named as trustee or trustees in this Plan, or in any superceding trust under Section 7.16, and any successor to such Trustee or Trustees.

**1.59     TRUST FUND**
The term Trust Fund or Trust means the assets of the Plan.

**1.60     VALUATION DATE**
Except as otherwise provided in paragraph (c) of the definition of Top Heavy Ratio, the term Valuation Date means the date on which the Trustee determines the value of the Trust Fund. The Trust Fund must be valued at least annually as of the last day of the Plan Year, but the Administrator can elect to have all or any portion of the assets of the Trust Fund valued more frequently, including, but not limited to, semi-annually, quarterly, monthly, or daily.

**1.61     VESTED AGGREGATE ACCOUNT**
The term Vested Aggregate Account means the aggregate amount in a Participant's Account, Rollover Account (if any), Voluntary Employee Contribution Account (if any), and any other accounts as the Administrator may determine necessary from time to time, in which the Participant has a Vested Interest.

**1.62     VESTED, VESTED INTEREST or VESTING**
The terms Vested, Vested Interest, and Vesting mean a Participant's nonforfeitable percentage in an account maintained on his or her behalf under the terms of the Plan. A Participant's Vested Interest in his or her Participant's Account will be determined under the provisions of Section 4.6.

**1.63     VOLUNTARY EMPLOYEE CONTRIBUTION**
The term Voluntary Employee Contribution means a non-deductible contribution made to the Plan by a Participant.

**1.64     VOLUNTARY EMPLOYEE CONTRIBUTION ACCOUNT**
The term Voluntary Employee Contribution Account means the account to which a Participant's Voluntary Employee Contributions are allocated. A Participant will at all times have a 100% Vested Interest in all amounts credited to his or her Voluntary Employee Contribution Account.

**-14-**

                                                                                    AIG_00000385

**1.65**   **YEAR OF SERVICE**

The term Year of Service means a 12-consecutive month computation period during which an Employee (or Participant) completes a specified number of Hours of Service for either the Employer or an Affiliated Employer (or any business entity which was an Adopting Employer), determined in accordance with the following provisions:

(a)   **Employment Commencement Date:** As used in this Section, the term Employment Commencement Date means the first day on which an Employee performs an Hour of Service for the Employer or an Affiliated Employer; and the term Reemployment Commencement Date means the first day following a Break in Service on which an Employee performs an Hour of Service for the Employer or an Affiliated Employer.

(b)   **Year Of Service For Eligibility:** In any Plan Year in which the eligibility requirements under Section 2.1 are based on Years of Service, (1) a Year of Service is a 12-consecutive month period during which an Employee is credited with at least 1,000 Hours of Service; and (2) an Employee's initial eligibility computation period will begin on the date he or she is first credited with an Hour of Service (the Employment Commencement Date). The second eligibility computation period will begin on the first day of the Plan Year that begins prior to the first anniversary of the Employee's Employment Commencement Date regardless of whether the Employee is credited with at least 1,000 Hours of Service during the initial computation period. If the Employee is credited with at least 1,000 Hours of Service in both the initial eligibility computation period and in the second eligibility computation period, the Employee will be credited with two Years of Service for eligibility purposes. If any such Plan Year is less than 12 months, the 1,000 Hours of Service requirement set forth herein will be proportionately reduced.

(c)   **Year Of Service For Vesting:** In any Plan Year in which a Participant's Vested Interest under Section 4.6 is based on Years of Service, (1) a Year of Service is a 12-consecutive month period during which an Employee is credited with at least 1,000 Hours of Service; and (2) the Vesting computation period will be the Plan Year. If any such Plan Year is less than 12 consecutive months and the Hours of Service requirement set forth herein is greater than one, such requirement will be proportionately reduced.

(d)   **Prior Service Credit:** An Employee will not receive credit for Years of Service with any other entity for any purpose under the terms of this Plan except as otherwise set forth herein with respect to an Affiliated Employer or an Adopting Employer.

(e)   **Reemployment Before A Break In Service:** If an Employee terminates employment but is re-employed by the Employer before incurring a Break in Service, his or her Years of Service and his or her employment will not be deemed to have been interrupted during such Plan Year and, if he or she was a Participant in the Plan (or otherwise satisfied the requirements for participation specified in Section 2.1), such Employee will remain (or become) a Participant immediately upon his or her re-employment by the Employer. If an Employee was not a Participant in the Plan but otherwise satisfied the requirements for participation specified in the Plan, he or she will become a Participant on the later of the date the Employee would have entered the Plan had he or she not terminated employment with the Employer, or upon the Employee's Reemployment Commencement Date.

(f)   **Reemployment After A Break In Service:** If an Employee terminates employment and is re-employed by the Employer or an Affiliated Employer after incurring a Break in Service, Years of Service completed prior to the Break in Service will be counted. If such

-15-

CONFIDENTIAL

AIG_00000386

Employee was a Participant before incurring the Break in Service, such Employee will be reinstated as a Participant upon his or her Reemployment Commencement Date. If the Employee was not a Participant before the Break in Service but (A) had satisfied the eligibility requirements in Section 2.1, such Employee will enter the Plan as a Participant on the later of his or her Reemployment Commencement Date or the date the Employee would have entered the Plan had he or she not terminated employment with the Employer; or (B) had not satisfied the eligibility requirements in Section 2.1, such Employee will be eligible to enter the Plan as a Participant after satisfaction of any such eligibility requirements, in which event the Employee will enter the Plan as a Participant on the applicable entry date set forth in Section 2.2. In all events, the Employee will receive credit for all Years of Service that were completed prior to the Break in Service.

**-16-**

CONFIDENTIAL

AIG_00000387

## ARTICLE 2
## PLAN PARTICIPATION

**2.1     ELIGIBILITY REQUIREMENTS**

Any Employee who is in an eligible class of Employees as described in paragraph (c), and who for purposes of this Article 2 is hereafter referred to as an Eligible Employee, will become eligible to enter the Plan as a Participant on the applicable entry date described in Section 2.2 in accordance with the following provisions:

(a)     **Special First Year Eligibility Requirements:** For the first Plan Year only, any Eligible Employee who is employed by the Employer on December 31, 2002 will be eligible to enter the Plan as a Participant as of such date. Any other Eligible Employee will become eligible to enter the Plan as a Participant upon satisfying the eligibility requirements set forth in paragraph (b) below.

(b)     **General Eligibility Requirements:** An Eligible Employee who does not satisfy the eligibility requirements in paragraph (a) will enter the Plan as a Participant on the applicable entry date in Section 2.2 upon reaching Age 21 and completing 1 Year of Service. An Employee will be deemed to have completed a Year of Service on the last day of the applicable eligibility computation period during which the Employee is credited with 1,000 Hours of Service.

(c)     **Eligible Class Of Employees:** All Employees are eligible to participate in the Plan upon satisfying the eligibility requirements set forth in paragraph (a) or paragraph (b) except for the following ineligible class of Employees: Employees whose employment is governed by the terms of a collective bargaining agreement between Employee representatives and the Employer in which retirement benefits were the subject of good faith bargaining, unless such agreement expressly provides for the inclusion of such Employees as Participants in the Plan.

(d)     **Participation By Employees Whose Status Changes:** If an Employee who is not an Eligible Employee becomes an Eligible Employee, such Employee will participate in the Plan immediately if he or she satisfies the requirements in paragraph (b) and would have previously become a Participant had he or she been an Eligible Employee. The participation of a Participant who becomes a member of an ineligible class will be suspended, and such Participant will be entitled to an allocation of Employer contributions and Forfeitures for the Plan Year only to the extent of Hours of Service completed while an Eligible Employee. Upon returning to an eligible class of Employees, a suspended Participant will immediately participate again in the Plan. The Vested Interest of a Participant who ceases to be an Eligible Employee will continue to increase in accordance with Section 4.6.

(e)     **Participation By Former Participants:** A Participant who terminates employment with the Employer for any reason but who is reemployed as an Eligible Employee will again become a Participant in the Plan as provided in the definition of Year of Service.

**2.2     ENTRY DATE**

An Eligible Employee who satisfies the eligibility requirements in Section 2.1(a) will enter the Plan as a Participant on December 31, 2002. Any other Eligible Employee will enter the Plan as a Participant on the January 1st or July 1st that coincides with or next follows the date on which the Employee first satisfies the eligibility requirements in Section 2.1(b)..

**-17-**

AIG_00000388

**2.3    WAIVER OF PARTICIPATION**

An Employee who is otherwise eligible to participate in the Plan may elect to waive such participation in accordance with the following provisions:

(a)    **Irrevocable Election:** An Eligible Employee may make a one-time irrevocable election to waive participation in the Plan. However, the Administrator may in its sole discretion elect not to make this option available to one or more Eligible Employees if the Eligible Employee is not an HCE and is not likely to become an HCE and if the Administrator determines that such waiver may cause the Plan for any Plan Year to fail to satisfy one of the tests set forth in Code §410(b)(1)(A), (B) and (C). The Employee's election to waive participation in the Plan must be in writing and must be delivered to the Administrator on or before the date the Employee first becomes eligible to participate in the Plan. Notwithstanding the foregoing however, once an Employee has become a Participant in the Plan, no waiver can be made, except as provided in paragraph (b) below.

(b)    **Election To Waive Allocation:** Notwithstanding paragraph (a), and subject to the Top-Heavy Minimum Benefit requirements of Section 3.5, a Participant may agree to forego an allocation of Employer contributions to his or her Participant's Account for all or any Plan Years if such Participant is a Highly Compensated Employee for such Plan Year.

(c)    **Administrative Requirements:** The Employee's election to waive participation or forego an allocation must be in writing and must be delivered to the Administrator on or before the date the Employee first becomes eligible to participate in the Plan in the case of a waiver under paragraph (a), and before the Participant is entitled to an allocation to his or her Participant's Account in the case of foregoing such allocation under paragraph (b) for a Plan Year. The Administrator will furnish any form required to make an election hereunder, which may include the requirement for consent by the Employee's Spouse.

**2.4    PARTICIPATION UPON REEMPLOYMENT**

If an Employee terminates employment and is re-employed by the Employer or an Affiliated Employer, his or her Years of Service for purposes of eligibility (as well as the time such Employee enters or re-enters the Plan as a Participant) will be determined in accordance with the rules described in the definition of Years of Service.

**2.5    EXCLUSION OF ELIGIBLE EMPLOYEE**

If any Employee who should have been included as a Participant is erroneously excluded from the Plan in any Plan Year and discovery of such omission is not made until after a contribution for that Plan Year has been allocated, the Employer will correct the omission so that the omitted Employee receives the same amount which the Employee would have received had he or she not been omitted. Such omission can be corrected by one or more of the following methods: (a) by making an additional contribution to the Plan on behalf of the omitted Employee; (b) by allocating any available Forfeitures on behalf of the omitted Employee; and/or (c) by any other method of correction permitted under Revenue Procedure 2000-16 or any subsequent Revenue Procedure or guidance issued by the Internal Revenue Service.

**2.6    INCLUSION OF INELIGIBLE EMPLOYEE**

If any person who should not have been included as a Participant is erroneously included in any Plan Year and discovery of that incorrect inclusion is not made until after a contribution for that Plan Year has been allocated, and such ineligible Employee has not received a distribution of the amount erroneously allocated to him or her, then the amount erroneously contributed with respect to the ineligible Employee cannot be refunded to the Employer and will be applied as a Forfeiture for the Plan Year in which the error is discovered.

**-18-**

                                                   AIG_00000389

## ARTICLE 3
## CONTRIBUTIONS AND ALLOCATIONS

**3.1**     **EMPLOYER CONTRIBUTIONS**

Each Plan Year the Employer will contribute to the Plan such amount as it may in its sole discretion determine, subject to the following provisions:

(a)     **Determination Of Amount:** The Employer will determine the amount of the contribution to be made to the Plan each Plan Year and will notify the Trustee in writing of the amount contributed. The Employer's determination of the amount of its contribution will be binding on the Trustee, the Administrator and all Participants and may not be reviewed in any manner.

(b)     **Contribution Limitations:** Notwithstanding paragraph (a), (1) no contribution will exceed the maximum amount deductible under Code §404; (2) no contribution will exceed the limitations set forth in Code §415; (3) no contribution will be made for any Participant who is not an Eligible Participant for the Plan Year unless required under Section 3.5; and (4) for Plan Years beginning on or after January 1, 1997, if this Plan provides contributions or benefits for Employees some or all of whom are Owner-Employees, such contributions or benefits can only be provided with respect to the Earned Income of such Owner-Employee which is derived from the trade or business with respect to which the Plan is established.

(c)     **Contribution for Mistakenly Excluded Employees:** Notwithstanding paragraphs (a) and (b), if an Employee should have been included as a Participant but is mistakenly excluded for any reason, the omission will be corrected as specified in Section 2.5.

(d)     **Refund of Contributions:** Contributions made to the Plan by the Employer can only be returned to the Employer in accordance with the following provisions:

     (1)     **Failure To Initially Qualify:** If the Plan fails to initially satisfy the requirements of Code §401(a) and the Employer declines to amend the Plan to satisfy such requirements, contributions made prior to the date such qualification is denied must be returned to the Employer within 1 year of the date of such denial, but only if the application for the qualification is made by the time prescribed by law for filing the Employer's tax return for the taxable year in which the Plan is adopted, or by such later date as the Secretary of the Treasury may prescribe.

     (2)     **Contributions Made Under A Mistake Of Fact:** If a contribution is attributable in whole or in part to a good faith mistake of fact, including a good faith mistake in determining the deductibility of the contribution under Code §404, then an amount may be returned to the Employer which is equal to the excess of the amount contributed over the amount which would have been contributed had the mistake not occurred. Earnings attributable to any such excess contribution will not be returned, but losses attributable to the excess contribution will reduce the amount so returned. Such amount will be returned within one year of the date the contribution was made or the deduction disallowed, as the case may be.

     (3)     **Nondeductible Contributions:** Except to the extent an Employer may intentionally make a nondeductible contribution, for example to correct an administrative error or restore a Forfeiture, any contribution by the Employer is conditioned on its deductibility and will otherwise be returned to the Employer.

**-19-**

AIG_00000390

(e)    **Form Of Contribution:** The Employer's contribution (if any) may consist of (1) cash; (2) qualifying employer securities or qualifying employer real property as defined in §407(d) of ERISA, provided the acquisition of such qualifying employer securities or qualifying real property securities satisfies the requirements of §408(e) of ERISA; or (3) any other property that is permitted under Code §4975 and is acceptable to the Trustee.

**3.2    ALLOCATION OF EMPLOYER CONTRIBUTIONS**

Subject to the Top Heavy requirements in Section 3.5 and the Code §415 limitations in Article 6, Employer contributions will be allocated on the last day of the Plan Year (and on such other date or dates as determined by the Administrator on a nondiscriminatory basis) to each Eligible Participant's Account in the ratio that each Eligible Participant's Compensation bears to the total Compensation of all Eligible Participants.

**3.3    ALLOCATION OF EARNINGS AND LOSSES**

As of each Valuation Date, accounts which have not been distributed since the prior Valuation Date will have the net income of the Trust Fund earned since the prior Valuation Date allocated in accordance with such rules and procedures as may be established by the Administrator, and applied in a uniform and nondiscriminatory manner; or accounts will be valued and adjusted as hereinafter set forth in this Section. Net income is the net of any interest, dividends, unrealized appreciation and depreciation, capital gains and losses, and investment expenses of the Trust Fund determined on each Valuation Date.

(a)    **Non-Segregated Accounts:** Accounts which have not been segregated from the general Trust Fund for investment purposes will have net income allocated thereto in the ratio that the value of each such non-segregated account bears to the total value of all such non-segregated accounts on the Valuation Date. The value of each non-segregated account on any Valuation Date will be determined before taking into account the allocation of any Employer contributions that have occurred (or are deemed to have occurred) since the prior Valuation Date, and before taking into account any distributions and withdrawals that have occurred since the prior Valuation Date. The Forfeiture Account will not share in the allocation hereunder.

(b)    **Segregated Accounts And Policy Dividends:** Any accounts which have been segregated for investment purposes, including any Directed Investment Accounts that may be established in accordance with Section 7.15 and any other accounts (including Directed Investment Accounts) which are valued on a daily basis, will only have the net income earned thereon allocated thereto. Any insurance Policy dividends or credits will be allocated to the Participant's Account for whose benefit the Policy is held.

**3.4    ALLOCATION OF FORFEITURES**

The Administrator may elect each Plan Year to first use all or any portion of the Forfeiture Account to pay administrative costs of the Plan, and/or to restore previously forfeited Account balances under Section 5.7 or 5.13. Subject to the Top Heavy allocation requirements in Section 3.5 or Code §415 limitations in Article 6, any remaining Forfeitures will be added to the Employer's contribution for the current Plan Year or a future Plan Year to be allocated therewith under Section 3.2.

**-20-**

AIG_00000391

3.5    **TOP HEAVY MINIMUM ALLOCATION**

In any Top Heavy Plan Year in which a Key Employee receives an allocation of Employer contributions or Forfeitures, each Employee who is described in paragraph (a) below will receive the Top Heavy benefit required under the provisions of Code §416, such benefit to be determined in accordance with the following provisions:

(a)    **Participants Who Must Receive Top Heavy Minimum Allocation:** For each Plan Year in which a Top Heavy contribution is required, the Top Heavy Minimum Allocation (or such lesser amount as may be permitted under paragraph (b) below) will be made for each Participant who is a Non-Key Employee employed by an Employer on the last day of the Plan Year in an eligible class of Employees, even if such Participant (1) fails to complete any minimum Hours of Service or Period of Service required to receive an allocation of Employer contributions or Forfeitures for the Plan Year; (2) fails to make elective contributions to the Plan in the case of a cash or deferred arrangement; (3) receives Compensation that is less than a stated amount; or (4) declines to make a mandatory Employee contribution to the Plan.

(b)    **Lesser Allocation Allowed:** If the amount of Employer contributions and Forfeitures allocated to the Participant's Account of each Key Employee for the Plan Year is less than 3% of his or her Compensation, and if this Plan is not required to be included in an Aggregation Group to enable a defined benefit plan to meet the requirements of Code §401(a)(4) or §410, then the amount allocated under this Section for each Participant who is described in paragraph (a) above will be equal to the largest percentage of Employer contributions and Forfeitures allocated to the Participant's Account of a Key Employee for that Plan Year, determined after taking into account elective contributions made by a Key Employee to a cash or deferred arrangement maintained by the Employer.

(c)    **Participation In Multiple Defined Contribution Plans:** If a Participant described in paragraph (a) above participates in this Plan and in one or more defined contribution plans that are included with this Plan in a Required Aggregation Group, and if the allocation of Employer contributions and Forfeitures in this Plan or any other such defined contribution plan is insufficient to satisfy the Top Heavy requirement with respect to such Participant, such requirement will nevertheless be deemed to be satisfied if the aggregate allocation of Employer contributions and Forfeitures made under this Plan and all other such plans on behalf of such Participant is sufficient to satisfy the Top Heavy requirement. If not, the Employer will make an additional contribution to this Plan and/or to one or more such plans on behalf of the Participant in order that the aggregate allocation of Employer contributions and Forfeitures to this Plan and all such plans satisfies the Top Heavy requirements with respect to such Participant.

(d)    **Participation In Defined Benefit Plan And Defined Contribution Plan:** Any Participant described in paragraph (a) above who participates in this Plan and in a defined benefit plan which is included with this Plan in a Required Aggregation Group will, in lieu of the allocation provided under paragraph (a) above, receive an allocation under this Plan (or any other defined contribution plan sponsored by the Employer) which is equal to 5% of Compensation. Notwithstanding the foregoing to the contrary however, the Administrator may determine, in a uniform non-discriminatory manner which is intended to satisfy the requirements of Code §416(f) regarding the preclusion of required duplication and inappropriate omission of Top Heavy minimum benefits or contributions, that such Non-Key Employee will receive the minimum Top Heavy benefit required under Code §416 under the defined benefit plan in lieu of any such benefit under the terms of this Plan.

-21-

AIG_00000392

(e)    **Contributions That Can Be Used To Satisfy Top Heavy Minimum:** All Employer contributions to this Plan will be taken into account in determining if the Employer has contributed an amount necessary to satisfy the requirements of this Section. In addition, the following contributions made by the Employer on a Participant's behalf to a cash or deferred arrangement may be taken into account in determining if the Top Heavy requirements have been satisfied: non-elective contributions; qualified non-elective contributions; safe harbor non-elective contributions; and any other contributions as may be permitted by law. However, elective contributions made to a cash or deferred arrangement maintained by the Employer cannot be used to satisfy the Top Heavy requirements.

3.6    **ROLLOVER CONTRIBUTIONS**

Subject to any rules or procedures that may be established by the Administrator under paragraph (f) below, any Employee who is in an eligible class of Employees, regardless of whether such Employee has satisfied the Plan's eligibility requirements, may, with the consent of the Administrator, make Rollover Contributions to the Plan. Rollover Contributions will be allocated to a Participant's Rollover Account and, subject to any rules or procedures established hereunder, will be administered in accordance with the following provisions:

(a)    **Investment Of Rollover Accounts:** Except for that portion which a Participant may be permitted to self-direct under Section 7.15, the Administrator may choose for investment purposes to either segregate Rollover Accounts into separate interest bearing accounts or to invest Rollover Accounts as part of the general Trust Fund, in which case such accounts will share in the allocation of earnings and losses under Section 3.3(a).

(b)    **Withdrawal Of Rollovers:** Subject to paragraph (c) below, an Employee may request a withdrawal of all or any portion of his or her Rollover Account at any time prior to becoming a Participant in the Plan, and thereafter upon the earlier of (1) the date the Employee is entitled to a distribution of his or her Participant's Account under the provisions of Article 5, or (2) within an administratively reasonable time after the Employee's Termination of Employment. An Employee may also request a withdrawal of all or any portion of his or her Rollover Account at any time prior to the dates described in (1) and (2) above. The Administrator may require up to 60 days notice in advance of the requested date of withdrawal. A Rollover withdrawal will not prevent an Employee from accruing future benefits from Employer contributions. Any amount withdrawn may be redeposited to the Participant's Rollover Account if such prior withdrawn distribution continues to qualify as a Rollover Contribution except for the fact that the amount originated from this Plan.

(c)    **Spousal Consent Requirements Upon Withdrawal:** Any Rollover Contribution that at the time it is made to this Plan is no longer subject to the requirements of Code §401(a)(11) can be withdrawn from the Plan without the consent of the Participant's Spouse. However, the withdrawal of any Rollover Contribution that was a direct or indirect transfer as defined in Code §401(a)(11) from a defined benefit plan, a money purchase plan, a target benefit plan, a stock bonus plan, or a profit sharing plan that provided for a life annuity form of payment to the Participant will be subject to the spousal consent requirements in Section 5.8.

(d)    **Form Of Distribution:** Any Rollover Contribution a Participant withdraws from the Plan prior to the time the Participant is entitled to a distribution of his or her Participant's Account will only be distributed in a lump sum. Any amount remaining in a Participant's Rollover Account at the time the Participant is entitled to a distribution of his or her

**-22-**

Participant's Account that is not subject to the spousal consent requirements in paragraph (c) above will be distributed, at the election of the Participant, in a lump-sum or in the same manner as the Participant's Account under Article 5. Any amount remaining in the Participant's Rollover Account at the time the Participant is entitled to a distribution of his or her Participant's Account that is subject to the spousal consent requirements will be distributed in the same manner as the Participant's Account under Article 5.

(e)    **Special Rule For Withdrawal Of Elective Deferrals:** Notwithstanding paragraph (b) to the contrary, the limitations described in regulation 1.401(k)-1(d) will apply to the withdrawal of any Rollover Contributions which are attributable to a Participant's elective contributions as defined in regulation 1.401(k)-1(g)(3) and which are transferred to this Plan in a trustee to trustee transfer from another qualified plan.

(f)    **Establishment Of Administrative Procedures:** The Administrator may, in a separate written document, establish rules or procedures regarding the conditions under which Rollover Contributions can be made to and/or withdrawn from the Plan by an Employee. Such separate written document, when properly executed, will be deemed incorporated in this Plan. The rules or procedures set forth therein may be modified or amended by the Administrator without the necessity of amending this Section of the Plan, but any such modifications must be communicated to Participants in the manner described in Section 8.9. Notwithstanding the foregoing, (1) a summary plan description or summary of material modifications thereto in which the rules or procedures regarding the making and/or withdrawal of Rollover Contributions are described will be considered a separate written document sufficient to satisfy the requirements (including the execution requirement) of this paragraph; and (2) any rules or procedures established under this paragraph must be applied by the Administrator in a uniform nondiscriminatory manner.

## 3.7    VOLUNTARY EMPLOYEE CONTRIBUTIONS

Voluntary Employee Contributions are not currently permitted.

-23-

CONFIDENTIAL

AIG_00000394

## ARTICLE 4
## PLAN BENEFITS

**4.1    BENEFIT UPON NORMAL RETIREMENT**

Every Participant who has reached Normal Retirement Age will be entitled upon termination of employment to receive his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made under Section 5.1.

**4.2    BENEFIT UPON LATE RETIREMENT**

A Participant who has reached Normal Retirement Age and who remains employed by the Employer will continue to participate in the Plan and will continue to receive allocations under Article 3 until he or she terminates employment with the Employer. However, notwithstanding Section 4.1 to the contrary, such Participant may at any time after reaching Normal Retirement Age (1) choose to have distributed prior to actual retirement all or part of his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution (but any portion thereof which is attributable to elective contributions, qualified matching contributions and/or qualified non-elective contributions made to a cash or deferred arrangement can only be distributed if the Participant has also reached Age 59½); or (2) choose to have such Vested Aggregate Account balance transferred to another qualified retirement plan maintained by the Employer. Upon actual retirement, the Participant will be entitled to his or her undistributed Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made under Section 5.1.

**4.3    BENEFIT UPON DEATH**

Upon the death of a Participant prior to Termination of Employment, or upon the death of a Terminated Participant prior to distribution of his or her Vested Aggregate Account, his or her Beneficiary will be entitled to the Participant's Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. If any Beneficiary who is alive on the date of the Participant's death dies before receiving the entire death benefit to which he or she is entitled, the balance of the death benefit will be distributed to the Beneficiary's beneficiary in accordance with Section 5.2. The Administrator's determination that a Participant has died and that a particular person has a right to receive a death benefit will be final. Distribution will be made in accordance with Section 5.2.

**4.4    BENEFIT UPON DISABILITY**

If a Participant suffers a Disability prior to Termination of Employment and terminates employment with the Employer as a result of that Disability, or if a Terminated Participant suffers a Disability prior to a distribution of his or her Vested Aggregate Account balance, he or she will be entitled to his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made in accordance with Section 5.3.

**4.5    BENEFIT UPON TERMINATION**

A Participant who incurs a Termination of Employment will be entitled to his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. A Terminated Participant's Vested Aggregate Account will be distributed under Section 5.4 unless, prior to the time of distribution set forth therein, the Participant (1) dies, in which case distribution will be made under 5.2; or (2) suffers a Disability, in which case distribution will be made under Section 5.3.

-24-

AIG_00000395

**4.6**    **DETERMINATION OF VESTED INTEREST**
A Participant's Vested Interest in his or her Participant's Account will be determined in accordance with the following provisions:

(a)    **Vesting Upon Retirement, Death Or Disability:** All amounts in a Participant's Account will be 100% Vested upon reaching Normal Retirement Age prior to Termination of Employment, and also upon death or Disability prior to Termination of Employment.

(b)    **Vesting Prior To Retirement, Death Or Disability:** Except as otherwise provided in paragraph (a) above, a Participant's Vested Interest in his or her Participant's Account at any given time will be determined by the vesting schedule which immediately follows this paragraph based on the number of Years of Service the Participant has completed. In determining a Participant's Vested Interest under this paragraph, all of a Participant's Years of Service will be counted.

| Years of Service | Vested Interest |
|---|---|
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

(c)    **Amendments To Vesting Schedule:** No amendment may directly or indirectly reduce a Participant's Vested Interest in his or her Participant's Account. If the Plan is amended in any way that directly or indirectly affects the computation of a Participant's Vested Interest in his or her Participant's Account or the Plan is deemed amended by an automatic change to or from a Top Heavy vesting schedule, the following will apply:

(1)    **Participant Election:** Any Participant with at least three Years of Service may, by filing a written request with the Administrator, elect to have the Vested Interest in his or her Participant's Account computed by the vesting schedule in effect prior to the amendment. A Participant who fails to make an election will have his or her Vested Interest computed under the new schedule. The period in which the election may be made will begin on the date the amendment is adopted or is deemed to be made and will end on the latest of (1) 60 days after the date the amendment is adopted; (2) 60 days after the date the amendment becomes effective; or (3) 60 days after the date the Participant is issued written notice of the amendment by the Employer or Administrator.

(2)    **Preservation Of Vested Interest:** Notwithstanding the foregoing to the contrary, if the vesting schedule is amended, then in the case of an Employee who is a Participant as of the later of the date such amendment is adopted or the date it becomes effective, the Vested Interest in his or her Participant's Account determined as of such date will not be less than his or her Vested Interest computed under the Plan without regard to such amendment.

-25-

AIG_00000396

## ARTICLE 5
## DISTRIBUTION OF BENEFITS

**5.1    BENEFIT UPON RETIREMENT**

Unless a cash-out occurs under Section 5.5, the retirement benefit a Participant is entitled to receive under Section 4.1 or Section 4.2 will be distributed as follows:

(a)    **Normal Form Of Distribution:**    Unless otherwise elected under Section 5.8, a Participant's retirement benefit will be distributed as a Qualified Joint and Survivor Annuity if the Participant is married on the Annuity Starting Date and has not died before such date. If the Participant is unmarried on the Annuity Starting Date and has not died before such date, the Participant's retirement benefit will be distributed as a life annuity.

(b)    **Optional Forms Of Distribution:** If a Participant elects not to receive the annuity form of payment described in paragraph (a) above, the Participant may elect to have his or her benefit distributed (1) in one lump sum payment; (2) in substantially equal monthly, quarterly, semi-annual or annual cash installments over a period certain that does not extend beyond the Participant's life, or beyond the lives of the Participant and his or her designated Beneficiary (or beyond the life expectancy of the Participant or the joint and last survivor expectancy of the Participant and his or her designated Beneficiary), which will either be paid from the Plan or paid by a nontransferable immediate or deferred annuity selected by the Trustee which provides for the installment payments; or (3) as a non-transferable annuity, the terms of which comply with the requirements of this Plan.

(c)    **Time Of Distribution:** Distribution will begin within an administratively reasonable time after the date (1) a Participant actually retires; or (2) a Participant who elects late retirement under Section 4.2 requests payment as permitted therein. However, distribution must begin under this Section no later than the Required Beginning Date.

**5.2    BENEFIT UPON DEATH**

Unless a cash-out occurs under Section 5.5, a deceased Participant's death benefit as determined under Section 4.3 will be distributed as follows:

(a)    **Surviving Spouse:** If a Participant dies before the Annuity Starting Date and is married on the date of his or her death, the surviving Spouse will receive a minimum death benefit as a Qualified Preretirement Survivor Annuity unless such annuity has been waived under Section 5.8. Unless the Participant directed through a Beneficiary designation form that the benefit be paid in a specific form of distribution permitted under Section 5.1(b), the surviving Spouse can elect any form of distribution permitted under Section 5.1(b). If the surviving Spouse elects to receive installment payments, the death benefit will either be paid from the Plan or be paid by a nontransferable immediate or deferred annuity selected by the Trustee which provides for the installment payments. Upon the death of a Participant, distribution will be made to the surviving Spouse within an administratively reasonable time after he or she requests payment, but distribution must begin no later than December 31st of the calendar year in which the Participant would have attained Age 70½.

(b)    **Death Of Surviving Spouse Before Distribution Begins:** If the surviving Spouse dies before distribution of the benefit begins, distribution will be made as if the surviving Spouse were the Participant. Distribution will be considered as having commenced when the deceased Participant would have reached Age 70½ even if payments have been made to the surviving Spouse before that date. If distribution to the surviving Spouse begins in

**-26-**

AIG_00000397

the form of an irrevocable annuity over a period permitted under paragraph (a) before the deceased Participant would have reached Age 70½, distribution will be considered as having begun on the actual annuity commencement date.

(c) **Non-Spouse Beneficiary:** Unless the Participant directed through a Beneficiary designation form that the death benefit be paid in a specific form of distribution permitted under Section 5.1(b), a non-Spouse Beneficiary can elect any form of distribution permitted under Section 5.1(b). If the Beneficiary elects to receive installment payments, the death benefit will either be paid from the Plan or be paid by a nontransferable immediate or deferred annuity selected by the Trustee which provides for the installment payments. Upon the death of a Participant, distribution will be made within an administratively reasonable time after a non-Spouse Beneficiary requests payment; but distribution of the entire death benefit must be made by December 31st of the calendar year which contains the 5th anniversary of the date of the Participant's death unless installment payments begin no later than December 31st of the calendar year immediately following the calendar year in which the Participant died.

(d) **Distribution If The Participant Or Other Payee Is In Pay Status:** If a Participant or Beneficiary who has started receiving distribution of his or her benefit dies before the entire benefit has been distributed, the balance of the benefit will be distributed to the Participant's Beneficiary (or Beneficiary's beneficiary) at least as rapidly as under the method of distribution being used on the date of the Participant's or Beneficiary's death.

(e) **Payments To A Beneficiary Of A Beneficiary:** In the absence of a Beneficiary designation or other directive from the deceased Participant to the contrary, any Beneficiary may name his or her own Beneficiary to receive any benefits payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled; and if a Beneficiary has not named his or her own Beneficiary, the Beneficiary's estate will be the Beneficiary. If any benefit is payable under this paragraph to a Beneficiary of the deceased Participant's Beneficiary or to the estate of the deceased Participant's Beneficiary, or to any other Beneficiary or the estate thereof, subject to the limitations regarding the latest dates for benefit payment in paragraphs (a) and (c) above, the Administrator may (1) continue to pay the remaining value of such benefits in the amount and form already commenced, or pay such benefits in any other manner permitted under the Plan for a Participant or Beneficiary, and (2) if payments have not already commenced, pay such benefits in any other manner permitted under the Plan. Distribution to the Beneficiary of a Beneficiary must begin no later than the date distribution would have been made to the Participant's Beneficiary. The Administrator's determination under this paragraph will be final and will be applied in a non-discriminatory manner that does not discriminate in favor of HCEs.

**5.3    DISABILITY BENEFITS**

Unless a cash-out occurs under Section 5.5, the Disability benefit a Participant is entitled to receive under Section 4.4 will be distributed as follows:

(a) **Normal Form Of Distribution:** Unless otherwise elected under Section 5.8, a Participant's Disability benefit will be distributed as a Qualified Joint and Survivor Annuity if the Participant is married on the Annuity Starting Date and has not died before such date. If the Participant is unmarried on the Annuity Starting Date and has not died before such date, the Participant's Disability benefit will be distributed as a life annuity.

**-27-**

AIG_00000398

(b)    **Optional Forms Of Distribution:** If a Participant elects not to receive the annuity form of payment described in paragraph (a) above, the Participant may elect to have his or her benefit distributed (1) in one lump sum payment; (2) in substantially equal monthly, quarterly, semi-annual or annual cash installments over a period certain that does not extend beyond the Participant's life, or beyond the lives of the Participant and his or her designated Beneficiary (or beyond the life expectancy of the Participant or the joint and last survivor expectancy of the Participant and his or her designated Beneficiary), which will either be paid from the Plan or paid by a nontransferable immediate or deferred annuity selected by the Trustee which provides for the installment payments; or (3) as a non-transferable annuity, the terms of which comply with the requirements of this Plan.

(c)    **Time Of Distribution:** Distribution will begin within an administratively reasonable time after the date on which a Participant who suffers a Disability terminates employment with the Employer on account of the Disability. However, distribution must begin under this Section no later than the Participant's Required Beginning Date.

**5.4    BENEFIT UPON TERMINATION**

Unless a cash-out occurs under Section 5.5, the benefit a Terminated Participant is entitled to receive under Section 4.5 will be distributed as follows:

(a)    **Normal Form Of Distribution:**  Unless otherwise elected under Section 5.8, a Terminated Participant's benefit will be distributed as a Qualified Joint and Survivor Annuity if the Participant is married on the Annuity Starting Date and has not died before such date. If the Participant is unmarried on the Annuity Starting Date and has not died before such date, the Participant's benefit will be distributed as a life annuity.

(b)    **Optional Forms Of Distribution:** If a Participant elects not to receive the annuity form of payment described in paragraph (a) above, the Participant may elect to have his or her benefit distributed (1) in one lump sum payment; (2) in substantially equal monthly, quarterly, semi-annual or annual cash installments over a period certain that does not extend beyond the Participant's life, or beyond the lives of the Participant and his or her designated Beneficiary (or beyond the life expectancy of the Participant or the joint and last survivor expectancy of the Participant and his or her designated Beneficiary), which will either be paid from the Plan or paid by a nontransferable immediate or deferred annuity selected by the Trustee which provides for the installment payments; or (3) as a non-transferable annuity, the terms of which comply with the requirements of this Plan.

(c)    **Time Of Distribution:** Distribution will begin under this Section within an administratively reasonable time after Termination of Employment occurs, but in no event later than the earlier to occur of (1) the date the Terminated Participant reaches Normal Retirement Age, or (2) the Required Beginning Date.

**5.5    CASH-OUT OF BENEFITS**

The Administrator, without the consent of the Participant, may distribute a Participant's Vested Aggregate Account balance in a lump sum any time after a Participant terminates employment, subject to the following provisions:

(a)    **General Rule:** The Administrator can only make distribution under this Section if a Participant's Vested Aggregate Account balance (determined before taking into account the Participant's Rollover Account and Voluntary Employee Contribution Account) on the date he or she terminates employment with the Employer does not exceed $5,000 (or such lesser amount as may be designated by the Administrator). Any such distribution

**-28-**

AIG_00000399

will be made as soon as administratively feasible after the date the Participant terminates employment, and any portion of the Participant's Account which is not Vested will be treated as a Forfeiture.

(b) **Later Distribution If Account Falls To $5,000:** If a Participant would have received a distribution under paragraph (a) but for the fact that the Participant's Vested Aggregate Account (determined before taking into account the Participant's Rollover Account and Voluntary Employee Contribution Account) exceeded $5,000 (or such lesser amount as may be designated by the Administrator) when the Participant terminated employment, and if at a later time the Participant's Vested Aggregate Account (determined before taking into account the Participant's Rollover Account and Voluntary Employee Contribution Account) is reduced to an amount not greater than $5,000 (or such lesser amount as may be designated by the Administrator), the Administrator may distribute such remaining amount in a lump sum without the Participant's consent as soon as administratively feasible after the date the Participant terminates employment with the Employer, and any portion of the Participant's Account which is not Vested will be treated as a Forfeiture.

(c) **Deemed Distribution:** If a Participant's Vested Interest in his or her Participant's Account is zero on the date the Participant terminates employment, the Participant will be deemed to have received a distribution of such Vested Interest on the date of termination.

(d) **Form Of Distribution:** If the whereabouts of a terminated Participant are known, distribution under this Section will be made in the form of a lump sum cash payment unless such Participant elects a direct rollover under Section 5.14. If the whereabouts of a terminated Participant are not known, the provisions of Section 5.13 will apply.

**5.6   RESTRICTIONS ON IMMEDIATE DISTRIBUTIONS**

If a Participant's Vested Aggregate Account balance exceeds the amount set forth in paragraph (a) of this Section and is immediately distributable, such account can only be distributed in accordance with the following provisions:

(a) **General Rule:** If a Participant's Vested Aggregate Account (determined before taking into account the Participant's Rollover Account and Voluntary Employee Contribution Account) exceeds $5,000, or if there are remaining payments to be made with respect to a particular distribution option that previously commenced, and if such amount is immediately distributable, the Participant and the Participant's Spouse (or where either the Participant or the Spouse has died, the survivor) must consent to any distribution of such amount. Any portion of the Participant's Account which is not Vested will be treated as a Forfeiture. If less than the entire Vested Aggregate Account balance is distributed, the part of the non-Vested portion that will be treated as a Forfeiture is the total non-Vested portion multiplied by a fraction, the numerator of which is the amount of the distribution attributable to Employer contributions and the denominator of which is the total value of the Vested Interest in the Participant's Account.

(b) **Definition Of Immediately Distributable:** A Participant's benefit is immediately distributable if any part of the benefit could be distributed to the Participant (or the Participant's surviving Spouse) before the Participant reaches (or would have reached if not deceased) the later of his or her Normal Retirement Age or Age 62.

(c) **General Consent Requirement:** The consent of the Participant and the Participant's Spouse (or where either the Participant or the Participant's Spouse has died, the survivor)

**-29-**

AIG_00000400

to any benefit that is immediately distributable must be obtained in writing within the 90-day period ending on the Annuity Starting Date. However, only the Participant must consent to the distribution of a Qualified Joint and Survivor Annuity while the benefit is immediately distributable; and neither the Participant nor the Participant's Spouse will be required to consent to a distribution that is required by Code §401(a)(9) or §415.

(d) **Notification Requirements:** The Administrator must notify the Participant and the Participant's Spouse of the right to defer any distribution until the benefit is no longer immediately distributable. Notification will include a general explanation of the material features and relative values of the optional forms of benefit available under the Plan in a manner that would satisfy the notice requirements of Code §417(a)(3); and will be provided no less than 30 days or more than 90 days prior to the Annuity Starting Date.

(e) **Waiver Of 30-Day Requirement:** For Plan Years beginning on or after January 1, 1997, distribution of a Participant's benefit may begin less than 30 days after the notice in paragraph (d) is given, provided (1) the Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving notice to consider the decision of whether or not to elect a distribution; (2) the Participant, after receiving the notice, affirmatively elects a distribution or a particular distribution option; and (3) the Participant does not revoke the election at any time prior to the expiration of the 7-day period that begins on the date the notice is given.

(f) **Consent Not Needed On Plan Termination:** If this Plan upon termination does not offer an annuity option (purchased from a commercial provider) and if neither the Employer nor an Affiliated Employer maintains another defined contribution plan other than an employee stock ownership plan (ESOP) as defined in Code §4975(e)(7), the Participant's benefit will, without the Participant's consent, be distributed to the Participant. If the Employer or an Affiliated Employer maintains another defined contribution plan other than an ESOP, the Participant's benefit will, without the Participant's consent, be transferred to the other plan if the Participant does not consent to an immediate distribution under this Section.

**5.7    RESTORATION OF FORFEITED ACCOUNT BALANCE**

If a Participant who does not have a 100% Vested Interest in his or her Participant's Account terminates employment with the Employer and receives (or is deemed to have received) a distribution of such Vested Interest from the Plan, and such Participant is subsequently rehired by the Employer, his or her Participant's Account upon such reemployment will be administered in accordance with the following provisions:

(a) **Reemployment Before Five Consecutive Breaks In Service:** If a terminated Participant is reemployed before incurring five consecutive Breaks in Service, such Participant's Account balance will be restored in accordance with the following:

(1) **Partially Vested Participants:** If upon termination of employment a Participant has at least a partially Vested Participant's Account, then upon reemployment by the Employer prior to incurring five consecutive Breaks in Service, such Participant's Account balance will be restored to the amount on the date of distribution if the Participant repays to the Plan the full amount of the distribution which was attributable to Employer contributions. Repayment must be made before the earlier of five years after the first date on which the Participant is subsequently re-employed by the Employer or the date on which the Participant incurs five consecutive Breaks in Service following the date of distribution.

**-30-**

CONFIDENTIAL

AIG_00000401

# ARTICLE 6
## CODE §415 LIMITATIONS

**6.1    MAXIMUM ANNUAL ADDITION**

The maximum Annual Addition as defined in paragraph (c) below made to a Participant's various accounts maintained under the Plan for any Limitation Year beginning after December 31, 1986 will not exceed the lesser of the Dollar Limitation set forth in paragraph (a) or the Compensation Limitation set forth in paragraph (b), as follows:

(a)    **Dollar Limitation:** For Limitation Years beginning after December 31, 1994, the Dollar Limitation is $30,000 as annually adjusted pursuant to Code §415(d).

(b)    **Compensation Limitation:** The Compensation Limitation is equal to 25% of the Participant's Section 415 Compensation for the Limitation Year. This limitation will not apply to any contribution made for medical benefits within the meaning of Code §419A(f)(2) after separation from service which is otherwise treated as an Annual Addition or to any amount treated as an Annual Addition under Code §415(l)(1).

(c)    **Annual Additions:** The term Annual Additions means the sum of the following amounts credited to a Participant's Account for the Limitation Year: (1) Employer contributions; (2) Employee contributions; (3) Forfeitures; (4) amounts allocated after March 31, 1984 to an individual medical account, as defined in Code §415(l)(2), which is part of a pension or annuity plan maintained by the Employer; and (5) amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, attributable to post-retirement medical benefits, allocated to the separate account of a key employee, as defined in Code §419A(d)(3), under a welfare fund, as defined in Code §419(e), maintained by the Employer. Annual Additions do not include a Participant's rollovers, loan repayments, repayments of prior Plan distributions or prior distributions of mandatory contributions, direct transfers of contributions from another plan to this Plan, deductible contributions to a SEP, or voluntary deductible contributions.

**6.2    ADJUSTMENTS TO MAXIMUM ANNUAL ADDITION**

In applying the limitation on Annual Additions set forth in Section 6.1, the following adjustments must be made to the limitation:

(a)    **Short Limitation Year:** In a Limitation Year of less than 12 months, the Defined Contribution Dollar Limitation in Section 6.1(a) will be adjusted by multiplying it by the ratio that the number of months in the short Limitation Year bears to 12.

(b)    **Multiple Defined Contribution Plans:** If a Participant participates in multiple defined contribution plans sponsored by the Employer which have different Anniversary Dates, the maximum Annual Addition in this Plan for the Limitation Year will be reduced by the Annual Additions credited to the Participant's accounts in the other defined contribution plans in the Limitation Year. If a Participant participates in multiple defined contribution plans sponsored by the Employer which have the same Anniversary Date, (1) if only one of the plans is subject to Code §412, Annual Additions will first be credited to the Participant's account in the plan subject to Code §412; and (2) if more than one of the plans is subject to Code §412, the maximum Annual Addition in this Plan for a given Limitation Year will be equal to the product of the maximum Annual Addition for such Limitation Year minus any other Annual Additions previously credited to the Participant's account under clause (1), multiplied by the ratio the Annual Additions which

**-36-**

                                                                        AIG_00000402

would be credited to a Participant's accounts hereunder without regard to the limitations in Section 6.1 bears to the Annual Additions for all plans described in this clause (2).

**6.3    MULTIPLE PLANS AND MULTIPLE EMPLOYERS**

All defined benefit plans (whether terminated or not) of the Employer will be treated as one defined benefit plan, and all defined contribution plans (whether terminated or not) of the Employer will be treated as one defined contribution plan. In addition, all Affiliated Employers will be considered a single employer.

**6.4    ADJUSTMENT FOR EXCESSIVE ANNUAL ADDITIONS**

If for any Limitation Year the Annual Additions allocated to a Participant's Account exceeds the maximum amount permitted under Section 6.1 above because of an allocation of Forfeitures, a reasonable error in estimating a Participant's Compensation, a reasonable error in determining the amount of elective contributions (within the meaning of Code §402(g)(3)), or because of other limited facts and circumstances that the Commissioner finds justify the availability of the rules set forth in this Section, then such Participant's Account will be adjusted in accordance with the following provisions in order to reduce the excess Annual Additions:

(a)    **Return Of Employee Contributions:** First, Voluntary Employee Contributions, if any, and second, the amount of elective deferrals and corresponding Employer matching contributions, if any, to the extent that they would reduce the excess amount, will be calculated. Such elective deferrals and Voluntary Employee Contributions plus attributable earnings, will be returned to the Participant. Any Employer matching contribution amount will be applied as described in (b) or (c) below, depending on whether the Participant is covered by the Plan at the end of the Limitation Year.

(b)    **Excess Used To Reduce Employer Contributions If Participant Is Still Covered By The Plan:** If, after the application of paragraph (a), an excess amount still exists and the Participant is covered by the Plan at the end of the Limitation Year, the excess amount in the Participant's Account plus applicable earnings thereon, if any, will be used to reduce Employer contributions (including any allocation of Forfeitures) for such Participant in the next Limitation Year, and in each succeeding Limitation Year if necessary.

(c)    **Excess Used To Reduce Employer Contributions If Participant Is Not Covered By The Plan:** If, after the application of paragraph (a), an excess amount still exists and the Participant is not covered by the Plan at the end of a Limitation Year, the excess amount, plus applicable earnings thereon, if any, will be held unallocated in a suspense account. The suspense account will be applied to reduce future Employer contributions (including the allocation of any Forfeitures) for all remaining Participants in the next Limitation Year, and in each succeeding Limitation Year if necessary.

(d)    **Suspense Account:** If a suspense account is in existence at any time during a Limitation Year pursuant to this Section, such suspense account will not participate in the allocation of the Trust's investment gains and losses. If a suspense account is in existence at any time during a particular Limitation Year, all amounts in the suspense account must be allocated and reallocated to Participants' Accounts before any Employer Contributions or any Employee contributions may be made to the Plan for that Limitation Year. Excess amounts may not be distributed to Participants or former Participants.

**6.5    MULTIPLE PLAN REDUCTION**

For Limitation Years beginning before January 1, 2000, if an Employee is, or has been, a Participant in one or more Employer-sponsored defined benefit plans and in one or more

-37-

AIG_00000403

Employer-sponsored defined contribution plans, the sum of the defined benefit plan fraction and the defined contribution plan fraction for any Limitation Year may not exceed 1.0, determined in accordance with the following provisions:

(a)    **Defined Benefit Fraction:** The defined benefit fraction has as its numerator the Participant's Projected Annual Benefits determined as of the close of the Limitation Year and has as its denominator the lesser of 125% of the dollar limitation for the Limitation Year determined under Code §415(b) and §415(d), or 140% of the amount which may be taken into account under Code §415(b)(1)(B) for such Limitation Year. However, with respect to anyone who was a Participant as of the first day of the first Limitation Year beginning after December 31, 1987, in one or more defined benefit plans maintained by the Employer which were in existence on May 6, 1986, the denominator of the defined benefit fraction will not be less than 125% of the Current Accrued Benefit.

(b)    **Definitions:** The term Projected Annual Benefits means the annual benefits payable to a Participant under all defined benefit plans (whether terminated or not) of the Employer as determined under regulation §1.415-7(b)(3); and the term Current Accrued Benefit means a Participant's accrued benefit under a defined benefit plan, determined as if the Participant had separated from service as of the close of the last Limitation Year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of Code §415(b)(2). In determining a Participant's Current Accrued Benefit, the Administrator will disregard any changes to the Plan after May 5, 1986, and any cost of living adjustment after May 5, 1986. The Current Accrued Benefit will only be used as set forth above if the defined benefit plans individually and in the aggregate satisfied the requirements of Code §415 for all Limitation Years beginning before January 1, 1987.

(c)    **Defined Contribution Fraction:** The defined contribution fraction has as its numerator the sum of the Annual Additions to the Participant's Account under all the defined contribution plans (whether terminated or not) maintained by the Employer for the current Limitation Year and all prior Limitation Years (including the Annual Additions attributable to the Participant's non-deductible contributions to all Employer maintained defined benefit plans, whether terminated or not, and the Annual Additions attributable to all welfare benefit funds, as defined in Code §419(e), and individual medical accounts, as defined in Code §415(l)(2) maintained by the Employer), and has as its denominator the sum of the maximum aggregate amounts for the current Limitation Year and all prior Limitation Years the Employee was employed by the Employer (regardless of whether a defined contribution plan was maintained by the Employer). The maximum permissible aggregate amount in any Limitation Year is the lesser of (1) 125% of the dollar limitation in effect in Code §415(c)(1)(A) for such Limitation Year determined without regard to Code §415(c)(6) and adjusted per regulation §1.415-7(d)(1) and Notice 83-10, or (2) 35% of the Participant's Section 415 Compensation.

(d)    **Transition Rule For Denominator:** For defined contribution plans in effect on or before July 1, 1982, the Administrator may elect for any Limitation Year ending after December 31, 1982 that the denominator be the product of the denominator for the Limitation Year ending in 1982 determined under the law in effect for such Limitation Year, multiplied by the Transition Fraction, which is a fraction which has as its numerator the lesser of $51,875 or 1.4 multiplied by 25% of the Participant's Section 415 Compensation for the Plan Year ending in 1981, and which has as its denominator the lesser of $41,500 or 25% of the Participant's Section 415 Compensation for the Plan Year ending in 1981. In any Top Heavy Limitation Year, $41,500 will be substituted for $51,875 in determining the

**-38-**

AIG_00000404

Transition Fraction unless the Extra Minimum Allocation is being provided in Section 3.5. In a Super Top Heavy Plan Year, $41,500 will always be substituted for $51,875.

(e)    **Adjustment Of Fraction:** If an Employee was a Participant as of the end of the first day of the first Limitation Year beginning after December 31, 1986 in one or more defined contribution plans maintained by the Employer which were in existence on May 6, 1986, the numerator of the defined contribution fraction will be adjusted if the sum of such defined contribution fraction and the defined benefit fraction would otherwise exceed 1.0 under the terms of this Plan. Under the adjustment, an amount equal to the product of the excess of the sum of the defined benefit fraction and the defined contribution fraction over 1.0 multiplied by the denominator of the defined contribution fraction will be permanently subtracted from the numerator of the defined contribution fraction. The adjustment will be calculated using the fractions as they would be computed as of the end of the last Limitation Year beginning before January 1, 1987, disregarding any changes in the terms and conditions of the Plan made after May 5, 1986, but using the Code §415 limitation applicable to the first Limitation Year beginning on or after January 1, 1987.

(f)    **Top Heavy Adjustments:** In any Top Heavy Limitation Year, 100% will be substituted for 125% in paragraphs (a) and (c) unless an eligible Non-Key Employee (1) is being provided a 7.5% allocation under Section 3.5(d); or (2) is being provided a retirement benefit under a defined benefit plan equal to 3% of average monthly Code §415 Compensation. However, in any Super Top Heavy Limitation Year (which means the Top Heavy Ratio exceeds 90% for that Limitation Year), 100% will be substituted for 125% in any event. If the 100% limitation is exceeded for any Participant in any Limitation Year, then (1) the Participant's accrued benefit in the defined benefit plan will not be increased; (2) no Annual Additions may be credited to the Participant's accounts under this Plan; and (3) the Participant may not make any contributions, whether voluntary or mandatory, to this Plan or any other Employer-sponsored qualified plan.

-39-

CONFIDENTIAL

AIG_00000405

(2) **Non-Vested Participants:** If upon termination of employment a Participant's Vested Interest in his or her Participant's Account is zero, such Participant is deemed to have received a distribution of such Vested Interest before the date he or she incurs five consecutive Breaks in Service, and upon re-employment with the Employer prior to incurring five consecutive Breaks in Service, such Participant's Account balance attributable to Employer contributions will be restored to the amount on the date of the deemed distribution.

(3) **Source Of Funds:** The Administrator, on a case-by-case basis, may elect to restore a Participant's Account balance under this Section by the use of Forfeitures, by the use of earnings from non-segregated Trust Fund accounts, by the use of Employer contributions, or by the use of any combination thereof.

(b) **Reemployment After Five Consecutive Breaks In Service:** If a terminated Participant is reemployed by the Employer after incurring five consecutive Breaks in Service, that portion, if any, of his or her Participant's Account which was (or was deemed to be) a Forfeiture will be permanently forfeited under the terms of this Plan.

## 5.8    SPOUSAL CONSENT REQUIREMENTS

A married Participant's election not to receive a Qualified Joint and Survivor Annuity (QJSA) under Section 5.1 or a Qualified Preretirement Survivor Annuity (QPSA) under Section 5.2, or an unmarried Participant's election not to receive a life annuity under Section 5.1, must be made in accordance with the following provisions:

(a) **Election Not To Receive A QJSA:** A married Participant's election not to receive a Qualified Joint and Survivor Annuity, or an unmarried Participant's election not to receive a life annuity, must be in writing and must be made during the 90-day period ending on the Annuity Starting Date. Such election may be revoked in writing and a new election made at any time and any number of times during the election period.

(b) **Election Not To Receive A QPSA:** A married Participant's election not to receive a Qualified Preretirement Survivor Annuity must be in writing and must be made during an election period beginning on the first day of the Plan Year in which the Participant reaches Age 35 and ending on the date of his or her death. The election may be revoked in writing and a new election made at any time and any number of times during the election period. A Terminated Participant's election period concerning his or her Vested Aggregate Account before his or her termination will not begin later than such date. Notwithstanding the foregoing, if the Participant has not completed a Beneficiary designation form specifying the time or form of payment, the surviving Spouse may waive the Qualified Preretirement Survivor Annuity.

(c) **Special Pre-Age 35 QPSA Election:** A Participant who has not yet reached Age 35 as of the end of any current Plan Year may make a special election not to receive a Qualified Preretirement Survivor Annuity for the period beginning on the date of such election and ending on the first day of the Plan Year in which such Participant reaches Age 35. This election will not be valid unless the Participant receives the same written explanation of the Qualified Preretirement Survivor Annuity as described in paragraph (d) below. Qualified Preretirement Survivor Annuity coverage will be automatically reinstated as of the first day of the Plan Year in which the Participant reaches Age 35. Any new election on or after such date will be subject to the full requirements of this Section 5.8.

-31-

AIG_00000406

(d) **Required Written Explanation Of QJSA Or QPSA:** In connection with an election not to receive a Qualified Joint and Survivor Annuity, the Administrator will, no less than 30 days and no more than 90 days prior to the Annuity Starting Date, provide the Participant with a written explanation of the terms and conditions of the Qualified Joint and Survivor Annuity; the Participant's right to make (and the effect of) an election to waive the Qualified Joint and Survivor Annuity; the rights of the Participant's Spouse; and the right of the Participant to revoke such election (and the effect thereof). In connection with an election not to receive a Qualified Preretirement Survivor Annuity, the Administrator will provide each Participant within the Applicable Period as defined in paragraph (e) with a written explanation of the Qualified Preretirement Survivor Annuity in such terms and in such manner as would be comparable to the written explanation applicable to a Qualified Joint and Survivor Annuity as set forth in this paragraph.

(e) **Applicable Period:** The Applicable Period for a Participant is whichever of the following periods ends last: (1) the period beginning with the first day of the Plan Year in which the Participant attains Age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains Age 35; (2) a reasonable period after the individual becomes a Participant; (3) a reasonable period ending after Code §401(a)(11) applies to the Participant; or (4) a reasonable period ending after Code §417(a)(5) ceases to apply to the Participant. For purposes of this paragraph, a reasonable period is the end of the two-year period beginning one year prior to the date the applicable event occurs, and ending one year after that date.

(f) **Participants Who Terminate Before Age 35:** In the case of a Participant who separates from service before the Plan Year in which the Participant reaches Age 35, the notice required under paragraph (d) will be provided within the two-year period beginning one year prior to separation from service and ending one year after such separation. If such Participant thereafter returns to employment with the Employer, the Applicable Period for such Participant will be redetermined.

(g) **Elections Must Have Spousal Consent:** A Participant's election not to receive a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity will not be effective (1) unless the Participant's Spouse consents in writing to the election; (2) unless the election designates a specific Beneficiary (or form of benefit) which may not be changed without spousal consent (or the consent of the Spouse expressly permits designations by the Participant without any requirement of further spousal consent); and (3) unless the Spouse's consent acknowledges the effect of the election and is witnessed by the Administrator or a notary public.

(h) **Additional Requirements For Spousal Consent:** A Spouse's consent will not be required if there is no Spouse or if the Spouse cannot be located, or if there are other circumstances (as set forth in the Code) present which preclude the necessity of such Spouse's consent. Any consent by a Participant's Spouse (or establishment that consent cannot be obtained) will be effective only with respect to such Spouse. A consent that permits designations by the Participant without any requirement of further spousal consent must acknowledge that the Spouse has the right to limit consent to a specific Beneficiary, and a specific form of benefit where applicable, and that the Spouse voluntarily elects to relinquish either or both of such rights. A revocation of a prior election may be made by a Participant without the Spouse's consent at any time before benefits begin. No consent obtained under paragraph (g) will be valid unless the Participant has received notice as provided in paragraph (d).

**-32-**

AIG_00000407

**5.9    APPLICATION OF CODE §401(a)(9) REQUIREMENTS**

All distributions made under the terms of the Plan will be determined and made in accordance with the regulations issued under Code §401(a)(9), including the minimum distribution incidental benefit requirement of regulation §1.401(a)(9)-2, and any provisions in this Plan which reflect Code §401(a)(9) will override any distribution options which are inconsistent with such Code section and regulations. If Participant's Vested Aggregate Account is paid in a form that is based on life expectancies through other than the purchase of an immediate annuity, the joint life expectancies of the Participant and his or her Spouse will be recalculated annually unless the Participant elects the non-recalculation method of determining life expectancy. In the case of any other Beneficiary, life expectancy will be calculated at the time payment first commences, and payments for any 12-consecutive month period will be based on such life expectancy minus the number of whole years passed since distribution first commenced.

**5.10    STATUTORY COMMENCEMENT OF BENEFITS**

Unless a Participant otherwise elects, distribution of his or her benefit must begin no later than the 60th day after the latest of the close of the Plan Year in which the Participant (1) reaches the earlier of Age 65 or Normal Retirement Age; (2) reaches the 10th anniversary of the year the Participant commenced Plan participation; or (3) terminates service with the Employer. However, the failure of a Participant and the Participant's Spouse to consent to a distribution while a benefit is immediately distributable within the meaning of Section 5.6 will be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this Section. If this Plan provides for early retirement, a Participant who satisfies the service requirement for early retirement prior to Termination of Employment will be entitled to receive his or her Vested Aggregate Account, if any, upon satisfaction of the age requirement for early retirement.

**5.11    SEGREGATION OF BENEFIT BEFORE DISTRIBUTION**

With respect to that portion of a Participant's Vested Aggregate Account which the Participant is not permitted to self-direct under Section 7.15, as of the Valuation Date coinciding with or next following the date a Participant terminates employment with the Employer for any reason, the Administrator will, until a distribution is made to the Participant or the Participant's Beneficiary under the Plan, direct the Trustee in a uniform nondiscriminatory manner to either (1) invest such Vested Aggregate Account determined as of such Valuation Date in a separate interest bearing account; or (2) leave such Vested Aggregate Account as part of the general Trust Fund, in which case such account will share in the allocation of earnings and losses under Section 3.3(a).

**5.12    DISTRIBUTION IN EVENT OF INCAPACITY**

If any person who is entitled to receive a distribution of benefits (the "Payee") suffers from a Disability or is under a legal incapacity, payments may be made in one or more of the following ways as directed by the Administrator: (a) to the Payee directly; (b) to the guardian or legal representative of the Payee's person or estate; (c) to a relative of the Payee, to be expended for the Payee's benefit; or (d) to the custodian of the Payee under any Uniform Transfers to Minors Act or under any Uniform Gifts To Minors Act. The Administrator's determination of the minority or incapacity of any payee will be final.

**5.13    MISSING PARTICIPANTS AND UNCLAIMED BENEFITS**

Neither the Trustee nor the Administrator will be required to search for or ascertain the whereabouts of any Participant or Beneficiary. With respect to a Participant or Beneficiary who has not claimed any benefit (the "missing payee") to which such missing payee is entitled, and with respect to any Participant or Beneficiary who has not satisfied the administrative requirements for benefit payment, the following provisions will apply:

-33-

(a)  **Attempt To Contact And Forfeiture Of Benefit:** The Administrator will notify a missing payee that he or she is entitled to a distribution under the Plan, by certified or registered mail addressed to the missing payee's last known address. The Administrator, in its sole discretion, may also utilize other methods of locating a missing payee, including letter forwarding programs offered by the Internal Revenue Service or the Social Security Administration, or internet or other search services offered by the Pension Benefit Guaranty Corporation (PBGC) if such services are made available to defined contributions plans; or by placing public notices in a local newspaper. If a missing payee fails to make his or her whereabouts known in writing to the Trustee or Administrator or otherwise fails to claim a benefit, or the administrative requirements for benefit payment for any payee are not satisfied, upon the earlier to occur of (1) the later of the date the Plan is terminated or discontinued or six months from the date the notice was mailed or (2) the date which is two years from the date the notice was mailed, the Administrator may, but will not be required to, treat the payee's benefit as a forfeiture, subject to paragraphs (b) and (c) below.

(b)  **Alternative Methods To Forfeiture:** In lieu of Forfeiture under paragraph (a), the Administrator may elect one the following alternatives described below:

   (1)  **Direct Rollover To IRA:** If a Participant's Vested Aggregate Account balance (determined before taking into account his or her Rollover Account and Voluntary Employee Contribution Account) on the date he or she terminated employment with the Employer does not exceed $5,000 (or such lesser amount as may be designated by the Administrator), the Administrator may elect to make distribution hereunder in the form of a direct rollover to an individual retirement account (IRA) if the IRA can be established by the Administrator at a qualified financial institution. In establishing the IRA on behalf of the Participant or other payee, the Administrator will select an IRA trustee, custodian or issuer unrelated to the Employer or the Administrator and will make the initial investment choices for the IRA. The default direct rollover will occur not less than 30 days and not more than 90 days after the Code §402(f) notice with the explanation of the default direct rollover is provided to the Participant or other payee.

   (2)  **Escheat To The State:** The Administrator may elect to escheat the payee's benefit to the state in which the Sponsor's principal place of business is located.

   (3)  **Other Methods Of Distribution:** The Administrator may elect to distribute a payee's benefit by any other method approved by the United States Department of the Treasury and/or by the United States Department of Labor.

(c)  **Conditions For Restoration Of Forfeited Benefit:** If a payee whose benefit has been forfeited under paragraph (a) is located, or if a payee whose benefit has been forfeited under paragraph (a) for failure to satisfy the administrative requirements for benefit payment subsequently satisfies the administrative requirements for benefit payment and claims his or her benefit, and if the Plan has not terminated (or if the Plan has, all benefits have not yet been paid), then the benefit will be restored. The Administrator, on a case-by-case basis, may elect to restore the benefit by the use of either earnings from non-segregated Trust Fund assets, or Employer contributions, or any combination thereof. However, if such missing payee has not been located by the time the Plan terminates and all benefits are distributed, the Forfeiture of such unpaid benefit will be irrevocable.

-34-

CONFIDENTIAL

AIG_00000409

**5.14    DIRECT ROLLOVERS**

A distributee may elect to have all or any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover, which is a payment by the Plan to the eligible retirement plan specified by the distributee.

(a)    **Eligible Rollover Distribution:** An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or for the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; (2) any distribution to the extent such distribution is required under Code §401(a)(9); (3) the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation on Employer securities); and (4) the portion of any distribution made on or after January 1, 2000 which is attributable to a hardship distribution described in Code §401(k)(2)(B)(i)(IV).

(b)    **Eligible Retirement Plan:** An eligible retirement plan is an individual retirement account described in Code §408(a), an individual retirement annuity described in Code §408(b), an annuity plan described in Code §403(a), or a qualified trust described in Code §401(a), that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving Spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(c)    **Definition Of Distributee:** For purposes of this Section, a distributee includes an Employee or former Employee. In addition, an Employee's or former Employee's surviving Spouse and an Employee's or former Employee's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order as defined in Code §414(p), are distributees with regard to the interest of the Spouse or former Spouse.

**5.15    DISTRIBUTION OF PROPERTY**

The determination to pay all or a part of a lump sum in property will be made by the Administrator in its sole discretion applied in a non-discriminatory manner that does not discriminate in favor of Highly Compensated Employees; except that if this is an amended or restated Plan, the payee will have the right to elect a full or partial distribution in property within the period described in Section 9.1(a)(2) if the Plan as in effect one day prior to this amendment or restatement provided for a property distribution at the payee's option.

**5.16    FINANCIAL HARDSHIP DISTRIBUTIONS**

Hardship distributions are not permitted.

**5.17    IN-SERVICE DISTRIBUTIONS**

Except as may otherwise be permitted under Section 4.2, no distributions are permitted before a Participant terminates employment with the Employer.

-35-

CONFIDENTIAL

AIG_00000410

## ARTICLE 7
## DUTIES OF THE TRUSTEE

7.1    **APPOINTMENT, RESIGNATION, REMOVAL AND SUCCESSION**
The Plan will have one or more individual Trustees, a corporate Trustee or any combination thereof appointed as follows:

(a)    **Appointment Of Trustee:** Each Trustee will be appointed by the Sponsor and will serve until its successor has been named or until such Trustee's resignation, death, incapacity, or removal, in which event the Employer will name a successor Trustee. The term Trustee will include the original and any successor Trustees.

(b)    **Resignation Of Trustee:** A Trustee may resign by giving 30 days written notice in advance to the Sponsor, unless such notice is waived by the Sponsor. The Sponsor may remove a Trustee any time, with or without cause, by giving written notice of the removal to the Trustee. Unless waived in writing by the Sponsor, if any Trustee who is an Employee, a Self-Employed Individual or an Owner-Employee resigns or terminates employment with, or ownership of, the Sponsor or an Adopting Employer for any reason, such termination will constitute an immediate resignation as a Trustee of the Plan.

(c)    **Successor Trustee:** Each successor Trustee will succeed to title to the Trust by filing a written acceptance of appointment with the former Trustee and the Sponsor. The former Trustee, upon receipt of such acceptance, will execute all documents and perform all acts necessary to vest the Trust Fund's title of record in any successor Trustee. No successor Trustee will be personally liable for any act or failure to act of any predecessor Trustee.

(d)    **Merger Of Corporate Trustee:** If any corporate Trustee, before or after qualification, changes its name, consolidates or merges with another corporation, or otherwise reorganizes, any resulting corporation which succeeds to the fiduciary business of such Trustee will become a Trustee hereunder in lieu of such corporate Trustee.

7.2    **INVESTMENT ALTERNATIVES OF THE TRUSTEE**
The Trustees will implement an investment program based on the Employer's investment objectives and the Employee Retirement Income Security Act. In addition to powers given by law, the Trustees may engage in the following investment activities on behalf of the Trust:

(a)    **Property:** The Trustee may invest assets in any form of property, including common and preferred stocks, exchange covered call options, bonds, money market instruments, mutual funds, savings accounts, certificates of deposit, Treasury bills, insurance policies and contracts, or in any other property, real or personal, foreign or domestic, having a ready market including securities issued by an institutional Trustee and/or affiliate of the institutional Trustee. An institutional Trustee may invest in its own deposits if such deposits bear a reasonable interest rate. The Trustee may retain, manage, operate, repair, improve and mortgage or lease for any period on such terms as it deems proper any real estate or personal property held by the Trustee, including the power to demolish any building or other improvements in whole or part. The Trustee may erect buildings or other improvements, make leases that extend beyond the term of this Trust, and foreclose, extend, renew, assign, release or partially release and discharge mortgages or other liens.

(b)    **Pooled Funds And Common Trusts:** If the Sponsor maintains more than one qualified retirement plan, the assets of two or more of such plans may be maintained by the Trustee in a single trust established by the Sponsor. In addition, the Trustee may transfer any

**-40-**

CONFIDENTIAL                                                                    AIG_00000411

Trust assets to a collective trust established to permit the pooling of funds of separate pension and profit-sharing trusts provided the Internal Revenue Service has ruled such collective trust to be qualified under Code §401(a) and exempt under Code §501(a) (or under the applicable corresponding provision of any other Revenue Act) or to any other common, collective, or commingled trust fund which has been or may hereafter be established and maintained by the Trustee and/or affiliates of an institutional Trustee. Such commingling of assets of the Fund with assets of other qualified trusts is specifically authorized, and to the extent of the investment of the Trust Fund in such a group or collective trust, the terms of the instrument establishing the group or collective trust will be a part hereof as though set forth herein.

(c) **Employer Stock:** The Trustee may invest assets in the common stock, debt obligations, or any other security issued by the Employer within the limitations provided under ERISA §406, §407 and §408 if such investment does not constitute a prohibited transaction under Code §4975. Any such investment will only be made upon written direction of the Employer, which will be solely responsible for its propriety.

(d) **Cash Reserves:** The Trustee may retain in cash such Trust Fund assets as the Trustee may deem advisable to satisfy the liquidity needs of the Plan and to deposit any cash held in the Trust Fund in a bank account without liability for the highest rate of interest available. If a bank is acting as Trustee, such Trustee is specifically given authority to invest in deposits of such Trustee. The Trustee may also hold cash un-invested at any time and from time to time and in such amount or to such extent as the Trustee deems prudent, and the Trustee will not be liable for any losses that may be incurred as the result of the failure to invest same, except to the extent provided herein or in ERISA.

(e) **Reorganizations, Recapitalizations, Consolidations, Sales Or Mergers:** The Trustee may join in or oppose the reorganization, recapitalization, consolidation, sale or merger of corporations or properties, upon such terms as the Trustee deems wise.

(f) **Registration of Securities:** The Trustee may cause any securities or other property to be registered in the Trustee's own name or in the name of the Trustee's nominee or nominees, and may hold any investments in bearer form, but the records of the Trustee will at all times show all such investments as part of the Trust Fund.

(g) **Proxies:** The Trustee may vote proxies and if appropriate pass them on to any investment manager which may have directed the investment in the equity giving rise to the proxy.

(h) **Ownership Rights:** The Trustee may exercise all ownership rights with respect to any assets held in the Trust Fund.

(i) **Other Investments:** The Trustee may accept and retain for such time as the Trustee deems advisable any securities or other property received or acquired as Trustee, whether or not such securities or property would normally be purchased as investments hereunder.

(j) **Key Man Insurance:** The Trustee, with the consent of the Administrator, may purchase insurance Policies on the life of any Participant whose employment is deemed to be key to the Employer's financial success. Such key man Policies will be deemed to be an investment of the Trust Fund and will be payable to the Trust Fund as the beneficiary thereof. The Trustee may exercise any and all rights granted under such Policies. Neither the Trustee, Employer, Administrator, nor any Fiduciary will be responsible for the validity of any Policy or the failure of any insurer to make payments thereunder, or for

-41-

AIG_00000412

the action of any person which delays payment or renders a Policy void in whole or in part. No insurer that issues a Policy will be deemed a party to this Plan for any purpose or to be responsible for its validity; nor will it be required to look into the terms of the Plan nor to question any action of the Trustee. The obligations of the insurer will be determined solely by the Policy's terms and any other written agreements between it and the Trustee. The insurer will act only at the written direction of the Trustee, and will be discharged from all liability with respect to any amount paid to the Trustee. The insurer will not be obligated to see that any money paid by it to the Trustee or any other person is properly distributed or applied.

(k)    **Loans To The Trust:** The Trustee may borrow or raise money for purposes of the Plan in such amounts, and upon such terms and conditions, as the Trustee deems advisable; and for any sum so borrowed, the Trustee may issue a promissory note as Trustee, and secure repayment of the loan by pledging all, or any part, of the Trust Fund as collateral. No person lending money to the Trustee will be bound to see to the application of the money lent or to inquire into the validity or propriety of any borrowing.

(l)    **Agreements With Banks:** The Trustee may with the consent of the Sponsor and upon such terms as they deem necessary, enter into an agreement with a bank or trust company providing for the deposit of all or part of the Trust assets with such bank or trust company, and the appointment of such bank or trust company as the agent or custodian of the Trustees for investment purposes, with such discretion in investing and reinvesting the funds of the Trust as the Trustees deem it necessary or desirable to delegate.

(m)    **Litigation:** The Trustee may begin, maintain, or defend any litigation necessary in connection with the administration of the Plan, except that the Trustee will not be obliged or required to do so unless indemnified to its satisfaction.

(n)    **Claims, Debts or Damages:** The Trustee may settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Plan.

(o)    **Margin Accounts, Options And Commodities Trading:** The Trustee may engage in the following activities: borrowing on margin, buying options, writing covered options, options spreads/straddles, and future/commodities trading.

(p)    **Miscellaneous:** The Trustee may do all such acts (including, but not limited to, margin trading and futures and commodities trading) and exercise all such rights, although not specifically mentioned herein, as the Trustee deems necessary. The Trustee will not be restricted to securities or other property of the character expressly authorized by applicable law for trust investments, provided the Trustee discharges its duties with the care, skill, prudence, and diligence, under the circumstances then prevailing, that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of similar character and with similar aims by diversifying the investments to minimize the risks of large losses unless under the circumstances it is clearly prudent not to do so.

**7.3    VALUATION OF THE TRUST FUND**
On each Valuation Date, the Trustee will determine the net worth of the Trust Fund. The fair market value of securities listed on a registered stock exchange will be the prices at which they were last traded on such exchange preceding the close of business on the Valuation Date. If the securities were not traded on the Valuation Date, or if the exchange on which they are traded was not open for business on the Valuation Date, then the securities will be valued at the prices at

-42-

AIG_00000413

which they were last traded prior to the Valuation Date. Any unlisted security will be valued at its bid price next preceding the close of business on the Valuation Date, which bid price will be obtained from a registered broker or an investment banker. To determine the fair market value of assets other than securities for which trading or bid prices can be obtained, the Trustee may use any reasonable method to determine the value of such assets, or may elect to employ one or more appraisers for that purpose and rely on the values established by such appraiser or appraisers.

**7.4    COMPENSATION AND EXPENSES**

The Trustee, either from the Trust Fund or from the Employer, will be reimbursed for all of its expenses and will be paid reasonable compensation as agreed upon from time to time with the Employer; but no person who receives full-time pay from the Employer will receive any fees for services to the Plan as Trustee or in any other capacity. Expenses will be paid by each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all the Participants' Accounts maintained by this Plan.

**7.5    PAYMENTS FROM THE TRUST FUND**

The Trustee will pay Plan benefits and other payments as the Administrator directs, and except as provided by ERISA, the Trustee will not be responsible for the propriety of such payments. Any payment made to a Participant, or a Participant's legal representative or Beneficiary in accordance with the terms of the Plan will, to the extent of such payment, be in full satisfaction of all claims arising against the Trust, the Trustee, the Employer, and the Administrator. Any payment or distribution made from the Trust is contingent on the recipient executing a receipt and release acceptable to the Trustee, Administrator, or Employer.

**7.6    PAYMENT OF TAXES**

The Trustee will pay all taxes of the Trust Fund, including property, income, transfer and other taxes which may be levied or assessed upon or in respect of the Trust Fund or any money, property or securities forming a part of the Trust Fund. The Trustee may withhold from distributions to any payee such sum as the Trustee may reasonably estimate as necessary to cover federal and state taxes for which the Trustee may be liable, which are, or may be, assessed with regard to the amount distributable to such payee. Prior to making any payment, the Trustee may require such releases or other documents from any lawful taxing authority and may require such indemnity from any payee or distributee as the Trustee deems necessary.

**7.7    ACCOUNTS, RECORDS AND REPORTS**

The Trustee will keep accurate records reflecting its administration of the Trust Fund and will make them available to the Administrator for review and audit. At the request of the Administrator, the Trustee will, within 90 days of such request, file with the Administrator an accounting of its administration of the Trust Fund during such period or periods as the Administrator determines. The Administrator will review the accounting and notify the Trustee within 90 days if the report is disapproved, providing the Trustee with a written description of the items in question. The Trustee will have 60 days to provide the Administrator with a written explanation of the items in question. If the Administrator again disapproves of the report, the Trustee will file its accounting in a court of competent jurisdiction for audit and adjudication.

**7.8    EMPLOYMENT OF AGENTS AND COUNSEL**

The Trustee may employ such agents, counsel, consultants, or service companies as it deems necessary and may pay their reasonable expenses and compensation. The Trustee will not be liable for any action taken or omitted by the Trustee in good faith pursuant to the advice of such agents and counsel. Any agent, counsel, consultant, service company and/or its successors will exercise no discretionary authority over investments or the disposition of Trust assets, and their services and duties will be ministerial only and will be to provide the Plan with those things

-43-

required by law or by the terms of the Plan without in any way exercising any fiduciary authority or responsibility under the Plan. The duties of a third party administrator will be to safe-keep the individual records for all Participants and to prepare all required actuarial services and disclosure forms under the supervision of the Administrator and any Fiduciaries of the Plan. It is expressly stated that the third party administrator's services are only ministerial in nature and that under no circumstances will such third party administrator exercise any discretionary authority whatsoever over Plan Participants, Plan investments, or Plan benefits.

**7.9     DIVISION OF DUTIES AND INDEMNIFICATION**

The division of duties and the indemnification of the Trustee of this Plan will be governed by the following provisions:

(a)     **No Guarantee Against Loss:** The Trustee will have the authority and discretion to manage and control the Trust Fund to the extent provided in this instrument, but does not guarantee the Fund in any manner against investment loss or depreciation in asset value, or guarantee the adequacy of the Fund to meet and discharge all or any liabilities of the Plan. Furthermore, the Trustee will not be liable for the making, retention or sale of any investment or reinvestment made by it, as herein provided, or for any loss to or diminution of the Fund, or for any other loss or damage which may result from the discharge of its duties hereunder, except to the extent it is judicially determined that the Trustee failed to exercise the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims.

(b)     **Representations Of The Sponsor:** The Sponsor warrants that all directions issued to the Trustee by it or the Plan Administrator will be in accordance with the terms of the Plan and not contrary to the provisions of the Employee Retirement Income Security Act of 1974 and the regulations issued thereunder.

(c)     **Directions By Others:** The Trustee will not be answerable for any action taken pursuant to any direction, consent, certificate, or other paper or document on the belief that the same is genuine and signed by the proper person. All directions by the Employer, a Participant or the Plan Administrator will be in writing. The Plan Administrator will deliver to the Trustee certificates evidencing the individual or individuals authorized to act as the Administrator and will deliver to the Trustee specimens of their signatures.

(d)     **Duties And Obligations Limited By The Plan:** The duties and obligations of the Trustee will be limited to those expressly imposed upon it by this Plan or subsequently agreed upon by the parties. Responsibility for administrative duties required under the Plan or applicable law not expressly imposed upon or agreed to by the Trustee, will rest solely with the Sponsor and with the Administrator.

(e)     **Indemnification Of Trustee:** The Trustee will be indemnified and saved harmless by the Employer against any and all liability to which the Trustee may be subjected, including all expenses reasonably incurred in its defense, for any action or failure to act resulting from compliance with the Employer's instructions, the Employer's employees or agents, the Administrator, or any other Plan Fiduciary, and for any liability arising from the actions or non-actions of any predecessor Trustees or Plan Fiduciary.

(f)     **Trustee Not Responsible For Application Of Payments:** The Trustee will not be responsible in any way for the application of any payments it is directed to make or for the adequacy of the Fund to meet and discharge any and all liabilities under the Plan.

-44-

(g) **Multiple Trustees:** If more than one Trustee is appointed, any single Trustee may act independently in undertaking any act and/or transaction on behalf of the Trust unless the Trustees have agreed by a majority vote that a particular action, including signing documents or checks, must be approved by a majority vote before it can be undertaken.

(h) **Limitation Of Liability:** No Trustee will be liable for the act of any other Trustee or Fiduciary unless the Trustee has knowledge of such act.

(i) **Trustee As Participant Or Beneficiary:** Trustee will not be prevented from receiving any benefits to which it may be entitled as a Participant or Beneficiary in the Plan, so long as the benefits are computed and paid on a basis that is consistent with the terms of the Plan as applied to all other Participants and Beneficiaries.

(j) **No Self-Dealing:** The Trustee will not (1) deal with the assets of the Trust Fund in its own interest or for its own account; (2) in its individual or in any other capacity, act in any transaction involving the Trust Fund on behalf of a party (or represent a party) whose interests are adverse to the interests of the Plan, or its Participants or Beneficiaries; or (3) receive any consideration for its own personal accounts from any party dealing with the Plan in connection with a transaction involving assets of the Trust Fund.

**7.10    APPOINTMENT OF INVESTMENT MANAGER**

The Trustee, if so directed by the Sponsor, will appoint an Investment Manager to manage and control the investment of all or any portion of the Trust Fund. Each Investment Manager will be either (a) an investment advisor registered under the Investment Advisors Act of 1940; (b) a bank as defined in that Act; or (c) an insurance company qualified to manage, acquire or dispose of any asset of the Trust under the laws of more than one state. An Investment Manager must acknowledge in writing that it is a Fiduciary. The Sponsor will enter into an agreement with an Investment Manager specifying the duties and compensation of the Investment Manager and further specifying any other terms and conditions under which the Investment Manager will be retained. The Trustee will not be liable for any act or omission of an Investment Manager, and will not be liable for following the advice of an Investment Manager with respect to any duties delegated by the Sponsor to the Investment Manager. The Sponsor will determine the portion of the Trust Fund to be invested by an Investment Manager and will establish investment objectives and guidelines for the Investment Manager to follow.

**7.11    ASSIGNMENT AND ALIENATION OF BENEFITS**

Except as may otherwise be permitted under Code §401(a)(13)(C) effective August 5, 1997, or as may otherwise be permitted under a Qualified Domestic Relations Order as provided in Section 8.11, or as otherwise be permitted under Section 7.14 if loans to Participants are permitted, no right or claim to, or interest in, any part of the Trust Fund, or any payment therefrom, will be assignable, transferable, or subject to sale, mortgage, pledge, hypothecation, commutation, anticipation, garnishment, attachment, execution, or levy of any kind, and the Trustees will not recognize any attempt to assign, transfer, sell, mortgage, pledge, hypothecate, commute, or anticipate the same, except to the extent required by law.

**7.12    EXCLUSIVE BENEFIT RULE**

All contributions made by an Employer (whether or not the Employer is an Affiliated Employer with one or more other Adopting Employers) to the Trust Fund will be used for the exclusive benefit of all Participants and their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the costs of maintaining the Plan.

-45-

**7.13    PURCHASE OF INSURANCE**
Subject to any rules or procedures that may be established by the Administrator under paragraph (k) below, the Trustee may purchase life insurance Policies on the life of a Participant and/or the Participant's Spouse in accordance with the following provisions:

(a)    **Ownership Of Policies:** All life insurance Policies will be vested exclusively in the Trustee and will be payable to the Trustee, subject to the rights of the Beneficiaries hereunder unless the Trustee permits the designation of a named beneficiary other than the Trustee. However, notwithstanding the foregoing, no Trustee who is also a Participant may, except in a fiduciary capacity, exercise any ownership rights with respect to any Policy insuring the life of such Trustee in his or her capacity as a Participant.

(b)    **Primary Limit On Premiums:** At the direction of the Administrator, the Trustee will purchase Policies on the life of the Participant, provided that the aggregate premiums on ordinary life insurance Policies must be less than 50% of the Participant's Account balance; (2) the aggregate premiums on term life insurance Policies, universal life insurance Policies and all other life insurance Policies which are not ordinary life insurance Policies must be less than 25% of the Participant's Account balance; and (3) the sum of one-half of the premiums on ordinary life insurance Policies and the total of all other life insurance premiums cannot exceed 25% of the Participant's Account balance. For purposes of this Section, an ordinary life insurance Policy is an insurance policy that has a non-decreasing death benefit and also has a non-increasing premium.

(c)    **Alternate Limit On Premiums:** Notwithstanding paragraph (a), a Participant may elect that up to 100% of his or her Rollover Account, and up to 100% of the portion of his or her Vested Participant's Account that has accumulated in the Plan for at least 2 years, be used to purchase Policies on the life of the Participant's life, the life of the Participant's Spouse, and/or the joint lives of the Participant and the Participant's Spouse. Likewise, a Participant who has participated in the Plan for at least 5 years may elect that up to 100% of his or her Rollover Account, and up to 100% of his or her Vested Participant's Account balance, be used to purchase Policies on the life of the Participant, the life of the Participant's Spouse, and/or the joint lives of the Participant and his or her Spouse.

(d)    **Payment Of Premiums:** If Employer contributions are inadequate to pay all premiums on Policies, the Trustees may, at the direction of the Plan Administrator, utilize other amounts remaining in the Trust Fund to pay the premiums, allow the Policies to lapse, reduce the Policies to a level at which they may be maintained, or borrow against the Policies on a prorated basis if borrowing does not discriminate in favor of Policies issued on the lives of officers, Shareholder-Employees and/or Highly Compensated Employees.

(e)    **Payment Of Premiums From Loans:** The Trustees may pay premiums when due from the loan values of the Policies themselves if (1) any such loan is made against all of the Policies in proportion to their respective cash surrender values, and (2) all such loans are repaid in proportion to the cash surrender value of such Policies.

(f)    **Policy Dividends:** Any insurer payments that are paid to the Trustee on account of experience credits, dividends, or surrender or cancellation credits, will be applied by the Employer within the current or next succeeding Plan Year toward premiums due.

(g)    **Conflict With Plan:** Subject to the provisions of paragraph (j) below, if the provisions of any insurance Policy purchased hereunder conflict with the terms of this Plan, the provisions of the Plan will control.

-46-

CONFIDENTIAL

AIG_00000417

(h) **Disposition Of Policies Upon Termination:** If a Terminated Participant's Vested Interest equals or exceeds the cash surrender value of any Policies issued on his life, the Trustee, with the consent of both the Administrator and the Terminated Participant, will transfer such Policies to the Terminated Participant, together with any restrictions the Administrator may impose concerning the Terminated Participant's right to surrender, assign, or otherwise realize cash on such Policies prior to his Normal Retirement Date. If the Terminated Participant's Vested Interest in his Participant's Account is less than the cash surrender values of such Policies, the Administrator may permit him to pay the Trustee the sum required to make distribution equal to the value of the Policies being assigned or transferred, or the Trustee may borrow the cash surrender values of the Policies from the insurer and then assign the Policies to the Terminated Participant.

(i) **Disposition Of Policies At Retirement:** When a Participant retires, the Trustee, at the direction of the Administrator, must, with respect to any Policies purchased on the life of such Participant under paragraph (b), either (1) transfer them to the Participant, (2) with the Participant's consent, borrow their cash surrender values and transfer them to the Participant subject to the loan, or (3) surrender them for their cash surrender values. If options (2) or (3) are elected, the cash surrender values will be added to the Participant's Account for distribution in accordance with Section 5.1.

(j) **Fiduciaries And Insurers Protected:** Neither the Trustee, Employer, Administrator, nor any Fiduciary will be responsible for the validity of any Policy or the failure of any insurer to make payments thereunder, or for the action of any person which may delay payment or render a Policy void in whole or in part. No insurer which issues a Policy will be deemed a party to this Plan for any purpose or to be responsible for its validity; nor will it be required to look into the terms of the Plan nor to question any action of the Trustee. The obligations of the insurer will be determined solely by the Policy's terms and any other written agreements between it and the Trustee. The insurer will act only at the written direction of the Trustee, and will be discharged from all liability with respect to any amount paid to the Trustee. The insurer will not be obligated to see that any money paid by it to the Trustee or any other person is properly distributed or applied.

(k) **Establishment Of Administrative Procedures:** The Administrator may in a separate written document establish rules or procedures regarding the conditions under which Policies can be purchased by the Trustee. Such separate written document, when properly executed, will be deemed incorporated in this Plan. The rules or procedures therein may be modified or amended by the Administrator without the necessity of amending this Section, but any such modifications must be communicated to Participants in the manner described in Section 8.9. Notwithstanding the foregoing, (1) a summary plan description or summary of material modifications thereto in which the rules or procedures regarding the purchase of insurance Policies is described will be considered a separate written document sufficient to satisfy the requirements (including the execution requirement) of this paragraph; and (2) any rules or procedures established under this paragraph must be applied by the Administrator in a uniform nondiscriminatory manner.

**7.14 LOANS TO PARTICIPANTS**

Subject to any rules or procedures set forth in a written loan policy that may be established by the Administrator under paragraph (m) below, the Trustee may permit loans to be made from the Trust Fund to Participants and Beneficiaries, and subject to any such rules or procedures, all loans will be made in accordance with the following provisions:

**-47-**

CONFIDENTIAL

AIG_00000418

(a) **Loans Must Be Nondiscriminatory:** The Administrator will have the sole right to approve or disapprove a loan application, but loans will be made available to all Participants on a reasonably equivalent basis. Loans will not be made available to HCEs in an amount greater than the amount made available to other Employees.

(b) **Loans To Owner-Employees Or Shareholder-Employees:** No loan will be made to or continued in effect for a Participant who is or who becomes an Owner-Employee or a Shareholder-Employee except to the extent any such loan is treated as a prohibited transaction (if required) under Code §4975 or other applicable Code provision.

(c) **Written Loan Agreement:** All loans must be evidenced by a legally enforceable agreement (which may include more than one document) set forth in writing or in such other form as may be approved by the Internal Revenue Service, and the terms of such agreement must specify the amount and term of the loan, and the repayment schedule.

(d) **Minimum Permitted Loan Amount:** The Administrator, as part of the written loan policy, may set a minimum permitted loan amount not to exceed $1,000.

(e) **Maximum Permitted Loan Amount:** No loan, when added to the outstanding balance of all other loans to the Participant, will exceed the lesser of (1) $50,000 reduced by the excess, if any, of the Participant's highest outstanding balance of loans during the 1-year period ending on the day before the loan was made, over the Participant's outstanding balance of loans on the day the loan was made; or (2) one-half of the Participant's Vested Aggregate Account. However, notwithstanding the limitation in (2), the Administrator may, as part of a written loan policy, permit a Participant whose Vested Aggregate Account balance is $20,000 or less to borrow an amount that does not exceed the lesser of $10,000 or 100% of the Participant's Vested Aggregate Account balance if adequate security is provided on the loan amount in excess of that determined in (2) above.

(f) **Aggregation Of Plans:** In applying the limitations in paragraph (e) above, all loans from all plans of the Employer and Affiliated Employers will be aggregated. An assignment or pledge of any portion of the Participant's Vested Aggregate Account balance, and a loan, pledge, or assignment with respect to any insurance contract purchased by the Plan, will be treated as a loan under the terms of this Section

(g) **Loans Must Bear Reasonable Interest:** Any loan must bear interest at a rate reasonable at the time of application, considering the purpose of the loan and the rate being charged by representative commercial banks in the local area for a similar loan, unless the Administrator sets forth a different method for determining loan interest rates in its loan procedures such as using the prime rate or some other rate based on the prime rate. The loan agreement will also provide for the payment of principal and interest not less frequently than quarterly. Such interest will be credited either directly to the Participant's Account, or in the alternative to the general Trust Fund, as set forth in the loan policy.

(h) **Loans Must Be Secured:** If a Participant's loan application is approved by the Administrator, such Participant will be required to execute a note, a loan agreement and an assignment of his or her Vested Aggregate Account as collateral for the loan. The Administrator, on a nondiscriminatory basis, may permit a Participant to pledge outside security in lieu of pledging his or her Vested Aggregate Account as collateral. The Participant must obtain the consent of his or her Spouse, if any, within the 90-day period before the Participant's Vested Aggregate Account is used as security for the loan. A new consent is required if the Vested Aggregate Account is used for any renegotiation,

**-48-**

AIG_00000419

extension, renewal or other revision of the loan, including any increase in the amount thereof. The consent must be written, must acknowledge the effect of the loan, and must be witnessed by a notary public or the Administrator. Such consent will thereafter be binding with respect to the consenting Spouse or any subsequent Spouse.

(i)    **Terms Of Repayment:** The term of a loan will not exceed five years except, if permitted by the loan policy, in the case of a loan made for the purpose of acquiring any house, apartment, condominium, or mobile home (not used on a transient basis) which is used or is to be used within a reasonable time as the principal residence of the Participant. The term of a loan will be determined by the Administrator considering the maturity dates quoted by representative commercial banks in the local area for a similar loan.

(j)    **Suspension Of Installment Payments:** The loan policy may provide that loan installment payments will be suspended as permitted under Code §414(u)(4). The loan policy may also provide that installment payments will be suspended for a period not longer than one year in which the Participant is on a leave of absence, either without pay or at a rate of pay (after income and employment tax withholding) that is less than the amount of the installment payments required under the terms of the loan. However, even if installments payment are suspended due to a leave of absence, the loan must still be repaid by the latest date permitted under the original terms of the loan and the installments due after the leave ends (or, if earlier, after the first year of the leave) must not be less than those required under the original terms of the loan.

(k)    **Loans May Be Limited To Hardship:** The loan policy may provide that loans will only be made to Participants who have a financial hardship and lack available resources to satisfy the hardship. The loan policy will set forth the criteria for financial hardship.

(l)    **Contributions That Can Be Loaned:** As part of the loan policy, the Administrator may limit loans to a Participant's balance in a specified account or accounts.

(m)    **Establishment Of Administrative Procedures:** The Administrator may, in a separate written loan policy, establish rules or procedures regarding the conditions under which the Trustee can make loans to Participants. Such separate written document, when properly executed, will be deemed incorporated in this Plan. The rules or procedures therein may be modified or amended by the Administrator without the necessity of amending this Section, but any such modifications must be communicated to Participants in the manner described in Section 8.9. Notwithstanding the foregoing, (1) a summary plan description or summary of material modifications thereto in which the rules or procedures regarding loans to Participants are described will be considered a separate written document sufficient to satisfy the requirements (including the execution requirement) of this paragraph; and (2) any rules or procedures established hereunder must be applied by the Administrator in a uniform nondiscriminatory manner.

**7.15    DIRECTED INVESTMENT ACCOUNTS**

Subject to any rules or procedures that may be established by the Administrator under paragraph (h) below, the Trustee may permit Participants to direct the investment of one or more of their accounts, and subject to any such rules or procedures, investment directives will be given in accordance with the following provisions:

-49-

CONFIDENTIAL

AIG_00000420

(a)   **Accounts That Can Be Directed:** The Administrator will designate which accounts a Participant or other payee can direct, and whether the Participant or payee can direct all or only a portion of each such account. Any such designation can be changed by the Administrator from time to time by communicating new procedures to the Participants.

(b)   **Investment Funds:** Any amount a Participant or other payee directs will be put into a segregated investment selected by the Participant; or alternative investment funds established by the Trustee as part of the overall Trust Fund. Such alternative investment funds will be under the full control and management of the Trustee. Alternatively, if investments outside the Trustee's control are allowed, Participants and other payees may not direct that investments be made in collectibles, other than U.S. Government gold and silver coins. The Administrator or Trustee will have the authority to refuse any investment directed by the Participant or other payee if that investment would be administratively burdensome, or if for any reason the Administrator or Trustee believes such investment would or might constitute a prohibited transaction as defined in ERISA §406 or Code §4975. In the event a Participant or other payee fails to make a timely investment election, at the Administrator's discretion either no election will be deemed to have been made or the Participant or other payee will be considered to have made an election to invest 100% of his or her account in an investment option, the primary objective of which is the preservation of principal, until such time as an investment decision by the Participant or other payee becomes effective.

(c)   **Investment Designation Form:** A Participant's investment direction will be made in a form acceptable to, and in accordance with procedures established by, the Administrator. Unless changed by procedures established by the Administrator and communicated to Participants and other payees, (1) a Participant or other payee may change an investment election by filing a new investment designation form with the Administrator or the Administrator's designee; (2) any change will be effective no later than the first day of the next investment election period; and (3) investment election periods will be established at the discretion of the Administrator but in any event will occur no less frequently than once in every 12-month period or, at the discretion of the Administrator and the Trustee, once in every 3-month or 6-month period or at such other more frequent time which is uniformly available as determined and promulgated by the Administrator and the Trustee.

(d)   **Transfers Between Funds:** Unless changed by procedures established by the Administrator and communicated to Participants and other payees, if multiple investment fund options are made available, a Participant or other payee may elect to transfer all or part of his or her Account in one or more of the investment funds from one investment fund to another investment fund by filing an investment designation form with the Administrator or with the Administrator's designee within a reasonable administrative period prior to the next period for which investment options may be elected to be transferred. The funds will be transferred by the Trustee or the Administrator's designee as soon as practicable prior to, or by the start of, the new election period. If made available, telephone or other electronic or computer transfers will be permitted under uniform procedures approved adopted by the Administrator and agreed to by the Trustee.

(e)   **Administrator Responsibility:** Either the Administrator or the Administrator's designee will be responsible when transmitting Employer and Employee contributions or other Trust Fund assets to indicate the dollar amount which is to be credited to each investment fund on behalf of each Participant or other payee.

-50-

AIG_00000421

(f) **No Administrator Liability:** Except as otherwise provided herein, neither the Trustee, nor the Administrator, nor the Employer, nor any Fiduciary of the Plan will be liable to the Participant or other payee (or to his or her Beneficiaries) for any loss resulting from action taken under this Section at the direction of the Participant or other payee.

(g) **Charges And Fees:** Any charge or fee which may be imposed by the Trustee or by any broker, investment advisor, or otherwise, including legal fees, incurred in connection with a Participant's direction under this Section of any Plan account maintained on the Participant's behalf may be charged to and paid from the assets of such account.

(h) **Establishment Of Administrative Procedures:** All investment designations made by Participants are to be made subject to and in accordance with such rules or procedures as the Administrator may adopt. At the discretion of the Administrator and the Trustee, such rules or procedures will permit sufficient selection among investment alternatives to satisfy the provisions of DOL Regulation §2550.404(c)-1. Such rules or procedures, when properly executed in a written document, will be deemed incorporated in this Plan. The rules or procedures therein may be modified or amended by the Administrator without the necessity of amending this Section, but any such modifications must be communicated to Participants in the manner described in Section 8.9. Notwithstanding the foregoing, (1) a summary plan description or summary of material modifications thereto in which the rules or procedures regarding investment designations are described will be considered a separate written document sufficient to satisfy the requirements (including the execution requirement) of this paragraph; and (2) any rules or procedures established under this paragraph must be applied in a uniform nondiscriminatory manner.

## 7.16 SUPERSEDING TRUST OR CUSTODIAL AGREEMENT

If any assets of the Plan are invested in a separate trust or custodial account maintained by a corporate Trustee or custodian, the provisions of such separate trust or custodial agreement will supersede all provisions of this Article 7 except Sections 7.11, 7.12, 7.13 and 7.14. In addition, in the absence of a specific provision in such separate trust or custodial agreement regarding the valuation of securities held by the Trust Fund, Section 7.3 will not be superseded by any such separate trust or custodial account. If such separate trust or custodial account should for any reason fail, be found invalid or terminate prior to the termination of this Plan and the distribution of all the assets hereof, this Article 7 will be deemed to have again become effective immediately prior to such failure, invalidity or termination.

-51-

## ARTICLE 8
## DUTIES OF THE ADMINISTRATOR

**8.1    APPOINTMENT, RESIGNATION, REMOVAL AND SUCCESSION**

Each Administrator appointed by the Sponsor will continue until his or her death, resignation, or removal at any time, with or without cause, by the Sponsor, and any Administrator may resign by giving 30 days written notice to the Sponsor. If an Administrator dies, resigns, or is removed by the Sponsor, such Administrator's successor will be appointed as promptly as possible, and such appointment will become effective upon its acceptance in writing by such successor Administrator. Pending the appointment and acceptance of any successor Administrator, any then acting or remaining Administrator will have full power to act.

**8.2    POWERS AND DUTIES OF THE ADMINISTRATOR**

The powers and duties of the Administrator will include (a) appointing the Plan's attorney, accountant, actuary, or any other party needed to administer the Plan; (b) directing the Trustees with respect to payments from the Trust Fund; (c) deciding if an applicant is entitled to a benefit from the Plan, which will be paid only if the Administrator in its sole discretion decides that the applicant is entitled to it; (d) communicating with Employees regarding their participation and benefits, including the administration of all claims procedures; (e) filing any returns and reports with the Internal Revenue Service, Department of Labor, or any other governmental agency; (f) reviewing and approving any financial reports, investment reviews, or other reports prepared by any party under (a) above; (g) establishing a funding policy and investment objectives consistent with the purposes of the Plan and the Employee Retirement Income Security Act of 1974; (h) construing and resolving any question of Plan interpretation; and (i) making any findings of fact the Administrator deems necessary to proper Plan administration.

**8.3    APPOINTMENT OF ADMINISTRATIVE COMMITTEE**

The Employer may elect to appoint one or more members to an Administrative/Advisory Committee (to be known as the "Committee"), to which the Sponsor may elect to delegate certain of its responsibilities as Plan Administrator. Members of the Committee need not be Participants or Beneficiaries, and officers and directors of the Sponsor will not be precluded from serving as members. A member will serve until his or her resignation, death, or disability, or until removed by the Sponsor. In the event of any vacancy arising by reason of the death, disability, removal, or resignation of a member of the Committee, the Sponsor may, but is not required to, appoint a successor to serve in his or her place. The Committee will select a chairman and a secretary from among its members. Members of the Committee will serve in such capacity without compensation. The Committee will act by majority vote.

**8.4    FINALITY OF ADMINISTRATIVE DECISIONS**

The Administrator's interpretation of Plan provisions, and any findings of fact, including eligibility to participate and eligibility for benefits, are final and will not be subject to "de novo" review unless shown to be arbitrary and capricious.

**8.5    MULTIPLE ADMINISTRATORS**

If there is more than one Administrator, the Administrators may delegate specific responsibilities among themselves, including the authority to execute documents unless the Sponsor revokes such delegation. The Sponsor and Trustee will be notified in writing of any such delegation of responsibilities, and the Trustee thereafter may rely upon any documents executed by the appropriate Administrator.

**8.6    COMPENSATION AND EXPENSES**

The Administrator, the Committee and any party appointed by the Administrator under Section 8.7 may receive such compensation as agreed upon by the Sponsor, provided that any person who

**-52-**

CONFIDENTIAL

AIG_00000423

already receives full-time pay from the Employer may not receive any fees for services to the Plan as Administrator or in any other capacity. The Sponsor will pay all "settlor" expenses (as described in DOL Advisory Opinion 2001-01-A) incurred by the Administrator, the Committee or any party appointed under Section 8.7 in the performance of their duties. The Sponsor may, but is not required to pay, all "non-settlor" expenses incurred by the Administrator, the Committee, or any party appointed under Section 8.7 in the performance of their duties. Any "non-settlor" expenses incurred by the Administrator, the Committee or any party appointed under Section 8.7 that the Sponsor elects not to pay will be reimbursed from Trust Fund assets. Any expenses paid from the Trust Fund will be charged to each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all the Participants' Accounts maintained by this Plan, or in any other reasonable method elected by the Administrator.

## 8.7 APPOINTMENT OF AGENTS AND COUNSEL

The Administrator (or Committee) may appoint such actuaries, accountants, custodians, counsel, agents, consultants, and other persons the Administrator (or Committee) deems necessary to the administration and operation of the Plan. The actions of any such third parties will be subject to the limitations described in Section 7.8 of the Plan; and no such third parties will be given any authority or discretion concerning the management and operation of the Plan that would cause them to become Fiduciaries of the Plan.

## 8.8 CORRECTING ADMINISTRATIVE ERRORS

The Administrator may take such steps as it considers necessary and appropriate in its discretion to remedy administrative or operational errors. Such steps may include, but will not be limited to the following: (a) taking any action required under the employee plans compliance resolution system of the Internal Revenue Service, any asset management or fiduciary conduct error correction program available through the Internal Revenue Service, United States Department of Labor or other governmental administrative agency; (b) a reallocation of Plan assets; (c) adjustments in amounts of future payments to Participants, Beneficiaries or Alternate Payees; and (d) institution and prosecution of actions to recover benefit payments made in error or on the basis of incorrect or incomplete information.

## 8.9 PROMULGATING NOTICES AND PROCEDURES

The Sponsor and Administrator are given the power and responsibility to promulgate certain written notices, policies and/or procedures under the terms of the Plan and disseminate same to the Participants, and the Administrator may satisfy such responsibility by the preparation of any such notice, policy and/or procedure in a written form which can be published and communicated to a Participant in one or more of the following ways: (a) by distribution in hard copy; (b) through distribution of a summary plan description or summary of material modifications thereto which sets forth the policy or procedure with respect to a right, benefit or feature offered under the Plan; (c) by e-mail, either to a Participant's personal e-mail address or his or her Employer-maintained e-mail address; and (d) by publication on a web-site accessible by the Participant, provided the Participant is notified of the web-site publication. Any notice, policy and/or procedure provided through an electronic medium will only be valid if the electronic medium which is used is reasonably designed to provide the notice, policy and/or procedure in a manner no less understandable to the Participant than a written document, and under such medium, at the time the notice, policy and/or procedure is provided, the Employee may request and receive the notice, policy and/or procedure on a written paper document at no charge.

## 8.10 CLAIMS PROCEDURES

The procedures in this Section will be the sole and exclusive remedy for an Employee, Participant or Beneficiary ("Claimant") to make a claim for benefits under the Plan. These procedures will be administered and interpreted in a manner consistent with the requirements of ERISA §503 and the

-53-

CONFIDENTIAL

AIG_00000424

regulations thereunder. Any electronic notices provided by the Administrator will comply with the standards imposed under regulations issued by the Department of Labor. All claims determinations made by the Administrator (and when applicable by the Committee if one has been appointed under Section 8.3) and will be made in accordance with the provisions of this Section and the Plan, and will be applied consistently to similarly situated Claimants. For purposes of this Section 8.10, if a Committee has not been appointed under Section 8.3, any reference to Committee will be considered a reference to the Administrator.

(a)    **Written Claim:** A Claimant, or the Claimant's duly authorized representative, may file a claim for a benefit to which the Claimant believes that he or she is entitled under the Plan. Any such claim must be filed in writing with the Administrator.

(b)    **Denial Of Claim:** The Administrator, in its sole and complete discretion, will make all initial determinations as to the right of any person to benefits. If the claim is denied in whole or in part, the Administrator will send the Claimant a written or electronic notice, informing the Claimant of the denial. The notice must be written in a manner calculated to be understood by the Claimant and must contain the following information: the specific reason(s) for the denial; a specific reference to pertinent Plan provisions on which the denial is based; if additional material or information is necessary for the Claimant to perfect the claim, a description of such material or information and an explanation of why such material or information is necessary; and an explanation of the Plan's claim review (i.e., appeal) procedures, the time limits applicable to such procedures, and the Claimant's right to request arbitration if the claim denial is upheld in whole or in part on appeal. Written or electronic notice of the denial will be given within a reasonable period of time (but no later than 90 days) from the date the Administrator receives the claim, unless special circumstances require an extension of time for processing the claim. In no event may the extension exceed 90 days from the end of the initial 90-day period. If an extension is necessary, prior to the expiration of the initial 90-day period, the Administrator will send the Claimant a written notice, indicating the special circumstances requiring an extension and the date by which the Administrator expects to render a decision.

(c)    **Request for Appeal:** If the Administrator denies a claim in whole or in part, the Claimant may elect to appeal the denial. If the Claimant does not appeal the denial pursuant to the procedures set forth herein, the denial will be final, binding and unappealable. A written request for appeal must be filed by the Claimant (or the Claimant's duly authorized representative) with the Committee within 60 days after the date on which the Claimant receives the Administrator's notice of denial. If a request for appeal is timely filed, the Claimant will be afforded a full and fair review of the claim and the denial. As part of this review, the Claimant may submit written comments, documents, records, and other information relating to the claim, and the review will take into account all such comments, documents, records, or other information submitted by the Claimant, without regard to whether such information was submitted or considered in the Administrator's initial benefit determination. The Claimant also may obtain, free of charge and upon request, records and other information relevant to the claim, without regard to whether such information was relied upon by the Administrator in making the initial benefit determination.

(d)    **Review Of Appeal:** The Committee will determine, in its sole and complete discretion, whether to uphold all or a portion of the initial claim denial. If, on appeal, the Committee determines that all or a portion of the initial denial should be upheld, the Committee will send the Claimant a written or electronic notice informing the Claimant of its decision to

-54-

AIG_00000425

uphold all or a portion of the initial denial, written in a manner calculated to be understood by the Claimant and containing the following information: the specific reason(s) for the denial; a specific reference to pertinent Plan provisions on which the denial is based; a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents and other information relevant to the claim; and an explanation of the Claimant's right to request arbitration and the applicable time limits for doing so. Written or electronic notice will be given within a reasonable period of time (but no later than 60 days) from the date the Committee receives the request for appeal, unless special circumstances require an extension of time for reviewing the claim, but in no event may the extension exceed 60 days from the end of the initial 60-day period. If an extension is necessary, prior to the expiration of the initial 60-day period, the Committee will send the Claimant a written notice, indicating the special circumstances requiring an extension and the date by which the Committee expects to render a decision.

(e)  **Alternative Time For An Appeal To Be Decided:** Notwithstanding paragraph (d), if the Committee holds regularly scheduled meetings on a quarterly or more frequent basis, the Committee may make its determination of the claim on appeal at its next regularly scheduled meeting if the Committee receives the written request for appeal more than 30 days prior to its next regularly scheduled meeting or at the regularly scheduled meeting immediately following the next regularly scheduled meeting if the Committee receives the written request for appeal within 30 days of the next regularly scheduled meeting. If special circumstances require an extension, the decision may be postponed to the third regularly scheduled meeting following the Committee's receipt of the written request for appeal if, prior to the expiration of the initial time period for review, the Claimant is provided with written notice, indicating the special circumstances requiring an extension and the date by which the Committee expects to render a decision. If the extension is required because the Claimant has not provided information that is necessary to decide the claim, the Committee may suspend the review period from the date on which notice of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

(f)  **Right Of Arbitration:** If a Claimant wishes to contest a final decision of the Committee, the Claimant may request arbitration. If the Claimant does not request arbitration pursuant to the procedures herein, the decision of the Committee will be final, binding and unappealable. A written request for arbitration must be filed by the Claimant (or the Claimant's authorized representative) with the Committee within 15 days after the date the Claimant receives the written decision of the Committee. If a request for arbitration is timely filed, the Claimant and the Committee will each name an arbitrator within 20 days after the Committee receives the Claimant's written request for arbitration. The two arbitrators will jointly name a third arbitrator within 15 days after their appointment. If either party fails to select an arbitrator within the 20 day period, or if the two arbitrators fail to select a third arbitrator within 15 days after their appointment, then the presiding judge of the county court (or its equivalent) in the county in which the principal office of the Sponsor is located will appoint such other arbitrator or arbitrators. The arbitrators will render a decision within 60 days after their appointment and will conduct all proceedings pursuant to the laws of the state in which the Sponsor's principal place of business is located and the then current Rules of the American Arbitration Association governing commercial transactions, to the extent that such rules are not inconsistent with applicable state law. The cost of the arbitration procedure will be borne by the losing party or, if the decision is not clearly in favor of one party or the other, in the manner determined by the arbitrators. The arbitration proceeding provided for in this Section will be the sole and

-55-

                                    AIG_00000426

exclusive remedy of a Claimant to contest decisions of the Committee under this Plan, and the arbitrators' decision will be final, binding and unappealable.

**8.11    QUALIFIED DOMESTIC RELATIONS ORDERS**

A Qualified Domestic Relations Order, or QDRO, is a signed domestic relations order issued by a State Court that creates, recognizes or assigns to an alternate payee(s) the right to receive all or part of a Participant's Plan benefit. An alternate payee is a Spouse, former Spouse, child, or other dependent of a Participant who is treated as a Beneficiary under the Plan as a result of the QDRO. The Administrator may establish QDRO procedures, but in the absence of such procedures, the Administrator will determine if a domestic relations order is a Qualified Domestic Relations Order in accordance with the following provisions:

(a)    **Administrator's Determination:** Promptly upon receipt of a domestic relations order, the Administrator will notify the Participant and any alternate payee(s) named in the order of such receipt, and will include a copy of this Section. Within a reasonable time after receipt of the order, the Administrator will make a determination as to whether or not the order is a QDRO as defined in Code §414(p) and will promptly notify the Participant and any alternate payee(s) in writing of the determination.

(b)    **Specific Requirements Of QDRO:** In order for a domestic relations order to be a Qualified Domestic Relations Order, it must specifically state all of the following: (1) the name and last known mailing address (if any) of the Participant and each alternate payee covered by the order; (2) the dollar amount or percentage of the benefit to be paid to each alternate payee, or the manner in which the amount or percentage will be determined; (3) the number of payments or period for which the order applies; and (4) the name of the plan to which the order applies. The domestic relations order will not be deemed a Qualified Domestic Relations Order if it requires the Plan to provide any type or form of benefit, or any option not already provided for in the Plan, or increased benefits, or benefits in excess of the Participant's Vested Interest, or payment of benefits to an alternate payee required to be paid to another alternate payee under another QDRO.

(c)    **Disputed Orders:** If there is a question as to whether or not a domestic relations order is a Qualified Domestic Relations Order, there will be a delay in any payout to any payee including the Participant, until the status is resolved. In such event, the Administrator will segregate the amount that would have been payable to the alternate payee(s) if the order had been deemed a QDRO. If the order is not determined to be a QDRO, or the status is not resolved (for example, it has been sent back to the Court for clarification or modification) within 18 months beginning with the date the first payment would have to be made under the order, the Administrator will pay the segregated amounts plus interest to the person(s) who would have been entitled to the benefits had there been no order. If a determination as to the Qualified status of the order is made after the 18-month period, then the order will only be applied on a prospective basis. If the order is determined to be a QDRO, the Participant and alternate payee(s) will again be notified promptly after such determination. Once an order is deemed a QDRO, the Administrator will pay to the alternate payee(s) all the amounts due under the QDRO, including segregated amounts plus interest that may have accrued during a dispute as to the order's qualification.

(d)    **Payment Prior To Termination Of Employment:** A QDRO may provide for the payment of benefits to an alternate payee prior to the time a Participant has terminated employment. Further, such payment can be made even if the affected Participant has not yet reached the Earliest Retirement Age, which is the earlier of (1) the date on which the Participant is entitled to a distribution under this Plan, or (2) the later of the date the

-56-

Participant attains age 50 or the earliest date on which the Participant could receive benefits hereunder if the Participant terminated employment with the Employer.

(e)    **Effect Of QDRO On Survivor Annuity Requirements:** Notwithstanding Sections 5.1, 5.2, 5.3 and 5.4 to the contrary, a Participant's benefits which are payable in the form of a Qualified Joint and Survivor Annuity or in the form of a Qualified Preretirement Survivor Annuity need not be paid in such form if such payment is inconsistent with, or has been modified by, the terms of a Qualified Domestic Relations Order.

-57-

CONFIDENTIAL

AIG_00000428

## ARTICLE 9
## AMENDMENT, TERMINATION AND MERGER

**9.1    AMENDMENT OF THE PLAN**

The Sponsor, or, if there is no Sponsor, the Trustee, will have the right to amend the Plan at any time subject to the following provisions:

(a)    **General Requirements:** Amendments must be in writing and cannot (1) increase the responsibilities of the Trustee or Administrator without written consent; (2) deprive any Participant or Beneficiary of benefits to which he or she is entitled; (3) decrease the amount of any Participant's Account except as permitted under Code §412(c)(8); (4) permit any part of the Trust to be used for or diverted to purposes other than the exclusive benefit of the Participants or their Beneficiaries except as required to pay taxes and administration expenses, or cause or permit any portion of the Trust Fund to revert to or become the property of the Employer; or (5) have the effect of eliminating or restricting the ability of a Participant or other payee to receive payment of his or her Account balance or benefit entitlement under a particular optional form of benefit provided under the Plan unless the provisions of subparagraphs (1) and (2) below are satisfied:

(1)    **Lump Sum Requirement:** The amendment provides a lump sum distribution form that is otherwise identical to the optional form of benefit that is restricted or eliminated. For this purpose, a lump sum distribution form is otherwise identical only if it is identical in all respects to the eliminated or restricted optional form of benefit (or would be identical except that it provides greater rights to the payee) except with respect to the timing of payments after commencement.

(2)    **Effective Date:** The amendment cannot apply to any distribution with an Annuity Starting Date which is earlier than the earlier of (A) the 90th day after a Participant has been furnished with a summary plan description or other summary that reflects the amendment and that satisfies the ERISA requirements at 29 CFR 2520.104b-3 relating to a summary of material modifications; or (B) the first day of the second Plan Year following the Plan Year in which this amended Plan is adopted.

(b)    **Certain Corrective Amendments:** For purposes of satisfying the minimum coverage requirements of Code §410(b), the nondiscriminatory amount requirement of regulation §1.401(a)(4)-1(b)(2), or the nondiscriminatory plan amendment requirement of regulation §1.401(a)(4)-1(b)(4), a corrective amendment may retroactively increase allocations for Employees who benefited under the Plan during the Plan Year being corrected, or may grant allocations to Employees who did not benefit under the Plan during the Plan Year being corrected. In addition, to satisfy the nondiscriminatory current availability requirement of regulation §1.401(a)(4)-4(b) for benefits, rights or features, a corrective amendment may make a benefit, right or feature available to Employees to whom it was previously not available. A corrective amendment will not be taken into account prior to the date of its adoption unless the amendment satisfies the applicable requirements of regulation §1.401(a)(4)-11(g)(3)(ii) through (vii), including the requirement that, in order to be effective for the preceding Plan Year, such amendment must be adopted by the 15th day of the 10th month after the close of the preceding Plan Year.

**9.2    TERMINATION OF PLAN BY SPONSOR**

The Sponsor at any time can terminate the Plan and Trust in whole or in part in accordance with the following provisions:

-58-

AIG_00000429

(a)   **Termination Of Plan:** The Sponsor can terminate the Plan and Trust by filing written notice thereof with the Administrator and Trustee and by completely discontinuing contributions to the Plan. Upon any such termination, the Trustee will continue to administer the Trust until distribution has been made to the Participants and other payees, which distribution must occur as soon as administratively feasible after the termination of the Plan, and must be made in accordance with the provisions of Article 5 of the Plan, including Section 5.6(f) where applicable. However, the Administrator may elect not to distribute the Accounts of Participants and other payees upon termination of the Plan but instead to transfer the entire Trust Fund assets and liabilities attributable to this terminated Plan to another qualified plan maintained by the Employer or its successor.

(b)   **Vesting Requirement:** Upon complete termination of the Plan, or upon a complete discontinuance of contributions, all Participants who are affected by the termination, all Participants who have not incurred a Termination of Employment, and all Participants who have incurred a Termination of Employment but have not incurred a 5-year Break in Service will have a 100% Vested Interest in their unpaid Participant's Accounts. Upon partial termination of the Plan only those Participants who have incurred a Termination of Employment on account of the event which caused the partial termination but have not incurred a 5-year Break in Service will automatically have a 100% Vested Interest in their unpaid Participant's Accounts to the date of partial termination.

(c)   **Discontinuance Of Contributions Only:** The Sponsor may elect at any time to completely discontinue contributions to the Plan but continue the Plan in operation in all other respects, in which event the Trustee will continue to administer the Trust until eventual full distribution of all benefits has been made to the Participants and other payees in accordance with Article 5 after their death, retirement, Disability or Termination of Employment. Any such discontinuance of contributions without an additional notice of termination from the Sponsor to the Administrator and Trustee will not constitute a termination of the Plan.

**9.3   TERMINATION OF PARTICIPATION BY ADOPTING EMPLOYER**

Any Adopting Employer may by written resolution terminate participation in the Plan at any time by notification to the Sponsor, the Administrator, and the Trustee. Such Adopting Employer may thereupon request a transfer of Trust Fund assets attributable to its Employees from this Plan to any successor qualified retirement plan maintained by the Adopting Employer or its successor. The Administrator may, however, refuse to make such transfer if in its considered opinion such transfer would operate to the detriment of any Participant, jeopardize the continued qualification of the Plan, or if such transfer does not comply with any requirements of the Internal Revenue Service. If no transfer is made, the provisions in the definition of Adopting Employer in Article 1 will apply with respect to the payment of benefits for Employees of such Adopting Employer.

**9.4   MERGER OR CONSOLIDATION**

This Plan and Trust may not be merged or consolidated with, nor may any of its assets or liabilities be transferred to, any other plan, unless the benefits payable to each Participant if the Plan was terminated immediately after such merger, consolidation or transfer would be equal to or greater than the benefits such Participant would have been entitled to if this Plan had been terminated immediately before such merger, consolidation or transfer.

-59-

# ARTICLE 10
## MISCELLANEOUS PROVISIONS

**10.1  NO CONTRACT OF EMPLOYMENT**
Except as otherwise provided by law, neither the establishment of this Plan, nor any modification hereto, nor the creation of any fund or account, nor the payment of any benefits, will be construed as giving any Participant or other person any legal or equitable rights against the Employer, any officer or Employee thereof, or the Trustee, except as herein provided; and the terms of employment of any Participant will not be modified or affected by this Plan.

**10.2  TITLE TO ASSETS**
No Participant or Beneficiary will have any right to, or any interest in, any assets of the Trust upon separation from service with the Employer, Affiliated Employer, or Adopting Employer, except as otherwise provided by the terms of the Plan.

**10.3  QUALIFIED MILITARY SERVICE**
Notwithstanding any other provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with the requirements of Code §414(u).

**10.4  BONDING OF FIDUCIARIES**
Fiduciaries of this Plan will have only those duties that are specifically given to the Fiduciaries under the terms of this Plan. In addition, every Fiduciary other than a bank, an insurance company, or a Fiduciary of an Employer which has no common-law employees, will be bonded in an amount not less than 10% of the amount of funds under such Fiduciary's supervision, but such bond will not be less than $1,000 or more than $500,000. The bond will provide protection to the Plan against any loss for acts of fraud or dishonesty by a Fiduciary acting alone or in concert with others. The cost of such bond will be an expense of either the Employer or the Trust, at the election of the Employer.

**10.5  SEVERABILITY OF PROVISIONS**
If any Plan provision is held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision of this Plan, and this Plan will be construed and enforced as if such provision had not been included.

**10.6  GENDER AND NUMBER**
Words used in the masculine gender will be construed as though they were also used in the feminine or neuter gender where applicable, and words used in the singular will be construed as though they were also used in the plural where applicable.

**10.7  HEADINGS AND SUBHEADINGS**
Headings and subheadings are inserted for convenience of reference. They constitute no part of this Plan and are not to be considered in its construction.

**10.8  LEGAL ACTION**
In any claim, suit or proceeding concerning the Plan and/or Trust which is brought against the Trustee or the Administrator, this Plan and Trust will be construed and enforced according to the laws of the state in which the Employer maintains its principal place of business, to the extent that it is not preempted by ERISA; and unless otherwise prohibited by law, either the Employer or the Trust, in the sole discretion of the Employer, will reimburse the Trustee and/or Administrator for all costs, attorneys fees and other expenses associated with any such claim, suit or proceeding.

**-60-**

CONFIDENTIAL

AIG_00000431

**10.9    QUALIFIED PLAN STATUS**

This Plan and the related Trust Agreement are intended to be a qualified retirement plan under the provisions of Code §401(a) and §501(a).

**10.10    MAILING OF NOTICES TO ADMINISTRATOR, EMPLOYER OR TRUSTEE**

Any notices, documents or forms required to be given to or filed with the Administrator, the Employer or the Committee will be hand delivered or mailed by first class mail, postage prepaid, to the Committee or Employer at the Employer's principal place of business. Any notices, documents or forms required to be given to or filed with the Trustee will be hand delivered or mailed by first class mail, postage prepaid, to the Trustee at its principal place of business.

**10.11    PARTICIPANT NOTICES AND WAIVERS OF NOTICES TO PARTICIPANTS**

Whenever written notice is required to be given under the terms of this Plan, such notice will be deemed to be given on the date that such written notice is either hand delivered to the recipient or deposited at a United States Postal Service Station, first class mail, postage paid. Notice may be waived by any party otherwise entitled to receive written notice concerning any matter under the terms of this Plan.

**10.12    NO DUPLICATION OF BENEFITS**

There will be no duplication of benefits under the Plan because of employment by more than one participating employer.

**10.13    EVIDENCE FURNISHED CONCLUSIVE**

Anyone required to give evidence under the terms of the Plan may do so by certificate, affidavit, document or other information which the person to act in reliance may consider pertinent, reliable and genuine, and to have been signed, made or presented by the proper party or parties. The Fiduciaries under the Plan will be fully protected in acting and relying upon any evidence described under this Section.

**10.14    RELEASE OF CLAIMS**

Any payment to any Participant or Beneficiary, his or her legal representative, or to any guardian or committee appointed for such Participant or Beneficiary, will, to the extent thereof, be in full satisfaction of all claims hereunder against the Administrator and the Trustee, either of whom may require such Participant, legal representative, Beneficiary, guardian or committee, as a condition precedent to such payment, to execute a receipt and release thereof in such form as determined by the Administrator or the Trustee.

**10.15    MULTIPLE COPIES OF PLAN AND/OR TRUST**

This Plan and the related Trust Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same Agreement or Trust Agreement, as the case may be, and will be binding on the respective successors and assigns of the Employer and all other parties.

**10.16    LIMITATION OF LIABILITY AND INDEMNIFICATION**

In addition to and in furtherance of any other limitations provided in the Plan, and to the extent permitted by applicable law, the Employer will indemnify and hold harmless its board of directors (collectively and individually), if any, the Administrative/Advisory Committee (collectively and individually), if any, and its officers, Employees, and agents against and with respect to any and all expenses, losses, liabilities, costs, and claims, including legal fees to defend against such liabilities and claims, arising out of their good-faith discharge of responsibilities under or incident to the Plan, excepting only expenses and liabilities resulting from willful misconduct. This indemnity will not preclude such further indemnities as may be available under insurance purchased by the Employer or as may be provided by the Employer under any by-law,

-61-

CONFIDENTIAL

AIG_00000432

agreement, vote of shareholders or disinterested directors, or otherwise, as such indemnities are permitted under state law. Payments with respect to any indemnity and payment of expenses or fees under this Section will be made only from assets of the Employer, and will not be made directly or indirectly from assets of the Trust Fund.

-62-

AIG_00000433

**IN WITNESS WHEREOF**, this Plan and Trust have been executed by the Employer and the Trustees as of the day, month and year set forth on page 1 of this Agreement.

**AMERICAN INVESTMENT GROUP OF NEW YORK, L.P.**

By _____
    Robert Crema, Partner

**TRUSTEES**

_____
Robert Crema

_____
Elaina Crema

-63-

CONFIDENTIAL