UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTERFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br>19-cv-01812-LAK; 19-cv-01866-LAK | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANT MICHAEL BEN-JACOB'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

DEWEY PEGNO & KRAMARSKY LLP
Thomas E.L. Dewey
Sean K. Mullen
777 Third Avenue – 37th Floor
New York, New York 10017
Tel.: (212) 943-9000
Fax: (212) 943-4325

*Attorneys for Defendant Michael Ben-Jacob*

Dated: April 29, 2022

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................4

    I.    Ben-Jacob Did Not Receive a Specific and Direct Benefit From SKAT's Payment of Dividend Withholding Tax Refunds ......................................5

    II.    Even if Ben-Jacob Could Be Held Liable on SKAT's Equitable Claims, the Limit of His Liability Is the Amount that Ben-Jacob Actually Received ...................................................................................................9

CONCLUSION ...................................................................................................................10

# **TABLE OF AUTHORITIES**

*Cases* *Page(s)*

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
     731 F.2d 112 (2d Cir.1984)..................................................................................................4

*Bayou Hedge Funds Inv. Litig.*,
     472 F. Supp. 2d 528 (S.D.N.Y. 2007)................................................................................2, 6

*Brenner v. Brenner*,
     2012 WL 3597247 (E.D.N.Y. Aug. 20, 2012).....................................................................5

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
     373 F.3d 296 (2d Cir. 2004)..................................................................................................4

*Chevron Corp. v. Donziger*,
     871 F. Supp. 2d 229 (S.D.N.Y. 2012)..................................................................................8

*Finkel v. E.A. Techs., Inc.*,
     2014 WL 4364757 (E.D.N.Y. Sept. 3, 2014) ....................................................................7, 8

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
     12 N.Y.3d 132 (N.Y. 2009) ..................................................................................................6

*Kaye v. Grossman*,
     202 F.3d 611 (2d Cir. 2000)..................................................................................................6

*Legurnic v. Ciccone*,
     63 F. Supp. 3d 241 (E.D.N.Y. 2014) ...................................................................................5

*Marini v. Adamo*,
     12 F. Supp. 3d 549 (E.D.N.Y. 2014) .................................................................................6, 9

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
     225 F. Supp. 3d 201 (S.D.N.Y. 2016)..................................................................................6

*Omahen v. Omahen*,
     309 A.D.2d 1019 (3d Dep't 2003).......................................................................................9

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
     898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012).........................................................................5

*Swan Media Grp., Inc. v. Staub*,
     841 F. Supp. 2d 804, 809–10 (S.D.N.Y. 2012)..................................................................10

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*,
   2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010) ................................................................. 4, 5

*Zimmerman v. Kohn*,
   No. 652826/13, 2014 WL 1490936 (N.Y. Sup. Ct. Apr. 11, 2014) ...................................... 6


*Other Authorities*                                                                                                    *Page(s)*

Restatement (Third) of Restitution and Unjust Enrichment § 49(4) ................................................ 9

Williston on Contracts § 77:120 ................................................................................................... 9

Defendant Michael Ben-Jacob submits this supplemental memorandum of law in support of his motion for summary judgment as to Plaintiff Skatteforvaltningen's ("SKAT's") claims against Ben-Jacob for unjust enrichment, money had and received, and payment by mistake (the "Equitable Claims") in the bellwether cases of *Skatteforvaltningen v. Basalt Ventures LLC Roth 401K Plan et al.*, No. 19-cv-01866 (S.D.N.Y.) and *Skatteforvaltningen v. Roadcraft Technologies LLC Roth 401K Plan et al.*, No. 19-cv-01812 (S.D.N.Y.). Ben-Jacob submits this supplemental memorandum pursuant to Paragraph 2.6 of the Court's Pretrial Order No. 29, dated November 14, 2021, to present a position unique to him.

## PRELIMINARY STATEMENT

Ben-Jacob moves for summary judgment on SKAT's Equitable Claims on straightforward grounds: SKAT seeks to recover from Ben-Jacob money that it paid in dividend tax withholding refunds that *Ben-Jacob did not receive*. Ben-Jacob was a trusts and estates attorney at Kaye Scholer LLP ("Kaye Scholer").[1] Along with many colleagues and other partners at Kaye Scholer, he provided limited and discrete U.S. legal and administrative services to a group of investors who pursued a dividend arbitrage trading strategy in Denmark. In that capacity, Ben-Jacob signed various forms on behalf of the Basalt Ventures LLC Roth 401K Plan (the "Basalt Plan") and the Roadcraft Technologies LLC Roth 401K Plan (the "Roadcraft Plan"), among other pension plans. Ben-Jacob was not an investor in the strategy; he was not the beneficiary or trustee of any pension plan that participated in any trading of Danish securities; and he did not receive any portion of the dividend withholding tax refunds. These facts, which SKAT cannot dispute, by themselves entitle Ben-Jacob to summary judgment on each of the Equitable Claims that SKAT has asserted against him.

---

[1] Now known as Arnold & Porter Kaye Scholer LLP following a 2017 merger with Arnold & Porter LLP.

SKAT's only counter is to (mis)characterize the annual compensation that Ben-Jacob received from Kaye Scholer as the receipt of some portion of the dividend withholding tax refunds that SKAT contends were fraudulently obtained by Kaye Scholer's clients. SKAT relies on the facts that Kaye Scholer submitted regular monthly invoices for services to the investors that participated in the trading, that Kaye Scholer's fees were paid in part by entities and individuals who had received dividend tax withholding refunds from SKAT, and that Ben-Jacob's annual compensation was paid by Kaye Scholer. Even setting aside SKAT's completely untenable position that Ben-Jacob's annual compensation from his firm derived from this representation alone (as opposed to all his contributions to the firm or his hundreds of other representations), New York law is clear that such an attenuated chain could never support the Equitable Claims against Ben-Jacob. *See In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 531-32 (S.D.N.Y. 2007) (McMahon, J.) (dismissing unjust enrichment claim against defendant law firm that had received fees for services from funds plaintiff alleged were wrongfully obtained). And even if there were legal grounds for holding Ben-Jacob liable on the Equitable Claims (there are not), the amount of that liability cannot exceed Ben-Jacob's total compensation during the relevant period. That sum is a small fraction of the tens of millions of dollars SKAT seeks to recover from him in the bellwether cases (or the hundreds of millions SKAT seeks to recover from him across dozens of cases in this multi-district litigation).

## BACKGROUND

During the relevant period, Ben-Jacob was a trusts and estates partner at Kaye Scholer. Michael Ben-Jacob's Supplemental Rule 56.1 Stmt. ("MBJ 56.1"), ¶ 1. Among his clients were a group of investors who chose to pursue a dividend arbitrage trading strategy in Denmark, and engaged Kaye Scholer to provide legal advice on discrete issues of U.S. law related to the trading strategy. *Id.* ¶ 2. These clients also asked Ben-Jacob and Kaye Scholer to assist with various

administrative services, such as filling out and submitting forms to other entities involved in the trading strategy.  *Id.* ¶ 3.  Ben-Jacob and Kaye Scholer performed these services at the direction of, and relying on information provided by, the client investors.  *Id.* ¶ 4.  The trading strategy involved the purchase of stock in Danish companies by U.S. pension plans, including the Basalt and Roadcraft Plans, which then sought refunds from SKAT of withheld taxes on dividends issued by the Danish companies.  Rule 56.1 Joint Stmt. ("JSUMF"), Dkt. 790, ¶¶ 107-11; 183-92.  With respect to the Basalt and Roadcraft Plans, SKAT paid refunds of withheld dividend taxes during the years 2014 and 2015, and no other years.  *Id.* ¶ 242.[2]  SKAT made those payments to reclaim agents engaged by the pension plans, and those reclaim agents in turn distributed payments received from SKAT to entities as instructed by the plans.  *Id.* ¶ 243.  Ben-Jacob was not an investor in the trading strategy, and neither he nor Kaye Scholer received any portion of the dividend tax withholding refunds.  *Id.* ¶ 244; MBJ 56.1 ¶¶ 7-8.   Neither SKAT nor the reclaim agent paid Ben-Jacob or Kaye Scholer any money at all.  JSUMF ¶ 244.

Consistent with its standard practices, Kaye Scholer submitted regular monthly invoices for its services, with hourly charges for the work performed by Kaye Scholer lawyers and support staff, which the clients paid.  *Id.* ¶ 245; MBJ 56.1 ¶ 5.  The clients who paid Kaye Scholer for those services ultimately received portions of SKAT's dividend tax withholding refunds that were distributed by the reclaim agents.  JSUMF ¶ 246.  The only theory offered by SKAT as to how Ben-Jacob even *could* have received any funds with any connection to the dividend tax withholding refunds paid by SKAT is through the payment of legal fees to Kaye Scholer by individuals and entities who received portions of the dividend tax withholding

---

[2] This and all other facts stated herein are equally true of all 39 plans in all 39 complaints in which SKAT has made Equitable Claims against Ben-Jacob.  This motion focuses on the Basalt and Roadcraft Plans because they are the only bellwethers of those 39 cases.

refunds, and Kaye Scholer subsequently paying Ben-Jacob his annual compensation. *Id.* ¶¶ 246-47. The Basalt and Roadcraft Plans (as well as every other plan for which SKAT asserts Equitable Claims against Ben-Jacob) traded only in 2014 and 2015, and Ben-Jacob's total compensation from Kaye Scholer in those years was $1,303,873 and $1,700,000, respectively. *Id.* ¶¶ 242; 248-49. Therefore, even accepting SKAT's baseless and meritless theory concerning Ben-Jacob's possible receipt of some portion of the dividend tax withholding refunds (which Ben-Jacob denies), it is not possible that he received more of the refunds than he received in total compensation from his firm in the relevant period: $3,003,873.

## ARGUMENT

SKAT asserts three Equitable Claims against Ben-Jacob in the *Roadcraft* and *Basalt* bellwether cases: unjust enrichment, money had and received, and payment by mistake. *Skatteforvaltningen v. Basalt Ventures LLC Roth 401K Plan et al.*, No. 19-cv-01866 (S.D.N.Y.), ECF No. 55, ¶¶ 81-94; *Skatteforvaltningen v. Roadcraft Technologies LLC Roth 401K Plan et al.*, No. 19-cv-01812 (S.D.N.Y.), ECF No. 62, ¶¶ 92-105. Although each cause of action has its own elements,[3] New York courts consider them functionally duplicative, as all three ultimately "turn on a single inquiry: whether [defendant] has benefited from what is rightfully [plaintiff's] such that equity and good conscience demand restoration of the disputed property to [plaintiff]."

---

[3] *See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir.1984) ("The essential elements in a claim for money had and received under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money."); *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 JG ARL, 2010 WL 4038826, at *5 (E.D.N.Y. Oct. 14, 2010) ("The elements of a claim for payment by mistake are that plaintiff made a payment under a mistaken apprehension of fact, that defendant derived a benefit as a result of this mistaken payment, and that equity demands restitution by defendant to plaintiff.").

*T.D. Bank,* 2010 WL 4038826, at *4.  And all three claims fail here because Ben-Jacob never had and does not have any of the "disputed property" (the refunds) to restore.

**I.     BEN-JACOB DID NOT RECEIVE A SPECIFIC AND DIRECT BENEFIT FROM SKAT'S PAYMENT OF DIVIDEND WITHHOLDING TAX REFUNDS**

SKAT cannot and does not dispute that it did not pay Ben-Jacob *any* amount of the dividend tax refunds associated with the Basalt or Roadcraft plans—or any amount of any other dividend tax refunds paid by SKAT.  It therefore attempts to salvage its claims by connecting two payments that have nothing to do with each other: SKAT's payment of tax refunds to reclaim agents, and Ben-Jacob's law firm's payment to him of annual compensation.  SKAT's theory is that: (1) a portion of the dividend tax withholding refunds paid by SKAT went to Kaye Scholer's clients; *and* (2) those clients paid Kaye Scholer's hourly fees for services related to the dividend arbitrage trading strategy; *and* (3) Ben-Jacob's personal employment compensation was paid by Kaye Scholer.  "Under New York law, however, this type of indirect benefit is insufficient to sustain an unjust enrichment claim."  *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012) (Kaplan, J.), *aff'd*, 548 F. App'x 16 (2d Cir. 2013).  Such an attenuated chain between SKAT's payment of dividend withholding tax refunds and the employment compensation received by Ben-Jacob is legally insufficient because SKAT cannot establish that Ben-Jacob received a "specific and direct benefit" from SKAT's payment.

It is well-established that equitable claims like those SKAT has brought here against Ben-Jacob may only be sustained against a defendant who received a "specific and direct" benefit at plaintiff's expense.  *See, e.g., Legurnic v. Ciccone*, 63 F. Supp. 3d 241, 249 (E.D.N.Y. 2014) ("Without any proof of a 'direct' and 'specific' benefit to the Defendant, the jury's verdict that the Defendant is liable for unjust enrichment cannot be sustained."); *Brenner v. Brenner*, 2012

- 5 -

WL 3597247, at *6 (E.D.N.Y. Aug. 20, 2012) (amendment to add an unjust enrichment claim would be futile given lack of a "specific and direct" benefit to defendant); *see also Marini v. Adamo*, 12 F. Supp. 3d 549, 552-53 (E.D.N.Y. 2014) ("[T]he question whether [defendant] benefitted from the Marini fraud is the same for both the unjust enrichment and money had and received claims."). To obtain restitution, the plaintiff must identify a benefit that flowed specifically and directly to the defendant from the plaintiff's payment of the funds at issue. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (wife not liable for unjust enrichment where her husband improperly used loan deposited in couple's joint account and wife at most "received some indirect benefit from the loan"). Thus, courts have dismissed equitable claims like SKAT's where the plaintiff alleges that it made an improper payment to one party, the party pays fees to a service provider, and the plaintiff seeks to recover those fees from the service provider even though it did not pay them. *See Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) ("[C]ourts applying New York law have similarly rejected unjust enrichment claims where the plaintiff seeks to recover fees it did not pay."); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (N.Y. 2009) ("In seeking Morgan Stanley's profits . . . IDT does not, and cannot, allege that Morgan Stanley has been unjustly enriched at IDT"s expense, because IDT did not pay the alleged fees."); *Zimmerman v. Kohn*, No. 652826/13, 2014 WL 1490936, at *3 (N.Y. Sup. Ct. Apr. 11, 2014) ("Unjust enrichment does not apply to the disgorgement of fees paid by another.")

Further, courts have applied the "specific and direct benefit" requirement to bar equitable claims in circumstances directly analogous to SKAT's theory here. In *In re Bayou Hedge Funds Investment Litigation*, 472 F. Supp. 2d 528 (S.D.N.Y. 2007), plaintiffs brought an unjust enrichment claim against, among others, a defendant law firm that had provided legal services to

a group of hedge funds that allegedly engaged in a fraud. *Id.* at 529. The law firm moved to dismiss the claim. *Id.* After noting that "the essence of unjust enrichment is that one party parted with money or a benefit that was received by another at the expense of the first party," Judge McMahon dismissed the claim because plaintiffs had failed to allege that the law firm received a direct and specific benefit from the funds plaintiffs claimed they had paid to the hedge fund group. *Id.* at 531-32. The court held:

> Assuming arguendo that FR & O performed legal work for some Bayou entity in which plaintiffs invested, and that it did so during the class period, and further assuming that FR & O was paid for doing that work . . . the unjust enrichment claim would still have to be dismissed, because the payment by Bayou of operating expenses (such as legal fees) using misappropriated funds does not confer a "direct" and "specific" benefit on FR & O at the expense of plaintiffs.

*Id.* at 532.

Other courts have reached similar results when plaintiffs have sought to recover from a law firm fees that were paid by a third party with money the plaintiff claims is rightfully theirs. *Finkel v. E.A. Techs., Inc.*, 2014 WL 4364757, at *5-6 (E.D.N.Y. Sept. 3, 2014) (dismissing unjust enrichment claim against law firm on grounds that the "alleged enrichment [was not] 'specific' and 'direct'" where plaintiff alleged the law firm received legal fees paid by another party from the proceeds of a real estate transaction that should have been used to pay plaintiff).

The law requires exactly the same result here: SKAT's payment of dividend tax withholding refunds to reclaim agents (a portion of which ultimately went to Kaye Scholer's investor clients) conferred no "specific and direct" benefit on Ben-Jacob. Indeed, the connection between Ben-Jacob and the funds SKAT contends were wrongfully paid is even more attenuated than the circumstances in the cases discussed above. In those cases, the defendants were law firms who were allegedly paid fees out of funds that rightfully belonged to the plaintiff; the courts nonetheless held that was insufficient to show a direct and specific benefit to the law

- 7 -

firms. Here, the fees were not even paid to the defendant, Ben-Jacob, who only received annual compensation from his firm. And neither Ben-Jacob nor his law firm received any tax refunds from SKAT, or even from the reclaim agents. Rather, Kaye Scholer was paid its hourly rates for work performed for its clients and paid Ben-Jacob annual compensation for his many contribution to the firm. Neither qualifies as a direct and specific benefit of SKAT's payments of withholding tax refunds.

Further, neither Kaye's Scholer's fees nor Ben-Jacob's personal compensation were in any way dependent on whether the investor clients successfully obtained dividend tax withholding refunds from SKAT. Kaye Scholer submitted regular monthly invoices for the services of its lawyers and support staff, which the clients were obligated to pay regardless of the success of their investment strategy. MBJ 56.1 ¶ 6. And Ben-Jacob was entitled to compensation for his work regardless of whether certain of the firm's clients received any funds from SKAT. Thus, there is no benefit that Ben-Jacob received *at SKAT's expense*, another necessary element of SKAT's claims. *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259–60 (S.D.N.Y. 2012) (Kaplan, J.) ("'The essence of [an unjust enrichment] claim is that one party has received money or a benefit at the expense of another.'") (quoting *Kaye*, 202 F.3d at 616); *Finkel*, 2014 WL 4364757, at *6 ("While [defendant law firm] was undoubtedly enriched by the payments for legal fees it received from the proceeds of the Willner apartment sale, plaintiff has not alleged facts to establish that [defendant law firm's] receipt of fees from its client was at plaintiff's expense.") This kind of extreme attenuation between SKAT's payment of dividend tax withholding reclaims and Ben-Jacob's annual compensation is precisely why courts require plaintiffs to demonstrate a "specific and direct benefit" to the

defendant from whom they seek to recover funds and that the benefit was at plaintiff's expense. SKAT could not and has not shown either here.

## II. EVEN IF BEN-JACOB COULD BE HELD LIABLE ON SKAT'S EQUITABLE CLAIMS, THE LIMIT OF HIS LIABILITY IS THE AMOUNT THAT BEN-JACOB ACTUALLY RECIVED

Even if SKAT's attenuated theory connecting Ben-Jacob to the funds SKAT contends were wrongfully paid to reclaim agents were sufficient to support SKAT's Equitable Claims—and it is not—it is axiomatic that the amount SKAT could recover from Ben-Jacob on those claims is limited to the amount of SKAT's money that Ben-Jacob actually received and not the alleged hundreds of millions of dollars SKAT paid to reclaim agents. *See* 30 Williston on Contracts § 77:120 (4th ed.) ("[T]he measure of liability in restitution [cannot] exceed the measure of the defendant's enrichment."); Restatement (Third) of Restitution and Unjust Enrichment § 49(4) ("When restitution is intended to strip the defendant of a wrongful gain, the standard of liability is not the value of the benefit conferred but the amount of the profit wrongfully obtained."); *Marini*, 995 F. Supp. 2d at 204 (as to claims for unjust enrichment and money had and received, "if it could be proven that she personally benefitted from the specific funds in the joint account that represented the fraudulent proceeds from her husband's coin transactions with plaintiffs, equity and good conscience would require restitution by Mrs. Adamo ***for that particular amount of money***") (emphasis added); *Omahen v. Omahen*, 309 A.D.2d 1019, 1020 (3d Dep't 2003) ("Plaintiff received a cash payment pursuant to the [qualified domestic relations order] and, as such, 'the measure of recovery . . . is the amount of money received'").

Here, even accepting SKAT's theory, the absolute outer limit of Ben-Jacob's possible liability on SKAT's Equitable Claims in the *Roadcraft* and *Basalt* bellwether cases—and in fact ***across all of the cases in this multi-district litigation in which such claims have been***

- 9 -

*asserted*—is the total amount of Ben-Jacob's personal compensation from Kaye Scholer in 2014 and 2015.  JSUMF ¶¶ 242; 246-47; *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 809–10 (S.D.N.Y. 2012) ("Because the doctrine of unjust enrichment is grounded in restitution, the measure of damages for an unjust enrichment claim is based on the amount of benefit retained by the defendant, rather than by a plaintiff's loss.").[4]  Ben-Jacob's total compensation during those years was $3,003,873.  JSUMF ¶¶ 248-49.  Accordingly, in the event that the Court does not grant summary judgment on the Equitable Claims outright, it should limit Ben-Jacob's total liability on SKAT's Equitable Claims across all cases in this multi-district litigation to no more than $3,003,873.

## CONCLUSION

For the reasons above, Ben-Jacob's motion for summary judgment should be granted.

Dated: New York, New York          DEWEY PEGNO & KRAMARSKY LLP
       April 29, 2022

                                   _____
                                   Thomas E.L. Dewey
                                   Sean K. Mullen
                                   777 Third Avenue – 37th Floor
                                   New York, New York 10017
                                   Tel.: (212) 943-9000
                                   Fax: (212) 943-4325
                                   tdewey@dpklaw.com
                                   smullen@dpklaw.com

                                   *Attorneys for Defendant Michael Ben-Jacob*

---

[4] Of course, this compensation is for his overall contribution to the firm, with client fees only being one factor.  Further, Ben-Jacob had *hundreds* of representations over this period, so it is unreasonable to conclude that Ben-Jacob's compensation was driven solely or even primarily by the fees collected in this matter (and indeed this attenuation is part of why SKAT's Equitable Claims fail and Ben-Jacob should be granted summary judgment).  For these reasons, Ben-Jacob maintains that even if SKAT could recover on its Equitable Claims, its recovery should be significantly less than his total compensation over the relevant period, and Ben-Jacob reserves the right to make that argument at a later time.