# Exhibit 25

Message

**From:** Erna Christensen [/O=TOLDSKAT/OU=TOLDSKAT/CN=RECIPIENTS/CN=W11520]
**Sent:** 18-01-2007 10:15:14
**To:** Leif Normann Jeppesen [leif.jeppesen@skat.dk]
**CC:** Lisbeth Rømer [lisbeth.roemer@skat.dk]; Susanne Reinholdt Andersen [susanne.reinholdt@skat.dk]; Keld Borup [keld.borup@skat.dk]; Jette Zester [jette.zester@skat.dk]; Niels Andersen [niels.andersen@skat.dk]; Henrik Møller Nielsen [henrik.moeller.nielsen@skat.dk]; Michael Bjørn Hansen [michael.bjoern.hansen@skat.dk]; Lisbeth Rasmussen [lisbeth.rasmussen@skat.dk]; Anders Holten Lützhøft [anders.lutzhoeft@skat.dk]; Mogens Rasmussen [mogens.rasmussen@skat.dk]
**Subject:** SV: Re
**Attachments:** EW.doc

Jeg har følgende bemærkninger:
Lisbeth Rømer oplyste på det fællesmøde vi holdt, at den omtalte mængde aktier ikke vedrører de aktier, som  ejer. De er modtaget skattefrit efter reglen i SEL § 13, stk. 1.

Lisbeth Rømer må levere oplysningen om, hvor stor en andel af det samlede udbytte den konkrete sag vedrører.

Jeg er meget stærkt i tvivl om beskrivelse af de skattemæssige konsekvenser af aktieudlån. Området er underlagt aftalefrihed, så hvem, der har ret til at modtaget "udbyttet" og hvem, der modtager evt. kompenserende beløb, kan nok ikke defineres entydigt (dette er anført uden kendskab til arbejdspapiret fra februar 2004). Dette må Henrik Møller Nielsen kunne svare mere præcist på. Bemærk, at man i ligningslovens § 16C, stk. 3 (om investeringsforeningers minimumsudlodning) angiver følgende:

*Stk. 3.* I beregningen af minimumsudlodningen indgår følgende indtægter:

1) Indtjente renter og løbende ydelser, begge fordelt over den periode, som indtægten vedrører, samt vederlag for udlån af værdipapirer.
2) Indtjente udbytter efter § 16 A fratrukket indeholdt udbytteskat og tillagt tilbagebetalt udbytteskat og afståelsessummer efter § 16 B **samt låntagers betaling til långiver af dennes manglende udbytte ved aktieudlån, i det omfang de nævnte indtægter ikke er omfattet af nr. 9.**

............................

9) Indtjente udbytter efter § 16 A fratrukket indeholdt udbytteskat og tillagt tilbagebetalt udbytteskat og afståelsessummer efter § 16 B **samt låntagers betaling til långiver af dennes manglende udbytte ved aktieudlån, i det omfang de nævnte indtægter for skattepligtige personer ville være omfattet af § 4 a, stk. 1, nr. 1 eller 2, uden at være omfattet af § 4 a, stk. 2.**

Ændringer af udbytteerklæringerne er SKATs ansvar og arbejdet er sat på dagsordenen.

Med venlig hilsen

Erna Christensen

---

**Fra:** Leif Normann Jeppesen
**Sendt:** 18. januar 2007 09:19
**Til:** Lisbeth Rømer; Susanne Reinholdt Andersen; Keld Borup; Erna Christensen; Jette Zester
**Cc:** Niels Andersen; Henrik Møller Nielsen; Michael Bjørn Hansen; Lisbeth Rasmussen
**Emne:** SV: Re

Med stor risiko for, at der er ting, jeg har misforstået, har jeg lavet vedlagte udkast til early warning i sagen.

Jeg har tænkt på, om vi ikke kan bede kapitalfonden om en erklæring om ejerforholdet til aktierne i 2006 og om de har været udlånt – evt. få kopi af aftaler herom. Jeg ved ikke helt, om vi har hjemmel dertil – men det er vel under alle omstændigheder oplysninger, vi skal have på et senere tidspunkt, når vi skal gennemgå selvangivelsen – og det skal vi vel!

Ellers må vi bede om dokumentation for køb og salg eller for lån mv.

– eller også bør vi gøre begge dele samtidigt!

Jeg vil meget gerne – meget hurtigt – høre Jeres bemærkninger til mit udkast og til mit forslag!!!

Med venlig hilsen

Leif Normann Jeppesen

SKAT
Juridisk Service
Direktor
Østbanegade 123, 2100 København Ø

E-mail: Leif.Jeppesen@Skat.dk
Telefon: (+45) 72 37 88 42

---

**Fra:** Lisbeth Rømer
**Sendt:** 16. januar 2007 12:51
**Til:** Susanne Reinholdt Andersen; Keld Borup; Erna Christensen; Leif Normann Jeppesen; Jette Zester
**Emne:** VS: Re [redacted]

Kære alle,
Med denne erklæring i hånden kan vi ikke andet end frigive pengene. Vi arbejder på at undgå lignende situationer i fremtiden.
Har jeg ikke fået kontraordre ingen i morgen onsdag kl 12, vil jeg frigive.
Jeg har netop modtaget originaldokumentet.
Med venlig hilsen
Lisbeth Rømer

---

**Fra:** [redacted]
**Sendt:** 12. januar 2007 10:44
**Til:** Lisbeth Rømer
**Cc:** Laurits Cramer; Sven Nielsen; [redacted]
**Emne:** Re [redacted]

Lisbeth,
Please see the attached file for a copy of the documentation you requested for [redacted]
We are sending the original documents today by international courier for your attention to the following address:

Udbytteskat
Postboks 59
DK 2750 Ballerup

Please acknowledge safe receipt of the documents.

Thank you,
Regards,

[redacted]
Tax Reclaims
London

Phone 00 44 [redacted]
Fax 00 44 [redacted]
---

Confidential Pursuant to Protective Order SKAT_MDL_001_00603758

Udbytteskat i SC Ballerup har modtaget anmodning om tilbagebetaling af .......(Kan jeg få dig – Lisbeth – til at overføre og tilpasse teksten fra dit oprindelige notat?).

Der er en vis risiko for, at der er tale om spekulation i den dansk-franske dobbeltbeskatningsoverenskomst, der hjemler krav på tilbagebetaling af den fulde udbytteskat til personer og selskaber mv. hjemmehørende i Frankrig.

Baggrunden er, at [redacted] ejer 88,2 % af aktierne i TDC A/S. [redacted] ønsker at få TDC afnoteret, men det er endnu ikke lykkedes, idet selskabet ikke ejer en tilstrækkelig andel af aktiebeholdningen. På denne baggrund er det tvivlsomt, om [redacted] eller nogle af de institutionelle aktionærer i 2006 ønskede at afhænde nogen del af deres aktiebeholdning. Vi har da heller ikke konkret kendskab til aktiehandler i dette omfang.

På trods heraf hævder [redacted] at være retmæssig ejer af mere end halvdelen af aktiebeholdningen på tidspunktet for deklarering af udbytte i 2006.

Det giver anledning til nærmere at undersøge, om der er tale om eventuelle aktiehandler, der efter gældende dansk skattepraksis kan tilsidesættes som ikke-reelle aktiehandler, eller om der er tale om aktieudlån.

Beskatningsreglerne ved aktieudlån kan kort beskrives således:

Indgåelse af en aftale om aktieudlån efter gældende internationale aftaler giver låntager ret til at afhænde de lånte aktier. Alligevel anses långiver ikke skattemæssigt at have afstået aktierne (ingen afståelsesbeskatning) – på trods af, at udlånet registreres som køb/salg i VP.

Udbytte af de udlånte aktier skal i henhold til låneaftalen tilbageføres til långiveren – uanset om det er låntageren, der oppebærer udbyttet eller han har afstået aktierne, og udbyttet derfor udbetales til denne køber (eller en efterfølgende låntager/køber osv.). Landsskatteretten har afgjort, at det kun er ejeren, der kan udbyttebeskattes, og da långiveren ikke skattemæssigt anses at have afstået aktierne, er det ham – og udelukkende ham - der skal ***udbytte***beskattes.
Der er dog et stort kontrolmæssigt problem heri, idet låntager har de pågældende aktier i hænde (står noteret som ejer i VP) og derfor umiddelbart også bliver registreret som udbyttemodtager og modtager udbyttet som sådan. Problemet er endnu større, hvis låntager har videresolgt aktierne til en køber - og denne køber kan igen have udlånt aktierne til en låntager, der igen har videresolgt aktierne osv.

Jeg forudsætter, at aktieudlån udelukkende sker efter aftale med den pågældende ejer af aktierne (evt. af en anden efter fuldmagt – men således at aftalen retligt kan føres tilbage til ejeren). Jeg har dog hørt rygter om, at aktieudlån i visse tilfælde kan ske uden ejerens vidende gennem det kontoførende institut. Det er for mig pt. usikkert, om disse forhold omfattes af reglerne i bekendtgørelse af lov om værdipapirhandel m.v. – jf. herom:

**§ 55.** Yder en clearingcentral eller clearingdeltager lån til en clearingdeltager i forbindelse med afviklingen af værdipapirhandler eller betalinger i clearingcentralen, kan det forinden være aftalt med låntager, at de af låntagerens fondsaktiver, der opbevares i et eller flere af låntageren udpegede depoter i en værdipapircentral, kan tjene til pant for indfrielsen af lånet.

----og de efterfølgende paragraffer.

Med de nugældende skattemæssige regler i Danmark betyder det, at den samme aktiebeholdning lovligt kan indgå samtidigt i flere ejeres beholdning – men alene den egentlige (oprindelige) ejer kan modtage udbytte deraf i skattemæssig forstand.

I den konkrete sag vil det betyder, at den afgivne erklæring om ejerforholdet til aktierne for så vidt godt kan være rigtig – men det er ikke nok til at berettige til refusion af udbytteskat, idet udbyttet ikke skattemæssigt anses for aktieudbytte efter de danske regler (låntager skal ifølge standardaftalerne aflevere (refundere) udbyttet til långiveren).

Generelt giver sagen anledning til at overveje, om den gældende praksis i Danmark bør ændres. Det vil i givet fald kun kunne ske ved en lovændring eller ved en praksisændring i Skatterådet. I denne vurdering må dels indgå erhvervslivets behov for at have dette instrument til rådighed i samme udstrækning som i andre lande og andre landes skattemæssige regler for aktieudlån. En arbejdsgruppe med deltagere fra ToldSkat og Skatteministeriet har i februar 2004 lavet et arbejdspapir med gennemgang af de danske regler for aktielån og en sammenligning med andre landes regler. Dette arbejde er ikke videreført.

Samtidig bør det overvejes, om der er grundlag for en ændring af dobbeltbeskatningsoverenskomsten med Frankrig (også på dette punkt!) – og om der er mulighed for at få en sådan ændring gennemført.

Under alle omstændigheder bør vore udbytteerklæringsblanketter gennemgås nøje, så det klart fremgår, hvilke krav vi stiller til ejerforhold mv. og dokumentation herfor for at få refunderet udbytteskat. Dette må evt. ske i samarbejde med de franske myndigheder.

Endelig må aktielånsproblematikken vurderes i relation til indsatsplanen – Der er efter min opfattelse grundlag for straks at gennemføre undersøgelser på udvalgte områder af, hvordan aktielån i praksis behandles i regnskaber og selvangivelser mv – set i sammenhæng med de regnskabsmæssige regler derfor. Det kan ske i samarbejde med Finansrådet og Finanstilsynet. Som en del af denne undersøgelse kan indgå kontrol af de udbytteskatrefusioner, der er sket i 2005 og 2006 til aktieejere i Frankrig.

**Message**

**pious:** [Erna Christensen /O=CUSTOMS TAX/OU=CUSTOMS TAX/CN=RECIPIENTS/CN=W11520 ]
**late:** 18-01-2007 10:15:14
**two:** Leif Normann Jeppesen [leif.jeppesen@skat.dk]
**Cc:** Lisbeth Rømer [lisbeth.roemer@skat.dk]; Susanne Reinholdt Andersen [susanne.reinholdt@skat.dk]; Keld Borup [keld.borup@skat.dk]; Jette Zester [jette.zester@skat.dk]; 2014 [niels.andersen@skat.dk]; Henrik Møller Nielsen [henrik.moeller.nielsen@skat.dk]; Michael Bjørn Hansen [michael.bjoern.hansen@skat.dk]; Lisbeth Rasmussen [lisbeth.rasmussen@skat.dk]; Anders Holten Lutzhøft [anders.lutzhoeft@skat.dk]; Mogens Rasmussen [mogens.rasmussen@skat.dk]
**Subject:** Sv: Re
**Attachments:** EW.doc

I would like to make the following comments:
Lisbeth Rømer stated at the joint meeting that the quantity of shares in question does not relate to the shares owner. They have been received tax-free under the rule laid down in Paragraph 13(1) of the SEL. 1.

Lisbeth Rømer must provide the information on the proportion of the total proceeds of the case.

I have serious doubts about the description of the tax implications of share lending. The area is subject to freedom of contract, so who is entitled to receive the "dividend' and who receives any benefits is not entitled to the benefit. compensatory amounts may not be clearly defined (this is stated without knowledge of the February 2004 working paper). Henrik Møller Nielsen must be able to answer this more precisely. Please note that section 16C(1) of the Danish Tax Assessment Act states that the tax on the use of the tax on the use of the product in the field of health and Rule 3(3) states:

*Pcs. 3.* The calculation of the minimum distribution shall include the following revenue:

1) Accrued interest and current benefits, both spread over the period covered by the income, as well as remuneration for the lending of securities.
2) Dividends earned under Section 16A less withholding dividend tax and tax refunded **in so far as the said income is not covered by paragraph 16B and the borrower's payment to the lender of his non-dividend dividend on share lending, in so far as those income is not covered by paragraph 10. 9.**

9) **Dividends earned under Section 16A less dividend tax deducted and tax on dividends refunded and relinquished in accordance with Section 16b and the borrower's payment to the lender of his non-dividend dividend on share lending, in so far as the said income for taxable persons would be covered by Section 4a(1) of the Act. 1, No. 1 or 2, without being covered by Paragraph 4a(2). 2.**

Changes to the profit statements are the responsibility of the ESC and the work is on the agenda.

Yours sincerely

Erna Christensen

**from: Leif Normann Jeppesen Sent:** 18. January 2007 09:19
**towards:** Lisbeth Rømer; Susanne Reinholdt Andersen; Keld Borup; Erna Christensen; **Jette Zester**
**Cc:** Niels Andersen; Henrik Møller Nielsen; Michael Bjorn Hansen; **Lisbeth Rasmussen Subject:** Sv: Re|

At great risk that there are things I have misunderstood, I have made the attached draft early warning in the case.

I have wondered whether we cannot ask the private equity fund for a statement on the ownership of the shares in 2006 and whether they have been lent - possibly in 2006 - or whether they have been lent. obtain copies of agreements to that effect. I do not know whether we have the legal basis for this - but I suppose that is information that we will have at a later date when we have to go through the tax return - and I suppose we should!

Otherwise, we must ask ^^^^^^for documentation of purchase and sale or of loans, etc.

- or we should do both at the same time!

I would very much like to hear your comments on my draft and on my proposal very quickly!!! Yours sincerely

**Leif Normann Jeppesen 5KAT**

Jarlic Napkin

east railway street 123, 2100 Copenhagen O

E-raaO: Laif.Jappesani20Skai.dk Phone: (-
M3) 72 37 88 42

**from: Lisbeth Rømer Sent:** 16. January 12, 2007 12:51 PM
**towards:** Susanne Reinholdt Andersen; Keld Borup; Erna Christensen; Leif Normann Jeppesen; **Jette Zester**
**Subject:** Vs:

Dear all,
With this statement in hand, all we can do is release the money. We are working to avoid similar situations in the future.
If I haven't been counter-ordered tomorrow Wednesday at noon, I'll release.
I have just received the original document.
Yours sincerely Lisbeth Rømer

**from:**
**sent:** 12. **January 2007 10:44 To: Lisbeth Rømer Cc:** Laurits Cramer; Sven Nielsen; **| subject:** Rel

Lisbeth
Please see the attached file for a copy of the documentation you requested for

ve been sending the original documents today by international courier for your attention to the following address:

Dividend tax Post office box 59 GB 2750 Ballerup

Please acknowledge the safe receipt of the documents.

Thank you,
2015- 2

Tax Reclaims London

Phone 00 44| Fax 00 44



Dividend tax in SC Ballerup has been requested to refund (Can I get you?) Lisbeth - to transform and adapt the text from your original memo?).

There is a certain risk that there is speculation in the Danish-French Double Tax Convention, which provides for the recovery of the full dividend tax to persons and companies, etc. in France.

The background is that 88,2 % of the share in TDC A/S is owned. - 0. wishes to be unlisted by TDC, but this has not yet been done, since the company does not own an adequate share of the shareholding. Against this background, it is doubtful whether~or some of the institutional shareholders wished to hold any part of their shareholding in 2006. We do not have any specific knowledge of such a scale of trading in shares.

Despite this, the fact that the balance sheet is no longer more than half of the shareholding at the time of the declaration of profit in 2006.

It would be more appropriate to examine whether the transactions in shares are possible and could be disregarded, in accordance with the relevant Danish tax practice, as non-real transactions in shares or whether they are foreign shares.

The tax rules for the stock level can be summarized as follows:

The conclusion of an agreement on the level of shareholdings under current international agreements gives the beneficiary the right to sell the long shares. Nevertheless, the company is not considered to have divested the share (no divestiture tax) — despite the fact that the foreign company is registered as a buyer/sale in the VP.

Under the terms of the country agreement, the dividend of the shares must be returned to the lender - irrespective of whether the dividend is received by the IAdvocate or whether he has divested the share, and the dividend is therefore paid to this keeper (or a subsequent Isupporter, etc.). The Land Tax Code has ruled that only the owner can be taxed on dividends, and since the tax regulator is not considered to have transferred any share, it is he - and only him - who must be *taxed on dividends*.
However, there is a major monitoring problem in this respect, as the recipient has the callous shares (registered as the owner of the VP) and is therefore immediately registered as the recipient of the dividends and receives the dividend as such. The problem is even worse if the recipient has resold the share to an Emperor - and this Emperor may again have extracted the share to an Inquire who has resold the share, and so on.

I presume that the share foreign currency will only be agreed with the pagating shareholder of the share (if any). by someone else after proxy - but said that the agreement can be legally delivered back to the owner). However, I have heard rumors that, in some cases, the stock exchange can be done without the owner's knowledge through the accounting institute. It's for me now. whether these matters are covered by the rules of the Vertical Securities Trading Act, etc. - in accordance with this Regulation:

§ **55.** Where a clearing house or clearing participant issues Ian to a clearing participant in the settlement of va:securities transactions or payments at the clearing house, it may agree beforehand with the participant that the assets of the beneficiary's fund held in one or more of the beneficiary's custodians located in a securities settlement center may serve as a pledge for the settlement of such networks.

—and the following paragraphs.

Confidential Pursuant to Protective Order SKAT_MDL_001_00603759

With the current tax rules in Denmark, this means that the same shareholding can be legally entered into simultaneously in the holdings of several owners - but only the beneficial (original) owner can benefit from it for tax purposes.

In this particular case, it will mean that the declaration of ownership of the share can be correct - but not enough to justify it! refund of dividend tax, since the dividend is not considered for tax purposes as a share dividend under Danish rules (the farmer must! return (reimburse) the return to the lender, according to the model contract).

Generally speaking, the matter raises the question of whether the current practice in Denmark is based on the birth of a mother. It

viii   if applicable, it could only be done by a legislative process or by a practice change in the Tax Office. In this assessment, the need for industry to have this instrument must be addressed. equity in the same range as in other countries and other countries' fiscal rules on equity. In February 2004, a working group of Customs Tax and Tax Ministers has produced a working paper reviewing the Danish rules for shareholder status and comparing them with those of other countries. This work, they're not confort.

At the same time, it is worth considering whether there is any basis for the amendment of the double taxation convention with France (including on this point!) and whether there is any possibility of such an amendment being passed through.

In any case, our profit declaration forms live through a great deal of gas, so that it is clear what requirements we impose on ownership, and so on. and supporting evidence for the reimbursement of the dividend tax. This may be necessary. be carried out in cooperation with the French authorities.

Finally, the issue of equity ownership must be assessed in relation to the action plan - I believe there is a basis for immediately carrying out studies in selected areas on the practical treatment of equity in accounting and tax returns, etc. - in the context of the accounting rules, therefore. This can be done in cooperation with the Finance Council and the Financial Supervisory Authority. As part of this study, checks can be made on the dividend tax repayments made in 2005 and 2006 in ten! shareholders in France.

Confidential Pursuant to Protective Order SKAT_MDL_001_00603760