# Exhibit 67

UNITED STATES - CANADA INCOME TAX CONVENTION

*Convention Signed at Washington, D.C. on September 26,1980;*
*Protocol Signed at Ottawa June 14, 1983;*
*Protocol Signed at Washington, D.C., March 28,1984;*
*Ratification Advised by the Senate of the United States of America on June 28, 1984;*
*Entered into Force August 16, 1984.*

GENERAL EFFECTIVE DATE UNDER ARTICLE XXX: 1 JANUARY 1985

TABLE OF ARTICLES

ARTICLE I-----------------------------Personal Scope
ARTICLE II----------------------------Taxes Covered
ARTICLE III---------------------------General Definitions
ARTICLE IV---------------------------Residence
ARTICLE V----------------------------Permanent Establishment
ARTICLE VI---------------------------Income from Real Property
ARTICLE VII--------------------------Business Profits
ARTICLE VIII-------------------------Transportation
ARTICLE IX---------------------------Related Persons
ARTICLE X----------------------------Dividends
ARTICLE XI---------------------------Interest
ARTICLE XII--------------------------Royalties
ARTICLE XIII-------------------------Gains
ARTICLE XIV-------------------------Independent Personal Services
ARTICLE XV--------------------------Dependent Personal Services
ARTICLE XVI-------------------------Artistes and Athletes
ARTICLE XVII------------------------Withholding of Taxes in Respect of Independent
                                    Personal Services
ARTICLE XVIII-----------------------Pensions and Annuities
ARTICLE XIX-------------------------Government Service
ARTICLE XX -------------------------Students
ARTICLE XXI-------------------------Exempt Organizations
ARTICLE XXII------------------------Other Income
ARTICLE XXIII-----------------------Capital
ARTICLE XXIV-----------------------Elimination of Double Taxation
ARTICLE XXV------------------------Non-Discrimination
ARTICLE XXVI-----------------------Mutual Agreement Procedure
ARTICLE XXVII----------------------Exchange of Information
ARTICLE XXVIII---------------------Diplomatic Agents and Consular Officers
ARTICLE XXIX----------------------Miscellaneous Rules

ARTICLE XXX------------------------Entry into Force
ARTICLE XXXI------------------------Termination
Notes of Exchange----------------------of 26 September, 1980
Letter of Submittal----------------------of 16 October, 1980
Letter of Transmittal---------------------of 12 November, 1980
Protocol 1---------------------------------of 14 June, 1983
Notes of Exchange-(Protocol 1)-------of 14 June, 1983
Letter of Submittal-(Protocol 1)-------of 2 September, 1983
Letter of Transmittal-(Protocol 1)-----of 21 September, 1983
Protocol 2---------------------------------of 28 March, 1984
Letter of Submittal-(Protocol 2--------of 2 April, 1984
Letter of Transmittal-(Protocol 2)-----of 18 April, 1984
Protocol 3---------------------------------of 17 March, 1995
Letter of Submittal-(Protocol 3)-------of 12 April, 1995
Letter of Transmittal-(Protocol 3)-----of 24 April, 1995
Protocol 4---------------------------------of 29 July, 1997
Letter of Submittal-(Protocol 4)-------of 12 August, 1997
Letter of Transmittal-(Protocol 4)-----of 23 September, 1997
The "Saving Clause"--------------------Paragraph 2 of Article XXIX

CONVENTION WITH CANADA WITH RESPECT
TO TAXES ON INCOME AND CAPITAL

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

A CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND CANADA WITH
RESPECT TO TAXES ON INCOME AND CAPITAL, SIGNED AT WASHINGTON ON
SEPTEMBER 26, 1980, WITH A RELATED EXCHANGE OF NOTES

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, October 16, 1980.*

THE PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, a Convention between the United States of America and Canada with respect to Taxes on Income and Capital (the Convention), signed at Washington on September 26, 1980, and a related exchange of notes signed on the same day.

The existing income tax convention with Canada, which was signed in 1942 and amended for supplementary conventions in 1950, 1956 and 1966, is the second oldest United States tax convention in force. The new Convention revises the existing convention by accommodating changes in United States and Canadian law, with particular reference to Canada's 1971 tax reform, as well as changes in treaty policy.

The Convention is based, in general, on the United States and OECD model conventions. It deviates from the models, however, in a number of important respects in order to take account of particular features of Canadian law and its interaction with United States law, the unique economic relationship between the United States and Canada, and the provisions of the existing convention.

Like the existing convention, the new Convention provides that the business profits of a resident of one Contracting State will not be subject to tax by the other State except to the extent that they are attributable to a permanent establishment which the resident has in the other State. The definition of a permanent establishment in the new Convention is more comprehensive than that in the existing convention and is very similar to the definition in the United States model.

The Convention follows the normal practice of providing reciprocal exemption for international shipping and air transport income. It goes beyond the model, however, by exempting on a reciprocal basis, as in the existing convention, income from the international operation of motor vehicles. It also adds an exemption for railroad operating income and a limited exemption for income from the rental of railway equipment, motor vehicles, trailers, and containers.

The Convention establishes maximum reciprocal rates of withholding at source for dividends, interest. and royalties. Although the rates exceed those in the United States model for several types of income, there are a number of significant reductions in withholding rates in comparison with the existing convention.

Portfolio dividends remain subject to a maximum 15 percent rate of tax at source. The maximum rate of tax at source on direct investment dividends is, however, reduced to 10 percent, from the 15 percent rate provided in the existing convention. This reduced rate also applies to the Canadian tax on branch profits, presently being imposed at a rate of 15 percent. Unlike the existing convention, the Convention preserves for the United States its right to impose tax on dividends paid by a Canadian

corporation where at least 50 percent of the gross income of that corporation is attributable to a United States permanent establishment of that corporation.

As in the existing convention, the maximum rate of withholding tax at source on interest is set at 15 percent. However, the new Convention provides several exceptions to that rule under which interest is exempt at source. Interest derived, guaranteed, or insured by a Contracting State, political subdivision, local authority, or instrumentality is exempt at source, as is interest paid by an entity not subject to tax in the source State and interest on trade credits between persons dealing at arm's length.

Artistic royalties, other than motion picture royalties, continue to be exempt at source. All other royalties are subject to a maximum source country tax rate of 10 percent, as compared to 15 percent under the existing convention.

Under the existing convention gains from the sale or exchange of capital assets are generally exempt from tax in the source State. The new Convention introduces a number of important modifications to that rule. As in the United States model, gains from the alienation of real property and property forming part of a permanent establishment may be taxed where the property or permanent establishment is situated. Consistent with current United States treaty policy, but not reflected in the United States model. the Convention further provides that gain from the alienation of shares in a corporation or interest in a partnership, estate, or trust, the property of which consists principally of real property, may be taxed by the country where the property is situated. A number of special rules are also provided which relate to specific aspects of Canadian tax treatment of capital gains when property is transferred by gift or when an individual gives up Canadian residence. These rules are designed to mesh the United States and Canadian tax systems in such cases.

In general, the rules in the Convention relating to the treatment of personal services income follow the pattern of the United States model. There are, however, some exceptions. In addition to the normal tests for the exemption of income from dependent personal services in the country where such services are rendered, a dollar threshold of $10,000 is provided. A special rule, not found in other United States conventions, is provided for reduced withholding, under certain circumstances, on remuneration from independent personal services.

The new Convention provides, as in the existing convention and United States model, that pensions and annuities are generally taxable in the State of residence of the recipient. However, it also provides that taxation by the residence State shall not exceed the amount that would be taxable if the recipient were a resident of the other State: and taxation is allowed in the State in which the payments arise, at a rate not in excess of 15 percent.

The Convention repeats, with certain modifications and refinements, the rules in the existing convention providing for reciprocal exemption of income derived by charitable organization of the other State and for the deductibility of contributions by residents of one State to such organizations in the other.

As in the model, items of income not dealt with elsewhere in the Convention are taxable in the State of residence of the recipient. However, in the Convention, such income is also taxable in the other State if it arises there.

In addition to the normal rules for the avoidance of double taxation, the Convention contains a rule not found in either the model or the existing convention for eliminating double taxation of United States citizens who are residents in Canada. Under Canadian law, the credit for foreign taxes on dividends, interest, and royalties is limited to 15 percent. Though the United States withholding rates under the Convention on these forms of income do not exceed 15 percent, United States citizens are subject to United States tax at normal progressive rates. Under the new Convention the United States agrees to give Canada the primary right to any tax on such income in excess of 15 percent, with the United States retaining only a residual right to tax.

The nondiscrimination protection of the Convention is somewhat narrower than the United States model, but is broader than the protection in the existing convention. In a rule not found in any other United States income tax treaty, expenses incurred by a resident of a Contracting State with respect to a convention or conference held in the other State are deductible to the same extent as if the convention were held in the State of residence.

Under the mutual agreement procedures of the Convention, if one State adjusts the accounts of a taxpayer the other State may make a corresponding adjustment (to the benefit of the taxpayer) even after the statute of limitations has run, if that other State has received notice of the case within six years from the end of the year to which the case relates. No such waiver of the statute is provided for in the existing convention. If, on the other hand, appropriate notice is not given, and the case involves an adjustment of arrangements between related persons, the first State agrees to withdraw the adjustment.

The Convention provides a number of transitional rules to protect taxpayer rights in going from the existing to the new convention.

The Convention provides for the termination of the United States-Canada estate tax convention of 1961. That convention is presently operative only on the United States side, because Canada has repealed its Federal estate tax. A 1928 note between the United States and Canada, providing relief from double taxation of shipping profits, is also terminated by the terms of the new Convention.

In an exchange of notes signed at the time of the signing of the Convention, it is agreed that the competent authorities of the two States will work out procedures for certifying the eligibility of organizations to receive tax exempt income and deductible contributions. The note also recognizes Canada's objections to the so-called "unitary apportionment" system used in several states of the United States to assess the income of corporations doing business in the state.

The Convention is subject to ratification. It will enter into force upon the exchange of instruments of ratification. Subject to transitional rules, the Convention will have effect, for taxes withheld at the source, for amounts paid or credited on or after the first day of the second month following entry into force; and for other taxes, for taxable years beginning on or after the first of January following entry into force.

The Convention will remain in force indefinitely unless terminated by one of the Contracting States. It may be terminated, on six months diplomatic notice, after five years from its entry into force, or earlier in the event of significant changes in the law of either country which cannot be accommodated through negotiations.

A technical memorandum explaining in detail the provisions of the Convention is being prepared by the Department of the Treasury and will be submitted to the Senate Committee on Foreign Relations.

The Department of the Treasury, with the cooperation of the Department of State, was primarily responsible for the negotiation of the Convention. It has the approval of both Departments.

Respectfully submitted,

EDMUND S. MUSKIE.


LETTER OF TRANSMITTAL

THE WHITE HOUSE. *November 12, 1980.*

*To the Senate of the United States:*

I transmit herewith, for Senate advice and consent to ratification, a Convention between the United States of America and Canada with respect to Taxes on Income and Capital (the Convention), signed at Washington on September 26, 1980, and a related exchange of notes for the information of the Senate. I also transmit the report of the Department of State with respect to the Convention.

The Convention will replace the existing tax convention with Canada, signed in 1942, as amended by supplementary conventions signed in 1950, 1956 and 1966. It is based, in general, on the United States and OECD model conventions but deviates from the models in a number of important respects in order to take account of particular features of Canadian law and its interaction with United States law, the unique economic relationship between the United States and Canada, and the provisions of the existing convention.

As in the existing convention, the new Convention provides that the business profits of a resident of one Contracting State will not be subject to tax by the other State except to the extent that they are attributable to a permanent establishment which the resident has in the other State. The definition of a

permanent establishment in the Convention is more comprehensive than that in the existing convention and is very similar to the definition in the United States model.

The Convention establishes maximum reciprocal rates of withholding at source for dividends, interest, and royalties. Although the rates exceed those in the United States model for several types of income, there are a number of significant reductions in withholding rates in comparison with the existing convention.

I recommend that the Senate give early and favorable consideration to the Convention and give advice and consent to its ratification.

JIMMY CARTER

CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND
CANADA WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL

The United States of America and Canada,

Desiring to conclude a Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and on capital,

Have agreed as follows:

ARTICLE I
Personal Scope

This Convention is generally applicable to persons who are residents of one or both of the Contracting States.

ARTICLE II
Taxes Covered

1. This Convention shall apply to taxes on income and on capital imposed on behalf of each Contracting State, irrespective of the manner in which they are levied,

2. The existing taxes to which the Convention shall apply are:
    (a) In the case of Canada, the taxes imposed by the Government of Canada under Parts I, XIII and XIV of the Income Tax Act; and
    (b) In the case of the United States, the Federal income taxes imposed by the Internal Revenue Code.

3. The Convention shall apply also to:

      (a) Any identical or substantially similar taxes on income; and

      (b) Taxes on capital, which are imposed after the date of signature of the Convention in addition to, or in place of, the existing taxes.

4. Notwithstanding the provisions of paragraphs 2(b) and 3, the Convention shall apply to:

      (a) The United States accumulated earnings tax and personal holding company tax, to the extent, and only to the extent, necessary to implement the provisions of paragraphs 5 and 8 of Article X (Dividends);

      (b) The United States excise taxes imposed with respect to private foundations, to the extent; and only to the extent, necessary to implement the provisions of paragraph 4 of Article XXI (Exempt Organizations); and

      (c) The United States social security taxes, to the extent, and only to the extent, necessary to implement the provisions of paragraph 4 of Article XXIX (Miscellaneous Rules).


ARTICLE III
General Definitions

1. For the purposes of this Convention, unless the context otherwise requires:

      (a) When used in a geographical sense, the term "Canada" means the territory of Canada, including any area beyond the territorial seas of Canada which, in accordance with international law and the laws of Canada, is an area within which Canada may exercise rights with respect to the seabed and subsoil and their natural resources;

      (b) The term "United States" means:

            (i) The United States of America, but does not include Puerto Rico, the Virgin Islands, Guam or any other United States possession or territory; and

            (ii) When used in a geographical sense, such term also includes any area beyond the territorial seas of the United States which, in accordance with international law and the laws of the United States, is an area within which the United States may exercise rights with respect to the seabed and subsoil and their natural resources;

      (c) The term "Canadian tax" means the Canadian taxes referred to in paragraphs 2(a) and 3(a) of Article II (Taxes Covered);

      (d) The term "United States tax" means the United States taxes referred to in paragraphs 2(b) and 3(a) of Article II (Taxes Covered);

      (e) The term "person" includes an individual, an estate, a trust, a company and any other body of persons;

      (f) The term "company" means any body corporate or any entity which is treated as a body corporate for tax purposes;

      (g) The term "competent authority" means:

(i) In the case of Canada, the Minister of National Revenue or his authorized representative; and

(ii) In the case of the United States, the Secretary of the Treasury or his delegate;

(h) The term "international traffic" means any voyage of a ship or aircraft to transport passengers or property except where the principal purpose of the voyage is to transport passengers or property between places within a Contracting State;

(i) The term "State" means any national State, whether or not a Contracting State; and

(j) The term "the 1942 Convention" means the Convention and Protocol between the United States and Canada for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion in the case of Income Taxes signed at Washington on March 4, 1942, as amended by the Convention signed at Ottawa on June 12, 1950, by the Convention signed at Ottawa on August 8, 1956 and by the Supplementary Convention signed at Washington on October 25, 1966.

2. As regards the application of the Convention by a Contracting State any term not defined therein shall, unless the context otherwise requires and subject to the provisions of Article XXVI (Mutual Agreement Procedures), have the meaning which it has under the law of that State concerning the taxes to which the Convention applies.

ARTICLE IV

<u>Residence</u>

1. For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation or any other criterion of a similar nature, but in the case of an estate or trust, only to the extent that income derived by such estate or trust is liable to tax in that State, either in its hands or in the hands of its beneficiaries.

2. Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then his status shall be determined as follows:

(a) He shall be deemed to be a resident of the Contracting State in which he has a permanent home available to him; if he has a permanent home available to him in both States or in neither State, he shall be deemed to be a resident of the Contracting State with which his personal and economic relations are closer (centre of vital interests);

(b) If the Contracting State in which he has his centre of vital interests cannot be determined, he shall be deemed to be a resident of the Contracting State in which he has an habitual abode;

(c) If he has an habitual abode in both States or in neither State, he shall be deemed to be a resident of the Contracting State of which he is a citizen; and

(d) If he is a citizen of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

3. Where by reason of the provisions of paragraph 1 a company is a resident of both Contracting States, then if it was created under the laws in force in a Contracting State, it shall be deemed to be a resident of that State.

4. Where by reason of the provisions of paragraph 1 an estate, trust or other person (other than an individual or a company) is a resident of both Contracting States, the competent authorities of the States shall by mutual agreement endeavor to settle the question and to determine the mode of application of the Convention to such person.

5. Notwithstanding the provisions of the preceding paragraphs, an individual shall be deemed to be a resident of a Contracting State if:
> (a) The individual is an employee of that State or of a political subdivision, local authority or instrumentality thereof rendering services in the discharge of functions of a governmental nature in the other Contracting State or in a third State; and
> (b) The individual is subjected in the first-mentioned State to similar obligations in respect of taxes on income as are residents of the first-mentioned State.

The spouse and dependent children residing with such an individual and meeting the requirements of subparagraph (b) above shall also be deemed to be residents of the first-mentioned State.


## ARTICLE V
## Permanent Establishment

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of a resident of a Contracting State is wholly or partly carried on.

2. The term "permanent establishment" shall include especially:
> (a) A place of management;
> (b) A branch;
> (c) An office;
> (d) A factory;
> (e) A workshop; and
> (f) A mine, an oil or gas well, a quarry or any other place of extraction of natural resources.

3. A building site or construction or installation project constitutes a permanent establishment if, but only if, it lasts more than 12 months.

4. The use of a drilling rig or ship in a Contracting State to explore for or exploit natural resources constitutes a permanent establishment if, but only if, such use is for more than 3 months in any twelve-month period.

5. A person acting in a Contracting State on behalf of a resident of the other Contracting State-other than an agent of an independent status to whom paragraph 7 applies-shall be deemed to be a permanent establishment in the first-mentioned State if such person has, and habitually exercises in that State, an authority to conclude contracts in the name of the resident.

6. Not withstanding the provisions of paragraphs 1, 2, and 5, the term "permanent establishment" shall be deemed not to include a fixed place of business used solely for, or a person referred to in paragraph 5 engaged solely in, one or more of the following activities:

      (a) The use of facilities for the purpose of storage, display or delivery of goods or merchandise belonging to the resident;

      (b) The maintenance of a stock of goods or merchandise belonging to the resident for the purpose of storage, display or delivery;

      (c) The maintenance of a stock of goods or merchandise belonging to the resident for the purpose of processing by another person;

      (d) The purchase of goods or merchandise, or the collection of information, for the resident; and

      (e) Advertising, the supply of information, scientific research or similar activities which have a preparatory or auxiliary character, for the resident.

7. A resident of a Contracting State shall not be deemed to have a permanent establishment in the other Contracting State merely because such resident carries on business in that other State through a broker, general commission agent or any other agent of an independent status, provided that such persons are acting in the ordinary course of their business.

8. The fact that a company which is a resident of a Contracting State controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not constitute either company a permanent establishment of the other.

9. For the purposes of the Convention, the provisions of this Article shall be applied in determining whether any person has a permanent establishment in any State.


ARTICLE VI
Income from Real Property


1. Income derived by a resident of a Contracting State from real property (including from agriculture or forestry) situated in the other Contracting State may be taxed in that other State.

2. For the purposes of this Convention, the term "real property" shall have the meaning which it has under the taxation laws of the Contracting State in which the property in question is situated and shall include any option or similar right in respect thereof. The term shall in any case include usufruct of real property and rights to explore for or to exploit mineral deposits, sources and other natural resources; ships and aircraft shall not be regarded as real property.

3. The provisions of paragraph 1 shall apply to income derived from the direct use, letting or use in any other form of real property and to income from the alienation of such property.

ARTICLE VII
<u>Business Profits</u>

1. The business profits of a resident of a Contracting State shall be taxable only in that State unless the resident carries on business in the other Contracting State through a permanent establishment situated therein. If the resident carries on, or has carried on, business as aforesaid, the business profits of the resident may be taxed in the other State but only so much of them as is attributable to that permanent establishment.

2. Subject to the provisions of paragraph 3, where a resident of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the business profits which it might be expected to make if it were a distinct and separate person engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the resident and with any other person related to the resident (within the meaning of paragraph 2 of Article IX (Related Persons)).

3. In determining the business profits of a permanent establishment, there shall be allowed as deductions expenses which are incurred for the purposes of the permanent establishment, including executive and general administrative expenses so incurred, whether in the State in which the permanent establishment is situated or elsewhere. Nothing in this paragraph shall require a Contracting State to allow the deduction of any expenditure which, by reason of its nature, is not generally allowed as a deduction under the taxation laws of that State.

4. No business profits shall be attributed to a permanent establishment of a resident of a Contracting State by reason of the use thereof for either the mere purchase of goods or merchandise or the mere provision of executive, managerial or administrative facilities or services for such resident.

5. For the purposes of the preceding paragraphs, the business profits to be attributed to a permanent establishment shall be determined by the same method year by year unless there is good and sufficient reason to the contrary.

6. Where business profits include items of income which are dealt with separately in other Articles of this Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

7. For the purposes of the Convention the business profits attributable to a permanent establishment shall include only those profits derived from the assets or activities of the permanent establishment

ARTICLE VIII
Transportation

1. Notwithstanding the provisions of Articles VII (Business Profits) and XIII (Gains), profits derived by a resident of a Contracting State from the operation of ships or aircraft in international traffic, and gains derived by a resident of a Contracting State from the alienation of ships or aircraft used principally in international traffic, shall be exempt from tax in the other Contracting State.

2. For the purposes of this Convention, profits derived by a resident of a Contracting State from the operation of ships or aircraft in international traffic include profits from:
    (a) The rental of ships or aircraft operated in international traffic;
    (b) The use, maintenance or rental of containers (including trailers and related equipment for the transport of containers) used in international traffic; and
    (c) The rental of ships, aircraft or containers (including trailers and related equipment for the transport of containers) provided that such profits are incidental to profits referred to in paragraph 1, 2(a) or 2(b).

3. Notwithstanding the provisions of Article VII (Business Profits), profits derived by a resident of a Contracting State from a voyage of a ship where the principal purpose of the voyage is to transport passengers or property between places in the other Contracting State may be taxed in that other State.

4. Notwithstanding the provisions of Articles VII (Business Profits) and XII (Royalties), profits of a resident of a Contracting State engaged in the operation of motor vehicles or a railway as a common carrier or a contract carrier derived from:
    (a) The transportation of passengers or property between a point outside the other Contracting State and any other point; or
    (b) The rental of motor vehicles (including trailers) or railway rolling stock, or the use, maintenance or rental of containers (including trailers and related equipment for the transport of containers) used to transport passengers or property between a point outside the other Contracting State and any other point shall be exempt from tax in that other Contracting State.

5. The provisions of paragraphs 1, 3 and 4 shall also apply to profits or gains referred to in those paragraphs derived by a resident of a Contracting State from the participation in a pool, a joint business or an international operating agency.

6. Notwithstanding the provisions of Article XII (Royalties), profits derived by a resident of a Contracting State from the use, maintenance or rental of railway rolling stock, motor vehicles, trailers or containers (including trailers and related equipment for the transport of containers) used in the other Contracting State for a period or periods not expected to exceed in the aggregate 183 days in any twelve-month period shall be exempt from tax in the other Contracting State except to the extent that such profits are attributable to a permanent establishment in the other State and liable to tax in the other State by reason of Article VII (Business Profits).


ARTICLE IX
Related Persons

1. Where a person in a Contracting State and a person in the other Contracting State are related and where the arrangements between them differ from those which would be made between unrelated persons, each State may adjust the amount of the income, loss or tax payable to reflect the income, deductions, credits or allowances which would, but for those arrangements, have been taken into account in computing such income, loss or tax.

2. For the purposes of this Article, a person shall be deemed to be related to another person if either person participates directly or indirectly in the management or control of the other, or if any third person or persons participate directly or indirectly in the management or control of both.

3. Where an adjustment is made or to be made by a Contracting State in accordance with paragraph 1, the other Contracting State shall (notwithstanding any time or procedural limitations in the domestic law of that other State) make a corresponding adjustment to the income, loss or tax of the related person in that other State if:
      (a) It agrees with the first-mentioned adjustment; and
      (b) Within six years from the end of the taxable year to which the first-mentioned adjustment relates, the competent authority of the other State has been notified of the first-mentioned adjustment.

4. In the event that the notification referred to in paragraph 3 is not given within the time period referred to therein, and if the person to whom the first-mentioned adjustment relates has not received, at least six months prior to the expiration of such time period, notification of such adjustment from the Contracting State which has made or is to make such adjustment that State shall, notwithstanding the provisions of paragraph 1, not make the first-mentioned adjustment to the extent that such adjustment would give rise to double taxation.

5. The provisions of paragraphs 3 and 4 shall not apply in the case of fraud, willful default or neglect or gross negligence.

ARTICLE X
Dividends

1. Dividends paid by a company which is a resident of a Contracting State to a resident of the other Contracting State may be taxed in that other state.

2. However, such dividends may also be taxed in the Contracting State of which the company paying the dividends is a resident and according to the laws of that State; but if a resident of the other Contracting State is the beneficial owner of such dividends, the tax so charged shall not exceed:

> (a) 10 per cent of the gross amount of the dividends if the beneficial owner is a company which owns at least 10 per cent of the voting stock of the company paying the dividends;

> (b) 15 per cent of the gross amount of the dividends in all other cases.

This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid.

3. The term "dividends" as used in this Article means income from shares or other rights, not being debt-claims, participating in profits, as well as income subjected to the same taxation treatment as income from shares by the taxation laws of the State of which the company making the distribution is a resident.

4. The provisions of paragraph 2 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State of which the company paying the dividends is a resident, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the holding in respect of which the dividends are paid is effectively connected with such permanent establishment of fixed base. In such case, the provisions of Article VII (Business Profits) or Article XIV (Independent Personal Services), as the case may be, shall apply.

5. Where a company is a resident of a Contracting State, the other contracting State may not impose any tax on the dividends paid by the company, except insofar as such dividends are paid to a resident of that other State or insofar as the holding in respect of which the dividends are paid is effectively connected with a permanent establishment or a fixed base situated in that other State, nor subject the company's undistributed profits to a tax, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in such other State.

6. Nothing in this Convention shall be construed as preventing a Contracting State from imposing a tax on the earnings of a company attributable to permanent establishments in that State, in addition to the tax which would be chargeable on the earnings of a company which is a resident of that State, provided that any additional tax so imposed shall not exceed 10 per cent of the amount of such earnings which have not been subjected to such additional tax in previous taxation years. For the purposes of this

paragraph, the term "earnings" means the amount by which the business profits attributable to permanent establishments in a Contracting State (including gains from the alienation of property forming part of the business property of such permanent establishments) in a year and previous years exceeds the sum of:

(a) Business losses attributable to such permanent establishments (including losses from the alienation of property forming part of the business property of such permanent establishments) in such year and previous years;

(b) All taxes, other than the additional tax referred to in this paragraph, imposed on such profits in that State;

(c) The profits reinvested in that State, provided that where that State is Canada, such amount shall be determined in accordance with the existing provisions of the law of Canada regarding the computation of the allowance in respect to investment in property in Canada, and any subsequent modification of those provisions which shall not affect the general principle hereof; and

(d) Five hundred thousand Canadian dollars ($500,000) or its equivalent in United States currency, less any amounts deducted by the company, or by an associated company with respect to the same or a similar business, under this subparagraph (d); for the purposes of this subparagraph (d) a company is associated with another company if one company directly or indirectly controls the other, or both companies are directly or indirectly controlled by the same person or persons, or if the two companies deal with each other not at arm's length.

7. Notwithstanding the provisions of paragraph 5, a Contracting State, other than a Contracting State that imposes the additional tax on earnings referred to in paragraph 6, may tax a dividend paid by a company to the extent that the dividend is attributable to profits earned in taxable years beginning after the date of signature of the Convention if, for the three-year period ending with the close of the company's taxable period preceding the declaration of the dividend (or for such part of that three-year period as the company has been in existence, or for the first taxable year if the dividend was declared in that taxable year), at least 50 per cent of such company's gross income from all sources was included in the computation of the business profits attributable to a permanent establishment which such company had in that State; provided that
where a resident of the other Contracting State is the beneficial owner of such dividend any tax so imposed on the dividend shall be subject to the limitations of paragraph 2 or the rules of paragraph 4, as the case may be.

8. Notwithstanding the provisions of paragraph 5, a company which is a resident of Canada and which has income subject to tax in the United States (without regard to the provisions of the Convention) may be liable to the United States accumulated earnings tax and personal holding company tax but only if 50 per cent or more in value of the outstanding voting shares of the company is owned, directly or indirectly, throughout the last half of its taxable year by citizens or residents of the United States (other than citizens of Canada who do not have immigrant status in the United States or who have not been residents in the United States for more than three taxable years) or by residents of a third State.

ARTICLE XI
Interest

1. Interest arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State.

2. However, such interest may also be taxed in the Contracting State in which it arises, and according to the laws of that State; but if a resident of the other Contracting State is the beneficial owner of such interest, the tax so charged shall not exceed 15 per cent of the gross amount of the interest.

3. Notwithstanding the provisions of paragraph 2, interest arising in a Contracting State shall be exempt from tax in that State if:

(a) The interest is beneficially owned by the other Contracting State, a political subdivision or local authority thereof or an instrumentality of such other State, subdivision or authority, and is not subject to tax by that other State;

(b) The interest is beneficially owned by a resident of the other Contracting State and is paid with respect to debt obligations issued at arm's length and guaranteed or insured by that other State or a political subdivision thereof or an instrumentality of such other State or subdivision which is not subject to tax by that other State;

(c) The interest is beneficially owned by a resident of the other Contracting State and is paid by the first-mentioned State, a political subdivision or local authority thereof or an instrumentality, of such first-mentioned State, subdivision or authority which is not subject to tax by that first-mentioned State;

(d) The interest is beneficially owned by a seller who is a resident of the other Contracting State and is paid by a purchaser in connection with the sale on credit of any equipment, merchandise or services, except where the sale is made between persons dealing with each other not at arm's length; or

(e) The interest is paid by a company created under the laws in force in the other Contracting State with respect to an obligation entered into before the date of signature of this Convention, provided that such interest would have been exempt from tax in the first-mentioned State under Article XII of the 1942 Convention.

4. The term "interest" as used in this Article means income from debt-claims of every kind, whether or not secured by mortgage, and whether or not carrying a right to participate in the debtor's profits, and in particular, income from government securities and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds or debentures, as well as income assimilated to income from money lent by the taxation laws of the Contracting State in which the income arises. However, the term "interest" does not include income dealt with in Article X (Dividends).

5. The provisions of paragraph 2 and 3 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State in which the interest

arises, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the debt-claim in respect of which the interest is paid is effectively connected with such permanent establishment or fixed base. In such case, the provisions of Article VII (Business Profits) or Article XIV (Independent Personal Services), as the case may be, shall apply.

6. For the purposes of this Article, interest shall be deemed to arise in a Contracting State when the payer is that State itself, or a political subdivision, local authority or resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a State other than that of which he is a resident a permanent establishment or a fixed base in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by such permanent establishment or fixed base, then such interest shall be deemed to arise in the State in which the permanent establishment or fixed base is situated and not in the State of which the payer is a resident.

7. Where, by reason by a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the interest, having regard to the debt-claim for which it is paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of the Convention.

8. Where a resident of a Contracting State pays interest to a person other than a resident of the other Contracting State, that other State may not impose any tax on such interest except insofar as it arises in that other State or insofar as the debt-claim in respect of which the interest is paid effectively connected with a permanent establishment or a fixed base situated in that other State.


ARTICLE XII
Royalties

1. Royalties arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State.

2. However, such royalties may also be taxed in the Contracting State in which they arise, and according to the laws of that State; but if a resident of the other Contracting State is the beneficial owner of such royalties, the tax so charged shall not exceed 10 per cent of the gross amount of the royalties.

3. Notwithstanding the provisions of paragraph 2, copyright royalties and other like payments in respect of the production or reproduction of any literary, dramatic, musical or artistic work (but. not including royalties in respect of motion picture films and works on film or videotape for use in connection with television) arising in a Contracting State and beneficially owned

by a resident of the other Contracting State shall he taxable only in that other State.

4. The term "royalties" as used in this Article means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic or scientific work (including motion picture films and works on film or videotape for use in connection with television), any patent, trademark, design or model, plan, secret formula or process, or for the use of, or the right to use, tangible personal property or for information concerning industrial, commercial or scientific experience, and, notwithstanding the provisions of Article XIII (Gains), includes gains from the alienation of any intangible property or rights described in this paragraph to the extent that such gains are contingent on the productivity, use or subsequent disposition of such property or rights.

5. The provisions of paragraphs 2 and 3 shall not apply if the beneficial owner of the royalties, being a resident of a Contracting State, carries on business in the other Contracting State in which the royalties arise, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right or property in respect of which the royalties are paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article VII (Business Profits) or Article XIV. (Independent Personal Services), as the case may be, shall apply.

6. For the purposes of this Article, royalties shall be deemed to arise in a Contracting State when the payer is that State itself, or a political subdivision, local authority or resident of that State. However:
    (a) Except as provided in subparagraph (b), where the person paying the royalties, whether he is a resident of a Contracting State or not, has in a State other than that of which he is a resident a permanent establishment or a fixed base in connection with which the obligation to pay the royalties was incurred, and such royalties are borne by such permanent establishment or fixed base, then such royalties shall be deemed to arise in the State in which the permanent establishment or fixed base is situated and not in the State of which the payer is a resident; and
    (b) Where the royalties are for the use of intangible property or tangible personal property in a Contracting State, then such royalties shall be deemed to arise in that State and not in the State of which the payer is a resident.

7. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties, having regard to the use, right or information for which they are paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

8. Where a resident of a Contracting State pays royalties to a person other than a resident of the other Contracting State, that other State may not impose any tax on such royalties except insofar as they

arise in that other State or insofar as the right or property in respect of which the royalties are paid is effectively connected with a permanent establishment or a fixed base situated in that other State.

ARTICLE XIII
Gains

1. Gains derived by a resident of a Contracting State from the alienation of real property situated in the other Contracting State may be taxed in that other State.

2. Gains from the alienation of personal property forming part of the business property of a permanent establishment which a resident of a Contracting State has or had (within the twelve-month period preceding the date of alienation) in the other Contracting State or of personal property pertaining to a fixed base which is or was available (within the twelve-month period preceding the date of alienation) to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, including such gains from the alienation of such a permanent establishment or of such a fixed base, may be taxed in that other State.

3. Gains derived by a resident of a Contracting State from the alienation of:
      (a) Shares forming part of a substantial interest in the capital stock of a company which is not a resident of that State the value of which shares is derived principally from real property situated in the other Contracting State; or
      (b) An interest in a partnership, trust or estate the value of which is derived principally from real property situated in the other Contracting State
may be taxed in that other State, provided that the laws in force in the first-mentioned State at the time of such alienation would, in comparable circumstances, subject to taxation gains derived by a resident of that other State. For the purposes of this paragraph,
      (c) The term "real property" includes the shares of a company the value of which shares is derived principally from real property or an interest in a partnership, trust or estate referred to in subparagraph (b), but does not include property (other than mines, oil or gas wells, rental property or property used for agriculture or forestry) in which the business of the company, partnership, trust or estate is carried on; and
      (d) A substantial interest exists when the resident and persons related thereto own 10 per cent or more of the shares of any class of the capital stock of a company.

4. Gains from the alienation of any property other than that referred to in paragraphs 1, 2 and 3 shall be taxable only in the Contracting State of which the alienator is a resident.

5. The provisions of paragraph 4 shall not affect the right of a Contracting State to levy a tax on gains from the alienation of property derived by an individual who is a resident of the other Contracting State if such individual:

(a) Was a resident of the first-mentioned State for 120 months during any period of 20 consecutive years; and

(b) Was a resident of the first-mentioned State at any time during the ten years immediately preceding the alienation of the property.

6. Where an individual (other than a citizen of the United States) who was a resident of Canada became a resident of the United States, in determining his liability to United States taxation in respect of any gain from the alienation of a principal residence in Canada owned by him at the time he ceased to be a resident of Canada, the adjusted basis of such property shall be no less than its fair market value at that time.

7. Where at any time an individual is treated for the purposes of taxation by a Contracting State as having alienated a property and is taxed in that State by reason thereof and the domestic law of the other Contracting State at such time defers (but does not forgive) taxation, that individual may elect in his annual return of income for the year of such alienation to be liable to tax in the other Contracting State in that year as if he had, immediately before that time, sold and repurchased such property for an amount equal to its fair market value at that time.

8. Where a resident of a Contracting State alienates property in the course of a corporate organization, reorganization, amalgamation, division or similar transaction and profit, gain or income with respect to such alienation is not recognized for the purpose of taxation in that State, if requested to do so by the person who acquires the property, the competent authority of the other Contracting State may agree, in order to avoid double taxation and subject to terms and conditions satisfactory to such competent authority, to defer the recognition of the profit, gain or income with respect to such property for the purpose of taxation in that other State until such time and in such manner as may be stipulated in the agreement.

9. Where a resident of a Contracting State alienates property which may in accordance with this Article be taxed in the other Contracting State and which was owned by a resident of the first-mentioned State on the date of signature of this Convention, the amount of the gain which is liable to tax in that other State in accordance with this Article shall be reduced by the proportion of the gain attributable (on a monthly basis), or such greater portion of the gain as is shown to the satisfaction of the competent authority of the other State to be reasonably attributable, to the period ending on December 31 of the year in which the Convention enters into force; the provisions of this paragraph shall not apply to property which on the date of signature of the Convention formed part of the business property of a permanent establishment or pertained to a fixed base in the other Contracting State.


ARTICLE XIV
Independent Personal Services

Income derived by an individual who is a resident of a Contracting State in respect of independent personal services may be taxed in that State. Such income may also be taxed in the other Contracting State if the individual has or had a fixed base regularly available to him in that other State but only to the extent that the income is attributable to the fixed base.

ARTICLE XV
Dependent Personal Services

1. Subject to the provisions of Articles XVIII (Pensions and Annuities) and XIX (Government Service), salaries, wages and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in a calendar year in the other Contracting State shall be taxable only in the first-mentioned State if:
      (a) Such remuneration does not exceed ten thousand dollars ($10,000) in the currency of that other State; or
      (b) The recipient is present in the other Contracting State for a period or periods not exceeding in the aggregate 183 days in that year and the remuneration is not borne by an employer who is a resident of that other State or by a permanent establishment or a fixed base which the employer has in that other State.

3. Notwithstanding the provisions of paragraphs 1 and 2, remuneration derived by a resident of a Contracting State in respect of an employment regularly exercised in more than one State on a ship, aircraft, motor vehicle or train operated by a resident of that Contracting State shall be taxable only in that State.

ARTICLE XVI
Artistes and Athletes

1. Notwithstanding the provisions of Articles XIV (Independent Personal Services) and XV (Dependent Personal Services), income derived by a resident of a Contracting State as an entertainer, such as a theatre, motion picture, radio or television artiste, or a musician, or as an athlete, from his personal activities as such exercised in the other Contracting State, may be taxed in that other State, except where the amount of the gross receipts derived by such entertainer or athlete, including expenses reimbursed to him or borne on his behalf, from such activities do not exceed fifteen thousand dollars ($15,000) in the currency of that other State for the calendar year concerned.

2. Where income in respect of personal activities exercised by an entertainer or an athlete in his capacity as such accrues not to the entertainer or athlete but to another person, that income may, notwithstanding the provisions of Articles VII (Business Profits), XIV (Independent Personal Services) and XV (Dependent Personal Services), be taxed in the Contracting State in which the activities of the entertainer or athlete are exercised. For the purposes of the preceding sentence, income of an entertainer or athlete shall be deemed not to accrue to another person if it is established that neither the entertainer or athlete, nor persons related thereto, participate directly or indirectly in the profits of such other person in any manner, including the receipt of deferred remuneration, bonuses, fees, dividends, partnership distributions or other distributions.

3. The provisions of this Article shall not apply to the income of an athlete in respect of an employment with a team which participates in a league with regularly schedule games in both Contracting States.

ARTICLE XVII

Withholding of Taxes in Respect of Independent Personal Services

1. Deduction and withholding of tax on account of the tax liability for a taxable year on remuneration paid to an individual who is a resident of a Contracting State (including an entertainer or athlete) in respect of the performance of independent personal services in the other Contracting State may be required by that other State, but with respect to the first five thousand dollars ($5,000) in the currency of that other State, paid as remuneration in that taxable year by each payer, such deduction and withholding shall not exceed 10 per cent of the payment.

2. Where the competent authority of a Contracting State considers that an amount that would otherwise be deducted or withheld from any amount paid or credited to an individual who is a resident of the other Contracting State in respect of the performance of independent personal services in the first-mentioned State is excessive in relation to the estimated tax liability for the taxable year of that individual in the first-mentioned State, it may determine that a lesser amount will be deducted or withheld.

3. The provisions of this Article shall not affect the liability of a resident of a Contracting State referred to in paragraph 1 or 2 for tax imposed by the other Contracting State.

ARTICLE XVIII

Pensions and Annuities

1. Pensions and annuities arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State, but the amount of any pension included in income for

the purposes of taxation in that other State shall not exceed the amount that would be included in the first-mentioned State if the recipient were a resident thereof.

   2. However:
          (a) Pensions may also be taxed in the Contracting State in which they arise and according to the laws of that State; but if a resident of the other Contracting State is the beneficial owner of a periodic pension payment, the tax so charged shall not exceed 15 per cent of the gross amount of such payment; and
          (b) Annuities may also be taxed in the Contracting State in which they arise and according to the laws of that State; but if a resident of the other Contracting State is the beneficial owner of an annuity payment, the tax so charged shall not exceed 15 per cent of the portion of such payment that is liable to tax in the first-mentioned State.

   3. For the purposes of this Convention, the term "pensions" includes any payment under a superannuation, pension or retirement plan, Armed Forces retirement pay, war veterans pensions and allowances and amounts paid under a sickness, accident or disability plan, but does not include payments under an income-averaging annuity contract or any benefit referred to in paragraph 5.

   4. For the purposes of the Convention, the term "annuities" means a stated sum paid periodically at stated times during life or during a specified number of years, under an obligation to make the payments in return for adequate and full consideration (other than services rendered), but does not include a payment that is not a periodic payment or any annuity the cost of which was deductible for the purposes of taxation in the Contracting State in which it was acquired.

   5. Benefits under the social security legislation in a Contracting State paid to a resident of the other Contracting State or a citizen of the United States shall be taxable only in the first-mentioned State.

   6. Alimony and other similar amounts (including child support payments) arising in a Contracting State and paid to a resident of the other Contracting State shall be taxable only in that other State, but the amount included in income for the purposes of taxation in that other State shall not exceed the amount that would be included in income in the first-mentioned State if the recipient were a resident thereof.


ARTICLE XIX
Government Service

   Remuneration, other than a pension, paid by a Contracting State or a political subdivision or local authority thereof to a citizen of that State in respect of services rendered in the discharge of functions of a governmental nature shall be taxable only in that State. However, the provisions of Article XIV, (Independent Personal Services), XV (Dependent Personal Services), or XVI (Artistes and Athletes), as the case may be, shall apply, and the preceding sentence shall not apply to remuneration paid in

respect of services rendered in connection with a trade or business carried on by a Contracting State or a political subdivision or local authority thereof.

ARTICLE XX
Students

Payments which a student, apprentice or business trainee, who is or was immediately before visiting a Contracting State a resident of the other Contracting State, and who is present in the first-mentioned State for the purpose of his full-time education or training, receives for the purpose of his maintenance, education or training shall not be taxed in that State provided that such payments are made to him from outside that State.

ARTICLE XXI
Exempt Organizations

1. Subject to the provisions of paragraph 3, income derived by a religious, scientific, literary, educational or charitable organization shall be exempt from tax in a Contracting State if it is resident in the other Contracting State but only to the extent that such income is exempt from tax in that other State.

2. Subject to the provisions of paragraph 3, income referred to in Articles X (Dividends) and XI (Interest) derived by a trust, company or other organization constituted and operated exclusively to administer or provide benefits under one or more funds or plans established to provide pension, retirement or other employee benefits shall be exempt from tax in a Contracting State if it is resident in the other Contracting State and its income is generally exempt from tax in that other State.

3. The provisions of paragraphs 1 and 2 shall not apply with respect to the income of a trust, company or other organization from carrying on a trade or business or from a related person other than a person referred to in paragraph 1 or 2.

4. A religious, scientific, literary, educational or charitable organization which is resident in Canada and which has received substantially all of its support from persons other than citizens or residents of the United States shall be exempt in the United States from the United States excise taxes imposed with respect to private foundations.

5. For the purposes of United States taxation, contributions by a citizen or resident of the United States to an organization which is resident in Canada, which is generally exempt from Canadian tax and which could qualify in the United States to receive deductible contributions if it were resident in the United States shall be treated as charitable contributions; however, such contributions (other than such contributions to a college or university at which the citizen or resident or a member of his family is or

was enrolled) shall not be deductible in any taxable year to the extent that they exceed an amount determined by applying the percentage limitations of the laws of the United States in respect of the deductibility of charitable contributions to the income of such citizen or resident arising in Canada. The preceding sentence shall not be interpreted to allow in any taxable year deductions for charitable contributions in excess of the amount allowed under the percentage limitations of the laws of the United States in respect of the deductibility of charitable contributions.

6. For the purposes of Canadian taxation, gifts by a resident of Canada to an organization which is resident in the United States, which is generally exempt from United States tax and which could qualify in Canada to receive deductible gifts if it were created or established and resident in Canada shall be treated as gifts to a registered charity; however, such gifts (other than such gifts to a college or university at which the resident or a member of his family is or was enrolled) shall not be deductible in any taxable year to the extent that they exceed an amount determined by applying the percentage limitations of the laws of Canada in respect of the deductibility of gifts to registered charities to the income of such resident arising in the United States. The preceding sentence shall not be interpreted to allow in any taxable year deductions for gifts to registered charities in excess of the amount allowed under the percentage limitations of the laws of Canada in respect of the deductibility of gifts to registered charities

ARTICLE XXII
Other Income

1. Items of income of a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this Convention shall be taxable only in that State, except that if such income arises in the other Contracting State it may also be taxed in that other State.

2. To the extent that income distributed by an estate or trust is subject to the provisions of paragraph 1, then, notwithstanding such provisions, income distributed by an estate or trust which is a resident of a Contracting State to a resident of the other Contracting State who is a beneficiary of the estate or trust may be taxed in the first-mentioned State and according to the laws of that State, but the tax so charged shall not exceed 15 per cent of the gross amount of the income; provided, however, that such income shall be exempt from tax in the first-mentioned State to the extent of any amount distributed out of income arising outside that State.

ARTICLE XXIII
Capital

1. Capital represented by real property, owned by a resident of a Contracting State and situated in the other Contracting State, may be taxed in that other State.

2. Capital represented by personal property forming part of the business property of a permanent establishment which a resident of a Contracting State has in the other Contracting State, or by personal property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, may be taxed in that other State.

3. Capital represented by ships and aircraft operated by a resident of a Contracting State in international traffic, and by personal property pertaining to the operation of such ships and aircraft, shall be taxable only in that State.

4. All other elements of capital of a resident of a Contracting State shall be taxable only in that State.

ARTICLE XXIV
Elimination of Double Taxation

1. In the case of the United States, subject to the provisions of paragraphs 4, 5, and 6, double taxation shall be avoided as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States, or to a company electing to be treated as a domestic corporation, as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada; and, in the case of a company which is a resident of the United States owning at least 10 percent of the voting stock of a company which is a resident of Canada from which it receives dividends in any taxable year, the United States shall allow as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada by that company with respect to the profits out of which such dividends are paid. Such appropriate amount shall be based upon the amount of income tax paid or accrued to Canada, but shall not exceed that proportion of the United States tax that taxable income arising in Canada bears to the entire taxable income.

2. In the case of Canada, subject to the provisions of paragraphs 4, 5 and 6, double taxation shall be avoided as follows:

(a) Subject to the provisions of the law of Canada regarding the deduction from tax payable in Canada of tax paid in a territory outside Canada and to any subsequent modification of those provisions (which shall not affect the general principle hereof), and unless a greater deduction or relief is provided under the law of Canada, income tax paid or accrued to the United States on profits, income or gains arising in the United States shall be deducted from any Canadian tax payable in respect of such profits, income or gains; and

(b) Subject to the provisions of the law of Canada regarding the determination of the exempt surplus of a foreign affiliate and to any subsequent modification of those provisions (which shall not affect the general principle hereof), for the purposes of computing Canadian tax, a company which is a resident of Canada shall be allowed to deduct in computing its taxable

income any dividend received by it out of the exempt surplus of a foreign affiliate which is a resident of the United States.

3. For the purposes of this Article:

(a) Profits, income or gains (other than gains to which paragraph 5 of Article XIII (Gains) applies) of a resident of a Contracting State which may be taxed in the other Contracting State in accordance with the Convention (without regard to paragraph 2 of Article XXIX (Miscellaneous Rules)) shall be deemed to arise in that other State; and

(b) Profits, income or gains of a resident of a Contracting State which may not be taxed in the other Contracting State in accordance with the Convention (without regard to paragraph 2 of Article XXIX (Miscellaneous Rules)) or to which paragraph 5 of Article XIII (Gains) applies shall be deemed to arise in the first-mentioned State.

4. Where a United States citizen is a resident of Canada, the following rules shall apply:

(a) Canada shall allow a deduction from the Canadian tax in respect of income tax paid or accrued to the United States in respect of profits, income or gains which arise (within the meaning of paragraph 3) in the United States, except that such deduction need not exceed the amount of the tax that would be paid to the United States if the resident were not a United States citizen; and

(b) For the purposes of computing the United States tax, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (a). The credit so allowed shall not; reduce that portion of the United States tax that is deductible from Canadian tax in accordance with subparagraph (a).

5. Notwithstanding the provisions of paragraph 4, where a United States citizen is a resident of Canada, the following rules shall apply in respect of the items of income referred to in Article X (Dividends), XI (Interest) or XII (Royalties) which arise (within the meaning of paragraph 3) in the United States, as long as the law in force in Canada allows a deduction in computing income for the portion of any foreign tax paid in respect of such items which exceeds 15 percent of the amount thereof:

(a) The deduction so allowed in Canada shall not be reduced by any credit or deduction for income tax paid or accrued to Canada allowed in computing the United States tax on such items;

(b) Canada shall allow a deduction from the Canadian tax in respect of the income tax paid or accrued to the United States on such items, except that such deduction need not exceed 15 per cent of the gross amount of such items that has been included in computing the income of the citizen for Canadian tax purposes; and

(c) For the purposes of computing the United States tax on such items, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (b). The credit so allowed shall reduce only that portion of the United States tax on such items which exceeds 15 per cent of the amount thereof included in computing United States taxable income.

6. Where a United States citizen is a resident of Canada, items of income referred to in paragraph 4 or 5 shall, not-withstanding the provisions of paragraph 3, be deemed to arise in Canada to the extent necessary to avoid the double taxation of such income under paragraph 4(b) or paragraph 5(c).

7. For the purposes of this Article, any reference to "income tax paid or accrued" to a Contracting State shall include Canadian tax and United States tax, as the case may be, and taxes of general application which are paid or accrued to a political subdivision or local authority of that State, which are not imposed by that political subdivision or local authority in a manner inconsistent with the provisions of the Convention and which are substantially similar to the taxes of that State referred to in paragraphs 2 and 3(a) of Article II (Taxes Covered).

8. Where a resident of a Contracting State owns capital which, in accordance with the provisions of the Convention, may be taxed in the other Contracting State, the first-mentioned State shall allow as a deduction from the tax on the capital of that resident an amount equal to the capital tax paid in that other State. The deduction shall not, however, exceed that part of the capital tax, as computed before the deduction is given, which is attributable to the capital which may be taxed in that other State.

ARTICLE XXV
Non-Discrimination

1. Citizens of a Contracting State, who are residents of the other Contracting State, shall not be subjected in that other State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which citizens of that other State in the same circumstances are or may be subjected.

2. Citizens of a Contracting State, who are not residents of the other Contracting State, shall not be subjected in that other State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which citizens of any third State in the same circumstances (including State of residence) are or may be subjected.

3. In determining the taxable income of an individual who is a resident of a Contracting State there shall be allowed as a deduction in respect of any other person who is a resident of the other Contracting State and who is dependent on the individual for support the amount that would be so allowed if that other person were a resident of the first-mentioned State.

4. Where a married individual who is a resident of Canada and not a citizen of the United States has income that is taxable in the United States pursuant to Article XV (Dependent Personal Services), the United States tax with respect to such income shall not exceed such proportion of the total United States tax that would be payable for the taxable year if both the individual and his spouse were United States citizens as the individual's taxable income determined without regard to this paragraph bears to

the amount that would be the total taxable income of the individual and his spouse. For the purposes of this paragraph;

      (a) The "total United States tax" shall be determined as if all the income of the individual and his spouse arose in the United States; and

      (b) A deficit of the spouse shall not be taken into account in determining taxable income.

5. Any company which is a resident of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar companies of the first-mentioned State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of a third State, are or may be subjected.

6. Notwithstanding the provisions of Article XXIV (Elimination of Double Taxation), the taxation on a permanent establishment which a resident of a Contracting State has in the other Contracting State shall not be less favorably levied in the other State than the taxation levied on residents of the other State carrying on the same activities. This provision shall not be construed as obliging a Contracting State to grant to residents of the other Contracting State any personal allowances, reliefs and reductions for taxation purposes on account of civil status or family responsibilities which it grants to its own residents.

7. Except where the provisions of paragraph 1 of Article IX (Related Persons), paragraph 7 of Article XI (Interest) or paragraph 7 of Article XII (Royalties) apply, interest, royalties and other disbursements paid by a resident of a Contracting State to a resident of the other Contracting State shall, for the purposes of determining the taxable profits of the first-mentioned resident, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State. Similarly, any debts of a resident of a Contracting State to a resident of the other Contracting State shall, for the purposes of determining the taxable capital of the first-mentioned resident, be deductible under the same conditions as if they had been contracted to a resident of the first-mentioned State.

8. The provisions of paragraph 7 shall not affect the operation of any provision of the taxation laws of a Contracting State:

      (a) Relating to the deductibility of interest and which is in force on the date of signature of this Convention (including any subsequent modification of such provisions that does not change the general nature thereof); or

      (b) Adopted after such date by a Contracting State and which is designed to ensure that a person who is not a resident of that State does not enjoy, under the laws of that State, a tax treatment that is more favorable than that enjoyed by residents of that State.

9. Expenses incurred by a citizen or resident of a Contracting State with respect to any convention (including any seminar, meeting, congress or other function of a similar nature) held in the other Contracting State shall, for the purposes of taxation in the first-mentioned State, be deductible to the

same extent that such expenses would be deductible if the convention were held in first-mentioned State.

10. Notwithstanding the provisions of Article II (Taxes Covered), this Article shall apply:

      (a) In the case of Canada, to all taxes imposed under the Income Tax Act; and

      (b) In the case of the United States, to all taxes imposed under the Internal Revenue Code.


## ARTICLE XXVI
### Mutual Agreement Procedure

1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case in writing to the competent authority of the Contracting State of which he is a resident or, if he is a resident of neither Contracting State, or which he is a national.

2. The competent authority of the Contracting State to which the case has been presented shall endeavor, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation which is not in accordance with the Convention. Except where the provisions of Article IX (Related Persons) apply, any agreement reached shall be implemented notwithstanding any time or other procedural limitations in the domestic law of the Contracting States, provided that the competent authority of the other Contracting State has received notification that such a case exists within six years from the end of the taxable year to which the case relates.

3. The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of the Convention. In particular, the competent authorities of the Contracting States may agree:

      (a) To the same attribution of profits to a resident of a Contracting State and its permanent establishment situated in the other Contracting State;

      (b) To the same allocation of income, deductions, credits or allowances between persons;

      (c) To the same determination of the source, and the same characterization, of particular items of income;

      (d) To a common meaning of any term used in the Convention;

      (e) To the elimination of double taxation with respect to income distribution by an estate or trust;

      (f) To the elimination of double taxation with respect to a partnership; or

(g) To increases in any other amounts referred to in the Convention to reflect monetary or economic developments.

They may also consult together for the elimination of double taxation in cases not provided for in the Convention.

4. Each of the Contracting States will endeavor to collect on behalf of the other Contracting State such amounts as may be necessary to ensure that relief granted by the Convention from taxation imposed by that other State does not enure to the benefit of persons not entitled thereto. However, nothing in this paragraph shall be construed as imposing on either of the Contracting States the obligation to carry out administrative measures of a different nature from those used in the collection of its own tax or which would be contrary to its public policy (ordre public).

5. The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the proceeding paragraphs.


ARTICLE XXVII
Exchange of Information

1. The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Article I (Personal Scope). Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the taxation laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment or collection of, the administration and enforcement in respect of, or the determination of appeals in relation to, the taxes covered by the Convention. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions.

2. If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall endeavor to obtain the information to which the request relates in the same way as if its own taxation was involved notwithstanding the fact that the other State does not, at that time, need such information. If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall endeavor to provide information under this Article in the form requested, such as depositions of witnesses and copies of unedited original documents (including books, papers, statements, records, accounts or writings), to the same extent such depositions and documents can be obtained under the laws and administrative practices of that other State with respect to its own taxes.

3. In no case shall the provisions of paragraphs 1 and 2 be construed so as to impose on a Contracting State the obligation:

(a) To carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;

(b) To supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State; or

(c) To supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process, or information the disclosure of which would be contrary to public policy (ordre public).

4. Notwithstanding the provisions of Article II (Taxes Covered), for the purposes of this Article the Convention shall apply:

(a) In the case of Canada, to all taxes imposed by the Government of Canada on estates and gifts and under the Income Tax Act; and

(b) In the case of the United States, to all taxes imposed under the Internal Revenue Code.

## ARTICLE XXVIII
## Diplomatic Agents and Consular Officers

Nothing in this Convention shall affect the fiscal privileges of diplomatic agents or consular officers under the general rules of international law or under the provisions of special agreements.

## ARTICLE XXIX
## Miscellaneous Rules

1. The provisions of this Convention shall not restrict in any manner any exclusion, exemption, deduction, credit or other allowance now or hereafter accorded by the laws of a Contracting State in the determination of the tax imposed by that State.

2. Except as provided in paragraph 3, nothing in the Convention shall be construed as preventing a Contracting State from taxing its residents (as determined under Article IV (Residence)) and, in the case of the United States, its citizens (including a former citizen whose loss of citizenship had as one of its principal purposes the avoidance of income tax, but only for a period of ten years following such loss) and companies electing to be treated as domestic corporations, as if there were no convention between the United States and Canada with respect to taxes on income and on capital.

3. The provisions of paragraph 2 shall not affect the obligations undertaken by a Contracting State:

(a) Under paragraphs 3 and 4 of Article IX (Related Persons), paragraphs 6 and 7 of Article XIII (Gains), paragraph 5 of Article XXIX (Miscellaneous Rules), paragraphs 3 and 5 of Article XXX (Entry into Force), and Articles XVIII (Pensions and Annuities), XIX

(Government Service), XXI (Exempt Organizations), XXIV (Elimination of Double Taxation), XXV (Non-Discrimination) and XXVI (Mutual Agreement Procedure); and

      (b) Under Article XX (Students), toward individuals who are neither citizens of, nor have immigrant status in, that State.

4. With respect to taxable years not barred by the statute of limitations ending on or before December 31 of the year in which the Convention enters into force, income from personal services not subject to tax by the United States under the 1942 Convention shall not be considered wages or net earnings from self-employment for purposes of social security taxes imposed under the Internal Revenue Code.

5. A United States citizen who is a resident of Canada and a beneficiary of a Canadian registered retirement savings plan may elect, under rules established by the competent authority of the United States, to defer United States taxation with respect to any income accrued in the plan but not distributed by the plan, until such time as a distribution is made from such plan, or any plan substituted therefor.

6. If 25 per cent or more of the capital of a company which is a resident of a Contracting State is owned directly or indirectly by individuals who are not residents of that State, and if by reason of special measures the tax imposed in that State on that company with respect to dividends (other than dividends referred to in paragraph 2(a) of Article X (Dividends)), interest or royalties arising in the other Contracting State is substantially less than the tax generally imposed by the first-mentioned State on corporate business profits, then, notwithstanding the provisions of Article X (Dividends), XI (Interest) or XII (Royalties), that other State may tax such dividends, interest or royalties as if there were no convention between the United States and Canada with respect to taxes on income and on capital.

## ARTICLE XXX
### Entry into Force

1. This Convention shall be subject to ratification in accordance with the applicable procedures of each Contracting State and instruments of ratification shall be exchanged at Ottawa as soon as possible.

2. The Convention shall enter into force upon the exchange of instruments of ratification and, subject to the provisions of paragraph 3, its provisions shall have effect:

      (a) For tax withheld at the source on income referred to in Articles X (Dividends), XI (Interest), XII (Royalties) and XVIII (Pensions and Annuities), with respect to amounts paid or credited on or after the first day of the second month next following the date on which the Convention enters into force;

      (b) For other taxes, with respect to taxable years beginning on or after the first day of January next following the date on which the Convention enters into force; and

       (c) Notwithstanding the provisions of subparagraph (b), for the taxes covered by paragraph 4 of Article XXIX (Miscellaneous Rules) with respect to all taxable years referred to in that paragraph.

   3. For the purpose of applying the United States foreign tax credit in relation to taxes paid or accrued to Canada:

       (a) Notwithstanding the provisions of paragraph 2(a) of Article II (Taxes Covered), the tax on 1971 undistributed income on hand imposed by Part IX of the Income Tax Act of Canada shall be considered to be an income tax for distributions made on or after the first day of January 1972 and before the first day of January 1979, and shall be considered imposed upon the recipient of a distribution, in the proportion that the distribution out of undistributed income with respect to which the tax has been paid bears to 85 per cent of such undistributed income; and

       (b) The principles of paragraph 6 of Article XXIV (Elimination of Double Taxation) shall have effect for taxable years beginning on or after the first day of January 1976.

Any claim for refund based on the provisions of this paragraph may be filed on or before June 30 of the calendar year following that in which the Convention enters into force, notwithstanding any rule of domestic law to the contrary.

   4. Subject to the provisions of paragraph 5, the 1942 Convention shall cease to have effect for taxes for which this Convention has effect in accordance with the provisions of paragraph 2.

   5. Where any greater relief from tax would have been afforded by any provision of the 1942 Convention than under this Convention, any such provision shall continue to have effect for the first taxable year with respect to which the provisions of this Convention have effect under paragraph 2(b).

   6. The 1942 Convention shall terminate on the last date on which it has effect in accordance with the preceding provisions of this Article.

   7. The Exchange of Notes between the United States and Canada dated August 2 and September 17, 1928, providing for relief from double income taxation on shipping profits, is terminated. Its provisions shall cease to have effect with respect to taxable years beginning on or after the first day of January next following the date on which this Convention enters into force.

   8. The provisions of the Convention between the Government of Canada and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on the Estates of Deceased Persons signed at Washington on February 17, 1961 shall continue to have effect with respect to estates of persons deceased prior to the first day of January next following the date on which this Convention enters into force but shall cease to have effect with respect to estates of persons deceased on or after that date. Such Convention shall terminate on the last date on which it has effect in accordance with the preceding sentence.

ARTICLE XXXI
Termination

1. This Convention shall remain in force until terminated by a Contracting State.

2. Either Contracting State may terminate the Convention at any time after 5 years from the date on which the Convention enters into force provided that at least 6 months prior notice of termination has been given through diplomatic channels.

3. Where a Contracting State considers that a significant change introduced in the taxation laws of the other Contracting State should be accommodated by a modification of the Convention, the Contracting States shall consult together with a view to resolving the matter; if the matter cannot be satisfactorily resolved, the first-mentioned State may terminate the Convention in accordance with the procedures set forth in paragraph 2, but without regard to the 5 year limitation provided therein.

4. In the event the Convention is terminated, the Convention shall cease to have effect:

(a) For tax withheld at the source on income referred to in Articles X (Dividends), XI (Interest), XII (Royalties), XVIII (Pensions and Annuities) and paragraph 2 of Article XXII (Other Income), with respect to amounts paid or credited on or after the first day of January next following the expiration of the 6 months period referred to in paragraph 2; and

(b) For other taxes, with respect to taxable years beginning on or after the first day of January next following the expiration of the 6 months' period referred to in paragraph 2.

In witness whereof, the undersigned, being duly authorized thereto by their respective Governments, have signed this Convention.

Done in two copies at Washington this twenty-sixth day of September, 1980, in the English and French languages, each text being equally authentic.

For the Government of the United States of America:

G. WILLIAM MILLER.

For the Government of Canada:

ALLAN J. MACEACHERN.

NOTES OF EXCHANGE

WASHINGTON D.C., *September 26, 1980.*

HON. G. WILLIAM MILLER,
*Secretary of the Treasury,*
*Washington, D.C.*

SIR: I have the honour to refer to the Convention between Canada and the United States of America with Respect to Taxes on Income and on Capital, signed today, and to confirm certain understandings reached between the two Governments with respect to the Convention.

1. In French, the term "société" also means a "corporation" within the meaning of Canadian law.

2. The competent authorities of each of the Contracting States shall review the procedures and requirements for an organization of the other Contracting State to establish its status as a religious, scientific, literary, educational or charitable organization entitled to exemption under paragraph 1 of Article XXI (Exempt Organizations), or as an eligible recipient of the charitable contributions or gifts referred to in paragraphs 5 and 6 of Article XXI, with a view to avoiding duplicate application by such organizations to the administering agencies of both Contracting States. If a Contracting State determines that the other Contracting State maintains procedures to determine such status and rules for qualification that are compatible with such procedures and rules of the first-mentioned Contracting State, it is contemplated that such first-mentioned Contracting State shall accept the certification of the administering agency of the other Contracting State as to such status for the purpose of making the necessary determinations under paragraphs 1, 5 and 6 of Article XXI.

It is further agreed that the term "family", as used in paragraphs 5 and 6 of Article XXI, means an individual's brothers and sisters (whether by whole or half-blood, or by adoption), spouse, ancestors, lineal descendants and adopted descendants.

3. It is the position of Canada that the so-called "unitary apportionment" method used by certain states of the United States to allocate income to United States offices or subsidiaries of Canadian companies results in inequitable taxation and imposes excessive administrative burdens on Canadian companies doing business in those states. Under that method the profit of a Canadian company on its United States business is not determined on the basis of arm's-length relations but is derived from a formula taking account of the income of the Canadian company and its worldwide subsidiaries as well as the assets, payroll and sales of all such companies. For a Canadian multinational company with many subsidiaries in different countries to have to submit its books and records for all of these companies to a state of the United States imposes a costly burden. It is understood that the Senate of the United States has not consented to any limitation on the taxing jurisdiction of the states by a treaty and that a provision which would have restricted the use of unitary apportionment in the case of United Kingdom corporations was recently rejected by the Senate. Canada continues to be concerned about this issue as it affects Canadian multinationals. If an acceptable provision on this subject can be devised, the United States agrees to reopen discussions with Canada on this subject.

4. I have the honour to propose to you that the present Note and your reply thereto shall constitute an agreement between our two Governments on these matters.

Accept, Sir, the assurances of my highest consideration.

ALLAN J. MacEachern,
*Deputy Prime Minister and*
*Minister of Finance of Canada.*


SEPTEMBER 26, 1980.

Hon. ALLAN J. MacEachern,
*Deputy Prime Minister and*
*Minister of Finance of Canada.*

Sir: I have the honor to acknowledge receipt of your Note of September 26, 1980, which reads as follows:

"I have the honour to refer to the Convention between Canada and the United States of America with Respect to Taxes on Income and on Capital, signed today, and to confirm certain understandings reached between the two Governments with respect to the Convention.

1. In French, the term " société" also means a "corporation" within the meaning of Canadian law.

2. The competent authorities of each of the Contracting States shall review the procedures and requirements for an organization of the other Contracting State to establish its status as a religious, scientific, literary, educational or charitable organization entitled to exemption under paragraph 1 of Article XXI (Exempt Organizations), or as an eligible recipient of the charitable contributions or gifts referred to in paragraphs 5 and 6 of Article XXI. with a view to avoiding duplicate application by such organizations to the administering agencies of both Contracting States.

If a Contracting State determines that the other Contracting State maintains procedures to determine such status and rules for qualification that are compatible with such procedures and rules of the first-mentioned Contracting State, it is contemplated that such first-mentioned Contracting State shall accept the certification of the administering agency of the other Contracting State as to such status for the purpose of making the necessary determinations under paragraphs 1, 5 and 6 of Article XXI.

It is further agreed that the term "family," as used in paragraphs 5 and 6 of Article XXI means an individual's brothers and sisters (whether by whole or half-blood, or by adoption), spouse, ancestors, lineal descendants and adopted descendants.

3. It is the position of Canada that the so-called "unitary apportionment" method used by certain states of the United States to allocate income to United States offices or subsidiaries of Canadian companies results in inequitable taxation and imposes excessive administrative burdens on Canadian companies doing business in those states. Under that method the profit of a Canadian company on its United States business is not determined on the basis of arm's-length relations but is derived from a formula taking account of the income of the Canadian company and its world-wide subsidiaries as well as the assets, payroll and sales of all such companies. For a Canadian multinational company with many subsidiaries in different countries to have to submit its books and records for all of these companies to a state of the United States imposes a costly burden. It is understood that the Senate of the United States has not consented to any limitation on the taxing jurisdiction of the states by a treaty and that a provision which would have restricted the use of unitary apportionment in the case of United Kingdom corporations was recently rejected by the Senate. Canada continues to be concerned about this issue as it affects Canadian multinationals. If an acceptable provision on this subject can be devised, the United States agrees to reopen discussions with Canada on this subject.

4. I have the honour to propose to you that the present Note and your reply thereto shall constitute an agreement between our two Governments on these matters."

I confirm these understandings on behalf of the Government of the United States of America. These understandings constitute an agreement between our two Governments on this matter, which will enter into force on the date of entry into force of the Convention between the Government of the United States of America and the Government of Canada with Respect to Taxes on Income and on Capital which was signed today.

Accept, Sir, the renewed assurances of my highest consideration.

J. WILLIAM MILLER.

PROTOCOL 1

PROTOCOL AMENDING THE 1980 TAX CONVENTION
WITH CANADA

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

A PROTOCOL AMENDING THE 1980 CONVENTION BETWEEN THE
UNITED STATES OF AMERICA AND CANADA WITH RESPECT
TO TAXES ON INCOME AND ON CAPITAL, SIGNED AT OTTAWA
ON JUNE 14, 1983, WITH A RELATED EXCHANGE OF NOTES

LETTER OF SUBMITTAL (PROTOCOL 1)

DEPARTMENT OF STATE,
*Washington, September 2, 1983.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, the Protocol amending the Convention between the United States and Canada with respect to taxes on income and on capital, signed at Washington on September 26. 1980, which Protocol was signed at Ottawa on June 14, 1983. Also submitted for transmission to the Senate is a related exchange of notes.

The Convention was transmitted to the Senate on November 12, 1980, but Senate consideration of the Convention was delayed until certain technical problems in the text had been resolved. The Protocol resolves these technical problems by clarifying the language of the Convention to assure that its original intent is fulfilled. In addition, the Protocol introduces new rules not previously considered.

A necessary change is found in Articles IX and XIII of the Protocol. Paragraph 3 of Article IX amends paragraph 6 of Article XVIII (Pensions and Annuities) of the Convention by splitting the rule in the paragraph relating to the taxation of alimony and child support payments into two subparagraphs. This is done to permit proper cross-referencing in paragraph 3(a) of Article XXIX (Miscellaneous Rules) of the Convention. Article XIII of the Protocol amends Article XXIX to assure that the United States will preserve its full right to tax pensions, annuities, and alimony received by United States citizens who are resident in Canada.

Article VI of the Protocol makes some significant changes to Article XIII (Gains) of the Convention. Paragraph 3 of Article XIII has been rewritten to enable the United States to exercise its full taxing right under the Foreign Investment in Real Property Tax Act (section 897 of the Internal Revenue Code of 1954, as amended). Further, paragraph 9 of Article XIII has been modified to clarify the circumstances under which a resident of one Contracting State, upon alienating a capital asset, is entitled to an exemption from tax in the other State with respect to appreciation prior to the Conventions entry into force.

Paragraph 2 of Article VII of the Protocol introduces a new paragraph 4 to Article XVI (Artistes and Athletes) of the Convention, through which a bonus paid as inducement to an athlete resident in one State to sign a contract with an employer resident in the other State may be taxed in the latter State. but at a rate not to exceed 15 percent of the amount of the bonus. In the convention, as signed, the treatment of such bonuses in the State of residence of the employer is unclear, and, in any event, recipients of bonuses are not protected by a limit on the rate of tax in such State.

The Protocol is subject to ratification and will enter into force upon the exchange at Washington of instruments of ratification and shall thereupon have effect in accordance with Article XXX (Entry into Force) of the Convention.

An exchange of notes dealing with tax rates for natural resource royalties is also transmitted. Although a limit on such rates was set by the 1942 Convention, the pending Convention does not set such a limit. This exchange of notes assures that, in the event either State significantly raises its statutory tax rates, negotiations to provide an appropriate limit to such tax rate will be resumed at the request of either.

A technical memorandum explaining in detail the provisions of the Protocol is being prepared by the Department of the Treasury and will be submitted to the Senate Committee on Foreign Relations.

The Department of the Treasury, with the cooperation of the Department of State, was primarily responsible for the negotiation of the Protocol. It has the approval of both Departments.

Respectively submitted,

GEORGE P. SHULTZ.


LETTER OF TRANSMITTAL (PROTOCOL 1)

THE WHITE HOUSE, *September 21, 1983.*

*To the Senate of the United States:*

I transmit herewith, for Senate advice and consent to ratification, a Protocol signed at Ottawa on June 14, 1983, amending the Convention between the United States and Canada with respect to taxes on income and on capital, signed at Washington on September 26, 1980. I also transmit a related exchange of notes and the report of the Department of State with respect to the Protocol.

Senate consideration of the Convention, which was transmitted for advice and consent to ratification by letter dated November 12, 1980, has been delayed pending the correction of certain technical problems in its text. The Protocol resolves these technical problems by clarifying the language of the Convention to assure that its original intent is fulfilled.

In addition, the Protocol makes a necessary change regarding pensions, annuities and alimony and amends the Convention to permit the United States to exercise its full taxing right, under the Foreign Investment in Real Property Act, section 897 of the Internal Revenue Code. The Protocol also includes a new rule which affects an athlete resident in one State who is a recipient of a bonus from an employer resident in another State. The new rule protects such a recipient by limiting the rate of tax in the State of the employer.

It is most desirable that this Protocol, together with the Convention, be considered by the Senate as soon as possible and that the Senate give advice and consent to ratification of both instruments.

RONALD REAGAN.

PROTOCOL AMENDING THE CONVENTION BETWEEN THE UNITED STATES OF' AMERICA AND CANADA WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL SIGNED AT WASHINGTON ON SEPTEMBER 26, 1980

The United States of America and Canada,

Desiring to conclude a Protocol to amend the Convention with respect to Taxes on Income and on Capital signed at Washington on September 26,1980 (hereinafter referred to as "the Convention"),

Have Agreed as Follows:

ARTICLE 1

Subparagraph 1(h) of Article III (General Definitions) of the Convention shall be deleted and replaced by the following:

"(h) The term "international traffic" with reference to a resident of a Contracting State means any voyage of a ship or aircraft to transport passengers or property (whether or not operated or used by that resident) except where the principal purpose of the voyage is to transport passengers or property between places within the other Contracting State;"

ARTICLE II

Paragraph 4 of Article V (Permanent Establishment) shall be deleted and replaced by the following:
"4. The use of an installation or drilling rig or ship in a Contracting State to explore for or exploit natural resources constitutes a permanent establishment if, but only if, such use is for more than three months in any twelve-month period."

ARTICLE III

Article VI (Income from Real Property) shall be deleted and replaced by the following:
"1. Income derived by a resident of a Contracting State from real property (including income from agriculture, forestry or other natural resources) situated in the other Contracting State may be taxed in that other State.

2. For the purposes of this Convention, the term "real property" shall have the meaning which it has under the taxation laws of the Contracting State in which the property in question is situated and shall include any option or similar right in respect thereof. The term shall in any case include usufruct of real property, rights to explore for or to exploit mineral deposits, sources and other natural resources and rights to amounts computed by reference to the amount or value of production from such resources; ships and aircraft shall not be regarded as real property.

3. The provisions of paragraph 1 shall apply to income derived from the direct use, letting or use in any other form of real property and to income from the alienation of such property."


ARTICLE IV

Paragraph 1 of Article VIII (Transportation) shall be deleted and replaced by the following:
"1. Notwithstanding the provisions of Articles VII (Business Profits), XII (Royalties) and XIII (Gains), profits derived by a resident of a Contracting State from the operation of ships or aircraft in international traffic, and gains derived by a resident of a Contracting State from the alienation of ships, aircraft or containers (including trailers and related equipment for the transport of containers) used principally in international traffic, shall be exempt from tax in the other Contracting State."


ARTICLE V

1. Paragraph 3 of Article XII (Royalties) shall be deleted; and replaced by the following:
"3. Notwithstanding the provisions of paragraph 2, copyright royalties and other like payments in respect of the production or reproduction of any literary, dramatic, musical or artistic work (but not including royalties in respect of motion pictures and works on film, videotape or other means of reproduction for use in connection with television) arising in a Contracting State and beneficially owned by a resident of the other Contracting State shall be taxable only in that other State."

2. Paragraph 4 of Article XII (Royalties) shall be deleted and replaced by the following:
"4. The term "royalties" as used in this Article means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic or scientific work (including motion pictures and works on film, videotape or other means of reproduction for use in connection with television), any patent, trade mark, design or model, plan, secret formula or process, or

for the use of, or the right to use, tangible personal property or for information concerning industrial, commercial or scientific experience, and, notwithstanding the provisions of Article XIII (Gains), includes gains from the alienation of any intangible property or rights described in this paragraph to the extent that such gains are contingent on the productivity, use or subsequent disposition of such property or rights."

3. Subparagraph 6(b) of Article XII (Royalties) shall be deleted and replaced by the following:
"(b) Where the royalties are for the use of, or the right to use, intangible property or tangible personal property in a Contracting State, then such royalties shall be deemed to arise in that State and not in the State of which the payer is a resident."


ARTICLE VI

1. Paragraph 3 of Article XIII (Gains) shall be deleted and replaced by the following:
"3. For the purposes of this Article the term real property situated in the other Contracting State
(a) In the case of real property situated in the United States, means a United States real property interest and real property referred to in Article VI (Income from Real Property) situated in the United States; and
(b) In the case of real property situated in Canada means:
(i) Real property referred to in Article VI (Income from Real Property) situated in Canada;
(ii) A share of the capital stock of a company, the value of whose shares is derived principally from real property situated in Canada; and
(iii) An interest in a partnership, trust or estate, the value of which is derived principally from real property situated in Canada."

2. Paragraph 5 of Article XIII (Gains) shall be deleted and replaced by the following:
"5. The provisions of paragraph 4 shall not affect the right of a Contracting State to levy tax on gains from the alienation of property derived by an individual who is a resident of the other Contracting State if such individual:
(a) Was a resident of the first-mentioned State for 120 months during any period of 20 consecutive years preceding the alienation of the property; and
(b) Was a resident of the first-mentioned State at any time during the ten years immediately preceding the alienation of the property;
and if such property (or property for which such property was substituted in an alienation the gain on which was not recognized for the purposes of taxation in the first-mentioned State) was owned by the individual at the time he ceased to be a resident of the first-mentioned State."

3. Paragraph 9 of Article XIII (Gains) shall be deleted and replaced by the following:
"9. Where a person who is a resident of a Contracting State alienates a capital asset which may in accordance with this Article be taxed in the other Contracting State and

(a) That person owned the asset on September 26, 1980 and was resident in the first-mentioned State on that date; or

(b) The asset was acquired by that person in an alienation of property which qualified as a non-recognition transaction for the purposes of taxation in that other State;

the amount of the gain which is liable to tax in that other State in accordance with this Article shall be reduced by the proportion of the gain attributable on a monthly basis to the period ending on December 31 of the year in which the Convention enters into force, or such greater portion of the gain as is shown to the satisfaction of the competent authority of the other State to be reasonably attributable to that period. For the purposes of this paragraph the term "non-recognition transaction" includes a transaction to which paragraph 8 applies and, in the case of taxation in the United States, a transaction that would have been a non-recognition transaction but for Sections 897(d) and 897(e) of the Internal Revenue Code. The provisions of this paragraph shall not apply to

(c) An asset that on September 26, 1980 formed part of the business property of a permanent establishment or pertained to a fixed base of a resident of a Contracting State situated in the other Contracting State;

(d) An alienation by a resident of a Contracting State of an asset that was owned at any time after September 26, 1980 and before such alienation by a person who was not at all times after that date while the asset was owned by such person a resident of that State; or

(e) An alienation of an asset that was acquired by a person at any time after September 26, 1980 and before such alienation in a transaction other than a non-recognition transaction."


ARTICLE VII


1. Paragraph 3 of Article XVI (Artistes and Athletes) shall be deleted and replaced by the following:

"3. The provisions of paragraphs 1 and 2 shall not apply to the income of:

(a) An athlete in respect of his activities as an employee of a team which participates in a league with regularly schedule games in both Contracting States; or

(b) A team described in subparagraph (a)."


2. There shall be added to Article XVI (Artistes and Athletes) a new paragraph 4, as follows:

"4. Notwithstanding the provisions of Articles XIV (Independent Personal Services) and XV (Dependent Personal Services) an amount paid by a resident of a Contracting State to a resident of the other Contracting State as an inducement to sign an agreement relating to the performance of the services of an athlete (other than an amount referred to in paragraph 1 of Article XV (Dependent Personal Services)) may be taxed in the first-mentioned State, but the tax so charged shall not exceed 15 per cent of the gross amount of such payment."


ARTICLE VIII

1. The Title of Article XVII shall be deleted and replaced by the following:
"Withholding of Taxes in Respect of Personal Services"

2. Paragraph 2 of Article XVII (Withholding of Taxes in Respect of Personal Services) shall be deleted and replaced by the following:
"2. Where the competent authority of a Contracting State considers that an amount that would otherwise be deducted or withheld from any amount paid or credited to an individual who is a resident of the other Contracting State in respect of the performance of personal services in the first-mentioned State is excessive in relation to the estimated tax liability for the taxable year of that individual in the first-mentioned State, it may determine that a lesser amount will be deducted or withheld."

## ARTICLE IX

1. Paragraph 1 of Article XVIII (Pensions and Annuities) shall be deleted and replaced by the following:
"1. Pensions and annuities arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State, but the amount of any such pension that would be excluded from taxable income in the first-mentioned State if the recipient were a resident thereof shall be exempt from taxation in that other State."

2. Subparagraph 2(b) of Article XVIII (Pensions and Annuities) shall be deleted and replaced by the following:
"(b) Annuities may also be taxed in the Contracting State in which they arise and according to the laws of that State; but if a resident of the other Contracting State is the beneficial owner of an annuity payment, the tax so charged shall not exceed 15 per cent of the portion of such payment that would not be excluded from taxable income in the first-mentioned State if the beneficial owner were a resident thereof."

3. Paragraph 6 of Article XVIII (Pensions and Annuities) shall be deleted and replaced by the following:
"6. Alimony and other similar amounts (including child support payments) arising in a Contracting State and paid to a resident of the other Contracting State shall be taxable as follows:
(a) Such amounts shall be taxable only in that other State;
(b) Notwithstanding the provisions of subparagraph (a), the amount that would be excluded from taxable income in the first-mentioned State if the recipient were a resident thereof shall be exempt from taxation in that other State."

## ARTICLE X

Paragraph 2 of Article XXI (Exempt Organizations) shall be deleted and replaced by the following:

"2. Subject to the provisions of paragraph 3 income referred to in Article X (Dividends) and XI (Interest) derived by:

(a) A trust, company or other organization which is resident in a Contracting State, generally exempt from tax in a taxable year in that State and constituted and operate exclusively to administer or provide benefits under one or more funds or plans established to provide pension, retirement or other employee benefits; or

(b) A trust, company or other organization which is resident in Contracting State, not taxed in a taxable year in that State and constituted and operated exclusively to earn income for the benefit of an organization referred to in subparagraph (a); shall be exempt from tax in the taxable year in the other Contracting State."

ARTICLE XI

1. Paragraph 1 of Article XXIV (Elimination of Double Taxation) shall be deleted and replaced by the following:

"1. In the case of the United States subject to the provisions of paragraph 4, 5 and 6, double taxation shall be avoided as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States, or to a company electing to be treated as a domestic corporation, as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada; and, in the case of a company which is a resident of the United States owning at least 10 per cent of the voting stock of a company which is a resident of Canada from which it receives dividends in any taxable year, the United States shall allow as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada by that company with respect to the profits out of which such dividends are paid."

2. Paragraph 2 of Article XXIV (Elimination of Double Taxation) shall be deleted and replaced by the following:

"2. In the case of Canada, subject to the provisions of paragraphs 4, 5 and 6, double taxation shall be avoided as follows:

(a) Subject to the provisions of the law of Canada regarding the deduction from tax payable in Canada of tax paid in a territory outside Canada and to any subsequent modification of those provisions (which shall not affect the general principle hereof), and unless a greater deduction or relief is provided under the law of Canada, income tax paid or accrued to the United States on profits, income or gains arising in the United States shall be deducted from any Canadian tax payable in respect of such profits, income or gains;

(b) Subject to the provisions of the law of Canada regarding the determination of the exempt surplus of a foreign affiliate and to any subsequent modification of those provisions (which shall not affect the general principle hereof), for the purposes of computing Canadian tax,

a company which is a resident of Canada shall be allowed to deduct in computing its taxable income any dividend received by it out of the exempt surplus of a foreign affiliate which is a resident of the United States; and

(c) Notwithstanding the provisions of subparagraph (a), where Canada imposes a tax on gains from the alienation of property that, but for the provisions of paragraph 5 of Article XIII (Gains), would not be taxable in Canada, income tax paid or accrued to the United States on such gains shall be deducted from any Canadian tax payable in respect of such gains."

3. There shall be added to Article XXIV (Elimination of Double Taxation) a new paragraph 9, as follows:

"9 The provisions of this Article relating to the source of profits, income or gains shall not apply for the purpose of determining a credit against United States tax for any foreign taxes other than income taxes paid or accrued to Canada."

## ARTICLE XII

Paragraph 6 of Article XXV (Non-Discrimination) shall be deleted and replaced by the following:

"6. Notwithstanding the provisions of Article XXIV (Elimination of Double Taxation), the taxation on a permanent establishment which a resident of a Contracting State has in the other Contracting State shall not be less favorably levied in the other State than the taxation levied on residents of the other State carrying on the same activities. This paragraph shall not be construed as obliging a Contracting State:

(a) To grant to a resident of the other Contracting State any personal allowances, reliefs and reductions for taxation purposes on account of civil status or family responsibilities which it grants to its own residents; or

(b) To grant to a company which is a resident of the other Contracting State the same tax relief that it provides to a company which is a resident of the first-mentioned State with respect to dividends received by it from a company."

## ARTICLE XIII

1. Paragraph 2 of Article XXIX (Miscellaneous Rules) shall be deleted and replaced by the following:

"2. Except as provided in paragraph 3, nothing in the Convention shall be construed as preventing a Contracting State from taxing its residents (as determined under Article IV (Residence)) and, in the case of the United States, its citizens (including a former citizen whose loss of citizenship had as one of its principal purposes the avoidance of tax, but only for a period of ten years following such loss) and companies electing to be treated as domestic corporations, as if there were no convention between the United States and Canada with respect to taxes on income and on capital."

2. Subparagraph 3(a) of Article XXIX (Miscellaneous Rules) shall be deleted and replaced by the following:

        "(a) Under paragraphs 3 and 4 of Article IX (Related Persons), paragraphs 6 and 7 of Article XIII (Gains), paragraphs 1, 3, 4, and 6(b) of Article XVIII (Pensions and Annuities), paragraph 5 of Article XXIX (Miscellaneous Rules), paragraphs 3 and 5 of Article XXX (Entry into Force), and Articles XIX (Government Service), XXI (Exempt Organizations), XXIV (Elimination of Double Taxation), XXV (Non-Discrimination) and XXVI (Mutual Agreement Procedure); and"

3. Paragraph 4 of Article XXIX (Miscellaneous Rules) shall be deleted and replaced by the following:

"4. With respect to taxable years not barred by the statute of limitations ending on or before December 31 of the year before the year in which the Social Security Agreement between Canada and the United States (signed in Ottawa on March 11, 1981) enters into force, income from personal services not subject to tax by the United States under this Convention or the 1942 Convention shall not be considered wages or net earnings from self-employment for purposes of social security taxes imposed under the Internal Revenue Code."

4. Paragraph 5 of Article XXIX (Miscellaneous Rules) shall be deleted and replaced by the following:

"5. A beneficiary of a Canadian registered retirement savings plan may elect, under rules established by the competent authority of the United States, to defer United States taxation with respect to any income accrued in the plan but not distributed by the plan, until such time as a distribution is made from such plan, or any plan substituted therefor. The provisions of the preceding sentence shall not apply to income which is reasonably attributable to contributions made to the plan by the beneficiary while he was not a resident of Canada."

5. Paragraph 6 of Article XXIX (Miscellaneous Rules) shall be deleted and replaced by the following:

"6. Notwithstanding any other provision of the Convention,

        (a) Where profits, income or gains derived by a trust is to be treated for the purposes of the Convention as income of a resident of a Contracting State, and a principal purpose for the establishment, acquisition or maintenance of the trust was to obtain a benefit under the Convention or the 1942 Convention for persons who are not residents of that State, Articles VI (Income from Real Property) through XXIV (Elimination of Double Taxation) shall not apply in relation to the profits, income or gains of the trust; and

        (b) Articles VI (Income from Real Property) through XXIV (Elimination of Double Taxation) shall not apply to non-resident-owned investment corporations as defined under section 133 of the Income Tax Act of Canada, or under any similar provision enacted by Canada after the date of signature of the Protocol."

ARTICLE XIV

Paragraph 3 of Article XXX (Entry into Force) shall be deleted and replaced by the following:

"3. For the purposes of applying the United States foreign tax credit in relation to taxes paid or accrued to Canada:

      (a) Notwithstanding the provisions of paragraph 2(a) of Article II (Taxes Covered), the tax on 1971 undistributed income on hand imposed by Part IX of the Income Tax Act of Canada shall be considered to be an income tax for distributions made on or after the first day of January 1972 and before the first day of January 1979 and shall be considered to be imposed upon the recipient of a distribution, in the proportion that the distribution out of undistributed income with respect to which the tax has been paid bears to 85 per cent of such undistributed income;

      (b) The principles of paragraph 6 of Article XXIV (Elimination of Double Taxation) shall have effect for taxable years beginning on or after the first day of January 1976; and

      (c) The provisions of paragraph 1 of Article XXIV shall have effect for taxable years beginning on or after the first day of January 1981.

Any claim for refund based on the provisions of this paragraph may be filed on or before June 30 of the calendar year following that in which the Convention enters into force, notwithstanding any rule of domestic law to the contrary."


ARTICLE XV

1. This Protocol shall be subject to ratification in accordance with the applicable procedures of Canada and the United States and instruments of ratification shall be exchanged at Washington as soon as possible.

2. The Protocol shall enter into force upon the exchange of instruments of ratification and shall have effect in accordance with Article XXX (Entry into Force) of the Convention.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

Done in two copies at Ottawa this 14th day of June, 1983, in the English and French languages, each text being equally authentic.

FOR THE GOVERNMENT OF CANADA
    (s) Marc Lalonde

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA
    (s) Paul H. Robinson, Jr.


NOTES OF EXCHANGE (PROTOCOL 1)

OTTAWA, ONTARIO, *June 14,1983.*

His Excellency PAUL H. ROBINSON, Jr.,
*Ambassador of the United States of America,*
*Ottawa, Ontario.*

EXCELLENCY: The Convention between Canada and the United States of America, with Respect to Taxes on Income and on Capital signed at Washington on September 26, 1980, as amended by the Protocol signed today, provides that income from real property, including natural resources, may be taxed by the Contracting State in which the real property is situated under the statutory rules of that State. This rule is the international standard, consistent with the OECD Model Double Taxation Convention on Income and on Capital and with recent tax conventions of both countries.

The 1942 Convention provides a 15% limit on the statutory rate of tax at which royalties including natural resource royalties may be taxed. Concern has been expressed by persons receiving natural resource royalties that the new Convention provides no limitation in the tax rate that either country may impose. Canada and the United States agree that if either country increases the statutory tax rate which now applies to such natural resource royalties paid to non-residents (25% in Canada and 30% in the United States), negotiations will be resumed promptly upon request by either country with a view to considering an amendment to the Convention to provide an appropriate limit to the rate at which such royalties may be taxed.

Accept, Excellency, the assurances of my highest consideration.

MARC LALONDE
*Minister of Finance.*

OTTAWA, *June 14, 1983.*

Hon. MARC LALONDE,
*Minister of Finance.*

SIR: The Convention between Canada and the United States of America, with Respect to Taxes on Income and on Capital signed at Washington on September 26, 1980, as amended by the Protocol signed today, provides that income from real property, including natural resources; may be taxed by the Contracting State in which the real property is situated under the statutory rules of the State. This rule is the international standard, consistent with the OECD Model Double Taxation Convention on Income and on Capital and with recent tax conventions of both countries.

The 1942 Convention provides a 15 percent limit on the statutory rate of tax at which royalties including natural resource royalties may be taxed. Concern has been expressed by persons receiving natural resource royalties that the new Convention provides no limitation in the tax rate that either country may impose. Canada and the United States agree that if either country increases the statutory tax rate which now applies to such natural resource royalties paid to non-residents (25 percent in Canada and 30 percent in the United States), negotiations will be resumed promptly upon request by either country with a view to considering an amendment to the Convention to provide an appropriate limit to the rate at which such royalties may be taxed.

Accept, Sir, the assurances of my highest consideration.

(s) PAUL H. ROBINSON, Jr.,

I certify that this is an accurate copy of the original.

MARIO RUGGIA,
*Vice Consul, U.S. Embassy,*
*Ottawa, Canada.*

PROTOCOL 2

A SECOND PROTOCOL AMENDING THE 1980 TAX CONVENTION WITH CANADA

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

A SECOND PROTOCOL, SIGNED AT WASHINGTON ON MARCH 28, 1984, AMENDING THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND CANADA WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL SIGNED AT WASHINGTON ON SEPTEMBER 26, 1980, AS AMENDED BY THE PROTOCOL SIGNED AT OTTAWA ON JUNE 14, 1983

LETTER OF SUBMITTAL (PROTOCOL 2)

DEPARTMENT OF STATE,
*Washington, April 2, 1984.*

THE PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, the Second Protocol Amending the Convention between the United States of America and Canada with Respect to Taxes on Income and on Capital, signed at Washington on September 26, 1980, as amended by the Protocol signed at Ottawa on June 14, 1983. The second protocol was signed at Washington on March 28, 1984. The convention and first protocol are awaiting consideration by the Senate.

Since the convention and first protocol were negotiated, new social security legislation has been enacted. The Social Security Amendments of 1983 (Pub. L. 98-21, 97 Stat. 65, Apr. 20, 1983) provide in part that social security benefits paid to nonresident aliens henceforth will be subject to an effective 15 percent withholding tax. As the legislative history makes clear, however, Congress did not intend to override the treatment of such benefits in existing income tax treaties *(1983 U.S. Code Cong. & Adm. News 143, 169).* The Canadian government has requested that the pending income tax convention be amended to exempt Canadian residents from such withholding.

Under the second protocol, each party agrees not to tax social security benefits it pays to residents of the other country. The United States, however, will exempt only those Canadian residents who are not United States citizens; United States citizens will continue to be taxable to the extent provided under United States law. In addition, each party agrees to tax its own residents on only one half the social security benefits they derive from the other country.

The second protocol, like the convention and the first protocol, is subject to ratification. It will enter into force upon the exchange of instruments of ratification, which will take place at Ottawa. and shall thereupon have effect in accordance with Article XXX (Entry into Force) of the convention.

A technical memorandum explaining in detail the provisions of the second protocol is being prepared by the Department of the Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of the Treasury, with the cooperation of the Department of State, was primarily responsible for the negotiation of the second protocol. It has the approval of both Departments.

Respectfully submitted,

GEORGE P. SHULTZ.

LETTER OF TRANSMITTAL (PROTOCOL 2)

THE WHITE HOUSE, *April 18,1984.*

*To the Senate of the United States:*

I transmit herewith, for Senate advice and consent to ratification, a Second Protocol, signed at Washington on March 28, 1984, Amending the Convention between the United States and Canada with Respect to Taxes on Income and on Capital, signed at Washington on September 26, 1980, as amended by a Protocol signed at Ottawa on June 14, 1983. I also transmit the report of the Department of State with respect to the second protocol.

The Social Security Amendments of 1983 were enacted since the negotiation of the convention and first protocol. They provide in part that social security benefits paid to nonresident aliens henceforth will be subject to an effective 15 percent withholding tax. The Canadian Government has requested that the pending convention be amended to exempt Canadian residents from such withholding.

The second protocol would amend Article XVIII (Pensions and Annuities) of the convention, so as to provide that social security benefits paid by one party to residents of the other "shall be taxable only in that other State." However, United States citizens resident in Canada will continue to be taxable to the extent provided under United States law.

It is most desirable that this second protocol, together with the convention and first protocol, be considered by the Senate as soon as possible and that the Senate give advice and consent to ratification of the convention and two amending protocols.

RONALD REAGAN.

SECOND PROTOCOL AMENDING THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND CANADA WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL SIGNED AT WASHINGTON ON SEPTEMBER 26, 1980, AS AMENDED BY THE PROTOCOL SIGNED AT OTTAWA ON JUNE 14, 1983

The United States of America and Canada,

Desiring to conclude a second Protocol to amend the Convention with respect to Taxes on Income and on Capital signed at Washington on September 26, 1980, as amended by the Protocol signed at Ottawa on June 14, 1983 (hereinafter referred to as "the Convention"),

Have agreed as follows:

ARTICLE I

Paragraph 5 of Article XVIII (Pensions and Annuities) of the Convention shall be deleted and replaced by the following:

"5. Benefits under the social security legislation in a Contracting State paid to a resident of the other Contracting State shall be taxable as follows:

(a) Such benefits shall be taxable only in that other State;

(b) Notwithstanding the provisions of subparagraph (a), one-half of the total amount of any such benefit paid in a taxable year shall be exempt from taxation in that other State."

ARTICLE II

1. Subparagraph 3(a) of Article XXIX (Miscellaneous Rules) of the Convention shall be deleted and replaced by the following:

"(a) Under paragraphs 3 and 4 of Article IX (Related Persons), paragraphs 6 and 7 of Article XIII (Gains), paragraphs 1, 3, 4, 5(b), and 6(b) of Article XVIII (Pensions and Annuities), paragraphs 5 and 7 of Article XXIX (Miscellaneous Rules), paragraphs 3 and 5 of Article XXX (Entry into Force), and Articles XIX (Government Service), XXI (Exempt Organizations), XXIV (Elimination of Double Taxation), XXV (Non-Discrimination), and XXVI (Mutual Agreement Procedure); and"

2. There shall be added to Article XXIX (Miscellaneous Rules) of the Convention a new paragraph 7, as follows:

"7. One-half of the total amount of benefits under the social security legislation in Canada paid in a taxable year to a resident of Canada who is a citizen of the United States shall be exempt from taxation in the United States."

ARTICLE III

1. This Protocol shall be subject to ratification in accordance with the applicable procedures of the United States and Canada and instruments of ratification shall be exchanged as soon as possible.

2. The Protocol shall enter into force upon the exchange of instruments of ratification and shall have effect in accordance with the provisions of Article XXX (Entry into Force) of the Convention.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Government, have signed this Protocol.

DONE in duplicate at Washington, this 28th day of March 1984, in the English and French languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF             FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA      CANADA
   (s) Kenneth W. Dam                (s) Allan E. Gotlieb


PROTOCOL 3

A REVISED PROTOCOL AMENDING THE 1980
TAX CONVENTION WITH CANADA

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

A REVISED PROTOCOL AMENDING THE CONVENTION BETWEEN THE UNITED
STATES AND CANADA WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL
SIGNED AT WASHINGTON ON SEPTEMBER 26, 1980, AS AMENDED BY THE
PROTOCOLS SIGNED ON JUNE 14, 1983 AND MARCH 28, 1984


LETTER OF SUBMITTAL (PROTOCOL 3)


DEPARTMENT OF STATE,
*Washington, April 12, 1995.*

THE PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, a revised Protocol Amending the Convention between the United States and Canada with Respect to Taxes on Income and on Capital signed at Washington on September 26, 1980, as amended by the Protocols signed on June 14, 1983 and March 28, 1984. The revised Protocol would replace the Protocol to the Convention between the United States and Canada signed at Washington on August 31, 1994, which was transmitted to the Senate with a message from

the President dated September 14, 1994, and which is now pending in the Committee on Foreign Relations. The Protocol makes a number of amendments to the Convention. The most significant amendments are described below, in the order in which they appear in the Protocol. The revised Protocol makes technical changes intended to clarify the operation of some of the death tax provisions and to ensure that certain rules for entry into force operate properly.

The Convention currently provides for adjustments to related party transactions to reflect the amounts of income and expense that would have been reported in unrelated party transactions. It also provides for the other Contracting State to make correlative adjustments. However, unlike most of the United States tax treaties, the present Convention requires the State making the first adjustment to withdraw it if the initial adjustment has not been reported to the other Contracting State within six years of the year to which the first adjustment relates. This has created a potential for abuse. The Protocol will remove the obligation of the first-mentioned State to withdraw its adjustment in those circumstances.

The Protocol also reduces the withholding rates charged by one country on payments of certain classes of dividends, interest and royalties to residents of the other country. The withholding rate on dividends is reduced from 10 to 5 percent, phased in over two years, for a corporate shareholder that owns at least 10 percent of the voting stock of the paying company and is the beneficial owner of the dividends. The Protocol adds, in what has become established U.S. tax treaty policy, a rule to ensure that dividends paid by non-taxable "conduit" entities, such as U.S.-regulated investment companies (RICs) and real estate investment trusts (REITs), will not receive unjustified treaty benefits. In addition, the small individual shareholder benefits for REITs will be allowed to the estate of such an individual for up to five years.

The general withholding rate on interest will be reduced from 15 to 10 percent. The exemption in the present treaty for interest on trade credits will be broadened to include not only interest received by the seller but also interest received by other holders of trade credits. Real estate mortgage investment conduit (REMIC) excess inclusions will be taxable by the United States at full statutory rates. Most classes of royalties, including software royalties, will be exempt from withholding by the country in which the royalty arises.

Social security benefits, under the Protocol, are subject to tax only in the country making the payment. This change reflects U.S. tax treaty policy.

The scope of the non-discrimination article is broadened to include all national-level taxes in both Contracting States. Under the present Convention, the non-discrimination provisions are limited, with respect to taxes imposed by Canada, to taxes imposed under the Canadian Income Tax Act.

The Protocol strengthens levels of cooperation between the tax authorities of the Contracting States. It provides that the Contracting States may, by mutual agreement, implement an arbitration procedure for the resolution of disputes under the Convention. The Protocol also adds a detailed set of rules under which each State will assist the other in the collection of its taxes.

The information exchange provision is also broadened to include all national taxes. With respect to Canadian taxes, the present Convention covers only taxes imposed under the Income Tax Act and any national taxes on estates and gifts. The Protocol also provides for consultation and, if appropriate, renegotiation (subject to the usual ratification procedures) where future domestic legislation materially conflicts with treaty provisions.

The present Convention has no general anti-treaty-shopping rules. The comprehensive "limitations on benefits" provisions add to the treaty by the Protocol are, at Canada's request, primarily unilateral. These provisions protect the United States against use of the treaty by "treaty shoppers" seeking to gain unintended U.S. treaty benefits through Canada.

The Protocol adds rules to the Convention concerning taxation at death. The United States and Canada have different methods for imposing taxation at death. The United States imposes an estate tax, while Canada imposes an income tax on certain gains deemed realized at death. The Protocol contains many provisions which reduce the impact of taxes imposed at death by one Contracting State on residents of the other. First, the Protocol provides a limited U.S. estate tax waiver for small estates of Canadian resident decedents. Second, it provides a *pro rata* unified credit by the United States for estates of Canadian resident decedents. Third, it allows a limited U.S. "marital credit" for estates of Canadian resident decedents and of Canadian-citizen decedents resident in the United States. Fourth, the Protocol allows a credit against U.S. estate tax for Canadian income tax on certain income, profits, and gains realized in the year of death and on certain gains deemed realized at death by Canadian residents, and vice versa. Fifth, certain U.S. qualified domestic trusts" would be allowed to qualify as Canadian spousal trusts for purposes of Canadian law. Finally, relief would be provided for certain cross-border charitable bequests. The revised Protocol clarifies certain aspects of the computation and coordination of these provisions concerning taxation at death.

The Protocol requires the appropriate authorities of the Contracting States to consult within three years of its entry into force regarding further reductions in withholding rates and the application of the anti-treaty-shopping rules. The appropriate authorities are instructed to consult after three years regarding implementation of the arbitration procedure. The Protocol enters into force upon the exchange of instruments of ratification.

A technical memorandum explaining in detail the provisions of the revised Protocol will be prepared by the Department of the Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of the Treasury and the Department of State cooperated in the negotiation of the revised Protocol. It has the full approval of both Departments.

Respectfully submitted,

PETER TARNOFF.

LETTER OF TRANSMITTAL (PROTOCOL 3)

THE WHITE HOUSE, *April 24, 1995.*

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification, a revised Protocol Amending the Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital Signed at Washington on September 26, 1980, as Amended by the Protocols Signed on June 14, 1983, and March 28, 1984. This revised Protocol was signed at Washington on March 17, 1995. Also transmitted for the information of the Senate is the report of the Department of State with respect to the revised Protocol. The principal provisions of the Protocol, as well as the reasons for the technical amendments made in the revised Protocol, are explained in that document.

It is my desire that revised Protocol transmitted herewith be considered in place of the Protocol to the Income Tax Convention with Canada signed at Washington on August 31, 1994, which was transmitted to the Senate with my message dated September 14, 1994, and which is now pending in the Committee on Foreign Relations. I desire, therefore, to withdraw from the Senate the Protocol signed in August 1994.

I recommend that the Senate give early and favorable consideration to the revised Protocol and give its advice and consent to ratification.

WILLIAM J. CLINTON.

PROTOCOL AMENDING THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND CANADA WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL SIGNED AT WASHINGTON ON SEPTEMBER 26, 1980, AS AMENDED BY THE PROTOCOLS SIGNED ON JUNE 14, 1983 AND MARCH 28, 1984

The United States of America and Canada, desiring to conclude a Protocol to amend the Convention with Respect to Taxes on Income and on Capital signed at Washington on September 26, 1980, as amended by the Protocols signed on June 14, 1983 and March 28, 1984 (hereinafter referred to as "the Convention"), have agreed as follows:

ARTICLE 1

Paragraphs 2 to 4 of Article II (Taxes Covered) of the Convention shall be deleted and replaced by the following:

"2. Notwithstanding paragraph 1, the taxes existing on *March 17, 1995* to which the Convention shall apply are:

(a) In the case of Canada, the taxes imposed by the Government of Canada under the Income Tax Act; and

(b) In the case of the United States, the Federal income taxes imposed by the Internal Revenue Code of 1986. However, the Convention shall apply to:

(i) The United States accumulated earnings tax and personal holding company tax, to the extent, and only to the extent, necessary to implement the provisions of paragraphs 5 and 8 of Article X (Dividends);

(ii) The United States excise taxes imposed with respect to private foundations, to the extent, and only to the extent, necessary to implement the provisions of paragraph 4 of Article XXI (Exempt Organizations);

(iii) The United States social security taxes, to the extent, and only to the extent, necessary to implement the provisions of paragraph 2 of Article XXIV (Elimination of Double Taxation) and paragraph 4 of Article XXIX (Miscellaneous Rules); and

(iv) The United States estate taxes imposed by the Internal Revenue Code of 1986, to the extent, and only to the extent, necessary to implement the provisions of paragraph 3(g) of Article XXVI (Mutual Agreement Procedure) and Article XXIX B (Taxes Imposed by Reason of Death).

3. The Convention shall apply also to:

(a) Any taxes identical or substantially similar to those taxes to which the Convention applies under paragraph 2; and

(b) Taxes on capital; which are imposed after *March 17, 1995* in addition to, or in place of, the taxes to which the Convention applies under paragraph 2."

ARTICLE 2

Subparagraphs (c) and (d) of paragraph 1 of Article III (General Definitions) of the Convention shall be deleted and replaced by the following:

"(c) The term "Canadian tax" means the taxes referred to in Article II (Taxes Covered) that are imposed on income by Canada;

(d) The term "United States tax" means the taxes referred to in Article II (Taxes Covered), other than in subparagraph (b)(i) to (iv) of paragraph 2 thereof, that are imposed on income by the United States;"

ARTICLE 3

1. Paragraph I of Article IV (Residence) of the Convention shall be deleted and replaced by the following:

"1. For the purposes of this Convention, the term "resident" of a Contracting State means any person that, under the laws of that State, is liable to tax therein by reason of that person's domicile, residence, citizenship, place of management, place of incorporation or any other criterion of a similar nature, but in the case of an estate or trust, only to the extent that income derived by the estate or trust is liable to tax in that State, either in its hands or in the hands of its beneficiaries. For the purposes of this paragraph, an individual who is not a resident of Canada under this paragraph and who is a United States citizen or an alien admitted to the United States for permanent residence (a "green card" holder) is a resident of the United States only if the individual has a substantial presence, permanent home or habitual abode in the United States, and that individual's personal and economic relations are closer to the United States than to any third State. The term "resident" of a Contracting State is understood to include:

> (a) The Government of that State or a political subdivision or local authority thereof or any agency or instrumentality of any such government, subdivision or authority, and
>
> (b)    (i) A trust, organization or other arrangement that is operated exclusively to administer or provide pension, retirement or employee benefits; and
>
> (ii) A not-for-profit organization that was constituted in that State and that is, by reason of its nature as such, generally exempt from income taxation in that State."

2. A new sentence shall be added at the end of paragraph 3 of Article IV (Residence) of the Convention as follows:

" Notwithstanding the preceding sentence, a company that was created in a Contracting State, that is a resident of both Contracting States and that is continued at any time in the other Contracting State in accordance with the corporate law in that other State shall be deemed while it is so continued to be a resident of that other State."

## ARTICLE 4

Paragraphs 3 and 4 of Article IX (Related Persons) of the Convention shall be deleted and replaced by the following:

"3. Where an adjustment is made or to be made by a Contracting State in accordance with paragraph 1, the other Contracting State shall (notwithstanding any time or procedural limitations in the domestic law of that other State) make a corresponding adjustment to the income, loss or tax of the related person in that other State if:

> (a) It agrees with the first-mentioned adjustment; and
>
> (b) Within six years from the end of the taxable year to which the first-mentioned adjustment relates, the competent authority of the other State has been notified of the first-mentioned adjustment. The competent authorities, however, may agree to consider cases where the corresponding adjustment would not otherwise be barred by any time or procedural limitations in the other State, even if the notification is not made within the six-year period.

4. In the event that the notification referred to in paragraph 3 is not given within the time period referred to therein, and the competent authorities have not agreed to otherwise consider the case in accordance with paragraph 3(b), the competent authority of the Contracting State which has made or is to make the first-mentioned adjustment may provide relief from double taxation where appropriate."

## ARTICLE 5

1. The references in paragraphs 2(a) and 6 of Article X (Dividends) of the Convention to a rate of tax of "10 per cent" shall be deleted and replaced by references to a rate of tax of "5 per cent".

2. Paragraph 7 of Article X (Dividends) of the Convention shall be deleted and replaced by the following:
"7. Notwithstanding the provisions of paragraph 2,
    (a) Dividends paid by a company that is a resident of Canada and a non-resident-owned investment corporation to a company that is a resident of the United States, that owns at least 10 per cent of the voting stock of the company paying the dividends and that is the beneficial owner of such dividends, may be taxed in Canada at a rate not exceeding 10 percent of the gross amount of the dividends;
    (b) Paragraph 2(b) and not paragraph 2(a) shall apply in the case of dividends paid by a resident of the United States that is a Regulated Investment Company; and
    (c) Paragraph 2(a) shall not apply to dividends paid by a resident of the United States that is a Real Estate Investment Trust, and paragraph 2(b) shall apply only where such dividends are beneficially owned by an individual holding an interest of less than 10 per cent in the trust; otherwise the rate of tax applicable under the domestic law of the United States shall apply. Where an estate or a testamentary trust acquired its interest in a Real Estate Investment Trust as a consequence of an individual's death, for the purposes of the preceding sentence the estate or trust shall for the five-year period following the death be deemed with respect to that interest to be an individual."

## ARTICLE 6

1. The reference in paragraph 2 of Article XI (Interest) of the Convention to "15 per cent" shall be deleted and replaced by a reference to "10 per cent".

2. Paragraph 3(d) of Article XI (Interest) of the Convention shall be deleted and replaced by the following:
    "(d) The interest is beneficially owned by a resident of the other Contracting State and is paid with respect to indebtedness arising as a consequence of the sale on credit by a resident of

that other State of any equipment, merchandise or services except where the sale or indebtedness was between related persons; or"

3. A new paragraph 9 shall be added to Article XI (Interest) of the Convention as follows:

"9. The provisions of paragraphs 2 and 3 shall not apply to an excess inclusion with respect to a residual interest in a Real Estate Mortgage Investment Conduit to which Section 860 G of the United States Internal Revenue Code, as it may be amended from time to time without changing the general principle thereof, applies."

## ARTICLE 7

1. Paragraph 3 of Article XII (Royalties) of the Convention shall be deleted and replaced by the following:

"3. Notwithstanding the provisions of paragraph 2,

(a) Copyright royalties and other like payments in respect of the production or reproduction of any literary, dramatic, musical or artistic work (other than payments in respect of motion pictures and works on film, videotape or other means of reproduction for use in connection with television);

(b) Payments for the use of, or the right to use, computer software;

(c) Payments for the use of, or the right to use, any patent or any information concerning industrial, commercial or scientific experience (but not including any such information provided in connection with a rental or franchise agreement); and

(d) Payments with respect to broadcasting as may be agreed for the purposes of this paragraph in an exchange of notes between the Contracting States;

arising in a Contracting State and beneficially owned by a resident of the other Contracting State shall be taxable only in that other State."

2. Paragraph 6 of Article XII (Royalties) of the Convention shall be deleted and replaced by the following:

"6. For the purposes of this Article,

(a) Royalties shall be deemed to arise in a Contracting State when the payer is a resident of that State. Where, however, the person paying the royalties, whether he is a resident of a Contracting State or not, has in a State a permanent establishment or a fixed base in connection with which the obligation to pay the royalties was incurred, and such royalties are borne by such permanent establishment or fixed base, then such royalties shall be deemed to arise in the State in which the permanent establishment or fixed base is situated and not in any other State of which the payer is a resident; and

(b) Where subparagraph (a) does not operate to treat royalties as arising in either Contracting State and the royalties are for the use of, or the right to use, intangible property or tangible personal property in a Contracting State, then such royalties shall be deemed to arise in that State."

ARTICLE 8

Paragraph 8 of Article XIII (Gains) of the Convention shall be deleted and replaced by the following:

"8. Where a resident of a Contracting State alienates property in the course of a corporate or other organization, reorganization, amalgamation, division or similar transaction and profit, gain or income with respect to such alienation is not recognized for the purpose of taxation in that State, if requested to do so by the person who acquires the property, the competent authority of the other Contracting State may agree, in order to avoid double taxation and subject to terms and conditions satisfactory to such competent authority, to defer the recognition of the profit, gain or income with respect to such property for the purpose of taxation in that other State until such time and in such manner as may be stipulated in the agreement."

ARTICLE 9

1. Paragraph 3 of Article XVI II (Pensions and Annuities) of the Convention shall be deleted and replaced by the following:

"3. For the purposes of this Convention, the term "pensions" includes any payment under a superannuation, pension or other retirement arrangement, Armed Forces retirement pay, war veterans pensions and allowances and amounts paid under a sickness, accident or disability plan, but does not include payments under an income-averaging annuity contract or any benefit referred to in paragraph 5."

2. Paragraph 5 of Article XVIII (Pensions and Annuities) of the Convention shall be deleted and replaced by the following:

"5. Benefits under the social security legislation in a Contracting State (including tier 1 railroad benefits but not including unemployment benefits) paid to a resident of the other Contracting State (and in the case of Canadian benefits, to a citizen of the United States) shall be taxable only in the first-mentioned State."

3. A new paragraph 7 shall be added to Article XVIII (Pensions and Annuities) of the Convention as follows:

"7. A natural person who is a citizen or resident of a Contracting State and a beneficiary of a trust, company, organization or other arrangement that is a resident of the other Contracting State, generally exempt from income taxation in that other State and operated exclusively to provide pension, retirement or employee benefits may elect to defer taxation in the first-mentioned State, under rules established by the competent authority of that State, with respect to any income accrued in the plan but not distributed by the plan, until such time as and to the extent that a distribution is made from the plan or any plan substituted therefor."

ARTICLE 10

1. Paragraphs 2 and 3 of Article XXI (Exempt Organizations) of the Convention shall be deleted and replaced by the following:

"2. Subject to the provisions of paragraph 3, income referred to in Articles X (Dividends) and XI (Interest) derived by:

(a) A trust, company, organization or other arrangement that is a resident of a Contracting State, generally exempt from income taxation in a taxable year in that State and operated exclusively to administer or provide pension, retirement or employee benefits; or

(b) A trust, company, organization or other arrangement that is a resident of a Contracting State, generally exempt from income taxation in a taxable year in that State and operated exclusively to earn income for the benefit of an organization referred to in subparagraph (a);

shall be exempt from income taxation in that taxable year in the other Contracting State.

3. The provisions of paragraphs 1 and 2 shall not apply with respect to the income of a trust, company, organization or other arrangement from carrying on a trade or business or from a related person other than a person referred to in paragraph 1 or 2."

2. A new sentence shall be added at the end of paragraph 5 of Article XXI (Exempt Organizations) of the Convention as follows:

"For the purposes of this paragraph, a company that is a resident of Canada and that is taxable in the United States as if it were a resident of the United States shall be deemed to be a resident of the United States."

3. Paragraph 6 of Article XXI (Exempt Organizations) of the Convention shall be deleted and replaced by the following:

"6. For the purposes of Canadian taxation, gifts by a resident of Canada to an organization that is a resident of the United States, that is generally exempt from United States tax and that could qualify in Canada as a registered charity if it were a resident of Canada and created or established in Canada, shall be treated as gifts to a registered charity; however, no relief from taxation shall be available in any taxation year with respect to such gifts (other than such gifts to a college or university at which the resident or a member of the resident's family is or was enrolled) to the extent that such relief would exceed the amount of relief that would be available under the Income Tax Act if the only income of the resident for that year were the resident's income arising in the United States. The preceding sentence shall not be interpreted to allow in any taxation year relief from taxation for gifts to registered charities in excess of the amount of relief allowed under the percentage limitations of the laws of Canada in respect of relief for gifts to registered charities."

ARTICLE 11

A new paragraph 3 shall be added to Article XXII (Other Income) of the Convention as follows:

"3. Losses incurred by a resident of a Contracting State with respect to wagering transactions the gains on which may be taxed in the other Contracting State shall, for the purpose of taxation in that other State, be deductible to the same extent that such losses would be deductible if they were incurred by a resident of that other State."

ARTICLE 12

1. Paragraphs 2(a) and 2(b) of Article XXIV (Elimination of Double Taxation) of the Convention shall be deleted and replaced by the following:

"(a) Subject to the provisions of the law of Canada regarding the deduction from tax payable in Canada of tax paid in a territory outside Canada and to any subsequent modification of those provisions (which shall not affect the general principle hereof)

(i) Income tax paid or accrued to the United States on profits, income or gains arising in the United States, and

(ii) In the case of an individual, any social security taxes paid to the United States (other than taxes relating to unemployment insurance benefits) by the individual on such profits, income or gains

shall be deducted from any Canadian tax payable in respect of such profits, income or gains;

(b) Subject to the existing provisions of the law of Canada regarding the taxation of income from a foreign affiliate and to any subsequent modification of those provisions - which shall not affect the general principle hereof - for the purpose of computing Canadian tax, a company which is a resident of Canada shall be allowed to deduct in computing its taxable income any dividend received by it out of the exempt surplus of a foreign affiliate which is a resident of the United States; and"

2. Paragraph 5 of Article XXIV (Elimination of Double Taxation) of the Convention shall be deleted and replaced by the following:

"5. Notwithstanding the provisions of paragraph 4, where a United States citizen is a resident of Canada, the following rules shall apply in respect of the items of income referred to in Article X (Dividends), XI (Interest) or XII (Royalties) that arise (within the meaning of paragraph 3) in the United States and that would be subject to United States tax if the resident of Canada were not a citizen of the United States, as long as the law in force in Canada allows a deduction in computing income for the portion of any foreign tax paid in respect of such items which exceeds 15 per cent of the amount thereof:

(a) The deduction so allowed in Canada shall not be reduced by any credit or deduction for income tax paid or accrued to Canada allowed in computing the United States tax on such items;

(b) Canada shall allow a deduction from Canadian tax on such items in respect of income tax paid or accrued to the United States on such items, except that such deduction need not exceed the amount of the tax that would be paid on such items to the United States if the resident of Canada were not a United States citizen; and

(c) For the purposes of computing the United States tax on such items, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (b). The credit so allowed shall reduce only that portion of the United States tax on such items which exceeds the amount of tax that would be paid to the United States on such items if the resident of Canada were not a United States citizen."

3. Paragraph 7 of Article XXIV (Elimination of Double Taxation) of the Convention shall be deleted and replaced by the following:

"7. For the purposes of this Article, any reference to "income tax paid or accrued" to a Contracting State shall include Canadian tax and United States tax, as the case may be, and taxes of general application which are paid or accrued to a political subdivision or local authority of that State, which are not imposed by that political subdivision or local authority in a manner inconsistent with the provisions of the Convention and which are substantially similar to the Canadian tax or United States tax, as the case may be."

4. A new paragraph 10 shall be added to Article XXIV (Elimination of Double Taxation) of the Convention as follows:

"10. Where in accordance with any provision of the Convention income derived or capital owned by a resident of a Contracting State is exempt from tax in that State, such State may nevertheless, in calculating the amount of tax on other income or capital, take into account the exempted income or capital."

ARTICLE 13

1. Paragraph 3 of Article XXV (Non-Discrimination) of the Convention shall be deleted and replaced by the following:

"3. In determining the taxable income or tax payable of an individual who is a resident of a Contracting State, there shall be allowed as a deduction in respect of any other person who is a resident of the other Contracting State and who is dependent on the individual for support the amount that would be so allowed if that other person were a resident of the first-mentioned State."

2. Paragraph 10 of Article XXV (Non-Discrimination) of the Convention shall be deleted and replaced by the following:

"10. Notwithstanding the provisions of Article II (Taxes Covered), this Article shall apply to all taxes imposed by a Contracting State."

ARTICLE 14

1. Paragraphs 3(f) and (g) of Article XXVI (Mutual Agreement Procedure) of the Convention shall be deleted and replaced by the following:

"(f) To the elimination of double taxation with respect to a partnership;

(g) To provide relief from double taxation resulting from the application of the estate tax imposed by the United States or the Canadian tax as a result of a distribution or disposition of property by a trust that is a qualified domestic trust within the meaning of section 2056 A of the Internal Revenue Code, or is described in subsection 70(6) of the Income Tax Act or is treated as such under paragraph 5 of Article XXIX B (Taxes Imposed by Reason of Death), in cases where no relief is otherwise available; or

(h) To increases in any dollar amounts referred to in the Convention to reflect monetary or economic developments."

2. A new paragraph 6 shall be added to Article XXVI (Mutual Agreement Procedure) of the Convention as follows:

"6. If any difficulty or doubt arising as to the interpretation or application of the Convention cannot be resolved by the competent authorities pursuant to the preceding paragraphs of this Article, the case may, if both competent authorities and the taxpayer agree, be submitted for arbitration, provided that the taxpayer agrees in writing to be bound by the decision of the arbitration board. The decision of the arbitration board in a particular case shall be binding on both States with respect to that case. The procedures shall be established in an exchange of notes between the Contracting States. The provisions of this paragraph shall have effect after the Contracting States have so agreed through the exchange of notes."

ARTICLE 15

A new Article XXVI A (Assistance in Collection) shall be added to the Convention as follows:

"Article XXVI A
Assistance in Collection

1. The Contracting States undertake to lend assistance to each other in the collection of taxes referred to in paragraph 9, together with interest, costs, additions to such taxes and civil penalties, referred to in this Article as a "revenue claim".

2. An application for assistance in the collection of a revenue claim shall include a certification by the competent authority of the applicant State that, under the laws of that State, the revenue claim has been finally determined. For the purposes of this Article, a revenue claim is finally determined when the

applicant State has the right under its internal law to collect the revenue claim and all administrative and judicial rights of the taxpayer to restrain collection in the applicant State have lapsed or been exhausted.

3. A revenue claim of the applicant State that has been finally determined may be accepted for collection by the competent authority of the requested State and, subject to the provisions of paragraph 7, if accepted shall be collected by the requested State as though such revenue claim were the requested State's own revenue claim finally determined in accordance with the laws applicable to the collection of the requested State's own taxes.

4. Where an application for collection of a revenue claim in respect of a taxpayer is accepted
      (a) By the United States, the revenue claim shall be treated by the United States as an assessment under United States laws against the taxpayer as of the time the application is received; and
      (b) By Canada, the revenue claim shall be treated by Canada as an amount payable under the Income Tax Act, the collection of which is not subject to any restriction.

5. Nothing in this Article shall be construed as creating or providing any rights of administrative or judicial review of the applicant State's finally determined revenue claim by the requested State, based on any such rights that may be available under the laws of either Contracting State. If, at any time pending execution of a request for assistance under this Article, the applicant State loses the right under its internal law to collect the revenue claim, the competent authority of the applicant State shall promptly withdraw the request for assistance in collection.

6. Subject to this paragraph, amounts collected by the requested State pursuant to this Article shall be forwarded to the competent authority of the applicant State. Unless the competent authorities of the Contracting States otherwise agree, the ordinary costs incurred in providing collection assistance shall be borne by the requested State and any extraordinary costs so incurred shall be borne by the applicant State.

7. A revenue claim of an applicant State accepted for collection shall not have in the requested State any priority accorded to the revenue claims of the requested State.

8. No assistance shall be provided under this Article for a revenue claim in respect of a taxpayer to the extent that the taxpayer can demonstrate that
      (a) Where the taxpayer is an individual, the revenue claim relates to a taxable period in which the taxpayer was a citizen of the requested State, and
      (b) Where the taxpayer is an entity that is a company, estate or trust, the revenue claim relates to a taxable period in which the taxpayer derived its status as such an entity from the laws in force in the requested State.

9. Notwithstanding the provisions of Article II (Taxes Covered), the provisions of this Article shall apply to all categories of taxes collected by or on behalf of the Government of a Contracting State.

10. Nothing in this Article shall be construed as:

    (a) Limiting the assistance provided for in paragraph 4 of Article XXVI (Mutual Agreement Procedure); or

    (b) Imposing on either Contracting State the obligation to carry out administrative measures of a different nature from those used in the collection of its own taxes or that would be contrary to its public policy (ordre public).

11. The competent authorities of the Contracting States shall agree upon the mode of application of this Article, including agreement to ensure comparable levels of assistance to each of the Contracting States."

ARTICLE 16

1. Paragraph 1 of Article XXVII (Exchange of Information) of the Convention shall be deleted and replaced by the following:

"1. The competent authorities of the Contracting States shall exchange such information as is relevant for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes to which the Convention applies insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Article I (Personal Scope). Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the taxation laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment or collection of, the administration and enforcement in respect of, or the determination of appeals in relation to the taxes to which the Convention applies or, notwithstanding paragraph 4, in relation to taxes imposed by a political subdivision or local authority of a Contracting State that are substantially similar to the taxes covered by the Convention under Article II (Taxes Covered). Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions. The competent authorities may release to an arbitration board established pursuant to paragraph 6 of Article XXVI (Mutual Agreement Procedure) such information as is necessary for carrying out the arbitration procedure; the members of the arbitration board shall be subject to the limitations on disclosure described in this Article."

2. Paragraph 4 of Article XXVI I (Exchange of Information) of the Convention shall be deleted and replaced by the following:

"4. For the purposes of this Article, the Convention shall apply, notwithstanding the provisions of Article II (Taxes Covered):

    (a) To all taxes imposed by a Contracting State; and

    (b) To other taxes to which any other provision of the Convention applies, but only to the extent that the information is relevant for the purposes of the application of that provision."

ARTICLE 17

1. Paragraph 3(a) of Article XXIX (Miscellaneous Rules) of the Convention shall be deleted and replaced by the following:

"(a) Under paragraphs 3 and 4 of Article IX (Related Persons), paragraphs 6 and 7 of Article XIII (Gains), paragraphs 1, 3, 4, 5, 6(b) and 7 of Article XVIII (Pensions and Annuities), paragraph 5 of Article XXIX (Miscellaneous Rules), paragraphs 1, 5 and 6 of Article XXIX B (Taxes Imposed by Reason of Death), paragraphs 2, 3, 4 and 7 of Article XXIX B (Taxes Imposed by Reason of Death) as applied to the estates of persons other than former citizens referred to in paragraph 2 of this Article, paragraphs 3 and 5 of Article XXX (Entry into Force), and Articles XIX (Government Service), XXI (Exempt Organizations), XXIV (Elimination of Double Taxation) , XXV (Non-Discrimination) and XXVI (Mutual Agreement Procedure);"

2. Paragraphs 5 to 7 of Article XXIX (Miscellaneous Rules) of the Convention shall be deleted and replaced by the following:

"5. Where a person who is a resident of Canada and a shareholder of a United States S corporation requests the competent authority of Canada to do so, the competent authority may agree, subject to terms and conditions satisfactory to such competent authority, to apply the following rules for the purposes of taxation in Canada with respect to the period during which the agreement is effective:

(a) The corporation shall be deemed to be a controlled foreign affiliate of the person;

(b) All the income of the corporation shall be deemed to be foreign accrual property income;

(c) For the purposes of subsection 20(11) of the Income Tax Act, the amount of the corporation's income that is included in the person's income shall be deemed not to be income from a property; and

(d) Each dividend paid to the person on a share of the capital stock of the corporation shall be excluded from the person's income and shall be deducted in computing the adjusted cost base to the person of the share.

6. For purposes of paragraph 3 of Article XXII (Consultation) of the General Agreement on Trade in Services, the Contracting States agree that:

(a) A measure falls within the scope of the Convention only if:

(i) The measure relates to a tax to which Article XXV (Non-Discrimination) of the Convention applies; or

(ii) The measure relates to a tax to which Article XXV (Non-Discrimination) of the Convention does not apply and to which any other provision of the Convention applies, but only to the extent that the measure relates to a matter dealt with in that other provision of the Convention; and

(b) Notwithstanding paragraph 3 of Article XXII (Consultation) of the General Agreement on Trade in Services, any doubt as to the interpretation of subparagraph (a) will be

resolved under paragraph 3 of Article XXVI (Mutual Agreement Procedure) of the Convention or any other procedure agreed to by both Contracting States.

7. The appropriate authority of a Contracting State may request consultations with the appropriate authority of the other Contracting State to determine whether change to the Convention is appropriate to respond to changes in the law or policy of that other State. Where domestic legislation enacted by a Contracting State unilaterally removes or significantly limits any material benefit otherwise provided by the Convention, the appropriate authorities shall promptly consult for the purpose of considering an appropriate change to the Convention."

ARTICLE 18

A new Article XXIX A (Limitation on Benefits) shall be added to the Convention as follows:

"Article XXIX A
Limitation on Benefits

1. For the purposes of the application of this Convention by the United States,
       (a) A qualifying person shall be entitled to all of the benefits of this Convention, and
       (b) Except as provided in paragraphs 3, 4 and 6, a person that is not a qualifying person shall not be entitled to any benefits of the Convention.

2. For the purposes of this Article, a qualifying person is a resident of Canada that is:
       (a) A natural person;
       (b) The Government of Canada or a political subdivision or local authority thereof, or any agency or instrumentality of any such government, subdivision or authority;
       (c) A company or trust in whose principal class of shares or units there is substantial and regular trading on a recognized stock exchange;
       (d) A company more than 50 per cent of the vote and value of the shares (other than debt substitute shares) of which is owned, directly or indirectly, by five or fewer persons each of which is a company or trust referred to in subparagraph (c), provided that each company or trust in the chain of ownership is a qualifying person or a resident or citizen of the United States;
       (e)     (i) A company 50 per cent or more of the vote and value of the shares (other than debt substitute shares) of which is not owned, directly or indirectly, by persons other than qualifying persons or residents or citizens of the United States, or
           (ii) A trust 50 per cent or more of the beneficial interest in which is not owned, directly or indirectly, by persons other than qualifying persons or residents or citizens of the United States,
       where the amount of the expenses deductible from gross income that are paid or payable by the company or trust, as the case may be, for its preceding fiscal period (or, in the

case of its first fiscal period, that period) to persons that are not qualifying persons or residents or citizens of the United States is less than 50 per cent of its gross income for that period;

(f) An estate;

(g) A not-for-profit organization, provided that more than half of the beneficiaries, members or participants of the organization are qualifying persons or residents or citizens of the United States; or

(h) An organization described in paragraph 2 of Article XXI (Exempt Organizations) and established for the purpose of providing benefits primarily to individuals who are qualifying persons, persons who were qualifying persons within the five preceding years, or residents or citizens of the United States.

3. Where a person that is a resident of Canada and is not a qualifying person of Canada, or a person related thereto, is engaged in the active conduct of a trade or business in Canada (other than the business of making or managing investments, unless those activities are carried on with customers in the ordinary course of business by a bank, an insurance company, a registered securities dealer or a deposit-taking financial institution), the benefits of the Convention shall apply to that resident person with respect to income derived from the United States in connection with or incidental to that trade or business, including any such income derived directly or indirectly by that resident person through one or more other persons that are residents of the United States. Income shall be deemed to be derived from the United States in connection with the active conduct of a trade or business in Canada only if that trade or business is substantial in relation to the activity carried on in the United States giving rise to the income in respect of which benefits provided under the Convention by the United States are claimed.

4. A company that is a resident of Canada shall also be entitled to the benefits of Articles X (Dividends), XI (Interest) and XII (Royalties) if

(a) Its shares that represent more than 90 per cent of the aggregate vote and value represented by all of its shares (other than debt substitute shares) are owned, directly or indirectly, by persons each of whom is a qualifying person, a resident or citizen of the United States or a person who

(i) Is a resident of a country with which the United States has a comprehensive income tax convention and is entitled to all of the benefits provided by the United States under that convention;

(ii) Would qualify for benefits under paragraphs 2 or 3 if that person were a resident of Canada (and, for the purposes of paragraph 3, if the business it carried on in the country of which it is a resident were carried on by it in Canada); and

(iii) Would be entitled to a rate of United States tax under the convention between that person's country of residence and the United States, in respect of the particular class of income for which benefits are being claimed under this Convention, that is at least as low as the rate applicable under this Convention; and

(b) The amount of the expenses deductible from gross income that are paid or payable by the company for its preceding fiscal period (or, in the case of its first fiscal period, that

period) to persons that are not qualifying persons or residents or citizens of the United States is less than 50 per cent of the gross income of the company for that period.

5. For the purposes of this Article,

(a) The term "recognized stock exchange" means:

(i) The NASDAQ System owned by the National Association of Securities Dealers, Inc. and any stock exchange registered with the Securities and Exchange Commission as a national securities exchange for purposes of the Securities Exchange Act of 1934;

(ii) Canadian stock exchanges that are "prescribed stock exchanges" under the Income Tax Act; and

(iii) Any other stock exchange agreed upon by the Contracting States in an exchange of notes or by the competent authorities of the Contracting States;

(b) The term "not-for-profit organization" of a Contracting State means an entity created or established in that State and that is, by reason of its not-for-profit status, generally exempt from income taxation in that State, and includes a private foundation, charity, trade union, trade association or similar organization; and

(c) The term "debt substitute share" means:

(i) A share described in paragraph (e) of the definition "term preferred share" in the Income Tax Act, as it may be amended from time to time without changing the general principle thereof; and

(ii) Such other type of share as may be agreed upon by the competent authorities of the Contracting States.

6. Where a person that is a resident of Canada is not entitled under the preceding provisions of this Article to the benefits provided under the Convention by the United States, the competent authority of the United States shall, upon that person's request, determine on the basis of all factors including the history, structure, ownership and operations of that person whether

(a) Its creation and existence did not have as a principal purpose the obtaining of benefits under the Convention that would not otherwise be available; or

(b) It would not be appropriate, having regard to the purpose of this Article, to deny the benefits of the Convention to that person.

The person shall be granted the benefits of the Convention by the United States where the competent authority determines that subparagraph (a) or (b) applies.

7. It is understood that the fact that the preceding provisions of this Article apply only for the purposes of the application of the Convention by the United States shall not be construed as restricting in any manner the right of a Contracting State to deny benefits under the Convention where it can reasonably be concluded that to do otherwise would result in an abuse of the provisions of the Convention."

ARTICLE 19

A new Article XXIX B (Taxes Imposed by Reason of Death) shall be added to the Convention as follows:

"Article XXIX B
Taxes Imposed by Reason of Death

1. Where the property of an individual who is a resident of a Contracting State passes by reason of the individual's death to an organization referred to in paragraph 1 of Article XXI (Exempt Organizations), the tax consequences in a Contracting State arising out of the passing of the property shall apply as if the organization were a resident of that State.

2. In determining the estate tax imposed by the United States, the estate of an individual (other than a citizen of the United States) who was a resident of Canada at the time of the individual's death shall be allowed a unified credit equal to the greater of

(a) The amount that bears the same ratio to the credit allowed under the law of the United States to the estate of a citizen of the United States as the value of the part of the individual's gross estate that at the time of the individual's death is situated in the United States bears to the value of the individual's entire gross estate wherever situated; and

(b) The unified credit allowed to the estate of a nonresident not a citizen of the United States under the law of the United States.

The amount of any unified credit otherwise allowable under this paragraph shall be reduced by the amount of any credit previously allowed with respect to any gift made by the individual. A credit otherwise allowable under subparagraph (a) shall be allowed only if all information necessary for the verification and computation of the credit is provided.

3. In determining the estate tax imposed by the United States on an individual's estate with respect to property that passes to the surviving spouse of the individual (within the meaning of the law of the United States) and that would qualify for the estate tax marital deduction under the law of the United States if the surviving spouse were a citizen of the United States and all applicable elections were properly made (in this paragraph and paragraph 4 referred to as "qualifying property"), a non-refundable credit computed in accordance with the provisions of paragraph 4 shall be allowed in addition to the unified credit allowed to the estate under paragraph 2 or under the law of the United States, provided that

(a) The individual was at the time of death a citizen of the United States or a resident of either Contracting State;

(b) The surviving spouse was at the time of the individual's death a resident of either Contracting State;

(c) If both the individual and the surviving spouse were residents of the United States at the time of the individual's death, one or both was a citizen of Canada; and

(d) The executor of the decedent's estate elects the benefits of this paragraph and waives irrevocably the benefits of any estate tax marital deduction that would be allowed under

the law of the United States on a United States Federal estate tax return filed for the individual's estate by the date on which a qualified domestic trust election could be made under the law of the United States.

4. The amount of the credit allowed under paragraph 3 shall equal the lesser of

    (a) The unified credit allowed under paragraph 2 or under the law of the United States (determined without regard to any credit allowed previously with respect to any gift made by the individual), and

    (b) The amount of estate tax that would otherwise be imposed by the United States on the transfer of qualifying property.

The amount of estate tax that would otherwise be imposed by the United States on the transfer of qualifying property shall equal the amount by which the estate tax (before allowable credits) that would be imposed by the United States if the qualifying property were included in computing the taxable estate exceeds the estate tax (before allowable credits) that would be so imposed if the qualifying property were not so included. Solely for purposes of determining other credits allowed under the law of the United States, the credit provided under paragraph 3 shall be allowed after such other credits.

5. Where an individual was a resident of the United States immediately before the individual's death, for the purposes of subsection 70(6) of the Income Tax Act, both the individual and the individual's spouse shall be deemed to have been resident in Canada immediately before the individual's death. Where a trust that would be a trust described in subsection 70(6) of that Act, if its trustees that were residents or citizens of the United States or domestic corporations under the law of the United States were residents of Canada, requests the competent authority of Canada to do so, the competent authority may agree, subject to terms and conditions satisfactory to such competent authority, to treat the trust for the purposes of that Act as being resident in Canada for such time as may be stipulated in the agreement.

6. In determining the amount of Canadian tax payable by an individual who immediately before death was a resident of Canada, or by a trust described in subsection 70(6) of the Income Tax Act (or a trust which is treated as being resident in Canada under the provisions of paragraph 5), the amount of any Federal or state estate or inheritance taxes payable in the United States (not exceeding, where the individual was a citizen of the United States or a former citizen referred to in paragraph 2 of Article XXIX (Miscellaneous Rules), the amount of estate and inheritance taxes that would have been payable if the individual were not a citizen or former citizen of the United States) in respect of property situated within the United States shall,

    (a) To the extent that such estate or inheritance taxes are imposed upon the individual's death, be allowed as a deduction from the amount of any Canadian tax otherwise payable by the individual for the taxation year in which the individual died on the total of

        (i) Any income, profits or gains of the individual arising (within the meaning of paragraph 3 of Article XXIV (Elimination of Double Taxation)) in the United States in that year, and

(ii) Where the value at the time of the individual's death of the individual's entire gross estate wherever situated (determined under the law of the United States) exceeded 1.2 million U.S. dollars or its equivalent in Canadian dollars, any income, profits or gains of the individual for that year from property situated in the United States at that time, and

(b) To the extent that such estate or inheritance taxes are imposed upon the death of the individual's surviving spouse, be allowed as a deduction from the amount of any Canadian tax otherwise payable by the trust for its taxation year in which that spouse dies on any income, profits or gains of the trust for that year arising (within the meaning of paragraph 3 of Article XXIV (Elimination of Double Taxation)) in the United States or from property situated in the United States at the time of death of the spouse.

For purposes of this paragraph, property shall be treated as situated within the United States if it is so treated for estate tax purposes under the law of the United States as in effect on *March 17, 1995,* subject to any subsequent changes thereof that the competent authorities of the Contracting States have agreed to apply for the purposes of this paragraph. The deduction allowed under this paragraph shall take into account the deduction for any income tax paid or accrued to the United States that is provided under paragraph 2(a), 4(a) or 5(b) of Article XXIV (Elimination of Double Taxation).

7. In determining the amount of estate tax imposed by the United States on the estate of an individual who was a resident or citizen of the United States at the time of death, or upon the death of a surviving spouse with respect to a qualified domestic trust created by such an individual or the individual's executor or surviving spouse, a credit shall be allowed against such tax imposed in respect of property situated outside the United States, for the federal and provincial income taxes payable in Canada in respect of such property by reason of the death of the individual or, in the case of a qualified domestic trust, the individual's surviving spouse. Such credit shall be computed in accordance with the following rules:

(a) A credit otherwise allowable under this paragraph shall be allowed regardless of whether the identity of the taxpayer under the law of Canada corresponds to that under the law of the United States.

(b) The amount of a credit allowed under this paragraph shall be computed in accordance with the provisions and subject to the limitations of the law of the United States regarding credit for foreign death taxes (as it may be amended from time to time without changing the general principle hereof), as though the income tax imposed by Canada were a creditable tax under that law.

(c) A credit may be claimed under this paragraph for an amount of federal or provincial income tax payable in Canada only to the extent that no credit or deduction is claimed for such amount in determining any other tax imposed by the United States, other than the estate tax imposed on property in a qualified domestic trust upon the death of the surviving spouse.

8. Provided that the value, at the time of death, of the entire gross estate wherever situated of an individual who was a resident of Canada (other than a citizen of the United States) at the time of death

does not exceed 1.2 million U.S. dollars or its equivalent in Canadian dollars, the United States may impose its estate tax upon property forming part of the estate of the individual only if any gain derived by the individual from the alienation of such property would have been subject to income taxation by the United States in accordance with Article XIII (Gains)."

## ARTICLE 20

1. The appropriate authorities of the Contracting States shall consult within a three year period from the date on which this Protocol enters into force with respect to further reductions in withholding taxes provided in the Convention, and with respect to the rules in Article XXIX A (Limitation on Benefits) of the Convention.

2. The appropriate authorities of the Contracting States shall consult after a three-year period from the date on which the Protocol enters into force in order to determine whether it is appropriate to make the exchange of notes referred to in Article XXVI (Mutual Agreement Procedure) of the Convention.

## ARTICLE 21

1. This Protocol shall be subject to ratification in accordance with the applicable procedures in Canada and the United States and instruments of ratification shall be exchanged as soon as possible.

2. The Protocol shall enter into force upon the exchange of instruments of ratification, and shall have effect:

(a) For tax withheld at the source on income referred to in Articles X (Dividends), XI (Interest), XII (Royalties) and XVIII (Pensions and Annuities) of the Convention, except on income referred to in paragraph 5 of Article XVIII of the Convention (as it read before the entry into force of this Protocol), with respect to amounts paid or credited on or after the first day of the second month next following the date on which the Protocol enters into force, except that the reference in paragraph 2(a) of Article X (Dividends) of the Convention, as amended by the Protocol, to "5 per cent" shall be read, in its application to amounts paid or credited on or after that first day:

(i) Before 1996, as "7 per cent"; and

(ii) After 1995 and before 1997, as "6 per cent"; and

(b) For other taxes, with respect to taxable years beginning on or after the first day of January next following the date on which the Protocol enters into force, except that the reference in paragraph 6 of Article X (Dividends) of the Convention, as amended by the Protocol, to "5 per cent" shall be read, in its application to taxable years beginning on or after that first day and ending before 1997, as "6 per cent".

3. Notwithstanding the provisions of paragraph 2, Article XXVI A (Assistance in Collection) of the Convention shall have effect for revenue claims finally determined by a requesting State after the date that is 10 years before the date on which the Protocol enters into force.

4. Notwithstanding the provisions of paragraph 2, paragraphs 2 through 8 of Article XXIX B (Taxes Imposed by Reason of Death) of the Convention (and paragraph 2 of Article II (Taxes Covered) and paragraph 3(a) of Article XXIX (Miscellaneous Rules) of the Convention, as amended by the Protocol, to the extent necessary to implement paragraphs 2 through 8 of Article XXIX B (Taxes Imposed by Reason of Death) of the Convention) shall, notwithstanding any limitation imposed under the law of a Contracting State on the assessment, reassessment or refund with respect to a person's return, have effect with respect to deaths occurring after the date on which the Protocol enters into force and, provided that any claim for refund by reason of this sentence is filed within one year of the date on which the Protocol enters into force or within the otherwise applicable period for filing such claims under domestic law, with respect to benefits provided under any of those paragraphs with respect to deaths occurring after November 10, 1988.

5. Notwithstanding the provisions of paragraph 2, paragraph 2 of Article 3 of the Protocol shall have effect with respect to taxable years beginning on or after the first day of January next following the date on which the Protocol enters into force.

IN WITNESS WHEREOF, the undersigned, duly authorized thereto by their respective Governments, have signed this Protocol.

Done in two copies at Washington this _seventeenth_ day of _March,_ 1995, in the English and French languages, each text being equally authentic.

For the Government of the                     For The Government of
United States of America:                     Canada
    (s) Richard E. Hecklinger                         (s) Robert C. Wright


PROTOCOL 4

PROTOCOL AMENDING TAX CONVENTION
WITH CANADA

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

PROTOCOL AMENDING THE CONVENTION BETWEEN THE UNITED STATES OF
AMERICA AND CANADA WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL
SIGNED AT WASHINGTON ON SEPTEMBER 26, 1980 AS AMENDED BY THE
PROTOCOLS SIGNED ON JUNE 14, 1983, MARCH 28, 1984, AND MARCH 17, 1995,
SIGNED AT OTTAWA ON JULY 29, 1997

LETTER OF SUBMITTAL (PROTOCOL 4)

DEPARTMENT OF STATE,
*Washington, August 12, 1997.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate
for advice and consent to ratification, the Protocol Amending the Convention Between the United States
of America and Canada with Respect to Taxes on Income and on Capital Signed at Washington on
September 26, 1980 as Amended by the Protocols Signed on June 14, 1983, March 28, 1984 and
March 17, 1995, signed at Ottawa on July 29, 1997 ("the proposed Protocol"). The proposed
Protocol to the Convention addresses two issues: the taxation of gains from the sale of shares of foreign
real-property holding companies and the taxation of social security benefits.

Article 1 of the proposed Protocol deletes and replaces paragraphs 3(a) and 3(b)(ii) of Article XIII
of the Convention, which addresses the taxation of capital gains. The revised provisions would define
real property situated in the United States and real property situated in Canada in such a way as to deny
each country the right under this Convention to tax foreign persons on their income from the sale of the
stock of foreign corporations whose assets consist primarily of domestic real estate. Both the United
States and Canada currently tax foreign persons on the proceeds from the sale of both domestic real
estate and the stock of domestic corporations whose assets consist primarily of domestic real estate.
The current Convention also permits the taxation of income from the sale of stock of foreign companies
whose assets consist primarily of domestic real estate. The new limitation on each country's right to tax
gains from the sale of shares of real-property holding companies would be retroactively effective to
April 26, 1995.

Article 2 addresses taxation of social security benefits. The treatment of social security benefits by
the United States and Canada was last modified by the Protocol Amending the Convention between the
United States of America and Canada with Respect to Taxes on Income and on Capital Signed at
Washington on September 26, 1980, as Amended by the Protocols Signed on June 14, 1983 and
March 28, 1984, signed at Washington, March 17, 1995 ("the 1995 Protocol"), which applies to social
security benefits paid on or after January 1, 1996. The 1995 Protocol amended the Convention to
move from residence-based taxation to a system under which social security benefits are taxed by the
country paying the benefits ("the source country") - at a statutory rate of 25.5 percent by the United

States and 25.0 percent by Canada. In addition, Canada permits U.S. recipients of Canadian benefits to file a Canadian tax return and pay tax at lower graduated rates on net income, enabling low-income U.S. recipients of Canadian social security to pay little or no tax on their benefits. However, the United States taxes at the 25.5 percent rate permitted by the 1995 Protocol. Thus, many Canadian recipients of U.S. benefits found their benefits reduced by 25.5 percent after January 1, 1996.

Article 2 of the proposed Protocol returns to the system of residence-based taxation in place before the 1995 Protocol. Social security benefits will be taxable in only the country in which the recipient lives ("the country of residence"). This, under the proposed Protocol, U.S. social security benefits paid to a resident of Canada would be taxed only by Canada, and, a benefit paid by Canada under its social security legislation to a U.S. resident would be taxed only by the United States. Benefits would be taxed on a net basis at graduated rates, and low-income recipients would not pay any tax. Furthermore, the taxation of benefits by the country of residence takes into account the way the benefits would have been taxed in the source country. For example, since the United States includes only 85 percent of U.S. social security benefits in taxable income, only 85 percent of the U.S. benefits received by Canadians would be subject to Canadian tax.

Article 2 of the proposed Protocol will apply to amounts paid on or after January 1, 1996, the date the current rule took effect. Thus, social security recipients may receive a refund of taxes previously paid although some high-income recipients may be required to pay additional taxes to their country of residence. If, however, as a result of the change, the tax of the country of residence exceeds the amount of the refund there will be neither a refund of source-country tax nor additional tax by the country of residence. Consequently, no one will be subject to a higher rate of tax for the retroactive period. (Nonetheless, in the future, some high-income recipients of benefits will be subject to a higher rate of tax if their average tax rate on these benefits in their country of residence is higher than the current rate of source-country withholding tax.) The proposed Protocol also outlines the rules that the United States and Canada will follow in giving effect to the retroactive application of the changes to the taxation of social security benefits.

The Department of the Treasury and the Department of State cooperated in the negotiation of the proposed Protocol. It has the full approval of both Departments.

Respectfully submitted,

MADELEINE ALBRIGHT.


LETTER OF TRANSMITTAL (PROTOCOL 4)

THE WHITE HOUSE, *September 23, 1997.*

\

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification the Protocol Amending the Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital Signed at Washington on September 26, 1980 as Amended by the Protocols signed on June 14, 1983, March 28, 1984 and March 17, 1995, signed at Ottawa on July 29, 1997. This Protocol modified the taxation of social security benefits and the taxation of gams from the sale of shares of foreign real-property holding companies.

I recommend that the Senate give early and favorable consideration to this Protocol and give its advice and consent to ratification.

WILLIAM J. CLINTON.

PROTOCOL

AMENDING THE CONVENTION BETWEEN

THE UNITED STATES OF AMERICA AND CANADA

WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL

SIGNED AT WASHINGTON ON SEPTEMBER 26, 1980

AS AMENDED BY THE PROTOCOLS SIGNED ON JUNE 14,1983,

MARCH 28, 1984 AND MARCH 17, 1995

The United States of America and Canada, desiring to conclude a protocol to amend the Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital signed at Washington on September 26, 1980, as amended by the Protocols signed on June 14, 1983, March 28, 1984 and March 17, 1995 (hereinafter referred to as "the Convention"), have agreed as follows:

ARTICLE 1

1. Paragraph 3 (a) of Article XIII (Gains) of the Convention shall be deleted and replaced by the following:

"(a) In the case of real property situated in the United States, means a United States real property interest and real property referred to in Article VI (Income from Real

Property) situated in the United States, but does not include a share of the capital stock of a company that is not a resident of the United States; and"

2. Paragraph 3(b)(ii) of Article XIII (Gains) of the Convention shall be deleted and replaced by the following:

"(ii) A share of the capital stock of a company that is a resident of Canada, the value if whose shares is derived principally from real property situated in Canada; and"


## ARTICLE 2

1. Paragraph 3 of Article XVIII (Pensions and Annuities) of the Convention shall be deleted and replaced by the following:

"3. For the purposes of this Convention, the term "pensions" includes any payment under a superannuation, pension or other retirement arrangement, Armed Forces retirement pay, war veterans pensions and allowances and amounts paid under a sickness, accident or disability plan. but does not include payments under an income-averaging annuity contract or, except for the purposes of Article XIX (Government Service), any benefit referred to in paragraph 5."

2. Paragraph 5 of Article XVIII (Pensions and Annuities) of the Convention shall be deleted and replaced by the following:

"5. Benefits under the social security legislation in a Contracting State (including tier I railroad retirement benefits but not including unemployment benefits) paid to a resident of the other Contracting State shall be taxable only in that other State, subject to the following conditions:

(a) a benefit under the social security legislation in the United States paid to a resident of Canada shall be taxable in Canada as though it were a benefit under the Canada Pension Plan, except that 15 per cent of the amount of the benefit shall be exempt from Canadian tax; and

(b) a benefit under the social security legislation in Canada paid to a resident of the United States shall be taxable in the United States as though it were a benefit under the Social Security Act, except that a type of benefit that is not subject to Canadian tax when paid to residents of Canada shall be exempt from United States tax."


## ARTICLE 3

1. This Protocol shall be subject to ratification in accordance with the applicable procedures in the United States and Canada and instruments of ratification shall be exchanged as soon as possible.

2. This Protocol shall enter into force upon the exchange of instruments of ratification, and shall have effect as follows:

(a) Article 1 of this Protocol shall have effect as of April 26, 1995; and

(b) Article 2 of this Protocol shall have effect with respect to amounts paid or credited to a resident of the other Contracting State after 1995, except that where a Contracting State has, in accordance with the Convention read without reference to this Protocol, imposed a tax on benefits paid or credited under the social security legislation in that State, and those benefits are paid or credited after 1995 and

(i) before the calendar year in which this Protocol enters into force, if this Protocol enters into force before September 1 of that year, or

(ii) before the end of the calendar year in which this Protocol enters into force, if this Protocol enters into force after August 31 of that year,

Article 2 shall only have effect with respect to such benefits (referred to in this Article as "source-taxed benefits") as described in paragraphs 3, 4 and 5.

3. With respect to source-taxed benefits paid by a Contracting State to a resident of the other Contracting State, Article 2 applies only if the resident has, within three years after the date on which this protocol enters into force, applied to the competent authority of the first-mentioned Contracting State for a refund of the tax imposed on the benefits. However, with respect to source-taxed benefits paid by the United States to a resident of Canada, the competent authority of Canada shall:

(a) apply for and receive such refund on behalf or the resident;

(b) remit to the resident, in accordance with the law of Canada governing refunds of income tax overpayments, such refund less any tax imposed in Canada on the benefits in accordance with Article 2 of this Protocol; and

(c) make the application referred to in subparagraph (a) only if the additional tax that would be imposed in Canada on the benefits, on the assumption that Article 2 of this Protocol applied, would be less than the tax imposed in the United States on the benefits as a result of paragraph 5 of Article XVIII (pensions and Annuities) of the Convention read without reference to this protocol.

4. All taxes refunded as a result of this Protocol shall be refunded without interest and interest on any taxes of a resident of a Contracting State assessed as a result of this protocol shall be computed as though those taxes became payable no earlier than December 31 of the year following the year in which this Protocol enters into force.

5. The competent authorities of the Contracting States shall establish procedures for making or revoking the application referred to in paragraph 3 and shall agree on such additional procedures as are necessary to ensure the appropriate implementation of this Protocol.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

Done at Ottawa in duplicate, in the English and French languages, both texts being equally authentic, this _29th_ day of _July_, 1997.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:
    (s) Vladimir Sambaiew

FOR THE GOVERNMENT OF
CANADA:
(s) Michael Leir