# Exhibit 69

# PROTOCOL
# AMENDING THE CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF JAPAN FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME

The Government of the United States of America and the Government of Japan,

Desiring to amend the Convention between the Government of the United States of America and the Government of Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income signed at Washington on 6 November 2003 (hereinafter referred to as “the Convention”) and the Protocol, which forms an integral part of the Convention, signed at Washington on 6 November 2003 (hereinafter referred to as “the Protocol of 2003”),

Have agreed as follows:

## ARTICLE I

Paragraph 5 of Article 1 of the Convention shall be deleted and replaced by the following:

> "5. The provisions of paragraph 4 shall not affect the benefits conferred by a Contracting State under paragraphs 2 and 3 of Article 9, paragraph 3 of Article 17, and Articles 18, 19, 23, 24, 25 and 28, but in the case of benefits conferred by the United States under Articles 18 and 19 only if the individuals claiming the benefits are neither citizens of, nor have been lawfully admitted for permanent residence in, the United States."

## ARTICLE II

Paragraph 4 of Article 4 of the Convention shall be deleted and replaced by the following:

> "4. Where by reason of the provisions of paragraph 1 a person other than an individual is a resident of both Contracting States, such person shall not be considered a resident of either Contracting State for the purposes of its claiming any benefits provided by this Convention."

## ARTICLE III

1. Subparagraph (a) of paragraph 3 of Article 10 of the Convention shall be amended by deleting the terms "more than 50 percent" and replacing them with the terms "at least 50 percent", and deleting the words "twelve months" and replacing them with the words "six months".

2. Paragraph 9 of Article 10 of the Convention shall be amended by deleting the terms "or 2" everywhere they appear within the paragraph.

## ARTICLE IV

Article 11 of the Convention shall be deleted and replaced by the following:

"ARTICLE 11

1. Interest arising in a Contracting State and beneficially owned by a resident of the other Contracting State may be taxed only in that other Contracting State.

2. Notwithstanding the provisions of paragraph 1:

   (a) interest arising in a Contracting State that is determined by reference to receipts, sales, income, profits or other cash flow of the debtor or a related person, to any change in the value of any property of the debtor or a related person or to any dividend, partnership distribution or similar payment made by the debtor or a related person, or any other interest similar to such interest arising in a Contracting State, may be taxed in the Contracting State in which it arises, and according to the laws of that Contracting State, but if the beneficial owner of the

interest is a resident of the other Contracting State, the tax so charged shall not exceed 10 percent of the gross amount of the interest; and

(b) a Contracting State may tax, in accordance with its domestic law, interest paid with respect to the ownership interests in an entity used for the securitization of real estate mortgages or other assets, to the extent that the amount of interest paid exceeds the return on comparable debt instruments as specified by the law of that Contracting State.

3. Interest shall be deemed to arise in a Contracting State when the payor is a resident of that Contracting State. Where, however, the person paying the interest, whether such person is a resident of a Contracting State or not, has in a state other than that of which such person is a resident a permanent establishment in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by such permanent establishment, then:

(a) if the permanent establishment is situated in a Contracting State, such interest shall be deemed to arise in that Contracting State, and

(b) if the permanent establishment is situated in a state other than the Contracting States, such interest shall not be deemed to arise in either Contracting State.

4. The term "interest" as used in this Article means income from debt-claims of every kind, whether or not secured by mortgage and whether or not carrying a right to participate in the debtor's profits, and in particular, income from government securities and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds or debentures, and all other income that is subjected to the same taxation treatment as income from money lent by the tax laws of the Contracting State in which the income arises. Income dealt with in Article 10 shall not be regarded as interest for the purposes of this Convention.

5. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State in which the interest arises, through a permanent establishment situated therein and the debt-claim in respect of which the interest is paid is effectively connected with such permanent establishment. In such case the provisions of Article 7 shall apply.

6. Where, by reason of a special relationship between the payor and the beneficial owner or between both of them and some other person, the amount of the interest, having regard to the debt-claim for which it is paid, exceeds the amount which would have been agreed upon by the payor and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payment may be taxed in the Contracting State in which it arises at a rate not to exceed 5 percent of the gross amount of the excess.

7. A resident of a Contracting State shall not be considered the beneficial owner of interest in respect of a debt-claim if such debt-claim would not have been established unless a person:

(a) that is not entitled to benefits with respect to interest arising in the other Contracting State which are equivalent to, or more favorable than, those available under this Convention to a resident of the first-mentioned Contracting State; and

(b) that is not a resident of either Contracting State;

held an equivalent debt-claim against the first-mentioned resident."

ARTICLE V

1. Paragraph 2 of Article 13 of the Convention shall be deleted and replaced by the following:

"2. For the purposes of this Article the term "real property situated in the other Contracting State" shall include:

(a) real property referred to in Article 6;

(b) where that other Contracting State is Japan, shares or interests in a company, partnership or trust deriving the value of its property directly or indirectly principally from real property referred to in Article 6 and situated in Japan; and

(c) where that other Contracting State is the United States, a United States real property interest."

2. Paragraph 4 of Article 13 of the Convention shall be deleted and replaced by the following:

"4. Notwithstanding the provisions of paragraph 3, gains from the alienation of any property, other than real property, forming part of the business property of a permanent establishment which an enterprise of a Contracting State has in the other Contracting State, including such gains from the alienation of such a permanent establishment (alone or with the whole enterprise), may be taxed in that other Contracting State."

ARTICLE VI

Article 15 of the Convention shall be deleted and replaced by the following:

"ARTICLE 15

Directors' fees and other similar payments derived by a resident of a Contracting State in his capacity as a member of the board of directors of a company which is a resident of the other Contracting State may be taxed in that other Contracting State."

ARTICLE VII

Article 20 of the Convention shall be deleted and replaced by the following:

"ARTICLE 20 (Deleted)"

ARTICLE VIII

Clause (i) of subparagraph (b) of paragraph 5 of Article 22 of the Convention shall be amended by deleting the words "the Securities and Exchange Law" and replacing them with the words "the Financial Instruments and Exchange Law".

ARTICLE IX

Paragraph 1 of Article 23 of the Convention shall be deleted and replaced by the following:

"1. (a) Subject to the provisions of the laws of Japan regarding the allowance as a credit against the Japanese tax of tax payable in any country other than Japan, where a resident of Japan derives income from the United States which may be taxed in the United States in accordance with the provisions of this Convention, the amount of the United States tax payable in respect of that income shall be allowed as a credit against the Japanese tax imposed on that resident. The amount of credit, however, shall not exceed the amount of the Japanese tax which is appropriate to that income. For the purposes of the preceding provisions of this subparagraph, income beneficially owned by a resident of Japan which may be taxed in the United States in accordance with the Convention shall be deemed to arise from sources in the United States.

(b) Subject to the provisions, other than the provisions with regard to ownership requirements of shares, of the laws of Japan regarding the exclusion of dividends from the basis upon which the Japanese tax is imposed, where the income derived from the United States is dividends paid by a company which is a resident of the United States to a company which is a resident of Japan and has owned at least 10 percent of the total shares issued by that company, during the period of six months immediately before the day when the obligation to pay dividends is confirmed, such dividends shall be excluded from the basis upon which the Japanese tax is imposed."

ARTICLE X

1. Paragraph 3 of Article 24 of the Convention shall be amended by deleting the words "paragraph 8 of Article 11" and replacing them with the words "paragraph 6 of Article 11".

2. Paragraph 5 of Article 24 of the Convention shall be

amended by deleting the words "or paragraph 10 of Article 11".

ARTICLE XI

Article 25 of the Convention shall be amended by adding the following after paragraph 4:

"5. Where, pursuant to this Article, a person has presented a case to the competent authority of the Contracting State of which he is a resident or, if his case comes under paragraph 1 of Article 24, to that of the Contracting State of which he is a national, on the basis that the actions of one or both of the Contracting States have resulted for that person in taxation not in accordance with the provisions of this Convention, and the competent authorities of the Contracting States are unable to reach an agreement to resolve that case, the case shall be resolved through arbitration conducted in the manner prescribed by, and subject to the requirements of, this paragraph, paragraphs 6 and 7, and any rules or procedures agreed upon by the competent authorities of both Contracting States pursuant to subparagraph (i) of paragraph 7, if:

(a) the presenter of the case has submitted a written request to the relevant competent authority for resolution of the case through arbitration; and

(b) all concerned persons and their authorized representatives or agents have provided written statements not to disclose to any person (except other concerned persons) any information received during the course of the arbitration proceeding from the competent authorities of either Contracting State or the arbitration panel, other than the determination of such panel.

6. Notwithstanding the provisions of paragraph 5, a case shall not be submitted to arbitration if:

(a) a decision with respect to such case has already been rendered by a court or administrative tribunal of either Contracting State;

(b) the competent authorities of both Contracting States have agreed that the case is not suitable for resolution through arbitration and have notified the presenter of the case of such agreement no later than two years after the commencement date; or

(c) the case is the subject only of the provisions set forth in the final sentence of paragraph 3.

7. For the purposes of paragraphs 5, 6 and this paragraph, the following rules and definitions shall apply:

(a) The term "concerned person" means the presenter of a case to a competent authority for consideration under this Article and all other persons, if any, whose tax liability to either

Contracting State may be directly affected by a mutual agreement arising from that consideration.

(b) The "commencement date" for a case is the earliest date on which the information necessary to undertake substantive consideration for a mutual agreement has been received by the competent authorities of both Contracting States.

(c) An arbitration proceeding pursuant to this Article with respect to a case (other than a case described in subparagraph (d)) shall begin on the later of:

(i) two years after the commencement date of that case, unless the competent authorities of both Contracting States have agreed to a different date and notified the presenter of the case of such agreement; and

(ii) the earliest date upon which the requirements of subparagraphs (a) and (b) of paragraph 5 have been satisfied.

(d) An arbitration proceeding pursuant to this Article with respect to a case that is the subject of a request for an advance pricing arrangement, shall begin on the later of:

(i) six months after an official notification has been issued by the tax authority of either Contracting State of a correction of, or an intent to adjust, the pricing of a transaction or transfer covered by a request for an advance pricing arrangement regarding a concerned person, unless the competent authorities of both Contracting States have agreed to a different date and notified the presenter of the case of such agreement; and

(ii) the earliest date upon which the requirements of subparagraphs (a) and (b) of paragraph 5 have been satisfied.

However, in no event shall the arbitration proceeding begin any earlier than two years after the date on which the information necessary to undertake substantive consideration for a mutual agreement on the advance pricing arrangement has been received by the competent authorities of both Contracting States.

(e) Unless the presenter of the case does not accept the determination of the arbitration panel, such determination shall constitute a resolution by mutual agreement of the entire case under this Article at the time it is timely accepted by the presenter and shall be binding on both Contracting States. The resolution resulting from the determination of the arbitration panel shall be implemented notwithstanding any time limits or procedural

limitations in the law of the Contracting States, except such limitations as apply for the purposes of giving effect to such a resolution.

(f) For the purposes of an arbitration proceeding under paragraph 5 and this paragraph, the members of the arbitration panel and their staff shall be considered to be "persons or authorities" to whom information may be disclosed under Article 26.

(g) No information relating to an arbitration proceeding (including the determination of the arbitration panel) may be disclosed by the competent authorities of the Contracting States, except as permitted by this Convention and the laws of the Contracting States. In addition, all material prepared in the course of, or relating to, an arbitration proceeding shall be considered to be information exchanged between the competent authorities of the Contracting States pursuant to Article 26.

(h) The competent authorities of both Contracting States shall ensure that all members of the arbitration panel and their staff agree in written statements sent to each of the competent authorities of the Contracting States not to disclose any information relating to an arbitration proceeding (including the determination of the arbitration panel), and to abide by and be subject to the confidentiality and nondisclosure provisions of Article 26 and similar provisions of relevant laws of the Contracting States. Such statements shall also include their acceptance to serve on the arbitration panel. Notwithstanding the provisions of this subparagraph, the members of the arbitration panel or their staff shall disclose the determination of the arbitration panel to the competent authorities of both Contracting States.

(i) The competent authorities of both Contracting States shall agree in writing, before the date that the first arbitration proceeding commences, on time periods and procedures that are consistent with paragraphs 5, 6 and this paragraph for:

(i) notifying the presenter of the case of a modified date for the beginning of an arbitration proceeding under clause (i) of subparagraph (c) and clause (i) of subparagraph (d);

(ii) the appropriate application of arbitration in the context of advance pricing arrangements, including rules concerning the date on which an arbitration proceeding shall begin with respect to such arrangements;

(iii) obtaining the nondisclosure statements required by subparagraph (b) of paragraph 5 and subparagraph (h) of this paragraph

from each concerned person, authorized representative or agent, and member of the arbitration panel (including their staff);

(iv) the appointment of the members of the arbitration panel;

(v) the submission of proposed resolutions, position papers, and reply submissions by the competent authorities of the Contracting States to the arbitration panel;

(vi) the submission by the presenter of the case of a paper setting forth the presenter's views and analysis of the case for consideration by the arbitration panel;

(vii) the delivery by the arbitration panel of its determination to the competent authorities of both Contracting States;

(viii) the acceptance or rejection by the presenter of the case of the determination of the arbitration panel; and

(ix) the adoption by the arbitration panel of any additional procedures necessary for the conduct of its business.

The competent authorities of both Contracting States may agree in writing on such other rules and procedures as may be necessary for the effective and timely implementation of the provisions of paragraphs 5, 6 and this paragraph."

ARTICLE XII

Article 26 of the Convention shall be deleted and replaced by the following:

"ARTICLE 26

1. The competent authorities of the Contracting States shall exchange such information as is foreseeably relevant for carrying out the provisions of this Convention or to the administration or enforcement of the domestic laws concerning taxes of every kind and description imposed on behalf of the Contracting States, insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by paragraph 1 of Article 1 and Article 2. If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall provide information under this Article in the form of authenticated copies of original documents (including books, papers, statements, records, accounts, and writings).

2. Any information received under paragraph 1 by a Contracting State shall be treated as secret in the same manner as information obtained under the laws of that Contracting State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection or

administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes referred to in paragraph 1, or the oversight of such functions. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions.

3. In no case shall the provisions of paragraphs 1 and 2 be construed so as to impose on a Contracting State the obligation:

(a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;

(b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;

(c) to supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process, or information the disclosure of which would be contrary to public policy; or

(d) to obtain or provide information that would reveal confidential communications between a client and an attorney, solicitor or other admitted legal representative where such communications are:

(i) produced for the purposes of seeking or providing legal advice; or

(ii) produced for the purposes of use in existing or contemplated legal proceedings.

4. If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall use its information gathering measures to obtain the requested information, even though that other Contracting State may not need such information for its own tax purposes. The obligation contained in the preceding sentence is subject to the limitations of paragraph 3 but in no case shall such limitations be construed to permit a Contracting State to decline to supply information solely because it has no domestic interest in such information.

5. In no case shall the provisions of paragraph 3 be construed to permit a Contracting State to decline to supply information solely because the information is held by a bank, other financial institution, nominee or person acting in an agency or a fiduciary capacity or because it relates to ownership interests in a person."

ARTICLE XIII

Article 27 of the Convention shall be deleted and replaced by the following:

"ARTICLE 27

1. Subject to the provisions of this Article, the Contracting States shall lend assistance to each other in the collection of taxes, insofar as the taxation is not contrary to this Convention or any other agreement to which the Contracting States are parties, together with interest, costs of collection, additions to such taxes, and civil or administrative penalties related to such taxes (hereinafter referred to in this Article as a "revenue claim"). This assistance is not restricted by paragraph 1 of Article 1 and Article 2. Any assistance provided by a Contracting State shall be only to the extent allowable under the law of that Contracting State.

2. The assistance under paragraph 1 shall be lent only in the collection of the following revenue claims:

(a) a revenue claim in respect of a company:

(i) the determination of which is not eligible to be resolved by mutual agreement procedure pursuant to Article 25;

(ii) the determination of which has been mutually agreed upon pursuant to Article 25; or

(iii) with respect to the determination of which the company has terminated the mutual agreement procedure;

(b) a revenue claim in respect of an individual. However, if the individual is a national of the Contracting State from which assistance is requested (hereinafter referred to as the "requested State") at the time the application for assistance is received, assistance shall be lent only for revenue claims with respect to which the individual or a person acting on behalf of the individual:

(i) has filed a fraudulent tax return or a fraudulent claim for refund;

(ii) has willfully failed to file a tax return to evade taxes; or

(iii) has transferred assets into the requested State to avoid collection of the revenue claim.

3. Notwithstanding the provisions of paragraph 2, the assistance under paragraph 1 shall be lent in the collection of revenue claims that is necessary to ensure that any exemption or reduced rate of tax granted under this Convention shall not be enjoyed by persons not entitled thereto, provided that the requested State agrees with such determination of improper granting of benefits.

4. The provisions of this Article shall only apply to

revenue claims in respect of the taxes covered by Article 2 and in addition, the following taxes:

(a) in the case of Japan:

(i) the consumption tax;

(ii) the inheritance tax; and

(iii) the gift tax;

(b) in the case of the United States:

(i) the Federal estate and gift taxes;

(ii) the Federal excise tax on insurance policies issued by foreign insurers;

(iii) the Federal excise taxes imposed with respect to private foundations; and

(iv) the Federal taxes related to employment and self-employment.

5. An application for assistance in the collection of a revenue claim, other than the collection of a revenue claim described in paragraph 3, shall include a certification by the competent authority of the Contracting State applying for such assistance (hereinafter referred to as the "applicant State") that, under the laws of the applicant State, the revenue claim has been finally determined. For the purposes of this Article, a revenue claim is finally determined when the applicant State has the right under its domestic law to collect the revenue claim and all applicable administrative and judicial rights of the taxpayer to dispute or appeal the revenue claim have lapsed or been exhausted.

6. When an application for assistance by the applicant State has been accepted for collection by the requested State pursuant to the provisions of this Article, the revenue claim of the applicant State shall be treated, to the extent necessary for collection under the laws of the requested State, as assessed under the laws of the requested State (as of the time the application is received), and shall be collected by the requested State as though such revenue claim were the requested State's own revenue claim in accordance with the laws applicable to the collection of the requested State's own revenue claims.

7. Notwithstanding the provisions of paragraph 6, acts of collection carried out by the requested State in pursuance of an application for assistance, which, according to the laws of the applicant State, would have the effect of suspending or interrupting the period of limitation on the collection of a revenue claim in the applicant State if carried out by the applicant State, shall also have this effect with respect to the revenue claim under the laws of the applicant State. The requested State shall inform the applicant State about such acts.

8. A revenue claim with respect to which assistance is being lent by the requested State shall not, in that Contracting State, be subject to the time limits, or

accorded any priority, applicable to a revenue claim under the laws of that Contracting State by reason of its nature as such.

9. Nothing in this Article shall be construed as creating or providing any rights of administrative or judicial review by the requested State of the applicant State's finally determined revenue claim, irrespective of any such rights that may be available under the laws of either Contracting State.

10. If, at any time pending execution of an application for assistance under this Article, the applicant State loses the right under its domestic law to collect the revenue claim or otherwise terminates collection, the competent authority of the applicant State shall promptly withdraw the application for assistance in collection and the requested State shall cease all measures of collection of the revenue claim.

11. If, at any time pending execution of an application for assistance under this Article, the applicant State suspends collection of the revenue claim according to the laws of the applicant State, the competent authority of the applicant State shall promptly notify the competent authority of the requested State of that fact, and the competent authority of the applicant State shall either suspend or withdraw its request at the option of the competent authority of the requested State and the requested State shall suspend or cease all measures of collection of the revenue claim accordingly.

12. Amounts collected by the requested State pursuant to this Article shall be remitted to the competent authority of the applicant State.

13. Unless the competent authorities of both Contracting States otherwise agree, the ordinary costs incurred in providing assistance in collection shall be borne by the requested State and any extraordinary costs so incurred shall be borne by the applicant State.

14. In no case shall the provisions of this Article be construed so as to impose on the requested State the obligation to carry out:

(a) administrative measures at variance with the laws and administrative practices of the requested State or of the applicant State; or

(b) measures which would be contrary to public policy.

15. In no case shall the provisions of this Article be construed so as to impose on the requested State an obligation to accept an application of the applicant State:

(a) if the applicant State has not pursued all appropriate measures to collect the revenue claim that is the subject of the application for assistance available under its laws or administrative practices; or

(b) if the administrative burden for the requested State is substantially disproportionate to the benefit to be derived by the applicant State.

16. Before assistance is lent under the provisions of this Article, other than under paragraph 3, the competent authorities of both Contracting States shall agree upon the mode of application of this Article, including an agreement to ensure comparable levels of assistance to each of the Contracting States. In particular, the competent authorities of both Contracting States shall agree on a limit to the number of applications for assistance that a Contracting State may make in a particular year, as well as a minimum monetary threshold for a revenue claim for which assistance is sought, and procedural rules related to the remittance of amounts collected pursuant to the provisions of this Article."

ARTICLE XIV

1. Subparagraph (a) of paragraph 1 of the Protocol of 2003 shall be amended by deleting the words "United States excise tax" and replacing them with the words "Federal excise tax," and subparagraph (b) of that paragraph shall be amended by deleting the words "United States excise tax" and replacing them with the words "Federal excise taxes".

2. Paragraph 9 of the Protocol of 2003 shall be deleted and replaced by the following:

"9. (Deleted)"

3. The Protocol of 2003 shall be amended by adding the following after paragraph 13:

"14. With reference to paragraphs 5, 6 and 7 of Article 25 of the Convention:

(a) It is understood that taxation shall be considered to have resulted for the purpose of paragraph 5 of Article 25 of the Convention from the actions of one or both of the Contracting States as soon as tax has been paid, assessed or otherwise determined (for example, a notification of correction, determination or deficiency of a tax liability has been issued), or in cases where the taxpayer is officially notified by the tax authorities that they intend to tax him on a certain element of income (for example, a notice of proposed adjustment has been issued).

(b) The arbitration panel shall consist of three individual members. The members appointed shall not be employees nor have been employees within the twelve-month period prior to the date on which the arbitration proceeding begins, of the tax administration, the Treasury Department, or the Ministry of Finance of the Contracting State which identifies them. Each competent authority of the Contracting States shall select one member of the arbitration panel. In the event that the competent authority of a Contracting State fails to make such selection in the manner and within the time periods agreed by the competent authorities of both Contracting States pursuant to subparagraph (i) of paragraph 7 of Article 25 of the Convention, the competent authority of the other

Contracting State shall select a second member of the arbitration panel. The two members so selected shall select a third member, who shall serve as Chair of the arbitration panel. If the two initial members of the arbitration panel fail to select the third member in the manner and within the time periods agreed by the competent authorities of both Contracting States pursuant to subparagraph (i) of paragraph 7 of Article 25 of the Convention, these members shall be dismissed, and each competent authority of the Contracting States shall select a new member of the arbitration panel. The Chair shall not be a national or lawful permanent resident of either Contracting State. Furthermore, the members appointed shall not have any prior involvement with the specific matters at issue in the arbitration proceeding for which they are being considered as members of the arbitration panel.

(c) If at any time before the arbitration panel delivers a determination to the competent authorities of the Contracting States:

(i) the competent authorities of the Contracting States reach a mutual agreement to resolve the case pursuant to Article 25 of the Convention;

(ii) the presenter of the case withdraws the request for arbitration;

(iii) a decision concerning the case is rendered by a court or administrative tribunal of one of the Contracting States during the arbitration proceeding; or

(iv) if any concerned person or their authorized representatives or agents willfully violates the written nondisclosure statement required by subparagraph (b) of paragraph 5 of Article 25 of the Convention, and the competent authorities of both Contracting States agree that such violation should result in the termination of the arbitration proceeding;

the mutual agreement procedure, including the arbitration proceeding, with respect to the case shall terminate.

(d) The competent authority of each of the Contracting States shall be permitted to submit a proposed resolution addressing each adjustment or similar issue raised in the case. Such proposed resolution shall be a resolution of the entire case, and shall reflect, without modification, all matters in the case previously agreed between the competent authorities of both Contracting States. Such proposed resolution shall be limited to a disposition of specific monetary amounts (for example, of income, profit, gain or expense) or, where specified, the maximum rate of tax charged pursuant to the Convention, for each

adjustment or similar issue in the case, based on the application of the Convention to the case. The competent authority of each of the Contracting States shall also be permitted to submit a position paper for consideration by the arbitration panel.

(e) Notwithstanding the provisions of subparagraph (d), in the case of an arbitration proceeding concerning:

(i) the taxation of an individual with respect to whom the competent authorities of the Contracting States have been unable to reach an agreement regarding the Contracting State of which the individual is a resident;

(ii) the taxation of the business profits of an enterprise with respect to which the competent authorities of the Contracting States have been unable to reach an agreement on whether a permanent establishment exists; or

(iii) such other issues the determination of which are contingent on resolution of similar threshold questions;

the competent authorities of the Contracting States may submit proposed resolutions separately addressing the relevant threshold questions as described in clause (i), (ii) or (iii) above (for example, the question of whether a permanent establishment exists), and the contingent determinations (for example, the determination of the amount of profit attributable to such permanent establishment).

(f) Where an arbitration proceeding concerns a case comprising multiple adjustments or similar issues each requiring a disposition of specific monetary amounts (for example, of income, profit, gains or expense) or where specified, the maximum rate of tax charged pursuant to the Convention, the proposed resolution may propose a separate disposition for each adjustment or similar issue.

(g) Each of the competent authorities of the Contracting States shall receive the proposed resolution and position paper submitted by the other competent authority, and shall be permitted to submit a reply submission to the arbitration panel. Each of the competent authorities of the Contracting States shall also receive the reply submission of the other competent authority.

(h) The presenter of the case shall be permitted to submit for consideration by the arbitration panel a paper setting forth its analysis and views of the case. Such submission shall not include any information not previously provided to the competent authorities during the mutual agreement procedure and shall be made available to the competent authorities of both

Contracting States.

(i) The arbitration panel shall deliver a determination in writing to the competent authorities of the Contracting States. The determination of the arbitration panel shall be limited to one of the proposed resolutions submitted by the competent authorities of the Contracting States for each adjustment or similar issue and any threshold questions, and shall not include a rationale or any other explanation of the determination. The determination of the arbitration panel shall have no precedential value with respect to the application of the Convention in any other case.

(j) Unless the competent authorities of both Contracting States agree to a longer time period, the presenter of the case shall have 45 days after receiving the determination of the arbitration panel to notify, in writing, the competent authority of the Contracting State to whom the case was presented, of his acceptance of the determination. If the presenter of the case fails to so advise the relevant competent authority, the determination shall be considered not to be accepted. In addition, in the event the case is pending in litigation or appeal, the determination of the arbitration panel shall be considered not to be accepted by the presenter of the case if any concerned person who is a party to the litigation or appeal does not advise, within the same time frame described above, the relevant court or administrative tribunal of its intention to withdraw from consideration all issues resolved in the arbitration proceeding. Where the determination of the arbitration panel is not accepted, the case will not be eligible for any further consideration by the competent authorities.

(k) The fees and expenses of the members of the arbitration panel, as well as any costs incurred in connection with the proceeding by the Contracting States, shall be borne equitably by the Contracting States.

15. With reference to paragraph 5 of Article 27 of the Convention:

(a) For the purposes of evaluating the final determination of a revenue claim:

(i) in the case of the United States, any administrative or judicial rights available to the taxpayer in connection with the revenue claim that arise after the collection of the revenue claim;

(ii) in the case of Japan, the right to take action pursuant to Article 36 of the Administrative Case Litigation Act (Law No. 139 of 1962) of Japan;

shall not be taken into account.

(b) A Contracting State may suspend assistance if it determines that the actions of the other Contracting State have resulted in an imbalance in the levels of assistance between the Contracting States contemplated in Article 27 of the Convention. In such case, the Contracting States shall enter into consultations with a view to restoring comparable levels of assistance consistent with paragraph 16 of Article 27 of the Convention."

ARTICLE XV

1. This Protocol shall be subject to ratification, and the instruments of ratification shall be exchanged as soon as possible. It shall enter into force on the date of the exchange of instruments of ratification.

2. This Protocol shall have effect:

(a) in respect of taxes withheld at source, for amounts paid or credited on or after the first day of the third month next following the date on which the Protocol enters into force;

(b) in respect of other taxes, for taxable years beginning on or after the first day of January next following the date on which the Protocol enters into force;

3. Notwithstanding the provisions of paragraph 2, the provisions of paragraphs 5, 6 and 7 of Article 25 of the Convention, as amended by Article XI of this Protocol, shall have effect with respect to:

(a) Cases that are under consideration by the competent authorities as of the date on which this Protocol enters into force. For such cases, the commencement date shall be the date on which this Protocol enters into force.

(b) Cases that come under consideration after the date on which this Protocol enters into force.

4. Notwithstanding the provisions of paragraph 2, the provisions of Article 26 of the Convention, as amended by Article XII of this Protocol, and Article 27 of the Convention, as amended by Article XIII of this Protocol, shall have effect from the date of entry into force of this Protocol.

5. Notwithstanding the entry into force of this Protocol, an individual who is entitled to the benefits of Article 20 of the Convention at the time of the entry into force of this Protocol shall continue to be entitled to such benefits until such time as the individual would have ceased to be entitled to such benefits if this Protocol had not entered into force.

6. This Protocol shall remain in effect as long as the Convention remains in force.

IN WITNESS WHEREOF the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Washington this 24th day of January, 2013, in the English and Japanese languages, each text being equally authentic.

| FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA: | FOR THE GOVERNMENT OF JAPAN: |
| --- | --- |