# Exhibit 74



I, Peter Wells, an attorney-at-law and notary public of the State of New York hereby certify that this document is a true and correct copy of the original of which I am personally familiar with.

Peter Wells
Attorney-at-law and Notary Public
Dated: July 22, 2014

PETER WELLS
Notary Public, State of New York
No. 02WE6172850
Qualified in New York County
Commission Expires Oct. 21, 2015

# ROADCRAFT TECHNOLOGIES LLC

# ROTH 401(K) PLAN

Established as of January 1, 2014

Copyright 2002-2014

All Rights Reserved.

ROADCRAFT TECHNOLOGIES LLC
ROTH 401(K) PLAN

## TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION ................................................................................. 1
   Section 1.01  Plan and Trust........................................................................ 1
   Section 1.02  Application of Plan and Trust................................................ 1

ARTICLE 2 DEFINITIONS.................................................................................... 2

ARTICLE 3 PARTICIPATION ............................................................................. 16
   Section 3.01  Elective Deferrals ............................................................... 16
   Section 3.02  Transfers ............................................................................. 16
   Section 3.03  Termination and Rehires ..................................................... 16
   Section 3.04  Limitations on Exclusions ................................................... 16
   Section 3.05  Procedures for Admission ................................................... 17
   Section 3.06  Waiver ................................................................................. 17
   Section 3.07  Special Participation ........................................................... 17

ARTICLE 4 CONTRIBUTIONS ........................................................................... 18
   Section 4.01  Elective Deferrals ............................................................... 18
   Section 4.02  Qualified Nonelective Contributions ................................... 19
   Section 4.03  Rollover Contributions ....................................................... 19
   Section 4.04  Transfers ............................................................................. 20
   Section 4.05  Military Service ................................................................... 20
   Section 4.06  Timing of Contributions ..................................................... 20
   Section 4.07  Multiple Employer Plan ...................................................... 21

ARTICLE 5 LIMITATIONS ON CONTRIBUTIONS............................................ 22
   Section 5.01  Limitations on Elective Deferrals........................................ 22
   Section 5.02  Nondiscrimination .............................................................. 23
   Section 5.03  Special Rules ....................................................................... 24
   Section 5.04  Correction of Discriminatory Elective Deferrals.................. 27
   Section 5.05  Maximum Amount of Annual Additions.............................. 29

ARTICLE 6 VESTING........................................................................................... 32
   Section 6.01  Participant Contributions .................................................... 32

ARTICLE 7 DISTRIBUTIONS ............................................................................. 33
   Section 7.01  Commencement of Distributions.......................................... 33
   Section 7.02  Timing and Form of Distributions........................................ 33
   Section 7.03  Cash-Out of Small Balances ............................................... 35
   Section 7.04  Beneficiary........................................................................... 36
   Section 7.05  Minimum Distribution Requirements................................... 37
   Section 7.06  Direct Rollovers................................................................... 43
   Section 7.07  Minor or Legally Incompetent Payee ................................... 45
   Section 7.08  Missing Payee ...................................................................... 45
   Section 7.09  Distributions on Termination of Plan .................................. 45

CONFIDENTIAL
WH_MDL_00025061

ARTICLE 8 INSERVICE DISTRIBUTIONS..................................................................... 47
    Section 8.01  Transfer Account ......................................................................... 47

ARTICLE 9 INVESTMENT AND VALUATION OF TRUST FUND ............................ 48
    Section 9.01  Investment of Assets ................................................................... 48
    Section 9.02  Pooled Accounts ......................................................................... 48
    Section 9.03  Individual Accounts .................................................................... 48
    Section 9.04  Qualifying Employer Investments ............................................... 48
    Section 9.05  Allocation of Earnings and Losses ............................................. 48
    Section 9.06  Voting Rights .............................................................................. 49

ARTICLE 10 TRUST FUND .......................................................................................... 50
    Section 10.01  Trust Fund................................................................................. 50
    Section 10.02  Duties of the Trustee................................................................ 51
    Section 10.03  General Investment Powers ...................................................... 53
    Section 10.04  Other Investment Powers.......................................................... 55
    Section 10.05  Instructions .............................................................................. 56
    Section 10.06  Investment of the Fund ............................................................ 57
    Section 10.07  Compensation and Indemnification .......................................... 58
    Section 10.08  Resignation and Removal ......................................................... 59

ARTICLE 11 SPECIAL TOP-HEAVY RULES ............................................................. 60
    Section 11.01  Top-Heavy Status ..................................................................... 60
    Section 11.02  Minimum Allocations .............................................................. 60
    Section 11.03  Minimum Vesting ..................................................................... 61

ARTICLE 12 PLAN ADMINISTRATION ...................................................................... 62
    Section 12.01  Plan Administrator .................................................................... 62
    Section 12.02  Investment Fiduciary ............................................................... 63
    Section 12.03  Compensation of Plan Administrator and Investment Fiduciary ...................... 64
    Section 12.04  Plan Expenses .......................................................................... 64
    Section 12.05  Allocation of Fiduciary Responsibility....................................... 64
    Section 12.06  Indemnification ........................................................................ 64
    Section 12.07  Claims Procedures .................................................................... 64
    Section 12.08  Written Communication ........................................................... 66
    Section 12.09  Advisory Letter ........................................................................ 66

ARTICLE 13 AMENDMENT, MERGER AND TERMINATION.................................... 67
    Section 13.01  Amendment .............................................................................. 67
    Section 13.02  Merger and Transfer ................................................................. 69
    Section 13.03  Termination .............................................................................. 69

ARTICLE 14 MISCELLANEOUS .................................................................................. 70
    Section 14.01  Nonalienation of Benefits ......................................................... 70
    Section 14.02  Rights of Alternate Payees ....................................................... 70
    Section 14.03  No Right to Employment .......................................................... 72
    Section 14.04  No Right to Trust Assets ........................................................... 72
    Section 14.05  Governing Law ......................................................................... 72
    Section 14.06  Severability of Provisions ........................................................ 72
    Section 14.07  Headings and Captions ............................................................. 72

CONFIDENTIAL         WH_MDL_00025062

Section 14.08  Gender and Number..................................................................................... 72

CONFIDENTIAL

WH_MDL_00025063

## PREAMBLE

WHEREAS, Roadcraft Technologies LLC, a New York Limited Liability Company (the "Plan Sponsor"), desires to promote in its employees the strongest interest in the successful operation of the business, loyalty to the Plan Sponsor, increased efficiency in their work, and the assurance that they will share in the prosperity of the business;

WHEREAS, to attain these ends, the Plan Sponsor wishes to enable certain of its employees to participate in the profits of the business and, accordingly, has formulated this Plan;

NOW, THEREFORE, the Plan Sponsor hereby establishes and adopts the Roadcraft Technologies LLC Roth 401(k) Plan pursuant to the following provisions:

CONFIDENTIAL

ARTICLE 1
INTRODUCTION

Section 1.01    PLAN AND TRUST

The Plan Sponsor hereby establishes this Plan, effective January 1, 2014. This Plan and its related Trust are intended to qualify as a tax-exempt profit-sharing plan and trust under Code sections 401(a) and 501(a), respectively, and the cash-or-deferred arrangement forming part of the Plan is intended to qualify under Code section 401(k).

Section 1.02    APPLICATION OF PLAN AND TRUST

Except as otherwise specifically provided herein, the provisions of this Plan shall apply to those individuals who are Eligible Employees of the Company on or after January 1, 2014.

CONFIDENTIAL                                    WH_MDL_00025065

ARTICLE 2
DEFINITIONS

"Account" means the balance of a Participant's interest in the Trust Fund as of the applicable date as adjusted pursuant to Article 9. "Account" or "Accounts" shall include, for any Participant, an Elective Deferral Account, Pre-tax Elective Deferral Account, Roth Elective Deferral Account, Rollover Contribution Account, Qualified Nonelective Contribution Account, Transfer Account and such other account(s) or subaccount(s) as the Plan Administrator, in its discretion, deems appropriate.

"Actual Deferral Ratio" means the ratio (expressed as a percentage) of Elective Deferrals made on behalf of a Participant for the Plan Year to the Participant's Section 414(s) Compensation for that year. An Elective Deferral shall be considered "for the Plan Year" only if the Elective Deferral is allocated to the Participant's Account under the Plan as of a date within that year. For purposes of this rule, an Elective Deferral is considered allocated as of a date within a year only if (i) the allocation is not contingent on the Participant's participation in the Plan or performance of services on any date subsequent to that date; and (ii) the Elective Deferral is actually paid to the trust no later than the end of the 12-month period immediately following the year to which the contribution relates; and (iii) the Elective Deferral relates to compensation that either: (x) would have been received by the Participant in the year but for the Participant's election to defer under the arrangement; or (y) to the extent provided in the Plan, is attributable to services performed by the Participant in the year and, but for the Participant's election to defer, would have been received by the Participant within 2-1/2 months after the close of the year. Qualified Nonelective Contributions and Qualified Matching Contributions shall be counted in the Actual Deferral Ratio only if they are treated as an Elective Deferral by the Plan Administrator in conformance with applicable Treasury Regulations. The Actual Deferral Ratio of a Participant who is eligible but does not make an Elective Deferral and, if applicable, who does not receive an allocation of Qualified Nonelective Contributions and Qualified Matching Contributions shall be zero. A Participant's Actual Deferral Ratio shall not include: (a) contributions treated as disproportionate within the meaning of Section 5.03(f); (b) a Nonhighly Compensated Employee's Excess Elective Deferrals, (c) Elective Deferrals treated as Catch-up Contributions for the Plan Year for which the contributions were made or for any other Plan Year; (d) additional Elective Deferrals made pursuant to Code section 414(u) by reason of a Participant's qualified military service for the Plan Year for which the contributions are made, or for any other Plan Year; or (e) to the extent necessary to demonstrate satisfaction of the requirement of Treas. Reg. 1.401(m)-2(a)(6)(ii), Elective Deferrals taken into account for the ACP test under §1.401(m)-2(a)(6).

"Alternate Payee" means the person entitled to receive payment of benefits under the Plan pursuant to a Qualified Domestic Relations Order.

"Annual Addition" means the sum of the following amounts credited to a Participant's Account for the Limitation Year:

CONFIDENTIAL

(a)     Elective Deferrals and Qualified Nonelective Contributions allocated to a Participant's Account, including Excess Elective Deferrals, unless such amounts are distributed no later than the first April 15 following the close of the Participant's taxable year;

(b)     forfeitures;

(c)     amounts allocated, after March 31, 1984, to an individual medical account, as defined in Code section 415(l)(2), which is part of a pension or annuity plan maintained by the Employer;

(d)     amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits, allocated to the separate account of a key employee, as defined in Code section 419A(d)(3), under a welfare benefit fund, as defined in Code section 419(e), maintained by the Employer; and

(e)     allocations under a simplified employee pension.

Notwithstanding the foregoing, an Annual Addition shall not include a restorative payment within the meaning of IRS Revenue Ruling 2002-45 and any superseding guidance.

"Annuity Starting Date" means the first day of the first period for which an amount is paid as an annuity or any other form.

"Average Deferral Percentage" means the average (expressed as a percentage) of the Actual Deferral Ratios of the Participants in a specified group.

"Beneficiary" means the person(s) entitled to receive benefits, under Section 7.04 of the Plan, upon the Participant's death.

"Board" means the managing board as designated under the Plan Sponsor's organizing documents.

"Catch-up Contribution" means the contribution described in Section 5.01(d).

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Company" means the Plan Sponsor and any other entity that has adopted the Plan with the approval of the Plan Sponsor. Notwithstanding the foregoing, if the Plan Sponsor is a Union, Company shall mean any employer who is a party to collective bargaining agreement with the Plan Sponsor which provides for participation in the Plan by employees of the employer.

"Compensation" means only those items specified in Treas. Reg. section 1.415-2(d)(2)(i) and excluding all of those items listed in Treas. Reg. section 1.415-2(d)(3).

CONFIDENTIAL                                      **WH_MDL_00025067**

For purposes of Elective Deferrals and, if applicable, Voluntary Contributions and Nonelective Contributions, Compensation shall also include any amount which is contributed by the Company pursuant to a salary reduction agreement and which is not includable in the gross income of the Participant under Code sections 125, 402(e)(3), 402(h), 403(b), 132(f) or 457.

For purposes of Nonelective Contributions, Compensation shall include only that compensation which is actually paid to the Participant by the Company during that part of the Plan Year the Participant is eligible to participate in the Plan. For all other purposes, Compensation shall include compensation which is paid to the Participant by the Company during the Plan Year or such other period used to determine Compensation for allocation purposes.

Compensation shall include other compensation paid by 2-1/2 months after a Participant's severance from employment with the Company if: (a) the payment is regular compensation for services during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (e.g., overtime or shift differential), commissions, bonuses, or other similar payments; and (b) the payment would have been paid to the Participant prior to a severance from employment if the Participant had continued in employment with the Company. The exclusions from compensation for payments after severance from employment do not apply to payments to a Participant who does not currently perform services for the Company by reason of qualified military service (as that term is used in Code section 414(u)(1)) to the extent those payments do not exceed the amounts the Participant would have received if the individual had continued to perform services for the Company rather than entering qualified military service. To the extent provided in the Plan, Compensation shall include compensation paid to a Participant who is permanently and totally disabled.

Compensation must be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code section 3401(a)(2)). For any Self-Employed Individual covered under the Plan, Compensation will mean Earned Income.

For any Plan Year, the annual compensation of each Participant taken into account in determining allocations for any Plan Year beginning after December 31, 2001, shall not exceed $200,000, as adjusted for cost-of-living increases in accordance with Code section 401(a)(17)(B). Annual compensation means Compensation during the Plan Year or such other consecutive 12-month period over which Compensation is otherwise determined under the Plan (the determination period). The cost-of-living adjustment in effect for a calendar year applies to annual compensation for the determination period that begins with or within such calendar year.

If a determination period consists of fewer than 12 months, the annual Compensation limit is an amount equal to the otherwise applicable annual Compensation limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is 12.

CONFIDENTIAL                                                                    WH_MDL_00025068

"Determination Date" means the last day of the preceding Plan Year.  Notwithstanding the foregoing, the Determination Date for the first Plan Year shall be the last day of such year.

"Disabled" or "Disability" means a finding by the Plan Administrator that the Participant is mentally or physically disabled under a written non-discriminatory policy. The determination of Disability shall be made by the Plan Administrator.

"Earned Income" means the net earnings from self-employment in the trade or business with respect to which the Plan is established, for which personal services of the individual are a material income-producing factor.  Net earnings will be determined without regard to items not included in gross income and the deductions allocable to such items.  Net earnings are reduced by contributions by the Employer to a qualified plan to the extent deductible under Code section 404.  Net earnings shall be determined with regard to the deduction allowed to the taxpayer by Code section 164(f) for taxable years beginning after December 31, 1989.

"Effective Date" means January 1, 2014; provided, however, that when a provision of the Plan states an effective date other than January 1, 2014, such stated specific effective date shall apply as to that provision.

"Elective Deferral" means an Employee contribution made to the Plan as a Pre-tax Elective Deferral or a Roth Elective Deferral pursuant to Article 4 of the Plan.

"Elective Deferral Account" means so much of a Participant's Account as consists of a Participant's Elective Deferrals (and corresponding earnings) made to the Plan. Except as expressly provided elsewhere in the Plan, the Elective Deferral Account shall also include Catch-up Contributions described in Section 5.01 of the Plan.

"Eligibility Computation Period" means a 12 consecutive month period beginning with an Employee's Employment Commencement Date; provided however, his succeeding Eligibility Computation Period for such purpose will switch to the Plan Year, beginning with the Plan Year that includes the first anniversary of his Employment Commencement Date.  An Employee who is credited with a Year of Eligibility Service in both the initial Eligibility Computation Period and the first Plan Year which commences prior to the first anniversary of the Employee's initial Eligibility Computation Period will be credited with two Years of Eligibility Service.

"Eligible Employee" means any Employee employed by the Company subject to the following exclusions:

For purposes of Elective Deferrals and, if applicable, Voluntary Contributions, the term "Eligible Employee" shall exclude any Employee who is included in a unit of Employees covered by a collective bargaining agreement, if retirement benefits were the subject of good faith bargaining, and if the collective bargaining agreement does not provide for participation in this Plan.

For purposes of Elective Deferrals and, if applicable, Voluntary Contributions, the term "Eligible Employee" shall not include any Leased Employees.

CONFIDENTIAL                                                                                    WH_MDL_00025069

For purposes of Elective Deferrals and, if applicable, Voluntary Contributions, the term "Eligible Employee" shall not include any Employee who is a non-resident alien who received no earned income (within the meaning of Code section 911(d)(2)) which constitutes income from services performed within the United States (within the meaning of Code section 861(a)(3)).

If an individual is subsequently reclassified as, or determined to be, an Employee by a court, the Internal Revenue Service or any other governmental agency or authority, or if the Company is required to reclassify such individual as an Employee as a result of such reclassification or determination (including any reclassification by the Company in settlement of any claim or action relating to such individual's employment status), such individual shall not become an Eligible Employee by reason of such reclassification or determination.

In addition, an individual who becomes employed by the Employer in a transaction between the Employer and another entity that is a stock or asset acquisition, merger, or other similar transaction involving a change in the employer of the employees of the trade or business shall not become eligible to participate in the Plan until such time as the Plan Sponsor specifically authorizes such participation.

"Employee" means any individual who is employed by the Employer, including a Self-Employed Individual.  The term "Employee" includes any Leased Employee of the Employer. No Leased Employee may become a Participant hereunder unless he becomes an Eligible Employee.  The term "Employee" shall not include a person who is classified by the Employer as an independent contractor or a person (other than a Self-Employed Individual) who is not treated as an employee for purposes of withholding federal employment taxes.

"Employer" means the Company or any other employer required to be aggregated with the Company under Code sections 414(b), (c), (m) or (o); provided, however, that "Employer" shall not include any entity or unincorporated trade or business prior to the date on which such entity, trade or business satisfies the affiliation or control tests described above.  In identifying "Employer" for purposes of Section 5.05, the definition in Code sections 414(b) and (c) shall be modified as provided in Code section 415(h).

"Employment Commencement Date" means the first date on which the Eligible Employee performs an Hour of Service.

"ERISA" means the Employee Retirement Income Security Act of 1974, all amendments thereto and all federal regulations promulgated pursuant thereto.

"Excess Elective Deferral" means Elective Deferrals made in excess of the limit described in Section 5.01.

"Highly Compensated Employee" means, effective for Plan Years beginning after December 31, 1996, any Employee who during the Plan Year performs services for the Employer and who:

(a)    was a More Than 5% Owner at any time during the Plan Year or the preceding Plan Year; or

(b)    during the calendar year beginning with or within the preceding Plan Year received Testing Compensation in excess of the Code section 414(q)(1) amount ($80,000 as adjusted) and was a member of the top paid group of Employees within the meaning of Code section 414(q)(3).

The determination of who is a Highly Compensated Employee will be made in accordance with Code section 414(q) and the regulations thereunder to the extent they are not inconsistent with the method established above.

The term Highly Compensated Employee also includes a former Employee who was a Highly Compensated Employee when he separated from service or at any time after attaining age 55.

"Hour of Service" means:

(a)    Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer.  These hours will be credited to the Employee for the computation period in which the duties are performed.

(b)    Each hour for which an Employee is paid, or entitled to payment, by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence.  No more than 501 Hours of Service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period).  Hours under this paragraph will be calculated and credited pursuant to DOL Reg. section 2530.200b-2 which is incorporated herein by this reference.

(c)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer.  The same Hours of Service will not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c).  These hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

Solely for purposes of determining whether a One-Year Break in Service has occurred, an individual who is absent from work for maternity or paternity reasons shall receive credit for the Hours of Service which would otherwise have been credited to such individual but for such absence, or in any case in which such hours cannot be determined, 8 Hours of Service per day of such absence. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (1) by reason of the pregnancy of the individual, (2) by reason of a birth of a child of the individual, (3) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or (4) for purposes of caring for

CONFIDENTIAL                                                                     WH_MDL_00025071

such child for a period beginning immediately following such birth or placement. The Hours of Service credited under this paragraph shall be credited (1) in the computation period in which the absence begins if the crediting is necessary to prevent a break in service in that period, or (2) in all other cases, in the following computation period.

Notwithstanding the foregoing, for determining service under the elapsed time method, an Hour of Service means each hour for which an Employee is paid or entitled to payment for the performance of duties for the Employer.

If the Employer is a member of an affiliated service group (under Code section 414(m)), a controlled group of corporations (under Code section 414(b)), a group of trades or businesses under common control (under Code section 414(c)) or any other entity required to be aggregated with the Employer pursuant to Code section 414(o), service will be credited for any employment with such groups during the time the Employer is a member of the applicable group. Service will also be credited for any individual considered an Employee for purposes of this Plan under Code sections 414(n) or 414(o).

If the Employer maintains the plan of a predecessor employer, service with such employer will be treated as service for the Employer.

Service with respect to qualified military service shall be credited in accordance with Code section 414(u) and service shall also be determined to the extent required by the Family and Medical Leave Act of 1993.

"Investment Fiduciary" means the persons designated pursuant to Section 12.02.

"Investment Funds" means the funds in which the Trust Fund is invested.

"Investment Manager" means an investment manager as described in section 3(38) of ERISA.

"Key Employee" means for Plan Years beginning after December 31, 2001, any employee or former employee (including any deceased employee) who at any time during the Plan Year that includes the Determination Date is an officer of the Employer having an annual Testing Compensation greater than $130,000 (as adjusted under Code section 416(i)(1) for Plan Years beginning after December 31, 2002), a More Than 5% Owner of the Employer, or a 1-percent owner of the Employer having Testing Compensation of more than $150,000. In determining whether a plan is top-heavy for Plan Years beginning before January 1, 2002, Key Employee means any employee or former employee (including any deceased employee) who at any time during the 5-year period ending on the Determination Date, is an officer of the Employer having Testing Compensation that exceeds 50 percent of the dollar limitation under Code section 415(b)(1)(A), an owner (or considered an owner under Code section 318) of one of the ten largest interests in the Employer if such individual's Testing Compensation exceeds 100 percent of the dollar limitation under Code section 415(c)(1)(A), a More Than 5% Owner of the Employer, or a 1-percent owner of the Employer who has Testing Compensation of more than $150,000. The determination of who is a Key Employee will be made in accordance with Code

CONFIDENTIAL                                                                  WH_MDL_00025072

section 416(i)(1) and the applicable regulations and other guidance of general applicability issued thereunder.

"Leased Employee" means any person (other than an employee of the Employer) who pursuant to an agreement between the Employer and any other person ("leasing organization") has performed services for the Employer (or for the Employer and related persons determined in accordance with Code section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the Employer. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the Employer shall be treated as provided by the Employer. A person shall not be considered a Leased Employee if: (i) such person is covered by a money purchase pension plan providing: (1) a nonintegrated employer contribution rate of at least 10 percent of compensation, as defined in Code section 415(c)(3), but including amounts contributed pursuant to a salary reduction agreement which are excludable from the employee's gross income under Code sections 125, 402(e)(3), 402(h), 403(b), 132(f) or 457, (2) immediate participation, and (3) full and immediate vesting; and (ii) Leased Employees do not constitute more than 20 percent of the Employer's nonhighly compensated work force.

"Limitation Year" means the Plan Year. All qualified plans maintained by the Employer must use the same Limitation Year. If the Limitation Year is amended to a different 12-consecutive month period, the new Limitation Year must begin on a date within the Limitation Year in which the amendment is made.

"More Than 5% Owner" means any person who owns (either directly or by attribution, under Code section 318) more than 5% of the outstanding stock of the Employer or stock possessing more than 5% of the total combined voting power of all stock of the Employer or, in the case of an unincorporated business, any person who owns more than 5% of the capital or profits interest in the Employer. For purposes of Section 7.05, a Participant is treated as a More Than 5% Owner if such participant is a More Than 5% Owner at any time during the Plan Year ending with or within the calendar year in which such owner attains age 70-1/2 and shall continue to be considered a More Than 5% Owner (and distributions must continue under Section 7.05) even if the Participant ceases to be a 5-percent owner in a subsequent year.

"Non-Key Employee" means any Employee or former Employee who is not a Key Employee.

"Nonelective Contribution" means a Qualified Nonelective Contribution and a minimum allocation made pursuant to Article 11.

"Nonhighly Compensated Employee" means an Employee who is not a Highly Compensated Employee.

"Normal Retirement Age" means the later of: (i) attainment of age 65, and (ii) the fifth anniversary of Plan participation.

CONFIDENTIAL                                    WH_MDL_00025073

"One-Year Break in Service" means, for purposes of determining eligibility service, an Eligibility Computation Period or, for purposes of determining a Year of Vesting Service, a Vesting Computation Period during which an Employee is credited with 500 or fewer Hours of Service.

"Participant" means an Eligible Employee who participates in the Plan in accordance with Article 3.

"Permissive Aggregation Group" means the Required Aggregation Group of plans, plus any other plan or plans of the Employer which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code sections 401(a)(4) and 410.

"Plan" means the Roadcraft Technologies LLC Roth 401(k) Plan, as set forth in this instrument and any amendments or supplements thereto.

"Plan Administrator" means the person(s) designated pursuant to Section 12.01 of the Plan.

"Plan Sponsor" means Roadcraft Technologies LLC and any successor thereto.

"Plan Year" means the 12-consecutive month period ending on each December 31.

"Pre-tax Elective Deferral" means Elective Deferrals that are not includible in the Participant's gross income at the time deferred.

"Pre-tax Elective Deferral Account" means so much of a Participant's Account as consists of a Participant's Pre-Tax Elective Deferrals (and corresponding earnings) made to the Plan.

"Present Value" means a benefit in a defined benefit plan of equivalent value.

"Qualified Domestic Relations Order" means any judgment, decree, or order (including approval of a property settlement agreement) that constitutes a "qualified domestic relations order" within the meaning of Code section 414(p).

"Qualified Nonelective Contribution" means a nonelective contribution made by the Company pursuant to Article 4.

"Qualified Nonelective Contribution Account" means so much of a Participant's Account as consists of Qualified Nonelective Contributions (and corresponding earnings) made to the Plan.

"Required Aggregation Group" means (a) each qualified plan of the Employer in which at least one Key Employee participates or participated at any time during the Plan Year containing the Determination Date or any of the four preceding Plan Years (regardless of whether the Plan

CONFIDENTIAL                                    WH_MDL_00025074

has terminated), and (b) any other qualified plan of the Employer which enables a plan described in (a) to meet the requirements of Code sections 401(a)(4) or 410.

"Required Beginning Date" means April 1 of the calendar year following the later of the calendar year in which the Participant attains age 70-1/2 or the calendar year in which the Participant retires, except that benefit distributions to a More Than 5% Owner must commence by April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2.

"Rollover Contribution" means an Employee contribution made to the Plan as a rollover from another eligible retirement plan or individual retirement account pursuant to Article 4 of the Plan.

"Rollover Contribution Account" means so much of a Participant's Account as consists of a Participant's Rollover Contributions (and corresponding earnings) made to the Plan.

"Roth Elective Deferral" means, effective January 1, 2014, an Elective Deferral that is (a) designated irrevocably by the Participant at the time of the cash or deferred election as a Roth Elective Deferral that is being made in lieu of all or a portion of the Pre-tax Elective Deferrals the Participant is otherwise eligible to make under the Plan; and (b) treated by the Company as includible in the Participant's income at the time the Participant would have received that amount in cash if the Participant had not made a cash or deferred election. Except as otherwise provided, Roth Elective Deferrals shall be subject to the same conditions and limitations as apply to Elective Deferrals.

"Roth Elective Deferral Account" means so much of a Participant's Account as consists of a Participant's Roth Elective Deferrals (and corresponding earnings) made to the Plan. The Plan will maintain a record of the amount of Roth Elective Deferrals in each Participant's Roth Elective Deferral Account.

"Section 414(s) Compensation" means compensation as defined in Code section 414(s) and Treas. Reg. section 1.414(s)-1. The period used to determine an Employee's compensation for a Plan Year must be either the Plan Year or the calendar year ending within the Plan Year. Whichever period is selected by the Plan Administrator must be applied uniformly to determine the compensation of every eligible Employee under the Plan for that Plan Year. The Plan Administrator may, however, limit the period taken into account under either method to that portion of the Plan Year or calendar year in which the Employee was an eligible Employee, provided that this limit is applied uniformly to all eligible Employees under the Plan for the Plan Year. In the case of an Highly Compensated Employee whose Actual Deferral Ratio is determined under Treas. Reg. section 1.401(k)-2(a)(3)(ii), period of participation includes periods under another plan for which elective contributions are aggregated under Treas. Reg. section 1.401(k)-2(a)(3)(ii). Section 414(s) Compensation shall be limited by any dollar limits described in Code section 401(a)(17) applicable under the definition of Compensation. The Plan Administrator may include Post Severance Compensation and/or determine Section 414(s) compensation using Post Year End Compensation.

CONFIDENTIAL                                                          WH_MDL_00025075

"Self-Employed Individual" means any individual who has Earned Income for the taxable year from the trade or business for which the Plan is established, including an individual who would have Earned Income but for the fact that the trade or business had no net profits for the taxable year. An individual shall not be a Self-Employed Individual unless he or she is also an owner of the Company.

"Termination" and "Termination of Employment" means any absence from service that ends the employment of the Employee with the Employer.

"Testing Compensation" means only those items specified in Treas. Reg. section 1.415-2(d)(2)(i) and excluding all of those items listed in Treas. Reg. section 1.415-2(d)(3). For any Self-Employed Individual covered under the Plan, Compensation will mean Earned Income.

Testing Compensation shall include any amount which is contributed by the Company pursuant to a salary reduction agreement and which is not includible in the gross income of the Participant under Code sections 125, 402(e)(3), 402(h), 403(b), 132(f) or 457.

Testing Compensation shall include other compensation paid by 2-1/2 months after a Participant's severance from employment with the Company if: (a) the payment is regular compensation for services during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (e.g., overtime or shift differential), commissions, bonuses, or other similar payments; and (b) the payment would have been paid to the Participant prior to a severance from employment if the Participant had continued in employment with the Company. The exclusions from compensation for payments after severance from employment do not apply to payments to a Participant who does not currently perform services for the Company by reason of qualified military service (as that term is used in Code section 414(u)(1)) to the extent those payments do not exceed the amounts the Participant would have received if the individual had continued to perform services for the Company rather than entering qualified military service. To the extent provided in the Plan, Testing Compensation shall include compensation paid to a Participant who is permanently and totally disabled.

Notwithstanding any other provision hereof to the contrary, the annual Testing Compensation of each Employee taken into account under the Plan for any Plan Year shall not exceed the amount in effect for such year under Code section 401(a)(17). If a Plan Year consists of fewer than 12 months, the applicable limitation under Code section 401(a)(17) will be multiplied by a fraction, the numerator of which is the number of months in such year, and the denominator of which is 12.

"Top-Heavy Ratio" means:

(a)    If the Employer maintains one or more defined contribution plans (including any simplified employee pension plan) and the Employer has not maintained any defined benefit plan which during the five-year period ending on the Determination Date(s) has or has had accrued benefits, the Top-Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of the account balances of all Key Employees as of the Determination Date(s), including any part of any account balance

CONFIDENTIAL

distributed in the one-year period ending on the Determination Date(s), (five-year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or disability and in determining whether the Plan is Top-Heavy for Plan Years beginning before January 1, 2002), and the denominator of which is the sum of all account balances (including any part of any account balance distributed in the one-year period ending on the Determination Date(s)) (five-year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or disability and in determining whether the Plan is Top-Heavy for Plan Years beginning before January 1, 2002), both computed in accordance with Code section 416 and the regulations thereunder. Both the numerator and denominator of the Top-Heavy Ratio are increased to reflect any contribution not actually made as of the Determination Date, but which is required to be taken into account on that date under Code section 416 and the regulations thereunder.

(b)    If the Employer maintains one or more defined contribution plans (including any simplified employee pension plan) and the Employer maintains or has maintained one or more defined benefit plans which during the five-year period ending on the Determination Date(s) has or has had any accrued benefits, the Top-Heavy Ratio for any Required or Permissive Aggregation group, as appropriate, is a fraction, the numerator of which is the sum of account balances under the aggregated defined contribution plan or plans for all Key Employees, determined in accordance with (a) above, and the Present Value of accrued benefits under the aggregated defined benefit plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the account balances under the aggregated defined contribution plan or plans for all Participants, determined in accordance with (a) above, and the Present Value of accrued benefits under the defined benefit plan or plans for all Participants as of the Determination Date(s), all determined in accordance with Code section 416 and the regulations thereunder. The accrued benefits under a defined benefit plan in both the numerator and denominator of the Top-Heavy Ratio are increased for any distribution of an accrued benefit made in the one-year period ending on the Determination Date (five-year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or disability and in determining whether the Plan is Top-Heavy for Plan Years beginning before January 1, 2002).

(c)    For purposes of (a) and (b) above the value of account balances and the Present Value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the 12-month period ending on the Determination Date, except as provided in Code section 416 and the regulations thereunder for the first and second Plan Years of a defined benefit plan. The account balances and accrued benefits of a Participant (1) who is a Non Key Employee but who was a Key Employee in a prior year, or (2) who has not been credited with at least one hour of service with any Employer maintaining the Plan at any time during the one-year period (five-year period in determining whether the Plan is Top-Heavy for Plan Years beginning before January 1, 2002) ending on the Determination Date will be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Code section 416 and the regulations thereunder. Deductible employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio. When aggregating plans the value of account balances and

M590736a Copyright 2002-2014

13

WH_MDL_00025077

accrued benefits will be calculated with reference to the Determination Dates that fall within the same calendar year.

The accrued benefit of a Non Key Employee shall be determined under: (x) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer; or (y) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Code section 411(b)(1)(C).

"Transfer Account" means so much of a Participant's Account as consists of amounts transferred from another eligible retirement plan (and corresponding earnings) pursuant to Article 4 in a transaction that was not an eligible rollover distribution within the meaning of Code section 402.

"Trust Fund" means all of the assets of the Plan held by the Trustee pursuant to Article 10 or held by an insurance company pursuant to section 403 of ERISA.

"Trustee" means Ronald Altbach.

"Valuation Date" means the last day of the Plan Year. Notwithstanding anything in the Plan to the contrary and in the event that a Participant is to receive a distribution from the Plan, the Plan Administrator may in its sole discretion declare a special Valuation Date for that portion of the Plan that is not daily-valued in extraordinary situations to protect the interests of Participants in the Plan or the Participant receiving the distribution. Such extraordinary circumstances include a significant change in economic conditions or market value of the Trust Fund.

"Vesting Computation Period" means, for purposes of determining Years of Vesting Service, the Plan Year.

"Voluntary Contribution" means an Employee contribution made to the Plan on an after-tax basis. Voluntary Contributions are not permitted in this Plan.

"Year of Eligibility Service" except as may be provided below, Year of Eligibility Service means an Eligibility Computation Period during which an Eligible Employee completes at least 1,000 Hours of Service.

All eligibility service with the Employer is taken into account.

"Year of Vesting Service" means a Vesting Computation Period during which the Employee completes at least 1,000 Hours of Service.

All Years of Vesting Service with the Employer are taken into account except that for an Employee who has five consecutive One-Year Breaks in Service and except to the extent provided in Article 6, all periods of service after such breaks in service shall be disregarded for the purpose of vesting the Employee's employer-derived Account balance that accrued before such breaks in service, but except as otherwise expressly provided, both the service before and

CONFIDENTIAL                                                                WH_MDL_00025078

after such breaks in service shall count for purposes of vesting the Employee's employer-derived Account balance that accrues after such breaks in service.

Notwithstanding the foregoing, the following service shall not be taken into account in determining Years of Vesting Service:

One-Year Holdout.  If an Employee has a One-Year Break in Service, Years of Vesting Service before such period will not be taken into account until the Employee has completed a Year of Vesting Service after returning to employment with the Employer.

Rule of Parity.  If an Employee does not have any nonforfeitable right to the Account balance derived from Employer Contributions, Years of Vesting Service before a period of five (5) consecutive One-Year Breaks in Service will not be taken into account in computing vesting service. Elective Deferrals under a qualified CODA are taken into account for purposes of determining whether a Participant is a nonvested Participant for purposes of Code section 411(a)(6)(D)(iii).

Service Before Age 18. Years of Vesting Service before age 18 will not be taken into account in computing vesting service.

CONFIDENTIAL                                                      WH_MDL_00025079

ARTICLE 3
PARTICIPATION

Section 3.01   ELECTIVE DEFERRALS

Each Eligible Employee on or after the Effective Date shall become a Participant eligible to make Elective Deferrals on the date he attains age 21; provided, that he is an Eligible Employee on that date.

Section 3.02   TRANSFERS

If a change in job classification or a transfer results in an individual no longer qualifying as an Eligible Employee, such Employee shall cease to be a Participant for purposes of Article 4 (or shall not become eligible to become a Participant) as of the effective date of such change of job classification or transfer.  Should such Employee again qualify as an Eligible Employee or if an Employee who was not previously an Eligible Employee becomes an Eligible Employee, he shall become a Participant with respect to the contributions for which the eligibility requirements have been satisfied as of the later of the effective date of such subsequent change of status or the date the Employee meets the eligibility requirements of this Article 3.

Section 3.03   TERMINATION AND REHIRES

If an Employee has a Termination of Employment, such Employee shall cease to be a Participant for purposes of Article 4 (or shall not become eligible to become a Participant) as of his Termination of Employment.  An individual who has satisfied the applicable eligibility requirements set forth in Article 3 as of his Termination date, and who is subsequently reemployed by the Company as an Eligible Employee, shall resume or become a Participant immediately upon his rehire date with respect to the contributions for which the eligibility requirements of this Article 3 have been satisfied.  An individual who has not so qualified for participation on his Termination date, and who is subsequently reemployed by the Company as an Eligible Employee, shall be eligible to participate as of the later of the effective date of such reemployment or the date the individual meets the eligibility requirements of this Article 3.  The determination of whether a rehired Eligible Employee satisfies the requirements of Article 3 shall be made after the application of any applicable break in service rules.

Section 3.04   LIMITATIONS ON EXCLUSIONS

(a)     Exclusions. Any employee exclusion in the Plan Document shall not be valid to the extent that such exclusion requires that the maximum number of Nonhighly Compensated Employees with the highest amount of compensation and/or service shall be excluded from participation so that the Plan still meets the coverage requirements of Code section 410(b).

(b)     Coverage. The Plan must provide that an Eligible Employee who has attained age 21 and who has completed one Year of Eligibility Service (two Years of Eligibility Service may be used for contributions other than Elective deferrals if the Plan provides a nonforfeitable right

CONFIDENTIAL                                                                                    WH_MDL_00025080

to 100% of the Participant's applicable Account balance after not more than 2 Years of Eligibility Service) shall commence participation in the Plan no later than the earlier of: (i) the first day of the first Plan Year beginning after the date on which such Eligible Employee satisfied such requirements; or (ii) the date that is 6 months after the date on which he satisfied such requirements.

(c)    A Participant shall be treated as benefiting under the Plan for any Plan Year during which the Participant received or is deemed to receive an allocation in accordance with Treas. Reg. section 1.410(b)-3(a). Notwithstanding any provision of the Plan to the contrary, no Participant shall earn an allocation hereunder except as provided under the terms of the Plan as in effect on the last day of the Plan Year after giving effect to all retroactive amendments that may be permitted under applicable Internal Revenue Service procedures and other applicable law; including, without limitation, any amendment permitted under Treas. Reg. 1.401(a)(4)-11.

Section 3.05    PROCEDURES FOR ADMISSION

The Plan Administrator shall prescribe such forms and may require such data from Participants as are reasonably required to enroll a Participant in the Plan or to effectuate any Participant elections made pursuant to this Article 3.

Section 3.06    WAIVER

An Employee may irrevocably elect not to participate in the Plan.

Section 3.07    SPECIAL PARTICIPATION

Notwithstanding the foregoing, all Eligible Employees employed on June 30, 2014 shall become eligible to participate in the Plan as of July 1, 2014.

CONFIDENTIAL                                                                    WH_MDL_00025081

ARTICLE 4
CONTRIBUTIONS

Section 4.01   ELECTIVE DEFERRALS

(a)    Elections.  Each Participant may execute elections pursuant to this Section 4.01 in the form and manner prescribed by the Plan Administrator.  The Plan Administrator shall provide each Participant with the forms necessary to elect the amount of Elective Deferrals.  An Elective Deferral election shall provide that a Participant may elect to reduce his Compensation by an amount up to one hundred percent (100%) of his Compensation.

(b)    Modifications.  As of the date a Participant first meets the eligibility requirements of Section 3.01, he may elect to contribute to the Plan.  Subsequent to that date, a Participant may elect to start, increase, reduce or totally suspend his elections pursuant to this Section 4.01, effective as of the dates established pursuant to Plan Administrator procedures.  Notwithstanding the foregoing, a Participant may totally suspend his elections at any time.

(c)    Procedures.  A Participant shall make an election described in Subsection (b) in such form and manner as may be prescribed by the Plan Administrator at such time in advance as the Plan Administrator may require.  The Plan Administrator may, on a nondiscriminatory basis, permit a Participant to make a separate election as to any bonuses or other special pay.  A Participant's election regarding Elective Deferrals may be made only with respect to an amount which the Participant could otherwise elect to receive in cash and which is not currently available to the Participant.

(d)    Reduction in Elections.  The Plan Administrator may reduce or totally suspend a Participant's election if the Plan Administrator determines that such election may cause the Plan to fail to satisfy any of the requirements of Article 5.

(e)    Catch-up Contributions. Effective January 1, 2002, all Participants who are eligible to make Elective Deferrals under this Plan shall be eligible to make Catch-up Contributions pursuant to Section 5.01(d).

(f)    Roth Elective Deferrals. Participants shall be eligible to irrevocably designate some or all of their Elective Deferrals as either Pre-tax Elective Deferrals or Roth Elective Deferrals. All elections shall be subject to the same election procedures, limits on modifications and other terms and conditions on elections as specified in the Plan.

(g)    Automatic Enrollment. Automatic enrollment is not permitted.

(h)    Contribution and Allocation of Elective Deferrals.  The Company shall contribute to the Plan with respect to each pay period an amount equal to the Elective Deferrals of Participants for such pay period, as determined pursuant to the Elective Deferral elections in force pursuant to this Section.  There shall be directly and promptly allocated to the Elective

CONFIDENTIAL                                                        WH_MDL_00025082

Deferral Account of each Participant the Elective Deferrals contributed by the Employer to the Plan by reason of any Elective Deferral election in force with respect to that Participant.

(i)     Participant. For purposes of this Section, "Participant" shall mean an Eligible Employee who has met the eligibility requirements of Article 3 with respect to Elective Deferrals.

Section 4.02    QUALIFIED NONELECTIVE CONTRIBUTIONS

(a)     Amount of Qualified Nonelective Contributions. In addition to the contributions described above, the Company in its discretion may make additional Qualified Nonelective Contributions for the benefit of all Participants eligible to make Elective Deferrals who are employed by the Company during the Plan Year.

(b)     Allocation of Qualified Nonelective Contributions. The additional Qualified Nonelective Contributions shall be allocated to the Qualified Nonelective Contribution Account of each Participant eligible to share in such allocations in the ratio that such Participant's Compensation bears to the Compensation of all eligible Participants.

(c)     In addition, the Company may, in its discretion, make Qualified Nonelective Contributions for a Plan Year that shall be allocated in the manner prescribed by the Company to correct any operational or demographic failure pursuant to any correction program or policy established by the Internal Revenue Service or the Department of Labor.

(d)     Qualified Nonelective Contributions: (i) shall be allocated to the Participant's Account as of a date within that year within the meaning of Treas. Reg. section 1.401(k)-2(a)(4)(i)(A); (ii) shall be nonforfeitable when made, and (iii) shall be distributed only under the rules applicable for elective contributions in accordance with Treas. Reg. section 1.401(k)-1(d) (attainment of age 59-1/2, severance from employment, death, or disability).

Section 4.03    ROLLOVER CONTRIBUTIONS

(a)     In General. The Plan may accept Rollover Contributions made in cash (or other form acceptable to the Trustee) on behalf of any Eligible Employee who has met the applicable age and service requirements of Article 3; but only if the deposit qualifies as a tax-free rollover as defined in Code section 402(c) from: (i) a plan qualified under Code section 401(a); or (ii) a "Conduit Individual Retirement Account", as determined in accordance with procedures established by the Plan Administrator. If it is later determined that the amount received does not qualify as a tax-free rollover, the amount shall be refunded to the Eligible Employee. Rollover Contributions shall be allocated to the Eligible Employee's Rollover Contribution Account.

(b)     Additional Rollovers. In addition to the Rollover Contributions specified in Subsection (a), the Plan may accept the following Rollover Contributions made on or after January 1, 2014:

M590736a Copyright 2002-2014

CONFIDENTIAL                                                            WH_MDL_00025083

(1)    A direct rollover of an eligible rollover distribution of after-tax employee contributions from a qualified plan described in Code section 401(a) or 403(a).

(2)    Any rollover of an eligible rollover distribution from an annuity contract described in Code section 403(b), excluding after-tax employee contributions.

(3)    Any rollover of an eligible rollover distribution from an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state.

(4)    Any rollover contribution of the portion of a distribution from an individual retirement account or annuity described in Code sections 408(a) or 408(b) that is eligible to be rolled over and would otherwise be includible in gross income.

(5)    The Plan may accept a rollover contribution to a Roth Elective Deferral Account only if it is a direct rollover from another Roth elective deferral account under an applicable retirement plan described in Code section 402A(e)(1) and only to the extent the rollover is permitted under the rules of Code section 402(c).

Section 4.04    TRANSFERS

The Trustee may accept a direct transfer of assets, made without the consent of the affected Employees, from the trustee of any other qualified plan described in Code section 401(a) to the extent permitted by the Code and the regulations and rulings thereunder.  In the event assets are transferred to the Plan pursuant to the foregoing sentence, the transferred assets shall be accounted for separately in the Transfer Account of the affected Employees to the extent necessary to preserve a more favorable vesting schedule or any other legally-protected benefits available to such Employees under the transferor plan.  The Plan Administrator shall establish a vesting schedule for the Transfer Account; provided that such schedule is not less favorable than the vesting schedule under the transferor plan.

Section 4.05    MILITARY SERVICE

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Code section 414(u).

Section 4.06    TIMING OF CONTRIBUTIONS

Amounts contributed to the Plan with funds provided by Participants will be remitted to the Trustee as soon as practicable, but no later than the fifteenth (15th) business day of the month following the month in which such contributions were received or withheld from the Participant's Compensation unless a longer period is permitted under applicable law or regulation.

CONFIDENTIAL    WH_MDL_00025084

<u>Section 4.07</u>   <u>MULTIPLE EMPLOYER PLAN</u>

(a)     In General.  If the Employees of more than one employer within the meaning of Code section 413(c) are covered under the Plan, the provisions of such section shall apply to the Plan. The Plan Administrator may allocate contributions specifically to Participants who are employed by an entity that participates in the Plan and may restrict the allocation of any forfeitures arising hereunder to the entity for which the applicable Participant is or was employed.

(b)     Method of Adoption.  If this Section 4.07 applies, the Plan Sponsor shall execute a master Plan and each other participating entity shall execute a joinder agreement which contains only those Plan provisions, if any, which may be overridden by an entity other than the Plan Sponsor.

CONFIDENTIAL                                                              WH_MDL_00025085

ARTICLE 5
LIMITATIONS ON CONTRIBUTIONS

Section 5.01    ANNUAL LIMITATION ON ELECTIVE DEFERRALS

(a)    Amount.  Notwithstanding anything herein to the contrary, elective deferrals made under this Plan, or any other qualified plan maintained by the Employer may not exceed, during any taxable year, the dollar limitation contained in Code section 402(g) in effect at the beginning of such taxable year. For purposes of this Section 5.01, elective deferrals shall mean qualified cash or deferred arrangements described in Code section 401(k), any salary reduction simplified employee pension described in Code section 408(k)(6), any SIMPLE IRA plan described in Code section 408(p) and any plan described under Code section 501(c)(18), and any employer contributions made on the behalf of a participant for the purchase of an annuity contract under Code section 403(b) pursuant to a salary reduction agreement.

(b)    Refund of Excess Deferrals.  In the event that Elective Deferrals under this Plan when added to a Participant's other elective deferrals under any other plan or arrangement (whether or not maintained by the Employer) exceed the limit described in the preceding Subsection, the Plan Administrator shall distribute, by April 15 of the following calendar year, the excess amount of Elective Deferrals plus income thereon.  The income/loss allocable to excess deferrals is equal to the sum of the allocable gain or loss for (i) the Plan Year and, (ii) effective as of such date as specified in a prior document, the "gap period" (i.e., the period after the close of the Plan Year and prior to the distribution). Income for the gap period shall be the allocable gain or loss during that period to the extent that the excess deferrals would otherwise be credited with gain or loss if the total account were to be distributed. The Plan Administrator may use any reasonable method for computing the income allocable to excess deferrals, provided that the method does not violate Code section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's Accounts. The Plan will not fail to use a reasonable method for computing the income allocable to excess deferrals merely because the income allocable to excess deferrals is determined on a date that is no more than 7 days before the actual distribution. In addition, the Plan Administrator may allocate income in any manner permitted under Treas. Reg. section 1.401(k)-2(b)(2)(iv). A Participant's claim that the excess was caused by elective deferrals made under a plan or arrangement not maintained by the Employer shall be made in writing and shall be submitted to the Plan Administrator no later than the date specified by the Plan Administrator following the calendar year in which such deferrals occurred.  For purposes of determining the necessary reduction, Elective Deferrals previously distributed or recharacterized pursuant to Section 5.04 or returned to the Participant pursuant to Section 5.04 shall be treated as distributed under this Section 5.01. If the Plan permits Roth Elective Deferrals, the Plan Administrator shall determine the ordering rule for refunds of excess Elective Deferrals. Such ordering rule may provide that the Participant may elect to have refunds made either from his Pre-tax Elective Deferrals or Roth Elective Deferrals or any combination thereof.

(c)    Forfeiture of Matching Contributions Related to Excess Elective Deferrals.  In the event a Participant receives a distribution of excess Elective Deferrals pursuant to Subsection (b),

CONFIDENTIAL                                                                WH_MDL_00025086

the Participant shall forfeit any Matching Contributions allocated to the Participant by reason of the distributed Elective Deferrals to the extent that additional Matching Contributions are not made pursuant to Treas. Reg. section 1.401(a)(4)-11(g)(3)(vii)(B). Elective Deferrals not taken into account in determining Matching Contributions under Section 4.02 shall be treated as being reduced first. Amounts forfeited shall be used to restore forfeitures, reduce Company contributions (or reallocate as Company contributions) made pursuant to Article 4 or to pay Plan expenses.

(d)    Catch-up Contributions. Effective as of January 1, 2002, all Participants who are eligible to make Elective Deferrals under this Plan shall be eligible to make Catch-up Contributions in accordance with, and subject to the limitations of, Code section 414(v). "Catch-up Contributions" are Elective Deferrals made to the Plan that are in excess of an otherwise applicable plan limit and that are made by Participants who are aged 50 or over by the end of their taxable years. An otherwise applicable plan limit is a limit in the Plan that applies to Elective Deferrals without regard to Catch-up Contributions, such as the limits on Annual Additions, the dollar limitation on Elective Deferrals under Code section 402(g) (not counting Catch-up Contributions) and the limit imposed by the actual deferral percentage (ADP) test under Code section 401(k)(3). Catch-up Contributions for a Participant for a taxable year may not exceed the dollar limit on Catch-up Contributions under Code section 414(v)(2)(B)(i) for the taxable year. The dollar limit on Catch-up Contributions under Code section 414(v)(2)(B)(i) is $1,000 for taxable years beginning in 2002, increasing by $1,000 for each year thereafter up to $5,000 for taxable years beginning in 2006 and later years. After 2006, the $5,000 limit will be adjusted by the Secretary of the Treasury for cost-of-living increases under Code section 414(v)(2)(C). Any such adjustments will be in multiples of $500. Catch-up Contributions are not subject to the limits on annual additions, are not counted in the ADP test and are not counted in determining the minimum allocation under Code section 416 (but Catch-up Contributions made in prior years are counted in determining whether the Plan is top-heavy).

Section 5.02    <u>NONDISCRIMINATION</u>

(a)    Elective Deferrals.  The Plan shall meet one of the following two tests with respect to Elective Deferrals for any Plan Year:

(1)    The Average Deferral Percentage for Participants who are Highly Compensated Employees for the current Plan Year shall not exceed the Average Deferral Percentage for such year for Participants who are Nonhighly Compensated Employees multiplied by 1.25; or

(2)    The Average Deferral Percentage for Participants who are Highly Compensated Employees for the current Plan Year shall not exceed the Average Deferral Percentage for such year for Participants who are Nonhighly Compensated Employees multiplied by 2.0; provided that the Average Deferral Percentage for Participants who are Highly Compensated Employees does not exceed the Average Deferral Percentage for Participants who are Nonhighly Compensated Employees by more than two percentage points or such lesser amount as the Secretary of the Treasury shall prescribe.

CONFIDENTIAL                                                                        WH_MDL_00025087

For a Plan Year that the Plan is a safe harbor 401(k) plan, the Average Deferral Percentage test specified in Subsections (1) and (2), above, will be applied by comparing the current Plan Year's Average Deferral Percentage for Participants who are Highly Compensated Employees with the current Plan Year's Average Deferral Percentage for Participants who are Non-highly Compensated Employees.

The Company may elect prior year testing for a Plan Year for purposes of this Subsection 5.02(a) only if the Plan has used current year testing for purposes of this Subsection 5.02(a) for each of the preceding 5 Plan Years (or if lesser, the number of Plan Years the Plan has been in existence) or if, as a result of a merger or acquisition described in Code section 410(b)(6)(C)(i), the Employer maintains both a plan using prior year testing and a plan using current year testing and the change is made within the transition period described in Code section 410(b)(6)(C)(ii).

If testing will be performed using the prior year data, for the first Plan Year the Plan permits any Participant to make Elective Deferrals and this Plan is not a successor Plan, the prior Plan Year's Average Deferral Percentage for Participants who are Nonhighly Compensated Employees shall be 3%.

If, for the applicable year for determining the ratios of the Nonhighly Compensated Employees for a Plan Year, there are no eligible Nonhighly Compensated Employees (i.e., all of the eligible employees under the cash or deferred arrangement for the applicable year are Highly Compensated Employees), the tests described in this Subsection (a) are deemed to be satisfied for the Plan Year.

(b)     Multiple Use.  The multiple use test was repealed effective for Plan Years beginning on or after January 1, 2002.

Section 5.03    SPECIAL RULES

(a)     Highly Compensated Employee in More Than One Plan.  The Actual Deferral Ratio and Actual Contribution Ratio for any Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have Elective Deferrals, Matching Contributions and Voluntary Contributions (and Qualified Nonelective Contributions if used to satisfy the tests described in Subsections 5.02(a) and (b)) allocated to his Accounts under two or more arrangements described in Code sections 401(k) and 401(m) that are maintained by the Employer, shall be determined as if such Elective Deferrals and contributions were made under a single arrangement.  If a Highly Compensated Employee participates in two or more arrangements, whether or not they have different Plan Years, all such Elective Deferrals and contributions made during the Plan Year under all such arrangements shall be aggregated. For Plan Years beginning before January 1, 2006, all such arrangements ending with or within the same calendar year shall be treated as a single plan or arrangement. Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Code section 401(k) and/or 401(m).

(b)     Contributions Used in Determining Ratios.  All or part of the Qualified Nonelective Contributions and Qualified Matching Contributions that are made with respect to

CONFIDENTIAL                                                    WH_MDL_00025088

any or all Participants may be treated as Elective Deferrals and/or Matching Contributions for purposes of meeting the requirements of 5.02(a) and (b). In addition, the Plan Administrator may use any employer and/or employee contribution to meet the requirements of the ADP and ACP tests of Section 5.02 to the extent permitted by applicable Treasury Regulations. The Company may make additional contributions that are taken into account for the ACP test under Subsection 5.02(b) that, in combination with the other contributions taken into account under this Subsection 5.03(b), will allow the Plan to satisfy the requirements of such Subsection.

(c)     Contributions Only Used Once. Qualified Nonelective Contributions and Qualified Matching Contributions shall not be taken into account under the ADP test to the extent such contributions are taken into account for purposes of satisfying any other ADP test, any other ACP test, or the requirements of Treas. Reg. sections 1.401(k)-3, 1.401(m)-3 or 1.401(k)-4. If the Plan switches from the current year testing method to the prior year testing method, Qualified Nonelective Contributions that are taken into account under the current year testing method for a year may not be taken into account under the prior year testing method for the next year.

(d)     Aggregation of Plans.  In the event that this Plan satisfies the requirements of Code sections 401(k), 401(m), 401(a)(4), or 410(b) only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then Section 5.02 shall be applied as if all such plans were a single plan. The Plan may not be aggregated for testing purposes if the plans to be aggregated use differing testing methods (i.e., current year/prior year). For example, a plan (within the meaning of Treas. Reg. section 1.410(b)-7(b)) that applies the current year testing method may not be aggregated with another plan that applies the prior year testing method. Similarly, an employer may not aggregate a plan (within the meaning of Treas. Reg. section 1.410(b)-7(b)): (i) using the ADP safe harbor provisions of Code section 401(k)(12) and another plan that is using the ADP test of Code section 401(k)(3); or (ii) using the ACP safe harbor provisions of Code section 401(m)(11) and another plan that is using the ACP test of Code section 401(m)(2). The Company may also treat two or more separate collective bargaining units as a single collective bargaining unit, provided that the combinations of units are determined on a basis that is reasonable and reasonably consistent from year to year.

(e)     Matching Contributions in a Safe Harbor Plan. If the Plan satisfies the ACP safe harbor requirements of Code section 401(m)(11) for a Plan Year but nonetheless must satisfy the requirements of Section 5.02(b) because it provides for Voluntary Contributions, the Plan Administrator may elect to perform the tests under Section 5.02(b) with regard to Matching Contributions and Voluntary Contributions. If the Plan satisfies the ADP safe harbor requirements of Code section 401(k)(12) using qualified matching contributions but does not satisfy the ACP safe harbor requirements of Code section 401(m)(11), the Plan Administrator is permitted to perform the tests under Section 5.02(b) by excluding Matching Contributions with respect to all Participants that do not exceed 4% of each employee's Compensation.

(f)     Disproportionate Contributions. This Subsection is effective as of January 1, 2006.

CONFIDENTIAL                                                      WH_MDL_00025089

(1)     QNECs. All or part of a Nonhighly Compensated Employee's Qualified Nonelective Contributions may be taken into account in meeting the ADP test under Section 5.02(a) only to the extent that such contributions are not treated as disproportionate within the meaning of Treas. Reg. section 1.401(k)-2(a)(6). All or part of a Nonhighly Compensated Employee's Qualified Nonelective Contributions may be taken into account in meeting the ACP test under Section 5.02(b) only to the extent that such contributions are not treated as disproportionate within the meaning of Treas. Reg. section 1.401(m)-2(a)(6).

(2)     Matching Contributions. Qualified Matching Contributions may be taken into account in meeting the ADP test under Section 5.02(a) only to the extent that such Qualified Matching Contributions are matching contributions that are not precluded from being taken into account under the ACP test for the Plan Year under the rules of Treas. Reg. section 1.401(m)-2(a)(5)(ii). All or part of a Nonhighly Compensated Employee's Matching Contributions may be taken into account in meeting the ACP test only to the extent that such contributions are not treated as disproportionate within the meaning of Treas. Reg. section 1.401(m)-2(a)(5)(ii).

(g)     Code Section 410(a) Excludable Employees. The Company may treat, pursuant to applicable Treasury Regulations, Participants who have not met the minimum age and service requirements of Code section 410(a)(1)(A) as comprising a separate plan for purposes of Section 5.02 pursuant to Subsection (1) or (2), provided the disaggregated Plan consisting of such excludable Nonhighly Compensated Employees separately satisfies the requirements of Code section 410(b) and the Plan does not utilize Section 5.03(h).

(1)     Annual Entry Date. The Plan Administrator may treat Participants who have not met the minimum age and service requirements of Code section 410(a)(1)(A) before the first day of the seventh month of the Plan Year as comprising a separate plan. If the Plan provides safe harbor contributions, Participants not considered in the separate plan must be eligible for safe harbor contributions for the entire Plan Year.

(2)     Semi-Annual or More Frequent Entry Date. The Plan Administrator may treat Participants who have not met the minimum age and service requirements of Code section 410(a)(1)(A) using one of the entry dates specified in the Plan (not less frequently than semi-annual) before the last day of the Plan Year as comprising a separate plan. Contributions of Participants who have an entry date during the applicable Plan Year shall not be counted in the separate plan.

(h)     Excludable Nonhighly Compensated Employees. The Company may also, pursuant to applicable Treasury Regulations, exclude all Nonhighly Compensated Employees who have not met the minimum age and service requirements of Code section 410(a)(1)(A) (pursuant to Subsection (g)(1) or (2)) from consideration in determining whether the requirements of Section 5.02 are met, provided the disaggregated Plan consisting of such excludable Nonhighly Compensated Employees separately satisfies the requirements of Code section 410(b) and the Plan does not utilize Section 5.03(g).

(i)     Correction Methods. The Plan may, pursuant to applicable Treasury Regulations, do any of the following to avoid or correct excess contributions and/or excess aggregate

CONFIDENTIAL                                                        WH_MDL_00025090

contributions: (i) provide for the use of any of the correction methods described herein; (ii) limit contributions in a manner designed to prevent excess contributions from being made; or (iii) use a combination of these methods.

(j)    Plans Using Differing Testing Methods. A Plan may use differing testing methods (i.e., current year/prior year) for the ADP and ACP tests of Section 5.02. For example, the Plan may use the prior year testing method for the ADP test of Section 5.02(a) and the current year testing method for its ACP test of Section 5.02(b) for a Plan Year. In addition to the prohibition on recharacterization specified in Section 5.04(a), a Plan that uses differing methods may not use Elective Deferrals in the ACP test of Section 5.02(b) and may not use Qualified Matching Contributions in the ADP test of Section 5.02(a).

(k)    Special Rules Regarding Prior Year Data. If the Plan uses the prior year testing method for either the ADP or ACP test in Section 5.02 and is involved in a plan coverage change as defined in Treas. Reg. section 1.401(k)-2(c)(4) and/or 1.401(m)-2(c)(4), then any adjustments to the Nonhighly Compensated Employees' prior year percentages will be made in accordance with such regulations.

(l)    Plan Year Requirements for Safe Harbor Plans. To the extent the Plan is designed to satisfy Code section 401(k)(12), the Plan Year must satisfy the requirements of Treas. Reg. 1.401(k)-3(e)(1), taking into account the special provisions of 1.401(k)-3(e)(2) for the initial Plan Year. A short Plan Year may exist provided the requirements of Treas. Reg. 1.401(k)-3(e)(3) are satisfied. The final Plan Year of a terminating plan may be less than twelve months provided the requirements of Treas. Reg. 1.401(k)-3(e)(4) are satisfied.

(m)    Regulations. Sections 5.02 through 5.04 shall be interpreted in accordance with applicable IRS regulations and such regulations shall apply to the extent of any inconsistencies between the terms of the Plan and such regulations.

Section 5.04    CORRECTION OF DISCRIMINATORY ELECTIVE DEFERRALS

In the event the nondiscrimination tests of Section 5.02(a) are not satisfied with respect to Elective Deferrals for any Plan Year, excess Elective Deferrals for the Plan Year determined as set forth in Paragraph (1) shall be corrected as set forth in Paragraph (2):

(1)    Determination of Excess Deferrals. The Elective Deferrals of the Highly Compensated Employee with the highest Actual Deferral Ratio shall be reduced until the nondiscrimination tests imposed by Section 5.02(a) would be satisfied, or until the Actual Deferral Ratio of the Highly Compensated Employee would equal the Actual Deferral Ratio of the Highly Compensated Employee with the next highest Actual Deferral Ratio. This process shall be repeated until the nondiscrimination tests imposed by Section 5.02(a) are satisfied. The amount of excess deferrals is equal to the sum of these hypothetical reductions multiplied, in each case, by the respective Highly Compensated Employee's Section 414(s) Compensation (including deferrals to the extent that they are taken into account in determining testing ratios).

CONFIDENTIAL                                        WH_MDL_00025091

(2)     Distribution of Excess Deferrals.  Excess deferrals shall be allocated to the Highly Compensated Employees with the largest dollar amounts of contributions taken into account in calculating the Average Deferral Percentage test for the year in which the excess arose, beginning with the Highly Compensated Employee with the largest dollar amount of such contributions and continuing in descending order until all the excess deferrals have been allocated. To the extent a Highly Compensated Employee has not reached his or her Catch-up Contribution limit as specified in Section 5.01(d), excess deferrals allocated to such Highly Compensated Employee are deemed Catch-up Contributions and will not be treated as excess contributions. The amount of excess deferrals is reduced by any amounts previously distributed from the Plan to correct excess deferrals under Section 5.01 for the employee's taxable year ending with or within the Plan Year. The distribution of the amount allocated to each Highly Compensated Employee, as adjusted for income allocable to the excess deferrals, shall occur within twelve (12) months of the close of the Plan Year for which the Elective Deferrals were made. The income/loss allocable to excess deferrals is equal to the sum of the allocable gain or loss for (i) the Plan Year and, (ii) effective as of January 1, 2006, the "gap period" (i.e., the period after the close of the Plan Year and prior to the distribution). Income for the gap period shall be the allocable gain or loss during that period to the extent that the excess deferrals would otherwise be credited with gain or loss if the total account were to be distributed. The Plan Administrator may use any reasonable method for computing the income allocable to excess deferrals, provided that the method does not violate Code section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's Accounts. The Plan will not fail to use a reasonable method for computing the income allocable to excess deferrals merely because the income allocable to excess deferrals is determined on a date that is no more than 7 days before the actual distribution. In addition, the Plan Administrator may allocate income in any manner permitted under Treas. Reg. section 1.401(k)-2(b)(2)(iv). Elective Deferrals not taken into account in determining Matching Contributions under Section 4.02 shall be distributed first.  In the event a Participant receives a distribution of Elective Deferrals that were taken into account in determining Matching Contributions, the Participant shall forfeit such Matching Contributions that were allocated to the Participant by reason of the distributed Elective Deferrals to the extent that additional Matching Contributions are not made pursuant to Treas. Reg. section 1.401(a)(4)-11(g)(3)(vii)(B). Amounts forfeited shall be used to restore forfeitures, reduce Company contributions (or reallocate as Company contributions) made pursuant to Article 4 or to pay Plan expenses. If the Plan does not correct excess deferrals within 2-1/2 months, or such other time frame as may be prescribed by the Secretary of the Treasury, after the close of the Plan Year for which the excess deferrals are made, the Employer will be liable for a 10% excise tax on the amount of the excess deferrals to the extent provided in Code section 4979.

(3)     Recharacterization.  If the Plan permits Voluntary Contributions and if the Plan uses the same testing methods (current year/prior year) in Subsection 5.02(a) and (b), the Plan Administrator may treat excess Elective Deferrals as an amount distributed to the Participant and then contributed by the Participant to the Plan as a Voluntary Contribution. Recharacterized amounts will remain nonforfeitable and subject to the same distribution requirements as Elective Deferrals.  Amounts may not be recharacterized by a Highly Compensated Employee to the extent that such amount in combination with other Voluntary Contributions made by that Employee would exceed any stated limit under the Plan on Voluntary

CONFIDENTIAL     WH_MDL_00025092

Contributions. Recharacterization must occur no later than two and one-half months after the last day of the Plan Year in which such excess Elective Deferrals arose and is deemed to occur no earlier than the date the last Highly Compensated Employee is informed in writing of the amount recharacterized and the consequences thereof. Recharacterized amounts will be taxable to the Participant for the Participant's tax year in which the Participant would have received them in cash.

(4)    Refunds. The Plan Administrator shall determine the ordering rule for refunds of Elective Deferrals made as a result of any testing failure; provided that such ordering rule is nondiscriminatory. Such ordering rule may provide that the Participant may elect to have refunds made either from his Pre-tax Elective Deferrals or Roth Elective Deferrals or any combination thereof.

Section 5.05    MAXIMUM AMOUNT OF ANNUAL ADDITIONS

(a)    General Rule.

(1)    One Plan. If the Participant does not participate in, and has never participated in another qualified plan maintained by the Employer or a welfare benefit fund, as defined in Code section 419(e) maintained by the Employer, or an individual medical account, as defined in Code section 415(l)(2), maintained by the Employer, or a simplified employee pension, as defined in Code section 408(k), maintained by the Employer, which provides an Annual Addition, the amount of Annual Additions which may be credited to the Participant's Account for any Limitation Year will not exceed the lesser of the maximum permissible amount specified in Section 5.05(b) or any other limitation contained in this Plan. If the Employer contribution that would otherwise be contributed or allocated to the Participant's Account would cause the Annual Additions for the Limitation Year to exceed such maximum permissible amount, the amount contributed or allocated will be reduced so that the Annual Additions for the Limitation Year will equal the maximum permissible amount.

(2)    Multiple Plans. This Subsection 5.05(a)(2) applies if, in addition to this Plan, the Participant is covered under another qualified defined contribution plan maintained by the Employer, a welfare benefit fund maintained by the Employer, an individual medical account maintained by the Employer, or a simplified employee pension maintained by the Employer, that provides an Annual Addition during any Limitation Year. The Annual Additions which may be credited to a Participant's Account under this Plan for any such Limitation Year will not exceed the maximum permissible amount specified in Section 5.05(b) reduced by the Annual Additions credited to a Participant's account under the other qualified defined contribution plans, welfare benefit funds, individual medical accounts, and simplified employee pensions for the same Limitation Year.

(b)    Maximum Permissible Amount. For Limitation Years beginning on or after January 1, 2002, the maximum permissible amount is the lesser of:

(1)    $40,000, as adjusted for increases in the cost-of-living under Code section 415(d); or

CONFIDENTIAL                                      WH_MDL_00025093

(2)    100 percent of the Participant's Testing Compensation for the Limitation Year.  The compensation limit referred to in this Subsection (b)(2) shall not apply to any contribution for medical benefits after separation from service (within the meaning of Code sections 401(h) or 419A(f)(2)) which is otherwise treated as an Annual Addition. Notwithstanding the preceding sentence, Testing Compensation for purposes of Section 5.05 for a Participant in a defined contribution plan who is permanently and totally disabled (as defined in Code section 22(e)(3)) is the compensation such Participant would have received for the Limitation Year if the Participant had been paid at the rate of compensation paid immediately before becoming permanently and totally disabled.

Prior to determining the Participant's actual Testing Compensation for the Limitation Year, the Employer may determine the maximum permissible amount for a Participant on the basis of a reasonable estimation of the Participant's Testing Compensation for the Limitation Year, uniformly determined for all Participants similarly situated. As soon as is administratively feasible after the end of the Limitation Year, the maximum permissible amount for the Limitation Year will be determined on the basis of the Participant's actual Testing Compensation for the Limitation Year.

(c)    Correction of Excess.

(1)    One Plan. If Subsection 5.05(a)(1) applies and if pursuant to an estimate of Testing Compensation in Section 5.05(b) or as a result of the allocation of forfeitures, there is an excess amount the Plan Administrator shall correct such excess pursuant to the terms of Subsections (d) and (e).

(2)    Multiple Plans.

(A)    In General. If Subsection 5.05(a)(2) applies and the Annual Additions with respect to the Participant under the other plans specified in Subsection 5.05(a)(2) are less than the maximum permissible amount and the Employer contribution that would otherwise be contributed or allocated to the Participant's Account under this Plan would cause the Annual Additions for the Limitation Year to exceed this limitation, the amount contributed or allocated will be reduced so that the Annual Additions under all such plans and funds for the Limitation Year will equal the maximum permissible amount. If the Annual Additions with respect to the Participant under the other plans specified in Subsection 5.05(a)(2) in the aggregate are equal to or greater than the maximum permissible amount, no amount will be contributed or allocated to the Participant's Account under this Plan for the Limitation Year.

(B)    Ordering Rule. If pursuant to an estimate of Testing Compensation in Section 5.05(b) or as a result of the allocation of forfeitures, a Participant's Annual Additions under this Plan and such other plans would result in an excess amount for a Limitation Year, the correction shall be first made to this Plan. Any excess amount attributed to this Plan will be disposed in the manner described in Subsections (d) and (e). If an excess still remains and the terms of the other plans do not provide an ordering rule, the excess amount will be deemed to consist of the Annual Additions last allocated, except that Annual Additions attributable to a

CONFIDENTIAL                                                                                      WH_MDL_00025094

simplified employee pension will be deemed to have been allocated first, followed by Annual Additions to a welfare benefit fund or individual medical account, regardless of the actual allocation date. If an excess amount was allocated to a Participant on an allocation date that coincides with an allocation date in more than one plan, the excess amount attributed to each such plan will be the product of: (i) the total excess amount allocated as of such date, times (ii) the ratio of (x) the Annual Additions allocated to the Participant for the Limitation Year as of such date under a particular plan to (y) the total Annual Additions allocated to the Participant for the Limitation Year as of such date under the other defined contribution plans with the same allocation date.

(d)      Ordering Rule. The correction shall be made by first refunding Elective Deferrals and Voluntary Contributions, if any, and then forfeiting any other Company contributions. If the Plan permits Roth Elective Deferrals, the Plan Administrator shall determine the ordering rule for refunds of excess Annual Additions. Such ordering rule may provide that the Participant may elect to have refunds made either from his Pre-tax Elective Deferrals or Roth Elective Deferrals or any combination thereof.

(e)      Method of Correcting Company Contributions. Any amount forfeited pursuant to this Section shall be held unallocated in a suspense account for the Limitation Year and allocated and reallocated pursuant to Article 4 in the next Limitation Year and each succeeding Limitation Year if necessary. The suspense account will be applied to reduce future Company contributions for all remaining Participants in the next Limitation Year, and each succeeding Limitation Year if necessary. If a suspense account is in existence at any time during a Limitation Year pursuant to this Section, other than the year in which the excess occurred, all amounts in the suspense account must be allocated and reallocated to Participants' accounts (subject to the Annual Addition limitation) before any Company contributions and Participant contributions which would constitute Annual Additions may be made to the Plan for that Limitation Year. Excess amounts may not be distributed to Participants or former Participants.

CONFIDENTIAL

WH_MDL_00025095

ARTICLE 6
VESTING

Section 6.01    PARTICIPANT CONTRIBUTIONS

A Participant shall have a fully vested and nonforfeitable interest in his Elective Deferral Account, Rollover Contribution Account and Qualified Nonelective Contribution Account.

CONFIDENTIAL                                                                                    WH_MDL_00025096

ARTICLE 7
DISTRIBUTIONS

Section 7.01    COMMENCEMENT OF DISTRIBUTIONS

(a)    Normal Retirement.  A Participant, upon attainment of Normal Retirement Age, shall be entitled to retire and to receive his Account as his benefit hereunder pursuant to Section 7.02.

(b)    Late Retirement.  If a Participant continues in the employ of the Company beyond his Normal Retirement Age, his participation under the Plan shall continue, and his benefits under the Plan shall commence following his actual Termination of Employment pursuant to Section 7.02.

(c)    Disability Retirement.  If a Participant becomes Disabled, he shall become entitled to receive his vested Account pursuant to Section 7.02 following the date he has a Termination of Employment.

(d)    Death.  If a Participant dies, either before or after his Termination of Employment, his Beneficiary designated pursuant to Section 7.04 shall become entitled to receive the Participant's vested Account pursuant to Section 7.02.

(e)    Termination of Employment.  A Participant shall become entitled to receive his vested Account pursuant to Section 7.02 following the date he has a Termination of Employment.  Effective for distributions and severances from employment occurring after December 31, 2001, a Participant shall not be entitled to a distribution from his Elective Deferral Account, Qualified Nonelective Contribution Account or Qualified Matching Contributions (and earnings attributable to these contributions) unless he has had a "severance from employment" within the meaning of Code section 401(k)(2)(B)(i)(I).

Section 7.02    TIMING AND FORM OF DISTRIBUTIONS

(a)    Distribution for Reasons Other Than Death.  If a Participant's Account balance becomes distributable pursuant to Section 7.01 for any reason other than death, payment of his vested Account may commence as soon as administratively feasible after the end of the Plan Year after all contributions have been allocated relating to the Plan Year in which the Participant's Account balance becomes distributable.  Such Participant's benefit shall be payable, in cash, in one lump sum payment. No distribution shall be made if the Participant is rehired by the Company before payments commence.

(b)    Distribution on Account of Death.

(1)    Before Distribution Has Begun.  If the Participant dies before distribution of his Account begins, distribution of the Participant's entire Account shall be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death

CONFIDENTIAL                                                                                    WH_MDL_00025097

unless an election is made by his Beneficiary to receive distributions in accordance with (A) and (B) below:

        (A)    Distributions may be made over the life or over a period certain not greater than the life expectancy of the Beneficiary commencing on or before December 31 of the calendar year immediately following the calendar year in which the Participant died;

        (B)    If the Beneficiary is the Participant's surviving spouse, the date distributions are required to begin in accordance with Subparagraph (A) above shall not be earlier than the later of (i) December 31 of the calendar year immediately following the calendar year in which the Participant died and (ii) December 31 of the calendar year in which the Participant would have attained age 70-1/2.

        If the Participant has not made an election as to form of payment by the time of his death, the Participant's Beneficiary must elect the method of distribution no later than the earlier of (1) December 31 of the calendar year in which distributions would be required to begin under this Section, or (2) December 31 of the calendar year which contains the fifth anniversary of the date of death of the Participant. If the Participant has no designated beneficiary pursuant to applicable Treasury Regulations, or if the designated beneficiary does not elect a method of distribution, distribution of the Participant's entire interest must be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

        If the surviving spouse dies after the Participant, the provisions of this Subsection (b)(1), with the exception of Subparagraph (B) therein, shall be applied as if the surviving spouse were the Participant.

        (2)    After Distribution Has Begun. If the Participant dies after distribution of his Account has begun, the remaining portion of such Account will continue to be distributed at least as rapidly as the method of distribution being used prior to the Participant's death. If the Participant's Account was not being distributed in the form of an annuity at the time of his death, the Beneficiary may elect to receive the Participant's remaining vested Account balance in a lump sum distribution.

        The Beneficiary shall provide the Plan Administrator with the death notice or other sufficient documentation before any payments are made pursuant to this Subsection.

        (c)    Valuation Date. The distributable amount of a Participant's Account is the vested portion of his Account as of the Valuation Date coincident with or next preceding the date distribution is made to the Participant or Beneficiary as reduced by any subsequent distributions, withdrawals or loans.

        (d)    Ordering Rule. The Plan Administrator shall determine the ordering rule for distributions; provided that such ordering rule is nondiscriminatory. Such ordering rule may provide that the Participant or Beneficiary may elect to have payments made first or last from his Roth Elective Deferral Account or Voluntary Contribution Account or in any combination of such accounts and any other Account.

CONFIDENTIAL                                                                              WH_MDL_00025098

(e)    Restriction on Deferral of Payment. Unless otherwise elected, benefit payments under the Plan will begin to a Participant not later than the 60th day after the latest of the close of the Plan Year in which:

(1)    the Participant attains Normal Retirement Age;

(2)    occurs the 10th anniversary of the year in which his participation commenced; or

(3)    the Participant has a Termination of Employment.

(f)    Minimum Distribution Requirements. Distributions shall be made in a method that is in conformance with the requirements set forth in Section 7.05. Section 7.05 shall not be deemed to create a type of benefit (e.g., installment payments, lump sum within five years or immediate lump sum payment) to any class of Participants and Beneficiaries that is not otherwise permitted by the Plan.

Section 7.03    CASH-OUT OF SMALL BALANCES

(a)    Vested Account Balance Does Not Exceed $5,000.  Notwithstanding the foregoing, if the vested amount of an Account payable to a Participant or Beneficiary does not exceed $5,000 at the time such individual becomes entitled to a distribution hereunder (or at any subsequent time established by the Plan Administrator to the extent provided in applicable Treasury Regulations), such vested Account shall be paid in a lump sum to the extent it is not subject to the automatic rollover provisions of Section 7.06(c) below.

(b)    Vested Account Balance Exceeds $5,000.  If the value of a Participant's vested Account balance exceeds $5,000, and the Account balance is immediately distributable, the Participant must consent to any distribution of such Account balance.  Notwithstanding the foregoing, payments shall commence as of the Participant's Required Beginning Date in the form of a lump sum or installment payments. The Participant's consent shall be obtained in writing within the 90-day period ending on the Annuity Starting Date.  The Plan Administrator shall notify the Participant of the right to defer any distribution until the date such payments must begin pursuant to the foregoing.  Such notification shall include a general description of the material features, and an explanation of the relative values of, the optional forms of benefit available under the Plan, and shall be provided no less than 30 days and no more than 90 days prior to the Annuity Starting Date.  However, distribution may commence less than 30 days after the notice described in the preceding sentence is given, provided the Plan Administrator clearly informs the Participant that he has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and the Participant, after receiving the notice, affirmatively elects a distribution.  In the event a Participant's vested Account balance becomes distributable without consent pursuant to this Subsection (b), and the Participant fails to elect a form of distribution, the vested Account balance of such Participant shall be paid in a single lump sum.

CONFIDENTIAL

(c)    For purposes of this Section 7.03, the Participant's vested Account balance shall not include amounts attributable to accumulated deductible employee contributions within the meaning of Code section 72(o)(5)(B).

(d)    Required Distributions and Plan Termination.  Consent of the Participant or his spouse shall not be required to the extent that a distribution is required to satisfy Code sections 401(a)(9), 401(k), 401(m), 402(g) or 415.  In addition, upon termination of this Plan the Participant's Account balance shall be distributed to the Participant in a lump sum distribution. However, if the Employer maintains another defined contribution plan (other than an employee stock ownership plan as defined in Code section 4975(e)(7)), then the Participant's Account balance will be transferred, without the Participant's consent, to the other plan if the Participant does not consent to an immediate distribution.

(e)    Treatment of Rollovers.

(1)    Applicability and Effective Date. This Section 7.03(e) shall apply effective January 1, 2014.

(2)    Rollovers Disregarded in Determining Value of Account Balance for Involuntary Distributions.  For purposes of this Section 7.03, the Participant's vested Account balance shall not include that portion of the Account balance that is attributable to rollover contributions (and earnings allocable thereto) within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16).

Section 7.04   BENEFICIARY

(a)    Beneficiary Designation Right.  Except as provided in Section 7.04(b), each Participant, and if the Participant has died, the Beneficiary of such Participant, shall have the right to designate one or more primary and one or more secondary Beneficiaries to receive any benefit becoming payable upon such individual's death.  The spouse of a married Participant shall be the sole primary beneficiary of such Participant unless the requirements of Subsection (b) are met.  All Beneficiary designations shall be in writing in a form satisfactory to the Plan Administrator and shall only be effective when filed with the Plan Administrator during the Participant's lifetime (or if the Participant has died, during the lifetime of the Beneficiary of such Participant who desires to designate a further Beneficiary).  Except as provided in Section 7.04(b), each Participant (or Beneficiary) shall be entitled to change his Beneficiaries at any time and from time to time by filing written notice of such change with the Plan Administrator.

(b)    Form and Content of Spouse's Consent.  The Participant may designate a Beneficiary other than his spouse pursuant to this Subsection if: (i) the spouse has waived the spouse's right to be the Participant's Beneficiary in accordance with this Subsection; (ii) the Participant has no spouse; or (iii) the Plan Administrator determines that the spouse cannot be located or such other circumstances exist under which spousal consent is not required, as prescribed by Treasury Regulations.  If required, such consent: (i) shall be in writing; (ii) shall relate only to the specific alternate beneficiary or beneficiaries designated (or permits beneficiary designations by the Participant without the spouse's further consent); (iii) shall acknowledge the

CONFIDENTIAL         WH_MDL_00025100

effect of the consent; and (iv) shall be witnessed by a plan representative or notary public. Any consent by a spouse, or establishment that the consent of a spouse may not be obtained, shall not be effective with respect to any other spouse. Any spousal consent that permits subsequent changes by the Participant to the Beneficiary designation without the requirement of further spousal consent shall acknowledge that the spouse has the right to limit such consent to a specific Beneficiary, and that the spouse voluntarily elects to relinquish such right.

(c)    No Designated Beneficiary. In the event that the Participant fails to designate a Beneficiary, or in the event that the Participant is predeceased by all designated primary and secondary Beneficiaries, the death benefit shall be payable to the Participant's spouse or, if there is no spouse, to the Participant's children in equal shares or, if there are no children to the Participant's estate.

Section 7.05    MINIMUM DISTRIBUTION REQUIREMENTS

(a)    General Rules.

(1)    Effective Date. The requirements of this Section shall apply to any distribution of a Participant's interest and will take precedence over any inconsistent provisions of this Plan. Unless otherwise specified in Subsection (g), the provisions of this Section apply to calendar years beginning after December 31, 2002.

(2)    Construction. All distributions required under this Section shall be determined and made in accordance with the regulations under Code section 401(a)(9) and the minimum distribution incidental benefit requirement of Code section 401(a)(9)(G). Nothing contained in this Section shall be deemed to create a type of benefit (e.g., installment payments, lump sum within five years or immediate lump sum payment) to any class of Participants and/or Beneficiaries that is not otherwise permitted by the Plan.

(3)    Limits on Distribution Periods. As of the first distribution calendar year, distributions to a Participant, if not made in a single-sum, may only be made over one of the following periods:

(A)    the life of the Participant;

(B)    the joint lives of the Participant and a designated beneficiary;

(C)    a period certain not extending beyond the life expectancy of the Participant; or

(D)    a period certain not extending beyond the joint life and last survivor expectancy of the Participant and a designated beneficiary.

(b)    Time and Manner of Distribution.

CONFIDENTIAL                                          WH_MDL_00025101

(1)    Required Beginning Date. Unless an earlier date is specified in Section 7.02(b), the Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

(2)    Death of Participant Before Distributions Begin. If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

(A)    If the Participant's surviving spouse is the Participant's sole designated beneficiary, then unless an earlier date is specified in Section 7.02(b), distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70-1/2, if later.

(B)    If the Participant's surviving spouse is not the Participant's sole designated beneficiary, then, unless otherwise specified in Section 7.02(b), distributions to the designated beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

(C)    If there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death unless an earlier date is specified in Section 7.02(b).

(D)    If the Participant's surviving spouse is the Participant's sole designated beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse are required to begin, this Subsection (b)(2), other than Subsection (b)(2)(A), will apply as if the surviving spouse were the Participant except as otherwise provided in Section 7.02(b).

For purposes of this Subsection (b)(2) and Subsection (d), unless Subsection (b)(2)(D) applies, distributions are considered to begin on the Participant's Required Beginning Date. If Subsection (b)(2)(D) applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under section Subsection (b)(2)(A). If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under Subsection (b)(2)(A)), the date distributions are considered to begin is the date distributions actually commence.

(3)    Forms of Distribution. Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single-sum on or before the Required Beginning Date, as of the first distribution calendar year distributions will be made in accordance with Subsections (c) and (d) to the extent otherwise permitted by the Plan. If the Participant's interest is distributed in the form of an annuity purchased from an insurance

CONFIDENTIAL                                    WH_MDL_00025102

company, distributions thereunder will be made in accordance with the requirements of Code 401(a)(9) and the regulations.

      (c)     Required Minimum Distributions During Participant's Lifetime.

      (1)     Amount of Required Minimum Distribution For Each Distribution Calendar Year. During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

      (A)     the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table set forth in Treas. Reg. section 1.401(a)(9)-9, Q&A-2 using the Participant's age as of the Participant's birthday in the distribution calendar year; or

      (B)     if the Participant's sole designated beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in Treas. Reg. section 1.401(a)(9)-9 using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

      (2)     Lifetime Required Minimum Distributions Continue Through Year of Participant's Death. Required minimum distributions will be determined under this Subsection (c) beginning with the first distribution calendar year and continuing up to, and including, the distribution calendar year that includes the Participant's date of death.

      (d)     Required Minimum Distributions After Participant's Death.

      (1)     Death On or After Date Distributions Begin.

      (A)     Participant Survived by Designated Beneficiary. If the Participant dies on or after the date distributions begin and there is a designated beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated beneficiary, determined as follows:

      (i)     The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

      (ii)     If the Participant's surviving spouse is the Participant's sole designated beneficiary, the remaining life expectancy of the surviving spouse is calculated for each distribution calendar year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year. For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

CONFIDENTIAL        WH_MDL_00025103

           (iii)    If the Participant's surviving spouse is not the Participant's sole designated beneficiary, the designated beneficiary's remaining life expectancy is calculated using the age of the beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

        (B)    No Designated Beneficiary. If the Participant dies on or after the date distributions begin and there is no designated beneficiary as of the September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the Participant's remaining life expectancy calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

    (2)    Death Before Date Distributions Begin.

        (A)    Participant Survived by Designated Beneficiary. If the Participant dies before the date distributions begin and there is a designated beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's designated beneficiary, determined as provided in Subsection (d)(1).

        (B)    No Designated Beneficiary. If the Participant dies before the date distributions begin and there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

        (C)    Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin. If the Participant dies before the date distributions begin, the Participant's surviving spouse is the Participant's sole designated beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under Subsection (b)(2)(A), this Subsection (d)(2) will apply as if the surviving spouse were the Participant.

    (e)    Definitions.

    (1)    Designated Beneficiary. The individual who is designated by the Participant (or the Participant's surviving spouse) as the beneficiary of the Participant's interest under the plan and who is the designated beneficiary under Code section 401(a)(9) and Treas. Reg. section 1.401(a)(9)-4.

    (2)    Distribution Calendar Year. A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date. For distributions beginning after the

CONFIDENTIAL          WH_MDL_00025104

Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Subsection (b)(2). The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's Required Beginning Date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that distribution calendar year.

   (3) Life expectancy. Life expectancy as computed by use of the Single Life Table in Treas. Reg. section 1.401(a)(9)-9, Q&A-1.

   (4) Participant's Account Balance. The account balance as of the last valuation date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the account as of dates in the valuation calendar year after the valuation date and decreased by distributions made in the valuation calendar year after the valuation date. The account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

  (f) TEFRA Section 242(b)(2) Elections.

   (1) Notwithstanding any provision in the Plan to the contrary, distribution on behalf of any employee, including a More Than 5% Owner, who has made a designation under section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (a "section 242(b)(2) election") may be made in accordance with all of the following requirements (regardless of when such distribution commences):

    (A) The distribution by the plan is one which would not have disqualified such plan under Code section 401(a)(9) as in effect prior to amendment by the Deficit Reduction Act of 1984.

    (B) The distribution is in accordance with a method of distribution designated by the employee whose interest in the plan is being distributed or, if the employee is deceased, by a beneficiary of such employee.

    (C) Such designation was in writing, was signed by the employee or the beneficiary, and was made before January 1, 1984.

    (D) The employee had accrued a benefit under the plan as of December 31, 1983.

    (E) The method of distribution designated by the employee or the beneficiary specifies the time at which distribution will commence, the period over which distributions will be made, and in the case of any distribution upon the employee's death, the beneficiaries of the employee listed in order of priority.

CONFIDENTIAL    WH_MDL_00025105

(2)    A distribution upon death will not be covered by this transitional rule unless the information in the designation contains the required information described above with respect to the distributions to be made upon the death of the employee.

(3)    For any distribution which commences before January 1, 1984, but continues after December 31, 1983, the employee, or the beneficiary, to whom such distribution is being made, will be presumed to have designated the method of distribution under which the distribution is being made if the method of distribution was specified in writing and the distribution satisfies the requirements in Subsections (f)(1)(A) and (E).

(4)    If a designation is revoked, any subsequent distribution must satisfy the requirements of Code section 401(a)(9) and the regulations thereunder. If a designation is revoked subsequent to the date distributions are required to begin, the Plan must distribute by the end of the calendar year following the calendar year in which the revocation occurs the total amount not yet distributed which would have been required to have been distributed to satisfy Code section 401(a)(9) and the regulations thereunder, but for the section 242(b)(2) election. For calendar years beginning after December 31, 1988, such distributions must meet the minimum distribution incidental benefit requirements. Any changes in the designation will be considered to be a revocation of the designation. However, the mere substitution or addition of another beneficiary (one not named in the designation) under the designation will not be considered to be a revocation of the designation, so long as such substitution or addition does not alter the period over which distributions are to be made under the designation, directly or indirectly (for example, by altering the relevant measuring life).

(5)    In the case in which an amount is transferred or rolled over from one plan to another plan, the rules in Treas. Reg. section 1.401(a)(9)-8, Q&A-14 and Q&A-15, shall apply.

(g)    Transition Rules.

(1)    For plans in existence before 2003, required minimum distributions before 2003 were made pursuant to Subsection (f), if applicable, and Subsections (g)(2) through (g)(4) below.

(2)    2000 and Before. Required minimum distributions for calendar years after 1984 and before the effective dates of superseding regulations specified in Subsections (g)(3) and (g)(4) were made in accordance with Code section 401(a)(9) and the proposed regulations thereunder published in the Federal Register on July 27, 1987 (the "1987 Proposed Regulations").

(3)    Proposed Regulations. No required minimum distributions were made pursuant to the proposed regulations under Code section 401(a)(9) published in the Federal Register on January 17, 2001.

CONFIDENTIAL

(4)     Final Regulations. Effective in 2003, required minimum distributions were made pursuant to the Final and Temporary regulations under Code section 401(a)(9) published in the Federal Register on April 17, 2002.

(h)     Application of Five Year Rule.

(1)     To the extent permitted in Section 7.02(b), if the Participant dies before distributions are required to begin and there is a designated beneficiary, distributions to the designated beneficiary are not required to begin by the date specified in Subsection (b)(2), but the Participant's entire interest may be distributed to the designated beneficiary by December 31 of the calendar year containing the fifth anniversary of the Participant's death. If the Participant's surviving spouse is the Participant's sole designated beneficiary and the surviving spouse dies after the Participant but before distributions to either the Participant or the surviving spouse begin, this election will apply as if the surviving spouse were the Participant.

(2)     To the extent permitted in Section 7.02(b), Participants or beneficiaries may elect on an individual basis whether the 5-year rule or the life expectancy rule in Subsections (b)(2), (d)(2) and (h)(1) applies to distributions after the death of a Participant who has a designated beneficiary. The election must be made no later than the earlier of September 30 of the calendar year in which distributions would be required to begin under Subsections (b)(2), or by September 30 of the calendar year which contains the fifth anniversary of the Participant's (or, if applicable, surviving spouse's) death. If neither the Participant nor beneficiary makes an election under this paragraph, distributions will be made in accordance with Subsections (b)(2), (d)(2) and (h)(1).

Section 7.06   DIRECT ROLLOVERS

(a)     In General.  This Section applies to distributions made after December 31, 2001. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this part, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution that is equal to at least $200 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner) paid directly to an eligible retirement plan specified by the distributee in a direct rollover. If an eligible rollover distribution is less than $500 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner), a distributee may not make the election described in the preceding sentence to roll over a portion of the eligible rollover distribution.

(b)     Definitions.

(1)     Eligible Rollover Distribution. An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any

CONFIDENTIAL

distribution to the extent such distribution is required under Code section 401(a)(9); any hardship distribution; the portion of any other distribution(s) that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and any other distribution(s) that is reasonably expected to total less than $200 during a year.

A portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code section 408(a) or (b), or to a qualified defined contribution plan described in Code section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(2)    Eligible Retirement Plan. An eligible retirement plan is an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan, an individual retirement account described in Code section 408(a), individual retirement annuity described in Code section 408(b), an annuity plan described in Code section 403(a), an annuity contract described in Code section 403(b), or a qualified plan described in Code section 401(a), that accepts the distributee's eligible rollover distribution. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in Code section 414(p).

If any portion of an eligible rollover distribution is attributable to payments or distributions from a Roth Elective Deferral Account, an eligible retirement plan shall only include another Roth elective deferral account under an applicable retirement plan described in Code section 402A(e)(1) or to a Roth IRA described in Code section 408A and only to the extent the rollover is permitted under the rules of Code section 402(c). The Plan will not provide for a direct rollover (including an automatic rollover) for distributions from a Participant's Roth Elective Deferral Account if the amount of the distributions that are eligible rollover distributions are reasonably expected to total less than $200 during a year. In addition, any distribution from a Participant's Roth Elective Deferral Account is not taken into account in determining whether distributions from a Participant's other Accounts are reasonably expected to total less than $200 during a year. The provisions of this Section that allow a Participant to elect a direct rollover of only a portion of an eligible rollover distribution but only if the amount rolled over is at least $500 are applied by treating any amount distributed from the Participant's Roth Elective Deferral Account as a separate distribution from any amount distributed from the Participant's other Accounts in the Plan, even if the amounts are distributed at the same time.

(3)    Distributee. A distributee includes an employee or former employee. In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code section 414(p), are distributees with regard to the interest of the spouse or former spouse.

CONFIDENTIAL                                                    WH_MDL_00025108

(4)    Direct Rollover.  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

(c)    Automatic Rollovers. In the event of a mandatory distribution greater than $1,000 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner) in accordance with the provisions of Section 7.03(a), if the Participant does not elect to have such distribution paid directly to an eligible retirement plan specified by the Participant in a direct rollover or to receive the distribution directly in accordance with Section 7.02, then the Plan Administrator will pay the distribution in a direct rollover to an individual retirement plan designated by the Plan Administrator. For purposes of determining whether a mandatory distribution is greater than $1,000, the portion of the Participant's distribution attributable to any rollover contribution is included. This Subsection (c) shall be effective for mandatory distributions made on or after March 28, 2005.

## Section 7.07    MINOR OR LEGALLY INCOMPETENT PAYEE

If a distribution is to be made to an individual who is either a minor or legally incompetent, the Plan Administrator may direct that such distribution be paid to the legal guardian.  If a distribution is to be made to such person and there is no legal guardian, payment may be made to: (i) a parent, (ii) a person holding a power of attorney; (iii) a person authorized to act on behalf of such person under state law, or (iv) the custodian for such person under the Uniform Transfer to Minors Act, if such is permitted by the laws of the state in which such minor resides.  Such payment shall fully discharge the Trustee, Plan Administrator, Trust Fund, and the Employer from further liability on account thereof.

## Section 7.08    MISSING PAYEE

If all or any portion of the distribution payable to a Participant or Beneficiary shall, for a period of more than five years after such distribution becomes payable, remain unpaid because the Plan Administrator has been unable to ascertain the whereabouts of the Participant or Beneficiary after sending a registered letter, return receipt requested, to the last known address of such Participant or Beneficiary, the amount so distributable shall be treated as a forfeiture under Article 6 hereof.  Notwithstanding the foregoing, if a claim is subsequently made by the Participant or Beneficiary for the forfeited benefit, such benefit shall be reinstated without any credit or deduction for earnings and losses.  Amounts forfeited from a Participant's Account under this Section shall be used to restore forfeitures, reduce Company contributions (or reallocate as Company contributions) made pursuant to Article 4 or to pay Plan expenses.

## Section 7.09    DISTRIBUTIONS UPON TERMINATION OF PLAN

Except as provided in Section 13.03, a Participant shall receive the balance of his Account in a lump sum payment upon termination of the Plan without the establishment of an alternative defined contribution plan (as described in Treas. Reg. section 1.401(k)-2(d)(4)) other than an employee stock ownership plan (as defined in Code section 4975(e) or Code section 409), a simplified employee pension plan (as defined in Code section 408(k)), a SIMPLE IRA

CONFIDENTIAL                                    WH_MDL_00025109

Plan (defined in Code section 408(p)), a plan or contract that satisfies the requirements of Code section 403(b), or a plan that is described in Code section 457(b) or (f).

CONFIDENTIAL                                                                                    WH_MDL_00025110

ARTICLE 8
INSERVICE DISTRIBUTIONS

<u>Section 8.01</u>    <u>TRANSFER ACCOUNT</u>

A Participant may receive a distribution from his Transfer Account as permitted under the terms of any plan from which funds in such Account were transferred to the extent that such optional forms of benefit must be preserved pursuant to Code section 411(d)(6).

CONFIDENTIAL                                                      WH_MDL_00025111

ARTICLE 9
INVESTMENT AND VALUATION OF TRUST FUND

Section 9.01    INVESTMENT OF ASSETS

All existing assets of the Trust Fund and all future contributions shall be invested in accordance with the terms of this Article 9. All assets of the Trust Fund may be commingled for investment purposes with the assets of any retirement plan which is maintained by the Company and which qualifies under Code section 401(a) and may be held as a single fund under one or more trust instruments; provided that the value of each plan's assets can be determined at any time. The assets allocable to each such plan shall in no event be used for the benefit of Participants in the other plans.

Section 9.02    POOLED ACCOUNTS

Except for segregated accounts specifically authorized under other provisions of this Plan, all assets shall be pooled for investment purposes, and there shall be no segregation for any Participant's Account.

Section 9.03    INDIVIDUAL ACCOUNTS

There shall be maintained on the books of the Plan with respect to each Participant, as applicable, an Elective Deferral Account, Rollover Contribution Account, Qualified Nonelective Contribution Account, Transfer Account and any other Account established by the Plan Administrator. Each such Account shall separately reflect the Participant's interest in the Trust Fund relating to such Account. Each Participant shall receive, at least annually, or as otherwise required, a statement of his Account. A Participant's interest in the Trust Fund shall be determined and accounted for based on his beneficial interest in such fund.

Section 9.04    QUALIFYING EMPLOYER INVESTMENTS

The Trustee may not invest the assets of the Trust Fund in "qualifying employer securities" or "qualifying employer real property" as those terms are defined in ERISA.

Section 9.05    ALLOCATION OF EARNINGS AND LOSSES

(a)    Reinvestment. The dividends, capital gains distributions, and other earnings received on the Trust Fund shall be allocated to such fund and reinvested.

(b)    Valuation. The assets of each Investment Fund shall be valued by the Trustee at their current fair market value as of each Valuation Date, and Accounts of each Participant with interests in that Investment Fund shall be credited with such Participant's allocable share of the earnings and losses of each Investment Fund since the immediately preceding Valuation Date. Such allocation shall be done on the basis of such Participant's interest in the applicable Investment Fund. For purposes of the allocation investment earnings and losses, the Plan

CONFIDENTIAL                                              WH_MDL_00025112

Administrator may adjust the value of interests of Investment Funds in Accounts as of the preceding Valuation Date to account for any contributions, distributions or withdrawals that occur after such preceding Valuation Date.

(c)    Allocation to Individual Accounts.  The Accounts of each Participant shall be adjusted as of each Valuation Date by: (i) reducing such Accounts by any distributions and withdrawals made therefrom since the preceding Valuation Date; (ii) increasing or reducing such Accounts by the Participant's share of earnings and losses and reasonable fees charged against such accounts at the direction of the Plan Administrator; and (iii) crediting such Accounts with any contributions made thereto since the preceding Valuation Date.

(d)    Allocation of Expenses.  The Plan Administrator may allocate all, none or any portion of the Plan's expenses to Participant Accounts.  When allocating expenses among Participant Accounts, the Plan Administrator may allocate such expenses using any reasonable method that does not violate Title I of ERISA and does not discriminate in favor of Highly Compensated Employees within the meaning of applicable provisions of Code section 401(a)(4).  Such methods may include, but not be limited to: (i) allocating expenses only to current or former employees (or among any other classification(s) of employees); (ii) allocating expenses directly to individual employees; (iii) allocating expenses using the per capita or pro rata method; and (iv) any combination of the foregoing.

(e)    Valuation for Distribution.  For the purposes of paying the amounts to be distributed to a Participant or Beneficiary pursuant to Articles 7 and 8, the value of the Participant's interest shall be determined in accordance with the provisions of this Article as of the Valuation Date related to the date benefits are paid.

(f)    No Rights Created by Allocation.  Any allocation of contributions or earnings to the separate Account of a Participant under this Article 9 shall not cause the Participant to have any right, title or interest in any assets of the Plan except at the time and under the terms and conditions expressly provided for in the Plan.

(g)    Dividends and Credits.  Any dividends or credits earned on insurance contracts will be allocated to the Participant's Account for whose benefit the contract is held.  No contract will be purchased under the Plan unless such contract or a separate definite written agreement between the Company and the insurer provides that no value under contracts providing benefits under the Plan or credits determined by the insurer (on account of dividends, earnings, or other experience rating credits, or surrender or cancellation credits) with respect to such contracts may be paid or returned to the Company or diverted to or used for other than the exclusive benefit of the Participants or their Beneficiaries.  However, any contribution made by the Company may be returned to the Company pursuant to Article 10.

Section 9.06    VOTING RIGHTS

A Participant shall not have the right to direct the Trustee as to the exercise of voting rights with respect to any Trust Fund investment.

CONFIDENTIAL                                                        WH_MDL_00025113

ARTICLE 10
TRUST FUND

## Section 10.01  TRUST FUND

(a)    Establishment of Trust Fund.  A trust is hereby established under the Plan and the Trustee will open and maintain a trust account for the Plan and, as part thereof, Participants' accounts for such individuals as the Company shall from time to time give written notice to the Trustee are Participants in the Plan.  The Trustee will accept and hold in the Trust Fund such contributions on behalf of Participants as it may receive from time to time from the Company, including amounts transferred by any prior trustee of the Plan, and such earnings, income and appreciation as may accrue thereon; less losses, depreciation and payments made by the Trustee to carry out the purposes of the Plan.  The Trust Fund shall be fully invested and reinvested in accordance with the applicable provisions of the Plan.

(b)    Exclusive Benefit.  All contributions made to the Plan are made for the exclusive benefit of the Participants and their Beneficiaries, and such contributions shall not be used for, nor diverted to, purposes other than for the exclusive benefit of the Participants and their Beneficiaries (including the costs of maintaining and administering the Plan and corresponding trust).

(c)    Return of Contributions.  Notwithstanding any other provision of the Plan: (i) as contributions made prior to the receipt of an initial determination letter are conditional upon a favorable determination as to the qualified status of the Plan under Code section 401(a), if the Plan receives an adverse determination with respect to its initial qualification, then any such contribution may be returned to the Company within one year after such determination, provided the application for determination is made by the time prescribed by law; (ii) contributions made by the Company based upon mistake of fact may be returned to the Company within one year of such contribution; (iii) as all contributions to the Plan are conditioned upon their deductibility under the Code, if a deduction for such a contribution is disallowed, such contribution may be returned to the Company within one year of the disallowance of such deduction; and (iv) after all liabilities under the Plan have been satisfied, the remaining assets of the Trust shall be distributed to the Company if such distribution does not contravene any provision of applicable law.

In the case of the return of a contribution due to mistake of fact or the disallowance of a deduction, the amount that may be returned is the excess of the amount contributed over the amount that would have been contributed had there not been a mistake or disallowance. Earnings attributable to the excess contributions may not be returned to the Company but losses attributable thereto must reduce the amount to be so returned.  Any return of contribution or distribution of assets made by the Trustee pursuant to this Section shall be made only upon the direction of the Company, which shall have exclusive responsibility for determining whether the conditions of such return or distribution have been satisfied and for the amount to be returned.

(d)    Assets Not Held by Trustee.  The Trustee shall not be responsible for any assets of the Plan that are held outside of the Trust Fund.  The Trustee is expressly hereby relieved of

CONFIDENTIAL                                                                                    WH_MDL_00025114

any responsibility or liability for any losses resulting to the Plan arising from any acts or omissions on the part of any insurance company holding assets outside of the Trust Fund. The Company shall serve as custodian for all promissory notes and related documents issued in connection with the Plan's participant loan program and the Company shall be responsible for the safekeeping of same.

(e)     Group Trust. In the event that the Trust is a part of any group trust (within the meaning of Internal Revenue Service Revenue Ruling 81-100): (i) participation in the Trust is limited to (x) individual retirement accounts which are exempt under Code section 408(e) and (y) pension and profit-sharing trusts which are exempt under Code section 501(a) by qualifying under Code section 401(a); (ii) no part of the corpus or income which equitably belongs to any individual retirement account or employer's trust may be used for or diverted to any purposes other than for the exclusive benefit of the individual or the employees, respectively, or their beneficiaries who are entitled to benefits under such participating individual retirement account or employer's trust; (iii) no part of the equity or interest in the Trust Fund shall be subject to assignment by a participating individual retirement account or employer's trust; and (iv) the Trustee shall maintain separate accounts for each Plan.

Section 10.02  DUTIES OF THE TRUSTEE

(a)     In General.  The Trustee is not a party to, and has no duties or responsibilities under the Plan, other than those that may be expressly contained in this Article. The Trustee shall have no duties, responsibilities or liability with respect to the acts or omissions of any prior trustee. The Trustee shall discharge its assigned duties and responsibilities under this Article and the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

(b)     Contributions.   The Trustee agrees to accept contributions that are paid to it by the Company (as well as rollover contributions and direct transfers from other eligible retirement plans) in accordance with the terms of this Article.  Such contributions shall be in cash or in such other form that may be acceptable to the Trustee. In-kind contributions of other than qualifying employer securities are permitted only in non-pension plans provided that the contribution is discretionary and unencumbered. Qualifying employer securities may be contributed to both pension and non-pension plans subject to the requirements of ERISA section 408(e). The Trustee shall have no duty to determine or collect contributions under the Plan and shall have no responsibility for any property until it is received by the Trustee.  The Company shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions to be made under the Plan, the transmittal of the same to the Trustee and compliance with any statute, regulation or rule applicable to contributions.

(c)     Distributions.  The Trustee shall make distributions out of the Trust Fund pursuant to instructions described in Section 10.05. The Trustee shall not have any responsibility or duty under this Article for determining that such are in accordance with the terms of the Plan and applicable law, including without limitation, the amount, timing or method of payment and the identity of each person to whom such payments shall be made.  The Trustee shall have no

CONFIDENTIAL                                                                                    WH_MDL_00025115

responsibility or duty to determine the tax effect of any payment or to see to the application of any payment. In making payments, the Company acknowledges that the Trustee is acting as a paying agent and not as the payor, for tax information reporting and withholding purposes. In the event that any dispute shall arise as to the persons to whom payment or delivery of any assets shall be made by the Trustee, the Trustee may withhold such payment or delivery until such dispute shall have been settled by the parties concerned or shall have been determined by a court of competent jurisdiction.

(d)    Records. The Trustee shall keep full and accurate accounts of all receipts, investments, disbursements and other transactions hereunder, including such specific records as may be agreed upon in writing between the Company and the Trustee. All such accounts, books and records shall be open to inspection and audit at all reasonable times by any authorized representative of the Company or the Plan Administrator. A Participant may examine only those individual account records pertaining directly to him.

(e)    Accounting. The Trustee shall file with the Plan Administrator a written account of the administration of the Trust Fund showing all transactions effected by the Trustee subsequent to the period covered by the last preceding account and all property held at the end of the accounting period. The Trustee shall use its best effort to file such written account within ninety (90) days, but not later than one hundred twenty (120) days after the end of each Plan Year. Upon approval of such accounting by the Plan Administrator, neither the Company nor the Plan Administrator shall be entitled to any further accounting by the Trustee. The Plan Administrator may approve such accounting by written notice of approval delivered to the Trustee or by failure to express objection to such accounting in writing delivered to the Trustee within six (6) months from the date on which the accounting is delivered to the Plan Administrator.

(f)    Participant Eligibility. The Trustee shall not be required to determine the facts concerning the eligibility of any Participant to participate in the Plan, the amount of benefits payable to any Participant or Beneficiary under the Plan, or the date or method of payment or disbursement. The Trustee shall be fully entitled to rely in good faith solely upon the written advice and directions of the Plan Administrator as to any such question of fact.

(g)    Indicia of Ownership. The Trustee shall not hold the indicia of ownership of any assets of the Trust Fund outside of the jurisdiction of the District Courts of the United States, unless in compliance with section 404(b) of ERISA and regulations thereunder.

(h)    Notice. The Trustee shall provide the Company with advance notice of any legal actions the Trustee may take with respect to the Plan and Trust and shall promptly notify the Company of any claim against the Plan and Trust.

(i)    Other Fiduciaries. The Trustee shall not be responsible for the acts or omissions of any other persons except as may be required by ERISA section 405.

CONFIDENTIAL                    WH_MDL_00025116

<u>Section 10.03</u>  <u>GENERAL INVESTMENT POWERS</u>

In addition to all powers and authority under common law, statutory authority and other provisions of this Article, the Trustee shall have the following powers and authorities to be exercised in accordance with and subject to the provisions of Section 10.04 hereof:

(a)    Invest and reinvest the Trust Fund in any property, real, personal or mixed, wherever situated, and whether situated, and whether or not productive of income or consisting of wasting assets, including, without limitation, common and preferred stock, bonds, notes, debentures, options, mutual funds, leaseholds, mortgages (including without limitation, any collective or part interest in any bond and mortgage or note and mortgage), certificates of deposit, and oil, mineral or gas properties, royalties, interests or rights (including equipment pertaining thereto), without being limited to the classes of property in which trustees are authorized by law or any rule of court to invest trust funds and without regard to the proportion any such property may bear to the entire amount of the Trust Fund;

(b)    Hold property in nominee name, in bearer form, or in book entry form, in a clearinghouse corporation or in a depository, so long as the Trustee's records clearly indicate that the assets held are a part of the Trust Fund and such property is held in conformance with DOL Reg. section 2550-403a-1(b);

(c)    Collect income payable to and distributions due to the Trust Fund and sign on behalf of the Trust any declarations, affidavits, certificates of ownership and other documents required to collect income and principal payments, including but not limited to, tax reclamations, rebates and other withheld amounts;

(d)    To sell, exchange, convey, transfer, grant options to purchase, or otherwise dispose of any securities or other property held by the Trustee.  No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition;

(e)    Pursuant to the terms of Section 10.06, to vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other property;

(f)    Take all action necessary to pay for authorized transactions or make authorized distributions, including exercising the power to borrow or raise monies from any lender, upon such terms and conditions as are necessary to settle such transactions or distributions;

CONFIDENTIAL                                                                                   WH_MDL_00025117

(g)    To keep such portion of the Trust Fund uninvested in cash or cash balances as the Trustee may, from time to time, deem to be in the best interests of the Plan, without liability for interest thereon;

(h)    To accept and retain for such time as the Trustee may deem advisable any securities or other property received or acquired as Trustee hereunder, whether or not such securities or other property would normally be purchased as investments hereunder;

(i)    To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(j)    To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Trust Fund, to commence or defend suits or legal or administrative proceedings, and to represent the Plan and/or Trust Fund in all suits and legal and administrative proceedings;

(k)    To invest in Treasury Bills and other forms of United States government obligations;

(l)    Deposit cash in accounts in the banking department of the Trustee or an affiliated banking organization;

(m)    To deposit monies in federally insured savings accounts or certificates of deposit in banks or savings and loan associations;

(n)    Invest and reinvest all or any portion of the Trust Fund collectively with funds of other retirement plan trusts exempt from tax under Code section 501(a), including, without limitation, the power to invest collectively with such other funds through the medium of one or more common, collective or commingled trust funds which have been or may hereafter be operated by the Trustee, the instrument or instruments establishing such trust fund or funds, as amended from time to time, being made part of this Trust so long as any portion of the Trust Fund shall be invested through the medium thereof;

(o)    Sell, either at public or private sale, option to sell, mortgage, lease for a term of years less than or continuing beyond the possible date of the termination of the Trust created hereunder, partition or exchange any real property which may from time to time constitute a portion of the Trust Fund, for such prices and upon such terms as it may deem best, and to make, execute and deliver to the purchasers thereof good and sufficient deeds of conveyance therefor and all assignments, transfers and other legal instruments, either necessary or convenient for the passing of the title and ownership thereof to the purchaser, free and discharged of all trusts and without liability on the part of such purchasers to see to the proper application of the purchase price;

(p)    Repair, alter, improve or demolish any buildings which may be on any real estate forming part of the Trust Fund or to erect entirely new structures thereon;

CONFIDENTIAL                                    WH_MDL_00025118

(q)     Renew, extend or participate in the renewal or extension of any mortgage, upon such terms as may be deemed advisable, and to agree to a reduction in the rate of interest on any mortgage or to any other modification or change in the terms of any mortgage or of any guarantee pertaining thereto, in any manner and to any extent that may be deemed advisable for the protection of the Trust Fund or the preservation of the value of the investment; to waive any default, whether in the performance of any covenant or condition of any mortgage or in the performance of any guarantee, or to enforce any such default in such manner and to such extent as may be deemed advisable; to exercise and enforce any and all rights of foreclosure, to bid on property in foreclosure, to take a deed in lieu of foreclosure with or without paying a consideration therefor, and in connection therewith to release the obligation on the bond or note secured by the mortgage; and to exercise and enforce in any action, suit or proceeding at law or in equity any rights or remedies in respect to any mortgage or guarantee;

(r)     Purchase any authorized investment at a premium or at a discount;

(s)     Establish, manage and administer a securities lending program on behalf of the Trust Fund, pursuant to which the Trustee shall have authority to cause any or all securities held in the Trust Fund to be lent to such one or more borrowers as the Trustee shall determine, in accordance with Prohibited Transaction Class Exemption 81-6. The Investment Fiduciary shall enter into a written agreement with the Trustee setting forth the terms and conditions of the Trustee's appointment, including without limitation the compensation to be paid to the Trustee for its services with respect to such securities lending program, in accordance with Prohibited Transaction Class Exemption 82-63;

(t)     To purchase any annuity contract; and

(u)     To do all such acts and exercise all such rights and privileges, although not specifically mentioned herein, as the Trustee may deem necessary to carry out the purposes of the Plan.

Section 10.04  OTHER INVESTMENT POWERS

(a)     Requirement for Preapproval. The powers granted the Trustee under Section 10.03 shall be exercised by the Trustee upon the written direction from the Investment Fiduciary pursuant to Sections 10.05 and 10.06. Any written direction of the Investment Fiduciary may be of a continuing nature, but may be revoked in writing by the Investment Fiduciary at any time. The Trustee shall comply with any direction as promptly as possible, provided it does not contravene the terms of the Plan or the provision of any applicable law. The Investment Fiduciary, by written direction, may require the Trustee to obtain written approval of the Investment Fiduciary before exercising such of its powers as may be specified in such direction. Any such direction may be of a continuing nature or otherwise and may be revoked in writing by the Investment Fiduciary at any time. The Trustee shall not be responsible for any loss that may result from the failure or refusal of the Investment Fiduciary to give any such required direction or approval.

CONFIDENTIAL                                                                 WH_MDL_00025119

(b)      Prohibited Transactions.  The Trustee shall not engage in any prohibited transaction within the meaning of the Code and ERISA.

(c)      Legal Actions.  The Trustee is authorized to execute all necessary receipts and releases and shall be under the duty to make efforts to collect such sums as may appear to be due (except contributions hereunder); provided, however, that the Trustee shall not be required to institute suit or maintain any litigation to collect the proceeds of any asset unless it has been indemnified to its satisfaction for counsel fees, costs, disbursements and all other expenses and liabilities to which it may in its judgment be subjected by such action.  Notwithstanding anything to the contrary herein contained, the Trustee is authorized to compromise and adjust claims arising out of any asset held in the Trust Fund upon such terms and conditions as the Trustee may deem just, and the action so taken by the Trustee shall be binding and conclusive upon all persons interested in the Trust Fund.

(d)      Retention of Advisors.  The Trustee, with the consent of the Investment Fiduciary, may retain the services of investment advisors to invest and reinvest the assets of the Trust Fund, as well as employ such legal, actuarial, medical, accounting, clerical and other assistance as may be required in carrying out the provisions of the Plan.  The Trustee may also appoint custodians, subcustodians or subtrustees as to part or all of the Trust Fund.

Section 10.05  INSTRUCTIONS

(a)      Reliance on Instructions.  Whenever the Trustee is permitted or required to act upon the directions or instructions of the Investment Fiduciary, Plan Administrator or Company, the Trustee shall be entitled to act in good faith upon any written communication signed by any person or agent designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company.  Such person or agent shall be so designated either under the provisions of the Plan or in writing by the Company and their authority shall continue until revoked in writing.  The Trustee shall incur no liability for failure to act in good faith on such person's or agent's instructions or orders without written communication, and the Trustee shall be fully protected in all actions taken in good faith in reliance upon any instructions, directions, certifications and communications believed to be genuine and to have been signed or communicated by the proper person.

(b)      Designation of Agent.

(1)      Company. The Company shall notify the Trustee in writing as to the appointment, removal or resignation of any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company.  After such notification, the Trustee shall be fully protected in acting in good faith upon the directions of, or dealing with, any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company until it receives notice to the contrary.  The Trustee shall have no duty to inquire into the qualifications of any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company.

CONFIDENTIAL                    WH_MDL_00025120

(2)    Trustee. If there is more than one Trustee, the Trustees may designate one or more of the Trustees to act on behalf of the Trustees. Such designated Trustee shall be authorized to take any and all actions and execute and deliver such documents as may be necessary or appropriate.

(c)    Procedures. The Trustee may adopt such rules and procedures as it deems necessary, desirable, or appropriate including, but not limited to: (i) taking action with or without formal meetings; and (ii) in the event that there is more than one Trustee, a procedure specifying whether action may be taken by a less than unanimous vote.

(d)    Payment of Benefits. The Trustee shall pay benefits and expenses from the Trust Fund only upon the written direction of the Plan Administrator. The Trustee shall be fully entitled to rely in good faith on such directions furnished by the Plan Administrator, and shall be under no duty to ascertain whether the directions are in accordance with the provisions of the Plan.

Section 10.06   INVESTMENT OF THE FUND

(a)    Investment Funds. The Investment Fiduciary shall have the exclusive authority and discretion to select the Investment Funds available for investment under the Plan. In making such selection, the Investment Fiduciary shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The available investments under the Plan shall be sufficiently diversified so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. The Investment Fiduciary shall notify the Trustee in writing of the selection of the Investment Funds currently available for investment under the Plan, and any changes thereto.

(b)    Participant Self-Direction. Participants shall not have the right to direct the investment of their Accounts.

(c)    Investment Managers.

(1)    Appointment of Investment Managers. The Investment Fiduciary may appoint one or more Investment Managers with respect to some or all of the assets of the Trust Fund as contemplated by section 402(c)(3) of ERISA. Any such Investment Manager shall acknowledge to the Investment Fiduciary in writing that it accepts such appointment and that it is an ERISA fiduciary with respect to the Plan and the Trust Fund. The Investment Fiduciary shall provide the Trustee with a copy of the written agreement (and any amendments thereto) between the Investment Fiduciary and the Investment Manager. By notifying the Trustee of the appointment of an Investment Manager, the Investment Fiduciary shall be deemed to certify that such Investment Manager meets the requirements of section 3(38) of ERISA. The authority of the Investment Manager shall continue until the Investment Fiduciary rescinds the appointment or the Investment Manager has resigned.

CONFIDENTIAL                                                                 WH_MDL_00025121

(2)    Separation of Duties.  The assets with respect to which a particular Investment Manager has been appointed shall be specified by the Investment Fiduciary and shall be segregated in a separate account for the Investment Manager (the "Separate Account") and the Investment Manager shall have the power to direct the Trustee in every aspect of the investment of the assets of the Separate Account.  The Trustee shall not be liable for the acts or omissions of an Investment Manager and shall have no liability or responsibility for acting pursuant to the direction of, or failing to act in the absence of, any direction from an Investment Manager, unless the Trustee knows that by such action or failure to act it would be itself committing a breach of fiduciary duty or participating in a breach of fiduciary duty by such Investment Manager, it being the intention of the parties that each party shall have the full protection of section 405(d) of ERISA.

(d)    Proxies.

(1)    Delivery of Information.  The Trustee shall deliver, or cause to be delivered, to the Company or Plan Administrator all notices, prospectuses, financial statements, proxies and proxy soliciting materials received by the Trustee relating to securities held by the Trust or, if applicable, deliver these materials to the appropriate Participant or the Beneficiary of a deceased Participant.

(2)    Voting. The Trustee shall not vote any securities held by the Trust except in accordance with the written instructions of the Company, the Investment Fiduciary, or if otherwise permitted in the Plan, the Participant or the Beneficiary of the Participant, if the Participant is deceased.  However, the Trustee may, in the absence of instructions, vote "present" for the sole purpose of allowing such shares to be counted for establishment of a quorum at a shareholders' meeting.  The Trustee shall have no duty to solicit instructions from Participants, Beneficiaries, the Investment Fiduciary or the Company.

(3)    Investment Manager.  To the extent not delegated to Participants pursuant to Subsection (b), the Investment Manager shall be responsible for making any proxy voting or tender offer decisions with respect to securities held in the Separate Account and the Investment Manager shall maintain a record of the reasons for the manner in which it voted proxies or responded to tender offers.

Section 10.07  COMPENSATION AND INDEMNIFICATION

(a)    Compensation.  The Trustee shall be entitled to reasonable compensation for its services as is mutually agreed upon with the Company; provided that such compensation does not result in a prohibited transaction within the meaning of the Code and ERISA.  If approved by the Plan Administrator, the Trustee shall also be entitled to reimbursement for all direct expenses properly and actually incurred on behalf of the Plan.  Such compensation or reimbursement shall be paid to the Trustee out of the Trust Fund unless paid directly by the Company.

(b)    Indemnification.  The Company shall indemnify and hold harmless the Trustee (and its delegates) from all claims, liabilities, losses, damages and expenses, including reasonable attorneys' fees and expenses, incurred by the Trustee in connection with its duties

CONFIDENTIAL                                        WH_MDL_00025122

hereunder to the extent not covered by insurance, except when the same is due to the Trustee's own gross negligence, willful misconduct, lack of good faith, or breach of its fiduciary duties under the Plan or ERISA.

Section 10.08  RESIGNATION AND REMOVAL

(a)     Resignation.  The Trustee may resign at any time by written notice to the Plan Administrator which shall be effective 60 days after delivery unless prior thereto a successor Trustee assumes the responsibilities of Trustee hereunder.

(b)     Removal. The Trustee may be removed by the Company at any time.

(c)     Successor Trustee.  The appointment of a successor Trustee hereunder shall be accomplished by and shall take effect upon the delivery to the resigning or removed Trustee, as the case may be, of written notice of the Company appointing such successor Trustee, and an acceptance in writing of the office of successor Trustee hereunder executed by the successor so appointed.  Any successor Trustee may be either a corporation authorized and empowered to exercise trust powers or one or more individuals.  All of the provisions set forth herein with respect to the Trustee shall relate to each successor Trustee so appointed with the same force and effect as if such successor Trustee had been originally named herein as the Trustee hereunder.  If within 45 days after notice of resignation shall have been given under the provisions of this Article a successor Trustee shall not have been appointed, the resigning Trustee or the Plan Sponsor may apply to any court of competent jurisdiction for the appointment of a successor Trustee.

(d)     Transfer of Trust Fund.  Upon the appointment of a successor Trustee, the resigning or removed Trustee shall transfer and deliver the Trust Fund to such successor Trustee, after reserving such reasonable amount as it shall deem necessary to provide for its expenses in the settlement of its account, the amount of any compensation due to it and any sums chargeable against the Trust Fund for which it may be liable.  If the sums so reserved are not sufficient for such purposes, the resigning or removed Trustee shall be entitled to reimbursement for any deficiency from the Plan Sponsor.

CONFIDENTIAL                                                          WH_MDL_00025123

ARTICLE 11
SPECIAL TOP-HEAVY RULES

Section 11.01  TOP-HEAVY STATUS

The special provisions set forth in this Article 11 shall apply during any Plan Year in which this Plan, together with any other retirement plans required to be aggregated under Code section 416(g) and the Treasury Regulations promulgated thereunder, is "Top-Heavy." This Plan is Top-Heavy for any Plan Year:

(a)     If the Top-Heavy Ratio for this Plan exceeds 60% and this Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans;

(b)     If this Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top-Heavy Ratio for the Required Aggregation Group of plans exceeds 60%; or

(c)     If this Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group of plans and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

Section 11.02  MINIMUM ALLOCATIONS

(a)     In General. In any Plan Year in which the Plan is Top-Heavy, the Company contributions and forfeitures allocated on behalf of any Participant who is employed by the Employer on the last day of the Plan Year shall not be less than the lesser of three percent (3%) of such Participant's Testing Compensation or in the case where the Employer has no defined benefit plan which designates this Plan to satisfy Code section 416, the largest percentage of Company contributions (including Elective Deferrals) and forfeitures, as a percentage of Key Employee's Testing Compensation, as limited by Code section 401(a)(17), allocated on behalf of any Key Employee for that Plan Year. The minimum allocation is determined without regard to any Social Security contribution. This minimum allocation shall be made even though, under other Plan provisions, the Participant would not otherwise be entitled to receive an allocation, or would have received a lesser allocation for the Plan Year because of (i) the Participant's failure to complete 1,000 Hours of Service (or any equivalent provided in the Plan), (ii) the Participant's failure to make mandatory employee contributions to the Plan, or (iii) compensation less than a stated amount. Except as provided in Paragraphs (b) and (d) below, neither Elective Deferrals nor Matching Contributions may be taken into account for the purpose of satisfying the minimum top-heavy contribution requirement.

(b)     Matching Contributions. Employer matching contributions may be taken into account for purposes of satisfying the minimum contribution requirements of Code section 416(c)(2) and the Plan. The preceding sentence shall apply with respect to matching contributions under the Plan or, if the Plan provides that the minimum contribution requirement shall be met in another plan, such other plan. Employer matching contributions that are used to

CONFIDENTIAL                                                                 WH_MDL_00025124

satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m).

(c)    Contributions Under Other Plans.  The minimum allocation requirement discussed in Subsection 11.02(a) may be met solely or partially in another plan. If the minimum allocation requirement of this Section 11.02 for any Plan Year is met partially in another plan, this Plan may offset the minimum required allocation in Subsection 11.02(a) by the amount allocated in or the benefit accrued in the other plan.

(d)    The top-heavy requirements of Code section 416 and this Section shall not apply in any year beginning after December 31, 2001, in which the Plan consists solely of a cash or deferred arrangement which meets the requirements of Code section 401(k)(12) and matching contributions with respect to which the requirements of Code section 401(m)(11) are met.

Section 11.03  MINIMUM VESTING

(a)    For any Plan Year in which this Plan is Top-Heavy, the following vesting schedule shall automatically apply to the Plan to the extent that it is more favorable than the vesting schedule provided for in Article 6:

| Years of Vesting Service | Vesting Percentage |
|---|---|
| Less than Two Years | 0% |
| Two Years but less than Three Years | 20% |
| Three Years but less than Four Years | 40% |
| Four Years but less than Five Years | 60% |
| Five Years but less than Six Years | 80% |
| Six or More Years | 100% |

(b)    The minimum vesting schedule applies to all benefits within the meaning of Code section 411(a)(7) except those attributable to employee contributions or those already subject to a vesting schedule which vests at least as rapidly as the schedule listed above, including benefits accrued before the effective date of Code section 416 and benefits accrued before the Plan became Top-Heavy.  Further, no decrease in a Participant's nonforfeitable percentage may occur in the event the Plan's status as Top-Heavy changes for any Plan Year.  However, this Section does not apply to the account balances of any Employee who does not have an hour of service after the Plan initially became Top-Heavy and such Employee's Account balance attributable to Company contributions and forfeitures will be determined without regard to this Section.  The minimum allocation required (to the extent required to be nonforfeitable under Code section 416(b)) may not be forfeited under Code sections 411(a)(3)(B) or 411(a)(3)(D).

CONFIDENTIAL                                    WH_MDL_00025125

ARTICLE 12
PLAN ADMINISTRATION

Section 12.01  PLAN ADMINISTRATOR

(a)    Designation.  The Plan Administrator shall be the Plan Sponsor.  The Plan Sponsor may subsequently designate other persons to serve as Plan Administrator.

(b)    Authority and Responsibility of the Plan Administrator.  The Plan Administrator shall be the Plan "administrator" as such term is defined in section 3(16) of ERISA, and as such shall have total and complete discretionary power and authority:

(i)    to make factual determinations, to construe and interpret the provisions of the Plan, to correct defects and resolve ambiguities and inconsistencies therein and to supply omissions thereto.  Any construction, interpretation or application of the Plan by the Plan Administrator shall be final, conclusive and binding;

(ii)    to determine the amount, form or timing of benefits payable hereunder and the recipient thereof and to resolve any claim for benefits in accordance with this Article 12;

(iii)    to determine the amount and manner of any allocations and/or benefit accruals hereunder;

(iv)    to maintain and preserve records relating to Participants, former Participants, and their Beneficiaries and Alternate Payees;

(v)    to prepare and furnish to Participants, Beneficiaries and Alternate Payees all information and notices required under applicable law or the provisions of this Plan;

(vi)    to prepare and file or publish with the Secretary of Labor, the Secretary of the Treasury, their delegates and all other appropriate government officials all reports and other information required under law to be so filed or published;

(vii)    to approve and enforce any loan hereunder including the repayment thereof;

(viii)    to provide directions to the Trustee with respect to the purchase of life insurance, methods of benefit payment, valuations at dates other than regular Valuation Dates and on all other matters where called for in the Plan or requested by the Trustee;

(ix)    to hire such professional assistants and consultants as it, in its sole discretion, deems necessary or advisable; and shall be entitled, to the extent permitted by law, to rely conclusively on all tables, valuations, certificates, opinions and reports which are furnished by same

CONFIDENTIAL                                        WH_MDL_00025126

(x)    to determine all questions of the eligibility of Employees and of the status of rights of Participants, Beneficiaries and Alternate Payees;

(xi)    to arrange for bonding, if required by law;

(xii)    to adjust Accounts in order to correct errors or omissions;

(xiii)    to determine whether any domestic relations order constitutes a Qualified Domestic Relations Order and to take such action as the Plan Administrator deems appropriate in light of such domestic relations order;

(xiv)    to retain records on elections and waivers by Participants, their spouses and their Beneficiaries and Alternate Payees;

(xv)    to supply such information to any person as may be required;

(xvi)    to establish, revise from time to time, and communicate to the Trustee and/or the Investment Fiduciary and Investment Manager(s), a funding policy and method for the Plan; and

(xvii)    to perform such other functions and duties as are set forth in the Plan that are not specifically given to the Investment Fiduciary or Trustee.

(c)    Procedures. The Plan Administrator may adopt such rules and procedures as it deems necessary, desirable, or appropriate for the administration of the Plan. When making a determination or calculation, the Plan Administrator shall be entitled to rely upon information furnished to it. The Plan Administrator's decisions shall be binding and conclusive as to all parties.

(d)    Allocation of Duties and Responsibilities. The Plan Administrator may designate other persons to carry out any of his duties and responsibilities under the Plan.

Section 12.02 INVESTMENT FIDUCIARY

(a)    Designation. The Investment Fiduciary shall be the Trustee.

(b)    Authority and Responsibility of the Investment Fiduciary. The Investment Fiduciary shall have the following discretionary authority and responsibility:

(i)    to manage the investment of the Trust Fund;

(ii)    to appoint one or more Investment Managers;

(iii)    to hire such professional assistants and consultants as it, in its sole discretion, deems necessary or advisable;

CONFIDENTIAL    WH_MDL_00025127

(iv)    to establish, revise from time to time, and communicate to the Trustee and/or Investment Manager(s), an investment policy for the Plan; and

(v)    to supply such information to any person as may be required.

(c)    Procedures. The Investment Fiduciary may adopt such rules and procedures as it deems necessary, desirable, or appropriate in furtherance of its duties hereunder. When making a determination or calculation, the Investment Fiduciary shall be entitled to rely upon information furnished to it. The Investment Fiduciary's decisions shall be binding and conclusive as to all parties.

## Section 12.03    COMPENSATION OF PLAN ADMINISTRATOR AND INVESTMENT FIDUCIARY

The Plan Administrator and Investment Fiduciary shall serve without compensation for their services to the extent that such compensation would constitute a prohibited transaction within the meaning of the Code and ERISA.

## Section 12.04    PLAN EXPENSES

All direct expenses of the Plan, Trustee, Plan Administrator and Investment Fiduciary or any other person in furtherance of their duties hereunder shall be paid or reimbursed by the Company, and if not so paid or reimbursed, shall be proper charges to the Trust Fund and shall be paid therefrom.

## Section 12.05    ALLOCATION OF FIDUCIARY RESPONSIBILITY

A Plan fiduciary shall have only those specific powers, duties, responsibilities and obligations as are explicitly given him under the Plan and Trust Agreement. It is intended that each fiduciary shall not be responsible for any act or failure to act of another fiduciary. A fiduciary may serve in more than one fiduciary capacity with respect to the Plan.

## Section 12.06    INDEMNIFICATION

The Company shall indemnify and hold harmless any person serving as the Investment Fiduciary and/or Plan Administrator (and their delegates) from all claims, liabilities, losses, damages and expenses, including reasonable attorneys' fees and expenses, incurred by such persons in connection with their duties hereunder to the extent not covered by insurance, except when the same is due to such person's own gross negligence, willful misconduct, lack of good faith, or breach of its fiduciary duties under this Plan or ERISA.

## Section 12.07    CLAIMS PROCEDURES

(a)    Application for Benefits. A Participant or any other person entitled to benefits from the Plan (a "Claimant") may apply for such benefits by completing and filing a claim with the Plan Administrator. Any such claim shall be in writing and shall include all information and

CONFIDENTIAL                                    WH_MDL_00025128

evidence that the Plan Administrator deems necessary to properly evaluate the merit of and to make any necessary determinations on a claim for benefits.  The Plan Administrator may request any additional information necessary to evaluate the claim.

(b)    Timing of Notice of Denied Claim. The Plan Administrator shall notify the Claimant of any adverse benefit determination within a reasonable period of time, but not later than 90 days (45 days if the claim relates to a disability determination) after receipt of the claim. This period may be extended one time by the Plan for up to 90 days (30 additional days if the claim relates to a disability determination), provided that the Plan Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to the expiration of the initial review period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If the claim relates to a disability determination, the period for making the determination may be extended for up to an additional 30 days if the Plan Administrator notifies the Claimant prior to the expiration of the first 30-day extension period.

(c)    Content of Notice of Denied Claim.  If a claim is wholly or partially denied, the Plan Administrator shall provide the Claimant with a written notice identifying (1) the reason or reasons for such denial, (2) the pertinent Plan provisions on which the denial is based, (3) any material or information needed to grant the claim and an explanation of why the additional information is necessary, and (4) an explanation of the steps that the Claimant must take if he wishes to appeal the denial including a statement that the Claimant may bring a civil action under ERISA.

(d)    Appeals of Denied Claim.  If a Claimant wishes to appeal the denial of a claim, he shall file a written appeal with the Plan Administrator on or before the 60th day (180th day if the claim relates to a disability determination) after he receives the Plan Administrator's written notice that the claim has been wholly or partially denied.  The written appeal shall identify both the grounds and specific Plan provisions upon which the appeal is based.  The Claimant shall be provided, upon request and free of charge, documents and other information relevant to his claim.  A written appeal may also include any comments, statements or documents that the Claimant may desire to provide.  The Plan Administrator shall consider the merits of the Claimant's written presentations, the merits of any facts or evidence in support of the denial of benefits, and such other facts and circumstances as the Plan Administrator may deem relevant. The Claimant shall lose the right to appeal if the appeal is not timely made.  The Plan Administrator shall ordinarily rule on an appeal within 60 days (45 days if the claim relates to a disability determination).  However, if special circumstances require an extension and the Plan Administrator furnishes the Claimant with a written extension notice during the initial period, the Plan Administrator may take up to 120 days (90 days if the claim relates to a disability determination) to rule on an appeal.

(e)    Denial of Appeal.  If an appeal is wholly or partially denied, the Plan Administrator shall provide the Claimant with a notice identifying (1) the reason or reasons for such denial, (2) the pertinent Plan provisions on which the denial is based, (3) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for

CONFIDENTIAL                                                      WH_MDL_00025129

benefits, and (4) a statement describing the Claimant's right to bring an action under section 502(a) of ERISA. The determination rendered by the Plan Administrator shall be binding upon all parties.

(f)      Determinations of Disability.  If the claim relates to a disability determination, determinations of the Plan Administrator shall include the information required under applicable United States Department of Labor regulations.

Section 12.08  WRITTEN COMMUNICATION

To the extent permitted by applicable Treasury and/or Department of Labor Regulations and accepted by the Plan Administrator, all provisions of the Plan and Trust that require written notices and elections shall be interpreted to mean authorized electronic and telephonic notices and elections.  Any notice made under the terms of the Plan may be made in any electronic or telephonic method.

Section 12.09  ADVISORY LETTER

The adopting employer may rely on an advisory letter issued by the Internal Revenue Service as evidence that the plan is qualified under Code section 401 only to the extent provided in Revenue Procedure 2005-16.  The employer may not rely on the advisory letter in certain other circumstances or with respect to certain qualification requirements, which are specified in the advisory letter issued with respect to the Plan and in Revenue Procedure 2005-16.  In order to have reliance in such circumstances or with respect to such qualification requirements, application for a determination letter must be made to Employee Plans Determinations of the Internal Revenue Service.

CONFIDENTIAL                                                                           WH_MDL_00025130

ARTICLE 13
AMENDMENT, MERGER AND TERMINATION

Section 13.01    AMENDMENT

The provisions of the Plan may be amended in writing at any time and from time to time by the Plan Sponsor, provided, however, that:

(a)    No amendment to the Plan shall be effective to the extent that it has the effect of decreasing a Participant's accrued benefit and no amendment shall increase the duties and liabilities of the Trustee without the Trustee's consent. Notwithstanding the preceding sentence, a Participant's Account balance may be reduced to the extent permitted under Code section 412(c)(8). For purposes of this Subsection, a Plan amendment which has the effect of decreasing a Participant's Account balance, with respect to benefits attributable to service before the amendment, shall be treated as reducing an accrued benefit.

No amendment to the Plan shall be effective to eliminate or restrict an optional form of benefit. The preceding sentence shall not apply to a plan amendment that eliminates or restricts the ability of a Participant to receive payment of his or her Account balance under a particular optional form of benefit if the amendment is permitted under applicable Treasury Regulations.

A Plan amendment may also provide exceptions from the general prohibition against the elimination or restriction of optional forms of benefit for in-kind distributions and elective transfers as specified under Treas. Reg. section 1.411(d)-4 Q&A 2 and 3.

(b)    Amendment by Volume Submitter Practitioner. The volume submitter practitioner may amend any part of the Plan on behalf of the adopting employer for changes in the Code, regulations, revenue rulings, other statements published by the Internal Revenue Service, including model, sample or other required good faith amendments, but only if their adoption will not cause the Plan to be individually designed, and for corrections of prior plans. The effective date of the ability of the volume submitter practitioner to amend the Plan shall be the first effective date of the first execution of this document.

The volume submitter practitioner will no longer have the authority to amend the Plan on behalf of any adopting employer as of either: (1) the date the Service requires the employer to file Form 5300 as an individually designed plan as a result of an employer amendment to the plan to incorporate a type of plan not allowable in the Volume Submitter program, as described in Rev. Proc. 2007-44 and Rev. Proc. 2005-16, or (2) as of the date the plan is otherwise considered an individually designed plan due to the nature and extent of the amendments. If the employer is required to obtain a determination letter for any reason in order to maintain reliance on an advisory letter, the volume submitter practitioner's authority to amend the plan on behalf of the adopting employer is conditioned on the plan receiving a favorable determination letter.

The volume submitter practitioner will maintain, or have maintained on its behalf, a record of the employers that have adopted the Plan, and such practitioner will make reasonable

CONFIDENTIAL                                    WH_MDL_00025131

and diligent efforts to ensure that adopting employers have actually received and are aware of all plan amendments and that such employers adopt new documents when necessary.

(c)    The Plan Sponsor may: (1) change the choice of optional language in the document; (2) add overriding language in the document when such language is necessary to satisfy Code sections 415 or 416 because of the required aggregation of multiple plans; (3) amend administrative provisions of the trust or custodial document and the name of any pooled trust in which the Plan's trust will participate; (4) add certain sample or model amendments published by the Internal Revenue Service or other required good faith amendments which specifically provide that their adoption will not cause the Plan to be treated as individually designed; and (5) add or change provisions permitted under the Plan and/or specify or change the effective date of a provision as permitted under the Plan and correct obvious and unambiguous typographical errors and/or cross-references that merely correct a reference but that do not in any way change the original intended meaning of the provisions.

(d)    If the Plan's vesting schedule is amended, in the case of an Employee who is a Participant as of the later of the date the amendment is adopted or the date it becomes effective, the nonforfeitable percentage (determined as of such date) of such Employee's employer-derived accrued benefit will not be less than the percentage computed under the Plan without regard to such amendment.

(e)    If the Plan's vesting schedule is amended, or the Plan is amended in any way that directly or indirectly affects the computation of the Participant's nonforfeitable percentage or if the Plan is deemed amended by an automatic change to or from a top-heavy vesting schedule, each Participant with at least 3 years of vesting service with the Employer may elect, within a reasonable period after the adoption of the amendment or change, to have the nonforfeitable percentage computed under the Plan without regard to such amendment or change. For Participants who do not have at least 1 hour of service in any plan year beginning after December 31, 1988, the preceding sentence shall be applied by substituting "5 years of vesting service" for "3 years of vesting service" where such language appears. The period during which the election may be made shall commence with the date the amendment is adopted or deemed to be made and shall end on the latest of:

(1)    60 days after the amendment is adopted;

(2)    60 days after the amendment becomes effective; or

(3)    60 days after the Participant is issued written notice of the amendment by the Plan Administrator.

The election provided for in this Section 13.01 shall be made in writing and shall be irrevocable when made.

(f)    Code section 411(d)(6) protected benefits will be available without regard to employer discretion in accordance with Treas. Reg. section 1.411(d)(4), Q & A's #8 & 9.

CONFIDENTIAL                    WH_MDL_00025132

Section 13.02  MERGER AND TRANSFER

(a)    Merger.  In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant shall have a benefit in the surviving or transferee plan (as if such plan were then terminated immediately after such merger, consolidation or transfer) that is equal to or greater than the benefit he would have had immediately before such merger, consolidation or transfer in the plan in which he was then a Participant had such plan been terminated at that time.

(b)    Transfer.  The Plan Administrator may direct the Trustee to accept assets and related liabilities from another qualified plan provided that it receives sufficient evidence that the transferor plan is a tax-qualified plan.  The Plan Administrator may direct the Trustee to transfer assets and related liabilities to another qualified plan provided that it receives sufficient evidence that the transferee plan is a tax-qualified plan.

Section 13.03  TERMINATION

(a)    It is the intention of the Plan Sponsor that this Plan will be permanent.  However, the Plan Sponsor reserves the right to terminate the Plan at any time for any reason.

(b)    Each entity constituting the Company reserves the right to terminate its participation in this Plan.  Each such entity constituting the Company shall be deemed to terminate its participation in the Plan if: (i) it is a party to a merger in which it is not the surviving entity and the surviving entity is not an affiliate of another entity constituting the Company; or (ii) it sells all or substantially all of its assets to an entity that is not an affiliate of another entity constituting the Company.

(c)    Any termination of the Plan shall become effective as of the date designated by the Plan Sponsor.  Except as expressly provided elsewhere in the Plan, prior to the satisfaction of all liabilities with respect to the benefits provided under this Plan, no termination shall cause any part of the funds or assets held to provide benefits under the Plan to be used other than for the benefit of Participants or to meet the administrative expenses of the Plan.  In the event of the termination or partial termination of the Plan the Account balance of each affected Participant will be nonforfeitable.  In the event of a complete discontinuance of contributions under the Plan, the Account balance of each affected Participant will be nonforfeitable.  Upon termination of the Plan, Participant Accounts shall be distributed in a single lump sum payment unless otherwise required pursuant to Article 7.

CONFIDENTIAL                                                                      WH_MDL_00025133

ARTICLE 14
MISCELLANEOUS

Section 14.01  NONALIENATION OF BENEFITS

(a)    Except as provided in Section 14.01(b), the Trust Fund shall not be subject to any form of attachment, garnishment, sequestration or other actions of collection afforded creditors of the Company, Participants or Beneficiaries under the Plan and all payments, benefits and rights shall be free from attachment, garnishment, trustee's process, or any other legal or equitable process available to any creditor of such Company, Participant or Beneficiary.  Except as provided in Section 14.01(b), no Participant or Beneficiary shall have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under the Plan, except the right to designate a Beneficiary.  Any reference to a Participant or Beneficiary shall include an Alternate Payee or the Beneficiary of an Alternate Payee.

(b)    Notwithstanding the foregoing, the Trustee and/or Plan Administrator may:

(1)    Subject to Section 14.02 below, comply with the provisions and conditions of any Qualified Domestic Relations Order pursuant to the provisions of Code section 414(p).

(2)    Comply with any federal tax levy made pursuant to Code section 6331.

(3)    Subject to the provisions of Code section 401(a)(13), comply with the provisions and conditions of a judgment, order, decree or settlement agreement issued on or after August 5, 1997 between the Participant and the Secretary of Labor or the Pension Benefit Guaranty Corporation relating to a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA.

(4)    Bring action to recover benefit overpayments.

Section 14.02  RIGHTS OF ALTERNATE PAYEES

(a)    General. An Alternate Payee shall have no rights to a Participant's benefit and shall have no rights under this Plan other than those rights specifically granted to the Alternate Payee pursuant to a Qualified Domestic Relations Order that are consistent with this Section 14.02.

(b)    Distribution.  Notwithstanding any provision of the Plan to the contrary, the Plan Administrator may direct the Trustee to distribute all or a portion of a Participant's benefits under the Plan to an Alternate Payee in accordance with the terms and conditions of a Qualified Domestic Relations Order.  The Plan hereby specifically permits and authorizes distribution of a Participant's benefits under the Plan to an Alternate Payee in accordance with a Qualified Domestic Relations Order prior to the date the Participant has a Termination of Employment, or

CONFIDENTIAL                                                                      WH_MDL_00025134

prior to the date the Participant attains his earliest retirement age as defined in Code section 414(p).

(c)     Investment Funds.  If the Qualified Domestic Relations Order does not specify the Participant's Accounts, or Investment Funds in which such Accounts are invested, from which amounts that are separately accounted for shall be paid to an Alternate Payee, such amounts shall be distributed, or segregated, from the Participant's Accounts, and the Investment Funds in which such Accounts are invested (excluding any amounts invested as a Participant loan), on a pro rata basis.  A Qualified Domestic Relations Order may not provide for the assignment to an Alternate Payee of an amount that exceeds the balance of the Participant's vested Accounts after deduction of any outstanding loan.

(d)     Default Rules.  Unless a Qualified Domestic Relations Order provides to the contrary:

(1)     Death Benefits.  An Alternate Payee shall have the right to designate a Beneficiary who shall receive benefits payable to an Alternate Payee which have not been distributed at the time of the Alternate Payee's death.  If the Alternate Payee does not designate a Beneficiary, or if the Beneficiary predeceases the Alternate Payee, benefits payable to the Alternate Payee which have not been distributed shall be paid to the Alternate Payee's estate.  Any death benefit payable to the Beneficiary of an Alternate Payee shall be paid in a single sum as soon as administratively practicable after the Alternate Payee's death.

(2)     Investment Direction.  An Alternate Payee shall have the right to direct the investment of any portion of a Participant's Accounts payable to the Alternate Payee under such order in the same manner with respect to a Participant, which amounts shall be separately accounted for by the Trustee in the Alternate Payee's name.

(3)     Voting Rights.  An Alternate Payee shall have the right to direct the Trustee as to the exercise of voting rights in the same manner as provided with respect to a Participant.

(e)     Withdrawals/Loans. An Alternate Payee shall not be permitted to make any withdrawals under Article 8 and shall not be permitted to make a loan from the separate account established for the Alternate Payee pursuant to the Qualified Domestic Relations Order.

(f)     Treatment as Spouse.  A former spouse may be treated as the spouse or surviving spouse and a current spouse will not be treated as the spouse or surviving spouse to the extent provided under a Qualified Domestic Relations Order.

(g)     Plan Procedures.  The Plan Administrator shall be responsible for establishing reasonable procedures for determining whether any domestic relations order received with respect to the Plan qualifies as a Qualified Domestic Relations Order, and for administering distributions in accordance with the terms and conditions of such procedures and any Qualified Domestic Relations Order.

CONFIDENTIAL                    WH_MDL_00025135

Section 14.03  NO RIGHT TO EMPLOYMENT

Nothing contained in this Plan shall be construed as a contract of employment between the Employer and the Participant, or as a right of any Employee to continue in the employment of the Employer, or as a limitation of the right of the Employer to discharge any of its Employees, with or without cause.

Section 14.04  NO RIGHT TO TRUST ASSETS

No Employee, Participant, former Participant, Beneficiary or Alternate Payee shall have any rights to, or interest in, any assets of the Trust upon termination of employment or otherwise, except as specifically provided under the Plan.  All payments of benefits under the Plan shall be made solely out of the assets of the Trust.

Section 14.05  GOVERNING LAW

This Plan shall be construed in accordance with and governed by the laws of New York to the extent not preempted by Federal law.

Section 14.06  SEVERABILITY OF PROVISIONS

If any provision of the Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and the Plan shall be construed and enforced as if such provisions had not been included.

Section 14.07  HEADINGS AND CAPTIONS

The headings and captions herein are provided for reference and convenience only, shall not be considered part of the Plan, and shall not be employed in the construction of the Plan.

Section 14.08  GENDER AND NUMBER

Except where otherwise clearly indicated by context, the masculine and the neuter shall include the feminine and the neuter, the singular shall include the plural, and vice-versa.

CONFIDENTIAL                                                            WH_MDL_00025136

IN WITNESS WHEREOF, the parties have caused this Plan to be executed this 1st

day of ___July___, 2014.

ROADCRAFT TECHNOLOGIES LLC:

Signature: _____

Print Name: _Ronald Altbach_

Title/Position: _manager_

TRUSTEE:

_____
Ronald Altbach

73

CONFIDENTIAL

WH_MDL_00025137

## POST EGTRRA ADDENDUM

This Addendum to the Plan is adopted to reflect the provisions of applicable law and the applicable regulations that are generally effective after December 31, 2006 ("Applicable Law"). This Addendum is intended as good faith compliance with the requirements of Applicable Law and is to be construed in accordance with same. This Addendum and the provisions of Applicable Law shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this Addendum and Applicable Law.

Except as expressly provided herein, this Addendum shall be effective for Plan Years beginning on or after January 1, 2007. Any effective dates specified herein shall be modified to the extent necessary to comply with any superseding guidance.

**STANDARD PROVISIONS:**

A. <u>Annual Addition Limitations</u>. Except as otherwise expressly provided, this Paragraph shall be effective for limitation years beginning on or after July 1, 2007.

1. Any correction methods for excess annual additions set forth in the Plan that were allowed pursuant to the prior version of Treas. Reg. 1.415-6(b)(6) shall not apply. However, the Plan may be eligible for self-correction under Rev. Proc. 2006-27, 2006-22 I.R.B. 945 and any superseding guidance.

2. Restorative payments allocated to a participant's account, which include payments made to restore losses to the Plan resulting from actions (or a failure to act) by a fiduciary for which there is a reasonable risk of liability under Title I of ERISA or under other applicable federal or state law, where similarly situated participants are similarly treated, shall not give rise to an annual addition for any limitation year.

3. The Plan's definition of compensation for a year that is used for purposes of Code section 415 may not reflect compensation for a year greater than the limit under Code section 401(a)(17) that applies to that year.

4. If the Plan uses a definition of compensation for purposes of Code section 415 under prior regulations that included only those items specified in Treas. Reg. section 1.415-2(d)(2)(i) and excluding all of those items listed in Treas. Reg. section 1.415-2(d)(3), the definition shall be revised to indicate that compensation for such purposes means all items of remuneration described in Treas. Reg. 1.415(c)-2(b), and excluding the items of remuneration described in Treas. Reg. 1.415(c)-2(c).

5. "Post Year End Compensation" means amounts earned during a year but not paid during that year solely because of the timing of pay periods and pay dates if: (i) these amounts are paid during the first few weeks of the next year; (ii) the

CONFIDENTIAL                                        WH_MDL_00025138

amounts are included on a uniform and consistent basis with respect to all similarly situated Employees; and (iii) no compensation is included in more than one year.

6.    "Post Severance Compensation" means amounts paid by the later of: (1) 2-1/2 months after an employee's severance from employment with the employer maintaining the plan or (2) the end of the limitation year that includes the date of severance from employment with the employer maintaining the plan; and those amounts would have been included in the definition of compensation if they were paid prior to the employee's severance from employment with the employer maintaining the plan. However the payment must be for (a) unused accrued bona fide sick, vacation, or other leave, but only if the employee would have been able to use the leave if the employee had continued in employment; or (b) received by an employee pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid to the employee at the same time if the employee had continued in employment with the employer and only to the extent that the payment is includible in the employee's gross income.

7.    Compensation shall include other compensation paid by the later of: (1) 2-1/2 months after an employee's severance from employment with the employer maintaining the plan or (2) the end of the limitation year that includes the date of the employee's severance from employment with the employer maintaining the plan if: (a) the payment is regular compensation for services during the employee's regular working hours, or compensation for services outside the employee's regular working hours (e.g., overtime or shift differential), commissions, bonuses, or other similar payments; and (b) the payment would have been paid to the employee prior to a severance from employment if the employee had continued in employment with the employer.

The exclusions from compensation for payments after severance from employment do not apply to payments to an individual who does not currently perform services for the employer by reason of qualified military service (as that term is used in Code section 414(u)(1)) to the extent those payments do not exceed the amounts the individual would have received if the individual had continued to perform services for the employer rather than entering qualified military service. To the extent provided in the Plan, compensation shall include compensation paid to a participant who is permanently and totally disabled.

B.    <u>Protected Benefits</u>. This Paragraph is effective for plan amendments adopted after August 9, 2006 (periods beginning on or after June 7, 2004 relating to suspension of benefit payments).

1.    Except as provided in Paragraph **B.2**, a plan amendment may not decrease a participant's accrued benefits, or otherwise place greater restrictions or conditions on a participant's rights to Code section 411(d)(6) protected benefits, even if the

CONFIDENTIAL                    WH_MDL_00025139

amendment merely adds a restriction or condition that is permitted under the vesting rules in Code section 411(a)(3) through (11).

    2.    An amendment described in Paragraph **B.1** does not violate Code section 411(d)(6) to the extent: (i) it applies with respect to benefits that accrue after the applicable amendment date; or (ii) the plan amendment changes the Plan's vesting computation period and it satisfies the applicable requirements under 29 CFR 2530.203-2(c).

**C.**    <u>Mid-Year Roth</u>. The Plan shall not fail to satisfy the requirements to be a Code section 401(k) safe harbor plan merely because of mid-year changes to implement a qualified Roth contribution program (as defined in Code section 402A) or the hardship withdrawals described in part III of Notice 2007-7.

**CONFIDENTIAL**      **WH_MDL_00025140**

## PPA AMENDMENT ADDENDUM

This Addendum to the Plan is adopted to reflect the provisions of the Pension Protection Act of 2006 (the "PPA"), the Worker, Retiree and Employer Recovery Act (the "WRERA") and certain other provisions of applicable law and the applicable regulations that are generally effective after December 31, 2006 ("Applicable Law"). This Addendum is intended as good faith compliance with the requirements of the PPA and Applicable Law and is to be construed in accordance with same. This Addendum and the provisions of Applicable Law shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this Addendum, PPA and Applicable Law.

## A. OPTIONAL PROVISIONS:

### QACA Provisions

**1a.** If this is a 401(k) or 403(b) plan, does the Plan provide for a safe-harbor qualified automatic contribution arrangement (QACA) exempt from most testing under Code section 401(k)(13) and/or 401(m)(12) (Paragraph B.2)?
**i.** [ ] Yes - QACA safe harbor match.
**ii.** [ ] Yes - QACA 3% nonelective contribution.
**iii.** [ X ] No.
**NOTE:** See **A.5** below if the Plan is also an eligible automatic contribution arrangement (EACA).
**NOTE:** If **A.1a.i** is selected (the Plan has a QACA safe harbor match), complete **A.1b - A.9** (but not **A.4**).
**NOTE:** If **A.1a.ii** is selected (the plan has a QACA 3% nonelective safe harbor), complete **A.1b – 5** and **A.8-9**.
**1b.** If **A.1a.i** or **A.1a.ii** is selected, indicate the safe harbors the Plan is intended to satisfy:
**i.** [ ] ADP (Code section 401(k)(13)) and ACP (Code section 401(m)(12))
**ii.** [ ] ADP (Code section 401(k)(13)) only
**NOTE:** If **A.1b.ii** (ADP only) is selected, the Plan will not be subject to any of the conditions and/or limitations that apply to the ACP safe harbor of Code section 401(m)(12).
**NOTE:** If **A.1b.i** (ADP and ACP) is selected and **A.1a.ii** (QACA nonelective), review the notes under **A.6-7**.
**NOTE:** If **A.1a.i** or **A.1a.ii** is selected and the Plan is a Full Scope 403(b) plan, the Plan is intended to meet the ACP safe harbor only.
**2.** If **A.1a.i** or **A.1a.ii** is selected, enter effective date of QACA safe harbor provisions: _____. (The effective date must be no earlier than the first day of the first Plan Year beginning on or after January 1, 2008 and otherwise comply with applicable IRS guidance.)
**NOTE:** A QACA safe harbor Plan Year must be twelve months long or at least three months long if it is the first Plan Year of a newly established plan. If a cash or deferred arrangement is added to an existing plan, the cash or deferred arrangement (and safe harbor features) must be effective no later than three months prior to the end of the Plan Year.

CONFIDENTIAL                                                        **WH_MDL_00025141**

**3a.** If **A.1a.i** or **A.1a.ii** is selected (QACA), enter the amount of the election for the initial period as a percentage of Compensation (between 3 - 10%): _____%.
**NOTE:** The initial period shall commence on the Participant's date of initial participation and end on the last day of the first Plan Year that begins after the date of initial participation.

**3b.** If **A.1a.i** or **A.1a.ii** is selected (QACA), enter the amount of the election for the first Plan Year after the initial period as a percentage of Compensation (between 4 - 10%): _____%.

**3c.** If **A.1a.i** or **A.1a.ii** is selected (QACA), enter the amount of the election for the second Plan Year after the initial period as a percentage of Compensation (between 5 - 10%): _____%.

**3d.** If **A.1.i** or **A.1.ii** is selected (QACA), enter the amount of the election for the third and subsequent Plan Years after the initial period as a percentage of Compensation (between 6 - 10%): _____%.

**3e.** If **A.1a.i** or **A.1a.ii** is selected (QACA), indicate whether the arrangement will apply to Participants who have an election in place with respect to Elective Deferrals prior to the effective date of the QACA:
[ ] Yes [ ] No
**NOTE:** Compensation must be a safe harbor definition of compensation as defined in Treas. Reg. section 1.401(k)-3(b)(2).

**4a.** If **A.1a.ii** (3% nonelective) is selected, safe harbor nonelective contributions will be made on behalf of:
**i.**    [ ] All Participants
**ii.**   [ ] Participants who are Nonhighly Compensated Employees
**iii.**  [ ] Participants who are Non-Key Employees
**iv.**   [ ] Participants who have met the greatest minimum age and service conditions permitted under Code section 410(a)(1)(A) before the first day of the seventh month of the Plan Year.
**v.**    [ ] Participants who have met the greatest minimum age and service conditions permitted under Code section 410(a)(1)(A) with semi-annual entry dates (first day of the first month and seventh month of the Plan Year).
**vi.**   [ ] Participants with the following age, service and entry date requirements:
_____.
**NOTE:** If **C.4a.iv** is selected, the plan will have an annual entry as of the first of the year and safe harbor contributions will be made based on compensation for the entire Plan Year.
**NOTE:** If **C.4a.iv - vi** is selected, the Plan must be tested in accordance with Section 5.03(g).
**NOTE:** Age, service and entry date requirements specified in **C.4a.vi** may not be greater than that required under Code section 410(a)(1)(A).

**4b.** If **A.1.ii** is selected (3% nonelective) and **A.4a.i** (all Participants) is selected, require service for Highly Compensated Employees to receive safe harbor nonelective contribution:
[ ] Yes [ ] No

**4c.** If **A.1.ii** is selected (3% nonelective), **A.4a.i** (all Participants) is selected and **A.4b** is "Yes", Hours of Service required in the applicable Plan Year for Highly Compensated

CONFIDENTIAL                                    WH_MDL_00025142

Employees to receive safe harbor nonelective contribution: _____ (Not more than 1,000. If left blank, the Plan will use 1,000 Hours of Service.)

**4d.** If **A.1.ii** is selected (3% nonelective), **A.4.a.i** (all Participants) is selected, require employment on the last day of Plan Year for Highly Compensated Employees to receive safe harbor nonelective contribution:
[ ] Yes [ ] No

## EACA Provisions

**5a.** If **A.1.a.i** or **A.1.a.ii** is selected (the Plan provides for automatic enrollment) or if the Plan otherwise provides for traditional automatic enrollment, does the Plan intend to be an eligible automatic contribution arrangement (EACA) (Paragraph **B.3.**)?
[ ] Yes [ ] No
**NOTE:** All employees eligible for Elective Deferrals must also be eligible for automatic contributions in order to qualify for the extended period for refunds of ADP/ACP testing failures. This means the automatic enrollment feature must apply to all participants (even those with an election in place to the extent that their Elective Deferral elections equal or are less than the automatic enrollment amount). If the Plan is a QACA (**A.1.a.iii** is not selected), **A.3e** must be "Yes" and if the Plan is a nonelective QACA (**A.1.a.ii** is selected), **A.4.a.i** must be selected, and **A.4b** and **A.4d** must be "No" (all participants eligible for an elective deferral must receive the automatic contribution) in order to qualify for the extended period for refunds of ADP/ACP testing failures.
**NOTE:** If the Plan has a traditional automatic enrollment contribution arrangement, the Plan must provide that the default contribution is a uniform percentage of compensation; although the percentage may vary based on years of service.

**5b.** If **A.5.a** is "Yes", enter effective date of EACA refunds _____. (The effective date must be no earlier than the first day of the first Plan Year beginning on or after January 1, 2008 and otherwise comply with applicable IRS guidance.)

## Matching - Service

**6.** **NOTE:** If the Plan is intended to be a safe harbor 401(k) plan by use of a safe harbor matching formula (**A.1.a.i** is selected) or the Plan is intended to satisfy the ACP safe harbor of Code section 401(m)(12) (**A.1.a.ii** is selected, **A.1.b.i** is selected and Matching contributions are allowed under the Plan) no requirements may be specified in the Plan to receive an allocation of Matching Contributions.

## Matching - Formula

**7.** The following Notes apply if the Plan is intended to be a safe harbor 401(k) plan by use of a safe harbor matching formula (**A.1.a.i** is selected) or the Plan is intended to satisfy the ACP safe harbor of Code section 401(m)(12) (**A.1.a.ii** is selected, **A.1.b.i** is selected and Matching contributions are allowed under the Plan):
**NOTE:** If **A.1.a.i** (QACA safe harbor match) is selected then the Plan must provide a formula that makes matching contributions in an amount equal to the sum of 100 percent of the elective contributions of the employee to the extent that such contributions do not

**CONFIDENTIAL**                                                    **WH_MDL_00025143**

exceed 1 percent of compensation plus 50 percent of so much of such contributions as exceed 1 percent but do not exceed 6 percent of compensation. In addition, the Plan Sponsor may also elect a Matching Contribution formula where: (i) the aggregate amount of Matching Contributions at each rate of Matched Employee Contributions is at least equal to the aggregate amount of Matching Contributions which would have been made if the Matching Contributions were made under the formula described in the preceding sentence, and (ii) the rate of Matching Contributions cannot increase as a Participant's Matched Employee Contributions increase.

**NOTE:** If **A.1a.i** (QACA safe harbor match) is selected or if the Plan is intended to satisfy the ACP safe harbor of Code section 401(m)(12), no Highly Compensated Employee can receive a greater rate of Matching Contributions than a Nonhighly Compensated Employee at the same rate of Matched Employee Contributions.

**NOTE:** If the Plan is intended to satisfy the ACP safe harbor of Code section 401(m)(12) (**A.1b.i** is selected): (i) the rate of Matching Contributions cannot increase as a Participant's Matched Employee Contributions increase, (ii) Matching Contributions cannot be made on Matched Employee Contributions in excess of six percent (6%) of Compensation, and (iii) the amount of Matching Contributions subject to the Company's discretion shall not exceed four percent (4%) of Compensation.

## QACA VESTING

**8.**  QACA (Non Elective and Match) Vesting Schedule. If this is a 401(k) or 403(b) plan and if **A.1a.iii** is not selected, specify the vesting schedule for contributions made pursuant to **A.1a.i** or **A.1a.ii**:
[ ] 100% [ ] 2 Year Cliff [ ] Other

**9a.**  Other QACA Schedule - less than 1 year: _____.
**9b.**  Other QACA Schedule - 1 year but less than 2 years: _____.
**9c.**  Other QACA Schedule - 2 or more years: 100%

## Vesting

**12a.**  PPA Vesting Schedule. If the Plan provides for Profit Sharing Contributions, the vesting schedule for Profit Sharing Contributions made with respect to Plan Years beginning on or after January 1, 2007 shall be:
[ ] 100% [ ] 2-6 Year Graded [ ] 1-5 Year Graded [ ] 1-4 Year Graded [ ] 3 Year Cliff [ ] 2 Year Cliff [ ] Other

**12b.**  If the Plan provides for Profit Sharing Contributions, retain prior Profit Sharing Vesting schedule for pre 2007 contributions:
[ ] Yes [ ] No
**NOTE:** If **A.12b** is "Yes", the PPA Vesting Schedule shall apply to Employer nonelective contributions for Plan Years beginning after December 31, 2006. If **A.12b** is "No", the PPA Vesting Schedule shall apply to Participants who complete at least one Hour of Service in a Plan Year beginning after December 31, 2006.

**13a.**  Other Profit Sharing Schedule - less than 1 year: _____
**13b.**  Other Profit Sharing Schedule - 1 year but less than 2 years: _____
**13c.**  Other Profit Sharing Schedule - 2 years but less than 3 years: _____

CONFIDENTIAL                                                    WH_MDL_00025144

**13d.**  Other Profit Sharing Schedule - 3 years but less than 4 years: _____
**13e.**  Other Profit Sharing Schedule - 4 years but less than 5 years: _____
**13f.**  Other Profit Sharing Schedule - 5 years but less than 6 years: _____
**13g.**  Other Profit Sharing Schedule - 6 or more years: 100%.
NOTE: If **A.12a** is "Other", then any vesting schedule described in **A.13** must provide vesting at least as rapidly as the "3 Year Cliff" vesting schedule or the "2-6 Year Graded" vesting schedule.

## Normal Retirement Age [Money Purchase or Target Plan Only]

**14a.**  Normal Retirement Age. It is necessary to amend the Plan to revise the definition of Normal Retirement Age:
[ ] Yes [ ] No
**14b.**  If **A.14a** is "Yes", Normal Retirement Age means:
   **i.**  [ ] Attainment of age _____.
   **ii.**  [ ] Later of attainment of Age _____ and the _____ anniversary of participation in the Plan.
**14c.**  If **A.14a** is "Yes", describe the Plan provisions that will prevent the Plan from violating the Code and ERISA: _____.
NOTE: Item **A.14c** must contain language to prevent the reduction of benefits that would cause the Plan to fail to satisfy Code section 411(d)(6), Code section 411(a)(9) (requiring that the normal retirement benefit not be less than the greater of any early retirement benefit payable under the Plan or the benefit under the Plan commencing at Normal Retirement Age), Code section 411(a)(10) (if the amendment changes the Plan's vesting rules), or Code section 4980F/ERISA section 204(h) (relating to amendments that reduce the rate of future benefit accrual). See Treas. Reg. 1.411(d)-4, Q&A-12.
NOTE: If the Plan permits inservice distributions after the attainment of Normal Retirement Age, the increase in the age component of Normal Retirement Age shall not be deemed a violation of Code section 411(d)(6) provided that the amendment is adopted after May 22, 2007 and before the end of the Plan's remedial amendment period.
**14d.**  If **A.14a** is "Yes", enter the effective date of change in the Normal Retirement Age: _____. (If the Normal Retirement Age was 55 or greater, and less than 62, must be after May 22, 2007 and no later than the first day of the first Plan year beginning after June 30, 2008).

## Inservice

**15a.**  If the Plan is a money purchase or target benefit plan, the Plan permits a distribution to be made to a Participant who has attained age 62 and who has not separated from employment:
   **i.**  [ ] Yes - under any distribution option offered to a Terminated Participant.
   **ii.**  [ ] Yes - limited to the following terms and conditions: _____.
   **iii.** [ ] No.
**15b.**  If **A.15a** is "Yes", the effective date shall be the first day of the first Plan Year beginning on or after: _____.
NOTE: May not be earlier than January 1, 2007.

CONFIDENTIAL                                                                WH_MDL_00025145

**16a.** If the Plan provides for in service withdrawals on account of Hardship and uses the safe harbor criteria for Hardship determinations, expand the Hardship criteria to include the Beneficiary of the Participant:

[ ] Yes [ ] No

**NOTE:** If **A.16a** is "Yes", Hardship distributions may be made for a primary Beneficiary for expenses described in Treas. Reg. sections 1.401(k)-1(d)(3)(iii)(B)(1), (3), or (5) (relating to medical, tuition, and funeral expenses, respectively). A "primary Beneficiary" is an individual who is named as a Beneficiary under the Plan and has an unconditional right to all or a portion of the Participant's Account Balance upon the death of the Participant.

**16b.** If the Plan provides for Hardship withdrawals, uses the safe harbor criteria for Hardship determinations and **A.16a** is "Yes", enter the effective date: _____.

**NOTE:** May not be earlier than August 17, 2006.

**17a.** If this is a 401(k) or 403(b) plan, permit Qualified Reservist Distributions:

[ ] Yes [ X ] No

**NOTE:** If **A.17a** is "Yes", a Participant may receive a distribution from amounts attributable to Elective Deferrals and catch-up contributions provided that: (i) such Participant was a member of a reserve component ordered or called to active duty for a period in excess of 179 days or for an indefinite period, (ii) such distribution is made during the period beginning on the date of such order or call and ending at the close of the active duty period, (iii) the Participant was ordered or called to active duty after September 11, 2001, and (iv) the distribution otherwise complies with Code section 72(t)(2)(G)(iii).

**17b.** If **A.17a** is "Yes", enter the effective date: _____.

**NOTE:** May not be earlier than September 11, 2001.

### Death or Disability During Qualified Military Service [HEART Act]

**18a.** For benefit accrual purposes, a Participant that dies or becomes Disabled while performing qualified military service will be treated as if he had been employed by the Company on the day preceding death or Disability and terminated employment on the day of death or Disability pursuant to Code section 414(u)(9) (Paragraph B.10):

[ ] Yes [ X ] No

**18b.** If **A.18a** is "Yes", enter the effective date: _____ (must be on or after January 1, 2007).

**NOTE:** If the Plan is a Limited Scope 403(b) Plan sponsored by a Non Profit Organization and the Plan is not a Church Plan and not a Governmental Plan, then the above benefit accruals are permitted only to the extent provided in the Individual Agreements.

### B. STANDARD PROVISIONS:

1. <u>Section 1004 PPA--Qualified Optional Survivor Annuity</u>. This Paragraph is effective for annuity starting dates in Plan Years beginning after December 31, 2007. To the extent that the Plan must offer a Qualified Joint and Survivor Annuity (QJSA), the Plan shall also offer a Qualified Optional Survivor Annuity (QOSA) as another optional form of

CONFIDENTIAL                                                                    WH_MDL_00025146

benefit. The QOSA shall be an annuity for the life of the Participant with a survivor annuity that is equal to the applicable percentage of the amount of the annuity that is payable during the joint lives of the Participant and the spouse, and that is the actuarial equivalent of a single life annuity for the life of the Participant. The survivor percentage of the QOSA shall be determined in accordance with the following:

A.     If the Plan provides for a specific QJSA survivor annuity percentage and such percentage is less than 75%, then the Plan's QOSA shall be 75%.

B.     If the Plan provides for a specific QJSA survivor annuity percentage and such percentage is greater than or equal to 75%, then the Plan's QOSA shall be 50%.

C.     If the Plan does not provide for a specific QJSA survivor annuity percentage, then the QJSA survivor annuity percentage shall be 50% and the QOSA survivor annuity percentage shall be 75%.

2.     <u>Section 902(a)-(c) PPA--Qualified Automatic Contribution Arrangement (QACA)</u>. This Paragraph is effective to the extent provided in the Optional Provisions.

A.     <u>Automatic Enrollment</u>. Upon the initial satisfaction of the Plan's eligibility requirements with respect to Elective Deferrals (and at the effective date of the addition of an automatic enrollment feature for current Participants) an Eligible Employee who has not made an Elective Deferral election (or to the extent provided in the Optional Provisions above under a qualified automatic contribution arrangement, all Eligible Employees) shall be deemed to have made an Elective Deferral election in the amount specified in the Optional Provisions; provided the following provisions are satisfied:

1.     In a reasonable period of time before the deemed election takes place, the Eligible Employee shall receive a notice that explains the automatic Elective Deferral election, his or her compensation reduction percentage and the individual's right to elect to have no such Elective Deferrals made to the Plan or to alter the amount of those contributions, including the procedure for exercising that right and the timing for implementation of any such election. The Eligible Employee may file an election to receive cash in lieu of Elective Deferrals up to the time such deemed election is made.

2.     The default election must be effective no later than the earlier of (i) the pay date for the second payroll period that begins after the date the notice is provided, or (ii) the first pay date that occurs at least 30 days after the notice is provided. Notwithstanding any delay in when the first default contribution is made, nonelective contributions that are based on a full year's contributions and the rate of matching contributions that varies based on Compensation must be based on Compensation earned since the participant was first eligible under the plan.

CONFIDENTIAL                                                                                          WH_MDL_00025147

3.     The Plan Administrator may, on a uniform and non-discriminatory basis, provide that applicable percentages shall be based on the number of years (or portions of years) since the beginning of the initial period for an Eligible Employee pursuant to Treas. Reg. 1.401(k)-3(j)(2)(iii)(A).

4.     If the Plan provides for Roth Elective Deferrals, all Elective Deferrals made under this section shall be designated as Pre-tax Elective Deferrals unless the Plan provides that Elective Deferrals under this section shall be designated as Roth Elective Deferrals.

5.     The rate of Elective Deferral contributions in effect for an employee immediately prior to the effective date of the default percentage under the qualified automatic contribution arrangement shall not be reduced.

**B.**     <u>Rehires</u>. The Plan Administrator may, on a uniform and non-discriminatory basis, provide that a new initial period shall begin for an Employee who is terminated for a full Plan Year and is rehired in a subsequent Plan Year.

**C.**     <u>Subsequent Elections</u>. The Plan Administrator may, on a uniform and non-discriminatory basis, provide that an affirmative election expires at the end of each Plan Year and that the Employee must make a new affirmative election if he or she wants the prior rate of elective contribution to continue.

**D.**     <u>Nonelective Contribution</u>. If the Optional Provisions specify that the Plan will satisfy the QACA 401(k) safe harbor provisions by making a nonelective contribution to the Plan, the Company shall make Qualified Nonelective Contributions to the Plan in an amount not less than three percent (3%) of Participants' Compensation on behalf of each Employee who is eligible to make Elective Deferrals during the Plan Year, and meets any additional requirements provided in the Optional Provisions. The Participant's interest in his Qualified Nonelective Contribution Account attributable to nonelective contributions made pursuant to this Paragraph shall vest based on his Years of Vesting Service in accordance with the terms of the Optional provisions.

**E.**     The Plan Administrator may apply the requirements of Treas. Reg. section 1.401(m)-2 by excluding Matching Contributions with respect to all Eligible Employees that do not exceed 3-1/2 percent of Compensation.

**F.**     Any required contributions shall be subject to the distribution restrictions applicable to Qualified Nonelective Contributions.

**G.**     <u>Top Heavy</u>. The top-heavy requirements of Code section 416 and this Section shall not apply in any year beginning after December 31, 2001 in which the Plan consists solely of a cash or deferred arrangement which meets the requirements of

CONFIDENTIAL                                                                                    WH_MDL_00025148

Code sections 401(k)(12) or 401(k)(13) and matching contributions with respect to which the requirements of Code sections 401(m)(11) or 401(m)(12) are met.

3.    <u>Section 902(d)-(e) PPA-- Eligible Automatic Contribution Arrangement (EACA)</u>. To the extent provided in the Optional Provisions, an Employee for whom elective contributions have been automatically made may elect to withdraw all of the contributions made on his or her behalf including earnings thereon to the date of the withdrawal. This withdrawal right is available only if the withdrawal election is made within 90 days after the date of the first contribution. Any Matching Contribution made with respect to the amount withdrawn (adjusted for allocable gains and losses) shall be forfeited. A withdrawal request will be treated as an affirmative election to stop having Elective Deferrals made unless the Employee affirmatively elects otherwise.

A.    <u>Election Period</u>. The Plan Administrator may, on a uniform and non-discriminatory basis, require an election period shorter than 90 days, provided that such election period be at least 30 days.

B.    <u>Treatment of Refunds</u>. Elective contributions refunded pursuant to this Paragraph and any related Matching Contributions forfeited, shall not be taken into account in determining an Employee's deferral or contribution percentages under the ADP and ACP tests, and shall be disregarded in determining limitations under Code section 402(g). Any amounts refunded under this Paragraph are not an eligible rollover contribution. No spousal consent is required for a refund under this Section.

C.    The provisions of this Paragraph are separately applied to each portion of the Plan after the application of the mandatory disaggregation rules or Code section 410(b).

D.    <u>Rehires</u>. The Plan Administrator may, on a uniform and non-discriminatory basis, for an Employee who is terminated for a full Plan Year and is rehired in a subsequent Plan Year provide that such Employee be treated as a new hire.

E.    <u>Fees</u>. The amount distributed may be reduced by fees pursuant to Treas. Reg. section 1.414(w)-1(c)(3)(ii).

F.    <u>Refund Deadline</u>. Effective for Plan Years beginning on or after January 1, 2010, the extended testing deadline of Code section 4979 shall apply only if all Employees eligible to make elective contributions are covered under the EACA for the entire Plan Year (or the portion of the Plan Year the Employees are Eligible Employees).

G.    <u>Covered Employees</u>. All Employees who make an affirmative election shall remain covered Employees within the meaning of Treas. Reg. section 1.414(w)-1(e)(3).

CONFIDENTIAL                                                                 WH_MDL_00025149

**H.** The provisions of this Paragraph are subject to any requirements under Code section 414(w), Code section 4979, the final Treasury Regulations issued February 24, 2009 and any corresponding guidance or regulations issued thereunder.

**4.** Section 902(e)(3) PPA--Refunds Due to Failed ADP/ACP Tests.

**A.** Excess Contributions. Effective for Plan Years beginning after December 31, 2007 (excess contributions distributed after December 31, 2008), the Plan shall not allocate gains and losses on distributions of excess contributions (as defined in Code section 401(k)(8)(B)) for the period after the end of the Plan Year in which such excess contributions arose.

**B.** Excess Aggregate Contributions. Effective for Plan Years beginning after December 31, 2007 (excess aggregate contributions distributed after December 31, 2008), the Plan shall not allocate gains and losses on distributions of excess aggregate contributions (as defined in Code section 401(m)(6)(B)) for the period after the end of the Plan Year in which such excess aggregate contributions arose.

**5.** Announcement 2007-59--Mid-Year Changes to Safe Harbor Plans. Mid-year changes to implement a qualified Roth contribution program under Code section 402A, or a hardship withdrawal under Part III of IRS Notice 2007-7 (relating to medical, tuition, and funeral expenses for a primary Beneficiary under the Plan) shall not cause a plan to fail to satisfy the safe harbor provisions of Code sections 401(k)(12) and/or 401(m)(11).

**6.** Section 824 PPA--Rollover to Roth IRA. Effective for distributions made after December 31, 2007, a Participant may roll over a distribution from the Plan to a Roth IRA provided that the amount rolled over is an eligible rollover distribution (as defined in Code section 402(c)(4)) and, pursuant to Code section 408A(d)(3)(A), there is included in gross income any amount that would be includible if the distribution were not rolled over.

**7.** Partial Plan Termination. In determining whether a partial plan termination has occurred, the Plan Administrator shall employ the analysis set forth in IRS Revenue Ruling 2007-43.

**8.** HEART Act -- Death Benefits Under USERRA. Effective January 1, 2007, if a Participant dies while performing qualified military service (as defined in Code section 414(u)), the survivors of the Participant are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service specified in Paragraph B.10 below) provided under the Plan as if the Participant had resumed and then terminated employment on account of death pursuant to Code section 401(a)(37).

**9.** HEART Act -- Differential Military Pay. Effective for Plan Years beginning after December 31, 2008, pursuant to Code section 414(u)(12), a Participant receiving differential wage payments (as defined in Code section 3401(h)(2)) shall be treated as an

CONFIDENTIAL

Employee of the Employer making the payment and the differential wage payments shall be treated as Compensation under the Plan.

**A.**     For purposes of Code sections 401(k)(2)(B)(i)(I), 403(b)(7)(A)(ii), 403(b)(11)(A), or 457(d)(1)(A)(ii), a Participant shall be treated as having terminated from employment during any period the Participant is performing services described in Code section 3401(h)(2)(A).

**B.**     If a Participant elects to receive a distribution by reason of Paragraph B.9.A, the Participant may not make an Elective Deferral during the 6-month period beginning on the date of distribution.

**10.**    <u>HEART Act -- Death or Disability During Qualified Military Service</u>. To the extent provided in the Optional Provisions and pursuant to Code section 414(u)(9), a Participant that dies or becomes disabled while performing qualified military service (as defined in Code section 414(u)) will be treated as if he had been employed by the Company on the day preceding death or Disability and terminated employment on the day of death or Disability and receive benefit accruals related to the period of qualified military service as provided under Code section 414(u)(8), except as provided in B.10.A and B.10.B below:

**A.**     All Participants eligible for benefits under the Plan by reason of this Section shall be provided benefits on reasonably equivalent terms.

**B.**     For the purposes of applying Code section 414(u)(8)(C), a Participant's Elective Deferrals shall be determined based on the Participant's average actual contributions for:

**1.**     the 12-month period of service with the Employer immediately prior to qualified military service, or

**2.**     if service with the Employer is less than such 12-month period, the actual length of continuous service with the Employer.

**11.**    <u>After-Tax Rollovers</u>. Effective for taxable years beginning on or after January 1, 2007, if the Plan permits Rollover Contributions to the Plan from all qualified plans and tax favored vehicles, the eligible plans shall include after-tax contributions as permitted by Section 822 of PPA. The Plan shall separately account for amounts so transferred, including separately accounting for the portion of such contribution which is includible in gross income and the portion of such contribution which is not so includible.

**12.**    <u>Qualified Default Investment Alternatives (QDIA)</u>. Use this Paragraph to add any language to comply with the regulations under DOL regulation section 2550.404c-5 relating to fiduciary relief for investments in qualified investment alternatives.

CONFIDENTIAL                                                                 WH_MDL_00025151

13. Notice Periods. Effective for Plan Years beginning after December 31, 2006, any required notification period under Code sections 402(f) (rollovers), 411(a)(11) (consent to distribution) or 417 (joint and survivor annuities) shall be extended from 90 days to 180 days.

14. Non-spouse Rollovers. Effective January 1, 2007, a non-spouse Beneficiary who is a designated Beneficiary within the meaning of Code section 401(a)(9)(E) may, after the death of the Participant, make a direct rollover of a distribution to an IRA established on behalf of the designated Beneficiary; provided that the distributed amount satisfies all the requirements to be an eligible rollover distribution other than the requirement that the distribution be made to the Participant or the Participant's spouse. Such direct rollovers shall be subject to the terms and conditions of IRS Notice 2007-7 and superseding guidance, including but not limited to the provision in Q&A-17 regarding required minimum distributions. Effective January 1, 2010, the distributions described in this Paragraph shall be subject to Code sections 401(a)(31), 402(f) and 3405(c).

15. Top Heavy. Effective for Plan Years beginning after December 31, 2001, in determining whether the Plan is top heavy, the term "severance from employment" shall be substituted for "separation from service."

16. Section 822 PPA -- Direct Rollover of After-Tax Contributions. Effective for taxable years beginning on or after January 1, 2007, a portion of a distribution shall not fail to be an eligible rollover distribution merely because such portion consists of amounts which are not includible in gross income. However, such portion may be transferred as a direct rollover only to a qualified trust or to an annuity contract described in Code section 403(b) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

17. Notice of Right to Defer. Effective for Plan Years beginning on or after January 1, 2007, any description of a Participant's right to defer a distribution under Code section 411(a)(11) must also include a description of the consequences of failing to defer receipt of the distribution. The Plan will not be treated as failing to meet these notice requirements if the Plan Administrator makes a reasonable attempt to comply with the new requirements during the period that is within 90 days of the issuance of regulations.

18. Refunds of Excess Deferrals.

    A. Effective for taxable years beginning after December 31, 2006 (excesses distributed after December 31, 2007), any refunds of Elective Deferrals that exceed the dollar limitation contained in Code section 402(g) shall be adjusted for income or loss up to the date of distribution. The income/loss allocable to excess deferrals is equal to the sum of the allocable gain or loss for the Plan Year and, to the extent that such excess deferrals would otherwise be credited with gain or loss for the gap period (i.e., the period after the close of the Plan Year and prior to the distribution) if the total Account were to be distributed, the allocable gain or loss

CONFIDENTIAL

during that period. The Plan Administrator may use any reasonable method for computing the income allocable to excess deferrals, provided that the method does not violate Code section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's Accounts. The Plan will not fail to use a reasonable method for computing the income allocable to excess contributions merely because the income allocable to excess contributions is determined on a date that is no more than 7 days before the actual distribution. In addition, the Plan Administrator may allocate income in any manner permitted under applicable Treasury Regulations.

    **B.**    Effective for taxable years beginning after December 31, 2007, gap period income described in Paragraph A shall not be distributed.

**19.**    <u>Mandatory Rollovers - Roth</u>. Effective for taxable years beginning after December 31, 2005, eligible rollover distributions from a Participant's Roth Elective Deferral Account are separately taken into account in determining whether the total amount of the Participant's Account balances under the Plan exceeds $1,000 for purposes of mandatory distributions from the Plan. Notwithstanding the foregoing, this Paragraph shall not be effective until the date this amendment is adopted to the extent that it is inconsistent with the terms of a predecessor plan provision.

**20.**    <u>Protected Benefits</u>. This Paragraph is effective for Plan amendments adopted after August 9, 2006 (periods beginning on or after June 7, 2004 relating to suspension of benefit payments).

    **A.**    Except as provided in Paragraph 20.B, a Plan amendment may not decrease a Participant's accrued benefits, or otherwise place greater restrictions or conditions on a Participant's rights to Code section 411(d)(6) protected benefits, even if the amendment merely adds a restriction or condition that is permitted under the vesting rules in Code section 411(a)(3) through (11).

    **B.**    An amendment described in Paragraph 20.A does not violate Code section 411(d)(6) to the extent: (i) it applies with respect to benefits that accrue after the applicable amendment date; or (ii) the Plan amendment changes the Plan's vesting computation period and it satisfies the applicable requirements under 29 CFR 2530.203-2(c).

**21.**    <u>QDRO</u>. Effective April 6, 2007, pursuant to DOL regulation 2530.206, a domestic relations order will not fail to be a Qualified Domestic Relations Order solely because the domestic relations order: (i) revises or is issued after another domestic relations order or Qualified Domestic Relations Order, or (ii) the domestic relations order is issued after the Participant's death, divorce or annuity starting date.

**22.**    <u>Right to Divest Publicly Traded Employer Securities</u>. This Paragraph shall apply to the extent that the Plan holds publicly traded employer securities. This Paragraph shall not

**CONFIDENTIAL**        **WH_MDL_00025153**

apply if: (i) the Plan is an employee stock ownership plan with no contributions subject to Code sections 401(k) and 401(m), or (ii) the Plan is a one participant plan.

A.  Right to Divest. An applicable individual may elect to direct the Plan to divest any publicly traded employer securities held in the applicable portion of his or her Account and to reinvest an equivalent amount in other investment options offered under the Plan. This diversification right only applies to publicly traded employer securities that are held in the Account for which the individual meets the definition of applicable individual. The investment options offered shall include not less than three investment options, other than Employer securities, to which the applicable individual may direct the proceeds of the divestment of Employer securities, and each investment option must be diversified and have materially different risk and return characteristics. The opportunity to divest and reinvest shall be offered no less frequently than quarterly. The Plan shall not impose any restrictions or conditions with respect to the investment of Employer securities in violation of Code section 401(a)(35)(D)(ii)(II).

B.  Notice. The Plan Administrator shall provide a notice to applicable individuals not later than 30 days before the first date on which the individuals are eligible to exercise their rights. The notice shall describe the diversification rights provided under Code section 401(a)(35) and describe the importance of diversifying the investment of retirement Account assets. Plans with Plan Years beginning on or after January 1, 2007, but before February 1, 2007, are not required to furnish the notice earlier than January 1, 2007.

C.  Transition Rules. The transition rules described in IRS Notice 2006-107 (extended by IRS Notice 2008-7) and Code section 401(a)(35)(H) shall apply.

D.  Definitions.

1.  The term publicly traded employer securities means Employer securities which are readily tradable on an established securities market. Employer securities shall be treated as publicly traded employer securities if any Employer corporation, or any member of the controlled group of corporations that includes an Employer corporation, has issued a class of stock that is a publicly traded employer security. However, the Plan is not treated as holding Employer securities with respect to any securities held by either an investment company registered under the Investment Company Act of 1940 or a similar pooled investment vehicle that is regulated and subject to periodic examination by a State or Federal agency.

2.  The term applicable individual means:

(a)  With respect to Elective Deferrals and Employee contributions, including rollovers (and earnings thereon): (1) any Participant, (2) any

CONFIDENTIAL                                                    WH_MDL_00025154

Alternate Payee who has an Account under the Plan, and (3) any Beneficiary of a deceased Participant.

**(b)**     With respect to other Employer contributions (and earnings thereon): (1) a Participant who has completed at least three years of service, (2) an Alternate Payee who has an Account under the Plan with respect to a Participant who has completed at least three years of service, or (3) a Beneficiary of a deceased Participant.

23. Loans. This Paragraph shall apply to the extent that the Plan allows for loans. The provisions of Code Section 72(p) and Treas. Reg. 1.72(p)-1 shall apply to the Plan and are hereby incorporated by reference.

24. Required Minimum Distributions. The minimum distribution rules under Code section 401(a)(9) shall not apply for the calendar year 2009. For purposes of this Paragraph: (i) the required beginning date with respect to any individual shall be determined without regard to this Paragraph for purposes of applying the minimum distribution rules under Code section 401(a)(9) for calendar years after 2009, and (ii), if applicable, the 5-year period described in Code section 401(a)(9)(B)(ii) shall be determined without regard to calendar year 2009. If all or any portion of a distribution during 2009 is treated as an eligible rollover distribution but would not be so treated if the minimum distribution requirements under Code section 401(a)(9) had applied during 2009, such distribution shall not be treated as an eligible rollover distribution for purposes of Code sections 401(a)(31), 3405(c) or 402(f).

25. Rev. Rul. 2008-40-Transfer to Nonqualified Plan. Subject to the conditions and limitations of Revenue Ruling 2008-40, Revenue Ruling 2011-1 and any superseding guidance, a transfer of assets from the Plan's trust to a nonqualified foreign trust shall be treated as a distribution.

26. Rev. Rul. 2008-45-Exclusive Benefit Rule. Sponsorship of the Plan may not be transferred to an unrelated taxpayer if such transfer would violate Revenue Ruling 2008-45.

CONFIDENTIAL

## 2011 REQUIRED AMENDMENT ADDENDUM

This Amendment to the Plan is adopted to reflect provisions of the Worker, Retiree and Employer Recovery Act (the "WRERA") and certain other provisions of applicable law and the applicable regulations that are generally effective after December 31, 2008 ("Applicable Law"). This Amendment is intended as good faith compliance with the requirements of the WRERA and Applicable Law and is to be construed in accordance with same. This Amendment and the provisions of Applicable Law shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this Amendment, WRERA and Applicable Law.

### A. OPTIONAL PROVISIONS:

### 2009 Required Minimum Distributions

**1a.**  Indicate the extent to which participants and beneficiaries have an election to receive distributions that include 2009 RMDs:
  **i.**  [ X ] Default to continue 2009 RMDs.
  **ii.**  [ ] Default to discontinue 2009 RMDs.
  **iii.**  [ ] Other: _____.
  **NOTE:** If "Other" is selected, the below provisions will not apply except to the extent specified.

**1b.**  Direct Rollovers of 2009 RMDs. For purposes of the direct rollover provisions of the Plan, the following will also be treated as eligible rollover distributions in 2009:
  **i.**  [ X ] None. 2009 RMDs will not be treated as eligible rollover distributions in 2009.
  **ii.**  [ ] 2009 RMDs only.
  **iii.**  [ ] Extended 2009 RMDs only.
  **iv.**  [ ] 2009 RMDs and Extended 2009 RMDs.

### Roth In-Plan Rollovers

**2a.**  If the Plan allows for Roth contributions and the plan is not a limited scope 403(b) plan, are In-Plan Roth Rollovers permitted?
  **i.**  [ ] No.
  **ii.**  [ ] Yes - only if the Plan otherwise allows for the distribution/in-service withdrawal.
  **iii.**  [ ] Yes - limitations and/or conditions apply.
  **iv.**  [ X ] Yes - all distributions/in-service withdrawals permitted under the Code even if not otherwise provided under the plan.
  **NOTE:** To prevent terminated employees from taking an In-Plan Roth Rollover or to limit In-Plan Roth Rollovers to a nondiscriminatory class, choose "limitations and/or conditions apply" and describe the circumstances under which participants can take an In-Plan Roth Rollover.

**2b.**  If A.2a is not "No", indicate whether In-Plan Roth Rollovers are permitted from partially vested accounts:
  **i.**  [ ] Yes.

CONFIDENTIAL

  **ii.** **[ X ]** No.

**2c.** If **A.2a** is "Yes -limitations and/or conditions", describe the limitations and/or conditions:

_____.

  **NOTE:** In-Plan Roth Rollovers may only be permitted for eligible distributions that are also rollover distributions (as defined in Code section 402(c)(4)).

**2d.** If **A.2a** is not "No", enter the effective date of the In-Plan Roth Rollovers: January 1, 2014 (must be after Sept. 27, 2010).

**2e.** If **A.2a** is not "No", indicate method of preserving Code section 411(d)(6) protected benefits:

  **i.** **[ X ]** Distributions from the In-Plan Roth Rollover Account are permitted at any time

  **ii.** **[ ]** Preserve existing distributions/in-service withdrawals rights for each account

  **iii.** **[ ]** Other: _____

## B. STANDARD PROVISIONS:

**1.** <u>2009 Required Minimum Distributions</u>.  Notwithstanding other provisions of the Plan to the contrary; to the extent provided above, and by Code section 401(a)(9), IRS Notice 2009-82 and any superseding guidance, a participant or beneficiary who would have been required to receive 2009 RMDs or Extended 2009 RMDs will receive those distributions for 2009 unless the participant or beneficiary chooses not to receive such distributions. Participants and beneficiaries described in the preceding sentence will be given the opportunity to elect to stop receiving the distributions described in the preceding sentence.

  **A.** In addition, notwithstanding other provisions of the Plan to the contrary, and solely for purposes of applying the direct rollover provisions of the Plan, certain additional distributions in 2009, as chosen above, will be treated as eligible rollover distributions.

  **B.** Definitions:

    **i.** "2009 RMDs" are Required Minimum Distributions for 2009 but for the enactment of section 401(a)(9)(H) of the Code;

    **ii.** "Extended 2009 RMDs" are one or more payments in a series of substantially equal distributions (that include the 2009 RMDs) made at least annually and expected to last for the life (or life expectancy) of the participant, the joint lives (or joint life expectancy) of the participant and the participant's designated beneficiary, or for a period of at least 10 years.

**2.** <u>Roth In-Plan Rollovers</u>. To the extent provided in the Optional Provisions and to the extent permitted by Code section 402A(c), IRS Notice 2010-84 and any superseding guidance, a distribution from the Plan other than from a designated Roth Account that is an eligible rollover distribution (as defined in Code section 408A(e)) may be rolled over to a designated Roth Account maintained under this Plan for the benefit of the individual to whom the distribution is made.

**CONFIDENTIAL**
                             **WH_MDL_00025157**

"In-Plan Roth Rollover" means an Employee contribution made to the Plan as a rollover from another account in the Plan pursuant to this Section.

"In-Plan Roth Rollover Account" means so much of a participant's account as consists of a participant's In-Plan Roth Rollover Contributions (and corresponding earnings) made to the Plan.

If In-Plan Roth Rollovers are permitted for all distributions permitted under the Code and to the extent provided in the Optional Provisions, In-Plan Roth Rollovers are permitted at the following times:

**A.** Upon the attainment of age 50 except elective deferrals, qualified nonelective contributions, qualified matching contributions and the portion of any account that has been used to satisfy the safe harbor requirements of Code sections 401(k)(12) or 401(k)(13) and/or 401(m)(11) or 401(m)(12) shall not be eligible for withdrawal until the participant attains age 59-1/2.

**B.** After-tax, rollover and voluntary accounts can be converted to an In-Plan Roth Rollover Account at any time.

**C.** From a participant's matching contribution account and/or profit sharing contribution account after 5 years of participation. In-service withdrawals are allowed from a participant's matching contribution account and/or profit sharing contribution account on funds held for at least 2 years. Withdrawals after 5 years of participation and/or 2 years of accumulation are only permitted from the accounts to the extent such account has not been used to satisfy the requirements of Code sections 401(k)(12) or 401(k)(13) and/or 401(m)(11) or 401(m)(12). Withdrawals after 5 years of participation and/or 2 years of accumulation are also only permitted from accounts to the extent such account has not been treated as qualified matching contributions or qualified nonelective contributions.

**D.** Immediately after termination of employment.

**3.** Notice 2010-15 - HEART Act. Plan provisions pursuant to Code sections 401(a)(37), 414(u)(9) and 414(u)(12), to the extent applicable, shall also be interpreted pursuant to Notice 2010-15 and any superseding guidance.

**4.** Right to Divest Publicly Traded Employer Securities. To the extent Code section 401(a)(35) applies to the plan (the Plan holds publicly traded employer securities and is an applicable defined contribution plan under Code section 401(a)(35)(E)), the rules regarding the rights to divest publicly traded employer securities shall be interpreted pursuant to Treas. Reg. section 1.401(a)(35)-1 and any applicable superseding guidance.

CONFIDENTIAL                    WH_MDL_00025158

## 2012 INTERIM AMENDMENT ADDENDUM

This Amendment to the Plan is adopted to reflect certain provisions of applicable law ("Applicable Law"). This Amendment and the provisions of Applicable Law shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this Amendment and Applicable Law.

## A. STANDARD PROVISIONS:

1.  <u>Group Trusts</u>. Notwithstanding other provisions of the Plan to the contrary, to the extent that the Plan's trust is a part of any group trust (within the meaning of Internal Revenue Service Revenue Rulings 81-100 and 2011-1), such group trust may invest in the accounts and plans described in Internal Revenue Service Revenue Ruling 2011-1; provided, that requirements of such ruling and superseding guidance are met. This paragraph shall be effective as provided in Internal Revenue Service Revenue Ruling 2011-1 (as modified by Revenue Service Notice 2012-6 and any superseding guidance).

2.  <u>Deferred Annuity Contracts</u>. In determining whether and/or how the qualified joint and survivor annuity and the qualified preretirement survivor annuity rules described in Code sections 401(a)(11) and 417 apply to a deferred annuity contract purchased under the Plan, the provisions of Internal Revenue Service Revenue Ruling 2012-3 and any superseding guidance shall apply.

CONFIDENTIAL                                                                    WH_MDL_00025159

The undersigned agree to be bound by the terms of the foregoing addenda to the Plan and

acknowledge receipt of same. The addenda are executed this 21st day of July , 2014.

ROADCRAFT TECHNOLOGIES LLC:

Signature: _____

Print Name: Ronald Altbach

Title/Position: Manager

V4.02-4.02

M590756a Copyright 2002-2014                                    96

CONFIDENTIAL                                    WH_MDL_00025160