# Exhibit 7

CONFIDENTIAL
Max Hayden - April 13, 2022

1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK
2                 CASE NO.  18-MD-2865 (LAK)

3        _____
                                                    )
4        IN RE:                                     )
                                                    )
5        CUSTOMS AND TAX ADMINISTRATION OF          )
         THE KINGDOM OF DENMARK                     )
6        (SKATTEFORVALTNINGEN) TAX REFUND           )
         SCHEME LITIGATION                          )
7        _____)

8

9

10

11

12

13              C O N F I D E N T I A L

14

15

16       REMOTE VTC VIDEOTAPED EXPERT DEPOSITION UNDER

17                  ORAL EXAMINATION OF

18                     MAX HAYDEN

19

20              DATE: April 13, 2022

21

22

23

24

25          REPORTED BY:  MICHAEL FRIEDMAN, CCR

GregoryEdwards, LLC |  Worldwide Court Reporting
GregoryEdwards.com | 866-4Team GE

CONFIDENTIAL
Max Hayden - April 13, 2022

1    you without reading it.

2        Q    Okay.  Great.  We'll come to that a

3    little later today.

4            Then some general trading

5    definitions that I think will make today a

6    little bit easier for everybody.

7            Would you agree that the date on

8    which two counterparties agree to transact is

9    referred to as the trade date?

10       A    So -- yeah.  I mean trade date is

11   in my mind when a broker accepts an order

12   from a client and they execute that order and

13   they confirm it back and that is the date of

14   trade, so that's what I understand trade date

15   to be.

16       Q    And the effect of what you just

17   said is that the two counterparties have

18   agreed to transact on that date?

19           MR. PRUDEN:  Objection.

20       A    They -- well, they -- they had

21   actually -- as I said, a broker has taken an

22   order and then goes to the market to execute.

23   There could be reasons not to agree to trade,

24   but it's based off the fact that an order has

25   been accepted and executed, and that is when

CONFIDENTIAL
Max Hayden - April 13, 2022

```
 1    the trade is struck and that is -- the trade

 2    date would be reflective on the contracts to

 3    sign to that end.  That is my understanding.

 4         Q    Would you agree that the date the

 5    transfer of securities between a buyer and a

 6    seller -- sorry.  Withdrawn.

 7              Would you agree that the date that

 8    the transfer of securities occurs between a

 9    buyer and a seller is referred to as the

10    settlement date?

11              MR. PRUDEN:  Objection.  Vague.

12         A    The settlement date is agreed

13    between parties on the trade date as one of

14    the conditions associated with that

15    transaction, and settlement is intended to

16    occur on that date.

17              There are many reasons why it

18    isn't, it isn't complete, but the intended

19    settlement date is agreed on the trade, and

20    then if settlement is successful on that

21    date, then securities and cash will move

22    between buyer and seller.

23         Q    Thank you.

24              Would you agree that the record

25    date refers to the date by which a
```

1       shareholder is required to own shares,

2       meaning that the shareholder is the

3       registered owner of shares in the shareholder

4       register, to be entitled to receive a

5       dividend directly from the issuer of

6       securities?

7                   MR. PRUDEN:  Objection.

8           A    That's quite a long sentence,

9       actually.  Forgive me so if I sort of

10      simplify it from my perspective, if you don't

11      mind, Mr. Oxford.

12                  Record date, to me, is the date set

13      by a company for registered owners of shares

14      to be recipients of the dividend payments.

15          Q    Said differently, it's the date on

16      which the issuer checks its share register to

17      determine who it will pay a dividend to

18      directly?

19                  MR. PRUDEN:  Objection.

20          A    It's when a company will view the

21      share register and use that record to pay

22      dividend amounts to the names that are

23      registered on that record, and that would

24      occur on pay date, which is sent after the

25      record date.

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 21

```
1              Q    The next definition is the ex date
2       or the ex-dividend dates.
3                   Are those two terms used
4       interchangeably, to your understanding?
5              A    Yes, ex-dividend -- yeah, ex-div
6       and ex-dividend date is the same, in my mind,
7       yeah.
8              Q    And that refers to the first
9       trading date on which a buyer of a share is
10      not entitled to receive the most recently
11      announced dividends.  Correct?
12             A    It's actually set by exchanges and
13      is synchronized with their default settlement
14      calendar exchange by exchange, and it's set
15      to have default rules where a purchase on
16      that day does not carry the right to a
17      dividend, so it's the opposite of cum
18      dividend.
19             Q    So the ex date is the first date on
20      which a purchased share does not carry the
21      right to a declared dividend?
22             A    Yeah, as I say, set by exchanges
23      not by the company, and it's where a purchase
24      does not carry the right to a dividend.
25             Q    Would you agree that a trade date,
```

CONFIDENTIAL
Max Hayden - April 13, 2022

1    a trade with a trade date prior to the

2    ex date that settles on or before the record

3    date is referred to as a cum-cum trade?

4         MR. PRUDEN:  Objection.

5         A    I mean cum-cum trades are

6    transactions where the purchase is trading

7    cum and the settlement date on that purchase

8    will occur on or before the record date.

9         Q    So in order to be a cum-cum trade,

10   the trade has to be placed prior to the

11   ex date, and it needs to settle on or before

12   the record date.  Correct?

13        MR. PRUDEN:  Objection.

14        A    Can you repeat, please, Mr. Oxford?

15        Q    Sure.

16             In order to be a cum-cum trade, the

17   trade needs to be placed prior to the ex date

18   and it needs to settle on or before the

19   record date?

20        MR. PRUDEN:  Objection.

21        A    But not necessarily because as I

22   said, every exchange, exchanges will set the

23   ex date on the security, but they have

24   facilities which allow for users of the

25   exchange to be able to trade with specific

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 23

1    conditions.  So it's possible and does indeed

2    happen on exchanges that it could be during

3    an extant period of the security that the

4    parties could still be agreeing to trade cum

5    dividend.

6        Q    Right.

7             Leaving aside those specific

8    exceptions, sir, just generally speaking,

9    would you agree that a cum-cum trade is

10   understood in the industry as a trade that is

11   placed prior to the ex date and settles on or

12   before the record date?

13           MR. PRUDEN:  Objection.

14       A    Well, I don't want to use

15   generalities because there's lots of reasons

16   why that may not happen.

17           But in summary, I would say if I

18   saw a cum-cum transaction, my initial

19   thoughts would be that would have been traded

20   pre-ex date and for a settlement date, prior

21   settlement date.

22           But as I said before, there are

23   flexibilities in the way that parties can

24   trade.  They don't have to just go to the

25   default, which is set by exchanges to

1    optimize how the markets work on an ongoing

2    basis.

3        Q    Can we agree that a trade with a

4    trade date prior to the ex date and a

5    settlement after the record date is referred

6    to as a cum-ex trade?

7            MR. PRUDEN:  Objection.

8        A    Well, I think this -- this -- the

9    title of cum-ex trading covers a number of

10   limitations.  I won't profess to be an expert

11   in them all; however, as there isn't a

12   precise definition, it can mean a number of

13   things.

14           However, I think as a rule of

15   thumb, I have used the understanding that a

16   cum-ex trade is where a purchase occurs, cum

17   dividends, so it occurs -- excuse me.  Yeah.

18           So it occurs before the ex date and

19   cum dividend, and the settlement date on that

20   trade is set at time of execution after

21   record date.

22       Q    And that -- that's the definition

23   of cum-ex that you use in parts of your

24   reports.  Correct?

25           MR. PRUDEN:  Objection.

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 218

```
 1     least to settle, so the trade -- the trade --
 2     I would have expected already to have been
 3     confirmed.
 4             But in terms of Latesha, these are
 5     settlement instructions that he's looking to
 6     settle, and these settlement instructions --
 7     let me just check.
 8             So it's from Steve Wadlow of ED&F
 9     to RBC as a custodian.  He's saying, "Please
10     confirm these trades to settle with these
11     particular settlement instructions."
12             Then I suspect that -- I don't know
13     for sure -- they are the settlement
14     instructions from ED&F.
15             So if that were the case, he was
16     agreeing with the custodian, RBC, to match
17     and settle, settlement instructions for those
18     shapes.  That's my read of this mail.
19     Q    And on the first page, RBC writes
20     back to Mr. Wadlow, "Hi.  You should be able
21     to see our instruction on 09 because we are
22     waiting for the stock form another
23     counter-party."
24             Do you see that?
25     A    Yes, I do see that.
```

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 219

```
1         Q    So would you agree that RBC was not

2     sending instructions to clear this trade

3     until the date of settlement?

4         A    That's not --

5              MR. PRUDEN:  Objection.

6         A    Sorry.

7              In terms of custodians, it's

8     possible that custodians will trigger

9     settlement instructions once securities are

10    client accounts, so they won't release them

11    until they know they can settle.

12             So it isn't always the case, far

13    from it, that a custodian will automatically

14    transmit settlement instructions from their

15    client once it received them overnight on the

16    trade date.

17             So the cycle tends to be, and I've

18    used many custodians over the years so I know

19    this to be the fact, is that firms which have

20    particular SWIFTs harnesses, which is quite

21    sophisticated, will send in their trades

22    overnight to their custodian and their

23    custodian, if it's a large custodian

24    particularly, will automatically transmit

25    SWIFT instructions to the market being CSD to
```

1     match.

2          And those instructions are waiting

3     there for settlement date because they're not

4     confirming or denying a trade.  They're

5     actually settlement instructions because

6     settlement follows trade.  That can happen at

7     any time up until settlement date.

8          And there are many custodians,

9     particularly smaller ones like RBC, and

10    again, I would have to check with them

11    directly because I haven't.

12          But you may have done, which won't

13    necessarily send a settlement instruction on

14    a trade that they've been given by a client.

15    Indeed, some clients, which are not very

16    sophisticated and don't have SWIFT harnesses,

17    will send to their custodian either the day

18    before settlement or on settlement day what

19    they would like to settle.

20          So in my experience, I would never

21    take it as a rule of thumb the settlement

22    instructions are supporting trades as they

23    happen, because settlement is a very

24    different function to trading, and that's

25    usually quite evident in the way the firms

CONFIDENTIAL
Max Hayden - April 13, 2022

1    are set up to support either trading or

2    settlement.

3            So the long answer, I know -- I'm

4    sorry if I bored you -- but it doesn't

5    really, for me, tell me that there were

6    settlement instructions waiting because there

7    was a short sale.

8            If anything, it's quite likely that

9    Latesha either sent them instructions just

10    before settlement or, indeed, they had an

11    arrangement with their custodian that they

12    wouldn't release settlements until such a

13    point that purchases that support that sale

14    have settled or are matched.

15        Q    I represented that RBC was

16    Latesha's custodian.

17            Do you remember that?

18        A    Yes.

19        Q    RBC writes on the 8th of April,

20    which is the record date, that they won't be

21    able to -- ED&F won't be able to see RBC's

22    instruction because they are waiting for

23    stock from another counter-party.

24            Do you agree that means, sir, that

25    Latesha did not receive a dividend from the

```
 1      issuer itself?

 2              MR. PRUDEN:  Objection.

 3          A   Latesha -- it seems to me, based

 4      off of this, is Latesha had purchased shares

 5      on the other side and that seller, therefore,

 6      because stock hadn't come in on record date,

 7      would have received through their custodian,

 8      whoever that may be -- obviously it's not

 9      RBC -- but would have received the dividend

10      entitlement from their custodian on pay date.

11              So on that basis that would tell me

12      that Latesha would also be issuing a claim

13      from RBC to their custodian to make them

14      whole on the dividend that they also would

15      have to pass down to ED&F when they make the

16      claim of them.

17          Q   We can agree that Latesha is a

18      short seller in this transaction?

19              MR. PRUDEN:  Objection.

20          A   Because they're waiting for stock

21      from another counter-party, and that tells me

22      that they bought it from someone.

23          Q   They don't have the stock.

24      Latesha, at the time of writing this e-mail

25      on April 8, Latesha doesn't have the Danish
```

1   shares that it's selling.  Correct?

2              MR. PRUDEN:  Objection to form.

3        A    But my point is, the trade and

4   settlement are two different things.

5              And Latesha had already done this

6   trade as of -- you told me -- the 3rd of

7   April.

8              So my assumption would be, based

9   off of reading this and understanding how

10  settlement follows trading, that it's highly

11  likely that Latesha bought on the 3rd of

12  April the equivalent shares from another

13  party, and they are waiting on those shares

14  to settle.

15             And RBC is saying, I'm not going to

16  match instructions until the trade that was

17  already done, which is what a settlement date

18  of -- of today is actually matched, and

19  settling to, I can settle with you.

20             I think --

21       Q    Do you have any information to

22  suggest, sir, that Latesha did a trade to

23  purchase from another party these Tryg shares

24  on the 3rd of April?

25             Do you have any information one way

CONFIDENTIAL
Max Hayden - April 13, 2022

1    or the other, sir?

2              MR. PRUDEN:  Objection.

3         A    As I said before, I do not have

4    access to other firms' records to be able to

5    support that type of a claim.

6              But what I can say, based on my

7    experience in reading and receiving e-mails

8    like this over my career, that that is very

9    much telling me that Latesha, with their

10   agent, RBC, have a transaction already

11   booked, and it's waiting for delivery receipt

12   of shares that support that purchase.

13             And that's my interpretation of

14   this e-mail.

15        Q    And you don't know one way or the

16   other, sir, whether Latesha has done exactly

17   what MPT Dubai did in the Annex E sales and

18   covered their short sale after -- on or after

19   the ex date?

20             MR. PRUDEN:  Objection.  Assumes

21        facts.

22        A    Taking your original line of

23   questioning that this mail is supposedly

24   telling me that Latesha was short, obviously

25   I disagree with that because this is telling

1    me that there was another transaction on the

2    other side and settlement is still awaiting

3    on those shares.

4              And it may be failing for another

5    reason.  It could be a fail.  These things,

6    you know, happen.

7              So that is my read of this.

8              As to whether Latesha was trading

9    with another party, you know, could emulate

10   the Annex E transactions, I couldn't tell

11   you.  I couldn't tell you when they purchased

12   these shares.

13             But what I do know is that these

14   shares are due for settlement on the day that

15   another delivery out is required, so this

16   is -- to me, there's no reference other than

17   there are settlements here that are -- one

18   could be June, but it is June because they're

19   waiting on the stock, and that could be

20   because of a fail.  It could be for a variety

21   of reasons.

22             But that does not tell me for one

23   moment that Latesha traded short.  It's

24   telling me that they've booked something from

25   someone else, and there's a settlement agent

```
 1    independently saying that they can't

 2    un-deliver because they have not received the

 3    shares yet from their purchase.

 4         Q    Okay.  Let's move, see if we can

 5    find a point of agreement.

 6              One point of agreement, sir,

 7    between you and Mr. Wade is the pricing of

 8    the cum-cum trades conducted by the ED&F

 9    plans.

10         A    Where did I --

11              MR. PRUDEN:  Objection.

12         Q    You -- you don't need that document

13    in front of you anymore.

14         A    Okay.  This one, yeah?

15         Q    Yeah, you don't need that.  I'm

16    going back to your report, sir.

17              You don't take any issue with

18    Mr. Wade's analysis in his Appendix F, do

19    you?

20              MR. PRUDEN:  Objection.

21         A    Could I refer to it again, if

22    that's okay?

23              As a general question, there might

24    be something in there I want to pick up on

25    now.
```

```
 1      intermediating on this, so it becomes

 2      somewhat of a moot point because they were

 3      not the holder.

 4          Q    Going back to Mr. Wade's example of

 5      Mitsubishi Securities, do you remember that

 6      discussion just before the break?

 7          A    We haven't talked about Mitsubishi

 8      Securities today.

 9          Q    Oh.  We talked about it -- let me

10      turn to -- have you turn to 5003.

11              It's Mr. Wade's reply report.

12          A    5003, Mr. Wade's reply.  Sorry.

13      Yeah, I'm there.

14          Q    Okay.  So it's paragraphs 52

15      through 54.

16          A    52.

17              So it's the 85 percent one --

18          Q    Yeah.

19          A    -- highlighted?

20          Q    Yes.

21          A    Okay.

22          Q    Is it your testimony, sir, that the

23      Mitsubishi Securities EMEA PLC that Mr. Wade

24      identifies as common non-Annex E cum-ex

25      seller was an IDB?
```

CONFIDENTIAL
Max Hayden - April 13, 2022

1          MR. PRUDEN:  Objection.

2     A    I'm not aware as to whether MUFG

3     operated in the IDB market.

4          But what I am very aware of is that

5     MUFG, as an investment bank, had an execution

6     desk, and that execution desk supported

7     client flow and they acted as an ERISA

8     principle broker.

9          I'm aware of this because they

10    specialized in access to Southeast Asian Far

11    East client base and giving them access into

12    international markets.

13         So aside from the fact that MUFG is

14    a very large corporation that has many

15    different businesses within it, I am aware

16    that one of those businesses was a brokerage

17    business.  And I don't know which element of

18    this firm was a party to these trades, but I

19    know, by being a broker, they had the

20    facility to trade in a similar way to an IDB

21    and access Asian market clients into

22    international European markets.

23    Q    It's Mr. Wade's opinion that MUFG

24    Securities EMEA PLC was not an interdealer

25    broker but was, in fact, registered as a

**Errata Sheet**

**Caption:**  *In re Customs & Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Litigation*, Master Docket No. 18-md-2865 (LAK)

**Witness:**  Max F. Hayden

**Deposition Date:**  April 13, 2022

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 17:11 | That's my understanding, yes. | That's my understanding to the extent you understand this "case" to mean the action brought by SKAT against ED&F and others in England. | Clarification |
| 19:2-3 | reflective on the contracts to sign to that end. | reflected on the contracts designed to that end. | Transcription Error |
| 20:24 | sent | set | Transcription Error |
| 21:5-6 | ex-div and ex-dividend date | ex-date and ex-dividend date | Correction |
| 23:3 | extant period | ex-dividend period | Transcription Error |
| 23:20-21 | settlement date, prior settlement date. | settlement date prior to record date. | Transcription Error |
| 25:1-3 | That in parts of my report I have used the term cum-ex specifically for the transactions that have those attributes. | In parts of my report I have used the term cum-ex specifically for the transactions that have those attributes, because that is how Mr. Wade uses the term. | Clarification |
| 25:22 | No. Everything is in my report. | No. Everything is in my report as concerns Mr. Wade's first report dated December 31, 2021. To the extent there are additional opinions expressed in Mr. Wade's subsequent reports, particularly in his February 28, 2022 report which responded to my February 1, 2022 report, I | Clarification |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| | | may have additional opinions or reactions to those materials. | |
| 29:8-9 | I don't have any opinions to add to that, no. | I don't have any written opinions to add to that, no. | Clarification |
| 29:22-23 | I haven't been asked to reply to that report, either. | I haven't been asked to produce a written report that replies to that report, either. | Clarification |
| 32:19 | engaged him | engaged in | Transcription Error |
| 32:25-33:1 | I received references in that reports that Mr. Wade's used, so documents. | I received Mr. Wade's report and the documents that he either cited in his report or listed as having considered. | Clarification |
| 33:3-9 | If there was anything else that I didn't receive, which was either in that report at the time that it wasn't passed to me or, indeed, I acquired additional information around questions I had, then I passed them through Binder and K&L Gates to supply that to me. | If there was anything that I didn't receive, including materials that were either referenced in Mr. Wade's report or that I felt would be helpful to answer other questions I had, then I asked Binder and K&L Gates to supply those additional materials to me. | Clarification |
| 33:18, 24 | Adam Wall | Adam Piper | Correction |
| 34:2, 34:15 | Mr. Wall | Mr. Piper | Correction |
| 34:18 | attained | obtained | Transcription Error |
| 35:4 | No, only these. | No, only the documents that you sent to me. | Clarification |
| 36:3-4 | stop loan | stock loan | Transcription Error |
| 36:18-20 | so I haven't been involved with dividend arbitrage directly in my career but from a structuring perspective, | but I haven't been involved with dividend arbitrage directly in my career from a structuring perspective, | Clarification |
| 38:10 | Are the reasons | Are there reasons | Transcription Error |
| 40:25-41:1 | describes how their investment strategy and decisions was followed and came about | describes how their investment strategy and decisions came about and were followed | Clarification |
| 41:2 | you what | you from what | Transcription Error |
| 41:15 | the starts of transactions | the types of transactions | Transcription Error |
| 41:21 | to market | what market | Transcription Error |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 56:6 | Hayden | Oxford | Transcription Error |
| 64:7 | in part of | a part of | Transcription Error |
| 65:9 | IFC | DIFC | Transcription Error |
| 66:18 | as if | as to whether | Clarification |
| 66:18-20 | tact | tactic | Correction |
| 69:19-20 | Well, they're very different, so I would say no. | Well, they're very different, so I would say they wouldn't have suffered from the same flaws. | Clarification |
| 69:24 | brokering | brokerage | Transcription Error |
| 72:1 | 2019 | 2020 | Correction |
| 72:8 | operation-related | operational-related | Transcription Error |
| 72:21-22 | shown in the | discovered | Correction |
| 72:23 | cover up their sales | cover their sales | Transcription Error |
| 73:8-9 | which was the ones | which were the ones | Transcription Error |
| 74:1 | that is that | this is that | Transcription Error |
| 74:2 | from accounts | accounts | Correction |
| 74:15 | through human hands or operations person | through the human hands of an operations person | Transcription Error |
| 75:5-6 | I've seen the reconciliations.  Faxes were produced | I've seen the reconciliations that were produced | Transcription Error |
| 80:13-14 | moment, and then I corrected myself, but | moment, but | Correction |
| 83:3 | what | when | Transcription Error |
| 94:15 | the | a | Transcription Error |
| 94:21 | paying | dividend paying | Correction |
| 94:22 | the party who sold the shares | a party who sold shares | Correction |
| 103:13 | calls | pools | Transcription Error |
| 107:23 | is | there is | Transcription Error |
| 108:1 | it has crossed, it has | it has | Correction |
| 108:3 | LSC | LSE | Transcription Error |
| 110:25-111:1 | as a party ex-dividend shares, one, I won't | as a counterparty ex-dividend shares from someone else, I won't | Correction |
| 112:11 | trade-on-trade date | trade, on the trade date, | Transcription Error |
| 114:1 | so; | so, | Transcription Error |
| 114:4 | have paid for them | paid for | Clarification |
| 118:14 | rights | right | Transcription Error |
| 123:3 | it | its | Transcription Error |
| 125:6 | purchasing | purchasing pension | Correction |
| 125:17 | G | the | Transcription Error |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 127:17-18 | the pension plans that purchased | the pension plans purchased | Clarification |
| 129:11 | "However, | "However," | Transcription Error |
| 129:17 | trade date," would | trade date, would | Transcription Error |
| 131:9 | EZMA's | ESMA's | Spelling Error |
| 132:21 | issuances | issuance | Correction |
| 132:22 | subsequent | the consequent | Transcription Error |
| 132:24 | actually having | having actually | Correction |
| 133:13<br>134:12<br>134:19<br>165:21<br>322:18 | EZMA's | ESMA's | Spelling Error |
| 133:22-23 | "ESMA rights.  Those | ESMA writes, "Those | Transcription Error |
| 133:25 | transfer, either | transfer (either | Transcription Error |
| 134:1 | lending, | lending) | Transcription Error |
| 134:4 | paperwork, including tax certificates | the paperwork (including tax certificates) | Transcription Error |
| 134:21-22 | it ESMA as read | the ESMA document as read | Correction |
| 135:8 | expertise | that expertise | Correction |
| 136:14 | that's involved | that includes | Correction |
| 137:17 | 2019 | 2020 | Correction |
| 138:12 | and really understand | and I really need to understand | Transcription Error |
| 155:10 | final | fund | Transcription Error |
| 155:11 | expectation.  There's | expectation there's | Transcription Error |
| 158:10 | Dubai | (Dubai | Transcription Error |
| 158:11 | or an | or | Transcription Error |
| 159:3 | to the fact | in fact | Correction |
| 159:23 | "of sufficient number of shares" | of a sufficient number of shares | Transcription Error |
| 161:23 | reflected | reflective | Transcription Error |
| 162:1 | So for – effectively | So to effectively | Clarification |
| 162:5 | independenter dealer-brokers | interdealer-brokers | Transcription Error |
| 165:2-4 | That was one paragraph, the context of that.  I would need to go through | That was one paragraph. To understand the context of that, I would need to go through | Clarification |
| 168:12 | depositions | dispositions | Transcription Error |
| 171:4 | do know that what | do not know what | Transcription Error |
| 172:25-173:1 | like, "These are my settlements," | like internalized settlements | Transcription Error |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 173:6 | buying; it | buying that | Transcription Error |
| 176:19 | annex dividend | an ex-dividend | Transcription Error |
| 177:8 | annex dividend | an ex-dividend | Transcription Error |
| 182:17 | trade specifications | specification | Correction |
| 182:25 | the | a | Transcription Error |
| 183:4 | expressed | express | Transcription Error |
| 183:22 | audit | order | Transcription Error |
| 184:9 | fellow | fund | Transcription Error |
| 191:9 | trade.  I | trade, I | Transcription Error |
| 194:4 | ED&F the | ED&F, the | Transcription Error |
| 193:21 | Gavin | Good afternoon | Transcription Error |
| 198:25 | had | add | Transcription Error |
| 199:13 | that to ensure the | as to ensure that the | Transcription Error |
| 199:15 | effects." | effect." | Transcription Error |
| 200:9 | above for | on behalf of | Transcription Error |
| 200:11 | specialist's | specialist | Transcription Error |
| 200:23 | customer, after which they provided. | customer, which they provided upon conclusion of the transaction. | Clarification |
| 201:7 | controlled P&L | P&L | Correction |
| 201:16 | confident communication | confidential communications | Transcription Error |
| 205:10 | Whitehead | Wade | Transcription Error |
| 207:17-19 | I wasn't aware of how it concluded.
I think more than being informed that he was going to a court case in Germany. | I wasn't aware of how it concluded, I think, more than being informed that he was going through a court case in Germany. | Transcription Error |
| 207:22 | note | no | Transcription Error |
| 208:5 | reapplies | replies | Transcription Error |
| 208:7 | good | looking good | Correction |
| 208:11 | Sorry, at the back… | "Sorry about the back…" | Transcription Error |
| 210:6, 19, 21, 25
211:3, 7
213:3, 4
216:6, 13
217:15, 23
218:4
221:9, 16, 25
222:3, 4, 12, 17, 24, 25 | Latesha | Lutetia | Spelling Error |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 223:5, 11, 22<br>224:9, 16, 24<br>225:8, 23<br>234:20<br>235:18, 21<br>236:17<br>237:9, 10, 16, 19, 24, 25<br>238:2, 6, 7, 18, 25<br>287:10 | | | |
| 214:23 | 7071 | 70, 71 | Transcription Error |
| 214:25 | an, "ED&F | an ED&F | Transcription Error |
| 215:1 | Charlotte Woodward," | "Charlotte Woodward" | Transcription Error |
| 215:3, 4, 24 | Scofield | Schofield | Spelling Error |
| 216:22 | 151 pound million, 525,000 | 151,525,000 | Clarification |
| 217:18 | "Below please confirm trade dates." | "Please confirm below trades." | Correction |
| 219:9 | are | are in | Transcription Error |
| 220:9-12 | RBC, and again, I would have to check with them directly because I haven't. But you may have done, which | RBC—and again, I would have to check with them directly, because I haven't, but you may have done— which | Transcription Error |
| 225:18 | be June | be due | Transcription Error |
| 225:18 | is June | is due | Transcription Error |
| 226:2 | un-deliver | on-deliver | Transcription Error |
| 228:9 | Appendix C, Annex E trades | Appendix C Annex E Trades | Transcription Error |
| 228:9-10 | Appendix E/non-Annex E trades, | Appendix C Non-Annex E Trades | Transcription Error |
| 229:1 | Osorry | Sorry | Spelling Error |
| 232:23 | that, "IDBs | that IDBs | Transcription Error |
| 233:1 | nothing." | nothing. | Transcription Error |
| 233:20 | appropriate | inappropriate | Transcription Error |
| 234:24-25 | Luther Chair | Lutetia | Spelling Error |
| 236:15 | "In | in | Transcription Error |
| 237:5-7 | So it was ED&F see themselves, Latesha, as their ultimate counter-party, | So ED&F themselves see Lutetia as their ultimate counterparty because they can't see through them to | Clarification |

6

| Page/Line | Now Reads | Should Read | Reason for Change |
|-----------|-----------|-------------|-------------------|
| | because they can't see through them. | whomever Lutetia may be acting on behalf of. | |
| 240:7-8 | ERISA principle | riskless principal | Transcription Error |
| 244:17 | is | are | Clarification |
| 244:20 | Oon Oa | on a | Transcription Error |
| 245:8 | fine-level rational | financially rational | Transcription Error |
| 247:9-10 | council directive 2011 16 EU | Council Directive 2011/16/EU | Transcription Error |
| 251:3 | extremely difficult to obtain | extremely difficult | Clarification |
| 252:9-10 | Appendix C, Annex E | Appendix C Annex E, | Transcription Error |
| 252:10 | Appendix C, non-Annex E | Appendix C Non-Annex E, | Transcription Error |
| 253:20 | it | he | Clarification |
| 255:10 | isn't a book of business transactions | is a book of business where transactions | Transcription Error |
| 257:17 | certainty | certainly | Transcription Error |
| 259:6 | others, | "Other," | Transcription Error |
| 261:14 | Page | Trade | Transcription Error |
| 268:14-15 | The ex date drops at the time of the market. | The market drops at the time of ex date. | Correction |
| 268:18 | exchange is to | exchange | Correction |
| 269:25 | holders, 73 percent | holders with 73 percent | Correction |
| 270:25 | and | end | Transcription Error |
| 273:4-6 | But the consumer being these specialist funds all have – because they're trading in the market, | But the consumer, these specialist funds, are trading in the market, | Clarification |
| 276:10 | Euro Clear | Euroclear | Spelling Error |
| 277:13-15 | that they internalized settlements, was happening in the books of custodians. | that internalized settlements were happening in the books of custodians. | Clarification |
| 277:17 | settlements | settlement | Spelling Error |
| 277:25 | can | can't | Transcription Error |
| 279:8 | knowing | knows | Correction |
| 279:12 | counter-parties | central counter-parties | Correction |
| 280:19 | that high-frequency | that if the high-frequency | Transcription Error |
| 284:12 | in | within | Transcription Error |
| 284:13 | in | on | Transcription Error |
| 284:18 | And then | And | Correction |
| 286:1 | release of shares | reuse of the shares | Transcription Error |
| 288:12 | straight | their | Transcription Error |
| 288:21 | is a | the | Transcription Error |
| 289:16 | in stock | in and stock | Transcription Error |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 290:4 | settles | settled | Transcription Error |
| 290:12 | Adam Wall | Andrew Wall | Correction |
| 290:14-21 | But a conversation I would expect to have about a person in settlements that is responsible for a depot and optimizes it would be very well-versed in the devices and functions that would be required for them to meet their target of not having any fails and to not lose too much money to fund that process through the settlement day. | But that's a conversation I would expect to have with a person in settlements— they are responsible for a depot and optimize it, and they would be very well-versed in the devices and functions that would be required for them to meet their target of not having any fails and to not lose too much money to fund that process through the settlement day. | Clarification |
| 291:16 | prevailed | prepared | Transcription Error |
| 291:17 | is the – effectively | is effectively | Clarification |
| 293:25 | electronic | electronic form | Clarification |
| 296:13 | an nominee | a nominee | Spelling Error |
| 296:17 | we | would | Transcription Error |
| 299:24 | remitted | permitted | Transcription Error |
| 300:5 | and a | and the | Transcription Error |
| 300:15 314:13 | marketing claim | market claim | Transcription Error |
| 301:17 | does | do | Transcription Error |
| 301:22 | but | and | Clarification |
| 302:5 | is achieved settlements | actually settled | Transcription Error |
| 303:13 | obtaining a financing loan from them | obtaining financing from them | Clarification |
| 304:15 | seeing | showing | Transcription Error |
| 305:7-8 | it would not be a need to borrow | there would not be a need to borrow | Transcription Error |
| 312:16-19 | So from -- because the client has shorted, if that was the case, then there are the shorting -- they're either shorting, because they don't short it. | So because the client has shorted, ED&F will see that the client is short as they don't have the stock. | Clarification |
| 313:22 | if there is shares | if there are shares | Transcription Error |
| 314:8-10 | of a client of you and I buying two sets of shares, but not essentially receiving both the ED&F's depots by settlement date, | of you and I buying two sets of shares, but not receiving both sets of shares into ED&F's depots by settlement date, | Clarification |

8

| Page/Line | Now Reads | Should Read | Reason for Change |
|-----------|-----------|-------------|-------------------|
| 314:18 | So despite the fact that the shares | So the fact that the shares | Clarification |
| 314:19 | depot sum | depot to sum | Transcription Error |
| 320:3-4 | in respect to the record date | with respect to the record date | Correction |
| 320:7 | payment distribution | payment and distribution | Clarification |
| 320:14 | was that for on or before | was that on or before | Transcription Error |
| 321:17-18 | A day after the record date purchases. | A day after the record date generally. | Clarification |
| 322:12-13 | starting both cum-ex and cum-cum | starting, "Both Cum/Ex and Cum/Cum" | Transcription Error |
| 322:18 | cum-ex case, the | Cum/Ex case the | Transcription Error |
| 323:6 | No, I'm not aware of any other. | No, I'm not aware of any that would. | Transcription Error |
| 324:15 | the 6th March | the 6th of March | Transcription Error |
| 325:7 | of March 2014 | in March 2014 | Clarification |

I declare under penalty of perjury under the laws of the United States of America that I have read the entire transcript of my deposition taken in the above-captioned matter and the same is true and accurate, save and except for changes and/or corrections as indicated by me on the deposition errata sheet hereof, with the understanding that I offer these changes as if still under oath.

Executed this 2 day of May, 2022

Max F. Hayden