# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: <br> CUSTOMS AND TAX ADMINISTRATION OF <br> THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | No. 18-MD-2865-LAK |

# REPLY REPORT OF BRUCE G. DUBINSKY MST, CPA, CFE, CVA, CFF, CAMS, MAFF

**February 28, 2022**

present.'" (Emphasis added by Carr).[40]

47. I did not address the flex futures contracts in my expert report because they were actually executed on an exchange and were real. I do not dispute that. In fact, I examined Solo Capital's account at JPMorgan Chase and confirmed that Solo Capital actually entered into fully offsetting flex futures contracts. More to the point, my Expert Report is an analysis of whether the Plans actually owned shares and actually received dividends on those shares. The flex futures and purported forward transactions have no bearing on whether the Plans purchased or owned the shares or received dividends, and are thus not relevant to my analysis. The window dressing added by Solo using the offsetting flex futures does nothing to rehabilitate the fatal deficiency of the lack of Danish shares in the Solo Trades.

48. Ironically, the key takeaway regarding the flex futures contracts is that we can actually see evidence of them in Solo Capital's account at JPMorgan Chase, both from documents obtained from JPMorgan Chase as the sub-custodian, and from documents maintained by Solo Capital. This is exactly the type of evidence that I, as a forensic accountant, would want to see to verify the existence of the flex futures contracts. Similarly, I would have expected to see evidence that the Danish shares were also being held at either JPMorgan Chase or some other sub-custodian. However, such evidence does not exist for the Danish shares, either in the evidence obtained from JPMorgan Chase or within the records maintained by Solo Capital. The fact that third-party documentation was produced to substantiate the existence of the flex futures (which were real) yet not produced by the sub-custodian or found within Solo Capital's records in support of the Danish shares only serves to further underscore my opinion that the Danish shares did not exist in the Solo Trades.

> **F.     Carr is wrong that the Plans generated the necessary financing to complete the purported Solo Trades by entering into securities lending transactions with stock loan counterparties, and Neoteric Capital was thinly capitalized and thus would not have had sufficient capital to use as the cash collateral component of the stock loan transactions. Further, Neoteric Capital was not an independent, third-party market participant, but an entity closely connected to Solo Capital that was not engaging in arm's length transactions.**

49. Carr wrongly asserts that the Plans were able to finance their purchase of the shares through

---

[40] Carr Rebuttal Report at 44.

CONFIDENTIAL
Reply Report of Bruce G. Dubinsky
February 28, 2022
Page 22

- Carr continues to rely on the false assumption that Solo's trading documents reflect real securities transactions.
- Carr does not present proof that the Danish shares existed in the Solo Trades.
- Carr does not present proof that the dividends from the Danish shares were ever received.
- Carr does not provide proof that the Danish shares entered the closed trading loop from any external sources.



Bruce G. Dubinsky, MST, CPA, CFE, CFF, MAFF, CAMS

February 28, 2022