# Exhibit 16

Skatteministeriet

Notat

23. september 2015
J.nr.15-2051530

Selskab, Aktionær og
Erhverv
PTT, MJR

# Svar på early warning i forbindelse med aktielån

## Sag

Skatteministeriet har den 7. juli 2015 modtaget en early warning fra SKAT Jura vedrørende aktielån og godskrivning af udbytteskat, der baserer sig på en early warning, som Skat Jura modtog den 27. marts 2015 om emnet fra SKAT Store Selskaber.

*Dette notat redegør for den skattemæssige behandling af udbytte og udbyttekompensation i forbindelse med aktielån. Indledningsvist skitseres kort de to early warnings som er fremsendt. Herefter gennemgås, hvad der forstås ved et aktielån og den skattemæssige behandling af udbytte og udbyttekompensation i en aktielånsaftale mellem långiver og låntager. Afslutningsvist vurderes de problemer og forslag, som er præsenteret i de to early warnings fremsendt af henholdsvis SKAT Store Selskaber og SKAT Jura.*

## Problemstilling

### Early warning af 27. marts 2015 til SKAT fra SKAT Store Selskaber

SKAT Store Selskabers early warning indledes med en beskrivelse af, at Værdipapircentralen A/S (VP) foretager indberetninger til SKAT om ejere af aktier, beholdning af aktier, udbytte af aktier og indeholdt udbytteskat. Det anføres, at VP som udgangspunkt registrerer den juridiske ejer. Ved aktielån registreres låntager som ejer, hvorved udlåner ikke længere er registreret som ejer. Der foretages ikke registrering af aktielån.

Herefter anføres det, at der ved aktielån skattemæssigt skal henses til, hvem der er retmæssig ejer/beneficial owner, jf. SKM2010.266.SR. Af afgørelsen fremgår det, at en aftale om lån af aktier ikke skatteretligt kan kvalificeres som afståelse. En långiver anses skattemæssigt for retmæssig ejer af aktierne. Udbytte, der udloddes i låneperioden, anses for at tilkomme långiver, og långiver skal derfor beskattes heraf.

Herefter beskrives to eksempler, hvor en bank er henholdsvis låntager og långiver.

*Eksempel – bank låntager*
Banken modtager udbytte af aktierne og betaler en kompensation til långiver. Herudover modtager banken et fee for handelen.

I eksemplet anføres det, at banken ikke skattemæssigt er skattepligtig af det modtagne udbytte, idet banken ikke er retmæssig ejer. Herudover er det anført, at banken har fradragsret for den afholdte udbyttekompensation, medens banken er skattepligtig af det modtagne fee.

Endelig anføres det, at den indeholdte udbytteskat indgår i den beregnede selskabsskat.

*Eksempel – bank långiver*
Banken modtager ikke udbytte af aktierne, men modtager derimod udbyttekompensation fra låntager. Banken modtager også et fee for handlen.

Det anføres, at banken er skattepligtig af udbyttet, da banken anses som retmæssig ejer. Dette gælder, selvom banken ikke har modtaget udbyttet. Derudover anføres det, at banken også er skattepligtig af den modtagne udbyttekompensation og det modtagne fee.

Endelig anføres det, at den indeholdte udbytteskat indgår i den beregnede selskabsskat, samt at banken er skattepligtig af såvel udbytte som udbyttekompensation, hvorved der i princippet betales skat af samme beløb to gange.

SKAT Store Selskaber angiver følgende problemstilling:

Den foreliggende praksis for aktielån medfører, at der er fradrag for udbyttekompensation ved lån af aktier, selvom modtaget udbytte ikke er skattepligtigt. Omvendt sker der beskatning af udbytte, som ikke modtages, hvilket i princippet giver en symmetrisk beskatning.

Derimod er der ikke overensstemmelse i forhold til de "automatisk" indberettede oplysninger til SKAT, idet en låntager indberettes som ejer og modtager af udbytte og er ikke skattepligtig heraf, ligesom en långiver _ikke_ indberettes som ejer og ikke modtager udbyttet, men er skattepligtig af dette.

Konsekvensen er ifølge SKAT Store Selskaber, at SKAT ikke kan stole på de indberettede oplysninger, og at SKAT ikke modtager oplysninger om aktielån.

Efter SKAT Store Selskabers opfattelse er der stor risiko for fejl, idet skatteyder fejlagtigt beskattes af udbytte og omvendt ikke beskattes af udbytte. Dermed kan der opstå situationer med dobbeltbeskatning og dobbelt ikke beskatning.

Det anføres desuden, at når SKATs oplysninger ikke er valide, kræver det at SKAT foretager manuel kontrol. Særligt hvor låntager er en udenlandsk skatteyder, vil der være en væsentlig risiko for, at udbytteskatten bliver

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420464

tilbagebetalt uden at SKAT opdager, at der er tale om aktieudlån. Det vil kræve manuelle kontroller og yderligere oplysninger.
Efter SKAT Store selskabers opfattelse fortolker andre lande beneficial owner således, at denne er den faktiske modtager af udbyttet i sædvanlige, forretningsmæssigt begrundede låneforhold.

SKAT Store Selskabers foreslår at en mulig løsning kunne være, at man skattemæssigt vælger at følge registreringsforholdet og dermed pengestrømmen, hvorefter låntager vil blive anset for skattemæssig ejer. Det skyldes, at det er en svær opgave for de indberetningspligtige, hvis disse skal foretage en vurdering af den retmæssige ejer.

**Early warning af 7. juli 2015 til Skatteministeriet fra Skat Jura**
SKAT Juras early warning tager som udgangspunkt afsæt i early warningen fra SKAT Store Selskaber.

I SKAT Juras early warning fremføres indledningsvist, at låntager registreres civilretligt som ejer af de lånte aktier, men at aktierne i overensstemmelse med TfS 1999.408 ikke anses for afstået. Skattemæssigt anses långiver således fortsat for ejer af de udlånte aktier. I SKM 2010.266.SR tilsluttede Skatterådet sig SKATs indstilling om, at det er långiver, der er beneficial owner efter de indgåede dobbeltbeskatningsaftaler af udbytte på de lånte aktier, når disse ikke er videresolgt af låntager.

Skat Jura angiver i deres early warning, at det er blevet fremført, at den skattemæssige behandling af aktielån i Danmark afviger fra den skattemæssige behandling af aktielån i resten af verden. Denne forskel giver anledning til problemer, når danske långivere eller låntagere skal indgå aftaler om aktielån med udenlandske långivere eller låntagere.

Det refereres endvidere, at det er vurderingen, at der er pengeinstitutter, som hidtil skattemæssigt har behandlet aktielån på en måde, som ikke er i overensstemmelse med SKM2010.266.SR.

Herefter opridser SKAT Jura sin opfattelse af den danske udlånspraksis via to eksempler, hvor en bank er henholdsvis långiver og låntager.

*Eksempel – bank långiver*
Hvis banken låner danske aktier til en udenlandsk låntager, og låntager modtager udbytte på aktierne i udlånsperioden, er banken skattepligtig af udbyttet, fordi banken skattemæssigt er ejer af aktierne og også beneficial owner af udbyttet, jf. SKM2010.266.SR.

Det er SKAT Juras opfattelse, at der ikke i praksis er taget stilling til, om banken også er beneficial owner af udbyttet, hvis låntager har videresolgt de lånte aktier.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420465

Hvis banken er beneficial owner af udbyttet, kan banken medtage den indeholdte udbytteskat som forudbetalt selskabsskat i sin selvangivelse, hvorved banken godskrives den indeholdte udbytteskat.

SKAT Jura henviser til, at det efter skattereglerne er således, at det udbetalende selskab skal indeholde udbytteskat på 22 pct. af udbytte, der udloddes til et dansk selskab, mens der normalt indeholdes 27 pct. i andre tilfælde, herunder til udenlandske aktionærer. Hverken banken eller SKAT ved, hvor meget der er indeholdt i udbytteskat på de udlånte aktier. VP ved, hvad der er indeholdt af udbytte på de forskellige aktieposter i selskabet, men VP kan ikke identificere, hvilken eller hvilke aktieposter, der er identisk med den udlånte aktiepost.

Ifølge SKAT Jura kan banken ikke indgå en aftale med låntager om at oplyse, om låntager har solgt aktierne, fordi låntager af forretningsmæssige hensyn vil nægte dette.

Det er SKAT Juras opfattelse, at også den civilretlige ejer af aktierne – hvad enten det er en dansk eller en udenlandsk ejer – vil medtage den indeholdte udbytteskat som forudbetalt selskabsskat i sin selvangivelse eller tilbagesøge den.

Herved godskrives den kun én gang indeholdte udbytteskat helt eller delvis to gange uden at SKAT har mulighed for at opdage det.

*Eksempel – bank låntager*
SKAT Jura angiver indledningsvist, at der ifølge praksis er en formodning for, at udbyttekompensation betalt til långiver er en fradragsberettiget driftsomkostning for næringsdrivende med aktier, jf. SKM2002.402.LR., hvilket umiddelbart betyder, at en bank, der er næringsdrivende med aktier, og ikke har videresolgt de lånte aktier på udbyttetidspunktet, har fradrag for betaling af udbyttekompensation til långiver, selvom banken ikke er skattepligtig af det modtagne udbytte.

SKAT Jura henviser til, at uanset om banken har fradrag for betaling af udbyttekompensation til långiver, bliver banken ikke godskrevet den indeholdte udbytteskat af udbytte på de lånte aktier, da banken ikke er beneficial owner af udbytte på de lånte aktier

*Skattemæssigt forkerte indberetninger*
VP indberetter til SKAT, at låntager er ejer af de lånte aktier og modtager af udbytte. Indberetningerne til SKAT er derfor skattemæssigt forkerte og medfører, at låntager fejlagtigt beskattes af udbytte på de lånte aktier, hvis låntager civilretligt ejer de lånte aktier på udbyttetidspunktet. Omvendt beskattes långiver fejlagtigt ikke af udbytte på de lånte aktier.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420466

På baggrund af ovenstående bør det ifølge SKAT Jura overvejes at lovgive om den skattemæssige behandling af aktielån.

## Gældende ret

Aktielån kan anvendes til flere formål. Fx bruges aktielån til spekulation i faldende kurser, herunder ved at låntager låner aktier for at sælge aktierne dyrt og genkøbe aktierne billigt, inden de leveres tilbage til långiver – dette kaldes også for *"shortselling"*. Aktielån kan også anvendes i forbindelse med aktieemissioner eller bruges til afvikling af handler med aktier, hvorpå der er en lang afviklingstid ved almindelige køb og salg.

For at der er tale om et aktielån, skal aftalen om overdragelse af aktier først og fremmest have karakter af et lån, herunder at aktierne er overført fra långiver til låntager uden vederlag eller mod andet vederlag end købesummen for aktierne. Låntager skal endvidere være forpligtet til at tilbagelevere aktier af samme mængde og art til långiver ved låneperiodens udløb. Låntager opnår i låneperioden en ejers fulde råden over aktierne.

Der er tale om en genusvare, og der er derfor ikke krav om, at det er præcis de samme værdipapirer, som tilbageleveres til långiver, så længe det er samme antal værdipapirer fra samme udsteder og med samme rettigheder. Aktierne vil derfor også som altovervejende hovedregel være børsnoterede.

I en aktielånsaftale betaler låntager typisk udbyttekompensation til långiver som godtgørelse for det udbytte, der udloddes på de lånte aktier i udlånsperioden (uafhængigt af om låntager ejer aktierne på udlodningstidspunktet eller har videresolgt aktierne). Låntager betaler også et honorar til långiver for at låne aktierne. Det kan også forekomme, at det er långiver, der betaler et honorar til låntager.

Aktielånsaftaler udarbejdes på baggrund af rammeaftaler, herunder på baggrund af de danske standardvilkår[1] ("*Standardvilkår*" eller "*Standardvilkårene*") eller standardvilkårene i de internationale aktielåneaftaler ISLA[2] eller OSLA[3].

*Den skattemæssige behandling af aktielån <u>uden</u> videresalg til tredjemand*
Den skattemæssige behandling af aktielån har udviklet sig via praksis.

I praksis anses aktielåneaftaler med en løbetid på i hvert fald seks måneder skattemæssigt som lån af aktier og ikke som en afståelse af aktier[4]. Efter nyere

---

[1] Ligningsrådet tog i TfS 1999. 408 stilling til standardvilkårene ("Standardvilkår" eller "Standardvilkårene") udarbejdet af Finansrådet og Børsmæglerforeningen i fællesskab med Københavns Fondsbørs.

[2] International Securities Lenders Association - Global Master Securities Lending Agreement Version May 2000.

[3] Morgan Stanley & Co. International Limited - Overseas Securities Lender´s Agreement, Version: December 1995.

[4] Jf. SKM2009.65.SR og TfS.1999.408 LR

Confidential Pursuant to Protective Order

praksis er det tilsvarende fastslået, at også aftaler, hvor der ikke på forhånd er aftalt et udløbstidspunkt for aftalen, men hvor aftalen af både långiver og låntager kan opsiges med få dages varsel, skattemæssigt kvalificeres som lån af aktier og ikke som en afståelse[5].

I en aktielånsaftale mellem långiver og låntager vil långiver således, desuagtet udlånet af aktierne til låntager, stadig skattemæssigt være den retmæssige ejer ("*beneficial owner*") af aktierne og dermed også af udbyttet.

Långivers status som retmæssig ejer skal ses i sammenhæng med, at långiver efter udlånet fortsat anses som den aktuelle aktionær. Om man er aktuel aktionær beror på, om man er aktionær på tidspunktet for deklarering af udbyttet[6], altså om man er aktionær på retserhvervelsestidspunktet.

Deklarering af udbytte vil sædvanligvis ske på selskabets ordinære eller ekstraordinære generalforsamling. Skattemæssigt forstås ved udbytte således alt, hvad der af et selskab udloddes til aktuelle aktionærer[7].

I overensstemmelse hermed fremgår det af SKM 2010.266.SR, at udbytte på udlånte aktier skal beskattes hos långiver. Er der tale om en udenlandsk långiver, vil udbytteskatten typisk skulle nedsættes, såfremt der sker udveksling af oplysninger mellem Danmark og det pågældende land via en dobbeltbeskatningsoverenskomst eller anden aftale. Den udenlandske långiver vil i så fald være berettiget til at søge refusion af den overskydende indeholdte udbytteskat hos de danske skattemyndigheder.

Begrebet retmæssig ejer anvendes i selskabsskattelovens § 2, stk. 1, litra c, og fortolkes i overensstemmelse med begrebet beneficial owner i OECD's modeloverenskomst[8]. Betingelserne for at være beneficial owner er nærmere beskrevet i kommentarerne til artikel 10 om udbytte. Betingelsen om retmæssig ejer vil således fremgå af dobbeltbeskatningsoverenskomsternes udbytteartikel.

Der er i dansk skatteret således ikke hjemmel til, at andre end den part, der efter dansk ret skattemæssigt anses som modtager af pengene fra et selskab, kan få godskrevet eller tilbagebetalt kildeskatter på udbytte.

Det er låntager, der modtager udbyttet på aktierne. Låntager vil som regel kompensere långiver for udbyttet via en såkaldt udbyttekompensation. Overføres

---

[5] Jf. SKM2011.667.SR

[6] Jf. Den juridiske vejledning C.B.3.1 Det skattemæssige udbyttebegreb.

[7] Jf. ligningslovens § 16 A, stk. 2, nr. 1.

[8] I kommentarerne til OECDs modeloverenskomst for dobbeltbeskatningsoverenskomster er udtrykket "beneficial owner" oversat til "retmæssig ejer".

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420468

bruttoudbyttet fra låntager til långiver som udbyttekompensation, vil udbyttekompensationen generelt have en så direkte tilknytning til det udloddede udbytte, at udbyttekompensationen beskattes som udbytte hos långiver[9]. Tilsvarende er låntager ikke skattepligtig af udbyttet, idet låntager de facto blot modtager udbyttet på långivers vegne. Udlodningen af udbyttet har således som udgangspunkt ingen skattemæssige konsekvenser for låntager.

*Den skattemæssige behandling af aktielån med videresalg til tredjemand*
Ved låntagers videresalg til tredjemand anses aktierne ikke for afstået af långiver, for så vidt angår avanceopgørelsen. Dette skal ses i sammenhæng med, at det i låneaftalen mellem långiver og låntager er aftalt, at låntager skal tilbagelevere aktierne, idet der fortsat er tale om et lån. Da aktierne imidlertid er en genusvare, er salget så at sige irrelevant for långiver i avancehenseende. Der sker således ikke afståelsesbeskatning af långiver.

Med tredjemands erhvervelse af aktierne fra låntager bliver tredjemand imidlertid retmæssig ejer af aktierne og dermed også af udbyttet[10]. Udbyttet beskattes således hos tredjemand. Det er dermed også tredjemand, der er berettiget til at modtage en eventuel refusion af indeholdt udbytteskat.

I de tilfælde hvor låntager fortsat skal kompensere långiver for udbytte, som låntager pga. salget til tredjemand ikke har modtaget, kvalificeres udgiften til udbyttekompensationen som et tab omfattet af statsskatteloven.

Som følge af at aktierne er solgt af låntager til tredjemand, kan långiver ikke længere anses som aktuel aktionær. Det er derfor Skatteministeriets opfattelse, at udbyttekompensationen hos långiver beskattes efter statsskatteloven og ikke som udbytte efter ligningslovens § 16 A.

## Vurdering af de fremsendte early warnings

Det må indledningsvist slås fast, at den danske skattelovgivning er indrettet på en sådan måde, at det aldrig på et berettiget grundlag vil være muligt for mere end én part at få godskrevet eller søge refusion for den samme betalte udbytteskat. Det skyldes, at det i dansk skatteret *udelukkende* er den retmæssige ejer af et udbyttet, der er berettiget hertil. I henhold til intern dansk ret er den retmæssige ejer den aktuelle aktionær, dvs. aktionæren på tidspunktet for deklarering af udbyttet.

Søger to parter at få godskrevet eller søge refusion for den samme udbytteskat, sker dette således uhjemlet og vil være i direkte strid med lovgivningen.

---

[9] Jf. SKM2009.65.SR.

[10] Jf. SKM2010.266.SR modsætningsvis.

Det er på den baggrund Skatteministeriets opfattelse, at der må foretages en skarp sondring mellem på den ene side de gældende beskatningsregler og på den anden side kontrollen af, at disse regler overholdes.

### Vurdering af SKAT Store Selskabers early warning.

SKAT Store Selskaber beskriver i indledningen, at ved aktielån registreres låntager som ejer i VP, og der henvises herefter til SKM2010.266.SR vedrørende begrebet retmæssig ejer.

Det er Skatteministeriets opfattelse, at SKM2010.266.SR vedrører en situation, hvor låntager ikke har videresolgt de lånte aktier. Det fremgår ikke af SKAT Store Selskabers early warning, om de beskrevne problemstillinger vedrører situationer med aktielån, hvor låntager stadig er i besiddelse af de lånte aktier, eller om disse er solgt til tredjemand.

Skatteministeriet lægger i det følgende til grund, at SKAT Store Selskabers early warning alene omhandler situationer med aktielån, hvor låntager ikke har videresolgt aktierne, jf. henvisningen til SKM2010.266.SR, samt at der ikke er beskrevet aktielånssituationer med videresalg.

I forhold til eksemplet med banken som låntager, er det Skatteministeriets opfattelse, at når banken ikke har videresolgt de lånte aktier, har banken ikke fradragsret for den betalte udbyttekompensation, og den indeholdte udbytteskat indgår ikke i bankens beregnede selskabsskat. Som det er beskrevet i afsnittet om gældende ret, vil udbyttekompensationen generelt have en så direkte tilknytning til det udloddede udbytte, at udbyttekompensationen beskattes som udbytte hos långiver. Tilsvarende er låntager ikke skattepligtig af udbyttet, idet låntager de facto blot modtager udbyttet på långivers vegne. Udlodningen af udbyttet har således som udgangspunkt ingen skattemæssige konsekvenser for låntager – her banken.

For så vidt angår eksemplet med banken som långiver, er det Skatteministeriets opfattelse, at når aktierne ikke er videresolgt af tredjemand, er banken ikke både skattepligtig af det udloddede udbytte og udbyttekompensationen. Banken er retmæssig ejer af udbyttet jf. SKM2010.266.SR, og udbyttekompensationen er således blot en betalingstransaktion, der træder i stedet for udbyttet, som netop er modtaget af låntager. Der er således ikke tale om, at samme beløb beskattes to gange.

Af den opsummerende problemstilling fremgår det, at låntagers betaling af udbyttekompensation er fradragsberettiget, selvom det modtagne udbytte ikke er skattepligtigt. Skatteministeriet er som ovenfor nævnt ikke enig heri, idet der i aktielånssituationer uden videresalg er så nær en tilknytning mellem udbyttekompensationen og det modtagne udbytte, at udbyttekompensationen

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420470

beskattes som udbytte hos långiver. Låntager har således ikke fradragsret for betalt udbyttekompensation i disse situationer.

Det nævnes herefter, at SKAT ikke kan stole på de indberettede oplysninger, hvilket giver stor risiko for fejl, som kan afstedkomme dobbeltbeskatning eller dobbelt ikke-beskatning. Der er ikke anført eksempler på tilfælde med dobbeltbeskatning eller dobbelt ikke-beskatning, og Skatteministeriet kan derfor ikke forholde sig konkret hertil.

Endelig nævnes det, at de manglende valide indberetninger til SKAT medfører, at SKAT skal foretage manuel kontrol.

Det er Skatteministeriets opfattelse, at der er tilstrækkelig klarhed over den skattemæssige behandling af aktielån. Der er desuden gode grunde til, at den skattemæssige behandling af aktielån er, som den er. Skatteministeriet ser det således ikke som en brugbar løsning at følge SKAT Store Selskabers forslag om at opgive beneficial owner begrebet til fordel for et registreringsbaseret ejerskab.

Opgives beneficial owner-begrebet, vil det blive muligt - via aktieudlån - at flytte ejerskabet til aktierne i en vilkårlig periode henover tidspunktet for deklarering af udbytte for derved at få nedsat eller helt undgå den danske kildeskat på aktier. Hvis låntager anses for retmæssig ejer i en aktielånskonstruktion, vil udbyttet således skulle beskattes efter de regler, der gælder for låntager, herunder en eventuel dobbeltbeskatningsoverenskomst mellem Danmark og den stat hvor låntager er hjemmehørende. Det følger af praksis, bl.a. i SKM2010.266.SR, at långiver er retmæssig ejer. Beskatningsgrundlaget bevares således i disse situationer, og kildeskatten på udbytter kan ikke undgås ved at spekulere i periodisk at flytte ejerskabet.

Begrebet er således essentielt i forhold til de verserende sager i kapitalfondskomplekset, og hvis begrebet opgives, vil det få betydelige konsekvenser herfor, *jf. mere herom nedenfor.*

### Vurdering af SKAT Juras early warning.
Af SKAT Juras early warning fremgår, at den danske skattemæssige behandling af aktielån angiveligt afviger fra den skattemæssige behandling af aktielån i resten af verden.

Det må indledningsvist fastslås, at Danmark anvender beneficial owner-begrebet i overensstemmelse med OECD's modeloverenskomst, hvor betingelserne for at være retmæssig ejer er nærmere beskrevet i kommentarerne til artikel 10 om udbytte.

Som det er beskrevet i afsnittet om gældende ret, er der ikke hjemmel til, at andre end den part, der efter dansk ret skattemæssigt anses som modtager af pengene fra et selskab, det vil sige den part, der er retsmæssig ejer, kan få godskrevet eller

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420471

tilbagebetalt kildeskatter på udbytte, i det omfang betingelserne herfor i øvrigt er opfyldt, herunder at skatteyder i medfør af en dobbeltbeskatningsoverenskomst er beneficial owner.

Beneficial owner-begrebet skal som nævnt også ses i relation til kapitalfondssagerne, idet en opgivelse af beneficial owner-begrebet kan åbne op for, at udbytter blot kan føres derhen, hvor skatten er lavest.

At andre lande muligvis anlægger en anderledes fortolkning af beneficial owner-begrebet i relation til parterne i et aktielånsarrangement er således uvæsentligt for dansk skatteret og ses desuden ikke at afhjælpe tvivlsspørgsmålene vedrørende ejerskab – snarere tværtimod.

Som svar på SKAT Juras opfattelse af den danske udlånspraksis er det korrekt, at såfremt banken låner danske aktier til en udenlandsk låntager, og låntager modtager udbytte på aktierne i udlånsperioden, er banken skattepligtig af udbyttet, jf. SKM2010.266.SR. Det er tilsvarende Skatteministeriets opfattelse, at det af SKM2010.266.SR modsætningsvist følger, at i den situation hvor låntager har videresolgt de pågældende aktier til tredjemand, bliver tredjemand beneficial owner af udbyttet.

Når banken indgår en aktielånsaftale, må banken sikre, at den opfylder kravene for at få godskrevet udbyttet herunder ved at anskaffe den nødvendige dokumentation fra låntager i form af udbyttenota eller andet, hvoraf det bl.a. fremgår med hvilken skattesats, der er indeholdt udbytteskat. Sker der videresalg af aktierne fra låntager til tredjemand, må banken ikke godskrive udbyttet. Godskrives den indeholdte udbytteskat helt eller delvist to gange, er dette i strid med gældende ret.

I overensstemmelse med det anførte i vurderingen af SKAT Store Selskabers early warning, må det i vurderingen af SKAT Juras early warning - i forhold til fradrag for udbyttekompensation og eksemplet med banken som låntager - tilsvarende konkluderes, at når banken ikke har videresolgt de lånte aktier, har banken ikke fradragsret for den betalte udbyttekompensation, og den indeholdte udbytteskat indgår ikke i bankens beregnede selskabsskat.

Som i SKAT Store Selskabers early warning lægges der i SKAT Juras early warning tilsvarende vægt på, at de manglende valide indberetninger til SKAT medfører, at SKAT skal foretage manuel kontrol Hertil skal det bemærkes, at det er vigtigt at sondre mellem det materielle regelsæt for den skattemæssige behandling af aktielån og SKATs problemer med at kontrollere, at regelsættet overholdes. Hvis SKAT har problemer med at kontrollere, at reglerne overholdes, er det en problemstilling, der skal behandles med udgangspunkt i indberetningsreglerne og SKAT's kontrolbeføjelser og ikke det materielle regelsæt for den skattemæssige behandling af aktielån.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420472

## Konklusion

I begge early warnings synes et centralt element i forhold til problemstillingen at være, at den skattemæssige og civilretlige behandling af aktielån er forskellig. Selvom långiver skattemæssigt er den retmæssige ejer af aktierne, er det låntager der indberettes til SKAT som ejer af aktierne.

Aktielånskonstruktionen indebærer dermed en risiko for, at begge parter i aftalen søger refusion for den indeholdte udbytteskat, selvom det alene er den ene part, der er berettiget hertil.

Den skattemæssige behandling af udbytte i forbindelse med aktielån er tilstrækkeligt klarlagt via offentliggjort praksis. Praksis efterlader ingen tvivl om, hvem der er den retmæssige ejer af udbyttet, og dermed hvem der er berettiget til eventuel udbytterefusion.

På den baggrund ses der ikke at være behov for lovgivningsinitiativer, for så vidt angår indholdet af de gældende beskatningsregler. Hertil kommer, at der er gode grunde til, at långiver anses for retmæssig ejer i aktielånsaftaler, hvor der ikke sker videresalg til tredjemand. Opgives beneficial owner-begrebet, vil det blive muligt - via aktieudlån - at spekulere i at flytte ejerskabet til aktierne på tidspunktet for deklarering af udbytte for derved at opnå en hel eller delvis nedsættelse af udbyttebeskatningen. En opgivelse af beneficial owner-begrebet vil desuden få stor betydning for de verserende retssager mod kapitalfonde.

De mulige risici i forbindelse med aktielån skal først og fremmest ses i lyset af, at der kan være uoverensstemmelser mellem de til SKAT indberettede oplysninger og det faktiske skattemæssige ejerforhold, hvilket kan gøre det vanskeligt at sikre korrekt beskatning af udbytte.

Skatteministeriet vil dog under alle omstændigheder analysere de gældende regler for beskatning, indeholdelse og indberetning af udbytte med henblik på at sikre, at reglerne er tilstrækkeligt robuste. Dette vil bl.a. ske ved, at der nedsættes en ny tværfaglig arbejdsgruppe på udbytteområdet med deltagelse af de relevante ministerier, SKAT og Finanstilsynet.

Herudover har Skatteministeriet forstået, at SKAT vil undersøge pengeinstitutternes ageren på området, idet der er tegnet et billede af, at nogle pengeinstitutter tilsyneladende ikke har fortolket skattereglerne om aktielån korrekt.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00420473