BRUCE DUBINSKY
EXHIBIT 5201
03 - 29 - 2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br>CUSTOMS AND TAX ADMINISTRATION OF<br>THE KINGDOM OF DENMARK<br>(SKATTEFORVALTNINGEN) TAX REFUND<br>SCHEME LITIGATION | No. 18-MD-2865-LAK |

# REBUTTAL REPORT OF BRUCE G. DUBINSKY
# MST, CPA, CFE, CVA, CFF, CAMS, MAFF

# February 1, 2022

CONFIDENTIAL
Rebuttal Report of Bruce G. Dubinsky
February 1, 2022
Page 12

24. Similarly, when Carr discusses the dividend from Chr. Hansen of DKK 5,092,889 (approximately USD $850,000) that was purportedly received by the Proper Pacific Plan in December 2014, Carr cites to the Old Park Lane custodian statement as evidence that the dividend was paid.[22] However, the dividend in the custodian account statement is only a book entry. There is no evidence that the Proper Pacific Plan actually received the cash from this supposed dividend. Further, the date included next to the purported dividend on the Old Park Lane statement is November 28, 2014,[23] which is the ex-date of the dividend and pre-dates the issuer's payment date (December 2, 2014). This further highlights the fictitious nature of this transaction, as it is simply impossible to receive a cash dividend 4 days <u>before</u> the actual dividend payments were made to real holders of the Chr. Hansen stock.[24]

25. Further, I have reviewed all the Solo Capital bank statements which have been produced to date and have seen no evidence of the purported dividends being received for the Proper Pacific Plan or any other Plan for holdings of Chr. Hansen shares.[25] By contrast, there is evidence, as one would expect, that Solo Capital received actual cash payments from the tax reclaim agents (Goal, Syntax and Acupay) of the proceeds from the refund payments made by SKAT. For example, the Proper Pacific Plan sought a refund of DKK 854,527.05 for its purported ownership of 839,500 shares of Chr. Hansen.[26] On May 22, 2015, Goal Taxback sent an email to Old Park Lane informing Old Park Lane that Goal Taxback initiated a payment of DKK 345,671,015.02 in connection with Danish refund payments.[27] Goal Taxback attached a spreadsheet identifying each of the 51 refund payments on behalf of 17 pension plans and other entities which were included in the total payment made by Goal to Old Park Lane.[28] Among the specific refund payments is the DKK 854,527.05 refund payment for the Proper Pacific Plan's reclaim application for Chr. Hansen shares. I have traced Goal Taxback's payment of DKK 345,671,015.02 into Solo Capital's DKK bank

---

[22] Carr interestingly never discusses the fact that Old Park Lane was an entity related to Shah and Solo. Related party transactions are transactions that auditors and forensic accountants must pay particular attention to as many frauds occur through the manipulation and/or fabrication of documents between related parties. *See* my Expert Report for discussion on related parties in the Solo Trades.
[23] PROPPACIF00000955.
[24] S&P Capital IQ.
[25] SCPADMINISTRATORS_00000001- SCPADMINISTRATORS_00005864.
[26] SKAT_MDL_001_00088872 at 88900.
[27] ELYSIUM-04281988.
[28] ELYSIUM-07574930.

account at Barclays on May 22, 2015 (see **Figure 4** below).[29]



Figure 4 – Solo Capital's Barclays Account Statement for May 2015

26. An internal Old Park Lane cash summary spreadsheet shows that Old Park Lane credited the refund payment of DKK 845,982 for Chr. Hansen shares to the Proper Pacific Plan's custodian account on the date the payment was received (May 22, 2015).[30]

27. I reviewed each Bellwether Plan and found that there is no evidence of funds from dividends being paid to the Plans' bank account statements and only evidence of money from the tax reclaims being received by the Plans (if any money was received at all), which is further detailed in the analysis performed in Exhibit 4 of my Expert Report.

---

[29] SCPADMINISTRATORS_00005493 at 96.
[30] ELYSIUM-10379199 at PPL01.

## IV. CONCLUSION

28. Based on my review of the Carr Report, I conclude that Carr's opinions and conclusions are fatally flawed for the following reasons:

    - Carr relies on the false assumption that the trade confirmations and customer account statements reflect real securities transactions.
    - Carr failed to perform a forensic accounting analysis to independently confirm the existence of the shares and receipt of the cash dividends. As demonstrated in my Expert Report and this Rebuttal Report, a forensic accounting analysis establishes that the purported facts on which Carr relies are not real.
    - Carr failed to consider evidence that shows that the shares did not exist.
    - Carr failed to consider evidence that shows that the dividends were never received by, or on behalf of the Plans.



Bruce G. Dubinsky, MST, CPA, CFE, CFF, MAFF, CAMS

February 1, 2022