# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to: 1:19-cv-01867-LAK,
1:19-cv-01868-LAK, 1:19-cv-01869-LAK,
1:19-cv-01895-LAK, 1:19-cv-01896-LAK,
1:19-cv-01898-LAK, 1:19-cv-01904-LAK,
1:19-cv-01906-LAK, 1:19-cv-01911-LAK,
1:19-cv-01924-LAK

Master Docket 18-md-02865 (LAK)
ECF Case

---

**DECLARATION OF FOREIGN LAW OF KASPER BECH PILGAARD IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINTS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

---

## BACKGROUND

I, the undersigned Kasper Bech Pilgaard, state the following:

1.      I have written this legal opinion at the request of Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, and Routt Capital Pension Plan (collectively, "Defendants") to be submitted to the courts in New York, in the United States of America, as evidence of Danish law.

2.      The opinion rendered herein is a legal opinion on legal matters, which I am entitled to give on the basis of my knowledge of Danish law.

3.      My compensation for rendering this opinion has been agreed on a per-hour fee basis.  My compensation does not depend in any way on the opinions I have rendered.

4.      I have also been retained as counsel for Richard Markowitz and to advise certain pension plans in connection with their appeals before the Danish National Tax Tribunal agency in Denmark.

5.      I have based my legal opinion exclusively on official rules and documents, without regard to any other fact of which I may have been informed by Defendants or any other person.

6.      Attached to my declaration are true and correct copies of Danish laws, regulations, and materials that I have cited herein, and accompanying English translations as needed.

## EXPERTISE

1.      I am a lawyer in Denmark, and I currently practice law at the TVC Law Firm (formerly, Advokatfirmaet Tommy V- Christiansen).  From 2010 to 2015, I served as a litigation specialist in tax matters at this firm, and since 2015, I have served as a partner.

2.      I received my law degree from Aarhus University in 2006.

3.      I was head of section at the Danish National Tax Tribunal from 2007 to 2010.

4.      In 2008 and 2009, I served as an external lecturer at Aarhus University, and since 2010, I have taught several seminars regarding tax law and relevant issues.

5.      In 2014, I received a master's degree in taxation from the Copenhagen Business School, with an award for thesis of the year.

## LEGAL OPINION

**The Danish Constitution & The Role of the Danish Parliament**

1.      The Constitution of Denmark provides for a constitutional monarchy system of government.  *See* Exhibit A (The Constitution of Denmark), at Section 2.

2.      Section 3 of the Constitution of Denmark formally establishes the division of power between the King (or Queen), the courts, and the Parliament (*Folketinget*) of Denmark.  *See* Exhibit A, at Section 3.  According to the Constitution, the King and *Folketinget* jointly hold the legislative authority, whereas the King holds executive authority, and the courts hold the judicial authority.  Exhibit A, at Section 3.

3.      Reference to the King is merely of historic significance, and the Royal Family in Denmark has in practice no political influence or power.

4.      The 179 members of *Folketinget* are elected by Danish, Faroe Island, or Greenland citizens and pass legislation through a defined legislative process.  Once the members

of the *Folketinget* have been established through an election, a government is constituted by way of political negotiation between the parties.

5. The prime minister appoints ministers. The Constitution of Denmark also provides that "[t]he Ministers shall be responsible for the conduct of government; their responsibility shall be defined by statute." Exhibit A, at Section 13.

6. Consistent with this Constitutional provision, there were currently 22 ministries in Denmark, including the Ministry of Finance and the Ministry of Taxation, immediately prior to the June 5, 2019 election.

**Funding of the Danish Government**

7. With regard to the funding of the Danish government, Section 45 of the Constitution of Denmark states that the government shall submit a Finance Bill to the *Folketinget* no later than four months before the beginning of the applicable fiscal year. Exhibit A, at Section 45.

8. Section 46(2) of the Constitution of Denmark states that government funds can only be expended if the *Folketinget* passes a Finance Act, or a supplementary or provisional appropriations act providing for funding. Exhibit A, at Section 46(2).

9. The monies that fund the Danish government are contained in the Public Accounts.

10. The authority governing the funding and maintenance of these accounts is set out in the Public Accounts Law (*Regnskabsloven (Lov nr. 131 af 28. marts 1984 om statens regnskabsvæsen m.v.*). *See* Exhibit B. This law also states that the Minister of Finance is permitted to issue relevant service regulations for the maintenance of the funds and accounts.

11.     In turn, the relevant service regulation (*regnskabsbekendtgørelsen*) states that the Public Accounts shall be used to finance state expenses and that the Agency for Modernisation (*Moderniseringsstyrelsen*) is responsible for the management of the funds.  *See* Exhibit C.

12.     In accordance with Section 47(2) of the Constitution of Denmark, the *Folketinget* elects auditors who "examine the annual Public Accounts and ensure that all the revenues of the State have been duly entered therein, and that no expenditure has been defrayed unless provided for by the Finance Act or some other Appropriation Act."  Exhibit A, at Section 47.

**The Finance Act**

13.     Consistent with Section 46(2) of the Constitution of Denmark, the Finance Act provides funding for all Danish government ministries and their subordinate institutions, such as universities and the armed forces of Denmark, known as the Danish Defence.  *See* Exhibit D (Overview section of 2019 Finance Act).

14.     The *Folketinget* must pass a new Finance Act every year.  Exhibit A, at Section 45(1).

15.     As a result of a long-standing political tradition, the Minister of Finance initiates the process by introducing a Finance Bill no later than August 31 for the following financial year.

16.     The Finance Committee of the *Folketinget*, which includes 17 members, then reviews the Finance Bill.  The Finance Committee's mandate is to oversee matters related to the Danish government's draft budget, as well as applications for funding, additional appropriations, government borrowing, public accounts, and financial policies generally.  From September through December, all ministers must lobby for funding for their ministries.

17.     The *Folketinget* typically holds a final vote on the budget in December, and the enacted budget takes effect once the King (or Queen) and the Minister of Finance signs it into law, and the government publishes it, which is typically on January 1.  Exhibit A, at Sections 14, 22.

18.     The Finance Committee also has exclusive control over in-year adjustments to the budget.  At the end of the year, the Ministry of Finance collects the adjustments that the Finance Committee has approved throughout the year, and it submits a Supplementary Appropriation Act to the *Folketinget* for formal approval.

19.     If an agency spends more than it is allotted by the Finance Act, then the *Folketinget*, with a request from and the support of the Minister of Finance, is responsible for providing funding to the agency to continue its operations.

20.     There are three ways in which the *Folketinget* and the Minister of Finance can provide additional funding:  (1) by supplementary permit, (2) through Provision 45 of the Finance Act, which provides for supplementary authorization of funding, or (3) by application to the Finance Committee.

**The Role of the Ministry of Finance**

21.     The Ministry of Finance plays a central role in the administration of the Danish government's budget.

22.     With the authorization of the Finance Act, the Ministry of Finance provides funding to other agencies.  Traditionally, the funding is allocated to the relevant ministries through the Finance Act, and each provision contains a specification as to how much money is allocated to each of the agencies.  *See generally* Exhibit D.

23.     According to Provisions 2(2) and 3 of the State Account's Act, the Minister of Finance is also authorized to establish rules that govern the bookkeeping of the government of Denmark.  *See* Exhibit E.

24.     Consistent with this responsibility, the Minister of Finance has established Ministerial Order No. 116 of February 19, 2018 (*Bekendtgørelse om statens regnskabsvæsen mv.*) (Order No. 116) to establish the procedures that govern the expenditure of state funds.  *See* Exhibit F.

25.     Provision 4 of Order No. 116 states that the Ministry of Finance provides funds to the agencies to realize the tasks assigned to them.  *See* Exhibit G; *see also* Exhibit A, at Section 45.

26.     Provision 6 of Order No. 116 states that the Agency for Modernisation, an agency under the Ministry of Finance, is responsible for distributing the funds to those agencies.  *See* Exhibit C.

27.     The Ministry of Finance is also responsible for the payment of Denmark's government debts.  *Cf.* Exhibit H ("Agreement between the Ministry of Finance and Danmarks Nationalbank on the division of tasks in the area of government debt"); *see also* Exhibit I (Consolidated Act no. 849 of 22 June 2010).

**The Role of the Ministry of Taxation**

28.     With regard to taxation in Denmark, Section 43 of the Constitution of Denmark states, "No taxes shall be imposed, altered, or repealed except by statute; nor shall any man be conscripted or any public loan be raised except by statute."  Exhibit A, at Section 43.

29.     The Ministry of Taxation is the government agency authorized to collect taxes on behalf of the Danish government.

30.     In 1975, the Ministry of Taxation was moved out of the Ministry of Finance, and it was established as a distinct and independent ministry.

31.     As a result, today the Ministry of Taxation is not part of the Ministry of Finance; it is a separate agency with a separate set of responsibilities.

32.     The Ministry of Taxation comprises four parts: (1) the Danish Customs and Tax Administration, also known as *Skatteforvaltningen*, (2) The Department of the Ministry, (3) the Danish Gambling Authority, and (4) the Danish Tax Appeals Agency.

33.     *Skatteforvaltningen*, in turn, comprises seven agencies: (1) the Danish Tax Agency, (2) the Danish Customs Agency, (3) the Danish Motor Vehicle Agency, (4) the Danish Debt Collection Agency, (5) the Danish Property Assessment Agency, (6) the Administration and Services Agency of the Danish Ministry of Taxation, and (7) the IT and Development Agency of the Danish Ministry of Taxation.

34.     The independence of the Ministry of Taxation from the Ministry of Finance is reflected in several laws that allocate the competence to make decisions and to issue rules and regulations for particular areas of the law to each minister's portfolio.

35.     The Danish laws governing the authority of the Ministry of Taxation, such as the State Tax Act (*statsskatteloven*), the Danish Tax Assessment Act (*ligningsloven*), the Danish Tax Control Act (*skattekontrolloven*), the Tax at Source Act (*kildeskatteloven*), the Tax Administration Act (*skatteforvaltningsloven*), and the Collection of Debt Act (*inddrivelsesloven*), each allocate specific decision-making, rule-making, and regulation-promulgation authority to the Ministry of Taxation.  *See, e.g.*, Exhibits J, K, L, M (Danish Tax Assessment Act, Provisions 14G(6-7), 32D, 33A(4), & 34); Exhibits N, O, P, Q (Danish Tax Administration Act, Provisions

8, 15A, 49, & 64); Exhibits R, S, T, U (Danish Tax Control Act, Provisions 8, 14, 41, & 52; Exhibits V, W, X, Y (Tax at Source Act, Provisions 54, 55A, 85, & 114 ).

36.     All of these decision-making, rule-making, and regulation-promulgation authorities relate to the assessment and collection of taxes.

37.     Although *Skatteforvaltningen* is the agency responsible for the collection of taxes, *Skatteforvaltningen* is obligated to pay the tax revenues and other funds that it collects to the Ministry of Finance.

38.     This requirement is derived from the Ministry of Finance's exclusive competence to allocate and expend state funds, including the distribution of funds to other government agencies, as authorized by the Finance Act.  *See* Exhibit A, at Section 46(2).

39.     As noted above, the tax revenues that the Ministry of Finance receives from *Skatteforvaltningen* are contained in the Public Accounts that belong to the Kingdom of Denmark and are administered by the Ministry of Finance, as described above.  *See supra* ¶ 10.

40.     I am not aware of any legal authority that provides a legal title or ownership interest to *Skatteforvaltningen* in the tax revenues and other funds it collects in administering the tax laws.

41.     *Skatteforvaltningen* does not distribute the tax revenues to any other parties or agencies, nor does it have a role in determining how funds are allocated among government ministries or agencies, as this responsibility and authority belongs to the Ministry of Finance and the *Folketinget*.  *See supra* ¶¶ 22-23.

42.     In fact, *Skatteforvaltningen* has no obligation to pay a fixed or certain sum to the Ministry of Finance or any other government agency.  In the event of a shortfall in the collection of tax receipts for any reason, *Skatteforvaltningen* does not suffer any financial loss; nor is there

any recourse against *Skatteforvaltningen* in the event that the amount of taxes it remits to the Ministry of Finance does not reach a certain level in any given fiscal year or is less than what was budgeted for the year. Similarly, *Skatteforvaltningen* does not benefit from any surplus in taxes it collects.

### *Skatteforvaltningen* Acts As A Tax Collection Agent for Non-Government Entities

43.      *Skatteforvaltningen* also serves as a tax collection agent for non-government agencies or entities.

44.      For example, pursuant to Provision 14 in the Local Income Tax Act (*kommuneskatteloven*), *Skatteforvaltningen* collects taxes to support the Church of Denmark directly from Danish citizens, referred to as the "Church Tax." *See* Exhibit Z.

45.      These revenues are used to fund the Church of Denmark in accordance with The Act Regulating the Economy of the State Church (*Lov om Folkekirkens Økonomi*). *See* Exhibit AA. These revenues do not belong to the Danish government or *Skatteforvaltningen*.

46.      *Skatteforvaltningen* does not accrue any benefits or suffer any consequences of an increase or decrease in the funding it collects as part of the Church Tax.

### Authority to Bring Suit

47.      *Skatteforvaltningen* has authority under Danish law to use a variety of methods to pursue tax-related claims. For example, *Skatteforvaltningen* is permitted under the Collection of Debt Act to impose a lien, to attach a taxpayer's income or salary, and to set-off a taxpayer's debt. *See* Exhibit BB.

48.      However, I am not aware of any legal authority that delegates the responsibility to *Skatteforvaltningen* to bring claims if the debt does not result from a tax obligation incurred by the defendant.

Case 1:18-md-02865-LAK Document 835 Filed 06/12/19 Page 11 of 11

49.     I am also not aware of any legal authority that would prohibit the Kingdom of Denmark from filing a suit in a U.S. court on its own behalf.

* * *

Pursuant to 28 U.S.C. § 1746, I, the undersigned Kasper Bech Pilgaard, state under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed on June 11, 2019

Kasper Bech Pilgaard
Copenhagen, Denmark