CERTIFIED TRANSLATION

SKM2001.65.ØLR    TfS 2001, 171    ØL2000.B-2849-96

# The Danish Eastern High Court's judgment of 22 December 2000, case no. B-2849-96

(High Court Judges Højgaard Pedersen, Bloch Andersen and Michael Vendelbo (acting)) Deres Design A/S (attorney K.L. Németh, represented by attorney Anders Németh (test)) versus the Danish Ministry of Taxation, The Danish Tax Agency (Told- og Skattestyrelsen) (Kammeradvokaten, the Legal adviser to the Danish Government, represented by attorney Finn Jepsen)
TfS 2001, 171

SKM2001.65.ØLR

## Post-clearance recovery of customs duties and import VAT, False certificates of origin, Inaction

(Deres Design A/S) By import in 1991 of goods from Bangladesh, a tariff preference had been obtained according to the rules on import of goods from certain developing countries. It was assumed that the goods actually originated from China, which would give rise to post-clearance recovery of missing duty amounts. The claim was not considered to be barred by limitation or lapsed due to inaction.

## Eastern High Court of Denmark

In this case, which was instituted on 6 November 1996, the plaintiff, Deres Design A/S, has made a claim for the defendant, the Danish Ministry of Taxation, the Danish Tax Agency, to acknowledge that the defendant is not entitled to claim post-clearance recovery of underpaid tariffs and import VAT from the plaintiff in the amount of DKK 530,570.89.

The defendant has made a claim for dismissal. In addition, in a pleading of 31 March 1999, the defendant has submitted a claim for the plaintiff to be ordered to pay to the defendant an amount of DKK 530,570.89 plus interest of 1.3% per month or fraction thereof of DKK 77,437.73 from 1 May 1990, of 93,985.36 from 1 June 1990, of DKK 61,117.66 from 1 August 1990, of DKK 9,179.42 from 1 September 1990, of DKK 83,921.60 from 1 December 1990, of DKK 58,491.96 from 1 April 1991 and of DKK 146,437.16 from 1 June 1991, each until payment is made.

In response, the plaintiff has made a claim for dismissal.

*Background:*

In the period of February 1990 to April 1991, Deres Design, through agents, imported a large number of T-shirts from Bangladesh. As documentation for the origin of the goods, 13 GSP certificates were enclosed with Deres Design's customs declarations which presented as having been issued by the competent authority in Bangladesh, Export Promotion Bureau (E.P.B.). On the basis hereof, Deres Design obtained a tariff exemption under the rules on tariff preference for imports into the EC of goods from certain developing countries.

The defendant states that based on a suspicion that textiles imported with a stated origin in Bangladesh might be of Chinese origin, the European Commission in December 1991 asked the customs authorities in the individual member states to initiate a control of whether textiles with a stated Bangladesh origin actually were of this origin. The Danish customs authorities subsequently forwarded a number of GSP certificates to the Commission which in turn forwarded them to E.P.B. in Bangladesh for verification. This included 9 of the 13 certificates dealt with in this case.

In a letter, the date of which the parties agree is rightly 22 July 1992, the Embassy of Bangladesh in Brussels informed the Commission that the results of a verification investigation had shown that 165 of the 241 certificates examined had not been issued by E.P.B. In the appended list of GSP certificates issued by E.P.B., the 9 certificates concerned here were stated as not issued by E.P.B.

By letter of 31 October 1992, E.P.B. sent the Commission a copy of the register of the certificates which E.P.B. had issued to Denmark, i.a. in the period concerned here. None of the 13 certificates, including the 4 that were not presented, appeared from this register. The list of presented certificates that were not issued by E.P.B. still included the 9 certificates mentioned above. The letter also stated that an examination of the mentioned certificates established that the facsimile stamp on the certificates did not correspond to the facsimile stamp on the authorisation endorsements authorised by E.P.B. for this purpose.

On 17 December 1992, a meeting was held between Customs and Tax Region City and Deres Design, at which the region provided a letter of the same date, describing the above-mentioned investigations. The letter states:

"…

The assumptions for the requested – and obtained – tariff exemption are consequently void, and customs duties in accordance with the tariffs are thus payable in accordance with section 2 of the Danish Ministry of Taxation's then Consolidation Act no. 610 of 14 October 1988 as subsequently amended, cf. section 2 of the current Consolidation Act no. 153 of 27 February 1992. The lapse of tariff exemption also means that the calculated import VAT must be adjusted.

With due consideration of the applicable EC rules on limitation of post-clearance recovery for customs duties etc., the region hereby notifies the company A/S Deres Design of a claim for payment of customs duties, provisionally calculated at DKK 434,894.59, and payment of import VAT, provisionally calculated at DKK 95,676.68, concerning the mentioned customs clearance.

…"

In a letter of 21 December 1992, Deres Design's attorney rejected the claim, stating that the region would receive further details from him when he had had the opportunity to review the case with his client.

In a letter of 21 February 1994 from the customs and tax region to Deres Design, the following was stated:

"…

As the company – or its attorney – has not contacted us, the region has assessed the customs duties payable to DKK 434,894.61 and the import VAT payable to DKK 95,676.28, totalling DKK 530,570.89, in pursuance of section 39(2) of <u>Act no. 1116 of 22 December 1993</u> (the Danish Tariff Act (*toldloven*)), cf. the appended statement of 21 February 1994, for which A/S Deres Design is liable as the importer, cf. section 39(1) of the same act.

…"

In a letter of 2 March 1994, Deres Design's attorney again rejected the company's liability to pay.

On 19 August 1996, the Danish Tax Agency informed Deres Design's attorney of the following decision:

"The Danish Tax Agency has written to you on several occasions in connection with the above case.

In letters dated 27 January 1995, 23 August 1995 and 11 October 1995, respectively, you have been asked to clarify your specific complaint to the Agency and to make a statement with regard to the letter from Customs and Tax Region Copenhagen 1 (City) dated 25 November 1994.

Notwithstanding the lack of response on your part, the Tax Agency has decided to process the case as a complaint against the actual decision by Customs and Tax Region Copenhagen 1 (City) (post-clearance recovery of underpaid customs duties, DKK 530,570.89).

The Danish Tax Agency accordingly informs you that the decision made by Customs and Tax Region Copenhagen 1 (City) is maintained.

The reason is as follows:

In December 1991, the European Commission informs the member states that there is a justified suspicion of fraud involving the generalised system of preferences (GSP) in Bangladesh. The matter concerns incorrect statement of origin of textiles.

Based on this, the member states' customs authorities – including Told&Skat in Denmark – send a number of GSP certificates for subsequent control by the authorities in Bangladesh.

The result of the very comprehensive verification measures appears from a letter from the competent authorities in Bangladesh dated 31 October 1992 (copy enclosed).

The letter concerns a list of submitted certificates which the competent authorities have not issued as well as a copy of the register kept by the competent authorities of the certificates issued.

These lists state that the documents of origin presented by your client (Form A) in connection with 9 customs clearances of goods from Bangladesh in the period of 24 January 1990–6 March 1991, either 1) positively appears on the list of certificates that are not issued by the authorities, or 2) are not on the list of certificates issued by the authorities.

The 13 certificates concerned are consequently considered invalid.

For this reason, preferential tariff treatment cannot be granted, as the granting of preferential tariff treatment under the GSP rules requires presentation of a valid Form A (cf. then applicable Council Regulation 693/88, art. 7 – copy enclosed).

This means that too little customs duties and import VAT were paid at the clearance of the imported consignments.

The difference between the paid customs duty/import VAT and the actual customs debt/import VAT, cf. art. 2 of the then Council Regulation 1697/79 (copy enclosed) must be recovered post-clearance by the customs authorities, i.e. in this case Customs and Tax Region Copenhagen 1 (City).

Based on the above, the Agency must maintain the decision made by Customs and Tax Region Copenhagen 1 (City) of 17 December 1992 as repeated in the letter of 21 February 1994.

A subsequent final administrative decision can be brought before the courts within three months from the date hereof, cf. section 71(5) of the Danish Tariff Act."

Deres Design subsequently instituted this case.

For use in the case, the report is submitted which the Commission prepared of the examinations carried out in October and November 1992 in Bangladesh based on suspected fraud involving textiles. The report states the following, from Danish translation:

**"3. Preliminary investigations in Hong Kong**

…

3.2. These investigations confirmed the general transshipment element of the "Bangladesh trade" as well as the more specific element that the transshipped goods – primarily category 4 textiles – had been originally shipped (via Hong Kong) from the People's Republic of China – confirmatory documentation hereof was found in the relevant archives concerning the Hong Kong Transshipment Cargo Exemption Scheme.

…

**4. Other irregularities in Bangladesh**

*The generalised system of preferences (GSP)*

4.1. In addition to and in parallel with the "transshipment element" in the case files, the investigations documented systematic irregularities with respect to an apparent forgery of GSP certificates of origin, Form A, which are used to accompany the majority of the Bangladesh textile exports to the Community.

**5. Export Promotion Bureau**

5.2 Employees from the Export Promotion Bureau have confirmed that though there was a requirement for the companies applying for certificates of origin/Form A to register with the Export Promotion Bureau, the registration system was not launched until the end of 1991. A system for digitising files was incomplete – the work had not been started until in 1991. Similarly, digitising of statistical information had only been started that same year as this had been collected manually up until then.

…

**6. Other investigations**

6.1 Other investigation undertaken in Bangladesh document the indications that there were certain common denominators of the transactions made by various receiving companies to the extent it was possible to identify certain Bangladeshi agents or "trading houses" involved in the contractual side of the purchases.

…"

*Statements*

John Ginsborg has explained, among other things, that he is the owner of Deres Design and the managing director of the company, at which he has been employed for 30 years. Deres Design operates retail stores that sell clothes designed and produced in Denmark or other countries. The T-shirts concerned were a standard commodity traded in large quantities with a limited profit per unit sold. The T-shirts were purchased through the agent, C. Jahn, which the witness considers to be one of the best agents for Bangladesh. The tariff exemption was a parameter in the assessment of C. Jahn's prices. The specifications of the T-shirts appeared from the agreement with C. Jahn, but the purchase agreements were made directly with

the trading houses in Bangladesh, against whom the letters of credit were also opened. C. Jahn received percentages concerning the contracts. He cannot judge whether there is a basis for making a claim against the trading houses in Bangladesh or C. Jahn based on this case. The witness did not participate in the actual purchase and clearance of the T-shirts but knew how many were purchased. He signed the letters of credit when they were opened. At the time of ordering, a delivery outline was made, stating when delivery was due. To comply with deadlines, the goods were sometimes shipped by air. Deres Design has never experienced a situation like this since the company started in 1957. No one at Deres Design expected the GSP certificates to be forged – and they consequently continued the import. They had no special presumptions about the appearance of the GSP certificates but assumed that they should look like corresponding certificates from other countries. They did not hear from Told&Skat, the Danish Customs and Tax Authorities, about any issues with GSP certificates from Bangladesh prior to this case.

Steen Dyrstad has stated that he is employed with Deres Design A/S. He was a purchaser in 1990-91 and took part in the import of the T-shirts concerned. The T-shirts were standard, made of cotton, with round neck and short sleeves. It was a basic item purchased through agents. It was an inexpensive article with a low profit. Everyone made them basically the same. The agent may trade thousands of T-shirts for the individual customers. They used 2 agents – C. Jahn for about 90% and the company Nisco Tex ApS. Deres Design entered into the contracts CFR so that the goods were delivered free in Copenhagen. They were typically informed of the shipping company's name and agent and the name and arrival date of the vessel. The shipment date, packing lists, GSP and certificates of origin were secured through the agent as conditions for the letter of credit. The documents were sent from the seller's bank to the buyer's bank, after which the money was made available. Deres Design then received the papers from the bank, filled in the customs request and sent it to the customs authorities. In 1990-91 no one at Deres Design was aware or suspected that there could be a problem with Bangladesh. Deres Design probably started importing T-shirts from Bangladesh in 1988 and had not been met with claims for supplementary payment before. They have not received any warnings from Told&Skat from 1988 and until 1990-91 that there might be issues with the authenticity of certificates of origin from Bangladesh. The only heard about the case in 1996. They knew that it was a condition for tariff exemption that the T-shirts came from Bangladesh. The Danish agent, C. Jahn, stated that they were from Bangladesh. Deres Design believed that C. Jahn had the right T-shirt at the right price. The basic price was 1 USD below what was otherwise obtainable in the market – China. The T-shirts were flat knitted with side seams as was the custom manufacture in Bangladesh, unlike in China where they are made round knitted without side seams. The order was confirmed by the manufacturer in Bangladesh, and the letter of credit was opened with the manufacturer in Bangladesh. Deres Design later discovered that C. Jahn had used a trading house, Nitex, which had contracted with other factories in Bangladesh. They have discontinued the cooperation with C. Jahn but have not raised claims against the agent.

Finn Troest has stated that he is a customs officer with Customs and Tax Region City and has been involved in this case in the period from November 1992 to the end of 1994. By letter of 12 August 1991, the Danish Tax Agency informed the regional tax authorities that the European Commission had given notice of suspected forged GSP certificates from Bangladesh. In this connection, the region was asked to select a representative sample of the certificates for closer examination. On 6 December 1991, the region forwarded 10 certificates. The cover letter noted that some certificates were not correctly in place as they had been selected for special control on 23 March 1990. He does not know whether this information relates to certificates from Deres Design. He is consequently not aware why 4 of the 13 certificates from Deres Design were not forwarded. On 28 October 1991, the Agency requested that all certificates be submitted. In connection with the processing of this case, he made a query in Lloyd's Register of Ships. The examination showed that one of the freighters stated as the forwarder in one of the consignment notes to Deres Design had been broken up in 1984. The Danish authorities must pass on to the EU the tariff they are obliged to collect, less a minor administration fee.

*Procedure*

In support of its claim, the plaintiff stated:

that the defendant has not documented with sufficient certainty that the GSP certificates are forged, in the alternative that the 4 certificates that were not examined are not forged, as the EU has relied on Bangladesh's own investigations and statements that

cannot be considered evidence in a case like the present when taking into consideration the structure and development of the country and the matter that the fraud might have taken place within the ranks of the authorities,

that the plaintiff, though it may be accepted that the GSP certificates are forged, has acted in good faith with respect to this matter as the plaintiff simply purchased a standard commodity which did not give the plaintiff grounds to make special investigations, neither of the good, nor of its origin in Bangladesh. The plaintiff has never previously experienced problems of this nature,

that the authorities have made an error in that the Danish Tax Agency already in March 1990 suspected that something was amiss with the certificates for import from Bangladesh. Nevertheless, the importers were not informed and warned until the plaintiff received the defendant's claim on 17 December 1992, and the European Commission consequently indirectly allowed – until the forgeries became too excessive in scope – the importers to pay development aid to Bangladesh as the import took place without charging import duties which are now subsequently charged,

that the condition for omitting to make a claim for post-clearance recovery of import duties is thus met, cf. Council Regulation no. 1697/79, art. 5,

that the legal position as also stated in TfS 1998, 646, warrants that the plaintiff in a situation like this will not have to make a supplementary payment of import duties, as also stated in the case C-348/89 (Mecanarte), paragraphs 19-20,

that the claim against the plaintiff is subject to a five-year limitation period and was thus barred by limitation in July 1996, as both the Commission and the Danish Tax Agency were aware, well in advance of 1990, that there were problems with Bangladesh,

that the defendant initially denies the claim in this case, which is not sufficient to interrupt the limitation, and that the first step towards interrupting the limitation is the defendant's submission of the independent claim for payment in the case, which took place in 1999, at which time the claim was certainly barred by limitation,

that the defendant has generally not pursued its claim timely and, by inaction, forfeited its right to post-clearance recovery of the import duties.

The following is stated with respect to the claim against the defendant's interest claim:

that the Danish Tariff Act, sections 83 and 89(2), cannot be applied in the present instance which concerns a claim for supplementary payment,

that when submitting the claim for supplementary payment to the plaintiff, the defendant did not make a claim for interest,

that consequently, interest cannot be claimed until from the time when the defendant submits its independent claim for payment on 31 March 1999, and

that exemption from payment of interest must be granted in the present case, cf. Council Regulation 1697/79, art. 7,

In support of its claims, the defendant stated:

that the presentation of proper GSP certificates issued by the competent authority in the beneficiary country is a condition for the plaintiff's enjoyment of a tariff preference in accordance with Commission Regulation (EEC) no 693/88, art. 7,

that the competent authority in Bangladesh is E.P.B.,

that the GSP certificates submitted are not issued by E.P.B. as E.P.B. in a letter of 31 October 1992 enclosed a list of all certificates issued by E.P.B. to Danish importers in the period of 1 July 1987 to 17 October 1992 ("positive list")

and a list of presented certificates that were not issued by E.P.B. ("negative list"), and 9 of the 13 certificates concerned appear on the "negative list", and the last 4 certificates are not stated in the "positive list", and

that the plaintiff thus does not satisfy the criteria for obtaining a tariff preference,

that the result of the Commission's examinations, cf. E.P.B.'s response of 31 October 1992, constitutes a sufficient basis for determining that the origin requirement is not satisfied as the examinations were carried out in accordance with Regulation 693/88, art. 7 and 13, which justifies reliance on the conclusions of the examination, including that the GSF [sic] certificates concerned are not issued by the competent authority, thus also cf. the case C97/95 (Pascoal), paragraphs 34 and 37,

that the risk of forgery thus rests with the importer, cf. case 827/79 (Ciro Acampora), paragraph 8,

that the defendant, as the tariff preference conditions have not been satisfied, is both entitled and obliged to post-clearance recovery of import duties owed, cf. Council Regulation (EEC) 1697/79 of 24 July 1979, art. 2,

that the defendant may only refrain from post-clearance recovery of the import duties owed if the authorities have made an error which the plaintiff could not reasonably be expected to have discovered, and if the plaintiff otherwise in connection with the customs declaration acted in good faith and complied with all provisions of the applicable rules, cf. Regulation 1697/79, art. 5(2), and that no errors have been made on the part of the authorities in this case, as the authorities did not have any certain knowledge of fraud with GSF [sic] certificates in March 1990, as the due import duties are only charged one month after establishing with certainty that the GSP certificates were not issued by the competent authority and as no errors have been made by the authorities in Bangladesh either, as the GSP certificates were not issued by the Bangladeshi authorities at all,

that the plaintiff has not complied with all provisions of the applicable rules, as a valid certificate was not enclosed,

that the claim submitted was not barred by limitation as the limitation period does not commence until the time of final reporting from the Bangladeshi authorities in October 1992,

that the defendant has brought this action as a declaratory action before the end of the limitation period, in which case it is not a requirement for interruption of the limitation period that the defendant files action on their own part, as the declaratory action in itself is worded to enable the case to clarify the existence of the claim,

that in relation to the interest claim, it follows from <u>section 83 of the Danish Tariff Act</u> that the outstanding tariff should have been paid on the 15th of the month after the expiry of the settlement period, that the settlement period was the month, and that the due date was thus the 15th of the month after submitting the goods for clearance. The interest rate and the date from which interest is payable are stated in <u>section 89(2) of the Danish Tariff Act</u>,

that the interest claim, cf. Regulation 1697/79, art. 7, can only be waived in case of an error made by the authorities when charging the import duties, which is not the case, as stated above,

that inaction has not been exercised as the defendant already in December 1992, only one month after receipt of the letter of 31 October 1992 from the authorities in Bangladesh, filed the claim for subsequent payment against the plaintiff.

*The High Court's observations*

In accordance with Commission Regulation no. 693/88, the Commission conducted a subsequent examination of certificates of origin (Form A) accompanying imports to the Community of textiles from Bangladesh under the generalised system of tariff preferences. As part of this, the authorities in Bangladesh conducted an

investigation of a number of certificates of origin and also established that 9 of the certificates concerned in this case were not issued by Export Promotion Bureau, the competent authority in Bangladesh.

In addition, the authorities in Bangladesh sent the Commission a copy of a part of the register for certificates issued by Export Promotion Bureau to Denmark. The remaining 4 certificates that are dealt with in this case and that had not been presented to the Bangladeshi authorities do not appear from the register copies.

On this background, the High Court is satisfied that the certificates of origin concerned in this case were not issued by the competent authorities in Bangladesh. It is generally noted that all 13 certificates concern procurement of T-shirts, in part from the same trading houses, and that the Commission's examination showed certain common denominators in the transactions examined, including that the goods were likely shipped from China and that certain trading houses in Bangladesh were involved.

In accordance with Council Regulation no. 1679/79, art. 2(1) and as established by the European Court of Justice ruling of 14 May 1996 in cases C-153/94 and C-204/94 (Faroe Seafood Co.), paragraph 67, the authorities must subsequently claim post-clearance recovery of the duties not collected.

Though the duties not collected concern both import duties and VAT, the parties agree that art. 5(2) of the same Regulation must be applied to the question of the demand for post-clearance payment.

Based on the statements by managing director John Ginsborg and Steen Dyrstad, Deres Design A/S, and the other available material, the High Court finds that the plaintiff acted in good faith during the importation and must be considered to have complied with all provisions in the applicable rules, notwithstanding the fact that the certificates of origin were forged. Reference is made to the European Court of Justice ruling of 7 June 1991 in the case C-348/89 (Mecanarte), paragraph 30.

The exemption for payment of import duty on the goods concerned was announced by the Danish authorities in the period March 1990 - April 1991. Following the evidence, it must be submitted that the Community did not suspect fraud relating to imports from Bangladesh until by mid-1991, at the earliest. The available material in the case consequently does not provide any basis for establishing that at the time of the import, the authorities were aware that the certificates of origin were forged or that the authorities nurtured such suspicion of irregularities that the authorities should have launched any counter-measures. This means that the plaintiff has not proven that the import duty was not collected in connection with the import in consequence of errors committed by the authorities in Denmark, in the Community or in Bangladesh.

The High Court consequently finds that the defendant has not been entitled to refrain from post-clearance recovery of the import duty in pursuance of art. 5(2).

The plaintiff's commencement of legal action on 6 November 1996 concerned the justification of the demands for post-clearance payment raised by the defendant. Notwithstanding the fact that the case was thus instituted by the debtor as a declaratory action and not by the creditor as prescribed in section 2 of the Danish Limitation Act (*forældelsesloven*), the High Court finds that the defendant has not been obliged to bring action about the same claim to interrupt the limitation period, as the plaintiff's proceedings were suitable to clarify the existence of the claim.

The High Court finds that the authorities prior to 6 November 1991 have not been aware of a basis for denying a tariff exemption. The authorities were consequently at this time, at least, in unpredictable ignorance of their post-clearance recovery demand, cf. section 3, of the Danish Limitation Act of 1908, for which reason the defendant's claim for post-clearance payment is not limited.

Furthermore, the High Court does not find any basis for considering the claim for post-clearance payment to be lapsed on grounds of inaction. The claim was submitted by letter of 17 December 1992 and consequently shortly after the authorities, by receipt of the letter of 22 July 1992 from the Embassy of Bangladesh in Brussels, were made aware of the basis for raising a claim, and the authorities have later maintained the claim.

As stated above, the High Court finds that the authorities have not made any errors in collecting the import duties, which is why the plaintiff's claim for art. 7 of Council Regulation 1697/79 on non-charging of interest cannot be sustained. This means that the post-clearance recovery demand must carry interest in accordance with the pertinent statutory provisions and in accordance with the parties' submissions.

The defendant's claims are consequently allowed.

**On these grounds the Court rules that:**

The plaintiff, Deres Design, must pay to the defendant, the Danish Ministry of Taxation, the Danish Tax Agency, DKK 530,570.89, plus interest 1.3 % per month or fraction thereof of DKK 77,437.73 from 1 May 1990, of DKK 93,985.36 from 1 June 1990, of DKK 61,117.66 from 1 August 1990, of DKK 9,179.42 from 1 September 1990, of DKK 83,921.60 from 1 December 1990, of DKK 58,491.96 from 1 April 1991 and of DKK 146,437.16 from 1 June 1991, each until payment is made.

The plaintiff must pay DKK 38,500 in legal costs to the defendant.

The judgment amount must be paid within 14 days.



T: (+45) 33 12 13 18
Sværtegade 3
DK-1118 København K
www.ad-astra.dk
info@ad-astra.dk

I, the undersigned Benjamin Holst Kjeldsen, Danish certified translator and interpreter of the English language, hereby certify the preceding text to be a true and faithful translation of the attached Judgment in the Danish language.

In Witness Whereof I have hereunto set my hand and affixed my Seal this 25th day of May 2022

**Benjamin Holst Kjeldsen**
**Certified Translator and Interpreter**

*Registration no. 76 with the Danish Association of Certified Translators and Interpreters*

SKM2001.65.ØLR    TfS 2001, 171    ØL2000.B-2849-96

# Østre Landsrets dom af 22. december 2000, j.nr. B-2849-96

(Landsdommerne Højgaard Pedersen, Bloch Andersen og Michael Vendelbo (kst.))Deres Design A/S (adv. K.L. Németh v/adv. Anders Németh (prøve)) mod Skatteministeriet, Told- og Skattestyrelsen (km.adv. v/adv. Finn Jepsen)
TfS 2001, 171

SKM2001.65.ØLR

## Efteropkrævning af told- og importmoms, Falske oprindelsescertifikater, Passivitet

(Deres Design A/S) Ved import i 1991 af nogle varer fra Bangladesh var opnået toldpræference efter reglerne om import af varer fra visse udviklingslande. Det blev antaget, at varerne i virkeligheden stammede fra Kina, hvorfor der skulle foretages efteropkrævning af manglende afgiftsbeløb. Kravet ansås ikke forældet eller bortfaldet på grund af passivitet.

---

## Østre Landsret

Under denne sag, der er anlagt den 6/11 1996, har sagsøgeren, Deres Design A/S, nedlagt påstand om, at sagsøgte, Skatteministeriet, Told- og Skattestyrelsen, skal anerkende, at sagsøgte ikke er berettiget til hos sagsøgeren at efteropkræve for lidt betalt told og importmoms med 530.570,89 kr.

Sagsøgte har nedlagt påstand om frifindelse. Sagsøgte har endvidere i et processkrift af 31/3 1999 nedlagt påstand om, at sagsøgeren tilpligtes til sagsøgte at betale 530.570,89 kr. med tillæg af rente 1,3 pct. pr. påbegyndt måned af 77.437,73 kr. fra den 1/5 1990, af 93.985,36 kr. fra den 1/6 1990, af 61.117,66 kr. fra den 1/8 1990, af 9.179,42 kr. fra den 1/9 1990, af 83.921,60 kr. fra den 1/12 1990, af 58.491,96 kr. fra den 1/4 1991 og af 146.437,16 kr. fra den 1/6 1991, alt til betaling sker.

Sagsøger har nedlagt påstand om frifindelse heroverfor.

*Sagens omstændigheder*

I perioden februar 1990 til april 1991 importerede Deres Design via agenter et større antal T-shirts fra Bangladesh. Som dokumentation for varernes oprindelse blev der ved Deres Designs fortoldningsangivelser vedlagt i alt 13 GSP-certifikater, der fremstod som udstedt af den kompetente myndighed i Bangladesh, Export Promotion Bureau (E.P.B.). Deres Design opnåede på grundlag heraf toldfrihed efter reglerne om toldpræference vedrørende import til EF af varer fra visse udviklingslande.

På grund af en mistanke om, at tekstilvarer importeret med angivet oprindelse i Bangladesh kunne være af kinesisk oprindelse, anmodede EF-Kommissionen ifølge sagsøgte i december 1991 de enkelte medlemslandes toldmyndigheder om at iværksætte kontrol af, om tekstilvarer angivet med oprindelse i Bangladesh faktisk havde denne oprindelse. De danske toldmyndigheder fremsendte herefter en række GSP-certifikater til Kommissionen, der fremsendte dem til E.P.B. i Bangladesh til verifikation. Heriblandt var 9 af de 13 certifikater, der er omhandlet i denne sag.

Ved en skrivelse, som parterne er enige om retteligt er af 22/7 1992, meddelte Bangladesh's Ambassade i Bruxelles Kommissionen, at resultaterne af en verifikationsundersøgelse havde vist, at 165 ud af 241 undersøgte certifikater ikke var udstedt af E.P.B. På den vedlagte liste over GSP-certifikater udstedt af E.P.B. var de her omhandlede 9 certifikater angivet som ikke udstedt af E.P.B.

Ved skrivelse af 31/10 1992 sendte E.P.B. til Kommissionen en kopi af registeret over de certifikater, der i blandt andet den her omhandlede periode var udstedt af E.P.B. til Danmark. Ingen af de 13 certifikater, heller ikke de 4 ikke forelagte, fremgik af dette register. På listen over forelagte certifikater, der ikke var udstedt af E.P.B., fremgik stadig de ovenfor nævnte 9 certifikater. Af skrivelsen fremgik endvidere, at det ved undersøgelse af de nævnte certifikater blev fastslået, at faksimilestemplet på certifikaterne ikke svarede til faksimilestemplet på de godkendelsespåtegninger, som E.P.B. havde autoriseret til sådanne formål.

Den 17/12 1992 blev der afholdt et møde mellem Told- og Skatteregion City og Deres Design, hvor der af regionen bl.a. blev udleveret en skrivelse af samme dato med beskrivelse af de ovennævnte undersøgelser. I skrivelsen er bl.a. anført:

"...

Forudsætningerne for den begærede - og opnåede - toldfrihed er herved bortfaldet, og der skal derfor iht. Skatteministeriets daværende lovbekendtgørelse nr. 610 af 14/10 1988 med senere ændringer § 2, jf. nuværende lovbekendtgørelse nr. 153 af 27/2 1992, § 2, erlægges tarifmæssig told. Bortfaldet af toldfriheden medfører endvidere, at der skal ske regulering af den beregnede importmoms.

Under hensyntagen til EF's gældende bestemmelser vedr. forældelse af efteropkrævning af told m.v., skal regionen herved meddele firmaet A/S Deres Design krav om betaling af told, foreløbigt beregnet til 434.894,59 kr., samt betaling af importmoms, foreløbigt beregnet til 95.676,68 kr., alt vedr. før omtalte fortoldningsekspeditioner.

..."

Deres Designs advokat afviste i skrivelse af 21/12 1992 kravet og anførte, at regionen ville høre nærmere fra ham, når han havde haft lejlighed til at gennemgå sagen med sin klient.

Ved skrivelse af 21/2 1994 fra told- og skatteregionen til Deres Design anførtes bl.a.:

"...

Da selskabet - eller dets advokat - ikke har rettet henvendelse hertil, har regionen iht. [lov nr. 1116 af 22/12 1993](toldloven) § 39, stk. 2, jf. vedlagte opgørelse af 21/2 1994, ansat den skyldige told til 434.894,61 kr. og den skyldige importmoms til 95.676,28 kr., i alt 530.570,89 kr., som A/S Deres Design, jf. samme lovs § 39, stk. 1, som importør hæfter for.

..."

Deres Designs advokat afviste ved skrivelse af 2/3 1994 på ny selskabets betalingsforpligtelse.

Den 19/8 1996 meddelte Told- og Skattestyrelsen Deres Designs advokat følgende afgørelse:

"Told- og Skattestyrelsen har ved flere lejligheder skrevet til Dem i forbindelse med ovennævnte sag.

De er i breve af hhv. 27/1 1995, 23/8 1995 og 11/10 1995 blevet anmodet om dels at præcisere, hvad De konkret klagede til Styrelsen over og dels at fremkomme med en udtalelse vedr. brev fra Told- og Skatteregion København 1 (City) dateret 25/11 1994.

Told- og Skattestyrelsen har, på trods af udebleven reaktion fra Deres side, valgt at behandle sagen som en klage over selve Told- og Skatteregion København 1 (City)'s afgørelse (efteropkrævning af for lidt betalt told, 530.570,89 kr.).

Told- og Skattestyrelsen skal herefter meddele, at den af Told- og Skatteregion København 1 (City) trufne afgørelse fastholdes.

Begrundelsen herfor er følgende:

I december 1991 meddeler EU-Kommissionen medlemslandene, at der er begrundet mistanke om, at der foregår svindel med det generelle præferencesystem (GSP) i Bangladesh. Det drejer sig om forkert opgivelse af oprindelsen af tekstiler.

På denne baggrund sender medlemslandenes toldvæsener - herunder ToldoSkat i Danmark - en lang række GSP-certifikater til efterfølgende kontrol hos myndighederne i Bangladesh.

I skrivelse fra de kompetente myndigheder i Bangladesh af 31/10 1992 fremgår resultatet af den meget omfattende verifikation (kopi vedlagt).

Skrivelsen omfatter dels en liste over fremsendte certifikater, som de kompetente myndigheder ikke har udstedt, og dels kopi af det register, som de kompetente myndigheder fører over de certifikater, der udstedes.

Af disse lister fremgår, at de af Deres klient fremviste oprindelsesdokumenter (Form A), fremvist i forbindelse med 9 fortoldninger af varer fra Bangladesh i perioden 24/1 1990-6/3 1991, enten 1) positivt fremgår af listen over certifikater, der ikke er udstedt af myndighederne, eller 2) ikke fremgår af listen over de af myndighederne udstedte certifikater.

De 13 omfattede certifikater anses derfor for ugyldige.

Der kan derfor ikke gives præferencetoldbehandling, idet forudsætningen for at opnå præferencetoldbehandling efter GSP-reglerne er fremlæggelse af gyldigt Form A (jf. dagældende Rådsforordning 693/88, art. 7 - kopi vedlagt).

Der er således ved fortoldningen af de indførte varesendinger betalt for lidt i told og importmoms.

Forskellen mellem den betalte told/importmoms og den faktiske toldskyld/importmoms skal derfor, jf. dagældende Rådsforordning 1697/79, art. 2 (kopi vedlagt), efteropkræves af toldmyndighederne - dvs. i dette tilfælde Told- og Skatteregion København 1 (City).

Styrelsen må på baggrund af ovenstående fastholde den af Told- og Skatteregion København 1 (City) trufne afgørelse af 17/12 1992 som gentaget i skrivelse af 21/2 1994.

Senere endelige administrative afgørelse kan inden for 3 måneder fra dato indbringes for domstolene, jf. toldlovens § 71, stk. 5."

Deres Design anlagde herefter denne sag.

Til brug for sagen er fremlagt den rapport, som Kommissionen udarbejdede over de undersøgelser, der blev foretaget i oktober og november 1992 i Bangladesh på grundlag af mistanken om bedrageri med tekstilvarer. I rapporten er bl.a. i dansk oversættelse anført:

*"3. Indledende undersøgelser i Hong Kong*

…

3.2 Disse undersøgelser bekræftede såvel det overordnede omladningselement af "Bangladesh-handelen" som det mere specifikke, at de varer, som blev omladet - hovedsageligt tekstilvarer i kategori 4 - oprindeligt var afsendt (via Hong Kong) fra Folkerepublikken Kina - bekræftende dokumentation herfor fandtes i de relevante arkiver vedrørende fritagelsesordningen for fragt omladet i Hong Kong (Hong Kong Transshipment Cargo Exemption Scheme).

…

*4. Andre uregelmæssigheder i Bangladesh*

*Det generelle præferencesystem (GSP)*

4.1 I tillæg til og parallelt med "omladningselementet" i sagsakterne dokumenterede undersøgelserne systematiske uregelmæssigheder med hensyn til en tilsyneladende forfalskning af GSP-oprindelsescertifikater formular A, der benyttes til at medfølge hovedparten af de bangladeshiske tekstiludførsler til Fællesskabet.

*5. Export Promotion Bureau (Eksportfremmebureauet)*

5.2 Medarbejdere fra Export Promotion Bureau har bekræftet, at selvom der var krav om, at selskaber, der ansøgte om oprindelsescertifikater/formular A, skulle registreres hos Export Promotion Bureau, var systemet med registreringer ikke blevet iværksat før i slutningen af 1991. Et system med overførsel af journaler til edb var ufuldstændig - arbejdet var først blevet påbegyndt i 1991. I lighed dermed var overførsel af statistiske oplysninger til edb også først blevet påbegyndt samme år, da de indtil da var blevet indsamlet manuelt.

…

*6. Andre undersøgelser*

6.1 Andre undersøgelser foretaget i Bangladesh dokumenterer indikationerne om, at der var visse fællestræk ved de transaktioner, som forskellige modtagende selskaber foretog, i det omfang det var muligt at identificere visse bangladeshiske agenter eller "handelshuse", som var involveret i den kontraktlige side af indkøbene.

…"

*Forklaringer*

John Ginsborg har bl.a. forklaret, at han er ejer af Deres Design og er administrerende direktør i selskabet, hvor han har været ansat i 30 år. Deres Design driver detailbutikker, hvor der sælges tøj, der designes og produceres i Danmark eller andre lande. De omhandlede T-shirts var en standardvare, der omsattes i stor mængde med en begrænset avance pr. solgt enhed. T-shirtene blev indkøbt via agenten, C. Jahn, som vidnet anser for en af de bedste agenter på Bangladesh. Toldfriheden indgik som en parameter ved vurderingen af C. Jahns priser. T-shirtenes specifikationer fremgik af aftalen med C. Jahn, men købekontrakterne blev indgået direkte med

handelshusene i Bangladesh, over for hvem rembourserne også blev åbnet. C. Jahn modtog procenter vedrørende kontrakterne. Han kan ikke bedømme, om der er basis for at rejse krav mod handelshusene i Bangladesh eller C. Jahn på grund af denne sag. Vidnet var ikke med ved selve indkøbet og indklareringen af T-shirtene, men vidste, hvor mange der blev indkøbt. Han underskrev rembourserne, når de blev åbnet. Der blev ved bestillingen lavet en leveringsoversigt, hvoraf det fremgik, hvornår der skulle leveres. For at overholde fristerne blev varerne indimellem sendt med fly. Deres Design har aldrig siden selskabets start i 1957 oplevet en situation som denne. Ingen i Deres Design havde formodning om, at GSP-certifikaterne var falske - derfor fortsatte de importen. De havde ingen særlige formodninger om, hvordan GSP-certifikaterne skulle se ud, men gik ud fra, at de skulle ligne tilsvarende certifikater fra andre lande. De hørte ikke fra ToldoSkat, at der skulle være problemer med GSP-certifikater fra Bangladesh, før denne sag opstod.

Steen Dyrstad har bl.a. forklaret, at han er ansat i Deres Design A/S. I 1990-91 var han indkøber, og han deltog i importen af de omhandlede T-shirts. Det var standard T-shirts, lavet af bomuld, rund hals og korte ærmer. Det var en basisartikel, der blev købt via agenter. Det var en billig artikel med lav avance. Alle lavede dem stort set ens. Agenten handler måske tusindvis af T-shirts for de enkelte kunder. De brugte 2 agenter - C. Jahn for ca. 90 pct.s vedkommende og firmaet Nisco Tex ApS. Deres Design indgik kontrakterne CFR, således at varerne blev leveret frit i København. Typisk fik de oplyst rederiets navn og agent samt skibets navn og ankomstdato. Afskibningsdato, pakkelister, GSP og oprindelsescertifikater sikredes via agenten som betingelser for remboursen. Dokumenterne blev sendt fra sælgers bank til købers bank, hvorefter pengene blev udbetalt. Deres Design fik herefter papirerne fra banken, hvorefter de udfyldte toldbegæringen og sendte den til toldvæsenet. I 1990-91 var ingen i Deres design klar over eller havde mistanke om, at der kunne være et problem med Bangladesh. Deres Design var vist begyndt at importere T-shirts fra Bangladesh i 1988 og var ikke tidligere blevet mødt med efterbetalingskrav. De har ikke modtaget advarsler fra ToldoSkat fra 1988 og frem til 1990-91 om, at der kunne være problemer med ægtheden af oprindelsescertifikater fra Bangladesh. De hørte først om sagen i 1996. De vidste, at det var en betingelse for toldfrihed, at T-shirtene kom fra Bangladesh. Den danske agent, C. Jahn, sagde, at de kom fra Bangladesh. Deres Design fandt, at C. Jahn havde den rigtige T-shirt til den rigtige pris. Grundprisen var 1 USD lavere, end man ellers kunne opnå i markedet - Kina. T-shirtene var fladstrik med sidesømme, således som de laves i Bangladesh, i modsætning til i Kina, hvor de laves som rundstrik uden sidesømme. Ordren blev bekræftet af producenten i Bangladesh, og remboursen blev åbnet over for producenten i Bangladesh. Deres Design fandt senere ud af, at C. Jahn havde anvendt et handelshus Nitex, der havde kontraheret med andre fabrikker i Bangladesh. De har afbrudt samarbejdet med C. Jahn, men har ikke rejst krav over for agenten.

Finn Troest har forklaret, at han er toldkontrollør i Told- og Skatteregion City og har været beskæftiget med denne sag i perioden fra november 1992 til ultimo 1994. Told- og Skattestyrelsen orienterede ved skrivelse af 12/8 1991 de regionale skattemyndigheder om, at EU-Kommissionen havde givet meddelelse om, at der var mistanke om forfalskede GSP-certifikater fra Bangladesh. Regionen blev i den forbindelse anmodet om at udtage et repræsentativt udsnit af certifikaterne til nærmere undersøgelse. Den 6/12 1991 fremsendte regionen 10 stk. Det blev i fremsendelsesskrivelsen bemærket, at nogle certifikater ikke var korrekt på plads, idet de var udtaget til særlig kontrol den 23/3 1990. Han ved ikke, om denne oplysning relaterer sig til certifikater fra Deres Design. Han ved således ikke, hvorfor 4 af de 13 certifikater fra Deres Design ikke blev fremsendt. Styrelsen anmodede den 28/10 1991 om, at samtlige certifikater blev indsendt. I forbindelse med behandlingen af denne sag foretog han en undersøgelse af Lloyds Skibsregister. Undersøgelsen viste, at et af de fragtskibe, der var angivet som transportør i et af fragtbrevene til Deres Design, var blevet ophugget i 1984. De danske myndigheder skal videregive den told, som de har pligt til at opkræve, til EU med fradrag af et mindre administrationsbidrag.

*Procedure*

Sagsøger har til støtte for sin påstand bl.a. anført:

at sagsøgte ikke med tilstrækkelig sikkerhed har godtgjort, at GSP-certifikaterne er falske, subsidiært at de 4 ikke undersøgte certifikater ikke er falske, idet EU har forladt sig på Bangladesh's egne undersøgelser og udtalelser, som

ikke kan anses for bevis i en sag som denne, når der henses til landets struktur, udvikling og det forhold, at svindlen kan have foregået inden for myndighedernes egne rækker,

at sagsøgeren, selv om det måtte blive lagt til grund, at GSP-certifikaterne er falske, har været i god tro med hensyn til dette forhold, da sagsøger blot købte en standardvare, som ikke gav sagsøger grundlag for at foretage særlige undersøgelser, hverken af varen eller dens oprindelse i Bangladesh. Sagsøger har aldrig tidligere oplevet problemer af denne karakter,

at der er begået myndighedsfejl ved, at Told- og Skattestyrelsen allerede i marts 1990 har haft en formodning om, at noget var galt med certifikaterne ved import fra Bangladesh. Uagtet dette blev importørerne ikke informeret og advaret, før sagsøger modtog sagsøgtes krav den 17/12 1992, og EU-Kommissionen lod herved - indtil falsknerierne tog for voldsomt et omfang - indirekte importørerne betale ulandshjælp til Bangladesh, idet importen fandt sted uden opkrævning af importafgift, som nu efterfølgende opkræves,

at betingelsen for at undlade at efteropkræve importafgifter dermed er opfyldt, jf. Rådets forordning nr. 1697/79, art. 5,

at retstilstanden som omtalt i TfS 1998, 646 tilsiger, at sagsøger i en situation som denne ikke skal efterbetale importafgiften, hvilket også fremgår af sagen C-348/89 (Mecanarte), præmis 19-20,

at kravet mod sagsøger er undergivet 5-årig forældelse og dermed er forældet i juli 1996, idet såvel Kommissionen som Told- og Skattestyrelsen langt før 1990 var klar over, at der var problemer med Bangladesh,

at sagsøgte indledningsvis påstår frifindelse i denne sag, hvilket ikke er tilstrækkeligt til at afbryde forældelsen, og at det første skridt til at afbryde forældelsen er sagsøgtes nedlæggelse af den selvstændige betalingspåstand i sagen, hvilket skete i 1999, hvor kravet i hvert fald var forældet,

at sagsøgte i øvrigt ikke har forfulgt sit krav rettidigt, og ved passivitet har mistet retten til at efteropkræve importafgiften.

For så vidt angår påstanden over for sagsøgtes rentekrav anføres:

at [toldlovens § 83](#) og § 89, stk. 2, ikke kan finde anvendelse i det foreliggende tilfælde, hvor der er tale om efterbetalingskrav,

at sagsøgte ikke ved fremsættelsen af efterbetalingskravet over for sagsøger har fremsat krav om renter,

at der derfor først kan kræves renter fra det tidspunkt, hvor sagsøgte fremsætter sin selvstændige betalingspåstand, den 31/3 1999, og

at der i den foreliggende situation skal ske fritagelse for betaling af renter, jf. Rådets forordning 1697/79, art. 7,

Sagsøgte har til støtte for sine påstande anført:

at det er en betingelse for sagsøgers opnåelse af toldpræference i henhold til Kommissionens forordning (EØF) nr. 693/88, art. 7, at der fremlægges behørige GSP-certifikater udstedt af den kompetente myndighed i det præferenceberettigede land,

at den kompetente myndighed i Bangladesh er E.P.B,

at de fremlagte GSP-certifikater ikke er udstedt af E.P.B, idet E.P.B med skrivelse af 31/10 1992 har vedlagt en liste over samtlige certifikater udstedt af E.P.B. til danske importører i perioden 1/7 1987 til 17/10 1992 ("positivliste")

samt liste over forelagte certifikater, der ikke var udstedt af E.P.B. ("negativliste"), og 9 af de omhandlede 13 certifikater figurerer på "negativlisten", og de sidste 4 certifikater ikke fremgår af "positivlisten", og

at sagsøger dermed ikke opfylder kriteriet for at opnå toldpræference,

at resultatet af Kommissionens undersøgelser, jf. E.P.B.s besvarelse af 31/10 1992, udgør et tilstrækkeligt grundlag for at fastslå, at oprindelseskravet ikke er opfyldt, idet undersøgelserne er udført i overensstemmelse med forordning 693/88, art. 7 og 13, hvilket berettiger til at lægge undersøgelsens konklusioner til grund, herunder at de omhandlede GSF-certifikater ikke er udstedt af den kompetente myndighed således også if. sagen C97/95 (Pascoal), præmis 34 og 37,

at risikoen for falsk således er importørens, jf. sag 827/79 (Ciro Acampora), præmis 8,

at sagsøgte, da betingelserne for toldpræference ikke er opfyldt, er såvel berettiget som forpligtet til at efteropkræve de skyldige importafgifter, jf. Rådets forordning (EØF) 1697/79 af 24/7 1979, art. 2,

at sagsøgte alene kan undlade at efteropkræve de skyldige importafgifter, såfremt der er begået myndighedsfejl, som sagsøger ikke med rimelighed kunne forventes at have opdaget, og såfremt sagsøger i øvrigt i forbindelse med toldangivelsen handlede i god tro og overholdt samtlige bestemmelser i de pågældende forskrifter, jf. forordning 1697/79, art. 5, stk. 2, og at der i denne sag ikke er begået myndighedsfejl, idet myndighederne ikke havde nogen sikker viden om svindel med GSF-certifikaterne i marts 1990, idet opkrævningen af de skyldige importafgifter foretages 1 måned efter, at man med sikkerhed kan konstatere, at GSP-certifikaterne ikke er udstedt af den kompetente myndighed, og idet der heller ikke er begået myndighedsfejl i Bangladesh, da GSP-certifikaterne slet ikke er udstedt af myndighederne i Bangladesh,

at sagsøgeren ikke har overholdt samtlige bestemmelser i de pågældende forskrifter, idet der ikke var vedlagt et gyldigt certifikat,

at det fremsatte krav ikke er forældet, idet forældelsesfristen først løber fra det tidspunkt, hvor der sker endelig afrapportering fra myndighederne i Bangladesh i oktober 1992,

at sagsøgte har anlagt denne sag som anerkendelsessøgsmål inden forældelsesfristens udløb, under hvilke omstændigheder det ikke er nødvendigt for afbrydelse af forældelsen, at sagsøgte selv anlægger sag, da anerkendelsessøgsmålet i sig selv er formuleret, så sagen er egnet til at skabe klarhed over kravets eksistens,

at det i relation til rentepåstanden følger af toldlovens § 83, at toldskylden skulle have været indbetalt den 15. i måneden efter afregningsperiodens udløb, at afregningsperioden var måneden og betalingstidspunktet dermed den 15. i måneden efter, at varerne var fremsendt til fortoldning. Rentesatsen og tidspunktet for forrentningens start fremgår af toldlovens § 89, stk. 2,

at rentekravet, jf. forordning 1697/79, art. 7, alene kan frafaldes, hvis der er begået myndighedsfejl ved opkrævning af importafgifterne, hvilket jf. det tidligere anførte ikke er tilfældet,

at der ikke er udvist passivitet, idet sagsøgte allerede i december 1992, kun godt 1 måned efter modtagelsen af brevet af 31/10 1992 fra myndighederne i Bangladesh, rejste efterbetalingskravet mod sagsøger.

*Landsrettens bemærkninger*

I overensstemmelse med Kommissionens forordning nr. 693/88 foretog Kommissionen en efterfølgende undersøgelse af oprindelsescertifikater (formular A), som medfulgte ved import til Fællesskabet af tekstilvarer fra Bangladesh under det generelle toldpræferencesystem. Som et led heri foretog myndighederne i Bangladesh en

undersøgelse af en række oprindelsescertifikater og konstaterede herunder, at 9 af de i denne sag omhandlede certifikater ikke var udstedt af Export Promotion Bureau, der er den kompetente myndighed i Bangladesh.

Endvidere sendte myndighederne i Bangladesh til Kommissionen en kopi af en del af registret for certifikater, som Export Promotion Bureau havde udstedt til Danmark. De resterende 4 certifikater, der er omhandlet i denne sag, og som ikke havde været forelagt for myndighederne i Bangladesh, fremgår ikke af registerkopierne.

Landsretten finder det på dette grundlag godtgjort, at de oprindelsescertifikater, der er omfattet af denne sag, ikke er udstedt af de kompetente myndigheder i Bangladesh. Det bemærkes i øvrigt, at alle 13 certifikater vedrører indkøb af T-shirts til dels hos de samme handelshuse, samt at Kommissionens undersøgelse viste, at der var visse fællestræk ved de undersøgte transaktioner, herunder at varerne sandsynligvis var afsendt fra Kina, og at visse handelshuse i Bangladesh var involveret.

I overensstemmelse med Rådets forordning nr. 1697/79, art. 2, stk. 1, og som fastslået ved EF-Domstolens dom af 14/5 1996 i sagerne C-153/94 og C-204/94 (Faroe Seafood Co.), præmis 67, skal myndighederne herefter foretage efteropkrævning af det manglende afgiftsbeløb.

Der er, selv om det manglende afgiftsbeløb omfatter både importafgift og moms, enighed mellem parterne om, at efterbetalingsspørgsmålet herefter må afgøres på grundlag af art. 5, stk. 2, i samme forordning.

Efter forklaringerne fra administrerende direktør John Ginsborg og Steen Dyrstad, Deres Design A/S, og det øvrige foreliggende materiale finder landsretten, at sagsøgeren ved importen har handlet i god tro og må anses for at have overholdt samtlige bestemmelser i de gældende forskrifter, uanset at oprindelsescertifikaterne var falske. Der henvises herved til EF-Domstolens dom af 7/6 1991 i sagen C-348/89 (Mecanarte), præmis 30.

Fritagelsen for betaling af importafgift af de omhandlede varer blev meddelt af de danske myndigheder i perioden marts 1990-april 1991. Det må efter bevisførelsen lægges til grund, at Fællesskabet tidligst medio 1991 fik mistanke om svig i forhold til import fra Bangladesh. Det i sagen foreliggende materiale giver således ikke grundlag for at fastslå, at myndighederne på tidspunktet for importen var klar over, at oprindelsescertifikaterne var falske, eller at myndighederne havde en sådan mistanke om uregelmæssigheder, at myndighederne skulle have iværksat foranstaltninger heroverfor. Sagsøger har derfor ikke godtgjort, at importafgiften ikke blev opkrævet i forbindelse med importen som følge af fejl, som myndighederne i Danmark, i Fællesskabet eller i Bangladesh selv har begået.

Landsretten finder således, at sagsøgte ikke efter art. 5, stk. 2, har været berettiget til at undlade efteropkrævning af importafgiften.

Sagsøgerens sagsanlæg den 6/11 1996 vedrørte berettigelsen af de krav om efterbetaling, som sagsøgte havde rejst. Uanset at sagen således er anlagt af debitor som et anerkendelsessøgsmål, og ikke som foreskrevet i forældelseslovens § 2 af kreditor, finder landsretten, at sagsøgte ikke har været forpligtet til at anlægge sag om det samme krav for at afbryde forældelsesfristen, idet sagsøgerens sagsanlæg var egnet til at skabe klarhed over kravets eksistens.

Landsretten finder, at myndighederne ikke forud for den 6/11 1991 har været bekendt med, at der var grundlag for at nægte toldfritagelse. Myndighederne var således i hvert fald på dette tidspunkt i utilregnelig uvidenhed om deres efterbetalingskrav, jf. § 3 i forældelsesloven af 1908, hvorfor sagsøgtes krav om efterbetaling ikke er forældet.

Landsretten finder endvidere ikke grundlag for at anse efterbetalingskravet for bortfaldet på grund af passivitet. Kravet er fremsat i skrivelse af 17/12 1992 og således kort tid efter, at myndighederne ved modtagelsen af skrivelsen af 22/7 1992 fra Bangladesh's ambassade i Bruxelles blev bekendt med grundlaget for at rejse krav, og kravet er siden fastholdt af myndighederne.

Landsretten finder, som anført ovenfor, at myndighederne ikke har begået fejl ved opkrævningen af importafgiften, hvorfor sagsøgers anbringende om anvendelse af Rådets forordning 1697/79, art. 7, om rentefritagelse ikke kan tages til følge. Efterbetalingskravet skal således forrentes efter lovbestemmelserne herom og i overensstemmelse med parternes anførsler.

Sagsøgtes påstande må herefter tages til følge.

**Thi kendes for ret**

Sagsøger, Deres Design, skal til sagsøgte, Skatteministeriet, Told- og Skattestyrelsen, betale 530.570,89 kr., med tillæg af rente 1,3 pct. pr. påbegyndt måned af 77.437,73 kr. fra den 1/5 1990, af 93.985,36 kr. fra den 1/6 1990, af 61.117,66 kr. fra den 1/8 1990, af 9.179,42 kr. fra den 1/9 1990, af 83.921,60 kr. fra den 1/12 1990, af 58.491,96 kr. fra den 1/4 1991 og af 146.437,16 kr. fra den 1/6 1991, alt til betaling sker.

Sagsøger skal betale 38.500 kr. i sagsomkostninger til sagsøgte.

Det idømte skal betales inden 14 dage.