

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached U.2020.1961 Ø. I further certify that I am fluent in both Danish and English, and qualified to translate from Danish to English. My qualifications include 14 years of experience as a freelance translator as well as 4 years of experience as an in-house translator and editor.

Anna-Rebecca Hutt, Contract Attorney
Licensed in DC and Texas only

On the 6 day of June in the year 2022, before me, the undersigned notary public, personally appeared Anna-Rebecca Hutt, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____ Notary Public

U.2020.1961 Ø Certification.docx

U.2020.1961
U.2020.1961

***Employee considered factually erroneous in wage claim that had arisen as a result of incorrect placement on wage step, and the employee should not have known that she was not being paid the correct wage. Therefore, the wage claim had not lapsed.***

*Employment and labor law 2.5.*

Pre-school class manager, A, was placed on the wrong wage step when she was hired on June 30, 2009, at the X-school, as 12 years of prior experience as an educator was not taken into account. The error was discovered on March 14, 2016, and the municipality repaid 5 years of wages. The dispute concerned whether the claims, which dated back further than 5 years had lapsed. In connection with the hiring, an engagement letter was prepared, which showed i.a. that A should deliver documentation of prior employment to her manager. On July 31, 2009, A received her first wage statement, which i.a. showed that the "experience date" was August 1, 2009. In 2015, A's union approved a new wage agreement, which noted that the union's approval was premised on the union representative being presented with the agreement and approving that, among other things, the experience date was correct. On August 26, 2015, A's union representative, B, was sent the "Agreement Form for Changing Wage- One-Time Supplement" for A. B approved the agreement, which did not specify a date of experience, by email on the same date. In connection with a wage audit, A discovered that she should have been given wage scale seniority for her 12 years of pre-school experience when she was hired. The municipality accordingly adjusted the wage retroactively to April 1, 2011. In this connection, principal C and union representative B signed the following: "Regarding adjustment for A's wage errors… Retroactive payment of insufficient wages shall also be made for the last 5 years.  A's [am]ount shall be adjusted for the period April 1, 2011, to March 31, 2016, ... ". On March 14, 2018, A sued the municipality for wage claims for the period from August 1, 2009, to April 1, 2011. The district court found the municipality not liable. The High Court, like the district court, ruled that A in

**1962**

connection with her hiring had asked the principal, E, whether she should submit documentation of prior employment, and that E had replied that it was irrelevant, notwithstanding the fact that E knew that A had several years of experience as an educator. On this basis, A failed to submit the documentation of prior employment, which was mentioned in the engagement letter of June 30, 2009, and she was thereby placed on the wrong wage step and with an incorrect experience date. On that basis, the High Court found that it had been established that A was unaware that her wage had been incorrectly calculated and that this could be characterized as a factual error, cf. § 3 para. 1 of the Limitation Act. The question then was whether A should have been aware that she did not receive the correct wage at an earlier time than she did. The High Court noted that an employer has a duty to calculate an employee's wage correctly on the basis of the information provided by the employee. As the school's management was aware of A's prior experience, and A had been informed that she need not submit documentation of prior employment, the High Court found that she could reasonably expect that the municipality would place her correctly. Although the date of experience was incorrectly stated as August 1, 2009, on the employment contract and wage statements, respectively, the High Court found no basis for establishing that A had a special duty to verify whether the wage was calculated correctly. The High Court had also placed emphasis on the fact that A changed union at the time of hiring. The High Court also found that A should not have known that she was not being paid the correct wage prior to the wage review of March 14, 2016. The statute of limitations had thereby been tolled, and the wage claims for the period from August 1, 2009, to April 1, 2011, had therefore not lapsed. The High Court finally found that the letter signed by the X-school's principal and union representative did not constitute a binding agreement for A, which cut her off from further wage claims. The High Court therefore granted A's claim.

**E.H.C. March 23, 2020, in appeal 24, Dept.  BS-21580/2019-OLR**

(Karen Hald, Anne Thalbitzer and Catarina Ryder Hoffmann (temp.)).

*A (atty. Marc Malmbak Stounberg, Cph.)*
against
*Copenhagen Municipality (atty. Marianne Lage, Hellerup)*

## Judgment of the Copenhagen District Court April 29, 2019, BS-19373/2018-KBH

### The background of the case and the parties claims

Pre-school class manager A was placed on the wrong wage step when she was employed at the X-school, as 12 years of prior experience as a pre-school educator had not been taken into account. She had therefore received a lower wage than she was entitled to. This was discovered on March 14, 2016, and the Copenhagen Municipality paid 5 years of retroactive wages for the period April 1, 2011, and onwards, so the dispute thus only concerns whether the claims that date back further than 5 years have lapsed.

*The Danish Teachers' Association* acting on behalf of A has claimed the following:

Copenhagen Municipality shall pay DKK 45,697.98 with the addition of the usual procedural interest of DKK 2,258.55 from July 31, 2009, of DKK 2,258.55 from August 31, 2009, of DKK 2,285.66 from September 30, 2009, of DKK 2,285.66 from October 31, 2009, of DKK2,285.66 from  November 30, 2009, of DKK 2,285.66 from December 31, 2009, of DKK 2,285.66 from January 31, 2010, of DKK 2,285.66 from February 28, 2010, of DKK 2,288.91 from March 31, 2010, of DKK 2,288.91 from April 30, 2010, of DKK 2,288.91 from May 31, 2010, of DKK 2,288.91 from June 30, 2010, of DKK 2,288.91 from July 31, 2010, of DKK 2,288.91 from August 31, 2010, of DKK 2,288.91 from September 30, 2010, of DKK 2,288.91 from October 31, 2010, of DKK 2,288.91 from November 30, 2010, of DKK 2,288.91 from December 31, 2010, of DKK 2,288.91 from December 31, 2010, of DKK 2,288.91 from January 31, 2011, and of DKK 2,288.91 from February 28, 2011, in total until payment in full.

COPENHAGEN MUNICIPALITY has claimed that action should be dismissed.

### Facts of the case

…

The case was filed on March 14, 2018

On June 30, 2009, Copenhagen Municipality's Child and Youth Administration employed A as a pre-school class manager in Copenhagen with a place of employment in the X-school from August 1, 2009, until further notice. The "engagement letter"  states, among other things:

"Your employment terms, including your pension terms, are subject to the current agreement for teachers entered into between Central Organization of Municipalities and the Central Organization of Teachers. … Your manager can requisition the agreement that you are subject to.  Your remuneration is based on the agreement in force at any given time and any prior agreement…

Your paid wage will be adjusted from the beginning of the employment in accordance with the final wage agreement. The final wage agreement will be provided by your manager after the negotiation.

…

As confirmation of the above, please return a signed version of the attached to your immediate manager within 8 days of receiving this engagement letter. Documentation of education, prior experience, CV, as well as the occupational pension scheme from your prior employments, etc. must also be delivered to your manager."

**1963**

It is noted that "any prior agreement", as mentioned above, refers to any supplement to the agreement entered into by the local parties, Copenhagen Municipality and Copenhagen Teachers' Association.

A, who is paid prospectively, received a wage statement on July 31, 2009, which i.a. stated that the "experience date" was August 1, 2009.

The wage agreement was sent to Copenhagen Teachers' Association on June 1, 2010, by KMD payroll service. The letter states:

"Note that the agreement between KMD payroll service and the Child and Youth Administration states that the approved wage agreement shall be forwarded to the employing unit. …

Should there be any questions or comments about the attached wage agreement, these must also be asked directly to the employing unit and NOT to KMD payroll service."

On January 16, 2013, Copenhagen Teachers' Association approved an agreement for a lump sum to A.

On June 29, 2015, KMD BPO A/S submitted a new wage agreement to Copenhagen Teachers' Association. The wage agreement sent directly to A stated as previously "Experience / wage scale seniority date: August 1, 2009." The agreement was approved by Copenhagen Teachers' Association on June 29, 2015, with the following wording:

"Copenhagen Teachers' Association can approve this agreement.

It must be pointed out, however, that a prerequisite for the association's approval is that the local union representative has been presented with the agreement and approved the hours needed for fulltime employment, the employment period, the experience date as well as teaching supplements and local supplements, including any team supplements. "

On August 26, 2015, the union representative received "Agreement form for change of wage- one-time supplement" for A from a payroll and finance employee at the X-school.  The one-time supplement of DKK 4,000 was awarded for extra responsibilities.

B approved the agreement, which did not specify the date of experience, by email that same date.

In connection with a wage audit at the school by Copenhagen Teachers' Association, which had been arranged by the school's union representative, A discovered that when she was employed at the school, she should have been given wage scale seniority for her 12 years of pre-school experience.

On March 18, 2016, Copenhagen Municipality was notified that A had been incorrectly placed on the wrong wage step with attached documentation.

On the same day, school principal C and union representative B signed the following:

*"Regarding the adjustment of wage errors for A*

In connection with the wage review by Copenhagen Teachers' Association on March 14, A has discovered that her experience supplement has been incorrect since she was employed by the X-school on August 1, 2009.

A has from the beginning of her employment until August 1, 2013, been paid under the basic wage step 27, and from August 1, 2013, to date has been paid under wage step 30. This despite the fact that she already had more than 12 years of experience as trained educator at the time of hiring.

A's wage must be adjusted so that she receives the correct wage step 32 + 7,000.00 annually as of April 1, 2015.

Retroactive payment for insufficient wages must also be made for the last 5 years. A's wage must be adjusted for the period April 1, 2011, to March 31, 2016, so that she receives a wage for the entire period, which is equivalent to her having more than 12 years of experience as an educator.

Attached is documentation of experience from August 1, 2009."

Thereafter, Copenhagen Municipality adjusted the wage retroactively to April 1, 2011.

## Explanations

A, B, D, E, F and G have given explanations.

*A* has explained that she was trained as an educator in 1984. She worked for many years as an educator, as a deputy leader and for a year and a half as the leader of a children's institution. She had been told that a pre-school class manager position was to be created at the X-school and approached the school herself. E, a union representative, and the parent board participated in the employment interview. After the interview, she received a call because some people on the parent board wanted more elaboration on some items. But she responded that she had nothing more to say. The next day she received call that she had gotten the job. She initially became a member of the Danish Teachers' Association when she was hired. Prior to that, she had been a member of the National Association of Child and Adolescent Educators.

She was at the school before the summer holidays ended, but after she was hired. D and E were present. She asked E, if she should come up with some papers regarding prior employment and seniority but was told that it was irrelevant as this was a newly created position. She marveled but put up with it.

She received the engagement letter dated June 30, 2009, but she did not send her CV, etc. because she had been told that this was irrelevant. In her application, she had stated what she had done before, and of course she also informed about this during the employment interview. When asked about the one-time supplement that she received on January 11, 2013, which was approved by H on behalf of Copenhagen Teachers' Association, she explained that she received the supplement because she was in charge of a breakfast program for the children at the school.

When asked about the change of wage that occurred as of August 1, 2015, she has explained that she worked with a colleague who had maternity leave and residual leave, which was to be settled. At that time, she had both

**1964**

the pre-school class and the first-grade class and was doing it by herself with a substitute.

In 2016, they received an email at the school about whether they were interested in a wage audit. J from the union came out and reviewed i.a. an example of a wage statement to demonstrate seniority. She could see from that that her wage might be wrong. J and she went through her wage statement, and Copenhagen Municipality was contacted, who could see that she had received too little.

She cannot remember whether she received advice on her wage from the teachers' association prior to the wage audit. It was B who was the union representative when the wage audit occurred.

She does not know whether she has seen the letter of March 18, 2016 "Concerning the adjustment of wage errors."

There was a demand for payment from the beginning of her employment, but Copenhagen Municipality believed that there was a limitation period.

*B* has explained that she is a trained primary school teacher and has worked as a teacher at the X-school from 2010 to January 1, 2019.

She was elected as a union representative at the X-school in August 2015. She has had nothing to do with wage agreements from before August 2015. She has several times been sent wage agreements from

Copenhagen Teachers' Association, where she could ask questions if there was anything she doubted.

Her predecessor was K. Both he and she had a sound collaboration with the management of the school.

The union representative helps ensure compliance with the agreement. You participate in a weekly meeting with the management and are, among other things, informed on personnel matters. In Copenhagen Municipality, the union representative negotiates local wage supplements. Negotiations are functionally based. The union representative negotiates the funds mentioned in paragraph 5 and 6 of the Advance Agreement. She had no authority to negotiate anything else than local wages.

When confronted with the correspondence about A's wage agreement, which was entered into as of August 1, 2015, she could remember being given a piece of paper, which she was asked to sign and was told that this was because A received her money. It took 30 seconds. She does not believe that she has seen the letter of June 29, 2015, to A with a statement of the wage composition.

The wage audit in 2016 came about due to her request. She did not attend the meeting herself as she was on sick leave. The substitute union representative was present. When she returned from her sick leave, A informed her about the result of the wage audit, and she was also contacted by Copenhagen Teachers' Association. She asked Copenhagen Teachers 'Association what she should do and was told that Copenhagen Teachers' Association had it covered. Her understanding was that she did not play a functional role in this connection. She subsequently heard that it became possible for A to get a wage adjustment for 5 years retroactive pay. She is the one who signed the letter of March 18, 2016, "Regarding the adjustment of wage errors for A". She came down to the office where the administrative employee was sitting. She asked about it and was told the purpose of it was for A to get her money. She skimmed it and signed it. It took less than a minute. The documentation had been written in advance and there was no negotiation. She did not question whether she should sign something that she thought Copenhagen Teachers' Association had run. She does not think that the principal has had the perception that she represented Copenhagen Teachers' Association. But the principal probably has had the perception that she represented A.

D has explained that she has been a teacher at the X-school since August 1995. She participated in the employment interview when A was hired in 2009. It was the first time that they had a pre-school class at the school. For the employment interview, there was talk about what A had done before. When she was hired, they were both in the principal's office. She remembers that A asked E about the wage. She had some seniority from the past, and whether she should locate the documentation of prior employment. The answer was that it was not necessary as that was a different job. She remembers it because she wondered if your wage was reduced when you changed jobs. The meeting took place after hiring. A was supposed to view the school, talk to the witness, and discuss about the practicalities. At the time, the union representative was probably L. There have been a few. It may also have been K. The school had no problems going to the union representative and there was also amicable collaboration with the management.

E has explained that she has been the principal at the X-school since January 2014. She was also a principal before she was hired at the X-school. She hired A. As principal, she was responsible for the daily operation, the school's direction and profile, and also hiring. There was always a hiring committee and always postings. There were representatives from the management, the board and the teachers' group in the hiring committee as well usually the person, which the person in question was expected to work with. There was always a union representative or a person from the teachers' group that the union representative had designated. She thinks the union representative was present when A was hired, but she does not specifically remember it.

References are taken for the person identified by the hiring committee. Once this is completed, the wage placement occurs. She believes that it was G, the administrative manager, who placed A. G was hired to relieve management of that part of the work. But, of course, it was still the witness who was in charge of hiring. She cannot remember anything about A's placement. G cleared up the errors related to employment rights, but these did not

**1965**

create a lot of chaos. There are many rules in Copenhagen Municipality about wage placement. They were aware that this was important. It was also G who did the school finances, but it was the witness who was in charge. People should get what they are supposed to get in the most cost-effective way. No one should be cheated. The witness cannot remember whether A asked about the importance of her prior employment.

She believes that she would have answered that G would review it. But she cannot remember. Sometimes things happen. She finds it strange that she should have flatly denied that prior employment was important.

The collaboration with the union representative was amicable. There were weekly meetings. She did not receive any complaints from the union representative that they did not feel informed. If there were wage issues, it would be natural to ask her or G. It could occur that she was the one asked, but she would usually inform and refer to the administrative manager.

She took A's references and read her CV. She was hired because she had a good and broad experience.

F explained that he is the team lead for Group Services with responsibility for this type of cases. Effective June 2013, he has been the team lead for the negotiations team. They are 14 in the team, which guide municipality leaders about wages, and sometimes he even negotiates cases with the trade unions. If there is a wage question, their team or the Center for Wage and Staff is called. For more complicated things, it is his people who are called.

The recruitment process for a pre-school manager is today such that the recruitment process occurs at the school, and Group Services handles the employment contract.

Previously, it was the Child and Youth Administration that ran the administrative process and forwarded it to KMD who in turn forwarded to the trade union organization. The agreement with KMD was that placement took place in accordance with what was reported. He does not know exactly what the procedure was in the Child and Youth Administration in 2009. But he has understood that it was common practice to send the employment agreement to the organization and that no approval was expected. He does not know why the wage agreement was forwarded to Copenhagen Teachers' Association in June 2010. He does not know whether anything has been forwarded before.

When they forwarded a new wage agreement for A to Copenhagen Teachers' Association in June 2015, they received a response. They asked for an approval, and they received an approval with condition. He has subsequently had a contact with Copenhagen Teachers' Association, where it was discussed whether it is reasonable to approve with a general condition. The union representative will usually be involved in a hiring process, but he cannot say with certainty whether the wage agreement gets submitted to the union representative. He would argue that the normal practice is that it is that the trade union must submit the agreement to the union representative.

It is quite usual for the wage agreement to include an experience-based component. It is not possible to make placements based on a CV. The experience must be documented by the employee. It is a completely normal procedure for the administration to contact the employee if a CV is attached. If there is no

documentation of prior employment, you are placed at the time of hiring. He can see that the engagement letter describes that the employment contract, documentation for prior employment, etc., shall be forwarded. That documentation has only been presented after the case started. There are administrative challenges in obtaining references from prior employers. Today, you remind the employee once. He does not know if that was done in 2009.

For new hires, a wage must be negotiated with the trade union organization. The employer provides a wage offer, and a proposal for a wage agreement is sent to the trade union. It could well be that Copenhagen Teachers' Association did not react on what was sent. Previously, there was an agreement on what was to be entered into and implemented, and there was therefore no condition requiring the receipt of an approval. There has been an expectation that there is a reaction if something went wrong. Many organizations react by asking for a negotiation. This is not unusual in connection with hiring. When there is no response, they assume that there is an agreement on the wage composition.

He can see that a wage agreement was forwarded in 2010, and in 2013, as well as something about a one-time supplement. There were no reactions in connection with the seniority placement.

When confronted with A's explanation that the school management informed her that prior experience did not affect the wage for the position, the witness explained it is the practice today for a local manager, who gets a wage question with uncertainties to call Group Services. The employee has the opportunity to contact his/her union representative or the trade union organization.

When Group Services is informed that an error has occurred, they will further investigate the matter. If they agree, they will correct the error within the legal framework. They correct prospectively and also pay retroactively. If it is a contractual error, they will correct up to five years retroactively under the Limitation Act. It is rare that they go into the actual assessment of whether there should be retroactive pay for the period prior to five years. But if that is a demand, they will meet with the union organization and closer review it. If the dispute is about wage scale seniority, e.g. due to uncertainty as to whether an

**1966**

acquired competence shall be counted, it is possible that they only adjust the wage prospectively. Questions of wage scale seniority are not always discussed with the main organization. It can also be discussed with the union representative. They do not question whether the union representative has the necessary mandate.

When confronted with the letter of March 18, 2016, "Regarding the adjustment of A's wage errors," his assumption is that the union representative must have had a mandate to make the agreement. It is conceivable that the letter was formulated after advice from Group Services.

The union representative usually has mandate to negotiate the local wage structure. If a question has been raised by the local organization, they should contact the local management and the union representative. If there is a dispute, they reach out to Copenhagen Teachers' Association. If Copenhagen Teachers' Association raises the issue, they contact local management and then Copenhagen Teachers' Association.

G has explained that she was the administrative manager of the X-school from January 2008 to August 1, 2009. She left immediately after A was hired. She was the manager of the technical/administrative staff. She prepared budgets and also wage forms. She was trained by a bank and also at business school. She has been a union representative for the Danish Journalists' Association at TV2. It was completely novel for her to work at a school. If she herself employed a technical employee or an office employee, she held the employment interview. When there were others that were to be hired; she was not present. She is pretty certain the union representative participated. She filled out the papers she sent to the Child and Youth Administration. She can only remember that they were supposed to have a new pre-school class, or that they should have an extra pre-school class teacher. But it was she, who filled out A's papers. She received something or the other about the new pre-school class teacher, and then she probably looked in some tables to ascertain the wage step for a new pre-school class teacher. It was her responsibility to send this to the administration.

If there were doubts about wage issues at the school, one could approach her with this and also others. Once, she has spent a very long-time reviewing wage statements to investigate whether the teachers received accurate supplements. They should get what they were entitled to. She does not remember whether the union representative complained that things were not right. She remembers that the-then union representative, L, and E had regular meetings where big and small issues were discussed. It could have been her or E who informed the union representative about a wage agreement. She is sure someone did it because she, as a former union representative, paid close attention to this occurring. She either notified about this herself or she found out that the union representative had been informed.

## The views of the parties

*The Danish Teachers' Association acting on behalf of A* has stated the following in its submission:

"…

PLEAS:

This case concerns the employment law question of whether A's claim for retroactive pay for insufficient wages has lapsed.

There is agreement between the parties that A in her employment at the X-school was placed in the wrong wage step, and therefore received less in wage than she was entitled to.

The dispute thus only concerns the question of whether the retroactive claim concerning the period from A's hiring at the X-school on August 1, 2009, up to and including the March 2011 wage has lapsed or not.

It is generally claimed that A and her trade union organization were unaware of the claim until March 4, 2016, when Copenhagen Teachers' Association discovered the error in a wage audit at the X-school, and that the limitation period was therefore tolled until this date, cf. § 3, para. 2 of the Limitation Act.

*The hiring*

It is alleged that in connection with being hired at X-school in 2009, A asked the-then principal E whether experience from prior employment as an educator should be included in her seniority when placed on the wage step in accordance with the agreement, and that the-then principal stated that prior seniority as an educator should not be included in wage placement in accordance with the agreement.

On the basis of the information from the principal, A had confidence that the seniority date was correct, which is why she had no reason to seek further advice in this regard from either the union representative or Copenhagen Teachers' Association.

The fact that A received a wage statement each month stating that her seniority date was set at August 1, 2009, also did not give her reason to investigate the matter further, as she had just been informed by the principal that the seniority date should be set without taking into account her prior employment as an educator before she was hired by the X-School. A provided Copenhagen Municipality with all relevant information in connection with her hiring in 2009.

A was therefore unaware that she had been incorrectly placed and thus did not receive the wage that she was entitled to.

In connection with the hiring, Copenhagen Teachers' Association never received a copy of the wage agreement, which is why Copenhagen Teachers' Association neither knew nor should have known that A had been incorrectly placed.

**1967**

*Copenhagen Teachers' Association's knowledge of A's prior employment as an educator*

It is alleged that Copenhagen Teachers' Association neither knew nor should have known about A's prior experience as an educator solely by virtue of A's membership in Copenhagen Teachers' Association, as the Copenhagen Teachers' Association does not organize educators employed in any other capacity than pre-school class managers. A's prior work experience did not consist of working as a pre-school class manager, and she was therefore not a member of Copenhagen Teachers' Association prior to her employment at the X-school. Copenhagen Teachers' Association therefore had no knowledge of her prior employment.

*Wage agreement submitted in June 2010*

It is alleged that Copenhagen Municipality's submission of A's wage agreement to Copenhagen Teachers' Association in June 2010 did not interrupt the tolling of the limitation period as no factual information about A's prior seniority was submitted. Therefore, it was not possible for the Copenhagen Teachers' Association to discover that A was incorrectly placed.

The background for Copenhagen Municipality's submission of A's wage agreement on June 1, 2010, was that the advance agreement between Copenhagen Municipality and Copenhagen Teachers' Association had been changed, as the pre-school class managers' qualification supplement increased from DKK 6,000 to DKK 9,000. The submission of the wage agreement was thus to inform that A's supplement increased as a result of what had already been agreed in the advance agreement. The submission of the wage agreement therefore did not give rise to the investigation of the seniority date by Copenhagen Teachers' Association.

*Wage agreement submitted in 2015*

It is alleged that the consequence of Copenhagen Municipality's submission of A's wage agreement to the Copenhagen Teachers' Association on June 29, 2015, was not that A or Copenhagen Teachers' Association knew or should know that A had been incorrectly placed, as the Copenhagen Municipality did not inform of A's seniority as an educator before she was hired by X-school when submitting the wage agreement.

It is further alleged that even if it is assumed - which is disputed - that the submission of the wage agreement on June 29, 2015, interrupted the tolling, A's claim for retroactive payment of wages from the time she was hired on August 1, 2009 has not lapsed due to the circumstance that Copenhagen Teachers' Association knew or should have known in June 2015 that A was incorrectly placed, which causes the 5-year limitation period to be calculated from June 29, 2015, whereby the claim has not lapsed.

It is alleged that the tolling was in effect until the wage audit at the X-school by Copenhagen Teachers' Association on March 4, 2016.

*Allocation of lump sums in 2013 and 2015*

It is alleged that in connection with Copenhagen Municipality's allocation of lump sums to A in 2013 and 2015, there were no circumstances, which meant that A or her trade union organization should have become aware that she was incorrectly placed.

In addition, it is alleged that the allocation of lump sums in 2015 was not approved correctly, as the allocation of the lump sum was not approved by Copenhagen Teachers' Association, but by the local union representative. The right to negotiate the allocation of lump sums to employees under the agreement does not belong to the local union representative, but instead to Copenhagen Teachers' Association.

However, the allocation of the two lump sums is not relevant to the case, as the allocation of the lump sums was not based on A's seniority date and therefore the seniority was not included in the approval of the allocations either.

*The union representative's approval of insufficient wage payments*

It is alleged that the local union representative's signature on the notice of payment of insufficient wages to A on March 18, 2016, did not constitute an agreement or a commitment whereby A waived the right to demand payment of wages that were more than 5 years retroactive. There is no support for such an understanding in the wording of the notice of payment.

Furthermore, it is not the union representative who has the bargaining power in a dispute concerning retroactive payments for insufficient wages, as the union representative in relation to wages only has bargaining power regarding the pool for team coordinators and unionized educational guidance counselors, cf. § 5 of the Advance Agreement, and the locally allocated funds, cf. § 6 of the Advance Agreement

In addition, Copenhagen Municipality did not present the letter during the negotiations between the parties in the present case, which seems strange if it is really Copenhagen Municipality's view that the case was fully and finally concluded by the union representative's letter of March 18, 2016. Copenhagen Teachers' Association thus did not receive the letter before it was presented with the submission in the present case.

…"

*Copenhagen Municipality* has alleged the following in its submission:

»…

PLEAS:

In support of the submitted claim for dismissal, it is generally alleged that A's claim for retroactive pay for the period before April 1, 2011, has lapsed, partly because there has been no tolling of the limitation period pursuant to

**1968**

§ 3, para. 2 of the Limitation Act, partly because B, the local union representative has accepted on A's behalf that A's wage should only be readjusted five years retroactively from March 31, 2016.

In support of the fact that the limitation period has not been tolled, it is alleged that A had special reason to verify with her trade union that she was placed on the correct wage step when she was hired at the X-school on August 1, 2009. A was informed as to what agreement she was covered by in her letter of engagement, as well as how she could find this out. In addition, A received a wage statement each month stating that her seniority had been calculated from August 1, 2009, which should have given reason for further investigation. In this connection, it is an aggravating circumstance that A was a member of a professional organization that could have helped her resolve any question regarding seniority.

It is alleged that A was most likely to bear the risk of not being placed on the correct wage step when she was hired at the X-school, as she did not - as otherwise provided in her engagement letter - submit any documentation of her prior experience as an educator, just as she, despite all the ways available for this, did not follow up on the question of seniority, which with the knowledge we have today, can be assumed to be a big part for her.

In continuation of the above, it is alleged that the Copenhagen Teachers' Association, on behalf of A, must also bear the risk of not having discovered that A was placed in the wrong wage step, as the local union representative had a clear opportunity to ascertain this when he received information about her hiring.

Copyright © 2020 Karnov Group Denmark A/S

It is noted in this connection that Copenhagen Teachers' Association as A's union organization had the primary interest in A's experience as an educator being included in her seniority, and that the Copenhagen Municipality had - and otherwise continues to have - an expectation that the local union representative herself contacts future employees when the organization is informed about upcoming hires.

It is also claimed that it is A who has the burden to prove that she was informed by her then-principal E that she could not include prior educational experience in her seniority as a pre-school class manager.

In this connection, Copenhagen Municipality notes that it is the municipality's view that it is highly unusual for a local manager in the Child and Youth Administration area to take such a strong position on a question concerning the included components in a seniority determination. In practice, such questions are always referred to the centrally employed personnel consultants in the Group Service (formerly the Child and Youth Administration).

In relation to the regulatory agreement entered into on March 18, 2016, between Copenhagen Municipality and the local union representative B, it is alleged that this must be considered binding between the parties and that it must be understood as meaning that A through her local union representative waived her right to raise the claim for retroactive payment of insufficient wages for the period prior to April 1, 2011.

In support of the binding effect of the agreement, it is alleged that the union representative acted within the limits of her (position's) mandate at the time she concluded it, and that Copenhagen Municipality acted in good faith in this regard. It is noted in this connection that A and her bargaining union organization, which at the conclusion of the agreement was represented by the local union representative, identified with one another.

This is supported by the fact that the agreement concerned contractual matters, and that in the MED framework agreement, § 11, para. 2, assumes that the union representative can negotiate and enter into agreements for the employees he or she represents, to the extent that the union representative has been given the authority to do so, cf. also the MED handbook's guidelines in this regard. There was also no requirement in the current agreement - as in certain other agreements - that the organization should generally approve agreements entered into by the union representative.

The fact that the local union representative had the authority to conclude the agreement of March 18 is further supported by the fact that 1) Copenhagen Teachers' Association itself conducted and audited wages at the X-school against Copenhagen Municipality, and 2) that Copenhagen Teachers' Association then had the union representative negotiate and close the case.

With this course of action, the Copenhagen Teachers' Association gave the municipality a legitimate expectation that the union representative, on behalf of the organization and thus A, was authorized to enter into an agreement on retroactive adjustment. The fact that the agreement did not include a condition on further adjustment in the case also gave Copenhagen Municipality a legitimate expectation that no further claims would be raised for payment of insufficient wages for the period prior to April 1, 2011.

On this basis, it is alleged that Copenhagen Municipality's actions were based on its confidence that that the local union representative had mandate to decide A's claim for retroactive wage payment on behalf of the Copenhagen Teachers' Association, and that the parties' agreement had to be considered final.

If, contrary to expectations, the court finds that the seniority issue should not have been investigated by A and her trade union already at A's hiring, it is claimed that the tolling was interrupted by

**1969**

Copenhagen Municipality's submission of A's wage agreement to Copenhagen Teachers' Association on June 1, 2010. At this time, Copenhagen Teachers' Association had a special reason to verify whether her wage was calculated correctly. Copenhagen Teachers' Association can thus not have been in factual error, regardless of whether Copenhagen Teachers' Association specifically investigated the circumstances or not.

In support of this, it is noted that although the parties agree that Copenhagen Municipality and Copenhagen Teachers' Association agreed in 2010 that Copenhagen Teachers' Association should only have wage agreements for informational purposes, it has always been the municipality's clear understanding that this was also the organization's opportunity to precisely verify the wage set by the municipality.

Copenhagen Municipality has thus always assumed that the organization would inform itself as to the submitted agreements and on the basis of that knowledge, which the organization had or should be able to obtain from the individual member, react if the union found errors or deficiencies in the wage set by the municipality.

It is thus the municipality's opinion that providing information to Copenhagen Teachers' Association, according to established practice, has always helped to ensure a correct wage placement at hiring for all employees.

As Copenhagen Municipality in good faith forwarded wage agreements for A in 2010, 2013 and 2015, which were approved, including revisions by Copenhagen Teachers' Association and the local union representatives, the municipality could thus rightly expect and position itself as if A's wage was correctly set.

Since the introduction of the requirement that wage agreements be approved by Copenhagen Teachers' Association, the approval has often been conditioned on the local union representative's approval of wage agreement. Against this background, it is also i.a. the municipality's view that wage negotiations are in practice a matter for the individual manager and the local union representative.

The fact that the Copenhagen Teachers' Association receives many wage agreements is irrelevant to the case, as the association itself organizes how it wants to handle the approval and negotiation processes. This should not harm Copenhagen Municipality.

In the event that the court should find that A's claim has not lapsed, it is alleged that the tolling rule in the Interest Act § 3, para. 3, or the analogy of its provision may apply in this case, so that A is only entitled to interest on the outstanding 30 days after the Copenhagen Teachers' Association, on behalf of A, directed a claim for retroactive payment of wages against Copenhagen Municipality.

…"

…

### The Court's reasoning and decision

The letter of engagement dated June 30, 2009, stated that the wage paid will be adjusted from the beginning of employment in accordance with the final wage agreement, and that the final wage agreement will be delivered by "your manager" at the conclusion of the negotiation. Furthermore, it stated that A should deliver documentation of prior education, prior experience, CV, as well as occupational pension scheme from prior employment relationships "to your manager."

A's manager at the time was E, and the court finds that A and D's explanations proved that A asked whether she should submit documentation of prior employment and that E replied that this

was irrelevant. Furthermore, that E and the-then union representative knew that A had several years of experience as an educator at the time of hiring due to their participation in the recruitment committee is also taken into account.

On this basis, the question is whether the limitation period was tolled due to A's erratic ignorance of her claim, cf. § 3, para. 2 of the Limitation Act, or whether she should have become aware of the claim at an earlier time.

It is the employee who is in possession of documentation of prior employment and is most knowledgeable to inform about it. A's employment agreement showed that the final wage agreement could depend on negotiation and that documentation of prior employment had to be submitted. The court finds that it is common knowledge that prior work experience may have an impact on wage scale seniority in a new position. A and D have also explained that they were surprised by E's announcement, but A, after his explanation, agreed to tolerate it. In these overall circumstances, the court finds that A had the reason and opportunity to investigate the matter further by contacting the union representative or the trade union, and that she should therefore have become aware of her claim already in connection with hiring.

The claim against Copenhagen Municipality is dismissed.

…

## Judgment of Eastern High Court

### Claims

*The appellant, the Danish Teachers' Association* acting on behalf of A has filed a claim that the respondent Copenhagen Municipality be ordered to pay DKK 45,697.98 with the addition of the usual procedural interest of DKK 2,258.55 from July 31, 2009, of DKK 2,258.55 from August 31, 2009, of DKK 2,285.66 from September 30, 2009, of DKK 2,285.66 from October 31, 2009, of DKK2,285.66 from November 30, 2009, of DKK 2,285.66 from December 31, 2009, of DKK 2,285.66 from January 31, 2010, of DKK 2,285.66 from February 28, 2010, of DKK 2,288.91 from March 31, 2010, of DKK 2,288.91 from April 30,

**1970**

2010, of DKK 2,288.91 from May 31, 2010, of DKK 2,288.91 from June 30, 2010, of DKK 2,288.91 from July 31, 2010, of DKK 2,288.91 from August 31, 2010, of DKK 2,288.91 from September 30, 2010, of DKK 2,288.91 from October 31, 2010, of DKK 2,288.91 from November 30, 2010, of DKK 2,288.91 from December 31, 2010, of DKK 2,288.91 from December 31, 2010, of DKK 2,288.91 from January 31, 2011, and of DKK 2,288.91 from February 28, 2011, in total until payment in full.

*Copenhagen Municipality* has claimed that the judgment should be upheld.

### Explanations

A has given an additional explanation. J and M have also given an explanation.

*A* additionally explained that the meeting she had with E and D at school took place before the summer holidays of 2009. The-then union representative, L, did not attend the meeting. She was surprised that her prior employment was not included in the calculation of her seniority, but she had not previously worked in a school, so she trusted what E informed. E justified it on the grounds that it was a newly created position. She just did not consider whether that, which E had informed, could be wrong.

It is correct that the engagement letter, which she subsequently signed, shows that she had to submit documentation for education, prior experience, CV as well as the occupational pension scheme from prior employment relationships. This did not make her think that she should submit this documentation, as she had talked to E about it. In her prior employment as an educator, she was used to the fact that prior experience could have importance, and that was why she had asked about this. As the pre-school manager, she had not been responsible for wages, etc.

E was the manager she should contact if she had questions about her wage.

Prior to being hired at the X-school, she was employed as an educator in another municipality. She does not remember how she obtained the proof of employment declaration that Eventyrhusene provided on April 5, 2009.

Prior to the scheme in March 2016, when Copenhagen Teachers' Association offered the wage audit, she had no suspicion that she could have been incorrectly placed in terms of wage. During the scheme, J had, among other things, elaborated on what was included in the "experience date", which startled her. She therefore asked J to take a closer look at her wage statement.

*J* has explained that since March 2008 she has been a union consultant in Copenhagen Teachers' Association, where she deals with issues related to wage and hiring conditions. A's hiring conditions were partly based on a central agreement between the Central Organization of Teachers and the Central Organization of Municipalities. In addition, Copenhagen Municipality and Copenhagen Teachers' Association had entered into a prior wage agreement, which, among other things, set allowances for pre-school managers.

In 2009, employment agreements and wage agreements were not automatically sent to Copenhagen Teachers' Association, and they did not participate in individual negotiations, etc., in connection with hiring.

In 2010, there was an increase in A's qualification supplement, which is why her wage agreement was sent to Copenhagen Teachers' Association. It was quite normal that the association does not report back in such circumstances. The majority of pre-school managers are paid retroactively, but if you have previously been paid prospectively, you retain this right. The fact that A was paid prospectively shows that she had some prior seniority.

In 2015, Copenhagen Municipality wanted to the make the procedure for all employment areas uniform. In their area, it was therefore agreed that the principal would inform the local union representative so that the union representative had the opportunity to review the wage agreement. Once the union representative had carried out this review, she would place a check mark in the municipality's internal wage system.

She was in charge of the wage audit scheme at the X-school in March 2016. In this connection, she had reviewed the rules on the date of experience, which is an important area. In this connection, she was contacted by A, who thought that the date of experience on her wage statement could be incorrect. There are different types of work experiences that play different roles in relation to the determination of the experience date.

She has not seen the letter of March 18, 2016, regarding wage adjustment prior to this lawsuit. The local union representative does not have the authority to enter into agreements that waives seniority, as this has been negotiated and stipulated in the central agreement in the area.

Copenhagen Teachers' Association has occasionally found errors in the wage agreements, which were submitted to them. They cannot verify the accuracy of the experience date, as they do not get other material. That is why they provide for review by the local union representative. The local union representatives are trained in the relevant set of rules. She has also been involved in raising cases with errors to the municipality, whose members have contacted the association.

*M* has explained that she is a personnel consultant for Copenhagen Municipality. She has been employed by the municipality for almost 40 years and by the Child and Youth Administration since 1996. Among other things, she deals with wage agreements and placements. In March 2009,

Copenhagen Municipality had outsourced the payroll administration to KMD, and in that connection she had followed up with KMD. Schools and institutions were to report wage agreements

**1971**

directly to KMD using electronic forms. It was the school that received CVs and other documentation in connection with hiring. A CV is not in itself sufficient to make a proper placement as this requires precise dates. Therefore, it is usually necessary for the municipality to receive letters from prior workplaces, the person's last wage statements or the like. As a last resort, one could use information from the supplementary pension scheme (ATP) to make the placement. If the necessary information was not received, the experience date is set at the hiring date. The wage agreement was then sent to the trade union organization. It was not unusual for the trade union to respond to this. If the municipality did not hear anything, it was assumed that the placement was correct. Her impression is that error in connection with placement has only occurred on a few occasions.

If an employee is paid prospectively, this can be due to the appliable person having been paid prospectively in prior employment. She also believes that you can agree to this with your manager. She does not know what the X-School did in 2009 to obtain the necessary documentation.

### Pleas

The parties have essentially reiterated and elaborated on their pleas before the district court.

*A* has specifically stated that she neither knew nor should have known that the agreement placed her incorrectly and that she was therefore was unaware of her claim until March 4, 2016, which is why the limitation period has been tolled until this date. Copenhagen Municipality's submission of wage agreements in 2010 and 2015, respectively, did not mean that she or her union organization acquired - or should have acquired - knowledge of the claim. The fact that the X-school's union representative signed the notice of payment of insufficient wages for part of the period does not mean that she is barred from raising additional claims for repayment of wage for the period from August 1, 2009, to April 1, 2011.

*Copenhagen Municipality* has stated that the claim for retroactive payment of wages for the period prior to April 1, 2011, has lapsed. It disputed that A asked about the effect that prior seniority had on her wage, including the fact that A was informed that her prior experience could not be included in the calculation of her seniority as a pre-school class manager. In her letter of engagement, A was asked to submit documentation of prior experience, and she was also informed of the agreement under which she was hired and where it was located. It is an aggravating circumstance that she was a member of a union organization that could provide help in determining what wage she could claim. Furthermore, the union representative at X-school signed an agreement with Copenhagen Municipality that A is bound to, which shows that her wage should adjusted retroactively 5 years, which occurred.

### The High Court's reasoning and result

The High Court, like the district court, assumes that A in connection with her employment asked the school principal, E, whether she should submit documentation of prior employment, and that E replied that this was irrelevant, notwithstanding the fact that E knew that A had several years of experience as an educator.

On this basis, A failed to submit the documentation of prior employment, which was mentioned in the engagement letter of June 30, 2009, and she was thereby placed on the wrong wage step with the wrong experience date upon her date of hiring on August 1, 2009, which caused her not to get paid the full wage to which she was entitled.

On that basis, the High Court finds that it has been established that A was unaware that her wage had been calculated incorrectly and that this can be characterized as a factual error, cf. § 3, para. 2 of the Limitation Act. The question then is whether A should have known that she did not receive the correct wage at an earlier time than she did.

An employer has a duty to calculate an employee's wage correctly on the basis of the information provided by the employee. As the school's management was aware of A's prior experience, and A had been informed that she did not need to submit documentation of prior employment, the High Court finds that she could reasonably expect Copenhagen Municipality to place her correctly. Although the date of experience was incorrectly stated as August 1, 2009, on the employment contract and wage statements, respectively, the High Court finds no basis for determining that A had a special duty to verify whether the wage was calculated correctly. The High Court has also emphasized that A had changed union to the Danish Teachers' Association at her time of hiring.

The High Court therefore finds that A should not have known that her wage was incorrectly paid before the wage audit of March 14, 2016. The limitation period has therefore been tolled, cf. § 3, para. 2 of the Limitation Act and the wage claims for the period from August 1, 2009, to April 1, 2011, have therefore not lapsed.

The High Court further finds that the letter of March 18, 2018, signed by the principal and union representative at the X-school does not constitute a binding agreement for A, which precludes her from additional wage claims.

The High Court therefore sustains A's claim.

…

**U.2020.1961**
**U.2020.1961**

*Lønmodtager anset for at være i faktisk vildfarelse om lønkrav, der var opstået som følge af forkert indplacering på løntrin, og lønmodtageren burde ikke have vidst, at hun ikke fik udbetalt korrekt løn. Lønkravet var derfor ikke forældet.*

*Ansættelses- og arbejdsret 2.5.*

En børnehaveklasseleder, A, blev ved sin ansættelse den 30. juni 2009 på X-skolen indplaceret på forkert løntrin, idet der ikke blev taget højde for 12 års forudgående erfaring som pædagog. Fejlen blev opdaget den 14. marts 2016, og kommunen efterbetalte løn 5 år tilbage. Tvisten angik, om krav, der lå mere end 5 år tilbage, var forældede. I forbindelse med ansættelsen blev der udarbejdet et ansættelsesbrev, hvoraf det bl.a. fremgik, at A til sin leder skulle aflevere dokumentation for tidligere ansættelsesforhold. A modtog den 31. juli 2009 sin første lønseddel, hvoraf bl.a. fremgik, at »erfaringsdato« var 1. august 2009. I 2015 godkendte A's fagforening en ny lønaftale med bemærkning om, at det var en forudsætning for foreningens godkendelse, at den lokale tillidsrepræsentant havde fået forevist aftalen og godkendt, at blandt andet erfaringsdato var i orden. Den 26. august 2015 fik A's tillidsrepræsentant, B, tilsendt »Aftaleblanket til ændring af løn – Engangstillæg« for A. B godkendte aftalen, der ikke angav erfaringsdato, ved mail af samme dato. I forbindelse med løntjek opdagede A, at hun ved sin ansættelse skulle have været tillagt lønanciennitet for sine 12 års erfaring i børnehaver. Kommunen regulerede herefter lønnen tilbage til 1. april 2011. I den forbindelse underskrev skoleleder C og tillidsrepræsentant B følgende: »Vedrørende regulering af lønfejl for A … Efterbetaling af for lidt udbetalt løn skal desuden ske for de sidste 5 år. A's [be]løb skal reguleres for perioden 1. april 2011 til 31. marts 2016 …«. A stævnede den 14. marts 2018 kommunen for lønkrav for perioden fra den 1. august 2009 til den 1. april 2011. Byretten frifandt kommunen. Landsretten lagde ligesom byretten til grund, at A i

**1962**

forbindelse med sin ansættelse havde spurgt skolens leder, E, om hun skulle fremsende dokumentation for tidligere ansættelser, og at E havde svaret, at det var uden betydning, desuagtet at E vidste, at A havde adskillige års erfaring som pædagog. A undlod på denne baggrund at indsende den dokumentation for tidligere ansættelser, som var omtalt i ansættelsesbrevet af 30. juni 2009, og hun blev derved indplaceret på forkert løntrin og med en forkert erfaringsdato. Landsretten fandt det på den baggrund godtgjort, at A var uvidende om, at hendes løn var beregnet forkert, og at dette kunne karakteriseres som en faktisk vildfarelse, jf. forældelseslovens § 3, stk. 2. Spørgsmålet var herefter, om A burde have haft kendskab til, at hun ikke modtog korrekt løn på et tidligere tidspunkt end sket. Landsretten bemærkede, at en arbejdsgiver har pligt til at beregne en medarbejders løn korrekt på baggrund af de oplysninger, den ansatte har givet. Da skolens ledelse var bekendt med A's tidligere erfaring, og da A havde fået besked på, at hun ikke behøvede at indsende dokumentation for tidligere ansættelser, fandt landsretten, at hun med rimelig grund kunne forvente, at kommunen indplacerede hende korrekt. Selvom erfaringsdatoen fejlagtigt stod anført som den 1. august 2009 på henholdsvis ansættelsesbevis og lønsedler, fandt landsretten ikke grundlag for at fastslå, at A havde en særlig pligt til at efterkontrollere, om lønnen var beregnet korrekt. Landsretten havde herved tillige lagt vægt på, at A pr. ansættelsestidspunktet skiftede fagforening. Landsretten fandt herefter, at A ikke burde have vidst, at hun ikke fik udbetalt korrekt løn forud for løngennemgang den 14. marts 2016. Forældelse havde derved været suspenderet, og lønkrav for perioden fra den 1. august 2009 til den 1. april 2011 var derfor ikke forældet. Landsretten fandt endelig, at brevet underskrevet af X-skolens skoleleder og tillidsrepræsentant ikke udgjorde en bindende aftale for A, der afskar hende fra yderligere lønkrav. Landsretten tog herefter A's påstand til følge.

**Ø.L.D. 23. marts 2020** *i anke 24. afd. BS-21580/2019-OLR*

(Karen Hald, Anne Thalbitzer og Catarina Ryder Hoffmann (kst.)).

*A (adv. Marc Malmbak Stounberg, Kbh.)*
mod
*Københavns Kommune (adv. Marianne Lage, Hellerup)*

## Københavns Byrets dom 29. april 2019, BS-19373/2018-KBH

### Sagens baggrund og parternes påstande

Børnehaveklasseleder A blev ved sin ansættelse på X-skolen indplaceret på forkert løntrin, idet der ikke var taget højde for 12 års forudgående erfaring som pædagog med ansættelser i børnehaver. Hun fik derfor mindre i løn, end hun var berettiget til. Det blev opdaget den 14. marts 2016, og Københavns Kommune har udbetalt efterbetaling 5 år tilbage for perioden 1. april 2011 og frem, og tvisten angår derfor udelukkende, om krav, der ligger mere end 5 år tilbage, er forældede.

*Danmarks Lærerforening som mandatar for A* har fremsat følgende påstand:

Københavns Kommune skal betale kr. 45.697,98 med tillæg af sædvanlig procesrente af kr. 2.258,55 kr. fra den 31. juli 2009, af kr. 2.258,55 fra den 31. august 2009, af kr. 2.285,66 fra den 30. september 2009, af kr. 2.285,66 fra den 31. oktober 2009, af kr. 2.285,66 fra den 30. november 2009, af kr. 2.285,66 fra den 31. december 2009, af kr. 2.285,66 fra den 31. januar 2010, af kr. 2.285,66 fra den 28. februar 2010, af kr. 2.288,91 fra den 31. marts 2010, af kr. 2.288,91 fra den 30. april 2010, af kr. 2.288,91 fra den 31. maj 2010, af kr. 2.288,91 fra den 30. juni 2010, af kr. 2.288,91 fra den 31. juli 2010, af kr. 2.288,91 fra den 31. august 2010, af kr. 2.288,91 fra den 30. september 2010, af kr. 2.288,91 fra den 31. oktober 2010, af kr. 2.288,91 fra den 30. november 2010, af kr. 2.288,91 fra den 31. december 2010, af kr. 2.288,91 fra den 31. januar 2011, af kr. 2.288,91 fra den 28. februar 2011 alt til betaling sker.

*KØBENHAVNS KOMMUNE* har påstået frifindelse.

### Oplysningerne i sagen

…

Sagen er anlagt den 14. marts 2018

Københavns Kommunes Børne- og Ungdomsforvaltning ansatte den 30. juni 2009 A som børnehaveklasseleder i Københavns Kommune med tjenestested indtil videre i X-skolen fra den 1. august 2009. Af »Ansættelsesbrev« fremgår bl.a.:

»Dit ansættelsesforhold, herunder dine pensionsforhold, er omfattet af den til enhver tid gældende overenskomst for lærere indgået mellem KL og Lærernes Centralorganisation. … Den overenskomst, du er omfattet af, vil kunne rekvireres hos din leder.

Du aflønnes med udgangspunkt i den til enhver tid gældende overenskomst og eventuel forhåndsaftale …

Copyright © 2020 Karnov Group Denmark A/S                                                                                                                                          side 1

Din udbetalte løn vil blive reguleret fra ansættelsens start i overensstemmelse med den endelige lønaftale. Den endelige lønaftale udleveres af din leder efter endt forhandling.

…

Som bekræftelse på ovenstående bedes du returnere vedlagte eksemplar i underskrevet stand til din nærmeste leder inden 8 dage fra modtagelsen af dette ansættelsesbrev. Dokumentation for uddannelse, tidligere erfaring, CV, samt arbejdsmarkedspensionsordning fra tidligere ansættelsesforhold mv. skal ligeledes afleveres til din leder.«

**1963**

Det bemærkes, at »eventuel forhåndsaftale«, som nævnt i ovenstående henviser til eventuelt supplement til overenskomsten indgået af de lokale parter, Københavns Kommune, og Københavns Lærerforening.

A, der er forudlønnet, modtog den 31. juli 2009 lønseddel, hvoraf bl.a. fremgik, at »erfaringsdato« var 1. august 2009.

Lønaftalen blev sendt til Københavns Lærerforening den 1. juni 2010 af KMD Lønservice. Det fremgår af brevet:

»Bemærk at det af aftalen mellem KMD Lønservice og Børne- og Ungdomsforvaltningen fremgår, at den godkendte lønaftale skal sendes videre til den ansættende enhed. …

Skulle der være spørgsmål eller kommentarer til den vedhæftede lønaftale, skal disse ligeledes stilles direkte til den ansættende enhed og IKKE til KMD lønservice.«

Den 16. januar 2013 godkendte Københavns Lærerforening en aftale om engangsbeløb for A.

Den 29. juni 2015 fremsendte KMD BPO A/S en ny lønaftale til Københavns Lærerforening. Af lønaftale fremsendt direkte til A fremgår som tidligere »Erfarings/lønanciennitetsdato: 1. august 2009«. Aftalen blev godkendt af Københavns Lærerforening den 29. juni 2015 med følgende ordlyd:

»Københavns Lærerforening kan godkende denne aftale.

Det skal dog understreges, at en forudsætning for foreningens godkendelse er, at den lokale tillidsrepræsentant har fået forevist aftalen og godkendt beskæftigelsesgrad, ansættelsesperiode, erfaringsdato samt undervisningstillæg og lokale tillæg herunder teamtillæg er i orden.«

Den 26. august 2015 fik tillidsrepræsentant B fra løn- og økonomimedarbejder fra X-skolen tilsendt »Aftaleblanket til ændring af løn - Engangstillæg« for A. Engangstillægget på 4.000 kr. blev ydet for ekstra ansvar.

B godkendte aftalen, der ikke angav erfaringsdato, ved mail af samme dato.

I forbindelse med løntjek på skolen med Københavns Lærerforening arrangeret af tillidsrepræsentanten på skolen opdagede A, at hun ved sin ansættelse på skolen skulle have været tillagt lønanciennitet for sine 12 års erfaring i børnehaver.

Den 18. marts 2016 blev der givet meddelelse til Københavns Kommune om, at A havde været indplaceret på et forkert løntrin og dokumentation blev vedlagt.

Samme dag underskrev skoleleder C og tillidsrepræsentant B følgende:

»*Vedrørende regulering af lønfejl for A*

I forbindelse med løngennemgang med KLF d. 14. marts, har A opdaget, at hendes løntillæg for erfaring har været forkert, fra hun blev ansat på X-skolen d. 1. august 2009.

A er fra ansættelsens start og frem til 1. august 2013 blevet aflønnet med grundløntrin 27, og fra 1. august 2013 til dags dato blevet aflønnet med løntrin 30. Dette på trods af, at hun allerede på ansættelsestidspunkt havde mere end 12 års erfaring som uddannet pædagog.

A's løn skal reguleres, så hun får korrekt løntrin 32 + 7.000,00 årligt pr. 1. april 2015.

Efterbetaling af for lidt udbetalt løn skal desuden ske for de sidste 5 år. A's løb skal reguleres for perioden 1. april 2011 til 31. marts 2016, så hun for hele perioden får en løn, der svarer til, at hun har mere end 12 års erfaring som pædagog.

Vedlagt er dokumentation for erfaring fra 1. august 2009.«

Herefter regulerede Københavns Kommune lønnen tilbage til 1. april 2011.

**Forklaringer**

Der er afgivet forklaring af A, B, D, E, F og G.

*A* har forklaret, at hun blev uddannet som pædagog i 1984. Hun arbejdede i mange år som pædagog, som souschef og i halvandet år som leder af en børneinstitution. Hun havde fået at vide, at der skulle oprettes en børnehaveklasselederstilling på X-skolen og opsøgte selv skolen. E, en tillidsmand og forældrebestyrelsen deltog i ansættelsessamtalen. Efter samtalen blev hun ringet op, fordi nogle personer i forældrebestyrelsen ville have uddybet nogle ting. Men hun svarede, at hun ikke havde mere at fortælle. Dagen efter blev hun ringet op og havde fået jobbet. Hun blev først medlem af Danmarks Lærerforening ved ansættelsen. Forud havde hun været medlem af BUPL.

Hun var på skolen, før sommerferien sluttede, men efter hun havde fået ansættelse. Til stede var D og E. Hun spurgte E, om hun skulle komme med nogle papirer vedrørende tidligere ansættelser og anciennitet, men fik at vide, at det var uden betydning, da det var en nyoprettet stilling. Hun undrede sig, men slog sig til tåls med det.

Hun modtog ansættelsesbrev af 30. juni 2009, men hun sendte ikke CV etc., fordi hun havde fået at vide, at det var uden betydning.

Hun havde i sin ansøgning skrevet, hvad hun havde lavet tidligere, og det fortalte hun selvfølgelig også om under ansættelsessamtalen.

Forespurgt om det engangstillæg, hun fik den 11. januar 2013, og som blev godkendt af H på vegne Københavns Lærerforening, har hun forklaret, at hun fik tillægget, fordi hun stod for en morgenmadsordning for børnene på skolen.

Forespurgt om ændring af løn, der skete pr. 1. august 2015, har hun forklaret, at hun arbejdede sammen med en kollega, som havde barsel og restferie, der skulle afvikles. Hun havde på det tidspunkt både

**1964**

børnehaveklasse og 1. klasse og var alene om det sammen med en vikar.

De fik på skolen en mail i 2016 om, hvorvidt de var interesserede i et løntjek. J fra fagforeningen kom ud og gennemgik bl.a. et eksempel på en lønseddel til illustration af anciennitet. Hun kunne af det se, at hendes løn muligt ikke passede. J og hun gennemgik hendes lønseddel, og der blev taget kontakt til Københavns Kommune, som godt kunne se, at hun havde fået for lidt.

Hun kan ikke huske, at hun har fået rådgivning om sin løn fra lærerforeningen forud for løntjekket. Det var B, der var tillidsrepræsentant, da løntjekket skete.

Hun ved ikke, om hun har set brev af 18. marts 2016 »Vedrørende regulering af lønfejl«.

Der var krav om betaling fra begyndelsen af hendes ansættelse, men Københavns Kommune mente, at der var en forældelsesfrist.

*B* har forklaret, at hun er folkeskolelæreruddannet og har arbejdet som lærer på X-skolen fra 2010 til den 1. januar 2019.

Hun blev valgt som tillidsrepræsentant på X-skolen i august 2015. Lønaftaler fra før august 2015 har hun ikke haft noget med at gøre. Hun er flere gange blevet tilsendt lønaftaler fra Københavns

Lærerforening, hvor hun skulle stille spørgsmål, hvis der var noget hun var i tvivl om.

Hendes forgænger var K. Både han og hun havde et fornuftigt samarbejde med ledelsen på skolen.

Tillidsrepræsentanten er med til at sørge for at overenskomsten bliver overholdt. Man deltager i et ugentligt møde med ledelsen og er bl.a. inde over personalesager. I Københavns Kommune forhandler tillidsrepræsentanten lokallønstillæg. Der forhandles ud fra funktioner. Det de midler, der er nævnt i Forhåndsaftalens paragraffer 5 og 6, tillidsrepræsentanten forhandler. Hun havde ikke kompetence til at forhandle andet end lokalløn.

Foreholdt korrespondancen om lønaftalen for A, indgået pr. 1. august 2015, kan hun huske, at hun fik et stykke papir, hvor hun blev bedt om at skrive under, og hun fik at vide, at det var for, at A fik sine penge. Det tog 30 sekunder. Hun mener ikke, at hun har set brev af 29. juni 2015 til A med en opgørelse af lønsammensætningen.

Løntjekket i 2016 kom i stand på hendes foranledning. Hun deltog ikke selv i mødet, da hun var sygemeldt. Suppleanten for tillidsrepræsentanten var tilstede. Da hun kom tilbage fra sygdom, fortalte A om resultatet af løntjek for hende, og hun blev også kontaktet af Københavns Lærerforening. Hun spurgte Københavns Lærerforening, hvad hun skulle gøre, og fik at vide, at det havde Københavns Lærerforening styr på. Hun oplevede ikke, at hun havde nogen funktion i den sammenhæng. Hun hørte igen, da det blev muligt, at A fik en lønregulering fem år tilbage. Det er hende, der har skrevet under på brev af 18. marts 2016, »Vedrørende regulering af lønfejl for A«. Hun kom ned på kontoret, hvor den administrative medarbejder sad. Hun spurgte til det og fik at vide, at det var for, at A kunne få sine penge. Hun skimmede det og skrev under. Der gik under et minut. Papiret var skrevet på forhånd, og der var ikke nogen forhandling. Hun stillede ikke spørgsmålstegn ved, om hun skulle skrive under på noget, som hun mente Københavns Lærerforening havde kørt. Hun tror ikke, at skolelederen har haft en opfattelse af, at hun repræsenterede Københavns Lærerforening. Men skolelederen vil nok have haft en opfattelse af, at hun repræsenterede A.

*D* har forklaret, at hun har været lærer på X-skolen siden august 1995. Hun var med til ansættelsessamtalen, da A blev ansat i 2009. Det var første gang, at de havde børnehaveklasse på skolen. Til ansættelsessamtalen blev der talt om, hvad A havde lavet før. Da hun var blevet ansat, var de begge på skolelederens kontor. Hun kan huske, at A spurgte E om lønnen. Hun havde noget anciennitet fra tidligere, og om hun skulle finde papirerne fra tidligere ansættelser frem. Der blev svaret, at det ikke var nødvendigt, da det var et andet arbejde. Hun kan huske det, fordi hun undrede sig over, at man gik ned i løn, hvis man flyttede arbejde. Mødet foregik efter ansættelsen. A skulle se skolen, snakke med vidnet og der skulle tales om det praktiske. Tillidsrepræsentant dengang har nok været L. Der har været nogle stykker. Det kan også have været K. Der var på skolen ikke problemer med at gå til tillidsrepræsentanten og der var også et fint samarbejde med ledelsen.

*E* har forklaret, at hun har været skoleleder på X-skolen til januar 2014. Hun havde også, før hun blev ansat på X-skolen, været skoleleder. Hun ansatte A. Hun havde som skoleleder ansvar for den daglig drift, skolens retning og profil, og også for ansættelser. Der var altid et ansættelsesudvalg og altid opslag. I ansættelsesudvalget var der repræsentanter for ledelsen, bestyrelsen og lærergruppen og som regel også en, den pågældende forventedes at skulle arbejde sammen med. Der var altid en tillidsrepræsentant med eller en person fra lærergruppen, som tillidsrepræsentanten havde udpeget. Hun tror, at tillidsrepræsentanten var til stede, da A blev ansat, men hun kan ikke huske det konkret.

Der skal tages referencer på den, ansættelsesudvalget har peget på. Det bliver gjort, og derefter skal der ske lønmæssig indplacering. Hun mener, at det var den administrative leder G, der foretog indplaceringen af A. G var ansat til aflastning af ledelsen på den del af arbejdet. Men, det var selvfølgelig stadigvæk vidnet, der havde ansvaret for ansættelsen. Hun kan intet huske om A's indplacering. G fik ryddet godt op i de ansættelsesretlige fejl, men det var ikke sådan, at der bestod et

**1965**

stort kaos. Der er mange regler i Københavns Kommune om lønmæssig indplacering. De var opmærksomme på, at det var vigtigt. Det var også G, der sad med skolens økonomi, men det var vidnet, der havde ansvaret. Folk skulle have det, de skulle have, på den billigste måde. Ingen skulle snydes. Vidnet kan ikke huske, at A spurgte om betydningen af hendes tidligere ansættelser.

Hun tror, at hun ville have svaret, at G skulle se på det. Men hun kan ikke huske det. Nogle gange sker der ting. Hun synes, det er mærkeligt, hvis hun helt blankt har afvist, at tidligere ansættelser var af betydning.

Samarbejdet med tillidsrepræsentanten var fint. Der var ugentlige møder. Hun fik ikke klager fra tillidsrepræsentanterne over, at de ikke har følt sig orienterede. Hvis der var lønspørgsmål, ville det være naturligt at spørge hende eller G. Det kunne sagtens ske, at det var hende, der blev spurgt, men hun ville normalt melde pas og henvise til den administrative leder.

Hun havde taget referencer på A og læst hendes cv. Hun blev ansat, fordi hun havde en god og bred erfaring.

*F* har forklaret, at han er teamleder i Koncernservice med ansvar for sager af denne type. Fra juni 2013 har han været teamleder for forhandlerteamet. De er 14 i teamet, der vejleder ledere i kommunen om løn, og nogle gange forhandler han selv sager med de faglige organisationer. Det er deres team, der ringes til, hvis der er spørgsmål om løn, eller til Center for løn og personale. Er det lidt mere kompliceret, vil det være hans folk, der bliver ringet til.

Rekrutteringsprocessen af en børnehaveleder vil i dag være således, at ansættelsesproceduren foregår på skolen, og Koncernservice varetager ansættelseskontrakten.

Tidligere var det Børne- og Ungdomsforvaltningen, der kørte den administrative proces og fremsendte til Kommunedata, og Kommunedata der sendte til den faglige organisation. Aftalen med Kommunedata var, at indplacering skete i overensstemmelse med det indberettede. Han ved ikke præcis, hvad proceduren var i Børne- og Ungdomsforvaltningen i 2009. Men han har forstået, at det var almindelig praksis at sende ansættelsesaftalen til organisationen, og at man ikke forventede nogen godkendelse. Han ved ikke, hvorfor lønaftalen er fremsendt til Københavns Lærerforening i juni 2010. Han er ikke bekendt med, at der er fremsendt noget tidligere.

Da de fremsendte en ny lønaftale for A til Københavns Lærerforening i juni 2015, fik de et svar. De bad om en godkendelse og de modtog en godkendelse med forbehold. Han har efterfølgende haft en kontakt til Københavns Lærerforening, hvor det har været drøftet, om det er rimeligt at godkende med et generelt forbehold.

Tillidsrepræsentanten vil normalt være involveret i en ansættelsesproces, men han kan ikke sige med sikkerhed, om en lønaftale bliver forelagt tillidsrepræsentanten. Han vil mene, at den normale praksis er, at det er den faglige organisation, der skal forelægge aftalen for tillidsrepræsentanten.

Det er helt sædvanligt, at der indgår et element af noget erfaringsbaseret i en lønaftale. Det er ikke muligt at indplacere på baggrund af et cv. Erfaringen skal dokumenteres af den ansatte. Det er helt normal procedure, hvis der vedlægges cv, at forvaltningen tager kontakt til medarbejderen. Hvis der ikke er

Copyright © 2020 Karnov Group Denmark A/S

dokumentation for tidligere ansættelser, indplaceres man på ansættelsestidspunktet. Han kan se, at det er beskrevet i ansættelsesbrevet, at der skal fremsendes ansættelsesbevis, dokumentation for tidligere beskæftigelse etc. Den dokumentation er først fremkommet, efter sagen er startet. Der er administrative udfordringer i at indhente referencer fra tidligere ansættelser. I dag rykker man medarbejderen en enkelt gang. Han ved ikke, om man gjorde det i 2009.

En løn skal forhandles med den forhandlingsberettigede organisation ved nyansættelser. Arbejdsgiver giver et løntilbud, og et oplæg til lønaftale sendes til den faglige organisation. Det kunne godt ske, at Københavns Lærerforening ikke reagerede på det fremsendte. Tidligere var der en aftale om, hvad der skulle indgå og udmøntes, og derfor var det ikke forudsat, at man også modtog en godkendelse. Der har været forventning om, at der blev reageret, hvis der var noget galt. Mange organisationer reagerer ved at bede om en forhandling. Det er ikke usædvanligt i forbindelse med en ansættelse. Når der ikke er reageret, antager de, at der er enighed om lønnens sammensætning.

Han kan se, at der blev fremsendt en lønaftale i 2010 og en i 2013 samt noget om et engangstillæg. Der har ikke været nogen reaktioner i forbindelse med indplacering i anciennitet.

Foreholdt, at A, har forklaret, at hun af skolens ledelse fik at vide, at tidligere erfaring ikke havde betydning for lønnen i stillingen, har vidnet forklaret, at en lokal leder, der får et lønspørgsmål, hvor de er usikre, i dag vil ringe ind til Koncernservice. Medarbejderen har mulighed for at kontakte sin tillidsrepræsentant eller den faglige organisation.

Når Koncernservice får at vide, at der er sket fejl, vil de undersøge sagen nærmere. Hvis de er enige vil de rette fejlen op indenfor de lovmæssige rammer. De retter op fremadrettet og udbetaler også efterbetaling. Hvis det er en overenskomstmæssig fejl, vil de rette op fem år tilbage i henhold til forældelsesloven. Det er sjældent de går ind i egentlig vurdering af, om der bør ske efterbetaling for perioden forud for de fem år. Men er det et krav, de bliver mødt med af den faglige organisation, så går de nærmere ind i det. Hvis uoverensstemmelsen om lønanciennitet, f.eks. skyldes usikkerhed, om en

**1966**

erhvervet kompetence skal tælle fra, kan der være tale om, at de kun retter lønnen fremadrettet. Spørgsmål om lønanciennitet drøftes ikke altid med hovedorganisationen. Det kan også drøftes med tillidsrepræsentanten. De stiller ikke spørgsmål ved, om tillidsrepræsentanten har det nødvendige mandat.

Foreholdt brev af 18. marts 2016, »Vedrørende regulering af lønfejl for A«, vil han gå ud fra, at tillidsrepræsentanten har haft mandat til at lave aftalen. Det kan godt tænkes, at brevet er formuleret efter rådgivning fra Koncernservice.

Tillidsrepræsentanten har normalt mandat til at forhandle den lokale løndannelse. Hvis et spørgsmål er rejst fra den lokale organisation, retter de henvendelse til den lokale ledelse og tillidsrepræsentanten. Hvis der er en uenighedssag, tager de fat i Københavns Lærerforening. Hvis Københavns Lærerforening rejser sagen, så tager de kontakt til den lokale ledelse og derefter til Københavns Lærerforening.

*G* har forklaret, at hun var administrativ leder på X-skolen fra januar 2008 til 1. august 2009. Hun stoppede umiddelbart efter A var ansat. Hun var leder af det teknisk/administrative personale. Hun udarbejdede budgetter og også lønblanketter. Hun er udlært i en bank og på handelshøjskolen. Hun har været tillidsrepræsentant for Dansk Journalistforbund på TV2. Det var helt nyt for hende at arbejde på en skole. Hvis hun selv ansatte en teknisk medarbejder eller en kontormedarbejder, holdt hun ansættelsessamtalen Når det

var andre, der skulle ansættes, var hun ikke med. Hun er ret sikker på, at tillidsrepræsentanten deltog. Hun udfyldte papirerne, som hun sendte til Børne og Ungdomsforvaltningen. Hun kan kun huske, at de skulle have en ny børnehaveklasse, eller at de skulle have en ekstra børnehaveklasselærer. Men det er hende, der har udfyldt papirerne vedrørende A. Hun har fået et eller andet ud om den ny børnehaveklasselærer, og så har hun nok kigget i nogle tabeller og konstateret, på hvilket løntrin en ny børnehaveklasselærer var. Det var hendes ansvar at sende det til forvaltningen.

Hvis der på skolen var tvivl om lønspørgsmål, kunne man gå til hende med det, men også til andre. Hun har en enkelt gang brugt meget lang tid på gennemgang af lønsedler for at undersøge, om lærerne fik de korrekte tillæg. De skulle have det, de var berettigede til. Hun husker ikke, at tillidsrepræsentanten klagede over, at tingene ikke var i orden. Hun husker, at den daværende tillidsrepræsentant, L, og E havde møder regelmæssigt, hvor der blev talt om stort og småt. Det kunne være hende eller E, der orienterede tillidsrepræsentanten om en lønaftale. Hun er sikker på, at nogen har gjort det, fordi hun som tidligere tillidsrepræsentant var meget opmærksom på, at det skulle ske. Enten har hun selv givet besked eller også har hun fået at vide, at tillidsrepræsentanten var orienteret.

### Parternes synspunkter

*Danmarks Lærerforening som mandatar for A* har i påstandsdokumentet anført følgende:

»…

ANBRINGENDER:

Denne sag vedrører det ansættelsesretlige spørgsmål om, hvorvidt A's krav på efterbetaling af for lidt udbetalt løn er forældet.

Der er enighed mellem parterne om, at A ved sin ansættelse på X-skolen blev indplaceret på forkert løntrin, og derfor fik mindre i løn, end hun var berettiget til.

Tvisten angår således udelukkende spørgsmålet om, hvorvidt den del af efterbetalingskravet der vedrører perioden fra A's ansættelse på X-skolen den 1. august 2009 og frem til og med lønnen for marts 2011 er forældet eller ej.

Det gøres overordnet gældende, at A og hendes faglige organisation var ubekendt med kravet frem til den 4. marts 2016, hvor Københavns Lærerforening opdagede fejlen ved et løntjek på X-skolen, og at forældelsen derfor var suspenderet frem til denne dato, jf. forældelseslovens § 3, stk. 2.

*Ansættelsen*

Det gøres gældende, at A i forbindelse med, at hun blev ansat på X-skolen i 2009 spurgte daværende skoleleder E om, hvorvidt erfaring fra tidligere ansættelse som pædagog skulle medregnes i hendes anciennitet ved indplacering på løntrin i henhold til overenskomsten, og at den daværende skoleleder hertil oplyste, at tidligere anciennitet som pædagog ikke skulle medregnes ved løntrinsindplacering i henhold til overenskomsten.

På baggrund af skolelederens oplysning havde A tillid til, at anciennitetsdatoen var korrekt, hvorfor hun ingen anledning havde til at søge yderligere rådgivning herom hos hverken tillidsrepræsentant eller Københavns Lærerforening.

Den omstændighed, at A hver måned modtog en lønseddel, hvoraf det fremgik, at hendes anciennitetsdato var fastsat til 1. august 2009 gav hende heller ikke anledning til at undersøge forholdet nærmere, idet hun netop havde fået oplyst af skolelederen, at anciennitetsdatoen skulle fastsættes uden hensyntagen til hendes beskæftigelse som pædagog forud for ansættelsen på X-skolen.

A forsynede Københavns Kommune med alle relevante oplysninger i forbindelse med sin ansættelse i 2009.

A var derfor ubekendt med, at hun var blevet forkert indplaceret, og dermed ikke fik den løn, som hun var berettiget til.

Københavns Lærerforening modtog i forbindelse med ansættelsen ikke nogen kopi af lønaftalen, hvorfor Københavns Lærerforening hverken vidste eller burde vide, at A var forkert indplaceret.

**1967**

*Københavns Lærerforenings viden om A's tidligere beskæftigelse som pædagog*

Det gøres gældende, at Københavns Lærerforening ikke havde eller burde have haft kendskab til A's tidligere beskæftigelse som pædagog alene i kraft af A's medlemskab af Københavns Lærerforening, idet Københavns Lærerforening ikke organiserer pædagoger ansat på anden måde end som børnehaveklasseledere. A's tidligere erhvervserfaring bestod ikke i arbejde som børnehaveklasseleder, og hun var derfor ikke medlem af Københavns Lærerforeningen forud for ansættelsen på X-skolen.

Københavns Lærerforening havde derfor ikke nogen viden om hendes tidligere beskæftigelse.

*Fremsendelse af lønaftale i juni 2010*

Det gøres gældende, at det ikke afbrød suspension af forældelsen, at Københavns Kommune i juni 2010 fremsendte A's lønaftale til Københavns Lærerforening, idet der ikke var vedlagt faktuelle oplysninger om A's tidligere anciennitet. Københavns Lærerforening havde derfor ingen mulighed for at opdage, at A var forkert indplaceret.

Baggrunden for Københavns Kommunes fremsendelse af A's lønaftale den 1. juni 2010 var, at forhåndsaftalen mellem Københavns Kommune og Københavns Lærerforening var blevet ændret, idet børnehaveklasseledernes kvalifikationstillæg steg fra kr. 6.000 til kr. 9.000. Fremsendelse af lønaftalen var således en orientering om, at A's tillæg steg som følge af det allerede aftalte i forhåndsaftalen. Fremsendelse af lønaftalen gav derfor ikke anledning til, at Københavns Lærerforening undersøgte anciennitetsdatoen.

*Fremsendelse af lønaftalen i juni 2015*

Det gøres gældende, at Københavns Kommunes fremsendelse af A's lønaftale til Københavns Lærerforening den 29. juni 2015 heller ikke medførte, at hverken A eller Københavns Lærerforening vidste eller burde vide, at A var forkert indplaceret, idet Københavns Kommune heller ikke ved fremsendelse af den lønaftale oplyste, at A havde anciennitet som pædagog forud for ansættelsen på X-skolen.

Det gøres endvidere gældende, at selvom det lægges til grund - hvilket bestrides - at fremsendelsen af lønaftalen den 29. juni 2015 afbrød suspensionen, er A's krav på efterbetaling af løn i perioden fra ansættelsens start den 1. august 2009 ikke forældet, idet den omstændighed, at Københavns Lærerforening i juni 2015 vidste eller burde vide, at A var forkert indplaceret, vil medføre, at den 5-årige forældelsesfrist skal regnes fra den 29. juni 2015, hvorfor kravet endnu ikke er forældet.

Det gøres gældende, at suspensionen var gældende frem til Københavns Lærerforenings løntjek på X-skolen den 4. marts 2016.

*Tildeling af engangsbeløb i 2013 samt 2015*

Det gøres gældende, at der heller ikke i forbindelse i forbindelse med Københavns Kommunes tildeling af engangsbeløb til A's i 2013 og 2015 var omstændigheder, der medførte, at hverken A's eller hendes faglige organisation burde være blevet opmærksomme på, at hun var forkert indplaceret.

Det gøres derudover gældende, at tildeling af engangsbeløb i 2015 ikke blev godkendt korrekt, idet tildeling af engangsbeløbet ikke blev godkendt af Københavns Lærerforening, men af den lokale tillidsrepræsentant. Forhandlingsretten vedrørende tildeling af engangsbeløb til ansatte under overenskomsten tilkommer ikke den lokale tillidsrepræsentant, men derimod Københavns Lærerforening.

Tildelingen af de to engangsbeløb er dog ikke relevant for sagen, idet A's anciennitetsdato ikke var en del af grundlaget for tildeling af engangsbeløbene og derfor indgik anciennitet heller ikke i godkendelse af tildelingerne.

*Tillidsrepræsentantens godkendelse af for lidt udbetalt løn*

Det gøres gældende, den lokale tillidsrepræsentants underskrift på meddelelsen om udbetaling af for lidt udbetalt løn til A af 18. marts 2016 ikke udgjorde en aftale eller et tilsagn om, at A fraskrev sig retten til at rejse krav om efterbetaling af løn for en periode, der lå mere end 5 år tilbage. Der er ikke støtte for en sådan forståelse i ordlyden af meddelelsen om udbetaling.

Det er endvidere ikke den lokale tillidsrepræsentant, der har forhandlingskompetencen i en tvist om efterbetaling af for lidt udbetalt løn, idet den tillidsrepræsentant i forhold til løn alene har forhandlingskompetence vedrørende puljen til teamkoordinatorer og faglige didaktiske vejledere, jf. forhåndsaftalens § 5, og de lokalt udlagte midler, jf. forhåndsaftalens § 6.

Hertil kommer, at Københavns Kommune ikke har fremlagt skrivelsen under de forhandlinger, der har været mellem parterne i nærværende sag, hvilket forekommer ejendommeligt, hvis det reelt er Københavns Kommune synspunkt, at sagen blev fuldt og endeligt afsluttet ved tillidsrepræsentantens underskrift på skrivelsen af 18. marts 2016. Københavns Lærerforeningen har således ikke modtaget skrivelsen før den blev fremlagt sammen med svarskriftet i nærværende sag.

…«

*KØBENHAVNS KOMMUNE* har i påstandsdokumentet anført følgende:

»…

ANBRINGENDER:

Til støtte for den nedlagte frifindelsespåstand gøres det overordnet gældende, at A's efterbetalingskrav for tiden før 1. april 2011 er forældet, dels fordi der ikke er sket suspension af forældelsen i medfør af

**1968**

forældelseslovens§ 3, stk. 2, dels fordi den lokale tillidsrepræsentant B på A's vegne accepterede, at A's løn alene skulle efterreguleres fra perioden 31. marts 2016 og fem år tilbage.

Til støtte for det forhold, at forældelsesfristen ikke har været suspenderet, gøres det gældende, at A ved sin fagforening havde særlig anledning til at kontrollere, at hun ved ansættelsen på X-skolen den 1. august 2009, blev indplaceret på det korrekte løntrin.

A blev i sit ansættelsesbrev oplyst om, hvilken overenskomst hun var omfattet af, samt hvordan hun kunne få fat i denne. Herudover modtog A hver måned en lønseddel, hvoraf fremgik, at hendes anciennitet var beregnet fra den 1. august 2009, hvilket burde have givet anledning til yderligere undersøgelse. Det er i den forbindelse en skærpende omstændighed, at A var medlem af en faglig organisation, der kunne have været hende behjælpelig med at opklare ethvert spørgsmål vedrørende anciennitet.

Det gøres gældende, at A var nærmest til at bære risikoen for, at hun ved sin ansættelse på X-skolen ikke blev indplaceret på det korrekte løntrin, idet hun ikke - som ellers forudsat sit ansættelsesbrev - indleverede nogen form for dokumentation for sin tidligere erfaring som pædagog, ligesom hun trods alle midler til rådighed herfor ikke fulgte op på spørgsmålet om anciennitet, der med den viden vi har i dag, kan lægges til grund at have fyldt meget hos hende.

I forlængelse af ovenstående gøres det gældende, at Københavns Lærerforening på A's vegne ligeledes må bære risikoen for ikke at have opdaget, at A blev indplaceret på et forkert løntrin, idet den lokale tillidsrepræsentant havde klar anledning til at konstatere dette, da han modtog orientering om hendes ansættelse.

Det bemærkes i den forbindelse, at Københavns Lærerforening som A's faglige organisation havde den primære interesse i, at A's erfaring som pædagog blev indregnet i hendes anciennitet, og at Københavns Kommune havde - og i øvrigt fortsat har - en forventning om, at den lokale tillidsrepræsentant selv tager kontakt til kommende medarbejdere, når foreningen orienteres om forestående ansættelser.

Det gøres i øvrigt gældende, at det er A, der har bevisbyrden for, at hun ved sin ansættelse på X-skolen af daværende skoleleder E fik oplyst, at hun ikke kunne medregne tidligere pædagogisk erfaring i sin anciennitet som børnehaveklasseleder.

Københavns Kommune bemærker i den forbindelse, at det efter kommunens opfattelse er højst usædvanligt, at en lokal leder under Børne- og Ungdomsforvaltningens område skulle tage så markant stilling til et spørgsmål om, hvilke elementer der indgår i en anciennitetsopgørelse. Sådanne spørgsmål vil i praksis altid blive henvist til de centraltansatte personalekonsulenter i Koncernservice (tidligere Børne- og Ungdomsforvaltningen).

I forhold til den reguleringsaftale, som blev indgået den 18. marts 2016 mellem Københavns Kommune og den lokale tillidsrepræsentant B, gøres det gældende, at denne må anses for bindende mellem parterne, og at den må forstås således, at A ved sin lokale tillidsrepræsentant fraskrev sig retten til at rejse krav om efterbetaling af for lidt udbetalt løn for perioden forud for 1. april 2011.

Til støtte for aftalens bindende virkning gøres det gældende, at tillidsrepræsentanten ved indgåelsen af denne handlede inden for sin (stillings)fuldmagts grænser, og at Københavns Kommune var i god tro herom. Det bemærkes i den forbindelse, at der er identifikation mellem A og dennes forhandlingsberettigede faglige organisation, som ved indgåelsen af aftalen blev repræsenteret af den lokale tillidsrepræsentant.

Dette understøttes af, at aftalen vedrørte overenskomstmæssige forhold, og at det i MED-rammeaftalens § 11, stk. 2 er forudsat, at tillidsrepræsentanten kan forhandle og indgå aftaler for de medarbejdere, den pågældende repræsenterer, i det omfang tillidsrepræsentanten har fået kompetencen hertil, jf. også MED-håndbogens vejledning herom. Der var i dagældende overenskomst heller ikke - som i visse andre overenskomster - indsat krav om, at organisationen generelt skulle godkende aftaler indgået af tillidsrepræsentanten.

At den lokale tillidsrepræsentant havde kompetence til at indgå aftalen af 18. marts understøttes endvidere af det forhold, 1) at Københavns Lærerforening selv foretog og påberåbte sig løntjekket på X-skolen over for Københavns Kommune, og 2) at Københavns Lærerforening herefter lod tillidsrepræsentanten forhandle og afslutte sagen.

Københavns Lærerforening gav med denne handlemåde kommunen en berettiget forventning om, at tillidsrepræsentanten på foreningens og dermed A's vegne var bemyndiget til at indgå aftale om efterregulering. Det forhold, at der i aftalen ikke blev indsat et forbehold om yderligere forfølgelse af sagen, gav tillige Københavns Kommune en berettiget forventning om, at der ikke ville blive rejst yderligere krav om betaling af for lidt udbetalt løn for tiden før 1. april 2011.

Det gøres på den baggrund gældende, at Københavns Kommune således i det hele har handlet i tillid til, at den lokale tillidsrepræsentant på Københavns Lærerforenings vegne havde mandat til at opgøre A's krav på efterbetaling af løn, og at parternes aftale måtte betragtes som endelig.

Såfremt retten mod forventning måtte finde, at anciennitetsspørgsmålet ikke allerede ved A's ansættelse burde have være undersøgt af A og hendes fagforening, gøres det gældende, at suspensionen blev afbrudt ved

**1969**

Københavns Kommunes fremsendelse af lønaftalen for A til Københavns Lærerforening den 1. juni 2010, idet Københavns Lærerforening fra dette tidspunkt havde særlig anledning til at kontrollere, hvorvidt hendes løn var beregnet korrekt. Københavns Lærerforening kan således ikke have befundet sig i en faktisk vildfarelse uanset, om Københavns Lærerforening konkret undersøgte forholdene eller ej.

Til støtte herfor bemærkes, at selvom parterne er enige om, at det mellem Københavns Kommune og Københavns Lærerforening i 2010 var aftalt, at Københavns Lærerforening alene skulle have lønaftaler til orientering, har det altid været kommunens klare opfattelse, at dette samtidig var foreningens mulighed for netop at kontrollere den af kommunen fastlagte løn.

Københavns Kommune har således altid forudsat, at foreningen ville orientere sig i fremsendte aftaler og på baggrund af den viden, som foreningen havde eller burde kunne få fra det enkelte medlem, ville reagere, såfremt der fra fagforeningens side blev konstateret fejl eller mangler i den af kommunen fastsatte løn.

Det er således kommunens opfattelse, at orienteringen til Københavns Lærerforening efter fast praksis altid har medvirket til at sikre en korrekt lønindplacering for alle medarbejdere fra starten af en ansættelse.

Da Københavns Kommune både i 2010, 2013 og 2015 loyalt fremsendte og fik godkendt lønaftaler samt ændringer hertil for A af Københavns Lærerforening samt de lokale tillidsrepræsentanter kunne kommunen således med rette forvente og indrette sig efter, at A's løn var fastsat korrekt.

Efter det blev indført, at der skulle ske en godkendelse af lønaftaler fra Københavns Lærerforenings side, er det korrekt, at denne godkendelse oftest er sket med et forbehold for den lokale tillidsrepræsentants godkendelse af lønaftalen. Det er bl.a. også på den baggrund kommunens opfattelse, at lønforhandlingerne i praksis er et anliggende mellem den enkelte leder og den lokale tillidsrepræsentant.

Det forhold, at Københavns Lærerforening modtager mange lønaftaler, er for så vidt sagen uvedkommende, da foreningen selv tilrettelægger, hvordan man ønsker at håndtere godkendelses- og forhandlingsprocesser. Dette bør således ikke komme Københavns Kommune til skade.

For det tilfælde at retten skulle finde, at A's krav ikke er forældet, gøres det gældende, at suspensionsreglen i rentelovens § 3, stk. 3, eller dennes bestemmelses analogi må finde anvendelse i denne sag, således at A alene har krav på forrentning af tilgodehavende 30 dage efter, at Københavns Lærerforening på A's vegne rettede krav om efterbetaling af løn mod Københavns Kommune.

…«

…

### Rettens begrundelse og resultat

Af ansættelsesbrev af 30. juni 2009 fremgik, at den udbetalte løn ville blive reguleret fra ansættelsens start i overensstemmelse med den endelige lønaftale, og at den endelige lønaftale ville blive udleveret af »din leder« efter endt forhandling. Endvidere fremgik at A skulle aflevere dokumentation for tidligere uddannelse, tidligere erfaring, CV, samt arbejdsmarkedspensionsordning fra tidligere ansættelsesforhold »til din leder«.

A's leder var på daværende tidspunkt E, og retten finder det efter A og D's forklaringer bevist, at A spurgte, om hun skulle fremsende dokumentation for tidligere ansættelser, og at E svarede, at dette

var uden betydning. Endvidere lægges til grund, at E og daværende tillidsrepræsentant i forbindelse med deltagelse i ansættelsesudvalget vidste, at A havde adskillige års erfaring som pædagog ved ansættelsen.

På dette grundlag er spørgsmålet, om forældelsesfristen var suspenderet på grund af A's utilregnelige uvidenhed om sit krav, jf. forældelseslovens § 3, stk. 2, eller om hun burde have fået kendskab til kravet på et tidligere tidspunkt.

Det er lønmodtageren, der er i besiddelse af dokumentation for tidligere ansættelser og er nærmest til at oplyse herom. Det fremgik af A's ansættelsesaftale, at den endelige lønaftale kunne afhænge af en forhandling, og at der skulle fremsendes dokumentation for tidligere ansættelser. Retten finder, at det er almindeligt kendt, at tidligere erhvervserfaring kan have betydning for lønancienniteten i en ny stilling. A og D har da også forklaret, at de undrede sig over E's udmelding, men A slog sig efter sin forklaring til tåls med den. Under disse samlede omstændigheder finder retten, at A havde anledning til og mulighed for at undersøge forholdet nærmere ved henvendelse til tillidsrepræsentanten eller fagforeningen, og at hun derfor burde have fået kendskab til sit krav allerede i forbindelse med ansættelsen.

Københavns Kommune frifindes.

…

## Østre Landsrets dom

### Påstande

*Appellanten, Danmarks Lærerforening som mandatar for A,* har nedlagt påstand om, at indstævnte, Københavns Kommune, tilpligtes at betale 45.697,98 kr. med tillæg af sædvanlig procesrente af 2.258,55 kr. fra den 31. juli 2009, af 2.258,55 kr. fra den 31. august 2009, af 2.285,66 kr. fra den 30. september 2009, af 2.285,66 kr. fra den 31. oktober 2009, af 2.285,66 kr. fra den 30. november 2009, af 2.285,66 kr. fra den 31. december 2009, af 2.285,66 kr. fra den 31. januar 2010, af 2.285,66 kr. fra den 28. februar 2010, af 2.288,91 kr. fra den 31. marts 2010, af 2.288,91 kr. fra den 30. april

**1970**

2010, af 2.288,91 kr. fra den 31. maj 2010, af 2.288,91 kr. fra den 30. juni 2010, af 2.288,91 kr. fra den 31. juli 2010, af 2.288,91 kr. fra den 31. august 2010, af 2.288,91 kr. fra den 30. september 2010, af 2.288,91 kr. fra den 31. oktober 2010, af 2.288,91 kr. fra den 30. november 2010, af 2.288,91 kr. fra den 31. december 2010, af 2.288,91 kr. fra den 31. januar 2011, af 2.288,91 kr. fra den 28. februar 2011, alt til betaling sker.

*Københavns Kommune* har påstået dommen stadfæstet.

### Forklaringer

A har afgivet supplerende forklaring. J og M har endvidere afgivet forklaring.

*A* har supplerende forklaret, at det møde, hun havde på skolen med E og D, fandt sted før sommerferien 2009. Den daværende lokale tillidsrepræsentant, L, deltog ikke i mødet. Hun blev overrasket over, at hendes hidtidige beskæftigelse ikke indgik i beregningen af hendes anciennitet, men hun havde ikke tidligere arbejdet i skoleregi, hvorfor hun stolede på det, som E oplyste. E begrundede det med, at der var tale om en nyoprettet stilling. Hun overvejede slet ikke, hvorvidt det, som E oplyste, kunne være forkert.

Det er korrekt, at det fremgår af det ansættelsesbrev, som hun efterfølgende underskrev, at hun skulle indsende dokumentation for uddannelse, tidligere erfaring, CV samt arbejdsmarkedspensionsordning fra tidligere ansættelsesforhold. Dette fik hende ikke til at overveje, at hun skulle indsende denne dokumentation, da hun jo havde talt med E herom. I hendes tidligere ansættelser som pædagog var hun vant til, at forudgående erfaring kunne have en betydning, og det var derfor, at hun havde spurgt hertil. Som børnehaveleder havde hun ikke siddet med ansvaret for løn mv.

E var den leder, som hun skulle rette henvendelse til, hvis hun havde spørgsmål til sin løn.

Forud for at hun blev ansat ved X-skolen, var hun ansat som pædagog i en anden kommune. Hun husker ikke, hvordan hun fik indhentet den erklæring vedrørende dokumentation for ansættelse, som Eventyrhusene har afgivet den 5. april 2009.

Forud for arrangementet i marts 2016, hvor Københavns Lærerforening tilbød et løntjek, havde hun ingen mistanke om, at hun lønmæssigt kunne være indplaceret forkert. Under arrangementet havde J blandt andet uddybet, hvad der lå i »erfaringsdatoen«, hvilket fik hende til at studse. Hun bad derfor J om at se nærmere på hendes lønseddel.

*J* har forklaret, at hun siden marts 2008 har været faglig konsulent i Københavns Lærerforening, hvor hun beskæftiger sig med løn- og ansættelsesforhold. For A's ansættelsesforhold gjaldt der dels en central overenskomst mellem Lærernes Centralorganisation og KL. Herudover havde Københavns Kommune og Københavns Lærerforening indgået en forhåndsaftale om løn, hvori blandt andet tillæg til børnehaveklasseledere i forvejen var aftalt.

I 2009 fik Københavns Lærerforening ikke ansættelsesaftaler og lønaftaler tilsendt automatisk, og de deltog ikke i individuelle forhandlinger m.v. i forbindelse med ansættelser.

I 2010 steg A's kvalifikationstillæg, hvilket var baggrunden for, at hendes lønaftale blev sendt til Københavns Lærerforening. Det var helt normalt, at foreningen ikke meldte tilbage i sådanne sammenhænge. Hovedparten af børnehaveledere er bagudlønnet, men hvis man tidligere har været forudlønnet, bevarer man retten hertil. Den omstændighed, at A var forudlønnet, viser, at hun havde noget forudgående anciennitet.

I 2015 ønskede Københavns Kommune at ensarte proceduren for alle ansættelsomsråder. På deres område blev det derfor aftalt, at skolelederen skulle orientere den lokale tillidsrepræsentant, således at tillidsrepræsentanten havde mulighed for at se lønaftalen igennem. Når tillidsrepræsentanten havde foretaget denne gennemgang, skulle vedkommende sætte et flueben i kommunens interne lønsystem.

Hun forestod arrangementet omkring løntjek på X-skolen i marts 2016. Hun havde i den forbindelse gennemgået reglerne om erfaringsdato, der er et vigtigt område. Hun blev i den forbindelse kontaktet af A, der mente, at erfaringsdatoen på hendes lønseddel kunne være forkert. Der er forskellige erfaringsforløb, der spiller forskelligt ind i forhold til fastsættelsen af erfaringsdatoen.

Hun har ikke set brevet af 18. marts 2016 vedrørende lønregulering forud for denne retssag. Den lokale tillidsrepræsentant har ikke kompetence til at indgå aftaler om, at der skal gives afkald på anciennitet, da dette er forhandlet og fastlagt i den centrale overenskomst på området.

Københavns Lærerforening har enkelte gange fundet fejl i de lønaftaler, som de har fået indsendt. De kan ikke tjekke rigtigheden af erfaringsdatoen, da de ikke får andet materiale med. Det er derfor, de tager forbehold for gennemgang af lokal tillidsrepræsentant. De lokale tillidsrepræsentanter er uddannet i regelsættet herom. Hun har også været med til at rejse sager med fejl over for kommunen, hvis medlemmer har rettet henvendelse herom til foreningen.

*M* har forklaret, at hun er personalekonsulent i Københavns Kommune. Hun har været ansat i kommunen i næsten 40 år og i Børne- og Ungdomsforvaltningen siden 1996. Hun beskæftiger sig blandt andet med lønaftaler og indplaceringer. I marts 2009 havde

Københavns Kommune udliciteret lønadministrationen til KMD, og hun var i den forbindelse fulgt med til KMD. Skoler og institutioner skulle indberette lønaftaler

**1971**

direkte til KMD ved brug af elektroniske blanketter. Det var skolen, der i forbindelse med ansættelser modtog CV'ere og anden dokumentation. Et CV er ikke i sig selv tilstrækkeligt til at foretage en korrekt indplacering, da det kræver præcise datoer. Der var derfor normalt brug for, at kommunen modtog breve fra tidligere arbejdssteder, den pågældendes sidste lønseddel eller lignende. I sidste ende kunne man anvende oplysninger fra ATP til at foretage indplacering. Hvis ikke man modtog de nødvendige oplysninger, blev erfaringsdatoen sat til ansættelsesdatoen. Lønaftalen blev herefter sendt til den faglige organisation. Det var ikke usædvanligt, at den faglige organisation reagerede herpå. Hvis kommunen ikke hørte noget, gik man ud fra, at indplaceringen var korrekt. Hendes indtryk er, at der i få tilfælde er sket fejl i forbindelse med indplaceringer.

Hvis en medarbejder er forudlønnet, kan dette skyldes, at den pågældende i sin tidligere ansættelse har været forudlønnet. Hun vil også tro, at man kan aftale dette med sin leder. Hun ved ikke, hvad X-skolen gjorde i 2009 for at skaffe den nødvendige dokumentation.

**Anbringender**

Parterne har i det væsentlige gentaget og uddybet deres anbringender for byretten.

*A* har særlig anført, at hun hverken vidste eller burde have vidst, at hun blev indplaceret forkert på overenskomsten og derfor var ubekendt med sit krav frem til den 4. marts 2016, hvorfor forældelse er suspenderet frem til denne dato. Københavns Kommunes fremsendelse af lønaftaler i henholdsvis 2010 og 2015 medførte ikke, at hun eller hendes faglige organisation fik - eller burde have fået - kendskab til kravet. Det forhold, at X-skolens tillidsrepræsentant underskrev meddelelse om udbetaling af manglende løn for en del af perioden, medfører ikke, at hun er afskåret fra at rejse yderligere krav på efterbetaling af løn for perioden fra den 1. august 2009 til den 1. april 2011.

*Københavns Kommune* har heroverfor anført, at krav på efterbetaling af løn for perioden forud for den 1. april 2011 er forældet. Det bestrides, at A spurgte, om tidligere anciennitet havde betydning for hendes løn, herunder at hun blev oplyst om, at hendes tidligere erfaring ikke kunne medregnes i beregning af anciennitet som børnehaveklasseleder. A blev i sit ansættelsesbrev anmodet om at fremsende dokumentation for tidligere erfaring, ligesom hun fik oplyst, hvilken overenskomst hun blev ansat under, og hvor hun kunne finde denne. Det er en skærpende omstændighed, at hun var medlem af en faglig organisation, der kunne være behjælpelig med, hvilken løn hun havde krav på. X-skolens tillidsrepræsentant underskrev endvidere aftale med Københavns Kommune, hvorefter A er bundet af, at hendes løn alene skal reguleres fem år tilbage som sket.

**Landsrettens begrundelse og resultat**

Landsretten lægger ligesom byretten til grund, at A i forbindelse med sin ansættelse spurgte skolens leder, E, om hun skulle fremsende dokumentation for tidligere ansættelser, og at E svarede, at dette var uden betydning, desuagtet at E vidste, at A havde adskillige års erfaring som pædagog.

A undlod på denne baggrund at indsende den dokumentation for tidligere ansættelser, som var omtalt i ansættelsesbrevet af 30. juni 2009, og hun blev derved i forbindelse med ansættelsen pr. 1. august 2009 indplaceret på forkert løntrin og med en forkert erfaringsdato, hvilket førte til, at hun ikke fik udbetalt den fulde løn, som hun havde krav på.

Landsretten finder det på den baggrund godtgjort, at A var uvidende om, at hendes løn var beregnet forkert, og at dette kan karakteriseres som en faktisk vildfarelse, jf. forældelseslovens § 3, stk. 2. Spørgsmålet er herefter, om A burde have haft kendskab til, at hun ikke modtog korrekt løn på et tidligere tidspunkt end sket.

En arbejdsgiver har pligt til at beregne en medarbejders løn korrekt på baggrund af de oplysninger, den ansatte har givet. Da skolens ledelse var bekendt med A's tidligere erfaring, og da A havde fået besked på, at hun ikke behøvede at indsende dokumentation for tidligere ansættelser, finder landsretten, at hun med rimelig grund kunne forvente, at Københavns Kommune indplacerede hende korrekt. Selvom erfaringsdatoen fejlagtigt stod anført som den 1. august 2009 på henholdsvis ansættelsesbevis og lønseddel, finder landsretten ikke grundlag for at fastslå, at A havde en særlig pligt til at efterkontrollere, om lønnen var beregnet korrekt. Landsretten har herved tillige lagt vægt på, at A pr. ansættelsestidspunktet skiftede fagforening til Danmarks Lærerforening.

Landsretten finder herefter, at A ikke burde have vidst, at hun ikke fik udbetalt korrekt løn forud for løngennemgang den 14. marts 2016. Forældelse har derved været suspenderet, jf. forældelseslovens § 3, stk. 2, og lønkrav for perioden fra den 1. august 2009 til den 1. april 2011 er derfor ikke forældet.

Landsretten finder endvidere, at brevet af 18. marts 2018 underskrevet af X-skolens skoleleder og tillidsrepræsentant ikke udgør en bindende aftale for A, der afskærer hende fra yderligere lønkrav.

Landsretten tager herefter A's påstand til følge.

…

Copyright © 2020 Karnov Group Denmark A/S