# LIONBRIDGE

STATE OF NEW YORK )
)
) ss
)
COUNTY OF NEW YORK )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached pension plan document.

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me this 31 day of May, 2022.

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified in New York County
My Commission Expires 09-23-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

## 3 THE PENSION PLAN WAS THE LEGAL OWNER OF THE STOCKS ACCORDING TO CIVIL LAW AND IN TERMS OF TAX LIABILITY

### 3.1 The pension plan was the owner of the stocks according to civil law

As a starting point, it applies in principle that tax law is governed by civil law. This also applies in relation to the issue of acquiring ownership rights to stocks.

It is a basic law of obligations principle in Danish law that ownership of a given asset is obtained when a final and binding agreement has been entered into between the parties, which is legally valid. This principle also applies to the acquisition of stocks.

Ownership is acquired, regardless of whether the buyer defaults on the obligation to pay the purchase price. For the same reason, there are rules that stipulate that the seller can subsequently cancel the sale if no payment is made of the agreed purchase price, unless an insignificant amount only needs to be paid. These rules on the subsequent cancellation of a sale if the buyer does not pay the purchase price clearly illustrate that payment of the purchase price is not a precondition for the transfer of ownership rights. In that case, rules on the subsequent cancellation of the transaction would not be necessary in cases where the buyer does not pay the agreed purchase price.

As the payment of the purchase price is not a condition for acquiring ownership, stocks (in the settlement process called settlement) are delivered only when the payment is made (according to the principle "Payment versus Delivery" - DvP).

The consequence is hereby that:

- <u>Settlement</u> of a stock trade that is done with the clearing and settlement agent and is not a prerequisite for acquiring ownership of a stock.

- Documentation of a <u>flow of cash</u> from the buyer to the seller is not documentation that a buyer has acquired ownership of a Danish stock.

- Documentation of the <u>transfer</u> of a stock from the seller's to the <u>buyer's securities account</u> is not documentation that a buyer has acquired ownership of a Danish stock.

- The buyer of a stock is the owner, even <u>before the stocks are registered</u> in their securities account.

- If a stock is sold so shortly before the dividend date that the stocks have not yet been registered in the buyer's securities account, the dividend will be paid to the wrong party via VP Securities and the underlying subcustodians. On this basis, § 19, Paragraph 1 of the Danish Sale of Goods Act declares the buyer of a stock entitled to receive the dividend (and thus to reimbursement).

Accordingly, the comments on § 23 of the Capital Gains Tax Act (L78 of 16 November 2005, cf. Appendix 12) also maintain that:

> *"The decisive factor in determining the date of the transfer is when there is a final and binding agreement on the transfer. For stocks traded on the stock exchange, the date of the stock exchange note (the trading date) will be used as the basis.*
>
> *In addition, the determination of the time of acquisition may be important, for example in connection with new legislation. Here too, it is decisive when there is a final and binding agreement on the acquisition. For stocks traded on the stock exchange, the date of the stock exchange note (the trading date) will be used as the basis".*

The same is stated in the Legal Guide, section C.B.2.1.6.1.

The trading date for a listed stock is therefore the time when the purchase and sale orders "match". This matching of purchase and sale orders (which takes place through an automated "hand shake" at modern automated trading facilities) is referred to as "the execution of the trade".

The Danish Tax Council also leaves no doubt that ownership under civil law is acquired on the trading date, which is not exactly the settlement date, since it states in the decision of March 20, 2007 (SKM2008.831.SR) that the trading date is after the issuance of an order for the purchase of stocks, but before the settlement of the transaction:

> *"An order cannot be equated with a purchase […]*
>
> *[…] it is the trading day that must be used as the basis for determining the time of purchase or sale of stock. The value date is therefore not a decisive factor. […] This applies regardless of whether the value date is 01/04/2006 and regardless of the fact that the shares were therefore not included in the inquirer's securities account as of 12/31/2005) "*

On the one hand, it is therefore clear that a purchase order is not enough to become the owner of a stock. On the other hand, it is similarly clear that the purchase does not yet have to be settled by posting to the buyer's securities

account. Payment for the stocks is therefore also not necessary to become the owner of the stocks, as the purchase price for the stocks must first be paid upon delivery (delivery versus payment), cf. § 72 of the Danish Securities Trading Act/§ 188 of the Capital Markets Act, i.e., by posting the stocks to the buyer's securities account.

In the present case, the pension plan has placed a purchase order with its brokers for the purchase of stocks. These orders were matched with sales orders coming from other brokers. This matching is the purchase agreement itself, which is final and binding. The payment and registration of the stocks, confirming that the agreement was final and binding, took place three to four days later.

In the decision of the case, it can therefore be assumed that the pension plan was the owner of the stocks in question in the cases, under civil law.

From this ownership under civil law also follows legal taxable ownership, if there are no exemptions in place developed by legal practice.

In particular in connection with stock lending, legal practice has maintained that the borrower becomes the owner of the stock according to civil law, but not the legal owner of the stock under tax law. The lender continues to be the owner of the stock for tax purposes, until the stock is sold by the borrower to a third party.

On the date of the dividend, the pension plan had not lent the stock. The lending did not take place until three to four days later. Whether the borrower subsequently lent the stocks out, kept them or resold them to a third party, the pension plan cannot know. The pension plan therefore remained the legal owner of the stocks for tax purposes, even though stock lending followed three or four days later.

The fact that the forward contract was entered into on the same day as the stocks were purchased also does not mean that the pension plan lost the fiscal ownership of the stocks.

## 3 PENSIONSPLANEN BLEV DEN CIVILRETLIGT OG SKATTEMÆSSIGT RETMÆSSIGE EJER AF AKTIERNE

### 3.1 Pensionsplanen blev den civilretlige ejer af aktierne

Som udgangspunkt gælder principielt, at skatteretten styres af civilretten. Dette gælder tillige i forhold til spørgsmålet om opnåelse af ejendomsret til aktier.

Det er et grundlæggende obligationsretligt princip i dansk ret, at ejerskab til et givent aktiv opnås, når der er indgået en endelig og bindende aftale mellem parterne, som er juridisk gyldig. Dette princip gælder også for erhvervelse af aktier.

Ejerskabet erhverves, uanset om køberen måtte misligholde forpligtelsen til at betale købesummen. Af samme grund findes der regler om, at sælger efterfølgende kan hæve salget, hvis der ikke sker betaling af den aftalte købesum, medmindre der alene mangler at blive betalt et uvæsentligt beløb. Disse regler om efterfølgende ophævelse af et salg, hvis ikke køber betaler købesummen, illustrerer med al tydelighed, at betaling af købesummen ikke er en forudsætning for ejendomsrettens overgang. I givet fald ville det ikke være nødvendigt med regler om efterfølgende ophævelse af handlen, i de tilfælde hvor køber ikke betaler den aftalte købesum.

Da betalingen af købesummen ikke er en betingelse for at erhverve ejerskab, leveres aktier (i afviklingsprocessen kaldet settlement), først når betalingen sker (i henhold til princippet "Payment versus Delivery" – DvP).

Konsekvensen heraf er, at:

- Settlement af en aktiehandel, som sker hos clearing- og settlementagenten, er ikke en forudsætning for at erhverve ejerskab af en aktie.

- Dokumentation af en pengestrøm fra køber til sælger er ikke dokumentation for, at en køber har erhvervet ejerskab til en dansk aktie.

- Dokumentation for overdragelse af en aktie fra sælgers til købers depot er ikke dokumentation for, at en køber har erhvervet ejerskab til en dansk aktie.

- Køberen af en aktie er ejer, allerede inden aktien registreres i hans depot.

- Sælges en aktie, så kort inden udbyttedatoen at aktien endnu ikke er registreret i køberens depot, bliver udbyttet udbetalt til den forkerte via VP Securities og de underliggende subcustodians. Det er med baggrund heri, at købelovens § 19, stk. 1, erklærer køberen af en aktie berettiget til modtagelsen af udbyttet (og dermed til refusion).

I overensstemmelse hermed fastholder bemærkningerne til aktieavancebeskatningslovens § 23 (L78 af den 16. november 2005, jf. bilag 12) således også:

> *"Det afgørende for fastlæggelse af afståelsestidspunktet er, hvornår der foreligger en endelig og bindende aftale om afståelsen. For aktier, der er handlet på børsen, vil det være børsnotaens dato (handelsdatoen) der lægges til grund.*
>
> *Derudover kan fastlæggelsen af erhvervelsestidspunktet have en betydning, f.eks i forbindelse med ny lovgivning. Også her er det afgørende, hvornår der foreligger en endelig og bindende aftale om erhvervelsen. For aktier, der er handlet på børsen, vil det være børsnotaens dato (handelsdatoen), der lægges til grund".*

Tilsvarende er anført i Den juridiske vejledning, afsnit C.B.2.1.6.1.

Handelsdatoen for en børsnoteret aktie er således det tidspunkt, hvor købs- og salgsordre "matches". Denne matching af købs- og salgsordre – der sker ved et automatiseret "hand shake" på moderne automatiserede handelsfaciliteter – betegnes som "gennemførelsen af handlen".

Også Skatterådet lader ingen tvivl om, at det civilretlige ejerskab erhverves på handelsdatoen, som netop ikke er afviklingsdatoen, idet det i afgørelsen af den 20. marts 2007 (SKM2008.831.SR) fastholdes, at handelsdatoen ligger efter afgivelsen af en ordre på køb af aktier, men før afviklingen af transaktionen:

> *"En bestilling kan ikke sidestilles med et køb […]*
>
> *[…] det er handelsdatoen, der skal lægges til grund ved fastsættelsen tidspunktet, for køb eller salg af aktier. Valørdatoen er således ikke afgørende. […] Det gælder, uanset at valørdatoen først er den 4.1.2006 og uanset at aktierne derfor ikke var med i spørgerens depot pr 31.12.2005)"*

Det er dermed på den ene side klart, at en købsordre ikke er nok til at blive ejer af en aktie. På den anden side er det på samme måde klart, at købet endnu ikke behøver at være afviklet ved bogføring på køberens depotkonto. Betaling af aktierne

er derfor heller ikke nødvendig for at blive ejer af aktierne, idet købsprisen for aktierne først skal betales ved levering (delivery versus payment), jf. værdipapirhandelslovens § 72/kapitalmarkedslovens § 188, dvs. ved bogføring af aktierne på køberens depotkonto.

Pensionsplanen har i den foreliggende sag afgivet en købsordre til sine brokere om køb af aktier. Disse ordrer blev matchet med salgsordrer, der kom fra andre brokere. Denne matching er selve købsaftalen, der er endelig og bindende. Betalingen og registreringen af aktierne, der bekræfter, at aftalen var endelig og bindende, skete tre til fire dage senere.

Det kan ved sagens afgørelse således lægges til grund, at pensionsplanen var civilretlige ejere af de i sagerne omhandlede aktier.

Af dette civilretlige ejerskab følger ligeledes skattemæssigt retmæssigt ejerskab, såfremt der ikke foreligger en af de af retspraksis udviklede undtagelser.

Retspraksis har især i forbindelse med aktielån fastholdt, at aktielåntager bliver den civilretlige ejer af aktien, men ikke den skatteretligt retmæssige ejer af aktien. Aktielångiver fortsætter med at være den skattemæssigt retmæssige ejer af aktien, helt indtil aktien sælges af aktielåntager til en tredjemand.

På udbyttedatoen havde pensionsplanen ikke lånt aktierne ud. Udlånet skete først tre til fire dage senere. Om aktielåntager efterfølgende lånte aktierne ud, beholdt dem eller solgte dem videre til en tredjemand, kan pensionsplanen ikke vide. Pensionsplanen blev derfor ved med at være den skattemæssigt retmæssige ejer af aktierne, selvom der tre-fire dage senere fulgte et aktieudlån.

At forwardkontrakten blev indgået, samme dag som aktierne blev købt, medfører ligeledes ikke, at pensionsplanen mistede det skattemæssigt retmæssige ejerskab til aktierne.