# LIONBRIDGE

STATE OF NEW YORK      )
                               )
                               )     ss
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Danish into English of the attached document from Lundgrens Law

Firm, dated July 16, 2019. I affirm that the linguist responsible for producing this translation is

fluent in both the Danish and English languages.

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me

this 6th day of June , 20 22 .

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

# L U N D G R E N S

The Danish Tax Appeals Agency
Ved Vesterport 6, 6th Floor
1612 Copenhagen W

jak@lundgrens.dk
Tel: 22474375
Case No. 64710-13
**July 16, 2019**

**REF. NO. 19-0040014 – RJM CAPITAL LLC SOLO 401(K) PLAN**

On behalf of our client, RJM Capital Pension Plan (RJM or appellant), we hereby appeal the February 7, 2019, decision of the Danish Tax Agency. The decision is attached as Appendix 1.

It is our submission to the Danish Tax Appeals Agency:

| 1. | CLAIMS |
| --- | --- |

Principal claims

That the decision of the Danish Tax Agency of February 07, 2019, be declared null and void with regard to the overturning of the Danish Tax Agency's decision concerning the reimbursement of DKK 26,866,831 submitted in 2013.

That the Danish Tax Agency's decision of February 07, 2019, be amended with regard to the overturning of the Danish Tax Agency's decisions taken in 2014, such that its previous decisions taken in 2014 on the reimbursement of dividend tax to the appellant totaling DKK 32,620,514 are confirmed.

Secondary claims

That the Danish Tax Agency's decision of February 07, 2019, be amended such that the Danish Tax Agency's previous decisions on the reimbursement of dividend tax to the appellant totaling DKK 59,487,345 are confirmed.

LUNDGRENS ADVOKATPARTNERSELSKAB
TUBORG BOULEVARD 12
2900 HELLERUP

VAT NO. DK. 36 44 20 42
LUNDGRENS.DK
TEL +45 3525 2535

# LUNDGRENS

---

2.                STATEMENT OF CLAIM

---

The appellant, a U.S. pension fund, made investments in Danish stocks before the date of the dividend distribution, owned the stocks before and after the distribution date and received for each stock an amount equal to the dividend distributed less dividend tax (the "net dividend"). A withholding tax equal to 27% of the dividend payment was withheld. The appellant is exempt from tax under the U.S. rules and exempt from payment of withholding tax on dividend distributions from Denmark under the Double Taxation Convention between Denmark and the U.S. The appellant therefore applied for a reimbursement on an ongoing basis of the dividend tax withheld, which the Danish Tax Agency approved.

The present case arises from the fact that the Danish Tax Agency has revoked the previous favorable administrative acts by which the Danish Tax Agency recognized the right of the appellant to obtain a reimbursement of the withheld dividend tax. The Danish Tax Agency had no grounds for revoking the decisions. The Danish Tax Agency's reasoning, as set out in the revocation decision of February 07, 2019, is based on several incorrect assumptions and interpretations of U.S. law regarding the nature of the appellant's financing of the purchase of the stocks and the obligation to submit certain forms. The Danish Tax Appeals Agency should uphold the appellant's appeal, as the Danish Tax Agency's revocation decision is based on assumptions and conclusions that are contrary to U.S. law.

In support of our arguments regarding U.S. law, we have sought the assistance of U.S. tax lawyers who, upon request from the Danish Tax Appeals Agency, will be willing to corroborate the statements made regarding U.S. law.

The case also concerns the statute-barred question of whether the Danish Tax Agency is entitled to revoke the decisions taken in respect of 2013, pursuant to § 26 of the Tax Administration Act.

General information on the investments made

In 2013 and 2014, the appellant made a total of 11 trades in Danish listed stocks. In each case, the appellant met the requirements for a reimbursement of the withheld dividend tax, because the appellant had purchased the stocks and only sold them after the Danish issuer had decided to distribute dividends on them. Similarly, withholding tax of 27% was withheld in each case and the appellant recovered the withheld dividend tax. The following is a summary of the facts which establish that the appellant was entitled to the reimbursement received.

2.1      RJM was the legal owner of the stocks during the dividend distribution period in question and received the net dividend after the date of the dividend distribution

LUNDGRENS

According to point 3.1, "Legal basis," of the Danish Tax Agency's revocation decision, the following conditions must be met in order to obtain a reimbursement of withheld dividend tax: 1) the pension fund must meet the conditions of Article 10 of the Double Taxation Convention between Denmark and the United States, 2) the pension fund must be the legal owner of the Danish stocks, and 3) the pension fund must have received dividends from which dividend tax has been withheld. RJM met all these conditions when it claimed reimbursement of withheld dividend tax in 2013 and 2014.

First, the appellant, a pension fund incorporated in the United States, made its first investments in Danish listed shares relatively soon after its incorporation in 2013. These trades were made through the UK custodian, Solo Capital Partners LLP ("Solo Capital Partners"), which at that time was both authorized and regulated by the UK Financial Conduct Authority ("FCA"). For the avoidance of doubt, the appellant does not have (and has never had) any ownership interest in Solo Capital Partners or vice versa.

Secondly, RJM became the legal owner of the stocks before the date of passing of the dividend distribution. Under Danish law, a natural or legal person becomes the legal owner of the stocks upon acquisition. Under Danish law, it is the owner of the stocks at 11:59:59 p.m. on the day of the passing of the dividend distribution by the general meeting who is determined to be the legal owner of the distributed dividend and therefore also the person entitled to recover the Danish dividend tax withheld on the stocks. The appellant received evidence from Solo Capital Partners of having owned and held the stocks in question at the time of the dividend distribution, including purchase receipts and statements of account for the appellant with the English custodian, which the appellant may provide to the Tax Appeals Agency upon request, together with other documentation.

Thirdly, the appellant received the net dividend, i.e., an amount equal to the dividend less withholding tax, which was credited to the appellant's account. The appellant then submitted, through his authorized representative, all the documentation required by the Danish Tax Agency in order to reimburse the dividend tax withheld.

The appellant also received from financial professionals the evidence of legal ownership that is customary for this type of investment. This documentation will be forwarded to the Tax Appeals Agency.

Following the Danish Tax Agency's review of the above material in support of the recovery claim, the Danish Tax Agency decided to refund the withholding tax withheld, on the basis that the appellant was entitled to a refund of 100% of the withholding tax withheld under the Double Taxation Convention between Denmark and the United States.

LUNDGRENS ADVOKATPARTNERSELSKAB
TUBORG BOULEVARD 12
2900 HELLERUP

VAT NO. DK. 36 44 20 42
LUNDGRENS.DK
TEL +45 3525 2535

LUNDGRENS

Since the appellant fulfilled the above criteria, the appellant was entitled to a refund of the withheld dividend tax. In addition to the reasons given in point 3 of the Danish Tax Agency revocation decision, which do not relate to the above facts and which will be discussed and refuted below, the Danish Tax Agency has no valid basis for contesting the facts set out above or calling into question the appellant's right to receive the reimbursements initially made by the Danish Tax Agency.

The Danish Tax Agency was therefore wrong in revoking its earlier favorable administrative acts with the contested decision.

3.          ALLEGATIONS

The Danish Tax Agency's change of mind with the revocation ruling was apparently based on several incorrect assumptions regarding the deposit, funding and reporting requirements that U.S. pension funds must meet under U.S. law.

As further discussed, RJM did indeed meet all the requirements regarding the legal ownership of the listed stocks, and the previous decisions should therefore be upheld. Finally, it was not possible for the Danish Tax Agency to revoke certain decisions as the tax assessment period had expired.

3.1          Error in the Danish Taxation Agency's revocation decision

In support of the appellant's claim, it is submitted that the Danish Tax Agency's revocation decision of February 07, 2019, contained numerous errors and was based on incorrect assumptions regarding U.S. law and the underlying facts, and, since these errors form the basis of the Danish Tax Agency's decision, the Danish Tax Agency has no valid basis for revoking the refunds.

In its revocation decision, the Danish Tax Agency concludes that "RJM did not have the capital to make the investments in Danish stocks that are the basis for the said dividend tax refund requests" because 1) "RJM is a newly established pension fund," 2) "RJM is a sole participant and therefore has limited deposit amounts" and 3) "RJM did not file FORM 5500 in the U.S., meaning it must be assumed that RJM's assets were below USD 250,000 at the end of the relevant income years."

The Danish Tax Agency is correct that RJM was a newly established pension fund, whereas the other assumptions regarding RJM's failure to file a Form 5500 and the pension fund's limited deposit amount are incorrect and based

LUNDGRENS

on a misunderstanding of the facts and U.S. law.

A.             Submission of Form 5500 and Form 5500-EZ

The Danish Tax Agency concludes that since the U.S. Internal Revenue Service ("IRS") has indicated that it has not received a Form 5500 for RJM for 2013 and 2014, RJM has not filed a Form 5500 for those years. The Danish Tax Agency therefore claims that RJM's assets amounted to less than USD 250,000 and that the pension fund may therefore not have had the capital to make the investments in Danish stocks in question. However, the Danish Tax Agency is wrong both as regards the facts and the legal basis.

The IRS did not receive a Form 5500 filed by RJM because RJM was not required under U.S. law to file Form 5500.

First, (in the case of a "one-participant plan" like RJM) it is the employer or "plan sponsor" and not the pension fund itself that files a form with the IRS—provided the pension fund's assets otherwise exceed USD 250,000.

This is also directly apparent from the Tax Agency's own appendices, see page 236-01-05. Thus, as a pension fund, RJM was never obliged to submit a Form 5500 or similar.

Further, it should be noted that it would have been incorrect for an employer or "plan sponsor" to file a Form 5500. Please refer to the Danish Tax Agency appendix, page 236-03-01.

On the other hand, it would have been correct for an employer or "sponsor" of a "one-participant pension plan" to file a Form 5500-EZ (annual return of a one-participant (owners/partners and their spouses) retirement plan or a foreign plan). Under U.S. law, an employer or sponsor of a one-participant pension plan is required to file a Form 5500-EZ whenever the assets of the pension fund exceed USD 250,000 at the end of the calendar year.

The Danish Tax Agency states in paragraph 1.5 of the decision, "Information from the IRS in the United States," that it has obtained information from the IRS on whether RJM filed Form 5500 in 2013 or 2014, which according to the Danish Tax Agency must be filed with the IRS if the pension fund's assets exceed USD 250,000.

According to the Danish Tax Agency, the IRS has, in response to inquiries made with the IRS by the Danish Tax Agency, stated that it has not received Form 5500 from RJM for 2013 or 2014. Based on this, the Danish Tax

LUNDGRENS ADVOKATPARTNERSELSKAB
TUBORG BOULEVARD 12
2900 HELLERUP

VAT NO. DK. 36 44 20 42
LUNDGRENS.DK
TEL +45 3525 2535

LUNDGRENS

Agency concluded in its revocation decision that RJM must have been a "one-participant pension plan" with assets of less than USD 250,000 in 2013 and 2014 and thus did not have the capital to purchase Danish stocks as indicated.

The Danish Tax Agency's conclusion is incorrect because it did not request the correct information from the IRS.

Based on the information provided by the Danish Tax Agency in the appendix, the Danish Tax Agency has requested information from the IRS as to whether RJM, under TIN number ████ 0855, filed Form 5500 in 2013 or 2014. In accordance with the U.S. requirements described above, the Danish Tax Agency should have requested information on whether RJM Capital LLC, RJM's "sponsor" and trustee, under TIN number ████ 6132 (and not TIN number ████ 0855), filed a Form 5500-EZ (and not a Form 5500) on behalf of RJM in the relevant years.

In that case, the Danish Tax Agency would have found that RJM Capital LLC did in fact file Form 5500-EZ with the IRS stating that RJM's assets exceeded $250,000 at the relevant times.

These forms will later be submitted to the Danish Tax Appeals Agency as evidence that RJM's assets exceeded USD 250,000—contrary to the Tax Administration's assertion and contrary to the Danish Tax Agency's statement in the revocation decision and contrary to the Danish Tax Agency's conclusion that the pension fund did not have the required capital base.

It is therefore incorrect for the Danish Tax Agency to conclude, on the basis of its correspondence with the IRS in the contested decision, that RJM did not have sufficient capital to acquire the stocks in question.

RJM Capital LLC filed the 5500-EZ as one was obligated to. The fact that the Danish Tax Agency did not receive this information from the IRS is solely due to the Danish Tax Agency not inquiring about it.

Since the failure to file Form 5500 is central to the Danish Tax Agency's decision and since RJM did file a Form 5500-EZ in accordance with the U.S. rules, the Tax Appeals Agency should not give weight to the Danish Tax Agency's reasoning regarding the basis for the revocation decision.[1]

---

[1] The Danish Tax Agency's revocation ruling mentions in passing that RJM did not file Form 990-T for "unrelated business" or "debt-financed income" in paragraphs 1.5 and 3.2.3, but it does not explain why RJM should have filed these forms, again reflecting a misunderstanding of U.S. law and the reporting requirements applicable to U.S. pension funds.

LUNDGRENS ADVOKATPARTNERSELSKAB          VAT NO. DK. 36 44 20 42
TUBORG BOULEVARD 12                      LUNDGRENS.DK
2900 HELLERUP                            TEL +45 3525 2535

# LUNDGRENS

B.              Direct deposits, transfers and financing of stock purchases

The Danish Tax Agency has also misunderstood the U.S. rules, which set a ceiling on individual contributions to a pension fund and a ceiling on the amounts that a pension fund may receive. The Danish Tax Agency states in paragraph 1.5 of the ruling, "Information from the IRS in the United States," quoting from the IRS website, that "a one-participant 401(k) plan involves a business owner with no employees other than the individual and any close family members" and that "annual contributions are limited to between USD 12,500 and USD 53,000 depending on the age of the depositor (over or under 50)." The Danish Tax Agency further explains in point 3.2.2 of the Decision, "Capital base for pension fund investments," that the appellant may not have had the capital to purchase the stocks, as the investments exceeded the RJM deposit limit.

It is correct for the Danish Tax Agency to state what each employer may *contribute* to a "one-participant pension plan," but it is not correct that a "one-participant pension plan" may only *receive* that amount each year. Under current U.S. law, U.S. pension funds are entitled to fund their investments, including the type of investments at issue in this case, by means of annual contributions but also by means of contributions from multiple employers, rollovers or transfers from other pension funds, actual debt assumption or other cash-generating financial transactions. These sources of financing enabled the appellants to purchase the stocks.

For example, if the employer contributing to a U.S. pension fund has a spouse and they are both over 50 years old, the limit on their total contributions is USD 106,000 instead of USD 53,000 as the Danish Tax Agency claims. In addition, a U.S. pension fund may receive unlimited transfers of funds from other U.S. pension funds, and such transfers are not subject to any deposit limit. It is therefore incorrect for the Danish Tax Agency to insist that a newly established U.S. pension fund may receive a maximum annual deposit of USD 53,000.

Moreover, RJM would have been able to obtain the necessary liquidity for the purchase of the stocks by means of financial transactions, which is relevant in this case. RJM's capital requirement at the time of the purchase of the stocks was therefore well below 100%% of the value of the stocks purchased, of which RJM became the legal

LUNDGRENS ADVOKATPARTNERSELSKAB
TUBORG BOULEVARD 12
2900 HELLERUP

VAT NO. DK. 36 44 20 42
LUNDGRENS.DK
TEL +45 3525 2535

# L U N D G R E N S

owner. Under Danish law, pension funds are not obliged to have a minimum capital and they are allowed to finance stock purchases with external capital.

RJM was not subject to any legal, financial or regulatory constraints that limited its ability to obtain liquidity to finance investments. Indeed, external financing of such investments is common among investors. On that basis, the appellant would have been able to buy the stocks, even though the value of the appellant's assets was lower than the value of the listed stocks owned by the appellant.

In short, the Danish Tax Agency's decision to revoke the earlier dividend tax refund rulings rested on a weak foundation, which resulted from a misunderstanding of U.S. tax law and the options available to RJM to obtain the liquidity necessary to purchase listed stocks.

The Danish Tax Agency misunderstood the way the single deposit limit works in relation to "multi-business" employers and confused the single deposit limit with the limit that applies to the investment capital of a U.S. pension fund.

Since the basis of the Danish Tax Agency revocation decision was manifestly wrong under U.S. law, it should not be upheld.


C.              Requirements for registration of stocks with VP Securities

In addition to the two fundamental errors in the Danish Tax Agency's revocation decision described above, the Danish Tax Agency has made further incorrect allegations concerning the documentation of RJM's legal ownership of the stocks in question.

The Danish Tax Agency argues in point 1.4 of the decision, "Registration of Danish stocks," and in point 3.2.1, "Securities deposit," that, because RJM was not the owner of a securities deposit, the pension fund cannot have been the legal owner of the stocks: "All stocks in Danish listed companies are registered with VP Securities, which is the Danish central securities depository. This registration includes a securities account at a Danish bank set up in the name of a stockholder (...) A request for information from VP Securities has not found any securities account at a Danish bank where RJM or its custodian Solo Capital Partners LLP is registered as the owner."

# LUNDGRENS

The Danish Tax Agency's use of the VP Securities records is unfortunate as they are only relevant in certain securities law matters and not for the purpose of establishing a claim for refund of withholding tax under Danish tax law.

Neither RJM nor its custodian Solo Capital Partners is registered as the owner of a securities account at a Danish bank, nor is it required to be in order to prove who the rightful owner is.

In addition, it is not unusual for a legal owner and its custodian not to have a direct account with VP Securities. Indeed, the Ministry of Taxation has publicly acknowledged that incorrect tax treatment may occur in its report "Early warning in connection with securities lending" (September 23, 2015), which states that "the Danish Tax Agency cannot rely on the information that [VP Securities] reports to it" under certain circumstances.

The assumptions made by the Danish Tax Agency regarding the significance of VP Securities' records in the recovery of withheld dividend tax are therefore incorrect and cannot form the basis of the revocation decision.

D.           Misunderstanding of stock value and dividend payment

The Danish Tax Agency also states in point 3.2.3 of the decision, "Share dividends and withholding tax," that "It is the Danish Tax Agency's opinion that the dividends relating to the stocks referred to in the requests have not accrued to RJM, since RJM's capital base is considered to be below USD 250,000 at year end, as RJM has not filed FORM 5500 with the IRS (…) The net dividends from the Danish stocks of DKK 160,836,176 cannot therefore have accrued to RJM."

The Danish Tax Agency is apparently under the mistaken impression that the value of an investor's assets increases with the amount received as dividends on the stocks owned. However, the Danish Tax Agency has misunderstood the economic risks and benefits to the legal owner of stocks in companies, both before and after the payment of dividends.

Although the dividend paid to an investor increases the cash balance in his account, the increase in the cash balance will be offset by a decrease in the price of the stocks after the dividend is paid. This is because a stock on which a dividend has already been paid is worth less than a stock on which a dividend has not yet been paid (assuming no other change in the company's financial circumstances).

LUNDGRENS

As a result, the economic benefit of receiving dividends will usually be fully offset by the decrease in the value of the share after the dividend payment.

The best and most accurate analysis of the expected change in value is obtained by comparing the closing price (on the trading day prior to the dividend date) with the opening price (on the dividend date). An example of this for RJM's investments in 2014 is shown in **Appendix 2**. As shown in the appendix, the total value of RJM's assets would have decreased by more than DKK 91,090,899 after the receipt of dividends of DKK 88,196,221.

The assumptions used by the Danish Tax Agency regarding the value of RJM's assets after the payment of dividends are therefore incorrect.

3.2 Statute of limitations

In support of the appellant's claims, it is submitted that the ordinary tax assessment period for the 2013 income year expired on May 01, 2017.

The Danish Tax Agency announced the intended amendment of the decision on April 13, 2018, when the ordinary assessment period for 2013 had expired, whereas the final decision was not taken until February 07, 2019, when the ordinary assessment period for 2014 had in principle also expired.

The Danish Tax Agency did not indicate, either in the provisional decision or in the final decision, that it had carried out an extraordinary reopening. It must therefore be assumed that the present case must be decided solely in accordance with the rules on the ordinary assessment period laid down in Article 26 of the Tax Administration Act.

Since the ordinary assessment period does not provide for the revocation of the decision taken in respect of the 2013 income year, the Danish Tax Agency's decision is void as regards the revocation of that part of the decision.

**********

In the present case, the appellant submits that it owned the stocks in question and that it was entitled to a refund of the dividend tax withheld. The appellant also submits that the assumptions on which the Danish Tax Agency based its decision are incorrect, since they are based on a misunderstanding of U.S. law as regards U.S. pension funds.

LUNDGRENS ADVOKATPARTNERSELSKAB
TUBORG BOULEVARD 12
2900 HELLERUP

VAT NO. DK. 36 44 20 42
LUNDGRENS.DK
TEL +45 3525 2535

# LUNDGRENS

In the light of the foregoing, the claims should be upheld, and on the same basis, it is submitted that it is for the Danish Tax Agency to demonstrate that the appellant's requests for reimbursement of withheld dividend tax were not lawful.

4.          PROCEDURAL CONDITIONS

We kindly request an office hearing prior to the preparation of the case file. Furthermore, we kindly request that the present appeal be dealt with by the National Tax Tribunal.
Access to the hearing is reserved.

Yours sincerely,

Lundgrens Law Firm

[signature]                                          [signature]

Jakob Schilder-Knudsen                    Nicolai Sørensen

Attorney, Partner                              Attorney (H), Partner

# L U N D G R E N S

Skatteankestyrelsen
Ved Vesterport 6, 6. sal
1612 København V

jak@lundgrens.dk
Tlf.: 22474375
Sagsnr. 64710-13
**16. juli 2019**

## J.NR. 19-0040014 – RJM CAPITAL LLC SOLO 401(K) PLAN

På vegne vores klient, RJM Capital Pension Plan (RJM eller klager), skal vi hermed endeligt påklage den af Skattestyrelsen trufne afgørelse af 7. februar 2019. Afgørelsen er fremlagt som bilag 1.

For Skatteankestyrelsen nedlægges følgende:

1.        PÅSTANDE

Principalt

Skattestyrelsens afgørelse af 7. februar 2019 kendes ugyldig for så vidt angår tilbagekaldelsen af SKAT's afgørelse vedrørende refusion af kr. 26.866.831 fremsendt i 2013.

Skattestyrelsens afgørelse af 7. februar 2019 ændres, for så vidt angår tilbagekaldelsen af SKAT's afgørelser truffet i 2014, således at SKAT's tidligere afgørelser om refusion af udbytteskat til klager på i alt kr. 32.620.514 fremsendt i 2014 stadfæstes.

Subsidiært

Skattestyrelsens afgørelse af 7. februar 2019 ændres, således at SKAT's tidligere afgørelser om refusion af udbytteskat til klager på i alt 59.487.345 kr. stadfæstes.

# LUNDGRENS

2.       SAGSFREMSTILLING

Klager, som er en amerikansk pensionskasse, foretog investeringer i danske aktier før tidspunktet for udbytteudlodningens vedtagelse, ejede aktierne før og efter udlodningstidspunktet og modtog for hver aktie et beløb svarende til det udloddede udbytte med fradrag af udbytteskat ("nettoudbyttet"). Der blev indeholdt kildeskat svarende til 27 % af udbyttebetalingen. Klager er undtaget for skattepligt i henhold til de amerikanske regler og undtaget for betaling af kildeskat på udbytteudlodninger fra Danmark i henhold til dobbeltbeskatningsoverenskomsten mellem Danmark og USA. Klager søgte derfor løbende om refusion af den indeholdte udbytteskat, hvilket SKAT godkendte.

Nærværende sag skyldes, at Skattestyrelsen har tilbagekaldt de tidligere begunstigende forvaltningsakter, hvorved SKAT anerkendte klagers ret til at få refunderet den indeholdte udbytteskat. SKAT havde intet grundlag for at tilbagekalde afgørelserne. Skattestyrelsens begrundelse, således som den er anført i agørelsen om tilbagekaldelse af 7. februar 2019, hviler på flere forkerte forudsætninger og fortolkninger af amerikansk ret vedrørende karakteren af klagers finansiering af købet af aktierne og forpligtelsen til at indsende visse formularer. Skatteankestyrelsen bør give klager medhold, idet SKAT's afgørelse om tilbagekaldelse hviler på forudsætninger og konklusioner, som er i strid med amerikansk ret.

Til støtte for vores argumentation vedrørende amerikansk ret har vi søgt bistand hos amerikanske skatteretsadvokater, som efter anmodning fra Skatteankestyrelsen vil være villige til at bekræfte de afgivne erklæringer vedrørende amerikansk ret.

Sagen omhandler ligeledes det forældelsesmæssige spørgsmål om, hvorvidt Skattestyrelsen har hjemmel til at tilbagekalde afgørelserne truffet vedrørende 2013, jf. skatteforvaltningslovens § 26.

Generelt om de foretagne investeringer

I 2013 og 2014 foretog klager i alt 11 handler i danske børsnoterede aktier. I hvert enkelt tilfælde opfyldte klager kravene for at få refunderet den indeholdte udbytteskat, idet klager havde købt aktierne og først solgte dem, efter at den danske udsteder havde vedtaget at udlodde udbytte på dem. Tilsvarende blev der i hvert enkelt tilfælde indeholdt kildeskat på 27 %, og klager foretog tilbagesøgning af den indeholdte udbytteskat. Nedenfor følger en oversigt over de forhold, som fastslår, at klager var berettiget til den modtagne refusion.

2.1       RJM var retmæssig ejer af aktierne i den pågældende udbytteudlodningsperiode og modtog
          nettoudbyttet efter tidspunktet for udbyttelodningens vedtagelse

LUNDGRENS ADVOKATPARTNERSELSKAB                           VAT NO. DK. 36 44 20 42
TUBORG BOULEVARD 12                                       LUNDGRENS.DK
2900 HELLERUP                                             TEL +45 3525 2535

# LUNDGRENS

Ifølge pkt. 3.1, "Lovgrundlaget/retsgrundlaget", i Skattestyrelsens afgørelse om tilbagekaldelse skal følgende betingelser opfyldes for at få refunderet indeholdt udbytteskat: 1) pensionskassen skal opfylde betingelserne i art. 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA, 2) pensionskassen skal være retmæssig ejer af de danske aktier, og 3) pensionskassen skal have mod-taget udbytte, hvoraf der er indeholdt udbytteskat. RJM opfyldte alle disse betingelser, da pensions-kassen anmodede om refusion af indeholdt udbytteskat i 2013 og 2014.

For det første foretog klager, som er en i USA lovformeligt stiftet pensionskasse, sine første inve-steringer i danske børsnoterede aktier relativt hurtigt efter stiftelsen i 2013. Disse handler blev foretaget via den engelske custodian, Solo Capital Partners LLP ("Solo Capital Partners"), der på dette tidspunkt var både autoriseret og reguleret af det britiske finanstilsyn ("FCA"). For en god ordens skyld skal det nævnes, at klager ikke har – og aldrig har haft – ejerandele i Solo Capital Partners eller omvendt.

For det andet blev RJM retmæssig ejer af aktierne før tidspunktet for udbytteudlodningens vedta-gelse. Ifølge dansk ret bliver en fysisk eller juridisk person retmæssig ejer af aktierne ved erhver-velsen. Ifølge dansk ret er det ejeren af aktierne kl. 23:59:59 på dagen for generalforsamlingens vedtagelse at udbytteudlodningen, der anses for at være den retmæssige ejer af det udloddede udbytte og dermed også den, der er berettiget til at tilbagesøge den indeholdte danske udbytteskat på aktierne. Klager modtog dokumentation fra Solo Capital Partners på at have ejet og været i besiddelse af de omhandlede aktier på tidspunktet for udbytteudlodningens vedtagelse, herunder købsnotaer og kontoudtog for klagers konto hos den engelske custodian, som klager efter anmodning kan fremsende til Skatteankestyrelsen sammen med anden dokumentation.

For det tredje modtog klager nettoudbyttet, dvs. et beløb svarende til udbyttet med fradrag af kil-deskat, som tilgik klagers konto. Klager fremsendte derefter gennem sin bemyndigede repræsentant al den dokumentation, som SKAT krævede for at yde refusion af den indeholdte udbytteskat.

Klager modtog desuden fra finansielle fagfolk den dokumentation for det retmæssige ejerskab, som er sædvanlig for den type investeringer. Denne dokumentation vil blive fremsendt til Skatteankesty-relsen.

Efter SKAT's gennemgang af ovenstående materiale til støtte for tilbagesøgningskravet traf SKAT beslutning om at refundere den indeholdte kildeskat, idet klager i henhold til dobbeltbeskatnings-overenskomsten mellem Danmark og USA var berettiget til at få refunderet 100 % af den indeholdte kildeskat.

**LUNDGRENS**

Eftersom klager opfyldte ovenstående kriterier, var klager berettiget til refusion af den indeholdte udbytteskat. Udover de i pkt. 3 i SKAT's afgørelse om tilbagekaldelse anførte grunde, som ikke vedrører ovenstående forhold, og som vil blive drøftet og tilbagevist nedenfor, har Skattestyrelsen ikke anført noget gyldigt grundlag for at bestride de ovenfor anførte faktiske forhold eller sætte spørgsmålstegn ved klagers ret til at modtage de refusioner, som SKAT oprindeligt foretog.

Det var derfor med urette, at Skattestyrelsen ved den påklagede afgørelse tilbagekaldte sine tidligere begunstigende forvaltningsakter.

3.        ANBRINGENDER

Skattestyrelsens ændrede opfattelse i afgørelsen om tilbagekaldelse var tilsyneladende baseret på flere forkerte forudsætninger vedrørende de indskuds-, finansierings- og indberetningskrav, som amerikanske pensionskasser i henhold til amerikansk ret skal opfylde.

Som yderligere drøftet opfyldte RJM rent faktisk alle krav vedrørende det retmæssige ejerskab af de børsnoterede aktier, og de tidligere afgørelser bør derfor stadfæstes. Endeligt var det ikke muligt for SKAT at tilbagekalde visse afgørelser, idet ligningsfristen var udløbet.

3.1        Fejl i SKAT's afgørelse om tilbagekaldelse

Til støtte for klagers påstand gøres det gældende, at Skattestyrelsens afgørelse om tilbagekaldelse af den 7. februar 2019 indeholdt en lang række fejl og var baseret på forkerte forudsætninger vedrørende amerikansk ret og de underliggende faktiske forhold, og da disse fejl udgør grundlaget for SKAT's afgørelse, har SKAT intet gyldigt grundlag for at annullere refusionerne.

Skattestyrelsen konkluderer i sin afgørelse om tilbagekaldelse, at "RJM ikke har haft den fornødne kapital til at foretage de investeringer i danske aktier, der ligger til grund for de nævnte anmodninger om refusion af udbytteskat", fordi 1) "RJM er en nystiftet pensionskasse", 2) "RJM kun har en enkelt deltager med de deraf begrænsede indskudsbeløb", og 3) "RJM ikke har indsendt FORM 5500 i USA, hvorfor det må lægges til grund, at RJM's formue var under 250.000 USD ultimo de relevante indkomstår".

Skattestyrelsen har ret i, at RJM var en nystiftet pensionskasse, hvorimod de øvrige forudsætninger vedrørende RJM's manglende indsendelse af formular 5500 (form 5500) og pensionskassens

# L U N D G R E N S

begrænsede indskudsbeløb er forkerte og baseret på en misforståelse af de faktiske forhold og amerikansk ret.

A.         Indsendelse af formular 5500 og formular 5500-EZ

Skattestyrelsen konkluderer, at eftersom de amerikanske skattemyndigheder ("IRS") har oplyst, at de ikke har modtaget en formular 5500 for RJM for 2013 og 2014, har RJM ikke indsendt en formular 5500 for de pågældende år. Skattestyrelsen gør derfor gældende, at RJM's aktiver beløb sig til under 250.000 USD, og at pensionskassen derfor ikke kan have haft den fornødne kapital til at foretage de pågældende investeringer i danske aktier. Skattestyrelsen tager imidlertid fejl, både hvad angår de faktiske forhold og retsgrundlaget.

IRS har ikke modtaget en formular 5500 indleveret af RJM, da RJM i henhold til amerikansk ret ikke var forpligtet til at indsende en formular 5500.

For det første er det (i fald der er tale om en "one-participant-plan" som RJM) arbejdsgiveren eller "plan sponsor" og ikke pensionskassen selv, som indsender en formular til IRS - såfremt pensionskassens aktiver i øvrigt oversiger USD 250.000.

Dette fremgår også direkte af Skattestyrelsens egne bilag, jf. side 236-01-05. Som pensionskasse var RJM således aldrig forpligtet til at indsende en formular 5500 eller lignende.

Yderligere bemærkes at det i øvrigt ville have været forkert såfremt en arbejdsgiver eller "plan sponsor" havde indsendt en formular 5500. Der henvises til Skattestyrelsen bilag, side 236-03-01.

Derimod ville derimod have været korrekt hvis en arbejdsgiver eller "sponsor" for en "one-participant pension plan" havde indsendt en formular 5500-EZ (annual return of a one-participant (owners/partners and their spouses) retirement plan or a foreign plan). I henhold til amerikansk ret skal en arbejdsgiver eller "sponsor" for en "one-participant pension plan" som udgangspunkt indsende en formular 5500-EZ, når pensionskassens aktiver oversiger 250.000 USD ved udgangen af kalenderåret.

Skattestyrelsen anfører i pkt. 1.5 i afgørelsen, "Oplysninger fra IRS i USA", at man har indhentet oplysninger fra IRS om, hvorvidt RJM indsendte en formular 5500 i 2013 eller 2014, som ifølge Skattestyrelsen skal indsendes til IRS, hvis pensionskassens aktiver oversiger 250.000 USD.

Ifølge Skattestyrelsen har IRS som svar på Skattestyrelsens forespørgsel oplyst, at man ikke har modtaget en formular 5500 fra RJM for 2013 eller 2014. På baggrund heraf konkluderer

# LUNDGRENS

Skattestyrelsen i sin afgørelse om tilbagekaldelse, at RJM må have været en "one-participant pension plan" med aktiver på under 250.000 USD i 2013 og 2014 og dermed ikke var i besiddelse af den fornødne kapital til at købe danske aktier som anført.

Skattestyrelsen konklusion er forkert, da man ikke har anmodet om de korrekte oplysninger fra IRS.

På baggrund af de oplysninger, som Skattestyrelsen har anført i bilaget, har Skattestyrelsen tilsyneladende anmodet IRS om at oplyse, om RJM, under TIN-nummer ████0855, indsendte en formular 5500 i 2013 eller 2014. I overensstemmelse med de overfor beskrevne amerikanske krav skulle Skattestyrelsen have anmodet IRS om at oplyse, om RJM Capital LLC, RJM's "sponsor" og administrator, under TIN-nummer ████6132 (og ikke TIN-nummer ████0855), indsendte en formular 5500-EZ (og ikke en formular 5500) på vegne af RJM i de pågældende år.

I så fald ville SKAT have fundet ud af, at RJM Capital LLC rent faktisk indsendte en formular 5500-EZ til IRS, hvori det erklæredes, at RJM's aktiver oversteg 250.000 USD på de pågældende tidspunkter.

Disse formularer vil senere blive indsendt til Skatteankestyrelsen som dokumentation for, at RJM's aktiver oversteg 250.000 USD - i modsætning til hvad Skattestyrelsen påstår og i modsætning til hvad Skattestyrelsen har anført i afgørelsen om tilbagekaldelse og i modsætning til Skattestyrelsens konklusion om, at pensionskassen ikke havde det fornødne kapitalgrundlag.

Det er således forkert, når Skattestyrelsen ud fra dennes korrespondance med IRS i den påklagede afgørelse konkluderer at RJM ikke havde tilstrækkelig med kapital til at kunne erhverve de omhandlede aktier.

RJM Capital LLC indleverede de 5500-EZ som man var forpligtet til. Det forhold at Skattestyrelsen ikke har fået disse oplysninger fra IRS beror alene på at Skattestyrelsen ikke har spurgt ind hertil.

Idet den manglende indsendelse af formular 5500 er central for Skattestyrelsens afgørelse, og idet RJM rent faktisk indsendte en formular 5500-EZ i overensstemmelse med de amerikanske regler, bør Skatteankestyrelsen ikke lægge vægt på Skattestyrelsens argumentation vedrørende grundlaget for afgørelsen om tilbagekaldelse.[1]

---

[1] Skattestyrelsens afgørelse om tilbagekaldelse nævner en passant, at RJM ikke indsendte en formular 990-T for "unrelated business" eller "debt-financed income" i pkt. 1.5 og pkt. 3.2.3, men man forklarer ikke, hvorfor RJM burde have indsendt disse formularer, hvilket igen afspejler en

LUNDGRENS ADVOKATPARTNERSELSKAB    VAT NO. DK. 36 44 20 42
TUBORG BOULEVARD 12    LUNDGRENS.DK
2900 HELLERUP    TEL +45 3525 2535

# LUNDGRENS

B.        Direkte indskud, overførsler og finansiering af aktiekøb

Skattestyrelsen har ligeledes misforstået de amerikanske regler, som fastsætter et loft for enkelt-stående indskud i pensionskassen og et loft for de beløb, som en pensionskasse må modtage. Skat-testyrelsen anfører i pkt. 1.5 i afgørelsen, "Oplysninger fra IRS i USA", idet man citerer fra IRS' website, at "en one-participant 401(k) plan omfatter en virksomhedsejer uden nogen ansatte ud over personen og eventuelt dennes nærtstående", og at "det årlige indskud er begrænset til mellem 12.500 og 53.000 USD alt efter indskyders alder (over eller under 50 år)". Skattestyrelsen forklarer yderligere i pkt. 3.2.2 i afgørelsen, "Kapitalgrundlaget for pensionskassens investeringer", at klager ikke kan have haft den fornødne kapital til at købe aktierne, idet investeringerne oversteg loftet for RJM's indskud.

Det er korrekt, når Skattestyrelsen anfører, hvad den enkelte arbejdsgiver må *indskyde* i en "one-participant pension plan", men det er ikke korrekt, at en "one-participant pension plan" kun må *modtage* det pågældende beløb hvert år. I henhold til gældende amerikansk ret er amerikanske pensionskasser berettiget til at finansiere deres investeringer, herunder den type investeringer som nærværende sag vedrører, ved hjælp af årlige indskud men også ved hjælp af indskud fra "multiple" arbejdsgivere, "rollovers" eller overførsler fra andre pensionskasser, egentlig gældsoptagelse eller andre likviditetsskabende finansielle transaktioner. Disse finansieringskilder gjorde det muligt for klager at købe aktierne.

Hvis for eksempel den arbejdsgiver, som indskyder penge i en amerikansk pensionskasse, har en ægtefælle, og de begge er over 50 år gamle, er loftet for deres samlede indskud på 106.000 USD i stedet for 53.000 USD således som Skattestyrelsens påstår. Derudover kan en amerikansk pensi-onskasse i ubegrænset omfang modtage overførsler af midler fra andre amerikanske pensionskasser, og sådanne overførsler er ikke underlagt noget indskudsloft. Det er derfor forkert, når Skattestyrel-sen insisterer på, at en nyetableret amerikansk pensionskasse højst må modtage et årligt indskud på 53.000 USD.

Desuden ville RJM have været i stand til at opnå den fornødne likviditet til køb af aktierne ved hjælp af finansielle transaktioner, hvilket er relevant i denne sag. RJM's kapitalbehov på det tidspunkt, hvor aktierne blev købt, udgjorde derfor langt under 100 % af værdien af de købte aktier, som RJM

----

misforståelse af amerikansk ret og de indberetningskrav, som er gældende for amerikanske pensi-onskasser.

LUNDGRENS ADVOKATPARTNERSELSKAB                    VAT NO. DK. 36 44 20 42
TUBORG BOULEVARD 12                               LUNDGRENS.DK
2900 HELLERUP                                     TEL +45 3525 2535

## LUNDGRENS

blev den retmæssige ejer af. Efter dansk ret er pensionskasser ikke forpligtet til at have en mind-stekapital, og de må gerne finansiere aktiekøb ved hjælp af ekstern kapital.

RJM var ikke underlagt nogen juridiske, finansielle eller tilsynsmæssige krav, som begrænsede dens evne til at opnå likviditet til finansiering af investeringer. Ekstern finansiering af sådanne investe-ringer er rent faktisk almindelig blandt investorer. På den baggrund ville klager have været i stand til at købe aktierne, selvom værdien af klagers aktiver var lavere end værdien af de børsnoterede aktier, som klager ejede.

Skattestyrelsens afgørelse om at tilbagekalde de tidligere afgørelser om refusion af indeholdt udbyt-teskat hvilede kort sagt på et spinkelt grundlag, som skyldtes en misforståelse af amerikansk skat-teret og de muligheder, som RJM havde til rådighed med henblik på at opnå den likviditet, som var nødvendig for at købe børsnoterede aktier.

Skattestyrelsen misforstod den måde, hvorpå loftet for enkeltstående indskud virker i forhold til "multi-business" arbejdsgivere og blandende loftet for enkeltstående indskud sammen med det loft, som gælder for en amerikansk pensionskasses investeringskapital.

Idet grundlaget for Skattestyrelsen afgørelse om tilbagekaldelse var åbenlyst forkert i henhold til amerikansk ret, bør den ikke stadfæstes.


C.        Krav vedrørende registrering af aktier hos VP Securities

Ud over de to grundlæggende fejl i Skattestyrelsens afgørelse om tilbagekaldelse, som er beskrevet ovenfor, har Skattestyrelsen fremsat yderligere urigtige påstande vedrørende dokumentationen af RJM's retmæssige ejerskab af de omhandlede aktier.

Skattestyrelsen gør gældende i pkt. 1.4 i afgørelsen, "Registrering af danske aktier", og i pkt. 3.2.1, "Værdipapirdepot", at fordi RJM ikke var ejer af et værdipapirdepot, kan pensionskassen ikke have været retmæssig ejer af aktierne: "Alle aktier i danske børsnoterede selskaber er registreret hos VP Securities, som er den danske værdipapircentral. Til denne registrering hører et værdipapirdepot i en dansk bank oprettet i en aktionærs navn (...) Ved søgning i oplysninger fra VP Securities er der ikke fundet noget værdipapirdepot i en dansk bank, hvor RJM eller dennes custodian Solo Capital Partners LLP er registreret som ejer".

LUNDGRENS ADVOKATPARTNERSELSKAB
TUBORG BOULEVARD 12
2900 HELLERUP

VAT NO. DK. 36 44 20 42
LUNDGRENS.DK
TEL +45 3525 2535

**LUNDGRENS**

Skattestyrelsens brug af registreringerne hos VP Securities er uheldig, da disse kun er relevante i forbindelse med visse forhold relateret til værdipapirlovgivningen, men derimod ikke med henblik på at fastslå et krav på refusion af indeholdt udbytteskat i henhold til dansk skatteret.

Hverken RJM eller dennes custodian Solo Capital Partners er registreret som ejer af et værdipapir-depot i en dansk bank, og det er heller ikke noget krav med henblik på at dokumentere, hvem der er den retmæssige ejer.

Desuden er det ikke usædvanligt, at en retmæssig ejer og dennes custodian ikke har en direkte konto hos VP Securities. Skatteministeriet har da også offentligt erkendt, at ukorrekt skattemæssig behandling kan finde sted i dets rapport "Early warning i forbindelse med værdipapirlån"(23. september 2015), hvoraf fremgår, at "SKAT ikke kan stole på de oplysninger, som [VP Securities] ind-beretter til SKAT" under visse omstændigheder.

De af Skattestyrelsen anvendte forudsætninger vedrørende betydningen af VP Securities' registre-ringer i forbindelse med tilbagesøgning af indeholdt udbytteskat er derfor forkerte, og de kan ikke danne grundlag for afgørelsen om tilbagekaldelse.

D.      Misforståelse af aktieværdi og udbyttebetaling

Skattestyrelsen anfører ligeledes i pkt. 3.2.3 i afgørelsen, "Aktieudbytte og indeholdt udbytteskat", at "Det er Skattestyrelsens opfattelse, at udbytterne vedrørende de aktier, som fremgår af anmod-ningerne, ikke er tilgået RJM, da RJM's kapitalgrundlag anses for at være under 250.000 USD ultimo året, idet RJM ikke har indsendt FORM 5500 til IRS (...) Nettoudbyttet fra de danske aktier 160,836,176 kr. kan derfor ikke være tilgået RJM".

Skattestyrelsen er tilsyneladende af den fejlagtige opfattelse, at værdien af en investors aktiver stiger med det beløb, som modtages som udbytte på de ejede aktier. Skattestyrelsen har imidlertid misforstået de økonomiske risici og fordele for den retmæssige ejer af aktier i selskaber, både før og efter udbetalingen af udbytte.

Selvom det udbytte, som udbetales til en investor, forøger det kontante indestående på dennes konto, vil forøgelsen af det kontante indestående blive udlignet af et fald i kursen på aktierne, når udbyttet er udbetalt. Det skyldes, at en aktie, hvorpå der allerede er udbetalt udbytte, er mindre værd end en aktie, hvorpå der endnu ikke er udbetalt udbytte (hvis ellers selskabets økonomiske forhold ikke ændrer sig på anden vis).

LUNDGRENS

Som følge heraf vil den økonomiske fordel ved at modtage udbytte som oftest blive fuldstændigt udlignet af faldet i aktiens værdi efter udbetalingen af udbytte.

Den bedste og mest nøjagtige analyse af den forventede værdiændring opnås ved at sammenligne lukkekursen (på den børsdag, som ligger før udbyttedatoen) med åbningskursen (på udbyttedagen). Et eksempel på dette, hvad angår RJM's investeringer i 2014, er vist i **bilag 2**. Som det fremgår af bilaget, ville den samlede værdi af RJM's aktiver være faldet med over 91.090.899 kr. efter modtagelsen af udbytte på 88.196.221 kr.

De af Skattestyrelsen anvendte forudsætninger vedrørende værdien af RJM's aktiver efter udbetalingen af udbytte er derfor forkerte.

3.2      Forældelse

Til støtte for klagers påstande gøres det gældende, at den ordinære ligningsfrist for indkomståret 2013 udløb 1. maj 2017.

Skattestyrelsen varslede den påtænkte ændring af afgørelsen den 13. april 2018, hvor den ordinære ligningsfrist for 2013 var udløbet, mens den endelige afgørelse først blev truffet den 7. februar 2019, hvor den ordinære ligningsfrist for 2014 i princippet ligeledes var udløbet.

Skattestyrelsen har ikke, hverken i den foreløbige eller i den endelige afgørelse, tilkendegivet, at man har foretaget en ekstraordinær genoptagelse. Det må derfor lægges til grund, at nærværende sag alene skal afgøres efter reglerne om ordinær ligningsfrist i skatteforvaltningslovens § 26.

Da den ordinære ligningsfrist ikke giver hjemmel til at tilbagekalde den afgørelse, der blev truffet vedrørende indkomståret 2013, er Skattestyrelsens afgørelse ugyldig, for så vidt angår tilbagekaldelsen af denne del af afgørelse.

**********

Klager gør i nærværende sag gældende, at klager har ejet de omhandlede aktier, og at klager har været berettiget til at modtage refusion af den indeholdte udbytteskat. Klager gør ligeledes gældende, at de forudsætninger, som Skattestyrelsen har baseret sin afgørelse på, er forkerte, idet de hviler på en misforståelse af amerikansk ret, hvad angår amerikanske pensionskasser.

LUNDGRENS ADVOKATPARTNERSELSKAB                    VAT NO. DK. 36 44 20 42
TUBORG BOULEVARD 12                                 LUNDGRENS.DK
2900 HELLERUP                                       TEL +45 3525 2535

# LUNDGRENS

På den baggrund fastholdes de nedlagte påstande, og ligeledes på den baggrund gøres det gældende, at det påhviler Skattestyrelsen at påvise, at klagers anmodninger om refusion af indeholdt udbytte-skat ikke har været retmæssig.

4.        PROCESSUEELLE FORHOLD

Vi skal venligst anmode om kontorforhandling, forinden der udarbejdes sagsfremstilling i sagen. Yderligere skal vi venligst anmode om, at nærværende klage behandles af Landsskatteretten. Adgang til retsmøde forbeholdes.

Med venlig hilsen
Lundgrens Advokatpartnerselskab

Jakob Schilder-Knudsen
Advokat, Partner

Nicolai Sørensen
Advokat (H), Partner

LUNDGRENS ADVOKATPARTNERSELSKAB          VAT NO. DK. 36 44 20 42
TUBORG BOULEVARD 12                      LUNDGRENS.DK
2900 HELLERUP                            TEL +45 3525 2535