# LIONBRIDGE

STATE OF NEW YORK      )
                       )
                       ) ss
                       )
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached letter from TVC Law Firm. I affirm that the linguist responsible for producing this translation is fluent in both the Danish and English languages.

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me this 6th day of June, 2022.

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

*Sent via the appeals portal*
The Danish Tax Appeals Agency (Skatteankestyrelsen)
Ved Vesterport 6, Floor 6
1612 Copenhagen W



# Ref. No. 19-0039917

**Comments on the Danish Tax Agency's opinion of June 06**

As representative of Roadcraft Technologies in the above case, I have received the Danish Tax Agency's opinion of June 06. I hereby submit my comments on the statements made by the Danish Tax Agency.

## FACTUAL BACKGROUND

The complainant, an American pension fund, invested in Danish stocks during the dividend day in order to make a profit.

For each stock, the pension fund received a net dividend, i.e. an amount equal to the dividend paid less withholding tax withheld (the "net dividend amount").
The withheld dividend tax corresponds to 27% of the dividend.

The complainant is exempt from taxation under U.S. law, and is exempt from payment of dividend tax under the Double Taxation Convention between Denmark and the United States. Accordingly, the complainant has continuously applied for payment of withheld dividend tax and the Danish Tax Agency (what was then SKAT [the former name of the Danish Tax Agency]) has - correctly - granted these applications and paid the withheld dividend tax.

The case thus stems from the Danish Tax Agency's erroneous revocation of a series of earlier decisions in which the pension fund was considered entitled to a reimbursement of withheld dividend tax. The Danish Tax Agency has no grounds to revoke these earlier decisions, yet as a result of a number of erroneous assumptions did revoke them by decision of February 07, 2019.

The Danish Tax Agency's opinion of June 06, 2019 is based on these erroneous assumptions of fact and misunderstandings of US law regarding the complainant's access to capital and the requirement to complete various forms.

**ATTORNEY**

Kasper Bech Pilgaard
E-mail    kbp@tvc.dk
Direct Line +45 3318 6158

**SECRETARY**

Ida Gercke-Jensen
E-mail    igj@tvc.dk
Direct Line   +453318 6123

**AARHUS**

Søren Frichs Vej 42A
DK-8230 Åbyhøj

**COPENHAGEN**

Nimbusparken 24, 2 Left
DK-2000 Frederiksberg

**TVC.DK**

J.nr.    110020
Date    08/27/2019

ADVOKETPARTERSELSKAB    CORPORATE ID NO. 34 22 70 04    TELEPHONE +45 70 11 0800

PAGE 1 / 9

## THE COMPLAINANT MEETS THE CONDITIONS FOR REIMBURSEMENT OF WITHHELD DIVIDEND TAX

The complainant was the beneficial owner of the stocks at the time of the declaration of dividends and received (accordingly) payment of net dividends.

In paragraph 2 - "About the case" (Om sagskomplekset") - of the Danish Tax Agency's comments of June 06, the Danish Tax Agency states that the complainant did not own the stocks in question and therefore did not receive (net) dividends from them.

This is fundamentally disputed, as the complainant fulfils all the conditions for receiving a reimbursement of withheld dividend tax. The complainant is thus a pension fund which *(i)* fulfils all the conditions of Article 10 of the Double Taxation Convention between Denmark and the United States, *(ii)* is the beneficial owner of the Danish stocks and *(iii)* has received net dividends such that the dividend tax was withheld.

First, the complainant - a pension fund legally established and registered under the Double Taxation Convention between Denmark and the United States - began investing in Danish stocks relatively soon after its establishment.

The investments were made through its UK custodian, Solo Capital Partners LLP (Solo Capital Partners), which at the time was both authorized and regulated by the British Financial Conduct Authority (FCA). It is noted for the record that the complainant does not and did not have any ownership interest in Solo Capital Partners or vice versa.

Second, the complainant became the legal owner of the stocks before the dividend date. Under Danish law, a person (natural or legal) is the legal owner of the stocks at the time of acquisition of the stocks.

Thus, it is the person who owns the stocks at 12:59:59 PM on the day on which the General Meeting decides that dividends are to be paid, who is determined to be the beneficial owner of the declared dividends and is therefore also entitled to claim a reimbursement of the Danish dividend tax withheld.

Authorized representatives of the pension fund received documentation from Solo Capital Partners regarding the ownership and possession of the stocks by the complainant at the time of the passing of the dividend payment by the General Meeting.

Third, the complainant received the net dividend amount, i.e., an amount equal to the dividend paid less withheld dividend tax of 27% of the dividend.

Through his representative, the complainant submitted the documentation that the Danish Tax Agency deemed necessary to pay a reimbursement of the withheld

dividend tax, including the documentation from financial professionals demonstrating beneficial ownership that is common for this type of investment.

Against this background, the Danish Tax Agency conducted a review of the refund case and found that the complainant was entitled to a refund of 100% of the withholding tax withheld under the Denmark-US Double Taxation Convention. Accordingly, the Danish Tax Agency refunded the withholding tax that had been withheld.

• • • • • •

Given that the complainant fulfilled the three criteria above, the complainant was (also in the view of the Danish Tax Agency) entitled to a refund of the withheld dividend tax.

The Danish Tax Agency has not given any reasons in support of the revocation in its statement of June 06 other than a few summary remarks in point 3.

These positions will be discussed and refuted below. Thus, the Danish Tax Agency's initial assessment that the complainant is entitled to receive a reimbursement of the withheld dividend tax has been erroneously questioned.

## ERRONEOUS ASSUMPTIONS AND MISUNDERSTANDING OF AMERICAN LAW

The Danish Tax Agency's change of view appears to be based on several incorrect assumptions regarding the deposit, funding and reporting requirements that US pension funds must meet under US law.

In its opinion of June 06, the tax authorities thus put forward a number of positions based on misunderstandings of US law and erroneous assumptions about the underlying facts.

In its opinion of June 06, the Danish Tax Agency thus states that it is unproven that the complainant:

> "(..) actually made these alleged massive investments in Danish stocks."

In addition, the Danish Tax Agency concludes that the complainant did not have the capital to make the investments in Danish stocks (on

account of its being just one participant in the pension fund and therefore having limited deposits) and also neglected to have:

> "Tax Return with Form 5500 (..) (Exhibit P, page 2)."

Finally, the Danish Tax Agency states that the complainant has not provided any evidence of having owned the alleged stocks or of having received the net dividend amount.

These assumptions (concerning the amount of the complainant's deposits and the lack of proof of stock ownership) are incorrect and based on a number of false assumptions relating to the facts and on misunderstandings of US law.

Below, these views will be refuted individually.

**1.1    Submission of Form 5500 and Form 5500-EZ**

In its opinion, the Danish Tax Agency concludes that, since the IRS (the US tax authorities) has indicated that it has not received a Form 5500 for the tax years in question, no Form 5500 has been filed for those years. As a result, the Danish Tax Agency assumes that the complainant's assets amounted to no more than USD 250,000 and that the pension fund could not therefore have had the capital necessary to make the relevant investments in Danish stocks.

However, the IRS did not receive a Form 5500 filed by the Complainant because under U.S. law the Complainant was not required to file Form 5500.

First, (in the case of the "one-participant plan") it is the employer or "plan sponsor" and not the pension fund itself that files a form with the IRS in the event that the pension fund's assets exceed $250,000 at the end of the calendar year. Thus, as a pension fund, the complainant was never required to file a Form 5500 or similar form.

Second, it would also be improper for an employer or "plan sponsor" to have filed a Form 5500. Instead, an employer (or "sponsor") of a "one-participant pension plan" must file a Form 5500-EZ (annual return of a one-participant (owners/partners and their spouses) retirement plan or a foreign plan).

The Danish Tax Agency states in its opinion that it has obtained information from the IRS on whether the complainant has filed a Form 5500, which the Danish Tax Agency requires to be filed if the pension fund's assets exceed $250,000.

The Danish Tax Agency states that the IRS (based on the Danish Tax Agency's inquiries) has stated that the complainant has not filed a Form 5500. Due to this,

the Danish Tax Agency finds that the complainant alone had assets of less than USD 250,000 and thus did not have the necessary capital to purchase Danish stocks as required.

The Danish Tax Agency's conclusion is incorrect because it requested the wrong information from the IRS.

In accordance with the US requirements described above, the Danish Tax Agency should have asked the IRS to disclose whether the complainant's "sponsor" and trustee had filed a Form 5500-EZ (and not a Form 5500) on behalf of the complainant in the years in question.

Therefore, the Danish Tax Agency has based its decision on inaccurate research.

In addition, it should be noted that the duty to file a Form 5500-EZ arises only if the value of the assets on a specific date (December 31) exceeds $250,000. Account statements and custodial statements will show that the value of the complainant's assets exceeded $250,000 several times during the year.

### 1.2    Direct deposits, transfers and financing of stock purchases

The Danish Tax Agency has also misunderstood the US rules, which set a ceiling on individual contributions to a pension fund and a ceiling on the amounts that a pension fund may receive.

The Danish Tax Agency states in paragraph 3 of its opinion that the annual contribution to a "one-participant plan" is limited to between USD 12,500 and USD 53,000. The Danish Tax Agency therefore concludes that the complainant could not have had the necessary capital to purchase the stocks, since the investments exceeded the ceiling for the complainant's contribution.

The Danish Tax Agency's view is (partially_ correct as regards the limit on what each employer may *contribute* to a "one-participant pension plan". However, it is incorrect that a 'one-participant pension plan' may only *receive* the amount in question each year.

The Danish Tax Agency's partially correct view of the deposit limit is that the starting point is waived if the employer who deposits money in an American pension fund has a spouse and they are both over 50 years old. In this situation, the limit on the total contribution to the pension fund is raised from USD 53,000 to USD 106,000.

Secondly, it should be emphasized that US pension funds are entitled under

current US law to fund their investments (including the type of investments concerned in the present case) in several ways.

This includes the possibility of funding through annual contributions, contributions from multiple employers, rollovers or transfers from other pension funds, actual debt assumption or other liquidity-generating financial transactions. By means of these sources of financing, the complainant raised the capital necessary to purchase the stocks.

In addition, there is no deposit limit in relation to transfers of funds from other US pension funds. Thus, the complainants have been able to receive unlimited transfers of funds from other US pension funds.

Thus, it is a misunderstanding of US law for the Danish Tax Agency to state that the complainant may receive a maximum annual deposit of $53,000.

Secondly, the complainant had the possibility to provide the necessary liquidity for the purchase of the stocks by means of financial transactions. The complainant's capital requirements (at the time of the purchase of the stocks) therefore amounted to well below 100% of the value of the stocks purchased and of which the complainant became the beneficial owner.

The complainant was not subject to any legal, financial or regulatory constraints that limited its ability to obtain liquidity to finance investments.
On the contrary, external financing is common among investors. Thus, the complainant was able to purchase the stocks even in the situation where the value of the complainant's assets was lower than the value of the listed stocks that the complainant owned.

Thus, the Danish Tax Agency's changed view must be considered to rest on an extremely weak basis, seemingly based on a number of incorrect assumptions regarding US tax law and the complainant's ability to obtain liquidity.

The Danish Tax Agency's opinion thus reflects a misunderstanding of the way the single deposit limit is applied in relation to multi-business employers, as well as a confusion between the single deposit limit and the limit on the investment capital of a US pension fund.

### 1.3    Requirements for documentation of stock ownership and receipt of net dividends

In addition to the two fundamental errors in the Danish Tax Agency's reasoning (described above), the Danish Tax Agency has made a further allegation that the complainant has not provided evidence of having owned the stocks in question and, in the Danish Tax Agency's view, has not received net dividends from them.

It should be noted that the complainant has already submitted all the required supporting documents in connection with the initial request for refund of withheld dividend tax.

### 1.3.1     Proof of ownership of stocks

The Danish Tax Agency's view that the complainant should provide further evidence of ownership of the stocks appears to be based on the misunderstanding that the complainant must have been the owner of a securities deposit in order to have been the legal owner of the stocks. Thus, in its decision of February 07, 2019, the Danish Tax Agency states that:

> *"All stocks in Danish listed companies are registered with VP Securities, the Danish central securities depository. This registration includes a securities account at a Danish bank set up in the name of a stockholder (..)".*

The Danish Tax Agency then raised the problem that, after a request for information from VP Securities, they were unable to identify a securities account at a Danish bank where the complainant or his custodian was registered as the owner.

The Danish Tax Agency's use of the VP Securities records is unfortunate, as the VP Securities information is relevant only to a number of specific issues related to securities law. The registration with VP Securities is therefore not relevant in assessing whether the complainant is entitled to a refund of withheld dividend tax under Danish tax law.

Neither the complainant nor its custodian is registered as the owner of a securities portfolio at a Danish bank, nor is this a requirement in order to prove who the beneficial owner is.

Secondly, it should be pointed out that it is quite usual for neither the beneficial owner nor its custodian to have a direct account with VP Securities. Indeed, the Ministry of Taxation has publicly acknowledged that the use of information from VP Securities may result in incorrect tax handling. Please refer to the report "Early warning in connection with securities lending" (""Early warning i forbindelse med værdipapirlån") of September 23, 2015. Among other things, this report states that

> *"(..) the Danish Tax Agency cannot rely on the information reported, which creates a high risk of error."*

The assumptions made by the Danish Tax Agency regarding the significance of VP Securities' records in the recovery of withheld dividend tax are therefore incorrect and cannot form the basis of the revocation decision.

### 1.3.2 Misunderstanding the link between dividend payments and stock value

The Danish Tax Agency also states in point 3.2.3 of the decision ('Stock dividends and withheld dividend tax' ("Aktieudbytte og indeholdt udbytteskat")) that it is their view that the dividends relating to the stocks referred to in the requests have not accrued to the complainant, since the complainant's capital base:

> "is found to be less than $250,000 at year-end, as RTLR has
> not filed FORM 5500 with the IRS".

On this basis, the Danish Tax Agency concludes that the net dividend cannot have reached the complainant.

Thus, the Danish Tax Agency is apparently of the erroneous view that the value of an investor's assets increases with the amount received as dividends on the stocks owned. However, the Danish Tax Agency has misunderstood the economic risks and benefits to the beneficial owner of stocks in companies, both before and after the payment of dividends.

The Danish Tax Agency's view is correct to the extent that dividends paid to an investor increase the cash balance in the investor's account. However, the increase in the cash balance will be offset by a fall in the stock price following the payment of the dividend.

This fall in the stock price occurs because a stock on which a dividend has already been paid is worth less than a stock on which a dividend has not yet been paid (assuming that the company's financial situation does not change in any other way). As a result, the economic benefit of receiving dividends will (in most cases) be offset by the decrease in the value of the stock after the dividend payment.

The best and most accurate analysis of the expected change in value is obtained by comparing the closing price (on the trading day prior to the dividend date) with the opening price (on the dividend day).

An example of this for Roadcraft Technologies' investments in 2014 and 2015 is provided in Appendix 1.

As can be seen from the annex, the total value of the complainant's assets has decreased by DKK 163,450,351.

The assumptions used by the Danish Tax Agency regarding the value of Roadcraft Technologies' assets after the payment of dividends are therefore incorrect.

• • •   • • •

It therefore appears that the assumptions on which the Danish Tax Agency bases its argument are incorrect, being based on a misunderstanding of US law and erroneous assumptions of fact, and that the complainant did indeed therefore own the stocks in question and was entitled to a reimbursement of the dividend tax withheld.

**APPENDIX**

| Appendix 2 | Statement of change in value from closing rate to opening rate |

Yours sincerely,
**TVC Law Firm**

.........
**Kasper Bech Pilgaard**
Partner, Attorney (L), LL.M

................................................................................................
**Kasper Bech Pilgaard**
Partner, Attorney (L), LL.M.

Case 1:18-md-02865-LAK   Document 835-13   Filed 06/27/22   Page 11 of 20

*Sendt via klageportalen*
Skatteankestyrelsen
Ved Vesterport 6, 6. sal
1612  København V



J.nr. 19-0039917

**Bemærkninger til Skattestyrelsens udtalelse af den 6. juni**

Jeg har som repræsentant for Roadcraft Technologies i ovennævnte sag modtaget Skattestyrelsens udtalelse af den 6. juni. Jeg skal hermed fremkomme med mine bemærkninger til det af Skattestyrelsen anførte.

## SAGENS BAGGRUND

Klager, der er en amerikansk pensionskasse, investerede i danske aktier henover udbyttedagen med henblik på at opnå en fortjeneste.

For hver aktie har pensionskassen modtaget nettoudbytte, dvs. et beløb svarende til det udloddede udbytte fratrukket indeholdt kildeskat ("nettoudbytte beløbet"). Den indeholdte udbytteskat svarer til 27% af udbyttet.

Klager er undtaget skattepligt i medfør af amerikansk lovgivning, og er undtaget for betaling af udbytteskat i medfør af dobbeltbeskatningsoverenskomsten mellem Danmark og USA. I overensstemmelse hermed har klager løbende søgt om at få udbetalt indeholdt udbytteskat, og Skattestyrelsen (det daværende SKAT) har – korrekt – imødekommet disse ansøgninger og udbetalt den indeholdte udbytteskat.

Sagen udspringer således af Skattestyrelsens fejlagtige tilbagekaldelse af en række tidligere afgørelser, hvor pensionskassen blev anset som berettiget til at modtage refusion af indeholdt udbytteskat. Skattestyrelsen har ikke grundlag for at tilbagekalde disse tidligere afgørelser, men har som følge af en række forkerte forudsætninger tilbagekaldt dem ved afgørelse af 7. februar 2019.

Skattestyrelsens udtalelse af 6. juni 2019 bygger ovenpå disse fejlagtige antagelser om faktiske forhold og misforståelser af amerikansk ret vedrørende klagers adgang til kapital samt krav om udfyldelse af forskellige blanketter.

**ADVOKAT**

Kasper Bech Pilgaard
E-mail       kbp@tvc.dk
Direkte     +45 3318 6158

**SEKRETÆR**

Ida Gercke-Jensen
E-mail       igj@tvc.dk
Direkte     +45 3318 6123

**AARHUS**

Søren Frichs Vej 42A
DK-8230 Åbyhøj

**KØBENHAVN**

Nimbusparken 24, 2. tv.
DK-2000 Frederiksberg

**TVC.DK**

J.nr.     110020
Dato     27.8.2019

## KLAGER OPFYLDER BETINGELSERNE FOR REFUSION AF IN-DEHOLDT UDBYTTESKAT

Klager var retmæssig ejer ("beneficial owner") af aktierne på tidspunktet for deklarering af udbytte og modtog – i overensstemmelse hermed - udbetaling af nettoudbytte.

I afsnit 2 – "Om sagskomplekset" - i Skattestyrelsens bemærkninger af 6. juni anfører Skattestyrelsen, at klager ikke ejede de pågældende aktier og derfor ikke modtog (netto)udbytte heraf.

Dette bestrides grundlæggende, idet klager opfylder alle betingelserne for at modtage refusion af indeholdt udbytteskat. Klager er således en pensionskasse, der *(i)* opfylder alle betingelserne i art. 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA, *(ii)* er den retmæssige ejer af de danske aktier og *(iii)* har modtaget nettoudbytte, således udbytteskatten var indeholdt.

For det første begyndte klager – en lovligt etableret og registreret pensionskasse efter dobbeltbeskatningsoverenskomsten mellem Danmark og USA – at investere i danske aktier relativt hurtigt efter dets etablering.

Investeringerne blev foretaget via dets britiske custodian, Solo Capital Partners LLP (Solo Capital Partners), der på det tidspunkt var både autoriseret og reguleret af det britiske finanstilsyn, British Financial Conduct Authority (FCA). Det bemærkes for god ordens skyld, at klager hverken har eller har haft ejerandele i Solo Capital Partners eller omvendt.

For det andet blev klager den retmæssige ejer af aktierne før udbyttedatoen. Efter dansk ret er en - fysisk eller juridisk – person den retmæssige ejer af aktierne på tidspunktet for erhvervelse af aktierne.

Således er det personen, der ejer aktierne klokken 23:59:59 på dagen, hvor generalforsamlingen vedtager, at der skal udbetales udbytte, som anses for at være den retmæssige ejer af deklarerede udbytter og dermed også er berettiget til at anmode om en refusion af den indeholdte danske udbytteskat.

Autoriserede repræsentanter fra pensionskassen modtog dokumentation fra Solo Capital Partners vedrørende klagers ejerskab og besiddelse af aktierne på tidspunktet for generalforsamlingens vedtagelse af udbytteudbetaling.

For det tredje modtog klager nettoudbytte beløbet, dvs. et beløb svarende til det udloddede udbytte fratrukket indeholdt udbytteskat på 27% af udbyttet.

Via sin repræsentant fremsendte klager den dokumentation, Skattestyrelsen fandt nødvendig for at udbetale refusion af den indeholdte udbytteskat, herunder den

dokumentation fra finansielle fagmænd for det retmæssige ejerskab, som er sædvanlig for denne type investeringer.

På denne baggrund foretog Skattestyrelsen en gennemgang af refusionssagen og vurderede, at klager i henhold til dobbeltbeskatningsoverenskomsten mellem Danmark og USA var berettiget til at få refunderet 100 % af den indeholdte kildeskat. Således refunderede Skattestyrelsen den indeholdte kildeskat.

• • •   • • •

Som følge af, at klager opfyldte de tre ovenstående kriterier, var klager – også efter Skattestyrelsens opfattelse - berettiget til refusion af den indeholdte udbytteskat.

Skattestyrelsen har ikke anført nogle grunde til støtte for tilbagekaldelsen i sin udtalelse af 6. juni udover et par summariske bemærkninger i pkt. 3.

Disse synspunkter vil blive drøftet og tilbagevist i det følgende. Der er således fejlagtigt sat spørgsmålstegn ved Skattestyrelsens oprindelige vurdering af, at klager har ret til at modtage refusion af den indeholdte udbytteskat.

## FEJLAGTIGE ANTAGELSER OG MISFORSTÅELSE AF AMERIKANSK RET

Skattestyrelsens ændrede opfattelse er tilsyneladende baseret på flere forkerte forudsætninger vedrørende de indskuds-, finansierings- og indberetningskrav, som amerikanske pensionskasser skal opfylde i henhold til amerikansk ret.

Skattestyrelsen anfører således i sin udtalelse af 6. juni en række synspunkter, der er baseret på misforståelser vedrørende amerikansk ret og fejlagtige antagelser om de underliggende faktiske forhold.

Skattestyrelsen anfører således i sin udtalelse af 6. juni, at det er udokumenteret, at klager:

> "(..) faktisk har foretaget disse påståede massive investeringer i danske aktier."

Herudover konkluderer Skattestyrelsen, at klager ikke har haft kapital til at foretage investeringerne i danske aktier - som følge af, at der kun er

en enkelt deltager i pensionskassen og det dermed begrænsede indskudsbeløb – samt har forsømt at få:

> "selvangivet med Form 5500 (..) (bilag P, side 2)."

Endelig anfører Skattestyrelsen, at klager ikke har fremlagt dokumentation for at have ejet de påståede aktier eller for at have modtaget nettoudbytte beløbet.

Disse forudsætninger – vedrørende klagers indskudsbeløb og manglende dokumentation af ejerskab af aktier – er forkerte og baseret på en række fejlagtige antagelser om de faktiske forhold og misforståelser vedrørende amerikansk ret.

I det følgende vil disse synspunkter blive tilbagevist enkeltvist.

### 1.1    Indsendelse af formular 5500 og formular 5500-EZ

Skattestyrelsen konkluderer i sin udtalelse, at eftersom IRS (de amerikanske skattemyndigheder) har oplyst, at de ikke har modtaget en formular 5500 for de i sagen omhandlede indkomstår, er der ikke indsendt en formular 5500 for de pågældende år. Som følge heraf antager Skattestyrelsen, at klagers aktiver beløb sig til højst 250.000 USD, og at pensionskassen derfor ikke kan have haft den fornødne kapital til at foretage de pågældende investeringer i danske aktier.

Imidlertid har IRS ikke modtaget en formular 5500 indleveret af klager, eftersom klager i henhold til amerikansk ret ikke var forpligtet til at indsende en formular 5500.

For det første er det (i fald der er tale om en "one-participant-plan" som klager) arbejdsgiveren eller "plan sponsor" og ikke pensionskassen selv, som indsender en formular til IRS i tilfælde af, at pensionskassens aktiver overstiger 250.000 USD ved udgangen af kalenderåret. Klager var således som pensionskasse aldrig forpligtet til at indsende en formular 5500 eller lignende.

For det andet ville det i øvrigt være forkert, såfremt en arbejdsgiver eller "plan sponsor" havde indsendt en formular 5500. En arbejdsgiver - eller "sponsor" - for en "one-participant pension plan" skal i den situation i stedet indsende en formular 5500-EZ (annual return of a one-participant (owners/partners and their spouses) retirement plan or a foreign plan).

Skattestyrelsen anfører i sin udtalelse, at man har indhentet oplysninger fra IRS om, hvorvidt klager har selvangivet med formular 5500, som ifølge Skattestyrelsen skal indsendes til IRS, såfremt pensionskassens aktiver overstiger 250.000 USD.

Skattestyrelsen oplyser, at IRS – på baggrund af Skattestyrelsens forespørgsler – har informeret om, at klager ikke har selvangivet med en formular 5500. På denne

baggrund lægger Skattestyrelsen herefter til grund, at klager alene havde aktiver for mindre end 250.000 USD, og dermed ikke var i besiddelse af den fornødne kapital til at købe danske aktier som påkrævet.

Skattestyrelsen konklusion er forkert, da man har anmodet om de forkerte oplysninger fra IRS.

I overensstemmelse med de overfor beskrevne amerikanske krav skulle Skattestyrelsen have anmodet IRS om at oplyse, om klagers "sponsor" og administrator havde indsendt en formular 5500-EZ - og ikke en formular 5500 - på vegne af klager i de pågældende år.

Således har SKAT baseret sin afgørelse på upræcise efterforskninger.

Herudover bemærkes det, at pligten til at indsende en formular 5500-EZ alene indtræder, såfremt aktivernes værdi på et specifikt tidspunkt – den 31. december – overstiger 250.000 USD. Kontoudtog og depotoversigter vil vise, at værdien af klagers aktiver flere gange i årets løb oversteg 250.000 USD.

### 1.2    Direkte indskud, overførsler og finansiering af aktiekøb

Skattestyrelsen har ligeledes misforstået de amerikanske regler, som fastsætter et loft for enkeltstående indskud i pensionskassen og et loft for de beløb, som en pensionskasse må modtage.

Skattestyrelsen anfører i pkt. 3 i sin udtalelse, at det årlige tilskud til en "one-participant plan" er begrænset til mellem 12.500 og 53.000 USD. Skattestyrelsen konkluderer på den baggrund, at klager ikke kan have haft den fornødne kapital til at købe aktierne, idet investeringerne oversteg loftet for klagers indskud.

Skattestyrelsens synspunkt er – delvist - korrekt for så vidt angår grænsen for, hvad den enkelte arbejdsgiver må *indskyde* i en "one-participant pension plan". Det er derimod forkert, at en "one-participant pension plan" alene må *modtage* det pågældende beløb hvert år.

Skattestyrelsens delvist korrekte synspunkt om indskudsgrænsen skyldes, at udgangspunktet fraviges, såfremt arbejdsgiveren, der indskyder penge i en amerikansk pensionskasse, har en ægtefælle, og de begge er over 50 år gamle. I denne situation hæves loftet for det samlede indskud i pensionskassen fra 53.000 USD til 106.000 USD.

Dernæst må det fremhæves, at amerikanske pensionskasser i henhold til gældende amerikansk ret er berettiget til at finansiere deres investeringer - herunder

den type investeringer som nærværende sag vedrører – på flere forskellige måder.

Dette indebærer blandt andet en mulighed for finansiering via årlige indskud, indskud fra "multiple" arbejdsgivere, "rollovers" eller overførsler fra andre pensionskasser, egentlig gældsoptagelse eller andre likviditetsskabende finansielle transaktioner. Ved hjælp af disse finansieringskilder fremskaffede klager den fornødne kapital til at købe aktierne.

Herudover gælder der intet indskudsloft i relation til overførsler af midler fra andre amerikanske pensionskasser. Således har klager i ubegrænset omfang haft mulighed for at modtage overførsler af midler fra andre amerikanske pensionskasser.

Det er således et udtryk for en misforståelse af amerikansk ret, at Skattestyrelsen anfører, at klager højst må modtage et årligt indskud på 53.000 USD.

Dernæst havde klager mulighed for at tilvejebringe den fornødne likviditet til køb af aktierne ved hjælp af finansielle transaktioner. Klagers kapitalbehov - på tidspunktet for køb af aktierne - udgjorde derfor langt under 100 % af værdien af de købte aktier som klager blev den retmæssige ejer af.

Klager var ikke underlagt hverken juridiske, finansielle eller tilsynsmæssige krav, der begrænsede dens evne til at opnå likviditet til finansiering af investeringer. Tværtimod er ekstern finansiering almindelig blandt investorer. Således var klager i stand til at købe aktierne, selv i den situation hvor værdien af klagers aktiver var lavere end værdien af de børsnoterede aktier, som klager ejede.

Dermed må Skattestyrelsens ændrede opfattelse anses for at bero på et særdeles spinkelt grundlag, der tilsyneladende hviler på en række forkerte forudsætninger vedrørende amerikansk skatteret og klagers muligheder for at opnå likviditet.

Skattestyrelsens udtalelse er således et udtryk for, at de har misforstået den måde loftet for enkeltstående indskud anvendes i relation til "multi-business" arbejdsgivere, ligesom de har forvekslet loftet for enkeltstående indskud med loftet for en amerikansk pensionskasses investeringskapital.

### 1.3 Krav vedrørende dokumentation af ejerskab af aktier og modtagelse af nettoudbytte

Ud over de to grundlæggende fejl i Skattestyrelsens argumentation - som er beskrevet ovenfor - har Skattestyrelsen fremsat yderligere en påstand om, at klager ikke har fremlagt dokumentation for at have ejet de pågældende aktier samt efter Skattestyrelsens opfattelse ikke har modtaget nettoudbytte fra dem.

Det bemærkes, at klager i forbindelse med den oprindelige anmodning om refusion af indeholdt udbytteskat allerede har indsendt alle de påkrævede bilag.

### 1.3.1   Dokumentation for ejerskab af aktier

Skattestyrelsens synspunkt om, at klager bør fremlægge yderligere dokumentation for ejerskabet af aktierne synes at bero på en misforståelse om, at klager skal have været ejer af et værdipapirdepot for at have været retmæssig ejer af aktierne. Således anfører Skattestyrelsen i sin afgørelse af 7. februar 2019, at:

> *"Alle aktier i danske børsnoterede selskaber er registreret hos VP Securities, som er den danske værdipapircentral. Til denne registrering hører et værdipapirdepot i en dansk bank oprettet i en aktionærs navn (..)".*

Herefter problematiserede Skattestyrelsen, at de efter en søgning i oplysninger fra VP Securities ikke var i stand til at identificere et værdipapirdepot i en dansk bank, hvor klager eller dennes custodian var registreret som ejer.

Skattestyrelsens brug af registreringerne hos VP Securities er uheldig, da oplysninger fra VP Securities alene er relevante for så vidt angår en række specifikke forhold relateret til værdipapirlovgivningen. Registrering hos VP Securities er således ikke relevant ved vurderingen af, om klager har krav på refusion af indeholdt udbytteskat i henhold til dansk skatteret.

Hverken klager eller dennes custodian er registreret som ejer af et værdipapirdepot i en dansk bank, og det er heller ikke noget krav med henblik på at dokumentere, hvem der er den retmæssige ejer.

Dernæst må det fremhæves, at det er helt sædvanligt, at hverken den retmæssige ejer eller dennes custodian har en direkte konto hos VP Securities. Skatteministeriet har da også offentligt erkendt, at anvendelse af oplysninger fra VP Securities kan medføre en ukorrekt skattemæssig behandling. Der henvises til rapporten "Early warning i forbindelse med værdipapirlån" af 23. september 2015. Det fremgår blandt andet af denne, at

> *"(..) SKAT ikke kan stole på de indberettede oplysninger, hvilket giver stor risiko for fejl."*

De af Skattestyrelsen anvendte forudsætninger vedrørende betydningen af VP Securities' registreringer i forbindelse med tilbagesøgning af indeholdt udbytteskat er derfor forkerte, og de kan ikke danne grundlag for afgørelsen om tilbagekaldelse.

### 1.3.2 Misforståelse af sammenhængen mellem udbyttebetaling og aktieværdien

Skattestyrelsen anfører ligeledes i pkt. 3.2.3 i afgørelsen - "Aktieudbytte og indeholdt udbytteskat" - at det er deres opfattelse, at udbytterne vedrørende de aktier, der fremgår af anmodningerne, ikke er tilgået klager, idet klagers kapitalgrundlag:

> "anses for at være under 250.000 USD ultimo året, idet RTLR ikke har indsendt FORM 5500 til IRS".

På denne baggrund konkluderer Skattestyrelsen, at nettoudbyttet ikke kan være tilgået klager.

Således er Skattestyrelsen tilsyneladende af den fejlagtige opfattelse, at værdien af en investors aktiver stiger med det beløb, der modtages som udbytte på de ejede aktier. Skattestyrelsen har imidlertid misforstået de økonomiske risici og fordele for den retmæssige ejer af aktier i selskaber, både før og efter udbetalingen af udbytte.

Skattestyrelsen opfattelse er korrekt så langt, at det udbytte, der udbetales til en investor, forøger det kontante indestående på dennes konto. Imidlertid vil forøgelsen af det kontante indestående blive udlignet af et fald i aktiekursen, efter udbetalingen af udbyttet.

Dette fald i aktiekursen opstår, eftersom en aktie, hvorpå der allerede er udbetalt udbytte, er mindre værd end en aktie, hvorpå der endnu ikke er udbetalt udbytte (forudsat at selskabets økonomiske forhold ikke ændrer sig på anden vis). Som følge heraf vil den økonomiske fordel ved at modtage udbytte - som oftest - blive udlignet af faldet i aktiens værdi efter udbetalingen af udbytte.

Den bedste og mest nøjagtige analyse af den forventede værdiændring opnås ved at sammenligne lukkekursen (på den børsdag, som ligger før udbyttedatoen) med åbningskursen (på udbyttedagen).

Et eksempel på dette for så vidt angår Roadcraft Technologies' investeringer i år 2014 og 2015 fremlægges som bilag 1.

Som det fremgår af bilaget, er den samlede værdi af klagers aktiver faldet med kr. 163.450.351.

De af Skattestyrelsen anvendte forudsætninger vedrørende værdien af Roadcraft Technologies' aktiver efter udbetalingen af udbytte er derfor forkerte.

• • •   • • •

Det fremgår således, at de forudsætninger, som Skattestyrelsen baserer sin argumentation på, er forkerte, idet de hviler på en misforståelse af amerikansk ret og fejlagtige antagelser af faktiske forhold, ligesom det fremgår, at klager har ejet de omhandlede aktier, og har været berettiget til at modtage refusion af den indeholdte udbytteskat.

**BILAG**

Bilag 2     Opgørelse af værdiændring fra lukkekurs til åbningskurs

Med venlig hilsen
**TVC Advokatfirma**

...................................................     ...................................................
**Kasper Bech Pilgaard**                                **Kasper Bech Pilgaard**
Partner, Advokat (L), LL.M.                             Partner, Advokat (L), LL.M.