**CL-2018-000297, CL-2018-000404, CL-2018-000590 & CL-2019-000487**

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURT OF ENGLAND AND WALES**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

**BETWEEN:**

**SKATTEFORVALTNINGEN**
**(the Danish Customs and Tax Administration)**

**Claimant**

**-and-**

**SOLO CAPITAL PARTNERS LLP (in special administration) & OTHERS**

**Defendants**

—————————————————

**CLAIMANT'S REPLY TO THE VALIDITY DEFENCES**

—————————————————

**CONTENTS**

(I)     INTRODUCTION ...................................................................................................1
(II)    THE DWF DEFENCE .........................................................................................5
(III)   THE SANJAY SHAH DEFENCE.......................................................................29
(IV)    THE ED&F MAN DEFENCE ............................................................................38
(V)     THE PS/GOC DEFENCE....................................................................................40
(VI)    THE FLETCHER, GODSON AND JAIN DEFENCE................................................42
(VII)   THE HK DEFENCE ............................................................................................48

## (I)     INTRODUCTION

1.     This is the Reply of the Claimant ("**SKAT**") to Defences to SKAT's Further Particulars Regarding the Validity of the WHT Refund Applications dated 28 February 2020 (the "**Validity Particulars**") filed by:

    1.1.     The DWF Defendants on 12 June 2020 (as amended on 4 September 2020) (the "**DWF Defence**");

    1.2.     ED&F Man Capital Markets Limited ("**ED&F Man**") on 12 June 2020 (the

1

"**ED&F Man Defence**");

1.3. The PS/GOC Defendants on 12 June 2020 (the "**PS/GOC Defence**");

1.4. The Fletcher, Godson and Jain Defendants on 10 July 2020 (the "**Fletcher, Godson and Jain Defence**");

1.5. The Sanjay Shah Defendants/Usha Shah on 13 July 2020 (as amended on 16 October 2020) (the "**Sanjay Shah Defence**"); and

1.6. The HK Defendants on 21 August 2020 (as amended on 16 October 2020) (the "**HK Defence**").

(collectively, the "**Validity Defences**" and the "**Validity Defendants**")

2. Save where otherwise stated or where the context otherwise requires, in this Reply:

2.1. Abbreviations and definitions are adopted from SKAT's Fourth Amended Particulars of Claim (the "**4APOC**"), the Validity Particulars and the Validity Defences. Where abbreviations and definitions have been adopted from the Validity Defences, this is for convenience only and without admission.

2.2. Any headings are for convenience only and, to the extent that they are adopted from the Validity Defences, no admission is made or should be inferred from them.

3. Save insofar as the Validity Defences consist of admissions, and save insofar as express admissions are made below, SKAT requires the Validity Defendants to prove the matters set out in their respective Validity Defences.

4. SKAT relies on this Reply in its entirety against each Validity Defendant. The division of this Reply into sections by reference to the Validity Defences is for convenience only. Where an issue is addressed in relation to one Validity Defence, it is not necessarily addressed again in relation to similar points raised in other Validity Defences.

5. Notwithstanding the lengthy pleadings in relation to the validity of the WHT Refund Applications, the central elements of SKAT's case remain straightforward:

5.1.   Dividends paid by Danish companies to foreign shareholders were subject to taxation under section 2 of the Danish Corporation Tax Act and section 2 of the Danish WHT Act. Tax was withheld at source by the Danish companies.

5.2.   Shareholders who received dividends therefore suffered taxation on those dividends. However, various double tax treaties between Denmark and other states limited the extent to which Denmark was permitted to tax dividends paid to shareholders who were resident in those foreign states.

5.3.   Where the tax withheld exceeded the taxation permitted under those double tax treaties, the shareholders were entitled to a refund of the excess tax.

5.4.   In order to be entitled to a refund, therefore: (i) the applicant must have been liable to taxation in Denmark pursuant to one of the relevant Danish statutes; (ii) had to have received a dividend; (iii) upon which tax had been withheld; and (iv) the tax withheld had to have exceeded the tax due under an applicable double tax treaty.

5.5.   The WHT Refund Applicants did not own shares, did not receive dividends, no tax had been withheld (or paid to SKAT) on their behalf and they were not liable to taxation in Denmark.[1] Accordingly, they were not entitled to a "*refund*" of tax from SKAT.

5.6.   Furthermore, the double tax treaties only provided tax relief to "*beneficial owners*" of dividends. The nature of the arrangements involving the WHT Refund Applicants meant that even if they had satisfied the other criteria, they were not beneficial owners of any dividends.

6.   The Validity Defendants' Replies seek to advance a number of remarkable propositions to support their case that the WHT Refund Applications were valid. The Validity Defendants allege that:

---

[1] The position is different in relation to some ED&F Man Applicants, as set out further in the Validity Particulars and in paragraphs 107 to 113 below. In short, in some cases, ED&F Man Applicants may have owned shares in Danish companies, received dividends upon those shares and been liable to taxation in Denmark but they were not entitled to relief under the double tax treaties because they were not the beneficial owners of the dividends they received.

3

6.1.   A person who enters into a transaction to buy shares becomes a shareholder whether or not the purported seller owns any shares.[2] A purchaser who enters into such a contract receives a dividend upon a custodian crediting them with a dividend.[3]

6.2.   Accordingly:

(a)   Share ownership may exceed the total issued share capital of a Danish company.[4]

(b)   The value of "*dividends*" may exceed the dividends declared and distributed by a Danish company.[5]

(c)   There may be a valid entitlement to "*refund*" of "*tax*" even though a transaction had not, and could not have, resulted in any tax being paid to SKAT.

6.3.   Section 69 B(1) of the Danish WHT Act, which expressly states that it applies to "*dividends… of which withholding tax has been withheld*,[6] did not require any tax to have actually been withheld in order for there to be a valid application for refund of WHT.[7]

6.4.   Tax liability and entitlements to receive "*refunds*" from SKAT were determined by market practice.[8] It was for SKAT to "*derogate from*"[9] the market practice, if it wished to do so, by establishing "*specific detailed criteria*".[10]

6.5.   The principle that one cannot sell property that one does not own and give good title is "*no more than trite law*", which does not apply to "*complex financial transactions involving shares*".[11]

---

[2] The Sanjay Shah Defence, paragraph 15.1 and 16.4; the DWF Defence, paragraph 62F and 74.
[3] The DWF Defence, paragraph 73.
[4] The DWF Defence, paragraphs 10 and 75.1; the Sanjay Shah Defence, paragraphs 16.12 and 32.
[5] The DWF Defence, paragraph 10 (second sentence).
[6] SKAT's translation of this provision is in Validity Particulars, paragraph 6 and the DWF Defendants' translation is in the DWF Defence, paragraph 21.
[7] The DWF Defence, paragraphs 22 and 67.
[8] The DWF Defence, paragraphs 7 to 18.
[9] The DWF Defence, paragraph 14.
[10] The DWF Defence, paragraph 15.
[11] The Sanjay Shah Defence, paragraph 33.

7.      For the reasons set out in more detail below, these propositions were (and are) fundamentally misconceived as a matter of Danish law. In summary:

7.1.    "*Dividends*" are distributions made by a company to its current shareholders.

7.2.    The WHT Applicants did not own shares in a Danish company, therefore they did not receive any dividends.

7.3.    No *tax* was withheld from any amounts received by the WHT Applicants (or, more accurately, credited to their accounts).

7.4.    Accordingly, the WHT Applications were making a claim for "*refund*" of dividend tax that had not been, and conceivably could not have been, paid to SKAT.

### (II)    THE DWF DEFENCE

#### A.    MARKET PRACTICE

8.      In paragraph 7 of the DWF Defence, the DWF Defendants allege that the "*Trading Strategy*" described in Annex B to each of the DWF Defendants' Amended Defences was "*valid*", "*carried out lawfully*" and "*in accordance with well-established market practice*".[12] As to this:

8.1.    The DWF Defendants are required to prove that the Trading Strategy accurately describes the transactions underlying the Relevant WHT Applications.[13]

8.2.    It is denied that the transactions that formed part of the Trading Strategy were "*intended to have legal, binding effect and to be performed by the relevant parties*" as alleged in paragraph 7.2 of the DWF Defence. Paragraphs 15.5 and 17.3 of the Validity Particulars are repeated.

9.      Paragraph 8 of the DWF Defence is an embarrassing plea since it does not specify the market in relation to which the market practice set out in paragraphs 8.1 to 8.10 is alleged. Without prejudice to that position, SKAT's case as to the elements of the alleged market practice is as follows:

---

[12] For the avoidance of doubt, SKAT does not admit these allegations.
[13] As defined in paragraph 4.2 of the DWF Defence.

**Elements of the alleged market practice in relation to shares**

10.    SKAT admits paragraph 8.1 of the DWF Defence insofar as it relates to Denmark.

11.    As to the last sentence of paragraph 8.2 of the DWF Defence, section 72(3) of the Danish Financial Business Act required custodians of an omnibus account to keep a register clearly recording their individual clients' ownership of the shares.[14]

12.    As to the last sentence of paragraph 8.3 of the DWF Defence, foreign custodians were permitted to open omnibus security accounts with VP Securities only if:[15]

12.1.    they were organised in EU Member States and they: (a) held a license in an EU Member State as a bank, a mortgage-credit institution, a securities dealer or an investment management company; and (b) either had established a branch in Denmark or had notified the Financial Supervisory Authority of their home jurisdiction that they would deliver cross-border services in Denmark; or

12.2.    they were institutions organised in non-EU Member States and: (a) had been granted a license in a non-EU Member State as a credit institution, an investment firm or a management company; and (b) had either obtained a license from the Danish Financial Supervisory Authority ("**DFSA**") or had established a branch in Denmark subject to the financial supervision of the DFSA.

13.    The first sentence of paragraph 8.4 of the DWF Defence is admitted. As to the second sentence:

13.1.    In relation to dematerialised shares, "*fungibility*" entails that shares are indistinguishable from, and therefore interchangeable with, one another.

13.2.    As to footnote 3 (on page 5), SKAT's case is that dividends must be received from/traceable to the relevant Danish company (not the CSD). In this context, what is required is that the WHT applicant is the owner of the shares at the time a dividend is declared. Paragraph 23 of the Validity Particulars is repeated.

---

[14] See Response 1(2) of SKAT's Response dated 6 May 2020 to Request for Further Information by the DWF Defendants dated 2 April 2020.

[15] See Sections 1(3), 30, 31 and 33 the Danish Financial Business Act as in force from time-to-time, in particular Consolidated act. no. 885 of 8 August 2011; Consolidated act no. 705 of 25 June 2012; Consolidated act no. 948 of 2 July 2013; Consolidated act no. 928 of 4 August 2014; Consolidated act no. 182 of 18 February 2015.

13.3. Notwithstanding the fungibility of dematerialised shares, a shareholder who receives a dividend paid by a listed Danish company will have back-to-back rights through a chain of contracts to VP Securities and thus to the company. It *is* therefore possible to follow or "*trace*" the rights of shareholders to VP Securities, and thus to the company, through a "*chain of custodians*".[16] When a dividend is paid by a company on intermediated securities, the company will make a payment to VP Securities,[17] which will make a corresponding payment to the custodian(s), who will make a corresponding payment to the shareholder(s). In this context, the term "*trace*" does not refer to any identification or segregation of the movement of individual shares through a chain of custodians. Rather, it refers to the connection between the shareholder and the company, which may be (in the case of intermediated securities) through back-to-back contracts with custodians.

13.4. As to paragraph 8.5, it is admitted that it is not possible meaningfully to segregate dividend distributions so as to assign them to identifiable individual shares. This is due to the fungibility of both shares and money. However, what is relevant for the present purposes is the attribution of dividends distributed by a company to the persons who were the owners of shares at the time the dividend was declared.

14. As to paragraph 8.6 to 8.8 of the DWF Defence, custodians who dealt with intermediated securities through omnibus accounts pursuant to which they undertook certain safekeeping and record-keeping responsibilities were subject to legal regulation in accordance with which they kept detailed ledgers of the interests of individual clients and reconciled the securities held by their clients with the securities held by the custodian at the CSD or with another 'upstream' custodian.[18] This ensured that the custodian held a sufficient number of securities to be delivered pursuant to its clients' instructions.   In addition, there were a number of well-recognised 'best practices' that were followed by custodians. These included the 17 principles

---

[16] Depending on the circumstances, there may be evidential or practical difficulties in doing so.
[17] As to which see paragraph 24 of the Validity Particulars.
[18] The Danish Financial Business Act, which implemented relevant provisions of MiFID (Directive 2004/39/EC of April 21 2004); ministerial order no. 428 of 9 May 2007.

recognised by the International Securities Services Association in a document entitled 'Financial Crime Compliance Principles for Securities Custody and Settlement'.[19]

15.    As to paragraph 8.9 of the DWF Defence:

15.1.    Paragraph 8.9.1 of the DWF Defence is denied. Before 1 November 2012, both covered and naked short-selling of shares was prohibited in Denmark in relation to shares in banks.[20]

15.2.    As to paragraph 8.9.2, SKAT's case as to the legality and legal consequences of short-selling in Denmark is set out in its Response dated 6 May 2020 to the DWF Defendants' Request for Further Information dated 2 April 2020: see response to Request 4.

16.    As to paragraph 8.10 of the DWF Defence, SKAT's case as to the legal consequences of a stock loan transaction in Denmark is set out in its Response dated 20 May 2020 to the Sanjay Shah Defendants' Request for Further Information dated 21 April 2020: see response to Request 3.

**Conclusions sought to be drawn from the alleged market practice in relation to shares**

17.    As to the first sentence of paragraph 10 of the DWF Defence:

17.1.    It is not possible as a matter of Danish law for there be more shares in circulation than the number of shares issued by a Danish company. Paragraph 14.1 of the Validity Particulars is repeated.

17.2.    This proposition is reflected, *inter alia*, in:

(a)    the general principle of Danish law that a seller of shares can only transfer ownership of the shares that the seller owns. Paragraph 15.1 of the Validity Particulars, which is admitted in paragraph 76.1 of the DWF Defence, is repeated;

(b)    the requirement in section 4 of the **"Danish Companies Act"**[21] that a company admitted to public trading must have a fixed share capital;

---

[19] The first edition of this document was published in August 2015 and a second revised edition was published in May 2019.
[20] See Section 39, Danish Securities Trading Act and Executive Order no. 1004 of 10 October 2008.
[21] As in force from time-to-time, in particular Consolidated Act no. 610 of 28 April 2015 and Consolidated Act no. 1089 of 14 September 2015.

    (c)   the requirement in section 28 of the Danish Companies Act that the articles of association of a Danish company must stipulate the aggregate nominal share capital of the company and either the total number of shares of the company or the nominal value of each of its shares;

    (d)   the requirement in sections 154 and 155 of the Danish Companies Act that the total share capital and number of shares of a company must be adopted by the General Meeting (or Board of Directors) of the company; and

    (e)   the requirement in section 162 of the Danish Companies Act that all share subscriptions must be made in writing.

17.3.   The allegation that "*ownership interests in shares (of the same class from the same issuer) might exceed the shares in issue*":

    (a)   is vague as to what is meant by "*ownership interests*";

    (b)   does not follow from the elements of market practice alleged in paragraphs 8 and 9 of the DWF Defence; and

    (c)   is not supported by the European Commission document cited in footnote 9 (on page 8) of the DWF Defence.

18.   The second sentence of paragraph 10 of the DWF Defence is denied. As a matter of Danish law, the total value of "*dividends*" within the meaning of section 69 B(1) of the WHT Act cannot exceed the total value of dividends distributed by a Danish company. Paragraph 17.1 above is repeated.

19.   As to paragraph 11:

19.1.   The distinction between purchases of shares from 'short' and what some of the Defendants call 'long' sellers is not "*fundamentally*" (or at all) "*incompatible with the explicit decisions of EU regulators*". That distinction is drawn by, *inter alia*, Article 12 of the Short Selling Regulation,[22] which provides that short selling of shares admitted to a trading venue[23] is only permissible if:

---

[22] Regulation (EU) No 236/2012 of the European Parliament and of the Council of 14 March 2012 on short selling and certain aspects of credit default swaps.
[23] As defined in Article 2(l) of the Short Selling Regulation.

(a)   the seller has borrowed the share or has made alternative provision resulting in a similar legal effect;

(b)   the seller has entered into an agreement to borrow the share or has another "*absolutely enforceable claim under contract or property law*" to be transferred ownership of a corresponding number of securities; or

(c)   the seller has an arrangement with a third party under which the third party has confirmed that the share has been located and has taken necessary measures for the seller to have a reasonable expectation that settlement can be effected when due.

19.2.   The requirement that a refund of WHT is only available to those persons who received dividends from/traceable to the company, in respect of which tax had been withheld to be paid to SKAT, is not incompatible with any policy choice of EU regulators (including in relation to the dematerialisation and fungibility of shares).

20.   The DWF Defendants allege that SKAT was aware of the alleged market practice, "*trading activity such as the Trading Strategy*" and "*its implications for the Danish WHT regime*": see the last sentence of paragraph 12, the first sentence of paragraph 18, and paragraphs 18.2 and 62C of the DWF Defence. The relevance of such awareness is denied:

20.1.   Market practice, even if it is market practice that SKAT was aware of, cannot create liability to suffer taxation or exempt a person (who would otherwise be liable) from taxation: see paragraph 27.1 below.

20.2.   It is denied that SKAT's alleged failure to derogate from market practice creates or determines tax liability (or entitlement to relief from tax liability) that does not otherwise exist: see paragraph 27.2 below.

20.3.   The content and requirements of Danish tax law were not capable of being varied by the SKAT's alleged awareness of activities such as the Trading Strategy or SKAT's alleged failure to take steps in respect of them: see paragraphs 27.1 and 27.2 below.

**Alleged market practice in relation to dividends**

21.   As to paragraphs 13.1 and 83 of the DWF Defence:

10

21.1.  Section 19(1) of the Danish Sale of Goods Act is a default rule of contractual construction. It provides that, unless the parties have agreed otherwise,[24] a contract for the sale of shares will be interpreted as having transferred to the buyer the right to receive any dividends that have not fallen due for payment at the time of conclusion of the contract.

21.2.  This provision concerns the contractual rights and obligations between the parties to a share sale transaction. It does not deal with the transfer of ownership of shares or dividends.

21.3.  In any event, if the "seller" did not own the shares that he purported to sell, the "buyer" cannot become the owner of those shares and neither of them will receive a dividend.

21.4.  Save as aforesaid, paragraph 13.1 is admitted.

22.  As to paragraph 13.2 of the DWF Defence, it is admitted and averred that a dividend paid by a Danish company net of WHT would (as a matter of usual market practice) be received by the custodian and then the same amount would be paid to the investor. It is denied that a dividend is paid by a custodian. Dividends are paid by the issuer of shares and the custodian has no influence on the amount paid, the amount of tax withheld or the calculation of either. It is further denied that a custodian might deduct "*the maximum rate of WHT*" or indeed make any deduction.

23.  As to paragraph 13.3 of the DWF Defence:

23.1.  As to the first sentence, whether an investor acquires a directly enforceable right to the dividend against the issuer depends on various circumstances. For example, if dividends are declared but not paid, a shareholder will have a directly enforceable claim against the issuer for unpaid dividends.

23.2.  As to the second sentence:

(a)  When dividends are paid by a listed Danish company to VP Securities, a shareholder will have back-to-back rights to receive the dividend through a chain of contracts to VP Securities.

---

[24] Section 1(1) of the Danish Sale of Goods Act expressly provides that its provisions "*apply unless otherwise agreed, expressly or by implication, in a contract or required by trade usage or other custom*".

(b)  It is denied that custodians credited an investor with dividend "*calculated by reference to* the dividend per share rate declared by the issuer" (emphasis added). Rather, custodians credited investors with the dividends that they received from the issuer (directly from VP Securities or otherwise) from which the issuer had withheld tax. In Denmark (and other jurisdictions including in the United Kingdom), custodians were required to do so as a matter of law.[25] Accordingly, there was no need for a custodian to "*calculate*" the amount to be credited to an investor by reference to the issuer's declared dividend per share.

(c)  As to the phrase "*net of the maximum rate of WHT*",[26] a custodian will credit a shareholder's account with any dividend payments made by the company. The amount credited will depend on the payment actually received by the custodian and not on any calculation or deduction made by the custodian.

23.3.  As to the last sentence, it is not alleged by SKAT that Danish law required dividend distributions to be segregated or assigned to specific individual shares: paragraphs 13.3 and 13.4 above are repeated.

24.  As to paragraph 13.4 of the DWF Defence, as explained in paragraph 19.1 above, short selling is permissible in Denmark only if: (a) the seller has borrowed the shares; or (b) the seller has entered into an agreement to borrow the shares; or (c) the seller has an arrangement with a third party under which the third party has confirmed that the share has been located and measures have been taken for the seller to have a reasonable expectation that settlement can be effected when it is due.

25.  As to paragraph 13.5 of the DWF Defence, market participants in Denmark regarded payments made by a custodian to an investor as dividends on the basis that and only if: (a) the investor owned shares in the Danish company and; (b) the payment by the custodian to the investor reflected a dividend payment received by the custodian from/in a manner traceable to the company. For the avoidance of doubt, a custodian

---

[25] See sections 71 and 72 of the Danish Financial Business Act, section 11 of ministerial order no. 428 of 2007, and section 3 of ministerial order no. 921 of 2017. In the United Kingdom, the relevant provisions of MiFID were implemented through the FCA Handbook, see, e.g. SYSC 9.1.1R and SYSC 10.1.3R as in place at the relevant time.
[26] Emphasis added.

cannot pay a "*dividend*" by means of a credit to the account of a person who does not own shares.

26.     As to paragraph 13.6 of the DWF Defence, paragraphs 13.3 and 13.4 above are repeated.

**Relationship between market practice and Danish tax law**

27.     As to paragraphs 14 to 16 of the DWF Defence:

27.1.     Article 43 of the Danish Constitution provides that "*[n]o taxes shall be imposed, altered or repealed except by statute*".[27] The source of all tax liability in Denmark is legislation. Market practice cannot create liability to suffer taxation, nor can it exempt a person from tax liability.

27.2.     It is denied that market practice is determinative of tax liability (or entitlement to relief from tax liability or the entitlement to reclaim WHT purportedly paid).

27.3.     In any event, for the reasons provided in paragraphs 13 and 25 above, it is denied that SKAT's case is inconsistent with the fungible nature of dematerialised shares or with any established market practice in Denmark.

28.     As to paragraph 17 of the DWF Defence, none of the matters listed is inconsistent with Danish tax law concerning the liability of any person to suffer taxation on a dividend or the fact that the entitlement of such a person to a refund of WHT depended on the ownership of shares. Further:

28.1.     As to paragraph 17.1, SKAT does not allege that individual shares could be differentiated from each other or that dividend payments could be segregated and assigned to individual shares. Paragraph 13.4 above is repeated.

28.2.     As to paragraph 17.2 and paragraph 73.3 of the DWF Defence, the liability of any person to suffer taxation upon the receipt of a dividend pursuant to section 2 of the Danish WHT Act or section 2 of the Danish Corporation Tax Act is a matter of Danish law. That is so notwithstanding that a person may have acquired shares held through a foreign custodian or under a contract governed by a law other than Danish law.

---

[27] See paragraph 19.2 of the DWF Defence.

28.3.  As to paragraph 17.3 of the DWF Defence, the relevance of the Bank Scheme (which was a different scheme in respect of different applications which were processed differently) is denied. Without prejudice to that:

(a)  The Bank Scheme was implemented in stages. It was in place in or around 2001 and further implemented over the years that followed. Save as aforesaid, the first sentence is admitted.

(b)  The remainder of the paragraph is denied for the reasons set out in paragraph 66.4 below.

28.4.  As to paragraph 17.4 of the DWF Defence:

(a)  *Officialprincippet* is a principle of Danish public law that requires public authorities to obtain necessary information before making their decisions.

(b)  Its alleged relevance to the validity of WHT Refund Applications is not understood and it is, in any event, denied that it was of relevance. Neither the liability of a person to suffer taxation upon receipt of a dividend nor the entitlement of such a person to a refund of WHT depended on SKAT's compliance with the *officialprincippet*.

(c)  In any event, neither the liability of a person to suffer taxation upon receipt of a dividend nor the entitlement of such a person to a refund of WHT depended upon the ability of SKAT to "*differentiate otherwise fungible dividends on Danish shares*": see paragraph 13 above.

29.  As to paragraph 18 of the DWF Defence:

29.1.  The expression "*different types of dividend*" is vague and unparticularised. A dividend is defined by s 16 A(1) of the Danish Tax Assessment Act. Subject to the detailed provisions of that section, a dividend is a distribution by the company to its current shareholders or members. That definition cannot be and was not altered by market practice. In any event, there was no market practice in Denmark that required a departure from that meaning.

29.2.  It is denied, if it is alleged, that recipients of payments that not constitute dividends (as defined above) were liable to suffer taxation under section 2 of the WHT Act or section 2 of the Danish Corporation Tax Act.

14

29.3.  It is denied that SKAT chose not to distinguish between valid and invalid claims or affirmed or approved such practices or that SKAT is to be taken to have made such a choice. The content and requirements of Danish tax law were not capable of being varied by the matters alleged.

30.    As to paragraph 18.3 of the DWF Defence:

30.1.  It is denied, if it is alleged, that SKAT or the Kingdom of Denmark introduced any measures in March 2016 or May 2020 or at any other time that acknowledged that the previous regime did not require a dividend to be paid by/traceable to a Danish company.

30.2.  By way of example, the Ministry of Taxation's response to the Early Warnings dated 23 September 2015 (i.e. well in advance of May 2020) stated, in terms, that:

(a)    the person entitled to refund of WHT is "*recipient of the money <u>from a company</u>, i.e. the party who is the beneficial owner [of dividend] ...*"[28]: see paragraph 100.3(c)(i) below; and

(b)    "*the beneficial owner [of dividend] is the current shareholder i.e. the shareholder at the time of the declaration of the dividend*": see paragraph 100.3(c)(ii) below.

**B.    INTERPRETATION OF DANISH AND INTERNATIONAL TAX RULES**

31.    As to paragraph 19.1 of the DWF Defence:

31.1.  As to the first sentence, the Danish Constitution requires tax liability to be based on legislation.  Paragraph 27.1 above is repeated. In interpreting a tax statute, Danish Courts may take into account any relevant market practice. It does not follow, and SKAT denies, that Danish tax laws are "*interpreted as being in accordance with, and/or as giving effect to, prevailing market practice*".

31.2.  It is denied that Danish tax law "*adapts itself in its application to... any prevailing market practices*". The correct position is, as explained above, that

---

[28] Emphasis added.

the Danish Court would take into account any relevant market practice. Save as aforesaid, SKAT admits the second sentence of paragraph 19.1.

31.3.   The last sentence of paragraph 19.1 is admitted. However, the fact that a market practice may be "*permitted*" (in the sense that the practice itself does not contravene any law or regulation) says nothing about its tax treatment. Paragraph 8 above is repeated.

32.    As to paragraph 19.3 of the DWF Defence:

32.1.   Double tax treaties signed and ratified by Denmark are published in the Law Gazette C (*Lovtidende C*), not in the Official Gazette (*Statstidende*). Save as aforesaid, SKAT admits the first sentence.

32.2.   As to the second and third sentences:

(a)   It is admitted that, in the absence of domestic legislation, double tax treaties cannot impose tax liability.

(b)   However, Danish legislation may impose tax liability by reference to the terms of a double tax treaty.

(c)   Save as aforesaid, the second and third sentences of paragraph 19.3 of the DWF Defence are denied.

33.    As to paragraphs 20, 101.3, 110 and 111 of the DWF Defence:

33.1.   Section 3 of the Danish Tax Assessment Act, which introduced a statutory anti-abuse provision in Danish law, came into effect from 1 May 2015.

33.2.   Prior to 1 May 2015, Danish law applied a general rule that transactions set up to gain an advantage using a specific, favourable, tax rule could be set aside or disregarded for the purposes of taxation.

33.3.   At all relevant times, international tax law also recognised a general principle that the benefit of a double tax treaty would not be available to a WHT applicant if the sole or main purpose of their participation in the relevant transaction(s) (or the sole or main purpose of the transaction(s)) was to secure favourable tax treatment and such treatment would be contrary to the object and purpose of the relevant Double Tax Treaty. This principle is reflected in

the OECD Commentary (2010)[29] to Article 1, where it is said at paragraph 9.5 that:

> "*A guiding principle is that the benefits of a double taxation convention should not be available where a main purpose for entering into certain transactions or arrangements was to secure a more favourable tax position and obtaining that more favourable tax treatment in these circumstances would be contrary to the object and purpose of the relevant provisions.*"

## C.   VALIDITY OF THE WHT APPLICATIONS

### Requirements for a valid WHT application

34.   As to the translation of section 69 B(1) in paragraph 21 of the DWF Defence (and paragraph 66 of the DWF Defence):

34.1.   It is admitted that the Danish word "*anmodning*", which is used in section 69 B(1), may be translated as "*request*" rather than "*claim*".

34.2.   Nevertheless, and insofar as the distinction is material (which is denied), a WHT application was in substance a "*claim*" rather a "*request*":

   (a)   If the requirements of section 69 B(1) are satisfied, a WHT applicant was entitled to receive a refund from SKAT;

   (b)   Section 69 B(1) expressly required SKAT to refund the WHT within six months from the date on which SKAT received the WHT application;

   (c)   SKAT's standard form by reference to which WHT applications were made (Form No 06.003) was entitled "*Claim to Relief from Danish Dividend Tax*" (emphasis added).

35.   As to paragraph 22 of the DWF Defence:

35.1.   The three requirements for a valid WHT application that are pleaded in paragraph 22 are admitted (without making any admissions as to the meaning the DWF Defendants ascribe to the term "*dividend*").

---

[29] See also OECD Commentary (2014) to Article 1, paragraph 9.5.

35.2.  Section 69 B(1) expressly[30] imposed a fourth requirement: tax must have been withheld from the dividends received by the applicant pursuant to sections 65-65D of the WHT Act. Paragraph 7.3 and Section E (on page 11) of the Validity Particulars are repeated.

35.3.  The DWF Defendants were at all times aware that, due to the circular and self-cancelling nature of the purported trades, no tax could conceivably have been withheld and paid to SKAT in respect of the dividends allegedly received by their clients in the Solo WHT Scheme or the Donaldson/LaRosa WHT Scheme. Accordingly, there could not be a valid claim for the refund of tax never paid in the first place.

**Dividends: Danish law**

36.  Paragraph 24 of the DWF Defence is admitted.

37.  As to paragraph 25 of the DWF Defence:

37.1.  SKAT denies the first sentence. In addition to section 16A of the Danish Tax Assessment Act, the proposition that "*dividends*" are distributions made by a company to its current shareholder or members is supported by:

(a)  The Danish Companies Act, which repeatedly uses the term "*dividend*" to refer to distributions made by a company to its shareholders: see, for example, sections 179 to 182 of the Danish Companies Act.

(b)  Danish cases (including from the Danish Supreme Court).

37.2.  As to the second sentence, it is admitted that section 16A of the Danish Tax Assessment Act was first enacted before shares were dematerialised in Denmark. However, section 16A has been amended since the dematerialisation of shares in Denmark: see, for example, Act no. 1414 of 21 December 2005, which added the word "*current*" in section 16A(1).

37.3.  As to the third sentence, insofar as is relevant, section 16A, properly construed, provides an exhaustive list of payments that may constitute "*dividends*".

---

[30] The translation of section 69 B(1) in paragraph 21 of the DWF Defence opens with the words "*tax withheld according to sections 65-65D from payments of dividend…*".

38. The second sentence of paragraph 26 and paragraph 85.3 of the DWF Defence are denied. Exposition of Danish cases is a matter for expert evidence. Without prejudice to that position, the reason why payments made by a borrower of shares to the lender reflecting the dividends distributed by the company have been considered to be "*dividends*" in the Danish cases is because, under Danish tax law, the lender remains the owner of shares (unless the borrower has sold the shares[31]).  SKAT's Response dated 20 May 2020 to the Sanjay Shah Defendants' Request for Further Information dated 21 April 2020 (response to Request 4) is repeated.

39. As to paragraph 27, the requirement that a "*dividend*" must be paid by/traceable to the issuer is implicit the requirement in section 16A(1) that dividends are "*anything that the company distributes to its current shareholders or members*" (emphasis added).

40. Paragraph 28 of the DWF Defence is denied. No dividend was paid by the relevant Danish companies to the Relevant WHT Applicants. Paragraphs 37 to 39 above are repeated.

**Dividends: International tax law**

41. As to paragraph 29 of the DWF Defence, paragraph 32.2 above is repeated.

42. Paragraph 30 of the DWF Defence is admitted.

43. The allegation in the first sentence of paragraph 31 that Article 10(5) of the Denmark-US Treaty "*widens the definition of "dividends" for the purposes of WHT applications*" is vague. It is denied, if it is alleged, that (insofar as is relevant) Article 10(5) has any application (for the purposes of Danish taxation) to a wider class of payments than those defined as dividends under Danish law. The meaning of the term "*dividend*", insofar as relevant, is the same under the Denmark-US Treaty and Danish domestic law.

44. As to paragraphs 31.1 of the DWF Defence:

44.1. The extract from Article 10(5) set out in paragraph 31.1 of the DWF Defence consists of two parts: (i) "*income from other rights, not being debt-claims, participating in profits*"; and (ii) "*income that is subject to the same taxation*

---

[31] In which case, the buyer will be considered to be the owner for tax purposes.

*treatment as income from shares by the laws of the State of which the payor is a resident*".

44.2.    The DWF Defendants do not allege that payments received by the Relevant WHT Applicants are covered by the first part: see paragraph 32.1 and 32.2 of the DWF Defence. Its relevance, if any, is not therefore understood.

45.    As to paragraph 31.2 of the DWF Defence:

45.1.    It is admitted that Article 10(3) of OECD Model Convention refers to "*income from other corporate rights which is subjected to the same taxation treatment as income from shares*"[32] whereas Article 10(5) of the Denmark-US Treaty uses the words "*income that is subject to the same taxation treatment as income from shares by the laws of the State of which the payor is a resident.*"

45.2.    It is denied that the language used in the Denmark-US Treaty has the effect that the treaty applied to payments received by persons who were not shareholders or payments not received from or traceable to a Danish company.

45.3.    In order to constitute "*income that is subject to the same taxation treatment as income from shares by the laws of* [Denmark]", insofar as is relevant, the income in question must have been received by or on behalf of a shareholder or member of a company from the company.

46.    Paragraph 31.3 of the DWF Defence is vague and unparticularised. The DWF Defendants have not identified any "*technical, economic or legal developments*" or "*changing circumstances*" that they allege require the term "*dividends*" to be construed so widely as to encompass contractual payments received by a person who is not a shareholder or member of a company.

47.    As to paragraph 32.1 of the DWF Defence, it is denied that the Relevant WHT Applicants received "*dividends*" within the meaning of Article 10(5) of the Denmark-US Treaty:

47.1.    Paragraph 32.1.1 is denied. Market participants in Denmark regarded payments made by a custodian to an investor reflecting the dividends issued by a Danish company as dividends on the assumption that and only if: (a) the investor

---

[32] Emphasis added

owned shares in the Danish company and; (b) the payment by the custodian to the investor corresponded to a dividend payment received by the custodian from the company or from VP Securities (whether directly or indirectly), upon VP Securities having received a dividend payment from the company. Market participants did not regard payments made by a custodian to an investor as a dividend if the investor did not own shares in a Danish company and/or the custodian had not received (directly or indirectly) a dividend distribution from the Danish company. Paragraph 25 above is repeated.

47.2.   Paragraph 32.1.2 is denied. Paragraph 29 above is repeated.

48.   As to paragraph 32.2 of the DWF Defence:

48.1.   It is denied that payments received by the Relevant WHT Applicants constituted "*income that is subject to the same tax treatment as income from shares*".  Paragraph 45.3 above is repeated.

48.2.   It is denied that the alleged failure on the part of SKAT to take "*steps to intervene*" so as to alter market practice was or could have been determinative, or constitutive, of the tax liability (or entitlement to relief) of the Relevant WHT Applicants. As explained in paragraph 27.1 above, pursuant to Article 43 of the Danish Constitution, tax liability in Danish law must be based on legislation, not market practice.

48.3.   It is denied that SKAT "*recognised*" or "*approved*" any market practice or that any such recognition or approval did or could have had the effect that payments received by persons who did not own shares constituted "*income that is subject to the same tax treatment as income from shares*".

**Persons subject to tax liability**

49.   As to paragraphs 33 and 34 of the DWF Defence, it is admitted that the Relevant WHT Applicants would have been persons subject to tax liability under section 2 of the Danish Corporation Tax Act had they received dividends from a Danish company. However, the Relevant WHT Applicants did not receive dividends from a Danish company.   Accordingly, they were never persons liable to suffer taxation (i.e. taxpayers) with respect to SKAT. Paragraphs 9 to 11 of the Validity Particulars are repeated.

**Tax due under the Double Tax Treaties**

The Denmark-US Treaty

50. The requirements alleged in paragraph 40 of the DWF Defence are admitted. In addition to those requirements, there was a fourth requirement that a WHT applicant had to satisfy in order to be eligible for relief under the Denmark-US Treaty: the transaction(s) giving rise to the WHT application must not have been created or entered into for the sole or main purpose of securing favourable tax treatment under the treaty if such treatment would be contrary to the object and purpose of the treaty. Paragraphs 39.3 and 48-50 of the Validity Particulars are repeated.

Beneficial ownership of dividend

51. SKAT admits paragraphs 42 to 44 of the DWF Defence.

52. As to paragraph 45 of the DWF Defence:

   52.1. The first and last sentences are admitted.

   52.2. As to the second sentence, it is admitted that there is no statutory definition of "*beneficial ownership*" under Danish domestic law. However, cases decided by the Danish Court and the National Tax Tribunal provide guidance as to the meaning of beneficial ownership.

53. In determining questions of beneficial ownership, Danish Courts take into account the relevant OECD Commentary, including versions published after the date of the relevant WHT application. Save as aforesaid, paragraph 46 of the DWF Defence is admitted.

54. Paragraphs 47.1 and 47.2 of the DWF Defence are admitted. Paragraphs 45.1 and 45.3 of the Validity Particulars are repeated.

55. As to paragraph 47.3 of the DWF Defence:

   55.1. It is admitted and averred that, where a shareholder's ability to use and enjoy a dividend is constrained by a legal or economic obligation to pass on the benefit of the amount received to another person, this may mean that the WHT refund applicant was not the beneficial owner of the dividend. Paragraph 47.3 of the Validity Particulars is repeated.

55.2.  It is admitted and averred that if a shareholder's obligation to transfer an economic benefit to a third party was *not* dependent on the receipt of dividends, this may be relevant to the question whether the shareholder was the beneficial owner of the dividend.

55.3.  For these purposes, a Danish Court will analyse the nature of the recipient's obligation as a matter of substance rather than form. The Court will accordingly consider factors and circumstances that go beyond the legal documents employed by the parties.

55.4.  As to paragraph 47.3.1, whether the legal or economic obligation "*existed because of the WHT applicant's power freely to decide how to dispose of the dividend*" and, if so, its implications for the beneficial ownership analysis will depend on the circumstances in which the recipient incurred the (legal or factual) obligation to transfer the benefits to third parties. For instance, the fact that the recipient's obligation to transfer the benefit to a third party was contractual in nature does not, in and of itself, militate against the conclusion that the recipient was not the beneficial owner. A Danish Court will determine these issues as outlined in paragraph 55.3 above.

55.5.  As to paragraph 47.3.2, the relevant question is whether, as a matter of economic substance, a recipient of income was under a legal or factual obligation to pass on its benefit to a third party. A Danish Court will determine that issue as outlined in paragraph 55.3 above.

55.6.  Save as aforesaid, paragraph 47.3 is denied.

"*Pension fund*" under Article 22(2)(e)

56.    Paragraphs 50 and 51 of the DWF Defence are admitted.

57.    As to paragraphs 52 and 53 of the DWF Defence:

57.1.  The IRS certificate is expressly qualified by the phrase "*to the best of our knowledge*".

57.2.  The certificate is based on the information available to and/or provided to IRS.

57.3.  Accordingly, it is not conclusive evidence that a pension plan satisfied the requirements under §401(a) of the IRC.

58.  As to paragraphs 54, 115.2(ii), 116.1 and 118.1 of the DWF Defence:

58.1.  It is admitted that a pension plan may satisfy the requirements of §401(a) of the IRC even though it is created by, or formed for, a self-employed individual or a company with a single shareholder and employee.

58.2.  However, a pension plan that falls within the purview of §401(a) must be funded by contributions derived from the business of the plan's sponsoring LLC(s).

58.3.  Insofar as the LLC(s) conducted no trade or business (as to which, see paragraph 56.1 of the Validity Particulars), the US WHT Refund Applicants would have had no trade-related income that could constitute a valid contribution.

59.  As to paragraph 56 of the DWF Defence:

59.1.  The phrase "*would not automatically result in disqualification*" is vague.

59.2.  If a pension plan is funded by contributions from impermissible sources and/or is otherwise in breach of the contribution rules under the IRC, the pension plan will lose its tax-exempt status.

*"Not derived from the carrying on of a business"*

60.  As to paragraph 59 of the DWF Defence:

60.1.  The first sentence is denied.

60.2.  The requirement that, in order to constitute a "*business*", the making or managing of investments must be "*part of banking, insurance or securities activities conducted by a bank, insurance company, or a registered securities dealer*…" is an express qualification provided in Article 22(4)(a) of the Denmark-US Treaty.

60.3.  This is also the qualification addressed in page 23 of the US Department of Treasury's Technical Explanation of the Protocol Amending the Denmark-US Treaty, which is cited in footnote 23 (on page 27) of the DWF Defence.

60.4.  However, the meaning of the term "*business*" in Article 10(3) of the Denmark-US Treaty is not qualified by this limitation.

24

D.   **SKAT's approach to WHT Applications and its Application of the Tax Rules**

**Principles of Danish law**

61.   SKAT admits the first sentence of paragraph 62A.1 of the DWF Defence.

62.   As to paragraphs 62A.2 and 62A.3 of the DWF Defence, the existence of the alleged (or any) "*administrative practice*" is irrelevant and does not arise for determination:

62.1.   An administrative practice is not binding if it conflicts with higher sources of law such as legislation or case law.[33] The requirements that SKAT allegedly did not require to be met were mandated by Danish legislation as interpreted by the Danish courts: see paragraph 63.1 below. Compliance with those requirements cannot, therefore, be absolved by reference to administrative practice.

62.2.   Further, a binding administrative practice cannot be established in respect of documentation requirements or the exercise of 'control powers' by a public authority. Therefore, the documents/evidence that SKAT required WHT applicants to produce (or the documents/evidence that SKAT did not require WHT applicants to produce) cannot form the basis for a binding administrative practice.

62.3.   Moreover, the statement of a rule in SKAT's Legal Guide is not, in and of itself, a binding administrative practice. It is admitted SKAT's Legal Guide may be relied on as evidence of the existence of a binding administrative practice.

63.   As to the first sentence of paragraph 62A.4 of the DWF Defence:

63.1.   The words "*alleged conditions*" are not particularised. On the basis that this is intended to be a reference to the conditions identified in paragraph 62E of the DWF Defence:

(i)   The requirement that a "*dividend*" must be paid by/traceable to the issuer was implicit in section 16A(1) of the Danish Tax Assessment Act. Paragraph 39 above is repeated.

---

[33] Accordingly, the first sentence of paragraph 62A.3 is denied.

25

(ii)    The requirement that tax must have been withheld from the dividends received by a WHT applicant to be paid to SKAT was expressly set out in section 69 B(1) of the WHT Act. Paragraph 35.2 above is repeated.

(iii)    The requirement that a WHT applicant must own shares in the relevant company is based on the meaning of the term "*dividend*" in Danish law, as set out in section 16A of the Danish Tax Assessment Act.

(iv)    Danish law and international tax law recognised that the benefit of double tax treaties would not be available to WHT applicants if the sole or main purpose of their participation in the relevant transaction(s) (or the sole or main purpose of the transaction(s)) was to secure favourable tax treatment and such treatment was contrary to the object and purpose of the relevant Double Tax Treaty. Paragraphs 33.2 and 33.3 above are repeated.

63.2.    Mere inactivity on the part of SKAT (for example, a failure to take corrective action previously) did not and could not create rights in favour of the WHT Refund Applicants that they did not otherwise have in Danish law, particularly where the alleged inactivity was the result of deception induced by fraud.

63.3.    In any event, it is denied that SKAT did not require the alleged conditions identified in paragraph 62E of the DWF Defence to be met (whether routinely or at all).

64.    As to paragraph 62A.5 of the DWF Defence:

64.1.    The existence of the alleged (or any) administrative practice is irrelevant for the reasons provided in paragraph 62 above.

64.2.    Save as aforesaid, paragraph 62A.5 is admitted as a principle that applies in cases where a binding administrative practice can be established.

**Application of the principles**

65.    Paragraph 62B of the DWF Defence is denied:

65.1.    As to paragraph 62B(i), the expression "*different types of dividend*" is vague and unparticularised. In Danish law, a "*dividend*" is a distribution made by a company to its shareholders or members.

65.2.   As to paragraph 62B(ii), the requirement that a "*dividend*" must be paid by/traceable to the issuer is implicit the requirement in section 16A(1) of the Danish Tax Assessment Act that dividends are "*anything that the company distributes to its current shareholders or members*" (emphasis added). The requirement that tax must have been withheld from the dividends received by the WHT applicant is expressly provided in section 69 B(1) of the WHT Act. Paragraph 35 above is repeated.

65.3.   As to paragraph 62B(iii), in Danish law, "*dividends*" are distributions made by a company to its shareholders. For these purposes, shareholders are persons who own the relevant share(s).

65.4.   As to paragraphs 62B(iv) and (v):

(a)   The distinction between a sale by an owner and a short sale is expressly drawn by Article 12 of the Short Selling Regulation: see paragraph 19 above.

(b)   The Danish legislation pertaining to refund of WHT required ownership of shares (for the purposes of tax law): see paragraph 65.3 above.

65.5.   As to paragraph 62B(vi), the principle against abusive reliance on double tax treaties, which requires consideration of whether main or sole purpose of the transactions was to secure favourable tax treatment was well-recognised in Danish law. Paragraph 33 above is repeated.

65.6.   As to the last sentence of paragraph 62B, for the reasons provided in paragraphs 65.1 to 65.5 above, it is denied that SKAT's case seeks to "*expand the law to include… additional requirements without legislative authority*".

66.   As to paragraphs 62D and 62D.1:

66.1.   Paragraph 65 above is repeated.

66.2.   It is denied that SKAT did not require fulfilment of the conditions for a valid WHT application, whether "*routinely*" or at all.

66.3.   In any event, for the reasons provided in paragraph 62 above, existence of the administrative practice sought to be alleged in paragraph 62D is irrelevant.

66.4.   As to paragraph 62D.2 of the DWF Defence:

27

(a)    The first sentence is admitted.

(b)    The second sentence is denied. The relevance of the Bank Scheme is denied. Paragraph 28.3 above is repeated.

(c)    In any event, under the Bank Scheme, it was SKAT (rather than the participant banks) that determined the validity of WHT applications.

67.    Paragraph 62E is denied for the reasons set out in paragraphs 61 to 66 above.

68.    Paragraph 62F is denied. Paragraph C.B.2.1.6.1 of SKAT's Legal Guide addresses the question as to *when* a share is acquired or disposed of. It is headed "*Hvornår er en aktie anskaffet eller afstået?*" (which translates to "*When was a share acquired or disposed of?*") and begins with the words "*Dette afsnit beskriver, hvornår en aktie er anskaffet eller afstået*" (which translate to "*This section describes <u>when</u> a share is acquired or disposed of*") (emphasis added).  This paragraph does not address the question whether an agreement to purchase shares from a "*seller*" who does not own the shares is valid under Danish law. Paragraph 15 of the Validity Particulars is repeated.

**E.    THE DWF DEFENDANTS' RESPONSE TO THE VALIDITY PARTICULARS**

69.    As to paragraphs 68 and 69 of the DWF Defence, paragraph 49 above is repeated.

70.    As to paragraph 74, the first sentence is denied. A person who enters into an agreement to purchase shares from a seller who does not own shares only acquires a contractual right against the seller and does not become the owner of shares. Paragraph 15 of the Validity Particulars is repeated.

71.    The second sentence of paragraph 76.2 and the last sentence of paragraph 82 are denied. A payment received by a person who does not own shares in a Danish company pursuant to a contractual right to receive a sum of money equivalent to the dividend issued by a company is not a "*dividend*" under Danish law.  Further, such a payment may not have its source for tax purposes as Denmark in any event and thus not be liable to Danish tax if received by a non-Danish resident.

72.    As to paragraph 76.3:

72.1.  SKAT denies the first sentence and the penultimate sentence for the reasons provided in paragraph 68 above.

72.2.   As to the second sentence, paragraph 21 above is repeated.

72.3.   As to the third sentence, paragraph 70 above is repeated.

72.4.   The last sentence is denied:

    (a)   The distinction between a sale by an owner and and a short sale of shares is expressly provided in Article 12 of the Short Selling Regulation: see paragraph 19.1 above.

    (b)   It also follows from the principle that a seller cannot transfer property that he does not own. Paragraph 15.1 of the Validity Particulars, which is admitted in paragraph 76.1 of the DWF Defence, is repeated.

73.   As to paragraph 77, the second sentence is denied for the reasons provided in 70 above.

74.   As to paragraph 85 of the DWF Defence:

74.1.   For the avoidance of doubt, SKAT does not allege that the rightful recipient of a dividend is necessarily the person who is registered at VP Securities.

74.2.   As to paragraph 85.3, paragraph 38 above is repeated.

75.   As to paragraph 93 of the DWF Defence, paragraph 35 above is repeated.

76.   As to paragraphs 115.1 and 115.2(i) of the DWF Defence:

76.1.   Properly construed, the phrase "*whether or not exempt from tax*" in Article 22(2)(e) of the Denmark-US Treaty addresses claims by Danish pension plans.

76.2.   It is denied, if it is alleged, that a US pension plan can qualify under Article 22(2)(e) of the Denmark-US Treaty without satisfying the requirements imposed by §401(a) of the IRC.

### (III)   THE SANJAY SHAH DEFENCE

**A.   MARKET PRACTICE, INTERPRETATION AND EVALUATION OF WHT APPLICATIONS**

77.   As to paragraphs 8 and 9 of the Sanjay Shah Defence, paragraphs 8 to 33 above are repeated.

**Market practices**

78.    As to paragraphs 12 and 17.1 of the Sanjay Shah Defence:

78.1.    The allegation that "*dividend arbitrage trading is a well-known type of trading*" is not properly particularised. The phrase "*dividend arbitrage trading*" encompasses a wide range of activities.

78.2.    It is admitted and averred that "[t]*he underlying structure may well impact the tax treatment of the shareholder and/or the dividend payment*"[34] and that "[e]*ach such activity generates distinct tax consequences*".[35]

79.    Paragraph 15.1 of the Sanjay Shah Defence is denied. Paragraph 15.4 of the Validity Particulars is repeated.

80.    As to last sentence of paragraph 16.3 and first sentence of paragraph 16.4 of the Sanjay Shah Defence, the owner of a share is not determined by reference to whether that person has a right against a sub-custodian to be recognised as the owner of a share.

81.    As to the remainder of paragraph 16.4 of the Sanjay Shah Defence:

81.1.    SKAT denies the second sentence for the reasons provided in paragraph 15.4 of the Validity Particulars.

81.2.    The third sentence is denied for the reasons provided in paragraph 21 above.

82.    The second sentence of paragraph 16.6 of the Sanjay Shah Defence is denied. SKAT's case regarding the legal consequences of a stock loan transaction in Denmark is set out in its Response dated 20 May 2020 to the Sanjay Shah Defendants' Request for Further Information dated 21 April 2020: see response to Request 3.

83.    The third and last sentences of paragraph 16.7, paragraph 16.10 and the first sentence of paragraph 16.17 of the Sanjay Shah Defence are denied. Under Danish law, as explained in paragraph 19.1 above, pursuant to Article 12 of the Short Selling Regulation, short selling is only permissible if:

83.1.    the seller has borrowed the share or has made alternative provision which has the same legal effect;

83.2.    the seller has entered into an agreement to borrow the share (or similar); or

---

[34] Third sentence of paragraph 12 of the Sanjay Shah Defence.
[35] Second sentence of paragraph 17.1 of the Sanjay Shah Defence.

83.3.    the seller has an arrangement with a third party under which the third party has confirmed that the share has been located and has taken necessary measures for the seller to have a reasonable expectation that settlement can be effected when due.

84.    Paragraphs 16.12 and 16.13 of the Sanjay Shah Defence are denied:

84.1.    As a matter of Danish law, at no point can there be more shares in circulation than the number of shares issued by a company. Paragraph 14.1 of the Validity Particulars is repeated.

84.2.    The first sentence of paragraph 16.12 is denied. The Settlement Time Lag does not require the number of shares to increase (temporarily or otherwise) above the total number of shares issued by a Danish company.

84.3.    Danish law does not recognise "*immediate share ownership rights pursuant to contractual arrangements irrespectively of whether they are entered into pursuant to a 'long sale' or 'short sale'*". SKAT's case as to transfer of share ownership in cases where short selling is permissible under Danish law is set out in its Response dated 6 May 2020 to the DWF Defendants' Request for Further Information dated 2 April 2020: see response to Request 4d.

85.    As to paragraph 16.15 and the second sentence of paragraph 16.17 of the Sanjay Shah Defence, paragraph 21 above is repeated.

86.    As to paragraph 16.18 of the Sanjay Shah Defence, paragraph 25 above is repeated.

**Proper interpretation of treaties**

87.    As to paragraph 18.1 of the Sanjay Shah Defence:

87.1.    It is admitted and averred that a person may be the legal owner of shares and the recipient of a dividend on those shares (and thus liable to suffer taxation in Denmark) but not the beneficial owner of the shares for the purposes of the Double Tax Treaties.

87.2.    It is not meaningful in terms of Danish tax law to refer to a person "*who purchases the right to receive the dividends*" since for such purposes, the person who owns the shares is the person who receives the dividends,

regardless of any arrangements that person may have made to deal with any dividend payments received.

87.3.   A shareholder may agree to pay another person the full value of any dividends received. In that case the shareholder may not be the beneficial owner of any dividends received. In those circumstances, even assuming that both the shareholder and the third party are resident in a double tax treaty state such as the United States, the shareholder is not entitled to relief under the Double Tax Treaty and will not be entitled to a refund of any tax withheld on the dividend.

88.   SKAT denies paragraphs 18.2 and 18.3 of the Sanjay Shah Defence:

88.1.   In construing the Double Tax Treaties to determine the validity of a WHT application, a Danish Court will take into account versions of the OECD Commentary that are published after the date of the WHT application: see footnote 31 (on page 13) of the Validity Particulars.

88.2.   SKAT denies that the 2014 version of the OECD Commentary "*materially changed the meaning of the beneficial ownership test*". The explanation provided in the 2014 version of the OECD Commentary was clarificatory in nature.

89.   A Danish Court will have regard to international tax law, and in particular, the OECD Model Convention and Commentary thereto while applying the test of "*beneficial ownership*". Save as aforesaid, SKAT admits paragraph 18.4 of the Sanjay Shah Defence.

90.   SKAT denies the first sentence of paragraph 18.5 of the Sanjay Shah Defence. In addition to the decision of the Eastern High Court referred to in paragraph 18.5 of the Sanjay Shah Defence, the meaning of "*beneficial ownership*" had been considered in multiple decisions of the National Tax Tribunal.

91.   As to paragraph 18.7 of the Sanjay Shah Defence:

91.1.   SKAT admits that the question whether a shareholder is the beneficial owner of a dividend will depend on the specific facts.

91.2.   The allegation that "*whether the tax payer satisfies the beneficial ownership test is… expansive*" is not understood.

**SKAT's "*administrative praksis*"**

92.    As to paragraph 19 of the Sanjay Shah Defence:

    92.1.    It is denied that the alleged principle arises "*pursuant to article 43 (1st part) of the Danish Act of Constitution)*".

    92.2.    The existence of the alleged (or any) administrative practice is irrelevant and does not arise for determination for the reasons provided in paragraph 62 above.

93.    Paragraph 21 is denied. Paragraphs 62 and 65 above are repeated.

94.    As to paragraph 22.1 of the Sanjay Shah Defence:

    94.1.    Save as set out in paragraph 28.3 above, the first sentence is admitted.

    94.2.    The second sentence is denied. Paragraph 66.4 above is repeated.

95.    As to paragraph 22.2 of the Sanjay Shah Defence:

    95.1.    The first sentence is admitted.

    95.2.    The second sentence is denied.  Paragraph 63.2 above is repeated.

96.    SKAT denies paragraphs 22.3 and 22.4 of the Sanjay Shah Defence. There is no principle of Danish law that entitled WHT applicants to pick the regime most favourable to them from the Form Scheme, the Bank Scheme and the matters stated in SKAT's Legal Guide in order to determine the validity of their WHT applications.

**B.    REQUIREMENTS FOR A VALID WHT REFUND APPLICATION**

97.    Paragraph 25 of the Sanjay Shah Defence is admitted.

**Meaning of dividends**

98.    As to paragraph 31.3 of the Sanjay Shah Defence:

    98.1.    As a matter of Danish law, it is possible for a shareholder, "A", to agree contractually with another person, "B", that A would pay over any dividend received by A to B.

    98.2.    In such a case, A will be treated as the recipient of dividends for the purposes of section 69 B(1) of the WHT Act as long as A owns the relevant shares.

33

98.3.   A may not be the beneficial owner of the dividends, as a consequence of the arrangements entered into with B.

98.4.   As to the third sentence:

(a)   SKAT admits that it is possible for the seller in a share sale transaction to agree with the buyer that the seller will retain any dividends. However, for the purposes of section 69 B(1) of the WHT Act, pursuant to section 16A of the Danish Tax Assessment Act, any dividends subsequently declared will be received by the buyer if the relevant shares are owned by the buyer at that time.

(b)   In relation to the treatment of dividends in stock lending transactions, SKAT repeats paragraph 38 above.

98.5.   For the reasons provided in paragraphs 98.1 and 98.4 above, SKAT denies the last two sentences of paragraph 31.3.

**Ownership of shares**

99.   As to paragraphs 33 and 37 of the Sanjay Shah Defence:

99.1.   The allegation that the *nemo dat* principle is subject to exceptions that make it inapplicable to "*complex financial transactions involving shares*" (paragraph 33) and "*transactions regarding shares*" (paragraph 34) is not properly particularised and is in any event denied. The *nemo dat* principle is applicable to such transactions.

99.2.   The allegation that there was no breach of the *nemo dat* principle insofar as it was applicable is wholly unparticularised. As such, SKAT is unable to plead thereto.

100.   As to paragraph 34 of the Sanjay Shah Defence:

100.1.   As to the first sentence, SKAT repeats paragraphs 99.1 and 99.2 above.

100.2.   As to the second sentence, registration of the settlement occurs at the time of settlement. Save as aforesaid, the second sentence is admitted.

100.3. As to the alleged "*response of the Danish Ministry of Finance to the Warning of SKAT regarding stock lending*" in the third sentence (and in paragraph 49.3) of the Sanjay Shah Defence:

(a)    There were two Early Warnings: (i) from SKAT's department for large companies dated 27 March 2015 and; (ii) from SKAT's legal department dated 7 July 2015.

(b)    The response to the Early Warnings was from the Danish Ministry of Taxation on 23 September 2015, not the Ministry of Finance as alleged.

(c)    Insofar as is relevant, the Early Warnings and the Ministry's response are consistent with, and support, SKAT's case as set out in the Validity Particulars and in this Reply. In particular, they suggest that:

(i)    "…*there is no legal basis for any other person than the party regarded, for tax purposes under Danish law, as the recipient of the money from a company, i.e. the party who is the beneficial owner [of dividend]… having a refund of withheld dividend tax…*";[36]

(ii)    In Danish law, "*the beneficial owner [of dividend] is the current shareholder i.e. the shareholder at the time of the declaration of the dividend*";[37]

(iii)    for the purposes of Danish tax law, a lender of shares is treated as their owner so long as the borrower has not re-sold the shares;

(iv)    the lender is the person liable to suffer tax on the dividend and the person entitled to apply for a refund of WHT, because the lender "*for tax purposes, is the owner of the shares*";[38]

(v)    since a borrower of shares is not considered as the owner of shares for tax purposes, "*the distribution of dividend has no tax consequences for the borrower*";[39]

---

[36] Page 7 of the Ministry of Taxation's response.
[37] Page 7 of the Ministry of Taxation's response.
[38] Page 3 of the Ministry of Taxation's response.
[39] Page 7 of the Ministry of Taxation's response.

35

(vi)    If a borrower of shares sells the shares to a third party, the third party will become the owner of shares and, hence, the dividend;

100.4.  The reference to a "*simplified example described at paragraph 16.12*" is not understood.

100.5.  As to paragraphs 34.1 and 34.2 of the Sanjay Shah Defence:

(a)    If a shareholder, A, lends shares to a borrower, B, the lender remains the owner of the shares. However, B may sell the shares to a third-party, C, in which case the position is as alleged in paragraphs 34.1.  Under the terms of a typical stock lending arrangement, B will remain obliged to return the same number of shares to A at the conclusion of the loan.

(b)    If, however, A does not own shares but nevertheless enters into a stock lending agreement with B, who then purports to sell shares to C, neither A nor B nor C is a shareholder.

(c)    Upon the conclusion of a purported purchase agreement between a person who purports to purchase shares and a "seller" who does not own any shares, the purchaser only acquires a contractual claim against the seller: see paragraph 15.2 of the Validity Particulars.

101.    As to paragraph 38.1 of the Sanjay Shah Defence, the first sentence of paragraph 15.5 of the Validity Particulars is a principle of Danish law, not merely "*some kind of example of what Danish courts might do*". For the avoidance of doubt, the effect of the principle for present purposes is that a share sale transaction that was intended by the parties not to have legal effect does not transfer ownership.

102.    The first sentence of paragraph 41.2 of the Sanjay Shah Defence is denied for the reasons provided in paragraph 13 above.

103.    As to the third sentence of paragraph 47.1 of the Sanjay Shah Defence, section 71(2) of the Danish Securities Trading Act does not support the allegation that "*the registered owner of shares may not be the legal owner but may in any event receive dividends*". If VP Securities were to pass on a dividend payment made by a company to the person registered at VP Securities, in circumstances where that person was not the legal owner of shares, it is the legal owner (rather than the person registered at VP

Securities) who receives the dividend and who is thus the right recipient of income. Paragraph 24 of the Validity Particulars is repeated.

104. As to paragraph 47.4 of the Sanjay Shah Defence, the term "*legal owner*" in the third and fourth sentences of paragraph 24 of the Validity Particulars refers to the legal owner for the purposes of Danish tax law.

105. As to paragraph 49.1 of the Sanjay Shah Defence, SKAT's case as to the legality and legal consequences of short-selling in Danish law is set out in its Response dated 6 May 2020 to the DWF Defendants' Request for Further Information dated 2 April 2020: see response to Request 4.

**Tax withheld from dividends received by WHT applicants**

106. As to paragraph 55 of the Sanjay Shah Defence:

106.1. Section 69 B(1) of the WHT Act requires tax to have been withheld from the dividends received by a WHT applicant pursuant to section 65 of the WHT Act: see paragraph 35 above.

106.2. Section 65 of the WHT Act applies to Danish companies and associations that declare dividends. The relevant requirement in section 69 B(1) is that tax must have been withheld by the company declaring the dividend.

**The Double Tax Treaties**

107. SKAT denies paragraphs 62.3 and 71 of the Sanjay Shah Defence for the reasons provided in paragraph 33 above.

108. As to paragraph 68.1 of the Sanjay Shah Defence:

108.1. It is denied that the Danish Supreme Court in its judgment dated 12 March 2020 held that "*shareholder remains the beneficial owner of the dividend regardless of whether they are subject to a contractual obligation to pay that dividend to a third party*."

108.2. The Supreme Court did not consider the concept of "*beneficial ownership*" in that judgment.

108.3. The basis of the Danish Supreme Court's judgment was that the individuals who were shareholders at the time the dividend was distributed were entitled to

the dividend. This supports the proposition that, in Danish law, dividends are distributions made by a company to its current shareholders: see paragraph 20 of the Validity Particulars.

**Specific requirements under the US-Denmark Treaty**

109.   As to paragraph 75 of the Sanjay Shah Defence, which adopts paragraphs 115 to 123 of the DWF Defence, paragraphs 58 and 76 above are repeated.

110.   Paragraph 76.2 of the Sanjay Shah Defence is denied. The allegation in paragraph 56.2 of the Validity Particulars is relevant to the requirement pleaded in paragraph 54.1 of the Validity Particulars. Accordingly, is it not "*unrelated to the requirements set out at paragraph 54*".

111.   As to paragraph 78 of the Sanjay Shah Defence, it is denied, if it is alleged, that the requirement that dividends should not have been "*derived from the carrying on of a business*"[40] only applies to pension funds "*acquiring a controlling stake in foreign business and then engage in significant management of control of (sic) that business*".

## (IV)   THE ED&F MAN DEFENCE

112.   As to paragraph 3 of the ED&F Man Defence, paragraph 34 above is repeated.

113.   As to paragraphs 7.3 and 7.4 of the ED&F Man Defence:

113.1.   The Annex E ED&F Man Applicants[41] whose applications were supported by the 64 Tax Vouchers identified in Schedule 1 to Annex E did not receive a dividend from a Danish company.[42] Accordingly, they were not persons liable to tax in Denmark.

113.2.   The Annex E ED&F Man Applicants whose applications were supported by the 16 Tax Vouchers identified in Schedule 2 to Annex E are alleged to have received some dividends but not in the amounts in respect of which WHT applications were made on their behalf.[43] Those applicants were persons liable to tax in Denmark only insofar as they owned shares in a Danish company and received dividends from that company (as to which no admissions are made).

---

[40] As to which, see paragraphs 51.2 and 59-61 of the Validity Particulars.
[41] As defined in paragraph 31 of the Validity Particulars.
[42] See paragraph 31.2 of the Validity Particulars.
[43] See paragraph 31.3 of the Validity Particulars.

113.3. The non-Annex E ED&F Man Applicants may have been persons liable to tax in Denmark if they received dividends (as to which no admissions are made) but they were not the beneficial owners of the dividends in respect of which WHT applications were made on their behalf.

113.4. ED&F Man did not receive dividends from a Danish company in relation to the ED&F Man Applications (as any dividends that may have been received were received by the ED&F Man Applicants). Accordingly, it was not a person liable to tax in Denmark. However, the ED&F Man Applicants were not the beneficial owners of such dividends. Paragraph 47 of the Validity Particulars is repeated.

114. As to paragraphs 17.2 and 21.2 of the ED&F Man Defence, the expression "*to show*" in paragraphs 32 and 36 of the Validity Particulars denotes that fact that, if there is a dispute about whether the relevant requirements were met, the burden of proof is on WHT refund applicants to establish that they are entitled to a WHT refund: see SKAT's Response dated 6 May 2020 to the DWF Defendants' Request for Further Information dated 2 April 2020: see response 5a.

115. As to paragraphs 23.3.1 and 23.3.2 of the ED&F Man Defence, SKAT admits that there were two elements to the requirement set out in paragraph 39.3 of the Validity Particulars: (i) the transactions giving rise to an application for a WHT refund were not created for the sole or main purpose of securing favourable tax treatment under the double tax treaty; and (ii) obtaining such favourable treatment would be contrary to the object and purpose of the relevant provisions of the double tax treaty.

116. As to paragraph 23.3.3:

116.1. It is admitted that Article 10 of the OECD Convention seeks to limit the source state's right to tax dividends insofar as dividends are subject to tax in the country of the beneficial owner's residence. SKAT denies, however, that any conceivable method of "*limiting Denmark's right to claim tax on dividends*" is therefore consistent with the object and purpose of Article 10 of the Denmark-US Treaty and Article 10 of the Denmark-Canada Treaty.

116.2. As stated in paragraph 7 of the OECD Commentary (2010)[44] to Article 1, "*[i]t is also a purpose of tax conventions to prevent tax avoidance and evasion*".

116.3. As paragraph 10 of the OECD Commentary (2010)[45] to Article 1 recognises, with specific reference to Article 10, "*some forms of tax avoidance have already been expressly dealt with in the Convention, e.g. by the introduction of the concept of "beneficial owner" (in Articles 10, 11 and 12)*".

117.   As to paragraph 23.3.4, the two categories of abusive transactions referred to in this paragraph are not exhaustive of the scope of the principle against abusive reliance on double tax treaties.

118.   As to paragraph 32.3 of the ED&F Man Defence, SKAT repeats paragraph 33 above.

## (V)    THE PS/GOC DEFENCE

119.   SKAT requires the PS/GOC Defendants to prove the knowledge and understanding pleaded in paragraphs 7 to 13 and 15.1.1 to 15.1.3 of the PS/GOC Defence.

120.   As to paragraph 11.2 and the last sentence of paragraph 15.4.2 of the PS/GOC Defence, although the Denmark-Malaysia Treaty did not expressly set out the requirement of beneficial ownership, it was an implicit requirement under Article 10 of that treaty.

121.   As to paragraph 15.4.3 and paragraph 15.6 of the PS/GOC Defence:

121.1. There were two elements to the principle against abusive reliance on tax treaties: (i) the transactions giving rise to an application for a WHT refund were created for the sole or main purpose of securing favourable tax treatment under the double tax treaty; and (ii) obtaining such favourable treatment would be contrary to the object and purpose of the relevant provisions of the double tax treaty: see paragraphs 33.3 and 115 above. To this extent, SKAT admits paragraph 15.6.4(c) of the PS/GOC Defence.

121.2. As explained in paragraphs 33.2 and 33.3 above, at the time when the WHT Refund Applications were made, this principle was reflected (*inter alia*) in

---

[44] The same language appears in paragraph 7 of the OECD Commentary (2014) to Article 1.
[45] The same language appears in paragraph 10 of the OECD Commentary (2014) to Article 1.

Danish cases as well as in paragraph 9.5 of the OECD Commentary (2010)[46] to Article 1.

121.3. SKAT denies (if it is alleged in paragraph 15.6.2 of the PS/GOC Defence) that there was any requirement for SKAT to give express 'notice' of this requirement by stating it in SKAT's Legal Guide.

121.4. The allegation in paragraph 15.6.3 that SKAT suggests the principle to be "*capable of rendering a transaction invalid*" is a misreading of paragraph 49 of the Validity Particulars. As stated there, the effect of the principle is that "*the benefit of double tax treaties is not available*…".

121.5. The relevance of the English law principles pleaded in paragraphs 15.6.4(a) and (b) is not understood. SKAT does not plead thereto.

122. As to paragraph 15.6.4(d) of the PS/GOC Defence:

122.1. The relevance of the English law principle pleaded in the first sentence is not understood. SKAT does not plead thereto.

122.2. As to the second sentence, SKAT's case involves both aspects of the distinction drawn in the first sentence. Thus, SKAT alleges that:

(a) the WHT Refund Applications did not satisfy the requirements for a valid WHT refund under Danish law: see, *inter alia*, paragraphs 7 and 8 of the Validity Particulars;

(b) the benefit of the Double Tax Treaties was not available to the WHT Refund Applicants as a consequence of the principle set out in paragraph 49 of the Validity Particulars and paragraph 121.1 above; and

(c) the transactions that formed the basis of the WHT Applications were not intended to have legal effect, and therefore, that they were not effective to transfer ownership of shares: see paragraphs 15.5 and 17.3 of the Validity Particulars.

123. As to paragraph 15.6.6(a) of the PS/GOC Defence:

123.1. The appropriate "*comparator*" will depend on the circumstances of the case.

---

[46] See also OECD Commentary (2014) to Article 1, paragraph 9.5.

123.2. As alleged in paragraph 50 of the Validity Particulars, the *sole purpose* of the Principal WHT Scheme (alternatively, the Solo WHT Scheme, alternatively, the Donaldson/LaRosa WHT Scheme, alternatively the Klar WHT Scheme) and the ED&F Man trading scheme was to manufacture claims for refund of WHT.

123.3. In these circumstances, the appropriate comparator is the position that would have applied if the transactions underlying these schemes had not been entered into.

123.4. By reference to that position, the WHT Refund Applicants received a "*more favourable*" treatment as a consequence of having received WHT refunds from SKAT.

124. As to paragraph 15.6.6(b) of the PS/GOC Defence:

124.1. As explained in paragraph 1 of the Introduction to the OECD Commentary (2010),[47] the purpose of a double tax treaty is to remove the "*harmful effects on the exchange of goods and serves and movements of capital, technology of persons*" that arise from "*international juridical double taxation*" i.e. the "*imposition of comparable taxes in two (or more States) on the same taxpayer in respect of the same subject matter and for identical periods*".

124.2. More specifically:

(a) One of the purposes of double tax treaties based on the OECD Model Convention was to prevent tax avoidance and evasion: see paragraph 116.2 above.

(b) This was especially true of the beneficial ownership requirement in Article 10 of the Denmark-US Treaty and the identical, albeit implicit, requirement in Article 10 of the Denmark-Malaysia Treaty: see paragraph 116.3 above.

124.3. It follows that transactions that are designed and entered into for the sole purpose of manufacturing claims for refund of WHT, and have no other

---

[47] See also paragraph 1 of the Introduction to the OECD Commentary (2014).

commercial purpose, are inconsistent with the object and purpose of a double tax treaty.

## (VI)    THE FLETCHER, GODSON AND JAIN DEFENCE

### A.    MARKET PRACTICE

**The fungibility of shares**

125.    Paragraphs 10 to 14 of the Fletcher, Godson and Jain Defence are materially identical to paragraphs 8.1 to 8.5 of the DWF Defence (save that the Fletcher, Godson and Jain Defence does not plead the last sentence of paragraph 8.3 and footnotes 2 and 3 (on page 5) of the DWF Defence). As to these paragraphs, paragraphs 10, 11 and 13 above are repeated.

126.    As to paragraphs 15 and 16 of the Fletcher, Godson and Jain Defence, paragraph 14 above is repeated.

127.    Paragraphs 17 and 18 of the Fletcher, Godson and Jain Defence are materially identical to paragraphs 8.9 and 8.10 of the DWF Defence (save that the Fletcher, Godson and Jain Defence does not plead the last sentence of paragraph 8.10 of the DWF Defence). As to these paragraphs, paragraphs 15 and 16 above are .

128.    SKAT denies paragraphs 21 and 22 of the Fletcher, Godson and Jain Defence:

128.1.    Paragraphs 10 to 20 of the Fletcher, Godson and Jain Defence are allegations about "*Relevant Market Practice*": see paragraph 9 of the Fletcher, Godson and Jain Defence. These paragraphs do not plead rules of Danish tax law that determine the validity of WHT applications.[48] As such, the expression "*additional rules*" in the first sentence is not meaningful.

128.2.    If what is alleged is that the market practice pleaded in paragraphs 10 to 20 was determinative of the WHT Applicants' tax treatment unless SKAT derogated from the market practice by "*a change to relevant Danish law*", that allegation is denied for the reasons provided in paragraph 27 above.

128.3.    In any event, SKAT denies that "*additional rules*" were required to:

---

[48] The requirements that such an application had to satisfy are set out in paragraph 7 of the Validity Particulars.

(a)    "*trace dividends to particular shares*": for the purposes of section 69 B(1) of the WHT Act, a "*dividend*" is a distribution made by a company to its current shareholders: see paragraph 13 of the Validity Particulars.

(b)    "*trace dividends to… payments made by an issuing company*": the requirement that a "*dividend*" must be paid by/traceable to an issuing company is implicit in section 16A(1) of the Danish Tax Assessment Act, which provides that dividends are "*anything that the company distributes to its current shareholders or members*".

129.    As to paragraph 23 of the Fletcher, Godson and Jain Defence, which is materially identical to paragraph 17 of the DWF Defence,[49] paragraphs 28 and 66.4 above are repeated.

130.    As to paragraph 24 of the Fletcher, Godson and Jain Defence, which is materially identical to paragraph 18.2 of the DWF Defence, paragraph 20 above is repeated.

**Market claim correction payments and compensation payments**

131.    Paragraph 26 of the Fletcher, Godson and Jain Defence is admitted.

132.    As to paragraphs 27 and 49 of the Fletcher, Godson and Jain Defence:

132.1.    The first sentence is admitted as a matter of Danish tax law, provided that the seller owned the relevant shares: see paragraphs 15.3 and 15.4 of the Validity Particulars.

132.2.    The second and third sentences are admitted as a matter of Danish tax law.

133.    As to paragraphs 30 and 31 of the Fletcher, Godson and Jain Defence, paragraph 21 above is repeated.

134.    As to paragraph 32 of the Fletcher, Godson and Jain Defence, as a matter of Danish tax law, a borrower of shares does not become their owner. The lender retains ownership for tax purposes: see SKAT's Response dated 20 May 2020 to the Sanjay Shah Defendants' Request for Further Information dated 21 April 2020 (response to Request 3). Accordingly, any dividends declared on the shares are owned by the lender rather than the borrower: see paragraph 38 above.

---

[49] Save that the Godson, Fletcher and Jain Defence does not plead footnote 13 (page 11) of the DWF Defence.

44

135.    The first sentence of paragraph 33 of the Fletcher, Godson and Jain Defence is denied:

135.1.  A person who owns shares at the time a dividend is declared receives a dividend.  VP Securities will pay any payment received from the relevant company to the person registered as the holder of the shares on the Record Day (whether directly or through a chain of custodians). Depending on the contractual arrangements between the individuals involved, a "Market Claim Correction Payment" may ensure that the payment is passed on to the rightful recipient. Such a "Market Claim Correction Payment" is not a dividend and the person who owns shares on the date a dividend has been declared receives a dividend whether or not such a payment is made.

135.2.  Whether or not a "Compensation Payment" is made does not affect who is the owner of the shares on the Dividend Declaration Date. A stock lender retains ownership for tax purposes and so it is the stock lender, not the stock borrower, who receives any dividend declared during the period of a stock loan: see paragraph 134 above. A "Compensation Payment" therefore may ensure that any payment received by a stock borrower in respect of the dividend is passed on to the rightful recipient. However, a "Compensation Payment" is not a dividend and the person who owns the shares on the date a dividend has been declared (i.e. the lender) receives a dividend whether or not such a payment is made.

**B.    INTERPRETATION OF THE RELEVANT DANISH AND INTERNATIONAL TAX RULES**

136.    As to paragraph 34.1 of the Fletcher, Godson and Jain Defence, paragraph 31.1 above is repeated.

137.    As to paragraph 34.3 of the Fletcher, Godson and Jain Defence, paragraph 32.2 above is repeated.

138.    As to paragraphs 36 and 37[50] of the Fletcher, Godson and Jain Defence, paragraph 33 above is repeated.

**C.    VALIDITY DIRECTLY UNDER THE TREATIES – PRIMARY CASE**

---

[50] Paragraph 37 of the Godson, Fletcher and Jain Defence is materially identical to paragraph 20 of the DWF Defence save that the Godson, Fletcher and Jain Defence does not plead footnotes 16 and 17 (page 14) of the DWF Defence.

139. As to paragraphs 39 and 86.1 of the Fletcher, Godson and Jain Defence, double tax treaties signed and ratified by Denmark are published in the Law Gazette C (*Lovtidende C*), not in the Official Gazette (*Statstidende*): see paragraph 32.1 above. Save as aforesaid, paragraph 39 is admitted.

140. As to paragraphs 38, 40 and 90.1 of the Fletcher, Godson and Jain Defence, the requirements for a valid claim for refund of WHT under section 69 B(1) of the WHT Act and the Double Tax Treaties are the same. It is denied, if it is alleged, that a valid application for refund of WHT could be made by reference to the Double Tax Treaties without meeting the requirements identified in paragraph 7 of the Validity Particulars.

D.    VALIDITY UNDER SECTION 69 B(1) OF THE WHT ACT

**The criteria**

141. SKAT admits the three requirements imposed by section 69 B(1) for a valid WHT application that are pleaded in paragraph 44 of the Fletcher, Godson and Jain Defence. Section 69 B(1) expressly[51] imposed a fourth requirement: tax must have been withheld from the dividends received by the applicant (to be paid to SKAT) pursuant to sections 65-65D of the WHT Act. Paragraph 7.3 and Section E (page 11) of the Validity Particulars are repeated.

**Receipt of Dividends**

142. Paragraph 51 of the Fletcher, Godson and Jain Defence is denied. Paragraph 17 of the Validity Particulars is repeated.

**The Double Tax Treaties**

143. As to paragraphs 62 to 65 of the Fletcher, Godson and Jain Defence, which are materially identical to paragraphs 42 to 45 of the DWF Defence,[52] paragraphs 51 and 52 above are repeated.

144. As to paragraph 66 of the Fletcher, Godson and Jain Defence:

---

[51] The translation of section 69 B(1) in paragraph 43 of the Godson, Fletcher and Jain Defence includes the words "*dividends... of which withholding tax has been withheld pursuant to sections 65-65D...*".

[52] Save that the Godson, Fletcher and Jain Defence does not plead the last two sentences of paragraph 45 of the DWF Defence.

144.1. As to the first and second sentences:

    (a)    It is inferred that by referring to the English phrase "*rightful ownership*", the Fletcher, Godson and Jain Defendants are referring to the Danish term "*retmæssig ejer*".

    (b)    "*Retmæssig ejer*" is the Danish translation of the English term "*beneficial ownership*". There is no separate concept of "*retmæssig ejer*" in Danish law.

    (c)    There is a concept of "*rette indkomstmodtager*" (i.e. the right recipient of income) in Danish law. "*Rette indkomstmodtager*" refers to the person who has the right to receive income, who is not necessarily the beneficial owner ("*retmæssig ejer*") of income.[53]

144.2. As to the third sentence, it is admitted that a Danish Court will take into account the materials identified in paragraphs 66.1 to 66.3 of the Fletcher, Godson and Jain Defence. It is denied that these materials have "*priority to national Danish case law*".

145.    As to paragraphs 67 and 68 of the Fletcher, Godson and Jain Defence, which are materially identical to paragraphs 47 and 48 of the DWF Defence, paragraphs 54 to 55 above are repeated.

146.    Paragraph 70 of the Fletcher, Godson and Jain Defence is denied for the reasons provided in paragraph 41 of the Validity Particulars.

147.    As to paragraphs 75 and 76 of the Fletcher, Godson and Jain Defence, paragraph 57 above is repeated.

148.    As to paragraph 79 of the Fletcher, Godson and Jain Defence, paragraph 59 above is repeated.

149.    As to paragraph 83 of the Fletcher, Godson and Jain Defence, in addition to the three requirements pleaded there, there were two further requirements that a WHT applicant had to satisfy under the Denmark-Malaysia Treaty:

149.1. the applicant had to be the "*beneficial owner*" of dividends: see paragraph 39.2 and footnote 28 (page 12) of the Validity Particulars; and

---

[53] In relation to paragraphs 139.1(a) to 139.1(c), see Section C.F.8.2.2.10.1.3 of SKAT's Legal Guide.

149.2. the transactions giving rise to an application for a WHT refund should not have been created for the sole or main purpose of securing favourable tax treatment under the double tax treaty if obtaining such favourable treatment would be contrary to the object and purpose of the treaty: see paragraph 33.2, 33.3 and 115 above.

### E.    RESPONSE TO FURTHER PARTICULARS

150.   As to paragraph 97.2 of the Fletcher, Godson and Jain Defence, paragraph 13.2 above is repeated.

151.   As to paragraph 101.2 of the Fletcher, Godson and Jain Defence, paragraph 17 above is repeated.

152.   Paragraph 102.2 of the Fletcher, Godson and Jain Defence is denied. The mere fact that the buyer acted in good faith is not sufficient convey title to shares if the purported seller did not own shares.

153.   As to paragraph 116 of the Fletcher, Godson and Jain Defence, the reference in the first sentence of paragraph 25 of the Validity Particulars is to date when a dividend is declared by the company.

154.   As to paragraph 123 of the Fletcher, Godson and Jain Defence:

154.1. Section 69 B(1) of the WHT Act expressly provides that the right to refund of WHT is in respect of "*dividends… of which withholding tax has been withheld pursuant to sections 65-65D…*" (emphasis added): see the translations at paragraph 6 of the Validity Particulars and paragraph 43 of the Fletcher, Godson and Jain Defence.

154.2. The expression "*show that*" in the first sentence of paragraph 32 of the Validity Particulars reflects the fact that, if there is a dispute about whether this requirement was met, the burden of proof is on the WHT applicant.

154.3. In practice, and in the absence of an error or fraud, the requirement that tax should have been withheld from the dividends would usually be met as long as: (i) the WHT applicant owned the shares at the date when dividends were declared on them; and (ii) the WHT applicant received dividends, directly or indirectly (i.e. in a manner traceable to) from the company. This is because, in

normal course, the company would have withheld tax from the dividends distributed by it to pay such tax to SKAT.

154.4. At all times, Mr Fletcher, Mr Godson and the Jain Defendants were aware that it was impossible for any tax to have been withheld in respect of specific dividends due to the circular and self-cancelling nature of the purported trades.

155.  As to paragraphs 131, 144 and 145 of the Fletcher, Godson and Jain Defence, paragraph 33 above is repeated.

## (VII)    THE HK DEFENCE

156.  As to paragraph 6(1) of the HK Defence, which adopts paragraphs 21 to 22 and 65 to 66 of the DWF Defence, paragraphs 34 and 35 above are repeated.

157.  As to paragraph 7(1) of the HK Defence, which adopts paragraphs 33 to 34 and 68 to 70 of the DWF Defence, paragraph 49 above is repeated.

158.  As to the second sentence of paragraph 8(1) of the HK Defence, which adopts paragraphs 7 to 18 of the DWF Defence, paragraphs 8 to 29 above are repeated.

159.  As to paragraph 8(2) of the HK Defence:

159.1. As to the first sentence, which adopts paragraphs 19 to 22 and 24 to 29 of the HK Defence, SKAT's reply to the DWF Defence as set out in paragraphs 31 to 35 and 36 to 41 above is repeated.

159.2. As to the remainder of paragraph 8(2), it is denied that the payments received by Europa and Khajuraho constituted "*dividends*" within the meaning of the Article 10(3) of the Denmark-UK Treaty or Article 10(3) of the Denmark-Luxembourg Treaty:

(a)    In order for these payments to fall within the purview of the phrase "*income from shares*", Europa and Khajuraho had to have owned shares, which they did not. Paragraphs 14 to 19 of the Validity Particulars are repeated.

(b)    These payments did not fall within the purview of the phrase "*income from other corporate rights which is subjected to the same taxation treatment as income from shares by the laws of* [Denmark]" either for the same reason. Paragraph 45.3 above is repeated.

49

160.   As to paragraph 8(3A) of the HK Defence, which adopts paragraphs 62A to 62F of the DWF Defence, SKAT's reply to the DWF Defence as set out in paragraphs 61 to 68 above is repeated.

161.   As to paragraph 8(4) of the HK Defence, which adopts paragraphs 72 to 75 of the DWF Defence, SKAT's reply to the DWF Defence as set out in paragraphs 71 and 72 above is repeated.

162.   As to the second sentence of paragraph 8(5) of the HK Defence, which adopts paragraphs 76.2 to 76.4 of the DWF Defence, SKAT's reply to the DWF Defence as set out in paragraphs 71 and 72 above is repeated.

163.   As to paragraph 8(6) of the HK Defence, which adopts paragraphs 77 of the DWF Defence, SKAT's reply to the DWF Defence as set out in paragraph 73 above is repeated.

164.   As to paragraph 8(8) of the HK Defence, which adopts paragraphs 81 to 88 of the DWF Defence, SKAT's reply to the DWF Defence as set out in paragraph 74 above is repeated.

165.   As to paragraph 8(10) of the HK Defence, which adopts paragraphs 93 to 95.1 of the DWF Defence, SKAT's reply to the DWF Defence as set out in paragraph 75 above is repeated.

166.   As to paragraph 9(2) of the HK Defence, which adopts paragraphs 45 to 48 of the DWF Defence, SKAT's reply to the DWF Defence as set out in paragraphs 52 to 55 above is repeated.

167.   As to the first sentence of paragraph 12(2) and paragraph 28 of the HK Defence, paragraph 33 above is repeated.

Michael Fealy QC

Jamie Goldsmith QC

Sam O'Leary

James Ruddell

KV Krishnaprasad

6 November 2020

50

**Statement of Truth**

The Claimant believes that the facts stated in this Reply are true. The Claimant understands that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed: _____

Name: Stuart McNeill

Position: Partner, Pinsent Masons LLP

Date: 6 November 2020