

MARCIA WAGNER
EXHIBIT 5352
04 - 14 - 2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CUSTOMS AND TAX ADMINISTRATION O0F THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | MASTER DOCKET<br><br>18-md-2865 (LAK) |

# EXPERT REBUTTAL REPORT OF MARCIA S. WAGNER

# CONFIDENTIAL PURSUANT TO RULE 26(C) PROTECTIVE ORDER

{14353/A0678785.1}

criminal activity.[10]  Thus, the IRS had little reason based on the limited information it had to question the tax-qualified status of the RJM Plan.  The sole consequence of the audit, as stated in the IRS closing letter, dated February 3, 2020, was "Our recent examination of your return(s) [Form 5500-EZ] for the above year(s) [2016], shows *no change is necessary in the information reported*.  We are pleased to inform you that we have accepted the returns, as filed."[11] (Italics added.)  This result was in no way a determination of the qualified status of the RJM Plan or any other Plan.

11.     The RJM Plan may have been better positioned than other defendant Plans to satisfy certain conditions for tax-qualified status, such as the trade or business requirement, due to the fact that its LLC sponsor had been established a number of years before the Danish trading began and was able to assert that the LLC actively engaged in a trade or business.  However, while the RJM Plan's unique history and circumstances might enable it to avoid retroactive disqualification on these grounds, it nevertheless engaged in many of the other operational defects discussed in my Initial Expert Report and should have been disqualified on that basis.[12]

---

[10] *E.g.*, in May 2021, after investigating Solo Capital, the U.K.'s FCA found that "purported" trading by Solo Capital's clients and settlement of the trades by the Solo Group was "*highly suggestive of sophisticated financial crime.*"  FCA, Final Notice to Sapien Capital at 3-4 (May 6, 2021), available at https://www.fca.org.uk/publication/final-notices/sapien-capital-limited-2021.pdf (Italics added.)

[11] IRS Form Letter 992-A, WH-MDL-00358607.

[12] Even in those few cases where the LLC plan sponsors were longstanding entities and disregard of the trade or business requirement was less transparent, it appears that the LLCs owed their longevity to the fact that they had been dormant off-the shelf shell entities. The Argre principals maintained many such LLCs for use as needed to which their owners arbitrarily assigned consulting income earned in the owners' personal capacities without regard to which LLC had actually performed the services. See, *e.g.* van Merkensteijn Dep. Tr. at 289:20-22.  In addition, van Merkensteijn testified that he and Markowitz had a reciprocal arrangement pursuant to which their various LLCs would bill the LLCs of the other party to the arrangement (and the LLCs of their respective spouses) for services rendered in advising and helping each other and investigating potential transactions for their pension plans. The aggregate billings by the LLCs of each party to the arrangement were intended to be commensurate. Id. at 281:17-288:16. Such practices by van Merkensteijn and Markowitz had the effect of artificially creating trade or business income for the LLCs that would have supported sponsorship of a 401(k) plan and, accordingly, should be disregarded to the extent created by such practices.  LLC owners were generally deficient with respect to timely documenting the nature and magnitude of the consulting services purportedly performed by the LLC Plan sponsors

Even if the IRS audit had considered all of the tax qualification issues raised in my Initial Expert Report and confirmed the RJM Plan's qualified status, or if the Plan were to receive such a confirmation in the future, in my experience, the determination would be meaningless and should be overturned once the IRS became aware of the larger picture of the Plan's participation in the Solo scheme.

12. Finally, the RJM Plan was in no way representative of all the other Plans subject to this litigation that were irrefutably deficient with respect to permanence and trade or business issues, as well as numerous other tax-qualification rules. Most Plan sponsors admitted that their newly established LLCs were funded with minimal assets, had never conducted any business activity and never generated any income.[13]

### D. EPCRS Would Not Be Available to Correct These Operational Defects

13. While the Reish Report may be correct from a quantitative perspective in asserting that in recent decades IRS audits seldom result in plan disqualification, that information has no bearing on whether the defendant Plans were or were not qualified. No matter how

---

and in keeping the service agreements and other contractual instruments between the LLCs and their clients up to date.

[13] Defendants Gavin Crescenzo, Doston Bradley and Matthew Tucci are typical of Defendants whose LLCs did not meet the trade or business requirement. Crescenzo began participating in Solo's scheme in early 2014 by forming a first round of three LLCs and three Plans (one each for himself, his wife and his brother). Crescenzo contributed about $100 to each LLC. Deposition of Gavin Crescenzo, November 24, 2020 at 47. In late 2014, Crescenzo formed 15 new LLCs and Plans, five each for himself, his brother, and his mother. Crescenzo testified that none of these entities conducted any business activity. Crescenzo Dep. Tr. at 45:16 – 46:20, 48:15-18 and 109:8-12.

Similarly, Defendant Doston Bradley established a number of LLCs for himself and his immediate family (wife, mother, father, and sister), funding many of the LLCs with only $1,000. Deposition of Doston Bradley, November 14, 2020 at 146. On deposition, Bradley admitted that none of these LLCs had engaged in an active trade or business. Bradley Dep. Tr. at 122:9-21, 126:21 – 127:19, 128:24 – 129:2, 130:5-10, 131:25 – 132:5 and 153:4-16. Bradley noted that he had been considering the acquisition of rental real estate for this purpose but acknowledged that he never followed through on this thought.

Like many others, Matthew Tucci formed or helped form 27 LLCs and Plans for himself, his family members, and his friends. The first two LLCs and Plans appear to have been set up for Tucci and his wife in August 2013. On deposition, Tucci admitted that his LLCs never generated business income of any kind. Tucci Dep. Tr. at 27:20 – 28:11, 34:12-22 and 36:4-20.

Expert Report, although some did. This disregard of norms meant that the Plans were never qualified notwithstanding simultaneous application of the prohibited transaction rules and the fact that many of the factors indicating violation of both the qualified plan and prohibited transaction rules overlapped.

F.  Improper Investment Strategy Can Result in Plan Disqualification

17. The Reish Report indicates that broad language in a trust agreement insulates the plan from disqualification based upon the investments that it selects. I disagree and, in my opinion, the Reish Report ascribes too much significance to the buffer provided by investment language in Plan instruments by ignoring the fact that such language cannot override fundamental plan standards, such as the operation of a plan for the exclusive benefit of its participants.[19] As a virtually universal norm in the retirement industry, a version of the exclusive benefit rule is present in all of the Defendant Plan documents I have reviewed[20] and limits the scope of any permissive plan investment language on which the Reish Report may be relying. Moreover, as I have previously pointed out, the Solo Capital transaction was not a real investment, since it did not require monetary contributions from the Plans; it was, therefore, a transaction outside Plan investment provisions.

---

[19] In IRS Revenue Ruling 73-532, 1973-2 C.B. 128, the Service held that a retirement plan trust that provided the trustee with complete power to invest trust funds without regard to whether investments may be new, speculative, hazardous, adventurous, or productive of income is not designed for the exclusive benefit of employees and does not qualify under Code Section 401(a). In Westchester Plastic Surgical Associates, P.C., T.C.M. 1999-369, the Tax Court stated that "there is no question that improper trust administration and investment policies may result in violations of the exclusive benefit rule." In Ada Orthopedic, Inc., T.C.M. 1994-606, the Tax Court held the exclusive benefit rule was violated when a plan invested in a tax shelter that would generate significant losses for a period of years before obtaining capital gains treatment. The Tax Court concluded that the sole purpose of the investment was to provide an additional source of capital to an enterprise controlled by the plan's trustee and family members.

[20] See, e.g., Article XII.B of the RJM Capital Pension Plan Trust which requires a Plan fiduciary, such as a Plan sponsor or investment manager, to "discharge his or her duties with respect to the Plan solely in the interests of the Participants and Beneficiaries and 1. For the exclusive purpose of (a) Providing benefits to Participants and their Beneficiaries; (b) Defraying reasonable expenses of administering the Plan; …" WH_MDL_00356217 – 00356218.

{14353/A0678785.1}                                11

in my opinion, the present litigation does not present a close case, and the Plans should be treated as arrangements calculated to rapidly obtain a high return with no effort or risk other than a small outlay for LLC and Plan documentation with most of the return going to the scheme's promoter. This was unrelated to the only legitimate purpose of a retirement plan which is the gradual accumulation of benefits to support plan participants in retirement. Because of their widespread departures from standards embraced by the retirement plan industry, the Plans in this case simply were not what they purported to be.

* * * * * * *

This Rebuttal is executed this first day of February 2022 at Boston, Massachusetts.

*[signature]*

Marcia S. Wagner