| **From:** | Custody <Custody@solo.com> |
|---|---|
| **Sent:** | Thursday, February 13, 2014 4:02 PM |
| **To:** | adam@RJMCapitalp.com |
| **Cc:** | Custody <Custody@solo.com>; Legal <Legal@solo.com> |
| **Subject:** | Updated Custody Agreement/Notice of termination |
| **Attach:** | US pension plan Onboarded-RJM.pdf |

Dear Client,

We provide you with written notice of termination of the existing client custody agreement and attach an updated copy of our client custody agreement for your reference (which replaces any existing client custody agreement).

Once reviewed, please print off one copy of the <u>full</u> agreement, sign and provide your title e.g. attorney/authorised signatory.  Please do <u>not</u> date any documentation.  Please send through a complete scan of the agreement and not just the signature page.

*Please note if we do not receive a complete scan of the custody agreement we will require the original to be sent to Legal, Solo Capital Partners LLP, 10 Exchange Square, Primrose Street, EC2A 2EN.*

If you have any questions please let me know.

Many thanks,

**Solo Capital Partners LLP**

10 Exchange Square, Primrose Street, London, EC2A 2EN

T: +44 (0)207 382 4940

F: +44 (0)207 628 0143

<u>custody@solo.com</u>

<u>www.solo.com</u>

Solo Capital Partners LLP is a limited liability partnership registered under the Laws of England and Wales and is authorised and regulated by the Financial Conduct Authority of the United Kingdom.

IMPORTANT - PLEASE NOTE: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this email in error please contact the sender and destroy this email.

This email message has been delivered safely and archived online by Mimecast.
For more information please visit <u>http://www.mimecast.com</u>

**THIS CLIENT CUSTODY AGREEMENT** is made on the date of          2014

**BETWEEN**

(1)    **SOLO CAPITAL PARTNERS LLP**, a limited liability partnership incorporated in England and Wales, with Limited Liability Partnership Number OC367979, whose registered office is at 10 Exchange Square, Primrose Street, London EC2A 2EN, England ("**Custodian**"); and

(2)    **RJM CAPITAL LLC PENSION PLAN**, a pension plan registered in the State of New York, United States of America and incorporated under the laws of the United States of America, with Federal Identification Number ░░░░0855, whose address is at 1010 Fifth Avenue, Suite 1D, New York, NY 10028, United States of America ("**Client**").

This Agreement, along with any schedules, addendums and amendments attached hereto, cancels, supersedes and replaces all previous Client Custody Agreements between the parties.

**IT IS AGREED AS FOLLOWS:**

401.    **DEFINITIONS AND INTERPRETATION**

401.1    In this Agreement:

| | |
|---|---|
| **"Authorised Trader"** | means a person authorised by the Client to enter into Transactions for and on behalf of the Client and such Authorised Trader shall have been previously notified to the Custodian by the Client; |
| **"Business Day"** | means any day on which banks are open for business in the City of London (other than a Saturday or a Sunday); |
| **"Cash"** | means money in any currency credited to an account and any similar claim for repayment of money; |
| **"Client Money Rules"** | means the FCA Rules in chapter 7 of that part of the FCA handbook known as CASS (as amended from time to time); |
| **"Common Data"** | means the data required to be reported to trade repositories pursuant to Table 2, Annex 1 to the Commission Delegated Regulation (EU) No. 148/2013 of 19 December 2012 (as applicable); |
| **"Counterparty Data"** | means the data required to be reported to trade repositories pursuant to Table 1, Annex 1 to the Commission Delegated Regulation (EU) No. 148/2013 of 19 December 2012 (as applicable); |
| **"EMIR"** | means Regulation (EU) No. 648 of the European Parliament and of the Council of 4 July 2012 on OTC derivatives, central counterparties and trade repositories entered into force on 16 August 2012 as supplemented by the Commission Delegated Regulation (EU) No. 148/2013 of 19 December 2012 and as amended or supplemented from time to time by any other regulation or law; |
| **"FCA"** | means the United Kingdom's Financial Conduct Authority or any successor body; |

1

MPSKAT00104151

| | |
|---|---|
| "**FCA Rules**" | means the rules of the FCA from time to time; |
| "**FSCS**" | means the United Kingdom's Financial Services Compensation Scheme; |
| "**FSMA**" | means the Financial Services and Markets Act 2000; |
| "**Investments**" | means all assets other than Cash of the Client held or administered pursuant to this Agreement; |
| "**Personal Data**" | means information about the Client and its employees which may constitute personal data for the purposes of Data Protection Act 1998; |
| "**Portal**" | means an online portal to enable the Client to submit Requests to the Custodian; |
| "**Portal Services**" | means any services provided by the Portal; |
| "**Property**" | means any Cash and Investments of the Client held or administered pursuant to this Agreement; |
| "**Request**" | means an electronic trade request to purchase, sell, lend or borrow equities, derivative contracts, futures, options and/or any other products as the parties may agree; |
| "**Request Acknowledgement**" | means an electronic mail from the Custodian to the Client which acknowledges receipt of the Request submitted by the Client; |
| "**Transactions**" | means any purchasing, selling, lending or borrowing of equities, debt securities, futures, options, derivative contracts and/or any other products as agreed between the Custodian and the Client in accordance with this Agreement; and |
| "**TTC Funds**" | has the meaning given to it in Clause 4.3. |

401.2   In this Agreement, unless the context otherwise requires:

401.2.1   clause and schedule headings are for convenience only and shall not be taken into account in the interpretation of this Agreement;

401.2.2   references to any act, statute, statutory provision, rule or regulation shall include a reference to that provision as amended, re-enacted or replaced from time to time whether on or after the date of this Agreement;

401.2.3   words incorporating the masculine gender only include the feminine and neuter genders and words including the singular number only include the plural number and vice versa; and

401.2.4   references to any party hereto or to any other person shall include a reference to any successor or assignee of such person or assignee.

402.   **REGULATION AND CLIENT CLASSIFICATION**

402.1   The Custodian is authorised and regulated by the FCA.

2

MPSKAT00104152

402.2    The Client acknowledges that the Custodian will treat the Client as a professional client for the purposes of the FCA Rules. The Client is entitled to request a different client categorisation, but it is the policy of the Custodian not to agree to any request for categorisation as a retail client.

403.    **APPOINTMENT OF CUSTODIAN**

403.1    With effect from the date of this Agreement the Client appoints the Custodian to act as custodian of the Property and to provide such other services to the Client as set out in this Agreement, and the Custodian accepts such appointment pursuant to the terms of this Agreement.

403.2    The Client authorises the Custodian to appoint any person to act as sub-custodian of the Property on such terms as the Custodian thinks fit.

403.3    The Custodian will exercise reasonable skill in the selection and monitoring of any sub-custodian in accordance with the FCA Rules.

403.4    If so requested, the Client will promptly arrange for the signature, execution or production of any documents necessary to carry out the appointment of the Custodian. Where the Client envisages a delay or failure in delivering such documents as required by this Agreement, the Client shall notify the Custodian forthwith.

404.    **LENDING, SET-OFF AND TITLE TRANSFER COLLATERAL ARRANGEMENTS**

404.1    If requested by the Client the Custodian may, in its sole discretion, advance funds to the Client to facilitate the settlement of any transaction relating to Property, or settle any transaction relating to Property for the account of the Client. Any such funds advanced or amounts settled by the Custodian will immediately become repayable by the Client to the Custodian on demand.

404.2    Any funds received or held by the Custodian for the account of the Client in connection with any transaction relating to Cash (including, without limitation, any collateral or margin) and any dividend, distribution or other income on any Investments received by the Custodian for the account of the Client shall be set off, immediately and without notice to the Client, against any liability of the Client to the Custodian that has arisen from or as a result of this Agreement (including, without limitation, any liability of the Client which may have arisen as a result of the Custodian advancing funds to the Client or settling any transaction for the account of the Client under Clause 4.1).

404.3    The Client agrees as a condition to the continued provision by the Custodian of services to the Client, that all Cash transferred to the Custodian by the Client, on behalf of the Client, for the account of the Client or which is otherwise held by the Custodian for the Client from time to time for the purpose of securing or otherwise meeting the Client's obligations to the Custodian whether present or future, actual or contingent or prospective shall be transferred to the Custodian with full ownership so that the Client no longer has a proprietary claim over it ("**TTC Funds**").  The Client acknowledges and agrees that:

404.3.1    all right, title and interest in and to TTC Funds shall vest in the Custodian free and clear of any liens, claims, charges or encumbrances or any other interest of the Client or any third person;

404.3.2    the Custodian will not segregate TTC Funds from the Custodian's own assets and the Custodian may use the TTC Funds in the course of its own business.  If the Custodian becomes insolvent, the Client will rank only as a general creditor;

3

MPSKAT00104153

404.3.3   no mortgage, charge, lien, pledge, encumbrance or other security interest is intended to be or is created in favour of the Custodian in the TTC Funds;

404.3.4   TTC Funds shall be treated by the Custodian as collateral in accordance with Chapter 3 of the FCA handbook known as CASS (as amended from time to time) and not as client money in accordance with the Client Money Rules in that sourcebook; and

404.3.5   if the Custodian determines in its discretion that the TTC Funds held are more than is necessary to cover the Client's obligations whether present or future, the Custodian will return an appropriate amount of TTC Funds to the Client.

404.4   On the effective date of termination of this Agreement as notified by one party to the other in accordance with Clause 19.1 or Clause 19.2, or upon the Custodian receiving notice from the Client that the Client does not wish to receive any further services from the Custodian, the Custodian will, at the request of the Client, promptly transfer all TTC Funds, subject first to any set off pursuant to Clause 4.2 above, to an account designated by the Client.

404.5   The parties acknowledge that, at any time, the Client may request for Cash to be treated as Client Money as defined and set out in the Client Money Rules and not as TTC Funds. The Client agrees and acknowledges that the acceptance of such request by the Custodian may be conditional on amendments being made to this Agreement and any Fees pursuant to Clause 15 (Fees).

405.   **MINIMUM ACCOUNT BALANCE**

405.1   Upon execution of this Agreement, the Client is required immediately to transfer an amount equal or greater to €20,000 (twenty thousand Euros) (or equivalent currency) of cleared and readily available Cash to its account held by the Custodian ("**Minimum Cash Balance**") as security for the prospective obligations of the Client.

405.2   The Client agrees and acknowledges that it is required and must maintain at all times the Minimum Cash Balance up until this Agreement terminates in accordance with Clause 19 (Termination).

405.3   The Client agrees and acknowledges that from time to time the Custodian may require the amount of the Minimum Cash Balance to be decreased or increased and shall instruct the Client accordingly.

405.4   For the avoidance of doubt, upon the execution of this Agreement and from time to time the Custodian can deduct from the Minimum Cash Balance any fees that may accrue or be invoiced including but not limited to the fees set out in the Schedule (Fees).

405.5   The Custodian shall not be liable to pay interest to the Client on any credit balance in any account or on any other sum held by the Custodian, or account to the Client for any interest received by the Custodian on such sums.

406.   **CUSTODY OF CLIENT INVESTMENTS**

406.1   The Custodian will arrange for Investments to be held by the Custodian or by sub-custodians appointed by the Custodian.

406.2   Investments may be pooled with the investments of other clients. Individual entitlements to investments may not be identifiable by separate certificates or other physical documents of title

4

or equivalent electronic records and, should the Custodian or any sub-custodian appointed by it default, any shortfall may be shared pro-rata among all clients of the Custodian whose investments are registered or held in the same name and the Client may not receive its full entitlement.

406.3    Where any Investments are in uncertificated form, or are otherwise transferable by book entry transfer, the Custodian or any sub-custodian appointed by it may (where this is market practice) use the services of any securities depository, clearing or settlement system, account controller or other participant in the relevant system, on such terms as it thinks fit, for the purposes of the holding and transfer of such investments (or entitlements thereto).

406.4    The Client acknowledges that although Investments (requiring registration or recording) will ordinarily be registered or recorded in the name of a nominee, the Custodian or any sub-custodian appointed by it may from time to time (if the Investments are subject to the applicable law or market practice of a jurisdiction outside the United Kingdom and it is in the Client's best interests to register or record Investments in that way or it is not feasible to do otherwise because of the nature of the applicable law or market practice) register or record Investments in the name of a sub-custodian or the Custodian itself.

406.5    In addition to any other rights of the Custodian, the Custodian shall have a general lien on all Investments held or administered by it or by any sub-custodian until the full and final satisfaction of all liabilities of the Client towards the Custodian pursuant to this Agreement (including, without limitation, of all liabilities of the Client which may have arisen as a result of the Custodian advancing funds to the Client or settling any transaction for the account of the Client under Clause 4.1). This lien is in addition, and without prejudice, to the transfer of TTC Funds to the Custodian under Clause 4.3.

406.6    The Investments may also be subject to a lien in favour of any sub-custodian, nominee or agent appointed by the Custodian in accordance with the Agreement in respect of charges relating to the administration and safekeeping of such assets or of any depositary or settlement system.

407.    **SETTLEMENT**

407.1    On behalf of the Client, the Custodian or any sub-custodian may, in its sole discretion assist with any clearing and settlement (as required) of any Transactions.

407.2    The provision of clearing and settlement services under this Agreement shall be subject to the Custodian holding or receiving all necessary instructions, documents or funds (as applicable) and on such basis as is market practice for the type of investment and market concerned and normally on the basis of "cash against delivery".

407.3    The Client agrees and acknowledges that such Transactions may be given up to the Custodian by third party executing brokers acting on behalf of the Client and that the Custodian may act solely on the instructions from such third party executing broker.

407.4    Notwithstanding any provision contained in any relevant give up agreement, if the Custodian:

407.4.1    declines to accept a Transaction on behalf of the Client, the Custodian shall notify the Client of such refusal but is not obliged to give the Client any reason for such refusal; or

407.4.2    accepts a Transaction from a third party executing broker quoting a reference number or mnemonic applicable to the Client, such Transaction shall be binding and conclusive on the Client immediately whether or not the details of such Transaction has been confirmed previously to the Custodian by the Client.

5

    MPSKAT00104155

407.5    Delivery or payment by the other party to any such transaction will be at the Client's risk, and the Custodian's obligation to account to the Client for any investment or the proceeds of sale of any investment will be subject to Clause 4 (*Lending, Set Off and Title Transfer Collateral*) and conditional upon receipt by the Custodian or its sub-custodian of the relevant documents or sale proceeds from the other party.

407.6    The Custodian or any sub-custodian appointed by the Custodian may operate a settlement system under which the Client is debited with the purchase cost or credited with the proceeds of sale on the usual settlement (or subscription) days for the market concerned, conditionally upon settlement being ultimately effected.  This may result in either a benefit or a loss to the Custodian or sub-custodian or the Client where clearing and settlement is effected at other times. The Custodian or sub-custodian reserves the right to effect the cancellation of any debit or credit so attributed to the Client if there are unreasonable delays or difficulties in settlement and/or clearing. The Custodian may reverse any erroneous debit or credit made pursuant to this Clause 7 and the Client shall be responsible for any direct or indirect costs or liabilities resulting from such reversal.

407.7    For the avoidance of doubt, the Custodian or its sub-custodian shall not be responsible or liable:

407.7.1    for any losses, costs, expenses or damages arising from any discrepancy between details in instructions from the Client to such third party executing broker and details of a Transaction submitted to the Custodian for clearing and settlement;

407.7.2    for losses arising out of effecting delivery or payment against an expectation of receipt, save where such delivery or payment was contrary to local market practice as a direct result of any gross negligence conducted by the Custodian; and

407.7.3    for the delay, cancellation, termination and/or failure of any Transaction other than as a direct result of any gross negligence conducted by the Custodian.

## 408.    INCOME COLLECTION AND CORPORATE ACTIONS

408.1    The Custodian (or any sub-custodian appointed by it) will attend to the collection of all income due on, and the vesting of all other rights and entitlements attaching to, Investments.

408.2    Dividends and distributions and any other income on any Investments will be credited to the Client on the date when the Custodian receives notification of receipt by the sub-custodian or after receipt of funds following any necessary currency conversion, subject to the provisions of Clause 4 (*Lending, Set Off and Title Transfer Collateral*).

408.3    The Custodian will have no obligation to notify the Client of any offers, rights issues, investor meetings and other corporate actions of which the Custodian has received notice nor will the Custodian be obliged to exercise any voting rights relating to any Investments held by the Custodian or any sub-custodian appointed by it.

## 409.    PORTAL SERVICES

409.1    The Custodian shall provide the Portal Services to the Client from the date of this Agreement.

409.2    The Portal Services shall continue to be supplied, unless this Agreement is terminated in accordance with Clause 19 (*Termination*).

409.3    The Custodian shall:

6

409.3.1  provide each Authorised Trader with a unique log-in ID and password to access the Portal; and

409.3.2  use reasonable endeavours to provide the Portal Services in all material respects.

409.4  For the avoidance of doubt, Requests shall be deemed to be received by the Custodian when the Client receives a Request Acknowledgement.

409.5  The Custodian reserves the right to modify the Portal Services provided to the Client from time to time.

409.6  The Client shall:

409.6.1  provide the Custodian with a list of Authorised Traders prior to the date of this Agreement;

409.6.2  request from the Custodian an ID for each Authorised Trader;

409.6.3  ensure that each Authorised Trader will only access the Portal using the relevant ID;

409.6.4  obtain the prior consent of the Custodian with respect to any proposed change to the Authorised Traders and after obtaining such consent undertake to immediately provide to the Custodian any revisions to the list of Authorised Traders;

409.6.5  safeguard all IDs provided to it by the Custodian;

409.6.6  promptly notify the Custodian of any unauthorised disclosure or use of any ID;

409.6.7  co-operate with the Custodian in all matters relating to the Portal Services;

409.6.8  agree to be bound by any Requests, whether or not authorised by the Client , that are issued in the Client 's name; and

409.6.9  provide, in a timely manner, such information as the Custodian  may reasonably require, and ensure that it is complete and accurate in all material respects.

409.7  In consideration of the payment by the Client of the Fees, Solo will provide or will procure that an external service provider provides the following services to the Client:

409.7.1  recording Transactions entered into by the Client within Solo's systems to provide the Client with a record of its trading activity;

409.7.2  preparing trade confirmations for Transactions entered into by the Client and issuing those confirmations to the Client and, on behalf of the Client, to its counterparties;

409.7.3  if the Client requests and at the Client's expense, making required trade and transaction reports to the relevant authorities or trade repositories in relation to the Client's Transactions.

409.8  The provision of the services described in clause 9.7 shall be subject to the Client providing Solo with all necessary transactions details via the Portal or otherwise in writing to enable Solo to perform those services.

7

MPSKAT00104157

409.9    Neither Solo nor any external service provider appointed by Solo shall be responsible or liable for:

409.9.1    any losses, costs, expenses or damages arising from any discrepancy or error in the details or instructions provided by the Client;

409.9.2    for the delay, cancellation, termination and/or failure of any transaction other than as a direct result of any gross negligence of Solo.

409.10    The Client further agrees and acknowledges that:

409.10.1    the Custodian will not be responsible for establishing the accuracy of any Requests submitted by or on behalf of the Client;

409.10.2    notwithstanding certain security, corruption, transmission error and access availability risks associated with using open networks such as the internet in order to access the Portal, the Client hereby expressly assumes such risks and the Client shall make its own independent assessment of the adequacy of the internet (as an open network) and security procedures provided by the Custodian; and

409.10.3    the Custodian owns all intellectual property rights in the Portal and the Portal Services. Except as expressly stated herein, this Agreement does not grant the Client any rights to, or in, patents, copyrights, database rights, trade secrets, trade names, trademarks (whether registered or unregistered), or any other rights or licences in respect of the Portal, Portal Services or any related documentation.

410.    **TRADE REPORTING**

410.1    The Custodian may agree to, if requested and notified by the Client in writing, assist the Client with its reporting obligations required pursuant to EMIR ("**Trade Reporting**").

410.2    The Client and Custodian agree and acknowledge that (a) the Custodian may appoint an external service provider to assist with the Trade Reporting and (b) Trade Reporting shall be restricted and limited to:

410.2.1    the Custodian reporting Counterparty Data and Common Data to a trade repository in accordance with the terms and conditions of EMIR;

410.2.2    derivative contracts entered into by the Client and the Custodian as counterparty;

410.2.3    sending one report to the trade repository containing the relevant required Counterparty Data and Common Data; and

410.2.4    starting at such time as the reporting obligation for such class of derivative contract comes into force pursuant to EMIR,

and Trade Reporting may include if and when required by applicable rules (and if permitted to be delegated to the Custodian or a service provider by the Client) contract and collateral valuation data.

410.3    Any Trade Reporting undertaken by the Custodian or any service provider shall be subject to the Client providing the Custodian or any service provider with such information promptly as is necessary in order for the Custodian or external service provider to assist with the Trade Reporting.

8

Highly Confidential

410.4    The Client agrees and acknowledges that any data required for Trade Reporting shall be agreed as early as practicably possible before Trade Reporting.

411.    **INSTRUCTIONS**

411.1    Instructions from the Client or a third party executing broker will be acknowledged by the Custodian acting upon them unless the Client is advised that the Custodian believes that such action may not be practicable or might involve either party breaching applicable law or FCA Rules.

411.2    The Custodian may rely upon and act upon any instruction which purports to have been given (and which is reasonably accepted as having been given) by or on behalf of any person notified by the Client from time to time as authorised to instruct the Custodian in respect of the Property by whatever means agreed by the Custodian and unless the Custodian shall have received written notice to the contrary, whether or not the authority of any such person shall have been terminated.

411.3    Subject to Clause 11.2, any instruction to be given to the Custodian by the Client under this Agreement shall be in such form as may be specified by the Custodian from time to time and shall be sent to the Custodian's address stated herein (or as may otherwise be notified to the Client by the Custodian) and will take effect upon its actual receipt.

412.    **REPRESENTATIONS AND WARRANTIES**

412.1    The Client hereby represents and warrants to the Custodian on a continuing basis that:

412.1.1    it is a duly incorporated or formed entity validly existing under the laws of its jurisdiction of incorporation or formation and has all requisite corporate power and authority to own its assets and conduct its business as it is being conducted;

412.1.2    each Authorised Trader will be duly authorised by the Client to perform all the actions made available as part of the Portal Services;

412.1.3    it has full corporate or other applicable authority and power to execute, deliver and perform its obligations under this Agreement, to deal with the Property in the manner contemplated in this Agreement and to carry out the transactions contemplated herein;

412.1.4    it has taken all necessary corporate, shareholder, member, manager or other action and obtained all required or desirable authorisations to enable it to execute, deliver and perform its obligations under this Agreement and the transactions contemplated herein and to make this Agreement admissible in evidence in the Client's jurisdiction of incorporation or formation, and any such authorisations obtained or effected are in full force and effect;

412.1.5    the execution, delivery and performance of the obligations in, and transactions contemplated by, this Agreement do not and will not contravene or conflict with:

(KK)    the Client's constitutional documents;

(LL)    any agreement or instrument binding on the Client's assets, or constitute a default or termination event (however described) under any such agreement or instrument; or

(MM)    any applicable law or regulation or judicial or official order;

9

MPSKAT00104159

412.1.6    its obligations under this Agreement are legal, valid, binding and enforceable and this Agreement constitutes the Client's legal, valid and binding obligations enforceable in accordance with its terms;

412.1.7    it is the legal and beneficial owner and has good, valid and marketable title to all of its assets and neither the Property nor any part of it is subject to any encumbrance or security interest which would prevent the Custodian from performing its obligations under this Agreement;

412.1.8    it has taken its own investment, financial, tax, accounting or legal advice in respect of any Transaction and the services provided under this Agreement. For the avoidance of doubt, the Custodian and its affiliates do not provide legal, accounting, tax, financial and investment advice in relation to Transactions that are subject to this Agreement;

412.1.9    nothing in this Agreement shall be construed as conferring fiduciary status upon the Custodian;

412.1.10    the Fees set out at Clause 15 (Fees) have been agreed between the parties on reasonable commercial terms for the services set out in this Agreement;

412.1.11    it has not relied on or been induced to enter into this Agreement by any representation or warranty of any nature, whether express or implied, other than expressly set out in this Agreement and the Custodian is not liable to the Client for any representation or warranty of any nature, whether express or implied,  except for those set out in this Agreement; and

412.1.12    the choice of English law as the governing law of this Agreement will be recognised and enforced in its jurisdiction of incorporation and any judgment obtained in England or Wales in relation to this Agreement will be recognised and enforced in that jurisdiction.

413.    **DATA PROTECTION**

413.1    Under this Agreement, the Custodian may receive Personal Data.

413.2    The Custodian warrants that it shall:

413.2.1    process the Personal Data for the purpose of providing any services under this Agreement;

413.2.2    take appropriate technical and organisational measures against the unauthorised or unlawful processing, accidental loss of or destruction or damage to Personal Data; and

413.2.3    process the Personal Data in compliance with all applicable laws and regulations.

414.    **CONFIDENTIALITY**

414.1    The Client will not disclose information of a confidential nature acquired in consequence of it, except for information which it may be entitled or bound to disclose by law or regulation, or which is requested by any regulatory or fiscal authorities or court of competent jurisdiction, or which is disclosed to its advisers if reasonably necessary for the performance of their professional services.

10

Highly Confidential                                                                                    MPSKAT00104160

414.2    Notwithstanding Clause 14.1, the Client shall keep in strict confidence all technical or commercial know-how, specifications, inventions, processes or initiatives which are of a confidential nature and have been disclosed by the Custodian to the Client and disclosed by the Client to its employees and officers and any other confidential information concerning the Custodian's business or its products which the Client may obtain, including but not limited to, the Portal Services and the Portal. The Client shall ensure that its employees and officers, to whom it discloses such information comply with this Clause 14.2.

414.3    The Client shall not use any such information provided under this Agreement for any purpose other than to perform its obligations under this Agreement.

414.4    All materials and data supplied by the Custodian to the Client shall, at all times, be and remain the exclusive property of the Custodian, and shall not be disposed of or used other than in accordance with the Custodian's written instructions or authorisation.

414.5    The Custodian may disclose information relating to the Client and/or the Property to any delegates and agents under this Agreement, to any market counterparty or any broker (in accordance with market practice) in relation to Transactions undertaken for the Client and, where relevant, to any sub-custodian or external service provider appointed by the Custodian to assist or enable the proper performance of its services under this Agreement.

414.6    For the avoidance of doubt, the Custodian shall not, when performing any Trade Reporting, be considered in breach of any restriction on disclosure of information imposed by an agreement or by any legislative, regulatory or administrative provisions.

415.    **FEES**

The Client agrees to immediately pay the Custodian for its services under this Agreement in a timely manner when due and payable and in the amount as set out in the Schedule (*Fees*) (as amended from time to time), together with the Custodian's reasonable out of pocket or incidental expenses.

416.    **SCOPE OF RESPONSIBILITY**

416.1    The Custodian will use all reasonable care in performing its obligations under this Agreement.

416.2    If any sub-custodian should fail to deliver any necessary documents or to account for any Investments, the Custodian will take all reasonable steps on behalf of the Client to recover such documents or Investments, or any sums due, or compensation in lieu thereof. All reasonable costs incurred by the Custodian shall be paid by the Client.

416.3    Notwithstanding Clause 16.2 above, the Custodian will not be liable for any act or omission, or for the insolvency, of any sub-custodian appointed by the Custodian or for any loss arising therefrom unless any loss suffered by the Client is directly caused by a breach by the Custodian of its obligations in relation to the selection and monitoring of any sub-custodian set out in Clause 3.3.

416.4    In no circumstances will the Custodian have any liability arising from this Agreement for any indirect, special, incidental, speculative, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profit, goodwill, business opportunity or anticipated savings), even if the Custodian was aware of the possibility of such damages and regardless of the form of action.

11

    MPSKAT00104161

416.5    The Client acknowledges and understands that any and all risk and trading losses arising from or as a result of any Requests submitted on behalf of the Client will be the responsibility of the Client and that the Custodian will in no way be responsible for these.

416.6    The Client agrees and acknowledges that:

416.6.1    all dealings by the Custodian shall be based on instructions from the Client;

416.6.2    the responsibility of the completeness and accuracy of Trade Reporting remains with the Client as counterparty at all times and that the Client does not relieve itself of its obligations of Trade Reporting or any other obligations to report trades pursuant to EMIR or any other applicable law or regulation;

416.6.3    the Custodian or any external service provider is only assisting with Trade Reporting; and shall be in no way responsible for Trade Reporting; and

416.6.4    the Custodian or any external service provider shall not be (a) providing any advice relating to Trade Reporting, in particular whether the Client is required to undertake Trade Reporting and (b) advising on the merits of any Trade Reporting.

416.7    In no event shall the Custodian be liable to the Client for any damage or loss resulting from or caused by events or circumstances beyond the Custodian's reasonable control, including, without limitation, nationalisation, expropriation, currency restrictions, suspension or disruption of the normal procedures and practices, or disruption of the infrastructure, of any securities market or securities system, interruptions in telecommunications or utilities, acts of war or terrorism, riots, revolution, acts of God or other similar events or acts.

416.8    Nothing in this Agreement or any services the Custodian provides to the Client shall give rise to any fiduciary or equitable duties by the Custodian to the Client beyond the services and duties which are expressly contemplated by this Agreement.

416.9    Nothing in this Agreement shall exclude or limit any liability of the Custodian which cannot be lawfully excluded or limited.

417.    **INDEMNITY**

417.1    The Client agrees to indemnify the Custodian and its sub-custodian  against all costs, losses, claims and expenses which may be incurred by or made against the Custodian and/or the sub-custodian in connection with this Agreement:

417.1.1    in consequence of any breach by the Client of this Agreement; or

417.1.2    arising out of any action properly taken by the Custodian and/or its sub-custodian in accordance with this Agreement.

418.    **STATEMENTS AND OTHER INFORMATION**

The Custodian will prepare statements at such intervals as may be agreed by the Custodian and the Client.  The value of the Property shown on the statements will be determined by the Custodian using information received from reputable sources and/or the Custodian's reasonable judgement.

12

    MPSKAT00104162

419. **TERMINATION**

419.1    The Client may terminate this Agreement at any time on giving the Custodian at least five Business Days' written notice.

419.2    The Custodian may terminate this Agreement at any time on notice (which may be immediate and if given orally shall be followed by written confirmation as soon as is practicable) to the other party.

419.3    On termination, the Custodian will account to the Client for the Property held pursuant to this Agreement and direct any sub-custodian to do likewise, and the provisions of Clause 4.4 shall apply.

419.4    If the Client gives notice of termination pursuant to Clause 19.1, the Client shall pay to the Custodian all reasonable costs incurred by the Custodian in transferring all Property and records held under this Agreement to another provider of services named by the Client.

419.5    If the Client gives notice of termination pursuant to Clause 19.1, it must provide full details of the Transactions in order for the Custodian to finalise any clearance or settlement obligations. If the Custodian gives notice of termination, then the Client must, within ten Business Days, notify the Custodian of details of its new clearer, failing which the Custodian may elect (at any time after the ten Business Day notice period) either to retain such Property until such details are given, continuing to charge fees due, or deliver such Property to the Client in accordance with the FCA Rules. The Custodian shall in any event be entitled to deduct any amounts owing to it prior to delivery of the Property (and, accordingly, the Custodian shall be entitled to sell any Investments and apply the sale proceeds in satisfaction of amounts owing to it).

420. **NOTICES**

Unless otherwise agreed or set out within this Agreement, written notices (other than instructions) shall be made by email, registered mail or hand delivery to the address of the party concerned as set out on the first page of this Agreement unless notice of a new address is given to the other party in writing or by email. Unless otherwise set out within this Agreement, notice will not be deemed to be given unless it has been received. Where notice may be given by the Custodian by email, it shall be sent to the email address provided by the Client to the Custodian, and the provision of an email address by the Client to the Custodian constitutes consent by the Client to receiving such notices and other communication by email.

421. **FOREIGN LAW AND PRACTICE**

The Custodian draws to the attention of the Client the fact that, in certain overseas jurisdictions, there may be different settlement, legal and regulatory requirements to those applying in the UK and also different practices for the separate identification and segregation of the Clients' investments.

422. **FINANCIAL SERVICES COMPENSATION SCHEME**

The Custodian is a member of the FSCS. The FSCS is only available to certain types of claimants and claims, and payments to eligible claimants under the FSCS will vary depending on the type of protected claim the claimant makes in respect of the relevant institution. Payments under the FSCS in respect of investment business are subject to a maximum of payment to any eligible claimant of GBP 50,000. Further details on the FSCS are available at www.fscs.org.uk.

13

MPSKAT00104163

423.    **VARIATION**

423.1    The Custodian may amend the terms of this Agreement:

423.1.1    by written notice to the Client (which may be by email) and such amendment shall take effect ten Business Days following the date of the notice (or such later date as may be specified in the notice); or

423.1.2    to the extent that changes in legal and regulatory requirements necessitate an immediate change or changes in the manner in which the Custodian can provide services under this Agreement, by written notice to the Client (which may be by email) and such amendment shall take effect on the date of the notice.

423.2    Notwithstanding any other provision of this Agreement, proof that an email was transmitted to the email address provided by the Client in accordance with Clause 20 (*Notices*) will be sufficient proof of delivery of a notice pursuant to Clause 23.1, unless the Custodian has received an email within one (1) hour indicating that the notice has not been delivered.

423.3    Except as provided in Clause 23.1 above, this Agreement may only be varied by the written agreement of both parties.

424.    **ASSIGNMENT**

424.1    The Client shall not assign, transfer, charge, mortgage, subcontract or deal in any other manner with all or any of its rights or obligations under this Agreement.

424.2    The Custodian may at any time assign, transfer, charge, mortgage, subcontract or deal in any other manner with all or any of its rights or obligations under this Agreement.

425.    **FURTHER ASSURANCE**

At its own expense the Client must promptly upon request by the Custodian execute such documents (in such form) and provide such information and do all such other acts that the Custodian may reasonably require for the purpose of giving full effect to any services under this Agreement.

426.    **NO RIGHTS UNDER CONTRACTS (RIGHT OF THIRD PARTIES) ACT 1999**

A person who is not a party to this Agreement will have no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any of its terms.

427.    **SEVERANCE**

The invalidity, illegality or unenforceability (in whole or in part) of any terms of this Agreement in any jurisdiction shall not affect the validity, legality and enforceability of the remaining parts or the other parts of such terms (as applicable) in the relevant jurisdiction or any of the terms of this Agreement in any other jurisdiction.

14

Highly Confidential

428. **PREVIOUS AGREEMENT**

This Agreement (as may be amended from time to time) constitutes the entire agreement between the parties and supersedes all previous agreements in writing between the parties in relation to the appointment of the Custodian as the Client's custodian.

429. **WAIVERS**

No failure or delay by any party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or operate or be construed as a waiver or variation of it or preclude its exercise at any subsequent time and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

430. **GOVERNING LAW**

The Agreement (and any non-contractual obligations arising out of or in connection with it) will be governed by and construed in accordance with English law.  The English courts will have exclusive jurisdiction to settle any disputes or claims which may arise out of or in connection with the Agreement (including a dispute relating to any non-contractual obligation arising out of or in connection with this Agreement) for which purpose all parties agree to submit to such jurisdiction.

431. **SERVICE OF PROCESS**

Any party to this Agreement who does not have a place of business in England and Wales shall at all times maintain an agent for service of process and any other documents in proceedings in England or any other proceedings in connection with this Agreement.

432. **COUNTERPARTS**

This Agreement may be executed in any number of counterparts and by the parties to it on separate counterparts, each of which is an original but all of which together constitute one and the same instrument.


**EXECUTED BY**                                                  )
For and on behalf of **SOLO CAPITAL PARTNERS LLP**              )
                                                                )

Signed by:
Title: **Authorised Signatory**
                                                                )
**EXECUTED BY**                                                  )
For and on behalf of **RJM CAPITAL LLC PENSION PLAN**
                                                                )
                                                                )
                                                                )
Signed by:
Title:

15

Highly Confidential                                    MPSKAT00104165

**SCHEDULE**

**FEES**

433.   **INTRODUCTION**

433.1   This Schedule details the fees (including custody, clearing, settlement and execution fees) payable by the Client to the Custodian ("**Custody Fees**").

433.2   This Schedule shall be valid for a period of no less than 12 months from the date of this Agreement and is subject to a minimum monthly securities custody and clearing fee of EUR 1,250 ("**Minimum Fee**").

433.3   If the Client terminates this Agreement within the first 12 months of its commencement, the Custodian reserves the right to charge the balance of the Minimum Fee.

433.4   Custody Fees are not inclusive of exchange fees, Trade Reporting fees (including any fees of an external service provider), any trade repository fees, registration fees, stamp duty or any other fees designated by the Custodian together with VAT, disbursements and expenses if applicable ("**Additional Fees**"). All such Additional Fees will be passed to the Client at market rates (details of such market rates and related Additional Fees will be provided to the Client upon request).

433.5   The Custodian reserves the right to amend the Custody Fees detailed in this Schedule from time to time (including the Minimum Fee). The Custodian will notify the Client immediately if such change of Custody Fees (including the Minimum Fee) occurs.

434.   **CUSTODY AND SAFEKEEPING FEES**

| | |
|---|---|
| Safekeeping fee | 6 basis points (0.06% per cent. of the value of securities held overnight per annum), payable and calculated monthly based on a daily average of the Client's positions. |

435.   **CLEARING AND SETTLEMENT FEES**

| Market | Instrument type | Transaction Charges USD | Cancellation Charges USD | Non STP Charges USD |
|---|---|---|---|---|
| Austria | Equity | 18 | 45 | 45 |
| Belgium | Equity | 18 | 45 | 45 |
| Canada | Equity | 19.5 | 45 | 45 |
| Denmark | Equity | 18 | 45 | 45 |
| Finland | Equity | 18 | 45 | 45 |
| France | Equity | 18 | 45 | 45 |
| Germany | Equity | 18 | 45 | 45 |
| Ireland | Equity | 30 | 45 | 45 |
| Italy | Equity | 18 | 45 | 45 |
| Netherlands | Equity | 18 | 45 | 45 |
| Norway | Equity | 18 | 45 | 45 |
| Spain | Equity | 27 | 45 | 45 |
| Sweden | Equity | 18 | 45 | 45 |
| Switzerland | Equity | 21 | 45 | 45 |
| United Kingdom | Equity | 12 | 45 | 45 |
| United States | Equity | 15 | 45 | 45 |

16

Highly Confidential

436.     **FUTURES AND OPTIONS CLEARING AND EXECUTION FEES**

| Comments |
|---|
| Liffe B-clear Single Stock Futures & Options Block Trades cap at EUR 3,000 per Block Trade  + exch fees |
| Eurex Single Stock Futures & Option Block Trades cap at EUR 3,000 per Block Trade + exch fees |

| Contract group | Member type | Exchange method | Clearing fees |
|---|---|---|---|
| **AMERICAS** | | | |
| **Equity** | | | |
| **Chicago Mercantile Exchange** | | | |
| | | | **PER LOT** |
| +Nasdaq futures | Non member | Electronic | USD 0.53 |
| +Nasdaq futures | Non member | Floor | USD 0.53 |
| +S&P 500 index futures | Non member | Electronic | USD 0.53 |
| +S&P 500 index futures | Non member | Floor | USD 0.53 |
| **OCC Exchanges** | | | |
| +Equity index options | Non member | Electronic | USD 0.45 |
| +Single stock options | Non member | Electronic | USD 0.45 |
| **Foreign exchange** | | | |
| **Chicago Mercantile Exchange** | | | |
| +Foreign exchange futures | Non member | Electronic | USD 0.53 |
| +Foreign exchange futures | Non member | Floor | USD 0.53 |
| +Foreign exchange options | Non member | Electronic | USD 0.53 |
| +Foreign exchange options | Non member | Floor | USD 0.53 |
| **Europe, Middle East and Africa** | | | |
| **Equity** | | | |
| **Athens Derivatives Exchange** | | | |
| +FTSE/ASE-20 index futures | Non member | Electronic | EUR 0.38 |
| +FTSE/ASE-20 index options | Non member | Electronic | EUR 0.38 |
| **Bolsas Y Mercados Espanoles** | | | |
| +IBEX-35 index futures | Non member | Electronic | EUR 0.38 |
| +IBEX-35 index option | Non member | Electronic | EUR 0.38 |
| **Eurex** | | | |
| +Austrian single stock futures | Non member | Electronic | EUR 0.38 |
| +Austrian single stock options | Non member | Electronic | EUR 0.38 |
| +Belgian single stock futures | Non member | Electronic | EUR 0.38 |
| +Belgian single stock options | Non member | Electronic | EUR 0.38 |
| +DAX futures | Non member | Electronic | EUR 0.38 |

17

MPSKAT00104167

| | | | |
|---|---|---|---|
| +DAX options | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX index dividend future | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX 50 index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX 50 index options | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX dividend 50 options | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX real estate index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX sector index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX sector index options | Non member | Electronic | EUR 0.38 |
| +Dow Jones EURO STOXX select dividend 30 index future | Non member | Electronic | EUR 0.38 |
| +Dow Jones Global Titans 50 (SM) index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones Italy Titans 30 (SM) index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX 50 index future | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX 50 index options | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX 600 index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX 600 real estate index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX 600 sector index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX 600 sector index options | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX Large 200 index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX Mid 200 index futures | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX Mid 200 index options | Non member | Electronic | EUR 0.38 |
| +Dow Jones STOXX Small 200 index futures | Non member | Electronic | EUR 0.38 |
| +Dutch single stock futures | Non member | Electronic | EUR 0.30 |
| +Dutch single stock options | Non member | Electronic | EUR 0.30 |
| +European Div futures - Bel/Spanish/Finnish/Dutch/Irish | Non member | Electronic | EUR 0.38 |
| +European Div futures - German / French | Non member | Electronic | EUR 0.38 |
| +European Div futures - Italian | Non member | Electronic | EUR 0.38 |

18

Highly Confidential

MPSKAT00104168

| | | | |
|---|---|---|---|
| +European Euro single stock futures (XXL) | Non member | Electronic | EUR 0.38 |
| +Finnish single stock futures | Non member | Electronic | EUR 0.30 |
| +Finnish single stock options | Non member | Electronic | EUR 0.30 |
| +French single stock futures | Non member | Electronic | EUR 0.30 |
| +French single stock options | Non member | Electronic | EUR 0.30 |
| +German single stock futures | Non member | Electronic | EUR 0.30 |
| +German single stock options | Non member | Electronic | EUR 0.30 |
| +Irish single stock futures | Non member | Electronic | EUR 0.30 |
| +Italian single stock futures | Non member | Electronic | EUR 0.30 |
| +Italian single stock options | Non member | Electronic | EUR 0.30 |
| +Russian single stock equity options | Non member | Electronic | USD 0.30 |
| +Russian single stock futures | Non member | Electronic | USD 0.30 |
| +Russian single stock options | Non member | Electronic | USD 0.30 |
| +Scandinavian single stock futures | Non member | Electronic | EUR 0.30 |
| +Scandinavian single stock options | Non member | Electronic | EUR 0.30 |
| +SMI futures | Non member | Electronic | CHF 0.45 |
| +SMI options | Non member | Electronic | CHF 0.45 |
| +Spanish single stock futures | Non member | Electronic | EUR 0.30 |
| +Spanish single stock options | Non member | Electronic | EUR 0.30 |
| +Swiss single stock futures | Non member | Electronic | CHF 0.45 |
| +Swiss single stock options | Non member | Electronic | CHF 0.45 |
| **Euronext Amsterdam** | | | |
| +AEX index futures (20) | Non member | Electronic | EUR 0.38 |
| +AEX index futures (200) | Non member | Electronic | EUR 0.38 |
| **Euronext Liffe** | | | |
| +Austrian single stock futures | Non member | Electronic | EUR 0.30 |
| +Austrian single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Austrian single stock options | Non member | Electronic | EUR 0.30 |

19

Highly Confidential

MPSKAT00104169

| | | | |
|---|---|---|---|
| +Austrian single stock options | Non member | OTC cleared | EUR 0.30 |
| +Belgian single stock futures | Non member | Electronic | EUR 0.30 |
| +Belgian single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Belgium single stock options | Non member | Electronic | EUR 0.30 |
| +Belgium single stock options | Non member | OTC cleared | EUR 0.30 |
| +Danish single stock futures | Non member | Electronic | EUR 0.30 |
| +Danish single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Danish single stock options | Non member | OTC cleared | DKK 0.30 |
| +Dutch single stock futures | Non member | Electronic | EUR 0.30 |
| +Dutch single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Dutch single stock options | Non member | Electronic | GBP 0.33 |
| +Dutch single stock options | Non member | OTC cleared | EUR 0.30 |
| +Finnish single stock futures | Non member | Electronic | EUR 0.30 |
| +Finnish single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Finnish single stock options | Non member | OTC cleared | EUR 0.30 |
| +French single stock equity futures | Non member | OTC cleared | EUR 0.30 |
| +French single stock futures | Non member | Electronic | EUR 0.30 |
| +French single stock futures | Non member | OTC cleared | EUR 0.30 |
| +French single stock options | Non member | Electronic | EUR 0.30 |
| +French single stock options | Non member | OTC cleared | EUR 0.30 |
| +FTSE 100 index futures | Non member | Electronic | GBP 0.30 |
| +FTSE 100 index futures | Non member | OTC cleared | GBP 0.30 |
| +FTSE 250 index futures | Non member | Electronic | GBP 0.30 |
| +FTSE 250 index futures | Non member | OTC cleared | GBP 0.30 |
| +FTSE 250 index option | Non member | Electronic | GBP 0.30 |
| +FTSE 250 index option | Non member | OTC cleared | GBP 0.30 |
| +German single stock futures | Non member | Electronic | EUR 0.30 |

20

MPSKAT00104170

| | | | |
|---|---|---|---|
| +German single stock futures | Non member | OTC cleared | EUR 0.30 |
| +German single stock options | Non member | Electronic | EUR 0.30 |
| +German single stock options | Non member | OTC cleared | EUR 0.30 |
| +Greek single stock futures | Non member | Electronic | EUR 0.30 |
| +Greek single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Irish single stock futures | Non member | Electronic | EUR 0.30 |
| +Irish single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Italian single stock futures | Non member | Electronic | EUR 0.30 |
| +Italian single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Italian single stock options | Non member | Electronic | EUR 0.30 |
| +Italian single stock options | Non member | OTC cleared | EUR 0.30 |
| +Norwegian single stock futures | Non member | Electronic | NOK 2.85 |
| +Norwegian single stock futures | Non member | OTC cleared | NOK 2.85 |
| +Norwegian single stock options | Non member | Electronic | NOK 2.85 |
| +Norwegian single stock options | Non member | OTC cleared | NOK 2.85 |
| +Portuguese single stock futures | Non member | Electronic | EUR 0.30 |
| +Portuguese single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Portuguese single stock options | Non member | Electronic | N/A |
| +Portuguese single stock options | Non member | OTC cleared | EUR 0.30 |
| +Russian single stock futures | Non member | OTC cleared | USD 0.30 |
| +Russian single stock options | Non member | Electronic | USD 0.45 |
| +Russian single stock options | Non member | OTC cleared | USD 0.30 |
| +Spanish single stock futures | Non member | Electronic | EUR 0.30 |
| +Spanish single stock futures | Non member | OTC cleared | EUR 0.30 |
| +Spanish single stock options | Non member | Electronic | EUR 0.30 |
| +Spanish single stock options | Non member | OTC cleared | EUR 0.30 |
| +Swedish single stock futures | Non member | Electronic | SEK 3.38 |

21

MPSKAT00104171

| | | | |
|---|---|---|---|
| +Swedish single stock futures | Non member | OTC cleared | SEK 3.38 |
| +Swedish single stock options | Non member | Electronic | SEK 3.38 |
| +Swedish single stock options | Non member | OTC cleared | SEK 3.38 |
| +Swiss single stock futures | Non member | Electronic | CHF 0.45 |
| +Swiss single stock futures | Non member | OTC cleared | CHF 0.45 |
| +Swiss single stock options | Non member | Electronic | CHF 0.45 |
| +Swiss single stock options | Non member | OTC cleared | CHF 0.45 |
| +UK single stock futures | Non member | Electronic | GBP 0.30 |
| +UK single stock futures | Non member | OTC cleared | GBP 0.30 |
| +UK single stock options | Non member | Electronic | GBP 0.30 |
| +UK single stock options | Non member | OTC cleared | GBP 0.30 |
| +US single stock futures - USD | Non member | OTC cleared | USD 0.45 |
| +US Stock options | Non member | OTC cleared | USD 0.45 |
| **Euronext Paris** | | | |
| +CAC 40 index futures | Non member | Electronic | EUR 0.38 |
| **Italian Derivatives Market** | | | |
| +S&P/MIB index futures | Non member | Electronic | EUR 0.38 |
| +S&P/MIB index options | Non member | Electronic | EUR 0.38 |

22

MPSKAT00104172