*Original Plan*

# The RJM Capital Pension Plan

CONFIDENTIAL

# TABLE OF CONTENTS

Page

I.   PLAN SPECIFICATIONS ...................................................................................I-1

   A.   Name. ........................................................................................................I-1
   B.   Exclusive Benefit. ....................................................................................I-1
   C.   Effective Date. .........................................................................................I-1
   D.   Plan Year..................................................................................................I-1
   E.   Limitation Year. ........................................................................................I-1

   ELIGIBILITY AND PARTICIPATION ................................................................I-1

   F.   Eligible Employee.....................................................................................I-2
   G.   Entry Date. ...............................................................................................I-3

   CONTRIBUTIONS .............................................................................................I-3

   H.   Types of Employer Contributions.............................................................I-3
   I.   Reserved...................................................................................................I-4
   J.   Required Minimum Benefits. ...................................................................I-4
   K.   Compensation. .........................................................................................I-4
   L.   Highly Compensated Employees and Current or Prior Testing
        Methods.....................................................................................................I-5

   ALLOCATIONS TO CONTRIBUTION ACCOUNTS.........................................I-5

   M.   Allocation of Employer Contributions.......................................................I-5
   N.   Excess Compensation..............................................................................I-6
   O.   Participant Forfeitures. .............................................................................I-6
   P.   Allocation Requirements – Last Day Employment and Service
        Requirements. ..........................................................................................I-6
   Q.   Allocation of Excess Annual Additions.....................................................I-7
   R.   Employee After-Tax and Deemed IRA Contributions. .............................I-7
   S.   Rollover Contributions and Transferred Benefits.....................................I-7

CONFIDENTIAL

WH_MDL_00331779

T.      Early Retirement Age and Normal Retirement Age. ...............................I-8

VESTING ...........................................................................................................I-8

U.      Vesting. ...............................................................................................I-8
V.      Required Top-Heavy Minimum Vesting. ..............................................I-8
W.      Years of Vesting Service. ....................................................................I-8
X.      Years of Service – Break-in-Service.....................................................I-8
Y.      Service with the Predecessor Employer.............................................I-8
Z.      Vesting at Death or Total Disability......................................................I-8

DISTRIBUTION OF BENEFITS .......................................................................I-9

AA.     Participant Loans...................................................................................I-9
BB.     Hardship Withdrawals..........................................................................I-9
CC.     In-Service Distributions Other Than Hardship. ..................................I-10
DD.     Cash-Out Options................................................................................I-10
EE.     Time of Distribution Upon Employment Termination. .........................I-11
FF.     Right to Defer Receipt of Benefits After Normal Retirement Age and
        Age 70½. .............................................................................................I-11
GG.     Minimum Required Distributions under Final and Temporary
        Regulations. .........................................................................................I-11
HH.     Accrued Benefits Not Subject to REACT Annuity Requirements.........I-12
II.     Reserved. .............................................................................................I-12
JJ.     Alternate Forms of Benefits Payments. ..............................................I-12
KK.     Distributions of Roth Contributions. ....................................................I-12
LL.     Total Disability. ....................................................................................I-13

MISCELLANEOUS...........................................................................................I-13

MM.     Participant Directed Accounts. ...........................................................I-13
NN.     Valuation Date......................................................................................I-13
OO.     Special Disaggregation Rule. ..............................................................I-14
PP.     Co-Trustees..........................................................................................I-14

II.     DEFINITIONS ...............................................................................................II-1

A.      Terms Defined In This Article II. ...........................................................II-1
B.      Terms Not Defined in Article I and II of this Plan. ..............................II-22

III.    PARTICIPATION AND MEMBERSHIP ...........................................................III-1

A.      Participation Date. ...............................................................................III-1
B.      Leave of Absence.................................................................................III-1

-ii-

CONFIDENTIAL

WH_MDL_00331780

C.      Enrollment. ...........................................................................III-2
D.      Waiver of Participation. ........................................................III-2
E.      Omission of Eligible Employee. ............................................III-2
F.      Inclusion of Ineligible Employee. ..........................................III-2

IV.     EMPLOYER CONTRIBUTIONS. .....................................................IV-1

A.      In General. .............................................................................IV-1
B.      Special Make-up Contribution. ..............................................IV-1
C.      Corrective Contributions. ......................................................IV-1
D.      Profit Sharing and Retirement Savings (401(k)) Contributions. ..........IV-1
E.      Actual Deferral Percentage Limitation. .................................IV-4
F.      Safe Harbor Contributions. ...................................................IV-6
G.      Simple 401(k) Plans. .............................................................IV-9
H.      Limitation on Elective Deferrals. ...........................................IV-9
I.      Reserved. ...............................................................................IV-10
J.      Correction of Excess Contributions. .....................................IV-10
K.      Coordination of Excess Contributions with Excess Deferrals. ..........IV-15
L.      Income Allowable to Excess Contribution. ............................IV-16
M.      Correction of Excess Deferrals. ............................................IV-16
N.      Income Allowable to Excess Deferrals. .................................IV-17
O.      Coordination of Excess Deferrals with Distribution or
        Recharacterization of Excess Contributions. ........................IV-17
P.      Distribution of Amounts Attributed to Elective Contributions. ..........IV-17
Q.      Hardship Withdrawals. ..........................................................IV-18
R.      Aggregation of Employer's Plans. .........................................IV-19
S.      Universal Availability Requirements of Catch-Up Contributions. ..........IV-21
T.      Multiple Plan Limits on Catch-Up Contributions. ..................IV-23

V.      ALLOCATIONS TO PARTICIPANTS' ACCOUNTS ..........................V-1

A.      Maintenance of Accounts. .....................................................V-1
B.      Valuation of Trust. .................................................................V-1
C.      Allocation of Trust Earnings. .................................................V-1
D.      Allocation to Contribution Accounts. .....................................V-2
E.      Limitation on Allocation of Employer Contributions and Forfeitures. ....V-4
F.      Allocation Priorities if Limitations Exceeded. .......................V-5
G.      Key Man Insurance Proceeds. ..............................................V-6

VI.     VESTING AND BENEFIT ENTITLEMENT ........................................VI-1

A.      Vesting. .................................................................................VI-1
B.      Forfeitures. ............................................................................VI-1

-iii-

CONFIDENTIAL

WH_MDL_00331781

|  |  |  |  |
|---|---|---|---|
| C. | Re-Vesting in Forfeitures Upon Re-Employment | VI-3 |
| D. | Limitation on Vesting Upon Re-Employment. | VI-3 |
| E. | Vesting Upon Change of Employment Status. | VI-4 |
| F. | Vested Interest Not Distributed. | VI-4 |
| G. | Break-in-Service While Still Employed. | VI-4 |
| H. | Effect of Break-in-Service – Vested Participant. | VI-4 |
| I. | Reserved. | VI-4 |
| J. | Effect of Break-in-Service – Non-Vested Participant. | VI-4 |
| K. | Limitation on Right to Amend Vesting Schedule. | VI-5 |

**VII.    DISTRIBUTION OF BENEFITS** ............................................................... VII-1

| A. | Definitions. | VII-1 |
|---|---|---|
| B. | Distribution With Annuity Option – Other Than Death. | VII-3 |
| C. | Distribution at Death. | VII-12 |
| D. | Transitional Rules. | VII-16 |
| E. | Non-Annuity Rules. | VII-17 |
| F. | Time of Distribution. | VII-18 |
| G. | Pre-TEFRA Designations. | VII-18 |
| H. | Loans to Participants. | VII-19 |
| I. | Reserved. | VII-21 |
| J. | Distributions to Incompetent Persons. | VII-21 |
| K. | Nonliability. | VII-21 |
| L. | Benefit Claims Procedure. | VII-22 |
| M. | Income Tax Withholding. | VII-23 |
| N. | Qualified Domestic Relations Orders. | VII-23 |
| O. | Overpayment of Vested Interest. | VII-23 |

**VIII.    TOP-HEAVY LIMITATIONS** ...................................................................... VIII-1

| A. | Definitions. | VIII-1 |
|---|---|---|
| B. | Aggregation Groups. | VIII-2 |
| C. | 60% Test – Special Rules. | VIII-3 |
| D. | Minimum Vesting Requirements. | VIII-4 |
| E. | Minimum Benefit Requirement. | VIII-5 |
| F. | Annual Section 415 Compensation. | VIII-7 |
| G. | Multiple Plans. | VIII-7 |

**IX.    DESIGNATED BENEFICIARIES** ................................................................. IX-1

**X.    CONTRIBUTIONS BY PARTICIPANTS** ........................................................ X-1

| A. | Employee After-Tax Contributions | X-1 |
|---|---|---|

CONFIDENTIAL

WH_MDL_00331782

| | B. | Rollover Contributions. ......................................................................... X-1 |
| | C. | Separate Administration and Accounts for Participant Contributions. . X-2 |
| | D. | Vesting. .................................................................................................. X-2 |
| | E. | Withdrawal of Contributions.................................................................. X-2 |
| | F. | Distribution of Rollover Contribution Accounts. .................................... X-2 |
| | G. | Limitations on Section 401(m) Contributions. ...................................... X-3 |
| | H. | Correction of Excess Aggregate Contributions..................................... X-5 |
| | I. | Reserved. ............................................................................................... X-6 |
| | J. | Distribution of Income........................................................................... X-6 |
| | K. | Coordination with Section 401(a)(4) of the Code.................................. X-7 |
| | L. | Additional Qualified Nonelective Employer Contributions..................... X-7 |
| | M. | Correction of Excess Aggregate Contribution Prior to the Plan Year. X-10 |
| | N. | Coordination with Correction of Excess Contributions and Excess Deferrals.............................................................................................. X-10 |
| | O. | Aggregation Rules for Section 401(m) Contributions.......................... X-10 |
| XI. | | LIFE INSURANCE POLICIES ....................................................................... XI-1 |
| | A. | Investment and Ownership of Life Insurance Policies. ........................ XI-1 |
| | B. | Payment of Premiums. .......................................................................... XI-1 |
| | C. | Accounting for Policies. ........................................................................ XI-1 |
| | D. | Discrimination....................................................................................... XI-1 |
| | E. | Disposition Upon Retirement or Total Disability. ................................. XI-1 |
| | F. | Disposition Upon Other Separation From Service. ............................... XI-2 |
| | G. | Policy Loans. ........................................................................................ XI-2 |
| | H. | Insurer Not a Party. ............................................................................. XI-2 |
| | I. | Reserved. .............................................................................................. XI-3 |
| | J. | Insurance Limitations........................................................................... XI-3 |
| XII. | | TRUST ....................................................................................................... XII-1 |
| | A. | Payment of Contributions. ................................................................... XII-1 |
| | B. | Participant Directed Accounts. ............................................................ XII-1 |
| | C. | Expenses Charged to Participants' Accounts...................................... XII-1 |
| | D. | Prudent Man Rule................................................................................. XII-2 |
| XIII. | | THE ADMINISTRATIVE COMMITTEE......................................................... XIII-1 |
| | A. | Committee Membership. ...................................................................... XIII-1 |
| | B. | Named Fiduciary and Plan Administration........................................... XIII-1 |
| | C. | Compensation. ..................................................................................... XIII-1 |
| | D. | Delegation of Duties. ........................................................................... XIII-1 |
| | E. | Bonding of Fiduciaries. ........................................................................ XIII-2 |

CONFIDENTIAL

WH_MDL_00331783

F.      Action By Committee Members. ......................................................... XIII-2

XIV.    AMENDMENT AND TERMINATION; RETURN OF EMPLOYER
        CONTRIBUTIONS; PARTICIPATING EMPLOYERS.................................. XIV-1

        A.      Amendment. ........................................................................................ XIV-1
        B.      Authority of Volume Submitter Practitioner to Amend for Adopting
                Employers. .......................................................................................... XIV-1
        C.      Impact of Change To Individually Designed Plan. ............................. XIV-2
        D.      Termination or Partial Termination or Complete Discontinuance of
                Contributions. ..................................................................................... XIV-2
        E.      Return of Employer Contributions...................................................... XIV-3
        F.      Procedure for Adoption and Withdrawal by Participating Employers. XIV-3

XV.     STANDARD OF CONDUCT OF FIDUCIARIES .......................................... XV-1

        A.      Fiduciaries. ......................................................................................... XV-1
        B.      Fiduciary Duties.................................................................................. XV-1

XVI.    MERGERS, CONSOLIDATIONS AND TRANSFERS OF ASSETS............ XVI-1

        A.      Merger or Consolidation of the Plan. ................................................. XVI-1
        B.      Transfers From Other Qualified Plans – Rollovers. .......................... XVI-1
        C.      Transfer To Eligible Retirement Plans................................................ XVI-1
        D.      Transfer or Merger of Money Purchase Pension Plan to this Plan... XVI-1

XVII.   MISCELLANEOUS.................................................................................... XVII-1

        A.      Limitation of Rights and Employment Relationship........................... XVII-1
        B.      Payments to Missing Persons. .......................................................... XVII-1
        C.      Spendthrift Provisions....................................................................... XVII-1
        D.      Indemnification. ................................................................................. XVII-2
        E.      Applicable Laws; Severability. .......................................................... XVII-2
        F.      Inapplicability of Certain Provisions if Plan is Not an ERISA Plan......XVII-2

CONFIDENTIAL

WH_MDL_00331784

# The RJM Capital Pension Plan

RJM Capital LLC, a DE LLC (the "Employer"), has adopted this Profit Sharing and Retirement Savings Plan to allow its Employees who are eligible to participate in the Plan to share in the growth of the Employer in accordance with the terms and conditions set forth below, in order to (i) promote in the Employees an interest in the successful operation of the Employer's business and in the increased efficiency of their work; (ii) provide the participating Employees with benefits upon their retirement; and (iii) provide their Beneficiaries with death benefits.

## I.    PLAN SPECIFICATIONS

A.    Name.

This 401(k) Plan shall be known as the "The RJM Capital Pension Plan."

B.    Exclusive Benefit.

This Plan shall be maintained for the exclusive benefit of the Participants and their Beneficiaries and is intended to qualify as a defined contribution plan under the appropriate provisions of ERISA and the Code.

C.    Effective Date.

"Effective Date" means the first day of the first Plan Year in which this plan is adopted by the Employer.

D.    Plan Year.

"Plan Year" means each 12 consecutive month period ending on 12/31.

E.    Limitation Year.

"Limitation Year" means each 12 consecutive month period ending on the last day of the Plan Year.

## ELIGIBILITY AND PARTICIPATION

ARTICLE I                                          I-1

CONFIDENTIAL

F.    Eligible Employee.

"Eligible Employee" means, with respect to any Plan Year, every Employee of the Employer who meets the following requirements:

1.    Minimum Age:

None.

2.    Service:

None.

3.    Years of Service – Break-in-Service.

The Hour of Service requirement of Paragraphs A.8 and A.94 of Article II shall not be modified.

This Plan shall not use the elapsed time method, as described in Paragraph A.94 of Article II, for crediting Years of Service for eligibility purposes.

4.    Service with the Predecessor Employer.

Service with a Predecessor Employer is not applicable.

5.    Subsequent Eligibility Computation Period.

"Subsequent Eligibility Computation Period" means the Plan Year including the first anniversary of the Employee's Employment Commencement Date and any subsequent Plan Year.

6.    Class Exclusions.

None.

7.    Waiver of Participation.

Waiver of Participation shall not be permitted.

ARTICLE I                                      I-2

CONFIDENTIAL

WH_MDL_00331786

G.    Entry Date.

Immediate entry for all Contributions.. However, an Eligible Employee shall enter the Plan no later than the earlier of the first day of the Plan Year or six (6) months following the day he or she becomes an Eligible Employee.

## CONTRIBUTIONS

H.    Types of Employer Contributions.

1.    Elective Contributions Without Safe Harbor Provisions.

Each Participant may elect, by completing the appropriate forms acceptable to the Committee, to reduce and defer the receipt of up to 100% of his or her Compensation. In no event shall any Participant be permitted to make Elective Contributions in excess of the limitation on Elective Deferrals described in Paragraph H of Article IV. The Employer shall contribute the amount so deferred subject to the limitations described in Articles IV and V, to the Plan.

Effective on and after January 1, 2002, catch-up contributions described in Paragraph D.2 of Article IV shall apply. The Employer provided limit on Elective Contributions stated in the preceding paragraph shall not apply to catch up contributions.

Effective on or after January 1, 2006 a Participant may designate all or a part of his or her Elective Contributions as Roth Contributions.

2.    Matching Contributions.

The Employer shall not make Matching Contributions.

3.    Nonelective Employer Contributions.

For each Plan Year, the Employer may make contributions to the Trust in one (1) or more installments without regard to its Net Profits for such year in such amounts as the Board may determine in its sole discretion.

4.    Qualified Matching Contributions.

The Employer shall not make Qualified Matching Contributions.

5.    Qualified Nonelective Employer Contributions.

ARTICLE I                                    I-3

CONFIDENTIAL

WH_MDL_00331787

The Employer shall not make Qualified Nonelective Employer Contributions.

      6.    <u>Safe Harbor Matching Contributions</u>.

The Employer shall not make Safe Harbor Matching Contributions.

      7.    <u>Safe Harbor Nonelective Employer Contributions</u>.

The Employer shall not make Safe Harbor Nonelective Employer Contributions.

      8.    <u>Simple 401(k) Contributions</u>.

The Employer shall not make Simple 401(k) Contributions.

I.    <u>Reserved</u>.

J.    <u>Required Minimum Benefits</u>.

      1.    The top-heavy minimum benefit shall be three percent (3%) of Section 415 Compensation.

      2.    Key Employees shall be entitled to top-heavy minimum benefits under this Plan.

K.    <u>Compensation</u>.

"Compensation" means Section 415 Compensation, not to exceed the Compensation Limitation, paid by the Employer to an Employee during a Plan Year, excluding all Employee expenses allowances, reimbursements and other fringe benefit allowances paid during the Plan Year which are subject to withholding of income tax under Section 3401(a) of the Code, and further modified by the following:

<u>Modifications of Compensation</u>

Including wages which are not currently includable in the Participant's gross income by reason of the application of Sections 125, 132(f)(4), 402(e)(3), 402(h)(1)(B), 403(b), 408(p)(2)(A)(i) and 457 of the Code.

Effective for Plan Years beginning on and after January 1, 2002 and Limitation Years beginning on and after January 1, 2002, for purposes of the definition of

ARTICLE I            I-4

CONFIDENTIAL

Compensation under this Paragraph K, Paragraphs A.28, A.38 and A.75 of Article II, Paragraph E.1 of Article V and Paragraphs A.2 and E of Article VIII, amounts under Section 125 of the Code include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage. An amount will be treated as an amount under Section 125 of the Code only if the Employer does not request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

For purposes of Paragraph A.75 of Article II, Section 415 Compensation means subparagraph (c) of Paragraph A.75 of Article II.

L.      Highly Compensated Employees and Current or Prior Testing Methods.

For purposes of identifying Highly Compensated Employees, the Employer has elected the following:

1.      A Highly Compensated Employee shall be determined based upon the Look-Back Year.

2.      A Highly Compensated Employee need not be a member of the Top-Paid Group.

3.      The determination of the Actual Deferral Percentage, for the group of Eligible Participants who are Non-Highly Compensated Employees shall be based upon the current Plan Year data.

## ALLOCATIONS TO CONTRIBUTION ACCOUNTS

M.      Allocation of Employer Contributions.

Subject to the provisions of Articles IV, V and X:

1.      Matching Contributions.

Not Applicable.

2.      Nonelective Employer Contributions.

### Ratio of Compensation Formula

Nonelective Employer Contributions for each Plan Year shall be allocated to the Nonelective Employer Contribution Accounts of each Participant eligible

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331789

for an allocation in the proportion that each such Participant's Compensation bears to the Compensation of all such Participants for the Plan Year.

      3.    Qualified Matching Contributions.

          Not Applicable.

      4.    Qualified Nonelective Employer Contributions.

          Not Applicable.

      5.    Safe Harbor Matching Contributions.

          Not Applicable.

      6.    Safe Harbor Nonelective Employer Contributions.

          Not Applicable.

      7.    Simple 401(k) Contributions.

          Not Applicable.

N.    Excess Compensation.

    Not Applicable.

O.    Participant Forfeitures.

    Not Applicable.

P.    Allocation Requirements – Last Day Employment and Service Requirements.

      1.    Last Day Employment and Service – Not Required

          Allocations of Nonelective Employer Contributions shall be made to the appropriate Accounts of Eligible Participants during the Plan Year without regard to any last day of employment or service requirements, if any, applicable to other types of contributions provided under this Plan.

      2.    Special Rule For Certain Contributions.

ARTICLE I            I-6

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

Allocations of Elective Contributions, including Roth Contributions if any shall be made to the appropriate Accounts of eligible Participants during the Plan Year without regard to any last day of employment or Hour of Service requirement that may apply to other types of contributions, if any.

Q.    Allocation of Excess Annual Additions.

If an allocation to a Participant would result in an excess Annual Addition, such excess Annual Addition shall be held in suspense accounts and applied to reduce Employer contributions for the next succeeding Limitation Year.

R.    Employee After-Tax and Deemed IRA Contributions.

1.    Employee After-Tax Contributions are not allowed.

2.    Deemed IRA Contributions are not allowed.

S.    Rollover Contributions and Transferred Benefits.

Rollover Contributions are allowed from the types of plans specified below:

A qualified plan described in Section 401(a) or 403(a) of the Code excluding Employee After-Tax Contributions and including a direct rollover of Roth Contributions.

An annuity contract described in Section 403(b) of the Code.

An eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state.

An individual retirement account or annuity described in Section 408(a) or 408(b) of the Code that is eligible to be rolled over and would otherwise be includible in gross income.

Rollover Contributions can only be made by Participants.

Transferred Benefits are allowed.

ARTICLE I                    I-7

CONFIDENTIAL

WH_MDL_00331791

T.    Early Retirement Age and Normal Retirement Age.

Early Retirement Age.

Not Applicable.

Normal Retirement Age.

"Normal Retirement Age" means the Participant's 65th birthday.    A Participant who continues in the employ of the Employer after he or she attains Normal Retirement Age shall remain a Participant while so employed, and be entitled to all Plan benefits to the extent he or she would be entitled thereto if he or she had not yet attained Normal Retirement Age, including allocation of any type of Employer contribution and forfeiture, if any.

## VESTING

U.    Vesting.

A Participant shall be fully vested in his or her Elective Contribution, Nonelective Employer Contribution and Roth Contribution Account(s) at all times.

V.    Required Top-Heavy Minimum Vesting.

Not Applicable.

W.    Years of Vesting Service.

Not Applicable

X.    Years of Service – Break-in-Service.

Not Applicable.

Y.    Service with the Predecessor Employer.

Service with a Predecessor Employer is not applicable.

Z.    Vesting at Death or Total Disability.

Not Applicable.

ARTICLE I                                                                        I-8

CONFIDENTIAL

## DISTRIBUTION OF BENEFITS

AA.    Participant Loans.

Loans to Participants are available. Loans will be treated as directed investments of Participants' Accounts. Loans shall not be repaid by payroll deductions. Loans to Inactive Participants are available under the same procedures and provisions as are applicable to active Participants with the exception of loan repayments by payroll deductions, if applicable. Loan repayments shall be suspended by reason of Section 414(u) of the Code.

BB.    Hardship Withdrawals.

Hardship withdrawals of Elective contributions including Roth Contributions and Nonelective Employer contributions to the extent vested shall be allowed. For these purposes, an "event of hardship" means:

Payment for (or necessary to obtain) medical care that would be described under Section 213(d) of the Code determined without regard to whether the expenses exceed seven and one-half percent (7.5%) of adjusted gross income.

Cost directly related to the purchase of a principal residence, but not including mortgage payments, by the Employee.

Payment of tuition, room and board, and related educational fees for up to the next 12 months of post-secondary education for the Employee, the Employee's Spouse, children or dependents (as defined in Section 152 of the Code, and for taxable years beginning on or after January 1, 2005 without regard to Sections 152(b)(1), 152(b)(2) and 152(d)(1)(B) of the Code).

The need to prevent eviction of the Employee from his or her principal residence or foreclosure on the mortgage of the Employee's principal residence.

Payments for burial or funeral expenses for the Employee's deceased parent, Spouse, children or dependents (as defined in Section 152 of the Code, and for taxable years beginning on or after January 1, 2005 without regard to Section 152(d)(1)(B) of the Code).

Payments of expenses for the repair of damage to the Employee's principal residence that would qualify for the casualty deduction under Section 165 of the Code (determined without regard to whether the loss exceeds ten percent (10%) of adjusted gross income).

ARTICLE I                                                          I-9

CONFIDENTIAL

CC.    <u>In-Service Distributions Other Than Hardship</u>.

In-service distributions of the vested portion of a Participant's Nonelective Employer Contribution Account shall be allowed if vested amounts that have been held in the Trust for at least two (2) years.

In-service distributions of the vested portion of a Participant's Elective Contribution Account and Transferred Benefits Account subject to only Section 401(k) of the Code shall be allowed at or after age 59½.

In-service distributions of a Participant's Roth Contribution Account shall be allowed at or after age 59 ½.

In-service distributions of the vested portion of a Participant's Transferred Benefits Account that have been held in a qualified trust for at least two (2) years and are not subject to Section 401(k) of the Code or Paragraph D of Article XVI shall be allowed at any time.

In-service distributions of a Participant's Rollover Contribution Account shall be allowed at any time.

DD.    <u>Cash-Out Options</u>.

1.    The involuntary cash-out distribution limit of this Plan is $5,000. Effective for distributions made on or after March 28, 2005 the involuntary cash-out limit, including Rollover Contributions, shall be reduced to $1,000.

2.    If applicable, this Plan shall exclude Rollover Contributions (and earnings allocable thereto) in determining the value of the Participant's vested Accrued Benefit for purposes of the involuntary cash-out distribution limit of $5,000 for distributions made after December 31, 2001 to Participants.

3.    For purposes of determining whether a distribution is subject to Sections 401(a)(11) and 417 of the Code, the dollar amount described in the first paragraph of Paragraph B.5 of Article VII shall be $5,000.

4.    An immediate forfeiture of a partial cash-out as provided in Paragraph B.4 of Article VI is not applicable.

5.    If a Participant is rehired prior to five (5) consecutive one year Breaks-in-Service, he or she shall not be required to repay the Plan the amounts previously distributed to the Participant for the Participant's non-vested Accrued Benefits to be restored.

ARTICLE I                I-10

CONFIDENTIAL

6.     The alternative separate account formula X=P(AB + (RxD)) – (RxD) as stated in Paragraph C of Article VI shall not apply.

EE.     Time of Distribution Upon Employment Termination.

1.     Distributions of vested Accounts to Participants upon employment termination prior to Normal Retirement Age shall be made as soon as administratively feasible after employment termination date.

2.     Distribution upon severance from employment shall apply for distributions after December 31, 2001 regardless of when the severance from employment occurred.

FF.     Right to Defer Receipt of Benefits After Normal Retirement Age and Age 70½.

1.     Upon separation from service, a Participant shall have the right to defer receipt of benefits after Normal Retirement Age or age 62, if later.

2.     The required beginning date for minimum required distributions for a non-5% Owner is the April 1 of the calendar year following the calendar year in which such Participant attains age 70½.

GG.     Minimum Required Distributions under Final and Temporary Regulations.

1.     Effective Date of Final and Temporary Regulations.

Notwithstanding any inconsistent provisions of the Plan, for purposes of determining required minimum distributions for Distribution Calendar Years beginning with the 2003 calendar year, this Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Code in accordance with the Final and Temporary Regulations issued on April 17, 2002.

2.     Election to Apply 5-Year Rule to Distributions to Designated Beneficiaries.

The provisions of subparagraph C.2(a) of Article VII of the Plan will not be modified.

3.     Election to allow Participants or Beneficiaries to elect the 5-Year Rule.

ARTICLE I                    I-11

CONFIDENTIAL

Participants or Beneficiaries may elect on an individual basis whether the 5-year rule or the life expectancy rule in subparagraph C.2(a), (d), (e) and (f) of Article VII of the Plan applies to distributions after the death of a Participant who has a Designated Beneficiary. The election must be made no later than the earlier of September 30 of the calendar year in which distribution would be required to begin under subparagraph C.2(a) of Article VII of the Plan, or by September 30 of the calendar which contains the fifth anniversary of the Participant's (or, if applicable, Surviving Spouse's) death. If neither the Participant nor Beneficiary makes an election under this paragraph, distributions will be made in accordance with subparagraphs C.2(a), (d), (e) and (f) of Article VII of the Plan and, if applicable, the elections in Paragraph GG.2 of this Article I.

    4.    Election to Allow Designated Beneficiary Receiving Distributions Under 5-Year Rule to Elect Life Expectancy Distributions.

A Designated Beneficiary who is receiving payments under the 5-year rule may not make a new election to receive payments under the life expectancy rule until December 31, 2003.

    HH.    Accrued Benefits Not Subject to REACT Annuity Requirements.

Participants' Accrued Benefits shall not be subject to the Qualified Joint and Survivor Annuity and Qualified Preretirement Survivor Annuity requirements of REACT as provided in Paragraphs A, B and C of Article VII.

    II.    Reserved.

    JJ.    Alternate Forms of Benefits Payments.

The following alternate forms of benefit payment are available:

Single Sum. The payment of all or a portion of the Participant's vested Accrued Benefit in a single sum in cash or in kind.

Installments. The payment of the Participant's vested Accrued Benefit in a series of installments payable monthly.

    KK.    Distributions of Roth Contributions.

If a Participant receives a partial distribution of his or her Accounts for any reason (other than a return of Excess Contributions, Excess Aggregate Contributions or Excess Deferrals), the Participant shall be allowed to designate all or a part of such distribution to be disbursed from his or her Roth Contribution Account.

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

WH_MDL_00331796

If a Highly Compensated Employee is required to receive a return of Excess Contributions and his or her Elective Contributions include both pre-tax Elective Contributions and designated Roth Contributions, such Highly Compensated Employee shall be allowed to designate whether such Excess Contributions shall be disbursed from his or her pre-tax Elective Contributions or Roth Contributions.

If an Employee is required to receive a return of Excess Deferrals and his or her Elective Contributions include both pre-tax Elective Contributions and designated Roth Contributions, such Employee shall be allowed to designate whether such Excess Deferrals shall be disbursed from his or her pre-tax Elective Contributions or Roth Contributions.

With respect to the special rule of Section 1.401(a)(31)-1 Q&A-11 of Treasury Regulations, Roth Contribution Account shall be treated as a separate plan within the meaning of Section 414(l) of the Code and for purposes of subparagraph B.3(e) of Article VII.

If an Employee is required to receive a refund pursuant to Paragraph F of Article V because the Annual Addition Limitation is exceeded, such Employee shall be entitled to elect a refund of pre-tax Elective Deferrals prior to any refund of Roth Contributions. If such Employee does not make such election, then Roth Contributions shall be refunded in the second step of Paragraph F of Article V.

LL.    Total Disability.

"Total Disability" shall have the same meaning as defined in Article II.

### MISCELLANEOUS

MM.    Participant Directed Accounts.

Each Participant shall be entitled to direct the investment of his or her Accrued Benefits in accordance with Article XII.

NN.    Valuation Date.

For Accounts that are self-directed by Participants, Valuation Date(s) shall mean the end of each "business" day unless the investment option or the per share value of a particular investment is not valued daily. If the particular investment is not valued daily, then Valuation Date shall mean the date(s), upon which such investment is actually valued or any other date that the Committee designates. However, in no event shall a Valuation Date occur less frequently than annually, with the last day of each Plan Year serving as a Valuation Date (or one of the Valuation Dates).

ARTICLE I                                                    I-13

OO.    Special Disaggregation Rule.

     Not Applicable.

PP.    Co-Trustees.

     If there is more than one (1) Trustee, any one of such Co-Trustees shall have the right to make any decision, undertake any action or execute any documents affecting this Trust without the approval of the remaining Co-Trustees. Any directions to any person or organization shall be executed by any one of the Co-Trustees. For purposes of this Plan and Trust, "directions" shall mean any certification, notice, authorization, application or instruction of the Co-Trustee.

ARTICLE I                                                    I-14

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331798

## II.    DEFINITIONS

A.    Terms Defined In This Article II. As used in this Plan, the following terms have the following meanings.

1.    "Account(s)" means, where applicable, a Participant's Elective Contribution Account, Employee After-Tax Contribution Account, Matching Contribution Account, Nonelective Employer Contribution Account, Qualified Matching Contribution Account, Qualified Nonelective Employer Contribution Account, Rollover Contribution Account, Roth Contribution Account, Safe Harbor Matching Contribution Account, Safe Harbor Nonelective Employer Contribution Account, Simple 401(k) Contribution Account and/or Transferred Benefits Account.

2.    "Accrued Benefit" means, where applicable at any date, the value of a Participant's Accounts.

3.    "Actual Deferral Percentage" means with respect to (i) the group of Highly Compensated Employees who are Eligible Participants and (ii) the group of all other Eligible Participants, the average of the actual deferral ratios of each group, calculated separately for each Eligible Participant in each group, of the amount of the Qualifying Section 401(k) Contributions made on behalf of each Eligible Participant for the Plan Year divided by the Eligible Participant's Compensation for the Plan Year. The actual deferral ratio of an Eligible Participant who did not make or receive any Qualifying Section 401(k) Contribution is zero (0). The actual deferral ratio for each Eligible Participant shall be calculated to the nearest one-hundredth (.01) of one percent (1%). Unless otherwise elected in Paragraph K of Article I, Compensation includes Compensation received for the entire Plan Year regardless of whether the Eligible Participant was a Participant for the entire Plan Year.

Elective Contributions that are treated as catch-up contributions pursuant to Section 414(v) of the Code because they exceed a statutory limit imposed by Section 401(a)(30), 402(h), 403(b), 408, 415(c) or 457(b)(2) of the Code (without regard to Section 414(v) or 457((b)(3) of the Code) or an Employer-provided limit stated in Paragraph H.1 of Article I or J.6 of Article IV (without regard to Section 414(v) of the Code) are subtracted from the Participant's Elective Contributions for the Plan Year for purposes of determining such Participant's actual deferral ratio

4.    "Anniversary Date" means the last day of the Plan Year.

5.    "Annual Addition" means the amounts allocated to a Participant's Accounts during any relevant Limitation Year that constitute:

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

(a)     Employer contributions; provided, however, that Employer contributions or prior forfeited amounts which are used to restore the non-vested portion of a Participant's Accrued Benefit that was previously cashed-out and forfeited shall not be considered an Annual Addition;

(b)     Employee After-Tax Contributions; provided, however, that Employee After-Tax Contributions not in excess of the greater of (i) six percent (6%) of Section 415 Compensation or (ii) one-half (½) of the Employee After-Tax Contributions shall not be considered as Annual Additions for any Limitation Year beginning before January 1, 1987;

(c)     Forfeitures;

(d)     Excess Contributions and Excess Aggregate Contributions, whether or not corrected by distribution or recharacterization;

(e)     Excess Deferrals; provided, however, that Excess Deferrals which are distributed in accordance with Section 1.402(1)-1(e)(2) or (3) of the Treasury Regulations are not Annual Additions.  Additionally, Elective Deferrals which are returned pursuant to Section 415 of the Code are not Annual Additions and are disregarded for purposes of Sections 401(k), 401(m)(2) and 402(g) of the Code;

(f)     Amounts allocated after March 31, 1984, to an individual medical account, as described in Section 415(l)(2) of the Code, which is part of a pension or annuity plan maintained by the Employer;

(g)     Amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits, allocated to separate accounts of a Key Employee, as defined in Section 419A(d)(3) of the Code, under a welfare benefit fund, as defined in Section 419(e) of the Code, maintained by the Employer; and

(h)     Amounts allocated under a simplified employee pension plan pursuant to Section 408(k) of the Code.

6.     "Average Contribution Percentage" means with respect to (i) the group of Highly Compensated Employees who are Eligible Participants and (ii) the group of all other Eligible Participants, the average of the contribution ratios of each group, calculated separately for each Eligible Participant in each group, of the amount of Qualifying Section 401(m) Contributions made on behalf of each Eligible Participant for the Plan Year divided by the Eligible Participant's Compensation.  The Average Contribution Percentage shall be calculated to the nearest one-hundredth (.01) of one percent (1%).  The determination of Compensation for an Eligible Participant during the

ARTICLE II                                                      II-2

CONFIDENTIAL

Plan Year shall be made in the same manner as for the Actual Deferral Percentage limitation.

7.     "Board" means the Board of Directors of the Employer, if a corporation. If such corporation is later dissolved, Board continues to mean such Board of Directors of the Employer if empowered to continue to act as a board in settling the affairs of the dissolved corporation under local law. If no such power exists, then in the case of a corporation that is dissolved, Board means the Trustee of the Trust, until such time as a new employer adopts and sponsors the Plan or until all assets are distributed. If the Employer is not a corporation, Board means the managing partner(s) of a partnership, the manager of a limited liability company, the trustee(s) of a trust, the sole proprietor of an unincorporated business or the elected or designated representative(s) of an unincorporated association.

8.     "Break-in-Service" means that an Employee did not complete more than 500 Hours of Service, or such lesser amount if elected in Article I, in the applicable Computation Period. For purposes of determining whether a Break-in-Service has occurred in a Computation Period, an Employee who is granted a Maternity or Paternity Leave of Absence shall receive credit for eight (8) Hours of Service per day of such absence. To the extent provided in Paragraphs A.43 and A.47 of this Article II and Paragraph B of Article III, Leaves of Absence shall not cause a Break-in-Service. Unless otherwise elected in Article I, if the Plan Year is less than 12 months, no Break-in-Service shall occur in such Plan Year. For purposes of the elapsed time method, Break-in-Service means a "One-Year Period of Severance."

9.     "Code" means the Internal Revenue Code of 1986, as amended from time to time.

10.     "Committee" means the administrative committee appointed by the Sponsoring Employer's Board.

11.     "Compensation Limitation" means the limitation imposed by Section 401(a)(17) of the Code, as described below.

(a)     The annual Compensation of each Participant taken into account in determining allocations for any Plan Year shall not exceed $200,000. The Compensation Limitation shall be adjusted for cost-of-living increases in accordance with Section 401(a)(17)(B) of the Code. Annual Compensation means Compensation during the Plan Year or such other consecutive 12-month period over which Compensation is otherwise determined under the Plan (the determination period). The cost-of-living adjustment in effect for a calendar year applies to annual Compensation for the determination period that begins with or within such calendar year.

ARTICLE II                                                     II-3

CONFIDENTIAL

(b)    If a determination period is less than 12 months, the Compensation Limitation described in the preceding subparagraph (a) above will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is 12.

12.    "Contribution Percentage" means the ratio (expressed as a percentage) of the Qualifying Section 401(m) contributions under the Plan on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's Compensation for the Plan Year.

13.    "Controlled Group" means the Employer and all members of its controlled or affiliated group of trades or businesses whether or not incorporated (including an affiliated service group) as defined in Section 414(b), (c), (m) or (o) of the Code; provided, however, that any member of a Controlled Group shall be disregarded for all purposes under the Plan for any period when such member was not a member of the Controlled Group unless expressly provided to the contrary herein.

14.    "Defined Contribution Dollar Limitation" means $40,000 for Limitation Years beginning after December 31, 2001 as adjusted by Section 415(d) of the Code. If a Limitation Year is less than 12 months, the Defined Contribution Dollar Limitation for that year shall be multiplied by one-twelfth (1/12) of the number of months in such year.

15.    "DEFRA" means the Deficit Reduction Act of 1984, as amended from time to time.

16.    "Designated Beneficiary" or "Beneficiary" means the person(s) or entity(ies) designated by the Participant or, in the absence thereof, the person(s) or entity(ies) entitled under the provisions of this Plan to receive benefits as a result of the death of the Participant.

17.    "Direct Rollover" means a payment by the Plan to an Eligible Retirement Plan specified by a Distributee.

18.    "Distributee" means an Employee, former Employee, an Employee's or former Employee's Surviving Spouse or an Employee's or former Employee's Spouse or former Spouse who is an Alternate Payee under a Qualified Domestic Relations Order.

19.    "Distribution Calendar Year" means a calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year which contains the Participant's required beginning date. For

ARTICLE II                                                                              II-4

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

distributions beginning after the Participant's death, the first Distribution Calendar Year is the calendar year in which distributions are required to begin under subparagraph C.2(a) of Article VII. The required minimum distribution for the Participant's first Distribution Calendar Year will be made on or before the Participant's required beginning date. The required minimum distribution for other Distribution Calendar Years, including the required minimum distribution for the Distribution Calendar Year in which the Participant's required beginning date occurs, will be made on or before December 31 of that Distribution Calendar Year.

20. "Earned Income" means the net earnings of a Self-Employed Individual from self-employment (as defined in Section 1402(a) of the Code), determined after taking into account (i) deductible contributions to the Plan and any other qualified plans maintained by the Employer; and (ii) all other adjustments required by Section 401(c)(2) of the Code; but (iii) only if the services of the Self-Employed Individual to the Employer's business are a material income-producing factor as determined in accordance with Section 1.401-10(c) of the Treasury Regulations. Net earnings shall be further reduced by the deductions allowed to the taxpayer by Section 164(f) of the Code.

21. "Elective Contributions" means in any Plan Year the amount of a Participant's Compensation elected by him or her to be reduced and deferred pursuant to Article I. Catch-up contributions and Roth Contributions will be treated as Elective Contributions. Roth Contributions and pre-tax Elective Contributions may not be reclassified as the other type of contribution. Any amount that the Employee could not have elected to receive in cash or any amount that has become currently available to a Participant or that is designated or treated at the time of the deferral or contribution as an Employee After-Tax Contribution shall not be treated as an Elective Contribution

Except on account of bona fide administrative considerations that are not for the purpose of accelerating deductions, as described in Section 1.401(k)-1(a)(3)(iii)(C)(2) of the Treasury Regulations, Elective Contributions must be deposited to the Trust after the Employee's performance of services.

22. "Elective Contribution Account" means the account maintained to record the Participant's Elective Contributions, other than Roth Contributions, and any other adjustments as required under Article IV, V or X of the Plan.

23. "Elective Deferrals" means the sum of the amounts deferred pursuant to an individual's election to defer income for a taxable year pursuant to the following:

(a) Elective Contributions under this Plan and any qualified cash or deferred arrangement as defined in Section 401(k) of the Code which is not

ARTICLE II

II-5

CONFIDENTIAL

includable in the individual's gross income for the taxable year on account of Section 402(e)(3) of the Code.

(b)    Any Employer contribution to a simplified employee pension plan as defined in Section 408(k) of the Code which is not includable in the individual's income for the taxable year on account of Section 402(h)(1)(B) of the Code.

(c)    Any Employer contribution to an annuity contract under Section 403(b) of the Code under a salary reduction agreement within the meaning of Section 312(a)(5)(D) of the Code which is not includable in the individual's gross income for the taxable year on account of Section 403(b) of the Code.  For purposes of the preceding sentence, a contribution to a Section 403(b) annuity made pursuant to a one-time irrevocable election to contribute at time of eligibility to participate shall not be included.

(d)    Any Employee contribution designated as deductible in a trust described in Section 501(c)(18) of the Code which is deducted from such individual's income for the taxable year on account of Section 501(c)(18) of the Code.

(e)    Any elective Employer contribution made under Section 408(p)(2)(A)(i) of the Code.

(f)    Any catch-up contributions made under Section 414(v) of the Code.

24.    "Eligibility Computation Period" means the initial 12 consecutive month period commencing on an Employee's Employment Commencement Date and the Subsequent Eligibility Computation Period as elected in Article I.

25.    "Eligible Participant" means for purposes of computing the Actual Deferral Percentage, any Employee who is directly or indirectly eligible to make an election to reduce and defer his or her Compensation under the Plan during all or a portion of a Plan Year, including (i) any Employee who would be a Participant but for the failure to make any Elective Contributions or other required contributions; (ii) any Employee whose eligibility to make Elective Contributions has been suspended due to a hardship distribution or other distribution, a loan, or an election not to participate, other than a one-time irrevocable election made no later than the Employee's first becoming eligible under the Plan or any plan or arrangement of the Employer described in Section 219(g)(5)(A) of the Code (whether or not such other plan or arrangement has terminated) to have contributions equal to a specified amount or percentage of Compensation (including no amount of Compensation) made by the Employer to this Plan and any other plan maintained by the Employer (including plans not yet established) for the duration of the Employee's employment; (iii) any Employee who is

ARTICLE II

II-6

CONFIDENTIAL

WH_MDL_00331804

unable to receive an additional Annual Addition on account of Section 415(c)(1) of the Code; and (iv) any Employee who is unable to make an Elective Contribution because his or her Compensation is less than a stated dollar amount.

For purposes of computing the Average Contribution Percentage, "Eligible Participant" means any Employee who is directly or indirectly eligible to make an Employee After-Tax Contribution or to receive an allocation of Matching Contributions, including Matching Contributions derived from forfeitures under the Plan during all or a portion of a Plan Year including (i) any Employee who is unable to make an Employee After-Tax Contribution or receive an allocation of Matching Contributions merely because his Compensation is less than a stated amount; (ii) any Employee who would be eligible to make Employee After-Tax Contributions or receive Matching Contributions except for a suspension due to a hardship distribution or other distribution, a loan or an election not to participate in the Plan, other than a one-time irrevocable election made no later than the date the Employee first becomes eligible under the Plan or any plan or arrangement of the Employer described in Section 219(g)(5)(A) of the Code not to be eligible to make Employee After-Tax Contributions or receive an allocation of Matching Contributions under the Plan or any other plan maintained by the Employer (including plans not yet established) for the duration of the Employee's employment; (iii) and any Employee who is unable to receive additional Annual Additions because of Section 415(c)(1) of the Code.

26.     "Eligible Retirement Plan" means an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan, an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, an annuity contract described in Section 403(b) of the Code or a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution.

Notwithstanding the preceding paragraph, for purposes of Roth Contributions, an Eligible Retirement Plan means an applicable retirement plan described in Section 402A(e)(1) of the Code or a Roth IRA described in Section 408A of the Code, and only to the extent the direct rollover is permitted under Section 402(c) of the Code.

If elected in Article I, this Plan will accept direct rollovers of Roth Contributions provided such rollover satisfies the requirements of the preceding paragraph.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331805

27. "Eligible Rollover Distribution" means any distribution of $200 or more of the Distributee's vested Accrued Benefit except that an Eligible Rollover Distribution does not include (i) any distribution that is one of a series of substantially equal periodic payments made (not less frequently than annually) for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's Designated Beneficiary, or for a specified period of 10 years or more; (ii) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; (iii) the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and (iv) any hardship distributions.

Any amount that is distributed on account of hardship shall not be an Eligible Rollover Distribution and the Distributee may not elect to have any portion of such a distribution paid directly to an Eligible Retirement Plan. However, if a Participant would have been entitled to receive his or her Accounts regardless of hardship (i.e., age 59½), then such amounts shall qualify as an Eligible Rollover Distribution.

If a portion of a distribution that includes a hardship distribution is not includible in gross income, the portion of the distribution that is not includible in gross income is first allocated to the hardship distribution and then any remaining portion not includible in gross income is allocated to the portion of the distribution that is not a hardship distribution.

A portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of Employee After-Tax Contributions which are not includible in gross income. However, such portion may be transferred only to a traditional individual retirement account or annuity described in Section 408(a) or (b) of the Code, or to a qualified defined contribution plan described in Section 401(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible. If an Eligible Rollover Distribution includes both pretax and Employee After-Tax Contributions, the portion of such Eligible Rollover Distribution is treated as consisting first of pretax amounts.

28. "Employee" means every person employed by the Employer whose income is subject to withholding of income tax or for whom Social Security contributions are made by the Employer. Unless the Plan is amended to provide otherwise, the special rule for certain dispositions or acquisitions of Section 410(b)(6)(C) of the Code shall apply. Thus, the Plan may be treated as satisfying Section 410(b) of the Code for a limited period of time after an acquisition or disposition if the Plan satisfies Section 410(b) of the Code (without regard to the special rule) immediately before the acquisition or disposition and there is no significant change in the Plan or in the

ARTICLE II                                                                                      II-8

CONFIDENTIAL

WH_MDL_00331806

sdf

coverage of the Plan other than the acquisition or disposition. If the Employer is an Unincorporated Entity, Employee also means a Self-Employed Individual.

Employee shall include Leased Employees; provided, however, that a Leased Employee shall not be considered an Employee if:

(a) The Leased Employee is covered by a money purchase pension plan providing (i) a nonintegrated employer contribution rate of at least 10% of compensation, as defined in Section 415(c)(3) of the Code, but including amounts contributed by the employer pursuant to a salary reduction agreement which are excludable from the Leased Employee's gross income under Section 125, 132(f)(4), 402(e)(3), 402(h)(1)(B), 403(b), 408(p)(2)(A)(i) or 457 of the Code; (ii) immediate participation; and (iii) full and immediate vesting; and

(b) Leased Employees do not constitute more than 20% of the Employer's non-highly compensated workforce.

Leased Employees may become Eligible Employees unless excluded in Article I.

29. "Employee After-Tax Contribution" means any contributions, other than Roth Contributions, made to a plan that are designated or treated at the time of deferral or contributions as employee after-tax contributions and are allocated to a separate account to which the attributed earnings and losses are allocated. Such term includes (i) Employee contributions to a defined contribution plan described in Section 414(k) of the Code; (ii) Employee contributions made to a defined benefit plan which provides for a cost of living arrangement as described in Section 415(k)(2)(B) of the Code; (iii) Employee contributions applied to the purchase of whole life insurance protection, or survivor benefits protection under a defined contribution plan; (iv) amounts attributed to Excess Contributions within the meaning of Section 401(k)(8)(B) of the Code which are recharacterized as Employee contributions; and (v) and Employee contributions to a contract described in Section 403(b) of the Code. Employee After-Tax Contributions do not include repayment of loans, buy-backs of benefits previously forfeited, or Employee After-Tax Contributions which were transferred to this Plan and are held pursuant to Article XVI.

30. "Employee After-Tax Contribution Account" means the Account maintained to record a Participant's allocation of Employee Contributions and other adjustments as required under Article IV, V or X of the Plan.

31. "Employer" means the entity or entities adopting the Plan, and any other members of the Controlled Group and any successor thereto which have adopted the Plan in accordance with the provisions of Paragraph F of Article XIV. Employer also

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

means any other entities that have adopted this Plan and any successor thereto that are not members of a Controlled Group. The "Sponsoring Employer" shall be the Employer who is responsible for the administration of the Plan. Each other entity which adopts this Plan as provided herein shall be a "Participating Employer"; provided, however, that only members of a Controlled Group may be Participating Employers unless the preamble of Article I designates a non-Controlled Group entity as a Participating Employer.

32.     "Employment Commencement Date" means the date upon which an Employee first completes one (1) Hour of Service.

33.     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

34.     "Excess Aggregate Contributions" means, with respect to any Plan Year, the excess of the aggregate amount of Qualifying Section 401(m) Contributions actually made on behalf of Highly Compensated Employees for such Plan Year over the maximum amount of such contributions permitted under the Contribution Percentage limitation.

35.     "Excess Contributions" means, with respect to any Plan Year, the excess of the aggregate amount of Qualifying Section 401(k) Contributions actually made on behalf of Highly Compensated Employees for the Plan Year over the maximum amount of such contributions permitted under the Actual Deferral Percentage limitation.

36.     "Excess Deferrals" means those Elective Deferrals made by an individual during his or her taxable year which exceed $11,000 ($7,000 if a Simple 401(k) Plan) or such other amount that is adjusted under Section 415(d) of the Code. The special adjustments for Section 403(b) annuity contracts and other rules concerning Section 402(g) of the Code are incorporated herein by reference.

37.     "5%-Owner" means any person who owns directly or indirectly as defined in Section 416(i)(1)(B) of the Code (i) more than five percent (5%) of the outstanding stock of the Employer; or (ii) stock possessing more than five percent (5%) of the total combined voting power of all stock of the Employer. If the Employer is not a corporation, 5%-Owner means any person who owns more than five percent (5%) of the capital or profits interests in the Employer.

For purposes of Section 401(a)(9) of the Code, a Participant shall be considered a 5%-Owner if such Participant is a 5%-Owner at any time during the Plan Year ending with or within the calendar year in which such 5%-Owner attains age 70½.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331808

38.     "Highly   Compensated   Employee"   or   "Highly   Compensated
Participant" means:

(a)     Any Employee who performs services during the Plan Year;
and

(i)     Was a 5%-Owner of the Employer or a Controlled
Group member during the Plan Year or Look-Back Year; or

(ii)     Received   Section 415   Compensation   including
elective or salary reduction contributions to a cafeteria plan, cash or deferred
arrangement or tax sheltered annuity from the Employer and all entities which are
members of a Controlled Group with the Employer shall be treated as a single Employer
in excess of $80,000 (as adjusted pursuant to Section 415(d) of the Code, in effect on
the first day of any relevant Plan Year except that the base period shall be the calendar
quarter ending September 30, 1996) during the Look-Back Year or, if elected in Article I,
during the calendar year beginning with or within the Look-Back Year and, if elected in
Article I, was also in the Top Paid Group.

(b)     Any former Employee who separated from service prior to
the Plan Year, who performs no services for the Employer during the Plan Year and
was a Highly Compensated Employee who performed services for the Employer during
either the year the Employee separated from service or any Plan Year on or after the
Employee's 55th birthday.

39.     "Hour of Service" means:

(a)     Each hour for which an Employee is directly or indirectly
paid, or entitled to payment.  These hours shall be credited to the Employee for the
computation period(s) in which the services are performed and not when paid, if
different; and

(b)     Each hour for which an Employee is directly or indirectly
paid, or entitled to payment, by the Employer for a period of time during which no
services are performed (without regard to whether the employment relationship between
the Employee and the Employer has terminated) due to vacation, holiday, illness,
incapacity, disability, layoff, jury duty, military duty, or Leave of Absence with pay.  The
hours shall be credited to the Employee in the computation period to which
non-performance of duties relates and not in which paid, if different; and

(c)     Each hour for which an Employee has been awarded or for
which the Employer has agreed to pay, directly or indirectly, back pay (without regard to

ARTICLE II                                    II-11

CONFIDENTIAL                                                                      WH_MDL_00331809

damages). These hours shall be credited to the Employee in the computation period to which the award or agreement pertains, not the period in which paid, if different.

Notwithstanding the foregoing, (i) no more than 501 Hours of Service shall be credited to an Employee under subparagraph (b) or (c) of this Paragraph A.39 for any single continuous period of time during which no services are performed; (ii) an hour for which an Employee is directly or indirectly paid for a period during which no services are performed shall not constitute an Hour of Service, if such payment is paid or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation, or disability insurance laws; (iii) Hours of Service shall not be credited for payments which solely reimburse an Employee for medical or medically related expenses; (iv) the same Hours of Service shall not be credited to an Employee both under subparagraph (a) or (b) and subparagraph (c); and (v) Hours of Service to be credited under subparagraph (b) above shall be determined based upon the number of regularly scheduled working hours included in the units of time on the basis of which payment is calculated.

Unless otherwise elected in Article I, the Employer shall determine Hours of Service based upon days of employment in a computation period by crediting an Employee with 10 Hours of Service for each day for which the Employee would be required to be credited with at least one (1) Hour of Service under subparagraphs (a), (b) and (c) of this Paragraph A.39. The preceding sentence shall only apply if the Employer uses the hourly method to credit service for an Employee and does not count actual hours for which an Employee is paid or entitled to payment and the Employer does not elect an alternative equivalency in Article I.

The Committee shall determine Hours of Service to be credited to an Employee under the foregoing rules in a uniform and non-discriminatory manner and in accordance with Section 2530.200b-2 of the Department of Labor Regulations (as amended from time to time), which are incorporated herein by this reference.

40.   "Inactive Participant" means a Participant whose participation in the Plan is suspended because of a change of employment status, including (i) terminating employment; (ii) incurring a Break-in-Service; or (iii) becoming a member of a class of Employees which has been excluded from participation, but whose total benefits have not been distributed.

41.   "Investment Manager" means a fiduciary designated by the Employer or the Committee, to whom has been delegated the responsibility and authority to manage, acquire or dispose of the Trust assets, and (i) who is (A) registered as an investment advisor under the Investment Advisors Act of 1940; (B) a bank, as defined in that Act; or (C) an insurance company qualified to perform investment advisory services under the laws of more than one (1) state; and (ii) who has

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331810

acknowledged in writing that he or she is a fiduciary with respect to the management, acquisition and control of the Trust assets.

42.     "Leased Employee" means any person (other than an Employee of the Employer) who, pursuant to an agreement between the Employer and any other person ("leasing organization"), has performed services for the Employer (or for related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full-time basis for a period of at least one (1) year, and such services are under the primary direction or control of the Employer. Contributions or benefits provided to a Leased Employee by the leasing organization which are attributable to services performed for the Employer shall be treated as provided by the Employer.

43.     "Leave of Absence" means a leave granted by the Employer, in its sole discretion, in accordance with rules uniformly applied to all Employees, for reasons of health or public service or for reasons determined by the Employer to be in its best interests.

Effective December 12, 1994, contribution, benefit and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code. If elected in Article I or by the Plan's loan policy, the Committee shall suspend loan repayments during any Participant's periods of qualified military service.

Additional Employee After-Tax Contributions, Elective Contributions, or Matching Contributions made by reason of an Eligible Employee's qualified military service under Section 414(u) of the Code are not taken into account for purposes of the Actual Deferral Percentage limitation or Contribution Percentage limitation for the Plan Year in which such contributions are made or for any other Plan Year.

44.     "Look-Back Year" means the 12-month period immediately preceding any relevant Plan Year.

45.     "Matching Contribution" means an Employer contribution made to the Plan or a defined contribution plan maintained by the Employer on account of an Employee After-Tax Contribution or an Elective Contribution, and any reallocated forfeiture allocated on the basis of an Employee After-Tax Contribution, Matching Contribution or Elective Contribution.

46.     "Matching Contribution Account" means the account maintained separately to record each Participant's Matching Contributions and other adjustments as required under Article V or X of the Plan.

47.     "Maternity or Paternity Leave of Absence" means an absence (i) because of the Employee's pregnancy; (ii) because of the birth of a child of the

ARTICLE II                    II-13

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331811

Employee; (iii) because of the adoption of a child by, and placement of the child with, the Employee; or (iv) for purposes of caring for such child for a period beginning immediately following such birth or placement.  The Hours of Service credited under this Paragraph A.47 shall be credited (i) in the Eligibility Computation Period and/or Vesting Computation Period in which the absence begins if the crediting is necessary to prevent a Break-in-Service in that computation period; or (ii) in all other cases, in the following Eligibility Computation Period and/or Vesting Computation Period.  No Hours of Service for Maternity or Paternity Leave of Absence shall be credited to a Participant unless he or she timely furnishes to the Committee such information as the Committee may request to establish that the absence is for a Maternity or Paternity Leave of Absence and the number of days of such absence.  The total Hours of Service to be credited for Maternity or Paternity Leave of Absence shall not exceed 501 in any computation period.

48.   "Net Profits" means the net income of the Employer as determined for federal income tax purposes without any deduction for taxes based upon income or for contributions made by the Employer under this Plan or any other qualified plan maintained by the Employer.  For a Self-Employed Individual, Net Profits mean Earned Income, as determined under Section 404(a)(8) of the Code.

49.   "Nonelective   Employer   Contributions"   means   Employer contributions other than Matching Contributions with respect to which the Employee may not elect to have the contributions paid to the Employee in cash or other benefits.

50.   "Nonelective Employer Contribution Account" means the Account maintained to record a Participant's allocations of Nonelective Employer Contributions, forfeitures, if any, and other adjustments as required under Article V of the Plan.

51.   "Non-Highly   Compensated   Employee"   or   "Non-Highly Compensated Participant" means an Employee who is not a Highly Compensated Employee.

52.   "One-Year Period of Service" means each 12 month Period of Service beginning on the Employee's Employment Commencement Date.

53.   "One-Year Period of Severance" means each 12 consecutive month Period of Severance, beginning on the Severance from Service Date.

54.   "Owner-Employee" means a Self-Employed Individual who owns the entire interest of a sole proprietorship, or a partner or member who owns more than a 10% capital or profits interest in a partnership or limited liability company.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331812

55.     "Participant" means any Eligible Employee who enters the Plan and who has not received payment of his or her total vested Accrued Benefit.

56.     "Period of Service" means a period beginning on the Employment Commencement Date or, for a former Employee, the date on which he or she first performs an Hour of Service after re-hire and ending with the Severance from Service Date.

57.     "Period of Severance" means a period during which an Employee does not perform an Hour of Service, beginning on the Severance from Service Date and ending when an Employee again performs an Hour of Service.

58.     "Plan" means this 401(k) Plan as identified in Article I.

59.     "Qualified Domestic Relations Order" means a judgment, decree or order (including approval of a property settlement agreement) that (i) relates to the provision of child support, alimony payments or marital property rights to an alternate payee; (ii) is made pursuant to a state domestic relations law (including community property law); (iii) creates or recognizes the existence of an alternate payee's right, or assigns to an alternate payee the right, to receive all or a portion of the benefits payable to the Participant under the Plan; (iv) specifies the information required by Section 414(p) of the Code; (v) does not alter the amount or form of Plan benefits; and (vi) complies with all other relevant provisions of Section 414(p) of the Code. For such purposes, an "Alternate Payee" is a Spouse, former Spouse, child or other dependent of a Participant who is recognized by a domestic relations order as having a right to receive all or a portion of the benefits payable with respect to a Participant under the Plan.

60.     "Qualified Matching Contributions" means Matching Contributions, other than Safe Harbor Matching Contributions or Simple 401(k) Contributions that satisfy the vesting and distribution requirements of Elective Contributions.

61.     "Qualified Matching Contribution Account" means the account maintained to record separately a Participant's allocation of a Qualified Matching Contribution, and other adjustments as required under Article IV, V or X of the Plan.

62.     "Qualified Nonelective Employer Contributions" means Employer contributions, other than Elective Contributions, including Roth Contributions, Matching Contributions, Safe Harbor Nonelective Employer Contributions, Safe Harbor Matching Contributions or Simple 401(k) Contributions, that satisfy the vesting and distribution requirements of Elective Contributions.

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

WH_MDL_00331813

63.    "<u>Qualified Nonelective Employer Contribution Account</u>" means the account maintained to record a Participant's allocation of Qualified Nonelective Employer Contributions, and other adjustments as required under Article IV, V or X of the Plan.

64.    "<u>Qualifying Section 401(k) Contributions</u>" means Elective Contributions, including Roth Contributions, in combination with Qualified Nonelective Employer Contributions and Qualified Matching Contributions that are treated as Elective Contributions to satisfy the Actual Deferral Percentage limitation.

65.    "<u>Qualifying Section 401(m) Contributions</u>" means Employee After-Tax Contributions and Employer Matching Contributions in combination with Qualified Nonelective Employer Contributions and Elective Contributions that are treated as Employee After-Tax Contributions to satisfy the Contribution Percentage limitation.

66.    "<u>REACT</u>" means the Retirement Equity Act of 1984, as amended from time to time.

67.    "<u>Rollover Contributions</u>" means contributions within the meaning of Section 402(c), 403(a)(4) or 408(d)(3) of the Code.

68.    "<u>Rollover Contribution Account</u>" means the account maintained to record a Participant's Rollover Contribution and other adjustments as required in Article IV, V or X of the Plan.

69.    "<u>Roth Contributions</u>" means Elective Contributions that are designated irrevocably by the Participant at the time of the cash and deferred election as Roth Contributions and treated by the Employer as includible in the Participant's income as if the Participant did not make the cash or deferred election.    Roth Contributions shall be accounted for separately in a Roth Contribution Account.

70.    "<u>Roth Contribution Account</u>" means the account maintained to record a Participant's Roth Contributions and other adjustments as required in Article IV, V or X of the Plan.

71.    "<u>Safe Harbor Matching Contributions</u>" means Matching Contributions made to this Plan, or to another defined contribution plan maintained by the Employer, to satisfy the Average Deferred Percentage limitation or Average Contribution limitation that are (i) fully vested; (ii) subject to the withdrawal restrictions of Elective Contributions but not available to hardship withdrawals; and (iii) used to satisfy the allocation requirements of Section 401(k)(12)(B) of the Code and the notice requirements of Section 401(k)(12)(D) of the Code without regard to Section 401(l) of

ARTICLE II

II-16

BROAD FINANCIAL  (800) 395-5200

WH_MDL_00331814

the Code.    If Safe Harbor Matching Contributions are made to another defined contribution plan maintained by the Employer, such plan must have the same Plan Year as this Plan.

The rate of Safe Harbor Matching Contributions allocated to Participants cannot increase as a Participant's rate of Elective Contributions increase.   The rate of Safe Harbor Matching Contributions allocation to Non-Highly Compensated Participants must at least equal to the rate of Safe Harbor Matching Contributions allocated to Highly Compensated Participants.   The preceding sentence shall also apply separately with respect to Matching Contributions and Qualified Matching Contributions.

72.    "Safe Harbor Matching Contribution Account" means the account maintained to record the Participant's Safe Harbor Matching Contributions and any other adjustments as required under Article IV, V or X of the Plan.

73.    "Safe Harbor Nonelective Employer Contributions" means Nonelective Employer Contributions made to this Plan, or to another defined contribution plan maintained by the Employer, to satisfy the Actual Deferred Percentage limitation, that are (i) fully vested; (ii) subject to the withdrawal restrictions of Elective Contributions but not available for hardship withdrawals; and (iii) used to satisfy the allocation requirements of Section 401(k)(12)(C) of the Code and the notice requirements of Section 401(k)(12)(D) of the Code without regard to Section 401(l) of the Code. If Safe Harbor Nonelective Employer Contributions are made to another defined contribution plan maintained by the Employer, such plan must have the same Plan Year as this Plan.

74.    "Safe Harbor Nonelective Employer Contribution Account" means the account maintained to record the Participant's Safe Harbor Nonelective Employer Contributions and any other adjustments as required under Article IV, V or X of the Plan.

75.    "Section 415 Compensation" means, with respect to any Participant, either (a), (b) or (c) below as elected in Article I:

(a)    Information required to be reported under Sections 6041, 6051, and 6052 of the Code (wages, tips and other compensation as reported on Form W-2). Compensation is defined as wages within the meaning of Section 3401(a) of the Code and all other payments of compensation to an Employee by the Employer (in the course of the Employer's trade or business) for which the Employer is required to furnish the Employee a written statement under Sections 6041(d), 6051(a)(3), and 6052 of the Code.   Compensation must be determined without regard to any rules under Section 3401(a) of the Code that limit the remuneration included in wages based on the

ARTICLE II                          II-17

CONFIDENTIAL

WH_MDL_00331815

nature or location of the employment or the services performed (such as the exception for agricultural labor in Section 3401(a)(2) of the Code).

(b)    Wages as defined in Section 3401(a) of the Code for the purpose of income tax withholding but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Section 3401(a)(2) of the Code).

(c)    A Participant's wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of employment with the Employer maintaining the Plan (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursement or other expense allowances under a nonaccountable plan. The following items are excluded from Section 415 Compensation under this subparagraph (c):

(i)    Employer contributions to a plan of deferred compensation which are not included in the Employee's gross income for the taxable year in which contributed or Employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the Employee, or any distributions from a plan of deferred compensation;

(ii)    Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(iii)    Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(iv)    Other amounts which received special tax benefits, or contributions made by the Employer (whether or not under a salary reduction agreement) towards the purchase of an annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the Employee).

If the Employee is a Self-Employed Individual, his or her Section 415 Compensation includes his or her Earned Income derived from the trade or business for which the Plan is established.

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

WH_MDL 00331816

Section 415 Compensation shall include any Elective Deferrals and any amount deferred by an Employee which is not includable in gross income by reasons of Section 125, 132(f)(4), or 457 of the Code.

76. "Self-Employed Individual" means a person who has Earned Income for the taxable year from the trade or business for which the Plan is established and includes an individual who would have had Earned Income but for the fact that the trade or business had no Net Profits for the taxable year.

77. "Severance from Service Date" means the date which is the earlier of the date on which an Employee voluntarily leaves (quits) employment, retires, is discharged or dies, or the first anniversary of the first date the Employee is absent for any other reason. However, for purposes of Maternity or Paternity Leave of Absence, Severance from Service Date of an Employee who is absent beyond the first anniversary of such absence means the second anniversary of the first date of such absence. The period between the first and second anniversary of a Maternity or Paternity Leave of Absence is neither a Period of Service nor a Period of Severance.

78. "Shareholder-Employee" means an employee of a subchapter S corporation (Section 1361, et seq., of the Code) who owns more than five percent (5%) of the outstanding stock of such corporation.

79. "Simple 401(k) Contributions" means Matching Contributions that satisfy the allocation requirements of Section 401(k)(11)(B)(i)(II) of the Code or Nonelective Employer Contributions that satisfy the allocation requirements of Section 401(k)(11)(B)(ii) of the Code. Simple 401(k) Contributions must satisfy the administrative and notice requirements of Section 401(k)(11)(B)(iii) of the Code and the fully vested requirements of Section 408(p)(3) of the Code.

80. "Simple 401(k) Contribution Account" means the account maintained to record the Participant's Simple 401(k) Contributions and any other adjustments as required under Article IV, V or X of the Plan.

81. "Simple 401(k) Plan" means a plan intended to satisfy the requirements of Section 401(k)(11) of the Code. If the Employer elects in Article I that this Plan is intended to satisfy the requirements of a Simple 401(k) Plan, Employees covered under this Plan shall not be eligible to participate under any other plan maintained by the Employer. Except as stated below, if an Employer employs more than 100 Employees who earn at least $5,000 of Section 415 Compensation during the prior year, such Employer shall not be eligible to maintain a Simple 401(k) Plan. A Simple 401(k) Plan must have a calendar year as its Plan Year.

ARTICLE II                                                    II-19

CONFIDENTIAL

WH_MDL_00331817

An eligible Employer that maintains a Simple 401(k) Plan and later fails to be an eligible Employer for any subsequent year, shall be treated as an eligible Employer for the two (2) years following the last year the Employer was an eligible Employer. If the failure is due to any acquisition, disposition, or similar transaction involving an eligible Employer, the preceding sentence applies only if the provisions of Section 410(b)(6)(C)(i) of the Code are satisfied.

If this Plan is a Simple 401(k) Plan as elected in Article I, the Employer shall be required to make Simple 401(k) Contributions as described in Article I. No other contributions may be made to the Plan other than Elective Contributions and Simple 401(k) Contributions and to the extent that any other provision of the Plan is inconsistent with the provision of a Simple 401(k) Plan, the provisions of the Simple 401(k) Plan shall apply.

82.    "Single Employer Plan" means a plan maintained by one (1) Employer, or a plan maintained by more than one (1) Employer, all of which are members of a Controlled Group, and which is designed to comply with the provisions of Sections 414(b), 414(c) and 414(m) of the Code and the Treasury Regulations promulgated thereunder.

83.    "Social Security Retirement Age" means age 65 for a Participant born before January 1, 1938; age 66 for a Participant born after December 31, 1937 and before January 1, 1955; and age 67 for a Participant born after December 31, 1954.

84.    "Social Security Wage Base" means, with respect to any Plan Year, the maximum amount of earnings which may be considered wages under Section 3121(a) of the Code for the calendar year in which falls the beginning of such Plan Year as in effect on the first day of such Plan Year.

85.    "TEFRA" means the Tax Equity and Fiscal Responsibility Act of 1982, as amended from time to time.

86.    "Top Paid Group" means the group consisting of the top 20% of the Employees when ranked on the basis of Section 415 Compensation during either the Look-Back Year or the calendar year beginning with or within the Look-Back Year as selected in Article I.    Employees described in Section 414(q)(5) of the Code and Q&A 9(b) of Section 1.414(q)-1T of the Regulations are included or excluded to the extent provided in Article I.

87.    "TRA '86" means the Tax Reform Act of 1986, as amended from time to time.

ARTICLE II                              II-20

CONFIDENTIAL

WH_MDL_00331818

88.    "Total Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months, as determined by a licensed physician selected or approved by the Committee, or such other definition as elected in Article I.

89.    "Transferred Benefits Account" means the Account maintained to record a Participant's Transferred Benefit, forfeitures, if any, and other adjustments required under Article IV, V or X of the Plan.

90.    "Trust" means the Trust Agreement entered into between the Employer and the Trustee.  A Trust may include a custodial agreement or insurance contract, if applicable.

91.    "Trustee" means the trustee(s) named under the Trust or any successor Trustee named in a written instrument of the Board.

92.    "Unincorporated Entity" means a sole proprietorship, a partnership or a limited liability company.

93.    "Vesting Computation Period" means the 12 consecutive month period ending on the last day of the Plan Year that includes an Employee's Employment Commencement Date and the last day of each subsequent Plan Year.

If elected in Article I or if the elapsed time method is selected in Article I, Vesting Computation Period means each 12 consecutive month period beginning on the Employee's Employment Commencement Date and any subsequent 12 consecutive month period commencing on any anniversary date of the Employee's Employment Commencement Date.

94.    "Year of Service" means an Eligibility Computation Period or Vesting Computation Period during which an Employee completes 1,000 or more Hours of Service or such lesser amount, if elected in Article I, with the Employer. With respect to any Eligibility Computation Period and any Vesting Computation Period, Hours of Service with any member of a Controlled Group shall be credited to the relevant Computation Period. Unless elected otherwise in Article I, for purposes of eligibility and vesting, if a Plan Year is less than 12 months and an Employee has less than 1,000 Hours of Service during such short Plan Year but has completed 1,000 Hours of Service or such lesser amount, if elected in Article I, during the 12 consecutive month period ending on the last day of such short Plan Year, the Employee will be credited with one (1) Year of Service for the Plan Year.  If such Plan Year is not an Eligibility

ARTICLE II                              II-21

CONFIDENTIAL

WH_MDL_00331819

Computation Period for an Employee, the preceding sentence shall not apply for eligibility purposes.

For purposes of the elapsed time method, a "Year of Service" means a One-Year Period of Service with the Employer. An Employee will receive credit for the aggregate of all time period(s) commencing with the Employee's Employment Commencement Date or the date such Employee is credited with an Hour of Service upon re-employment and ending on the date a One-Year Period of Severance begins. An Employee will also receive credit for any Period of Severance of less than 12 consecutive months. Fractional portions of a year will be expressed in terms of days.

   B.    Terms Not Defined in Article I and II of this Plan. The following terms are defined in the Paragraphs and Articles specified below.

      1.    Annuity Starting Date – See Paragraph A.1 of Article VII.

      2.    Determination Date – See Paragraph A.1 of Article VIII.

      3.    Election Period – See Paragraph A.2 of Article VII.

      4.    Key Employee – See Paragraph A.2 of Article VIII.

      5.    Non-Key Employee – See Paragraph A.3 of Article VIII.

      6.    Qualified Joint and Survivor Annuity – See Paragraph A.3 of Article VII.

      7.    Qualified Preretirement Survivor Annuity – See Paragraph A.4 of Article VII.

      8.    Required and Permissive Aggregation Groups – See Paragraphs A.6 and B of Article VIII.

      9.    Spouse or Surviving Spouse – See Paragraph A.5 of Article VII.

      10.    Top-heavy Group – See Paragraph A.5 of Article VIII.

      11.    Top-heavy Plan – See Paragraph A.4 of Article VIII.

      12.    Transferred Benefits – See Paragraph A.6 of Article VII.

      13.    Waiver Election – See Paragraph A.7 of Article VII.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331820

### III.    PARTICIPATION AND MEMBERSHIP

A.    Participation Date.  Each Eligible Employee shall become a Participant on the Entry Date specified in Article I if he or she is employed on such Entry Date.

1.    Vested Participants.    Any vested Participant who terminates employment and who is subsequently re-employed, shall be readmitted as a Participant as of the first day or his or her re-employment.

2.    Non-Vested Participants.    Any non-vested Participant who terminates employment and who is subsequently re-employed shall be considered a new Employee, and must again satisfy the requirements to become an Eligible Employee if his or her period of consecutive one-year Breaks-in-Service equals or exceeds the greater of (i) five (5); or (ii) the aggregate number of Years of Service completed before such termination of employment.  If such former Participant is not considered a new Employee pursuant to this Paragraph A.2, such former Participant shall participate in the Plan immediately upon his or her re-employment.

3.    Employee Not a Participant.    Any Employee who terminates employment prior to his or her Entry Date, but after satisfying the eligibility requirements of Article I, and who is re-hired prior to incurring five (5) consecutive Breaks-in-Service shall become a Participant on the later of (i) his or her date of re-employment; or (ii) the first Entry Date following the date he or she becomes an Eligible Employee.  If this Plan provides for immediate full vesting of all Accounts, then an Employee who did not satisfy the Plan's service requirement and has incurred a one-year Break-in-Service shall have his or her prior service disregarded.  Any Employee who terminates employment prior to his or her Entry Date and who is re-hired after incurring five (5) consecutive Breaks-in-Service shall be considered a new Employee.

4.    Change in Employment Status.    Any Employee who is not a member of an eligible class of employees and becomes a member of an eligible class will participate immediately if such Employee would have otherwise previously become a Participant.

If a Participant becomes an Inactive Participant and has not incurred a one-year Break-in-Service, such Employee will participate immediately upon returning to an eligible class of employees.  If such Participant incurs a one-year Break-in-Service, eligibility will be determined under the Break-in-Service rules of this Article III.

B.    Leave of Absence.  For purposes of eligibility, no Employee shall be deemed to have suffered a Break-in-Service if his or her employment is interrupted because such Employee has been on a Leave of Absence.  For purposes of eligibility, a

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

Break-in-Service shall not be deemed to have occurred while an Employee is a member of the armed forces of the United States, provided that he or she returns to the service of the Employer within 90 days (or such longer period as may be prescribed by law) from the date he or she first became entitled to his or her discharge.

C.    Enrollment.    The Employer shall, from time to time as requested by the Committee, provide a list of all of its Employees, their names and ages, the number of Hours of Service completed by each during the current Plan Year or other applicable Computation Period, their dates of hire, and any additional information the Committee may require.   The Committee shall determine from such lists which Employees are Eligible Employees and their Entry Dates for participation under the Plan.

D.    Waiver of Participation.    If waiver of participation is permitted in Article I, the Plan may treat Employees who waive participation in the Plan as a nondiscriminatory class of Employees who are ineligible to participate.  A waiver made by an Employee must be irrevocable.  A waiver of participation shall not become effective if it would constitute a cash or deferred arrangement within the meaning of Section 401(k) of the Code.  A waiver of participation shall not be considered a cash or deferred arrangement if it is irrevocable, applies to all plans maintained by the Employer, and is made prior to the date on which the Employee is first eligible to participate in the Plan.  The Committee shall establish uniform and nondiscriminatory procedures as it deems necessary to carry out this provision including, but not limited to, rules prescribing the timing and filing of elections to waive participation.  The Committee, in its sole discretion, shall determine the propriety of any such waiver.

E.    Omission of Eligible Employee.    If, in any Plan Year, any Employee who should be included as a Participant in the Plan is erroneously omitted or an error caused a Participant to be credited with less than his or her full allocation, the Committee shall determine the amounts (or additional amounts) which should have been credited to such Participant's Account.  Any correction by the Committee regarding the omission of an Eligible Employee for a Plan Year will be consistent with the correction methods used under the Internal Revenue Service Employee Plans Completion Resolution System.

F.    Inclusion of Ineligible Employee.    Any correction by the Committee regarding the inclusion of an ineligible Employer for a Plan Year will be consistent with the correction method used under the Internal Revenue Service Employee Plan Compliance Resolution System.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331822

## IV.    EMPLOYER CONTRIBUTIONS

A.    In General.  For each Plan Year in which this Plan is in effect, the Employer shall make contributions to the Trust in one (1) or more installments in such amounts, if any, as provided in Article I; provided that (i) the Plan Year for which each contribution is made shall be designated at the time of the contribution or upon the income tax return of the Employer for any relevant Plan Year; (ii) no contribution to this Plan for any Plan Year shall exceed an amount which the Employer estimates will be deductible under Sections 404(a) and 404(j) of the Code; (iii) no contribution for any Plan Year shall cause the limitations on the Annual Addition of any Participant to be exceeded for such Plan Year; and (iv) no contribution shall be made for any Participant who did not complete a Year of Service during the relevant Plan Year unless Article I provides otherwise.

Contributions made to an Owner-Employee may be made only from such Owner-Employee's Earned Income derived from the trade or business for which the Plan is established.

B.    Special Make-up Contribution.  A previously forfeited Account Balance shall be restored in accordance with Article I.

C.    Corrective Contributions.  Subject to all applicable limitations of the Code, the Employer may make additional contributions to the Plan as needed to correct any errors in administration which may occur from time to time.  Such corrective contributions shall be limited to the extent necessary (including earnings as applicable) to place affected Participants in the position they would have been in but for such error or errors, and shall be allocated to the account or accounts from which the error was made, subject to all rules and procedures otherwise applicable to such Accounts.  Corrective contributions made for a Plan Year will be consistent with the corrective methods used under the Internal Revenue Service Employee Plans Compliance Resolution System.

D.    Profit Sharing and Retirement Savings (401(k)) Contributions.  The provisions of this Paragraph D shall apply to contributions made pursuant to the cash or deferred feature of the Plan.

1.    Qualifying Section 401(k) Contributions.  The Employer intends that all Qualifying Employer Contributions shall satisfy all of the requirements of Section 401(k) of the Code and the Treasury Regulations promulgated there under as constituting a qualified cash or deferred arrangement.  Each Participant shall be fully vested in his or her Qualifying Section 401(k) Contributions at all times.

2.    Participant Elective Contributions.  As permitted in Paragraph H.1 of Article I, a Participant may elect to reduce and defer the receipt of his or her Compensation, the Employer shall reduce such Participant's Compensation in the

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                                          WH_MDL_00331823

elected amount through payroll withholding and contribute to the Plan on behalf of each such electing Participant an amount equal to the Compensation to be reduced and deferred. A Participant's Elective Contributions shall be credited to his or her Elective Contribution Account, and generally will be paid by the Employer to the Plan no later than the 15th business day following the month in which the amount was withheld from the Participant's payroll.

(a)    If provided in Paragraph H.1 of Article I, Employees who are eligible to make Elective Contributions under this Plan and who have attained age 50 by the end of the calendar year shall be eligible to make catch-up contributions at the beginning of the calendar year in accordance with, and subject to the limitations of, Section 414(v) of the Code. Such catch-up contributions shall not be taken into account for purposes of the provisions of the Plan implementing the required limitations of Sections 402(g) and 415(c) of the Code. The Plan shall not be treated as failing to satisfy the provisions of the Plan implementing the requirements of Section 401(a)(4), 401(k)(3), 401(k)(11), 410(b), or 416 of the Code, as applicable, by reason of making of such catch-up contributions. For purposes of Section 410(b) and the average benefit percentage test under Treasury Regulation Section 1.410(b)-5, catch-up contributions for the current Plan Year are disregarded. However, catch-up contributions made to the Plan in prior years are taken into account for purposes of Section 410(b) and the average benefit test under Treasury Regulation Section 1.410(b)-5. Those Plan provisions that relate to Sections 1.414(v)-1(a) through (h) of the Treasury Regulations are effective for Plan Years beginning after December 31, 2003.

(b)    If provided in Paragraph H.1 of Article I, Employees who are eligible to make Elective Contributions under this Plan may designate all or part of his or her Elective Contributions as Roth Contributions. Forfeitures may not be allocated to a Roth Contribution Account. No contributions other than designated Roth Contributions and rollover contributions described in Section 402(A)(c)(3)(A) of the Code are permitted to be allocated to the Roth Contribution Account. The separate accounting requirement of a Roth Contribution Account shall continue to apply until the designated Roth Contributions are completely distributed to the Participant. Any gains, losses, credits or changes must be separately allocated on a reasonable and consistent basis to the Participant's Roth Contribution Account and other Accounts under the Plan to ensure that the Roth Contribution Account maintains a record of the Participant's investment in the contract. For purposes of Section 401(a)(31) of the Code, a Roth Contribution Account can only be rolled over to another designated Roth account under an Eligible Retirement Plan.

3.    Changes in Elective Contributions. A Participant will be given a reasonable period at least once each Plan Year to elect to make Elective Contributions or Roth Contributions. Such election may not be retroactive. A Participant may suspend his or her Elective Contributions or Roth Contributions at any time. The rules and

ARTICLE IV

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

WH_MDL_00331824

procedures for allowing Participants to defer and reduce their Compensation under Paragraph H.1 of Article I and this Paragraph D.3 and to decrease (or increase) such reductions and deferrals shall be established by the Committee, in its sole discretion; provided, however, that the Committee shall exercise its discretion in a uniform and nondiscriminatory manner. Such rules and procedures shall be the same for pre-tax Elective Contributions and Roth Contributions, if applicable. If this Plan provides for Safe Harbor Matching Contributions, a Participant shall have a reasonable opportunity and a reasonable period of time to increase, decrease, or resume his or her Elective Contributions. A 30 day period shall be deemed a reasonable period of time.

    4.    Automatic Enrollment. The Employer may elect in Article I to apply the automatic enrollment provisions. If elected, the following provisions shall apply:

    (a)    The Employer shall elect in Article I to apply the automatic enrollment provisions either to current and future Participants or only to future Participants hired on or after the automatic enrollment provisions are effective. If the Employer elects to have these provisions apply to current and future Participants, then the Employer will apply the automatic enrollment provisions to current Participants who are deferring at less than the amount elected in Article I, unless such Participants make an affirmative election to receive their Compensation in cash.

    (b)    After satisfying the Plan's eligibility requirements, each affected Participant shall have his or her Compensation automatically reduced by the percentage elected in Article I and such amount shall be contributed to the Plan.

    (c)    Notwithstanding the foregoing, an election by a Participant not to make Elective Deferrals or to contribute a different percentage may be made at any time. Such election, if filed when the Participant is hired, or within a reasonable time before the Compensation payable for the first pay period is currently made available, shall be effective for the first pay period and subsequent pay periods until superseded by a subsequent Deferral Election, including an election to defer zero Compensation. Elections filed at a later date shall be effective for payroll periods beginning in the month next following the date the election is filed with the Plan.

    (d)    If a Participant has Elective Deferrals withheld pursuant to automatic enrollment and no investment directive has been received by the Plan, such Participant's contributions shall be invested in accordance with Article I and XII of the Plan and the procedures established by the Committee.

    (e)    For current Participants who are deferring at a percentage or dollar amount less than the amount elected in Article I, the Employer shall, in the first payroll period after the date of the automatic provisions are effective, reduce the

ARTICLE IV           IV-3

CONFIDENTIAL

Participant's Compensation by the difference between the Participant's current Deferral Election and the amount elected in Article I.

(f)     At the time an Employee is hired, the Committee shall provide the Employee with a notice that explains the automatic enrollment provisions. This notice shall also explain the Employee's right to elect to have no Elective Contributions made to the Plan or to change the amount of his or her Elective Contributions. Such notice will include the procedure for exercising the right and the timing for implementation of any such election.

(g)     The Committee shall provide each Participant in the Plan with an annual notice of his or her Elective Contribution percentage and each Participant's right to change the percentage, including the procedure for exercising these rights and the timing for implementation of any such election. Prior to a Participant's automatic enrollment becoming effective, the Committee will provide such Participant with appropriate guidance as to the procedures then in effect for the Participant to make alternative elections referenced above.     Each Participant deferring Compensation pursuant to the automatic enrollment provisions shall be deemed to have consented to an Elective Deferral contribution in the amount specified by the Employer as provided in Article I, unless he or she has filed an election to the contrary with the Committee.

(h)     As stated in Article I, Elective Deferrals made pursuant to the automatic enrollment provisions shall be treated as either pre-tax Elective Contributions or Roth Contributions.

5.     Simple 401(k) Plans. If this is a Simple 401(k) Plan, in addition to any other election periods, each Employee may make or modify his or her salary reduction election during the 60-day period immediately preceding each January 1. If the Employee elects to suspend his or her Elective Contributions during the Plan Year, the Committee may require the Employee to wait until the beginning of the next Plan Year before he or she may resume his or her Elective Contributions. The Employer shall notify each Eligible Employee of his or her election rights within a reasonable time prior to the 60-day election period and shall indicate the type and amount of the Simple 401(k) Contribution to be made.

E.     Actual Deferral Percentage Limitation.

1.     General Limitation.

The amount of Qualifying Section 401(k) Contributions made on behalf of the group consisting of Highly Compensated Employees shall not result in an Actual Deferral Percentage that exceeds the greater of:

ARTICLE IV                                      IV-4

CONFIDENTIAL

(a)    The Actual Deferral Percentage limitation for the group of Eligible Participants who are Highly Compensated Employees for the current Plan Year shall not exceed the Actual Deferral Percentage for the group of Eligible Participants who are Non-Highly Compensated Employees for the current or preceding Plan Year as elected in Article I multiplied by 1.25; or

(b)    The Actual Deferral Percentage for the group of Eligible Participants who are Highly Compensated Employees for the current Plan Year shall not exceed the Average Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the current or preceding Plan Year as elected in Article I, multiplied by two (2), and provided that the Actual Deferral Percentage for the group of Eligible Participants who are Highly Compensated Employees does not exceed the Actual Deferral Percentage for the group of Eligible Participants who are Non-Highly Compensated Employees for the current or preceding Plan Year, as elected in Article I, by more than two (2) percentage points.

2.    Prior Year Testing.

If the Plan provides for the prior year testing method, the Actual Deferral Percentage shall be determined without regard to changes in the group of Non-Highly Compensated Employees who are Eligible Participants during the testing year.

3.    First Plan Year Testing.

For the first Plan Year in which the Plan (other than a successor plan) provides for a cash or deferred arrangement, the Actual Deferral Percentage of eligible Non-Highly Compensated Employees under the prior year testing method shall be either three percent (3%) or the Actual Deferral Percentage of the Non-Highly Compensated Employee for such Plan Year as elected in Article I.

4.    Special Rules.

An Elective Contribution, Roth Contribution, Safe Harbor Nonelective Employer Contribution or Safe Harbor Matching Contribution will be taken into account under the Actual Deferral Percentage limitation for the Plan Year only if it is allocated to the Employee as of any date within the Plan Year. An Elective Contribution, Roth Contribution, Safe Harbor Nonelective Contribution and Safe Harbor Matching Contribution is considered allocated as of any date within a Plan Year if the allocation is not contingent on participation or performance of services after such date and the Elective Contribution is actually paid to the Trust no later than 12 months after the close of the Plan Year to which such contributions relate.    Additionally, an Elective Contribution must relate to Compensation that either would have been received by the Employee during the Plan Year, except for the Employee election to defer, or is

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                  WH_MDL_00331827

attributable to the performance of services during the Plan Year that would have become payable within 2½ months after the close of the Plan Year, except for the Employee election to defer.

F.    Safe Harbor Contributions.    If the Employer provides for Safe Harbor Matching Contributions or Safe Harbor Nonelective Employer Contributions during a Plan Year that satisfy the requirements of Section 401(k)(12) of the Code, the Actual Deferral Percentage limitation shall be deemed satisfied for such Plan Year if the requirements of this Paragraph F are satisfied

1.    Current Year Testing Method.  If Safe Harbor Nonelective Employer Contributions or Safe Harbor Matching Contributions are made to the Plan to satisfy the Actual Deferral Percentage limitation or the Average Contribution Percentage limitation for a Plan Year, the Plan shall be required to use the current year testing method for Non-Highly Compensated Participants in any such Plan Year.  Such contributions, like Elective Contributions and Matching Contributions, shall be subject to rules relating to changes from current year testing to prior year testing, and the anti-abuse provisions that prevent the repeated changes to the Plan testing procedures or Plan provisions that have the effect of distorting the Actual Deferral Percentage or Average Contribution Percentage so as to increase significantly the permitted Actual Deferral Percentage ratio or Average Contribution Percentage ratio for Highly Compensated Employees and the principal purpose of the change was to achieve such a result.

2.    Compensation. Any Compensation definition elected in Article I must state a uniform definition of Compensation and comply with Section 1.401(k) - 6 of the Treasury Regulations which incorporates the definition of Section 414(s) compensation and Section 1.414(s)-1 of the Treasury Regulations; provided, however, the last sentence of Section 1.414(s)-1(d)(2)(iii) of the Treasury Regulations pertaining to compensation above a specified dollar amount shall not apply to a Non-Highly Compensated Employee.

3.    Plan Year.  A Plan Year must be a 12 consecutive month period or if the Plan is a newly established plan (other than a successor plan where fifty percent (50%) or more of the Employees for the first Plan Year were eligible under another 401(k) plan or 401(m) plan maintained by the Employer in the prior year), a period of at least three (3) consecutive months (or, a shorter period if the Employer is a newly established Employer and this Plan is established as soon as administratively feasible after the establishment of the Employer).  Notwithstanding the preceding sentence, in the case of a cash or deferred arrangement that is added to an existing profit-sharing, stock bonus, or pre-ERISA money purchase pension plan for the first time during a Plan Year, the Average Deferral Percentage test and Average Contribution Percentage test, if applicable, will be treated as being satisfied for the entire Plan Year and the cash or deferred arrangement will not be treated as failing to satisfy the requirement that a Plan

ARTICLE IV                                                    IV-6

Year must be twelve (12) consecutive months, provided (i) the Plan is not a successor plan (as described above), (ii) the cash or deferred arrangement is made effective no later than three (3) months prior to the end of the Plan Year, and (iii) the requirements of Safe Harbor Nonelective Contributions or Safe Harbor Matching Contributions are satisfied for the period from the effective date of the cash or deferred arrangement to the end of the Plan Year.

4.      Notice Requirements.   To satisfy the notice requirements with regard to Safe Harbor Matching Contributions or Safe Harbor Nonelective Employer Contributions, the notice given by the Committee to Employees must be sufficiently accurate and comprehensive to inform the Employee of his or her rights and obligations under the Plan and must be written in a manner that can be understood by the average Employee eligible to participate in the Plan. In addition, the notice must meet the following requirements:

(a)     The notice must accurately describe (i) the Safe Harbor Matching Contribution formula or Safe Harbor Nonelective Employer Contribution formula used under the Plan (including a description of the level of Matching Contributions, if any, available under the Plan); (ii) any other contributions under the Plan (including Nonelective Employer Contributions and discretionary Matching Contributions), the condition and allocation requirements to receive such contributions; (iii) the Plan to which safe harbor contributions will be made if other than this Plan; (iv) the type and amount of Compensation that may be deferred under the Plan; (v) how to make a cash deferred election, including any administrative requirements that apply to Elective Contributions; (vi) the periods available under the Plan for making cash or deferred elections; and (vii) withdrawal and vesting provisions pertaining to each contribution made under the Plan.

(b)     A plan will not fail to satisfy the content requirement of (ii), (iii), (iv) and (vii) of the preceding paragraph if the notice instead cross-references to the relevant portions of an up-to-date summary plan description that has been provided (or concurrently is provided) to the Employee. However, the notice must still accurately describe (i) the Safe Harbor Matching Contribution or Safe Harbor Nonelective Contribution formula used under the Plan (including a description of the levels of Matching Contributions, if any, available under the Plan) and state that these contributions (as well as Elective Contributions) are fully vested when made and (ii) how to make Elective Contributions (including any administrative requirements that apply to such elections) and the periods available under the Plan for making such elections. In addition, the notice must also provide information that makes it easy for Eligible Employees to obtain additional information about the Plan (including an additional copy of the summary plan description) such as telephone numbers, addresses and, if applicable, electronic addresses, of the individuals or offices from whom Employees can obtain such plan information. For Plan Years beginning after December 31, 2006, the

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                 WH_MDL_00331829

notice can only make references to the relevant portions of an up-to-date summary plan description in regard to the content requirements of (ii), (iii) and (iv) of the preceding paragraph.

(c)     The notice described above may be given through an electronic medium if reasonably accessible to the Employee, provided that (i) the system under which the electronic notice is provided is reasonably designed to provide the notice in a manner no less understandable to the Employee than a written paper document, and (ii) at the time the electronic notice is given, the Employee is advised that he or she may request and obtain a written paper document at no charge.

(d)     The notice requirements must be given within a reasonable time before the beginning of each Plan Year (or, if an Employee becomes eligible after the preceding notice has been given, within a reasonable period before the Employee is eligible).  If the notice is given at least 30 days and no more than 90 days before the beginning of each Plan Year, the notice requirements shall be deemed timely.  If an Employee became eligible to participate after the 90th day before the beginning of the Plan Year, notice shall be deemed timely if given to such Employee no more than 90 days before he or she becomes eligible to participate and no later than the Employee's Entry Date.  The preceding sentence shall also apply for a newly established 401(k) plan.

5.     Safe Harbor Matching Formula.     Any Safe Harbor Matching Contribution formula elected in Article I must, at any rate of Elective Contributions, provide an aggregate amount of Safe Harbor Matching Contributions to Non-Highly Compensated Participants at least equal to the aggregate amount of Safe Harbor Matching Contributions that would have been provided under Section 401(k)(12)(B)(i) of the Code.

6.     Timely Adoption of Safe Harbor Provisions.     For Plan Years beginning after September 30, 2003 or such other date required by the Internal Revenue Service, safe harbor provisions under Section 401(k)(12) of the Code must be adopted prior to the first day of the Plan Year in which such provisions became effective.

Notwithstanding the preceding paragraph, if the Plan provides for the current year testing method for the Actual Deferral Percentage and the Average Contribution Percentage, if applicable, the Plan may be amended to provide Safe Harbor Nonelective Employer Contributions as late as 30 days prior to the last day of the Plan Year if Eligible Employees receive notice prior to the beginning of such Plan Year that the Employer may provide Safe Harbor Nonelective Employer Contributions of at least three percent (3%) of Compensation. If the Employer provides for Safe Harbor Nonelective Employer Contributions, the notice requirements of subparagraph F.4

ARTICLE IV

IV-8

CONFIDENTIAL

WH_MDL_00331830

above shall apply and Eligible Employees must be given a supplemental notice at least 30 days before the end of the Plan Year that Safe Harbor Nonelective Employer Contributions of at least three percent (3%) of Compensation will be made.

       7.    Limitations On Use of Safe Harbor Contributions. Safe Harbor Matching Contributions and Safe Harbor Nonelective Employer Contributions shall not be used as Qualified Nonelective Employer Contributions or Qualified Matching Contributions.

       8.    Multiple Plans. If Safe Harbor Matching Contributions or Safe Harbor Nonelective Employer Contributions are provided in another defined contribution plan maintained by the Employer, any Eligible Employee under the plan that provides for a cash or deferred arrangement must be an Eligible Employee under the plan that provides for Safe Harbor Matching Contributions or Safe Harbor Nonelective Employer Contributions. Safe Harbor Matching Contributions and Safe Harbor Nonelective Employer Contributions cannot be used to satisfy the safe harbor requirements of Notice 98-52 Section V.B or the applicable Final Treasury Regulations, with respect to more than one plan.

    G.    Simple 401(k) Plans. If this Plan is a Simple 401(k) Plan, the Actual Deferral Percentage limitation shall be deemed satisfied provided that the following additional requirements are satisfied:

       1.    Changes in Deferral Elections. Each Participant may elect, during the 60 day period immediately preceding each January 1st (and 60 days before the first day an Employee is first eligible to participate); to increase, decrease or resume his or her Elective Contributions. The Committee shall notify each Participant within a reasonable period of time prior to the 60 day election period that an Employee can modify his or her election to defer and the Employee's rights to participate under the Plan. If an Employee becomes eligible after the 60 day election period, the 60 day election period shall be deemed satisfied if the Employee may make or modify a salary reduction election during a 60 day period that includes either the date the Employee becomes eligible to participate or the day before the Employee's Entry Date

       2.    Timing of Adoption. If this Plan is a newly established 401(k) plan containing Simple 401(k) Plan provisions as elected in Article I, the Plan may be effective as of any date during the Plan Year, but in no event later than October 1st of the year in which adopted. An Employer amending an existing 401(k) plan to provide for Simple 401(k) Plan provisions must make such provisions effective as of the following January 1st.

    H.    Limitation on Elective Deferrals. No Participant shall be permitted to have Elective Deferrals made under this Plan, or any other qualified plan maintained by the

ARTICLE IV                IV-9

CONFIDENTIAL                         WH_MDL_00331831

Employer during a taxable year in excess of the dollar limitation of Section 402(g) of the Code in effect for such taxable year or, if this is a Simple 401(k) Plan, Section 408(p)(2)(a)(ii) of the Code for the calendar year..

1.    Deferral Limit For Catch-Up Contributions.    The applicable dollar limit of $11,000 for the calendar year 2002 under Section 402(g)(1)(B) of the Code (as increased under Section 402(g)(7) of the Code, to the extent applicable) shall be further increased by the applicable dollar catch-up limit as set forth in Section 1.414(v)-1(c)(2) of the Treasury Regulations ($1,000 for the calendar year 2002) with respect to eligible Participants entitled to make catch-up contributions.

2.    Deferral Limit For Multiple Plans.    The preceding paragraph applies without regard to whether the applicable Employer plan (within the meaning of Section 414(v)(6) of the Code) treats the Elective Deferrals as catch-up contributions. Thus, a catch-up eligible Participant who makes Elective Deferrals under applicable employer plans of two (2) or more Employers that in total exceed the applicable dollar amount under Section 402(g)(1) of the Code by an amount that does not exceed the applicable dollar catch-up limit under either plan may exclude the Elective Deferrals from gross income, even if neither applicable Employer plan treats those Elective Deferrals as catch-up contributions.

3.    Adjustments in Deferral Limits.    For taxable years beginning after December 31, 2006, the limitations under Sections 402(g), Section 408(p)(2)(A)(ii) and 414(v) of the Code shall be adjusted at the same time and in the same manner as Section 415(d) of the Code, except the base period taken into account shall be the calendar quarter beginning July 1, 2005, and any increase under this Paragraph H which is not a multiple of $500 shall be rounded to the next lowest multiple of $500.

I.    Reserved.

J.    Correction of Excess Contributions.

1.    Return of Excess Contributions.    If the Committee determines that for any Plan Year the maximum aggregate Actual Deferral Percentage of Qualifying Section 401(k) Contributions made by or on behalf of the group consisting of Highly Compensated Employees has been exceeded, the Committee may reduce by corrective distribution to the extent necessary the amount of Excess Contributions made to the group consisting of Highly Compensated Employees to satisfy the Actual Deferral Percentage limitation.    The Committee shall designate such distributions to Highly Compensated Employees as Excess Contributions and allowable income thereof which shall be distributed to the appropriate Highly Compensated Employees after the close of the Plan Year but not later than 12 months after the close of the Plan Year.

ARTICLE IV                                    IV-10

CONFIDENTIAL

2.     Determination of Corrective Distributions.

(a)     The determination of corrective distributions shall be made as follows:

Step 1.     The Committee shall calculate the dollar amount of Excess Contributions for each affected Highly Compensated Employee. The amount of Excess Contributions (if any) for a Highly Compensated Employee for a Plan Year is the amount (if any) by which the Employee's Elective Contributions, including Roth Contributions, must be reduced for the Employee's actual deferral ratio to equal the highest permitted actual deferral ratio under the Plan.

Step 2.     The Committee shall determine the total of the dollar amounts calculated in step 1 ("total Excess Contributions").

Step 3.     The Elective Contributions of the Highly Compensate Employee with the highest dollar amount of Elective Contributions shall be reduced by the amount required to cause such Highly Compensated Employee's Elective Contributions to equal the dollar amount of the Elective Contributions of the Highly Compensated Employee with the next highest dollar amount of Elective Contributions. This amount is then distributed to the Highly Compensated Employee with the highest dollar amount of Excess Contributions. However, if a lesser reduction, when added to the total dollar amount already described under this step, would equal the total Excess Contributions, the lesser reduction amount is distributed.

Step 4.     If the total amount distributed is less than the total Excess Contributions, step 3 is repeated.

If the above distributions are made, the cash or deferred arrangement is treated as meeting the non-discrimination test of Section 401(k)(3) of the Code regardless of whether the Actual Deferral Percentage, if recalculated after such distributions, would satisfy Section 401(k)(3) of the Code.

(b)     Notwithstanding subparagraph (a) above, if the Plan fails the Actual Deferral Percentage limitation the amount to be refunded to a Participant who is eligible to make catch-up contributions pursuant to Paragraph D of this Article IV is first offset by the amount of the dollar catch-up limit. The catch-up amount due to the Actual Deferral Percentage limitation is calculated after the Actual Deferral Percentage limitation has been determined for the Plan Year. Amounts eligible for disbursement under Section 401(k)(8) or 408(k)(6)(C) of the Code must be re-categorized as catch-up contributions up to the dollar catch-up limit of Section 414(v)(2)(B) of the Code. However, Elective Contributions that are not distributed because they are re-categorized as catch-up contributions are still considered to be Excess Contributions for

ARTICLE IV                                            IV-11

CONFIDENTIAL                                            WH_MDL_00331833

purposes of Section 401(k)(8) of the Code. Thus, Matching Contributions with respect to such Elective Contributions are permitted to be forfeited pursuant to Section 411(a)(3)(G) of the Code and Paragraph K of Article X provided that catch-up contributions are not matched pursuant to Article I of the Plan.

(c)    For purposes of determining the maximum amount of permitted catch-up contributions for a catch-up eligible Participant, the determination of whether an Elective Contribution is a catch-up contribution is made as of the last day of the Plan Year (or in the case of Section 415 of the Code, as of the last day of the Limitation Year), except that, with respect to Elective Contributions in excess of an applicable limit that is tested on the basis of the taxable year or calendar year (such as the limit of Section 401(a)(30) of the Code on Elective Deferrals), the determination of whether such Elective Contributions are treated as catch-up contributions is made at the time they are deferred.

3.    Corrections by Additional Contributions.  The Employer may in its sole discretion and subject to the limitation contained in Article V of the Plan, make additional Qualified Nonelective Employer Contributions or Qualified Matching Contributions that are treated as Elective Contributions and which in combination with the Elective Contributions, satisfy the Actual Deferral Percentage limitation.    Such Nonelective Employer Contributions and Qualified Matching Contributions must be nonforfeitable as of the date made and subject to the same distribution restrictions that apply to Elective Contributions.   Qualified Nonelective Employer Contributions and Qualified Matching Contributions which are treated as Elective Contributions must satisfy these requirements without regard to whether they are actually taken into account as Elective Contributions. A Qualified Matching Contribution is not treated as forfeited merely because the contribution to which it relates is an Excess Deferral, or Excess Contribution thereby causing forfeiture of such Qualified Matching Contribution.

4.    Additional Requirements.    Qualified Nonelective Employer Contributions and Qualified Matching Contributions which are treated as Elective Contributions must satisfy the following additional requirements:

(a)    The Nonelective Employer Contributions, including Qualified Nonelective Employer Contributions, must satisfy the requirements of Section 401(a)(4) of the Code and Section 1.401(a)(4)-1(b)(2) of the Treasury Regulations.

(b)    The Nonelective Employer Contributions, excluding Qualified Nonelective Employer Contributions treated as Elective Contributions for purposes of the Actual Deferral Percentage limitation and Qualified Nonelective Employer Contributions treated as Matching Contributions for purposes of the Contribution

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                    WH_MDL_00331834

Percentage limitation, must satisfy the requirements of Section 401(a)(4) of the Code and Section 1.401(a)(4)-1(b)(2) of the Treasury Regulations.

(c)     If the Employer is applying the special rule for employer-wide plans in Section 1.414(r)-1(c)(2)(ii) of the Treasury Regulations with respect to a cash or deferred arrangement, the determination of whether the Qualified Nonelective Employer Contributions satisfy the requirements of subparagraphs (a) and (b) of this Paragraph J.4 must be made on an employer-wide basis regardless of whether the plans to which the Qualified Nonelective Employer Contributions are made are satisfying the requirements of Section 410(b) of the Code on an employer-wide basis. Conversely, in the case of an employer that is treated as operating qualified separate lines of business, and does not apply the special rule for employer-wide plans in Section 1.414(r)-1(c)(2)(ii) of the Treasury Regulations with respect to a cash or deferred arrangement, then the determination of whether the Qualified Nonelective Employer Contributions satisfy the requirements of this subparagraphs (a) and (b) of this Paragraph J.4 is not permitted to be made on an employer-wide basis regardless of whether the plans to which the Qualified Nonelective Employer Contributions are made satisfy the requirements of Section 410(b) of the Code on that basis.

(d)     Qualified Nonelective Employer Contributions and Qualified Matching Contributions made for the Plan Year must satisfy the allocation requirements of Elective Contributions.

(e)     The plan that takes Qualified Nonelective Employer Contributions and Qualified Matching Contributions into account in determining whether Elective Contributions satisfy the Actual Deferral Percentage limitation must have the same Plan Year as the plan or plans to which the Qualified Matching Contributions and Qualified Nonelective Employer Contributions were made. If the Plan Year is changed to satisfy this requirement, such contributions may be taken into account during the Short Plan Year only if they could have been taken into account under the Actual Deferred Percentage limitation for a plan with the same Short Plan Year.

(f)     If the Employer has elected to apply the prior year testing method to calculate the Actual Deferral Percentage limitation, Qualified Matching Contributions or Qualified Nonelective Employer Contributions must be made no later than twelve (12) months following the last day of the Plan Year preceding the current Plan Year to satisfy the Actual Deferral Percentage limitation. If the Employer has elected to apply the current year testing method to calculate the Actual Deferral Percentage limitation, Qualified Matching Contributions or Qualified Nonelective Employer Contributions must be made no later than twelve (12) months following the close of the current Plan Year to satisfy the Actual Deferral limitation.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                              WH_MDL_00331835

(g)    Effective as stated in Article I, Qualified Nonelective Employer Contributions cannot be taken into account for a Plan Year for a Non-Highly Compensated Participant to the extent such contributions exceed the product of that Non-Highly Compensated Participant's Compensation and the greater of (i) five percent (5%) or (ii) two (2) times the Plan's representative contribution rate. Any Qualified Nonelective Employer Contribution taken into account under the Contribution Percentage limitation under Paragraph L of Article X (including the determination of the representative contribution rate for purposes Section 1.401(m)-2(a)(6)(v)(B) of the Treasury Regulations), is not taken into account for purposes of this Paragraph J.4 (including the determination of the representative contribution rate under this subparagraph J.4(g)).

For purposes of this subparagraph J.4(g) the Plan's representative contribution rate is the lowest applicable contribution rate of any eligible Non-Highly Compensated Participant among a group of eligible Non-highly Compensated Participants that consists of half of all eligible Non-Highly Compensated Participants for the Plan Year (or, if greater, the lowest applicable contribution rate of any eligible Non Highly Compensated Participant in the group of all eligible Non-Highly Compensated Participant for the Plan Year and who is employed by the Employer on the last day of the Plan Year).

The applicable contribution rate for an eligible Non-Highly Compensated Participant is the sum of the Qualified Matching Contributions taken into account under this Paragraph J.4 for the eligible Non-Highly Compensated Participant for the Plan Year and the Qualified Nonelective Employer Contributions made for that eligible Non-Highly Compensated Participant for the Plan Year, divided by that eligible Non-Highly Compensated Participant's Compensation for such Plan Year.

Notwithstanding this subparagraph J.4(g), Qualified Nonelective Employer Contributions that are made in connection with an employer's obligation to pay prevailing wages under the Davis-Bacon Act, the Service Contract Act of 1965 or similar legislation, can be taken into account for a Plan Year to the extent such contributions do not exceed ten percent (10%) of such Non-Highly Compensated Participant's Compensation.

(h)    Qualified Matching Contributions satisfy this Paragraph J.4 only to the extent that such Qualified Matching Contributions are Matching Contributions that are not precluded from being taken into account under the Contribution Percentage limitation for the Plan Year under the rules of Section 1.401(m)-2(a)(5)(ii) of the Treasury Regulations.

(i)    Qualified Matching Contributions and Qualified Nonelective Employer Contributions can not be taken into account under this Paragraphs J.4 to the

ARTICLE IV                    IV-14

CONFIDENTIAL                    WH_MDL_00331836

extent such contributions are taken into account for purposes of satisfying any other Actual Deferral Percentage limitation, Contribution Percentage limitation, or the requirements of Sections 1.401(k)-3, 1.401(m)-3 or 1.401(k)-4 of the Treasury Regulations.

5.    Recharacterization of Excess Contributions.  If Article I allows for Employee After-Tax Contributions, the Committee may recharacterize Excess Contributions as Employee After-Tax Contributions.  Such recharacterized contributions shall remain subject to the nonforfeitable requirements and distribution limitations that apply to Elective Contributions.  The Committee cannot recharacterize any Excess Contributions after 2½ months after the close of the Plan Year.  Further Excess Contributions will not be recharacterized with respect to a Highly Compensated Employee to the extent that the recharacterized amounts, in combination with Employee After-Tax Contributions actually made by the Employee, exceeds a maximum amount of Employee After-Tax Contributions that the Employee is permitted to make under the Plan in the absence of recharacterization determined prior to the application of the Contribution Percentage limitation.  Such recharacterized amounts will be considered as Annual Additions under the limitations imposed by Section 415 of the Code and shall be subject to Section 401(m) of the Code.  The dollar leveling method, as described in Paragraph J.2 of this Article IV, with respect to the return of Excess Contributions to Highly Compensated Employees shall apply to this corrective procedure.

The amount of Excess Contributions to be recharacterized for a Plan Year shall not exceed the amount of Elective Contributions made on behalf of such Highly Compensated Employee.

6.    Correction of Excess Contributions by Reduction Prior to the End of the Plan Year.  If the Committee determines that the Actual Deferral Percentage limitation is being exceeded during a Plan Year, the Committee may suspend the group of Highly Compensated Employees' future Elective Deferrals of Qualifying 401(k) Contributions for such Plan Year to enable the Plan to satisfy the Actual Deferral Percentage limitation.  Any such suspension shall be considered an Employer-provided limit for purposes of Paragraph A.3 of Article II relating to catch-up contributions.  The Committee shall give notice to such Employees of the amount to be suspended.

The determination of the reduction shall be made either in accordance with the dollar leveling method used for reduction of Excess Contributions or on a pro rata basis as determined by the Committee.

K.    Coordination of Excess Contributions with Excess Deferrals.  The amount of Excess Contributions to be distributed or recharacterized with respect to Highly

ARTICLE IV                                    IV-15

CONFIDENTIAL                                    WH_MDL_00331837

Compensated Employees shall be reduced by any Excess Deferrals previously distributed to such Employee for the Employee's taxable year ending in such Plan Year.

L.     <u>Income Allowable to Excess Contribution</u>.     The distribution of Excess Contributions shall include the income allocated thereto. The income allocable to Excess Contributions is determined by applying the same method as used for the correction of Excess Aggregate Contributions described in Paragraph J of Article X.

A distribution of Excess Contributions is not includable in gross income of an Employee to the extent it represents a distribution of designated Roth Contributions. However, the income allocable to a corrective distribution of Excess Contributions that are designated Roth Contributions is included in gross income in the same manner as correction distributions of Excess Contributions that are pre-tax Elective Contributions.

M.     <u>Correction of Excess Deferrals</u>.     Not later than the first April 15th after the close of the Employee's taxable year, the Employee must notify the Committee of each Plan under which deferrals were made, how much Excess Deferrals were received by such plan and each plan may distribute to the Employee the amount of Excess Deferrals plus any earnings thereof. An Employee may receive a corrective distribution of Excess Deferrals during the same taxable year.

1.     <u>Requirements for Corrective Distributions</u>.     A corrective distribution may be made only if all of the following conditions are satisfied:

(a)     The Employee designates the distribution as an Excess Deferral. An Employee is deemed to have designated the distribution as an Excess Deferral to the extent the Employee has Excess Deferrals for the taxable year, taking into account only Elective Deferrals under this Plan and any other plan maintained by the Employer.

(b)     The corrective distribution is made after the date in which the plan received the Excess Deferral.

(c)     The plan designates the distribution as a distribution of Excess Deferrals.

2.     <u>Roth Election</u>. To the extent elected in Article I, if an Employee's Elective Deferrals include both pre-tax Elective Contributions and designated Roth Contributions, the Committee may permit the Employee to elect whether Excess Deferrals are attributed to pre-tax Elective Contributions or Roth Contributions. If there is no election made by the Employee, then the Committee shall determine whether Excess Deferrals are attributed to pre-tax Elective Contributions or Roth Contributions. This Paragraph M.2 shall also apply to Excess Contributions and Excess Aggregate

ARTICLE IV

IV-16

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

WH_MDL_00331838

Contributions in regard to the return of such contributions to Highly Compensated Employee's and other distributions to Employees as elected in Paragraph KK of Article I.

N.    <u>Income Allowable to Excess Deferrals</u>.  The distribution of Excess Deferrals shall include the income allocated thereto.  The income allocable to Excess Deferrals for the taxable year is determined by applying the same method as used for correction of Excess Aggregate Contributions described in Paragraph J of Article X.

O.    <u>Coordination of Excess Deferrals with Distribution or Recharacterization of Excess Contributions</u>.  The amount of Excess Deferrals that may be distributable with respect to an Employee for a taxable year shall be reduced by any Excess Contributions previously distributed or recharacterized with respect to such Employee for the Plan Year beginning with or within such taxable year.  In the event of reduction under this Paragraph O, the amount of Excess Contributions included in the gross income of the Employee and reported by the Employer as a distribution of Excess Contributions shall be reduced by the amount of the reduction under this paragraph.  The amount of the reduction under this Paragraph O shall be reported as a distribution of Excess Deferrals. In no case may an Employee receive from the Plan as a corrective distribution for a taxable year an Excess Deferral which exceeds the Employee's total Elective Deferrals under the Plan for the Employee's taxable year.

P.    <u>Distribution of Amounts Attributed to Elective Contributions</u>.  Except for the correction of Excess Contributions, Excess Aggregate Contributions and Excess Deferrals, Elective Contributions, Qualified Nonelective Employer Contributions, Qualified Matching Contributions, Roth Contributions, Safe Harbor Matching Contributions and Safe Harbor Nonelective Employer Contributions and earnings resulting from these contributions may not be distributed earlier than upon one (1) of the following events:

1.    The Employee's retirement, death, disability or separation from service;

2.    The termination of the Plan without establishment or maintenance of another defined contribution plan (other than an employer stock ownership plan, a simple IRA plan or a simple employer plan);

3.    The Employee's attainment of age 59½;

4.    Distributions on account of hardship but for Plan Years beginning after December 31, 1988, only amounts deferred by the Employee as Elective Contributions or Roth Contributions, disregarding any gains or losses, may be distributed; provided, however, that in no event shall the amount of such hardship

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                          WH_MDL_00331839

distribution result in a value less than zero (0) in a Participant's Elective Contribution Account determined as of the immediately preceding Valuation Date;

5.    If provided in Article I, this paragraph shall apply for distributions and severances from employment occurring after the dates specified in Article I. A Participant's Elective Contributions, Qualified Nonelective Employer Contributions, Qualified Matching Contributions, Roth Contributions, Safe Harbor Matching Contributions and Safe Harbor Nonelective Employer Contributions and earnings attributable to such contributions shall be distributed on account of the Participant's severance from employment. However, such distributions shall be subject to the other provisions of the Plan regarding distributions, other than provisions that require a separation from service before such amounts may be distributed.

Q.    Hardship Withdrawals. If allowed under Article I of this Plan, the Participant may apply for a hardship withdrawal of his or her Elective Contributions, Roth Contributions or Nonelective Employer Contributions, if applicable, by filing a written application with the Committee. In granting a hardship withdrawal, the Committee shall follow nondiscriminatory and objective standards in determining whether a Participant is entitled to a hardship withdrawal..

1.    General Rule. Any hardship withdrawal may only be made if it is necessary to satisfy an immediate and heavy financial need of the Participant. A hardship withdrawal shall not exceed the amount necessary to relieve the need nor shall such hardship withdrawal be made to the extent the need may be satisfied from other financial resources reasonably available to the Employee.

2.    Determination of Financial Need. A withdrawal on account of hardship may be treated as necessary to satisfy a financial need if the Committee reasonably relies upon the Employee's representation that the need cannot be relieved by:

(a)    Reimbursement or compensation by insurance or otherwise;

(b)    Reasonable liquidation of the Employee's assets to the extent such liquidation would not itself cause any immediate and heavy financial need;

(c)    Cessation of Elective Contributions or Employee Contributions under the plans of the Employer; or

(d)    Other currently available distributions (including distribution of ESOP dividends under Section 404(k) of the Code) or nontaxable loans from plans maintained by the Employer, or by any other Employer, or by borrowing from commercial sources on reasonable commercial terms. An Employee's resources shall

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                        WH_MDL_00331840

be deemed to include those assets of his or her Spouse and minor children that are reasonably available to the Employee.

3.    Determination of Necessity for Hardship Withdrawal.  A hardship withdrawal will be deemed necessary to satisfy the financial need if it meets the following conditions:

(a)    The hardship withdrawal is not in excess of the amount of the immediate and heavy financial need of the Employee.  The amount of an immediate and heavy financial need may include amounts necessary to pay any federal, state or local income taxes or penalties reasonably anticipated to result from such hardship withdrawal.

(b)    The Employee has obtained all distributions (including distribution of ESOP dividends under Section 404(k) of the Code), other than hardship withdrawals of Elective Contributions, and all nontaxable loans currently available under all plans maintained by the Employer.

(c)    The Employee's Elective Contributions, Roth Contributions, and Employee After-Tax Contributions, other than mandatory Employee contributions made to a defined benefit plan, will be suspended for six (6) months after receipt of the hardship withdrawal under this Plan and all other qualified and non-qualified plans of deferred compensation, including the cash and deferred arrangement that is part of a cafeteria plan and excluding any health or welfare plans, including one that is part of a cafeteria plan, maintained by the Employer.

R.    Aggregation of Employer's Plans.

1.    In General.  Elective Contributions that are made under two (2) or more plans of the Employer that are aggregated for purposes of Section 401(a)(4) or Section 410(b) of the Code, other than Section 410(b)(2)(A)(ii) of the Code, are to be treated as made under a single plan and if two (2) or more plans are permissibly aggregated for purposes of Section 401(k) of the Code, the aggregated plans must satisfy Sections 401(a)(4), 401(k) and 410(b) of the Code as though such aggregated plans were a single plan.  Whenever a Highly Compensated Employee is eligible under two (2) or more plans of the Employer which are subject to Section 401(k) of the Code, in calculating the Actual Deferral Percentage limitation, the actual deferral ratio of such Highly Compensated Employee will be determined by treating all such plans in which such Highly Compensated Employee is an Eligible Participant as a single plan.

For purposes of this Paragraph R, the term plan means a plan within the meaning of Section 1.410(b)-7(a) and (b) of the Treasury Regulations, after application of the mandatory disaggregation rules of Section 1.410(b)-7(c) of the Treasury

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331841

Regulations and the permissive aggregation rules of Section 1.410(b)-7(d) of the Treasury Regulations, as modified by Paragraph R.4 of this Article IV. Thus, if two (2) plans are treated as a single plan pursuant to the permissive aggregation rules of Section 1.410(b)-7(d) of the Treasury Regulation, then such plans are treated as a single plan for purposes of Sections 401(k) and 401(m) of the Code.

      2.    <u>Plans with Inconsistent 401(k) Testing Methods</u>.  In applying the permissive aggregation rules of Section 1.410(b)-7(d) of the Treasury Regulations, an Employer may not aggregate plans within the meaning of Section 1.410(b)-7(b) of the Treasury Regulations that apply inconsistent testing methods. Thus, a plan that applies the current year testing method may not be aggregated with another plan of the Employer that applies the prior year testing method. Similarly, an Employer may not aggregate a plan using the safe harbor provisions of Section 401(k)(12) of the Code and another plan that is required to be tested under Section 401(k)(3) of the Code.

      3.    <u>Disaggregation of Plans and Separate Testing</u>.  If a cash or deferred arrangement is included in a plan within the meaning of Section 1.410(b)-7(b) of the Treasury Regulations that is mandatorily disaggregated under Section 410(b) of the Code (as modified by Paragraph R.4 of this Article IV), the cash or deferred arrangement must be disaggregated in a consistent manner. Thus, in the case of an Employer that is treated as operating qualified separate lines of business under Section 414(r) of the Code, if the eligible Employees under a cash or deferred arrangement are in more than one qualified separate line of business, only those Employees within each qualified separate line of business may be taken into account in determining whether each disaggregated portion of the plan complies with the requirements of Section 401(k) of the Code, unless the Employer is applying the special rule for employer-wide plans in Section 1.414(r)-1(c)(2)(ii) of the Treasury Regulations with respect to the plan. Similarly, if a cash or deferred arrangement under which Employees are permitted to participate before they have completed the minimum age and service requirements of Section 410(a)(1) of the Code applies Section 410(b)(4)(B) of the Code for determining whether the plan complies with Section 410(b)(1) of the Code, then the arrangement must be treated as two separate arrangements, one comprising all eligible employees who have met the age and service requirements of Section 410(a)(1) of the Code and one comprising all eligible Employees who have not met the age and service requirements of Section 410(a)(1) of the Code unless the Plan uses the rule that allows for the aggregation of all eligible Employees regardless of age and service.

      Restructuring under Section 1.401(a)(4)-9(c) of the Treasury Regulations may not be used to satisfy the requirements of Section 401(k) of the Code.

      4.    <u>Certain Disaggregation Rules Not Applicable</u>.  The mandatory disaggregation rules relating to Section 401(k) plans and Section 401(m) plans set forth in Section 1.410(b)-7(c)(1) of the Treasury Regulations and an employee stock

ARTICLE IV

IV-20

CONFIDENTIAL

ownership plan and non-employee stock ownership plan portions of a plan set forth in Section 1.410(b)-7(c)(2) of the Treasury Regulations shall not apply for purposes of this Paragraph R.  Accordingly, notwithstanding Section 1.410(b)-7(d)(2) of the Treasury Regulations, an employee stock ownership plan and a non-employee stock ownership plan which are different plans (within the meaning of Section 1.410(b)-7(b)) of the Treasury Regulations) are permitted to be aggregated for purposes of Section 401(k) of the Code.

5.    Permissive Aggregation of Collective Bargaining Units.  Notwithstanding the general rule under Section 410(b) of the Code and Section 1.410(b)-7(c) of the Treasury Regulations, a plan that benefits Employees that are covered by a collective bargaining agreement and Employees who are not included in the collective bargaining unit are treated as comprising separate plans.  An Employer can treat two or more separate collective bargaining units as a single collective bargaining unit for purposes of this Paragraph R.5 and this Article IV, provided that the combination of units are determined on a basis that is reasonably consistent from year to year.

6.    Multiemployer Plan.  Notwithstanding Section 1.410(b)-7(c)(4)(ii)(C) of the Treasury Regulations, the portion of the plan that is maintained pursuant to a collective bargaining agreement (within the meaning of Section 1.413-1(a)(2)) of the Treasury Regulations) is treated as a single plan maintained by a Single Employer that employs all the Employees benefiting under the same benefit computation formula and covered pursuant to that collective bargaining agreement.  The rules of Paragraph R.5 of this Article IV (including the permissive aggregation of collective bargaining units) apply to the resulting deemed single plan in the same manner as if the Plan was a Single Employer Plan.  The noncollectively bargained portion of the plan is treated as maintained by one or more Employers, depending on whether the noncollectively bargaining unit employees who benefit under the plan are employed by one or more Employers.

7.    Safe-Harbor Contributions.  The rules regarding aggregation and disaggregation of cash or deferred arrangements and plans shall also apply for purposes of Sections 401(k)(12) and 401(m)(11) of the Code.  The anti-discrimination test under Section 401(k)(3) of the Code shall apply to Employees who are eligible to make Elective Contributions but not yet eligible to receive Safe Harbor Matching Contributions or Safe Harbor Nonelective Employer Contributions.

S.    Universal Availability Requirements of Catch-Up Contributions.

1.    General Rule.  If the Employer maintains a plan that offers catch-up contributions and that is otherwise subject to Section 401(a)(4) of the Code (including a plan that is subject to Section 401(a)(4) of the Code pursuant to Section 403(b)(12) of

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                              WH_MDL_00331843

the Code), such plan will not satisfy the requirements of Section 401(a)(4) of the Code unless all catch-up eligible Participants who participate under any plan maintained by the Employer are provided with an effective opportunity to make the same dollar amount of catch-up contributions. A plan fails to provide an effective opportunity to make catch-up contributions if it has an applicable limit (e.g., an Employer-provided limit) that applies to a catch-up eligible Participant and does not permit the Participant to make Elective Deferrals in excess of that limit. An applicable Employer plan does not fail to satisfy the universal availability requirement of this Paragraph S solely because an Employer-provided limit does not apply to all Employees or different limits apply to different groups of Employees as permitted by Section 1.414(v)-1(b)(2)(i) of the Treasury Regulations. However, a plan may not provide lower Employer-provided limits for catch-up eligible Participants.

2. <u>Payroll Period Exception</u>. An applicable Employer plan does not fail to satisfy the universal availability requirement of this Paragraph S merely because the plan allows Participants to defer an amount equal to a specified percentage of Compensation for each payroll period and for each payroll period permits each catch up eligible Participant to defer a pro-rata share of the applicable catch-up limit in addition to that amount.

3. <u>Cash Availability Exception</u>. An Employer plan does not fail to satisfy the universal availability requirement of this Paragraph S merely because it restricts the Elective Deferrals of any Employee (including a catch-up eligible Participant) to amounts available after other withholding from the Employee's pay (e.g., after deduction of all applicable income and employment taxes). For this purpose, an Employer-provided limit of 75% of Compensation or higher will be treated as limiting Employees to amounts available after other withholdings.

4. <u>Class Exclusion Exception</u>. An applicable employer does not fail to satisfy the universal availability requirement of this Paragraph S merely because Employees described in Section 410(b)(3) of the Code are not provided the opportunity to make catch-up contributions.

5. <u>Exception for Certain Types of Plans</u>. An applicable Employer plan does not fail to satisfy the universal availability requirement merely because another applicable Employer plan that is a Section 457 eligible governmental plan does not provide for catch-up contributions to the extent set forth in Sections 414(v)(6)(C) and 457(b)(3).

6. <u>Acquisition and Disposition Exception</u>. If an applicable Employer plan satisfies the universal availability requirement of this Paragraph S before an acquisition or disposition described in Section 1.410(b)-2(f) of the Treasury Regulations and would fail to satisfy the universal availability requirement of this Paragraph because

ARTICLE IV

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

WH_MDL_00331844

of such acquisition or disposition, then the applicable Employer plan shall continue to be treated as satisfying the universal availability requirement through the end of the transition period described under Section 410(b)(6)(C)(ii) of the Code.

T.    Multiple Plan Limits on Catch-Up Contributions.

1.    General Rule.  For purposes of Paragraph H of this Article IV, all applicable Employer plans, other than Section 457 eligible governmental plans, maintained by the same Employer are treated as one plan and all Section 457 eligible governmental plans maintained by the same Employer are treated as one plan.  Thus, the total amount of catch-up contributions under all applicable Employer plans of an Employer (other than Section 457 eligible governmental plans) is limited to the applicable dollar catch-up limit for the relevant taxable year and the total amount of catch-up contributions for all Section 457 eligible governmental plans of an Employer is limited to the applicable dollar catch-up limit for the relevant taxable year.

2.    Coordination of Employer-Provided Limits within Plans.  An applicable Employer plan is permitted to allow a catch-up eligible Participant to defer in excess of an Employer-provided limit under that plan without regard to whether Elective Deferrals made by the Participant have been treated as catch-up contributions for the taxable year under another applicable Employer plan aggregated with such plan under this Paragraph T.  However, to the extent Elective Deferrals under another plan maintained by the Employer have already been treated as catch-up contributions during the taxable year, the Elective Deferrals under the plan may be treated as catch-up contributions only up to the amount remaining under the catch-up limit for the taxable year. Any other Elective Deferrals that exceed the Employer-provided limit must satisfy the benefits, rights and features current and effective availability requirements of Section 1.401(a)(4)-4 of the Treasury Regulations to the extent that the contributions are not catch-up contributions.  Elective Deferrals in excess of the Employer-provided limit are taken into account under the Actual Deferral Percentage limitation to the extent they are not catch-up contributions.

3.    Allocation Rules.  If a catch-up eligible Participant makes additional Elective Deferrals in excess of an applicable limit described in Paragraph H of this Article IV under more than one applicable Employer plan that is aggregated under the rules of this Paragraph T, then the applicable Employer plan under which Elective Deferrals in excess of an applicable limit are treated as catch-up contributions is permitted to be determined in any manner that is not inconsistent with the manner in which such amounts were actually deferred under the applicable plan.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                                    WH_MDL_00331845

## V.    ALLOCATIONS TO PARTICIPANTS' ACCOUNTS

A.    <u>Maintenance of Accounts</u>.    The Committee shall, where applicable, establish and maintain a Elective Contribution Account, Employee After-Tax Contribution Account, Matching Contribution Account, Nonelective Employer Contribution Account, Qualified Matching Contribution Account, Qualified Nonelective Employer Contribution Account, Rollover Contribution Account, Roth Contribution Account, Safe Harbor Matching Contribution Account, Safe Harbor Nonelective Employer Contribution Account, Simple 401(k) Account and/or Transferred Benefits Account in the name of each Participant.

B.    <u>Valuation of Trust</u>.

1.    <u>Date for Valuation</u>.    As soon as administratively feasible after any Valuation Date, the Trustee shall value the Trust assets and liabilities on the basis of fair market values as of such Valuation Date.

2.    <u>Instructions for Valuation</u>.    If the Trustee, in making such valuations, shall determine that the Trust consists, in whole or in part, of property not traded freely on a recognized market, or that information necessary to ascertain the fair market value of any Trust assets or liabilities is not readily available to the Trustee, the Trustee may request the Committee to instruct the Trustee as to such fair market value for all purposes under the Plan; and in such event the fair market value determined by the Committee shall be binding and conclusive.    If the Committee fails or refuses to instruct the Trustee as to such fair market value within a reasonable time after receipt of the Trustee's request, the Trustee shall take such action as it deems necessary or advisable to ascertain such fair market value, including the retention of such counsel and independent appraisers as it considers necessary; and in such event the fair market value determined by the Trustee shall be binding and conclusive.    The expenses incurred in retaining such counsel and/or independent appraisers shall be paid by the Trust.

C.    <u>Allocation of Trust Earnings</u>.

1.    <u>General</u>.    As of each Valuation Date and prior to the allocation of Employer contributions, Employee After-Tax Contributions and, if applicable, forfeitures for the Plan Year, the Committee shall allocate the increment of Trust net income to or charge Trust net losses against, as the case may be, the respective Accounts of the Participants in proportion to the balances (minus any distributions made to the Participant and any forfeitures declared in such Account after the immediately preceding Valuation Date) of such Accounts as of the immediately preceding Valuation Date.

2.    <u>Segregated and Directed Accounts</u>. Notwithstanding the foregoing, segregated Accounts of a Participant held in accordance with the provisions of

ARTICLE V

V-1

CONFIDENTIAL

WH_MDL_00331846

Paragraph B.4(a) of Article VII and Paragraph B of Article XII, if provided for in Article I, shall be valued separately on each Valuation Date, and the increment of Trust net income shall be allocated to or Trust net loss shall be charged against, as the case may be, such Accounts on a segregated basis.

      3.   Elective Contribution Accounts.   Unless otherwise elected in Paragraph MM, Elective Contributions, Roth Contributions and After-Tax Contributions made by a Participant and deposited throughout a Plan Year to his or her Elective Contribution Account, Roth Contribution Account and Employee After-Tax Contribution Account shall have allocated to them a proportionate share of Trust net income or net losses attributable to all such Accounts on any reasonable basis established by the Committee at its sole discretion.  The frequency or method with which Trust net income and net losses are allocated to these Accounts may be established and changed at the discretion of the Committee, but only in a uniform and nondiscriminatory manner.

     D.   Allocation to Contribution Accounts.

      1.   General.  Amounts contributed by the Employer for any Plan Year (and, if applicable, any previously unallocated forfeitures) shall be allocated to the appropriate Accounts in accordance with the manner provided in Article I as of each Anniversary Date.

      2.   Permitted Disparity Limits.  For any Plan Year this Plan benefits any Participant who benefits under another qualified plan or simplified employee pension, as defined in Section 408 (k) of the Code, maintained by the Employer that provides for permitted disparity (or imputes disparity), the Employer will contribute for each Participant who is eligible for an allocation of Nonelective Employer Contributions pursuant to Paragraph P of Article I an amount equal to the excess contribution percentage multiplied by the Participant's Section 415 Compensation.  Such amounts shall be allocated to the Nonelective Employer Contributions Accounts of each eligible Participant in the proportion that each such Participant's 415 Compensation bears to the 415 Compensation of all eligible Participants.

      If this Plan provides for permitted disparity, then for Plan Years beginning on or after January 1, 1995, the number of years credited to the Participant for allocation or accrual purposes under this Plan, any other qualified plan or simplified employee pension plan (whether or not terminated) ever maintained by the Employer shall be limited to a total cumulation of permitted disparity of 35 years.  For purposes of determining the participant's cumulative permitted disparity limit, all years ending in the same calendar year are treated as the same year.  If the Participant has not benefited under a defined benefit or target benefit plan for any year beginning on or after January 1, 1994, the Participant has no cumulative disparity limit.

ARTICLE V               V-2

CONFIDENTIAL                                                       

3.   Allocations That Rely On Cross-Testing.   If the allocation under Article I relies on the cross-testing rules of Section 1.401(a)(4)-8 of the Treasury Regulations, then for purposes of the last paragraph of Paragraph M.2 of Article I, the Plan has broadly available allocation rates for the Plan Year if each allocation rate under the Plan is currently available during the Plan Year to a group of Employees that satisfies Section 410(b) of the Code (without regard to the average benefit percentage test).   For this purpose, if two allocation rates can be permissively aggregated under Section 1.401(a)(4)-4(d)(4) of the Treasury Regulations, assuming the allocation rates were treated as benefits, rights or features, they may be aggregated and treated as a single allocation rate.   In addition, the disregard of age and service conditions rules of in Section 1.401(a)(4)-4(b)(2)(ii)(A) of the Treasury Regulations do not apply for purposes of this paragraph.

The Plan has a gradual age or service schedule for the Plan Year if the allocation formula for all Employees under the plan provides for a single schedule of allocation rates under which (i) The schedule defines a series of bands based solely on age, Years of Service, or the number of points representing the sum of age and Years of Service (age and service points), under which the same allocation rate applies to all Employees whose age, Years of Service, or age and service points are within each band; and (ii) The allocation rates under the schedule increase smoothly at regular intervals.   A schedule of allocation rates increases smoothly if the allocation rate for each band within the schedule is greater than the allocation rate for the immediately preceding band but, by no more than five (5) percentage points.   However, a schedule of allocation rates will not be treated as increasing smoothly if the ratio of the allocation rate for any band to the rate for the immediately preceding band is more than 2.0 or if it exceeds the ratio of allocation rates between the two immediately preceding bands.

A schedule of allocation rates has regular intervals of age, Years of Service or age and service points, if each band, other than the band associated with the highest age, Years of Service, or age and service points, is the same length.   For this purpose, if the schedule is based on age, the first band is deemed to be of the same length as the other bands if it ends at or before age 25.   If the first age band ends after age 25, then, in determining whether the length of the first band is the same as the length of other bands, the starting age for the first age band is permitted to be treated as age 25 or any age earlier than 25.   For a schedule of allocation rates based on age and service points, the rules of the preceding two sentences are applied by substitution 25 age and service points for age 25.   For a schedule of allocation rates based on service, the starting service for the first service band is permitted to be treated as one (1) Year of Service or any lesser amount of service.

Minimum allocation rates are permitted.   A schedule of allocation rates under a plan does not fail to increase smoothly at regular intervals merely because a minimum uniform allocation rate is provided for all Employees or the minimum benefit

ARTICLE V                                                    V-3

CONFIDENTIAL                                                                          WH_MDL_00331848

described in Section 416(c)(2) of the Code is provided for all Non-Key Employees (either because the Plan is a Top-heavy Plan or without regard to whether the Plan is a Top-heavy Plan) if the schedule satisfies one of the following conditions: (i) the allocation rates under a plan are greater than the minimum allocation rate can be included in a hypothetical schedule of allocation rates that increases smoothly at regular intervals, within the meaning of this Paragraph D.3, where the hypothetical schedule has a lowest allocation rate no lower than one percent (1%) of Compensation; or (ii) for a plan using a schedule of allocation rates based on age, for each age band in the schedule that provides an allocation rate greater than the minimum allocation rate, there could be an Employee in that age band with an equivalent accrual rate that is less than or equal to the equivalent accrual rate that would apply to an Employee whose age is the highest age for which the allocation rate equals the minimum allocation rate.

4.    <u>Suspension of Benefits if Participant Changes Employee Status</u>.  If a Participant continues in the employ of the Employer, but changes his or her employment status to a class of employees that is ineligible for participation, such termination of participation shall not constitute a termination of employment for purposes of this Plan.  An otherwise eligible Participant shall accrue benefits in the Plan for the Plan Year in which he or she changes his or her employment status based on his or her Compensation received before the change in status.  However, such Inactive Participant shall not accrue further benefits under the Plan until the date he or she again becomes a participant; provided, however, that Compensation received prior to his or her again becoming a Participant shall be disregarded.

5.    <u>Amendments to The Plan – Preservation of Accrued Benefit</u>. Notwithstanding anything to the contrary contained in this Plan, no amendment to the Plan shall be effective to the extent that it has the effect of (i) decreasing a Participant's Accrued Benefit derived from Employer contributions; or (ii) except as provided by Treasury Regulations, eliminating an optional form of benefit, with respect to benefits attributable to Years of Service before the amendment; provided, however, that a Participant's Accrued Benefit may be reduced to the extent required as a condition of meeting the standards for qualification of the Plan.  Furthermore, no amendment to the Plan shall have the effect of decreasing a Participant's vested interest in his or her Accrued Benefit determined without regard to such amendment as of the later of the date such amendment was adopted, or becomes effective.

E.    <u>Limitation on Allocation of Employer Contributions and Forfeitures</u>.

1.    <u>Dollar Amount and Percentage Limitations</u>.  Except to the extent permitted under Paragraph H.1 of Article I relating to catch-up contributions and Section 414(v) of the Code, the Annual Addition allocated to a Participant's Accounts shall not exceed the lesser of:

ARTICLE V                    V-4

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                    WH_MDL_00331849

(a)    The Defined Contribution Dollar Limitation; or

(b)    100% of the Participant's Section 415 Compensation for the Limitation Year; provided, however, that this compensation limitation shall not apply to:

(i)    Any contribution for medical benefits (within the meaning of Section 401(h) or 419A(f)(2) of the Code) after separation from service which is otherwise treated as an Annual Addition; or

(ii)    Any amount otherwise treated as an Annual Addition under Section 415(l)(1) of the Code.

(c)    For purposes of applying the limitation described in this Paragraph E, Section 415 Compensation shall include elective amounts not includible in the gross earnings of the Employee by reason of Section 132(f)(4) of the Code.

2.    <u>Multiple Defined Contribution Plans and Welfare Benefit Fund Limitation</u>.  If, in a Plan Year, a Participant also participates in a defined contribution plan or a welfare benefit fund maintained by the Employer or by another member of the Controlled Group, the limitations set forth in this Article V with respect to such Participant shall apply as if the Annual Additions accrued to such Participant under all defined contribution plans and welfare benefit funds in which the Participant has participated were derived from one Plan.

F.    <u>Allocation Priorities if Limitations Exceeded</u>.  If the Annual Addition for a Participant is exceeded due to the allocation of forfeitures, a reasonable error in estimating a Participant's Compensation, or a reasonable error in determining the amount of Elective Deferrals with respect to any Plan Year, then compliance with such limitation shall be accomplished as follows: First, the amount of the Participant's Employee After-Tax Contributions for that Plan Year which were included in the Annual Addition shall be refunded to him or her; second, unless the Participant elects a refund of pre-tax Elective Deferrals, any Roth Contributions shall be refunded to the Participant to the extent the distribution would reduce the excess amount in the Participant's Account; third, any pre-tax Elective Deferrals shall be refunded to the Participant to the extent the distribution would reduce the excess amount in the Participant's Account;  fourth, the excess of Employer contributions which cannot be allocated to any Participant for such Plan Year shall either be (i) allocated to the remaining Participants' Accounts with any remaining unallocable Annual Additions held in a suspense account to reduce Employer contributions for the subsequent Limitation Year; or (ii) held in suspense accounts and applied to reduce future Employer contributions during the next Limitation Year, as elected in Article I.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                                        WH_MDL_00331850

G.    <u>Key Man Insurance Proceeds</u>.    Any proceeds of key man insurance received by the Trust during any Plan Year shall be allocated to the Employer Contribution Accounts of the Participants who are otherwise eligible to receive an allocation of Employer contributions on the Anniversary Date of the Plan Year in which the insured died.    Such proceeds shall be allocated to each Participant in the ratio that each Participant's Accrued Benefits as of the first day of the Plan Year in which the proceeds are received bears to the value of all such Participants' Accrued Benefits.    The allocation of such amounts shall be treated as an investment gain of the Trust.

ARTICLE V                                V-6

CONFIDENTIAL                                                    WH_MDL_00331851

## VI.    VESTING AND BENEFIT ENTITLEMENT

A.    Vesting.  The Accrued Benefit credited to any Participant shall vest in him or her as follows:

1.    Full Vesting.  As specified in Article I, a Participant's Accrued Benefit shall be fully vested at his or her Normal Retirement Age.  A Participant will become fully vested no later than the later of the Participant's 65th birthday or the fifth anniversary commencing the participation under the Plan.  Such Accrued Benefit shall also be fully vested upon a complete discontinuance of Employer Contributions or complete or partial termination of the Plan to the extent provided in Paragraph B of Article XIV.

2.    Section 401(k) Contributions.  A Participant shall be fully vested in his or her Elective Contribution, Qualifying Matching Contribution, Qualifying Nonelective Contribution and Roth Contribution Accounts at all times.

3.    Safe Harbor Contributions.  A Participant shall be fully vested in his or her Safe Harbor Matching Contribution and Safe Harbor Nonelective Employer Contribution Accounts at all times.

4.    Simple 401(k) Contributions.  A Participant shall be fully vested in his or her Simple 401(k) Account at all times.

5.    Partial Vesting.  The Nonelective Employer Contributions and Matching Contributions of a Participant whose employment terminates, or who suffers a Break-in-Service prior to his or her Normal Retirement Age for reasons other than death or Total Disability, shall vest in him or her in accordance with the vesting provisions contained in Article I.

6.    Vesting with the Controlled Group.  If the Employer is a member of a Controlled Group, then vesting credit shall be granted to an Employee for each Year of Service completed with the Employer and each other member of the Controlled Group.

B.    Forfeitures.  Non-vested Accrued Benefits shall be forfeited in accordance with the following provisions:

1.    Cash-Out of $5,000 or Less.  Subject to Paragraph B.3 of this Article VI, a Participant who terminates employment with the Employer in any Plan Year with a vested Accrued Benefit equal to or less than $5,000, will be paid a distribution of the value of his or her entire vested Accrued Benefit as soon as administratively feasible after the event elected in Article I and forfeited unless a later date for the forfeiture of

ARTICLE VI                                    VI-1

CONFIDENTIAL                                                        WH_MDL_00331852

non-vested Accrued Benefits is elected in Article I.  For purposes of this Paragraph B.1, if the value of a Participant's vested Accrued Benefit is zero (0), the Participant shall be deemed to have received a distribution of such zero (0) vested Accrued Benefit immediately upon employment termination or, if later, at the time the forfeiture occurs as elected in Article I.

2.     <u>Cash-Out of More Than $5,000</u>.  Subject to Paragraph B.3 of this Article VI, a Participant who terminates employment with the Employer with a vested Accrued Benefit greater than $5,000, may elect to receive the entire value of his or her vested Accrued Benefit as soon as administratively feasible after the event elected in Article I, and the non-vested Accrued Benefit will be immediately forfeited unless a later date for the forfeiture of non-vested Accrued Benefits is elected in Article I.

3.     <u>$3,500 Cash-Out</u>.  If and to the extent elected in Article I, the involuntary cash-out limit of $5,000 described above shall be $3,500.

4.     <u>Partial Cash-Outs of Vested Benefits</u>.  If the Participant receives a distribution of less than his or her entire vested Accrued Benefit during a Plan Year, the portion of the non-vested Accrued Benefit that will be immediately forfeited (unless Article I does not provide for a forfeiture of a partial cash-out distribution or a later date for the forfeiture of non-vested Accrued Benefits is elected in Article I) is the total non-vested Accrued Benefit multiplied by a fraction, the numerator of which is the amount of the vested Accrued Benefit that was distributed and the denominator of which is the total vested Accrued Benefit.

5.     <u>Value of Rollover Contributions</u>.   If provided in Article I, for purposes of this Paragraph B and Paragraph B.5 of Article VII, the value of a Participant's vested Accrued Benefit shall be determined without regard to that portion of the vested Accrued Benefit that is attributed to Rollover Contributions (and earnings allocable thereto).

6.     <u>Rehire After Cash-Out</u>.  If a Participant receives a distribution pursuant to this Paragraphs B, resumes employment covered under this Plan and, if required by Article I, repays to the Plan the full amount distributed to the Participant before the earlier of five (5) years after the first date on which the Participant is subsequently re-employed by the Employer, or the date on which the Participant incurs five (5) consecutive one-year Breaks-in-Service following the date of the previous distribution, then the amount that was forfeited shall be restored.  If a terminated Participant who had no vested Accrued Benefit and was deemed to have received a distribution later resumes covered employment before the date the Participant incurs five (5) consecutive one-year Breaks-in-Service, the amount that was previously forfeited by such Participant will be restored to his or her account.

ARTICLE VI

VI-2

CONFIDENTIAL

7.    <u>Delayed Forfeiture</u>.    If the Employer elects in Article I to delay forfeiture of non-vested Accrued Benefits until after the Plan Year of distribution, the separate account rule in Paragraph C of this Article VI shall apply until the forfeiture actually occurs.  If the forfeiture occurs prior to five (5) consecutive one-year Breaks-in-Service, then the above rules of this Paragraph B will apply after Paragraph C of this Article VI no longer applies.

8.    <u>Separate Account on In-Service Distribution</u>.    If this Plan allows for a distribution on account of hardship or other in-service distributions at any time when a Participant has a non-forfeitable right to less than 100% of the Accrued Benefit, and the Participant may increase the non-forfeitable percentage in his or her Account, a separate account as provided in Paragraph C of this Article VI will be established for the non-vested portion of the Accrued Benefit of the Participant who receives an in-service distribution.

9.    <u>Accumulated Deductible Contributions</u>.    For Plan Years beginning after December 31, 1988, a Participant's vested Accrued Benefit shall include accumulated deductible employee contributions within the meaning of Section 72(o)(5)(B) of the Code for purposes of the cash-out provisions of this Article VI.

C.    <u>Re-Vesting in Forfeitures Upon Re-Employment</u>.    If a Participant receives a distribution of his or her vested Accrued Benefit at a time when such Participant's vested interest is less than 100% and if, at the time of payment to the Participant, the Participant's non-vested benefit has not been forfeited, a separate account shall be established for the non-vested portion of the Participant's interest in the Plan as of the time of the distribution, and if he or she returns to the employ of the Employer prior to the time he or she suffers five (5) consecutive one-year Breaks-in-Service or an earlier forfeitable event as elected in Article I, then at any "Relevant Time" the Participant's vested  portion of the separate account shall be an amount ("X") determined by the formula $X = P(AB + D) - D$ or if elected in Article I determined by the formula $X=P(AB+(RxD))-(RxD)$.  For purposes of applying either formula, P is the vested percentage at the Relevant Time; AB is the account balance at the Relevant Time; D is the amount of the distribution; and R is the ratio of the account balance at the Relevant Time to the account balance after distribution. If a Participant returns to the employ of the Employer prior to incurring five (5) consecutive one-year Breaks-in-Service, or an earlier forfeitable event, he or she shall continue on the vesting schedule set forth in Paragraph A.5 of this Article VI as if he or she had not left, and he or she shall be a Participant as of his or her date of rehire.

D.    <u>Limitation on Vesting Upon Re-Employment</u>.    If a terminated Participant is re-employed by the Employer, then, except as provided for in this Article VI, all of the Participant's Years of Service before his or her re-employment shall be considered as Years of Service after his or her re-employment for the purpose of determining the

ARTICLE VI

VI-3

BROAD FINANCIAL  (800) 395-5200

Participant's Accrued Benefit under the Plan derived from Employer contributions allocated to the Participant subsequent to his or her date of re-employment.

E.    <u>Vesting Upon Change of Employment Status</u>.  If a Participant becomes an Inactive Participant, his or her Accrued Benefit shall continue to vest as long as he or she is an Employee of the Employer or its Controlled Group and has not incurred a Break-in-Service.

F.    <u>Vested Interest Not Distributed</u>.  If a terminated Participant has not received a distribution or a deemed distribution of his or her vested Accrued Benefit, then his or her Accrued Benefit shall be credited with its share of Trust net earnings, gains, or losses and changes in the fair market value of the Trust assets through the Valuation Date next preceding actual distribution and forfeitures, if any.

G.    <u>Break-in-Service While Still Employed</u>.  If a Participant incurs a Break-in-Service but does not terminate employment with the Employer, his or her Accrued Benefit shall remain in the Trust and shall be credited with its share of Trust net earnings, gains, or losses and changes in the fair market value through the Valuation Date next preceding distribution and forfeitures, if any.

H.    <u>Effect of Break-in-Service – Vested Participant</u>.  If a Participant has five (5) consecutive one-year Breaks-in-Service, he or she shall not have credited to him or her Years of Service accrued subsequent to such Break-in-Service for purposes of determining his or her vested interest in his or her Accrued Benefit derived from Employer contributions credited prior to such Break-in-Service.

I.    <u>Reserved</u>.

J.    <u>Effect of Break-in-Service – Non-Vested Participant.</u>  If a Participant does not have a vested interest in any portion of his or her Accrued Benefit at the time a Break-in-Service occurs, Years of Service prior to the Break-in-Service shall not be taken into account in determining the Participant's vested interest in his or her Accrued Benefit if the number of consecutive one-year Breaks-in-Service equals or exceeds the greater of five (5) or the aggregate number of Years of Service prior to the Break-in-Service.

If a former Participant has five (5) or more consecutive one-year Breaks-in-Service, his or her Years of Service prior to such Breaks-in-Service shall be taken into account in determining the former Participant's vested interest in his or her Accrued benefit only if either:

1.    Such former Participant had a vested interest in his or her Accrued Benefit at the time of his or her termination of employment; or

ARTICLE VI

VI-4

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331855

2.    Upon his or her re-employment, the number of consecutive one-year Breaks-in-Service is less than the number of Years of Service completed prior to the Break-in-Service.

Separate Accounts shall be maintained for the Participant's pre-Break and post-Break Accrued Benefit and both Accounts shall share in the allocation of Trust earnings and losses as provided in Article V of the Plan.

With respect to any former Participant whose prior service is not disregarded under the break-in-service rules in effect prior to the first Plan Year beginning after December 31, 1984, whether the Plan may subsequently disregard the years of service is governed by the provisions of this Paragraph J.

K.    <u>Limitation on Right to Amend Vesting Schedule</u>.    Any amendment changing the vesting schedule shall:

1.    Not cause any Participant's vested interest in such Participant's Accrued Benefit to be less than such Participant's vested interest on the day before such amendment becomes effective; and

2.    Permit any Participant having at least three (3) Years of Service at the end of the election period the option to elect, irrevocably, within a reasonable period after the adoption of such amendment, to have such Participant's vested interest determined without regard to said amendment (that is, in accordance with the vesting schedule in effect prior to such amendment).  The election period shall begin on the date the amendment is adopted and end not earlier than 60 days after the latest of (i) the adoption date; (ii) the effective date; or (iii) the date written notice of the right of election is given to the Participant.

If a Participant does not elect a vesting schedule, then he or she will vest in accordance with the most favorable vesting schedule.

ARTICLE VI                                    VI-5

CONFIDENTIAL                                    WH_MDL_00331856

## VII.    DISTRIBUTION OF BENEFITS

A.    Definitions.

1.    "Annuity Starting Date" means the first day of the first period for which an amount is payable as an annuity to a Participant, or in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitle the Participant to a benefit. For purposes of the preceding sentence, the first day of the first period for which a benefit is to be received on account of separation from service by reason of disability shall be treated as the Annuity Starting Date only if such disability benefit is not an auxiliary benefit.

2.    "Election Period" means, with respect to a Qualified Joint and Survivor Annuity, the 90-day period ending on the Annuity Starting Date. With respect to a Qualified Preretirement Survivor Annuity, Election Period means the period beginning on the first day of the Plan Year in which Participant attains age 35 and ending on the date of the Participant's death. If a Participant separates from service prior to age 35, the Election Period shall begin on the date of separation from service with respect to benefits accrued as of that date.

A Participant who has not attained age 35 as of the end of any Plan Year may make a special Waiver Election to waive the Qualified Preretirement Survivor Annuity for the period beginning on the date of such election and ending on the first day of the Plan Year in which the Participant will attain age 35. Such election will not be valid unless the Participant receives a written explanation of the Qualified Preretirement Survivor Annuity. The Qualified Preretirement Survivor Annuity coverage will be automatically reinstated as of the first day of the Plan Year in which the Participant attains age 35. Any new Waiver Election on or after such date shall be subject to the full requirements of this Article VII.

3.    "Qualified Joint and Survivor Annuity" means, with respect to a married Participant, an immediate annuity for the life of the Participant with a survivor annuity for the life of his or her Spouse which is 50%, or a greater percentage as elected in Article I, of the amount of the annuity paid for the joint lives of the Participant and his or her Spouse and which is the actuarial equivalent of a single annuity for the life of the Participant. With respect to an unmarried Participant, a Qualified Joint and Survivor Annuity means an annuity for the life of the Participant.

4.    "Qualified Preretirement Survivor Annuity" means an immediate annuity for the life of the Participant's Spouse, the payment under which is equal to 50%, or a greater percentage as elected in Article I, of the sum of the Participant's Accrued Benefit and any insurance proceeds payable upon death of the Participant; any security interest held by the Plan by reason of an outstanding loan to the Participant

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                         WH_MDL_00331857

shall be taken into account in determining the amount of the Qualified Preretirement Survivor Annuity.

     5.    "Spouse" or "Surviving Spouse" means a person who has been married to the Participant throughout the one-year period (unless otherwise elected in Article I) ending on the earlier of the date of the Participant's death or such Participant's Annuity Starting Date; provided, however, that a former Spouse shall be treated as the Spouse or Surviving Spouse to the extent required under a Qualified Domestic Relations Order.  The one-year marriage requirement does not apply to the payment of a Qualified Joint and Survivor Annuity.

     6.    "Transferred Benefits" mean the benefits of a Participant derived from another qualified plan that are involuntarily transferred to this Plan subject to the requirements of Section 414(l) of the Code and, where applicable, the annuity and survivor annuity requirements of Sections 401(a)(11) and 417 of the Code.  A Participant shall vest in his or her Transferred Benefits Account in accordance with Article I, but subject to the vesting requirements of Section 411(a)(10) of the Code.  A rollover and voluntary transfer described in Q&A 3 of Section 1.411(d)-4 of the Treasury Regulations will not be deemed a transfer of benefits.

     7.    "Waiver Election" means a written election by a Participant during the Election Period to receive the payment of the Participant's vested Accrued Benefit in a manner other than a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity.  A Waiver Election must be consented to by the Participant's Spouse. The Spouse's consent must acknowledge the effect of the waiver and must be witnessed by either the Plan representative or a notary public as required at the sole discretion of the Committee.  The Spouse's consent will be deemed made if the Participant establishes to the satisfaction of the Committee that (i) there is no Spouse; or (ii) the Spouse cannot be located.  If the Spouse is legally incompetent to give consent, the Spouse's legal guardian, even if the guardian is the Participant, may give consent.  Also, if the Participant is legally separated or the Participant has been abandoned (within the meaning of local law) and the Participant has a court order to such effect, spousal consent is not required unless a Qualified Domestic Relations Order provides otherwise.  Similar rules apply to a plan subject to the requirements of Section 401(a)(11)(B)(iii)(l) of the Code.   Any consent made or deemed made hereunder shall be valid only with respect to the Spouse who signs, or is deemed to have signed, the consent.  The Waiver Election of a Qualified Preretirement Survivor Annuity shall identify the Beneficiary or class of Beneficiaries or any contingent Beneficiaries.  The Waiver Election of a Qualified Joint and Survivor Annuity shall identify the Beneficiary or class of Beneficiaries or contingent Beneficiary, if applicable, and the method of payment. Any change in the Waiver Election shall require a new spousal consent, unless the original consent of the Spouse expressly permits designations by the Participant without any requirement of further consent by the

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL          WH_MDL_00331858

Spouse and acknowledges that the more restrictive consent could have been given. A revocation of a prior waiver may be made by a Participant without the consent of the Spouse at any time before the Annuity Starting Date. The Participant may revoke a Waiver Election at any time, but any new Waiver Election must comply with the requirements of this Paragraph A.7. A former Spouse's consent to a Waiver Election shall not be binding on a new Spouse.

B.     Distribution With Annuity Option – Other Than Death. If this Plan provides for an annuity option as selected in Article I, the Committee shall direct the Trustee to distribute to a Participant the amount of his or her vested Accrued Benefit as a result of the Participant's termination of employment, including (i) termination of employment for any reason other than death; (ii) Total Disability before Normal Retirement Age; or (iii) retirement on or after Normal Retirement Age in accordance with this Paragraph B. Such Accrued Benefit shall be determined as of the Valuation Date preceding the date of the Participant's distribution.

1.     Payment of Qualified Joint and Survivor Annuity. A Participant shall automatically receive his or her vested Accrued Benefit in the form of a Qualified Joint and Survivor Annuity unless the Participant makes a Waiver Election during the applicable Election Period.

2.     Notice Requirements. The Committee shall provide to each Participant within a period of time of no less than 30 days and no more than 90 days prior to the Annuity Starting Date, a written explanation of (i) the terms and conditions of a Qualified Joint and Survivor Annuity; (ii) the Participant's right to make, and the effect of, a Waiver Election waiving the Qualified Joint and Survivor form of benefit; (iii) the rights of a Spouse to consent to any Waiver Election which waives his or her rights to such form of Annuity; and (iv) the right to make, and the effect of, a revocation of a previously made Waiver Election.

The Participant shall be furnished with a general description of all the eligibility conditions and other material features of the optional forms of benefits and information explaining the relative values of the various optional forms of benefits that are available under the terms of the Plan in a like manner and within the time period as stated in the preceding paragraph. The requirement to provide relative values of the optional forms of benefits shall only apply to plans that offer a life annuity form of payment. Written consent of the Participant to a distribution must be made after the Participant receives such notice and must not be made more than 90 days before the Annuity Starting Date.

(a)     If a distribution is one to which Sections 401(a)(11) and 417 of the Code do not apply, such distribution may commence less than 30 days after the

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                     WH_MDL_00331859

notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

(i)     The Committee clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option); and

(ii)     The Participant, after receiving the notice, affirmatively elects a distribution.

(b)     If a distribution is one to which Sections 401(a)(11) and 417 of the Code apply, such distribution may commence less than 30 days after the notice is given provided that:

(i)     The Committee provides information to the Participant clearly indicating that the Participant has a right to at least 30 days to consider whether to waive the Qualified Joint and Survivor Annuity and consent to a form of distribution other than a Qualified Joint and Survivor Annuity;

(ii)     The Participant is permitted to revoke an affirmative distribution election at least until the Annuity Starting Date, or if later, at any time prior to the expiration of the seven (7) day period that begins the day after the explanation of the Qualified Joint and Survivor Annuity is provided to the Participant;

(iii)     The Annuity Starting Date is after the date that the explanation of the Qualified Joint and Survivor Annuity is provided to the Participant. However, for distributions made after December 31, 1996, the Annuity Starting Date may be before the date that the written explanation is given to the Participant, provided that the distribution does not commence until at least 30 days after such written explanation is provided to such Participant; and

(iv)     Distribution in accordance with the affirmative election does not commence before the expiration of the seven (7) day period that begins the day after the explanation of the Qualified Joint and Survivor Annuity is provided to the Participant.

3.     <u>Alternate Forms of Benefit Payments</u>.   During any time that a Waiver Election is in effect, the Participant shall elect to have his or her vested Accrued Benefit distributable in one (1) of the alternate forms of payment described in subparagraphs (a) through (e) of this Paragraph B.3 as permitted in Article I.   The Committee shall instruct the Trustee to distribute the benefits in such form.   If a Waiver Election is in effect when benefits are distributed, but no method of distribution is

ARTICLE VII                                    VII-4

CONFIDENTIAL                                                                                    WH_MDL_00331860

otherwise selected by the Participant, then the Committee shall make reasonable efforts to obtain an election of a method of distribution from such Participant. If the Committee is unable to obtain an election for a method of distribution from such Participant, then the benefits shall be deferred until the later of Normal Retirement Age or age 62, at which time the benefits shall be paid in the form of a Qualified Joint and Survivor Annuity if required, or in the form of a cash lump sum in all other cases.

(a)     The payment of the Participant's vested Accrued Benefit in a single sum in cash or in kind.

(b)     Except as provided in subparagraph 4(a) of this Paragraph B, the payment of the Participant's vested Accrued Benefit as an annuity, in a series of monthly payments, variable or fixed, with or without a period certain for his or her life or for the joint lives of the Participant and his or her spouse or Designated Beneficiary.

(c)     The payment of the Participant's vested Accrued Benefit in a series of installments.

(d)     Any combination of the methods described above.

(e)     If the distribution constitutes an Eligible Rollover Distribution, the payment of the Participant's vested Accrued Benefit in a total or partial direct transfer to an Eligible Retirement Plan; provided that a partial direct transfer shall be equal to at least $500. If elected in Article I, Roth Contributions will be treated as a separate plan for purposes of this subparagraph B.3(e).

4.     <u>Restriction on Alternate Form of Benefits</u>.

(a)     If this Plan does not provided for a Qualified Joint and Survivor Annuity, no distributions shall be made in the form of a life annuity. In-kind distributions requested by a Participant, if permitted under Article I, shall be made available in a non-discriminatory manner under Section 401(a)(4) of the Code and if permitted by the issuer of the particular asset. If a Participant elects installments, his or her installment payments shall be payable not less frequently than annually over a period not to exceed any one (1) of the following permissible periods:

(i)     A period certain not extending beyond the life expectancy of the Participant; or

(ii)     A period certain not extending beyond the joint and last survivor expectancy of the Participant and a Designated Beneficiary.

ARTICLE VII

VII-5

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL     WH_MDL_00331861

The Trustee may segregate the unpaid balance of the Participant's vested Accrued Benefit in one (1) or more banks, trust companies, savings and loan associations or similar institutions, including the Trust or any of its affiliates, if applicable, for investment in savings accounts, certificates of deposit, government bonds, bankers' acceptances or similar securities. Unless violative of Section 401(a)(9) of the Code, net earnings on the unpaid vested Accrued Benefit shall be distributed with the last payment.

(b)    Any deferred distribution from an annuity contract in a form other than a Qualified Joint and Survivor Annuity shall require a Waiver Election. The annuity contract shall provide for the notice provisions of REACT and shall comply with the requirements of this Plan, including the Participant's rights to optional forms of benefits and the distribution requirement of Section 401(a)(9) of the Code and the regulations thereunder. Any annuity contract distributed hereunder must be non-transferable.

5.    <u>Distribution Consent Requirements</u>. Subject to subparagraph (g) below of this Paragraph B.5, if the Participant's vested Accrued Benefit exceeds $5,000, the Participant and the Participant's Spouse or the survivor of the two must consent to any distribution of such vested Accrued Benefit if the form of benefit is payable in other than a Qualified Joint and Survivor Annuity.

(a)    Notwithstanding the foregoing, if this Plan is not subject to Section 401(a)(11) and 417 of the Code, only the Participant's consent is required. Written consent of the Participant or the Participant's Spouse is not required if the vested Accrued Benefit does not exceed $5,000 at the date of distribution. However, if a Participant has begun to receive distributions pursuant to an optional form of benefit that provides for a schedule of periodic distribution, consent will be required even if the Participant's remaining vested Accrued Benefit is less than $5,000.

(b)    If this Plan is subject to Sections 401(a)(11) and 417 of the Code, a distribution may not be made after the Annuity Starting Date unless the Participant and the Spouse of the Participant or the Surviving Spouse consent in writing to such distribution even if the vested Accrued Benefit is less than or equal to $5,000.

(c)    If the Participant separates from service with a vested Accrued Benefit of at least $200 but not more than $5,000, such Participant shall be entitled to elect a direct transfer or partial direct transfer of his or her Accrued Benefit as described in Paragraph B.3 of this Article VII. If the Participant fails to make such election, his or her vested Accrued Benefit shall be paid to him or her in a single sum payment subject to mandatory federal income tax withholding. Such payment shall occur 30 days after the receipt of the notice described in Paragraph B.2 of this Article VII but before the 90 day period described in such Paragraph B.2 has expired.

ARTICLE VII

VII-6

CONFIDENTIAL

(d)    Notwithstanding the preceding subparagraph (c), for distributions made on or after March 28, 2005 if the Participant's vested Accrued Benefit, including any Rollover Contributions, is greater than $1,000 (or a lesser amount if elected in Article I), the Committee shall establish an individual retirement account for the benefit of the Employee unless otherwise elected in Article I. Such transfer shall occur 30 days after the receipt of the notice described in Paragraph B.2 of this Article VII but before the 90 day period described in such Paragraph B.2 has expired.

(e)    If elected in Article I, the involuntary cash-out distribution limit of $5,000 described above shall be reduced. The determination of whether Rollover Contributions (and earnings allowable thereto) are included in the value of the Participant's vested Accrued Benefit for purposes of the involuntary cash-out distribution limit but not for purposes of automatic rollover to an individual retirement account for mandatory distribution shall be made in accordance with Article I.

(f)    If the Participant's vested Accrued Benefit is less than $200, it shall be paid to him or her in a single sum payment as soon as administratively feasible after the date elected in Article I unless the direct payment of a distribution to a Participant has been reduced below $200 pursuant to Article I. If elected in Article I, Roth Contributions will be treated as a separate plan for purposes of this subparagraph B.5(f). In that case, the Plan will not provide for a direct rollover (including an automatic rollover) for distributions from a Participant's Roth Contribution Account if the amount of the distributions that are Eligible Rollover Distributions are reasonably expected to total less than $200 during a Plan Year. In addition, any distribution from a Participant's Roth Contribution Account is not taken into account in determining whether distributions from a Participant's other Accounts are reasonably expected to total less than $200 during a Plan Year. However, Eligible Rollover Distributions from a Participant's Roth Contribution Accounts are taken into account in determining whether the total amount of the Participant's Accrued Benefit exceeds $1,000 for purposes of subparagraph B.5(d) of this Article VII.

(g)    If and to the extent elected in Article I, the $5,000 dollar amount described in the first paragraph of this Paragraph B.5 shall be $3,500.

6.    Special Rules.  The Committee shall notify the Participant and the Participant's Spouse of the right to defer benefits to the later of age 62 or the Normal Retirement Age under the Plan and the right to optional forms of benefit as described in Paragraph B.3 of this Article VII. The notice to defer benefits and the explanation of the optional forms of benefits shall comply with Paragraph B.2 of this Article VII. If the benefit is payable commencing before the later of age 62 or the Normal Retirement Age, in a Qualified Joint and Survivor Annuity, or if this Plan does not provide for the survivor annuity requirements of REACT, only the Participant's consent is required. If this Plan is terminated and an annuity that may be purchased from a commercial

ARTICLE VII                                    VII-7

CONFIDENTIAL                                    WH_MDL_00331863

provider is not offered as an optional form of distribution, the Participant's Accrued Benefit payable upon termination may be distributed to the Participant without his or her consent.   The preceding sentence shall not apply if the Employer maintains another defined contribution plan within the Controlled Group other than an employee stock ownership plan as defined in Section 4975(e)(7) of the Code to which benefits are transferred from the terminated Plan.     However, the transfer need not require Participant consent.  All transfers shall comply with the rules of Section 411(d)(6) of the Code.  The consent requirements of this Paragraph B.6 do not apply to the extent that a distribution is required to satisfy the requirements of Sections 401(a)(9) and 415 of the Code.

      7.     <u>Accumulated Deductible Employee Contributions</u>.  Before the first day of the first Plan Year beginning after December 31, 1989, the Participant's vested Accrued Benefit shall not include accumulated deductible employee contributions within the meaning of Section 72(o)(5)(B) of the Code.  These employee contributions, if any, shall be maintained in a separate account.

      8.     <u>Incidental Benefit Rule</u>.   The Committee shall ensure that all distributions required under this Article VII shall be made and determined in accordance with Section 401(a)(9) of the Code and the regulations issued thereunder, including the minimum distribution and incidental benefit requirements of Section 401(a)(9)(G) of the Code.

      9.     <u>Commencement of Benefits</u>.  Distribution to any Participant of his or her vested Accrued Benefit shall commence not later than the April 1 of the calendar year following the calendar year in which he or she attains age 70½.

      (a)     Notwithstanding the foregoing, if elected in Article I, the required beginning date for minimum required distributions for any Participant (other than a 5%-Owner) is the April 1 of the calendar year following the later of the calendar year in which such Participant attains age 70½ or the calendar year in which such Participant retires.

      (b)     If elected in Article I, the required beginning date for minimum required distributions is the April 1 of the calendar year following the calendar year in which the Participant attains age 70½, except that benefit distributions to a Participant (other than a 5%-Owner) with respect to benefits accrued after the later of the adoption or effective date of an amendment to the Plan must commence by the later of the April 1 of the calendar year following the calendar year in which the Participant attains age 70½ or retires.

      (c)     If elected in Article I, any Participant (other than a 5%-Owner) who attained age 70½ prior to January 1, 1997 and who is still employed by the

ARTICLE VII

VII-8

CONFIDENTIAL

Employer, may elect, in accordance with the administrative procedures established by the Committee, to stop receiving minimum required distributions until April 1 of the calendar year following retirement. If provided in Article I, there shall be a new Annuity Starting Date upon recommencement. Any such election shall not affect a new Participant's right to elect an in-service distribution pursuant to Article I of the Plan. The election to stop receiving minimum required distributions shall also apply to any Participant who is currently receiving minimum required distributions and has not been given the right to elect to stop such distributions.

(d)     If provided in Article I, any Participant (other than a 5%-Owner) who attains age 70½ after 1995 and is still employed by the Employer may elect, in accordance with the administrative procedures established by the Committee, to defer receiving minimum required distributions until the calendar year following retirement. Such election must be made by the April 1 of the calendar year following the calendar year in which the Participant attained age 70½ (i.e., by April 1, 1997 if the Participant attained age 70½ in 1996) unless such Participant has not been given the right to elect to defer such distributions. If a Participant fails to make such election, such Participant will begin receiving a minimum required distribution by the April 1 of the calendar year following the calendar year in which the Participant attains age 70½ (i.e., by April 1, 1997 if the Participant attained age 70½ in 1996).

(e)     If elected in Article I, the preretirement age 70½ distribution option is only eliminated with respect to Participants who attain age 70½ in or after a calendar year that begins after the later of December 31, 1998, or the adoption date of this amendment. This provision shall not affect the Participant's right to receive an in-service distribution pursuant to Article I of the Plan.

(f)     Any amendment made to an existing plan to eliminate distributions after age 70½ shall not apply if the amendment is not adopted by the last day of the remedial amendment period that applies to such plan due to changes made by the Small Business Job Protection Act of 1996.

(g)     If this document establishes a new plan and if elected in Article I, any Participant (other than a 5%-Owner) who is still employed by the Employer and who has attained age 70½ will not be entitled to receive distributions until the April 1 of the calendar year following retirement. This provision shall not affect the Participant's right to elect an in-service distribution pursuant to Article I of the Plan.

(h)     Notwithstanding the above, once minimum required distributions have commenced to a 5%-Owner under this Paragraph B.9, such distributions shall continue.

ARTICLE VII                                    VII-9

CONFIDENTIAL                                                          WH_MDL_00331865

10. <u>Coordination with Minimum Distribution Requirements Previously in Effect</u>. If Article I specifies an effective date to apply the Final and Temporary Regulations under Section 401(a)(9) of the Code that is earlier than calendar years beginning with the 2003 calendar year, required minimum distributions for 2002 under this Article VII will be determined as follows:

(a)    If the total amount of 2002 required minimum distributions under the Plan made to the Distributee or Designated Beneficiary prior to the effective date stated in Paragraph GG.1 of Article I equals or exceeds the required minimum distributions determined after the effective date in such Paragraph, then no additional distributions will be required to be made for 2002 on or after such date to the Distributee or Designated Beneficiary.

(b)    If the total amount of 2002 required minimum distributions under the Plan made to the Distributee or Designated Beneficiary prior to the effective date of Paragraph GG.1 of Article I is less than the amount determined after the effective date of such Paragraph, then required minimum distributions for 2002 on and after such date will be determined so that the total amount of required minimum distributions for 2002 made to the Distributee or Designated Beneficiary will be the amount determined after the effective date specified in Paragraph GG.1 of Article I.

(c)    With respect to distributions under the Plan made prior to the effective date specified in Paragraph GG.1 of Article I but no earlier than the calendar year beginning January 1, 2001, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Code in accordance with the regulations under Section 401(a)(9) of the Code that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary.

(d)    Notwithstanding the other provisions of this Article VII, distributions may be made under a designation made before January 1, 1984, in accordance with Section 242(b)(2) of TEFRA and the provisions of Paragraph G of this Article VII.

11. <u>Amount of Required Minimum Distribution During the Participant's Lifetime</u>.

(a)    During the Participant's lifetime, the minimum amount that will be distributed for each Distribution Calendar Year is the lesser of:

(i)    the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Final Treasury Regulations, using the Participant's age as of the Participant's birthday in the Distribution Calendar Year; or

ARTICLE VII

VII-10

CONFIDENTIAL

WH_MDL_00331866

(ii)     if the Participant's sole Designated Beneficiary for the Distribution Calendar Year is the Participant's Spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Final Treasury Regulations, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the Distribution Calendar Year.

(b)     For purposes of Paragraphs B and C of this Article VII, a Participant's account balance shall equal his or her Accrued Benefit as of the last Valuation Date in the calendar year immediately preceding the Distribution Calendar Year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the account balance as of dates in the valuation calendar year after the Valuation Date and decreased by distributions made in the valuation calendar year after the Valuation Date. The account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the Distribution Calendar Year if distributed or transferred in the valuation calendar year.

(c)     For purposes of required minimum distributions, life expectancy, where applicable, shall be computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Final Treasury Regulations.

(d)     For the purposes of Paragraphs B and C of this Article VII, Designated Beneficiary means the individual who is designated as the Beneficiary as described in Paragraph A.16 of Article II and is the Designated Beneficiary under Section 401(a)(9) of the Code and Section 1.401(a)(9)-4 of the Final Treasury Regulations.

(e)     Required minimum distributions will be determined under this Paragraph B.11 beginning with the first Distribution Calendar Year and up to and including the Distribution Calendar Year that includes the Participant's date of death.

12.     Forms of Distribution. Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first Distribution Calendar Year distributions will be made in accordance with Paragraph B.11 and subparagraphs C.2(b), (c), (d), (e) and (f) of this Article VII. If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Final and Temporary Treasury Regulations issued on April 17, 2002.

ARTICLE VII                              VII-11

CONFIDENTIAL

WH_MDL_00331867

13.    Distribution on Total Disability.  Notwithstanding any delay in the timing of distributions pursuant to Article I, if a Participant terminates employment as a result of Total Disability, he or she shall be eligible for the immediate commencement of his or her vested Accrued Benefit as soon as administratively feasible after such termination; provided that the Participant shall make a written application for and submit to the Committee sufficient evidence to establish his or her Total Disability.  The Committee, in its sole discretion, may demand further examination by an independent physician acceptable to it to determine the Participant's Total Disability before approving or denying any such claim.  If permitted in Article I, a Participant may receive an in-service distribution of his or her vested Accrued Benefit on account of Total Disability.

C.    Distribution at Death.  If this Plan provides for an annuity option as selected in Article I, and if a Participant ceases participation under the Plan by reason of his or her death prior to the Annuity Starting Date, unless there has been a valid Waiver Election during the applicable Election Period, a Qualified Preretirement Survivor Annuity shall be paid to the Surviving Spouse commencing on the later of the Normal Retirement Age or on the date that a Participant would have attained age 62 unless an alternate form of benefit is selected.  The Surviving Spouse may elect to have such annuity distributed within a reasonable time after the Participant's death, subject to an adjustment on account of an earlier distribution, if any.

1.    Notice Requirements and Alternate Forms of Death Benefits.

(a)    The Committee shall provide each Participant a written explanation of the Qualified Preretirement Survivor Annuity in such terms and in such manner as would be comparable to the explanations provided for meeting the notice requirements of Paragraph B.2 of this Article VII applicable to a Qualified Joint and Survivor Annuity.  Except for separation from service prior to age 35, the applicable period for a written explanation to a Participant is whichever of the following periods ends last:  (i) the period beginning with the first day of the Plan Year in which the Participant attained age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attained age 35; (ii) a reasonable period ending after an Employee becomes a Participant; (iii) a reasonable period ending after the Plan no longer fully subsidizes the benefit; or (iv) a reasonable period ending after Section 401(a)(11) of the Code first applies to the Participant.  For purposes of applying clauses (ii), (iii) and (iv), a reasonable period ending after the last of these events have occurred means the end of the two-year period beginning one (1) year prior to the date the applicable event occurs, and ending one (1) year after that date.

(b)    if a Participant separates from service before the Plan Year in which the Participant attains age 35, notice shall be provided within the two-year period beginning one (1) year prior to separation and ending one (1) year after separation.  If the Participant thereafter returns to employment with the Employer, the

ARTICLE VII

VII-12

CONFIDENTIAL    WH_MDL_00331868

applicable period for such Participant shall be redetermined as described in clauses (i), (ii), (iii) and (iv) of this Paragraph C.1(a).

(c)     During any time that a Waiver Election is in force, the Participant may elect to have his or her death benefit distributed in any one of the ways permitted by Paragraph JJ of this Article I, including without limitation, a total or partial direct transfer to an Eligible Retirement Plan, if the distribution constitutes an Eligible Rollover Distribution.

(d)     If, at the death of a Participant, his or her death benefit is payable in the form of a Qualified Preretirement Survivor Annuity, the Participant's Surviving Spouse shall be entitled to select by written election an alternate form of benefit payment in any of the ways permitted by Paragraph JJ of Article I, including without limitation, a total or partial direct transfer to an Eligible Retirement Plan, if the distribution constitutes an Eligible Rollover Distribution.

2.     Time of Distribution Upon Death. Upon the death of a Participant, the following distribution provisions shall apply:

(a)     If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

(i)     If the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary, then, except as provided in Article I, distributions to the Surviving Spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

(ii)     If the Participant's Surviving Spouse is not the Participant's sole Designated Beneficiary, then, except as provided in Article I, distributions to the Designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

(iii)     If there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(iv)     If the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary and the Surviving Spouse dies after the Participant but before distributions to the Surviving Spouse begin, this subparagraph

ARTICLE VII                                    VII-13

CONFIDENTIAL                                    WH_MDL_00331869

C.2(a), other than subparagraph C.2(a)(i), will apply as if the Surviving Spouse were the Participant.

For purposes of this Paragraph C.2, unless subparagraph C.2(a)(iv) applies, distributions are considered to begin on the Participant's required beginning date. If subparagraph C.2(a)(iv) applies, distributions are considered to begin on the date distributions are required to begin to the Surviving Spouse under subparagraph C.2(a)(i). If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's required beginning date (or to the Participant's Surviving Spouse before the date distributions are required to begin to the Surviving Spouse under subparagraph C.2(a)(i)), the date distributions are considered to begin is the date distributions actually commence.

(b)    If the Participant dies on or after the date distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's Designated Beneficiary, determined as follows:

(i)    The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one (1) for each subsequent year.

(ii)    If the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary, the remaining life expectancy of the Surviving Spouse is calculated for each Distribution Calendar Year after the year of the Participant's death using the Surviving Spouse's age as of the Spouse's birthday in that year. For Distribution Calendar Years after the year of the Surviving Spouse's death, the remaining life expectancy of the Surviving Spouse is calculated using the age of the Surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death, reduced by one (1) for each subsequent calendar year.

(iii)    If the Participant's Surviving Spouse is not the Participant's sole Designated Beneficiary, the Designated Beneficiary's remaining life expectancy is calculated using the age of the Beneficiary in the year following the year of the Participant's death, reduced by one (1) for each subsequent year.

(c)    If the Participant dies on or after the date distributions begin and there is no Designated Beneficiary as of September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the Participant's remaining life expectancy

ARTICLE VII                    VII-14

CONFIDENTIAL                                    WH_MDL_00331870

calculated using the age of the Participant in the year of death, reduced by one (1) for each subsequent year.

(d)    Except as provided in Article I, if the Participant dies before the date distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's Designated Beneficiary, determined as provided in subparagraph C.2(b) and (c) of this Article VII.

(e)    If the Participant dies before the date distributions begin and there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(f)    If the Participant dies before the date distributions begin, the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary, and the Surviving Spouse dies before distributions are required to begin to the Surviving Spouse under subparagraph C.2(a)(i), then subparagraphs C.2(d), (e) and (f) of this Article VII will apply as if the Surviving Spouse were the Participant.

3.    REACT Death Benefit.    If the Plan is subject to REACT Surviving Spouse protection, the amount of death benefits to be paid to the Participant's Surviving Spouse shall be a Qualified Preretirement Survivor Annuity determined in accordance with Article I and this Article VII. Any remaining Accrued Benefit shall be paid in accordance with the Participant's Beneficiary designation. If this Plan does not provide for an annuity option, the special rule as provided in Paragraph E of this Article VII shall apply.

4.    Death Benefits.    The death benefit payable under this Plan shall be equal to the face amount of any life insurance policies, if any (excluding key man insurance) on such Participant's life in effect on his or her date of death, plus such Participant's Accrued Benefit.

5.    Lack of Designation.    If such deceased Participant had filed with the Committee a document naming a Designated Beneficiary, but failed to designate the form in which benefit payments are to be made, then the Committee shall direct the Trustee to distribute to such Designated Beneficiary the unpaid amount of the Participant's Accrued Benefit as determined above, in such one (1) or more ways as permissible under Paragraph B.3 of this Article VII. If such deceased Participant failed to name a Designated Beneficiary, or if no Designated Beneficiary survives him or her,

ARTICLE VII                                    VII-15

CONFIDENTIAL

WH_MDL_00331871

then the unpaid amount of the Participant's Accrued Benefit shall be paid to the Designated Beneficiary pursuant to the priorities set forth in Article IX of the Plan.

6.    Proof of Death.  Upon the death of a Participant, the Committee may, but need not, require the personal representative of the Participant's estate and/or the Designated Beneficiary to furnish proof of death and such tax release forms and any other forms, papers or documents as are deemed appropriate by the Committee prior to making any payment of death benefits.

7.    Proof of Surviving Spouse.  The Committee shall withhold and shall not authorize the distribution of death benefits until such time as the Committee can determine the existence and/or identity of a Surviving Spouse or any other non-spouse Beneficiary.  If the Committee cannot determine to its reasonable satisfaction the identity of the person or persons to whom such death benefits should be distributed within a reasonable time after the date of death of the Participant, then the Committee shall not authorize the distribution of such death benefits but shall hold such death benefits in trust until the identity of such Surviving Spouse or other Beneficiary is finally determined.  If necessary as determined by the Committee in its sole discretion, the Committee may file a complaint for interpleader or declaratory relief requesting that the court determine the identity of any persons who are entitled to payment of such benefits.  In such a case, the death benefits may be deposited with the court pending the outcome.

8.    Death of Beneficiary.  A Beneficiary shall not have any rights to benefits under the Plan unless he or she survives the Participant.  If the Participant and his or her Beneficiary die simultaneously and it is not possible to determine who died first, it is presumed that the Participant survived the Beneficiary, regardless of any finding to the contrary by a state court or pursuant to any state law.

D.    Transitional Rules.  The Qualified Joint and Survivor Annuity and Qualified Preretirement Survivor Annuity provisions of this Article VII, to the extent that they are applicable under this Plan, shall apply only to Participants who complete an Hour of Service on or after August 23, 1984.

1.    Service On or After January 1, 1976.  Any Inactive Participant not receiving benefits on August 23, 1984, shall be given the opportunity to make a Waiver Election for a Qualified Preretirement Survivor Annuity if such Inactive Participant (i) completed at least one (1) Hour of Service with the Employer under this Plan (or a Predecessor Plan) in a Plan Year beginning on or after January 1, 1976; and (ii) had completed at least 10 Years of Vested Service when he or she terminated employment.

2.    Service On or After September 2, 1974 and Before January 1, 1976.  Any Inactive Participant not receiving benefits on August 23, 1984, who

ARTICLE VII

VII-16

CONFIDENTIAL

WH_MDL_00331872

completed at least one (1) Hour of Service with the Employer under this Plan (or a Predecessor Plan) on or after September 2, 1974, but who did not complete an Hour of Service in a Plan Year beginning on or after January 1, 1976, shall be given the opportunity to have his or her benefits paid in accordance with the distributive provisions and the Qualified Joint and Survivor Annuity provisions of this Plan in effect before August 23, 1984, as required by Section 303(e) of REACT.

Any election available to an Inactive Participant under this Paragraph D.2 may be made during the period commencing on August 23, 1984, and ending on such former Participant's Annuity Starting Date.

E.     Non-Annuity Rules.

1.     No Annuities.  If this Plan does not provide for an annuity option as selected in Article I, then the Participant shall not be entitled to the payment of his or her vested Accrued Benefit in the form of annuity.  Furthermore, the Qualified Joint and Survivor Annuity and Qualified Preretirement Survivor Annuity provisions of Paragraphs B and C of this Article VII shall not be applicable to this Plan, but all of the remaining provisions of such Paragraphs B and C relating to distribution forms and time of commencement of distributions shall be applicable to the Participant and his or her Surviving Spouse and/or Designated Beneficiary.  On the death of the Participant, all of his or her death benefit shall be paid to his or her Surviving Spouse within a reasonable time.  The Surviving Spouse may elect to receive the deceased Participant's benefits under the Plan within 90 days after the date of death.  If there is no Surviving Spouse or if the Surviving Spouse consents in writing in a manner prescribed under Paragraph A.7 of this Article VII, then the Participant's death benefit shall be paid to the Designated Beneficiary.

2.     Transferred Benefits.  Irrespective of any lack of selection of the annuity option in Article I, the Qualified Joint and Survivor Annuity and Qualified Preretirement Survivor Annuity provisions of Paragraphs B and C of this Article VII shall apply to Transferred Benefits which are neither rollover benefits nor voluntary transfers under Q&A 3 of Section 1.411(d)-4 of the Treasury Regulations.

3.     Offset of Annuity Plans.  If this Plan would not otherwise be subject to the survivor annuity requirements of Section 401(a)(11) and 417 of the Code, but its benefits are used to offset benefits in a plan subject to such requirements, than the survivor annuity requirements will apply to those Participants whose benefits are offset.

4.     QDRO Distributions.  Qualified Domestic Relations Orders may order the distribution of an Alternate Payee's interest in all or a portion of a Participant's vested Accrued Benefit to be distributed in one of the alternate forms of distribution set forth in Paragraph JJ of Article I, including without limitation, a partial or total direct

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                 WH_MDL_00331873

transfer to an Eligible Retirement Plan, if the distribution constitutes an Eligible Rollover Distribution.

F.    Time of Distribution.    Unless Article I allows Participants to defer commencement of benefits, distribution to a Participant shall occur no later than 60 days after the close of the Plan Year in which the Participant reaches Normal Retirement Age or terminates employment, whichever is later. However, the failure of a Participant and his or her Spouse, where applicable, to consent to a distribution, shall be deemed to be an election to defer the commencement of a payment of any benefits to the later of age 62 or the Normal Retirement Age. Notwithstanding anything herein to the contrary, any deferral of benefit shall not violate Sections 401(a)(9) and 415 of the Code including the failure to consent to a distribution by the Participant and the Spouse where applicable.

G.    Pre-TEFRA Designations.    Notwithstanding Paragraphs B and C of this Article VII, each Participant or his or her Designated Beneficiary who made a timely designation pursuant to Section 242(b)(2) of TEFRA shall have had the right and power to elect by written designation delivered to the Committee, the time for commencement of and the form of distribution of his or her Accrued Benefits; provided, however, that any such designation must have been consistent with the provisions of ERISA, the Code and Notice 83-23 in effect at the time the designation was made and shall comply with the spousal consent requirements of REACT; provided, further, however, that such Participant or his or her Designated Beneficiary may have selected any form of distribution available under the terms of the Plan as in effect at the time of execution of such designation and the form selected by each Participant is hereby incorporated by reference. The following form of distribution is also available pursuant to such designation, in addition to those forms of distribution set forth above by reference and elsewhere in the Plan:

Payment in a series of cash installments, not less frequently than annually, over a period of time equal to twice the future life expectancy of the Participant determined as of the date payments of benefits commence, or if the Participant is married at such date, over the greater of twice the life expectancy of the Participant or his or her Spouse. Expected return multiple Tables V and VI of Section 1.72-9 of the Treasury Regulations shall determine the number of years of future life expectancy.

If a designation is revoked subsequent to the date distributions are required to commence, the Trust must distribute by the end of the calendar year following the calendar year in which the revocation occurs the total amount not yet distributed which would have been required to have been distributed to satisfy Section 401(a)(9) of the Code and the proposed regulations thereunder, but for the Section 242(b)(2) election. For calendar years beginning after December 31, 1988, such distributions must meet the minimum distribution incidental benefit requirements in Section 1.401(a)(9)-2 of the Proposed Regulations. Any changes in the designation will be considered to be a revocation of the designation. However, the mere substitution or

ARTICLE VII VII-18

CONFIDENTIAL

addition of another Beneficiary (one not named in the designation) under the designation will not be considered to be a revocation of the designation, so long as such substitution or addition does not alter the period over which distributions are to be made under the designation, directly or indirectly (such as altering the relevant measuring life). If an amount is transferred or rolled over from one plan to another, the rules in Q&A J-2 and Q&A J-3 of Section 1.401(a)(9)-1 of the Proposed Regulations shall apply.

H.    Loans to Participants.  If allowed under Article I, the Committee may, in its sole discretion and upon written application of a Participant (or, if allowable under Article I or by the Plan's loan policy, an Inactive Participant) on a form provided by the Committee, direct the Trustee to make a loan to such Participant in accordance with the provisions of this Paragraph H.

1.    Limitation on Amount of Loan.  The total amount of such loan shall not exceed the lesser of (i) $50,000 reduced by the excess, if any, of the highest outstanding balance of loans made to the Participant from the Plan during the one (1) year period ending on the day before the date on which such loan is made, over the outstanding balance of loans from the Plan to the Participant on the date on which such loan was made or (ii) 50% of the Participant's vested Accrued Benefit. In determining such limitation, the Committee shall take into account the balance of such loan and the outstanding balance of all other loans to the Participant from the Plan or any other qualified plan of the Employer.

2.    Nondiscrimination.  The Plan's policies with respect to making any such loans shall be uniformly and non-discriminatorily applied and such loans shall not be made available to Highly Compensated Employees, officers or shareholders in an amount greater than the amount made available to other Employees.

3.    Aggregation Rules.  For purposes of the preceding subparagraphs 1. and 2., Section 414(b), (c), (m) and (o) of the Code shall apply.

4.    Committee Determination.    The Committee shall give due consideration to the type of security given for the loan and the creditworthiness of the Participant/borrower in determining whether to approve or disapprove a loan.  In no event shall the Committee be required to make any such loans.

5.    Designation of Investment in Loan.  Unless loans are designated as a directed investment of the Participant's Account pursuant to Article I, any loan or loans made to a Participant shall be treated as an investment of the Trust.

6.    Documentary Requirements.  Any loans shall be evidenced by the Participant's promissory note which shall:

ARTICLE VII                              VII-19

CONFIDENTIAL                                      WH_MDL_00331875

(a)    be for a specific term, which shall not exceed five (5) years unless the Participant certifies in writing to the Committee that the proceeds of the loan will be applied to acquire the Participant's principal residence; and

(b)    specify that the Participant's vested Accrued Benefit shall serve as security in the event of a default, plus other collateral if the Committee reasonably determines that additional collateral is necessary in order for the loan to be adequately secured; and

(c)    bear interest at the rate equal to the prevailing interest rate charged by persons in the business of lending money for loans made under similar circumstances.

7.    Loan Procedures.  The Committee shall establish a written program which contains the following information:

(a)    The identity of the person(s) authorized to administer the loan program.

(b)    A procedure for applying for a loan.

(c)    The basis on which loans will be approved or denied.

(d)    Limitations, if any, on the types and amount of the loan offered.

(e)    The procedures for determining a reasonable rate of interest.

(f)    The type of collateral which may secure a Participant's loan.

(g)    The events constituting default and causing acceleration and the steps that will be taken to preserve plan assets in the event of any such events.

8.    Other Acceleration.  In addition to any acceleration provisions contained in the promissory note, a Participant's loan shall immediately become due and payable if such Participant is entitled to and elects to receive a distribution from the Plan, other than a hardship distribution.  In this case, the Committee shall immediately request payment of the outstanding principal balance and accrued but unpaid interest on the loan.  If the Participant does not repay such amount within a reasonable time after such request, the Committee shall have the right to offset and reduce the Participant's vested Accrued Benefit which was used for security for such loan by such amount.  If the Participant's vested Accrued Benefit is less than the amount due, the Committee shall take appropriate steps to collect the balance due directly from the

ARTICLE VII                                    VII-20

CONFIDENTIAL

Participant.   Notwithstanding the foregoing, the Committee may allow an Inactive Participant who has terminated employment to elect to transfer his or her outstanding loan to a plan described in Section 401(a) or 403(a) of the Code, provided that the loan is not in default at the time of the transfer.

      9.    Procedures Upon Default.   Upon default of a loan, the Participant's Accrued Benefit shall be reduced by the outstanding principal balance of the loan plus accrued but unpaid interest.   However, if the Participant's Account is subject to the withdrawal restrictions of Section 401(k) of the Code or if this Plan is subject to Section 417 of the Code, the Participant's Accrued Benefit shall not be reduced until a distributable event occurs under the terms of the Plan.   During any time that a loan is in default under the terms of the promissory note and the borrowing Participant's vested Accrued Benefit is not distributable, such loan shall be treated as a directed investment of such Participant's Account, regardless of whether directed investments are permitted in Article I.

      10.    Spousal Consent.   If the Plan provides for distribution of benefits in the form of an annuity, and if a Participant taking a loan pursuant to this Paragraph H is married, the Committee shall require that such Participant obtain his or her Spouse's consent to the loan and the possible reduction in such Participant's Accrued Benefit. Such consent shall be obtained within the 90-day period prior to the making of the loan and shall be in writing and shall acknowledge the effect of the loan and shall be witnessed by a Plan representative or notary public.   If the Plan does not provide for annuities, spousal consent shall not be required.

    I.    Reserved.

    J.    Distributions to Incompetent Persons.   The Committee may direct the Trustee to distribute the benefits of any Participant pursuant to the instructions of any person named by such Participant in a durable power of attorney which, on its face, appears to be valid and enforceable, or a court-appointed legal guardian or conservator of such Participant.

    K.    Nonliability.   Any payment to a Participant or Designated Beneficiary, or to the legal representative of a Participant or Designated Beneficiary, in accordance with the provisions of this Plan, shall to the extent thereof be in full satisfaction of all claims under this Plan against the Trustee, the Committee and the Employer, any of whom may require such Participant, legal representative or Designated Beneficiary, as a condition precedent to such payment, to execute a receipt and release therefore in such form as shall be determined by the Trustee, the Committee, or the Employer, as the case may be.   The Employer does not guarantee the Trust, the Participants, former Participants or their Designated Beneficiaries against loss of or depreciation in value of any right or benefit that any of them may acquire under the terms of this Plan.   All of the benefits payable under

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                    WH_MDL_00331877

this Plan shall be paid or provided solely from the Trust, and the Employer does not assume any liability or responsibility for payment of such benefits.

    L.    Benefit Claims Procedure.

    1.    Applications. All applications for benefits under the Plan shall be submitted to the Committee at the Employer's principal place of business. Applications for benefits must be in writing on forms acceptable by the Committee and must be signed by the Participant and his or her Spouse, or in the case of a death benefit, by the Designated Beneficiary or legal representative of the deceased Participant. The Committee reserves the right to require the Participant to furnish proof of his or her marital status, age, and the age of his or her Spouse, if any, prior to processing any application. Each application shall be acted upon and approved or disapproved by the Committee within 90 days following its receipt by the responsible officer of the Employer. If any application for benefits is denied, in whole or in part, the Committee shall notify the applicant in writing of such denial and of his or her right to a review by the Committee and shall set forth, in a manner calculated to be understood by the applicant, the specific reasons for such denial, the specific references to pertinent Plan provisions on which the denial is based, a description of any additional material or information necessary for the applicant to perfect his or her application, an explanation of why such material or information is necessary, and an explanation of the Plan's review procedure.

    2.    Review of Denials. Any person whose application for benefits is denied in whole or in part may appeal to the Committee for a review of the decision by submitting a written statement to the Committee within 60 days after receiving written notice from the Committee of the denial of his or her claim (i) requesting a review by the Committee of his or her application for benefits; (ii) setting forth all of the grounds upon which his or her request for review is based and any facts in support of such request; and (iii) setting forth any issues or comments which the applicant deems pertinent to his or her application. The Committee shall meet as required to review appeals of denials of applications for benefits submitted to it. The Committee shall act upon each appeal within 60 days after receipt of the applicant's request for review by the Committee. The Committee shall make a full and fair review of each such application and any written material submitted by the applicant or the Employer in connection with such review and may require the Employer or the applicant to submit such additional facts, documents, or other evidence as the Committee, in its sole discretion, deems necessary or advisable in making such a review. On the basis of its review, the Committee shall make an independent determination of the applicant's eligibility for benefits under the Plan. The decision of the Committee on any application for benefits shall be final and conclusive upon all persons if supported by substantial evidence in the records.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL            WH_MDL_00331878

M.    <u>Income Tax Withholding</u>.    Distributions made under the Plan to any Participant or his or her Designated Beneficiary shall be subject to the income tax withholding rules set forth in Section 3405 of the Code and the Treasury Regulations promulgated thereunder.

N.    <u>Qualified Domestic Relations Orders</u>.    Notwithstanding anything to the contrary contained herein, the Committee shall direct the Trustee to make distribution to an Alternate Payee in accordance with a Qualified Domestic Relations Order, and such distribution may be made, notwithstanding the age or continued employment of the Participant who is a party to such Order, at any time as specified in the Order, provided the Order is filed with the court, served on the Plan, approved by the Committee and the alternate payee executes release forms, withholding forms and any other documents, forms or papers that the Committee deems necessary and desirable.

O.    <u>Overpayment of Vested Interest</u>.    If a Participant or Beneficiary is erroneously paid benefits greater than the Participant's vested Accrued Benefit, the Committee may, in its sole discretion exercised in the best interests of Participants and Beneficiaries, demand from the Participant or Beneficiary repayment of such overpayment. If the Participant or Beneficiary refuses to make repayment, the Committee may take legal action to recover the amount of the overpayment, plus interest, and costs of collection including reasonable attorneys' fees.  If the Participant returns to employment and the overpayment has not been repaid to the Plan, the Committee may offset the overpayment against future Plan benefits.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                    WH_MDL_00331879

## VIII.    TOP-HEAVY LIMITATIONS

If in any Plan Year the Plan is a Top-heavy Plan as defined in Paragraph A below, the limitations and requirements set forth in this Article VIII shall apply to the Plan, unless this is a Simple 401(k) Plan within the meaning of Section 401(k)(11) of the Code.

The Top-heavy requirement of Section 416 of the Code and Paragraph E of this Article VIII shall not apply, if the Plan consists solely of a cash or deferred arrangement which meets the requirements of Section 401(k)(12) of the Code and Matching Contributions that comply with the requirement of Section 401(m)(11) of the Code.

A.    Definitions.

1.    "Determination Date" means with respect to any Plan Year the last day of the preceding Plan Year or, in the case of the first Plan Year, the last day of such Plan Year, provided that the Employer did not previously establish another qualified plan that is part of a Required Aggregation Group.

2.    "Key Employee" means any Participant who at any time during the Plan Year containing the Determination Date is:

(a)    An officer of the Employer having Section 415 Compensation greater than $130,000 (as adjusted under Section 416(i)(I) of the Code for Plan Years beginning after December 31, 2002); provided, however, that no more than 50 Employees or, if lesser, the greater of three (3) or 10% of the Employees shall be treated as officers; provided further that if the total number of officers exceeds this limitation, only the highest compensated officers shall be included;

(b)    A 5%-Owner of the Employer;

(c)    A 1%-Owner of the Employer whose Section 415 Compensation exceeds $150,000; or

(d)    A Beneficiary of a Key Employee or a former Key Employee.

For purposes of this Paragraph A.2, Section 415 Compensation shall include amounts contributed by the Employer pursuant to a salary reduction agreement which are excludable from the Employee's gross income under Section 125, 132(f)(4), 402(e)(3), 402 (g)(3), 402(h), 403(b), 408(p)(2)(A)(i) or 457 of the Code.

ARTICLE VIII                                    VIII-1

CONFIDENTIAL                                    WH_MDL_00331880

An Employee shall be deemed a "1%-Owner" if he or she (i) owns more than one percent (1%) of the outstanding stock or owns stock possessing more than one percent (1%) of the total combined voting power of all classes of stock, if the Employer is a corporation; or (ii) owns more than one percent (1%) of the capital or profit interests in the Employer if the Employer is not a corporation. In making the determination of a 1%-Owner or a 5%-Owner, Section 416(i)(1)(B)(iii) of the Code modifies Section 318(a)(2) of the Code, the corporate attribution rule. The business aggregation rules of Section 414 of the Code shall not be applied to determine ownership in the Employer.

3. "Non-Key Employee" means any Employee who is not a Key Employee.

4. "Top-heavy Plan" means, with respect to any Plan Year, (i) any defined benefit pension plan maintained by the Employer if, as of the Determination Date, the present value of cumulative Accrued Benefits under the plan for Key Employees exceeds 60% of the present value of cumulative Accrued Benefits under the Plan for all Employees; and (ii) any defined contribution plan, other than a Simple 401(k) Plan, maintained by the Employer if, as of the Determination Date, the aggregate of the Accounts of Key Employees under the Plan exceeds 60% of the aggregate of the Accounts of all Employees under the Plan. This rule is referred to herein as the "60% Test."

5. "Top-heavy Group" means any Aggregation Group if the sum of the present value of cumulative Accrued Benefits for Key Employees under all defined benefit pension plans included in the Aggregation Group, and the sum of the accounts of Key Employees under all defined contribution plans included in the Aggregation Group, exceed 60% of a similar sum determined for all Employees. An "Aggregation Group" means either a Required Aggregation Group or a Permissive Aggregation Group.

6. "Required Aggregation Group" means each qualified plan of the Employer in which a Key Employee is a participant, and each other qualified plan of the Employer which enables the qualified plan or plans containing a Key Employee to meet the anti-discrimination requirements of Section 401(a)(4) or 410 of the Code. A Required Aggregation Group includes any qualified plan of the Employer that has terminated within the one (1) year period ending on the Determination Date.

B. Aggregation Groups.

1. Required Aggregation Group. Each qualified plan of the Employer required to be included in a Required Aggregation Group shall be treated as a Top-heavy Plan if the Required Aggregation Group is a Top-heavy Group.

ARTICLE VIII                    VIII-2

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL                                                    WH_MDL_00331881

2.    <u>Permissive Aggregation Group</u>. For purposes of determining the existence of a Top-heavy Group, the Employer may elect to include in the Required Aggregation Group any other qualified plan of the Employer not otherwise required to be included, if such Group after the election would continue to meet the anti-discrimination requirements of Sections 401(a)(4) and 410 of the Code; provided, however, that any such qualified plan will not be otherwise deemed a Top-heavy Plan by reason of such election.

If the Permissive Aggregation Group is a Top-heavy Group, each qualified plan of the Employer that is a part of a Required Aggregation Group will be considered a Top-heavy Plan. If the Permissive Aggregation Group is not a Top-heavy Group, no qualified plan in the Permissive Aggregation Group will be considered a Top-heavy Plan.

3.    <u>Plans Aggregated</u>. Only those qualified plans of the Employer in which the Determination Dates fall within the calendar year shall be aggregated to determine whether the qualified plans (or the Aggregation Group) are Top-heavy Plans (or a Top-heavy Group).

C.    <u>60% Test – Special Rules</u>. For purposes of the 60% Test, the following special rules of this Paragraph C shall apply.

1.    <u>Participant Contributions</u>. Benefits derived from both Participant contributions (whether voluntary or mandatory, but not deductible contributions) and Employer contributions shall be taken into account for the 60% Test.

2.    <u>Distributions</u>. In determining the present value of cumulative Accrued Benefits of any Participant or the Account of any Participant under the Plan (or plans which form the Aggregation Group), such present value or Account shall be increased by the aggregate of distributions made to such Participant from the Plan (or plans forming the Aggregation Group) during the one (1) year period ending on the Determination Date. For this purpose, the term "Participant" shall include an Employee who is no longer employed by the Employer. The foregoing shall also apply to distributions under a terminated qualified plan of the Employer which, if it had not been terminated, would have been required to be included in an Aggregation Group. In the case of a distribution made for reasons other than separation from employment, death, or Total Disability, this provision shall be applied by substitution five (5) year period for one (1) year period.

3.    <u>Rollover Contributions</u>. Except as otherwise provided in the Treasury Regulations, any rollover contribution or similar transfer made by an Employee to the Plan after December 31, 1983 shall not be taken into account; provided, however,

ARTICLE VIII                    VIII-3

CONFIDENTIAL    WH_MDL_00331882

that this transfer rule shall not apply to mergers or consolidations of several plans, the division of one (1) plan, or rollovers between plans of the Employer or related employers.

4.     Change of Status. The cumulative Accrued Benefit or Account of a Participant who was formerly a Key Employee, but who ceases to be a Key Employee for a Plan Year, shall not be taken into account for purposes of the 60% Test for the Plan Year in which he or she is not a Key Employee.

5.     Non-Performance of Service. The Accounts and Accrued Benefits of a Participant who has not performed services for the Employer maintaining the Plan during the one (1) year period ending on the Determination Date shall be disregarded.

6.     Determination of Present Value. The present value of cumulative Accrued Benefits under any aggregated defined benefit pension plan maintained by the Employer shall be determined by applying the actuarial equivalents set forth in such defined benefit pension plan.

7.     Determination of Accrued Benefit. Solely for the purpose of determining if the Plan, or any other plan included in a Required Aggregation Group of which this Plan is a part, is top-heavy (within the meaning of Section 416(g) of the Code) the Accrued Benefit of an Employee other than a Key Employee (within the meaning of Section 416(i)(1) of the Code) shall be determined under (i) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Controlled Group; or (ii) if there is no such method, as if such benefit accrued not more rapidly than the   slowest accrual rate permitted under the fractional accrual rate of Section 411(b)(1)(C) of the Code.

8.     Catch-Up Contributions. Catch-up contributions made in accordance with Section 414(v) of the Code with respect to the current Plan Year are not taken into account for purposes of top-heavy testing under Section 416 of the Code. However, catch-up contributions made to the Plan in prior years are taken into account in determining whether the Plan is top-heavy under Section 416 of the Code.

D.     Minimum Vesting Requirements. If the Plan is a Top-heavy Plan, then the partial vesting provisions of Paragraph A.5 of Article VI are modified to the extent necessary to provide for vesting at a faster rate during the relevant Plan Year under either of the following vesting schedules, as elected in Paragraph V of Article I:

1.     3-Year Cliff Vesting. Each Employee who has completed three (3) Years of Vested Service with the Employer shall be 100% vested in his or her Accrued Benefit.

ARTICLE VIII                    VIII-4

CONFIDENTIAL                                    **WH_MDL_00331883**

2.    <u>6-Year Graded Vesting</u>.    Each Employee shall have a non-forfeitable vested interest in his or her Accrued Benefit determined under the following schedule:

| Years of Vesting Service | Vested Percentage of the Participant's Accrued Benefit |
|---|---|
| less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 or more | 100% |

3.    <u>Limitations on Right to Amend Vesting Schedule</u>.  The limitations of Paragraph K of Article VI regarding the right to amend the vesting schedule shall apply to any change in the vesting schedule caused by the Plan becoming a Top-heavy Plan, or ceasing to be a Top-heavy Plan.

E.    <u>Minimum Benefit Requirement</u>.  If the Plan is a Top-heavy Plan, then to the extent that the Plan benefits do not meet the minimum benefit requirements set forth below, each Participant who is not a Key Employee shall be provided with such minimum benefits.  Key Employees shall share in the allocation of Top-heavy minimum benefits, if any, as described in this Paragraph E, if elected in Article I.  Such minimum benefits shall be determined without taking into account Employer contributions to or a Participant's benefits under the Social Security Act.  To the extent that the minimum benefit of any Participant is vested in accordance with Paragraph D of this Article VIII, such minimum Accrued Benefit may not be forfeited or suspended under Section 411(a)(3)(B) or 411(a)(3)(D) of the Code.

1.    <u>3% Benefit</u>.  Each Participant who is not a Key Employee shall receive an allocation of Employer contributions (and forfeitures, if applicable) of not less than three percent (3%) or such higher percentage of such Participant's Section 415 Compensation as elected in Article I; provided, however, that if there is an allocation of Employer contributions (and forfeitures, if applicable) of less than three percent (3%) of Section 415 Compensation in any Plan Year for all Key Employees, the allocation of such contributions (and forfeitures, if applicable) need not exceed the highest percentage of Section 415 Compensation at which such contributions (and forfeitures, if applicable) are allocated or required to be allocated under the Plan for any Key Employee.  Elective Contributions made by Key Employees shall be included in determining the Key Employee percentage of contribution.  If a Key Employee participates in a defined benefit plan which is included with this Plan in a Top-heavy

ARTICLE VIII                                    VIII-5

CONFIDENTIAL                                    WH_MDL_00331884

CONFIDENTIAL

WH_MDL_00331885

Group, a three percent (3%) minimum benefit will be provided to each Non-Key Employee who only participates in this Plan.

All defined contribution plans required to be included in an Aggregation Group shall be treated as one (1) plan; provided, however, that any defined contribution plan required to be included in an Aggregation Group where such plan enables a defined benefit pension plan to meet the anti-discrimination requirements of Sections 401(a)(4) and 410 of the Code shall not be taken into account.

2.    Persons Covered.    Notwithstanding anything to the contrary contained in this Plan, each person who is a Participant (other than an Inactive Participant, a Participant in an excluded class or a Participant who has waived participation under the Plan) on the last day of the Plan Year shall have allocated to his or her Employer Contribution Account the minimum benefits provided under this Paragraph E even if such Participant (i) fails to complete 1,000 Hours of Service during the Plan Year; (ii) refuses to make mandatory contributions to the Plan, if applicable; or (iii) is excluded from participation under the Plan because his or her Section 415 Compensation is less than a stated amount.

3.    Profit Sharing and Retirement Savings Plans.    Participant Elective Contributions made pursuant to Paragraph H.1 of Article I shall be taken into account in determining the minimum benefit requirements of Paragraph E of this Article VIII.

Elective Contributions shall be treated as contributions for purposes of determining the minimum contribution or benefits allocated to Key Employees under Section 416 of the Code but will not be treated as satisfying the minimum contribution or benefit requirements of Section 416 of the Code for Non-Key Employees. However, Qualified Nonelective Employer Contributions described in Section 401(m)(4)(C) of the Code may be used to satisfy minimum contribution requirements for Non-Key Employees.

For Plan Years beginning after December 31, 2001, Matching Contributions and Qualified Matching Contributions shall be taken into account for purposes of satisfying the top-heavy minimum contribution requirements of Section 416(c)(2) of the Code and the Plan. The preceding sentence shall apply with respect to Matching Contributions and Qualified Matching Contributions under this Plan or, if Article I provides that the minimum contribution requirement shall be met in another plan, such other plan. Matching Contributions that are used to satisfy the minimum contribution requirements shall be treated as Matching Contributions for purposes of the Contribution Percentage test and other requirements of Section 401(m) of the Code.

ARTICLE VIII                    VIII-6

CONFIDENTIAL

WH_MDL_00331886

F.    <u>Annual Section 415 Compensation</u>.    Section 415 Compensation shall be limited to the Compensation Limitation.

G.    <u>Multiple Plans</u>.    If this Plan is the only qualified plan of the Employer in which a Participant who is a Non-Key Employee participates, the minimum benefits required by Paragraph E.1 of this Article VIII shall be provided under this Plan.    If such Participant participates in this Plan and a defined benefit plan included in a Top-heavy Group or in another defined contribution plan of the Employer included in a Top-heavy Group, top-heavy minimum benefits shall be provided under the Plan designated in Article I.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL
WH_MDL_00331887

## IX.    DESIGNATED BENEFICIARIES

Each Participant and Inactive Participant may name a Designated Beneficiary to receive his or her death benefits by completing a form acceptable to the Committee. Participants shall have the right at any time to revoke such designation or to substitute another Designated Beneficiary.    If at the death of a Participant or a Designated Beneficiary, the name of a Designated Beneficiary or contingent Designated Beneficiary is not on file with the Committee, the Participant shall be deemed to have named the following Designated Beneficiary, in order of priority:

(i)              The Surviving Spouse (as defined in Paragraph A.5 of Article VII, without regard to the one-year marriage requirement);

(ii)             If the Participant is not survived by a Surviving Spouse, the trustees of the revocable living trust established by the Participant during his or her lifetime;

(iii)            The Participant's children, per stirpes;

(iv)            The Participant's estate.

The Committee's determination as to which persons, if any, qualify within the aforementioned categories shall be final and conclusive upon all persons.

ARTICLE IX                    IX-1

CONFIDENTIAL

## X.    CONTRIBUTIONS BY PARTICIPANTS

A.    Employee After-Tax Contributions.

1.    Eligibility.  If allowed under Article I, all Participants are eligible to make Employee After-Tax Contributions to the Plan by submitting an application on forms acceptable to the Committee.  All such applications shall include the Participant's acceptance of the relevant terms and conditions of this Plan.  If such contributions are to be made by payroll deduction, such application shall state the Participant's designation of the proportion of his or her Section 415 Compensation which he or she shall contribute, and his or her consent to the withholding of such contributions by the Employer.  Contributions may also be made by the Participant in a single-sum form by direct contribution.   A Participant may continue to make Employee After-Tax Contributions throughout the period he or she is a Participant; provided, however, that a Participant shall have the absolute right to discontinue payroll deduction Employee After-Tax Contributions as of the end of any month following the month in which he or she gives written notice thereof to the Employer.

2.    Amount of Contributions.  A Participant may contribute to the Trust such amounts as he or she shall determine as set forth in his or her written election; provided, however, that such amounts shall not exceed the limitations of Paragraph E of Article V.  A Participant may change the amount of his or her Employee After-Tax Contributions withheld by payroll deduction once during each Plan Year, and any other time permitted by the Committee, with respect to future contributions by filing a written election with the Committee.

3.    Collection of Contributions.   All contributions received by the Employer, whether by withholding or by direct payment from the Participant, shall be paid over by the Employer to the Trustee.

B.    Rollover Contributions.  If allowed under Article I, any Employee who is a Participant during any Plan Year, or any Employee who the Committee reasonably anticipates will become a Participant, may make qualified Rollover Contributions to the Plan.  If the Committee shall determine, subsequent to any such contribution, that such contribution did not in fact constitute a qualified Rollover Contribution, the amount of such contribution shall be returned to the Employee as soon thereafter as reasonably practicable.  Any such qualified Rollover Contributions shall be allocated and held on behalf of the Participant in a Rollover Contribution Account.  Said Account shall be deemed a part of the Participant's Accrued Benefit and shall be subject to the distribution provisions of Article VII of the Plan.

ARTICLE X                                        X-1

CONFIDENTIAL                                                          WH_MDL_00331889

If provided in Article I, this Plan will accept Rollover Contributions and direct rollover of Eligible Rollover Distributions from the types of plans specified in Article I, beginning on the effective date specified in Article I.

C.     Separate Administration and Accounts for Participant Contributions. The Employee After-Tax Contributions and the Rollover Contributions of a Participant shall be accounted for separately.     The Committee shall establish an Employee After-Tax Contribution Account for each Participant's Employee After-Tax Contributions and a Rollover Contribution Account for his or her Rollover Contributions. Unless Participant Directed Accounts are allowed under Article I, a Participant's Employee After-Tax Contribution Account and Rollover Contribution Account shall be invested in the general Trust Fund. On each Valuation Date, the Committee shall determine the fair market value of such Accounts and (subject to the following sentence) shall allocate income or losses to the respective Accounts in proportion to the amounts therein as of the Valuation Date. For the purpose of allocating income and losses, the Accounts to which Participants' contributions are allocated shall be valued by including only a portion of current year contributions and taking into account Participant withdrawals, which portion shall be determined on a weighted basis by considering the length of time (in complete months) since the making of the contribution (or withdrawal) in relation to the number of complete months elapsed since the last Valuation Date.

D.     Vesting.     A Participant's Employee After-Tax Contribution Account and Rollover Contribution Account shall at all times be fully vested.

E.     Withdrawal of Contributions.     The balance of the Employee After-Tax Contribution Account as of any Anniversary Date may be withdrawn upon 90 days written notice to the Committee, severance of employment being automatically deemed such notice; provided, however, that such 90 day period may be extended by the Committee to satisfy liquidity needs of the Trust. Any Participant who withdraws 90% of his or her Employee After-Tax Contribution Account within one (1) Plan Year must withdraw his or her entire Employee After-Tax Contribution Account and shall be ineligible to make Employee After-Tax Contributions for the period ending on the Anniversary Date following one (1) year from the date of the last such withdrawal. If this Plan is subject to Section 417 of the Code, the withdrawal of all or any portion of a Participant's Employee After-Tax Contributions shall be subject to the annuity provisions of Article VII of the Plan.

F.     Distribution of Rollover Contribution Accounts.     When a Participant terminates employment for any reason, his or her Rollover Contribution Accounts shall be distributed to him or her (or in the case of death, to his or her Designated Beneficiary) in the form designated by the Participant as required pursuant to the provisions of Article VII of the Plan. If elected in Article I, a Participant may receive his or her Rollover Contribution Account prior to termination of employment.

ARTICLE X                    X-2

CONFIDENTIAL

G.    <u>Limitations on Section 401(m) Contributions</u>.

1.    <u>Contribution Percentage Limitation</u>.

(a)    The amount of Qualifying Section 401(m) Contributions made on behalf of the group consisting of Highly Compensated Employees shall not result in an Actual Deferral Percentage that exceeds the greater of the following:

(i)    The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the current Plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the current or the preceding Plan Year, as elected in Article I, multiplied by 1.25; or

(ii)    The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the current or the preceding Plan Year, as elected in Article I, multiplied by two (2); provided that the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the current or preceding Plan Year, as elected in Article I, by more than two (2) percentage points or such lesser amount as the Secretary of the Treasury shall prescribe to prevent the multiple use of this alternative limitation with respect to any Highly Compensated Employee.

(b)    For the first Plan Year in which the Plan (other than a successor plan) provides for a Matching Contribution or After-Tax Employer Contribution, the Average Contribution Percentage of Non-Highly Compensated Employees under the prior year testing method shall be either three percent (3%) or the Average Contribution Percentage of the Non-Highly Compensated Employees for such Plan Year as elected in Article I.

If the Plan provides for the prior year testing method, the Average Contribution Percentage shall be determined without regard to changes in the group of Non-Highly Compensated Employees who are Eligible Participants during the testing year.

2.    <u>Matching Contributions</u>.    If elected in Article I, Matching Contributions may be made to the Plan.  Such Matching Contributions shall be allocated in accordance with Article I.

ARTICLE X                    X-3

CONFIDENTIAL

3.    Safe Harbor Matching Contributions and Safe Harbor Nonelective Employer Contributions.    If Safe Harbor Matching Contributions or Safe Harbor Nonelective Employer Contributions are made to this Plan, the Average Contribution Percentage shall be deemed satisfied but only with respect to Matching Contributions provided that the following requirements are met:

(a)    Each Non-Highly Compensated Employee who is eligible to receive an allocation of Safe Harbor Matching Contributions or Safe Harbor Nonelective Employer Contributions under the Plan must be an Eligible Participant under the Plan's cash or deferred arrangement;

(b)    The Plan provides for a Safe Harbor Matching Contribution formula as described in either Section 401(k)(12)(B)(i) of the Code (the "Basic Matching Formula" as described in Article I) or Section 401(m)(11)(B)(ii) of the Code (the "Enhanced Matching Formula" as described in Article I); provided, however, that with respect to the Enhanced Matching Formula in Article I, the Safe Harbor Matching Contributions are only made with respect to Elective Contributions or Employee After-Tax Contributions that do not exceed six percent (6%) of the Employee's Compensation and no other required Matching Contributions are provided under this Plan. Alternatively, the Plan provides for a Safe Harbor Nonelective Employer Contribution formula that satisfies Section 401(k)(12)(C) of the Code and any required Matching Contributions do not exceed six percent (6%) of Compensation;

(c)    Matching Contributions made at the Employer's discretion on behalf of any Participant may not exceed a dollar amount greater than four percent (4%) of such Participant's Compensation and are only made with respect to Elective Contributions or Employee's After-Tax Contributions that do not exceed six percent (6%) of the Participant's Compensation;

(d)    If Safe Harbor Matching Contributions are made on a payroll period method rather than on an annual method, then such Safe Harbor Matching Contributions must be contributed to the Plan by the last day of the following Plan Year quarter; and

(e)    Safe Harbor Matching Contributions must also satisfy the requirements of Paragraph F of Article IV.

4.    Simple 401(k) Plan.    A Simple 401(k) Plan shall not be subject to the Contribution Percentage limitation.

5.    Special Rules.

ARTICLE X                                    X-4

CONFIDENTIAL                                    WH_MDL_00331892

(a)    For purposes of determining the Contribution Percentage limitation, Employee After-Tax Contributions are taken into account for a Plan Year in which such amounts were contributed to the trust or paid to an agent of the Plan and transmitted to the trust within a reasonable time after the payment to the agent. Excess Contributions that are recharacterized are taken into account as Employee After-Tax Contributions for the Plan Year that includes the period for which such Excess Contributions are includable in the gross income of the Employee.

(b)    A Matching Contribution or Safe Harbor Matching Contribution will be taken into account under the Contribution Percentage limitation for the Plan Year only if such contribution is (i) allocated to the Employee's Account under the terms of the Plan as of any date within the Plan Year; (ii) actually paid to the trust no later than the end of the 12-month period beginning on the date after the close of the Plan Year; and (iii) made on behalf of the Employee on account of such Employee's Elective Contributions or Employee After-Tax Contributions for the Plan Year. Safe Harbor Matching Contributions may be allocated only to Non-Highly Compensated Participants. Matching Contributions and Safe Harbor Matching Contributions that do not satisfy all of the preceding requirements of this subparagraph (b) may not be taken in account for purposes of the Average Contribution Percentage limitation. Instead, the contribution must satisfy Section 401(a)(4) of the Code without regard to the special non-discrimination rule in this paragraph for the Plan Year in which allocated as if they were irrevocable contributions and were the only Nonelective Employer Contributions made for the Plan Year.

(c)    A Matching Contribution with respect to an Elective Contribution for a Non-Highly Compensated Employee is not taken into account under the Actual Contribution Percentage limitation to the extent such Matching Contribution exceeds the greater of (i) five percent (5%) of the Employee's Compensation; (ii) the Employee's Elective Contributions to the Plan Year; and (iii) the product of two (2) times the Plan's representative matching rate, as described is Section 1.401(m)-2(a)(5)(ii)(B) and (C) of the Treasury Regulations, and the Employee's Elective Contributions for the Plan Year.

H.    <u>Correction of Excess Aggregate Contributions</u>.    If the Committee recharacterizes Excess Contributions as described in Paragraph J.5 of Article IV, the recharacterized amount shall be subject to the Contribution Percentage limitation of Section 401(m) of the Code. Excess Contributions recharacterized as Employee After-Tax Contributions shall be included in determining the amount of Excess Aggregate Contributions for the Plan Year that ends with or within the Plan Year for which the Contribution Percentage limitation is applied.

The Committee may correct Excess Aggregate Contributions by distributing the Excess Aggregate Contributions and income allocated thereto to the

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL                                                      WH_MDL_00331893

appropriate Highly Compensated Employee after the close of the Plan Year but not more than 12 months after the close of the Plan Year. The return of Excess Aggregate Contributions to the Highly Compensated Employee shall be determined using the same method applied to the return of Excess Contributions.

The Committee may correct Excess Aggregate Contributions by the forfeiture of nonvested Matching Contributions (and income allocable thereto). Such forfeitures shall be made only to the extent necessary to avoid failure of the Contribution Percentage limitation. The forfeiture of Excess Aggregate Contributions to the Highly Compensated Employee shall be determined using the same method applied to the return of Excess Contributions.

I.    Reserved.

J.    Distribution of Income. Any distribution or forfeiture of Excess Aggregate Contributions must include the income or loss allocated to such contributions. Allocable income or loss includes income or loss both from the Plan Year in which the Contribution Percentage limitation was exceeded and for the gap period between the end of the Plan Year and the date of distribution. Allocable income or loss for the Plan Year is determined by multiplying the income or loss for the Plan Year allocable to Qualifying Section 401(m) Contributions by a fraction, the numerator of which is the Excess Aggregate Contributions made on behalf of an Employee for the Plan Year and the denominator of which is the total Account balance attributed to Qualifying Section 401(m) Contributions as of the end of the Plan Year minus the income or plus the loss allocable to such account balance for the Plan Year. The Committee may determine the allocable income or loss for the gap period by using the fractional method, as prescribed in the preceding sentence, for the period between the end of the Plan Year and the last day of the month preceding the distribution date that is allocable to Qualifying 401(m) Contributions. Alternatively the Committee may determine income or loss for the gap period under a safe-harbor method, under which income on Excess Aggregate Contributions for the gap period is equal to 10% of the income or loss allocable to Excess Aggregate Contributions calculated under the fractional method as described above in this paragraph for the Plan Year, times the number of calendar months between the end of the Plan Year and the date of distribution counting whole months only and treating distributions made on or before the 15th day of the month as made on the last day of the preceding month and distributions made after the first 15 days of the month as occurring on the first day of the next month. Notwithstanding the preceding, for Plan Years beginning prior to the effective date of Final Treasury Regulations under 401(k) of the Code as elected in Article I, or if no election is made, no later than Plan Years beginning after December 31, 2005, the Committee can exclude gap period that is allocated to the Participant's Accounts distribution so long as such exclusion is applied consistently to all Participants and corrective distributions for the Plan Year. For Plan Years in which Final Treasury Regulations under 401(k) are effective gap period income can only be excluded as permitted under Section 1.401(k)-(2)(b) of the

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL

Treasury Regulations. The income allowable to Excess Aggregate Contributions resulting from the recharacterization of Elective Contributions shall be determined and distributed as if such recharacterized Elective Contributions had been distributed as Excess Contributions.

For Plan Years in which the Final Treasury Regulations under 401(k) of the Code are effective, if gap period income is required to be allocated, the Committee may determine the income allocable to Excess Aggregated Contributions on a date that is no more than seven (7) days before the distribution.

A distribution of Excess Aggregate Contributions is not includible in gross income to the extent it represents a distribution of designated Roth Contributions. However, the income allocable to a corrective distribution of Excess Aggregate Contributions that are designated Roth Contributions are included in gross income in the same manner as income allocable to a corrective distribution of Excess Aggregate Contributions that are not designated as Roth Contributions.

K.    Coordination with Section 401(a)(4) of the Code.  Matching Contributions attributable to Employee After-Tax Contributions or Elective Contributions which are returned to the Highly Compensated Employee shall not remain allocated to the Highly Compensated Employee. The distribution of a matched Employee After-Tax Contribution or Elective Contribution to a Highly Compensated Employee must include the corresponding Matching Contribution. Unmatched Employee After-Tax Contributions shall be distributed first. To the extent necessary, matched Employee After-Tax Contributions shall be distributed, in which case the distribution must be made proportionately from the matched and Matching Contributions. A Matching Contribution that is forfeited to cover an Excess Aggregate Contribution is not taken into account under the Contribution Percentage limitation.

If an Elective Contribution is returned to a Highly Compensated Employee and a corresponding Matching Contribution relates to such Elective Contribution, the Committee may forfeit such Matching Contribution regardless of vesting in order to satisfy Section 401(a)(4) of the Code.

L.    Additional Qualified Nonelective Employer Contributions.  Rather than returning Excess Aggregate Contributions, the Committee, in its sole discretion, may make additional Qualified Nonelective Employer Contributions or may apply Elective Contributions to satisfy the Contribution Percentage limitation provided that the Qualified Nonelective Employer Contributions and Elective Contributions that will be treated as Matching Contributions are made with respect to Employees who are Eligible Participants under the Plan

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                    WH_MDL_00331895

1.    <u>Conditions for Additional QNECs</u>.  Qualified Nonelective Employer Contributions will be treated as Matching Contributions only if the additional requirements described below are satisfied:

(a)    The Nonelective Employer Contributions including Qualified Nonelective Employer Contributions treated as Matching Contributions shall satisfy Section 401(a)(4) of the Code and Section 1.401(a)(4)-1(b)(2) of the Treasury Regulations.

(b)    The Nonelective Employer Contributions excluding Qualified Nonelective Employer Contributions treated as Matching Contributions for the Contribution Percentage limitation and Qualified Nonelective Employer Contributions treated as Elective Contributions for the Actual Deferral Percentage limitation shall satisfy Section 401(a)(4) of the Code and Section 1.401(a)(4)-1(b)(2) of the Treasury Regulations.

(c)    If the Employer is applying the special rule for employer-wide plans in Section 1.414(r)-1(c)(2)(ii) of the Treasury Regulations with respect to a cash or deferred arrangement, the determination of whether the Qualified Nonelective Employer Contributions satisfy the requirements of subparagraphs (a) and (b) of this Paragraph L must be made on an employer-wide basis regardless of whether the plans to which the Qualified Nonelective Employer Contributions are made are satisfying the requirements of Section 410(b) of the Code on an employer-wide basis.  Conversely, in the case of an employer that is treated as operating qualified separate lines of business, and does not apply the special rule for employer-wide plans in Section 1.414(r)-1(c)(2)(ii) of the Treasury Regulations with respect to a cash or deferred arrangement, then the determination of whether the Qualified Nonelective Employer Contributions satisfy the requirements of subparagraphs (a) and (b) of this Paragraph L is not permitted to be made on an employer-wide basis regardless of whether the plans to which the Qualified Nonelective Employer Contributions are made are satisfying the requirements of Section 410(b) of the Code on that basis.

(d)    The Elective Contributions including those treated as Matching Contributions for purposes of the Contribution Percentage limitation shall satisfy Section 401(k)(3) of the Code.

(e)    Qualified Nonelective Employer Contributions shall be allocated to the Employee within the Plan Year, and the Elective Contributions shall relate to Compensation for the Plan Year or Compensation that would have been received within 2½ months after the Plan Year and are allocated within the Plan Year.

(f)    The plan which treats Qualified Nonelective Employer Contributions and Elective Contributions as Matching Contributions and the plan to

ARTICLE X                                    X-8

CONFIDENTIAL                                                        WH_MDL_00331896

which the Qualified Nonelective Employer Contributions and Elective Contributions are made must have the same Plan Year. If the Plan Year is changed to satisfy this requirement, such contributions may be taken into account during the Short Plan Years only if they could have been taken into account under the Contribution Percentage limitation for a plan with the same Short Plan Year.

(g)     If the Employer has elected to apply the prior year testing method to calculate the Contribution Percentage limitation, Qualified Nonelective Employer Contributions must be made no later than twelve (12) months following the last day of the Plan Year preceding the current Plan Year to satisfy the Contribution Percentage limitation. If the Employer has elected to apply the current year testing method to calculate the Contribution Percentage limitation, Qualified Nonelective Employer Contributions must be made no later than twelve (12) months following the close of the current Plan Year to satisfy the Contribution Percentage limitation.

(h)     Effective as stated in Article I, Qualified Nonelective Employer Contributions cannot be taken into account for a Plan Year for a Non-Highly Compensated Participant to the extent such contributions exceed the product of that Non-Highly Compensated Participant's Compensation and the greater of (i) five percent (5%) or (ii) two (2) times the Plan's representative contribution rate. Any Qualified Nonelective Employer Contribution taken into account under the Actual Deferral Percentage limitation under Paragraph J.4 of Article IV (including the determination of the representative contribution rate for purposes Section 1.401(k)-2(a)(6)(iv)(B) of the Treasury Regulations), is not taken into account for purposes of this Paragraph L (including the determination of the representative contribution rate for purposes of this subparagraph (h)).

For purposes of this subparagraph (h), the Plan's representative contribution rate is the lowest applicable contribution rate of any eligible Non-Highly Compensated Participant among a group of eligible Non-highly Compensated Participants that consists of half of all eligible Non-Highly Compensated Participants for the Plan Year (or, if greater, the lowest applicable contribution rate of any eligible Non Highly Compensated Participant in the group of all eligible Non-Highly Compensated Participant for the Plan Year and who is employed by the Employer on the last day of the Plan Year).

The applicable contribution rate for an eligible Non-Highly Compensated Participant is the sum of the Matching Contributions taken into account under this Paragraph L for the eligible Non-Highly Compensated Participant for the Plan Year and the Qualified Nonelective Employer Contributions made for that eligible Non-Highly Compensated Participant for the Plan Year, divided by that eligible Non-Highly Compensated Participant's Compensation for such Plan Year.

ARTICLE X                              X-9

CONFIDENTIAL                                                    WH_MDL_00331897

Notwithstanding this subparagraph (h), Qualified Nonelective Employer Contributions that are made in connection with an Employer's obligation to pay prevailing wages under the Davis-Bacon Act, Service Contract of 1965 or similar legislation, can be taken into account for a Plan Year to the extent such contributions do not exceed ten percent (10%) of the Non-Highly Compensated Participant's Compensation.

2.    Qualified Nonelective Employer Contributions Not Taken Into Account.  Qualified Nonelective Employer Contributions can not be taken into account under this Paragraph L to the extent such contributions are taken into account for purposes of satisfying any other Actual Deferral Percentage limitation, Contribution Percentage limitation, or the requirements of Sections 1.401(k)-3, 1.401(m)-3 or 1.401(k)-4 of the Treasury Regulations.

M.    Correction of Excess Aggregate Contribution Prior to the Plan Year.  If the Committee determines that the Contribution Percentage is being exceeded during the Plan Year, the Committee may suspend the group of Highly Compensated Employees by suspending Matching Contributions or Employee After-Tax Contributions or any other contributions which result in additional contributions under Section 401(m) of the Code to satisfy the Contribution Percentage limitation.  The Committee shall give notice to such Employees of the amounts to be reduced.  The determination of the reduction shall be made in accordance with the same method used for the return of Excess Aggregate Contributions or on a pro rata basis as determined by the Committee.

N.    Coordination with Correction of Excess Contributions and Excess Deferrals.  The determination of the amount of Excess Aggregate Contributions with respect to a Plan Year shall be made after determining the Excess Contribution, if any, to be treated as an Employee After-Tax Contribution due to recharacterization under Section 401(k) of the Code for the Plan Year subject to Section 401(k) of the Code ending with the Plan Year being tested under Section 401(m) of the Code.  Excess Aggregate Contributions attributed to amounts other than Employee After-Tax Contributions, including forfeited Matching Contributions, shall be treated as Employer Contributions for purposes of Sections 404 and 415 of the Code even if distributed from the Plan.

O.    Aggregation Rules for Section 401(m) Contributions.

1.    In General.  If the Employer maintains two (2) or more plans to which Employee After-Tax Contributions or Matching Contributions are made, then the plans may be considered as a single plan for purposes of determining whether or not such plans satisfy Sections 401(a)(4), 401(m) or 410(b) of the Code, other than Section 410(b)(2)(A) of the Code.  In such case, the aggregated plans must satisfy the Contribution Percentage limitation with respect to the amount of the Employee After-Tax Contributions    and    Matching    Contributions    and    additionally    must    satisfy

ARTICLE X                           X-10

CONFIDENTIAL                                                  WH_MDL_00331898

Sections 401(a)(4) and 410(b) of the Code as though such aggregated plans were a single plan. Whenever a Highly Compensated Employee is eligible under two (2) or more plans of the Employer which are subject to Section 401(m) of the Code, in calculating the Contribution Percentage limitation, the actual contribution ratio of such Highly Compensated Employee will be determined by treating all such plans in which such Highly Compensated Employee is an Eligible Participant as a single plan.

For purposes of this Paragraph O, the term plan means a plan within the meaning of Section 1.410(b)-7(a) and (b) of the Treasury Regulations, after application of the mandatory disaggregation rules of Section 1.410(b)-7(c) of the Treasury Regulations and the permissive aggregation rules of Section 1.410(b)-7(d) of the Treasury Regulations, as modified by Paragraph O.4 of this Article X. Thus, if two (2) plans are treated as a single plan pursuant to the permissive aggregation rules of Section 1.410(b)-7(d) of the Treasury Regulations, then such plans are treated as a single plan for purposes of Sections 401(k) and 401(m) of the Code.

2.    <u>Plans with Inconsistent 401(k) Testing Methods</u>. In applying the permissive aggregation rules of Section 1.410(b)-7(d) of the Treasury Regulations, an Employer may not aggregate plans within the meaning of Section 1.410(b)-7(b) of the Treasury Regulations that apply inconsistent testing methods. Thus, a plan that applies the current year testing method may not be aggregated with another plan of the Employer that applies the prior year testing method. Similarly, an Employer may not aggregate a plan using the safe harbor provisions of Section 401(m)(11) of the Code and another plan that is required to be tested under Section 401(m)(2) of the Code.

3.    <u>Disaggregation of Plans and Separate Testing</u>. If Employee After-Tax Contributions or Matching Contributions are included in a plan within the meaning of Section 1.410(b)-7(b) of the Treasury Regulations that is mandatorily disaggregated under Section 410(b) of the Code (as modified by Paragraph O.4 of this Article X), the Employee After-Tax Contributions or Matching Contributions must be disaggregated in a consistent manner. Thus, in the case of an Employer that is treated as operating qualified separate lines of business under Section 414(r) of the Code, if the eligible Employees under a plan which provides for Employee After-Tax Contributions or Matching Contributions are in more than one qualified separate line of business, only those Employees within each qualified separate line of business may be taken into account in determining whether each disaggregated portion of the plan complies with the requirements of Section 401(m) of the Code, unless the Employer is applying the special rule for employer-wide plans in Section 1.414(r)-1(c)(2)(ii) of the Treasury Regulations with respect to the plan. Similarly, if a plan provides for Employee After-Tax Contributions or Matching Contributions under which Employees are permitted to participate before they have completed the minimum age and service requirements of Section 410(a)(1) of the Code applies Section 410(b)(4)(B) of the Code for determining whether the plan complies with Section 410(b)(1) of the Code, then the plan must be

ARTICLE X

X-11

CONFIDENTIAL                                                                WH_MDL_00331899

treated as two separate plans, one comprising all eligible employees who have met the age and service requirements of Section 410(a)(1) of the Code and one comprising all eligible Employees who have not met the age and service requirements of Section 410(a)(1) of the Code unless the Plan uses the rule that allows for the aggregation of all eligible Employees regardless of age and service.

Restructuring under Section 1.401(a)(4)-9(c) of the Treasury Regulations may not be used to satisfy the requirements of Section 401(m) of the Code.

4.    Certain Disaggregation Rules Not Applicable.    The mandatory disaggregation rules relating to Section 401(k) plans and Section 401(m) plans set forth in Section 1.410(b)-7(c)(1) of the Treasury Regulations and an employee stock ownership plan and non-employee stock ownership plan portions of a plan set forth in Section 1.410(b)-7(c)(2) of the Treasury Regulations shall not apply for purposes of this Paragraph O.  Accordingly, notwithstanding Section 1.410(b)-7(d)(2) of the Treasury Regulations, an employee stock ownership plan and a non-employee stock ownership plan which are different plans (within the meaning of Section 1.410(b)-7(b) of the Treasury Regulations) are permitted to be aggregated for purposes of Section 401(m) of the Code.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

WH_MDL_00331900

## XI.    LIFE INSURANCE POLICIES

A.    <u>Investment and Ownership of Life Insurance Policies</u>.  The Committee may direct the Trustee to purchase life insurance policies on the life of a Participant or on a member of the Participant's family or on the joint life expectancy of a Participant and a member of the Participant's family.  The Trustee shall be the applicant for any policies purchased, and each Participant for whom such policy is purchased shall direct in writing that the Trustee shall be recognized by the insurer as the owner of the policy having the power to exercise all rights, privileges, options, elections and other incidents of ownership granted by or permitted under the policy.  The Trustee may also be named as the Beneficiary in the application for such policy; provided, however, that the Participant shall have the right to nominate the Designated Beneficiary pursuant to Article IX of the Plan. Upon the death of the Participant, the Trustee shall pay all proceeds of the policies to the Participant's Designated Beneficiary or if there is no Designated Beneficiary then in accordance with Article IX.

B.    <u>Payment of Premiums</u>.  Upon receipt of notice of the premiums due the insurer for the initial premium on policies purchased pursuant to this Article XI and upon direction of the Committee, the Trustee shall pay such premiums to said insurer.  The policies shall be delivered to the Trustee, and any notices of premiums falling due under such policies thereafter shall be addressed to and such premiums shall be paid by the Trustee.

C.    <u>Accounting for Policies</u>.  The value of any policies purchased by the Trustee pursuant to this Article XI shall be included in the annual valuations of the Plan.

D.    <u>Discrimination</u>.  To the extent that policies are purchased, there shall be no discrimination between Participants as to the form, optional methods of settlement, or other provisions of said policies.  However, any Participant may refuse any offer to purchase contracts for his or her benefit.  Such refusal must be in writing and, when tendered, shall satisfy the anti-discrimination intent of the first sentence of this Paragraph D.

E.    <u>Disposition Upon Retirement or Total Disability</u>.  If any Participant with respect to whom a policy is held by the Trustee ceases to be a Participant as a result of termination of employment  (other than by death) on or after Normal Retirement Age or Total Disability, the Trustee pursuant to the direction and discretion of the Committee shall either  (i) dispose of, or convert, such policy or policies to the extent necessary or desirable in order that the proceeds of such disposition or conversion may be used to provide retirement or disability benefits to the Participant in accordance with the provisions of this Plan; or (ii) distribute such policy or policies to the Participant, provided such policy complies with Paragraph B.4(b) of Article VII.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                                    WH_MDL_00331901

F.    <u>Disposition Upon Other Separation From Service</u>.  Death benefits payable from policies on the life of a Participant shall cease as of the date of the Participant's separation from service for any reason other than death, Total Disability or termination of employment on or after Normal Retirement Age.  In such event, the Trustee, subject to the direction and discretion of the Committee, shall make one (1) of the following dispositions of such policy or policies:

1.    Surrender each such policy to cash or designate itself as Beneficiary of each such policy.

2.    Offer to such Participant all such policies at a price (hereafter referred to as the "purchase price") equal to the cash value if the policy is whole life or accumulation value if the policy is interest sensitive or universal life.  If the Participant accepts such offer, the purchase price shall be charged against his or her vested interest in that portion of the value of his or her Accrued Benefit not represented by such policies, and any excess of such purchase price over such vested interest shall be paid by the Participant to the Trustee in cash within 10 days after accepting such offer.  If the offer is so accepted and any required payment made, the Trustee shall transfer ownership of such policies to such Participant.  If such Participant does not accept such offer within 30 days after written notice from the Committee, the Trustee shall take such action as the Committee may direct to liquidate such policies in order to distribute to such Participant the amount to which he or she is entitled pursuant to this Plan.

3.    Effect a policy loan upon all such policies from the insurer on the sole security of the policies in an amount determined by applying to the then cash value of each such policy a percentage equal to the excess of 100% over the percent vested in such Participant in accordance with the schedule of vesting set forth in this Plan.  The loan proceeds shall go to and become the property of the Trust, and the Trustee shall, after effecting such loan, deliver such policy to the Participant subject to such loan.

G.    <u>Policy Loans</u>.  Except as provided in Paragraph F.3 of this Article XI, policy loans under the loan provisions, if any, may be made by the Trustee proportionately against all contracts held by the Trust and solely for the purpose of paying premiums under such contracts.  No loan shall be made on any policy on the life of any Participant to pay premiums on the life of any other Participant.

H.    <u>Insurer Not a Party</u>.  The insurer shall not be deemed a party to this Plan, and its obligation shall be measured and determined solely by the terms of its policies. The insurer shall deal with the Trustee as the sole and absolute owner of the policies, and the insurer shall be under no obligation of inquiring or determining whether any action or failure to act on the part of the Trustee is in accordance with or authorized by the terms of this Plan.  The insurer shall be fully discharged from any and all liability for any action taken or any amount paid in accordance with the direction of the Trustee, and the insurer

ARTICLE XI                    XI-2

shall not be obligated to see to the distribution or application of any money so paid. The insurer shall be fully discharged of all liability in dealing with the Trustee, as indicated on its records, until such time as it shall receive satisfactory evidence of the appointment and acceptance of a successor Trustee.

I.    Reserved.

J.    Insurance Limitations. If the Committee directs the Trustee to purchase life insurance, the following limitations shall apply:

1.    The cumulative premium for ordinary life insurance contracts shall be less than 50% of the aggregate Employer contributions allocated to any Participant;

2.    The cumulative premium for term and universal life insurance shall be less than 25% of the aggregate Employer contributions allocated to any Participant;

3.    The cumulative premium for a combination of ordinary life insurance and term and universal life insurance contracts shall be less than 25% of the aggregate Employer contributions allocated to any Participant. However, for purposes of this Paragraph J.3, 50% of the premium paid for the ordinary life insurance policies shall be excluded from the calculations.

4.    If the level annual premiums (with respect to a Participant) required to be paid on account of life insurance policies exceed the limitations described in this Paragraph J, then at the election of the Committee:

(a)    Employee contributions of the Participant, if available, shall be used to sustain the level of such premiums, and if not available, the insurer shall adjust the face amount of the policies to a basis consistent with the reduced contributions applicable to payment of premiums and shall credit resulting excess cash values to succeeding premiums due under the policies; or

(b)    The Committee may direct the Trustee to request the insurer to convert the existing insurance policies to paid-up policies other than term insurance and issue new policies for the lower premiums at the attained age of the Participant; or to pay over the entire cash values to the Trustee upon surrender of the policies.

ARTICLE XI

XI-3

BROAD FINANCIAL (800) 395-5200

XII.   TRUST

A.    Payment of Contributions.  All contributions under this Plan shall be paid to the Trustee to be held in trust under a Trust Agreement executed by the Employer and the Trustee, which Trust Agreement shall be incorporated herein by this reference.

B.    Participant Directed Accounts.  If allowed under Article I, each Participant shall have the right and power to direct the investment of all assets of the designated Accounts which have been allocated to and set aside in his or her name.  Such power to direct investments shall be made in accordance with the provisions of the Trust Agreement and shall not include the power to invest in "collectibles" as defined in Section 408(m) of the Code and may be limited as described in the following paragraph.

The Committee may establish nondiscriminatory rules and procedures relating to Participants directing investments, Participants selecting brokers, Participants appointing investment managers and Plan fiduciaries meeting their duties under ERISA Section 404(c) and its regulations.

The Committee shall have the sole discretion to modify and replace any and all of these rules and procedures without further amendment to the Plan or Trust. The Committee shall notify the Trustee and Participants within a reasonable time after the adoption of any change to these rules and procedures.  Inactive Participants are solely responsible for informing the Committee of current addresses where changes in these rules and procedures may be sent.

The Participant's right to direct the investment of their Accounts may be limited by the Committee's selection of investment options.  The Committee shall have the sole discretion to delete or substitute investment options without further amendment to the Plan or Trust.  Notice shall be given to Participants within a reasonable time after the adoption by the Committee of any changes in investment options.  Inactive Participants shall have the sole responsibility for keeping the Committee informed of their current addresses for the Committee's use in informing such Inactive Participants of any changes in investment options.

C.    Expenses Charged to Participants' Accounts.

1.    Loans.  For the processing and preparation of loan documents.

2.    QDROs.  For the review and processing of a Qualified Domestic Relations Order.

3.    Distribution Calculations.  To calculate the different distribution options available under the Plan.

ARTICLE XII                                        XII-1

CONFIDENTIAL                                                          WH_MDL_00331904

4.    <u>Hardship Withdrawals</u>.  For the processing and determination of a hardship withdrawal.

5.    <u>Periodic Payments</u>.  For each distribution made to a Participant who has elected to receive his or her retirement benefits on a periodic basis.

6.    <u>Inactive Participants' Accounts</u>.  To the extent not paid by the Employer, reasonable administrative expenses attributed to vested Participants who have separated from service but have yet to commence payments of their retirement benefits may be charged to their Accounts.  Such expenses shall be applied to such Participants' Accounts on either a pro rata basis or per capita basis as determined by the Committee.

7.    <u>Expenses of Administration</u>.  To the extent not paid by the Employer, reasonable administrative expenses may be charged to the Participant's Accounts on a pro rata basis or per capita as determined by the Committee.

D.    <u>Prudent Man Rule</u>.  Subject to Sections 403 (c) and (d), 404 (c) 4042 and 4044 of ERISA, a fiduciary shall discharge her of her duties with respect to the Plan solely in the interest of its Participants and Beneficiaries and shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                    WH_MDL_00331905

XIII.    THE ADMINISTRATIVE COMMITTEE

A.    Committee Membership.   The Sponsoring Employer shall appoint an administrative Committee of one (1) or more persons, some or all of whom may be officers or involved in management of the Employer; provided, however, that the Committee may be comprised of members of the Board, and the Employer may designate its Board to serve as the Committee as the same may be constituted from time to time.   The Committee is granted broad discretion to interpret and construe the Plan and to carry out its responsibilities hereunder.   The Employer shall certify to the Trustee the names and specimen signatures of the members of the Committee.   The Committee shall serve at the pleasure of the Employer and any members of the Committee may resign by written instrument addressed to the Employer and may be removed by the Employer with or without cause. While a vacancy exists, the remaining member(s) of the Committee may perform any act which the Committee is authorized to perform.

B.    Named Fiduciary and Plan Administration.   The Sponsoring Employer is the named fiduciary, administrator of the Plan, and agent to receive service of legal process and, except as otherwise provided for herein, shall have full authority and discretion to control and manage the operation and administration of the Plan and to interpret the Plan.   The Committee, as agent for the administrator and subject to the administrator's approval, shall make such rules, regulations, interpretations and computations and shall take such other action to administer the Plan as the Committee may deem appropriate in its sole and exclusive discretion.   The Committee shall administer the Plan in a non-discriminatory manner consistent with the requirements of Section 401(a) of the Code.  The Committee shall resolve by majority vote all questions involving the interpretation, application and administration of the Plan.  The Committee's resolution of such questions shall be final and binding upon the Participants, their Beneficiaries, and the successors, assigns, heirs and personal representatives of any of them and shall be entitled to judicial deference and shall be upheld unless found to be arbitrary and capricious.  Subject to the provisions of Paragraph B of Article XII and the Committee's right to delegate responsibility as set forth in the Trust, the Committee shall direct the investment of the assets of the Trust by written direction to the Trustee.

C.    Compensation.    The members of the Committee shall receive no compensation for acting as such, but the Employer shall reimburse the Committee for all necessary and proper expenses incurred in administering this Plan.

D.    Delegation of Duties.  The Committee may, from time to time, allocate to one (1) or more of its members and may delegate to any other persons or organizations any of its rights, powers, duties and responsibilities with respect to the operation and administration of the Plan. Any such allocation and delegation of responsibilities shall be reviewed at least annually by the Committee and shall be revocable upon such notice as the Committee, in its sole discretion, deems reasonable and prudent under the

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                                        WH_MDL_00331906

circumstances.  The Committee, on its own behalf or on behalf of the Trustee, may employ such persons or organizations to render advice or perform services with respect to responsibilities of the Committee under the Plan as the Committee, in its sole discretion, determines to be necessary and appropriate; provided, however, that the Committee must employ an enrolled actuary to perform the actuarial functions required by ERISA.  Such persons or organizations may include, without limitation, attorneys, accountants and financial and administrative consultants.

All or any portion of the expenses incurred for such services or advice shall be borne by the Employer, if it so elects, and if the Employer does not so elect, such expenses shall be borne by the Trust.  Expenses incurred for the administration of the Plan shall be deemed a liability of the Plan until such time as the expenses are paid by the Plan either as direct payments to the service providers or as reimbursements to the Employer in cases where the Employer has directly paid the service providers; provided, however, that reimbursements paid to the Employer must occur by the last day of the Plan Year following the later of the Plan Year during which such services were performed or the Plan Year during which the Employer paid such expenses.

E.    Bonding of Fiduciaries.  The Committee shall be responsible for seeing that every fiduciary of the Plan and Trust and every person who handles Trust assets shall be bonded to the extent required by the provisions of Section 412 of ERISA.  The cost of such bond shall be paid by the Trustee out of Trust assets, upon direction of the Committee, if the cost thereof shall not be timely paid by the Employer.

F.    Action By Committee Members.  If the Committee is comprised of more than one (1) member, any one (1) member may execute any form, document or other paper on behalf of the Committee and thereby bind the Committee, if the Board or the other Committee members unanimously delegate such authority in writing.

ARTICLE XIII                    XIII-2

BROAD FINANCIAL  (800) 395-5200

## XIV.   AMENDMENT AND TERMINATION; RETURN OF EMPLOYER CONTRIBUTIONS; PARTICIPATING EMPLOYERS

A.     Amendment.  The Sponsoring Employer reserves the right to amend this Plan by written instrument, at any time and from time to time, in whole or in part, including without limitation, retroactive amendments necessary or advisable to qualify this Plan and the Trust under the provisions of Section 401(a) of the Code.   However, no such amendment shall (i) reduce the Accrued Benefit of any Participant to the date the amendment is adopted, except to the extent that a reduction may be permitted or required by ERISA and the Code; or (ii) divert any part of the Trust assets to purposes other than for the exclusive benefit of the Participants, retired Participants or their joint annuitants or Beneficiaries who have an interest in the Plan or for the purpose of defraying reasonable expenses of administering the Plan.   Further, no amendment of the Plan shall alter, change or modify the duties, powers or liabilities of the Trustee without its consent, or permit any part of the Trust to be used to pay premiums or contributions of the Employer under any other plan maintained by the Employer for the benefit of its Employees.

If this Plan is an amendment and restatement of a prior Plan that provided for an optional form of benefit after July 30, 1994 that is not provided herein, and such form of benefit cannot be eliminated under Section 411(d)(6) of the Code and Treasury Regulations issued pursuant thereto, then such optional form of benefit shall continue to be available under this Plan to the extent necessary to satisfy Section 411(d)(6) of the Code.

B.     Authority of Volume Submitter   Practitioner to Amend for Adopting Employers.  The Volume Submitter Practitioner within the meaning of Revenue Procedure 2005-16 is the entity (including any successor entity) that has received an IRS opinion letter on the lead documents.  Effective on and after the date of the Volume Submitter Practitioner advisory letter, the Volume Submitter Practitioner may amend the plan on behalf of all adopting employers, including those employers who have adopted the plan prior to the amendment, for changes in the Code, regulations, revenue rulings, other statements published by the Internal Revenue Service, including model, sample or other required good faith amendments and for corrections of prior approved plans, but only if their adoption will not cause such plan to be individually designed.  These amendments will be applied to all employers who have adopted the plan, except for any plan that does not permit amendments by the Volume Submitter Practitioner in Article I of such plan.  The Volume Submitter Practitioner will maintain, or have maintained on its behalf, a record of the employers that have adopted the plan, and the volume practitioner will make reasonable and diligent efforts to ensure that adopting employers have actually received and are aware of all plan amendments and that such employers adopt new documents when necessary.

BROAD FINANCIAL (800) 395-5200

CONFIDENTIAL                                                               WH_MDL_00331908

C.    <u>Impact of Change To Individually Designed Plan</u>.  The Volume Submitter Practitioner will no longer have the authority to amend the plan on behalf of any adopting employer as of either:  (1) the date the Internal Revenue Service requires the employer to file Form 5300 as an individually designed plan as a result of an employer amendment to the plan to incorporate a type of plan not allowable in the IRS volume submitter program, as described in Revenue Procedures 2005-16, or (2) as of the date the plan is otherwise considered an individually designed plan due to the nature and extent of the amendments. If the employer is required to obtain a determination letter for any reason in order to maintain reliance on the volume advisory letter, the practitioner's authority to amend the plan on behalf of the adopting employer is conditioned on the plan receiving a favorable determination letter.

D.    <u>Termination or Partial Termination or Complete Discontinuance of Contributions</u>.  The Employer has established the Plan with a bona fide intention and expectation that it will be able to make contributions indefinitely.  Nevertheless, the Employer is not and shall not be under any obligation or liability whatsoever to continue making contributions or to maintain the Plan for any given length of time.  The Employer may in its sole and exclusive discretion discontinue such contributions, or terminate or partially terminate the Plan in accordance with its provisions, the Code and ERISA, if applicable, at any time without any liability whatsoever for any such discontinuance, termination or partial termination.  If the Plan shall be terminated, partially terminated or the contributions of the Employer shall be completely discontinued, the rights of all affected Participants in their Accrued Benefits shall thereupon become fully vested and nonforfeitable notwithstanding any other provisions of this Plan.  However, the Trust shall continue until all Participants' Accounts have been completely distributed to or for the benefit of the Participants or their Designated Beneficiaries in accordance with this Plan, unless the Board specifies that distributions shall occur as a result of such Plan termination.

Notwithstanding the foregoing, in the event the Plan is terminated, the administrative Committee shall remain in existence and all of the provisions of the Plan which in the opinion of said Committee are necessary to effectuate the termination of the Plan and the administration and distribution of Plan benefits shall remain in force.  In addition, the Board of Directors and the Committee reserve the right to further amend or modify the Plan, including the adoption of any retroactive amendments or modifications, to the extent necessary or desirable to effectuate the termination of the Plan or if necessary or appropriate to qualify or maintain the Plan and the Trust Fund as a plan and trust meeting the requirements of Sections 401(a) and 501(a) of the Code or any other applicable law (including ERISA) and the Regulations issued thereunder, and any amendment necessary or advisable to conform the Plan to prior administrative practice shall be retroactive.

CONFIDENTIAL

E.    Return of Employer Contributions.  Except as set forth in Paragraphs E.1, 2, 3 and 4 of this Article XIV, the assets of the Plan and Trust shall never inure to the benefit of the Employer and the same shall be held for the exclusive purpose of providing benefits to Participants and their Designated Beneficiaries and defraying reasonable expenses of administering the Plan and Trust.

1.    Mistake of Fact.  If a contribution is made by the Employer by a mistake of fact, the Trustee shall, on written direction of the Committee, return such contribution to the Employer, provided such return of contribution is made within one (1) year after the payment of such contribution.

2.    Initial Qualification.  Employer contributions shall be conditioned on the initial qualification of the Plan under Section 401 of the Code.  If it is finally determined that the Plan is not initially qualified by the Commissioner of Internal Revenue, then such contributions shall be returned to the Employer no later than one (1) year after such final determination but only if the application for determination was filed by the time prescribed by law for filing the Employer's return for the taxable year in which the Plan is adopted or such later date as the Secretary of the Treasury may prescribe.

3.    Deductibility.  Employer contributions shall be conditioned upon the deductibility of such contributions under Section 404 of the Code.  If such deductions are disallowed, then such contributions (to the extent disallowed) shall be returned to the Employer no later than one (1) year after the final disallowance of the deductions.

4.    Suspense Accounts.  If, upon termination of the Plan, there remain Trust assets held in suspense accounts because of the application of Section 415 of the Code, the Trustee shall return such assets to the Employer.

F.    Procedure for Adoption and Withdrawal by Participating Employers.

1.    Adoption of the Plan.  Any member or future member of the Controlled Group, which is not already a Participating Employer under this Plan may, with the consent and approval of the Sponsoring Employer, adopt this Plan as a Participating Employer for all or any classification of persons in its employ.  The adoption of this Plan by a Participating Employer shall be effected by resolution of its board of directors or other written instrument if the Participating Employer is an Unincorporated Entity.  It shall not be necessary for any adopting Participating Employer to formally execute the Plan or Trust as then in effect.  As to the Participating Employer, the effective date of its participation shall be stated in its resolutions, and it shall assume all the rights, obligations and liabilities of a Participating Employer under the Plan and Trust.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                                                    WH_MDL_00331910

2.    <u>Withdrawal from the Plan</u>.  At any time, a Participating Employer, by resolution of its board of directors and notice to the Sponsoring Employer and Trustee, may withdraw from participation under the Plan.  A withdrawing Participating Employer may arrange for the continuation of this Plan and Trust in a separate form for its own employees.    The withdrawing Participating Employer may arrange for continuation of the Plan and Trust by merger with an existing plan and trust and may request, subject to the Sponsoring Employer's consent, the transfer to such plan and trust of all Trust assets representing the benefits of its employees.

3.    <u>Continued Qualification of the Plan</u>.  The Sponsoring Employer may request a determination from the appropriate District Director of the Internal Revenue Service to the effect that the Plan and Trust as adopted (and amended, as the case may be) by the Participating Employer continues to meet the requirements of tax-qualified status.    If such determination is denied, the adoption by the Participating Employer shall become void and inoperative and any contributions made by or for the Participating Employer shall be promptly refunded by the Trustee.  Furthermore, if the Plan or the Trust in its operation becomes disqualified under the Code for any reason because of the Plan's adoption by any Participating Employer, the portion of the Trust allocable to Participants employed by such Participating Employer shall be segregated as soon as is administratively feasible, pending the:

(a)    Correction of the conditions which caused the Plan's disqualification to the satisfaction of the Internal Revenue Service; or

(b)    Re-qualification of the Plan; or

(c)    Withdrawal of such Participating Employer from the Plan and a continuation by itself or its successor of a separate qualified plan, or by merger with another existing qualified plan; or

(d)    Termination of the Plan and Trust as to such Participating Employer and its Employees.

ARTICLE XIV                           XIV-4



CONFIDENTIAL                                        **WH_MDL_00331911**

## XV.    STANDARD OF CONDUCT OF FIDUCIARIES

A.    <u>Fiduciaries</u>.  Each member of the Board and of the Committee and any other person to whom any fiduciary responsibility with respect to the Plan or Trust is allocated or delegated shall discharge his or her duties and responsibilities with respect to the Plan or Trust in accordance with the standards set forth in Section 401(a)(1) of ERISA and Paragraph B of this Article XV.

B.    <u>Fiduciary Duties</u>.  Subject to Sections 403(c) and (d), 4042, and 4044 of ERISA, a fiduciary shall discharge his or her duties with respect to the Plan solely in the interest of the Participants and Beneficiaries and:

1.    For the exclusive purpose of:

(a)    Providing benefits to Participants and their Beneficiaries; and

(b)    Defraying reasonable expenses of administering the Plan;

2.    With the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

3.    By diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

4.    In accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of this title.

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL

## XVI.   MERGERS, CONSOLIDATIONS AND TRANSFERS OF ASSETS

A.      <u>Merger or Consolidation of the Plan</u>.  If this Plan and its Trust merge or consolidate with, or transfer assets or liabilities to, any other qualified plan of deferred compensation, no Participant shall, solely on account of such merger, consolidation or transfer, be entitled to a benefit on the date following such event which is less than the benefit to which he or she was entitled on the date preceding such event, such benefits to be determined as if the Plan had terminated on the date preceding such event (except that there shall be no grant of full vesting).

B.      <u>Transfers From Other Qualified Plans – Rollovers</u>.  There may be transferred to the Trustee, subject to the approval of the Employer, all or any of the assets held (whether by a trustee, custodian or otherwise) on behalf of any other plan which satisfies the applicable requirements of Section 401(a) of the Code, or any qualified Rollover Contributions which are maintained for the benefit of any persons who are or are about to become Participants.  The Employer may require proof that a prior determination was made by the Internal Revenue Service that such transfer will not affect the qualified status of the Plan and Trust.  Any such transfer of assets or Rollovers shall be held and administered in accordance with Article X of the Plan.

C.      <u>Transfer To Eligible Retirement Plans</u>.  Upon direction of the Participant delivered to the Committee, the Trustee is hereby authorized to transfer the assets representing the Vested Accrued Benefit of any Participant under this Plan to the Trustee of an Eligible Retirement Plan.

D.      <u>Transfer or Merger of Money Purchase Pension Plan to this Plan</u>.  Notwithstanding any provision of this Plan to the contrary, to the extent that any optional form of benefit under this Plan permits a distribution prior to Normal Retirement Age, death, disability, severance from employment or Plan termination, such optional form of benefit shall not be available with respect to benefits attributable to assets (including the earnings thereon) and liabilities that are transferred, within the meaning of Section 414(l) of the Code, to this Plan from a money purchase pension plan qualified under Section 401(a) of the Code (other than any portion of those assets and liabilities attributable to voluntary employee contributions).

BROAD FINANCIAL  (800) 395-5200

CONFIDENTIAL                                    **WH_MDL_00331913**

XVII.  MISCELLANEOUS

A.  <u>Limitation of Rights and Employment Relationship</u>.  Neither the establishment of the Plan and Trust nor any modification thereof, nor the creating of any fund or account, nor the payment of any benefits shall be construed as giving to any Participant or other person any legal or equitable right against the Employer or the Trustee except as provided in the Plan and Trust Agreement; and in no event shall the terms of employment of any Employee or Participant be modified or in any way be affected by the provisions of the Plan or Trust Agreement.

B.  <u>Payments to Missing Persons</u>.  If the Trustee is unable to effect deliver of any distribution to the person entitled to receive it or, upon such person's death, to such person's Designated Beneficiary, it shall so advise the Committee and the Committee shall give written notice to such person at his or her last known address as shown in the Employer's records.  If such person shall not have presented himself or herself to the Employer after one (1) year from the date of mailing such notice, then such distribution shall be forfeited and applied to reduce current and future Employer contributions and allocated if Article I so provides. Alternatively, the Trustee shall have the discretion to use other means to protect the Participant's or Beneficiary's vested Accrued Benefit.  A missing Participant's vested Accrued Benefit shall be reinstated if a claim is later made by the Participant or Beneficiary of the Participant for the forfeited benefit and such claim is approved by the Committee.

C.  <u>Spendthrift Provisions</u>.  Except with respect to a Participant loan, neither the Employer nor the Trustee shall recognize any transfer, mortgage, pledge, hypothecation, order or assignment by any Participant or Beneficiary of all or any part of his or her interest under the Plan and Trust. Any attempt by a Participant or Beneficiary to assign, alienate, sell, transfer, pledge or encumber his or her benefits shall be void.  A Participant's or Beneficiary's interest shall not be subject in any manner to transfer by operation of law, and shall be exempt from the claims of creditors or other claimants (including but not limited to, debts, contracts, liabilities or torts) from all orders, decrees, levies, garnishments and/or executions and other legal or equitable process or proceedings against such Participant or Beneficiary to the full extent which may be permitted by law.

Notwithstanding the foregoing, this Paragraph C shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a Qualified Domestic Relations Order within the meaning of Section 414(p) of the Code and Section 206(d)(3) ERISA, if applicable.  The Committee shall determine whether any domestic relations order submitted with respect to a Participant's benefits is a Qualified Domestic Relations Order and shall establish procedures for making such determination and notifying interested parties of its ruling.  A domestic relations order entered into before January 1, 1985 (i) shall be treated as a Qualified Domestic

ARTICLE XVII                          XVII-1

BROAD FINANCIAL  (800) 395-5200

Relations Order if the payment of benefits pursuant to the order has commenced as of such date; or (ii) at the Committee's discretion, may be treated as a Qualified Domestic Relations Order if the payment of benefits has not commenced as of January 1, 1985, even though the order does not satisfy the requirements of Section 414(p) of the Code.

D.    Indemnification.    The Employer shall indemnify and hold harmless the members of the Board of Directors and the Committee to whom any fiduciary responsibility with respect to the Plan is allocated or delegated, from and against any and all liabilities, costs and expenses incurred by such persons as a result of any act, or omission to act, in connection with the performance of their duties, responsibilities and obligations under the Plan and under ERISA, other than such liabilities, costs and expenses as may result from the bad faith or criminal acts of such persons.

E.    Applicable Laws; Severability.    The provisions of the Plan shall be construed and enforced according to ERISA and the Code and, to the extent applicable, according to the laws of the state in which the Sponsoring Employer maintains its principal place of business; provided, further, that if any provision is susceptible to more than one (1) interpretation, such interpretation shall be given thereto as is consistent with the Plan being a qualified employees' profit sharing or pension plan within the meaning of the Code. If any provision of this instrument shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions shall continue to be fully effective.

F.    Inapplicability of Certain Provisions if Plan is Not an ERISA Plan. Notwithstanding any other provision of the this Plan, at such times that the Plan is not an "employee benefit plan," within the meaning of Section 3(3) of ERISA, or is not subject to Part 4 of Title I of ERISA, Paragraphs B and D of Article XII, Paragraph E of Article XIII, the entirety of Article XV, and any reference in this Agreement to ERISA shall be inapplicable: provided however, to the extent any provision of the foregoing Paragraphs or Articles is required to be retained for the purpose of the Plan being tax-qualified under Section 401(a) of the Code or avoiding a prohibited transaction under Section 4975 of the Code, such provision shall remain applicable but only for such purpose.

The Employer has executed this Plan on the 1st Day of February , 20 13 .

RJM Capital LLC

By: _____
Richard J Markowitz

ADDRESS:

█████████

New York, NY 10028

ARTICLE I                                                                 I-1

CONFIDENTIAL