# LIONBRIDGE

STATE OF NEW YORK )
)
) ss
COUNTY OF NEW YORK )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Danish into English of the attached document U.2020.1923H –

SKM2020.179.HRH. I affirm that the linguist responsible for producing this translation is fluent

in both the Danish and English languages.

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me

this 5th day of June , 20 22 .

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

U.2020.1923
U.2020.1923
SKM2020.179.HR

*The buyers of a company were to be taxed on share dividends, which, after the transfer had been paid to the Seller as part of the purchase price. Binding administrative practice not proven. SKAT (Skatteforvaltningen [the Danish Customs and Tax Administration]) could reverse the payment of withheld dividend tax.*

*Taxes 21.3, 7.3, and 7.6.*

A transferred all shares in a company, X A/S, to his three daughters. The transfer took place with tax succession, and the payment to A was therefore tax-exempt for A, cf. Section 34(2) of the Danish Capital Gains Tax Act (*Aktieavancebeskatningslov*, ABL). Part of the purchase price was corrected by A reserving to receive the first DKK 48 million of the dividend in X A/S that was distributed after the transfer. Shortly thereafter, in the general meeting of X A/S, which involved the three daughters as shareholders, it was decided that the ca. DKK 48 million would be distributed in dividends, which were paid to A less withheld dividend tax. Subsequently, A requested a refund of the withheld dividend tax, which SKAT, S, complied with. Later, S ruled that A should repay the dividend tax, as S was of the opinion that the dividend was taxable under A's daughters, and that the dividend tax that X A/S had incurred should therefore be attributed to them. During a case against S, A claimed that S was obliged to acknowledge that he was entitled to have the dividend tax paid. The question therein was whether there was a taxable dividend for the daughters. The Danish Supreme Court (*Højesteret*, H) noted that Section 16A(2)(1), cf. (1) of the Danish Tax Assessment Act (*ligningslov*, LL) states that everything that is distributed as dividends to current shareholders is taxable income, unless otherwise determined. A's daughters were shareholders at the time the dividend was distributed, and the right to the dividend therefore essentially accrued to them. According to the agreement with A on the transfer of the shares, the dividend was to be used for partial payment of the purchase price the daughters were set to pay for the shares, and, as such, the dividend was to be paid to him. The Danish Supreme Court found that under these circumstances, by transferring the right to the dividends, the daughters could not be released from the obligation to pay dividend tax.

**1924**

Therefore, the daughters must be regarded as proper recipients of income from the dividend and must pay taxes on it.[1] A had not demonstrated a binding administrative practice, according to which dividends are not taxed by the shareholders in such a situation.[2] Since the dividend was thus to be taxed in the daughters' names, the dividend tax should not have been paid to A, and S was thus in principle entitled to claim the amount back. There were no such special circumstances that could justify a derogation from this.[3]

**H.D. March 12, 2020 in Case BS-31096/2019-HJR (1ˢᵗ Division)**
(Thomas Rørdam, Henrik Waaben, Lars Hjortnæs, Lars Apostoli, and Anne Louise Bormann).

*The Danish Ministry of Taxation (Skatteministeriet, SKM) (Steffen*

*Sværke, Attorney, Copenhagen)*
against
*A (Michael Serup, Attorney, Aarhus)*

**Judgment of the High Court of Western Denmark (4ᵗʰ Division), July 2, 2019, BS- 28325/2018-VLR**
High Court Judges Henrik Bjørnager Nielsen, Thomas Klyver, and Solveig Bloch Madsen (acting) participated in the decision of the case.
The case was brought before the Court in Esbjerg on April 3, 2018. By order of July 12, 2018, the case was referred to the Danish High Court pursuant to Section 226(1) of the Code of Civil Procedure (*retsplejelov*).
The case concerns the repayment of the dividend tax of DKK 13,071,647, which was included in connection with a dividend distribution in November 2014 of a total of DKK 48,413,505 from X A/S, and which was later paid to A. The case concerns review of SKAT's May 13, 2016 ruling against A, in which SKAT determined that the dividend distribution was taxable and that the payment of the dividend tax had taken place on an incorrect basis.

**Allegations**
The Applicant, A, has filed a claim that the Defendant, the Danish Ministry of Taxation, be ordered to acknowledge that A is entitled to a refund of excess tax for the 2014 income year of DKK 13,071,647 plus interest in accordance with the Interest Act (*rentelov*) from the partial payments of the amount to the Danish Tax Agency in three equal installments on August 11, 2016, August 25, 2016, and September 23, 2016, respectively, until repayment is completed.
The Danish Ministry of Taxation has claimed acquittal.

**Statement of the case**
*Background of the case*
On November 7, 2014, as part of the implementation of a generational change, A transferred all the shares in X A/S (hereinafter, "the Company") to his three daughters, B, C, and D, at one third to each. The daughters were each transferred shares at a nominal DKK 6,666,667.
The transfer took place in accordance with identical transfer agreements entered into with each of the daughters. The transfer agreements included, inter alia:
"…
3. Valuation and correction
3.1. The value of the Capital Shares was agreed at a total of DKK 41,428,511.
3.1.1. The shares in the Company have not been subject to trading within the past 12 months. Consequently, the market value of the shares is not known, so the value is calculated in accordance with the calculated tax price for all shares in the Company, cf. Circular no. 185 of November 17, 1982 and the Danish Tax Agency's statement in the Journal of Taxes (*Tidsskrift for skatter*, TfS) 1997.599.
3.1.2. Price calculation is attached as an appendix…
3.2. The purchase price for the Capital Shares is corrected as follows:

| Purchase price (item 3.1) | DKK 41,428,511 |
| Liability (item 3.2.1) | DKK 10,290,676 |
| Reserved dividend (item 3.2.2) | DKK 16,137,835 |
| Borrower's note (item 3.2.3) | DKK 5,000,000 |

---

[1] Bill no. L79 of November 16, 2005 alm. bem. (almindelig bemyndigelsepkt [general jurisdiction]), item 2.3 as well as jurisdiction over Section 11, no. 4, Den juridiske vejledning 2014-2, Section C.B.3.1, V 1986.772 H, U 1999.1994 H, SKM 2003.282.LSR, Jan Pedersen, et al.: Danish Tax Council 2, 8. ed. (2018), p. 511, Aage Michelsen, et al.: Lærebog om indkomstskat [Income tax

textbook], 18. ed. (2019), p. 715, Svend Erik Holm in RR.SM.2003.237, Bodil Christiansen and Tommy V. Christiansen in Vidensportalen V.dk, published on October 29, 2019, and Inge Langhave in SR.2019.284.
[2] U 2017.1474 H and U 2017.2052 H.
[3] U 2011.2235 H and SKM 2018.9.LSR.

Copyright © 2020 Karnov Group Denmark A/S

| Donation (item 3.2.4) | DKK 10,000,000 |
| In total | DKK 41,428,511 |

3.2.1 The Buyer succeeds in the Seller's tax liability, which relates to the Capital Shares, cf. Section 34 of the Danish Capital Gains Tax Act, which is why a liability must be calculated in accordance with Section 33D of the Danish Withholding Tax Act (*kildeskattelov*, KSL). The liability is calculated at DKK 10,290,676, cf. appendix…

3.2.2. The Seller receives the first DKK 16,137,835 of the dividend that accrues to the Capital Shares after the transfer. The Seller's dividend right is denounced to the Company. By binding reply, no later than August 19, 2013, SKAT has confirmed that such a reserved right to dividends must be regarded as part of the Seller's sale price, cf. SKM 2003.282, and that the dividend has no tax consequences for the Buyer.

3.2.3. The Buyer issues the Seller an interest-free letter of demand of DKK 5,000,000. The Seller gives the Buyer a gift of DKK 10,000,000. The gift is provided free of tax, as the Seller pays the gift tax.

3.2.4. The Seller gives the Buyer a gift of DKK 10,000,000. The gift is provided free of tax, as the Seller pays the gift tax.

…

**1925**

*8. Tax conditions*

8.1. The transfer takes place with tax succession in accordance with the provisions of the Capital Gains Tax Act and the Danish Withholding Tax Act on succession transfers. The conditions set in Section 34(1) of the Capital Gains Taxation Act are met.

8.2. The transfer takes place under the following conditions:

8.2.1. That SKAT does not dispute that Section 34 of the Danish Capital Gains Tax Act and Section 33D of the Danish Withholding Tax Act apply with the transfer of the Capital Shares.

8.2.2. That no taxation is triggered by any of the parties or by the parties' related parties, cf. Section 2 of the Danish Tax Assessment Act, in addition to the ordinary gift taxation of the parties that follows from the value of the gift set in item 3.2.3.

8.2.3. That SKAT does not dispute that the reserved dividend right in item 3.2.2 must be considered part of the Seller's sale price, and thus does not trigger any form of taxation on the Seller or gift tax, and that the distribution of the reserved dividend has no tax consequences for the Buyer.

8.3 If SKAT, in accordance with a final and unappealed ruling, corrects the value of the Capital Shares for tax purposes, the correction must be offset by adjusting the value of the Capital Shares in accordance with the final ruling. The adjusted value is corrected (after adjustment of the liabilities, cf. item 3.2.1) at the Seller's choice by adjusting the reserved dividend right, cf. item 3.2.2, or the issued borrower's note, cf. item 3.2.3. However, both the Seller and the Buyer must be entitled to withdraw from the Agreement, in which case would lapse if 1) the stipulated value of the Capital Shares is increased by more than DKK 100,000, 2) the transfer triggers taxation of the reserved dividend right, or 3) the transfer is regarded as an integral part of an overall disposition that triggers taxation in addition to that provided in item 8.2.2.

8.4. If SKAT, in accordance with a final and unappealed ruling, determines that Section 34 of the Danish Capital Gains Tax Act and Section 33D of the Danish Withholding Tax Act do not apply to the transfer of the Capital Shares, any of the Parties is entitled to demand that the transfer of the Capital Shares lapse.

…"

On November 7, 2014, SKAT was notified of the taxable gift, which was part of the transfer, cf. items 3.2 and 3.2.4 of the Agreement.

On November 28, 2014, a special general meeting of the Company was held. Based on the minutes of the general meeting, the following, inter alia, is clear:

"…

The total share capital was represented by B, D, and C, and it was unanimously resolved to approve the legality of the general meeting.

Furthermore, A and E participated.

The following proposals from the shareholders were available for processing:

l. Distribution of advance dividend to A of DKK 48,413,505. E was chosen as Chair of the meeting.

*On 1:*

In November 2014, as part of a generational change of X A/S, A transferred the entire share capital to B, D, and C.

As part of the consideration, A reserved the dividend of DKK 48,413,505, so he would then receive the first DKK 48,413,505 of the dividend distributed by the Company after the transfer.

The general meeting unanimously approved the distribution of DKK 48,413,505 and referred below to the separately prepared tax reservation dated November 28, 2014 regarding the distribution of the dividend.

The general meeting authorized E to notify the tax authorities of the agreed dividend and to be responsible for the payment of the dividend tax.

…"

On December 8, 2014, the Company reported the dividend distribution to SKAT. That same day, the Company paid the withheld dividend tax of DKK 13,071,646, corresponding to 27% of the dividend distribution.

The practice of the tax authorities in relation to reserved dividends In binding responses dated June 14, 2011, September 28, 2012, and August 19, 2013 to other taxpayers, SKAT has related to taxation of reserved dividend rights with the Buyer in connection with the transfer of companies with tax succession pursuant to Section 34 of the Danish Capital Gains Tax Act. SKAT has confirmed that the Buyer is not liable to tax on amounts the Seller receives in accordance with the reserved dividend rights.

The binding response dated August 19, 2013, which is referred to in the November 7, 2014 transfer agreements between A and his daughters, states, inter alia, the following:

"Binding response

…

*Question 1:*

Can it be confirmed that the value of the reserved dividend rights is to be attributed to S1 and S2's taxable transfer price, respectively, for the transfer of the shares in the Companies?

*Question 2:*

Can it be confirmed that S1 and S2 are not liable to tax on amounts they each receive in accordance with the reserved dividend rights when the transfer takes place with tax succession, cf. [Section] 34 of the Danish Capital Gains Tax Act?

*Question 3:*

Can it be confirmed that K1, K2, K3, and K4 are not liable to tax on amounts received by S1 and S2, respectively, in accordance with the reserved dividend rights?

**1926**

*Response:*

*Question 1:*

Yes

*Question 2:*

Yes

*Question 3:*

Yes

U.2020.1923H - SKM2020.179.HRH

See SKAT's reasoning for the response below.

…

*Your opinion and reasoning for this*
In your request, you stated:
*Question 1*
It must be assumed that the reserved dividend right is part of the overall agreement on the financing of the transfers of the shares in the Companies from S1 and S2 to their respective sons.

This is stated in the transfer agreements (Appendix…), where it is assumed for the total transfer that the financing takes place both by the sons' takeover of a liability, by a gift, and by the reserved dividend right.

As stated in the Danish Legal Guide 2013-1 C.B.2.1.5.5, it is established administrative practice that such a reserved dividend is included in the Seller's transfer price.

As such, it must be assumed that the dividend right and its equalization cannot be qualified as a dividend, but must instead be considered part of S1's and S2's total transfer price for the capital shares in the Companies.

Thus, the question should be answered in the affirmative.

*Question 2*
Based on Section 34(2) of the Danish Capital Gains Tax Act, the transferor is not taxed on the gain on the transfer if the parties decide to transfer with tax succession, cf. Section 34(1). Instead, the acquirer enters into the transferor's tax position.

Since S1, S2, and the respective sons have decided to apply Section 34(2) of the Danish Capital Gains Tax Act, S1 and S2 shall not be taxed on any gain on the transfer. This tax exemption is general and also includes dividends that must be included in S1 and S2's tax transfer price, cf. Question 1.

Thus, Question 2 should be answered in the affirmative.

*Question 3*
It must be assumed that S1 and S2, in accordance with the transfer agreements, have retained the right to dividends to the extent stipulated.

As the sons have at no time acquired the right to the reserved dividend, the dividend can also not be attributed to their taxable income, cf. Section 4 of the Danish State Tax Act (*statsskatteloven*). Thus, the questions should be answered in the affirmative.

I note for the sake of good order that SKAT has twice now taken a position on a similar question, cf. binding responses dated June 14, 2011 and September 28, 2012 attached as appendices… Furthermore, I note that the Danish State Tax Act's concept of income also forms the basis for what is, in administrative practice, the permanently recognized generational change model, where the share capital is divided into class A and class B shares with advance dividend rights for the class A shares. The dividend right reserved for the class A shares can correspondingly not be attributed to the taxable income of the acquirer of the class B shares. To this end, I refer, for example, to SKM 2010.516, where the Danish Tax Council (*Skatteråd*, SR) confirmed that the establishment of an advance dividend right would not trigger tax consequences of any kind for the class A and class B shareholder, respectively. Thus, Question 3 should be answered in the affirmative.

SKAT's reasoning for the response
SKAT can agree with what was stated by the representative under the "Your opinion and reasoning for this" section, and can therefore answer the questions asked in the affirmative.

This response presupposes that the parties meet the requirements of Section 34 of the Danish Capital Gains Tax Act.

…"
The three binding responses are all addressed to Attorney Michael Serup, who was an adviser in the cases. A memorandum from SKAT dated July 6, 2013 refers to a phone conversation that took place on December 3, 2012 regarding the binding response dated September 28, 2012, in which a SKAT employee informed on of Attorney Michael Serup's employees that it had to be considered whether payment of dividend can be considered to have passed to the Buyer, who becomes liable to dividend tax thereof, and who then passes the dividend amount tax-exempt to the Seller as part of the transfer price, and that the binding response dated September 28, 2012 cannot be given weight in another case concerning the advance dividend right. Subsequently, SKAT issued the binding response dated August 19, 2013, which is reproduced above, and in which SKAT maintained the assessment of the generational change model from the previous binding responses.

Based on SKAT's May 13, 2016 ruling on A, which is discussed in more detail below, it seems that practice in the 11 intermediate years from 1992 to 2003 had followed the decision TfS 1992.588 LSR, in which the Danish National Tax Tribunal (*landsskatteretten*, LSR) found that the reserved dividend was dividend for the Seller. It is further described in SKAT's ruling that the practice with SKM 2003.282 LSR was changed so that the reserved dividend was considered part of the Seller's transfer price, and that the 2003 ruling did not relate to the taxation of the Buyer. On November 15, 2016, in another case, the Tax Council issued a binding response to three questions that correspond to the questions in the binding response dated August 19, 2013 (SKM 2016.615SR). In that case, the Tax Council answered Question 1 in the affirmative and Questions 2 and 3 in the negative. In this regard, the Tax Council agreed that, inter alia, there was no reliable practice, despite the fact that SKAT had previously, in three cases, recognized the generational change model by binding response and furthermore, in an additional seven cases, had refunded dividend tax and not disregarded the gift notifications.

**1927**
It was hereby taken into account that none of the referenced rulings had been published or mentioned in the Danish Legal Guide.
The tax authorities' processing of the present case
On December 22, 2014, Ernst & Young requested on behalf of A that SKAT repay the dividend tax paid pursuant to Section 55 of the Danish Withholding Tax Act. In support of the request, reference was made to the fact that the distribution had taken place in accordance with a reserved dividend right.

On January 16, 2015, Ernst & Young sent SKAT's case officer further arguments for the request and attached a copy of SKAT's binding response dated August 19, 2013.

On January 26, 2015, SKAT changed A's preliminary statement and, on February 17, 2015, refunded him the withheld dividend tax. Based on an internal note from the refund case prepared by the case officer, it seems the dividend tax must be refunded, as the dividend is exempt from dividend tax, cf. Section 34 of the Danish Capital Gains Tax Act, as this is the dividend right in connection with a succession, and the dividend right is part of the transfer and therefore covered by the succession basis. In the note, reference is also made to the binding response dated August 19, 2013.

Via a letter dated April 24, 2015, SKAT contacted A and requested further information in order to be able to take a position on the valuations in the notifications of the gifts he had given to his daughters in connection with the transfer. The letter states that, inter alia, it is SKAT's immediate opinion that a dividend cannot be distributed from the Company to anyone other than the shareholder, as it is directly linked to the shareholding, and that dividends cannot be agreed to be paid directly from the Company to anyone other than the shareholders on the basis of their ownership interest. By extension, in this letter, SKAT requested, inter alia, a copy of the binding response dated August 19, 2013, and documentation of the conditions/agreements attached to the advance dividend right. SKAT's request for further information was responded to on behalf of A by Attorney Michael Serup via a

letter dated May 12, 2015.

Via a letter dated August 28, 2015, SKAT approved the gift notifications. The letter states the following:

*"SKAT approves the gift notifications*
We approve the gift notifications for the gifts you have given to your children D, C, and B.

Based on the relevant gift notifications, it seems on November 7, 2014 you transferred nominally DKK 6,666,667 in capital shares in X A/S to each of your daughters.`

The transfers each have a value of DKK 41,428,511. The gift tax of 3 x DKK 1,491,030 has been paid."

In September 2015, in continuation of correspondence with Ernst & Young, SKAT changed A's annual statement for 2014, so that the dividend distribution was based on the calculation of his taxable share income.

On May 13, 2016, SKAT issued a new ruling in the case against A. In this ruling, SKAT demanded that the previously withheld dividend tax be paid back to SKAT. The decision states, inter alia, the following:

*"Ruling: Refund of paid dividend tax - 2014*
In connection with SKAT's processing of the case concerning the partial gift transfer of nominally DKK 20,000,001 shares in company X A/S to your three children, of which SKAT was notified on November 10, 2014, SKAT has found that, pursuant to Section 55 of the Danish Withholding Tax Act, the basis on which you applied for, and then, on February 17, 2015, were paid, the withheld X A/S dividend tax of DKK 13,071,647, is incorrect.

Your tax calculation will therefore be amended so that the dividend tax amount of DKK 13,071,647 arising from Company X A/S's withholding this in your name and so that the identification (cpr.) no. is not credited to your annual statement for 2014, as an advance tax.

The dividend tax amount of 13,071,647 paid pursuant to Section 55 of the Danish Withholding Tax Act is consequently required to be repaid, as SKAT considers the amount to have been paid in the wrong form to be obliged to pay the amount in connection with the request pursuant to Section 55 of the Danish Withholding Tax Act, cf. the below statement of the case and reasoning. The amount is required to be repaid with the standard addition of interest.

*Thus, SKAT maintains its previously submitted proposal. Please refer to the final reasoning below,…*
*Statement of the case and reasoning.*
…

*SKAT's preliminary assessment and reasoning, cf. consultation letter dated March 10, 2016*
The key question in this case is who is the rightful recipient of the income from the reserved dividend.

Under Danish law, the right of ownership is considered to be whole and, as a general rule, to belong to the same person who owns the shares. In order to determine who, for tax purposes, is the owner of the stock under Danish law, consideration is thus given to the person who, under civil law, possesses the bulk of the usual ownership rights.

The starting point is thus that wealth returns in the form of dividends and interest must be allocated to the taxable person who has civil ownership of the underlying property.

**1928**

In the present situation, it is not contested that it is the children who, by the transfer of shares, acquire the ownership and all usual ownership rights to the shares, and thereby it will also be the children who will be the rightful income recipients and taxable persons through ownership of the shares.

When the children are the rightful recipients of the dividend, it means, conversely, that the dividend tax must be paid by the children and it is only the net dividend that the children can use to pay for the share purchase.

The fact that the parties agree to use the rules regarding tax succession set in Section 34 of the ABL, where the children as acquirers enter into the transferor's (A) tax position at the moment of transfer and the gain is not taxed to the transferor, cannot be assumed to mean that the dividend taxation of the children also becomes tax free or covered by the succession basis.

Tax law succession pursuant to Section 34 of the ABL, cf. Section 33C of the KSL, only entails succession with regard to the tax law treatment of the transferred shares, partly because the transferor is not subject to capital gains tax, partly because the acquirer enters into the transferor's taxable position at the acquisition time, amount and intention and in the depreciation made. On the other hand, the rules do not provide a legal basis for other effects of succession (neither favorable nor unfavorable) and succession does not otherwise affect the tax situation of the acquirer, including the taxation of future dividends from the transferred company.

Such a "link" between dividend taxation and the succession basis is not based on the succession rules.

This applies whether or not the reserved dividend is part of the transfer consideration.

Legally, upon the transfer of shares, the children waive the dividend on their domiciled right dividend as owners of capital, pursuant to the Danish Companies Act (*selskabslov*) (as well as the Danish State Tax Act and the Danish Tax Assessment Act), in favor of their father, A.

According to Section C.A.1.2.1 of the Danish Legal Guide, the basis for waiver of income is that if the waiver is granted after the final acquisition of rights, taxation takes place with the waiver provider. If the waiver was granted before the acquisition of rights, the basis is that there is no taxation with the waiver.

However, it also follows from Section C.A.1.2.1 concerning general waivers of income that it is a requirement that the waiver, in addition to being submitted before the time of acquisition, must also be "blank" in order to avoid taxation. As such, the waiver must not be dispositive in order to understand that the party makes a decision on how the income is to be used. This corresponds to the person acquiring the right to the income and then passing it on to a specific natural/legal person. The actual share transfer with the formulated waiver of dividend occurred on November 7, 2014 and, since the time of acquisition of the dividend, according to established practice, is when it has been declared at the Company's general meeting, which took place on November 28, 2014, there could be an opportunity for the waiver of the dividend to be granted with tax effect according to the principles stated in the Danish Legal Guide. However, this requires that the recipient does not decide at the same time as the waiver how the dividend is to be used, creating the so-called "dispositive waiver".

First and foremost, in the specific situation of the dividend right being reserved, the waiver is not blank, but rather dispositive, as it is positively addressed directly to the transferor (A), as part of the actual financing of the share transfer. Second, a waiver in a dividend situation will almost never be blank, as the dividend by definition will benefit the other shareholders, either in the form of greater dividends or as an increase in the value of the investments. As such, the dividend must be taxed on the children, who can also only use the net dividend to pay for the shares.

*Practice - binding response*
SKAT is aware (as it also appears from both the auditor's and Michael Serup's references in the case) that there are three administrative unpublished binding responses from 2011 (11-077405), 2012 (12-0183137), and 2013 (13-0218782), in which SKAT approved such a model in which the transfers were carried

out with tax succession pursuant to Section 34 of the ABL and as part of the correction of the transfer sum for the shares, for which the older generation has reserved dividends. The dividend is considered tax-exempt for the recipient, as it is included as part of the Seller's transfer price and is therefore covered by the succession basis.

All the binding responses are from Attorney Michael Serup, and in the 2012 and 2013 rulings, reference is made to the previously approved response in 2011. In the response from 2012, reference is made in Serup's own view of the legal position to the Danish Legal Guide 2012-1 C.B.2.1.5.5, and it is stated that there is a fixed administrative practice for such a reserved dividend to be included in the Seller's transfer price.

In the present case, Serup refers in the actual share transfers to the mentioned binding responses as well as to the decision referred to in SKM 2003.282 LSR.

In SKAT's view, these administrative and unpublished binding responses cannot be relied on for several reasons. First, they are binding only for the tax authorities in relation to the questioner, cf. [Section] 25(1) of the Danish Tax Administration Act. Second, the three binding responses are considered to be concretely incorrect and directly contrary to the legislative basis in Section 4e of the Danish State Tax Act, cf. Section 16(A) of the Danish Tax Assessment Act, which authorizes taxation of dividends by the rightful capital owner of the shares (rightful income recipient) and only a blank or non-dispositive waiver can change this basis in both a civil law and tax context.

**1929**

Michael Serup argues in the binding responses with "*according to the transfer agreements NN has retained the right to dividend to the stipulated extent*" and "*since the sons have thus at no time acquired the right to the reserved dividend, the dividend cannot be included in their taxable income, cf. Section 4 of the Danish State Tax Act*".

SKAT does not agree with this argument.

In the present specific case, A has not retained the right to the dividend itself, as the right to dividend follows the share itself or the owner of the share, but instead the parties have specifically agreed that in terms of amount, A must have the first DKK 48.4 million of the dividend that is to be distributed from the Company after the transfer.

The waiver of the 48.4 million is thus undoubtedly dispositive and as a natural result of this, the children acquire the right to the dividend, which they then use to pay A for the shares, but they will be liable to tax on this, cf. Section 4e of the Danish State Tax Act, cf. Section 16A(1) of the Danish Tax Assessment Act and dividend taxation must occur pursuant to the rules in Sections 4a and 8a of the Danish Personal Income Tax Act.

With regard to the reference to SKM 2003.282 LSR, it is correct that in the case there is a reclassification of a dividend from a Belgian subsidiary to a Danish parent company so that the dividend is qualified as a transfer price on the Danish parent company's sale of the shares in the Belgian company to an ultimate Finnish parent company (affiliate sales).

The municipal tax authority had specifically qualified the dividend as a taxable subsidy to the Danish parent company. LSR, on the other hand, found that this was part of the transfer price. However, LSR does not relate to the tax situation of the beneficiary. LSR did not have the occasion or opportunity to decide whether the Buyer should be taxed on dividends at the same time, as the Buyer's tax assessment was not appealed to LSR.

The ruling was also an expression of a changed practice in relation to TfS 1992.588 LSR, in which LSR found that reserved dividend was dividend for seller. In the interim 11 years, the practice had followed the 1992 ruling. Therefore, SKAT does not agree that the

ruling is relevant in the present situation regarding the taxation of the recipient of dividends in a model with reserved dividends.

On the other hand, there is settled case law, including from the Danish Supreme Court, that stipulated how the taxation must be implemented for the acquirer of the shares (dividend recipient - the new shareholders).

The leading judgments on the tax legal qualification of a payment from the Company to the Seller in connection with a transfer of the shares in the Company (to a buyer who is not the Company itself) are:

- Weekly Judiciary Journal (*Ugeskrift for Retsvæsen*, UfR, U) 1982.152 H, Gjermansen: A payment called "Consultancy fee" from company to seller was considered for additional transfer fee and disguised distribution for buyer. I.e., the Seller's transfer price (and the Buyer's acquisition price) were to be increased and the Buyer was to be taxed on dividends.

- Corresponding to TfS 2001.90 H and 494 H on settlement according to the "net method" for asset-stripping. SKAT had considered "Net settlement", in which the Seller receives part of his transfer consideration from the Company and not from the Buyer, as a disguised distribution to the Seller. In accordance with the Gjermansen judgment, the Danish Supreme Court states that the amount paid from the Company to the Seller in connection with the share transaction is not a disguised distribution for the Seller, but a transfer consideration for the Seller and a disguised distribution for the Buyer.

Similarly in:

- TfS 1997.198 Ø. An additional consideration from the Company to the Seller was considered as a disguised distribution to the Buyer and additional transfer consideration for the Seller.

- TfS 1995.561 Ø. A major shareholder/director sold his shares to the Company, which resold part of them at the same price to the Company's other shareholder (the former's brother) and his wife. At the same time, the Company undertook to pay the resigned director/main shareholder an additional amount if it succeeded in selling a particular asset at more than book value. The payment referred to as a commission to the former main shareholder was considered an additional price for the shares (increase in the Seller's transfer price). The payment was a non-deductible operating expense for the Company. It was taxed as a disguised distribution to the remaining main shareholder (brother/buyer).

  This was appealed to the Danish Supreme Court but settled so that the extra price for the shares continues to be added to the Seller's transfer price, the Company continues without deduction for payment, the taxation of disguised distribution by the remaining shareholder (buyer) is limited to his own purchase of shares but not the wife's, as increasing the wife's was precluded by the deadline rules.

It is irrelevant that it has been agreed upon that the payment from the Company to the transferor in the present case should consist of a specified amount of the future dividend. This is a payment from the Company to the previous shareholder in connection with a transfer of the shares in the Company, and such payment must be considered part of the transfer price for the shares and dividend for the acquirer, cf. the above judgments and the reasonings.

*Crediting of dividend tax*

Pursuant to Section 65(1) of the Danish Withholding Tax Act, any ruling or decision on the payment of dividends on shares shall include 27% of the total dividend as dividend tax.

**1930**

Pursuant to Section 8a(2), the withheld dividend tax is off set against the final tax.

The company has withheld and paid the dividend tax of DKK 13,071,647 to SKAT. However, the Company has incorrectly reported the dividend and the dividend tax under A's name and identification (cpr.) no., who in addition has applied for and been paid the withheld dividend tax.

If, as a result of the above changes, it must be possible to off set the withheld dividend tax in the final tax for the children, the dividend tax that was refunded by SKAT on February 17, 2015 must be refunded to SKAT in accordance with this decision.

There will then be a (additional) debt relationship between the parties, corresponding to the non-payment of the purchase price of the shares, namely the withheld dividend tax.

If such a debt relationship is not rectified between the parties, there will be an additional taxable gift, as the amount must thus be considered forgiven. ...."

Attorney Michael Serup raised objections to SKAT's preliminary assessments and reasons in letters dated March 16, 2016 and April 21, 2016.

In the May 13, 2016 ruling, SKAT maintained the preliminary assessment despite the objections made and issued a final ruling on repayment.

On May 13, 2016, SKAT also issued rulings against A's daughters, after which the daughters' share income for 2014 was changed so that they each had to be taxed on a third of the dividend distribution, which corresponded to DKK 16,137,835.

And the three daughters appealed SKAT's May 13, 2016 rulings via a letter dated June 15, 2016 to the Danish Tax Appeals Agency. The ruling against A was brought before the courts on April 3, 2018 (as in the present case) pursuant to Section 48(2) of the Danish Tax Administration Act, without the National Tax Tribunal's decision in the case being available.

The administrative processing of the daughters' appeals to SKAT's decisions awaits the informed decision of the present case. It is stated that in three equal installments on August 11, 2016, August 25, 2016, and September 23, 2016, A re-paid the dividend tax of DKK 13,071,647, which he had previously been paid.

**The legal basis, etc.**

It is stated in Section 4(1) of the Danish State Tax Act, inter alia:
"...

Section 4. The taxpayer's total annual income, whether originating in this country or not, consisting of money or assets of monetary value, is regarded as taxable income with the exceptions and limitations set out below, for example:
[...]

"e) of interest or dividends on all kinds of bonds, shares, and other domestic or foreign monetary securities, so and on outstanding claims and on capital, lent in this country or abroad, with or without a mortgage, against or without debenture. As the dividend of shares and share certificates must be considered everything, what has been paid out by the Company in question to stocks or shareholders as part of the profit earned by the Company in the last or previous financial year, whether the payment takes place as a dividend, as a distribution upon the liquidation of the Company, or the like, or on the issue of free shares.
..."

Section 16A of the Danish Tax Assessment Act, cf. the former Statutory Order no. 1041 of September 15, 2014, states, inter alia: "Section 16A. Dividends on stocks, share certificates, and similar securities are included in the calculation of taxable income, cf., however, (4). (2). Dividends include:
1) Everything that is distributed by the Company to current stockholders or shareholders, cf., however, (3).
2) [...]

(3). The following distributions are processed in accordance with the rules on taxation of gains and losses on transfer of shares, etc.:
1) [...]
(4): The following distributions are not included in the taxable income of the recipient:
1) [...]"

The word "current" was inserted in Section 16A of the Danish Tax Assessment Act by Act no. 1414 of December 21, 2005. The preparatory work states, inter alia, the following (L79):
"...

*2.3. Only amounts distributed to current shareholders are considered taxable dividends*

In a ruling dated April 30, 2003 (published in SKM2003.282.LSR), the Danish National Tax Tribunal found that dividends which, after a share transfer, were distributed to the previous owner of the shares, were to be regarded as an additional sale price. The distribution was thus not processed according to the rules for dividends with the previous owner. The ruling does not take a position on other cases in which a distribution is made to persons other than the current owners of the shares. To this end, it is proposed to clarify Section 16A of the Danish Tax Assessment Act on dividends so that only amounts distributed to current shareholders are regarded as taxable dividends. The decisive factor would then be whether one is a shareholder at the time of declaring the dividend.

…

*To no. 4*

It is proposed to clarify Section 16A of the Danish Tax Assessment Act so that only amounts distributed to current shareholders are regarded as taxable dividends. The decisive factor would then be whether one is a shareholder (i.e., has ownership of the share) at the time of declaring the dividend. The background for the proposal is the following:

**1931**

In a ruling dated April 30, 2003 (published in SKM2003.282.LSR), the Danish National Tax Tribunal found that dividends which, after a share transfer, were distributed to the previous owner of the shares, were to be regarded as an additional sale price. The distribution was thus not processed according to the rules for dividends with the previous owner. However, the ruling does not rule on other cases where a distribution is made to persons other than the current owners of the shares. Thus, under the ruling, no decision has been made as to whether, with the current legal situation, there are certain possibilities for circumventing the withholding tax on dividends in connection with the transfer of the right to dividends. For example, doubts may be raised as to whether a foreign shareholder can transfer the right to dividend to a Danish bank and thereby utilize the applicable rules to avoid withholding tax on dividends.

With the current shareholder, the dividend is taxed as share income, if there is otherwise a tax liability.

If the current shareholder's obligation to repay the dividend is in the nature of a current benefit, the recipient of the current benefits is taxed in accordance with the rules of the Danish State Tax Act. If the current shareholder is a natural person who has the right to deduct the payments, the deduction is given as a tax deduction in the taxable income. In the event that a share seller has reserved the right to the dividend in connection with the transfer of the shares, there must be a capitalization of the reserved dividend right, which will have an effect on the Seller's share profit. In this case, Section 12B of the Danish Tax Assessment Act is applicable. If the dividend reserved is a non-recurring event that does not have the character of a current benefit, the dividend is added to the transfer price when calculating the Seller's share capital gain.

Amounts that are added to the transfer price in the Seller's name are then added to the Buyer's acquisition price for the shares.
…"
The Danish Tax Assessment Guide for 1992 states, inter alia:
"…

*S.F. The taxation of dividends, etc. from public limited companies, private limited companies, and cooperatives*
…
*S.F.1.1 The concept of dividends*
Taxable dividends on stocks, shares, stakes, and similar securities are all that is distributed by the Company to stockholders, shareholders, or stakeholders, with the exception of fund shares and deductibles, as well as distribution of liquidation proceeds made in the calendar year in which the Company is finally dissolved, cf. Section 16A of LL.
It is any distribution from the Company that is considered a dividend regardless of the name and regardless of the form in which the distribution takes place.
Dividends from both Danish and foreign companies must be included in the income. In the income statement, the stockholder must include the full declared dividend, i.e., also any dividend tax withheld.
…
*S.G. Taxation on transfer of stocks, stakes, and the like.*
…
*S.G 2.4 Rules for general stocks and primary shareholder stocks…*
…
*S.G.2.4.7 Transfer price*
…
*S.G.2.4.7.6 Reserved dividend*
It appears that shares are transferred subject to the dividend right, for the transferor themself or for third parties.
*In such cases, see LSR's ruling referenced in TfS 1992, 588. This involved a former primary shareholder selling his remaining shareholding to another company in connection with a generational change. The sale took place in January 1984. At the time of the sale, the main shareholder conditioned the dividend for the financial year 1983, which was declared in August 1984. LSR found that the Plaintiff had rightly included both the dividend and the tax rebate in the calculation of his taxable income. With regard to the dividend, the main shareholder had to be regarded as the recipient of the dividend, cf. Section 17A of the SEL, (now repealed).
CUSTOMS [[•]] TAX News 1992.22.723, relates to a case where a number of shareholders used a purchase offer from a major shareholder to sell their shareholdings. The shareholders had reserved a one-year dividend on the shares. The dividend was approved at the general meeting one week after the sale of shares. The Danish Customs and Tax Agency stated in its opinion that the dividend paid should also be treated for tax purposes as a dividend for the shareholders who had taken advantage of the purchase offer. Thereby, the Agency emphasized the LSR ruling referred to above.*
If the transfer of shares takes place subject to the dividend right for a third party, the transfer amount must be set at the full market value of the shares.
…"
The Danish Tax Assessment Guide for 2003 states, inter alia:
"…
*S.F.1.2 Dividend Taxation - Persons*
…
Stock income.
Stock income tax.
…
For taxation of reserved dividends in connection with share sales, see section S.G.2.4.3.

…
**1932**
*S.G.2.4.3 Reserved dividend*
It appears that shares are transferred subject to the dividend right, either for the transferor themself or for third parties.
»See here the Danish National Tax Tribunal's ruling SKM2003.282.LSR. Here, a Danish company's transfer of shares in a grouped Belgian company to the Finnish parent company was deemed to have taken place at the decision over this transfer at the Danish company's general meeting. A distribution of dividends from the Belgian company to the Danish company after the transfer of shares was considered part of the sale of the shares to the parent company and was therefore not considered a dividend, but should be included in the calculation of the Company's profit on the transfer of shares."
"With this ruling, the previous practice in the field must be considered disregarded, cf., for example, TfS 1992, 588 LSR, and TfS 1992, 540 TSS."
…"
In the Danish Legal Guide for 2014, it is stated, inter alia:
"…
*C.B.3 Taxation of dividends and distributions on shares, etc.*
…
*C.B.3.1 The concept of tax dividends*
…
*Persons covered by the rule*
Only amounts distributed to current shareholders are considered taxable dividends See Section 16A(2)(1) of the LL. The decisive factor would then be whether one is a shareholder (i.e., has ownership of the share) at the time of declaring the dividend.
*See also*
See also section C.B.2.1.5.5 on the special practice of taxation of reserved dividends in connection with the disposal of shares.
…
*C.B.2 Taxation of gains and losses on disposal of shares, etc.*
…
*C.B.2.1.5.5 Reserved dividend*
When shares are transferred subject to the right to dividend, the dividend is part of the transfer price for the shares.
…"
**Depositions**
A has stated that the reserved dividend for the income year 2014 must be attributed to him for tax purposes, and that, as a result of tax exemption under the succession rule set in Section 34 of the Danish Capital Gains Tax Act, he is therefore entitled to payment of excess tax corresponding to the alleged amount. In support of this, he has in the first place argued that, Pursuant to Section 4 of the Danish State Tax Act, he is the rightful recipient of income for the reserved dividend. The basic principle of taxation of the right income recipient also applies to the taxation of returns, which is an independent asset that can be transferred independently of the underlying asset. Furthermore, it follows that returns cannot be taxed at the same time on someone other than the person who has legal access to the return. The reserved dividend has been distributed to him in accordance with the specific terms of the agreement. In the case of the share transfers to the daughters, it is a specific civil law condition that supported the daughters only having legal access to the shares deducted from the reserved dividend, while retaining the assets that consisted of the right to the amount-fixed dividend. Since he has thus had legal access to the dividend, he is the rightful recipient of income. The dividend is not covered by the concept of "dividend" as given in Section 16A of the Danish Tax Assessment Act. The amount must instead, in accordance with established practice, be qualified as a transfer consideration that must be taxed with him as the recipient in accordance with the general rules of the Danish Capital Gains Tax

Act. The fact that the share transfer to the daughters has taken place with tax succession and that the transfer consideration is tax-exempt under the general exemption rule stipulated in Section 34(2) of the Danish Capital Gains Tax Act, does not change this. Section 16A of the Danish Tax Assessment Act does not provide authorization, in a situation such as the present one, for the taxation of the reserved dividend on the daughters who are not recipients of the dividend amount. Section 16A of the Danish Tax Assessment Act is only a qualification provision that determines the tax law income type of the right income recipient. The provision does not provide a legal basis for taxation in violation of Section 4 of the Danish State Tax Act. As well, taxation on the daughters would result in an unlawful double taxation.

Administrative practice also shows that, since 1992, SKAT has consistently regarded the share seller as the rightful recipient of reserved dividends that are distributed to the share seller after a share transfer, and that this has not had tax consequences for the share buyer. In the second place, A has argued that SKAT's new and amended rulings are contrary to a principle of protection of legitimate expectations and legally protected expectations. For many years, SKAT's legal guidelines have comprised statements that, without reservation, have exempted reserved dividends from the ordinary dividend taxation of share buyers. Such dividends are taxed exclusively on the Seller as a transfer consideration. Since, according to legal and administrative practice, the right to such statements can be relied on, the reserved dividend must be attributed to him as the rightful recipient of income and taxed as a waiver. In addition, in three binding responses from 2011, 2012, and 2013 in similar cases, SKAT acknowledged that the Seller was the rightful recipient of income, and that this should be attributed to the Seller's waiver amount, which was tax-exempt as a result of the succession rule in Section 34 of the Danish Capital Gains Taxation Act.

**1933**

The three binding responses must, independent of SKAT's guidelines, in themselves be regarded as a series of individual rulings that express an administrative practice. Despite a request to this effect, SKAT has not issued any rulings that show a different tax treatment of the reserved tax dividend. Overall, therefore, it must be assumed that the three binding responses reflect consistent administrative practice. That SKAT itself has decided not to submit the cases to the Danish Tax Council can bear no significance to the detriment of A. On the contrary, it must be stated that SKAT has considered the cases to be, in principle or in connection, without any doubts in interpretation. Furthermore, according to a principle of equality, A's case is entitled to be processed in accordance with the three binding responses, as the facts are identical in all the cases. It must also be added that, in 2014, it seemed completely unnecessary for A to request binding responses in light of the three binding responses that had already been given and in light of the fact that, in the 2013 ruling, SKAT even performed an extended review of the legal reasoning and result. Presupposing that, despite the above, there may be a legal basis for taxing reserved dividends on both the Seller and the Buyer, such taxation based on amended practice can only take place after 2016, when the Danish Tax Council, with SKM 2016.615, officially amended the administrative practice dealing with this type of issue.

In the third place, A has argued that SKAT, in its original rulings, has taken a binding position on the question of the correct income recipient and the resulting tax treatment of the reserved dividend. In 2015, SKAT issued a ruling on the payment of excess tax for the 2014 income year. Consequently, SKAT determined in this decision that A, and not his daughters, are rightful recipients of income, and that the reserved dividend is tax-exempt as a result of the succession rules. Subsequently, SKAT conducted separate case

processing and issued a similar ruling pertaining to the manual amendment in A's annual statement. Furthermore, in its gift tax rulings issued in August 2015, SKAT determined that A, and not his daughters, were the rightful recipient of income. Regarding these decisions, SKAT abandoned its preliminary and opposite viewpoint, which was that the reserved dividend should be taxed on the daughters, and so, the rulings must all the more be binding and viable for establishing practice. The rulings were all issued in the nature of favorable administrative acts covered by the general rules of administrative law. As there were no significantly special circumstances, the rulings could not subsequently be amended to the detriment of A and his daughters. The rulings were made on a fully informed basis and after thorough consideration. The rulings were not based on incorrect assumptions, and A and his daughters acted in good faith. The standard reservations contained in A's advance statement and annual statement cannot justify a reversal, and the reservations have, in any case, been exhausted by SKAT's final annual statement, with which SKAT ended its tax assessment. The Danish Ministry of Taxation has stated that it was unjustified that A was paid excess tax of DKK 13,071,647, and that he was therefore obliged to repay the amount in accordance with SKAT's May 13, 2016 ruling on the issue. In support of this, the Danish Ministry of Taxation argued that the tax authority on dividends is now Section 16A of the Danish Tax Assessment Act and no longer Section 4 of the Danish State Tax Act. The dividend is taxable according to Section 16A(1) of the Danish Tax Assessment Act, and, when declaring a dividend, the current shareholders acquire the right to the dividend and must be taxed on it. Based on the wording of Section 16A(2) of the Danish Tax Assessment Act and the preparatory work for the provision, it is the "current shareholders" who are taxed for the distribution. At the time of the declaration of the dividend at the Company's general meeting, A's daughters owned the entire share capital of the Company. Consequently, they were, at that time, the "current shareholders" under both civil and tax law. Dividends are inherent to the shareholders, regardless of whether the dividend amounts are actually paid to the shareholders or are paid to third parties, and payment of the Company's funds to third parties in the interests of the shareholders cannot take place without dividend taxation of the shareholders. It is irrelevant whether the distribution takes place shortly after a share transfer. The distribution was actually used to finance the purchase price that the daughters as buyers had to pay to A for the shares, and the payment that actually formed part of A's transfer price was thus made in the interest of the shareholders/daughters. The real purpose of the construction used has been in connection with the generational shift to move funds out of the Company as payment of the purchase price, but without dividend taxation, and such a model must be considered illegal.

The dividend must be taxed once. Should the Court find that the daughters should not be taxed, the dividend must, in any case, be taxed as dividends on A as a previous shareholder, and tax exemption cannot be granted simply because the shares were transferred in accordance with the tax succession rules.

The Danish Ministry of Taxation has further argued that A bears the burden of proof that he can rely on a fixed administrative practice, and this burden of proof has not been lifted. Based on the Danish Supreme Court's practice, cf., inter alia, U 2001.573 H, and from administrative practice, payments from a company to a share seller are considered to have passed the share buyer's finances. This understanding of the legal situation was also expressed in SKAT's legal guidance, which was applicable at the time of the shares were transferred from A to the daughters. The three specific binding responses, in which SKAT in cases concerning other taxpayers stated that the Buyers in a share transfer situation were not subject to tax on amounts that the companies distributed to the share seller after the transfer, are not viable for establishing practice.

Copyright © 2020 Karnov Group Denmark A/S

**1934**

The rulings are issued by the subordinate tax authority and not by the Danish Tax Council or the Danish National Tax Tribunal. Based on the Danish Tax Administration Act, it follows that, in some more specific cases, it is the Danish Tax Council that must decide on binding responses, including if the response could have consequences for a significant number of taxpayers or concern significant interpretation of the legislation. The rulings in connection with the three responses have not been made by the Danish Tax Council, and no fixed administrative practice is established on the basis of individual inquiries and response from SKAT. Even if there were several individual rulings from

SKAT, neither the Danish Tax Council nor the Danish National Tax Tribunal is obliged to adhere to such responses in cases concerning other individuals than that specific questioner. The Danish Tax Council has taken a position solely on the issue in principle in a binding response from November 2016, in which the Danish Tax Council found that amounts paid as part of the transfer price by a share transfer had to be considered, for tax purposes, part of the Buyers' finances. Furthermore, the three binding responses from SKAT are in clear conflict with the law, and, also for this reason, the rulings cannot be used to establish practice.

The fact that, in February 2015, A was paid an amount corresponding to the withheld dividend tax of just over DKK 13 million does not in itself provide a basis for A being entitled to keep the money. The clear basis is that an illegal decision must be revoked and that amounts that have been unjustly paid may be claimed back, unless it would be unreasonable or particularly burdensome in relation to the recipient. A has not proved that there are such special circumstances that there are grounds for derogating from the basis. The money was paid out because the Company unjustly reported the dividend under A's name, and SKAT initially overlooked that the dividend was to be taxed on A's daughters. SKAT's rulings contained a reservation that changes could be made later on, and when SKAT became aware that the daughters were the ones to be taxed, a claim for reimbursement was raised against A. Preliminary viewpoints cannot be given any weight, and the amount has been refunded. A will be able to claim the full purchase price paid by the daughters. As such, he has not suffered any loss. It is also true that the amount that was paid out unjustly in connection with an attempt to use an illegal tax model is significant.

**The Danish High Court's reasoning and result**

Pursuant to Section 1 of the Danish Tax Assessment Act, the Danish State Tax Act applies to the imposition of income on the state with the amendments and additions provided for in the Danish Tax Assessment Act.

According to the principles that follow from Section 4 of the Danish State Tax Act, the taxable income includes income in the form of money or assets of monetary value, and the taxable income must be attributed to the taxable person who receives the income and who has obtained a legal claim for it.

Pursuant to Section 16A(2)(1), cf. (1) of the Danish Tax Assessment Act, dividends from, inter alia, shares must be included in the calculation of taxable income, and dividends are generally included in everything that is distributed by the Company to current shareholders.

By Act no. 1414 of December 21, 2005 and following the Danish National Tax Tribunal's ruling of April 30, 2003 (SKM 2003.282 LSR), the word "current" was inserted into Section 16A of the Danish Tax Assessment Act before the word "shareholders". Based on the preparatory work, the purpose of the amendment was to clarify the provision on dividends so that only amounts distributed to current shareholders would be considered taxable dividends, cf. Bill no. L79 of November 16, 2005, Section 2.3 in the general remarks made on the Bill, and the remarks made on

Section 11(4). In accordance with the ruling of the Danish National Tax Tribunal, it is stated in the bill that the reserved dividend for the Seller must be included in the calculation of the Seller's share profit. According to the information on the practice of taxing reserved dividends, the Danish High Court presupposes that the administrative practice from 1992 to 2003 was that reserved dividends were taxed as dividends on the Seller and that no dividends were simultaneously taxed on the Buyer. The Danish High Court also presupposes that the administrative practice of the Danish National Tax Tribunal 2003 ruling was amended so that the reserved dividend was subsequently considered as part of the Seller's share waiver, which was taxed as a share gain for the Seller. The 2003 ruling does not take a position on whether the practice amendment should lead to the Buyer, in contrast to what was stipulated by previous practice, being taxed on dividends, in the future, from reserved dividends for the Seller. The preparatory work for the 2005 law amendment also does not mention anything about dividend taxation on the part of the Buyer in this situation.

Since 1992, the stated practice for taxation of reserved dividends upon the Seller has been set in the Danish Tax Assessment Guide and in the Danish Legal Guide. Taxation of the Buyer in this situation has not been mentioned, not even after the Danish National Tax Tribunal's 2003 ruling and the change in the law in 2005.

In the three binding responses from 2011, 2012, and 2013, SKAT agreed there should be no dividend taxation of the one purchasing the shares of the reserved dividend for the Seller with reference made to the Buyer not being the rightful recipient of income, cf. Section 4 of the Danish State Tax Act. Based on the Danish Tax Council's November 15, 2016 ruling (SKM 2016.615 Danish SR), it seems that SKAT in a further seven similar cases has made a refund of dividend tax and has not disregarded the gift notifications. During the case, the Danish Ministry of Taxation has not provided information on cases from before 2016, in which SKAT considered the Buyer liable for tax on reserved dividends for the Seller.

**1935**

Pursuant to Section 16A of the Danish Tax Assessment Act, as stated in the taxable income, everything that is distributed by the Company to the current shareholders is included. Neither the wording of the provision nor its preparatory work pertains to situations in which a distribution must be considered to have taken place to the relevant shareholders, and there are no necessary indications that, according to the provision (despite the basis set in Section 4 of the Danish State Tax Act), dividend distributions must always be taxed on the current shareholders, regardless of whether the distribution accrues to others. There is also no evidence that the provision is intended to derogate from the principle that it is the person who receives the income who is taxed.

As such, the determining factor in the question of whether the current shareholders are to be taxed on the dividends must be whether there has been a specific distribution from the Company to the persons in question. Under the word "everything" ("*alt*") in Section 16A, the concept of distribution in that context must be understood broadly, so that it includes all realized financial benefits that accrue from the Company to the shareholder. How the distribution formally appears must be regarded as irrelevant. The determining factor must be whether "the current shareholder" has actually accrued a wealth advantage and therewith, dividends from the Company.

An agreement can be entered into that would be considered valid under civil law, in which the Seller in connection with a share transfer reserves the right to dividend/distribution, which is declared after the transfer. Such an agreement must imply that it is the share seller and not the Buyer who is entitled to the amount.

X A/S paid the dividend directly to A, who, after the November 7,

2014 transfer agreements, obtained a claim for the dividend.

According to the transfer agreements, the daughters had at no time been entitled to receive the distributed amount themselves, and, as such, they had not waived the amount. Furthermore, the daughters did not incur an economic advantage in relation to the part of the purchase price that was "corrected" with the reserved dividend. The value of the Company, and consequently the shares they received, thus became correspondingly decreased as a result of the dividend distribution.

Under the stated circumstances, the Danish High Court finds that A should have been the one taxed for the total amount distributed as part of the transfer consideration, and that there was no authority provided in Section 16A of the Danish Tax Assessment Act to also tax the daughters. As stated, this also corresponds to the described administrative practice up to 2016.

Therefore, and since A has been tax-exempt under the rules on tax succession, SKAT was not entitled to claim the dividend tax refunded as they did.

As such, the Danish High Court upholds A's claim.

After the outcome of the case, the Danish Ministry of Taxation must pay DKK 454,000 in legal costs to A. Of this amount, DKK 450,000 is to cover legal costs, incl. VAT, and DKK 4,000 is to cover court fees. In addition to the value of the case, the scope and course of the case have been taken into account when determining the amount for an attorney.

**It is the judgment of this Court that:**
The Danish Ministry of Taxation must recognize that A is entitled to a refund of excess tax for the income year 2014 of DKK 13,071,647 with added interest in accordance with the Danish Interest Act from the partial payments of the amount paid to the Danish Tax Agency in three equal installments on August 11, 2016, August 25, 2016, and September 23, 2016.

Within 14 days, the Danish Ministry of Taxation must pay DKK 454,000 to A in legal costs. The amount bears interest in accordance with Section 8a of the Danish Interest Act.

**Judgment of the Danish Supreme Court**
In a previous instance, a judgment was issued by the 4th division of the High Court of Western Denmark (*Vestre Landsrets*, VLR) on July 2, 2019 (BS-28325/2018-VLR).

Five judges participated in the verdict: Thomas Rørdam, Henrik Waaben, Lars Hjortnæs, Lars Apostoli and Anne Louise Bormann.

**Allegations**
The parties have reiterated their claims.

**Reasoning and result of the Danish Supreme Court**
On November 7, 2014, A transferred all his shares in X A/S to his three daughters. Part of the purchase price was rectified by A reserving to receive the first DKK 48,413,505 of the dividend distributed after the transfer.

At the Company's general meeting on November 28, 2014, which included the three daughters as shareholders, it was decided that the DKK 48,413,505 would be distributed in dividends. The dividend was paid to A with a deduction of withheld dividend tax, which amounted to DKK 13,071,646.

Subsequently, A requested a refund of the withheld dividend tax, which SKAT fulfilled on February 17, 2015.

On May 13, 2016, SKAT decided A should repay the dividend tax, as SKAT was of the opinion that the dividend was taxable with A's daughters, and that, as such, the dividend tax that the Company had included should be attributed to the daughters.

This case concerns the validity of SKAT's claim for repayment.

It is agreed that the payment to A shall not be taxed with him, as it is considered part of his transfer price, which is tax-exempt according to Section 34(2) of the Danish Capital Gains Taxation

Act. The question is therefore primarily whether there is a taxable dividend for the daughters.

**1936**
Pursuant to Section 16A(2)(1), cf. (1) of the Danish Tax Assessment Act, cf. (1), everything that is distributed as dividends to current shareholders is taxable income, unless otherwise determined. A's daughters were shareholders at the time the dividend was distributed, and the right to the dividend therefore essentially accrued to them. According to the agreement with A on the transfer of the shares, the dividend was to be used for partial payment of the purchase price the daughters were set to pay for the shares, and, as such, the dividend was to be paid to him. The Danish Supreme Court finds that by transferring the right to dividends under these circumstances, the daughters cannot be released from the obligation to pay dividend tax. The daughters must thus be regarded as proper recipients of income from the dividend and must be taxed on it.

The Danish Supreme Court notes that this result has support in the preparatory work for Act no. 1414 of December 21, 2005, which amended various tax laws, with which the word "current" was inserted before "shareholders" in Section 16A(2)(1) of the Danish Tax Assessment Act. Based on this preparatory work (FT 2005-06, Appendix A, Bill no. L79, p. 2313), which is reproduced in the Danish High Court's judgment, it seems the amendment was intended to alleviate the possibility of doubt as to whether it was possible to circumvent the withholding tax on dividends in connection with the transfer of the right to dividends. After referencing an example of such a transfer, it is stated: "With the current shareholder, the dividend is taxed as share income, if there is otherwise a tax liability." The Danish Supreme Court finds that A has not demonstrated a binding administrative practice, according to which dividends are not taxed by the shareholders in a situation such as the present.

Since the dividend was thus to be taxed with the daughters, the dividend tax which X have carried should not have been paid to A, and, as such, SKAT was, in principle, entitled to claim the amount back. The Danish Supreme Court finds that there are no such special circumstances that can justify a derogation from this basis. As such, the Danish Supreme Court upholds the Danish Ministry of Taxation's claim for acquittal.

The legal costs, which are set to cover legal fees for the Danish High Court and the Danish Supreme Court, are DKK 800,000. And, the Court fees for the Danish Supreme Court are DKK 6,000. All together, these fees total DKK 806,000.

**It is the judgment of this Court that:**
The Danish Ministry of Taxation is acquitted.

In legal costs for the Danish High Court and the Danish Supreme Court, A must pay DKK 806,000 to the Danish Ministry of Taxation.

The amount of legal costs awarded must be paid within 14 days of the delivery of the decision of the Danish Supreme Court and bears interest in accordance with Section 8a of the Danish Interest Act.

**U.2020.1923**
**U.2020.1923**
**SKM2020.179.HR**

***Køberne af et selskab skulle beskattes af aktieudbytte, som efter overdragelsen var udbetalt til sælgeren som en del af købesummen. Bindende administrativ praksis ikke godtgjort. SKAT kunne omgøre udbetaling af indeholdt udbytteskat.***

*Skatter 21.3, 7.3 og 7.6.*

A overdrog alle aktier i et selskab, X A/S, til sine tre døtre. Overdragelsen skete med skattemæssig succession, og betalingen til A var derfor skattefri for A, jf. aktieavancebeskatningslovens § 34, stk. 2. En del af købesummen blev berigtiget ved, at A forbeholdt sig at modtage de første ca. 48 mio. kr. af det udbytte i X A/S, der blev udloddet efter overdragelsen. Kort tid efter besluttede generalforsamlingen i X A/S, som bestod af de tre døtre som aktionærer, at udlodde ca. 48 mio. kr. i udbytte, der blev udbetalt til A med fradrag af indeholdt udbytteskat. Efterfølgende anmodede A om at få tilbagebetalt den indeholdte udbytteskat, hvilket SKAT, S, imødekom. Senere traf S afgørelse om, at A skulle tilbagebetale udbytteskatten, idet S var af den opfattelse, at udbyttet var skattepligtigt hos As døtre, og at den udbytteskat, som X A/S havde indeholdt, derfor skulle henregnes til dem. Under en sag mod S påstod A S tilpligtet at anerkende, at han havde krav på at få udbytteskatten udbetalt. Spørgsmålet var i den forbindelse, om der var tale om skattepligtigt udbytte for døtrene. Højesteret bemærkede, at det af ligningslovens § 16 A, stk. 2, nr. 1, jf. stk. 1, fremgår, at alt, hvad der udloddes som udbytte til aktuelle aktionærer, er skattepligtig indkomst, medmindre andet er bestemt. As døtre var aktuelle aktionærer, da udbyttet blev udloddet, og retten til udbyttet tilkom derfor som udgangspunkt dem. Ifølge aftalen med A om overdragelse af aktierne skulle udbyttet anvendes til delvis betaling af den købesum, døtrene skulle betale for aktierne, og derfor skulle udbyttet udbetales til ham. Højesteret fandt, at døtrene ikke ved under disse omstændigheder at overdrage retten til

**1924**

udbytte kunne frigøre sig fra pligten til at betale udbytteskat. Døtrene måtte således anses for rette indkomstmodtagere af udbyttet og skulle beskattes heraf.[1] A havde ikke godtgjort en bindende administrativ praksis, hvorefter udbytte ikke beskattes hos aktionærerne i en sådan situation.[2] Da udbyttet således skulle beskattes hos døtrene, skulle udbytteskatten ikke have været udbetalt til A, og S var således som udgangspunkt berettiget til at kræve beløbet tilbage. Der forelå ikke sådanne særlige omstændigheder, som kunne begrunde en fravigelse fra udgangspunktet.[3]

**H.D. 12. marts 2020** *i sag BS-31096/2019-HJR (1. afd.)*

(Thomas Rørdam, Henrik Waaben, Lars Hjortnæs, Lars Apostoli og Anne Louise Bormann).

*Skatteministeriet (adv. Steffen Sværke, Kbh.)*
mod
*A (adv. Michael Serup, Aarhus)*

## Vestre Landsrets dom 2. juli 2019 (4. afd.), BS-28325/2018-VLR

Landsdommerne Henrik Bjørnager Nielsen, Thomas Klyver og Solveig Bloch Madsen (kst.) har deltaget i sagens afgørelse.

Sagen er anlagt ved Retten i Esbjerg den 3. april 2018. Ved kendelse af 12. juli 2018 er sagen henvist til behandling ved landsretten efter retsplejelovens § 226, stk. 1.

Sagen drejer sig om tilbagebetaling af den udbytteskat på 13.071.647 kr., som blev indeholdt i forbindelse med en udbytteudlodning i november 2014 på i alt 48.413.505 kr. fra X A/S, og som senere blev udbetalt til A. Sagen angår prøvelse af SKATs afgørelse af 13. maj 2016 over for A, hvori SKAT fastslog, at udbytteudlodningen var skattepligtig, og at udbetalingen af udbytteskatten var sket på et ukorrekt grundlag.

### Påstande

*Sagsøgeren, A,* har nedlagt påstand om, at sagsøgte, Skatteministeriet, tilpligtes at anerkende, at A har krav på tilbagebetaling af overskydende skat for indkomståret 2014 på 13.071.647 kr. med tillæg af renter fra delindbetalingerne af beløbet til Skattestyrelsen i tre lige store rater henholdsvis den 11. august 2016, 25. august 2016 og 23. september 2016, indtil tilbagebetaling sker.

*Skatteministeriet* har påstået frifindelse.

### Sagsfremstilling

*Sagens baggrund*

Som led i gennemførelsen af et generationsskifte overdrog A den 7. november 2014 alle kapitalandelene i X A/S (i det følgende benævnt selskabet) til sine tre døtre, B, C og D, med en tredjedel til hver. Døtrene fik således hver overdraget kapitalandele for nominelt 6.666.667 kr.

Overdragelsen skete i henhold til enslydende overdragelsesaftaler indgået med hver af døtrene. Der fremgår bl.a. af overdragelsesaftalerne:

»…

*3. Værdiansættelse og berigtigelse*

3.1. Værdien af Kapitalandelene er aftalt til i alt 41.428.511 kr.

3.1.1. Aktierne i Selskabet har ikke været genstand for omsætning indenfor de seneste 12 måneder. Aktiernes handelsværdi kendes derfor ikke, og værdien er følgelig opgjort i overensstemmelse med den beregnede skattekurs for samtlige kapitalandele i Selskabet, jf. cirkulære nr. 185 af 17. november 1982 samt Told- og Skattestyrelsens udtalelse i TfS 1997.599.

3.1.2. Kursberegning er vedlagt som bilag …

3.2. Købesummen for Kapitalandelene berigtiges således:

| | |
|---|---|
| Købesum (pkt. 3.1) | 41.428.511kr. |
| Passivpost (pkt. 3.2.1) | 10.290.676kr. |
| Forbeholdt udbytte (pkt. 3.2.2) | 16.137.835kr. |
| Gældsbrev (pkt. 3.2.3) | 5.000.000 kr. |

---

**1** Lovforslag nr. L 79 af 16. november 2005 alm. bem. pkt. 2.3 samt bem. til § 11, nr. 4, Den juridiske vejledning 2014-2, afsnit C.B.3.1, U 1986.772 H, U 1999.1094 H, SKM 2003.282.LSR, Jan Pedersen m.fl.: Skatteretten 2, 8. udg. (2018), s. 511, Aage Michelsen m.fl.: Lærebog om indkomstskat, 18. udg. (2019), s. 715, Svend Erik Holm i RR.SM.2003.237, Bodil Christiansen og Tommy V. Christiansen i Vidensportalen V.dk, offentliggjort den 29. oktober 2019, og Inge Langhave i SR.2019.284.

**2** U 2017.1474 H og U 2017.2052 H.

**3** U 2011.2235 H og SKM 2018.9.LSR.

Gave (pkt. 3.2.4)          10.000.000 kr.

I alt                      41.428.511kr.

3.2.1. Køber succederer i Sælgers skatteforpligtelse, der relaterer sig til Kapitalandelene, jf. aktieavancebeskatningslovens § 34, hvorfor der i henhold til kildeskattelovens § 33 D skal opgøres en passivpost. Passivposten er opgjort til 10.290.676 kr., jf. bilag …

3.2.2. Sælger modtager de første 16.137.835 kr. af det udbytte, der efter overdragelsen tilfalder Kapitalandelene. Sælgers udbytte denunceres overfor Selskabet. SKAT har ved bindende svar, senest 19. august 2013 bekræftet, at en sådan forbeholdt ret til udbytte skal anses som en del af sælgers salgssum, jf. SKM 2003.282, og at udbyttet ikke har skattemæssige konsekvenser for køber

3.2.3. Køber udsteder til Sælger et rentefrit anfordringsgældsbrev på 5.000.000 kr. Sælger yder Køber en gave på 10.000.000 kr. Gaven ydes fri for afgift, idet Sælger betaler gaveafgiften.

3.2.4. Sælger yder køber en gave på 10.000.000 kr. Gaven ydes fri for afgift, idet Sælger betaler gaveafgiften.

…

**1925**

*8. Skattemæssige vilkår*

8.1. Overdragelsen sker med skattemæssig succession i henhold til aktieavancebeskatningslovens og kildeskattelovens bestemmelser om successionsoverdragelser. Betingelserne i aktieavancebeskatningslovens § 34, stk. 1 er opfyldt.

8.2. Overdragelsen sker under følgende betingelser:

8.2.1. At SKAT ikke anfægter, at aktieavancebeskatningslovens § 34 og kildeskattelovens § 33 D finder anvendelse ved overdragelsen af Kapitalandelene.

8.2.2. At der ikke udløses beskatning af nogen af parterne eller af parternes nærtstående, jf. ligningslovens § 2, ud over, den almindelige gavebeskatning af parterne, der følger af den i pkt. 3.2.3 fastsatte værdi af gaven.

8.2.3. At SKAT ikke anfægter, at den forbeholdte udbytteret i pkt. 3.2.2, skal anses som en del af Sælgers salgssum, og dermed ikke udløser nogen form for beskatning af Sælger eller gaveafgift, samt at udlodning af det forbeholdte udbytte ikke har skattemæssige konsekvenser for Køber.

8.3. Hvis SKAT i henhold til en endelig og upåanket afgørelse skattemæssigt korrigerer Kapitalandelenes værdi, skal korrektionen udlignes ved regulering af Kapitalandelenes værdi i overensstemmelse med den endelige afgørelse. Den regulerede værdi berigtiges - efter regulering af passivposterne, jf. pkt. 3.2.1 - efter Sælgers valg ved regulering af den forbeholdte udbytteret, jf. pkt. 3.2.2, eller af det udstedte gældsbrev, jf. pkt. 3.2.3. Såvel Sælger som Køber skal dog være berettiget til at træde tilbage fra Aftalen, der i så fald vil bortfalde, 1) hvis den fastsatte værdi af Kapitalandelene forhøjes med mere end 100.000 kr., 2) hvis overdragelsen udløser beskatning af den forbeholdte udbytteret, eller 3) hvis overdragelsen anses som en integreret del af en samlet disposition, der udløser beskatning ud over det i pkt. 8.2.2 forudsatte.

8.4. Såfremt SKAT i henhold til en endelig og upåanket afgørelse fastslår, at aktieavancebeskatningslovens § 34 og kildeskattelovens § 33 D ikke finder anvendelse ved overdragelsen af Kapitalandelene, er enhver af Parterne berettiget til at kræve, at overdragelsen af Kapitalandelene bortfalder.

…«

Den afgiftspligtige gave, som var en del af overdragelsen, jf. pkt. 3.2 og pkt. 3.2.4 i aftalen, blev den 7. november 2014 anmeldt til SKAT.

Den 28. november 2014 blev der afholdt ekstraordinær generalforsamling i selskabet. Det fremgår bl.a. af generalforsamlingsprotokollatet:

»…

Den samlede aktiekapital var repræsenteret ved B, D og C, og det blev enstemmigt vedtaget at godkende generalforsamlingens lovlighed.

Endvidere deltog A og E.

Til behandling forelå følgende forslag fra aktionærerne:

l. Udlodning af acontoudbytte til A på 48.413.505 kr.

Til dirigent valgtes E.

*Ad 1:*

A overdrog i november 2014 som et led i generationsskifte af X A/S hele aktiekapitalen til B, D og C.

Som en del af vederlæggelsen forbeholdt A sig udbytteret på 48.413.505 kr., således at han herefter modtager de første 48.413.505 kr. af det udbytte, der efter overdragelsen udloddes af selskabet.

Generalforsamling vedtog enstemmigt udlodningen på 48.413.505 kr., og henviste herunder til det særskilt udarbejdede skatteforbehold af 28. november 2014 vedrørende udlodning af udbyttet.

Generalforsamlingen bemyndigede E til at anmelde det vedtagne udbytte til skattemyndighederne samt at forestå indbetalingen af udbytteskat.

…«

Den 8. december 2014 indberettede selskabet udbytteudlodningen til SKAT. Selskabet indbetalte samme dag den indeholdte udbytteskat på 13.071.646 kr. svarende til 27 % af udbytteudlodningen.

*Skattemyndighedernes praksis i forhold til forbeholdt udbytte*

SKAT har i bindende svar af 14. juni 2011, 28. september 2012 og 19. august 2013 til andre skatteydere forholdt sig til beskatning af forbeholdte udbytterettigheder hos køber i tilknytning til overdragelse af selskaber med skattemæssig succession efter aktieavancebeskatningslovens § 34. I de tre svar har SKAT bekræftet, at køberen ikke er skattepligtig af beløb, som sælger modtager i henhold til de forbeholdte udbytterettigheder.

Af det bindende svar af 19. august 2013, som der er henvist til i overdragelsesaftalerne af 7. november 2014 mellem A og hans døtre, fremgår bl.a. følgende:

»Bindende svar

…

Spørgsmål 1:

Kan det bekræftes, at værdien af de forbeholdte udbytterettigheder skal henregnes til henholdsvis S1 og S2s skattemæssige afståelsessum for overdragelsen af kapitalandelene i Selskaberne?

Spørgsmål 2:

Kan det bekræftes, at S1 og S2 ikke er skattepligtige af beløb, de hver for sig modtager i henhold til de forbeholdte udbytterettigheder, når overdragelsen sker med skattemæssig succession, jf. aktieavancebeskatningslovens 34?

Spørgsmål 3:

Kan det bekræftes, at K1, K2, K3 og K4 ikke er skattepligtig af beløb, som henholdsvis S1 og S2 modtager i henhold til de forbeholdte udbytterettigheder?

**1926**

*Svar:*

*Spørgsmål 1:*

Ja

*Spørgsmål 2:*

Ja

*Spørgsmål 3:*

Ja

---

U.2020.1923H - SKM2020.179.HRH

Se SKATs begrundelse for svaret nedenfor.

…

*Jeres opfattelse og begrundelse herfor*
I har i anmodningen anført:
*Spørgsmål 1*
Det må lægges til grund, at den forbeholdte udbytteret er en del af den samlede aftale om finansieringen af overdragelserne af kapitalandelene i Selskaberne fra S1 og S2 til deres respektive sønner.

Dette fremgår af overdragelsesaftalerne (bilag …), hvor det er lagt til grund for den samlede overdragelse, at finansieringen både sker ved sønnernes overtagelse af en passivpost, ved en gave samt ved den forbeholdte udbytteret.

Som det fremgår af Den Juridiske Vejledning 2013-1 C.B.2.1.5.5, er det fast administrativ praksis, at et sådant forbeholdt udbytte henregnes til sælgers afståelsessum.

Det må derfor lægges til grund, at udbytteretten og udligningen heraf ikke kan kvalificeres som udbytte, men derimod skal anses som en del af S1 og S2s samlede afståelsessum for kapitalandelene i Selskaberne.

Spørgsmålet bør derfor besvares bekræftende.
*Spørgsmål 2*
Det fremgår af aktieavancebeskatningslovens § 34, stk. 2, at overdrageren ikke beskattes af gevinst ved overdragelsen, hvis parterne vedtager at overdrage med skattemæssig succession, jf. § 34, stk. 1. I stedet indtræder erhververen i overdragerens skattemæssige stilling.

Da S1 og S2 samt de respektive sønner har vedtaget at anvende aktieavancebeskatningslovens § 34, stk. 2, skal S1 og S2 ikke beskattes af nogen gevinst ved overdragelsen. Denne skattefritagelse er generel og omfatter også udbytte, der må henregnes til S1 og S2s skattemæssige afståelsessum, jf. spørgsmål l.

Derfor bør spørgsmål 2 besvares bekræftende.
*Spørgsmål 3*
Det må lægges til grund, at S1 og S2 i henhold til overdragelsesaftalerne har beholdt retten til udbytte i det fastsatte omfang.

Da sønnerne således på intet tidspunkt har erhvervet ret til det forbeholdte udbytte, kan udbyttet heller ikke henregnes til deres skattepligtige indkomst, jf. statsskattelovens § 4.

Spørgsmålene bør derfor besvares bekræftende.
Jeg bemærker for god ordens skyld, at SKAT allerede to gange har taget stilling til et tilsvarende spørgsmål, jf. bindende svar af 14. juni 2011 og 28. september 2012 vedlagt som bilag …

Endvidere bemærker jeg, at statsskattelovens indkomstbegreb også ligger til grund for den i administrativ praksis fast anvendte generationsskiftemodel, hvor selskabskapitalen opdeles i A- og B-andele med forlods udbytteret for A-andelene. Den udbytteret, der forbeholdes A-andelene, kan tilsvarende ikke henregnes til den skattepligtige indkomst hos erhververen af B-andelene. Jeg henviser herved fx til SKM 2010.516, hvor Skatterådet bekræftede, at etableringen af en forlods udbytteret ikke ville udløse skattemæssige konsekvenser af nogen art for henholdsvis A- og B- anpartshaveren.

Derfor bør spørgsmål 3 besvares bekræftende.

*SKATs begrundelse for svaret*
SKAT kan tilslutte sig at at repræsentanten under afsnittet »Jeres opfattelse og begrundelse herfor« anførte, og kan derfor besvare de stillede spørgsmål bekræftende.

Der er ved besvarelsen forudsat, at parterne opfylder kravene i aktieavancebeskatningslovens § 34.

…«
De tre bindende svar er alle adresseret til advokat Michael Serup, der har været rådgiver i sagerne. I notat fra SKAT af 6. juli 2013

er refereret en telefonsamtale den 3. december 2012 om det bindende svar af 28. september 2012, hvor en medarbejder hos SKAT oplyste en medarbejder hos advokat Michael Serup om, at det måtte overvejes, om udbetaling af udbytte kan anses for at have passeret køberen, som bliver udbytteskattepligtig heraf - og som herefter videregiver udbyttebeløbet skattefrit til sælger som en del af afståelsessummen, og at det bindende svar af 28. september 2012 ikke kan tillægges vægt i en anden sag, som omhandler forlods udbytteret. Efterfølgende afgav SKAT det bindende svar af 19. august 2013, som er gengivet ovenfor, og hvor SKAT fastholdt vurderingen af generationsskiftemodellen fra de tidligere bindende svar.

Det fremgår af SKATs afgørelse af 13. maj 2016 til A, som omtales nærmere nedenfor, at praksis i de 11 mellemliggende år fra 1992 til 2003 havde fulgt afgørelsen TfS 1992.588 LSR, hvor landsskatteretten fandt, at forbeholdt udbytte var udbytte for sælger. Det er endvidere beskrevet i SKATs afgørelse, at praksis med SKM 2003.282 LSR blev ændret til, at forbeholdt udbytte blev anset for en del af sælgers afståelsessum, og at 2003-kendelsen ikke forholdt sig til beskatningen hos køber.

Skatterådet tog den 15. november 2016 i en anden sag afgivet et bindende svar på tre spørgsmål, der svarer til spørgsmålene i det bindende svar af 19. august 2013 (SKM 2016.615SR). Skatterådet besvarede da spørgsmål nr. 1 med et ja, og spørgsmål nr. 2 og 3 med et nej. Skatterådet tiltrådte i den forbindelse bl.a., at der

**1927**

ikke forelå i praksis, som der kunne støttes ret på, uanset at SKAT tidligere i tre sager ved bindende svar havde anerkendt generationsskiftemodellen og herudover i yderligere 7 sager havde foretaget tilbagebetaling af udbytteskat og ikke tilsidesat gaveanmeldelserne. Det blev herved taget i betragtning, at ingen af de nævnte afgørelser var offentliggjort eller nævnt i Den juridiske Vejledning.

*Skattemyndighedernes behandling af den foreliggende sag*
Den 22. december 2014 anmodede Ernst & Young på vegne af A SKAT om efter kildeskattelovens § 55 at tilbagebetale den indbetalte udbytteskat. Der blev til støtte for anmodningen henvist til, at udlodningen var sket i henhold til en forbeholdt udbytteret.

Den 16. januar 2015 sendte Ernst & Young til SKATs sagsbehandler yderligere argumentation for anmodningen og vedlagde kopi af SKATs bindende svar af 19. august 2013.

Den 26. januar 2015 ændrede SKAT A's forskudsopgørelse og tilbagebetalte den 17. februar 2015 den indeholdte udbytteskat til ham. Det fremgår af et internt notat fra tilbagebetalingssagen udarbejdet af sagsbehandleren, at udbytteskatten skal tilbagebetales, da udbyttet er fritaget for udbytteskat, jf. aktieavancebeskatningslovens § 34, da der er tale om udbytteret i forbindelse med generationsskifte (succession), og udbytteretten er del af afståelsen og derfor omfattet af successionsgrundlaget. Der henvises også i notatet til det bindende svar af 19. august 2013.

Ved brev af 24. april 2015 rettede SKAT henvendelse til A og anmodede om yderligere oplysninger for at kunne tage stilling til værdiansættelserne i anmeldelserne af de gaver, som han havde givet til sine døtre i forbindelse med overdragelsen. Det er bl.a. anført i brevet, at det er SKATs umiddelbare opfattelse, at et udbytte ikke kan udloddes fra selskabet til andre end kapitalejeren, da det knytter sig direkte til kapitalandelen, og at udbytte ikke kan aftales udbetalt direkte fra selskabet til andre end kapitalejerne på baggrund af deres ejerandel. SKAT anmodede i forlængelse heraf i brevet bl.a. om kopi af det bindende svar af 19. august 2013, og dokumentation for de betingelser/aftaler, der er knyttet til den forlods udbytteret.

U.2020.1923H - SKM2020.179.HRH

SKATs anmodning om yderligere oplysninger blev på vegne af A besvaret af advokat Michael Serup ved brev af 12. maj 2015.

Ved brev af 28. august 2015 godkendte SKAT gaveanmeldelserne. Af brevet fremgår følgende:

»*SKAT godkender gaveanmeldelserne*

Vi godkender gaveanmeldelserne for de gaver, du har givet til dine børn D, C og B.

Det fremgår af gaveanmeldelserne at du den 7. november 2014 giver en gave i forbindelse med, at du overdrager nom. 6.666.667 kr. kapitalandele i X A/S til hver af dine døtre.

Overdragelserne har hver en værdi af 41.428.511 kr.

Gaveafgiften på 3 x 1.491.030 kr. er betalt.«

I september 2015 ændrede SKAT i forlængelse af korrespondance med Ernst & Young årsopgørelsen for 2014 for A, således at udbytteudlodningen udgik af beregningen af hans skattepligtige aktieindkomst.

Den 13. maj 2016 traf SKAT over for A ny afgørelse i sagen. I afgørelsen krævede SKAT, at den tidligere indeholdte udbytteskat på ny blev indbetalt til SKAT. Det fremgår bl.a. følgende af afgørelsen:

»*Kendelse: Tilbagebetaling af udbetalt udbytteskat - 2014*

I forbindelse med SKATs sagsbehandling af den delvise gaveoverdragelse af nominelt 20.000.001 kr. aktier i selskabet X A/S til dine tre børn, som blev anmeldt til SKAT den 10. november 2014, har SKAT konstateret, at du på et ukorrekt grundlag efter kildeskattelovens § 55 har ansøgt om, og den 17. februar 2015 har fået udbetalt, den af X A/S' indeholdte udbytteskat på 13.071.647 kr.

Din skatteberegning vil derfor blive ændret således at udbytteskattebeløbet på 13.071.647 kr. hidrørende fra selskabet X A/S's indeholdte heraf i dit navn og cpr. nr. ikke godskrives din årsopgørelse for 2014, som en forskudsskat.

Det udbetalte udbytteskattebeløb på 13.071.647 efter kildeskattelovens § 55 kræves i konsekvens heraf således tilbagebetalt, idet SKAT anser beløbet for udbetalt i urigtig formening om at være pligtig til at udbetale beløbet i forbindelse med anmodningen efter kildeskattelovens § 55, jf. nedenstående sagsfremstilling og begrundelse. Beløbet kræves tilbagebetalt med sædvanligt tillæg af renter.

*SKAT fastholder således sit tidligere fremsendte forslag. Der henvises til den endelige begrundelse nedenfor, …*

*Sagsfremstilling og begrundelse*

…

*SKATs foreløbige vurdering og begrundelser, jf. høringsskrivelse af 10. marts 2016*

Det centrale spørgsmål i denne sag er, hvem er rette indkomstmodtager af det forbeholdte udbytte.

Efter dansk ret anses ejendomsretten for værende samlet og som altovervejende hovedregel for at være placeret hos den samme person, som ejer kapitalandelene. For at fastlægge, hvem der i *skattemæssig* forstand er ejer af aktivet efter dansk ret, henses der således til hvem der i civilretlig henseende besidder hovedvægten af de sædvanlige ejerbeføjelser.

Udgangspunktet er således, at formueafkast i form af udbytte og rente skal allokeres til det skattesubjekt, der har den civilretlige ejerskab til det underliggende formuegode.

**1928**

I nærværende situation er det utvivlsomt, at det er børnene, der ved aktieoverdragelsen, får ejendomsretten og alle sædvanlige ejerbeføjelser til selve aktien og derved vil det også være børnene der skattemæssigt vil være rette indkomstmodtager og beskatningssubjekt gennem ejerskabet af kapitalandelene.

Når børnene er rette modtager af udbyttet betyder det omvendt, at udbytteskatten skal betales af børnene og det kun er nettoudbyttet, som børnene kan bruge til at betale aktiekøbet med.

Det forhold, at parterne aftaler at bruge reglerne i ABL § 34 om skattemæssig succession, hvor børnene som erhverver indtræder i overdragerens (A) skattemæssige stilling vedr. overdragerens og gevinsten ikke beskattes hos overdrageren kan ikke antages at betyde, at udbyttebeskatningen hos børnene også bliver skattefri eller omfattet af successionsgrundlaget.

Skatteretlig succession efter ABL § 34, jf. KSL § 33 C medfører alene succession for så vidt angår den skatteretlige behandling af de overdragne aktier, dels ved at overdrageren ikke realisationsbeskattes, dels ved at erhververen indtræder i overdragerens skattemæssige anskaffelsestidspunkt, sum og hensigt og i de foretagne afskrivninger. Derimod indeholder reglerne ikke hjemmel til andre, hverken begunstigende eller byebyrdende, virkninger af successionen og succession påvirker ikke erhververens skattemæssige situation i øvrigt, herunder beskatningen af fremtidige udbytter fra det overdragne selskab.

En sådan »kobling« mellem udbyttebeskatningen og successionsgrundlaget har ikke hjemmel i successionsreglerne.

Dette gælder hvad enten det forbeholdte udbytte er en del af afståelsesvederlaget eller ej.

Juridisk sker der det, at børnene, ved aktieoverdragelsen, giver *afkald på udbyttet* på deres efter selskabslovens (samt statsskattelovens og ligningslovens) hjemlede ret udbytte som kapitalejer, til fordel for deres far A.

Ifølge Den Juridiske Vejledning (DJV) afsnit C.A.1.2.1 er udgangspunktet ved afkald på indtægter, at hvis afkaldet er givet *efter* den endelige retserhvervelse, sker der beskatning hos afkaldsgiver. Hvis afkaldet er givet før retserhvervelsen, er udgangspunktet, at der ikke sker beskatning hos afkaldsgiver.

Det følger imidlertid også af afsnit C.A.1.2.1 vedrørende generelle afkald på indtægter, at det er et krav, at afkaldet udover at være afgivet før retserhvervelsestidspunktet, tillige skal være »blankt« for at undgå beskatning. Afkaldet må således ikke være dispositivt således at forstå, at parten træffer beslutning om, hvordan indtægten skal bruges. Dette svarer til, at personen erhverver ret til indtægten og derefter giver den videre til en bestemt fysisk/juridisk person.

Selve aktieoverdragelsen med det formulerede afkald på udbytte er indgået den 7. november 2014 og da retserhvervelsestidspunktet for udbyttet efter fast praksis er når der et deklareret på selskabets generalforsamling, der først er sket den 28. november 2014, kunne der således efter de i DJV anførte principper, være en mulighed for afkaldet på udbyttet kunne gives med skattemæssig virkning. Dette fordrer imidlertid, at modtager ikke samtidig med afkaldet træffer beslutning om, hvordan udbyttet skal anvendes - det såkaldte dispositive afkald.

Først og fremmest er afkaldet i den konkrete situation med forbeholdt udbytteret ikke blankt, men derimod dispositivt, idet det positivt er adresseret direkte til overdrager (A), som et led i selve finansieringen af aktieoverdragelsen. Dernæst vil et afkald i en udbyttesituation, nærmest aldrig kunne være blankt, idet udbyttet pr. definition vil komme de øvrige kapitalejere til gode, enten i form af større udbytte eller som en forøgelse af kapitalandelenes værdi.

Udbyttet skal således udbyttebeskattes hos børnene, som endvidere alene kan anvende nettoudbyttet til betaling for aktierne.

*Praksis - bindende svar*

SKAT er bekendt med (som det også fremgår af både revisors og Michael Serups henvisninger i sagen) at der foreligger tre administrative ikke offentliggjorte bindende svar fra 2011 (11-077405), 2012 (12-0183137) og 2013

(13-0218782), hvor SKAT har godkendt en sådan model, hvor overdragerne er gennemført med skattemæssig succession efter ABL § 34 og som led i berigtigelsen af overdragelsessummen for aktierne har den ældre generation forbeholdt sig udbytte. Udbyttet anses som skattefrit for modtager, da det henregnes som en del af sælgers afståelsessum og derfor er omfattet af successionsgrundlaget.

Alle de bindende svar er fra advokat Michael Serup og i 2012 og 2013 afgørelserne henvises der til tidligere godkendte svar i 2011. I svaret fra 2012 henvises der i Serups egen opfattelse af retsstillingen til DJV 2012-1 C.B.2.1.5.5, og det anføres at der er fast administrativ praksis for, at et sådant forbeholdt udbytte henregnes til sælgers afståelsessum.

I nærværende sag henviser Serup i selve aktieoverdragelserne til de nævnte bindende svar samt til afgørelsen refereret i SKM 2003.282 LSR.

Efter SKATs opfattelse kan der ikke støttes ret på disse administrative og ikke offentliggjorte bindende svar, idet de for det første kun er bindende for skattemyndighederne i forhold til spørgeren, jf. skatteforvaltningslovens 25, stk. 1 og for det andet anses de tre bindende svar for konkret forkerte og direkte stridende med det lovgivningsmæssige udgangspunkt i statsskattelovens § 4 e, jf. ligningslovens 16 A, stk. 1, som hjemler beskatning af udbytte hos den retmæssige kapitalejer af

**1929**

aktierne (rette indkomstmodtager) og kun et blankt eller ikke dispositivt afkald kan ændre på dette både civilretlige og skattemæssige udgangspunkt.

Michael Serup argumenterer i de bindende svar med »*at NN i henhold til overdragelsesaftalerne har beholdt retten til udbytte i det fastsatte omfang*« samt »*Da sønnerne således på intet tidspunkt har erhvervet ret til det forbeholdte udbytte, kan udbyttet heller ikke henregnes til deres skattepligtige indkomst, jf. statsskattelovens § 4.*«

SKAT er ikke enig i denne argumentation.

I nærværende konkrete sag har A ikke beholdt selve retten til udbyttet, idet retten til udbytte følger selve aktien eller ejeren af aktien, men derimod har parterne konkret aftalt, at beløbsmæssigt skal A have de første 48,4 mio. kr. af det udbytte, der efter overdragelsen måtte blive uloddet fra selskabet.

Afkaldet på de 48,4 mio. kr. er således utvivlsomt dispositivt og som en naturlig konsekvens heraf erhverver børnene derfor ret til udbyttet - som de så bruger til at betale A for aktierne - men de vil være skattepligtigt heraf, jf. statsskattelovens § 4 e, jf. ligningslovens § 16 A, stk. 1 og der skal ske udbyttebeskatning efter reglerne i personskattelovens § 4 a og § 8 a.

For så vidt angår henvisningen til SKM 2003.282 LSR, er det korrekt, at der i sagen sker en omkvalifikation af et udbytte fra et belgisk datterselskab til et dansk moderselskab således at udbyttet bliver kvalificeret som afståelsessum ved det danske moderselskabs salg af aktierne i det belgiske selskab til et ultimativt finsk moderselskab (koncernforbundet salg).

Den kommunale skattemyndighed havde konkret kvalificeret udbyttet som et skattepligtigt tilskud til det danske moderselskab. LSR fandt derimod, at der var tale om en del af afståelsessummen.

LSR forholder sig imidlertid ikke til beskatningssituationen for *udbyttemodtager*. LSR havde ingen anledning til eller mulighed for at tage stilling til, om køber samtidig skal beskattes af udbytte, idet købers skatteansættelse ikke var påklaget til LSR.

Kendelsen var i øvrigt udtryk for en ændret praksis i fht. TfS 1992.588 LSR, hvor LSR fandt, at forbeholdt udbytte var udbytte for *sælger*. Praksis havde i de 11 mellemliggende år fulgt 1992-kendelsen.

SKAT er derfor ikke enig i, at kendelsen har relevans i nærværende situation vedrørende beskatningen af *udbyttemodtager* i en model med forbeholdt udbytte.

Derimod er der fast retspraksis, herunder fra Højesteret, hvorledes beskatningen skal gennemføres for erhververen af aktierne (udbyttemodtager - de nye aktionærer).

De ledende domme om den skatteretlige kvalifikation af en betaling fra selskabet til sælger i forbindelse med en overdragelse af aktierne i selskabet (til en køber, som ikke er selskabet selv), er:

- UfR 1982.152 H, Gjermansen: En betaling benævnt »Konsulentvederlag« fra selskab til sælger anså for yderligere afståelsesvederlag og maskeret udlodning for køber. Dvs. sælgers afståelsessum (og købers anskaffelsessum) skulle forhøjes, og køber skulle beskattes af udbytte.

- Tilsvarende TfS 2001.90 H om afregning efter »nettometoden« ved selskabstømning. SKAT havde anset »Nettoafregning«, hvor sælger modtager en del af sit afståelsesvederlag fra selskabet og ikke fra køber, for maskeret udlodning til sælger. Højesteret fastslår i overensstemmelse med Gjermansen-dommen, at beløbet, der betales fra selskabet til sælger i forbindelse med aktiehandlen, ikke er maskeret udlodning for sælger, men afståelsesvederlag for sælger og maskeret udlodning for køber.

Tilsvarende i:

- TfS 1997.198 Ø. Et yderligere vederlag fra selskab til sælger anså for maskeret udlodning til køber og yderligere afståelsesvederlag for sælger.

- TfS 1995.561 Ø. En hovedaktionær/direktør solgte sine aktier til selskabet, som til samme kurs videresolgte en del heraf til selskabets anden aktionær (førstnævntes bror) samt dennes hustru. Samtidig forpligtede selskabet sig til at udbetale den fratrådte direktør/ hovedaktionær et yderligere beløb, hvis det lykkedes at sælge et bestemt aktiv for mere end den bogførte værdi. Den som provision benævnte betaling til den tidligere hovedaktionær blev anset som en merpris for aktierne (forhøjelse af sælgers afståelsessum). Betalingen var en ikke fradragsberettiget driftsomkostning hos selskabet. Beskatning som maskeret udlodning hos den tilbageværende hovedaktionær (broderen/køberen).

Appelleret til Højesteret men forligt således, at merprisen for aktierne fortsat tillægges sælgers afståelsessum, selskabet fortsat uden fradrag for betalingen, men at maskeret udlodning hos den tilbageværende aktionær (køberen) begrænses til hans eget køb af aktier, men ikke hustruens, da forhøjelse af hustruen var udelukket af fristreglerne.

Det gør ingen forskel, at betalingen fra selskabet til overdrageren i den aktuelle sag er aftalt at skulle bestå i et nærmere aftalt beløb af det fremtidige udbytte. Der er tale om betaling *fra selskabet til den hidtidige aktionær* i forbindelse med en overdragelse af aktierne i selskabet, og en sådan betaling skal anses for en del af overdragelsessummen for aktierne og udbytte for erhververen, jf. ovennævnte domme og ovennævnte begrundelser.

*Godskrivning af udbytteskat*

Efter kildeskattelovens § 65, stk. 1, skal der ved enhver vedtagelse eller beslutning om udbetaling af

**1930**

udbytte af aktier indeholdes 27 % af det samlede udbytte som udbytteskat. Efter personskattelovens § 8 a, stk. 2, modregnes den indeholdte udbytteskat i slutskatten.

Copyright © 2020 Karnov Group Denmark A/S

Selskabet har indeholdt og indbetalt udbytteskatten på 13.071.647 kr. til SKAT. Selskabet har imidlertid fejlagtigt indberettet udbyttet og udbytteskatten i A's navn og på dennes cpr. nr., som herudover har ansøgt om og fået udbetalt den indeholdte udbytteskat.

Såfremt der, som følge af ovenstående ændringer, skal kunne foretages modregning af den indeholdte udbytteskat i slutskatten hos børnene, skal udbytteskatten der den 17. februar 2015 er tilbagebetalt af SKAT, genindbetales til SKAT i overensstemmelse med denne afgørelse.

Der vil herefter opstå et (yderligere) gældsforhold mellem parterne, svarende til den manglende betalingen af købesummen på aktierne - nemlig den indeholdte udbytteskat.

Såfremt et sådant gældsforhold ikke berigtiges mellem parterne, vil der foreligge en yderligere afgiftspligtig gave, idet beløbet således må anses for eftergivet. ….«

Advokat Michael Serup fremkom med indsigelser over for SKATs foreløbige vurderinger og begrundelser ved breve af 16. marts 2016 og 21. april 2016.

I afgørelser af 13. maj 2016 fastholdt SKAT trods de fremsatte indsigelser den foreløbige vurdering og traf endelig afgørelse om tilbagebetaling.

Den 13. maj 2016 traf SKAT endvidere afgørelser over for A's døtre, hvorefter døtrenes aktieindkomst for 2014 blev ændret, således at de hver skulle beskattes af en tredjedel af udbytteudlodningen svarende til 16.137.835 kr.

SKATs afgørelser af 13. maj 2016 blev ved brev af 15. juni 2016 påklaget til Skatteankestyrelsen af A og de tre døtre.

Afgørelsen over for A blev den 3. april 2018 indbragt for domstolene (som nærværende sag) i medfør af skatteforvaltningslovens § 48, stk. 2, uden at Landsskatterettens afgørelse i sagen forelå.

Den administrative behandling af døtrenes klager over SKATs afgørelser afven-ter efter det oplyste afgørelsen af nærværende sag.

Der er oplyst, at A i tre lige store rater henholdsvis den 11. august 2016, 25. august 2016 og 23. september 2016 på ny indbetalte udbytteskatten på 13.071.647 kr., som han tidligere havde fået udbetalt.

## Retsgrundlaget mv.

Det hedder i statsskattelovens § 4, stk. 1, bl.a.:

»…

*§ 4.* Som skattepligtig indkomst betragtes med de i det følgende fastsatte undtagelser og begrænsninger den skattepligtiges samlede årsindtægter, hvad enten de hidrører her fra landet eller fra udlandet, bestående i penge eller formuegoder af pengeværdi, således f eks:

[…]

»e) af rente eller udbytte af alle slags obligationer, aktier og andre inden-eller udenlandske pengeeffekter, så og af udestående fordringer og af kapitaler, udlånte her i landet eller i udlandet, med eller uden pant, mod eller uden forskrivning. Som udbyttet af aktier og andelsbeviser skal anses alt, hvad der af vedkommende selskab er udbetalt aktionærer eller andelshavere som en del af det af selskabet i sidste eller i tidligere regnskabsår indtjente overskud, hvad enten udbetalingen finder sted som dividende, som udlodning ved selskabets likvidation eller lignende eller ved udstedelse af friaktier.

…«

I ligningslovens § 16 A, jf. nuværende lovbekendtgørelse nr. 1041 af 15. september 2014, hedder det bl.a.:

»*§ 16 A.* Ved opgørelsen af den skattepligtige indkomst medregnes udbytte af aktier, andelsbeviser og lignende værdipapirer, jf. dog stk. 4. Stk. 2. Til udbytte henregnes:

1) Alt, hvad der af selskabet udloddes til aktuelle aktionærer eller andelshavere, jf. dog stk. 3.

2) […]

Stk. 3. Følgende udlodninger behandles efter reglerne om beskatning af gevinst og tab ved afståelse af aktier m.v.:

1) […]

Stk. 4: Følgende udlodninger medregnes ikke i den skattepligtige indkomst for modtageren:

1) […]«

Ordet »aktuelle« blev indsat i ligningslovens § 16 A ved lov nr. 1414 af 21. december 2005. Af forarbejderne fremgår bl.a. følgende (L79):

»…

*2.3. Kun beløb, der udloddes til aktuelle aktionærer, betragtes som skattepligtigt udbytte*

I en kendelse af 30. april 2003 (offentliggjort i SKM2003.282.LSR) fandt Landsskatteretten, at udbytte, som efter en aktieoverdragelse blev udloddet til den tidligere ejer af aktierne, skulle anses for yderligere salgssum. Udlodningen blev således ikke behandlet efter reglerne for udbytte hos den tidligere ejer. Kendelsen tager ikke stilling til andre tilfælde, hvor der foretages udlodning til andre end de aktuelle ejere af aktierne. Det foreslås i den forbindelse at præcisere ligningslovens § 16 A om udbytter således, at kun beløb, der udloddes til aktuelle aktionærer betragtes som skattepligtigt udbytte. Det afgørende vil herefter være, om man er aktionær på tidspunktet for deklarering af udbyttet.

…

*Til nr. 4*

Det foreslås at præcisere ligningslovens § 16 A således, at kun beløb, der udloddes til aktuelle aktionærer betragtes som skattepligtigt udbytte. Det afgørende vil herefter være, om man er aktionær (d.v.s. har

**1931**

ejendomsret til aktien) på tidspunktet for deklarering af udbyttet.

Baggrunden for forslaget er følgende: I en kendelse af 30. april 2003 (offentliggjort i SKM2003.282.LSR) fandt Landsskatteretten, at udbytte, som efter en aktieoverdragelse blev udloddet til den tidligere ejer af aktierne, skulle anses for yderligere salgssum. Udlodningen blev således ikke behandlet efter reglerne for udbytte hos den tidligere ejer. Kendelsen tager dog ikke stilling til andre tilfælde, hvor der foretages udlodning til andre end de aktuelle ejere af aktierne. Det er således med kendelsen ikke taget stilling til, om der med den gældende retstilstand er visse muligheder for at omgå kildebeskatningen af udbytte i forbindelse med overdragelse af retten til udbytte. Eksempelvis kan der rejses tvivl om, hvorvidt en udenlandsk aktionær kan overdrage retten til udbytte til et dansk pengeinstitut og dermed udnytte de gældende regler til at undgå kildebeskatningen af udbytte.

Hos den aktuelle aktionær beskattes udbyttet som aktieindkomst, såfremt det i øvrigt er skattepligt.

Hvis den aktuelle aktionærs pligt til at viderebetale udbyttet har karakter af en løbende ydelse, beskattes modtageren af de løbende ydelser efter statsskattelovens regler. Hvis den aktuelle aktionær er en fysisk person, der har fradragsret for betalingerne, gives fradraget som et ligningsmæssigt fradrag i den skattepligtige indkomst. Hvis der er tale om, at en aktiesælger har forbeholdt sig retten til udbyttet i forbindelse med overdragelse af aktierne, skal der ske en kapitalisering af den forbeholdte udbytteret, som får betydning for sælgers aktieavance. I dette tilfælde gælder ligningslovens § 12 B. Hvis det udbytte, der er forbeholdt, er en engangsforeteelse, der ikke har karakter af en løbende ydelse, lægges udbyttet til afståelsessummen ved opgørelsen af sælgers aktieavance.

Copyright © 2020 Karnov Group Denmark A/S

U.2020.1923H - SKM2020.179.HRH

Beløb som lægges til afståelessummen hos sælger, lægges siden til købers anskaffelsessum for aktierne.

…«

I Ligningsvejledningen for 1992 hedder det bl.a.:

»…

*S.F Beskatningen af udbytte mv. fra aktieselskaber, anpartsselskaber og andelsselskaber*

…

*S.F.1.1 Udbyttebegrebet*

Som skattepligtigt udbytte af aktier, anparter, andelsbeviser og lignende værdipapirer anses alt, hvad der af selskabet udloddes til aktionærer, anparts- eller andelshavere, med undtagelse af fondsaktier og friandele samt udlodning af likvidationsprovenue foretaget i det kalenderår, hvori selskabet endelig opløses, jf. LL § 16 A.

Det er enhver udlodning fra selskabet, der betragtes som udbytte uanset under hvilken betegnelse og uanset i hvilken form udlodningen finder sted.

Til indkomsten skal medregnes udbytte såvel fra danske som fra udenlandske selskaber. Ved indkomstopgørelsen skal aktionæren medregne det fulde deklarerede udbytte, altså også den eventuelt tilbageholdte udbytteskat.

…

*S.G Beskatning ved afståelse af aktier, andelsbeviser og lign.*

…

*S.G 2.4 Regler for almindelige aktier og hovedaktionæraktier…*

…

*S.G.2.4.7 Afståelsessum*

…

*S.G.2.4.7.6 Forbeholdt udbytte*

Det forekommer, at aktier overdrages med forbehold af udbytteret, enten af overdrageren selv eller for tredjemand.

*Om sådant tilfælde, se LSR's kendelse refereret i TfS 1992, 588. Der var her tale om, at en tidligere hovedaktionær i forbindelse med et generationsskifte solgte sin resterende aktiepost til et andet selskab. Salget fandt sted i januar 1984. Ved salget betingede hovedaktionæren sig udbyttet for regnskabsåret 1983, som blev deklareret i aug. 1984. LSR fandt, at klageren med rette ved opgørelsen af sin skattepligtige indkomst havde medregnet såvel udbyttet som skattegodtgørelse heraf. Med hensyn til udbyttet måtte hovedaktionæren nemlig anses som udbyttemodtager, jf. SEL § 17 A, (nu ophævet).

TOLD [[•]]SKAT Nyt 1992.22.723, vedrører et tilfælde, hvor en række aktionærer benyttede et købstilbud fra en storaktionær til at sælge deres aktieposter. Aktionærerne havde forbeholdt sig et års udbytte af aktierne. Udbyttet blev vedtaget af generalforsamlingen en uge efter aktiesalgene. Told- og Skattestyrelsen udtalte som sin opfattelse, at det udbetalte udbytte også skattemæssigt skulle behandles som udbytte for de aktionærer, der havde benyttet sig af købstilbudet. Styrelsen lagde herved vægt på den ovenfor refererede LSR-afgørelse.*

Sker overdragelsen af aktier med forbehold af udbytteret for tredjemand, må afståelsessummen ansættes til aktiernes fulde kursværdi.

…«

I Ligningsvejledningen for 2003 hedder det bl.a.:

»…

*S.F.1.2 Udbyttebeskatning - Personer*

…

Aktieindkomst.

Skat af aktieindkomst.

…

Om beskatning af forbeholdt udbytte i forbindelse med aktiesalg henvises til afsnit S.G.2.4.3.

…

**1932**

*S.G.2.4.3 Forbeholdt udbytte*

Det forekommer, at aktier overdrages med *forbehold af udbytteret,* enten for overdrageren selv eller for tredjemand.

»Se her Landsskatterettens kendelse SKM2003.282.LSR. Her blev et dansk selskabs overdragelse af aktier i et koncernforbundet belgisk selskab til det finske moderselskab anset for at være sket ved beslutningen herom på det danske selskabs generalforsamling. En udlodning af udbytte fra det belgiske selskab til det danske selskab efter aktieoverdragelsen ansås for at være et led i salget af aktierne til moderselskabet og ansås derfor ikke for udbytte, men skulle indgå i opgørelsen af selskabets avanceved aktieafståelsen.«

»Med denne afgørelse må den tidligere praksis på området anses for tilsidesat, jf. f.eks. TfS 1992, 588 LSR og TfS 1992, 540 TSS.«

…«

I Den Juridiske Vejledning for 2014 hedder det bl.a.:

»…

*C.B.3 Beskatning af udbytter og udlodninger på aktier mv.*

…

*C.B.3.1 Det skattemæssige udbyttebegreb*

…

*Personer omfattet af reglen*

Det er kun de beløb, der udloddes til aktuelle aktionærer, der betragtes som skattepligtigt udbytte. Se LL § 16 A, stk. 2, nr. 1.

Det afgørende vil herefter være, om man er aktionær (dvs. har ejendomsret til aktien) på tidspunktet for deklarering af udbyttet.

*Se også*

Se også afsnit C.B.2.1.5.5 om den særlige praksis om beskatning af forbeholdt udbytte i forbindelse med afståelse af aktier.

…

*C.B.2 Beskatning af gevinst og tab ved afståelse af aktier mv.*

…

*C.B.2.1.5.5 Forbeholdt udbytte*

Når aktier overdrages med forbehold af retten til udbytte, er udbyttet en del af afståelsessummen for aktierne.

…«

## Anbringender

*A* har anført, at det forbeholdte udbytte for indkomståret 2014 skattemæssigt skal henføres til ham, og at han som følge af skattefritagelse efter successionsreglen i aktieavancebeskatningslovens § 34 derfor har krav på udbetaling af overskydende skat svarende til det påståede beløb. Han har til støtte herfor i første række gjort gældende, at han efter statsskattelovens § 4 er rette indkomstmodtager til det forbeholdte udbytte. Det grundlæggende princip om beskatning hos rette indkomstmodtager gælder også beskatning af afkast, der er et selvstændigt formuegode, der kan overdrages uafhængigt af det underliggende aktiv, og der ligger heri endvidere, at afkast ikke samtidig kan beskattes hos en anden end den, der har retlig adkomst til afkastet. Det forbeholdte udbytte er i overensstemmelse med de udtrykkelige aftalevilkår udloddet til ham. Det var et udtrykkeligt civilretligt vilkår for aktieoverdragelserne til døtrene, at der alene fik retlig adkomst til aktierne fraregnet det forbeholdte udbytte, mens han beholdt det formuegode, der bestod i retten til det beløbsfikserede udbytte. Da han således har haft retlig adkomst til udbyttet, er han dermed rette indkomstmodtager. Udbyttet omfattes ikke af begrebet »udbytte« i ligningslovens § 16 A. Beløbet skal i stedet i overensstemmelse med fast praksis kvalificeres som et afståelsesvederlag, der skal beskattes hos ham

Copyright © 2020 Karnov Group Denmark A/S

U.2020.1923H - SKM2020.179.HRH

som modtager efter aktieavancebeskatningslovens almindelige regler. Det forhold, at aktieoverdragelsen til døtrene er sket med skattemæssig succession, og at afståelsesvederlaget er skattefritaget efter den almindelige fritagelsesregel i aktieavancebeskatningslovens § 34, stk. 2, ændrer ikke herved. Der er ikke i ligningslovens § 16 A hjemmel til i en situation som den foreliggende tillige at beskatte det forbeholdte udbytte hos døtrene, som ikke er modtagere af udbyttebeløbet. Ligningslovens § 16 A er alene en kvalifikationsbestemmelse, der afgør den skatteretlige indkomstart hos den rette indkomstmodtager. Bestemmelsen giver ikke hjemmel til beskatning i strid med statsskattelovens § 4. En beskatning tillige hos døtrene vil indebære en uhjemlet dobbeltbeskatning.

Administrativ praksis viser også, at SKAT siden 1992 konsekvent har anset aktiesælger som rette indkomstmodtager af forbeholdt udbytte, der efter en aktieoverdragelse udloddes til aktiesælger, og at dette ikke har haft skattemæssige konsekvenser for aktiekøber.

A har i anden række gjort gældende, at SKATs nye og ændrede afgørelser strider mod et forventningsprincip og retsbeskyttede forventninger. Skats juridiske vejledninger har gennem en meget lang årrække indeholdt udsagn, der uden forbehold har friholdt forbeholdt udbytte fra den almindelige udbyttebeskatning af aktiekøber. Sådant udbytte er udelukkende beskattet hos sælger som afståelsesvederlag. Da der efter retspraksis og administrativ praksis kan støttes ret på sådanne udsagn, skal det forbeholdte udbytte henføres til ham som rette indkomstmodtager og beskattes som afståelsesvederlag. Hertil kommer, at SKAT i tre bindende svar fra 2011, 2012 og 2013 i tilsvarende sager har anerkendt, at sælger var rette indkomstmodtager af det forbeholdte udbytte, og at dette skulle henregnes til sælgers afståelsessum, der var skattefritaget som følge af

**1933**

successionsreglen i aktieavancebeskatningslovens § 34. De tre bindende svar må uafhængigt af SKATs vejledninger i sig selv anses som en række enkeltafgørelser, der udtrykker en administrativ praksis. SKAT har heroverfor trods opfordring hertil ikke fremlagt afgørelser, der viser en anderledes skattemæssig behandling af forbeholdt skattemæssigt udbytte. Det må derfor samlet set lægges til grund, at de tre bindende svar afspejler en konsistent administrativ praksis. Det kan ikke heroverfor tillægges betydning til skade for A, at SKAT selv har besluttet ikke at forelægge sagerne for Skatterådet. Tværtimod må det tages til udtryk for, at SKAT ikke har anset sagerne for principielle eller forbundet med fortolkningstvivl. A har endvidere efter en lighedsgrundsætning krav på at blive behandlet i overensstemmelse med de tre bindende svar, da de faktiske forhold er identiske i alle sagerne. Det må herved også tillægges betydning, at det for A i 2014 fremstod som helt overflødigt at anmode om bindende svar henset til de tre bindende svar, der allerede var givet, og hvor SKAT i 2013-afgørelsen endog foretog en intensiveret prøvelse af det juridiske grund-lag og resultat. Antages det, at der trods det anførte må være hjemmel til at beskatte forbeholdt udbytte hos såvel sælger som køber, kan en sådan beskatning baseret på en praksisændring først ske fra 2016, hvor Skatterådet med SKM 2016.615 officielt ændrede administrativ praksis på området.

A har i tredje række gjort gældende, at SKAT ved sine oprindelige afgørelser har taget bindende stilling til spørgsmålet om rette indkomstmodtager og den heraf afledte skattemæssige behandling af det forbeholdte udbytte. I 2015 traf SKAT afgørelse om udbetaling af overskydende skat for indkomståret 2014. SKAT har således ved denne afgørelse fastslået, at A og alle hans døtre er rette indkomstmodtagere, og at det forbeholdte udbytte er skattefritaget som følge af successionsreglerne. Efterfølgende

foretog SKAT separat sagsbehandling og traf tilsvarende afgørelse i forbindelse med den manuelle ændring af A's årsopgørelse. Videre har SKAT ved sine gaveafgiftsafgørelser i august 2015 fastslået, at A og ikke hans døtre var rette indkomstmodtager. I forbindelse med disse afgørelser opgav SKAT sit foreløbige modsatte synspunkt, hvorefter det forbeholdte udbytte skulle beskattes hos døtrene, og afgørelserne må så meget desto mere have bindende og praksisskabende virkning. Afgørelserne har alle karakter af begunstigende forvaltningsakter omfattet af de almindelige forvaltningsretlige regler. Da der ikke foreligger helt særlige omstændigheder, har afgørelserne ikke efterfølgende kunnet ændres til ugunst for A og hans døtre. Afgørelserne er truffet på fuldt oplyst grundlag og efter grundig behandling. Afgørelserne hviler ikke på urigtige forudsætninger, og A og hans døtre har været i god tro. De standardforbehold, som er indeholdt i A's forskudsopgørelse og årsopgørelse, kan ikke begrunde, at der kan ske omgørelse, og forbeholdene er under alle omstændigheder udtømt med SKATs endelige årsopgørelse, hvor SKAT afsluttede sin ligningsmæssige behandling.

*Skatteministeriet* har anført, at det var uberettiget, at A fik udbetalt overskydende skat med 13.071.647 kr., og at han derfor var forpligtet til at tilbagebetale beløbet i overensstemmelse med SKATs afgørelse af 13. maj 2016 som skat. Skatteministeriet har til støtte herfor gjort gældende, at beskatningshjemlen for udbytte er ligningslovens § 16 A og ikke længere statsskattelovens § 4. Udbyttet er skattepligtigt efter ligningslovens § 16 A, stk. 1, og ved deklareringen af udbytte erhverver de aktuelle aktionærer ret til udbyttet og skal beskattes heraf. Det følger af ordlyden af ligningslovens § 16 A, stk. 2, og af forarbejderne til bestemmelsen, at det er de »aktuelle aktionærer«, der beskattes af udlodningen. På tidspunktet for deklareringen af udbyttet på selskabets generalforsamling ejede A's døtre hele aktiekapitalen i selskabet, og de var følgelig såvel civilretligt som skatteretligt »aktuelle aktionærer«. Udbytte tilgår i sin natur aktionærerne, uanset om udbyttebeløbene rent faktisk betales til aktionærerne eller til tredjemand, og betaling af selskabets midler til tredjemand i aktionærernes interesse kan ikke ske uden udbyttebeskatning af aktionærerne. Det gør ingen forskel, om udlodningen sker kort tid efter en aktieoverdragelse. Udlodningen blev faktisk anvendt til at finansiere den købesum, som døtrene som købere skulle betale til A for aktierne, og betalingen, der reelt udgjorde en del af A's afståelsessum, skete dermed i aktionærernes/døtrenes interesse. Det reelle sigte med den anvendte konstruktion har været i forbindelse med generationsskiftet at føre midler ud af selskabet som betaling af købesummen, men uden udbyttebeskatning, og en sådan model må anses for uhjemlet.

Udbyttet skal beskattes én gang. For det tilfælde, at retten måtte finde, at døtrene ikke skal beskattes, skal udbyttet under alle omstændigheder udbyttebeskattes hos A som hidtidig aktionær, og der kan ikke opnås skattefrihed, blot fordi aktierne blev overdraget efter de skattemæssige successionsregler.

Skatteministeriet har videre gjort gældende, at A bærer bevisbyrden for, at han kan støtte ret på en fast administrativ praksis, og denne bevisbyrde er ikke løftet. Det følger af Højesterets praksis, jf. bl.a. U 2001.573 H, og af administrativ praksis, at betalinger fra et selskab til aktiesælger anses for at have passeret aktiekøbers økonomi. Denne forståelse af retstilstanden var også udtrykt i SKATs juridiske vejledning, der var gældende ved overdragelsen af aktierne fra A til døtrene. Det udtrykte bindende svar, hvori SKAT i sager vedrørende andre skatteydere udtalte, at køberne i en aktieoverdragelsessituation ikke var skattepligtige af beløb, som selskaberne efter overdragelsen udloddede til

**1934**

Copyright © 2020 Karnov Group Denmark A/S

U.2020.1923H - SKM2020.179.HRH

aktiesælgeren, er ikke på praksisskabende niveau. Afgørelserne er truffet af den underordnede skattemyndighed og ikke af Skatterådet eller Landsskatteretten. Det følger af skatteforvaltningsloven, at det i nogle nærmere afgrænsede tilfælde er Skatterådet, der skal træffe afgørelse om bindende svar, herunder hvis svaret vil kunne få konsekvenser for et større antal skattepligtige eller angår fortolkning af væsentlig betydning for lovgivningen. Afgørelserne i forbindelse med de tre svar er ikke truffet af Skatterådet, og der etableres ikke fast administrativ praksis på grundlag af enkeltstående forespørgsler og svar fra SKAT. Selv hvis der forelå en række enkeltafgørelser fra

SKAT, er hverken Skatterådet eller Landsskatteretten forpligtet til at følge sådanne svar i sager, der angår andre end den konkrete spørger. Skatterådet har først taget principielt stilling til problemstillingen ved et bindende svar i november 2016, hvor Skatterådet fandt, at beløb, som blev betalt som en del af overdragelsessummen ved en aktieoverdragelse, skattemæssigt måtte anses for at have passeret købernes økonomi. De tre bindende svar fra SKAT er endvidere i klar modstrid med loven, og også af denne grund kan afgørelserne ikke være praksisskabende.

Det forhold, at A i februar 2015 fik udbetalt et beløb svarende til den indeholdte udbytteskat på godt 13 mio. kr., giver ikke i sig selv grundlag for, at A har krav på at beholde pengene. Det klare udgangspunkt er, at en uhjemlet afgørelse skal tilbagekaldes, og at beløb, som med urette er betalt, kan kræves tilbagebetalt, medmindre det vil være urimeligt eller særligt byrdefuldt i forhold til modtageren. A har ikke godtgjort, at der foreligger sådanne særlige omstændigheder, at der er grundlag for at fravige udgangspunktet. Pengene blev udbetalt, fordi selskabet fejlagtigt indberettede udbyttet under A's navn, og SKAT overså i den forbindelse i første omgang, at udbyttet skulle beskattes hos A's døtre. SKATs afgørelser indeholdt forbehold om, at der kunne ske ændringer, og da SKAT blev opmærksom på, at beskatningen skulle ske hos døtrene, blev der over for A rejst krav om tilbagebetaling. Indretningssynspunkter kan ikke tillægges nogen vægt, og beløbet er også tilbagebetalt. A vil kunne kræve den fulde købesum betalt af døtrene, og han har således ikke lidt noget tab. Der er endvidere tale om et betydeligt beløb, som fejlagtigt er udbetalt i forbindelse med, at der blev forsøgt anvendt en ulovlig skattemodel.

## Landsrettens begrundelse og resultat

Efter ligningslovens § 1 anvendes statsskatteloven ved påligningen af indkomst til staten med de ændringer og tilføjelser, der er fastsat i ligningsloven.

Efter de principper, som følger af statsskattelovens § 4, omfatter den skattepligtige indkomst indtægter i form af penge eller formuegoder af pengeværdi, og den skattepligtige indkomst skal henføres til det skattesubjekt, der oppebærer indkomsten, og som har opnået et retligt krav på denne.

Efter ligningslovens § 16 A, stk. 2, nr. 1, jf. stk. 1, skal der ved opgørelsen af den skattepligtige indkomst medregnes udbytte af bl.a. aktier, og til udbytte henregnes som udgangspunkt alt, hvad der af selskabet udloddes til aktuelle aktionærer.

Ordet »aktuelle« blev indsat i ligningslovens § 16 A foran »aktionærer« ved lov nr. 1414 af 21. december 2005 efter Landsskatterettens kendelse af 30. april 2003, SKM 2003.282 LSR, hvor forbeholdt udbytte for sælger ved en aktieoverdragelse skulle anses for yderligere salgssum. Efter forarbejderne var formålet med lovændringen at præcisere bestemmelsen om udbytte, således at kun beløb, der udloddes til aktuelle aktionærer, betragtes som skattepligtigt udbytte, jf. lovforslag nr. L 79 af 16. november 2005, pkt. 2.3 i lovforslagets almindelige bemærkninger og bemærkningerne til § 11, nr. 4. I overensstemmelse med

landsskatteretskendelsen er det anført i lovforslaget, at forbeholdt udbytte for sælger skal indgå i opgørelsen af sælgerens aktieavance.

Efter oplysningerne om praksis for beskatning af forbeholdt udbytte lægger landsretten til grund, at administrativ praksis fra 1992 til 2003 var, at forbeholdt udbytte blev beskattet som udbytte hos sælger, og at der ikke samtidig skete udbyttebeskatning hos køber. Landsretten lægger endvidere til grund, at administrativ praksis med landsskatteretsafgørelsen fra 2003 blev ændret således, at forbeholdt udbytte herefter blev anset som en del af sælgers aktieafståelsessum, der blev beskattet som aktieavance for sælger. 2003-afgørelsen tager ikke stilling til, om praksisændringen skulle føre til, at køberen - i modsætning til den tidligere praksis - fremover skulle udbyttebeskattes af forbeholdt udbytte for sælgeren. Der er heller ikke i forarbejderne til lovændringen i 2005 omtalt noget om udbyttebeskatning hos køber i denne situation.

Siden 1992 har den anførte praksis for beskatning af forbeholdt udbytte hos sælger været beskrevet i Ligningsvejledningen og i Den Juridiske Vejledning. Beskatning hos køber i denne situation har ikke været omtalt, heller ikke efter Landsskatterettens afgørelse i 2003 og lovændringen i 2005.

SKAT tiltrådte i de tre bindende svar fra 2011, 2012 og 2013, at der ikke skulle ske udbyttebeskatning hos aktiekøber af forbeholdt udbytte for sælger med henvisning til, at køber ikke var rette indkomstmodtager, jf. statsskattelovens § 4. Det fremgår af Skatterådets afgørelse af 15. november 2016 (SKM 2016.615 SR), at SKAT i yderligere 7 tilsvarende sager har foretaget tilbagebetaling af udbytteskat og ikke tilsidesat gaveanmeldelserne. Skatteministeriet har under sagen ikke fremlagt

**1935**

oplysninger om sager frem til 2016, hvor SKAT har anset køberen for skattepligtig af forbeholdt udbytte for sælgeren.

Efter ligningslovens § 16 A henregnes som anført til den skattepligtige indkomst alt, hvad der af selskabet udloddes til de aktuelle aktionærer. Hverken bestemmelsens ordlyd og forarbejderne hertil forholder sig til, hvornår en udlodning må anses for at være sket til de aktuelle aktionærer, og der er ikke fornødne holdepunkter for, at der efter bestemmelsen - trods udgangspunktet i statsskattelovens § 4 - altid skal ske beskatning af udbytteudlodninger hos de aktuelle aktionærer, uanset om udlodningen tilfalder andre. Der er heller ikke i øvrigt holdepunkter for, at der med bestemmelsen er tilsigtet en fravigelse af princippet om, at beskatningen sker hos den, der oppebærer indkomsten.

Det afgørende for, om de aktuelle aktionærer skal udbyttebeskattes, må herefter være, om der konkret er sket en udlodning fra selskabet til de pågældende. Med ordet »alt« i § 16 A må begrebet udlodning i den sammenhæng forstås bredt, således at det omfatter alle realiserede økonomiske fordele, som fra selskabet tilfalder aktionæren. Det må anses for at være uden betydning, hvordan udlodningen formelt fremtræder, og det afgørende må være, om der reelt er tilfaldet »den aktuelle aktionær« en formuefordel og dermed udbytte fra selskabet.

Der kan med civilretlig gyldighed indgås aftale om, at sælger i forbindelse med en aktieoverdragelse forbeholder sig retten til udbytte/udlodning, som deklareres efter overdragelsen. En sådan aftale må indebære, at der af aktiesælgeren og ikke køberen, der har ret til beløbet.

X A/S udbetalte udbyttet direkte til A, som efter overdragelsesaftalen af 7. november 2014 havde opnået krav på udbyttet.

Døtrene havde efter overdragelsesaftalerne ikke på noget tidspunkt har haft ret til selv at modtage det udloddede beløb, og de havde således ikke givet afkald på beløbet. Døtrene realiserede endvidere ikke en økonomisk fordel i relation til den del af købesummen,

som blev »berigtiget« med det forbeholdte udbytte. Værdien af selskabet og dermed de aktier, som de fik, blev således tilsvarende mindre som følge af udbytteudlodningen.

Under de anførte omstændigheder finder landsretten herefter, at beskatningen af det samlede udloddede beløb har skullet ske hos A som en del af afståelsesvederlaget, og at der ikke i ligningslovens § 16 A har været hjemmel til tillige at foretage beskatning hos døtrene. Dette svarer som anført også den beskrevne administrative praksis frem til 2016.

Herefter, og da A har været skattefritaget efter reglerne om skattemæssig succession, har SKAT ikke været berettiget til at kræve udbytteskatten tilbagebetalt som sket.

Landsretten tager herefter A's påstand til følge.

Efter sagens udfald skal Skatteministeriet i sagsomkostninger betale 454.000 kr. til A. 450.000 kr. af beløbet er til dækning af udgifter til advokatbistand inkl. moms og 4.000 kr. til retsafgift. Ud over sagens værdi er der ved fastsættelsen af beløbet til advokat taget hensyn til sagens omfang og forløb.

### Thi kendes for ret

Skatteministeriet skal anerkende, at A har krav på tilbagebetaling af overskydende skat for indkomståret 2014 på 13.071.647 kr. med tillæg af renter i henhold til renteloven fra delindbetalingerne af beløbet til Skattestyrelsen i tre lige store rater henholdsvis den 11. august 2016, 25. august 2016 og 23. september 2016.

I sagsomkostninger skal Skatteministeriet inden 14 dage betale 454.000 kr. til A. Beløbet forrentes efter rentelovens § 8 a.

### Højesterets dom

I tidligere instans er afsagt dom af Vestre Landsrets 4. afdeling den 2. juli 2019 (BS-28325/2018-VLR).

I pådømmelsen har deltaget fem dommere: Thomas Rørdam, Henrik Waaben, Lars Hjortnæs, Lars Apostoli og Anne Louise Bormann.

### Påstande

Parterne har gentaget deres påstande.

### Højesterets begrundelse og resultat

A overdrog den 7. november 2014 alle aktier i X A/S til sine tre døtre. En del af købesummen blev berigtiget ved, at A forbeholdt sig at modtage de første 48.413.505 kr. af det udbytte, der blev udloddet efter overdragelsen.

Den 28. november 2014 besluttede selskabets generalforsamling, som bestod af de tre døtre som aktionærer, at udlodde 48.413.505 kr. i udbytte. Udbyttet blev udbetalt til A med fradrag af indeholdt udbytteskat, som udgjorde 13.071.646 kr.

Efterfølgende anmodede A om få tilbagebetalt den indeholdte udbytteskat, hvilket SKAT imødekom den 17. februar 2015.

Den 13. maj 2016 traf SKAT afgørelse om, at A skulle tilbagebetale udbytteskatten, idet SKAT var af den opfattelse, at udbyttet var skattepligtigt hos As døtre, som en del af udbytteskat, som selskabet havde indeholdt, derfor skulle henregnes til dem.

Denne sag angår, om SKATs krav om tilbagebetaling var berettiget.

Der er enighed om, at betalingen til A ikke skal beskattes hos ham, da den anses som en del af hans afståelsessum, som er skattefri efter aktieavancebeskatningslovens § 34, stk. 2, idet overdragelsen skete med skattemæssig succession. Spørgsmålet er derfor i første række, om der er tale om skattepligtigt udbytte for døtrene.

**1936**

Efter ligningslovens § 16 A, stk. 2, nr. 1, jf. stk. 1, er alt, hvad der udloddes som udbytte til aktuelle aktionærer, skattepligtig indkomst, medmindre andet er bestemt.

As døtre var aktuelle aktionærer, da udbyttet blev udloddet, og retten til udbyttet tilkom derfor som udgangspunkt dem. Ifølge aftalen med A om overdragelse af aktierne skulle udbyttet anvendes til delvis betaling af den købesum, de skulle betale for aktierne, og derfor skulle udbyttet udbetales til ham. Højesteret finder, at døtrene ikke ved under disse omstændigheder at overdrage retten til udbytte kan frigøre sig fra pligten til at betale udbytteskat. Døtrene må således anses som rette indkomstmodtagere af udbyttet og skal beskattes heraf.

Højesteret bemærker, at dette resultat har støtte i forarbejderne til lov nr. 1414 af 21. december 2005 om ændring af forskellige skattelove, hvorved ordet »aktuelle« blev indsat foran »aktionærer« i ligningslovens § 16 A, stk. 2, nr. 1. Af disse forarbejder (Folketingstidende 2005-06, tillæg A, lovforslag nr. L 79, s. 2313), som er gengivet i landsrettens dom, fremgår, at ændringen havde til formål at undgå tvivl om, hvorvidt det var muligt at omgå kildebeskatningen af udbytte i forbindelse med overdragelse af retten til udbytte. Efter at der er nævnt et eksempel på en sådan overdragelse, anføres det: »Hos den aktuelle aktionær beskattes udbyttet som aktieindkomst, såfremt der i øvrigt er skattepligt«.

Højesteret finder, at A ikke har godtgjort en bindende administrativ praksis, hvorefter udbytte ikke beskattes hos aktionærerne i en situation som den foreliggende.

Da udbyttet således skulle beskattes hos døtrene, skulle den udbytteskat, som X havde indeholdt, ikke have været udbetalt til A, og SKAT var således som udgangspunkt berettiget til at kræve beløbet tilbage. Højesteret finder, at der ikke foreligger sådanne særlige omstændigheder, som kan begrunde en fravigelse fra udgangspunktet.

Højesteret tager herefter Skatteministeriets påstand om frifindelse til følge.

Sagsomkostningerne er fastsat til dækning af advokatudgift for landsret og Højesteret med 800.000 kr. og af retsafgift for Højesteret med 6.000 kr., i alt 806.000 kr.

### Thi kendes for ret

Skatteministeriet frifindes.

I sagsomkostninger for landsret og Højesteret skal A betale 806.000 kr. til Skatteministeriet.

Det idømte sagsomkostningsbeløb skal betales inden 14 dage efter denne højesteretsdoms afsigelse og forrentes efter rentelovens § 8 a.

Copyright © 2020 Karnov Group Denmark A/S