

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

### CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached Søren Theilgaard et al: The Danish Sales of Goods Act– with comments, 2017 (4th edition), page 81. I further certify that I am fluent in both Danish and English, and qualified to translate from Danish to English. My qualifications include 14 years of experience as a freelance translator as well as 4 years of experience as an in-house translator and editor.

_____

Anna-Rebecca Hutt, Contract Attorney

Licensed in DC and Texas only

On the 6 day of June in the year 2022, before me, the undersigned notary public, personally appeared Anna-Rebecca Hutt, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____ Notary Public

# Søren Theilgaard et al: The Danish Sales of Goods Act– *with comments,* 2017 (4th edition), page 81.

I.D. A hybrid form between specific and generic, which is not mentioned in the Danish Sales of Goods Act and hardly has any great practical significance, is the particular purchase with alternatives, by which is meant a purchase where the item is chosen from several individually determined objects or several specified types of things.

It can e.g., be the purchase of an organ or a piano, cf. Almén, p. 63 or - outside the sale of goods - one of the presented remaining vacation house plots in a subdivision where there are seven unsold plots left, and the purchaser has three days to choose between the seven currently unsold plots. cf. Gomard, Bond Law, Part 1, p. 44 f. This example shows that the distinction between the particular purchase with alternatives and the semi-generic purchase can be difficult, but the decisive factor is presumedly whether all the items that meet the agreement's description of the object for sale are specifically identified and fixed, or whether the available options are only stated in a general description, cf. Gomard, l c, p. 44 and Almén, p. 63.

The individual quality of the alternative items will often differ, e.g., in the example of the vacation house plots due to their location or size, just as they may be priced differently, but not necessary. Conversely, if the items are uniform, there will rarely be a need to designate them as alternatives, but one can then state a general description of the type or lot, cf. Ussing, Gen. Part, pp. 24 f.

As a starting point, the right to choose between the alternative items will, as with generics, belong to the seller. However, an obstacle that releases obligations for one of the alternatives does not mean that the seller's obligation ends, just as a generic seller can claim that a random object within the type has been destroyed, cf. below p. 288.

It is questionable what should apply if the alternative items are determined individually, and all are destroyed in circumstances, which cannot justify discharge from liability under § 24 of the Danish Sale of Goods Act, but on the other hand there is no basis for liability under § 23. It can probably be assumed that the seller does not incur liability for damages.

I. E. As mentioned, the distinction between the generic and the specific is a contractual distinction, and it thus solely depends on the parties' agreement on this or the other type of existing purchase, cf. Jul Clausen et al., The Sales Law, p. 79 and Hedegaard Kristensen et al. ., Sales Law, p. 32.

Conversely, the distinction between fungible goods and non-fungible goods does not depend on the contract. Fungible goods are goods, which generally are considered to be exchangeable with other goods of the same kind, without this being perceived as a change in the purchase.

The distinction between the fungible and non-fungible goods is not given direct significance in the Danish Sales of Goods Act. On the other hand, in certain situations this distinction should be given greater importance than the logical and procedurally sharp contractual distinction between specific and generic. This has e.g., Ussing expressed, in i.a. The first 25 years of the Danish Sales of Goods Act, UfR 1932 B p. 102 f. and Gen. Part, p. 122. There is a restriction on the purchaser's ability to demand replacement in Nord, the Danish Sales of Goods Act, § 34, para. 2. for cases where the purchase concerns an object that was present at the conclusion of the purchase – that was previously a specific purchase - as replacement presupposes that the object can be exchanged with a similar object without inconvenience. A corresponding restriction is also included in Nord, the Danish Sales of Goods Act, § 36, para. 1.

I.E.1. As mentioned, it solely depends on the concluded agreement and its description of the seller's item whether it is specific or generic. The decisive criterion is whether the agreement gives the seller such a right to choose between multiple items that they all can be the right item. In that case, as stated, the object for sale, is generic with particularity.

If the type and thus the seller's right to choose is narrowly limited, e.g., when selling the production from a particular factory or the harvest from a particular farm, then there is not much difference between generic and half-generic. On the other hand, the seller's obligations can then often be thought of as being affected by obstacles to fulfillment, which do not incur liability under The Danish Sales of Goods Act § 24, regardless of whether it is generic, as the demand for specific performance may lapse, cf. p. 304 and p. 325 ff.

In special cases, the agreement can make the type so limited that the seller only has lesser degree of obligations compared to the higher obligations of the specific seller, cf. Mot. p. 21. It must be remembered, however, that discharge from liability, even with very narrowly limited half-generic, presupposes not only impossibility of type, but also that the impossibility of type is due to extraordinary circumstances, which fall under the Danish Sales of Goods Act § 24.

# Søren Theilgaard et al: *Købeloven – med kommentarer,* 2017 (4. udgave), page 81.

I. D. En mellemform mellem species og genus, som ikke er nævnt i købeloven og næppe har større praktisk betydning, er det alternativt bestemte køb, hvorved forstås køb, hvor ydelsen udvælges blandt flere individuelt bestemte genstande eller flere angivne arter af ting.

Der kan f.eks. være tale om køb af et orgel eller et klaver, jf. Almén, p. 63 eller – uden for løsørekøb – en af de påviste resterende sommerhusgrunde i en udstykning, hvor der er 7 usolgte grunde tilbage, således at køberen får adgang til inden 3 dage at vælge blandt de af de 7 grunde, som på dette tidspunkt endnu er usolgt, jf. Gomard, Obligationsret 1. del, p. 44 f. Eksemplet viser, at sondringen mellem det alternativt bestemte køb og det halvgeneriske køb kan være vanskelig, men det afgørende må formentlig være, om alle ydelser, som opfylder aftalens beskrivelse af salgsgenstanden, er særskilt udpeget og fikseret, eller om de foreliggende muligheder kun er angivet ved en generel beskrivelse, jf. Gomard, l.c., p. 44 og Almén, p. 63.

De alternative ydelser vil ofte være individuelt kvalitativt forskellige, f.eks. i eksemplet med sommerhusgrundene på grund af deres beliggenhed eller størrelse, ligesom de kan være prissat forskelligt, men nødvendigt er det ikke. Er ydelserne ensartede, vil der omvendt sjældent være behov for at udpege dem alternativt, men man kan da angive en generel beskrivelse af arten eller partiet, jf. Ussing, Alm. Del, p. 24 f.

Som udgangspunkt vil valgretten mellem de alternative ydelser ligesom i genus tilkomme sælger. En frigørende opfyldelseshindring for et af alternativerne bringer imidlertid ikke sælgers forpligtelse til ophør, lige så lidt som genussælger kan påberåbe sig, at en tilfældig genstand inden for arten er gået til grunde, jf. nedenfor p. 288.

Det er tvivlsomt, hvad der skal gælde, hvis de alternative ydelser er individuelt bestemt, og alle går til grunde ved omstændigheder, som ikke kan begrunde ansvarsfrihed efter kbl. § 24, men der på den anden side ikke foreligger ansvarsgrundlag efter kbl. § 23. Det må formentlig antages, at sælger da ikke pådrager sig erstatningsansvar.

I. E. Sondringen mellem genus og species er som nævnt en kontraktssondring, og det beror således alene på parternes aftale, om den ene eller anden type køb foreligger, jf. Jul Clausen m.fl., Købsretten, p. 79 og Hedegaard Kristensen m.fl., Køberet, p. 32.

Omvendt beror sondringen mellem fungible goder og ikke-fungible goder ikke på kontrakten. Ved fungible goder forstås således goder, der ud fra en almen vurdering lader sig ombytte med andre goder af samme slags, uden at det opfattes som en forandring af købet.

Sondringen mellem de fungible og ikke-fungible goder er ikke tillagt direkte betydning i købeloven. På den anden side bør denne sondring i visse situationer tillægges større betydning end den logiske og formelt skarpe kontraktssondring mellem species og genus. Dette har f.eks. Ussing givet udtryk for, bl.a. i Købelovens første 25 Aar, UfR 1932 B p. 102 f. og Alm. Del, p. 122. Nord.kbl. § 34, stk. 2, indeholder en begrænsning i køberens adgang til at kræve omlevering i tilfælde, hvor købet angår en genstand, der forelå ved købets indgåelse – det der tidligere var specieskøb – idet omlevering da forudsætter, at genstanden uden ulempe kan ombyttes med en tilsvarende genstand. En tilsvarende begrænsning må indlægges i nord.kbl. § 36, stk. 1.

I. E. 1. Som nævnt beror det alene på den indgåede aftale og dens beskrivelse af sælgerens ydelse, om der foreligger species eller genus. Det afgørende kriterium er, om aftalen levner sælgeren en sådan valgret mellem flere ydelser, at de alle vil kunne være rigtig ydelse. I så fald er salgsgenstanden som anført generisk bestemt.

Er arten og dermed sælgers valgret snævert begrænset, f.eks. ved salg af produktionen fra en bestemt fabrik eller af høsten fra en bestemt gård, er der ikke stor forskel på genus og halvgenus. På den anden side kan sælgers forpligtelser da oftere tænkes ramt af opfyldelseshindringer, som ikke pådrager erstatningsansvar efter kbl. § 24, uanset at der foreligger genus, ligesom krav om naturalopfyldelse kan falde bort, jf. p. 304 og p. 325 ff.

I særlige tilfælde kan arten være så begrænset bestemt i henhold til aftalen, at sælger kun i ringe grad pålægges videregående forpligtelser end speciessælger, jf. Mot. p. 21. Det må dog erindres, at ansvarsfrihed, selv ved meget snævert begrænset halvgenus, forudsætter ikke blot artsumulighed, men også at artsumuligheden beror på ekstraordinære omstændigheder, som falder ind under kbl. § 24.