# Exhibit 1

ABSOLUTE
TRANSLATIONS
We have a way with words

www.absolutetranslations.com

Absolute Translations Ltd
Voest Alpine House
Albion Place
London
W6 0QT

London Office:
Liberty House
222 Regent Street
London
W1B 5TR

Manchester Office:
111 Piccadilly
Manchester
M1 2HY

Birmingham Office:
Cornwall Buildings
45 Newhall Street
Birmingham
B3 3QR

Tel: +44 (0)333 577 0767

@: main@absolutetranslations.com
www.absolutetranslations.com

## Statement of truth

I, **John Skilbeck**

on behalf of Absolute Translations Ltd, Voest Alpine House, Albion Place, London, W6 0QT

confirm that I am competent to translate from **Danish to English**

in accordance with the following qualifications:

**First Class Degree in Modern Languages from The Queen's College, Oxford, Membership of the Chartered Institute of Linguists, consultancy work in Denmark and over 25 years' experience as a translator.**

I hereby confirm that I have personally carried out this translation and it is, to the best of my

knowledge and belief, a faithful rendering of the following documents:

L173_betaenkning69B introduction

Signed: *John Skilbeck*

Date: **30/06/2020**









Registered Office: Voest Alpine House, Albion Place, London W6 0QT     Registered No. 5078111     VAT Registered No. 775 9220 00

FOLKETINGSTIDENDE  B [Danish Official Gazette]                Parliament of Denmark

[Insignia]

For Bill Proposal No. **L 173**                    Parliamentary period 2011-12

Report by the Tax Committee on June 11, 2012

# Report
concerning

# Proposal for a bill regarding amendments to the Companies Tax Act, Withholding Tax Act, the Tax Control Act, the Tax Administration Act and various other laws

..............................................................................................................
With respect to No. 12

Under the current rules, a foreign dividend recipient company or person is entitled to the payment of withholding tax retained if the tax authorities have lost a case concerning withholding tax on the dividend in question. This applies regardless of whether the tax authorities choose to bring the ruling of the National Tax Court to the courts, or to appeal a judgment before a higher court. However, appeals against judgments can have a suspensory effect if the appeal is made within the execution period (as a rule 14 days).

If the tax authorities later win the case, the withholding tax originally retained may have been paid back to the foreign company and possibly re-channelled to other foreign companies within its group. In effect, this means that the tax authorities have a limited opportunity to recover the amount of withholding tax originally paid out.

The current interest rate on withholding taxes received is in accordance with the Interest Act and is described in The Legal Guide 2012-1 section AA 12.3 Interest on repayment claims from SKAT [Translator: Danish Tax Authority]. The interest rate is the rate that applies for the period in question in accordance with § 5. of the Interest Act. The interest allocation is made once 30 days have passed following receipt of the request for repayment by the tax authorities.

The draft amendment proposes a change in the interest rate on the withholding tax, so that the interest rate level is essentially equal to the interest rate that is obtained for the repayment of taxes overpaid. In addition, it is proposed that the tax authorities be given the opportunity to suspend the payment deadline and thus the interest rate, if the recipient's circumstances impede the verification of whether the recipient is in fact the person entitled to the repayment. This principle is already applied today in §12 para. 3 of the Tax Collection Act, where the tax authorities can interrupt the deadline for, for example, the outward payment of negative VAT if the company's circumstances prevent the authorities from carrying out checks.

If, with regard to the payment of dividends, interest or royalties, the withholding tax has been deducted and exceeds withholding tax, which can definitively be retained under a double taxation agreement, Directive 2011/96 / EU on a common system of taxation for parent and subsidiary

companies from different Member States or Directive 2003/49 / EC on a common system of taxation of interest or royalties, the recipient is entitled to repayment of the excess amount.

Regarding the repayment, it should be noted that if, for example, it follows from a double taxation agreement that the withholding tax is to be reduced but not waived, and this means that Denmark does not retain withholding tax, then that will be the full amount to be repaid to the recipient.

The tax authorities must ensure that the amount is paid to the person entitled within six months of receipt of the request for payment. If payment is made later than 6 months after receipt of the request, it is proposed that the claim bear interest at a rate equal to the interest rate according to § 7 para. 2, in the Act on the Collection of Taxes and Duties etc., plus 0.4 percentage points per year, per month commenced.

This means that the interest rate level for withholding tax claims is essentially the same as the rate applying to the repayment of taxes overpaid.

The interest due on the excess amount is calculated at the earliest after 6 months, since the tax authorities are given a time limit of 6 months to process the refund request. This deadline has been chosen, taking into account the fact that withholding tax cases may often be complex to uncover. In order to assess whether the taxpayer requesting repayment is in fact also the person entitled to receive the excess amount, in-depth investigations of, for example, group structure and overlying ownership relationships are often required. The 6-month deadline follows the Commission's recommendations in 'Recommendation on withholding tax procedures C (2009) 7924 of 19 October 2009'.

If the recipient refuses to help in clarifying the circumstances that will form the basis for assessing whether the recipient is truly legitimate or it does not provide sufficient information, the tax authorities may suspend the 6-month period until the conditions for payment are fulfilled. If the payment period of 6 months is interrupted, the interest payment will also be deferred.

Thus, if the tax authorities need, for example, to establish the receiving company's ownership conditions, and if the receiving company does not contribute sufficiently to this, the tax authorities may, after a specific assessment, suspend the period of 6 months until the receiving company has provided the necessary information.

The tax authorities specifically assess what information is needed to investigate whether the conditions for payment of withholding tax are present. It is the recipient's duty to provide or substantiate this information. If the recipient fails to comply with the tax authorities' request, the tax authorities are entitled to suspend the payment deadline in accordance with the proposed § 69B para. 1, of the Withholding Tax Act.

The proposal for a security deposit against the repayment of withholding taxes on dividends, interest and royalties is intended to secure the public against loss of tax claims in cases that have not been finally decided by the courts.

The proposal also opens the possibility that, after a specific assessment, the tax authorities may require a guarantee deposit from the foreign recipient before payment is made. It is a condition for the requirement for a guarantee deposit that the claim is disputed and has not been finalized by an administrative appeals body or by the courts.

If the tax authorities are of the opinion that, after a specific assessment, the payment of withholding tax will entail an imminent risk of loss, the tax authorities may require the recipient to provide some security before payment is made. The tax authorities can only require a security guarantee if the claim is disputed and has not been definitively settled by an administrative appeals body or the courts.

Thus, if the tax authorities have administratively decided that the paying company must retain withholding tax, and if the paying company retained withholding tax, but appealed against the decision and this has been upheld at a higher instance, the tax authorities can demand a security from the receiving company requesting the withholding tax if the tax authority has appealed the decision to a higher court.

The proposed rules are intended to safeguard the public against loss of tax claims in cases where the tax authorities have, after a final decision in court, been confirmed in their claim for withholding tax, but where in the meantime the withholding tax has been paid back to a foreign company or foreign person.

It is to be expected that the tax authorities will in future increase the focus and control regarding the repayment of withholding taxes. This must be done to ensure that there is no undue repayment to a foreign recipient, who is not considered a beneficial owner.

The proposed § 69B of the Withholding Tax Act has effect on applications for repayment that have not been settled by the Customs and Tax Administration at latest by 30 June 2012, cf. bill proposal § 10, para. 1.

*Consequences for revenue accrual*
With regard to revenue, the amendment seeks to prevent Denmark from losing proceeds in connection with the lack of opportunities to recover unwarranted reimbursements of the dividend tax, etc. In addition, there may be a smaller saving in connection with the transition to the application of the interest rate in the Collection Law instead of the interest rate from the Interest Act for interest payments on late repayment of withholding tax on dividends, etc.

[With respect to No. 13]

# FOLKETINGSTIDENDE B

**FOLKETINGET**



Til lovforslag nr. **L 173**                    Folketinget 2011-12

Betænkning afgivet af Skatteudvalget den 11. juni 2012

# Betænkning

over

# Forslag til lov om ændring af selskabsskatteloven, kildeskatteloven, skattekontrolloven, skatteforvaltningsloven og forskellige andre love

(Styrkelse af indsatsen mod nulskatteselskaber, beregning af indkomsten i et fast driftssted og åbenhed om selskabers skattebetalinger m.v.)

[af skatteministeren (Thor Möger Pedersen)]

## 1. Ændringsforslag

Skatteministeren har stillet 15 ændringsforslag til lovforslaget.

## 2. Udvalgsarbejdet

Lovforslaget blev fremsat den 25. april 2012 og var til 1. behandling den 8. maj 2012. Lovforslaget blev efter 1. behandling henvist til behandling i Skatteudvalget.

*Dispensation fra bestemmelserne i § 8 a, stk. 2, og § 13, stk. 1, i Folketingets Forretningsorden*

*Udvalget* indstiller, at der dispenseres fra bestemmelsen i Folketingets Forretningsordens § 8 a, stk. 2, om, at der skal gå 2 dage fra omdeling af betænkningen, til lovforslaget kommer til 2. behandling.

*Udvalget* indstiller endvidere, at der dispenseres fra bestemmelsen i Folketingets Forretningsordens § 13, stk. 1, således at 3. behandling finder sted tidligere end 2 dage efter 2. behandling.

*Møder*

Udvalget har behandlet lovforslaget i 8 møder.

*Høring*

Et udkast til lovforslaget har inden fremsættelsen været sendt i høring, og Skatteministeriet sendte den 1. februar 2012 dette udkast til udvalget, jf. SAU alm. del – bilag 133. Den 25. april 2012 sendte skatteministeren de indkomne høringssvar og et notat herom til udvalget.

*Skriftlige henvendelser*

Udvalget har i forbindelse med udvalgsarbejdet modtaget skriftlige henvendelser fra:
Bavarian Nordic A/S,

Bech-Bruun Advokatfirma,
Dansk Byggeri,
Deloitte Statsautoriseret Revisionspartnerselskab,
FSR – danske revisorer,
Lundbeckfonden og ALK-Abelló A/S,
Medical Prognosis Institute A/S,
Novo A/S og
Novozymes A/S.
Skatteministeren har over for udvalget kommenteret de skriftlige henvendelser til udvalget.

*Deputationer*

Endvidere har følgende mundtligt over for udvalget redegjort for deres holdning til lovforslaget:
ALK-Abelló A/S,
Lundbeckfonden og
Novozymes A/S.

*Spørgsmål*

Udvalget har stillet 26 spørgsmål til skatteministeren til skriftlig besvarelse, som denne har besvaret.

## 3. Indstillinger

Et *flertal* i udvalget (S, RV, EL og SF) indstiller lovforslaget til *vedtagelse* med de stillede ændringsforslag.

Et *mindretal* i udvalget (V, DF, LA og KF) indstiller lovforslaget til *forkastelse* ved 3. behandling. Mindretallet vil stemme for de under nr. 1, 2, 4-8, 11, 13 og 14 stillede ændringsforslag og imod de under nr. 3, 9, 10, 12 og 15 stillede ændringsforslag.

Inuit Ataqatigiit, Siumut, Sambandsflokkurin og Javnaðarflokkurin var på tidspunktet for betænkningens afgivelse ikke repræsenteret med medlemmer i udvalget og

havde dermed ikke adgang til at komme med indstillinger eller politiske udtalelser i betænkningen.

En oversigt over Folketingets sammensætning er optrykt i betænkningen.

## 4. Ændringsforslag med bemærkninger

Æ n d r i n g s f o r s l a g

Til § 2

Af *skatteministeren,* tiltrådt af *udvalget:*

**1)** Efter nr. 7 indsættes som nyt nummer:

»**01.** I *§ 3 A, stk. 5, § 10, stk. 5, § 29 A, stk. 3,* og *§ 29 B, stk. 2,* ændres »§ 31, stk. 4« til: »§ 31, stk. 6«.«
[Manglende konsekvensændringer]

**2)** Efter nr. 8 indsættes som nyt nummer:

»**02.** I *§ 8 A, stk. 2,* og *§ 11 B, stk. 8,* ændres »§ 31, stk. 3« til: »§ 31, stk. 5«.«
[Manglende konsekvensændringer]

Af *skatteministeren,* tiltrådt af et *flertal* (S, RV, EL og SF):

**3)** I det under *nr. 9* foreslåede *§ 12* indsættes i *stk. 4* efter »reglerne i«: »§ 31, stk. 9, eller«.
[Udvidelse af reglen om samspil mellem underskudsbegrænsning og bortseelse til også at omfatte sambeskattede faste driftsteder m.v. i Danmark]

Af *skatteministeren,* tiltrådt af *udvalget:*

**4)** *Nr. 11* affattes således:

»**11.** I *§ 31, stk. 1,* indsættes efter 2. pkt.:
»Selskaber og foreninger m.v., der ikke kan være omfattet af § 12, stk. 2 og 3, anses dog ikke for koncernforbundne med selskaber og foreninger m.v., der kan være omfattet af § 12, stk. 2 og 3.««
[Tydeliggørelse af, at det afgørende er, hvorvidt selskabet m.v. overhovedet kan blive omfattet af underskudsbegrænsningsreglen i selskabsskatteloven]

**5)** Efter nr. 11 indsættes som nyt nummer:

»**03.** I *§ 31, stk. 1, 3. pkt.,* der bliver stk. 1, 4. pkt., ændres »stk. 2-7« til: »stk. 2-9«.«
[Manglende konsekvensændring]

**6)** I det under *nr. 14* foreslåede *§ 31, stk. 4, 10. pkt.,* ændres »et eller flere koncernselskaber« til: »det ultimative moderselskab«, og efter 10. pkt. indsættes:
»Selskaber, hvor alle kapitalandele ved indkomstårets udløb er ejet direkte eller indirekte af selskabet eller selskaber, der hæfter solidarisk efter 10. pkt., hæfter ligeledes solidarisk sammen med selskabet.«

[Ændring af kriteriet for solidarisk hæftelse i sambeskatning]

**7)** I de under *nr. 14* foreslåede *§ 31, stk. 4, 11.* og *12. pkt.,* der bliver 12. og 13. pkt., indsættes efter »10.«: »og 11.«
[Konsekvensændring som følge af ændringsforslag nr. 6]

**8)** I det under *nr. 14* foreslåede *§ 31, stk. 4, 12. pkt.,* der bliver 13. pkt., ændres »af andre koncernselskaber« til: »direkte eller indirekte af det ultimative moderselskab«.
[Ændring af maksimering af subsidiær hæftelse i sambeskatning]

Til § 5

Af *skatteministeren,* tiltrådt af et *flertal* (S, RV, EL og SF):

**9)** Før nr. 1 indsættes som nyt nummer:

»**01.** I *§ 2, stk. 1, nr. 4, 1. pkt.,* ændres »stk. 9« til: »stk. 10«.«
[Manglende konsekvensændring]

**10)** Efter nr. 1 indsættes som nyt nummer:

»**02.** I *§ 2, stk. 1, nr. 7, 1. pkt.,* ændres »stk. 7« til: »stk. 8«.«
[Manglende konsekvensændring]

Af *skatteministeren,* tiltrådt af *udvalget:*

**11)** I det under *nr. 5* foreslåede *§ 69, stk. 3,* ændres i *2. pkt.* »10.-13. pkt.« til: »10.-14. pkt.«
[Konsekvensændring som følge af ændringsforslag nr. 6]

Af *skatteministeren,* tiltrådt af et *flertal* (S, RV, EL og SF):

**12)** Efter nr. 5 indsættes som nyt nummer:

»**03.** Efter § 69 A indsættes:

»**§ 69 B.** Har nogen, der er skattepligtig efter § 2 eller selskabsskattelovens § 2, modtaget udbytte, royalty eller renter, hvori der efter §§ 65-65 D er indeholdt kildeskat, som overstiger den endelige skat efter en dobbeltbeskatningsoverenskomst, direktiv 2011/96/EU om en fælles beskatningsordning for moder- og datterselskaber fra forskellige medlemsstater eller direktiv 2003/49/EF om en fælles ordning for beskatning af renter eller royalties, tilbagebetales beløbet inden 6 måneder fra told- og skatteforvaltningens modtagelse af anmodning om tilbagebetaling. Sker tilbagebetaling efter dette tidspunkt, tilkommer der den skattepligtige en rente svarende til renten efter opkrævningslovens § 7, stk. 2, med tillæg af 0,4 procentpoint pr. påbegyndt måned.

*Stk. 2.* Kan told- og skatteforvaltningen på grund af modtagerens forhold ikke foretage kontrol af, om betingelserne for tilbagebetaling af kildeskat er opfyldt, afbrydes udbetalingsfristen efter stk. 1, indtil modtagerens forhold ikke længere hindrer kontrol.

*Stk. 3.* Skønner told- og skatteforvaltningen, at udbetaling på det foreliggende grundlag vil indebære en nærliggende ri-

siko for tab, kan forvaltningen kræve sikkerhedsstillelse af modtageren. Told- og skatteforvaltningen kan kun kræve sikkerhedsstillelse, hvis kravet om indeholdelse af kildeskat er omtvistet og ikke endeligt afgjort ved en administrativ klageinstans eller domstolene.««
[Ændrede regler om forrentning af kildeskattekrav og krav om sikkerhedsstillelse]

*Af skatteministeren, tiltrådt af udvalget:*

Ny paragraf

**13)** Efter § 9 indsættes som ny paragraf:

**»§ 01**

I lov nr. 426 af 6. juni 2005 om ændring af selskabsskatteloven og andre skattelove (Nedsættelse af selskabsskatten og globalpuljeprincip i sambeskatningen), som ændret ved § 5 i lov 1182 af 12. december 2005, § 14 i lov nr. 343 af 18. april 2007 og § 6 i lov nr. 344 af 18. april 2007, foretages følgende ændring:

**1.** I *§ 15, stk. 8, 5. pkt.,* ændres »ligningslovens § 15« til: »selskabsskattelovens § 12«.«
[Manglende konsekvensændring]

Til § 10

**14)** I *stk. 2* ændres »og § 6, nr. 1« til: »§ 6, nr. 1, og § 01«.
[Virkningstidspunkt for manglende konsekvensændring]

*Af skatteministeren, tiltrådt af et flertal* (S, RV, EL og SF):

**15)** Efter stk. 7 indsættes som nyt stykke:
»*Stk. 8.* § 5, nr. 03, har virkning for anmodninger om tilbagebetaling af kildeskatter, der ikke er afgjort af told- og skatteforvaltningen senest den 30. juni 2012. Dette gælder, uanset at indeholdelse af kildeskat er sket før den 1. juli 2012.«
Stk. 8 og 9 bliver herefter stk. 9 og 10.
[Virkningstidspunkt for anmodning om tilbagebetaling af kildeskatter]

B e m æ r k n i n g e r

Til nr. 1 og 2

Der er tale om konsekvensændringer som følge af den foreslåede regulering af underskudsfremførsel og sambeskatning.

Til nr. 3

Den foreslåede § 12, stk. 4, i selskabsskatteloven regulerer samspillet mellem den foreslåede underskudsbegrænsning og reglen i ligningslovens § 33 H om adgang til at bortse fra underskud for at opnå lempelse for udenlandske skatter.

Ligningslovens § 33 H omfatter selskaber og fonde, der er fuldt skattepligtige til Danmark.

Efter selskabsskattelovens § 31, stk. 7, kan et sambeskattet fast driftssted i Danmark (af et udenlandsk selskab) eller et sambeskattet datterselskab i Danmark (med et udenlandsk moderselskab) vælge at se bort fra underskud, der overføres til modregning i dets indkomst fra andre sambeskattede selskaber eller faste driftssteder. Det er en betingelse, at henholdsvis det faste driftssteds og datterselskabets indkomst medregnes ved indkomstopgørelsen i udlandet. Ved at bortse fra underskuddet kan der opnås lempelse for dansk skat i den udenlandske skat af indkomsten.

Selskabsskattelovens § 31, stk. 7, indeholder en regel svarende til ligningslovens § 33 H, dog således at formålet er at opnå lempelse for danske skatter i udenlandsk indkomst. Ligningslovens § 33 H har til formål at opnå lempelse for udenlandske skatter i dansk indkomst. På den baggrund foreslås det, at den foreslåede regulering af samspillet mellem den foreslåede underskudsbegrænsning og muligheden for at bortse fra underskud for at opnå lempelse for skatter udvides til også at omfatte de situationer, hvor der bortses fra underskud efter selskabsskattelovens § 31, stk. 7.

Til nr. 4

Der foreslås en tydeliggørelse af den foreslåede tilføjelse til koncerndefinitionen i reglerne om sambeskatning. Den pågældende tilføjelse skal sikre, at der i samme sambeskatning ikke kan indgå både selskaber, som er undergivet de generelle regler om udnyttelse af underskud for tidligere år, og selskaber, der er undergivet særlige regler om udnyttelse af underskud for tidligere år.

Formålet er at gøre det klarere, at det afgørende kriterium er, hvorvidt et selskab m.v., hvis det måtte have et uudnyttet underskud fra tidligere år, skal bruge reglerne i selskabsskatteloven § 12, stk. 2 og 3, eller om selskabet m.v. skal bruge et andet lovbaseret regelsæt om udnyttelse af gamle underskud.

Reglen skal således læses på den måde, at det afgørende kriterium er, hvorvidt et selskab m.v. i det konkrete år har eller ikke har et uudnyttet underskud fra tidligere år, der kan fremføres.

Det foreslås endvidere, at henvisningen til (selskabsskattelovens) § 12, stk. 2, ændres til en henvisning til § 12, stk. 2 og 3, da de to stykker hænger sammen.

Til nr. 5

Der er tale om en konsekvensændring som følge af den foreslåede regulering af underskudsfremførsel og sambeskatning.

Til nr. 6 og 7

Ifølge det fremsatte forslag hæfter administrationsselskabet og sambeskattede selskaber, hvor alle kapitalandele ved indkomstårets udløb er ejet direkte eller indirekte af et eller flere koncernselskaber, solidarisk sammen med skyldnerselskabet for dette selskabs skatter.

Dette indebærer imidlertid, at i eksempelvis en koncernstruktur med tre selskaber – administrationsselskab, mellemholdingselskab med minoritetsaktionærer og et helejet datterselskab af mellemholdingselskabet – vil dattersel-

skabet kunne komme til at hæfte solidarisk for administrationsselskabets manglende skattebetaling, hvorimod det mellemliggende holdingselskab kun hæfter subsidiært med en forholdsmæssig andel.

Det foreslås på denne baggrund, at kriteriet for, hvilke selskaber i en sambeskatning der hæfter solidarisk, ændres, så kriteriet bliver, at de selskaber, der hæfter solidarisk sammen med skyldnerselskabet for dette selskabs skatter, er selskaber, hvor alle kapitalandele ved indkomstårets udløb er ejet direkte eller indirekte af det ultimative moderselskab.

Det foreslås endvidere, at den solidariske hæftelse yderligere skal omfatte selskaber, hvor alle kapitalandele ved indkomstårets udløb er ejet direkte eller indirekte af skyldnerselskabet eller selskaber, der hæfter solidarisk. Herved sikres det, at hæftelsen bliver den samme for eksempelvis en kæde af selskaber, der direkte eller indirekte er ejet fuldt ud af et solidarisk hæftende selskab. Tilsvarende sikres det, at selskaber ejet af skyldnerselskabet hæfter solidarisk med dette selskab.

#### Til nr. 8

Det foreslås, at den maksimering af hæftelsen, der foreslås at skulle gælde for koncernselskaber med minoritetsaktionærer, ændres, så disse selskaber maksimalt hæfter for den del af kravet, der svarer til den andel af kapitalen i det hæftende selskab, der ejes direkte eller indirekte af det ultimative moderselskab.

Forslaget skal ses i sammenhæng med ændringsforslag nr. 6 og 7, hvormed det foreslås, at kriteriet for, hvilke selskaber der skal hæfte solidarisk, ændres.

#### Til nr. 9 og 10

Der er tale om konsekvensændringer som følge af den foreslåede regulering i forhold til faste driftssteder.

#### Til nr. 11

Der er tale om en konsekvensændring som følge af ændringsforslag nr. 6, hvormed der indsættes et nyt punktum efter det foreslåede 10. pkt. i selskabsskattelovens § 31, stk. 4.

#### Til nr. 12

Med de nugældende regler har et udenlandsk udbyttemodtagende selskab eller person krav på udbetaling af indeholdt kildeskat, hvis skattemyndighederne har tabt en sag om indeholdelse af kildeskat af det pågældende udbytte. Dette gælder, uanset om skattemyndighederne vælger at indbringe kendelsen fra Landsskatteretten for domstolene eller at anke en dom til en højere retsinstans. Anke af domme kan dog have opsættende virkning, hvis anken sker inden for eksekutionsfristen (som udgangspunkt 14 dage).

Hvis skattemyndighederne senere måtte vinde sagen, kan den oprindelig tilbageholdte kildeskat være udbetalt til det udenlandske selskab og eventuelt viderekanaliseret til andre udenlandske selskaber i koncernen. Det medfører i realiteten, at skattemyndighederne har en begrænset mulighed for at få tilbagebetalt det udbetalte kildeskattebeløb.

Den nugældende forrentning af indbetalte kildeskatter sker efter renteloven og er beskrevet i Den juridiske vejled-

ning 2012-1 afsnit A. A. 12.3 Forrentning af tilbagebetalingskrav fra SKAT. Rentesatsen er den sats, der for den pågældende periode gælder efter rentelovens § 5. Rentetilskrivningen sker, når der er gået 30 dage, fra skattemyndighederne har modtaget anmodningen om tilbagebetaling.

Ved ændringsforslaget foreslås en ændret forrentning af kildeskattekravet, således at renteniveauet i det væsentligste sidestilles med den forrentning, som opnås ved tilbagebetaling af overskydende skatter. Herudover foreslås det, at skattemyndighederne får mulighed for at afbryde udbetalingsfristen og dermed forrentningen, hvis modtagerens forhold hindrer kontrol af, om modtageren reelt er den udbetalingsberettigede. Dette princip anvendes allerede i dag i opkrævningslovens § 12, stk. 3, hvor skattemyndighederne kan afbryde fristen for eksempelvis udbetaling af negativ moms, hvis virksomhedens forhold gør, at myndighederne ikke kan foretage kontrol.

Er der i forbindelse med udbetaling af udbytter, renter eller royalties sket indeholdelse af kildeskat, og oversigter indeholdelsen af kildeskat, hvad der endeligt kan indeholdes efter en dobbeltbeskatningsoverenskomst, direktiv 2011/96/EU om en fælles beskatningsordning for moder- og datterselskaber fra forskellige medlemsstater eller direktiv 2003/49/EF om en fælles ordning for beskatning af renter eller royalties, har modtageren krav på tilbagebetaling af beløbet.

Vedrørende tilbagebetalingen bemærkes, at hvis det eksempelvis følger af en dobbeltbeskatningsoverenskomst, at kildeskatten skal nedsættes, men ikke frafaldes, og medfører dette, at Danmark ikke indeholder kildeskat, vil det være det fulde beløb, der tilbagebetales til modtageren.

Skattemyndighederne skal inden for 6 måneder fra modtagelsen af anmodningen om udbetaling sørge for, at beløbet udbetales til den berettigede. Sker udbetaling senere end 6 måneder efter modtagelsen af anmodningen, foreslås det, at kravet forrentes med en rente svarende til renten efter § 7, stk. 2, i lov om opkrævning af skatter og afgifter m.v. med tillæg af 0,4 procentpoint pr. påbegyndt måned.

Hermed svarer renteniveauet for forrentning af kildeskattekrav i det væsentligste til den forrentning, som opnås ved tilbagebetaling af overskydende skatter.

Forrentningen af det overskydende beløb sker tidligst efter 6 måneder, idet skattemyndighederne gives en frist på 6 måneder til at behandle anmodningen om tilbagebetaling. Fristen er valgt under hensyntagen til, at sager om indeholdelse af kildeskat i mange tilfælde kan være komplekse at afdække. For at vurdere, om den skattepligtige, der anmoder om tilbagebetaling, reelt også er den berettigede til at modtage det overskydende beløb, skal der ofte foretages tilbundsgående undersøgelser af eksempelvis koncernstruktur og overliggende ejerforhold. Fristen på 6 måneder følger Kommissionens anbefalinger i »Henstilling om procedurer for kildeskattelettelser C(2009)7924 af 19. oktober 2009«.

Hvis modtageren vægrer sig ved at medvirke til at afklare de forhold, der skal danne grundlag for vurderingen af, om modtageren er den reelt berettigede, eller ikke afgiver tilstrækkelige oplysninger, kan skattemyndighederne afbryde fristen på 6 måneder, indtil betingelserne for udbetaling er

opfyldt. Afbrydes udbetalingsfristen på 6 måneder, sker der også en udskydelse af forrentningen.

Har skattemyndighederne således behov for at få afdækket eksempelvis det modtagende selskabs ejerforhold, og det modtagende selskab ikke medvirker hertil på tilstrækkelig vis, kan skattemyndighederne efter en konkret vurdering afbryde fristen på 6 måneder, indtil det modtagende selskab har fremlagt de nødvendige oplysninger.

Skattemyndighederne vurderer konkret, hvilke oplysninger der er nødvendige for at undersøge, om betingelserne for udbetaling af indeholdt kildeskat er til stede. Det er modtagerens pligt at fremlægge dokumentation for eller sandsynliggøre disse oplysninger. Efterkommer modtageren ikke skattemyndighedernes anmodning, er skattemyndighederne berettigede til at afbryde udbetalingsfristen efter den foreslåede § 69 B, stk. 1, i kildeskatteloven.

Forslaget om sikkerhedsstillelse i forbindelse med tilbagebetaling af indeholdte kildeskatter på udbytter, renter og royalties skal sikre det offentlige mod tab af skattekrav i sager, som ikke er endeligt afgjort ved domstolene.

Med forslaget åbnes der endvidere mulighed for, at skattemyndighederne efter en konkret vurdering kan kræve sikkerhedsstillelse fra den udenlandske modtager, forinden udbetaling foretages. Det er en betingelse for at kræve sikkerhedsstillelse, at kravet er omtvistet og ikke endeligt afgjort ved en administrativ klageinstans eller domstolene.

Skønner skattemyndighederne efter en konkret vurdering, at udbetaling af kildeskat vil medføre en nærliggende risiko for tab, kan skattemyndighederne kræve, at modtageren stiller sikkerhed, forinden udbetaling foretages. Skattemyndighederne kan kun stille krav om sikkerhedsstillelse, hvis kravet er omtvistet og ikke endeligt afgjort ved en administrativ klageinstans eller domstolene.

Har skattemyndighederne således administrativt afgjort, at det udbetalende selskab skal indeholde kildeskat, og har det udbetalende selskab indeholdt kildeskatten, men påklaget afgørelsen og fået medhold ved en højere instans, kan skattemyndighederne kræve sikkerhedsstillelse af det modtagende selskab, som anmoder om udbetaling af kildeskatten, hvis skattemyndigheden har indbragt afgørelsen for en højere instans.

De foreslåede regler skal sikre det offentlige mod tab af skattekrav i de tilfælde, hvor skattemyndighederne efter en endelig afgørelse ved domstolene har fået medhold i kravet om indeholdelse af kildeskat, men hvor kildeskatten i den mellemliggende periode er blevet udbetalt til et udenlandsk selskab eller en udenlandsk person.

Det må forventes, at skattemyndighederne fremover vil øge fokuseringen og kontrollen vedrørende tilbagebetaling af kildeskatter. Dette bør ske for at sikre, at der ikke sker uretmæssig tilbagebetaling til en udenlandsk modtager, som ikke anses for retmæssig ejer.

Den foreslåede § 69 B i kildeskatteloven har virkning for anmodninger om tilbagebetaling, der ikke er afgjort af told- og skatteforvaltningen senest den 30. juni 2012, jf. lovforslaget § 10, stk. 1.

*Provenumæssige konsekvenser*

Provenumæssigt tilsigter ændringsforslaget at undgå, at Danmark taber provenu i forbindelse med manglende muligheder for inddrivelse af uberettigede refusioner af indeholdt udbytteskat m.v. Hertil kommer en eventuel mindre besparelse i forbindelse med overgangen til anvendelse af rentesatsen i opkrævningsloven i stedet for rentesatsen fra renteloven ved forsinket tilbagebetaling af kildeskat på udbytter m.v.

### Til nr. 13

Der er tale om en konsekvensændring, som følge af at ligningslovens § 15 flyttes til selskabsskatteloven.

### Til nr. 14

Det foreslås, at konsekvensændringen, som følge af at ligningslovens § 15 flyttes til selskabsskatteloven, som de øvrige konsekvensændringer som følge heraf skal have virkning for indkomstår, der påbegyndes den 1. juli 2012 eller senere.

### Til nr. 15

Det foreslås, at virkningstidspunktet for den foreslåede § 69 B i kildeskatteloven gælder anmodninger om tilbagebetaling af kildeskatter, som told- og skatteforvaltningen ikke har afgjort senest den 30. juni 2012. Dette gælder, uanset at kildeskatten er indeholdt eller anmodningen om tilbagebetaling er indsendt til told- og skatteforvaltningen før den 1. juli 2012.

Ane Halsboe-Larsen (S)  Henrik Sass Larsen (S)  Jacob Bjerregaard (S)  John Dyrby Paulsen (S)

Pernille Rosenkrantz-Theil (S)  Simon Kollerup (S)  Thomas Jensen (S)  Nadeem Farooq (RV)  Rasmus Helveg Petersen (RV)

Camilla Hersom (RV)  Jonas Dahl (SF)  Jesper Petersen (SF)  Frank Aaen (EL)  Johanne Schmidt-Nielsen (EL)

Lars Dohn (EL)  Hans Andersen (V)  Gitte Lillelund Bech (V) fmd.  Martin Geertsen (V)  Kristian Pihl Lorentzen (V)

Henrik Høegh (V)  Torsten Schack Pedersen (V)  Troels Lund Poulsen (V)  Mads Rørvig (V)  Dennis Flydtkjær (DF)

Mikkel Dencker (DF)  Hans Kristian Skibby (DF)  Karina Adsbøl (DF)  Ole Birk Olesen (LA) nfmd.  Brian Mikkelsen (KF)

Inuit Ataqatigiit, Siumut, Sambandsflokkurin og Javnaðarflokkurin havde ikke medlemmer i udvalget.

| | | | |
|---|---|---|---|
| Venstre, Danmarks Liberale Parti (V) | 47 | Liberal Alliance (LA) | 9 |
| Socialdemokratiet (S) | 44 | Det Konservative Folkeparti (KF) | 8 |
| Dansk Folkeparti (DF) | 22 | Inuit Ataqatigiit (IA) | 1 |
| Radikale Venstre (RV) | 17 | Siumut (SIU) | 1 |
| Socialistisk Folkeparti (SF) | 16 | Sambandsflokkurin (SP) | 1 |
| Enhedslisten (EL) | 12 | Javnaðarflokkurin (JF) | 1 |

**Bilag 1**

**Oversigt over bilag vedrørende L 173**

| Bilagsnr. | Titel |
|---|---|
| 1 | Høringssvar og høringsskema, fra skatteministeren |
| 2 | Henvendelse af 27/4-12 fra Medical Prognosis Institute A/S |
| 3 | Henvendelse af 7/5-12 fra Novo A/S |
| 4 | Fastsat tidsplan for udvalgets behandling af lovforslaget |
| 5 | Henvendelse af 9/5-12 fra Novozymes A/S |
| 6 | Henvendelse af 14/5-12 fra Lundbeckfonden og ALK-Abelló A/S |
| 7 | Henvendelse af 15/5-12 fra Dansk Byggeri |
| 8 | Skatteministerens kommentar til henvendelsen af 14/5-12 fra Lundbeckfonden og ALK-Abelló A/S |
| 9 | Skatteministerens kommentar til henvendelsen af 27/4-12 fra Medical Prognosis Institute A/S |
| 10 | Skatteministerens kommentar til henvendelsen af 7/5-12 fra Novo A/S |
| 11 | Skatteministerens kommentar til henvendelsen af 9/5-12 fra Novozymes A/S |
| 12 | 1. udkast til betænkning |
| 13 | Skatteministerens kommentar til henvendelsen af 15/5-12 fra Dansk Byggeri |
| 14 | Ændringsforslag, fra skatteministeren |
| 15 | 2. udkast til betænkning |
| 16 | Henvendelse af 22/5-12 fra Novozymes A/S vedrørende materiale til foretræde |
| 17 | Henvendelse af 24/5-12 fra Bavarian Nordic A/S |
| 18 | Henvendelse af 24/5-12 fra Bech-Bruun Advokatfirma |
| 19 | Henvendelse af 24/5-12 fra FSR – danske revisorer |
| 20 | Skatteministerens kommentar til henvendelsen af 24/5-12 fra Bavarian Nordic A/S |
| 21 | Skatteministerens kommentar til henvendelsen af 22/5-12 fra Novozymes A/S |
| 22 | Skatteministerens kommentar til henvendelsen af 24/5-12 fra Bech-Bruun Advokatfirma |
| 23 | Skatteministerens kommentar til henvendelsen af 24/5-12 fra FSR – danske revisorer |
| 24 | Nyt tidspunkt for betænkningsafgivelse over lovforslaget |
| 25 | Ændringsforslag, fra skatteministeren |
| 26 | Henvendelse af 4/6-12 fra Deloitte Statsautoriseret Revisionspartnerselskab |
| 27 | 3. udkast til betænkning |
| 28 | Skatteministerens kommentar til henvendelsen af 4/6-12 fra Deloitte Statsautoriseret Revisionspartnerselskab |
| 29 | Nyt tidspunkt for betænkningsafgivelse over lovforslaget |
| 30 | Henvendelse af 6/6-12 fra FSR – danske revisorer |
| 31 | Skatteministerens kommentar til henvendelsen af 6/6-12 fra FSR – danske revisorer |

32          Skatteministerens reviderede kommentar til henvendelsen af 24/5-12
            fra FSR – danske revisorer
33          Nyt tidspunkt for betænkningsafgivelse over lovforslaget
34          4. udkast til betænkning

### Oversigt over spørgsmål og svar vedrørende L 173

Spm.nr.     Titel
1           Spm. om, hvilke konsekvenser en vedtagelse af lovforslaget vil få med
            hensyn til tab af arbejdspladser i Danmark, til skatteministeren, og mi-
            nisterens svar herpå
2           Spm. om, hvilke konsekvenser en vedtagelse af lovforslaget vil få med
            hensyn til tab af udenlandske selskabers investeringer i Danmark, til
            skatteministeren, og ministerens svar herpå
3           Spm., om ministeren kan nævne eksempler på andre lande, hvor of-
            fentliggørelsen af selskabers skatteoplysninger har haft nogen doku-
            menterbar effekt i forhold til, at virksomhederne skulle betale mere i
            skat, til skatteministeren, og ministerens svar herpå
4           Spm., om åbenheden omkring virksomheders skattebetaling i Sverige
            har medført øget skattebetaling, til skatteministeren, og ministerens
            svar herpå
5           Spm., om ministeren vil være med til at lave en ændring, som frihol-
            der forsknings- og udviklingsomkostninger fra modregningen, til skat-
            teministeren, og ministerens svar herpå
6           Spm. om åbenheden omkring virksomheders skatteoplysninger, til
            skatteministeren, og ministerens svar herpå
7           Spm. om, hvordan man kan forvente, at offentliggørelsen af virksom-
            heders skatteoplysninger vil have nogen effekt på deres skattebetaling,
            når man i lovforslaget ikke kan komme med noget skøn over det øge-
            de skatteprovenu, til skatteministeren, og ministerens svar herpå
8           Spm. om grunden til, at man er landet på præcis 7,5 mio. kr. som den
            indkomst, man fuldt ud kan modregne, til skatteministeren, og mini-
            sterens svar herpå
9           Spm., om begrænsningen i fremførsle af underskud specielt vil ram-
            me forsknings- og udviklingsvirksomheder, til skatteministeren, og
            ministerens svar herpå
10          Spm. om ministerens holdning til, at den solidariske hæftelse vil være
            problematisk i forhold til mindretalsaktionærer, jf. Novo A/S henven-
            delse af 7/5-12, til skatteministeren, og ministerens svar herpå
11          Spm., om de virksomheder, som ifølge forslaget skal betale mere, er
            identiske med de virksomheder, som tidligere har unddraget sig skat,
            til skatteministeren, og ministerens svar herpå
12          Spm., om forslaget om ringere muligheder for fremførsle af under-
            skud er i overensstemmelse med de skattepolitiske grundprincipper
            om, at man får fradrag for afholdte udgifter, til skatteministeren, og
            ministerens svar herpå
13          Spm., om forslaget i særlig grad kan være hæmmende for investerin-
            ger i de brancher, hvor der i en årrække skal bruges store ressourcer på

|    | forskning og etablering, som eksempelvis i bio- og medicoindustrien, til skatteministeren, og ministerens svar herpå |
|----|---|
| 14 | Spm. om, hvilke effekter på investeringer i Danmark den forringede mulighed for at fremføre underskud vil have, til skatteministeren, og ministerens svar herpå |
| 15 | Spm., om den forringede mulighed for at fremføre underskud vil gøre det mere eller mindre attraktivt for udenlandske såvel som danske virksomheder at investere og oprette virksomheder i Danmark, til skatteministeren, og ministerens svar herpå |
| 16 | Spm. om ministerens holdning til, at Advokatsamfundet i sit hørings-svar kalder kravet om revisorerklæringer for værende i modstrid med proportionalitetsprincippet, til skatteministeren, og ministerens svar herpå |
| 17 | Spm. om ministerens holdning til, at Dansk Erhverv i sit høringssvar bemærker, at virksomheder oplever at blive straffet, fordi de danske myndigheder ikke i tilstrækkelig grad indgår dobbeltbeskatningsafta-ler, til skatteministeren, og ministerens svar herpå |
| 18 | Spm. om ministerens holdning til, at CEPOS i sit høringssvar finder, at forslaget om solidarisk hæftelse indebærer retssikkerhedsmæssige problemer, til skatteministeren, og ministerens svar herpå |
| 19 | Spm. om ministerens holdning til, at SKAT, jf. høringssvaret fra CE-POS, ikke selv mener, at man går glip af skat fra multinationale sel-skaber, til skatteministeren, og ministerens svar herpå |
| 20 | Spm., om man med lovforslaget gør rammevilkårene for virksomheder i Danmark bedre, til skatteministeren, og ministerens svar herpå |
| 21 | Spm. om, hvad de udenlandske erfaringer er med offentliggørelse af private virksomheders regnskaber, til skatteministeren, og ministerens svar herpå |
| 22 | Spm. om, hvilke erfaringer der lægges til grund for antagelsen om, at åbne skattebøger vil føre til færre tilfælde af skatteunddragelse, til skatteministeren, og ministerens svar herpå |
| 23 | Spm. om, hvad de lande, som Danmark normalt sammenligner sig med, i stedet har gjort for at imødegå de problemer, som begrænsnin-gen i adgangen til underskudsfremførelse har til formål at løse, til skatteministeren, og ministerens svar herpå |
| 24 | Spm. om kommentar til kronikken i Jyllands-Posten den 4. maj 2012: »Dårligere afskrivning bremser væksten«, til skatteministeren, og mi-nisterens svar herpå |
| 25 | Spm. om, hvorfor underskudsbegrænsningen først og fremmest skal være rettet mod større selskaber, jf. svar af 15. maj 2012 på spørgsmål 8, til skatteministeren, og ministerens svar herpå |
| 26 | Spm. om at oplyse, om visse typer af investeringer, for eksempel i forskning og udvikling, typisk er mere samfundsgavnlige end andre typer, til skatteministeren, og ministerens svar herpå |