**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:  All cases | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANTS' RESPONSE TO PLAINTIFF SKAT'S**
**STATEMENT OF ADDITIONAL DISPUTED MATERIAL FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local

Rules of the United States District Courts for the Southern and Eastern Districts of New York, as

modified by the Court's Orders dated November 16, 2021 (ECF No. 675) and March 24, 2022

(ECF No. 745), Defendants listed on Exhibit A to this Response ("Defendants") respectfully

submit this response to Plaintiff Skatteforvaltningen's ("SKAT") Statement of Additional

Disputed Material Facts.  As set forth in more detail below, SKAT states no material fact as to

which there exists a genuine issue for trial sufficient to defeat Defendants' motion for summary

judgment.

Most of SKAT's assertions are not statements of fact but are legal conclusions that cannot

create genuine factual issues for trial.  *E.g.*, *Montauk Oil Trans. Corp. v. Sonat Marine Inc.*, 1986

WL 1805, at *8 (S.D.N.Y. Feb. 3, 1986) "([R]eliance on legal conclusions—unsupported by

specific facts—and general denials does not create a genuine factual dispute under Rule 56.").  To

the extent SKAT makes assertions of fact, they are not material to any issue presented by

Defendants' motion for summary judgment, and SKAT fails to support the assertions with citations

to admissible evidence in the record.  In multiple cases, SKAT cites exclusively to expert reports

to support its purported assertions of fact, even though an expert's report is not itself admissible

evidence of facts.  *See Crawford-Brunt v. Kruskall*, 489 F. Supp. 3d 1, 4 (D. Mass. 2020)

(excluding plaintiff's expert reports as hearsay); *Granite Partners, L.P. v. Merrill Lynch, Pierce,*

*Fenner & Smith Inc.*, 2002 WL 826956, at *7 (S.D.N.Y. May 1, 2002) (excluding expert reports

as inadmissible hearsay); *Ake v. General Motors Corp.*, 942 F. Supp. 869, 877-78 (W.D.N.Y.

1996) (excluding plaintiff's expert report as hearsay when offered by plaintiff to prove the truth of

the matter in the report).

       Accordingly, Defendants' motion for summary judgment should be granted.

**1.**      **The Bellwether Plans were not created or operated for the exclusive benefit of the plans or the plan participants, in part because the Bellwether Plans were operated primarily for the benefit of others, including Ganymede Cayman Limited, ED&F Man Capital Markets Limited, and/or Acer Investment Group LLC to which the plans made payments that far exceeded industry norms. Wagner Report ¶ 112.**

Response:  Disputed.  This is a disputed conclusion of law that is not material to any issue before the Court.  A plan's payment of fees, including excessive or unreasonable fees, to a service provider does not create an exclusive benefit rule violation, Bahnsen Decl. Ex. 10 (Reish Rebuttal) ¶ 34, and even if it did, it would not lead to disqualification of the plan.  Bahnsen Decl. Ex. 9 (Reish Report) ¶ 52.  To the extent SKAT states a factual assertion, it has not cited to admissible evidence in the record as required by Local Rule 56.1(d) and Rule 56(c) of the Federal Rules of Civil Procedure.  The Wagner Report is not admissible evidence of facts.  Accordingly, SKAT states no genuine issue for trial as to whether Defendants made any false statements about the Plans' qualifications.

**2.**      **The Solo Bellwether Plans were vehicles for the fraudulent scheme and were created to participate in the fraud. Second Weinstein Decl. Ex. 273, Ex. 211 (Markowitz Dep.) at 137:19 – 138:21 (RJM Plan), Ex. 218 (van Merkensteijn Dep.) at 172:17 - 174:4 (Basalt and Roadcraft Plans), Ex. 209 (Lehman Dep.) at 393:5-15 (FWC Plan), & Ex. 202 (Bradley Dep.) at 307:10 - 313:8 (Proper Pacific Plan).**

Response:  Disputed.  This statement is not supported by any evidence in the record, nor is it material to the issues before the Court.  Not one of the cited documents supports SKAT's claim that the Plans were created "to participate in the fraud," and no defendant testified as such.  The deposition testimony cited does not even support a finding that the identified plan (or any plan) was formed exclusively to participate in the dividend arbitrage trading strategy.  Even if the plans had been so formed, that fact is not material to the question of whether Defendants made any false statements about the Plans' qualifications.  Reish Report ¶ 54.2 ("I have never heard of the IRS

disqualifying a plan on permanency grounds because the plan was formed to take advantage of a particular investment opportunity and terminated after that investment opportunity was no longer available."). Accordingly, this statement does not generate any genuine issue to be tried on SKAT's fraud claim and Defendants' motion on that claim should be granted.

3.      **The Bellwether Plans did not comply with the funding requirements of the Internal Revenue Code, in part because they conducted no business or because the business they conducted mostly or completely consisted of related-party transactions. Wagner Report ¶ 81, Second Weinstein Decl. Ex. 267, Ex. 271, Ex. 243 (Altbach LLC Invoices), Ex. 284 at PL00000123, Ex. 218 (J. van Merkensteijn Dep., April 19 – 20, 2021) at 280:22 – 290:15, Ex. 226 (Wagner Rebuttal Report) ¶ 11 n.12; Wagner Reply ¶ 36.**

Response: Disputed. This statement contains a series of disputed legal conclusions that are not material to the issues before the Court. Plans are not required to conduct business, so the Bellwether Plans' failure to do so proves nothing. *See* 26 U.S.C. § 401(a). Even if SKAT intended to characterize the business of the Bellwether Plans' *sponsoring entities*, the assertions are immaterial to the Plans' claims that they made no false statements concerning their qualification. Contributions to a plan can be derived from a multitude of sources and need not come from the profits of the sponsoring entity. Reish Reply ¶¶ 50-65; *see also* Bahnsen Decl. Ex. 11 (Reish Reply) ¶ 44 ("Tax qualification has nothing to do with . . . what business or businesses the plan sponsor is in. . . ."). Further, the documents SKAT cites do not support the claim that the sponsoring entities conducted no business (indeed, the invoices suggest the opposite), nor do they demonstrate that the business conducted by the sponsoring entities consisted "mostly or completely" of "related-party transactions," or even that there were any "related-party transactions" at all. Furthermore, SKAT does not cite any material in the record to support its factual assertions as to the AIG Plan and the Riverside Plan. The Wagner expert reports are not admissible evidence of facts. SKAT has not raised a genuine issue for trial as to whether Defendants made any false statements concerning the Plans' qualifications.

4.      **The Solo Bellwether Plans were not created to be permanent programs. Wagner Report ¶¶ 100-102, 135-137, 148-149.**

Response: Disputed. The statement is a disputed conclusion of law that is not material to whether Defendants made any false statements concerning the Plans' qualification. Permanency is a question of intent determined at the time of a plan's establishment, Reish Rebuttal ¶¶ 78, 85, and Mr. Reish has explained the invalidity of Ms. Wagner's opinions on this matter at length. Reish Rebuttal ¶¶ 76-100. In any event, SKAT once again cites the Wagner Report, instead of any admissible evidence of facts, in support of the assertion. This is unsurprising, given that the evidence in the record demonstrates the plans were formed with the requisite intent. *See, e.g.*, Declaration of Sharon McCarthy ("McCarthy Decl.") Ex. 5 (Markowitz Tr.) 584:1-13 (stating directly that each plan was formed with the intent of being in existence in perpetuity); Ex. 6 (van Merkensteijn Tr.) 408:5-12 (explaining that the plans invested in long-term projects on account of their intended long-term existence). Accordingly, SKAT has raised no genuine issue for trial.

5.      **The only "business" of the Roadcraft Plan's sponsoring LLC (and the sponsoring LLCs of Ronald Altbach's other four pension plans) was providing purported or nonexistent services to an entity controlled by co-defendant John van Merkensteijn.**

> **Second Weinstein Decl. Ex. 243 (Altbach LLC Invoices), Ex. 276 (MBJ_STOR-0002719) at -2725 to -2728, Ex. 284 at PL00000123.**

Response: Disputed.  The statement is not supported by the evidence cited and is not material to any issue before the Court.  This statement is broadly duplicative of the assertion in paragraph 3, and it fails to create a genuine issue for trial for virtually identical reasons.  The business conducted by any plan's sponsor is immaterial to any issue before the Court because SKAT's premise – that contributions to a plan must be derived from profits of the sponsoring LLC - is plainly wrong. Reish Rebuttal ¶¶ 50-65; *see also* Reish Reply ¶ 44 ("Tax qualification has nothing to do with . . . what business or businesses the plan sponsor is in. . . ."). SKAT also fails to create a genuine issue for trial because the evidence cited does not support the assertion that the Roadcraft Plan sponsor provided "purported" or "nonexistent" services of any kind, and the claim is contrary to competent evidence in the record.  Mr. Altbach testified that he provided consulting services through his LLCs, including "identifying of targets for acquisitions and the like." McCarthy Decl. Ex. 7 (Altbach Tr.) 93:7-15.  This is corroborated by Mr. van Merkensteijn's testimony that the Rossi Acquisitions LLC (which is the party to whom the invoices cited by SKAT as Ex. 243 were issued) was focused on acquiring a U.K. public company, McCarthy Decl. Ex. 6 (van Merksensteijn Tr.) 18:6-12, a transaction that was "unrelated to dividend arbitrage trading." *Id*. 114:11:18.

6.      **The IRS audit of the RJM Plan does not establish that any of the Solo Bellwether Plans were tax-exempt. Wagner Reply ¶ 31.**

Response:  Disputed.  This is a disputed legal conclusion.  Reish Report ¶ 45 (following receipt of the "no change" letter, the RJM Plan "remained a qualified plan").  To the extent this statement purports to state a fact, it is incorrect because, at a minimum, the no-change letter issued by the IRS necessarily means that the IRS did not find reason to disqualify the RJM plan.  Reish Report ¶ 43 ("The issuance of a 'no change' letter means that the IRS did not find any qualification defects in the form or operation of the plan.").

APPENDIX A

| Bellwether Case No. | Defendants |
|---|---|
| 19-cv-1898 | RJM Capital Pension Plan; Richard Markowitz |
| 19-cv-1866 | Basalt Ventures LLC  Roth 401(k) Plan; John van Merkensteijn; Michael Ben-Jacob |
| 19-cv-1812 | Roadcraft Technologies LLC Roth 401(k) Plan; Ronald Altbach; Michael Ben-Jacob; Robert Klugman; Richard Markowitz; RAK Investment Trust; Routt Capital Trust |
| 18-cv-4051 | The Proper Pacific LLC 401K Plan; Doston Bradley |
| 18-cv-10098 | The FWC Capital LLC Plan; Roger Lehman |
| 18-cv-9841 | American Investment Group of New York, L.P. Pension Plan; Stacey Kaminer; Robert Crema; Acer Investment Group, LLC; ED&F Man Capital Markets Ltd. (third-party defendant) |
| 18-cv-9840 | Riverside Associates Defined Benefit Plan; David Schulman; Acer Investment Group, LLC; ED&F Man Capital Markets Ltd. (third-party defendant) |