# Exhibit 3

## CUSTODY AGREEMENT

**THIS CUSTODY AGREEMENT** is made on 21 June 2012

**BETWEEN:**

(1)  **E D & F MAN CAPITAL MARKETS LIMITED**, registered in England and Wales with company number 1292851, whose registered office is at Cottons Centre, Hay's Lane, London, SE1 2QE (the "**Custodian**"); and

(2)  **RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN** the "**Client**").

**IT IS AGREED** as follows:

**1.    DEFINITIONS AND INTERPRETATION**

**1.1    Definitions**

Capitalised terms in this Agreement have the meaning given to them below:

"**Authorised Signatory**" means any person who is designated in writing by the Client from time to time to act on behalf of the Client in respect of this Agreement;

"**Business Day**" means a day on which the Trans-European Automated Real-time Gross settlement Express Transfer (TARGET) system is open;

"**Client Cash**" means cash in any currency arising out of or in connection with the Client Securities and any amounts standing to the credit of the Client Cash Account;

"**Client Property**" means the Client Cash and/or the Client Securities;

"**Client Securities**" means any securities (including evidence thereof, evidence of title thereto and all rights in respect thereof) deposited or transferred by the Client or on the Client's behalf to the Custodian or a Sub-Custodian or collected by the Custodian or a Sub-Custodian for the Client's account;

"**Client Securities Voting Rights**" means each and any right to vote exercisable in respect of the Client Securities;

"**Costs and Expenses**" means costs, charges, losses, liabilities, expenses and other sums (including legal, accountants' and other professional fees) and any Tax thereon;

"**Custody Accounts**" means the Client Cash Accounts and the Client Securities Accounts, and "Custody Account" shall mean any or a particular one of them as the context requires;

"**FSA**" means the Financial Services Authority of the United Kingdom (including any successor or replacement regulatory authority);

"**FSA Rules**" means the rules promulgated by the FSA pursuant to FSMA and set out in the FSA's handbook of rules and guidance, as updated, amended or repealed from time to time;

RIVER_00000221

"**FSMA**" means the Financial Services and Markets Act 2000;

"**Secured Liabilities**" has the meaning given to such term in the Security and Set-Off Deed;

"**Security and Set-Off Deed**" means the security and set-off deed dated on or about the date hereof between the Custodian and the Client;

"**Sub-Custodian**" means "Deutsche Bank Custody Services" or any other sub-custodian appointed by the Custodian from time to time;

"**Tax**" or "**taxation**" or "**tax**" includes any tax, levy, impost, duty, charge, fee, contribution, deduction or withholding of any nature, and any interest or penalties in respect thereof.

**1.2    Construction of particular terms**

Unless otherwise specified, any reference to:

(a)    an "**affiliate**" means in relation to any person, a subsidiary of that person or a holding company of that person or any other subsidiary of that holding company;

(b)    "**assets**" includes properties, revenues and rights of every kind, present, future and contingent, and whether tangible or intangible;

(c)    a "**company**" includes any company, corporation or other body corporate, wherever and however incorporated or established;

(d)    "**holding company**" means a holding company within the meaning of section 1159 of the Companies Act 2006;

(e)    "**law**" includes common or customary law, principles of equity and any constitution, code of practice, decree, judgement, decision, legislation, order, ordinance, regulation, bye-law, statute, treaty or other legislative measure in any jurisdiction or any present or future directive, regulation, guideline, request, rule or requirement (in each case, whether or not having the force of law but, if not having the force of law, the compliance with which is in accordance with the general practice of persons to whom the directive, regulation, guideline, request, rule or requirement is intended to apply) of any governmental, intergovernmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation;

(f)    "**liability**" includes, and "**liabilities**" include, any loss, damage, cost, charge, claim, demand, expense, judgement, action, proceeding or other liability whatsoever (including, without limitation, in respect of taxes, duties, levies, imposts and other charges);

(g)    a "**person**" includes any natural person, firm, company, corporation, undertaking, government, state or agency of a state, any local or municipal authority, trust, any association or partnership (whether or not having separate legal personality) of two or more of the foregoing or other legal entity;

(h)    a "**regulation**" includes any regulation, rule, official directive, request or guideline (in each case, whether or not having the force of law but, if not having the force of law, the compliance with which is in accordance with the general practice of

RIVER_00000222

persons to whom the regulation, rule, official directive, request or guideline is intended to apply) of any governmental, intergovernmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation;

(i)    "**rights**" includes all rights, title, benefits, powers, privileges, interests, claims, authorities, discretions, remedies, liberties, easements, quasi easements and appurtenances (in each case, of every kind, present, future and contingent);

(j)    "**security**" or "**security interest**" includes any mortgage, charge, pledge, lien, security assignment, hypothecation or trust arrangement for the purpose of providing security and any other encumbrance or security interest of any kind having the effect of securing any obligation of any person (including, without limitation, the deposit of moneys or property with a person with the intention of affording such person a right of set-off or lien) and any other agreement or any other type of arrangement having a similar effect; and

(k)    "**subsidiary**" means a subsidiary within the meaning of section 1159 of the Companies Act 2006 and a subsidiary undertaking within the meaning of section 1161 of the Companies Act 2006.

**1.3    Interpretation**

(a)    Words importing the singular shall include the plural and vice versa.

(b)    Unless a contrary indication appears, a reference to any party or person shall be construed as including its and any subsequent successors in title, permitted transferees and permitted assigns, in each case in accordance with their respective interests.

(c)    Unless a contrary indication appears, a reference to a time of day shall be construed as referring to London time.

(d)    Section, clause and Schedule headings are for ease of reference only and shall be ignored in construction.

(e)    Unless a contrary indication appears, references to any provision of any law or regulation are to be construed as referring to that provision as it may have been, or may from time to time be, amended or re enacted, and as referring to all bye laws, instruments, orders and regulations for the time being made under or deriving validity from that provision.

(f)    A reference to any document is a reference to that document as amended, restated, supplemented, novated or replaced from time to time (except where the context otherwise requires).

**2.    APPOINTMENT**

(a)    The Client hereby appoints the Custodian to act as bare trustee for the purposes of safekeeping the Client Property upon the terms of this Agreement and the Custodian agrees to act as such upon the terms and conditions set out in this Agreement.

(b)    The Custodian shall open the following accounts:

(i)      one or more custody accounts in the Custodian's books recording any Client Securities (the "**Client Securities Accounts**"); and

(ii)      one or more accounts in the Custodian's books recording any Client Cash held by or on behalf of the Custodian on account of the Client (the "**Client Cash Account**").

(c)      Each Custody Account shall be maintained in London, England.

(d)      Subject to Clause 2(c), the Client Property may be held by the Custodian at any of the Custodian's places of business or (in accordance with Clause 4 (*Use of Sub-Custodians*)) by a Sub-Custodian in the United Kingdom or elsewhere, at the Custodian's absolute discretion.

(e)      The Client Securities shall be held, recorded, registered and segregated in accordance with the FSA Rules or, where held outside the United Kingdom, the equivalent of the FSA Rules relating solely to these matters, provided that the Custodian shall not be required to comply with any equivalent of the FSA Rules which require any consent to be obtained or notification to be given by the Custodian.

(f)      The Custodian shall only accept custody under this Agreement of Client Property.

**3.      CATEGORISATION**

(a)      The Client hereby acknowledges that the Custodian shall classify the Client as a "Elective Professional Client" for the purpose of the FSA Rules; that the Client has not objected to this classification; and the Client hereby confirms that it consents to such classification.

(b)      The Client may be entitled to request a different categorisation under the FSA Rules. However, a different categorisation could result in the loss of certain client protections.

**4.      USE OF SUB-CUSTODIANS**

(a)      The Custodian may from time to time delegate to a Sub-Custodian any of the Custodian's duties under this Agreement, including (without limitation) the safekeeping of the Client Property, and each such Sub-Custodian shall hold the Client Property at the Client's risk and, subject to Clauses 2(e) and 4(b), on such terms and conditions as such Sub-Custodian may require.

(b)      The Client acknowledges that any Sub-Custodian may delegate or appoint an agent or sub-custodian to perform any of its duties as Sub-Custodian.

(c)      Holdings of the Client Property by Sub-Custodians will be subject to applicable laws and regulations including, without limitation, any applicable rules of the relevant Sub-Custodian and the Custodian is under no obligation to take or refrain from taking any action in relation to such Client Property, whether pursuant to a Client Instruction or otherwise, except to the extent the Custodian has a right to require the Sub-Custodian to take or refrain from taking such action.

(d)      Notwithstanding any other provision of this Agreement, where the Client Property is held by a Sub-Custodian the Custodian has no liability or responsibility of any nature whatsoever to the Client in relation to the Client Property except to the

RIVER_00000224

extent that the Sub-Custodian has an equivalent liability to the Custodian in relation to the Client Property under the Sub-Custody Agreement.

5.    **CUSTODY OF THE CLIENT SECURITIES**

(a)    The Client shall deliver assets intended for custody under this Agreement to the Custodian or as the Custodian may direct at the Client's expense and risk, in the manner, and accompanied by such documents, as the Custodian may require.

(b)    The Custodian will identify in the Custodian's books that the Client Securities are beneficially owned by the Client.  The Custodian will require Sub-Custodians to identify in their books that the Client Securities are held to the order of the Custodian.

(c)    The Custodian may pool the Client Securities with securities held by the Custodian for other clients.  The Client Securities may be held by the Custodian or by any Sub-Custodian in a fungible account in which case the Custodian will identify in its books that such Client Securities belong to the Client.  The Custodian may use the Client Securities for the account of another customer and vice versa.

(d)    The Custodian may hold any document of title or document evidencing title to the Client Securities:

(i)    in the Custodian's physical possession;

(ii)    with a Sub-Custodian; or

(iii)    otherwise, with the prior written consent of the Client.

(e)    Notwithstanding any other provision of this Agreement, but without prejudice to the Client's proprietary rights, the Client Securities will be deemed to be fungible for the purposes of this Agreement.  Accordingly, the Customer's redelivery rights in respect of the Client Securities are not in respect of the Securities actually deposited with the Custodian from time to time but rather in respect of Securities of the same number, class, denomination and issue as those Securities originally deposited with the Custodian from time to time.  A reference in this Agreement to "Client Securities" (and similar expressions) shall be construed accordingly.

6.    **REGISTRATION OF SECURITIES**

(a)    All Client Securities delivered to the Custodian shall be registered in the name of the Client, Custodian, nominee or agent of the Custodian, or Sub-Custodian in compliance with FSA Rules.

(b)    The Client acknowledges that where Client Securities are registered in the name of the Custodian, the Client Securities may not be segregated from other securities held by the Custodian and the Client Securities and may not be identifiable by separate certificates or other physical documents of title.  Consequently, should the Custodian become insolvent, the Client securities may not be protected from claims made on behalf of the general creditors of the Custodian.

(c)    The Client acknowledges that where the Client Securities are held by a Sub-Custodian outside the United Kingdom, different settlement, legal and regulatory

CONFIDENTIAL

requirements, and different practices relating to the segregation of those securities, may apply.

(d)  Where the Client Securities are registered in the same name as the securities of other clients of the Custodian, the Client is warned that its entitlements to particular Client Securities may not be identifiable by separate certificates or other physical documents of title, and that, should the Custodian default, any shortfall in the Client Securities registered in that name may be shared pro rata among all Clients whose securities are registered.

(e)  Where the Client has instructed the Custodian on the holding, registration or recording of Client Securities, the Client is hereby notified that the consequences of doing so are at the Client's own risk unless the Custodian has agreed otherwise.

(f)  Where any Client Securities are in uncertificated form or are otherwise transferable by book entry transfer, the Client agrees that the Custodian may (where this is market practice) use the services of any securities depository, clearing or settlement system, account controller or other participant in the relevant system, on such terms as the Custodian may think fit, for the purposes of the holding and transfer of such Client Securities (or entitlements thereto). Such Client Securities or entitlements will, so far as is practicable, be separately identifiable from any Client Securities or entitlements held within the same system for the account of the Custodian.

**7.    AUTHORISED SIGNATORIES**

The Client shall provide the Custodian with a list of Authorised Signatories together with specimens of their signatures and the Custodian shall be entitled to rely upon the continued authority of the Authorised Signatories until the Custodian receives written notice from the Client to the contrary.

**8.    CLIENT INSTRUCTIONS**

(a)  The Custodian may act on instructions ("**Client Instructions**") from an Authorised Signatory or Client Instructions purporting to be given by an Authorised Signatory received by the Custodian in writing, or by electronic or other medium agreed in writing between the parties. Client Instructions given by an agreed electronic medium shall be deemed to have been given by an Authorised Signatory.

(b)  Client Instructions shall continue in full force and effect until cancelled or suspended.

(c)  The Custodian may, in the Custodian's absolute discretion (but shall be under no duty to), refuse to act on Client Instructions which are not given in accordance with this Agreement.

(d)  If any Client Instructions are incomplete, unclear, ambiguous, and/or in conflict with other Client Instructions, the Custodian may at the Custodian's absolute discretion and without any liability on the Custodian's part, act upon what the Custodian believes in good faith such Client Instructions to be or refuse to act on such Client Instructions until any incompleteness, lack of clarity, ambiguity and/or conflict has been resolved to the Custodian's satisfaction.

RIVER_00000226

(e)    The Custodian will promptly inform an Authorised Signatory if it is not going to act on a particular Client Instruction received from such individual.

(f)    Client Instructions shall be carried out subject to the rules, operating procedures and market practice of any relevant stock exchange, Sub-Custodian or market (the "**Custody Rules**").  The Custodian may refuse to carry out Client Instructions if in the Custodian's reasonable opinion they are contrary to the Custody Rules or any applicable law, or other regulatory or fiscal requirement and shall be entitled at the Custodian's absolute discretion to amend Client Instructions so that they comply with the Custody Rules, in which case the Custodian shall promptly notify the Client of such amendment.

(g)    The Custodian shall be under no duty to challenge or make any enquires concerning any Client Instruction and, subject to Clause 8(d), all Client Instructions shall be deemed to be conclusive of the Client's order or instruction.

## 9.    SETTLEMENT AND REDELIVERY

(a)    In accordance with Client Instructions and subject to Clause 8 (*Client Instructions*), the Custodian will arrange for the settlement of transactions which have been executed by the Client or on the Client's behalf.

(b)    The Custodian shall credit the Client Cash Account with the proceeds of any sale or exchange of Client Securities and debit the Client Cash Account for the cost of any Client Securities purchased or acquired only on the date on which such proceeds or Client Securities are received by the Custodian.

(c)    If Client Instructions are given to transfer to Client or at its direction, Client Property other than as contemplated by the foregoing provisions of this Clause 9 then, subject to Clauses 8 (*Client Instructions*) and 9(d) and subject to the Custodian being able to give effect to such Client Instructions in accordance with their terms, the Custodian shall give effect to the relevant transfer.

(d)    The Custodian shall be under no obligation to act on Client Instructions:

(i)    to settle any purchase of Client Securities unless and until there is sufficient Client Cash in the Client Cash Account (or other arrangements for payment satisfactory to the Custodian have been made);

(ii)    to settle or give effect to any sale or other transfer of Client Securities unless the Client Securities are in deliverable form in the relevant Client Securities Accounts; or

(iii)    to give effect to any transfer to the Client or at its direction, of Client Cash unless there is sufficient Client Cash in the Client Cash Account.

## 10.    ACTIONS NOT REQUIRING CLIENT INSTRUCTIONS

In the absence of contrary Client Instructions, the Custodian is authorised by the Client to carry out the following actions relating to Client Property without reference to the Client, namely:

(a)    to take such actions as are necessary to settle: (i) the transactions contemplated by the Transaction Documents (as defined in the Security and Set-Off Deed); and (ii)

RIVER_00000227

transactions contemplated by any instruction in respect of the Client Securities given by the Client to its broker;

(b) to collect and receive, for the Client's account, all payments (whether income or capital), income and dividends in respect of Client Property and to credit such to the Client Cash Account, and to take any action necessary and proper in connection with the same and the endorsement for collection of cheques, drafts and other negotiable instruments and the deduction or withholding of any sum on account of any Tax which may be due from either the Custodian or the Client in respect of Client Property;

(c) to execute on the Client's behalf such ownership and other certificates as may be required to obtain payment in respect of the Client Securities;

(d) to exchange interim or temporary documents of title to the Client Securities for definitive ones; and

(e) to perform and carry out on the Client's behalf or otherwise all acts which, in the Custodian's reasonable opinion or the reasonable opinion of any Sub-Custodian, are requisite or desirable to enable the Custodian or a Sub-Custodian, to implement any Client Instructions or otherwise to perform the Custodian's duties and exercise the Custodian's rights under this Agreement.

## 11. OTHER SERVICES AND SCOPE OF RESPONSIBILITY

(a) The Custodian shall use all reasonable care in performing its obligations under this Agreement and shall look after the Client Securities with all reasonable care.

(b) Income, dividends and redemption proceeds on the Client Securities will only be credited (net of Taxes) after actual receipt and reconciliation.

(c) Provided the Custodian receives the requisite information acting in its capacity as custodian under this Agreement, the Custodian shall use reasonable endeavours to notify the Client of all calls for redemption, grants or expiration of conversion rights or subscription rights, mergers, takeover or other offers, consolidations, reorganisations and capitalisations affecting the Client Securities.

(d) For the avoidance of doubt, and subject to Clause 10 (*Actions not requiring Client Instructions*), the Custodian shall not, except in accordance with Client Instructions, take any action in relation to the matters referred to in Clause 11(c) and the Custodian is not responsible for the exercise of any conversion or subscription rights or for dealing with takeover or other offers or capital restructuring.

(e) The Custodian shall notify the Client when the Client Securities Voting Rights become exercisable by the Custodian in respect of any Client Securities promptly upon becoming aware of the same and shall, subject to Clause 11(f), exercise such Client Securities Voting Rights in accordance with the Client's written instructions provided such instructions are received so as to allow the Custodian acting on its best efforts to do so. If no such instructions are received from the Client then the Custodian shall not exercise such Client Securities Voting Rights.

(f) The Custodian shall not be obliged to act in accordance with the written instructions given under Clause 11(e) unless:

(i) such instructions are clear, unambiguous and lawful; and

RIVER_00000228

      (ii)    the exercise by the Custodian of the Client Securities Voting Rights in accordance with such instructions is lawful; and

      (iii)   the proposed resolution or matter in respect of which the Client Securities Voting Rights are to be exercised in accordance with such instructions is lawful.

(g)    Unless otherwise agreed in writing and subject to Clause 10 (*Actions not requiring Client Instructions*), the Client shall be responsible for all filings, Tax returns and reports on any transactions undertaken or settled pursuant to this Agreement which must be made to any relevant authority whether governmental or otherwise for the payment of all unpaid calls, Taxes (including, without limitation, any value added tax) or any other liability or payment arising out of or in connection with the Client Property.

(h)    The Client shall, if required in connection with any Taxes required to be withheld or otherwise paid in respect of interest, dividends, redemption proceeds or other income arising from the Client Property, provide any relevant information to the Custodian and co-operate with the Custodian in furnishing information, executing documents or otherwise. The Custodian shall rely on such information as has been provided by the Client, and the Client shall be responsible for notifying the Custodian of any changes affecting its Tax position or status. Other than as may be expressly provided in this Agreement, the Custodian shall have no responsibility with regard to the Client's Tax position or status in any jurisdiction.

(i)    Neither the Custodian nor any Sub-Custodian shall be obliged to:

      (i)    institute legal or administrative proceedings on behalf of the Client or in respect of any Client Property or any Tax; or

      (ii)   file a claim or proof of claim in any insolvency proceedings.

(j)    The Custodian shall be under no duty or obligation to insure the Client Property or any part of the Client Property, for the Client against any risk.

(k)    The Custodian shall be under no duty to take or omit to take any action with respect to the Client Property or otherwise except in accordance with this Agreement.

(l)    Without prejudice to Clause 11(g) above, the Client will be responsible for all filings, returns, reports and statements with any regulatory authority which it is required to make either by that authority or under applicable laws, rules or regulations.

(m)   The Custodian does not act as manager or investment adviser to the Client under this Agreement, and responsibility for the selection, acquisition and disposal of the Client Property remains with the Client at all times.

(n)    The Custodian may appoint agents to conduct any of the services referred to in this Clause 11 (or in any other agreement expressed to form part of this Agreement) including, without limitation, any of its affiliates or persons connected with any Sub-Custodian.

RIVER_00000229

**12.    RECORDS AND STATEMENTS**

(a)    The Custodian shall keep all records and statements as may be necessary to give the Client a complete record of all Client Property held by it on behalf of the Client from time to time and of all material actions taken by it pursuant to this Agreement.

(b)    The Custodian shall provide the Client with a statement of Client Property held by the Custodian on behalf of the Client at intervals to be agreed with the Client.

(c)    The basis on which Client Property is valued as shown in such statements shall be notified to the Client.

**13.    LIMITATIONS OF LIABILITY**

(a)    The Custodian shall only be liable to the Client for any liability, loss or cost suffered by or incurred by the Client to the extent that such liability, loss or cost is a direct result of its own breach of duty, the wilful default, fraud or negligence of the Custodian in providing services under this Agreement.

(b)    Subject to Clause 13(a) above, the Custodian shall not be liable to the Client for any liability, loss or cost suffered by the Client arising from:

  (i)    the acts, omissions or the insolvency of any Sub-Custodian or its agent in the absence of breach of duty, negligence or wilful default by the Custodian in the initial selection of any Sub-Custodian;

  (ii)    the collection or deposit or crediting to the relevant Client Securities Account of invalid, fraudulent or forged Client Securities or any entry in the Client Securities Accounts or the Client Cash Account which may be made in connection with that collection, deposit, crediting or entry;

  (iii)    any delay arising while the Custodian obtains clarification of Client Instructions in accordance with Clause 8(d);

  (iv)    acting on what the Custodian in good faith believes to be valid Client Instructions or in relation to notices, requests, waivers, consents, receipts, corporate resolutions or their equivalent or other documents which the Custodian in good faith believes to be genuine; or

  (v)    effecting delivery or payment against an expectation of receipt, except where such delivery or payment is contrary to the Client Instruction or relevant local market practice.

(c)    Investing in foreign markets and holding assets overseas may involve special risks. The Client should be aware that there may be different settlement, legal and regulatory requirements in overseas jurisdiction from those applying in the United Kingdom, together with different practices for the separate identification of Client Securities where the Custodian arranges for such Client Securities to be held overseas.

(d)    For the avoidance of doubt and subject to Clause 13(a) above, the Custodian accepts no liability whatsoever for any liability, loss or cost suffered or incurred by the Client resulting from the general risks of investment or the holding of assets including, but not limited to, losses arising from nationalisation, expropriation or

RIVER_00000230

other governmental actions, regulations of the banking or securities industries, including changes in market rules, currency restrictions, devaluations or fluctuations, and market conditions affecting the execution or settlement of transactions or the value of assets.

(e)     The Custodian shall not be responsible for any loss resulting from acts of war, terrorism, insurrection, revolution, acts of God, strikes or work stoppages, failures of settlement systems to settle transactions, or other events beyond the reasonable control of the Custodian.

(f)     Any liability of any nature which arises from the provision by the Custodian of its services under this Agreement shall be limited to the amount of the Client's actual loss at the time the loss is discovered (which loss shall, in respect of any asset which has been mislaid or lost, be determined solely by reference to the market value of that asset) but without reference to any special conditions or circumstances known to the Custodian at the time of entering into this Agreement, or at the time of accepting any Client Instructions, which increases the amount of the loss.  In no event shall the Custodian be liable for any consequential or special damages, including, without limitation, any loss of reputation, goodwill or business suffered by the Client.

(g)     The Custodian and each of its affiliates may have an interest in or in relation to, as the case may be, any Client Property or transaction held, executed or settled, as the case may be under this Agreement as investment manager, investment adviser, broker, underwriter, counterparty or creditor or in any other capacity.  The Custodian and each of its affiliates may receive and retain any fee or brokerage due or paid, as the case may be, to it or any of them, as the case may be, and shall not be liable to account to the Client for any such fee or brokerage or any information obtained by it or any of them as the case may be, by reason of the interest referred to above.

**14.    FEES AND EXPENSES**

(a)     The Client shall pay such fees ("**Fees**") to the Custodian in respect of the services provided under this Agreement as the Custodian may, from time to time, determine and notify to the Client.

(b)     The Client shall on demand reimburse the Custodian's reasonable Costs and Expenses properly incurred in connection with this Agreement.

**15.    INTEREST**

To the extent permitted by applicable law, if any sum of money payable to the Custodian is not paid when due, interest shall accrue upon such unpaid sum as a separate debt, at such reasonable market rate as the Custodian may determine, for the actual number of days during the period from and including the date on which payment was due but excluding the date of payment.

CONFIDENTIAL

**16.  INDEMNITY**

(a)  The Client hereby agrees on demand to indemnify the Custodian, and keep the Custodian fully and effectively indemnified against:

    (i)  each liability, loss and cost which may be suffered or incurred by the Custodian in connection with the Client Property, this Agreement or the performance of the Custodian's obligations under this Agreement (other than Tax); and

    (ii)  any Tax for which the Custodian is or may be liable or accountable in connection with the Client Property, this Agreement or the performance of the Custodian's obligations under this Agreement (including without limitation the purchase and/or sale of Client Securities, the collection and/or realisation of coupons, dividends, interest or other payments, the receipt of or entitlement to receive any income, and the Custodian acting as or being deemed to be a trustee, branch or agent of the Client) provided that this indemnity shall not extend to Tax on or attributable to any Fees.

(b)  The indemnity in Clause 16(a) shall not extend to any liability, loss or cost arising out of the wilful default, fraud or negligence of the Custodian or any Sub-Custodian appointed by the Custodian under this Agreement.

**17.  REPRESENTATIONS AND WARRANTIES**

(a)  The Client hereby represents and warrants to the Custodian that:

    (i)  the Client is US Pension Fund

    (ii)  the Client was, on or immediately prior to the deposit or transfer of any Client Securities by the Client or on the Client's behalf with or to the Custodian or a Sub-Custodian, the beneficial owner of such Client Securities free of mortgage, charge, pledge, lien, right of set-off or any security interest, encumbrance and claim whatsoever in favour of a third party;

    (iii)  the Client is acting as principal and not as agent with respect to each transaction or asset that is the subject of this Agreement; and

    (iv)  the Client has not relied on or been induced to enter into this Agreement by any representations other than those expressly set out in this Agreement and the Custodian is not liable to the Client for any representation that is not set out in this Agreement.

(b)  The representations and warranties set out in Clause 17(a) shall be continuing and shall be deemed repeated by the Client on the date of this Agreement and each time the Client deposits Client Property with, or withdraws Client Property from, the Custodian.

**18.  CONFIDENTIALITY**

(a)  The Custodian will not (subject to the other provisions of this Agreement, including Clauses 18(b) and 18(c)) disclose to any other person any confidential information

CONFIDENTIAL

acquired as a result of or pursuant to this Agreement ("**Client Confidential Information**") except: (a) to an affiliate of the Custodian; (b) as appropriate to perform its services under this Agreement; or (c) as authorised by the Client.

(b)    Client Confidential Information may be disclosed by the Custodian if the Custodian is required to do so by any applicable law, statute or other regulation or by any court order or similar process enforceable in any relevant jurisdiction and if required to do so by any fiscal body or regulatory body or self-regulatory organisation (whether of a governmental nature or otherwise) in any relevant jurisdiction.

(c)    Client Confidential Information may be disclosed to any Sub-Custodian.

(d)    The Custodian may collect, use and disclose personal data about individuals associated with the Client, in connection with the services to be provided under this Agreement and in compliance with all applicable laws.  The Custodian may also transfer this personal data to any country, including countries outside the European Economic Area, for any of the purposes set out above.

19.    **NOTICES**

(a)    Any communication to be made under or in connection with this Agreement shall be made in writing and, unless otherwise stated, may be made by fax, e-mail or letter to the following:

(i)    in the case of the Client to:

| | |
|---|---|
| Address: | 5532 Lillehammer Lane |
| | Suite 103 |
| | Park City |
| | UT 84098 |
| | USA |
| Attention: | David Schulman and Joan Schulman |
| Email: | |
| Tel: | |

(ii)    in the case of the Custodian to:

| | |
|---|---|
| Address: | E D& F Man Capital Markets Limited |
| Attention: | Legal & Compliance |
| Address: | Cottons Centre |
| | Hays Lane |
| | London, |
| | SE1 2QE |
| | England. |
| Email: | BackOffice@edfmcs.com & compliance@edfmca.com |
| Tel: | +44 20 7089 8000 |

CONFIDENTIAL

or any substitute address or fax number or e-mail address as a party to this Agreement may notify to the other parties hereto by not less than five Business Days' notice.

(b)    Any notice or other communication required in this Agreement to be given in writing by the Client to the Custodian shall be signed by one or more Authorised Signatories and sent by post or delivered personally to the address for the Custodian specified in Clause 19(a) and marked with any contact name for the Custodian identified in Clause 19(a).

(c)    Any communication made by one party to this Agreement to another under or in connection with this Agreement will only be effective:

(i)    if by way of fax, at the time when the fax transmission has been sent in its entirety and the sender's fax machine shall have generated a successful transmission report; or

(ii)    if by way of e-mail electronic messaging, at the time that the e-mail electronic message is sent for the attention of the legal department and trading desk detailed in Clause 19 and the sender's e-mail electronic messaging system shall not immediately thereafter have generated an unsuccessful transmission report, and, in either case, if made to the Custodian, only if addressed in such manner as the Custodian may from time to time specify for this purpose; or

(iii)    if by way of letter, when such letter has been delivered at the relevant address noted in Clause 19 or, in the case of posting, upon one Business Day after the date of registered or recorded delivery posting addressed to it at that address,

(iv)    and, if a particular department, officer or person is specified as part of its address details provided under Clause 19(a), if addressed to that department, officer or person.

## 20.   MISCELLANEOUS

(a)    The Client undertakes upon request to notify the Custodian its place of incorporation, principal place of business, residence, control or management, home office, tax file number or other information which may affect the Client's status or accessibility for taxation purposes in any country by reason of this Agreement.

(b)    The Client acknowledges that the provision of services outlined in this Agreement by the Custodian to the Client arose solely as a consequence of the initiative of the Client and did not result from any form of solicitation on the part of the Custodian.

(c)    Unless otherwise agreed in writing, this Agreement may only be amended by written agreement of the parties except that the Custodian may amend this Agreement on written notice to the Client if the Custodian believes the amendments are requisite or desirable in order for the Custodian to comply with, or reflect in the Agreement, any applicable law or regulation or any rule of any governmental agency to which the Custodian or any Sub-Custodian may become

RIVER_00000234

subject in any jurisdiction, including without limitation, in USA or the United Kingdom or its obligations under Clause 2(e).

(d)    If any of the provisions of this Agreement become invalid, or illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired.

(e)    The rights and obligations of the parties under this Agreement shall not, other than pursuant to the Security and Set-Off Deed, be assigned, charged or otherwise dealt with by either of them. The Custodian may however assign, charge or otherwise deal with its rights and obligations under this Agreement with or to any of its affiliates, including without limitation by delegating any of its rights and obligations to an affiliate. Subject to this Clause 20(e), this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

(f)    The parties to this Agreement do not intend that any term of this Agreement should be enforceable, by virtue of the Contracts (Rights of Third Parties) Act 1999, by any person who is not a party to this Agreement.

(g)    A waiver (whether express or implied) by one party of any provision of this Agreement or of any breach of or default of the other party under this Agreement shall not constitute a continuing waiver and that waiver shall not prevent the waiving party from subsequently enforcing any of the provisions of this Agreement not waived or from acting on any subsequent breach of or default by the other party under any of the provisions of this Agreement.

(h)    Telephone conversations between the Client and the Custodian may be recorded and monitored by the Custodian and any recording may be used as evidence in the case of any dispute.

(i)    The Custodian may be required by law or the rules and regulations of the FSA and/or other relevant regulatory agencies, authorities and exchanges to perform or refrain from certain acts or report or disclose details of Client Instructions or transactions effected with or for the Client or any other matters. In particular, disclosure and reporting obligations may arise under the rules referred to in Clause 8(f) and the Money Laundering Regulations 2003 (and related legislation). The Client hereby authorises the Custodian to do or refrain from such acts, and consents to such reporting or disclosure.

(j)    The Client and the Custodian agree that any services provided by the Custodian to the Client under this Agreement shall be deemed to be a "Netting Transaction" for the purposes of any Terms of Business (as defined in the Security and Set-Off Deed).

(k)    The Client and the Custodian agree that this Agreement is in all respects subject to the terms of the Security and Set-off Deed and that, in the event of any inconsistency between this Agreement and the Security and Set-off Deed, the terms of the Security and Set-off Deed shall prevail to the extent of any inconsistency.

21. **TERMINATION**

(a) The Custodian may terminate this Agreement on giving not less than 30 calendar days' written notice to the Client.

(b) The Client may terminate this Agreement on giving not less than 45 calendar days' written notice to the Custodian, provided that the Client shall not be entitled to terminate this Agreement until all the Secured Liabilities have been irrevocably paid or discharged in full.

(c) All remedies under this Agreement shall survive the termination of this Agreement.

(d) Subject to the completion of transactions already initiated under this Agreement and the exercise by the Custodian of the Custodian's rights under this Agreement, the Custodian shall as soon as reasonably practicable after termination of this Agreement deliver to the Client the Client Property held by the Custodian.

(e) Clauses 13 (*Limitations of Liability*), 14 (*Fees and Expenses*), 15 (*Interest*) and 16 (*Indemnity*) will continue to be effective despite the termination of this Agreement.

22. **GOVERNING LAW, LANGUAGE AND JURISDICTION**

(a) This Agreement shall be governed by, and shall be construed in accordance with, the laws of England.

(b) Any notice given under or in connection with this Agreement shall be in English.

(c) All other documents provided under or in connection with this Agreement shall be:

(i) in English; or

(ii) if not in English, accompanied by a certified English translation if requested by the relevant recipient and, in this case, the English translation shall prevail unless the document is a statutory or other official document.

(d) The courts of England have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement (including a dispute regarding the existence, validity or termination of this Agreement) (a "Dispute").

(e) The parties to this Agreement agree that the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary.

(f) The parties to this Agreement shall not be prevented from taking proceedings relating to a Dispute in any other courts with jurisdiction. To the extent allowed by law, the parties may take concurrent proceedings in any number of jurisdictions.

(g) The parties irrevocably consent to service of process or any other documents in connection with proceedings in any court by personal service at any address specified in Clause 19, by mail, by facsimile or in any other manner permitted by English law, or by the law of the place of service and the law of the jurisdiction where proceedings are instituted.

CONFIDENTIAL

**IN WITNESS WHEREOF** the parties to this Agreement have executed this Agreement as of the date first above written.

RIVER_00000237

**SIGNATURES**

**The Client**

**SIGNED BY** DAVID SCHULMAN                          )
for and on behalf of                                  )
**Riverside Associates Defined Benefit Plan**          )


**The Custodian**
                          Verrona Browne
                          COO Operations
**SIGNED BY** _____                       )
for and on behalf of                                  )
**E D & F MAN CAPITAL MARKETS LIMITED**                )
                                                      )

RIVER_00000238