CONFIDENTIAL
Max Hayden - April 13, 2022

Page 1

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
 2               CASE NO.  18-MD-2865 (LAK)

 3    _____
                                             )
 4    IN RE:                                 )
                                             )
 5    CUSTOMS AND TAX ADMINISTRATION OF      )
      THE KINGDOM OF DENMARK                 )
 6    (SKATTEFORVALTNINGEN) TAX REFUND       )
      SCHEME LITIGATION                      )
 7    _____)

 8

 9

10

11

12

13            C O N F I D E N T I A L

14

15

16     REMOTE VTC VIDEOTAPED EXPERT DEPOSITION UNDER

17                  ORAL EXAMINATION OF

18                      MAX HAYDEN

19

20             DATE: April 13, 2022

21

22

23

24

25        REPORTED BY:  MICHAEL FRIEDMAN, CCR
```

GregoryEdwards, LLC | Worldwide Court Reporting
GregoryEdwards.com | 866-4Team GE

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 12

1              THE VIDEOGRAPHER:  Stand by.
2              The time is 7:09 a.m. New York
3         time, and we are back on record.
4
5    M A X   H A Y D E N,
6              called as an expert witness, having been
7    first duly sworn according to law, testifies as
8    follows:
9
10
11
12   EXAMINATION BY MR. OXFORD:
13        Q    All right.  Good morning,
14   Mr. Hayden.
15             My name again, Neil Oxford.  I'm
16   going to be asking you some questions today.
17             I represent the plaintiff SKAT in
18   this matter.
19             Can you tell me, please, whether
20   you've testified previously in any capacity?
21        A    No, I haven't.
22        Q    Okay, fine.
23             MR. PRUDEN:  Yeah, we're having a
24        little trouble getting his audio
25        calibrated.  Let's go off again for a

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 84

1       doing for MPT Dubai was broker and custodian.
2       I'm not aware that ED&F was also providing
3       anything associated with compliance or
4       surveillance or anything of that nature that
5       would have ensued; that they looked at the
6       activities of MPT Dubai to judge whether
7       those trades were as they needed to be.
8               That would very much be the
9       responsibility of MPT Dubai.
10              I'm not familiar with situations
11      where custodians will review their clients'
12      activity when they're essentially only being
13      employed to settle business to make sure that
14      the -- to make sure their clients are trading
15      in a particular way.
16      Q    Going back to the question, sir, of
17      the differences, if any, between the Annex E
18      trades and the non-Annex E cum-ex trades.
19              You told me that they were
20      different because the seller in the Annex E
21      trades was MPT Dubai and the client of
22      ED&F Man.
23              In the work that you did on this
24      case, did you observe any other differences
25      in the Annex E trades and the non-Annex E

1     cum-ex trades?
2            MR. PRUDEN:  Objection.
3       A    I've reviewed trades, which are
4     Annex E, non-Annex E, and also Appendix F.
5            And because these trades are
6     collectively driven by the strategy around
7     dividend arbitrage, is -- there's numbers of
8     similarities across them all, and it's a fact
9     that there would be hedged transactions.
10    We've seen some futures.  There are
11    potentially short-cycle trades, et cetera, et
12    cetera.
13           So I have seen many similarities
14    across the whole list of trades that I have
15    seen, but I would say that fundamental point
16    that the Annex E trades are quite unique to
17    the degree that, as I said before, MPT Dubai
18    employed ED&F as its custodian as well.
19           In the other -- in the non-Annex E
20    trades, an example, that is not the case, and
21    I'm not aware of any of the other
22    counter-parties that ED&F used to trade
23    through on behalf of their clients and
24    counter-parties that they supplied similar
25    services to.

1            Q    Okay.  Other than the fact that
2      MPT Dubai was a client of ED&F Man, did you,
3      in all the work you did on this case, sir,
4      observe any other differences between the
5      Annex E trades and the non-Annex E cum-ex
6      trades?
7            MR. PRUDEN:  Objection.  Asked and
8         answered.
9            A    As I said, I've reviewed an awful
10     lot of trades from a mixture of Appendix F,
11     and there are enormous similarities to purely
12     isolate one group, is -- I don't think
13     appropriate in context of the dividend
14     arbitrage business that was being conducted
15     here.
16           Q    So that's just yes or no.  Are you
17     aware of any other differences -- yes or no,
18     sir -- between the Annex E trades and the
19     non-Annex E cum-ex trades other than the fact
20     that MPT Dubai on the Annex E trades was a
21     client of ED&F Man?
22           MR. PRUDEN:  Objection.
23           A    I think the main difference is that
24     ED&F were executing these transactions with a
25     range of IDBs.  Some of them may have traded

1   through against MPT Dubai, but we can see,
2   because of the activity that went through
3   MPT Dubai, that many of them went elsewhere.
4            So I do know that back-to-back flow
5   of business would have gone to other -- gone
6   elsewhere to other counter-parties that we
7   don't know.
8       Q    Okay.  So, again, other than the
9   fact that MPT Dubai was the counter-party in
10  the Annex E trades and MPT Dubai was a client
11  of ED&F Man, did you, in all the work you did
12  on this case, identify any other differences
13  between the Annex E and non-Annex E cum-ex
14  trades?
15           MR. PRUDEN:  Objection.
16      A    There could have been differences
17  of securities that were traded.  There could
18  be differences on prices that were traded.  I
19  would have to look at specific trades.
20      Q    I'm not asking you to speculate,
21  sir.  I'm not asking you to say "could," I'm
22  asking you whether, in all the work you did
23  on this case, you observed any other
24  differences between the Annex E and
25  non-Annex E cum-ex trades.

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 88

```
1              MR. PRUDEN:  Objection.
2         Q    Just give me a list --
3              MR. PRUDEN:  Objection.
4         Q    -- if you have one.
5         A    And differences -- sorry.
6              Differences to the extent that the
7    trades were structured slightly different, or
8    is it purely down to the fact that MPT Dubai
9    was employing ED&F as a custodian and broker?
10   But for the non-Annex E trades, you're saying
11   that the other counter-parties were not, and
12   so, therefore, that is the only difference,
13   specific difference that I can see.
14             Is that the playback of your
15   question?
16        Q    I'm not testifying, sir.  I'm
17   trying to get you to tell me what your
18   opinion is, if you have one, on the
19   differences between Annex E and non-Annex E
20   cum-ex trades.
21             MR. PRUDEN:  Objection.
22             Is that a question are you
23        re-asking the same question, or do you
24        want to put it another way?
25             MR. OXFORD:  That's a question.
```

1    Q    What are the differences between --
2    that you observed, if any, between the
3    Annex E and non-Annex E cum-ex trades?
4    A    As I said, the key difference is
5    the fact that MPT Dubai was identified as
6    being party to the trades on Annex E.  That
7    is the key difference.
8         And to that end, that's only come
9    about because of a subsequent discovery by
10   ED&F who, while providing custody and
11   brokerage services to MPT Dubai, can see that
12   they -- for a subset of transactions, they
13   were party to those trades and they did not
14   cover their sales.
15        And that is the difference, as I
16   see it, between Annex E and non-Annex E and
17   is very key to this.
18   Q    I'm going to ask you to make
19   another assumption, sir.
20        Are you ready?
21   A    Okay.
22   Q    I'm going to ask you to assume that
23   the ultimate counter-party in the non-Annex E
24   cum-ex trades also did not cover their short
25   sales until after the ex date.

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 241

1    market maker.
2        Do you have any reason to disagree
3    with that?
4        MR. PRUDEN:  Objection.
5    A   I haven't looked up MUFG's licenses
6    and permissions, so I couldn't really comment
7    on that.
8        But if that's something that
9    Mr. Wade has proven in his citations, then I
10   have no reason to deny it.
11   Q   Can you agree, just leaving
12   Mitsubishi aside for a moment, that if it
13   were to be established that a non-Annex E
14   cum-ex seller was subject to U.K. corporation
15   tax on its profits, it would have been
16   entitled to a partial refund of 12 percent on
17   any Danish dividends received?
18       MR. PRUDEN:  Objection.
19   A   Again, as part of my analysis, I
20   haven't gone specifically through the tax
21   treaty that Denmark has with other countries,
22   so I couldn't tell you verbatim if that was
23   accurate in all cases.
24       So I can't really comment on that
25   based on the analysis that I have done to

CONFIDENTIAL
Max Hayden - April 13, 2022

Page 247

1       Q    In forming your opinions, sir, did
2    you consider the impact of the Danish
3    corporate tax act?
4            MR. PRUDEN:  Objection.
5       A    I'm not familiar with that act.
6       Q    Are you aware that under Danish
7    law, entities that are resident in E.U.
8    member states, including France, for example,
9    that have incorporated council directive 2011
10   16 EU can receive 85 percent of the gross
11   dividend on Danish shares rather than
12   73 percent?
13           MR. PRUDEN:  Objection.
14      A    I'm not aware of that particular
15   act.
16      Q    Can you agree that in -- an
17   important factor to consider in analyzing
18   these trades is what the tax treatment of the
19   sellers in the cum-ex non-Annex E trades
20   would be if they simply decided to hold their
21   position?
22           MR. PRUDEN:  Objection.
23      A    For the -- for these types of
24   transactions, which are obviously driven by
25   dividend, then it would make sense to

# Errata Sheet

**Caption:** *In re Customs & Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Litigation*, Master Docket No. 18-md-2865 (LAK)

**Witness:** Max F. Hayden

**Deposition Date:** April 13, 2022

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 17:11 | That's my understanding, yes. | That's my understanding to the extent you understand this "case" to mean the action brought by SKAT against ED&F and others in England. | Clarification |
| 19:2-3 | reflective on the contracts to sign to that end. | reflected on the contracts designed to that end. | Transcription Error |
| 20:24 | sent | set | Transcription Error |
| 21:5-6 | ex-div and ex-dividend date | ex-date and ex-dividend date | Correction |
| 23:3 | extant period | ex-dividend period | Transcription Error |
| 23:20-21 | settlement date, prior settlement date. | settlement date prior to record date. | Transcription Error |
| 25:1-3 | That in parts of my report I have used the term cum-ex specifically for the transactions that have those attributes. | In parts of my report I have used the term cum-ex specifically for the transactions that have those attributes, because that is how Mr. Wade uses the term. | Clarification |
| 25:22 | No. Everything is in my report. | No. Everything is in my report as concerns Mr. Wade's first report dated December 31, 2021. To the extent there are additional opinions expressed in Mr. Wade's subsequent reports, particularly in his February 28, 2022 report which responded to my February 1, 2022 report, I | Clarification |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
|  |  | may have additional opinions or reactions to those materials. |  |
| 29:8-9 | I don't have any opinions to add to that, no. | I don't have any written opinions to add to that, no. | Clarification |
| 29:22-23 | I haven't been asked to reply to that report, either. | I haven't been asked to produce a written report that replies to that report, either. | Clarification |
| 32:19 | engaged him | engaged in | Transcription Error |
| 32:25-33:1 | I received references in that reports that Mr. Wade's used, so documents. | I received Mr. Wade's report and the documents that he either cited in his report or listed as having considered. | Clarification |
| 33:3-9 | If there was anything else that I didn't receive, which was either in that report at the time that it wasn't passed to me or, indeed, I acquired additional information around questions I had, then I passed them through Binder and K&L Gates to supply that to me. | If there was anything that I didn't receive, including materials that were either referenced in Mr. Wade's report or that I felt would be helpful to answer other questions I had, then I asked Binder and K&L Gates to supply those additional materials to me. | Clarification |
| 33:18, 24 | Adam Wall | Adam Piper | Correction |
| 34:2, 34:15 | Mr. Wall | Mr. Piper | Correction |
| 34:18 | attained | obtained | Transcription Error |
| 35:4 | No, only these. | No, only the documents that you sent to me. | Clarification |
| 36:3-4 | stop loan | stock loan | Transcription Error |
| 36:18-20 | so I haven't been involved with dividend arbitrage directly in my career but from a structuring perspective, | but I haven't been involved with dividend arbitrage directly in my career from a structuring perspective, | Clarification |
| 38:10 | Are the reasons | Are there reasons | Transcription Error |
| 40:25-41:1 | describes how their investment strategy and decisions was followed and came about | describes how their investment strategy and decisions came about and were followed | Clarification |
| 41:2 | you what | you from what | Transcription Error |
| 41:15 | the starts of transactions | the types of transactions | Transcription Error |
| 41:21 | to market | what market | Transcription Error |

2

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 56:6 | Hayden | Oxford | Transcription Error |
| 64:7 | in part of | a part of | Transcription Error |
| 65:9 | IFC | DIFC | Transcription Error |
| 66:18 | as if | as to whether | Clarification |
| 66:18-20 | tact | tactic | Correction |
| 69:19-20 | Well, they're very different, so I would say no. | Well, they're very different, so I would say they wouldn't have suffered from the same flaws. | Clarification |
| 69:24 | brokering | brokerage | Transcription Error |
| 72:1 | 2019 | 2020 | Correction |
| 72:8 | operation-related | operational-related | Transcription Error |
| 72:21-22 | shown in the | discovered | Correction |
| 72:23 | cover up their sales | cover their sales | Transcription Error |
| 73:8-9 | which was the ones | which were the ones | Transcription Error |
| 74:1 | that is that | this is that | Transcription Error |
| 74:2 | from accounts | accounts | Correction |
| 74:15 | through human hands or operations person | through the human hands of an operations person | Transcription Error |
| 75:5-6 | I've seen the reconciliations.  Faxes were produced | I've seen the reconciliations that were produced | Transcription Error |
| 80:13-14 | moment, and then I corrected myself, but | moment, but | Correction |
| 83:3 | what | when | Transcription Error |
| 94:15 | the | a | Transcription Error |
| 94:21 | paying | dividend paying | Correction |
| 94:22 | the party who sold the shares | a party who sold shares | Correction |
| 103:13 | calls | pools | Transcription Error |
| 107:23 | is | there is | Transcription Error |
| 108:1 | it has crossed, it has | it has | Correction |
| 108:3 | LSC | LSE | Transcription Error |
| 110:25-111:1 | as a party ex-dividend shares, one, I won't | as a counterparty ex-dividend shares from someone else, I won't | Correction |
| 112:11 | trade-on-trade date | trade, on the trade date, | Transcription Error |
| 114:1 | so; | so, | Transcription Error |
| 114:4 | have paid for them | paid for | Clarification |
| 118:14 | rights | right | Transcription Error |
| 123:3 | it | its | Transcription Error |
| 125:6 | purchasing | purchasing pension | Correction |
| 125:17 | G | the | Transcription Error |

3

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 127:17-18 | the pension plans that purchased | the pension plans purchased | Clarification |
| 129:11 | "However, | "However," | Transcription Error |
| 129:17 | trade date," would | trade date, would | Transcription Error |
| 131:9 | EZMA's | ESMA's | Spelling Error |
| 132:21 | issuances | issuance | Correction |
| 132:22 | subsequent | the consequent | Transcription Error |
| 132:24 | actually having | having actually | Correction |
| 133:13 134:12 134:19 165:21 322:18 | EZMA's | ESMA's | Spelling Error |
| 133:22-23 | "ESMA rights. Those | ESMA writes, "Those | Transcription Error |
| 133:25 | transfer, either | transfer (either | Transcription Error |
| 134:1 | lending, | lending) | Transcription Error |
| 134:4 | paperwork, including tax certificates | the paperwork (including tax certificates) | Transcription Error |
| 134:21-22 | it ESMA as read | the ESMA document as read | Correction |
| 135:8 | expertise | that expertise | Correction |
| 136:14 | that's involved | that includes | Correction |
| 137:17 | 2019 | 2020 | Correction |
| 138:12 | and really understand | and I really need to understand | Transcription Error |
| 155:10 | final | fund | Transcription Error |
| 155:11 | expectation. There's | expectation there's | Transcription Error |
| 158:10 | Dubai | (Dubai) | Transcription Error |
| 158:11 | or an | or | Transcription Error |
| 159:3 | to the fact | in fact | Correction |
| 159:23 | "of sufficient number of shares" | of a sufficient number of shares | Transcription Error |
| 161:23 | reflected | reflective | Transcription Error |
| 162:1 | So for – effectively | So to effectively | Clarification |
| 162:5 | independenter dealer-brokers | interdealer-brokers | Transcription Error |
| 165:2-4 | That was one paragraph, the context of that. I would need to go through | That was one paragraph. To understand the context of that, I would need to go through | Clarification |
| 168:12 | depositions | dispositions | Transcription Error |
| 171:4 | do know that what | do not know what | Transcription Error |
| 172:25-173:1 | like, "These are my settlements," | like internalized settlements | Transcription Error |

4

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 173:6 | buying; it | buying that | Transcription Error |
| 176:19 | annex dividend | an ex-dividend | Transcription Error |
| 177:8 | annex dividend | an ex-dividend | Transcription Error |
| 182:17 | trade specifications | specification | Correction |
| 182:25 | the | a | Transcription Error |
| 183:4 | expressed | express | Transcription Error |
| 183:22 | audit | order | Transcription Error |
| 184:9 | fellow | fund | Transcription Error |
| 191:9 | trade. I | trade, I | Transcription Error |
| 194:4 | ED&F the | ED&F, the | Transcription Error |
| 193:21 | Gavin | Good afternoon | Transcription Error |
| 198:25 | had | add | Transcription Error |
| 199:13 | that to ensure the | as to ensure that the | Transcription Error |
| 199:15 | effects." | effect." | Transcription Error |
| 200:9 | above for | on behalf of | Transcription Error |
| 200:11 | specialist's | specialist | Transcription Error |
| 200:23 | customer, after which they provided. | customer, which they provided upon conclusion of the transaction. | Clarification |
| 201:7 | controlled P&L | P&L | Correction |
| 201:16 | confident communication | confidential communications | Transcription Error |
| 205:10 | Whitehead | Wade | Transcription Error |
| 207:17-19 | I wasn't aware of how it concluded. I think more than being informed that he was going to a court case in Germany. | I wasn't aware of how it concluded, I think, more than being informed that he was going through a court case in Germany. | Transcription Error |
| 207:22 | note | no | Transcription Error |
| 208:5 | reapplies | replies | Transcription Error |
| 208:7 | good | looking good | Correction |
| 208:11 | Sorry, at the back… | "Sorry about the back…" | Transcription Error |
| 210:6, 19, 21, 25 211:3, 7 213:3, 4 216:6, 13 217:15, 23 218:4 221:9, 16, 25 222:3, 4, 12, 17, 24, 25 | Latesha | Lutetia | Spelling Error |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 223:5, 11, 22 224:9, 16, 24 225:8, 23 234:20 235:18, 21 236:17 237:9, 10, 16, 19, 24, 25 238:2, 6, 7, 18, 25 287:10 | | | |
| 214:23 | 7071 | 70, 71 | Transcription Error |
| 214:25 | an, "ED&F | an ED&F | Transcription Error |
| 215:1 | Charlotte Woodward," | "Charlotte Woodward" | Transcription Error |
| 215:3, 4, 24 | Scofield | Schofield | Spelling Error |
| 216:22 | 151 pound million, 525,000 | 151,525,000 | Clarification |
| 217:18 | "Below please confirm trade dates." | "Please confirm below trades." | Correction |
| 219:9 | are | are in | Transcription Error |
| 220:9-12 | RBC, and again, I would have to check with them directly because I haven't. But you may have done, which | RBC—and again, I would have to check with them directly, because I haven't, but you may have done— which | Transcription Error |
| 225:18 | be June | be due | Transcription Error |
| 225:18 | is June | is due | Transcription Error |
| 226:2 | un-deliver | on-deliver | Transcription Error |
| 228:9 | Appendix C, Annex E trades | Appendix C Annex E Trades | Transcription Error |
| 228:9-10 | Appendix E/non-Annex E trades, | Appendix C Non-Annex E Trades | Transcription Error |
| 229:1 | Osorry | Sorry | Spelling Error |
| 232:23 | that, "IDBs | that IDBs | Transcription Error |
| 233:1 | nothing." | nothing. | Transcription Error |
| 233:20 | appropriate | inappropriate | Transcription Error |
| 234:24-25 | Luther Chair | Lutetia | Spelling Error |
| 236:15 | "In | in | Transcription Error |
| 237:5-7 | So it was ED&F see themselves, Latesha, as their ultimate counter-party, | So ED&F themselves see Lutetia as their ultimate counterparty because they can't see through them to | Clarification |

6

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| | because they can't see through them. | whomever Lutetia may be acting on behalf of. | |
| 240:7-8 | ERISA principle | riskless principal | Transcription Error |
| 244:17 | is | are | Clarification |
| 244:20 | Oon Oa | on a | Transcription Error |
| 245:8 | fine-level rational | financially rational | Transcription Error |
| 247:9-10 | council directive 2011 16 EU | Council Directive 2011/16/EU | Transcription Error |
| 251:3 | extremely difficult to obtain | extremely difficult | Clarification |
| 252:9-10 | Appendix C, Annex E | Appendix C Annex E, | Transcription Error |
| 252:10 | Appendix C, non-Annex E | Appendix C Non-Annex E, | Transcription Error |
| 253:20 | it | he | Clarification |
| 255:10 | isn't a book of business transactions | is a book of business where transactions | Transcription Error |
| 257:17 | certainty | certainly | Transcription Error |
| 259:6 | others, | "Other," | Transcription Error |
| 261:14 | Page | Trade | Transcription Error |
| 268:14-15 | The ex date drops at the time of the market. | The market drops at the time of ex date. | Correction |
| 268:18 | exchange is to | exchange | Correction |
| 269:25 | holders, 73 percent | holders with 73 percent | Correction |
| 270:25 | and | end | Transcription Error |
| 273:4-6 | But the consumer being these specialist funds all have – because they're trading in the market, | But the consumer, these specialist funds, are trading in the market, | Clarification |
| 276:10 | Euro Clear | Euroclear | Spelling Error |
| 277:13-15 | that they internalized settlements, was happening in the books of custodians. | that internalized settlements were happening in the books of custodians. | Clarification |
| 277:17 | settlements | settlement | Spelling Error |
| 277:25 | can | can't | Transcription Error |
| 279:8 | knowing | knows | Correction |
| 279:12 | counter-parties | central counter-parties | Correction |
| 280:19 | that high-frequency | that if the high-frequency | Transcription Error |
| 284:12 | in | within | Transcription Error |
| 284:13 | in | on | Transcription Error |
| 284:18 | And then | And | Correction |
| 286:1 | release of shares | reuse of the shares | Transcription Error |
| 288:12 | straight | their | Transcription Error |
| 288:21 | is a | the | Transcription Error |
| 289:16 | in stock | in and stock | Transcription Error |

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 290:4 | settles | settled | Transcription Error |
| 290:12 | Adam Wall | Andrew Wall | Correction |
| 290:14-21 | But a conversation I would expect to have about a person in settlements that is responsible for a depot and optimizes it would be very well-versed in the devices and functions that would be required for them to meet their target of not having any fails and to not lose too much money to fund that process through the settlement day. | But that's a conversation I would expect to have with a person in settlements—they are responsible for a depot and optimize it, and they would be very well-versed in the devices and functions that would be required for them to meet their target of not having any fails and to not lose too much money to fund that process through the settlement day. | Clarification |
| 291:16 | prevailed | prepared | Transcription Error |
| 291:17 | is the – effectively | is effectively | Clarification |
| 293:25 | electronic | electronic form | Clarification |
| 296:13 | an nominee | a nominee | Spelling Error |
| 296:17 | we | would | Transcription Error |
| 299:24 | remitted | permitted | Transcription Error |
| 300:5 | and a | and the | Transcription Error |
| 300:15 314:13 | marketing claim | market claim | Transcription Error |
| 301:17 | does | do | Transcription Error |
| 301:22 | but | and | Clarification |
| 302:5 | is achieved settlements | actually settled | Transcription Error |
| 303:13 | obtaining a financing loan from them | obtaining financing from them | Clarification |
| 304:15 | seeing | showing | Transcription Error |
| 305:7-8 | it would not be a need to borrow | there would not be a need to borrow | Transcription Error |
| 312:16-19 | So from -- because the client has shorted, if that was the case, then there are the shorting -- they're either shorting, because they don't short it. | So because the client has shorted, ED&F will see that the client is short as they don't have the stock. | Clarification |
| 313:22 | if there is shares | if there are shares | Transcription Error |
| 314:8-10 | of a client of you and I buying two sets of shares, but not essentially receiving both the ED&F's depots by settlement date, | of you and I buying two sets of shares, but not receiving both sets of shares into ED&F's depots by settlement date, | Clarification |

8

| Page/Line | Now Reads | Should Read | Reason for Change |
|---|---|---|---|
| 314:18 | So despite the fact that the shares | So the fact that the shares | Clarification |
| 314:19 | depot sum | depot to sum | Transcription Error |
| 320:3-4 | in respect to the record date | with respect to the record date | Correction |
| 320:7 | payment distribution | payment and distribution | Clarification |
| 320:14 | was that for on or before | was that on or before | Transcription Error |
| 321:17-18 | A day after the record date purchases. | A day after the record date generally. | Clarification |
| 322:12-13 | starting both cum-ex and cum-cum | starting, "Both Cum/Ex and Cum/Cum" | Transcription Error |
| 322:18 | cum-ex case, the | Cum/Ex case the | Transcription Error |
| 323:6 | No, I'm not aware of any other. | No, I'm not aware of any that would. | Transcription Error |
| 324:15 | the 6th March | the 6th of March | Transcription Error |
| 325:7 | of March 2014 | in March 2014 | Clarification |

I declare under penalty of perjury under the laws of the United States of America that I have read the entire transcript of my deposition taken in the above-captioned matter and the same is true and accurate, save and except for changes and/or corrections as indicated by me on the deposition errata sheet hereof, with the understanding that I offer these changes as if still under oath.

Executed this 2 day of May, 2022

_____
Max F. Hayden

9