# Exhibit 315

**ED&F MAN** Capital Markets
EST. 1783

## Client Money and Assets Policy

### I. Policy Statement

In the course of its regulated investment business activities, E D & F Man Capital Markets Limited ("MCM"), holds and controls client money and non-cash assets as either collateral or in custody agreements.

The purpose of this Policy is to:

- Ensure MCM has organisational arrangements in place to achieve adequate protection of client money and non-cash assets;
- Set out the approach approved by the European Enterprise Risk Committee ("EERC"); and
- Ensure MCM's on-going compliance with relevant regulations.

The EERC is chaired by the duly appointed chairperson but will include representation by Client Money and Assets Oversight Function (CF10a) or their delegate and they exercise their oversight capacity in accordance with the EERC's Terms of Reference. This Policy is reviewed and approved by the EERC annually. The EERC also will review this Policy more frequently if required to reflect changes to the firm's business or regulatory changes.

The Policy has two key sections:

- Client Money Policy
- Non-Cash Assets (Collateral and Custody) Policy

This Policy is based on the following legal and regulatory instruments:

- The European Markets in Financial Instruments Directive ("MiFID") 2004/39/EC and Implementing Directive 2006/73/EC; and
- The Financial Conduct Authority ("FCA") Client Asset Sourcebook ('CASS") in the FCA Handbook.

### II. Client Money Policy

#### 1. General

1.1 Purpose

In the course of its regulated investment business activities, MCM, or the "firm" holds and controls client money. The FCA Client Asset Sourcebook ('CASS") rules (the "rules") requires the firm to have in place organisational arrangements to achieve an adequate protection of its clients' money.

1.2 Definition of Client Money

Client money[1] is identified as being money received from or on behalf of clients with whom MCM conducts investment business and where such money is owed to its clients.

---

[1] CASS 7.2 and Annex 1 of FCA Handbook: http://www.fshandbook.info/FS/html/FCA/CASS/7/2

**ED&F MAN** Capital Markets

## Client Money and Assets Policy

All references to client money received in the course of MCM's investment business activities are such amounts received from activities conducted from an establishment in the EEA.

In the context of MCM's activities, the firm has identified that client money potentially[2] arises from:

(i) Money received from clients in order to open or maintain investment business accounts i.e. to enable trading in, for example, futures and options, contracts for difference (CFDs), FX, or securities transactions;

(ii) Any amounts earned by clients (including interest) on such investment business accounts (less losses, interest or charges/commissions owed to MCM);

(iii) For a DVP transaction, amounts received to undertake a security purchase where such amounts are received either more than one day in advance or are still held by the firm more than 3 days after the transaction was due to settle;

(iv) Amounts received by us as proceeds of a security sale which are owed to the client;

(v) Dividends or corporate actions the firm receives on behalf of clients (which are not repaid in the appropriate timescale);

(vi) Amounts received in any bank accounts which are either not-reconcilable (and therefore from an unknown source) or which have been identified as client segregated funds and not yet repaid or credited to the clients' account; and

(vii) Amounts resulting from reconciliations of brokers, exchanges or clearing houses which indicates that the firm may need to segregate an additional amount of client money.

Clients classified as Professional or ECP may be offered the option of having their money held as collateral on an absolute title transfer ('ATT') basis where appropriate. Money held on an ATT basis is not treated as client money.

### 1.3 Client Equity Balance / Due and Payable

For an individual client the firm will segregate a "client equity balance" being amounts owed to an individual segregated client in the following manner:

(i) For exchange traded transactions the client equity balance is the amount which the firm is liable (ignoring any non-cash elements) to pay to the client in respect of margined transactions if all open positions held at the close of business were liquidated at the closing or settlement prices and the account closed.

(ii) For OTC transactions the client equity balance is the amount which the firm is liable to pay to the client (ignoring any non-cash elements) in respect of OTC

---

[2] In some circumstances (e.g. title transfer pursuant to CASS 7.2.3) money received is not treated as client money.

CONFIDENTIAL                                                                    ED&F-00050167



**Client Money and Assets Policy**

---

transactions as if all open transactions held at the close of business were closed at the closing market prices and the account closed but for the avoidance of doubt, not including any profits or gains not actually realised at the particular date.

The firm treats the above calculations as the amounts which are due and payable to a client. Other than the application of the policies on interest and commissions (see paragraphs 1.5 and 1.6) the firm does not reduce the above client equity balances as calculated above as a result of considering other amounts that may be due and payable to MCM.

### 1.4 Interest

Generally, it is the firm's policy not to pay credit interest to clients on their client money unless otherwise agreed.

Where interest is due the firm will credit or debit interest to clients on a monthly basis. Interest becomes due and payable once credited or debited and will be included in the client equity balance at that time. In the case of CFD or similar transactions, interest on borrowing or lending on the underlying contracts is debited or credited to clients' accounts daily.
In the event a client account is closed intra-month, credit interest due or debit interest payable is calculated up to the point the account is closed and is included in the client equity balance
at that point.

### 1.5 Commissions

MCM charges commissions using one of the two following methods:

(i) "Upfront": commissions on transactions are charged to the client on the day the transaction is contracted and becomes due and payable on trade date.

(ii) "Settlement": commissions on transactions are charged to the client on the day the transaction is contracted and becomes due and payable on settlement date.

### 1.6 Client money in connection with a "delivery versus payment" transaction

The firm undertakes delivery versus payment (DVP) transactions with clients and counterparties. In this regard the term "client" covers an entity which is holding money with the firm for the purpose of investment business transactions and "counterparty" covers an entity who is undertaking this activity without otherwise holding money with the firm.

#### Client purchase

In the case of clients undertaking a DVP transaction then the policy of the firm is that for a security purchase the client account will be debited on settlement date with the security being treated as a custody asset. In the unlikely event that the trade fails to settle and the client account has been debited then after 3 days from due settlement

---

© 2013 ED&F Man Capital Markets Limited

CONFIDENTIAL                                    ED&F-00050168

**ED&F MAN** Capital Markets

## Client Money and Assets Policy

the purchase consideration will be treated as client money. This Policy is applied for client accounts that are segregated but does not apply to clients who have signed ATT documentation.

### Client sale

For a client sale of a custody stock the proceeds of the stock which is due to be sold DVP will be credited to the client account on settlement date. In the unlikely event that the stock is transferred out of custody and consideration has not been credited to the client account by the third business day the consideration shall be treated as client money.

### Counterparty purchase

In the case of counterparties undertaking a DVP transaction then the policy of the firm is that for a security purchase where the counterparty transfers cash to MCM on settlement date then in the unlikely event that the trade fails to settle after 3 days from due settlement the purchase consideration will be treated as client money.

### Counterparty sale (MCM purchase)

For a counterparty sale of stock to MCM the proceeds of the stock which is due to be sold DVP will be paid to the counterparty on settlement date. In the unlikely event that the cash is not transferred to the counterparty by the third business day the consideration shall be treated as client money. It is not the policy of MCM to treat as custody stocks held on a temporary basis.

### 1.7 Dividends / Corporate actions

### Dividends owed to clients

In cases where MCM is in receipt of cash dividends then the firm will either pay the amounts to the relevant clients (or credit the client account) within 1 business day or treat such amounts as client money until the client has been identified and the amount credited or transferred.

### Dividends owed to counterparties

In cases where MCM receives cash dividends from counterparties which either MCM have determined are owed to another counterparty or MCM is unable to determine that they are payable to the firm, then if after 1 business day of receipt MCM has not paid out such amounts then they will be treated as client money.

### Corporate actions

In the event of a corporate action which results in MCM holding stock which it does not own then if the firm still holds the stock or has not treated the stock as custody after 5 days of receipt then MCM will segregate an equal amount of client money.

CONFIDENTIAL                                                                    ED&F-00050169



## Client Money and Assets Policy

### 1.8 Treatment of Stock Loan

MCM does not engage in stock lending activity (either borrowing or lending) on behalf of clients in relation to their safe custody assets, except in circumstances where express consent has been granted by a non-retail Client by the execution of a stock lending master agreement and any such use of assets is restricted to the terms agreed within the documentation.

Where stock lending activity is undertaken with counterparties under stock lending master netting documentation it is the policy of MCM not to treat any amounts received in order to undertake a stock loan transaction as client money on the basis that any amounts transferred are for the purpose of securing the counterparties obligations under the stock loan.

### 1.9 Treatment of Repo

Where repo activity is undertaken with counterparties under master netting documentation it is the policy of MCM not to treat any amounts received in order to undertake a repo transaction as client money on the basis that any amounts transferred are for the purpose of securing the counterparties obligations under the repo.

### 1.10 Treatment of Dividends/Manufactured Dividends from Stock Loan or Repo Activity (Security Financing Transactions)

The firm undertakes security financing transactions on a matched principal basis, where the firm lends or receives stock from the market ("market side") and receives or lends stock to clients or counterparties ("client side").

In the circumstances that dividends/manufactured dividends are received by MCM from either of the client side or market side and are owed to the other side of the trade then MCM will treat as client money the amount owed in accordance with paragraph 1.7.

### 1.11 Policy on Custody

It is the policy of MCM that it will only treat as custody assets those assets provided to the firm under custody agreements. It does not treat as custody temporary holdings in securities arising from any other activity and will choose to segregate an equivalent amount of client money where a segregation requirement may arise. In particular the firm does not treat collateral as custody.

### 1.12 Policy on Negative Equity

The firm's policy is to exclude from its segregation requirement any client balance which has a negative "client equity balance" (which has the effect of increasing the segregation requirement).

Where a negative client equity balance is secured against acceptable collateral and the firm considers it appropriate to do so (taking into account the valuation and nature

© 2013 ED&F Man Capital Markets Limited

CONFIDENTIAL    ED&F-00050170

**ED&F MAN** Capital Markets

## Client Money and Assets Policy

of any collateral) the firm will reduce its client money requirement by an amount equal to the secured portion.

### 2. Segregated Status

#### 2.1 US Clients

It is MCM's policy to comply with the requirements of the CFTC Part 30 relief when dealing with US clients. All US clients must therefore have their money held on a segregated basis unless they meet the exemption criteria under the CFTC rules.

#### 2.2 Granting of Credit Lines

It is MCM's general policy not to grant credit facilities to segregated clients. In the event that credit facilities are granted to a segregated client, a notification shall be made to the EERC.

#### 2.3 Margining Policy within Segregated Accounts

The margining of segregated client positions is undertaken in accordance with MCM's applicable Risk Policy.

### 3. Selection of Banks/Brokers

#### 3.1 Credit Policy on Segregated Locations

(i) MCM's selection criteria for placing funds with banks must be no less onerous than the criteria it applies when placing its own funds with banking entities.

(ii) MCM will select banking entities for the placement of client money deposits in such locations as are required to efficiently conduct its clients' business.

(iii) On at least an annual basis (or upon the occurrence of an event that deems it necessary), the Banks and Brokers with which MCM has a relationship will be subject to review in accordance with the applicable Credit and Risk policies.

#### 3.2 Banks

MCM will deposit client money with approved banking entities.

#### 3.3 Brokers

It is MCM's policy to maintain business relationships with such brokers, exchanges and clearing houses where necessary to meet our clients' trading requirements. MCM will place client money with brokers, exchanges and clearing houses that have been pre-approved in accordance.

MCM will only open transactional accounts with overseas brokers, exchanges and clearing houses where required to undertake, execute and clear its clients' overseas business.

CONFIDENTIAL    ED&F-00050171

**ED&F MAN** Capital Markets

## Client Money and Assets Policy

### 4. Trust Arrangements

#### 4.1 Client Money Bank Accounts

It is MCM's policy to deposit client money in client money accounts with pre-approved banks as follows:

(i) Where the bank is a newly established relationship, deposits are allowed only upon receipt of duly executed trust letters covering all relevant client money accounts;

(ii) Where money will be deposited in a new client money account with an existing banking relationship, deposits may be made immediately but subject to prompt withdrawal if no validly executed trust letters are received within 20 business days of placing such client money;

(iii) Where MCM cannot obtain segregation of client money and for operational purposes does not have an alternative bank to receive such funds, subject to the approval of the EERC deposits may be maintained within non-segregated client money accounts only if a corresponding amount is held in a segregated client money bank account.

#### 4.2 Brokers/Exchanges Client Money Accounts

Where MCM undertakes segregated client business it will require its brokers, exchanges and clearing houses to provide for its clients' money to be held under a trust arrangement.

In circumstances where MCM cannot set-up a trust arrangement, or the relevant broker, exchange or clearing house has availed itself of a right of off-set and the firm does not have an alternative broker, exchange or clearing house to trade with, it may hold money in such transactional accounts in order to effect the transactions as long as an equivalent amount of client money is held in a segregated bank account.

The existence of a valid trust arrangement can either be ascertained by a duly executed trust letter returned to MCM within 20 business days of the placement of any client money or a published statement by exchanges and clearing houses which is at least equivalent to a trust undertaking.

### 5. Reconciliations

#### 5.1 Bank Reconciliations

It is MCM's policy to undertake daily reconciliations of its client money bank accounts. Such reconciliations may however not be possible due to:

(i) A bank or market closure where no bank reports/statements are available; or

(ii) The unavailability of daily bank reports/statements services from institutions with whom such client money are held.

CONFIDENTIAL                                                                                                                    ED&F-00050172

**ED&F MAN** | **Capital Markets**
EST. 1783

## Client Money and Assets Policy

In such circumstances, the EERC will be notified of and will approve such policy exceptions and reconciliations must nonetheless be undertaken at least monthly.

### 5.2 Broker/Exchanges Reconciliations

Client money held in transactional accounts with brokers, exchanges and clearing houses are reconciled on a daily basis.

Such reconciliations may however not be possible in circumstances where:

(i) A broker/exchange or market is closed and no reports/statements are available; or

(ii) The unavailability of daily reports/statements services from institutions with whom such client money are held.

In such cases, the EERC will be notified of and will approve this policy exception and reconciliations must nonetheless be undertaken at least monthly.

### 5.3 Reconciliation Discrepancies

(i) MCM will deal with all bank account reconciliation discrepancies promptly, and in all cases investigate all unidentified amounts. All unidentified cash received into the firm's bank accounts which could indicate that the firm should be holding an increased amount of client money will be held on a segregated basis until such time as the ownership is established.

(ii) In the event that segregated items are not identified and recorded within 6 months of receipt, such amounts will be transferred to a 'hold account' which will continue to be held on a segregated basis. All transfers to the segregated hold account are subject to operational approval and will be reported to the EERC and the Board.

(iii) Reconciliation differences arising on segregated broker and clearing house reconciliations will be promptly investigated. Where transactions are recorded in the books of MCM, they will be treated as a segregated position at the broker or clearing house on the basis that the other side of the transaction is held in a client segregated account.

In cases where transactions are recorded in the books of the broker or clearing house but not in MCM's books, such transactions will not be held on a segregated basis as the other side of the transaction is not held in a client segregated account.

## 6. Client Money Calculation

### 6.1 Calculation Methodology and Frequency

In accordance with the Rules, MCM will undertake a daily client money calculation under the 'normal approach'.

CONFIDENTIAL                                                                                              ED&F-00050173

**ED&F MAN** Capital Markets
EST. 1783

## Client Money and Assets Policy

Client money requirements will be calculated based on the definition of client money in section 1.3 above and taking into account client money resources held with brokers, exchanges and clearing houses. The client money calculation will ensure that the difference between client money requirements and client money resources is held in client money bank accounts.

### 6.2 Absolute Title Transfer (ATT)

Clients classified as Professional or ECP may be offered the option of having their money held as collateral on an absolute title transfer ('ATT') basis where suitable.

Under a title transfer collateral arrangement ATT, MCM is not required to treat money received as client money.

### 6.3 Client Money Additional Requirement

It is MCM's policy to maintain such additional client money requirements as set by the EERC. This additional requirement is to provide for any pricing errors fed from exchanges and any other external events beyond the firm's control.

In order to ensure the appropriateness of this additional client money requirement size, the EERC and the Finance Department will be advised of any trade breaks or pricing errors exceeding a threshold set by the EERC.

### 6.4 FX Revaluations

When calculating segregation requirements, MCM will use the closing FX spot rate of the day for all currencies when calculating the dollar equivalent amount.

In the interests of the client one currency within the segregated pool may be switched for another currency in order to either manage the foreign exchange exposure or manage currency liquidity. The firm aims to maintain adequate liquidity within the segregated pool by currency so as to be able to repay clients as and when required.

### 6.5 Bank Closures (US and UK)

In the event of a US or European (non UK) bank holiday, MCM will transfer such amounts as required to complete the segregation calculation in an alternative freely transferable currency.

Under FCA rules, MCM adopts the 'normal approach' for client money segregation requirements and does not conduct client money reconciliations on UK Bank Holidays[3].

### 6.6 Reconciliation to Financial Records

MCM's Finance Department will reconcile the total segregated requirement arising from the client money calculation for the last working day of each month with the values recorded on the trial balance for client segregated liability.

---

[3] See CASS 7.4.17 of FCA Handbook: http://fsahandbook.info/FSA/html/handbook/CASS/7/4



Client Money and Assets Policy

### 6.7 Analytical Review of Daily Segregated Funds Movement

MCM's policy is to undertake an analytical review of the movement in segregated funds by comparing actual movements to a pre-generated expected movement figure.

In circumstances where a difference arises which exceeds the threshold amount set by the EERC, the Finance Department will undertake further due diligence on the relevant day. The Finance Department will notify the CF10a or his designate when the difference exceeds the threshold amount set by the EERC and action undertaken to resolve the difference.

The CF10a or his designate will decide on action to be undertaken and inform the EERC accordingly where subsisting differences exceed the threshold amount.

### 6.8 'Prudent Approach' Policy

In certain situations where the firm considers it prudent to do so MCM may segregate an additional amount of client money in order to ensure that its clients are adequately protected. In particular:

(i) Where a daily computation of client money requirement results in an unexpected release of client money, in some circumstances which would be subsequently notified to the EERC the Finance Department may decide not to release such client money funds for that specific day.

(ii) In the event that for whatever reason the systems which the calculation relies upon are not functioning adequately then the Finance Department may decide to segregate an additional amount of client money. Such circumstances will be subsequently notified to the EERC.

### 7. Operational Policies

### 7.1 Transactional Accounts Buffer

It is the firm's policy to call back excess segregated funds held on transactional accounts with brokers, clearing houses and exchanges on a daily basis. However, in order to minimise the number of operational transactions, MCM may maintain small surpluses of client money at any individual broker, exchange and clearing house at such amounts as approved from time to time by the EERC.

### 7.2 Non-Deliverable Currencies

In circumstances where MCM has been requested by segregated clients to undertake transactions on their behalf on exchanges where there may be requirements to pre-fund initial margin, and/or there are restrictions on the transferability of the underlying contracts' currencies, subject to the Board's approval MCM will maintain segregated funds surpluses at such brokers, exchanges and clearing houses.

CONFIDENTIAL                                                                 ED&F-00050175

**ED&F MAN** Capital Markets

Client Money and Assets Policy

### 7.3 Affiliates Accounts

In the event that segregated clients request MCM to undertake transactions on their behalf on exchanges where MCM is not a direct member, it will make such arrangements as are necessary in order to effect these transactions.

In circumstances where an affiliate of MCM is a direct member of one or more of these exchanges, or is able to offer equivalent services, it is MCM's policy to use the services of those affiliates on an arm's length basis.

Affiliates using the services of MCM for similar reasons will have their accounts with MCM held as any other third party client.

### 7.4 Unallocated Client Money

In situations where MCM is in receipt of funds into its bank account which cannot be allocated to a specific client account, such funds will be held as client money.

### 7.5 Allocated Unclaimed Client Money

In cases where MCM is holding segregated but unclaimed client money, such money will continue to be held on a segregated basis until MCM is able to effect repayments to the relevant clients.

### 7.6 Pricing Adjustments

In circumstances where broker, exchange and clearing house reconciliations require adjustments to be made to the valuation of certain client segregated positions, the Operations Department shall notify the Finance Department of such adjustments in accordance with the threshold set by the EERC from time to time.

### 7.7 Cash/Cheque Payments

It is MCM's policy not to accept funds from clients in the form of cash or cheque payments.

### 7.8 Inter-Account Transfers

In circumstances where a client holds accounts with MCM on a segregated and an ATT basis, it is the firm's policy to transfer funds from the segregated account to the ATT account only with the client's written consent; this consent can be granted by email, fax or any similar documented process or by standing written instruction from the client.

## 8. Policy Compliance

### 8.1 Training

It is MCM's policy that staff will be appropriately educated and trained on a periodic basis to ensure compliance with regulatory requirements and internal policies and procedures regarding client money and assets.

© 2013 ED&F Man Capital Markets Limited

CONFIDENTIAL

ED&F-00050176



Client Money and Assets Policy

### 8.2 Assurance

The Compliance Department will periodically, using a risk based approach, conduct monitoring of the adequacy of MCM's systems and controls for the identification and recording of Client Money and Assets including the validation of Client Money Trust letters. In addition, the Compliance monitoring should help to identify weaknesses in the systems, actual or potential breaches, and secure MCM's continuous compliance with the Rules. The findings of Compliance's monitoring will be presented by the Compliance Department to the EERC and may be escalated to the MCM if appropriate.

### 8.3 Internal Audit Reviews

It is the firm's policy that the internal audit department undertake specific Client Assets audits in order to obtain assurance that the systems and controls in place around the entire Client Money and Custody processes operate effectively and in accordance with the regulatory rules.

In the event that the Internal Audit function requires additional expertise in these matters they will engage outside specialist advice.

The policy requires that processes determined to be significant to the client asset process are reviewed at least annually. The scope and terms of such client asset related internal audits will be agreed with EERC and will be reviewed at least annually.

### 8.4 Management Information

The EERC in accordance with the Board will determine such management information as necessary to validate the effectiveness of MCM's systems and controls to comply with the Rules. This set of management information will be provided to the EERC and to the Board.

### 8.5 Segregation Status

In cases where clients request that their accounts be changed from ATT to segregated, MCM will consider such requests promptly and respond to the customer within a reasonable time.

Where clients request their accounts to be changed from segregated to ATT, MCM will consider such requests promptly in accordance with segregation procedures to ensure that the loss of protection is in line with the client's risk profile.

Where this occurs new client documentation will be sent to clients.

## III. Non-Cash Asset (Collateral and Custody) Policy

### 1. Purpose

1.1   In the course of its regulated business, MCM holds and controls non-cash assets on behalf of clients either as collateral or in custody arrangements. The FCA CASS rules (the "rules") in particular CASS 3 (Collateral) and CASS 6

**ED&F MAN** Capital Markets

Client Money and Assets Policy

---

1.2 (Custody) requires the firm to have in place organisational arrangements to ensure an adequate level of protection is afforded to non-cash assets deposited with the firm.

1.2 This Section forms part of the Client Money & Assets Policy and sets out the policies adopted by MCM to comply with the rules in relation to non-cash assets deposited with it by clients.

## 2. Non-Cash Collateral

2.1 MCM will, as part of its business activities, accept non-cash assets from non-Retail Clients under the Title Transfer Collateral Provisions (TTCA) of CASS 6.1.6 and CASS 7.2.3 (respectively) which it uses to secure obligations from those clients ("Collateral").

2.2 In respect of MCM Clients, the non-cash assets held by MCM shall be transferred into the firm's name upon receipt with only an obligation to return equivalent assets to the client concerned upon satisfaction of a client's obligations to the firm.

2.3 MCM will maintain records to ensure that collateral held is identifiable and clients are able to distinguish those assets held as collateral and those assets held in safe custody in the periodic statements sent to them.

## 3. Custody

3.1 MCM maintains separate internal accounts for safe custody assets received from each individual client to whom a custody facility is made available. At each Custodian MCM maintains a separate account for safe custody assets belonging to clients to ensure that such safe custody assets are identifiable from those of the firm.

3.2 In relation to MCM Clients who have duly executed the Security and Set-Off Deed, safe custody assets will be held as custody until such time as the fixed and/or floating charge upon them is exercised.

3.3 Assets of clients who have taken the ATT option are not treaded as safe custody assets and do not receive the protections of the CASS rules.

<u>Use of safe custody assets</u>

3.4 MCM does not engage in stock lending activity (either borrowing or lending) on behalf of clients in relation to their safe custody assets, except in circumstances where express consent has been granted by a non-retail Client by the execution of a stock lending master agreement and any such use of assets is restricted to the terms agreed within the documentation.

MCM will only use for its own account the safe custody assets belonging to a non- retail client with the express written consent of that Client and such use is restricted to the terms agreed with the client.

---

**ED&F MAN** | Capital Markets

## Client Money and Assets Policy

### Registration of Assets

3.5 It is the policy of MCM to register UK securities received as safe custody assets in the name of its Custodian. With respect to non UK securities, MCM will register them in accordance with CASS 6.2.3 and will follow local practice. MCM does not accept non- cash assets in bearer form.

### Risk Assessment of Custodian

3.6 Whenever safe custody assets are deposited with a third party Custodian, Credit Risk are required to undertake a risk assessment of that Custodian prior to the assets being deposited, taking into account all matters referred to in CASS 6.3.1 and 6.3.2.

3.7 On at least an annual basis (or upon the occurrence of an event that deems it necessary), the Custodians with which MCM has a relationship will be subject to review in accordance with the applicable Credit and Risk policies.

3.8 The policy of the firm is to deposit safe custody assets only with an EEA regulated entity or an entity in a jurisdiction that operates an equivalent standard of custody protection. If Operations advises that a Custodian is required in a new non-EEA jurisdiction, it will be the responsibility of Legal and Compliance to determine whether the requested non-EEA jurisdiction is operating such equivalent protection, and document accordingly.

3.9 In accordance with CASS 6.3.4(2), if a non Retail Client instructs the firm in writing for assets to be held with a custodian in a non-EEA jurisdiction which MCM has determined is not equivalent for custody protection, the custodian account may be approved but only when such client has been advised in writing by Legal and Compliance of the lack of equivalence and the potential loss of protections afforded to the client by a Custodian in an EEA or equivalent jurisdiction.

3.10 Agreements entered into with Custodians will be reviewed by Legal to ensure any lien or other restriction in favour of the Custodian contained within the agreements are appropriate and confined in their extent to fees and charges owed for holding the assets in custody and are in compliance with CASS.

### Record Keeping

3.11 MCM will maintain records that enable the firm to identify safe custody assets by client. These records must be maintained in line with MCM's record retention policy.

### Stock Reconciliation

3.12 MCM undertakes stock reconciliations on a daily basis on the total count method as defined in CASS 6.5.4(3). This daily reconciliation will include physical stock certificates held by MCM.

CONFIDENTIAL                                                                                     ED&F-00050179



## Client Money and Assets Policy

### Reconciliation Discrepancies

3.13    MCM will investigate discrepancies arising from the daily stock reconciliation. MCM will document the reasons identified for custody discrepancies.

3.14    In the event that the discrepancy results in a client's custody holding, as recorded in the firm's systems, not being fully recognised at a Custodian, the firm will, on a temporary basis, cover such discrepancies by creating a Client Money requirement (in accordance with paragraph 1.12 of Section 1 (Client Money Policy), up to the value of the discrepancy

3.15    3.13 shall not apply in the event of Corporate Actions occurring on a custody stock such that the stock is removed from the custodian statement in accordance with the terms of the corporate action.

3.16    In the event that the client has transferred / sold stock but the firm's systems have not been updated, 3.13 shall not apply for one Business Day.

3.17    In the event that a Custody holding is in the process of being dematerialised or materialised and is recorded on the firm's systems and therefore not at the Custodian, 3.13 shall not apply until the process of de-materialisation / materialisation is complete.

### IV. GENERAL

### Breaches Register

1.1    The Compliance Department will maintain a Client Money and Assets breaches register and procedures and processes to ensure that potential breaches of the Rules are escalated and that any actual breaches are fully investigated, recorded and reported to the EERC as soon as practicable and the Board as appropriate.

1.2    The Compliance Department is responsible for determining in conjunction with the EERC whether a breach will be reported to regulatory authorities.

### Complaints

2.1    The Compliance Department is responsible for dealing with all complaints in relation to the firm and will advise the EERC of any complaints which relate to Client Money and Non-Cash Assets. Any material complaints will be brought to the attention of the EERC as soon as practicable.

CONFIDENTIAL                                                                                               ED&F-00050180