# Bezirksgericht Zürich

Rechtshilfe

Wengistrasse 28
P.O. Box
8036 Zurich
Switzerland
Phone 0041 44 248 20 35 / 0041 44 248 21 80
Your request for legal assistance was
successfully executed.  Yours sincerely,

Supreme Court of the Canton of Zurich
International Legal Assistance
Zürich, ...........................................
WR2401169·0

Case-Nr.: FR211172-L/K7

FR211172-L/El

Mr. Neil J. Oxford
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
United States

Vice President lic. iur. S. Büeler

Zurich, February 6, 2023

## Court Transcript (in German language) of the Witness Hearing of January 17, 2023, before the District Court Zurich, Division Mutual Legal Assistance

Dear Mr. Oxford,

The District Court Zurich, Division Mutual Legal Assistance, held a witness hearing upon request for international judicial assistance of Honorable Lewis A. Kaplan, District Judge at the United States District Court for the Southern District of New York, re Skatteforvaltningen, Customs- and Tax Administration of the Kingdom of Denmark, vs. Ackview Solo 401K Plain and further Defendants. This court hereby transmits the original court transcript in German language of the witness hearing of January 17, 2023. As service is made by the parties in the United States, we kindly request you to serve the copies of the court transcript to the legal representation of the defendants and Honorable Lewis A. Kaplan.

The request for international judicial assistance has thereby been fully executed. Therefore, in accordance with standard practice, please find enclosed further original copies of this court's rulings of April 22, 2022, of August 29, 2022 and of November 25, 2022, which you have already received.

Geht an die ersuchende Behörde zurück

Zürich,        2 8. FEB. 2023
         BEZIRKSGERICHT ZÜRICH
              Rechtshilfe

Yours sincerely,

District Court Zurich
Division Mutual Legal Assistance
Court clerk:

L. Stewart-Smith

EINGEGANGEN am Obergericht Zürich,
Abteilung Internationale Rechtshilfe am:

– 1. März 2023

# Bezirksgericht Zürich

Rechtshilfe



---

Geschäfts-Nr.: FR211172-L / P_ZEV
Ihr Aktenzeichen: 18-md-2865 (LAK)

## Einvernahmeprotokoll

| | |
|---|---|
| Datum der Einvernahme: | Dienstag, 17. Januar 2023, 14.00 Uhr |
| Ort der Einvernahme: | Lalive SA, Stampfenbachplatz 4, 1. Stock, 8042 Zürich |
| Vizepräsidentin: | lic. iur. S. Büeler als Einvernehmende |
| Gerichtsschreiberin: | MLaw L. Stewart-Smith als Protokollführerin |
| Ersuchende Behörde: | US-Bezirksgericht für den südlichen Bezirk von New York, USA |
| Ersuchen vom: | 20. Oktober 2020 |

in Sachen

**Skatteforvaltningen**, Zoll- und Steuerverwaltung des, Königreichs Dänemark,
Ostbanegade 123, 2200 Kopenhagen, Dänemark,
Klägerin

vertreten durch RAe Sandrine Giroud und/oder Dominik Elmiger,
35 Rue de la Mairie, Postfach 6569, 1211 Genève 1
vertreten durch RAe William R. Maguire, Marc A. Weinstein, Neil J. Oxford und/o-
der Dustin P. Schmid, Hughes Hubbard & Reed LLP, One Battery Park Plaza,
New York 10004-1482, Vereinigte Staaten
vertreten durch RAe Boris Frederiksen und Kirsten Marie Donato, Vester Fari-
magsgade 23, 1606 Kopenhagen, Dänemark

gegen

1. **Ackview Solo 401K Plain**,
2. **AGD Asset Management Pension Plan**,
3. **Aerovane Logistics LLC Roth 401(K) Plan**,
4. **Aventus Capital LLC Solo 401K Plan**,
5. **und weitere Beklagte**,

Beklagte

betreffend **Edition bzw. Zeugeneinvernahme (Forderung)**

| **17. Januar 2023** | **Einvernahme der Zeugin** |
| --- | --- |
| | Isabelle Salomone |

Anwesend:   Vizepräsidentin lic. iur. S. Büeler
Gerichtsschreiberin MLaw L. Stewart-Smith
Auditorin MLaw A. Dürmüller

Frau C. John als amtlich bestellte Englisch- sowie Französisch-Dol-metscherin

Erschienen:   Die Zeugin, Frau Isabelle Salomone, Stv. Direktorin der Zweignie-derlassung Société Générale, Paris, Zweigniederlassung Zürich, in Begleitung von Dr. iur. J. F. Götz Gallenkamp (Zweigniederlassung Société Générale, Paris, Zweigniederlassung Zürich)

Rechtsanwalt lic. iur. D. Hofmann und Rechtsanwältin MLaw K. Ar-nesson, namens und mit Vollmacht für die Editionsadressatin

Rechtsanwältin lic. iur. S. Giroud, Rechtsanwalt lic. iur. D. Elmiger, Rechtsanwalt MLaw A. Santen, namens und mit Vollmacht für die Klägerin (Schweizer Rechtsvertretung)

Rechtsanwalt N. Oxford, Rechtsanwalt M. A. Weinstein sowie Rechtsanwältin E. Pamukcu (zugeschaltet per Videoübertragung), für die Klägerin (US-amerikanische Rechtsvertretung)

Rechtsanwalt B. Frederiksen und Rechtsanwältin A. Ch. Kjaer Eg-holm, für die Klägerin (Dänische Rechtsvertretung)

Rechtsanwalt N. Bahnsen (zugeschaltet per Videoübertragung), für John Van Merkensteijn und weitere Beklagte (US-amerikanische Rechtsvertretung)

Stenografin Frau Ch. Myerly

Videograf Herr J. Rivera

(Die Einvernahme findet in den Räumlichkeiten
von Lalive SA, Stampfenbachplatz 4, 1. Stock,
8042 Zürich statt.)

(RA D. Elmiger reicht zuhanden des Protokolls
zwei Anwesenheitslisten als act. 61/1-2 zu den
Akten.)

i.f.

(RA D. Elmiger stellt ein Gesuch um Zustellung
des Gerichtsprotokolls nach dessen Ausferti-
gung.)

(Beginn der Einvernahme: 14.00 Uhr.)

(Die Vizepräsidentin begrüsst die Erschienenen
und stellt die Gerichtsbesetzung vor.)

(Die Dolmetscherin wird auf die strafrechtlichen
Folgen einer wissentlich falschen Übersetzung im
Sinne von Art. 307 StGB und der Verletzung des
Amtsgeheimnisses im Sinne von Art. 320 StGB
aufmerksam gemacht.)

(Die Zeugin sowie die weiteren Anwesenden er-
klären, die Dolmetscherin zu verstehen.)

(Die Vizepräsidentin stellt zuhanden der Zeugin
und des Protokolls fest, wer im Raum anwesend
ist.)

(Die Personalien der Zeugin, Frau Isabelle Salo-
mone, wohnhaft Mönchhofstrasse 8, 8802 Kilch-
berg ZH, werden überprüft und von dieser als zu-
treffend bestätigt. Auf Nachfrage hin erklärt die
Zeugin, dass sie am 16. Juni 1973 geboren wor-
den und ihr Heimatort Zürich sei. Die Zeugin gibt
an, dass sie seit dem Juni 2022 in der Abteilung
Security Services der Société Générale arbeite.)

(RA D. Elmiger wendet ein, dass bereits die Be-
fragung zur Person auf Video aufgezeichnet wer-
den müsse, damit die Aufzeichnung sämtlicher
Zeugenaussagen gewährleistet sei. Die Vizeprä-
sidentin erklärt, dass weitere Fragen zur Person
nach der rechtlichen Belehrung der Zeugin erfol-
gen würden.)

(Die Vizepräsidentin erläutert das heutige Pro-
zessthema und die Prozessgeschichte des vorlie-
genden Rechtshilfeverfahrens.)

(Die Vizepräsidentin weist die Parteien darauf hin,
dass die Einvernahme auf Tonträger sowie mit-
hilfe eines Videografen auf Video aufgezeichnet
sowie per Video übertragen werde. Sodann
werde mithilfe einer Stenografin ein englisches

Protokoll erstellt. Zudem werde gerichtsseitig ein Gerichtsprotokoll erstellt. Da die Einvernahme auf Tonträger aufgezeichnet werde, werde das Gerichtsprotokoll der Zeugin nicht zur Unterzeichnung vorgelegt.)

(RA D. Elmiger stellt Anträge zum Ablauf der heutigen Zeugeneinvernahme, die insb. aus US-amerikanischer Perspektive für das weitere Verfahren relevant seien. RA D. Elmiger beantragt, dass
1.   die Rechtsbelehrung der Zeugin auf Video aufgezeichnet werde;
2.   der Wortlaut der in den deutschen und englischen Versionen des Rechtshilfeersuchens enthaltenen Definitionen und Fragen vorliegend als massgebend gelte und die Fragen nicht frei auf Deutsch und Englisch übersetzt würden;
3.   die Begrenzung des sachlichen sowie zeitlichen Umfangs der Fragen gemäss Editionsverfügung [act. 35] einzuhalten sei,
4.   die Begrenzung des sachlichen und zeitlichen Umfangs der Fragen gemäss Editionsverfügung [act. 35] auch bei möglichen Ergänzungsfragen einzuhalten sei;
5.   Einwände gegen mögliche Ergänzungsfragen zu Protokoll genommen würden.)

(Auf Nachfrage hin bestätigt die Zeugin ausdrücklich, die im Rechtshilfeersuchen enthaltenen Fragen und die diesbezüglich relevanten Definitionen vorgängig zur heutigen Einvernahme erhalten zu haben.)

(Die Vizepräsidentin hält fest, dass vorliegend einzig für das gegenständliche Hauptverfahren vor dem US-Bezirksgericht für den südlichen Bezirk von New York, USA, Rechtshilfe gewährt werde. Die Interessensabwägung betreffend die durch das Schweizer Bankgeheimnis geschützten Informationen erfolge nur im Zusammenhang mit diesem Zivilverfahren, weshalb allfällige Erkenntnisse nicht in andere Verfahren, namentlich Straf- oder Steuerverfahren, einfliessen dürften.)

(Die Vizepräsidentin macht Ausführungen zum Verhandlungsablauf und hält fest, dass Ergänzungsfragen im Anschluss an die Befragung gestellt werden könnten, wobei diese Möglichkeit

i.f.

zuerst der Klägerin, hernach der Beklagten und schliesslich der Editionsadressatin gewährt werde.)

(Die Zeugin wird von der Vizepräsidentin gebeten, in der Mitte des Raumes Platz zu nehmen, um die Videoaufzeichnung der nachfolgenden Zeugenbefragung gewährleisten zu können.)

**Die Zeugin** (auf Befragen):

(Die Zeugin wird zur Wahrheit ermahnt und auf die strafrechtlichen Folgen einer wissentlich falschen Zeugenaussage gemäss Art. 307 StGB hingewiesen.)

(Die Zeugin wird darauf hingewiesen, dass sie gemäss Art. 160 Abs. 1 ZPO zur Mitwirkung bei der Beweiserhebung verpflichtet sei.)

(Der Zeugin werden die Aussageverweigerungsrechte gemäss Art. 165 ZPO und Art. 166 ZPO erläutert. Ferner wird die Zeugin darauf hingewiesen, dass ihr auch die im Rechtshilfeersuchen enthaltenen US-amerikanischen Aussageverweigerungsrechte zustünden:
1.     Aussageverweigerungsrecht betreffend durch das Anwaltsgeheimnis geschützte Kommunikation, welche im Rahmen einer rechtlichen Beratung erfolgte;
2.     Aussageverweigerungsrecht, falls die Gefahr strafrechtlicher Verfolgung drohe, wobei sich nur natürliche Personen hierauf berufen könnten, d.h. namentlich nicht die Société Générale.)

(Der Zeugin werden die Säumnisfolgen gemäss Art. 167 ZPO erläutert).

(Die Zeugin bestätigt, die vorerwähnten Bestimmungen im Rahmen der heutigen Anhörung und der Zeugeneinvernahme, welche folgen werde, verstanden zu haben.)

(Die Zeugin ersucht das Gericht, ihr die Erlaubnis zu erteilen, Auskünfte geben zu dürfen, welche ihr Berufsgeheimnis bzw. das Bankgeheimnis betreffen würden. Die Vizepräsidentin führt aus, dass

das Gericht bereits in der Editionsverfügung vom
12. April 2022 [act. 35] eine Interessensabwä-
gung vorgenommen habe, wobei das Interesse
an der Wahrheitsfindung das Berufs- bzw. Bank-
geheimnis überwiege. Die Vizepräsidentin weist
weiter darauf hin, dass diese Interessensabwä-
gung bei Ergänzungsfragen jeweils erneut ge-
macht werde.)

> Welche Position hatten Sie bei der Société Générale wäh-
> rend des massgeblichen Zeitraums vom 1. Januar 2014
> bis 30 August 2015 inne?

Während dieser Periode war ich Relationship Manager bei der Abteilung Security
Services. Hierbei handelt es sich um die Abteilung für Wertschriften der Société
Générale in Zürich.

> Haben Sie eine Beziehung zur Klägerin?

Nein, ich stehe in keiner Beziehung zur Klägerin. Meinen Sie dabei eine persönli-
che Beziehung zur Klägerin?

> Ja:

Nein, ich habe keine persönliche Beziehung zur Klägerin.

> Haben Sie eine persönliche Beziehung zu irgendeinem /
> irgendeiner der Beklagten?

Nein.

> Haben Sie Vorstrafen?

Nein.

(Die Vizepräsidentin hält eingangs fest, dass die
nachfolgenden Fragen des ersuchenden Gerichts
im Lichte der massgeblichen Definitionen im
Rechtshilfeersuchen zu verstehen seien.)

i.f. ℳ

Kennen Sie die Definitionen?

Die aus unserer Sicht wichtigsten Definitionen sind die Definitionen der Verwahrer sowie die Liste der Unternehmen. Die Recherchen der Société Générale haben ergeben, dass nur ein Unternehmen während des betroffenen Zeitraums in Frage kommt.

(Auf erneute Nachfrage der Vizepräsidentin be-
stätigt die Zeugin, dass sie die Definitionen kenne
und bei allfälligen Unklarheiten nachfragen
werde.)

(Die Vizepräsidentin hält fest, dass sich die nach-
folgenden Fragen nur auf den massgeblichen
Zeitraum vom 1. Januar 2014 bis 30. August 2015
beziehen würden.)

(Die Vizepräsidentin hält zuhanden der Dolmet-
scherin fest, dass sie sich an den genauen Wort-
laut der englischen Version des Rechtshilfeersu-
chens zu halten habe und anschliessend frei ins
Französische übersetzen könne.)

> a)     Welcher Art ist ggf. die Beziehung zwischen der
> Société Générale und den Verwahrern?

Während des massgeblichen Zeitraums bestand eine Beziehung zu einem Ver-
wahrer der Liste. Die Beziehung bestand darin, dass Wertschriftendienstleistun-
gen seitens der Abteilung Security Services der Société Générale geleistet wur-
den.

> b)     Welche Dienstleistungen hat die Société Générale
> ggf. gegenüber den Verwahrern in Verbindung mit der
> Verwahrung der dänischen Wertpapiere für die Verwahrer
> erbracht?

Keine.

i.f.

> i. Welche Dienstleistungen wurden bei der Eröffnung von Konten für die Verwahrer erbracht?

Während des massgeblichen Zeitraums wurden keine Dienstleistungen erbracht, die in Verbindung mit den dänischen Wertpapieren stehen.

> ii. Welche Dienstleistungen wurden bei der Führung der Konten für die Verwahrer erbracht?

Mit Bezug auf die Verwahrung von dänischen Wertpapieren wurden im genannten Zeitraum keine Dienstleistungen erbracht.

> iii. Welche Dienstleistungen wurden bei der Schlies-sung der Konten für die Verwahrer erbracht?

Mit Bezug auf die Verwahrung von dänischen Wertpapieren wurden für die Ver-wahrer keine Dienstleistungen erbracht.

> iv. Wurden gegenüber den Verwahrern besondere Dienstleistungen in Verbindung mit der Verwahrung der dänischen Wertpapiere für die Verwahrer erbracht?

Es wurden keine Dienstleistungen für die Verwahrer erbracht, die in Verbindung mit dänischen Wertpapieren stehen.

> c) Was weiss die Société Générale darüber, ob die Verwahrer dänische Wertpapiere hielten?

Nein, wir wissen es nicht.

> i. Was weiss die Société Générale über die Art und Weise, in der die Verwahrer dänische Wertpapiere kauf-ten?

Ich habe keine Kenntnis über einen Kauf von dänischen Wertpapieren seitens des Verwahrers.

i.f.

> Sie haben ausgeführt, dass Sie keine Kenntnis davon hätten, obschon die Frage lautet, ob die Société Générale etwas wisse. Können Sie uns erklären, ob Sie nur für sich persönlich oder auch für die Société Générale sprechen können?

Ich spreche im Namen der Société Générale.

> ii. Was weiss die Société Générale über die Art und Weise, in der die Verwahrer ansonsten dänische Wertpapiere erhalten haben?

Nein.

> d) Was weiss die Société Générale darüber, ob die Verwahrer Dividenden für das Eigentum an dänischen Wertpapieren erhielten?

Wir wissen nichts.

> i. Welche Einzelheiten kennt die Société Générale bezüglich des Erhalts dieser Dividenden?

Wir haben keine Kenntnisse über Dividenden und wir haben keine Informationen über Dividenden, die von dänischen Wertpapieren herrühren.

> ii. Was weiss die Société Générale darüber, wer die Letztbegünstigten dieser Dividenden waren?

Ich habe keine Informationen zu den Verwahrern. Wir hatten keine dänischen Wertpapiere bei uns. Es gab keine Dividenden und ich habe keine Informationen zu den Letztbegünstigten. Hierbei spreche ich im Namen der Société Générale und nicht aus meiner persönlichen Sicht.

(Die Vizepräsidentin erklärt, dass die nachfolgenden Fragen e) und f) des Rechtshilfeersuchens aufgrund der Tatsache, dass keine Unterlagen

i.f.

ediert worden seien, ihres Sinnes entleert worden
seien, aber dennoch gestellt würden.)

Kann die Société Générale Dokumente, die gemäss Zif-

fer 11 vorgelegt wurden, beglaubigen, wenn erforderlich?

(RA D. Hofmann wendet ein, dass nicht klar sei,
was mit "beglaubigen" gemeint sei und merkt an,
dass es sich bei der Editionsadressatin nicht um
eine Notarin handle.)

(Auf Nachfrage, ob RA D. Elmiger eine Antwort
auf diese Frage geben könne, bittet er um einen
kurzen Unterbruch zwecks Besprechung.)

(RA D. Elmiger erklärt, die Frage e) wie folgt um-
formulieren zu wollen: "Liegen der Société
Générale irgendwelche Dokumente vor, die sie
entsprechend der Ziffer 11 produzieren könnte?".
Frage f) sei hernach wegzulassen. Auf Nachfrage
der Vizepräsidentin bestätigt RA D. Elmiger, Do-
kumente zu meinen, zu deren Edition die Société
Générale mit der Editionsverfügung des hiesigen
Gerichts aufgefordert wurde.)

Kann die Société Générale Dokumente einreichen, wie

dies vom hiesigen Gericht gemäss Editionsverfügung

[act. 35] inkl. alle darin enthaltenen Definitionen verlangt

wurde?

Sind damit Dokumente betreffend die dänischen Wertpapiere sowie Dividenden,
die aus diesen Wertpapieren herrühren, gemeint?

Sind Unterlagen verfügbar, welche unter die Editions-

pflicht gemäss Editionsverfügung des hiesigen Gerichts

[act. 35] fallen?

Es tut mir leid, ich bin nicht sicher, ob ich die Frage korrekt verstanden habe. Ich
habe das Dokument nicht im Kopf. Wir hatten keine dänischen Wertpapiere und

i.f.

somit hatten wir keine entsprechenden Dokumente. Wir haben auch keine Dividenden für dänische Wertpapiere ausbezahlt, weswegen wir auch über keine entsprechenden Dokumente verfügen.

(Die Vizepräsidentin hält fest, dass die Frage damit aus ihrer Sicht beantwortet sei, weswegen zu den Ergänzungsfragen übergegangen werde.)

> Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:
> Guten Tag Frau Salomone. Sie haben ausgesagt, dass Sie nur für einen Verwahrer auf der Liste Dienstleistungen erbracht hätten. Wer war dieser Verwahrer?

Das war Solo Capital Partners LLP.

> Auf Vorhalt von act. 43 [exhibit 5365] sowie auf Ergänzungsfrage von Rechtsanwalt N. Oxford:
> Kennen Sie dieses Dokument?

Ja.

> Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:
> Können Sie mir bitte mitteilen, was es ist?

Das ist ein Dokument von Walder Wyss Rechtsanwälte, welches im Rahmen von diesem Verfahren erstellt wurde. Dieses Dokument wurde auf der Basis von Informationen, die wir intern erhalten haben, erstellt.

> Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:
> Können Sie mir mit Bezug auf Ihre Arbeit bei der Société Générale sagen, ob der Inhalt des vorgehaltenen Schreibens stimmt?

Ja.

> Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:
> Können Sie mir erklären, welche Dienstleistungen, wenn

i.f. *ll*

es welche gab, die Société Générale für Solo Capital

Partners LLP erbracht hat?

(Mit Verweis auf das Rechtshilfeersuchen wendet
die Vizepräsidentin ein, dass die Frage sowie die
Antwort nur den massgeblichen Zeitraum vom
1. Januar 2014 bis 30. August 2015 betreffen
dürften.)

Wie ich bereits erklärt habe, erbrachten wir keine Dienstleistungen im Zusammen-

hang mit dänischen Wertpapieren. Wir hielten jedoch jene Titel, die in Randzif-

fer 8 des Schreibens von Walder Wyss Rechtsanwälte [act. 43] aufgelistet sind.

(Keine weiteren Ergänzungsfragen der Klägerin.)

(Rechtsanwalt N. Bahnsen, zugeschaltet per Vi-
deoübertragung, ergreift das Wort und erklärt, er
vertrete John Van Merkensteijn und weitere Be-
klagte.)

Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:

Hat die Société Générale in ihren heutigen Antworten be-

treffend dänische Wertpapiere auch Dividendenpapiere

berücksichtigt?

Recte [Einwand von RA D. Hofmann zur Übersetzung]:

Hat die Société Générale in ihren heutigen Antworten be-

treffend dänische Wertpapiere auch Aktien berücksich-

tigt?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(Rechtsanwalt N. Oxford erklärt auf Nachfrage,
dass der Einspruch nur der Form halber und zu-
handen des US-amerikanischen Hauptverfahrens
erfolgt sei.)

(Die Vizepräsidentin wendet ein, dass die Ergän-
zungsfragen und entsprechenden Antworten stets



die massgebende Zeitperiode [1. Januar 2014 bis
30. August 2015], die Verwahrer sowie die däni-
schen Wertpapiere gemäss den Definitionen der
Editionsverfügung [act. 35] betreffen müssten.)

Hat sich Herr Bahnsen in seiner Frage auf die 28 Aktien bezogen, deren Namen
wir erhalten haben?

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Geht die Société Générale mit Bezug auf diese 28 Unter-
> nehmen davon aus, dass auch Swaps zu den Wertpapie-
> ren gehörten, die man hätte untersuchen sollen?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Swap Produkte gehören nicht zu den Wertpapieren, welche die Société Générale
Security Services in Zürich erlaubt zu verwahren.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Haben Sie auch Optionen in Bezug auf die gelisteten Un-
> ternehmen berücksichtigt?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Optionen werden von der Société Générale Security Services in Zürich nicht zur
Verwahrung zugelassen.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Haben Sie Contracts for Difference (CfDs) berücksichtigt?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Nein. Contracts for Difference werden von der Société Générale Security Services
in Zürich nicht zur Verwahrung zugelassen.

i.f.

Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:

Haben Sie Informationen darüber, ob ein anderer Partner

der Société Générale diese Produkte akzeptiert?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(RA D. Hofmann wendet ein, dass diese Frage zu
weit gehe. Die Vizepräsidentin wendet ein, dass
diese Frage nicht zugelassen werden könne, da
vorliegend nur der Gegenstand des Rechtshilfeer-
suchens sowie dessen sachliche und zeitliche
Umschreibung Prozessthema sei.)

Auf Vorhalt von act. 43 [exhibit 5365], Randziffer 10 lit. c)

und auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:

Besteht bei der Société Générale irgendeine Verbindung

zwischen dem Kunden und den Beklagten gemäss den

massgeblichen Definitionen?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Im massgeblichen Zeitraum zwischen dem 1. Januar 2014 bis 30. August 2015
haben wir keine Verbindung festgestellt. Falls es hilfreich ist, kann ich weiter dazu
ausführen, dass wir Untersuchungen gemacht haben, um sicherzustellen, dass
keine Zahlungen für dänische Wertpapiere gemacht wurden.

Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:

Ja, aber Sie haben sich auf die Verwahrer beschränkt,

meine Frage betraf aber die Beklagten:

Recte [Protokollberichtigungsgesuch von RAin K. Arnes-

son]: Ja, aber in Ihrer Eingabe [act. 43] haben Sie sich auf

die Verwahrer beschränkt, meine Frage betraf aber die

Beklagten:



(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

(Die Vizepräsidentin wendet ein, dass der Konnex der Frage zu den Verwahrern nicht ersichtlich sei und die Frage daher nicht zugelassen werde.)

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Ihnen ist aber schon bekannt, dass eine Liste der Beklagten im Rechtshilfegesuch enthalten ist?

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

(Auf Nachfrage bestätigt Rechtsanwalt N. Bahnsen, dass die Ergänzungsfrage an die Zeugin gerichtet sei.)

> Auf Ergänzungsfrage der Vizepräsidentin:
>
> Kennen Sie den Anhang mit den Beklagten?

Ich habe die Liste nicht auswendig in meinem Kopf. Bei der Beantwortung der Fragen des Gerichts habe ich mich nur auf das bezogen, was ich weiss. Könnten Sie die Frage bitte konkreter formulieren?

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Wurde die Société Générale dazu aufgefordert, darüber zu recherchieren, ob "Pensions-Beklagte" [gemeint: beklagte Pensionskassen] Konten bei der Société Générale haben?

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

Die Société Générale Security Services in Zürich hatte in der massgeblichen Zeitperiode nur sehr wenige Kunden, die von den Wertschriftendienstleistungen profitiert haben. Es waren damals nur etwa 40 Kunden, wobei der grösste Teil zur

i.f.

Gruppe dazu gehörte. Andere, wenn es dann welche gegeben hätte, wären einfach zu finden gewesen. Wir haben keinen Kunden, der mit dieser Angelegenheit in Verbindung steht.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Nur zur Klarstellung meinerseits: Sie bezogen sich auf "diese Angelegenheit". Nehmen Sie damit Bezug auf das Rechtshilfeersuchen?

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

Ja, ich spreche mit Bezug auf die Angelegenheit, die uns heute zusammenbringt.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Sie haben ausgesagt, die Société Générale habe nur die Solo Capital Partners LLP identifizieren können. Andere Verwahrer habe die Société Générale nicht gehabt. Stimmt das?

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

(Die Vizepräsidentin führt aus, dass es nur um die vier Verwahrer gemäss Definition im Rechtshilfeersuchen gehe. Die Zeugin dürfe die Frage im Rahmen der erwähnten Definition beantworten.)

(Die Zeugin wünscht die Wiederholung der Frage durch Rechtsanwalt N. Bahnsen, worauf dieser angibt, die Frage leicht abzuändern.)

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Konnte die Société Générale in ihren Recherchen, abgesehen von den vier soeben genannten Verwahrern, weitere Einheiten als Verwahrer ausfindig machen?

i.f.

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

(Die Vizepräsidentin erklärt, dass es im Rechtshilfeverfahren nur um die vier Verwahrer gehe. Die Société Générale habe keine Pflicht, darüberhinausgehende Fragen zu beantworten. Die Frage werde demnach nicht zugelassen.)

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Was die Beziehung von Société Générale zu Solo Capital Partners LLP anbelangt: Gab es hier Einschränkungen mit Bezug auf die Möglichkeit für Solo Capital Partners LLP, Konten bei anderen Institutionen zu haben?

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

(Die Vizepräsidentin erklärt, dass diese Frage nicht zugelassen werde. Die Ergänzungsfragen müssten zwingend einen Bezug zu den dänischen Wertpapieren haben. Die Definitionen gemäss Rechtshilfeersuchen und der Editionsverfügung des Gerichts seien dabei zwingend zu berücksichtigen.)

(Die Vizepräsidentin macht Ausführungen zur geltenden Rechtslage in der Schweiz und dem Beweisausforschungsverbot.)

(Rechtsanwalt N. Bahnsen erklärt, keine weiteren Fragen zu haben.)

(Keine weiteren Ergänzungsfragen der Beklagten.)

(RAin K. Arnesson stellt ein Protokollberichtigungsgesuch. Sie erklärt, dass die nicht zugelassene Ergänzungsfrage betreffend die Randziffer 10 lit. c) [gestellt durch Rechtsanwalt N. Bahnsen] falsch übersetzt worden sei. Auf Deutsch sei übersetzt worden, dass sich die Zeugin in ihrer Aussage auf die Verwahrer beschränkt habe. Die Frage habe sich aber darauf bezogen, ob sich die

i.f.

Société Générale in ihrer Eingabe [act. 43] auf die Verwahrer beschränkt habe.)

(RA D. Hofmann fügt an, zuhanden des Protokolls festhalten zu wollen, dass es der Société Générale ein Anliegen gewesen sei, innerhalb der Vorgaben des Gerichts zu kooperieren und Transparenz zu schaffen. Dies in der Hoffnung, dass die Kooperation geschätzt werde.)

(Keine weiteren Anmerkungen.)

(Die Zeugin erklärt, auf eine Entschädigung [Art. 160 Abs. 3 ZPO] zu verzichten.)

(RA D. Elmiger erklärt, dass das englische Transkript zwischen den Parteien zirkuliert werde, damit diese Einsicht nehmen und allfällige Kommentare anbringen könnten. Hernach werde diese Möglichkeit auch der Zeugin gewährt.)

(Die Vizepräsidentin bittet um Zustellung der Endversion des englischen Transkripts.)

(Ende der Einvernahme: 16.10 Uhr.)

(Die Dolmetscherin wird für ihre Bemühungen mit Fr. 765.– vorab aus der Gerichtskasse entschädigt.)

i.f.

Die Vizepräsidentin:                    Die Gerichtsschreiberin:

# Bezirksgericht Zürich

Rechtshilfe



_____

Geschäfts-Nr.: FR211172-L / U

Mitwirkend:  Vizepräsidentin lic. iur. S. Büeler

Gerichtsschreiberin MLaw L. Stewart-Smith

## **Verfügung vom 12. April 2022**

in Sachen

**Skatteforvaltningen**, Zoll- und Steuerverwaltung des, Königreichs Dänemark,

Ostbanegade 123, 2200 Kopenhagen, Dänemark,

Klägerin

vertreten durch RAe Sandrine Giroud und/oder Dominik Elmiger,

35 Rue de la Mairie, Postfach 6569, 1211 Genève 1

vertreten durch RAe William R. Maguire, Marc A. Weinstein, Neil J. Oxford und/o-

der Dustin P. Schmid, Hughes Hubbard & Reed LLP, One Battery Park Plaza,

New York 10004-1482, Vereinigte Staaten

vertreten durch RAe Boris Frederiksen und Kirsten Marie Donato, Vester Fari-

magsgade 23, 1606 Kopenhagen, Dänemark

gegen

1.  **Ackview Solo 401K Plain**,

2.  **AGD Asset Management Pension Plan**,

3.  **Aerovane Logistics LLC Roth 401(K) Plan**,

4.  **Aventus Capital LLC Solo 401K Plan**,

5.  **und weitere Beklagte**,

Beklagte

betreffend **Edition bzw. Zeugeneinvernahme (Forderung)**

**Erwägungen:**

I.

1.     Mit Schreiben vom 30. Januar 2020, beim hiesigen Gericht eingegangen am 3. März 2021, stellte das US-Bezirksgericht für den südlichen Bezirk von New York, USA, ein Ersuchen um internationale Rechtshilfe, mit welchem um Durchführung eines Editionsverfahrens bzw. einer Zeugeneinvernahme betreffend die ausländische Zweigniederlassung der Société Générale SA in Zürich ersucht wird. Verlangt wird die Erteilung schriftlicher Bankauskünfte bzw. die Beantwortung mündlicher Fragen im Zusammenhang mit einer forderungsrechtlichen Streitigkeit der Klägerin als Zoll- und Steuerverwaltung des Königreichs Dänemark gegen ca. 300 Beklagte wegen Steuererstattungsbetrugs (act. 1/2). Mit Verfügung vom 29. März 2021 wies das hiesige Gericht das Rechtshilfeersuchen ab (Geschäfts-Nr. FR210286-L; act. 1/9). Gegen diesen Entscheid erhob die Klägerin am 16. April 2021 Beschwerde an das Obergericht des Kantons Zürich (act. 13/11). Das Obergericht des Kantons Zürich hiess die Beschwerde mit Beschluss vom 23. August 2021 gut, hob die Verfügung des hiesigen Gerichts vom 29. März 2021 auf und wies die Sache zur Ergänzung des Verfahrens und neuer Entscheidung im Sinne der Erwägungen des Obergerichts an das hiesige Gericht zurück (Geschäfts-Nr. RU210038-O; act. 30). Nach unbenütztem Ablauf der Rechtsmittelfrist gingen die Akten am 7. Dezember 2021 beim hiesigen Gericht unter der neuen Geschäfts-Nr. FR211172-L ein.

2.     Im Sinne der Erwägungen des Obergerichts des Kantons Zürich ist vorab festzuhalten, dass das dem Rechtshilfeersuchen zugrundeliegende Verfahren zivilrechtlichen Charakter besitzt und das Haager Übereinkommen über die Beweisaufnahme im Ausland in Zivil- oder Handelssachen vom 18. März 1970 (HBewUe70; SR 0.274.132), welches sowohl von den USA als auch der Schweiz ratifiziert wurde, vorliegend zur Anwendung gelangt (act. 30 S. 5 ff.). Nachfolgend ist folglich zu prüfen, ob das Rechtshilfeersuchen antragsgemäss durchgeführt werden kann.

## II.

1. Der amerikanische Zivilprozess kennt nach der Einleitung der Klage, aber noch vor der Hauptverhandlung ein Verfahrensstadium, das als "pre-trial-discovery" bezeichnet wird. In diesem Verfahrensstadium wird der Sachverhalt durch die Parteien selber ermittelt und zusammengetragen, indem sie die ihnen notwendig erscheinenden Beweismassnahmen eigens vornehmen (Bundesamt für Justiz, Die internationale Rechtshilfe in Zivilsachen, Wegleitung, 3. Auflage, Bern 2003, S. 30.; NOBEL, Die Rechtshilfe in Zivilsachen, in: SZW/RSDA 1995, S. 77).

1.1 Fällt ein Rechtshilfeersuchen – wie vorliegend – in den Anwendungsbereich des HBewUe70, so ist bei amerikanischen Ersuchen um eine "discovery" in der Schweiz zu prüfen, ob bei dessen Ausführung nicht gegen das Schweizerische Ausforschungsverbot verstossen wird (vgl. Art. 9 Abs. 2 HBewUe70). Ziel des amerikanischen "pre-trial-discovery-Verfahrens" ist es, durch möglichst wenig konkrete Aufforderungen möglichst viele Informationen von der Gegenpartei zu erhalten, um damit eine Klage begründen zu können. In diesem Zusammenhang wird von "fishing expedition" oder von Ausforschungsbeweis gesprochen. Dem Schweizerischen Zivilprozessrecht ist ein derartiges Institut gänzlich fremd.

1.2 Das HBewUe70 weist grundsätzlich zwei Schutzmechanismen auf: Neben den Inhaltserfordernissen an ein Rechtshilfeersuchen nach Art. 3 HBewUe70 haben die Vertragsstaaten die Möglichkeit, gemäss Art. 23 HBewUe70 die Erledigung von Verfahren, welche eine "pre-trial-discovery of documents" zum Gegenstand haben, generell zu untersagen (MEIER, Die Anwendung des Haager Beweisübereinkommens in der Schweiz, Unter besonderer Berücksichtigung der Beweisaufnahme für U.S.-amerikanische Zivilprozesse, in: Spiro/Stratenwerth/Ei-chenberger [Hrsg.], Schriftenreihe für internationales Recht, Band 86, Basel/Genf/ München 1999, S. 132 f.). Die Schweiz selbst hat zu Art. 23 HBewUe70 einen sog. "eingeschränkten Teilvorbehalt" erklärt (vgl. Ziff. 6 der Vorbehalte und Erklärungen der Schweiz). Danach werden Rechtshilfeersuchen, die ein "pre-trial-discovery-Verfahren" zum Gegenstand haben, abgelehnt, wenn:

a) das Ersuchen keine direkte oder notwendige Beziehung mit dem zugrundeliegenden Verfahren aufweist; oder

b) von einer Person verlangt wird, sie solle angeben, welche den Rechtsstreit betreffenden Urkunden sich in ihrem Besitz, ihrem Gewahrsam oder ihrer Verfügungsgewalt befinden oder befunden haben; oder

c) von einer Person verlangt wird, sie solle auch andere als die im Rechtshilfebegehren spezifizierten Urkunden vorlegen, die sich vermutlich in ihrem Besitz, ihrem Gewahrsam oder ihrer Verfügungsgewalt befinden; oder

d) schutzwürdige Interessen der Betroffenen gefährdet sind.

1.3   Während lit. a garantieren möchte, dass die Beweismassnahmen in einem hinreichend relevanten sachlichen Zusammenhang zum Prozessthema stehen, wollen lit. b und lit. c den klassischen Ausforschungsbeweis durch das Verlangen unbestimmter Urkunden verhindern (MEIER, a.a.O., S. 142 f.; SCHWANDER, a.a.O., Rz. 87). Die vorzunehmenden Beweisaufnahmen sind demnach im Sinne von Art. 3 Abs. 1 lit. c – g HBewUe70 sowie im Lichte von Art. 23 HBewUe70 und von Ziffer 6 des Vorbehalts zu Art. 23 HBewUe70 möglichst genau zu bezeichnen. Damit soll primär sichergestellt werden, dass das Rechtshilfeersuchen genügend spezifiziert ist und nicht zur rechtsmissbräuchlichen Ausforschung eingesetzt wird (vgl. ZÜRCHER zum HBewUe70, in: Blätter für Zürcherische Rechtsprechung, Bd. 101, Zürich 2002, S. 257 ff. Ziff. 84, S. 261 Ziff. 3; SCHWANDER, Erläuterungen zum HBewUe70, in: Walter/Jametti Greiner/Schwander [Hrsg.], Internationales Privat- und Verfahrensrecht, Texte und Erläuterungen, Band 2, Nr. 61b, Bern 1993, N 36; INGLESE, Das Beweisausforschungsverbot, Diss. Basel 2017, S. 19 ff.). Dabei gilt es offene bzw. weitgefasste und unbestimmte Formulierungen zu vermeiden, zumal diese den Anschein einer unzulässigen Beweisausforschung erwecken.

1.4   Sodann möchte lit. d sicherstellen, dass schutzwürdige Interessen einer Partei oder von Dritten gewahrt werden. Während Parteiinteressen in der Schweiz auf Antrag geschützt werden, hat das Gericht Drittinteressen grundsätzlich von Amtes wegen den notwendigen Schutz zu gewähren (vgl. Art. 156 ZPO). Bei der Beurteilung eines Rechtshilfeersuchens ist somit besondere Zurückhaltung geboten, wenn Geheimhaltungsinteressen von Dritten berührt sein könnten.

2.      Dem Rechtshilfeersuchen ist zu entnehmen, dass es sich beim zugrun-
deliegenden Verfahren um ein "pre-trial-discovery" Verfahren handelt, welches
durch die US-amerikanischen Parteivertreter der Klägerin (Neil J. Oxford, Hughes
Hubbard & Reed LLP) geführt wird. Das ersuchende Gericht beantragt vorliegend,
dass die "Société Générale SA, Zürich" (gemeint: Société Générale, Paris, Zweig-
niederlassung Zürich, Talacker 50, 8001 Zürich; nachfolgend: Société Générale)
einerseits Unterlagen ediert und das hiesige Gericht andererseits eine Zeugenein-
vernahme mit einem "rechtlichen Vertreter" der Société Générale durchführt
(act. 1/2 S. 7 ff.).

2.1    Erneut ist festzuhalten, dass die Klägerin in der Sache geltend macht,
dass sie als Zoll- und Steuerverwaltung des Königreichs Dänemark infolge eines
Betrugssystems mehr als 12.7 Milliarden dänische Kronen bzw. 2.1 Milliarden US-
Dollar einbehaltender Dividendensteuern den über 300 "Anspruchstellern" ausbe-
zahlt habe. Die "Anspruchsteller" hätten die Rückzahlung von Steuerbeträgen ge-
fordert, indem sie der Klägerin zwischen den Jahren 2012 und 2015 jeweils falsche
"Gutschriftenanzeigen" vorlegt hätten, welche jeweils von einem "Verwahrer" er-
stellt worden seien. Dadurch hätten die Beklagten die tatsächlichen Eigentumsver-
hältnisse an Aktien dänischer Unternehmen verschleiert. Zusammengefasst stellt
sich die Klägerin auf den Standpunkt, dass die Beklagten des US-Verfahrens kei-
nen Anspruch auf die geforderten Erstattungsbeiträge gehabt hätten und dass die
Rückerstattung dieser einbehaltenen Steuern seitens der Klägerin aufgrund fal-
scher Angaben der Beklagten erfolgt sei. Vorliegend fordert die Klägerin somit die
Rückzahlung von grundlosen "Erstattungsforderungen für Quellensteuer in Höhe
von ungefähr USD 1.234.288.400" aus ungerechtfertigter Bereicherung (act. 1/2
S. 4 f.). Einige "Verwahrer" hätten sodann geltend gemacht, dass sie die in ihren
"Gutschriftenanzeigen" angegebenen Wertpapiere nicht selbst verwahrt, sondern
stattdessen Depotkonten bei anderen Kreditinstituten gehabt hätten. Zu diesen so-
genannten "Unter-Verwahrern" würde auch die Société Générale gehören (act. 1/2
S. 5 f.).

2.2    Die vorstehenden Ausführungen sind sehr detailliert. Offenbar geht das
ersuchende Gericht davon aus, dass die Beklagten ihre Eigentumsverhältnisse an

dänischen Wertpapieren verschleiert hätten, um unrechtmässige Erstattungsansprüche zu erheben, weshalb die tatsächlichen Eigentumsverhältnisse an den dänischen Wertpapiere sowie die erfolgten Transaktionen rechtshilfeweise zu ermitteln sind. Der erforderliche Zusammenhang des zugrundeliegenden Verfahrens zur beantragten Edition von Bankunterlagen wie auch zur beantragten Zeugeneinvernahme mit einem Organ der Société Générale erschliesst sich dem ersuchten Gericht (vgl. auch act. 13/9 S. 10 f.). Demnach verstösst das Rechtshilfeersuchen nicht gegen Ziff. 6 lit. a des Vorbehalts zu Art. 23 HBewÜe70.

2.3  In Bezug auf die nachfolgend zu beurteilende Bestimmtheit des Rechtshilfeersuchens sei zunächst auf die vom ersuchenden Gericht spezifizierten Definitionen verwiesen, welche vorliegend zu berücksichtigen sind (act. 1/2 S. 8 ff.):

- "Massgeblicher Zeitraum" bezeichnet den Zeitraum vom 1. Januar 2014 bis zum 30. August 2015.

- "Geldkonten" bezeichnet die Konten Nr. 0312089EUR2600 und 0312089GBP2600 der Société Générale Securities Services und jedes andere Geldkonto, das bei der Société Générale für die Verwahrer geführt wird und im massgeblichen Zeitraum in Verbindung mit einer Transaktion von dänischen Wertpapieren verwendet wurde.

- "Anspruchsteller" bezeichnet einen Antragsteller, der sich durch seine Vertreter oder Bevollmächtigten an SKAT [die Klägerin] gewandt und die Rückzahlung von Steuern gefordert hat, die von Dividenden einbehalten worden seien, von denen er behauptet, er habe sie für Aktien dänischer Unternehmen erhalten, die er besessen habe.

- "Verwahrer" bezeichnet die Old Park Lane Capital PLC, die Solo Capital Partners LLP, die Telesto Markets LLP und die West Point Derivatives Ltd. und ihre gesamten verbundenen Unternehmen,

Tochtergesellschaften, Rechtsvorgänger, Rechtsnachfolger, Abtretungsempfänger, Inhaber, Führungskräfte, Direktoren, Mitarbeiter, Bevollmächtigten, Vertreter, Treuhänder und Anwälte.

- "Dänische Wertpapiere" bezeichnet Anteile an irgendeinem der folgenden dänischen Wertpapiere:

    1. A.P. Møller Mærsk A/S
    2. A.P. Møller Mærsk A/S A
    3. A.P. Møller Mærsk A/S B
    4. Auriga Industries A/S
    5. Carlsberg A/SI
    6. Carlsberg A/S - B
    7. CHR. Hansen Holding A/S
    8. Coloplast A/S
    9. Coloplast A/S - B
    10. Dampskibsselskabet Norden A/S
    11. Danske Bank A/S
    12. DSV A/S
    13. FLSmidth & CO A/S
    14. Gn Store Nord A/S
    15. H Lundbeck A/S
    16. IC Company A/S
    17. ISS World Services A/S
    18. NKT Holding A/S
    19. Novo Nordisk A/S
    20. Novo Nordisk A/S B
    21. Novozymes A/S
    22. Novozymes A/S B
    23. Pandora A/S
    24. Simcorp A/S
    25. Sydbank A/S
    26. TDC A/S
    27. Tryg A/S
    28. Vestas Wind Systems A/S

- "Beklagte" bezeichnet jeden der US-Beklagten, die im beigefügten Anhang A [act. 1/2 S. 15 ff.] benannt werden.

    –    "Dividende(n)" bezeichnet jede Dividende, die aufgrund einer Be-
teiligung an einem dänischen Wertpapier erhalten wurde, insbe-
sondere Dividendenausgleichszahlungen ("manufactured divi-
dends") und andere Dividenden, die nicht direkt von der Gesell-
schaft bezogen wurden, die die Dividende ausgegeben hat.

    –    "Wertpapierkonten" bezeichnet die Konten Nr. 3120890000 (Solo
Capital Partners Prop), 3120890100 (Solo Capital Partners CLI1)
und 3120890200 (Solo Capital Partners CLI2) der Société
Générale Securities Services und jedes andere Wertpapierkonto,
das bei der Société Générale für die Verwahrer und/oder verbun-
dene Unternehmen der Verwahrer geführt wird und im massgebli-
chen Zeitraum in Verbindung mit einer Transaktion der dänischen
Wertpapiere verwendet wurde.

2.4   Das ersuchende Gericht begehrt die Edition von folgenden Unterlagen
durch die Société Générale (act. 1/2 S. 11 f.):

    i.    Auszüge der Geldkonten und Wertpapierkonten für den massge-
blichen Zeitraum;

    ii.    Dokumente einschliesslich SWIFT-Nachrichten, die bezüglich ei-
nes dänischen Wertpapiers das Eigentum, den Erwerb, den Ver-
kauf, das Leihen, Verleihen, Finanzieren oder einen sonstigen
Handel oder Transfer oder die Aufhebung eines Handels oder
Transfers durch einen Verwahrer oder im Namen eines Verwah-
rers im massgeblichen Zeitraum belegen;

    iii.    Dokumente einschliesslich SWIFT-Nachrichten, die den Erhalt
einer Dividende durch die Société Générale für einen Verwahrer
oder im Namen eines Verwahrers im massgeblichen Zeitraum
belegen oder widerspiegeln;

iv.     die Dokumente, die der Société Générale bei der Eröffnung eines
        Kontos vorgelegt wurden, das in Verbindung mit einer Transak-
        tion von dänischen Wertpapieren im massgeblichen Zeitraum
        durch einen Verwahrer verwendet wurde, unter anderem Compli-
        ance-Dateien bezüglich eines jeden Verwahrers;

v.      die Verträge oder Vereinbarungen bezüglich einer Transaktion
        oder Verwahrung von dänischen Wertpapieren zwischen der
        Société Générale und einem Verwahrer, die auf einen Tag
        innerhalb des massgeblichen Zeitraums datiert sind oder die
        innerhalb des massgeblichen Zeitraums wirksam waren, und die
        Dokumente, mittels derer die Verträge oder Vereinbarungen
        beendet wurden.

2.4.1 Bei diesem Ersuchen handelt es sich in *sachlicher* Hinsicht um eine um-
fassende Edition von Bankunterlagen betreffend Geldkonten und Wertpapierkon-
ten sowie weitere Dokumente im Zusammenhang mit Transaktionen oder Verwah-
rungen der eingangs definierten dänischen Wertpapiere. Der Umfang der angefor-
derten Unterlagen wird in sachlicher Hinsicht namentlich durch die in E. II.2.3 wie-
dergegebenen Definitionen massgeblich eingeschränkt. Insbesondere ist hinsicht-
lich aller in E. II.2.4 aufgelisteten Editionsanträge sowohl ein Konnex zu den "Ver-
wahrern" als auch zu den eingangs definierten dänischen Wertpapieren vorhanden.
In *zeitlicher* Hinsicht wird der für die beantragte Edition massgebliche Zeitraum auf
Bankunterlagen bzw. Transaktionen zwischen dem 1. Januar 2014 und dem
30. August 2015 beschränkt. Zusätzlich wird um Edition von Kontoeröffnungsunter-
lagen sowie Verträgen oder Vereinbarungen ersucht, die einen Zusammenhang
zum massgeblichen Zeitraum aufweisen.

Obschon zu erwarten ist, dass die beantragte Edition die Offenlegung
einer Vielzahl von Bankunterlagen bewirken wird und folglich den Anschein einer
unzulässigen fishing expedition erwecken könnte, ist festzuhalten, dass das Editi-
onsbegehren sowohl in sachlicher Hinsicht – jeweils auf spezifische Konten und
Dokumente, welche einen konkreten Zusammenhang zu den fraglichen dänischen
Wertpapieren und den "Verwahrern" aufweisen – als auch in zeitlicher Hinsicht eng

beschränkt wird. Vor diesem Hintergrund sowie der äusserst detaillierten Sachver-
haltsdarstellung erschliesst sich dem hiesigen Gericht die Relevanz sämtlicher zu
edierenden Unterlagen für das Hauptverfahren in den USA.

2.4.2 Das Ersuchen erweist sich als genügend substantiiert, weshalb vorlie-
gend nicht von einem Ersuchen um unbegrenzte Auskunft und damit von einer un-
zulässigen fishing expedition auszugehen ist. Nach dem Gesagten ist das Ersu-
chen um Edition von Unterlagen vollumfänglich gutzuheissen.

2.5. Weiter wird im Rechtshilfebegehren verlangt, es sei ein "rechtlicher
Vertreter" der Société Générale SA, Zürich, einzuvernehmen (act. 1/2 S. 8 ff.).

2.5.1 Gemäss Art. 3 lit. e HBewUe70 hat das ersuchende Gericht den Namen
und die Adresse der einzuvernehmenden Person anzugeben. Indessen rechtfertigt
es sich vorliegend, die Société Générale aufzufordern, dem hiesigen Gericht eine
interne, entsprechend bevollmächtigte Person, welche Informationen zum vorlie-
gend relevanten Sachverhalt geben kann, zwecks Vorladung zur Einvernahme in
obgenannter Angelegenheit zu nennen.

2.5.2 Diese Person habe anlässlich der Einvernahme durch das hiesige Ge-
richt die folgenden Fragen zu beantworten (act. 1/2 S. 10 f.):

a) Welcher Art ist ggf. die Beziehung zwischen der Société Générale und
den Verwahrern?

b) Welche Dienstleistungen hat die Société Générale ggf. gegenüber den
Verwahrern in Verbindung mit der Verwahrung der dänischen Wertpa-
piere für die Verwahrer erbracht?

   i.   Welche Dienstleistungen wurden bei der Eröffnung von Konten
        für die Verwahrer erbracht?

   ii.  Welche Dienstleistungen wurden bei der Führung der Konten für
        die Verwahrer erbracht?

    iii.    Welche Dienstleistungen wurden bei der Schliessung der Konten für die Verwahrer erbracht?

    iv.    Wurden gegenüber den Verwahrern besondere Dienstleistungen in Verbindung mit der Verwahrung der dänischen Wertpapiere für die Verwahrer erbracht?

c)    Was weiss die Société Générale darüber, ob die Verwahrer dänische Wertpapiere hielten?

    i.    Was weiss die Société Générale über die Art und Weise, in der die Verwahrer dänische Wertpapiere kauften?

    ii.    Was weiss die Société Générale über die Art und Weise, in der die Verwahrer ansonsten dänische Wertpapiere erhalten haben?

d)    Was weiss die Société Générale darüber, ob die Verwahrer Dividenden für das Eigentum an dänischen Wertpapieren erhielten?

    i.    Welche Einzelheiten kennt die Société Générale bezüglich des Erhalts dieser Dividenden?

    ii.    Was weiss die Société Générale darüber, wer die Letztbegünstigten dieser Dividenden waren?

e)    Kann die Société Générale Dokumente, die gemäss Ziffer 11 [vgl. E. II.2.4; act. 1/2 S. 11 f.] vorgelegt wurden, beglaubigen, wenn erforderlich?

f)    Kann die Société Générale eine Erklärung ausfüllen, die bestätigt, dass alle gemäss Ziffer 11 [vgl. E. II.2.4; act. 1/2 S. 11 f.] vorgelegten Dokumente Aufzeichnungen über regelmässig ausgeübte Geschäftsaktivitäten sind?

2.5.3 Die vom ersuchenden Gericht vorgelegten Fragen für eine Zeugeneinvernahme mit einem Organ der Société Générale beschränken sich in *sachlicher*

Hinsicht auf das Verhältnis der Zweigniederlassung zu den "Verwahrern". In diesem Zusammenhang soll der Zeuge erläutern, welche Dienstleistungen die Zweignie-derlassung gegenüber den Verwahrern in Verbindung mit der Verwahrung der dä-nischen Wertpapiere erbrachte und welches Wissen sie über den Erwerb der däni-schen Wertpapiere sowie allfällige Dividenden hatte. Demgegenüber enthalten die Fragen keine Beschränkung in *zeitlicher* Hinsicht. Im Einklang mit dem definierten massgeblichen Zeitraum vom 1. Januar 2014 bis zum 30. August 2015 sind die Auskünfte zum Verhältnis der Zweigniederlassung zu den Verwahrern sowie zu er-brachten Dienstleistungen und ggf. erlangtem Wissen auf diesen Zeitraum zu be-schränken.

2.5.4 Nach dem Gesagten kann dem Rechtshilfeersuchen um Zeugeneinver-nahme nicht vollumfänglich stattgegeben werden. Eine Teilrechtshilfe bzw. ein sog. "blue pencilling" ist vorliegend jedoch möglich (vgl. Urteil des Obergerichts des Kan-tons Zürich RU170073-O vom 15. Februar 2018 S. 13; KLAUS, Verfahren nach dem Haager Beweisaufnahmeübereinkommen, in: ZZZ 2016 [Nr. 40] S. 305 mit weite-ren Hinweisen). Im Sinne der vorstehenden Erwägungen ist festzuhalten, dass die Fragen in *zeitlicher* Hinsicht auf den massgeblichen Zeitraum vom 1. Januar 2014 bis zum 30. August 2015 zu beschränken sind.

2.5.5 In diesem Umfang ist das Ersuchen um Zeugeneinvernahme gutzuheis-sen (vgl. aber nachstehend E. V.3.3 ff.). Darüber hinaus genügt es den Anforde-rungen von Art. 3 HBewUe70 und Art. 23 HBewUe70 sowie von Ziffer 6 des Vor-behalts zu Art. 23 HBewUe70 nicht und verstösst gegen das hiesige Ausfor-schungsverbot.

III.

1.    Art. 9 HBewUe70 bestimmt, dass beim Vollzug des Rechtshilfeersu-chens das Recht des ersuchten Staates anzuwenden ist, mithin gelangt im vorlie-genden Fall schweizerisches Recht zur Anwendung. Massgebend sind dabei im Sinne von Art. 122 der Bundesverfassung der Schweizerischen Eidgenossenschaft

(BV; SR 101) die eidgenössische Zivilprozessordnung (ZPO; SR 272) und das zürcherische Gerichts- und Behördenorganisationsgesetz im Zivil- und Strafprozess (GOG; LS 211.1).

2.     Das um Rechtshilfe ersuchte Gericht wendet die geeigneten Zwangsmassnahmen in den Fällen und in dem Umfang an, wie es das nationale Recht für die Erledigung eines Ersuchens inländischer Behörden oder eines zum gleichen Zweck gestellten Antrags einer Partei vorsieht (Art. 10 HBewUe70).

3.     Die eidgenössische Zivilprozessordnung sieht in Art. 160 ZPO eine Mitwirkungspflicht für Parteien und Drittpersonen bei der Beweiserhebung vor. Danach sind Urkunden grundsätzlich herauszugeben, sofern es sich nicht um anwaltliche Korrespondenz, welche die berufsmässige Vertretung einer Partei oder einer Drittperson betrifft, handelt (Art. 160 Abs. 1 lit. b ZPO). Eine Drittperson kann die Mitwirkung bei Vorliegen einer der in Art. 165 f. ZPO aufgezählten Gründe verweigern. Verweigert eine Drittperson die Mitwirkung unberechtigterweise, so kann das Gericht Sanktionen im Sinne von Art. 167 Abs. 1 ZPO anordnen. Säumnis zieht die gleichen Folgen wie die unberechtigte Verweigerung der Mitwirkung nach sich. Demzufolge ist eine Drittperson grundsätzlich verpflichtet, die in ihrem Gewahrsam befindlichen Urkunden dem Gericht einzureichen, sofern sie sich nicht sinngemäss auf die erwähnten Verweigerungsgründe gemäss Art. 165 f. ZPO berufen kann.

4.     In Art. 47 des Bundesgesetzes über die Banken und Sparkassen (BankG; SR 952.0) wird das Bankgeheimnis geregelt. Nach Art. 47 Abs. 5 BankG bleiben die eidgenössischen und kantonalen Bestimmungen über die Zeugnispflicht vorbehalten. Die unter das Bankgeheimnis fallenden Personen werden vom umfassenden Verweigerungsrecht gemäss Art. 165 ZPO indessen gerade nicht erfasst; ihnen räumt die ZPO kein Editionsverweigerungsrecht in dem Sinne ein, als dieses sich generell aus dem Bankgeheimnis ableiten würde. Vielmehr können sie gemäss Art. 166 Abs. 2 ZPO die Mitwirkung verweigern, wenn sie glaubhaft machen, dass das Geheimhaltungsinteresse das Interesse an der Wahrheitsfindung überwiegt.

5.     Betroffen von der im Rechtshilfeersuchen anbegehrten Beweiserhebung ist die Société Générale, Paris, Zweigniederlassung Zürich, Talacker 50, 8001 Zürich. Die Société Générale, Paris, Zweigniederlassung Zürich ist als ausländische Zweigniederlassung im Zürcher Handelsregister unter der von der ersuchenden Behörde angegebenen Adresse eingetragen. Als Geschäftszweck sind "alle Bankgeschäfte, alle mit Bankgeschäften zusammenhängenden Geschäfte sowie alle Beteiligungen" eingetragen. Folglich handelt es sich bei der Zweigniederlassung um eine dem Bankengesetz unterstellte Bank (Art. 1 Abs. 1 und 4 i.V.m. Art. 2 Abs. 1 lit. a BankG), welche das Bankkundengeheimnis zu wahren hat. Das Bankkundengeheimnis ist grundsätzlich auch im Verhältnis zwischen einer Schweizer Zweigniederlassung einer Bank und dem Hauptsitz im Ausland zu wahren (OGer ZH RU160030, E. 4.4). Daraus folgt, dass eine ausländische Zweigniederlassung einer Bank unabhängig vom Willen ihres ausländischen Hauptsitzes als Trägerin eines gesetzlich geschützten Geheimnisses im Sinne von Art. 166 Abs. 2 ZPO zu behandeln ist. Deshalb steht ihr das bei der Erledigung des Rechtshilfeersuchens zu beachtende Verweigerungsrecht von Art. 9 Abs. 1 und Art. 11 lit. a HBewÜ70 i.V.m. Art. 166 Abs. 2 ZPO und Art. 47 BankG zu (OGer ZH RU160030-O, E. 4.4).

6.     Beim Zivilverfahren in New York, USA handelt es sich um eine zivilrechtliche Angelegenheit (act. 1/2 S. 4 ff.; act. 30 S. 5 ff.). Die Klägerin fordert vorliegend die Rückzahlung von "Erstattungsforderungen für Quellensteuer in Höhe von ungefähr USD 1.234.288.400" aus ungerechtfertigter Bereicherung (act. 1/2 S. 5). Die Klägerin hat daher ein gewichtiges Interesse zu erfahren, ob die Beklagten falsche Angaben zu ihrem Eigentum an dänischen Aktien gemacht bzw. ob sie unrechtmässige Anträge um Erstattung der einbehaltenen Steuern gestellt haben. Ohne besondere Umstände, die ausdrücklich dargelegt, ausgeführt und belegt werden müssten, ist dieses Offenbarungsinteresse höher als das Bankgeheimnis einzustufen, zumal das Bankkundengeheimnis die Ermittlung der Forderungsklage nicht verhindern darf. Insofern stehen dem Rechtshilfeersuchen – auch unter Hinweis auf die sachlich und zeitlich hinreichend bestimmten Ersuchen des ersuchenden Gerichts – keine schutzwürdigen Interessen der Betroffenen, welche gefährdet sein können, entgegen (Ziffer 6 lit. d des Vorbehalts zu Art. 23 HBewUe70).

7. Zusammenfassend ist die Société Générale, Paris, Zweigniederlassung Zürich im Sinne der obigen Erwägungen zu verpflichten, die rechtshilfeweise zur Edition begehrten Unterlagen einzureichen sowie – im Hinblick auf die anschliessend an das Editionsverfahren durchzuführende Zeugeneinvernahme – dem hiesigen Gericht eine interne, entsprechend bevollmächtigte Person zwecks Vorladung zur Einvernahme in obgenannter Angelegenheit zu nennen.

## IV.

1. Ferner ersucht das Gericht um Beigabe einer Erklärung betreffend "Bestätigung zu Aufzeichnungen über regelmässig ausgeübte Geschäftstätigkeiten gemäss der Federal Rule of Evidence [Beweisregel des US-Bundesrechts] 902(12)" [Declaration certifying records of regularly conducted business activity pursuant to Federal Rule of Evidence 902(12)] in der als Anhang beigefügten Form (act. 1/2 S. 12 f., 26 f.).

2. Das Formular ist eine "eidesstattliche Erklärung" bzw. ein "Affidavit", welche das Schweizerische Zivilprozessrecht nicht vorsieht. Indessen sind solche spezielle – in casu vom US-amerikanischen Prozessrecht vorgesehenen – Formen der Bestätigung von der Schweizer Richterin bzw. vom Schweizer Richter entgegenzunehmen, wenn sie freiwillig geleistet werden, in jedem Falle aber soweit als die geforderte Form nicht über die Beweisabnahmeformen des schweizerischen Rechts hinausgeht (KREN KOSTKIEWICZ/RODRIGUEZ, Internationale Rechtshilfe in Zivilsachen, Bern 2013, Rz. 377).

3. Nach Art. 190 Abs. 2 der eidgenössischen Zivilprozessordnung besteht die Möglichkeit, dass das Gericht ausnahmsweise von (natürlichen oder juristischen) Privatpersonen schriftliche Auskünfte einholen kann, sofern eine Zeugenbefragung nicht erforderlich erscheint. In Frage kommen dabei etwa die Bestätigung von Banken über Guthaben und Schulden. Die Aufforderung zur schriftlichen Auskunft erfolgt indes ohne Ermahnung zur Wahrheit unter Strafandrohung. Allerdings ist darauf hinzuweisen, dass die schriftliche Auskunft allenfalls durch eine nachträgliche Zeugeneinvernahme unter Strafandrohung von Art. 307 StGB zu bestätigen ist (BSK ZPO-HAFNER, Art. 190 N 5 ff.).

4.     Da das ersuchende Gericht vorliegend ohnehin um Durchführung einer Zeugeneinvernahme unter Strafandrohung ersucht, ist die Notwendigkeit einer zusätzlichen eidesstattlichen Erklärung nicht direkt ersichtlich. Um – zwecks Verhinderung allfälliger Beweisverwertungshindernisse – dem Ersuchen dennoch gerecht zu werden, ist die Société Générale, Paris, Zweigniederlassung Zürich zur Nennung einer Person zwecks Abgabe der schriftlichen Erklärung zu verpflichten, wobei diese Person im Sinne des schweizerischen Rechts darauf hinzuweisen ist, dass diese Auskunft – auf entsprechenden Antrag des ersuchenden Gerichts hin (vgl. etwa Fragen e und f der beantragten Zeugeneinvernahme) – durch Zeugenaussage unter Strafandrohung (Art. 307 StGB) zu bestätigen wäre.

5.     Die Société Générale, Paris, Zweigniederlassung Zürich ist somit aufzufordern, durch eine interne, entsprechend bevollmächtigte Person mit Kenntnis der regelmässig geführten geschäftlichen Aufzeichnungen der Société Générale, Paris, Zweigniederlassung Zürich zusammen mit den zu edierenden Unterlagen gemäss E. II.2.4 eine schriftliche Erklärung im Sinne des Begehrens des ersuchenden Gerichts abzugeben. Verlangt wird dabei vom US-amerikanischen Gericht konkret, dass diese Person in der Erklärung bestätigt:

> −     gegenwärtig, unter Angabe der Stellenbezeichnung, bei der Société Générale, Paris, Zweigniederlassung Zürich beschäftigt zu sein, unter Angabe der Stellenbezeichnung,
>
> −     zur Abgabe der vorliegenden schriftlichen Erklärung von der Société Générale, Paris, Zweigniederlassung Zürich, bevollmächtigt und befugt zu sein,
>
> −     dass die Société Générale, Paris, Zweigniederlassung Zürich, aufgrund eines Rechtshilfeersuchens des US-Bezirksgerichts für den südlichen Bezirk von New York, USA, und aufgrund des vorliegenden Entscheids die [zu edierenden] Unterlagen ediert hat,

-   dass es sich bei den [zu edierenden] Unterlagen um Originale oder wahre Abschriften der Originale handelt, die aus den im normalen Geschäftsverkehr geführten geschäftlichen Aufzeichnungen der Société Générale, Paris, Zweigniederlassung Zürich stammen,

-   dass die [zu edierenden] Unterlagen von Mitarbeitenden der Société Générale, Paris, Zweigniederlassung Zürich, ungefähr zur Zeit des Eintritts der darin genannten Angelegenheiten durch Personen, welche Kenntnis von diesen Angelegenheiten hatten, oder anhand von Informationen, die von solchen Personen übermittelt wurden, erstellt wurden,

-   dass die [zu edierenden] Unterlagen von Mitarbeitenden im Rahmen der von der Société Générale, Paris, Zweigniederlassung Zürich, regelmässig ausgeübten geschäftlichen Tätigkeiten geführt wurden,

-   dass die [zu edierenden] Unterlagen durch die regelmässig ausgeübten Tätigkeiten als regelmässige Praxis erstellt wurden.

## V.

1.    Schliesslich verlangt das ersuchende Gericht die Einhaltung von bestimmten Formen i.S.v. Art. 3 lit. h und i HBewUe70 sowie Art. 9 Abs. 2 HBewUe70.

2.    Zunächst soll die Zeugeneinvernahme mit einer "Bestätigung ihrer Richtigkeit" i.S.v. Art. 3 lit. h HBewUe70 abgegeben werden. Indessen sieht die Schweizerische Zivilprozessordnung nicht vor, dass Zeugen vereidigt werden können. Das Verlangen eines Eides ist verfassungswidrig (BSK ZPO-GUYAN, Art. 171 N 2). Daher ist der Zeuge in der Form, wie sie das Schweizer Recht vorsieht, zur Wahrheit zu ermahnen und auf die strafrechtlichen Folgen des falschen Zeugnisses (Art. 307 StGB) hinzuweisen.

3.  Weiter beantragt das ersuchende Gericht Folgendes:

a)  Erlaubnis, dass die schweizerischen, US-amerikanischen und däni-
    schen Anwälte der Parteien bei der mündlichen Aussage anwesend sein
    und dem Zeugen zusätzliche Fragen stellen dürfen;

b)  Erlaubnis, dass die schweizerischen, US-amerikanischen und däni-
    schen Anwälte der Parteien eigene und gegnerische Zeugen direkt be-
    fragen dürfen;

c)  Erlaubnis, dass die US-amerikanischen und dänischen Anwälte der Par-
    teien soweit praktikabel in Absprache mit dem Obergericht des Kantons
    Zürich bezüglich der technischen Logistik an der mündlichen Aussage
    der erbetenen Zeugen per Videokonferenz gemäss dem beigefügten
    "Optionalen Formular für Video-Link-Beweise" teilnehmen dürfen; aus-
    serdem Aufzeichnung der Videokonferenz und Bereitstellung einer Ko-
    pie für die Parteien;

d)  Videoaufnahme und Wortprotokoll der mündlichen Aussage der Zeugen
    und Zulassung eines professionellen Videofilmers und eines professio-
    nellen Stenografen zur Teilnahme an der mündlichen Aussage zum
    Zwecke der Aufzeichnung der Aussage, wobei SKAT [die Klägerin] die
    Kosten für den Gerichtsschreiber oder den Videofilmer trägt;

e)  Vorlage der erbetenen Dokumente durch die Société Générale mindes-
    tens 20 Tage vor dem Datum der Aussage durch den Vertreter der
    Société Générale und Bereitstellung von Kopien an die schweizerische
    Anwältin der Klägerin [Rechtsanwältin S. Giroud];

3.1  In Bezug auf die in Fragen a, b und c beantragten Teilnahmerechte der
Parteivertreter an der Zeugeneinvernahme sehen Art. 7 und Art. 8 HBewUe70 die
Möglichkeit vor, dass die Parteivertreter des Hauptverfahrens an Einvernahmen
teilnehmen können, die von einem schweizerischen Gericht rechtshilfeweise durch-
geführt werden. Insofern ist diesem Ersuchen stattzugeben. Demnach ist der Zeit-

punkt und Ort der Zeugeneinvernahme zu gegebenem Zeitpunkt den Parteivertretern sowie Neil J. Oxford, Hughes Hubbard & Reed LLP, und dem ersuchenden Gericht – mithin nicht nur der Klägerin, wie im Rechtshilfeersuchen unter Ziff. 14 beantragt (act. 1/2 S. 13) – mitzuteilen.

Das ersuchende Gericht ist indessen darauf hinzuweisen, dass die Kosten, welche allenfalls im Zusammenhang mit der Bestellung eines Dolmetschers anfallen, gemäss Art. 14 Abs. 2 HBewUe70 dem ersuchenden Gericht auferlegt werden können.

3.2 Hinsichtlich Fragen c und d betreffend die technische Logistik sei festzuhalten, dass die in Art. 7 und Art. 8 HBewUe70 vorgesehenen Teilnahmerechte der Parteivertreter grundsätzlich auch per Videokonferenz wahrgenommen werden können (Bundesamt für Justiz, Die internationale Rechtshilfe in Zivilsachen, Wegleitung, 3. Auflage 2003, Stand Januar 2013, S. 35). Auch einer Aufzeichnung einer allfälligen Videokonferenz wie auch der Übermittlung an die Parteien steht nach dem Gesagten grundsätzlich nichts im Wege (vgl. auch Art. 176 Abs. 2 ZPO; KREN KOSTKIEWICZ/RODRIGUEZ, Internationale Rechtshilfe in Zivilsachen, Bern 2013, Rz. 377). Sodann ist auch dem Ersuchen um Zulassung eines professionellen Videofilmers und eines professionellen Stenografen – unter entsprechender Kostenauflage an das ersuchende Gericht (bzw. ggf. an die Klägerin, vgl. hierzu act. 1/2 S. 14, Ziff. 17) gemäss Art. 9 Abs. 2 i.V.m. Art. 14 Abs. 2 HBewUe70 – im Grundsatz nichts entgegenzusetzen. Hingegen wird die technische Logistik bzw. Machbarkeit dieser Anträge zu gegebenem Zeitpunkt abzuklären und anlässlich der Vorladung des Zeugen zu bestätigen sein. Entsprechend erübrigt sich gegenwärtig ein diesbezüglicher Entscheid.

3.3 Zum in Frage a beantragten Recht der Parteivertreter, dem Zeugen Ergänzungs- bzw. Anschlussfragen zu stellen, sieht Art. 173 ZPO vor, dass die Parteien der Schweizer Richterin oder dem Schweizer Richter jeweils Ergänzungsfragen beantragen dürfen. Soweit die Ergänzungsfragen der Parteien im Sinne der obigen Erwägungen in sachlicher und zeitlicher Hinsicht auf den Gegenstand des Rechtshilfeersuchens beschränkt und von entsprechender Relevanz für das zu-

grundeliegende Hauptverfahren sind, mithin keine unzulässige Beweisausforschung bezweckt wird (vgl. hierzu ausführlich E. II.1 ff.), kann die einvernehmende Richterin bzw. der einvernehmende Richter die Ergänzungsfragen jeweils bewilligen.

3.3.1 In Bezug auf den in Frage b weiter enthaltenen Antrag, den Zeugen (bzw. "eigene und gegnerische Zeugen") *direkt* zu befragen, sehen Art. 172 und 173 ZPO grundsätzlich vor, dass die Schweizer Richterin oder der Schweizer Richter den Zeugen befragt. Gemäss Art. 173 ZPO besteht die Möglichkeit, eine ergänzende, direkte Zeugenbefragung durch eine Partei zuzulassen, hingegen bedarf es hierfür einer Bewilligung der einvernehmenden Richterin bzw. des einvernehmenden Richters. Auf die Bewilligung kann im Falle von Suggestivfragen jederzeit zurückgekommen werden (BSK ZPO-GUYAN, Art. 173 N 3 f.). Die Ausdehnung einer solchen Bewilligung bis hin zur Durchführung von sogenannten *Kreuzverhören* ("cross-examination") mit abwechselnder Befragung des Zeugen durch die Parteivertreter ist zwar grundsätzlich möglich, wobei die Schweizer Richterin oder der Schweizer Richter nach wie vor das Verfahren führt und eingreifen muss, wenn er oder sie dies als notwendig erachtet. Sodann ist die Schweizer Richterin oder der Schweizer Richter die einzige Person, die berechtigt ist, gegenüber dem Zeugen Zwangsmittel anzuwenden (Bundesamt für Justiz, Die internationale Rechtshilfe in Zivilsachen, Wegleitung, 3. Auflage 2003, Stand Januar 2013, S. 23 ff.; BSK ZPO-GUYAN, Art. 173 N 4). Die herrschende Lehre lehnt die Durchführung eines Kreuzverhörs indessen ab (BSK ZPO-GUYAN, Art. 173 N 4; KUKO ZPO-SCHMID/BAUMGARTNER, Art. 173 N 6).

3.3.2 Vor diesem Hintergrund ist das Formersuchen um Durchführung eines Kreuzverhörs gemäss Frage b abzuweisen. Die Parteivertreter sind indessen darauf hinzuweisen, dass nach wie vor die Möglichkeit besteht, dass die einvernehmende Richterin bzw. der einvernehmende Richter ggf. eine Bewilligung zur ergänzenden, direkten Zeugenbefragung erteilt. Dieser Entscheid ist jedoch der einvernehmenden Richterin bzw. dem einvernehmenden Richter überlassen.

3.4   Hinsichtlich Frage e ist vorab festzuhalten, dass den Hauptverfahrensparteien zufolge ihrer Parteistellung auch im Rechtshilfeverfahren grundsätzlich

das rechtliche Gehör zu gewähren ist (Art. 53 ZPO; act. 30 S. 3; OGer ZH RU130012 E. 3; OGer ZH RU140032, E. 3.5).

3.4.1 Das ersuchende Gericht beantragt vorliegend, dass der Klägerin mindestens 20 Tage vor Durchführung der Zeugeneinvernahme Akteneinsicht in die zu edierenden Unterlagen zu gewähren ist. Gemäss Art. 53 Abs. 2 ZPO ist zu prüfen, ob der Gewährung der Akteneinsicht keine überwiegenden öffentlichen oder privaten Interessen entgegenstehen (OGer ZH RU140032, E. 3.6).

3.4.2 Da es sich beim Hauptverfahren um ein "pre-trial-discovery-Verfahren" handelt, besteht die Gefahr, dass die Klägerin bei verfrühter Einsicht in die zu edierenden Unterlagen ungerechtfertigt zu Beweismitteln gelangt, welche sie alsdann im Hauptverfahren einreichen könnte. Sodann würde auch die Möglichkeit, ggf. erforderliche Massnahmen gemäss Art. 156 ZPO zu treffen, vereitelt (OGer ZH RU140032, E. 3.6 f.). Nach dem Gesagten ist den Parteien zunächst das rechtliche Gehör zum vorliegenden Entscheid zu gewähren. Nach *unbenütztem* Ablauf der Rechtsmittelfrist sowie nach Eingang der zu edierenden Unterlagen beim hiesigen Gericht wird hernach über das Gesuch um Gewährung der Akteneinsicht in die Unterlagen zu befinden sein. Daraus folgt, dass dieser Entscheid vorab den Hauptverfahrensparteien zwecks Gewährung des rechtlichen Gehörs zuzustellen ist.

3.4.3 Indes ist bereits an dieser Stelle festzuhalten, dass die zu edierenden Bankunterlagen anlässlich der Zeugeneinvernahme thematisiert werden sollen (vgl. Fragen e und f gemäss Fragekatalog in E. II.2.5.2), weshalb die Gewährung der Einsicht in die zu edierenden Unterlagen namentlich auch im Hinblick auf allfällige Ergänzungsfragen an den Zeugen von Bedeutung ist. Aus Gründen der Waffengleichheit wie auch zwecks Stellung von Ergänzungsfragen vonseiten der Beklagten, welche ihrerseits ebenfalls über ein Teilnahmerecht an der Zeugeneinvernahme verfügen, wären die zu edierenden Unterlagen auch den Parteivertretern der Beklagten – mithin nicht nur der Klägerin, wie beantragt – vorab zuzustellen, wobei die Parteivertreter der Beklagten diesfalls gehalten wären, eine Zustelladresse in der Schweiz zu nennen (Art. 140 ZPO).

**VI.**

1. Gemäss Art. 14 Abs. 1 HBewUe70 darf für die Erledigung eines Rechts-
hilfeersuchens keine Erstattung von Gebühren und Auslagen irgendwelcher Art
verlangt werden. Dementsprechend sind auch für das vorliegende Verfahren keine
Gerichtskosten zu erheben. Vorbehalten bleiben allfällige, im Zusammenhang mit
den besonderen Formersuchen entstehende Kosten, welche dem ersuchenden
Gericht (bzw. ggf. der Klägerin, vgl. hierzu act. 1/2 S. 14, Ziff. 17) gemäss Art. 9
Abs. 2 i.V.m. Art. 14 Abs. 2 HBewUe70 aufzuerlegen sind.

2. Die Beschwerdeinstanz hat in ihrem Entscheid auf die Erhebung von
Gerichtskosten für das zweitinstanzliche Verfahren verzichtet, wobei es den Ent-
scheid über die Höhe der Parteientschädigung sowie deren Verteilung dem hiesi-
gen Gericht überlassen hat (act. 13/9 S. 15).

3. Art. 14 Abs. 1 HBewUe70 beschlägt lediglich das Verhältnis der Signa-
tarstaaten untereinander, nicht aber das Verhältnis zwischen einer Beschwerde-
führerin und den am Verfahren beteiligten Parteien. Die Prozesskosten sind nach
Art. 106 Abs. 1 ZPO grundsätzlich der unterliegenden Partei aufzuerlegen. Bei ei-
ner Beschwerdeabweisung gilt die beschwerdegegnerische Partei dem Grundsatz
nach als unterliegend und wird damit kostenpflichtig.

4. Die Beklagten [die Beschwerdegegnerinnen] haben sich im Beschwer-
deverfahren jedoch nicht geäussert und sich auch nicht mit dem vorinstanzlichen
Entscheid identifiziert. Damit fehlt es an einer unterliegenden Partei. Aus dem vor-
stehend geschilderten Grund können die Beklagten [die Beschwerdegegnerinnen]
nicht zur Leistung einer Parteientschädigung an die Klägerin [die Beschwerdefüh-
rerin] verpflichtet werden.

**Es wird verfügt:**

1. Die Société Générale, Paris, Zweigniederlassung Zürich, Talacker 50, 8001
Zürich, wird verpflichtet, innert 20 Tagen ab Zustellung dieser Verfügung
dem Bezirksgericht Zürich, Abteilung Rechtshilfe, unter Verweis auf die in
E. II.2.3 wiedergegebenen, vorliegend massgeblichen Begriffsdefinitionen,

folgende Unterlagen in physischer Form sowie falls möglich in elektronischer Form einzureichen:

    i.    Auszüge der Geldkonten und Wertpapierkonten für den massgeblichen Zeitraum;

    ii.    Dokumente einschliesslich SWIFT-Nachrichten, die bezüglich eines dänischen Wertpapiers das Eigentum, den Erwerb, den Verkauf, das Leihen, Verleihen, Finanzieren oder einen sonstigen Handel oder Transfer oder die Aufhebung eines Handels oder Transfers durch einen Verwahrer oder im Namen eines Verwahrers im massgeblichen Zeitraum belegen;

    iii.    Dokumente einschliesslich SWIFT-Nachrichten, die den Erhalt einer Dividende durch die Société Générale für einen Verwahrer oder im Namen eines Verwahrers im massgeblichen Zeitraum belegen oder widerspiegeln;

    iv.    die Dokumente, die der Société Générale bei der Eröffnung eines Kontos vorgelegt wurden, das in Verbindung mit einer Transaktion von dänischen Wertpapieren im massgeblichen Zeitraum durch einen Verwahrer verwendet wurde, unter anderem Compliance-Dateien bezüglich eines jeden Verwahrers;

    v.    die Verträge oder Vereinbarungen bezüglich einer Transaktion oder Verwahrung von dänischen Wertpapieren zwischen der Société Générale und einem Verwahrer, die auf einen Tag innerhalb des massgeblichen Zeitraums datiert sind oder die innerhalb des massgeblichen Zeitraums wirksam waren, und die Dokumente, mittels derer die Verträge oder Vereinbarungen beendet wurden.

**Die gesetzlichen Fristenstillstände gelten nicht (Art. 145 Abs. 2 ZPO).**

2. Hält sich die Société Générale, Paris, Zweigniederlassung Zürich, Talacker 50, 8001 Zürich, für berechtigt, die Herausgabe der Urkunden zu verweigern (Art. 160 Abs. 1 lit. b ZPO und Art. 165 f. ZPO), sind die Gründe hierfür dem Gericht innert der gleichen Frist schriftlich mitzuteilen.

**Bei Säumnis kann das Gericht Sanktionen gemäss Art. 167 Abs. 1 ZPO ergreifen (Art. 167 Abs. 2 ZPO).**

3. Die Société Générale, Paris, Zweigniederlassung Zürich wird ersucht, innert 20 Tagen ab Zustellung dieser Verfügung dem Bezirksgericht Zürich, Abteilung Rechtshilfe, eine interne, entsprechend bevollmächtigte Person zwecks Vorladung zur Einvernahme in obgenannter Angelegenheit zu nennen.

4. Die Société Générale, Paris, Zweigniederlassung Zürich wird weiter ersucht, innert 20 Tagen ab Zustellung dieser Verfügung dem Bezirksgericht Zürich, Abteilung Rechtshilfe, folgende schriftliche Erklärung einzureichen:

Eine durch eine interne, entsprechend bevollmächtigte Person mit Kenntnis der regelmässig geführten geschäftlichen Aufzeichnungen der Société Générale, Paris, Zweigniederlassung Zürich erstellte schriftliche Erklärung, worin diese bestätigt:

- gegenwärtig, unter Angabe der Stellenbezeichnung, bei der Société Générale, Paris, Zweigniederlassung Zürich beschäftigt zu sein, unter Angabe der Stellenbezeichnung,

- zur Abgabe der vorliegenden schriftlichen Erklärung von der Société Générale, Paris, Zweigniederlassung Zürich, bevollmächtigt und befugt zu sein,

- dass die Société Générale, Paris, Zweigniederlassung Zürich, aufgrund eines Rechtshilfeersuchens des US-Bezirksgerichts für den südlichen Bezirk von New York, USA, und aufgrund des vorliegenden Entscheids die [zu edierenden] Unterlagen ediert hat,

- dass es sich bei den [zu edierenden] Unterlagen um Originale oder wahre Abschriften der Originale handelt, die aus den im normalen Geschäftsverkehr geführten geschäftlichen Aufzeichnungen der Société Générale, Paris, Zweigniederlassung Zürich stammen,

- dass die [zu edierenden] Unterlagen von Mitarbeitenden der Société Générale, Paris, Zweigniederlassung Zürich, ungefähr zur Zeit des Eintritts der darin genannten Angelegenheiten durch Personen, welche Kenntnis von diesen Angelegenheiten hatten, oder anhand von Informationen, die von solchen Personen übermittelt wurden, erstellt wurden,

- dass die [zu edierenden] Unterlagen von Mitarbeitenden im Rahmen der von der Société Générale, Paris, Zweigniederlassung Zürich, regelmässig ausgeübten geschäftlichen Tätigkeiten geführt wurden,

- dass die [zu edierenden] Unterlagen durch die regelmässig ausgeübten Tätigkeiten als regelmässige Praxis erstellt wurden.

5.   Die verantwortlichen Organe der Société Générale, Paris, Zweigniederlassung Zürich werden überdies zur Wahrheit ermahnt, da allfällige Auskünfte allenfalls durch Zeugenaussage unter Strafandrohung (Art. 307 StGB) zu bestätigen sind.

6.   Es werden keine Kosten erhoben.

Allfällige Dolmetscherkosten sowie im Zusammenhang mit den besonderen Formersuchen entstehende Auslagen bleiben vorbehalten.

7.   Es werden keine Parteientschädigungen zugesprochen.

8.  Schriftliche Mitteilung an

    −   die Société Générale, Paris, Zweigniederlassung Zürich, Talacker 50, 8001 Zürich, unter Beilage einer Kopie des Rechtshilfeersuchens (inklusive dessen Anhang A (S. 15 ff.) sowie die beigefügte Erklärung betreffend "Bestätigung zu Aufzeichnungen über regelmässig ausgeübte Geschäftstätigkeiten gemäss der Federal Rule of Evidence (S. 26 f.)), als Gerichtsurkunde,

    −   die Rechtsvertreterin der Klägerin, Rechtsanwältin Sandrine Giroud und/oder Dominik Elmiger, 35 Rue de la Mairie, Postfach 6569, 1211 Genf 6, gegen Empfangsschein,

    −   die Anwaltskanzlei Hughes Hubbard & Reed LLP, zuhanden Neil J. Oxford, One Battery Park Plaza, New York, NY 10004-1482, USA (in 3 Exemplaren zuhanden der Rechtsvertreter der Beklagten sowie des ersuchenden Gerichts, unter Beilage eines Begleitschreibens), gegen Empfangsschein,

    sowie nach Erledigung des Verfahrens an

    −   die Anwaltskanzlei Hughes Hubbard & Reed LLP, zuhanden Neil J. Oxford, One Battery Park Plaza, New York, NY 10004-1482, USA, unter Beilage der Akten.

9.  Eine Beschwerde gegen diesen Entscheid kann innert 10 Tagen von der Zustellung an schriftlich im Doppel und unter Beilage dieses Entscheids beim Obergericht des Kantons Zürich, Zivilkammer, Postfach 2401, 8021 Zürich, eingereicht werden. In der Beschwerdeschrift sind die Anträge zu stellen und zu begründen. Allfällige Urkunden sind mit zweifachem Verzeichnis beizulegen.

Zürich, 12. April 2022

BEZIRKSGERICHT ZÜRICH
Abteilung Rechtshilfe

Die Vizepräsidentin:                              Die Gerichtsschreiberin:

lic. iur. S. Büeler                               MLaw L. Stewart-Smith



# Bezirksgericht Zürich

Rechtshilfe

---

Geschäfts-Nr. FR211172-L/Z1

Mitwirkend:   Vizepräsidentin lic. iur. S. Büeler
              Gerichtsschreiberin MLaw L. Stewart-Smith

### **Verfügung vom 29. August 2022**

in Sachen

**Skatteforvaltningen**, Zoll- und Steuerverwaltung des, Königreichs Dänemark,
Ostbanegade 123, 2200 Kopenhagen, Dänemark,
Klägerin

vertreten durch RAe Sandrine Giroud und/oder Dominik Elmiger,
35 Rue de la Mairie, Postfach 6569, 1211 Genève 1
vertreten durch RAe William R. Maguire, Marc A. Weinstein, Neil J. Oxford und/o-
der Dustin P. Schmid, Hughes Hubbard & Reed LLP, One Battery Park Plaza,
New York 10004-1482, Vereinigte Staaten
vertreten durch RAe Boris Frederiksen und Kirsten Marie Donato, Vester Fari-
magsgade 23, 1606 Kopenhagen, Dänemark

gegen

1.   **Ackview Solo 401K Plain**,
2.   **AGD Asset Management Pension Plan**,
3.   **Aerovane Logistics LLC Roth 401(K) Plan**,
4.   **Aventus Capital LLC Solo 401K Plan**,
5.   **und weitere Beklagte**,
Beklagte

betreffend **Edition bzw. Zeugeneinvernahme (Forderung)**

- 2 -

## **Erwägungen:**

1.      Mit Verfügung vom 12. April 2022 hiess das hiesige Gericht das Rechts-
hilfeersuchen vom 30. Januar 2020 des US-Bezirksgerichts für den südlichen Be-
zirk von New York, USA, betreffend Durchführung eines schriftlichen Editionsver-
fahrens bei der Société Générale Paris, Zweigniederlassung Zürich, Talacker 50,
8001 Zürich (nachfolgend: Société Générale) samt entsprechender eidesstattlichen
Erklärung ("Affidavit") gut. Das weiter enthaltene Ersuchen um Durchführung einer
Zeugeneinvernahme mit einer bei der Société Générale tätigen, entsprechend be-
vollmächtigen Person, wurde in zeitlicher Hinsicht auf den für den Sachverhalt mass-
geblichen Zeitraum beschränkt und in diesem Umfang grundsätzlich gutgeheis-
sen, wobei die Modalitäten der Durchführung der Zeugeneinvernahme in persönli-
cher, zeitlicher und technischer Hinsicht im Anschluss an die – vorab durchzufüh-
rende schriftliche Edition von Unterlagen – entschieden werden sollten. Die Verfü-
gung vom 12. April 2022 konnte der Société Générale am 13. Mai 2022, der
Rechtsvertreterin der Klägerin in der Schweiz am 16. Mai 2022 und der Rechtsver-
tretung der Klägerin in den USA (Neil J. Oxford, Hughes Hubbard & Reed LLP) am
29. Juni 2022 zugestellt werden (act. 44/1-2; act. 47/3). Sodann konnte die Verfü-
gung vom 12. April 2022 samt einer englischsprachigen Übersetzung am 19. Juli
2022 an das ersuchende Gericht wie auch an die Rechtsvertretung der Beklagten
zugestellt werden (act. 47/1-8, beim hiesigen Gericht am 12. August 2022 einge-
gangen). Die Rechtsmittelfrist von 10 Tagen verstrich in der Folge unbenützt,
wodurch die Verfügung vom 12. April 2022 in Rechtskraft erwachsen und das Ver-
fahren weiterzuführen ist.

2.      Mit Schreiben vom 4. Juli 2022 kam die Société Générale innert er-
streckter Frist den ihr auferlegten Pflichten nach (act. 43). In ihrer Eingabe legte die
Société Générale nach Ermahnung zur Wahrheit mit Blick auf allfällige zu bestäti-
gende Auskünfte durch Zeugenaussage unter Strafandrohung nach Art. 307 StGB
dar, dass sie über keine Unterlagen verfüge, zu deren Edition sie vom hiesigen
Gericht verpflichtet wurde. Mit Blick auf die beantragte Zeugeneinvernahme nannte
die Société Générale sodann eine entsprechend bevollmächtigte, bei der Société
Générale tätige Person.

3.     Vor diesem Hintergrund ist die vorgenannte Eingabe der Société Générale im Interesse einer beschleunigten Verfahrensführung sowie zwecks Vermeidung allfälliger Leerläufe der Rechtsvertretung der Klägerin in der Schweiz zuzustellen und die Klägerin hiermit aufzufordern, dem hiesigen Gericht mitzuteilen, ob die Klägerin nach wie vor an der Durchführung der beantragten Zeugeneinvernahme festhält.

### Es wird verfügt:

1.     Der Rechtsvertretung der Klägerin in der Schweiz wird ein Doppel der Eingabe der Société Générale zugestellt (act. 43).

2.     Der Rechtsvertretung der Klägerin in der Schweiz wird eine **Frist von 10 Tagen** ab Zustellung dieser Verfügung angesetzt, um dem Gericht mitzuteilen, ob die Klägerin nach wie vor an der Durchführung der beantragten Zeugeneinvernahme festhält.

    **Säumnis oder Stillschweigen gilt als Verzicht auf Stellungnahme.**

3.     Die gesetzlichen Fristenstillstände gelten nicht (Art. 145 Abs. 2 ZPO).

4.     Schriftliche Mitteilung an

    –      die Rechtsvertretung der Klägerin in der Schweiz (unter Beilage eines Doppels von act. 43, gegen Empfangsschein),

    sowie nach Erledigung des Verfahrens an

    –      die Anwaltskanzlei Hughes Hubbard & Reed LLP, zuhanden Neil J. Oxford, One Battery Park Plaza, New York, NY 10004-1482, USA (in 3 Exemplaren zuhanden der Rechtsvertreter der Beklagten sowie des ersuchenden Gerichts), gegen Empfangsschein, unter Beilage der Akten.

Zürich, 29. August 2022

BEZIRKSGERICHT ZÜRICH
Abteilung Rechtshilfe

Die Gerichtsschreiberin:

MLaw L. Stewart-Smith



# Bezirksgericht Zürich

Rechtshilfe

Geschäfts-Nr. FR211172-L/Z2

Mitwirkend:   Vizepräsidentin lic. iur. S. Büeler
Gerichtsschreiberin MLaw L. Stewart-Smith

## Verfügung vom 25. November 2022

in Sachen

**Skatteforvaltningen**, Zoll- und Steuerverwaltung des, Königreichs Dänemark,
Ostbanegade 123, 2200 Kopenhagen, Dänemark,
Klägerin

vertreten durch RAe Sandrine Giroud und/oder Dominik Elmiger,
35 Rue de la Mairie, Postfach 6569, 1211 Genève 1
vertreten durch RAe William R. Maguire, Marc A. Weinstein, Neil J. Oxford und/oder Dustin P. Schmid, Hughes Hubbard & Reed LLP, One Battery Park Plaza,
New York 10004-1482, Vereinigte Staaten
vertreten durch RAe Boris Frederiksen und Kirsten Marie Donato, Vester Farimagsgade 23, 1606 Kopenhagen, Dänemark

gegen

1.   **Ackview Solo 401K Plain**,
2.   **AGD Asset Management Pension Plan**,
3.   **Aerovane Logistics LLC Roth 401(K) Plan**,
4.   **Aventus Capital LLC Solo 401K Plan**,
5.   **und weitere Beklagte**,
Beklagte

betreffend **Edition bzw. Zeugeneinvernahme (Forderung)**

- 2 -

**Erwägungen:**

1.      Erneut sei vorliegend festgehalten, dass das hiesige Gericht das Rechtshilfeersuchen vom 30. Januar 2020 des US-Bezirksgerichts für den südlichen Bezirk von New York, USA, betreffend Durchführung eines schriftlichen Editionsverfahrens bei der Société Générale Paris, Zweigniederlassung Zürich, Talacker 50, 8001 Zürich (nachfolgend: Société Générale) samt entsprechender eidesstattlichen Erklärung ("Affidavit") sowie betreffend Durchführung einer Zeugeneinvernahme mit einer bei der Société Générale tätigen, entsprechend bevollmächtigten Person, mit Verfügung vom 12. April 2022 grundsätzlich guthiess (act. 35). Die Modalitäten der Durchführung der Zeugeneinvernahme in persönlicher, zeitlicher und technischer Hinsicht sollten im Anschluss an die – vorab durchzuführende schriftliche Edition von Unterlagen – entschieden werden.

2.      Die Société Générale legte in ihrer Eingabe vom 4. Juli 2022 dar, dass sie über keine Unterlagen verfüge, zu deren Edition sie vom hiesigen Gericht verpflichtet wurde. Ferner nannte sie als Zeugin Frau Isabelle Salomone, stellvertretende Direktorin der Société Générale.

3.      Mit Eingabe vom 12. September 2022 teilte die Klägerin mit, dass sie an der Zeugeneinvernahme festhalte. Das hiesige Gericht hiess die beantragte Zeugeneinvernahme einschliesslich des Fragenkatalogs bereits in der Verfügung vom 12. April 2022, E. II.2.5, gut, wobei die Fragen in zeitlicher Hinsicht auf den vorliegend massgeblichen Zeitraum vom 1. Januar 2014 bis zum 30. August 2015 (vgl. die dazugehörigen Definitionen in E. II.2.3) beschränkt wurden (act. 35). Demnach ist die genannte Zeugin, Frau Isabelle Salomone, stellvertretende Direktorin der Société Générale, mit separater Vorladung zur Zeugeneinvernahme vorzuladen.

4.      Sodann beantragte die Klägerin erneut die Einhaltung von bestimmten Formen i.S.v. Art. 3 lit. h und i HBewUe70 sowie Art. 9 Abs. 2 HBewUe70. So ersucht die Klägerin darum, dass:

> 1.      die in- und ausländischen Rechtsvertreter der Parteien bei der Zeugeneinvernahme persönlich anwesend sein können;

2.   eine Dolmetscherin bzw. ein Dolmetscher auf Kosten der Klägerin beigezogen werde;

3.   die Zeugeneinvernahme mittels Beizug einer Spezialistin bzw. eines Spezialisten auf Kosten der Klägerin per Videokonferenz übertragen werde;

4.   die Zeugeneinvernahme zudem per Video aufgezeichnet und diese Aufzeichnung den Parteien zur Verfügung gestellt werde;

5.   die Zeugeneinvernahme mittels Beizug einer professionellen Stenografin bzw. eines Stenografs auf Kosten der Klägerin festgehalten und die Aufzeichnung den Parteien zur Verfügung gestellt werde;

6.   die Rechtsvertreter der Parteien Ergänzungsfragen direkt an die Zeugin richten können.

5.   Das hiesige Gericht äusserte sich zu den von der Klägerin beantragten Formersuchen bereits in der Verfügung vom 12. April 2022, E. V (act. 35). Die besonderen Formersuchen gemäss obgenannten Ziffern 1 und 2 sind demnach ohne Weiteres gutzuheissen. Die besonderen, technischen Formersuchen gemäss obgenannten Ziffern 3, 4 und 5 sind – unter Vorbehalt deren Organisation und Ausführung durch die Klägerin – gutzuheissen (vgl. hierzu schon act. 35, E. V.3.1-2). Der Klägerin obliegt demnach der Beizug einer Videospezialistin bzw. eines Videospezialisten und einer professionellen Stenografin bzw. eines Stenografs, die technische Organisation und Ausführung anlässlich der Zeugeneinvernahme sowie die nachfolgende Bereitstellung der Aufzeichnungen an die Parteien.

6.   Gemäss Art. 14 Abs. 1 HBewUe70 darf für die Erledigung eines Rechtshilfeersuchens keine Erstattung von Gebühren und Auslagen irgendwelcher Art verlangt werden. Vorbehalten bleiben indessen allfällige, im Zusammenhang mit besonderen Formersuchen sowie mit der Bestellung eines Dolmetschers entstehende Kosten (Art. 9 Abs. 2 i.V.m. Art. 14 Abs. 2 HBewUe70). Die im Zusammenhang mit den besonderen Formersuchen gemäss obgenannten Ziffern 1, 2, 3, 4 und 5 entstehenden Kosten sind antragsgemäss der Klägerin aufzuerlegen.

- 4 -

7.    Das hiesige Gericht äusserte sich zum beantragten Recht, der Zeugin Ergänzungsfragen zu stellen, bereits in der Verfügung vom 12. April 2022 (act. 35, E. V.3.3). Die einvernehmende Richterin kann Ergänzungsfragen der Parteivertreter gemäss Art. 173 ZPO jeweils bewilligen, sofern diese in sachlicher und zeitlicher Hinsicht auf den Gegenstand des Rechtshilfeersuchens beschränkt und von entsprechender Relevanz für das Hauptverfahren in den USA sind. Gemäss Art. 173 ZPO besteht zudem die Möglichkeit, eine ergänzende, direkte Zeugenbefragung durch eine Partei zuzulassen, hingegen bedarf es hierfür einer Bewilligung der einvernehmenden Richterin. Auf die Bewilligung kann im Falle von Suggestivfragen jederzeit zurückgekommen werden (BSK ZPO-GUYAN, Art. 173 N 3 f.). Die Durchführung eines Kreuzverhörs ("cross-examination") wies das hiesige Gericht indessen mit Verfügung vom 12. April 2022 ab (act. 35, E. V.3.3.2). Das erneut beantragte Recht auf Stellung von direkten Ergänzungsfragen kann nicht im Vorfeld der Zeugeneinvernahme entschieden werden, sondern ist situativ zu beurteilen. Demnach erübrigt sich gegenwärtig ein diesbezüglicher Entscheid.

### Es wird verfügt:

1.    Das Ersuchen um Durchführung einer Zeugeneinvernahme mit einer internen, durch die Société Générale, Paris, Zweigniederlassung Zürich entsprechend bevollmächtigten Person wird gutgeheissen.

2.    Zum persönlichen Erscheinen als Zeugin verpflichtet wird

Frau Isabelle Salomone

Stellvertretende Direktorin

Société Générale, Paris, Zweigniederlassung Zürich,

Talacker 50

8001 Zürich.

3.  Die Zeugeneinvernahme wird angesetzt auf

    **Dienstag, 17. Januar 2023, 14:00 Uhr (GMT+1),**
    **LALIVE SA**
    **Stampfenbachplatz 4**
    **8042 Zürich**
    **Schweiz.**

4.  Die Zeugin wird mit separater Post vorgeladen.

5.  Die besonderen Formersuchen gemäss obgenannten Ziffern 1 und 2 werden gutgeheissen.

6.  Den in- und ausländischen Rechtsvertretern der Parteien steht die persönliche Teilnahme oder die Teilnahme per Videokonferenz frei.

7.  Es wird eine Dolmetscherin bzw. ein Dolmetscher bestellt.

8.  Die besonderen technischen Formersuchen gemäss obgenannten Ziffern 3, 4 und 5 werden unter Vorbehalt deren Organisation und Ausführung durch die Klägerin gutgeheissen.

    Unterlässt die Klägerin deren Organisation und Ausführung, so wird die Zeugeneinvernahme ohne Einhaltung der besonderen technischen Formersuchen gemäss obgenannten Ziffern 3, 4 und 5 durchgeführt.

9.  Die Zeugeneinvernahme wird unter Vorbehalt von Dispositivziffer 8 mittels Beizug einer Videospezialistin bzw. eines Videospezialisten per Videokonferenz übertragen.

10. Die Zeugeneinvernahme wird unter Vorbehalt von Dispositivziffer 8 per Video aufgezeichnet und diese Aufzeichnung durch die Klägerin den Parteien, dem ersuchenden Gericht sowie dem hiesigen Gericht innert Frist von 30 Tagen nach durchgeführter Zeugeneinvernahme zur Verfügung gestellt.

11. Die Zeugeneinvernahme wird unter Vorbehalt von Dispositivziffer 8 mittels Beizug einer professionellen Stenografin bzw. eines Stenografs festgehalten und diese Aufzeichnung durch die Klägerin den Parteien dem ersuchenden Gericht sowie dem hiesigen Gericht innert Frist von 30 Tagen nach durchgeführter Zeugeneinvernahme zur Verfügung gestellt.

12. Der Antrag der Klägerin auf Durchführung eines Kreuzverhörs ("cross-examination") wird abgewiesen.

13. Das hiesige Gericht tagt in folgender Besetzung:

    Vizepräsidentin:          lic. iur.  S. Büeler

    Gerichtsschreiberin:      MLaw   L. Stewart-Smith

    Änderungen in der Gerichtsbesetzung sind vorbehalten.

14. Es werden keine Kosten erhoben.

    Die Dolmetscherkosten sowie allfällige im Zusammenhang mit den besonderen Formersuchen entstehenden Auslagen werden der Klägerin auferlegt.

15. Schriftliche Mitteilung an

    – die Rechtsvertretung der Klägerin in der Schweiz, gegen Empfangsschein,

    – die Rechtsvertretung der Société Générale Paris, Zweigniederlassung Zürich, Talacker 50, 8001 Zürich, im Doppel für sich und zuhanden der Société Générale, unter Beilage eines Doppels von act. 50, gegen Empfangsschein,

    – die Anwaltskanzlei Hughes Hubbard & Reed LLP, zuhanden Neil J. Oxford, One Battery Park Plaza, New York, NY 10004-1482, USA (in 3 Exemplaren zuhanden der Rechtsvertreter der Beklagten sowie des ersuchenden Gerichts), unter Beilage je einer Kopie von act. 43, act. 48 und act. 50, gegen Empfangsschein,

    sowie nach Erledigung des Verfahrens an

- die Anwaltskanzlei Hughes Hubbard & Reed LLP, zuhanden Neil J. Oxford, One Battery Park Plaza, New York, NY 10004-1482, USA, unter Beilage der Akten.

Zürich, 25. November 2022

BEZIRKSGERICHT ZÜRICH
Abteilung Rechtshilfe

Die Vizepräsidentin:                    Die Gerichtsschreiberin:

lic. iur. S. Büeler                         MLaw L. Stewart-Smith