# LIONBRIDGE

|                      |   |    |
|----------------------|---|----|
| STATE OF NEW YORK    | ) |    |
|                      | ) | ss |
| COUNTY OF NEW YORK   | ) |    |

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from German into English of the attached copy of the Transcript of the

Interrogation of January 17, 2023.

_____

Laura Musich, Managing Editor
Lionbridge

Sworn to and subscribed before me

this 18th day of February, 20 23.

_____

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

Zurich District Court
Mutual Legal Assistance
Wengistrasse 28
P.O. Box
8036 Zurich
Phone 044 248 21 80

**P.P. 8004 Zürich**

GU

DIE POST 98.03.053794.00154299

FR211172-L/El

Attorneys Sandrine Giroud and/or
Dominik Elmiger
35 Rue de la Mairie
P.O. Box 6569
1211 Geneva 1

File no.: FR211172-L
(Please quote again in reply)

Content of service: Copy of the transcript of the interrogation of January 17, 2023

# Zurich District Court

Mutual Legal Assistance



---

Wengistrasse 28
P.O. Box
8036 Zurich
Phone 044 248 21 80

<u>FR211172-L/EI</u>

Attorneys Sandrine Giroud and/or
Dominik Elmiger
35 Rue de la Mairie
P.O. Box 6569
1211 Geneva 1

File no.: FR211172-L/K5
(Please quote again in reply)

Vice President lic. iur. S. Büeler                Zurich, January 31, 2023

**Transcript of the interrogation of January 17, 2023**

Dear attorney Giroud,
Dear attorney Elmiger,

After the interrogation of the witnesses on January 17, 2023, we are sending you a copy of the transcript of the interrogation issued by the court. An original copy will be sent by way of mutual legal assistance to the law firm of Hughes Hubbard & Reed LLP, for the attention of attorney Neil J. Oxford, pursuant to paragraph 3 of the Request for Mutual Legal Assistance.

Yours sincerely,

ZURICH DISTRICT COURT
Mutual Legal Assistance Division
The Clerk of the Court:

[signature]
MLaw L. Stewart-Smith

Exhibit: Copy of the transcript of the interrogation of January 17, 2023

# Zurich District Court

Mutual Legal Assistance



File no.: FR211172-L / P_ZEV
Your reference number: 18-md-2865 (LAK)

# **Transcript of the interrogation**

| | |
|---|---|
| Date of interrogation: | Tuesday, January 17, 2023, 2:00 p.m. |
| Place of interrogation: | Lalive SA, Stampfenbachplatz 4, 1st floor, 8042 Zurich |
| Vice President: | lic. iur. S. Büeler as interrogator |
| Clerk of the Court: | MLaw L. Stewart-Smith as Recording Secretary |
| Requesting Authority: | U.S. District Court for the Southern District of New York, USA |
| Request dated: | October 20, 2020 |

in the matter of

**Skatteforvaltningen**, Customs and Tax Administration of the Kingdom of Denmark,
Ostbanegade 123, 2200 Copenhagen, Denmark,
Plaintiff

represented by attorneys Sandrine Giroud and/or Dominik Elmiger,
35 Rue de la Mairie, P.O. Box 6569, 1211 Geneva 1
represented by attorneys William R. Maguire, Marc A. Weinstein, Neil J. Oxford and/ or Dustin P.
Schmid, Hughes Hubbard & Reed LLP, One Battery Park Plaza,
New York 10004-1482, United States
represented by attorneys Boris Frederiksen and Kirsten Marie Donato, Vester Farimagsgade 23, 1606
Copenhagen, Denmark

v.

1. **<u>Ackview Solo 401K Plain</u>**
2. **<u>AGD Asset Management Pension Plan</u>**,
3. **<u>Aerovane Logistics LLC Roth 401(K) Plan</u>**,
4. **<u>Aventus Capital LLC Solo 401K Plan</u>**,
5. **<u>and other Defendants</u>**,

Defendants

**concerning production of evidence or interrogation of witness (claim)**

January 17, 2023                                                    **Interrogation of Witness**
                                                                    Isabelle Salomone

<u>In attendance:</u>     Vice President lic. iur. S. Büeler
                           Clerk of the Court MLaw L. Stewart-Smith
                           Auditor MLaw A. Dürmüller

                           Ms. C. John as officially appointed English and French interpreter

<u>Appeared:</u>          The witness, Ms. Isabelle Salomone, Deputy Director of the Société Générale
                           branch, Paris, Zurich branch, accompanied by Dr. iur. J. F. Götz Gallenkamp
                           (Société Générale branch, Paris, Zurich branch)

                           Attorney lic. iur. D. Hofmann and attorney MLaw K. Arnesson, on behalf of and
                           with power of attorney for the addressee of the production of evidence

                           Attorney lic. iur. S. Giroud, attorney lic. iur. D. Elmiger, attorney MLaw A. Santen,
                           on behalf of and with power of attorney for the Plaintiff (Swiss legal representation)

                           Attorney N. Oxford, attorney M. A. Weinstein and attorney E. Pamukcu (connected
                           via video transmission), for the Plaintiff (U.S. legal representation)

                           Attorney B. Frederiksen and attorney A. Ch. Kjaer Egholm, for the Plaintiff
                           (Danish legal representation)

                           Attorney N. Bahnsen (connected via video transmission), for John Van
                           Merkensteijn and other defendants (U.S. legal representation)

                           Stenographer Ms. Ch. Myerly

                           Videographer Mr. J. Rivera


(The interrogation takes place at the premises of Lalive SA,
Stampfenbachplatz 4, 1st floor, 8042 Zurich).

(Attorney D. Elmiger submits two attendance lists for the files as
court file 61/1-2 for the transcript).

(Attorney D. Elmiger makes a request for service of the court transcript after it has been issued).

(Start of the interrogation: 2:00 p.m.)

(The Vice President welcomes the appeared and introduces the court panel).

(The interpreter's attention is drawn to the criminal consequences of a knowingly false translation within the meaning of Section 307 StGB (Swiss Criminal Code) and the violation of official secrecy within the meaning of Section 320 StGB).

(The witness as well as the other attendees declare that they understand the interpreter).

(The Vice President establishes who is present in the room, for the attention of the witness and the transcript).

(The personal data of the witness, Ms. Isabelle Salomone, residing at Mönchhofstrasse 8, 8802 Kilchberg ZH, are verified and confirmed by her as accurate. When asked, the witness states that she was born on June 16, 1973 and that her hometown is Zurich. The witness states that she has been working in the Security Services Department of Société Générale since June 2022).

(Attorney D. Elmiger argues that already the questions about the person must be videotaped to ensure that all witness statements are recorded. The Vice President explained that further questions about the person would take place after the witness had been given legal instructions).

(The Vice President explains today's trial topic and the trial history of the present mutual legal assistance proceedings).

(The Vice President informs the parties that the interrogation will be recorded and videotaped with the help of a videographer and transmitted by video. Then, with the help of a stenographer, an English transcript would be prepared.

- 4 -

In addition, a court record would be prepared by the court. Since the interrogation is audio-recorded, the court record is not presented to the witness for signing).

(Attorney D. Elmiger submits motions regarding the course of today's interrogation of the witness, which are relevant for the further proceedings, particularly from the U.S. perspective. Attorney D. Elmiger requests that

1.      the legal instruction of the witness be videotaped;
2.      the wording of the definitions and questions contained in the German and English versions of the request for legal assistance be considered authoritative and that the questions not be freely translated into German and English;
3.      the limitation of the factual and temporal scope of the questions in accordance with the evidentiary order [court file 35] must be complied with,
4.      the limitation of the factual and temporal scope of the questions according to the evidentiary order [court file 35] must be complied with even in the case of possible supplementary questions;
5.      objections to possible supplementary questions would be recorded).

(When asked, the witness expressly confirmed that she had received the questions contained in the request for legal assistance and the relevant definitions in advance of today's interrogation).

(The Vice President states that legal assistance is granted in this case only for these main proceedings before the U.S. District Court for the Southern District of New York, USA. The weighing of interests with regard to the information protected by Swiss banking secrecy only takes place in connection with these civil proceedings, which is why any findings may not be used in other proceedings, namely criminal or tax proceedings).

(The Vice President explains the course of the interrogation and states that supplementary questions could be asked after the interrogation, with this possibility being granted first to the Plaintiff, then to the Defendant and finally to the addressee of the production of evidence).

(The witness is asked by the Vice President to take a seat in the middle of the room in order to be able to ensure the video recording of the subsequent interrogation of the witness).

**<u>The witness</u>** (when asked):

(The witness is admonished to tell the truth and advised of the criminal consequences of knowingly giving false testimony pursuant to Section 307 StGB).

(The witness is informed that she is obligated to cooperate in the taking of evidence pursuant to Section 160 (1) ZPO (Code of Civil Procedure)).

(The witness is informed of the right to refuse to testify pursuant to Section 165 ZPO and Section 166 ZPO. Furthermore, the witness is informed that she is also entitled to the U.S. rights to refuse to testify contained in the request for legal assistance:
1.	right to refuse to testify regarding communications protected by the attorney-client privilege, which took place in the context of legal advice;
2.	the right to refuse to testify if there is a risk of criminal prosecution, whereby only natural persons could invoke this right, i.e. not the Société Générale).

(The consequences of default according to Section 167 ZPO are explained to the witness).

(The witness confirms that she understood the aforementioned provisions in the context of today's hearing and the interrogation of the witness which will follow).

(The witness asks the court to grant her permission to give information that would concern her professional secrecy or banking secrecy.

- 6 -

The Vice President states that the court had already weighed up the interests in the evidentiary order of April 12, 2022 [court file 35], whereby the interest in ascertaining the truth outweighed professional and banking secrecy. The Vice President further points out that this weighing of interests is repeated in the case of supplementary questions).

What position did you hold at Société Générale during the relevant period from January 1, 2014 to August 30, 2015?

During this period, I was Relationship Manager in the Security Services Department. This is the securities department of Société Générale in Zurich.

Do you have a relationship with the Plaintiff?

No, I have no relationship with the Plaintiff. Do you mean a personal relationship with the Plaintiff?

Yes:

No, I have no personal relationship with the Plaintiff.

Do you have a personal relationship with any of the Defendants?

No.

Do you have any criminal history?

No.

(The Vice President states at the beginning that the following questions of the requesting court are to be understood in the light of the relevant definitions in the request for legal assistance).

i.f. [initials]

Do you know the definitions?

The most important definitions from our point of view are the definitions of the custodians and the list of companies. Société Générale's research showed that only one company was in question during the period in question.

(When asked again by the Vice President, the witness confirms that she knows the definitions and will ask if she is unsure).

(The Vice President states that the following questions only relate to the relevant period from January 1, 2014 to August 30, 2015).

(The Vice President states for the attention of the interpreter that she has to stick to the exact wording of the English version of the request for legal assistance and can then freely translate into French).

a) What, if any, is the nature of the relationship between Société Générale and the custodians?

During the relevant period, there was a relationship with one custodian of the list. The relationship consisted in the provision of securities services by the Security Services Department of Société Générale.

b) What services, if any, did Société Générale provide to the custodians in connection with the custody of the Danish securities?

None.

i.      What services were provided to custodians when accounts were opened?

No services related to Danish securities were provided during the relevant period.

ii.      What services were provided in the maintenance of accounts for the custodians?

No services related to the custody of Danish securities were provided during the relevant period.

iii.      What services were provided in closing the accounts for the custodians?

No services related to the custody of Danish securities were provided to the custodians.

iv.      Were any special services provided to the custodians in connection with the keeping Danish securities in custody for the custodians?

No services related to Danish securities were provided to the custodians.

c)      What does Société Générale know about whether the custodians held Danish securities?

No, we do not know.

i.      What does Société Générale know about the manner in which the custodians purchased Danish securities?

I have no knowledge of any purchase of Danish securities by the custodian.

                    i.f. [initials]

You stated that you had no knowledge of this, although the question is whether Société Générale knew anything. Can you explain whether you can speak only for yourself personally or also for Société Générale?

I am speaking on behalf of Société Générale.

ii.     What does Société Générale know about the manner in which the custodian otherwise received Danish securities?

No.

d)     What does Société Générale know about whether the custodians received dividends for ownership of Danish securities?

We do not know anything.

i.     What details does Société Générale know regarding the receipt of these dividends?

We have no knowledge of dividends and we have no information on dividends derived from Danish securities.

ii.     What does Société Générale know about who the ultimate beneficiaries of these dividends were?

I have no information on the custodians. We were not holding any Danish securities. There were no dividends and I have no information on the ultimate beneficiaries. Here I am speaking on behalf of Société Générale and not from my personal point of view.

(The Vice-President explains that the following questions e) and f) of the request for legal assistance had been deprived of their meaning due to the fact that no documents had been produced, but would be asked nevertheless).

> Can Société Générale authenticate documents submitted pursuant to paragraph 11, if necessary?

(Attorney D. Hofmann argued that it was not clear what was meant by "authenticate" and noted that the addressee of the request for production of evidence was not a notary).

(When asked if attorney D. Elmiger could give an answer to this question, he asks for a short interruption for the purpose of discussion).

(Attorney D. Elmiger explains that he wanted to rephrase question e) as follows: "Does Société Générale have any documents that it could produce in accordance with paragraph 11?" Question f) should then be omitted. When asked by the Vice-President, attorney D. Elmiger confirms that he meant documents which Société Générale was requested to produce by the evidentiary order of this court).

> Can Société Générale submit documents as requested by this court according to the evidentiary order [court file 35] including all definitions contained therein?

Does this mean documents relating to the Danish securities and dividends derived from these securities?

> Are there documents that are subject to the obligation to produce evidence in accordance with the evidentiary order of this court [court file 35]?

I am sorry, I am not sure if I understood the question correctly. I don't remember the document. We didn't have Danish securities and so we didn't have the relevant documents.

We also did not pay dividends on Danish securities, so we do not have any corresponding documents.

(The Vice President states that from her point of view the question had been answered, which is why she moves on to the supplementary questions).

In response to a supplementary question from attorney N. Oxford:
Good afternoon, Ms. Salomone. You testified that you only provided services to one custodian on the list. Who was that custodian?

That was Solo Capital Partners LLP.

When shown court file 43 [exhibit 5365] and in response to a supplemental question from Attorney N. Oxford:
Do you know this document?

Yes.

In response to a supplementary question from attorney N. Oxford:
Can you please tell me what it is?

This is a document from Walder Wyss Rechtsanwälte, which was prepared in the course of these proceedings. This document was prepared on the basis of information we received internally.

In response to a supplementary question from attorney N. Oxford:
With reference to your work at Société Générale, can you tell me whether the content of the letter I have shown you is correct?

Yes.

In response to a supplementary question from attorney N. Oxford:
Can you explain to me what services, if any, were provided by Société Générale to Solo Capital Partners LLP?

i.f. [initials]

- 12 -

(With reference to the request for legal assistance, the Vice
President argues that the question as well as the answer should
only concern the relevant period from January 1, 2014 to August
30, 2015).

As I have already explained, we did not provide any services in connection with Danish securities. We
did, however, hold those securities listed in margin no. 8 of the letter from Walder Wyss Rechtsanwälte
[court file 43].

(No further supplementary questions from the Plaintiff.)

(Attorney N. Bahnsen, connected via video transmission, took
the floor and stated that he represented John Van Merkensteijn
and other defendants).

> In response to a supplementary question from attorney N. Bahnsen:
> In its answers today concerning Danish securities, did Société Générale
> include equity securities?

> Correctly [Attorney Hofmann's objection to the translation]:
> In its answers today concerning Danish securities, did Société Générale
> include equities?

(Attorney N. Oxford objects [Objection Form].)

(Attorney N. Oxford explains when asked that the objection was
only for the sake of form and for the attention of the U.S. main
proceedings).

(The Vice President argues that the supplemental questions and
corresponding answers would also always refer to the relevant
time period

[January 1, 2014 to August 30, 2015], the custodians as well as
the Danish securities according to the definitions of the
evidentiary order [court file 35]).

Did Mr. Bahnsen refer in his question to the 28 shares whose names we have received?

> In response to a supplementary question from attorney N. Bahnsen:
> Does Société Générale assume, with reference to these 28 companies,
> that swaps were also among the securities that should have been
> investigated?

(Attorney N. Oxford objects [Objection Form].)

Swap products are not among the securities that Société Générale Security Services in Zurich permits to
be held in custody.

> In response to supplemental question from Attorney N. Bahnsen:
> Have you also considered options with respect to the listed companies?

(Attorney N. Oxford objects [Objection Form].)

Options are not admitted for custody by Société Générale Security Services in Zurich.

> In response to a supplementary question from attorney N. Bahnsen:
> Have you considered Contracts for Difference (CfDs)?

(Attorney at law N. Oxford objects [Objection Form].)

No. Contracts for Difference are not admitted for custody by Société Générale Security Services in
Zurich.

i.f. [initials]

<u>In response to a supplementary question from Attorney at Law N. Bahnsen:</u>

Do you have any information as to whether any other partner of Société Générale accepts these products?

(Attorney N. Oxford objects [Objection Form].)

(Attorney D. Hofmann argues that this question goes too far. The Vice President argues that this question could not be admitted, since in the present case only the subject matter of the request for legal assistance and its factual and temporal scope were the subject of the proceedings).

<u>When confronted with court file 43 [exhibit 5365], margin no. 10 lit. c) and in response to the supplementary question of attorney N. Bahnsen:</u>

Is there any connection at Société Générale between the client and the Defendants according to the relevant definitions?

(Attorney N. Oxford objects [Objection Form].)

We have not found any connection during the relevant period between January 1, 2014 and August 30, 2015. If it is helpful, I can further elaborate that we have made inquiries to ensure that no payments were made for Danish securities.

<u>In response to supplemental question from Attorney N. Bahnsen:</u>

Yes, but you limited yourself to the custodians, but my question was about the Defendants:

<u>Correctly [request to correct the transcript by attorney K. Arnesson]:</u>

Yes, but in your submission [court file 43] you limited yourself to the custodians, but my question was about the Defendants:

(Attorney N. Oxford objects [Objection Form].)

(The Vice President argues that the connection of the question to
the custodians is not apparent and therefore the question is not
admitted).

> ### In response to a supplementary question by Attorney N. Bahnsen:
> But you are aware that a list of the Defendants is included in the request
> for legal assistance?

(Attorney N. Oxford objects [objection form].)

(When asked, Attorney N. Bahnsen confirms that the
supplemental question is directed to the witness).

> ### Upon supplemental question by the Vice President:
> Do you know the appendix with the Defendants?

I do not remember the list by heart. In answering the court's questions, I only referred to what I know.
Could you please make the question more specific?

> ### In response to a supplementary question from attorney N. Bahnsen:
> Has Société Générale been asked to research whether "pension
> defendants" [meaning defendant pension funds] have accounts with
> Société Générale?

(Attorney N. Oxford objects [Objection Form].)

Société Générale Security Services in Zurich had very few clients who benefited from securities services
during the relevant time period. There were only about 40 customers at that time, the majority of which
belonged to the Group.

Others, if there had been any, would have been easy to find. We do not have any client related to this matter.

> On supplementary question from attorney N. Bahnsen:
> Just for clarification on my part: You referred to "this matter." Are you referring to the request for legal assistance?

(Attorney N. Oxford objects [objection form].)

Yes, I am speaking with reference to the matter that brings us together today.

> In response to a supplemental question by Attorney N. Bahnsen:
> You testified that Société Générale had only been able to identify Solo Capital Partners LLP. Société Générale had no other custodians. Is this true?

(Attorney N. Oxford objects [Objection Form].)

(The Vice President states that only the four custodians as defined in the request for legal assistance are at issue. The witness is allowed to answer the question within the scope of the mentioned definition).

(The witness wanted the question to be repeated by attorney N. Bahnsen, whereupon he indicated that he would slightly amend the question).

> In response to a supplementary question by Attorney N. Bahnsen: Was Société Générale able to identify any other entities as custodians in its research, apart from the four custodians just mentioned?

(Attorney N. Oxford raises an objection [Objection Form].)

(The Vice President states that the mutual legal assistance proceedings are only about the four custodians. Société Générale had no obligation to answer questions beyond that. Accordingly, the question would not be admitted).

> In response to a supplementary question from attorney N. Bahnsen:
> With regard to the relationship of Société Générale with Solo Capital Partners LLP: Were there any restrictions with regard to the possibility for Solo Capital Partners LLP to have accounts with other institutions?

(Attorney N. Oxford objects [Objection Form].)

(The Vice President states that this question would not be admitted. The supplementary questions would necessarily have to relate to Danish securities. The definitions according to the request for legal assistance and the evidentiary order of the court must be taken into account).

(The Vice President comments on the applicable legal situation in Switzerland and the prohibition of the discovery of evidence).

(Attorney N. Bahnsen declares that he had no further questions).

(No further supplementary questions from the Defendant.)

(Attorney K. Arnesson makes a request for correction of the transcript. She explains that the supplementary question – not admitted – concerning margin no. 10 lit. c) [asked by attorney N. Bahnsen] had been translated incorrectly. In German, it had been translated that the witness had limited her statement to the custodians. However, the question had referred to whether Société Générale had limited itself to the custodians in its submission [court file 43]).

- 18 -

(Attorney D. Hofmann adds that he wanted to state for the record that Société Générale had been concerned to cooperate within the requirements of the court and to create transparency. This in the hope that the cooperation would be appreciated).

(No further comments.)

(The witness declares that she waives compensation [Section 160 (3) ZPO]).

(Attorney D. Elmiger explains that the English transcript will be circulated between the parties, so that they can inspect it and make any comments. Afterwards, this possibility would also be granted to the witness).

(The Vice President asked for the final version of the English transcript to be sent to her).

(End of the hearing: 4:10 p.m.)

(The interpreter is compensated for her efforts with CHF 765.00 in advance from the court treasury).


i.f.

The Vice President                                    The Clerk of the Court:

[signature]                                           [signature]



Lalive and Partners
Law firm
P.O. Box  6569
Ch-1211 Geneva 6

**Received**
**February 2**
[text cut off]

**Zurich District Court**
P.O. Box
**8036 Zurich**

Bezirksgericht Zürich
Rechtshilfe
Wengistrasse 28
Postfach
8036 Zürich
Telefon 044 248 21 80

**P.P. 8004 Zürich**

**GU**    98.03.053794.00154299

FR211172-L/EI

RAe Sandrine Giroud und/oder
Dominik Elmiger
35 Rue de la Mairie
Postfach 6569
1211 Genève 1

Geschäfts-Nr.: FR211172-L
(Bitte in Antwort wiederholen)

Zustellungsinhalt: Kopie Einvernahmeprotokoll vom 17.01.2023

# Bezirksgericht Zürich

Rechtshilfe

Wengistrasse 28
Postfach
8036 Zürich
Telefon 044 248 21 80

FR211172-L/El

RAe Sandrine Giroud und/oder
Dominik Elmiger
35 Rue de la Mairie
Postfach 6569
1211 Genève 1

Geschäfts-Nr.: FR211172-L/K5
(Bitte in Antwort wiederholen)

Vizepräsidentin lic. iur. S. Büeler                    Zürich, 31. Januar 2023

## **Einvernahmeprotokoll vom 17. Januar 2023**

Sehr geehrte Frau Rechtsanwältin Giroud

Sehr geehrter Herr Rechtsanwalt Elmiger

Nach durchgeführter Zeugeneinvernahme vom 17. Januar 2023 senden wir Ihnen eine Kopie des vom Gericht ausgefertigten Einvernahmeprotokolls. Ein Original-Exemplar wird gemäss Ziffer 3 des Rechtshilfeersuchens auf dem Rechtshilfeweg an die Anwaltskanzlei Hughes Hubbard & Reed LLP, zuhanden von Rechtsanwalt Neil J. Oxford, versandt.

Freundliche Grüsse

BEZIRKSGERICHT ZÜRICH
Abteilung Rechtshilfe
Die Gerichtsschreiberin:

MLaw L. Stewart-Smith

Beilage: Kopie Einvernahmeprotokoll vom 17. Januar 2023

# Bezirksgericht Zürich

Rechtshilfe



---

Geschäfts-Nr.: FR211172-L / P_ZEV
Ihr Aktenzeichen: 18-md-2865 (LAK)

## **Einvernahmeprotokoll**

| | |
|---|---|
| Datum der Einvernahme: | Dienstag, 17. Januar 2023, 14.00 Uhr |
| Ort der Einvernahme: | Lalive SA, Stampfenbachplatz 4, 1. Stock, 8042 Zürich |
| Vizepräsidentin: | lic. iur. S. Büeler als Einvernehmende |
| Gerichtsschreiberin: | MLaw L. Stewart-Smith als Protokollführerin |
| Ersuchende Behörde: | US-Bezirksgericht für den südlichen Bezirk von New York, USA |
| Ersuchen vom: | 20. Oktober 2020 |

in Sachen

**Skatteforvaltningen**, Zoll- und Steuerverwaltung des, Königreichs Dänemark, Ostbanegade 123, 2200 Kopenhagen, Dänemark,

Klägerin

vertreten durch RAe Sandrine Giroud und/oder Dominik Elmiger,
35 Rue de la Mairie, Postfach 6569, 1211 Genève 1
vertreten durch RAe William R. Maguire, Marc A. Weinstein, Neil J. Oxford und/oder Dustin P. Schmid, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York 10004-1482, Vereinigte Staaten
vertreten durch RAe Boris Frederiksen und Kirsten Marie Donato, Vester Farimagsgade 23, 1606 Kopenhagen, Dänemark

gegen

1.  **Ackview Solo 401K Plain**,
2.  **AGD Asset Management Pension Plan**,
3.  **Aerovane Logistics LLC Roth 401(K) Plan**,
4.  **Aventus Capital LLC Solo 401K Plan**,
5.  **und weitere Beklagte**,

Beklagte

betreffend **Edition bzw. Zeugeneinvernahme (Forderung)**

- 2 -

**17. Januar 2023**           **Einvernahme der Zeugin**

Isabelle Salomone

Anwesend:     Vizepräsidentin lic. iur. S. Büeler
Gerichtsschreiberin MLaw L. Stewart-Smith
Auditorin MLaw A. Dürmüller

Frau C. John als amtlich bestellte Englisch- sowie Französisch-Dolmetscherin

Erschienen:    Die Zeugin, Frau Isabelle Salomone, Stv. Direktorin der Zweigniederlassung Société Générale, Paris, Zweigniederlassung Zürich, in Begleitung von Dr. iur. J. F. Götz Gallenkamp (Zweigniederlassung Société Générale, Paris, Zweigniederlassung Zürich)

Rechtsanwalt lic. iur. D. Hofmann und Rechtsanwältin MLaw K. Arnesson, namens und mit Vollmacht für die Editionsadressatin

Rechtsanwältin lic. iur. S. Giroud, Rechtsanwalt lic. iur. D. Elmiger, Rechtsanwalt MLaw A. Santen, namens und mit Vollmacht für die Klägerin (Schweizer Rechtsvertretung)

Rechtsanwalt N. Oxford, Rechtsanwalt M. A. Weinstein sowie Rechtsanwältin E. Pamukcu (zugeschaltet per Videoübertragung), für die Klägerin (US-amerikanische Rechtsvertretung)

Rechtsanwalt B. Frederiksen und Rechtsanwältin A. Ch. Kjaer Egholm, für die Klägerin (Dänische Rechtsvertretung)

Rechtsanwalt N. Bahnsen (zugeschaltet per Videoübertragung), für John Van Merkensteijn und weitere Beklagte (US-amerikanische Rechtsvertretung)

Stenografin Frau Ch. Myerly

Videograf Herr J. Rivera

(Die Einvernahme findet in den Räumlichkeiten von Lalive SA, Stampfenbachplatz 4, 1. Stock, 8042 Zürich statt.)

(RA D. Elmiger reicht zuhanden des Protokolls zwei Anwesenheitslisten als act. 61/1-2 zu den Akten.)

     i.f.

(RA D. Elmiger stellt ein Gesuch um Zustellung des Gerichtsprotokolls nach dessen Ausfertigung.)

(Beginn der Einvernahme: 14.00 Uhr.)

(Die Vizepräsidentin begrüsst die Erschienenen und stellt die Gerichtsbesetzung vor.)

(Die Dolmetscherin wird auf die strafrechtlichen Folgen einer wissentlich falschen Übersetzung im Sinne von Art. 307 StGB und der Verletzung des Amtsgeheimnisses im Sinne von Art. 320 StGB aufmerksam gemacht.)

(Die Zeugin sowie die weiteren Anwesenden erklären, die Dolmetscherin zu verstehen.)

(Die Vizepräsidentin stellt zuhanden der Zeugin und des Protokolls fest, wer im Raum anwesend ist.)

(Die Personalien der Zeugin, Frau Isabelle Salomone, wohnhaft Mönchhofstrasse 8, 8802 Kilchberg ZH, werden überprüft und von dieser als zutreffend bestätigt. Auf Nachfrage hin erklärt die Zeugin, dass sie am 16. Juni 1973 geboren worden und ihr Heimatort Zürich sei. Die Zeugin gibt an, dass sie seit dem Juni 2022 in der Abteilung Security Services der Société Générale arbeite.)

(RA D. Elmiger wendet ein, dass bereits die Befragung zur Person auf Video aufgezeichnet werden müsse, damit die Aufzeichnung sämtlicher Zeugenaussagen gewährleistet sei. Die Vizepräsidentin erklärt, dass weitere Fragen zur Person nach der rechtlichen Belehrung der Zeugin erfolgen würden.)

(Die Vizepräsidentin erläutert das heutige Prozessthema und die Prozessgeschichte des vorliegenden Rechtshilfeverfahrens.)

(Die Vizepräsidentin weist die Parteien darauf hin, dass die Einvernahme auf Tonträger sowie mithilfe eines Videografen auf Video aufgezeichnet sowie per Video übertragen werde. Sodann werde mithilfe einer Stenografin ein englisches

- 4 -

Protokoll erstellt. Zudem werde gerichtsseitig ein Gerichtsprotokoll erstellt. Da die Einvernahme auf Tonträger aufgezeichnet werde, werde das Gerichtsprotokoll der Zeugin nicht zur Unterzeichnung vorgelegt.)

(RA D. Elmiger stellt Anträge zum Ablauf der heutigen Zeugeneinvernahme, die insb. aus US-amerikanischer Perspektive für das weitere Verfahren relevant seien. RA D. Elmiger beantragt, dass

1.   die Rechtsbelehrung der Zeugin auf Video aufgezeichnet werde;

2.   der Wortlaut der in den deutschen und englischen Versionen des Rechtshilfeersuchens enthaltenen Definitionen und Fragen vorliegend als massgebend gelte und die Fragen nicht frei auf Deutsch und Englisch übersetzt würden;

3.   die Begrenzung des sachlichen sowie zeitlichen Umfangs der Fragen gemäss Editionsverfügung [act. 35] einzuhalten sei,

4.   die Begrenzung des sachlichen und zeitlichen Umfangs der Fragen gemäss Editionsverfügung [act. 35] auch bei möglichen Ergänzungsfragen einzuhalten sei;

5.   Einwände gegen mögliche Ergänzungsfragen zu Protokoll genommen würden.)

(Auf Nachfrage hin bestätigt die Zeugin ausdrücklich, die im Rechthilfeersuchen enthaltenen Fragen und die diesbezüglich relevanten Definitionen vorgängig zur heutigen Einvernahme erhalten zu haben.)

(Die Vizepräsidentin hält fest, dass vorliegend einzig für das gegenständliche Hauptverfahren vor dem US-Bezirksgericht für den südlichen Bezirk von New York, USA, Rechtshilfe gewährt werde. Die Interessensabwägung betreffend die durch das Schweizer Bankgeheimnis geschützten Informationen erfolge nur im Zusammenhang mit diesem Zivilverfahren, weshalb allfällige Erkenntnisse nicht in andere Verfahren, namentlich Straf- oder Steuerverfahren, einfliessen dürften.)

(Die Vizepräsidentin macht Ausführungen zum Verhandlungsablauf und hält fest, dass Ergänzungsfragen im Anschluss an die Befragung gestellt werden könnten, wobei diese Möglichkeit

- 5 -

zuerst der Klägerin, hernach der Beklagten und
schliesslich der Editionsadressatin gewährt
werde.)

(Die Zeugin wird von der Vizepräsidentin gebeten,
in der Mitte des Raumes Platz zu nehmen, um die
Videoaufzeichnung der nachfolgenden Zeugenbe-
fragung gewährleisten zu können.)

**Die Zeugin** (auf Befragen):

(Die Zeugin wird zur Wahrheit ermahnt und auf
die strafrechtlichen Folgen einer wissentlich fal-
schen Zeugenaussage gemäss Art. 307 StGB
hingewiesen.)

(Die Zeugin wird darauf hingewiesen, dass sie ge-
mäss Art. 160 Abs. 1 ZPO zur Mitwirkung bei der
Beweiserhebung verpflichtet sei.)

(Der Zeugin werden die Aussageverweigerungs-
rechte gemäss Art. 165 ZPO und Art. 166 ZPO
erläutert. Ferner wird die Zeugin darauf hingewie-
sen, dass ihr auch die im Rechtshilfeersuchen
enthaltenen US-amerikanischen Aussageverwei-
gerungsrechte zustünden:
1.    Aussageverweigerungsrecht betreffend
durch das Anwaltsgeheimnis geschützte Kommu-
nikation, welche im Rahmen einer rechtlichen Be-
ratung erfolgte;
2.    Aussageverweigerungsrecht, falls die Ge-
fahr strafrechtlicher Verfolgung drohe, wobei sich
nur natürliche Personen hierauf berufen könnten,
d.h. namentlich nicht die Société Générale.)

(Der Zeugin werden die Säumnisfolgen gemäss
Art. 167 ZPO erläutert).

(Die Zeugin bestätigt, die vorerwähnten Bestim-
mungen im Rahmen der heutigen Anhörung und
der Zeugeneinvernahme, welche folgen werde,
verstanden zu haben.)

(Die Zeugin ersucht das Gericht, ihr die Erlaubnis
zu erteilen, Auskünfte geben zu dürfen, welche ihr
Berufsgeheimnis bzw. das Bankgeheimnis betref-
fen würden. Die Vizepräsidentin führt aus, dass

- 6 -

das Gericht bereits in der Editionsverfügung vom
12. April 2022 [act. 35] eine Interessensabwä-
gung vorgenommen habe, wobei das Interesse
an der Wahrheitsfindung das Berufs- bzw. Bank-
geheimnis überwiege. Die Vizepräsidentin weist
weiter darauf hin, dass diese Interessensabwä-
gung bei Ergänzungsfragen jeweils erneut ge-
macht werde.)

> Welche Position hatten Sie bei der Société Générale wäh-
> rend des massgeblichen Zeitraums vom 1. Januar 2014
> bis 30 August 2015 inne?

Während dieser Periode war ich Relationship Manager bei der Abteilung Security
Services. Hierbei handelt es sich um die Abteilung für Wertschriften der Société
Générale in Zürich.

> Haben Sie eine Beziehung zur Klägerin?

Nein, ich stehe in keiner Beziehung zur Klägerin. Meinen Sie dabei eine persönli-
che Beziehung zur Klägerin?

> Ja:

Nein, ich habe keine persönliche Beziehung zur Klägerin.

> Haben Sie eine persönliche Beziehung zu irgendeinem /
> irgendeiner der Beklagten?

Nein.

> Haben Sie Vorstrafen?

Nein.

(Die Vizepräsidentin hält eingangs fest, dass die
nachfolgenden Fragen des ersuchenden Gerichts
im Lichte der massgeblichen Definitionen im
Rechthilfeersuchen zu verstehen seien.)

i.f. *[signature]*

- 7 -

Kennen Sie die Definitionen?

Die aus unserer Sicht wichtigsten Definitionen sind die Definitionen der Verwahrer sowie die Liste der Unternehmen. Die Recherchen der Société Générale haben ergeben, dass nur ein Unternehmen während des betroffenen Zeitraums in Frage kommt.

(Auf erneute Nachfrage der Vizepräsidentin bestätigt die Zeugin, dass sie die Definitionen kenne und bei allfälligen Unklarheiten nachfragen werde.)

(Die Vizepräsidentin hält fest, dass sich die nachfolgenden Fragen nur auf den massgeblichen Zeitraum vom 1. Januar 2014 bis 30. August 2015 beziehen würden.)

(Die Vizepräsidentin hält zuhanden der Dolmetscherin fest, dass sie sich an den genauen Wortlaut der englischen Version des Rechtshilfeersuchens zu halten habe und anschliessend frei ins Französische übersetzen könne.)

a)   Welcher Art ist ggf. die Beziehung zwischen der Société Générale und den Verwahrern?

Während des massgeblichen Zeitraums bestand eine Beziehung zu einem Verwahrer der Liste. Die Beziehung bestand darin, dass Wertschriftendienstleistungen seitens der Abteilung Security Services der Société Générale geleistet wurden.

b)   Welche Dienstleistungen hat die Société Générale ggf. gegenüber den Verwahrern in Verbindung mit der Verwahrung der dänischen Wertpapiere für die Verwahrer erbracht?

Keine.

- 8 -

        i.    Welche Dienstleistungen wurden bei der Eröffnung von Konten für die Verwahrer erbracht?

Während des massgeblichen Zeitraums wurden keine Dienstleistungen erbracht, die in Verbindung mit den dänischen Wertpapieren stehen.

        ii.    Welche Dienstleistungen wurden bei der Führung der Konten für die Verwahrer erbracht?

Mit Bezug auf die Verwahrung von dänischen Wertpapieren wurden im genannten Zeitraum keine Dienstleistungen erbracht.

        iii.    Welche Dienstleistungen wurden bei der Schliessung der Konten für die Verwahrer erbracht?

Mit Bezug auf die Verwahrung von dänischen Wertpapieren wurden für die Verwahrer keine Dienstleistungen erbracht.

        iv.    Wurden gegenüber den Verwahrern besondere Dienstleistungen in Verbindung mit der Verwahrung der dänischen Wertpapiere für die Verwahrer erbracht?

Es wurden keine Dienstleistungen für die Verwahrer erbracht, die in Verbindung mit dänischen Wertpapieren stehen.

        c)    Was weiss die Société Générale darüber, ob die Verwahrer dänische Wertpapiere hielten?

Nein, wir wissen es nicht.

        i.    Was weiss die Société Générale über die Art und Weise, in der die Verwahrer dänische Wertpapiere kauften?

Ich habe keine Kenntnis über einen Kauf von dänischen Wertpapieren seitens des Verwahrers.

i.f.

- 9 -

> Sie haben ausgeführt, dass Sie keine Kenntnis davon hät-
> ten, obschon die Frage lautet, ob die Société Générale et-
> was wisse. Können Sie uns erklären, ob Sie nur für sich
> persönlich oder auch für die Société Générale sprechen
> können?

Ich spreche im Namen der Société Générale.

> ii.    Was weiss die Société Générale über die Art und
> Weise, in der die Verwahrer ansonsten dänische Wertpa-
> piere erhalten haben?

Nein.

> d)    Was weiss die Société Générale darüber, ob die
> Verwahrer Dividenden für das Eigentum an dänischen
> Wertpapieren erhielten?

Wir wissen nichts.

> i.    Welche Einzelheiten kennt die Société Générale be-
> züglich des Erhalts dieser Dividenden?

Wir haben keine Kenntnisse über Dividenden und wir haben keine Informationen
über Dividenden, die von dänischen Wertpapieren herrühren.

> ii.    Was weiss die Société Générale darüber, wer die
> Letztbegünstigten dieser Dividenden waren?

Ich habe keine Informationen zu den Verwahrern. Wir hatten keine dänischen
Wertpapiere bei uns. Es gab keine Dividenden und ich habe keine Informationen
zu den Letztbegünstigten. Hierbei spreche ich im Namen der Société Générale
und nicht aus meiner persönlichen Sicht.

(Die Vizepräsidentin erklärt, dass die nachfolgen-
den Fragen e) und f) des Rechtshilfeersuchens
aufgrund der Tatsache, dass keine Unterlagen

i.f.

- 10 -

ediert worden seien, ihres Sinnes entleert worden
seien, aber dennoch gestellt würden.)

> Kann die Société Générale Dokumente, die gemäss Zif-
> fer 11 vorgelegt wurden, beglaubigen, wenn erforderlich?

(RA D. Hofmann wendet ein, dass nicht klar sei,
was mit "beglaubigen" gemeint sei und merkt an,
dass es sich bei der Editionsadressatin nicht um
eine Notarin handle.)

(Auf Nachfrage, ob RA D. Elmiger eine Antwort
auf diese Frage geben könne, bittet er um einen
kurzen Unterbruch zwecks Besprechung.)

(RA D. Elmiger erklärt, die Frage e) wie folgt um-
formulieren zu wollen: "Liegen der Société
Générale irgendwelche Dokumente vor, die sie
entsprechend der Ziffer 11 produzieren könnte?".
Frage f) sei hernach wegzulassen. Auf Nachfrage
der Vizepräsidentin bestätigt RA D. Elmiger, Do-
kumente zu meinen, zu deren Edition die Société
Générale mit der Editionsverfügung des hiesigen
Gerichts aufgefordert wurde.)

> Kann die Société Générale Dokumente einreichen, wie
> dies vom hiesigen Gericht gemäss Editionsverfügung
> [act. 35] inkl. alle darin enthaltenen Definitionen verlangt
> wurde?

Sind damit Dokumente betreffend die dänischen Wertpapiere sowie Dividenden,
die aus diesen Wertpapieren herrühren, gemeint?

> Sind Unterlagen verfügbar, welche unter die Editions-
> pflicht gemäss Editionsverfügung des hiesigen Gerichts
> [act. 35] fallen?

Es tut mir leid, ich bin nicht sicher, ob ich die Frage korrekt verstanden habe. Ich
habe das Dokument nicht im Kopf. Wir hatten keine dänischen Wertpapiere und

i.f.

- 11 -

somit hatten wir keine entsprechenden Dokumente. Wir haben auch keine Dividenden für dänische Wertpapiere ausbezahlt, weswegen wir auch über keine entsprechenden Dokumente verfügen.

(Die Vizepräsidentin hält fest, dass die Frage damit aus ihrer Sicht beantwortet sei, weswegen zu den Ergänzungsfragen übergegangen werde.)

Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:

Guten Tag Frau Salomone. Sie haben ausgesagt, dass Sie nur für einen Verwahrer auf der Liste Dienstleistungen erbracht hätten. Wer war dieser Verwahrer?

Das war Solo Capital Partners LLP.

Auf Vorhalt von act. 43 [exhibit 5365] sowie auf Ergänzungsfrage von Rechtsanwalt N. Oxford:

Kennen Sie dieses Dokument?

Ja.

Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:

Können Sie mir bitte mitteilen, was es ist?

Das ist ein Dokument von Walder Wyss Rechtsanwälte, welches im Rahmen von diesem Verfahren erstellt wurde. Dieses Dokument wurde auf der Basis von Informationen, die wir intern erhalten haben, erstellt.

Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:

Können Sie mir mit Bezug auf Ihre Arbeit bei der Société Générale sagen, ob der Inhalt des vorgehaltenen Schreibens stimmt?

Ja.

Auf Ergänzungsfrage von Rechtsanwalt N. Oxford:

Können Sie mir erklären, welche Dienstleistungen, wenn

i.f.

- 12 -

> es welche gab, die Société Générale für Solo Capital
> Partners LLP erbracht hat?

(Mit Verweis auf das Rechtshilfeersuchen wendet
die Vizepräsidentin ein, dass die Frage sowie die
Antwort nur den massgeblichen Zeitraum vom
1. Januar 2014 bis 30. August 2015 betreffen
dürften.)

Wie ich bereits erklärt habe, erbrachten wir keine Dienstleistungen im Zusammen-
hang mit dänischen Wertpapieren. Wir hielten jedoch jene Titel, die in Randzif-
fer 8 des Schreibens von Walder Wyss Rechtsanwälte [act. 43] aufgelistet sind.

(Keine weiteren Ergänzungsfragen der Klägerin.)

(Rechtsanwalt N. Bahnsen, zugeschaltet per Vi-
deoübertragung, ergreift das Wort und erklärt, er
vertrete John Van Merkensteijn und weitere Be-
klagte.)

> <u>Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:</u>
> Hat die Société Générale in ihren heutigen Antworten be-
> treffend dänische Wertpapiere auch Dividendenpapiere
> berücksichtigt?
>
> <u>Recte [Einwand von RA D. Hofmann zur Übersetzung]:</u>
> Hat die Société Générale in ihren heutigen Antworten be-
> treffend dänische Wertpapiere auch Aktien berücksich-
> tigt?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(Rechtsanwalt N. Oxford erklärt auf Nachfrage,
dass der Einspruch nur der Form halber und zu-
handen des US-amerikanischen Hauptverfahrens
erfolgt sei.)

(Die Vizepräsidentin wendet ein, dass die Ergän-
zungsfragen und entsprechenden Antworten stets



- 13 -

die massgebende Zeitperiode [1. Januar 2014 bis
30. August 2015], die Verwahrer sowie die däni-
schen Wertpapiere gemäss den Definitionen der
Editionsverfügung [act. 35] betreffen müssten.)

Hat sich Herr Bahnsen in seiner Frage auf die 28 Aktien bezogen, deren Namen
wir erhalten haben?

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Geht die Société Générale mit Bezug auf diese 28 Unter-
> nehmen davon aus, dass auch Swaps zu den Wertpapie-
> ren gehörten, die man hätte untersuchen sollen?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Swap Produkte gehören nicht zu den Wertpapieren, welche die Société Générale
Security Services in Zürich erlaubt zu verwahren.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Haben Sie auch Optionen in Bezug auf die gelisteten Un-
> ternehmen berücksichtigt?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Optionen werden von der Société Générale Security Services in Zürich nicht zur
Verwahrung zugelassen.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Haben Sie Contracts for Difference (CfDs) berücksichtigt?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Nein. Contracts for Difference werden von der Société Générale Security Services
in Zürich nicht zur Verwahrung zugelassen.



- 14 -

Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:

Haben Sie Informationen darüber, ob ein anderer Partner der Société Générale diese Produkte akzeptiert?

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

(RA D. Hofmann wendet ein, dass diese Frage zu weit gehe. Die Vizepräsidentin wendet ein, dass diese Frage nicht zugelassen werden könne, da vorliegend nur der Gegenstand des Rechtshilfeersuchens sowie dessen sachliche und zeitliche Umschreibung Prozessthema sei.)

Auf Vorhalt von act. 43 [exhibit 5365], Randziffer 10 lit. c) und auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:

Besteht bei der Société Générale irgendeine Verbindung zwischen dem Kunden und den Beklagten gemäss den massgeblichen Definitionen?

(Rechtsanwalt N. Oxford erhebt Einspruch [Objection Form].)

Im massgeblichen Zeitraum zwischen dem 1. Januar 2014 bis 30. August 2015 haben wir keine Verbindung festgestellt. Falls es hilfreich ist, kann ich weiter dazu ausführen, dass wir Untersuchungen gemacht haben, um sicherzustellen, dass keine Zahlungen für dänische Wertpapiere gemacht wurden.

Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:

Ja, aber Sie haben sich auf die Verwahrer beschränkt, meine Frage betraf aber die Beklagten:

Recte [Protokollberichtigungsgesuch von RAin K. Arnesson]: Ja, aber in Ihrer Eingabe [act. 43] haben Sie sich auf die Verwahrer beschränkt, meine Frage betraf aber die Beklagten:



- 15 -

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(Die Vizepräsidentin wendet ein, dass der Konnex
der Frage zu den Verwahrern nicht ersichtlich sei
und die Frage daher nicht zugelassen werde.)

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Ihnen ist aber schon bekannt, dass eine Liste der Beklag-
>
> ten im Rechtshilfegesuch enthalten ist?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(Auf Nachfrage bestätigt Rechtsanwalt N. Bahn-
sen, dass die Ergänzungsfrage an die Zeugin ge-
richtet sei.)

> Auf Ergänzungsfrage der Vizepräsidentin:
>
> Kennen Sie den Anhang mit den Beklagten?

Ich habe die Liste nicht auswendig in meinem Kopf. Bei der Beantwortung der

Fragen des Gerichts habe ich mich nur auf das bezogen, was ich weiss. Könnten

Sie die Frage bitte konkreter formulieren?

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Wurde die Société Générale dazu aufgefordert, darüber
>
> zu recherchieren, ob "Pensions-Beklagte" [gemeint: be-
>
> klagte Pensionskassen] Konten bei der Société Générale
>
> haben?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Die Société Générale Security Services in Zürich hatte in der massgeblichen Zeit-

periode nur sehr wenige Kunden, die von den Wertschriftendienstleistungen profi-

tiert haben. Es waren damals nur etwa 40 Kunden, wobei der grösste Teil zur

- 16 -

Gruppe dazu gehörte. Andere, wenn es dann welche gegeben hätte, wären ein-
fach zu finden gewesen. Wir haben keinen Kunden, der mit dieser Angelegenheit
in Verbindung steht.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Nur zur Klarstellung meinerseits: Sie bezogen sich auf
> "diese Angelegenheit". Nehmen Sie damit Bezug auf das
> Rechtshilfeersuchen?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

Ja, ich spreche mit Bezug auf die Angelegenheit, die uns heute zusammenbringt.

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Sie haben ausgesagt, die Société Générale habe nur die
> Solo Capital Partners LLP identifizieren können. Andere
> Verwahrer habe die Société Générale nicht gehabt.
> Stimmt das?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(Die Vizepräsidentin führt aus, dass es nur um die
vier Verwahrer gemäss Definition im Rechtshil-
feersuchen gehe. Die Zeugin dürfe die Frage im
Rahmen der erwähnten Definition beantworten.)

(Die Zeugin wünscht die Wiederholung der Frage
durch Rechtsanwalt N. Bahnsen, worauf dieser
angibt, die Frage leicht abzuändern.)

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
> Konnte die Société Générale in ihren Recherchen, abge-
> sehen von den vier soeben genannten Verwahrern, wei-
> tere Einheiten als Verwahrer ausfindig machen?



- 17 -

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(Die Vizepräsidentin erklärt, dass es im Rechtshil-
feverfahren nur um die vier Verwahrer gehe. Die
Société Générale habe keine Pflicht, darüberhin-
ausgehende Fragen zu beantworten. Die Frage
werde demnach nicht zugelassen.)

> Auf Ergänzungsfrage von Rechtsanwalt N. Bahnsen:
>
> Was die Beziehung von Société Générale zu Solo Capital
>
> Partners LLP anbelangt: Gab es hier Einschränkungen
>
> mit Bezug auf die Möglichkeit für Solo Capital Partners
>
> LLP, Konten bei anderen Institutionen zu haben?

(Rechtsanwalt N. Oxford erhebt Einspruch [Ob-
jection Form].)

(Die Vizepräsidentin erklärt, dass diese Frage
nicht zugelassen werde. Die Ergänzungsfragen
müssten zwingend einen Bezug zu den däni-
schen Wertpapieren haben. Die Definitionen ge-
mäss Rechtshilfeersuchen und der Editionsverfü-
gung des Gerichts seien dabei zwingend zu be-
rücksichtigen.)

(Die Vizepräsidentin macht Ausführungen zur gel-
tenden Rechtslage in der Schweiz und dem Be-
weisausforschungsverbot.)

(Rechtsanwalt N. Bahnsen erklärt, keine weiteren
Fragen zu haben.)

(Keine weiteren Ergänzungsfragen der Beklag-
ten.)

(RAin K. Arnesson stellt ein Protokollberichti-
gungsgesuch. Sie erklärt, dass die nicht zugelas-
sene Ergänzungsfrage betreffend die Randzif-
fer 10 lit. c) [gestellt durch Rechtsanwalt N. Bahn-
sen] falsch übersetzt worden sei. Auf Deutsch sei
übersetzt worden, dass sich die Zeugin in ihrer
Aussage auf die Verwahrer beschränkt habe. Die
Frage habe sich aber darauf bezogen, ob sich die

i.f.

- 18 -

Société Générale in ihrer Eingabe [act. 43] auf die
Verwahrer beschränkt habe.)

(RA D. Hofmann fügt an, zuhanden des Protokolls
festhalten zu wollen, dass es der Société
Générale ein Anliegen gewesen sei, innerhalb der
Vorgaben des Gerichts zu kooperieren und
Transparenz zu schaffen. Dies in der Hoffnung,
dass die Kooperation geschätzt werde.)

(Keine weiteren Anmerkungen.)

(Die Zeugin erklärt, auf eine Entschädigung [Art.
160 Abs. 3 ZPO] zu verzichten.)

(RA D. Elmiger erklärt, dass das englische Tran-
skript zwischen den Parteien zirkuliert werde, da-
mit diese Einsicht nehmen und allfällige Kommen-
tare anbringen könnten. Hernach werde diese
Möglichkeit auch der Zeugin gewährt.)

(Die Vizepräsidentin bittet um Zustellung der End-
version des englischen Transkripts.)

(Ende der Einvernahme: 16.10 Uhr.)

(Die Dolmetscherin wird für ihre Bemühungen mit
Fr. 765.– vorab aus der Gerichtskasse entschä-
digt.)

i.f.

Die Vizepräsidentin:

Die Gerichtsschreiberin:

Lalive et Associés
Etude d'Avocats
Case postale 6569
1211 Genève 6



REÇU

02 FEV

**Bezirksgericht Zürich**
Postfach
**8036 Zürich**