CONFIDENTIAL
Isabelle Salomone - January 17, 2023

```
 1            UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF NEW YORK

 3      _____
                                        )
 4      In re                           )
                                        )
 5      CUSTOMS AND TAX ADMINISTRATION  )   Master Docket
                                        )
 6      OF THE KINGDOM OF DENMARK       )   18-MD-2865 (LAK)
                                        )
 7      (SKATTEFORVALTNINGEN) TAX       )
                                        )
 8      REFUND SCHEME LITIGATION        )
                                        )
 9                                      )
                                        )
10      This document relates to:       )
                                        )
11      All cases                       )
        _____)

12

13

14

15            C O N F I D E N T I A L

16

17

18            VIDEO EXAMINATION OF

19            ISABELLE SALOMONE

20            Zürich, Switzerland

21            Tuesday, January 17, 2023

22            2:00 p.m. (CEST)

23

24

25      Reported by: CHRISTINE MYERLY
```

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1

2

3

4

5                    VIDEO EXAMINATION OF

6

7                       ISABELLE SALOMONE

8                      Zürich, Sqitzerland

9                   Tuesday, January 17, 2023

10                      2:00 p.m. (CEST)

11

12      Examination of ISABELLE SALOMONE,(via Interpreter)

13                          held at:

14                     Offices of LALIVE SA

15                     Stampfenbachplatz 4

16                     Zürich, Switzerland

17

18                  And WebEx via New York, NY

19

20      Pursuant to agreement, before Christine Myerly,

21                      Court Reporter

22

23

24

25

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

```
1       TRIBUNAL

2       S. BÜLLER, JUDGE(via Interpreter)

3       L. STEWART-SMITH, REGISTRAR

4       A. DÜRMÜLLER, SECRETARY

5

6

7       A P P E A R A N C E S

8       Attorneys for Azalea, et al

9       KOSTELANETZ & FINK

10      250 Greenwich Street

11      New York, NY 10007

12      Via VTC

13      BY: NICHOLAS H. BAHNSEN, ESQ.

14      Attorneys for SKAT

15      HUGHES, HUBBARD & REED

16      One Battery Park Plaza

17      New York, NY 10004

18      BY: NEIL OXFORD, ESQ.

19      MARC WEINSTEIN, ESQ.

20      Via VTC

21      ERIN PAMUKCU, ESQ.

22      LALIVE SPA

23      Stampfenbachplatz 4

24      Zürich, Switzerland 8006

25      BY: SANDRINE GIROUD
```

```
 1    A P P E A R A N C E S
          (CONTINUED)
 2

 3    DOMINIK ELMIGER(via Interpreter)

 4    ANDRÉ SANTEN

 5    Attorneys for Acorn Capital

 6    HANAMIRIAN LAW FIRM

 7    40 E. Main Street

 8    Moorestown, NJ 08057

 9    Via VTC

10    JOHN M. HANAMIRIAN, ESQ.

11    Attorneys for Société Générale, Paris, Zurich Branch

12    WALDERWYSS(Outside Counsel/Witness)

13    Seefeldstrasse 123

14    Zürich, Switzerland 8034

15    DIETER HOFMANN(via Interpreter)

16    KERSTIN ARNESSON

17

18    ALSO PRESENT:

19    Jose Rivera, Videographer

20    Clarissa John, Interpreter

21    Richard Markowitz, Defendant

22    Boris Frederiksen, KPS

23    Dr. Anne Kristine K. Egholm, KPS

24    Dr. J.F. Götz Gallenkamp(Inhouse Counsel Société

25    Générale, Paris, Zurich Branch)
```

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

```
1                        EXAMINATION

2

3    Examination                                    PAGE

4     By The Tribunal                                 12

5     By Mr. Oxford                                   19

6     By Mr. Bahnsen                                  22

7

8

9                    *     *     *     *     *

10

11

12                    E X H I B I T S

13

14    EXHIBITS

15     5365 - WalderWyss Letter July 4, 2022        20

16

17

18                    *     *     *     *     *

19

20

21

22

23

24

25
```

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

```
 1                  (On the record at 2:02 p.m.)

 2

 3                  JUDGE BÜLLER:  So we are going to

 4      translate into English first and then into French.

 5                  I would like to welcome to this proceeding

 6      between SKAT and different Defendants and witnesses.

 7                  So I would like to present to you the

 8      Court.  The minute writer is Madame Smith, then

 9      auditor is Madame Dürmüller, then the single Judge

10      is Madame Büller.  Yes, and I am the interpreter,

11      Clarissa John.  I must respect Article 307, 320,

12      keep confidential all the information and translate

13      faithfully.

14                  So, we have already a list of all the

15      persons present in this room, and later we will have

16      the names of all the people which are online with us

17      will be given to us.

18                  So, next to Mr. Oxford we have

19      Mr. Elmiger, Madame Giroud, Mr. Weinstein, Mr.

20      Santen, Mr. Frederickson, Madame Anne Egholm.

21                  MR. ELMIGER:  English.

22                  THE WITNESS:  So, I am working for Bank

23      Société Générale.  And since June '22, I am in the

24      Department at Securities Services.  And I was born

25      16 of June '73, and my place of origin is Zürich.
```

```
 1              MR. ELMIGER:  English.

 2              INTERPRETER:  So, the request was that she

 3    sits in the middle of the room for better hearing.

 4    Afterwards, she will be asked to sit in the middle.

 5              JUDGE BÜLLER:  Short introduction

 6    regarding the topic of today.  So, we are doing this

 7    hearing with our testimony on the request within the

 8    framework of request for judicial assistance sent by

 9    the District Court of New York.

10              And the Plaintiff is asking for this

11    procedure the refund of tax refunds which were

12    requested illicitly.

13              In April 12 of last year, we asked Société

14    Générale to send different files to us, and on the

15    4th of July they responded that they have no files

16    which fall under the legislation which makes

17    mandatory the sending of these files.

18              Although this is the situation, the

19    Claimant, or the Plaintiff, asked to make this

20    hearing with the testimony.  And I would like to

21    point out that everything that is going to be said

22    in this room will be recorded from -- from the

23    Court, and also a video will be recorded, and the

24    stenographer is also writing down everything that is

25    going to be said.  And the Court is editing the
```

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1   minutes afterwards on the basis of the tapes

2   recorded, not now.

3           MR. ELMIGER:  We only have some

4   organizational remarks regarding this hearing.

5           So, the legal information for our

6   testimony is very important, also the consequences

7   regarding false information are very important.  And

8   this should also be recorded.  And that it is

9   important that we stick to the wording of the

10  request for judicial assistance sent to the Court in

11  its original version.

12          And it is important that the Court sticks

13  to the facts as written down in the request for

14  legal assistance, and also sticks to the period

15  mentioned in this request for legal assistance.

16          And also when the Parties are asking

17  questions, they should limit themselves to the facts

18  and the period mentioned in the request.  And also

19  when a response is given to these questions, those

20  should also stick to the period and the facts

21  mentioned in the request.

22          And is it correct that the Witness has

23  received the relevant questions and information

24  before coming to this hearing?

25          JUDGE BÜLLER:  So, I suppose that you

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1     received definitions and the questions before coming

2     here?

3                THE WITNESS:  Yes.  We read the letter

4     sent to Société Générale, and we are also aware of

5     the definitions.

6                JUDGE BÜLLER:  Two preliminary remarks

7     from my side.

8                So, it is important for me to underline

9     that we give this legal assistance for the main

10    proceedings at the Court in New York.  Because we

11    evaluated the balance between the bank

12    confidentiality and the information that we

13    received, and we want to point out that these

14    informations cannot be used within criminal

15    procedure or within a procedure of where its tax

16    refunds are the main topic.

17               So, all the information given here is for

18    the civil procedure in New York and not for criminal

19    or tax procedure.

20               So, first we are going to ask the Witness

21    the questions as they are written down in the

22    request for legal assistance.  Then the Claimant can

23    ask additional questions, and then the Defendant can

24    ask.

25

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1          So, Madame Salomone, you are here as a

2     witness today.  So, I just want to point out that

3     you must say the truth.  And if intentionally you

4     give false informations, in accordance to Article

5     307 of the Criminal Procedure, you can be punished

6     with up to five years of imprisonment or a fine.

7          And I want to point out that as Article

8     160 of the Civil Procedure says, you are -- it is

9     mandatory for you to give information.

10         Then I must point out to you that

11    according to Article 165 and 166 of the Code of

12    Civil Procedure, there is a right to refuse to

13    testify in cases of family relationship,

14    relationship by marriage, spouses, life partners, as

15    well as in the case of official and professional

16    secrecy.

17         And the same is with regard to questions

18    that would represent a disadvantage for yourself or

19    a family member, member of the family of your

20    husband, so same enumeration as before.

21         I also need to point out the right of the

22    Witness not to answer the questions which are in the

23    request for judicial assistance.  It is -- under the

24    laws of the United States, a party has privilege to

25    refuse to disclose the contents of the confidential

1   communications between that party and the attorney

2   that was made for the purpose of obtaining legal

3   advice.

4           Then the second is United States law also

5   recognizes a testimonial privilege for individuals

6   against criminal self-incrimination.  This privilege

7   does not apply to production of documents by an

8   entity, such as Société Générale.

9           THE WITNESS:  Yes.

10          JUDGE BÜLLER:  And also, I must point out

11  that under Swiss law, if you refuse to collaborate

12  with the Court, you can be punished with a fine or

13  be enforced to give an answer.

14          THE WITNESS:  Yes.

15          JUDGE BÜLLER:  Did you understand all

16  this?

17          THE WITNESS:  So, I hope I understood

18  everything and -- within the framework of the

19  hearing to come.

20          JUDGE BÜLLER:  Is there any other

21  question?  Because you said that you think you

22  understand, so do you have a question?

23          THE WITNESS:  I would like to ask from the

24  Court, with regard to my professional

25  confidentiality, an authorization from the Court to

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1    give an answer.

2             JUDGE BÜLLER:  You mean with regard to the

3    bank confidentiality?

4             THE WITNESS:  Yes.  My professional

5    confidentiality, and the bank confidentiality.  Yes.

6             JUDGE BÜLLER:  Yes, we have already

7    considered these interests in our decision.  With

8    regard to the questions in the request for legal

9    assistance, the interest in establishing the truth

10   takes precedence over banking and professional

11   secrecy.  In the case of follow-up questions, the

12   Court will clarify this again for each question

13   individually.

14            THE WITNESS:  Thank you.

15                     EXAMINATION

16   BY JUDGE BÜLLER:

17            Q.      So, what was your position between

18   the 1st January 2014 and 30 August 2015?

19            A.      So, during this period I was the

20   relationship manager in the department Securities

21   Services.  It is the department for securities at

22   Société Générale in Zürich.

23            Q.      How do you relate to the -- if you

24   relate to this -- the other party at all, how do you

25   relate to the Claimant?

```
 1              A.      No, I have no relationship with

 2      the Claimant.  Do you mean personal relationship?

 3              Q.      Yes.

 4              A.      No, I have no personal

 5      relationship with the Claimant.

 6              Q.      Do you have a personal

 7      relationship with any of the defendants?

 8              A.      No.

 9              Q.      Do you have any entries in your

10      criminal records?

11              A.      No.

12              Q.      Well, we pass to the questions of

13      the request for legal assistance.  And it is really

14      important that you answer these questions in the

15      sense of the definitions as they are written down in

16      the request for legal assistance.

17              A.      It is good.  Yes.  Fine.

18              Q.      I suppose you are aware of the

19      definitions?

20              A.      Yes.  The most important

21      definition for us was the definition of Custodian.

22      And the result of -- and the list of the companies.

23      And our research has shown that only one company is

24      concerned within the mentioned period.

25              Q.      So, actually my question was only
```

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1    if you are aware of the definitions, if you remember

2    those, or if you want me to read them out loud again

3    for you.

4              A.      I read the definitions.  And if

5    necessary, I will ask the Court to read them out

6    loud again for me.

7              Q.      Again, I want to point out that in

8    all my questions, I only refer to the period between

9    January 1st, 2014 until August 30, 2015.

10             Good.  So, we read out loud the questions

11   which are written down in the request for legal

12   assistance.  The Judge is reading them out in

13   German, I am in English, and then I translate it

14   into French for the witness.

15             What is the nature of the relationship, if

16   any, between Société Générale and the Custodians?

17             A.      So, in the mentioned period, the

18   relationship with one Custodian on the list

19   consisted in giving security services from the

20   department Securities Services.

21             Q.      What services, if any, were

22   provided by Société Générale to Custodians in

23   connection with custodying any Danish securities for

24   the Custodians?

25             A.      None.

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

```
 1                Q.       We pass to four sub questions.
 2                What services were provided to the
 3      Custodians in opening accounts?
 4                A.       You mean the question before
 5      regarding Danish securities?
 6                Q.       Yes.  The question before, what
 7      services were provided, if any, were provided by
 8      Société Générale to Custodians in connection with
 9      the custodying any Danish securities for the
10      custodians.
11                And the first sub question is, what
12      services were provided to Custodians in opening
13      accounts?
14                A.       None.  No services with regard to
15      the mentioned period in connection with the
16      custodying of Danish securities.
17                Q.       Second sub question.  What
18      services were provided to Custodians in the
19      maintenance of accounts?
20                A.       With regard to the custodying of
21      Danish securities, no services were provided in the
22      mentioned period.
23                Q.       Third sub question.  What services
24      were provided to Custodians in the closing of
25      accounts?
```

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1          A.      So, again, with regard to the

2     custodying of Danish securities, no services were

3     provided to the Custodian.

4          Q.      Fourth sub questions.  Were

5     special services provided to Custodians in

6     connection with custodying any Danish securities for

7     the Custodians?

8          A.      There was no service provided to

9     the Custodians in relation with Danish securities.

10          Q.      Next question.  What is Société

11     Générale's knowledge of whether Custodians held any

12     Danish securities?

13          A.      No, we don't know.

14          Q.      So, we have another two sub

15     questions regarding this question.  First sub

16     question.  Does Société Générale know anything about

17     the manner in which Danish Securities were handled

18     by the custodians?

19          A.      I have no knowledge of any

20     purchase of Danish securities by the Custodian.

21          Q.      You said, I have no knowledge.

22     Are you talking about the personal knowledge, or are

23     you talking in the name of the Société Générale?

24     Maybe you can precise.

25          A.      I speak in the name of Société

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1      Générale.

2              Q.      Second sub question.  Does Société

3      Générale know anything about the manner in which

4      Danish Securities were handled by the custodians?

5              A.      No.

6              Q.      Next question.  What is Société

7      Générale's knowledge of whether the Custodians

8      received dividends from the ownership of Danish

9      securities?

10             A.      We don't know anything.

11             Q.      Here we also have two sub

12     questions.  What details does Société Générale have

13     concerning the receipt of such dividends?

14             A.      We had no dividends and we had no

15     information about dividends resulting from Danish

16     securities.

17             Q.      Second sub question.  What is

18     Société Générale's knowledge of who were the

19     ultimate beneficiaries of those dividends?

20             A.      As I said, I have no information

21     concerning the Custodians, and there were no Danish

22     securities with us.  And I have no knowledge about

23     dividends, and I have no knowledge -- no information

24     regarding beneficiaries.  And my answer concerns --

25     I speak in the name of Société Générale, and not

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1    personally.

2                    Q.      Well, then we have questions E and

3    F, which I think have been emptied of their sense as

4    no documents have been produced.  However, I will

5    ask them anyway.  Can Société Générale authenticate

6    any documents provided pursuant to paragraph 11, if

7    necessary?

8                    MR. HOFMANN:  I just would like to know

9    what do you mean with authenticate as Société

10   Générale is not a public notary.

11                   JUDGE BÜLLER:  Do you have an answer?

12                   MR. ELMIGER:  Actually, I would like to

13   ask if we can use a different wording.  I mean, if I

14   can ask if Société Générale could edit documents

15   pursuant to paragraph 11, and then this question

16   would be void.

17   BY JUDGE BÜLLER:

18                   Q.      So, you mean that you just want to

19   ask if there are documents as per the disclosure

20   order, and you mean that we can then also skip

21   question F.  Yes.

22                   So, can you answer the question, if

23   Société Générale can just deliver documents as the

24   decision from the Court is requesting it?

25                   A.      So, you mean documents regarding

1      Danish securities and Danish dividends resulting

2      from the securities?

3              Q.      Yes.   The question is, if you can

4      deliver documents as the disclosure order is saying

5      it?

6              A.      So, I am not sure if I understood

7      the question.   And I don't have the document to

8      which you refer in my mind.

9              So, we had no Danish securities, and

10     therefore, we have no documents regarding these

11     Danish securities.  And we have not paid any

12     dividends, and hence, we have no documentation

13     regarding the payment of such dividends.

14             JUDGE BÜLLER:  So, I think this question

15     is answered.   And we pass now to the questions from

16     the Parties.

17                        EXAMINATION

18     BY MR. OXFORD:

19             Q.      Thank you, Your Honor.   Good

20     afternoon, Ms. Salomone.

21             You mentioned that Société Générale

22     provided services to only one of the Custodians

23     mentioned in the letter of request, which was that

24     one Custodian?

25             A.      It is Solo Capital Partner LLP.

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1          Q.      Ms. Salomone --

2          JUDGE BÜLLER:  Can I see it first?  Do you

3     have a second.   Thanks.

4        (Exhibit 5365 was marked for identification.)

5     BY MR. OXFORD:

6          Q.      Ms. Salomone, I have handed you

7     what I have marked in our litigation as Exhibit

8     5365.  Do you recognize this document?

9          A.      Yes.

10          Q.      Can you tell me what it is,

11     please?

12          A.      This is a document edited from

13     WalderWyss.  I imagine it was handled in the context

14     of this procedure.  This is a document which was

15     edited within the framework of the proceedings on

16     the ground -- based on the information gathered

17     internally.

18          Q.      Based on your work on behalf of

19     Société Générale in responding to SKAT's letter of

20     request, is the letter that I put in front of you,

21     Exhibit 5365, accurate?

22          A.      Yes.

23          Q.      Can you tell me, please, what

24     services, if any, Société Générale provided to Solo

25     Capital Partners?

```
1              JUDGE BÜLLER:  You only refer to the
2    period we have already mentioned several times,
3    January 1st, 2014 until August 30, 2015?
4              MR. OXFORD:  Yes.
5         A.      And the question was?
6              JUDGE BÜLLER:  The question was --
7         A.      What services --
8    BY MR. OXFORD:
9         Q.      What services, if any, did Société
10   Générale provide to Solo Capital Partners?
11        A.      As I already said before with
12   regard to Danish securities, there were no services
13   provided.  As the document says, services with
14   regard to the hold of securities -- and I talk about
15   the titles mentioned on the paragraph number eight.
16        So, there were no services but we were
17   holding titles -- there were no services for Danish
18   securities, but we had in our deposit titles which
19   are listed on the paragraph number eight.
20             MR. OXFORD:  Thank you.  I have no further
21   questions at this time.
22             JUDGE BÜLLER:  Good.  So, we pass to
23   additional questions from the side of the defense.
24             MR. BAHNSEN:  Hello.  Bon jour, Madame.
25   Good afternoon everybody.  This is Nicholas Bahnsen
```

```
 1    on behalf of John van Merkensteijn, and a number of
 2    other Defendants.  Is everybody able to hear me
 3    okay?
 4              MR. OXFORD:  Yes.
 5              MR. BAHNSEN:  Thank you very much.
 6              JUDGE BÜLLER:  One second.  We have to
 7    translate everything.
 8              Okay.  You can go on.
 9                        EXAMINATION
10    BY MR. BAHNSEN:
11              Q.     Thank you.  I have a few questions
12    about Société Générale's responses today.
13              Can we start, did Société Générale include
14    securities when it responded to the question about
15    whether there were interests in Danish securities?
16    Excuse me.  Let me start over.
17              Did Société Générale include equities in
18    its understanding of Danish securities in responding
19    to these requests?
20              MR. OXFORD:  Objection to form.  Objection
21    to form.
22              JUDGE BÜLLER:  Do you want to me to
23    elaborate on this?
24              MR. OXFORD:  No.  My objection is simply
25    to the form of the question to preserve my objection
```

```
1      for US purposes.

2      BY MR. BAHNSEN:

3              Q.      Madame Salomone, if you understand

4      the question, you may answer it.

5              JUDGE BÜLLER:  But please always refer to

6      the period we mentioned, and to our Custodians, and

7      to the securities we are talking about today.

8              A.      Well, in your question referred to

9      the 28 equities where -- from which the name was

10     given to us --

11     BY MR. BAHNSEN:

12             Q.      In considering those particular

13     companies, did Société Générale understand swaps to

14     be part of the securities it was asked to look into?

15             MR. OXFORD:  Objection to form.

16             A.      So, swap products do not belong to

17     the securities accepted for deposit at Société

18     Générale Securities Services in Zürich.

19             JUDGE BÜLLER:  Do you have other

20     questions?

21             MR. BAHNSEN:  Yes.

22     BY MR. BAHNSEN:

23             Q.      Did you consider options with

24     respect to the listed companies?

25             MR. OXFORD:  Objection to form.
```

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1          A.      So, options do not belong to the

2   securities accepted by Société Générale Securities

3   Services in Zürich to be deposited with us.

4   BY MR. BAHNSEN:

5          Q.      Did you consider contracts for

6   difference?

7          MR. OXFORD:  Objection to form.

8          A.      So, no contract for difference is

9   accepted by Société Générale Securities Services in

10  Zürich for deposit.

11  BY MR. BAHNSEN:

12         Q.      Would you have any information

13  about whether another part of Société Générale

14  accepts those various products?

15         MR. OXFORD:  Objection to form.

16         JUDGE BÜLLER:  Unfortunately, we cannot

17  allow this questions because we only refer to the

18  facts and the definitions of the judicial assistance

19  request.

20  BY MR. BAHNSEN:

21         Q.      I will move on.  If you would

22  please, take a look at the document that Mr. Oxford

23  handed to you and was marked Exhibit 5365.  I will

24  direct your attention to paragraph 10, sub part C.

25  Please let me know when you have reviewed it.

| | |
|---|---|
| 1 | JUDGE BÜLLER:  Okay. |
| 2 | A.       Yes. |
| 3 | BY MR. BAHNSEN: |
| 4 | Q.       Did Société Générale attempt to |
| 5 | find any connection between the customer referenced |
| 6 | here and any Defendant identified in the definitions |
| 7 | to the request for assistance? |
| 8 | MR. OXFORD:  Objection to form. |
| 9 | A.       So, with regard to the period we |
| 10 | refer to, I mean 1st January 2014 until August 30, |
| 11 | 2015, we have not identified any connection. |
| 12 | And if it would help, I can elaborate on |
| 13 | this.  We have done research, as described in the |
| 14 | letter, in order to be sure that no payment was done |
| 15 | for Danish securities. |
| 16 | BY MR. BAHNSEN: |
| 17 | Q.       I just want to make sure I |
| 18 | understand you.  The written response is limited to |
| 19 | Custodians, and my question had to do with |
| 20 | Defendants.  Do you understand that distinction? |
| 21 | MR. OXFORD:  Objection to form. |
| 22 | JUDGE BÜLLER:  I do not allow this |
| 23 | question as we here, we only refer to the connection |
| 24 | with the Custodians and not to the connection with |
| 25 | the Defendants. |

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

```
1              MR. BAHNSEN:  Okay.

2              JUDGE BÜLLER:  Are there further

3    questions?

4              MR. BAHNSEN:  Yes.  Sorry, I was just

5    letting the translations complete.

6    BY MR. BAHNSEN:

7         Q.      So, you are aware that there is a

8    list of Defendants attached to the request for

9    assistance, correct?

10             MR. OXFORD:  Objection to form.

11             JUDGE BÜLLER:  Is this actually a question

12   to the Court or to the Witness?

13             MR. BAHNSEN:  This is to the Witness.

14             JUDGE BÜLLER:  So, do you know this list

15   with the Defendants?

16        A.      Well, I don't know this list by

17   heart.  I just refer to what I know when I responded

18   to the Court.  Could I have a more precise question?

19   BY MR. BAHNSEN:

20        Q.      Was Société Générale asked to

21   investigate whether any pension plan Defendant held

22   accounts at Société Générale?

23             MR. OXFORD:  Objection to form.

24             MS. ARNESSON:  I understood the question

25   as to whether Société Générale was also asked to
```

```
 1      research whether pension plan maybe you could --
 2                JUDGE BÜLLER:  Just for the translation,
 3      could you please repeat your question.
 4      BY MR. BAHNSEN:
 5                Q.     Of course.  Was Société Générale
 6      asked to investigate whether any pension plan
 7      Defendant held accounts at Société Générale?
 8                MR. OXFORD:  Objection to form.
 9                A.     So, the Société Générale
10      Securities Services in Zürich had in the period we
11      are referring to very few clients for these security
12      services in the mentioned period.
13                We only had about 40 clients, and most of
14      them were in the group.  And the others, if there
15      were any, would have been easy to find.  So, we had
16      no client connected to this affair.
17      BY MR. BAHNSEN:
18                Q.     You used -- I am sorry.
19                JUDGE BÜLLER:  Do you have any other
20      questions?
21      BY MR. BAHNSEN:
22                Q.     Just a clarification.  On the last
23      answer, you said, With respect to this affair.  I
24      want to understand, do you mean with respect to the
25      request for assistance?
```

1              MR. OXFORD:  Objection to form.

2              A.      Yes, I speak in connection with

3       the topic that brings us together here today.

4       BY MR. BAHNSEN:

5              Q.      Just a few more.  I promise.

6              You stated that Société Générale only had

7       a relationship with Solo Capital Partners LLP, and

8       it identified no other Custodian, correct?

9              MR. OXFORD:  Objection to form.

10             JUDGE BÜLLER:  So, I just want to point

11      out that in this proceeding we only refer to Old

12      Park Lane Capital PLC, Solo Capital Partners LLP,

13      Telesto Markets LLP, and West Point Derivates Ltd,

14      and the affiliated companies.

15             A.      Can you please repeat the

16      question?

17      BY MR. BAHNSEN:

18             Q.      I am going to rephrase it

19      slightly.  Apart from the four entities that the

20      Court just identified, did Société Générale

21      investigate any other entities as Custodians in the

22      context of this request?

23             MR. OXFORD:  Objection to the form.

24             JUDGE BÜLLER:  So, we do not allow this

25      question because we only refer today to these four

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1    entities.  And Société Générale has no obligation

2    to -- with regard to other entities to answer the

3    question.

4    BY MR. BAHNSEN:

5              Q.     So, with respect to the

6    relationship between Société Générale and Solo

7    Capital Partners LLP, was there any restriction on

8    Solo Capital Partners' ability to have accounts at

9    other institutions?

10             MR. OXFORD:  Object to the form.

11             JUDGE BÜLLER:  I do not allow this

12   question.  I would like to point out to you that we

13   are here only with to the Danish securities as

14   defined in the Court order and in the request for

15   legal assistance.  We have very hard restrictions

16   here in Switzerland, and we do not allow you to

17   investigate further on this case.

18             Otherwise, I would end this hearing now if

19   you do not stick to the order and the legal

20   request -- the request for judicial assistance.

21             Do you have further questions?

22             MR. BAHNSEN:  No.  With that understanding

23   of the Court's position on the limitations of

24   today's testimony, I have no further questions.

25   Thank you very much.

1          JUDGE BÜLLER:  Thank you so much.  Do you

2    have a question of other Defendant representatives?

3                 (Pause.)

4          JUDGE BÜLLER:  No other Defendant

5    representatives want to ask questions?

6                 (Pause.)

7          So, we continue.

8          MR. ELMIGER:  Can you please translate?

9          MS. ARNESSON:  I try.  The question was

10   regarding a follow up question from Mr. Bahnsen,

11   where I understood that he referred to the

12   understanding in the submission dated the 4th of

13   July 2022.  I am sorry, I don't recall the exhibit

14   number that you referred to.

15         In there, he asked a question that the

16   submission is just referring to Custodians and not

17   to the Defendant.  And in the German translation of

18   the follow up question, it was translated that the

19   Witness made the limitation to the Custodian.  And

20   it was not translated that it was in the submission

21   that this limitation was made.

22         MR. BAHNSEN:  I am sorry.  Is the question

23   for me then?

24         JUDGE BÜLLER:  This was just for the

25   minutes and the persons present in this room.

```
1              MR. BAHNSEN:  I apologize for the
2    intrusion.
3              JUDGE BÜLLER:  No problem.
4              MR. HOFMANN:  So, I just would like to
5    point out that Société Générale would like to note
6    that they have cooperated fully, within the
7    guidelines of the Court, and have created
8    transparency in this matter.  And I just -- I wanted
9    to out this.  And I hope that you appreciate this
10   cooperation.
11             JUDGE BÜLLER:  So, we are at the end of
12   this witness hearing.  I just want to ask Madame
13   Salomone if she wants a refund for the journey?
14             THE WITNESS:  No, I do not insist on a
15   refund.  It was important to serve here as a
16   witness.  Thank you very much.
17             MR. ELMIGER:  I just would like to mention
18   that the transcript, which will be edited, will
19   circulate between the Parties, which can add
20   comments to it, and also the Witness will have the
21   possibility to receive this transcript.
22             (Court reporter clarification.)
23             INTERPRETER:  He (indicating Mr. Elmiger)
24   said that the Witness can also make comments, and
25   the Judge said that the Court would also like to
```

CONFIDENTIAL
Isabelle Salomone – January 17, 2023

1     have a version.

2                 JUDGE BÜLLER:   Thank you.   So, this

3     hearing is closed.

4                 I thank the organizers for the excellent

5     organization.   And thank you, Madame Salomone, for

6     coming here.

7                            (Off the record.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL
Isabelle Salomone - January 17, 2023

1               CERTIFICATE OF COURT REPORTER

2          I, Christine Myerly, do hereby certify that

3     I took the stenotype notes of the foregoing

4     examination and that the transcript thereof is a

5     true and accurate record transcribed to the best of

6     my skill and ability.

7          I further certify that I am neither

8     counsel for, related to, nor employed by any of

9     the parties to the action in which this deposition

10    was taken, and that I am not a relative or

11    employee of any attorney or counsel employed by

12    the parties hereto, nor financially or otherwise

13    interested in the outcome of the action.

14          Dated this 19th day of January, 2023.

15

16

17

18

19

20

21

22

23          _Christine Myerly_

24    _____

25    Christine Myerly