**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKAT) TAX REFUND SCHEME LITIGATION | Consolidated Multidistrict Action<br><br>Docket No. 1:18-md-02865-LAK |
| SKATTEFORVALTNINGEN,<br><br>                    PLAINTIFF<br><br>        V.<br><br>ANTHONY MILES SINCLAIR,<br><br>                    DEFENDANT. | This document relates to:<br>1:23-cv-02917-LAK |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant, Anthony Miles Sinclair ("Defendant" or "Sinclair"), by and through counsel, respectfully submits this Reply in Support of his Motion to Dismiss the Complaint filed by Plaintiff, Skatteforvaltningen ("Plaintiff" or "SKAT"), for failure to state claims upon which relief may be granted. Although this Court determined that Plaintiff sufficiently stated claims against other defendants in this multi-district litigation, Plaintiff has failed to do so with respect to Sinclair, despite having the opportunity to investigate the facts since 2018. Plaintiff's Complaint is devoid of any allegation that Defendant made fraudulent misrepresentations to it. Instead, Plaintiff attempts to hold Defendant accountable for the alleged wrongful actions of Roger Lehman ("Lehman") by invoking an *alter ego* theory of liability that fails under applicable Ohio law.[1]

### I.        *Plaintiff Did Not Plead Its Fraud Claim With Particularity or Include Sufficient Factual Material to Proceed on an Alter Ego Theory of Liability*

---

[1] "While in the MDL, the action generally remains subject to the substantive law and choice of law rules to which it would have been subject in the transferor court." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1380 (U.S. Jud. Pan. Mult. Lit. 2020). Thus, the issues raised in Defendant's Motion are subject to Ohio law.

The Complaint describes a pattern of alleged unlawful conduct committed by non-parties to this action in furtherance of a purported scheme to defraud Plaintiff. *See* DE #1, ¶¶ 24-66. Specifically, it asserts that Lehman, the Authorized Representative of four Pension Plans created by Defendant, made fraudulent representations to Plaintiff in order to obtain tax refunds that the Pension Plans were not entitled to receive. *Id.* The Complaint further claims that the Payment Agent, Syntax, made fraudulent representations to Plaintiff at Lehman's direction, and that the Broker-Custodian provided allegedly false information about the Pension Plans' stock ownership. *Id.*, ¶¶ 58, 61. However, there is no indication that Defendant held any of these positions that supposedly made fraudulent representations or provided false information to Plaintiff. There are also no factual allegations suggesting that Defendant executed any of the purported fraudulent documents, or that he knew Lehman and these other entities intended to do so. The Complaint only alleges that Defendant created the Pension Plans and their associated limited liability companies, that he was the sole participant in the Pension Plans, that the Pension Plans were associated with Defendant's home address, and that Defendant executed Limited Power of Attorney documents that appointed Lehman as Authorized Representative for three of the Pension Plans. *Id.*, ¶¶ 53-54. None of these facts establish that Defendant was involved in the alleged fraudulent conduct.

Plaintiff tries to compensate for this deficiency by making several allegations upon information and belief. For instance, the Complaint asserts that, "[u]pon information and belief, Sinclair was introduced to the scheme by non-party Kevin Lehman, the brother of Roger Lehman, who recruited Sinclair along with two other of his friends." *Id.*, p. ¶ 56. While "Plaintiffs may plead fraud based on information and belief, [ ] the complaint must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations." *Sanderson v. HCA-The Healthcare Co*., 447

F.3d 873, 878 (6th Cir. 2006) (internal quotations omitted). Absent such assertions, Plaintiff has not satisfied the elements of fraud under Ohio law. *See Rheinfrank v. Abbott Labs., Inc.*, 119 F. Supp. 3d 749, 787 (S.D. Ohio 2015), *aff'd*, 680 F. App'x 369 (6th Cir. 2017) (unpublished) (quoting *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000)); *see also Gentile v. Merck & Co., Inc.*, Case No. 2:19-cv-4174, 2022 WL 1084883, at *1 (S.D. Ohio Apr. 11, 2022) (noting that "Rule 9(b) requires that allegations of fraud or mistake must state with particularity the circumstances constituting fraud or mistake"). Plaintiff's Complaint does not sufficiently set forth a factual basis for the belief, for the reasons noted above.

Plaintiff seems to concede that the Complaint does not allege specific conduct by Defendant. Instead, Plaintiff insists that such allegations are unnecessary because "Sinclair is liable for his plans' fraudulent misrepresentations under the *alter ego* doctrine." *See* DE 14, p. 5. Ohio law recognizes the *alter ego* theory of liability, but provides that a Court may only disregard the corporate form under the following circumstances: (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act or a similarly unlawful act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *Ackison Surveying, LLC v. Focus Fiber Sol., Inc.*, Case No. 2:15-CV-2044, 2017 WL 958620, at *3 (S.D. Ohio March 13, 2017); *see also Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993); *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 545 (Ohio 2008).

"Each of these bases is an independent ground of recovery that must be specifically pleaded." *Id.* (noting that a parent company is generally not liable for the acts of its subsidiaries).

"When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to the heightened pleading requirements of Rule 9(b)." *MedChoice Fin., LLC v. ADS Alliance Data Sys., Inc.*, 857 F. Supp. 2d 665, 676 (S.D. Ohio 2012) (citing *Ruffing v. Masterbuilt Tool & Die, LLC*, No. 08-1264, 2009 WL 185950, at *14 (N.D. Ohio Jan. 2009) ("A plaintiff who seeks to satisfy the *Dombroski-Belvedere* test by alleging fraud must meet the heightened pleading requirements imposed by Rule 9(b).")); *see also Ackison*, 2017 WL 958620, at *2 (reaching the same conclusion); *Cleveland Thermal Steam Distrib., LLC v. Carlyle Leader, LLC*, No. 1:14-CV-02709, 2015 WL 206550, at *4 (N.D. Ohio May 4, 2015) (stating the same principle). *But see Bestway Sys., Inc. v. Am. Int'l Grp., Inc.*, Case No. 1:04-CV-01374, 2005 WL 8166123, at *2 (N.D. Ohio Nov. 8, 2005) (deciding that the plaintiff did not have to plead an alter ego theory of liability with Rule 9(b) specificity).

The Complaint does not include sufficient facts to establish the existence of an *alter ego* relationship between Defendant and the Pension Plans, particularly under the heightened pleading standard applicable under Ohio law. The Complaint does not state that Plaintiff is attempting to proceed under an *alter ego* theory of liability, and again, it contains scant factual material relating to Defendant's actions. The fact that Defendant created the Pension Plans and associated LLCs does not, standing alone, suffice to overcome the general presumption that parents are not liable for the activities of their subsidiaries. *See Dombroski*, 895 N.E. 2d at 545. The allegations that Defendant was the sole participant in the Pension Plans, and that the Pension Plans were associated with his home address, are not enough to establish that Defendant exercised complete control over the Pension Plans, such that they had no mind, existence, or will of their own. In fact, Plaintiff's own allegations suggest that Defendant did not have that level of control over the Pension Plans, as Lehman was the one allegedly manipulating the Pension Plans to obtain improper refunds.

4

Plaintiff also attempts to analogize Defendant's circumstances to those of other Defendants in this multidistrict litigation, in which the Court found that Plaintiff had sufficiently pleaded *alter ego* liability. According to Plaintiff, "[t]he MDL Court rejected the same argument from defendant Crescenzo, who SKAT alleged formed 15 companies for the purpose of participating in the fraud, holding that SKAT pleaded sufficiently his 'individual liability' for the associated plans' misrepresentations under 'the *alter ego* doctrine.'" *See* DE #14, p. 5 (quoting *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 321-23 (S.D.N.Y. 2019)). With respect to Crescenzo, the Court stated:

> At this stage of the litigation there are a number of open questions regarding incorporator control of the Aria Plan and others that concern the nature of Crescenzo's relationship to the authorized representative and the plans and the degree to which Crescenzo controlled or possibly shared control of the plans. If indeed Crescenzo shared control of the plans, then alter ego liability may not lie. But because the plaintiff has pleaded a set of facts, accepted as true, that state a plausible claim for relief, the motion to dismiss is denied.

*In re SKAT*, 356 F. Supp. 3d at 321-23.

This passage highlights some critical distinctions between Crescenzo and Defendant. First, it appears that the Court did not evaluate the allegations against Crescenzo under the heightened standard that courts sitting in Ohio have applied to *alter ego* assertions, which means that Plaintiff had a lower hurdle to clear in order to state its claim. Additionally, Plaintiff alleged that Crescenzo dissolved all fifteen of those companies on the same date, suggesting that he maintained control throughout their existence. The Court also seemed to express doubt about his relationship to the authorized representative. Here, by contrast, Plaintiff's own allegations place the focus squarely on Lehman and indicate that he—not Sinclair—was pulling the strings with respect to the Pension Plans. Thus, the Court's ruling as to Crescenzo does not dictate the same result as to Sinclair.

Plaintiff's attempt to rely on a ruling concerning another Defendant, Burns, is similarly inapposite. While the Court found that Burns was the alter ego of the Raubritter pension plan that he established, its finding rested upon allegations that Burns was the sole participant in the plan and the authorized person for the plan's sponsor. *In re SKAT*, 18-md-2865 (LAK), 18-cv-4833 (LAK), 2021 WL 2689908, at *6 (S.D.N.Y. 2021). Burns also executed the General Partnership Agreement to facilitate the submission of tax refund claims to SKAT. In that instance, SKAT alleged facts suggesting that Burns knowingly and actively participated in the purported scheme, an inference that was further supported by the fact that "Raubritter" means "robber baron" in German. *Id.* Again, the allegations against Burns are distinguishable from those at issue here, and do not control the result as to Sinclair.

Plaintiff also argues that the "complaint pleads that Sinclair authorized Roger Lehman to act as his agent in submitting the fraudulent refund applications to SKAT." *See* DE #14, p. 7. This is an inaccurate recitation of the allegations in the Complaint. Plaintiff only pleads that Defendant executed Limited Powers of Attorney for three of the Pension Plans, which allowed Lehman to act as the Authorized Representative of the Pension Plans. Stated another way, Plaintiff only alleges that Lehman was the agent of the Pension Plans – not Sinclair. Plaintiff attempts to gloss over this distinction by arguing that its "pleading plausibly alleges that Lehman was an agent of both Sinclair and the plans because Sinclair directed and controlled Lehman's submission of the refund applications." *Id.* However, this argument only works if Sinclair is the alter ego of the Pension Plans, and Plaintiff has not sufficiently alleged that, for the reasons stated above. Because Plaintiff has not pleaded fraud against Defendant with particularity, either directly or under an alter ego theory of liability, the claim fails.

### II. Plaintiff's Unjust Enrichment Claim Fails Because It Did Not Sufficiently Plead That Defendant Received a Benefit or Knew That He Was Receiving a Benefit from It

As noted in Defendant's initial Motion, the Complaint fails to state a claim for unjust enrichment because there are no facts alleging that Defendant received any money from the refunds allegedly paid to the Pension Plans or that Defendant knew he was receiving a benefit from Plaintiff. In its Response, Plaintiff insists that it "specifically alleges that the plan's payment agent Syntax, on receiving SKAT's payments, 'distributed the proceeds to other participants in the fraud,' and Kevin Lehman distributed some of those proceeds to Sinclair." *See* DE #14, p. 9 (citing DE #1, ¶¶ 11, 56). However, Paragraph 11 only asserts that Syntax "distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives." *See* DE #1, ¶ 11. In this case, the "claimants" are the Pension Plans, and the Authorized Representative is Lehman – not Sinclair. While Paragraph 56 does claim that, "[u]pon information and belief, Kevin Lehman then utilized a conduit entity to disburse the proceeds that these individuals, including Sinclair, received in exchange for their participation," there is no indication that these "proceeds" were actually Plaintiff's funds. *See* DE #1, ¶ 56. Moreover, neither of these allegations establish that Defendant knew he was receiving a benefit from Plaintiff. Plaintiff's unjust enrichment claim therefore fails.

### III.   *Plaintiff's Money Had & Received Claim Also Fails Because It Did Not Sufficiently Plead That Defendant Received a Benefit or Knew That He Was Receiving a Benefit from It*

"Ohio recognizes an action for money had and received when a party to a contract has fully performed and another party has been unjustly enriched thereby." *LRC Realty, Inc. v. B.E.B. Prop*., 166 N.E.3d 37, 41 (Ohio App. 11th Dist. 2020) (quoting *Nat'l City Bank, Norwalk v. Stang*, 84 Ohio App. 3d 764, 766-67, 618 N.E.2d 241 (6th Dist. 1992)); *see also Hummel v. Hummel*, 133 Ohio St. 520, 526, 14 N.E.2d 923 (1938). "The action is an equitable action, based not on the

contract but on a moral obligation to make restitution where retention of benefits bestowed would result in inequity and injustice." *Id*.

The Complaint does not include any allegations that fit the framework of a money had and received claim, as outlined in multiple Ohio cases. There are no assertions that Plaintiff had a contract with Defendant, that Plaintiff performed under the contract, that the contract was later determined to be invalid, and that Defendant retained a benefit because of Plaintiff's performance. Plaintiff insists that its claim does not need to fit this pattern, which was described in *LRC* and *Stang*, because *Hummel* itself describes the money had and received claim as a very broad equitable claim. Even so, subsequent Ohio cases seem to have limited the money had and received claim to this limited factual scenario, and Plaintiff does not point to any cases that suggest it should apply in a situation such as this one. Moreover, even if a money had and received claim is not limited in the manner suggested by *LRC* and *Stang*, Plaintiff has not actually alleged that Defendant received funds from it. Thus, Plaintiff's money had and received claim also fails for the same reasons as its unjust enrichment claim.

### IV.    *Plaintiff's Negligent Misrepresentation Claim Fails Because It Does Not Allege Any Misrepresentations Made by Defendant*

Plaintiff's negligent misrepresentation claim fails for the same reasons as its fraud claim. Specifically, the Complaint does not identify any representations made by Defendant to Plaintiff. *See Rheinfrank*, 119 F. Supp. 3d at 787 ("One who, in the course of his business, … supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."). Plaintiff insists that "Sinclair is liable for his authorized agent Roger Lehman's misrepresentations to SKAT made within the scope of his authority to submit the plans' tax refund applications." *See* DE #14,

p. 15. However, as noted above, the Complaint does not actually plead that Lehman was Sinclair's agent. It only alleges that Lehman was the Authorized Representative of the Pension Plans. Because Plaintiff did not sufficiently plead the existence of an alter ego relationship between the Pension Plans and Sinclair, Lehman's misrepresentations cannot be attributed to Sinclair. Thus, its negligent misrepresentation claim fails.

### V.      Plaintiff's Civil Conspiracy Claim Fails for Lack of an Underlying Tortious Act

"Civil conspiracy is defined as 'a malicious combination of two or more persons to injure another person in person or property, in a way not competent for one alone, resulting in actual damage." *Doane v. Givaudan Flavors Corp*., 919 N.E.2d 290, 298 (Ohio App. 1st Dist. 2009) (quotations and citations omitted). "Thus, if there is no underlying tortious act, there is no actionable civil conspiracy claim." *Id*. Plaintiff maintains that it did allege underlying tortious acts, namely, the fraud and negligent misrepresentation claims. *See* DE #14. For the reasons stated above, those claims fail, meaning that Plaintiff has not sufficiently alleged an underlying tortious act to support its civil conspiracy claim. The civil conspiracy claim therefore fails.

Finally, Plaintiff makes a passing argument that "[t]here is no requirement that each coconspirator make their own misrepresentation to be liable for fraud on a civil conspiracy theory." *See* DE #14, p. 12. Even so, the claim still requires allegations of an underlying tort, and Plaintiff has failed to sufficiently plead those allegations. The fact that Plaintiff does not attribute any misrepresentations to Defendant is just one of many flaws in its fraud and negligent misrepresentation claims, as explained in the preceding sections.

Accordingly, for the reasons stated herein, Defendant respectfully requests that the Court grant his Motion and dismiss Plaintiff's Complaint for failure to state claims upon which relief may be granted.

This the 25th day of April, 2023.

Respectfully submitted,

*/s/ Charles E. Dorkey III*
Charles E. Dorkey III
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 905-8330
Email: charles.dorkey@dentons.com

V. Brandon McGrath (awaiting *pro hac* admission)
DENTONS BINGHAM GREENEBAUM LLP
312 Walnut Street #2450
Cincinnati, OH 45202
(513) 455-7641
Email: Brandon.mcgrath@dentons.com

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of April, 2023, I filed the foregoing with the Clerk

of the Court by using the CM/EMF system, which will send an electronic notice of filing to all

parties of record.

Marc A. Weinstein
John McGoey
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Email: marc.weinstein@hugheshubbard.com
        John.mcgoey@hugheshubbard.com

COUNSEL FOR PLAINTIFF

*/s/ Charles E. Dorkey III*
COUNSEL FOR DEFENDANT