DEWEY PEGNO & KRAMARSKY LLP

777 THIRD AVENUE  NEW YORK, NEW YORK  10017

PHONE: (212) 943-9000  FACSIMILE: (212) 943-4325

WWW.DPKLAW.COM

February 7, 2024

**BY ECF**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

      We write on behalf of Defendants in response to SKAT's letter of January 31, 2024 ("SKAT Letter," ECF No. 954) and in further support of Defendants' proposed alternatives to SKAT's trial plan.[1]

      SKAT has at last recognized the obvious: its proposal for an initial trial of 51 cases, involving 63 pension plan defendants, hundreds of trades spanning more than three years, $510 million in alleged damages, and 12 individual defendants is totally unworkable. But its new proposal—an initial trial of the same 51 cases involving the same 63 pension plans,[2] the same trades, the same time period, and the same alleged damages, with the only difference being six

---

[1] The Markowitz and van Merkensteijn Defendants join in this letter as to Sections I, II.A, and II.B, and so much of this preliminary statement as does not contemplate an "issues" trial. The Markowitz and van Merkensteijn Defendants do not join in the remainder of this letter, and do not agree to an "issues" trial as contemplated in Section II.C. Further, while this letter and Defendants' letter of January 24, 2024 ("Opening Letter," ECF No. 953) have been signed and filed by counsel for Michael Ben-Jacob, counsel for Ben-Jacob does not thereby intend to state or suggest that it has adopted the role of lead or coordinating counsel, or that it has authority to speak on behalf of other defendants for any purposes other than these letters.

[2] While SKAT's new proposal excludes some "friends and family" plans as *defendants*, it still seeks to proceed on the same cases against individual defendants with respect to the trading of all 63 plans that were defendants in its original proposal. And this does not include *six additional plans* that are not named as defendants in SKAT's complaints, but for whose trading Ben-Jacob alone has been sued— which is yet another reason why excluding Ben-Jacob from the opening trial would reduce its complexity.

individual defendants instead of 12—exchanges a three-ring circus for a two-and-three-quarters-ring circus, and fails meaningfully to address the many serious legal and practical flaws with such a crowded trial. Nowhere in its many submissions has SKAT cited *any precedent*, from this District or any other jurisdiction, for proceeding in this manner. That is not a coincidence. *See In re Repetitive Stress Injury Litig.* 11 F.3d 368, 373 (2d Cir. 1993) ("The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation.").

SKAT's position is all the more untenable since there are several workable alternatives for which *there are* precedents; indeed, proceeding as Defendants propose and describe below is the norm in a multi-district litigation ("MDL"). *First*, the Court could try the claims against Richard Markowitz, John van Merkensteijn and Robert Klugman—three of the principals involved in the trading—and their plans, as Defendants originally proposed. *Second*, as the Court suggested (ECF No. 951, at 22), the Court could conduct a combined trial of a subset of bellwether cases. Defendants propose a trial of the three bellwether cases involving Markowitz, van Merkensteijn, and Klugman, severing Ben-Jacob. *Third*, as the Court also suggested (ECF No. 951, at 4-5), the Court could conduct an opening issues trial, narrowing the cases by issues rather than parties, and as noted in Defendants' Opening Letter, a trial involving falsity, reliance, and statute of limitations would be a sensible initial grouping.

And SKAT's objections to these proposals are meritless. Indeed, SKAT's primary objection seems to be that additional proceedings would be necessary after the first trial. (*See* SKAT Letter, at 7-8.) That is a feature, not a bug. As the Court recognized in its summary judgment opinion, "rather than run [all potential trials], the idea with bellwether cases is to run a few – and, potentially, use what is learned therefrom to create a settlement structure for the entire mass of cases." (ECF No. 924, at 7) (alterations and quotation marks in original omitted) (quoting 4 Newberg and Rubenstein on Class Actions § 11:11 (6th ed.). SKAT of course does not have any right to try 51 cases at the same time; and, contrary to SKAT's mantra (*see* ECF No. 951, at 5, 8) that this was a "rinse and repeat" scheme, there are significant differences even in the mechanics of trading structures and plans, and very different levels of knowledge and participation among the various Defendants at different points in time. (*See* Opening Letter, at 3-5.) If anything, SKAT's evident eagerness to make unfounded blunderbuss claims underscores that adopting its proposal would be a grave error. *Cf. Zafiro v. U.S.*, 506 U.S. 534, 539 (1993) ("When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.")

I. **THE COURT SHOULD REJECT SKAT'S MODIFIED TRIAL PLAN**

    A. **SKAT's modified proposal does not address the many problems identified in Defendants' Opening Letter**

SKAT makes a modified proposal for the first trial to include all claims against six individuals—Richard Markowitz and his wife Jocelyn Markowitz, John van Merkensteijn and his wife Elizabeth van Merkensteijn, Robert Klugman, and Michael Ben-Jacob—along with dozens of entity defendants. The modified proposal fails to address both the substantial

prejudice and the logistical problems that will result from a consolidated trial, which were described in detail in Defendants' Opening Letter.

SKAT's primary response to the serious and substantial risk of prejudice that results from its proposal is to suggest that Defendants underestimate the Court and jurors' abilities. That is wrong. Defendants have highlighted the unique nature of the 51 cases at issue here—the details of which SKAT overlooks entirely in its response. As described in Defendants' Opening Letter, there are a thicket of complex factual issues specific to each defendant, including what each defendant knew, when they knew it, each individual's intent, whether each plan was "qualified" under U.S. law, the activities of each of the plans' sponsors, and the date on which the statute of limitations ran for each defendant—setting aside the numerous issues unique to Ben-Jacob, described in detail below. (ECF No. 953 at 3-5.) Nor does SKAT even address (much less dispute) that there are substantial differences between (for example) the trading structures Defendants employed, as well as the specifics of the different plans that were involved. (*See* Opening Letter, at 4.) This Court and others have certainly dealt with complex trials, but here the combination of complex facts, numerous defendants, and complicated legal issues all coalesce to create an untenable situation that can only result in unfair prejudice to each defendant if consolidated—even under SKAT's modified proposal.

The cases on which SKAT relies to suggest its modified proposal is just like any other multi-defendant case are readily distinguishable as they involve fewer defendants and vastly simpler fact patterns involving identical chains of allegedly wrongful behavior.[3] The analysis in *United States v. Stein*, 428 F. Supp. 2d 138, 143 (S.D.N.Y. 2006) also differs: there, the primary count involved a claim of a single conspiracy amongst all defendants, which the Court emphasized in denying the severance request. SKAT does not (and cannot) make any such allegation here. Nor do the cases on which SKAT relies involve consolidating anywhere near the volume of cases that are issue here: SKAT's modified proposal urges this Court to consolidate over **50 cases** for trial. As the Supreme Court has recognized, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, th[e] risk of prejudice is heightened." *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993).

---

[3] *See* Third Am. Compl. ¶¶ 9, 14-16, *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies*, 1:21-cv-01317-LAK (S.D.N.Y. Mar. 16, 2022), ECF No. 104 (a three-defendant trial, in which each defendant was an affiliate company of the other, about whether a beverage company could sell hard seltzer with plaintiff's trademark where claims turn on single chain of allegedly wrongful behavior); Superseding Indictment, *United States v. Gatto*, 1:17-cr-00686-LAK (S.D.N.Y. Aug. 4, 2018), ECF No. 170 (a three-defendant trial centering on a conspiracy claim regarding Adidas employees paying families of college recruits to sign with Adidas-sponsored schools and certain financial planners and agents); First Am. Compl., *Infosint S.A. v. H. Lundbeck A/S*, 1:06-cv-02869-LAK-RLE (S.D.N.Y. Sept. 11, 2007), ECF No. 63 (a four-defendant trial consisting of a *single* claim against the defendants for allegedly importing and/or selling a drug covered by a *single* patent owned by plaintiff).

While SKAT suggests its modified proposal will "reduc[e] the logistical challenge of the first trial," (SKAT Letter, at 4), the only way in which it does so is to reduce the number of people who will need to be present in the courtroom. SKAT does not grapple at all with the challenges identified by Defendants inherent in presenting a case involving a highly complex series of trades, the administration of SKAT's refund program since at least 2006, as well as the application of various aspects of Danish law, along with U.S. tax, pension, and securities law.[4] SKAT's refrain that it will use summary exhibits pursuant to Federal Rule of Evidence 1006 to present evidence of the "rinse and repeat" nature of the transactions is not a real solution, and also underscores SKAT's intent to unfairly lump all Defendants together and obscure each Defendant's differing level of involvement in, and knowledge concerning, the ex-dividend trading. As a threshold matter, SKAT's reliance on summary exhibits is, at best, premature given the doubtful admissibility of a substantial portion of the evidence they have signaled they intend to summarize in this manner. SKAT's insistence on summary exhibits here is thus a perfect illustration of the "dangers of a streamlined trial process in which testimony must be curtailed[.]" *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993).

SKAT further tries to obscure this complexity by suggesting that "the jury will not hear from many of the experts and declarants," (SKAT Letter, at 3), but does not identify which experts or issues (other than legal professional responsibility) it intends to drop, or how in practice the testimony of those experts may inform how "the Court will decide issues of U.S. pension law, foreign securities law, attorney professional responsibility, the revenue rule, the Danish statute of limitations, and Danish law concerning ownership," *id.* Notably absent in SKAT's response and modified proposal is any explanation of which experts will testify, practically speaking how any issues for the Court will be decided, or which issues those include. Vague references to the potential for streamlining without concrete examples does not address the fundamental problems and potential for substantial prejudice raised in Defendants' Opening Letter.

Nor does SKAT offer any compelling reason to lump Jocelyn Markowitz and Elizabeth van Merkensteijn into its proposed first trial. Having agreed that *other* "friends and family" of Richard Markowitz and John van Merkensteijn can be tried later, SKAT cannot seriously insist that Mses. Markowitz and van Merkensteijn must be tried together with Messrs. Markowitz and van Merkensteijn. Mses. Markowitz and van Merkensteijn—just like the other "friends and family" defendants—have different pension plans, different knowledge of the relevant facts, and different states of mind. Accordingly, SKAT's proposal continues to promote inefficiency and introduce undue complexity in the context of an already-sprawling and complex matter.

To try to suggest that Defendants' proposed alternatives are inefficient and instead its modified proposal should be adopted, SKAT refers to the risk of "duplicate presentation of evidence" as weighing against separate trials but provides zero support for its argument. (*See*

---

[4] SKAT claims that several of the legal issues identified by Defendants will ultimately be decided by the Court, but ignores the burden placed on the jury of applying such a varied and complicated set of legal instructions to the equally complex evidence.

4

SKAT Letter, at 3-4.)  In any event, if SKAT did not want to face the prospect of presenting duplicative evidence in sequential cases, it should not have filed dozens of different lawsuits across America, but having done so, it can hardly be heard to object that it may need to try more than three cases.  Nor does SKAT address the possibility that proceeding with a bellwether trial, as the Court suggested, may drive resolution, or the possibility that negotiated stipulations may mitigate any potential for duplication across trials.  Duplicative trials are not a foregone conclusion here, but substantial prejudice to defendants from SKAT's modified proposal is.[5]

### B.  Michael Ben-Jacob should be tried separately from Richard Markowitz, John van Merkensteijn, and Robert Klugman

SKAT's Letter entirely fails to address several of the key arguments that necessitate a separate trial for Ben-Jacob—and the arguments that SKAT does address only serve to reinforce the prejudice that all Defendants, and Ben-Jacob in particular, would face in a combined trial.

*First*, SKAT does not respond at all to Defendants' argument that Ben-Jacob would be prejudiced by defending himself in the same trial against both SKAT and his clients.  SKAT aligns itself with Markowitz, van Merkensteijn, and Klugman in asserting that Ben-Jacob "played an integral role" in those defendants' ex-dividend trading, quoting Klugman's deposition testimony that Kaye Scholer, Ben-Jacob's then-law firm, was broadly engaged.  (SKAT Letter, at 4.)  But as Defendants have already explained, that account of Ben-Jacob's role is disputed.  Ben-Jacob's position is that neither he nor the firm were involved in structuring or executing the trading nor were they asked to (and, indeed, could not have) advised on whether the strategy was lawful under Danish law.  Instead, Ben-Jacob's position is that his role was to answer discrete U.S. legal questions within his expertise as a trusts and estates lawyer, connect his clients with other U.S. lawyers at Kaye Scholer when needed (such as when the clients needed corporate formation or pension law advice), and perform and supervise various administrative tasks.

That SKAT will join Markowitz, van Merkensteijn, and Klugman in attempting to establish that Ben-Jacob played a broader role simply illustrates the prejudice that Ben-Jacob would face in being forced to defend himself on two fronts, with his clients serving as an "echo chamber" of SKAT's case in chief, precisely the kind of prejudice that should be avoided through separate trials.  *See U.S. v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991) ("Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant . . . Joinder in these cases can make a complex case seem simple to the jury: convict them both").  SKAT offers no response at all.

And, in the course of describing Ben-Jacob's role, SKAT also falsely asserts that "[a]lthough Ben-Jacob recognized the need for a Danish law opinion in order for a plan to make

---

[5] SKAT further ignores that in Defendants' alternative proposals the "lives of each group of jurors would be imposed upon for a shorter time, there would be a smaller group of defense counsel in each trial with a consequent reduction in trial disputes, the trial judge would have a more manageable task, and the jurors' ability to focus on individual defendants would be enhanced."  *U.S. v. Casamento*, 887 F.2d 1141, 1152 (2d. Cir. 1989).

the representations required for a reclaim application, he assisted the clients in submitting reclaim applications without their obtaining such an opinion." (SKAT Letter, at 4.) This not only misstates Ben-Jacob's testimony, but ignores that his clients had in fact obtained a Danish law opinion supporting the plans' representations—which SKAT obviously knows as it spent hours of deposition time questioning several witnesses about that opinion. Further, SKAT's focus on this point demonstrates that professional responsibility issues will be central to any trial of Ben-Jacob, regardless of whether SKAT calls on expert on this topic.

*Second*, SKAT also leaves unaddressed Defendants' argument that Ben-Jacob will be prejudiced when both SKAT and his clients attempt to conflate his work with the work performed by other lawyers at Kaye Scholer—and in fact SKAT's Letter is rife with indications that it intends to follow just that strategy. The prejudice here stems from Markowitz, van Merkensteijn, and Klugman's position that they relied on the advice of other Kaye Scholer lawyers as part of their defense that they lacked scienter—a defense that SKAT will attack in part by challenging the bases for the advice provided by Ben-Jacob's colleagues. As just one example, SKAT has made much of a memorandum to file prepared by a Kaye Scholer pension lawyer memorializing pension-related advice he provided. While that document may be relevant to Markowitz, van Merkensteijn, and Klugman's defense that they relied on Kaye Scholer pension lawyers' advice with respect to their pension plans, it has nothing to do with the liability of Ben-Jacob, who testified that he had no recollection of ever seeing that document. And it would be highly prejudicial to Ben-Jacob to defend himself in a trial in which SKAT attacked the adequacy of that advice, while at the same time both SKAT and his clients attempt to conflate Ben-Jacob's work with that of the pension lawyer.

*Third*, after completely ignoring Defendants' prejudice arguments, SKAT devotes the bulk of its response to Defendants' position that Ben-Jacob should not be tried with Markowitz, van Merkensteijn, and Klugman to the strawman argument that the criminal "mutually antagonistic" defenses doctrine—a phrase that SKAT surrounds with quotation marks though it appears nowhere in Defendants' letter—does not apply here. But Defendants did not argue that it does: the point was rather that the same prejudice concerns that animate those criminal cases are also present here. And SKAT's efforts to turn two of those criminal cases into support for its own position fail. In *United States v. Villegas*, the "conflicts" advanced by the defendants were not conflicts at all insofar as the jury could have logically believed each of the separate defenses advanced by the various defendants. 899 F.2d 1324, 1346-47 (2d Cir. 1990). And in *United States v. Al Fawwaz*, the court denied an application to sever where the defendant offered no preview of his likely defense and no explanation of how his defense would be antagonistic to that of another. No. S7 98 Crim. 1023 (LAK), 2013 WL 3111043, at *3 (S.D.N.Y. June 20, 2013). Further, SKAT does not contest, because it cannot, that even in the civil context, "[c]ases with major conflicts between the basic trial positions of parties should not be consolidated, at least not without ensuring that no prejudice results." Manual for Complex Litigation (4th ed.), § 11.631 Consolidation; *see Flinkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 464 (S.D.N.Y. 1977) (denying consolidation of two breach of contract cases and noting "consolidation should not be ordered if it would prejudice defendant").

*Fourth*, SKAT's sole response to Defendants' argument that Ben-Jacob's professional duties of loyalty and confidentiality favor severance is that the New York Rules of Professional

Conduct permit a lawyer to reveal confidential information to defend himself against allegations of wrongdoing—which Defendants acknowledged in their Opening Letter. (SKAT Letter, at 4.) But SKAT nowhere addresses Defendants' actual argument that Ben-Jacob should not have to choose between remaining loyal to his clients and fully presenting his own defenses. *See Helie v. McDermott, Will & Emery*, 18 Misc. 3d 673, 685, 852 N.Y.S.2d 701, 709 (Sup. Ct. N.Y. Cnty. 2007) ("The importance of maintaining the delicate balance between the attorney's duty of confidentiality and the attorney's right of self-defense outweighs the additional expense generated from a separate trial of a narrow issue that is one element of plaintiff's liability case against defendants."); *Matter of Cooperman*, 83 N.Y.2d 465, 472 (N.Y. 1994) (recognizing attorney's duty of loyalty to client includes "honoring the client's interests over the lawyer's"). If Ben-Jacob were only called as a witness in a trial against his clients, he would be free to answer the questions posed to him but would not be forced to actively rebut the positions taken by his clients as he would if he appeared as a defendant alongside them. Here, unlike other cases where co-defendants may have differing perspectives on the facts, Ben-Jacob's clients will likely argue that Ben-Jacob's role in the transactions was broad, both directly and in the coordination of the work of other Kaye Scholer attorneys, whereas Ben-Jacob will argue that he had a much more limited role in the transactions, thereby undermining the defense of his clients, in clear tension with his ethical duties. Further, SKAT's protestations that it would be inefficient to try Ben-Jacob separately as he would be a "necessary witness" in a trial involving Markowitz, van Merkensteijn, and Klugman ring hollow as it is highly likely that some or all of the "friends and family" defendants would also need be called as witnesses in the first trial—yet SKAT is now willing to sever them from that trial. (*See* SKAT Letter, at 4.)

*Fifth*, SKAT's assertion that trying Ben-Jacob separately would create the risk of "inconsistent verdicts" is misguided. It would not at all be inconsistent for separate juries to find that none of the defendants acted with scienter, even if one mistakenly (but reasonably) believed that the other was responsible for ensuring the accuracy of the plans' representations to SKAT. The cases cited by SKAT present different situations entirely. (*See* SKAT Letter, at 4-5.) In *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 125-26 (S.D.N.Y. 2000), the risk of inconsistent verdicts lay in a dispute between state and county government defendants over which entity bore ultimate financial responsibility for the plaintiffs' claims in the event plaintiffs established liability—the risk was that plaintiffs could succeed in establishing their claims but that both groups of defendants could escape the responsibility for payment. In *Guaraca v. Cafetasia Inc.*, No. 17-CV-1516 (VSB), 2018 WL 4538894, at *8 (S.D.N.Y. Sept. 20, 2018), plaintiff's claim depended in part on whether he could establish that the four defendants who sought severance from one another were "horizontal joint employers," and separate juries could reach opposing conclusions on that same question of fact based on the same evidence. And in *RDK NY Inc. v. City of New York*, No. 21-CV-1529(EK)(RER), 2023 WL 348467, at *6 (E.D.N.Y. Jan. 20, 2023), the risk of inconsistent verdicts arose when one plaintiff sought severance from other plaintiffs' claims against the same defendant, and separate juries could find the same defendant liable as to one plaintiff but not the others based on the same set of facts.

The problem for SKAT here is that each defendant's mental state must be evaluated separately, and it is not "inconsistent" for separate juries to conclude that separate defendants reasonably formed beliefs that do not exactly align with one another, particularly where, as here,

each of the defendants learned different facts at different times.  The issue that SKAT ignores—as part of its general refusal to engage with any of Defendants' prejudice arguments—is that, in a combined trial in which Ben-Jacob and his clients must put their disputes over the scope of his engagement fully on display, there is a substantial risk that the jury would assume that a culpable mind state must exist somewhere, and not give adequate credence to the possibility that no one in this case acted with the intent to defraud SKAT.

*Finally*, SKAT is unconvincing in its counter to Defendants' arguments that trying Ben-Jacob alongside his clients would be immensely inefficient due to the number of issues unique to Ben-Jacob.  SKAT asserts—for the first time—that it no longer intends to call its supposed "expert" on Ben-Jacob's compliance with the New York Rules of Professional Conduct.  But dropping its expert will not remove professional responsibility issues from the case; indeed, SKAT's own letter lists "professional responsibility" as one of the many issues that it believes the Court will need to address (SKAT Letter, at 3), and both Ben Jacob and, if necessary, other witnesses, including other Kaye Scholer lawyers, are fully prepared to testify on their understanding of their role.  And SKAT is simply wrong that this same evidence would need to be presented in a trial of Markowitz, van Merkensteijn, and Klugman alone.

## II. THE COURT SHOULD ADOPT ONE OF DEFENDANTS' ALTERNATE PROPOSALS

### A. Defendants' initial proposal of an opening trial of Richard Markowitz, John van Merkensteijn, and Robert Klugman and their plans is the best course

All Defendants agree that Defendants' opening proposal of a first trial of all claims against Markowitz, van Merkensteijn, Klugman and their plans—which SKAT does not address in its Letter—remains the best course for fairly and efficiently resolving the claims in this MDL.  (*See* ECF No. 953, at 10-11.)  Indeed, now that SKAT has modified its original proposal, there are few practical differences between SKAT's current proposal and the approach favored by Defendants beyond the inclusion of Jocelyn Markowitz, Elizabeth van Merkensteijn, and Michael Ben-Jacob, who should be excluded from the opening trial for the reasons Defendants have already stated.  SKAT would still be afforded all the efficiencies it claims are to be gained from presenting evidence through summary exhibits.  Moreover, a full resolution of SKAT's claims against those defendants and the plans for which they are the beneficiaries would likely produce subsequent settlements across the MDL (particularly among the nine other defendants SKAT originally sought to try with these three), thus rendering SKAT's concerns of subsequent trials based on duplicative evidence substantially overblown.

### B. The Court's suggested alternative of an opening combined bellwether trial remains superior to SKAT's modified proposal

All Defendants further agree that the Court's suggested course of a combined bellwether trial—which as Defendants explained in their Opening Letter should include *Basalt* (19-cv-01866), *RJM Capital* (19-cv-01898), and *Bareroot* (19-cv-01783) (the latter as a substitute for *Roadcraft*, 19-cv-01812, in light of Ronald Altbach's passing), severing Ben-Jacob—is also superior to SKAT's proposal.

8

SKAT's assertion that this approach "would not result in a more streamlined, more efficient trial" than its proposal is obviously wrong. Defendants' proposal would reduce the number of pension plans at issue from 69 to ***three***. And SKAT does not contest, for example, that the issue of whether each plan falsely represented that it was a "qualified" plan under U.S. law requires an individualized consideration of several factors identified by SKAT's pension law expert, including whether the Plans' sponsoring entities carried on a trade or business, for which there is differing evidence even among these three bellwether plans. (*See* Opening Letter, at 5.) A trial of only three bellwether cases also substantially reduces the difficulty that the jury would face in tracking each defendant's relationship to each of the various plans and the complexity of the summary exhibits SKAT seeks to present.

SKAT's only other argument is that this MDL is different than the mass tort MDLs cited in Defendants' Opening Letter. But SKAT's efforts to distinguish those cases on their facts do not undermine the general benefits of bellwether trials identified by those courts, or their application here. (*See* SKAT Letter, at 7.) That a "bellwether trial allows a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action" and that a single jury's resolution of "a handful of issues on which the litigation primarily turns . . . often facilitates settlement of the remaining claims" is just as true in this MDL as it is in the mass tort context, and the concept applies equally no matter the expected length of the trials. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod.*, No. 1:00-1898, 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007). SKAT cannot seriously believe that, in the event it wins an initial bellwether trial, it would be forced to engage in trial after trial of the same defendants (who, unlike SKAT, do not have functionally unlimited resources to litigate these cases) in order to fully resolve its claims against them.

### C. The Court's suggested alternative of an opening issues trial remains superior to SKAT's modified proposal

Finally, all Defendants other than the Markowitz and van Merkensteijn Defendants identified in Appendix A to Defendants' Opening Letter contend that the Court's suggested alternative of an opening issues trial is also superior to SKAT's modified proposal.[6]

SKAT's only substantive objection is that if it were to succeed in showing that the Solo plans falsely represented that they beneficially owned the shares for which they sought refunds (and, though SKAT does not say this, succeed in demonstrating its reasonable reliance on those representations and avoid dismissal of its claims on statute of limitations grounds), it would still have to establish each defendant's scienter. Of course it would: The point of an opening issues trial is to resolve the issues that Defendants share in common, which are themselves enormously complex, so that the juries in any subsequent trials can focus on the equally complex issues

---

[6] The Markowitz and van Merkensteijn Defendants do not join this section of the letter and reiterate that, while they are not opposed to exploring the possibility of and parameters for an "issues" trial through discussions with SKAT, they are unable to agree at this time whether any particular issue is susceptible to an "issues" trial of the type proposed by other defendants.

9

unique to each defendant, such as scienter.  SKAT's bare assertion that "much of the same evidence" would be presented at both trials is simply inaccurate and ignores the possibilities of negotiated stipulations based on the outcome of an opening issues trial.  SKAT also ignores that it could lose on the issues of reasonable reliance or the statute of limitations, in which case no subsequent trials would be necessary at all.  And SKAT's observation that an issues trial would not produce any efficiencies for the MDL because "any issues of foreign law will be addressed by the Court" is a non-sequitur as the jury will still be tasked with applying foreign law to the evidence.

Nor is SKAT correct that an opening issues trial would not advance settlements.  One of the principal barriers to settlement now is the sheer number of open issues, which make realistic assessments of potential liability difficult for both parties.  Restricting the open issues to those unique to each defendant will allow the parties to make individualized decisions about resolution.

And SKAT's desultory assertion that an opening issues trial would "present the very logistical hurdles Defendants complain about with a joint trial" assumes that all Defendants would need to be present for all phases of an issues trial.  But as the issues trial would only address issues common to all Defendants, the defendants who join in supporting an opening issues trial are confident that an appropriate coverage plan could be devised once the contours of an issues trial were set.  Because each Defendant will not be required to address their own scienter in such a trial, Defendants are in a better position to work together to reach a logistical solution.

\*     \*     \*     \*     \*

For the foregoing reasons, Defendants respectfully request that the Court decline to adopt SKAT's modified proposal for the opening trial in this MDL, and instead order the parties to proceed with one of Defendants' proposed alternatives.

Respectfully submitted,

*/s/ Thomas E.L. Dewey*
Thomas E.L. Dewey

Cc: All counsel of record via ECF