EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>                           Plaintiff,<br><br>                    *v.*<br><br> MICHAEL BEN-JACOB,<br><br>                           Defendant. | Civil Action No. _____<br><br> Honorable _____<br><br> June 16, 2021<br><br> **COMPLAINT**<br><br> **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, alleges against Defendant Michael Ben-Jacob ("**Ben-Jacob**") as follows:

## I.    **INTRODUCTION**

1.      This is an action to hold the Defendant accountable for participating in a scheme to defraud Denmark.  The scheme involved using sham U.S. pension plans to apply to Plaintiff SKAT, the agency of the government of Denmark charged with assessing and collecting Danish taxes, for purported refunds of money withheld from dividends.  The plans represented that they owned shares of Danish public companies, that the companies had paid them dividends on their shares, and that they had suffered a withholding tax on those dividends.  The plans claimed that SKAT should refund the amounts that they had paid or suffered to have withheld on the dividends.  In fact, the plans did not own any shares, had received no dividends, had never suffered any

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT." Pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff changed its legal name to Skatteforvaltningen, effective July 1, 2018.

withholding or incurred any liability to Denmark for any tax, and had never paid the amounts that they claimed as refunds.

2.      Defendant Ben-Jacob is a New York lawyer who worked with members of Argre Management LLC ("**Argre**"), a New York-based business, and with Sanjay Shah ("**Shah**"), a Dubai-based banker, to design the complex scheme.  The purpose of the scheme was to defraud SKAT by using false refund applications by pension plans to obtain large amounts of money from SKAT without purchasing any Danish shares.  Ben-Jacob played a leading role in the scheme.

3.      The scheme was highly lucrative because the plans purported to have massive holdings of Danish shares.  For example, for March 2014, the 30 plans for which SKAT seeks related damages in this complaint (the "**Schedule A Plans**")[2] purported to have purchased more than $21 billion (US) worth of shares in Danish public companies.

4.      The Schedule A Plans submitted many fraudulent applications claiming ownership of companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark, and targeted multiple dividend issuances from each company.  In total, the Schedule A Plans submitted at least 364 fraudulent applications, involving 630 dividends, issued by 13 Danish companies.  SKAT paid the Schedule A Plans approximately $260 million (US) in what it believed at the time were refunds of withholding tax that the Plans had previously paid SKAT.

---

2.      These 30 Plans are listed in Schedule A to this Complaint.  This Schedule also includes (i) the amount paid by SKAT to each plan in Danish Kroner in response to the plan's fraudulent refund applications; (ii) the amount paid by SKAT to each plan in U.S. Dollars in response to the plan's fraudulent refund applications; (iii) the participant(s) in each plan; (iv) the name of the partnership(s) (if any) in which the plan was a partner; (v) the dates on which each of the 30 Plans submitted fraudulent refund applications to SKAT; and (vi) the dates on which SKAT paid those fraudulent refund applications.

5.      Defendant Ben-Jacob designed a partnership structure that allowed the principals of Argre (the "**Principals**" or the "**Argre Principals**")[3] to recruit friends, family members, and colleagues to set up additional plans to submit refund applications to SKAT.  The partnership structure Ben-Jacob designed enabled the Principals to retain control of the plans that the recruits agreed to set up, and to take 90% to 95% of the proceeds that these additional plans obtained from Denmark, after payments to others in the scheme.  Recruits signed the papers necessary to set up one or more sham companies and sham pension plans, and to appoint one of the Principals as the Plans' Authorized Representatives.  The Principals then carried on the fraudulent scheme in the name of the Plans.

6.      In order to obtain a refund from SKAT, U.S. pension plans had to include in their refund application a dividend credit advice from a broker-custodian, certifying that the plan owned the shares, had earned and received a dividend on the shares, and had suffered withholding tax on the dividend.  The Schedule A Plans used Shah's business, Solo Capital Partners LLP ("**Solo Capital**"), a broker regulated by the United Kingdom's Financial Conduct Authority (the "**FCA**"), to provide them false certifications.  Solo Capital was a small London broker.  It was incorporated in late 2011, received FCA authorization to custody client assets in March 2012, and never had the resources to backstop the Plans' purported transactions in Danish securities.

7.      The scheme ended in August 2015.  After SKAT received information from a whistleblower and from a foreign government, SKAT suspended all payments of refunds of withholding tax, reported the fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"), and launched an investigation into the scheme.  The fraudulent

---

3.    The Argre Principals were Richard Markowitz ("**Markowitz**"), John van Merkensteijn ("**van Merkensteijn**"), and three other Principals.  Markowitz and van Merkensteijn are each Defendants in 24 actions in this Multi-District Litigation.

scheme is currently under investigation by law enforcement authorities in Denmark, the United

Kingdom, Germany, and other jurisdictions. At least six individuals have been criminally charged

by SØIK.

8. In May 2021, the FCA fined Sapien Capital Limited, a U.K.-based broker involved

in the scheme. The FCA concluded:

> The purpose of the purported trading was so the Solo Group could arrange for
> Dividend Credit Advice Slips ("DCAS") to be created, which purported to show
> that the Solo Clients held the relevant shares on the record date for dividend. . . .
>
> The [FCA] refers to the trading as 'purported' as it has found no evidence of
> ownership of the shares by the Solo Clients, or custody of the shares and settlement
> of the trades by the Solo Group. This, coupled with the high volumes of shares
> purported to have been traded, is highly suggestive of sophisticated financial
> crime.[4]

9. Ben-Jacob is already a defendant in 39 actions[5] pending in this multi-district

litigation ("**MDL**") involving 39 U.S. pension plans (the "**Schedule B Plans**") (together with the

Schedule A Plans, the "**Plans**"). After initially claiming privilege over their communications with

Ben-Jacob, three defendants in those actions, Markowitz, van Merkensteijn, and Robert Klugman

("**Klugman**")[6] announced that they were asserting a reliance-on-counsel defense, waived the claim

of privilege and, in January 2021, began producing communications with Ben-Jacob that they had

previously withheld—communications that revealed Ben-Jacob's role in the scheme to defraud

SKAT with respect to the 30 Schedule A Plans.

---

4. FCA, Final Notice to Sapien Capital at 3-4 (May 6, 2021), *available at* https://www.fca.org.uk/publication/final-notices/sapien-capital-limited-2021.pdf.

5. These actions are listed in Schedule B to this Complaint. These Plans submitted reclaims to SKAT from August 2014 through at least July 2015.

6. Klugman is a defendant in 31 of the 39 actions listed in Schedule B.

10. As a result of the fraudulent refund applications submitted by the 30 Schedule A Plans, SKAT paid baseless withholding tax refund applications and was damaged in the amount of DKK 1,595,012,335.05, or at least $259,773,000 (US),[7] plus interest.

## II. JURISDICTION & VENUE

11. Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and a citizen of a state or of different states.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because Defendant Ben-Jacob is subject to the jurisdiction of this Court.

## III. PARTIES

13. Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Hannemanns Allé 25, DK-2300, Copenhagen, Denmark. During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

14. Defendant Ben-Jacob is a citizen of the State of New York. At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at either 420 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019.

---

7. This amount is calculated by converting Danish Kroner or DKK to U.S. Dollars, using a conversion rate (as of June 16, 2021) of 1 U.S. Dollar to 6.14 DKK.

## IV.     GENERAL FACTUAL ALLEGATIONS

### A.     The Corrupt Agreement to Defraud SKAT.

15.     Defendant Ben-Jacob worked with numerous entities and individuals to defraud SKAT. At times material to this complaint, Defendant Ben-Jacob, an attorney, represented the Argre Principals and Klugman, among others. Defendant Ben-Jacob, the Argre Principals, and Klugman entered into representation agreements through which Defendant Ben-Jacob provided the Argre Principals and Klugman legal services, made representations on their behalf to SKAT, and otherwise assisted in nearly every aspect of the fraudulent scheme.

16.     Defendant Ben-Jacob played a central role in structuring the relationships and transactions between the 30 Schedule A Plans, the Principals, and others. Without this structure, the Principals and these 30 Plans could not have committed their fraud against SKAT.

17.     The agreement between Ben-Jacob, the Principals, the Schedule A Plans, and other U.S. pension plans that submitted false reclaims to SKAT was corrupt because its primary purpose was to defraud SKAT. This agreement constitutes a conspiracy (the "**Conspiracy**") because it was a corrupt agreement by two or more persons, all of whom took overt acts to perpetrate the fraud against SKAT.

18.     The Conspiracy began at least as early as August 2012, when certain of the Schedule A Plans first submitted fraudulent refund applications to SKAT. The Conspiracy continued at least through August 2015, when SKAT stopped paying the fraudulent refund applications submitted by any U.S. pension plan. At no time between 2012 and 2015 did Defendant Ben-Jacob withdraw or attempt to withdraw from the Conspiracy.

19.     The Principals disclosed the scheme related to the Plans to Defendant Ben-Jacob. At all times material to this Complaint, Defendant Ben-Jacob was aware that the Principals were setting up these Plans to submit refund applications to SKAT, that these Plans were new single-

participant 401(k) pension plans with no or minimal funding or means of purchasing vast amounts of Danish securities, that they did not own the Danish shares they purported to own, and that they did not own the dividends they claimed to own.

**B.    The Danish Withholding Tax System.**

20.    Withholding tax is the deducting of taxes at the source, from income due to a recipient, by a person who pays the income and reports the payment to the relevant tax authority. In this case, the relevant tax authority is SKAT.  Under the Danish Withholding Tax Act section 65, during the relevant period Danish companies were required to withhold 27% of the dividend they distributed on their shares to certain shareholders, including foreign shareholders.

21.    Shareholders resident outside Denmark may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.  A double taxation treaty between Denmark and the United States[8] (the "**Treaty**") allows for a full refund of tax withheld on dividends paid by Danish companies to qualified U.S. pension plans, which are exempt from taxation.  In order to qualify for a full refund under the Treaty, a U.S. pension plan must own the shares for which the dividend is issued and must possess tax-qualified status under section 401(a) of the Internal Revenue Code, and the dividend serving as the basis of the refund request cannot arise from the carrying on of a business by the pension fund.  Wholly apart from the fictitious nature of the purported trading in Danish shares, for the reasons set forth in further detail below, the 30 Schedule A Plans did not satisfy these requirements and were therefore not entitled under the Treaty to the refunds they

---

8.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

Provided by CourtAlert                                                                www.CourtAlert.com

claimed from SKAT.  Defendant Ben-Jacob was fully aware that the Principals were setting up these plans and recruiting others to set up plans, and that the Plans were shams that did not satisfy the requirements of the Treaty and were not entitled to the withholding tax refunds.

22.     SKAT paid applications for refunds of dividend withholding tax made by U.S. pension plans that submitted, among other things, documentation from (1) the Internal Revenue Service representing that they were qualified pension plans and (2) the broker-custodians representing that the plans had shareholdings in Danish companies and had received dividends on those shareholdings net of the tax.  The 30 Schedule A Plans submitted refund applications seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the Plans purported to own.

**C.      The Fraudulent Scheme Against SKAT.**

23.     From 2012 through 2015, the Principals and Klugman defrauded SKAT into paying dividend withholding tax refund applications involving (i) a pension plan or other applicant; (ii) an Authorized Representative; (iii) a Payment Agent; (iv) a broker-custodian; and (v) various partnerships, through which the fraudulent refunds were transferred from the Plans to others in the scheme, including the Principals and Klugman.

**1.      SKAT's Refund Applications Process.**

24.     The Plans submitted fraudulent refund applications to SKAT through Payment Agents, each of which submitted applications by mail or by email transmissions.  SKAT paid the refunds to the designated Payment Agents, who in turn transferred the proceeds net of the Payment Agents' fee to the Plans.

25.     Each of the Plans provided the following documentation to SKAT through their designated agents:

       a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

       b.      a "Claim to Relief from Danish Dividend Tax" form, which set out:

         i.      the identity of the Plan representing that it owned the relevant shares and had received dividends net of withholding tax;

         ii.      the amount of the tax refund application;

         iii.      a certification that the Plan was covered by the U.S. double taxation treaty with Denmark; and

         iv.      the bank account to which SKAT should pay the refund application;

       c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

       d.      a signed Power of Attorney, by which the applicant's Authorized Representative appointed a Payment Agent to act on behalf of the stated applicant; and

       e.      a statement from the Internal Revenue Service ("**IRS**") on Form 6166, certifying that each Plan was (i) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the Internal Revenue Code, (ii) exempt from U.S. taxation under section 401(a), and (iii) resident in the United States for purposes of United States taxation.

26.    SKAT paid refund applications that included the required supporting documentation by bank transfer to the Payment Agents for the benefit of the Plans. Unbeknownst to SKAT, however, the vast majority of the funds that SKAT paid to the Payment Agents for the Plans were in fact funneled to the Principals, Solo Capital, Ganymede Cayman Limited (an entity

controlled by Shah) ("**Ganymede**"), and other participants in the scheme. Schedule A Plans that were not in partnerships received less than one-third of the funds paid by SKAT and less than 9% of the gross dividend. Schedule A Plans in partnerships generally received less than 2% of the payments from SKAT and less than 1% of the gross dividends. Most of the Schedule B Plans received only about 1% of the refund applications and less than 0.5% of the dividends. All the Schedule A and Schedule B Plans represented to SKAT that they were the owners of the dividends and entitled to the full 27% refund.

### 2.    The Plans.

27.    SKAT paid refund applications that appeared to be supported by appropriate documentation from qualified U.S. pension plans because it did not know that the Principals and Ben-Jacob were secretly orchestrating a vast fraud. The Principals used the Plans as fronts to make refund applications to SKAT. The Plans represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish companies, whose shares were publicly traded. Between August 20, 2012 and September 17, 2014, the Schedule A Plans caused 364 separate withholding tax refund applications to be submitted to SKAT, representing that they were entitled to refunds totaling DKK 1,595,012,335.05, or at least $259,773,000 (US).

28.    In fact, the Schedule A Plans (and the Schedule B Plans) did not own the shares they represented to SKAT that they owned, did not receive dividends from those shares, and had no dividend tax withheld.

29.    The Plans were sham entities, the large majority of which were sponsored by sham companies. These sham companies conducted little or no trade or business and had no employees. The majority of the companies were incorporated for the sole purpose of sponsoring Plans to make fraudulent refund applications.

30. The Authorized Representatives signed a power of attorney document with a Payment Agent, which granted the Payment Agent authority to submit to SKAT the refund applications described in paragraph 25 above.

31. Defendant Ben-Jacob himself signed power of attorney documents with Payment Agents as the Authorized Representative for at least nine of the Schedule B Plans and further signed power of attorney documents with Payment Agents as "Attorney-in-Fact" for at least 20 other Schedule B Plans.

32. Each entity applying for a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher," or similar document from a broker-custodian that purported to show the applicant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index. Solo Capital issued the credit advices for all the Schedule A Plans.

33. By way of example, with respect to Schedule A Plan Azalea Pension Plan, one example of an "Income Advice":

  a.   is made out by Solo Capital Partners LLP;

  b.   is dated August 19, 2014; and

  c.   purports to certify the Azalea Pension Plan's ownership of 3,682,430 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark.

34. Azalea Pension Plan, and all the Plans, were not qualified U.S. pension plans for purposes of the Treaty, never owned the shares they claimed to own, never received any dividends from Danish companies in which they purported to be shareholders, and were not entitled to claim a refund of dividend withholding tax. Defendant Ben-Jacob knew that the Plans and the vast majority of the LLCs that sponsored them were shams, and that these Plans could not have owned

the shares they claimed to own. Ben-Jacob knew that the Plans were newly-formed, had no funding, and had no financial support from any established financial institutions for the billions of dollars of trading they purported to transact.

35.     In addition to falsely representing that it owned the shares that were the subject of the refund claims, the Plans also falsely represented to SKAT in each refund claim that each Plan was a qualified U.S. pension plan entitled to a full refund under the Treaty. This representation was false because the Plans did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly carried on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan.

**D.     The Partnerships.**

36.     The Principals used partnership agreements to distribute the refunds that SKAT paid to 15 of the 30 Schedule A Plans to entities that the Principals controlled.[9] After 66% of the proceeds were paid to Solo Capital or Ganymede, the Schedule A Plans that entered partnership agreements received only a small fraction (typically between 5% or 10%) of the remaining money from the refunds after the lion's share of the net proceeds were paid to the Principals. In order to defraud SKAT, it was essential that each Plan represent that it was the beneficial owner of Danish shares and of the dividend the issuer had distributed to shareholders. Ben-Jacob knew that SKAT would not pay any refund application unless the Plan represented that it was the beneficial owner

---

9.   These 15 plans were: the 2321 Capital Pension Plan; the Bowline Management Pension Plan; the California Catalog Company Pension Plan; the Clove Pension Plan; the Davin Investments Pension Plan; the Delvian LLC Pension Plan; the DFL Investments Pension Plan; the Laegeler Asset Management Pension Plan; the Lion Advisory Inc. Pension Plan; the Mill River Capital Management Pension Plan; the Next Level Pension Plan; the Rajan Investments LLC Pension Plan; the Raubritter LLC Pension Plan; the Spirit On The Water Pension Plan; and the Traden Investments Pension Plan.

For the 15 Schedule A Plans that were not in partnerships, the participants and beneficiaries were Markowitz, van Merkensteijn, or one of two other Principals; all four of these Principals together; or one of these four Principal's spouses.

of the shares and the dividend, and unless the Plan's broker-custodian certified that representation was true. In fact, the Plan was a sham, it owned no Danish shares, and it was a mere front for undisclosed Principals.

37.     After paying Shah's Solo Capital or Ganymede 66% of a payment from SKAT, the Principals typically took 95% of the remaining 34% of proceeds, leaving only 5% for the family, friends, and colleagues they had recruited to set up the Plan. The 5% allocation to the Plan, which the Principals included in most of the partnership agreements, meant that when a Plan claimed that it had been issued a dividend by a Danish company in the amount of, say, $100, and had paid (27% withholding) tax of $27, the Principals who had set up the Plan would take the $27 that SKAT paid the Plan as a refund of tax and pay Shah's Solo Capital (directly or through an intermediary that invoiced the Plan for "services") $17.82, leaving $9.18 for the Principals. Of this $9.18, the Principals would take 95% or in this example, $8.72 for themselves, leaving $0.46 for the Plan. That $0.46 represented 1.7% of the amount SKAT paid out—supposedly as a refund to the owner of the dividend—and 0.46% of the dividend that the Plan purported to own.

38.     By way of example, Schedule A Plan Lion Advisory Inc. Pension Plan (the "**Lion Advisory Plan**") claimed that it had received a dividend of DKK 5,459,083.50 and had paid 27% withholding tax of DKK 1,473,952 in connection with shares of Danish company TDC A/S it had purportedly purchased on August 7, 2014. Of the DKK 1,473,952.54 that SKAT paid the Lion Advisory Plan as a refund of tax, the Lion Advisory Plan paid DKK 974,331.34, or roughly 66%, to Shah's entity Ganymede. Of the remaining DKK 499,621, the Lion Advisory Plan transferred DKK 474,640 (or 95%) to certain of the Principals pursuant to the terms of its partnership agreement, keeping DKK 24,981 (or 5%) for itself. That DKK 24,981 represented 1.69% of the amount SKAT paid out and 0.46% of the dividend.

Provided by CourtAlert                                                                                    www.CourtAlert.com

39.     For the Schedule B Plans, Klugman, Markowitz, and van Merkensteijn agreed to pay Solo Capital or Ganymede 75% of what SKAT paid the plan; again keeping 95% of the remainder for themselves, and leaving the plan with only 1.25% of SKAT's payment, and only 0.34% of the dividend.

### E.     Defendant Ben-Jacob's Role in the Scheme.

40.     At all material times, Ben-Jacob knew that the scheme involved obtaining money from SKAT based on refund applications, and not based on any actual trading in Danish shares. He was aware that the scheme did not involve any actual investment of any money by any Principal, plan participant, or Plan, and instead involved using newly-formed 401(k) retirement plans that had minimal or no funding to submit refund applications to SKAT.  For example, in August 2014, each of the 30 Schedule A Plans purported to purchase between approximately $25 and $34 million (US) shares of stock in TDC A/S (a large Danish company) for a combined total of at least $900 million (US).  These purported purchases were all paper transactions calculated to generate the paperwork that could be used to respond to an inquiry by a regulator or tax authority, but did not involve any actual transfer of cash or of any actual shares.

41.     In addition to the Schedule A Plans' purported purchase of TDC A/S shares in August 2014, 33 of the Schedule B Plans each purported to purchase between about $20 million and $30 million of shares stock in TDC A/S, for a total of approximately $1 billion (US).  Klugman had five Schedule B Plans that entered into the August 2014 purported trades.  Klugman did not make any contribution to any of these plans to cover any trading, and none of his five plans had any money in its Solo Capital trading account.  Despite having no money with which to trade, each of the five Klugman plans purported to purchase between $20 million and $30 million for a total of $147 million worth of shares.  The remaining 28 Schedule B Plans similarly purported to buy a total of $829 million of shares, again without any means to do so.  Ben-Jacob knew that these 33

14

plans had a minimal amount of capital, which was completely insufficient for them to purchase almost $1 billion of shares, and that the share purchases were mere paper transactions involving no actual transfer of cash or of any actual shares.

42.    All purported movements of cash to purchase, finance, and sell shares were covered by mere book entries; the only actual cash involved in the scheme was SKAT's payments of the refund applications.  The sole purpose of the purported transactions was to create the paperwork that SKAT and any auditor, regulator, or tax authority would expect to see in connection with actual trading transactions.  As the United Kingdom's FCA noted in connection with the similar transactions involving Solo Capital by Sapien Capital (a U.K.-registered broker), the sham trades were used to create an "audit trail to support withholding tax reclaims in Denmark and Belgium."[10]

43.    From at least 2012 through 2015, Defendant Ben-Jacob participated in structuring webs of LLCs, Plans, partnerships, and other U.S. entities through which the fraud on SKAT was accomplished.  Ben-Jacob knew that the purpose of setting up the LLCs and the Plans was to enable the Plans to submit applications for refunds to SKAT based on the false statements that the Plans were the owners of shares and the recipients of dividends on those shares.

44.    Even apart from the fictitious nature of the trading, the Plans' representations to SKAT that they (*i.e.*, the Plans) were the owners of the purported shares, the dividends, and the refund applications, were false in the case of all the Plans that were members of partnerships, which used the Plans as a front for the benefit of the Principals and Klugman.

45.    The partnership structure was calculated to allow the Principals to use the Plans to submit refund applications to SKAT purportedly as the owners of the shares and the dividends,

---

10.  FCA, Final Notice to Sapien Capital at 3-4 (May 6, 2021), *available at* https://www.fca.org.uk/publication/final-notices/sapien-capital-limited-2021.pdf.

but in fact as agents or nominees of the undisclosed Principals and their partnerships. Ben-Jacob knew that the Plans would misrepresent to SKAT that the Plans were the beneficial owners of the shares and the dividends that were the subject of their refund applications, and would not disclose that the Plans were applying for payments from SKAT as agents or nominees for the undisclosed partnerships. He also knew that by setting up many Plans, the Principals would be able to conceal from SKAT the fact that they were orchestrating many ostensibly separate refund applications from seemingly unrelated Plans.

46.     In using the Plans as a front to defraud Denmark, the Principals flaunted the rules applicable to qualified pension plans. A qualified plan is required to maintain retirement assets in the United States, subject to the jurisdiction of the District Court. None of the Plans purported to follow this rule; all kept their purported trading accounts at Solo Capital, which did not register with the Securities and Exchange Commission or with any state securities regulator, and thereby avoided regulatory scrutiny in the United States. Similarly, qualified plans are required to operate for the exclusive benefit of their sponsoring entities' employees and their beneficiaries but, as Ben-Jacob knew, the Plans were operated primarily for the benefit of the Principals and Shah.

47.     Ben-Jacob was also aware that the Principals used 30 separate Plans in order to conceal from SKAT the fact that ostensibly separate refund applications were submitted by a group of related Plans and for the benefit of Solo Capital and the Principals.

48.     At all times during the fraudulent scheme against SKAT, Ben-Jacob knew that the Schedule A Plans' representations that they were the beneficial owners of Danish shares, dividends, and refund application proceeds were false.

## CAUSES OF ACTION

### COUNT I

#### (Civil Conspiracy)

49.     SKAT repeats and realleges paragraphs 1 through 48 above as if fully set forth herein.

50.     As alleged above, a massive fraud was perpetrated on SKAT by the Schedule A Plans and others.

51.     As discussed in paragraphs 15 through 19 above, Defendant Ben-Jacob entered into a corrupt agreement with the Principals, Schedule A Plans, and others, the purpose of which was to defraud SKAT.

52.     As discussed in paragraphs 20 through 48 above, Defendant Ben-Jacob committed multiple overt acts in furtherance of the corrupt agreement.

53.     Defendant Ben-Jacob participated in the conspiracy and acted in furtherance of it with intent to defraud SKAT.

54.     As a direct and natural cause of Defendant Ben-Jacob's role in the conspiracy, SKAT has suffered substantial damages.

### COUNT II

#### (Aiding and Abetting Fraud)

55.     SKAT repeats and realleges paragraphs 1 through 16; 19 through 30; 32 through 38; 40; and 42 through 48 above as if fully set forth herein.

56.     As alleged above, a massive fraud was perpetrated on SKAT by the 15 Schedule A Plans that entered into partnership agreements,[11] the Principals, the Authorized Representatives, the Payment Agents, the broker-custodians, the partnerships, and other non-parties.

57.     As alleged in paragraphs 15 and 16; 19 through 30; 32 through 38; 40; and 42 through 48 above, Defendant Ben-Jacob, intentionally, with knowledge or willful blindness, participated in this fraud on SKAT.

58.     With respect to the 15 Schedule A Plans that entered into partnership agreements, Defendant Ben-Jacob furthered the fraud and substantially assisted the fraud on SKAT by the 15 Schedule A Plans through his conduct described in paragraphs 15 and 16; 19 through 30; 32 through 38; 40; and 42 through 48.

59.     As a direct and natural cause of Defendant Ben-Jacob's aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     The damages sustained by SKAT as a result of Defendant Ben-Jacob's wrongful acts, plus pre-judgment interest, fees, costs, and expenses.

2.     The costs of this action.

---

11. These 15 plans are: the 2321 Capital Pension Plan; the Bowline Management Pension Plan; the California Catalog Company Pension Plan; the Clove Pension Plan; the Davin Investments Pension Plan; the Delvian LLC Pension Plan; the DFL Investments Pension Plan; the Laegeler Asset Management Pension Plan; the Lion Advisory Inc. Pension Plan; the Mill River Capital Management Pension Plan; the Next Level Pension Plan; the Rajan Investments LLC Pension Plan; the Raubritter LLC Pension Plan; the Spirit On The Water Pension Plan; and the Traden Investments Pension Plan.

Under this Aiding-and-Abetting claim, SKAT seeks damages only in the amount of dividend tax withholding reclaims it paid to these 15 Plans.

3.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

/s/ William R. Maguire

William R. Maguire
Marc A. Weinstein
Neil J. Oxford
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Neil.oxford@hugheshubbard.com
John.mcgoey@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen*
(Customs and Tax Administration of the
Kingdom of Denmark)

**SCHEDULE A**

| Pension Plan | Sum of Claimed Withheld Dividend Tax (DKK) | Sum of Claimed Withheld Dividend Tax (USD) | Participant(s) | Partnership(s) | Dates of request to SKAT | Dates of payment from SKAT |
|---|---|---|---|---|---|---|
| 2321 CAPITAL PENSION PLAN | 59,259,338.98 | 9,651,358.14 | Unnamed Participant | 2321 Capital General Partnership | 4/19/2013; 5/16/2013; 9/20/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/4/2014 | 5/13/2013; 6/10/2013; 10/17/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |
| ALDEN INVESTMENTS PENSION PLAN | 33,428,649.01 | 5,444,405.38 | Unnamed Participant | None | 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 8/19/2014 | 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 8/29/2014 |
| AOI PENSION PLAN | 62,043,570.34 | 10,104,816.02 | Unnamed Participant | None | 4/3/2013; 4/8/2013; 4/17/2013; 4/23/2013; 4/26/2013; 5/8/2013; 8/28/2013; 12/6/2013; 12/13/2013; 3/20/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 5/19/2014; 8/15/2014 | 4/15/2013; 4/29/2013; 5/7/2013; 6/11/2013; 9/9/2013; 12/17/2013; 12/20/2013; 5/6/2014; 4/23/2014; 4/24/2014; 6/17/2014; 9/3/2014 |
| AZALEA PENSION PLAN | 34,272,958.65 | 5,581,915.09 | Elizabeth van Merkensteijn | None | 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 8/19/2014 | 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 8/29/2014 |
| BATAVIA CAPITAL PENSION PLAN | 32,525,021.28 | 5,297,234.74 | Richard Markowitz | None | 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/4/2014 | 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |
| BERNINA PENSION PLAN | 57,878,013.06 | 9,426,386.49 | John van Merkensteijn, III | None | 4/19/2013; 5/16/2013; 9/20/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/4/2014 | 5/13/2013; 6/10/2013; 10/17/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |
| BOWLINE MANAGEMENT PENSION PLAN | 32,623,807.40 | 5,313,323.68 | Unnamed Participant | Bowline General Partnership | 12/11/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/4/2014 | 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |

Provided by CourtAlert                                                                                                www.CourtAlert.com

| Pension Plan | Sum of Claimed Withheld Dividend Tax (DKK) | Sum of Claimed Withheld Dividend Tax (USD) | Participant(s) | Partnership(s) | Dates of request to SKAT | Dates of payment from SKAT |
|---|---|---|---|---|---|---|
| CALIFORNIA CATALOG COMPANY PENSION PLAN | 68,239,884.94 | 11,113,987.78 | Unnamed Participant | California Catalog General Partnership; California Catalog General Partnership II | 8/20/2012; 12/10/2012; 12/31/2012; 3/19/2013; 4/19/2013; 5/16/2013; 8/29/2013; 12/10/2013; 1/6/2014; 5/16/2014; 5/27/2014; 9/4/2014 | 9/19/2012; 1/15/2013; 4/10/2013; 5/13/2013; 6/10/2013; 10/1/2013; 12/20/2013; 1/28/2014; 7/3/2014; 10/9/2014 |
| CALYPSO INVESTMENTS PENSION PLAN | 33,379,518.89 | 5,436,403.73 | Jocelyn Markowitz | None | 12/6/2013; 12/13/2013; 3/20/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 5/19/2014; 9/1/2014 | 12/17/2013; 12/20/2013; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 10/9/2014 |
| CARRICK HOLDINGS PENSION PLAN | 35,837,050.21 | 5,836,653.13 | Unnamed Participant | None | 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/4/2014 | 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |
| CLOVE PENSION PLAN | 36,671,823.15 | 5,972,609.63 | Unnamed Participant | Clove General Partnership | 12/6/2013; 12/13/2013; 3/20/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 9/15/2014 | 12/17/2013; 12/20/2013; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 10/9/2014 |
| DAVIN INVESTMENTS PENSION PLAN | 62,335,426.34 | 10,152,349.57 | Unnamed Participant | Davin Investments General Partnership | 6/12/2013; 9/20/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/17/2014 | 6/21/2013; 10/17/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |

Provided by CourtAlert                                                                                    www.CourtAlert.com

| Pension Plan | Sum of Claimed Withheld Dividend Tax (DKK) | Sum of Claimed Withheld Dividend Tax (USD) | Participant(s) | Partnership(s) | Dates of request to SKAT | Dates of payment from SKAT |
|---|---|---|---|---|---|---|
| DELVIAN LLC PENSION PLAN | 67,197,056.32 | 10,944,145.98 | Unnamed Principal | Delvian General Partnership; Delvian General Partnership II | 8/31/2012; 12/14/2012; 12/21/2012; 3/12/2013; 3/21/2013; 4/8/2013; 4/12/2013; 4/17/2013; 4/23/2013; 4/26/2013; 5/8/2013; 8/28/2013; 12/6/2013; 12/13/2013; 3/14/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 8/15/2014 | 9/19/2012; 1/15/2013; 4/10/2013; 4/15/2013; 4/29/2013; 5/7/2013; 6/11/2013; 9/9/2013; 12/17/2013; 12/20/2013; 3/26/2014; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 9/3/2014 |
| DFL INVESTMENTS PENSION PLAN | 58,539,511.97 | 9,534,122.47 | Unnamed Participant | DFL Investments General Partnership | 4/19/2013; 5/16/2013; 8/29/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/17/2014 | 5/13/2013; 6/10/2013; 10/1/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |
| GANESHA INDUSTRIES PENSION PLAN | 60,013,224.29 | 9,774,140.76 | Unnamed Participant | None | 4/3/2013; 4/8/2013; 4/12/2013; 4/17/2013; 4/23/2013; 4/26/2013; 8/28/2013; 12/6/2013; 12/13/2013; 3/14/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 5/19/2014; 9/1/2014 | 4/15/2013; 4/29/2013; 5/7/2013; 9/9/2013; 12/17/2013; 12/20/2013; 3/26/2014; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 10/9/2014 |
| LAEGELER ASSET MANAGEMENT PENSION PLAN | 58,152,480.95 | 9,471,088.10 | Unnamed Participants | LAM General Partnership | 4/19/2013; 5/16/2013; 8/29/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/17/2014 | 5/13/2013; 6/10/2013; 10/1/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |

| Pension Plan | Sum of Claimed Withheld Dividend Tax (DKK) | Sum of Claimed Withheld Dividend Tax (USD) | Participant(s) | Partnership(s) | Dates of request to SKAT | Dates of payment from SKAT |
|---|---|---|---|---|---|---|
| LION ADVISORY INC. PENSION PLAN | 71,184,845.65 | 11,593,623.07 | Unnamed Participant | Lion Advisory General Partnership; Lion Advisory General Partnership II | 8/31/2012; 12/14/2012; 12/21/2012; 4/11/2013; 4/17/2013; 4/23/2013; 4/26/2013; 8/28/2013; 12/6/2013; 12/13/2013; 4/1/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 8/15/2014 | 9/19/2012; 1/15/2013; 4/22/2013; 4/29/2013; 5/7/2013; 9/9/2013; 12/17/2013; 12/20/2013; 4/24/2014; 5/6/2014; 6/17/2014; 9/3/2014 |
| MAZAGRAN PENSION PLAN | 33,824,311.17 | 5,508,845.47 | Unnamed Participant | None | 12/6/2013; 12/13/2013; 4/1/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 8/15/2014 | 12/17/2013; 12/20/2013; 4/24/2014; 5/6/2014; 6/17/2014; 9/3/2014 |
| MICHELLE INVESTMENTS PENSION PLAN | 73,796,108.87 | 12,018,910.24 | Richard Markowitz; John van Merkensteijn, III; Unnamed Participants | None | Undated; 9/2/2012; 12/10/2012; 3/19/2013; 4/19/2013; 5/16/2013; 8/29/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 8/19/2014 | 1/15/2013; 9/19/2012; 4/10/2013; 5/13/2013; 6/10/2013; 10/1/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 8/29/2014 |
| MILL RIVER CAPITAL MANAGEMENT PENSION PLAN | 68,724,181.76 | 11,192,863.48 | Unnamed Participant | Mill River General Partnership | 8/31/2012; 12/14/2012; 12/21/2012; 3/12/2013; 3/21/2013; 4/8/2013; 4/12/2013; 4/17/2013; 4/23/2013; 4/26/2013; 5/8/2013; 8/21/2013; 12/6/2013; 12/13/2013; 3/14/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 8/15/2014 | 9/19/2012; 1/15/2013; 4/10/2013; 4/15/2013; 4/29/2013; 5/7/2013; 6/11/2013; 9/9/2013; 12/17/2013; 12/20/2013; 3/26/2014; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 9/3/2014 |
| NEXT LEVEL PENSION PLAN | 60,406,334.19 | 9,838,165.18 | Unnamed Participant | Next Level General Partnership | 4/19/2013; 5/16/2013; 8/29/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 8/19/2014 | 5/13/2013; 6/10/2013; 10/1/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 8/29/2014 |

Provided by CourtAlert                                                                                  www.CourtAlert.com

| Pension Plan | Sum of Claimed Withheld Dividend Tax (DKK) | Sum of Claimed Withheld Dividend Tax (USD) | Participant(s) | Partnership(s) | Dates of request to SKAT | Dates of payment from SKAT |
|---|---|---|---|---|---|---|
| PLEASANT LAKE PRODUCTIONS PENSION PLAN | 33,566,455.35 | 5,466,849.41 | Unnamed Participant | None | 12/6/2013; 12/13/2013; 3/14/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 8/15/2014 | 12/17/2013; 12/20/2013; 3/26/2014; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 9/3/2014 |
| RAJAN INVESTMENTS LLC PENSION PLAN | 59,742,677.42 | 9,730,077.76 | Unnamed Participant | Rajan Investments General Partnership; Rajan Investments General Partnership II | 2/14/2013; 3/19/2013; 4/19/2013; 5/16/2013; 8/29/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/27/2014; 9/17/2014 | 3/1/2013; 4/10/2013; 5/13/2013; 6/10/2013; 10/1/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |
| RAUBRITTER LLC PENSION PLAN | 59,825,380.94 | 9,743,547.38 | Alexander Burns | Raubritter General Partnership; Raubritter General Partnership II | 1/21/2013; 3/19/2013; 4/19/2013; 5/16/2013; 9/20/2013; 12/10/2013; 1/6/2014; 4/17/2014; 6/11/2014; 8/19/2014 | 2/11/2013; 4/10/2013; 5/13/2013; 6/10/2013; 10/17/2013; 12/20/2013; 1/28/2014; 5/28/2014; 7/3/2014; 8/29/2014 |
| REMECE INVESTMENTS LLC PENSION PLAN | 57,825,446.41 | 9,417,825.15 | Richard Markowitz; John van Merkensteijn, III; Unnamed Participants | None | 4/12/2013; 4/17/2013; 4/23/2013; 4/26/2013; 4/30/2013; 8/21/2013; 12/6/2013; 12/13/2013; 3/20/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 5/19/2014; 8/15/2014 | 4/29/2013; 5/7/2013; 5/13/2013; 9/9/2013; 9/9/2013; 12/17/2013; 12/20/2013; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 9/3/2014 |

| Pension Plan | Sum of Claimed Withheld Dividend Tax (DKK) | Sum of Claimed Withheld Dividend Tax (USD) | Participant(s) | Partnership(s) | Dates of request to SKAT | Dates of payment from SKAT |
|---|---|---|---|---|---|---|
| RJM CAPITAL PENSION PLAN | 59,487,351.62 | 9,688,493.75 | Richard Markowitz | None | 4/3/2013; 4/8/2013; 4/12/2013; 4/17/2013; 4/23/2013; 4/26/2013; 4/30/2013; 8/21/2013; 12/6/2013; 12/13/2013; 3/14/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 5/19/2014; 8/21/2014; 9/15/2014 | 4/15/2013; 4/29/2013; 5/7/2013; 5/13/2013; 9/9/2013; 12/17/2013; 12/20/2013; 3/26/2014; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 9/3/2014; 10/9/2014 |
| SPIRIT ON THE WATER PENSION PLAN | 60,248,127.87 | 9,812,398.68 | Unnamed Participant | Spirit on the Water General Partnership | 4/19/2013; 5/16/2013; 9/20/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/28/2014; 8/19/2014 | 5/13/2013; 6/10/2013; 10/17/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 8/29/2014 |
| TARVOS PENSION PLAN | 36,038,258.82 | 5,869,423.26 | John van Merkensteijn, III | None | 12/6/2013; 12/13/2013; 3/14/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 9/1/2014 | 12/17/2013; 12/20/2013; 3/26/2014; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 10/9/2014 |
| TRADEN INVESTMENTS PENSION PLAN | 56,690,495.82 | 9,232,979.78 | Unnamed Participant | Traden Investments General Partnership | 4/3/2013; 4/8/2013; 4/12/2013; 4/17/2013; 4/23/2013; 4/26/2013; 4/30/2013; 8/21/2013; 12/6/2013; 12/13/2013; 3/20/2014; 3/24/2014; 3/25/2014; 3/26/2014; 3/28/2014; 4/8/2014; 4/10/2014; 4/24/2014; 5/19/2014; 9/15/2014 | 4/15/2013; 4/29/2013; 5/7/2013; 5/13/2013; 9/9/2013; 12/17/2013; 12/20/2013; 4/23/2014; 4/24/2014; 5/6/2014; 6/17/2014; 10/9/2014 |

| Pension Plan | Sum of Claimed Withheld Dividend Tax (DKK) | Sum of Claimed Withheld Dividend Tax (USD) | Participant(s) | Partnership(s) | Dates of request to SKAT | Dates of payment from SKAT |
|---|---|---|---|---|---|---|
| XIPHIAS LLC PENSION PLAN | 71,255,023.38 | 11,605,052.67 | Richard Markowitz; John van Merkensteijn, III; Unnamed Participants | None | Undated; 10/5/2012; 12/10/2012; 3/19/2013; 4/19/2013; 5/16/2013; 9/20/2013; 12/10/2013; 1/6/2014; 3/20/2014; 4/17/2014; 5/28/2014; 9/4/2014 | 10/30/2012; 1/15/2013; 4/10/2013; 5/13/2013; 6/10/2013; 10/17/2013; 12/20/2013; 1/28/2014; 5/9/2014; 5/28/2014; 7/3/2014; 10/9/2014 |

Provided by CourtAlert                                                                www.CourtAlert.com

## Schedule B[12]

*Skatteforvaltningen v. Aerovane Logistics LLC Roth 401(k) Plan*, No. 18-cv-07828 (D. Conn.)
*Skatteforvaltningen v. Albedo Management LLC Roth 401(k) Plan*, No. 19-cv-01785
*Skatteforvaltningen v. Avanix Management LLC Roth 401K Plan*, No. 19-cv-01867
*Skatteforvaltningen v. Ballast Ventures LLC Roth 401(k) Plan*, No. 19-cv-01781
*Skatteforvaltningen v. Bareroot Capital Investments LLC Roth 401(k) Plan*, No. 19-cv-01783
*Skatteforvaltningen v. Basalt Ventures LLC Roth 401(k) Plan*, No. 19-cv-01866
*Skatteforvaltningen v. Battu Holdings LLC Roth 401K Plan*, No. 19-cv-01794
*Skatteforvaltningen v. Cantata Industries LLC Roth 401(k) Plan*, No. 19-cv-01798
*Skatteforvaltningen v. Cavus Systems LLC Roth 401(k) Plan*, No. 19-cv-01869
*Skatteforvaltningen v. Cedar Hill Capital Investments LLC Roth 401(k) Plan*, No. 19-cv-01922
*Skatteforvaltningen v. Crucible Ventures LLC Roth 401(k) Plan*, No. 19-cv-01800
*Skatteforvaltningen v. Dicot Technologies LLC Roth 401(k) Plan*, No. 19-cv-01788
*Skatteforvaltningen v. Eclouge Industry LLC Roth 401(k) Plan*, No. 19-cv-01870
*Skatteforvaltningen v. Edgepoint Capital LLC Roth 401(k) Plan*, No. 18-cv-07827 (D. Conn.)
*Skatteforvaltningen v. Fairlie Investments LLC Roth 401(k) Plan*, No. 19-cv-01791
*Skatteforvaltningen v. First Ascent Worldwide LLC Roth 401(k) Plan*, No. 19-cv-01792
*Skatteforvaltningen v. Fulcrum Productions LLC Roth 401(k) Plan*, No. 19-cv-01928
*Skatteforvaltningen v. Green Scale Management LLC Roth 401(k) Plan*, No. 19-cv-01926
*Skatteforvaltningen v. Hadron Industries LLC Roth 401(k) Plan*, 19-cv-01868;
*Skatteforvaltningen v. Headsail Manufacturing LLC Roth 401(k) Plan*, No. 18-cv-07824 (D. Conn.)
*Skatteforvaltningen v. Keystone Technologies LLC Roth 401(k) Plan*, No. 19-cv-01929
*Skatteforvaltningen v. Limelight Global Productions LLC Roth 401(k) Plan*, No. 19-cv-01803
*Skatteforvaltningen v. Loggerhead Services LLC Roth 401(k) Plan*, No. 19-cv-01806
*Skatteforvaltningen v. Monomer Industries LLC Roth 401(k) Plan*, No. 19-cv-01801
*Skatteforvaltningen v. Omineca Pension Plan*, No. 19-cv-01894
*Skatteforvaltningen v. PAB Facilities Global LLC Roth 401(k) Plan*, No. 19-cv-01808

---

12. Except as otherwise noted, all actions listed in Schedule B were originally filed in and remain under the jurisdiction of the Southern District of New York.  All 39 actions have been consolidated into the MDL.

*Skatteforvaltningen v. Pinax Holdings LLC Roth 401(k) Plan*, No. 19-cv-01810
*Skatteforvaltningen v. Plumrose Industries LLC Roth 401(k) Plan*, No. 19-cv-01809
*Skatteforvaltningen v. Roadcraft Technologies LLC Roth 401(k) Plan*, No. 19-cv-01812
*Skatteforvaltningen v. Routt Capital Pension Plan*, No. 19-cv-01896
*Skatteforvaltningen v. Starfish Capital Management LLC Roth 401 (k) Plan*, No. 19-cv-01871
*Skatteforvaltningen v. Sternway Logistics LLC Roth 401(k) Plan*, No. 19-cv-01813
*Skatteforvaltningen v. The Random Holdings 401K Plan*, No. 18-cv-07829
*Skatteforvaltningen v. The Stor Capital Consulting LLC 401K Plan*, No. 18-cv-04434
*Skatteforvaltningen v. Trailing Edge Productions LLC Roth 401(k) Plan*, No. 19-cv-01815
*Skatteforvaltningen v. True Wind Investments LLC Roth 401(k) Plan*, No. 19-cv-01818
*Skatteforvaltningen v. Tumba Systems LLC Roth 401(k) Plan*, No. 19-cv-01931
*Skatteforvaltningen v. Vanderlee Technologies Pension Plan*, No. 19-cv-01918
*Skatteforvaltningen v. Voojo Productions LLC Roth 401K Plan*, No. 19-cv-01873