# Exhibit 8

Page 306

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO.  18-MD-2865 (LAK)

---------------------------------------
                                        )
IN RE:                                  )
                                        )
CUSTOMS AND TAX ADMINISTRATION OF       )
THE KINGDOM OF DENMARK                  )
(SKATTEFORVALTNINGEN) TAX REFUND        )
SCHEME LITIGATION                       )
                                        )
This document relates to case nos.      )
19-cv-01783; 19-cv-01788; 19-cv-01794;  )
19-cv-01798; 19-cv-01918                )
---------------------------------------)


C O N F I D E N T I A L
SUBJECT TO THE PROTECTIVE ORDER


CONTINUED REMOTE VTC VIDEOTAPED DEPOSITION UNDER
ORAL EXAMINATION OF
RICHARD MARKOWITZ
VOLUME II
DATE: April 9, 2021


REPORTED BY:  MICHAEL FRIEDMAN, CCR

Confidential – Subject to The Protective Order
Richard Markowitz – April 9, 2021

2 (Pages 307 to 310)

## Page 307

```
 1                  TRANSCRIPT of the videotaped deposition
 2  of the witness, called for Oral Examination in the
 3  above-captioned matter, said deposition being taken
 4  by and before MICHAEL FRIEDMAN, a Notary Public and
 5  Certified Court Reporter of the State of New Jersey,
 6  via WEBEX, ALL PARTIES REMOTE, on April 9, 2021,
 7  commencing at approximately 9:40 in the morning.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 308

```
 1  A P P E A R A N C E S :
 2
    HUGHES, HUBBARD & REED
 3  One Battery Park Plaza
    New York, NY  10004
 4  BY:   NEIL OXFORD, ESQ.
          BILL MAGUIRE, ESQ.
 5      MARC A. WEINSTEIN, ESQ.
          CAROLYN HARBUS, ESQ.
 6      JAMES HENSELER, ESQ.
          JOHN MCGOEY, ESQ.
 7      VALERIE CAHAN, ESQ.
          ERIN PAMUKCU, ESQ.
 8      VICTOR SANDOVAL, ESQ.
          MAUREEN HOWLEY, ESQ.
 9      GREGORY FARRELL, ESQ.
          ELIZABETH ZHOU, ESQ.
10          Via VTC
    Attorneys for SKAT
11
    HANAMIRIAN LAW FIRM
12  40 E. Main Street
    Moorestown, NJ  08057
13  BY:   JOHN M. HANAMIRIAN, ESQ.
          ELZA GRIGORYAN
14          Via VTC
    Attorneys for Acorn Capital
15
16
    CAPLIN & DRYSDALE
17  600 Lexington Avenue
    New York, NY  10022
18  BY:   ZHANNA A. ZIERING, ESQ.
          MARK ALLISON, ESQ.
19          Via VTC
    Attorneys for Klugman
20
21
    KAPLAN RICE
22  142 West 57th Street
    New York, NY  10019
23  BY:   Y. KATIE WANG, ESQ.
          MICHELLE RICE, ESQ.
24          Via VTC
    Attorneys for Albedo, et al
25
```

## Page 309

```
 1  A P P E A R A N C E S :
 2
    KOSTELANETZ & FINK
 3  250 Greenwich Street
    New York, NY  10007
 4  BY:   NICHOLAS H. BAHNSEN, ESQ.
          BRYAN C. SKARLATOS, ESQ.
 5      CAROLINE CIRAOLO, ESQ.
          ERIC SMITH, ESQ.
 6      DANIEL DAVIDSON, ESQ.
          SHARON L. MCCARTHY, ESQ.
 7      JULIET L. FINK, ESQ.
          Via VTC
 8  Attorneys for Azalea, et al
 9
    K&L GATES
10  One Lincoln Street
    Boston, MA  02111
11  BY:   JOHN GAVIN, ESQ.
          BRANDON DILLMAN, ESQ.
12      DAVID FINE, ESQ.
          JOHN BLESSINGTON, ESQ.
13      MOLLY MAIDMAN, ESQ.
          ANNA E. L'HOMMEDIEU, ESQ.
14          Via VTC
    Attorneys for Alexander Jamie Mitchell, et al
15
16
    GUSRAE, KAPLAN & NUSBAUM
17  120 Wall Street
    New York, NY  10005
18  BY:   KARI PARKS, ESQ.
          MARTIN H. KAPLAN, ESQ.
19          Via VTC
    Attorneys for Goldstein
20
21
22
23
24
25
```

## Page 310

```
 1  A P P E A R A N C E S :
 2
    WILMER HALE
 3  7 World Trade Center - 250 Greenwich Street
    New York, NY  10007
 4  BY:   ALAN SCHOENFELD, ESQ.
          MICHAEL BONGIORNO, ESQ.
 5      MICHAEL POSADA, ESQ.
          STEPHANIE SIMON, ESQ.
 6      CARY GLYNN, ESQ.
          TAMAR KAPLAN-MARANS, ESQ.
 7      JULIA C. PILCER, ESQ.
          RACHEL CRAFT, ESQ.
 8      ANDREW DULBERG, ESQ.
          Via VTC
 9  Attorneys for Avanix, et al
10
11
    BINDER & SCHWARTZ
12  366 Madison Avenue
    New York, NY  10017
13  BY:   NEIL S. BINDER, ESQ.
          GREGORY C. PRUDEN, ESQ.
14      WENDY H. SCHWARTZ, ESQ.
          M. TOMAS MURPHY, ESQ.
15          Via VTC
    ATTORNEYS for ED&F Man
16
17  DEWEY, PEGNO & KRAMARSKY
    777 Third Avenue
18  New York, NY  10017
    BY:   SEAN MULLEN, ESQ.
19      DAVID PEGNO, ESQ.
          THOMAS E.L. DEWEY, ESQ.
20          Via VTC
    Attorneys for Michael Ben-Jacob
21
    WILLIAMS & CONNOLLY
22  725 12th STREET, NW
    Washington, DC  20005
23  BY:   AMY B. MCKINLAY, ESQ.
          STEPHEN D. ANDREWS, ESQ.
24          Via VTC
25  Attorneys for Sander Gerber Pension Plan
```

Confidential – Subject to The Protective Order
Richard Markowitz – April 9, 2021

3 (Pages 311 to 314)

---

Page 311

```
 1  A P P E A R A N C E S :
 2
 3  KATTEN
    575 Madison Avenue
 4  New York, NY  10022
    BY:   DAVID GOLDBERG, ESQ.
 5        MICHAEL ROSENAFT, ESQ.
          Via VTC
 6  Attorneys for Klugman
 7
    SEWARD & KISSEL
 8  One Battery Park Plaza
    New York, NY  10004
 9  BY:   SHREY SHARMA, ESQ.
          THOMAS R. HOOPER, ESQ.
10        MARK J. HYLAND, ESQ.
          Via VTC
11  Attorneys for Bernard Tew
12
    LAW OFFICES OF SHELDON S. TOLL
13  2000 Town Center
    Southfield, MI  48075
14  BY:   SHELDON S. TOLL, ESQ.
          Via VTC
15  Attorneys for Hoffmeister
16
    MORVILLO, ABROMOWITZ, GRAND, IASON & ANELLO
17  565 5th Avenue
    New York, NY  10017
18  BY:   RICHARD WEINBERG, ESQ.
    Attorneys for Clove Pension Plan, Mill River
19  Pension Plan, Traden Investment Pension Plan
20
21
22
23
24
25
```

---

Page 312

```
 1  ALSO PRESENT:   JOSE RIVERA, Videographer
 2                  KIRSTEN MARIE DONATO, ESQ.
                    KAMMERADVOKATEN POUL SCHMITH,
 3
                    THOMAS SPILLER
 4                  ROSENBLATT LAW
 5                  KATRINE HOVGAARD B□EGH, ESQ.
 6                  CHRISTINE P. VINTHOR
 7                  CHRISTIAN B□LOW
 8                  MARISE H□RBY SALVESEN
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

---

Page 313

```
 1              I N D E X
 2  WITNESS NAME                          PAGE
 3  RICHARD MARKOWITZ
 4        By Mr. Weinstein                317
 5
 6              * * * * * *
 7
 8            E X H I B I T S
 9
10  R. MARKOWITZ NO.                      PAGE
11  Exhibit 2176    MPSKAT, starting at   319
                    3967
12
    Exhibit 2177    MPSKAT, starting at   333
13                  4043
14  Exhibit 2265    WH-MDL 297405-297408  351
15  Exhibit 2188    KLUGMAN 7264-7270     366
16  Exhibit 2191    MBJ 5113-5115         377
17  Exhibit 2192    KLUGMAN 8149          389
18  Exhibit 2194    WH_MDL 29401-29411    395
19  Exhibit 2202    WH_MDL, starting at   438
                    34510
20
    Exhibit 2212    ELYSIUM 6020028       448
21
    Exhibit 2271    MPSKAT 10488-10489    459
22
    Exhibit 2237    WH_MDL 279206-279207  469
23
    Exhibit 2268    WH_MDL 217374-217377  481
24
25
```

---

Page 314

```
 1        E X H I B I T S ( CONTINUED )
 2
 3  R. MARKOWITZ NO.                      PAGE
 4  Exhibit 2238    WH_MDL 219798-219800  485
 5  Exhibit 2130    WH_MDL 219952-219962  496
 6  Exhibit 2239    WH_MDL 342578-342581  498
 7  Exhibit 2131    WH_MDL 220878-220879  511
 8  Exhibit 2240    WH_MDL 223633-223643  516
 9  Exhibit 2241    WH_MDL 223681-223685  526
10  Exhibit 2242    WH_MDL 217649-217682  529
11  Exhibit 2244    JHVM 10571-10588      547
12  Exhibit 2245    JHVM 10589-10611      554
13  Exhibit 2246    WH_MDL 308203-308208  568
14
15              * * * * * *
16
17
18
19
20
21
22
23
24
25
```

Confidential – Subject to The Protective Order
Richard Markowitz – April 9, 2021

4 (Pages 315 to 318)

Page 315

```
 1                    - - -
 2           Deposition Support Index
 3                    - - -
 4
 5  Direction to Witness Not to Answer
 6  Page Line      Page Line      Page Line
 7  None
 8
 9  Request for Production of Documents
10  Page Line      Page Line      Page Line
11  None
12
13  Stipulations
14  Page Line      Page Line      Page Line
15  None
16
17  Questions Marked
18  Page Line      Page Line      Page Line
19  None
20
21
22
23
24
25
```

Page 316

```
 1         THE VIDEOGRAPHER:  Stand by.  We
 2  are now on the record.  This is the
 3  continued remote video-recorded
 4  deposition of Richard Markowitz.
 5         Today is Friday, April 9, 2021.
 6  The time is now 9:40 a.m. in the Eastern
 7  time zone.
 8         We're here in the matter of In Re,
 9  Customs and Tax Administration of the
10  Kingdom of Denmark et al.
11         All counsel have been noted on
12  record.  My name is Jose Rivera, remote
13  video technician, on behalf of Gregory
14  Edwards LLC.
15         At this time, will the reporter,
16  Michael Friedman, on behalf of Gregory
17  Edwards LLC, please re-swear in the
18  witness.
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
```

Page 317

```
 1  R I C H A R D   M A R K O W I T Z,
 2         called as a witness, having been first
 3  duly sworn according to law, testifies as follows:
 4
    CONTINUED EXAMINATION BY MR. WEINSTEIN:
 5
 6     Q    Mr. Markowitz, if you can turn to
 7  Exhibit 2133, please?
 8         Did each of the partnerships listed
 9  in this exhibit earn profits from the Danish
10  dividend arbitrage strategy?
11     A    (Witness reviewing.)
12         MR. BONGIORNO:  Objection.
13     A    I don't recall.
14     Q    Did the partnerships earn profits
15  from any other investing activity other than
16  the Danish dividend arbitrage strategy?
17     A    Yes.
18     Q    What other investment strategies
19  did these partnerships earn money from?
20     A    Dividend arbitrage investments.
21     Q    So their profits were generated
22  entirely by dividend arbitrage strategies?
23     A    Yes.
24     Q    Did those strategies involve
25  Denmark and Belgium?
```

Page 318

```
 1     A    Yes.
 2     Q    Any other countries?
 3     A    No.
 4     Q    Taking the 2321 plan as an example,
 5  if the plan profited $1 million from the
 6  dividend arbitrage strategy, how much of the
 7  profits did the plan keep?
 8     A    The $1 million were earnings,
 9  became earnings of the investment
10  partnership, and the partners would have
11  received distributions along the percentages
12  that are listed in your document.
13     Q    So ultimately, the 2321 plan, from
14  its interest in the partnership, would get
15  5 percent of the million dollars that it had
16  profited from the strategy?
17     A    Yes.
18     Q    Based on the partnerships listed in
19  this exhibit, do you know how much the RJM
20  Capital Pension Plan Trust earned in total
21  from the dividend arbitrage strategies?
22     A    No.
23     Q    Do you have any ballpark figure of
24  what RJM Capital Pension Plan Trust earned
25  through these partnerships?
```

Confidential - Subject to The Protective Order
Richard Markowitz - April 9, 2021

Page 407

1     MR. WEINSTEIN:  Let me ask just
2 less than two minutes of questions, then
3 we'll take a break.
4     MR. BONGIORNO:  Sure.
5     MR. WEINSTEIN:  Okay.
6     Q    Did this Roadcraft partnership have
7 auditors?
8     A    It had a tax accountant that
9 received information to allow it to prepare
10 partnership tax returns.
11    Q    Did it have an auditor?
12    A    It did not prepare audited
13 financial records, books and records.
14    Q    Okay.  Did it have an investment
15 committee?
16    A    I'm sorry.  Can you repeat that?
17    Q    Did the partnership have an
18 investment committee?
19    A    I don't recall if it established an
20 investment committee.
21    Q    Did it have an investment -- I'm
22 sorry.  We're having technical difficulties.
23         (Whereupon a discussion was held
24 off the record.)
25         MR. WEINSTEIN:  Why don't we take a

Page 408

1 break now?
2         MR. BONGIORNO:  Sure.  Marc, my
3 thought is when we come back, maybe
4 we'll do a shorter session and then do a
5 lunch break so that we're not waiting
6 too long.  But it seems a little too
7 early for lunch right now.
8         MR. WEINSTEIN:  Yeah, that's a good
9 plan.
10        THE VIDEOGRAPHER:  Stand by.  The
11 time is 12:05 p.m. and we're going off
12 the record.
13        (Brief recess taken.)
14        THE VIDEOGRAPHER:  Stand by.  The
15 time is 12:14 p.m. and we're back on
16 record.
17    Q    Mr. Markowitz, did you tell Joseph
18 Herman that he did not have to provide any
19 money in order to participate in this
20 investment strategy?
21    A    I don't recall.
22    Q    Can you please turn to
23 Exhibit 1777?
24    A    Can you try to help us find what
25 book that's in?

Page 409

1     Q    It would be at the front of a book.
2 I don't know which book.
3         MR. BONGIORNO:  I think it's the
4 first book.  Yeah.  It's Day 1,
5 Volume 1.
6     Q    So this is an e-mail from
7 Mr. Klugman to a number of people, including
8 you.  "Arbitrage Instructions and Questions."
9         Who are -- who is Matthew Cooper?
10    A    An individual introduced to me by
11 Robert Klugman.
12    Q    What role, if any, did Mr. Cooper
13 have in connection with the dividend
14 arbitrage strategy?
15    A    He assisted the pension plans in
16 executing trades.
17    Q    And who is Ira Reibeisen?
18    A    An individual introduced to me by
19 Robert Klugman.
20    Q    Did he have the same role as
21 Mr. Cooper?
22    A    Yes.
23    Q    Do you recall being part of any
24 discussions about trading instructions for
25 this dividend arbitrage trading?

Page 410

1     A    I just remember this e-mail.  I
2 don't recall being on a -- having a
3 conversation about arbitrage instructions.
4     Q    Okay.  And is the attachment to the
5 e-mail meant to provide guidance for how
6 Mr. Cooper and Mr. Reibeisen would do the
7 trading for the pension plans?
8     A    How they would execute trading
9 instructions on behalf of the plans, yes.
10    Q    Okay.  At the bottom of Page 1,
11 there are three questions that Mr. Cooper
12 raises.  And the second one is, "How do we
13 reach POGO?"
14         Do you know who POGO is?
15    A    Yes.
16    Q    Who is that?
17    A    An employee of Solo Capital.
18    Q    Do you know his name?
19    A    I believe it's Mark Anderson,
20 something like that.  I don't have an exact
21 recollection.
22    Q    Okay.  Does Mark Paterson ring a
23 bell?
24    A    Yes.
25    Q    Okay.

Confidential - Subject to The Protective Order
Richard Markowitz - April 9, 2021

Page 411

1    A    Better bell.
2    Q    Okay.  Do you think that's who
3  "POGO" is?
4    A    I believe so.
5    Q    All right.  If you turn to the next
6  page, step one in the trading day is around
7  7:00 a.m. to request liquidity using 34
8  e-mails.
9        And is the 34 -- the 34 e-mails are
10  for the 34 pension plans that were
11  participating prior to adding six more?
12    A    Yes.  One request for each client.
13    Q    Okay.  Who was the request for
14  liquidity supposed to be sent to?
15    A    A broker.
16    Q    Okay.  How would Mr. Cooper or
17  Mr. Reibeisen know which broker to reach out
18  to for liquidity, or was that left to their
19  discretion?
20    A    Can you rephrase the question,
21  please?
22    Q    How did Mr. Cooper and
23  Mr. Reibeisen know what broker to reach out
24  to for liquidity?
25    A    They would have received

Page 412

1  information along with the allocations of the
2  market liquidity we received.  We would have
3  received information from Solo regarding
4  which brokers could source that liquidity.
5    Q    Okay.  So Solo -- what information
6  would Solo provide to Cooper and Reibeisen in
7  the morning?
8    A    Allocation of shares and
9  information on broker or other counterparties
10  for the hedging transactions to send the
11  e-mails to and trade with.
12    Q    Okay.  So would Solo select the
13  security or the issuer that was going to be
14  traded in?
15    A    I don't understand your question.
16    Q    Well, in order to seek liquidity,
17  you have to be seeking it in a particular
18  stock.
19        Right?
20    A    Yes.
21    Q    Okay.  Would Solo select the stock
22  for which Cooper would send the liquidity
23  e-mail?
24    A    The stock was common knowledge.  It
25  was a limited number of publicly traded

Page 413

1  European stocks who were going to be
2  declaring dividends.
3        So all parties, including anyone
4  looking at a Bloomberg terminal would know
5  when a company was getting ready to pay a
6  dividend.  And we would receive information
7  about allocations of that particular security
8  from Solo.
9    Q    Okay.  So if TDC's dividend date
10  was coming up, how would Mr. Cooper know that
11  the plans wanted to trade in TDC securities?
12    A    The plans would have given them
13  advice or instructions that they were
14  interested in trading dividend-paying stocks
15  in Denmark and other countries.  And there's
16  a list of -- a limited list of publicly
17  traded companies that pay dividends.
18    Q    Okay.  And then, in order for Solo
19  to know that it needs to provide to Cooper,
20  the liquidity provider, how would Solo know
21  what stocks the plans wanted to trade in that
22  day?
23    A    I don't agree with the premise of
24  your question.
25    Q    Was it Solo -- the first thing that

Page 414

1  would happen that day was that Solo would
2  provide Mr. Cooper the liquidity and
3  allocation and broker for the trading?
4    A    Yes.
5    Q    Okay.  How would Solo know which
6  stocks to provide that information for?
7    A    All participants across the
8  financial markets around the world who
9  participate in dividend arbitrage have the
10  same list.
11    Q    Okay.  But the pension plans
12  didn't -- but the pension plans didn't trade
13  in every dividend issuing company in the
14  world.
15        Right?
16    A    So it's even a shorter list.
17    Q    So, basically, Solo understood that
18  if any one of a number of Danish securities
19  had a dividend date coming up, he's going to
20  send -- Solo is going to send this liquidity
21  e-mail to Cooper?
22    A    Subject to the pension plan having
23  information that it was a profitable
24  opportunity, looking at the dividend yield of
25  the company, and for its own investment.