# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

In re

SKAT TAX REFUND SCHEME LITIGATION

This document relates to:

18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01794; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 21-cv-05339.

Case No. 1:18-md-2865-LAK

# DEFENDANT MICHAEL BEN-JACOB'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION FOR SEPARATE TRIALS</u>

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT FACTUAL BACKGROUND....................................................3

III.  LEGAL STANDARD...........................................................................................5

IV.   ARGUMENT .........................................................................................................6

    A.    A joint trial will prejudice Ben-Jacob in at least two independent ways................6

        1.    The Principals' advice-of-counsel defense is directly adverse to
            Ben-Jacob's defense...................................................................6

        2.    Ben-Jacob should not be held responsible for the conduct of other
            attorneys. ..................................................................................8

        3.    Limiting jury instructions will not cure the prejudice. ...........10

    B.    Expediency and judicial economy favor separate trials........................12

V.    CONCLUSION.....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Buscemi v. Pepsico, Inc.*,
    736 F. Supp. 1267 (S.D.N.Y. 1990)....................................................................5

*Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*,
    209 F. Supp. 2d 334 (S.D.N.Y. 2002)...............................................................6

*Cashman v. Montefiore Med. Ctr.*,
    191 B.R. 558 (S.D.N.Y. 1996)...........................................................................5

*Deskovic v. City of Peekskill*,
    673 F. Supp. 2d 154 (S.D.N.Y. 2009).............................................................10

*Hecht v. City of New York*,
    217 F.R.D. 148 (S.D.N.Y. 2003) .......................................................................5

*Ismail v. Cohen*,
    706 F. Supp. 243 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990) ..................5

*Markowski v. S.E.C.*,
    34 F.3d 99 (2d Cir. 1994)..................................................................................6

*Pfizer, Inc. v. Stryker Corp.*,
    No. 02 Civ. 8613 (LAK), 2005 WL 221078 (S.D.N.Y. Jan. 28, 2005) (Kaplan,
    J.)........................................................................................................................5

*Ropfogel v. Wise*,
    112 F.R.D. 414 (S.D.N.Y. 1986) .....................................................................12

*U.S. v. Aronson*,
    No. 2:12-cr-00245-ADS-GXB (E.D.N.Y. May 5, 2013), Dkt 167...................8

*U.S. v. Bankman-Fried*,
    No. S6 22-cr-0673 (LAK), 2023 WL 6392718 (S.D.N.Y. Oct. 1, 2023) ............2, 6

*United States v. Nordlicht*,
    No. 16-cr-00640 (BMC), 2018 WL 1796542 (E.D.N.Y. Apr. 16, 2018) ...............11

*United States v. Shkreli*,
    260 F. Supp. 3d 247 (E.D.N.Y. 2017) ............................................................11

*Weiss v. Nat'l Westminster Bank PLC*,
    2017 WL 10058916 (E.D.N.Y. Mar. 31, 2017)..........................................11, 12

**Rules**

Fed. R. Civ. Proc. 21 ................................................................................................................5

Fed. R. Civ. Proc. 42(b) ...........................................................................................................5

2630182

I.     **INTRODUCTION**

Defendant Michael Ben-Jacob respectfully requests that this Court exercise its considerable discretion to try SKAT's claims against him separately from the claims to be tried against the five other individual defendants and sixty-nine pension plan defendants presently set for trial on January 7, 2025.[1]

In the joint trial, Ben-Jacob faces serious prejudice, which can only be alleviated by trying him separately. Ben-Jacob is a New York lawyer, a former partner at Kaye Scholer and then at Arnold & Porter, who has been accused of aiding and abetting his clients and Sanjay Shah in a half billion-dollar fraud. Ben-Jacob received none of the tax reclaims from the purported fraud, and his defense at trial will be that he is a New York trust and estates lawyer who was asked by his clients to perform specific legal work for which he was paid on an hourly basis. Ben-Jacob is in essence being sued for doing his job as a lawyer, even though he did not knowingly or intentionally participate in any fraud or make any negligent misrepresentation.

Ben-Jacob became a focal point in this multi-district litigation only after his clients Richard Markowitz and John van Merkensteijn explicitly asserted an advice-of-counsel defense in the cases against them. No other lawyer, and no law firm, has been named as a defendant, although numerous other lawyers and firms are the subject of the advice-of-counsel defense. Crucially, many of those other lawyers are Ben-Jacob's Kaye Scholer colleagues, and both SKAT and the Principals consistently embrace interchangeably referring to Ben-Jacob and Kaye Scholer's advice and role, to the undeniable prejudice of Ben-Jacob. Further, while they had the right to waive privilege, the assertion of the advice-of-counsel defense (whether formally or informally) creates perverse incentives for the Principals (Markowitz, van Merkensteijn, and Robert Klugman) and SKAT, all redounding to the substantial prejudice of Ben-Jacob.

---

[1] Ben-Jacob submits this memorandum pursuant to Paragraph 2 of the Court's Pretrial Order No. 36, dated April 1, 2024 (ECF No. 978), providing leave for Ben-Jacob, as a defendant in *Skat v. Ben-Jacob*, 21-cv-05339, to "file any motions to sever the case against defendant Ben-Jacob by May 10, 2024."

This Court is familiar with the advice-of-counsel defense, and its potential uses in a case alleging fraud. *See U.S. v. Bankman-Fried*, No. S6 22-cr-0673 (LAK), 2023 WL 6392718 (S.D.N.Y. Oct. 1, 2023). It creates an incentive for a defendant to identify any lawyer or law firm in the vicinity of a transaction alleged to be fraudulent, and to use that attorney's presence as the basis for a defense. While that poses no prejudice to the lawyer in a case where the lawyer is not also a defendant (causing prejudice instead to the adversary), where the lawyer is also a defendant, it creates several serious problems. The client-defendant has every reason to emphasize the role of the lawyer in the transaction to create an advice-of-counsel defense. But the mere assertion of this defense has the effect of throwing the lawyer co-defendant under the bus. Here, the Principals are incentivized to assert the most extensive possible advice-of-counsel defense, purporting to rely on numerous lawyers and firms. That defense, emphasizing or even exaggerating the supposed role of lawyers, creates grave prejudice for the one lawyer defendant, Ben-Jacob. And SKAT is a more-than-willing beneficiary of this prejudice.

As set forth more fully below, the constellation of parties and facts here makes the prejudice that Ben-Jacob faces acute. It can only be addressed by a separate trial. While such a separate trial may involve some duplication of effort by the parties and the Court, there are efficiencies to be achieved by this approach as well, and in any event, efficiency is not a substitute for fairness, and not an adequate justification for the prejudice to Ben-Jacob. Ben-Jacob performed legal work for the Principals on a number of issues, but that work did *not* encompass the key issues SKAT raises, such as whether the plans beneficially owned the Danish shares under Danish law. He did not profit from the tax reclaims. He should be able to present his defense in a trial without five individual co-defendants and a party adversary all motivated to overly emphasize his role in the underlying events in a way that will deprive him of a fair trial.

## II.    RELEVANT FACTUAL BACKGROUND

Ben-Jacob is set to be tried alongside his former and current clients, the Principals, as well as two of their wives, Jocelyn Markowitz and Elizabeth van Merkensteijn. *See* Pretrial Order No. 35, ECF No. 977. We recite only the facts relevant to the disposition of the motion.

The Principals participated in a dividend arbitrage trading strategy that SKAT now alleges was a fraud. As part of the trading strategy, the Principals relied on numerous professional advisors, including multiple law firms: Hannes Snellman, which provided a written opinion on the Danish tax implications of the trading strategy; Crowell & Moring LLP, which advised on agreements with Solo; Freshfields Bruckhaus Deringer LLP, which advised on dividend arbitrage trading in Belgium; and Norton Rose Fulbright, which advised on dividend arbitrage trading in Germany.[2] Kaye Scholer also advised on certain U.S. legal issues, including related to securities law, tax law, and pension law. Ben-Jacob, a Kaye Scholer[3] trusts and estates lawyer, answered the questions on discrete U.S. legal issues that he was qualified to address, and connected the Principals with other lawyers at Kaye Scholer who had the expertise the Principals required and on occasion coordinated the actions of those lawyers to ensure the Principals' needs were met. He also performed or supervised administrative tasks. While Ben-Jacob provided advice on trusts and estates issues, as well as reviewed and commented on contracts and other similar legal tasks, the other Kaye Scholer attorneys provided advice on their areas of expertise including employee benefits and retirement plans, U.S. tax law, and securities law. *See id.*, Ex. 5, Dep. of Michael Ben-Jacob ("Ben-Jacob V1") at 107:24–108:11 (Oct. 11, 2021) (relying on another Kaye Scholer attorneys for pension issues); *id.* at 182:24–183:12 (relying on another

---

[2] *See* Declaration of Elliot R. Peters ("Peters Decl."), Ex. 4, Dep. of John van Merkensteijn ("van Merkensteijn V2") at 392:5–23 (Apr. 20, 2021) ("I think [the Hannes Snellman opinion] formed the basis for the conclusion that we could do the dividend arbitrage transactions in Danish securities."); *id.* at 366:19–367:15, 369:1–11 (testifying the Principals used Crowell & Moring in negotiating an agreement with Solo); *id.* at 385:17–386:3 (testifying the Principals sought legal advice from Freshfields in connection with the dividend arbitrage trading); *id.*, Ex. 6, Dep. of Michael Ben-Jacob ("Ben-Jacob V2") at 348:15–349:12 (Oct. 12, 2021) (testifying that the Principals provided an opinion from Norton Rose).

[3] Kaye Scholer merged with Arnold & Porter on January 1, 2017.

Kaye Scholer attorney for tax issues); Ben-Jacob V2 at 300:15–23 (relying on another Kaye Scholer attorney for securities law). This was and is a common arrangement for many law firms advising sophisticated clients on complex transactions. Indeed, given the complexity of the trading strategy at issue here, it is unlikely that there is any single practicing attorney in the entirety of the United States who is sufficiently versed in each of the areas of law this matter touched upon, such that they could answer all questions posed without consulting and/or deferring to other, more specialized practitioners.

Ben-Jacob, however, is the only lawyer being tried alongside the Principals. While Ben-Jacob reviewed the work of other Kaye Scholer lawyers with different areas of legal specialization, and reviewed certain contracts and other documents, at no point did he conduct, or was he asked to conduct an independent analysis of Danish tax law or tax qualification under U.S law. *See* Ben-Jacob V1 at 21:23–22:6 (testifying "we did not advise on the trading of Danish Securities, We advised only on the U.S. and pension aspects -- U.S. tax aspects of the ownership of those shares"), 54:19–55:3 ("I don't believe, to the best as I can recall, ever having any direct conversations with [Shah]."). Ben-Jacob also did not participate in the due diligence related to Sanjay Shah and Solo Capital, and had very little direct communication with Shah, who SKAT alleges was the mastermind of this alleged fraud. Finally, Ben-Jacob was not involved in the day-to-day trading activity that is at the heart of SKAT's lawsuit.

SKAT now seeks to recover from Ben-Jacob and his co-defendants the more than $510 million in dividend tax reclaims (plus interest) it paid out. But Ben-Jacob and Kaye Scholer *never* received direct proceeds from the Principals' trading strategy. *See* Peters Decl., Ex. 7 (SKAT's Resp. to RFA Nos. 43–45) (admitting Ben-Jacob and Kaye Scholer did not directly receive proceeds from the reclaims at issue). Kaye Scholer received its standard legal fees at its normal hourly rates, and Ben-Jacob received his normal compensation from Kaye Scholer, commensurate with that of his peers and based on his *collective* contributions to the firm, including representation of other clients. Though SKAT originally brought unjust enrichment, money had and received, and payment by mistake claims against Ben-Jacob, SKAT has since

4

conceded that it cannot connect Ben-Jacob's compensation to any of the reclaims it paid out and dismissed those claims. *See* ECF No. 918. SKAT is still bringing those claims, however, against Ben-Jacob's co-defendants who are alleged to have actually received money from the reclaims.

## III.    LEGAL STANDARD

A court may order separate trials on "issues, claims, crossclaims, counterclaims, or third-party claims" in order to "avoid prejudice, or to expedite and economize." Fed. R. Civ. Proc. 42(b). Only one of the factors—prejudice, expediency, or economy—needs be met to warrant separate trials. *See Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990). There is no bright-line test for ordering separate trials. Instead, courts are guided by the following factors:

> (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.

*Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613 (LAK), 2005 WL 221078, at *1 (S.D.N.Y. Jan. 28, 2005) (Kaplan, J.) (quoting *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001)). The application of Rule 42(b) is determined on a case-by-case basis, guided by the factors above; the party seeking separate trials bears the burden of establishing that separate trials are warranted. *See Cashman v. Montefiore Med. Ctr.*, 191 B.R. 558, 562–63 (S.D.N.Y. 1996); *Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1272–73 (S.D.N.Y. 1990). The Court has broad discretion in the matter. *Pfizer, Inc*, 2005 WL 221078, at *1.[4]

There is no question that this Court may order separate trials should it determine that fairness requires that Ben-Jacob be tried separately.

---

[4] Relatedly, under Rule 21, a court may at any time, on just terms, add or drop a party, or sever any claim against a party. Motions under Rule 21 and Rule 42(b) are considered using the same standard. *See Hecht v. City of New York*, 217 F.R.D. 148, 151 (S.D.N.Y. 2003). Ben-Jacob thus moves, in the alternative, to sever the claims against him under Rule 21.

## IV.    ARGUMENT

A separate trial against Ben-Jacob will both avoid manifest prejudice to Ben-Jacob and foster certain efficiencies and judicial economy.

### A.    A joint trial will prejudice Ben-Jacob in at least two independent ways.

#### 1.    The Principals' advice-of-counsel defense is directly adverse to Ben-Jacob's defense.

The Principals intend to rely on an advice-of-counsel defense to defeat SKAT's claims. *See* Stipulation and Order, ECF No. 521 (Jan. 26, 2021) ("WHEREAS, . . . Richard Markowitz and John van Merkensteijn . . . intend to assert the [advice-of-counsel] Defense[.]"). To establish an advice-of-counsel defense, a party must show he "made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith." *Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994) (citation omitted). The advice-of-counsel defense can defeat the scienter element of a fraud claim. *See Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*, 209 F. Supp. 2d 334, 343 (S.D.N.Y. 2002).

In a joint trial, Ben-Jacob's testimony will directly contradict the testimony of his clients as to the scope of his representation of them and the extent of his knowledge. The Principals have every incentive to testify and argue every inference in support of Ben-Jacob's (and every other attorney's) purported involvement in and knowledge of the Danish tax reclaim strategy. Indeed, the Principals no doubt intend to argue that some lawyer or combination of lawyers "blessed" the legality of their strategy. *See Bankman-Fried*, 2023 WL 6392718, *2; van Merkensteijn V2 at 383:22–384:5  (agreeing that he was "operating at the time under the assumption that if Kaye Scholer had raised an issue, and then the transaction proceeded, that Kaye Scholer had resolved the issue" and testifying that "if they say it doesn't work, I wouldn't do it"); Peters Decl., Ex. 2, Dep. of Robert Klugman at 302:9–303:1 (Jan. 28, 2021) (testifying Kaye Scholer's role was "womb to tomb" and Kaye Scholer "knew what trades were going on").

Ben-Jacob's defense, on the other hand, is that he advised the Principals on discrete U.S. legal issues, assisted with certain partnership agreements, connected the Principals with other

Kaye Scholer attorneys on issues outside of his expertise, and performed and supervised administrative tasks. As Ben-Jacob explained in his deposition, Kaye Scholer's limited role was to "advise upon U.S. legal issues, U.S. tax and pension plan issues, and occasional other coordination advice with foreign counsel and administrative matters." *See* Ben-Jacob V1 at 18:1–17. Kaye Scholer "was certainly not involved in all aspects." *Id.* Ben-Jacob had little direct contact with Sanjay Shah. *Id.* at 54:19–55:3. Ben-Jacob is *not* an expert on Danish law nor qualified to comment on aspects of Danish or foreign law. *Id.* at 154:14–155:23. And to the extent Ben-Jacob lacked expertise in other areas of law such as pension plans, securities, and taxation, he relied on his colleagues at Kaye Scholer (a common arrangement at law firms), *see e.g.*, *id.* at 107:24–108:11, and those colleagues also acted and advised appropriately.[5]

The Principals, by contrast, have taken the position that Ben-Jacob advised on all aspects of the trading strategy. The Principals' repeatedly state that they "would have relied extensively on the advice of Kaye Scholer." *See* Peters Decl., Ex. 1, Dep. of Richard Markowitz ("Markowitz V2") at 476:16–477:3 (Apr. 9, 2021). Throughout their depositions, they consistently responded to questions by stating "[w]e took the advice of our counsel." *Id.* at 483:9–19. Indeed, the Principals testified they would not have continued the trading strategy but for Kaye Scholer's advice. *See, e.g.*, van Merkensteijn V2 at 372:22–373:11("We gave them everything we did. We gave them all the information about everything as we went along. And if they had seen any red flags, which occasionally on some issue or another they did, we would discuss it, figure out how to resolve it, or if we saw a red flag, they would help us resolve it."). And that they specifically forwarded everything to Ben-Jacob. *See, e.g.*, Peters Decl., Ex. 3, Dep. of John van Merkensteijn ("van Merkensteijn V1") at 238:6–14 (Apr. 19, 2021) ("Anything I saw I would forward to him."); *see also* Klugman at 304:2–7 (testifying that he did not withhold any information from Kaye Scholer).

---

[5] His assertion that he should not—and legally cannot—be held accountable for the acts and advice of other Kaye Scholer lawyers, and that their knowledge cannot be imputed to him, should in no way be misconstrued as a view that any of them acted improperly.

This conflicting, self-interested testimony is at odds with Ben-Jacob's actual role, which gives rise to an unusual and uncurable prejudice to Ben-Jacob in a joint trial. This prejudice is only exacerbated by the Principals and their wives outnumbering Ben-Jacob five to one and SKAT jumping on that bandwagon: a jury is much more likely to accept the position of a plaintiff when joined by five aligned co-defendants taking positions that expand Ben-Jacob's role. The Principals' defense may not be intended to throw Ben-Jacob under the bus, but their intent to rely in the alternative on an advice-of-counsel defense—an argument they necessarily have to make simultaneously with their defense that no fraud occurred—nonetheless has that effect. SKAT is unquestionably the beneficiary of this prejudice to Ben-Jacob, and it creates an unnecessary and substantial risk of juror confusion. Jurors may also, for example, unfairly penalize Ben-Jacob in a joint trial for taking positions that are inconsistent with those of his clients who are also defendants—even if legally allowed and necessary to defend himself.

The tension between the defense of the Principals and Ben-Jacob, arising from the advice-of-counsel defense, mandates separate trials. *See, e.g.*, Peters Decl. Ex. 8 (Memo. of Decision and Order at 13–14, *U.S. v. Aronson*, No. 2:12-cr-00245-ADS-GXB (E.D.N.Y. May 5, 2013), Dkt 167). In *Aronson*, the court granted a motion to sever where an attorney was being tried alongside his former client. *Id.* The co-defendant client was accused of operating a Ponzi scheme and intended to invoke an advice-of-counsel defense in similar fashion to the Principals. The court found severance was warranted because "in order to believe the testimony of the [client-defendant], the jury must necessarily disbelieve the testimony of the [attorney-defendant]." *Id.* The positions of Ben-Jacob and his clients on the scope of Ben-Jacob's role and knowledge are similarly irreconcilable, warranting the same result.

## 2. Ben-Jacob should not be held responsible for the conduct of other attorneys.

A separate form of prejudice arises because the Principals' advice-of-counsel defense encompasses advice from many more attorneys than just Ben-Jacob—unfairly risking a spillover effect resulting in the jury improperly holding him individually liable for advice given by other

attorneys both from his firm and other firms. Placing the blame on Ben-Jacob's shoulders for advice given by countless lawyers is manifestly unjust.

To begin, SKAT and the Principals consistently reference the work and advice of *Kaye Scholer*, as opposed to Ben-Jacob alone, thereby risking that the jury conflates Ben-Jacob's advice or knowledge with the advice or knowledge of any of the multiple other Kaye Scholer lawyers that assisted in this matter. *See* Defendants' Letter at 8, ECF No. 953 (Jan. 24, 2024); *see, e.g.*, Markowitz V2 at 476:16–477:3 (testifying "And again, we would have relied extensively on the advice of Kaye Scholer"); Klugman at 63:19–64:2 ("Well, Kaye Scholer was involved in every part of the transaction."). The Principals were advised by several other Kaye Scholer lawyers with different areas of expertise. The Principals also relied on legal advice from lawyers and firms beyond Ben-Jacob and Kaye Scholer—including firms both in the United States and abroad. *See e.g.*, van Merkensteijn V2 at 366:19–23 (testifying that the Principals received legal advice "[f]rom Kaye Scholer and other firms"); *id.* at 392:5–23 (testifying that the Principals received a memorandum on the tax implications of the trading strategy from Danish law firm, Hannes Snellman).

While the advice-of-counsel defense will involve numerous attorneys, only one has been sued by SKAT and only one is scheduled to be on trial: Ben-Jacob. The advice-of-counsel defense thus runs the very serious risk of the jury attributing *all* of the legal advice that the Principals received, no matter the source, to Ben-Jacob. Ben-Jacob will be unduly prejudiced because his work will be conflated with the work of the other attorneys from both his firm and other law firms. Ben-Jacob cannot properly be held liable for the knowledge, intent or actions of other attorneys, as he is an individual defendant whose liability turns exclusively on what he knew, intended, and did.

Separate trials eliminate the prejudice here—a prejudice unique to Ben-Jacob—while minimizing disruption to SKAT and the Principals' cases. The Principals can still rely on their advice-of-counsel defense and argue that they relied on various law firms and lawyers, including Ben-Jacob, in executing the trading strategy. But critically Ben-Jacob will not suffer spillover

prejudice caused by this defense. *Cf. Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) ("[G]iven the complexity of this case, the many different defendants who are alleged to have harmed Plaintiff, and the significant differences between Plaintiff's claims against [defendant] and [the] claims against other defendants, there is a risk that trying all of Plaintiff's claims in a single trial could lead to 'guilt by association and spillover prejudice.'" (citation omitted)). SKAT can, if it wishes, call the Principals as fact witnesses in Ben-Jacob's separate trial and thus would not suffer any prejudice. But in a separate trial for Ben-Jacob, testimony regarding advice given by his Kaye Scholer colleagues, or attorneys from an entirely different firm, of which Ben-Jacob was not aware would be irrelevant and should be inadmissible. Ensuring Ben-Jacob receives a fair trial far outweighs any minimal inconvenience in severing one defendant from an already complex, multi-defendant trial.

### 3.    Limiting jury instructions will not cure the prejudice.

The prejudice Ben-Jacob faces in a joint trial cannot be cured by safeguards such as limiting jury instructions. As it stands, Ben-Jacob must defend himself against SKAT's claims while facing his clients' advice-of-counsel defense. SKAT can thus present its case against Ben-Jacob—eager to collect through him a disproportionate share of any joint and several judgment—twice: once in its case-in-chief, and a second time through the Principals. The Principals serve as an opportune echo chamber for SKAT in its case against Ben-Jacob. SKAT and the Principals become oddly aligned insomuch as both intend to argue that Ben-Jacob was a key and indispensable figure in the Danish dividend arbitrage trading strategy, even though he wasn't. *See, e.g.*, SKAT Letter at 4, ECF No. 954 (Jan. 31, 2024) (arguing "Ben-Jacob worked with [the Principals] from the very outset of their scheme in 2012" and citing Klugman's testimony that Ben-Jacob was involved in every aspect of the trading strategy). This is not as simple as limiting the jury's use of one or two pieces of evidence: SKAT and the Principals' shared interest in emphasizing Ben-Jacob's involvement will pervade the entirety of both SKAT's and the Principals' cases-in-chief. Limiting jury instructions cannot mitigate this

manifest prejudice to Ben-Jacob, and courts have granted separate trials for this reason. *See United States v. Shkreli*, 260 F. Supp. 3d 247, 255 (E.D.N.Y. 2017) ("Through such double prosecution . . . , there is a serious risk that the jury would be prevented from making a reliable judgment about [liability] even with limiting instructions by the court."); *United States v. Nordlicht*, No. 16-cr-00640 (BMC), 2018 WL 1796542, at *3 (E.D.N.Y. Apr. 16, 2018) (same).

The degree of complexity introduced here—where multiple defendants with different information at different times over the course of many years, faced with different legal claims and varying legal standards—only underscores that limiting instructions cannot mitigate the prejudice that Ben-Jacob faces as the sole attorney defendant. The jury will be asked to evaluate the mental states of six individuals, each with differing roles, and grapple with the multiple claims brought against Ben-Jacob and his co-defendants—claims with differing scienter standards—across a period of years. *See infra* Part IV.B. Because as a lawyer Ben-Jacob occupied a distinct role as compared to his co-defendants who are alleged to have actually received the proceeds of the strategy (namely, the tax reclaims), the jury will be asked to parse his knowledge from not only his co-defendants but also that of the many other lawyers who provided the Principals with legal advice. For example, the jury will need to evaluate whether Ben-Jacob was aware of the legal advice the Principals received from other lawyers; the basis for the legal advice the other lawyers provided; what different information the Principals provided to other lawyers; and whether Ben-Jacob was aware of any information provided from or to other lawyers. While that analysis may be necessary in a trial of Ben-Jacob, it is not for a trial of his clients. The most effective and efficient way to avoid the confusion resulting from the complexity introduced where multiple defendants received advice from numerous lawyers, and only one of those lawyers has been sued, is separate trials. Jury instructions "will not be sufficient to reduce or eliminate the prejudice of jury confusion here." *See Weiss v. Nat'l Westminster Bank PLC*, 2017 WL 10058916, at *3 (E.D.N.Y. Mar. 31, 2017). As the court in *Weiss* recognized, "[i]n this case, no limiting instruction to a jury could undo the possible confusion that may result when a jury is asked to assess extensive and complex scienter evidence

11

against one defendant by putting aside a significant amount of evidence introduced against another defendant on the same issue." *Id.*

### B.     Expediency and judicial economy favor separate trials.

Severing the claims against Ben-Jacob also makes the trial against the remaining defendants more streamlined and unburdens the Court and the jury of the inefficiencies that will ensue if Ben-Jacob is not severed.

***First***, evidence regarding Ben-Jacob's professional responsibilities as an attorney is irrelevant to SKAT's claims against the other defendants. SKAT has focused its percipient discovery and an expert report on the issue of whether Ben-Jacob complied with his professional obligations to his clients, which SKAT alleges is relevant to whether he knowingly participated in a fraud. Ben-Jacob will rely on expert testimony to show that his conduct was in line with professional standards and to educate the jury on the workings of large law firms and the areas of specialization of various attorneys at those firms. Evidence of Ben Jacob's adherence to professional standards as a lawyer is necessary to analyze Ben-Jacob's role and substantive knowledge during every point in the attorney-client relationship. This granular analysis is irrelevant to SKAT's case against the other defendants. *See Ropfogel v. Wise*, 112 F.R.D. 414, 416 (S.D.N.Y. 1986) ("Where the issues sought to be separately tried before a jury are significantly different from one another, . . . and the separate issues require the testimony of different witnesses and documentary proof, and the party opposing the severance will not be prejudiced if it is granted, the direction to be taken by the Court is for separate trials.").

***Second***, in deciphering what work Ben-Jacob did as compared to other Kaye Scholer lawyers, the jury will have to examine documents and conversations related to his work that would be unnecessary in a trial of the other defendants. As discussed above, while the Principals may rely on advice from any Kaye Scholer attorney for their advice-of-counsel defense, SKAT cannot conflate Ben-Jacob's work with the work of other Kaye Scholer lawyers to prove its claims against Ben-Jacob. Simply put, Ben-Jacob can only be found liable for his own conduct

12

and knowledge, not that of others. Differentiating each action taken by the lawyers at Kaye Scholer and other firms from the actions of Ben-Jacob is irrelevant to a trial of the other defendants.

*Third*, Ben-Jacob has been sued in connection with reclaims submitted by six pension plans associated with former colleagues of Markowitz and van Merkensteijn who participated in the trading strategy with Markowitz and van Merkensteijn. But because those individuals have separately settled with SKAT, no other defendant in this trial has been sued in connection with those plans. *See Skatteforvaltningen v. Michael Ben-Jacob*, No. 1:21-cv-05339-LAK (S.D.N.Y.). As a result, ordering separate trials carves out those pension plans and related evidence from the trial against the Principals.

In sum, any duplication of evidence will be minimal, and any perceived inefficiencies with separate trials are outweighed by the substantial prejudice and inefficiencies that will be avoided by separate trials. Even if the Court were to put aside the prejudice to all defendants that would result from including Ben-Jacob in a trial alongside his clients, doing so would be inefficient given the number of issues unique to Ben-Jacob (and irrelevant to the remaining defendants) that will require substantial attention.

## V.    CONCLUSION

Trying Ben-Jacob alongside his clients who have asserted an advice-of-counsel defense creates manifest prejudice to him where both SKAT and his co-defendants are incentivized to overinflate his role, at his expense. The spillover effect of the jury conflating Ben-Jacob's work with the work of many other attorneys involved with the trading strategy further deepens the unfairness of a joint trial.

For the foregoing reasons, Defendant Ben-Jacob respectfully requests that the Court grant the motion for separate trials.

2630182

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: May 10, 2024

By:    */s/ Elliot R. Peters*
ELLIOT R. PETERS
JULIA L. ALLEN
NIHARIKA S. SACHDEVA
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188
epeters@keker.com
jallen@keker.com
nsachdeva@keker.com

DEWEY PEGNO & KRAMARSKY
Thomas E.L. Dewey
Sean K. Mullen
777 Third Avenue, 37th Floor
New York, NY 10017
Telephone: (212) 943-9000
Facsimile: (212) 943-4325
tdewey@dpklaw.com
smullen@dpklaw.com

Attorneys for Defendant Michael Ben-Jacob

14

2630182