**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTERFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br>18-cv-07824; 18-cv-07827; 18-cv-07828;<br>18-cv-07829; 19-cv-01781; 19-cv-01783;<br>19-cv-01785; 19-cv-01788; 19-cv-01791;<br>19-cv-01792; 19-cv-01794; 19-cv-01798;<br>19-cv-01800; 19-cv-01801; 19-cv-01803;<br>19-cv-01806; 19-cv-01808; 19-cv-01809;<br>19-cv-01810; 19-cv-01812; 19-cv-01813;<br>19-cv-01815; 19-cv-01818; 19-cv-01866;<br>19-cv-01867; 19-cv-01868; 19-cv-01869;<br>19-cv-01870; 19-cv-01871; 19-cv-01873;<br>19-cv-01894; 19-cv-01896; 19-cv-01918;<br>19-cv-01922; 19-cv-01926; 19-cv-01928;<br>19-cv-01929; 19-cv-01931; 21-cv-05339 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANT MICHAEL BEN-JACOB'S MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Dated: May 10, 2024

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 4

STANDARD OF REVIEW .................................................................................................. 9

ARGUMENT ....................................................................................................................... 9

I.      SKAT'S CLAIMS AGAINST BEN-JACOB ASSERTED IN COMPLAINTS FILED
        AFTER JULY 17, 2018 ARE TIME-BARRED BY THE TERMS OF THE TOLLING
        AGREEMENT ........................................................................................................... 9

II.     SKAT'S JUNE 2021 CLAIMS CONCERNING RECLAIMS PAID BEFORE JUNE 16,
        2014 ARE TIME-BARRED UNDER THE APPLICABLE STATUTE
        OF LIMITATIONS .................................................................................................. 11

        A.      SKAT's Claims Are Subject to the Statute of Limitations Applicable to Fraud
                Claims ........................................................................................................... 12

        B.      SKAT's June 2021 Claims Are Time-Barred as to Reclaims Paid Before
                June 16, 2014 ................................................................................................ 14

        C.      SKAT Knew, or Should Have Known, of Facts Suggesting Ben-Jacob's
                Participation in the Schedule A Plans' Alleged Fraud Over Two Years Before
                Filing its June 2021 Complaint .................................................................... 14

                1.      The Maple Point Settlement Indicates That SKAT Actually Knew Ben-
                        Jacob Was Involved in The Schedule A Plans' Trading Strategy Before
                        June 16, 2019 ...................................................................................... 15

                2.      The Undisputed Facts Show That SKAT Was in Possession of Facts
                        Suggesting Ben-Jacob's Participation in the Schedule A Plans' Trading
                        Strategy Before June 16, 2019 ............................................................ 16

CONCLUSION .................................................................................................................. 19

# **TABLE OF AUTHORITIES**

<u>*Cases*</u>                                                                                                  <u>*Page(s)*</u>

*159 MP Corp. v. Redbridge Bedford, LLC*,
    128 N.E.3d 128 (N.Y. 2019)..............................................................................9

*301 East 60th Street LLC v. Competitive Sols. LLC*,
    217 A.D. 3d 79 (N.Y. App. Div. 2023) ...........................................................10

*AE Liquidation Corp. v. Segre*,
    No. 96 CIV. 0889 CSH, 2000 WL 204525 (S.D.N.Y. Feb. 18, 2000) .........................3, 11

*Armstrong v. McAlpin*,
    699 F.2d 79 (2d Cir. 1983)...............................................................................13

*Blitman Const. Corp. v. Ins. Co. of N. Am.*,
    489 N.E.2d 236 (N.Y. 1985)..............................................................................9

*Brady v. Lynes*,
    No. 05 Civ. 6540(DAB), 2008 WL 2276518 (S.D.N.Y. June 2, 2008)............................12

*In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*,
    No. 18-md-2865 (LAK), 2021 WL 2689908 (S.D.N.Y. June 30, 2021).................. passim

*De Carlo v. Ratner*,
    204 F. Supp. 2d 630 (S.D.N.Y. 2002).................................................................9

*Deans v. Bank of Am.*,
    No. 10 Civ. 9582(RJH), 2011 WL 5103343 (S.D.N.Y. Oct. 27, 2011)............................12

*Dowe v. Leeds Brown Law, P.C.*,
    419 F. Supp. 3d 748 (S.D.N.Y. 2019).................................................................18

*Gonzales v. Nat'l Westminster Bank PLC*,
    847 F. Supp. 2d 567 (S.D.N.Y. 2012).................................................................15

*Guilbert v. Gardner*,
    480 F.3d 140 (2d Cir. 2007)...............................................................................13

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*,
    2017 WL 2880554 (S.D.N.Y. July 6, 2017) .......................................................9

*John J. Kassner & Co. v. City of N.Y.*,
    389 N.E.2d 99 (N.Y. 1979)...............................................................................9

| *Cases* | *Page(s)* |
|---|---|

*Korwek v. Hunt*,
    646 F. Supp. 953 (S.D.N.Y. 1986) ...................................................17

*Kottler v. Deutsche Bank AG*
    607 F. Supp. 2d 447 (S.D.N.Y. 2009)...............................................12

*Lenz v. Assoc. Inns and Restaurants Co. of Am.*,
    833 F. Supp. 362 (S.D.N.Y. 1993) ...................................................18

*Malone v. Bayerische Hypo-Und Vereins Bank*,
    No. 09 Civ. 7277(PGG), 2010 WL 391826 (S.D.N.Y. Feb. 4, 2010) ..............12

*New York Univ. v. Factory Mut. Ins. Co.*,
    No. 15 Civ. 8505 (NRB), 2018 WL 1737745 (S.D.N.Y. Mar. 27, 2018)...........13

*Patsis v. Nicolia*,
    120 A.D. 3d 1326 (N.Y. App. Div. 2014) .......................................10

*Rafter v. Mfrs. Trust Co.*,
    18 A.D.2d 683 (2d Dep't 1962).......................................................18

*Rattner v. York*,
    174 A.D.2d 718 (2d Dep't 1991) ...................................................12

*Ripley v. Aetna Ins. Co.*,
    30 N.Y. 136 (1864) .........................................................................9

*Sands Bros. Venture Cap. II, LLC v. Metro. Paper Recycling, Inc.*,
    No. 652341/2015, 2020 WL 2516804 (Sup. Ct. N.Y. Cty. May 8, 2020),
    *aff'd*, 201 A.D.3d 421 (1st Dep't 2022).....................................13, 14

*Seidenfeld v. Zaltz*,
    162 A.D.3d 929 (2d Dep't 2018) .............................................11, 12

*Siler v. Lutheran Social Servs. Of Metro. N.Y.*,
    10 A.D.3d 646 (2d Dep't 2004).....................................................13

*Skatteforvaltningen v. The Stor Capital Consulting LLC 401K Plan*,
    No. 18-cv-04434 ....................................................................6, 10

*Timberline Elec. Supply Corp. v. Insurance Co. of North America*,
    72 A.D. 2d 905 (N.Y. App. Div. 1979) ............................................9

_Other Authorities_                                                                  _Page(s)_

Fed. R. Civ. P. 56(a) ...............................................................................................9

N.Y. C.P.L.R. § 201 ..............................................................................................9

N.Y. C.P.L.R. § 213(8) .............................................................................2, 11, 12, 13

Defendant Michael Ben-Jacob submits this memorandum of law in support of his motion for summary judgment on Plaintiff Skatteforvaltningen's ("SKAT's") claims against Ben-Jacob asserted in the complaints referenced in the caption. SKAT's claims are untimely and must be dismissed.[1]

### PRELIMINARY STATEMENT

Several of SKAT's claims against Ben-Jacob are untimely on multiple independently sufficient grounds.

*First*, SKAT entered into a tolling agreement with Ben-Jacob, among others, in April 2018, providing that SKAT would file any claim relating in any way to SKAT's potential claims "in connection with a scheme to obtain dividend tax refunds" within 60 days of the Agreement's expiration. The Agreement immediately expired if SKAT initiated "any legal proceeding against any Covered Party, but only with respect to the Covered Party or Parties named as a defendant in such proceeding." SKAT filed suit against Ben-Jacob on May 18, 2018 for his alleged role in "a fraudulent tax scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("DKK"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax." The Tolling Agreement accordingly expired on May 18, 2018, and SKAT was required to file any further lawsuit against Ben-Jacob relating to an alleged "scheme to obtain dividend tax refunds" by July 17, 2018.  SKAT, however, delayed until February 2019 before filing additional suits, ultimately naming Ben-Jacob as a defendant in a total of 38 additional actions filed

---

[1] Ben-Jacob submits this memorandum pursuant to Paragraph 1 of the Court's Pretrial Order No. 36, dated April 1, 2024 (ECF No. 978), providing leave for Ben-Jacob, as a defendant in *Skat v. Ben-Jacob*, 21-cv-05339, to "file any motions for summary judgment based on statute of limitations issues by May 10, 2024."

between February 2019 and June 2021. All of the claims in those suits must be dismissed as untimely.

*Second*, even if SKAT's filing of its May 2018 complaint against Ben-Jacob did not trigger the expiration of the Tolling Agreement—and it clearly did—the Agreement otherwise expired on December 31, 2018, after SKAT and the covered parties did not agree to any extension of the Agreement. So even in that case, SKAT was required to file any lawsuit against Ben-Jacob not later than March 1, 2019—and in fact, SKAT filed 28 lawsuits naming Ben-Jacob as a defendant in late February 2019. But then, in April 2020, over a year after the parties' agreed-upon deadline had passed, SKAT amended ten of its complaints previously filed against other parties to add Ben-Jacob as a defendant. Further, in June 2021, more than two years after the deadline, SKAT filed an entirely new case with a new complaint (the "June 2021 Complaint") naming Ben-Jacob as a defendant. These complaints were all clearly untimely, even if SKAT's May 2018 complaint did not trigger the expiration of the Tolling Agreement.

*Third*, even if SKAT's claims were not untimely under the express terms of the Tolling Agreement—and they clearly were—most of SKAT's claims brought in the June 2021 Complaint would be independently time barred by the applicable statute of limitation. In the absence of an agreement by the parties on a shorter term, New York law required that SKAT bring its claims within six years of the alleged fraud (here, seven years, due to the Tolling Agreement). *See* N.Y. C.P.L.R. § 213(8). The June 2021 Complaint concerns Danish dividend withholding tax refunds ("reclaims") Ben-Jacob's clients applied for and received between August 2012 and September 2014. For the reclaims paid before June 16, 2014—which comprise the vast majority of SKAT's June 2021 Complaint—SKAT's claims therefore occurred outside the adjusted seven-year limitations period and must be dismissed.

- 2 -

To escape that time-bar, SKAT must establish that it was unaware of—and should not have reasonably discovered—facts suggesting Ben-Jacob's involvement in the alleged fraud in the two years before it filed suit. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908, at *2 (S.D.N.Y. June 30, 2021) ("'the salient question is' when the plaintiff knew 'facts suggesting a *particular defendant's participation*'") (quoting *AE Liquidation Corp. v. Segre*, No. 96 CIV. 0889 CSH, 2000 WL 204525, at *7 (S.D.N.Y. Feb. 18, 2000) (emphasis in original)); *see AE Liquidation*, 2000 WL 204525, at *7 (S.D.N.Y. Feb. 18, 2000) ("controlling date is the date on which plaintiff had or should reasonably had have knowledge of sufficient facts" suggesting defendant's "probable involvement"). SKAT cannot.

SKAT's *39* prior suits against Ben-Jacob regarding the exact same trading strategy, as well as SKAT having already sued or settled with Ben-Jacob's purported joint tortfeasors for these *exact same* purportedly fraudulent reclaims, demonstrate SKAT's knowledge, or at least provide data from which SKAT should reasonably have discovered the claims asserted in the June 2021 Complaint. Indeed, SKAT's settlement agreement with purported joint tortfeasors for the same reclaims at issue—executed in May 2019 and therefore more than two years before the June 2021 Complaint—*explicitly excludes Ben-Jacob from the release*: the only conceivable explanation being SKAT's knowledge of its claims. For these simple and indisputable reasons, SKAT's claims against Ben-Jacob in the June 2021 Complaint for reclaims paid before June 16, 2014 are time-barred, in addition to being time-barred based on the 60-day deadline to which SKAT agreed in the Tolling Agreement.

Ben-Jacob accordingly asks the Court to (i) dismiss SKAT's claims against Ben-Jacob in the above-captioned cases, or (ii) in the alternative, if the Court holds that the Tolling Agreement

did not expire until December 31, 2018, dismiss SKAT's claims against Ben-Jacob in the cases

that SKAT did not file or add Ben-Jacob as a defendant until after March 1, 2019,[2] or, (iii) in the

alternative, if the Court holds that 60-day filing deadline in the Tolling Agreement does not

apply, dismiss SKAT's claims in the June 2021 Complaint concerning reclaims paid by SKAT

before June 16, 2014.

## STATEMENT OF FACTS

During the period relevant to SKAT's claims, Ben-Jacob was a trusts and estates partner

at Kaye Scholer LLP ("Kaye Scholer"). Michael Ben-Jacob's Rule 56.1 Stmt. ("MBJ 56.1"), ¶ 3.

Among his clients were a group of investors—John van Merkensteijn, Richard Markowitz,

Jerome Lhote, and Matthew Stein—all of whom were members of a limited liability company

called Argre Management LLC ("Argre," and its members, "the Argre Principals"). *Id.* ¶ 1.

Argre and its Principals pursued a dividend arbitrage trading strategy in Denmark and engaged

Kaye Scholer to provide legal advice on discrete issues of U.S. law related to that strategy. *Id.* ¶¶

2-3. The trading strategy involved U.S. pension plans purchasing stock in Danish companies and

then requesting from SKAT reclaims of withheld taxes on dividends issued by the Danish

companies. *Id.* ¶ 2. While the Argre Principals all executed the trading strategy in Denmark

---

[2] *Skatteforvaltningen v. Basalt Ventures LLC Roth 401(K) Plan et al.,* 19-cv-01866 (S.D.N.Y.); *Skatteforvaltningen v. Avanix Mgmt. LLC Roth 401(K) Plan et al.,* 19-cv-01867 (S.D.N.Y.); *Skatteforvaltningen v. Hadron Indus. LLC Roth 401(k) Plan*, 19-cv-01868 (S.D.N.Y.); *Skatteforvaltningen v. Starfish Cap. Mgmt. LLC Roth 401(k) Plan*, 19-01871 (S.D.N.Y.); *Skatteforvaltningen v. Voojo Prods. LLC Roth 401K Plan*, 19-cv-01873 (S.D.N.Y.); *Skatteforvaltningen v. Routt Cap. Pension Plan*, 19-cv-01896 (S.D.N.Y.); *Skatteforvaltningen v. Headsail Mf'g LLC Roth 401(k) Plan*, 18-cv-07824 (S.D.N.Y.); *Skatteforvaltningen v. Edgepoint Cap. LLC Roth 401(k) Plan*, 18-cv-07828 (S.D.N.Y.); *Skatteforvaltningen v. Aerovane Logistics LLC Roth 401(k) Plan*, 18-cv-07828 (S.D.N.Y.); *Skatteforvaltningen v. The Random Holdings 401K Plan*, 18-cv-07829 (S.D.N.Y.); *Skatteforvaltningen v. Ben-Jacob*, 21-cv-05339 (S.D.N.Y.).

between 2012 and 2015, they used different sets of pension plans at different times to execute the transactions:

- From August 2012 through September 2014, the Argre Principals conducted dividend arbitrage trading in Danish securities using the 30 plans identified in Schedule A of SKAT's June 2021 Complaint (the "Schedule A Plans") *Id.* ¶ 2. SKAT's claims in the June 2021 Complaint concern only these 30 Schedule A Plans.

- Then, in 2014, the Argre Principals split into two groups; each separately continued to engage in dividend arbitrage trading in Danish securities. *Id.* ¶ 4.

- Mathew Stein, Jerome Lhote and others (the "Maple Point Principals") formed Maple Point LLC and used a separate set of pension plans (the "Maple Point Plans") to engage in dividend arbitrage in Danish securities between 2014 and 2015. *Id.* ¶ 5. There is no evidence—and SKAT has never alleged—that Ben-Jacob had any involvement in the Maple Point Plans' trading. *Id.* ¶ 25(b).

- John van Merkensteijn ("van Merkensteijn") and Richard Markowitz ("Markowitz"), along with Robert Klugman ("Klugman") and others, used a separate set of pension plans between 2014 and 2015—the 39 plans listed in Schedule B to the June 2021 Complaint (the "Schedule B Plans")—to engage in dividend arbitrage in Danish securities. *Id.* ¶ 6.

Beginning in June 2015, SKAT received reports of suspected fraud on the Danish tax system involving dividend withholding tax reclaims. *Id.* ¶ 7. By September 2015, SKAT was investigating allegedly fraudulent reclaims, including those submitted by certain Schedule A and Schedule B Plans. *Id.* ¶ 8. On April 13, 2018, SKAT entered into a Tolling Agreement (the

"April 13, 2018 Tolling Agreement") with 118 pension plans, as well as the pension plans'

trustees, predecessor plans, successor plans, and partners (the "Covered Parties"), with regard to

any litigation related to "repayment of withheld dividend tax." *Id.* ¶ 9. Ben-Jacob was a Covered

Party. *Id.* ¶ 10.

The April 13, 2018 Tolling Agreement states that, "[i]nsofar as SKAT is contemplating

initiating litigation in connection with a scheme to obtain dividend tax refunds, SKAT and the

Covered Parties find it mutually desirable" to agree to the following:

> SKAT and the Covered Parties have agreed as of January 1, 2018 (the "Effective Date") that any statutes of limitations, statutes of repose or other time-related claim or defense that would expire or become applicable during that period of time from the Effective Date through the earlier of August 1, 2018, or thirty days after any Party gives written notice to any other Party of its wish to terminate this Agreement with respect to that Party and such notice is received, pertaining to any claim or defense relating in any way to SKAT's potential claims (the "Claims"), shall be and are tolled and waived and that any such statutes or time-related claims or defenses that would have expired or become applicable during such period shall expire or become applicable only at the conclusion of sixty (60) days from the expiration of this agreement in accordance with its terms.

*Id.* ¶ 9(a), (b).

The April 13, 2018 Tolling Agreement continued:

> The Expiration Date of this agreement shall be the earlier of (A) August 1, 2018, (B) the filing of any legal proceeding against any Covered Party, but only with respect to the Covered Party or Parties named as a defendant in such proceeding, or (C) thirty days after any Party gives written notice to any other Party of its wish to terminate this Agreement with respect to that Party, and such notice is received, unless renewed by a written instrument signed by authorized representatives of SKAT and the Covered Parties prior to that date and time. *On the Expiration Date, a party to this agreement shall have sixty (60) days from the Expiration Date to file any lawsuit relating to the Claims*.

*Id.* ¶ 9(c). (emphasis added). The April 13, 2018 Tolling Agreement also provided that it would

be "construed in accordance with the laws of New York." *Id.* ¶ 9(d).

On May 18, 2018, SKAT filed the action *Skatteforvaltningen v. The Stor Capital*

*Consulting LLC 401K Plan*, No. 18-cv-04434, naming Ben-Jacob as the sole individual

defendant and bringing claims against him for, among other causes of action, fraud and aiding and abetting fraud, due to his alleged role in "a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("DKK"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax." *Id.* ¶ [x].[3] The April 13, 2018 Tolling Agreement accordingly expired as to Ben-Jacob on May 18, 2018, and SKAT had until July 17, 2018 to "file any lawsuit" related to related to "a scheme to obtain dividend tax refunds" against Ben-Jacob. *Id.* ¶ [x].

SKAT and the remaining Covered Parties entered into subsequent Tolling Agreements extending the duration of the April 13, 2018 Tolling Agreement on July 11, 2018 (the "July 11, 2018 Tolling Agreement"), September 28, 2018 (the "September 28, 2018 Tolling Agreement"), and October 30, 2018 (the "October 30, 2018 Tolling Agreement"). *See Id.* ¶ 11, 11(a), 11(c). The language of the four Tolling Agreements is substantively identical, save for the progressive extension of each Agreement's "Expiration Date." *Id.* ¶ 11(a). The October 30, 2018 Tolling Agreement expired on December 31, 2018, starting the 60-day clock for SKAT to file "any lawsuit[s]" against any remaining Covered Parties related to "a scheme to obtain dividend tax refunds." *Id.* ¶ 11(b). The deadline for bringing any such claims was therefore March 1, 2019. *Id.*

SKAT filed complaints in February and March 2019 against the 34 Schedule B Plans not already named in lawsuits filed in May and June 2018, making substantially similar allegations of fraudulent dividend tax reclaim applications as in those earlier complaints, and naming Ben-Jacob as a codefendant in 28 of those suits. *Id.* ¶ 16. In April 2020, SKAT amended its Schedule B Plan complaints to add Ben-Jacob as a co-defendant in the 10 cases in which he was not

---

[3] In May and June 2018, SKAT filed suits against four additional Schedule B Plans not covered under the April 13, 2018 Tolling Agreement that did not name Ben-Jacob as a defendant. *Id.* ¶ 12, 13.

already a defendant. *Id.* ¶ 17. In all 39 of the of the complaints, Ben-Jacob was named as a

defendant due to his alleged involvement in a purported scheme to fraudulently obtain dividend

tax refunds. *Id.* ¶¶ 16-17.

In the midst of its numerous lawsuits against Ben-Jacob and his clients, on May 28, 2019,

SKAT entered into a settlement agreement with the Maple Point Principals. *Id.* ¶ 24. As part of

that settlement, SKAT released the Maple Point Principals and others from claims in connection

with tax reclaim applications submitted using both the Schedule A Plans and the Maple Point

Plans (the "Maple Point Settlement"). *Id.* ¶ 24(b). The Maple Point Settlement included an

exhibit listing pension plans and individuals expressly *excluded* from the release. *Id.* ¶ 24(c).

Ben-Jacob was one individual excluded by name from the Maple Point Settlement release. *Id.* ¶

25(a). As mentioned above, there is no evidence—and SKAT has never alleged—that Ben-Jacob

had any involvement with the Maple Point Plans. *Id.* ¶ 25(b).

Despite having specifically excluded Ben-Jacob from the Maple Point Settlement

encompassing allegations related to reclaims paid to the Schedule A Plans, SKAT waited over

two years to file its June 2021 Complaint, alleging for the first time that Ben-Jacob had

conspired and aided and abetted the alleged fraud executed through those Schedule A Plans. *Id.* ¶

21. In its June 2021 Complaint, SKAT sought damages from Ben-Jacob in connection with

reclaims SKAT paid only to the Schedule A Plans. *Id.*[4]

---

[4] Separate from the June 2021 Complaint, SKAT filed lawsuits in 2019 and 2020 seeking
damages in connection with reclaims paid to 24 of the 30 Schedule A Plans from either one or a
combination of: Markowitz, Markowitz's wife, van Merkensteijn, and/or van Merkensteijn's
wife. *Id.* ¶ 18-19, 19 n.3, 20.

## STANDARD OF REVIEW

A party is entitled to summary judgment when it shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the undisputed facts show that a claim is time barred by a statute of limitations, the motion should be granted. *See Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 2017 WL 2880554, at *4 (S.D.N.Y. July 6, 2017); *De Carlo v. Ratner*, 204 F. Supp. 2d 630, 638 (S.D.N.Y. 2002).

## ARGUMENT

I.   **SKAT'S CLAIMS AGAINST BEN-JACOB ASSERTED IN COMPLAINTS FILED AFTER JULY 17, 2018 ARE TIME-BARRED BY THE TERMS OF THE TOLLING AGREEMENT**

Under New York law, "parties may cut back on the Statute of Limitations by agreeing that any suit must be commenced within a shorter period than is prescribed by law. Such an agreement does not conflict with public policy but, in fact, 'more effectively secures the end sought to be attained by the statute of limitations.'" *John J. Kassner & Co. v. City of N.Y.*, 389 N.E.2d 99, 103 (N.Y. 1979) (quoting *Ripley v. Aetna Ins. Co.*, 30 N.Y. 136, 163 (1864)); *see Blitman Const. Corp. v. Ins. Co. of N. Am.*, 489 N.E.2d 236, 237 (N.Y. 1985). It follows that "an agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable provided it is in writing." *John J. Kassner & Co.*, 389 N.E.2d at 103 (citations omitted) (citing N.Y. C.P.L.R. § 201). "Absent proof that [such a tolling agreement] is one of adhesion or the product of overreaching, or that altered period is unreasonably short, the abbreviated period of limitation will be enforced[.]" *Timberline Elec. Supply Corp. v. Insurance Co. of North America*, 72 A.D. 2d 905, 906 (N.Y. App. Div. 1979).

SKAT and the Covered Parties mutually agreed to "cut back on the Statute of Limitations by agreeing that any suit must be commenced" within 60 days of the expiration of the Tolling

Agreement. *John J. Kassner & Co.*, 389 N.E.2d at 103. This 60-day statute of limitations period, which was negotiated and agreed to by sophisticated parties must be enforced. *See, e.g.*, *159 MP Corp. v. Redbridge Bedford, LLC*, 128 N.E.3d 128, 139 (N.Y. 2019) (sophisticated parties "are well-situated to manage their affairs during negotiations, and to conclude otherwise would patronize [such] parties and destabilize their contractual relationships"); *301 East 60th Street LLC v. Competitive Sols. LLC*, 217 A.D. 3d 79, 84 (N.Y. App. Div. 2023) ("When sophisticated parties enter into a contract, the contract should be enforced according to its terms."); *Patsis v. Nicolia*, 120 A.D. 3d 1326, 1327 (N.Y. App. Div. 2014) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.").

The Tolling Agreement states unambiguously that it expires upon the *earliest of* several possible triggering events, among them "the filing of any legal proceeding against any Covered Party, but only with respect to the Covered Party or Parties named as a defendant in such proceeding." MBJ 56.1 ¶ 9(c). The Tolling Agreement accordingly expired as to Ben-Jacob on May 18, 2018, when SKAT named Ben-Jacob as a defendant in the *Stor Capital* action, and SKAT thus had until July 17, 2018 to file any further lawsuit against Ben-Jacob relating to a purported dividend tax refund scheme. *Id.* ¶ 13-15. As all 38 subsequent complaints brought by SKAT naming Ben-Jacob as a defendant were filed long after July 2018, and all of the claims asserted in those complaints are premised on Ben-Jacob's alleged involvement in a purported scheme to fraudulently obtain dividend tax refunds, the claims in those complaints are untimely and must be dismissed.

Further, even if the Tolling Agreement had not expired when SKAT filed suit against Ben-Jacob in May 2018, it expired as to *all* Covered Parties on December 31, 2018 after the

parties did not agree to any further extension. *Id.* ¶ 11(b). SKAT thus had until March 1, 2019 to file "any lawsuit" against the Covered Parties. And although SKAT filed 28 new suits against Ben-Jacob (and others) concerning Schedule B Plans before that deadline, SKAT waited until April 2020, a year after the parties agreed-upon deadline had passed, to amend its ten other Schedule B Complaints to add Ben-Jacob as a defendant. *Id.* ¶ 17. And SKAT delayed more than another year before filing the June 2021 Complaint. *Id.* ¶ 21. The claims asserted in all eleven of those complaints are accordingly untimely, even if the Tolling Agreement did not expire in May 2018.

## II.     SKAT'S JUNE 2021 CLAIMS CONCERNING RECLAIMS PAID BEFORE JUNE 16, 2014 ARE TIME-BARRED UNDER THE APPLICABLE STATUTE OF LIMITATIONS

A separate and independent basis on which the Court should grant summary judgment and dismiss those of SKAT's claims in the June 2021 Complaint based on transactions that occurred before June 16, 2014 is that they are barred by the six-year statute of limitations applicable to fraud claims under New York law. *See* N.Y. C.P.L.R. § 213(8).

SKAT can only rescue these claims if it can show they are they are timely under the two-year discovery period, which began running when SKAT knew facts suggesting, or should reasonably have discovered facts suggesting, Ben-Jacob's involvement with the Schedule A Plans. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 2021 WL 2689908, at *2 (S.D.N.Y. June 30, 2021) ("[T]o trigger the discovery period with regard to SKAT's claims against Burns, SKAT must have been aware of facts suggesting that Burns participated in this scheme."); *AE Liquidation Corp.*, 2000 WL 204525, at *7 ("[T]he controlling date is the date on which plaintiff had or should reasonably have had knowledge of sufficient facts to suggest [defendant's] probable involvement in that fraudulent scheme.").

- 11 -

Thus, summary judgment is appropriate under the two-year discovery rule if it "conclusively appears" that SKAT had facts suggesting, or should reasonably have discovered, Ben-Jacob's involvement with the Schedule A Plans' alleged fraud two years before June 16, 2019—two years before the date the June 2021 Complaint was filed. *See Seidenfeld v. Zaltz*, 162 A.D.3d 929, 936 (N.Y. App. Div. 2018) (when question of "when a plaintiff could 'with reasonable diligence have discovered the alleged fraud'" presents a "mixed question of law and fact, summary dismissal is appropriate where it conclusively appears that the plaintiff has knowledge of facts which should have caused [him or] her to inquire and discover the alleged fraud" ) (quoting *Rattner v. York*, 174 A.D.2d 718, 721 (N.Y. App. Div. 1991))

A.   **SKAT's Claims Are Subject to the Statute of Limitations Applicable to Fraud Claims**

To survive dismissal, SKAT's claims of civil conspiracy and aiding and abetting fraud must be timely under New York law. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 2021 WL 2689908, at *2. Here, the six-year statute of limitations in N.Y. C.P.L.R. § 213(8) applies to SKAT's claims for civil conspiracy and aiding and abetting, both of which sound in fraud. *See* N.Y. C.P.L.R. § 213(8); *Deans v. Bank of Am.*, No. 10 Civ. 9582(RJH), 2011 WL 5103343, at *3 (S.D.N.Y. Oct. 27, 2011) ("[T]he statute of limitations for civil conspiracy is the same as that for the underlying tort.") (quoting *Brady v. Lynes*, No. 05 Civ. 6540(DAB), 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008)); *Malone v. Bayerische Hypo-Und Vereins Bank*, No. 09 Civ. 7277(PGG), 2010 WL 391826, at *4 (S.D.N.Y. Feb. 4, 2010) (applying statute of limitations to claims for fraud, conspiracy to commit fraud, and aiding and abetting fraud); *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009) (statute of limitations for aiding and abetting fraud is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or person under

whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it") (quoting N.Y. C.P.L.R. § 213(8)).

"Where fraud is alleged more than six years after the actual occurrence thereof, the burden is on the plaintiff . . . of proving that the fraud was not discovered and *reasonably could not have been discovered* until within two years of the commencement of the action." *Sands Bros. Venture Cap. II, LLC v. Metro. Paper Recycling, Inc.*, No. 652341/2015, 2020 WL 2516804, at *6 (Sup. Ct. N.Y. Cty. May 8, 2020) (emphasis in original), *aff'd*, 201 A.D.3d 421 (N.Y. App. Div. 2022); *see also, e.g.*, *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (affirming summary judgment dismissing claim and noting "plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action."); *New York Univ. v. Factory Mut. Ins. Co.*, No. 15 Civ. 8505 (NRB), 2018 WL 1737745, at *8 (S.D.N.Y. Mar. 27, 2018) (quoting *Guilbert*); *Siler v. Lutheran Social Servs. Of Metro. N.Y.*, 10 A.D.3d 646, 648 (N.Y. App. Div. 2004) ("The burden of establishing that the fraud could not have been discovered during the two-year period before the commencement of the action rests on the plaintiffs, who seek the benefit of the discovery exception to the six-year statute of limitations").

In determining when fraud should with reasonable diligence have been discovered, courts apply an objective test. *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983). "[T]he salient question is when the plaintiff knew facts suggesting *a particular defendant's participation*" in the alleged fraud. *In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 2021 WL 2689908, at *2 (quotation and citation omitted) (emphasis in original); *see id.* ("[T]o trigger the discovery period with SKAT's claims against [defendant], SKAT must have been aware of facts suggesting that [defendant] participated in this scheme.").

- 13 -

B.       **SKAT's June 2021 Claims Are Time-Barred as to Reclaims Paid Before June 16, 2014**

SKAT's claims in the June 2021 Complaint against Ben-Jacob concerning tax reclaims paid to Schedule A Plans before June 16, 2014 are time-barred under the six-year limitations period (as modified by the one-year tolling agreement entered between SKAT and Ben-Jacob). It is undisputed that the June 2021 Complaint, which concerns tax reclaims paid to the Schedule A Plans, was filed on June 16, 2021. MBJ 56.1 ¶ 21. This Court has previously determined that the limitations period runs from the date each reclaim was paid. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 2021 WL 2689908, at *2 (six-year limitations period measured from when refunds were paid). As applied here, SKAT's claims as to any reclaims paid before June 16, 2014 are thus categorically untimely barring application of the narrow "discovery rule" exception discussed below.

C.       ***SKAT Knew, or Should Have Known, of Facts Suggesting Ben-Jacob's Participation in the Schedule A Plans' Alleged Fraud Over Two Years Before Filing its June 2021 Complaint***

SKAT bears the burden to establish that it did not know, and could not have discovered with reasonable diligence, facts suggesting Ben-Jacob's involvement with the Schedule A Plans' allegedly fraudulent trading strategy within two years of the filing of its June 2021 Complaint (specifically, before June 16, 2019). *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 2021 WL 2689908, at *2; *Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 570 (S.D.N.Y. 2012); *see also Sands Bros.*, 2020 WL 2516804, at *6 (plaintiff bears burden of showing fraud was not discovered, and could not reasonably be discovered, in two-year discovery period).

SKAT cannot meet that burden. The undisputed facts show that SKAT knew of Ben-Jacob's involvement in the trading strategy that SKAT was already claiming was fraudulent

more than two years before SKAT filed its June 2021 Complaint: not only did SKAT expressly
exclude Ben-Jacob from a settlement resolving claims based on reclaims submitted by the
Schedule A Plans during that period, SKAT's allegations in earlier-filed complaints against other
defendants establish it knew of Ben-Jacob's involvement with the trading strategy involving the
Schedule A Plans.

      1.    ***The Maple Point Settlement Indicates That SKAT Actually Knew Ben-
Jacob Was Involved in The Schedule A Plans' Trading Strategy Before
June 16, 2019***

      SKAT's explicit exclusion of Ben-Jacob from the release in the Maple Point Settlement
demonstrates that SKAT knew of Ben-Jacob's participation in the Schedule A Plans' alleged
fraud before June 2019. As described *supra*, on May 28, 2019, SKAT entered into the Maple
Point Settlement and released claims "arising out of, in connection with or relating to" 80
different pension plans' applications to "reclaim taxes from dividends paid on Danish company
shares owned or allegedly owned by the Pension Plans between 2012 and 2015." MBJ 56.1 ¶ 24.
Those 80 pension plans included the Maple Point Plans and Schedule A Plans. *Id.* ¶ 24(b). SKAT
has never alleged—and there is no evidence—that Ben-Jacob had any connection to the Maple
Point Plans or played any role in their Danish trading. *Id.* ¶ 25(b). Thus, the only plausible
explanation for Ben-Jacob's exclusion in the Maple Point Settlement is that, by May 28, 2019,
SKAT believed it possessed claims against Ben-Jacob arising from his involvement in the
Schedule A Plans' allegedly fraudulent trading strategy.

      Clear precedent therefore compels dismissal. In *Gonzales v. Nat'l Westminster Bank
PLC*, the district court dismissed as untimely plaintiffs' fraud claim concerning a tax avoidance
strategy that the defendant bank had allegedly orchestrated. 847 F. Supp. 2d at 570-71. The court
held that plaintiffs were on inquiry notice of the alleged fraud more than two years before the

claim was brought based on, among other things, public reporting that defendant entered into a class action settlement concerning the same tax avoidance strategy. *Id.* at 571-72.

The same logic applies with greater force here: SKAT *itself* entered into the settlement agreement with the Maple Point Principals concerning the same trading strategy and covering the same plans that are the subject of the June 2021 Complaint more than two years before the Complaint was filed, and made clear its knowledge of Ben-Jacob's involvement by explicitly excluding him from the release in that settlement.

> 2. ***The Undisputed Facts Show That SKAT Was in Possession of Facts Suggesting Ben-Jacob's Participation in the Schedule A Plans' Trading Strategy Before June 16, 2019***

SKAT's earlier-filed complaints also include allegations demonstrating that SKAT knew facts suggesting Ben-Jacob's involvement in the Schedule A Plans' allegedly fraudulent trading strategy before June 16, 2019. In other words, SKAT's *own pleadings* establish that before June 2019 it had facts suggesting its claims that were first brought in the June 2021 Complaint. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 2021 WL 2689908, at *2.

*First*, by March 2019, SKAT had sued two of Ben-Jacob's clients, John van Merkensteijn and/or Richard Markowitz (and/or their wives), concerning nine Schedule A and eight Schedule B Plans. MBJ 56.1 ¶¶ 19, 27(b). The allegations in those Complaints show SKAT believed the allegedly fraudulent trades and reclaim requests followed the same pattern and made use of the same strategy by the same people. SKAT considered the acts of all of these plans to be part of a singular "fraudulent scheme." *Id.* ¶ 26.

For example, on February 27, 2019, SKAT filed lawsuits against (i) Basalt Ventures LLC Roth 401(K) Plan (a Schedule B Plan) and John van Merkensteijn, and (ii) Avanix Management LLC Roth 401K Plan (a Schedule B Plan) and Richard Markowitz. *Id.* ¶¶ 26(a), (b). In both

suits, SKAT alleged that "[t]he essence of the fraudulent scheme is that each of over 300 entities

pretended to own shares in Danish companies," that "[t]he entities, acting through their agents

and representatives, applied to SKAT claiming repayments of tax withheld on dividends," that

the claimants of such repayments were assisted by claimant's "Authorized Representatives,"

"non-party Payment Agents," and "non-party Broker Custodians," and, that the claimants across

those suits provided the same documentation in their applications. *Id.* The very next day, on

February 28, SKAT filed a lawsuit against Michelle Investments Pension Plan—a Schedule A

Plan—John van Merkensteijn, and Richard Markowitz making the *same* allegations. *Id.* ¶ 26(c).

The other complaints that quickly followed against van Merkensteijn and Markowitz did the

same. In other words, SKAT's allegations make clear its belief that Ben-Jacob's clients had

engaged in a *single* fraudulent trading strategy that encompassed *both* the earlier Schedule A

Plans and the later Schedule B Plans' trading.

And no later than March 2019, SKAT showed its clear knowledge that Ben-Jacob had a

role in that singular trading strategy. By that point, SKAT had filed at least seven complaints

against a Schedule B Plan and either Markowitz or van Merkensteijn that: (i) named Ben-Jacob

as a defendant, alleging that he signed powers of attorney authorizing payment agents to seek

reclaims from SKAT on the Plans' behalf, or (ii) alleged that the Plans submitted Ben-Jacob's

office address as part of their reclaim applications (which SKAT knew was Ben-Jacob's office).

*Id.* ¶ 29. SKAT, by this point in time outside the limitations period, had alleged a single, unified

trading strategy engaged in by van Merkensteijn and Markowitz that encompassed the Schedule

A and Schedule B Plans, and had alleged Ben-Jacob assisted in that trading strategy. *See Korwek

v. Hunt*, 646 F. Supp. 953, 958 (S.D.N.Y. 1986) (lawsuits "alleging the same conspiracy against

many of the same defendants as plaintiffs charge in this case" presented opportunity for plaintiff to discover fraud).

*Second*, by this same time, SKAT had sued Ben-Jacob for assisting these same clients with their Schedule B Plans' trading and reclaim requests. MBJ 56.1 ¶ 29. SKAT knew he had acted as the authorized representative of many of those plans and/or signed powers of attorney authorizing reclaim agents to seek reclaims from SKAT on behalf of those plans. *Id.* ¶¶16, 29. At that time, SKAT also knew that Ben-Jacob was involved in additional plans' applications for tax reclaims, even where he did not sign the associated forms, because at least 34 plans had listed Ben-Jacob's law office's address as the plan's address on reclaim applications. *Id.* ¶ 28(b). For example, in one of its complaints, filed on February 26, 2019, SKAT alleged that "[i]n addition to [defendant-plan], at least 33 other claimants that pretended to own shares in Danish companies" listed Ben-Jacob's office address "in the fraudulent tax refund claims they submitted to SKAT." *Id.*[5] *See Rafter v. Mfrs. Trust Co.*, 18 A.D.2d 683, 683 (N.Y. App. Div. 1962) ("the allegations of the complaint clearly demonstrate plaintiff's knowledge of such facts" constituting fraud outside of limitations period). Put differently, SKAT (1) alleged the Schedule A and Schedule B Plans' trading strategy was all part of a singular fraudulent scheme engaged in by the same individuals, (2) alleged Ben-Jacob assisted those individuals with their scheme and played a role in at least the reclaim requests of 34 of the plans operating within that purported singular fraudulent scheme, and (3) that at least 34 plans identified his law office's address as the Plan's address. *See Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 764 (S.D.N.Y. 2019) (past litigation of similar conduct "confirms that plaintiffs could have discovered their claims in the

---

[5] *Skatteforvaltningen v. Ballast Ventures LLC Roth 401(k) Plan*, No. 1:19-cv-01781-LAK, ECF No. 1 (Feb. 26, 2019), Compl. ¶ 46.

exercise of reasonable diligence"); *Lenz v. Assoc. Inns and Restaurants Co. of Am.*, 833 F. Supp. 362, 375 (S.D.N.Y. 1993) ("[i]n this Circuit awareness of other lawsuits . . . involving a defendant puts a plaintiff on inquiry notice of the possibility of fraud within another transaction involving the defendant").

These facts—which SKAT had and alleged in its complaints to that point—clearly "suggest" that Ben-Jacob provided services to van Merkensteijn and Markowitz regarding this singular, purportedly fraudulent strategy. Indeed, any other conclusion is unreasonable. And the standard is only whether there were "facts suggesting" Ben-Jacob's involvement in the Schedule A Plans, a standard that is easily met on these facts.

In short, the undisputed facts establish that SKAT had knowledge of facts suggesting Ben-Jacob's involvement with the Schedule A Plans' alleged fraud before June 2019. *See Seidenfeld*, 162 A.D.3d at 936.

## CONCLUSION

For the reasons above, Ben-Jacob's motion for summary judgment should be granted and SKAT's claims asserted against Ben-Jacob in the above-captioned cases must be dismissed. In the alternative, if the April 13, 2018 Tolling Agreement did not expire until December 31, 2018, SKAT's claims asserted against Ben-Jacob in complaints that were not filed until after March 1, 2019 (or were amended to add Ben-Jacob as a defendant after that date) should be dismissed, *see supra* n.2. In the alternative, SKAT's claims in the June 2021 Complaint concerning reclaims paid by SKAT before June 16, 2014 should be dismissed under the applicable six-year statute of limitations.

Dated: New York, New York
       May 10, 2024

DEWEY PEGNO & KRAMARSKY LLP

By: /s/ Thomas E.L. Dewey

Thomas E.L. Dewey
Sean K. Mullen
777 Third Avenue – 29th Floor
New York, New York 10017
Tel.: (212) 943-9000
Fax: (212) 943-4325
tdewey@dpklaw.com
smullen@dpklaw.com

KEKER, VAN NEST & PETERS LLP

By: /s/ Elliot R. Peters

Elliot R. Peters
Julia L. Allen
633 Battery Street
San Francisco, CA 94111
Tel.: (415) 962-7188
epeters@keker.com
jallen@keker.com

*Attorneys for Defendant Michael Ben-Jacob*