# Exhibit 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,          **MEMORANDUM OF**
                                                                                             **DECISION AND ORDER**

                     Plaintiff,                    CR-12-0245 (ADS)

     - against -

ERIC ARONSON,
VINCENT BUONAURO and
FREDRIC AARON,

                    Defendants.
----------------------------------------------------------X

**A P P E A R A N C E S:**

     **LORETTA E. LYNCH**
     United States Attorney
     Eastern District of New York
     610 Federal Plaza
     Central Islip, NY 11722
        By:     William Patrick Campos,
                   Assistant U.S. Attorney

     **GROSSMAN & RINALDO**
     Attorneys for Defendant Eric Aronson
     108-18 Queens Boulevard, Suite 5
     Forest Hills, NY 11375
        By:     Paul Peter Rinaldo, Esq.
                   Of Counsel

     **SANDERS ORTOLI**
     Attorneys for Defendant Vincent Buonauro
     501 Madison Avenue, 14th Floor
     New York, NY 10022
        By:     Marc S. Gottlieb, Esq.
                   Of Counsel

1

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**
Attorneys for Defendant Fredric Aaron
565 Fifth Avenue
New York, NY 10017
By:    Elkan Abramowitz, Esq.
        Robert M. Radick, Esq.
        Dana Delger, Esq.
        Of Counsel

**SPATT, District Judge.**

Presently before this Court is a motion by the Defendant Fredric Aaron (the "Defendant" or "Aaron") for an order granting his motion for reconsideration and reargument of this Court's decision denying his prior motion for a severance pursuant to Federal Rules of Criminal Procedure ("Fed. R. Crim. P.") 14(a).

For the reasons set forth below, Aaron's motion for reconsideration and for a severance is granted.

## I. Background

### A. Factual Background

In the indictment, the defendants were all accused of perpetrating a scheme to defraud investors by operating their company as a Ponzi scheme. The defendants are accused of soliciting money from investors by false representations and material omissions and paying returns to investors from other investors' funds instead of from any actual profit. However, only Aronson and Buonauro are accused of using investor funds to pay for personal expenses. Aronson alone is accused of other fraudulent acts. Aaron is accused of one overt act. He was named in the wire fraud counts three through eight and in the mail fraud counts nine through eleven. Aaron was not named

2

in the final counts twelve through fourteen charging money laundering.

## II. The Contentions

In the Memorandum of Law in Support of the Motion for Reconsideration and Reargument, an unusual situation involving the initial motion for a severance is set forth. In the memorandum, counsel for Aaron states that this Court issued its decision on the original motion on March 7, 2013 and did not afford counsel for Aaron an opportunity to file their reply brief that was due the following day, on March 8, 2013. The facts set forth as to this failure to afford counsel for Aaron to file a reply brief as scheduled are stated as follows:

> At a status conference on January 25, 2013, Fredric Aaron, through his attorneys, informed this Court of his intention to move to sever his trial from that of his co-defendant Eric Aronson. During the January 25, 2013 status conference, the Court set deadlines not only for the filing of Mr. Aaron's motion papers (February 8) and the submission of the government's opposition (February 22), but also set a date by which Mr. Aaron was to file a reply brief (March 8), and scheduled oral argument for March 22. However, on March 7, 2013 – while Mr. Aaron's counsel was finalizing a reply brief that was due the following day, and which would have responded to the government's opposition papers – the Court issued its decision without notice to the parties and, on what was not yet fully-briefed motion, denied Mr. Aaron's request for a severance.

(Dft's Memorandum at 1).

So that counsel for Aaron now moves for two types of relief. His counsel moves for reconsideration of the Court's decision denying severance. However, Aaron also moves for reargument of the initial decision denying severance on the ground that the "new information" that would have been set forth in the reply brief that was never sent to the Court would sustain the defendant's position for a severance.

3

In response to the Defendant's Motion for Reargument because of the failure of the Court to allow a scheduled reply brief, the Government briefly responded as follows:

> Defendant Aaron appears to make the argument he would have made in reply and simply reasserts that his defense will be that he was tricked and deceived by co-defendant Aronson. Defendant Aaron further asserts that Aronson will excuse his own conduct by claiming that he was simply following the advice of his counsel, defendant Aaron. Nothing that Aaron now offers, however, wipes away the speculative nature of that claim. And, defendant Aaron fails to demonstrate that this Court did not consider his argument the first time.

(Government Letter Memorandum at 3).

### III.  Discussion

#### A.  Motion for Reargument

There is no specific federal rule that governs criminal reconsideration or reargument motions. Therefore, courts "typically adopt the established standards which govern such motions in a civil context, as set forth in the Federal Rules of Civil Procedure, applicable local rules, and related case law." United States v. Williams, No. 98 Cr. 834 (JFK), 2010 WL 749817, at *1 (S.D.N.Y. March 4, 2010) (quoting United States v. Manragh, No. 03-CR-1121 (DRH), 2006 WL 2239053, at *1 (E.D.N.Y. Aug. 4, 2006)); see also United States v. Goldenberg, No. 04-CR-159, 2006 WL 1229152, at *1 (E.D.N.Y. 2006).

However, Local Criminal Rule 49.1(d) states the following:

> (d) A motion for reconsideration or reargument of a Court order determining a motion shall be filed and served within fourteen (14) days after the Court's determination of the original motion. A memorandum setting forth concisely the matter or controlling decisions which counsel believes the

4

Court has overlooked shall accompany the motion.

This rule pertains primarily to the timeliness of the motion and also refers to whether counsel believes the Court has overlooked controlling decisions. In this case, the motion is timely and there a claim by the Defendant Aaron that the Court has overlooked controlling decisions with respect to his mutually antagonistic defenses argument.

The standards for a motion for reargument are governed by Local Rule 6.3 and Fed. R. Civ. P. 59(e). See Yurman Design Inc. v. Chaindom Enterprises, Inc., No. 99 Civ. 9307 (JFK), 2003 WL 22047849, at *1 (S.D.N.Y. Aug. 29, 2003). The standards set forth in Local Rule 6.3 are identical to those in Fed. R. Civ. P. 59(e). See Alexander v. The Turner Corp., No. 00 Civ. 4677 (HB), 2001 WL 1098010, at *1 (S.D.N.Y. Sept. 18, 2001).

A motion for reargument may be granted where a court overlooked "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (internal quotation marks and citation omitted); see also Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reargument may also be granted to "correct a clear error or prevent manifest injustice." Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983). The motion for reargument must be served within ten days after the docketing of the court's determination of the original motion. See Local Rule 6.3.

B. **Motion for Reconsideration**

"The standard to be applied in deciding reconsideration motions in criminal cases has not been clearly established. Neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsideration motions." United States v. Yannotti, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006). However, as stated above, Courts within this Circuit, in deciding motions to reconsider in criminal cases, have applied the Local Rule 6.3 standard applicable for motions for reconsideration in civil cases. See Hertzman v. Henderson, 714 F.2d 234, 237 (2d Cir. 1983); United States v. Delvi, No. S1201CR74(SAS), 2004 WL 235211, at *1 (S.D.N.Y. Feb. 6, 2004); United States v. Mottley, No. 03 CR. 303 (LTS), 2003 WL 22083420, at *1 (S.D.N.Y. Sept. 9, 2003); United States v. Berger, No. 00 CR 877 (VM), 2002 WL 273114, at *1 (S.D.N.Y. Feb. 26, 2002). Therefore, this Court will apply the civil standard to the present criminal case.

The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. See Devlin v. Transp. Commc'n Int's Union, 175 F.3d 121, 132 (2d Cir. 1999) (citing McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983)). "A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." In re Worldcom, Inc. Sec. Litig., 308 F. Supp. 2d 214, 224 (S.D.N.Y. 2004); Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276(DLC), 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004); see also In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003); Local Civil Rule 6.3. As stated above, reconsideration may also be

6

granted to "correct a clear error or prevent manifest injustice." Int'l Ore & Fertilizer Corp. v. SGS Control Servs. Inc., 38 F.3d 1279, 1287 (2d Cir. 1994); Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983).

To preserve scarce judicial resources and to avoid piecemeal litigation, a motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dellefave v. Access Temporaries, Inc., No. 99 CIV. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001); see also Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995) (stating that reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided"); In re Houbigant, Inc., 914 F. Supp. 997, 2001 (S.D.N.Y. 1996) (stating that a Rule 6.3 motion is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"). In addition, "a party in its motion for reargument may not advance new facts, issues or arguments not previously presented to the court." O'Brien v. Bd. of Educ. of Deer Park Union Free Sch. Dist., 127 F. Supp. 2d 342, 345 (E.D.N.Y. 2001).

However, notwithstanding the above rules on reargument and reconsideration, here, the Court is presented with a very unusual solution. The Defendant Aaron's counsel contends that the Court decided the initial motion to sever too quickly by making a decision on March 7, 2013. In so doing, the Court prevented the Defendant from filing his reply brief which was due on March 8, 2013. If so, the defendant is correct and some remedial measure would be required. However, it appears that the reply brief was never finalized and sent to the Court. So that the Court does not know what would have been contained in the missing reply brief.

Case 1:18-md-02865-LAK   Document 1013-8   Filed 05/15/24   Page 9 of 17

The Defendant now moves for reconsideration and reargument on three grounds. First, in the March 7 decision the Court overlooked and did not address the "antagonistic defense argument that is at the heart of Aaron's severance motion and is essential to its proper resolution." (Dft's Memorandum at 1). Instead, the Court focused exclusively on the issue of spillover prejudice. Second, reconsideration and reargument is necessary to permit the Court to consider the Aaron argument that would have been in the missing reply brief. Third, the missing reply brief would have demonstrated new information that came to light only after the filing of the initial Aaron brief, and reconsideration is warranted so that the Court may consider this new information.

**C. As to the Defendant's Contention that the March 7, 2013 Decision Did Not Consider the Primary Argument Raised by the Defendant**

The Defendant's main arguments are: (1) the mutually antagonistic defenses and (2) the threat of prejudice from the Government's case against Defendant Aronson "inappropriately spilling over onto his own." (Dft's Memorandum at 3). In this regard, Aaron's trial defense will consist of "demonstrating that Eric Aronson lied to him, deceived him and made him an unknowing pawn in a fraud about which Mr. Aaron was unaware." (Dft's Memorandum at 4). Also, the Defendant contends that his defense would be antagonistic to an "advice of counsel" defense "that Aronson is nearly certain to rely upon." (Dft's Memorandum at 4).

In regard to his major contention as to mutually antagonistic defenses, the Defendant contends that except for a passing mention of the fact that Aaron "contends that it would be difficult, if not impossible for a single jury to evaluate these different

8

defenses. There is no indication that the Court considered the relevant case law regarding mutually antagonistic defenses or assessed the merits of this alleged critical aspect of the Aaron argument." (Dft's Memorandum at 4). Now, in this motion for reconsideration and reargument, Aaron requests that the Court finally consider this important phase of this motion to sever.

As noted above, the main thrust of this severance motion is that the defense of Aaron will be "antagonistic to, and in fundamental conflict with, any defense that Aaron could possibly offer, especially if that defense includes a claim of reliance on counsel." (Dft's Memorandum at 10). In his Memorandum in Support of this Motion, his counsel states that Aaron "was misled, lied to, and deceived by Eric Aronson so that Aronson could escape justice and fleece his investors." (Dft's Memorandum at 10). According to the Defendant, this defense is antagonistic to any defense that Aronson may offer, including an advice of counsel defense.

Aaron also points to a civil case that was pending in the Southern District involving the SEC as proof of Aronson's intent to blame his lawyers for his own legal transgressions. In that civil case, one of Aronson's lawyers sought to withdraw from the SEC case because he learned that Aronson had fraudulently represented to a business associate that the lawyer had said a certain course of conduct "was ok" when in fact the lawyers "never said any such thing." The Defendant points to this SEC case to show that Aronson was attempting to defraud others even while free on bail in this case or until his bail was revoked. According to Aaron, this also shows the likelihood of an advice of counsel defense.

Finally, the Defendant's counsel asserts that they are "unaware of any limiting

9

instruction that can prevent the prejudice created by fundamentally antagonistic and inconsistent defenses of the sort at issue here." (Dft's Memorandum at 16).

D. **The Law as to "Mutually Antagonistic Defenses"**

In one of the first "severance" cases decided by the Second Circuit, United States v. Carpentier, 689 F.2d 21 (2d Cir. 1982), the defendant moved for a severance once prior to the trial and on three separate occasions during the trial. The defendant contended that the co-defendants defense was directly in conflict with his own because if the jury were to acquit the defendant they had to find the co-defendant guilty. The Second Circuit reviewed the law of severance in that there must be "substantial prejudice" resulting from the denial of the motion. The Court also enunciated the familiar rule that: "A certain amount of prejudice to a defendant is required as acceptable given the judicial economics that result from joinder." Id. at 27. However, the Court in Carpentier enunciated the rule as to severance, which, in the Court's view, is critical in this case:

> A simple showing of some antagonism between defendants' theories of defense does not require severance. "(T)he defense of a defendant reaches a level of antagonism (with respect to the defense of a co-defendant) that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir. 1981).

Id. at 27–28.

In Carpentier, the Second Circuit found that the facts failed to rise to the standard cited above. In fact, the Court found that "there is no necessary incompatibility between Alexandro's defense and that offered by Carpentier . . . there

10

appears to be no reason why the jury could not have believed Alexandro's story and yet still have found that Carpentier lacked the requisite intent to commit the crimes with which he was charged." Id. at 28.

This same standard was enunciated by the Second Circuit seven years later in a major case in the field of severances, United States v. Casamento, 887 F.2d 1141, 1153 (2d Cir. 1989). This was the famous "Pizza Connection case," a joint trail of 21 defendants. In view of the claim by several appellants that severances should have been granted, the Court again enunciated this definitive rule in the law of severance:

> Considering these contentions seriatim, we first note that, while differences among the defenses asserted by co-defendants might constitute justification for severance when the jury, in order to believe one defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant, Carpentier, 689 F.2d at 28 (quoting United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir. Unit B Dec. 1981)), here, Badalamenti's and Mazzurco's defenses were not in conflict. The jury could have believed both that the Badalamenti–Mazzurco telephone conversations did not concern narcotics trafficking and that they did concern the sale of precious stones.

Id. (emphasis in original).

Following the Casamento case, the courts have reiterated the rule in a severance application, namely, if the jury believed one defendant, they must necessarily disbelieve the other defendant. See United States v. Villegas, 899 F.2d 1324, 1346 (2d Cir. 1990):

> 1. The Claims of Antagonistic Defenses
> When the challenge to the denial of a severance is premised on a claim that two defenses were antagonistic, a defendant satisfies his burden of showing substantial prejudice only if it can be said that "'the jury, in order to believe the core of testimony offered on behalf of [one]

11

> defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.'" United States v. Potamitis, 739 F.2d at 790 (quoting United States v. Carpentier, 689 F.2d 21, 27–28 (2d Cir. 1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983)). The mere fact that co-defendants seek to place the blame on each other is not the sort of antagonism that requires a severance. United States v. Casamento, 887 F.2d 1141, 1154 (2d Cir. 1989) ("fingerpointing" not sufficient), cert. denied, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

More recently the same rule as to mutually antagonistic defenses was involved in United States v. Aquart, Criminal No. 3:06cr160(JBA), 2010 WL 3211074 (D. Conn. Aug. 13, 2010). In Aquart, each defendant would implicate each other. The Court held that a "mutually antagonistic" defense so as to justify severance occurs when "accepting one defense requires that the jury must of necessity convict a second defendant." Id. at *5 (quoting United States v. Yousef, 327 F.3d 56, 151 (2d Cir. 2003) (emphasis in original) (internal quotation marks omitted). See also Garcia v. Artus, No. 09-CV-1423 (JFB), 2010 WL 1816333, at *9 (E.D.N.Y. May 5, 2010) ("[U]nder federal law mutually antagonistic defenses are not prejudicial per so. . . . Rather, separate trials are required only upon a showing that the jury, in order to believe the core of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.") (citations and internal quotation marks omitted).

### E. **Are these Defenses "Mutually Antagonistic"?**

Here the alleged defenses of claimed antagonistic defendants, Eric Aronson and Fredric Aaron, are uncomplicated and easy to understand. The defense of the movant, Defendant Fredric Aaron, is that "Eric Aronson lied to him, deceived him, and made him an unknowing person in a fraud about which Mr. Aaron was unaware." (Dft's

12

Memorandum at 4). On the other hand, according to Aaron, Aronson is nearly certain to rely on an "advice of counsel" defense after Aronson provided Aaron with complete and truthful information. The "advice of counsel" defense is traditionally based on the assertion that whatever the Defendant Aronson did, it was approved by attorney Aaron. The Court finds that these defenses are mutually antagonistic in that in order to believe the testimony of the Defendant Aaron, the jury must necessarily disbelieve the testimony of the Defendant Eric Aronson.

Of relevance here is the court's decision in U.S. v. Valente, No. 90 Cr. 901 (DNE), 1991 WL 278881 (S.D.N.Y. Dec. 18, 1991). In that case, the three defendants "ha[d] been charged in a two count indictment with conspiracy to commit extortion, in violation of 18 U.S.C. 1951, and with substantive extortion, also in violation of Section 1951." Id. at *1. One of the defendants, Dominick Valente ("Valente"), moved for a severance of his trial from that of his co-defendant Sylvester Smith ("Smith") on the ground that they had mutually antagonist defenses. Id. In this regard, according to Valente, "Smith's proffered defense is that Valente engaged in extortionate activity and merely used Smith's name to obtain more money for himself." Id. at *2. Consequently, Valente claimed he would be required "to paint Smith as the mastermind of the extortion scheme who points the finger at Valente to escape blame." Id. The Valente court determined that these "defenses offered by Smith and Valente for the purposes of this motion seem sufficiently antagonist to warrant a severance[.]" Id. However, because "it [was] unclear whether defendants Smith and Valente [would] present at trial the defenses proffered here," the court denied Valente's motion for severance with leave to renew the motion after the Government had offered its proof at

13

Case 1:18-md-02865-LAK Document 1013-8 Filed 05/15/24 Page 15 of 17
Case 2:12-cr-00245-ADS-GRB Document 167 Filed 05/29/15 Page 14 of 16 PageID #: 675

trial and the defendants' shared their proffered testimony ex parte with the court.

In this case, the Court finds that the defenses of the Defendant Aaron and the Defendant Aronson are strikingly similar to those presented in <u>Valente</u> which the court deemed to be sufficient to warrant severance. Indeed, like Smith, Aaron intends to demonstrate that Aronson, unbeknownst to Aaron, used Aaron to perpetuate his alleged Ponzi scheme. At the same time, Aronson, like Valente, will undoubtedly try to paint Aaron as the legal mastermind behind the Ponzi scheme and blame him for giving him bad legal advice. Of importance, if a jury believes Aaron's defense that Aronson deceived him into becoming an unknowing person in the fraud, then the jury will have to find Aronson guilty of devising the Ponzi scheme. Similarly, if the jury believes Aronson's defense that the fraud was due to Aaron and his bad legal advice, then the jury will have to find that Aaron was responsible for the Ponzi scheme. In this way, this case presents a quintessential example of a situation where "'accepting one defense requires that the jury must *of necessity* convict a second defendant.'" <u>United States v. Moody</u>, 660 F. Supp. 2d 340, 344 (D. Conn. 2009) (quoting <u>Yousef</u>, 327 F.3d at 151) (emphasis in original). <u>See</u> also <u>United States v. Serpoosh</u>, 919 F.2d 835, 838 (2d Cir. 1990) (finding that prejudice existed where the defenses of the defendants resulted each characterizing the other "as a liar who concocted his story to escape blame"); <u>but see</u> <u>United States v. Haynes</u>, 16 F.3d 29, 32 (2d Cir. 1994) (suggesting that the <u>Serpoosh</u> court's holding that severance was *required* when there is prejudice had been overruled by <u>Zarifro</u>, 506 U.S. 534, 539, 113 S. Ct. 933, 938, 122 L. Ed. 2d 317 (1993), which held that (1) "mutually antagonistic defense are not prejudicial per se" and (2) "Rule 14 does not require severance even if prejudice is shown; rather it leaves the

14

tailoring of the relief to be granted, if any, to the district court's sound discretion").

Moreover, unlike in Valente, the Court finds that these mutually antagonistic defenses are more than just speculative. In this regard, in Valente, Valente suggested that he would paint Smith as the mastermind *only if* Smith first offered the defense that Valente used Smith's name to engage in extortionate activity. Conversely, here, Aaron has made clear that, regardless of what defense Aronson proffers, his defense will be that Aronson lied to him, thus making him an unknowing participant in the fraud. Furthermore, Aaron's theory with respect to Aronson's advice-of-counsel defense rises above being merely hypothetical, as Aaron has adequately shown that Aronson intends to raise such a defense by pointing to judicial pleadings, discovery, and past instances of Aronson allegedly manipulating and blaming his attorneys. Therefore, in the Court's view, there is no need to wait until the trial to address whether a severance is appropriate here.

In sum, the Court finds that Aaron has demonstrated that his and Aronson's separate defenses are mutually antagonistic so as to result in prejudice to one other. Accordingly, exercising its sound discretion, the Court finds that, in this case, a severance is the most appropriate form of relief in order to resolve this prejudice. See Zarifro, 506 U.S. at 539.

### IV. Conclusion

In view of the mutually antagonistic defenses between the Defendant Fredric Aaron and the Defendant Eric Aronson, the motion by the Defendant Aaron for reconsideration and reargument is granted and the motion for a severance is granted.

15

Therefore, it is hereby, ORDERED, that this motion by the defendant Fredric Aaron for a severance is granted.

**SO ORDERED.**

Dated:    Central Islip, New York
         May 23, 2013

                              */s/ Arthur D. Spatt*
                              ARTHUR D. SPATT
                              United States District Judge