**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to:
18-cv-07824; 18-cv-07827; 18-cv-07828;
18-cv-07829; 19-cv-01781; 19-cv-01783;
19-cv-01785; 19-cv-01788; 19-cv-01791;
19-cv-01792; 19-cv-01794; 19-cv-01798;
19-cv-01800; 19-cv-01801; 19-cv-01803;
19-cv-01806; 19-cv-01808; 19-cv-01809;
19-cv-01810; 19-cv-01812; 19-cv-01813;
19-cv-01815; 19-cv-01818; 19-cv-01866;
19-cv-01867; 19-cv-01868; 19-cv-01869;
19-cv-01870; 19-cv-01871; 19-cv-01873;
19-cv-01894; 19-cv-01896; 19-cv-01918;
19-cv-01922; 19-cv-01926; 19-cv-01928;
19-cv-01929; 19-cv-01931; 19-cv-10713;
21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................4

LEGAL STANDARD.................................................................................................9

ARGUMENT ............................................................................................................10

     I.      None of SKAT's claims is time-barred by the tolling agreement ......................10

     II.     None of SKAT's claims against Ben-Jacob in the June 2021 complaint
           is time-barred .................................................................................................13

           A.     The Maple Point settlement does not show SKAT knew Ben-Jacob
                   participated in the Argre plans' fraud .......................................................14

           B.     SKAT's allegations in its pre-June 2019 complaints do not show
                   SKAT was on inquiry notice that Ben-Jacob participated in the
                   Argre fraud.................................................................................................16

           C.     Even if SKAT were on inquiry notice, the discovery period did not
                   start until SKAT's investigation revealed Ben-Jacob's participation
                   in the Argre fraud.......................................................................................18

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005)................................................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986)......................10

*Chacko v. Costco Wholesale Corp.*, 568 F. Supp. 3d 487 (S.D.N.Y. 2021)................10

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013) ...........................17, 18, 19

*Coyle v. United States*, 954 F.3d 146 (2d Cir. 2020) ....................................................10

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund
Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908 (S.D.N.Y. June
30, 2021) .........................................................................................................14, 16

*In re Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund
Litigation*, No. 18-md-2865 (LAK), 2023 WL 8039623 (S.D.N.Y. Nov. 20,
2023) ...............................................................................................................14, 15

*English v. Lattanzi*, No. 12-CV-4179 (JS)(AYS), 2015 WL 5038315 (E.D.N.Y.
Aug. 26, 2015) ...........................................................................................................14

*Figueroa v. Ministry for Foreign Affs. of Sweden*, 222 F. Supp. 3d 304
(S.D.N.Y. 2016)..........................................................................................................10

*Fourth Branch Assocs. Mechanicville v. Niagara Mohawk Power Corp.*, 302
A.D.2d 780 (3d Dep't 2003) ...................................................................................11

*Gonzales v. Nat'l Westminster Bank PLC,* 847 F. Supp. 2d 567
(S.D.N.Y. 2012) ..........................................................................................................16

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274 (2d Cir. 1989).....................10

*In re Kingdom of Belgium, Federal Public Service Finance Pension Plan
Litigation*, 680 F. Supp. 3d 460 (S.D.N.Y. 2023)............................................18, 19

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ............................................18

*Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401 (2d Cir. 2023) ...........................12

*Meyer v. Seidel*, 89 F.4th 117 (2d Cir. 2023)...............................................................13

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996) .............................................12

*Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63 (2d Cir. 2005) .....................................................11

*Sargiss v. Magarelli*, 12 N.Y.3d 527 (2009)............................................................................13, 14

*Secs. & Exch. Comm'n v. Kelly*, 663 F. Supp. 2d 276 (S.D.N.Y. 2009) .......................................11

*Tahari v. Narkis*, 216 A.D.3d 557 (1st Dep't 2023) .....................................................................13

*Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352 (2003)..................................................11

**Statutes and Rules**

CPLR § 213(8)...............................................................................................................................13

Fed R. Civ. P. 56..............................................................................................................................9

**Secondary Sources**

Black's Law Dictionary (11th ed. 2019)........................................................................................11

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to defendant Michael Ben-Jacob's and defendants Richard Markowitz, John van Merkensteijn, Bernina Pension Plan Trust and RJM Capital Pension Plan Trust's respective motions for summary judgment.[1]

## PRELIMINARY STATEMENT

Defendants Markowitz and van Merkensteijn, along with two of their trusts, move for summary judgment dismissing the claims SKAT asserted against them in a November 2019 complaint as supposedly time-barred under a tolling agreement the parties entered in 2018. Defendant Ben-Jacob repeats Markowitz and van Merkensteijn's tolling agreement argument to likewise seek summary judgment on 29 actions SKAT filed against him in February 2019 (28 actions) and June 2021 (1 action), and in addition argues that the June 2021 action also is time-barred because SKAT knew or should have known of the fraud claims SKAT pleaded against him more than two years before.

Defendants' motions should be denied because none of SKAT's claims against them is time-barred. The tolling agreements SKAT entered in 2018 to extend the statutes of limitation while the parties negotiated a potential settlement did not, as defendants contend, shorten any limitations period. And nor does Ben-Jacob's exclusion from the release that SKAT provided in a May 2019 settlement with other parties or the allegations in its pre-June 2019 complaints show that SKAT knew or was on inquiry notice of the claims pleaded against Ben-Jacob in the June 2021 complaint before June 2019. SKAT filed that complaint after Ben-Jacob's clients waived

---

1.   *See* Defs. John van Merkensteijn, Richard Markowitz, Bernina Pension Plan Trust, and RJM Capital Pension Plan Trust's Mot. for Summary Judgment, No. 19-cv-10713 (LAK), ECF Nos. 218-221; Not. of Def. Michael Ben-Jacob's Mot. for Summary Judgment, No. 18-md-02865 (LAK), ECF Nos. 1000, 1002-1003, 1006. Contrary to Pretrial Order No. 4 (ECF No. 2), defendants van Merkensteijn, Markowitz, Bernina Pension Plan Trust, and RJM Capital Pension Plan Trust filed their motion in the individual action only and not in the master docket for this multidistrict litigation.

privilege and, in 2021, produced documents showing his participation in fraudulent reclaim applications submitted by the 30 Argre plans listed in Schedule A to that complaint.

Defendants' blinkered reading of the tolling agreements as precluding all SKAT's claims against them filed more than 60 days after their expiration ignores the terms, purpose and context of the agreements.  The parties agreed to toll, not shorten, the limitations period and only for those of SKAT's claims that otherwise would have become time-barred during the tolled period. The agreements are clear that the 60-day deadline set forth therein applied only to those of SKAT's claims covered by the agreement and for which the limitations period would have run without it.  Thus, since none of SKAT's claims would have become untimely absent the tolling (and defendants do not argue otherwise), the agreement's 60-day deadline does not apply.

And Ben-Jacob's motion fails to show that SKAT's claims against him in its June 2021 complaint are time-barred under New York law's two-year fraud discovery rule.  The motion fails to establish that SKAT knew or was on inquiry notice of its claims against Ben-Jacob more than two years before it sued him.  SKAT did not discover Ben-Jacob's behind-the-scenes role in the Argre fraud until after Ben-Jacob's clients asserted their advice of counsel defense in January 2021 and waived attorney-client privilege over the communications and other documents showing Ben-Jacob's participation.

Ben-Jacob's argument to the contrary is premised on inferences that the Court cannot make on summary judgment, and on conflating Ben-Jacob's role in which he appeared as a signatory on documents submitted to SKAT on behalf of a subset of plans (information of which SKAT was aware), with his behind-the-scenes role in connection with other plans (of which SKAT was not aware).  For instance, Ben-Jacob asks the Court to infer that his exclusion from a release that SKAT provided in a May 2019 settlement agreement with others must mean that

SKAT actually knew of all its claims against Ben-Jacob by that time.  But no such inference is warranted because the motion fails to show that SKAT had or reasonably could have discovered by 2019 Ben-Jacob's role in the fraud involving the 30 Argre plans that are the subject of the 2021 complaint, a role which did not include any communication or the submission of any documents signed by Ben-Jacob to SKAT.  The settlement release also specifically excluded others who, like Ben-Jacob, SKAT had previously sued for their participation in certain defendant pension plans' fraudulent tax refund claims not covered by the settlement.  Thus, the exclusion from the settlement was calculated to preserve other claims involving other plans; the exclusion does not establish knowledge of Ben-Jacob's role in the fraud involving the 30 Argre plans that are the subject of the 2021 complaint.

Likewise, SKAT's allegations in its pre-June 2019 complaints do not establish as a matter of law that SKAT was by then on inquiry notice of its claims against Ben-Jacob in the June 2021 complaint for participating in the 30 Argre plans' fraudulent refund claims.  That SKAT sued Ben-Jacob for his role in authorizing payment agents to submit the post-Argre Schedule B pension plans' fraudulent refund claims does not mean SKAT was on notice of Ben-Jacob's involvement in the separate refund claims that the Argre principals submitted to SKAT using different pension plans in the years before.  And Ben-Jacob misconstrues SKAT's pre-June 2019 complaints in arguing they allege that the Argre and post-Argre plans' refund claims were part of a single fraudulent scheme.

But even assuming for argument's sake that SKAT were somehow on inquiry notice of his participation in the Argre fraud before June 2019, Ben-Jacob's motion still should be denied because the facts material to when the discovery period would have commenced are in dispute. SKAT investigated diligently after learning in June 2015 that it may have been the victim of

fraud, thus the two-year discovery period on SKAT's claims in the June 2021 complaint did not

start until the investigation uncovered, or should have uncovered, Ben-Jacob's participation in

the Argre fraud.  And SKAT did not discover Ben-Jacob's participation in the Argre fraud until

after Ben-Jacob's clients produced the documents previously withheld as privileged showing that

participation.

## STATEMENT OF FACTS

### The 30 Argre Schedule A plans.

Starting in 2012, the four principals of Argre Management LLC, defendants John van

Merkensteijn and Richard Markowitz and non-parties Jerome Lhote and Matthew Stein,

participated in a supposed dividend arbitrage scheme with Sanjay Shah and his company Solo

Capital Partners LLP.  (SKAT's Response to Def. Ben-Jacob's Rule 56.1 Statement of Material

Facts ("SKAT's 56.1 Response") ¶ 1; Declaration of Marc A. Weinstein, dated May 31, 2024

("Weinstein Decl."), Ex. 1 (R. Markowitz Dep.) at 137:19-141:7.)  As part of the scheme, the

Argre Principals used 30 pension plans (the Schedule A Plans) to apply to SKAT for refunds of

tax supposedly withheld from dividends Danish companies had issued to their shareholders.

(SKAT's 56.1 Response ¶ 2.)  SKAT alleges that the plans' refund claims were fraudulent

because the plans never owned any Danish shares and so never received any dividends on such

shares from which tax was withheld.[2]  None of the reclaim applications submitted by the 30

Argre plans identified Ben-Jacob on any document.

### The Maple Point plans and post-Argre Schedule B plans.

In 2014, the Argre Principals split into two groups, with Lhote and Stein on one side and

Markowitz and van Merkensteijn on the other.  (SKAT's 56.1 Response ¶¶ 4-6.)  Stein and

---

2.  *See Skatteforvaltningen v. Ben-Jacob*, No. 21-cv-05339-LAK, ECF No. 1, Compl., ¶ 1 (S.D.N.Y. June 16, 2021) ("June 2021 Compl.").

Lhote, along with another non-party, formed Maple Point LLC and used a separate set of pension plans to continue submitting refund claims to SKAT, but without Solo Capital.  (*Id.* ¶ 5; Weinstein Decl. Ex. 2 (R. Markowitz Dep.) at 346:4-24.)  Markowitz and van Merkensteijn, on the other hand, continued to participate in Solo Capital's scheme and, along with defendant Robert Klugman and others, used a new set of 39 pension plans (the Schedule B Plans) to submit the tax refund claims to SKAT.  (SKAT's 56.1 Response ¶ 6; Weinstein Decl. Ex. 2 (R. Markowitz Dep.) at 350:5-351:8.)

**SKAT began investigating the fraud in June 2015.**

In June and July 2015, SKAT received information from two different sources indicating that Shah, Solo Capital, and certain pension plans may have submitted fraudulent dividend withholding tax refund claims.  (SKAT's Statement of Additional Material Facts ("SKAT's Smt.") ¶ 1; *see also* SKAT's 56.1 Response ¶ 7.)[3]  SKAT began investigating shortly thereafter, and in August 2015, stopped paying all dividend withholding tax refund claims while it continued its investigation.  (SKAT's Smt. ¶ 2.)  During its investigation, SKAT discovered that all the refund claims that the 30 Argre Schedule A plans, the 39 post-Argre Schedule B plans, and the 55 Maple Point plans submitted were fraudulent.  (*See, e.g.*, SKAT's 56.1 Response ¶¶ 12, 16 & n.1, 17, 18 & n.2, 20, 21; *see also* Declaration of Thomas E.L. Dewey, dated May 10, 2024, ECF No. 1006 ("Dewey Decl."), Ex. 6 (Maple Point Settlement)*.*)

**The Tolling Agreements.**

On April 13, 2018, SKAT entered into a tolling agreement with the Argre and Maple Point principals and 118 pension plans and those plans' trustees, predecessor plans, successor

---

3.  SKAT's Statement of Additional Material Facts follows its Responses to Ben-Jacob's Rule 56.1 Statement of Materials Facts.

plans, and partners, under which each of defendants Ben-Jacob, Markowitz, van Merkensteijn, Bernina Pension Plan Trust and RJM Capital Pension Plan Trust was a "Covered Party." (Dewey Decl. Exs. 9 at 1; 14; *see also* Declaration of Alan E. Schoenfeld, dated May 10, 2024, ECF No. 220, Ex. 1.)[4]  As the tolling agreement itself states, the intent of the agreement was, in part, to allow "for further negotiations" "of a possible settlement agreement regarding repayment of withheld dividend tax."  (Dewey Decl. Ex. 9 at 1.)  Thus, "[i]nsofar as SKAT" was "contemplating initiating litigation," SKAT and the "Covered Parties" agreed it was "mutually desirable to enter into" the tolling agreement.  (*Id.* at 2.)

Under the agreement, SKAT and the Covered Parties agreed that "any statutes of limitations, statutes of repose or other time-related claim or defense that would expire or become applicable during" the tolling period "pertaining to any claim or defense relating in any way to SKAT's potential claims," defined as the "Claims," "shall be and are tolled and waived."  (*Id.*) The parties further agreed that "any such statutes or time-related claims or defenses that would have expired or become applicable during such period shall expire or become applicable only at the conclusion of sixty (60) days from the expiration of this agreement in accordance with its terms."  (*Id.*)  And the agreement provided that it did "not extend or affect the rights of any person or entity other than SKAT and the Covered Parties."  (*Id.*)

The agreement defined its "Expiration Date," in relevant part, as "the earlier of (A) August 1, 2018," or "(B) the filing of any legal proceeding against any Covered Party, but only with respect to the Covered Party or Parties named as a defendant in such proceeding."

---

4.  Both the Dewey and Schoenfeld Declarations append copies of the tolling agreements.  The remainder of SKAT's cites herein to the tolling agreements are to the copies exhibited to the Dewey Declaration.

(*Id.*)[5]  And after defining the Expiration Date, the agreement reiterated: "On the Expiration Date, a party to this agreement shall have sixty (60) days from the Expiration Date to file any lawsuit relating to the Claims."  (*Id.*)

On July 11, September 28, and October 30, 2018, SKAT and the Covered Parties, including Ben-Jacob, entered into three subsequent agreements, "the intent" of which were to "extend the duration" of the April 13, 2018 tolling agreement.  (*Id*. Exs. 10 at 1; 11 at 1; 12 at 1; 14.)  Under the extension agreements, the "Expiration Date" of the tolling period was extended until October 1, November 1, and December 31, 2018, respectively, unless the agreement was otherwise terminated earlier according to its terms.  (*Id.* Exs. 10 at 2; 11 at 2; 12 at 2.)[6]

**SKAT's pre-June 2019 claims against Ben-Jacob.**

In May and June 2018, SKAT filed suits against five post-Argre Schedule B Plans not covered by the tolling agreement and their representatives who authorized payment agents to submit the plans' fraudulent refund applications to SKAT, including Ben-Jacob in one instance. (SKAT's 56.1 Response ¶ 12.)  In particular, on May 18, 2018, SKAT sued Ben-Jacob in its action arising from The Stor Capital Consulting LLC 401K Plan's refund claims, alleging in its complaint that Ben-Jacob, describing himself as "attorney-in-fact" for the plan, executed a power of attorney that authorized the payment agent to submit the claims, which document was submitted to SKAT as part of the refund claim.  (*See SKAT v. The Stor Cap. Consulting LLC 401K Plan*, No. 18-cv-04434-LAK, ECF No. 1, Compl., ¶¶ 34, 40 (S.D.N.Y. May 18, 2018).)

---

5.  The "Effective Date" of the tolling agreement marking the beginning of the tolling period was January 1, 2018. (*Id*.)

6.  Aside from extending the Expiration Date, the July 11, September 28, and October 30, 2018 extension agreements contained the same terms as the original April 13, 2018 tolling agreement.

And in February 2019, after the tolling agreements expired, SKAT commenced actions against the 34 other post-Argre Schedule B plans, naming Ben-Jacob as a defendant in 28 of them. (SKAT's 56.1 Response ¶ 16.) In all 29 actions, including the Stor Capital Consulting case, SKAT sued Ben-Jacob for his role in authorizing payment agents to submit the plans' refund claims, which signed authorization was submitted to SKAT for each plan. (*Id.*) In addition, SKAT alleged in the February 2019 actions that 34 of the post-Argre Schedule B plans listed Ben-Jacob's office address as the plans' address in the refund claims. (*See, e.g.*, *Skatteforvaltningen v. Ballast Ventures LLC Roth 401K Plan*, No. 19-cv-01781, ECF No. 1, Compl. ¶¶ 45-46 (S.D.N.Y. Feb. 26, 2019); *see also* SKAT's 56.1 Response ¶ 28.b.)

**The Maple Point settlement agreement.**

On May 28, 2019, SKAT entered into a settlement agreement with Maple Point and former Argre principals Stein and Lhote, among others, to resolve SKAT's claims arising from the Maple Point plans' refund claims and the Argre plans' refund claims to the extent of the settling parties' interests in those plans. (Dewey Decl. Ex. 6 (Maple Point Settlement) at Recital D & § 1(bb).) In addition to Stein and Lhote, the settling parties included 54 other individuals, the Maple Point plans, and the 30 Argre Schedule A plans, some of which received a partial release only in the settlement. (*Id.* Ex. 6 (Maple Point Settlement) at Exs. 1 & 2.) The agreement also included a "[n]on-exhaustive list" of individuals and entities specifically excluded from the release SKAT provided, including, among others, Ben-Jacob and other individuals and pension plans that SKAT had already sued for the post-Argre Schedule B plans' refund claims not covered by the settlement. (*Id.* at § 4(a)(iii) & Ex. 3B.)

**The November 2019 Complaint.**

On November 2019, SKAT brought suit against defendants van Merkensteijn, Markowitz, Bernina Pension Plan Trust, and RJM Capital Pension Plan Trust arising from the

fraudulent refund claims 14 of the Argre plans submitted to SKAT.  (*See generally Skatteforvaltningen v. van Merkensteijn*, No. 19-cv-10713, ECF No. 1, Compl. (S.D.N.Y. Nov. 19, 2019).)  SKAT also named those 14 plans as defendants, each of which was only partially released in the Maple Point settlement, and asserted claims against all defendants for fraud, aiding and abetting fraud, negligent misrepresentation, payment by mistake, unjust enrichment, and money had and received.  (*Id.* ¶¶ 16-35, 112-142.)

**The June 2021 Complaint.**

In January 2021, Ben-Jacob's co-defendants Markowitz, van Merkensteijn and Robert Klugman asserted an advice of counsel defense and waived attorney-client privilege over their communications with Ben-Jacob and his Kaye Scholer colleagues.  (SKAT's Smt. ¶ 3.)  And in February and March 2021, Ben-Jacob's co-defendant clients produced those previously withheld communications and documents revealing Ben-Jacob's participation in the Argre plans' fraud. For instance, on March 9, 2021, defendants produced documents showing, as SKAT subsequently alleged, that Ben-Jacob, among other things, "played a central role in structuring the relationships and transactions between the 30 Schedule A Plans, the [Argre] Principals, and others," without which "the Principals and the[] 30 Plans could not have committed their fraud against SKAT."  (June 2021 Compl. ¶ 16; SKAT's Smt. ¶ 4.)  On June 16, 2021, SKAT filed its complaint against Ben-Jacob alleging claims for aiding and abetting fraud and conspiracy to commit fraud for his role in the Argre Schedule A plans' fraud.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  Material facts are those "that might affect the outcome of the suit under the governing law," and disputes about them are

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). In determining whether there is a genuine dispute as to any material fact, the Court must "draw all factual inferences and resolve all ambiguities in favor of" SKAT, "the non-moving party." *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020).

## ARGUMENT

### I.    None of SKAT's claims is time-barred by the tolling agreement.

Defendants' argument that the parties' agreement to toll the statutes of limitation for any of SKAT's claims that would otherwise have become time-barred during the tolling period "cut back on" the limitations periods for all SKAT's other claims against them is nonsensical and contrary to the agreements' plain terms. (Ben-Jacob Br. 9-11; van Merkensteijn Br. 4-6.) To reach that absurd result, defendants isolate a single sentence in the agreements, "taking" it "out of" its "context and giving" it "an interpretation apart from the contract of which" it is "a part." *Chacko v. Costco Wholesale Corp.*, 568 F. Supp. 3d 487, 495-96 (S.D.N.Y. 2021) (internal quotation omitted).

But tolling agreements are a "type of contract" just like any other, *Figueroa v. Ministry for Foreign Affs. of Sweden*, 222 F. Supp. 3d 304, 317 (S.D.N.Y. 2016), thus the normal rules of contract interpretation apply, "the objective" of which "is to give effect to the expressed intentions of the parties." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).[7] As such, the tolling agreements must be "read as a whole," "every part" of them "interpreted with reference to the whole," and "interpreted as to give effect to" their "general

---

7.   Each of the tolling and extension agreements provides that it "shall be construed in accordance with the laws of New York." (Dewey Decl. Exs. 9 at 2; 10 at 2; 11 at 2; 12 at 2.)

purpose." *Adams v. Suozzi*, 433 F.3d 220, 228 (2d Cir. 2005) (internal quotation omitted).

"[E]xcessive emphasis" should not be "placed upon particular words or phrases" as defendants

seek to do, *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (internal quotation

omitted and citation omitted), because otherwise the meaning of the agreements "may be

distorted." *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003).  Rather, the

"the entire contract" must be examined and "the relation of the parties and the circumstances

under which it was executed" considered.  *Fourth Branch Assocs. Mechanicville v. Niagara

Mohawk Power Corp.*, 302 A.D.2d 780, 782 (3d Dep't 2003) (citation omitted).

Defendants' misinterpretation of the clause providing that the parties "shall have sixty

(60) days from the Expiration Date to file any lawsuit relating to the Claims" ignores the

purpose, context, and preceding terms of the agreements.  SKAT and the tolling parties entered

into the agreements because SKAT was "contemplating initiating litigation" and the parties were

negotiating "a possible settlement agreement."  (Dewey Decl. Ex. 9 at 1-2.)  And the purpose of

the agreements was to toll, not shorten, the limitations periods on SKAT's claims.  *See Secs. &

Exch. Comm'n v. Kelly*, 663 F. Supp. 2d 276, 287 (S.D.N.Y. 2009) (interpretation of tolling

agreement under which limitations period was not extended "would undo the 'toll' and

eviscerate the purpose of the agreement").[8]

As such, the parties agreed that "any statutes of limitations, statutes of repose or other

time-related claim or defense that would expire or become applicable" during the tolling period

"shall be and are tolled and waived."  (Dewey Decl. Exs. 9 at 2; 10 at 1; 11 at 1; 12 at 1.)  And

---

8.  *See also Black's Law Dictionary* (11th ed. 2019) (defining "tolling agreement" as "[a]n agreement between a
    potential plaintiff and a potential defendant by which the defendant agrees to extend the statutory limitations
    period on the plaintiff's claim . . . so that both parties will have more time to resolve their dispute without
    litigation").

further "that any such statutes or time-related claims or defenses that would have expired or become applicable during such period shall expire or become applicable only at the conclusion of sixty (60) days from the expiration" of the agreements.  (*Id.*)  Thus, viewed in context, the sixty-day deadline in the agreements applies only to claims that otherwise would be time-barred absent the agreements, not to all SKAT's claims.  The tolling grants SKAT a 60-day period to bring claims that would otherwise expire absent that grant: "a party to this agreement shall have sixty (60) days . . . ."  (*Id.* Ex. 9 at 2.)  In other words, the 60-day provision only serves to further extend the applicable limitations period, if necessary.  (*Id.* ("This agreement does not *extend* or affect the rights of any other person . . . ." (emphasis added).)  The tolling does not purport to take away any time that SKAT otherwise had under any applicable limitations.  It does not provide that SKAT "shall not have more than sixty days," or otherwise purport to limit SKAT's rights.

Indeed, if the clause meant, as defendants argue, that the limitations period for all SKAT's claims was sixty days after the Expiration Date, then the more specific preceding clause providing that the 60-day deadline applied only to SKAT's claims for which "any such statutes or time-related claims or defenses . . . would have expired or become applicable during" the tolling period would be superfluous.  *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (agreement must "be construed so as to give full meaning and effect to all of its provisions" (internal quotation omitted)).  And it is that "definitive, particularized" language in the agreement specifying that the deadline applies only to those otherwise time-barred claims that "takes precedence over expressions of intent," such as the clause on which defendants rely, "that are general" or "summary."  *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023) (internal quotation omitted).

Thus, SKAT's claims against defendants filed more than sixty days after the December 31, 2018 expiration of the tolling agreements are not untimely because none of those claims would have otherwise become time-barred during the tolling period. Defendants' motions do not argue that those claims would have otherwise become time-barred during the tolling period. (*See generally* Defs. Brs.)  Likewise, even assuming for the sake of argument that the tolling agreement expired as to Ben-Jacob in May 2018 when SKAT first sued him despite that he was covered by the subsequent tolling agreement extensions, none of SKAT's actions against him filed more than sixty days later are time-barred for the same reason.

## II.     None of SKAT's claims against Ben-Jacob in the June 2021 complaint is time-barred.

Nor should the June 2021 complaint be dismissed because, as Ben-Jacob argues, the undisputed facts show SKAT cannot demonstrate that it filed the action within two years of discovering facts suggesting Ben-Jacob's participation in the Argre Schedule A plans' fraud. (Ben-Jacob Br. 11-19.)  Under New York law, the limitations period for SKAT's civil conspiracy and aiding and abetting fraud claims against Ben-Jacob is "the greater of six years from the date the cause of action accrued or two years from the time" that SKAT "discovered the fraud, or could with reasonable diligence have discovered it."  CPLR § 213(8).[9]

"[T]o trigger the duty of inquiry" and the two-year discovery period, "the circumstances must suggest to a person of ordinary intelligence that it is probable—*i.e.*, more likely than not— and not merely possible, that (a) he has been defrauded (b) by the defendant."  *Meyer v. Seidel*, 89 F.4th 117, 136 (2d Cir. 2023).  "[M]ere suspicion" is not "sufficient."  *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009).  And "[t]he proper focus . . . is not the date of plaintiff's actual or

---

9.   *See also Tahari v. Narkis*, 216 A.D.3d 557, 559 (1st Dep't 2023) (CPLR § 213(8) applies to conspiracy to commit fraud and aiding and abetting fraud claims).

imputed knowledge of the general fraudulent scheme," but rather "when the plaintiff knew facts suggesting a particular defendant's participation." *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908, at *2 (S.D.N.Y. June 30, 2021) (internal quotations and emphasis omitted). Thus, the two-year "discovery period with respect to SKAT's claims against" Ben-Jacob in the June 2021 complaint did not start until SKAT became "aware of facts suggesting that" Ben-Jacob "participated in" the Argre Schedule A plans' "scheme." *Id*.

When SKAT discovered such facts is, at best, a disputed issue of fact that cannot be resolved on summary judgment. *See English v. Lattanzi*, No. 12-CV-4179 (JS)(AYS), 2015 WL 5038315, at *4 (E.D.N.Y. Aug. 26, 2015) ("summary judgment is often not a proper vehicle" to resolve the "fact-intensive" issue of "when the fraud should have been discovered" (internal quotation omitted)). "Where," as here, "it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts." *Sargiss*, 12 N.Y.3d at 532. Neither the Maple Point settlement agreement nor SKAT's allegations in its pre-June 2019 complaints establish as a matter of law that, as Ben-Jacob argues, SKAT knew Ben-Jacob participated in the Argre fraud or knew facts suggesting as much more than two years before the June 2021 case was commenced.

**A.    The Maple Point settlement does not show SKAT knew Ben-Jacob participated in the Argre plans' fraud.**

In arguing that the Maple Point settlement agreement shows that SKAT must have known by May 2019 that Ben-Jacob participated in the Argre Schedule A plans' fraud (Ben-Jacob Br. 15-16), Ben-Jacob asks the Court to make inferences in his favor that the Court cannot make. *See In re Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litigation*,

No. 18-md-2865 (LAK), 2023 WL 8039623, at *6 (S.D.N.Y. Nov. 20, 2023) (court must "resolve ambiguities and draw reasonable inferences against the moving party" (internal quotation omitted)).  That "SKAT believed it possessed claims against Ben-Jacob arising from his involvement" in the Argre plans' fraud is not even the most "plausible," let alone the "only" plausible, "explanation" for Ben-Jacob's exclusion from the release SKAT provided the Maple Point settling parties.  (Ben-Jacob Br. 15.)

The Maple Point agreement, to which Ben-Jacob was not a party, settled SKAT's claims against the Maple Point parties arising from the Maple Point and Argre plans' fraud.  From this and the fact that SKAT has never alleged he was involved in the Maple Point plans' fraud, Ben-Jacob infers that SKAT must have known he was involved in the Argre plans' fraud.  (Ben-Jacob Br. 15.)  But it is just, if not more, reasonable to infer that SKAT did not know at the time whether Ben-Jacob was involved in either the fraud involving the Maple Point plans or the fraud involving the Argre plans, and excluded Ben-Jacob from the release because it had by that time sued him 29 times for his role in the fraud involving the post-Argre Schedule B plans.

And that inference is all the more reasonable because in addition to Ben-Jacob, the "non-exhaustive list" of individuals specifically excluded from the release included others who indisputably did not participate in either the Maple Point or Argre plans' fraud, and whom SKAT had previously sued, as it had Ben-Jacob, for their role in the fraud involving the post-Argre Schedule B plans.  (Dewey Decl. Ex. 6 (Maple Point Settlement) at Ex. 3B.)[10]  And also explicitly excluded from the release were the post-Argre plans themselves that SKAT had sued and which never participated in the Maple Point or Argre plans' fraud.  (*Id.* Ex. 6 (Maple Point

---

10.  *See also* SKAT's 56.1 Response ¶ 6 (noting that, among others, Ronald Altbach, Robin Jones, David Zelman, and Perry Lerner, each of whom was included in the list of individuals excluded from release, used the separate set of Schedule B plans from 2014 to 2015).

Settlement) at Ex. 3A.)  Thus, the mere fact that Ben-Jacob was excluded from the release in the Maple Point settlement is no reason to conclude SKAT must, by that time, have known that he participated in the Argre plans' fraud.

Nor does *Gonzales v. National Westminster Bank PLC* "compel[] dismissal."  (Ben-Jacob Br. 15-16.)  In *Gonzales*, the Court found that the plaintiff was on inquiry notice of its fraud claims because of, among other things, the defendant's widely reported settlement of a class action that alleged "similar" facts as the plaintiff did concerning the defendant's "involvement in [the] tax shelter scheme" at issue.  847 F. Supp. 2d 567, 568, 571 (S.D.N.Y. 2012).  *Gonzales*'s "logic" does not apply here, much less "with greater force," (Ben-Jacob Br. 16), because Ben-Jacob was not a party to the Maple Point settlement and has not otherwise publicly settled any claims arising from his participation in the Argre plans' fraud.  To be sure, the Maple Point settlement shows SKAT knew of the Maple Point and Argre plans' fraud by that point.  But "the salient question" is not when SKAT had "actual or imputed knowledge of the general fraudulent scheme," but rather "when" SKAT "knew facts suggesting" Ben-Jacob's "participation" in it.  *In re Customs & Tax Admin.*, 2021 WL 2689908, at *2 (internal quotations omitted).

### B.    SKAT's allegations in its pre-June 2019 complaints do not show SKAT was on inquiry notice that Ben-Jacob participated in the Argre fraud.

The argument that SKAT's pre-June 2019 complaints show that it was on inquiry notice of Ben-Jacob's participation in the Argre fraud mischaracterizes those complaints.  (Ben-Jacob Br. 16-19.)

Before June 2019, SKAT had sued Ben-Jacob solely for his role in submitting 29 post-Argre Schedule B plans' fraudulent refund claims.  The only allegations against Ben-Jacob in those pre-June 2019 complaints were that Ben-Jacob had executed documents authorizing payment agents to submit the post-Argre plans' refund claims, which documents were submitted

16

to SKAT as part of the plans' refund claims, and that 34 of those post-Argre plans had listed Ben-Jacob's office address in their refund claims.  (SKAT's 56.1 Response ¶¶ 13, 16, 28.b.)  But "a duty to inquire" arises only from "information that relates directly to the" fraud "later allege[d]."  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (internal quotation omitted).  And neither of these allegations of Ben-Jacob's participation in the post-Argre Schedule B plans' fraud relate directly to SKAT's allegations in the June 2021 complaint that Ben-Jacob participated in the Argre Schedule A plans' fraud by, for instance, "play[ing] a central role in structuring the relationships and transactions between the 30 Schedule A Plans, the [Argre] Principals, and others."  (June 2021 Compl. ¶ 16.)

And Ben-Jacob misconstrues SKAT's allegations in the pre-June 2019 (and other) complaints to argue that SKAT alleges that the Argre Schedule A and post-Argre Schedule B plans were "part of a singular fraudulent scheme" that "made use of the same strategy by the same people."  (Ben-Jacob Br. 16 (internal quotation omitted).)  But SKAT has never pleaded that Ben-Jacob was responsible for the fraudulent reclaims submitted by, for example, the Maple Point plans or, for that matter, for reclaims submitted by any plans other than the Argre Schedule A plans and the Post-Argre Schedule B plans.  The motion simply misconstrues allegations generally describing fraudulent reclaims that SKAT received from all different sources.  For instance, SKAT's allegation that "[t]he essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies" encompassed all the entities worldwide that submitted fraudulent refund claims to SKAT, including all the defendant pension plans in this multidistrict litigation, Argre plans, post-Argre plans or otherwise.  (Ben-Jacob Br. 16-17.)

Likewise, SKAT's allegations that those 300 entities "act[ed] through their agents and representatives" to "appl[y] to SKAT claiming repayments of tax," were "assisted by [their]

'Authorized Representatives,' 'non-party Payment Agents,' and 'non-party Broker Custodians,'"

and "provided the same documentation in their applications," apply equally to all the defendant

plans in the multidistrict litigation, not just the Argre and post-Argre plans.  (Ben-Jacob Br. 17.)

Thus, the pre-June 2019 complaints do not, as Ben-Jacob argues, demonstrate SKAT's "clear

knowledge that Ben-Jacob had a role in" a "singular" fraud.  (Ben-Jacob Br. 17.)

### C.    Even if SKAT were on inquiry notice, the discovery period did not start until SKAT's investigation revealed Ben-Jacob's participation in the Argre fraud.

Even assuming *arguendo* that SKAT was on inquiry notice of Ben-Jacob's participation

in the Argre Schedule A plans' fraud before June 2019 (and it was not), there is at the very least

a genuine dispute precluding summary judgment concerning whether the claims in the June 2021

complaint still are timely because SKAT investigated the Argre fraud diligently.  "[T]he date on

which knowledge of a fraud will be imputed to a plaintiff can depend on the plaintiff's

investigative efforts."  *Cohen¸* 711 F.3d at 361.  Where a "plaintiff makes no inquiry once the

duty to inquire arises, knowledge will be imputed as of the date the duty arose," but "if some

inquiry is made, the court will impute knowledge of what a plaintiff in the exercise of reasonable

diligence should have discovered concerning the fraud."  *Id.* at 361-62 (internal quotations and

citations omitted).  And in that case, "the limitations period begins to run from the date such

inquiry should have revealed the fraud."  *Id.* at 362.[11]

For instance, in *In re Kingdom of Belgium, Federal Public Service Finance Pension Plan

Litigation*, the Court declined to dismiss on the pleadings the Belgian tax authority's claims as

time-barred because the tax authority "conducted an investigation," so "the limitations period

beg[an] to run from the date such inquiry should have revealed the fraud."  680 F. Supp. 3d 460,

---

11.  *See also Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155 (2d Cir. 2012) ("a plaintiff may be put on inquiry notice, which can trigger the statute of limitations if the plaintiff does not pursue a reasonable investigation").

481 (S.D.N.Y. 2023), *motion to certify appeal denied sub nom. In re Kingdom of Belgium Fed. Pub. Serv. Fin. Pension Plan Litig.*, No. 21-CV-6392 (JGK), 2023 WL 6214806 (S.D.N.Y. Sept. 22, 2023).  And "resolving the issue of when" the "investigation produced sufficient facts to bring a claim for fraud require[d] a fact-intensive inquiry." *Id.*

The same is true here, where SKAT began an investigation of fraudulent tax refund claims in June 2015 after it received information that some such fraudulent claims may have been submitted.  (SKAT's Smt. ¶ 1.)  SKAT stopped paying all refund claims in August 2015 while it continued its investigation.  (*Id.* ¶ 2.)  And starting in May 2018, SKAT commenced actions against the defendant plans that its investigation revealed submitted fraudulent claims, including against the post-Argre plans and the Argre plans not fully released by the Maple Point settlement.  (*See, e.g.*, SKAT's 56.1 Response ¶ 12.)

The facts SKAT subsequently learned showing Ben-Jacob's participation in the Argre fraud alleged in the June 2021 complaint were from privileged attorney-client communications produced to SKAT only after Ben-Jacob's co-defendant clients asserted an advice of counsel defense and waived privilege in January 2021.  (SKAT's Smt. ¶ 4.)  For example, communications that defendants did not produce until March 2021 revealed Ben-Jacob's role in creating the partnerships for the Argre Schedule A plans that were used to distribute the purported refunds SKAT paid to the participants in the fraud (*id.*), and that are the crux of SKAT's June 2021 complaint.  Thus, it was only after SKAT learned of these facts in March 2021, which SKAT could not have discovered earlier because they were shielded by privilege, that SKAT's "inquiry . . . revealed the fraud" alleged against Ben-Jacob in the June 2021 Complaint and the two-year discovery period began.  *Cohen*, 711 F.3d at 362.  And because

19

SKAT commenced the action less than two years later in June 2021, the action is therefore timely.

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court deny defendants' motions for summary judgment.

Dated: New York, New York
      May 31, 2024

HUGHES HUBBARD & REED LLP

By: /s/ Marc A. Weinstein
    William R. Maguire
    Marc A. Weinstein
    Neil J. Oxford
    Dustin P. Smith
    Gregory C. Farrell
    One Battery Park Plaza
    New York, New York 10004-1482
    Telephone: (212) 837-6000
    Fax: (212) 422-4726
    bill.maguire@hugheshubbard.com
    marc.weinstein@hugheshubbard.com
    neil.oxford@hugheshubbard.com
    dustin.smith@hugheshubbard.com com
    gregory.farrell@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*