**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to:
18-cv-04434; 18-cv-07824; 18-cv-07827;
18-cv-07828; 18-cv-07829; 19-cv-01781;
19-cv-01783; 19-cv-01785; 19-cv-01788;
19-cv-01791; 19-cv-01792; 19-cv-01794;
19-cv-01798; 19-cv-01800; 19-cv-01801;
19-cv-01803; 19-cv-01806; 19-cv-01808;
19-cv-01809; 19-cv-01810; 19-cv-01812;
19-cv-01813; 19-cv-01815; 19-cv-01818;
19-cv-01866; 19-cv-01867; 19-cv-01868;
19-cv-01869; 19-cv-01870; 19-cv-01871;
19-cv-01873; 19-cv-01894; 19-cv-01896;
19-cv-01918; 19-cv-01922; 19-cv-01926;
19-cv-01928; 19-cv-01929; 19-cv-01931;
21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SEPARATE TRIALS

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ................................................................................................................... 5

    I.    The consolidated trial will not prejudice Ben-Jacob. ................................... 5

        A.    Defendants' conflicting positions do not prejudice Ben-Jacob. ...................... 5

        B.    Ben-Jacob will not face any spillover prejudice. .............................. 7

        C.    The degree of complexity does not warrant separate trials. ........................... 9

    II.    Expediency and judicial economy weigh in favor of the consolidated trial. ............. 10

CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311 (2d Cir. 1999) .......................................... 5

*Ardolf v. Weber*, 332 F.R.D. 467 (S.D.N.Y. 2019) .......................................... 9

*In re Blech Secs. Litig.*, No. 94 Civ. 7696(RWS), 2003 WL 1610775 (S.D.N.Y.
    Mar. 26, 2003) ..........................................................................................................4, 5

*Cashman v. Montefiore Med. Ctr.*, 191 B.R. 558 (S.D.N.Y. 1996) .......................................... 6

*Dallas v. Goldberg*, 143 F. Supp. 2d 312 (S.D.N.Y. 2001) .......................................... 4

*Doe v. DeBuono*, 193 F.R.D. 117 (S.D.N.Y. 2000) .......................................... 6

*E. Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-cv-2185 (LJL), 2020 WL
    6048158 (S.D.N.Y. Oct. 13, 2020) .......................................... 5

*Gordon Springs v. City of New York*, No. 17-cv-0451 (AJN), 2019 WL 10892065
    (S.D.N.Y. Aug. 21, 2019) .......................................... 8

*Green v. Beer*, No. 06 Civ. 4156 (KMW)(JCF), 2009 WL 3401256 (S.D.N.Y.
    Oct. 22, 2009) .......................................... 9

*Hecht v. City of New York*, 217 F.R.D. 148 (S.D.N.Y. 2003) .......................................... 5

*Moore v. Navillus Tile, Inc.*, No. 14 Civ. 8326 (CM), 2017 WL 11567280
    (S.D.N.Y. Jan. 3, 2017) .......................................... 10

*Richardson v. Marsh*, 481 U.S. 200, 107 S. Ct. 1702 (1987) .......................................... 9

*Tee Vee Toons, Inc. v. Rep Sales, Inc.*, No. 03 Civ. 10148(JGK), 2009 WL
    1422610 (S.D.N.Y. May 20, 2009) .......................................... 9

*United States v. Aronson*, No. 2:12-cr-00245-ADS-GXB (E.D.N.Y. May 23,
    2013) .......................................... 6

*United States v. Kurland*, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897
    (E.D.N.Y. July 11, 2022) .......................................... 11

*United States v. Nordlicht*, No. 16-cr-00640 (BMC), 2018 WL 1796542
    (E.D.N.Y. Apr. 16, 2018) .......................................... 6

*United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017) .......................................... 6

*Weiss v. Nat'l Westminster Bank PLC*, No. 05-cv-4622 (DLI) (RML), 2017 WL
10058916 (E.D.N.Y. Mar. 31, 2017)...................................................................9, 10

**Statutes and Rules**

Fed. R. Civ. P. 21 ...................................................................................................5

Fed. R. Civ. P. 42(b)..............................................................................................4

**Secondary Sources**

9A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 2389
(3d ed. 2008).......................................................................................................10

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to defendant Michael Ben-Jacob's motion for separate trials under Federal Rule of Civil Procedure 42(b), or in the alternative, severance of SKAT's claims against him under Federal Rule of Civil Procedure 21.[1]

## PRELIMINARY STATEMENT

Ben-Jacob's claims of prejudice and supposed inefficiencies do not improve with repetition, and his motion provides no reason for the Court to reconsider its previous order consolidating these cases for trial.  SKAT's claims against Ben-Jacob and his co-defendant clients arise from a single fraudulent scheme and present many common issues of fact and law. And the evidence and testimony that would be presented at separate trials of Ben-Jacob and his clients would overlap substantially.

There is no merit to Ben-Jacob's argument that separate trials are warranted because of the conflict between him and his clients over the scope of his role.  As the Court previously noted, this "[w]ouldn't be the first case with defendants' positions in a multidefendant case being tried together."[2]  If anything, defendants' conflicting testimony, with the clients intending to argue they made full disclosure to Ben-Jacob and his former Kaye Scholer colleagues and relied on their advice, and Ben-Jacob arguing that he had only limited knowledge and involvement, weighs against severance because of the risk of inconsistent verdicts in separate trials.

---

1.  *See* Mot. for Separate Trials, ECF Nos. 1010-11, 1013.  Defendants Richard Markowitz, John van Merkensteijn and Richard Klugman join defendant Ben-Jacob in requesting separate trials or severance of the claims against Ben-Jacob for the reasons set forth in their submissions to the Court dated January 4, January 24, and February 7, 2024, (*see* Investor Defs.' Mot. for Severance, ECF No. 998), which the Court previously found insufficient to warrant separate trials.  (Pretrial Order No. 34, ECF No. 961 (ordering joint trial "[a]fter careful consideration of the parties' very helpful proposals and counter proposals").)  SKAT opposes Markowitz, van Merkensteijn and Klugman's motion for the reasons set forth herein and in its submissions dated January 4, 2024 (ECF No. 948) and January 31, 2024 (ECF No. 954).

2.  Declaration of Marc A. Weinstein, dated May 31, 2024 ("Weinstein Decl."), Ex. 1 (Mar. 28, 2024 Conf. Tr.) at 5:6-8.

Moreover, Ben-Jacob's assertions that his clients' supposed advice of counsel defense will be an "echo chamber" for SKAT's case against him are an exaggeration—the client defendants do not intend to argue, as SKAT does, that Ben-Jacob participated in a fraud.[3]

Nor will Ben-Jacob suffer "spillover prejudice" from evidence of some unspecified advice provided by other attorneys from Kaye Scholer or otherwise.  SKAT intends to prove at trial that Ben-Jacob is liable for fraud based on his own conduct (including the acts of others taken at his direction on his behalf), not that of others.  Any risk of spillover prejudice, if it materializes at trial, can be alleviated by the Court instructing the jury.  Likewise, this consolidated trial involving six individual defendants is not so complex that a jury cannot follow the Court's instructions and make individualized determinations as to each defendants' liability on each of SKAT's claims.

Finally, Ben-Jacob's argument that separate trials are warranted because some evidence at a joint trial may be relevant only to SKAT's claims against him turns the law on its head.  The relevant inquiry is whether the testimony and evidence presented at separate trials would substantially overlap, not whether the evidence would be precisely the same.  And the supposed streamlining that Ben-Jacob argues would result from separate trials is illusory.

## BACKGROUND

On December 12, 2023, following the denial of the parties' cross-motions for summary judgment, the Court instructed the parties to submit proposals for further proceedings in this multidistrict litigation, including for a trial or trials.  (Pretrial Order No. 33, ECF No. 940.)  In

---

3.  SKAT disputes that the client defendants have an advice of counsel defense because, as Ben-Jacob and the client defendants concede, the clients never obtained legal advice on the key issue of whether, in light of the facts of their plans' purported trading and the various partnership arrangements, they could claim to have been the beneficial owners of Danish stock and received dividends for which tax was withheld.  To the extent they intend to suggest such an advice of counsel defense exists, SKAT will move to preclude any such argument.

response, SKAT proposed, as subsequently modified, that the Court consolidate for a first trial all SKAT's claims against defendants Richard Markowitz, John van Merkensteijn, and Richard Klugman, their attorney defendant Ben-Jacob, and Markowitz and van Merkensteijn's spouses, all of whom participated in a single scheme to defraud SKAT.  (ECF Nos. 948, 954.)[4]

Defendants proposed instead a first trial comprised of only SKAT's claims against Markowitz, van Merkensteijn and Klugman, with SKAT's claims against Ben-Jacob, among others, tried separately.  (ECF Nos. 948, 953, 955.)  Defendants argued that the claims against Ben-Jacob should be tried separately because otherwise all defendants would be prejudiced given that "Ben-Jacob and his clients disagree as to the scope of Ben-Jacob's representation."  (ECF No. 953 at 7.)  And Ben-Jacob argued he would be prejudiced in a joint trial "by SKAT effectively presenting its case against him twice: once through SKAT's lawyers and again through counsel for Ben-Jacob's clients," who "would serve as an 'echo chamber' for SKAT's counsel."  (*Id.* at 8.)  Further, Ben-Jacob argued he would "also be prejudiced when SKAT and his clients both attempt to conflate the distinctions between his work and the work performed by other lawyers at Kaye Scholer."  (*Id.*)

Finally, defendants argued that SKAT's proposed first trial would "result in unfair prejudice to each defendant" because of the "complex facts, numerous defendants, and complicated legal issues" involved.  (ECF No. 955 at 3.)  And that a consolidated trial including Ben-Jacob would "be inefficient given the number of issues unique to Ben-Jacob," such as whether "Ben-Jacob 'departed from professional standards' in providing legal services," and, for instance, "the extent to which Ben-Jacob was aware of the advice, and the bases for the advice his colleagues provided."  (ECF No. 953 at 9.)

---

4.   SKAT's proposed first trial also included all its claims against the defendant pension plans for which any of these individuals was a plan participant and the defendant entities they controlled.

On February 21, 2024, "[a]fter careful consideration," the Court "adopt[ed]" SKAT's modified proposal for a first trial involving "the six individual defendants (Mr. and Mrs. Markowitz, Mr. and Mrs. van Merkensteijn, Mr. Klugman and Mr. Ben-Jacob)." (Pretrial Order No. 34, ECF No. 961.) As the Court noted at the March 28, 2024 conference, this "[w]ouldn't be the first case with defendants' positions in a multidefendant case being tried together" and "it's manageable." (Weinstein Decl. Ex. 1 (Mar. 28, 2024 Conf. Tr.) at 5:6-8.) And while the Court permitted defendants to subsequently file a motion to sever the claims against Ben-Jacob, the Court also noted that "in all likelihood, barring unforeseen circumstances or knowledge I don't yet have," such a motion is "not likely to be terribly fruitful." (*Id.*, at 4:25-5:4.) On April 1, 2024, the Court issued an order consolidating the cases for trial. (Pretrial Order No. 35, ECF No. 977.) No unforeseen circumstances have subsequently arisen nor have defendants provided the Court with any new information bearing on the arguments previously considered and rejected.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(b), courts may "order a separate trial of one or more separate . . . claims" "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "The application of Rule 42(b) does not lend itself to a bright-line test, but, rather, requires case-by-case analysis." *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001). The factors courts consider in determining whether to order separate trials include "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the severable issues require the testimony of different witnesses and different documentary proof; (3) whether the party opposing the severance will be prejudiced if it is granted; and (4) whether the party requesting the severance will be prejudiced if it is not granted." *In re Blech Secs. Litig.*, No. 94 Civ. 7696(RWS), 2003 WL 1610775, at *11-12 (S.D.N.Y. Mar. 26, 2003) (citations omitted).

4

While courts have "the discretion to order separate trials," *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999), doing so is the "exception rather than the rule and is to be employed only in exceptional circumstances." *E. Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-cv-2185 (LJL), 2020 WL 6048158, at *1 (S.D.N.Y. Oct. 13, 2020) (internal quotations and citations omitted).  Ben-Jacob, as the moving party, "bears the burden of establishing that separate trials are necessary to prevent prejudice or confusion and serve the ends of justice." *In re Blech Secs. Litig.*, 2003 WL 1610775, at *12 (internal quotation omitted).[5]

## ARGUMENT

### I.    The consolidated trial will not prejudice Ben-Jacob.

Ben-Jacob's arguments that he "faces serious prejudice" in the consolidated trial ordered by the Court because of his clients' purported advice of counsel defense and that any such prejudice cannot be cured by limiting instructions fare no better the second time around.  (Def. Br. 6-12.)

#### A.    Defendants' conflicting positions do not prejudice Ben-Jacob.

Ben-Jacob will not, as he contends, face an "unusual and uncurable prejudice" because his clients "intend to rely on an advice-of-counsel defense" and his "testimony will directly contradict the testimony of his clients" concerning "the scope of his representation of them and the extent of his knowledge."  (Def. Br. 6, 8.)  To the contrary, it is SKAT that will be prejudiced if the Court grants Ben-Jacob's motion because of the risk of inconsistent verdicts this

---

5.   Ben-Jacob moves, in the alternative, for severance of the claims against him under Rule 21, (Def. Br. 5 & n.4), under which, "the [C]ourt may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "Rule 21 results in two separate judgments on the severed claims, while separate trials under Rule 42(b) results in one judgment unless the court enters a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure before all the claims have been resolved."  *Hecht v. City of New York*, 217 F.R.D. 148, 149 (S.D.N.Y. 2003) (citations omitted).  "The same considerations of convenience, avoidance of prejudice to the parties, and efficiency are implicated in motions under either rule," thus "motions under Rules 21 and 42(b) are considered using the same standard."  *Id.* at 150 (citations omitted).

contradictory testimony would pose. *See Cashman v. Montefiore Med. Ctr.*, 191 B.R. 558, 563 (S.D.N.Y. 1996) ("the two trial scenario may present a danger of inconsistent verdicts; each jury could hand down a verdict for the defendants, finding the absent tortfeasor at fault each time, and leaving the plaintiff without a remedy"). A single jury should determine the extent of Ben-Jacob's knowledge of and involvement in the fraud, especially given defendants' conflicting positions. *See Doe v. DeBuono*, 193 F.R.D. 117, 126 (S.D.N.Y. 2000) ("courts take a dim view of severance where a risk of inconsistent verdicts is present").

And, in any event, Ben-Jacob's protestations that the clients will "serve as an opportune echo chamber for SKAT" are overstated. (Def. Br. 10.) This is not a case like *United States v. Aronson*, (Def. Br. 8), where the lawyer co-defendant "intend[ed] to demonstrate" that the client co-defendant, "unbeknownst to [him], used [the lawyer] to perpetuate his alleged Ponzi scheme," while the client would "try to paint [the lawyer] as the legal mastermind behind the Ponzi scheme and blame him for giving him bad legal advice." No. 2:12-cr-00245-ADS-GXB (E.D.N.Y. May 23, 2013), ECF No. 167, at 14.[6] Nor is this case at all similar to *United States v. Shkreli*, (Def. Br. 11), where the lawyer co-defendant's counsel intended to "act as a second prosecutor against [the client], by arguing [he] is guilty and that [the lawyer] is, himself, just another victim of [his] fraud" and "present[] evidence of multiple instances of [the client's] purported lies, deceptions, and misunderstandings." 260 F. Supp. 3d 247, 256 (E.D.N.Y. 2017).[7]

---

6. A copy of *United States v. Aronson* is appended as Exhibit 8 to the Declaration of Elliot R. Peters, dated May 10, 2024 (ECF No. 1013-8).

7. *United States v. Nordlicht* is likewise inapposite. (Def. Br. 11.) In *Nordlicht*, the court severed the trial of a criminal defendant from that of his co-defendants where his counsel, for example, "contemplated the possibility of presenting the jury at closing with a display of emails allegedly incriminating [his] co-defendants," constituting "a situation that [was] an order of magnitude more severe than routine accusations and blame-shifting between co-defendants." No. 16-cr-00640 (BMC), 2018 WL 1796542, at *2-3 (E.D.N.Y. Apr. 16, 2018).

To be sure, SKAT intends to prove at trial that Ben-Jacob participated in his clients'

fraud.  For instance, Ben-Jacob received a Danish law opinion expressly warning that a plan

would not be entitled to a refund if the plan were under any legal obligation to pay any portion of

a dividend to any other person.  (*See* Weinstein Decl. Ex. 2 (M. Ben-Jacob Dep. Tr.) at 158:1-

159:24.); Ex. 3 at JHVM_0009140.)  Ben-Jacob knew that the plans were operating under

precisely such a legal obligation.  His own internal memoranda and emails with his clients

confirmed that the plans were applying for refunds under what his clients and Sanjay Shah

intended to be effectively a partnership arrangement with Solo Capital, to which the plans were

contractually obligated to pay two-thirds or more of the "dividend" refunds they received.  (*See*

*id.* Ex. 4 at JHVM_0010577.)  And the clients sent Ben-Jacob the standard contract in which the

plans undertook that legal obligation.  Despite knowing that the plans could not qualify for the

refunds they claimed, Ben-Jacob personally signed (or directed another lawyer to sign on his

behalf) 28 reclaim forms in which he authorized independent payment agents to submit

applications to SKAT on behalf of the defendant plans, and falsely attested to the defendant

plans' entitlement to the refunds.

The client defendants do not intend to "echo" SKAT's claims against Ben-Jacob; rather,

they intend only to present what was Ben-Jacob's actual role.  To the extent the client defendants

"exaggerat[e]" Ben-Jacob's role, (Def. Br. 2), the remedy is cross-examination, not separate

trials.  Nor does Ben-Jacob's unfounded speculation that jurors may "unfairly penalize" an

attorney, such as Ben-Jacob, "for taking positions that are inconsistent with those of his clients"

warrant separate trials.  (Def. Br. 8.)

### B.    Ben-Jacob will not face any spillover prejudice.

Nor will Ben-Jacob face a "separate form of prejudice" in the consolidated trial from a

supposed "spillover effect" because the jury might "improperly hold[] him liable for advice

7

given by other attorneys both from his firm and other firms." (Def. Br. 8-9.) Ben-Jacob does not

identify any specific advice from other attorneys from which any such "spillover effect" may

arise. And, in any event, any risk that the jury may "conflate[] Ben-Jacob's advice or

knowledge" with that of other attorneys, (Def. Br. 9), can be cured through appropriate

instructions to the jury. *See Gordon Springs v. City of New York*, No. 17-cv-0451 (AJN), 2019

WL 10892065, at *2 (S.D.N.Y. Aug. 21, 2019) ("even substantial prejudice may be adequately

mitigated through the ubiquitous and efficacious means of limiting instructions" (internal

quotation omitted)).

And, for that matter, SKAT seeks to hold Ben-Jacob liable for perpetrating the fraud

*despite* the advice and warnings from other attorneys, not for the content of any such advice. For

instance, as discussed *supra*, Ben-Jacob assisted the clients in submitting reclaims applications,

despite the Danish law opinion he received warning that a plan would not be entitled to a refund

if the plan were under any legal obligation to pay any portion of a dividend to any other person.

The quality of the Danish law advice is not relevant; what is relevant is Ben-Jacob's conduct in

helping his clients pursue reclaims despite the clear wording of that Danish law opinion.

Likewise, the quality of the advice that Ben-Jacob obtained from others "related to

securities law, tax law, and pension law" is not relevant. (Def. Br. 3.) What is relevant, for

example, is that Ben-Jacob's securities partner advised that Solo Capital was operating illegally

by failing to register with the SEC or FINRA (which would have opened Solo Capital to surprise

examinations) (*see* Weinstein Decl. Ex. 5), that his pension and tax partners advised that

retirement plan assets were supposed to be used for the benefit of the plan participants (*i.e.*,

retirees), and not others (such as Solo Capital) (*see id.* Ex. 2 (M. Ben-Jacob Dep. Tr.) at 257:6-

261:23), and that the plans' transactions with Solo Capital could be "prohibited transactions"

under the Internal Revenue Code (*see id.* Ex. 6).  Nonetheless, Ben-Jacob assisted the clients in setting up sham limited liability companies, pension plans and partnerships to facilitate the fraud.  Indeed, such evidence in fact demonstrates what Ben-Jacob "knew, intended, and did" in perpetrating the fraud on SKAT.  (Def. Br. 9.)

### C.      The degree of complexity does not warrant separate trials.

Nor is there anything to Ben-Jacob's argument that "the degree of complexity" of the trial "underscores that limiting instructions cannot mitigate the prejudice that Ben-Jacob faces" because the jury "will be asked to evaluate the mental states of six individuals, each with differing roles, and grapple with the multiple claims brought against Ben-Jacob and his co-defendants—claims with differing scienter standards—across a period of years."  (Def. Br. 11.)

There is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 1707 (1987).  As such, "[c]areful instructions and limiting instructions can . . . make clear the specific issues that the jury is called upon to decide."  *Tee Vee Toons, Inc. v. Rep Sales, Inc.*, No. 03 Civ. 10148(JGK), 2009 WL 1422610, at *1 (S.D.N.Y. May 20, 2009).  Thus, "[a] jury should have little difficulty analyzing the theories of liability and factual circumstances applicable to each" of the six individual defendants.  *Green v. Beer*, No. 06 Civ. 4156 (KMW)(JCF), 2009 WL 3401256, at *8 (S.D.N.Y. Oct. 22, 2009); *see also Ardolf v. Weber*, 332 F.R.D. 467, 481-82 (S.D.N.Y. 2019) ("jurors are perfectly capable of separating fact patterns that pertain to each individual" party, "while understanding that they may have certain elements in common").

*Weiss v. National Westminster Bank PLC*, on which Ben-Jacob relies, is inapposite. (Def. Br. 11-12.)  In *Weiss*, the court denied plaintiffs' motions to consolidate their actions against two defendants because "[t]he majority of the evidence Defendants intend[ed] to present at trial [was] defendant specific" and "weeks" of such "defendant specific evidence [would]

9

consume a consolidated trial."  No. 05-cv-4622 (DLI) (RML), 2017 WL 10058916, at *2-3

(E.D.N.Y. Mar. 31, 2017).  Thus, the parties could not "realistically" expect "the Court . . . to

give limiting instructions continuously" and no instruction "could undo the possible confusion"

from the jury being "asked to assess extensive and complex scienter evidence against one

defendant by putting aside a significant amount of evidence introduced against another defendant

on the same issue."  *Id.* at *3.  Here, by contrast, the evidence at trial of SKAT's claims against

Ben-Jacob and his co-defendants for participating in the same fraudulent scheme will overlap

substantially.[8]

## II.    Expediency and judicial economy weigh in favor of the consolidated trial.

Finally, Ben-Jacob contends that separate trials would "make[] the trial against the

remaining defendants more streamlined" by pointing to three supposedly discrete categories of

Ben-Jacob specific evidence.  (Def. Br. at 12-13.)  But the relevant "question . . . is whether

separate trials will require *substantial* overlap of witnesses or documentary proof," not whether

there is any evidence specific to Ben-Jacob only.  *Moore v. Navillus Tile, Inc.*, No. 14 Civ. 8326

(CM), 2017 WL 11567280, at *4 (S.D.N.Y. Jan. 3, 2017) (internal quotations omitted).  Indeed,

"nearly every trial involving multiple defendants will involve some separate issues of fact that

call for testimony from different witnesses on entirely unrelated matters."  *Id.*  And, in any event,

the supposed "inefficiencies" Ben-Jacob identifies are largely, if not entirely, illusory.

*First*, expert testimony regarding "Ben-Jacob's professional responsibilities as an

attorney" is inadmissible.  (Def. Br. 12.)  New York's Rules of Professional Conduct are a matter

---

8.    *See* 9A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 2389 (3d ed. 2008) ("if the plaintiff
has sued two or more defendants for the same injuries, motions by defendants that the claims against each of
them should be tried separately usually have been denied on the ground of efficiency or a belief that it would be
unfair to subject the plaintiff to multiple trials, even if the basis of liability was different so that there was a
possibility of confusion").

of law, and neither SKAT nor Ben-Jacob may proffer expert testimony interpreting those rules. *See, e.g.*, *United States v. Kurland*, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897, at *14 (E.D.N.Y. July 11, 2022) ("courts within this circuit have routinely precluded expert testimony that purports to interpret a state's legal ethics rules").  As such, SKAT does not intend to present expert testimony on "Ben-Jacob's professional responsibilities as an attorney" and intends to move to exclude any such testimony from Ben-Jacob's proffered expert.  The Court, rather than an expert, should instruct the jury on the law.

*Second*, Ben-Jacob does not specify what "documents and conversations related to his work" would be relevant in a trial of Ben-Jacob but not of just his clients.  (Def. Br. 12.)  And even if there were some such documents or conversations, that would not warrant separate trials given the substantial overlap in the evidence that would be offered at both trials.

*Third*, the pension plans for which SKAT has sued Ben-Jacob only participated in the same fraudulent scheme as the rest of the pension plans.  (Def. Br.. 13.)  Thus, SKAT's claims arising from those pension plans' fraudulent reclaims will involve virtually the same evidence, including expert testimony, as the claims arising from the other plans for which Ben-Jacob has been sued along with one or more of his clients.

## CONCLUSION

For the reasons set forth above, SKAT respectfully requests that the Court deny Ben-Jacob's motion for separate trials or, in the alternative, severance.

Dated: New York, New York          HUGHES HUBBARD & REED LLP
      May 31, 2024

By: /s/ Marc A. Weinstein
     William R. Maguire
     Marc A. Weinstein
     Neil J. Oxford
     Dustin P. Smith
     Gregory C. Farrell
     One Battery Park Plaza
     New York, New York 10004-1482
     Telephone: (212) 837-6000
     Fax: (212) 422-4726
     bill.maguire@hugheshubbard.com
     marc.weinstein@hugheshubbard.com
     neil.oxford@hugheshubbard.com
     dustin.smith@hugheshubbard.com com
     gregory.farrell@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

12