**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND LITIGATION

Pertains to case numbers:

18-cv-5053, 18-cv-9797, 18-cv-9836,
18-cv-9837, 18-cv-9838, 18-cv-9839,
18-cv-9840, 18-cv-9841, 18-cv-10100

Case No. 1:18-md-02865 (LAK)

**MEMORANDUM OF LAW IN SUPPORT OF**
**THIRD-PARTY DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT .......................................................................................................................... 5

I.      THE COURT LACKS PERSONAL JURISDICTION OVER ED&F ................. 5

      A.    ED&F Is Not Subject To General Jurisdiction In New York,
Pennsylvania Or Utah ................................................................................. 6

      B.    ED&F Is Not Subject To Specific Jurisdiction In New York,
Pennsylvania Or Utah ................................................................................. 7

           1.    ED&F Is Not Subject To Specific Jurisdiction In New York
Or Pennsylvania ............................................................................. 8

           2.    ED&F Is Not Subject To Specific Jurisdiction In Utah............... 10

II.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER AT
LEAST SOME OF THIRD-PARTY PLAINTIFFS' CLAIMS ......................... 13

III.    THIRD-PARTY PLAINTIFFS' CLAIMS ARE TIME-BARRED ................... 13

IV.    THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM AGAINST
ED&F ................................................................................................................ 14

      A.    Third-Party Plaintiffs Fail To State A Claim For Fraud ........................... 15

           1.    Third-Party Plaintiffs Do Not Allege That False Statements
Were Made To Induce Them To Act ............................................ 16

           2.    Third-Party Plaintiffs Do Not Adequately Allege
Detrimental Reliance ..................................................................... 17

           3.    Third-Party Plaintiffs Allege No Facts Supporting A Strong
Inference That ED&F Acted With The Requisite State Of
Mind ................................................................................................ 18

      B.    Third-Party Plaintiffs Fail To State A Claim for Negligent
Misrepresentation ...................................................................................... 20

i

C.    ED&F Owed No Fiduciary Duties To Crema Or Wittwer ...................... 22

D.    Third-Party Plaintiffs' Alleged Tort Claims Are Barred By The Economic Loss Doctrine ............................................................................ 23

E.    The Promissory Estoppel And Unjust Enrichment Claims Fail As A Matter Of Law .......................................................................................... 24

F.    Third-Party Plaintiffs Fail To State A Claim For Equitable Indemnification ........................................................................................... 26

G.    Apportionment Of Fault Is Not A Cause Of Action ................................. 28

CONCLUSION ................................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Armed Forces Ins. Exch. v. Harrison*,
   70 P.3d 35 (Utah 2003) ................................................................................................15, 16

*Arnett v. Howard*,
   13-cv-591, 2014 WL 1165851 (D. Utah Mar. 21, 2014) ........................................................19

*Arthur Props. S.A. v. ABA Gallery, Inc.*,
   11-cv-4409 (LAK), 2011 WL 5910192 (S.D.N.Y. Nov. 28, 2011) ..................................16, 21

*Asahi Metal Ind. Co. Ltd. v. Super. Ct. of Cal., Solano Cnty.*,
   480 U.S. 102, 107 S. Ct. 1026 (1987) ....................................................................................7, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................................................................5

*Balducci v. Clear Home, Inc.*,
   21-cv-729, 2022 WL 1186883 (D. Utah Apr. 21, 2022) ..........................................................27

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990) ....................................................................................................4, 5

*Bean v. United States*,
   06-cv-105, 2009 WL 2168737 (D. Utah July 17, 2009) ..........................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ........................................................................................5

*Biesele v. Mattena*,
   449 P.3d 1 (Utah 2019) ............................................................................................................28

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462, 105 S. Ct. 2174 (1985) ..................................................................................11, 12

*Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*,
   51 A.D.2d 140 (4th Dep't 1976) ..............................................................................................28

*Bylsma v. R.C. Willey*,
   416 P.3d 595 (Utah 2017) ....................................................................................................27, 29

*Carlton v. Brown*,
   323 P.3d 571 (Utah 2014) ....................................................................................................17, 18

*Carmona v. Travelers Cas. Ins. Co. of Am.*,
    428 P.3d 65 (Utah Ct. App. 2018) ........................................................................21

*CE Providers v. Stearns Bank*,
    18-cv-100, 2018 WL 3448335 (D. Utah July 17, 2018) ........................................23

*Cerveny v. Aventis, Inc.*,
    14-cv-545, 2017 WL 5897406 (D. Utah Nov. 29, 2017) .......................................16

*CHG Cos., Inc. v. Medina Mem'l Hosp.*,
    17-cv-00551, 2017 WL 5712689 (D. Utah Nov. 27, 2017).................................8, 12

*Coll. Essay Optimizer, LLC v. Edswell, Inc.*,
    14-cv-8586 (LAK), 2015 WL 5729681 (S.D.N.Y. Sept. 30, 2015) .................4, 5, 6

*Colosimo v. Roman Cath. Bishop of Salt Lake City*,
    156 P.3d 806 (Utah 2007) .....................................................................................14

*Coppelson v. Serhant*,
    19-cv-8481, 2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) ......................................19

*In re Customs & Tax Admin. of Kingdom of Den. (SKAT) Tax Refund Litig.*,
    18-md-2865, 2020 WL 3962066 (S.D.N.Y. July 13, 2020) ..............................27, 28

*In re Customs & Tax Admin. of Kingdom of Den. (SKAT) Tax Refund Litig.*,
    18-md-2865, 2021 WL 4993536 (S.D.N.Y. Oct. 26, 2021) ........................... *passim*

*In re Customs & Tax Admin. of Kingdom of Den. (SKAT) Tax Refund Litig.*,
    18-md-2865, 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023) ..................................21

*Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*,
    794 P.2d 11 (Utah 1990) .......................................................................................14

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004).................................................................................15

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
    786 P.2d 1326 (Utah 1990) ...................................................................................22

*Flowell Elec. Ass'n, Inc. v. Rhodes Pump, LLC*,
    361 P.3d 91 (Utah 2015).......................................................................................27

*Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*,
    127 F. Supp. 3d 1228 (D. Utah 2015)...............................................................24, 26

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915, 131 S. Ct. 2846 (2011) .................................................................6, 7

*Hartman v. Dyncorp Int'l, LLC,*
   12-cv-00364, 2012 WL 4480553 (D. Utah Sept. 28, 2012) ...................................................12

*IKB Int'l S.A. v. Bank of Am. Corp.,*
   584 F. App'x 26 (2d Cir. 2014) ........................................................................................18

*J.V. Mfg., Inc. v. Dematic Corp.,*
   22-cv-412, 2023 WL 2577239 (M.D. Pa. Mar. 20, 2023) .......................................................27

*KTM Health Care, Inc. v. SG Nursing Home, LLC,*
   436 P.3d 151 (Utah Ct. App. 2018) ...................................................................................23

*Lindberg v. Dow Jones & Co., Inc.,*
   20-cv-8231 (LAK), 2022 WL 799664 (S.D.N.Y. Mar. 16, 2022).............................................5

*Malan v. RKB Indus., Inc.,*
   22-cv-00025, 2023 WL 3346394 (D. Utah May 10, 2023) ....................................................13

*Mann v. Am. W. Life Ins. Co.,*
   586 P.2d 461 (Utah 1978).................................................................................................24

*McDermott v. City of New York,*
   50 N.Y.2d 211 (1980) ......................................................................................................27

*McMorris v. Carlos Lopez & Assocs., LLC,*
   995 F.3d 295 (2d Cir. 2021).............................................................................................13

*MediaNews Grp., Inc. v. McCarthey,*
   432 F.Supp.2d 1213 (D. Utah 2006) ..................................................................................25

*Melnick v. Adelson-Melnick,*
   346 F. Supp. 2d 499 (S.D.N.Y. 2004) (LAK)..............................................................2, 4, 5

*Mikkelson v. Quail Valley Realty,*
   641 P.2d 124 (Utah 1982) .....................................................................................15, 17, 18

*MLSMK Invs. Co. v. JP Morgan Chase & Co.,*
   737 F. Supp. 2d 137 (S.D.N.Y. 2010).................................................................................19

*Monge v. Univ. of Pa.,*
   22-cv-2942, 2023 WL 4237078 (E.D. Pa. June 28, 2023)........................................................8

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.,*
   03-cv-8208, 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ....................................................19

*Mt. Pocono Mun. Auth. v. RKR Hess,*
   20-cv-1105, 2021 WL 3674639 (M.D. Pa. Aug. 20, 2021)....................................................27

*Nickerson Co. v. Energy W. Mining Co.*,
    20090221-CA, 2009 WL 4681778 (Utah Ct. App. Dec. 10, 2009)........................................24

*Oberg v. Sanders*,
    184 P.2d 229 (Utah 1947) ...........................................................................................15, 18

*Perry v. Pioneer Wholesale Supply Co.*,
    681 P.2d 214 (Utah 1984)...........................................................................................26, 27

*Rabo Agrifinance, Inc. v. Bliss*,
    227 F.Supp.3d 1249 (D. Utah 2017) .................................................................................13

*Reighard v. Yates*,
    285 P.3d 1168 (Utah 2012).................................................................................................23

*Rio Algom Corp. v. Jimco Ltd.*,
    618 P.2d 497 (Utah 1980) ..................................................................................................21

*Robinson v. Robinson*,
    368 P.3d 105 (Utah Ct. App. 2016) ...................................................................................22

*Salt Lake City Corp. v. ERM-West, Inc.*,
    984 F. Supp. 2d 1156 (D. Utah 2013)................................................................................23

*Schnell v. Bank of New York Mellon*,
    828 F. Supp. 2d 798 (E.D. Pa. 2011) ...........................................................................16, 21

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972)...............................................................................................20

*Shah v. Intermountain Healthcare, Inc.*,
    314 P.3d 1079 (Utah Ct. App. 2013) .................................................................................20

*Shamoun v. Mushlin*,
    12-cv-3541, 2014 WL 12776779 (S.D.N.Y. Mar. 26, 2014).................................................8

*Shields v. Citytrust Bancorp. Inc.*,
    25 F.3d 1124 (2d Cir. 1994)...............................................................................................19

*Smith v. Frandsen*,
    94 P.3d 919 (Utah 2004).....................................................................................................20

*Spira v. Nick*,
    876 F. Supp. 553 (S.D.N.Y. 1995) (LAK).........................................................................20

*U.S. Fid. & Guarantee Co. v. U.S. Sports Specialty Ass'n*,
    270 P.3d 464 (Utah 2012)...................................................................................................25

*Val Peterson, Inc. v. Tennant Metals Pty. Ltd.*,
    537 P.3d 660 (Utah Ct. App. 2023) ...............................................................13, 21

*Walden v. Fiore*,
    571 U.S. 277, 134 S. Ct. 1115 (2014) ............................................................ *passim*

**Statutes**

42 Pa. Cons. Stat. § 5322 .........................................................................................8

Utah Code § 78B–2–305 .........................................................................................13

Utah Code § 78B–2–307 ....................................................................................13, 14

Utah Code § 78B-3-201 ...........................................................................................8

Utah Code § 78B-5-818 .........................................................................................28

Utah Code § 78B-5-820 ....................................................................................28, 29

Utah Code § 78B-5-821 .........................................................................................28

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................15, 19, 20

Fed. R. Civ. P. 12(b)(2) .......................................................................................4, 6

Fed. R. Civ. P. 12(b)(6) .................................................................................3, 5, 15

Fed. R. Civ. P. 14 ....................................................................................................3

N.Y. C.P.L.R. § 302(a)(3) ......................................................................................10

Third-Party Defendant MCML Limited *f/k/a* ED&F Man Capital Markets Limited ("ED&F") respectfully submits this memorandum of law in support of its motion to dismiss the amended third-party complaints (the "Amended Third-Party Complaints") of Acer Investment Group, LLC ("Acer"); Elaina M. Crema, as personal representative of the estate of Robert V. Crema; and Darren Wittwer (collectively, "Third-Party Plaintiffs").[1]

## PRELIMINARY STATEMENT

In October 2021, this Court dismissed the Third-Party Plaintiffs' original complaints, without reaching the sufficiency of the pleadings and without prejudice to motions for leave to amend. Third-Party Plaintiffs have filed their amended complaints, but the core jurisdictional and substantive deficiencies remain. All of the claims are subject to dismissal for lack of personal jurisdiction and failure to state a claim, and at least some of the claims are subject to dismissal for lack of subject matter jurisdiction.

ED&F moves for dismissal for lack of subject matter jurisdiction and for failure to state a claim based entirely on the allegations in the Amended Third-Party Complaints. ED&F moves for dismissal for lack of personal jurisdiction based on the allegations in the Amended Third-Party Complaints and a declaration, previously submitted by ED&F, that is properly considered on a motion to dismiss. Moreover, with respect to personal jurisdiction, because discovery has concluded, Third-Party Plaintiffs bear the burden of making a factually supported, *prima facie* showing that personal jurisdiction exists through an "averment of facts that, if credited by the

---

[1] The Amended Third-Party Complaints were filed on the main docket of the multidistrict litigation as Acer Investment Group, LLC's First Amended Third-Party Complaint & Jury Demand ("Acer TPC"), ECF No. 1019-1; First Amended Third-Party Complaint & Jury Demand of Elaina M. Crema, as Personal Representative of the Estate of Robert V. Crema ("Crema TPC"), ECF No. 1019-2; and Darren Wittwer's First Amended Third-Party Complaint & Jury Demand ("Wittwer TPC"), ECF No. 1019-3. Copies of these complaints are attached hereto as Exhibits A, B, and C, respectively.

trier, would suffice to establish jurisdiction . . . ." *See Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 502 (S.D.N.Y. 2004) (LAK) (citations and internal quotation marks omitted).

As a threshold matter, Third-Party Plaintiffs have not carried their burden of demonstrating personal jurisdiction over ED&F in any of the three States implicated here—New York, Pennsylvania and Utah.  Because discovery has closed, the jurisdictional showing must be factually supported, but Third-Party Plaintiffs have offered only facially inadequate pleadings. ED&F is, indeed, not alleged to have any presence in the United States, nor is it alleged to have taken any actions in New York, Pennsylvania or Utah that would subject it to personal jurisdiction in those States.  There is no basis for jurisdictional fact-finding by the Court or a jury, as the only evidence submitted on the jurisdictional question—ED&F's declaration that it did no business in the three States, properly considered on a motion to dismiss—remains uncontroverted.  With respect to New York and Pennsylvania, the only jurisdictional allegation is that Acer acted as an agent for one or more pension plans with purported connections to those States.  But the mere allegation that Acer acted on behalf of pension plans based in New York or Pennsylvania cannot support the exercise of personal jurisdiction over *ED&F* in those States, particularly where communications between ED&F and those pension plans, if any, were allegedly conducted through Acer.  As for Utah, Third-Party Plaintiffs rest their jurisdictional argument on ED&F's alleged "business relationship" with Acer, a Delaware company based in Florida that purportedly "operated out of" Utah at all relevant times.  But ED&F itself is not alleged to have taken any action in Utah, leaving Acer as the only alleged link to the State.  For this reason, Third-Party Plaintiffs' pleadings fail as a matter of law to establish the necessary jurisdictional foothold.

Subject matter jurisdiction is also a stumbling block for at least some of Third-Party Plaintiffs' claims.  Third-Party Plaintiffs do not allege that they lost money on trades executed by ED&F, nor do they allege that they paid anything to ED&F for its services; indeed, Acer alleges that it received payments *from* ED&F.  Third-Party Plaintiffs' claims are instead essentially future-looking claims for indemnification:  Third-Party Plaintiffs contend that if they are ultimately held liable to the Danish tax authority ("SKAT") in connection with securities trades executed by ED&F, then it is ED&F who should foot the bill.  But even if the mere possibility of a future judgment in SKAT's favor may suffice for Rule 14 purposes, it remains that neither Robert Crema ("Crema") nor Darren Wittwer ("Wittwer") have alleged any basis for seeking recovery of fees which, as alleged, ED&F never charged to them in the first instance.

The Amended Third-Party Complaints also fail to state a claim against ED&F.  On a motion to dismiss under Rule 12(b)(6), the Court must of course read the pleadings in the light most favorable to Third-Party Plaintiffs.  But even in this light, none of Third-Party Plaintiffs' causes of action has been adequately alleged (and most of them are time-barred).  The claims for fraud and negligent misrepresentation fall short because they are based on statements neither intended for nor relied upon by Third-Party Plaintiffs, and Third-Party Plaintiffs have further failed to allege any facts giving rise to a reasonable inference that ED&F acted with fraudulent intent.  The breach of fiduciary duty claims fail because Third-Party Plaintiffs have not adequately alleged any fiduciary duties owed by ED&F to Crema or Wittwer.  The tort claims are barred by the economic loss doctrine, because as Third-Party Plaintiffs themselves acknowledge, ED&F's actions were undertaken pursuant to express contracts with the relevant pension plans.  These same contracts also foreclose the quasi-contractual claims for promissory estoppel and unjust enrichment, which are in any event insufficiently pleaded—the promissory

3

estoppel claims because Crema and Wittwer allege no express promise made to them by ED&F, and the unjust enrichment claims because neither Crema nor Wittwer allege that ED&F was enriched at their expense.  The equitable indemnification causes of action fail because none of the Third-Party Plaintiffs allege a legal obligation owed to SKAT or a relationship with ED&F that would entitle them to indemnification, while the claims for apportionment under Utah law fail because apportionment of fault is not cognizable as an independent cause of action.

## **LEGAL STANDARD**

"On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing jurisdiction."  *In re Customs & Tax Admin. of Kingdom of Den. (SKAT) Tax Refund Litig.* ("*SKAT Tax Refund Litig. II*"), 18-md-2865, 2021 WL 4993536, at *4 (S.D.N.Y. Oct. 26, 2021).  "Parties may submit affidavits and other documents in connection with such a motion, and the court may consider those documents without converting the motion into one for summary judgment."  *Coll. Essay Optimizer, LLC v. Edswell, Inc.*, 14-cv-8586 (LAK), 2015 WL 5729681, at *3 (S.D.N.Y. Sept. 30, 2015) (citation and quotation marks omitted).  Prior to discovery, a Rule 12(b)(2) motion may be defeated by "legally sufficient allegations of jurisdiction" asserted in good faith.  *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990); *see also SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *4.  After discovery, however, more is required:  the plaintiff must provide an "averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."  *See Ball*, 902 F.2d at 197; *see also Melnick,* 346 F. Supp. 2d at 502.  Conclusory assertions are insufficient, and in the post-discovery context, the plaintiff's *prima facie*

jurisdictional showing must be "factually supported."  *See Ball*, 902 F.2d at 197; *see also Coll.*

*Essay Optimizer*, 2015 WL 5729681, at *3, *5.[2]

 To survive a motion under Rule 12(b)(6), a "complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation and quotation marks omitted).  To

meet this standard, a complaint must contain "[f]actual allegations" which "raise a right to relief

above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955,

1965 (2007).  In evaluating the pleadings, the court "disregards bald, conclusory statements and

accepts as true only factual assertions and conclusions reasonably drawn therefrom."  *Lindberg*

*v. Dow Jones & Co., Inc.*, 20-cv-8231 (LAK), 2022 WL 799664, at *2 (S.D.N.Y. Mar. 16, 2022).

A plaintiff must provide "more than labels and conclusions," and the "formulaic recitation of the

elements of a cause of action" is likewise insufficient.  *See Twombly*, 550 U.S. at 555, 127 S. Ct.

at 1965.  Dismissal for failure to state a claim is appropriate where the "well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct."  *See Iqbal*, 556 U.S. at

679, 129 S. Ct. at 1950.

## **ARGUMENT**

## I.     **THE COURT LACKS PERSONAL JURISDICTION OVER ED&F**

 Third-Party Plaintiffs bear the burden of showing personal jurisdiction over ED&F, and

they have not carried that burden here.  The Amended Third-Party Complaints do not allege that

ED&F has any presence in New York, Pennsylvania or Utah, nor is ED&F alleged to have taken

---

[2] *See also Melnick*, 346 F. Supp. 2d at 502 n.17 ("[T]he Court declines to impute to the Second Circuit a view that
would require a district court to proceed to an evidentiary hearing or trial on the issue of personal jurisdiction when
the plaintiff, with full notice of the nature of the jurisdictional challenge, cannot even demonstrate a genuine issue of
material fact on the pertinent issue.").

any purposeful action that would subject it to personal jurisdiction in those States.  In granting
Third-Party Plaintiffs leave to amend their pleadings, this Court indicated that "genuine issues of
material fact" precluded a finding that "personal jurisdiction over [ED&F] is lacking," *see*
Pretrial Order No. 38, ECF No. 1017 at 1, but no facts relevant to the jurisdictional inquiry are in
dispute, and because the burden of establishing personal jurisdiction rests with Third-Party
Plaintiffs, dismissal under Rule 12(b)(2) does not require any affirmative finding that personal
jurisdiction is lacking.  As this Court has held, a motion to dismiss for lack of personal
jurisdiction is properly decided on the basis of affidavits and other submitted documents, without
converting the motion into one for summary judgment.  *See Coll. Essay Optimizer*, 2015 WL
5729681, at *3.  This is especially true where, as here, discovery has closed and no relevant facts
remain to be discovered.

### A.   ED&F Is Not Subject To General Jurisdiction In New York, Pennsylvania Or Utah

It has been and remains "undisputed that ED&F is not subject to general jurisdiction in
Utah, Pennsylvania, or New York."  *See SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *2.
General jurisdiction may be asserted only where a defendant's "affiliations with the State are so
continuous and systematic as to render them essentially at home in the forum State."  *Goodyear
Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 924, 131 S. Ct. 2846, 2851, 2583-
2584 (2011) (citation and quotation marks omitted).  There is no allegation here that ED&F had
any presence in Utah, Pennsylvania, or New York, much less that it was "at home" in any of
those States.  *See id*. at 919, 131 S. Ct. at 2851.  The Amended Third-Party Complaints agree that
ED&F is headquartered in London—*see* Acer TPC ¶ 2; Crema TPC ¶ 2; Wittwer TPC ¶ 2—and
an uncontroverted declaration filed previously in this action, appropriately considered on a

motion to dismiss, confirms that ED&F maintained no offices and conducted no business in

Utah, Pennsylvania, or New York during the relevant period.  *See* Decl. of Gary A. Pettit ¶ 3,

ECF No. 578; *see also* Acer TPC ¶ 17 ("ED&F's business relationship with the Plans began in

2012 and lasted through 2016 . . . ."); Crema TPC ¶ 22; Wittwer TPC ¶ 22.  ED&F does not

have, and is not alleged to have, anything like the "continuous and systematic general business

contacts" necessary to establish general personal jurisdiction in Utah, Pennsylvania, or New

York.  *See Goodyear*, 564 U.S. at 929, 131 S. Ct. at 2857 (citations and quotation marks

omitted).

**B.      ED&F Is Not Subject To Specific Jurisdiction In New York, Pennsylvania Or Utah**

With respect to specific personal jurisdiction, the inquiry "initially turns on Utah,

Pennsylvania, or New York law, depending on where the relevant action initially was filed," *see*

*SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *2, subject always to constraints of the Due

Process Clause of the Constitution.  *See id.*  Consistent with due process, specific personal

jurisdiction may be asserted over a foreign defendant only where the defendant's suit-related

conduct was "purposefully directed toward the forum State," *see Asahi Metal Ind. Co. Ltd. v.*

*Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987), and only

where the assertion of jurisdiction is otherwise consistent with "fair play and substantial justice."

*See id.* at 113-14, 116, 107 S. Ct at 1032-1034 ; *see also Walden v. Fiore*, 571 U.S. 277, 283-86,

134 S. Ct. 1115, 1117, 1121-1123 (2014); *SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *2,

*5.  As discussed below, Third-Party Plaintiffs have not made the necessary jurisdictional showing.[3]

### 1.    ED&F Is Not Subject To Specific Jurisdiction In New York Or Pennsylvania

Among the Third-Party Plaintiffs, Acer alone contends that ED&F is subject to specific jurisdiction in New York or Pennsylvania.  *See* Acer TPC ¶ 4.  Acer does not allege, however, that ED&F had any presence in those States, nor does it allege that ED&F took any action in those States or directed any communications into those States.  Instead, Acer merely alleges in conclusory fashion that ED&F maintained "business relationships" with certain pension plans that "used" New York or Pennsylvania addresses and/or whose trustees or participants resided in those States.  *See* Acer TPC ¶¶ 4, 8, 16, 18.  Such vague allegations are inadequate as a matter of law, because the exercise of personal jurisdiction over a foreign defendant must turn on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *See Walden*, 571 U.S. at 285-86, 134 S. Ct. at 1122-1223 (A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").  Conspicuously absent from Acer's pleading is any allegation that ED&F took any action that created a "substantial connection" with New York or Pennsylvania.  *See id.* at 284, 134 S. Ct. at 1121.  This is a fatal omission, for "it is the defendant's conduct that must

---

[3] Because the long-arm statutes of Pennsylvania and Utah permit the exercise of personal jurisdiction to the full extent permitted under the Due Process Clause, the Court's analysis of personal jurisdiction with respect to those States may begin and end with the due process analysis.  *See SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *4, 6; *see also* Utah Code § 78B-3-201; *CHG Cos., Inc. v. Medina Mem'l Hosp.*, 17-cv-00551, 2017 WL 5712689, at *1 (D. Utah Nov. 27, 2017) ("[T]he Utah long-arm statute confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . ."); 42 Pa. Cons. Stat. § 5322(b); *Monge v. Univ. of Pa.*, 22-cv-2942, 2023 WL 4237078, at *2 (E.D. Pa. June 28, 2023).  New York's long-arm statute, by contrast, does not reach as far as due process permits, *see Shamoun v. Mushlin*, 12-cv-3541, 2014 WL 12776779, at *6 (S.D.N.Y. Mar. 26, 2014), and thus personal jurisdiction may be exercised in New York only where the requirements of the long-arm statute and due process both have been satisfied.

form the necessary connection with the forum State that is the basis for its jurisdiction over him."
*See id.* at 285-86, 134 S. Ct. at 1122.  The mere allegation of a "business relationship" between a
defendant and one or more forum residents—particularly a "business relationship" mediated by
an entity allegedly operating out of a different state altogether—is insufficient as a matter of law
to establish personal jurisdiction.  *See id.* ("[T]he plaintiff cannot be the only link between the
defendant and the forum.").

Acer's amended complaint, like its earlier pleadings, does not "allege any facts directly
connecting ED&F" to New York.  *See SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *7.
Acer alleges only that ED&F "maintained a business relationship" with a single pension plan—
the Goldstein Law Group PC 401(k) Profit Sharing Pension Plan (the "Goldstein Plan")—that
allegedly "used a New York address" and whose "trustees/plan participants" allegedly "resided
in the State of New York."  Acer TPC ¶¶ 4, 8, 16, 18.[4]  With respect to Pennsylvania, Acer
similarly alleges only a "business relationship" between ED&F and a pension plan—the
Newsong Fellowship Church 401(k) Plan (the "Newsong Plan")—that "used a Pennsylvania
address" and whose "trustee and participant" was allegedly a Pennsylvania resident.  *See* Acer
TPC ¶¶ 4, 8, 16, 18.  Such assertions of "business relationship[s]" with entities using New York
or Pennsylvania addresses fall well short of alleging the necessary jurisdictional contacts "with
the forum State itself."  *See Walden*, 571 U.S. at 285-86, 134 S. Ct. at 1122-1123.  Acer nowhere
alleges that ED&F had direct interactions or communications in New York or Pennsylvania with
any pension plans (or their trustees or participants).  Acer's allegations are in fact to the contrary:

---

[4] Even more tenuously, Acer alleges that two Utah-based pension plans—the Linden Associates Defined Benefit
Plan and the Riverside Associates Defined Benefit Plan—had trustees / participants who resided in New York.  *See*
Acer TPC ¶ 8 (noting that both these plans allegedly "used a Utah address").  Acer does not allege, however, that
ED&F had any interactions with any of these individuals in New York (or anywhere else).

Acer alleges that ED&F communicated with pension plans through *Acer*, that it was provided with *Acer*'s contact information, that authority to "operate the ED&F accounts" was held by *Acer's* principal, and that Acer operated at all relevant times out of *Utah*.  *See* Acer TPC ¶¶ 1, 13-15, 24, 27, 33, 39.

This Court found it "doubtful" that Acer's earlier pleadings could be "sufficient to establish personal jurisdiction" in New York absent any allegation that ED&F had "interacted with the Goldstein Plan or Acer in New York."  *SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *7-8.  This Court further indicated that it was "inclined to agree" that ED&F was not subject to personal jurisdiction in Pennsylvania if "all of its obligations to the Newsong Plan" were performed "through Acer" and if Acer itself did not "conduct[] any business or interact[] with ED&F from Pennsylvania."  *See id.* *7.  These considerations apply with no less force to Acer's latest pleadings.  Because Acer never alleges that ED&F performed any actions or engaged in any communications "purposefully directed" toward New York or Pennsylvania, *see Asahi*, 480 U.S. at 112, 107 S. Ct. at 1032, its amended pleadings do not support the exercise of specific personal jurisdiction over ED&F in those States.[5]

## 2.      *ED&F Is Not Subject To Specific Jurisdiction In Utah*

The Amended Third-Party Complaints also fail to allege any basis for the exercise of personal jurisdiction over ED&F in Utah.  The alleged contractual relationship between the various pension plans and ED&F, and the foreign trading that ED&F was allegedly contracted to

---

[5] Due process considerations are independently sufficient to foreclose personal jurisdiction over ED&F in New York, but Acer has also failed to allege facts supporting jurisdiction under New York's long-arm statute.  Acer previously relied on N.Y. C.P.L.R. § 302(a)(3) in arguing that long-arm jurisdiction could be exercised over ED&F under New York law.  *See SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *7.  However, as this Court found, because Acer "has not explained how the Goldstein Plan's potential liability [to SKAT] is the original source of any injury it may suffer," it "has not established that jurisdiction is proper under [Section 302(a)(3) of] New York's long arm statute." *See id.*

perform, had nothing to do with Utah.  The Third-Party Plaintiffs nevertheless contend that

ED&F is subject to personal jurisdiction in Utah on account of ED&F's alleged "business

relationships" with Acer and/or with various "pension plan entities" for which Acer acted as

"attorney-in-fact."  *See* Acer TPC ¶¶ 1, 4, 8, 12-16, 18; *see also* Crema TPC ¶¶ 5, 12-14, 18-23,

32, 38; Wittwer TPC ¶¶ 5, 12-13, 18-23, 32, 38.  But as discussed above, the bare allegation that

a defendant had a "business relationship" with an entity in a forum State, without more, is not a

sufficient basis for the exercise of personal jurisdiction over the defendant in that State.  *See*

*Walden*, 571 U.S. at 285-86, 134 S. Ct. at 1122-1123.  Personal jurisdiction must instead be

premised on a defendant's "own affiliation with the State, not based on the 'random, fortuitous,

or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *See*

*id.* at 286, 134 S. Ct. at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105

S. Ct. 2174, 2183 (1985)).

Third-Party Plaintiffs have not made the necessary jurisdictional showing.  The only

alleged connection to Utah is, at bottom, Acer itself—a Florida-based Delaware company alleged

to have "operated out of [a Utah] business address" during the relevant time period.  *See* Acer

TPC ¶¶ 1, 13.  Acer also allegedly served as the "authorized agent" for various pension plans

"us[ing]" one or more addresses in Utah, but to the extent ED&F is alleged to have

communicated with any Utah-based pension plans, it is alleged to have done so through Acer.

*See id.* ¶¶ 2, 8-9, 15, 24, 33, 39; *see also* Crema TPC ¶¶ 20, 29, 38, 64; Wittwer TPC ¶¶ 20, 29,

38, 64.  Because Acer is the "only link" alleged "between the defendant and the forum," the

exercise of personal jurisdiction over ED&F is foreclosed as a matter of law.  *See Walden*, 571 U.S. at 285-86, 134 S. Ct. at 1122-1123.[6]

The decision in *Medina Mem'l Hosp.* is illustrative.  There, the court found that a contractual relationship with a Utah-based plaintiff was insufficient to confer personal jurisdiction over an out-of-state defendant where the "heart of the contract was to arrange for a physician who would provide his services" outside of the State.  *See Medina Mem'l Hosp.*, 2017 WL 5712689, at *3.  Numerous "emails and telephone calls" between the plaintiff and the out-of-state defendant did not tip the jurisdictional scales, and even a Utah choice-of-law clause was insufficient to "reasonably support a finding of specific personal jurisdiction" under the circumstances.  *See id.*  The alleged facts here provide even less support for the assertion of personal jurisdiction.  The claims brought by Third-Party Plaintiffs arise out of services performed abroad, and the "business relationships" alleged by the Third-Party Plaintiffs did not envision "continuing and wide-reaching contacts" in Utah.  *See Burger King*, 471 U.S. at 480, 105 S. Ct. at 2186.  There is no allegation that any of the relevant contracts was governed by Utah law, and to the extent Third-Party Plaintiffs allege any injury at all, such injury would have been incurred irrespective of where Acer happened to be operating at the time.  *See Hartman v. Dyncorp Int'l, LLC*, 12-cv-00364, 2012 WL 4480553, at *4 (D. Utah Sept. 28, 2012).  Third-Party Plaintiffs have thus failed to establish a basis for personal jurisdiction over ED&F.

---

[6] Acer's principal, Stacey Kaminer, is alleged to have resided Utah.  *See* Acer TPC ¶¶ 8, 14, 27.  Neither Crema nor the pension plan of which he was allegedly the sole participant—the American Investment Group of New York, L.P. Pension Plan (the "AIG Plan")—is alleged to have had any presence in Utah, *see* Crema TPC ¶¶ 1-2, 12, and Crema's pleadings thus rely on ED&F's alleged interactions with *Acer* as the basis for personal jurisdiction over ED&F in Utah.  *See id.* ¶¶ 1-2, 5, 12-14, 18-23, 32, 38.  Wittwer is alleged to be a resident of Utah, *see* Wittwer TPC ¶ 1, and the pension plan of which he was allegedly the sole participant—the DW Construction, Inc. Retirement Plan (the "DWC Plan")—is alleged to have "used a Utah address," *see id.* ¶¶ 11-13, but ED&F is not alleged to have interacted directly with either Wittwer or the DWC Plan, leaving ED&F's alleged interactions with Acer as the only jurisdictional link to Utah.

## II.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER AT LEAST SOME OF THIRD-PARTY PLAINTIFFS' CLAIMS

Crema and Wittwer contend, apparently in the alternative, that ED&F should "return any fees" collected from the AIG and DWC Plans—*see* Crema TPC ¶ 92; Wittwer TPC ¶ 92—and their unjust enrichment claims are in fact wholly predicated on fees allegedly collected by ED&F from the AIG and DWC Plans.  *See* Crema TPC ¶¶ 131-37; Wittwer TPC ¶¶ 131-37.  As alleged, however, those fees were charged not to Crema or Wittwer, but to the AIG and DWC Plans, and neither Crema nor Wittwer purports to be suing on behalf of those pension plans (both of which have third-party claims of their own pending against ED&F).  Dismissal for lack of subject matter jurisdiction is required if a plaintiff cannot establish standing to sue, *see McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 299-300 (2d Cir. 2021), and here neither Crema nor Wittwer has articulated any basis for bringing suit in their individual capacities on the basis of payments that were allegedly made by the AIG and DWC Plans.

## III.   THIRD-PARTY PLAINTIFFS' CLAIMS ARE TIME-BARRED

Under Utah law, claims grounded in fraud are subject to a three-year limitations period, *see* Utah Code § 78B–2–305(3), while claims for negligent misrepresentation, breach of fiduciary duty, promissory estoppel and unjust enrichment are subject to a four-year limitations period.  *See* Utah Code § 78B–2–307(4); *Rabo Agrifinance, Inc. v. Bliss*, 227 F.Supp.3d 1249, 1252-53, 1254 (D. Utah 2017); *Val Peterson, Inc. v. Tennant Metals Pty. Ltd.*, 537 P.3d 660, 673 (Utah Ct. App. 2023); *Malan v. RKB Indus., Inc.*, 22-cv-00025, 2023 WL 3346394, at *1 (D.

Utah May 10, 2023).[7]  Although the Amended Third-Party Complaints are generally vague on

timing, the Third-Party Plaintiffs agree that "SKAT stopped paying withholding-tax refund

claims" in August 2015.  *See* Acer TPC ¶ 42; Crema TPC ¶ 48; Wittwer TPC ¶ 48.  Anything

allegedly done by ED&F after that point could not have had any relevance to SKAT's claims

against Third-Party Plaintiffs, which in turn form the basis of Third-Party Plaintiffs' claims

against ED&F.  Because Third-Party Plaintiffs filed their third-party complaints against ED&F

in January 2021, over five years after the August 2015 cut-off, the claims for fraud, negligent

misrepresentation, breach of fiduciary duty, promissory estoppel and unjust enrichment are time-

barred.  SKAT's refusal to pay withholding-tax refund claims in August 2015 should, moreover,

have put Third-Party Plaintiffs on notice, triggering their duty to inquire.  *See Colosimo v.*

*Roman Cath. Bishop of Salt Lake City*, 156 P.3d 806, 811 (Utah 2007) ("[I]f a party has

knowledge of some underlying facts, then that party must reasonably investigate potential causes

of action because the limitations period will run."); *see also Bean v. United States*, 06-cv-105,

2009 WL 2168737, at *2-3 (D. Utah July 17, 2009).

## IV.    THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ED&F[8]

The Amended Third-Party Complaints are also subject to dismissal for failure to state a

claim.  This Court has stated that "evidentiary material outside the complaint" may not be

---

[7] Claims for equitable indemnification are also subject to a four-year limitations period, *see* Utah Code § 78B–2–307(1)(a); *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990), but because a claim for equitable indemnification does not arise until the "time of the payment of the underlying claim or the payment of a judgment or a settlement," no claim for equitable indemnification has accrued.  *See id.*  No limitations period can be said to apply to the purported claims for apportionment inasmuch as, as discussed below, Utah's apportionment statutes do not give rise to an independent cause of action.

[8] For substantially the same reasons set out in support of ED&F's motion to dismiss Third-Party Plaintiffs' original complaints, ED&F applies Utah law.  *See* Memorandum of Law in Support of Third-Party Defendant ED&F Man Capital Markets, Ltd.'s Motion to Dismiss the Third-Party Complaints of Darren Wittwer & Robert Crema, ECF No. 574 at 9; Memorandum of Law in Support of Third-Party Defendant ED&F Man Capital Markets, Ltd.'s Motion to Dismiss the Third-Party Complaint of Acer Investment Group, LLC, ECF No. 577 at 10-11.

considered without converting a Rule 12(b)(6) motion into one for summary judgment—*see* Pretrial Order No. 38, ECF No. 1017 at 2—but this Rule 12(b)6) motion is based entirely on the facial deficiency of the pleadings:  ED&F does not refer to any documents outside the pleadings in bringing this motion pursuant to Rule 12(b)(6).

### A.    Third-Party Plaintiffs Fail To State A Claim For Fraud

Third-Party Plaintiffs fail to state a viable claim for fraud under any standard, much less under the heightened pleading requirements of Rule 9(b).  A plaintiff bringing a fraud claim under Utah law must allege "(1) [t]hat a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage."  *Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982) (citation omitted); *see also Oberg v. Sanders*, 184 P.2d 229, 234 (Utah 1947).  In order to plead the cause of action with the requisite particularity, *see* Fed. R. Civ. P. 9(b), a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *accord Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (Utah courts require that

"relevant surrounding facts . . . be set forth with sufficient particularity to show what facts are claimed to constitute" fraud (citation and internal quotation marks omitted)).[9]

The fraud claims here are premised on alleged misstatements purportedly contained in tax vouchers prepared by ED&F.  *See* Acer TPC ¶¶ 17, 23, 29-30, 92-101; Crema TPC ¶¶ 93-102; Wittwer TPC ¶¶ 93-102.  According to Third-Party Plaintiffs, the tax vouchers were provided by ED&F to a "third-party payment-processing agent"—Goal Taxback Ltd. ("Goal Taxback")— which, in turn, passed them on to SKAT in order to support withholding tax refund applications submitted on behalf of pension plans for which Acer was acting as attorney-in-fact.  *See* Acer TPC ¶¶ 12, 17, 31-33, 41 (characterizing the tax vouchers as "required" components of "tax-refund requests" submitted to SKAT); Crema TPC ¶¶ 47, 93-102; Wittwer TPC ¶¶ 47, 93-102. Thus, by Third-Party Plaintiffs' own account, if the tax vouchers were directed at anyone at all, they were directed at *SKAT*.  Third-Party Plaintiffs do not allege that anything in the tax vouchers was intended to induce *them* to act, nor do they allege that they ever relied to their detriment on anything in the tax vouchers, nor do they allege any facts supporting a "strong inference" that ED&F, in preparing the tax vouchers, acted with intent to defraud.

  1.  ***Third-Party Plaintiffs Do Not Allege That False Statements Were Made To Induce Them To Act***

Third-Party Plaintiffs fail in the first instance to allege that the tax vouchers were "directed toward" them or "intended to induce [them] to act."  *Cerveny v. Aventis, Inc.*, 14-cv-545, 2017 WL 5897406, at *3 (D. Utah Nov. 29, 2017), *aff'd*, 783 F. App'x 804 (10th Cir. 2019); *see also Armed Forces Ins. Exch.*, 70 P.3d at 40.  ED&F allegedly sent the tax vouchers

---

[9] The elements of fraud under the laws of New York and Pennsylvania are substantially similar.  *See Arthur Props. S.A. v. ABA Gallery, Inc.*, 11-cv-4409 (LAK), 2011 WL 5910192, at *2 (S.D.N.Y. Nov. 28, 2011); *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 804-05 (E.D. Pa. 2011).

"directly" to Goal Taxback, and it was Goal Taxback that would "then submit the applications for withholding-tax refunds to SKAT on behalf of the Plans." Acer TPC ¶ 32; Crema TPC ¶ 37; Wittwer TPC ¶ 37. Although "copies" of the tax vouchers were allegedly emailed concurrently by ED&F to Acer, the pleadings make clear that those copies were sent for informational purposes, as a means of notifying Acer (and, "through Acer," the relevant pension plans) "whether withholding-tax refund applications would be submitted by Goal Taxback on the Plans' behalf." *See* Acer TPC ¶ 33, Crema TPC ¶¶ 32, 38; Wittwer TPC ¶¶ 32, 38. There is no allegation that the tax vouchers were intended by ED&F to induce Acer—much less Crema or Wittwer—to do anything at all.[10]

### 2. Third-Party Plaintiffs Do Not Adequately Allege Detrimental Reliance

Third-Party Plaintiffs also do not adequately plead detrimental reliance. Under Utah law, a cause of action for fraud cannot be sustained absent allegations of an injury resulting from reliance on a purported misrepresentation. *See Mikkelson*, 641 P.2d at 126; *see also Carlton v. Brown*, 323 P.3d 571, 582 (Utah 2014) (affirming dismissal of fraud claim where, among other things, plaintiff "failed to plead detrimental reliance"). Acer's pleadings include no such allegations. To the contrary, Acer alleges that it relied on the tax vouchers not to its detriment but to its *benefit*, asserting that it "charged fees to ED&F" in reliance on the tax vouchers. *See* Acer TPC ¶¶ 46-48 ("ED&F's Tax Vouchers . . . prompted Acer to *seek fees from ED&F*" (emphasis added)); *see also* Acer TPC ¶¶ 64-65, 70-71, 86, 95, 99, 108. If, as alleged, collection of fees from ED&F was the upshot of Acer's purported reliance on the tax vouchers, then Acer cannot very well claim to have relied to its *detriment*. Because Acer has not alleged any harm

---

[10] Crema and Wittwer each allege that ED&F provided copies of the tax vouchers to "Acer and Stacey Kaminer, the Utah-based Acer principal authorized to operate the ED&F accounts for the Plan." Crema TPC ¶ 32; Wittwer TPC ¶ 32. There is no allegation that ED&F provided the tax vouchers directly to Crema or Wittwer.

sustained as a result of its purported reliance on the tax vouchers, its fraud claims cannot stand. *See Carlton*, 323 P.3d at 582; *Oberg*, 184 P.2d at 234.[11]

Crema and Wittwer, for their part, fail plausibly to allege any reliance on the tax vouchers at all, detrimental or otherwise. *See Mikkelson*, 641 P.2d at 126. Crema and Wittwer each purport to have relied upon the tax vouchers when Goal Taxback "requested the withholding-tax refunds from SKAT"—*see* Crema TPC ¶¶ 46, 65-66, Wittwer TPC ¶¶ 46, 65-66—but their pleadings suggest that submission of the withholding-tax refund applications proceeded without their input and that if they were provided copies of the tax vouchers at all, it was only after the fact. *See* Crema TPC ¶¶ 37-38 ("ED&F would send the Tax Vouchers directly to Goal Taxback, who would then submit the applications for withholding-tax refunds to SKAT on behalf of the Plan."); Wittwer TPC ¶¶ 37-38 (same). There is no indication in the pleadings that Crema or Wittwer reviewed or were even aware of the tax vouchers at any point prior to their submission to SKAT by Goal Taxback. Crema and Wittwer have thus failed plausibly to allege detrimental reliance on the tax vouchers.[12]

### 3. Third-Party Plaintiffs Allege No Facts Supporting A Strong Inference That ED&F Acted With The Requisite State Of Mind

Third-Party Plaintiffs also fail to allege facts sufficient to support a "strong inference of fraudulent intent." *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014)

---

[11] Acer also alleges that it relied on the tax vouchers when it "continued conducting trades for Plans through ED&F" in 2014-2016, Acer TPC ¶ 40, but Acer does not explain how such continued trading on behalf of the pension plans inured to its detriment. Indeed, as noted above, Acer's purported reliance on the tax vouchers allegedly inured to its benefit.

[12] Crema and Wittwer also claim to have relied "on the purported truthfulness" of unspecified "documents and information provided by ED&F" when the AIG Plan and the DWC Plan, respectively, "appealed SKAT's decision in August 2018." Crema TPC ¶¶ 53, 83, 99; Wittwer TPC ¶¶ 53, 83, 99. But neither Crema nor Wittwer plead any personal involvement in the decision to pursue that appeal, nor do they allege that they themselves incurred any costs of the appeal. Such facts are peculiarly within the control of Crema and Wittwer, and yet they do not allege them, presumably because they cannot.

(summary order); *see also Arnett v. Howard*, 13-cv-591, 2014 WL 1165851, at *5 (D. Utah Mar. 21, 2014) (finding failure to plead fraud where complaint did not allege, among other things, "facts demonstrating . . . that the defendant knew the statement was false").  Third-Party Plaintiffs have not plausibly alleged that ED&F had "motive and opportunity to commit fraud," nor have they averred any "strong circumstantial evidence of conscious misbehavior or recklessness" on ED&F's part.  *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Third-Party Plaintiffs attempt to approach the question of intent by alleging that ED&F was incentivized to falsify tax vouchers because doing so would purportedly have "put [it] in a position to charge the Plans for custody and clearance fees . . . ."  *See* Acer TPC ¶¶ 64, 98; *see also* Crema TPC ¶¶ 69, 97; Wittwer TPC ¶¶ 69, 97.  But Third-Party Plaintiffs fail to explain how alleged "misstatements" in the tax vouchers could in any way have enhanced ED&F's entitlement to fees.  In any event, bare allegations that a defendant stands to "gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)."  *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 03-cv-8208, 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006) (citation and quotation marks omitted); *see also Coppelson v. Serhant*, 19-cv-8481, 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021).  The unremarkable fact that ED&F charged fees for its services is inadequate to support an inference of intent to defraud.  *See MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143 (S.D.N.Y. 2010), *aff'd*, 431 F. App'x 17 (2d Cir. 2011), 651 F.3d 268 (2d Cir. 2011); *Coppelson*, 2021 WL 148088, at *8; *see also* Crema TPC ¶ 89 ("As should be expected, ED&F collected fees from the Plan . . . ."); Wittwer TPC ¶ 89 (same).

Third-Party Plaintiffs further allege "[u]pon information and belief" that "ED&F knew or should have known that it did not hold the rights to the shares which they sold to the Plans." Acer TPC ¶ 59; *see also* Crema TPC ¶ 63; Wittwer TPC ¶ 63.  However, such an allegation made on information and belief must be "accompanied by a statement of the facts upon which the belief is founded," *see Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972), and no such statement occurs in the amended pleadings.  *See also Spira v. Nick*, 876 F. Supp. 553, 557 (S.D.N.Y. 1995) (LAK) ("[F]raud allegations made on information and belief do not satisfy Rule 9(b) unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief.").[13]

## B.     Third-Party Plaintiffs Fail To State A Claim for Negligent Misrepresentation

Third-Party Plaintiffs also fail to state a claim for negligent misrepresentation.  Under Utah law, the "elements of negligent misrepresentation are similar to those of fraud," except that negligent misrepresentation "does not require the intentional mental state necessary to establish fraud," *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1085 (Utah Ct. App. 2013) (citation and internal quotation marks omitted), and a plaintiff must instead "demonstrate the existence of a duty running between the parties."  *Smith v. Frandsen*, 94 P.3d 919, 922 (Utah 2004).  As discussed above, Third-Party Plaintiffs fail to allege reliance, a deficiency as fatal to their claims for negligent misrepresentation as to their claims for fraud.  *See Shah*, 314 P.3d at 1085.  The negligent misrepresentation claims also fail because Third-Party Plaintiffs do not allege that they were owed any duty by ED&F.  *See Frandsen*, 94 P.3d at 922 ("In order to prevail" on a theory of negligent misrepresentation, a "plaintiff must demonstrate the existence

---

[13] For the same reasons, Acer's allegation on "information and belief" that ED&F "intended for Acer and the Plans to rely" on the so-called "Disavowed Tax Vouchers" is deficient as a matter of law.  *See* Acer TPC ¶ 75; *Segal*, 467 F.2d at 608.

of a duty running between the parties.").  As alleged in the Amended Third-Party Complaints, ED&F's agreements were with the *pension plans*, not with Acer or Crema or Wittwer.  *See* Acer TPC ¶¶ 7-8; Crema TPC ¶ 9; Wittwer TPC ¶ 9.  Accepting these allegations as true, the only duties purportedly owed by ED&F were to the pension plans, not to Third-Party Plaintiffs.  *See* Acer TPC ¶ 103; Crema TPC ¶¶ 42, 87, 104; Wittwer TPC ¶¶ 42, 87, 104.[14]

In an apparent effort to address this pleading deficiency, Crema and Wittwer add a bare allegation that each of them was a "third-party beneficiary of the Plan's relationship with ED&F."  Crema TPC ¶ 11; Wittwer TPC ¶ 11.  However, neither Crema nor Wittwer has alleged any facts to support this claim to intended third-party beneficiary status.  Under Utah law, "it is not enough that the parties to [a] contract know, expect or even intend that others will benefit from the contract."  *See Carmona v. Travelers Cas. Ins. Co. of Am.*, 428 P.3d 65, 69 (Utah Ct. App. 2018) (citation and internal quotation marks omitted), *cert. denied*, 429 P.3d 461 (Utah 2018).  Rather, the contract must affirmatively evince the parties' clear intention to "confer a separate and distinct benefit upon the third party . . . ."  *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980) ("A third-party beneficiary who is incidentally benefited may not recover."); *see also Val Peterson*, 537 P.3d at 672 ("This is a high standard.").  No facts have been alleged to support the inference that ED&F's agreements with the pension plans were clearly intended to confer a "separate and distinct benefit" upon Crema or Wittwer as individuals.  *See Rio Algom*, 618 P.2d at 506; *see also Carmona*, 428 P.3d at 69 ("The contract

---

[14] Duty and detrimental reliance are also essential elements of causes of action for negligent misrepresentation under the laws of New York and Pennsylvania.  *See In re Customs & Tax Admin. of Kingdom of Den. (SKAT) Tax Refund Litig.* ("*SKAT Tax Refund Litig. III*"), 18-md-2865, 2023 WL 8039623, at *20 (S.D.N.Y. Nov. 20, 2023); *Arthur Props.*, 2011 WL 5910192, at *4-5; *Schnell*, 828 F. Supp. 2d at 806.

must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively

make this intention clear." (citation and internal quotation marks omitted))

C.      ED&F Owed No Fiduciary Duties To Crema Or Wittwer

Under the law of Utah, a fiduciary relationship is one of "peculiar confidence" in which

one party "exercise[s] influence over" and has a "duty to act primarily for the benefit of

another." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah

1990) (citation omitted).  Crema and Wittwer fail to allege that they were in any such

relationship with ED&F and thus cannot state a claim for breach of fiduciary duty.  *See* Crema

TPC ¶¶ 112-120; Wittwer TPC ¶¶ 112-120; *see also Robinson v. Robinson*, 368 P.3d 105, 117

(Utah Ct. App. 2016), *cert. denied*, 379 P.3d 1183 (Utah 2016).  Neither Crema nor Wittwer

allege that ED&F ever exercised (or was ever in a position to exercise) any influence over them,

nor do Crema or Wittwer allege the ED&F was duty-bound to act for *their* benefit.  After all,

ED&F is alleged to have acted as "broker-custodian" for the AIG and DWC Plans, not for Crema

or Wittwer.  *See* Crema TPC ¶¶ 9, 67; Wittwer TPC ¶¶ 9, 67.  Moreover, the relevant ED&F

accounts were allegedly "operate[d]" by Stacey Kaminer, not Crema or Wittwer, and they were

allegedly "maintained" by the AIG and DWC Plans, not Crema or Wittwer.  *See* Crema TPC

¶¶ 14, 19; Wittwer TPC ¶¶ 14, 19.  Crema and Wittwer nevertheless maintain that ED&F had a

"fiduciary relationship" with them in their alleged capacities as "trustee and sole participant" of

the AIG and DWC Plans, respectively.  *See* Crema TPC ¶ 113; Wittwer TPC ¶ 113.  Taken as a

whole, however, the pleadings make clear that the only duty alleged is one that ran to the pension

plans, not to Crema or Wittwer individually.  Thus, Crema and Wittwer allege that ED&F "owed

a duty *to the Plan* to create true and accurate documents," that ED&F was obliged to act "for the

benefit of *the Plan*," that ED&F was "uniquely positioned to confirm *the Plan's* . . . entitlement

to dividend withholding taxes," and that ED&F was the "only entity that had direct control over information concerning . . . *the Plan's* brokerage accounts."  *See* Crema TPC ¶¶ 42, 113-16; Wittwer TPC ¶¶ 42, 113-16 (emphases added).  Even assuming *arguendo* that such allegations could state a fiduciary duty with respect to the pension plans, they do not state fiduciary duty owed to Crema or Wittwer as individuals.  Because Crema and Wittwer do not allege any fiduciary duties owed to them personally, their claims for breach of fiduciary duty are unsustainable.

>    **D.    Third-Party Plaintiffs' Alleged Tort Claims Are Barred By The Economic Loss Doctrine**

Under the law of Utah, a "party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law."  *See KTM Health Care, Inc. v. SG Nursing Home, LLC*, 436 P.3d 151, 169-70 (Utah Ct. App. 2018) (citation and internal quotation marks omitted, emphasis in original).  This "economic loss rule" prevents parties from asserting "tort claims for purely economic loss" on the basis of duties arising from contractual agreements, *see id.* (citation and internal quotation marks omitted), or where a "contract covers the subject matter of the dispute."  *See Reighard v. Yates*, 285 P.3d 1168, 1174 (Utah 2012); *see also Salt Lake City Corp. v. ERM-West, Inc.*, 984 F. Supp. 2d 1156, 1160-61 (D. Utah 2013) ("[T]he party seeking to maintain a tort claim for purely economic losses must allege the violation of a standard of care that is not coextensive with that contained in the relevant contracts.").  The economic loss rule applies to intentional and negligent torts, *see KTM Health Care*, 436 P.3d at 169-73, as well as to breaches of fiduciary duty.  *See CE Providers v. Stearns Bank*, 18-cv-100, 2018 WL 3448335, at *4 (D. Utah July 17, 2018).

Third-Party Plaintiffs' tort claims are all rooted in financial services performed pursuant to "agreements . . . that set forth ED&F's obligations as broker-custodian with each of the Plans."  Acer TPC ¶¶ 7-11; Crema TPC ¶¶ 9, 14-16; Wittwer TPC ¶¶ 9, 14-16.[15]  Neither Crema nor Wittwer has plausibly alleged any independent, extra-contractual duty owed by ED&F to anyone at all, nor do they allege any non-economic harm done to them by ED&F.  That the claims asserted by Crema and Wittwer are essentially contract-based claims is exemplified by the fact that the AIG and DWC Plans each sued ED&F for breach of contract on the basis of largely the same alleged facts that Acer, Crema and Wittwer now assert in support of their tort claims.  *See* Amended Third-Party Complaint & Jury Demand, ECF No. 226 ¶¶ 110-119.  All of Third-Party Plaintiffs' tort claims are thus barred under the economic loss rule.

### E.     The Promissory Estoppel And Unjust Enrichment Claims Fail As A Matter Of Law

The quasi-contract claims advanced by Crema and Wittwer—for promissory estoppel and unjust enrichment—also fail as a matter of law.  *See* Crema TPC ¶¶ 121-30, 131-137; Wittwer TPC ¶¶ 121-137.  As an initial matter, "[r]ecovery in quasi contract is not available" under Utah law "where there is an express contract covering the subject matter of the litigation."  *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978); *see also Nickerson Co. v. Energy W. Mining Co.*, 20090221-CA, 2009 WL 4681778, at *1-2 (Utah Ct. App. Dec. 10, 2009).  A promissory estoppel claim is thus "clearly prohibited where a contract exists," *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1239 (D. Utah 2015), and the doctrine of unjust enrichment likewise "may be invoked only when no express contract is

---

[15] Crema and Wittwer attach copies of Custody Agreements with the AIG Plan and the DWC Plan, respectively, to their pleadings, underscoring their belief that these agreements are of particular relevance to their claims.  *See* Crema TPC Ex. A; Wittwer TPC Ex. A.

present that governs the remedies available to an injured party." *U.S. Fid. & Guarantee Co. v. U.S. Sports Specialty Ass'n*, 270 P.3d 464, 468-69 (Utah 2012) (citation and internal quotation marks omitted).  Here, the contracts between ED&F and the pension plans are the sources of the duties alleged by Crema and Wittwer—*see* Crema TPC ¶¶ 8-16; Wittwer TPC ¶¶ 8-16—and they are also the basis of the fees allegedly charged by ED&F.  *See* Crema TPC Ex. A § 14; Wittwer TPC Ex. A § 14.  Given the alleged existence of express contractual agreements covering the conduct at issue, the promissory estoppel and unjust enrichment claims asserted by Crema and Wittwer are unsustainable as matter of law.

The promissory estoppel and unjust enrichment claims also fail on their own terms, even assuming they are not foreclosed by the relevant contractual agreements between ED&F and the pension plans.  The unjust enrichment claim fails because neither Crema nor Wittwer allege that ED&F was ever enriched at their expense.  To prevail on a claim for unjust enrichment under Utah law, a plaintiff "must show that it conferred a benefit on the party against whom it brings the claim." *MediaNews Grp., Inc. v. McCarthey*, 432 F.Supp.2d 1213, 1239 (D. Utah 2006), *aff'd*, 494 F.3d 1254 (10th Cir. 2007).  But Crema and Wittwer both premise their unjust enrichment claims on fees "collected *from the Plan* . . . ." *See* Crema TPC ¶¶ 135, 137 (emphasis added); Wittwer TPC ¶¶ 135, 137 (same); *see also* Crema TPC ¶ 132; Wittwer TPC ¶ 132.  Because neither Crema nor Wittwer allege that they themselves conferred any benefit upon ED&F, they cannot state a claim for unjust enrichment.  *See MediaNews Grp.*, 432 F.Supp.2d at 1239-40 (unjust enrichment claim cannot succeed where defendant is alleged to have "obtained a benefit through . . . the actions of a third party").

The claims for promissory estoppel are similarly deficient.  To state a claim for promissory estoppel under Utah law, Crema and Wittwer must identify a "clear and definite"

promise made to them by ED&F.  *See Glob. Fitness Holdings*, 127 F. Supp. 3d at 1241-42.

Although Crema and Wittwer allude vaguely to an alleged promise by ED&F to "exercise

reasonable care" and to "create only truthful and accurate documents," Crema and Wittwer do

not articulate a "clear and definite" promise and do not specify *to whom* the purported promises

were made.  *See* Crema TPC ¶¶ 122-24; Wittwer TPC ¶¶ 122-24.  The reason for the evasiveness

is clear enough:  ED&F is not alleged to have entered into any agreements or direct

communications with Crema or Wittwer and, moreover, ED&F allegedly "agreed to

communicate" with its pension plan clients "through Acer."  *See* Crema TPC ¶ 20; Wittwer TPC

¶ 20.  The pleadings thus do not support any inference that ED&F made any "affirmative

statement" to Crema or Wittwer, *see Glob. Fitness Holdings*, 127 F. Supp. 3d at 1242, much less

that ED&F reasonably expected to induce Crema or Wittwer to rely on such a statement or that

Crema or Wittwer did in fact so rely.  *See id.* at 1241 (promissory estoppel requires "promise

reasonably expected to induce reliance" (citation and internal quotation marks omitted)); *see also*

*id.* at 1246.

### F.    Third-Party Plaintiffs Fail To State A Claim For Equitable Indemnification

The Utah Supreme Court has recognized that a cause of action for equitable

indemnification comprises three essential elements: "(1) the payor (prospective indemnitee) must

discharge a legal obligation the payor owes to a third person; (2) the prospective indemnitor must

also be liable to the third person; and (3) as between the claimant payor and the prospective

indemnitor, the obligation ought to be discharged by the indemnitor."  *Perry v. Pioneer*

*Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984).  Such a cause of action generally "does

not arise until the liability of the party seeking indemnity results in his damage, either through

payment of a sum clearly owed or through the injured party's obtaining an enforceable

26

judgment." *See id.*; *see also In re Customs & Tax Admin. of Kingdom of Den. (SKAT) Tax Refund Litig.* ("*SKAT Tax Refund Litig. I*"), 18-md-2865, 2020 WL 3962066, at *3 (S.D.N.Y. July 13, 2020) ("[T]he Second Circuit has clarified in recent years that the question of whether an indemnification claim has accrued is a question of state law.").

Third-Party Plaintiffs cannot get past the first element, because they do not allege that they owe any "legal obligation" to SKAT. *See Perry*, 681 P.2d at 218. Indeed, it is the position of Third-Party Plaintiffs that they owe nothing to SKAT. Absent any allegation that they have incurred liability to SKAT—much less that they have made good on any such liability—Third-Party Plaintiffs cannot state a claim for equitable indemnification. *See id.*; *see also Balducci v. Clear Home, Inc.*, 21-cv-729, 2022 WL 1186883, at *3 (D. Utah Apr. 21, 2022) (dismissing as unjusticiable indemnification counterclaim premised on "future events that have not and may never take place"); *Flowell Elec. Ass'n, Inc. v. Rhodes Pump, LLC*, 361 P.3d 91, 96 (Utah 2015) (plaintiff "could not satisfy all the elements of its indemnification claim . . . until [it] was held liable for the injuries"). Nor have Third-Party Plaintiffs alleged that they stand in the kind of relationship with ED&F that would support a right to implied indemnity under Utah law. *See Bylsma v. R.C. Willey*, 416 P.3d 595, 607, 615 (Utah 2017) (implied indemnity "applies in principal/agent and strict products liability situations, where principles of vicarious liability impose on a non-culpable party the liability incurred by a culpable one.").[16]

---

[16] Under Pennsylvania law, a claim for indemnity does not "fully accrue until payment is made," *see J.V. Mfg., Inc. v. Dematic Corp.*, 22-cv-412, 2023 WL 2577239, at *1 (M.D. Pa. Mar. 20, 2023) (citation and quotation marks omitted), although district courts in Pennsylvania have permitted technically unripe third-party indemnification claims "before the prime obligation to pay materializes." *See Mt. Pocono Mun. Auth. v. RKR Hess*, 20-cv-1105, 2021 WL 3674639, at *3 (M.D. Pa. Aug. 20, 2021). Similarly, under New York law, a cause of action for indemnification "is not complete until loss is suffered . . . ." *See McDermott v. City of New York*, 50 N.Y.2d 211,

### G.    Apportionment Of Fault Is Not A Cause Of Action

Finally, the apportionment of fault claims must be dismissed because apportionment of fault, properly understood, is not a standalone cause of action.  Under Utah's Liability Reform Act, a court may—and upon the request of a party, must—allocate the "percentage or proportion of fault."  Utah Code § 78B-5-818(4)(a); *see also Biesele v. Mattena*, 449 P.3d 1, 4 (Utah 2019).  Where fault has been so apportioned, a defendant may not be held liable in excess of the "percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant."  Utah Code § 78B-5-820(1); *see also Biesele*, 449 P.3d at 6.  Subject to the Utah Rules of Civil Procedure, a defendant may generally join a third party as a defendant "for the purpose of having determined their respective proportions of fault," *see* Utah Code § 78B-5-821(1), but joinder is not necessary for the purpose, as fault may also be allocated to a non-party on the basis of a timely filed "description of the factual and legal basis on which fault can be allocated and information identifying the non-party."  *See* Utah Code § 78B-5-821(4).

Utah's Liability Reform Act thus creates a statutory scheme by which a defendant may forestall imposition of joint-and-several liability by requesting apportionment of fault.  *See Biesele*, 449 P.3d at 6.  It does not, however, create an independent cause of action against a third party, nor does it provide a mechanism by which a defendant may seek recovery against a third-party defendant on a theory of contribution.  Indeed, the statute is explicit that a "defendant is not

---

217-18 (1980); *see also SKAT Tax Refund Litig. I*, 2020 WL 3962066, at *4 n.24 ("[B]ecause no liability has been incurred and no payment therefore has been made, the injury element of the indemnity cause of action is missing."). New York courts have for the "sake of fairness and judicial economy" allowed "third-party actions to be commenced in certain circumstances before they are technically ripe."  *See Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 51 A.D.2d 140, 146 (4th Dep't 1976).  This Court found such considerations inapplicable, however, to ED&F's counterclaims for indemnification in this action.  *See SKAT Tax Refund Litig. I*, 2020 WL 3962066, at *4 n.24.

entitled to contribution from any other person."  Utah Code § 78B-5-820(2); *see also Bylsma*, 416 P.3d at 634 ("Independent actions sounding in the law of 'contribution' are expressly foreclosed.").  Utah's statutory scheme for apportionment of fault accordingly does not support a cause of action against ED&F.

## **CONCLUSION**

For the reasons set forth above, ED&F respectfully requests that the Court dismiss the Amended Third-Party Complaints in their entirety with prejudice and grant such other and further relief as the Court deems reasonable.

Respectfully submitted,

Dated: June 11, 2024
New York, New York

By: /s/ Neil S. Binder
Neil S. Binder
M. Tomas Murphy
**BINDER & SCHWARTZ LLP**
675 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212.510.7008
Fax: 212.510.7299
nbinder@binderschwartz.com
tmurphy@binderschwartz.com

*Counsel for ED&F*