UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTERFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br><br>19-cv-10713 (LAK) | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANTS JOHN VAN MERKENSTEIJN, RICHARD MARKOWITZ, BERNINA PENSION PLAN TRUST, AND RJM CAPITAL PENSION PLAN TRUST'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

In order to deny this Motion for Summary Judgment (the "Motion"),[1] the Court would have to conclude that the parties to a private contract did not mean what they said in clear and unambiguous language. Because SKAT provides no persuasive reason for this Court to ignore the plain language of the Tolling Agreements (the "Agreements")—and presents no genuine dispute of material fact—judgment should enter for Defendants John Van Merkensteijn, Richard Markowitz, Bernina Pension Plan Trust, and RJM Capital Pension Plan Trust (collectively, "Defendants") as to the November 2019 Complaint.[2]

## I. The Language Of The Tolling Agreements Is Clear

It is difficult to understate the clarity of the statement: "On the Expiration Date, a party to this Agreement shall have sixty (60) days from the Expiration Date to file any lawsuit relating to the Claims." Defs.' Br. 3, SUMF ¶ 14. In opposing the Motion, SKAT concedes that there is no genuine dispute of material fact as to the meaning of the defined term "Expiration Date," the identity of any "party," or the meaning of "this Agreement," nor does it dispute that November 2019 is more than 60 days after the Expiration Date. In fact, SKAT describes 42 of 45 material facts Defendants identified as "undisputed." *See* SKAT Resp. to SUMF. Its only response is to invoke "the terms, purpose and context" of the Agreements in an effort to transform the term "Claims" into something it never meant. *See* SKAT Opp. 2. *See also id.* at 11.

---

[1] This memorandum refers to Defendants' Memorandum of Law in Support of the Motion (ECF No. 1029, "Defs.' Br.") and SKAT's Memorandum of Law in Opposition (ECF No. 1021, "SKAT Opp."). This memorandum also refers to Defendants Statement of Undisputed Material Facts (ECF No. 1031, "SUMF") and SKAT's Response to Defendants' Rule 56.1 Statement of Material Facts (ECF No. 1024, "SKAT Resp. to SUMF").

[2] Defendants file this reply pursuant to the Court's Pretrial Order in providing leave for "Defendants in *SKAT v. Van Merkensteijn et al.*, 19-cv-17013" to "file any replies by June 14, 2024." Pretrial Order No. 36, ECF No. 978. Defendants reserve the right to challenge other lawsuits brought by SKAT as barred by the statute of limitations at trial, including for the reasons set forth in Defendants' summary judgment briefing.

The term "Claims" is clearly defined. It means "SKAT's potential claims." The relevant language reads as follows:

> SKAT and the Covered Parties have agreed as of January 1, 2018 (the "Effective Date") that any statutes of limitations, statutes of repose or other time-related claim or defense that would expire or become applicable during that period of time from the Effective Date through the earlier of [December 31, 2018], or thirty days after any Party gives written notice to any other Party of its wish to terminate this Agreement with respect to that Party and such notice is received, pertaining to any claim or defense *relating in any way to SKAT's potential claims (the "Claims"),* … .

SUMF ¶ 13, Ex. 4 at 2 (emphasis added). SKAT contends that "Claims" refers exclusively to "claims that otherwise would have become time-barred during the tolled period." *See* SKAT Opp. 2. *See also id.* ("the 60-day deadline … applied *only* to those of SKAT's claims … for which the limitations period would have run without it") (emphasis added); *id.* at 12 (60-day deadline "applies *only* to those otherwise time-barred claims") (emphasis added). But that is not what the Agreements say, and it is not what the Agreements mean. The Claims are "SKAT's potential claims"; the parties tolled certain time-based defenses as to SKAT's potential claims; and the parties also agreed that SKAT "shall have sixty (60) days from the Expiration Date to file *any lawsuit relating to the Claims.*" SUMF ¶ 14, Ex. 4 at 2 (emphasis added). Nothing about SKAT's argument is faithful to the plain language of the contract. *Prospect Cap. Corp. v. Credito Real USA Fin. LLC*, 2023 WL 7498071 (S.D.N.Y. 2023) (applying New York law) (granting summary judgment to plaintiff where contract language was unambiguous).

II.   **SKAT's Arguments About The "Purpose" Of The Agreement Fail**

In resisting the plain language of the Agreements, SKAT resorts to argument by adjective. First, it decries the Motion as "blinkered" (SKAT Opp. 2) and "nonsensical" (*id.* at 10), inviting an "absurd result" (*id.*). To be sure, contracts should be read to avoid absurdities (*Mastrovincenzo v. City of New York*, 435 F.3d 78, 104 (2d Cir. 2006) (quoting *World Trade Ctr. Props., LLC v.*

2

*Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003))), but there is nothing absurd about parties agreeing in the context of settlement discussions to establish a timeframe within which the potential plaintiff would actually assert its claims. Arguing otherwise, SKAT asserts that "the purpose of the agreements was to toll, not shorten, the limitations periods on SKAT's claims." SKAT Opp. 11. But in support of this proposition, SKAT does not cite to any portion of the Agreements nor to any evidence in the record. Attorney argument about the purpose of an agreement is not sufficient to create a genuine dispute of material fact. *See, e.g.*, *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) ("The language of a contract is not made ambiguous simply because the parties urge different interpretations.").

Regardless, SKAT's say-so is not persuasive. The bargain the parties to the Agreements struck was clear: Defendants agreed to extend the time for SKAT to bring suit—including by tolling the statute of limitations—and in exchange, SKAT agreed to bring any suit relating to the Claims within two months from the expiration of the Agreements, which was March 1, 2019. *See* SUMF ¶¶ 18-20. Indeed, SKAT's litigation position would deprive Defendants of the benefit of the bargain—an outcome that is especially inappropriate given that the relevant contractual language is clear and that SKAT itself drafted the Agreements. *See, e.g.*, SUMF ¶ 1, Ex. 1 at 1 ("As we have not yet received your suggestion for a separate tolling agreement … Kammeradvokaten and the Danish Ministry of Taxation's ('SKAT') US counsel, Hughes Hubbard & Reed, have made this agreement letter … ."). *See also Staley v. Hotel 57 Servs., LLC*, 680 F. Supp. 3d 440, 448 (S.D.N.Y. 2023) ("ambiguities in a contract must be construed against the drafter").

SKAT's insistence that "context" compels the conclusion that "the sixty-day deadline in the agreements applies only to claims that otherwise would be time-barred absent the agreements"

3

does not make it so. SKAT Opp. 12. Again, that is not what the Agreements actually say, which is why SKAT presents its argument as a divination based on the "purpose" or "context" of the Agreements. *Bank of New York Trust Co., N.A. v. Franklin Advisers, Inc.*, 726 F.3d 269, 280 (2d Cir. 2013) (when interpreting contract terms under New York law, a court is "bound, first and foremost, by the terms' plain meaning"); *Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, 311 F. Supp. 3d 623, 628 (S.D.N.Y 2018) ("When an agreement is clear and unambiguous on its face then that agreement must be enforced according to the plain meaning of its terms.") (citation omitted). Moreover, SKAT's redefinition of the term "Claims" would add eight words ("that otherwise would be time-barred absent the agreements") to the Agreements that cannot be found in the Agreements, which defies basic rules of contract interpretation. *See, e.g.*, *Abundance Partners LP v. Quamtel, Inc.*, 840 F. Supp. 2d 758, 767 (S.D.N.Y. 2012) ("Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.") (citation omitted).

Regardless, context does not support SKAT's read. The Agreements are not terribly complicated. Take a simple example: If a statute of limitations would have expired before the Expiration Date, that statute of limitations would instead expire 60 days from the expiration of the Agreements. In that scenario, Defendants agreed to *extend* SKAT's time to file suit against them. (This example also gives the lie to SKAT's argument that Defendants' reading renders "the tolling period … superfluous" (SKAT Opp. 12)—in fact, the tolling period preserved SKAT's claims that otherwise would have expired.) As for additional context, the Agreements explained that "SKAT is contemplating initiating litigation in connection with a scheme to obtain dividend tax refunds." *See, e.g.*, SUMF ¶ 13, Ex. 4 at 1. Against this background, SKAT agreed to provide some certainty around the timing of any forthcoming litigation: "On the Expiration Date, a party to this agreement

4

*shall*"—a mandatory term (*see, e.g., Seaton Ins. Co. v. Cavell USA, Inc.*, 2008 WL 8943879, at *2 (S.D.N.Y. May 14, 2008))—"have sixty (60) days from the Expiration Date to file *any lawsuit relating to the Claims*." SUMF ¶ 14, Ex. 4 at 2 (emphasis added). In the context of an agreement about when SKAT could sue Defendants, it is hardly "nonsensical" to have agreed upon an end-date beyond which such claims would be barred.

Nor is the relevant statement from the Agreements an indefinite, "general," or "summary" "expressions of intent" such that it must yield to an unrelated sentence elsewhere in the Agreements (*see* SKAT Opp. 12). As the Second Circuit has explained, under New York law, "[i]t is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007)). Here, the terms that SKAT now contends are "general" or "summary" are, in reality, clearly defined. The Expiration Date imposed by the Agreements only affected claims related to the specific list of pension plans incorporated by reference in the Agreements and those plans' trustees, predecessor plans, and successor plans of partners, which was selected by SKAT itself. SUMF ¶ 1, Ex. 1 at 1; *id.* ¶ 13, Ex. 4 at 1. In the very case SKAT cites to support its argument that the Court should narrow its reading of the terms of the Agreements, the court took no issue with the contract term between the defendant (an energy supply company) and the plaintiff that the defendant would charge "a monthly variable rate, to be determined at [the defendant's] discretion," even though the contract gave the defendant the discretion to consider, among other things, "unspecified 'market-related factors'[.]" *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409-10 (2d Cir. 2023). In the Agreements here, the

5

Claims were clearly defined and specified as those relating to any lawsuit filed by SKAT against any Covered Party related to the alleged scheme to obtain dividend tax refunds.

Regardless, SKAT's argument that the statement that "a party to this agreement shall have sixty (60) days from the Expiration Date to file any lawsuit" must be subsidiary to a different statement that time-based defenses "shall expire or become applicable only at the conclusion of sixty (60) days from the expiration of the agreement" is self-defeating. SKAT Opp. 12. If SKAT were correct, it would render *meaningless* the sentence: "On the Expiration Date, a party to this agreement shall have sixty (60) days from the Expiration Date to file any lawsuit relating to the Claims." SUMF ¶ 14, Ex. 4 at 2. But the law will not allow that result. *Eastman Kodak Co. v. STWB Inc.*, 232 F. Supp. 2d 74, 91 (S.D.N.Y. 2002) ("Under New York law, a court should avoid construing a contractual provision in a manner that renders contractual language meaningless or superfluous.") (citations omitted).

Finally, SKAT's opposition fails to reckon with the fact that it filed 21 lawsuits within 60 days of the expiration of the Agreements. *See* SKAT's Resp. to SUMF ¶ 21 (not disputing fact). This is powerful evidence that SKAT understood what it had plainly agreed to—it conducted itself accordingly. *Nuance Commc'ns, Inc. v. International Bus. Machs. Corp.*, 544 F. Supp. 3d 353, 369 (S.D.N.Y. 2021) (under New York law, extrinsic evidence includes "the parties' course of conduct throughout the life of the contract") (citation omitted). And SKAT even said so at the time: When it wrote to the Plans announcing the tolling agreement was terminated, it acknowledged that "[t]he 60-day period for SKAT to commence litigation is now running, and SKAT is preparing to file complaints … . " Ex. 1. Nowhere did SKAT suggest that this "60-day period for SKAT to commence litigation" applied only to some subset of its claims. In short, SKAT's current litigation position is the opposite of what SKAT actually said about this exact

6

contractual language during the period when it was most relevant (within the 60-day window). Thus, although the Court need not consult extrinsic evidence to interpret contractual language that SKAT does not even argue is ambiguous (*see, e.g.*, *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 917 (2d Cir. 2010)), the record directly belies SKAT's argument that "context" infuses the 60-day limit to sue Defendants with a different meaning.

### III.   Conclusion

The Agreements gave SKAT 60-days following the Expiration Date "to file *any lawsuit relating to the Claims.*" SKAT advances no argument that the November 2019 Complaint does not relate "to the Claims," and agrees that the Expiration Date was December 31, 2018. SKAT could have, and was required to, file this lawsuit not later than March 1, 2019. Because it failed to do so, judgment must enter for Defendants.

Dated: June 14, 2024  
      New York, New York

By: */s/ Alan E. Schoenfeld*  
BOYD M. JOHNSON  
ALAN E. SCHOENFELD  
PETER G. NEIMAN  
WILMER CUTLER PICKERING  
   HALE AND DORR LLP  
7 World Trade Center  
250 Greenwich Street  
New York, NY  10007  
(212) 230-8800  
Boyd.Johnson@wilmerhale.com  
Alan.Schoenfeld@wilmerhale.com  
Peter.Neiman@wilmerhale.com

ANDREW S. DULBERG  
WILMER CUTLER PICKERING  
   HALE AND DORR LLP  
60 State Street  
Boston, MA 02109  
(617) 526-6352  
Andrew.Dulberg@wilmerhale.com

By: */s/ Sharon L. McCarthy*  
SHARON L. MCCARTHY  
KOSTELANETZ LLP  
7 World Trade Center  
250 Greenwich Street  
New York, NY  10007  
(212) 808-8100  
smccarthy@kostelanetz.com

NICHOLAS S. BAHNSEN  
DANIEL C. DAVIDSON  
KOSTELANETZ LLP  
601 New Jersey Avenue, NW  
Suite 260  
Washington, DC  20001  
(202) 875-8000  
nbahnsen@kostelanetz.com  
ddavidson@kostelanetz.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024 the foregoing document was served electronically to all parties of record by the CM/ECF system.

                                                    */s/ Alan E. Schoenfeld*
                                                    Alan E. Schoenfeld

June 14, 2024