UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTERFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br>18-cv-07824; 18-cv-07827; 18-cv-07828; 18-cv-07829; 19-cv-01781; 19-cv-01783; 19-cv-01785; 19-cv-01788; 19-cv-01791; 19-cv-01792; 19-cv-01794; 19-cv-01798; 19-cv-01800; 19-cv-01801; 19-cv-01803; 19-cv-01806; 19-cv-01808; 19-cv-01809; 19-cv-01810; 19-cv-01812; 19-cv-01813; 19-cv-01815; 19-cv-01818; 19-cv-01866; 19-cv-01867; 19-cv-01868; 19-cv-01869; 19-cv-01870; 19-cv-01871; 19-cv-01873; 19-cv-01894; 19-cv-01896; 19-cv-01918; 19-cv-01922; 19-cv-01926; 19-cv-01928; 19-cv-01929; 19-cv-01931; 21-cv-05339 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANT MICHAEL BEN-JACOB'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Dated: June 14, 2024

Defendant Michael Ben-Jacob submits this reply memorandum of law in support of his motion for summary judgment (the "Motion") on Plaintiff Skatterforvaltningen's ("SKAT's") claims against Ben-Jacob asserted in the complaints referenced in the caption.[1] SKAT's Opposition fails to rescue its time-barred claims.

To begin, SKAT does not contest any of the material facts that require dismissal of its post-July 2018 claims as untimely under a Tolling Agreement between the parties, resorting instead to unsupported assertions concerning the "purpose" and "context" of the agreement that are manifestly insufficient to override its plain terms.

SKAT's attempts to counter Ben-Jacob's separate and independent argument that the June 2021 Complaint is untimely under the applicable statute of limitations are equally meritless. SKAT's responses as to the untimeliness of the June 2021 Complaint rely on convenient—and thoroughly unconvincing—*post hoc* professions of ignorance concerning the extent of Ben-Jacob's participation in the alleged fraud. That professed ignorance is entirely at odds with its own pre-June 2019 pleadings, the exclusion of Ben-Jacob from its May 2019 settlement with the Maple Point parties, and its oft-repeated position in all other contexts in this litigation that the purported fraud on which it sued Ben-Jacob and his clients in 2018 and 2019 is the same fraud on which it sued him in 2021.

SKAT's untimely claims must be dismissed.

---

[1] Capitalized terms not defined herein have the meanings set forth in Ben-Jacob's memorandum in support of the Motion (ECF No. 1003, "Opening Br.") and SKAT's memorandum in opposition (ECF No. 1021, "SKAT Opp."). This memorandum also refers to: SKAT's Response to Ben-Jacob's Rule 56.1 Statement of Material Facts and Statement of Additional Material Facts (ECF No. 1023, "SKAT Resp. to 56.1," and "SKAT Stmt. Of Additional Facts," respectively); SKAT's letter dated January 31, 2024 concerning its trial proposal (ECF No. 954, "Jan. 31, 2024 SKAT Letter"); and, SKAT's Memorandum in Opposition to Ben-Jacob's Motion for Separate Trials (ECF No. 1025, "SKAT Opp. to Mot. for Separate Trials").

I.  **SKAT'S CLAIMS AGAINST BEN-JACOB ASSERTED IN COMPLAINTS FILED AFTER JULY 17, 2018 ARE TIME-BARRED BY THE TERMS OF THE TOLLING AGREEMENT**

The material facts that compel dismissal of SKAT's post-July 2018 claims against Ben-Jacob are clear and undisputed. The Tolling Agreement provides: "On the Expiration Date, a party to this Agreement shall have sixty (60) days from the Expiration Date to file any lawsuit relating to the Claims." (MBJ 56.1 ¶ 9(c).) It is undisputed that the Tolling Agreement expired with respect to Ben-Jacob on May 18, 2018, when SKAT filed the action *Skatteforvaltningen v. The Stor Capital Consulting LLC 401K Plan et al.*, No. 18-cv-04434, naming Ben-Jacob as the sole individual defendant. (SKAT Resp. to 56.1 ¶ 14; MBJ 56.1 ¶ 9(c) (Tolling Agreement expires immediately upon "the filing of any legal proceeding against any Covered Party").) SKAT had until July 17, 2018 to file any further lawsuit against Ben-Jacob relating to a purported dividend tax refund scheme (the Claims). SKAT does not dispute it filed 29 complaints against Ben-Jacob and amended 10 complaints to add Ben-Jacob as a defendant after July 2018. (SKAT Resp. to 56.1 ¶¶ 16, 17, 21.) Nor does it dispute that *every* one of those complaints against Ben-Jacob related to his alleged participation in a dividend tax refund scheme. (SKAT Resp. to 56.1 ¶¶ 16, 17, 21.) By the plain terms of the Tolling Agreement, each of those complaints was therefore untimely.

SKAT's ***sole*** argument in response is that the Tolling Agreement does not mean what it says, and that its plain language should be ignored in light of SKAT's bald assertions concerning the "purpose" and "context" of the Tolling Agreement. (*See* Opp. 10-12.) But for the reasons presented in the Reply Memorandum of Law also filed today by Defendants John van Merkensteijn and Richard Markowitz in support of their Motion for Summary Judgment (ECF No. 1040), that argument fails. SKAT's post-July 2018 claims against Ben-Jacob must accordingly be dismissed.

## II. SKAT'S JUNE 2021 COMPLAINT IS TIME-BARRED UNDER THE APPLICABLE STATUTE OF LIMITATIONS[2]

SKAT's pre-June 2019 pleadings and Ben-Jacob's exclusion from the May 2019 Maple Point Settlement each independently and conclusively show that SKAT knew "facts suggesting" Ben-Jacob's participation in the Schedule A Plans' alleged fraudulent scheme more than two years before it filed the June 2021 Complaint. *See In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908, at *2 (S.D.N.Y. June 30, 2021). That complaint must accordingly be dismissed as untimely regardless of how the Court resolves arguments concerning the Tolling Agreement. *Guilbert v. Gardner,* 480 F.3d 140, 147 (2d Cir. 2007) (affirming summary judgment dismissing claim and noting "plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action.").

### A. SKAT's Pre-June 2019 Complaints Show Its Knowledge of Facts Suggesting Ben-Jacob's Involvement with the Schedule A Plans' Alleged Fraud

SKAT fails to rebut that, by June 2019, it knew that (1) the Schedule A and Schedule B Plans had engaged in a unitary alleged fraudulent scheme, and (2) Ben-Jacob was involved in that unitary alleged fraudulent scheme. These facts alone were more than sufficient to have "suggested" to SKAT Ben-Jacob's involvement in the Schedule A Plans' alleged fraud. *See Korwek v. Hunt*, 646 F. Supp. 953, 958 (S.D.N.Y. 1986) (lawsuits "alleging the same conspiracy

---

[2] SKAT has now admitted that the Tolling Agreement expired as to Ben-Jacob on May 18, 2018—and not December 31, 2018—and thus there were only 138 days of tolling. (*See* SKAT Resp. to 56.1 ¶ 14.) SKAT agrees the limitations period is six years unless the discovery rule exception applies. (SKAT Opp. 13.) This means any claim accrued before January 28, 2015 is outside the limitations period. The date of the final tax refund payment alleged in the June 2021 Complaint was October 9, 2014, (June 2021 Complaint, Schedule A), and thus all claims in the June 2021 Complaint are time barred barring application of the discovery rule, which does not apply for the reasons described herein.

against many of the same defendants as plaintiffs charge in this case" presented opportunity for plaintiff to discover fraud).

SKAT argues that it has never pleaded the Schedule A and Schedule B Plans were part of a singular fraudulent scheme, and that Ben-Jacob "simply misconstrues allegations generally describing fraudulent reclaims that SKAT received from all different sources." (SKAT Opp. 17.) But that contention is belied by SKAT's own complaints, in which it sued the *same individuals* for engaging in the *same conduct* across the Schedule A and Schedule B Plans. (SKAT Resp. to 56.1 ¶¶ 19, 27(b) (admitting that, by March 2019, SKAT had sued John van Merkensteijn and/or Richard Markowitz (and in some cases, their wives) concerning nine Schedule A *and* eight Schedule B Plans). SKAT's profession now that it did not "know" that pension plans owned by John van Merkensteijn and Richard Markowitz, engaging in the exact same trading strategy as *other* pension plans also owned by John van Merkensteijn and Richard Markowitz, were part of a single strategy is not a reasonable view of the facts. *See Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) (nonmovant cannot "successfully oppose summary judgment on the basis of an unreasonable view of the facts") (quoting *Edwards v. Akzko Nobel, Inc.*, 193 F. Supp. 2d 680, 688 (W.D.N.Y. 2001)). Indeed, it is contrary to the position SKAT has consistently taken throughout this litigation that the Schedule A and B Plans "participated in a *single scheme* to defraud SKAT," (SKAT Opp. to Mot. for Separate Trials, 3), and that this was a "rinse and repeat" fraud that "followed a similar repetitive pattern, replayed

over and over again," (Jan. 31, 2024 SKAT Letter, 3).[3] While these are 2024 statements, the bases for SKAT's understanding that this was a "rinse and repeat" fraud and that the Schedule A and B Plans were engaged in a "single scheme to defraud SKAT" have been long known to SKAT, as evidenced by their pre-June 2019 Complaints against these plans and their overlapping investors. The only facts SKAT claims to have learned later are limited to *additional* details of Ben-Jacob's alleged involvement with this single fraudulent scheme, not whether the Schedule A and B Plans were part of one unitary scheme at all.

But SKAT also knew sufficient facts by June 2019 to suggest Ben-Jacob was involved in this "single scheme to defraud SKAT" because it knew of his involvement with the Schedule B Plans. By March 2019, SKAT had filed at least seven complaints against a Schedule B Plan and either Markowitz or van Merkensteijn that (i) named Ben-Jacob as a defendant, alleging that he signed powers of attorney authorizing payment agents to seek reclaims from SKAT on the Plans' behalf or (ii) alleged that the Plans submitted Ben-Jacob's office address as part of their reclaim application (which SKAT knew was Ben-Jacob's office). (Opening Br. 17.) SKAT had also alleged by this time that Ben-Jacob acted as the authorized representative for many Schedule B Plans. (*Id.* at 18.)

---

[3] *See also* SKAT Opp. to Mot. for Separate Trials, 1 ("SKAT's claims against Ben-Jacob and his co-defendant clients arise from a single fraudulent scheme"); *id.* at 10 ("the evidence at trial of SKAT's claims against Ben-Jacob and his co-defendants for participating in the *same fraudulent scheme* will overlap substantially") (emphasis added); *id.* at 11 ("the pension plans for which SKAT has sued Ben-Jacob only participated in the *same fraudulent scheme* as the rest of the pension plans") (emphasis added); Jan. 31, 2024 SKAT Letter, 1 ("defendants engaged in a single scheme to defraud SKAT"); *id.* at 3 (scheme had "repetitive and overlapping nature"); *id.* at 4 ("Ben-Jacob worked with these defendants from the very outset of their scheme in 2012 (and played an integral role in their attempt to execute a similar scheme with Sanjay Shah, the mastermind of the scheme, even prior to 2012), through to its end in 2015").

SKAT's only rebuttal is that the June 2021 Complaint contained allegations concerning Ben-Jacob's role with the Schedule A Plans that go *beyond* the allegations in its Schedule B Plan complaints. (*See* SKAT Opp. 17.) But it is well-settled that a plaintiff need not know *all* the facts of an allegedly fraudulent scheme—it was sufficient that SKAT knew *some* facts suggesting Ben-Jacob's involvement in the fraudulent scheme, even if it later learned others. *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) ("The triggering information need not detail every aspect of the [subsequently] alleged fraudulent scheme") (internal quotations omitted); *In re NovaGold Resources Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 285 (S.D.N.Y. 2009) ("To trigger the duty of inquiry, the storm warnings must relate directly to the misrepresentations and omissions on which the plaintiffs base their claims, but they need not detail every aspect of the alleged scheme.") (internal quotations omitted); *AE Liquidation Corp. v. Segre*, No. 96 CIV. 0889, 2000 WL 204525, at *4 (S.D.N.Y. Feb. 18, 2000) ("the statute of limitations does not await discovery of all of the details of the fraudulent scheme"). In other words, SKAT's defense that it later learned *more* facts concerning Ben-Jacob's alleged involvement in the Schedule A Plans is an irrelevant distraction: the inquiry is only whether, in June 2019, SKAT possessed "facts suggesting" Ben-Jacob's involvement in the Schedule A Plans' alleged fraud, which it did.

In short, it is indisputable that SKAT knew the Schedule A and Schedule B Plans were part of a single (allegedly) fraudulent strategy because SKAT had already brought suits alleging that the same people were doing the same thing with both sets of plans, and it is indisputable SKAT knew Ben-Jacob was involved in this "single scheme" because of his involvement with those overlapping individuals and Schedule B Plans. SKAT's claimed ignorance of the connection between the Schedule A and Schedule B Plans is unreasonable on its face. And

SKAT's only real argument—that it learned more details of Ben-Jacob's role later—is entirely beside the point.

      **B.    The Maple Point Settlement Indicates That SKAT Actually Knew Ben-Jacob Was Involved in The Schedule A Plans' Trading Strategy**

Ben-Jacob's exclusion from the Maple Point settlement in May 2019 provides an independent basis showing that SKAT knew facts suggesting Ben-Jacob's involvement in an alleged fraud involving the Schedule A Plans.

SKAT does not dispute that the Maple Point Settlement settled "SKAT's claims against the Maple Point parties arising from the Maple Point and [the Schedule A Plans'] fraud." (SKAT Opp. 15; *see* Opening Br. 15.) Nor does SKAT dispute that there is no evidence (and that it has not alleged) that Ben-Jacob had any involvement with Maple Point Plans' trading. (SKAT Resp. to 56.1 ¶ 25(b). *Cf.* SKAT Resp. to 56.1 ¶¶ 25, 26.) *See Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2019 WL 1227903, at *1 n.1 (S.D.N.Y. Mar. 15, 2019) ("[W]here Plaintiff has offered no citation to admissible evidence in the record, the Court will only consider that fact to the extent it is undisputed by Defendants."). Thus, the only reasonable inference to be made is that SKAT excluded Ben-Jacob to preserve their claims against him concerning the Schedule A Plans. *See Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 571 (S.D.N.Y. 2012) (settlement agreement placed plaintiff on inquiry notice of fraud claims).

SKAT's attempts to distinguish *Gonzales* are plainly insufficient. (SKAT Opp. 16.) It is of no moment that the Maple Point Settlement was not public or that Ben-Jacob was not a party. (*See id.*) SKAT itself was a party to the agreement and so of course knew that Ben-Jacob was expressly excluded from the settlement. Put simply, *Gonzales* stands for the proposition that where a settlement agreement provides notice of the allegations involved, and those allegations

mirror those underlying plaintiff's claim, the settlement triggers inquiry notice. *See* 847 F. Supp. 2d at 571.

SKAT's alternative explanation for Ben-Jacob's exclusion—that it "did not know at the time whether Ben-Jacob was involved in either the fraud involving the Maple Point plans or the fraud involving the [Schedule A Plans]"—is belied by the extensive allegations in complaints it filed months before evincing its belief that the Schedule A and Schedule B Plans were involved in a single unitary scheme to defraud SKAT. (SKAT Opp. 15; *see supra* II.A.) *See Berk*, 380 F. Supp. 2d at 343; *see also Guilbert,* 480 F.3d at 147 (plaintiff bears burden of demonstrating that discovery rule applies to salvage untimely claim). In that light, SKAT's exclusion of Schedule B Plans and other individuals involved in the Schedule B Plan's alleged fraud only reinforces that SKAT understood both sets of plans as engaged in a singular fraud, and that it knew facts suggesting Ben-Jacob's involvement in both.

      C.    **Regardless of SKAT's Investigative Efforts, SKAT Knew Sufficient Facts Concerning Ben-Jacob's Involvement with Schedule A Plans Before His Co-Defendant Clients Produced Privileged Documents**

Finally, SKAT's contention that it cannot be charged with inquiry notice of Ben-Jacob's involvement with the Schedule A Plans because it "investigated the [] fraud diligently" and supposedly only learned of his involvement in March 2021 is unsupported on the facts and the law. (SKAT Opp. 18-19.)

It is unsupported on the facts because SKAT offers just one example of a fact it supposedly learned after Ben-Jacob's clients waived privilege: that Ben-Jacob allegedly played a role in creating partnerships involving in the Schedule A plans that were used to distribute refund amounts paid by SKAT. (*Id*. at 19.) But the sole document SKAT cites in support is a memorandum to file prepared by another Kaye Scholer lawyer that does not reference Ben-Jacob

- 8 -

or partnerships—and has nothing to do with when SKAT learned facts concerning Ben-Jacob. (SKAT Stmt. Of Additional Facts ¶ 4; Weinstein Decl. Ex. 6.)[4]

It is unsupported on the law because, regardless of SKAT's investigative efforts, "[u]nder the discovery rule, the plaintiff will be held to have discovered the fraud[] when the plaintiff has knowledge of facts from which the fraud could be reasonably inferred." *In re Kingdom of Belgium, Federal Public Service Finance Pension Plan Litigation* ("*Kingdom of Belgium*"), 680 F. Supp. 3d 460, 480 (S.D.N.Y. 2023) (quoting *Cusimano v. Schnurr*, 137 A.D.3d 527, 531 (N.Y. App. Div. 2016)), *motion to certify appeal denied*, No. 21-CV-6392 (JGK), 2023 WL 6214806 (S.D.N.Y. Sept. 22, 2023). Put differently, while it is true that "the date on which knowledge of a fraud will be imputed to a plaintiff can depend on plaintiff's investigative efforts," *Cohen*, 711 F.3d at 361, the fact of SKAT's investigation does not change what SKAT actually knew before June 2019.

Thus, SKAT's reliance on *Kingdom of Belgium* is misplaced. (*See* SKAT Opp. 18-19.) Unlike defendants' argument in that case, Ben-Jacob's argument does not rely on the notion that SKAT's investigation was inadequate—it relies on what SKAT actually knew, as evidenced by its pre-June 2019 complaints, about Ben-Jacob's involvement with the "single scheme to defraud SKAT" encompassing the Schedule A and Schedule B Plans and his support of the overlapping individuals behind both. *Cf. Kingdom of Belgium*, 680 F. Supp. 3d. at 480-81. Whether SKAT later discovered additional facts concerning Ben-Jacob's alleged role is of no moment; the only

---

[4] SKAT's assertion that it only learned of Ben-Jacob's involvement in advising on partnership structures in March 2021 is also contradicted by its own pleadings, or at least highly misleading. In April 2020, SKAT amended ten of its complaints against certain Schedule B Plans to add Ben-Jacob as a defendant and alleged, among other things, that Ben-Jacob "assist[ed] in the formation of numerous pension plans and LLCs that served as the plans' sponsors." (*E.g.*, *Skatteforvaltningen v. Voojo Prods. LLC Roth 401(K) Plan et al.*, No. 19-cv-01873-LAK, ECF No. 53, Am. Compl. ¶ 48.)

question is whether the two-year discovery period was triggered by June 2019, which it was. *See Cohen*, 711 F.3d at 361; *AE Liquidation Corp.*, 2000 WL 204525, at *4.

## CONCLUSION

For the reasons above and in the Opening Brief, Ben-Jacob's motion for summary judgment should be granted and SKAT's untimely claims dismissed.

                                              Respectfully submitted,

                                              DEWEY PEGNO & KRAMARSKY LLP

Dated: New York, New York
        June 14, 2024

                                  By: /s/ Thomas E.L. Dewey

                                      Thomas E.L. Dewey
                                      Sean K. Mullen
                                      777 Third Avenue – 29th Floor
                                      New York, New York 10017
                                      Tel.: (212) 943-9000
                                      Fax: (212) 943-4325
                                      tdewey@dpklaw.com
                                      smullen@dpklaw.com

                                      KEKER, VAN NEST & PETERS LLP
                                      Elliot R. Peters
                                      Julia L. Allen
                                      633 Battery Street
                                      San Francisco, CA 94111
                                      Tel.: (415) 962-7188
                                      epeters@keker.com
                                      jallen@keker.com

                                      *Attorneys for Defendant Michael Ben-Jacob*