# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>SKAT TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br><br>18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01794;  19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 21-cv-05339. | Case No. 1:18-md-2865-LAK |

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF THE
# MOTION FOR SEPARATE TRIALS

Defendant Michael Ben-Jacob hereby submits this reply memorandum in support of his Motion for Separate Trials (the "Motion").[1] ECF No. 1010.

## I. INTRODUCTION

In this unique case, where an attorney will be tried alongside his clients who are pursuing an advice-of-counsel defense based on the advice of numerous additional lawyers, the Court should exercise its broad discretion to conduct separate trials. Defendant Michael Ben-Jacob has identified three separate bases that warrant separate trials; the Court need only accept one.

Plaintiff Skatteforvaltningen ("SKAT") fails to engage with Ben-Jacob's arguments. SKAT's Opposition rests on an illusory concern regarding potential inconsistent verdicts, the notion that repeated curative jury instructions can alleviate the prejudice to Ben-Jacob, and claiming incorrectly that SKAT would be the party prejudiced in the event of separate trials.

SKAT's suggestion that there is risk of inconsistent verdicts makes no sense. It is based on the idea that its cases against John van Merkensteijn, Richard Markowitz, Robert Klugman ("the Principals"), and Ben-Jacob are identical, so that any jury rendering different verdicts as to them would be doing something "inconsistent." That is nonsense. The evidence against the Principals and Ben-Jacob, and the legal theories alleged, are quite different, and a jury in a joint trial, or two juries in separate trials, could easily and properly render different verdicts without the slightest inconsistency. The reasons for this are discussed in greater detail below.

SKAT also fails to meaningfully address the prejudice that Ben-Jacob will experience due to the Principals' advice-of-counsel defense: Ben-Jacob was one of many legal advisors, yet he is the only one on trial. A jury, under these circumstances, cannot be expected to evaluate the advice-of-counsel defense based on the totality of legal advice the Principals received, separate and apart from the actual evidence of Ben-Jacob's own role and participation, in assessing his

---

[1] Ben-Jacob submits this reply pursuant to Paragraph 2 of the Court's Pretrial Order No. 36, dated April 1, 2024 (ECF No. 978), providing leave for Ben-Jacob, as a defendant in *Skatteforvaltningen v. Ben-Jacob*, 21-cv-05339-LAK (S.D.N.Y.), to "file any replies by June 14, 2024."

liability.  Ben-Jacob will suffer prejudice when SKAT relies on evidence pertaining to the knowledge, actions, and advice of numerous other lawyers—which the jury must consider in connection with the advice-of-counsel defense and may improperly impute to Ben-Jacob.  This is only more difficult for the jury where, as here, those other lawyers include lawyers from the firm at which Ben-Jacob was a partner at the time.  SKAT does not seriously dispute that this situation will arise.

SKAT suggests that limiting jury instructions and cross examination will remedy any harm.  But they won't.  Even frequent and robust jury instructions cannot ensure the jury parses Ben-Jacob's conduct and intent from those of other attorneys, or his clients, not to mention the disruption caused by such frequent instructions.  Nor is cross examination the silver bullet SKAT suggests: given the unique circumstances of this case, cross examination of his former and current clients as part of his defense risks the jury penalizing Ben-Jacob for taking positions inconsistent with that of his clients—a problem to which SKAT offers no solution.

Finally, judicial efficiency favors severance given the quantum of evidence inadmissible as to Ben-Jacob and the disruptions SKAT's proposed limiting jury instructions would create.

## II.   ARGUMENT

### A.   SKAT does not refute the prejudice Ben-Jacob will suffer in a joint trial.

The Principals plan to rely on the advice they've received from numerous lawyers and law firms.  Ben-Jacob, the only lawyer defendant, was one of those lawyers but had a limited role.  Ben-Jacob is a trusts and estates attorney who advised his clients and performed work on U.S. legal issues related to trusts, estates, and U.S. taxation.  Ben-Jacob did *not* opine on foreign law issues or participate in the trading strategy at issue, had little-to-no direct contact with Sanjay Shah, and often relied on his colleagues at Kaye Scholer in advising the Principals as to areas outside of his expertise.  *See* Def.'s Mem. L. in Supp. Mot. for Separate Trials ("Mot.") at 6–7, ECF No. 1011.  He had no pecuniary interest in the Danish trading strategy or tax refunds.  Numerous other law firms, including Freshfields, Hannes Snellman, Crowell & Moring, and

2

Norton Rose Fulbright, provided the Principals with legal advice concerning ex-dividend trading in Europe.

This leaves an unavoidable and unacceptable risk that Ben-Jacob will be held responsible for legal work performed by myriad other lawyers both from his firm and others. This unusual set of facts greatly prejudices Ben-Jacob and benefits no one but SKAT.

### 1. There is no risk of inconsistent verdicts.

To manufacture prejudice from separate trials, SKAT suggests there is risk of "inconsistent verdicts," without explaining how that could arise. Pl.'s Mem. L. in Opp'n to Def.'s Mot. for Separate Trials ("Pl.'s Br.") at 5–6, ECF No. 1025. The risk of inconsistent verdicts is illusory.

SKAT's position is based on its fear that in separate trials all of the defendants will be found not liable. That outcome is not inconsistent. It is not inconsistent for two juries to reach the same conclusion about two sets of defendants. A finding that Ben-Jacob is not liable, even where the Principals were found liable, also would not be inconsistent.[2] For example, a court in this district held a verdict in a securities fraud case was not inconsistent where the jury found one defendant liable and two co-defendants not liable: the court reasoned that the jury reasonably could have concluded that plaintiffs had not proven the material misstatement or omission or scienter elements of their claim against the two co-defendants based on the more limited pool of documents admitted against them. *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 552 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). Here too the evidence against Ben-Jacob is substantially different and weaker. Ben-Jacob was not personally involved in the trading. *See* Mot. 3–5. He never met or did any due diligence on Sanjay Shah. *Id.* He had no financial interest in the Danish trading and never received a single kroner from the proceeds. *Id.* He did not receive the majority of documentation concerning the

---

[2] Obviously SKAT would like all defendants to be liable—an outcome that again would not be inconsistent. The likelihood that the Principals would be found not liable, but Ben-Jacob liable, seems very remote.

3

trades. *Id.* He is not a financial professional. *Id.* SKAT's "inconsistent verdicts" argument is built on assumptions that cannot withstand scrutiny.

To the extent SKAT is not complaining about inconsistent verdicts, but instead about the opportunity for the Principals and Ben-Jacob to present separate defenses at separate trials, that concern is also misplaced. This Court can and will determine which evidence is properly admissible at each trial. To the extent it desires, SKAT can certainly seek to offer testimony from the Principals at the trial of Ben-Jacob, and testimony from Ben-Jacob at the trial of the Principals. However, in a separate trial Ben-Jacob will not be unfairly prejudiced from being lumped together with all the other attorneys on whom the Principals rely in pursuing their advice of counsel defense. In a separate trial, Ben-Jacob will only be tried based on evidence properly admissible against him.

In short, the question of inconsistent verdicts is simply not implicated by the proposed separate trials.

> **B.     The likelihood that a jury will conflate Ben-Jacob's actions with those of other attorneys is highly prejudicial.**

SKAT does not dispute that numerous law firms and lawyers provided legal advice in connection with the trading strategy. Nor does it dispute that as the sole lawyer in front of the jury, Ben-Jacob will be portrayed as *the* lawyer for the Principals, thereby casting him as the attorney who "approved" the trading strategy. Ben-Jacob has explained the prejudice he faces where SKAT and the Principals are aligned in assigning the legal advice received by the Principals to Ben-Jacob, regardless of the actual source. While SKAT denies any such prejudice exists, SKAT's cited evidence and arguments in its Opposition underscore how Ben-Jacob will be prejudiced in a joint trial.

SKAT highlights several pieces of evidence containing legal advice, but critically Ben-Jacob did not render that advice. Pl.'s Br. 8–9. To begin, SKAT emphasizes testimony and documents showing legal advice provided by other Kaye Scholer attorneys. *See* Declaration of Marc. A Weinstein ("Weinstein Decl."), Ex. 2, ECF No. 1026-2 (legal advice provided by Arthur

4

Woodard); *id.* Ex. 5, ECF No. 1026-5 (legal advice from a different Kaye Scholer attorney and forwarded to van Merkensteijn). SKAT also relies on a memorandum drafted by another Kaye Scholer partner, Arthur Woodard. *Id.*, Ex. 6, ECF No. 1026-6. Crucially, SKAT does not establish that Ben-Jacob saw or reviewed this memorandum. Nor does Mr. Woodard recall sharing the document with Ben-Jacob. *See* Declaration of Elliot R. Peters in Supp. of Reply, Ex. 9, Dep. of Arthur Woodard at 112:2–12. For example, Ben-Jacob testified: "I am aware that Mr. Woodard had conversations with the client group in which I did not participate. I don't know what concerns he may or may not have raised in those conversations." *Id.*, Ex. 10, Dep. of Michael Ben-Jacob ("Ben-Jacob V1") at 287:5–14. So, one of SKAT's proffered key pieces of evidence is a legal memorandum, drafted by another attorney, and for which there is no testimony establishing receipt or review by Ben-Jacob. SKAT's reliance on this evidence in its Opposition only underscores the prejudice that will result in a joint trial: SKAT, the Principals, and the jury impermissibly holding Ben-Jacob responsible for the work of another attorney that he never saw.

SKAT also highlights a Danish law opinion prepared by a law firm called Hannes Snellman addressed to "Solo Capital (Dubai) Limited" prepared "at the request of Solo Capital Partners LLP." Not only did Ben-Jacob not write the legal opinion or communicate at any point with the Hannes Snellman firm, but he also did not represent, meet, or have any direct individual communication with Sanjay Shah, or participate in the due diligence on Shah or the Solo entities. *See* Mot. 4. Nor is there a single document suggesting that Ben-Jacob received or reviewed the Danish law opinion during the relevant 2012 to 2015 time period. SKAT's suggestion that Ben-Jacob should somehow be held responsible for the Danish legal analysis contained in this opinion again underscores the harm that will flow from conflating the role of different lawyers in a joint trial where Ben-Jacob is the only attorney defendant.

After suggesting Ben-Jacob has manufactured a baseless claim of prejudice, SKAT's own arguments make plain the precise prejudice Ben-Jacob will suffer in a joint trial.

5

### C.  Limiting jury instructions and cross examination are inadequate remedies.

SKAT suggests that limiting jury instructions and cross examination will cure any prejudice Ben-Jacob may suffer. Pl.'s Br. 7–10. But neither can.

To begin, SKAT does not refute the reasoning in *Weiss v. National Westminster Bank PLC* for why limiting jury instructions are insufficient here: "[N]o limiting instruction to a jury could undo the possible confusion that may result when a jury is asked to assess extensive and complex scienter evidence against one defendant by putting aside a significant amount of evidence introduced against another defendant on the same issue." No. 05-cv-4622 (DLI) (RML), 2017 WL 10058916, at *3 (E.D.N.Y. Mar. 31, 2017).[3] Although all defendants vehemently reject the idea that any of them participated in a fraudulent scheme, or had any knowledge of the alleged fraud, SKAT must prove scienter for each individual. Here, Ben-Jacob had no financial motive regarding the trading and had access to much less specific information about the trading strategy and the trades than the Principals. Thus, the most critical evidence relevant to Ben-Jacob's state of mind is much different than that of any other defendant. Because Ben-Jacob was not the only legal advisor involved in the trading strategy, he was not always privy to the same information, or at the same time, as the Principals. *See e.g.*, Ben-Jacob V1 at 287:5–14. The court in *Weiss* understood and highlighted the need for separate trials in this type of situation. 2017 WL 10058916, at *2–3 ("Presenting this [scienter] evidence at a consolidated trial creates a substantial risk that the jury would be confused by the large amounts of evidence admitted on these issues that relate independently to each defendant."). And the Court cannot seriously be asked to constantly instruct the jury, in a six-week (or longer) trial, when much of the evidence is relevant to some defendants and not others. *Id.*; *see also infra* Part II.D. Notably, the *Gordon Springs v. City of New York* case that SKAT relies on expressly states "'this case does not present complex legal or factual questions' such that the jury would be

---

[3] Although, procedurally, *Weiss* involved consolidation, the court's logic and reasoning is still relevant here. The court denied a motion for consolidation, which results in the same practical effect as granting separate trials.

6

confused by the presentation of all claims and all defendants in the same trial." No. 17-CV-0451 (AJN), 2019 WL 10892065, at *2 (S.D.N.Y. Aug. 21, 2019) (citation omitted). That scenario is the opposite of the complex legal and factual issues at play here.

Cross examination is an equally inadequate remedy as it only puts a spotlight on the fact that Ben-Jacob is taking a position different from his clients for which the jury may punish him—underscoring the impossible position a joint trial creates. Ben-Jacob must weigh protecting his former and current clients' interests as he defends himself. *Cf. Helie v. McDermott, Will & Emery*, 852 N.Y.S. 2d 701, 709 (2007) ("The importance of maintaining the delicate balance between the attorney's duty of confidentiality and the attorney's right of self-defense outweighs the additional expense generated from a separate trial of a narrow issue that is one element of plaintiff's liability case against defendants.").

SKAT has not provided a workable solution to overcome the substantial prejudice Ben-Jacob faces in a joint trial.

### D. Judicial efficiency favors separate trials, or at least is a neutral factor.

SKAT also inflates the inefficiencies of separate trials and fails to respond to the efficiencies Ben-Jacob has identified.

First, SKAT ignores that a joint trial with repeated jury instructions only fosters inefficiencies. Not only will limiting jury instructions fail to cure the prejudice to Ben-Jacob, but they will also be highly disruptive given the length of the trial, the number of defendants involved, and the amount of evidence (documents and witnesses) involved. *See Weiss*, 2017 WL 10058916, at *3 ("[T]he parties realistically cannot expect the Court either to give limiting instructions continuously or to marshal the evidence during the majority of trial."); *see also Cestone v. Gen. Cigar Holdings, Inc.*, No. 00CIV3686RCCDF, 2002 WL 424654, at *3 (S.D.N.Y. Mar. 18, 2002) ("Two shorter trials will be more efficient and less expensive than one long, combined trial in which the Court must constantly caution the jury to not consider evidence that is irrelevant or inadmissible against a particular Defendant.").

Moreover, the evidence against Ben-Jacob will not overlap as much as SKAT suggests. *See supra* Part II.A.1. SKAT's only case in support of its position is also readily distinguishable. *Moore v. Navillus Tile, Inc.* involved **a bench trial**, and the primary determination was whether certain companies were alter egos of the defendant. No. 14 Civ. 8326 (CM), 2017 WL 11567280, at *4–5, n.3 (S.D.N.Y. Jan. 3, 2017). The alter ego question necessarily involved the same witnesses and documentary evidence to establish whether the companies operated as a single economic entity and whether there was an overall element of injustice or unfairness. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008). This alter ego analysis did not require that *a jury* (rather than a judge) evaluate the scienter of multiple individual defendants at different points in time, based on different evidence, as is the case here.

Finally, Ben-Jacob will rely on evidence and expert testimony to show his conduct was in line with the customary operation of lawyers in large firms—evidence that only is relevant to claims against him. SKAT's response is to state the obvious: Ben-Jacob's expert may not testify as to legal conclusions about the interpretation of legal ethics rules. Pl.'s Br. 10–11. But Ben-Jacob's expert, Michael Ross, will not testify to legal conclusions. Instead, he will educate the jury on the inner workings of large law firms and how lawyers advise sophisticated clients on complex transactions. Ross's testimony is thus critical given Ben-Jacob's unique role as the sole attorney defendant under circumstances where large number of lawyers provided legal advice during the relevant time period. And that testimony is only relevant to the claims against Ben-Jacob.

The Court thus should grant the motion for separate trials in order to unburden itself and the parties of the inefficiencies of a joint trial.

### III.   CONCLUSION

For the foregoing reasons, Defendant Michael Ben-Jacob respectfully requests that the Court sever the claims against him and order separate trials.

8

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: June 14, 2024

By: */s/ Elliott R. Peters*
ELLIOT R. PETERS
JULIA L. ALLEN
NIHARIKA S. SACHDEVA
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188
epeters@keker.com

DEWEY PEGNO & KRAMARSKY
Thomas E.L. Dewey
Sean K. Mullen
777 Third Avenue, 37th Floor
New York, NY 10017
Telephone: (212) 943-9000
Facsimile: (212) 943-4325
tdewey@dpklaw.com

Attorneys for Defendant Michael Ben-Jacob