# Exhibit 17



# Guidelines

**On Internalised Settlement Reporting under Article 9 of CSDR**



30/04/2019 | ESMA70-151-367



# Guidelines on Internalised Settlement Reporting under Article 9 of CSDR

## I.   Scope

**Who?**
1. These guidelines apply to competent authorities designated under Article 11 of CSDR[1] and to settlement internalisers as defined in Article 2(1)(11) of CSDR.

**What?**
2. These guidelines apply in relation to internalised settlement reporting and to the exchange of information between ESMA and competent authorities regarding internalised settlement in accordance with Article 9(1) of the CSDR.

**When?**
3. These guidelines apply from 30/04/2019.

## II.   Definitions

4. The terms used in these guidelines have the same meaning as in the CSDR and in the Commission Delegated Regulation (EU) 2017/391[2].

## III.   Purpose

5. The purpose of these guidelines is to ensure common, uniform and consistent application of Article 9 of CSDR as well as the relevant provisions of the Commission Delegated Regulation (EU) 2017/391 and the Commission Implementing Regulation (EU) 2017/393[3], including the exchange of information between ESMA and the competent authorities regarding internalised settlement.

---

[1] Regulation (EU) No 909/2014 of the European Parliament and of the Council of 23 July 2014 on improving securities settlement in the European Union and on central securities depositories and amending Directives 98/26/EC and 2014/65/EU and Regulation (EU) No 236/2012 (OJ L 257, 28.8.2014, p. 1–72)
[2] Commission Delegated Regulation (EU) 2017/391 of 11 November 2016 supplementing Regulation (EU) No 909/2014 of the European Parliament and of the Council with regard to regulatory technical standards further specifying the content of the reporting on internalised settlements (OJ L 65, 10.3.2017, p. 44–47)
[3] Commission Implementing Regulation (EU) 2017/393 of 11 November 2016 laying down implementing technical standards with regard to the templates and procedures for the reporting and transmission of information on internalised settlements in accordance with Regulation (EU) No 909/2014 of the European Parliament and of the Council (OJ L 65, 10.3.2017, p. 116–144)

2



## IV.   Compliance and reporting obligations

### 4.1. Status of the guidelines

6. This document contains guidelines issued under Article 16 of the ESMA Regulation[4]. In accordance with Article 16(3) of the ESMA Regulation, competent authorities and financial market participants must make every effort to comply with guidelines.

7. Competent authorities to whom these guidelines are addressed should comply by incorporating them into their national legal or supervisory frameworks as appropriate, including where particular guidelines are directed primarily at financial market participants. In this case, competent authorities should ensure through their supervision that financial market participants comply with the guidelines.

### 4.2 Reporting requirements

8. Competent authorities to whom these guidelines are addressed must notify ESMA whether they comply or intend to comply with these guidelines, with reasons for non-compliance, within two months of the date of publication of the guidelines on ESMA's website in all EU official languages. In the absence of a response by this deadline, competent authorities will be considered as non-compliant. A template for notifications is available from the ESMA website. Once completed, the notification form shall be sent to ESMA using the following email address: *csdr.data@esma.europa.eu.*

9. Settlement internalisers are not required to report whether they comply with these guidelines.

## V.   Guidelines on internalised settlement reporting

### 5.1 Scope of data to be reported by settlement internalisers

10. All of the following attributes should be present for a settlement instruction to be in scope of internalised settlement reporting:

    a) a settlement internaliser receives a settlement instruction from a client regarding settlement of a securities transaction and the settlement instruction is not forwarded in its entirety to another entity along the holding chain;

    b) such a settlement instruction results or is supposed to result in a transfer of securities from one securities account to another in the books of the settlement

---

[4] Regulation (EU) No 1095/2010 of 24 November 2010 of the European Parliament and of the Council establishing a European Supervisory Authority (European Securities and Markets Authority), amending Decision No 716/2009/EC and repealing Commission Decision 2009/77/EC (OJ L 331, 15.12.2010, p. 84).

3

internaliser, without any external parallel securities movement along the holding chain.

11. The following types of transactions and operations should be considered in scope of internalised settlement reporting:

    a) purchase or sale of securities (including primary market purchases or sales of securities);

    b) collateral management operations (including triparty collateral management operations or auto-collateralisation operations);

    c) securities lending or securities borrowing;

    d) repurchase transactions;

    e) transfers of securities between accounts of different investment funds (funds with or without legal personality should be treated as clients);

    f) execution of transfer orders by a settlement internaliser on its own account, to the extent that they result from securities transactions with clients of the settlement internaliser;

    g) transfer of securities between two securities accounts of the same client;

    h) title transfer financial collateral arrangements as defined in point (b) of Article 2(1) of Directive 2002/47/EC[5] (FCD);

    i) security financial collateral arrangements as defined in point (c) of Article 2(1) of FCD, where there is a transfer of securities between accounts;

    j) corporate actions on flow represented by transformations.

12. The following types of transactions and operations should be considered out of scope of internalised settlement reporting:

    a) corporate actions on stock, such as cash distributions (e.g. cash dividend, interest payment), securities distributions (e.g. stock dividend; bonus issue), reorganisations (e.g. conversion, stock split, redemption, tender offer);

    b) corporate actions on flow represented by market claims;

    c) primary market operations, meaning the process of initial creation of securities;

---

[5] Directive 2002/47/EC of the European Parliament and of the Council of 6 June 2002 on financial collateral arrangements (OJ L 168, 27/06/2002, p. 0043 – 0050)

4



    d) creation and redemption of fund units;

    e) pure cash payments, not related to securities transactions;

    f) transactions executed on a trading venue and transferred by the trading venue to a CCP for clearing or to a CSD for settlement.

13. A settlement internaliser should report all settlement instructions which meet the conditions specified in these guidelines, regardless of any netting performed by that settlement internaliser. Netting performed by CCPs should not be in the scope of internalised settlement reporting.

    Please see the examples in the Annex.

14. The following types of financial instruments should be considered in scope of internalised settlement reporting:

    a) financial instruments that are initially recorded or centrally maintained in CSDs authorised in the EU, i.e. financial instruments in relation to which an EU CSD acts in an issuer CSD capacity;

    b) financial instruments that are recorded in an EU CSD that acts in an investor CSD capacity for the respective financial instruments, even though they may be initially recorded or centrally maintained outside of CSDs authorised in the EU.

15. The category "other financial instruments" referred to in Article 2(1)(g)(ix) of the Commission Delegated Regulation (EU) 2017/391 should cover any financial instruments that would not be categorised under any of the types explicitly mentioned in Article 2(1)(g) of the Regulation, and which meet the conditions specified in these guidelines.

    **5.2 Entities responsible for reporting to competent authorities**

16. Internalised settlement can happen at different levels of a securities holding chain (global custodians, sub-custodians, etc.), and it should be reported at the level where it takes place. Each settlement internaliser should be responsible for reporting the settlement that has been internalised in its books only.



17. A settlement internaliser should send the information required under Article 9(1) of CSDR, in the following reports, to the competent authority in the Member State where it is established:

    a) one report for its activity in the Member State where it is established (including the activity of its branches in that Member State);

    b) separate reports for the activity of its branches per Member State;

    c) one report for the activity of its branches in third countries.

    Please see the following example:

    A settlement internaliser established in Member State A, which has two branches in Member State A, one branch in Member State B, two branches in Member State C, one branch in third country D and two branches in third country E, should send four reports to the competent authority in Member State A, as follows:

    a) one report covering its activity in Member State A, including the activity of its branches in that Member State (specifying the country code of Member State A);

    b) one report covering the activity of its branch in Member State B (specifying the branch country code of Member State B, in addition to the settlement internaliser country code of Member State A);

    c) one report covering the activity of its two branches in Member State C (specifying the branch country code of Member State C, in addition to the settlement internaliser country code of Member State A);

    d) one report covering the activity of its branches in third country D and third country E (specifying the branch country code TS, in addition to the settlement internaliser country code of Member State A).

18. Competent authorities of Member States where branches of third country entities internalise settlement instructions through their books should ensure that these branches report to them the information required under Article 9(1) of CSDR, in consolidated reports covering their activity in each Member State.

    Please see the following example:

    A settlement internaliser established in a third country has a branch in Member State A, and two branches in Member State B. The following should apply:

    a) The competent authority in Member State A should ensure that it receives one report covering the internalised settlement activity of the branch in Member State A.

b) The competent authority in Member State B should ensure that it receives one report covering the internalised settlement activity of the two branches in Member State B.

### 5.3 Data reporting parameters

19. Competent authorities should ensure that settlement internalisers include the first two characters of the ISINs in the reports.

In accordance with Article 2(1) of the Commission Delegated Regulation (EU) 2017/391, the LEI of the Issuer CSD should also be filled in by the settlement internaliser; potentially, several Issuer CSDs could be included in relation to securities identified by the same two characters of the ISINs. The Issuer CSD country code should not be filled in by the settlement internaliser, as it will be determined by the ESMA CSDR IT system.

20. Settlement internalisers should include each separate internalised settlement instruction in the aggregate figures (i.e. double side reporting).

21. Volumes should be expressed in the number of internalised settlement instructions.

22. If during a quarter covered by a report, an internalised settlement instruction fails to settle for several days after the intended settlement date (ISD), including in the case where the settlement instruction is cancelled, then it should be reported as "failed" by taking into account each day when it fails to settle. It should be reported as "settled" if it is settled during the quarter covered by the report.

Please see the following example: If during the quarter covered by the report an internalised settlement instruction with a value of 100 euros fails to settle for 3 days, and then it is settled, it should be reported as follows (considering double side reporting):

| Settled | | Failed | | Total | |
|---|---|---|---|---|---|
| Volume | Value (EUR) | Volume | Value (EUR) | Volume | Value (EUR) |
| 2 | 200 | 6 | 600 | 8 | 800 |

23. In accordance with Article 1(1) of the Commission Implementing Regulation (EU) 2017/393, (i) the period that the first report shall cover goes from 1 April 2019 until 30 June 2019; and (ii) settlement internalisers shall send the first report to the competent authorities by 12 July 2019.



### 5.4 Process for the submission of internalised settlement reports by competent authorities to ESMA, based on the reports received by the competent authorities from settlement internalisers

24. Competent authorities should ensure that settlement internalisers submit the data in accordance with Article 9 of CSDR in an XML format, conforming with an agreed candidate ISO 20022 message definition XSD schema, to be published by ESMA, which should then be used by competent authorities when submitting the data to ESMA.

25. Competent authorities should submit to ESMA the individual reports they receive from settlement internalisers after having validated them.

26. Following the validation checks performed by the ESMA dedicated IT system, such as data transmission validation rules (e.g. not corrupted file), data format validation rules (e.g. abides to the ISO-20022 XSD schema), and data content validation rules (e.g. the sum of the settled volume and the failed volume must be equal to the total volume), competent authorities will receive a feedback file confirming reception or notifying of validation errors.

27. In case of validation errors notified by ESMA, competent authorities should check the data with the settlement internalisers and should provide feedback to ESMA. If necessary, competent authorities should resubmit the corrected data to ESMA.

### 5.5 Process for the submission of the reports on potential risks resulting from internalised settlement activity by competent authorities to ESMA

28. Competent authorities should submit the necessary information to ESMA on any potential risk resulting from internalised settlement activity in accordance with Article 9 of CSDR, by using a web entry form within ESMA's secured web interface, which should be filled-in manually, and which should enable end-user identification.

29. Competent authorities should provide valid input on the respective erroneous field, if data errors are identified following validation on the entry form upon the competent authority's web entry form submission.

### 5.6 Access to data by competent authorities

30. Each competent authority should be able to access data submitted by itself to ESMA, as well as data submitted by other competent authorities that relate to its jurisdiction (the relevance should be determined by the settlement internaliser country code, the country code for branches, the issuer CSD LEI and country code, the first two characters of the ISINs). All competent authorities should be able to access data on third-country securities.



# Annex to the Guidelines - Scenarios Diagrams and Examples of Reporting

The following list is not necessarily exhaustive.

**SCENARIO 1** – The settlement internaliser (SI) has one omnibus account at the CSD, including both client A's and client B's securities. SI does not send any instruction to the CSD in relation to the instructions the SI has received from its clients.



Examples of reporting[6]:  (SI reports all internalised settlement instructions regardless of any possible netting) – SI reports 4 instructions: **200x2** and **70x2**

1) Client A deliver 200 securities to client B
2) Client B receive 200 securities from client A
3) Client B deliver 70 securities to client A
4) Client A receive 70 securities from client B

---

[6] For simplicity, the examples only look at the securities leg.

9

**SCENARIO 2** – The settlement internaliser (SI) has two securities accounts at the CSD, one for client A's securities and one for client B's securities. SI sends instructions to the CSD for the settlement of the net difference in relation to the instructions the SI has received from its clients.



Examples of reporting[7]: (SI reports all internalised settlement instructions regardless of any possible netting) – SI reports 4 instructions (for the part that is not submitted for settlement in the CSD): **70x4**

1) Client B deliver 70 securities to client A
2) Client A receive 70 securities from client B
3) Client A deliver 70 securities to client B

---

[7] For simplicity, the examples only look at the securities leg.



4) Client B receive 70 securities from client A

<u>Explanation:</u>

- Regarding the 4 instructions to be reported by SI:
    - 2 instructions correspond to the transfer of securities from B to A shown in the graph.
    - the remaining 2 instructions are not explicitly shown in the graph; they are included in the transfer of securities of 200 from A to B.
- In other words, the transfer of securities of 200 from A to B is split in two:
    - the first part (130) is covered at the level of the CSD, and does not need to be reported as internalised settlement.
    - the remaining 70 is considered as internalised settlement at the level of SI, and thus must be reported by SI (double-counted).



**SCENARIO 3** – A settlement internaliser (SI 1) has two securities accounts with another settlement internaliser (SI 2), one for client A's securities and one for client B's securities. SI 1 sends instructions to SI 2 for the settlement of the net difference in relation to the instructions the SI 1 has received from its clients.



<a>
</a>



Examples of reporting[8] (taking into account double side reporting):

- SI 1 reports 4 instructions: **70x4**

    1) Client A deliver 70 securities to client B
    2) Client B receive 70 securities from client A
    3) Client B deliver 70 securities to client A
    4) Client A receive 70 securities from client B

- SI 2 reports 2 instructions : **130x2**

    1) Client A deliver 130 securities to client B
    2) Client B receive130 securities from client A

Explanation:

- Regarding the 4 instructions to be reported by SI 1:
    - 2 instructions correspond to the transfer of securities from B to A shown in the graph.
    - the remaining 2 instructions are not explicitly shown in the graph; they are included in the transfer of securities of 200 from A to B.
- In other words, the transfer of securities of 200 from A to B is split in two:
    - the first part (130) is covered at the level of SI 2 and will have to be reported as internalised settlement by SI 2 (double-counted).
    - the remaining 70 is considered as internalised settlement at the level of SI 1, and thus must be reported by SI 1 (double-counted).

---

[8] For simplicity, the examples only look at the securities leg.

13