# Exhibit 19



14/09/2017

EBF_0286637

# EBF response to ESMA's CSDR Guidelines on Internalised Settlement Reporting

**Key points:**

The EBF welcomes ESMA's Consultation Paper (CP). The reporting on internalised settlements is a very important issue for EBF members in the context of the CSDR implementation and we fully appreciate the clarifications proposed by ESMA in this CP. At the same time, we also believe there is still need for some further refinement on certain points, both conceptually and technically.

The EBF sees two major issues in the ESMA proposed guidelines, and two other major issues that are not covered by the consultation paper. It also has a set of other detailed comments.

The two major issues in the ESMA consultation paper are:

**1. Account holder reporting**

 i.e. the ruling, set out in paragraph 12 (d) and paragraph 15, that in cases of transfers in the books of an account provider between two accounts of the same account holder the account holder – and not, as in all other cases, the account provider – should report; this inconsistency will be a major source of confusion, will place a great burden on both account holders and account providers (as both will need to determine whether they should report), and – because of the multiplicity of different scenarios, for which the Guidelines give no guidance - will inevitably generate cases both of under- and of over-reporting;  the EBF believes that there should be a consistent application of the simple rule that in the event of transfers between accounts in the books of an account provider then the account provider (and only the account provider) reports.

**2. Non-EU securities**

The reporting obligation as it applies to securities issued in CSDs outside the EU; the reporting obligation, as set out in paragraph 13 (b), is confusingly drafted, is far too broad, and in practice would be very difficult to meet; the proposed rule should be replaced by a practical, operational rule; in this response, the EBF is making a proposal for such a rule (so called "PSET rule").


The two major issues that are not covered explicitly in the consultation paper are:

**3. Source of pricing information**

As set out in our answer to question 6, we believe that rules set out in the Level 2 text with respect to the source of pricing information for free of payment transfers are both unnecessary and very burdensome. They are unnecessary as in the context of three monthly aggregated reports the problem of very minor pricing differences for some limited types of transfer would appear to be very marginal. They are very burdensome as each financial institution may need to change its process for sourcing and updating price

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23

1



information in its securities database, and would appear to need a "pre-determined" methodology that is "approved" by the NCA. We believe that there is a need for ESMA to develop a workable process that can be set out in the Guidelines. We believe that synergies are possible with the pricing information that will be needed for the calculation of CSDR late settlement penalties.

### 4. Clarification regarding the legal prerequisites of a reporting obligation

In the draft guidelines, ESMA clarifies which transactions are deemed to be in scope of the reporting obligation. The reporting obligation, however, is triggered by a movement of securities in the books of a settlement internaliser rather than by a certain type of transaction. In fact, the underlying cause of that movement is irrelevant for the question if the transaction is in scope of the reporting obligation. Consequently, misunderstandings could arise that certain kinds of transactions would determine the scope of the reporting obligation. To avoid such misunderstandings, the EBF believes that a summary of the legal prerequisites for the reporting obligation should be included in the guidelines.

Art. 9 CSDR and its level 2 determine the scope of the reporting obligation:

(1) Irrespective of the underlying legal cause, a movement of non-EU securities between securities accounts takes place in the books of an intermediary
(2) such movement would have taken place in an EU-CSD but instead only takes place in the books of the intermediary without any external parallel movement along the custody chain and
(3) triggered by a client's settlement instruction

Only if these requirements are fulfilled, a reporting obligation exists. The EBF believes that this should be explicitly clarified in the guidelines.

**About EBF**

The European Banking Federation is the voice of the European banking sector, uniting 32 national banking associations in Europe that together represent some 4,500 banks - large and small, wholesale and retail, local and international - employing about 2.1 million people. EBF members represent banks that make available loans to the European economy in excess of €20 trillion and that securely handle more than 300 million payment transactions per day. Launched in 1960, the EBF is committed to creating a single market for financial services in the European Union and to supporting policies that foster economic growth.

For more information contact:

**Daniele De Gennaro**
Policy Advisor
d.degennaro@ebf.eu
+32 2 508 37 67

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23





# EBF position:

**Q1: Do you have any comments or suggestions regarding the scope of the data to be reported by settlement internalisers?**

The EBF is in favour of a simple and pragmatic approach which is consistent with the provisions of the CSDR and its level 2. From a technical point of view, and in order to minimise changes to existing processes and systems, securities transactions that are settled in the books of an intermediary can best be described by movements of securities between securities accounts provided by that intermediary.

Art. 9 para 1 CSDR sets out that "settlement internalisers shall report […] the aggregated volume and value of all securities transactions that they settle **outside securities settlement systems**". Art. 2 para 1 (11) CSDR defines 'settlement internaliser' as "any institution, including one authorised in accordance with Directive 2013/36/EU or with Directive 2014/65/EU, which executes transfer orders on behalf of clients or on its own account other than through a securities settlement system".

Art. 2 para 1 (10) CSDR defines that 'securities settlement system' means "a system under the first, second and third indents of point (a) of Article 2 of Directive 98/26/EC that is not operated by a central counterparty whose activity consists of the execution of transfer orders". Pursuant to Art. 2 para 1 (9) CSDR a 'transfer order' means "transfer order as defined in the second indent of point (i) of Article 2 of Directive 98/26/EC".

Recital 2 of Regulation (EU) 2017/391 states that a settlement internaliser should only report internalised settlements where it has executed a **settlement instruction by a client** of the settlement internaliser **in its own books**. A settlement internaliser should **not report subsequent alignments** of book-entry positions to reflect the settlement of instructions by other entities in the holding chain of securities, as these do not qualify as internalised settlement. Similarly, a settlement internaliser should not report transactions executed on a trading venue and transferred by the trading venue to a central counterparty (CCP) for clearing or to a CSD for settlement.
Furthermore, Art. 1 para 1 of Regulation (EU) 2017/391 defines that 'internalised settlement instruction' means "an **instruction by a client** of the settlement internaliser to place at the disposal of the recipient an amount of money or to transfer the title to, or interest in, a security or securities by means of a book entry on a register, or otherwise, which is settled by the settlement internaliser **in its own books** and not through a securities settlement system".

Consequently, wherever

1) irrespective of the underlying legal cause, a movement of securities between securities accounts takes place in the books of an intermediary,
2) such movement would have taken place in an EU-CSD but instead only takes place in the books of the intermediary without any external parallel movement along the custody chain and,
3) triggered by a client's settlement instruction,

such movements are in scope and all other movements are out of scope of the reporting obligation as a matter of principle.

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23
3

**www.ebf.eu**





It would be very helpful if this principle could be set out in the final ESMA guidelines before examples are given for clarification like in par. 11 and 12 of the draft guidelines. This would address the key issue 4 mentioned above.

Moreover, the EBF sees some relevant issues in the scope of the data to be reported by settlement internalisers (i.e. the main issues that the EBF sees in paragraphs 11 to 14) are:

1/ the ruling, set out in paragraph 12 (d) and paragraph 15, that in cases of transfers in the books of an account provider between two accounts of the same account holder the account holder – and not, as in all other cases, the account provider – should report;

2/ the reporting obligation as it applies to securities issued in CSDs outside the EU, and as set out in paragraph 13 (b).

**Issue 1/ (Account holder instead of account provider):**

The requirement, set out in paragraph 12 (d) and paragraph 15, that in cases of transfers in the books of an account provider between two accounts of the same account holder the account holder – and not, as in all other cases, the account provider – should report, would be a major source of complexity.

From the perspective of any reporting entity, there needs to be a simple rule. The basic simple rule is that an account provider reports if there is a movement between two securities accounts provided by the account provider, and the account holder does not report. ESMA is proposing that the account provider does not report if the two accounts are held by the same account holder, and in such a case the account holder should report (if it is an intermediary).

This means specifically that (i) the securities account provider has to be able to distinguish between standard transfers, and transfers between two securities accounts of the same holder, and (ii) the securities account holder has to be able to distinguish between standard settlement (where it sends a settlement instruction up the chain) and reportable settlement (where it sends a settlement instruction up the chain, and where the settlement occurs between two accounts that it holds).

This proposal is more complex, and generates many conceptual and practical issues and questions.

Here is a list of some of these issues and questions:

a/ case of account holder holding securities accounts with a CSD – it is not clear if in such a case the transactions are reportable by the account holder; if they are reportable, it would appear that there will be duplicate reporting (by the CSD and by the account holder); if they are not reportable, then accounts holders will have to distinguish between accounts held with an intermediary and accounts held with a CSD that meets certain (as yet undefined) criteria;

b/ case of two securities accounts held by the same account holder that are linked to two separate cash accounts provided by the same account provider, but held by two separate cash account holders; under this scenario, it would appear that there is an obligation for

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23

4

www.ebf.eu





duplicate reporting (both by the securities account holder, and by the cash and securities account provider;

c/ case of account holder having insufficient information to identify internal settlement; this problem arises because settlement instructions match and settle based on a limited set of matching criteria; the core matching criteria relating to the custody chain are the identification of the CSD (PSET) and the identification of the CSD participant; in some cases, there is also matching relating to the client of the CSD participant; however, currently, there is no matching based on attributes of entities that are lower down the custody chain, and typically settlement instructions do not contain information about any other such entities; what this specifically means is that an account holder that is relatively low down the custody chain may not be able to identify from a specific settlement instruction that settlement for that instruction takes place in the books of its account provider, and that the settlement is reportable by the account holder;

d/ the problem of lack of information set out in point c/ is exacerbated by the possibility in the custody chain of account operator models, and of power of attorney models; the defining characteristic of all these models is that the legal holder of a securities account is not the entity that operationally sends the settlement instructions to the account provider; in such models, the legal holder of a securities account may have less information available to it allowing it to identify settlement for which it should report.

The EBF believes that ESMA should reconsider this point, and should determine that only account providers should report based on bookings in the books of the account provider, so that account holders should not have a reporting obligation.

The EBF also believes that the inclusion of book transfers between accounts of the same client may increase the volumes reported but as mentioned later what is important is the evolution of the figures on a quarterly basis.

**Issue 2/ (reporting obligation as it applies to securities issued in CSDs outside the EU):**

Paragraph 13 (b) states that "financial instruments initially recorded and/or centrally maintained outside of CSDs authorised in the EU but settled in an EU CSD".

The EBF understands this to mean that if any EU CSD can settle a transaction in a specific non-EU security then that security is in scope of internalised settlement reporting.

A first comment is that this means that a very high percentage of all global securities would be in scope of internalised settlement reporting (as in particular Clearstream Banking Frankfurt, Clearstream Banking Luxembourg, and Euroclear Bank, can accept settlement in transactions in many non-EU securities).

A second comment is that this will place a very high burden on all EU banks given that every bank will have to have an exhaustive list of all securities in which transactions can – theoretically or practically - be settled at any EU CSD.

More fundamentally, the EBF believes that an attempt to pull in most global securities into the reporting obligation is misconceived, and would generate excessive and unnecessary reporting. It should also be borne in mind that the objective of the reporting obligation

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23

5

www.ebf.eu



pursuant to Art. 9 CSDR is to gain data and information about transactions that would have settled in EU-CSDs had no internalised settlement occurred. We believe that a practical way of dealing with the problem of reporting of non-EU securities is the PSET rule (see below).

**Additional Detailed Issues and Commentary**

Please refer to the following remarks for further details and additional technical points.

The EBF fully supports ESMA's objective to have a comprehensive approach on the scope of the reporting obligation of Art. 9 CSDR and of the data to be reported under such obligation, as to detect early on the emergence of shadow market activity. However, in order to be consistent with the provisions of the CSDR and its Level 2 measures, the EBF would like to suggest shortening the list (as per the below table). This would also limit the administrative burden on the market participants (particularly as these are not items that could pose a risk to market stability).

| Transactions and operations IN scope<br>Para. 11 of the draft guidelines ||
|---|---|
| **ESMA** | **EBF** |
| a) purchase or sale of securities (including primary market purchases or sales of securities); | Agreed as long as<br>- Movement from one account to another,<br>- No parallel movement higher up the custody chain occurs and<br>In execution of a settlement instruction by a client. |
| b) collateral management operations (including triparty collateral management operations or auto-collateralisation operations); * | Agreed as long as<br>- Movement from one account to another,<br>- No parallel movement higher up the custody chain occurs and<br>- In execution of a settlement instruction by a client.<br>It should, however, be noted that some collateral management activities generate high volumes of intra-day movements, which raises the question of whether the reporting of gross intra-day movements is useful. |
| c) securities lending or securities borrowing; | Agreed as long as<br>- Movement from one account to another,<br>- No parallel movement higher up the custody chain occurs and,<br>- In execution of a settlement instruction by a client. |
| d) repurchase transactions; | Agreed as long as<br>- movement from one account to another,<br>- no parallel movement higher up the custody chain occurs and, |

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23



| | |
|---|---|
| | - in execution of a settlement instruction by a client. |
| e) transactions subject to netting as defined in point (k) of Article 2 of Directive 98/26/EC7 at the level of the settlement internaliser; | The EBF warmly welcomes ESMA's differentiation between netting on trade level and pairing-off on settlement level as expressed by reference to point (k) of Article 2 of Directive 98/26/EC. EBF agrees that netting on trade level does not fulfil requirements of an internalised settlement because netted transactions (trades) do not result in settlement instructions at all and, hence, cannot result in internalised settlements, either. This should be clarified in para 12 g) further below ("transactions that are cleared").<br><br>However, the EBF disagrees with a general reporting obligation of all paired-off transactions. Rather, the following should be taken into account:<br><br>- In case of a technical pair-off (e.g. the systems cancel the original settlement instructions of their clients and replace them by new instructions regarding the difference of the paired-off securities ("delta") due to contractual agreements with the clients), an internalised settlement can only take place regarding the delta and not regarding the paired-off number of securities, as a movement of securities is only to take place regarding the delta according to the client's (new) settlement instruction. Such settlement internalisation should be reported ("net reporting"). If the delta, however, is settled externally (at the CSD, for instance) no reporting should take place. The technical pair-off limits the settlement risk, i.e. settlement fails will be avoided. Therefore, reporting would not even be necessary from a risk perspective, either, as any potential risk is eliminated by the pair-off.<br><br>- If the systems do not cater for a technical pair-off, reporting applies to the full amount: although securities movements only take place in the amount of the delta, the settlement instructions actually executed refer to a higher volume. In this case, the settlement instructions need to be reported regarding their full volume, although execution of the settlement instructions results in movement of less securities, i.e. the delta ("gross reporting"). |

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23

7

www.ebf.eu

| | |
|---|---|
| f) transfers of securities between accounts of different funds (funds with or without legal personality should be treated as clients); | Should read "investment funds" for clarification. |
| g) intragroup transactions; | The EBF proposes deletion of this sub-paragraph, because the term "intragroup transactions" is unclear. The conditions for the reporting obligation, on the other hand, are clear: if movements of securities take place between two accounts at a settlement internaliser and in execution of a client instruction, the movement is in scope (see, for instance, our comment in a) above). Paragraph 11 g) would, moreover, not be necessary in connection with the comments regarding para 12 d) further below. |
| h) execution of transfer orders by a settlement internaliser on its own account, to the extent that they result from securities transactions with clients of the settlement internaliser; | Agreed as long as:<br>- Movement from one account to another,<br>- No parallel movement higher up the custody chain occurs and<br>- In execution of a settlement instruction by a client. |
| i) title transfer financial collateral arrangements as defined in point (b) of Article 2(1) of Directive 2002/47/EC8 (SFD) | Proposed deletion as already covered in b) to d) above.<br>ESMA should clarify if different legal entities are the only scenario, as otherwise this will always result in a movement at sub-custodian or CSD level. |
| j) security financial collateral arrangements as defined in point (c) of Article 2(1) of SFD, where there is a transfer of securities between accounts; | Proposed deletion as already covered in b) above.<br>ESMA should clarify if different legal entities are the only scenario, as otherwise this will always result in a movement at the CSD. |
| k) inheritance and gifts, where there is a transfer of securities between accounts; | Agreed as long as:<br>- Movement from one account to another,<br>- No parallel movement higher up the custody chain occurs and following a settlement instruction by a client. |
| l) reallocations of collateral for securities lending; | Proposed deletion as already covered by b) or c) above. |
| m) corporate actions on flow represented by transformations | Agreed as long as<br>- Movement from one account to another, |

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23

8



www.ebf.eu



|  |  |
|---|---|
| | - No parallel movement higher up the custody chain occurs and<br>In execution of a settlement instruction by a client. |
| **Transactions and operations OUT of scope** | |
| **Para. 12 of the draft guidelines** | |
| **ESMA** | **EBF** |
| a) corporate actions on stock, such as cash distributions (e.g. cash dividend, interest payment), securities distributions (e.g. stock dividend; bonus issue), reorganisations (e.g. conversion, stock split, redemption, tender offer); | Agreed. |
| b) corporate actions on flow represented by market claims; | Agreed. |
| c) primary market operations, meaning the process of initial creation of securities, including the creation and redemption of fund units; | Agreed. |
| d) transfers of securities between two accounts of the same client; | EBF disagrees with ESMA's view. We believe that Such transfers should be within scope of the reporting obligation of the securities account provider. They should not be within the scope of the reporting obligation of the securities account holder. Any other solution would be highly complex with many areas of uncertainty, and would a major operational burden for all parties (including users of the data). |
| e) pure cash payments, not related to securities transactions; | Agreed. However, we would like to highlight to ESMA that the Settlement Internaliser may not be able to identify internal cash payments linked to a securities transaction. |
| f) transactions executed on a trading venue and transferred by the trading venue to a CCP for clearing or to a CSD for settlement; | Agreed. |
| g) transactions that are settled by a CSD, and transactions that are cleared; ~~however, if transactions are netted outside a CSD or a CCP and it is only the netted part that is sent to the CSD or the CCP, then the part of the transactions not~~ | The EBF believes the half-sentence starting with "however" should be deleted. See detailed arguments in para 11 e) above. |

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23

9

www.ebf.eu

Case 1:18-md-02865-LAK    Document 1053-19    Filed 06/21/24    Page 11 of 16



| | |
|---|---|
| ~~sent to the CSD or the CCP should be reported;~~ | |
| h) security financial collateral arrangements as defined in point (c) of Article 2(1) of Directive 2002/47/EC, as long as there is no transfer of securities between accounts; | Proposed deletion as transactions to be reported are listed in para 11 b) and c) above (including requirements as commented). |
| i) alignments of book-entry positions to reflect the settlement of instructions by CSDs or other entities in the holding chain of securities (e.g. in case of a transfer of securities between accounts opened with the CSD, mirroring/reflecting the transfer in the books of a CSD's participants). | In principle, the EBF agrees with this exclusion.<br><br>At the same time, we note that this exclusion is not sufficiently clear. This might need to be re-drafted to make sure it excludes common depository business. |

**Concerning financial instruments**, as a general rule, the EBF believes that only those financial instruments can be subject to the reporting obligation which can be settled in a securities settlement system (SSS) of a CSD authorized under the CSDR and would have settled there if settlement were not internalized. Therefore, the EBF suggests a two-step approach when assessing if a financial instrument falls within the scope of Art. 9 CSDR and Art. 2 of Regulation (EU) 2017/391.

(1) The type of financial instrument needs to be assessed. A financial instrument which cannot be settled through a SSS cannot be subject to settlement internalisation, either. No securities settlement instruction could be generated. Consequently, no reporting exists in relation to such financial instrument. We therefore agree with para 14 of the draft guidelines.
Some financial instruments, however, can be settled through a SSS in some markets whereas in other markets they cannot be settled through a SSS. Furthermore, non-EU securities which could generally be settled through a SSS are typically settled through a SSS by a CSD not authorized under the CSDR. In order to determine if such financial instruments could be subject to an internalised settlement and thus fall under the reporting obligation pursuant to Art. 9 CSDR, a further assessment should take place.

(2) The intended place of settlement should be determined. Typically, a securities settlement instruction contains the information of the intended place of settlement in the so called PSET field. This specific field in a settlement instruction determines place of the CSD where settlement is supposed to happen and where settlement would have occurred had the settlement not been internalised. As settlement instruction, can only be generated for financial instruments that can be settled through a SSS, such instruction would also indicate in the PSET the CSD in which a settlement of the financial instrument in question could take place. The EBF calls this approach the "**PSET rule**".

**The EBF suggests to limit the scope to financial instruments that would have settled in an SSS of an EU CSD authorized under the CSDR if the settlement had not been internalised. The EBF therefore suggests the following amendment to para 13 of the draft guidelines:**

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23

10



**www.ebf.eu**



The following types of financial instruments should be considered in scope of internalised settlement reporting:
 a) financial instruments that are initially recorded or centrally maintained in CSDs authorised in the EU **and would have settled in a CSD authorized in the EU if no settlement internalisation had occurred**;
 b) financial instruments initially recorded and/or centrally maintained outside of CSDs authorised in the EU but **would have** settled in an EU CSD **if no settlement internalisation had occurred**;

This would clarify which categories of financial instruments fall within the scope of application. Please refer to the following (non-exhaustive) examples for explanation:

| Types of financial instruments | In/Out of scope | Reasons |
| --- | --- | --- |
| Exchange Traded Derivatives / OTC Derivatives | Out | Pure derivatives are contracts and thus not held in CSDs. No settlement instruction can be generated in relation to derivatives, so no EU-CSD could be found in PSET as no PSET exists. |
| Money market instruments | In/Out | MMIs or certificates of deposit can both be issued and held in a CSD or not. The PSET rule could determine whether an instruction is in scope of the reporting obligation |
| Allowances | In/Out | As with MMIs, allowances can be CSD eligible or not, depending, for instance on the market. The PSET rule could determine whether an instruction is in scope of the reporting obligation. |
| Derivative securities (e.g. warrants) | Generally in, but exceptions can apply | PSET approach: if a settlement instruction contains a PSET of an EU CSD, then it falls within the scope of the reporting obligation |
| EU securities (e.g. shares, bonds) | In | PSET approach: settlement instruction contains a PSET of an EU CSD |
| Non-EU securities | Generally in, but exceptions apply | PSET approach: if a settlement instruction contains a PSET of an EU CSD, then it falls within the scope of the reporting obligation |

Since Art. 1 para 1 of Regulation (EU) 2017/391 defines that 'internalised settlement instruction' means "an instruction by a client of the settlement internaliser to place at the disposal of the recipient an amount of money or to transfer the title to, or interest in, a security or securities by means of a book entry on a register, or otherwise, which is settled

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23





by the settlement internaliser in its own books and not through a securities settlement system"; settlement internalisation can only take place with respect to financial instruments that can be settled through a securities settlement system. Such systems can, pursuant to Art. 18 para 2 CSDR, only be operated by authorised CSDs under the CSDR. Consequently, the settlement obligation exists for financial instruments which would have settled by an EU-CSD if no settlement internalisation had taken place along the custody chain.

**Q2: Do you have any comments or suggestions regarding the entities responsible for reporting to competent authorities?**

The EBF welcomes ESMA's clarification

The EBF disagrees, however, with the example in para. 15 of the draft guidelines. The term "technical sub-account" is unclear. Such technical sub-accounts do not exist in all Member States. The EBF believes that it is not necessary to describe settlement internalisation by using this term and, moreover, that the use of such term will create uncertainty: Either B holds securities in an Omnibus Account for A and A holds these securities in accounts for its clients (e.g. X and Y). In this case, the latter accounts are not „technical sub-accounts", and B is not aware of the securities movements between the accounts of X and Y in A's books. Or B holds the securities in two sub-accounts (one sub-account for A regarding its client X and another sub-account for A regarding its client Y). In this case, the securities do not belong to the same omnibus account of the bank A and A cannot internalize the settlement between these accounts.

Should the example given in para. 15 of the draft guidelines refer to a certain situation in certain Member States, it should be clarified that it describes a particular problem in the context of settlement internalisation. Therefore, the EBF suggests reviewing this example.

Please see our answer to question 1 with relation to the account holder/account provider issue i.e. the suggestion raised in the second part of paragraph 15 that the account holder (entity A) should report, and not the account provider (entity B). We believe that there should be a consistent rule that only account providers report.

We also note that the draft Guidelines suggest in paragraphs 17 and 20 that there is reporting obligation for branches (of EU entities) that are located inside of the EU. We support this interpretation.

**Q3: Do you have any comments or suggestions regarding the proposed data reporting parameters?**

Regarding country codes and CSDs as stated in paragraph 21, the EBF welcomes ESMA's statement.

Para 25 of section 4.3 of ESMA's draft guidelines: According to Art. 1 para. 2 of the delegated regulation, „failed internalised settlement instruction" means non-occurrence of settlement […] of a securities transaction **at the date agreed** by the parties concerned […]. For reporting purposes, a fail can only be counted once (namely at the intended settlement date) and not for each (other) day when the settlement instruction fails to settle. Although the EBF agrees that the reporting of settlement instructions that have not settled could generally be possible and useful on a daily basis in a daily report or a transaction based report, the EBF believes, however, that such reporting is illegitimate regarding an aggregated report containing both settled and failed transactions. The report pursuant to Art. 9 CSDR is an aggregated report containing all internalised settlements of

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23
12



www.ebf.eu

a calendar quarter. Consequently, counting the days where settlement has not taken place is not possible. Otherwise, the report will produce wrong or misleading information.

Regarding reporting parameters, the EBF further believes that reporting should take place on an actual settlement date (ASD) basis rather than on an intended settlement date (ISD) basis.

Art. 2 of the Regulation (EU) 2017/391 stipulates, that settlement instructions are to be reported and not that (intended) settlement instructions, that do not yet have settled, are to be reported. Besides consistency, the ASD approach would lead to reliable, final data which would not bear the need for later correction.

| Scenarios | Consequences/Reporting obligations |
|---|---|
| The ASD is equal to the ISD | The instruction must be reported in the "settled" column |
| The ASD is higher than the ISD | The instruction must be reported in the "failed" column |
| An instruction that fails for several days through one or more reporting periods | The instruction must be reported in the "failed" column only once, in order to avoid duplication |

The template report is very clear: it distinguishes between "settled" and "failed" transactions. In order to determine the correct scope of instructions to be reported, the EBF advocates that the internaliser adopts an approach to report, for a given period, all those transactions which have been settled during that period. To determine the population of failed instructions, the ASD would be used. Such an approach would be consistent and reliable, and would also address scenarios such as:

- Cancelled instructions
- Transformed instructions
- Failure over the reporting period.

Should ESMA not follow such an approach, the settlement internaliser would have to send corrections of reports whenever one of the above scenarios would appear, as a result. This can make also the risk assessment of regulators more challenging. Moreover, no provisions exist on how and in which timeframe to correct an already submitted report.

Regarding para 26, it would be helpful to clarify that settlement internalisers can use the same logic in converting other currencies into Euros like in other reports (e.g. Art. 26 MiFIR), particularly where no ECB exchange rate is available.

The EBF welcomes the clarification in para 27 with regard to the date when the first report is due. Further clarification would be welcome that certain timeframes exist regarding the receipt of not-acknowledged messages and within which timeframe the report needs to be resend. Moreover, the final guidelines should require the testing of the new reporting between settlement internalisers and national competent authorities, ideally at least three months before the first report is due.

Regarding the data reporting parameters, the EBF would like to mention that settlement internalisers do not know the background or legal cause of a settlement transaction. In order to comply with the categorisation obligations as regards types of transactions within the report, settlement internalisers are dependent on their clients' information. Where no

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23




information is provided, the EBF suggests to populate the field "other securities transactions" as a default option.

Further to the ISO transaction codes mentioned in the implementing regulation (for "collateral management operations" and "repurchase transactions"), the following ISO transaction codes can be categorized into:

- Purchase or sale of securities: PLAC/ISSU/SYND/TRAD/TURN,
- Securities lending and securities borrowing: SBRE/SECB/SECL/SRLE
- Other securities transactions: all other transactions codes or where background of transaction is unknown.

**Q4: What are your views regarding the proposed requirement according to which settlement internalisers should use an XML format based on the ISO-20022 compliant XSD schema?**

The EBF believes that this might be an issue, given that many banks or other financial firms subject to reporting do not intend to switch from the well-established ISO 15022 standard to ISO 20022 in the near future. We do not have the technical expertise to judge whether the requirement "an XML format based on the ISO 20022 compliant XDS schema" is an issue or not for firms who do not migrate to ISO 20022 by the time the reporting obligation kicks in.

With regard to necessary budget planning, programming and testing, the draft of the proposed XSD schema should be published before the end of 2017.

**Q5: Do you have any comments or suggestions regarding the proposed process for submission of internalised settlement reports?**

Regarding para 31, the guidelines should provide for an obligation that incoming reports are validated upon receipt and that confirmation of the validated receipt is sent to the reporting entity promptly. The same procedures and timeframes should apply throughout the EU for any correction to be made to reports.

Furthermore, the EBF would like to suggest that testing should be offered by the national competent authorities before the first report is due. Ideally, an appropriate timeframe for the testing period should be stated. The provisions on testing could be set out in a new chapter.

**Q6: Do you have any additional comments or suggestions regarding the proposed guidelines?**

The EBF encourages ESMA to actively confirm the validity of the PSET approach as the cornerstone to determine whether something is reportable or not. Reporting of non-EU securities is a significant issue both conceptually and technically for which the PSET approach presents itself as a truly elegant and pragmatic solution to master it.

Furthermore, regarding the determination/ calculation of market value of free of payment transactions, the RTS (Article 2, para 3) set out detailed requirements with respect to how to source or calculate the price. We would like to raise our concerns on the feasibility of implementing such a solution in an automated manner. The determination of the price for each ISIN based on liquidity or higher turnover or pre-determined methodology from a different market or venue is not something that each settlement internaliser will be able to support in a consistent manner. Financial Institutions already use approved service

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23





providers to source price feeds which are used for other purposes like portfolio valuation and billing. Different service providers may use different sources (different market or venue) for the same ISIN. This will result in the use of a different price from each settlement internaliser for the calculation of the value of free of payment internalised settlement instructions.

Differences in the prices used by vendors will not substantially alter the total values included in the report but still they will not be fully compliant with the price determination/source provided in the RTS.

We would appreciate ESMA's guidance on whether this is acceptable or whether ESMA in order to facilitate consistent implementation would consider the appointment/creation of a public source from where settlement internalisers will be able to extract the price per ISIN based on the RTS requirements in an agreed XML format.

**European Banking Federation aisbl**
**Brussels /** 56 Avenue des Arts, 1000 Brussels, Belgium / +32 2 508 3711 / info@ebf.eu
**Frankfurt /** Weißfrauenstraße 12-16, 60311, Germany
**EU Transparency Register /** ID number: 4722660838-23
15



www.ebf.eu