**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to:

MASTER DOCKET

18-md-02865-LAK

The cases listed in
Appendix A to
Pretrial Order No.
35 (ECF No. 977)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO EXCLUDE THE TESTIMONY OF**
**MARCIA S. WAGNER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

ARGUMENT ...................................................................................................................... 6

    I.      WAGNER CANNOT OFFER ANY ADMISSIBLE REBUTTAL TESTIMONY
           CONCERNING THE IRS'S ADMINISTRATION OF PLAN QUALIFICATION
           REQUIREMENTS ...................................................................................................... 6

           A.      Wagner's Contentions that the Plans Were Not Tax Qualified Are
                  Inadmissible Legal Conclusions ................................................................ 6

           B.      Wagner's Reliance on Irrelevant Legal and Industry Standards Would
                  Mislead the Jury ....................................................................................... 8

           C.      Wagner's Inferential Opinions About Defendants' Motivations Are an
                  Improper Basis for Rebuttal Testimony .................................................... 11

           D.      Wagner's Opinion that the Plans Were "Shams" Provides No Basis for
                  Rebuttal Testimony .................................................................................. 12

    II.     WAGNER CANNOT OFFER ANY ADMISSIBLE REBUTTAL TESTIMONY
           CONCERNING THE IRS'S AUDIT OF THE RJM CAPITAL PLAN ............... 13

CONCLUSION .................................................................................................................. 15

## **TABLE OF AUTHORITIES**

*Cases*                                                                                               *Page(s)*


*Amusement Indus., Inc. v. Stern*,
    786 F. Supp. 2d 758 (S.D.N.Y. 2011)................................................................................5

*Carroll v. Trump*,
    No. 22-cv-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023)................2, 3, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...........................................................................................1, 4, 13

*E.E.O.C. v. Morgan Stanley & Co.*,
    324 F. Supp. 2d 451 (S.D.N.Y. 2004)................................................................................8

*Estate of Ratcliffe v. Pradera Realty Co.*,
    No. 05-cv-10272 (JFK), 2008 WL 53115 (S.D.N.Y. Jan. 2, 2008)...................................14

*Faulkner v. Nat'l Geographic Soc.*,
    576 F. Supp. 2d 609 (S.D.N.Y. 2008)..............................................................................13

*Highland Cap. Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)...........................................................................9, 10

*Highland Cap. Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)................................................................................7

*In re Lehman Bros. Sec. & ERISA Litig.*,
    No. 09-md-2017 (LAK), 2015 WL 13707447 (S.D.N.Y. Sept. 14, 2015) .....................2, 8

*Mannion v. Coors Brewing Co.*,
    No. 04-cv-1187 (LAK), 2007 WL 3340925 (S.D.N.Y. Nov. 7, 2007)..............................14

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)...........................................................................................11

*Marx & Co., Inc. v. Diners' Club Inc.*,
    550 F.2d 505 (2d Cir. 1977)...........................................................................................12

*Cases*                                                                                                                *Page(s)*

*Nat'l Coalition on Black Civic Participation v. Wohl*,
    661 F. Supp. 3d 78 (S.D.N.Y. 2023)..................................................................................9, 10

*In re Refco Inc. Sec. Litig.*,
    Nos. 07-md-1902 (JSR), 08-cv-3065 (JSR), 08-cv-3086 (JSR), 2012 WL 7007795
    (S.D.N.Y. Nov. 29, 2012) ...................................................................................................7

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..................................................................3, 9, 10, 11

*SEC v. Terraform Labs*,
    No. 23-cv-1346 (JSR), 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023)...........................13

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
    346 F. Supp. 3d 473 (S.D.N.Y. 2018)................................................................................5

*Skatteforvaltningen v. RJM Cap. Pension Plan*,
    No. 19-cv-01898 (S.D.N.Y. 2020)....................................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03-md-01570 (GBD)(SN), 2023 WL 3116763 (S.D.N.Y. Apr. 27, 2023) .................6

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)............................................................................................6

*Statutes & Other Authorities*                                                                  *Page(s)*

Federal Rule of Evidence 403...................................................................................................3

Federal Rule of Evidence 702...........................................................................................1, 4, 13

IRC Section 401(a) ...................................................................................................5, 8-11, 14

Defendants submit this memorandum of law in support of their motion ("Motion") under *Daubert v. Merrell Dow Pharms.* and Federal Rule of Evidence 702 to prohibit Marcia Wagner from testifying at trial as a rebuttal expert to Defendants' expert Frederick Reish.

## INTRODUCTION

SKAT initially identified Marcia Wagner as an expert on two very different subjects: (1) the standards applicable to the qualification and administration of pension plans, and (2) the professional standards applicable to New York attorneys. In her opening report, Wagner purported to opine not only on what those standards are, but applied them herself to the facts of this case—reaching the conclusions that every single one of the hundreds of pensions plans at issue in this litigation (the "Plans") was, in her view, not "tax qualified" under the Internal Revenue Code ("IRC"), and that one defendant violated his ethical duties as a lawyer. However, after trial was scheduled—and after a disastrous deposition in which Wagner's unfitness to opine on attorney ethics was laid bare—SKAT announced that it had withdrawn Wagner entirely as an expert on attorney professional standards.[1] SKAT also disclosed that it would not call Wagner for any purpose during its case in chief. SKAT reserved the right, however, to call Wagner as a rebuttal expert to Defendants' expert, Frederick Reish, for whom she submitted a rebuttal report.

Defendants expect Reish's trial testimony will include two principal substantive issues that will assist the jury in evaluating SKAT's claims that the Plans made false representations concerning their "qualified" status: (1) he will provide context on how the IRS (as the federal agency with the authority to determine plan qualification) in practice applies and enforces the various pension rules that SKAT has alleged were violated by the Plans and explain that, in his

---

[1] Defendants reserve the right to fully brief Wagner's unfitness to offer to any opinions on attorney professional standards—either in SKAT's case in chief or in rebuttal—if SKAT changes its mind again.

experience, the IRS does not disqualify plans for the reasons identified by SKAT; and (2) he will provide background and context concerning audits the IRS performs to evaluate, among other things, a plan's compliance with qualification standards and explain the significance of the "no-action letter" the IRS issued to one of the Plans following a comprehensive multi-year audit.[2]  As her reports and deposition testimony in this matter make plain, Wagner has no admissible rebuttal testimony to offer on either issue.  *See Carroll v. Trump,* No. 22-cv-10016 (LAK), 2023 WL 2652636, at *4 (S.D.N.Y. Mar. 27, 2023) (Kaplan, J.) (excluding rebuttal expert whose conclusions had "no reliable basis", lacked "the kind of foundation in facts, evidence, and/or experience that is demanded of expert witnesses", and were "unresponsive to the key issue on which he purportedly would be called").

*First*, Wagner's primary mode of rebuttal to Reish's opinions concerning the *IRS's administration* of the plan qualification requirements that SKAT contends were violated here is simply to assert *her own interpretation* of the relevant rules—often with citation to statute and regulation, not IRS practice—and repeat the conclusions advanced in her opening report that the Plans did not meet those requirements. This is nothing more than legal argument, and not a permissible basis for expert testimony.  *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-md-2017 (LAK), 2015 WL 13707447, at *1 (S.D.N.Y. Sept. 14, 2015) (Kaplan, J.) (excluding proposed expert testimony because it would "amount to little or nothing more than a closing argument from the witness stand by a law professor coupled with the witness's views on issues of law that properly are to be determined by the trial judge and subjects of the Court's instructions to the jury").

---

[2] Defendants will more fully explain the admissibility of this expert testimony—which stands in stark contrast to the clearly inadmissible testimony Wagner seeks to offer in rebuttal—in the event SKAT seeks to exclude Reish's expert testimony.

*Second*, many of the various laws and standards that Wagner cites in support of her contentions that the Plans were not tax qualified—such as the Employee Retirement Income Security Act of 1974 ("ERISA") and what Wagner calls "retirement industry standards"—in fact have absolutely no bearing on plan qualification.  Reliance on such irrelevant rules in Wagner's rebuttal testimony would distract from the core issues raised in Reish's testimony and would likely mislead the jury.  *See* Fed. R. Evid. 403; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (Kaplan, J.) (proposed testimony would "confuse the trier" because they introduced "opinions and rhetoric concerning … alternative and improper grounds for decision on bases other than the pertinent legal standards").

*Third*, Wagner's opinions that the Plans did not meet tax qualification requirements are also based on impermissible inferences about Defendants' intent in establishing the Plans and their sponsors, and Wagner thereby usurps the roles of counsel and factfinder.  These inferences, too, would be an impermissible basis for Wagner to rebut Reish's opinions concerning the IRS's administration of the plan qualification requirements that SKAT contends were violated.

*Fourth*, Wagner faults Reish's opinions concerning the IRS's administration of plan qualification standards on grounds that Reish does not undertake a "holistic" review of the Plans' circumstances, which she contends lead inexorably to the conclusion that these were not "true retirement plans" but rather "shams."  But this "holistic" review standard—utterly divorced from how the IRS, as the authority to determine plan qualification, actually applies the qualification requirements that SKAT alleges were violated—is not based on any objective standard or methodology and instead only Wagner's subjective beliefs about how the case should be decided.  *See Carroll*, 2023 WL 2652636, at *3 (excluding rebuttal expert who propounded his "personal opinion" without "the application of a reliable methodology").  Indeed, she admits that

that there is no "bright line test as to the circumstances under which a tax-qualified plan would be treated as a sham," and so simply applies the "standard dictionary definition" of the term, which is no basis at all for "expert" testimony.  (Ex. 3, Wagner Rebuttal Report ¶¶ 24, 29.)

*Finally*, Wagner's rebuttal to Reish's opinions explaining the significance of an extensive IRS audit of one of the Plans—after which the IRS issued a "no change" letter confirming that the plan remained qualified—is particularly defective.  The results of that audit demolish Wagner's contentions that the Plans were unqualified and support Reish's expert opinion that the IRS does not in practice disqualify plans for the reasons SKAT alleges the Plans were unqualified here.  But the best Wagner can do is offer demonstrably false assertions about the information that was available to the IRS (which she later recanted) and her own *ipse dixit* about what the IRS *should have* done.  She should not be permitted to offer that testimony to the jury here.

For these reasons, Wagner's proffered opinions purporting to rebut those of Reish do not meet the requirements of *Daubert* and Rule 702 of the Federal Rules of Evidence and must be excluded in their entirety.

## BACKGROUND

Plaintiff SKAT sues to recover dividend withholding tax refund claims that it paid to certain of the Defendants over a multi-year period from 2012 to 2015.  Certain tax-preferred investors, including U.S. pension plans, are exempt from taxes on Danish dividends.  Rule 56.1 Joint Stmt. ("JSUMF"), Dkt. 790 (Apr. 22, 2022), ¶ 22.  SKAT allows U.S. pension plans to seek reclaims of dividend withholding tax by submitting a form declaring their entitlement to a refund.  *Id.* ¶¶ 23, 177.

SKAT's claims require SKAT to prove the alleged falsity of statements made to the agency as part of the reclaim process.  *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 772 (S.D.N.Y. 2011) (fraud); *id.* at 778 (negligent misrepresentation); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 482 (S.D.N.Y. 2018) (aiding and abetting).  SKAT alleges that it was false to assert that the Plans were entitled under the treaty on double taxation between the United States and Denmark (the "Treaty") to refunds of the dividend withholding tax because the Plans must have had tax-qualified status under the Internal Revenue Code ("IRC") in order to qualify for that refund, which SKAT contends they did not have.  *See, e.g., Skatteforvaltningen v. RJM Cap. Pension Plan*, No. 19-cv-01898 (S.D.N.Y. 2020), ECF No. 60 ¶¶ 4-5, 22.

In support of its allegations that the Plans were not tax-qualified, SKAT submitted a December 31, 2021 Expert Report by Wagner (the "Wagner Report"), in which Wagner purported to opine "on the standards applicable to the qualification and administration of 401(k) retirement plans, and on whether [the Plans] met those standards."  (Ex. 2, Wagner Report ¶ 1.) The Wagner Report is essentially a legal brief: it sets forth various pension plan standards— some of which relate to plan qualification and some of which do not—with citations to IRC provisions and related regulations, and then asserts, often in conclusory fashion, that each of the Plans did not meet those standards.

Defendants meanwhile submitted the Expert Report of Frederick Reish (the "Reish Report"), opining on "the practices of the Internal Revenue Service ('IRS') as the agency with the authority to determine whether a pension plan is qualified under section 401(a) of the Internal Revenue Code ('IRC' or the 'Code'), and the approach of the federal regulators in their oversight of pension plans." (Ex. 6, Reish Report ¶ 1.)  Among other issues, Reish explains that the IRS is the federal agency with the authority for determining plan qualification and describes how the

IRS monitors and enforces compliance (*id*. ¶¶ 23-35); provides background concerning IRS audits and the significance of a "no-change" letter issued to one of the Plans at the conclusion of a multi-year audit (*id*. ¶¶ 27-29; 41-45); and gives context on how the IRS in practice applies and enforces the various pension rules that SKAT has alleged were violated by the Plans, concluding that, in his experience, the IRS does not disqualify plans for the reasons identified by SKAT. (*Id*. ¶¶ 50-57)

Each expert submitted a February 1, 2022 rebuttal report responding to the other (the Wagner rebuttal of Reish: the "Rebuttal Report"), and a February 28, 2022 reply report (the Wagner reply: the "Reply Report").   Reish was deposed by SKAT on March 25, 2022, and Wagner was deposed by Defendants on April 14, 2022.

## ARGUMENT

### I.    WAGNER CANNOT OFFER ANY ADMISSIBLE REBUTTAL TESTIMONY CONCERNING THE IRS'S ADMINISTRATION OF PLAN QUALIFICATION REQUIREMENTS

#### A.  Wagner's Contentions that the Plans Were Not Tax Qualified Are Inadmissible Legal Conclusions

Wagner cannot rebut Reish' testimony concerning the IRS's application and enforcement of the plan qualification requirements that SKAT contends were violated with her own opinions that the plans were not tax qualified because her opinions—unlike Reish's—are no more than bare legal conclusions unfit for expert testimony.  Expert testimony "encompassing an ultimate legal conclusion based upon the facts of the case is not [admissible]".  *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991).  Expert opinions that "speak to Defendants' liability, rather than adding helpful context or analysis" are inadmissible and "usurp the jury's function to apply the law to the facts."  *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-01570 (GBD)(SN), 2023 WL 3116763, at *10 (S.D.N.Y. Apr. 27, 2023) (internal quotation marks and citation

omitted).  Relatedly, "[e]xperts must provide something more than a lawyer's argument to be helpful."  *In re Refco Inc. Sec. Litig.*, Nos. 07-md-1902 (JSR), 08-cv-3065 (JSR), 08-cv-3086 (JSR), 2012 WL 7007795, at *5 (S.D.N.Y. Nov. 29, 2012).  Wagner's Reports are littered with precisely the kinds of legal conclusions and arguments that courts regularly exclude, which cannot form a basis for Wagner's rebuttal testimony

The Wagner Report, which outlines and purports to apply the requirements for a pension plan to be tax-qualified under the IRC, (*see* Ex. 2, Wagner Report ¶¶ 92-104), is little more than a succession of recitations of the law that impermissibly "track the language of the statute or the law that the defendants are accused of violating," *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 179 (S.D.N.Y. 2008), which Wagner then applies to the facts of this case in the same way that counsel would do in a legal brief.  For example, in sections concerning the IRC's "exclusive benefit" requirement, Wagner begins with her own assertions about what the "exclusive benefit" rule requires—based solely on selective citations to IRC provisions and regulations (Ex. 2, Wagner Report ¶¶ 93-96)—and then in a summary four-paragraph "analysis" applies that requirement to the Plans, declaring that "[i]t is clear from these facts, that the Plans were created to participate in the scheme and that they were created mostly for the benefit of" various third parties, and that this constituted a "violation of the Exclusive Benefit Rule."  (Ex. 2, Wagner Report ¶¶ 125-28.)  These types of opinions are clearly inadmissible.  *See Refco*, 2012 WL 7007795, at *5.

Wagner carries over this same impermissible practice of advancing (often incorrect) legal conclusions in the guise of expert analysis in her Rebuttal Report.  For example, in her response to Reish's opinion concerning how, in his experience, the IRS in practice evaluates and enforces the so-called "permanency" requirement that SKAT alleges the Plans violated (*see* Ex. 6, Reish

Report ¶¶ 55-55.2), Wagner offers a legal argument, citing an IRS revenue ruling for the proposition that if a plan is terminated within a few years of establishment, "the termination must be due to unanticipated business reasons of the plan sponsor," and declaring that "[t]he vast majority of the Plans in the case were not permanent from day one" because the Plans' sponsors (she alleges) stopped contributing to the Plans for reasons not related to the Plans' sponsors' business. (Ex. 3, Wagner Rebuttal Report ¶ 22.) Putting aside that this argument is simply wrong as a matter of law,[3] it is akin to a legal brief where counsel seeks to apply holdings from specific cases and employs a methodology that is wholly inappropriate for expert rebuttal testimony. *See E.E.O.C. v. Morgan Stanley & Co*., 324 F. Supp. 2d 451, 467 (S.D.N.Y. 2004) (excluding expert whose opinions "are overly couched in legal language and reach legal conclusions").

Wagner cannot be permitted to offer these bare recitations of the law in rebuttal to Reish's testimony concerning IRS practice. *See In re Lehman Bros.*, 2015 WL 13707447, at *1 (excluding proposed expert testimony that would "amount to little or nothing more than a closing argument from the witness stand").

### B. Wagner's Reliance on Irrelevant Legal and Industry Standards Would Mislead the Jury

Wagner's opinions concerning plan qualification are also inadmissible as a rebuttal to Reish because most of the authority on which she relies is not in fact relevant to the issue of whether the Plans met the requirements for tax qualification under IRC section 401(a), which she acknowledges is the only authority dictating the standards for such qualification. (*See* Ex. 2, Wagner Report ¶ 88 ("requirements of tax-exempt status" are "set forth in section 401(a) of the

---

[3] The IRS specifies a number of permitted reasons for terminating a plan other than "unanticipated business reasons of the plan sponsor," including "[e]mployee dissatisfaction with the plan." Internal Revenue Manual 7.12.1.3(6) (last updated Nov. 8, 2023).

Code").)  Instead, Wagner's Reports include lengthy discussions of laws and standards that fall outside IRC 401(a), including ERISA, (*see, e.g.,* Ex. 2, Wagner Report ¶ 139; Ex. 3, Wagner Rebuttal Report ¶ 14 n. 15), other U.S. legal obligations, (*see, e.g.,* Ex. 2, Wagner Report ¶¶ 19, 21; Ex. 3, Wagner Rebuttal Report ¶ 16, 28), and "standards generally accepted in the retirement industry."  (*See, e.g.,* Ex. 2, Wagner Report ¶ 88; Ex. 3. Wagner Rebuttal Report ¶ 17.) Wagner's testimony on these irrelevant topics would likely "confuse the trier" because they introduce her "opinions and rhetoric concerning … alternative and improper grounds for decision on bases other than the pertinent legal standards."  *In re Rezulin*, 309 F. Supp. 2d at 545.

Wagner's reliance on ERISA is "wholly inappropriate" and would "mislead the jury". *Nat'l Coalition on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 105 (S.D.N.Y. 2023) (striking expert opinions in civil voting rights case where expert had applied state criminal law standards to the facts at issue); *see also Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 473 (S.D.N.Y. 2005) (where plaintiff brought claims for breach of contract and tortious interference with contractual and business relations, expert testimony on whether a federal prosecutor would investigate defendants' purported violation of securities laws was inadmissible).  There are approximately 300 references to ERISA in the Wagner Report alone, but Wagner herself has conceded that its rules do not determine whether the Plans, which are solo plans that do not involve any employer-employee relationship implicating ERISA, are tax qualified.  (*See, e.g.,* Ex. 2, Wagner Report ¶ 91 ("these solo plans are not expressly subject to ERISA's requirements").)  Even for Plans whose documents include ERISA language, Wagner acknowledges that "the ERISA rules included in the document" would only be "enforceable as a *contractual matter or under state fiduciary law*."  (Ex. 4, Wagner Reply Report ¶ 45 (emphasis

added).)  Nowhere does Wagner state, nor is it the case, that contractual language or state fiduciary law have any effect on tax qualification under the IRC.

Similarly, Wagner's opinions on whether the Plans complied with "other legal obligations" (Ex. 2, Wagner Report ¶ 18), such as the "prohibited transaction rule" (*id.* ¶¶ 20, 108-115; Ex. 3, Wagner Rebuttal Report ¶ 16) and books and records requirements (Ex. 2, Wagner Report ¶¶ 21, 116-18; Ex. 3, Wagner Rebuttal Report ¶ 28), are irrelevant and inadmissible.  *See Wohl*, 661 F. Supp. 3d at 105; *Highland*, 379 F. Supp. 2d at 473.  As with the ERISA rules, none of the "legal obligations" flagged by Wagner affect plan qualification under IRC 401(a).  Wagner admits that she "did not suggest that a prohibited transaction necessarily results in the disqualification of a plan."  (Ex. 3, Wagner Rebuttal Report ¶ 16.)  Wagner also concedes that recordkeeping requirements supposedly violated by the Plans would not affect the Plan's tax qualification status under the IRC.  (Ex. 5, Wagner Tr. 147:24-148:6.)  Wagner's other arguments concerning the location of custody and plan assets (Ex. 2, Wagner Report ¶¶ 19, 106-07) and regulatory filing requirements (*id.* ¶ 119) are inadmissible for the same reason.  Plan qualification requirements are exclusively set forth in IRC 401(a), (*id.* ¶ 88), and testimony based on an analysis arising from other laws must be excluded for lack of "a valid connection to the pertinent inquiry."  *Highland*, 379 F. Supp. 2d at 473.

Wagner also relies in large part on purported violations of "retirement industry standards" which, again, do not affect whether the Plans were qualified under the IRC and are irrelevant. *Rezulin*, 309 F. Supp. 2d at 544, is illustrative.  There, this Court excluded expert testimony on ethical standards in a product liability case because "expert opinion as to the ethical character of [defendants'] actions simply is not relevant to these lawsuits" and "[t]he principal issues here are whether the defendants breached their legal duties to the plaintiffs in the manufacturing, labeling

and marketing or Rezulin and, if so, whether any such breaches were proximate causes of injury". *Id.* Wagner's opinion that "the Plans did not satisfy … fiduciary standards generally accepted in the retirement industry" (Ex. 2, Wagner Report ¶ 88; *see also* Ex. 3, Wagner Rebuttal Report ¶ 17) is similarly unrelated to the issues in this case and unhelpful to the jury, especially when Wagner herself acknowledged that inconsistency with retirement industry standards would not be a basis for plan disqualification and that qualification depends only on the requirements set forth in IRC 401(a)[4]. (Ex. 5, Wagner Tr. 218:4-21.)

### C. Wagner's Inferential Opinions About Defendants' Motivations Are an Improper Basis for Rebuttal Testimony.

"Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *Rezulin*, 309 F. Supp. 2d at 547. Nevertheless, Wagner's opinions that the Plans were not tax qualified rely in part on speculation concerning Defendants' motivations behind establishing the Plans, improperly usurping the roles of *both* advocate and factfinder. This, too, is an impermissible basis for any rebuttal testimony by Wagner. *See id.* at 546 ("plaintiffs' experts propose improperly to assume the role of advocates for the plaintiffs' case by arguing as to the intent or motives underlying the conduct of Warner–Lambert or others"); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder").

For example, Wagner presumes that Defendants' decision to establish LLCs was not "based on any legitimate intention to operate separate and distinct businesses." (Ex. 4, Wagner Reply Report ¶ 21.) Wagner also makes various inferences about Defendants' motivations in establishing the Plans, including that "the Plans in this case … do not appear to have been

---

[4] Wagner also claimed that "commingling" was a factor in determining tax qualification, but there is no freestanding prohibition against commingling in the IRC. The other factors she named (exclusive benefit, permanence, and funding) *are* requirements for tax qualification under IRC 401(a).

established with the intent to provide retirement benefits but to facilitate the transaction", (*id.* ¶ 29), and that "self-interest motivated the individual Defendants to disregard fundamental standards related to the basic purpose of their Plans." (*Id.* ¶ 46.)  In one instance, Wagner concedes that she does not believe "it is an expert's role to opine on a defendant's intent," but offers that exact type of opinion in the same sentence: "that there is no reason to believe that the Defendants intended to establish permanent plans". (*Id.* ¶ 30.)  Fully aware that it is improper to make inferences about Defendants' intent, (*see id.*; Ex. 5, Wagner Tr. 102:22-25, 103:6-7), Wagner doubled down on those very opinions.  (*See id.* at 104:9-21, 105:4-5, 105:19-20.)  She should not be permitted to repeat them at trial.

### D.  Wagner's Opinion that the Plans Were "Shams" Provides No Basis for Rebuttal Testimony

Aside from her various arguments that Reish's opinions concerning IRS practice are unreliable because they do not conform to her interpretation of pension qualification standards, Wagner also faults Reish for not conducting a "holistic" review of the facts and circumstances of these Plans, which she says would show that they "were no more than unsatisfactory imitations" of actual plans—or, in a word, "shams." (Ex. 3, Wagner Rebuttal Report ¶¶ 26, 28-29).  This is a plainly impermissible basis for expert rebuttal testimony because, though couched in vaguely technical terms to give it the appearance of reliability, it is in fact based on Wagner's subjective notion of what makes a retirement plan "genuine" as opposed to a "sham."  *See Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) (expert testimony excluded that "amounts to no more than an expression of the ([expert] witness') general belief as to how the case should be decided") (citation and quotation marks omitted); *see also Carroll*, 2023 WL 2652636, at *3 (excluding rebuttal expert who propounded his "personal opinion" without "the application of a reliable methodology").

The only definition of a "sham" plan that Wagner ever provides is the "standard dictionary definition[]" of "something that is phony, a ruse, a fraud; not what is displayed; anything that is not what it purports to be; something false, fake, or fictitious that only appears to be genuine." (Ex. 3, Wagner Rebuttal Report ¶ 24). Wagner never contends that the IRS has adopted this methodology, or even that it has ever disqualified a plan on the basis that it was a "sham." Accordingly, the basis for Wagner's conclusion that the Plans were not "genuine" "boils down to her own '*ipse dixit*,' which is plainly insufficient for admission of her testimony under *Daubert* and Rule 702." *SEC v. Terraform Labs*, No. 23-cv-1346 (JSR), 2023 WL 8944860, at *12 (S.D.N.Y. Dec. 28, 2023).

## II.   WAGNER CANNOT OFFER ANY ADMISSIBLE REBUTTAL TESTIMONY CONCERNING THE IRS'S AUDIT OF THE RJM CAPITAL PLAN

Defendants expect that Reish's testimony will include an explanation of the significance of a "no-action letter" the IRS issued to the RJM Capital Plan (the "RJM Plan") following a comprehensive multi-year audit, indicating that the plan remained qualified and no corrective action was required. JSUMF ¶¶ 96-102. Wagner's attempts in her Reports to rebut those explanations are based on factual inaccuracies and speculative assertions that are "wholly unsupported by evidence," and therefore inadmissible as rebuttal testimony. *Terraform Labs*, 2023 WL 8944860, at *11; *see also Faulkner v. Nat'l Geographic Soc.*, 576 F. Supp. 2d 609, 619 (S.D.N.Y. 2008) (Kaplan, J.) (excluding expert testimony that had "no basis", "rest[ed] on nothing", and was "grounded only in assumptions, not in facts").

*First,* Wagner suggests that, because the audit concerned "the accurate reporting of the RJM Plan's assets on IRS Forms 5500-EZ for the period 2012-2016", the IRS would not have been focused on examining tax qualification. (Ex. 3, Wagner Rebuttal Report ¶¶ 9-10.) Far from relying on any acceptable methodology or expertise, her opinion directly contradicts the

Internal Revenue Manual ("IRM"), which provides that in this type of examination, the IRS *specifically evaluates* if a retirement plan is qualified under IRC 401. *See* IRM Section 4.71.21.1.1 (last updated July 15, 2019).

      *Second*, Wagner was forced to retract her statement in her Rebuttal Report that she had "not seen anything in the record indicating that [the RJM Plan's sponsor] disclosed to the IRS examiner the RJM Plan's massive purchases of Danish stocks". (Ex. 3, Wagner Rebuttal Report ¶ 10.) Wagner posited that the IRS had "little reason" to "question the tax-qualified status of the RJM Plan" due to the "limited information it had". (*Id.*) However, during her deposition Wagner conceded that in fact, the RJM Plan *did* disclose the purchases of Danish stock to the IRS. (Ex. 5, Wagner Tr. 121:10-122:12 (admitting that "at some point after I believe [Wagner Rebuttal Report ¶ 10] was written I did see that type of disclosure"), 123:2-23 ("Q. And the information showed that the trading in Danish stocks of the RJM plan was disclosed to the IRS. Right? A. That was information that was eventually provided to me, yes.").)

      *Third*, in addition to offering conclusions that are flatly contradicted by evidence, Wagner engages in impermissible "speculative hypotheses" predicting what the IRS *should have* done if it had certain information, which flies in the face of evidence showing what the IRS *did* do when it received that exact information. *Mannion v. Coors Brewing Co.*, No. 04-cv-1187 (LAK), 2007 WL 3340925, at *5 (S.D.N.Y. Nov. 7, 2007) (Kaplan, J.) (excluding expert testimony consisting of expert's "best guess" with respect to an issue); *Estate of Ratcliffe v. Pradera Realty Co.*, No. 05-cv-10272 (JFK), 2008 WL 53115, at *5 (S.D.N.Y. Jan. 2, 2008) (citation omitted) (in personal injury action, excluding expert report stating that decedent tried to grasp stair handrail because this conclusion was "guesswork" supported by "no evidence or data whatsoever"). For instance, Wagner contends: "Even *if* the IRS audit had considered all of the tax qualification

issues raised in my Initial Expert Report and confirmed the RJM Plan's qualified status, or *if* the Plan were to receive such a confirmation in the future, in my experience, the determination *would be meaningless* and *should be overturned* once the IRS became aware of the larger picture of the Plan's participation in the Solo scheme." (Ex. 3, Wagner Rebuttal Report ¶ 11 (emphasis added).) This claim is baseless and conclusory. Again, it ignores that the IRS considered tax qualification issues and received information about the other Plans during its audit. It is undisputed that none of the Plans was ever disqualified by the IRS. Wagner's conclusion demonstrates that she is not truly commenting on what the IRS would do in certain circumstances, but rather offering her own impermissible views on the facts. An argument that, even if the IRS had considered *every issue* Wagner raised and confirmed the RJM Plan's qualified status, the outcome of that audit should be considered meaningless, amounts to a statement that Wagner's opinion on tax qualification should supersede that of the IRS.

Wagner should not be permitted to offer these opinions at trial.

## **CONCLUSION**

For the reasons above, the Court should grant the Motion, preclude Wagner from offering rebuttal testimony at trial, and grant such other relief as the Court deems just and proper.

15

Dated: New York, New York
June 21, 2024

Respectfully submitted,

DEWEY PEGNO & KRAMARSKY LLP

By:    /s/ Thomas E.L. Dewey
Thomas E.L. Dewey
777 Third Avenue – 29th Floor
New York, New York 10017
Tel.: (212) 943-9000
Fax: (212) 943-4325
tdewey@dpklaw.com

KEKER, VAN NEST & PETERS LLP

By:    /s/ Elliot R. Peters
Elliot R. Peters
Julia L. Allen
633 Battery Street
San Francisco, CA 94111
Tel.: (415) 962-7188
epeters@keker.com

*Attorneys for Defendant Michael Ben-Jacob*

KOSTELANETZ LLP

By:    /s/ Sharon L. McCarthy
Sharon L. McCarthy
7 World Trade Center, 34th Floor
New York, New York 10007
Tel:    (212) 808-8100
Fax:    (212) 808-8108
smccarthy@kflaw.com

*Attorneys for Defendants John van Merkensteijn,III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan,*

16

*Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

WILMER CUTLER PICKERING HALE AND DORR LLP

By:    /s/ Alan E. Schoenfeld
  Alan E. Schoenfeld
  7 World Trade Center250 Greenwich Street
  New York, NY 10007
  Telephone: (212) 230-8800
  alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM CapitalPension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

KATTEN MUCHIN ROSENMAN LLP

By:    /s/ David L. Goldberg
  David L. Goldberg
  Michael M. Rosensaft

  50 Rockefeller Plaza
  New York, NY 10020
  Tel.: (212) 940-8800
  Fax: (212) 940-8776
  david.goldberg@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*

17