UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to case nos.:<br><br>18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO EXCLUDE THE PROPOSED
<u>TESTIMONY OF STEPHEN E. SHAY</u>**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

    I.    Mr. Shay's testimony on U.S. tax law and policies is irrelevant, misleading, and unfairly prejudicial. ....................................................................... 6

    II.    Mr. Shay's testimony on Denmark's withholding tax system is unhelpful to the jury. ................................................................................................................. 7

    III.    Mr. Shay's testimony on collection assistance and the cause of SKAT's "revenue loss" are irrelevant, unhelpful, and unfairly prejudicial. ........................... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023) ........................ 3

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993) ...................... 5, 6, 9

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008) ........................... 8

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ............................................................. 5

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................ 5, 7, 8

*Sec. & Exch. Comm'n v. Mudd*, 11 Civ. 9202 (PAC), 2016 WL 2593980 (S.D.N.Y. May 4, 2016) ........................................................................................................ 7

*Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 23-cv-1346 (JSR), 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) .............................................................................. 9

*Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................ 8

*In re SKAT Tax Refund Scheme Litig*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019) ........................ 2, 3, 9

*United States v. Gatto*, 17-cr-0686 (LAK), 2019 WL 266944 (S.D.N.Y. Jan. 17, 2019) ........................................................................................................................................ 7

*In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230 (S.D.N.Y. 2007) ....................................... 5

**Statutes and Rules**

Federal Rule of Evidence 403 ................................................................................................ 5, 6, 9

Federal Rule of Evidence 702 ...................................................................................................... 5, 6

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in support of its motion to exclude the proposed expert testimony of Stephen E. Shay pursuant to Federal Rules of Evidence 403 and 702.

## PRELIMINARY STATEMENT

Mr. Shay's proposed testimony is nothing but background and context for his argument that SKAT's claims implicate the separation of powers rationale underlying the revenue rule. Mr. Shay's almost 70-page expert report is an extensive policy argument, from the perspective of a former U.S. senior international tax official, that permitting SKAT's claims to proceed would undermine U.S. international tax policy and tax treaty negotiations. But the Court already rejected the arguments Mr. Shay advances when defendants made them at the motion to dismiss and summary judgment stages of these actions.

Nonetheless, defendants proffer parts of the background and context Mr. Shay provided in his report, stripping out the inadmissible conclusions for which they provide the background and context. Defendants propose that Mr. Shay should explain to the jury how the U.S. collects and administers dividend withholding tax; the international tax enforcement polices underlying U.S. tax law; and U.S. legislative responses to dividend tax avoidance schemes. But neither U.S. tax law nor policies have any relevance to SKAT's claims that defendants made fraudulent claims for tax supposedly withheld from Danish dividends. Mr. Shay's proposed testimony on such matters would only distract, confuse, and mislead the jury.

Aside from U.S. tax law and policy, defendants proffer Mr. Shay's description of the basics of Denmark's administration of withholding tax refunds, *i.e.*, that Danish companies withhold tax on dividends and pay it to SKAT, eligible shareholders may apply to SKAT for a refund, and SKAT determines whether to issue the refund. But the jury will not need expert testimony to understand this background to SKAT's claims, none of which is disputed. And Mr.

Shay's overview of these background facts is untethered to any of his opinions defendants proffer.

Finally, Mr. Shay's opinion that it was SKAT's responsibility to "get the tax refund right" is so vague it is meaningless. His opinion that SKAT's only recourse to recover a fraudulent refund claim is a revenue claim under the U.S-Denmark tax treaty is contrary to the Court's previous decisions. And Mr. Shay's opinion that some unspecified Danish investigation "likely will" reach certain conclusions regarding the causes of "Denmark's revenue loss" is just a vague and unsupported guess.

## BACKGROUND

Defendants retained Mr. Shay, a lawyer and former "senior tax official in the U.S. Treasury Office of Tax Policy," to "provide context and background on the role the 'revenue rule' plays in the design and implementation of U.S. international tax law and treaty policy." (Declaration of Marc A. Weinstein, dated June 21, 2024 ("Weinstein Decl."), Ex. 1 ("Shay Report") ¶ 1.) In his almost 70-page expert report, Mr. Shay argues, contrary to the Court's previous opinions, that SKAT's claims "implicate the separation of powers justification for the revenue rule," *i.e.*, permitting them to proceed "would affect U.S. negotiating positions and complicate the Executive Branch's ability to negotiate and complete [tax] treaties that would be ratified by Congress," and "also implicate[] the second justification for the revenue rule," *i.e.*, the "risk that a court would intrude on Danish sovereignty in applying Danish tax law." (*Id.* ¶ 96.)

Contrary to the Court's previous holding that SKAT's claims "plainly do not seek direct enforcement of Danish tax law" because they are not "seeking to recover lost tax revenue," *In re SKAT Tax Refund Scheme Litig*, 356 F. Supp. 3d 300, 311 (S.D.N.Y. 2019), Mr. Shay opines that "there is no relevant distinction between a sovereign's demand for repayment of an inappropriate tax refund and a sovereign's claim for collection of unpaid tax," so permitting SKAT's claims to

2

proceed would amount to judicial tax revenue "collection assistance." (Shay Report ¶¶ 18.1, 18.2.) And the Court previously rejected the same separation of powers arguments Mr. Shay makes concerning interference with the Legislative and Executive Branches' authority over international tax policy and the U.S.'s ability to negotiate collection assistance provisions in tax treaties, (*id.* ¶ 18.3, 18.4), as "plainly" "irrelevant" because "SKAT is not seeking to collect taxes." *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at *10 (S.D.N.Y. Nov. 20, 2023) (internal quotation omitted).[1]

Along the way to offering these improper (and incorrect) legal conclusions, Mr. Shay's report provides an overview of policies underlying U.S. tax law and international tax enforcement, the U.S. and Danish systems for collecting and administering dividend withholding tax, and provisions for tax collection assistance in bilateral tax treaties between the U.S. and other countries. (Shay Report §§ III(A)-(E).) In doing so, Mr. Shay offers no opinions of any relevance to any issue in this case bearing on the revenue rule or otherwise, *e.g.*, whether "the Solo Custodians from which the defendants purportedly purchased the shares owned the shares in the first place" or whether "Danish tax law ascribes any meaning to 'beneficial ownership.'" *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *8-9. Nor could he.

---

1. Likewise, Mr. Shay's argument that the Court would "intrud[e] on Denmark's sovereignty" by "adjudicating SKAT's case," (Shay Report ¶ 18.5), ignores the Court's holding that "even if there were a Danish tax law or laws concerning beneficial ownership, the Court's consideration of those laws in determining whether the defendants owned the shares in any respect would not necessarily implicate the revenue rule." *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d at 316. And Mr. Shay simply assumes that Danish tax law governs the question of beneficial ownership, and the Court would need to apply any such Danish tax laws in adjudicating SKAT's claims. *See In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *9 ("If the Solo Custodians never owned the shares . . . the Court might not need to reach the question of whether the defendants beneficially owned the shares, under Danish tax law or otherwise.").

3

Nonetheless, to try to salvage his testimony, defendants proffer discrete paragraphs of Mr. Shay's report in which he provided the context for his revenue rule conclusions, divorced from those conclusions themselves. (*See, e.g.*, Weinstein Decl. Ex. 2 at 15 (identifying Shay Report ¶¶ 3-15, 17.2, 37, 38, 43.2, 43.3, 47-49, 50.1-50.5, 51-53, 55, 56, 58 but not 58.3).) Setting aside his qualifications, Mr. Shay's proposed testimony concerns almost exclusively U.S. tax law and policy—how the U.S. collects and enforces withholding tax on U.S. dividends, U.S. international tax policies, and U.S. legislative responses to domestic dividend withholding tax avoidance—all to illustrate his argument that SKAT's claims implicate the separation of powers justification for the revenue rule. (Shay Report ¶¶ 17.2, 37, 38, 43.2, 43.3, 50.1-50.5, 51-53, 55, 56.)

Beyond that, defendants proffer Mr. Shay's testimony on just three topics or opinions. First, a high-level description of how Denmark administers dividend withholding tax—specifically that, in contrast to the U.S. "relief at source system," Denmark collects withholding tax on dividends paid to nonresidents directly from withholding agents (*e.g.*, dividend issuers) and nonresidents may claim treaty-protected amounts as refunds by providing documentation to the taxing authority. (*Id.* ¶¶ 17.2, 49, 58.) Second, Mr. Shay's opinion that "[u]nder a tax reclaim system it is the responsibility of the revenue authority, in this case SKAT, to get the tax refund right" and "recourse" for incorrect refunds should be "collection assistance under a treaty or other international agreement." (*Id.* ¶ 58.) And third, Mr. Shay's opinion that the "reasons for Denmark's revenue loss in this case should await the outcome of ongoing investigations and review in Denmark," which "likely" will find "multiple causes, including a combination of failures to remedy defects in substantive tax law provisions addressing equity lending and

4

derivatives, as well as failures to design or implement basic financial controls and disciplines in making tax refunds." (*Id.* ¶ 49 n.107.)

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert witness "may testify in the form of an opinion or otherwise" only if, in relevant part, the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 therefore requires courts to act as gatekeepers, ensuring, among other things, that expert testimony "is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The assistance or helpfulness requirement in Rule 702 is "akin to the relevance requirement of Rule 401," but it "goes beyond" that "because it also requires expert testimony to have a valid connection to the pertinent inquiry." *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[1] (Joseph M. McLaughlin ed., 2d ed. 1997)). Defendants, as the parties seeking to "present[]" Mr. Shay's testimony, bear "the burden of proving" its "admissibility." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (S.D.N.Y. 2007).

Even if expert testimony is otherwise admissible under Rule 702, it may still be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues," or "misleading the jury." Fed. R. Evid. 403. Rule 403 is "uniquely important . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," so the Court "in weighing possible

prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595, 113 S. Ct. at 2798.

## ARGUMENT

**I.   Mr. Shay's testimony on U.S. tax law and policies is irrelevant, misleading, and unfairly prejudicial.**

Mr. Shay's proposed testimony consists almost entirely of "background" on the U.S. withholding tax system, its underlying policies, and certain U.S. legislative responses to tax avoidance provided as "context" for his plainly inadmissible revenue rule opinions that defendants do not proffer. (Shay Report ¶¶ 17.2, 37, 38, 43.2, 43.3, 50.1-50.5, 51-53, 55, 56.) The proposed testimony is inadmissible because it would not help the jury in understanding the evidence or determining any fact at issue. *See* Fed. R. Evid. 702.

As Mr. Shay stated in his report, the purpose of this testimony was "to assist the Court in its assessment of how entertaining" SKAT's claims "for return of tax refunds would intersect with policies underlying the design of U.S. international tax law governing the administration and enforcement of tax on items of taxable income paid to nonresidents," *i.e.*, to support defendants' arguments that separation of powers concerns justify applying the revenue rule to bar SKAT's claims. (Shay Report ¶ 2, 2.1.) Such legal arguments previously rejected by the Court have nothing to do with any fact or issue the jury will decide at trial.

For instance, that "[t]ax sovereigns take different policy-based approaches to the design of their tax administration and enforcement systems" and that the U.S., in contrast to Denmark, has a "relief at source system" that "obviate[es] the need for the nonresident to make a claim for a tax refund to the taxing authority," (*id.* ¶ 17.2(i), (iii)), has no bearing on whether the defendants' tax refund claims were, as SKAT claims, fraudulent or whether as, defendants contend, the defendant plans were entitled to the refunds. Nor is it at all relevant to such issues if

6

"[f]rom a policy perspective, revenue collection and revenue protection through recovery of incorrect tax refunds cannot be de-linked in a functioning tax system." (*Id.* ¶ 43.2.) The same is true concerning U.S. legislative responses to "tax enforcement difficulties presented by stock lending and equity trading strategies." (*Id.* ¶ 51.)

And not only is any such testimony "entirely irrelevant" to the jury's considerations, its only purpose would be to "distract[]" the "jurors and . . . encourage[e] them to approach the[] issues from an improper legal framework." *United States v. Gatto*, 17-cr-0686 (LAK), 2019 WL 266944, at *10 (S.D.N.Y. Jan. 17, 2019), *aff'd*, 986 F.3d 104 (2d Cir. 2021). For instance, Mr. Shay's proposed testimony may distract the jury's focus onto issues of tax policy, confuse the jury into thinking SKAT's claims are for the recovery of unpaid taxes, and invite a verdict for defendants not because SKAT failed to prove its claims, but because SKAT's losses are the consequence of Denmark structuring its withholding tax reclaim system in a manner different than the United States chooses to do.

**II.        Mr. Shay's testimony on Denmark's withholding tax system is unhelpful to the jury.**

Mr. Shay's proffered testimony on Denmark's administration of dividend withholding tax refund claims describes just three undisputed aspects—that Danish companies issuing dividends pay withholding tax directly to SKAT, that dividend recipients may claim refunds from SKAT, and that SKAT determines whether to issue the claimed refund. (Shay Report ¶¶ 17.2, 49, 58.)

There is no need for Mr. Shay's testimony on these basic facts. The jury will be perfectly capable of understanding them without expert testimony. *See In re Rezulin*, 309 F. Supp. 2d at 541 (the requirement that "expert testimony be directed to 'scientific, technical or specialized' knowledge" "ensures that expert witnesses will not testify about 'lay matters which a jury is capable of understanding and deciding without the expert's help'" (internal citations omitted)). And furthermore, none of them is disputed. *See Sec. & Exch. Comm'n v. Mudd*, 11 Civ. 9202

7

(PAC), 2016 WL 2593980, at *7 (S.D.N.Y. May 4, 2016) ("sections of [expert] report" were "inadmissible because th[e] fact is not in dispute"). For example, the parties agreed to each of these facts in their joint statement of undisputed facts in support of their summary judgment motions. (Joint Rule 56.1 Statement, ECF No. 790, ¶¶ 18, 19, 22, 23.)

And because his revenue rule opinions are inadmissible (and have not been proffered by defendants), Mr. Shay's recitation of these "background" facts untethered to any expert opinions he is offering is inadmissible for that reason too. *See Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187-88 (S.D.N.Y. 2008) (precluding experts from "offering a recitation of the facts;" "an expert's factual narrative is unnecessary"). To the extent defendants intend for him to "[a]ct[] simply as a narrator of the facts" of Denmark's tax withholding system, Mr. Shay's proposed testimony "does not convey opinions based on [his] knowledge and expertise" and "may easily invade the province of the jury." *Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013).

### III. Mr. Shay's testimony on collection assistance and the cause of SKAT's "revenue loss" are irrelevant, unhelpful, and unfairly prejudicial.

Finally, Mr. Shay's opinion that tax authorities should "get the tax refund right," (Shay Report ¶ 58.1), articulates nothing more than that tax authorities should attempt not to err, an opinion "so vague as to be unhelpful to a fact-finder." *In re Rezulin*, 309 F. Supp. 2d at 543 (internal quotation omitted). To the extent it is meant to be read in conjunction with his opinion in the following sub-paragraph of his report that "recourse" for incorrectly refunded taxes "is collection assistance under a treaty or other international agreement," (Shay Report ¶ 58.2), both are irrelevant because, as the Court previously held, SKAT's claims "do not seek to collect tax

8

owed by the defendants and covered by [a] treaty." *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d at 320.[2]

Mr. Shay's opinion that some unspecified "ongoing investigations and review in Denmark" will "likely" find that SKAT's losses from defendants' fraud were caused by "failures to remedy defects in substantive tax law provisions addressing equity lending and derivatives" and "to design or implement basic financial controls and disciplines in making tax refunds," (Shay Report ¶ 49 n.107), are "speculative" and "conjectural." *See Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 23-cv-1346 (JSR), 2023 WL 8944860, at *11 (S.D.N.Y. Dec. 28, 2023) (internal quotation omitted). Mr. Shay should not be permitted to testify as to what he believes other investigations and reviews "likely will" determine to be the cause of SKAT's damages. *Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation."). Nor should Mr. Shay be permitted to testify that determination of SKAT's claims "should await the outcome of" whatever "ongoing investigations and review[s]" to which he is referring. (Shay Report ¶ 49 n.107.)

And even assuming any of these opinions had any relevance, Mr. Shay's testimony still should be excluded under Rule 403 because any minimal probative value is outweighed by the dangers of confusing and misleading the jury into thinking that the U.S-Denmark tax treaty precludes SKAT's claims or that SKAT's losses were caused by Denmark's "substantive tax law" or system for administering withholding tax refund claims. His opinions would, in essence, suggest to the jury that the Court erroneously permitted SKAT's claims to proceed to trial.

---

2. Like the rest of his proposed testimony, Mr. Shay's opinions concerning the tax authority's responsibility to get the tax refund right and recourse being limited to revenue claims under tax treaties are plucked from his argument that allowing SKAT to pursue its claims outside the treaty process would raise the sort of separation of powers concerns underlying the revenue rule. (*See* Shay Report ¶¶ 58.3-60.)

9

**CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court grant its motion to exclude Mr. Shay's proposed expert testimony.

| | |
|---|---|
| Dated: New York, New York<br>June 21, 2024 | HUGHES HUBBARD & REED LLP<br><br>By: /s/ Marc A. Weinstein<br>William R. Maguire<br>Marc A. Weinstein<br>Neil J. Oxford<br>Dustin P. Smith<br>Gregory C. Farrell<br>One Battery Park Plaza<br>New York, New York 10004-1482<br>Telephone: (212) 837-6000<br>Fax: (212) 422-4726<br>bill.maguire@hugheshubbard.com<br>marc.weinstein@hugheshubbard.com<br>neil.oxford@hugheshubbard.com<br>dustin.smith@hugheshubbard.com com<br>gregory.farrell@hugheshubbard.com<br><br>*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)* |