**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos.:
18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-
01893; 19-cv-01781; 19-cv-01783; 19-cv-01866;
19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-
01904; 19-cv-01798; 19-cv-01869; 19-cv-01922;
19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-
07827; 19-cv-01791; 19-cv-01792; 19-cv-01928;
19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-
01929; 19-cv-01803; 19-cv-01806; 19-cv-01906;
19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-
01810; 19-cv-01809; 18-cv-04833; 19-cv-01911;
19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-
01871; 19-cv-01813; 19-cv-01930; 18-cv-07829;
18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-
01931; 19-cv-01918; 19-cv-01873; 19-cv-01924;
19-cv-10713; 21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO EXCLUDE THE PROPOSED TESTIMONY OF**
**DEFENSE EXPERTS MICHAEL S. ROSS, C. FREDERICK REISH,**
<u>**AND KASPER B. PILGAARD**</u>

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................2

    The Ross Report .............................................................................................................2

    The Reish Reports ..........................................................................................................2

    The Pilgaard Declarations ..............................................................................................4

LEGAL STANDARD ...............................................................................................................5

    I.      Mr. Ross' legal opinions and conclusions should be excluded in their entirety as unhelpful to the jury ...............................................................................7

    II.    Mr. Reish's legal opinions and conclusions should be excluded in their entirety as unhelpful to the jury ...............................................................................10

    III.   Mr. Pilgaard's opinion should be excluded in its entirety as unhelpful to the jury ...............................................................................................................13

CONCLUSION ........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Transit Corp. v. Loc. 854 Pension Fund*, No. 21-CV-10556 (CS),
2024 WL 1827315 (S.D.N.Y. Apr. 26, 2024) ........................................................................13

*Am. Home Assurance Co. v. Merck & Co.*, 462 F. Supp. 2d 435 (S.D.N.Y. 2006) ......................15

*Bd. of Tr. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
No. 09 Civ. 686(SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ....................................9

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132
(2d Cir. 2016) ............................................................................................................................7

*Celebrity Cruises Inc. v. Essef Corp.*¸ 434 F. Supp. 2d 169 (S.D.N.Y. 2006) ................................6

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993) ........................5, 7

*In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164 (S.D.N.Y. 2009) ...................................15

*In re Golden*, No. 16-40809-ESS, 2022 WL 362913
(Bankr. E.D.N.Y. Feb. 4, 2022).............................................................................................13

*Highland Cap. Mgmt., L.P. v. Schneider*¸ 379 F. Supp. 2d 461 (S.D.N.Y. 2005) ..............9, 10, 16

*In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001)...................................7

*Joffe v. King & Spalding LLP*, 17-CV-3392 (VEC), 2019 WL 4673554
(S.D.N.Y. Sept. 24, 2019)..............................................................................................8, 9, 10

*Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282 (E.D.N.Y. 2011) .........................................13, 14

*Mar-Can Transp. Co., v. Loc. 854 Pension Fund*¸ No. 20-CV-8743 (CS),
2024 WL 1250716 (S.D.N.Y. Mar. 22, 2024).............................................................9, 11, 14

*Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977)..............................................9, 12

*Music Sales Corp. v. Morris*¸ 73 F. Supp. 2d 364 (S.D.N.Y. 1999) ...............................................9

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005)...............................................6, 7, 12

*Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 08-CV-0931 (PKC)
(JO), 2014 WL 12788845 (E.D.N.Y. Mar. 31, 2014) .........................................................8, 9

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ....................................12

*Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) .........................................6

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) ..........................................9

*Sec. & Exch. Comm'n v. Gel Direct Tr.*, 22-CV-9803 (JSR), 2024 WL 1374902
    (S.D.N.Y. Mar. 31, 2024) ...........................................................................................13

*Seward v. Antonini*, No. 20-CV-9251 (KMK), 2023 WL 6387180
    (S.D.N.Y. Sept. 29, 2023) .............................................................................................6

*In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-01570 (GBD)(SN),
    2023 WL 3116763 (S.D.N.Y. Apr. 27, 2023) ..............................................................6

*In re Terrorist Attacks of Sept. 11, 2001*, No. 03MD01570(GBD)(SN),
    2023 WL 2366854 (S.D.N.Y. Mar. 6, 2023) ..............................................................15

*Thomsen v. Kefalas*, 15-CV-2668 (BCM), 2018 WL 1508735
    (S.D.N.Y. Mar. 26, 2018) ...........................................................................................11

*United States v. Articles of Banned Hazardous Substances Consisting of an*
    *Undetermined No. of Cans of Rainbow Foam Paint*, 34 F.3d 91 (2d Cir. 1994) .....................6

*United States v. Avenatti*, 19-CR-374 (JMF), 2022 WL 103298
    (S.D.N.Y. Jan. 11, 2022) ..........................................................................................7, 8

*United States v. Bankman-Fried*, S6 22-CR-0673, 2023 WL 6162865
    (S.D.N.Y. Sept. 21, 2023) ...........................................................................................13

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ........................................................6, 14

*United States v. Kurland*, 20-CR-306 (S-1) (NGG), 2022 WL 2669897
    (E.D.N.Y. July 11, 2022)..............................................................................................7

*United States v. Mulder*, 273 F.3d 91 (2d Cir. 2001) .................................................................15

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1988) ..................................................................11

**Statutes and Rules**

Federal Rule of Civil Procedure 44.1 .......................................................................*passim*

Federal Rule of Evidence 403 .........................................................................7, 10, 13, 16

Federal Rule of Evidence 702 .................................................................................5, 14

**Regulations**

26 CFR § 1.401-1(b)(2) ............................................................................................12

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in support of its motion to exclude the proposed expert testimony of defense experts Michael S. Ross, C. Frederick Reish, and Kasper B. Pilgaard pursuant to Federal Rules of Evidence 702 and 403.

## PRELIMINARY STATEMENT

The Court should preclude defendants' legal experts Mr. Ross, Mr. Reish, and Mr. Pilgaard from testifying at trial about their interpretations of law and the ultimate conclusions the jury should reach. Such testimony is inadmissible because it usurps the jury's role to apply the law to the facts and the Court's role to instruct the jury on the law.

Mr. Ross' report—offered in response to SKAT's professional ethics expert who will not be offered as an affirmative witness given the legal nature of her opinion—consists of a skewed set of "assumed facts" defendant Michael Ben-Jacob's counsel provided to him reflecting Ben-Jacob's view of the case; a treatise-like recitation and interpretation of the New York Rules of Professional Conduct; and legal argument as to how those rules apply to Ben-Jacob's conduct, which argument assumes the truth of the "facts" provided by Ben-Jacob's counsel. None of Mr. Ross' legal opinions or conclusions are appropriate expert testimony. Nor can Mr. Ross testify as to the "assumed facts" on which his inadmissible legal opinions are based.

Similarly, Mr. Reish's proposed testimony is imbued with inadmissible instructions of law on the requirements for qualified pension plans under the Internal Revenue Code and legal conclusions regarding whether the defendant pension plans met those requirements.

Likewise, Mr. Pilgaard's proposed expert testimony comprised of "legal opinion[s] on legal matters" based on his "knowledge of Danish law"—taken from two declarations he submitted under Federal Rule of Civil Procedure 44.1—is inappropriate for trial. Defendants purport to offer Mr. Pilgaard to the extent his declarations "convey[] factual rather than legal

information," but any arguably factual assertions in Mr. Pilgaard's declarations are bound up in legal analysis. Defendants' attempt to shoehorn Mr. Pilgaard's legal opinions as factual assertions should therefore be rejected. And any remaining factual testimony is not the appropriate subject of expert testimony.

## BACKGROUND

### The Ross Report.

During discovery, SKAT retained Marcia S. Wagner to, *inter alia*, provide her opinion as to whether Ben-Jacob—a New York attorney—departed from professional standards by participating in Sanjay Shah and his co-defendant clients' fraud on SKAT. In rebuttal, Ben-Jacob proffered Mr. Ross. (*See* Declaration of Marc A. Weinstein, dated June 21, 2024 ("Weinstein Decl."), Ex. 1 (Expert Report of Michael S. Ross, dated Feb. 1, 2022 (the "Ross Report")) ¶ 2.) SKAT does not intend to proffer Ms. Wagner as a witness at trial.[1]

In his report, Mr. Ross provides a 16-page (single-spaced) "statement of assumed facts" provided by Ben-Jacob's counsel. (*See id.* ¶ 17.) Following this lengthy factual narrative, Mr. Ross sets forth his interpretation of the New York Rules of Professional Conduct (*see, e.g.*, *id.* ¶¶ 23-39, 47-72, 109), and the caselaw concerning those rules (*see, e.g.*, *id.* ¶¶ 26 n.5, 27 & n.6, 28, 32 & n.7, 34 n.8, 37, 47, 50 n.9 & 10, 54, 56-72). Mr. Ross then applies his interpretation of the Rules to his set of assumed facts to reach his conclusions about Ben-Jacob's conduct. (*See, e.g.*, *id.* ¶¶ 74-110.)

### The Reish Reports.

Defendants proffer Mr. Reish to "analyz[e] and opin[e] on issues related to the qualification of pension plans, the practices of the [IRS] as the agency with the authority to

---

1.   SKAT reserves the right to call Ms. Wagner as a rebuttal witness to the extent Mr. Ross is permitted to testify.

determine whether a pension plan is qualified under section 401(a) of the Internal Revenue Code

. . . , and the approach of the federal regulators in their oversight of pension plans." (Weinstein

Decl. Ex. 2 (Expert Report of C. Frederick Reish, dated Dec. 31, 2021 (the "Reish Report")) ¶ 1.)

In reaching his opinions, Mr. Reish focuses on three plans—defendants RJM Capital LLC

Pension Plan ("RJM"), Roadcraft Technologies LLC Roth 401(k) Plan ("Roadcraft"), and

American Investment Group of New York, L.P. Pension Plan ("AIG"). (*See id.* ¶¶ 38, 40.)

     In his report, Mr. Reish opines on the IRS's enforcement responsibilities under the

Internal Revenue Code ("IRC") and, along the way, interprets plan qualification requirements of

the IRC. (*See id.* ¶¶ 23-35.) Mr. Reish sets forth different methods of qualification—"form" and

"operation"—and provides his view on how plans may qualify under each method. (*See id.* ¶¶

24-35.) Following his interpretation of the law on plan qualification, Mr. Reish applies his view

of the law to his understanding of the facts (*see id.* ¶¶ 36-57), including his interpretation of the

IRS's issuance of a "no charge" letter following its audit of a defendant plan (*see id.* ¶¶ 41-44).

In doing so, Mr. Reish reaches the legal conclusions that (1) "[t]he RJM, Roadcraft, and AIG

plans are tax-qualified and are not 'shams'" (*see id.* at 9); (2) "[t]he RJM, Roadcraft, and AIG

plans were formed as qualified plans" (*see id.* at 10); and (3) "[t]he qualified status of the RJM,

Roadcraft, and AIG plans, and other similarly-situated defendant plans, would not be lost by

engaging in the investment strategies at issue in this case" (*see id.* at 12).[2]

---

2.  Mr. Reish's rebuttal and reply reports contain similar assertions. (*See generally* Weinstein Decl. Ex. 3 (Rebuttal Expert Report of C. Frederick Reish, dated Feb. 1, 2022 ("Reish Rebuttal")); *id.* Ex. 4 (Reply Expert Report of C. Frederick Reish, dated Feb. 28. 2022 ("Reish Reply")).) Much of those reports consist of Mr. Reish's response to SKAT's pension plan expert, Ms. Wagner. However, as noted with respect to Mr. Ross, SKAT does not intend to call Ms. Wagner as a witness as trial, rendering much of Mr. Reish's rebuttal and reply reports irrelevant. Again, SKAT reserves the right to call Ms. Wagner as a rebuttal witness to the extent Mr. Reish is permitted to testify.

**The Pilgaard Declarations.**

Defendants retained Mr. Pilgaard to provide "legal opinion[s] on legal matters . . . on the basis of [Mr. Pilgaard's] knowledge of Danish law" in two Rule 44.1 declarations (Weinstein Decl. Ex. 5 (Declaration of Foreign Law of Kasper Bech Pilgaard, dated Apr. 27, 2022 (the "April 27 Declaration")) ¶ 2; *see also* Weinstein Decl. Ex. 6 (Declaration of Foreign Law of Kasper Bech Pilgaard, dated June 27, 2022 (the "June 27 Declaration")) (noting that his declaration constitutes a "legal opinion").) In support of his opinions, Mr. Pilgaard relies on "Danish laws" and "regulations." (Apr. 27 Decl. ¶ 6.)

As defendants acknowledge, Mr. Pilgaard's declarations are replete with legal interpretation and conclusions. For instance, Mr. Pilgaard interprets the Constitution of Denmark (*see, e.g.*, *id.* ¶¶ 13-24, 62-78; June 27 Decl. ¶¶ 47-69) and various Danish laws—including the Finance Act, State Tax Act, Tax Assessment Act, Control Act, Tax Administration Act, Collection of Debt Act, and Administration of Justice Act—relating to, *inter alia¸* the Danish government's budget and taxation authority (*see* Apr. 27 Decl. ¶¶ 25-61, 102-09). Mr. Pilgaard opines on SKAT's ability to pursue claims against taxpayers in Denmark by addressing the legal issues of "locus standi," venue, and the applicability of the relevant statute of limitations (*see id.* ¶¶ 83-101), provides his understanding of principles of Danish tort law (*see* June 27 Decl. ¶¶19-46) and his view on the applicability of the *Nemo Dat* doctrine (*see id.* ¶¶ 87-96), and interprets the U.S.-Denmark double taxation treaty and Denmark's Withholding Tax Act (*see* Apr. 27 Decl. ¶¶ 110-30, 141-46). Further, Mr. Pilgaard provides his interpretation of law—including various acts, caselaw, the OECD's Model Convention, and European Union directives and regulations—related to beneficial ownership of securities, dividends, and securities settlement. (*See id.* ¶¶ 146-208.)

Notwithstanding that Mr. Pilgaard's declarations consist of "legal opinion[s] on legal matters" (Apr. 27 Decl. ¶ 2), defendants proffer Mr. Pilgaard to provide expert testimony on "factual rather than legal information" contained in various paragraphs of his Rule 44.1 declarations. (*See* Weinstein Decl. Ex. 7 at 15-16.)[3] Defendants, however, strain to identify any such facts. Many of the paragraphs flagged as "factual" substantially overlap with the inadmissible legal opinions identified above, including Mr. Pilgaard's interpretation and application of the Constitution of Denmark and various acts (*see, e.g.*, Apr. 27 Decl. ¶¶13-34, 50-51, 53-54, 148) and his opinion on aspects of Danish securities law (*id.* ¶ 151; June 27 Decl. ¶ 86 ("I am aware of no regulation or rule of law in Denmark that would prevent shareholders in a Danish company from holding long or short positions that exceed more than 100% of the issued shares of that company as a result of securities lending."). Beyond that, Mr. Pilgaard's proposed "factual" testimony is either bound-up in legal application (*see, e.g.*, Apr. 27 Decl. ¶ 133 (citing SKAT's legal guidelines which, in turn, cite the Withholding Tax Act)) or merely parrots information found on a form and a website. (*See, e.g.*, *id.* ¶¶ 134-35, 137-39.)

## LEGAL STANDARD

Under Federal Rule of Evidence 702, expert testimony is admissible only if (1) the expert is qualified; (2) the testimony is reliable; and (3) the testimony is relevant. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 588-95, 113 S. Ct. 2786, 2794-97 (1993). Rule 702 therefore requires courts to act as gatekeepers, ensuring that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert¸* 509 U.S. at 597, 113 S. Ct. at 2799. In determining whether an expert's testimony is relevant, courts

---

3. Specifically, defendants have identified paragraphs 7-11, 13-39, 41-45, 49-51, 53-54, 131-140, 148-149, 151, 201, and 207 from the April 27 Declaration and paragraphs 85-86 of the June 27 Declaration. (*See* Weinstein Decl. Ex. 7 at 15-16.)

consider whether such testimony will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

It is well-established that "experts are not permitted to present testimony in the form of legal conclusions." *United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined No. of Cans of Rainbow Foam Paint*, 34 F.3d 91, 96 (2d Cir. 1994); *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts.").[4]  Such conclusions, "rather than add[] helpful context or analysis[,] . . . usurp the jury's function to apply the law to the facts." *In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-01570 (GBD)(SN), 2023 WL 3116763, at *10 (S.D.N.Y. Apr. 27, 2023) (cleaned up); *see Nimely¸* 414 F.3d at 397 (noting that an expert's application of law to facts "does not aid the jury in making a decision" because it "undertakes to tell the jury what result to reach and thus attempts to substitute the expert's judgment for the jury's" (cleaned up)).

Nor may "[e]xpert testimony . . . usurp the province of the judge to instruct on the law." *Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (citations omitted). Just because an expert is qualified to opine on an issue of fact does not mean he or she is "qualified to compete with the judge in the function of instructing the jury on the law." *Seward v. Antonini*, No. 20-CV-9251 (KMK), 2023 WL 6387180, at *21 (S.D.N.Y. Sept. 29, 2023) (alternations accepted and citation omitted).

"[E]xpert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition

---

4.  *See also Celebrity Cruises Inc. v. Essef Corp.¸* 434 F. Supp. 2d 169, 191 (S.D.N.Y. 2006) ("Expert testimony that merely states a legal conclusion must be excluded." (collecting cases)).

does not aid the jury in making a decision." *Nimely*, 414 F.3d at 397 (cleaned up). Instead, such testimony impermissibly "undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Id.* Indeed, "[t]he rule prohibiting experts from providing their legal opinions is so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quotation marks and citation omitted).

Even if expert testimony is otherwise admissible under Rule 702, it may still be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues," or "misleading the jury." Fed. R. Evid. 403. Rule 403 is "uniquely important . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely¸* 414 F.3d at 397. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," so the Court "in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595, 113 S. Ct. at 2798.

## I.    Mr. Ross' legal opinions and conclusions should be excluded in their entirety as unhelpful to the jury.

"[C]ourts within this circuit have routinely precluded expert testimony," such as Mr. Ross', "that purports to interpret a state's legal ethics rules." *United States v. Kurland*, 20-CR-306 (S-1) (NGG), 2022 WL 2669897, at *14 (E.D.N.Y. July 11, 2022).[5] And courts within the

---

5.    *See also, e.g.*, *United States v. Avenatti*, 19-CR-374 (JMF), 2022 WL 103298, at *2 (S.D.N.Y. Jan. 11, 2022) ("To the extent that legal ethics rules generally or California's rules of professional conduct specifically are relevant to the jury's consideration of the charges against Defendant in this case, the proper course is for the Court to give appropriate instructions to the jury, not for an expert to testify."); *cf. Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) (declining to consider declaration of legal expert given "longstanding rule that expert testimony on issues of domestic law is not to be considered").

Second Circuit exclude the testimony of legal ethics experts seeking to offer legal conclusions rather than testimony "as to the ordinary practices of those engaged in the business of law . . . or as to trade customs and usages of those so employed." *Joffe v. King & Spalding LLP*, 17-CV-3392 (VEC), 2019 WL 4673554, at \*17 (S.D.N.Y. Sept. 24, 2019) (citation omitted); *see Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 08-CV-0931 (PKC) (JO), 2014 WL 12788845, at \*11 (E.D.N.Y. Mar. 31, 2014) (excluding expert report which was "lard[ed] . . . with opinions that the defendants committed 'legal malpractice'"), *report and recommendation adopted in relevant part by* 08-CV-0931 (PKC) (JO), docket entry dated July 15, 2014 (E.D.N.Y. July 16, 2014).

Thus, Mr. Ross' proposed testimony interpretating the New York Rules of Professional Conduct (*see, e.g.*, Ross Report ¶¶ 23-39, 47-72, 109) is plainly inadmissible because it would "invade[] the province of the Court to charge the jury on the scope of New York's Rules of Professional Conduct," to the extent those rules are relevant at trial. *Joffe*, 2019 WL 4673554, at \*17.[6]  To the extent Ben-Jacob's adherence to his ethical responsibilities are even at issue at trial, "the proper course is for the Court to give appropriate instructions to the jury, not for [Mr. Ross] to testify." *Avenatti*, 2022 WL 103298, at \*2.[7]

---

6. Indeed, at one point Mr. Ross synthesizes his *own* standard for objective reasonableness:

   In light of the ethics literature discussed above, including Opinion 491, and my own decades of experience in advising and representing law firms, it is my view that another way to articulate the test of what is objectively reasonable in circumstances such as those facing Ben-Jacob is to ask whether a lawyer has before them a set of facts that are *not*: (1) facially incorrect; (2) internally inconsistent; and/or (3) objectively and conclusively inconsistent with other facts known to that lawyer.

   (Ross Report ¶ 39 (emphasis in original).)  Mr. Ross goes on to impermissibly apply this newly-crafted standard to his assumed facts.  (*See id.* ¶¶ 39-41.)

7. This is particularly true here, given that Mr. Ross' opinion is comprised in part of his interpretation of caselaw. *See, e.g.*, *Joffe*, 2019 WL 4673554, at \*17 (noting that an expert's testimony "premised on the expert's interpretation of judicial precedent . . . would impinge on the [c]ourt's obligation to instruct the jury on the law");

Nor may Mr. Ross testify as to his legal conclusions that, for instance, Ben-Jacob "was permitted to rely on [his clients'] reasonable representations" (*see* Ross Report at 23); that "the scope of Kaye Scholer's representation determined Ben-Jacob's required scope of competence" (*see id.* at 32); and that Ben-Jacob "reasonably relied on [his clients] to conduct their own due diligence and was permitted to rely on their reasonable representations" (*see id.* at 43).[8]  These opinions go well beyond speaking "to the ordinary practices of those engaged in the business of law . . . or as to trade customs and usages of those so employed," *Music Sales Corp. v. Morris¸* 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999) (citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977)), and instead "rest[] entirely on his textual interpretation of the [New York Rules of Professional Conduct]," *Joffe*, 2019 WL 4673554, at *17 n.15.  (*See, e.g.*, Ross Report ¶¶ 76 (tying opinion to Rule 1.1(b)); 79-80 (tying opinion to Rule 1.2), 82 (same), 91 (same), 109 (same).)  These legal conclusions are unhelpful to the jury and therefore inadmissible.  *See Joffe*, 2019 WL 4673554, at *17; *Protostorm, LLC*, 2014 WL 12788845, at *11.

Finally, particularly given that his legal opinions are inadmissible, Mr. Ross may not testify as to the cherry-picked "assumed facts" Ben-Jacob's counsel provided him on which he based his inadmissible opinions.  An expert may not "[s]imply rehash[] evidence about which [the] expert has no personal knowledge."  *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33,

---

*Mar-Can Transp. Co., v. Loc. 854 Pension Fund¸* No. 20-CV-8743 (CS), 2024 WL 1250716, at *5 (S.D.N.Y. Mar. 22, 2024) (excluding expert reports as unhelpful given that reports, *inter alia*, analyzed the relevant caselaw).

8. Further, Mr. Ross impermissibly offers his view on Ben-Jacob's knowledge of the fraud.  (*See, e.g.*, Ross Report ¶¶ 45 ("[W]ith respect to the knowledge issue, Ben-Jacob did not have actual knowledge of any illegal or fraudulent conduct."); 84 (stating that Ben-Jacob had "no actual knowledge" on whether "the trades actually occurred, issues of beneficial ownership of the Danish shares and dividends; and the basis for Solo Capital's fees."); 107 ("the information that was known to him did not raise red flags").  Such "opinions concerning state of mind are an inappropriate topic for expert opinion."  *Bd. of Tr. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686(SAS), 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011).  The Court should preclude Mr. Ross' testimony for the additional reason that it purports to opine on what Ben-Jacob knew and did not know.  *See, e.g.*, *Highland Cap. Mgmt., L.P. v. Schneider¸* 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005).

45 (S.D.N.Y. 2016) (quotation marks and citation omitted).  Thus, expert testimony proffered

"solely for the purpose of constructing a factual narrative based upon record evidence" is

impermissible.  *Highland Cap. Mgmt., L.P.*¸ 379 F. Supp. 2d at 469.  To the extent Ben-Jacob

seeks to have Mr. Ross testify as to "assumed facts," such testimony should be excluded as

unhelpful to the jury.  *See Joffe*, 2019 WL 4673554, at *16 (excluding legal ethics expert's

opinion "as factual narrative and spin").  And, even if Mr. Ross' testimony regarding the

"assumed facts" were admissible (it is not), such evidence should be excluded under Rule 403

because any minimal probative value gained from the testimony is substantially outweighed by

the danger of unfair prejudice to SKAT given the undue weight the jury would place on it.  *See*

Fed. R. Evid. 403.

## II.    Mr. Reish's legal opinions and conclusions should be excluded in their entirety as unhelpful to the jury.

Mr. Reish's report is likewise riddled with inadmissible instructions of law and legal

conclusions regarding the qualification of pension plans.

For instance, Mr. Reish interprets plan qualification requirements under the Code, setting

forth different methods of qualification—"form" and "operation" (*see* Reish Report ¶ 24)—and

improperly explicates how these qualification methods may be satisfied (*see id.* ¶¶ 25 (form), 26

(operation)).  And he expresses his legal view on how long a plan may remain qualified (*see id.* ¶

31), permissible sources of funding (*see id.* ¶ 33), the "exclusive benefit rule" (*see id.* ¶¶ 52-53),

and the "permanency requirement" (*see id.* ¶¶ 54-55).[9]

---

9.    Mr. Reish reiterates these, and similar, improper assertions in his rebuttal and reply reports.  (*See generally* Reish Rebuttal; Reish Reply.)

Mr. Reish makes "no attempt to couch [these opinions] in even conclusory factual statements," thus his opinions "invade the province of the [C]ourt to determine the applicable law and to instruct the jury as to that law." *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (quotation marks and citation omitted); *see also Mar-Can Transp. Co.*, 2024 WL 1250716, at *5 (excluding expert reports "consist[ing] of legal opinion or conclusions regarding how to interpret [ERISA's] plain language").[10]

Much of the remainder of Mr. Reish's initial report is made up of impermissible legal conclusions or his predictions of what the IRS would conclude. For example, Mr. Reish asserts that:

- "[T]he investment strategy pursued by qualified plans in this case . . . would not cause a plan to be considered a sham or not a proper plan (*see* Reish Report ¶ 36);

- The plan documents "establish[ed] their qualified status as to form" because they "received favorable opinion letters from the IRS" (*see id.* ¶ 38);

- "[T]he plans are qualified 401(k) plans" (*see id.* ¶ 39);

- "[T]he payment of substantial fees to a third-party investment or service provider by a defendant pension plan would not lead the IRS to disqualify those plans in the event of an IRS audit of the plans" (*see id.* ¶ 52);

- "[D]efendant pension plans' participation in partnership agreements with other qualified plans, where the profits are allocated in proportion to capital contributions, would not cause the IRS to conclude that a qualified retirement plan was no longer qualified under the exclusive benefit requirement" (*see id.* ¶ 53);

- "[I]f a plan failed to make recurring and substantial contributions from the sponsor's profits, the plan would not cease to be a qualified pension plan under the theory that it failed to satisfy the permanency requirement and would not cause the IRS to assert that the plan was not a qualified pension plan" (*see id.* ¶ 55); and

---

10. *See also Thomsen v. Kefalas*, 15-CV-2668 (BCM), 2018 WL 1508735, at *18 (S.D.N.Y. Mar. 26, 2018) (disregarding declaration "consist[ing] entirely of prohibited legal opinion and legal conclusions").

- The IRS does not enforce a regulation on plan permanence, 26 CFR §1.401-1(b)(2) (*see id.* ¶¶ 53-55).[11]

Moreover, Mr. Reish opines that "[t]he issuance of a 'no charge' letter means that the IRS did not find any qualification defects in the form or operation of the plan," and that "I am not aware of any reason that, had the IRS undertaken an audit of any other plans with arrangements similar to the RJM Plan, it would not have issued a 'no charge' letter similar to the one issued with respect to the RJM Plan." (*Id.* ¶¶ 43-44; *see also* Reish Rebuttal ¶¶ 101-16.) Mr. Reish in effect concludes that the IRS's issuance of a "no charge" letter—to the extent such letter is even admissible at trial—necessarily leads to the legal conclusion that a pension plan is qualified. Putting the accuracy of Mr. Reish's opinion and the admissibility of the "no charge" letter aside, such testimony, if admitted, would plainly usurp the role of the jury by applying the law to the facts and directing the jury on what result to reach on the issue of pension plan qualification. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).

Indeed, Mr. Reish's inappropriate legal conclusions are built into his overall opinions. (*See, e.g.*, Reish Report at 9 ("The RJM, Roadcraft, and AIG plans are tax-qualified and are not 'shams'"), 10 ("The RJM, Roadcraft, and AIG plans were formed as qualified plans"), 12 ("The qualified status of the RJM, Roadcraft, and AIG plans, and other similarly-situated defendant plans, would not be lost by engaging in the investment strategies at issue in this case"). Given that such opinions will not aid the jury in making its decisions, *see Nimely*, 414 F.3d at 397, the Court should preclude Mr. Reish from providing any legal conclusions at trial. *See, e.g.*, *Marx &*

---

11. Mr. Reish testified that "time, in many ways, has passed that regulation by." (Weinstein Decl. Ex. 8 (Reish Dep. Tr.) 159:24-25; *see also id.* 160:4-20 ("Q And do you know whether that regulation has ever been withdrawn by the IRS? A Officially, no. But it's not being enforced because it no longer applies to the circumstances today. . . . Q So, sir, is there any IRS publication you can point us to where the IRS has said that it is not enforcing that regulation? . . . . A Nothing that I can think of.").)

*Co.*, 550 F.2d at 510 (holding that expert testimony regarding "conclusions as to the legal significance of various facts adduced at trial" is inadmissible).[12]  Moreover, to the extent the Court concludes that any of Mr. Reish's testimony is admissible (it is not), the Court should preclude it under Rule 403 given that the minimal probative value of such testimony is substantially outweighed by the danger that—particularly with respect to the "no charge" letter—the jury will be misled and afford undue weight to it.

### III.    Mr. Pilgaard's opinion should be excluded in its entirety as unhelpful to the jury.

Issues of foreign law are questions of law, thus "not a proper subject of a jury's attention."  *United States v. Bankman-Fried*, S6 22-CR-0673 (LAK), 2023 WL 6162865, at *1 (S.D.N.Y. Sept. 21, 2023); *see Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 286 (E.D.N.Y. 2011) ("the opinions of the four experts addressing foreign law . . . are not relevant because questions of foreign law are not to be determined through a proffer of expert testimony given to the jury").[13]  Mr. Pilgaard acknowledges that his declarations, submitted under Federal Rule of Civil Procedure 44.1,[14] are "legal opinion[s] on legal matters" based on his "knowledge of Danish law."  (Apr. 27 Decl. ¶ 2; *see also* June 27 Decl. ¶ 1.)  Any testimony rooted in Mr. Pilgaard's declarations therefore inherently amounts to instruction on law or legal conclusions,

---

12.  *See also Allied Transit Corp. v. Loc. 854 Pension Fund*, No. 21-CV-10556 (CS), 2024 WL 1827315, at *4-5 (S.D.N.Y. Apr. 26, 2024) (excluding expert reports consisting of legal opinions and conclusions regarding how to interpret the relevant statute); *Sec. & Exch. Comm'n v. Gel Direct Tr.*, 22-CV-9803 (JSR), 2024 WL 1374902, at *9-10 (S.D.N.Y. Mar. 31, 2024) (excluding expert testimony that defendant "should not be considered a broker under the prevailing legal standard" as an impermissible legal conclusion); *In re Golden*, No. 16-40809-ESS, 2022 WL 362913, at *7, *14 (Bankr. E.D.N.Y. Feb. 4, 2022) (precluding portions of expert's testimony, which in part relied on interpretation of the Internal Revenue Code, consisting of legal opinions).

13.  *See also* Fed. R. Civ. P. 44.1 ("The court's determination must be treated as a ruling on a question of law.").

14.  *See* Weinstein Decl. Ex. 7 at 15-16 (describing Mr. Pilgaard's declarations as "Rule 44.1 declarations").

both of which are inappropriate subjects for expert testimony.[15]

For instance, Mr. Pilgaard's interpretation of the Constitution of Denmark (*see, e.g.*, Apr. 27 Decl. ¶¶ 13-24, 62-78; June 27 Decl. ¶¶ 55-64), the Danish Withholding Tax Act (*see, e.g.*, Apr. 27 Decl. ¶¶ 110-17), and the U.S.-Denmark double taxation treaty (*see id*. ¶¶ 118-130) is not suitable for expert testimony, as such testimony would "usurp . . . the role of the trial judge in instructing the jury as to the applicable law." *Bilzerian*, 926 F.2d at 1294. Indeed, Mr. Pilgaard purports to provide his view on Danish legal issues—such as standing, venue, the statute of limitations, tort law, beneficial ownership, and the applicability of the *Nemo Dat* doctrine (*see, e.g.*, Apr. 27 Decl. ¶¶ 88-101, 146-84; June 27 Decl. ¶¶ 5-18, 87-106)—all of which will be determined by the Court, not the jury. *See Linde*, 920 F. Supp. 2d at 286.[16] As such, the Court should preclude Mr. Pilgaard from providing expert testimony on such matters.

Defendants' intention to offer Mr. Pilgaard "to convey[] factual rather than legal information" (*see* Weinstein Decl. Ex. 7 at 15-16.), does not render any aspect of Mr. Pilgaard's Rule 44.1 declarations admissible as expert testimony. The portions of Mr. Pilgaard's declarations that defendants highlight as "factual" are largely interpretations and conclusions of law. These paragraphs include Mr. Pilgaard's interpretation of the Constitution of Denmark (*see* Apr. 27 Decl. ¶¶ 13-25), the Finance Act (*see id.* ¶ 34), State Account's Act (*see id.* ¶ 35), and Order 116 (*i.e.*, procedures governing the expenditure of state funds) (*see* ¶¶ 36-39). Such assertions are evidently legal in nature and are not the proper subject of expert testimony, and

---

15. Defendants state that Mr. Pilgaard's testimony "might include" certain identified declaration paragraphs. (*See* Weinstein Decl. Ex. 7 at 15.) Thus, for the avoidance of doubt, SKAT moves to preclude any inadmissible legal interpretation or conclusions found in Mr. Pilgaard's declarations, whether defendants identified them or not.

16. Indeed, Mr. Pilgaard's consistent reference to statutes, rules, regulations, and caselaw underscores that his testimony would usurp the Court's role in instructing the jury on the applicable law. *See, e.g.*, *Mar-Can Transp. Co., Inc.*, 2024 WL 1250716, at *5.

defendants should not be permitted to masquerade Mr. Pilgaard's legal opinions as factual

testimony. *See, e.g.*, *Am. Home Assurance Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 448

(S.D.N.Y. 2006) (precluding expert opinion consisting of legal interpretation, despite expert's

"attempt to reframe his interpretation as merely" standard customs and practices).

Beyond his inadmissible legal analysis, the remainder of Mr. Pilgaard's proposed

testimony is "directed solely to lay matters which a jury is capable of understanding and deciding

without" Mr. Pilgaard's expert opinion. *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir.

2001) (citation omitted). For example, many portions of Mr. Pilgaard's declarations that

defendants deem "factual" consist of Mr. Pilgaard simply reciting information reflected on a

form and a website. (*See* Apr. 27 Decl. ¶¶ 134-35 ("According to that form, the applicant had to

confirm that the applicant sought the reclaim 'as beneficial owner' or 'on behalf of the beneficial

owner.'") 138-140 ("The current version of its website now sets forth five 'requirements' to

obtaining a refund . . . stated in the following terms . . . ."); 201 ("Updates to [SKAT's] website

after 2015 state the following . . . ."); *see also* June 27 Decl. ¶ 85).) Even assuming *arguendo*

that this testimony is otherwise admissible at trial, the jury is perfectly suited to review such

information—which does not require "scientific, technical, or other specialized knowledge" to

understand, *see* Fed. R. Evid. 702—without expert assistance. *See In re Terrorist Attacks of

Sept. 11, 2001*, No. 03MD01570(GBD)(SN), 2023 WL 2366854, at *6 (S.D.N.Y. Mar. 6, 2023)

(deeming expert testimony improper where report consisted largely of quotes from declassified

CIA documents, deposition transcripts, and other documentary evidence, as "a juror could just as

easily understand the evidence by reading a passage from the original CIA documents"); *In re

Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding expert from

"merely read[ing], selectively quot[ing] from, or 'regurgitat[ing]' the evidence"). And any

additional background facts proffered by Mr. Pilgaard (*see, e.g.*, Apr. 27 Decl. ¶¶ 41-45, 49-51, 53-54, 207) remain untethered to any expert opinion and are therefore not appropriate for expert testimony. *See, e.g.*, *Highland Cap. Mgmt., L.P.*, 379 F. Supp. 2d at 469. Thus, to the extent any facts remain after removing Mr. Pilgaard's legal opinions, Mr. Pilgaard should not be permitted to convey such facts to the jury as an expert, as such testimony, untethered to any opinions and well within the ken of the jury, is unhelpful and unnecessary. To the extent the Court deems such testimony admissible (it is not), the Court should nonetheless preclude it under Rule 403 given that any minimal probative value from such testimony is substantially outweighed by the danger of unfair prejudice to SKAT given the undue weight the jury would place on it. *See* Fed. R. Evid. 403.

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court grant its motion to exclude the proposed expert testimony of Michael S. Ross, C. Frederick Reish, and Kasper B. Pilgaard.

16

Dated: New York, New York  
      June 21, 2024

HUGHES HUBBARD & REED LLP

By: /s/ Marc A. Weinstein  
     William R. Maguire  
     Marc A. Weinstein  
     Neil J. Oxford  
     Dustin P. Smith  
     Gregory C. Farrell  
     One Battery Park Plaza  
     New York, New York 10004-1482  
     Telephone: (212) 837-6000  
     Fax: (212) 422-4726  
     bill.maguire@hugheshubbard.com  
     marc.weinstein@hugheshubbard.com  
     neil.oxford@hugheshubbard.com  
     dustin.smith@hugheshubbard.com com  
     gregory.farrell@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen*  
*(Customs and Tax Administration of the*  
*Kingdom of Denmark)*

17