**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br>This document relates to: The cases identified in Appendix A | MASTER DOCKET<br>18-md-02865-LAK |

**MEMORANDUM OF LAW TO EXCLUDE THE PROPOSED EXPERT REPORTS, OPINIONS, AND TESTIMONY OF BRUCE DUBINSKY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 2

BACKGROUND ..... 2

LEGAL STANDARD ..... 3

ARGUMENT ..... 5

I. Mr. Dubinsky Cannot Testify as to Whether the Pension Plans Owned Danish Securities Pursuant to Danish Law ..... 5

II. Mr. Dubinsky's Opinions Otherwise Exceed His Expertise ..... 7

A. Mr. Dubinsky Is Not Qualified to Offer Opinions on Liquidity, Creditworthiness, and Secured Lending Agreements ..... 8

B. Mr. Dubinsky's Analysis of the Securities Transactions Is Based on Unreliable Data ..... 9

C. Mr. Dubinsky Otherwise Lacks the Training and Qualifications to Provide Opinions on Complex Structured Transactions ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. National Railroad Passenger Corp.*,
303 F.3d 256 ....................10

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) ....................4

*Daubert v. Merrell Dow Pharms. Inc.*,
509 U.S. 579 (1993)....................3, 4, 11

*Davis v. Carroll*,
937 F. Supp. 2d 390 (S.D.N.Y. 2013)....................7

*Dracz v. Am. Gen. Life Ins. Co.*,
426 F. Supp. 2d 1373 (M.D. Ga. 2006), *aff'd*, 201 F. App'x 681 (11th Cir. 2006) ....................11

*Hirchak v. W.W. Grainger, Inc.*,
980 F.3d 605 (8th Cir. 2020) ....................7

*Hous. Works, Inc. v. Turner*,
362 F. Supp. 2d 434 (S.D.N.Y. 2005) (Kaplan, J.)....................3, 4

*In re: Lehman Bros. Sec. & Erisa Litig. v. Ernst & Young LLP*,
No. 09 MD 2017, 2015 WL 13707447 (S.D.N.Y. Sep. 13, 2015) (Kaplan, J.)....................4

*In re Mirena lus Levonorgestrel-Related Products Liability Litig. (No. II),* 341 F. Supp. 3d 213, 278 (S.D.N.Y. 2018)....................8

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
982 F.3d 113 (2d Cir. 2020)....................11

*Lappe v. Am. Honda Motor Co., Inc.*,
857 F. Supp. 222 (N.D.N.Y. 1994), *aff'd sub nom. Lappe v. Honda Motor Co. Ltd. of Japan,* 101 F.3d 682 (2d Cir. 1996) ....................7

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
874 F. Supp. 2d 169 (S.D.N.Y. 2012)....................8

*Malletier v. Dooney Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007)....................7

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013)....................12

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)....6

*Price v. Fox Entertainment Group, Inc.*,
499 F. Supp. 2d 382 (S.D.N.Y. 2009)....4

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)....4, 7

*United States v. Scop*,
846 F.2d 135 (2d Cir. 1988)....4

*Zaremba v. General Motors Corp.*,
360 F.3d 355 (2d Cir. 2004)....3

**Rules**

Fed. R. Evid. 702(a)....7

Fed. R. Evid. 702(b)....10, 12

Fed. R. Evid. 803(6)(A)-(C)....11

Federal Rule of Evidence 702....3, 7, 11

## PRELIMINARY STATEMENT

SKAT has offered Bruce Dubinsky as an expert forensic accountant who performed an analysis of the cash flows through the Pension Plans' trading accounts. His expert opinions, however, go far beyond his forensic accounting training. He opines on secured lending, structured securities transactions, and issues of ownership under Danish law without any relevant training or experience. Moreover, he relies on inadmissible and unauthenticated documents that lack any indicia of reliability and upon which no expert in his field would rely. Mr. Dubinsky is not proffering expert opinions based on reliable data, and lacks the expertise to reach the opinions he offers. Rather, he is reading the complaint and spitting it back in the form of an expert report. Mr. Dubinsky's expert opinion should be excluded.

## BACKGROUND

Mr. Dubinsky is a forensic accountant. Dubinsky Rep. ¶ 2 ("Exhibit A"). He describes his business, Dubinsky Consulting, LLC, as a practice that provides "forensic accounting and dispute analysis services." *Id.* He was hired by SKAT in this case to do a forensic accounting of the trades carried out by the Pension Plans and the cash flows of the tax refund payments paid out by SKAT to the Solo Plans. Dubinsky Dep. Tr. at 32:22-33:3 ("Exhibit B").

Mr. Dubinsky lacks training in and admits he is not an expert on securities or structured transactions, and is not competent to comment on what it means to own securities under any jurisdiction's laws. Specifically, he has no experience trading Danish securities, arbitrage trading, or arranging structured transactions. Exhibit B at 29:12-25. He does not have expertise in trade clearing or settlement and has never worked as a trader. Exhibit B at 29:9-30:14, 165:11-17. He is not offering an opinion as to what it means to be an owner or beneficial owner of securities and

is not speaking to whether dividends should have been paid to the Pension Plans. Exhibit B at 27:15-28:23, 145:18-146:7.

Mr. Dubinsky has offered four opinions in his expert report, although not all of them are based on his forensic accounting: (1) that the trades at issue in this case were closed loop transactions; (2) that the majority of the profits from the trades went to Solo Capital; (3) that the Pension Plans did not own Danish shares; and (4) that the Plans did not have sufficient liquidity or creditworthiness to purchase the Danish shares. Exhibit A ¶ 16.

As shown below, Mr. Dubinsky lacks expertise to offer most of these opinions and his entire analysis is based on unreliable data.

**LEGAL STANDARD**

Under Federal Rule of Evidence 702, expert testimony is admissible only if the expert is "qualified as an expert by knowledge, skill, experience, training, or education" and if the testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "is based on sufficient facts or data"; (3) "is the product of reliable principle and methods"; and (4) is "a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a); *see also Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 580 (1993) (holding that courts must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); *see also Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 447 (S.D.N.Y. 2005) (Kaplan, J.) (noting that courts must determine "(1) whether the [expert] testimony is grounded in sufficient facts, (2) whether the underlying methodology is reliable, and (3) whether the witness has applied the methodology reliably to the facts") (citing *Zaremba v. General Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004)). The Court's role in evaluating whether an expert should testify and how that testimony should be constrained is essential as "expert witnesses have the potential to be both

powerful and quite misleading." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citations omitted); *see also Daubert*, 509 U.S. at 595 (1993); *Price v. Fox Entertainment Group, Inc.*, 499 F. Supp. 2d 382, 387 (S.D.N.Y. 2009) (citing *Daubert*, 509 U.S. at 595 (1993)). It is the proponent of the testimony who bears the burden of establishing by a preponderance of the evidence that the testimony is both relevant and reliable. *See Hous. Works, Inc.*, 362 F. Supp. at 447.

There are several additional limiting factors to consider when evaluating an expert, depending on the specific circumstances of each case. One such limitation is that an expert opinion must not draw or contain legal conclusions. *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible . . . [as they] encroach upon the court's duty to instruct on the law."); *see also Hous. Works, Inc.*, 362 F. Supp. at 447 (finding a witness' legal conclusion opinion was "well beyond the bounds of permissible expert testimony").

Further, testimony that "would amount to little or nothing more than a closing argument from the witness stand" should be curtailed. *In re: Lehman Bros. Sec. & Erisa Litig. v. Ernst & Young LLP*, No. 09 MD 2017, 2015 WL 13707447, at *1 (S.D.N.Y. Sep. 13, 2015) (Kaplan, J.); *see also United States v. Scop*, 846 F.2d 135, 139-41 (2d Cir. 1988) (finding that an expert's statement that defendants' conduct established a manipulative and fraudulent scheme exceeded the permissible scope of expert opinion testimony). Otherwise, the expert's testimony could encroach upon the province of the jury and "threaten unnecessary and likely substantially prejudicial confusion between the Court's instructions on the legal issues" and the witness's opinions. *In re: Lehman Bros.*, 2015 WL 13707447, at *1.

## ARGUMENT

Most of Mr. Dubinsky's expert opinions should be rejected as they go far afield from his proffered expertise in forensic accounting. Throughout his report and deposition testimony, he avers that the Pension Plans never owned any Danish shares, but admits multiple times that whether they owned shares is an issue of Danish securities law that he is not qualified to address. *See, e.g.*, Exhibit A at 39, ⁋ 215; Exhibit B at 28:3-5. He wades further into unfamiliar terrain when he opines about the Pension Plans' liquidity, capitalization, and creditworthiness while having no expertise in what is or is not required for a Pension Plan to trade Danish securities or enter into complex secured transactions. *See, e.g.*, Exhibit A ¶ 124. Indeed, his lack of knowledge of how the transactions at issue were carried out in this case is most glaring when he describes them as closed loop, despite any knowledge of whether it is permissible or impermissible to engage in the net settlement of dematerialized shares — paramount issues in analyzing these sets of structured transactions. *See, e.g.,* Exhibit B at 173:15-16 ("I'm not professing to be an expert in net settlement."). Mr. Dubinsky cannot comment on the law and is not qualified to analyze complex securities transactions concerning Danish securities. His expert opinions should be rejected.

### I. Mr. Dubinsky Cannot Testify as to Whether the Pension Plans Owned Danish Securities Pursuant to Danish Law

Mr. Dubinsky's testimony that the Pension Plans did not own Danish securities is a determination that the jury must make, but can only make after being instructed in Danish law. Mr. Dubinsky has no such expertise and cannot usurp the role of the jury to that end. As the Second Circuit has noted, "expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury in making a decision; rather, it undertakes to tell the

jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). Here, Mr. Dubinsky is doing just what the Second Circuit warned against: using his own definition of ownership uniformed by proper legal principles to tell the jury what result it should reach. Exhibit A ¶ 16.

Mr. Dubinsky's most central opinion is "[t]here is no evidence that the plans ever owned actual shares of Danish securities from their Solo trades . . . ." Exhibit A at 39. Time and again, though, Mr. Dubinsky admitted in his deposition that the issue as to whether the Pension Plans owned shares is an issue of law to which he is not competent to testify.

> Q. Are you offering any opinion in this case about whether the plans were the beneficial owners of the dividends.
> A. Again, I think that's asking for a legal conclusion, and I'm not issuing that legal conclusion.
>
> Exhibit B at 27:15-21

> Q. And you're not offering any opinion about legal ownership under Danish law. Right?
> A. I would agree with you. That would call for a legal conclusion.
> Q. And similarly, you're not offering an opinion about legal ownership under U.S. law, then. Right?
> A. I would agree with you again. That would call for a legal opinion. I'm not a lawyer.
>
> Exhibit B at 28:11-22

> Q. So, you would agree with me that beneficial ownership is a legal question?
> A. [I]n most context where I've seen it, it has been a question of law and interpretation of law to apply that.
>
> Exhibit B at 190:4-8

> Q. Ownership is a legal concept, isn't it?
> A. I think it certainly – well, it's an accounting and legal concept. But from the standpoint of in the ultimate determination who had legal title, yes, that would be a legal determination.
>
> Exhibit B at 69:22-70:3

Q. So the concept of ownership in your Opinion Number 1, you're not willing to tell me under what principle you're giving that opinion, whether it's U.S., EU, Danish, or whatever?
A. Again, I'm not here to issue a legal opinion. I think that would call for a legal opinion.

Exhibit B at 73:16-25

Although we disagree with Mr. Dubinsky as to his conclusions and methodology, we do agree with him that whether the Pension Plans owned securities is a determination that depends on issues of Danish law on which he is not qualified to opine. Expert testimony must be "carefully circumscribed to assure that the expert does not usurp [] the role of the trial judge in instructing the jury as to the applicable law." *Bilzerian,* 926 F.2d at 1294. Here, Mr. Dubinsky is basing his expert opinion on a legal concept that is beyond his training and not within the province of an expert witness.

**II. Mr. Dubinsky's Opinions Otherwise Exceed His Expertise**

Mr. Dubinsky's remaining opinions also should be excluded as they fall outside of his expertise and require specialized training and knowledge he does not have. An expert may only testify as to areas where his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Thus, "Rule 702 mandates that experts 'stay within the reasonable confines of [their] subject area, and cannot render expert opinion on an entirely different field or discipline. In other words, [a]n expert qualified in one subject matter does not thereby become an expert for all purposes." *Davis v. Carroll*, 937 F. Supp. 2d 390, 413 (S.D.N.Y. 2013) (citing *Lappe v. Am. Honda Motor Co., Inc.,* 857 F. Supp. 222, 227 (N.D.N.Y. 1994), *aff'd sub nom. Lappe v. Honda Motor Co. Ltd. of Japan,* 101 F.3d 682 (2d Cir. 1996) and *Malletier v. Dooney Bourke, Inc.,* 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007)); *see also Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 609 (8th Cir. 2020) ("An expert may proceed as far as — but no further than — his specialized knowledge assists him

in going."); *In re Mirena lus Levonorgestrel-Related Products Liability Litig. (No. II),* 341 F. Supp. 3d 213, 278 (S.D.N.Y. 2018) (excluding expert from offering opinion beyond his expertise — especially when he admitted as much during his deposition); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 179 (S.D.N.Y. 2012) (precluding expert from offering opinion on liquidity that was beyond his expertise).

### A. Mr. Dubinsky Is Not Qualified to Offer Opinions on Liquidity, Creditworthiness, and Secured Lending Agreements

Mr. Dubinsky has training and experience as a forensic accountant, but spends the majority of his report discussing concepts totally untethered to that specialized field. First, Mr. Dubinsky's conclusions as to the liquidity and creditworthiness of the Pension Plans and what liquidity/creditworthiness is required to engage in secured lending transactions go far beyond his expertise as a forensic accountant. In his expert report, Mr. Dubinsky argues that the Pension Plan lacks creditworthiness, liquidity, and capitalizations, and with those deficiencies should not have been able to enter into the stock transactions because, he surmises, one could not obtain a real stock loan with those levels of financial health. Exhibit A ¶ 215. He cites no source as the basis for his opinion and provides none in his deposition. Mr. Dubinsky is not an expert in the creditworthiness of Pension Plans; he has no basis to argue what liquidity is required for a Pension Plan to enter into a stock lending agreement; and he has no specialized training in security lending transactions. He seems to be making a layman's observation that with what he perceives as a lack of liquidity, "someone would certainly have to question how they could possibly be doing this type of transaction." Exhibit B at 137:3-13. This is little more than a thinly veiled opinion as to the defendants' mental state, which is also improper. Because he lacks any expertise in liquidity, creditworthiness, and secured lending agreements, Mr. Dubinsky should be precluded from testifying on those matters.

### B. Mr. Dubinsky's Analysis of the Securities Transactions Is Based on Unreliable Data

Mr. Dubinsky's observation that the trading and series of transactions carried out by the Pension Plans were circular, closed loop transactions rests entirely on unreliable, unauthenticated documents — the so-called "Elysium Documents"[1] — that an expert would not ordinarily rely upon. Mr. Dubinsky testified that his "understanding was [the Elysium Documents] were documents that Solo had maintained that was part of a Solo umbrella of companies. . . . But they were business records related to Solo and various entities under Solo's control." Exhibit B at 38:4-19. But Mr. Dubinsky's report does not even attempt to support the conclusion that the Elysium Documents — purportedly seized from an office in Dubai — are, in fact, business records of the Solo Custodians, whose offices were in the United Kingdom.

Mr. Dubinsky's lack of support for this critical conclusion is unsurprising, because SKAT has offered no reason to conclude that the Elysium Documents are business records of the Solo Custodians. At summary judgment, SKAT for the first time produced the Declaration of Rana Shashaa (the "Shashaa Declaration") to explain the Elysium Documents. *See* Decl. of Marc A. Weinstein, Dkt. 824-115 ("Weinstein Declaration"). Of course, Mr. Dubinsky does not cite the Shashaa Declaration anywhere in his report, nor does it appear anywhere in his list of materials considered. As a result, he had literally no basis for asserting or assuming the veracity of the core set of documents that undergird one of his primary conclusions. This is not the stuff that expert reports ordinarily are made of.

Even if Mr. Dubinsky had consulted the Shashaa Declaration, it would not make a difference. According to Shashaa, an employee of Deloitte Professional Services (Dubai) Limited,

[1] Defendants will be moving *in limine* to exclude all such documents from evidence, including any expert opinions that are relying on those documents.

Deloitte assisted with the execution of a Dubai International Financial Courts (DIFC) search order issued against Elysium Global (Dubai) Limited and Elysium Properties Limited. Weinstein Decl. (citing Shashaa Decl. ¶ 5). The documents collected by Deloitte and subsequently produced to Defendants in this MDL are the Elysium Documents. *Id.* ⁋⁋ 2, 40. Absent from the Shashaa Declaration, however, is any description of the connection between the Elysium entities and the Solo Custodians. Indeed, the Shashaa Declaration does not mention any Solo Custodian by name even once.

The Elysium Documents are unauthenticated. SKAT should not be permitted to bypass its burden of proving authenticity by eliciting expert testimony that is so heavily based upon the unauthenticated documents. Mr. Dubinsky's report and testimony relating to the circularity of the transactions should therefore be excluded.

Further, to the extent Mr. Dubinsky's opinions rely on the Elysium Documents, those opinions are not "based on sufficient facts or data." Fed. R. Evid. 702(b). Mr. Dubinsky acknowledged "that a hard drive potentially containing Solo Capital and/or related entities documents has been found but is encrypted and cannot be accessed." Exhibit A at 8 n.5. The Shashaa Declaration refers to an encrypted hard drive that "was not able to be imaged[.]" Shashaa Decl. ¶ 17. Another of SKAT's own experts pointed out the Elysium Documents' lack of trustworthiness. Graham Wade claims in his opening expert report that Solo "retroactively adjusted interest and fees on the original stock loan agreement" for an example trade. Wade Rep. ⁋ 260 ("Exhibit C"). The Court should not permit Mr. Dubinsky to testify as to conclusions drawn on the basis of an admittedly incomplete set of unauthenticated documents, at least some of which appear either inaccurate or altered. *See Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256, 266 ("[W]hen an expert opinion is based on data . . . that are simply inadequate to support

the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."); *Dracz v. Am. Gen. Life Ins. Co.*, 426 F. Supp. 2d 1373, 1376 n.10 (M.D. Ga. 2006), *aff'd*, 201 F. App'x 681 (11th Cir. 2006) "Plaintiff has made no showing that [a proffered expert's] data procured from unauthenticated internet web sites" are "'facts or data' . . . of a type reasonably relied upon by experts in the field[.]").

The Elysium Documents lack all the hallmarks of reliable records. Mr. Dubinsky offers no reason to believe the records were contemporaneously made by someone with knowledge, were regularly made, or kept in the regular course of business. *See* Fed. R. Evid. 803(6)(A)-(C). Nor could he, because the Shashaa Declaration offers no evidence supporting the Elysium Documents' reliability. Nor has any other witness testified to the circumstances of their creation or to Solo's record keeping practices, or provided any other basis to conclude the records were prepared with the care and accuracy typically attendant to the records of a legitimate business. Nowhere does Mr. Dubinsky explain how to square his conclusion that the trades were "fictitious" with his reliance on documents purportedly generated by the alleged mastermind of the fraud. "[A]n expert's methodology must be reliable at every step of the way, and in deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies [and] the method by which the expert draws an opinion from those facts." *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 982 F.3d 113, 123 (2d Cir. 2020) (internal quotation marks and citation omitted). Here, "a rigorous examination of the facts on which [Mr. Dubinsky] relies" reveals his lack of basis to opine that the trading was "circular" or "fictitious."

This is not a circumstance where an expert — aware of all the shortcomings of the data — explains why the data are nonetheless of the kind ordinarily relied upon by an expert. Mr.

Dubinsky thus has *not* offered an expert opinion that reasonable forensic accountants routinely rely on incomplete sets of documents found in the possession of third parties, unsupported by any evidence of when, how, by whom, or for what purpose the documents were prepared. Rather, Mr. Dubinsky has simply assumed that the documents are in fact the business records of the Solo entities, are truthful and accurate records, and opined accordingly. But an expert may not offer an opinion on the assumption that his data is reliable. Rather, the expert may only offer an opinion where it is actually based "on sufficient facts or data." Fed. R. Evid. 702(b). Mr. Dubinsky's "circularity" opinion flunks this test and should be precluded.[2]

### C. Mr. Dubinsky Otherwise Lacks the Training and Qualifications to Provide Opinions on Complex Structured Transactions

Even if SKAT could show that Mr. Dubinsky's opinions were based on authentic, reliable records — which SKAT cannot do — he does not have the training or qualifications to opine on the many parts of a complicated structured transaction. Mr. Dubinsky writes in his report that each of the trades involved the purchase of Danish equity securities, the use of a stock loan to finance the purchase, and forward/futures hedging transactions, which were then reversed "over several weeks or months." Exhibit A ¶ 147. He concludes that these components create a "closed loop . . . with no actual securities traded." Exhibit A ¶ 150. Mr. Dubinsky does not explain, however, why a purchase of securities within the confines of a secured lending agreement with forward hedging transactions creates a closed loop; or, more importantly, how those series of transactions show that securities were not actually traded. Again, he wants to describe these transactions to the

---

[2] No doubt SKAT is trying to use Mr. Dubinsky as a backdoor to bring the Elysium Documents into evidence when they would otherwise constitute unauthenticated, inadmissible, hearsay. However, as noted by the Second Circuit, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

jury from a layman's view, but SKAT wants him to do so with the pronouncement that it is an expert view the jury should accept as beyond their own expertise.

Mr. Dubinsky does not hide from the fact that he has never engaged in arbitrage trading, has no experience in arranging structured transactions, and is offering expert testimony due to his experience in accounting. His opinions construing the complex structure of the series of transactions are beyond his expertise and should be rejected.

## CONCLUSION

Mr. Dubinsky was hired as a forensic accountant, but his expert opinion consists of a smorgasbord of expertise on stock lending, structured transactions, credit, liquidity, and Danish securities law — none of which he is qualified to speak to, and all based on unauthentic, incomplete documents of dubious accuracy. The Court should preclude Mr. Dubinsky from testifying as to: (1) the ownership of shares or dividends; (2) liquidity, creditworthiness, or capitalization requirements for stock lending arrangements; (3) the Elysium documents and all facts and analysis derived therefrom; and (4) characterizations of the structured trading and secured lending.[3]

[3] SKAT has also indicated it may later want to call Mr. Dubinsky as a summary witness for records. If SKAT decides to do so and Mr. Dubinsky is allowed to otherwise testify as an expert, Defendants will likely move to preclude them from using Mr. Dubinsky as a summary witness who might cloak a simple records summary in the guise of his possible expert status.

Dated: New York, New York
June 21, 2024

Respectfully submitted,

DEWEY PEGNO & KRAMARSKY LLP

By: */s/ Thomas E.L. Dewey*

Thomas E.L. Dewey
777 Third Avenue – 29th Floor New York, New York 10017 Tel.: (212) 943-9000
Fax: (212) 943-4325
tdewey@dpklaw.com

KEKER, VAN NEST & PETERS LLP

By: */s/ Elliot R. Peters*

Elliot R. Peters
Julia L. Allen
633 Battery Street
San Francisco, CA 94111 Tel.: (415) 962-7188
epeters@keker.com

*Attorneys for Defendant Michael Ben-Jacob*

KOSTELANETZ LLP

By: */s/ Sharon L. McCarthy*

Sharon L. McCarthy
7 World Trade Center, 34th Floor New York, New York 10007
Tel: (212) 808-8100
Fax: (212) 808-8108
smccarthy@kflaw.com

*Attorneys for Defendants John van Merkensteijn,III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina*

*Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan,*

*Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Alan E. Schoenfeld
Alan E. Schoenfeld
7 World Trade Center250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM CapitalPension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

KATTEN MUCHIN ROSENMAN LLP

By: /s/ David L. Goldberg
David L. Goldberg
Michael M. Rosensaft

50 Rockefeller Plaza
New York, NY 10020
Tel.: (212) 940-8800
Fax: (212) 940-8776
david.goldberg@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K*

*Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*