**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:  18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW**
**ON ISSUES OF DISPUTED FOREIGN LAW AND CHOICE OF LAW**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

SKAT'S NOTICED ISSUE OF FOREIGN LAW ....................................................................4

I.      The Danish standard of proof applies to SKAT's fraud and aiding and abetting fraud claims. ...............................................................................................................................4

DEFENDANTS' NOTICED ISSUES OF FOREIGN LAW.....................................................6

I.      Defendants' interpretation of Danish law on the statute of limitations is unfounded. ........6

II.     Defendants' Danish law arguments concerning beneficial ownership of shares and dividends are meritless..................................................................................................9

III.    SKAT is a constituent part of the Kingdom of Denmark with authority to bring the Danish state's claims arising from defendants' fraudulent tax refund claims. ..................12

CONCLUSION...........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviles v. S&P Glob., Inc.*, No. 17-CV-2987 (JPO), 2020 WL 1689405 (S.D.N.Y. Apr. 6, 2020) ................................................................................................................5

*Babcock v. Jackson*, 191 N.E.2d 279 (N.Y. 1963) .........................................................5

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023) .....7, 10, 11, 12

*Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 140 N.E.3d 511 (N.Y. 2019) ...............................................................................................................6

*Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325 (2d Cir. 2005) .............................................................................................................4, 14

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377 (2d Cir. 2006) ...............................................................................................................4

*Intellivision v. Microsoft Corp.*, No. 07 Civ. 4079 (JGK), 2008 WL 3884382 (S.D.N.Y. Aug. 20, 2008) ...........................................................................................4

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 89 F. App'x 287 (2d Cir. 2004)......................................................................................................5

*Oliver Wyman, Inc. v. Eielson*, No. 15 Civ. 5305 (RJS), 2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016) ...........................................................................................5

*Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001 (N.Y. 1994)....................................5

*Sample Inc. v. Pendleton Woolen Mills, Inc.*, 704 F. Supp. 498 (S.D.N.Y. 1989) ........................4

*Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488 (BSJ) (HBP), 2012 WL 6097726 (S.D.N.Y. Dec. 4, 2012)................................................................................4

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267 (S.D.N.Y. 2009).................................................................................5

**Statutes and Rules**

CPLR § 202.....................................................................................................................6

Federal Rule of Civil Procedure 44.1 ..........................................................................3

In accordance with Pretrial Order No. 36 (ECF No. 978), plaintiff Skatteforvaltningen ("SKAT") submits this memorandum of law regarding choice of law and disputed issues of foreign law raised in the parties' Federal Rule of Civil Procedure 44.1 notices.

## PRELIMINARY STATEMENT

First, as SKAT raised in its Rule 44.1 notice, there is a conflict between Danish and New York law with respect to the standard of proof applicable to SKAT's fraud and aiding and abetting fraud claims. And under New York's choice of law rules, the Danish law preponderance of the evidence, rather than the New York law clear and convincing evidence, standard of proof applies. Where, as here, there is an actual conflict in conduct regulating tort law, New York's "interest analysis" choice of law rules require that the Court apply the law of the jurisdiction with the greater interest in having its law apply. For fraud claims, such as SKAT's, the law of the jurisdiction where the injury occurred, *i.e.*, where the plaintiff is located, has the greater interest. Here, that is Denmark.

Second, defendants asserted in their Rule 44.1 notice that they intend to raise an issue of the Danish statute of limitations, "including the inquisitorial procedure and investigative obligation." Presumably to make the same argument that the Court rejected on summary judgment that some of SKAT's claims are time-barred because SKAT was on notice of its claims from the minute defendants' facially sufficient tax refund claims were submitted. There is no merit to defendants' proffered interpretation of Danish law. Under Danish law, the three-year limitations period on SKAT's claims was suspended and did not begin to run against any particular defendant until SKAT became aware or should have become aware of its claims against that defendant. And Danish courts have repeatedly held that SKAT is not aware of its claim when the taxpayer, or in these circumstances, the fraudster, withholds from SKAT the information that would reveal its claim.

Third, there is no merit to defendants' proffered interpretation of Danish tax law under which "final and binding" agreements to purchase shares from a seller that has none and never delivers any can conjure unlimited amounts of new shares. Defendants' frivolous argument has been rejected by this Court, the Danish National Tax Tribunal, and the Danish courts. As the Court has already determined, Danish civil law follows the doctrine *nemo dat quod non habet* (no one gives what they do not have). Thus, the defendant plans' supposed "final and binding" agreements cannot establish that they owned Danish shares that never existed, irrespective of whatever Danish law regarding "beneficial ownership of dividends" or "taxation of derivatives" defendants intend to raise.

Finally, defendants' argument that SKAT and every other Danish ministry and ministerial authority are separate legal entities from the Kingdom of Denmark is wrong as a matter of Danish law. The power and authority of Danish ministries and ministerial authorities to conduct the affairs of government is founded in the Danish constitution. It is not delegated by the Danish state or the Danish parliament. Nor is there anything to defendants' argument that SKAT does not have the authority to litigate its claims or that it is not the proper plaintiff. Danish ministries and ministerial authorities regularly appear as plaintiffs in the Danish courts to raise the Danish state's claims that are within their mandate. Thus, here, where the Kingdom's claims arise from fraudulent tax refund claims, SKAT, as the tax authority, is the ministerial authority responsible for raising them.

## BACKGROUND

In Pretrial Order No. 36 (ECF No. 978), the Court instructed the parties to, *inter alia*, file all Federal Rule of Civil Procedure 44.1 notices and "serve notice of intent to assert the application of any non-New York law not otherwise required by Rule 44.1 by May 31, 2024," and "file any briefs on disputed issues of foreign law or choice of law by June 24, 2024."

2

On May 31, 2024, SKAT filed its Notice of Intent to Raise Issues of Foreign Law (ECF No. 1027), asserting that it intends to "raise an issue about the applicability of Danish law to its fraud" and "aiding and abetting fraud" claims.[1]

On May 31, 2024, defendants also filed their Rule 44.1 Notice of Intent to Raise Issues of Foreign Law (ECF No. 1020) ("Defs.' Rule 44.1 Notice"), in which defendants identified seven issues of foreign law:

1.    "The Danish statute of limitations, including the inquisitorial procedure and investigative obligation";

2.    "Ownership and administration of dividend withholding tax collected by [SKAT] and assessment of dividend income and tax by SKAT";

3.    "Danish law regarding beneficial ownership of dividends";

4.    "The inapplicability of the civil law principle of *nemo dat* to ownership of securities under Danish law";

5.    "Danish law regarding taxation of derivatives";

6.    "Whether SKAT is the same legal entity as the Kingdom of Denmark or the Danish Ministry of Finance"; and

7.    "Whether SKAT is entitled to bring these claims on behalf of the Kingdom of Denmark under Danish law."

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 44.1, "the court's determination" of foreign law is "a ruling on a question of law," and "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. The party raising an issue of foreign law bears the burden of "proving [the] foreign law to enable" the Court's

---

[1].    SKAT's notice also asserted it intended to raise the applicability of Danish law to its negligent misrepresentation claims, but as it subsequently informed defendants, SKAT no longer contends that there is any potentially outcome determinative conflict between Danish and New York law with respect to those claims.

"application of it." *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488 (BSJ) (HBP), 2012
WL 6097726, at *3 (S.D.N.Y. Dec. 4, 2012).

**SKAT'S NOTICED ISSUE OF FOREIGN LAW**

**I.     The Danish standard of proof applies to SKAT's fraud and aiding and abetting
       fraud claims.**

Where there is a conflict of tort law, the Court, sitting in diversity, applies New York's

"interest analysis" choice of law rules to determine the jurisdiction with the greatest interest in

having its law applied to the particular issue where the laws conflict. *See GlobalNet*

*Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006) ("A federal

court exercising diversity jurisdiction must apply the choice of law analysis of the forum state.").

The first step in the Court's conflicts analysis is to determine whether an actual conflict exists,

*i.e.*, if the "different substantive rules" of the jurisdictions may "have a significant *possible* effect

on the outcome" of the case. *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414

F.3d 325, 331 (2d Cir. 2005) (citations and quotations omitted).[2]

For SKAT's fraud and aiding and abetting fraud claims, there is such an actual conflict

between New York and Danish law with respect to the applicable standard of proof.  Under both

New York and Danish law, defendants are liable in tort for the conduct SKAT alleged in its fraud

and aiding and abetting fraud claims.  (Decl. on Certain Aspects of Danish Law by Mads Bryde

Andersen, dated June 24, 2024 ("Andersen Decl."), ¶¶ 19-22.)  But under New York law, the

standard of proof for SKAT's fraud and aiding and abetting fraud claims is clear and convincing

evidence, *see, e.g.*, *Sample Inc. v. Pendleton Woolen Mills, Inc.*, 704 F. Supp. 498, 505

(S.D.N.Y. 1989), whereas, under Danish law, "[t]he standard of proof is the greater weight of the

---

2.   *See also, e.g.*, *Intellivision v. Microsoft Corp.*, No. 07 Civ. 4079 (JGK), 2008 WL 3884382, at *6 (S.D.N.Y.
     Aug. 20, 2008) (New York's choice of law rules required the application of Connecticut law to plaintiff's
     claims "to the extent there is an actual conflict between the law of New York and the law of Connecticut").

4

evidence or the preponderance of the evidence" for "all civil claimants for all civil claims." (Andersen Decl. ¶ 24.)  The New York law requirement that a "fraud claim . . . be proven by clear and convincing evidence, not merely by a preponderance as under [Danish] law . . . establish[es] that a conflict exists."  *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 283 (S.D.N.Y. 2009) (quotation omitted).

Thus, the Court must apply New York's "interest analysis" choice of law rules, under which "controlling effect" is given "to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation."  *Babcock v. Jackson*, 191 N.E.2d 279, 283 (N.Y. 1963).  Where, as here, the conflict concerns "conduct regulating," as opposed to "loss allocation," rules, the "place of the tort" will usually have the strongest interest in having its law applied.  *Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994).

"Under New York conflict of law principles, fraud claims," such as SKAT's, "are governed by the state in which the injury is deemed to have occurred, which is usually where the plaintiff is located."  *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 89 F. App'x 287, 288 (2d Cir. 2004).  That is the case even if the defendants' wrongful conduct and SKAT's injury occurred in different places because where, as here, the wrongful conduct has a direct relationship to the locus of the injury, the place of the injury "will usually have a predominant, if not exclusive, concern."  *Aviles v. S&P Glob., Inc.*, No. 17-CV-2987 (JPO), 2020 WL 1689405, at *4 (S.D.N.Y. Apr. 6, 2020) (quoting *Babcock*, 191 N.E.2d at 284).  As such, "[i]n a fraud claim, the locus of the tort is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated."  *Oliver Wyman, Inc. v. Eielson*, No. 15 Civ. 5305 (RJS), 2016 WL 5339549, at *4 (S.D.N.Y. Sept. 22, 2016) (quotation omitted).

5

Accordingly, Danish law governs SKAT's fraud and aiding and abetting fraud claims to the extent New York and Danish law conflict, thus the Danish preponderance of the evidence, not the New York clear and convincing evidence, standard applies to SKAT's fraud claims.

## DEFENDANTS' NOTICED ISSUES OF FOREIGN LAW

### I.   Defendants' interpretation of Danish law on the statute of limitations is unfounded.

There is no dispute that Denmark's statute of limitations period may be applicable to SKAT's claims in these actions by virtue of New York's borrowing statute to the extent it is shorter than New York's. *See* CPLR § 202.  But the parties dispute when the Danish limitations period on SKAT's claims began to run.

Under section 3(1) of the Danish Limitations Act ("DLA"), the statute of limitations for all of SKAT's claims is three years.  (Andersen Decl. ¶ 147.)  And the limitations period generally runs from "the earliest point in time whe[n] the claimant could claim satisfaction of its claim."  (*Id.* ¶ 148; *see also id.* ¶¶ 150-55 (explaining that SKAT's tort and restitution claims accrued on the date each payment was made and unjust enrichment claims accrued on the date each defendant received amounts originating from a withholding tax reclaim).)  But when the plaintiff is unaware of its claim or the debtor, the limitations period is "suspended" and starts from the date the plaintiff "became aware or should have become aware of its claim."  (*Id.* ¶ 157 (emphasis removed), citing DLA § 3(2).)  Under Danish law, the "test for whether the claimant 'should have' become aware of its claim" against a particular defendant is "whether the claimant had sufficient information for a prudent person acting in the claimant's shoes to assess the basis for its claim" against that defendant.  (*Id.* ¶ 159.)[3]

---

3.   In "borrowing" Denmark's "statute of limitations under CPLR 202," the Court "import[s]" Denmark's "limitations period, along with the extension and tolls applied in" Denmark, "so that the *entire* foreign statute of limitations . . . applies, and not merely its period."  *Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 140 N.E.3d 511, 519 (2019) (quotations omitted).

In prior submissions, defendants and their expert Professor Ørgaard contended that certain of SKAT's claims are time-barred under Danish law because of SKAT's purported legal obligation, known as the "inquisitorial procedure," to "obtain all relevant information in a case before it renders a decision," and because SKAT had an "investigation obligation" with respect to its claims.  (Decl. of Foreign Law of Anders Ørgaard, dated Nov. 22, 2021, ECF No. 802, ¶¶ 15, 18.)  But as the Court held in rejecting defendants' and Professor Ørgaard's argument on summary judgment, "Danish law does not impose on SKAT a duty to 'make active investigations (like police investigations in criminal matters)' of all facially sufficient tax refund applications it receives 'on a presumption that facts of relevance to the case may be hidden somewhere.'"  *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at *15 (S.D.N.Y. Nov. 20, 2023).

And the Court's determination of Danish law is supported by a substantial body of Danish case law applying the statute of limitations to SKAT's claims against taxpayers.  (*See* Andersen Decl. §§ VI(A)(3)(b)-(c).)[4]  As SKAT's Danish law expert Professor Andersen explains, these decisions differentiate between cases, like here, in which tax authorities rely on a submission that is apparently complete, but from which the defendant has withheld the information necessary to alert the tax authority of its claim, and those cases in which the defendant has disclosed all relevant information to the tax authorities.  (Andersen Decl. ¶ 162.)  Danish courts consistently find that the limitations period is suspended in the former set of cases until the tax authorities discover the information revealing the claim.  (*Id.* ¶¶ 162-76.)  For instance, the Danish Supreme Court held (in U 1935.715 H) that the taxpayer's failure to report

---

4.  For the avoidance of doubt, SKAT does not intend to suggest by relying on these cases that any of the defendants owed Denmark taxes.  Rather, the cases illustrate that Danish law did not, as defendants contend, impose on SKAT a duty to make active investigations of all their facially valid, but actually fraudulent, tax refund claims.

substantial portions of his income suspended the limitations period on SKAT's claim until it

became aware of that undisclosed information seven years later.  (Andersen Decl. ¶ 163 & Ex.

44.)

The cases analyzing "investigative duties" on which defendants and Professor Ørgaard

previously relied are not to the contrary.  Rather, those cases support the principle, articulated by

Professor Andersen, that the statute of limitations is not suspended only "if the taxpayer provided

all relevant and truthful information to the tax authority."  (Andersen Decl. ¶ 177; *see also id.*

¶¶ 178-82 (discussing cases time-barred because the tax authority was in possession of

information necessary to raise its claim).)  These cases provide no support, as the Court already

found, for defendants and Professor Ørgaard's argument that Danish law imposed on SKAT a

duty to "make *active investigations* (like police investigations in criminal matters)" of all facially

sufficient tax refund applications it receives "on a presumption that facts of relevance to the case

may be hidden somewhere."  (Andersen Decl. ¶ 218.)  Or that SKAT is required to assume every

submission it receives contains false information until it can independently prove otherwise.

(*See id*.)

Thus, just like any other Danish plaintiff, the Danish statute of limitations on each of

SKAT's claims against each defendant began to run only when SKAT knew of or should have

known of its particular claim against the particular defendant.  (*Id.* ¶¶ 197-99, 207-10.)  Nor is

mere suspicion enough.  (*Id.*)  The Danish Supreme Court's November 2023 decision finding

that the limitations period on SKAT's claims against the Danish law firm Bech-Bruun was

suspended is illustrative.  (Andersen Decl. ¶¶ 212-17 & Ex. 13.)  The firm had provided the

German North Channel Bank—which issued the fraudulent dividend credit advices for two of

the defendant plans that are part of the scheduled January 2025 trial—a legal opinion that it

8

should not be liable for acting as "custodian" for the purported trading.  (*Id*. ¶ 213 & Ex. 13.)

The Court rejected Bech-Bruun's argument that SKAT should have become aware of its claim

arising from that legal opinion when German authorities informed SKAT that Bech-Bruun had

provided advice to the bank.  (*Id.* ¶¶ 213-14.)  Instead, the Court agreed with SKAT that nothing

in the German authorities' notice should have made SKAT aware of its potential claim against

Bech-Bruun, which SKAT argued it did not discover until it saw the substance of the firm's

opinion.  (*Id.* ¶¶ 215-17.)

## II.    Defendants' Danish law arguments concerning beneficial ownership of shares and dividends are meritless.

Defendants and their Danish law expert Mr. Pilgaard have made the frivolous argument

that under Danish tax law, the defendant plans became beneficial owners of shares and dividends

simply by entering "final and binding" agreements to purchase shares, irrespective of whether

the seller ever had or delivered any shares.  To the extent defendants posit the same argument

now, the Court should reject again this implausible interpretation of Danish law for five reasons.

First, defendants' and Mr. Pilgaard's arguments about "final and binding" share purchase

agreements creating ownership of non-existent shares and dividends have been specifically

rejected by the Danish National Tax Tribunal and the Danish courts.  In particular, the Tax

Tribunal concluded in a challenge by one of the defendant plans (represented by Mr. Pilgaard) to

SKAT's decision to revoke its "tax refunds" that the sort of "final and binding" agreements on

which defendants and Mr. Pilgaard rely were "merely the presentation of a series of agreements .

. . which do not demonstrate the Pension Plan's ownership of the alleged stocks in question."

(Andersen Decl. ¶ 41 & Ex. 9 at 230.)  Likewise, the Danish Eastern High Court held that the

circular trading in which the defendant plans engaged, "without any shares and actual

9

cashflows[,] must be deemed to be ordinary fraud under criminal law that is merely disguised by complicated transactions." (Andersen Decl. ¶ 56 and Ex. 14 at 5.)

Second, the Danish tax law cases on which Mr. Pilgaard relies do not support that final and binding purchase agreements can create ownership of shares that do not exist. (Decl. of Foreign Law of Henning Aasmul-Olsen, dated June 24, 2024 ("Aasmul-Olsen Decl.") ¶ 52.) Rather, those cases simply hold that where ownership of shares is transferred pursuant to a binding agreement, for tax purposes, the transfer of ownership is deemed to have occurred at the time of the contract, not the time of delivery of the shares. (*Id.* & App'x 5.)

Third, defendants have never even demonstrated that "beneficial ownership" is a question of Danish tax law, as opposed to some other source of law. *See, e.g.*, *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *8 ("The decisions by the Danish Tax Tribunal cited by Mr. Pilgaard. . . do not demonstrate that the Danish Tax Tribunal has applied principles of Danish tax law."). Indeed, the construct of ownership of shares under Danish civil law and tax law are generally the same. (Aasmul-Olsen Decl. ¶ 34.) Beneficial ownership is not a Danish law concept with a strict particular meaning and "does not denote a special form of ownership for shares issued by a Danish company." (*Id.* ¶ 71.) Thus, in recent decisions, the Danish Supreme Court has interpreted the term as used in Denmark's tax treaties "to have the meaning ascribed to it in the Model Tax Conventions developed by the OECD." (Andersen Decl. ¶¶ 50-52.)

Fourth, as the Court previously determined, "[e]ven accepting . . . for the sake of argument, that beneficial ownership would be determined under Danish tax law . . . Danish civil law follows the doctrine '*nemo dat quod non habet*' ('no one gives what they do not have'), including with respect to transfers of ownership of shares." *In re Customs & Tax Admin. of the*

*Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *8.  "Accordingly, even

if Danish tax law were a source for the definition of beneficial ownership . . . the starting point"

still "would be whether the [sellers] from which the defendants purportedly purchased the shares

owned the shares in the first place." *Id.* at *9.  And if they did not, the defendant plans could not

have been the owners of any shares, beneficial or otherwise and irrespective of any "final and

binding" purchase agreements.

The Court's previous determination of Danish law is (again) well supported.  Under

Danish law, parties may only transfer ownership of shares actually owned by the seller.

(Andersen Decl. ¶¶ 29-34; Aasmul-Olsen Decl. ¶ 54.)  An agreement for the purchase of shares

by itself creates only contractual rights and obligations between the seller and purchaser, but has

no impact on the company that issued the shares.  (Aasmul-Olsen Decl. ¶ 26.)  On the other

hand, ownership of fungible assets such as shares conveys more than rights between the two

transacting parties—it signifies a property right *vis à vis* the rest of the world including "a

proprietary right to be recognised by the company having issued the shares and creditors of the

seller who would have to respect that the shares were owned by the purchaser."  (*Id.*)  Thus, a

"contract cannot create a share, nor can it pass ownership to an asset that does not exist or is not

owned by the seller."  (Andersen Decl. ¶ 29.)  For example, in U 1964.307 V, the Danish High

Court applied the *nemo dat quod non habet* doctrine to hold that a party could not transfer

repayment interests in a debenture since the transferor had never provided the loan pursuant to

the debenture, and thus the debenture did not exist and was not capable of being transferred.

(Aasmul-Olsen Decl. ¶ 59.)  For ownership to pass as a result of an agreement for the sale and

purchase of shares, the underlying shares must be subject to segregation, in the case of

dematerialized shares, and eventual delivery.  (*Id.* ¶ 27; *see also id.* §§ III(B)-(C).)

11

Finally, defendants' Rule 44.1 notice states that defendants intend to raise "Danish law regarding taxation of derivates," but without specifying what aspect of such law defendants intend to raise. (Defs.' Rule 44.1 Notice, item 5.) Defendants' expert Mr. Pilgaard has previously asserted that by using certain types of transactions, such as short selling, nothing "would prevent shareholders in a Danish company from holding long or short positions that exceed more than 100% of the issued shares of that company as a result of securities lending." (Decl. of Foreign Law of Kasper Bech Pilgaard, dated June 27, 2022, ECF No. 838, ¶ 86.) But as with transactions for the sale and purchase of shares, short sale transactions cannot create more ownership interests in shares of a Danish company than the number of shares issued by that company. (Aasmul-Olsen Decl. ¶ 73.) Moreover, the *nemo dat quod non habet* principle still applies in the short selling context. (*Id.* ¶ 76.) As a result, a short seller could not convey ownership interests in the underlying shares before that short seller obtained ownership of the shares himself. (*Id.* ¶¶ 76-78.)

## III.    SKAT is a constituent part of the Kingdom of Denmark with authority to bring the Danish state's claims arising from defendants' fraudulent tax refund claims.

Defendants and Mr. Pilgaard have previously argued that SKAT lacks standing to assert its claims and suffered no damages from the defendants' fraud because the tax revenue it collects belongs to the Kingdom of Denmark and SKAT is supposedly a separate legal entity from the rest of the Danish state. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *13 ("[T]he defendants have not established that SKAT is a separate legal entity from the Kingdom of Denmark"); Pretrial Order No. 13, ECF No. 243 (denying defendants' motion "for substantially the reasons stated in SKAT's memorandum").

Defendants' argument, if pressed again, fails as a matter of Danish law. SKAT is a constituent part of the Danish government, not separate from it. In particular, SKAT is the

Danish ministerial authority "mandated with the administrative tasks related to the collection of taxes." (Andersen Decl. ¶ 60.)  It is part of the Danish Ministry of Taxation, which along with the other ministries that comprise the Danish government, likewise is not distinct from the Kingdom of Denmark. (*Id.* ¶ 72.)  Under Danish law, SKAT has no separate legal existence from the Kingdom of Denmark. (*See id.* ¶ 61.)

Articles 13 and 14 of the Danish constitution governing the distribution of powers and competencies within the Danish government prove the point decisively. (Andersen Decl. ¶ 67.) Article 14 provides in pertinent part: "[The King] shall decide upon the number of Ministers and upon the distribution of the duties of government among them." (*Id.*)  And Article 13(2) states that "[t]he ministers shall be responsible for the conduct of government; their responsibility shall be defined by statute." (*Id.* ¶ 73.)

Read together, these provisions of the Danish constitution require Denmark to conduct its government through its ministries, with only discretion as to the number of ministers and how government functions are distributed among them. (*Id.* ¶¶ 69-71.)  While the scope of each ministry's responsibilities must be defined by legislation, rather than by executive decree, the ministries derive their authority and power to conduct the affairs of government directly from the constitution, rather than as a delegated responsibility from the Danish legislature. (*Id.* ¶¶ 73-74; *see also id.* ¶¶ 78-81 (describing concurrence by Danish legal scholars).)

Thus, because Danish ministries all are constituent parts of the Danish state, it is well established in Danish case law that claims involving different "government agencies within the Danish government" may be "offset." (*Id.* ¶ 84.)  "If, for example, government branch 'D' is a debtor for a particular claim towards a particular citizen, and government branch 'C' is a creditor in relation to a completely different claim towards that same citizen, then 'D' may use 'C''s

13

claim towards the citizen as a counterclaim to compensate or counterbalance its debt towards the citizen." (*Id.* ¶ 85 (emphasis removed).) "This practice clearly confirms the conclusion above that the Kingdom of Denmark is in effect *one* legal entity, and not several legal entities." (*Id.* ¶ 84.)

Further, SKAT is the proper Danish ministerial authority to assert its claims arising from the defendants' fraudulent tax refund claims. Danish ministries and ministerial authorities, including SKAT and the Ministry of Taxation, regularly appear in their own name to litigate claims concerning the rights and obligations of the Kingdom of Denmark within their mandates. (Andersen Decl. ¶ 96.) Danish law recognizes this authority, including in Section 240 of the Danish Administration of Justice Act, which refers to the "home court" jurisdiction of "the authority being sued *on behalf of the State*." (*Id*. ¶ 97 (emphasis added).)

In Denmark, the Danish state does not litigate private law claims, such as SKAT's, in its own name. (Andersen Decl. ¶ 101.) Instead, ministries and the government agencies that comprise those ministries regularly litigate the Kingdom's claims. (*Id.* ¶¶ 96, 101.) There is thus a substantial body of case law involving SKAT and other government agencies appearing in civil law actions arising from the rights and obligations of the Danish government. (*Id*. ¶¶ 109-35.) For example, in *U 1981.473 H*, the Supreme Court permitted SKAT to pursue a claim for damages against the CEO of a bankrupted company that failed to withhold tax from its employees' salaries. (*Id*. ¶ 109 & Ex. 27.) No party disputed that SKAT had standing to appear as the plaintiff in that case.

And to take another example, SKAT appeared as the plaintiff in the Danish state's case against the Bech-Bruun firm arising from its role in the North Channel Bank fraudulent tax refund claims. Bech-Bruun is one of the leading law firms in Denmark, but at no point did it

14

contest SKAT's standing or assert that SKAT suffered no injury from the fraud. (*Id.* ¶ 92.) Nor

has any other Danish court ever held that a ministry or branch of the Danish government lacked

standing to pursue a claim belonging to the Kingdom of Denmark because it is a separate legal

entity. (*Id.* ¶ 91.)

## CONCLUSION

For the reasons set forth above, SKAT respectfully submits that (i) the Danish law

preponderance of the evidence standard of proof applies to SKAT's fraud and aiding and

abetting fraud claims, and (ii) the Court should accept SKAT's experts' interpretation of Danish

law on the issues defendants raise and reject defendants' erroneous interpretations of Danish law.

Dated: New York, New York           HUGHES HUBBARD & REED LLP
      June 24, 2024

By: /s/Marc A. Weinstein
      William R. Maguire
      Marc A. Weinstein
      Neil J. Oxford
      Dustin P. Smith
      Gregory C. Farrell
      One Battery Park Plaza
      New York, New York 10004-1482
      Telephone: (212) 837-6000
      Fax: (212) 422-4726
      bill.maguire@hugheshubbard.com
      marc.weinstein@hugheshubbard.com
      neil.oxford@hugheshubbard.com
      dustin.smith@hugheshubbard.com com
      gregory.farrell@hugheshubbard.com

      *Counsel for Plaintiff Skatteforvaltningen*
      *(Customs and Tax Administration of the*
      *Kingdom of Denmark)*

281265007