# Exhibit 8

# The legal guide 2024-1 of 2024-01-31
# C.F Subjective tax liability and double taxation

**Introduction**

The legal guide is divided into areas for each agency, which is responsible for its own sections. This is a consequence of the fact that the Tax Administration consists of a number of agencies.

Section C.F Subjective tax liability and double taxation is included in the Tax Agency's part of the Tax Administration's joint legal guide.

**See also**

See also the joint Legal Guide section.

In the section "The legal guide - a contribution to legal certainty" you will find an overview of the main sections of the guide divided into the individual agencies.

**Please note**

The formal rules for the Tax Administration's - including the Tax Agency's - area are described in

- Section A.A Procedural rules for the Tax Administration's tasks
- Section A.B Declaration and settlement
- Section A.C Control and punishment
- Section A.D Charging.

**Abbreviations**

In the section "Legal abbreviations etc." you will find a list of

- legal abbreviations
- Abbreviations for authorities, institutions, etc. used in connection with references to judgments and other decisions, etc.
- Abbreviations for company forms.

**Content**

Section C.F Subjective tax liability and double taxation deals with subjective tax liability and double taxation.

- Full tax liability (C.F.1)
- The calculation of foreign income (C.F.2)
- Limited taxable, subjective and objective rules (C.F.3)
- LL § 33, LL § 33A and relief calculation (C.F.4)
- Boundary crossing rules (C.F.5)
- Research tax scheme (C.F.6)
- Employees in the EU and international organizations (C.F.7)
- Conclusion of double taxation agreements (C.F.8)
- Double tax treaties and international agreements (C.F.9).

**What's new?**

**Professional news**

The guide is updated with the latest adopted legislation and practices.

**Section C.F.3, including subsection C.F.3.1.4.1**

Act no. 710 of June 13, 2023 introduced limited tax liability for certain activities in Denmark's exclusive economic zone, use of hydrocarbon facilities, etc. in connection with the storage of $CO_2$.

The purpose of the amendment is to introduce a legal basis for income taxation.

taxation of foreign companies etc. and resident individuals abroad of activities that they may carry out in Denmark's exclusive economic zone, i.e. outside the 12-mile limit, if the activities in question concern the establishment, operation and use of artificial islands, installations and facilities.

The amendment came into force on July 1, 2023 with effect from January 1, 2024.

**Section C.F.9.2.17.2**

By Act no. 712 of June 13, 2023, Denmark has terminated the double taxation agreement between Denmark and Russia and implemented tax sanctions in the form of defensive measures against Russia. The amendment enters into force on June 15, 2023 with effect from January 1, 2024.

▸**Section C.F.9.2.2.1.2 - new DBO with Algeria**

With effect from January 1, 2024, Denmark has entered into a new DBO with Algeria. See BKI no. 5 of 17.12.2023 and Law no. 1354 of 29.11.2023.

**Section C.F.9.2.6.4 - new DBO with France**

With effect from January 1, 2024, Denmark has entered into a new DBO and associated protocol with France. See BKI no. 6 of 28.12.2023 and law no. 322 of 28.03.2023.◂

## C.F.1   Full tax liability

**Content**

This section is about the onset and cessation of full tax liability for individuals.

The section contains:

- Full tax liability rule (C.F.1.1)
- Persons residing in Denmark (C.F.1.2)
- 6-month stay in Denmark (C.F.1.3)
- Service and residence on board Danish ships (C.F.1.4)
- Persons posted by state and municipality etc. (C.F.1.5)
- Income statement on commencement and termination of tax liability (C.F.1.6)
- Final employment at the end of tax liability (C.F.1.7)
- Persons exempt from tax liability (C.F.1.8)

### C.F.1.1   Full tax liability rule

There is full tax liability for:

- Persons who are resident in this country. See KSL § 1, subsection 1, no. 1.
- Persons staying here for a period of at least 6 months. See KSL § 1, paragraph 1, no. 2.
- Danish citizens serving or permanently residing on board ships domiciled here. See KSL § 1, subsection 1, no. 3.
- Persons who are deployed by the Danish state, regions, municipalities or other public institutions for service outside the realm. See KSL § 1, subsection 1, no. 4.

It follows from the full tax liability that all taxable income must, as a starting point, be included in the income calculation, regardless of whether the income is earned in this country or not. This is called the global income principle. See SL § 4.

The tax liability starts from birth.

If a person dies, the tax liability is transferred to the estate. See DBSL § 1.

**Real Estate Investment Trusts (REITs)**
In some countries, such as the US and UK, it is common for investments in real estate to be made through a Real Estate Investment Trust (REIT). When REITs distribute profits, the starting point is that the distribution constitutes income from real estate. The distribution is therefore covered by Article 6 of the Model Tax Convention. However, it can be argued that distributions to small investors are more in the nature of dividends. Paragraphs 67.1. to 67.7. of the commentary to Article 10 of the Model Tax Convention explain the treatment of REITs.

**See also**
See also section C.F.8.2.2.2.6 on income from real estate.

**Masked salary**
When a shareholder works for the company, doubts may arise as to whether a payment to the shareholder is a dividend or salary.

**Example of an example**
A Cypriot limited liability company paid dividends to pilots who were shareholders in the company. The pilots also worked for the company. The amount of their dividend was agreed in advance based on their seniority and work functions. The size of the dividend did not depend on the company's turnover or financial situation. The Tax Council found that the payments should be considered salary and not dividends for tax purposes. See SKM2010.140.SR and SKM2010.141.SR.

**See also**
See also section C.F.3.1.2 on limited tax liability of salary income and
C.A.3.1 on salary and fee income.

**Overview of judgments, rulings, decisions, SKM notices, etc.**
The table shows relevant decisions in this area:

| Decision | The decision in keywords | Additional comments |
|---|---|---|
| **The Tax Council** | | |
| SKM2010.140.SR and SKM2010.141.SR | Salary. A Cypriot limited liability company paid **dividends** to pilots who were **shareholders** in the company. The pilots also worked for the company. The amount of their dividend was agreed in advance based on their seniority and work functions. The size of the dividend did not depend on the company's turnover or financial situation. The Tax Council found that the payments should be regarded as salary for tax purposes. and not for profit | |

**C.F.8.2.2.2.10.1.2 Distributor of dividends**
It is legal entities that can distribute dividends within the meaning of the model law.

In Denmark, these are limited liability companies, private limited companies and cooperatives. Foreign legal entities may have other designations. The key is that the distributor of profits is owned by one, several or a large number of persons, each of whom is entitled to a share in the profits, even if they do not participate in the operations that generate the profits.

It does not matter what the entity is called. Associations that are treated as legal persons in their country of residence can therefore distribute dividends. These associations are included in the definition of "company" in Article 3(1)(b) of the Model Tax Convention. See section C.F.8.2.2.2.3.1.3 on the concept of company and paragraph 24 of the commentary on Article 10 of the Model Tax Convention. If, on the other hand, several persons run the business jointly, as is the case in a Danish partnership or limited partnership, and share the profits of the business between them, this income is profits from business activities. The taxability of such income is governed by Article 7 of the Model Convention (business profits). However, see also paragraph 27 of the commentary to Article 10 of the Model Convention on partnerships, which are taxed according to the company rules of the country in which they are resident.

**Please note**
Danish foundations and the like cannot distribute dividends. This is because the recipients of the distribution from a foundation do not own a share of the foundation and are not entitled to share in the profits of the foundation. See section C.F.8.2.2.2.21 (Article 21) on other income.

**See also**

- C.F.8.2.2.2.3.1.3 (Article 3) on the concept of company

Copyright © 2024 Karnov Group Denmark A/S

- C.F.8.2.2.2.4.2 (Article 4) on the concept of resident when applied to a legal person
- C.F.8.2.2.2.7 (Article 7) on profits from business activities.

**C.F.8.2.2.2.10.1.3 Recipient of dividends Concept of beneficial owner**

It is always the beneficial owner and not the immediate recipient who is deemed to be the recipient of the proceeds within the meaning of the Model Law. See paragraphs 11 and 12 of the commentary on Article 10 of the Model Law.

The term beneficial owner is the commonly used translation of the English term beneficial owner.

**Please note**

There can be no equivalence between the content of the concept of beneficial owner and the Danish legal concept of rightful income recipient. See for example SKM2011.57.LSR.

**Intermediaries**

The model agreement mentions examples of intermediaries who receive dividends, but who are not the rightful owner of them and thus are not "recipients" in the sense of the model agreement. These are for example:

- An agent
- A nominee, i.e. a named representative of the legal owner
- And drives company
- A fiduciary, i.e. a person who formally owns an asset (in this case a share or other ownership interest), but where the return actually accrues to a beneficiary.

**Example of an example**

The National Tax Tribunal held that a Danish company was obliged to withhold tax at source on interest payments to a Swedish parent company as

this company could not be considered the rightful owner of the interest. The interest was paid on (as a group contribution) to another Swedish company and from there on to a company in Jersey. See SKM2011.57.LSR. The decision should be compared with SKM2011.59.LSR regarding liability for withholding taxes.

**Overview of judgments, rulings, decisions, SKM notices, etc.**
The table shows relevant decisions in this area:

| Decision | The decision in keywords | Additional comments |
|---|---|---|
| **High court rulings** | | |
| SKM2022.469.ØLR | Pursuant to section 2(1)(c) of the Danish Corporation Tax Act, a Luxembourg parent company was liable to tax on dividends distributed by its Danish subsidiary, as neither the Parent-Subsidiary Directive nor the Double Taxation Convention between Denmark and Luxembourg provided for a reduction of or exemption from withholding tax because the Directive was misused and because the Luxembourg company could not be considered the rightful owner of the dividends within the meaning of Article 10(2) of the Convention. | Upheld by the Supreme Court by judgment of June 30, 2023. Not published at the time of going to press. |
| SKM2021.304.BEERR | Pursuant to section 2(1)(c) of SEL, parent companies resident in Cyprus and Luxembourg were liable to tax on dividends from their Danish subsidiaries, as there was no tax liability under the parent company's articles of association. /The subsidiaries' objection that there should be a reduction of or exemption from withholding tax because of abuse of the directive and the double taxation treaties between Denmark and Cyprus and Luxembourg, respectively, was rejected. The subsidiaries' objection that this would be a tightening of practice was rejected. The subsidiary in case B-1980-12 was liable for the failure to withhold withholding tax on dividends. However, as regards one of the two dividend distributions from the company in case B-1980-12, the High Court found that there was no abuse of the Danish-Cypriot double taxation treaty or the Parent-Subsidiary Directive, which is why this dividend distribution was not taxable under section 2(1)(c) of SEL. Section 2(1)(c), fifth sentence (now sixth sentence), must be interpreted to mean that tax exemption under the provision presupposes that the condition in the provision in the current third sentence of section 2(1)(c) is met, i.e. that the taxation of the dividend must be waived or reduced under the Parent-Subsidiary Directive or under a double taxation treaty. | Two cases were heard together. Both verdicts have been appealed to the Supreme Court. Previous Instances:<br>• B-1980-12: Landskatteretten, SKM2012.26.LSR<br>• B-2173-12: Skatterådet, SKM2011.441.SR |

| | | |
|---|---|---|
| SKM2012.121.ØLR | The Eastern High Court upheld the ruling of the National Tax Court, published as SKM2010.268.LSR, on the grounds that the dividend paid was not passed on by the parent company in Luxembourg to the underlying investors, but was instead returned as a loan to the Danish company A A/S. As a result, the parent company in Luxembourg had to be considered the rightful owner of the dividends received. | See also the Ministry of Taxation's comments on the Eastern High Court's judgment in SKM2012.100.SKAT |
| **National Tax Court rulings** | | |

| Decision | The decision in keywords | Additional comments |
|---|---|---|
| SKM2011.57.LSR | The National Tax Tribunal held that a Danish company was obliged to withhold tax at source on interest payments to a Swedish parent company, as this company could not be considered **the legal owner** of the interest. The interest was paid further (as a group contribution) to another Swedish company and from there to a company in Jersey. | The decision should be compared with SKM2011.59.LSR regarding liability for withholding taxes. |
| **The Tax Council** | | |
| SKM2023.15.SR | On xx. xxxx 20xx, H7 received a response to their request for a binding response. In the binding reply, the Danish Tax Council confirmed that H5 would not be subject to limited tax liability on a contemplated dividend distribution from H7. The Tax Council emphasized that the dividend distribution would be used by H5 to acquire new operating companies. Thus, there was no question of the dividend flowing on to the underlying owners. The acquisitions that were considered at the time were not completed, especially due to the current economic uncertainty and high interest rates. H7 therefore wanted to distribute dividends to H5 to be used to repay the company's debt to its subsidiary, H6. The repayment of the debt was part of a major refinancing of the group. Against this background, the questioner wanted it confirmed that H5 would not have limited tax liability on the dividend distribution from H7.<br>The Tax Council could not confirm that H5 would not have limited tax liability on the dividend distribution from H7. It was the opinion of the Tax Council that the dividend distribution should be considered part of an overall arrangement where the purpose was to avoid dividend tax. On this basis, the Tax Council found that H5 had no real right of disposal over the funds from H7 as the dividend was intended to be passed on to H6. The fact that the dividend flowed on to a subsidiary did not change the fact that there was a flow-through. On this basis, the Tax Council found that H5 could not be considered the rightful owner of the dividend distribution from H7. | |

| | | |
|---|---|---|
| SKM2022.495.SR | In recent years, the H Group had carried out a number of restructurings, which, among other things, had resulted in H9 having a debt letter against another group company, H15. The questioner therefore wanted to know whether the distribution of the described benefit to H15 in connection with a liquidation of H9 should be treated in accordance with the rules of the Danish Income Tax Act, and whether section 3 of the Act applied. The Tax Council confirmed that the distribution should generally be treated in accordance with the rules of the Danish Capital Gains Tax Act, cf. section 16 A(3) of the Danish Tax Assessment Act. However, the Tax Board could not confirm that section 3 of the Danish Tax Assessment Act did not apply. | |

| Decision | The decision in keywords | Additional comments |
|---|---|---|
| SKM2012.320.SR | The Tax Council ruled that a company C AB was the **rightful owner** of a liquidation distribution. Emphasis was placed on the fact that neither the received shareholding nor the received liquidation proceeds were to be redistributed and that the claim that A A/S obtains against C AB will lapse by confusion when the claim is distributed as liquidation proceeds and that the proceeds, including the shares etc. are not redistributed to overlying group companies. | |
| SKM2012.246.SR | The Danish Tax Council confirms that an intended restructuring means that company K is deemed to have made a dividend distribution to F A/S and further to its Danish parent company E ApS and then through its Cypriot parent company D and up to C. In the decision, the Tax Council confirms that C is the beneficial owner of the dividend amount and that E ApS is not obliged to withhold dividend tax in connection with the planned restructuring. | |
| SKM2011.142.SR | Based on a specific assessment, the Tax Council found that the recipient in the Netherlands of a dividend distribution was the **rightful owner**. The Tax Council attached importance to the fact that the dividend distribution, which consisted of a loan, was terminated by confusion and that the original loan amount had been used to acquire shares in another company. | |

### C.F.8.2.2.10.2   Dividend distributions covered by Article 10

Article 10 of the Model Tax Convention only deals with the allocation of the right to tax dividends between the two countries that have entered into the DBO and where the distributor is a resident of one country and the recipient of the dividends is a resident of the other country.

Therefore, Article 10 of the Model Tax Convention cannot be applied to dividends paid by a distributor to a recipient who is resident in the same country as the distributor, but who has a permanent establishment in the other country and where the dividends are attributable to the permanent establishment. In this situation, the dividends are instead covered by Article 21(2) of the Model Tax Convention (other income). See paragraphs 4-6 of the commentary on Article 21 of the Model Tax Convention.

Article 10 of the Model Convention is also not applicable to dividends paid by a distributor to a recipient who is resident in the other country but has a permanent establishment in the country where the distributor is resident and where the dividends are attributable to the permanent establishment. In this situation, the dividends are instead covered by Article 7 of the Model Convention. See Article 10(4) of the Model Tax Convention and paragraphs 31-32.2. of the commentary to Article 10 of the Model Tax Convention.

**See also**

- C.F.8.2.2.2.4 (Article 4 on the concept of resident
- C.F.8.2.2.2.21 (Article 21) on other income

### C.F.8.2.2.10.3   The taxability of dividends

**Contents**

This section is about the taxability of dividends. The section contains:

- Taxing rights of the country where the recipient of the proceeds is resident (country of residence) (C.F.8.2.2.10.3.1)
- Taxing rights of the country where the distributing company is resident (source country) (C.F.8.2.2.10.3.2)
- Taxing jurisdiction of the country of origin of the distributor's profits (C.F.8.2.2.10.3.3.3)

### C.F.8.2.2.10.3.1 Taxing rights for the country where the recipient of the proceeds is resident (country of residence)

The country where the recipient of the dividends is resident for tax purposes (country of residence) may tax the recipient of the dividends. See Article 10(1) of the Model Convention.

**See also**

- C.F.8.1.1.1 on what it means to have the right to tax an income, source country and country of residence
- C.F.8.2.2.2.4 (Article 4) on tax residence

### C.F.8.2.2.10.3.2 Taxing rights for the country where the distributing company is domiciled (source country)

**Content**

This section deals with the taxation law of the country where the distributing company is resident.

The section contains:

- Main rule
- Exceptions
- Overview of taxation of dividends in Danish DBOs when Denmark is the source country
- Refund of Danish dividend tax
- Refund of foreign withholding tax

# Den juridiske vejledning 2024-1 af 2024-01-31
# C.F Subjektiv skattepligt og dobbeltbeskatning

**Indledning**

Den juridiske vejledning er opdelt i områder for hver styrelse, som er ansvarlig for egne afsnit. Dette er en konsekvens af, at Skatteforvaltningen består af en række styrelser.

Afsnit C.F Subjektiv skattepligt og dobbeltbeskatning indgår i Skattestyrelsens del af Skatteforvaltningens fælles juridiske vejledning.

**Se også**

Se også det fælles afsnit Om Den juridiske vejledning.

I afsnittet "Den juridiske vejledning - et bidrag til retssikkerheden" findes en oversigt over vejledningens hovedafsnit fordelt på de enkelte styrelser.

**Bemærk**

De formelle regler for Skatteforvaltningens - herunder Skattestyrelsens - område er beskrevet i

- Afsnit A.A Processuelle regler for Skatteforvaltningens opgaver
- Afsnit A.B Angivelse og afregning
- Afsnit A.C Kontrol og straf
- Afsnit A.D Opkrævning.

**Forkortelser**

I afsnittet "Lovforkortelser mv." findes en liste over

- lovforkortelser
- forkortelser for myndigheder, institutioner mv., som er anvendt i forbindelse med henvisninger til domme og andre afgørelser mv.
- forkortelser for selskabsformer.

**Indhold**

Afsnit C.F Subjektiv skattepligt og dobbeltbeskatning handler om subjektiv skattepligt og dobbeltbeskatning.

- Fuld skattepligt (C.F.1)
- Opgørelsen af den udenlandske indkomst (C.F.2)
- Begrænset skattepligtige, subjektive og objektive regler (C.F.3)
- LL § 33, LL § 33A og lempelsesberegning (C.F.4)
- Grænsegængerreglerne (C.F.5)
- Forskerskatteordningen (C.F.6)
- Ansatte i EU og internationale organisationer (C.F.7)
- Indgåelse af dobbeltbeskatningsaftaler (C.F.8)
- Dobbeltbeskatningsoverenskomster og internationale aftaler (C.F.9).

**Hvad er nyt?**
**Faglige nyheder**

Vejledningen er ajourført med den seneste vedtagne lovgivning og praksis.

**Afsnit C.F.3, herunder underafsnit C.F.3.1.4.1**

Ved lov nr. 710 af 13. juni 2023 er der indført begrænset skattepligt ved udøvelse af visse aktiviteter i Danmarks eksklusive økonomiske zone, anvendelse af kulbrinteanlæg m.v. i forbindelse med lagring af $CO_2$.

Lovændringen har til formål at indføre hjemmel til indkomstbeskatning af udenlandske selskaber m.v. og personer hjemmehørende i udlandet af aktiviteter, som disse måtte udøve i Danmarks eksklusive økonomiske zone, dvs. uden for 12-sømilegrænsen, hvis de pågældende aktiviteter vedrører etablering, drift og benyttelse af kunstige øer, installationer og anlæg.

Lovændringen er trådt i kraft den 1. juli 2023 med virkning fra den 1. januar 2024.

**Afsnit C.F.9.2.17.2**

Ved lov nr. 712 af 13. juni 2023 har Danmark opsagt dobbeltbeskatningsoverenskomsten mellem Danmark og Rusland samt gennemført skattesanktioner i form af defensive foranstaltninger mod Rusland. Lovændringen træder i kraft den 15. juni 2023 med virkning fra 1. januar 2024.

▸**Afsnit C.F.9.2.1.2 - ny DBO med Algeriet**

Med virkning fra den 1. januar 2024 har Danmark indgået en ny DBO med Algeriet. Se BKI nr. 5 af 17.12.2023 og lov nr. 1354 af 29.11.2023.

**Afsnit C.F.9.2.6.4 - ny DBO med Frankrig**

Med virkning fra den 1. januar 2024 har Danmark indgået en ny DBO med tilhørende protokol med Frankrig. Se BKI nr. 6 af 28.12.2023 og lov nr. 322 af 28.03.2023.◂

## C.F.1 Fuld skattepligt
**Indhold**

Dette afsnit handler om indtræden og ophør af fuld skattepligt for personer.

Afsnittet indeholder:

- Regel om fuld skattepligt (C.F.1.1)
- Personer med bopæl i Danmark (C.F.1.2)
- 6-måneders ophold i Danmark (C.F.1.3)
- Tjeneste og ophold om bord på danske skibe (C.F.1.4)
- Personer udsendt af stat og kommune mv. (C.F.1.5)
- Indkomstopgørelse ved indtræden og ophør af skattepligt (C.F.1.6)
- Afsluttende ansættelse ved skattepligts ophør (C.F.1.7)
- Personer undtaget fra skattepligten (C.F.1.8)

### C.F.1.1 Regel om fuld skattepligt

Der foreligger fuld skattepligt for:

- Personer, der har bopæl her i landet. Se KSL § 1, stk. 1, nr. 1.
- Personer, der opholder sig her i tidsrum af mindst 6 måneder. Se KSL § 1, stk. 1, nr. 2.
- Danske statsborgere, der gør tjeneste eller varigt opholder sig om bord på skibe med hjemsted her. Se KSL § 1, stk. 1, nr. 3.
- Personer, som af den danske stat, regioner, kommuner eller andre offentlige institutioner er udsendt til tjeneste uden for riget. Se KSL § 1, stk. 1, nr. 4.

Det følger af den fulde skattepligt, at al skattepligtig indkomst som udgangspunkt skal medregnes ved indkomstopgørelsen, uanset om indkomsten er optjent her i landet eller ikke. Det kaldes globalindkomstprincippet. Se SL § 4.

Skattepligten indtræder fra fødslen.

Afgår en person ved døden, overgår skattepligten til dødsboet. Se DBSL § 1.

**Real Estate Investment Trusts (REITs)**

I nogle lande, fx USA og UK, er det almindeligt, at investeringer i fast ejendom foregår gennem en "Real Estate Investment Trust" (REIT). Når REITs udlodder overskud, er det udgangspunktet, at udlodningen udgør indkomst af fast ejendom. Udlodningen omfattes derfor af modeloverenskomstens artikel 6. Der kan dog argumenteres for, at udlodning til små investorer mere har karakter af udbytte. I punkt 67.1.-67.7. i kommentaren til modeloverenskomstens artikel 10 er der en redegørelse for behandlingen af REITs.

**Se også**

Se også afsnit C.F.8.2.2.6 om indkomst af fast ejendom.

**Maskeret løn**

Når en aktionær arbejder for selskabet, kan der opstå tvivl om, hvorvidt en betaling til aktionæren er udbytte eller løn.

**Eksempel**

Et cypriotisk aktieselskab udbetalte dividende til piloter, der var aktionærer i selskabet. Piloterne arbejdede også for selskabet. Størrelsen af deres dividende var aftalt på forhånd ud fra deres anciennitet og arbejdsfunktioner. Størrelsen af dividenden afhang derimod ikke af selskabets omsætning eller økonomiske situation. Skatterådet fandt, at betalingerne skattemæssigt skulle anses for løn og ikke for udbytte. Se SKM2010.140.SR og SKM2010.141.SR.

**Se også**

Se også afsnit C.F.3.1.2 om begrænset skattepligt af lønindtægt og C.A.3.1 om løn- og honorarindtægter.

**Oversigt over domme, kendelser, afgørelser, SKM-meddelelser mv.**

Skemaet viser relevante afgørelser på området:

| Afgørelse | Afgørelsen i stikord | Yderligere kommentarer |
|---|---|---|
| **Skatterådet** | | |
| SKM2010.140.SR og SKM2010.141.SR | Løn. Et cypriotisk aktieselskab udbetalte **dividende** til piloter, der var **aktionærer** i selskabet. Piloterne arbejdede også for selskabet. Størrelsen af deres dividende var aftalt på forhånd ud fra deres anciennitet og arbejdsfunktioner. Størrelsen af dividenden afhang derimod ikke af selskabets omsætning eller økonomiske situation. Skatterådet fandt, at betalingerne skattemæssigt skulle anses for løn og ikke for udbytte | |

### C.F.8.2.2.10.1.2 Udlodder af udbytte

Det er juridiske personer, der kan udlodde udbytte i modeloverenskomstens forstand.

I Danmark er det aktieselskaber, anpartsselskaber og andelsselskaber. Udenlandske juridiske personer kan have andre betegnelser.

Det centrale er, at den, der udlodder overskud, ejes af én, flere eller et stort antal personer, som hver for sig har ret til en andel i overskuddet, selv om de ikke deltager i den drift, der skaber overskuddet.

Det har ingen betydning, hvad enheden kaldes. Sammenslutninger, der behandles som juridiske personer i det land, hvor de er hjemmehørende, kan altså udlodde udbytte. Disse sammenslutninger indgår i definitionen af begrebet "selskab" i modeloverenskomstens artikel 3, stk. 1, litra b. Se afsnit C.F.8.2.2.3.1.3 om begrebet selskab og punkt 24 i kommentaren til modeloverenskomstens artikel 10.

Hvis flere personer derimod driver selve virksomheden i fællesskab, som man fx gør i et dansk interessentskab eller kommanditselskab, og deler virksomhedens overskud imellem sig, er denne indtægt fortjeneste ved erhvervsvirksomhed. Beskatningsretten til sådanne indtægter reguleres af artikel 7 i modeloverenskomsten (fortjeneste ved erhvervsvirksomhed). Se dog også punkt 27 i kommentaren til modeloverenskomstens artikel 10 om interessentskaber, der beskattes efter selskabsregler i det land, hvor de er hjemmehørende.

**Bemærk**

Danske fonde og lignende kan ikke udlodde udbytte. Det skyldes, at modtagerne af udlodningen fra en fond ikke ejer en andel af fonden og ikke har krav på at få andel i fondens overskud. Se afsnit C.F.8.2.2.21 (artikel 21) om andre indkomster.

**Se også**

- C.F.8.2.2.3.1.3 (artikel 3) om begrebet selskab
- C.F.8.2.2.4.2 (artikel 4) om begrebet hjemmehørende, når det anvendes om en juridisk person
- C.F.8.2.2.7 (artikel 7) om fortjeneste ved erhvervsvirksomhed.

### C.F.8.2.2.10.1.3 Modtager af udbytte

**Begrebet retmæssig ejer**

Det er altid den retmæssige ejer og ikke den, som umiddelbart optræder som modtager, der anses for modtager af udbytte i modeloverenskomstens forstand. Se punkt 11 og 12 i kommentaren til modeloverenskomstens artikel 10.

Begrebet retmæssig ejer er den almindeligt anvendte oversættelse af det engelske udtryk beneficial owner.

**Bemærk**

Der kan ikke sættes lighedstegn mellem indholdet af begrebet retmæssig ejer og det danske retsbegreb rette indkomstmodtager. Se fx SKM2011.57.LSR.

**Mellemmænd**

Modeloverenskomsten nævner eksempler på mellemmænd, der modtager udbytte, men som ikke er retmæssig ejer af det og dermed heller ikke er "modtager" i modeloverenskomstens forstand. Det er fx:

- En agent
- En nominee, dvs. en navngivet repræsentant for den retmæssige ejer
- Et conduit company
- En fiduciary, dvs. person, som formelt ejer et aktiv (her en aktie eller anden ejerandel), men hvor afkastet reelt tilkommer en beneficiary (berettiget).

**Eksempel**

Landsskatteretten anså et dansk selskab for at have pligt til at indeholde kildeskat på rentebetalinger til et svensk moderselskab, da

dette selskab ikke kunne anses for retmæssig ejer af renterne. Renterne blev betalt videre (som koncernbidrag) til et andet svensk selskab og derfra videre til et selskab på Jersey. Se SKM2011.57.LSR. Afgørelsen skal sammenholdes med SKM2011.59.LSR vedrørende hæftelsen for kildeskatterne.

**Oversigt over domme, kendelser, afgørelser, SKM-meddelelser mv.**

Skemaet viser relevante afgørelser på området:

| Afgørelse | Afgørelsen i stikord | Yderligere kommentarer |
|---|---|---|
| **Landsretsdomme** | | |
| SKM2022.469.ØLR | Et luxembourgsk moderselskab var i medfør af selskabsskattelovens § 2, stk. 1, litra c), skattepligtig af udbytte udloddet af dets danske datterselskab, idet der hverken efter moder-/datterselskabsdirektivet eller dobbeltbeskatningsoverenskomsten mellem Danmark og Luxembourg skulle ske nedsættelse af eller fritagelse for kildeskatten, fordi der forelå misbrug af direktivet, og fordi det luxembourgske selskab ikke kunne anses som retmæssig ejer af udbyttet i overenskomstens artikel 10, stk. 2's forstand. | Stadfæstet af Højesteret ved dom af 30. juni 2023. Ikke offentliggjort ved redaktionens slutning. |
| SKM2021.304.ØLR | Moderselskaber, der var hjemmehørende henholdsvis på Cypern og i Luxembourg, var i medfør af SEL § 2, stk. 1, litra c), skattepligtige af udbytter fra deres danske datterselskaber, idet der hverken efter moder-/datterselskabsdirektivet eller dobbeltbeskatningsoverenskomsterne mellem Danmark og henholdsvis Cypern og Luxembourg skulle ske nedsættelse af eller fritagelse for kildeskatten, fordi der forelå misbrug af direktivet og overenskomsterne. Datterselskabernes indsigelse om, at der skulle være tale om en praksisskærpelse, blev afvist. Datterselskabet i sag B-1980-12 var ansvarlig for den manglende indeholdelse af udbytteskat. For så vidt angår den ene af de to udbytteudlodninger fra selskabet i sag B-1980-12, fandt landsretten dog, at det hverken forelå misbrug af den dansk-cypriotiske dobbeltbeskatningsoverenskomst eller moder-/datterselskabsdirektivet, hvorfor denne udbytteudlodning ikke var skattepligtig efter SEL § 2, stk. 1, litra c).<br>SEL § 2, stk. 1, litra c), 5. pkt. (nu 6. pkt.), skal fortolkes sådan, at skattefrihed efter bestemmelsen forudsætter, at betingelsen i bestemmelsen i dagældende 3. pkt. til SEL § 2, stk. 1, litra c), er opfyldt, dvs. at beskatningen af udbyttet skal frafaldes eller nedsættes efter moder/datterselskabsdirektivet eller efter en dobbeltbeskatningsoverenskomst. | To sager blev behandlet samlet. Begge domme er anket til Højesteret.<br>Tidligere instanser:<br>• B-1980-12: Landsskatteretten, SKM2012.26.LSR<br>• B-2173-12: Skatterådet, SKM2011.441.SR |
| SKM2012.121.ØLR | Østre Landsret stadfæstede Landsskatterettens kendelse, offentliggjort som SKM2010.268.LSR, med den begrundelse, at det udbetalte udbytte ikke blev ført videre af moderselskabet i Luxembourg til de bagvedliggende investorer, men tværtimod blev tilbageført som et lån til det danske selskab A A/S. Moderselskabet i Luxembourg måtte som følge heraf anses for retmæssig ejer af det modtagende udbytte. | Se også Skatteministeriets kommentar til Østre Landsrets dom i SKM2012.100.SKAT |
| **Landsskatteretskendelser** | | |

| Afgørelse | Afgørelsen i stikord | Yderligere kommentarer |
|---|---|---|
| SKM2011.57.LSR | Landsskatteretten anså et dansk selskab for at have pligt til at indeholde kildeskat på rentebetalinger til et svensk moderselskab, da dette selskab ikke kunne anses for **retmæssig ejer** af renterne. Renterne blev betalt videre (som koncernbidrag) til et andet svensk selskab og derfra videre til et selskab på Jersey. | Afgørelsen skal sammenholdes med SKM2011.59.LSR vedrørende hæftelsen for kildeskatterne. |
| **Skatterådet** | | |
| SKM2023.15.SR | H7 modtog d. xx. xxxx 20xx svar på deres anmodning om bindende svar. I det bindende svar bekræftede Skatterådet, at H5 ikke ville være begrænset skattepligtig af en påtænkt udbytteudlodning fra H7. Skatterådet lagde vægt på at udbytteudlodning vil blive anvendt af H5 til at opkøbe nye driftsselskaber. Der var således ikke tale om at udbyttet ville strømme videre til de bagvedliggende ejere. De opkøb, der blev overvejet på det tidspunkt blev særligt grundet den nuværende økonomiske usikkerhed samt høje renter, ikke gennemført. H7 ønskede derfor at udlodde udbytte til H5 som skal anvendes til at indfri selskabets gæld til dettes datterselskab, H6. Indfrielse af gælden indgik som en del af større refinansiering af koncernen. På den baggrund ønskede Spørger det bekræftet, at H5 ikke ville være begrænset skattepligtig af udbytteudlodningen fra H7. Skatterådet kunne ikke bekræfte, at H5 ikke ville være begrænset skattepligtig af udbytteudlodningen fra H7. Det var Skatterådets opfattelse, at udbytteudlodningen skulle anses for at udgøre en del af et samlet arrangement, hvor formålet var at undgå udbytteskat. På den baggrund fandt Skatterådet, at H5, ingen reel råderet havde over midlerne fra H7 da udbyttet var bestemt til at blive ført videre til H6. Det forhold, at udbyttet strømmede videre til et datterselskab, ændrede ikke på, at der skete gennemstrømning. På den baggrund fandt Skatterådet, at H5 ikke kunne anses for at være den retmæssig ejer af udbytteudlodningen fra H7. | |
| SKM2022.495.SR | H-koncernen havde gennem de seneste år gennemført en række omstruktureringer, som bl.a. havde medført, at H9 havde et gældsbrev mod et andet koncernforbundet selskab, H15. Spørger ønskede derfor at vide, om udlodning af den nærmere beskrevne fordring til H15 i forbindelse med en likvidation af H9 skulle behandles efter reglerne i aktieavancebeskatningsloven, og om ligningslovens § 3 fandt anvendelse. Skatterådet bekræftede, at udlodningen som udgangspunkt skulle behandles efter reglerne i aktieavancebeskatningsloven, jf. ligningslovens § 16 A, stk. 3. Skatterådet kunne dog imod Spørgers ønske ikke bekræfte, at ligningslovens § 3 ikke fandt anvendelse. | |

| Afgørelse | Afgørelsen i stikord | Yderligere kommentarer |
|---|---|---|
| SKM2012.320.SR | Skatterådet afgjorde, at et selskab C AB var **retmæssig ejer** af en likvidationsudlodning. Der blev lagt vægt på, at hverken den modtagne aktiepost eller det modtagne likvidationsprovenu skulle videreudloddes og at fordringen, som A A/S opnår mod C AB, vil bortfalde ved konfusion, når fordringen udloddes som likvidationsprovenu, og at provenuet, herunder aktierne mv., ikke videreudloddes til overliggende koncernselskaber. | |
| SKM2012.246.SR | Skatterådet bekræfter, at en påtænkt omstrukturering medfører, at selskabet K anses for at have foretaget en udbytteudlodning til F A/S og videre til sit danske moderselskab E ApS og derefter gennem sit cypriotiske moderselskab D og op til C. Skatterådet bekræfter i afgørelsen, at C er **retsmæssig ejer (**beneficial owner) af udbyttebeløbet, samt at E ApS ikke er forpligtet til at indeholde udbytteskat i forbindelse med den påtænkte omstrukturering. | |
| SKM2011.142.SR | Skatterådet fandt på baggrund af en konkret vurdering, at modtageren i Nederlandene af en udbytteudlodning var den **retmæssige ejer**. Skatterådet tillagde det betydning, at udbytteudlodningen, der bestod af en fordring, ophørte ved konfusion, og at det oprindelige lånebeløb var blevet anvendt til at opkøbe aktier i et andet selskab. | |

### C.F.8.2.2.10.2 Udbytteudlodninger omfattet af artikel 10

Modeloverenskomstens artikel 10 handler kun om fordelingen af beskatningsretten til udbytte mellem de to lande, som har indgået DBO'en, og hvor udlodderen er hjemmehørende i det ene land, og modtageren af udbyttet er hjemmehørende i det andet land.

Modeloverenskomstens artikel 10 kan derfor ikke bruges på udbytte, som en udlodder betaler til en modtager, der er hjemmehørende i det samme land som udlodderen, men som har et fast driftssted i det andet land, og hvor udbyttet skal henføres til det faste driftssted. I denne situation er udbyttet i stedet omfattet af modeloverenskomstens artikel 21, stk. 2 (andre indkomster). Se punkt 4-6 i kommentaren til modeloverenskomstens artikel 21.

Modeloverenskomstens artikel 10 kan heller ikke bruges på udbytte, som en udlodder betaler til en modtager, der er hjemmehørende i det andet land, men som har et fast driftssted i det land, hvor udlodderen er hjemmehørende, og hvor udbyttet skal henføres til det faste driftssted. I denne situation er udbyttet i stedet omfattet af modeloverenskomstens artikel 7. Se modeloverenskomstens artikel 10, stk. 4, og punkt 31-32.2. i kommentaren til modeloverenskomstens artikel 10.

**Se også**

- C.F.8.2.2.4 (artikel 4) om begrebet hjemmehørende
- C.F.8.2.2.21 (artikel 21) om andre indkomster

### C.F.8.2.2.10.3 Beskatningsretten til udbytte
**Indhold**
Dette afsnit handler om beskatningsretten til udbytte.
  Afsnittet indeholder:

- Beskatningsret for det land, hvor modtageren af udbyttet er hjemmehørende (bopælslandet) (C.F.8.2.2.10.3.1)
- Beskatningsret for det land, hvor det udloddende selskab er hjemmehørende (kildelandet) (C.F.8.2.2.10.3.2)
- Beskatningsret for det land, som udlodderens overskud stammer fra (C.F.8.2.2.10.3.3)

### C.F.8.2.2.10.3.1 Beskatningsret for det land, hvor modtageren af udbyttet er hjemmehørende (bopælslandet)

Det land, hvor modtageren af udbyttet har skattemæssigt hjemsted (bopælslandet), kan beskatte modtageren af udbyttet. Se modeloverenskomstens artikel 10, stk. 1.

**Se også**

- C.F.8.1.1 om hvad det vil sige at have beskatningsretten til en indkomst, kilde- og bopælsland
- C.F.8.2.2.4 (artikel 4) om skattemæssigt hjemsted

### C.F.8.2.2.10.3.2 Beskatningsret for det land, hvor det udloddende selskab er hjemmehørende (kildelandet)
**Indhold**
Dette afsnit handler om beskatningsret for det land, hvor det udloddende selskab er hjemmehørende.
  Afsnittet indeholder:

- Hovedregel
- Undtagelser
- Oversigt over beskatning af udbytte i danske DBO'er, når Danmark er kildeland
- Tilbagebetaling af dansk udbytteskat
- Tilbagebetaling af udenlandsk udbytteskat