# Exhibit 16, Part 1 of 2

Niels Fenger (editor)

# Administrative law



Publishers of the Norwegian
Association of Lawyers and Economists
2018

*2. Who is the competent authority and how is it decided?*

It is assumed that a body, including a private body, has been granted original competence to make decisions etc. in a given area. In the latter case, it may be sufficient under the circumstances that the private body's competence is assumed in the relevant legislation, cf. U 1999.190 Ø and U 2007.3009 H.

A private party that has delegated the authority to act on behalf of a public authority is obliged to comply with the same public law obligations that the public authority itself would have had to comply with in this connection. Therefore, one might also think that a private party performing a similar task based on an original competence must also comply with the same rules. However, it is not quite that simple, cf. chapter 3, section 2.7.10.

According to section 14 of the Constitution, the government (in practice the Prime Minister) can, by royal decree, transfer a task defined by law from one minister to another (from one ministerial area to another). The competence that has been assigned in this way must be equated with being assigned an original competence, and is therefore not a delegation in the sense of administrative law.

The assignment of tasks can also be purely administrative. In this case, the task will be assigned by external delegation, see section 3 below, or by internal delegation, see section 4 below.

## 2.2.  Principles for the division of tasks in general
### 2.2.1.  Factual division of competencies

An allocation according to the nature of the task (the content of the case) is quite common. Such an objective distribution of powers is based on assumptions that certain authorities, by virtue of their composition, special expertise and experience, are particularly well suited to handle certain administrative tasks, including making certain types of decisions.

The division of tasks in the central administration - between ministries and their departments, between central directorates and agencies, and between various councils and boards etc. and the rest of the central administration - is essentially an expression of an objective division of powers. The distribution of tasks between different levels of authority - central/regional or regional/local - is also often an objective distribution of competencies. Examples of this include the division of the power to decide on the issue of indictment between public prosecutors and police directors under section 719 of the Danish Administration of Justice Act and the division of responsibility for the operation of social institutions between regions and municipalities under chapter 2 and section 51 of the Social Services Act, among others. The latter is also an example of an objective division of competencies between authorities that are not part of an administrative system.

*Chapter 20. Judicial review*

significance in terms of tort law. The Supreme Court stated that although the man had been granted a temporary humanitarian residence permit, there was no basis for establishing that he lacked a legal interest in having the legality of the Ministry's decisions reviewed.

In U 2004.3051 H, a client had invited consultants to request prequalification in connection with a tender for consultancy services for an extension. The Council of Practicing Architects, PAR, brought the case before the Complaints Board for Public Procurement claiming that the client had acted in violation of the procurement rules on six points. The Complaints Board found in favor of PAR on 2 of the points, while the client was successful on the remaining 4. PAR then brought an action before the High Court regarding the 4 points. During the judicial review, it emerged that the client had finally abandoned the construction project that was the subject of the case and had paid tender fees to all the participating companies. A decision on PAR's claims would therefore not affect the legal position of the client, the participating companies or PAR. Furthermore, there was no information that a decision would affect others. PAR no longer had any interest in reviewing whether the client had acted in violation of the procurement rules. Neither the consideration for effective control of the administration nor PAR's right of appeal under the procurement rules could lead to a different result. The action was therefore dismissed.

The requirements for the continued relevance of the dispute seem greater if the opposing party is not the administrative authority, but a private party, regardless of whether the case indirectly raises questions about the justification of an authority's actions, cf. U 2008.1897 H and U 2009.1758 H. The same is the case if the review does not concern whether the rights of a specific person have been violated, as the action has the character of abstract norm control with an association as plaintiff.

In U 1987.923 H, Foreningen af Arbejdsledere i Danmark claimed that the Directorate of Unemployment Insurance was obliged to recognize that a circular issued by the Directorate was contrary to the Act on Employment Services and Unemployment Insurance. The Supreme Court found that the association had a current, objective interest in clarifying whether the circular was unlawful and that the necessary information to decide this question could be obtained during the trial. Nevertheless, the action was dismissed, as the circular had been repealed after the case had been brought, and the association no longer had an interest in reviewing the question of the legality of the circular.

### 2.4.7. Specifically about authorities as plaintiffs
#### 2.4.7.1. Against another administrative authority

A public authority may be the addressee of an administrative decision in the same way as a private body or otherwise have a significant, concrete and actual interest in the outcome of the case in the same way as private legal entities. In such cases, the public authority may bring an action against other public bodies, including to have the decisions of these other authorities

902

*2. Procedural issues in a broad sense*
reviewed, cf. U 1977.651 H, U 1996.1183/2 H , U 1997.1693 H, U 1998.1344 H and U 2007.464 H. In the same way as organizations can

903

*Chapter 20. Judicial review*

Public authorities are also granted the right of appeal in administrative appeals and thus have a right of action before the courts, cf. U 2003.64 H and U 2004.904 V.

Subordinate authorities are not normally entitled to appeal superior authorities' decisions to higher administrative authorities, see chapter 2, section 4.4.7. Similarly, the starting point is that a subordinate authority has no right of action in relation to the appeal body in the situation where the subordinate authority has made a decision that has subsequently been reversed by the appeal body, cf. U 1997.1304 Ø, U 1998.672 Ø, U 2002.1472 H and U 2004.1513 H. However, this may be the case if the subordinate authority - e.g. a municipality - has a financial, planning or other relevant interest in the outcome of the case, cf. U 2007.1074 H and U 2007.1078/1 H. The courts do not examine ex officio whether there is standing in such cases.

According to established case law, municipal councils are considered to have concurrent jurisdiction in relation to the municipal supervisory authorities' decisions under the supervisory provisions of the Local Government Act, see e.g. U 1981.637 H, U 1990.601 H, U 1992.699 H and U 2006.3200/2 H and see chapter 19, where sections 9.3.7, 10.2.1.4 and 10.2.2.2.4 also explain that the municipal supervisory authorities are by law authorized to bring actions for recognition to enforce their opinions.

Questions about an authority's right of action may also arise in cases where a ministry disagrees with decisions made by an independent appeals board. On the one hand, such decisions - among other things due to their practice-generating effect - may, under the circumstances, have significant financial and practical effects for the ministry. On the other hand, the purpose of assigning decision-making authority to an independent board is often that the minister should not have any power over the board's specific decisions, but can only control the board through (proposals for) new legislation and the issuance of general administrative regulations.

In U 2009.58 Ø, the Ministry of Employment had no legal interest in bringing an action against the Labor Market Appeals Board to have a specific decision on the right to receive holiday pay under early retirement invalidated. Cf. section 49 of the Tax Administration Act, according to which the Ministry of Taxation can bring the decisions of the tax appeals boards before the courts.

Issues that are of direct interest to private parties are in some cases settled in legal proceedings between public authorities, see for example U 1981.637 H, U 1995.952 Ø, U 1996.583 Ø and U 2000.2088 V and see section 2.5.2 below on the problems that the lack of involvement of the private party concerned may give rise to.

904

*2. Procedural issues in a broad sense*

*2.4.7.2.  With a private party as a defendant*
Also in relation to disputes with private parties, an authority may of course have a legal interest in the same way as if the authority was a private body. In certain cases, public authorities have also sued private parties to have the party ordered to recognize the correctness of the authority's legal opinion, see U 1977.514 H, U 2001.2493 H and U 2007.2012 Ø.

A number of legal provisions require an authority to refer its own decision to the courts. This can be both automatic referral and judicial review, which only takes place if the party so requests. See, for example, judicial review of administrative detention under Chapter 43a of the Administration of Justice Act and judicial review under a number of statutory provisions concerning administrative decisions prohibiting or restricting activities requiring public authorization, cf. e.g. the Auditors Act.
§ Section 52, Section 15 of the Security Guard Act, Section 13 of the Goods Transport Act, Section 13 of the Aviation Act
§ Section 146 b, sections 121(4), 139(3) and 147 e of the Administration of Justice Act, section 23 of the Act on Authorization of Companies in the Electrical, Plumbing and Sewerage Installation Sector, section 64 of the Real Estate Agency Act and sections 11 and 36 of the Act on Authorization of Health Professionals. Related provisions can be found in section 52 of the Aliens Act, section 34 of the Product Safety Act and section 16(3) of the Act on cultivation etc. of genetically modified crops.

Such rules are adopted to make it easier for citizens to have administrative acts reviewed and do not normally preclude private individuals from bringing their own actions before the courts. In most cases, they imply that the action must be brought under civil procedure, with a request from the authority that the party (defendant) recognize that the administrative act is valid. There will normally be a time limit for the party to request the authority to bring the case before the courts.

**2.5. Who should be summoned as a party to the proceedings on the administration's side?**
*2.5.1.  General administrative matters*
In most cases, it is self-evident who should act as a party to the proceedings on the side of the administration, namely the authority that issued the contested administrative decision. However, doubts may arise in cases where several authorities have decided on the matter. In certain areas, the authority to be sued is regulated by law or established in case law. In tax cases, the Ministry of Taxation is a party in cases decided by the National Tax Tribunal, cf. U 2011.781 H. In cases ultimately decided by the Competition Appeal Board, the Competition Council is the proper

905

*Chapter 20. Judicial review*
defendant.

    Otherwise, the action must be brought against the authority responsible for the decision to be challenged. If a decision made by a subordinate authority

*2. Procedural issues in a broad sense*

If the decision can be appealed to a higher administrative authority without having been appealed, the lower instance is the proper defendant. The same applies if the decision has been appealed, but the appeal body refuses to examine the substance of the appeal and the claim is not that the appeal body should have examined the case.

If the appeal body has examined the merits of the case, the appeal body is normally the proper defendant, possibly together with the lower instance. On the other hand, it is irrelevant whether the appeal instance has changed or confirmed the decision. In both cases, the final decision is the appellate instance's, and thus it is the proper party to the case, cf. U 1997.1411 V, U 2000.179 H, U 2005.2809 H and U 2007.2404 H. Whether the lower instance should be involved depends on the extent to which the appeal instance has taken a position on the lower instance's decision, compared to the complaint the plaintiff has against the administrative processing of the case, cf. U 1992.227 H and U 2002.757 H. If the party wishes to make claims that are not covered by the competence of the appeal instance, the party must - possibly also - direct the action against the lower instance, cf. U 2010.818 H.

In U **2003.1150** H, a county had granted an exemption to the municipality in order to build a school whose building exceeded the building area stipulated in the applicable legal plan. The neighbor of the school building then appealed the municipality's decision to the Nature Complaints Board, which, however, did not find in favor of the neighbor. The neighbor then filed a lawsuit against the county and the municipality, claiming, among other things, that they should acknowledge that an extension had been built in violation of the local plan and that the extension should be made legal by demolition or alteration. More alternatively, the neighbor also filed a claim for damages. The county and the municipality claimed that the case should be dismissed with reference to the fact that the time limit for legal action had expired, or alternatively that they were not proper defendants. The Supreme Court found that the county and the municipality were proper defendants as the case concerned, among other things, whether the municipality as local planning authority and the county as landowner and developer should respectively demand and implement physical legalization, and alternatively, whether the municipality and the county should pay compensation for inconvenience caused by the extension. Regardless of the fact that the claim was based on a plea that the municipality was not authorized to grant exemption for the specific conditions, there was no basis for acquittal already as a result of the fact that neither the municipality nor the county was the proper defendant.

If the decision is made by an independent board, the claim must be directed against the board and not against the ministry that has jurisdiction, cf. U 2000.669 H. If the decision is made by a private body whose decisions cannot be appealed to a public authority, the claim must be directed against the private body, cf. U 1998.1552 H, where the Ministry of

907

*Chapter 20. Judicial review*
Education was not the proper defendant in a case concerning a subsidy scheme administered by a private organization, even though it concerned the distribution of public funds, and the Ministry was the competent authority and the highest budget responsible. If the claim is based on a monetary claim, the litigant on the administration's side must, according to the rules of budgetary law, be able to oblige the

908

*2. Procedural issues in a broad sense*

If compensation is claimed, the body that is claimed to have committed the tortuous error must be sued, see U 2002.1566 H.

It should be added that, in this context, the courts also do not ex officio determine that the respondent administrative authority is the proper defendant, but only deal with the issue according to the defendant's claim.

*2 5 2. Actions against the administration of significance for private third parties*
It often happens that a case before an administrative authority does not involve just one party, but that the administration makes a decision that affects several parties who may have opposing interests. For example, it may be a case about a permit to build a house that will be a nuisance to neighbors, etc. This does not change the fact that anyone who is dissatisfied with the administration's decision may take legal action against the administration.

Not infrequently, review cases are conducted between the authority and one of several private parties, regardless of whether the case is of importance to another party and the outcome of the judgment can potentially have significant negative consequences for this party, see for example U 1990.10d/2 Ø, U 2000.2412 H and U 2003.1628 Ø.

In U **2000.1380** H, it was decided in a lawsuit between the Danish Environmental Protection Agency and a property owners' association that the Environmental Protection Agency's decisions on noise limits for a company should be annulled and referred back for reconsideration. This happened without the company being involved in the case.

In U 1999.1 H, a license for a supermarket to stay open on weekends was revoked. The license had been granted by Frederikshavn Municipality. The trial was conducted with the municipality and HK as parties.

In a few cases, however, an action against the authority of importance to third parties has been dismissed.

In U **2006.1717** H, the Supreme Court dismissed ex officio an action against the Danish Health Service Patient Complaints Board seeking a judgment that a doctor - contrary to the Board's decision - had violated the Medical Act, already because the doctor had not had the opportunity to protect his interests during the trial. See also U 2013.3295 H mentioned in section 2.4.5 above and U 2014.3504 H on an insurance company's claim to the National Social Appeals Board that it had fully fulfilled its obligations to pay loss of earning capacity compensation in a case where the injured employee was not a party.

In cases between private parties, preliminary reviews of administrative decisions are also sometimes made without the authority that issued the decision participating in the case, see U 1988.352 H, U 2000.2047 H and U 2014.760 Ø. See also U 2004.4 H.

Niels Fenger (red.)

# Forvaltningsret



Jurist- og Økonomforbundets Forlag
2018

*2. Hvem er den kompetente myndighed, og hvordan afgøres det?*

ges til grund, at et organ, herunder et privat organ, er blevet tildelt originær kompetence til at træffe afgørelser mv. på et givent område. I sidstnævnte tilfælde vil det efter omstændighederne være tilstrækkeligt, at det private organs kompetence er forudsat i den relevante lovgivning, jf. U 1999.190 Ø og U 2007.3009 H.

En privat, der får delegeret kompetencen til at agere på en offentlig myndigheds vegne, er forpligtet til at leve op til de samme offentligretlige forpligtigelser, som den offentlige myndighed selv ville skulle have efterlevet i den forbindelse. Derfor kunne man også få den tanke, at en privat, der udførte en tilsvarende opgave blot baseret på en originær kompetence, tillige skal efterleve de samme regler. Helt så simpelt er det imidlertid ikke, jf. herom kapitel 3, afsnit 2.7.10.

Efter grundlovens § 14 kan regeringen (i praksis statsministeren) ved kongelig anordning flytte en opgave, der er fastlagt ved lov, fra en minister til en anden (fra et ministerområde til et andet). Den kompetence, der er blevet tildelt på denne måde, må sidestilles med at blive tillagt en originær kompetence, og der er dermed ikke i forvaltningsretlig forstand tale om delegation.

Opgavefordelingen kan også ske rent administrativt. Opgaven vil i så fald blive tildelt ved ekstern delegation, jf. herom afsnit 3 nedenfor, eller ved intern delegation, jf. herom afsnit 4 nedenfor.

## 2.2. Principper for opgavefordelingen i øvrigt
### *2.2.1. Saglig kompetencefordeling*

En fordeling efter opgavens art (sagens indhold) er helt sædvanlig. En sådan saglig kompetencefordeling bygger bl.a. på forudsætninger om, at visse myndigheder i kraft af deres sammensætning, særlige sagkundskab og erfaring er særligt velegnede til at tage sig af bestemte forvaltningsopgaver, herunder at træffe bestemte typer af afgørelser.

Opgavefordelingen i centraladministrationen – mellem ministerierne og deres departementer, mellem de centrale direktorater og styrelser indbyrdes samt mellem forskellige råd og nævn mv. og resten af centraladministrationen – er i alt væsentligt udtryk for en saglig kompetencefordeling. Også ved fordelingen af opgaver på forskellige myndighedsniveauer – centralt/regionalt eller regionalt/lokalt niveau – er der ofte tale om en saglig kompetencefordeling. Som eksempler herpå kan nævnes fordelingen af kompetencen til at tage stilling til tiltalerejsningsspørgsmålet mellem statsadvokaterne og politidirektørerne efter retsplejelovens § 719 og fordelingen af ansvaret for driften af sociale institutioner mellem regioner og kommunerne efter bl.a. lov om social service kapitel 2 og § 51. Sidstnævnte er i øvrigt et eksempel på en saglig kompetencefordeling mellem myndigheder, som ikke indgår i et admi-

*Kapitel 20. Domstolsprøvelse*

betydning i erstatningsretlig henseende. Højesteret udtalte, at uanset at manden havde fået en tidsbegrænset humanitær opholdstilladelse, var der ikke grundlag for at fastslå, at han savnede retlig interesse i at få prøvet lovligheden af ministeriets afgørelser.

I U 2004.3051 H havde en bygherre opfordret rådgivere til at anmode om prækvalifikation i forbindelse med udbud af rådgivning vedrørende en tilbygning. Praktiserende Arkitekters Råd, PAR, indbragte sagen for Klagenævnet for Udbud med påstand om, at bygherren på 6 punkter havde handlet i strid med udbudsreglerne. Klagenævnet gav PAR medhold vedrørende 2 af punkterne, mens bygherren fik medhold vedrørende de resterende 4. Derefter anlagde PAR sag ved landsretten vedrørende de 4 punkter. Under domstolsprøvelsen kom det frem, at bygherren endeligt havde opgivet det byggeprojekt, som sagen vedrørte, og udbetalt tilbudsvederlag til alle de deltagende firmaer. En afgørelse af PARs påstande ville derfor ikke have betydning for bygherrens, de deltagende firmaers eller PARs retsstilling. Der forelå desuden ikke oplysninger om, at en afgørelse ville have betydning for andre. PAR havde herefter ikke længere fornøden interesse i en prøvelse af, om bygherren havde handlet i strid med udbudsreglerne. Hverken hensynet til effektiv kontrol med forvaltningen eller PARs klageadgang i medfør af udbudsreglerne kunne føre til et andet resultat. Søgsmålet blev herefter afvist.

Kravene til tvistens fortsatte aktualitet synes større, hvis modparten ikke er forvaltningsmyndigheden, men en privat part, uanset om sagen indirekte rejser spørgsmål om berettigelsen af en myndigheds dispositioner, jf. U 2008.1897 H og U 2009.1758 H. Det samme er tilfældet, hvis prøvelsen ikke angår, om en bestemt persons rettigheder er blevet krænket, idet søgsmålet har karakter af abstrakt normkontrol med en forening som sagsøger.

I U 1987.923 H påstod Foreningen af Arbejdsledere i Danmark Direktoratet for Arbejdsløshedsforsikringen tilpligtet at anerkende, at et af direktoratet udstedt cirkulære var i strid med lov om arbejdsformidling og arbejdsløshedsforsikring. Højesteret fandt, at foreningen havde en aktuel, saglig interesse i at få afklaret, om cirkulæret var lovstridigt, og at de nødvendige oplysninger til afgørelse af dette spørgsmål kunne tilvejebringes under retssagen. Alligevel blev søgsmålet afvist, da cirkulæret efter sagens anlæg var blevet ophævet, og foreningen herefter ikke længere havde fornøden interesse i en prøvelse af spørgsmålet om lovmedholdeligheden af cirkulæret.

### 2.4.7.  Særligt om myndigheder som sagsøgere
### 2.4.7.1.  Mod en anden forvaltningsmyndighed

En offentlig myndighed kan være adressat for en forvaltningsafgørelse på samme måde som et privat organ eller i øvrigt have en væsentlig, konkret og aktuel interesse i sagens udfald på samme måde som private retssubjekter. I sådanne tilfælde vil den offentlige myndighed kunne anlægge søgsmål mod andre offentlige organer, herunder for at få prøvet disse andre myndigheders afgørelser, jf. U 1977.651 H, U 1996.1183/2 H, U 1997.1693 H, U 1998.1344 H og U 2007.464 H. På samme måde som bl.a. organisationer kan

*2. Processuelle spørgsmål i bred forstand*

offentlige myndigheder endvidere gennem at være tillagt klageret i den administrative rekurs få søgsmålsret ved domstolene, jf. U 2003.64 H og U 2004.904 V.

Underordnede myndigheder er normalt ikke berettigede til at klage over overordnede myndigheders afgørelser til højere administrative myndigheder, jf. kapitel 2, afsnit 4.4.7. På tilsvarende måde er udgangspunktet, at en underordnet myndighed ikke har søgsmålsret i forhold til rekursinstansen i den situation, hvor den underordnede myndighed har truffet en afgørelse, der efterfølgende er blevet omgjort af rekursorganet, jf. U 1997.1304 Ø, U 1998.672 Ø, U 2002.1472 H og U 2004.1513 H. Dette vil dog kunne være tilfældet, hvis den underordnede myndighed – f.eks. en kommune – har en økonomisk, planlægningsmæssig eller anden relevant interesse i sagens udfald, jf. U 2007.1074 H og U 2007.1078/1 H. Domstolene påser ikke ex officio, om der i sådanne sager foreligger søgsmålskompetence.

Efter fast praksis anses kommunalbestyrelser at have søgsmålskompetence i forhold til de kommunale tilsynsmyndigheders afgørelser efter kommunestyrelseslovens tilsynsbestemmelser, jf. f.eks. U 1981.637 H, U 1990.601 H, U 1992.699 H og U 2006.3200/2 H og se herom nærmere kapitel 19, hvor der i afsnittene 9.3.7, 10.2.1.4 og 10.2.2.4 også redegøres for, at de kommunale tilsynsmyndigheder ved lov er tillagt kompetence til at anlægge anerkendelsessøgsmål til håndhævelse af deres udtalelser.

Spørgsmål om en myndigheds søgsmålskompetence kan også opstå i tilfælde, hvor et ressortministerium er uenigt i afgørelser truffet at et uafhængigt ankenævn. På den ene side vil sådanne afgørelser – bl.a. på grund af deres praksisskabende virkning – efter omstændighederne kunne have betydelige økonomiske og praktiske virkninger for ministeriet. På den anden side er formålet med at henlægge afgørelseskompetencen til et uafhængigt nævn ofte, at ministeren ikke skal have beføjelser over for nævnets konkrete afgørelser, men alene kunne styre nævnet gennem (forslag til) ny lovgivning og udstedelse af generelle administrative forskrifter.

I U 2009.58 Ø havde Beskæftigelsesministeriet ikke retlig interesse i at anlægge sag mod Arbejdsmarkedets Ankenævn for at få en konkret afgørelse om ret til at få udbetalt feriepenge under efterløn underkendt som ugyldig. Sml. skatteforvaltningslovens § 49, hvorefter Skatteministeriet kan indbringe de skatteretlige ankenævns afgørelser for domstolene.

Spørgsmål, der direkte har interesse for private, bliver i visse tilfælde afgjort under retssager, der føres mellem offentlige myndigheder, jf. f.eks. U 1981.637 H, U 1995.952 Ø, U 1996.583 Ø og U 2000.2088 V og se afsnit 2.5.2 nedenfor om de problemer, som den manglende inddragelse af vedkommende private kan give anledning til.