# Exhibit 17, Part 1 of 2

BENT CHRISTENSEN

# Administrative Law

Tasks
Authority
Organisation

JURIST- OG ØKONOMFORBUNDETS FORLAG

tical importance. The tendency is to delegate more and more tasks to the municipalities.

Grl. § Section 24 of the Constitution prevents the acts consisting of penalties and amnesty from being assigned to administrative bodies other than the Minister of Justice[32]. The scope of the provision is so narrow that it does not have much practical significance either.

On the other hand, Grl. § 14, when it prescribes that the King determines the number of ministers and the distribution of business between them[33]).

Grl. § Section 14 is a royal prerogative or a government prerogative exercised by the Prime Minister. The fact that it is a prerogative means that the legislature cannot deprive the Prime Minister of this organizational power.

What this means in more detail is undoubtedly the number of ministers.

If a law, including an appropriation law, determines the number of ministers, the Prime Minister need not respect the number. He can appoint additional ones. And the additional ministers, whose salaries are not included in the Finance Act, are still entitled to salaries. Their claims are thus equated with the claims based on the fulfillment of guarantees, dams, etc. and which do not require a Finance Act appropriation.[34])

Of course, this does not mean that the legislature is acting in any sense "unlawfully" by allocating salaries to a certain number of ministers. In order to draw up a budget, one must necessarily rely on a certain number of ministers. But the number of ministers is not binding, not even as a prerequisite for authorization. As far as the distribution of business between ministers is concerned - or in the language used in this book- the distribution of tasks between ministerial departments - the meaning of § 14 is not quite so unquestionable. It is well established that the legislature cannot remove or shift the organizational power that the Prime Minister has under section 14. It is also established practice that the numerous provisions in laws and ordinances that assign certain tasks to certain ministers or ministries do not prevent the Prime Minister from transferring the tasks to another minister by royal resolution and without the involvement of the legislature.

The reference in the law or ordinance to a particular minister is therefore considered to be a description of the distribution of tasks between mini

In this way, the practice applicable at the time of the promulgations of the law. If a law is reprinted in its entirety with the content of the law as it stands after the amendments, the opportunity may be taken to change the ministerial designation even in the sections not affected by the amending law if an intervening royal resolution has transferred the tasks to another minister[35]).

Doubts arise if there is special evidence that the legislature or a parliamentary majority has attached or attaches particular importance to this particular task being carried out within this particular ministerial area. The points of emphasis may appear from the legislative history of a law or even be stated in a parliamentary decision[36]). What significance do such statements have for the Prime Minister's exercise of his organizational power?

It goes without saying that the statements may have actual or political significance and may even lead to a vote of no confidence.

The legislature can, of course, also render the prime minister's organizational power irrelevant by abolishing the task, and it can try to starve a particular minister through salary and personnel frameworks.

The question is whether the statements can be said to legally limit the prime minister's organizational power in any reasonably tangible sense. Ultimately, the answer depends on how a minority government's constitutional position in relation to the Danish Parliament is viewed. However, the Folketing has

However, in this particular area, the Danish People's Court has recently ruled that the Folketing's statements do not legally limit the Prime Minister's organizational power[37]). This solution has the great advantage that it is clear.

Grl. § Section 14 only covers the distribution of business between the ministers - in the language used in this book- the distribution of tasks between ministerial areas. Right up to the beginning of this century, there are - admittedly unclear - traces of a view that section 14 also covered the distribution of tasks within the individual ministerial area, i.e.

---

32) *Ross* 420-21, *Zahle* 2.40-41.
33) *Ross* 418 jvf. 236, *Max Sørensen* 126-27, *Zahle* 2.36 *Jørgen Albæk Jensen* Parlamentarismens statsretlige betydning 1989.111, *Germer* I 33, *Poul Andersen:* Statsret 163-64 og *Niels Petersen* Bet. 320/1962 bilag 1 3 7.
34) Budget guide 1989.61. 23-24.
35) N. *Eilschou Holm* in Juridisk Grundbog I 1975, 109.
36) Thus the parliamentary decision of 22/51986, in which the parliament calls on the Prime Minister to transfer the administration of the Act on Hunting and Game Management and the related institutions to the Ministry of Environment in the parliamentary session 1985-86. Milj0ministeriet, Fr 1985-86 A 1125, B 1701 and C 813.
37) 37) Fr 1982-83. 12199 ff. and 12206, Fr 1985-86. 2835 ff. and 11572 and Fr 1986/87.13310.

BENT CHRISTENSEN

# Forvaltningsret

Opgaver
Hjemmel
Organisation

JURIST- OG ØKONOMFORBUNDETS FORLAG