# Exhibit 17, Part 2 of 2

Kap. XX. 2.

Grl. § 14

tisk betydning. Tendensen går i retning af at lægge flere og flere opgaver til kommunerne.

Grl. § 24 hindrer, at de retsakter, der består i benådning og amnesti, tildeles andre forvaltningsorganer end justitsministeren[32]). Bestemmelsens område er så snævert, at heller ikke den har større praktisk betydning.

Det har derimod grl. § 14, når den foreskriver, at kongen bestemmer ministrenes antal og forretningernes fordeling mellem dem[33]).

Grl. § 14 er et kongeligt prærogativ eller et regeringsprærogativ, der udøves af statsministeren. At der er tale om et prærogativ, betyder, at lovgivningsmagten ikke kan fratage statsministeren denne organisationsbeføjelse.

Hvad der nærmere ligger heri, er utvivlsomt for så vidt angår antallet af ministre.

Hvis en lov, herunder en bevillingslov, fastsætter antallet af ministre, behøver statsministeren ikke at respektere antalsangivelsen. Han kan udnævne yderligere. Og de yderligere ministre, hvis løn ikke er optaget på finansloven, har alligevel krav på løn. Deres krav sidestilles altså med de krav, der bygger på indfrielse af garantier, dom m.v., og som ikke behøver finanslovbevilling.[34])

Heri ligger naturligvis ikke, at lovgivningsmagten handler i nogen forstand »retsstridigt« ved at bevilge løn til et bestemt antal ministre. For at kunne opstille et budget må man nødvendigvis bygge på et bestemt antal ministre. Men antalsangivelsen er altså ikke bindende, heller ikke som bevillingsforudsætning.

For så vidt angår forretningernes fordeling mellem ministrene – eller med den sprogbrug, der anvendes i denne bog: opgavefordelingen mellem ministerområder – er § 14's betydning ikke helt så utvivlsom.

Det står fast, at lovgivningsmagten ikke kan fjerne eller flytte den organisationsmagt, som statsministeren har efter § 14.

Der er ligeledes fast praksis for, at de talrige bestemmelser i love og anordninger, der henlægger bestemte opgaver til bestemte ministre eller ministerier, ikke hindrer statsministeren i ved kongelig resolution og uden lovgivningsmagtens medvirken at flytte opgaverne til en anden minister.

Lovens eller anordningens henvisning til en bestemt minister betragtes således som en beskrivelse af den fordeling af opgaverne mellem ministerområder, der var gældende på det tidspunkt, hvor loven blev vedtaget. Hermed stemmer praksis vedrørende lovbekendtgørelser. Hvis en lov i anledning af, at den er blevet delvis ændret ved en ny lov, optrykkes samlet med det indhold, loven har efter ændringerne, kan man benytte lejligheden til at ændre ministerbetegnelsen selv i de paragraffer, der ikke er berørt af ændringsloven, hvis en mellemkommende kongelig resolution har flyttet opgaverne til en anden minister[35]).

Tvivl opstår, hvis der foreligger særlige holdepunkter for, at lovgivningsmagten eller et folketingsflertal har lagt eller lægger særlig vægt på, at netop denne opgave udøves inden for netop dette ministerområde. Holdepunkterne kan fremgå af en lovs forarbejder eller ligefrem være udtalt i en folketingsbeslutning[36]). Hvilken betydning har sådanne tilkendegivelser for statsministerens udøvelse af sin organisationsmagt?

At tilkendegivelserne kan have faktisk eller politisk betydning og endda kan føre til et mistillidsvotum, er en selvfølge.

Lovgivningsmagten kan naturligvis også gøre statsministerens organisationsmagt genstandsløs ved at afskaffe opgaven, og den kan via løn- og personalerammer prøve at udsulte en bestemt minister.

Spørgsmålet er, om tilkendegivelserne i nogen rimeligt håndfast forstand kan siges retligt at begrænse statsministerens organisationsmagt. I sidste instans afhænger svaret vist af, hvordan man i det hele vil betragte en mindretalsregerings forfatningsretlige stilling over for Folketinget. Folketinget har imidlertid på lige netop dette område for ganske nylig lagt til grund, at Folketingets tilkendegivelser *ikke* retligt begrænser statsministerens organisationsmagt[37]). Denne løsning har den store fordel, at den er klar.

Grl. § 14 omfatter kun forretningernes fordeling mellem ministrene – med den sprogbrug, som anvendes i denne bog: opgavernes fordeling på ministerområder. Helt op i begyndelsen af dette århundrede findes – ganske vist uklare – spor af en opfattelse, hvorefter § 14 også omfattede opgavefordelingen inden for det enkelte ministerområde, altså centralad-

32) *Ross* 420-21, *Zahle* 2.40-41.
33) *Ross* 418 jvf. 236, *Max Sørensen* 126-27, *Zahle* 2.36 *Jørgen Albæk Jensen* Parlamentarismens statsretlige betydning 1989.111, *Germer* I 33, *Poul Andersen:* Statsret 163-64 og *Niels Petersen* Bet. 320/1962 bilag 1 37.
34) Budgetvejledning 1989.61. 23-24.

35) *N. Eilschou Holm* i Juridisk Grundbog I 1975, 109.
36) Således folketingsbeslutning af 22/5 1986, hvori folketinget opfordrer statsministeren til i folketingssamlingen 1985-86 at overføre administrationen af lov om jagt og vildtforvaltning samt de dertil hørende institutioner til Miljøministeriet, FT 1985-86 A 1125, B 1701 og C 813.
37) FT 1982-83. 12199 ff. især 12206, FT 1985-86. 2835 ff. og 11572 og FT 1986/87.13310.