# Exhibit 25

ISBN 978-87-619-4160-2

# The Civil Process

Edition: 8

Year of publication: 2020

ISBN: 978-87-619-4160-2

Authors:  Bernhard Gomard, Michael Kistrup

Published by: Karnov Group Denmark A/S

## Section IV. The Parties and the Process Requirement

### Chapter 17. Parties, party capacity and power of attorney

#### 17.2. Partsability

##### 17.2.1. The concept of party capacity [Note 7.]

Party capacity or procedural capacity means the personal conditions for personal or representative to be able to assert legal claims or be met with such claims as a party to a process. Just as everyone (both natural and legal persons) has legal capacity, i.e. the ability to be a party to legal relationships, has all party capacity in Danish courts. [Note 8.] However, both in legal capacity and in party capacity, certain limitations apply. Any - natural or legal - person may be a party to a case on whether the person in question has legal capacity or party capacity, cf. on an association UfR 2015.2684 V, UfR 2000.1575 H and UfR 1996,984 Ø.

##### 17.2.2. Natural persons

Every natural person has party capacity regardless of age, ability to act rationally, nationality or domicile, cf. e.g. UfR 2002.1065 V (TFA 2002.263) about a bailiff's case, directed at a 14-year-old. Jurisdiction and partiality occur before birth. A fetus can be a procedural party, for example in a case about its right of inheritance, cf. the Danish Inheritance Act § 94 and UfR 1926,563 H, or about its right to compensation for loss of dependents. [Note 9.] The question of whether a person may be assumed to have died or has disappeared, so that the rules of the Lost Act apply, arises before the probate court if his heirs make a request for a change, or before the district court, if right, see. § 7 of the Lost-Law, raises a case for presumption of death. The spouse may, during a marriage case, have tried a claim that the marriage has ceased at the death of the other spouse, cf. the Act on the conclusion and dissolution of marriage section 58 a, paragraph 2, no. 6. [Note 10.] The court appoints a legal guardian or a lawyer for the defendant, cf. JD 1951,342 and cf. the Absence Act § 10, paragraph 1, and rpl §§ 449 and 460.

345

Some people cannot be sued, but can sue others themselves. This applies to the King (Queen) and members of the Royal House, cf. Section 13 of the Constitution and Section 25 of the Royal Act. Permission for action against a royal person may be granted by the King with ministerial cosign. [Note 11.]

For use under Karnov Group License Terms

Foreign heads of state, diplomats and international organizations which have been conferred with extraterritoriality law may only be sued by Danish court with the consent of their own or their home state. Also family members belonging to a diplomat's household, and foreigners who are employed in a diplomat's representation, are extraterritorial, see. Ross International Law pp. 190–195 and Gulmann and others. International Law p. 217ff. and UfR 1955,571 V, UfR 1957,126 H and UfR 1963,616 B. [Note 12.]

### 17.2.3. **Legal persons**

The State, municipalities, corporations, foundations and associations, self-governing institutions and any other public or private entity, legal person who has legal capacity, since it may be the holder of rights or duties, also has party capacity, so that it can be subpoenaed and subpoenaed to others, cf. UfR 2015.2684 V and UfR 2014.1249 V [Note 13.], also in cases whether the unit has party capacity, cf. above in Chapter 17.2.1.

> UfR 1976.1011 Ø found that "Christiania" did not have certain organs that could bind the whole, and that Christiania therefore, because of its loose structure, did not have procedural partiality in general. Christiania, on the other hand, was found to have party capacity in relation to the Ministry of Defence, which had conducted negotiations with the residents and given them certain commitments, cf. UfR 1978,315 H. [Note 14.] In UfR 1996,984 Ø (dissens), a motorcycle club was not found to have party capacity in a injuries action against a police inspector. [Note 15.] Different, but specifically justified, UfR 1990,396 H.

346

> In UfR 2004,382 H, it was undisputed that the association Hingitaq 53 could represent the Thule Stammen in an action for, among other things, compensation for lost hunting opportunities and compensation for infringement due to circumstances in deciding and implementing the movement of the tribe in 1953. Thule Stammen was considered a sufficiently clearly defined group of people. "The Danish men's team in handball" was an indefinite circle of handball players, without governing bodies and statutes, etc. and did not have party capacity (process party capacity), cf. UfR 2013,598 SH. An association with limited liability, which only aims to avoid that its members are liable for legal costs, does not have party capacity, cf. UfR 2000.1575 H. However, rejection of the case can be avoided if appropriate security is provided for the costs of the case, cf. UfR 2017.2439 H.

A limited company, limited liability company or a fund that is not registered does not have legal capacity or procedural capacity to participate, cf. UfR 1999,515 Ø, but may, however, be a party to legal action regarding the subscription of shares or shares, cf. Section 41 of the Danish Companies Act, or the Foundation, cf. Section_9 of the Danish Business Act and Section 26 of the Act on Commercial Funds. [Note 16]. If the company lacked legal capacity at the start of the case, but the legal capacity is achieved before the issue is raised during the case, the case may, as the case may be, be promoted despite this original deficiency, cf. UfR 2000.1985 H. Death Estates and Bankruptcy Estates [Note 17.] have party capacity as long as they exist. [Note 18.] Claims from or against a estate that has ended may only be imposed after the treatment of the estate has been resumed (resumed), cf.

347

UfR 1985.441 V with Note 1 and below in Chapter 24.[Note 19.] The resumption of the estate must normally have taken place before the start of the case, cf. UfR 2002.434 V.

Every independent management subject has party capacity. Management subjects are in addition to state and municipalities, among other things. Danmarks Nationalbank and Danmarks Radio. The police, the municipal social committees, the school system and other entities that are part of an administrative hierarchy do not have party capacity. Party to legal proceedings relating to these authorities is the state or municipality.[Note 20.] However, proceedings may be brought by and against such an authority if it acts on behalf of the State or the municipality, cf. the jurisdiction above Chapter 6.2.2.1. [Note 21.]

For use under Karnov Group License Terms

Different from the problem addressed here is the situation that the legal person, e.g. a landowner's association, could certainly have procedural party capacity but cannot act as a party to the specific case because the legal person - the landowner's association - cannot be considered to represent the stated alleged rightholders, cf. e.g. UfR 2013.707 Ø and UfR 2019.437 H about the Patient Data Association, which was not itself specifically and individually affected by the questions requested in the case, and was not conferred by law on the complainant, party status or legal standing or otherwise conferred a special status in connection with data processing of patient information. In this situation, the legal person lacks legal interest in the action and therefore does not have standing for action. Check out these questions in chapter 19.

Footnotes

[7.]     Jfr. Bormann and Trabjerg: Inheritance Act p. 421 and Irene Nørgaard, Caroline Adolphsen and Eva Naur Jensen: Inherited p. 36.

[8.]     As per the definition of process capability below in Chapter 17.3.

[9.]     Jfr. Borum Personret p. 1f., Taksøe-Jensen Personal Court p. 29f. and Lynge Andersen etc. Unemployed's assets p. 15.

[10.]    About the probate courts' practice with regard to the submission of judgment or order for someone to have died, see J.A. Andersen Change of Estates p. 23, Gomard Addendum to the Change Act p. 10f., Taksøe-Jensen Change of estates p. 174–176, Walbom in Death Change, pp. 22f., Werlauff inheritance and change, pp. 246f., and A.G. Kampmann in the clerk in 1981 p. 46f. The rules of the Lost Marriage Act shall not apply if evidence of the death is kept, cf. Trolle and Borum Comment on the Gone Commentary Act, 1946, p. 15.

[11.]    Jfr. Ross Constitutional Law p. 570 and p. 579f.

[12.]    A waiver of immunity in certain relationships is valid, cf. UfR 1982.1128 H, according to which the rules of international law on the immunity of States did not prevent an embassy from being sued on the basis of a private contract concluded by the embassy, which contained a provision that disputes should be settled in the courts of the receiving State.

[13.]    See also UfR 2014,729 Ø, according to which the Danish Agriculture Association had both party capacity and legal jurisdiction in the case of a statement was defamatory.

[14.]    Jfr. Ernst Andersen Personret p. 76ff., Hasselbalch Association Court p. 453f. and Kaufmann Business Owners' Self-Governing Institutions p. 336ff. UfR 1969,898 V did not find that a beautification association, which had not held meetings or engaged in association activities since 1939 and had no laws or statutes, and of whose last elected board only the chairman was alive, could be party to a trial. UfR 1984.1038 Ø did not find that the 'Committee Against Animal Testing' and 'The Voice of Animals', which were, respectively, an organisation and a working group consisting of each of an indefinite and varying circle of persons and who did not have statutes, joint economic responsibility, had procedural party capacity. See about "grass root organizations" E.M. Basse in J 1979.585ff. and Jens Møller in Juristen 1992 p. 95.

[15.]    In UfR 1996,984 Ø it was stated that the club had not written statutes, that the club's "President" was a spokesman for the club, but otherwise a member thereof, that the treasurer, in whose name the club's accounts were "probably" kept, had enough prepared accounts, but that he did not have to show them that there were no subscription rules for the club, just as there were no general meetings, but large meetings from which no minutes were drawn up. The High Court's majority found that it was possible that the club was

For use under Karnov Group License Terms

one of several people formed co-operation that was established for a specific purpose, but that the club apparently was without established rules and without bodies that could act on behalf of all participants, partly in relation to these, partly in relation to external matters. Subsequently, the club, which had not had a legal relationship with the police inspector prior to the lawsuit, did not have a procedural capacity in relation to this. The judgement was criticized by Krenchel and Friis Hansen in UfR 1997B273ff, but cf. Jens Frederik Hansen in UfR 2002B143ff . In UfR 2002.2722 V (TfK 2002.733), "Hells Angels Randers" was not considered a legal person. See also UfR 2009.2225 H, where the Board of Directors of a Greenland housing department did not have legal jurisdiction in proceedings against the landlord regarding the legality of the rent size. The Supreme Court hereby amended the decision in UfR 2007.29 Ø.

[16.]    Gomard and Schaumburg-Muller Capital Companies and Trade Funds p. 207ff., Krüger Andersen Aktie- and limited liability law p. 194ff., Werlauff Company Court p. 235ff., and Schaumburg-Müller and Werlauff: The Danish Companies Act with comments p. 332ff., as well as inter alia. UfR 2000.1985 H and UfR 2001.1638 Ø. A non-registered company cannot be subject to bankruptcy proceedings, cf. UfR 1966,675 Ø. In UfR 1978,217 V, pledge was made in the founder's capital deposits. An appeal brought by the unregistered company was rejected. It does not preclude the fact that a registered company has designated itself with a different name than the registered company, cf. UfR 1955.570 V and UfR 1961.949 Ø.

[17.]    Even if they are without funds, see. UfR 2005.1199 H and UfR 1999.1195 H. Jfr. also UfR 2018.805/2 H.

[18.]    Jfr. UfR 2005,459 Ø, where a K/S, whose complementary company was dissolved, did not have party capacity. The K/S had obtained a ruling in the District Court, but the complementary company had been dissolved after the District Court's ruling in the case, and the High Court repealed the District Court's ruling. In UfR 2001.1638 Ø, the High Court ruled out rejection in a similar situation. ml. UfR 1989,969 Ø after which a case brought against a Danish branch of a US limited company was rejected when the parent company was dissolved and the branch deleted by the limited company register.

[19.]    However, if legal proceedings of importance for delimited parts of the estate are pending, these may be completed, as the case may be, after the estate (preliminary) has ended, cf. Section 149 of the Bankruptcy Act.

[20.]    See about the concept of special administrative body Jørgen Albæk Jensen in Management Law, general topics p. 67ff., about administrative authorities Gammeltoft-Hansen, etc. Administrative right p. 83ff. and on administrative bodies Bent Christensen Administrative right p. 51ff., on administrative authorities Niels Fenger in Administrative right p. 131ff. On the action of the supervisory authority against unlawful management in the case of actions against members of the municipal council, see the same work p. 668f. The question of which authority is rightly sued is referred to by Trolle in UfR 1964B148-151, Mathiassen in UfR 1981B241f. and Basse in UfR 1983B389ff. as well as Spleth in UfR 1984B185ff.

[21.]    UfR 1964,328 Ø concerns the question whether a lawsuit should be directed against the district board or against the Danish Bar and Law Society Council. UfR 1941,848 V, which judges a child protection and not the municipality to pay compensation, is criticized by Poul Andersen in the Administrative Law p. 61 note 5 and p. 648 note 4.

For use under Karnov Group License Terms

ISBN 978-87-619-4160-2

# Civil Procedure

**Bernhard Gomard, Michael Kistrup**

**ISBN:** 978-87-619-4160-2

**Edition: 8**

## Section II. The Courts, the Judges, and the Lawyers

### Chapter 6. The Local and International Jurisdiction of the Ordinary Courts

#### 6.2. Venue

#### 6.2.1. Natural Persons

*6.2.1.3. Danish Exterritorial Persons Residing Abroad*

108

Persons who have Danish nationality and reside abroad, but are not subject to the jurisdiction of the country of residence, have their venue in Copenhagen if they do not also have a residence here in the country. The rule applies to both persons employed in Danish service and in international organizations, cf. § 236. [Note 18-1]

**Fodnoter**

18.. The words in the provision of § 236 do not include a person employed at a Danish representation but who does not have Danish nationality. The provision should presumably be applied analogously to such persons, cf. the previous rule in § 237. See also on immunity below in Chapter 17.2.2. and Chapter 34.2. as well as Gutmann et al.: International Law Chapter 10, Arnt Nielsen: International Business Law p. 503 and the same: International Private and Procedural Law pp. 128-131 and UfR 1982.1128 H, according to which a foreign embassy that had entered into a contract containing a clause on the resolution of disputes by a Danish court could not oppose a judgment by such a court.

ISBN 978-87-619-4160-2

# Civil Procedure

Bernhard Gomard, Michael Kistrup  ISBN: 978-87-619-4160-2

Edition: 8

## Section II. The Courts, the Judges, and the Lawyers

### Kapitel 6. The Local and International Jurisdiction of the Ordinary Courts

#### 6.2. Venue

##### 6.2.2. Legal Entities

###### 6.2.2.1. State and Municipality

The state has its legal venue in the judicial district where the authority representing the state in the case has its office, cf. § 240, subsection 1. A case against the state can be brought against the authority that has the competence to make a decision in the matter to which the case pertains. [Note 19-1] Most often, it is of minor importance to the state where a case is heard, whereas it can be an advantage for the plaintiff that the case can be heard at the plaintiff's venue. Therefore, with the police and judicial reform of 2006, a principle already established in 1996 was continued, allowing lawsuits against certain state authorities to be brought at the plaintiff's venue. Hereafter, cases concerning the review of decisions by central state authorities are brought at the plaintiff's venue, cf. § 240, subsection 2, cf. UfR 2013.2928 Ø and FM 2013.213 Ø. To achieve a geographical distribution of cases against the state, the plaintiff's venue is now the only proper venue, unless the parties have agreed otherwise, and the plaintiff cannot unilaterally choose the state's venue as the forum for their case. [Note 20-1] This provision includes all central state authorities, i.e., ministries, agencies, and central state appeal bodies, [Note 21-1] but not decentralized state authorities such as regional administrations, police commissioners, labor market regions, and social boards. [Note 22-1] Independent administrative entities are also not included. A prerequisite for applying this provision is that the plaintiff has a venue in Denmark. If this is not the case, the state's venue must be chosen, cf. § 235, subsection 1.

109

It is only cases concerning the review of the decisions of the mentioned state authorities that are covered by § 240, subsection 2. Property law cases directed against the state are brought according to the general rules of jurisdiction, cf. UfR 2010.2030 V. If the case concerns both a review of a decision by a central state authority and a claim for compensation against the same authority, both matters can be reviewed at the plaintiff's venue, cf. § 249. [Note 23-1]

Municipalities and regions have their venue in the judicial district where the main office (town hall) is located, cf. § 239.

The rules on the venue of natural and legal persons generally do not preclude the plaintiff from using an alternative venue, where the conditions for this are met, cf. UfR 2008.2501 V, or from agreeing with the parties on another venue, cf. § 245. However, in relation to the review of decisions by central state authorities, the situation is different. While § 240 explicitly allows for the agreement of another venue, cf. also above with note 21, § 240, subsection 2, specifies that the case must be brought at the plaintiff's venue. The motives for the provision [Note 24-1] also state, with reference to the need for geographical distribution of cases, "that such cases not only can but as a general rule should be brought

at the plaintiff's venue." This special purpose, which means that the rule of jurisdiction is not solely designed in the interest of the plaintiff, implies that the plaintiff's venue – unless otherwise agreed (possibly implicitly) – is a mandatory venue. The reservation in the explanatory notes ("as a rule") can only be assumed to refer to the possibility of an agreed venue, cf. § 245. On the other hand, neither the wording of the law nor the explanatory notes are assumed to prevent a jurisdiction agreement from being made implicitly or by passivity, cf. more details below in Chapter 6.7. Except for the (rare) cases of default, the courts are not required ex officio to ensure that § 240, subsection 2, is complied with..

**Footnotes**

19. Cf. Niels Fenger in Administrative Law p. 904f, where doubtful situations are also mentioned, Jon Andersen in *Gamletoft et al.: Administrative Law* and Karsten Revsbech in Administrative Law, General Topics p. 377 and report... L. 1052/1085 p. 75.

20. If the state as the defendant does not object to an incorrect choice of venue, the chosen court, provided it has subject-matter jurisdiction, is considered the proper venue, cf. § 351, subsection 4.

21.. E.g. The Nature Appeals Board and the Appeals Board, cf. Parliamentary Record 2005–06, supplement A, p. 5371 (Regarding no. 79 (§ 240, subsection 2)).

22.. Cf. Parliamentary Record 2005–06, supplement A, p. 5371 (Regarding no. 79 (§ 240, subsection 2)). The Dispute Board is established by

The Vocational Education Act and resolves disputes regarding employment-related issues between employers and students. The board, like the Nature Appeals Board, is a central state authority covered by § 240, subsection 2. See for earlier practice UfR 1994.192 V, which cannot be prejudicial for the current rules. Regarding the Dispute Board, see Michael Kistrup: The Vocational Education Act p. 157pp.

23. Cf. Parliamentary Record 2005–06, supplement A, p. 5371 (Regarding no. 79 (§ 240, subsection 2)).

24. Cf. Parliamentary Record 2005–06, supplement A, p. 5371 (Regarding no. 79 (§ 240, subsection 2)) and p. 5260

(section 3.2.1.2. (Section III)).

# Civilprocessen

Forfattere: Bernhard Gomard, Michael Kistrup

**ISBN:** 978-87-619-4160-2     **Udgave:** 8

## Afsnit II. Domstolene, dommerne og advokaterne

### Kapitel 6. De almindelige domstoles stedlige og internationale kompetence

#### 6.2. Hjemting

##### 6.2.1. Fysiske personer

*108*

*6.2.1.3. Danske eksterritoriale personer bosat i udlandet*

Personer, der har dansk indfødsret og er bosat i udlandet, men ikke er undergivet bopælslandets domsmyndighed, har hjemting i København, dersom de ikke tillige har bopæl her i landet. Reglen gælder både personer ansat i dansk tjeneste og i internationale organisationer, jfr. § 236.[Note 18.]

**Fodnoter**

18.. Ordene i bestemmelsen i § 236 omfatter ikke en person, som er ansat på en dansk repræsentation, men som ikke har dansk indfødsret. Bestemmelsen må formentlig anvendes analogt på sådanne personer, sml. den tidligere regel i § 237. Se i øvrigt om immunitet nedenfor i kapitel 17.2.2. og 34.2. samt *Gulmann m.fl.*: Folkeret kap. 10, *Arnt Nielsen*: International erhvervsret s. 503 og samme: International privat og procesret s. 128-131 og UfR 1982.1128 H hvorefter en fremmed ambassade, der havde indgået en entrepriseaftale indeholdende en klausul om afgørelse af tvister ved dansk domstol ikke kunne modsætte sig pådømmelse ved en sådan domstol.

# Civilprocessen

Forfattere:   Bernhard Gomard,  Michael Kistrup

**ISBN:** 978-87-619-4160-2                                                          **Udgave:** 8

## Afsnit II. Domstolene, dommerne og advokaterne

### Kapitel 6. De almindelige domstoles stedlige og internationale kompetence

#### 6.2. Hjemting

#### 6.2.2. Juridiske personer

***6.2.2.1. Stat og kommune***

Staten har hjemting i den retskreds, hvor den myndighed, som stævnes på statens vegne, har kontor, jfr. § 240, stk. 1. En sag mod staten kan anlægges mod den myndighed, som har kompetence til at træffe afgørelse i det anliggende, sagen angår.[Note 19.] Som oftest vil det være af mindre betydning for staten, hvor en sag skal føres, hvorimod det kan være en lettelse for sagsøger, at sagen kan føres ved sagsøgers hjemting. Ved politi- og domstolsreformen fra 2006 videreførtes derfor et allerede i 1996 knæsat princip om, at søgsmål mod visse statslige myndigheder kan anlægges ved sagsøgers hjemting. Herefter anlægges sager om *prøvelse af centrale statslige myndigheders afgørelser* ved sagsøgers hjemting, jfr. § 240, stk. 2, jfr. UfR 2013.2928 Ø og FM 2013.213 Ø. For at opnå en geografisk spredning af sagerne mod staten, er sagsøgers hjemting nu *eneste* værneting, medmindre parterne har aftalt andet, og sagsøger kan ikke ensidigt vælge statens hjemting som forum for sin sag.[Note 20.] Bestemmelsen omfatter alle centrale statslige myndigheder, dvs. ministerier, styrelser og centrale statslige klageinstanser,[Note 21.] men ikke decentrale statslige myndigheder som statsforvaltninger, politidirektører, arbejdsmarkedsregioner og sociale nævn.[Note 22.] Selvstændige forvaltningssubjekter er ej heller omfattet. En forudsætning

*109*

for bestemmelsens anvendelse er, at sagsøger har hjemting i Danmark. Er dette ikke tilfældet, må statens hjemting vælges, jfr. § 235, stk. 1.

Det er kun sager, der angår *prøvelse* af de nævnte statslige myndigheders afgørelser, der omfattes af § 240, stk. 2. Formueretlige sager, der rettes mod staten, anlægges efter de almindelige værnetingsregler, jfr. UfR 2010.2030 V. Angår sagen både en prøvelse af en central statslig myndigheds afgørelse og et erstatningskrav, rettet mod samme myndighed, kan begge forhold prøves ved sagsøgers hjemting, jfr. § 249.[Note 23.]

Kommuner og regioner har hjemting i den retskreds, hvor hovedkontoret (rådhuset) ligger, jfr. § 239.

Reglerne om fysiske og juridiske personers hjemting udelukker normalt ikke, at sagsøger i stedet for at benytte hjemtinget benytter et undtagelsesværneting, hvor betingelserne herfor er til stede, jfr. UfR 2008.2501 V, eller at parterne træffer aftale om et andet værneting, jfr. § 245. I forhold til prøvelse af centrale statslige myndigheders afgørelser stiller forholdet sig dog anderledes. Hvor der i § 240 er udtrykkelig hjemmel til at *aftale* et andet værneting, jfr. også ovenfor med note 21, angiver § 240, stk. 2, at sag *skal* anlægges ved sagsøgerens hjemting. Motiverne til bestemmelsen[Note 24.] udtaler da også med henvisning til behov for geografisk spredning af sagerne, »at sådanne sager ikke alene *kan*, men som udgangspunkt

*skal* anlægges ved sagsøgers hjemting«. Dette særlige formål, der betyder, at værnetingsreglen ikke alene er udformet i sagsøgers interesse, indebærer, at sagsøgers hjemting – medmindre andet aftales (evt. stiltiende) – er et obligatorisk værneting. Forbeholdet i motivudtalelserne (»som udgangspunkt«) kan alene antages at henvise til muligheden for aftalt værneting, jfr. § 245. På den anden side kan hverken lovens ordlyd eller motivudtalelserne antages at hindre at værnetingsaftale indgås stiltiende eller ved passivitet, jfr. nærmere herom nedenfor i kapitel 6.7, og bortset fra de (sjældne) udeblivelsestilfælde, skal retterne ikke ex officio påse, om § 240, stk. 2, er overholdt.

**Fodnoter**

19.. Jfr. *Niels Fenger* i Forvaltningsret s. 904f, hvor der også omtales tvivlsomme situationer, *Jon Andersen* i *Gammeltoft Hansen m.fl.*: Forvaltningsret og *Karsten Revsbech* i Forvaltningsret, Almindelige Emner s. 377 og betænkning nr. 1052/1085 s. 75.

20.. Gør staten som sagsøgt ikke indsigelse mod et urigtigt valg af værneting, anses den valgte ret, såfremt den har saglig kompetence, som rette værneting, sml. § 351, stk. 4.

21.. F.eks. Naturklagenævnet og Ankestyrelsen, jfr. FT 2005-06, tillæg A, s. 5371 (Til nr. 79 (§ 240, stk. 2)).

22.. Jfr. FT 2005-06, tillæg A, s. 5371 (Til nr. 79 (§ 240, stk. 2)). Tvistighedsnævnet er nedsat ved Erhvervsuddannelsesloven og afgør ansættelsesmæssige spørgsmål mellem arbejdsgivere og elever. Nævnet er ligesom Naturklagenævnet en central statslig myndighed, der omfattes af § 240, stk. 2. Se for tidligere praksis UfR 1994.192 V, som ikke kan være præjudicerende for de gældende regler. Om Tvistighedsnævnet se *Michael Kistrup*: Erhvervsuddannelsesloven s. 157ff.

23.. Jfr. FT 2005-06, tillæg A, s. 5371 (Til nr. 79 (§ 240, stk. 2)).

24.. Jfr. FT 2005-06, tillæg A, s. 5371 (Til nr. 79 (§ 240, stk. 2)) og s. 5260 (pkt. 3.2.1.2. (afsnit III)).