# Exhibit 26

Ulrik Rammeskow Bang-Pedersen
Lasse Højlund Christensen
Clement Salung Petersen

# The civil administration of justice

5th edition

Hans Reitzels Publishers

disqualification "affects the court's judicial assistants and judicial deputies, must be assessed in accordance with Rpl § 61 and based on a concrete assessment of the nature of the judge's disqualification in relation to the relationship between the disqualified judge and the judicial deputy/judicial assistant, including whether the latter works in the disqualified judge's department.[36]

> In U 2014.2898 and U 2014.2907 H, a judicial assistant who worked in the disqualified judge's department was found to be disqualified. In U 2010.575/1 0, a judicial assistant who did not work in the disqualified judge's department and who was not otherwise subject to his instructions was found not to be disqualified.

The question of disqualification may be raised by a party as well as by the judge himself, cf. Rpl § 62(1). An objection to a judge's disqualification should, as far as possible, be raised before the commencement of the oral proceedings, cf. Rpl § 63. A judge who does not consider himself disqualified, but is nevertheless aware of facts that could be considered by others to create disqualification, must on his own initiative inform the parties and any co-judges of these facts.

A decision on the impartiality of a judge shall be made by the court by order, cf. Rpl § 62(2). A single judge may himself decide on his competence. A single judge's order to vacate his seat cannot be appealed, whereas a single judge's dismissal of an impartiality objection can be appealed by a party. In a collegial court, the judge against whom the impartiality is challenged may also participate in the decision, see further § 64.

It may exceptionally occur that all judges of the court where the case is brought are disqualified. In that case, a judge from another jurisdiction is appointed to hear the case, cf. Rpl § 46.

## 2.2.   The parties

### 2.2.1. Procedural capacity as a party

Procedural party capacity (party capacity) means the ability to be a party in legal proceedings before a Danish court.[37] The concept of party includes plaintiffs and defendants, main interveners, respondents, class representatives in class actions and (in appeals) appellants and respondents.[38]

---

36  J£ B0rge Dahl in Henrik Udsen and others (ed.): Festskrift ti! Mads Bryde Andersen, p. 177. See also Bernhard Gomard & Michael Kistrup: Civil Procedure, p. 174, who argue that disqualification in these cases only occurs "purely exceptionally".

37  On the competence of the courts to hear specific legal cases, see the book's de! 2.

38  For intervention, adcitation and group sessions, please refer to! Chapter X, and for appeals, please refer to! Chapter XVII.

*Chapter II Structure of the court system and files in civil cases*

A party to a legal proceeding may plead, argue and produce evidence, see e.g. Chapter V. A party has the right to plead (argue) his case. A party cannot be compelled by threat of punishment to give evidence unless there is a specific legal basis, see Chapter XXI. 1.2 and XXIV.3. A party may generally appeal once against a judgment that is not fully in the party's favor (two-instance principle), see Chapter XVII. A party may award costs to:Egge or pal:Egge, see Chapter XIX.3. A judgment has binding effect (res judicata) on the parties to the proceedings, see Chapter XXVI, and an enforceable judgment can be enforced against the convicted party.

> As a general rule, the above-mentioned party provisions only apply to parties. However, other parties may exceptionally be granted one or more of the above-mentioned rights and obligations. For example, orders and decisions may be appealed by anyone against whom the decision is directed, cf. further Chapter XVIII.2. Furthermore, costs may be awarded to a co-intervener or a procedural representative, cf. Chapter XIX.3.1, and a decision may under certain circumstances have legal force against parties other than the parties, cf. further Chapter XXVI.4.4.

Anyone who can be a party to a legal relationship, i.e. has legal capacity (legal subjectivity), also has procedural capacity.[39] However, this does not necessarily mean that the party can exercise his or her rights as a party in the case, see section 2.2.2. In the following, the procedural capacity of natural persons, a number of important types of legal persons established on a private basis, bankruptcy and death estates and public authorities are discussed.

Every natural person has legal capacity. A deceased person has no legal capacity and thus no procedural capacity. For the case that a natural person dies during a pending case, see section 2.2.3.

> An unborn child has procedural capacity as a party to the same extent as the child has legal capacity. Section 94(1) of the Inheritance Act gives a fetus conceived at the death of the testator who is later born alive the right to inherit, and such a fetus may also be entitled to compensation for loss of consortium under section 14 of the Tort Liability Act.
> § 60(2).

A legal entity that is established on a private law basis has procedural party capacity. This includes, for example, limited liability companies, partnerships, associations and foundations.

---

39   *See Bernhard Gomard & Michael Kistrup: Civil Procedure, p. 344.*

52

Case 1:18-md-02865-LAK    Document 1072-52    Filed 06/24/24    Page 7 of 23

*2. The actors in a civil case. Judges, parties og litigants*

A limited liability company (i.e. a private limited company (ApS) or a public limited company (NS), here under a partnership (PIS)) acquires legal capacity - and thus procedural party capacity

- However, prior to registration, the company may be a party to proceedings for the recovery of subscribed share capital and other proceedings relating to the subscription, cf. section 41(1) of the Danish Companies Act.

A branch of a limited liability company does not have independent procedural capacity. This also applies to branches of foreign limited liability companies registered with the Danish Business Authority under Chapter 19 of the Companies Act. Another thing is that in certain cases the capital company can be sued at the place where the branch is operated, see further chapter IX.3.4.2, chapter IX.4.2.6 and chapter IX.5.3.1.

A partnership (I/S) has procedural party capacity.[40] This applies to its stakeholders.

> When a I/S is a debtor in a debt relationship, the creditor as plaintiff will in many cases wish to obtain judgment against both the partnership and the partners, see further chapter XI.6.1 (on the designation of defendants and the possibilities for subsequent enforcement of a judgment) and chapter XXVI.4.4.4 on res judicata.

Non-commercial associations acquire legal capacity through a founding general assembly. However, there must be certain minimum requirements for an association's structure in order for an association to be recognized as having legal capacity, otherwise it appears unclear who can exercise the rights and fulfil the obligations of a party.

> See U 1976.1010 Ø, which found that an association (Christiania) did not have specific bodies that could bind the association, which therefore due to its loose structure could not be recognized as having procedural party capacity. In the later decision, U 1978.315 H, however, the courts accepted that Christiania had procedural capacity in relation to the Ministry of Defense, which had negotiated with the residents. It seems doubtful whether one can and should operate with such a relative party capacity. If an association does not meet the general - rather relaxed - requirements for having legal capacity, it seems questionable to recognize that "the association" can still be a party in a case against a particular person and thus appear to the outside world as if the association has a legal position when this is difficult to challenge by others, as the association in relation to them does not have legal capacity. However, U 1978.315 H must be seen in the light of the fact that Christiania's capacity as a party was not disputed during the case.
>
> On the procedural capacity of associations as parties, reference can also be made to:
>> U 1969.898 V (research association that had been inactive for 30 years did not

have party capacity),

40    A limited partnership (K/S) also has procedural capacity.

53

> U 1984.1038 Ø ("Komiteen mod dyrefors0g" and "Dyrenes stemme" did not have party capacity), U 1990.396/2 H (group of six employees was exceptionally recognized as having party capacity in libel case), U 1996.984 Ø (motorcycle club "Hells Angels" did not have capacity), U 2004.382 H (the association "Hingitaq 53", which included members of the Thule Tribe, had capacity), U 2009.2225 H (Greenlandic housing department, which only had limited operational needs, did not have capacity) and U 2013.598 SH ("Det danske herrelandshold i handbold" did not have capacity).[41]

The owners' association in a property that is divided into condominiums has procedural party capacity. The same applies to e.g. cooperative housing associations. A condominium, on the other hand, does not have independent procedural party capacity, i.e. only the co-owners personally and not the condominium as such can be a party to a lawsuit.

A legal person established with limited liability solely to avoid or limit the personal liability for legal costs that would otherwise be associated with the lawsuit under the rules of the Administration of Justice Act on legal costs does not have procedural capacity unless it provides adequate security for the legal costs, see U 2000.1575 H (on an association), U 2017.2439 and U 2018.805/2 H (on capital companies). The incentive to establish associations for this purpose must otherwise be regarded as limited after the introduction of the rules on group templates, see chapter X.6.

Bankruptcy estates and estates of deceased persons have procedural capacity as long as they exist.[42] In some cases, they may or must intervene in pending legal proceedings in place of the debtor or the deceased, see further section 2.2.3.

Public authorities have procedural party capacity.[43] This applies to state administrative authorities such as ministries, directorates and agencies, boards and councils, etc., cf. the preceding Rpl § 240.[44] It also applies to regions and municipalities, which - unlike the state administration - are based on the principle of municipal unitary administration, which is why the individual municipal administrative branch does not have procedural party capacity, see also Rpl § 239.

---

41  On the subject, reference can also be made to Ellen Margrethe BasseJur 1979, p. 585 £, Jens M0llerJur 1992,
   p. 95, Jens V. Krenchel & S0ren Friis Hansen U 1997 B, p. 273, andJens Frederik Hansen U 2002 B, p. 143
42  J£ Bernhard Gomard & Michael Kistrup: Civil Procedure, p. 346.
43  However, a public authority may only be appointed as a group representative if it is authorized by law to do so, cf. section 254c in particular.
44  See also e.g. section 3 of BEK no. 1249/25.11.2014 as amended by BEK no. 6/06.01.2020, on the Consumer Ombudsman's initiation of or intervention in legal

proceedings as part of the Consumer Ombudsman's supervision activities.

54

A number of cases challenging the constitutionality of laws (see chapter VII.2.4.2) and U 2001.1249 H challenging the conformity of a law with EU law were brought against one or more named ministers. However, the cases were treated as if the ministry in question was a party to the case. 5[4]

Self-governing institutions, associations, foundations, etc. established by law or pursuant to law, usually also have procedural capacity. Examples include the Danish universities, Danmarks Nationalbank and Danmarks Radio. The same applies to municipal corporations established pursuant to section 60 of the Danish Local Government Act.

Certain persons have legal immunity, meaning that they cannot be sued in Danish courts without special permission. A person with sovereign immunity is not prevented from initiating cases themselves.

Legal immunity is granted to the Regent, cf. Section 13 of the Constitution, and other members of the Royal House, cf. Section 25 of the Royal Act, who can thus only be sued with the permission of the Regent with a ministerial countersignature. Foreign states, international organizations that have been granted extraterritoriality and their representatives also have legal immunity according to the more detailed rules of international law, and these persons can only be sued if they themselves or their home state consent to this.

If a case is brought by or against a subject who does not have procedural capacity, the case must as a starting point be dismissed.4[6]  A person without procedural capacity may be a party to a case as far as the question of lack of capacity is concerned, cf. U 2000.1575 H.

During a pending case, a party may cease to have procedural capacity as a party.[47] For example, a bankruptcy estate may be closed, a limited liability company may be (compulsorily) dissolved, or an association may be dissolved at a general meeting. In such cases, the court must dismiss the case unless another person succeeds procedurally in the party's legal position, cf. section 2.2.3.

### 2.2.2.  Process capability

A party with procedural capacity also has procedural capacity as a starting point, i.e. the ability to exercise its procedural rights. A party with procedural capacity may entrust an agent (typically a lawyer) to conduct the case, see section 2.5.

45  Cf. e.g. U 1998.16 Hog, Frederik Waage: Det offentlige som procespart, p. 491 f.
46  See e.g. U 2002.434 V.
47  See e.g. U 2001.2231 H.

a known foreign place of residence, but only that the person had left the country.[15]

If both the last known place of residence and the last known place of abode are in Denmark, the person generally has Danish domicile at both the last known place of residence and the last known place of abode. However, if the last known place of residence was abandoned before the residence was abandoned, only the last known place of residence can be considered the domicile.[16]

If the last know recidence is abroad, the person does not have Danish jurisdiction

### 3.1.2. Danish domicile for legal entities

### 3.1.2.1. Companies, associations, foundations and other private associations

*Legal entities with a Danish head office have a Danish domicile in the judicial district where the head office is located, cf. Section 238(1)(1) of the Danish Civil Code.*

*The provision covers legal persons in a broad sense, i.e. all persons who are not natural persons. The provision thus covers both legal persons with limited liability - such as limited liability companies, foundations and associations - and legal persons where one or more participants are personally liable for the obligations - such as partnerships and limited partnerships.[17]*

The head office is the place where the management of the legal entity in general

*A legal entity is located when exercising its management functions, i.e. the head office corresponds to the real (actual) head office.[18] The registered office of a legal entity is the place where the legal entity is domiciled according to its statutes (also called the statutory head office). It will often be the case that a legal person has its head office, registered office and principal place of business in the same place, but this is not always the case. For example, a legal entity may have its head office in one country, its registered office in another country and its principal place of business (its main operating activities) in a third country. The assessment of where a company in a group has its registered office must be made independently of where other companies in the group have their registered offices, see for example U 2012.3444 V. Thus, there is no presumption that a subsidiary has the same domicile as its parent company.*

A legal entity with its head office in Denmark has Danish jurisdiction, regardless of whether the legal entity has its registered office or principal place of business in another

---

15  Cf. Bernhard Gomard & Michael Kistrup: Civil Procedure, p. 107.

16  Cf.  Trolle U 1966 B, p. 252, and Kommenteret Retsplejelov, Vol. I, p. 524. Cf. Bernhard Gomard

&     or more participants are personally liable are often referred to as legal entities, as they are not

considered independent legal persons in all respects under property and insolvency law.

18   Cf. Lars Lindencrone Petersen & Erik Werlauff: Dansk retspleje, p. 193.

*220*

Case 1:18-md-02865-LAK   Document 1072-52   Filed 06/24/24   Page 14 of 23
*3. Cases where the defendant has a Danish
domicile*

the EU country (and therefore, possibly in accordance with the rules applicable there, must also be domiciled there), cf. Article 63(1) DF. In U 2012.3444 V a Swedish company had

, thus Danish recidence as the company was deemed to have Danish headquarters. Danish law applies when deciding whether and, if so, where in the world a

legal person has its head office, according to Rpl § 238. In rare cases, it may occur that a legal person with a Danish head office (and thus registered office) cannot be sued here, cf. further section 3.3.5.

A legal entity that does not have its head office in Denmark does not, as a starting point, have a Danish domicile. However, if the legal entity does not have a head office (anywhere in the world), the legal entity has a registered office in Denmark if at least one member of the board of directors or executive board is resident in Denmark, cf. Rpl.

§ Section 238(1), 2nd indent. This rule may, for example, be important for associations that do not always have a head office. An action can only be brought where a member of the board of directors or executive board has a Danish domicile, i.e. it is not possible for such a member to have a Danish domicile according to the rules in Rpl § 235 (3-4). If several members of the board of directors or executive board are domiciled in different Danish jurisdictions, the legal person has its registered office in any of these jurisdictions. If the legal person has its head office in Denmark or abroad, no action may be brought against the legal person where the members of the board of directors or the executive board are domiciled. For the possibility of bringing an action in Denmark against legal entities that have their head office and thus registered office abroad, see sections 4-5.

### 3.1.2.2.   The state, regions and municipalities

Regions and municipalities are domiciled in the judicial district where the head office is located, cf. Rpl § 239. Regions and municipalities generally have their head office in

radhuset. Municipal and regional institutions and committees are considered part of the region or municipality and therefore cannot independently become a party to a

case, see chapter 11.2.2.1.

The state is domiciled in the judicial district where the authority that is sued on behalf of the state has its office, cf. Rpl § 240(1). The actual content of this rule is that every state authority has its own home court (and thus presumably independent procedural party capacity, see chapter 11.2.2.1).

Section 240(2) of the Rpl provides that certain cases against central state authorities must be brought at the plaintiff's (and not the authority's) home court, but this does not change the fact that the authority has its home court

where the authority has its office. For Rpl § 240(2), see section 3.3.2.

9 J£ Bernhard Gomard & Michael Kiscrup: Civil Procedure, p. 109.

221

Ulrik Rammeskow Bang-Pedersen
Lasse Højlund Christensen
Clement Salung Petersen

# Den civile retspleje

5. udgave

Hans Reitzels Forlag

*2. Aktørerne i en civil sag. Dommere, parter og rettergangsfuldmægtige*

litet »smitter af« på rettens retsassessorer og dommerfuldmægtige, må vurderes efter Rpl § 61 og bero på en konkret vurdering af karakteren af dommerens inhabilitet sammenholdt med relationen mellem den inhabile dommer og dommerfuldmægtigen/retsassessoren, herunder om sidstnævnte virker i den inhabile dommers afdeling.[36]

> En retsassessor, som arbejdede i den inhabile dommers afdeling, fandtes at være inhabil i U 2014.2898 H og U 2014.2907 H. I U 2010.575/1 Ø blev en retsassessor, der ikke arbejdede i den inhabile dommers afdeling, og som ikke i øvrigt var undergivet dennes instruktionsbeføjelser, anset for ikke at være inhabil.

Spørgsmålet om inhabilitet kan rejses såvel af en part som af dommeren selv, jf. nærmere Rpl § 62, stk. 1. En indsigelse mod en dommers habilitet bør så vidt muligt rejses inden den mundtlige forhandlings påbegyndelse, jf. Rpl § 63. En dommer, der ikke anser sig for inhabil, men dog er opmærksom på faktiske forhold, der af andre kunne blive anset for at skabe inhabilitet, må af egen drift oplyse sagens parter og sine eventuelle meddommere om disse forhold.

Afgørelse om en dommers habilitet træffes af retten ved kendelse, jf. Rpl § 62, stk. 2. En enedommer kan selv træffe afgørelse om sin habilitet. En enedommers kendelse om at vige sit sæde kan ikke appelleres, hvorimod en enedommers afvisning af en habilitetsindsigelse kan appelleres af en part. I en kollegial ret kan den dommer, som habilitetsspørgsmålet angår, også medvirke ved afgørelsen, jf. nærmere § 64.

Det kan undtagelsesvis forekomme, at alle dommere ved den ret, hvor sagen er anlagt, er inhabile. I så fald beskikkes en såkaldt sættedommer fra en anden retskreds til at behandle sagen, jf. Rpl § 46.

## 2.2. Parterne

### 2.2.1. Processuel partsevne

Ved processuel partsevne (partshabilitet) forstås evnen til at være part i retssager ved en dansk domstol.[37] Partsbegrebet omfatter sagsøgere og sagsøgte, hovedintervenienter, adciterede, grupperepræsentanter i gruppesøgsmål samt (i ankesager) appellanter og indstævnte.[38]

---

36  Jf. Børge Dahl i Henrik Udsen m.fl. (red.): Festskrift til Mads Bryde Andersen, s. 177. Se også Bernhard Gomard & Michael Kistrup: Civilprocessen, s. 174 f., der argumenterer for, at inhabilitet i disse tilfælde kun vil forekomme »rent undtagelsesvis«.
37  Om domstolenes kompetence til at behandle konkrete retssager se bogens del 2.
38  Om intervention, adcitation samt gruppesøgsmål henvises til kapitel X, og om anke henvises til kapitel XVII.

*Kapitel II  Domstolssystemets opbygning og aktører i civile sager*

En part i en retssag kan nedlægge påstande, fremsætte anbringender og frem-lægge beviser, jf. bl.a. kapitel V. En part har ret til at procedere (argumentere for) sin sag. En part kan ikke ved trussel om straf forpligtes til at afgive forklaring, medmindre der foreligger en særlig lovhjemmel, jf. kapitel XXI.1.2 og XXIV.3. En part kan som udgangspunkt én gang appellere en dom, der ikke giver par-ten fuldt medhold (to-instansprincippet), jf. nærmere kapitel XVII. En part kan tillægges eller pålægges sagsomkostninger, jf. nærmere kapitel XIX.3. En retsaf-gørelse har bindende virkning (retskraft) for parterne i sagen, jf. nærmere kapitel XXVI, og en fuldbyrdelsesdom kan tvangsfuldbyrdes mod den domfældte part.

> De ovennævnte partsbeføjelser gælder som udgangspunkt alene for parter. Andre end parter kan dog undtagelsesvis være tillagt en eller flere af de nævnte rettig-heder og forpligtelser. Eksempelvis kan kendelser og beslutninger appelleres af enhver, som afgørelsen retter sig imod, jf. nærmere kapitel XVIII.2. Endvidere kan en biintervenient eller en rettergangsfuldmægtig pålægges sagsomkostninger, jf. kapitel XIX.3.1, og en afgørelse kan efter omstændigheder have retskraft over for andre end sagens parter, jf. nærmere kapitel XXVI.4.4.

Enhver, der kan være part i et retsforhold, dvs. har retsevne (retssubjektivitet), har som udgangspunkt også processuel partsevne.[39] Det betyder dog ikke nød-vendigvis, at parten selv kan udøve sine partsbeføjelser i sagen, jf. afsnit 2.2.2. I det følgende omtales den processuelle partsevne for fysiske personer, en række vigtige typer af juridiske personer oprettet på privatretligt grundlag, konkurs- og dødsboer samt offentlige myndigheder.

Enhver fysisk person har processuel partsevne. En afdød person har ikke retsevne og dermed heller ikke processuel partsevne. Om det tilfælde, at en fysisk person afgår ved døden under en verserende sag, se afsnit 2.2.3.

> Et ufødt barn har processuel partsevne i samme omfang, som barnet har retsevne. Arvelovens § 94, stk. 1, giver et ved arveladers død undfanget foster, der senere fødes levende, arveret, og et sådant foster kan også have krav på forsørgertabser-statning efter erstatningsansvarslovens § 14. Et testamente kan indeholde begun-stigelse af personer, der undfanges og fødes efter arveladers død, jf. arvelovens § 60, stk. 2.

En juridisk person, der er etableret på privatretligt grundlag, har processuel part-sevne. Det gælder fx kapitalselskaber, interessentskaber, foreninger og fonde.

---

39   Jf. Bernhard Gomard & Michael Kistrup: Civilprocessen, s. 344.

Et kapitalselskab (dvs. et anpartsselskab (ApS) eller et aktieselskab (A/S), herunder et partnerselskab (P/S)) opnår retsevne – og dermed processuel partsevne – ved registrering i Erhvervsstyrelsens it-system. Inden registreringen kan selskabet dog være part i søgsmål til indkrævning af tegnet selskabskapital og andre søgsmål vedrørende tegningen, jf. selskabslovens § 41, stk. 1.

En filial af et kapitalselskab har ikke selvstændig processuel partsevne. Dette gælder også filialer af udenlandske kapitalselskaber, som er registreret i Erhvervsstyrelsen efter selskabslovens kapitel 19. Noget andet er, at kapitalselskabet i visse tilfælde kan sagsøges på det sted, hvor filialen drives, jf. nærmere kapitel IX.3.4.2, kapitel IX.4.2.6 og kapitel IX.5.3.1.

Et interessentskab (I/S) har processuel partsevne.[40] Det samme gælder dets interessenter.

> Når et I/S er debitor i et skyldforhold, vil kreditor som sagsøger i mange tilfælde ønske at få dom over både interessentskabet og interessenterne, jf. nærmere kapitel XI.6.1 (om angivelse af sagsøgte og mulighederne for senere tvangsfuldbyrdelse af en dom) og kapitel XXVI.4.4.4 om dommens retskraft.

Ikke-erhvervsdrivende foreninger opnår retsevne ved en stiftende generalforsamling. Der må dog stilles visse minimumskrav til en forenings struktur, for at en forening kan anerkendes at have partsevne, da det ellers fremstår som uklart, hvem der kan udøve de rettigheder og opfylde de forpligtelser, som en part har.

> Se herved U 1976.1010 Ø, der fandt, at en forening (Christiania) ikke havde bestemte organer, der kunne binde foreningen, som derfor på grund af sin løse struktur ikke kunne anerkendes at have processuel partsevne. Ved den senere afgørelse, U 1978.315 H, accepterede domstolene imidlertid, at Christiania havde processuel partsevne i forhold til Forsvarsministeriet, der havde forhandlet med beboerne. Det synes tvivlsomt, om man kan og bør operere med en sådan relativ partsevne. Hvis en forening ikke opfylder de almindelige – ret lempelige – krav til at have retsevne, synes det betænkeligt at anerkende, at »foreningen« alligevel kan være part i en sag mod en bestemt person og dermed over for omverdenen fremstå, som om foreningen har en retsposition, når denne vanskeligt anfægtes af andre, i og med foreningen i forhold til disse ikke har retsevne. U 1978.315 H må dog ses i lyset af, at Christianias partsevne ikke blev bestridt under sagen.
>
> Om foreningers processuelle partsevne kan endvidere henvises til: U 1969.898 V (forskønnelsesforening, der havde været inaktiv i 30 år, havde ikke partsevne),

---

40   Også et kommanditselskab (K/S) har processuel partsevne.

U 1984.1038 Ø (»Komiteen mod dyreforsøg« og »Dyrenes stemme« havde ikke partsevne), U 1990.396/2 H (gruppe bestående af seks ansatte anerkendtes undtagelsesvis at have partsevne i injuriesag), U 1996.984 Ø (motorcykelklubben »Hells Angels« havde ikke partsevne), U 2004.382 H (foreningen »Hingitaq 53«, der omfattede medlemmer af Thule Stammen, havde partsevne), U 2009.2225 H (grønlandsk boligafdeling, der alene havde begrænsede driftsbeføjelser, havde ikke partsevne) og U 2013.598 SH (»Det danske herrelandshold i håndbold« havde ikke partsevne).[41]

Ejerforeningen i en ejendom, der er opdelt i ejerlejligheder, har processuel partsevne. Det samme gælder bl.a. andelsboligforeninger. Et sameje har derimod ikke selvstændig processuel partsevne, dvs. det er kun samejerne personligt og ikke samejet som sådant, der kan være part i en retssag.

En juridisk person, der stiftes med begrænset ansvar alene for at undgå eller begrænse den personlige hæftelse for sagsomkostninger, som ellers ville være forbundet med sagsanlægget efter retsplejelovens regler om sagsomkostninger, har ikke processuel partsevne, medmindre det stiller en passende sikkerhed for sagsomkostningerne, jf. U 2000.1575 H (om en forening), U 2017.2439 H og U 2018.805/2 H (om kapitalselskaber). Tilskyndelsen til oprettelse af foreninger til dette formål må i øvrigt anses for begrænset efter indførelsen af reglerne om gruppesøgsmål, jf. herom kapitel X.6.

Konkursboer og dødsboer har processuel partsevne, så længe de eksisterer.[42] De kan eller skal i en række tilfælde indtræde i verserende retssager i stedet for skyldneren eller afdøde, jf. nærmere afsnit 2.2.3.

Offentlige myndigheder har processuel partsevne.[43] Det gælder statslige forvaltningsmyndigheder som fx ministerier, direktorater og styrelser, nævn og råd m.v., jf. forudsætningsvis Rpl § 240.[44] Det gælder desuden regioner og kommuner, der – i modsætning til statsforvaltningen – er baseret på princippet om kommunal enhedsforvaltning, hvorfor den enkelte kommunale forvaltningsgren ikke har processuel partsevne, jf. også forudsætningsvis Rpl § 239.

---

41  Om emnet kan i øvrigt henvises til Ellen Margrethe Basse Jur 1979, s. 585 f., Jens Møller Jur 1992, s. 95, Jens V. Krenchel & Søren Friis Hansen U 1997 B, s. 273 f., og Jens Frederik Hansen U 2002 B, s. 143 f.
42  Jf. Bernhard Gomard & Michael Kistrup: Civilprocessen, s. 346.
43  En offentlig myndighed kan dog kun udpeges som grupperepræsentant i et gruppesøgsmål, hvis den ved lov er bemyndiget til det, jf. nærmere § 254 c.
44  Jf. også fx § 3 i BEK nr. 1249/25.11.2014 som ændret ved BEK nr. 6/06.01.2020, om Forbrugerombudsmandens anlæggelse af eller indtræden i retssager som led i Forbrugerombudsmandens tilsynsvirksomhed.

*2. Aktørerne i en civil sag. Dommere, parter og rettergangsfuldmægtige*

> En række sager om prøvelse af grundlovsmæssigheden af love (jf. herom i kapitel VII.2.4.2) og U 2001.1249 H om prøvelse af en lovs overensstemmelse med EU-retten blev anlagt mod en eller flere navngivne ministre. Sagerne blev dog behandlet som om, at vedkommendes ministerium var part i sagen.[45]

Selvejende institutioner, foreninger, fonde m.v., der er oprettet ved lov eller i henhold til lov, har normalt også processuel partsevne. Som eksempler herpå kan nævnes de danske universiteter, Danmarks Nationalbank og Danmarks Radio. Det samme gælder kommunale fællesskaber, der oprettes i henhold til kommunestyrelseslovens § 60.

Visse personer har søgsmålsimmunitet, dvs. at de ikke uden særlig tilladelse kan sagsøges ved danske domstole. En person, der har søgsmålsimmunitet, er ikke afskåret fra selv at anlægge sager.

> Søgsmålsimmunitet tilkommer Regenten, jf. Grl § 13, og øvrige medlemmer af kongehuset, jf. kongelovens § 25, der således alene kan sagsøges med tilladelse fra Regenten med ministeriel kontrasignatur. Fremmede stater, internationale organisationer, der er tillagt eksterritorialitet, og deres repræsentanter har også søgsmålsimmunitet efter de nærmere folkeretlige regler herom, og disse personer kan alene sagsøges, hvis de selv eller deres hjemstat samtykker heri.

Anlægges en sag af eller imod et subjekt, der ikke har processuel partsevne, må sagen som udgangspunkt afvises.[46] En person uden processuel partsevne kan være part i en sag, for så vidt angår spørgsmålet om manglende partsevne, jf. U 2000.1575 H.

En part kan under en verserende sag ophøre med at have processuel partsevne.[47] Eksempelvis kan et konkursbo blive afsluttet, et kapitalselskab kan blive (tvangs)opløst, eller en forening kan blive opløst på en generalforsamling. I sådanne tilfælde må retten afvise sagen, medmindre en anden person processuelt succederer i partens retsstilling, jf. herom i afsnit 2.2.3.

### 2.2.2. Proceshabilitet

En part med processuel partsevne har som udgangspunkt også proceshabilitet, dvs. evne til selv at udøve sine procesretlige partsbeføjelser. En part, som har proceshabilitet, kan overlade det til en rettergangsfuldmægtig (typisk en advokat) at føre sagen, jf. herom i afsnit 2.5. En part er som udgangspunkt ikke forpligtet

---

45   Jf. bl.a. U 1998.16 H og hertil Frederik Waage: Det offentlige som procespart, s. 491 f.
46   Jf. fx U 2002.434 V.
47   Jf. fx U 2001.2231 H.

*Kapitel IX Domstolenes stedlige kompetence*

kunne oplyses et kendt udenlandsk opholdssted, men alene at personen havde forladt landet.[15]

Er såvel den sidst kendte bopæl som det sidst kendte opholdssted i Danmark, har personen som udgangspunkt dansk hjemting ved såvel den sidste kendte bopæl som det sidst kendte opholdssted. Var det sidst kendte opholdssted forladt, inden bopælen blev opgivet, kan kun den sidst kendte bopæl dog anses for hjemting.[16]

Er såvel den sidst kendte bopæl som det sidst kendte opholdssted i udlandet, har personen ikke dansk hjemting.

### 3.1.2. Dansk hjemting for juridiske personer
#### 3.1.2.1. Selskaber, foreninger, fonde og andre private sammenslutninger
Juridiske personer med dansk hovedkontor har dansk hjemting i den retskreds, hvor hovedkontoret er, jf. Rpl § 238, stk. 1, 1. led.

Bestemmelsen omfatter juridiske personer i bred forstand, dvs. alle personer, der ikke er fysiske personer. Bestemmelsen omfatter således såvel juridiske personer med begrænset hæftelse – såsom aktie- og anpartsselskaber, fonde og foreninger – som juridiske personer, hvor en eller flere deltagere hæfter personligt for forpligtelserne – såsom interessentskaber og kommanditselskaber.[17]

Hovedkontoret er det sted, hvor den juridiske persons ledelse i almindelighed befinder sig ved udøvelsen af sine ledelsesbeføjelser, dvs. at hovedkontoret svarer til det reelle (faktiske) hovedsæde.[18] En juridisk persons hjemsted er der, hvor den juridiske person efter sine vedtægter er hjemmehørende (også kaldet det vedtægtsmæssige hovedsæde). Ofte vil det forholde sig således, at en juridisk person har hovedkontor, hjemsted og hovedvirksomhed samme sted, men det er ikke altid tilfældet. Det kan således forekomme, at en juridisk person har hovedkontor i et land, hjemsted i et andet land og sin hovedvirksomhed (væsentligste driftsaktiviteter) i et tredje land. Bedømmelsen af, hvor et selskab i koncern har bopæl, må foretages uafhængigt af, hvor andre selskaber i koncernen har bopæl, jf. eksempelvis U 2012.3444 V. Der kan således ikke opstilles nogen formodning for, at et datterselskab har samme bopæl som sit moderselskab.

En juridisk person med dansk hovedkontor har dansk hjemting, uanset om den juridiske person måtte have sit hjemsted eller sin hovedvirksomhed i et an-

---

15  Jf. Bernhard Gomard & Michael Kistrup: Civilprocessen, s. 107.
16  Jf. Trolle U 1966 B, s. 252, og Kommenteret Retsplejelov, Bind I, s. 524. Sml. Bernhard Gomard & Michael Kistrup: Civilprocessen, s. 107.
17  Jf. Lars Lindencrone Petersen & Erik Werlauff: Dansk retspleje, s. 193. Juridiske personer, hvor en eller flere deltagere hæfter personligt, omtales ofte som juridiske retssubjekter, da de formue- og insolvensretligt ikke anses for selvstændige juridiske personer i alle henseender.
18  Jf. Lars Lindencrone Petersen & Erik Werlauff: Dansk retspleje, s. 193.

det EU-land (og derfor eventuelt efter de der gældende regler tillige måtte have hjemting der), jf. DF art. 63, stk. 1. I U 2012.3444 V havde et svensk selskab således dansk bopæl, da selskabet måtte anses for at have dansk hovedkontor. Dansk ret finder anvendelse ved afgørelse af, om og i givet fald hvor i verden en juridisk person har hovedkontor, efter Rpl § 238. I sjældne tilfælde kan det forekomme, at en juridisk person med dansk hovedkontor (og dermed hjemting) ikke kan sagsøges her, jf. nærmere afsnit 3.3.5.

En juridisk person, der ikke har sit hovedkontor i Danmark, har som udgangspunkt ikke dansk hjemting. Har den juridiske person ikke noget hovedkontor (noget sted i verden), har den juridiske person dog hjemting i Danmark, hvis mindst et medlem af bestyrelsen eller direktionen har bopæl i Danmark, jf. Rpl § 238, stk. 1, 2. led. Denne regel kan eksempelvis have betydning for foreninger, der ikke altid har et hovedkontor. Der kan alene anlægges sag dér, hvor et medlem af bestyrelsen eller direktionen har dansk bopæl, dvs. at det er ikke tilstrækkeligt, at et sådant medlem har dansk hjemting efter reglerne i Rpl § 235, stk. 3-4. Har flere medlemmer af bestyrelsen eller direktionen bopæl i forskellige danske retskredse, har den juridiske person hjemting i enhver af disse retskredse. Har den juridiske person hovedkontor i Danmark eller i udlandet, kan der ikke anlægges sag mod den juridiske person der, hvor medlemmerne af bestyrelsen eller direktionen har bopæl. Om muligheden for at anlægge sag i Danmark mod juridiske personer, der har hovedkontor og dermed hjemting i udlandet, henvises til afsnit 4-5.

### 3.1.2.2.  Staten, regionerne og kommunerne
Regioner og kommuner har hjemting i den retskreds, hvor hovedkontoret ligger, jf. Rpl § 239. Regioner og kommuner har i almindelighed hovedkontor på rådhuset.[19] Kommunale og regionale institutioner og udvalg anses som en del af regionen henholdsvis kommunen og kan således ikke selvstændigt være part i en sag, jf. kapitel II.2.2.1.

Staten har hjemting i den retskreds, hvor den myndighed, som stævnes på statens vegne, har kontor, jf. Rpl § 240, stk. 1. Det reelle indhold af denne regel er, at enhver statslig myndighed har sit eget hjemting (og dermed forudsætningsvist selvstændig processuel partsevne, jf. kapitel II.2.2.1).

> Rpl § 240, stk. 2, indeholder hjemmel til, at visse sager mod centrale statslige myndigheder skal anlægges ved sagsøgerens (og ikke myndighedens) hjemting, men dette ændrer ikke ved, at myndigheden har hjemting, der hvor myndigheden har sit kontor. Om Rpl § 240, stk. 2, henvises til afsnit 3.3.2.

---

9   Jf. Bernhard Gomard & Michael Kistrup: Civilprocessen, s. 109.