# Exhibit 27

# LIONBRIDGE

STATE OF NEW YORK )
)
)                    ss
COUNTY OF NEW YORK )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Danish into English of the attached document U.1981.473H. I

affirm that the linguist responsible for producing this translation is fluent in both the Danish and

English languages.

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me

this 6ᵗʰ day of June , 20 22 .

LAURA E MUSICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MU6386791
Qualified in Queens County
My Commission Expires 01-28-2023

HR1981.I 246/1979
U.1981.473H

**Judgment of the Supreme Court of May 26, 1981, Ref. No. I 246/1979**

*The State income tax directorate (Government attorney)*
vs.
*Director Martin Møller (Attorney J. Pagter Kristensen, Randers e.o.)*

*Monetary system etc. 5.7 Corporate law 1.3 – Taxes 5 and 9.1.*
**Director of insolvent company is considered under the circumstances to be personally responsible for unpaid income tax.**

♦ An entrepreneurship H was founded in 1968 with a share capital of DRR 15,000, and essentially as a supporting action M became the director. There were liquidity difficulties from the start, and liquidity became seriously stretched at the end of 1971. At the end of 1972, H entered liquidation after disclosure of 28 seizures and attachments in H's property.[1] The tax authorities claimed that M, who had been penalized under the Taxation at Source Act for failure to pay withheld income tax, should be required firstly to recognize that he was due to pay income tax out of his own salary and secondly to pay compensation for the income tax deducted from the salaries of other employees which had not been settled. M, who had stated during the criminal proceedings that he was the main shareholder, now denied this. It was established in the judgement that M had sole control of H and had the largest financial interest in H, and that he must have known from the start of 1971 that there was inadequate money to pay the income tax and must have been aware that there was also no prospect that that H would be able to meet these obligations at a later date. He could therefore not be absolved under § 60, Paragraph 1, of the Taxation at Source Act from responsibility for income tax on his own salary in H, and he was also considered to be responsible for reimbursement for the other income tax that had been unpaid, with the usual statutory interest, though not with interest under the usual regulations of the legislation on taxation. (Dissent by one justice for a reduction in compensation).[2]

**Eastern High Court**

***Judgement of Eastern High Court on May 22, 1979 (15th section)***
(E. Mikkelsen, Brink, Raffinsøe (kst.))
Herning Kranudlejning Ltd. was founded in 1968 with a share capital of DKK 15,000. Shortly afterwards, the petitioner, Director Martin Møller, now resident at Ellemosegård, Ilskov, near Sunds, was appointed as manager in the company, which operated in Herning. He was initially the director and later took over the majority of the shares, and in November 1971 he joined the Board.

In the autumn of 1972, the limited company halted operations and as of December 31, 1972, it was deregistered from the Income Tax Directorate with respect to the obligation to deduct tax which had been an obligation for the company under the Taxation at Source Act.

On May 05, 1972, the petitioner was imposed a fine of DKK 12,000 in Herning Municipal Court under § 74, Paragraph 1, Item 2, of the Taxation at Source Act, in connection with his failure as the responsible manager of the

stated company to pay income tax on time for the period from April 1970 to November 1971. The total amount came to DKK 243,185, of which DKK 28,563 had not been paid.

In the judgement of September 11, 1973, by the Herning Municipal and District Court, the petitioner was found guilty under § 74, Paragraph 2, cf. § 74, Paragraph 1, Items 2 and 3, of the Taxation at Source Act, in conjunction with Act No. 544 of December 20, 1971, § 1, Paragraph 1 and § 9 and the Finance Ministry's Order of July 04, 1969, § 4, in that he had as director and main shareholder in the stated company failed to pay collected income tax for the period December 1971–October 1972, a total of DKK 131,494, of which DKK 23,993 had been paid, and in that he had not submitted returns for January 1972 on time. He was furthermore found guilty under the same regulations in that he was responsible for withholding tax in an entrepreneurship that he had established on April 01, 1972, but for which he had failed to pay stated income tax collected for certain months in 1972, and where he had failed to submit returns for the same months. Finally, the petitioner was found guilty under Act No. 145 of March 28, 1969, § 12, cf. § 5, of failing to register his entrepreneurship in the relevant register (CIR) on time. It was noted in the judgement that the penalty should partly be laid down as an additional penalty under § 89 of the Penal Code, but that there were aggravating circumstances. The petitioner was consequently sentenced to 20 days' detention.

In this case, brought on July 09, 1976, for which the petitioner was given legal aid, he has finally claimed that the respondent, the State Tax Directorate, Meldahlsgade 5, Copenhagen, should be required to recognize that a sum of DKK 33,190 which was to be paid in the months of December 1971–October 1972, both months inclusive, as income tax by his employer, Herning Kranudlejning Ltd., should not be required to be paid by the petitioner.

The respondent has finally proposed the following: principally that the respondent should be given a favorable judgment, and the petitioner should be required to pay the respondent DKK 209,655 with normal statutory interest from December 20, 1976. Secondly, that the petitioner should be required to pay the respondent DKK 249,786 with the normal statutory interest from that date.

The counter-claim of the respondent relates to the income tax that Herning Kranudlejning Ltd. should have retained in income tax for the staff in December 1971 and the year of 1972, but which was not paid to the tax authorities. The claim includes certain interest charges. The principal claim by the respondent does not include the income tax which should have been retained in the petitioner's own salary. By contrast, the amount in the secondary counter-claim by the respondent includes all the income tax which the company has failed to pay for the above period, including the petitioner's own income tax.

The petitioner has also in regard to the counter-claim by the respondent requested a favorable judgment.

The petitioner has stated that his income from the company was DKK 3,000 per month for a period, but this was increased to DKK 5,000 per month, and came to a total of DKK 70,000 in the first 10 months of 1972. The company's balance was initially satisfactory, but in autumn 1971 it entered into a contract that was a loss due to an error in calculation. In addition, in 1972 incoming orders stopped. The petitioner hoped to be able to restore the balance by the sale of machines and property owned by the company. It would have been possible to keep the company operating even after such sales were made. A real estate agent, who believed that the property could raise approximately

---

[1] The liquidation was carried out by the bankruptcy court on the request of the senior registrar in accordance with § 62 of the Danish Companies Act 1930, cf. § 59, and was concluded with a dividend of approximately 1%.
[2] Cf. U.1975.38 H (U1975B.112), U.1976.241 and U.1978.975 as well as Bjørn, Hulgaard and Michelsen: Textbook on Income Tax, 4th edition, p. 678 f and 681, Polack i SO 1976.278, Lund Nielsen in R. R. 1978 9 ff, Mathiassen 344 and Engholm Jacobsen i J 1979.419.

Copyright © 2021 Karnov Group Denmark Ltd.

DKK 1 million, tried to arrange the sale. If the plans for sale had been achieved, there would have been sufficient funds to cover the creditors. However, the proposed arrangement was made impossible, because the company was subjected to seizures and mandatory auction. A bookkeeper was employed by the company, and the books were maintained to the very end. However, after May 31, 1971, there was insufficient money to pay for an auditor, which is why no accounts were completed after this date. The petitioner does not know how the winding-up of the company was carried out legally, but he believes that the employees had their salaries due paid by the Wage Earners' Guarantee Fund. The petitioner now owns and manages a small agricultural property in Ilskov. The value of the property is DKK 800,000. He had substantial debts and in the last couple of years has had such limited income that he does not pay any tax.

The petitioner stated that Herning Kranudlejning Ltd., when paying salaries to the staff, made income tax deductions in accordance with the current regulations and that there is no basis to dispute these deductions, either for himself or for the other staff. The petitioner furthermore denies that he has caused the tax authority any loss due to any conditions that could lead to his being responsible for compensation. He is not familiar with accountancy and was unaware how far the responsibility of management extended. He imagined that it was only a share capital that could be relied upon, and he was unable to foresee the consequences of the company's difficulties, which were largely due to the loss of a single contract. Since he was not warned during management of the company that he could be personally responsible for retained income tax, it would be unreasonable to impose such a responsibility on him. In any case, the tax authority should not have been able to charge him interest on the substantial sums in question.

The respondent stated that the relationship between the petitioner and Herning Kranudlejning Ltd. was so close that they could be regarded as nearly identical. The reduction from salary which allegedly was made in his own case did not reflect any reality. The petitioner had sole control of the company and could have the accounts show any amount as his "own deduction." Since the petitioner, and therefore the company management, must be assumed to have lacked the ability and will to deduct and pay income tax for his own income, the accounting statements on this cannot be binding on the tax authority.

With respect to the counter-claim, the respondent has stated that, according to the culpa principles, the petitioner must be personally obliged to reimburse the unpaid salary deductions. The amounts deducted are not freely available to the employer but need to be secured for the tax authority, and it must be a particular responsibility of the management of the company to ensure that this is done. In the current case, the company (in accordance with the facts as stated) has permanently made deductions for income tax over a long period. The company had virtually no share capital, and in the period after May 31, 1971, it did not even have enough money to pay for an accountant's support. By continuing the company under these circumstances, the petitioner has exposed the tax authority to considerable risk and must under established legal practice be responsible for the losses now identified. This applies to the salary deductions for the actual staff, cf. the principal claim of the respondent, but also (in the event that the petitioner is judged to recognize the salary reduction allegedly made for himself) for his own unsettled "tax deduction," cf. the secondary claim of the respondent.

**The Court determines:**

With respect to Herning Kranudlejning Ltd., which ceased operations in the spring of 1972, and which was not audited after May 31, 1971, it is established that the finances of the company had been in difficulty for a long period and the management did not to a sufficient degree observe its responsibilities with respect to protecting the interests of the creditors. However, the court has not been given any detailed information about the company bookkeeping or the winding-up of the company. It is therefore unclear what statements regarding the condition of the company may have been given in connection with the liquidation of the company, the insolvency or the cessation of trading more generally.

Since the petitioner has conducted the management of the company since shortly after its foundation until it was wound up and in view of the above, he cannot on the basis of the facts presented require that the salary deductions which the company allegedly made in his own case be regarded as genuine payments available to settle the taxation. The respondent should therefore be acquitted against the claim by the petitioner.

Even if the petitioner may under compensation law be held responsible for his management of the limited company, it is difficult to determine on the basis of the facts presented to what extent the tax authority can claim compensation from him for the unsettled salary reductions of the company. On the basis of the facts presented in the case, the petitioner is therefore released from liability for the counter-claim by the respondent.

---

Neither of the parties will pay the legal costs of the other party or to the State Treasury.

**Supreme Court**

**Judgment of the Supreme Court.**

The judgment under appeal was made by Eastern High Court.

Five justices participated in the appeal: Hvidt, Thygesen, Urne, Funch Jensen and Munch.

The appellant has principally sought recognition that the appellant has a claim to payment of DKK 33,190 from the respondent and to payment of DKK 209,655 with interest of 2% over the current bank rate of DKK 133,397 from July 01, 1976. A secondary claim is that the respondent should be obliged to pay DKK 249,786, with interest as stated of DKK 166,587.

The respondent has in response principally sought acquittal, or a secondary finding of confirmation with more subsidiary reduction to a smaller amount.

In addition to the tax amounts of DKK 133,397 or this amount supplemented by DKK 33,190 to a total of DKK 166,587, interest and fees under the rules of the tax legislation are included in the amounts DKK 209,655 and DKK 249,786.

**The income tax directorate wrote to the auditor of the respondent on November 10, 1973:**

"In your communication of September 17, 1973, you have objected to an amount of DKK 33,190…being deducted with reference to § 68 of the Taxation at Source Act. In this connection, it must be stated that the Directorate cannot recognize that payments have been deducted in the salaries that Martin Møller has paid to himself, since he was aware when the salary was paid that income tax would not be paid…"

To assist the Supreme Court, additional explanations and further information that has been obtained have been presented.

The respondent has stated that he did not at any time own shares in the company. The activity of the company consisted partly in renting out cranes and partly in independent projects in which assembly of components was carried out. The work of the respondent as a director in the company consisted

Copyright © 2021 Karnov Group Denmark Ltd.

HR1981.I 246/1979 - U.1981.473HH

of leading the work in the field, in submitting tenders and in preparing the necessary papers for invoicing. The office work was carried out by the bookkeeper. The respondent had no overview of the expenses, which were the responsibility of the bookkeeper. The bookkeeper paid the creditors when she had the money to pay with. The respondent assumed that all creditors were paid, if with a delay. The company only had a small capital base and grew rapidly, so that there was pressure on liquidity from the beginning. Liquidity only became seriously stretched at the end of 1971, when the company was involved in its largest project to date. The company worked on the project for a little under a year but came to a point where it recognized that it was not working out very well. It was assumed that with extra fees that could be negotiated, it would be possible to make it pay. However, the company was "strangled" because of liquidity difficulties since it was short of money around August–September 1972 and had to sell assets to raise capital. An attempt was made to sell the company property, which the real estate dealer estimated could give the company DKK 1.3–1.5 million. If the property had been sold at that price, the company would have had money to finish the project and negotiate its extra fees. However, the property was not sold on the open market but was put out to mandatory auction in November 1972, where it was sold for approximately DKK 850,000.

Attorney Erik Mathiesen has stated that the background for the foundation of the company was that the respondent's wife had operated a trucking business, which the respondent managed. Since that business was declining, the company was set up almost as a supporting action for the respondent. The intention was that he should, if possible, take over the majority of the shares. He probably had, the witness believed, first refusal on the purchase of the shares. So far as the witness was aware, the respondent did not have shares in the company. The respondent did not have much to do in the office, which was run by the bookkeeper. The company was in continuous liquidity difficulty. So far as I can remember, the company did very well at first, until Dansk Total Enterprise withheld payment for a large project in Copenhagen.

Bookkeeper Gunnar Colmann has stated that he believes that he discussed with the respondent that he was not paying the retained income tax, since he had no money to pay with. The witness informed the respondent that the tax authorities were executing a charging order on the property.

Entrepreneur Johannes Lodahl stated that he was chair of the company board, from the beginning to the end and that he had DKK 4,000 of shares in it throughout. It was agreed when the company was set up that the respondent should have the opportunity to buy shares. The company needed money most of the time, since it was growing and had so little share capital.

In accordance with the minutes of the inaugural general meeting of the company on May 15, 1968, the respondent was not among the founders. It was stated in the judgement of the Herning Town and District Court on September 11, 1973, that the respondent had stated that he had been a director and the main shareholder since the company was founded, and according to the police report taken in relation to the case of September 03, 1972, the respondent stated that he had up to then been the main shareholder and the daily responsible manager of the company, of which share capital of DKK 15,000 he owned DKK 10,000 himself. When the company was liquidated, some share certificates totaling DKK 15,000 dated December 6, 1972, were retained to be stamped, including a share certificate of DKK 10,000 for the respondent.

In the operating accounts for the period June 01, 1969, to May 31, 1970, the profit is shown as DKK 90,680 before and DKK 7,362 after depreciation and writing down. The current cash holdings, investment fund account and debtors are shown together as DKK 79,210, and the creditors as DKK 562,488.

In the operating accounts for the period June 01, 1970, to May 31, 1971, the profit is ~DKK 1,289 after depreciation and writing down of DKK 70,768, and expenses are disclosed of DKK 145,139, of which DKK 64,791 is for income tax.

In the audit report of November 25, 1971, it is among other things stated that the company liquidity continues to be poor, and it states further: "Note must be taken of the large short-term debt compared with virtually no liquid assets and quite a small number of debtors, making the company very vulnerable. In order to keep the company going, it will be necessary to increase income and profit while taking the greatest care with respect to costs and new investments."

A disclosure certificate for the company property shows that in the period from February 06, 1971, to November 01, 1972, 28 charging orders and distraints were levied on the property.

On the basis of the information in the case, it must be found that the respondent had sole control of the company and had the largest financial interest in it, that he from the end of 1971 must have known that there was no money to cover the obligations of the company to payment of income tax, and that he (in particular after the serious audit report of November 25, 1971, and the numerous seizures and attachments) must have been aware that there was also no prospect of the company later being able to meet these obligations.

Under these circumstances, all the judges find that the tax authorities correctly ignored the entries in the company books of income tax deductions from the salary of the respondent in this period. He can therefore not be absolved as an employee for this tax responsibility under the regulations in § 60, Paragraph 1, of the Taxation at Source Act and therefore has personal responsibility for it, see in this connection § 68 of the Act. The principal claim of the appellant in relation to the DKK 33,190 is therefore to be granted.

With respect to responsibility of reimbursement of income tax deducted for other employees in the company, four judges—Hvidt, Urne, Funch Jensen and Munch—find as follows:

Under the circumstances set out above, it was the duty of the respondent to ensure that the debt to the tax authorities did not increase, or if necessary to terminate the activity of the company. The respondent did not carry out that duty, so he is found responsible for the losses thereby incurred by the tax authority. These are found to amount to the sums that were held back from the tax authority, although without addition of interest and fees in accordance with the regulations of the tax legislation, although with the addition of normal statutory interest from when the claim was issued on August 26, 1976.

These judges agree to obligate the respondent to pay DKK 133,397 with interest as stated. They also agree that the respondent should pay legal costs for both sides, paying DKK 25,000 to the appellant.

Judge Thygesen agrees with the majority that the respondent is liable to pay compensation to the appellant and that this responsibility does not include interest and fees in accordance with the regulations of the tax legislation, but adds:

This liability to pay compensation does not necessarily imply the award of the entire unpaid amount of income tax. Even if the respondent had already halted the company's activity at the start of 1972, it must be assumed that a considerable loss for the tax authority would have arisen due to the failure to settle income tax. In view of this, the petitioner's liability to reimbursement (beyond the previously mentioned DKK 33,190) should only take effect for a much smaller sum than the calculated DKK 133,397. Since the reimbursement in the absence of further information can be estimated at DKK 100,000, this judge opts to award the appellant this amount with usual interest from August 26, 1976.

Copyright © 2021 Karnov Group Denmark Ltd.

HR1981.I 246/1979 - U.1981.473HH

Judgement is made in accordance with the majority of the votes:

**The following is hereby ruled:**

*Respondent director Martin Møller shall recognize that the appellant, the State Tax Directorate, has a claim for payment of DKK 31,190 from the respondent.*

*The respondent should within 14 days after this Supreme Court decision pay the appellant DKK 133,397 with interest on this at 2% over the current bank rate from August 26, 1976, until the payment is made, and legal costs for the District Court and Supreme Court of DKK 25,000.[3]*

---

[3] Salary for the attorney assigned to the respondent: DKK 18,000.

Copyright © 2021 Karnov Group Denmark Ltd.

HR1981.I 246/1979
U.1981.473H

**Højesterets dom af 26. maj 1981, j.nr. I 246/1979**

*Statsskattedirektoratet (km.adv.)*
mod
*direktør Martin Møller (adv. N. J. Pagter Kristensen, Randers, e.o.).*

*Pengevæsen m.v. 5.7Selskabsret 1.3 - Skatter 5 og 9.1.*
**Direktør i insolvent aktieselskab anses efter omstændighederne for personlig ansvarlig for unddragne A-skattebeløb.**

♦ Et entreprenøraktieselskab H blev stiftet i 1968 med en aktiekapital på 15.000 kr. nærmest som en støtteaktion for M, der blev direktør. Der var likviditetspres fra starten, og likviditeten blev for alvor anstrengt i slutningen af 1971. I slutningen af 1972 trådte H efter tinglysning af 28 udlæg og udpantninger i H's ejendom i likvidation. ¹ Skattevæsenet påstod M, som var blevet straffet efter kildeskatteloven for undlad afregning af indeholdt A-skat, tilpligtet dels at anerkende, at han måtte betale A-skatten af sin egen løn, dels at betale erstatning for den A-skat, som var tilbageholdt i andre ansattes løn, men som ikke var afregnet. M, som under straffesagen havde forklaret, at han var hovedaktionær, bestred nu dette. Det blev ved dommen lagt til grund, at M var enerådende i H og havde den væsentligste økonomiske interesse i H, og at han fra slutningen af 1971 måtte vide, at der ikke var penge til indbetaling af A-skat, og måtte være klar over, at der heller ikke var udsigt til, at H senere kunne dække disse forpligtelser. Han kunne herefter ikke i medfør af kildeskattelovens § 60, stk. I, anses for frigjort for tilsvaret af A-skat af sin egen løn i H, og han ansås tillige erstatningsansvarlig for at i øvrigt unddragne A-skattebeløb med sædvanlig procesrente, men ikke med rente efter skattelovgivningens regler. (Dissens af en dommer for en nedsættelse af erstatningen). ²

## Østre Landsret

### Østre Landsrets dom 22. maj 1979 (15. afd.)

(E. Mikkelsen, Brink, Raffnsøe (kst.)).

I 1968 stiftedes Herning Kranudlejning A/S med en aktiekapital på 15.000 kr. Kort efter tiltrådte sagsøgeren, direktør Martin Møller, nu boende Ellemosegård, Ilskov pr. Sunds, som leder af selskabet, der drev virksomhed i Herning. Han blev først direktør og overtog senere aktiemajoriteten, og i november 1971 indtrådte han i bestyrelsen.

I efteråret 1972 indstilledes aktieselskabets virksomhed, og pr. 31. december 1972 fandt der over for kildeskattedirektoratet afmelding sted med hensyn til den indeholdelsespligt, der havde påhvilet selskabet i medfør af kildeskatteloven.

Den 5. maj 1972 vedtog sagsøgeren i Herning byret en bøde på 12.000 kr. efter kildeskattelovens § 74, stk. 1, nr. 2 i anledning af, at han som ansvarlig leder af nævnte aktieselskab ikke rettidigt

havde indbetalt A-skat for perioden april 1970 - november 1971. Det samlede beløb androg 243.185 kr., hvoraf 28.563 kr. ikke var betalt.

Ved Herning by- og herredsrets 2. afdelings dom af 11. september 1973 fandtes sagsøgeren skyldig efter kildeskattelovens § 74, stk. 2, jfr. § 74, stk. 1, nr. 2 og 3, sammenholdt med bekendtgørelse nr. 544 af 20. december 1971 § 1, stk. 1 og § 9 og finansministeriets bekendtgørelse af 4. juli 1969 § 4, idet han som direktør og hovedaktionær i nævnte selskab havde undladt rettidigt at indbetale indeholdt A-skat for perioden december 1971 - oktober 1972, ialt 131.494 kr., hvoraf 23.993 kr. var betalt, og idet han ikke rettidigt havde indsendt redegørelser for januar 1972. Han fandtes videre skyldig efter samme bestemmelser, idet der påhvilede ham indeholdelsespligt i en entreprenørvirksomhed, som han havde oprettet 1. april 1972, men hvor han havde undladt at indbetale et nærmere angivet, indeholdt A-skattebeløb for visse måneder i 1972, og hvor han havde undladt at indsende redegørelser for de samme måneder. Endelig fandtes sagsøgeren skyldig efter bekendtgørelse nr. 145 af 28. marts 1969 § 12, jfr. § 5, idet han havde undladt rettidigt at anmelde sin entreprenørvirksomhed til det pågældende register (CIR) Det bemærkedes i dommen, at straffen til dels ville være at fastsætte som en tillægsstraf efter straffelovens § 89, men at der forelå skærpende omstændigheder. Sagsøgeren idømtes hæfte i 20 dage.

Under denne sag, der er anlagt 9. juli 1976, og hvorunder der er meddelt sagsøgeren fri proces, har han nedlagt endelig påstand om, at sagsøgte, Statsskattedirektoratet, Meldahlsgade 5, København, dømmes til at anerkende, at et beløb på 33.190 kr., som i månederne december 1971 - oktober 1972, begge måneder inklusive, skulle være betalt i A-skat af hans arbejdsgiver, Herning Kranudlejning A/S, ikke kan-kræves betalt af sagsøgeren.

Sagsøgte har endeligt nedlagt følgende påstande: Principalt at sagsøgte frifindes, og at sagsøgeren dømmes til at betale sagsøgte 209.655 kr. med sædvanlig procesrente fra 20. december 1976. Subsidiært at sagsøgeren dømmes til at betale sagsøgte 249.786 kr. med sædvanlig procesrente fra nævnte dato.

Sagsøgtes modkrav angår de A-skattebeløb, som Herning Kranudlejning A/S skulle have indeholdt i personalets lønninger for december 1971 og for året 1972, men som ikke er blevet afregnet til skattevæsenet. I kravene er inkluderet visse rentebeløb. Den i sagsøgtes principale påstand anførte modfordring omfatter ikke den A-skat, som skulle have været indeholdt i sagsøgerens egen løn. Den i sagsøgtes subsidiære påstand anførte modfordring dækker derimod samtlige de A-skattebeløb, som man fra selskabets side har undladt at afregne for ovennævnte periode, herunder også sagsøgerens egen A-skat.

Sagsøgeren har med hensyn til sagsøgtes modkrav nedlagt påstand om frifindelse.

Sagsøgeren har forklaret, at hans løn i aktieselskabet en tid androg 3.000 kr. pr. måned, men at den blev forhøjet til ca. 5.000 kr. pr. måned, og at den i de første 10 måneder af 1972 udgjorde omkring 70.000 kr. Selskabets økonomi var til at begynde med tilfredsstillende; men i efteråret 1971 gik man i gang med en entreprise, der som følge af en fejlberegning blev tabsgivende. Og i 1972 svigtede ordretilgangen. Sagsøgeren håbede at kunne rette økonomien op ved realisation af maskiner og af selskabets faste ejendom. Selv efter en sådan realisation skulle det være muligt at holde selskabet i drift. En ejendomsmægler, der mente, at

---

**1** Likvidationen foretoges af skifteretten efter overregistrators anmodning i henhold til aktieselskabslov 1930 § 62, jfr. § 59 og afsluttedes med en dividende på ca. 1%.

**2** Jfr. U.1975.38 H (U1975B.112), U.1976.241 og U.1978.975 samt Bjørn, Hulgaard og Michelsen: Lærebog om indkomstskat, 4. udg. s. 678 f og 681, Polack i SO 1976.278, Lund Nielsen i R. R. 1978 9 ff, Mathiassen smst. 344 og Engholm Jacobsen i J 1979.419.

ejendommen kunne indbringe ca. 1 million kroner, prøvede at få den solgt. Hvis realisationsplanerne var blevet gennemført, ville der have foreligget tilstrækkelige midler til at dække kreditorerne. Den påtænkte ordning umuliggjordes imidlertid, da selskabet blev udsat for udpantning og tvangsauktion. Der var beskæftiget en bogholder i selskabet, og bøgerne blev ført lige til det sidste. Derimod havde man efter den 31. maj 1971 ikke penge nok til at betale en revisor, hvorfor der ikke er blevet opstillet noget regnskab siden denne dato. Sagsøgeren ved ikke, hvordan afviklingen af selskabet juridisk blev gennemført; men han mener, at de ansatte fik deres løntilgodehavende dækket af Lønmodtagernes Garantifond. Sagsøgeren ejer og driver nu en mindre landbrugsejendom i Ilskov. Ejendomsværdien andrager 800.000 kr. Han har betydelig gæld og har i de sidste par år haft så små indtægter, at han ingen skat betaler.

Sagsøgeren har anført, at Herning Kranudlejning A/S ved lønudbetalingerne til personalet har foretaget lønindeholdelse for A-skat i overensstemmelse med gældende forskrifter, og at der lige så lidt for sagsøgerens eget vedkommende som for det øvrige personales vedkommende er grundlag for at anfægte disse lønindeholdelser. Sagsøgeren har videre bestridt at have påført skattevæsenet tab ved noget forhold, der kan pådrage ham erstatningsansvar. Han er ikke regnskabskyndig, og det var ikke gået op for ham, hvor langt lederansvaret rakte. Han forestillede sig, at det alene var aktiekapitalen, man kunne holde sig til, og han har ikke kunnet overse konsekvenserne af selskabets vanskeligheder, der for en væsentlig del skyldtes tabet på en enkelt entreprise. Når man ikke under selskabets drift har advaret ham om, at han personligt kunne komme til at hæfte for indeholdt A-skat, vil det være urimeligt nu at pålægge ham sådant ansvar. I hvert fald bør skattevæsenet ikke kunne afkræve ham renter af de betydelige beløb, sagen angår.

Fra sagsøgtes side er det anført, at der mellem sagsøgeren og Herning Kranudlejning A/S forelå så nær forbindelse, at det grænsede til identitet. Den lønindeholdelse, der angiveligt er foretaget i selskabet for sagsøgerens eget vedkommende, dækker ikke noget reelt forhold. Sagsøgeren var enerådende i selskabet og kunne i regnskaberne lade postere et hvilket som helst beløb som eget »skattetræk«. Da sagsøgeren og dermed selskabsledelsen må antages at have savnet evne og vilje til at hensætte og afregne A-skat vedrørende hans egen indkomst, kan de regnskabsmæssige angivelser herom ikke være forpligtende for skattevæsenet.

Med hensyn til modkravene har sagsøgte anført, at det efter culpasynspunkter må påhvile sagsøgeren personligt at erstatte selskabets uafregnede lønindeholdelser. De indeholdte beløb står ikke til fri disposition for arbejdsgiveren, men skal sikres for skattevæsenet, og der må påhvile selskabets ledelse særlig pligt til at påse, at dette sker. I det foreliggende tilfælde har selskabet - efter hvad der gøres gældende - igennem længere tid været under permanent incasso for A-skatteafregning. Selskabet havde så godt som ingen egenkapital, og i tiden efter 31. maj 1971 havde selskabet ikke engang midler til revisorbistand. Ved under disse omstændigheder at videreføre selskabet har sagsøgeren udsat skattevæsenet for en betydelig risiko og må efter fast retspraksis være ansvarlig for det nu konstaterede tab. Det gælder lønindeholdelserne for det egentlige personale, jfr. sagsøgtes principale påstand, men også - i tilfælde af, at sagsøgte dømmes til at anerkende den lønindeholdelse, som angiveligt er foretaget for sagsøgerens vedkommende - hans eget uafregnede »skattetræk«, jfr. sagsøgtes subsidiære påstand.

## Retten skal udtale:

Angående Herning Kranudlejning A/S, som indstillede sin virksomhed i efteråret 1972, og som ikke havde haft revisorbistand siden 31. maj 1971, lægges det til grund, at selskabets økonomi igennem længere tid har været anspændt, og at ledelsen ikke i fornødent omfang har iagttaget sine forpligtelser med hensyn til sikring af kreditorernes interesser. Der er imidlertid ikke forelagt retten nærmere oplysninger om selskabets regnskabsførelse eller om den stedfundne afvikling af selskabet. Det henstår således som uoplyst, hvilke redegørelser angående selskabets forhold der måtte være afgivet i forbindelse med selskabets likvidation, konkurs eller ophør i øvrigt.

Henset til at sagsøgeren har varetaget selskabets ledelse i tiden fra kort efter stiftelsen, indtil afviklingen fandt sted, og henset til ovenfor anførte findes han ikke på det foreliggende grundlag at kunne forlange de lønindeholdelser, selskabet angiveligt har foretaget for hans eget vedkommende, anerkendt som reelle, skatteberigtigende dispositioner. Sagsøgte vil herefter være at frifinde for sagsøgerens påstand.

Selvom sagsøgeren erstatningsretligt måtte kunne drages til ansvar for sin ledelse af aktieselskabet, findes det på det foreliggende grundlag betænkeligt at fastslå, i hvilket omfang man fra skattevæsenets side kan afkræve ham erstatning for selskabets uafregnede lønindeholdelser. Som sagen foreligger oplyst, vil sagsøgeren derfor være at frifinde for sagsøgtes modkrav.

- - -

Ingen af parterne betaler sagsomkostninger til den anden part eller til statskassen.

## Højesteret

### Højesterets dom.

Den indankede dom er afsagt af Østre Landsret.

I pådømmelsen har deltaget fem dommere: Hvidt, Thygesen, Urne, Funch Jensen og Munch.

Appellanten har principalt påstået indstævnte tilpligtet at anerkende, at appellanten har krav på betaling af 33.190 kr. hos indstævnte, samt at betale til appellanten 209.655 kr. med rente 2% over den til enhver tid fastsatte diskonto af 133.397 kr. fra 1. juli 1976. Subsidiært påstås indstævnte tilpligtet at betale 249.786 kr. med renter som nævnt af 166.587 kr.

Indstævnte har heroverfor principalt påstået frifindelse, subsidiært stadfæstelse og mere subsidiært frifindelse mod betaling af et mindre beløb.

I beløbene 209.655 kr. og 249.786 kr. er foruden skattebeløbene 133.397 kr., henholdsvis dette beløb med tillæg af 33.190 kr. eller 166.587 kr., medtaget renter og gebyrer efter skattelovgivningens regler.

### Kildeskattedirektoratet har i skrivelse af 10. november 1973 til indstævntes revisor udtalt:

»I skrivelse af 17. september 1973 har De rejst indsigelse imod, at et beløb på kr. 33.190 - - - er tilbageført under henvisning til princippet i kildeskattelovens § 68. I denne anledning skal man meddele, at direktoratet ikke kan anerkende, at der er skat indeholdte i lønninger, som Martin Møller har udbetalt til sig selv, idet han ved lønudbetalingen var klar over, at A-skatten ikke ville blive betalt - - - «

Til brug for Højesteret er der afgivet nye forklaringer og tilvejebragt yderligere oplysninger.

Indstævnte har forklaret, at han ikke på noget tidspunkt selv ejede aktier i selskabet. Selskabets virksomhed bestod dels i udlejning af kraner, dels i selvstændige entrepriser, hvor man forestod opstilling ved elementmontager. Indstævntes arbejde som direktør

HR1981.I 246/1979 - U.1981.473HH

i selskabet bestod i at lede arbejdet i marken, at afgive tilbud og at udarbejde det fornødne grundlag for faktureringen. Kontorarbejdet blev forestået af bogholderen. Indstævnte havde intet overblik over udgifterne, som henhørte under bogholderens område. Bogholderen betalte kreditorerne, når han havde penge at betale med. Indstævnte regnede med, at alle kreditorer blev betalt omend for sent. Selskabet havde kun et lille kapitalgrundlag og voksede stærkt, således at der var et likviditetspres fra starten. Likviditeten blev først for alvor anstrengt i slutningen af 1971, da firmaet var med i dets hidtil største projekt. Selskabet arbejdede på projektet et lille års tid, men opdagede på et tidspunkt, at det ikke hang for godt sammen. Man regnede med, at man ved ekstra honorarer, som man kunne forhandle sig frem til, kunne få det til at løbe rundt. Selskabet blev imidlertid på grund af likviditetsvanskeligheder »kvalt« i entreprisen, idet man omkring august-september 1972 manglede penge og måtte sælge aktiver for at fremskaffe kapital. Man forsøgte at sælge selskabets ejendom, som ejendomsmægleren påregnede, at selskabet kunne få 1,3-1,5 mill. kr. for. Hvis ejendommen var blevet solgt til denne pris, havde selskabet haft penge til at gøre entreprisen færdig og få sine ekstra honorarer forhandlet hjem. Ejendommen blev imidlertid ikke solgt i fri handel, men gik på tvangsauktion i november 1972, hvor den blev solgt for et bud på ca. 850.000 kr.

Advokat Erik Mathiesen har forklaret, at baggrunden for selskabets stiftelse var, at indstævntes hustru havde drevet en vognmandsforretning, som indstævnte ledede. Da denne forretning gik nedenom, blev selskabet startet nærmest som en støtteaktion over for indstævnte. Det var meningen, at han, hvis det blev muligt, skulle overtage den væsentligste del af aktiebeholdningen. Han havde efter vidnets opfattelse formentlig en køberet til aktierne. Såvidt det er vidnet bekendt, har indstævnte ikke været aktionær i selskabet. Indstævnte har ikke haft meget at gøre og kontoret, der blev forestået af bogholderen. Selskabet var i konstant likviditetsnød. Selskabet gik, så vidt vidnet husker, meget godt i begyndelsen, indtil Dansk Total Entreprise holdt pengene tilbage vedrørende et større arbejde i København.

Bogholder Gunnar Colmann har forklaret, at han vil tro, at han drøftede med indstævnte, at han ikke betalte den tilbageholdte A-skat, da han intet havde at betale med. Vidnet har informeret indstævnte om, at skattevæsenet foretog udlæg i ejendommen.

Entreprenør Johannes Lodahl har forklaret, at han var formand for selskabets bestyrelse fra starten til slutningen, og at han selv havde aktier for 4.000 kr. hele tiden. Det blev ved aktieselskabets stiftelse aftalt, at indstævnte skulle have lejlighed til at købe aktier. Selskabet havde det meste af tiden behov for penge, idet det voksede sig større og havde så lille en startkapital.

Efter protokollatet fra den stiftende generalforsamling i selskabet den 15. maj 1968 var indstævnte ikke blandt stifterne. I Herning by- og herredsrets dom af 11. september 1973 er anført, at indstævnte havde forklaret, at han havde været direktør og hovedaktionær siden selskabets stiftelse, og ifølge den til sagen den 5. september 1972 optagne politirapport oplyste indstævnte, at han indtil da havde været hovedaktionær og daglig og ansvarlig leder af selskabet, af hvis aktiekapital på 15.000 kr. han selv besad 10.000 kr. I forbindelse med selskabets likvidation anholdtes til stempelresolution nogle aktiebreve, dateret den 6. december 1972, på ialt 15.000 kr., deriblandt et aktiebrev på 10.000 kr. til indstævnte.

I driftsregnskabet for tiden 1. juni 1969 til 31. maj 1970 angives overskuddet til 90.680 kr. før og 7.362 kr. efter afskrivninger og nedskrivninger. På status udgør kassebeholdning, investeringsfondskonto og debitorer tilsammen 79.210 kr. og kreditorer 562.488 kr.

I driftsregnskabet for tiden 1. juni 1970 til 31. maj 1971 udgør overskuddet 1.289 kr. efter nedskrivninger og afskrivninger med 70.768 kr., og der er angivet tinglyste udlæg for ialt 145.139 kr., herunder 64.791 kr. for A-skat.

I revisionsberetningen af 25. november 1971 anføres bl.a., at selskabets likviditet fortsat er dårlig, og det hedder videre: »Der må peges på den store kortfristede gæld sammenlignet med næsten ingen likvide midler og en ret lille debitormasse, der gør selskabet meget sårbart. Det vil være nødvendigt for at holde virksomheden igang, at indtjeningen og overskuddet sættes i vejret, samtidig med at der vises den største forsigtighed med hensyn til omkostninger og nye investeringer«.

Af en tingbogsattest for selskabets ejendom fremgår, at der i tiden fra 6. februar 1971 til 1. november 1972 er tinglyst 28 udlæg og udpantninger i ejendommen.

Efter sagens oplysninger må det lægges til grund, at indstævnte var enerådende i selskabet og havde den væsentligste økonomiske interesse i dette, at han fra slutningen af 1971 måtte vide, at der ikke var penge til at dække selskabets forpligtelser til indbetaling af A-skat, og at han - navnlig efter den alvorlige revisionsberetning af 25. november 1971 og de talrige udlæg og udpantninger - måtte være klar over, at der heller ikke var udsigt til, at selskabet senere kunne dække disse forpligtelser.

Under disse omstændigheder finder samtlige dommere, at skattemyndighederne med rette har bortset fra de foretagne posteringer i selskabets regnskab af indeholdt A-skat af lønnen til indstævnte for det pågældende tidsrum. Han kan derfor ikke som lønmodtager anses frigjort for dette skattetilsvar efter reglerne i kildeskattelovens § 60, stk. 1, og hæfter således personligt for det, jfr. herved lovens § 68. Appellantens principale påstand vil derfor med hensyn til de 33.190 kr. være at tage til følge.

For så vidt angår spørgsmålet om erstatningsansvar for indeholdte A-skattebeløb for andre i selskabet ansatte, udtaler fire dommere - Hvidt, Urne, Funch Jensen og Munch:

Under de ovenfor nævnte omstændigheder måtte det påhvile indstævnte at drage omsorg for, at tilsvaret til skattevæsenet blev øgedes, eller i fornødent fald at bringe virksomheden til standsning. Da indstævnte ikke har opfyldt denne pligt, findes han at være ansvarlig for det skattevæsenet herved påførte tab. Dette findes at måtte ansættes til det beløb, der er unddraget skattevæsenet, dog uden tillæg af renter og gebyrer efter skattelovgivningens regler, men med tillæg af sædvanlig procesrente fra kravets fremsættelse den 26. august 1976.

Disse dommere stemmer herefter for at tilpligte indstævnte at betale 133.397 kr. med renter som nævnt. De stemmer endvidere for at pålægge indstævnte i sagsomkostninger for begge retter at betale 25.000 kr. til appellanten.

Dommer Thygesen er enig med flertallet i, at indstævnte er erstatningspligtig over for appellanten, og at dette ansvar ikke omfatter tilskrevne renter og gebyrer ifølge kildeskatteloven, men udtaler herefter:

Dette erstatningsansvar kan ikke uden videre medføre tilkendelse af hele det ikke indbetalte A-skattebeløb. Selvom indstævnte havde standset selskabets virksomhed allerede i begyndelsen af 1972, må der dog antages at ville være opstået et betydeligt tab for skattevæsenet på grund af den da foreliggende undladelse af at afregne A-skat. Under hensyn hertil findes appellantens erstatningsansvar - ud over de fornævnte 33.190 kr. - kun at burde tages til følge med et noget mindre beløb end de opgjorte 133.397 kr. Idet erstatningen herefter i mangel af nærmere oplysninger skønsmæssigt kan ansættes til 100.000 kr., stemmer denne dommer for at tilkende appellanten dette beløb med sædvanlige renter fra den 26. august 1976.

Copyright © 2021 Karnov Group Denmark A/S

HR1981.I 246/1979 - U.1981.473HH

Der vil være at give dom efter stemmeflertallet.

**Thi kendes for ret:**

*Indstævnte, direktør Martin Møller, bør anerkende, at appellanten, Statsskattedirektoratet, har krav på betaling af 33.190 kr. hos indstævnte.*

*Indstævnte bør inden 14 dage efter denne højesteretsdoms afsigelse til appellanten betale 133.397 kr. med renter heraf 2% over den til enhver tid fastsatte diskonto fra den 26. august 1976, til betaling sker, og i sagsomkostninger for landsret og Højesteret 25.000 kr.* [3]

---

[3]     Salær til den for indstævnte beskikkede advokat 18.000 kr.

Copyright © 2021 Karnov Group Denmark A/S