# Exhibit 39

**U.2014.899H**

***The authority was not required to produce responses obtained from Kammeradvokaten prior to a trial.***

*Administration of justice 14.5 and 24.1.*

- During an appeal case before the Supreme Court concerning a public procurement procedure for a radio communication network for the emergency services, the company H claimed that it was a foregone conclusion that another company, M, would win the tender. H requested that, pursuant to section 298 of the Danish Administration of Justice Act, the agency, S, be ordered to submit three responses prepared by Kammeradvokaten, K, prior to the trial, as H stated that these responses contained information that could help prove that the public procurement procedure had not been genuine. The Supreme Court stated, among other things, that a legal opinion on Danish law does not concern the presentation of evidence and that such an opinion cannot be presented as evidence in the case. Therefore, a party or a third party cannot generally be ordered to produce a legal opinion, cf. sections 298 and 299 of the Danish Administration of Justice Act. Only to the extent that a legal opinion may be assumed to contain such factual information of importance to the outcome of a lawsuit that the interests of secrecy must give way to the interests of the case, it may be considered to order the party or third party to produce the parts of a legal opinion that concern this information. The responses in question concerned K's assessment of whether a previously completed tender could be assumed to preclude the state from establishing a publicly owned emergency response network and of the state's options in this connection. The Supreme Court found no basis for assuming that the responses obtained contained such information about factual matters that the consideration for secrecy had to outweigh the consideration for the disclosure of the case, and noted that they had to be considered exempt from access to documents. The Supreme Court then found no basis for granting H's request for access.[1]

**900**

requested that the Danish Agency for Modernization (formerly Økonomistyrelsen) pursuant to the Danish Administration of Justice Act

**H.K. December 17, 2013 in case 110/2013 (1st dept.)**

*Hans Damm Research A/S (attorney Søren Stenderup Jensen, Copenhagen)*
mod
*The Danish Business Authority (formerly the IT and Telecom Agency), the Agency for Modernization (formerly the Danish Agency for Economic Affairs) and*
*Ministry of Defense (Km.adv. v/adv. Sune Fugleholm, Copenhagen, for all).*

## Supreme Court

Three judges participated in the decision: Jon Stokholm, Vibeke Rønne and Jens Peter Christensen.

*Claims*

On appeal of the Eastern High Court's judgment of 13 May 2013, the appellant, Hans Damm Research A/S, has finally

§ 298 is ordered to submit Kammeradvokaten's response of November 2, 2005, Kammeradvokaten's memorandum/response/opinion of February 22, 2006 and Kammeradvokaten's response/opinion of April 3, 2006, or, in the alternative, fairly extracted versions of the responses/opinions in question.

The defendants, the Danish Business Authority and the Agency for Modernization, have objected to this.

*Case presentation*

The case concerns the so-called SINE tender carried out by the Ministry of Economic Affairs in 2006-2007 concerning the purchase of access to a common radio communication network for the emergency services and a number of actions and transactions made by the defendants in this connection. The tendered contract was won by Dansk Bered-skabskommunikation A/S, which is a company in the Motorola group. During the appeal proceedings, Hans Damm Research has claimed that the state must pay DKK 58,077,724, alternatively a smaller amount. The Danish Business Authority and the Agency for Modernization have claimed confirmation.

The documents to which this request for production relates are, among other things, referred to in Kammeradvokaten's supporting appendix B of January 4, 2013, which was presented to the High Court. This states:

"*1) On November 2, 2005 to the National Police Commissioner*

Ref: "Establishment of a radio communication system for use by the authorities"

On October 6, 2005, the Danish National Police requested an assessment from Kammeradvokaten as to whether the tender for frequencies for the TETRA emergency and emergency response network carried out in 2000/2001 could be assumed to prevent the state from now establishing a publicly owned emergency response network. On November 2, 2005, tKammeradvokaten issued an opinion on this matter; in addition to TetraNet, the opinion also mentions TetraStar.

Conclusion of the Opinion: The TETRA frequency licenses granted in October 2001 prevented the State from establishing a publicly owned emergency network.

*2) February 22, 2006 to Økonomistyrelsen*

Ref: "Emergency and response network - summary of different options for action"

At the end of January 2006, the Danish Agency for Economic Affairs requested a broader clarification from tKammeradvokaten on the state's options for action in connection with the establishment of a nationwide network for emergency and contingency communication. On February 22, 2006, Kammeradvokaten submitted a preliminary summary regarding various options; the opinion mentions TetraNet, TetraStar and other players.

The opinion's conclusion: The state is not obliged to enter into a contract with TetraNet for the establishment and operation of an emergency response network. The task can be put out to tender and thus exposed to competition.

*3) April 3, 2006 to Økonomistyrelsen*

Ref: "Emergency and resilience network - opinion on different options for action"

Same assignment as above under 2). Opinion of the Advocate General in final form.

Conclusion of the opinion: Same as above under 2)."

To further elucidate the content of the responsa of respectively On 2 November 2005 and 3 April 2006, the Danish Business Authority and the Agency for Modernization submitted Process Statement A and B on 11 January 2013.

---

[1] U 1997.837 H, U 1998.16 H, U 2011.431 H, U 2014.138 H, Lars Lindencrone and Håkon Djurhuus in Procedure, 3rd ed. (2009), p. 264, Ulrik Rammeskow Bang-Pedersen and Lasse Højlund Christensen: Den civile retspleje, 2nd ed. (2010), pp. 487-90, Lars Lindencrone and Erik Werlauff: Dansk retspleje, 5th edition (2011), pp. 283-86, Jørgen Jochimsen: Bevisførelse i retssager (2012), pp. 122-27, Bernhard Gomard et al: Kommenteret retsplejelov, 9th edition (2013),

pp. 681-86 and 689-91, Bernhard Gomard and Michael Kistrup: Civil Procedure, 7th edition (2013), pp. 709-14, Henrik Zahle in Juristen 1979, pp. 313 ff, Peter Bang in U 1997B.268, Jonas Christoffersen in U 2000B.202, and Eigil Lego Andersen in U 2001B.442.

In procedural statement A regarding the opinion of Kammeradvokaten of

2. November 2005 states, among other things:

"During the preparation of the case and most recently during the main hearing, the plaintiff has expressed a wish to clarify the content of a re sponsum (statement) of November 2, 2005 submitted by Karsten Hagel-Sørensen to the National Police. The opinion is confidential and cannot be subject to access or disclosure, which is why the content of the opinion is only included in the facts of the case in the form of various reproductions and descriptions of the opinion and its conclusion. The defendant authorities have in a supporting annex briefly summarized the content and conclusion of the opinion. Since the applicant disputes the summary of the opinion's conclusion in the supporting annex and since the defendant authorities would like to contribute to clarifying the opinion's conclusion, the defendant authorities hereby make the following binding procedural statement:

The defendant authorities *state* that on November 2, 2005, Kammeradvokaten submitted an opinion to the National Police entitled "Eta- blering af radiokommunikationssystem til brug for beredskabsmyn- dighederne".

The defendant authorities further *state* that the opinion of November 2, 2005 contains the following

**901**

conclusion on the question of whether the state, in light of the frequency tender carried out in 2000/2001, had the legal possibility of establishing a state network:

*"I therefore believe that TetraNet, based on the legislative history as well as the tender material and the wording of the license, must have been given a clear expectation that a competing nationwide state network would not be established, as such a network would remove the business basis for TetraNet. In this regard, I also emphasize that there was some skepticism in advance as to whether there was room for two networks. The subsequent development and TetraNet's difficulty in attracting customers other than emergency response customers illustrates to me that a state-financed communication network will give TetraNet a competition that makes it unrealistic for TetraNet to continue expanding its coverage."*

In procedural statement B regarding the opinion of Kammeradvokaten of

3. April 2006 states, among other things:

"During the preparation of the case and most recently during the main hearing, the plaintiff has expressed a wish to clarify the content of a re sponsum (opinion) of April 3, 2006 submitted by Karsten Hagel-Sørensen to the Danish Agency for Governmental Management.

[. . .]

The defendant authorities *state* that, on April 3, 2006, the Advocate General submitted a 39-page opinion to the Danish Agency for Economic Affairs entitled "Nød- og beredskabsnettet - udtalelse vedrørende for- skellige handling options".

The defendant authorities further *state* that the opinion of April 3, 2006 contains, inter alia, the following conclusions with regard to the questions of whether the frequency license granted to TetraNet prevented the inclusion of TetraStar in competition with TetraNet and whether exposure to competition could take place through a tender procedure under the applicable procurement directive:

1) *"Having reviewed a number of international documents, EU acts and the national legislation in the area as well as the Danish Telecom Agency's material, the correspondence with TetraNet and TetraStar and the issued licenses and supplements thereto, it is my assessment on the above basis that the Danish Agency for Economic Affairs will not be legally prevented from involving TetraStar in a process aimed at coordinating emergency and emergency communications by establishing a common connection scheme for emergency users in the country."*

2) "By virtue of the above-mentioned overlap between the two authorizations and the procurement directive's delimitation of services subject to mandatory tendering, it is my opinion that the telecommunications services that the Danish Agency for Economic Affairs intends to demand cannot be assumed in their entirety to be exempt from the obligation to tender *under the current procurement directive.*
*It would therefore be questionable to enter into negotiations with TetraNet alone. These concerns will be all the greater if the negotiation strategy is based on the Danish Agency for Economic Affairs expressly reserving the right to conclude negotiations with TetraNet and, in continuation thereof, initiate new negotiations with TetraStar as well."*

3) "On the other hand, a typical and, from a procurement law perspective, reassuring model for exposing the telecommunications services in question to competition would be to initiate a procurement procedure in accordance with the applicable procurement directive, including the publication of a contract notice."

*Requester*

*Hans Damm Research* A/S has in support of the request for production stated, inter alia, that the facts which the company seeks to prove by submitting the three responses are that the State's preference for Mo- torola continued to exist during the preparation and implementation of the SINE tender. The tender was not real and could not legally become real. The State's conduct in the tender process is to a very large extent based on the recommendations in the three responses. It has not been possible to document the factual circumstances that formed the basis of the state's decision-making process in any other way, including through the witness statements given before the High Court. Presentation of the three responsa is therefore of decisive importance for the responsible decision in the case. They were part of a complicated interplay between law and technology in relation to the question of whether the emergency response network should be put out to tender, and have been of crucial importance to the state's sudden decision to put out to tender instead of pursuing a direct agreement with Motorola. It is not given that the content cannot constitute evidence of the authorities' intent and conduct. Pleadings A and B, which were submitted to the High Court, contain selectively chosen excerpts from Kammeradvokaten's responses. There is no account of the factual basis for the responses in question. Presentation of extracted responses, where it is not possible to see the connection between the conclusions and the facts on which the conclusions are based, cannot therefore replace the presentation of the relevant responses. The explanations given before the High Court show that Hans Damm Re- search's ability to lift the burden of proof that the SINE tender was not real or could not be real through explanations from the officials involved has been impaired.

In the Complaints Board for Public Procurement, the three responses were presented during the oral hearing, as the chairman believed that it could not be denied in advance that these responses were important to the decision of the case. The fact that, apparently within a very short period of time - and without there appearing to be any intervening factual circumstances to justify this - the Advocate General must be assumed to have changed

the interpretation of the law or assessment of the case, represents such an unusual course of events that there are such special circumstances that the request for production should be granted.

As the public's ability to conduct legal proceedings is not compromised by publication of the responses in question, the sole purpose of which is to shed light on the course of events in the case, this production request falls outside the exceptional situation that section 10(4) of the Freedom of Information Act is intended to cover. Nor have they been prepared with a view to or for use in legal proceedings.

Copyright © 2023 Karnov Group Denmark A/S

Failure to provide Kammeradvokaten's responsa would violate the principle of the European Convention on Human Rights (ECHR) Article 6 on, inter alia, equality of arms. Under certain circumstances, the state has a duty to make information available to persons suing a state for tortious conduct. Denying access in a situation where production of the document is necessary for the citizen to meet the burden of proof may constitute a violation of Article 6 of the ECHR.

*The Danish Business Authority and the Agency for Modernization* have stated that Hans Damm Research has not stated which specific factual circumstances the presentation of the responses in question should document or make probable. Nor has it been explained what decisive importance the documents in question may have for the case as it has been presented to the Supreme Court. The editing is seen to be based solely on Hans Damm Research's unclear and unsubstantiated assumptions and hopes about the content of the relevant responsa and their significance. The state's actions and decisions as well as the conclusions in the responsa in question are fully disclosed in the appealed judgment. Hans Damm Research's wish to review the legal advice that the authorities received prior to the implementation of the tender procedure cannot outweigh the recognized consideration that the State, on an equal footing with others, can confidentially obtain legal advice on the legal options prior to the implementation of a tender procedure of a magnitude such as the SINE tender procedure. Granting Hans Damm Research's discovery request would have significant adverse effects on the government's ability to receive written legal advice and make policy decisions at the government level. Furthermore, it is not correct that Kammeradvokaten has changed its legal opinion in relation to the SINE tender and that this is part of an "unusual course of events". The request for redaction is in reality an expression of a "fishing expedition", which according to established practice is not granted.

The conclusions set out in pleadings A and B have been fairly extracted and were already known. No further extraction can be made without compromising the protection considerations that justify that there should be no disclosure.

With the requests for production, access is requested to documents that are exempt from access to documents and subject to confidentiality due to very weighty public law considerations. Reference is made to section 10, no. 4 of the Access to Public Administration Files Act. Although there was no current or potential legal action at the time of submission, there was an obvious possibility of this. This is supported by the fact that two other cases concerning the same tender are currently pending before the Eastern High Court and the Copenhagen City Court, respectively.

The Agency for Modernization informed the Complaints Board for Public Procurement that responses had been obtained from Kammeradvokaten on a number of legal issues, but the responses in question were not handed over to the Complaints Board.

It is disputed that the failure to grant the request for production would constitute an independent violation of Article 2 of the ECHR.

6. the responses contain advice which, as a matter of principle, must be confidential in the relationship between a lawyer and a client. The failure to disclose the responses in question does not deprive Hans Damm Research of the opportunity to have its objections to the SINE tender adjudicated. All material relating to the tender, including the winning tender and evaluation notes, has been presented in the trial, and Hans Damm Research has had the opportunity to question the officials involved. Finally, during the High Court proceedings, Hans Damm Research has obtained two expert opinions in relation to the calculation of radio coverage according to the tender specification and the financial benefit associated with the SINE contract. All facts and circumstances of the

significance for Hans Damm Research's objections are thus included in the case.

### The Supreme Court's reasoning and result

The present question concerns whether a party who has obtained legal opinions on Danish law prior to a trial can be ordered to produce them pursuant to section 298 of the Danish Administration of Justice Act on discovery. It follows from the Supreme Court's decision of October 11, 2013 in case 159/2013 (U 2014.138 H) that a legal opinion on Danish law does not concern the evidence and that such an opinion cannot be presented as evidence in the case.

Therefore, a party or a third party cannot generally be ordered to produce a legal opinion, cf. sections 298 and 299 of the Administration of Justice Act. Only to the extent that a legal opinion may be assumed to contain such factual information of such importance to the outcome of a court case that the secrecy of the legal opinion must give way to the interests of the case, it may be considered to order the party or third party to

**903**

submit the parts of the response relating to this information. During the proceedings, Hans Damm Research A/S argues, among other things, that the state's preference for a particular player existed during the preparation and implementation of the SINE tender, which is why it was not a real tender, and that the inclusion in the case of the responses obtained supports this view.

According to the information provided, the responses obtained concern Kammeradvokaten's assessment of whether a previously completed tender procedure for frequencies for the TETRA emergency response network could be assumed to prevent the State from establishing a publicly owned emergency response network, and of the State's options in connection with the establishment of the network in question. The Supreme Court finds no basis for assuming that the responses obtained contain such information about facts that the consideration of secrecy must give way to the consideration of disclosure.

It should also be noted that the responses obtained must be considered exempt from access pursuant to Section 10(4) of the Access to Public Administration Files Act, which concerns an authority's correspondence with experts for use in legal proceedings or when considering whether legal proceedings should be conducted, and there is no basis for assuming that the responses obtained contain extractable information of significant importance to the case that does not appear from the other material in the case, see Section 11(1) of the Access to Public Administration Files Act.

Against this background, the Supreme Court finds no basis for granting Hans Damm Research's request for production, cf. Section 298(1) of the Danish Administration of Justice Act, or for ordering the Agency for Modernization to produce extracted versions of the responses in question. It should be noted that what the appellant has stated about Article 6 of the ECHR cannot lead to a different result.

### For it is determined

*Hans Damm Research A/S' main request that the Danish Agency for Modernization (formerly the Danish Agency for Governmental Management) be ordered to submit Kammeradvokaten's responses of 2 November 2005, 22 February and April 3, 2006 is not accepted.*

*Hans Damm Research A/S' alternative request that the Danish Agency for Modernization (formerly the Danish Agency for Economic Affairs) be ordered to present the said responses in fairly extracted form is also not granted.*

**U.2014.899H**

*Myndighed skulle ikke fremlægge responsa, som var indhentet fra Kammeradvokaten forud for en retssag.*

*Retspleje 14.5 og 24.1.*

♦ Under en ankesag for Højesteret om offentligt udbud af et radiokommunikationsnet til beredskabet gjorde selskabet H gældende, at det på forhånd var givet, at et andet selskab, M, skulle vinde udbuddet. H anmodede om, at det i medfør af retsplejelovens § 298 blev pålagt styrelsen, S, at fremlægge tre responsa udarbejdet af Kammeradvokaten, K, forud for retssagen, idet H anførte, at disse responsa indeholdt oplysninger, som kunne være med til at bevise, at det offentlige udbud ikke havde været reelt. Højesteret udtalte bl.a., at et juridisk responsum om dansk ret ikke angår bevisførelsen, og at et sådant responsum ikke kan fremlægges som bevis i sagen. En part eller en tredjemand kan derfor som udgangspunkt ikke pålægges at fremlægge et juridisk responsum, jf. retsplejelovens § 298 og § 299. Kun i det omfang et juridisk responsum må antages at indeholde sådanne faktiske oplysninger af betydning for en retssags udfald, at hensynet til hemmeligholdelse af dette må vige for hensynet til sagens oplysning, kan det komme på tale at pålægge parten eller tredjemand at fremlægge de dele af et responsum, der vedrører disse oplysninger. De pågældende responsa vedrørte K's vurdering af, om et tidligere gennemført udbud kunne antages at afskære staten fra at etablere et offentligt ejet beredskabsnet, og af statens handlemuligheder i forbindelse hermed. Højesteret fandt ikke grundlag for at antage, at de indhentede responsa indeholdt sådanne oplysninger om faktiske forhold, at hensynet til hemmeligholdelse af dem måtte vige for hensynet til sagens oplysning, og bemærkede, at de måtte anses for undtaget fra aktindsigt. Højesteret fandt herefter ikke grundlag for at imødekomme H's editionsbegæring.[1]

**900**

**H.K. 17. december 2013 i sag 110/2013 (1. afd.)**

*Hans Damm Research A/S (adv. Søren Stenderup Jensen, Kbh.)*
mod
*Erhvervsstyrelsen (tidl. IT- og Telestyrelsen),*
*Moderniseringsstyrelsen (tidl. Økonomistyrelsen)*
*og*
*Forsvarsministeriet (Km.adv. v/adv. Sune Fugleholm, Kbh., for alle).*

## Højesteret

I påkendelsen har deltaget tre dommere: Jon Stokholm, Vibeke Rønne og Jens Peter Christensen.
 *Påstande*
 Under anke af Østre Landsrets dom af 13. maj 2013 har appellanten, Hans Damm Research A/S, endeligt anmodet om, at Moderniseringsstyrelsen (tidl. Økonomistyrelsen) i medfør af retsplejelovens § 298 pålægges at fremlægge Kammeradvokatens responsum af 2. november 2005, Kammeradvokatens notat/responsum/udtalelse af 22. februar 2006 og Kammeradvokatens responsum/udtalelse af 3. april 2006, subsidiært loyalt ekstraherede udgaver af de pågældende responsa/udtalelser.
 De indstævnte, Erhvervsstyrelsen og Moderniseringsstyrelsen, har protesteret herimod.
 *Sagsfremstilling*
 Sagen drejer sig om det såkaldte SINE-udbud, som Økonomistyrelsen gennemførte i 2006-2007 vedrørende indkøbet af adgang til et fælles radiokommunikationsnet for beredskabet og en række handlinger og dispositioner foretaget af de indstævnte i den forbindelse. Den udbudte kontrakt blev vundet af Dansk Beredskabskommunikation A/S, som er et selskab i Motorola-koncernen.
 Hans Damm Research har under ankesagen nedlagt påstand om, at staten skal betale 58.077.724 kr., subsidiært et mindre beløb.
 Erhvervsstyrelsen og Moderniseringsstyrelsen har påstået stadfæstelse.
 De dokumenter, som nærværende editionsbegæring vedrører, er bl.a. omtalt i Kammeradvokatens støttebilag B af 4. januar 2013, som blev fremlagt for landsretten. Heraf fremgår:
 »*1) Den 2. november 2005 til Rigspolitichefen*
 Ref: »Etablering af radiokommunikationssystem til brug for beredskabsmyndighederne«
 Rigspolitiet anmodede den 6. oktober 2005 om Kammeradvokatens vurdering af, hvorvidt det i 2000/2001 gennemførte udbud af frekvenser til TETRA nød- og beredskabsnettet kunne antages at afskære staten fra nu at etablere et offentligt ejet beredskabsnet. Den 2. november 2005 afgav Kammeradvokaten en udtalelse herom; udtalelsen omtaler udover TetraNet også TetraStar.
 Udtalelsens konklusion: De i oktober 2001 tildelte TETRA-frekvenstilladelser afskar staten fra at etablere et offentligt ejet beredskabsnet.
 *2) Den 22. februar 2006 til Økonomistyrelsen*
 Ref: »Nød- og beredskabsnettet - sammenfatning vedrørende forskellige handlemuligheder«
 Økonomistyrelsen anmodede i slutningen af januar 2006 om Kammeradvokatens bredere belysning af statens handlemuligheder i forbindelse med etablering af et landsdækkende net til nød- og beredskabskommunikation. Den 22. februar 2006 afgav Kammeradvokaten en foreløbig sammenfatning vedrørende forskellige handlemuligheder; udtalelsen omtaler TetraNet, TetraStar samt andre aktører.
 Udtalelsens konklusion: Staten er ikke forpligtet til at indgå en kontrakt med TetraNet om etablering og drift af et beredskabsnet. Opgaven kan bringes i udbud og dermed konkurrenceudsættes.
 *3) Den 3. april 2006 til Økonomistyrelsen*
 Ref.: »Nød- og beredskabsnettet - udtalelse vedrørende forskellige handlemuligheder«
 Samme opdrag som ovenfor under 2). Kammeradvokatens udtalelse i endelig form.
 Udtalelsens konklusion: Samme som ovenfor under 2).«
 For yderligere at belyse indholdet af responsaene af henholdsvis 2. november 2005 og 3. april 2006 afgav Erhvervsstyrelsen og Moderniseringsstyrelsen den 11. januar 2013 proceserklæring A og B.

---

[1] U 1997.837 H, U 1998.16 H, U 2011.431 H, U 2014.138 H, Lars Lindencrone og Håkon Djurhuus i proceduren, 3. udg. (2009), s. 264, Ulrik Rammeskow Bang-Pedersen og Lasse Højlund Christensen: Den civile retspleje, 2. udg. (2010), s. 487-90, Lars Lindencrone og Erik Werlauff: Dansk retspleje, 5. udg. (2011), s. 283-86, Jørgen Jochimsen: Bevisførelse i retssager (2012), s. 122-27, Bernhard Gomard m.fl.: Kommenteret retsplejelov, 9. udg. (2013), s. 681-86 og 689-91, Bernhard Gomard og Michael Kistrup: Civilprocessen, 7. udg. (2013), s. 709-14, Henrik Zahle i Juristen 1979, s. 313 ff., Peter Bang i U 1997B.268, Jonas Christoffersen i U 2000B.202, og Eigil Lego Andersen i U 2001B.442.

I proceserklæring A vedrørende Kammeradvokatens udtalelse af 2. november 2005 hedder det bl.a.:

»Under sagens forberedelse og senest under hovedforhandlingen har sagsøgeren udtrykt ønske om at få belyst indholdet af et responsum (udtalelse) af 2. november 2005 afgivet af kammeradvokat Karsten Hagel-Sørensen til Rigspolitiet.

Udtalelsen er fortrolig og kan ikke gøres til genstand for aktindsigt eller edition, hvorfor udtalelsens indhold alene indgår i sagens faktum i form af forskellige gengivelser og beskrivelser af udtalelsen og dens konklusion.

De sagsøgte myndigheder har i et støttebilag kort sammenfattet udtalelsens indhold og konklusion. Da støttebilagets gengivelse af udtalelsens konklusion er bestridt af sagsøgeren, og da de sagsøgte myndigheder gerne bidrager med at få belyst udtalelsens konklusion, afgiver de sagsøgte myndigheder hermed følgende bindende proceserklæring:

De sagsøgte myndigheder *erklærer*, at kammeradvokaten den 2. november 2005 afgav en udtalelse til Rigspolitiet med titlen »Etablering af radiokommunikationssystem til brug for beredskabsmyndighederne«.

De sagsøgte myndigheder *erklærer* endvidere, at udtalelsen af 2. november 2005 indeholder følgende

**901**

konklusion på spørgsmål om, hvorvidt staten i lyset af det i 2000/2001 gennemførte frekvensudbud havde retlig mulighed for etablering af et statsligt net:

*»Jeg mener således, at TetraNet på baggrund af såvel lovforarbejderne som udbudsmaterialet og tilladelsens ordlyd, må være bibragt en klar forventning om, at der ikke vil blive etableret et konkurrerende landsdækkende statsligt net, idet et sådant net vil fjerne forretningsgrundlaget for TetraNet. Jeg lægger herved også vægt på, at der på forhånd var en vis skepsis om, hvorvidt der var plads til 2 net. Den efterfølgende udvikling og TetraNets vanskelighed ved at tiltrække andre kunder end beredskabskunder illustrerer for mig at se, at et statsligt finansieret kommunikationsnet vil give TetraNet en konkurrence, der gør det urealistisk for TetraNet at fortsætte en udbygning af dækningsgraden.«*

I proceserklæring B vedrørende Kammeradvokatens udtalelse af 3. april 2006 hedder det bl.a.:

»Under sagens forberedelse og senest under hovedforhandlingen har sagsøgeren udtrykt ønske om at få belyst indholdet af et responsum (udtalelse) af 3. april 2006 afgivet af kammeradvokat Karsten Hagel-Sørensen til Økonomistyrelsen.

[. . .]

De sagsøgte myndigheder *erklærer*, at kammeradvokaten den 3. april 2006 afgav en 39 sider lang udtalelse til Økonomistyrelsen med titlen »Nød- og beredskabsnettet - udtalelse vedrørende forskellige handlemuligheder«.

De sagsøgte myndigheder *erklærer* endvidere, at udtalelsen af 3. april 2006 blandt andet indeholder følgende konklusioner for så vidt angår spørgsmålene om, hvorvidt frekvenstilladelsen til TetraNet forhindrede inddragelsen af TetraStar i konkurrence med TetraNet og om konkurrenceudsættelse kunne ske ved et udbud efter det gældende udbudsdirektiv:

*1) »Efter at have gennemgået række af internationale dokumenter, EU-akter og den nationale lovgivning på området samt Telestyrelsens materiale, korrespondancen med TetraNet og TetraStar samt de udstedte tilladelser og tillæg hertil er det på ovenanførte grundlag min vurdering, at Økonomistyrelsen ikke vil være retligt afskåret fra at inddrage TetraStar i et forløb, der tager sigte på samordning af nød- og beredskabskom-munikationen ved etablering af en fælles tilslutningsordning for beredskabsbrugerne i landet.«*

*2) »I kraft af det ovenfor anførte om overlappet mellem de to tilladelser og udbudsdirektivets afgrænsning af udbudspligtige ydelser er det min opfattelse, at teleydelserne, som Økonomistyrelsen påtænker at efterspørge, ikke i sin helhed kan antages at være undtaget fra udbudspligten i henhold til det gældende udbudsdirektiv.*

*Det vil derfor være betænkeligt at indlede forhandlinger alene med TetraNet. Disse betænkeligheder bliver desto større, hvis forhandlingsstrategien lægges an på, at Økonomistyrelsen i forhold til TetraNet udtrykkeligt forbeholder sig adgangen til at afslutte forhandlingerne og i forlængelse heraf indlede nye forhandlinger også med TetraStar.«*

*3) »En typisk og udfra en udbudsretlig synsvinkel betryggende model til at konkurrenceudsætte de omhandlede teleydelser, vil på den anden side være at indlede en udbudsforretning i henhold til det gældende udbudsdirektiv, herunder med offentliggørelse af en udbudsbekendtgørelse.«*

*Anbringender*

*Hans Damm Research* A/S har til støtte for editionsbegæringen anført bl.a., at de kendsgerninger, som selskabet søger bevist ved fremlæggelse af de tre responsa, er, at statens præference for Motorola fortsat bestod under forberedelsen af og gennemførelsen af SINE-udbuddet. Udbuddet var ikke reelt og kunne heller ikke juridisk set blive det. Statens ageren i udbudsprocessen er i meget vidt omfang baseret på anbefalingerne i de tre responsa. Det har ikke på anden måde, herunder ved de afgivne vidneforklaringer for landsretten, været muligt at dokumentere de faktuelle omstændigheder, der lå til grund for statens beslutningsproces. Fremlæggelse af de tre responsa har derfor afgørende betydning for sagens forsvarlige afgørelse. De indgik som en del af et kompliceret samspil mellem jura og teknik i relation til spørgsmålet om, hvorvidt beredskabsnettet skulle i udbud, og har været af afgørende betydning for, at staten pludselig besluttede at gå i udbud i stedet for at forfølge en direkte aftale med Motorola. Det er ikke givet, at indholdet ikke kan udgøre bevis for myndighedernes hensigt og adfærd.

Proceserklæring A og B, som blev fremlagt for landsretten, indeholder selektivt udvalgte uddrag af Kammeradvokatens responsa. Der mangler redegørelse for det faktiske grundlag for de pågældende responsa. Fremlæggelse af ekstraherede responsa, hvor man ikke kan se sammenhængen mellem konklusionerne og det faktum, som konklusionerne bygger på, kan således ikke erstatte fremlæggelse af de pågældende responsa.

De afgivne forklaringer for landsretten viser, at Hans Damm Research har fået forringet muligheden for via forklaringer fra de involverede embedsmænd at løfte bevisbyrden for, at SINE-udbuddet ikke var reelt eller kunne blive det.

I Klagenævnet for Udbud blev de tre responsa fremlagt under den mundtlige forhandling, idet formanden mente, at det ikke på forhånd kunne afvises, at disse responsa havde betydning for sagens afgørelse.

Det forhold, at Kammeradvokaten tilsyneladende inden for en ganske kort periode - og uden at der ses at være mellemkommende, faktiske omstændigheder, der måtte betinge dette - må antages at have ændret

**902**

retsopfattelsen eller vurdering af sagen, repræsenterer et så usædvanligt forløb, at der foreligger sådanne særlige omstændigheder, at editionsbegæringen bør tages til følge.

Da det offentliges mulighed for at føre retssag ikke kompromitteres ved offentliggørelse af de pågældende responsa, der alene har til formål at belyse hændelsesforløbet i sagen, falder denne editionsbegæring uden for den undtagelsessituation, som offentlighedslovens § 10, nr. 4, tilsigter at ramme. De er heller ikke udarbejdet med henblik på eller til brug i en retssag.

Manglende fremlæggelse af Kammeradvokatens responsa vil stride mod princippet i Den Europæiske Menneskerettighedskonventions (EMRK) art. 6 om bl.a. equality of arms. Staten har under visse omstændigheder pligt til at stille oplysninger til rådighed for personer, som sagsøger en stat for erstatningspådragende adfærd. Nægtes adgang i en situation, hvor fremlæggelse af dokumentet er nødvendigt for, at borgeren kan løfte bevisbyrden, kan det udgøre en krænkelse af EMRK artikel 6.

*Erhvervsstyrelsen og Moderniseringsstyrelsen* har anført, at Hans Damm Research ikke har oplyst, hvilke konkrete faktiske omstændigheder fremlæggelsen af de omhandlede responsa skal dokumentere eller sandsynliggøre. Der er heller ikke redegjort for, hvilken afgørende betydning de pågældende dokumenter måtte have for sagen, således som den er skåret til for Højesteret. Editionsbegæringen ses alene at være baseret på Hans Damm Researchs uklare og uunderbyggede formodninger og forhåbninger om indholdet af de pågældende responsa og betydningen heraf. Statens handlinger og beslutninger samt konklusionerne i de pågældende responsa er til fulde afdækket i den indankede dom. Hans Damm Researchs ønske om at gennemlæse den juridiske rådgivning, som myndighederne modtog forud for udbuddets gennemførelse kan ikke veje tungere end det anerkendte hensyn til, at staten på lige fod med andre i fortrolighed kan indhente juridisk rådgivning om de retlige handlemuligheder forud for gennemførelsen af et udbud i en størrelsesorden som SINE-udbuddet. En imødekommelse af Hans Damm Researchs editionsbegæring vil have betydelige skadevirkninger for regeringens mulighed for at modtage skriftlig juridisk rådgivning og træffe politiske beslutninger på regeringsniveau. Det er endvidere ikke korrekt, at Kammeradvokaten skulle have ændret retsopfattelse i relation til SINE-udbuddet, og at dette skulle være en del af et »usædvanligt sagsforløb«. Editionsbegæringen er i realiteten udtryk for en »fiskeekspedition«, der efter fast praksis ikke imødekommes.

De konklusioner, som fremgår af proceserklæringerne A og B, er loyalt ekstraherede og var kendte i forvejen. Der kan ikke ekstraheres yderligere uden at kompromittere de beskyttelseshensyn, der begrunder, at der ikke skal ske edition.

Med editionsbegæringerne anmodes der om adgang til dokumenter, der grundet meget tungtvejende offentligretlige hensyn er undtaget fra aktindsigt og underlagt fortrolighed. Der henvises herved til offentlighedslovens § 10, nr. 4. Selv om der på tidspunktet for afgivelsen ikke var et aktuelt eller eventuelt sagsanlæg, var der en nærliggende mulighed herfor. Dette understøttes af, at der for tiden verserer to andre sager om samme udbud ved henholdsvis Østre Landsret og Københavns Byret.

Moderniseringsstyrelsen oplyste over for Klagenævnet for Udbud, at der var indhentet responsa fra Kammeradvokaten om en række retlige spørgsmål, men de pågældende responsa blev ikke udleveret til klagenævnet.

Det bestrides, at den manglende imødekommelse af editionsbegæringen skulle udgøre en selvstændig krænkelse af EMRK artikel 6. Responsaene indeholder rådgivning, som af principielle grunde må være fortrolig i forholdet mellem en advokat og en klient. Undladelsen af at udlevere de omhandlede responsa fratager heller ikke Hans Damm Researchs mulighed for at få pådømt sine indsigelser mod SINE-udbuddet. Alt materiale vedrørende udbuddet, herunder det vindende tilbud og evalueringsnotater, er fremlagt i retssagen, og Hans Damm Research har haft mulighed for at foretage afhøring af de involverede embedsmænd. Endelig har Hans Damm Research under landsretssagen indhentet to sagkyndige erklæringer i relation til henholdsvis beregning af radiodækning i henhold til udbuddets kravspecifikation og den økonomiske fordel forbundet med SINE-kontrakten. Alle faktiske omstændigheder af betydning for Hans Damm Researchs indsigelser indgår således i sagen.

### *Højesterets begrundelse og resultat*

Det foreliggende spørgsmål angår, om en part, der forud for en retssag har indhentet responsa vedrørende dansk ret, kan pålægges at fremlægge disse i medfør i retsplejelovens § 298 om edition.

Det følger af Højesterets kendelse af 11. oktober 2013 i sag 159/2013 (U 2014.138 H), at et juridisk responsum om dansk ret ikke angår bevisførelsen, og at et sådant responsum ikke kan fremlægges som bevis i sagen.

En part eller en tredjemand kan derfor som udgangspunkt ikke pålægges at fremlægge et juridisk responsum, jf. retsplejelovens § 298 og § 299. Kun i det omfang et juridisk responsum må antages at indeholde sådanne faktiske oplysninger af betydning for en retssags udfald, at hensynet til hemmeligholdelse af responsummet må vige for hensynet til sagens oplysning, kan det komme på tale at pålægge parten eller tredjemand at

**903**

fremlægge de dele af responsummet, der vedrører disse oplysninger.

Hans Damm Research A/S gør under sagen gældende bl.a., at statens præference for en bestemt aktør bestod under forberedelsen og gennemførelsen af SINE-udbuddet, hvorfor der ikke var tale om et reelt udbud, og at inddragelse i sagen af de indhentede responsa understøtter dette synspunkt.

De indhentede responsa vedrører ifølge det oplyste Kammeradvokatens vurdering af, om et tidligere gennemført udbud af frekvenser til TETRA nød- og beredskabsnettet kunne antages at afskære staten fra at etablere et offentligt ejet beredskabsnet, og af statens handlemuligheder i forbindelse med etablering af det omhandlede net.

Højesteret finder ikke grundlag for at antage, at de indhentede responsa indeholder sådanne oplysninger om faktiske forhold, at hensynet til hemmeligholdelse af dem må vige for hensynet til sagens oplysning.

Det bemærkes endvidere, at de indhentede responsa må anses for at være undtaget fra aktindsigt i medfør af offentlighedslovens § 10, nr. 4, der vedrører en myndigheds brevveksling med sagkyndige til brug i retssager eller ved overvejelse af, om retssag bør føres, ligesom der ikke er grundlag for at antage, at de indhentede responsa indeholder ekstraheringspligtige oplysninger af væsentlig betydning for sagsforholdet, som ikke fremgår af sagens øvrige materiale, jf. offentlighedslovens § 11, stk. 1.

På den anførte baggrund finder Højesteret ikke grundlag for at imødekomme Hans Damm Researchs editionsbegæring, jf. retsplejelovens § 298, stk. 1, eller for at pålægge Moderniseringsstyrelsen at fremlægge ekstraherede udgaver af de pågældende responsa. Det bemærkes herved, at det, som appellanten har anført om EMRK artikel 6, ikke kan føre til et andet resultat.

### **Thi bestemmes**

*Hans Damm Research A/S' principale anmodning om, at Moderniseringsstyrelsen (tidl. Økonomistyrelsen) pålægges at fremlægge Kammeradvokatens responsa af 2. november 2005, 22. februar og 3. april 2006 tages ikke til følge.*

*Hans Damm Research A/S' subsidiære anmodning om, at Moderniseringsstyrelsen (tidl. Økonomistyrelsen) skal pålægges at fremlægge de nævnte responsa i loyalt ekstraheret form, tages heller ikke til følge.*