# Exhibit 45

# LIONBRIDGE

STATE OF NEW YORK      )
                       )
                       ) ss
                       )
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached document U.1936.823/2Ø. I affirm that the linguist responsible for producing this translation is fluent in both the Danish and English languages.

_____

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me
this 6th day of June, 2022.

_____

LAURA E MUSICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MU6386791
Qualified in Queens County
My Commission Expires 01-28-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

U.1936.823/2Ø

*"A" set up a family trust and received part of the interest himself. He was liable for wealth tax on this part.*

Taxes 21.2 - Monetary system, etc., 58.3.

♦ Taxes II - Trusts. In 1925, "A" established a family trust, bearing royal confirmation, of DKK 600,000, whose board consisted of three members, with A as chairman, and whose main object was to support A's descendants, though he might also share in the interest income. From 1926 until A's death in 1933, A received a total of about DKK 100,000 from the trust, while his children received a total of about DKK 140,000. According to the State Tax Act No. 149 of April 10, 1922, § 12, No. 2, Item 3, A was considered liable for wealth tax for the tax years 1926/27–1932/33 on the parts of the trust capital corresponding to the amounts paid to himself—but not to the children.[1] Since the tax authorities had information before A's death showing that he had paid too little tax, Section 43 of the Act, which provides for repayment of double the amount of tax, did not apply. Limitation I - No part of the tax claim was considered time-barred under Act No. 274 of Dec. 22, 1908, as the tax authorities did not realize that A had paid too little tax until more than five years before the case was brought.[2]

**Eastern High Court Ruling of May 15, 1936, in case V 432/1935**

*Department of Taxation (Advocate General)*
against
*Widow Ebba Ruthe (Supreme Court Attorney David).*

**The Eastern High Court**

On December 18, 1925, a royal confirmation was announced on a trust created by Ernst Rothe, Master Builder, and Ebba Rothe, wife, on November 21 for the "Family Trust of Ernst Rothe, Master Builder, and Ebba Rothe, wife." Under § 1 of the deed of foundation, this is established for the benefit of the joint legitimate descendants of the founders; according to § 2, the basic fund consists of 6% mortgage bonds in various real estates—then belonging to Master Builder Rothe—of a total value of DKK 600,000.

§ 5 reads as follows:

"As long as I Ernst Rothe live, and if I Ebba Rothe survive my

824

husband, as long as I live, the board may allocate to us so much of the annuity income as may be deemed reasonable to enable us to keep our home as a hub for our children, and afterwards for them and our children's children, if any.

We shall, moreover, think it natural that, after our death, as long as there are children and grandchildren living after us, the board should allow them to receive a share of the interest, equally divided between the descendants of our three children. The foregoing provisions are only expressions of our wishes but do not bind the decisions of the board."

In § 6 it states:

"The main object of the trust is, as stated, to support our legitimate descendants, including those by marriage, so that the board of the trust shall determine both which of our descendants shall share in the income and how much shall accrue to each one. In deciding on this, the board of the trust shall assume that the purpose of the Trust shall be primarily to work for the development of the abilities of the members of the family for socially useful activities and for the renewal of the family. In this respect, assistance for the upbringing of young people, studies and travel, as well as assistance for equipment and for starting independent activities or acquiring one's own house, may be mentioned first of all. The Board of the Trust should seek to operate with fairly large trust portions, where this is considered justifiable, rather than dividing the income into many small portions.

Secondly, the income of the trust is to be used to help those of our legitimate descendants, including by marriage, who may have fallen into financial need, or whose living conditions there may be some reason to improve. As we wish that the trust left by us should act above all as an encouragement to the future family and not as a security measure or a cushion for the members of the family, however, we place the object here stated in the second rank. - - -

None of our descendants can raise in the courts any legal claim to assistance from the trust, it being entirely left to the discretion of the board who may be considered in the distribution of the trust, and for what period the support shall be granted."

In § 7:

"If in any year the income of the trust should prove to be greater than is necessary to meet what the board considers to be the reasonable demands for support of our descendants of the trust, the board may carry forward the amount to the following year and may assign an appropriate amount to a reserve fund.

The board of trustees shall, however, by unanimous decision be entitled to use the surplus for general charitable purposes. - - -"

In § 8:

"The board shall consist of three persons, one of whom shall act as chairman and one as secretary. The chairman shall be elected by the board itself. - - - The first board of directors shall be the co-undersigned Ernst Rothe as President and Supreme Court Attorney Martensen-Larsen

825

as Chairman and, as third member, Director of the "Savings Bank of Copenhagen and Omegn" Winkel Smith.

Mrs. Ebba Rothe, co-signatory, is hereby appointed deputy to Mr. Ernst Rothe and will also act as chairman of the trust. Each member shall appoint his replacement in the future, subject to the approval of the other two members of the board, who shall act in his absence and take his place on the board after the death or resignation of the predecessor. - - - All matters shall be decided by the board by a simple majority of votes, so that in the event of a tie the chairman shall have a casting vote. - - -"

In § 10:

"Should the family that is the beneficiary of the trust die out, the board will have to draw up a new deed of foundation for the trust, in which the purposes stated above under § 7, 2, will be included as the future purposes of the trust main objective. - - - Should the family that is the beneficiary of the trust die out while the founders or one of them is alive, the foundation will make rules authorizing the board to pay out of the interest income such sums as in the opinion of the board may be just to the founders or survivor in order to maintain their accustomed standard of living. - - -"

When submitting the tax return for the tax year 1926/27 Master Builder Rothe, whose wealth tax

---

[1] Cf. Anthon: State Tax Act (1928) p. 305 ff.
[2] Cf. U f R 1927 A p 478 and H D above p. 677

Copyright © 2021 Karnov Group Denmark A/S                                                                                                  page 1

had last been calculated on the basis of an amount of about DKK 1,400,000, said in a letter of January 15, 1926, to the Directorate of Copenhagen Taxes:

"As per the balance sheet, please note that the decrease in assets of DKK 600,000 is due to the foundation of Ebba and Ernst Rothe's Family Trust, Royal Confirmation of December 18, 1925. - - -"

The profit and loss account included in the tax return for 1927/28 Rothe listed as part of his income in 1926: trust DKK 20,000; Directorate noted in the accounts: "explains by telephone on 3/24/1927 that he receives interest from the family trust founded by him."

In 1931, Winkel Smith, the director of the Savings Bank, resigned from the Board; when Martensen-Larsen, the Supreme Court attorney who, as Rothe's lawyer, had drafted the deed of foundation, had died in 1935, the Supreme Court lawyer's son joined the Board in his place.

Master Builder Rothe died on March 26, 1933; his widow, Mrs. Ebba Rothe, remains in usufruct after him. Prior to his death, in June 1931, the Directorate of Taxation of Copenhagen, in accordance with the Law on Income and Wealth Tax for the State of April 10, 1922, § 34, had begun an investigation of his tax assessments for the year 1926/27 and the following years. It was found that out of the income of the trust, which amounts to about DKK 36,000 annually, DKK 20,000 had been paid to the founders in 1926, DKK 16,400 in 1927 and DKK 13,300 in 1928, and in each of the years 1929–32, to two of their three joint children, in 1926, a total of DKK 14,400; to the three joint children, in 1927, a total of DKK 18,000; and in each of the years 1928–32, a total of DKK 21,600. In a letter dated April 28, 1933, the Directorate requested an opinion from The Tax Department on whether the deceased Master Builder Rothe should be considered to have been liable for wealth tax on the trust capital, in whole or in part. The

**826**

department replied in a letter of July 28, 1934, that according to the information in the case, it must be held that Rothe must be considered liable for wealth tax on the entire capital of the trust in accordance with § 12, 2 of the State Tax Act.

In the present action brought on December 30, 1935, the petitioners, the Tax Department, claim that the deceased Master Builder Rothe was obliged to pay for the tax years 1926/27–1932/33 wealth tax to the state and municipality on the entire trust capital as well as income tax to the State and the Municipality on the above-mentioned income accruing to the three children from the trust. He has also paid DKK 8,028.15 too little for the said tax years. With reference to this, the petitioners have, on behalf of the State Treasury, sought that the respondent, widow Ebba Rothe, pay DKK 167,461.98 with interest thereon of 5% annually from the date of the summons on December 28, 1935, namely the total amount paid in arrears, DKK 83,730.99, doubled in accordance with § 43 of the State Tax Act. The respondent pleaded that they were not liable for the aforesaid DKK 8,028.15. Both parties have therefore filed alternative claims.

In support of their claim, the petitioners state the following: it is clear from the provisions of the deed of foundation that the founders intended that the income from the part of the estate transferred to the Foundation should be used during their lifetime for their own maintenance and that of their children. The contents of the deed of foundation are such that, notwithstanding the rules governing the powers of the Board, there can be no doubt that the founders have been able to dispose of all the interest income in accordance with their stated purpose; In this respect, the provision of § 5, in conjunction with § 10, and of § 8, concerning the composition of the first board, is particularly to be noted, all in connection with the fact that nearly the whole of the annuity income has been paid each year to the Founders and their children. They have not relinquished real control over

the interest income, but on the contrary have retained it, so that the trust foundation has not interfered with their livelihood or with their right to dispose of the income for the benefit of their children. Although it is not disputed that the capital in question is legally separated from the estate of the founders and subject to the ownership of an independent legal person, they must then be deemed liable to pay wealth tax thereon under § 12, Paragraph 2, of the State Tax Act, the purpose of which is precisely to prevent the assets of such family arrangements from being made tax-free. As it seems undoubtedly the case that the founders themselves have been able to determine year by year not only how much of the interest income they themselves would receive but also how much should accrue to their children, and have thus reserved to themselves the actual control over the entire interest income, it is on the entire capital of the trust that they are obliged to pay the wealth tax. They must be regarded as having legally reserved to themselves the whole of the interest income, so that the sums allocated to the children are regarded as gifts from them; it follows from this view that they have also been liable for income tax on the share of the interest income allocated to the children, by virtue of the last paragraph of § 6 of the State Tax Law or its analogy. If the obligation to pay such income tax could not be recognized, but rather

**827**

only the obligation to pay wealth tax on all of the capital of the trust, the shortfall, including the uncontested DKK 8,028.15, will amount to DKK 49,238.81, increased in accordance with § 43 to DKK 98,477.62. In so far as the founders may be regarded as having reserved to themselves the right to the payment of annuities only in so far as the portion of the trust's assets is proportionate to the portion of the annuity income paid to themselves, the sums paid in arrears, including the sums of DKK 8,028.15, will amount to DKK 33,260.93, increased in accordance with § 43 to DKK 66,521.86. In the alternative and in the further alternative, the Treasury therefore orders the respondent to pay the sums of DKK 98,477.62 and DKK 66,521.86 respectively, both with interest as stated.

The respondent submits that the Treasury does not dispute that the assets in question have definitively passed out of the founders' ownership for all purposes other than tax. It is solely the interests of the children which form the basis of the trust, see § 1; § 5 must be seen as one of a series of provisions to that effect, see "our home as a hub for our children." There is no provision in the deed of foundation to ensure the maintenance of the founders' quality of life, except for § 10, which refers to a remote possibility that will probably never arise. All the less can the fact that the deed of foundation grants the board the power to pay the founders a part of the interest income, in conjunction with the fact that the board has made use of this power year after year, be equated with the reservation of a right to annuity payments; the essential thing is lacking, namely the security for the fulfilment of the founders' wishes for payments to them, since it is left to the board to decide whether and then how much is to be paid. The mere possibility that Rothe might have been paid the whole of the interest cannot be equated with a right reserved to him. In the alternative, the respondents contend that, in any event, one could go no further than to consider the Founders as having reserved to themselves the right to annuity payments, in so far as they have actually received the annuity income, i.e., to regard them as liable to wealth tax in respect of the portion of the legacy assets corresponding thereto which varies from year to year, but not as liable for wealth tax in respect of the portion from which the children have received income, nor as liable for income tax in respect of what has been paid to the children, cf. the alternative position of the Tax Department.

The respondent further contests that the conditions under § 43 do not obtain, either with regard to the tax which Rothe must have been obliged to pay on the trust funds, or with regard to the DKK 8,028.15. It cannot be said with any

satisfaction that the estate was found to have paid too little in tax; as stated, the Directorate of Taxes of Copenhagen began its investigation as early as June 1931; In the autumn of that year it received a copy of the statement of claim, and the fact that the case was so long delayed that it was not submitted to the Tax Department until April 29, 1933, about a month after Rothe's death, cannot mean that § 43, which would not have been applicable if the investigation had been completed before the death, should now be applicable. In addition,

**828**

the understatement—apart from the DKK 8,028.15, which is related to the fact that Rothe had overlooked some increases in the value of his property—was not due to an incorrect tax return; as stated above, in the tax return for 1926 he stated that 600,000 crowns of his assets had been transferred to the Trust, and in the tax returns for 1927 and later years he stated the amounts he had received from the Trust.

In this respect, the petitioners submit that the facts justifying the obligation to pay arrears were not brought to light until the investigation completed after Rothe's death and that the Tax Department, the State authority to which competence for the distribution of taxes belongs, thus became aware of them only after his death. § 43 then provides a basis for the claim for payment of double the amount of the underpayment; according to the content of the provision, it is irrelevant, in contradistinction to what applies to Section 41, what the subjective position of Rothe may be with regard to the accuracy of the tax return.

Finally, the respondent claims that, pursuant to Act No. 274 of December 22, 1908, the claims of the Tax Department must be considered time-barred in respect of the taxes for the tax years 1926/27–1929/30 and the tax for the 1st half of the fiscal year 1930/31. There is agreement that, in so far as the principal, alternative or further alternative claim of the Treasury may otherwise be complied with, the claims should in that event be reduced to DKK 38,925.91, DKK 23,191.15 and DKK 13,655.80 respectively, or increased in accordance with § 43 to double the amount. In support of its objection to the limitation period, the respondent submits that the Directorate had already been provided with such information by Rothe's letter of January 15, 1926, the tax return for 1927/28 and the telephone communication of March 24, 1927, connected thereto, that the tax authorities could not then have been in such ignorance of their—possible—claim. Subsequently, the Directorate has not received any information which could lead to a different view than that which could have been formed at that time; the copy of the deed of foundation submitted in the autumn of 1931 (which, moreover, could have been required to be submitted as early as 1927) did not prove to contain any such reservation of annuity right as one would have expected after what emerged in 1927. In this respect, the petitioners emphasize that the file and the related information were not available to the Directorate until the autumn of 1931, and that it was not until April 1933 that the tax department, the proper authority, was and could be aware that a subsequent claim could be made; the fact that these dates might have moved forward if the Directorate had acted differently from what it has done is of no consequence.

In establishing the trust, with particular reference to the provisions of § 8 concerning the composition of the Board, etc., the Founders must be presumed to have reckoned, and to have been able to reckon, that the Master Builder Rothe, and possibly later his widow, would have a decisive influence as members of the Board, whether and if so how much of the interest income should be allocated to them in accordance with § 5, Paragraph 1, as consideration for them as founders of the trust would deter the other members of the Board, or at least one of them, from going against their estimate of what

**829**

was to be considered "reasonable" in pursuance of the object set forth in § 5, Paragraph 1. It is not disputed by the respondents that the wishes of Master Builder Rothe in this regard were in fact also determinative. The petitioners must therefore be granted that, in so far as the sums paid to him pursuant to § 5, Paragraph 1, are concerned, Rothe must be regarded for tax purposes as having reserved to himself the right to receive the interest income in question, so that, pursuant to § 12, Paragraph 2, Item 3, of the State Tax Act, he was liable to wealth tax on the parts of the capital of the trust corresponding to the sums paid.

With regard to the sums allocated to the children of the founders in accordance with § 6 of the foundation deed, it must be borne in mind that the main purpose of the foundation deed is to support the joint legitimate descendants of the founders, cf. §§ 1 and 6, and that it has thus been by virtue of an immediate foundation deed-based right that their three children have received income from the Trust. It must now be assumed that Master Builder Rothe had in any case a far-reaching influence on how much the three children were to receive in total, if only because this depended substantially on how much he himself was to receive, cf. the above, and probably also on how much was to be allocated to each of them. But there is no justification on this basis for regarding him as having reserved to himself the right to the whole of the income of the trust, and bestowed on the children a portion of it. Against such a view is the fact that, on all the evidence, it must be assumed that the founders intended that the object for which the trust was founded, namely, the support of the descendants, should be pursued during their own lifetime. Although there has been a possibility that the children could have been at least approximately completely excluded from the annuity, as long as § 5, Paragraph 1, could be applied, it does not seem to be doubtable, after the payments made, that the founders intended from the beginning that the children should receive income from the trust already during their lifetime, in accordance with § 6, Paragraph 1, at the end, indeed "quite a large one." Even if it could be said that the three children have in fact received the amounts in question by virtue of Rothe's decisions taken year by year, these have nevertheless been taken in order to carry out the purposes of the trust as laid down by both Founders when it was created, and it therefore seems more obvious to define Rothe as a person who has so far waived the right to annuity payments than as a person who has reserved such a right. As regards the part of the capital of the trust corresponding to the sums paid to the children, Rothe has not been liable to wealth tax; consequently, there is no question of considering him to have been liable to income tax on the sums in question.

The amount which Rothe has underpaid in taxes for the years 1926/27–1932/33 is therefore 33,260.93. As to the question of whether double the amount would have to be paid in arrears under § 43, it is noted that the conditions for the application of the said provision are not found to be fulfilled in the present case, where the tax authorities must be presumed to have been in possession of information before

**830**

Rothe's death showing that he had underpaid tax, and where it must be assumed that he had not thereby incurred liability under § 41, or where, in any event, particularly as regards the DKK 8,028.15, there is not sufficient evidence to assume the contrary.

Finally, as regards the respondent's objection to the limitation period, it cannot be upheld, since the tax authorities only came to the conclusion that Rothe had paid too little tax during the investigation begun in 1931, i.e., later than five years before the case was brought, without it being taken into

consideration whether the authorities could possibly have begun the investigation that much earlier and moved it forward that much more rapidly as to have realized it before December 30, 1930. In the light of the foregoing, the Respondents should be ordered to pay to the petitioners the sum of DKK 33,260.93, together with interest thereon, as awarded.

With regard to the costs of the case, the following will apply. - - -

**U.1936.823/2Ø**

*A stiftede familielegat og oppebar selv en del af renterne. Af denne del var han formueskattepligtig.*

*Skatter 21.2 - Pengevæsen m.v. 58.3.*

- Skatter II - Legater. I 1925 stiftede A et, med kgl Konfirmation forsynet, Familielegat, stort 600000 Kr, hvis Bestyrelse bestod af tre Medlemmer, med A som Formand, og hvis Hovedformaal var at støtte A's Descendenter, dog at han ogsaa selv kunde faa Del i Renteindtægten. Fra 1926 og indtil A's Død i 1933 oppebar A ialt ca 100000 Kr af Legatet, medens der tillagdes hans Børn ialt ca 140 000 Kr. A ansaas ifølge Statsskattelov Nr 149 af 10 April 1922 § 12 Nr 2, 3 Pkt formueskattepligtig for Skatteaarene 19 26/27-19 32/33 af de Dele af Legatkapitalen, der svarer til de ham selv - derimod ikke Børnene - udbetalte Beløb.[1] Da Skattemyndighederne før A's Død havde besiddet Oplysninger, hvoraf det fremgik, at han havde betalt for lidt i Skat, fandt Lovens § 43 om Efterbetaling med Skattens dobbelte Beløb ikke Anvendelse. Forældelse I - Ingen Del af Skattekravet ansaas forældet i Hh t Lov Nr 274 af 22 Dec 1908, da Skattemyndighederne først senere end 5 Aar før Sagens Anlæg kom paa det rene med, at A havde betalt for lidt i Skat.[2]

**Ø. L. D. 15. Maj 1936 i sag V 432/1935**

*Skattedepartementet (Kammeradvokaten)*
mod
*Enkefru Ebba Rothe (Højesteretssagf David).*

## Østre Landsret

Den 18 December 1925 blev der meddelt kgl Konfirmation paa en af Bygmester Ernst Rothe og Hustru Ebba Rothe den 21 November s A oprettet Fundats for »Bygmester Ernst Rothe og Hustru Ebba Rothes Familielegat«. Ifølge Fundatsens § 1 er dette stiftet til Fordel for Opretternes fælles ægte Efterkommere; efter § 2 bestaar dets Grundfond af 6 pCt Panteobligationer i forskellige - Bygmester Rothe da tilhørende - faste Ejendomme af samlet Paalydende 600000 Kr.

§ 5 er saalydende:

»Saalænge jeg Ernst Rothe lever, og hvis jeg Ebba Rothe overlever

**824**

min Mand, da saalænge jeg lever, vil Bestyrelsen kunne tildele os saa meget af Renteindtægten, som skønnes rimeligt, for at vi kan holde vort Hjem som Midtpunkt for vore Børn og senere hen for dem og vore eventuelle Børnebørn.

Vi vil iøvrigt finde det naturligt, om Bestyrelsen efter vor Død, saalænge der lever Børn og Børnebørn efter os, lader disse erholde en efter vore tre Børns Linier ligelig fordelt Anpart af Renterne.

Foranstaaende Bestemmelser er kun Udtryk for vore Ønsker, men lægger ikke noget Baand paa Bestyrelsens Beslutninger.«

I § 6 hedder det:

»Legatets Hovedformaal er som angivet at støtte vore ægtefødte eller ved Ægteskab legitimerede Descendenter, saaledes at Legatbestyrelsen bestemmer, saavel hvilke af vore Efterkommere der skal have Del i Indtægten, som hvor meget der skal tilfalde hver enkelt. Ved Afgørelsen heraf skal Legatets Bestyrelse gaa ud fra, at Legatets Formaal i første Linie skal være det at virke til Udvikling af Slægtsmedlemmernes Evner til samfundsnyttig Virksomhed og til Slægtens Fornyelse. I saa Henseende kan først og fremmest nævnes Hjælp til Ungdommens Opdragelse, Studier og Rejser samt Hjælp til Udstyr og til at paabegynde selvstændig Virksomhed eller erhverve eget Hus. Legatbestyrelsen bør søge at virke med ret store Legatportioner, hvor dette skønnes forsvarligt, fremfor at udstykke Indtægterne i mange smaa Portioner.

Dernæst skal Legatets Indtægter anvendes til at hjælpe dem af vore ægtefødte eller ved Ægteskab legitimerede Descendenter, der maatte være kommen i økonomisk Trang, eller hvis Livsvilkaar der overhovedet kan være Grund til at forbedre. Da vi ønsker, at det af os efterladte Legat fremfor alt skal virke som en Opmuntring til Ansporing for den kommende Slægt og ikke som en Sikkerhedsforanstaltning eller Sovepude for Slægtens Medlemmer, stiller vi dog det her angivne Formaal i anden Række. - - -

Ingen af vore Efterkommere kan ved Domstolene rejse noget retligt Krav paa Hjælp fra Legatet idet det ganske er overladt til Bestyrelsens Skøn, hvem der kan komme i Betragtning ved Uddeling af Legatet, og for hvilken Tid Understøttelsen ydes.«

I § 7:

»Hvis i noget Aar Legatets Indtægter skulde vise sig at være større end nødvendigt til at imødekomme de efter Bestyrelsens Skøn rimelige Krav om Understøttelse til vore Efterkommere af Legatet, kan Bestyrelsen dels overføre Beløbet til næste Aar, dels henlægge et passende Beløb til et Reservefond. - - -

Legatbestyrelsen skal dog ogsaa ved enstemmig Beslutning være berettiget til at anvende det overskydende til almindelig velgørende Formaal. - - -«

I § 8:

»Bestyrelsen bestaar af tre Personer, hvoraf en fungerer som Formand og en som Forretningsfører. Formanden vælges af Bestyrelsen selv. - - - Som første Bestyrelse fungerer medunderskrevne Ernst Rothe som Formand og Højesteretssagfører Martensen-Larsen som

**825**

Forretningsfører samt som tredje Medlem Direktør i Sparekassen for København og Omegn Winkel Smith.

Som Suppleant for mig Ernst Rothe indsættes medunderskrevne Fru Ebba Rothe, der ogsaa vil fungere som Legatets Formand. Hvert Medlem udnævner fremtidigt sin Suppleant, der dog skal godkendes af de to andre Bestyrelsesmedlemmer, og som dels fungerer i hans Forfald, dels indtræder i hans Sted i Bestyrelsen efter Forgængerens Død eller Fratræden. - - - Alle Sager afgøres af Bestyrelsen ved simpel Stemmeflerhed, saaledes at Formandens Stemme gør Udslaget i Tilfælde af Stemmelighed. - - -«

I § 10:

»Skulde den legatberettigede Slægt uddø, vil Bestyrelsen have at udarbejde en ny Fundats for Legatet, hvor de foran under § 7, 2 Stk angivne Formaal vil være at optage som Legatets fremtidige Hovedformaal. - - - Skulde den legatberettigede Slægt uddø, medens Stifterne eller en af dem er i Live, vil der i Fundatsen være at indføre Regler, der giver Bestyrelsen Bemyndigelse til af Renteindtægten at udbetale, hvad der efter Bestyrelsens Skøn maatte findes rimeligt, til Stifterne eller den efterlevende for at opretholde deres tilvante Levefod. - - -«

Ved Indsendelse af Selvangivelse til Skatteansættelse for Skatteaaret 1926/27 udtalte Bygmester Rothe, hvis Formueskat

---

[1] Jfr Anthon: Statsskatteloven (1928) p 305 ff.
[2] Jfr U f R 1927 A p 478 samt H D ovenfor p 677.

senest var blevet beregnet af et Beløb af ca 1 400 000 Kr, i Skrivelse af 15 Januar 1926 til Direktoratet for Københavns Skattevæsen:

»Ifølge Status bedes bemærket, at Formuenedgangen 600000 Kr skyldes Stiftelse af Ebba og Ernst Rothes Familielegat, kgl Konfirmation af 18 December 1925. - - -«

I et Selvangivelsen for 1927/28 vedlagt Driftsregnskab opførte Rothe som Del af sin Indtægt i 1926: Legat 20000 Kr; paa Regnskabet blev der af Direktoratet noteret: »forklarer tlf 24/3 27, at han oppebærer Renter af det af ham stiftede Familielegat«.

I 1931 udtraadte Sparekassedirektør Winkel Smith af Bestyrelsen; da Højesteretssagfører Martensen-Larsen, der som Rothes Sagfører havde konciperet Fundatsen, var afgaaet ved Døden i 1935, indtraadte Højesteretssagførerens Søn i Bestyrelsen i hans Sted.

Bygmester Rothe afgik ved Døden den 26 Marts 1933; hans Enke, Fru Ebba Rothe, hensidder i uskiftet Bo efter ham. Forinden hans Død, i Juni 1931, havde Direktoratet for Københavns Skattevæsen i Medfør af Lov om Indkomst- og Formueskat til Staten af 10 April 1922 § 34 paabegyndt en Undersøgelse af hans Skatteansættelser for Aaret 1926/27 og følgende Aar. Det oplystes derved, at der af Legatets Indtægter, der andrager ca 36000 Kr aarligt, var udbetalt til Stifterne i 1926 20000 Kr, i 1927 16400 Kr. i 1928 13300 Kr og i hvert af Aarene 1929-32 12800 Kr, endvidere til to af deres tre Fællesbørn i 1926 ialt 14400 Kr, til de tre Fællesbørn i 1927 ialt 18000 Kr og i hvert af Aarene 1928-32 ialt 21600 Kr. I Skrivelse af 28 April 1933 udbad Direktoratet sig en Udtalelse fra Skattedepartementet om, hvorvidt afdøde Bygmester Rothe maatte anses for at have været formueskattepligtig af Legatkapitalen, helt eller delvis. Departementet svarede i

**826**

Skrivelse af 28 Juli 1934, at det efter det i sagen oplyste maatte holde for, at Rothe i Medfør af Statsskatteloven § 12, 2 maa anses formueskattepligtig af hele Legatkapitalen.

Under nærværende den 30 December 1935 anlagte Sag har Sagsøgerne, Skattedepartementet, anført, at afdøde Bygmester Rothe har været pligtig for Skatteaarene 1926/27-1932/33 at betale Formueskat til Stat og Kommune af hele Legatkapitalen samt Indkomstskat til Stat og Kommune ogsaa af de ovennævnte, de tre Børn fra Legatet tilflydte Indtægter, hvorhos han for de nævnte Skatteaar iøvrigt har betalt 8028 Kr 15 Øre for lidt Under Henvisning hertil har Sagsøgerne paa Statskassens Vegne paastaaet Sagsøgte, Enkefru Ebba Rothe, dømt til Betaling af 167461 Kr 98 Øre med Renter deraf 5 pCt aarlig fra Stævningens Dato den 28 December 1935, nemlig det ialt for lidt erlagte, 83730 Kr 99 Øre, i Henhold til Statsskattelovens § 43 forhøjet til det dobbelte. Sagsøgte har paastaaet sig frifundet mod Betaling af de fornævnte 8028 Kr 15 Øre. Begge Parter har derhos nedlagt subsidiære Paastande.

Til Begrundelse af deres Paastand har Sagsøgerne anført følgende: Af Fundatsens Bestemmelser fremgaar det klart, at det har været Stifternes Formaal, at Indtægterne af den til Legatet overførte Del af Formuen i deres Levetid skulde benyttes til deres eget og deres Børns Underhold. Fundatsens Indhold er et saadant, at der, uanset Reglerne om Bestyrelsens Beføjelse, ingen Tvivl kan være om, at Stifterne har været i Stand til at raade over hele Renteindtægten overensstemmende med deres nævnte Formaal; i saa Henseende paapeges særlig Bestemmelsen i § 5, sammenholdt med § 10, samt i § 8 om den første Bestyrelses Sammensætning, alt set i Forbindelse med den Kendsgerning, at saa godt som hele Renteindtægten hvert Aar er blevet udbetalt til Stifterne og deres Børn. De har ikke givet den virkelige Raadighed over Renteindtægten fra sig, men tværtimod bevaret den, saaledes at Legatstiftelsen ikke har medført noget Indgreb i deres Levefod eller i deres Adgang til at disponere over Indtægten til Fordel for deres Børn. Om end det ikke bestrides,

at den paagældende Kapital retligt er udskilt fra Stifternes Bo og undergivet en selvstændig, juridisk Persons Ejendomsret, maa de herefter anses pligtige at svare Formueskat deraf i Medfør af Statsskattelovens § 12, 2, hvis Formaal netop er at hindre, at Formuer ved deslige Familiearrangementer gøres skattefri. Da det synes utvivlsomt, at Stifterne selv Aar for Aar har kunnet bestemme, ikke blot hvor stor en Del af Renteindtægterne de selv vilde oppebære, men ogsaa hvor stor en Del der skulde tilfalde deres Børn, og de saaledes har forbeholdt sig den faktiske Raadighed over hele Renteindtægten, er det af hele Legatkapitalen, det paahviler dem at svare Formueskat. De maa anses stillet, som om de retligt havde forbeholdt sig hele Renteindtægten, saaledes at de Børnene tildelte Beløb anses som Gaver fra dem; af dette Synspunkt følger, at de i Medfør af Statsskattelovens § 6, sidste Stk eller dens Analogi tillige har været indkomstskattepligtig af de Børnene tillagte Andele af Renteindtægten. Saafremt Pligt til at svare saadan Indkomstskat ikke maatte kunne anerkendes, men kun Pligt til at betale Formueskat af hele

**827**

Legatkapitalen, vil det for lidt erlagte, heri indbefattet de uomtvistede 8028 Kr 15 Øre, andrage 49238 Kr 81 Øre, forhøjet i Henhold til § 43 98477 Kr 62 Øre. Saafremt Stifterne kun, forsaavidt angaar saa stor en Del af Legatformuen, som forholdsmæssigt svarer til den til dem selv udbetalte Del af Renteindtægten, maatte kunne anses stillet som havende forbeholdt sig Rentenydelsesret, vil det for lidt erlagte, heri indbefattet de 8028 Kr 15 Øre, andrage 33260 Kr 93 Øre, forhøjet efter § 43 66521 Kr 86 Øre. Skattedepartementets subsidiære og mere subsidiære Paastand bliver herefter, at Sagsøgte dømmes til Betaling af 98 477 Kr 62 Øre, henholdsvis 66521 Kr 86 Øre, begge Beløb med Renter som anført.

Sagsøgte har gjort følgende gældende: Skattedepartementet bestrider ikke, at den omhandlede Formue i alle andre Henseender end skattemæssigt er endeligt udgaaet af Stifternes Eje. Det er alene Hensynet til Børnenes Tarv, der ligger til Grund for Legatet, jfr herved § 1; § 5 maa ses som et Led i Rækken af de dertil sigtende Bestemmelser, jfr »vort Hjem som Midtpunkt for vore Børn«. Nogen Bestemmelse tjenende til at sikre Opretholdelse af Stifternes Levefod findes ikke i Fundatsen, bortset fra § 10 der omhandler en fjerntliggende, sikkert aldrig indtrædende Mulighed. Saa meget mindre kan den Omstændighed, at Fundatsen hjemler Bestyrelsen Beføjelse til at udbetale Stifterne en Del af Renteindtægten, i Forbindelse med den Omstændighed, at Bestyrelsen Aar efter Aar har gjort Brug af denne Beføjelse, sidestilles med Forbehold af en Rentenydelsesret; det afgørende mangler, nemlig Sikkerheden for Opfyldelsen af Stifternes Ønsker om Udbetalinger til dem, idet det er henlagt til Bestyrelsen at afgøre, om og da hvor meget der skal udbetales. Den blotte Mulighed for, at Rothe kunde have faaet hele Renteindtægten udbetalt, kan ingenlunde sidestilles med en ham forbeholdt Ret dertil. Subsidiært har Sagsøgte hævdet, at man i hvert Fald ikke kunde gaa længere end til at anse Stifterne stillet, som om. de havde forbeholdt sig Rentenydelsesret, forsaavidt som de faktisk har oppebaaret Renteindtægten, altsaa anse dem for formueskattepligtige forsaavidt angaar den dertil svarende Aar for Aar skiftende Del af Legatformuen, men ikke for formueskattepligtige af den Del, hvoraf Børnene har nydt Indtægter, og heller ikke for indkomstskattepligtige med Hensyn til det til Børnene udbetalte, jfr Skattedepartementets mere subsidiære Paastand.

Sagsøgte har videre bestridt, at Betingelserne for Forhøjelse efter § 43 foreligger, hverken med Hensyn til den Skat, det maatte have paahvilet Rothe at betale af Legatmidlerne, eller med Hensyn til de 8028 Kr 15 Øre. Det kan ikke med nogen Føje siges, at der først

ved Behandlingen af Dødsboet befandtes at være betalt for lidt i Skat; som anført paabegyndte Direktoratet for Københavns Skattevæsen sin Undersøgelse allerede i Juni 1931; i Efteraaret s A modtog det en Genpart af Fundatsen, og den Omstændighed, at Behandlingen af Sagen trak ud saa længe, at den først den 29 April 1933, ca en Maaned efter Rothes Død, blev forelagt for Skattedepartementet, kan ikke føre til, at § 43, som ikke vilde have været anvendelig, hvis Undersøgelsen var blevet tilendebragt før Dødsfaldet, nu skulde være anvendelig. Dertil kommer,

**828**

at de for lave Ansættelser - bortset fra de 8028 Kr 15 Øre, med Hensyn til hvilke Forholdet er det, at Rothe havde overset nogle Forhøjelser af ham tilhørende Ejendommes Vurderingssummer, ikke skyldtes urigtig Selvangivelse; som foran anført oplyste han ved Selvangivelsen i 1926, at 600000 Kr af hans Formue var overgaaet til Legatet, og i Selvangivelserne i 1927 og senere Aar oplyste han, hvilke Beløb han havde oppebaaret fra Legatet.

Her overfor har Sagsøgerne anført, at de Forhold, hvorved Efterbetalingspligten begrundes, først blev oplyst ved den efter Rothes Død afsluttede Undersøgelse, og at Skattedepartementet, den Statsmyndighed, hvem Kompetencen med Hensyn til Skattefordelingen tilkommer, saaledes først efter Dødsfaldet blev bekendt dermed. § 43 afgiver derefter Hjemmel for Kravet om Efterbetaling af det for lidt erlagte med det dobbelte; efter Bestemmelsens Indhold er det, modsat hvad der gælder § 41, uden Betydning, hvorledes det maatte forholde sig med Rothes subjektive Forhold med Hensyn til Selvangivelsens Urigtighed.

Endelig har Sagsøgte hævdet, at i Medfør af Lov Nr 274 af 22 December 1908 maa Skattedepartementets Krav anses forældet, forsaavidt angaar Skatterne for Skatteaarene 1926/27-1929/30 samt Skatten for 1ste Halvaar af Skatteaaret 1930/31. Der er Enighed om, at Kravene, saafremt Skattedepartementets principale, subsidiære eller mere subsidiære Paastand iøvrigt maatte kunne tages til Følge, i saa Fald reduceres til henholdsvis 38925 Kr 91 Øre, 23191 Kr 15 Øre og 13655 Kr 80 Øre eller, forhøjede efter § 43. til de dobbelte Beløb. Til Støtte for Forældelsesindsigelsen har Sagsøgte anført, at Direktoratet allerede ved Rothes Skrivelse af 15 Januar 1926, Selvangivelsen for 1927/28 og den dertil føjede telefoniske Meddelelse af 24 Marts 1927 fik saadanne Oplysninger, at Skattemyndighederne derefter ikke har kunnet være i utilregnelig Uvidenhed om deres - mulige - Krav. Senere har Direktoratet ikke modtaget nogen Oplysning, som kunde føre til en anden Opfattelse end den, man allerede da kunde have dannet sig; den i Efteraaret 1931 indsendte Genpart af Fundatsen - hvilken man iøvrigt kunde have forlangt indsendt allerede i 1927 - viste sig end ikke at indeholde noget saadant Forbehold af Rentenydelsesret, som man efter det i 1927 fremkomne kunde have ventet. Her overfor lægger Sagsøgerne Vægt paa, at først i Efteraaret 1931 har Fundatsen med dertil knyttede Oplysninger foreligget for Direktoratet, og paa, at endog først i April 1933 har rette vedkommende, Skattedepartementet, været og kunnet være paa det rene med, at et Efterkrav kunde gøres gældende; at disse Tidspunkter muligvis kunde være indtraadte tidligere, hvis Direktoratet havde handlet anderledes end det har gjort, bliver uden Betydning.

Ved Fundatsens Oprettelse, herved i Særdeleshed henset til Bestemmelserne i § 8 om Bestyrelsens Sammensætning m v, maa Stifterne antages at have regnet og med Føje at have kunnet regne med, at de Bygmester Rothe og eventuelt senere hans Enke - som Medlemmer af Bestyrelsen vilde faa afgørende Indflydelse paa, om og da hvor stor en Del af Renteindtægten der i Henhold til § 5, 1 Stk skulde tildeles dem, idet Hensynet til dem som Legatets Stiftere vilde afholde Bestyrelsens andre Medlemmer, eller i hvert Fald et af dem, fra at gaa

**829**

imod deres Skøn over, hvad der var at anse for »rimeligt« til Opnaaelse af det i § 5, 1 Stk angivne Formaal. Det er da heller ikke af Sagsøgte bestridt, at Bygmester Rothes Ønsker i saa Henseende faktisk ogsaa har været afgørende. Herefter maa der gives Sagsøgerne Medhold i, at Rothe, forsaavidt angaar de til ham i Henhold til § 5, 1 Stk udbetalte Beløb, skatteretligt maa anses stillet, som om han havde forbeholdt sig Ret til at oppebære de paagældende Renteindtægter, saaledes at han ifølge Statsskattelovens § 12, 2, 3 Pkt har været formueskattepligtig af de til de udbetalte Beløb svarende Dele at Legatkapitalen.

Hvad dernæst angaar de Beløb, der i Henhold til Fundatsens § 6 er tildelt Stifternes Børn, maa der henses til, at Legatets Hovedformaal er at støtte Stifternes fælles ægte Efterkommere, jfr §§ 1 og 6, og at det saaledes har været i Kraft af en umiddelbar fundatsmæssig Adkomst, at deres tre Børn har oppebaaret Indtægter fra Legatet. Det maa nu vel antages, at Bygmester Rothe har haft i hvert Fald en vidtrækkende Indflydelse paa, hvor meget der skulde tilfalde de tre Børn ialt, allerede fordi dette væsenligt afhang af, hvor meget der skulde tilfalde ham selv, jfr herved det foran anførte, og sikkert ogsaa paa, hvor meget der skulde tildeles hvert især af dem. Men der findes ikke Føje til af denne Grund at anse ham stillet som den, der har forbeholdt sig Retten til Legatets samlede Renteindtægter og skænket Børnene en Del af disse. Imod en saadan Opfattelse taler, at det efter alt foreliggende maa antages at have været Stifternes Mening, at det Formaal, for hvilket Legatet var stiftet, nemlig at støtte Descendenterne, skulde forfølges allerede i deres egen Levetid; om end der har været Mulighed for, at Børnene har kunnet i hvert Fald tilnærmelsesvis helt fortrænges fra Rentenydelse, saalænge § 5, 1 Stk kunde anvendes, synes det efter de skete Udbetalinger ikke at kunne betvivles, at Stifterne fra første Færd har tilsigtet, at Børnene allerede i deres Levetid skulde oppebære Indtægter fra Legatet, overensstemmende med § 6, 1 Stk i Slutningen endog »ret store«. Selv om det maatte kunne siges, at de tre Børn faktisk har faaet de paagældende Beløb i Kraft af Rothes Aar for Aar trufne Beslutninger, er disse dog truffet til Gennemførelse af Legatets, af begge Stifterne ved dets Oprettelse fastsatte Formaal, og det synes herefter mere nærliggende at sidestille Rothe med den, der for saa vidt har fraskrevet sig Rentenydelsesret, end med den, der har forbeholdt sig saadan. Forsaavidt angaar den Del af Legatkapitalen, der svarer til de til Børnene udredede Beløb, har Rothe herefter ikke været formueskattepligtig; allerede som Følge heraf bliver der ikke Spørgsmaal om at anse ham for at have været indkomstskattepligtig af de paagældende Beløb.

Det Beløb, Rothe har betalt for lidt i Skat for Aarene 1926/27-1932/33, bliver herefter 33260 Kr 93 Øre. Med Hensyn til Spørgsmaalet, om Beløbet i Henhold til § 43 vil være at efterbetale med det dobbelte, bemærkes, at Betingelserne for Anvendelsen af den nævnte Bestemmelse ikke findes at være opfyldt i det foreliggende Tilfælde, hvor Skattemyndighederne maa antages før Rothes Død at have været i Besiddelse af Oplysninger, hvoraf det fremgik, at han havde betalt

**830**

for lidt i Skat, og hvor det maa antages, at han ikke derved havde paadraget sig Ansvar efter § 41. eller hvor der i hvert Fald, navnlig forsaavidt angaar de 8028 Kr 15 Øre, ikke er oplyst tilstrækkelige Holdepunkter for at antage det modsatte.

Hvad endelig Sagsøgtes Forældelsesindsigelse angaar, vil den ikke kunne tages til Følge, idet Skattemyndighederne først ved den i 1931, altsaa senere end 5 Aar før Sagens Anlæg, indledede Undersøgelse er kommet paa det rene med, at der af Rothe var betalt for lidt i Skat, uden at det herved kan komme i Betragtning,

om Myndighederne mulig kunde have paabegyndt Undersøgelsen saa meget tidligere og fremmet den saa meget hurtigere, at de før den 30 December 1930 kunde være kommet paa det rene dermed.

Efter det anførte vil Sagsøgte være at dømme til at betale til Sagsøgerne 33 260 Kr 93 Øre med Renter deraf som paastaaet.

Med Hensyn til Sagens Omkostninger vil der være at forholde som nedenfor anført. - - -

Copyright © 2021 Karnov Group Denmark A/S                      side 4