# Exhibit 49

**CERTIFIED TRANSLATION**

VL1988.B 2530-1986
TfS 1988, 641

**Judgment by the Danish Western High Court of 14 October 1988, case no B 2530-1986**
*Tax claim - Limitation of actions - Suspension - Treasury notes*

♦ In a case about purchase of treasury notes financed by taking out a loan with a firm of stockbrokers the Danish Western High Court upheld the tax authorities' decision according to which the deadline for limitation in respect of the tax claim had been suspended. In the taxpayer's tax return for 1978 the taxpayer had incorrectly written that the taxpayer was the owner of the treasury notes as the firm of stockbrokers was entitled to conduct forward transactions. The taxpayer had also written that the treasury notes had been pledged to the firm of stockbrokers, that they were in a separate box and that their presence was checked by a state-authorised public accountant. This information was incorrect. The High Court found in these circumstances that the tax authorities could not be blamed for not having conducted any further examinations at that point in time. The tax authorities could therefore not be blamed for their ignorance of their claim which is why the period of limitation under the Act of 1908 had been suspended. The case has been appealed to the Danish Supreme Court. HR1989 336-1988.

**The Danish Western High Court**
In a case brought by a taxpayer against the Danish Ministry of Taxation the Danish Western High Court upheld, by a judgment of 14 October 1988, the decision by the tax authorities according to which the deadline for limitation in respect of the tax claim had been suspended in a case about purchase of treasury notes financed by taking out a loan with a firm of stockbrokers.

The High Court found that it was a term in the agreement of 18 October 1978 between the plaintiff and the firm of stockbrokers in question that the firm of stockbrokers was to be entitled to conduct forward transactions with the treasury notes that the plaintiff bought. It had to be taken into account that the treasury notes were actually part of such transactions and the plaintiff's statement in the taxpayer's tax return for 1978 that the taxpayer was the owner of the treasury notes was therefore objectively incorrect.

During the meetings with the tax authorities in the municipality in question in November 1979, shortly after the appearance of the circular of 29 October 1979 by the State Inland Revenue Department (*Statsskattedirektoratet*) about the tax treatment of the loan commitments, the plaintiff stated that the treasury notes had been pledged to a firm of stockbrokers where they were in a separate box and that their presence was checked by a state-authorised public accountant. This information was also objectively incorrect but if it had been correct, the commitment could not have been set aside by the tax authorities. There was nothing in the plaintiff's information or in the examinations conducted at that point in time by the tax authorities of corresponding commitments that could cause any doubt about the correctness of the information.

At any rate, the High Court found in these circumstances that the tax authorities could not be blamed for not having conducted any further examinations at that point in time of the plaintiff's commitment with the firm of stockbrokers. The High Court consequently found that the tax authorities could not be blamed for their ignorance of their claims, which is why the period of limitation under the Act of 1908 had been suspended, see section 3 of the Act. According to the information received about the scope, nature and process of the examination that the State Inland Revenue Department started at the beginning of 1980 into the loan commitments of a number of firms of stockbrokers, it was found that the tax authorities could not be blamed that they only started examining the accounts of the firm of stockbrokers at the beginning of 1983 and that because of the bankruptcy trustee's refusal to hand over the accounts they only got access to them on 22 November 1984. It was therefore found that the period of limitation could only be calculated from such date. As the tax claim had thus not become barred by limitation the High Court upheld the denial of liability of the Danish Ministry of Taxation.

The plaintiff was ordered to pay legal costs of DKK 12,000.

VL1988.B 2530-1986
TfS 1988, 641

**Vestre Landsrets dom af 14. oktober 1988, j.nr. B 2530-1986**
*Skattekrav - Forældelse - Suspension - Statsgældsbeviser*

- ♦ I en sag om køb af statsgældsbeviser finansieret ved optagelse af lån i et vekselérfirma stadfæstede Vestre Landsret skattemyndighedernes afgørelse, hvorefter fristen for forældelse af skattekravet var afbrudt. I sin selvangivelse for 1978 havde skatteyderen urigtigt anført, at kan var ejer af statsgældsbeviserne, idet vekselérfirmaet var berettiget til at foretage terminshandler. Endvidere havde skatteyderen oplyst, at statsgældsbeviserne var håndpantsat til vekselérfirmaet, at de lå i en separat boks og at deres tilstedeværelse blev kontrolleret af en statsautoriseret revisor. Disse oplysninger var urigtige. Under disse omstændigheder fandt landsretten, at skattemyndighederne ikke kunne bebrejdes, at de på daværende tidspunkt ikke foretog yderligere undersøgelser. Skattemyndighedernes uvidenhed om deres krav kunne derfor ikke tilregnes dem, hvorfor forældelsesfristen efter 1908-loven havde været suspenderet. Sagen er anket til Højesteret. HR1989 336-1988.

## Vestre Landsret

I en sag anlagt af en skatteyder mod Skatteministeriet har Vestre Landsret ved dom afsagt den 14. oktober 1988 stadfæstet de skattelignende myndigheders afgørelse, hvorefter fristen for forældelse af skattekrav var afbrudt i en sag om køb af statsgældsbeviser finansieret ved optagelse af lån i et vekselérfirma.

Landsretten udtalte, at det var et vilkår i aftalen af 18. oktober 1978 mellem sagsøgeren og det pågældende vekselérfirma, at vekselérfirmaet skulle være berettiget til at foretage terminshandler med de statsgældsbeviser, sagsøgeren købte. Det måtte lægges til grund, at statsgældsbeviserne faktisk indgik i sådanne handler, og det var derfor objektivt urigtigt, når sagsøgeren i sin selvangivelse for 1978 angav, at han var ejer af statsgældsbeviserne.

Under møderne med skattevæsenet i vedkommende kommune i november 1979 - kort efter fremkomsten af Statsskattedirektoratets cirkulære af 29. oktober 1979 om den skattemæssige behandling af lånearrangementerne - oplyste sagsøgeren, at statsgældsbeviserne var håndpantsat til vekselérfirmaet, hvor de lå i en separat boks, og at deres tilstedeværelse blev kontrolleret af en statsautoriseret revisor. Disse oplysninger var også objektivt urigtige, men havde de været rigtige, ville de have betydet, at arrangementet ikke havde kunnet tilsidesættes af skattemyndighederne. Der var ikke i sagsøgerens oplysninger eller i de undersøgelser, skattemyndighederne på dette tidspunkt havde foretaget af tilsvarende arrangementer, noget, der kunne give anledning til tvivl om oplysningernes rigtighed.

I hvert fald under disse omstændigheder fandt landsretten, at skattemyndighederne ikke kunne bebrejdes, at de på da værende tidspunkt ikke foretog yderligere undersøgelser af sagsøgerens engagement med vekselererfirmaet. Landsretten fandt derfor, at skattemyndighedernes uvidenhed om deres krav ikke kunne tilregnes dem, hvorfor forældelsesfristen efter 1908- loven havde været suspenderet, jfr. lovens § 3. Efter det oplyste om omfanget, karakteren og forløbet af den undersøgelse, Statsskattedirektoratet iværksatte i begyndelsen af 1980 af en række vekselérfirmaers lånearrangementer, fandtes det ikke at kunne lægges skattemyndighederne til last, at de først kunne begynde på undersøgelsen af vekselérfirmaets regnskaber i begyndelsen af 1983, og at de på grund af kurators vægring ved at udlevere regnskaberne først fik adgang til disse den 22. november 1984. Forældelsesfristen fandtes derfor først at kunne regnes fra denne dato. Da skattekravet herefter ikke var forældet, tog landsretten Skatteministeriets frifindelsespåstand til følge.

Sagsøgeren blev pålagt 12.000 kr. i sagsomkostninger.

I, the undersigned, Jeanette Riis, certify that the preceding text in the English language is to the best of my knowledge and belief a true and faithful translation of the attached Danish judgment referred to as TfS 1988, 641 V in the Danish language.

Witness my hand and official seal.
Copenhagen, 25 May 2022

*Jeanette Riis*
MA in Translation and Interpretation (English)