# Exhibit 52

# LIONBRIDGE

STATE OF NEW YORK )
) ss
COUNTY OF NEW YORK )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached document U.1963.377H.

*[signature]*

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me
this 2nd day of June, 2022.

*[signature]*

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

U.1963.377H

H. D. March 21, 1963 in Case II 147/1961

*Director C. H. Mungsfeldt and his joint estate with his deceased wife Alma Charlotte Kathrine Mungsfeldt and Mrs Anita Nielsen as survivor of the deceased Authorized Representative Aage J. Nielsen (Mr. Kock)*
versus
*The Tax Department, the Directorate of Taxation of the Municipality of Copenhagen and the Municipality of Frederiksberg (Legal Advisor to the Government Mr. Søby). Intervener: A. Rindom & Restorff A/S (Mr. I.C. Mortensen).*

*Monetary affairs, etc 58.3 - Monetary affairs 58.9, etc - Taxes 7.3 - Taxes 72.3*
**Tax claims not time-barred under Law No 208 of 7/6 1952, but under the 1908 Law.**

- ♦ Investigations by the S tax authorities in connection with the extraordinary statement of assets as of July 23, 1945 revealed that a limited company A had taken out life insurance policies with capital contributions for two employees F for pension purposes, and A then undertook in 1951 to pay tax arrears. In 1953 A applied for the case to be reopened, stating that the capital contributions had been made in respect of bonuses due to F. On December 4, 1958 S brought proceedings against F claiming back-payment. Since the claims had been brought as a result of the abovementioned request by A for a review of the tax proceedings concluded in 1951, the 10-year limitation rule introduced by Law No 208 of June 7, 1952 and justified by special considerations was not considered applicable.[1] Since S had then been able to assert its claims against F in October 1953, pursuant to Article 3 of the 1908 Law, the claims under that Law were deemed to have been time-barred at the time the proceedings were instituted.[2] (Dissent).

**The Østre Landsret**

*Judgment of the Østre Landsret (Eastern Regional Court) of June 29, 1961 (VI Division).*

(Westerkjær, Lund-Andersen, Storm (appointed)).

At a board meeting of A. Rindom & Restorff A/S, on December 28, 1937, it was decided to implement a pension scheme for the employees of the company, which was then done by an agreement of January 27, 1938 with the Pension Insurance Institution ("pensionsforsikringsanstalten") in the usual way through contributions from the employees and with a subsidy from the limited company. For the defendant, Director C. H. Mungsfeldt, and the now deceased Authorized Representative A. Jul Nielsen, who had been a director and an Authorized Representative respectively of the company for a number of years and who were both paid a relatively modest fixed salary but who also received substantial annual bonuses, it was not possible to take out such pension insurance on account of their age, since director Mungsfeldt was born in 1878 and Authorized Representative Nielsen in 1882, and the pension insurance institution did not take out pension insurance for persons over 40 years of age.

After discussions with, among others, the Chairman of the Board, barrister Mr. Tage H. Carstensen, and the Company's auditor, Mr. Johs. G. Andersen, it was decided to take out short-term life insurance policies with a term of 5 to 8 years for those concerned, so that each year during the years 1938-1943 the amounts which the persons concerned would otherwise have received by way of bonus were applied to capital contributions on such policies. The minutes of the company's annual general meeting held on March 4, 193& [sic] state that:

"- - - It was noted that a bonus of DKK 25,053 had been paid to the Management and Staff and DKK 7,961.25 to the Executive Committee. With regard to the bonuses of Director Mungsfeldt and Authorized Representative Nielsen, it should be noted that the amounts have not been paid to them, but have been used by agreement for the purchase of life insurance policies. At their request, future bonuses due will also be applied in this way. The policies in question are underwritten by the Company for the benefit of the beneficiaries."

The policies taken out were kept with barrister Carstensen, so that the insured could not dispose of them themselves.

In addition to providing the persons concerned with a pension-like scheme through the successive payment of the sums insured as they fell due, the aim was to ensure that the company could continue to deduct the contributions as operating expenses and to set up a scheme meeting the conditions required by the tax authorities in order for the insured persons not to include the contributions in question in the calculation of their taxable income.

The minutes of A. Rindom & Restorff A/S show that in 1939 no bonus was paid and no insurance was taken out for the director and the Authorized Representative, while the minutes for March 30, 1940 state that "- - - A bonus of DKK 14,850.17 was paid to the management (15 %) and staff - - -" and at the meeting of the Board of Directors held on December 3 of the same year, "it was decided to end the pension scheme for Director Mungsfeldt and Authorized Representative Jul. Nielsen, and to take the necessary decisions in this connection in consultation with the Board of Representatives set up by the shareholders (Executive Committee)". Director H. P. Hjerl Hansen, who was the company's main shareholder and a member of the Executive Committee, then stated in a letter dated December 6, 1940 to the Board of Directors of A. Rindom & Restorff A/S: "In connection with the Board's proposal to have life insurance policies taken out for Director C. Mungsfeldt for DKK 30,000, and for Authorized Representative J. Nielsen for DKK 10,000, with which the

378

company has met its pension obligations to these gentlemen, I must state as a member of the Committee, that I have no objection to it." This letter bears the following endorsement signed by Director Mungsfeldt and Authorized Representative Nielsen: "We confirm that the above amounts shall not exceed the director's bonuses due to [sic] 06 for the year 1940", and in the minutes of a meeting of the Board of Directors on March 26, 1941 it is said: "Director Mungsfeldt stated in connection with the accounts that a satisfactory pension scheme had now been provided for himself, attorney Nielsen and the other pension-entitled officials employed by the company."

The minutes also show that in 1941 DKK 6789.68 was paid "as a bonus" to the management and staff, and a meeting of the Board of Directors held on March 11, 1942 is mentioned:

"The Chairman noted that a proposal had been made by a group of shareholders that the General Meeting, on the occasion of the Company's 50th anniversary this year, should augment for Director Mungsfeldt and

---

[1] Cf. RT 1949/50, Appendix A, p. 6117-20 and Landstingets forhdl. p. 13 3840.

[2] See U.1935.715 H (TfR 1936.359), U.1936.677 H A sp. 7234-35, and 1951-52 (TfR 1937.214) and U.1936.823, U.1937.464 H, U.1939.935, U.1955.620 and U.1959.641 H, Hartvig Jacobsen: Skatteretten p. 352, Glistrup: Skatteret p. 511, Skattepolitisk Oversigt 1948.51 and 1961.11, Thøger Nielsen i turisten 1960.462, Revision og Regnskabsvæsen 1955.444 and Meddelelser fra Landsskatteretten 1947 nr 88.

Authorized Representative Jul. Nielsen their assured pension, by DKK 25,000 for Mungsfeldt and DKK 7,000 for Jul. Nielsen - by signing policies in the State Institution. - - - ", which proposal was adopted at the ordinary general meeting on March 27 of the same year. In 1943, the minutes state that DKK 17,000 was paid in "bonuses to the management and the Authorized Representative", and in 1944 that the board recommended that DKK 15,000 be paid. 15,000 "for the retirement of the Director and Authorized Representative", which was approved at the General Meeting on March 31 of the same year. In 1945, it is stated that "- - - a bonus of 12,000 kr. has been paid to the directors and Authorized Representatives" and in 1946 that "a bonus" of DKK 9,614 had been paid to the same. It was stated during the proceedings that Director Mungsfeldt's share of this last amount, DKK 4,960.50, had not been used to take out life insurance, but had been paid to him in cash, just as the amount was included in his tax return for the 1947/48 tax year. It is also stated that the company's board of directors in the years in question consisted of the barrister Tage H. Carstensen, the director Mungsfeldt and the Authorized Representative Nielseu.

On examination of the extraordinary statement of assets drawn up by the company as of July 23, 1945 in connection with the payments made by the State Life Insurance Institution pursuant to the Law of July 22, 1945 § 73,

| Subscription date | Capital contribution | Sum | Maturity and payment |
|---|---|---|---|
| 03/24/1938 | DKK 11,999.94 | DKK 13,725.00 | June 1943 |
| 03/30/1940 | DKK 9,041.00 | DKK 10,000.00 | 03/30/1945 |
| 12/11/1940 | DKK 29,966.00 | DKK 33,100.00 | 12/11/1945 |
| 03/25/1942 | DKK 24,999.00 | DKK 27,575.00 | 03/25/1947 |
| 03/03/1944 | DKK 15,00.00 | DKK 16,660.00 | 03/03/1952 |

In the company's above-mentioned letter of December 7, 1948, it is stated that the former policy was raised in June 1941 with the company's permission by DKK 12,383 for use in a property purchase. In a letter dated November 21, 1949 from the company to the Directorate of Taxes of Copenhagen, it is stated that, in addition to the said insurance, on June 18,

| Subscription date | Capital contribution | Sum | Maturity and payment |
|---|---|---|---|
| 03/22/1938 | DKK 10,000.00 | DKK 7,500.00 | 03/22/1948 |
| 03/22/1938 | - - | DKK 7,500.00 | 03/22/1948 |
| 06/24/1940 | DKK 5,999.00 | DKK 6,666.00 | 06/24/1945 |
| 12/30/1940 | DKK 9,999.00 | DKK 11,095.00 | 12/30/1945 |
| 03/23/1940 | DKK 7,500.00 | DKK 8,314.00 | 05/23/1947 |
| 03/31/1944 | DKK 10,001.00 | DKK 10,762.00 | 03/31/1952 |

In the letter of November 21, 1949 it is stated that for the 2 policies as of March 22, 1938 an amount of DKK 10,000 was set aside for the payment of the premiums, as these policies were taken out with a quarterly premium of DKK 398.40. The balance of the premiums has been paid by the company in due course; in addition to the policies mentioned, DKK 6,000 was paid on June 27, 1945 for the purchase of a survivor's annuity. The letter also states: "- - - that all the policies taken out by the company were taken out for pension purposes only and that the policies have been deposited with the chairman of the company, barrister Tage H. Carstensen, until retirement or after the age of 65. - - - ", and in a statement dated November 16, 1949 from barrister Carstensen it is stated:

"I hereby confirm that the proceeds of 2 policies of the State Life Insurance Institution Sg. VII 2257 and Sg. VII 2258 of DKK 7,500, which policies were taken out for pension purposes for attorney Jul. Nielsen, depends in my capacity as Chairman of the Board of A. Rindom & Restorff A/S."

379

During the following period, Nielsen, an Authorized Representative, conducted negotiations on behalf of the company with the Directorate of Taxes of Copenhagen on the tax treatment of the relationship, which negotiations after Nielsen's resignation due to age in 1950 were continued by the company's chief accountant S. Hougaard Larsen. During these negotiations, the tax authorities assumed that the pension-like scheme established was covered by the extraordinary pension fund allocations the tax authorities established that the company had taken out the life insurance policies in question with capital contributions in favour of Director Mungsfeldt and Authorized Representative Nielsen.

After the Directorate of Taxation of Copenhagen had approached the company for further information concerning these matters, the company replied by letter dated September 9, 1948:

"- - - With regard to the life insurance policies mentioned, it should be noted that these were all taken out for pension purposes and that the policies have been or are deposited in the custody of the Company and that the beneficiaries have not been able to dispose of the policies except in the event of maturity, resignation or death of the heirs. Apart from the above-mentioned life insurance policies, no other policies have been taken out." On December 6, 1948, the State Life Insurance Institution sent Authorized Representative Nielsen a list of the policies taken out, which was submitted on December 7 of the same year by A. Rindom and Restorff A/S to the Directorate of Taxes in Copenhagen.

From the list drawn up by the State in connection with a diagram submitted in these proceedings, it appears that the following insurance policies have been taken out for Director Mungsfeldt:

1945, 9000.50 DKK has been paid to purchase an annuity for Director Mungsfeldt.

**The following information is provided on the life insurance policies taken out for Mr. Nielsen:**

referred to in the circular from the State Tax Assessment Directorate (Statens Ligningsdirektorat) of October 14, 1939, and at a meeting on February 17, 1951, when Mr. Hougaard Larsen appeared before the company, it was announced that a scheme would be approved whereby the capital contributions paid in respect of the life insurance policies would be allowed to be written off over a period of 10 years, and amended tax assessments for the tax years 1939/40 to 1946/47 were calculated on this basis.

Accountant Hougaard Larsen then drew up a report on the negotiations on February 27, 1951, which was presented to a meeting of the Board of Directors on the same day. The minutes of the meeting state:

"Director Mungsfeldt stated that the tax authorities have claimed tax on the life insurance policies taken out for pension purposes for Director Mungsfeldt himself and for Authorized Representative Jul. Nielsen. It was decided to refer the matter to barrister ("landsretssagfører") Mr. la Cour, and to ask him for an opinion."

The tax authorities' proposal meant that the company had to pay a good DKK 30,000 in back taxes.

In March 1951, barrister Carstensen submitted the case to District Court Judge J. la Cour and in a letter dated August 4, 1951 from barrister Carstensen to Director Mungsfeldt it is stated: "Having had a lengthy conference with barrister la Cour, I regret to report that there is hardly any possibility of reducing the claims of the tax authorities in connection with the company's pension scheme with certain senior officials. Mr. la Cour will send me a written report on his investigations and the result he has arrived at, but as it may be some days before this report is available, I would advise the company to pay the amount claimed, with interest.

I am returning the letter of the Roads Office of February 19 with the remark that I have an agreement with the Roads Office that the deadline of August 1 is not to be regarded as absolute."

On August 8 of the same year, barrister la Cour then sent the following statement to barrister Carstensen: "Having worked on the tax case concerning the abovementioned limited company, which you forwarded to me on March 1 and having carefully considered the facts, I have come to the conclusion that there is no possibility of the company being exempted from payment of the tax increases imposed.

It appears from the material which you have sent me that, in calculating the increases in question, the Tax Directorate has treated the company as if it had already submitted the prescribed applications to the State Tax Assessment Directorate for depreciation on the payments made in 1938 et seq. on life policies in favour of the company's director and Authorized Representative.

I have examined whether it would be possible to achieve a more favourable result for the company by applying a depreciation method other than that followed by the Directorate, which is, moreover, similar to the ordinary method. However, my investigations have shown that the method applied by the tax authorities in this case produces the most favourable result for the company. In these circumstances, I consider that the company has no alternative but to pay the tax increases in question, which do not include any fine and

- as far as I can see - nor any interest on the underpaid tax."

The company subsequently paid part of the tax. Partly because Mr. Mungsfeldt intended to resign, Mr. C. Agner, who had previously been employed as a director of another company owned by Mr. H. P. Hjen Hansen, as co-director of A. Rindom & Restorff A/S. After he had, presumably at the instigation of F. Hjen Hansen, who succeeded director H. P. Hjen Hansen had taken over his majority shareholding in the company, he sent the following letter to Mr. F. Hjerl Hansen on September 15, 1952:

"After our conversation on Saturday, I have for the first time thought more about the R & R tax case, the details of which I really only know through your statements.

From the letter of August 8, 1951 from barrister Jacob la Cour it appears that the case concerns the refusal by the tax directorate to authorise the depreciation of the payments made in 1938 et seq. on life policies in favour of the company's director and Authorized Representative.

It seems to me that you are right in saying that the said gentlemen themselves, and not the company, must bear the consequences of the attitude of the Tax Department, and if it is only a question of their being relieved of paying income tax on their bonuses because the amounts, instead of being paid to the gentlemen, are used as deposits on life policies when the tax authorities refuse to approve this transaction.

But why is it only now that the idea arises that the director and Authorized Representative cannot escape income tax at the company's expense, for it would have been natural, in my opinion, for this position to have been taken by the company at the moment when the Tax Directorate's position became known.

**380**

Why did neither the late director of HPHH nor the barrister Tage H. Carstensen, who is the company's chairman, think of and argue that the director and the Authorized Representative must pay income tax on their bonuses themselves when the tax authorities do not authorise the amounts to be used to pay up life insurance policies? Have any amounts been written off by the company in excess of the amounts to which the director and the Authorized Representative were entitled in respect of bonuses in the years in question, and can those write-offs not be approved by the Tax Agency? This is an obvious question, since, as far as I am aware, any bonus paid to the director and Authorized Representative is generally deductible.

Opposite me, Dir. CM stated that it is not he and the Authorized Representative, but R & R who should pay, because the payments in question were a form of retirement which the deceased HPHH had determined should be used in this case."

In a letter dated September 17, 1952, barrister Tage H. Carstensen made Director Mungsfeldt aware of the discussions that had taken place, stating, inter alia, that "the question of the payment of tax in arrears in connection with the payments made to you and attorney Jul. Nielsen, I have discussed the matter several times with Director Hjerl Hansen, who still maintains that you and Jul. Nielsen must be obliged to share in the tax payments in respect of the insurance policies taken out in lieu of the payment of bonuses. If you had been paid these sums as bonuses, you would have had to pay tax on them.

Director Mungsfeldt replied to this letter on September 22, 1952, objecting to the position now taken by Director F. Hjen Hansen and barrister Carstensen, referring to the minutes of the proceedings. The letter then states:

"This was a cheap arrangement for the Company, which allowed Nielsen and myself to retire on the director's bonuses earned, and nowhere does it say that we had to pay any tax that might be imposed later. This risk the Company undertook in order to avoid paying anything towards the pension.

In your letter of August 4, 1951 to me and in your letter of August 9 to Rindom & Restorff, it is clear that the tax liability rests with R & R. At the meeting of the Board on February 27, 1951, Hougaard gave a report on the matter - - - that at the time when the Scheme was made, the whole matter had gone through barrister Carstensen, who examined the viability of the Scheme - from a purely tax point of view - and approved it. Moreover, the tax authorities have agreed that the premiums paid will be deducted from the company's income over a 10-year period - - -

In letters of September 23 of the same year from barrister Carstensen to Director Mungsfeldt and of September 30 from Director Mungsfeldt to barrister Carstensen, the matter was further discussed without agreement being reached.

Director Mungsfeldt resigned from his post at the end of 1952 and after some further discussions between Director Mungsfeldt and barrister Carstensen, the latter wrote the following to the Directorate of Copenhagen Taxes on April 24, 1953:

"As Chairman of the Board of Directors of A. Rindom & Restorff A/S,

I hereby request the Directorate to reopen the tax case in which on March 17, 1951 the Directorate issued corrected tax slips for the years 1939/40-1949/50.

The corrections have taken place because in the years 1938-48 policies had been taken out in favour of the company's director, Carl Mungsfeldt, and Authorized Representative, Aage Jul. Nielsen.

The aforementioned is no longer employed by the company, and Director Mungsfeldt no longer since January 1, 1953. After that date, this tax case was the subject of a further investigation, which revealed that Mr. Mungsfeldt and Mr. Jul. Nielsen, who had conducted the negotiations with the Directorate at the time, had failed to provide the Directorate with sufficient information and that they had done so for their own benefit.

I am convinced that the Tax Directorate would have looked into the matter a little more closely if Mungsfeldt and Jul. Nielsen had provided the above information."

This letter was followed by a letter dated August 7, 1953 from A. Rindom & Restorff A/S's lawyer, District Attorney I. C. Mortensen, to the Directorate of Taxes of Copenhagen, stating inter alia:

"The first policies were underwritten by the company in 1938, and at that time the circular of the State Tax Assessment Directorate did not yet exist. The company and the employees were under the mistaken impression that the employer's extraordinary capital contributions could be treated as ordinary trading costs, but the employees were not taxable in respect of the capital contributions to the insurance company. The same mistaken view was applied when the subsequent policies were taken out. No guidance was obtained from the State Life Insurance Institution, nor were the notices referred to from the State Tax Assessment Directorate and the Equalisation Board.

When the Tax Directorate revised the tax bills for the years 1939/40-1949/50 after the war, it treated the company as if the prescribed applications to the State Tax Assessment Directorate had been submitted - and granted. But this approach cannot be accepted.

For the Tax Directorate to treat the case as if applications had been submitted to the State Tax Assessment Directorate at the time, the company must agree to this fiction, and it goes without saying that the company cannot consent to this when the fact is that the company, if it had known then what it now

381

knows, would have said to Mungsfeldt and Jul. Nielsen, that it should be their own business to take out policies. The company would therefore never have been in the position of submitting applications to the Tax Assessment Directorate.

Furthermore, the application of the above provisions by the tax directorate must be conditional on there having been granted by the tax directorate if applications had been made, and on their not having been granted if the tax directorate had concluded that self-retirement existed. I refer in this connection to Helkett, Determination of Taxable Income to the State, 5th edition, p. 159 f. Self-retirement may exist even if the company has taken out the policy in favour of the employee, but of course it exists in any event if the employee has taken out the policy himself.
-

**In conclusion it should be noted:**

The sums entrusted to the State Life Insurance Institution were not originally subject to income tax either by the company or by the officials. There can be no doubt that this was untenable.
- - -"

As Director Mungsfeldt and attorney Nielsen both lived in the municipality of Frederiksberg, on February 4, 1954 the Directorate for Copenhagen Taxes forwarded the cases to the State Tax Directorate, which summoned Director Mungsfeldt to a meeting on June 29, 1954. Director Mungsfeldt then contacted the barrister Jess Lassen, who, in a letter to the Directorate of Equalization on July 28, 1954, gave an account of the case and, referring to the settlement reached in 1951 with A. Rindom & Restorff concerning the payment of tax, concluded as follows:

"Director Mungsfeldt then had to assume that the case as such was closed in all respects, and notwithstanding the discussions which have taken place at a much later stage and which are in fact due to the fact that the financial position of the company is not as strong as it was before.

For me, the matter is clear; the company undertook at the time a commitment which it expected could be written off against the operating accounts. This calculation turned out to be wrong, and the company is now seeking to pass on a significant part of the burden to a man who has served the group for more than 50 years as a loyal employee, adding considerable value to the group.

In the following period a number of settlement negotiations were held again without result and on August 15, 1956 the State Tax Directorate forwarded the cases to the Tax Ministry with a letter stating, among other things:

"In forwarding the enclosed files relating to former Director C. H. Mullgsfeldt, Maglekildevej 8, Frederiksberg, and the deceased Authorized Representative Aage J. Nielsen, Dronning Olgasvej 9, Frederiksberg, are hereby notified that, in the opinion of the Equalisation Board, they have filed incorrect tax returns for several tax years.

A settlement has therefore been proposed to those concerned, according to which income assessments would be increased by the following amounts:

Director Mungsfeldt:

| Tax year | |
|---|---|
| 1939/40 | DKK 12,000 |
| 1941/42 | DKK 38,967 |
| 1943/44 | DKK 25,000 |
| 1945/46 | DKK 15,000 |
| 1946/47 | DKK 9,000 |

and Mr. Aage J. Nielsen, Authorized Representative, with the following amounts:

| Tax year | |
|---|---|
| 1939/40 | DKK 10,553 |
| 1941/42 | DKK 15,998 |
| 1943/44 | DKK 7,500 |
| 1945/46 | DKK 10,000 |
| 1946/47 | DKK 3,000 |

Due to the nature of the case, it has been offered that the calculation of the underpaid taxes could be made with successive tax deductions and, for the estate of Authorized Representative Aage J. Nielsen, without any surcharge pursuant to Section 43, second sentence of the State Tax Law. In the meantime, the parties concerned have not wished to settle, as they consider the settlement reached by the company to be final.

- - On behalf of the Equalisation Board, it is hereby recommended that legal proceedings be instituted against Director Mungsfeldt and against the estate of Authorized Representative Aage J. Nielsen, represented by his widow, Mrs Anita Nielsen, of Dronning Olgasvej 9, who is in a state of insolvency, with a claim for repayment of the tax paid in arrears pursuant to § 42-43 of the State Tax Law.

The underpayment of taxes, without any subsequent tax deductions, amounts to for Director Mungsfeldt:

```
To the State ............................................................................... DKK 39,127.20
   –   the joint municipal compensation fund ................................DKK 5,748.67
   –   Frederiksberg municipality incl. church tax..........................DKK 1,141.02
   –   Municipality of Copenhagen incl. church tax ………………….......DKK 17,435.36
                                                                            ---------------------
                                                  Total DKK 63,452.25
                                                  ------------------------------
```

In the case of the deceased Authorized Representative Aage J. Nielsen, the underpaid taxes are without any deductions:

```
To the State ...............................................................................DKK 9,965.42
   –   the joint municipal compensation fund ..................................DKK 1,844.59
   –   Frederiksberg municipality incl. church tax ……………………........DKK 4,521.77
                                                                             ---------------------
                                                  Total DKK 16,331.78
                                                  ------------------------------
```

In these proceedings, brought on December 4, 1958 and heard by a single court pursuant to Section 286 of the Code of Judicial Procedure, the Tax Department, the Directorate of Copenhagen Taxes and the Municipality of Frederiksberg have requested that Director C. H. Mungsfeldt and the joint estate of Director C. H. Mungsfeldt and his deceased wife Alma Charlotte Kathrine Mungsfeldt, represented by E. Spangenberg, acting as executor, be ordered to pay to the above-mentioned amounts due to the State and the Joint Municipal Compensation Fund, the Municipality of Copenhagen and the Municipality of Frederiksberg, totaling DKK 63,452.25, together

**382**

with interest at 5 per cent per annum from the date on which the proceedings were instituted until payment is made, whereas the Tax Department and the Municipality of Frederiksberg have claimed that the defendant Mrs. Anib Nielsen, as survivor of the estate of the deceased Authorized Representative Aage Jul. Nielsen to pay the amounts also due to the State and the Joint Municipal Compensation Fund of the Municipality of Frederiksberg, totaling DKK 16,331.76, together with interest at 5 % per annum from the date on which the proceedings were brought until payment.

The defendants, who have not objected to the amount of the sums claimed, claim that the Court should dismiss the action, principally on the ground that the tax claims against the defendants must be regarded as time-barred under Law No. 274 of December 22, 1908 and, in the alternative, on the ground that the agreement between A. Rindom & Restorff A/S and the Directorate of the Copenhagen Tax Authority in 1951 is binding and that the claims against the defendants arising from that settlement are time-barred. In the further alternative, the application is dismissed on the ground that the life insurance policies taken out were taken out for pension purposes, so that the defendants were not liable to income tax on the amounts in question when the life insurance sums were paid out in the years in question.

Finally, in the alternative, the defendants claim that the action should be dismissed and that a lesser sum should be paid at the discretion of the Court.

A. Rindom & Restorff A/S, now a subsidiary of E. F. Esmann A/S, which in 1957 received from the Tax Department a refund of the State tax paid by the company, together with interest totaling 18,045.18, subject to repayment if it is found in the present case that the life insurance deposits in question are retirement benefits paid by the company, intervened in the proceedings and gave evidence in support of the applicants.

During the hearing, Director Mungsfeldt gave evidence and Børge Dalberg, Executive Secretary of the Directorate of Taxes of Copenhagen, Sigurd Hougaard Larsen, Head of Office, Tage H. Carstensen, barrister, and Hans Christian Jensen Agner, former Director, gave evidence.

Director Mungsfeldt has explained that he was employed by A. Rindom & Restorff in 1899 and has been a director of the company since 1913, from 1920 sole director. Under his contract, he received a fixed salary and, in addition, a bonus, initially of 10%, later of 12% and 15% of net profits, after 5% had been paid out to shareholders and 1% had been allocated to the reserve fund. Director H. P. Hjen Hansen, with whom the defendant had a close friendship and with whom the cooperation was smooth, held the majority of the shares and had to approve the amount of the bonus each year. The cooperation with Mr. Carstensen was also the best possible, and the defendant always allowed his ideas to benefit all the Hjerl Hansen companies. It was director H. P. Hjerl Hansen, who wanted to set up a pension scheme for the officials, and it was also he who, when it appeared that no arrangement could be reached with the pension insurance institution for the defendant and Authorized Representative Nielsen, proposed that the latter should waive their bonuses in return for a roughly equivalent amount being used each year to pay into life insurance policies, stating that under that arrangement the defendant and Nielsen would be exempt from tax in respect of those payments. The defendant at first objected to this scheme but eventually agreed to it. Director Hjerl Hansen then destroyed the defendant's contract of employment, since it had been amended by the scheme established and he did not want to risk the defendant claiming a bonus on the basis of the contract, notwithstanding the retirement contributions. No mention was made of whether the scheme could give rise to tax liability for the company. The policies taken out were to be held by the chairman of the board until they could be paid out at the age of 65 or on death. The proposed scheme was submitted to the Board, which approved it, and was approved by the General Meeting. In 1948, the company was contacted by the tax authorities regarding the statement of assets as of July 73, [sic] 1945 and the information obtained from the State Institute, to which the defendant replied on behalf of the company by letter dated September 9 of the same year. The defendant did not take part in the negotiations conducted in 1948-51, which were conducted by Mr. Nielsen, an Authorized Representative, and, after his departure, by Mr. Hougaard Larsen, who was employed by the defendant. Hougaard Larsen presented the tax authorities' settlement proposal to the defendant, who discussed it with the barrister, Carstensen, who advised immediate payment of the tax, whereupon the company accepted the settlement and began payment.

Secretary of State Dalberg has explained that the tax authorities did not start to review company accounts until 1948 that he dealt with A. Rindom & Restorff's assets statement. He spoke only by telephone with Director Mungsfeldt, the negotiations being conducted on the company's behalf by Authorized Representative Nielsen, who stated that the payments made had been made to

There was, however, no mention of bonuses in this context and the company's negotiation minutes were not submitted to the tax authorities, who had no interest in seeing them at the time either, as it was assumed that the information on the existence of a pension scheme was correct. The tax authorities did not question this at all, nor did they find anything unusual in the fact that the amounts paid varied. In fact, before Mr. Hougaard Larsen took over the negotiations, there was already agreement on the settlement, so that it was only the final meeting that he attended. It was customary in similar cases for a company to be represented by a director or Authorized Representative.

Head of Office Hougaard Larsen has explained that as an assistant at the State Auditor Johs. G. Andersen from spring 1947 had with the audit of the Rindom & Restorff accounts.

**383**

He had no further knowledge of the life insurance policies taken out, except that in 1949 he had discussed them with the accountant Andersen, who said that the scheme had been submitted to the barrister, Carstensen, and was to replace the pension scheme applicable to the other staff. The witness did not know at that time whether the policies were taken out for bonuses.

During the years the witness audited the accounts, the company made no profit and therefore no bonus was paid during that time. In 1951, the witness was employed by Rindom & Restorff as chief accountant, and he had a meeting with the then attorney Dalberg on the tax issue. There was no discussion on that occasion of bonuses or of the possibility of making a claim against Director Mungsfeldt or Authorized Representative Nielsen. The witness does not believe that the tax authorities have had the opportunity to see the company's minutes, nor does he believe that Mr. Mungsfeldt or Mr. Nielsen have provided the tax authorities with information relevant to the decision in the case. After the meeting with the tax authorities, the witness prepared a statement for the board, but did not have the opportunity to discuss it in any board meeting, and he was not told whether the company actually agreed to the settlement. He resigned from his position on September 30, 1951.

Mr. Carstensen, the barrister, has explained that Mr. Mungsfeldt, the Director, told him that he had been told that his bonus could be converted into capital contributions on life insurance policies and that this would result in tax exemption for the said amounts both for Mr. Mungsfeldt and for the Company. The witness discussed the matter with two insurance experts who said that such an arrangement might not be entirely legally permissible but was in fact approved by the tax authorities. The witness does not know whether the suggestion originated with Director H. P. Hjerl Hansen, and he does not recall whether he discussed it with him, but would assume so. He assumes that there was once an employment contract for Director Mungsfeldt, but he does not know whether he had a contractual claim to a bonus or whether the "pension scheme" was based on something in writing. He was not involved in setting the bonus amounts, but was informed of them by Director Mungsfeldt and, I believe, subsequently discussed them with Director Hjerl Hansen. The fact that the minutes of the negotiations alternate between pension and bonus is due to the fact that both were actually available. The witness believes that the amounts used to pay into the policies corresponded to the bonus that would otherwise have been paid. The policies were kept in the witness's office as he had been told that it was a condition of the scheme's approval that the insured persons were unable to dispose of them. However, the policies did not appear to be prohibitive and the witness recalls that Director Mungsfeldt was paid the surrender value of one of them, but does not recall the details. He is however sure that it was not done without discussion with Director Hjen Hansen. The witness was aware of the negotiations with the tax authorities

in 1948-51 and has obtained a statement from barrister la Cour. He wonders why it was not disclosed to Mr. la Cour that the amount in question was director's bonuses, but he does not recall whether the minutes of the negotiations were shown to the tax authorities. The witness does not believe that there was ever any actual acceptance of the settlement by the company, but if he had been asked to take a position on it, he would have advised acceptance. Former director Agner explained that he, who had been employed by E. F. Esmann A/S since 1917, was appointed director of Rindom & Restorff after a critical audit had revealed that there were deficits. During the investigation carried out by the witness on that occasion, he wondered about the tax paid by the company and was then told that it was a back payment in connection with the pension scheme, which prompted him to write the letter of September 15, 1952 to the director, Mr. F. Hjerl Hansen.

In support of their claims, the applicants submit that, in principle, the defendants were liable to income tax under Paragraph 4(c) of the State Tax Law on any sums paid to them by the company, and that the burden of proving that that was not the case rests on the defendants, who must therefore prove both that a pension scheme existed and that, in the form in which it existed, it would have resulted in tax exemption. Whether a scheme such as that at issue, which, as is clear from the circular of October 14, 1939, which in this respect confirms the practice hitherto in force, presupposes that the company bears the cost of subscribing to the policies, would have been approved, rested entirely on the discretion of the Equalisation Directorate. However, it must be held that the cost of underwriting the policies was in fact borne out of the director's bonuses due to the defendants, and that there was therefore a self-retirement for which there was no full right of deduction, which is also supported by the fact that the defendants were in fact able to dispose of the policies. In 1941, Mr. Mungsfeldt was paid the surrender value of an insurance policy which did not fall due until 1943. In any event, the scheme established was so loose and uncertain that it is certain that the Equalisation Directorate would not have approved it had the correct information been provided.

In response to the pleas of limitation raised by the defendants, the applicants submit that the limitation period under the § 3 of the 1908 law is to be calculated only from the date on which the creditor was in a position to assert his claim, and that date can be set at June 29, 1954 at the earliest, since the limitation period could not begin to run until the information provided by the company in 1953 had been verified. It was only after Director Mungsfeldt had been summoned to a meeting that the tax authorities became aware of the facts in such a way that the claim could be made. An examination of Mr. Mungsfeldt's tax returns for the period before 1938 would not have provided any guidance, since they did not show what was salary and what was bonus.

**384**

It is in practice the case, that the limitation period does not start to run until the collapse of the settlement negotiations. Moreover, in the present case, which has its origin in an inventory submitted under the Law of July 22, 1945 on the extraordinary inventory of assets, there can be no question of the limitation period having begun to run, since the limitation period of 10 years laid down by Law No 208 of June 7, 1952 must be applicable and the first piece of information which could give rise to the assumption that there were grounds for to investigate the matter further is A. Rindom & Restorff's of December 7, 1948 and the subsequent letter from the of December 6, 1948. The settlement reached in 1951 cannot alter the limitation periods, nor should it be assumed that this decision should be binding on the tax authorities, since it was taken on the basis of incorrect information and the settlement was otherwise reached between parties.

No promise can be made in the settlement in favour of the defendants and, in particular, the defendants, who are themselves responsible for the incorrect information, cannot rely on it.

The defendants submit, however, that the limitation period has begun to run pursuant to Paragraph 1(4) and Paragraph 2 of the Law of 1908, since the limitation period for the tax amounts in question, which relate to the tax years 1939/40, 1941/42, 1943/44, 1945/46 and 1946/47, must in principle be calculated from the normal dates on which the tax amounts in question were paid, the latest of which was 1947. It is not disputed that there is no recognition of the debt. In any event, by letter of April 24, 1953 from Mr. Carsten, the Regional Court's Advocate General, the tax authorities received all the necessary information concerning the defendants' circumstances, so that the limitation period must be calculated from that date at the latest. The special limitation period of 10 years laid down in 1952 cannot be applied in the present case, since the claim is not based on any statement of the assets of the defendants, since it was the company's extraordinary statement of assets which gave rise to the investigation. Even if one assumes that the starting date is shifted in cases where there is incorrect or incomplete information, one cannot take the date of December 7, 1948 as the starting point, since the tax authorities had already taken this date into account in their letter of December 9, 1948. September 1948 from the company, such information would have enabled the claim to be asserted, since a comparison with the tax returns submitted by Director Mungsfeldt and Authorized Representative Nielsen for the tax years in question and previous years would have shown that the amounts of director's bonuses paid to the company to date were no longer being paid to the persons concerned.

The defendants also claim that a final and binding decision was reached between the company and the Tax Directorate in March 1951. Since the tax proceedings brought against A. Rindom & Restorff A/S have not resulted in any changes to the tax returns of the defendants on the part of the tax authorities, despite the fact that the latter have received all the information they needed in order to be able to bring their claims, it is submitted that the claims in relation to the defendants are time-barred, since more than five years have elapsed since the end of the tax year in which the settlement decision was reached.

In support of their claim in the alternative, the defendants submit that it was natural for the general pension scheme for other staff to include a scheme for the Director and the Authorized Representative. The scheme adopted, under which short-term life insurance policies were taken out for the defendants, was approved in each of the years in question by the entire Board of Directors and authorized by Mr. Hjerl Hansen, the director who owned the majority of the shares. The policies taken out were exempt from the beneficiaries' right of disposal, being held by the chairman of the company's board of directors, so that a valid pension scheme had been made for the persons concerned. Finally, in support of their claim for a reduction in the amount, the defendants submit that it has not been shown that Mr. Mungsfeldt or Mr. Nielsen sought to conceal relevant information from the tax authorities. It was not made clear, when the scheme was devised, what was to be included in the words 'bonus' and 'pension'. The tax authorities assumed, without further investigation, that a pension scheme existed when they dealt with the company's case in 1948-51, and the defendants cannot be accused of having overlooked the opportunities available to the tax authorities to obtain the necessary information.

On the basis of the evidence thus available, the Court considers that it has been established that the capital gains on the life insurance policies taken out were made from the amounts which would otherwise have been paid to Mr. Mungsfeldt and Mr. Nielsen as a bonus, and that therefore there has been a "self-retirement" (selvpensionering). It must therefore be assumed that no pension scheme has been set up of such a kind that the contributions made could be deducted from the taxable income of the persons concerned or written off over a number of years.

Furthermore, the Court agrees with the applicants that the agreement with A. Rindom & Restorff A/S on the basis of incorrect assumptions cannot preclude the applicants from bringing claims against the defendants and that the applicants will not be able to the letter of April 24, 1953 from barrister Mr. Carsten, the opportunity to investigate whether they had any claim against the defendants, and since until the autumn of 1955 thereongoing negotiations between the parties to clarify the matter, and that the tax authorities' handling of the case must therefore as a whole, the limitation period cannot be from any earlier date than the date of these negotiations. Since that date is in any event less than five years before the commencement of the proceedings, the limitation period has not started to run, and the Court therefore finds it unnecessary to rule on whether the No 208 of June 7, 1952 applies to the case.

**385**

Furthermore, as the Court does not consider that it has the power to make a discretionary reduction in the claim, the defendants will have to be judged on the whole in accordance with the claims made by the applicants - - -

**Supreme Court**

**Supreme Court judgment.**

The appealed judgment was delivered by the Østre Landsret.

Seven judges took part in the judgment: Frost (President), Lorenzen, Trolle, Gjerulff, Tamm, H. A. Sørensen and le Maire.

Before the Supreme Court, the appellants claim that the case should be dismissed. The respondents claim that the judgment should be confirmed.

A. Rindom & Restorff A/S also appeared before the Supreme Court and made submissions in support of the defendants' claim.

For the Supreme Court, the dispute is solely about whether the respondents' claims are time-barred. The parties agree that this would not be the case if the special limitation rule of Law No 208 of June 7, 1952, as stated by the defendants, were to apply to the relationship.

In response to the respondents' plea concerning the application of that rule, the appellants submit in particular that the case brought about by the extraordinary statement of assets was brought to a close by the settlement offered to them at the meeting on February 17, 1951, under which the company made back payments in the following period. It was therefore a new case which was opened after the company had requested the tax authorities in 1953 to re-examine the closed case. The present case was not therefore brought on the basis provided for by the Law of 1952, and the exceptional limitation rule - with its specific background of the accumulation of a very large number of cases - cannot therefore be applied.

As regards the application of the five-year transit rule the appellants submit to the Supreme Court that the letter of August 7, 1953 from barrister Mr. Mortensen containing a detailed - year by year - account - of the life insurance policies taken out in favour of the appellant, Mr. Mungsfeldt, and the Authorized Representative, Mr. Nielsen, contained, in conjunction with a supplementary letter of last October, all the information necessary for the tax authorities to calculate the tax liability, and that no other significant information has subsequently emerged, and the figures given by the barrister have also been taken into account by the tax authorities. There is therefore no basis for postponing the start of the limitation period and, since more than five years have elapsed since December 23, October 1953 to the bringing of the action on December 4, 1958, the tax claims are time-barred.

The respondents, who have acknowledged that no new information of any significance has come to light since the receipt of the said letter of October 23, 1953, submit to the appellants that it was necessary to verify the information contained in the letters of barrister Mr. Mortensen, and that the tax authorities could not have made their claims even after Mr. Mungsfeldt had been summoned to the meeting of June 29, 1954, his lawyer having then made various submissions on the case. Since the ongoing negotiations, which must be regarded as a whole, can then only be regarded as having ended at a time less than five years before the commencement of the proceedings, the claims made are not time-barred.

Five judges - Frost, Trolle, Gjerulff, Tamm and le Maire - note:

In the present circumstances, where the tax claims against Mungsfeldt and Nielsen were raised as a result of a complaint by A. Rindom & Restorff A/S in 1953 for a review of the tax proceedings concluded in 1951, it is considered inadvisable to apply the exceptional and exceptional limitation rule introduced by the Law of June 7, 1952.

Since in October 1953 the tax authorities must be considered to have been able, on the basis of the information provided by the Advocate General I. C. Mortensen to assert their claim against the appellants, pursuant to Law No 274 of December 22, 1908, § 3, the claim is deemed to have been time-barred at the time of the institution of the proceedings.

Those Judges accordingly vote to uphold the Appellants' application and to order the Respondents to pay the costs of both Courts as set out below.

Two judges - Lorenzen and H. A. Sørensen - observe: The tax authorities, on receipt of the letters of

The Court of First Instance took into account the fact that the interests of the company in the case were opposed to those of the appellants in the letters of August 7 and October 23, 1953 from the company's lawyer and could not therefore take into account the new account of the facts given in the letters until the appellants had been given the opportunity to make their views known. It could not be ruled out in advance - notwithstanding the evidence contained in the letters - that new information might emerge from the appellants, and it must be of no consequence that it subsequently transpired that this did not happen. In the light of the foregoing, it is not possible to hold that the case existed on December 4, 1953 in such a way that the tax authorities were in a position to enforce the claim against the appellants. Accordingly, the claim is not considered to have been time-barred by the date of the commencement of the proceedings on December 4, 1958, and it is therefore not necessary to rule on the other arguments put forward by the respondents. These Judges therefore vote to uphold the judgment in so far as it is before the Supreme Court for review.

There will be to give judgment according to the majority of votes.

**For it is known to be right:**

*The appellants, Director C. H. Mungsfeldt and his joint estate with his late wife Alma Charlotte Kathrine Mungsfeldt and Mrs Anita Nielsen as survivor of the deceased Authorized Representative Aage L. Nielsen,*

**386**

*should for the indictment by respondents, the Tax Department, the Directorate of Taxation of the Municipality of Copenhagen and the Municipality of Frederiksberg, be free in the present case.*

The respondents shall pay to the appellant, Director Mungsfeldt and the joint estate, DKK 8000, one for all and all for one, and the respondents, the Tax Department and Frederiksberg Municipality, one for both and both for one, to the appellant, Mrs Anita Nielsen, DKK 2000.

*It is ordered to be discharged within 15 days of the delivery of this Supreme Court judgment.*

**U.1963.377H**

**H. D. 21. marts 1963 i sag II 147/1961**

*Direktør C. H. Mungsfeldt og hans og afdøde hustru Alma Charlotte Kathrine Mungsfeldts fællesbo samt fru Anita Nielsen som hensiddende i uskiftet bo efter afdøde prokurist Aage J. Nielsen (hrs. Kock)*
mod
*Skattedepartementet, Direktoratet for Københavns Kommunes Skattevæsen og Frederiksberg kommune (kammeradv. v/ hrs. Søby). Biintervenient: A. Rindom & Restorff A/S (lrs. I. C. Mortensen).*

*Pengevæsen m.v. 58.3 - Pengevæsen m.v. 58.9 - Skatter 7.3 - Skatter 72.3.*
**Skattekrav ej forældede efter lov nr. 208 af 7/6 1952, men derimod efter 1908-loven.**

- ♦ Ved skattemyndighederne S's undersøgelser i anledning af den ekstraordinære formueopgørelse pr. 23. juli 1945 viste det sig, at et aktieselskab A i pensionsøjemed havde tegnet livsforsikringer med kapitalindskud for to funktionærer F, og A indgik herefter i 1951 på at efterbetale skat. I 1953 begærede A sagen genoptaget idet det nu oplystes, at kapitalindskudene var sket for tantiemebeløb, der tilkom F. Den 4. december 1958 anlagde S sag mod F med krav om efterbetaling. Da kravene var rejst som følge af A's nævnte begæring om fornyet undersøgelse af den i 1951 afsluttede skattesag, fandtes den i lov nr. 208 af 7. juni 1952 indførte ekstraordinære og i ganske særlige hensyn begrundede 10-års forældelsesregel ikke at komme til anvendelse. [1] Idet S dernæst i oktober 1953 havde været i stand til at gøre kravene gældende mod F, jfr. 1908-lovens § 3 fandtes kravene i medfør af denne lov at have været forældet ved sagens anlæg. [2] (Dissens).

## Østre Landsret

### Østre Landsrets dom 29. juni 1961 (VI afd.).

(Westerkjær, Lund-Andersen, Storm (kst.)).

På et bestyrelsesmøde i A. Rindom & Restorff A/S, den 28. december 1937 besluttedes det at gennemføre en pensionsordning for de i firmaet ansatte funktionærer, hvilket derefter skete ved en overenskomst af 27. januar 1938 med pensionsforsikringsanstalten på sædvanlig måde gennem bidrag fra funktionærerne og med tilskud fra aktieselskabet. For sagsøgte, direktør C. H. Mungsfeldt, og nu afdøde prokurist A. Jul Nielsen, der i en længere årrække havde været henholdsvis direktør og prokurist i selskabet, og som begge aflønnedes med en forholdsvis beskeden fast løn, men som derudover årligt oppebar ikke ubetydelige beløb i tantieme, kunne der imidlertid på grund af deres alder ikke tegnes sådan pensionsforsikring, idet direktør Mungsfeldt var født i 1878 og prokurist Nielsen i 1882, og pensionsforsikringsanstalten ikke tegnede pensionsforsikringer for personer over 40 år.

Efter drøftelse blandt andet med bestyrelsens formand, landsretssagfører Tage H. Carstensen, og selskabets revisor, statsautoriseret revisor Johs. G. Andersen blev det besluttet at tegne kortvarige livsforsikringer med 5 til 8 års løbetid for de pågældende, således at der hvert år i årene 1938-1943 anvendtes de beløb, som de pågældende ellers ville have fået udbetalt i tantieme, til kapitalindskud på sådanne policer. Det hedder herom i aktieselskabets forhandlingsprotokol for den den 4. marts 1938 afholdte ordinære generalforsamling:

"- - - Det bemærkedes, at der i Tantieme til Direktion og Personale er udbetalt Kr. 25.053,- og til Forretningsudvalget Kr. 7.961,25. M.h.t. Direktør Mungsfeldts og Prokurist Nielsens Tantieme bemærkes dog, at Beløbene ikke er udbetalt de paagældende, men efter Aftale er anvendt til Indkøb af Livsforsikringer. Efter de pågældendes Ønske vil ogsaa fremtidige forfaldne Tantiemer blive anvendt paa den Maade. De omtalte Policer er tegnet af Selskabet til Fordel for paagældende."

De tegnede policer opbevaredes hos landsretssagfører Carstensen, således at de forsikrede ikke selv kunne råde over dem.

Man mente herved, udover at sikre de pågældende en pensionslignende ordning ved den successive udbetaling af forsikringsbeløbene efterhånden som de forfaldt, at kunne opnå, dels at selskabet fortsat kunne fradrage indbetalingerne som driftsomkostninger, dels at etablere en ordning, der opfyldte de hav, der fra skattemyndighedernes side krævedes opfyldt for at de forsikrede kunne undlade at medtage de omhandlede indbetalinger ved opgørelsen af deres skattepligtige indtægt.

Af forhandlingsprotokollen for A. Rindom & Restorff A/S fremgår, at der i året 1939 hverken udbetaltes tantieme eller tegnedes forsikringer for direktøren og prokuristen, medens det i protokollatet for 30. marts 1940 om det på den ordinære generalforsamling passerede hedder: "- - - Der er udbetalt Tantieme til Direktion (15 ‰)og Personale Kr. 14.850,17 - - -" og om et den 3. december samme år afholdt bestyrelsesmøde siges: "Det vedtoges i indeværende Aar at tilendebringe Pensionsordningen forsaavidt angaar Direktør Mungsfeldt og Prokurist Jul. Nielsen og at træffe de i denne Forbindelse fornødne Afgørelser i Samraad med det af Aktionærerne nedsatte Repræsentantskab (Forretningsudvalg)".

Direktør H. P. Hjerl Hansen, der var selskabets hovedaktionær og medlem af forretningsudvalget, udtalte herefter i en skrivelse af 6. december 1940 til bestyrelsen i A. Rindom & Restorff A/S:

"I Anledning af Bestyrelsens Forslag om. at lade tegne Livsforsikringer for Direktør C. Mungsfeldt for Kr. 30.000,- Prokurist J. Nielsen 10.000,-, hvormed Selskabet har opfyldt sine Pensionsforpligtelser over for d'Herrer skal jeg udtale som Medlem af

**378**

Forretningsudvalget, at jeg intet finder at indvende herimod." Denne skrivelse bærer følgende af direktør Murlgsfeldt og prokurist Nielsen underskrevne påtegning: "Vi bekræfter at de ovennævnte Beløb ikke maa overstige de 06 for Aaret 1940 tilkommende Tantiemer", og i protokollatet vedrørende et bestyrelsesmøde den 26. marts 1941 siges det: "Direktør Mungsfeldt oplyste i Tilslutning til Regnskabet, at der nu var tilvejebragt en tilfredsstillende Pensionsordning for ham selv, Prokurist Nielsen og de øvrige i Selskabet ansatte Pensions berettigede Funktionærer."

Af protokollen fremgår endvidere, at der i 1941 udbetaltes 6789 kr. 68 øre "i Tantieme" til direktion og personale, og om et den 11. marts 1942 afholdt bestyrelsesmøde hedder det:

"Formanden bemærkede, at der fra en Aktionærgruppe var stillet Forslag om, at Generalforsamlingen i Anledning af Firmaets 50 Aars Jubilæum i Aar skulde forhøje den Direktør Mungsfeldt og

---

**1** Jfr. RT 1949/50, tillæg A sp. 6117-20 og landstingets forhdl. sp. 13 3840.
**2** Jfr. U.1935.715 H (TfR 1936.359), U.1936.677 H A sp. 7234-35, og 1951-52 (TfR 1937.214) og U.1936.823, U.1937.464 H, U.1939.935, U.1955.620 og U.1959.641 H, Hartvig Jacobsen: Skatteretten s. 352, Glistrup: Skatteret s. 511, Skattepolitisk Oversigt 1948.51 og 1961.11, Thøger Nielsen i turisten 1960.462, Revision og Regnskabsvæsen 1955.444 og Meddelelser fra Landsskatteretten 1947 nr 88.

Copyright © 2021 Karnov Group Denmark A/S                        side 1

Prokurist Jul. Nielsen sikrede Pension med Kr. 25.000,- for Mungsfeldts Vedkommende og Kr. 7.000,- for Jul. Nielsens Vedkommende - gennem Tegning af Policer i Statsanstalten. - - - ", hvilket forslag vedtoges på den ordinære generalforsamling den 27. marts samme år. I 1943 oplyses det i protokollen, at der i "tantieme til Direktion og Prokuristen" er udbetalt 17.000 kr., og i 1944 at bestyrelsen indstillede, at der udbetaltes 15.000 kr. "som Pensionering af Direktør og Prokurist", hvilket tiltrådtes på generalforsamlingen den 31. marts samme år. I 1945 siges det, at der "- - - i Tantieme til Direktion og Prokurist er udbetalt 12.000 Kr." og i 1946 at der "i Tantieme" til de samme er udbetalt 9614 kr. Det er under sagen oplyst, at direktør Mungsfeldts andel af dette sidste beløb 4960 kr. 50 øre ikke er anvendt til tegning af livsforsikring, men udbetalt ham kontant, ligesom beløbet er medtaget på hans selvangivelse for skatteåret 1947/48. Det er endvidere oplyst, at selskabets bestyrelse i de heromhandlede år bestod af landsretssagfører Tage H. Carstensen, direktør Mungsfeldt og prokurist Nielseu.

Ved gennemgang af den af selskabet affattede ekstraordinære formueopgørelse pr. 23. juli 1945 i forbindelse med de af Statsanstalten for Livsforsikring i henhold til loven af 22. juli 1945 § 73 indsendte kontroloplysninger blev det af skattevæsenet konstateret, at selskabet havde tegnet de omhandlede livsforsikringer med kapitalindskud til fordel for direktør Mungsfeldt og prokurist Nielsen.

Efter at Direktoratet for Københavns Skattevæsen havde rettet henvendelse til selskabet om nærmere oplysninger vedrørende disse forhold, svarede selskabet i skrivelse af 9. september 1948:

"- - - Hvad endelig de nævnte Livsforsikringer angaar skal det meddeles, at disse alle er tegnede i Pensionsøjemed og at Policerne har været resp. er deponerede i Selskabets Varetægt og at de begunstigede ikke har kunnet eller kan disponere over Policerne uden ved Forfald, ved Fratræden eller Arvingerne ved Dødsfald.

Udover nævnte Livsforsikrings-Policer er der ikke tegnet flere."

Den 6. december 1948 fremsendte Statsanstalten for Livsforsikring til prokurist Nielsen en opstilling over de tegnede forsikringer, hvilken opstilling den 7. december samme år af A. Rindom og Restorff A/S videresendtes til Direktoratet for Københavns Skattevæsen.

Af Statanstaltens opstilling i forbindelse med en under nærværende sager fremlagt skematisk opstilling fremgår, at der er tegnet følgende forsikringer for direktør Mungsfeldt:

| tegningsdag: | kapitalindskud: | sum: | udløb og udbetalt: |
|---|---|---|---|
| 24/3 1938 | kr. 11.999,94 | kr. 13.725,00 | juni 1943 |
| 30/3 1940 | - 9.041,00 | - 10.000,00 | 30/3 1945 |
| 11/12 1940 | - 29.966,00 | - 33.100,00 | 11/12 1945 |
| 25/3 1942 | - 24.999,00 | - 27.575,00 | 25/3 1947 |
| 3/3 1944 | - 15.000,00 | - 16.660,00 | 3/3 1952 |

I selskabets ovennævnte skrivelse af 7. december 1948 oplyses det, at den førstnævnte police med firmaets tilladelse er hævet i juni 1941 med 12.383 kr. til brug ved et ejendomskøb. I skrivelse af 21. november 1949 fra selskabet til Direktoratet for Københavns Skattevæsen oplyses det derhos, at der udover de nævnte forsikringer den 18 juni 1945 er indbetalt 9000 kr. 50 øre til køb af en livrente for direktør Murgsfeldt.

**Om de for prokurist Nielsen tegnede livsforsikringer fremgår af de ovennævnte opstillinger følgende:**

| tegningsdag: | kapital indskud: | sum: | udløb og udbetalt: |
|---|---|---|---|
| 22/3 1938 | kr. 10.000,00 | kr. 7.500,00 | 22/3 1948 |
| 22/3 1938 | - - | - 7.500,00 | 22/3 1948 |
| 24/6 1940 | - 5.999,00 | - 6.666,00 | 24/6 1945 |
| 30/12 1940 | - 9.999,00 | - 11.095,00 | 30/12 1945 |
| 23/5 1940 | - 7.500,00 | - 8.314,00 | 23/5 1947 |
| 31/3 1944 | - 10.001.00 | - 10.762.00 | 31/3 1952 |

I skrivelsen af 21. november 1949 oplyses det, at der for de 2 policer pr. 22. marts 1938 blev hensat et beløb på 10.000 kr. til betaling af præmierne, idet disse policer var tegnet med en kvartårlig præmie af 398 kr. 40 øre. Det resterende beløb, der manglede i præmiebetaling er så betalt af firmaet efterhånden; udover de nævnte forsikringer er der den 27. juni 1945 indbetalt 6000 kr. til køb af overlevelsesrente. Det hedder endvidere i skrivelsen: "- - - at alle de policer, der er tegnet af firmaet, udelukkende var tegnet i pensions øjemed, og at policerne har været deponeret hos formanden for selskabet, landsretssagfører Tage H. Carstensen, indtil fratræden finder sted eller efter det 65de år. - - - ", og i erklæring af 16. november 1949 fra landsretssagfører Carstensen siges det:

"På given foranledning bekræfter jeg herved, at provenuet af 2 policer i Statsanstalten for Livsforsikring Sg. VII 2257 og Sg. VII 2258 a 7.500 kr., hvilke policer er tegnet i pensionsøjemed for prokurist Jul. Nielsen, beror

**379**

hos mig i min egenskab af formand for bestyrelsen for A. Rindom & Restorff A/S."

Der førtes i den følgende tid af prokurist Nielsen på selskabets vegne forhandlinger med Direktoratet for Københavns Skattevæsen om den skattemæssige ordning af forholdet, hvilke forhandlinger efter Nielsens fratræden på grund af alder i 1950 fortsattes af selskabets hovedbogholder S. Hougaard Larsen. Under disse forhandlinger antoges det fra skattemyndighedernes side, at den etablerede pensionslignende ordning omfattedes af de i cirkulære fra Statens Ligningsdirektorat af 14. oktober 1939 omhandlede ekstraordinære henlæggelser til pensionsfonds, og i et møde den 17. februar 1951, hvor Hougaard Larsen mødte for selskabet, meddelte man, at man ville godkende en ordning, hvorefter de betalte kapitalindskud på livsforsikringerne tillodes afskrevet over en periode på 10 år, og der udregnedes på dette grundlag ændrede skatteansættelser for skatteårene 1939/40 til 1946/47.

Bogholder Hougaard Larsen udarbejdede herefter den 27. februar 1951 en redegørelse for de førte forhandlinger, som samme dag forelagdes på et bestyrelsesmøde. Det hedder herom i forhandlingsprotokollen:

"Direktør Mungsfeldt oplyste, at skattevæsenet har rejst krav om skat af de livsforsikringer, som er tegnet i pensionsøjemed for direktør Mungsfeldt selv og for prokurist Jul. Nielsen. Det besluttedes at forelægge spørgsmålet for landsretssagfører la Cour og bede ham om en udtalelse."

Skattevæsenets forslag indebar, at selskabet skulle efterbetale godt 30.000 kr. i skat.

I marts 1951 forelagde landsretssagfører Carstensen sagen for landsretssagfører J. la Cour og i skrivelse af 4. august 1951 fra landsretssagfører Carstensen til direktør Mungsfeldt siges det:

"Efter at have haft en længere konference med landsretssagfører la Cour må jeg desværre meddele, at der næppe vil være nogen mulighed for at få nedbragt skattevæsenets krav i anledning af selskabets pensionsordning med visse højerestående funktionærer.

Landsretssagfører la Cour vil fremsende en skriftlig redegørelse for sine undersøgelser og det resultat, han er kommet til, men da der kan gå nogle dage, inden denne redegørelse foreligger, vil jeg allerede nu tilråde selskabet at betale det afkrævede beløb med renter.

Jeg tilbagesender rodekontorets skrivelse af 19. f. m. med bemærkning, at jeg har en aftale med rodekontoret om, at fristen den 1. august ikke skal betragtes som absolut."

Den 8. august samme år fremsendte landsretssagfører la Cour herefter følgende redegørelse til landsretssagfører Carstensen:

"Efter at have arbejdet med den af Dem med Deres brev af 1. marts d. å. fremsendte skattesag vedrørende ovennævnte aktieselskab og efter en grundig overvejelse af de foreliggende forhold er jeg kommet til det resultat, at der ikke består nogen mulighed for at få selskabet fritaget for betaling af de pålignede skatteforhøjelser.

Det fremgår af det materiale, De har tilstillet mig, at skattedirektoratet ved beregningen af de omtalte forhøjelser har behandlet selskabet således, at dette stilles, som om det i forvejen havde indgivet de foreskrevne ansøgninger til Statens Ligningsdirektorat om afskrivning på de i årene 1938 ff. foretagne indbetalinger på livs policer til fordel for selskabets direktør og prokurist.

Jeg har undersøgt, om det ved en anden afskrivningsmåde end den af direktoratet fulgte, som i øvrigt svarer til den almindelige, skulle være muligt at nå et for selskabet gunstigere resultat. Mine undersøgelser har imidlertid vist, at den af skattevæsenet anvendte metode i dette tilfælde giver det for selskabet gunstigste resultat. Under disse omstændigheder vil der efter min opfattelse ikke foreligge andre muligheder for selskabet end at betale de pågældende skatteforhøjelser, som ikke inkluderer nogen bøde og - så vidt jeg kan se - heller ikke nogen rente af den for lidt erlagte skat."

Selskabet betalte herefter i den følgende tid en del af skattebeløbet.

Blandt andet i anledning af at direktør Mungsfeldt påtænkte at trække sig tilbage, ansattes direktør C. Agner, der tidligere havde været ansat som direktør for et andet af de af direktør H. P. Hjen Hansen beherskede selskaber, som meddirektør i A. Rindom & Restorff A/S. Efter at han, formentlig på foranledning af direktør F. Hjen Hansen, der efter direktør H. P. Hjen Hansens død havde overtaget dennes aktiemajoritet i selskabet, havde undersøgt skattesagen, fremsendte han den 15. september 1952 sålydende skrivelse til direktør F. Hjen Hansen:

"Efter vor samtale i lørdags har jeg for første gang tænkt nærmere over skattesagen R & R, hvis detaljer jeg egentlig kun kender gennem Deres udtalelser.

Af brevet af 8. august 1951 fra landsretssagfører Jacob la Cour fremgår det, at sagen drejer sig om, at skattedirektoratet har nægtet at godkende afskrivning på de i årene 1938 ff foretagne indbetalinger på livspolicer til fordel for selskabets direktør og prokurist.

Det forekommer mig, at De har ret i, at de nævnte herrer selv og ikke selskabet må bære følgerne af skattedirektoratets holdning, og hvis det kun drejer sig om, at d'herrer er sluppet fri for at betale indkomstskat af deres tantieme, fordi beløbene i stedet for at blive udbetalt til d'herrer er anvendt som indbetaling på livspolicer, når skattedirektoratet nægter at godkende denne transaktion.

Men hvorfor opstår først nu den tanke, at direktør og prokurist ikke kan slippe for indkomstskat på selskabets bekostning, thi det havde efter min mening været naturligt, at dette standpunkt var blevet indtaget fra selskabets side i samme øjeblik som skattedirektoratets standpunkt blev bekendt.

**380**

Hvorfor har hverken afdøde direktør HPHH eller landsretssagfører Tage H. Carstensen, som er selskabets formand, tænkt på og gjort gældende, at direktør og prokurist selv må betale indkomstskat af deres tantieme, når skattedirektoratet ikke godkender, at beløbene anvendes til indbetaling på livspolicer? Er der af selskabet afskrevet beløb udover de beløb, som direktør og prokurist havde tilgode for tantieme i de pågældende år og er det disse afskrivninger, som ikke kan godkendes af skattedirektoratet? Spørgsmålet er nærliggende, da ethvert tantiemebeløb til direktør og prokurist såvidt jeg ved i almindelighed er fradragsberettiget.

Overfor mig har dir. CM udtalt, at det ikke er ham og prokuristen, men R & R som skal betale, fordi de pågældende indbetalinger var en form for pensionering, som afdøde HPHH havde bestemt skulle anvendes i dette tilfælde."

Landsretssagfører Tage H. Carstensen gjorde i en skrivelse af 17. september 1952 direktør Mungsfeldt bekendt med de stedfundne drøftelser, hvorom det i skrivelsen blandt andet siges:

"Spørgsmålet om efterbetaling af skat i anledning af de for Dem og prokurist Jul. Nielsen tegnede livsforsikringer har jeg drøftet flere gange med direktør Hjerl Hansen, der stadig fastholder, at De og Jul. Nielsen må være pligtige til at tage del i skattebetalingerne, for så vidt angår de forsikringer, der er tegnet i stedet for udbetaling af tantieme. Havde d'herrer fået udbetalt disse beløb i tantieme, skulle De have betalt skat af beløbene.

Denne skrivelse besvarede direktør Mungsfeldt den 22. september 1952, idet han under henvisning til de i forhandlingsprotokollen indeholdte referater protesterede mod det af direktør F. Hjen Hansen og landsretssagfører Carstensen nu indtagne standpunkt. Det siges herefter i skrivelsen:

"Dette var en billig Ordning for Selskabet, som lod Nielsen og mig pensionere os selv ved den indtjente Tantieme og der står intet Steds noget om, at vi skulde betale en eventuel senere pålignet Skat. Denne Risiko påtog Selskabet sig for at slippe for at betale noget til Pensionen.

I Deres Brev af 4. August 1951 til mig og i Deres Brev af 9. August til Rindom & Restorff fremgår det klart, at Skattekravet påhviler R & R. I Bestyrelsesmødet den 27. Februar 1951 fremlagde Hougaard en Beretning om Sagen - - -, at i sin Tid, da Ordningen var lavet, var det hele gået igennem Landsretssagfører Carstensen, som undersøgte Holdbarheden af Ordningen - rent skattemæssigt set - og sagde god for den. I øvrigt er Skattevæsenet jo indgået paa, at de betalte Præmier fradrages i Selskabets Indtægt over en 10-årig Periode - - -

I skrivelse af 23. september samme år fra landsretssagfører Carstensen til direktør Mungsfeldt og af 30. september fra direktør Mungsfeldt til landsretssagfører Carstensen drøftedes sagen yderligere, uden at der opnåedes enighed.

Direktør Mungsfeldt fratrådte sin stilling med udgangen af året 1952, og efter at der havde fundet nogle yderligere drøftelser sted mellem direktør Mungsfeldt og landsretssagfører Carstensen, skrev denne den 24. april 1953 følgende til Direktoratet for Københavns Skattevæsen:

"Som formand for A. Rindom & Restorff A/S's bestyrelse anmoder jeg herved Direktoratet om at genoptage den skattesag, i hvilken

Direktoratet den 17. marts 1951 har udsendt 12 berigtigede skattebilletter for årene 1939/40-1949/50.

Berigtigelserne har fundet sted, fordi der i årene 1938-48 var blevet tegnet policer til gunst for selskabets direktør, Carl Mungsfeldt, og prokurist, Aage Jul. Nielsen.

Nævnte er ikke længere ansat i selskabet, direktør Mungsfeldt ikke mere siden den 1. januar 1953. Efter dette tidspunkt blev denne skattesag gjort til genstand for en nærmere undersøgelse, hvorved det viste sig, at Mungsfeldt og Jul. Nielsen, der dengang har ført forhandlingerne med Direktoratet, har undladt at give Direktoratet tilstrækkelige oplysninger, og at de har gjort dette for at gavne sig selv. - - -

Jeg er overbevist om, at Skattedirektoratet ville have set lidt nærmere på sagen, hvis Mungsfeldt og Jul. Nielsen havde givet foranstående oplysninger."

Dette brev fulgtes op af en skrivelse af 7. august 1953 fra A. Rindom & Restorff A/S's advokat, landsretssagfører I. C. Mortensen, til Direktoratet for Københavns Skattevæsen, hvori det blandt andet siges:

"De første policer blev tegnet af selskabet i 1938, og den gang forelaa endnu ikke Statens Ligningsdirektorats cirkulære. Selskabet og funktionærerne havde den fejlagtige opfattelse, at arbejdsgiverens ekstraordinære kapitalindskud kunne behandles som almindelige handelsomkostninger, men funktionærerne alligevel ikke var skattepligtige med hensyn til kapitalindskudet til forsikringsselskabet. Af samme fejlagtige opfattelse lod man sig lede, da de senere policer blev tegnet. Man fik hverken vejledning hos Statsanstalten for Livsforsikring eller så de omtalte meddelelser fra Statens Ligningsdirektorat og Ligningsrådet.

Skattedirektoratet har, da det efter krigen reviderede skattebilletterne for årene 1939/40-1949/50, behandlet selskabet, som om de foreskrevne ansøgninger til Statens Ligningsdirektorat var blevet indgivet - og bevilget. Men denne fremgangsmåde kan ikke tiltrædes.

Forudsætning for, at skattedirektoratet behandler sagen som om ansøgninger i sin tid var blevet indgivet til Statens Ligningsdirektorat, må være, at selskabet er indforstået med denne fiktion, og det siger sig selv, at selskabet ikke kan give sit samtykke hertil, når forholdet er, at selskabet, hvis det dengang havde vidst, hvad det nu

**381**

ved, ville have sagt til Mungsfeldt og Jul. Nielsen, at det måtte være deres sag selv at tegne policer. Selskabet ville altså aldrig være kommet i den situation at indgive ansøgninger til ligningsdirektoratet.

Forudsætning for, at skattedirektoratet anvender de ovennævnte bestemmelser, må endvidere være, at ligningsdirektoratet, hvis der var blevet indgivet ansøgninger, havde bevilget dem, og de var ikke blevet bevilget, hvis ligningsdirektoratet var kommet til det resultat, at der forelå selvpensionering. Jeg henviser i denne forbindelse til Helkett, opgørelse af den skattepligtige indkomst til staten, 5. udgave, s. 159 f. En selvpensionering kan foreligge, selv om det er selskabet, der har tegnet policen til fordel for funktionæren, men foreligger selvfølgelig under alle omstændigheder, såfremt funktionæren har tegnet policen selv. - - -

**Afsluttende skal bemærkes:**

Af de beløb, Statsansalten for Livsforsikring har fået overladt, er der oprindelig hverken blevet betalt indkomstskat af selskabet eller af funktionærerne. Der kan ikke være tvivl om, at det var uholdbart. - - -"

Da direktør Mungsfeldt og prokurist Nielsen begge boede i Frederiksberg kommune, oversendte Direktoratet for Københavns Skattevæsen den 4. februar 1954 sagerne til Statens Ligningsdirektorat, der indkaldte direktør Mungsfeldt til et møde den 29. juni 1954. Direktør Mungsfeldt henvendte sig herefter til landsretssagfører Jess Lassen, der den 28. juli 1954 i en skrivelse til Statens Ligningsdirektorat redegjorde for sagen, og under henvisning til det i 1951 med A. Rindom & Restorff afsluttede forlig om skattebetalingen sluttede således:

"Direktør Mungsfeldt måtte herefter gå ud fra, at sagen som sådan var afsluttet i enhver henseende, og uanset de drøftelser der har været på et langt senere tidspunkt og som i realiteten skyldes at selskabets økonomiske forhold ikke er så stærke som de var tidligere.

For mig er sagen klar; selskabet påtog sig i sin tid en forpligtelse som man regnede med kunne afskrives over driftsregnskabet. Denne beregning viste sig at være forkert, og man vil nu søge at vælte en betydelig del af byrden over på en mand, der i mere end 50 år har tjent koncernen som en loyal medarbejder, der har tilført denne særdeles betydelige værdier. - - -

I den følgende tid førtes påny en række forligsforhandlinger uden resultat og den 15. august 1956 fremsendte Statens Ligningsdirektorat sagerne til Skattedepartementet med en skrivelse, hvori det blandt andet hedder:

"Ved at fremsende hosfølgende sager vedrørende fhv. direktør C. H. Mullgsfeldt, Maglekildevej 8, Frederiksberg, og afdøde prokurist Aage J. Nielsen, Dronning Olgasvej 9, Frederiksberg, skal man meddele, at de pågældende efter ligningsrådets formening har selvangivet urigtigt i flere skatteår. - - -

Man har derfor foreslået de pågældende et forlig, hvorefter indkomstansættelserne skulle forhøjes med følgende beløb:

Direktør Mungsfeldt:

```
Skatteåret 1939/40           12.000 kr.
    -      1941/42           38.967 -
    -      1943/44           25.000 -
    -      1945/46           15.000 -
    -      1946/47            9.000 -
```

og prokurist Aage J. Nielsen med følgende beløb:

```
Skatteåret 1939/40           10.553 kr.
    -      1941/42           15.998 -
    -      1943/44            7.500 -
    -      1945/46           10.000 -
    -      1946/47            3.000 -
```

På grund af sagens karakter har man tilbudt, at opgørelsen af de for lidt erlagte skatter kunne foretages med successive skattefradrag og for boet efter prokurist Aage J. Nielsens vedkommende uden tillæg i henhold til statsskattelovens § 43, 2. punktum. De pågældende har imidlertid ikke ønsket at indgå på forlig, idet de betragter den af selskabet trufne forligsmæssige ordning som endelig.

- - - Man skal herefter på ligningsrådets vegne indstille, at der indledes retsforfølgning mod direktør Mungsfeldt og mod prokurist Aage J. Nielsens dødsbo, repræsenteret af hans i uskiftet bo hensiddende enke, fru Anita Nielsen, Dronning Olgasvej 9, med krav om efterbetaling af den for lidt erlagte skat i henhold til § § 42-43 i statsskatteloven. - - -

De for lidt erlagte skatter uden successive skattefradrag udgør for direktør Mungsfeldts vedkommende:

```
Til Staten ......................................... 39.127,20 kr.
 - den fælleskommunale udligningsfond ............  5.748,67 -
 - Frederiksberg kommune inkl. kirkeskat ........  1.141,02 -
 - Københavns kommune inkl. kirkeskat ...........  17.435,36 -
                                                  --------------
                                          Ialt .. 63.452.25 kr.
                                                  --------------
```

For afdøde prokurist Aage J. Nielsens vedkommende udgør de for lidt erlagte skatter uden sukcessive skattefradrag:

```
Til Staten ........................................  9.965,42 kr.
 - den fælleskommunale udligningsfond .............  1.844,59 -
 - Frederiksberg kommune inkl. kirkeskat .........  4.521,77 -
                                                    --------------
                                          Ialt .. 16.331.78 kr.
                                                    --------------
```

Under disse den 4. december 1958 anlagte sager, der i medfør af retsplejelovens § 286 er behandlet under et har Skattedepartementet, Direktoratet for Københavns Skattevæsen og Frederiksberg kommune herefter nedlagt påstand på, at direktør C. H. Mungsfeldt og fællesboet efter direktør C. H. Mungsfeldt og afdøde hustru Alma Charlotte Kathrine Mungsfeldt ved landsretssgfører E. Spangenberg som eksekutor testamenti tilpligtes at betale de ovennævnte Staten og den fælleskommunale udligningsfond, Københavns kommune og Frederiksberg kommune tilkommende beløb ialt 63.452 kr. 25 øre med

**382**

renter 5 pct. p. a. fra sagens anlæg, til betaling sker, medens Skattedepartementet og Frederiksberg kommune har nedlagt påstand på, at sagsøgte fru Anib Nielsen som hensiddende i uskiftet bo efter afdøde prokurist Aage Jul. Nielsen tilpligtes at betale de ligeledes nævnte Staten og den fælleskommunale udligningsfond eg Frederiksberg kommune tilkommende beløb ialt 16.331 kr. 76 øre med renter 5 pct. p. a. fra sagens anlæg, til betaling sker.

De sagsøgte, der ikke har rejst indvendinger mod størrelsen af de påståede beløb, har påstået frifindelse, principalt med den begrundelse, at de rejste skattekrav over for de sagsøgte må anses for forældede efter lov nr. 274 af 22. december 1908, subsidiært med den begrundelse, at den mellem A. Rindom & Restorff A/S og Direktoratet for Københavns Skattevæsen i 1951 trufne forligsmæssige afgørelse er bindende og at de efter den trufne forligsmæssige afgørelse rejste krav over for de sagsøgte er forældede. Mere subsidiært påstås frifindelse med den begrundelse, at de tegnede livsforsikringspolicer er tegnet i pensionshensigt, således at de sagsøgte ikke var indkomstskattepligtige af de pågældende beløb ved udbetalingen aflivsforsikringssummerne i de pågældende år.

De sagsøgte har endelig mest subsidiært nedlagt påstand på frifindelse mod betaling af et mindre beløb efter rettens skøn.

A. Rindom & Restorff A/S, der nu er et bifirma under E. F. Esmann A/S, og som i 1957 fra Skattedepartementet har fået tilbagebetalt de af selskabet erlagte statsskattebeløb med renter ialt 18.045 kr. 18 øre, dog med forbehold om tilbagebetaling, såfremt det under nærværende sag statueres, at de omhandlede indskud på livsforsikringer er at anse for pensioneringsydelser erlagt af selskabet, er indtrådt som biintervenient under sagen og har udtalt sig til støtte for sagsøgerne.

Under domsforhandlingen er der afgivet partsforklaring af direktør Mungsfeldt og vidneforklaring af ekspeditionssekretær i Direktoratet for Københavns Skattevæsen Børge Dalberg, kontorchef Sigurd Hougaard Larsen, landsretssagfører Tage H. Carstensen og fhv. direktør Hans Christian Jensen Agner.

Direktør Mungsfeldt har forklaret, at han blev ansat i A. Rindom & Restorff i 1899 og siden 1913 har været direktør i selskabet, fra 1920 enedirektør. Han fik i denne stilling i henhold til sin kontrakt fast løn og derudover i tantieme oprindelig 10 pct. senere 12 og 15 pct. af nettofortjenesten efter at der var udbetalt 5 pct. i udbytte til aktionærerne og henlagt 1 pct. til reservefond. Direktør H. P. Hjen Hansen, med hvem sagsøgte havde et nært venskab og med hvem samarbejdet var gnidningsløst, havde aktiemajoriteten og skulle hvert år godkende tantiemebeløbet. Samarbejdet med landsretssagfører Carstensen var også det bedst mulige, og sagsøgte har altid ladet sine ideer komme alle Hjerl Hansens selskaber til gode. Det var direktør H. P. Hjerl Hansen, der ville have etableret en pensionsordning for funktionærerne, og det var også ham, der, da det viste sig, at der ikke kunne opnås en ordning med pensionsforsikringsanstalten for sagsøgte og prokurist Nielsen, foreslog at disse skulle give afkald på deres tantieme mod at der hvert år anvendtes et nogenlunde tilsvarende beløb til indbetaling på livsforsikringer, idet han oplyste, at sagsøgte og Nielsen ved denne ordning ville slippe for skattepligt for så vidt angik disse indbetalinger. Sagsøgte protesterede først mod denne ordning, men gik til sidst med til den. Direktør Hjen Hansen tilintetgjorde herefter sagsøgtes ansættelseskontrakt, da denne jo ved den etablerede ordning var ændret, og han ikke ville risikere, at sagsøgte med støtte i kontrakten uanset indbetalingerne til pensionering desuagtet stillede krav om tantieme. Det blev ikke omtalt, hvorvidt ordningen kunne medføre skattepligt for selskabet. De tegnede policer skulle opbevares hos formanden for bestyrelsen indtil de kunne udbetales ved 65 års alder eller ved død. Den foreslåede ordning blev forelagt for bestyrelsen, der gik ind for den, og godkendt af generalforsamlingen. I 1948 rettede skattevæsenet henvendelse til selskabet i anledning af formueopgørelsen pr. 73. juli 1945 og de fra Statsanstalten indhentede oplysninger, og denne henvendelse besvarede sagsøgte på selskabets vegne med skrivelsen af 9. september samme år. Sagsøgte har ikke deltaget i de i årene 1948-51 førte forhandlinger, idet disse førtes af prokurist Nielsen og efter dennes afgang af Hougaard Larsen, der var ansat af sagsøgte. Hougaard Larsen forelagde skattevæsenets forligsforslag for sagsøgte, der drøftede det med landsretssagfører Carstensen, der tilrådede straks at betale skattebeløbet, hvorefter selskabet accepterede forliget og påbegyndte indbetalingen.

Ekspeditionssekretær Dalberg har forklaret, at skattevæsenet først i 1948 begyndte at gennemgå formueopgørelserne for selskaber, og at han behandlede A. Rindom & Restorffs formueopgørelse. Han har kun telefonisk talt med direktør Mungsfeldt, idet forhandlingerne i øvrigt fra selskabets side førtes af prokurist Nielsen, der oplyste, at de foretagne indbetalinger var sket til

afgørelse af pensionsforpligtelser over for direktør og prokurist Der blev derimod ikke talt om tantieme i den forbindelse, og selskabets forhandlingsprotokol blev ikke forelagt skattevæsenet, der heller ikke på det tidspunkt havde interesse for at se den, da man gik ud fra, at oplysningerne om, at der forelå en pensionsordning var korrekt. Der blev overhovedet ikke fra skattevæsenets side rejst tvivl herom, ligesom man heller ikke fandt noget usædvanligt i, at de indbetalte beløb var af vekslende størrelse. Der var faktisk allerede inden Hougaard Larsen overtog forhandlingerne enighed om den forligsmæssige ordning, således at det kun var det afsluttende møde, denne deltog i. Det var sædvanligt i lignende tilfælde, at et selskab lod sig repræsentere af en direktør eller prokurist.

Kontorchef Hougaard Larsen har forklaret, at han som assistent hos statsaut. revisor Johs. G. Andersen fra foråret 1947 havde med revisionen af Rindom & Restorffs

**383**

regnskaber at gøre. Han havde ikke noget nærmere kendskab til de tegnede livsforsikringer, ud over at han i 1949 havde drøftet dem med revisor Andersen, der sagde, at ordningen havde været forelagt for landsretssagfører Carstensen, og skulle træde i stedet for den pensionsordning, der var gældende for det øvrige personale. Vidnet vidste på det tidspunkt ikke noget om, hvorvidt policerne var tegnet for tantiemebeløb.

I de år vidnet reviderede regnskaberne gav selskabet intet overskud, og der blev derfor ikke i den tid udbetalt tantieme. I 1951 blev vidnet ansat i Rindom & Restorff som hovedbogholder, og han havde et møde med daværende fuldmægtig Dalberg om skattespørgsmålet. Der blev ikke ved den lejlighed talt om tantieme eller om, at der kunne rejses krav over for direktør Mungsfeldt eller prokurist Nielsen. Vidnet mener ikke, at skattevæsenet har haft lejlighed til at se selskabets protokoller, og han mener heller ikke, at direktør Mungsfeldt eller prokurist Nielsen har forholdt skattevæsenet oplysninger af betydning for sagens afgørelse. Efter mødet i skattevæsenet udarbejdede vidnet en redegørelse til bestyrelsen, men havde ikke lejlighed til at drøfte denne i noget bestyrelsesmøde, og han fik ikke at vide, om selskabet faktisk tiltrådte forliget. Han fratrådte sin stilling den 30. september 1951.

Landsretssagfører Carstensen har forklaret, at direktør Mungsfeldt fortalte ham, at han havde fået at vide, at hans tantieme kunne blive konverteret til kapitalindskud på livsforsikringer, og at dette ville medføre skattefrihed for de nævnte beløb både for Mungsfeldt og for selskabet. Vidnet drøftede spørgsmålet med to forsikringsfolk, der sagde, at en sådan ordning måske ikke var helt lovmedholdelig, men faktisk godkendtes af skattevæsenet. Vidnet ved ikke om forslaget stammer fra direktør H. P. Hjerl Hansen, og han husker ikke, om han har drøftet det med denne, men vil formode det. Han formoder, at der engang har været en ansættelseskontrakt for direktør Mungsfeldt, men han ved ikke, om denne havde et kontraktligt krav på tantihme, eller om der til grund for "pensionsordningen" lå noget skriftligt. Han har ikke været med til at fastsætte tantiemebeløbene, men fik oplysning om disse af direktør Mungsfeldt og drøftede dem vistnok derefter med direktør Hjerl Hansen. Når der i forhandlingsprotokollen skiftevis står pension og tantieme, skyldes dette, at det jo faktisk var begge dele, der forelå. Vidnet mener, at de beløb, der anvendtes til indbetaling på policerne svarede til den tantieme, der ellers ville være blevet udbetalt. Policerne opbevaredes på vidnets kontor, da han havde fået at vide, at det var en betingelse for at ordningen kunne godkendes, at de sikrede var ude af stand til at råde over dem. Der var dog vist nok ikke prohibitivpåtegning på policerne, og vidnet husker, at direktør Mungsfeldt fik tilbagekøbsværdien på en af dem udbetalt, men ikke de nærmere omstændigheder herved. Han er dog sikker på, at det ikke er sket uden efter drøftelse med direktør Hjen Hansen. Vidnet havde kendskab til de i 1948-51 førte forhandlinger med skattevæsenet og har indhentet en erklæring fra landsretssagfører la Cour. Han undrer sig over, at det ikke skulle være blevet oplyst over for la Cour, at det var tantiemebeløb, det drejede sig om, men han husker ikke om forhandlingsprotokollen har været forevist for skattevæsenet. Vidnet mener ikke, at der nogen sinde fra selskabets side har foreligget en egentlig godkendelse af forliget, men hvis vidnet var blevet anmodet om at tage stilling til det, ville han havde tilrådet, at man accepterede.

Fhv. direktør Agner har forklaret, at han, der siden 1917 havde været ansat i E. F. Esmann A/S, blev ansat som direktør i Rindom & Restorff, efter at det ved en kritisk revision havde vist sig, at der var underskud. Under den undersøgelse vidnet i den anledning foretog, studsede han over den skat, selskabet betalte, og fik da at vide, at det drejede sig om en efterbetaling i anledning af pensionsordningen, og dette gav anledning til, at han skrev brevet af 15. september 1952 til direktør F. Hjerl Hansen.

Til begrundelse for deres påstande har sagsøgerne gjort gældende, at de sagsøgte principielt efter statsskattelovens § 4 c har været indkomstskattepligtige af ethvert beløb, der er udbetalt dem af selskabet, og at bevisbyrden for at dette ikke skulle være tilfældet påhviler de sagsøgte, der således må godtgøre, både at der har foreligget en pensionsordning, og at denne i den form, den havde, ville have medført skattefrihed. Om en ordning som den omhandlede, der, som det fremgår af cirkulæret af 14. oktober 1939, der på dette punkt fastslår den hidtil gældende praksis, forudsætter, at det var selskabet, der afholdt udgiften ved tegningen af policerne, ville være blevet godkendt, hvilede udelukkende på Ligningdirektoratets skøn. Det må imidlertid anses for bevist, at udgifterne til tegning af forsikringerne i virkeligheden er afholdt af de de sagsøgte tilkommende tantihmer, og at der således er tale om en selvpensionering, for hvilken der ikke haves fuld fradragsret, hvilket også støttes af, at de sagsøgte i realiteten har kunnet råde over policerne. Direktør Mungsfeldt har således i 1941 fået udbetalt tilbagekøbsværdien af en først i 1943 forfalden forsikring. I hvert fald har den etablerede ordning haft et så løst og usikkert præg, at det er givet, at Ligningsdirektoratet ikke ville have godkendt den, såfremt man havde givet korrekte oplysninger.

Over for de af de sagsøgte fremsatte forældelsesindsigelser har sagsøgerne gjort gældende, at forældelsesfristen efter 1908-lovens § 3 først regnes fra den dag, da kreditor var i stand til at gøre sit krav gældende, og at dette tidspunkt tidligst kan sættes til den 29. juni 1954, idet forældelsen først kunne begynde at løbe, når de af selskabet i 1953 givne oplysninger var verificerede. Skattevæsenet fik først, efter at direktør Mungsfeldt havde været indkaldt til møde, et sådant kendskab til forholdene, at kravet kunne fremsættes. En undersøgelse af direktørs Mungsfeldts selvangivelser for tiden før 1938 ville ikke have givet vejledning, da det ikke heraf fremgik, hvad der var løn, og hvad der var tantieme. Det er

**384**

i øvrigt antaget i praksis, at forældelsesfristen først skal regnes fra det tidspunkt, da forligsforhandlingerne brød sammen. I den foreliggende sag, der har sin oprindelse i en i henhold til loven af 22. juli 1945 om ekstraordinær formueopgørelse indgivet opgørelse, kan der i øvrigt slet ikke være tale om, at forældelse kan være indtrådt, da den ved lov nr. 208 af 7. juni 1952 fastsatte forældelsesfrist på 10 år må være gældende, og den første oplysning, der kunne give anledning til at antage, at der var grund til at foretage en nærmere undersøgelse i sagen, er A. Rindom & Restorffs skrivelse af 7. december 1948 og Statsanstaltens dermed fulgte opstilling af 6. december 1948. Den i 1951 trufne forligsmæssige afgørelse kan ikke ændre forældelsesfristerne, og man kan heller

ikke antage, at denne afgørelse skulle være bindende for skattevæsenet, da den er truffet på grundlag af fejlagtige oplysninger, og forliget i øvrigt er indgået mellem andre parter. Der kan ikke i forliget indlægges noget løfte til fordel for de sagsøgte, og disse, der selv er ansvarlige for de fejlagtige oplysninger, kan navnlig ikke støtte ret herpå.

Heroverfor har de sagsøgte anført, at forældelse er indtrådt i henhold til 1908-lovens § 1, nr. 4, og § 2, idet forældelsesfristen for de pågældende skattebeløb, der refererer sig til skatteårene 1939/40, 1941/42, 1943/44, 1945/46 og 1946/47, principielt må regnes fra de normale rettidige indbetalingsdage for de pågældende skattebeløb, og at den seneste af disse har ligget i 1947. Det er ubestridt, at der ikke foreligger en anerkendelse af gælden. I hvert fald har skattevæsenet ved landsretssagfører Carstensens skrivelse af 24. april 1953 modtaget alle fornødne oplysninger om de sagsøgtes forhold, således at forældelsesfristen senest må regnes fra dette tidspunkt. Den i 1952 fastsatte særlige forældelsesfrist på 10 år kan ikke komme til anvendelse i nærværende sag, da kravet ikke rejses på grundlag af nogen formueopgørelse for de sagsøgte, idet det var selskabets ekstraordinære formueopgørelse, der gav anledning til undersøgelse. Selv om man antager, at begyndelsestidspunktet forskydes i de tilfælde, hvor der foreligger urigtige eller ufuldstændige oplysninger, kan man ikke tage datoen den 7. december 1948 som udgangspunkt, da skattevæsenet allerede ved skrivelsen af 9. september 1948 fra selskabet havde fået sådanne oplysninger, at man ved sædvanlig agtpågivenhed ville have været i stand til at gøre kravet gældende, da en sammenligning med de af direktør Mungsfeldt og prokurist Nielsen for de pågældende og tidligere skatteår indgivne selvangivelser ville have vist, at de hidtidige tantiemebeløb ikke mere udbetaltes de pågældende.

De sagsøgte har endvidere gjort gældende, at der i marts 1951 mellem selskabet og skattedirektoratet er truffet en endelig og bindende afgørelse. Da den rejste skattesag mod A. Rindom & Restorff A/S ikke har medført ændringer i selvangivelserne for de sagsøgte fra skattemyndighedernes side, uagtet disse har fået alle oplysninger, de har haft brug for for at kunne rejse deres krav, gøres det gældende, at kravene i relation til de sagsøgte er forældede, da der er gået mere end 5 år efter udløbet af det skatteår, hvor den forligsmæssige afgørelse blev truffet.

Til begrundelse for deres mere subsidiære påstand har de sagsøgte anført, at det var naturligt, at der i forbindelse med den almindelige pensionsordning for det øvrige personale blev truffet en ordning for direktøren og prokuristen. Den trufne ordning, hvorefter der blev tegnet kortvarige livsforsikringer for de sagsøgte, blev hvert af de pågældende år bevilget af den samlede bestyrelse og godkendt af direktør Hjerl Hansen, der ejede aktiemajoriteten. De tegnede policer var unddraget de begunstigedes dispositionsret, idet de opbevaredes hos formanden for selskabets bestyrelse, således at der har været truffet en gyldig pensionsordning for de pågældende.

Endelig har de sagsøgte til begrundelse for deres påstand om en nedsættelse af beløbet efter rettens skøn gjort gældende, at det ikke er påvist, at direktør Mungsfeldt eller prokurist Nielsen har søgt at skjule relevante oplysninger for skattevæsenet. Man har, da man lavede ordningen, ikke gjort sig klart, hvad der skulle lægges i ordene tantieme og pension. Skattevæsenet har ved behandlingen af selskabets sag i årene 1948-51 uden videre undersøgelse gået ud fra, at der forelå en pensionsordning, og det kan ikke lægges de sagsøgte til last, at skattemyndighederne har overset de foreliggende muligheder for at indhente de fornødne oplysninger.

Efter det således foreliggende finder retten det godtgjort, at kapitalindskudene på de tegnede livsforsikringer har været præsteret af de beløb, som ellers ville være blevet udbetalt direktør Mungsfeldt og prokurist Nielsen som tantieme, og at der således har foreligget en selvpensionering. Det må herefter lægges til grund, at der ikke har været etableret en pensionsordning af en sådan art, der kunne blive spørgsmål om, at de skete indbetalinger kunne fradrages i de pågældendes skattepligtige indkomst eller afskrives over en årrække.

Idet retten endvidere med sagsøgerne er enige i, at den med A. Rindom & Restorff A/S under urigtige forudsætninger trufne ordning ikke kan afskære sagsøgerne fra at rejse krav mod de sagsøgte, og at sagsøgerne først efter at have modtaget landsretssagfører Carstensens skrivelse af 24. april 1953 har haft mulighed for at iværksætte en undersøgelse af, om de havde noget krav mod de sagsøgte, og da der indtil efteråret 1955 har været forhandlinger løbende mellem parterne til klarlæggelse af sagen, samt da skattemyndighedernes behandling af denne herefter må betragtes som en helhed, findes forældelsesfristen ikke at kunne begynde at løbe fra noget tidligere tidspunkt end fra disse forhandlingers afslutning. Da dette tidspunkt i hvert fald ligger mindre end 5 år forud for sagens anlæg, er forældelse ikke indtrådt, og retten finder det herefter ufornødent at tage stilling til, om lov nr. 208 af 7. juni 1952 finder anvendelse på forholdet.

**385**

Da retten endvidere ikke mener at have mulighed for at foretage en skønsmæssig nedsættelse af kravet, vil de sagsøgte i det hele være at dømme efter sagsøgernes påstande. - - -

## Højesteret

### Højesterets dom.

Den indankede dom er afsagt af Østre Landsret.

I pådømmelsen har deltaget syv dommere: Frost (retsformand) Lorenzen, Trolle, Gjerulff, Tamm, H. A. Sørensen og le Maire.

For Højesteret har appellanterne påstået frifindelse. De indstævnte har påstået stadfæstelse.

Også for Højesteret har A. Rindom & Restorff A/S givet møde og udtalt sig til støtte for de indstævntes påstand.

For Højesteret drejer tvisten sig alene om, hvorvidt de indstævntes krav er forældet. Parterne er enige om, at dette ikke vil være tilfældet, såfremt den særlige forældelsesregel i lov nr. 208 af 7. juni 1952, som af de indstævnte anført, skal finde anvendelse på forholdet.

Appellanterne har over for de indstævntes anbringende om anvendelse af denne regel særlig anført, at den af den ekstraordinære formueopgørelse foranledigede sag havde fundet sin afslutning ved den forligsmæssige ordning, det blev tilbudt i mødet den 17. februar 1951, og i henhold til hvilken selskabet i den følgende tid foretog efterbetaling. Det var derfor en ny sag, der påbegyndtes, efter at der i 1953 fra selskabets side var blevet fremsat anmodning over for skattemyndighederne om en fornyet undersøgelse af den sluttede sag. Nærværende sag er derfor ikke rejst på det i loven af 1952 nævnte grundlag, og den ekstraordinære forældelsesregel - med den specielle baggrund, den havde i ophobningen af et meget stort antal sager - kan derfor ikke finde anvendelse.

Med hensyn til anvendelsen af den femårige forsendelsesregel har appellanterne for Højesteret gjort gældende, at landsretssagfører Mortensens skrivelse af 7. august 1953, der indeholdt en detaileret redegørelse - år for år vedrørende de til fordel for appellanten Mungsfeldt og prokurist Nielsen tegnede livsforsikringspolicer, i forbindelse med en supplerende skrivelse af 23. oktober s. å. har indeholdt alle fornødne oplysninger for skattevæsenet til opgørelse af skattepligten, samt at der ikke senere er fremkommet andre oplysninger af betydning, og de af landsretssagføreren anførte tal er også blevet lagt til grund af skattemyndighederne. Der er derfor ikke grundlag for at udskyde tidspunktet for forældelsesfristens begyndelse, og da der er hengået mere end fem år fra den 23.

oktober 1953 til sagens anlæg den 4. december 1958, er de rejste skattekrav forældet.

De indstævnte, der har erkendt, at der ikke efter modtagelsen af nævnte skrivelse af 23. oktober 1953 er fremkommet nye oplysninger af betydning, har over for appellanterne gjort gældende, at det var nødvendigt at verificere de i landsretssagfører Mortensens skrivelser indeholdte oplysninger, og at skattevæsenet end ikke kunne have fremsat sine krav, efter at Mungsfeldt havde været indkaldt til mødet den 29. juni 1954, idet hans advokat derefter afgav forskellige indlæg i sagen. Idet de løbende forhandlinger, der må anses for en helhed, herefter først kan anses sluttet på et tidspunkt, der ligger mindre end fem år forud for sagens anlæg, er de fremsatte krav ikke forældet.

Fem dommere - Frost, Trolle, Gjerulff, Tamm og le Maire - bemærker:

Under de foreliggende omstændigheder, hvor skattekravene over for Mungsfeldt og Nielsen blev rejst som følge af en fra A. Rindom & Restorff A/S i 1953 fremsat begæring om fornyet undersøgelse af den i 1951 afsluttede skattesag, findes det betænkeligt at bringe den i loven af 7. juni 1952 indførte ekstraordinære og i ganske særlige hensyn begrundede forældelsesregel til anvendelse.

Idet skattemyndighederne i oktober 1953 må anses at have været i stand til på grundlag af de fra landsretssagfører I. C. Mortensen modtagne oplysninger at gøre deres krav gældende imod appellanterne, jfr. lov nr. 274 af 22. december 1908 § 3, findes kravet at have været forældet ved sagens anlæg.

Disse dommere stemmer herefter for at tage appellanternes påstand til følge samt for at pålægge de indstævnte at betale sagens omkostninger for begge retter som nedenfor anført.

To dommere - Lorenzen og H. A. Sørensen - bemærker:

Skattemyndighederne måtte ved modtagelsen af skrivelserne af 7. august og 23. oktober 1953 fra aktieselskabets advokat tage i betragtning, at selskabets interesser i sagen var stridende mod appellanternes, og kunne derfor ikke lægge den i skrivelserne givne nye fremstilling af sagens faktiske omstændigheder til grund, før der var givet appellanterne lejlighed til at udtale sig. Det kunne - uanset den i skrivelserne indeholdte dokumentation ikke på forhånd udelukkes, at der fra appellanterne kunne fremkomme nye oplysninger, og det må være uden betydning, at det senere viste sig, at dette ikke skete. Som følge af det anførte findes det ikke at kunne statueres, at sagen den 4. december 1953 forelå således oplyst, at skattemyndighederne var i stand til at gøre kravet mod appellanterne gældende. Herefter findes kravet ikke at have været forældet ved sagens anlæg den 4. december 1958, og det bliver derfor ikke fornødent at tage stilling til det af de indstævnte i øvrigt anførte. Disse dommere stemmer herefter for at stadfæste dommen, for så vidt den foreligger Højesteret til prøvelse.

Der vil være at give dom efter stemmeflertallet.

**Thi kendes for ret:**

*Appellanterne, direktør C. H. Mungsfeldt og hans og afdøde hustru Alma Charlotte Kathrine Mungsfeldts fællesbo samt fru Anita Nielsen som hensiddende i uskiftet bo efter afdøde prokurist Aage L. Nielsen, bør*

### 386

*for tiltale af de indstævnte, Skattedepartementet, Direktoratet for Københavns Kommunes Skattevæsen og Frederiksberg kommune, i denne sag fri at være.*

*I sagsomkostninger for begge retter betaler indstævnte en for alle og alle for en til appellanten, direktør Mungsfeldt og fællesboet, 8000 kr., og de indstævnte, Skattedepartementet og Frederiksberg kommune, en for begge og begge for en til appellantinden, fru Anita Nielsen, 2000 kr.*

*Det idømte at udrede inden 15 dage efter denne højesteretsdoms afsigelse.*