# Exhibit 54

**U.2020.160**
**U.2020.160**
**TBB2020.52**

*Not identification between departments of a municipality. A notification to the National Population Register of a change of address could not be considered to also constitute a notification to Area*
*and the Urban Renewal Department of the same municipality. The municipality's claim for repayment under the Urban Renewal Act was therefore not time-barred or lapsed by inaction.*

*Common topics 2.9 and Housing types 4.*

In 2008, the municipality of C promised support for urban renewal of a property where A & B owned an apartment. With reference to section 29 of the Urban Renewal Act, the municipality announced that they would register a declaration on the property for full or partial repayment of the cash grant upon sale of the property. When the municipality approved the construction accounts for the urban renewal works in 2011, the municipality reiterated that a declaration would be registered, which happened on July 23, 2012. On November 6, 2017, the municipality raised a claim for repayment of DKK 116,960 against A and B, as the municipality had become aware on February 3, 2016 during an inspection that the property had been sold. A and B had sold their condominium in 2012 without repaying the urban renewal grant. A and B claimed that the claim was dismissed on the grounds that it was time-barred or

161

lapsed by inaction. A and B stated that they had notified the municipality of their move in January 2012. In connection with the sale, A and B had not informed the Area and Urban Renewal Department in the municipality. A representative of the Urban Renewal Department explained that the municipality had initially relied on people contacting them for repayment, but a random check had shown that this did not happen. The municipality therefore reviewed all properties that had received support and found the sale of A and B's apartment on February 3, 2016. The District Court found that there could not be such an identification between the municipality's departments that a notification to the National Register about a change of address could also be considered to constitute a notification to the Area and Urban Renewal Department about the sale of a condominium. The claim was therefore not time-barred, and the District Court did not find the claim lapsed by inaction. A and B were ordered to repay the grant of DKK 116,960 . The High Court upheld the District Court's judgment.[1]

**Ø.L.D. October 29, 2019** *in appeal 14. afd. BS-8186/2019-OLR*

(Rosenløv, Benedikte Holberg and Søren Schou Frandsen (ext.)).

*A and B (attorney Kenneth Gudmundsson, for both, Copenhagen)*
against
*C Municipality (adv. Lars Carstens, Hellerup)*

## Copenhagen City Court judgment February 8, 2019, BS- 920/2018-KBH

...
The case concerns whether C Municipality's claim for repayment of an urban renewal grant is time-barred or lapsed by inaction.

The applicants, *A and B,* submit the following claims:

C Municipality must recognize that the plaintiffs are not obliged to repay urban renewal subsidies from the sale of the plaintiff's property located ..., and against C Municipality's claim:

Exoneration

*The defendant, Municipality of C,* claims that the Court should Order the plaintiffs jointly and severally to pay the defendant DKK 116,960 plus the usual default and procedural interest from December 6, 2017 until payment is made.

...

## The information in the case

It appears from the case that on October 17, 2008, C Municipality promised support for the renovation/modernization of the property

....

The letter states, among other things:

*"Declaration on the recovery of aid*

*In connection with the approval of the building accounts, we will register a declaration on the property stating the terms for full or partial repayment of the cash grant. This is a requirement under section 29 of the Urban Renewal Act. Repayment of the subsidy may become relevant when the property is sold."*

By letter dated December 1, 2011, C Municipality granted approval of the construction accounts for the urban renewal work on the property.

The letter states, among other things:

*"REPAYMENT OF SUBSIDIES*

*We will register a declaration covering all the condominiums that receive subsidies as a result of the urban renewal case. The declaration will contain terms for full or partial repayment of*

*the calculated part of the subsidy the condominium in question receives as a result of the urban renewal works under Chapter 4 (section 29 of the Urban Renewal Act).*

*The repayment requirement may apply if the property changes status or is sold within a specified period of no more than 20 years at a higher price than the market value calculated when the subsidy was granted, plus an amount corresponding to the property development in the past period, etc. (section 29 of the Urban Renewal Act).*

*A copy of the declaration will be sent for your information when it has been registered."*

By letter dated November 6, 2017, C Municipality submitted a claim for repayment of grants.

The letter states, among other things:

*"We have established that in the period from the cut-off date for the end of the urban renewal project on March 31, 2011 to February 3, 2016, a total of 18 condominiums have been sold in ... including yours. As your former condominium was sold for DKK 3,250,000, you must therefore pay DKK 116,960 back to C Municipality."*

## Explanations

Statements have been submitted by A and D.

*Mr. A* has explained that he is 79 years old and retired. The plaintiffs lived in the property ..., while in the period from fall 2008 to spring 2011 an extensive renovation of the property was carried out. A and B knew that the Municipality of C provided urban renewal grants for the renovation. They sold their apartment in November 2011 and moved in February 2012. Already in January 2012, they notified the municipality of their move and were told that they did not have to do anything more. The rest would be taken care of automatically. It also turned out that everything regarding both insurance

---

1    See also unprinted decision (B-1191-10) handed down by the Eastern High Court, 14th Division on February 15, 2011.

Copyright © 2021 Karnov Group Denmark A/S

**162**

and car were sent to their new address. They didn't realize that they had to give a separate notification to the urban renewal section of C Municipality that they had sold the apartment.

A did not remember if they talked to anyone in the owners' association about moving. They attended the general meetings of the owners' association, but he did not remember if they discussed the renovation at the general meetings or if they were given any material about the terms of the municipal grant for renovation and urban renewal of the property. He did not remember what they were told, but they were not told that the grant would be repaid when the property was sold.

Presented with a letter from C Municipality with approval of construction accounts dated December 1, 2011 ..., A explained that he did not believe he had ever seen that letter. Nor did he remember hearing about an easement or that they should contact the municipality in connection with a sale of the apartment. It was only when they received the inquiry from C Municipality on November 6, 2017, that they became aware that the municipality wanted the urban renewal grant back.

When shown the purchase agreement from November 2011, item 27, no. 18, A explained that he did not give the real estate agent information about the urban renewal of the property. He did not know which documents with "info about urban renewal" were included, but the real estate agent must have obtained them himself.

They sold the apartment for DKK 3,250,000 and repaid a loan of DKK 270,000 in the owners' association.

D has explained that he has been employed by C Municipality since November 1, 2014. When the municipality provides urban renewal support to owner associations, it is either the board or a representative of the board that the municipality communicates with. It is not the individual condominium owner. Typically, the board will have been mandated to act on behalf of everyone at a general meeting. This has never given rise to problems. In this case, E A/S acted as the condominium association's technical advisor and represented the association in connection with the grant application.

The municipality registers a declaration of possible repayment of the subsidy on all properties that have received support. Until 2015, the expectation was that the individual recipients would respect the municipality's demand for repayment in connection with sales. There were 5-6 sales every month, so the municipality didn't suspect a thing. In the fall of 2015, the municipality received an inquiry from a real estate agent who was aware of the declaration, but it turned out that the apartment had already been sold once without the declaration being respected.

This prompted the municipality to conduct a random survey, which showed that this was a general problem. During 2016, the municipality went through all the properties that had received support. They found many - around 150 - cases where properties that had received urban renewal subsidies had been traded without the recipients repaying the subsidies in accordance with the declaration. They reviewed the properties one by one and had to hire an extra employee to process the cases. Some claims were written off as obsolete. This was in situations where the municipality had received an inquiry and had not responded within the 3-year statute of limitations. Most of the cases the municipality had not been contacted.

In November 2017, they reached the property... The municipality wrote to A and B, among others. A lot of money came in, but there are still around 10 cases pending. The municipality now subscribes to a scheme that ensures that the

municipality is informed every quarter which subsidized properties have been sold. If the sellers do not repay the subsidy on their own initiative,

U.2020.160OE - TBB2020.52OE

the municipality will contact you. The municipality is not interested in who lives in or moves to and from the subsidized properties. What matters is who owned the property when it received the urban regeneration subsidy, as this is who is liable for repayment when the property is sold. The Center for Urban Renewal does not receive information from the National Population Register when a subsidized property is moved in or out.

C Kommune employs approximately 45,000 permanent employees.

## The views of the parties

*A and B* have stated the following in their statement of claim:

"...statute of limitations:

It is claimed that the municipality's claim for repayment of subsidies in connection with urban renewal is time-barred. The property was sold at the end of 2011 with takeover in 2012. Immediately thereafter, A and B notified the municipality of a change of address, and the municipality thus became aware that A and B were vacating the property. Notice was given in the usual manner to the municipality. In this connection, the plaintiff received a message back stating that the plaintiff did not need to take any further action, as notification of the move was sufficient. Subsequently, there has been no need for anything else as the tax ticket etc. has automatically been sent to the new owner of the apartment. The plaintiff therefore had the clear understanding that notification of the move was sent to the defendant and shared internally in the defendant's system. The plaintiff had no reason to do otherwise. The undertaking documents have not stated a specific procedure for notification. Despite being asked, the defendant has not wanted to provide its response to move notifications, the plaintiff's move notification or

**163**

information about how relocation information is shared in relation to the property tax ticket. Thus, it has not been possible to gain insight into the defendant's internal affairs.

After the transfer of the property, the municipality registered an easement on the property. This happened after the deed was registered and it appears from the easement that the buyer's name is on the loan documents. The easement was registered after the sale and the plaintiff has therefore not had the opportunity to familiarize itself with its content at the time of the sale. It must be assumed that the easement was not subsequently sent to the plaintiff, which is why he never became aware of the registration. The easement makes the owner at the time of registration aware that there is a right for the municipality to demand payment. The right must be observed by the defendant.

When the municipality registered the easement, they became aware that the property was now owned by someone other than those who had previously vacated the property and from whom a relocation notice had been received.

The municipality has thus received notification of vacancy, notification of change of ownership in connection with the creation of the property tax ticket and information via the easement about a new large mortgage loan. In connection with the registration of the easement, it is obvious that a land registry certificate was obtained, where information about the deed appeared. Section 29 of the Urban Renewal Act states that the municipality can register a repayment claim valid for 20 years. The law does not describe a limitation period, but rather a period during which a claim can arise if the property changes ownership. The claim arises the moment the property changes ownership, i.e. upon sale. From the time the claim arises, the general rules of the Limitation Act apply, which is why the

claim is time-barred.

Passivity

Furthermore, it is claimed that the municipality has shown unjustifiable passivity by not asserting its claim. Therefore, A and B have acted accordingly and could rightfully expect that nothing further would happen in the case.

Copyright © 2021 Karnov Group Denmark A/S

The defendant's statement of defence states that on February 3, 2016, the defendant checked the land register itself and discovered that there had been a change of ownership. Regardless of this, the defendant waited until November 2017 to take further action in the case. It must be considered an aggravating circumstance that the defendant became aware that a right to collect payment had arisen 4.5 years earlier.

It is maintained that the plaintiff has given correct notice and that the defendant is bound by it. The plaintiff can expect that a message given to the administration will be communicated to the relevant parts. The general rules of identification must also apply to the municipality, whereby information can be considered to have been given to the entire municipality. The municipality's possible organization of its systems and internal messages is not known to the plaintiff and the plaintiff has no opportunity to adapt accordingly.

It is also noted in this connection that the plaintiff was not charged property tax for the property after his move. The notice of vacating the property was thus sent to other parts of the municipality without the plaintiff having to give notice here. The change of collection took place without the plaintiff having to take any further action.

As the plaintiff gives notice of vacating, the defendant must already at the time of vacating be considered to be aware that there was a claim. As the plaintiff receives no reaction and no claim until almost 6 years later, the plaintiff had good reason to expect that the defendant would not do anything further about the claim. The court must therefore find that the defendant's claim is lost due to inaction."

In its statement of claim, *C Municipality* has stated the following:

"On obsolescence

It is submitted that it has not been established that the claim is time-barred. The plaintiffs have the burden of proof in this regard, and this burden of proof has not been met. Thus, the plaintiffs must prove that the defendant - in the capacity of the defendant's urban renewal function - knew or should have known that a sale of the condominium had taken place and that a repayment claim had arisen at a time more than three years prior to the lawsuit.

According to the information provided, the defendant's urban renewal function has not received the necessary due notification from the plaintiffs or others that the apartment had been sold after the completion of the renovation work, and there are no such circumstances that should have given the defendant reason to clarify whether a sale had taken place and whether a repayment claim had arisen.

In this connection, the plaintiffs have stated during the proceedings that they have not notified the defendant's urban renewal function of the change of ownership, as they have only "... taken out a deed and reported the move to the defendant...". Furthermore, they simply refer to the fact that the defendant "... has set up its system so that the technical department is not notified when a move is reported on a property that has received urban renewal support".

There can be no identification with other branches of the defendant's administration that may have received notification of the plaintiffs' relocation or disposal of their condominium. It is completely unfeasible that any information that is sent to one of the many thousands of employees in the defendant's widely ramified administrative structure, and which may be of importance to other administrative departments, must be sent to all other administrative departments.

It is added that notifications of change of address cannot be considered to constitute a notice of disposal.

**164**

The plaintiffs - who received the municipal subsidy in cash when selling the condominium, ... - are obliged to repay this subsidy according to the law and the decisions on the subsidy that must have reached them via the owners' association and advisors. This also includes a duty to take the initiative for such repayment.

Copyright © 2021 Karnov Group Denmark A/S

U.2020.160OE - TBB2020.52OE

Given that the obligation to repay is incumbent on the owner who received the subsidy and who has been made aware of the factors that may trigger an obligation to repay, the defendant cannot be required to seek information about the circumstances that trigger a repayment claim.

Thus, the defendant cannot be required to carry out ongoing checks to ensure that the recipients of aid comply with their obligations in relation to fulfilling a repayment obligation.

In any event, it must be assumed that the limitation period does not begin to run from the time when the plaintiffs received the purchase price in which the repayment sum is included, but only from the time when the municipality's urban renewal function knew or should have known that the repayment claim had arisen.

In this connection, it is noted that it is not relevant information for the defendant's urban renewal function that the easement (...) contains a statement that other names are listed as creditors/debtors on a mortgage deed than the plaintiffs. This fact does not mean that the property has been sold.

In addition, the defendant registers these declarations without having to consider the priority of the property in question, as the declarations do not constitute a mortgage and are not otherwise dependent on obtaining any particular priority position. Therefore, there is no reason - and thus no obligation - for the defendant to review the information from the Land Registration Court about the priority conditions. Nor are land registry certificates obtained in this connection - it is simply ensured that the declaration is registered.

The defendant has no reason to relate to who the owners of the individual condominiums are, as the condominium owners have left the management of the construction case to the owners' association and its advisors. Thus, it is the owners' association and the advisors with whom the defendant corresponds about the case and who must therefore be closest to ensuring that the overall subsidy case is administered correctly until it is finally concluded.

The defendant must therefore be entitled to expect that sellers of subsidized properties are aware that, when selling the property, they may incur an obligation to repay subsidy amounts which they have received but which, when the property is sold, turn out to have been paid without due cause.

Plaintiffs can obtain information on when to submit a change of address notice themselves - it is not the defendant's job to facilitate this for plaintiffs.

About inaction

The defendant refers to the above.

The pleas in law set out in the application in this respect are contested. It is further submitted that the defendant has not given the plaintiffs any legitimate expectation that it would abandon its repayment claim. The fact that the easement was not registered until after the sale has no bearing on the repayment claim. The repayment claim itself exists by virtue of the law, and the registration of an easement is not a condition of validity in relation to the repayment claim.

When the easement states that the defendant "may" demand repayment of the paid subsidy, it does not imply that the municipality can choose, at its own discretion, not to demand repayment of the amount and thus discretionarily waive a receivable. This would be contrary to fundamental principles of municipal law on the prohibition of favoring individuals and the duty of financially sound administration.

Basically, the term "may" in the declaration means "shall", but the wording makes it possible to leave it to

U.2020.160OE - TBB2020.52OE

the municipality to refrain from collection in cases where this would be possible under the law, for example in cases where the claim - unlike this case - is disputed or uncertain in terms of size, and where procedural economic considerations most appropriately lead to the claim not being pursued.

Accordingly, the plaintiffs cannot assume that a repayment claim which they have failed to seek clarification from the defendant has lapsed as a result of the defendant's passivity. In reality, the passivity is thus on the plaintiffs' side.

Finally, it should be noted that there is no forfeitable inaction simply because some time elapses between the land registry examination and the submission of the repayment claim.

The mere passage of time does not trigger a lapse of a right as a result of inaction. There must be a special reason for the debtor to believe that the creditor has abandoned its claim.

The applicants have not demonstrated such a special reason. In addition

As there is no other disagreement between the parties of significance to the case, it is claimed that the necessary basis exists for the defendant to claim payment of the amount in question. The claim for interest is based on the main rule of the Interest Act. In the alternative, interest is claimed from the time of submission of this defense."

...

**165**

## The Court's reasoning and result

During the case, there has been no dispute about the calculation of the repayment claim, which is subject to a 3-year limitation period, cf. section 3 of the Limitation Act.

Based on the evidence, the court finds that C Municipality was unaware of the existence of the claim until February 3, 2016.

The court emphasizes that, according to their own explanation, A and B did not notify the sale of the condominium to C Municipality's Department for Area and Urban Renewal, but that they only notified the move and change of address to the National Population Register.

The Court finds that the Municipality of C should not have realized earlier that the repayment claim had arisen, neither on the basis of the notification of transfer to the National Population Register, from the appearance of the land register when the declaration was registered, nor for other reasons.

In this connection, the court found that there cannot be such identification between the municipality's departments that a notification to the National Register of changes of address can also be considered to constitute a notification to the Area and Urban Renewal Department of the disposal of a condominium.

The Court finds it proven that the Municipality of C only became aware that the condominium in the property ... had been sold in connection with the systematic review of the properties that had received urban renewal subsidies, which the municipality initiated in the winter of 2015/16 and which on February 3, 2016 had reached A and B's condominium in the property ..., and that the municipality then had a claim for repayment of subsidies.

After witness D's testimony, the court assumes that C Municipality raised a large number of claims for repayment of grants after February 3, 2016, and that the municipality only reached the claims relating to the property .... on November 6, 2017.

The Court does not find that A and B were given a legitimate expectation by the time that passed from February 3, 2016 to November 6, 2017 that the Municipality of C would abandon its repayment claim. In this connection, the Court has also taken

into account that, according to their own explanation, A and B were not aware of the existence of the claim until they received the inquiry of November 6, 2017.

**166**

The repayment claim can then not be considered to have lapsed through inaction.

As a result of the above, the claim is dismissed and A and B are ordered jointly and severally to repay the grant of DKK 116,960.

Based on the value, course and outcome of the case, the legal costs are fixed at DKK 25,000 including VAT and court fees of DKK 3,120, totaling DKK 28,120. It has been stated that C Municipality is not registered for VAT.

...

## Eastern High Court's verdict

...

### Claims

*The appellants, A and B,* have repeated the claim made before the District Court that the Municipality of C must recognize that they are not obliged to repay urban renewal grants from the sale of their property located ...

*The defendant, the Municipality of C,* has claimed that the judgment should be upheld.

### Supplementary case presentation

It appears from the case that the deed concerning the appellants' transfer of the condominium ... was registered on January 30, 2012. According to the deed, the takeover date was February 1, 2012.

The municipality's declaration of repayment of urban renewal subsidies was registered on the property on July 23, 2012.

The High Court has received a request for access to documents dated August 22, 2019 from the appellants' lawyer to the Municipality of C and the municipality's response of August 27, 2019. The latter states, among other things, the following:

"In answer to your question, the Office of Property Tax and Mortgages has automatically received notification of the change of ownership from the digital land registry.

The Office of Property Tax and Mortgages is responsible for registering changes of ownership and automatically shares information about changes of ownership in BBR, in the Technical and Environmental Administration, for use in printing the BBR-Owner notification to the new owner.

Outside the municipality, the Property Tax and Mortgage Office automatically shares information about a change of ownership with the Danish Tax Agency, e.g. for the calculation of property value tax."

### Explanations

A and witness D have given additional testimony.

*A* has explained, among other things, that he is not aware of C Municipality's internal division into departments or that there is a department for urban renewal. He does not know how to share information about changes of ownership within the municipality. He does not believe that he and his spouse have been informed in connection with the payment of subsidies that the subsidy would be repaid upon sale. He has not heard that there has been any talk among the owners about repayment to the municipality.

*D* has explained, among other things, that he has a Master's degree in law. When registering the individual declarations, the municipality's urban renewal department does not look into the ownership conditions at the time of registration. They simply check whether the declaration has been registered.

They were surprised that so many people had sold their homes without repaying the urban renewal subsidy. It is true that they wrote off some claims as obsolete.

U.2020.160OE - TBB2020.52OE

These were claims where they had received an inquiry in the urban renewal department, e.g. from a real estate agent, and had not responded in time.

They assumed that citizens complied with the declarations and had therefore not considered collecting the information separately. They have subsequently had to introduce a system where an external supplier sends sorted information about the sale of properties in the municipality for a fee.

It does not appear from the municipality's approval of the building accounts or the declaration that the individual owner must contact the urban renewal department when changing ownership. They had an expectation that the owners would notify the department directly.

He can't say how many condominiums have been subsidized. It must be several thousand. It's probably in the region of 95 % of the sales that occurred that no notification of change of ownership was given. Nothing general can be said about how often sales occur.

**Requester**

The parties have essentially repeated their arguments before the District Court.

## The High Court's reasoning and result

The High Court agrees with the District Court's result and the reasons for it. What has been presented to the High Court cannot lead to a different result. The High Court therefore upholds the judgment of the District Court.

Following the outcome of the case, A and B must pay DKK 15,000 in legal costs before the High Court to the Municipality of C to cover the costs of legal assistance including VAT. The value and scope of the case have been taken into account when determining this amount.

...

**U.2020.160**
**U.2020.160**
**TBB2020.52**

***Ikke identifikation mellem en kommunes afdelinger. En meddelelse til folkeregisteret om adresseændring kunne ikke anses for tillige at udgøre en meddelelse til Område og Byfornyelsesafdelingen i samme kommune. Kommunens krav om tilbagebetaling efter byfornyelsesloven var derfor ikke forældet eller bortfaldet ved passivitet.***

*Almindelige emner 2.9 og Boligformer 4.*

C kommune gav i 2008 tilsagn om støtte til byfornyelse af en ejendom, hvor A & B ejede en lejlighed. Kommunen meddelte med henvisning til byfornyelseslovens § 29, at de ville tinglyse en deklaration på ejendommen om hel eller delvis tilbagebetaling af det kontante tilskud ved salg af ejendommen. Da kommunen i 2011 godkendte byggeregnskabet vedrørende byfornyelsesarbejderne, gentog kommunen, at der ville blive tinglyst en deklaration, hvilket skete den 23. juli 2012. Den 6. november 2017 rejste kommunen overfor A og B krav om tilbagebetaling af 116.960 kr., idet kommunen den 3. februar 2016 ved en kontrol var blevet opmærksom på, at ejendommen var blevet solgt. A og B havde solgt deres ejerlejlighed i 2012 uden at tilbagebetale byfornyelsestilskuddet. A og B påstod sig frifundet for kravet med henvisning til, at det var forældet eller

**161**

bortfaldet ved passivitet. A og B oplyste, at de i januar 2012 havde meddelt flytning til kommunen. A og B havde i forbindelse med salget orienteret Område og Byfornyelsesafdelingen i kommunen. En repræsentant for byfornyelsesafdelingen forklarede, at kommunen først havde forladt sig på, at folk selv rettede henvendelse med henblik på tilbagebetaling, men en stikprøvekontrol havde vist, at det ikke skete. Kommunen gennemgik derfor alle ejendomme, der havde modtaget støtte og fandt den 3. februar 2016 frem til salget af A og B's lejlighed. Byretten fandt, at der ikke kunne ske en sådan identifikation mellem kommunens afdelinger, at en meddelelse til folkeregisteret om adresseændring tillige kunne anses for at udgøre en underretning til Område og Byfornyelsesafdelingen om afhændelse af en ejerlejlighed. Kravet var derfor ikke forældet, og byretten fandt heller ikke kravet bortfaldet ved passivitet. A og B blev dømt til at tilbagebetale tilskuddet på 116.960 kr. Landsretten stadfæstede byrettens dom.[1]

**Ø.L.D. 29. oktober 2019 i anke 14. afd. BS-8186/2019-OLR**

(Rosenløv, Benedikte Holberg og Søren Schou Frandsen (kst.)).

*A og B* (adv. Kenneth Gudmundsson, for begge, Kbh.)
mod
*C Kommune* (adv. Lars Carstens, Hellerup)

## Københavns Byrets dom 8. februar 2019, BS-920/2018-KBH

…
Sagen drejer sig om, hvorvidt C Kommunes krav på tilbagebetaling af et byfornyelsestilskud er forældet eller bortfaldet ved passivitet.
*Sagsøgerne, A og B,* har nedlagt følgende påstande:

C Kommune skal anerkende, at sagsøgerne ikke er pligtig til at tilbagebetale byfornyelsestilskud fra salg af sagsøgers ejendom beliggende …, og over for C Kommunes påstand:
Frifindelse
*Sagsøgte, C Kommune,* har nedlagt følgende påstande:
Frifindelse, og
Sagsøgerne tilpligtes in solidum til sagsøgte at betale 116.960 kr. med tillæg af sædvanlig mora- og procesrente fra 6. december 2017 til betaling sker.
…

## Oplysningerne i sagen

Det fremgår af sagen, at C Kommune den 17. oktober 2008 gav tilsagn om støtte til istandsættelse/modernisering af ejendommen
….
Af brevet fremgår blandt andet:
*»Deklaration om tilbagebetaling af støtte*
*Vi vil i forbindelse med godkendelse af byggeregnskabet tinglyse en deklaration på ejendommen om vilkår for hel eller delvis tilbagebetaling af det kontante tilskud. Dette er et krav efter byfornyelseslovens § 29. Tilbagebetaling af tilskud kan blive aktuel ved salg af ejendommen.«*
Ved brev af 1. december 2011 meddelte C Kommune godkendelse af byggeregnskab vedrørende byfornyelsesarbejderne på ejendommen.
Af brevet fremgår blandt andet:
*»TILBAGEBETALING AF TILSKUD*
*Vi vil tinglyse en deklaration omfattende alle de ejerlejligheder, der modtager støtte som følge af byfornyelsessagen. Deklarationen vil indeholde vilkår for hel eller delvis tilbagebetaling af den beregnede del af tilskuddet, den pågældende ejerlejlighed modtager som følge af byfornyelsesarbejderne i henhold til kapitel 4 (byfornyelseslovens § 29).*
*Tilbagebetalingskravet kan komme på tale, såfremt ejendommen skifter status eller afhændes inden et nærmere fastsat åremål på højst 20 år til en højere pris end den ved støtteudmålingen beregnede handelsværdi med tillæg af beløb, der svarer til ejendomsudviklingen i det forløbne tidsrum m.m. (byfornyelseslovens § 29).*
*Kopi af deklarationen vil blive sendt ti) orientering, når denne er tinglyst.«*
Ved brev af 6. november 2017 fremsatte C Kommune krav om tilbagebetaling af tilskud.
Af brevet fremgår blandt andet:
*»Vi har konstateret, at der i perioden fra skæringsdatoen for byfornyelsesprojektets afslutning den 31. marts 2011 til den 3. februar 2016, er solgt i alt 18 ejerlejligheder i … heriblandt jeres.*
*Da jeres tidligere ejerlejlighed er solgt for 3.250.000 kr., skal I derfor betale 116.960 kr. tilbage til C Kommune.«*

## Forklaringer

Der er afgivet forklaring af A og D.
*A* har forklaret, at han er 79 år og pensioneret. Sagsøgerne boede i ejendommen …, mens der i perioden fra efteråret 2008 til foråret 2011 blev foretaget en omfattende renovering af ejendommen. A og B vidste, at C Kommune gav byfornyelsestilskud til renoveringen. De solgte deres lejlighed i november 2011 og flyttede i februar 2012. De gav allerede i januar 2012 meddelelse om flytning til kommunen, og de fik den besked, at de ikke skulle gøre mere. Resten ville automatisk blive ordnet. Det viste sig også, at alt både vedrørende forsikring

**1**    Se tillige utrykt afgørelse (B-1191-10) afsagt af Østre Landsret, 14. afd. den 15. februar 2011.

Copyright © 2021 Karnov Group Denmark A/S                                                                    side 1

U.2020.160OE - TBB2020.52OE

**162**

og bil blev sendt til deres nye adresse. De tænkte ikke på, at de skulle give en særskilt meddelelse til byfornyelsesafsnittet i C Kommune om, at de havde solgt lejligheden.

A huskede ikke, om de talte med nogen i ejerforeningen om, at de skulle flytte. De deltog i generalforsamlingerne i ejerforeningen, men han huskede ikke, om de på generalforsamlingerne havde drøftet renoveringen, eller om de havde fået noget materiale om vilkårene for kommunens tilskud til renovering og byfornyelse af ejendommen. Han huskede ikke, hvad de fik at vide, men de fik ikke noget at vide om, at tilskuddet skulle tilbagebetales ved salg af ejendommen.

Forevist brev fra C Kommune med godkendelse af byggeregnskab af 1. december 2011 …, forklarede A, at han ikke mente, at han nogensinde havde set det brev. Han huskede heller ikke at have hørt om en servitut, eller at de skulle kontakte kommunen i forbindelse med et salg af lejligheden. Det var først, da de fik henvendelsen fra C Kommune af 6. november 2017, at de blev opmærksomme på, at kommunen ville have byfornyelsestilskuddet tilbage.

Forevist købsaftale fra november 2011, pkt. 27, nr. 18, forklarede A, at han ikke gav ejendomsmægleren informationer om byfornyelse af ejendommen. Han vidste ikke, hvilke dokumenter med »info om byfornyelse«, der indgik, men ejendomsmægleren må selv have skaffet dem.

De solgte lejligheden for 3.250.000 kr. og indfriede i den forbindelse et lån på 270.000 kr. i ejerforeningen.

*D* har forklaret, at han har været ansat i C Kommune siden 1. november 2014. Når kommunen giver byfornyelsesstøtte til ejerforeninger, er det enten bestyrelsen eller en repræsentant for bestyrelsen, kommunen kommunikerer med. Det kan de enkelte ejerlejlighedsindehaver. Typisk vil bestyrelsen have fået mandat til at agere på alles vegne på en generalforsamling. Det har aldrig givet anledning til problemer. I denne sag optrådte E A/S som ejerforeningens tekniske rådgiver og repræsenterede foreningen i forbindelse med ansøgningen om støtte.

Kommunen tinglyser på alle ejendomme, der har modtaget støtte, en deklaration om eventuel tilbagebetaling af støtten. Indtil 2015 var forventningen, at de enkelte modtagere respekterede kommunens krav om tilbagebetaling i forbindelse med salg. Der var 5-6 salg hver måned, så kommunen anede ikke uråd. I efteråret 2015 fik kommunen en henvendelse fra en ejendomsmægler, der var opmærksom på deklarationen, men hvor det viste sig, at lejligheden allerede havde været handlet en gang, uden at deklarationen var blevet respekteret.

Det gav kommunen anledning til at foretage en stikprøveundersøgelse, som viste, at der var tale om et generelt problem. Kommunen gik herefter i løbet af 2016 alle de ejendomme igennem, der havde modtaget støtte. De fandt mange - omkring 150 - tilfælde, hvor der var handlet ejendomme, der havde modtaget byfornyelsesstøtte, uden at modtagerne havde tilbagebetalt støtten i overensstemmelse med deklarationen. De gennemgik ejendommene én for én og måtte ansætte en ekstra medarbejder for at behandle sagerne. Nogle krav afskrev de som forældede. Det var i de situationer, hvor kommunen havde fået en henvendelse og ikke havde reageret inden for forældelsesfristen på 3 år. Resten af sagerne havde kommunen ikke fået nogen henvendelse i.

I november 2017 nåede de til ejendommen … Kommunen skrev i den forbindelse til blandt andre A og B. Der kom mange penge ind, men der verserer fortsat omkring 10 sager, der ikke er afgjort.

Kommunen abonnerer nu på en ordning, der sikrer, at kommunen hvert kvartal får oplyst, hvilke støttede ejendomme, der er blevet solgt. Hvis ikke sælgerne af egen drift tilbagebetaler tilskuddet,

retter kommunen henvendelse. Kommunen interesserer sig ikke for, hvem der bor i eller flytter til og fra de støttede ejendomme. Det afgørende er, hvem der ejede ejendommen, da den modtog byfornyelsesstøttestøtte, da det er denne, der har tilbagebetalingspligten i forbindelse med, at ejendommen sælges. Center for byfornyelse får ikke oplysninger fra Folkeregisteret, når en støttet ejendom til- eller fraflyttes.

C Kommune beskæftiger ca. 45.000 fastansatte medarbejdere.

## Parternes synspunkter

*A og B* har i sit påstandsdokument anført følgende:

»… Forældelse:

Det gøres gældende, at kommunens krav vedrørende tilbagebetaling af tilskud i forbindelse med byfornyelse er forældet.

Ejendommen blev solgt i slutningen af 2011 med overtagelse i 2012. Straks herefter meddelte A og B adresseændring til kommunen som dermed blev bekendt med at A og B fraflyttede ejendommen. Meddelelse blev givet på sædvanligvis til kommunen. Sagsøger modtog i den forbindelse en besked tilbage om at sagsøger ikke skulle foretage sig yderligere, idet anmeldelse om flytning var tilstrækkelig. Der har efterfølgende været behov for andet idet skattebillet mv. automatisk er sendt til ny ejer af lejligheden. Sagsøger har derfor haft den klare forståelse, at besked om flytning blev sendt til sagsøgte og delt internt i sagsøgtes system. Sagsøger har ikke haft grund til at foretage sig andet. Af dokumenterne om tilsagn har der ikke stået en særlig fremgangsmåde for anmeldelse. Trods opfordret har sagsøgte ikke ønsket at fremlægge sit svar til flytteanmeldelser, sagsøgers flyttemeddelelse eller

**163**

oplysninger om hvordan oplysninger om flytning deles i forhold til ejendomsskattebillet. Det har således ikke været muligt at få indsigt i sagsøgtes interne forhold.

Efter overdragelsen af ejendommen tinglyste kommunen servitut på ejendommen. Dette skete efter skødet er tinglyst og det fremgår af servitutten, at købers navn står på lånedokumenterne. Servitutten er tinglyst efter salget og sagsøger har derfor ikke haft mulighed for at gøre sig bekendt med dens indhold på tidspunktet for salget. Det må formodes, at servitutten ikke efterfølgende blev sendt til sagsøger, hvorfor denne aldrig blev bekendt med tinglysningen. Servitutten gør den på tidspunktet for tinglysning værende ejer bekendt med, at der findes en ret for kommunen til at kræve betaling. Retten må skulle iagttages af sagsøgte.

Da kommunen tinglyste servitutten blev de altså bekendt med, at ejendommen nu var ejet af andre end dem der tidligere var fraflyttet og som der var modtaget flyttemeddelse fra.

Kommunen har således via besked om fraflytning, besked om ejerskifte i forbindelse med dannelse af ejendomsskattebillet samt oplysning via servitutten om nyt stort realkreditlån. I forbindelse med tinglysning af servitutten, er det nærliggende at der blev indhentet en tingbogsattest, hvor oplysninger om skødet fremgik.

Af Lov om Byfornyelse § 29, fremgår det at kommunen kan tinglyse et krav om tilbagebetaling gældende i 20 år. Loven beskriver således ikke en forældelsesfrist, men derimod en periode, hvor der kan opstå et krav, såfremt ejendommen skifter ejer. I det øjeblik ejendommen skifter ejer, dvs. ved salg opstår kravet. Fra kravet opstående er det forældelseslovens almindelige regler der finder anvendelse, hvorfor kravet er forældet.

Passivitet

Det gøres endvidere gældende, at kommunen har udvist retsfortabende passivitet ved ikke at gøre sit krav gældende. A og B har derfor indrettet [sig] herefter og rettelig kunne forvente, at der ikke skete yderligere i sagen.

Copyright © 2021 Karnov Group Denmark A/S

U.2020.160OE - TBB2020.52OE

Af sagsøgtes svarskrift fremgår, at sagsøger den 3. februar 2016 selv tjekkede tingbogen og i den forbindelse opdagede, at der var sket ejerskifte. Uanset dette, ventede sagsøgte til november 2017 med at foretage sig yderligere i sagen. Det må anses som en skærpende omstændighed, at sagsøgte her bliver opmærksom på, at der 4,5 år forinden er indtrådt en ret til at opkræve betaling.

Der fastholdes, at sagsøger har givet korrekt meddelelse samt at sagsøgte er bundet af denne. Sagsøger kan regne med, at en besked givet til forvaltningen bliver formidlet til de relevante dele. De almindelige identifikationsregler må også gælde for kommunen, hvorved en oplysning kan anses for at være givet til hele kommunen. Kommunens evt. indretning af sine systemer og interne beskeder er ikke sagsøger bekendt og sagsøger har ingen mulighed for at indrette sig herefter.

Det bemærkes også i den forbindelse, at sagsøger ikke blev opkrævet ejendomsskat for ejendommen efter sin flytning. Besøgen om fraflytning er således blevet sendt til øvrige dele af kommunen uden at sagsøger selv har skulle give besked her. Ændringen af opkrævning skete uden sagsøger skulle foretage sig yderligere.

Idet sagsøger giver besked om fraflytning, må sagsøgte allerede ved fraflytning anses for at være bekendt med, at der besked vil ske. Da sagsøger ingen reaktion modtager og intet krav før knap 6 år efter, har sagsøger haft god grund til at forvente, at sagsøgte ikke ville gøre yderligere ved kravet. Retten må derfor finde, at sagsøgtes krav er tabt på grund af passivitet.«

*C Kommune* har i sit påstandsdokument anført følgende:

»Om forældelse

Det gøres gældende, at det ikke er godtgjort, at kravet er forældet.

Sagsøgernes har bevisbyrden herfor, og denne bevisbyrde er ikke løftet. Således må sagsøgerne godtgøre, at sagsøgte - i skikkelse af sagsøgtes byfornyelsesfunktion - vidste eller burde vide, at der var sket en afhændelse af ejerlejligheden, og at et tilbagebetalingskrav var opstået på et tidspunkt, der ligger mere end tre år forud for sagsanlægget.

Sagsøgtes byfornyelsesfunktion har ikke efter det oplyste modtaget den fornødne behørige underretning fra sagsøgerne eller andre om, at lejligheden var blevet afhændet efter udførelsen af ombygningsarbejderne, ligesom der ikke foreliger sådanne omstændigheder, som burde have givet sagsøgte anledning til at afklare, om en afhændelse havde fundet sted om og at tilbagebetalingskrav var opstået.

Sagsøgerne har i denne forbindelse under sagen oplyst, at de ikke har givet meddelelse om ejerskiftet til sagsøgtes byfornyelsesfunktion, idet de således alene har »... udtaget skøde og meldt flytning til sagsøgte...«. I øvrigt henviser man blot til, at sagsøgte »... har opsat sit system således, at der ikke gives besked til teknisk afdeling når der meldes flytning på en ejendom der er givet byfornyelsesstøtte til«.

Der kan ikke ske identifikation med øvrige forvaltningsgrene hos sagsøgte, som måtte have modtaget underretning om sagsøgernes flytning eller afhændelse af deres ejerlejlighed. Det er helt uoverkommeligt, at enhver oplysning, som tilgår en af de mange tusinde ansatte i sagsøgtes vidt forgrenede forvaltningsstruktur, og som måtte være af betydning for andre forvaltningsgrene, skal tilgå samtlige øvrige forvaltninger.

Det tilføjes, at meddelelser om adresseændring ikke kan anses at indebære en meddelelse om afhændelse.

**164**

Sagsøgerne - som ved salget af ejerlejligheden har indvundet den kommunale støtte kontant, ... - har efter loven og de afgørelser om støtte, som via ejerforening og rådgivere skal være tilgået dem, pligt til at tilbagebetale denne støtte. Heri ligger også en pligt til at tage initiativ til sådan tilbagebetaling.

I betragtning af, at pligten til tilbagebetaling påhviler den ejer, som modtog tilskuddet, og som er gjort bekendt med de faktorer, der kan udløse en tilbagebetalingspligt, kan der herefter ikke opstilles krav til sagsøgte om, at sagsøgte selv skal opsøge oplysninger om de omstændigheder, der udløser et tilbagebetalingskrav.

Det kan dermed ikke forlanges, at sagsøgte løbende skal foretage kontroller af, at debitorer til støtte overholder deres forpligtelser i relation til at opfylde en tilbagebetalingsforpligtelse.

I hvert fald må det i forældelsesmæssig henseende lægges til grund, at forældelsesfristen ikke begynder at løbe fra det tidspunkt, hvor sagsøgerne har modtaget den købesum, hvori tilbagebetalingssummen er indeholdt, men først fra det tidspunkt, hvor kommunens byfornyelsesfunktion vidste eller burde vide, at tilbagebetalingskravet var opstået.

I denne forbindelse bemærkes, at det ikke er en relevant oplysning til sagsøgtes byfornyelsesfunktion, at der i servitutten (...) er indeholdt en oplysning om, at der er anført andre navne som kreditor/debitorer på et ejerpantebrev end sagsøgernes. Dette forhold er ikke ensbetydende med, at ejendommen er solgt.

Hertil kommer, at sagsøgte tinglyser disse deklarationer uden at skulle forholde sig til prioriteringen af den pågældende ejendom, idet deklarationerne ikke er pantstiftende og ikke i øvrigt er afhængig af opnåelsen af nogen bestemt prioritetsstilling. Der er derfor ingen anledning til - og således heller ikke nogen pligt til - for sagsøgte at gennemgå oplysningerne fra tinglysningsretten om prioriteringsforholdene. Der indhentes heller ikke tingbogsattester i denne anledning - man sikrer sig blot, at deklarationen bliver tinglyst.

Sagsøgte har i det hele taget ingen anledning til at forholde sig til, hvem der er ejere af de enkelte ejerlejligheder, idet ejerlejlighedsejerne har overladt styringen af byggesagen til ejerforeningen og dennes rådgivere. Det er således ejerforeningen og rådgiverne, som sagsøgte korresponderer med om sagen, og som derfor må være nærmest til at sikre, at den samlede støttesag administreres korrekt indtil den er endeligt afsluttet.

Sagsøgte må derfor med rette kunne forvente, at sælgeren af støttede ejendomme er klar over, at de ved salget af ejendommen kan aktualisere en tilbagebetalingspligt af støttebeløb, som er kommet dem til gode, men som ved salget har vist sig at være betalt uden den fornødne grund.

Sagsøgerne kan selv skaffe oplysning om tidspunktet for indsendelse af meddelelse om adresseændring - det er ikke sagsøgtes opgave at lette sagsøgerne herfor.

Om passivitet

Sagsøgte henviser til det ovenfor anførte.

De i stævningen anførte anbringender i denne henseende bestrides.

Det gøres endvidere gældende, at sagsøgte ikke har bibragt sagsøgerne nogen berettiget forventning om, at man ville opgive sit tilbagebetalingskrav. Det har ingen betydning for tilbagebetalingskravet, at servitutten først er tinglyst efter salget. Selve tilbagebetalingskravet består i kraft af loven, og tinglysning af en servitut herom er ingen gyldighedsbetingelse i forhold til tilbagebetalingskravet.

Når servitutten siger, at sagsøgte »kan« kræve det udbetalte tilskud tilbagebetalt ligger der ikke heri, at kommunen helt skønsmæssigt kan vælge at undlade at kræve beløbet tilbagebetalt og dermed diskretionært frafalde et tilgodehavende. Dette ville stride mod grundlæggende kommunalretlige grundsætninger om forbud mod begunstigelse af enkeltpersoner og om pligt til økonomisk forsvarlig administration.

I udgangspunktet betyder deklarationens udtryk »kan« således »skal«, men formuleringen gør det muligt at overlade det til

kommunen at undlade opkrævning i tilfælde, hvor dette efter loven ville være muligt, for eksempel i sager hvor kravet - modsat denne sag - størrelsesmæssigt er omtvistet eller usikkert, og hvor procesøkonomiske betragtninger mest hensigtsmæssigt fører til, at kravet ikke forfølges.

Sagsøgerne kan herefter ikke lægge til grund, at et tilbagebetalingskrav, som de har undladt at søge afklaret hos sagsøgte, er bortfaldet som følge af sagsøgtes passivitet. Passiviteten ligger i realiteten således på sagsøgernes side.

Afslutningsvis bemærkes, at der ikke foreligger retsfortabende passivitet, blot fordi der hengår nogen tid fra tingbogsundersøgelsen til fremsættelsen af tilbagebetalingskravet.

Tidens blotte gang udløser ikke af bortfald af en rettighed som følge af passivitet. Der skal foreligge en særlig anledning for debitor til at tro, at kreditor har opgivet sit krav.

En sådan særlig anledning har sagsøgerne ikke påvist.

I øvrigt

Da er i øvrigt ikke er uenighed mellem parterne af betydning for sagen, gøres det gældende, at der foreligger det nødvendige grundlag for at sagsøgte kan kræve det omhandlede beløb betalt.

Rentepåstanden er støttet på rentelovens hovedregel. Subsidiært kræves renter fra tidspunktet for fremlæggelsen af nærværende svarskrift.«

…

**165**

## Rettens begrundelse og resultat

Der har ikke under sagen været tvist om opgørelsen af tilbagebetalingskravet, som er undergivet 3-årig forældelse, jf. forældelseslovens § 3.

Efter bevisførelsen lægger retten til grund, at C Kommune indtil den 3. februar 2016 var ubekendt med fordringens eksistens.

Retten lægger vægt på, at A og B efter deres egen forklaring ikke gav meddelelse om salget af ejerlejligheden til C Kommunes afdeling for Område og Byfornyelse, men at de alene meddelte flytning og adresseændring til Folkeregisteret.

Retten finder, at C Kommune hverken på grundlag af flyttemeddelelsen til Folkeregisteret, ud fra tingbogens udseende, da deklarationen blev tinglyst, eller af andre grunde tidligere burde have indset, at tilbagebetalingskravet var opstået.

Retten har i den forbindelse fundet, at der ikke kan ske en sådan identifikation mellem kommunens afdelinger, at en meddelelse til Folkeregisteret om adresseændring kan anses for tillige at udgøre en underretning til Område og Byfornyelsesafdelingen om afhændelse af en ejerlejlighed.

Retten finder det godtgjort, at C Kommune først i forbindelse med den systematiske gennemgang af de ejendomme, der havde modtaget støtte til byfornyelse, som kommunen iværksatte i vinteren 2015/16 og som den 3. februar 2016 var nået til A og B' ejerlejlighed i ejendommen …, fik kendskab til, at ejerlejligheden var blevet solgt, og at kommunen herefter havde en fordring på tilbagebetaling af tilskud.

Efter vidnet D' forklaring lægger retten til grund, at C Kommune i tiden efter den 3. februar 2016 rejste en lang række krav på tilbagebetaling af tilskud, og at kommunen først den 6. november 2017 nåede til det krav, der vedrørte ejendommen ….

Retten finder ikke, at A og B ved den tid, der er gået fra den 3. februar 2016 til den 6. november 2017 er bibragt en berettiget forventning om, at C Kommune ville opgive sit tilbagebetalingskrav. Retten har i den forbindelse tillige henset til, at A og B efter deres egen forklaring ikke var klar over kravets eksistens, før de fik henvendelsen af 6. november 2017.

Tilbagebetalingskravet kan herefter ikke anses for bortfaldet ved passivitet.

Som følge af det anførte frifindes C Kommune for den nedlagte påstand og A og B tilpligtes in solidum til at tilbagebetale tilskuddet på 116.960 kr.

Sagsomkostningerne er efter sagens værdi, forløb og udfald fastsat til dækning af advokatudgift med 25.000 kr. inkl. moms, og af retsafgift med 3.120 kr., i alt 28.120 kr. Det er oplyst, at C Kommune ikke er momsregistreret.

…

## Østre Landsrets dom

…

### Påstande

*Appellanterne, A og B,* har gentaget den for byretten nedlagte påstand om, at C Kommune skal anerkende, at de ikke er pligtige til at tilbagebetale byfornyelsestilskud fra salg af deres ejendom beliggende …

*Indstævnte, C Kommune,* har påstået stadfæstelse.

### Supplerende sagsfremstilling

Det fremgår af sagen, at skøde vedrørende appellanternes overdragelse af ejerlejligheden …, er tinglyst den 30. januar 2012. Overtagelsesdagen var ifølge skødet den 1. februar 2012.

Kommunens deklaration om tilbagebetaling af byfornyelsesstøtte er tinglyst på ejendommen den 23. juli 2012.

Der er for landsretten fremlagt aktindsigtsanmodning af 22. august 2019 fra appellanternes advokat til C Kommune og kommunens svar herpå af 27. august 2019. Af sidstnævnte fremgår bl.a. følgende:

»Som svar på dine spørgsmål kan oplyses, at Kontoret for Ejendomsskat og Boliglån har automatisk modtaget underretning om ejerskiftet fra den digitale tinglysning.

Kontor for Ejendomsskat og Boliglån har bl.a. til opgave at registrere ejerskifter, og deler i den forbindelse automatisk oplysninger om ejerskifte i BBR, i Teknik- og Miljøforvaltningen, til brug for udskrivning af BBR-Ejer meddelelse til ny ejer.

Uden for kommunen deler Kontor for Ejendomsskat og Boliglån automatisk oplysninger om et ejerskifte med Skattestyrelsen, bl.a. til brug for beregning af ejendomsværdiskat.«

### Forklaringer

A og vidnet D har afgivet supplerende forklaring.

*A* har forklaret bl.a., at han ikke er bekendt med C Kommunes interne opdeling i afdelinger og heller ikke med, at der eksisterer en afdeling for byfornyelse. Han ved ikke, hvordan man deler oplysninger om ejerskifte internt i kommunen. Han mener ikke, at han og hans ægtefælle i forbindelse med udbetaling af støtte har fået besked om, at der skulle ske tilbagebetaling af støtten ved salg. Han har ikke hørt, at der blandt ejerne indbyrdes har været talt om, at der skulle ske tilbagebetaling til kommunen.

*D* har forklaret bl.a., at han er uddannet cand.merc.jur. Ved tinglysning af de enkelte deklarationer ser de i kommunens afdeling for byfornyelse ikke nærmere på adkomstforholdene på tinglysningstidspunktet. De kontrollerer blot, om deklarationen er tinglyst.

De var overraskede over, at så mange havde solgt deres bolig uden at tilbagebetale byfornyelsesstøtten. Det er rigtigt, at de afskrev nogle krav som forældede.

**166**

Det var krav, hvor de havde fået en henvendelse i byfornyelsesafdelingen, f.eks. fra en ejendomsmægler, og hvor de ikke havde reageret i tide.

De regnede med, at borgerne overholdt deklarationerne, og de havde derfor ikke overvejet at indhente oplysningerne særskilt. De har efterfølgende måttet indføre en ordning, hvor en ekstern leverandør mod betaling sender sorterede oplysninger om salg af ejendomme i kommunen.

Det fremgår ikke af kommunens godkendelse af byggeregnskabet eller af deklarationer, at den enkelte ejer skal henvende sig til byfornyelsesafdelingen ved ejerskifte. De havde en forventning om, at ejerne gav besked direkte til afdelingen.

Han kan ikke sige, hvor mange ejerlejligheder, der er givet støtte til. Der må være tale om flere tusinde. Det er nok i omegnen af 95 % af de skete salg, at der ikke er givet besked om ejerskifte. Der kan ikke siges noget generelt om, hvor ofte der sker salg.

## Anbringender

Parterne har i det væsentlige gentaget deres anbringender for byretten.

## Landsrettens begrundelse og resultat

Landsretten er enig i byrettens resultat og begrundelsen herfor. Det, der er kommet frem for landsretten, kan ikke føre til et andet resultat. Landsretten stadfæster derfor byrettens dom.

Efter sagens udfald skal A og B i sagsomkostninger for landsretten betale 15.000 kr. til C Kommune til dækning af udgifter til advokatbistand inkl. moms. Der er ved fastsættelsen heraf taget hensyn til sagens værdi og omfang.

…

Copyright © 2021 Karnov Group Denmark A/S