UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to:      18-cv-05053,
18-cv-09797, 18-cv-09836, 18-cv-09837,
18-cv-09838, 18-cv-09839, 18-cv-09840,
18-cv-09841, 18-cv-10100[1]

MASTER DOCKET

18-md-2865 (LAK)

THIRD-PARTY PLAINTIFFS MEMORANDUM OF LAW
IN OPPOSITION TO MCML LIMITED'S MOTION TO DISMISS

K&L Gates LLP
John C. Blessington
Brandon R. Dillman
Michael R. Creta
John L. Gavin
One Congress Street, Suite 2900
Boston, MA 02114
617.261.3100

*Attorneys for Darren Wittwer; Elaina M.
Crema, as personal representative of the
estate of Robert V. Crema; and Acer
Investment Group, LLC*

---

[1] The related actions include the following cases: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.) (together, the "**Utah Actions**"); *SKAT v. Newsong Fellowship Church 401k Plan*, 18-cv-10100 (S.D.N.Y.) (the "**Newsong Action**"), and *SKAT v. The Goldstein Law Group PC 401k Profit Sharing Plan*, 18-cv-05053 (S.D.N.Y.) (the "**Goldstein Action**").

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND.................................................................................5

PROCEDURAL HISTORY....................................................................................7

ARGUMENT ........................................................................................................8

I.     ED&F is subject to specific personal jurisdiction in New York, Pennsylvania, and
       Utah................................................................................................................8

       a.     Exercise of personal jurisdiction over ED&F comports with the Court's
              prior personal jurisdiction rulings. ...........................................................8

       b.     Third-Party Plaintiffs made a prima facie showing to permit personal
              jurisdiction over ED&F...........................................................................10

              i.     The Court may exercise personal jurisdiction pursuant to the
                     relevant long-arm statutes. ..........................................................11

              ii.    Personal jurisdiction over ED&F satisfies due process. ...........................12

                     1.     ED&F has sufficient minimum contacts with the forum
                            states............................................................................12

                     2.     Personal jurisdiction over ED&F would not be
                            unreasonable. ...............................................................17

II.    This Court has subject matter jurisdiction over Third-Party Plaintiffs' Claims. ..............18

III.   Third-Party Plaintiffs' claims are not time-barred under Utah law. ...................................19

IV.    Third-Party Plaintiffs state claims for relief that are more than plausible.........................20

       a.     Choice of Law......................................................................................21

       b.     Acer, Crema, and Wittwer sufficiently pleaded Fraud (Count I). .........................22

              i.     Acer, Crema, and Wittwer sufficiently alleged that false statements
                     were made to induce them to act....................................................23

              ii.    Acer, Crema, and Wittwer adequately alleged detrimental reliance. ........24

              iii.   Acer, Crema, and Wittwer allege facts supporting a strong
                     inference that ED&F acted with the requisite state of mind.....................24

c.     Acer, Crema, and Wittwer sufficiently pleaded Negligent Misrepresentation (Count II)....................................................................26

d.     ED&F owed fiduciary duties to Crema and Wittwer (Count III). .........................27

e.     The Economic Loss Doctrine does not bar the claims..........................................29

f.     Crema and Wittwer sufficiently pleaded Promissory Estoppel (Count IV) and Unjust Enrichment (Count V). .........................................................................31

g.     Acer, Crema, and Wittwer sufficiently pleaded Equitable Indemnification (Acer Count III, Wittwer/Crema Count VI). ..........................................................33

h.     Acer, Crema, and Wittwer sufficiently pleaded Apportionment of Fault (Acer Count IV, Wittwer/Crema Count VII) in the Utah Actions.........................34

CONCLUSION......................................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfwear, Inc. v. IBKUL UBHOT Ltd.*,
   No. 221CV00698DBBJCB, 2022 WL 3705483 (D. Utah Aug. 26, 2022)............................13

*Allen v. Hall*,
   148 P.3d 939 (Utah 2006).................................................................................................33

*Armed Forces Ins. Exch. v. Harrison*,
   70 P.3d 35 (Utah 2003).....................................................................................................23

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
   480 U.S. 102 (1987)...........................................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................21

*Associated Dry Goods Corp. v. Towers Fin. Corp.*,
   920 F.2d 1121 (2d Cir. 1990).............................................................................................19

*Atkinson v. Luitpold Pharms., Inc.*,
   414 F. Supp. 3d 742 (E.D. Pa. 2019) .................................................................................22

*Baxter v. A.R. Baron & Co.*,
   No. 94 CIV. 3913 (JGK), 1996 WL 586338 (S.D.N.Y. Oct. 11, 1996) ...........................25, 26

*Berger v. Cushman & Wakefield of Pennsylvania, Inc.*,
   No. CV 13-5195, 2016 WL 8716244 (E.D. Pa. Mar. 11, 2016)............................................34

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)......................................................................................................12, 13

*Bylsma v. R.C. Willey*, 416 P.3d 595 (Utah 2017) .........................................................................34

*Car Sense, Inc. v. Am. Special Risk, LLC*,
   56 F. Supp. 3d 686 (E.D. Pa. 2014) ...................................................................................26

*Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*,
   964 F. Supp. 677 (E.D.N.Y. 1997) .....................................................................................32

*Cascade Energy & Metals Corp. v. Banks*,
   896 F.2d 1557 (10th Cir. 1990) .........................................................................................34

*CHG Companies, Inc. v. Medina Mem'l Hosp.*,
   No. 2:17-CV-00551-DB, 2017 WL 5712689 (D. Utah Nov. 27, 2017)..................................16

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v.*
  *Queen Carpet Corp.*,
  5 F. Supp. 2d 1246 (D. Utah 1998) ........................................................34

*Cottonwood Imp. Dist. v. Qwest Corp.*,
  296 P.3d 754 (Utah Ct. App. 2013) ........................................................32

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund*
  *Litig.*,
  No. 18-CV-5053 (LAK), 2020 WL 70938 (S.D.N.Y. Jan. 7, 2020) ...........9–11, 18

*In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*,
  No. 18-MD-2865 (LAK), 2021 WL 4993536 (S.D.N.Y. Oct. 26, 2021) .....................2, 4, 7, 9

*DeMarco v. LaPay*,
  No. 2:09-CV-190 TS, 2012 WL 3597540 (D. Utah 2012) ...............................23, 30

*Fica Frio, Ltd. v. Seinfeld*,
  434 F. Supp. 3d 80 (S.D.N.Y. 2020) ........................................................16

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
  786 P.2d 1326 (Utah 1990) ........................................................28, 31

*In re Fowler*,
  425 B.R. 157 (Bankr. E.D. Pa. 2010) ........................................................29

*Gallagher v. New York City Health & Hosps. Corp.*,
  No. 16 CIV. 4389 (GBD), 2017 WL 4326042 (S.D.N.Y. Sept. 20, 2017), *aff'd*,
  733 F. App'x 3 (2d Cir. 2018) ........................................................26

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000) ........................................................20

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*,
  988 F.2d 476 (3d Cir. 1993) ........................................................16

*Gross v. Hanover Ins. Co.*,
  138 F.R.D. 53 (S.D.N.Y. 1991) ........................................................34

*Hartman v. DynCorp Int'l, LLC*,
  No. 2:12-CV-00364-TS, 2012 WL 4480553 (D. Utah Sept. 28, 2012) ...................15

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) ........................................................29

*Image Masters, Inc. v. Chase Home Fin.*,
  489 B.R. 375 (E.D. Pa. 2013) ........................................................25

*Keller v. A.O. Smith Harvestore Prods., Inc.*,
   819 P.2d 69 (Colo. 1991) ................................................................................30

*King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*,
   893 F.2d 1155 (10th Cir. 1990) ......................................................................19

*LaMarca v. Pak-Mor Mfg. Co.*,
   95 N.Y.2d 210 (2000) ...............................................................................13, 17

*Layton Constr. Co. v. Wrapid Specialty, Inc.*,
   No. 2:14-CV-00402, 2015 WL 7312896 (D. Utah 2015) ................................29

*Level 3 Commc'ns, LLC v. Liebert Corp.*,
   535 F.3d 1146 (10th Cir. 2008) ......................................................................30

*Marcantel v. Michael & Sonja Saltman Fam. Tr.*,
   No. 2:16-CV-250-DBP, 2019 WL 1262648 (D. Utah Mar. 19, 2019), *aff'd in
   part, rev'd in part and remanded*, 993 F.3d 1212 (10th Cir. 2021) ........................25

*McMorris v.Carlos Lopez & Assocs., LLC*,
   995 F.3d 295 (2d Cir. 2021)............................................................................18

*Meda AB v. 3M Co.*,
   969 F. Supp. 2d 360 (S.D.N.Y. 2013).............................................................23

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*,
   960 F.2d 1217 (3d Cir. 1992)..........................................................................12

*Metro. Life Ins. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..............................................................................10

*MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*,
   886 F.2d 1249 (10th Cir. 1989) ......................................................................29

*Northstar Alarm Servs., LLC v. Alder Home Prot.*,
   No. 2:17-CV-1097-DN-PMW, 2018 WL 3611069 (D. Utah July 27, 2018) ........23

*Old Republican Nat. Title Ins. Co. v. Home Abstract & Title Co.*,
   No. 1:12CV00171, 2014 WL 2918551 (D. Utah 2014) ............................27

*Oppedisano v. Zur*,
   No. 20 CV 5395 (VB), 2022 WL 4134436, at *2 (S.D.N.Y. Sept. 12, 2022) ..........9

*Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*,
   355 P.3d 965 (Utah 2015)...............................................................................28

*Outhouse PR, LLC v. Northstar Travel Media, LLC*,
   No. 19 Civ. 5979 (NRB), 2020 WL 2512092 (S.D.N.Y. May 15, 2020)...............20

*Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*,
    No. 05-CV-64, 2006 WL 3840168 (D. Utah Dec. 21, 2006) ................................34

*Preventative Energy Solutions, LLC v. nCap Ventures 5 LLC*,
    No. 16-CV-809-PMW, 2017 WL 87028 (D. Utah 2017) ........................................29

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*,
    713 P.2d 55 (Utah 1986)........................................................................................26

*In re Refco Sec. Litig.*,
    759 F. Supp. 2d 301 (S.D.N.Y. 2010)...................................................................30

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)..................................................................................23

*Russell Packard Dev., Inc. v. Carson*,
    108 P.3d 741 (Utah 2005) .....................................................................................19

*Schultz v. Boy Scouts of Am., Inc.*,
    197, 480 N.E.2d 679 (1985)...........................................................................21, 22

*In re SKAT Tax Refund Scheme Litig.*,
    No. 18-CV-05053, 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020) .........10, 11, 13, 25

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*,
    28 P.3d 669 (Utah 2001).......................................................................................30

*Soma Med. Int'l v. Standard Chartered Bank*,
    196 F.3d 1292 (10th Cir. 1999) ............................................................................12

*Spicer v. Pier Sixty LLC*,
    No. 08 CIV. 10240 LBS, 2011 WL 446144 (S.D.N.Y. Feb. 7, 2011)....................21

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)..................................................................................16

*Steinbrugge v. Haddock*,
    281 F.2d 871 (10th Cir. 1960) ..............................................................................28

*Taylor v. Phelan*,
    912 F.2d 429 (10th Cir. 1990) ..............................................................................16

*Tyman v. Pfizer, Inc.*,
    No. 16CV06941LTSBCM, 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017),
    *report and recommendation adopted*, No. 16 CV 6941-LTS-BCM, 2018 WL
    481890 (S.D.N.Y. Jan. 18, 2018)..........................................................................23

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.,*
    210 F.3d 1207 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001) ..................................31

*W. Chester Univ. Found. v. MetLife Ins. Co. of Connecticut,*
    259 F. Supp. 3d 211 (E.D. Pa. 2017) ......................................................................23

*Waddoups v. Amalgamated Sugar Co.,*
    54 P.3d 1054 (Utah 2002) .........................................................................................22

*Walden v. Fiore,*
    571 U.S. 277 (2014) .................................................................................12, 15, 16

*Wandrey v. McCarthy,*
    804 F. Supp. 1384 (D. Kan. 1992) ...........................................................................34

*Winston & Strawn v. Dong Won Sec. Co.,*
    No. 02-civ-0183, 2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002) ...........................11

**Statutes**

42 Pa.C.S.A. § 5322(a)(3) ...............................................................................................12

Utah Code Ann. § 78B–3–201(3) ....................................................................................12

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ..........................................................................................8, 9, 10

Fed. R. Civ. P. 12(b)(6) .................................................................................1, 4, 20, 21

Fed. R. Civ. P. 14(a) .......................................................................................................18

N.Y. C.P.L.R. § 302(a) ...................................................................................................11

Rule 9(b) ..........................................................................................................................23

Third-Party Plaintiffs Elaina M. Crema, as personal representative of the estate of Robert V. Crema ("**Crema**"), Darren Wittwer ("**Wittwer**"), and Acer Investment Group, LLC ("**Acer**," and collectively with Crema and Wittwer, the "Third-Party Plaintiffs") respectfully submit this memorandum of law in opposition to the motion to dismiss Crema, Wittwer, and Acer's amended third-party complaints (the "**Amended Third-Party Complaints**" or "**ATPCs**") by Third-Party Defendant MCML Limited (f/k/a ED&F Man Capital Markets Ltd.) ("**ED&F**").

The Court, having already ruled that the ATPCs would not be futile, granted Third-Party Plaintiffs leave to amend and noted that ED&F's Rule 12(b)(6) arguments "would be best addressed at the summary judgment stage or perhaps even at trial." Pretrial Order No. 38, at 2. Nevertheless, ignoring the Court's suggestion, ED&F moves to dismiss once again based on many of the same arguments that the Court already rejected or determined would be more appropriately raised at a later stage of the case. ED&F's motion to dismiss should be denied.

## PRELIMINARY STATEMENT

Between 2012 and 2015, ED&F conducted dividend arbitrage investments for various U.S. pension plans, including nine plans that used Acer as their authorized agent when dealing with ED&F.[2] To effectuate these transactions, ED&F issued "Tax Vouchers" certifying that the Plans owned certain Danish securities on the relevant record date and received a dividend net of withholding taxes. These Tax Vouchers were critical to the Plans' withholding-tax refund requests that were submitted to SKAT. Without the Tax Vouchers, no refund request would be made, and no refund would be issued by SKAT. Third-Party Plaintiffs believed ED&F would only generate

---

[2] The "**Plans**" relevant to these actions are DW Construction, Inc. Retirement Plan, Kamco Investments Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates LLC 401K Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan, Newsong Fellowship Church 401k Plan, and The Goldstein Law Group PC 401k Profit Sharing Plan.

accurate Tax Vouchers to support the Plans' refund requests, and they relied on the accuracy of those Tax Vouchers by engaging in dividend-arbitrage transactions through ED&F for many years.

In 2018, SKAT sued the Plans and many others, claiming that it paid tax refunds to the Plans based on false information. In September 2019, ED&F, in a filing in a U.K. court proceeding, admitted for the first time that forty-two (42) of the Plans' seventy-two (72) Tax Vouchers were faked ("**Disavowed Tax Vouchers**"). After Third-Party Plaintiffs were brought into this case in 2020 by SKAT, they filed third-party claims against ED&F due to its conduct. In October 2021, the Court held that Crema and Wittwer had adequately alleged personal jurisdiction over ED&F, but it nevertheless granted ED&F's motion to dismiss while permitting the Third-Party Plaintiffs to file a motion to amend their pleading. *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2021 WL 4993536, at *11 (S.D.N.Y. Oct. 26, 2021) ("**October 2021 Order**"). On November 29, 2021, Third-Party Plaintiffs moved for leave to amend ("**Motion to Amend**"). Doc. No. 684. ED&F opposed the motion ("**Opposition to Motion to Amend**"), arguing that the proposed amendments would be futile based on personal jurisdiction and failure to state a claim. Doc. No. 741.

On May 23, 2024, the Court granted Third-Party Plaintiffs' motion for leave to amend ("**Leave to Amend Order**"). Doc. No. 1017. In granting the motion, the Court explained that "the existence of genuine issues of material fact precludes the Court from determining as a matter of law that personal jurisdiction over EDF is lacking" and that "denial of leave to amend based on futility by reason of lack of personal jurisdiction therefore would be inappropriate at this stage of the case." *Id*. Third-Party Plaintiffs filed the ATPCs, and on June 11, 2024, ED&F filed its latest a motion to dismiss ("**Motion to Dismiss**"). Doc. Nos. 1019, 1039.

Since the time Third-Party Plaintiffs moved for leave to amend in November 2021, much has happened to ED&F because of its unlawful conduct. First, ED&F's offices were raided by U.K. authorities in November 2022, along with the homes of various ED&F personnel, in connection with investigations by Danish and German criminal authorities. ED&F challenged the lawfulness of the raids, but on April 17, 2024, a U.K. appellate court ruled that the raids were lawful. Dillman Decl., Ex. A (*MCML Limited (Formerly ED&F Man Capital Markets Limited) and Victoria Foster v. Southwark Crown Court* [2024] EWCA (Civ) 861 (Eng.)).

Second, over a year after Third-Party Plaintiffs sought leave to amend, SKAT sued ED&F in the U.K. on December 5, 2022, alleging, for the first time, that ED&F had engaged in fraud. Dillman Decl., Ex. B (*Skatteforvaltningen (the Danish Customs and Tax Administration) v. MCML Limited (previously known as ED&F Man Capital Markets* [2024] EWHC 148 (Comm) 861, ¶ 7 (Eng.)) ("SKAT now allege[s] that ED&F Man knew that the representations in the Tax Vouchers were false or was reckless."). SKAT's fraud claim has since survived ED&F's motion to strike, with the U.K. court commenting on February 2, 2024, that:

> The general interests of justice, and the wider interests of society as a whole, are not well served if serious financial fraud is not brought to light. If fraud has been committed, the fraudsters should be exposed.

*Id.*, at ¶ 123.

Third, on June 5, 2023, the U.K.'s Financial Conduct Authority ("**FCA**") fined ED&F £17,219,300 due to the very conduct on which Third-Party Plaintiffs base their claims.[3] The FCA summarized the basis for levying its fine:

---

[3] Dillman Decl., Ex. C, Financial Conduct Authority, Enforcement and Market Oversight Division, Final Notice (June 5, 2023) ("**FCA Final Notice**"). The FCA's fine would have been £22.43 million if not for ED&F having agreed to resolve the matter with the FCA, which allowed ED&F to qualify for a 30% discount under the FCA's executive settlement procedures. *Id.* at ¶ 2.14.

[ED&F] did not conduct its business with due skill, care and diligence because its Compliance function failed to provide any meaningful oversight to the trading activities of the Equity Finance Desk. It failed to take any steps to understand the trading activities, it failed to properly consider possible risks and what monitoring or review or other systems and controls would be appropriate from a compliance perspective in relation to the dividend arbitrage trading.

[ED&F] did not take reasonable care to organise and control its affairs responsibly and effectively, with adequate risk management systems because whilst its dividend arbitrage trading business was underpinned by the requirement for legal and tax opinions, it had inadequate systems and controls to ensure the existence of those opinions and to check that trading was carried out in line with them. Further, there were no systems and controls to monitor or review the trading activities of the Equity Finance Desk, thus allowing its trading activities to proceed entirely unchecked.

*Id.* at ¶ 2.13.   ED&F sought to cancel its FCA authorization shortly after the FCA's fine.  The FCA has yet to accept ED&F's cancellation.[4]

All told, these last few years have not been good for ED&F.  Desperate to escape this Court's jurisdiction, ED&F takes the "kitchen sink" approach.  It presents arguments based on (i) personal jurisdiction; (ii) subject matter jurisdiction; (iii) statute of limitations; and (iv) failure to state a claim pursuant to Rule 12(b)(6).  This approach, however, should fail as many of its arguments have already been expressly rejected by the Court or determined would be better addressed at summary judgment or trial.  *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2021 WL 4993536, at *11; Pretrial Order No. 38, at 2.  For these reasons and those set forth below, ED&F's motion should be denied.

---

[4] MCML Limited, FCA's Financial Services Register (last visited June 25, 2024).  Cancellation of FCA authorization means that an institution can no longer engage in regulated financial service activities and offer credit to consumers.  *See* Apply for Financial Conduct Authority (FCA) Authorization (last visited June 25, 2024).

## FACTUAL BACKGROUND

In 2012, ED&F executed Custody Agreements with the Plans. Acer ATPC ¶ 7; Individuals' ATPC ¶ 9.[5] These Plans included the DW Construction, Inc. Retirement Plan (the "**DWC Plan**") and American Investment Group of New York, L.P. Pension Plan (the "**AIG Plan**") — pension plans of which Darren Wittwer and Robert Crema were trustees and sole participants, respectively. Individuals' ATPC ¶ 1, 99; *id.* at Ex. A; Acer ATPC ¶ 8. Pursuant to the Custody Agreements, ED&F maintained the Plans' brokerage accounts. Acer ATPC ¶ 9; Individuals' ATPC ¶ 14. At all times, ED&F was prohibited from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation. Acer ATPC ¶¶ 10-11; Individuals' ATPC ¶¶ 15-16.

Acer is a limited liability company, operating out of Utah, that was designated as attorney-in-fact for the Plans in connection with the investments in U.S. and foreign securities transactions conducted through the Plans' ED&F brokerage accounts. Acer ATPC ¶ 12; Individuals' ATPC ¶¶ 12, 17. ED&F agreed to communicate with the Plans through Acer and did so through Acer's Utah office. Acer ATPC ¶ 15; Individuals' ATPC ¶ 20. Between December 2013 and August 2015, the Plans traded in shares of Danish companies through ED&F. Acer ATPC ¶ 22; Individuals' ATPC ¶ 27. Pursuant to the U.S.-Denmark Tax Treaty, U.S. pension plans such as the Plans that suffered a withholding tax on dividends were entitled to reclaim that withheld tax from the Danish government. Acer ATPC ¶ 20; Individuals' ATPC ¶ 25.

---

[5] Citations to "Individuals' ATPC" is to the Amended Third-Party Complaint and Jury Demand filed by Third-Party Plaintiff Darren Wittwer on May 28, 2024 (Doc. No. 1019). The Third-Party Complaint and Jury Demand filed by Third-Party Plaintiff Elaina M. Crema, as personal representative of the estate of Robert V. Crema is largely identical in all material respects.

As a result of the Plans' Danish trades through ED&F, ED&F generated numerous documents detailing and describing the transactions, including buy/sell confirmations for the Plans' transactions, account statements showing that the transactions occurred, and Tax Vouchers describing the Plans' security holdings and receipt of dividends net of withholding taxes. Acer ATPC ¶ 23; Individuals' ATPC ¶ 28. ED&F provided these documents to Acer, who was acting as the Plans' authorized agent. Acer ATPC ¶ 24; Individuals' ATPC ¶ 29. ED&F also sent the Tax Vouchers directly to Goal Taxback Ltd. ("**Goal Taxback**"), a processing agent, who ED&F knew would then submit those applications to SKAT on behalf of the Plans. Acer ATPC ¶¶ 31-32; Individuals' ATPC ¶¶ 36-37. ED&F prepared all of the Tax Vouchers that were submitted to SKAT for withholding tax reclaims. Acer ATPC ¶ 30; *see* Individuals' ATPC Ex. B. Each Tax Voucher created by ED&F stated specifically where the relevant Plan was located, including addresses in Utah, Pennsylvania, and New York. *See* Acer ATPC Ex. A.

At all times, ED&F had exclusive direct control over the Plans' brokerage accounts. Acer ATPC ¶ 37; Individuals' ATPC ¶¶ 43, 114. ED&F provided account statements reflecting all Danish securities transactions in the ED&F brokerage accounts to the Plans through Acer at its Utah office. Acer ATPC ¶ 39; Individuals' ATPC ¶ 45. Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F when requesting the withholding-tax refunds from SKAT, and in continuing to conduct trades for the Plans through ED&F in 2014 and 2015. Acer ATPC ¶ 40; Individuals' ATPC ¶ 46.

In 2018, SKAT sued the Plans and certain individual defendants seeking damages and/or restitution for the withholding-tax refunds SKAT paid to the Plans. Acer ATPC ¶ 49; Individuals' ATPC ¶ 49. In 2020, SKAT sued Acer, Wittwer, and Crema as co-defendants in each of the actions, alleging that they had aided and abetted the Plans' purported fraud against SKAT. Acer

ATPC ¶ 50; Individuals' ATPC ¶ 51.  SKAT also sued ED&F in the United Kingdom ("**U.K. Proceeding**") related to these same transactions.  Acer ATPC ¶ 52; Individuals' ATPC ¶ 56.  In the U.K. Proceeding, ED&F stated that forty-two of the seventy-two tax vouchers it prepared for the Plans contained false information.[6]  Acer ATPC ¶ 54.  Had ED&F not verified these Disavowed Tax Vouchers for the Plans, the Plans would never have submitted the refund applications to SKAT, causing the Third-Party Plaintiffs' involvement in this suit.  Acer ATPC ¶ 70; Individuals' ATPC ¶ 66.

ED&F now asks this Court to dismiss the claims of Third-Party Plaintiffs based on purported lack of personal jurisdiction, lack of subject matter jurisdiction, the tolling of the statutes of limitations on certain claims, and failure to state a claim.

## PROCEDURAL HISTORY

Third-Party Plaintiffs filed their first third-party complaints against ED&F on January 29, 2021.  Doc. Nos. 527-529.  ED&F moved to dismiss those third-party complaints in April 2021.  Doc. Nos. 573-577.  With the October 2021 Order, the Court held that Crema and Wittwer had adequately alleged personal jurisdiction over ED&F, but it still granted ED&F's Motion to Dismiss without prejudice and with leave to file a motion to amend.  October 2021 Order.

On November 29, 2021, Third-Party Plaintiffs filed their Motion to Amend.  Doc. No. 684.  The Motion to Amend was fully briefed by March 4, 2022.  Doc. No. 741–42.  Ignoring the Court's ruling that Crema and Wittwer had sufficient allegations for personal jurisdiction, ED&F filed is Opposition to Motion to Amend arguing the proposed amendments do not remedy the jurisdictional deficiencies in the Third-Party Complaints.  Doc. No. 741, 3-9.  During the time the

---

[6] According to ED&F's "Annex E," five of the seven Tax Vouchers that ED&F created for Wittwer and four of the eleven Tax Vouchers that ED&F created for Crema contain inaccurate information.  *See* Individuals' ATPC Ex. B; Individuals' ATPC Ex. C.

Court considered the Motion to Amend, SKAT and the entire group of MDL Defendants, including Third-Party Plaintiffs, moved for summary judgment. The Court denied summary judgment on November 20, 2023. Doc. No. 924.

On May 23, 2024, the Court issued its Leave to Amend Order, ruling that "the existence of genuine issues of material fact precludes the Court from determining as a matter of law that personal jurisdiction over ED&F is lacking" and that "denial of leave to amend based on futility by reason of lack of personal jurisdiction therefore would be inappropriate at this stage of the case." Doc. No. 1017. The Court further declined to deny the Motion to Amend on futility grounds because it found that ED&F "has referred to evidentiary material outside the complaint that may not be considered without converting the motion into one for summary judgment." *Id.* Accordingly, the Amended Third-Party Complaints were filed. *See* Doc. No. 1019. ED&F filed its Motion to Dismiss on June 11, 2024, accompanied by a supporting memorandum ("**ED&F Memorandum**"). Doc. No. 1039.

## ARGUMENT

I.    **ED&F is subject to specific personal jurisdiction in New York, Pennsylvania, and Utah.**

    *a.    Exercise of personal jurisdiction over ED&F comports with the Court's prior personal jurisdiction rulings.*

ED&F's Motion to Dismiss is, in effect, a motion for reconsideration disguised as a new Rule 12(b)(2) motion. This Court already considered various personal jurisdiction arguments in this MDL as to ED&F. The Court should follow its prior rulings and, once again, exercise personal jurisdiction over ED&F.

First, specifically as to Crema and Wittwer, this Court already recognized that they adequately pleaded personal jurisdiction in their claims against ED&F when the Court ruled that "**[it] cannot conclude as a matter of law that jurisdiction is lacking with respect to the**

**complaints of Wittwer and Crema**." October 2021 Order, at 13 (emphasis added). While the Court instructed them to nevertheless amend their Third-Party Complaints, the adequacy of Crema and Wittwer's personal jurisdiction allegations was already decided. *Id.* at 13. ED&F's latest Motion to Dismiss is a blatant attempt to have the Court reconsider a personal jurisdiction ruling that *was made nearly three-years ago*. ED&F's 12(b)(2) arguments as to Crema and Wittwer must be rejected for this reason alone.

Second, ED&F's personal jurisdiction arguments are no different than the arguments it made to oppose Third-Party Plaintiff's Motion to Amend. *Compare* Opposition to Motion to Amend, at 3-9 *with* ED&F Memorandum, at 5-12. ED&F's arguments should be rejected again. Indeed, ED&F opposed the Motion to Amend based on futility for lack of personal jurisdiction. The Court granted leave to file the Amended Third-Party Complaints. Leave to Amend Order, at 2. In doing so, the Court explained that "[d]enial of leave to amend based on futility by reason of lack of personal jurisdiction . . . would be inappropriate at this stage of the case." *Id.* at 1. Nevertheless, ED&F once again argues for dismissal of the Amended Third-Party Complaints on the same personal jurisdiction grounds.[7]

Third, the Court already exercised jurisdiction over ED&F in the Goldstein Plan's third-party action because of ED&F's "business relationship" with the Goldstein Plan in New York. *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-5053 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020). The Court concluded that ED&F was subject to personal jurisdiction under two sections of the New York long-arm statute because of

---

[7] Importantly, the standard for dismissal for lack of personal jurisdiction under Rule 12(b)(2) is the same as that for denial of a motion to amend based on futility. *See Oppedisano v. Zur*, No. 20 CV 5395 (VB), 2022 WL 4134436, at *2 (S.D.N.Y. Sept. 12, 2022) ("An amended pleading is futile when, as a matter of law, the proposed complaint would not survive a Rule 12 motion, such as... a Rule 12(b)(2) motion for lack of personal jurisdiction.").

that business relationship. *Id.* at *1. Here, ED&F's conduct giving rise to Acer's third-party claim in the Goldstein Action is the same as the conduct that allowed the Court to already exercise jurisdiction over ED&F in this same related action. *Compare* Acer's ATPC ¶¶ 7, 8, 16–18 *with In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2020 WL 70938, at *1. Similarly, this Court determined that *Acer* was subject to personal jurisdiction in New York and Pennsylvania because of Acer's "business relationship" with the Plans in those states. *In re SKAT Tax Refund Scheme Litig.*, No. 18-CV-05053, 2020 WL 7059843, at *3 (S.D.N.Y. Dec. 2, 2020). Here, just as Acer could not "escape jurisdiction in Pennsylvania or New York after purposefully engaging in a business relationship with entities in each of these states that led to SKAT's claims in this action," the same holding should apply to ED&F. *Id.* *See* Acer's ATPC ¶¶ 4, 16, 17, 18; Individuals' ATPC ¶ 21-23.

Accordingly, exercising personal jurisdiction over ED&F is consistent with the Court's prior personal jurisdiction decisions in these cases.

> b. *Third-Party Plaintiffs made a prima facie showing to permit personal jurisdiction over ED&F.*

Even if this Court determines that it should nevertheless revisit the adequacy of Third-Party's Plaintiff's allegations, the Amended Third-Party Complaints sufficiently allege facts to support the Court's exercise of personal jurisdiction.

To survive a Rule 12(b)(2) motion, a pleading need only make a prima facie showing of jurisdiction. *See, e.g., Metro. Life Ins. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citation omitted); *see also* Fed. R. Civ. P. 12(b)(2). In a diversity action, the amenability of a foreign corporation to suit in federal court is determined by the law of the forum state. *Metro. Life Ins. Co.*, 84 F.3d at 567. "In multidistrict litigation . . . personal jurisdiction must be proper in the forum from which each complaint was transferred." *In re SKAT Tax Refund Scheme Litig.*, No.

-10-

18-md-2865 (LAK), 2020 WL 7059843 at *2. In assessing whether jurisdiction is proper, a court must look first to the forum state's long-arm statute, and if the exercise of jurisdiction is appropriate under that statute, it must decide whether such exercise comports with due process. *Winston & Strawn v. Dong Won Sec. Co.*, No. 02-civ-0183, 2002 WL 31444625, at *3 (S.D.N.Y. Nov. 1, 2002).

> i.    *The Court may exercise personal jurisdiction pursuant to the relevant long-arm statutes.*

The New York long-arm statute provides that specific jurisdiction may be exercised over a foreign entity who "commits a tortious act within the state" or "commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a). Specifically, as to Acer's third-party claims in New York, ED&F's conduct falls under the New York long-arm statute. ED&F committed a tort outside the state by creating, at a minimum, the Disavowed Tax Vouchers and false account statements, and it caused injury in New York by providing to the Goldstein that falsified financial information, with Acer operating as the Plan's agent. ED&F should have reasonably expected that the creation of false financial information on behalf of a New York-based pension plan would cause injury in New York, including injury to the Plans' agent, Acer. *See* Acer ATPC, ¶¶ 4, 16, 18. Furthermore, ED&F derived substantial revenue from international commerce — namely, its "business relationship" with the Goldstein Plan conducted through Acer. *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-5053 (LAK), 2020 WL 70938 at *1 ("By engaging in a long-term business relationship with a New York entity, ED&F Man purposefully availed itself of the benefits of doing business in New York. . . ."). Thus, personal jurisdiction in New York over ED&F in Acer's third-party action is proper for this reason.

The long-arm statutes of Utah and Pennsylvania allow personal jurisdiction over a nonresident defendant to the fullest extent permitted by the due process clause of the Fourteenth Amendment. Utah Code Ann. § 78B–3–201(3); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999); 42 Pa.C.S.A. § 5322(a)(3); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). Because the long-arm statutes analysis for Utah and Pennsylvania is consistent with the constitutional analysis, Third-Party Plaintiffs move on to ED&F's due process argument.

   ii. *Personal jurisdiction over ED&F satisfies due process.*

Exercising jurisdiction over ED&F in New York, Utah and Pennsylvania would comport with due process. Due process requires that (1) the defendant have "minimum contacts" with the forum such that it should "reasonably anticipate being haled into court there" and (2) defending the suit in the forum would comport with "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts may exercise specific jurisdiction over defendants that "purposefully derive benefit from their interstate activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985) (internal quotation omitted). For this reason, jurisdiction is proper where a defendant "has created continuing obligations between himself and residents of the forum" and "manifestly has availed himself of the privilege of conducting business there." *Id.* at 476 (internal quotation omitted).

   1. *ED&F has sufficient minimum contacts with the forum states.*

A non-domiciliary tortfeasor "has minimum contacts with the forum State—and may thus reasonably foresee the prospect of defending a suit there—if it purposefully avails itself of the privilege of conducting activities within the forum State." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 216 (2000) (internal quotations omitted). Here, ED&F has sufficient minimum

contacts with Utah, New York, and Pennsylvania because ED&F's relevant conduct was purposefully directed toward those states. ED&F had a business relationship with and conducted financial transactions for the Plans based in those states.[8] At all times, ED&F had an ongoing obligation to the Plans and Third-Party Plaintiffs to provide accurate financial information. Acer ATPC ¶ 103; Individuals' ATPCs ¶ 104. ED&F's business relationship continuing obligations with residents of the forum states ultimately gave rise to the claims in this case. *See Alfwear, Inc. v. IBKUL UBHOT Ltd.*, No. 221CV00698DBBJCB, 2022 WL 3705483, at *3 (D. Utah Aug. 26, 2022) ("The 'continuing relationships' framework considers an out-of-state defendant's relationship and obligations with citizens of the forum state.") (*citing Burger King Corp.*, 471 U.S. at 473). Because ED&F has "'purposely directed' [its] activities at residents of the forum," the court may exercise specific jurisdiction for injuries that "arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472–73.

As to New York and Pennsylvania, ED&F had a "business relationship" with the New-York based Goldstein Plan and the Pennsylvania-based Newsong Plan, with Acer acting as their agent. Acer ATPC ¶¶ 4, 16, 17, 18. ED&F's business relationship with those Plans directly led to Acer's third-party claims. Acer ATPC ¶ 4; *see In re SKAT Tax Refund Scheme Litig.*, No. 18-CV-05053, 2020 WL 7059843 at *3.

As to Utah, Acer had a business presence there and Kaminer (acting for Acer) was a Utah resident. Acer ATPC ¶¶ 8, 14, 27. Indeed, each Third-Party Plaintiff alleges that Acer had a business presence and operated out of Utah at all times. Acer ATPC ¶¶ 8–9, 12–16; Wittwer ¶¶ 5,

---

[8] ED&F's personal jurisdiction argument curiously notes that Acer is a Delaware corporation with headquarters in Florida. *See* ED&F Memorandum, at 11. ED&F does not cite any case law to suggest that this is relevant to the Court's personal jurisdiction inquiry because it is, indeed, not relevant. ED&F's mention of Acer's legal presence in those states appears to be nothing more than a red herring.

12, 19; Crema ¶¶ 5, 12, 19.  Furthermore, ED&F regularly provided documents — including those relating to the Plan's transactions, holdings of shares in Danish companies, and tax vouchers that are central to the third-party claims — to the Plans through Acer in Utah.  Acer ATPC ¶¶ 24-25; Wittwer ¶¶ 20, 29, 38; Crema ¶¶ 20, 29, 38.  ED&F would also email copies of the Tax Vouchers and account statements to Kaminer, working for Acer, which was the agent for each of the Plans.  Acer ATPC ¶¶ 15, 27; Wittwer ¶ 38; Crema ¶ 38.  Wittwer, the sole participant of the Utah-based DWC Plan, also resided in Utah at all relevant times.  Wittwer's ATPC, ¶¶ 1, 11–13.  As for Crema, ED&F conducted financial transactions for his plan, the AIG Plan, by working directly with Acer in Utah.  Crema ATPC, ¶¶ 1, 5, 12, 18, 20.  ED&F's Acer-contact for the Plans was also Kaminer, who was a Utah resident and was also one of the AIG Plan's trustees.  Crema ATPC ¶¶ 13, 19, 20.  By engaging in this conduct, which let to a benefit by ED&F, it opened itself up to the courts of Utah.

Furthermore, it was foreseeable that ED&F could be haled into court in Utah, New York, and Pennsylvania because its financial services caused its clients harm in those states.  The Plans were based in Utah, New York, and Pennsylvania.[9]  Acer ATPC ¶¶ 4, 8; Wittwer ¶¶ 1, 12; 13; Crema ¶¶ 1, 12; 13.  Any wrongful conduct by ED&F — *i.e.*, falsifying Tax Vouchers — would unsurprisingly cause injury — not only to the Plans — but also to (i) the Plans' sole participants; (ii) the third-party beneficiaries of the Plans; and (iii) the Plan's authorized agent, Acer.  Indeed, the Third-Party Plaintiffs allege, first and foremost, that ED&F intended to deceive the Third-Party Plaintiffs—not just SKAT—by creating the Disavowed Tax Vouchers.  Acer ATPC ¶¶ 59-60, 64, 75; Individuals' ATPCs ¶ 64-66, 68-70.  It cannot be a surprise to ED&F to be subject to

---

[9] This is true except as to the AIG Plan, which was based in New Jersey and, later, Florida. However, the Utah-based Kaminer was a trustee for the AIG Plan and received ED&F correspondence in Utah.  Crema ATPC ¶¶ 13, 19, 32.

jurisdiction in states where it caused harm through its business relationship in those states. Therefore, ED&F has sufficient minimum contacts to warrant this Court's exercise of specific personal jurisdiction in Utah, New York, and Pennsylvania.

ED&F cites *Hartman v. DynCorp Int'l, LLC*, No. 2:12-CV-00364-TS, 2012 WL 4480553, at *4 (D. Utah Sept. 28, 2012) for the general proposition that Acer would have been injured irrespective of where Acer was operating. ED&F Memorandum, at 12. As pointed out in *Hartman*, however, "[c]ourts have found phone calls, faxes, letters, or e-mails sent by out-of-state defendants to forum residents to be sufficient . . . [specifically] when the e-mails or other contacts directly give rise to the cause of action." *Hartman*, 2012 WL 4480553, at *4. Here, Acer acted as agent for the Plans and received ED&F's false information made for those Plans in furtherance of the Plan's financial transactions that ED&F was conducting. Acer ATPC ¶¶ 9, 54, 60, 67.

ED&F also relies on *Walden v. Fiore*, 571 U.S. 277, 285 (2014) for the notion that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." ED&F Memorandum, at 8. However, here, ED&F did more. As alleged, it purposefully engaged in continuing and ongoing business relationships in Utah, New York, and Pennsylvania that involved ED&F (i) conducting trades for those Plans over a number of years; (ii) routinely sending the Plans and Acer account statements, investment information, and tax vouchers; and (iii) taking fees for its work and paying fees to Acer. These relationships gave rise to the very claims in the Amended Third-Party Complaints and proximately caused Third-Party Plaintiffs' injuries. *See* Acer ATPC ¶¶ 16–18; 24-25; Wittwer ¶ 5; Crema ¶ 5. Indeed, "[w]here the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). Ultimately, ED&F's

-15-

"suit-related conduct" — creating and transmitting false business records for use by parties in the forum states — created a "substantial connection" with those states. *Walden*, 571 U.S. at 284.

ED&F's reliance on *CHG Companies, Inc. v. Medina Mem'l Hosp.*, No. 2:17-CV-00551-DB, 2017 WL 5712689 (D. Utah Nov. 27, 2017) is also inapposite. ED&F cites to *CHG Companies* for the proposition that numerous emails and telephone calls between a plaintiff and out-of-state defendant is insufficient to confer personal jurisdiction over the defendant in the plaintiff's state. ED&F Memorandum, at 12. However, in *CHG Companies*, the parties only exchanged emails and telephone calls for a short period of negotiation before the parties entered into a written agreement, and there was no continuous course of dealing between the parties beyond this negotiation. *CHG Companies, Inc.*, 2017 WL 5712689, at *1. Here, however, ED&F transmitted continuing communications to Acer and the Plans for several years. Acer ATPC ¶¶ 15, 17, 33; Individuals' ATPCs ¶¶ 20, 38. These regular communications between ED&F and the Third-Party Plaintiffs are sufficient to establish ED&F's minimum contacts. *See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."); *Taylor v. Phelan*, 912 F.2d 429, 433 n.4 (10th Cir. 1990) ("So long as it creates a substantial connection, even a single telephone call into the forum state can support jurisdiction."); *Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 89 (S.D.N.Y. 2020) (ruling personal jurisdiction appropriately exercised over third-party defendant who sold vehicle to third-party plaintiff in California but with knowledge automobile was destined for New York where third-party plaintiff resided).

Ultimately, by reaching out of the U.K. and entering into business relationships with the Plans in their home states — and then faking financial transactions in the name of the Plans,

sending Acer and the Plans information concerning the false transactions, and then taking fees from the Plans and paying Acer based on those fake transactions (*see, e.g.*, Acer ATPC ¶¶ 45–48) — ED&F purposefully directed its activities at Utah, New York, and Pennsylvania.

> 2.    *Personal jurisdiction over ED&F would not be unreasonable.*

Because minimum contacts exist, ED&F must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *LaMarca*, 735 N.E.2d at 883. This inquiry requires consideration of five factors: (1) burden on the defendant, (2) interests of the forum state, (3) plaintiff's interest in obtaining relief, (4) interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) shared interest of several states in furthering substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987). ED&F fails to argue in its motion that personal jurisdiction would be unreasonable in the relevant states.

In any event, the burden on ED&F to litigate the claims in Utah, New York, and Pennsylvania is reasonable. ED&F is already litigating the same claims by other parties in each of these forums under the set of facts. In these circumstances, it would be reasonable for ED&F to be held accountable for its conduct in these forums. Additionally, both the forum states and the interstate judicial system have an interest in exercising jurisdiction over ED&F. As this Court has previously noted:

> "[t]he United States has an interest, expressed in the multidistrict litigation transfer statute, in resolving efficiently (and often in a single forum) factually related proceedings over which it had jurisdiction. And requiring [third-party plaintiff] to litigate its claims . . . in a foreign court would risk complicating these consolidated proceedings and generating conflicting findings on the question of [third-party plaintiff's] liability to SKAT. These outcomes would undermine the public interest in the efficient resolution of [third-party plaintiff's] claims, SKAT's claims, and perhaps even some of the many other claims raised throughout this multidistrict litigation."

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-5053 (LAK), 2020 WL 70938 at *5.  The same public interest exists with respect to the Third-Party Plaintiffs' claims against ED&F and necessitates a finding that personal jurisdiction over ED&F in these forums complies with "traditional notions of fair play and substantial justice."

## II.    This Court has subject matter jurisdiction over Third-Party Plaintiffs' Claims.

As part of its "kitchen-sink" approach to avoid liability for its misconduct, ED&F now argues that this Court should dismiss Crema and Wittwer's unjust enrichment claim on subject matter jurisdiction grounds—specifically, based on lack of standing.  This argument ignores that Wittwer and Crema both allege that they were third-party beneficiaries of their Plans and thus, to the extent ED&F unjustly enriched itself, it was ultimately at the expense of Wittwer  and Crema as well.  Wittwer ¶ 11; Crema ¶ 11.  ED&F's standing argument also ignores that Crema and Wittwer are third-party plaintiffs bringing *derivative* claims under Rule 14(a).  *See* October 2021 Order, at 23 (explaining that the Third-Party Plaintiffs' claims are "properly asserted in this action."); *see also* Fed. R. Civ. P. 14(a) (allowing third-party claims against any party "who is or *may* be liable to it") (emphasis added).  ED&F cites *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 299-300 (2d Cir. 2021) for the general proposition that a *plaintiff* must have standing to sue for the Court to exercise jurisdiction.  ED&F Memorandum, at 13.  That case, however, does not involve a *third-party plaintiff* with derivative claims arising from the underlying case by the plaintiff.

Regardless, it is well established that a federal court can exercise ancillary jurisdiction over third-party claims without regard to whether there is an independent basis for jurisdiction "so long as the court has jurisdiction of the main claim between the original parties."  *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 (10th Cir. 1990) (internal citations omitted);

*see Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1126 (2d Cir. 1990) ("[A]ncillary jurisdiction should be more readily available to one haled into court against his or her will than to a plaintiff who has chosen the forum for litigation.").

### III.    Third-Party Plaintiffs' claims are not time-barred under Utah law.

ED&F also challenges Third-Party Plaintiffs' claims on the grounds that they are time-barred by the relevant statutes of limitations under Utah law.[10]  ED&F argues that the Plans should have known of ED&F's fraudulent conduct at the time that SKAT stopped paying withholding-tax refund claims in 2015.  *Id.* at 22.  However, ED&F fails to acknowledge that it only admitted to falsifying tax vouchers for the first time *in September 2019*.  Acer ATPC ¶ 53; Individuals' ATPC ¶ 57.  Third-Party Plaintiffs were added to this case as defendants in 2020 and first filed their third-party complaints against ED&F in 2021.  Doc. Nos. 527-529.  Accordingly, as alleged, the statute of limitations did not begin to run until September 2019, and their claims are not time-barred.  *See Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 748 (Utah 2005) ("a plaintiff who neither knew nor should have known of his or her cause of action until after the [relevant] limitations period expired would receive [the relevant number of] years from the date of actual or constructive discovery within which to file a claim.").[11]

---

[10] Specifically, ED&F argues that the Third-Party Plaintiffs' fraud-based claims are barred by the three-year statute of limitations for fraud claims and that the Third-Party Plaintiff's claims for negligent representation, breach of fiduciary duty, promissory estoppel, and unjust enrichment are barred by the applicable four-year statute of limitations for those claims.  *See* ED&F Memorandum, at 21-22.

[11] ED&F's argument also fails to acknowledge this Court's summary judgment ruling concerning the timeliness of SKAT's claims.  *See* Memorandum Opinion on Defendants' Consolidated Motion for Summary Judgment, Doc. No. 924 at 35-39.  While Third-Party Plaintiffs do not concede that SKAT's claims are timely, given that Third-Party Plaintiffs' claims are derivative of SKAT's claims, this Court's summary judgment ruling as to SKAT's claims should apply equally to Third-Party Plaintiffs' claims.

ED&F's argument that Third-Party Plaintiffs should have been on inquiry notice about ED&F's fraud as early as 2015 is surprising. There can be no dispute that ED&F admitted to providing false tax vouchers for the first time in September 2019. *See* Acer ATPC ¶ 53; Individual ATPCs ¶ 57. Third-Party Plaintiffs — and other co-defendants in these related actions — have been diligently pursuing their claims against ED&F since that time.[12] Third-Party Plaintiffs' claims were timely brought after learning of ED&F's misconduct and dismissal on statute of limitations grounds would not be appropriate.

## IV.    Third-Party Plaintiffs state claims for relief that are more than plausible.

ED&F next argues that the Amended Third-Party Complaints should be dismissed for failure to state a claim under Rule 12(b)(6). *See* ED&F Memorandum, at 14-28. On a Rule 12(b)(6) motion, all of the complaint's factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor, *see Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000), including "inferences from the acts alleged that defeat any affirmative defense asserted by the defendant." *Outhouse PR, LLC v. Northstar Travel Media, LLC*, No. 19 Civ. 5979 (NRB), 2020 WL 2512092, at *4 (S.D.N.Y. May 15, 2020). A complaint stating a plausible claim for relief should not be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009).

This Court has already stated that ED&F's arguments would be better addressed at the summary judgment stage or at trial. *See* Leave to Amend Order, at 2 ("EDF's contention that the third-party complaints fail to state claims upon which relief may be granted . . . would be best addressed at the summary judgment stage or perhaps even at trial."). Additionally, given that the standard of review for futility is the same as the standard of review for dismissal under Rule

---

[12] *See* Doc. No. 172 (the Plans' initial third-party complaints against ED&F without a fraud claim) (dated August 2019); Doc Nos. 225, 226 (the Plans' amended third-party complaints adding fraud claims) (dated November 2019). For what it is worth, it was not until December *2022* that SKAT first pursued fraud claims against ED&F. *See* Dillman Decl. Ex. B.

12(b)(6), in granting the Third-Party Plaintiffs motion for leave to amend their third-party complaints on the basis that amendment would not be futile, this Court effectively held that the Third-Party Plaintiffs' claims would survive a motion to dismiss for failure to state a claim. *See Spicer v. Pier Sixty LLC*, No. 08 CIV. 10240 LBS, 2011 WL 446144, at *3 (S.D.N.Y. Feb. 7, 2011) ("the alleged futility of Plaintiffs' motion to amend is measured by the Rule 12(b)(6) standard of failure to state a claim.").

To the extent this Court chooses to consider ED&F's Rule 12(b)(6) arguments, ED&F's arguments fail because Third-Party Plaintiffs have sufficiently pled each of the claims in their Amended Third-Party Complaints.

    *a.*    *Choice of Law*

ED&F addresses all of Third-Party Plaintiffs' claims under Utah law, even though two of Acer's claims are in New York and Pennsylvania. The Court has not yet ruled on choice of law as to Third-Party Plaintiffs' claims. In New York, the "the parties' domiciles and the locus of the [claim]" determine the applicable law. *Schultz v. Boy Scouts of Am., Inc.*, 197, 480 N.E.2d 679 (1985). In Pennsylvania and Utah, choice of law is based on the most significant relationship test, which considers the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 745 (E.D. Pa. 2019); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

Third-Party Plaintiffs' claims in the Utah Actions should be governed under Utah law, and Acer's claims in New York and Pennsylvania should be considered under the law in those jurisdictions. With respect to Wittwer and Crema's actions, Utah has the most significant relationship to the claims because the Plans were based in Utah. Individuals' ATPC ¶¶ 1, 12, 13.

Significantly, as argued above, ED&F's business relationship with the Plans in those states led to these very claims. As such, the Court should apply Utah law to Wittwer and Crema's claims. *See Waddoups*, 54 P.3d at 1059. Similarly, with respect to Acer's action, the Court should apply New York law to the Goldstein Plan because it is based in New York, and the "locus of the [claim]" is thus in New York. Acer ATPC ¶ 4, *see Schultz*, 480 N.E.2d at 679. For Acer's claims in Pennsylvania and Utah, the Court should apply the laws of those states under the "most significant relationship" test. *See Atkinson*, 414 F. Supp. 3d at 745; *Waddoups*, 54 P.3d at 1059; Acer ATPC ¶¶ 4, 8 (alleging location of Plans). In each case, where the injury occurred and where the parties' relationship was centered is the state where the relevant Plans and/or Acer were located. Significantly, ED&F and Acer each had separate business relationships with the Plans, and it was ED&F's business relationship with the Plans that led to the claims by Third-Party Plaintiffs. Nevertheless, as there is no material difference between the applicable law, Third-Party Plaintiffs will refer to Utah, Pennsylvania, and New York law as needed.

### *Utah Law Claims*

b.    *Acer, Crema, and Wittwer sufficiently pleaded Fraud (Count I).*

To state a claim for fraud, Third-Party Plaintiffs must show "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representer either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." *DeMarco v. LaPay*, No. 2:09-CV-190 TS, 2012 WL 3597540, at *3 (D. Utah 2012); *Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 385

(S.D.N.Y. 2013) (setting forth similar elements); *W. Chester Univ. Found. v. MetLife Ins. Co. of Connecticut*, 259 F. Supp. 3d 211, 218 (E.D. Pa. 2017) (same).[13]

Third-Party Plaintiffs' allegations satisfy each of the fraud elements and the Rule 9(b) heightened pleading standard. Their pleadings set forth the relevant facts "with sufficient particularity to show what facts are claimed to constitute [fraud]." *See Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003). Third-Party Plaintiffs have alleged that they relied on the Tax Vouchers, including the Disavowed Tax Vouchers, and other information provided by ED&F when the Plans submitted tax refunds to SKAT while believing at all times that any information in those Tax Vouchers would be true when they were submitted to SKAT. Acer ATPC ¶¶ 28, 29, 40; Individuals' ATPC ¶¶ 33, 34, 46. Third-Party Plaintiffs have further alleged that ED&F intentionally or recklessly made false statements in the Tax Vouchers and other documentation to induce Third-Party Plaintiffs to rely on those misstatements. Acer ATPC ¶¶ 92-101; Individuals' ATPC ¶¶ 93-102. Moreover, at all times, ED&F had exclusive direct control over the Plans' brokerage accounts, as evidenced by the fact that ED&F certified the Plans' entitlement to refunds. Acer ATPC ¶ 37; Individuals' ATPC ¶¶ 33, 42-43.

   i. *Acer, Crema, and Wittwer sufficiently alleged that false statements were made to induce them to act.*

Notwithstanding those clear allegations, ED&F argues that Third-Party Plaintiffs have not alleged a false statement that was made to induce them to act. But it is clear that Third-Party

---

[13] Rule 9(b) also imposes a heightened pleading standard for fraud claims, requiring that a plaintiff "set forth the 'who, what, when, where and how' of the alleged fraud," as well as "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Northstar Alarm Servs., LLC v. Alder Home Prot.*, No. 2:17-CV-1097-DN-PMW, 2018 WL 3611069, at *1 (D. Utah July 27, 2018); *Tyman v. Pfizer, Inc.*, No. 16CV06941LTSBCM, 2017 WL 6988936, at *7 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, No. 16 CV 6941-LTS-BCM, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002).

Plaintiffs entrusted ED&F to create only truthful documentation as part of the Plans' relationship with ED&F and based all of the Plans' tax refunds on the truthfulness believed to be set forth in ED&F's documentation. Acer ATPC ¶ 98; Individuals' ATPC ¶ 33, 46, 98. Indeed, no tax refund claims would have been submitted to SKAT had ED&F not provided the Plans, including the Plans of which Crema and Wittwer are the trustees and participants, with documentation indicating the Plans' entitlement to the tax refunds. Acer ATPC ¶ 70; Individuals' ATPC ¶ 66. ED&F clearly intended the Third-Party Plaintiffs (and many others) to rely on the information in the Tax Vouchers because otherwise, the reclaim forms would not have been submitted and ED&F would not have charged any fees. Acer ATPC ¶ 43.

### ii. *Acer, Crema, and Wittwer adequately alleged detrimental reliance.*

ED&F further argues that the Third-Party Plaintiffs have not adequately alleged detrimental reliance. ED&F Memorandum, at 17-18. Specifically, ED&F argues that Acer actually relied on ED&F's tax vouchers to its *benefit,* not its detriment, because it collected fees from ED&F as a result of relying on ED&F's falsified tax vouchers, and that Crema and Wittwer were unaware of the tax vouchers at any point prior to their submission to SKAT by Goal Taxback. However, ED&F fails to note that as a result of the Third-Party Plaintiffs' reliance on ED&F's falsified tax vouchers, the Third-Party Plaintiffs requested withholding-tax refunds from SKAT, which subjected them to civil liability—namely, SKAT's allegations that Acer aided and abetted the Plans' alleged misrepresentations and that Crema and Wittwer misrepresented the Plans' Holdings and Dividends. Acer ATPC ¶ 87; Individuals' ATPC ¶ 84. As such, the Third-Party Plaintiffs' reliance on ED&F's falsified tax vouchers was to the detriment of the Third-Party Plaintiffs.

### iii. *Acer, Crema, and Wittwer allege facts supporting a strong inference that ED&F acted with the requisite state of mind.*

The Third-Party Plaintiffs have also alleged the requisite state of mind.  The requisite state of mind can be pled either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Baxter v. A.R. Baron & Co.*, No. 94 CIV. 3913 (JGK), 1996 WL 586338, at *3 (S.D.N.Y. Oct. 11, 1996); *see also Marcantel v. Michael & Sonja Saltman Fam. Tr.*, No. 2:16-CV-250-DBP, 2019 WL 1262648, at *13 (D. Utah Mar. 19, 2019), *aff'd in part, rev'd in part and remanded*, 993 F.3d 1212 (10th Cir. 2021); *Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375, 383 (E.D. Pa. 2013).  Third-Party Plaintiffs' allegations meet this burden under either of these tests.

First, Third-Party Plaintiffs allege that ED&F had the motive to commit fraud because by making these false statements, ED&F "put itself in a position to charge the Plans for custody and clearance fees after SKAT accepted the withholding-tax applications based on the Disavowed Tax Vouchers."  Acer ATPC ¶ 98; Individuals' ATPC ¶¶ 91-92, 97.  This Court has previously held that "alleging the amount that defendants had received in payments from SKAT and describing each defendants' role in the scheme" is sufficient to plead motive and opportunity.  *In re SKAT Tax Refund Scheme Litig.*, 2020 WL 7059843, at *9; *see Baxter*, 1996 WL 586338, at *3 ("The Third Amended Complaint contains allegations that [third-party defendant] realized sales commissions from the allegedly fraudulent sales of securities to the plaintiffs.  This is a direct pecuniary motive tied to the plaintiffs' purchases of securities and provides a sufficient motive for fraud.") (citations omitted).

Moreover, Third-Party Plaintiffs have alleged particular facts constituting evidence of conscious misbehavior or recklessness sufficient to survive a motion to dismiss.  They have alleged that ED&F provided the Disavowed Tax Vouchers and other documentation, including account

statements and trade confirms concerning the Plans' receipt of dividends and suffering of dividend-withholding taxes. Acer ATPC ¶ 96; Individuals' ATPC ¶ 95. Moreover, ED&F was in the best position to know—and indeed, was the only party in position to know—the material facts related to the Plans' Tax Vouchers and entitlement to the tax refunds. Acer ATPC ¶ 107; Individuals' ATPC ¶¶ 42, 67, 108. Finally, at least as to the Tax Vouchers, the mistakes therein do not appear to be one-off, simple mistakes, as ED&F now refuses to stand behind the majority of the Tax Vouchers it created for the Plans—despite the fact that ED&F charged the Plans substantial fees as a result of having provided those Tax Vouchers. Acer ATPC ¶¶ 44, 57, 84, 85; Individuals' ATPC ¶¶ 58, 71.

        c.     *Acer, Crema, and Wittwer sufficiently pleaded Negligent Misrepresentation (Count II).*

In order to state a claim for negligent misrepresentation under Utah law, a plaintiff must allege that the defendant "had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact." *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986); *see also Gallagher v. New York City Health & Hosps. Corp.*, No. 16 CIV. 4389 (GBD), 2017 WL 4326042, at \*7 (S.D.N.Y. Sept. 20, 2017), *aff'd*, 733 F. App'x 3 (2d Cir. 2018); *Car Sense, Inc. v. Am. Special Risk, LLC*, 56 F. Supp. 3d 686, 696 (E.D. Pa. 2014). The Third-Party Plaintiffs have sufficiently pled all of the elements for negligent misrepresentation against ED&F.

The Third-Party Plaintiffs have alleged that ED&F had a pecuniary interest in the transaction because, as detailed above, ED&F charged and collected fees out of the proceeds of successful withholding-tax applications. Acer ATPC ¶ 94; Individuals' ATPC ¶ 91. They have also alleged that ED&F was in a superior position to know the material facts because ED&F made material factual misstatements in the majority of the Tax Vouchers created for the Plans, and knew

or should have known that the Disavowed Tax Vouchers were inaccurate when it prepared them for the Plans because of ED&F's unique role as custodian over the brokerage accounts and the sole entity responsible for creating the Tax Vouchers. Acer ATPC ¶¶ 104-105; Individuals' ATPC ¶¶ 105-106

The Third-Party Plaintiffs have also alleged that ED&F should have reasonably foreseen that they would rely on the Tax Vouchers and other documentation prepared by ED&F. In fact, as noted above, ED&F would send the Tax Vouchers directly to Goal Taxback for the purpose of submitting reclaims applications to SKAT. As also discussed above, ED&F's argument that its misrepresentations were not material is also unavailing. In short, ED&F knew that the Tax Vouchers it created for the Third-Party Plaintiffs were necessary for reclaim applications and would in fact be used for those applications. Finally, ED&F argues that the Third-Party Plaintiffs' negligent misrepresentation claim fails because the Third-Party Plaintiffs fail to allege reliance. However, as discussed above, the Third-Party Plaintiffs relied on the assumption that ED&F would create truthful documentation in submitting its tax refund claims to SKAT. Acer ATPC ¶ 70; Individuals' ATPC ¶ 66.

### d. ED&F owed fiduciary duties to Crema and Wittwer (Count III).

A claim for breach of fiduciary duty "requires proof of four elements: (1) a fiduciary relationship; (2) breach of the fiduciary's duty; (3) causation, both actual and proximate; and (4) damages." *Old Republican Nat. Title Ins. Co. v. Home Abstract & Title Co.*, No. 1:12CV00171, 2014 WL 2918551, at *15 (D. Utah 2014). Crema and Wittwer have sufficiently alleged all of these elements, particularly that a fiduciary duty existed and that ED&F owed such a duty to Wittwer and Crema.

ED&F argues that the claims for breach of fiduciary duty fail because Crema and Wittwer do not allege that ED&F owed a fiduciary duty to them, but rather that ED&F owed a duty to the

Plans. Crema and Wittwer allege in their complaints that "ED&F, as a custodian to the Plan, had a fiduciary relationship" with Crema and Wittwer because of their roles as trustees and sole participants of the Plans. Individuals' ATPC ¶ 113. Crema and Wittwer placed their confidence in ED&F to act in good faith and for the benefit of the Plans. Individuals' ATPC ¶ 113. Furthermore, both Crema and Wittwer were their respective Plan's sole participants and, accordingly, stand to benefit from their Plans' distributions. Individuals' ATPC ¶ 1. The Utah Supreme Court has held that fiduciary duties can run to intended third-party beneficiaries. *See Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 355 P.3d 965, 972 (Utah 2015). Therefore, ED&F owed fiduciary duties to Crema and Wittwer as intended third-party beneficiaries.

ED&F further incorrectly argues that it did not owe any fiduciary duties. Fiduciary relationships "frequently arise out of trust and confidence consensually placed in the superior knowledge, skill, or judgment of another." *Steinbrugge v. Haddock*, 281 F.2d 871, 874 (10th Cir. 1960). Utah courts specifically hold that a fiduciary is in "a position to have and exercise and does have and exercise influence over another." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990). Courts have also found evidence of a fiduciary relationship between a broker-dealer and customer where "[t]he broker receives an economic benefit from making the recommendation, and the customer makes the investment based upon the broker's advice." *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 886 F.2d 1249, 1258 (10th Cir. 1989). This is precisely what Wittwer and Crema have alleged. They allege that ED&F was the only entity that had direct control over information concerning the Plans' brokerage accounts, securities transactions, receipt of dividends, and entitlement to dividend withholding taxes. Individuals' ATPC ¶¶ 67, 114. They have also alleged sufficient facts to show that the

Disavowed Tax Vouchers were submitted based on ED&F's advice and that ED&F received an economic benefit from that submission.  Individuals' ATPC ¶¶ 98-99.  Therefore, ED&F was in the position to exercise, and did exercise, influence over Crema and Wittwer through its control over these accounts, and therefore breached a fiduciary duty.

>    e.    *The Economic Loss Doctrine does not bar the claims.*

The economic loss doctrine does not bar Third-Party Plaintiffs' tort claims because these claims are outside the scope of the economic loss rule.  Under Utah, Pennsylvania, and New York law, "if the plaintiff can point to separate duties—one in contract and one in tort—the economic loss rule does not bar a plaintiff's tort claims."  *Preventative Energy Solutions, LLC v. nCap Ventures 5 LLC*, No. 16-CV-809-PMW, 2017 WL 87028, at *6 (D. Utah 2017); *see also In re Fowler*, 425 B.R. 157, 190 (Bankr. E.D. Pa. 2010); *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 17 (2d Cir. 2000) (declining to apply economic loss rule to bar damages where, despite existence of contract between the parties, "the claim is one sounding in tort and not a contractual dispute disguised as a tort").

Utah courts have emphasized that in distinguishing between tort and contract claims "what matters for purposes of applying the economic loss rule is whether the relevant *duty* arises in the contract.  That is a much narrower question than whether the *subject matter* of a dispute is covered by a contract."  *Layton Constr. Co. v. Wrapid Specialty, Inc.*, No. 2:14-CV-00402, 2015 WL 7312896, at *17 (D. Utah 2015).  ED&F, however, seeks an overly broad application of the economic loss doctrine to prevent tort claims that arise out of the subject matter covered by a contract.  The Utah Supreme Court has stated that at least some fraud claims "lie outside the scope of the economic loss rule."  *DeMarco*, 2012 WL 3597540, at *2; *see also SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 680 n.8 (Utah 2001) ("plaintiffs may

recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract").

As a broker-custodian of the Plans, ED&F owed a duty to Acer, as the Plans' agent, and to Crema and Wittwer, as the sole participants and as trustees of their respective Plans, outside of the duties that arose from the Custody Agreements—which were agreements between ED&F and the Plans, not with any of the Third-Party Plaintiffs directly. *See In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 317 (S.D.N.Y. 2010) ("[E]ven where a general fiduciary duty is lacking, a relationship of trust and confidence does exist between a broker and a customer with respect to those matters that have been entrusted to the broker . . . This relationship obligates brokers to use reasonable efforts to give [the customer] information relevant to the affairs that [have] been entrusted to them.") (internal quotations omitted). Therefore, Third-Party Plaintiffs' fraud claims are brought under this duty, rather than any duty imposed by an agreement or contract.

The duty underlying a negligent misrepresentation tort is a duty "to exercise reasonable care or competence in obtaining or communicating the information." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (quoting Restatement (Second) of Torts § 552(1) (1965)). Importantly, those claims are "based not on principles of contractual obligation but on principles of duty and reasonable conduct." *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991). Therefore, the duty that ED&F owed the Third-Party Plaintiffs did not arise out of any contract or agreement, and ED&F should not be allowed utilize contract law to shield liability. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001) (where a party "has negligently given false information with knowledge that the other party would act in reliance on that information in a business transaction with a third party," that breaching party is "a tortfeasor and may not utilize

-30-

the law of contract to shield liability in tort for the party's deliberate or negligent misrepresentations.")

Additionally, Crema and Wittwer's breach of fiduciary duty claims arose not from a contract or any agreement with ED&F, but from the parties' fiduciary relationship stemming from their role as the sole beneficiaries of the Plans. "A fiduciary is a person with a duty to act primarily for the benefit of another" and one who "is in a position to have and exercise and does have and exercise influence over another." *First Sec. Bank of Utah N.A.*, 786 P.2d at 1333 (*quoting Dennison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982)). Third-Party Plaintiffs have alleged facts supporting that ED&F held an advantage in its business dealings and that ED&F had superior business knowledge it used to take advantage of Third-Party Plaintiffs. Third-Party Plaintiffs allege that "[b]ecause of ED&F's unique position as broker-custodian for the Plan and its access to all relevant information concerning the Plan's securities, holdings, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend withholding taxes, ED&F possessed all of the information necessary to determine the accuracy of the information of the Disavowed Tax Vouchers at the time ED&F sent the them to the Plan." Individuals' ATPC ¶ 67. Therefore, Crema and Wittwer's claims for breach of fiduciary duty arise out of tort and should not be barred by the economic loss doctrine.

> f.    *Crema and Wittwer sufficiently pleaded Promissory Estoppel (Count IV) and Unjust Enrichment (Count V).*

To state a claim for promissory estoppel, Crema and Wittwer must allege "(1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person." *Cottonwood Imp. Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (Utah Ct. App. 2013). To prove

detrimental reliance on the defendant's representation, the plaintiff "must have done some act which [it] otherwise would not have done." *Id.* at 756.

All of the elements of the promissory estoppel claims have been adequately alleged. First, Crema and Wittwer have alleged that ED&F made clear and definite promises to exercise reasonable care and not engage in fraudulent conduct. Individuals' ATPC ¶¶ 15, 16, 122, 123. Second, Crema and Wittwer sufficiently allege that their reliance on ED&F's promises was reasonable. As the sole participants of their Plans, it is reasonable that Crema and Wittwer would rely on ED&F's promises, and that ED&F intended to induce Crema and Wittwer to continue trading through ED&F with their Plans, so that ED&F would continue earning fees from the transactions. Individuals' ATPC ¶ 81; *see, e.g.*, *Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*, 964 F. Supp. 677, 686 (E.D.N.Y. 1997) (explaining that fiduciaries "are to discharge their duties solely in the interest of the participants . . ."). Therefore, as the trustees and sole participants of their respective Plans, Crema and Wittwer were recipients of ED&F's promises, and it was reasonable for Crema and Wittwer to have acted on those promises. Crema and Wittwer have also sufficiently alleged that ED&F caused a detriment to them as the sole participants of the Plans. If, as SKAT claims, the Plans never held Danish shares that ED&F said they owned, then Crema and Wittwer, as sole participants and ultimate Plan beneficiaries, will have been damaged by ED&F. Individuals' ATPC ¶¶ 127-128. Crema and Wittwer have further been damaged by being dragged into this litigation as a result of their reliance on ED&F. Individuals' ATPC ¶¶ 100-101.

A claim for unjust enrichment requires "(1) a benefit conferred by one person on another; (2) appreciation or knowledge of the benefit by the conferee; and (3) acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to

retain the benefit." *Allen v. Hall*, 148 P.3d 939, 945 (Utah 2006). Crema and Wittwer have adequately alleged each of the elements for unjust enrichment. They have alleged that ED&F collected fees in connection with the Plan's transactions, including transactions involving the Disavowed Tax Vouchers. Individuals' ATPC ¶¶ 89, 91, 132. They have also alleged that it would be unjust for ED&F to retain the fees it collected if SKAT's allegations are proven true, or if SKAT is otherwise entitled to reimbursement. Individuals' ATPC ¶¶ 92, 135. ED&F argues that it was ED&F's benefit was to the Plans' detriment which, while also true, ED&F's fees were ultimately at Wittwer and Crema's loss as the sole plan participants. In other words, any benefit conferred by the Plans to ED&F was a benefit conferred by the sole participant of the Plans, *i.e.* Crema and Wittwer. Finally, ED&F's argument that Wittwer and Crema's unjust enrichment claim is barred by the Plans' Custody Agreement ignores that Wittwer and Crema do not, themselves, bring a breach claim under the Custody Agreement.[14]

> g. *Acer, Crema, and Wittwer sufficiently pleaded Equitable Indemnification (Acer Count III, Wittwer/Crema Count VI).*

Ignoring Rule 14 entirely, ED&F argues that neither Third-Party Plaintiffs nor ED&F have been found liable to SKAT and therefore equitable indemnification cannot be alleged. However, under Rule 14, "a defendant does not have to wait until he has paid a judgment to seek indemnity or contribution from other parties who are jointly liable to the plaintiff." *Wandrey v. McCarthy*, 804 F. Supp. 1384, 1386 (D. Kan. 1992). Additionally, federal courts in Utah, New York, and Pennsylvania regularly allow *third-party claims* without a prior finding of liability.[15] As such,

---

[14] ED&F acknowledges the absence of any contract between ED&F and the Third-Party Plaintiffs, noting that "ED&F is not alleged to have entered into any agreements or direct communications with Crema or Wittwer." ED&F Memorandum, at 34.

[15] *See, e.g.*, *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1566 (10th Cir. 1990) (discussing Utah district court's allowance of third-party claims prior to adjudication of defendant's liability to plaintiff); *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, No. 05-CV-64,

ED&F's argument that liability has not yet been established is an insufficient basis to dismiss the third-party claim for equitable indemnification. Moreover, ED&F's contention that Third-Party Plaintiffs have not alleged "the kind of relationship" to provide a right to indemnification is misguided. ED&F's own case, *Bylsma v. R.C. Willey*, explains that "indemnity is 'granted in ... factual situation[s] in which, as between the parties themselves, **it is just and fair that the indemnitor should bear the total responsibility**. . . .'" 416 P.3d 595, 615 (Utah 2017) (citation omitted) (emphasis added). Here, Third-Party Plaintiffs are being blamed by SKAT for ED&F's creation of false financial information. If SKAT is successful on any of its claim, ED&F should bear responsibility.

### h. *Acer, Crema, and Wittwer sufficiently pleaded Apportionment of Fault (Acer Count IV, Wittwer/Crema Count VII) in the Utah Actions.*

Finally, ED&F argues that Third-Party Plaintiffs' apportionment of fault claims cannot stand because none of the other causes of action asserted against ED&F are actionable. For the reasons stated above, Third-Party Plaintiffs' claims are actionable, and therefore apportionment of fault is properly pleaded. Furthermore, the District of Utah has previously allowed apportionment of fault claims where a third-party plaintiff asserted no substantive claims against the third-party defendants. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Queen Carpet Corp.*, 5 F. Supp. 2d 1246, 1251 (D. Utah 1998) (finding it was in the "best interests of the litigants, as well as the federal judicial system, to allow all claims for fault and for apportionment

---

2006 WL 3840168, at *1 (D. Utah Dec. 21, 2006) (allowing *third-party claims* to be asserted prior to adjudication of plaintiff's underlying claims against the defendant); *Berger v. Cushman & Wakefield of Pennsylvania, Inc.*, No. CV 13-5195, 2016 WL 8716244, at *4 (E.D. Pa. Mar. 11, 2016) ("The fact that [defendant's] liability to [third-party plaintiffs] has not yet been determined conclusively does not prohibit [third-party plaintiffs] from impleading [defendant] under Rule 14"); *Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 55 (S.D.N.Y. 1991) (allowing *third-party claims* despite the fact that third-party plaintiff had not yet been found liable in underlying action).

to be heard in one proceeding" despite the lack of any other claims against the third-party defendant). Therefore, Third-Party Plaintiffs' apportionment of fault claims are proper.

## **CONCLUSION**

For the foregoing reasons, ED&F's motions to dismiss the Third-Party Plaintiff's Amended Third-Party Complaints should be denied.

June 25, 2024                              Respectfully submitted,

                                          K&L GATES LLP

                                          */s/ John C. Blessington*
                                          John C. Blessington (*pro hac vice*)
                                            john.blessington@klgates.com
                                          Brandon R. Dillman (*pro hac vice*)
                                            brandon.dillman@klgates.com
                                          Michael R. Creta (*pro hac vice*)
                                            michael.creta@klgates.com
                                          John L. Gavin (*pro hac vice*)
                                            john.gavin@klgates.com
                                          K&L GATES LLP
                                          One Congress Street, Suite 2900
                                          Boston, MA 02114
                                          T: 617.261.3100
                                          F: 617.261.3175

                                          *Attorneys for Third-Party Plaintiffs*