# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND LITIGATION<br><br>Pertains to case numbers:<br><br>18-cv-5053, 18-cv-9797, 18-cv-9836, 18-cv-9837, 18-cv-9838, 18-cv-9839, 18-cv-9840, 18-cv-9841, 18-cv-10100 | Case No. 1:18-md-02865 (LAK) |

# REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    THE COURT LACKS PERSONAL JURISDICTION OVER ED&F ................. 2

    II.    CREMA AND WITTWER HAVE NOT ESTABLISHED STANDING TO SUE FOR FEES ALLEGEDLY CHARGED TO OTHERS .......................... 4

    III.    THE DISCOVERY RULE DOES NOT AVAIL THIRD-PARTY PLAINTIFFS .................................................................................................... 5

    IV.    THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM ............................. 5

        A.    Third-Party Plaintiffs Fail To State Claims For Fraud Or Negligent Misrepresentation ............................................................... 5

        B.    ED&F Owed No Fiduciary Duties To Crema Or Wittwer .......................... 6

        C.    Third-Party Plaintiffs' Tort And Quasi-Contract Claims Are Barred ......................................................................................................... 7

        D.    Crema And Wittwer Fail To State Claims For Unjust Enrichment Or Promissory Estoppel ......................................................... 8

        E.    Third-Party Plaintiffs Fail To State Claims For Equitable Indemnification Or Apportionment Of Fault .............................................. 9

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           Page(s)

*Alfwear, Inc. v. IBKUL UBHOT Ltd.*,
   21-cv-00698, 2022 WL 3705483 (D. Utah Aug. 26, 2022)..........................................................4

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*,
   598 F.Supp.3d 1264 (D. Utah 2022)..........................................................................................4

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*,
   480 U.S. 102, 107 S. Ct. 1026 (1987)........................................................................................4

*Bylsma v. R.C. Willey*,
   416 P.3d 595 (Utah 2017).........................................................................................................9

*Colosimo v. Roman Cath. Bishop of Salt Lake City*,
   156 P.3d 806 (Utah 2007).........................................................................................................5

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v.*
   *Queen Carpet Corp.*,
   5 F. Supp. 2d 1246 (D. Utah 1998)..........................................................................................10

*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims*
   *Landing, LC*,
   221 P.3d 234 (Utah 2009).........................................................................................................8

*Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*,
   127 F. Supp. 3d 1228 (D. Utah 2015)........................................................................................8

*HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*,
   208 F.Supp.3d 1193 (D. Utah 2016)..........................................................................................7

*Howeth v. Aramark Corp.*,
   10-cv-221, 2011 WL 2414377 (D. Utah June 14, 2011) .........................................................10

*In re Customs & Tax Admin. of Kingdom of Denm. (SKAT) Tax Refund Litig.*,
   18-md-2865 (LAK), 2020 WL 70938 (S.D.N.Y. Jan. 7, 2020)..................................................2

*In re Customs & Tax Admin. of Kingdom of Denm. (SKAT) Tax Refund Litig.*,
   18-md-2865 (LAK), 2021 WL 4993536 (S.D.N.Y. Oct. 26, 2021) ......................................2, 3

*Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
   157 F.3d 933 (2d Cir. 1998)......................................................................................................7

*KTM Health Care, Inc. v. SG Nursing Home, LLC*,
   436 P.3d 151 (Utah Ct. App. 2018) ..........................................................................................7

*MediaNews Grp., Inc. v. McCarthey*,
    432 F.Supp.2d 1213 (D. Utah 2006) ............................................................................... 8

*Nat'l Serv. Indus., Inc. v. B.W. Norton Mfg. Co., Inc.*,
    937 P.2d 551 (Utah Ct. App. 1997) ................................................................................ 9

*Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*,
    355 P.3d 965 (Utah 2015) ............................................................................................... 7

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
    229 F.R.D. 456 (S.D.N.Y. 2005) ..................................................................................... 6

*Reiersen v. Smith*,
    No. 150900184, 2015 WL 11185811 (Utah Dist. Ct. June 17, 2015) ........................... 10

*Rio Algom Corp. v. Jimco Ltd.*,
    618 P.2d 497 (Utah 1980) ............................................................................................... 4

*Salt Lake City Corp. v. ERM-West, Inc.*,
    11-cv-1174, 2012 WL 3779406 (D. Utah Aug. 30, 2012) ............................................. 8

*Sec. Sys., Inc. v. Alder Holdings, LLC*,
    421 F.Supp.3d 1186 (D. Utah 2019) ............................................................................... 8

*Shields v. Citytrust Bancorp. Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................................... 6

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*,
    28 P.3d 669 (Utah 2001) ................................................................................................. 7

*Smith v. Frandsen*,
    94 P.3d 919 (Utah 2004) ................................................................................................. 6

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ........................................................................................... 3

*Walden v. Fiore*,
    571 U.S. 277, 134 S. Ct. 1115 (2014) ........................................................................ 2, 3

**Statutes**

29 U.S.C. § 1132(a) ................................................................................................................ 4

Utah Code § 78B-5-818 ........................................................................................................ 10

Utah Code § 78B-5-820 ........................................................................................................ 10

Utah Code § 78B-5-821 ........................................................................................................ 10

**Rules**

Fed. R. Civ. P. 12(b)(1)...........................................................................................................1

Fed. R. Civ. P. 12(b)(2)...........................................................................................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1

N.Y. C.P.L.R. § 302(a) ...........................................................................................................2

Third-Party Defendant ED&F respectfully submits this reply memorandum of law in further support of its motion to dismiss the Amended Third-Party Complaints.[1]

## PRELIMINARY STATEMENT

Third-Party Plaintiffs' claims fail on numerous, independent grounds. As an initial matter, personal jurisdiction over ED&F is lacking. The jurisdictional pleadings are facially insufficient under any standard, and Third-Party Plaintiffs have wholly failed to provide the factual support needed to carry their burden in the post-discovery context. Crema and Wittwer have also failed to establish their right to sue for fees which, as alleged, were paid not by them but by pension plan entities with pending claims of their own. Even if these jurisdictional infirmities could be set aside, most of Third-Party Plaintiffs' claims were brought too late, and none is adequately pleaded.

In opposition to ED&F's motion to dismiss, Third-Party Plaintiffs grasp at matters outside of the pleadings. Third-Party Plaintiffs dwell at some length on ongoing legal proceedings in England, but nothing that has transpired (or may yet transpire) in England can remedy the deficiencies in the pleadings here. And while Third-Party Plaintiffs suggest that this Court's decision granting them leave to amend should insulate their claims against dismissal, it is clear that this Court's discretionary decision to allow the filing of the Amended Third-Party Complaints does not give Third-Party Plaintiffs a free pass under Rules 12(b)(1), 12(b)(2), or 12(b)(6). As set forth below and in ED&F's moving brief, the Amended Third-Party Complaints should be dismissed in full.

---

[1] Capitalized terms not otherwise defined herein have the meaning given in the Memorandum of Law in Support of Third-Party Defendant's Motion to Dismiss ("Mov. Br."), ECF No. 1039, 18-md-02865 (June 11, 2024). Third-Party Plaintiffs Memorandum of Law in Opposition to MCML Limited's Motion to Dismiss, ECF No. 1079, 18-md-02865 (June 25, 2024) is referenced herein as "Opp. Br."

**ARGUMENT**

**I.    THE COURT LACKS PERSONAL JURISDICTION OVER ED&F**

The jurisdictional allegations with respect to New York and Pennsylvania are insufficient to make out a *prima facie* showing of personal jurisdiction: Acer alleges that ED&F entered into "agreements" with, and maintained "business relationship[s]" with, two pension plans—one that "used" a New York address and another that "used" a Pennsylvania address—for which Acer served as "authorized agent." Acer TPC ¶¶ 4, 7-9, 16-18.[2] But specific jurisdiction cannot rest on the mere allegation of a contractual or "business" relationship with a forum resident, much less one not a party to the suit; what is required is a "substantial connection" with the forum State itself, forged through a defendant's own purposeful contacts with that State, rather than "with persons who reside there." *See Walden v. Fiore*, 571 U.S. 277, 284-86, 134 S. Ct. 1115, 1121-23 (2014). Acer has alleged **no facts** "directly connecting" ED&F to New York or Pennsylvania. *See In re Customs & Tax Admin. of Kingdom of Denm. (SKAT) Tax Refund Litig.* ("*SKAT Tax Refund Litig. II*"), 18-md-2865 (LAK), 2021 WL 4993536, at *7 (S.D.N.Y. Oct. 26, 2021).[3] In fact, Acer alleges no direct interaction at all between ED&F and the Goldstein and Newsong Plans; rather, communications with these plans were allegedly routed through Acer. *See* Acer TPC ¶¶ 13-15, 24, 33, 39.[4] Because ED&F's dealings with the Goldstein and Newsong Plans are

---

[2] Third-Party Plaintiffs' reliance on N.Y. C.P.L.R. § 302(a) for long-arm jurisdiction, Opp. Br. at 11-12, is misplaced for the reasons stated by this Court. *See SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *7.

[3] Third-Party Plaintiffs suggest that this Court has previously exercised specific jurisdiction over ED&F on the basis of an alleged "business relationship" with a pension plan, *see* Opp. Br. at 9-10, but in the cited case, unlike here, ED&F was alleged to have "repeatedly reached into New York" by, among other things, moving funds in and out of a "New York brokerage account." *See In re Customs & Tax Admin. of Kingdom of Denm. (SKAT) Tax Refund Litig.*, 18-md-2865 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020); *see also* Crema TPC Ex. A (Custody Agreement ¶ 2(c); Wittwer TPC Ex. A (Custody Agreement ¶ 2(c)).

[4] *See also* Opp. Br. at 11 (ED&F's alleged "business relationship" with Goldstein Plan "conducted through Acer"), 14 (ED&F allegedly "conducted financial transactions" for AIG Plan by "working directly with Acer in Utah"). In addition, authority to "operate" the "ED&F accounts" was allegedly held by Acer's principal. Acer TPC ¶ 27.

2

alleged to have been indirect—running through Acer—and because Acer does not allege that it "conducted any business or interacted with ED&F" from New York or Pennsylvania, the exercise of specific jurisdiction over ED&F in those States is foreclosed. *See SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *7-8.

With respect to Utah, Third-Party Plaintiffs' jurisdictional showing also falls short.[5] Third-Party Plaintiffs allege that Acer—a Delaware company based in Florida—operated out of Utah "[a]t all relevant times," serving as a conduit between ED&F and various pension plans (including some using Utah addresses). Acer TPC ¶¶ 1, 8-9, 13, 15; Crema TPC ¶¶ 18, 20; Wittwer TPC ¶¶ 18, 20. Lacking, however, is any allegation of a "substantial connection"—or any connection at all—between ED&F and Utah beyond the alleged link to Acer itself, and the plaintiff "cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285-86, 134 S. Ct. at 1122-23.[6] What Third-Party Plaintiffs allege, in essence, is that ED&F kept Acer apprised of financial services performed abroad by sending "account statements and tax vouchers" to Acer. *See* Acer TPC ¶¶ 12, 27, 33, 39; Crema TPC ¶¶ 32, 38; Wittwer TPC ¶¶ 32, 38. Such allegations do not suffice to support specific jurisdiction, *see SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) ("handful of communications and transfers of funds" insufficient), particularly given that Acer's alleged choice of office location in Utah was purely

---

[5] Crema and Wittwer argue that this Court has "already recognized that they adequately pleaded personal jurisdiction," Opp. Br. at 8-9, but Crema and Wittwer moved for reconsideration on that basis, *see* ECF No. 669, 18-md-2865 (Nov. 9, 2021), ECF No. 670, 18-md-2865 (Nov. 9, 2021), and the motion was denied. *See* Order, ECF No. 671, 18-md-2865 (Nov. 10, 2021).

[6] As Third-Party Plaintiffs point out, *see* Opp. Br. at 15-16, the Second Circuit has suggested that where a defendant has had "only limited contacts" with a forum state, an additional jurisdictional requirement may be appropriate: that the plaintiff's injury be "proximately caused" by the defendant's forum-directed conduct. *See SPV Osus*, 882 F.3d at 344 (citation omitted). This consideration militates even further against the exercise of personal jurisdiction over ED&F, for Third-Party Plaintiffs allege injuries caused, not by communications between ED&F and Acer, but by allegedly fraudulent tax refund applications prepared and submitted abroad. *See SKAT Tax Refund Litig. II*, 2021 WL 4993536, at *7 (Acer "claims to have been injured in Denmark by ED&F's alleged fraud on SKAT.").

fortuitous from ED&F's point of view. To the extent ED&F's alleged interactions with Acer may be regarded as forum-directed at all, they were not "purposefully directed" at Utah and did not create a "substantial connection" with that State. *See Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987).[7]

## II. CREMA AND WITTWER HAVE NOT ESTABLISHED STANDING TO SUE FOR FEES ALLEGEDLY CHARGED TO OTHERS

Neither Crema nor Wittwer has alleged a sound basis for suing, in their individual capacities, for the "return" of fees allegedly "collected" from the AIG and DWC Plans. *See* Crema TPC ¶¶ 88-92, 137; Wittwer TPC ¶¶ 88-92, 137. The bare assertion that Crema and Wittwer are third-party beneficiaries of ED&F's "relationship" with the AIG and DWC Plans— *see* Crema TPC ¶ 11; Wittwer TPC ¶ 11—is insufficient, as Crema and Wittwer allege no facts to back up their alleged "third-party beneficiary" status. The "intention of the contracting parties to confer a separate and distinct benefit upon the third party must be clear," *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980), and as set out in ED&F's moving brief, *see* Mov. Br. at 21-22, Crema and Wittwer have not made the requisite showing. *See also Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 598 F.Supp.3d 1264, 1275 (D. Utah 2022) ("[T]he contract itself must affirmatively make this intention clear." (citation and quotation marks omitted)). In fact, the terms of the contracts attached to the amended complaints make clear that enforcement by non-parties was *not* intended. *See* Crema TPC Ex. A (Custody Agreement ¶ 20(f)); Wittwer TPC Ex. A (Custody Agreement ¶ 20(f)).[8]

---

[7] Nor is ED&F alleged to have travelled to, or shipped products to, or directed marketing materials to Utah, distinguishing the circumstances here from those in *Alfwear, Inc. v. IBKUL UBHOT Ltd.*, 21-cv-00698, 2022 WL 3705483 (D. Utah Aug. 26, 2022). *See* Opp. Br. at 13 (citing *Alfwear*, 2022 WL 3705483 at *3).

[8] Crema or Wittwer have not advanced any other basis for suing for or through the AIG and DWC Plans. For example, neither Crema nor Wittwer purports to sue under the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132(a).

### III.     THE DISCOVERY RULE DOES NOT AVAIL THIRD-PARTY PLAINTIFFS

In an effort to avoid the applicable three- and four-year statutes of limitations under Utah law, Third-Party Plaintiffs invoke Utah's discovery rule, arguing that the statutes of limitations "did not begin to run" until the September 2019 filing of ED&F's Amended Defence.  *See* Opp. Br. at 19; *see also* Acer TPC ¶¶ 53-56; Crema TPC ¶¶ 57-60; Wittwer TPC ¶¶ 57-60.  Third-Party Plaintiffs suggest that they could not have known of their claims prior to the filing of the Amended Defence, which they characterize as an admission that certain tax vouchers had been "faked."  *See* Opp. Br. at 2, 19.  But a "plaintiff cannot idly wait for a claim to present itself." *Colosimo v. Roman Cath. Bishop of Salt Lake City*, 156 P.3d 806, 817 (Utah 2007).  Under Utah's discovery rule—whether based in equity or in statute—a plaintiff is charged with a duty of reasonable diligence in pursuing potential claims.  *See id.* at 811, 816-17.  Here, Third-Party Plaintiffs allege that SKAT stopped paying their withholding-tax refund claims in August 2015—*see* Acer TPC ¶ 42; Crema TPC ¶ 48; Wittwer TPC ¶ 48—a clear signal that should have triggered their "duty to inquire into potential claims."  *See Colosimo*, 156 P.3d at 811.  However, third-Party Plaintiffs do not allege (or even argue) that they made any effort to investigate after "SKAT stopped paying withholding-tax refund claims."  *See* Acer TPC ¶ 42; Crema TPC ¶ 48; Wittwer TPC ¶ 48.  Their recourse to the discovery rule is thus misplaced.

### IV.     THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM

#### A.    Third-Party Plaintiffs Fail To State Claims For Fraud Or Negligent Misrepresentation

Third-Party Plaintiffs' claims for fraud and negligent misrepresentation fail because, among other things, Third-Party Plaintiffs have not identified any specific misrepresentation that was intended to, or that in fact did, induce them to act.  *See* Mov. Br. at 15-17.  The tax vouchers containing the purported misrepresentations at issue were allegedly sent by ED&F to Goal

5

Taxback (which passed them on to SKAT), and copies were emailed to Acer. *See* Acer TPC ¶¶ 32-33, 96, 104; Crema TPC ¶¶ 37-38, 95, 105; Wittwer TPC ¶¶ 37-38, 95, 105. Crema and Wittwer do not allege that they even had access to the tax vouchers prior to their submission to SKAT, while Acer does not indicate what the tax vouchers could possibly have been intended to induce *it* to do. Third-Party Plaintiffs retreat to the assertion that they relied generally on the "assumption that ED&F would create truthful documentation," Opp. Br. at 27, but this is not enough to sustain a claim for fraud or negligent misrepresentation.

Third-Party Plaintiffs have also failed to plead fraudulent intent. Even assuming, as Third-Party Plaintiffs suggest, *see* Opp. Br. at 25, that ED&F had a financial motive to prepare tax vouchers because it "collected fees in connection with . . . withholding-tax refund requests"—*see* Acer TPC ¶ 2; Crema TPC ¶ 2; Wittwer TPC ¶ 2—such a "generalized motive . . . is insufficient to allege scienter*,*" *see OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 229 F.R.D. 456, 459 (S.D.N.Y. 2005) (Kaplan, J.), and Third-Party Plaintiffs fail in any event to explain why the fees would have motivated ED&F to prepare allegedly *inaccurate* tax vouchers. Third-Party Plaintiffs add that the alleged inaccuracies "do not appear to be one-off, simple mistakes," Opp. Br. at 26, but far more is required to give rise to a "strong inference" of reckless or deliberate wrongdoing. *See Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Third-Party Plaintiffs also fail to allege any duty owed to them by ED&F—*see* Mov. Br. at 20-21—a pleading deficiency sufficient in itself to warrant dismissal of their negligent misrepresentation claims. *See Smith v. Frandsen*, 94 P.3d 919, 922-23 (Utah 2004).

  **B.**  **ED&F Owed No Fiduciary Duties To Crema Or Wittwer**

Crema and Wittwer do not allege that ED&F entered into any agreements with them but nevertheless argue that ED&F owed them fiduciary duties in their purported capacities as third-

6

party beneficiaries.  *See* Opp. Br. at 27-28.  The argument fails because, as discussed above, Crema and Wittwer have not adequately alleged third-party beneficiary status in the first instance.[9]  Indeed, their pleadings do not suffice even to allege a fiduciary relationship as between ED&F and the pension plans, among other things because Crema and Wittwer do not allege that the relevant brokerage accounts were discretionary, and the contractual agreements attached to their pleadings in fact indicate the contrary.  *See* Crema TPC Ex. A (Custody Agreement ¶ 11(m)); Wittwer TPC Ex. A (Custody Agreement ¶ 11(m)); *see also Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940-41 (2d Cir. 1998) (generally there is no "general fiduciary duty inherent in an ordinary broker/customer relationship").[10]

### C.    Third-Party Plaintiffs' Tort And Quasi-Contract Claims Are Barred

Third-Party Plaintiffs' tort claims run afoul of the economic loss rule, *see* Mov. Br. at 23-24, and their quasi-contractual claims are similarly foreclosed, *see id.* at 24-25, because ED&F's alleged contractual duties are the source and subject matter of these claims.[11]  Third-Party Plaintiffs point out that they were not themselves parties to any contracts with ED&F, *see* Opp. Br. at 29-30, 33 n.14, but this does not rescue their tort and quasi-contract claims, for all of ED&F's alleged duties are rooted in the alleged contractual agreements with the pension plans.

---

[9] The decision in *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 355 P.3d 965 (Utah 2015), relied upon by Third-Party Plaintiffs, *see* Opp. Br. at 28, is distinguishable, as in that case intended third-party beneficiary status was found in connection with an escrow arrangement where the third party was "expressly named" in the escrow instructions and, moreover, was expressly required to perform "specific actions" as a precondition to the disbursement of funds.  *See Orlando Millenia*, 355 P.3d at 972.

[10] The pleadings are inconsistent as to the management of the accounts.  Crema and Wittwer assert on the one hand that it was ED&F that "managed and controlled" the accounts—*see* Crema TPC ¶¶ 2, 15, 33, 87; Wittwer TPC ¶¶ 2, 15, 33, 87—and on the other that it was Acer (or its principal) that was authorized to "manage" or "operate" the accounts.  *See* Crema TPC ¶¶ 12, 19, 32; Wittwer TPC ¶¶ 12, 19, 32.

[11] Third-Party Plaintiffs' reliance on *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669 (Utah 2001), *see* Opp. Br. at 29-30 (citing *SME Indus.*, 28 P.3d at 680 n.8), is misplaced for the reasons given in *KTM Health Care, Inc. v. SG Nursing Home, LLC*, 436 P.3d 151, 170-72 (Utah Ct. App. 2018).  *See also HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 208 F.Supp.3d 1193, 1198 (D. Utah 2016).

*See* Acer TPC ¶¶ 7-11; Crema TPC ¶¶ 9, 14-16; Wittwer TPC ¶¶ 9, 14-16.  Utah courts have, moreover, "applied the economic loss rule to parties who were not parties to a contract," *see Salt Lake City Corp. v. ERM-West, Inc.*, 11-cv-1174, 2012 WL 3779406, at *5 (D. Utah Aug. 30, 2012), and the same policy considerations that support application of the economic loss rule against Third-Party Plaintiffs also support application against them of the prohibition against quasi-contract claims grounded in contractual duties.[12]

### D. Crema And Wittwer Fail To State Claims For Unjust Enrichment Or Promissory Estoppel

Crema and Wittwer purport to assert unjust enrichment claims based on fees allegedly paid not by them, but by the AIG and DWC Plans, respectively.  *See* Crema TPC ¶¶ 132, 135, 137; Wittwer TPC ¶¶ 132, 135, 137.  Third-Party Plaintiffs insist that this is distinction without a difference, *see* Opp. Br. at 33, but they cite no case law for the proposition.  Under Utah law, a plaintiff asserting an unjust enrichment claim must allege that it "conferred a benefit on the party against whom it brings the claim," *MediaNews Grp., Inc. v. McCarthey*, 432 F.Supp.2d 1213, 1239 (D. Utah 2006), *aff'd*, 494 F.3d 1254 (10th Cir. 2007), and neither Crema nor Wittwer is alleged to have conferred any benefit on ED&F.  *See Sec. Sys., Inc. v. Alder Holdings, LLC*, 421 F.Supp.3d 1186, 1194 (D. Utah 2019) ("Case law is clear that it is the claimant who must confer the benefit . . . .").  The unjust enrichment claims are thus foreclosed.

Crema and Wittwer also fail to allege the *sine qua non* of promissory estoppel—a "clear and definite" promise.  *See Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1241-42 (D. Utah 2015).  Crema and Wittwer broadly assert that ED&F

---

[12] The economic loss rule protects the "economic expectations of the contracting parties" and upholds the "intrinsic differences in contract and negligence law."  *See Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 243 (Utah 2009) ("Exempting strangers to a contract from the economic loss rule would convert a contract cause of action into one for tort.").

promised to "exercise reasonable care" and to "create only truthful and accurate documents"—Crema TPC ¶¶ 122-24; Wittwer TPC ¶¶ 122-24—but such allegations do not identify a "clear and definite" promise, and neither Crema nor Wittwer alleges that any promises were made to them individually, further precluding a claim for promissory estoppel. *See* Mov. Br. 25-26.

### E. Third-Party Plaintiffs Fail To State Claims For Equitable Indemnification Or Apportionment Of Fault

Equitable indemnification is available under Utah law where fairness requires a would-be indemnitor—typically in "principal/agent and strict products liability situations"—to compensate another in full for the discharge of a common debt. *See Bylsma v. R.C. Willey*, 416 P.3d 595, 607, 615 (Utah 2017); *see also Nat'l Serv. Indus., Inc. v. B.W. Norton Mfg. Co., Inc.*, 937 P.2d 551, 554 (Utah Ct. App. 1997), *cert. denied*, 945 P.2d 1118 (Utah 1997). Third-Party Plaintiffs predicate their equitable indemnification claims on the possibility that they may someday be required to reimburse SKAT, in whole or in part, for withholding-tax refunds "paid by SKAT to the Plans." *See* Acer TPC ¶ 111; *see also* Crema TPC ¶ 139; Wittwer TPC ¶ 139. Third-Party Plaintiffs appear to be arguing that if the pension plans were not entitled to withholding-tax refunds received from SKAT, then any reimbursement obligation must ultimately fall entirely to ED&F, effectively allowing the pension plans themselves to keep every penny. But Third-Party Plaintiffs do not explain why fairness should demand such a result. Nor could they, because if SKAT were to prevail on its claims against them, then Third-Party Plaintiffs would be seeking from ED&F the very refund amounts which a fact-finder had determined were never theirs (or the pension plans') to have in the first place.

Third-Party Plaintiffs' purported apportionment claims are also conceptually unsound. To the extent that Third-Party Plaintiffs seek contribution from ED&F, such a claim is foreclosed

9

by the Liability Reform Act, *see* Utah Code § 78B-5-820(2), and to the extent that Third-Party Plaintiffs seek merely to ensure that, consistent with principles of apportionment under Utah law, their prospective liability to SKAT will be limited to their share (if any) of fault, they have not stated a cognizable, standalone claim against *ED&F*. *See Reiersen v. Smith*, No. 150900184, 2015 WL 11185811 (Utah Dist. Ct. June 17, 2015) (cause of action for apportionment of fault unsustainable against third-party defendant absent "independent substantive claim").[13]

## CONCLUSION

For the reasons set forth above and in its moving brief, ED&F respectfully requests that the Court dismiss the Amended Third-Party Complaints in their entirety, with prejudice, and grant such other and further relief as the Court deems reasonable.

Respectfully submitted,

Dated: July 2, 2024  
New York, New York

By: /s/ Neil S. Binder  
Neil S. Binder  
M. Tomas Murphy  
**BINDER & SCHWARTZ LLP**  
675 Third Avenue, 26th Floor  
New York, NY 10017  
Tel: 212.510.7008  
Fax: 212.510.7299  
nbinder@binderschwartz.com  
tmurphy@binderschwartz.com

*Counsel for ED&F*

---

[13] Third-Party Plaintiffs rely on *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Queen Carpet Corp.*, 5 F. Supp. 2d 1246 (D. Utah 1998), *see* Opp. Br. at 34-35, but that decision rested on caselaw finding that the apportionment statute did not permit "allocation of fault to a nonparty," *see Queen Carpet*, 5 F. Supp. 2d at 1250-51, and the Liability Reform Act now provides a mechanism for allocation of fault to non-parties. *See* Utah Code §§ 78B-5-818(4), 821(4). Notwithstanding these statutory amendments, federal courts in Utah have permitted cross-claims for apportionment of fault as a means of preserving a defendant's right to oppose dismissal of a co-defendant, *see, e.g., Howeth v. Aramark Corp.*, 10-cv-221, 2011 WL 2414377 (D. Utah June 14, 2011), but that consideration has no applicability here, as SKAT has no claims against ED&F in this proceeding.

10