**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos.:
18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

## PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE REBUTTAL TESTIMONY OF MARCIA S. WAGNER

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

# TABLE OF CONTENTS

                                                                                            **Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ............................................................................................................................2

      Mr. Reish's Report ..............................................................................................................2

      Ms. Wagner's Rebuttal Report ...........................................................................................5

LEGAL STANDARD .....................................................................................................................7

ARGUMENT ..................................................................................................................................8

      I.     Mr. Reish's opinions on IRS enforcement practices are inadmissible, but if the Court permits them, Ms. Wagner's rebuttal opinions should be permitted too. ............................................................................8

      II.    Mr. Reish's opinions based on the IRS's audit of the RJM plan are inadmissible, but if the Court permits them, Ms. Wagner's rebuttal opinions should be permitted too. ..........................................................................11

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ctr. for Indep. of the Disabled, New York v. Metro. Transp. Auth.*, 17-CV-2990 (GBD) (VF), 2023 WL 7403642 (S.D.N.Y. Nov. 9, 2023) ...................................................... 12

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) ........................ 9, 12

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ............................................................ 12

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ............................................................ 8, 9

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) ............................................ 8

*In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-01570 (GBD) (SN), 2023 WL 3116763 (S.D.N.Y. Apr. 27, 2023) .................................................................................. 11

*U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122 (S.D.N.Y. 2015) .................................................................................................................... 12

*United States v. Gatto*, 17-cr-0686 (LAK), 2019 WL 266944 (S.D.N.Y. Jan. 17, 2019) ........................................................................................................ 9

*United States v. Tejada*, 956 F.2d 1256 (2d Cir. 1992) ................................................................... 8

**Statutes and Rules**

Fed. R. Civ. P. 26 ............................................................................................................................. 7

Fed. R. Evid. 403 ......................................................................................................................... 9, 11

Fed. R. Evid. 702 ............................................................................................................................. 7

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to defendants' motion to exclude the rebuttal testimony of Marcia S. Wagner.

## PRELIMINARY STATEMENT

SKAT and defendants both retained practicing pension plan attorneys to provide expert opinions on SKAT's claims that the defendants falsely represented in their tax refund claims that the defendant plans were qualified pension plans within the meaning of section 401(a) of the Internal Revenue Code. Following the experts' submission of their reports, SKAT recognized the intrinsically legal nature of the issue of determining if a pension plan is qualified within the meaning of section 401(a) of the Code, and informed the defendants that it would not seek to call its pension plan expert, Marcia Wagner, as an affirmative witness at trial and only reserved the right to call Wagner as a rebuttal witness to the extent the Court permitted the defendants' pension plan expert, Frederick Reish, to testify.

For the reasons stated in SKAT's motion to preclude his testimony and further detailed herein, SKAT believes that Mr. Reish's testimony is inadmissible. But if the Court permits Mr. Reish to testify about IRS enforcement practices and his conclusions based on the RJM plan audit, the Court should allow Ms. Wagner's rebuttal testimony on these same topics (and other testimony defendants intend to elicit from Mr. Reish at trial). Ms. Wagner's opinions concerning plan qualification requirements rebut directly Mr. Reish's inadmissible opinions that the IRS would not disqualify the plans because, in essence, what SKAT has alleged does not amount to violations of the plan qualification requirements in the Code. And Ms. Wagner's testimony concerning the scope of IRS audits generally and its audit of the RJM plan counteracts Mr. Reish's testimony that the IRS's "no change" letter issued to the RJM plan means that plan (and all the others) were qualified pension plans.

**BACKGROUND**

SKAT retained Ms. Wagner, a pension and employee benefits lawyer, to opine, among other things, "on the standards applicable to the qualification and administration of 401(k) retirement plans."  (Declaration of Thomas E.L. Dewey, dated June 21, 2024, ECF No. 1057 ("Dewey Decl."), Ex. 2 (Expert Report of Marcia S. Wagner, dated Dec. 31, 2021 ("Wagner Report")) ¶ 1.)  And defendants retained Mr. Reish, an attorney "actively involved in the qualified plan community," to "analyz[e] and opin[e] on issues related to the qualification of pension plans, the practices of the Internal Revenue Service ('IRS') . . . and the approach of the federal regulators in their oversight of pension plans."  (*Id.* Ex. 6 (Expert Report of C. Frederick Reish, dated Dec. 31, 2021 ("Reish Report")) ¶¶ 1-2.)  On December 31, 2021, Mr. Reish submitted his report, and on February 21, 2022, Ms. Wagner submitted her rebuttal report.

**Mr. Reish's Report**

Defendants represent that they will proffer Mr. Reish to testify at trial on "two principal substantive issues:" (i) "context on how the IRS . . . in practice applies and enforces the various pension rules that SKAT has alleged were violated" and "that, in his experience, the IRS does not disqualify plans for the reasons identified by SKAT;" and (ii) "background and context concerning audits the IRS performs to evaluate, among other things, a plan's compliance with qualification standards and explain the significance of the 'no-action letter' the IRS issued to one of the Plans."  (Defs. Br. 1-2.)  But Mr. Reish's proffered testimony on these issues is replete with inadmissible and irrelevant legal conclusions and speculation.

The stated "purpose" of Mr. Reish's report is to "assist the fact-finder in its assessment of whether the defendant pension plans were proper plans within the meaning of the IRC," *i.e.*, whether the plans met the qualification requirements in section 401(a) of the Internal Revenue Code.  (Reish Report ¶ 16.)  Mr. Reish opines that "[o]ne-person 401(k) plans," such as the

defendant plans, "are fairly common." (*Id.* ¶ 21.) That the "IRS is the federal agency with authority and responsibility to determine the initial and ongoing tax qualification of pension plans." (*Id.* ¶ 23.) And that "to be considered tax-qualified under the IRC, pension plans need to be 'qualified' in two different ways: 'form' and 'operation.'" (*Id.* ¶ 24.)

Qualification in "form," Mr. Reish explains, requires that "the plan documents must contain certain requirements set forth in the IRC." (*Id.* ¶ 25.) Qualification in "operation" means that the "plan must be operated in accordance with the qualification requirements in the IRC." (*Id.* ¶ 26.) Mr. Reish asserts that based on his experience he is "familiar with what an IRS audit of a qualified plan ordinarily entails." (*Id.* ¶ 27.) In Mr. Reish's opinion, "the IRS can (but rarely does) 'disqualify' a plan," and "[i]nstead of disqualifying" it, "the IRS may allow plan sponsors to correct any defects through an IRS program called the Employee Plans Compliance Resolution System (EPCRS)." (*Id.* ¶ 29.)

In Mr. Reish's view, "the IRS would not disqualify or otherwise take action" against the defendant plans, *i.e.*, in defendants' characterization, "where a recently-formed LLC sponsors a pension plan formed for the purpose of engaging in a specific investment strategy, so long as the plan is formed and operated in accordance with the qualification requirements in the IRC." (*Id.* ¶ 35.) And "[f]rom an IRS perspective, and for purposes of initial and ongoing qualification, the investment strategy pursued by qualified plans in this case . . . would not cause a plan to be considered a sham or not a proper plan." (*Id.* ¶ 36.)

Applying the "form" and "operation" requirements to the three pension plans he analyzed in his report, Mr. Reish concludes that each was "qualified as to form." (*Id.* ¶¶ 38-40). And Mr. Reish notes that "the RJM Plan was audited by the IRS," at the conclusion of which, "the IRS

3

issued a 'no change' letter," which in Mr. Reish's view "means that the IRS did not find any qualification defects in the form or operation of the plan." (*Id.* ¶¶ 41-43.)

"Accordingly," Mr. Reish concludes, "the plans that [he] reviewed are tax qualified as to form . . . and [he has] not seen any evidence that they were operated in a manner that would adversely affect the plans' qualification." (*Id.* ¶ 45.) The "investment strategies" the plans engaged in, in Mr. Reish's opinion, were consistent with the "investment provisions" in their "plan and trust documents." (*Id.* ¶¶ 46-50.) And Mr. Reish "did not see any indication" in the materials he reviewed "of any other operational activities that would cause the disqualification of the plans." (*Id.* ¶ 51.)

Finally, Mr. Reish opines that even if the plans were not operated in accordance with the IRC's qualification requirements, the IRS still would not disqualify the plans, mainly because, in Mr. Reish's view, the plans were operated in accordance with the IRC's requirements. (*See id.* ¶¶ 52-55.) For instance, in Mr. Reish's opinion, even if the plans "violated an 'exclusive benefit requirement'" as SKAT alleges, that "would not lead the IRS to disqualify those plans" or "conclude that a qualified plan was no longer qualified under the exclusive benefit requirement" because, in Mr. Reish's view, SKAT's allegations implicate rules against "prohibited transaction[s]," not the exclusive benefit requirement. (*Id.* ¶¶ 52-53.)

Similarly, Mr. Reish opines that even if the plans "violated a 'permanency requirement'" as SKAT alleges, "the IRS would not disqualify" the plans, "so long as there was not an intent at the time of their formation to terminate the plans within a few years of establishment," *i.e.*, so long as they did not violate the permanency requirement. (*Id.* ¶ 54.) And if the IRS concluded, as SKAT alleged, that a plan violated the IRC's requirements because it "failed to make recurring and substantial contributions from the sponsor's profits, the plan would not cease to be

4

a qualified pension plan under the theory that it failed to satisfy the permanency requirement and [that] would not cause the IRS to assert that the plan was not a qualified pension plan." (*Id.* ¶ 55.)[1]

**Ms. Wagner's Rebuttal Report**

In her rebuttal report, Ms. Wagner "comment[s] on" the Reish report and "whether it adequately assesses whether the . . . plans at issue departed from" "standards applicable to the qualification and administration of 401(k) retirement plans." (Dewey Decl. Ex. 3 (Expert Rebuttal Report of Marcia S. Wagner, dated Feb. 1, 2022 ("Wagner Rebuttal")) ¶ 1.) Unlike Mr. Reish, who saw no "indication of any other operational activities that would cause the disqualification of the plans," (Reish Report ¶ 51), Ms. Wagner saw plenty of evidence in the record that the plans activities violated the IRC's requirements, including that the plans were established "[f]or purposes other than providing retirement benefits to Plan participants;" had "from the outset a temporary nature and duration;" and were "[g]enerally funded improperly and operated with no distinction between Plan assets and assets of Plan participants." (*See* Wagner Rebuttal ¶ 3.)

Ms. Wagner rebuts Mr. Reish's testimony that "the investment strategy pursued by qualified plans in this case . . . would not cause a plan to be considered a sham or not a proper plan," (Reish Report ¶ 36), by noting that is not the case where, as here, the so-called investment strategy was "calculated to enrich others," not the plan participants. (Wagner Rebuttal ¶ 5.) And contrary to the "suggestion[s]" in Mr. Reish's report, Ms. Wagner explains that "it is not true

---

1. Mr. Reish further asserts that the IRS regulation that provides that making a single or occasional contribution out of profits does not establish a profit-sharing plan is no longer operative, even though it has never been withdrawn or superseded. (*See* Declaration of Marc A. Weinstein, dated July 5, 2024 ("Weinstein Decl.") Ex. 1 (Reish Dep. Tr.) 157:20-160:9 (not withdrawn "[o]fficially," "[b]ut it's not being enforced because it no longer applies to circumstances today"); *see also id.* 160:15-20 (Q. "So, sir, is there any IRS publication you can point us to where the IRS has said that it is not enforcing that regulation?" A. "Nothing that I can think of.").)

5

that, without IRS disqualification, a plan with operational defects must be treated as qualified" and that "a plan can cease to be tax-qualified in the absence of an IRS determination to that effect."  (*Id.* ¶ 7.)

With respect to Mr. Reish's conclusions that the plans must have been qualified because the IRS issued a "no change" letter following its audit of the RJM plan, Ms. Wagner opines that in her experience, "the scope and depth of an audit differs in every situation, but if the full range of the Plans' operational lapses in this case were disclosed to the IRS, along with the circumstances surrounding the Plans' formation and use, the likely result would be Plan disqualification in every instance."  (*Id.* ¶ 8.)  In Ms. Wagner's experience, "an IRS audit does not seek to review compliance with all of the requirements of the Code and would not necessarily be focused on issues such as the exclusive benefit rule, permanence, domestic trust, and impermissible commingling of plan assets" that she identified in her review.  (*Id.* ¶ 9.)  And based on her review of the audit materials, the IRS's "principal concern was the accurate reporting of the RJM Plan's assets . . . and the correlative issue of whether Markowitz had correctly reported distributions from various Plans as taxable income."  (*Id.* ¶ 10.)

In response to Mr. Reish's opinion that "the IRS may allow plan sponsors to correct any defects through" the EPCRS program, (Reish Report ¶ 29), Ms. Wagner observes that program would not be available here because the "operational defects" and "plan failures relating to the diversion or misuse of plan assets" SKAT has alleged "are not correctable" under that program. (Wagner Rebuttal ¶ 14.)  And Ms. Wagner rebuts Mr. Reish's opinion that SKAT's allegations implicate rules against "prohibited transactions," not the exclusive benefit rule, (*see* Reish Report ¶¶ 52-53), by noting that "application of the prohibited transaction rules" and plan qualification requirements are not mutually exclusive.  (Wagner Rebuttal ¶ 16.)

Further, in Ms. Wagner's opinion, Mr. Reish "ascribes too much significance to the buffer provided by" the "investment language in Plan instruments by ignoring the fact that such language cannot override fundamental plan standards, such as the operation of a plan for the exclusive benefit of its participants." (*Id.* ¶ 17.) Mr. Reish's observation "that plans can be funded in a variety of ways" ignores that "[t]here is no conceivable way that funding from or arranged by Solo Capital would be an acceptable contribution to the Plans." (*Id.* ¶ 19.) While as Mr. Reish notes, plans may invest in partnerships, Ms. Wagner notes that they may not do so in violation of the exclusive benefit rule. (*See id.* ¶¶ 20-21.) And Mr. Reish "misstates" in his report "the alleged permanence violation." (*Id.* ¶¶ 22-23.)

Finally, Ms. Wagner opines that "[i]n determining whether an arrangement of any type is a genuine retirement plan, it is necessary to look holistically at such factors which indicate its true purpose." (*Id.* ¶ 26.) By "contrast," Mr. Reish "seeks to silo various rules applicable to tax-qualified plans (one-person plans are permissible, nontraditional investments are permissible, investment by plans in partnerships is permissible) without providing any context for any of those propositions." (*Id.* ¶ 27.) Thus, "[w]hile each of [Mr.] Reish's conclusions, taken in isolation, have a veneer of truth, the presence of numerous related plan sponsors with duplicative minimally funded retirement Plans claiming ownership of massive amounts of publicly-traded Danish securities also needs to be considered in determining whether the Plans were qualified." (*Id.* ¶ 28.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26 permits expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). While rebuttal testimony must be admissible under Federal Rule of Evidence 702 and "meet *Daubert*'s threshold standards," such testimony is "properly admissible

7

when it will explain, repel, counteract or disprove evidence of the adverse party." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citation omitted). The Court has "wide discretion in determining whether to permit evidence on rebuttal." *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992) (citation omitted).

## ARGUMENT

**I.     Mr. Reish's opinions on IRS enforcement practices are inadmissible, but if the Court permits them, Ms. Wagner's rebuttal opinions should be permitted too.**

As SKAT explained in moving to preclude his testimony, Mr. Reish's opinions on "how the IRS . . . in practice applies and enforces the various pension rules that SKAT has alleged were violated" and "that, in his experience, the IRS does not disqualify plans for the reasons identified by SKAT," (Defs. Br. 1-2), are thinly veiled legal conclusions.[2] For instance, Mr. Reish's opinion that even if the IRS concluded that the plans "violated" the "exclusive benefit requirement" in IRC section 401(a), it still would not disqualify the plans because the IRS would instead "assert[] . . . that a prohibited transaction occurred" is nothing more than Mr. Reish's legal opinion that the plans did not violate the exclusive benefit rule. (Reish Report ¶¶ 52-52.3.) Such testimony is inadmissible because it "usurps . . . the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citation omitted).[3]

---

2.   *See* SKAT's Mem. of Law in Supp. of its Mot. to Exclude the Proposed Test. of Defense Experts Michael S. Ross, C. Frederick Reish and Kasper B. Pilgaard ("Reish Mot.") 10-13, ECF No. 1061.

3.   The same is true with respect to Mr. Reish's opinion that SKAT's allegations that the plans violated the "'permanency requirement' under the IRC" are insufficient because the IRS would not disqualify the plans "so long as there was not an intent at the time of their formation to terminate the plans within a few years of establishment," which simply tells the jury Mr. Reish's interpretation of the "permanency requirement" and how it should be applied in this case. (Reish Report ¶ 54.) And Mr. Reish's opinion that SKAT's allegation that there were no "recurring and substantial contributions" to the plans, even if true, would not result in the IRS disqualifying the plans because that would not cause the plan to "cease to be a qualified pension plan" similarly instructs the jury on applicable law and the legal conclusions it should reach. (*Id.* ¶ 55.)

8

Further, Mr. Reish's testimony concerning what the IRS would or would not do after having concluded that the plans were not operated in accordance with the IRC's requirements is entirely speculative and inadmissible for that reason too. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795 (1993) ("the word 'knowledge' connotes more than subjective belief or unsupported speculation"). To the extent his opinions are meant to be that the IRS would exercise discretion to not disqualify the plans even if they violated the legal requirements for qualified pension plans, the IRS's enforcement practices are not at issue in this case and such testimony is irrelevant to the actual issue whether the plans were in fact qualified pension plans, as defendants represented in their tax refund claims. *United States v. Gatto*, 17-cr-0686 (LAK), 2019 WL 266944, at *3-4 (S.D.N.Y. Jan. 17, 2019) (excluding "proposed expert testimony [that] would have been irrelevant to the real issues in the case"), *aff'd*, 986 F.3d 104 (2d Cir. 2021). Mr. Reish's testimony in this respect also would be unfairly prejudicial in suggesting to the jury that whether the plans were in fact qualified pension plans, as defendants represented, does not matter if the IRS would not have disqualified the plans as a result of their violations. *See Nimely*, 414 F.3d at 397 (Federal Rule of Evidence 403 is "uniquely important . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." (citing *Daubert*, 509 U.S. at 595, 113 S. Ct. at 2786)).

Similar irrelevant is Mr. Reish's speculation that rather than disqualify the defendant plans, the IRS would have permitted the plans to fix any operational defects through the EPCRS program. The plans' distribution of the majority of proceeds to scheme participants other than the plan beneficiary was central to the structure set up by those participants and thus was not "fixable." Likewise, the fact that the plans and their sponsoring entities were set up solely to participate in the scheme, as opposed to for long-term retirement purposes, was not fixable after

9

the fact. Indeed, the defendants had no use for multiple, newly minted pension plans other than to submit tax refund claims.

But if the Court finds that Mr. Reish's testimony on the IRS's enforcement practices nonetheless is admissible, the Court should also permit Ms. Wagner to offer her rebuttal testimony, including that "it is not true that, without IRS disqualification, a plan with operational defects must be treated as qualified" and that "a plan can cease to be tax-qualified in the absence of an IRS determination to that effect." (Wagner Rebuttal ¶ 7.) That in Ms. Wagner's experience, the IRS's EPCRS program would not be available to correct the defendant plans' fundamental "operational defects" and "failures relating to the diversion or misuse of plan assets." (*Id.* ¶ 14.) And that, in her view, the IRS would disqualify the plans if faced with their wholesale violation of the IRC's plan qualification requirements. (*See id.* ¶ 11.)

Further, to the extent Mr. Reish is permitted to offer his legal opinions that the plans did not violate (or the IRS would not find that they had violated) the exclusive benefit or permanency requirements in the IRC, Ms. Wagner should be permitted to offer her rebuttal testimony explaining her opinions as to why the plans did violate those rules. For instance, in that circumstance, she should be permitted to offer her testimony that the plans violated the permanency requirement as evidenced by the fact that they "ceased any further activity relating to additional contributions or investment of Plan assets once the dividend refund scheme was discovered in 2015." (*Id.* ¶ 22.) And that Mr. Reish "does not accurately describe the relationship between prohibited transactions and plan disqualification where pervasive violations of qualified plan and other legal requirements occurred in every phase of activity." (*Id.* ¶ 16.)

10

**II.     Mr. Reish's opinions based on the IRS's audit of the RJM plan are inadmissible, but if the Court permits them, Ms. Wagner's rebuttal opinions should be permitted too.**

SKAT's motion to preclude Mr. Reish's testimony explains that his opinions based on the IRS's audit of the RJM plan and the "no change" letter it issued are inadmissible legal conclusions and unfairly prejudicial.  (*See* Reish Mot. 12-13.)  Defendants propose for Mr. Reish to testify that the fact that the IRS issued the "'no change' letter means that the IRS did not find any qualification defects in the form or operation of the" RJM plan.  (Reish Report ¶ 43.)[4]  And that he is "not aware of any reason that, had the IRS undertaken an audit of any other plans with arrangements similar to the RJM Plan, it would not have issued a 'no change' letter similar to the one issued with respect to the RJM plan."  (*Id.* ¶ 44.)

Such testimony, "rather than adding helpful context or analysis . . . usurp[s] the jury's function to apply the law to the facts" by simply telling the jury what result it should reach on the question of whether the pension plans were qualified plans under the IRC.  *In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-01570 (GBD)(SN), 2023 WL 3116763, at *10 (S.D.N.Y. Apr. 27, 2023) (quotation marks and citation omitted).  And it should also be excluded under Rule 403 because it would confuse and mislead the jury into believing that the IRS has already decided (it never has) the question of whether the plan defendants were qualified pension plans, as defendants represented.

But, again, if Mr. Reish's testimony on "background and context" for IRS audits and the "significance" of the "no change" letter is admissible, the jury should likewise hear Ms.

---

4.  Mr. Reish instructs the jury to rely on the IRS audit despite admitting that he would have expected the IRS agent who conducted the audit to require a plan to "file an income tax return and pay income taxes" on debt-financed income, but saw no evidence that the IRS agent raised any such question. (Weinstein Decl. Ex. 1 (Reish Dep. Tr.) 243:7-245:25 ("No.  I—like I said earlier, I just don't know what information was given to the agent on that.  I don't fully understand whether it's lending or borrowing, so I'm not—I don't have the background to determine whether or not it is DFI.  That's debt-financed income.").)

11

Wagner's rebuttal testimony on these same issues. For instance, as Ms. Wagner explains, in her experience, "the scope and depth of an audit differs in every situation." (Wagner Rebuttal ¶ 8.) And in her opinion, "if the full range of the Plans' operational lapses in this case were disclosed to the IRS, along with the circumstances surrounding the Plans' formation and use, the likely result would be Plan disqualification in every instance." (*Id.*) And based on Ms. Wagner's review of the audit materials, she concluded, contrary to Mr. Reish, that the IRS's "principal concern" in the RJM plan audit was just "the accurate reporting of the RJM Plan's assets . . . and the correlative issue of whether Markowitz had correctly reported distributions from various Plans as taxable income," not the "exclusive benefit rule, permanence, domestic trust, and impermissible commingling of plan assets" issues that she identified in her review of the plans' operations. (*Id.* ¶¶ 9-10.)

Defendants argue that Ms. Wagner's rebuttal testimony on the audit should be excluded because it supposedly "contradicts" the IRS's "Internal Revenue Manual" and the "evidence." (Defs. Br. 13-14.) But such argument concerning "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 134 (S.D.N.Y. 2015) (citation omitted).[5] And the same is true with respect to supposed "faults" in an expert's use of a particular methodology or "lack of textual authority" for the opinion. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995).[6]

---

5. *See also Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

6. *See also Ctr. for Indep. of the Disabled, New York v. Metro. Transp. Auth.*, 17-CV-2990 (GBD) (VF), 2023 WL 7403642, at *3 (S.D.N.Y. Nov. 9, 2023) ("criticisms . . . focused on potential errors in . . . methodology or

12

Nor is there any merit to defendants' argument that Ms. Wagner, supposedly in contrast to Mr. Reish, "engages in impermissible 'speculative hypotheses.'" (Defs. Br. 14.) Ms. Wagner's opinion that the IRS would disqualify the RJM plan (and the others) if it knew "the larger picture of the Plan's participation in the Solo scheme" is based on "over three decades of experience with the administration and qualification of pension plans under the Code" (Wagner Rebuttal ¶¶ 2, 11), and is no more speculative than Mr. Reish's opinions that the IRS would not disqualify the plans on learning of those same facts.[7]

## CONCLUSION

For the reasons set forth above, SKAT respectfully requests that the Court deny defendants' motion to exclude Ms. Wagner's rebuttal testimony.

---

analysis . . . go to the weight a trier of fact should afford [the expert's] opinion, not its admissibility" (citations omitted)).

7. *See, e.g.*, Reish Report ¶¶ 35 ("the IRS would not disqualify or otherwise take action where a recently-formed LLC sponsors a pension plan formed for the purpose of engaging in a specific investment strategy"); 54 ("the IRS would not disqualify as 'not permanent' the RJM and Roadcraft Plans on this basis" and "the IRS would not make such an assertion if the intended duration of the plans was indefinite"); 55.2 ("the IRS would not assert that the plan is not a qualified plan on the basis that it was not permanent").

| | |
|---|---|
| Dated: New York, New York<br>July 5, 2024 | HUGHES HUBBARD & REED LLP<br><br>By: /s/ Marc A. Weinstein<br>    William R. Maguire<br>    Marc A. Weinstein<br>    Neil J. Oxford<br>    Dustin P. Smith<br>    Gregory C. Farrell<br>    One Battery Park Plaza<br>    New York, New York 10004-1482<br>    Telephone: (212) 837-6000<br>    Fax: (212) 422-4726<br>    bill.maguire@hugheshubbard.com<br>    marc.weinstein@hugheshubbard.com<br>    neil.oxford@hugheshubbard.com<br>    dustin.smith@hugheshubbard.com com<br>    gregory.farrell@hugheshubbard.com<br><br>*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)* |