**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to:

| | |
|---|---|
| MASTER DOCKET | |
| 18-md-02865-LAK | |

The cases listed in Appendix A to Pretrial Order No. 35 (ECF No. 977)

_____

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE
THE PROPOSED TESTIMONY OF DEFENSE EXPERTS
MICHAEL S. ROSS, C. FREDERICK REISH, AND KASPER
B. PILGAARD**

## <u>TABLE OF CONTENTS</u>

<u>*Page*</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

LEGAL STANDARD.........................................................................................................2

ARGUMENT ......................................................................................................................2

    **I.**    Ross's opinions will be helpful to the jury and should not be excluded..................2

        **A.**    Ross's testimony will help the jury understand customs and practices in the legal industry, which courts recognize is an appropriate subject of expert testimony....................................................................................5

        **B.**    Ross properly relied on an assumed set of facts .........................................8

    **II.**    Reish's opinions are helpful to the jury and should not be excluded .....................9

        **A.**    Explanations of IRS processes are not only permissible but helpful to the jury ...........................................................................................................10

        **B.**    Reish's opinions are based on his experience with the IRS and in the pension industry .......................................................................................11

        **C.**    None of the cases cited by SKAT supports the exclusion of Reish's testimony...................................................................................................14

    **III.**    Pilgaard's expert testimony will be helpful to the jury and should not be excluded ...............................................................................................15

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

*Cases*                                                                                          *Page(s)*

*Allied Transit Corp. v. Loc. 854 Pension Fund*,
    No. 21-CV-10556 (CS), 2024 WL 1827315 (S.D.N.Y. Apr. 26, 2024) ..........................14

*Am. Home Assur. Co. v. Merck & Co.*,
    462 F. Supp. 2d 435 (S.D.N.Y. 2006)..............................................................................17

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)...............................................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)...........................................................................................................2

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)................................................................10, 11, 16

*In re Golden*,
    No. 16-40809-ESS, 2022 WL 362913 (Bankr. E.D.N.Y. Feb. 4, 2022) ...................12, 15

*Gonzalez v. Bratton*,
    147 F. Supp. 2d 180 (S.D.N.Y. 2001).........................................................................12, 13

*Highland Cap. Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005).................................................................................9

*Joffe v. King & Spalding LLP*,
    No. 17-CV-3392 (VEC), 2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019)...........................5

*Mar-Can Transp. Co. v. Loc. 854 Pension Fund*,
    No. 20-CV-8743 (CS), 2024 WL 1250716 (S.D.N.Y. Mar. 22, 2024) ............................14

*Marx & Co. v. Diners' Club, Inc*.,
    550 F.2d 505 (2d Cir. 1977)..............................................................................................15

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016)...............................................................................10

*In re Namenda Direct Purchaser Antitrust Litig.*,
    331 F. Supp. 3d 152 (S.D.N.Y. 2018)................................................................10, 11, 16

| *Cases* | *Page(s)* |
|---|---|

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)............................................................................2, 15

*Prime Energy and Chem., LLC v. Tucker Arensberg, P.C.*,
    625 F. Supp. 3d 443 (W.D. Pa. 2022)............................................................5, 7

*Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*,
    No. 08-CV-0931 (PKC) (JO), 2014 WL 12788845 (E.D.N.Y. Mar. 31, 2014) .............7, 8

*Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*,
    988 F. Supp. 2d 395 (S.D.N.Y. 2013)................................................................5

*Reis v. Barley, Snyder, Senft & Cohen LLC*,
    No. 05-CV-01651, 2008 WL 2653670 (E.D. Pa. July 3, 2008)..........................9

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D 33 (S.D.N.Y. 2016) .....................................................................4, 8

*Sec. & Exch. Comm'n v. Gel Direct Tr.*,
    No. 22-CV-9803 (JSR), 2024 WL 1374902 (S.D.N.Y. Mar. 31, 2024).....................14, 15

*In re Terrorist Attacks of Sept. 11*,
    No. 03-MD-01570, 2023 WL 2366854 (S.D.N.Y. Mar. 6, 2023) ....................17

*Thomsen v. Kefalas*,
    No. 15-CV-2668 (BCM), 2018 WL 1508735 (S.D.N.Y. Mar. 26, 2018) ........14

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)........................................................................18

*United States v. Kurland*,
    No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022) ....................7

*United States v. Nektalov*,
    2004 WL 1469487 (S.D.N.Y. June 30, 2004), *aff'd* 461 F.3d 309, 318 (2d Cir. 2006)....17

*United States v. Offill*,
    666 F.3d 168 (4th Cir. 2011) .......................................................................16

*United States v. Pac. Gas & Elec. Co.*,
    No. 14-CR-00175, 2016 WL 3268994 (N.D. Cal. June 15, 2016) ..................16

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988)..........................................................................14

_Statutes & Other Authorities_                                                                    _Page(s)_

Fed. R. Evid. 702 ..........................................................................................1, 2, 16, 18

Defendants submit this memorandum of law in opposition to Plaintiff's motion (the "Motion") to exclude the proposed testimony of Defendants' experts Michael S. Ross, C. Frederick Reish, and Kasper B. Pilgaard (Dkt. No. 1061).

## PRELIMINARY STATEMENT

Plaintiff SKAT's memorandum of law in support of its Motion ("SKAT Br.") misconstrues the testimony that Defense experts Ross, Reish, and Pilgaard will offer. Each witness's testimony is permissible and will be helpful to the jury. *See* Fed. R. Evid. 702.

Ross explains how Ben-Jacob's conduct is consistent with ordinary and customary legal practices, specifically as to the limitations governing attorney-client engagements and the related impact on the scope of work an attorney performs. As the only defendant-legal advisor, Ben-Jacob occupies a unique role in the upcoming trial, and Ross's testimony is critical to educating the lay jury about the practices and customs within the legal industry—a field that is likely foreign to many jurors. Placing Ben-Jacob's conduct in the context of norms within his professional arena in turn will be helpful for the jury in assessing Ben-Jacob's scienter.[1]

Reish explains how the IRS administers the pension plan qualification system, and his opinions stem from Reish's four decades of experience representing plans before the IRS, including during IRS audits. Unlike SKAT's expert Marcia Wagner, Reish does not base his opinion on interpreting the language of the Internal Revenue Code ("IRC") or caselaw, and his opinions are not legal conclusions.

---

[1] As Michael Ross has been identified as an expert for Defendant Michael Ben-Jacob, and no other Defendants, the portion of this memorandum opposing SKAT's Motion to exclude the proposed testimony of Ross are submitted solely on behalf of Ben-Jacob.

Far from expounding legal conclusions, Pilgaard will educate the jury about the functions of the Danish government and Danish securities market practices. Further, Pilgaard will draw from Danish tax forms and SKAT guidance documents to help explain SKAT's treatment of tax reclaim applicants. Pilgaard will provide important context regarding the Danish regulatory and economic landscape during the relevant time period, and should not be excluded from testifying.

## LEGAL STANDARD

The Federal Rules of Evidence encompass a "liberal thrust and [] general approach of relaxing the traditional barriers to 'opinion' testimony." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *see* Fed. R. Evid. 702 advisory committee's note ("[T]he rejection of expert testimony is the ***exception*** rather than the rule.") (emphasis added). As the Second Circuit has made clear, Federal Rule of Evidence 702 "embodies a ***liberal*** standard of admissibility for expert opinions . . . ." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005) (emphasis added).

## ARGUMENT

### I.    Ross's opinions will be helpful to the jury and should not be excluded.[2]

SKAT attempts to categorically bar Ross's report and opinions as improperly providing legal conclusions, interpreting legal standards, and relying on assumed facts. SKAT Br. at 7-10. None of these arguments is grounds to bar Ross from testifying at trial.

One of Ben-Jacob's defenses at trial will be to explain that his role in advising the defendant-clients was focused on responding to their requests for legal services and addressing discrete legal issues within his area of expertise. For areas outside his area of expertise, Ben-Jacob

---

[2] As Michael Ross has been identified as an expert for Defendant Michael Ben-Jacob, and no other Defendants, the portion of this memorandum opposing the SKAT's Motion to exclude the proposed testimony of Ross are submitted solely on behalf of Ben-Jacob.

referred the clients to other attorneys at his firm.  And Ben-Jacob did not undertake tasks that his clients did not ask him to perform, such as conducting due diligence on Sanjay Shah or advising on issues of Danish law.  Ross will explain, based on his work as a practicing attorney for over fifty years with extensive experience advising lawyers and law firms on ethics-related questions related to their practices, as well as his four decades of experience as a legal ethics professor, (Dkt. No. 1062-1 ("Ross Report") ¶¶ 10-14), that Ben-Jacob's actions are consistent with ordinary and customary practices at a large law firm for an attorney advising sophisticated clients on complex transactions.  (*Id.* ¶¶ 91, 94-97.)

In his report, Ross responded in part to SKAT's expert, Marcia Wagner, whose opinions focused on describing the Rules of Professional Conduct and applying them to Ben-Jacob's alleged conduct.  SKAT recently informed Defendants that it does not intend affirmatively to call Ms. Wagner as an expert at trial, and instead will only offer her testimony to the extent the Court admits the testimony of Frederick Reish.[3]  Because Ross in part responded to Wagner's opinions focusing on the Rules of Professional Conduct as applied to Ben-Jacob's conduct, Ross's report likewise includes discussion of the Rules of Professional conduct and related authority.  Ross, however, will not offer opinions at trial interpreting the Rules of Professional Conduct or applying them to the facts at issue.  Instead, Ross will testify as to the following opinions explaining customs and practices in the legal industry:

- Limited scope legal engagements are a common practice, and the engagement of Ben-Jacob by Markowitz and van Merkensteijn, and later by Klugman, for a limited scope arrangement without a formal written agreement is not inconsistent

---

[3] SKAT's motion states it "reserves the right to call Ms. Wagner as a rebuttal witness to the extent Ross is permitted to testify," SKAT Br. at 2 n.1, but SKAT's disclosure pursuant to Pretrial Order No. 36 identified Wagner only "to the extent the Court admits the testimony of Frederick Reich [sic]" and said nothing of rebutting any testimony Ross offers.

with customs in the legal industry, (*see, e.g.*¸ Ross Report ¶¶ 47, 51, 52, 79, 84, 87, 91, 95);

- Ben-Jacob's reliance on his clients' representations without independently "vetting" them is consistent with norms in the legal industry and thus further inquiries, such as seeking a separate legal opinion on issues of foreign law or conducting his own analysis of the strategy holistically, which he was not asked to do, would be inconsistent with practices and norms in the legal industry, (*see, e.g.*, *id.* ¶¶ 8, 20, 40–42, 46, 84, 95, 110); and

- Ben-Jacob's reliance on his colleagues at Kaye Scholer to provide advice on areas outside of his area of expertise, without attempting to independently "vet" that advice, is consistent with legal industry custom and practice. (*See, e.g.*, *id.* ¶¶ 8, 21, 77–79, 110.)

Ross's testimony thus will help the jury understand Ben-Jacob's role—as one of the many attorneys advising this group of clients but the only attorney named as a defendant—and aid the jury in the evaluation of Ben-Jacob's scienter. As discussed further below, courts recognize and allow experts like Ross to offer this exact type of expert opinion to assist the jury.

Ross's reliance on an assumed set of facts to render his opinions is customary and proper and would be a meritless basis to exclude his testimony. So long as experts place assumed facts in the context of their opinions, courts regularly allow experts to testify as to the factual basis for their opinions, as is recognized in the authority SKAT relies upon. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D 33, 46 (S.D.N.Y. 2016) ("[The expert]'s role is to identify [defendant]'s practices and structures and place them within a larger context of industry norms. To do so, of course, he must lay a foundation that necessarily requires restating facts in evidence.").

**A.** **Ross's testimony will help the jury understand customs and practices in the legal industry, which courts recognize is an appropriate subject of expert testimony.**

4

Courts recognize that testimony regarding "customs and practices" of a particular industry is a proper "subject of expert testimony." *Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 403 (S.D.N.Y. 2013). And as a case that SKAT itself relies upon holds, legal ethics experts may offer opinions where the expert opines as to whether an individual's actions "were consistent with ordinary and custom legal practice[s]." *See Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2019 WL 4673554, at *17 (S.D.N.Y. Sept. 24, 2019). In particular, testimony as to an attorney's conduct relative to customs and practices can "aid the jury" in determining if a defendant "had the requisite scienter." *Prime Energy and Chem., LLC v. Tucker Arensberg, P.C.*, 625 F. Supp. 3d 443, 451 (W.D. Pa. 2022) (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006)).

Ross's opinions center on whether Ben-Jacob's conduct was consistent with customary practices in the legal industry, and none of his opinions at trial will attempt to answer the ultimate question of whether Ben-Jacob committed fraud or had fraudulent intent (he did not)—both factual determinations that the jury ultimately will make.

Ross's testimony will, however, aid the jury in evaluating Ben-Jacob's scienter. For example, Ross explains that limited-scope engagements are a common practice. (Ross Report ¶ 51.) In advising his clients, Ben-Jacob relied on their due diligence and assessment of the trading strategy, at their request. Ben-Jacob was not responsible for evaluating or assessing the particulars of the Danish trading strategy. Ross will explain for the jury that Ben-Jacob's conduct in that regard, consistent with the limited scope of his engagement, is not atypical for a lawyer or a law firm. (*Id.* ¶ 97.) Moreover, in such a limited-scope arrangement, conducting in-depth analyses and monitoring for "red flags" with respect to the underlying trading strategy on which he was not asked to opine is also not consistent with legal industry norms. (*Id.* ¶ 95.)

Ross further will explain for the jury that lawyers often limit their scope of representation to their own area of expertise. (*Id.* ¶¶ 77–79.) Here, Ben-Jacob was one of many attorneys from Kaye Scholer and other law firms who advised the clients. As is standard for attorneys advising sophisticated clients on complex financial transactions, Ben-Jacob provided advice to the clients in his area of expertise and referred them to other attorneys as needed to provide advice based on other areas of expertise. By way of example, because issues related to the qualification of pension plans are outside of Ben-Jacob's field, Ross will explain how Ben-Jacob's reliance on another Kaye Scholer attorney is consistent with ordinary legal practices at a large firm. (*Id.*) Ross's testimony thus will provide context for how lawyers at large firms engage with and advise clients in complex transactions, which will enable the jury to evaluate Ben-Jacob's decision to rely on the advice of his Kaye Scholer colleagues in the context of legal industry customs and practices, ultimately aiding the jury in considering SKAT's fraud and negligence claims.

As another example, Ross can place emails reflecting advice from Ben-Jacob and his colleagues into context of how lawyers engage with clients, particularly where the attorneys advise the clients on novel legal issues. Ross will explain that attorneys often advise clients and assist with transactions that have gray areas: "every major law firm, every day, can be seen to have its lawyers asserting aggressive positions in transactional and regulatory matters with respect to issues that are in a gray area." (*Id.* ¶ 109.) Ross will *not* opine on the meaning of the email in relation to Ben-Jacob's scienter or whether the email suggests Ben-Jacob acted with a certain state of mind. Instead, Ross will provide context for the jury on how attorneys customarily advise clients in transactional and regulatory manners.

Courts allow precisely this type of expert testimony as to industry norms and practice—recognizing the value in educating the jury on the specialized field. For example, in *Prime Energy*,

625 F. Supp. 3d at 446, the defendant law firm represented a number of clients in a series of transactions with the plaintiff.  Plaintiff sued defendant for fraud, among other claims, based on misrepresentations about the ownership of property at issue in the transaction.  Given the unique nature of the transaction, defendant retained an expert in part to provide opinions "relative to an attorney's role and conduct vis-à-vis a non-client adverse party in a commercial oil and gas transaction." *Id.* at 448.  Plaintiff sought to exclude defendant's expert on nearly all the same bases as SKAT does Ross.  *Id.* at 450-51.  In allowing the expert in *Prime Energy* to testify, the court reasoned that "understanding the attorney's role" and "opinions as to industry customs and practices" was relevant to "aid the jury" in evaluating the elements of plaintiff's fraud claim, including scienter.  *Id.* at 452.

SKAT's reliance on *United States v. Kurland*, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022), is inapposite because *Kurland* simply stands for the general and uncontroversial principle that experts cannot opine on what the law is.  *Id.* at *13.  But at trial Ross will not offer opinions interpreting the law or stating how it should be applied to the facts here.  Instead, the Court will instruct the jury on the elements of SKAT's claims, including scienter. The jury will then be responsible for making the final determination on Ben-Jacob's scienter.  Ross does not and will not provide an opinion as to how the Court or jury should decide these two issues.

SKAT's reliance on *Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP* is equally misplaced.  In that case, the court precluded the expert's testimony that the defendant acted intentionally and willfully and that the defendant committed malpractice.  No. 08-CV-0931 (PKC) (JO), 2014 WL 12788845, at *11 (E.D.N.Y. Mar. 31, 2014).  Those opinions are plainly legal conclusions that shed no light on the admissibility of Ross's anticipated testimony on custom and practice in the legal industry.  And in any event, the court in *Protostorm, LLC* ultimately

recommended that the expert be *allowed* to testify in all respects except as to direct opinions on any "ultimate issue." *Id.*

As a throwaway catchall, SKAT argues that Ross's testimony should be excluded under Rule 403. SKAT Br. at 9-10. While a court *may* exclude evidence under Rule 403 where the probative value is "***substantially outweighed***" by unfair prejudice, SKAT fails to explain how Ross's testimony is unfairly prejudicial, let alone how this supposed prejudice "substantially outweigh[s]" the probative value. Nor does SKAT cite a single case or other authority in support of its position. That is likely because Ross's testimony is helpful to explain how Ben-Jacob, the only attorney on trial, acted consistent with industry customs and practices in advising his clients.

### B.    Ross properly relied on an assumed set of facts.

Without facts, Ross (and any expert) would be unable to render any sort of opinion that would be helpful to the jury. Indeed, SKAT's own authority undercuts its position in asking this Court to bar Ross from testifying on that basis.

In *Scott*, the court *permitted* the expert testimony notwithstanding the parties' argument that the experts only provided a factual narrative and did nothing more than repeat facts about which the expert had no personal knowledge. 315 F.R.D. at 45. The court reasoned that the experts identified the defendant's "practices and structures and place[d] them within a larger context of industry norms," and to do so, the expert "must lay a foundation that necessarily requires restating facts in evidence." *Id* at 46.[4] That is precisely what Ross will do here.

SKAT's reliance on *Highland Cap. Mgmt., L.P. v. Schneider* fares no better. 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005). In *Schneider*, the court excluded the expert's fact section because

---

[4] While the court limited one of the expert's opinions to the extent the expert "repeat[ed] witnesses' prior statements without any further analysis," *id.* at 47, Ross will not simply parrot facts. And in the unlikely event Ross offers an improper factual narrative at trial (he will not), the remedy is to object during the examination, not to preclude him from testifying altogether. *See, e.g.*, *Reis v. Barley, Snyder, Senft & Cohen LLC*, No. 05-CV-01651, 2008 WL 2653670, at *7–8 (E.D. Pa. July 3, 2008).

an expert "cannot be presented to the jury *solely* for the purpose of constructing a factual narrative based upon record evidence." *Id.* (emphasis added). But as already discussed, Ross's role is not solely to regurgitate the record. Instead, Ross will place facts testified to at trial regarding Ben-Jacob's conduct in the context of legal industry practices and customs. (*See, e.g.*, Ross Report ¶¶ ¶¶ 40–46; 47–52; 77–87; 91; 95; 97; 108–09.)

For the foregoing reasons, Defendant Michael Ben-Jacob respectfully requests that the Court deny SKAT's Motion and allow Ross to testify at trial.[5]

## II. Reish's opinions are helpful to the jury and should not be excluded.

The testimony of Frederick Reish is equally helpful and necessary to aid the jury in evaluating SKAT's claims. SKAT seeks hundreds of millions of dollars from Defendants based on allegations that the pension plans defendants (the "Plans") misrepresented that they were "qualified" plans under U.S. tax law. As the IRS is the authority that determines whether a pension plan is qualified, SKAT's allegations put the IRS's procedures and practices concerning plan qualification directly at issue. Reish's trial testimony will provide constructive and concise explanations of those practices, drawn from his experience in the pension industry, and will be critical for the jury's evaluation of SKAT's claims.

### A. Explanations of IRS processes are not only permissible but helpful to the jury.

Experts may testify about "general . . . regulatory requirements and procedures" and offer opinions as to a party's "compliance therewith". *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 190-91 (S.D.N.Y. 2009) (permitting expert testimony about the "complex regulatory requirements" concerning prescription drugs approved by the FDA). Indeed, in cases where

---

[5] In the alternative, Ben-Jacob requests the Court defer ruling on SKAT's Motion as to Ross until SKAT has fully presented its case in chief. The scope and necessity of Ross's testimony will turn in part on how SKAT presents its case and thus deciding the Motion at this juncture is premature.

juries must consider complex regulatory approval processes, courts find that expert opinions on these topics are not "legal conclusions", but rather provide "context that is likely to assist the trier of fact".  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 184 (S.D.N.Y. 2018) (expert opinions "explain[ing] the procedures under the complex law governing approvals of generic drugs" were not "legal conclusions" where they "simply explain[ed] the mechanics of drug approval").

The focus of Reish's initial report (Dkt. No. 1062-2 ("Reish Report")), and his anticipated testimony at trial, is to provide background on IRS operations and procedures that would aid the jury in understanding the complex regulatory regime concerning plan "qualification" directly implicated by SKAT's claims.  *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 478 (S.D.N.Y. 2016) (former FDA officer's testimony on "the background of the FDA, its functions, and the FDA's regulatory framework" was "helpful to a jury").  In particular, he will: (1) provide context for the process through which the IRS in practice considers plan qualification and explain that, in his experience, the IRS does not disqualify plans for the reasons identified by SKAT; and (2) he will provide background and context concerning audits the IRS performs to evaluate, among other things, a plan's compliance with qualification standards and explain the significance of the "no-action letter" the IRS issued to one of the Plans following a comprehensive multi-year audit.  Indeed, this is no different than *Fosamax,* where the court permitted an expert to testify about "the general role of the FDA and the duties and obligations of prescription drug manufacturers",  the FDA's approval of the drug at issue in the litigation, and defendant's interactions with the FDA during its investigation of a potential side effect of that drug, because "[a] lay jury cannot be expected to understand the complex

regulatory framework that informs the standard of care in the pharmaceutical industry." 645 F. Supp. 2d at 189, 191.

This testimony is fundamentally different from the bare legal conclusions offered by SKAT's proposed rebuttal expert, Marcia Wagner, and are manifestly admissible. *See id.* at 191; *Namenda*, 331 F. Supp. 3d at 184.

### B.    Reish's opinions are based on his experience with the IRS and in the pension industry.

Reish has over four decades of experience representing pension plans before the IRS and participating in the "qualified plan community." (Reish Report ¶ 2; Ex. 1, Reish Tr. 194:9-14 ("I've worked with many one-person plans. I've seen a whole variety of investment strategies; hedge funds, real estate . . ., handled all kinds of IRS audits . . . that involved plan assets among other things.").) He has overseen approximately 300 IRS audits of qualified plans, received recognition from both the national IRS office and Los Angeles IRS District office, and regularly discussed plan qualification matters with senior IRS officials in his capacity as chair of the Government Affairs Committee of the American Society of Pension Professionals and Actuaries. (Reish Report ¶¶ 2-4.) In many of the opinions identified by SKAT as legal conclusions, Reish draws not from his understanding of the law but from his extensive experience working on plan qualification matters with the IRS, as well as his involvement in industry organizations, committees, and conferences. Notably absent in these opinions is any discussion of statutes, caselaw, and the like. "[E]xperience[]-based expert opinion as to the context, operation, use, or application of a regulatory scheme" is not a "legal opinion". *In re Golden*, No. 16-40809-ESS, 2022 WL 362913, at *13 (Bankr. E.D.N.Y. Feb. 4, 2022) (denying motion to strike portions of expert testimony that provided information about the regulatory scheme and industry practice for private student loans). Testimony explaining a government agency's "practices and procedures

11

based on . . . [an expert's] knowledge and experience" are not "legal conclusions", and an expert may express "the extent to which application of particular practices or procedures at issue . . . may or may not have accorded with his understanding of them." *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 207 (S.D.N.Y. 2001) (expert witness with law enforcement experience permitted to testify regarding NYPD practices and procedures).

The portions of Reish's reports that SKAT unsuccessfully attempts to characterize as legal conclusions are exactly the sort of "experience-based" opinions that courts allow experts to express to the factfinder.

*First*, Reish states that, in his experience working with qualified plans that participated in partnerships, he has never seen the IRS disqualify a plan for the reasons set forth by SKAT, including: pursuit of a unique investment strategy, (Reish Report ¶ 36), terminating the plan after that particular investment opportunity "unexpectedly was no longer available", (*id.* ¶ 54.2), paying fees to unrelated third parties, (*id.* ¶ 52.1), "allocating partnership profits among qualified plan investors in proportion to capital contributions," (*id.* ¶ 53.1), and the plan sponsor opting not to make "substantial and recurring contributions from profits". (*Id.* ¶ 55.1.)  Even where Reish rebuts the conclusions of SKAT's offered expert Marcia Wagner, whose opinions are pure legal conclusions based on her own interpretation of statutory language and caselaw, Reish relies on his experience, stating that "Ms. Wagner's conclusions that the plans at issue were not qualified . . . is . . . inconsistent with my own experience with IRS oversight of plan qualification". (Dkt. No. 1062-3 ("Reish Rebuttal Report") ¶ 101.)

*Second*, Reish draws from his experience representing plans during IRS audits to form his opinions regarding the IRS audit of the RJM Plan and the ensuing "no change" letter. (*See id.* ¶ 116 ("Based on my experience with IRS audits, it can be fairly presumed that this information

would have allowed the IRS to allege violations of the exclusive benefit and permanency requirements and funding rules if Ms. Wagner's claims as to what constituted a violation were correct. But the IRS did not do so."); Ex. 1, Reish Tr. 239:19-20 ("in my experience, this [audit] was an exhausting one."), 240:7-14 ("if you look at the correspondence back and forth and over this two-year period, the volume of information requested is a multiple of what you ordinarily see . . . . [I]f there were 100 IRS audits, this would be in the top ten in terms of the volume of information requested relative to a plan of this size.").)

*Third*, Reish states that, during his decades-long involvement in pension industry organizations, committees, meetings, and conferences, (Reish Report ¶ 52.1), he has never heard of the IRS: (1) asserting a qualification violation for fees paid to unrelated third parties, (*id.*), (2) challenging the practice of profit sharing in proportion to capital contributions (*id.* ¶ 53.1), or (3) disqualifying a 401(k) plan for the sponsor's choice not to make substantial and recurring contributions from profits.  (*Id.* ¶ 55.1.)

Rather than explaining the law or how it should be applied to the facts of this case, Reish forms his conclusions based on how he has seen the IRS operate over the decades that he has been working on plan qualification matters.  SKAT's argument that these opinions are "legal conclusions" is unavailing.  *See Gonzalez*, 147 F. Supp. 2d at 207.

### C.    None of the cases cited by SKAT supports the exclusion of Reish's testimony.

Contrary to SKAT's arguments, Reish's opinions are not conclusions of law.  The cases cited by SKAT in its motion are inapposite because, unlike Reish, the excluded experts in those cases based their opinions on language from statutes or principles derived from caselaw— indeed, the only import of these cases is to provide further support for the exclusion of SKAT's

own expert, Marcia Wagner, who engages in precisely the sort of legal analysis that these cases foreclose.

For instance, in *Mar-Can Transp. Co. v. Loc. 854 Pension Fund*, the court excluded experts who "analyze[d] federal case law and provide[d] legal conclusions regarding how ERISA should be interpreted".  No. 20-CV-8743 (CS), 2024 WL 1250716, at *4 (S.D.N.Y. Mar. 22, 2024).  Reish's opinions do not consist of his interpretation of the IRC's language, nor any analysis of caselaw.  As discussed above, Reish's testimony will help the jury understand the IRS's practices and procedures in determining plan qualification and draw from his professional experience seeing the IRS interact with real pension plans.

The other cases cited by SKAT are inapplicable for the same reason.  *See United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (expert "drew directly upon the language of the statute and accompanying regulations concerning 'manipulation' and 'fraud'"); *Thomsen v. Kefalas*, No. 15-CV-2668 (BCM), 2018 WL 1508735, at *18 (S.D.N.Y. Mar. 26, 2018) (declaration at issue included a "series of assertions as to how the [Child Protective Services] Act should be interpreted and how it should be applied in this case" and contended "that both the 'reasonable cause' standard . . . and the 'good faith' standard" in the Act are "subjective"); *Allied Transit Corp. v. Loc. 854 Pension Fund,* No. 21-CV-10556 (CS), 2024 WL 1827315, at *4-5 (S.D.N.Y. Apr. 26, 2024) (expert analyzed federal caselaw and Congress's intent in drafting ERISA); *Sec. & Exch. Comm'n v. Gel Direct Tr.*, No. 22-CV-9803 (JSR), 2024 WL 1374902, at *9-10 (S.D.N.Y. Mar. 31, 2024) (expert applied "multi-factored legal test that courts employ").  The court in *In re Golden* precluded portions of an expert's testimony which relied on interpretations of the IRC, but *permitted* the portions that consisted of "experience[]-based expert opinion as to

14

the context, operation, use, or application of a regulatory scheme".  2022 WL 362913, at *7, 13-14.  As discussed above, Reish's testimony fits into the latter category.

Reish also did not interpret contractual provisions to conclude what parties should have done to fulfill their contractual obligations, *see Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977), nor did he weigh the credibility of fact witnesses.  *See Nimely*, 414 F.3d at 398.  Reish instead provided helpful commentary on IRS practices, and opinions based on his direct experience representing pension plans before the IRS, and will do so again at trial.  *See supra,* Sec. II.A, B.

### III.    Pilgaard's expert testimony will be helpful to the jury and should not be excluded.

Pilgaard is a Danish lawyer, lecturer in Danish tax law, and former head of section at the Danish National Tax Tribunal.  (Dkt. No. 1062-5 ("Pilgaard Apr. 27 Decl.") ¶ 7, 9-10.)  SKAT does not dispute Pilgaard's qualifications, nor the sufficiency of any facts or the reliability of any principles that undergird Pilgaard's declarations.  Instead, SKAT seeks to cast every single component of those declarations as a "legal opinion."[6]  SKAT Br. at 13.  But Pilgaard's declarations are replete with factual information that will "help the trier of fact to understand the evidence or to determine a fact in issue[.]" FRE 702(a).  His expert testimony should therefore not be excluded.

Pilgaard's declarations include facts not familiar to a typical U.S. juror about, for example: the structure and operations of the Danish government, (Pilgaard Apr. 27 Decl. ¶¶ 13-39, 41-45, 49-51, 53-54); the "two alternative systems in place in Denmark [during the relevant

---

[6] Defendants do not dispute that certain portions of Pilgaard's declarations set forth legal opinions.  As Defendants made clear in their pre-trial disclosures, they do not intend to call Pilgaard to offer any legal opinions.  (*See* Dkt. No. 1062-7 (Markowitz Defendants' Amended Rule 26(a)(1) Initial Disclosures) at 15-16 ("To the extent that any portion of Pilgaard's Rule 44.1 declarations are considered to be conveying factual rather than legal information, Defendants reserve the right to call Pilgaard to testify to those matters[.]").)

time period] to obtain a refund of dividend withholding tax" and their mechanics, (*id.* ¶¶ 131-40); and Danish securities market practices, such as dematerialization of shares, net settlement by custodians, securities lending, and short-selling. (*Id.* ¶¶ 148-49, 151, 207; Dkt. No. 1062-6 ("Pilgaard June 27 Decl.") ¶¶ 85-86.) The jury will be lost without expert testimony to explain these complex issues and Pilgaard is qualified to do so. *See Namenda*, 331 F. Supp. 3d at 184 ("[E]xpert testimony is viewed as helpful in cases . . . involving . . . issues outside of the general knowledge of the jury.") (internal quotation marks and citation omitted); *United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175, 2016 WL 3268994, at *1 (N.D. Cal. June 15, 2016) ("[E]xpert testimony to help the jury digest this complex regulatory framework [of the Pipeline Safety Act] is necessary and warranted.").

Pilgaard's "specialized knowledge" of the Danish government, SKAT's dividend withholding tax administration, and Danish securities market practices would assist the trier of fact, here the jury, understand the evidence and determine the facts in issue. FRE 702; *see Fosamax*, 645 F. Supp. 2d at 190-91 (permitting expert testimony about "complex regulatory requirements"); *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (holding that the District Court did not abuse its discretion by concluding that expert testimony addressing "securities registration, registration exemptions, and specific regulatory practices" would assist the jury); *Schneider*, 551 F. Supp. 2d at 186 (permitting expert testimony on securities "industry customs and practices" to "include a discussion of regulatory rules and other guidelines"); *Am. Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 451 (S.D.N.Y. 2006) (denying motion to preclude expert testimony on "the proper interpretation of generally applicable biological licensing [Food and Drug Administration] regulations" because "testimony on these complex regulatory provisions will assist the trier of fact"); *United States v. Nektalov*, 2004 WL 1469487,

at *3 (S.D.N.Y. June 30, 2004), *aff'd* 461 F.3d 309, 318 (2d Cir. 2006) (approving of proffered expert testimony by an IRS Special Agent regarding, among other things, "the regulatory framework that exists to combat money laundering").  *See also supra* Sec. II.A.

Testimony on these issues would go far beyond "simply reciting information reflected on a form and a website."  SKAT Br. at 15.  SKAT's reliance on *In re Terrorist Attacks of Sept. 11*, No. 03-MD-01570, 2023 WL 2366854 (S.D.N.Y. Mar. 6, 2023), is therefore misplaced.  In *In re Terrorist Attacks*, the expert report at issue consisted "largely of quotes (in plain English) from . . . documents, deposition transcripts, and other documentary evidence" with "little or no analysis of these quotes."  *Id.* at *6.

Unlike the expert in *In re Terrorist Attacks*, Pilgaard quotes SKAT publications in order to support his explanation of the evolution of SKAT's documentation requirements for tax reclaims, which lie at the heart of this case, as well as the import of SKAT's guidance.  (*See* Pilgaard Apr. 27 Decl. ¶¶ 131-40, 202.)  For example, in paragraphs 136 and 137 of his April 27 Declaration, Pilgaard provides his opinion about what SKAT did <u>not</u> request from dividend withholding tax reclaim applicants during the period at issue.  (*Id.* ¶¶ 136-37.)  Such testimony is crucial to the jury's understanding of SKAT's allegations.  Without Pilgaard's testimony, a lay juror could not "just as easily understand the evidence by reading" Danish tax forms and SKAT's published guidance, as SKAT contends.  *In re Terrorist Attacks*, 2023 WL 2366854 at *6; *see United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (finding no abuse of discretion in admitting expert testimony, much of which "was general background on federal securities regulation and the filing requirements of Schedule 13D, which [the expert] presented by referring to a blank form").

Pilgaard's testimony is admissible under Rule 702 and should not be precluded under Rule 403.  SKAT fails to explain how Pilgaard's testimony would create *any* prejudice to SKAT, let alone unfair prejudice rising to a level that would substantially outweigh the probative value of Pilgaard's testimony.[7]  SKAT Br. at 16.  SKAT's conclusory Rule 403 argument should be rejected.

## **CONCLUSION**

For the reasons above, Defendants respectfully request that the Court deny SKAT's Motion to Exclude the Proposed Testimony of Defense Experts Michael S. Ross, C. Frederick Reish, and Kasper B. Pilgaard.

Dated:  New York, New York
         July 5, 2024

                                        Respectfully submitted,

                                        DEWEY PEGNO & KRAMARSKY LLP

                         By:    /s/ Thomas E.L. Dewey
                                Thomas E.L. Dewey
                                777 Third Avenue – 29th Floor
                                New York, New York 10017
                                Tel.: (212) 943-9000
                                Fax: (212) 943-4325
                                tdewey@dpklaw.com


                                        KEKER, VAN NEST & PETERS LLP

                         By:    /s/ Elliot R. Peters
                                Elliot R. Peters
                                Julia L. Allen
                                633 Battery Street

---

[7] SKAT suggests that the jury would place "undue weight" on Pilgaard's testimony.  SKAT Br. at 16.  SKAT does not explain why that would be the case or why an instruction from the Court would be insufficient to cure any potential prejudice.  *See* (finding that the trial court's instruction that an expert's opinion was "not binding" "adequately protected against the jury's giving undue weight to [the expert's] opinion"); *Bilzerian*, 926 F.2d at 1295 (approving court's limiting instruction "indicating that the expert's testimony was simply background information").

San Francisco, CA 94111
Tel.: (415) 962-7188
epeters@keker.com

*Attorneys for Defendant Michael Ben-Jacob*

KOSTELANETZ LLP

By:    /s/ Sharon L. McCarthy
Sharon L. McCarthy
7 World Trade Center, 34th Floor
New York, New York 10007
Tel:    (212) 808-8100
Fax:    (212) 808-8108
smccarthy@kflaw.com

*Attorneys for Defendants John van Merkensteijn,III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

WILMER CUTLER PICKERING HALE AND DORR LLP

By:    /s/ Alan E. Schoenfeld
Alan E. Schoenfeld
7 World Trade Center250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM CapitalPension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

19

KATTEN MUCHIN ROSENMAN LLP

By:    /s/ David L. Goldberg
David L. Goldberg
Michael M. Rosensaft

50 Rockefeller Plaza
New York, NY 10020
Tel.: (212) 940-8800
Fax: (212) 940-8776
david.goldberg@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*