**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to the cases listed in
Appendix A to Pretrial Order No. 35, ECF
No. 977.

MASTER DOCKET
18-md-2865 (LAK)

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION OF**
**PLAINTIFF SKATTEFORVALTNINGEN'S MOTION TO EXCLUDE**
**THE PROPOSED TESTIMONY OF STEPHEN E. SHAY**

---

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ...................................................................................................................... 5

    A.    Shay Is Well-Qualified To Testify Regarding International Dividend Taxation .... 5

    B.    Shay's Testimony Is Directly Relevant To SKAT's Equitable And Quasi-Equitable Claims ............................................................................................... 6

    C.    Shay's Testimony Is Not Unfairly Prejudicial ........................................................ 9

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) .............................6

*George v. Celotex Corp.*, 914 F.2d 26 (2d Cir. 1990) .......................................................6

*Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015)........................................9

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008)..........................6

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*,
    No. 18-md-2865 (LAK), 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023) ...................................6

*Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144 (S.D.N.Y. 2020)...................2, 6, 7

*McKenna v. Chilton Co.*, No. 86 CIV. 6707 (KMW), 1991 WL 18142 (S.D.N.Y.
    Feb. 6, 1991) .............................................................................................9

*Rynasko v. New York Univ.*, 63 F.4th 186 (2d Cir. 2023) .................................................7

*U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122 (S.D.N.Y.
    2015) .......................................................................................................9

*U.S. ex rel. Ryan v. Staten Island Univ. Hosp.*, 04-CV-2483 (JG) (CLP), 2011 WL
    1841795 (E.D.N.Y. May 13, 2011) .........................................................................2, 7

*U.S. v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) ...........................................................9

**State Cases**

*Paramount Film Distrib. v. State*, 30 N.Y.2d 415 (1972) ...............................................2

**Other Authorities**

Fed. R. Evid. 401 ..........................................................................................6

Fed. R. Evid. 403 ........................................................................................1, 6, 9

Fed. R. Evid. 702 ........................................................................................1, 6

Pursuant to Paragraph 5 of Pretrial Order No. 36, ECF No. 978, Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan, Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust, Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan, and Michael Ben-Jacob[1] (collectively, "Defendants"), by and through the undersigned counsel, submit this memorandum of law in opposition of Skatteforvaltningen's (hereinafter "Plaintiff" or "SKAT") motion to exclude the proposed expert testimony of Professor Stephen E. Shay pursuant to Federal Rules of Evidence 403 and 702 (hereinafter "Rule 403" and "Rule 702").

## PRELIMINARY STATEMENT

SKAT's motion to exclude Professor Shay's testimony is built on a fundamental misconception. SKAT assumes the testimony is somehow an effort to get the defense's revenue rule arguments in front of the jury, notwithstanding the Court's rejection of those arguments. That is not correct. The defense made clear in its disclosures that it would not elicit the portions of

---

[1] Unjust enrichment, money had and received, and/or payment by mistake claims against Defendant Michael Ben-Jacob were dismissed with prejudice on September 1, 2023 in the relevant cases at issue in this memorandum. *See* Stipulation and Order of Voluntary Partial Dismissal and Partial Withdrawal of Pl. Skatteforvaltningen's Mot. For Partial Summ. J., ECF No. 918.

Shay's report expressing opinions about the revenue rule and its application to this case. The facts and opinions in Shay's report that the defense intends to elicit at trial are relevant for other purposes.

For example, Shay will provide the jury with important information that will allow it to evaluate SKAT's conduct. SKAT's conduct is highly relevant to any evaluation of the payment by mistake, unjust enrichment, and money had and received claims that SKAT chose to bring against Defendants. These claims require that the trier of fact balance the equities in order to reach a determination. *See, e.g.*, *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 160 (S.D.N.Y. 2020); *U.S. ex rel. Ryan v. Staten Island Univ. Hosp.*, 04-CV-2483 (JG) (CLP), 2011 WL 1841795, at *4 (E.D.N.Y. May 13, 2011). Balancing the equities "depends upon broad considerations of equity and justice." *Paramount Film Distrib. v. State of N.Y.*, 30 N.Y.2d 415, 421 (1972). That means examining not only Defendants' conduct, but also SKAT's.

SKAT had a choice about how to structure its dividend taxation regime, and—unlike every other witness in this case—Shay can bring to bear his experience and expertise to explain to the jury the choices that nations face when it comes to structuring a dividend withholding tax system, the choices Denmark made, and the risks and benefits that follow from those choices. While SKAT would prefer the jury to be blinded to SKAT's decisions and blinkered in its focus on Defendants' purported fraud, Defendants ought to be permitted to expand the aperture and reveal the full context. Shay's testimony will educate the jury about both the weaknesses in the withholding system SKAT chose to employ, and the other withholding systems it could have but chose not to employ. It will help the jury understand how SKAT's conduct created a legitimate dividend arbitrage opportunity in Danish securities, and why that opportunity is not available in nations that choose different withholding tax systems. A fact finder could appropriately consider SKAT's

- 2 -

choices—and its failure to take many steps it could easily have taken—in evaluating how the equities balance here.

That same information may also be relevant to assessing the statute of limitations (which may turn in part on what SKAT *should* have known) and whether SKAT's continued payments of dividend withholding tax refunds to Defendants should be considered a "mistake" for the purposes of the payment by mistake claims as opposed to an inevitable consequence of the decisions SKAT made about how to structure its withholding system.  It may also be relevant to evaluating whether SKAT can meet its burden to prove that it was injured as well as whether SKAT was comparatively negligent.

SKAT has estimated that its presentation of its case-in-chief will span weeks, including numerous witnesses.  In stark contrast, the defense intends to call only a handful of witnesses, but Shay is one of them.  Shay's testimony will not take long to introduce.  But it is important, it provides critical context that would otherwise be absent from the record, and it ought to be admitted.

The Court should deny SKAT's motion to exclude Shay from testifying about the topics identified in Defendants' amended Federal Rule of Civil Procedure 26(a) initial disclosures.

## **BACKGROUND**

Defendants initially engaged Shay to provide context and background on matters of U.S. international tax law, policy, and treaties, with a particular focus on the role of the revenue rule, in connection with Defendants' summary judgment motion.  *See* Expert Report of Stephen E. Shay, dated Dec. 31, 2021 ¶ 1, ECF No. 1059-1 (hereinafter "Shay Report").  The Court denied that motion, *see In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, *21 (S.D.N.Y. Nov. 20, 2023), but the information

and opinions about the U.S. and Danish tax systems in Shay's report are relevant to other questions the jury must resolve, including how to balance the equities, whether the statute of limitations ran on any of SKAT's claims, whether SKAT's payments can appropriately be deemed "mistakes," whether SKAT can meet its burden of proving injury, and whether SKAT was comparatively negligent. Defendants therefore disclosed to SKAT in their amended Rule 26(a) initial disclosures, that Shay's proposed expert testimony is much narrower than his full report. *See* Defs.' Amend. Initial Disclosures, ECF No. 1059-2. Specifically, Defendants informed SKAT that Shay is prepared to testify to regarding "[t]he matters disclosed in Paragraphs 3-15, 17.2, 37, 38, 43.2, 43.3, 47-49, 50.1-50.5, 51-53, 55, 56, 58 (but not 58.3)" of Shay's report, "includ[ing] all sub-paragraphs within that paragraph unless otherwise noted." *Id.* at 16. The paragraphs of Shay's report include the following topics:

- Shay's qualifications, independence, and the information considered when preparing his report, *see* Shay Report at ¶¶ 3-15, to assist the trier of fact in evaluating Shay's credibility as an expert witness;

- Relevant information regarding international tax policy and tax treaty development, *see id.* at ¶ 17.2 (including sub-paragraphs i-iv), to assist the trier of fact in understanding the tax structures at issue in this litigation;

- Background information regarding national tax enforcement within the global economy, *see id.* at ¶¶ 37 (including sub-paragraphs 37.1-37.2), 38, to assist the trier of fact in understanding how national economies collect taxes, maintain public confidence in the tax system, and navigate international tax treaties, such as the U.S.-Danish tax treaty at issue in this litigation;

- The relationship between recovery of an incorrect withholding tax refund and the collection of an under withheld tax amount, and the avenues available to tax authorities where an incorrect amount is withheld or a refund is sought, *see id.* at ¶¶ 43.2, 43.3, to assist the trier of fact in understanding the allegations regarding Defendants' divided tax withholding refunds at issue in this litigation;

- An overview of the U.S. cross-border dividend withholding tax regime and how it compares to Denmark's cross-border dividend withholding tax regime, *see id.* at ¶¶ 47-49, 50.1-50.5 (including sub-paragraphs i-iii), to

provide context and background to assist the trier of fact in understanding relevant aspects of Denmark's withholding tax regime; and

- The contrast between a relief at source system (such as the U.S. model of dividend taxation) and a tax reclaim system such as Denmark's, including specific policies taken to respond to the tax enforcement challenges associated with stock lending and equity trading strategies, and the options available to, and obligations on, a country with a system like Denmark's in responding to withholding payments and refund applications, including the ability to conduct further investigations, *see id.* at ¶¶ 51 (including sub-paragraphs 51.1-51.3), 52 (including sub-paragraphs 52.1-52.2), 53, 55, 56 (including sub-paragraphs 56.1-56.4), 58 (including sub-paragraphs 58.1-58.2), to assist the jury in understanding the choices and tradeoffs Denmark made in selecting its dividend withholding tax system.

SKAT filed its motion to preclude Mr. Shay's testimony without first engaging in any dialogue with the defense about the relevance of these opinions to topics other than the application of the revenue rule.

## ARGUMENT

### A.    Shay Is Well-Qualified To Testify Regarding International Dividend Taxation

Shay is eminently qualified to serve as an expert witness regarding international tax law, policies, and treaties.    Among other things, he served as Deputy Assistant Secretary for International Tax Affairs in the U.S. Department of the Treasury, *id.* at ¶¶ 3, 4, 6, 7, where he participated in the negotiation of bilateral income tax treaties, *id.* at ¶ 7, and had oversight responsibility for the U.S. tax treaty network, *id.* at ¶ 4.  He has also served as the U.S. delegate to the negotiation of the 1988 Council of Europe and OECD Multilateral Convention for Mutual Assistance in Tax Matters, *id.* at ¶ 7, and as the U.S. delegate to the reconstituted G20/OECD Global Forum for Transparency and Exchange of Information in Tax Matters, *id.* at ¶ 4.  Shay has taught at Yale Law School, Harvard Law School, and Oxford University.  *Id.* at ¶ 5.  He has also served in various leadership positions related to tax law and policy for a number of professional organizations.  *Id.* at ¶¶ 6, 8.  Shay has published scholarly, policy-focus, and practitioner articles

regarding international taxation, and he has testified a number of times before Congressional tax-writing and investigative committees. *Id.* at ¶ 10. Shay also has served as an expert witness on U.S. and international taxation on a number of occasions. *Id.*

SKAT concedes Shay's expertise but challenges his proffered testimony as irrelevant and unfairly prejudicial.[2] SKAT faces a heavy burden. To be relevant, Shay's testimony need only have some tendency to make a fact more or less probable than it would be without the testimony, Fed. R. Evid. 401; all that is required from the expert is "a valid connection to the pertinent inquiry." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786 (1993) (cleaned up). As to SKAT's unfair prejudice contention, because Rule 403 excludes relevant evidence, "it is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990). SKAT has not met its heavy burden of showing this evidence is so clearly irrelevant or prejudicial that it should be excluded in advance of trial, before the Court sees the full scope of evidence each side will present.

**B.    Shay's Testimony Is Directly Relevant To SKAT's Equitable And Quasi-Equitable Claims**

As required by Rule 702, Professor Shay's testimony is directly relevant to any consideration of SKAT's claims for payment by mistake, unjust enrichment, and money had and received. Under New York law, these three claims require the trier of fact to balance the equities in order to make a determination. *See, e.g., Johnson*, 488 F. Supp. 3d at 160 (explaining that,

---

[2] SKAT contends that Mr. Shay's proposed expert testimony is "almost entirely … 'background' … provided as 'context,'" which "would not help the jury in understanding the evidence or determining any fact at issue." Pl.'s Br. at 6. But to support its argument, SKAT even cites portions of the Shay Report that Defendants have not proposed be used at trial. *Id.* (referring to Shay Report at ¶ 2, 2.1). Moreover, expert witnesses are not constrained to only providing opinions; they can also provide contextual or background information that could be helpful to the trier of fact. *See, e.g., Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 186 (S.D.N.Y. 2008). Regardless, SKAT's characterization of Shay's testimony as "background" significantly undermines its argument that the testimony will work extraordinary prejudice to SKAT.

under New York law, money had and received claims are actually legal claims, "but an action for money had and received lies when … under principles of equity and good conscience, defendant should not be permitted to keep the money" and that such a cause of action "is essentially identical to a claim of unjust enrichment.") (citations and internal quotations omitted); *U.S. ex rel. Ryan*, 2011 WL 1841795, at *4 (explaining that, under New York law, claims for unjust enrichment and payment by mistake "are claims for restitution or quasi-contract for which recovery is to be had *ex aequo et bono*, that is, according to what is equitable and good"); *Rynasko v. New York Univ.*, 63 F.4th 186, 201 (2d Cir. 2023) ("A money had and received claim is essentially identical to an unjust enrichment claim and requires allegations that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money.") (citation and internal quotations omitted).

Because these claims require balancing equities, the trier of fact is entitled to consider the behavior of both a plaintiff and a defendant, including the extent to which a plaintiff's conduct induced a defendant. It would hardly be surprising for jurors listening to the facts of this case to wonder whether the challenged conduct would even be possible in the United States, whether there is anything unique about Denmark's system of refunding dividend withholding tax, and what considerations led Denmark to operate its system in the way it did. Shay has the answers. Shay's testimony about the choices Denmark made—particularly as contrasted with the choices the United States made—provide the context the jury needs to understand the facts of this case. With the benefit of that understanding, the jury will be able to weigh SKAT's own choices and conduct against Defendants'. The alternative—presenting SKAT's system of dividend withholding tax

collection and refund as inevitable and the exclusive means by which a country could process dividend tax—would be fundamentally unfair.

In addition to attacking Shay's testimony in general, SKAT takes particular issue with paragraphs 58.1 and 58.2 and footnote 107 of the Shay Report.

- Paragraph 58.1 says: "Under a tax reclaim system it is the responsibility of the revenue authority, in this case SKAT, to get the tax refund right."

- Paragraph 58.2 says: "Where taxes are refunded incorrectly by a tax reclaim country to a person outside the enforcement jurisdiction of that country, the tax reclaim country's recourse appropriately is collection assistance under a treaty or other international agreement."

- And footnote 107 says: "The reasons for Denmark's revenue loss in this case should await the outcome of ongoing investigations and review in Denmark. They likely will be found to have multiple causes, including a combination of failures to remedy defects in substantive tax law provisions addressing equity lending and derivatives, as well as failures to design or implement basic financial controls and disciplines in making tax refunds. See discussion of U.S. dividend withholding enforcement experiences, infra ¶¶ 51-52."

These portions of Shay's report speak to the question of relative fault, which the fact finder may fairly consider in assessing the balance of the equities. And, when combined with other trial evidence, this evidence will also help the jury evaluate whether SKAT has met its burden of proof that it suffered any loss at all. Defendants do not plan to elicit testimony from Shay "as to what he believes other investigations and reviews 'likely will' determine to be the cause of SKAT's damages" or arguing that determining SKAT's claims need await any other investigation. Pl.'s Br. at 9. Instead, Defendants expect to elicit from other witnesses' testimony about the results of investigations by SKAT's own internal audit division into SKAT's handling of dividend withholding that are relevant to evaluating SKAT's conduct. Shay's testimony will help the jury understand the significance of this other evidence.

### C.    Shay's Testimony Is Not Unfairly Prejudicial

In addition to being squarely relevant to multiple issues, none of this evidence is excludable under Rule 403 before trial.  *First*, because Rule 403 decisions require careful consideration of precisely what is being offered and how it relates to other trial evidence, the Court ought to defer consideration of Rule 403 until trial.  *See, e.g.*, *McKenna v. Chilton Co.*, No. 86 Civ. 6707 (KMW), 1991 WL 18142, at *2 (S.D.N.Y. Feb. 6, 1991) (reserving "decision until trial on the admissibility of customer testimony under the probative value/prejudicial effect balancing test of Fed. R. Evid. 403" because "during the course of trial unforeseen developments" may bear on its relevance). *Second*, evidence that tends to prove that SKAT's own actions contributed to or caused its own loss is in no way tantamount to "[t]he prejudice that Rule 403 is concerned with," *U.S. v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995).  *Third,* this is not the kind of evidence that could plausibly generate the kind of unfair prejudice with which Rule 403 is concerned.  *See, e.g.*, *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 288 (S.D.N.Y. 2015) (ordering redaction of emails under Rule 403 where their content could "lead a juror to view Club officials as cynical or heartless"); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 139 (S.D.N.Y. 2015) (granting motion in limine under Rule 403 to exclude "evidence or rhetoric relating to the idea that there is an entire industry built on profiting from death," including use of the phrase "death profiteering").  There is nothing remotely inflammatory in Shay's proposed testimony.  It is rather a somewhat dry description of various tax withholding systems, and how those systems do or do not create opportunities for dividend arbitrage.  There is no risk that the jury will be so angered by this evidence that it will render an unfair verdict.

Indeed, the probative value of Shay's proposed testimony weighs strongly in favor of its admission notwithstanding SKAT's professed concerns under Rule 403.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny SKAT's motion to exclude Mr. Shay's proposed testimony.

Dated: New York, New York
July 5, 2024

Respectfully submitted,

/s/ *Peter G. Neiman*
Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352
Andrew.Dulberg@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital*

*Pension Plan, RJM Capital Pension Plan
Trust, Routt Capital Pension Plan, Routt
Capital Trust*

/s/ *Sharon L. McCarthy*
Sharon L. McCarthy
KOSTELANETZ LLP
7 World Trade Center
250 Greenwich Street
34th Floor
New York, NY 10007
(212) 808-8100
smccarthy@kostelanetz.com

Nicholas S. Bahnsen
Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
nbahnsen@kostelanetz.com
ddavidson@kostelanetz.com

*Attorneys for Defendants John van
Merkensteijn, III, Elizabeth van Merkensteijn,
Azalea Pensión Plan, Basalt Ventures LLC
Roth 401(K) Plan, Bernina Pension Plan,
Bernina Pension Plan Trust, Michelle
Investments Pension Plan, Omineca Pension
Plan, Omineca Trust, Remece Investments LLC
Pension Plan, Starfish Capital Management
LLC Roth 401(K) Plan, Tarvos Pension Plan,
Voojo Productions LLC Roth 401(K) Plan,
Xiphias LLC Pension Plan*

/s/ *David L. Goldberg*
David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

- 11 -

*Attorneys for Defendants Robert Klugman,*
*RAK Investment Trust, Aerovane Logistics LLC*
*Roth 401K Plan, Edgepoint Capital LLC Roth*
*401K Plan, Headsail Manufacturing LLC Roth*
*401K Plan, The Random Holdings 401K Plan,*
*The Stor Capital Consulting LLC 401K Plan*


/s/ *Thomas E.L. Dewey*
Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue
37th Floor
New York, New York 10017
(212) 943-9000
tdewey@dpklaw.com
smullen@dpklaw.com

/s/ *Elliot R. Peters*
Elliot R. Peters
Julia L. Allen
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
(415) 962-7188
epeters@keker.com
jallen@keker.com

*Attorneys for Defendant Michael Ben-Jacob*