**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTERFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to: Cases listed in
Appendix A to Pretrial Order No. 35 (ECF
No. 977).

MASTER DOCKET

18-md-2865 (LAK)

**DEFENDANTS' MEMORANDUM OF LAW REGARDING ISSUES OF FOREIGN LAW
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 44.1**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ III

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ........................................................................................................ 3

A.    Under Danish Law, A Purchaser Becomes The Owner Of Securities Upon Entering Into A Final And Binding Agreement ..................................................... 3

B.    Under Danish Law, If A Purchaser Becomes The Owner Of Securities Before The Ex-Dividend Date, The Purchaser Is The Beneficial Owner Of The Dividend ....... 4

C.    Beneficial Ownership Under Danish Law ............................................. 5

D.    The Jury Should Not Be Instructed To Apply The *Nemo Dat* Doctrine ................ 6

E.    Jury Instructions On The Statute Of Limitations Defense Should Include Instructions On The Danish Legal Concept Of The Inquisitorial Procedure And SKAT's Investigative Obligation ......................................................... 10

   1.    The Danish Statute Of Limitations Bars Any Of SKAT's Claims Brought More Than Three Years After SKAT Had Grounds To Seek Information To Clarify The Facts Underlying Those Claims .............................................. 10

   2.    The Inquisitorial Procedure Obligates SKAT To Ascertain All Relevant Information Before Taking Any Official Action ....................................... 10

   3.    SKAT "Should Have Known" Of Its Claims When SKAT Had Grounds To Seek Information To Clarify The Facts Of Those Claims ......................... 13

   4.    The Circumstances Which Give SKAT Grounds To Seek Information Need Not Specifically Pertain To A Particular Claim, But May Apply Generally To A Class Of Similar Claims ........................................................ 14

   5.    The Inquisitorial Procedure Does Not Obligate SKAT To Act As A Police Agency, But Required That SKAT Do More Than Merely Passively Rely On Information It Received ......................................................... 15

F.    The Court Should Instruct The Jury That, Under Danish Law, If The Transactions At Issue Are Considered "Derivative Positions," The Transactions Would Be Taxable And Refundable ........................................................... 17

G.    Under Danish Law, SKAT And The Kingdom of Denmark Are Separate Legal Entities, SKAT Lacks The Standing To Assert Claims On Behalf Of The Kingdom

Of Denmark, And SKAT Does Not Own The Dividend Withholding Tax That It
Collects ............................................................................................................................18

CONCLUSION....................................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023) ........................................................................ *passim*

*Skatteforvaltningen (The Danish Customs & Tax Admin.) v. Solo Capital Partners LLP & Ors* [2023] EWHC 590 (Comm) .................................................................................... 7

**Other Authorities**

James Steven Rogers, Policy Perspectives on Revised U.C.C. Article 8, 43 UCLA L. REV. 1431 (1996) ........................................................................................................................ 7

**Rules**

Federal Rule of Civil Procedure 44.1 ................................................................. 1, 2, 19

Pursuant to Federal Rule of Civil Procedure 44.1, and Paragraph 4 of Pretrial Order No. 36, ECF No. 978, Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan, Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust, Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan, and Michael Ben-Jacob (collectively, "Defendants"), by and through the undersigned counsel, submit this brief regarding disputed issues of foreign law in the above-captioned cases (the "Cases").

## PRELIMINARY STATEMENT

There are several unresolved key questions regarding the applicability and the application of Danish law that affect the Cases. In particular, there are unresolved questions regarding (1) the meaning of beneficial ownership of dividends under Danish tax law, Declaration of Daniel C. Davidson ("Davidson Decl.") Ex. 18 (*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623 at *7-*9 (S.D.N.Y. Nov. 20, 2023)); (2) the applicability of the civil law principle of *nemo dat quod non habet* ("*nemo dat*") to questions regarding beneficial ownership of dividends for tax purposes in Danish law, *id.* at *8, *9; (3) the correct application of the Danish statute of limitations, as informed by the Danish legal concepts

of the inquisitorial procedure and investigative obligation, *id.* at *14-*15; (4) issues of Danish law regarding the taxation of derivatives, Davidson Decl. Ex. 9 at ¶ 240; Ex. 22 at ¶ 5; and (5) whether SKAT is a separate legal entity from the Kingdom of Denmark, has standing to assert claims on behalf of the Kingdom of Denmark, and owns the dividend withholding tax that it collects under Danish law, Davidson Decl. Ex. 18 at *13.[1]

As set forth below, the Court should instruct the jury (1) that, under Danish law, a purchaser becomes the beneficial owner for Danish tax purposes of shares when the purchaser enters into a binding, final contract to purchase those shares, and (2) that a purchaser who becomes the beneficial owner before the ex-dividend date is also the beneficial owner of the dividend. For the reasons explained below, the court should *not* instruct the jury on the civil law principle of *nemo dat,* which does not apply in this context. The Court should also instruct the jury on (3) the Danish legal concept of the inquisitorial procedure when instructing the jury on the statute of limitations defense; and (4) that, if the transactions at issue are considered "derivative position[s]," Davidson Decl. Ex. 9 at ¶ 240, the transactions would be taxable and refundable under Danish law.[2]

Defendants further renew their request that the Court find that, under Danish law, SKAT and the Kingdom of Denmark are separate legal entities, SKAT lacks the standing to assert claims on behalf of the Kingdom of Denmark, and SKAT does not own the dividend withholding tax that it collects.

---

[1] Defendants do not here set forth their disagreement with SKAT's conflict-of-law argument. Nor would it have been possible for Defendants to do so in light of SKAT's insufficient disclosure—all SKAT indicated that it intended to raise was "an issue about the applicability of Danish law" to its fraud and aiding and abetting fraud claims. ECF No. 1027 at 1. What the "issue" was, SKAT never previewed. *Id.* The parties jointly requested the opportunity to oppose each other's submissions on June 20, 2024, ECF No. 1045, and were granted leave to do so on June 21, 2024. *See* ECF No. 1050. Defendants will respond to SKAT's argument then.

[2] Defendants reserve the right to dispute or rebut any issue of foreign law that SKAT raises in its brief filed pursuant to Federal Rule of Civil Procedure 44.1 and Paragraph 4 of Pretrial Order No. 36 (ECF No. 978).

2

## ARGUMENT

### A.    Under Danish Law, A Purchaser Becomes The Owner Of Securities Upon Entering Into A Final And Binding Agreement

Danish law is clear:  for tax purposes, a purchaser of securities becomes the owner of the securities on the trade date – that is, "at the time of a final and binding agreement between a party to sell a share to a party wishing to purchase the share." Davidson Decl. Ex. 5 at ¶ 156.  Indeed, SKAT's own Legal Guide states this directly: "A share has been purchased . . . on the date on which a final and binding agreement on purchase . . . is in place." *Id.*  For listed securities, "the date on the sales note (the trade date) is considered the date when a taxpayer has entered into a final and legally binding acquisition agreement." *Id.* at ¶ 170.

Taxpayers are entitled to rely on SKAT's Legal Guide.  Declaration of Foreign Law of Kasper Bech Pilgaard dated June 24, 2024 ("June 24, 2024 Pilgaard Decl.") at ¶ 18; Davidson Decl. Ex. 5 at ¶ 156 n.8 ("[T]he Eastern High Court of Copenhagen has ruled that taxpayers, as a main rule, are entitled to rely on and conform themselves to the Legal Guide.").  Moreover, the Legal Guide is binding on SKAT's employees, unless clearly inconsistent with higher-ranking sources of law.  June 24, 2024 Pilgaard Decl. at ¶ 18.  That is plainly not the case here.

Ample and definitive authority supports the conclusion in SKAT's Legal Guide, including three Danish Supreme Court judgments, two lower court decisions, and binding answers provided by the Danish Tax Council.  Davidson Decl. Ex. 5 at ¶ 158.  In each of the three Danish Supreme Court cases, the Court found that the purchaser became the owner at the moment the relevant agreement was signed, even where the agreement was only an *option*. *Id.* at ¶¶ 159-61.  In one of the lower court decisions, the City Court assessed when ownership was obtained where the binding agreement provided for payment in two installments and delayed the obligation to deliver the shares until the second installment was paid.  The Court found that the purchaser became the owner

3

"when the offer to purchase the shares was accepted." *Id.* at ¶ 162.   In the second lower court decision, the City Court held that the purchaser became the owner when the purchase contract was signed, even though transfer of the securities and payment did not occur for a full year after the contract was entered into. *Id.* at ¶ 163. And in a binding opinion, the Danish Tax Council specifically rejected keying ownership to *settlement* of the transaction. *Id.* at ¶ 168.

As set forth above, it is clear that, under Danish law, a purchaser becomes the owner of securities upon the execution of a final, binding purchase agreement.

**B.  Under Danish Law, If A Purchaser Becomes The Owner Of Securities Before The Ex-Dividend Date, The Purchaser Is The Beneficial Owner Of The Dividend**

SKAT's Legal Guide provides that the "actual shareholder" is the beneficial owner of dividends, and that a person "is the actual shareholder if he owned the shares at the time the dividend payment was declared." *Id.* at ¶ 201. That opinion is again supported by ample authority. First, Section 19 of the Danish Sale of Goods Act provides that "'[a] contract for the acquisition of a share shall include any dividend that has not fallen due for payment at the time of the conclusion of the contract.'" *Id.* at ¶ 188 (quoting ECF 801-75 at § 19).  That means the purchaser who enters into a binding agreement to purchase shares becomes the owner not only of the shares, but of any dividends declared for those shares. *Id.* (citing ECF 801-75 at § 19).  Moreover, Section 49(a) of the Companies Act confirms that formal registration as the owner of the shares – which typically happens well after the trade date – is not required to become entitled to the dividend. *Id.* at ¶ 189 (citing ECF 801-48 at § 49(a)).

Nor is a Danish taxpayer required to trace a dividend back to the paying company.  Rather, a payment from a trading counterparty in the amount of a declared dividend is treated for tax purposes as a dividend so long as the recipient of the payment is also considered for tax purposes to be the owner of the stock. *Id.* at ¶¶ 193, 202.  Thus, if an owner of securities, such as the U.S.

pension plans here, lends those securities to a borrower, and the borrower pays the net amount of the dividend to the lender, multiple tax tribunal decisions have held that it is the lender (i.e. the U.S. pension plans), not the borrower, who is treated as the owner of the dividend and taxed accordingly. *Id.* at ¶¶ 196-98. That result follows without regard to whether the borrower actually received a dividend payment from the issuer. *Id.* at ¶ 197.

### C.    Beneficial Ownership Under Danish Law

Though beneficial ownership is a relatively new concept under Danish law, the concept has been clarified since judicial decisions interpreting the phrase emerged in the mid-2000s. *Id.* at ¶ 171. In SKM 2010.268.LSR, the Danish Eastern High Court explained that "the meaning of the term ['beneficial ownership'] must be in accordance with the international understanding of the term." *Id.* at ¶ 175 (citing SKM 2012.121.ØLR, ECF No. 801-66). As such, it is clear that this term should be interpreted in accordance with "the OECD Model Tax Conventions and the 1977 and 2003 comments to the OECD Model Tax Convention, as they express the international meaning of the term." *Id.* Ultimately, the Eastern High Court explained that the "assessment of who is 'beneficial owner' is a transaction-specific assessment and has the purpose of determining who has the right of disposal of the distributed dividends." *Id.* It is worth noting that the Ministry of Taxation agreed with the outcome of the Eastern High Court's application of its logic to the case's facts in its published comments regarding the judgment. *See id.* (citing ECF No. 801-67). It follows that, if the ownership of a security and an associated divided is transferred to a purchaser upon execution of a binding, final contract prior to the relevant ex dividend date, then the beneficial owner of that security and associated dividend must be the purchaser.

In a recent Danish case regarding Bech-Bruun, the Eastern High Court even indicated that "the fact that a US pension plan might loan out shares or enter into forward contracts to hedge its position would not necessarily deprive the pension plan of its status as beneficial owner of the

shares or any dividends flowing from those shares."  Davidson Decl. Ex. 15 at ¶ 13 (citing ECF No. 834-41 (Davidson Decl. Ex. 12) at 4).  SKAT appears to have agreed with this analysis, stating that "[d]uring the hearing of the case by the High Court the parties agreed that the seller's sale of the borrowed shares entailed a fiscal disposal of the shares which entails that in terms of tax the pension plan is deemed to be the beneficial owner of the shares … ." *Id.* ¶ 14 (citing ECF No. 834-41 (Davidson Decl. Ex. 12) at 3).

Perhaps more importantly, the Danish "Ministry of Taxation's Reply to Early Warning confirms that a borrower of shares may sell them."  *Id.* at ¶ 92.  In this same document, the Ministry observed that "the tax and civil treatment of share loans is different."  ECF No. 823-17 at 11.  Additionally, in the context of a securities lending transaction—which is particularly relevant because the pension plan defendants loaned shares of Danish securities—the Ministry of Taxation specifically recognized that "the lender is the beneficial owner of the shares for tax purposes," but the borrower "is reported to SKAT" as the civil "owner of the shares."  *Id.*

**D.    The Jury Should Not Be Instructed To Apply The *Nemo Dat* Doctrine**

SKAT cannot effectively dispute any of these principles, which are drawn directly from SKAT's own guidance, which in turn is supported by overwhelming authority.  Rather, SKAT has contended that a different doctrine – not mentioned *anywhere* in the contemporaneous guidance SKAT issued to taxpayers – requires a different result here.  That is, SKAT asserts that the doctrine of *nemo dat* trumps all the guidance it actually provided taxpayers and prevents a purchaser from acquiring beneficial ownership where the seller was selling "short" on the trade date.  While the Court provisionally indicated that it "agrees" with SKAT that Danish law applies *nemo dat*, Davidson Decl. Ex. 18 at *9, the Court should reject the claim that *nemo dat* governs the tax treatment of the securities transactions at issue here.

6

*Nemo dat* is typically applied to the sale of goods and may prevent even a good faith purchaser from acquiring title to goods that turn out to be stolen. *See* Davidson Decl. Ex. 13 at ¶ 26 n.22. *Nemo dat* operates on the theory that the thief, not having acquired good title, cannot convey good title. SKAT has cited no cases applying *nemo dat* to the assessment of beneficial ownership for tax purposes, which of course can be different than legal title. *See, e.g.*, ECF No. 823-17, Ex. 16 at 1.

Moreover even in the core context of determining legal title to goods, *nemo dat* is not absolute; there are circumstances where a good faith purchaser may acquire title to property that turns out to be stolen. For example, as Justice Baker found, "the law provides for certain cases in which, where a person has misappropriated the property from its true owner and sold it on, the third party buyer may obtain ownership and extinguish that of the true owner, if he acts in good faith and the misappropriating party has provided apparent (but incorrect) evidence of authority to sell the property." *Skatteforvaltningen (The Danish Customs & Tax Admin.) v. Solo Capital Partners LLP & Ors* [2023] EWHC 590 (Comm) [82].

In the context of securities transactions, the law places a high premium on finality and clarity. It would be bizarre and destabilizing if the good faith purchaser of stock in a transaction on the New York Stock Exchange had to worry that their position might be retroactively unwound if it turned out that the seller (or someone even further back in the chain of transactions they knew nothing about) happened to be a thief. And, in fact, that is not the law. Rather, "the general rule of *nemo dat* has never been thought appropriate for investment securities." James Steven Rogers, *Policy Perspectives on Revised U.C.C. Article 8*, 43 UCLA L. REV. 1431, 1461–62 (1996) (Davidson Decl. Ex. 19).[3]

---

[3] The article goes on to note that under the UCC, finality attaches to ownership upon transfer. *Id.* As described above, the Danish rule is different; ownership is obtained on the trade date.

SKAT fails to cite even *one* Danish case applying *nemo dat* to invalidate the sale of securities. Nor would doing so make any sense, for *nemo dat* cannot be reconciled with the common practice of selling short. Selling short – literally selling shares one does not own – is an entirely routine financial practice. Denmark for many years permitted "naked" short selling – that is, selling short without the seller having in place any agreement to obtain the sold shares. Davidson Decl. Ex. 15 at ¶ 93. European Union law since 2012 has permitted short selling without having first arranged to borrow the securities, so long as the securities in question are publicly traded and identified by a third party as "easy to borrow." EU Regulation No. 827/2012 Article 6(4)(b). In its all-consuming desperation to win this case, SKAT is advocating for a rule flatly contrary to the established regulation of short-selling.

Under a *nemo dat* regime, short sales would be a nullity until settlement. But that is not the way the market works, and it would be profoundly destabilizing of markets. What – for example – would happen where the purchaser in a short sale liquidates their position prior to settlement by selling to a third party, and then the original short seller fails to deliver? On SKAT's theory, not only the original trade, but the subsequent trade, would need to be unwound as neither the original purchaser nor the third party ever obtained ownership of the securities. The application of *nemo dat* to securities transactions is simply incompatible with stable financial markets and has no place in this case.

From a tax perspective, SKAT's position is even harder to understand. A day-trading purchaser, who buys from a short-seller and then sells out of their position before the short-sale settles, having (on SKAT's theory) never obtained ownership of the securities, would presumably face no tax on any capital gain (and no deduction on any capital loss) incurred. SKAT has never

taken the position that taxation can be so easily avoided, but it is the natural consequence of its effort to fit the square peg of *nemo dat* into the round hole of securities transactions.

SKAT's litigation position in this case is not only destabilizing of markets and unsupported by even a single Danish decision on point, it is also contrary to SKAT's own legal guidance at the time of the transactions at issue here. At that relevant time, SKAT's Legal Guide addressed beneficial ownership where a borrower of securities sells the borrowed securities to a third party. SKAT's view was that the borrower of securities is *not* the beneficial owner of the securities. *See* Davidson Decl. Ex. 5 at ¶ 201 (citing Davidson Decl. Ex. 7). But SKAT's Legal Guide also opined that a purchaser of borrowed securities becomes the beneficial owner of the securities. Davidson Decl. Ex. 7 ("If the borrower resells the shares to a third party, the lender will not be charged tax on disposal of shares. However, the third party becomes the temporary beneficial owner of dividends. Thus, the third party is taxed on the dividends and the third party is also entitled to receive a possible refund of dividend tax if too much dividend tax has been withheld."). In other words, according to SKAT's authoritative guidance, the purchaser of the borrowed securities acquired something – beneficial ownership – that the seller of those securities (the borrower) did not have. That is exactly the opposite of the result that would follow if *nemo dat* applied.

That guidance is binding on SKAT absent dispositive authority to the contrary. And as noted above, SKAT has not identified a single Danish case applying *nemo dat* to the sale of securities.

In short, the caselaw, SKAT's guidance, common sense, and sound policy all point in the same direction: *nemo dat* does not apply in this context.

**E.    Jury Instructions On The Statute Of Limitations Defense Should Include Instructions On The Danish Legal Concept Of The Inquisitorial Procedure And SKAT's Investigative Obligation**

    **1.    The Danish Statute Of Limitations Bars Any Of SKAT's Claims Brought More Than Three Years After SKAT Had Grounds To Seek Information To Clarify The Facts Underlying Those Claims**

"The parties agree that, under Danish law, SKAT's claims are subject to a three-year limitations period 'running from the point at which SKAT knew or should have known of its claims against [d]efendants.'"[4]  Davidson Decl. Ex. 18 at *14.  However, the appropriate application of the Danish statute of limitations to the Cases remains unresolved.  *See id.* at *14-*15.

SKAT is obligated under a Danish legal concept called the inquisitorial procedure, or principle of investigation, to ascertain all relevant information before taking any official action.  Davidson Decl. Ex. 8 at ¶¶ 15-17.  As a result, under Danish law, SKAT "should have known of its claims" when SKAT had grounds to seek information to clarify the facts of those claims.  The circumstances which give SKAT grounds to seek information need not specifically pertain to a particular claim, but they may apply generally to a class of similar claims.

As such, Defendants respectfully submit that any instruction to the jury relating to the statute of limitations defense should include a discussion of the inquisitorial procedure and SKAT's investigative obligation, as outlined further below.[5]

    **2.    The Inquisitorial Procedure Obligates SKAT To Ascertain All**

---

[4] Under New York's borrowing statute, NY CPLR 202, Plaintiff must also satisfy New York's statute of limitations to the extent it is shorter than Denmark's.  Defendants John van Merkensteijn, III, Richard Markowitz, Bernina Pension Plan Trust, and RJM Capital Pension Plan Trust (collectively, the "19-cv-17013 Defendants") filed a motion for summary judgment in the complaint filed in *SKAT v. Van Merkensteijn et al.*, 19-cv-17013 (LAK) based on New York law and the contractual agreement to shorten the statute of limitations to require all claims to be filed within two months of the expiration of the tolling agreements, which this Court denied.  The 19-cv-17013 Defendants preserve this issue for trial.

[5] "Denmark's limitations period [is] made applicable in the New York Solo and ED&F [B]ellwethers by New York and Utah's respective borrowing statutes."  Mem. Op., ECF No. 924 at 35 n.55 (quoting Pl. Opp. Mem., ECF No. 831, at 49).

**Relevant Information Before Taking Any Official Action**

The inquisitorial procedure, or principle of investigation, requires SKAT to obtain all relevant information before it renders an official decision, such as a decision to approve a tax reclaim application and pay out withheld dividend tax.  Davidson Decl. Ex. 8 at ¶ 15.  SKAT's own Legal Guide explains the inquisitorial procedure (which it refers to as the "official principle") and its application to SKAT:

> The official principle is the principle that a public authority is obliged to obtain all relevant information in a case before a decision is taken.  The official principle is also called the principle of investigation. The official principle is a legal principle.  The official principle means that SKAT must ensure that a case is sufficiently informed to make a correct decision.  SKAT must therefore ensure that all relevant information is provided and involved in the case.  This applies both to the factual and the legal situation. It is a concrete assessment in each case whether SKAT has sufficient information to make a correct decision.  The information may be obtained by asking the taxpayer to provide the information if the taxpayer has the opportunity to do so.  However, SKAT must subsequently check whether the taxpayer's information is correct. The information may also be obtained from other authorities or third parties … .  If SKAT has not complied with the official principle, this may result in the decision being invalid, as the official principle is a guaranteed requirement.

*Id.* at ¶ 16 (citing SKAT Legal Guide, available at https://info.skat.dk/data.aspx?oid=124 at § A.A.7.4.3).

SKAT's own explanation of the inquisitorial procedure makes clear that, under Danish law, SKAT may not take official actions by simply passively relying on information it receives.  *Id.* at ¶ 17.  Instead, as Professor Sten Bønsing writes, SKAT "is obligated to take the initiative to procure all information in the case."  Davidson Decl. Ex. 16 at ¶ 12 (quoting *Almindelig Forvaltningsret* [Ordinary Administrative Law], 4th ed., 2018).  Further, before SKAT takes official action based on information it receives from others, SKAT "will not just be able to take such information as fact but, to the extent that it is necessary, it has to check the information and thus ensure that the case is based on a factually correct foundation."  *Id.* at ¶ 13 (quoting *Karsten Revsbech m.fl.:*

*Forvaltningsret Sagsbehandling* [Administration Law Case Administration], 7th ed., 2014 at 145-46).

SKAT's duties extend not only to determining whether to pay a refund claim, but also in evaluating the amount of tax that should be withheld by the issuer. Thus, Danish issuers are generally required to withhold and pay over to SKAT 27% of each dividend issued, but may in certain circumstances not be required to withhold where the available data indicates the recipient is entitled to receive the dividend without any taxation. *See* Davidson Decl. Ex. 5 at ¶ 115. However, there may be circumstances where limitations in the data available to an issuer at the time the withholding is paid causes the issuer to overestimate the number of shareholders who are exempt from taxation, and therefore to underpay withholding tax. June 24, 2024 Pilgaard Decl. at ¶ 15. Indeed, the Danish government has recognized that there are circumstances where the relevant data available to issuers is "gives a high risk of errors" for tax purposes and SKAT "cannot rely on the reported information." ECF No. 823, Ex. 16 at 2. SKAT at all relevant times has had ample tools to evaluate whether an issuer has withheld the correct amount of tax. For example, under section 59 of the Tax Control Act, SKAT may obtain relevant information from both the issuer itself and any financial companies involved. June 24, 2024 Pilgaard Decl. at ¶ 16; *see* Davidson Decl. Exs. 23-24. SKAT also reviewed reclaim submissions from owners of securities, had the opportunity to compare those submissions to the data received by issuers, and reached determinations based on those submissions to refund certain withholdings. Where SKAT determines that an issuer has under-withheld the tax due on dividends, SKAT at all relevant times had the power (and indeed the obligation) to collect from the issuer whatever additional withholding amounts SKAT determines are due, based on the information available to it. June 24, 2024 Pilgaard Decl. at ¶ 17.

### 3.    SKAT "Should Have Known" Of Its Claims When SKAT Had Grounds To Seek Information To Clarify The Facts Of Those Claims

Due to the inquisitorial procedure, the question under Danish law of when SKAT "should have known" of its claims turns on when SKAT had grounds to seek information to clarify the facts of those claims.  Professor Bo von Eyben of the University of Copenhagen describes the general statute of limitations of inquiry:

> In assessing whether the claimant should have acquired knowledge of his claim, the courts are not precluded from finding that the claimant should have shown a higher degree of care than is usually exercised in similar situations.  The decision will always be based on a *case-by-case assessment of whether the claimant has shown the degree of care that may be required in the situation concerned.*  The key question will typically be *whether the claimant should have launched investigations etc., which could have given him or her sufficient information to assert the claim.*

Davidson Decl. Ex. 8 at ¶ 18 (quoting *Forældelse* [Statute of Limitations], 2nd ed., 2019 at 445).

Professor von Eyben further explains how this statute of limitations of inquiry applies to SKAT, given SKAT's obligations under the inquisitorial procedure:

> The decisive factor is whether *the tax authorities actually had sufficient information to be able to correctly calculate the tax*, or whether the tax authorities did have *grounds to seek additional information to clarify the facts*—grounds that would typically appear from the information already available, but which can also be based on the tax authorities generally paying special attention to the matter in question.

*Id.* at ¶ 19 (quoting *Forældelse* [Statute of Limitations], 2nd ed., 2019 at 601).

Danish case law illustrates Professor von Eyben's point:  When SKAT has grounds to seek additional information, but does not do so, its claims are barred by the statute of limitations.  *See Id.* at ¶ 21 (describing U 1981.72 H, in which the Supreme Court of Denmark held the tax authority's claim time-barred because, although the authorities did not, in fact, learn about a business's deduction of non-deductible expenses until 1977, the authorities *could have* established those facts in 1973).  Additionally, in TfS 1997.403 B, a Danish court considered whether the tax

authority should have known of its claim against the defendant mortgage fund for value-added tax earlier than 1992. *Id.* at ¶ 23. The Court found the record was "ambiguous" as to whether the defendant was conducting business in 1984. *Id.* "But because the local tax authorities received *some* information suggesting that the defendant was an operating entity in 1984," they "should have investigated the matter further at that time … ." *Id.* The Court concluded that "the very fact that the information was ambiguous … should have led the [tax authority] to make its position clear as early as 1984 or 1985." *Id.*

Additionally, Danish case law clearly indicates that "the tax authority will be deemed to be aware of its claim from the moment it receives information relating to that claim." *Id.* at ¶ 25. The case TfS 2002.617 concerned fee payments which the taxpayer sought to show were made to Danish companies. *Id.* The taxpayer submitted to the tax authority invoices that were issued by a UK company owned by the taxpayer. *Id.* The tax authority investigated the UK company, including by contacting UK authorities. *Id.* The tax authority received information from UK authorities, including that the UK company in question had been struck off the company register. *Id.* Thus, the taxpayer could not show that the fee payments were made to Danish companies and, indeed, the tax authority determined the fees were a taxable distribution to the taxpayer and increased the taxpayer's assessments accordingly. *Id.* The tax authority subsequently brought a case in 1999. *Id.* The Eastern High Court found those claims were time-barred, because when the tax authority received information from the UK authority in 1994, at that point "it *should have known* that it had a claim against the taxpayer." *Id.* (emphasis added).

### 4. The Circumstances Which Give SKAT Grounds To Seek Information Need Not Specifically Pertain To A Particular Claim, But May Apply Generally To A Class Of Similar Claims

Professor von Eyben explains that SKAT's "grounds to seek additional information to clarify the facts" can "be based on the tax authorities generally paying special attention to the

matter in question." *Id.* at ¶ 19 (quoting *Forældelse* [Statute of Limitations], 2nd ed., 2019 at 601). Thus, the statute of limitations begins running as to SKAT's claims when SKAT had grounds to seek additional information regarding a certain *type* of claim, even if those grounds are not particularized as to any particular claim of that type.

That principle is illustrated in TfS 1988.581 V. In that case, the "question for the court was whether the tax authority should have immediately raised a claim against the taxpayer in 1979, or whether it was entitled to await the results of [an] investigation that began in 1983." *Id.* at ¶ 22. The taxpayer in question deducted interest on a loan. After investigating, the tax authority determined the taxpayer was not entitled to that deduction, because debt certificates, which were withdrawn in 1979 upon the loan's redemption, were covered by a forward transaction. *Id.*

The tax authority did not determine that the specific debt certificates in question were covered by a forward transaction until 1986. *Id.* Nevertheless, the High Court "held that the tax authority's claim was time-barred." *Id.* "In 1979, the tax authority had prepared circulars about loan arrangements *just like the one at issue*. Thus, the High Court concluded that 'the circular issued by the State Tax Directorate on 29 October 1979 on loan arrangements of the nature in question had given the tax authority the opportunity to immediately raise the tax claims in question … instead of awaiting the results of the investigation, which was not commenced until 1983.'" *Id.* (emphasis added).

### 5. The Inquisitorial Procedure Does Not Obligate SKAT To Act As A Police Agency, But Required That SKAT Do More Than Merely Passively Rely On Information It Received

SKAT's expert previously presented a straw-man argument—that SKAT is not legally obligated to make "police investigations"—in order to advance an unsupportable claim that the inquisitorial procedure only obligates SKAT to investigate "where the relevant information was

already available to" SKAT.  Davidson Decl. Ex. 11 at ¶¶ 155-56.  But the case law described above demonstrates that Danish courts will bar SKAT's claims as untimely when SKAT had grounds to seek additional information to clarify the facts of those claims but did not timely do so—in other words, when SKAT should have known of those claims.  ECF No. 839 at ¶ 15.

That view is confirmed by SKAT's own explanation of the inquisitorial procedure.  *See* § B.1., *supra*.  As SKAT's own Legal Guide indicates, because of the inquisitorial procedure, "SKAT must therefore ensure that all relevant information is provided and involved in the case … .  The information may be obtained by asking the taxpayer to provide the information if the taxpayer has the opportunity to do so.  However, SKAT must subsequently check whether the taxpayer's information is correct."  Davidson Decl. Ex. 8 at ¶ 16 (quoting SKAT Legal Guide at § A.A.7.4.3).

The inquisitorial procedure does not transform SKAT into a police agency.  But it does require that SKAT take the initiative to "ensure that *all relevant information* is provided" before making an official decision.  *Id.*

\*      \*      \*

The parties agree that New York's borrowing statute makes Denmark's limitations period applicable.[6]  *See* Pl. Opp. Mem., ECF No. 831 at 49.  The only question for the Court is how it ought to instruct the jury regarding the content and contours of that law.  Defendants respectfully request that any instruction to the jury relating to the statute of limitations defense include a

---

[6] As noted, *supra*, page 10, n.4, Plaintiff must also satisfy New York's statute of limitations, and Defendants John van Merkensteijn, III, Richard Markowitz, Bernina Pension Plan Trust, and RJM Capital Pension Plan Trust preserve for trial the statute of limitations argument raise in the motion for summary judgment filed in *SKAT v. Van Merkensteijn et al.*, 19-cv-17013 (LAK).

discussion of the Danish law concept of the inquisitorial procedure and SKAT's investigation obligation.

### F. The Court Should Instruct The Jury That, Under Danish Law, If The Transactions At Issue Are Considered "Derivative Positions," The Transactions Would Be Taxable And Refundable

One of SKAT's experts opined that rather than obtaining securities, the pension plan defendants had "in effect, a derivative position." *See* Davidson Decl., Ex. 9 at ¶ 240. If the jury accepts that conclusion, there is a very substantial argument that the revenue rule would bar this case. After all, the premise of SKAT's argument for avoiding the revenue rule is that defendants pretended to own securities but in fact owned nothing, and thus their lack of entitlement to a tax refund could be determined without consulting Danish tax law. *See* Pl. Opp. Mem., ECF No. 831 at 1-2.

But that argument falls apart if—as SKAT's own expert has opined—defendants obtained a derivative position in Danish securities. Danish tax law subjects derivative transactions to taxation. *See, e.g.*, June 24, 2024 Pilgaard Decl. at ¶ 13 (citing KURSGEVINSTLOVENS [The Capital Gains Act] § 29 (Davidson Decl. Exs. 20-21)). Taxation applied to derivative transactions is based on a "separation principle," which means that the taxation of the derivatives contract under the rules of the Danish Capital Gains Act is independent of the rules applicable to the underlying asset. *Id.* (citing SKAT's Legal Guide section C.B.1.8.1). Additionally, "[t]here are territorial limits on Danish taxation of derivatives contracts. Taxation applies if the party receiving income is fully taxable in Denmark or carries on business from a permanent establishment in Denmark and the financial contract is attributable to the permanent establishment in Denmark." *Id.* at ¶ 8, n.1 (citing KURSGEVINSTLOVENS [The Capital Gains Act] § 2 (companies) (Davidson Decl. Exs. 20-21)). If defendants purchased derivatives, as SKAT's own expert opined, determining whether defendants were entitled to the refunds they sought would require analysis of Danish tax

law, including whether the transactions were within Denmark's tax jurisdiction, and whether a U.S. pension plan with a derivative position in Danish securities who receives the economic benefit of an after-tax dividend is entitled to recoup withholdings paid on the underlying securities. But parsing those kinds of questions, which are emphatically questions of Danish tax law, is precisely what the revenue rule forbids this Court from doing. Davidson Decl. Ex. 18 at *2.

### G. Under Danish Law, SKAT And The Kingdom of Denmark Are Separate Legal Entities, SKAT Lacks The Standing To Assert Claims On Behalf Of The Kingdom Of Denmark, And SKAT Does Not Own The Dividend Withholding Tax That It Collects

Defendants have previously argued that SKAT and the Kingdom of Denmark are separate legal entities; that SKAT is not entitled to bring the claims at issue here on behalf of the Kingdom of Denmark; and that SKAT does not own the dividend withholding tax it collects. *See* ECF No. 801 at ¶¶ 13-82, 110-17, Exs. 1-30, 36-38; ECF No. 838 at ¶¶ 47–83; *see also* Defs.' Mem. in Support of Mot. to Dismiss, ECF No. 135, at 6-12; Defs.' Reply Mem. in Support of Mot. to Dismiss, ECF No. 183, at 2-10; Defs.' and Third-Party Defs.' Mem. in Support of Mot. for Summary Judgment, ECF No. 799, at 57-58; Defs.' and Third-Party Defs.' Reply Mem. in Support of Mot. for Summary Judgment, ECF No. 837, at 32-33. The Court ruled against Defendants in the context of motions to dismiss and for summary judgment. *See* Pretrial Order No. 13, ECF No. 243; Davidson Decl. Ex. 18 at *13. Defendants here incorporate by reference those prior arguments and respectfully request a ruling on these issues of foreign law. *See* Davidson Decl. Ex. 18 at *13, n.54 ("To the extent that the questions of whether SKAT and the Kingdom of Denmark are the same legal entity and/or SKAT is otherwise entitled to bring these claims on behalf of the Kingdom of Denmark are issues of foreign law for the Court to decide pursuant to Federal Rule of Civil Procedure 44.1, the Court need not and does not decide these questions at this time.").

18

## CONCLUSION

The Court should instruct the jury on the matters of Danish law set forth above and resolve the open questions of Danish law identified above in favor of Defendants.  Defendants intend to request specific jury instruction language—supported by the citations to Danish law referenced herein and the previously-filed declarations of Danish legal experts—in accordance with this Court's pretrial orders.

Dated: New York, New York
June 24, 2024

Respectfully submitted,

/s/ *Peter G. Neiman*

Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352
Andrew.Dulberg@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth*

*401(K) Plan, Batavia Capital Pension Plan,
Calypso Investments Pension Plan, Cavus
Systems LLC Roth 401(K) Plan, Hadron
Industries LLC Roth 401(K) Plan, RJM Capital
Pension Plan, RJM Capital Pension Plan
Trust, Routt Capital Pension Plan, Routt
Capital Trust*

/s/ *Sharon L. McCarthy*
Sharon L. McCarthy
KOSTELANETZ LLP
7 World Trade Center
250 Greenwich Street
34th Floor
New York, NY 10007
(212) 808-8100
smccarthy@kostelanetz.com

Nicholas S. Bahnsen
Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
nbahnsen@kostelanetz.com
ddavidson@kostelanetz.com

*Attorneys for Defendants John van
Merkensteijn, III, Elizabeth van Merkensteijn,
Azalea Pensión Plan, Basalt Ventures LLC
Roth 401(K) Plan, Bernina Pension Plan,
Bernina Pension Plan Trust, Michelle
Investments Pension Plan, Omineca Pension
Plan, Omineca Trust, Remece Investments LLC
Pension Plan, Starfish Capital Management
LLC Roth 401(K) Plan, Tarvos Pension Plan,
Voojo Productions LLC Roth 401(K) Plan,
Xiphias LLC Pension Plan*

/s/ *Michael M. Rosensaft*
David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza

New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

*Attorneys for Defendants Robert Klugman,*
*RAK Investment Trust, Aerovane Logistics LLC*
*Roth 401K Plan, Edgepoint Capital LLC Roth*
*401K Plan, Headsail Manufacturing LLC Roth*
*401K Plan, The Random Holdings 401K Plan,*
*The Stor Capital Consulting LLC 401K Plan*

/s/ *Sean K. Mullen*
Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue
37th Floor
New York, New York 10017
(212) 943-9000
tdewey@dpklaw.com
smullen@dpklaw.com

/s/ *Elliot R. Peters*
Elliot R. Peters
Julia L. Allen
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
(415) 962-7188
epeters@keker.com
jallen@keker.com

*Attorneys for Defendant Michael Ben-Jacob*