# Exhibit 8

BR1997.1021/94
TfS 1997, 403

**Copenhagen City Court judgment of February 13, 1997, j nr. 1021/94**

*Danish Ministry of Taxation Customs and Tax Administration v/Kammeradvokaten v/advokatfuldmægtig Tom Holsøe 2100 Copenhagen Ø*
mod
*Danish Agricultural Mortgage Fund, v/ attorney Preben Thomassen Nyrupsgade 21, 1602 Copenhagen V*

*VAT liability - mortgages - excusable ignorance*

- The case concerned whether a mortgage fund was actually a mortgagee for a period in 1984 and liable for VAT, and whether the authorities had been in ignorance of the VAT liability and were only able to assert the claim in 1992. The mortgage fund was found not to have abandoned the mortgage, and since the local authorities were informed of the situation in 1984, they should have investigated the matter. The defendant mortgage credit fund was acquitted.

- In 1983, the defendant mortgage credit fund took over a property as a usable mortgage, but handed over the administration to a lawyer after a compulsory composition had been opened for the debtor. The mortgage fund formally deregistered the mortgage to the customs authority on July 1, 1984. The case revolved around the question of whether the mortgage fund was actually the mortgagee in the period January-June 1984 and liable for VAT during the period, and whether the customs authority was in ignorance of the mortgage fund's VAT liability and was only able to assert the claim from 1992. The court found that the mortgage fund had not abandoned the mortgage and was therefore liable for VAT. However, as the local customs office had been informed in 1984 that the usufruct lien continued, the customs authority should have investigated the matter further at the time and the defendant mortgage credit fund was acquitted.

## City Courts

In this case, where the judgment pursuant to section 366a(2) of the Danish Administration of Justice Act is replaced without a complete statement of case, the plaintiff, Skatteministeriet Told og Skattestyrelsen, claimed that the defendant, Dansk Landbrugsrealkreditfond, was ordered to pay DKK 52,430 plus interest of 1.3% per commenced month of DKK 26,215 from December 1, 1984 and of DKK 26,215 from March 1, 1985.

The defendant has claimed acquittal.

Claims relate to VAT returns for the period January 1, 1984 to June 30, 1984. The parties agree on the amount of the claim. However, the parties do not agree whether the defendant was a mortgagee during the period in question and is therefore liable for the claim, and if so, whether the claim is time-barred.

Farmer Bent Mylin's property was taken for usable mortgage on June 16, 1983 by the defendant. The bankruptcy court opened a compulsory composition for the debtor on September 15, 1983, and the defendant formally discharged the mortgage against the plaintiff around July 1, 1984.

In support of the claim, the plaintiff has argued that the defendant was a mortgagee in the first half of 1984. Even though attorney Hans Sylvestersen was appointed as supervisor for Bent Mylin in November 1983, the defendant has actually retained the usufruct mortgage, which the defendant has stated to both attorney Hans Sylvestersen and attorney Karl Henning Johansen, who acted for the defendant.

interests in the site. In letters dated October 7, 1983, the defendant indicated that it did not wish to formally give up the usufruct for the time being. In a letter dated March 15, 1984, the defendant1 stated that it would only be prepared to terminate the mortgage when the defendant had been satisfied. Thus, the defendant had not actually relinquished the usufruct, and it has no bearing on the present case that the defendant actually agreed to Hans Sylvestersen administering the property. The administration of the property was in the defendant's interest, and the defendant could at any time take over the property as mortgagee.

In support of the claim that the claim is not time-barred, the plaintiff has stated that the plaintiff has been in ignorance of the fact that the defendant was liable for VAT during the period, and that the plaintiff was not able to assert the claim against the defendant until January 1992. The limitation period was therefore suspended until January 1992. As stated above, the plaintiff received ambiguous answers from Bent Mylin's advisors and the defendant's lawyer.

In support of the claim that the defendant was not a mortgagee in spring 1984, the defendant has stated that the defendant actually waived the established mortgage with effect from September 26, 1983, when the administration of the property was transferred to lawyer Hans Sylvestersen. This also appears from the correspondence between attorney Hans Sylvestersen and the defendant's local attorney Hans Jakob Hansen. Between attorney Hans Sylvestersen and attorney Carl Henning Johansen, it was discussed that attorney Hans Sylvestersen should take over responsibility for the operation of Bent Mylin's property, thereby effectively terminating the mortgage. In this connection, attorney Karl Henning Johansen wrote to the defendant by letter dated September 30, 1983, and the letter states, among other things, that "he (Sylvestersen) wants DLR to waive the mortgage in exchange for his guarantee that no other debt will be paid out of the amount outstanding with him until DLR's arrears have been paid. I would like to hear whether they will consider this "confession" to be sufficient for the abandonment of the mortgage. My opinion is that if Attorney Sylvestersen has the money, he might as well pay". The defendant then left the administration of Bent Mylin's property to the supervisory authority during the suspension of payments, which is evident from attorney Karl Henning Johansen's letter of October 11, 1983 to Celebrity Slaughterhouses stating that payment for the slaughter of animals should be made to attorney Sylvestersen Ribe. Formally, the usufruct was not terminated in writing to the bailiff court in Tønder, but this was not a requirement under the rules at the time.

Did the defendant have to be considered liable to account for VAT during the period

January 1 to June 30, 1984, the claim is time-barred. By letter of May 4, 1984, the plaintiff requested the defendant to provide an explanation as to why the mortgage was still maintained. The plaintiff received an explanation by letter dated May 7, 1984. The plaintiff was thus already aware on May 4, 1984 that there could be a usufruct that had not been deregistered by the defendant. This answer together with Attorney Karl Henning Johansen's letter of July 6, 1984, in which he stated that the usufruct had now finally ended, should have given the plaintiff reason to investigate the matter further.

During the case, testimony was given by attorney Karl Henning Johansen. Karl Henning Johansen has, among other things, explained that he was a lawyer for the defendant in 1983. The witness's administration of Bent Mylin's property ceased on September 26, 1983. However, there was still a mortgage deficit,

and as Bent Mylin was not deemed to be cooperative, the defendant was interested in keeping a "short leash on him", which is why they would not give up the mortgage. After September 26, Hans Mylin administered

Copyright © 2021 Karnov Group Denmark A/S

Sylvestersen actually held the property for the defendant. However, Sylvestersen was to be regarded as the debtor's representative. The construction was designed so that the defendant, in the event of default, could immediately take over the mortgage as usufructuary mortgagee. There was no obligation to give notice of termination of the usable mortgage to either the bailiff court or the customs chamber, and the witness does not remember today why he wrote the letter of July 6, 1984 to the District Customs Chamber. It is in fact a matter of formality.

Court comments:

It is assumed that there was no obligation for the defendant to deregister the usable mortgage either to the bailiff court or the district customs office. It must therefore depend on a weighing of the actual circumstances whether the mortgage existed in the period January 1, 1984 to June 30, 1984.

By letter dated September 30, 1983, the defendant's lawyer Karl Henning Johansen asked the defendant whether the defendant wanted to waive the mortgage. In a letter dated October 7, 1983, the defendant stated that it did not wish to formally abandon the usufruct for the time being. By letter dated March 15, 1984, the defendant stated that the defendant was prepared to terminate the mortgage when the mortgage deficit had been paid. This deficit was paid by letter dated June 29, 1984, in which attorney Hans Sylvestersen remarked to the defendant that he assumed that the defendant would take care of the termination of the mortgage with the various suppliers, including notifying the customs authorities of the formal termination.

The Court found that the defendant would not waive the usufruct until the defendant had been satisfied for arrears and costs. This appears, among other things, from attorney Karl Henning Johansen's letter of May 7, 1984 to the District Customs Chamber, where the attorney states that "the mortgage continues until the composition is fulfilled, in order to have some "control" of the property, if DLR so wishes. The usufruct gives the fund the opportunity to intervene in the operation of the property with immediate notice". This corresponds to the lawyer's explanation in court, where he stated that the defendant wanted to have "control" over Bent Mylin.

In the court's opinion, the defendant did not give up its mortgage until all arrears had been paid. The defendant has thus during the period in question been obliged to keep VAT accounts and pay the VAT due.

It appears from the plaintiff's internal memo of April 27, 1984, that the plaintiff had become aware that there was still a formal mortgage on Bent Mylin's property. The memo ends with the statement that the defendant "will consider this registration and thus liability", and by letter dated May 4, 1984, the plaintiff asked attorney Karl Henning Johansen for an explanation, as "the customs chamber must be of the opinion that the mortgagee is liable for the tax liability as long as the mortgage continues, and must request an explanation as to why the mortgage continues". By letter dated May 7, 1984 from attorney Karl Henning Johansen, the plaintiff was informed that the usufruct continued until the composition was fulfilled. By letter dated May 22, 1984, the plaintiff maintained his claim, which was countered by Karl Henning Johansen's letter dated August 31, 1984. This letter stated that the usufruct terminated on September 26, 1983. This information together with Bent Mylin's claim in the enforcement court on March 18, 1985, that the defendant had the property in usable mortgage in the spring of 1984, should have given the plaintiff reason to investigate the liability more closely. The court admits that the plaintiff has received ambiguous information from the defendant and his advisor and lawyer Karl Henning Johansen. However, the very fact that the information was ambiguous, coupled with the fact that the plaintiff was considering

about the basis of liability should have meant that the plaintiff had already made its position clear in 1984 or 1985. Thus, the plaintiff has not been in an unaccountable ignorance that the defendant was liable for VAT during the period.

The defendant should therefore be acquitted.

*For it is recognized as right*

The Danish Agricultural Mortgage Fund is dismissed. Within 14 days from the date, the plaintiff, the Danish Ministry of Taxation, Customs and Tax Agency, shall pay the Danish Agricultural Credit Fund DKK 9,400 in costs.

Copyright © 2021 Karnov Group Denmark A/S