**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re
CUSTOMS AND TAX ADMINISTRATION OF
THE     KINGDOM     OF     DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION
This document relates to:     The cases identified
                             in Appendix A

MASTER DOCKET
18-md-02865-LAK

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO EXCLUDE THE REPORTS, OPINIONS, AND TESTIMONY OF**
**GRAHAM WADE**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.     Mr. Wade's Opinions That The Pension Plans Did Not "Hold" Shares and Therefore Could Not Receive Distributions Is a Legal Determination ............................ 2

II.    Mr. Wade's Reliance on the Elysium Documents Makes His Opinion Unreliable............ 3

III.   Mr. Wade's Contractual Obligations to Barclays Will Necessarily Prevent Robust Cross-Examination................................................................................................. 4

CONCLUSION ............................................................................................................... 6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. National Railroad Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ............................................................................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ........................................................................................................4

*Dracz v. Am. Gen. Life Ins. Co.*,
  426 F. Supp. 2d 1373 (M.D. Ga. 2006), *aff'd*, 201 F. App'x 681 (11th Cir.
  2006) ................................................................................................................................4

**Rules**

Fed. R. Evid. 702 .....................................................................................................................4

Fed. R. Evid. 803(6) .................................................................................................................3

## PRELIMINARY STATEMENT

Defendants demonstrated in their motion exactly why Graham Wade should be excluded from providing expert testimony.  In response, Plaintiff Skatteforvaltningen ("SKAT") concedes that certain parts of Mr. Wade's proposed testimony and report are in fact inappropriate.  SKAT admits that Mr. Wade should not testify as to whether the pension plans owned securities or dividends, that it is inappropriate for Mr. Wade to make conclusory statements beyond his expertise that go the Defendants' states of mind (i.e. that they were "in league with Solo"), and implies that he will not invoke any duties of confidentiality to Barclays when answering questions on cross-examination.  SKAT's responses are nothing more than half-measures and meaningless workarounds that fail to meet Defendants' objections and ignore the many remaining issues with Mr. Wade's problematic testimony.

Although SKAT agrees that Mr. Wade should not testify as to whether the pension plans owned Danish securities, it tries to sidestep the issue by arguing that Mr. Wade will not testify that the pension plans did not "own" shares, but that they did not "hold" shares.  SKAT's wordsmithing is just as disingenuous.  SKAT is not referring to who the record holder is — Mr. Wade has conceded that the pension plans would typically not be the record holders.  Rather, SKAT is using "hold" as a proxy for "own;" and it certainly will imply that to the jury. Mr. Wade should not be able to testify about ownership in any manner, no matter what word he uses.  SKAT knows that the jury will see through their cosmetic fix and undoubtedly seeks that very response.

Moreover, SKAT's argument that it is reasonable for Mr. Wade to rely on the unauthenticated Elysium Documents that he knows nothing about, other than that they were seized in an office building in Dubai, is ridiculous.  Although addressed more completely in Defendants' motion and reply to exclude the testimony of Bruce Dubinsky, the Elysium

Documents are not the type of data reasonably relied on by experts in the field. Mr. Wade knows nothing about the Elysium Documents, and SKAT cannot seriously argue that a former head of global capital markets at Barclays would have relied on such documents.

For all of the reasons contained in Defendants' moving papers and described here, Mr. Wade's testimony should be excluded.

## **ARGUMENT**

I. **Mr. Wade's Opinions That The Pension Plans Did Not "Hold" Shares and Therefore Could Not Receive Distributions Is a Legal Determination**

The Parties agree that Mr. Wade should not be allowed to testify that the Defendants did not own shares of Danish stock.[1] SKAT is mistaken when it suggests that "[n]owhere in his expert report does Mr. Wade opine on whether the plans owned shares." Dkt. 1090 at 1 ("SKAT Opp."). Mr. Wade's report is replete with opinions as to when individuals "own" shares. *See* Wade Rep. ("Exhibit A") ⸿ 62 (explaining that a party maintaining a long-stock short-future position "legally owns the shares"); Exhibit A ⸿ 63(iii) ("In the case of a simple loan secured with a pledge, the Securities Lender retains legal and economic ownership of the securities, and therefore directly receives the real dividend.").

SKAT then posits, however, that Mr. Wade should be able to testify that the trading cleared by the Solo custodians "did not result in the defendant plans holding any Danish shares." SKAT Opp. at 1. But, SKAT does not explain the relevance of the Plans allegedly not "holding" Danish shares, and they should not be permitted to mislead the jury on this key issue. Danish shares are dematerialized, so nobody physically holds them. Nor, as Mr. Wade acknowledges,

---

[1] SKAT stated in its response that Mr. Wade's argument that at least some Defendants received what he calls "dividend compensation payments" is not relevant to the Solo Defendants. SKAT Opp. at 1-2 (stating that the distinction Mr. Wade drew between what Mr. Wade calls a real dividend and a dividend compensation payment "is not only not a legal one, it is also not relevant to Mr. Wade's opinions about the Solo trading"). With SKAT's representation that Mr. Wade will not try to mischaracterize the Defendants' dividends as "dividend compensation payment," that issue seems to be undisputed.

would one expect for a pension plan to be the record holder of the shares.  Rather, custodians and sub-custodians typically would be the registered record holders of the Danish shares.  *See* Exhibit A at 13 n.36 ("In practice, it is typical that the client's custodian or sub-custodian is listed as the actual registered holder of shares on the register.").  Moreover, the reclaim forms do not ask for the identity of the record holder of the Danish securities, but ask who the beneficial owner is — and that is the relevant inquiry for the jury.  *See* SKAT Exhibit 3016 to Ekstrand Dep. ("Exhibit B").  SKAT is playing word games, seeking to have Mr. Wade deploy the word "holding" in hopes that the jury would hear it as a proxy for ownership, while telling the Court that it has some unspecified other meaning.  But the relevant question is ownership, as SKAT itself has acknowledged.  *See* Dkt. 832 ¶ 5 ("SKAT 56.1") ("SKAT's case is that the defendants' claim to ownership of the dividends that were the subject of their reclaim applications was based on a series of fictitious circular trades, in which no party ever owned the relevant Danish shares.").  SKAT is simply seeking to use the word "hold" as a proxy for ownership, and they should not be permitted to do so.

SKAT has agreed that Mr. Wade cannot testify as to who owns Danish securities because that would be a conclusion of law.  Mr. Wade's proffered testimony that the pension plans did not "hold" those same securities is irrelevant, highly confusing, and prejudicial.

## II.  Mr. Wade's Reliance on the Elysium Documents Makes His Opinion Unreliable

The Elysium Documents are unauthenticated, inadmissible hearsay.  SKAT produced an affidavit from a partner at Deloitte Professional Services that describes the collection of documents from the Elysium offices in Dubai, but offers zero rationale as to why the documents are reliable.  Moreover, that detail does not even authenticate the documents as records of Solo, a separate company, much less lay the required additional predicate to establish that the documents are business records.  *See* Fed. R. Evid. 803(6).  As will be later argued in Defendants' motions *in*

*limine*, SKAT should not be able to introduce the Elysium Documents at trial. But, for the purposes of this motion, the fact remains that an industry expert would not base his expert opinion on records he had no reason to trust and knew nothing about other than that they were seized from an office in Dubai. To rely on such unreliable data and information would run afoul of the law. *See Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("[W]hen an expert opinion is based on data . . . that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."); *Dracz v. Am. Gen. Life Ins. Co.*, 426 F. Supp. 2d 1373, 1376 n.10 (M.D. Ga. 2006), *aff'd*, 201 F. App'x 681 (11th Cir. 2006) ("Plaintiff has made no showing that [a proffered expert's] data procured from unauthenticated internet web sites" are "'facts or data' . . . of a type reasonably relied upon by experts in the field[.]"). Mr. Wade has based his expert opinion on data that cannot reasonably be relied upon, and, for that reason alone, his opinions should be excluded.

## III.    Mr. Wade's Contractual Obligations to Barclays Will Necessarily Prevent Robust Cross-Examination

Should Mr. Wade be permitted to testify, Defendants must be allowed to conduct a robust and thorough cross-examination. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). It is therefore imperative that Defendants be able to cross-examine Mr. Wade without the significant guardrails of his confidentiality obligations owed to Barclays. SKAT claims that Defendants' concern about Mr. Wade's duties of confidentiality related to his time working at Barclays is without merit. If SKAT is stipulating that Mr. Wade will not invoke confidentiality as a reason to avoid answering Defendants' questions on cross-examination, then the issue is resolved, although SKAT and Mr. Wade should be held to that standard.

4

To be clear, however, Mr. Wade did invoke such confidentiality during his deposition. *See* Wade Dep. ("Exhibit C") at 209:7-11 (testifying that "under my contractual position with Barclays, I have to be careful about talking about the specifics of a given transaction"); Exhibit C at 218:20-23 ("I have to be – for the reasons I gave earlier, I have to be very careful here because I know, obviously, there has been a significant hearing in the U.S. [on a tax position Barclays took]"); Exhibit C at 226:14-18 (explaining that in answering the question, "I mean, I have to think about what my duty of confidentiality to the client is . . . ."). And further, while Mr. Wade may have answered questions posed to him, he did so acknowledging that he "[had] to be careful" in those answers. Exhibit C at 209:7. So, even though Mr. Wade gave answers to defense counsel's questions, his answers were, by his own admission, limited because of his obligations to Barclays. Exhibit C at 209:7-13. Despite SKAT's insistence that Mr. Wade "answered all defendants' questions about Barclays' cum-ex transactions without hesitation," that is plainly not the case. SKAT Opp. at 13. Mr. Wade cannot continue to invoke those same confidentiality obligations at trial in an effort to avoid providing answers that directly undermine the opinions he purports to hold in this case.

While testifying, Mr. Wade was concerned with his confidentiality obligations derived from his employment at Barclays. This concern, which resulted in hesitation and incomplete answers to questions posed by the defense, is sufficient to indicate that Mr. Wade's cross-examination at trial will be equally, and unfairly, limited. Mr. Wade should not be able to invoke any similar restrictions at trial or in any way limit his answers on cross-examination. If he cannot hold himself to that standard, then his testimony should not be allowed.[2]

---

[2] In its response, SKAT agrees that Mr. Wade should not be able to testify as to what is in the Defendants' minds or offer corresponding opinions contained in his report such as that the Defendants were "in league" with Solo. Exhibit A ¶ 245. With the concession that SKAT will not attempt to elicit any testimony about what the Defendants knew, Defendants' argument seems to be uncontested.

## <u>CONCLUSION</u>

For the foregoing reasons, and those contained in Defendants' Memorandum of Law to Exclude the Testimony of Graham Wade, Mr. Wade's testimony and reports should be excluded as unreliable and containing inappropriate legal conclusions. Alternatively, if the Court allows Mr. Wade to testify, he should not be able to opine on whether the Defendants' owned or held securities; must not be permitted to rely on the Elysium Documents; and should commit himself to a robust cross-examination that is not hampered by his confidentiality obligations to Barclays.

Dated: New York, New York
      July 19, 2024

Respectfully submitted,

DEWEY PEGNO & KRAMARSKY LLP

By: _____*/s/ Thomas E.L. Dewey*_____
Thomas E.L. Dewey
777 Third Avenue – 29th Floor
New York, New York 10017 Tel.: (212) 943-9000
Fax: (212) 943-4325
tdewey@dpklaw.com

KEKER, VAN NEST & PETERS LLP

By: _____*/s/ Elliot R. Peters*_____
Elliot R. Peters
Julia L. Allen
633 Battery Street
San Francisco, CA 94111
Tel.: (415) 962-7188
epeters@keker.com

*Attorneys for Defendant Michael Ben-Jacob*

KOSTELANETZ LLP

By: _____*/s/ Sharon L. McCarthy*_____
Sharon L. McCarthy
7 World Trade Center, 34th Floor
New York, New York 10007
Tel: (212) 808-8100
Fax: (212) 808-8108
smccarthy@kflaw.com

*Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan,*

*Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

WILMER CUTLER PICKERING HALE AND DORR LLP

By:      _/s/ Alan E. Schoenfeld_

Alan E. Schoenfeld
7 World Trade Center250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM CapitalPension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

KATTEN MUCHIN ROSENMAN LLP

By:      _/s/ David L. Goldberg_

David L. Goldberg
Michael M. Rosensaft

50 Rockefeller Plaza
New York, NY 10020
Tel.: (212) 940-8800
Fax: (212) 940-8776
david.goldberg@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*

8

**APPENDIX A**

| Defendants | Counsel | Associated Case(s) |
|---|---|---|
| John van Merkensteijn, III | Sharon L. McCarthy<br>Caroline Ciraolo<br>Nicholas S. Bahnsen<br>Kostelanetz & Fink LLP<br>7 World Trade Center, 34th Floor<br>New York, New York 10007<br>Tel: (212) 808-8100<br>Fax: (212) 808-8108<br>cciraolo@kflaw.com<br>smccarthy@kflaw.com<br>nbahnsen@kflaw.com | 18-cv-04833<br>19-cv-01788<br>19-cv-01794<br>19-cv-01798<br>19-cv-01800<br>19-cv-01801<br>19-cv-01803<br>19-cv-01809<br>19-cv-01810<br>19-cv-01813<br>19-cv-01818<br>19-cv-01865<br>19-cv-01866<br>19-cv-01871<br>19-cv-01873<br>19-cv-01893<br>19-cv-01894<br>19-cv-01906<br>19-cv-01911<br>19-cv-01918<br>19-cv-01924<br>19-cv-01928<br>19-cv-01930<br>19-cv-01931<br>19-cv-10713 |
| Elizabeth van Merkensteijn | | |
| Azalea Pension Plan | | |
| Basalt Ventures LLC Roth 401(K) Plan | | |
| Bernina Pension Plan | | |
| Bernina Pension Plan Trust | | |
| Michelle Investments Pension Plan | | |
| Omineca Pension Plan | | |
| Omineca Trust | | |

| | | |
|---|---|---|
| Remece Investments LLC Pension Plan<br><br>Starfish Capital Management LLC Roth 401(K) Plan<br><br>Tarvos Pension Plan<br><br>Voojo Productions LLC Roth 401(K) Plan<br><br>Xiphias LLC Pension Plan | | |
| Richard Markowitz<br><br><br><br><br><br><br><br><br><br><br><br>Jocelyn Markowitz<br><br>Avanix Management LLC Roth 401(K) Plan<br><br>Batavia Capital Pension Plan | Alan E. Schoenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>Telephone: (212) 230-8800<br>alan.schoenfeld@wilmerhale.com | 18-cv-04833<br>19-cv-01781<br>19-cv-01783<br>19-cv-01785<br>19-cv-01791<br>19-cv-01792<br>19-cv-01806<br>19-cv-01808<br>19-cv-01812<br>19-cv-01815<br>19-cv-01867<br>19-cv-01868<br>19-cv-01869<br>19-cv-01870<br>19-cv-01895<br>19-cv-01896<br>19-cv-01898<br>19-cv-01904<br>19-cv-01906<br>19-cv-01911<br>19-cv-01922<br>19-cv-01924<br>19-cv-01926<br>19-cv-01929 |

| | | |
|---|---|---|
| Calypso Investments Pension Plan<br><br>Cavus Systems LLC Roth 401(K) Plan<br><br>Hadron Industries LLC Roth 401(K) Plan<br><br>RJM Capital Pension Plan<br><br>RJM Capital Pension Plan Trust<br><br>Routt Capital Pension Plan<br><br>Routt Capital Trust | | 19-cv-10713 |
| Robert Klugman<br><br><br><br>RAK Investment Trust<br><br>Aerovane Logistics LLC Roth 401(K) Plan<br><br>Edgepoint Capital LLC Roth 401(K) Plan<br><br>Headsail Manufacturing LLC Roth 401(K) Plan<br><br>The Random Holdings 401(K) Plan<br><br>The Stor Capital Consulting LLC 401(K) Plan | David L. Goldberg<br>Michael M. Rosensaft<br>Zhanna A. Ziering<br>Katten Munchin Rosenman LLP<br>50 Rockefeller Plaza<br> New York, NY 10020<br>Tel.: (212) 940-8800<br>Fax: (212) 940-8776<br>david.goldberg@katten.com | 18-cv-04434<br>18-cv-07824<br>18-cv-07827<br>18-cv-07828<br>18-cv-07829<br>19-cv-01781<br>19-cv-01783<br>19-cv-01785<br>19-cv-01788<br>19-cv-01791<br>19-cv-01792<br>19-cv-01794<br>19-cv-01798<br>19-cv-01800<br>19-cv-01801<br>19-cv-01803<br>19-cv-01806<br>19-cv-01808<br>19-cv-01809<br>19-cv-01810<br>19-cv-01812<br>19-cv-01813<br>19-cv-01815<br>19-cv-01818<br>19-cv-01870<br>19-cv-01918<br>19-cv-01922<br>19-cv-01926 |

| | | |
|---|---|---|
| | | 19-cv-01928 |
| | | 19-cv-01929 |
| | | 19-cv-01931 |
| Michael Ben-Jacob | Thomas E. L. Dewey<br>Dewey Pegno & Kramarsky LLP<br>777 Third Avenue – 29th Floor<br>New York, New York 10017<br>Tel.: (212) 943-9000<br>Fax: (212) 943-4325<br>tdewey@dpklaw.com<br><br>Elliot R. Peters<br>Julia L. Allen<br>Keker, Van Nest & Peters LLP<br>633 Battery Street<br>San Francisco, CA 94111<br>Tel.: (415) 962-7188<br>epeters@keker.com | 18-cv-04434<br>18-cv-07824<br>18-cv-07827<br>18-cv-07828<br>18-cv-07829<br>19-cv-01781<br>19-cv-01783<br>19-cv-01785<br>19-cv-01788<br>19-cv-01791<br>19-cv-01792<br>19-cv-01794<br>19-cv-01798<br>19-cv-01800<br>19-cv-01801<br>19-cv-01803<br>19-cv-01806<br>19-cv-01808<br>19-cv-01809<br>19-cv-01810<br>19-cv-01812<br>19-cv-01813<br>19-cv-01815<br>19-cv-01818<br>19-cv-01866<br>19-cv-01867<br>19-cv-01868<br>19-cv-01869<br>19-cv-01870<br>19-cv-01871<br>19-cv-01873<br>19-cv-01894<br>19-cv-01896<br>19-cv-01918<br>19-cv-01922<br>19-cv-01926<br>19-cv-01928<br>19-cv-01929<br>19-cv-01931<br>21-cv-05339 |