# Exhibit 57

# Statute of limitations

according to the Limitation Act of 2007

BE  Authors
    Bo von Eyben

**ISBN:** 978-87-619-4143-5

2nd edition/1st print run

Typesetting and printing: AKAPRINT a/s, Aarhus

**Edition:** 2

Cover: Axel Surland, Ljungbyhed

All rights reserved.

Mechanical, photographic or other reproduction of this book or parts of it is not permitted under applicable Danish copyright law.

2019 Karnov Group Denmark A/S, Copenhagen

## Chapter VII. Suspension (§ 3(2) and § 14)

*Computer translated*

### 2. General principles of suspension

#### 2.1. The suspension rule as a fault rule

The 1908 Act's suspension rule required that the creditor's ignorance of his claim was "inexcusable", according to which the limitation period only began to run at the time when "the creditor was or by exercising ordinary diligence would have been able to demand payment of his claim". Suspension was thus excluded in cases where the creditor actually had or became aware of his claim and in cases where the exercise of "ordinary care" would have made the creditor aware of the claim, as the ignorance was not "excusable". Thus, there was no independent content in the latter condition, as the question of whether the ignorance could be imputed to the creditor depended on whether he had exercised "ordinary care". This requirement meant that suspension was excluded if the creditor had been *negligent*, i.e. if he should have had (Acquired) knowledge of his claim. [Note3] There was no basis for assuming that the rule was not intended to express a general *standard of culpability*, so that the imputation included knowledge and negligent ought-to-know. As it only concerns the creditor's knowledge of the circumstances in question, the rule could also be expressed as a general rule of ("justified") *good faith*.

The sole purpose of the amended wording of FOL § 3(2) is to clarify that this is the content of the rule. [Note4] The double references to "unreasonable" and "ordinary diligence" were deleted in favor of a single statement that the decisive factor is whether (and when) the creditor "became or should have become aware" of the claim (or the debtor). However, this is only a - simplifying - clarification of the content of the rule and not a substantive change. On the contrary, decisive importance was attached to the fact *that the case law under* the 1908 Act's *suspension rule continued to be valid under the new rule*, so that no uncertainty would arise regarding the interpretation of the rule. [Note5]

It is therefore - in particular - of no significance that the reference to "*ordinary* diligence" has been deleted. As with the fault rule in general, culpa/negligence is not a sociological concept, but a normative one. [Note6] When assessing whether the creditor should have acquired knowledge of his claim, the courts are not precluded from stating that the creditor should have exercised a greater degree of diligence than is usually exercised in similar situations. The decision will always depend on a concrete assessment.

*whether the creditor has shown the degree of due diligence required in the situation in question*. The key question will typically be *whether the creditor should have initiated investigations etc. that could have provided the creditor with sufficient information for the claim to be asserted.* The "severity" of the assessment of guilt depends on how much is required of the creditor in this respect, and this includes - as in any assessment of guilt - a number of factors, including, for example, *whether* the creditor must react to the mere suspicion that a claim may exist, *whether* it must be taken into account that further investigations would require professional insight that the creditor did not possess or significant resources, and *whether* subjective circumstances that limited the specific creditor's possibilities of recognition can be taken into account. However, these questions are best illuminated by a review of practice in the areas where the suspension rule has particularly demonstrated its practical importance, see section 3 below.

**Footnotes**

3. Cf. *Forældelseslovskommentar* p. 265, where it is assumed that the term was not necessarily synonymous with negligence, but that the assessment "to a large extent" was the same; however, it is not clear what the difference should consist of.

4. Cf. Bet. 1460/2005 p. 100 f and 444 and FT 2006-07, Appendix A, p. 5615 (comments on section 3(2)).

5. Cf. Bet. 1460/2005 p. 98, 100 and 444.

6. See *Textbook of Tort Law* p. 96 f.

ISBN 978-87-619-4143-5

# Forældelse

## efter forældelsesloven af 2007

Original

BE   Forfattere
**Bo von Eyben**

**ISBN:** 978-87-619-4143-5

2. udgave/1. oplag

Sats og tryk: AKAPRINT a/s, Århus

**Udgave:** 2

Omslag: Axel Surland, Ljungbyhed

Mekanisk, fotografisk eller anden gengivelse af denne bog eller dele af den er ikke tilladt ifølge gældende dansk lov om ophavsret.

Alle rettigheder forbeholdes.

2019 Karnov Group Denmark A/S, København

## Kapitel VII. Suspension (§ 3, stk. 2, og § 14)

### 2. Almindelige principper om suspension

#### 2.1. Suspensionsreglen som en culparegel

1908-lovens suspensionsregel krævede, at fordringshaverens uvidenhed om sit krav var »utilregnelig«, hvorefter forældelsesfristen først begyndte at løbe på det tidspunkt, hvor »fordringshaveren var eller ved sædvanlig agtpågivenhed ville have været i stand til at kræve sit krav betalt«. Suspension var således udelukket dels i tilfælde, hvor fordringshaveren faktisk havde eller fik kendskab til sit krav, dels i tilfælde, hvor udvisning af »sædvanlig agtpågivenhed« ville have skaffet fordringshaveren kendskab til kravet, idet uvidenheden da ikke var »utilregnelig«. Der var således ikke nogen selvstændigt indhold i den sidstnævnte betingelse, idet spørgsmålet om, hvorvidt uvidenheden kunne tilregnes fordringshaveren, beroede på, om denne havde udvist »sædvanlig agtpågivenhed«. Kravet herom var ensbetydende med, at suspension var udelukket, hvis fordringshaveren havde udvist *uagtsomhed*, dvs. hvis han burde have haft (skaffet sig) kendskab til sit krav.[Note 3] Der var ikke holdepunkt for at antage, at reglen ikke skulle udtrykke en almindelig *culpastandard*, således at tilregnelsen omfattede viden og uagtsom burde-viden. Da det alene drejer sig om kreditors kendskab til de pågældende omstændigheder, kunne reglen også udtrykkes som en almindelig regel om (»begrundet«) *god tro*.

Den ændrede formulering af FOL § 3, stk. 2, har alene haft til formål at tydeliggøre, at dette er reglens indhold.[Note 4] Dobbelt-henvisningerne til »utilregnelig« og »sædvanlig agtpågivenhed« udgik til fordel for én samlet angivelse af, at det afgørende er, om (og hvornår) fordringshaveren »fik eller burde have fået kendskab« til fordringen (eller skyldneren). Men dette er således netop kun en – forenklende – tydeliggørelse af reglens indhold og ikke nogen realitetsændring. Tværtimod blev der lagt afgørende vægt på, *at retspraksis i henhold til* 1908-lovens *suspensionsregel fortsat havde gyldighed efter den nye regel*, således at der ikke ville opstå usikkerhed om reglens fortolkning.[Note 5]

Det har således – navnlig – ingen betydning, at henvisningen til »*sædvanlig* agtpågivenhed« er udgået. Som ved culpareglen i øvrigt er culpa/uagtsomhed

*445*

ikke et sociologisk begreb, men et normativt.[Note 6] Ved vurderingen af, om fordringshaveren burde have skaffet sig kendskab til sit krav, er domstolene ikke afskåret fra at statuere, at fordringshaveren burde have udvist en større grad af agtpågivenhed end den, der sædvanligvis udvises i tilsvarende situationer. Afgørelsen vil altid bero på en *konkret vurdering*

*af, om kreditor har udvist den grad af agtpågivenhed, som måtte kræves i den pågældende situation*. Det centrale spørgsmål vil typisk være, *om kreditor skulle have iværksat undersøgelser m.v., som kunne have givet vedkommende tilstrækkelige informationer til, at kravet kunne være gjort gældende.* Culpavurderingens »strenghed« beror på, hvor store krav der stilles til kreditor i så henseende, og heri indgår – som i enhver culpavurdering – en flerhed af faktorer, herunder f.eks. *om* kreditor skal reagere på den blotte mistanke om, at der kan foreligge et krav, *om* der skal tages hensyn til, at nærmere undersøgelser ville kræve en faglig indsigt, som kreditor ikke var i besiddelse af, eller betydelige ressourcer, og *om* der kan tages hensyn til subjektivt betingede forhold, der begrænsede den konkrete kreditors erkendelsesmuligheder. Disse spørgsmål belyses imidlertid bedst ved en gennemgang af praksis på de områder, hvor suspensionsreglen navnlig har vist sin praktiske betydning, jf. nedenfor afsnit 3.

**Fodnoter**

3. Sml. *Forældelseslovskommentar* s. 265, hvor det antages, at udtrykket ikke nødvendigvis var synonymt med uagtsomhed, men at vurderingen »i vid udstrækning« var den samme; det fremgår dog ikke, hvad forskellen skulle bestå i.

4. Jf. Bet. 1460/2005 s. 100 f og 444 og FT 2006-07, tillæg A, s. 5615 (bemærkninger ad § 3, stk. 2).

5. Jf. Bet. 1460/2005 s. 98, 100 og 444.

6. Jf. *Lærebog i erstatningsret* s. 96 f.