**Henning Aasmul-Olsen & Co.**
**Firm registration no. 32123724**
**Søndergårdsvej 57**
**DK-3500 Værløse**
**Denmark**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKATTEFORVALT-
NINGEN) TAX REFUND SCHEME LITIGATION

Master Docket 18-md-02865 (LAK)

ECF Case

This document relates to:  18-cv-07828; 19-cv-01785;
19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783;
19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865;
19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922;
19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827;
19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926;
19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803;
19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894;
19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833;
19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896;
19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829;
18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931;
19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713;
21-cv-05339.

---

## DECLARATION OF FOREIGN LAW OF HENNING AASMUL-OLSEN

---

**July 24, 2024**

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

## Contents

I.    Introduction ................................................................................................................3

II.   Ownership Of Publicly Traded Shares – The *Nemo Dat* Doctrine ...............................4

A. *Re: 1:* The Application of *Nemo Dat* To Trading In Dematerialised Shares .........................4

B. *Re: 2:* The Practice Of Selling Short ...........................................................7

C. *Re: 3:* Market Considerations .................................................................9

III.  Dividends ................................................................................................................11

A. Dividends Traceable To The Company ....................................................11

B. Contractual Payments from Trading Counterparties
(Section 19 of the Sale of Goods Act) .....................................................13

IV.   Beneficial Ownership..................................................................................................15

A. The Bech-Bruun Decision (revisited) ....................................................15

B. Beneficial Ownership Of Financial Instruments.................................................16

## Appendices

**Appendix 1**        Glossary

**Appendix 2**        Rules and regulations, literature and other materials considered

**Appendix 3**        Collection of statements by legal commentators on the *Nemo Dat* Doctrine

**Appendix 4**        Timeline for dividend distribution based on T+2 and T+3 settlement

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

## I.    Introduction

1.      My full name is Henning Aasmul-Olsen. I have written this declaration (the "**Supplemental Declaration**" or "**Supp. Dec.**") at the request of Hughes Hubbard & Reed LLP on behalf of the Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) (the "**Plaintiff**" or "**SKAT**"), to be submitted to the United States District Court for the Southern District of New York in the United States of America (the "**Court**") in the case no. 18-md-2865 (LAK) (the "**Dispute**").

2.      This Supplemental Declaration addresses certain Danish law issues raised by the Defendants in a memorandum of law, dated June 24, 2024, regarding issues of foreign law pursuant to U.S. Federal Rule of Civil Procedure 44.1 (the "**Defendants' Memorandum**"). As such, it supplements the opinions set out in my initial declaration of foreign law, also dated June 24, 2024 (the "**Initial Declaration**"), all of which stand without exceptions or modifications.

3.      As for my background, I refer to the Initial Declaration[1].

4.      The opinions rendered herein are opinions on legal matters and not on facts. The opinions expressed by me are opinions on civil law, and I do not express opinions on tax laws unless expressly set forth. I am entitled to render such opinions and qualified to do so on the basis of my knowledge of Danish law.

5.      My compensation for rendering this Declaration has been agreed on a per-hour fee basis. My compensation does not depend in any way on the opinions I have rendered.

6.      I have based my opinions exclusively on official rules and documents and certain facts, of which I have been informed by the Plaintiff.

7.      A "**Supp. Paragraph**" refers to a paragraph of this Supplemental Declaration and an "**Supp. Exhibit**" and an "**Supp. Appendix**" refers to an exhibit and an appendix to this Supplemental Declaration, respectively, unless otherwise stated or the context requires otherwise.

8.      A glossary is set out in <u>Appendix 1</u>.

---

[1] As noted in the Initial Declaration, I have retired as a law firm partner as of July 1, 2024.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

9.     The Danish regulations and rules, practice, literature, and material submitted in the Dispute, which I have reviewed for the purpose of this Supplemental Declaration, are set out in Appendix 2.

## II.     Ownership Of Publicly Traded Shares – The *Nemo Dat* Doctrine

10.     In Section D of the Defendants' Memorandum (pages 6 through 9), the Defendants have argued that the Jury should not be instructed to apply the *Nemo Dat* Doctrine for reasons that could be summarized as follows: (1) The *Nemo Dat* Doctrine does not apply to dematerialised shares traded publicly; (2) the application of such Doctrine would be contrary to a common practice of short selling permitted by EU regulations; and (3) the application of the Doctrine would destabilize securities trading markets.

## A.     *Re: 1:* **The Application of *Nemo Dat* To Trading In Dematerialised Shares**

11.     In Paragraphs 55-58 of the Initial Declaration, I have opined that Danish law recognises a fundamental legal principle that "a purchaser does not acquire better rights than its seller", i.e. the equivalent of the *Nemo Dat* Doctrine. This rule is expressed in Section 27 of the Danish Debentures Act[2] but is generally applicable in property transactions. I have also opined that such principle will be applied across asset classes, including dematerialised shares registered with the Danish CSD, VP Securities, and will be applied for purposes of Danish tax laws requiring ownership of shares (Paragraphs 54 and 62-63 of the Initial Declaration). These opinions are supported by case law[3] and consensus among legal commentators[4], none of which are discussed by the Defendants or Defendants' expert on Danish law, Kasper Pilgaard.

12.     When applied in the context of trading in dematerialised shares, the *nemo dat quod non habet* principle means that a seller cannot pass ownership to a purchaser *unless* and *until* such seller becomes the owner of the shares traded[5]. Even informed consent of a purchaser to purchase from a seller, who did not own any shares at the trade date and never delivers shares on the settlement date, could not bring

---

[2] Exhibit 54, Setion 27 of the Danish Debentures Act provides: "If a non-negotiable debenture is transferred or pledged, the acquirer does not obtain better rights than the transferor, unless explicitly provided for by law."

[3] Ruling of the Maritime and Commercial High Court of May 9, 1994, Exhibit 6, cited in Paragraph 63 of the Initial Declaration.

[4] See Paragraph 60 of the Initial Declaration.

[5] In consecutive purchase and sale transactions (such as short selling), becoming "the owner" implies that all ownership conditions such as segregation and settlement must be met in the sourcing deal in favour of the seller. And after that the same ownership conditions must be satisfied in the trade between the seller and the purchaser for ownership to actually pass.

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

ownership to pass to such purchaser as a matter of Danish law. This is so because ownership has a bearing on third parties such as the Issuer of the shares, other shareholders, as well as creditors of the parties trading. If the seller never becomes the owner of shares to complete the trade, the purchaser will never become an owner either. If, however, the seller does becomes the owner at a time when specific performance is still an option, and settlement in the disposal actually occurs, the purchaser will become the owner as from settlement.

13.     This is the effect of the *Nemo Dat* Doctrine, which strikes me as logical and well-reasoned since, without shares, there can be no shareholder rights (such as voting and dividends) to be recognized by the Issuer of the shares and indeed no asset to pledge or resell as an owner is entitled to do. In short, without shares, there can be no ownership.

14.     If (as I suspect is the case) the Defendants' Memorandum uses the term "beneficial ownership" to mean contractual obligations and rights between a seller and a purchaser, the *Nemo Dat* Doctrine has no bearing on these, see Supp. Paragraph 25. *Nemo Dat* regulates property rights, not contractual rights.

15.     On page 7 of their Memorandum, the Defendants advocate consideration to good faith purchasers in on-exchange securities trading. Danish law accommodates good faith purchasers principally by a registration rule in Section 69 of the Securities Trading Act backing the integrity and finality of the VP Securities settlement that would follow all on-exchange trading on Nasdaq Copenhagen[6].

16.     If Section 69 of the Danish Securities Trading Act does not apply, including if the conditions described below for extinguishment of claims set out in Section 69 of the Danish Securities Trading Act are not satisfied, the principle of *nemo dat quod non habet* will apply to dematerialised shares and will mean that a seller cannot pass ownership to a purchaser unless and until such seller becomes the owner of the shares sold. This is because, as a general principle, the fundamental rules of Danish law on transfer of property rights are applicable to dematerialised shares[7], a conclusion which is also supported by the legislative history of the Securities Trading Act set out below.

---

[6] As noted by the Defendants on page 7 in the Defendants Memorandum (citing an English precedent), Danish law also provides for ownership rights in favor of a good faith purchaser in certain cases other than registration. In the context of share trading, these other exceptions are largely irrelevant. Criminal acts to dispose of shares are rarely seen. It is unclear to me why the Defendants argue based on stock trading on the New York Stock Exchange and policy perspectives on a revision of U.C.C. Article 8 in the context of shares trading on Nasdaq Copenhagen.

[7] Torsten Iversen: *Obligationsret III (En. Law of obligations part III)*, 3rd ed. (2018), page 159, Exhibit 57.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

17.    Section 69 has a well-defined scope. It: (a) applies to purchase agreements only (and does not benefit creditors), (b) requires that the purchase agreement must have been finally registered with VP Securities by book-entry on settlement, (c) requires that the purchaser must be acting in good faith and (d) requires that the owner must not have objections due to forgery or duress, which objections will prevail notwithstanding registration at VP Securities.

18.    Since on-exchange trading at Nasdaq Copenhagen is completed via the computerized systems of Nasdaq (and under Nasdaq Copenhagen rules), and trading counterparties are mostly unknown, good faith purchasers are regularly at play for such trading. In the relevant period, good faith purchasers were entitled to rely on Section 69 of the Danish Securities Trading Act.  Pursuant to Section 69 of the Danish Securities Trading Act, once an agreement as to rights pertaining to dematerialised securities has been finally registered by book-entry settlement at VP Securities, a purchaser in good faith may not be met with any objections as to the validity of the agreement (in the absence of forgery or duress under threat of violence).

19.    Dematerialised shares are transferable securities and possess features similar to negotiable debentures (although the latter imply that rights are attached to a physical document). Pursuant to the legislative history, the rules in chapter 22 of the Danish Securities Trading Act (which includes Section 69) are essentially based on the principles for negotiable debentures in chapter 2 of the Danish Debenture Act (Sections 11-25) except that the Danish Debenture Act's requirements on possession of the document were replaced by a registration regime, in turn modelled on the registration regime applicable in the Danish Land Registration Act.

20.    In respect of negotiable debentures, legal commentators agree[8] that the failure to satisfy conditions for extinguishment means that the principle set forth in Section 27 of the Danish Debenture Act for non-negotiable instruments applied[9]. In other words, the principle of *nemo dat quod non habet*

---

[8]  A collection of legal comments is set out in <u>Appendix 3</u> .

[9]  As noted, the wording of Section 27 is: "If a non-negotiable debenture is transferred or pledged, the acquirer does not obtain better rights than the transferor, unless explicitly provided for by law."

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

applied notwithstanding the negotiability features associated with the negotiable debentures. The same is the case for dematerialised shares traded publicly when extinguishment conditions do not apply.

21.     I have been informed by the Plaintiff that the share trading in the matter before the Court did not result in purchasers being registered at VP Securities as owners of shares. If that is the case, the *Nemo Dat* Doctrine would apply to ownership under Danish law.

**B.      *Re: 2:* The Practice Of Selling Short**

22.     The application of the *Nemo Dat* Doctrine is not (as the Defendants have contended) contrary to the practice of short selling permitted by EU regulations[10]. In fact, the Short Selling Regulation seeks to safeguard orderly short sales by avoiding the need for such Doctrine to come into play and, thus, impliedly, confirms the application of the *Nemo Dat* Doctrine to share trading.

23.     The lawfulness of short selling is, and was in the relevant period,[11] restricted by the Short Selling Regulation banning so-called "naked" (uncovered) short selling. The Short Selling Regulation calls upon a prospective short seller not *to enter into* (on the trade date) a short sale of a share admitted to public trading unless such short seller (a) has borrowed and, accordingly, is the owner of such share under Danish civil law[12], (b) has a legally enforceable claim under contract or property law to be trans-ferred ownership or (c) has a reasonable expectation to obtain ownership of the share so that *settlement* can be effected when it is due, see Article 12(1) of the Short Selling Regulation. The objective of these rules was (and is) to reduce "the potential risk of settlement failure and volatility", see recital 18 of the Short Selling Regulation.  In other words, the Short Selling Regulation recognises *a priori* that a short seller must own the share before he can pass ownership to purchasers at settlement, which is the very meaning of the *Nemo Dat* Doctrine in the context of short selling. If, as the Defendants seem to suggest,

---

[10] Principally Regulation (EU) No. 236/2012 of the European Parliament and of the Council of 14 March 2012 on short selling and certain aspects of credit default swaps (the "Short Selling Regulation"), Exhibit 52.

[11] Until 1 February 2013, where the Short Selling Regulation entered into force, short selling was prohibited in Denmark pursuant to Executive Order No. 1004 of 10 October 2008.

[12] Article 12(1)(a) of the Short Selling Regulation provides for a share "borrowed" whereas Article 12(1)(b) provides for "an greement to borrow the share". It must be implied, then, that Article 12(1)(a) speaks of a share that has been delivered to the borrower under a stock lending and borrowing arrangement leading to civil law ownership and title in favor of the borrower. If, as the Defendants seem to suggest,

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

a short seller could pass ownership to purchasers without being or ever becoming an owner, the Short

Selling Regulation and its safeguarding measures to ensure settlement would not be meaningful.

24.    The Danish law *Nemo Dat* Doctrine operates hand in hand with the Short Selling Regulation.

The legal effect of the Doctrine is that a short seller cannot convey ownership at *settlement* unless and

until the short seller has ownership (legal title) of the shares sold. Since short selling is usually an on-

market DvP transaction to multiple purchasers, Danish law provides that ownership (and legal title) will

pass to the purchasers at settlement by simultaneous delivery of shares and payment, occurring T+3 or

T+2[13] in the relevant period. So, the short seller must have sourced ownership by the agreed time and

date of the settlement to the purchasers or the transactions will fail.

25.    The *Nemo Dat* Doctrine will *not restrict the trading* on *the trading date*. In fact, Danish civil

law is potentially not concerned with the short seller's compliance with the Short Selling Regulation as

the sanctions for violations are exclusively Danish Financial Supervisory Authority orders and criminal

sanctions as stipulated in the Danish Securities Trading Act[14].

26.    Conversely, the fact that a short sale transaction *on the trade date* may have been permitted by

the Short Sale Regulation, has no bearing on ownership under Danish law. On the trade date, before

segregation and settlement, under Danish law there will be nothing but contractual rights between the

parties, see Paragraphs 27-30 of the Initial Declaration.

27.    The Defendants have specifically referred to certain sourcing arrangements permitted in Com-

mission Implementing Regulation (EU) No. 827/2012[15]. Without going into details, the sourcing re-

quirements in the Implementing Regulation are distinct from and do not provide for ownership con-

structs or ownership conditions applicable in the European Union Member States. The issue of owner-

ship is addressed by the European Union in a different regulation. Pursuant to article 2(2) of the Short

Selling Regulation, the Commission was empowered to adopt delegated acts specifying when a natural

or legal person is considered to own a financial instrument for the purposes of the definition of a short

---

[13] With T denoting the trade date and then the number of business days to settlement.

[14] Section 93, subsection 3, Exhibit 62, and Executive Order No. 86 of January 30, 2013, Exhibit 63.

[15] This Regulation (the "Implementing Regulation") provides for reporting requirements, calculation methods and types of arrangements meeting EU regulatory standards for acceptable risk, Exhibit 50.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

sale as set out in the Short Selling Regulation. This authority was used by the Commission in the Short Selling Delegated Regulation No. 918/2012[16]. Article 3(1) of the Short Selling Delegated Regulation states that for the purposes of defining a short sale, the determination, where applicable, of whether a natural or legal person is considered to own a financial instrument when there are legal or beneficial ownerships thereof shall be made in accordance with the law applicable to the relevant short sale of that share. The concepts of ownership in EU member states are not harmonised[17] and the Short Selling Regulation does not by implication or otherwise determine ownership under Danish law[18].

## C.    *Re: 3:* **Market Considerations**

28.    In Supp. Paragraphs 11 through 27 I have opined that Danish law provides for a fundamental principle that "a purchaser does not acquire better rights than its seller", i.e. the equivalent of the *Nemo Dat* Doctrine in Anglo-American law. I have also explained that the *Nemo Dat* Doctrine is not only in conformity with short selling practices but is the underlying reason for EU regulations designed to achieve settlement of short sales.

29.    The application of the *Nemo Dat* principle is mandatory for share trading under Danish law. It does have implications for the functioning of securities trading markets. However, I do not agree with the Defendants that the application of *Nemo Dat* would be "bizarre and destabilizing" (Defendants' Memorandum page 7). The application of *Nemo Dat* has a far more positive and stabilizing effect on securities markets than not applying it (if that is the suggestion of the Defendants).

30.    First, the Defendants have noted the example of a thief. I am not sure that theft could occur in relation to dematerialised shares, but certainly unlawful misappropriation of shares is possible (as evidenced, e.g., by the 1994 ruling cited in Paragraph 63 of the Initial Declaration) and these could be criminal offenses[19]. In terms of the occasional application of the *Nemo Dat* principle to criminal offenses, the number of transactions affected is likely insignificant. I am aware of no Danish precedents

---

[16] Article 1 of the Short Selling Delegated Regulation, Exhibit 51.

[17] Preamble no. 3 to the Short Selling Delegated Regulation, Exhibit 51.

[18] For comments on beneficial ownership as used in Article 3(1) of the Short Selling Delegated Regulation, See Section IV B.

[19] Depending on the circumstances, a seller who did not own shares could have engaged in a criminal offense (some of which have civil law effects attached) with either the owner as victim (e.g. embezzlement, forgery or duress) or the purchaser as victim (e.g. fraud).

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

other than the 1994 ruling. Even if some existed, I doubt that market perception would be affected negatively. Criminal offenses are not a systemic risk to securities trading and market participants are likely favourable to enforcing the rights of an owner victimized by a criminal. In addition, a few caveats to the Defendants' examples on page 7: (a) As noted above, Danish law protects (in some cases) a good faith purchaser to balance the interests of the owner; and (b) there will only be a "position" of a purchaser to be "retroactively unwound", if settlement of the purchase had occurred. If a seller, e.g., committed securities fraud and simply sold a share that the seller did not own, the seller could not settle by delivery of the share and the purchaser would not have paid the purchase price (assuming a DvP transaction). Nothing, then, will be "retroactively unwound".

31.    Second, the Defendants have claimed market destabilization caused by the application of the *Nemo Dat* principle to day-trading purchasers and purchasers from short sellers liquidating their positions by a sale prior to settlement of the short sale, i.e. in the T+3 or T+2 period applicable in the relevant period. It is not entirely clear to me what the link between these purchasers' resale and *Nemo Dat* should be according to the Defendants.

32.    Quick turnaround in share trading does involve risk. That, in my view, is not the consequence of the application of any particular legal principle, but of the broadly accepted and well-known fact that ownership of shares arises at settlement.

33.    Settlement risk is the focus of market participants generally as evidenced, for example, by the practice of conducting Clearance ahead of settlement to verify that the trade can (and, if locked, will) settle. Settlement risk is also the focus for regulators implementing, e.g., the Short Selling Regulation seeking to increase the likelihood of settlement occuring by requiring trade day cover to settle short sales. Finally, the bring down of the time from trade to settlement - from T+3 to T+2 in the relevant period and recently from T+2 to T+1 in the US markets[20]  - mitigates risk. Anyway, risk will remain,

---

[20] See Investor Bulletin of the Securities and Exchange Commission on the New "T+1" Settlement Cycle – What Investors Need To Know, dated March 27, 2024, Exhibit 60. T+1 is likely to be implemented in the European Union, but not until sometime in 2025 at the earliest, see, e.g. the Reuters news report "EU to copy US in speeding stocks settlement to cut risk", dated January 25, 2024, Exhibit 61.

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

but this risk is embedded in all share trading and will affect purchasers with long positions and day-traders alike. The risk for failed settlement is not attributable to *Nemo Dat*.

34.       If the Defendants are advocating that the *Nemo Dat* principle should not be applied to day-traders **and** that the effect of not applying it should be that day-traders can lawfully sell shares they *never* will own, systemic market risk would obviously arise which is far more serious than the application of *Nemo Dat*. Specifically, the share trading market would become a market for trading not just shares, i.e., assets with shareholder and property rights, but also for trading thin air, and market participants would not know which of the two they sold or purchased.

## III.  Dividends

## A.       Dividends Traceable To The Company

35.       In Section B of the Defendants' Memorandum on pages 4-5, the Defendants have argued that there is no requirement on the recipient of dividends to trace back such dividends to the company having issued the shares.

36.       I understand this to be an argument for tax purposes and based on tax laws, with respect to which I express no opinion. Still, to avoid misunderstandings, some clarification of the traceability requirement seems appropriate[21].

37.       It is necessary for *dividends* to be received from the Danish issuing company or received in a manner that is traceable to the company. Assuming ownership of actual shares and receipt of funds originating from the payment processed by VP Securities for the relevant dividend declaration, it is possible for a person to have received *dividends* in a downstream chain of custody. Without ownership of actual shares and receipt of funds from the payment processed by VP securities, any amount received will not be *dividends*.

---

[21] Defendants argue that the *borrower* in a stock lending and borrowing arrangement need not actually have received a dividend payment from the issuer, page 5 of Defendants' Memorandum. From a Danish civil law (non-tax) point of view, the borrower is the owner of shares borrowed from delivery, and will, in transactions registered at VP Securities, be registered as the owner in VP Securities, thus, receiving the dividends from the issuing company while the arrangement is in place. During the arrangement, the borrower then pays the lender an amount equivalent to the dividends received by the borrower from the issuer – a payment often referred to as a "manufactured dividend" by market participants. Against that background, the implication of the Defendants' argument is unclear to me.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

38.    No dividends can be created anywhere without several corporate formalities at the initiative of the issuer. Under Danish law, a proposal by the Board of Directors, and a resolution adopted by the general meeting by which the dividends are declared, will express a specific amount for the total amount of dividends declared, and, in most cases of publicly traded companies, the dividend per share in Danish Kroner. The numeric expression is a fixed figure, not an interval or a range, and it will be easily identifiable both in the proposal and the resolution. In sum, a dividend declared by a company is a fixed amount that cannot be changed by the actions or contracts of market participants.

39.    Companies can only pay *dividends* through VP Securities[22]. The payment processed by VP Securities (net of WHT) discharges the company and VP Securities (if made in good faith and save for forgery and duress)[23]. Once payment has been completed by VP Securities, the company has no additional obligations in respect of the dividend distribution and any legal right that the shareholders had in respect of dividends will have terminated. The amount set forth in the corporate resolution as the *dividends* declared will (absent a default by the company, a default by VP Securities or non-discharging payments by VP Securities) be the same amount as the aggregate amount paid by VP as discharging and no other payment by a company of *dividends* would be lawful. So, while the *dividends* in the corporate law meaning express the equity distribution of distributable reserves to shareholders, the cash flow associated with the *dividends* (in the exact same amount) will necessarily come by way of VP Securities payment.

40.    The full amount of dividends declared (and only that amount), net after WHT, will be processed for payment in accordance with instructions from VP Securities and paid in the banking system through the Danish Central Bank to Account Holding Institutions registered in VP Securities. There can be no more *dividends* than the dividends declared and paid in that manner to Account Holding Institutions in

---

[22] A prerequisite for registration with VP Securities is that dividends are paid through VP Securities in accordance with its rules, see page 293 of VP Securities' System Guidelines, 19 December 2011, Exhibit 27, and page 5 of VP Rules A-D, applicable as of 17 June 2013, Exhibit 28, where VP Securities refers to Section 71, subsection 2, of the Danish Securities Trading Act, Exhibit 1, and adds that: *"[...] An issuer's provisions [in its articles of association] that prescribe payments [of interest, dividends and capital] in a different way, i.e. by registration in the shareholders' register, are not in accordance with the procedure for dematerialised assets."* (my insertions and emphasis) VP Securities further states that: *"Consequently, it is a condition for registration of dematerialised securities with VP Securities that the terms of the securities allow VP Securities to act as a payment intermediary [of interest, dividends and capital]"* (my insertions and emphasis).

[23] Section 71, subsection 2, of the Danish Securities Trading Act, Exhibit 1.

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

the first instance. After payment in this manner, the company and VP Securities will have arranged the distribution of the *dividends* declared.

41.    Any trading in the underlying shares on or about the declaration date or contractual arrangements in respect of dividends is legally of no consequence to the company distributing the dividends. No additional dividends will be created since, from the point of view of the company, the carrier of the dividend is the underlying share, not any particular shareholder or holder of dividend rights, and the number of shares is constant irrespective of trading or assignments.[24]

42.    During the relevant period, VP Securities processed payment of *dividends* to Account Holding Institutions registered for omnibus accounts at VP Securities knowing that such registered institution was the holder of record of commingled shares in such omnibus accounts. VP Securities would do that with a view for the person registered to re-distribute and allocate the dividends received on behalf of the multiple owners of the shares in each omnibus account.

43.    If the credit of funds received by a person in a downstream account is to qualify as *dividends*, the credit must, in my view, originate from funds processed for payment by VP Securities and credited in the first instance to an Account Holding Institution on an omnibus account in VP Securities. These are the only funds available from a dividend distribution that could be passed for credit to downstream cash accounts associated with downstream securities accounts.

44.     In a downstream chain, all intermediaries must be agents, and the funds must be paid to or for the order of the credit recipient as principal, i.e. a shareholder in the company. This is so because once the payment reaches the shareholder, any subsequent remittance of an amount equal to the declared dividend would be a contractual payment *in lieu* of dividends as sometimes seen in equity derivatives.

**B.    Contractual Payments from Trading Counterparties (Section 19 of the Sale of Goods Act)**

45.    In the Initial Declaration (Paragraphs 66-68) I have opined that entitlement to dividends will require ownership of shares as a pre-requisite.

---

[24] As a general rule, the Danish Companies Act attaches the right to receive dividends to shares rather than shareholders, see for example Sections 158, item 4, 159, subsection 3, item 3, 162, subsection 3, 237, subsection 3, item 4, and section 326, subsection 3, item 4, Exhibit 11. The articles of association of companies do the same either explicitly or implicitly.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

46.    I have also opined that two persons trading "a share" cannot by virtue of such trading create a share, for tax purposes or otherwise (Paragraphs 19 and 34) and explained the ownership conditions at length (Paragraphs 25 through 64), which is considerably more than a final and binding contract.

47.    The Defendants have now cited Section 19 of the Danish Sale of Goods Act, attached here as Exhibit 54, and suggested that it means that "the purchaser who enters into a binding contract to purchase shares becomes the owner not only of the shares but of any dividends declared for those shares", implying, in the view of the Defendants, that a contractual payment from a trading counterparty might be a dividend even if it cannot be traced to the issuer, see page 4 of the Defendants' Memorandum.

48.    I disagree. My view is that only shareholders at the time of day on which the corporate resolution declaring the dividend was passed are entitled to *dividends* within the strict legal meaning of that word. Section 19 of the Sale of Goods Act is largely irrelevant (for reasons set out in the following). A purchase contract cannot create dividends any more than it can create shares or ownership of shares.

49.    It was permissible for a seller to sell a share and, together with the share, assign the ancillary receivable equal to the dividends payable by the issuer in respect of that share. In my view such a receivable was not strictly the *dividend*[25]. The basis for the right to assign a receivable equal to *dividends* was the general principle under Danish law that rights (unlike obligations and liabilities) can be assigned without the consent of the person against whom they are owed[26]. Any such assignment would not change the meaning of dividends as being anything other than a distribution of equity by a company to shareholders. Obviously, at assignment of a receivable, the payment of it would remain traceable to the issuer. There is no legal basis for defining a contractual payment that could not be traced to the issuer as dividends.

[25] Such a receivable is subject to a different legal regime as compared to the primary right against the company for dividends, both from a corporate and securities law point of view. See Søren Friis Hansen and Jens Krenchel: Dansk Selskabsret 2 – Kapitalselskaber (*En. Danish Company Law 2 – Limited Liability Companies), 2019, 5th ed, pages 384-385*, Exhibit 56. I express no view on whether this distinction between *dividends* and a receivable has any bearing under tax laws.
[26] Torsten Iversen: *Obligationsret 3. del* (*En. Law of Obligations part 3*), 3th ed. (2018), pages 109 ff. and 195 ff., Exhibit 58-59, and Bo von Eyben and Peter Mortensen: *Lærebog i obligationsret II* (*En. Textbook on law of obligations part II*), 5th ed., (2022), pages 19 ff. and 41 ff., Exhibit 55.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

50.     Neither Section 19, subsection 1, of the Sales of Goods Act nor any other provision of Danish law implies a right to a contractual allocation of dividends between trading parties that changes the dividend construct.

51.     In my view, Section 19, subsection 1, has limited relevance in the Dispute for the following reasons: it (a) does not apply unless the relevant contract was governed by Danish law; (b) was only a default rule which did not apply if the parties have agreed otherwise, expressly or impliedly; and (c) did not apply to on-exchange trading in dematerialised shares in the relevant period or to OTC trading on on-exchange terms. The inapplicability of Section 19, subsection 1, to on-exchange trading or to OTC trading on on-exchange terms is due to the fact that on-exchange trading of dematerialised shares was governed by the rules and market conventions adopted by Nasdaq Copenhagen and payment cycles determined by VP Securities. Under such Nasdaq rules and conventions, the time of conclusion of a purchase contract, which is the key timing point for Section 19, subsection 1, is irrelevant since the Nasdaq regime provides that trades matched up until and including 16:59:59 on the Declaration Date will include dividends declared. Moreover, the Nasdaq market convention and the VP Securities dividend processing cycles called upon payment of dividends to holders of record at 17:59:59 on the Record Date being fixed dates on T+2 or T+3, see <u>Appendix 4</u>, implying dividend entitlements wholly incompatible with Section 19, subsection 1.

### IV.    Beneficial Ownership

### A.    The Bech-Bruun Decision (revisited)

52.     The Defendants have referred to certain comments supposedly made by the High Court in the 2022 High Court decision in the case Skatteforvaltningen v. Bech-Bruun I/S, a case that was decided differently by the Supreme Court on November 20, 2023.

53.     I have presented the relevant conclusions of both courts in the Initial Declaration Paragraphs 79 through 82. In essence, the two courts agreed that the dividend refund schemes at hand involved fictitious transactions with no shares, no dividends or cash flows and was a fraud.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

54.     The statement of the High Court referred to by the Defendants was not made in respect of trans-actions that transpired. Rather, they were hypothetical and assumed by the High Court only to evaluate whether the lawyer advising, and later found liable for negligence by the Supreme Court, had applied the law incorrectly. In a subsequent part of the High Court decision, the High Court adjudged the matters that actually transpired and described them as a circular tax arrangement, the implementation of which "as proforma or without any shares and actual cash flows[,] must be deemed to be ordinary fraud under criminal law that is merely disguised by complicated transactions." Here the High Court found that the lawyer had no liability for a failure to understand facts.

55.     Again, the Supreme Court reversed the High Court decision, but did not challenge the High Court's description of the matters that actually transpired as ordinary fraud.

## B.     Beneficial Ownership Of Financial Instruments

56.     The Defendants' Memorandum refers to beneficial ownership of shares and dividends with the explicit proviso that the term is used for Danish tax purposes. I have offered my view on the relationship between tax laws and (non-tax) civil law in the Initial Declaration Paragraph 34 (with footnote 25), to which I refer.

57.     Irrespectively of the discussion of tax laws and civil law, I note that Article 3(1) of the Short Selling Delegated Regulation provides a definition of beneficial ownership of financial instruments to mean "the investor who assumes the economic risk of acquiring a financial instrument" [27]. For a finan-cial instrument being a transferable share, the implication is a requirement that such share (a)(i) can be identified (a)(ii) as acquired by the investor and (b) that such investor has assumed economic risk for it. If no share can be identified as acquired by the investor, or no risk can be attributed to an investor, such investor is not the beneficial owner.

58.     Article 3(1) specifically notes that shares held by a nominee are owned by the principal, the ultimate beneficial owner having invested, thus, confiming ownership for the downstream shareholder in a chain of custodians as outlined in the Initial Declaration Paragraphs 20-24.

---

[27] "Fiancial Instruments" are defined in Section C of Annex I to Directive 2004/39/EC, see Article 2 of the Short Selling Regulation, Exhibit 52.

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

———————

Pursuant to 28 U.S.C. § 1746 the undersigned Henning Aasmul-Olsen declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 24, 2024

Name: Henning Aasmul-Olsen

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

## Appendix 1 – Glossary

| Term | Meaning |
|---|---|
| **Account Holding Institution** | Danish and foreign financial institutions entitled and obliged to make book entry reporting in the systems of VP Securities. |
| **AFME Principles on Asset Segregation** | Association for Financial Markets in Europe, Post Trade Division: Client Asset Protection Task Force – AFME Principles on Asset Segregation, Due Diligence and Collateral Management, September 2016. |
| **Clearance** | Clearing occurs after a trade is executed. It is the process of checking whether the terms of a securities sales and purchase contract can be fulfilled by settlement, including checking that parties have sufficient securities and money to complete the transaction as contemplated. |
| **CSD** | Central Securities Depository. |
| **CSDR** | Regulation (EU) no. 909/2014 of the European Parliament and of the Council of 23 July 2014 on improving securities settlement in the European Union and on central securities depositories and amending Directives 98/26/EC and 2014/65/EU and Regulation (EU) no. 236/2012. |
| **Court** | United States District Court for the Southern District of New York in the United States of America. |
| **Danish Companies Act** | The Danish Companies Act applicable in the Relevant Period. |
| **Danish Business Authority** | The Danish Business Authority (*Da.* Erhvervsstyrelsen). |
| **Defendants** | Acer Investment Group, LLC, American Investment Group of New York, L.P. Pension Plan, Basalt Ventures LLC Roth 401(k) Plan, David Schulman, Doston Bradley, John van Merkensteijn, Michael Ben-Jacob, RAK Investment Trust, Richard Markowitz, Riverside Associates Defined Benefit Plan, RJM Capital Pension Plan, Roadcraft Technologies LLC Roth 401(k) Plan, Robert Crema, Robert Klugman, |

| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

Roger Lehman, Ronald Altbach, Routt Capital Trust, Stacey Kaminer, The FWC Capital LLC Plan, The Proper Pacific LLC 401K Plan, and ED&F Man Capital Markets Ltd. (third-party defendant).

**Defendants' Memorandum**    Defendants' Memorandum of law, dated June 24, 2024.

**Defendants' Motion**    Defendants' and Third-Party Defendant's Memorandum in Support of Motion for Summary Judgment in the Dispute, dated April 29, 2022.

**Dispute**    Case no. 18-md-2865 (LAK) at the United States District Court for the Southern District of New York in the United States of America.

**Double Taxation Convention between Denmark and the United States of America**    The Convention between the Government of the United States of America and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Estates, Inheritances, Gifts and certain other Transfers of 27 April 1983 with subsequent amendments the latest being the Protocol Amending the Convention between the Government of the Kingdom of Denmark and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income of 2 May 2006.

**DvP**    Delivery versus Payment, a trade term in securities trading meaning that the delivery of shares at the future settlement date is contingent upon simultaneous payment (and vice versa).

**Exhibit**    An exhibit to this Declaration.

**Gunnar Volkers Dep.**    Remote VTC videotaped deposition under oral examination of Gunnar Volkers in the Dispute dated June 8, 2021.

**ISSA**    The International Securities Services Association.

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| | |
|---|---|
| **MiFID II** | Directive 2014/65/EU of the European Parliament and of the Council of 15 May 2014 on markets in financial instruments and amending directive 2002/92/EC and directive 2011/61/EU. |
| **Nasdaq Copenhagen** | Nasdaq Copenhagen A/S. |
| **Declaration** | This declaration. |
| **Pilgaard Decl. I** | Declaration, dated April 27, 2022 of Foreign Law of Kasper Bech Pilgaard in the Dispute. |
| **Pilgaard Decl. II** | Declaration, dated June 27, 2022 of Foreign Law of Kasper Bech Pilgaard in the Dispute. |
| **Plaintiff** or **"SKAT"** | The Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen). |
| **Plaintiff's Motion** | Plaintiff Memorandum in Support of Motion for Summary Judgment dated, April 29, 2022. |
| **Relevant Period** | The period between August 2012 and July 2015. |
| **Paragraph** | A paragraph of this Declaration, unless otherwise stated. |
| **Settlement** | The process where a transaction involving dematerialised securities is completed and the purchaser receives the purchased securities and the seller receives the corresponding payment. |
| **Settlement Finality Directive** | Directive 98/26/EC of the European Parliament and of the Council (the Settlement Finality Directive as amended). |
| **Solo Custodians** | Certain custodians associated with Sanjay Shah. |
| **Sorensen Dep.** | Remote VTC videotaped deposition under oral examination of Helen Sorensen in the Dispute dated 21 September 2021. |

| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

**Sorensen Dep. Vol II**    Remote VTC videotaped deposition under oral examination of Helen Sorensen in the Dispute dated 7 December 2021.

**Supplemental Declaration** or **Supp. Dec.**    This Declaration.

**Supp. Paragraph**, **Supp. Exhibit** and **Supp. Appendix**    Paragraph, exhibit and appendix to this Supplemental Declaration.

**VP Securities**    VP Securities A/S (now: Euronext Securities Copenhagen) acting in its capacity as CSD, unless otherwise set forth.

**White Paper**    White paper no. 948 of 1982 on implementation of act no. 179 of 14 May 1980 on a central securities depository.

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

**Appendix 2 – Rules and regulations, literature and other materials considered**

In preparing this Report I have considered the below material:

**Regulation**

| Date | Material |
|---|---|
| 27 November 2020 | The Danish Capital Markets Act as amended from time to time (Consolidated Act no. 1767 of 27 November 2020). |
| 26 June 2020 | The Danish Corporations Taxes Act as amended from time to time. |
| 8 August 2019 | The Danish Tax Assessment Act: |
| | • 2011: Consolidated act no. 1017 of 28 October 2011 |
| | • 2013: Consolidated act no. 405 of 22 April 2013 |
| | • 2014: Consolidated act no. 1041 of 15 September 2014 |
| 8 August 2019 | The Danish Financial Statements Act as amended from time to time (Consolidated Act no. 838 of 8 August 2019). |
| Amended from time to time | The Danish Contracts Act (currently Consolidated Act no. 193 of 2 March 2016). |
| Amended from time to time | Danish Act on Taxation of Income and Property. |
| 29 December 2015 | The Danish State Tax Act (Consolidated Act no. 1883 of 29 December 2015). |
| Applicable in the Relevant Period | The Danish Financial Business Act: |
| | • 2011: Consolidated act. no. 885 of 8 August 2011 |
| | • 2012: Consolidated act no. 705 of 25 June 2012 |
| | • 2013: Consolidated act no. 948 of 2 July 2013 |
| | • 2014: Consolidated act no. 928 of 4 August 2014 |
| | 2015: Consolidated act no. 182 of 18 February 2015 |
| Applicable in the Relevant Period | The Danish Securities Trading Act: |
| | • 2012: Consolidated act no. 855 of 17 August 2012 |
| | • 2013: Consolidated act no. 219 of 20 February 2013 |
| | • 2013: Consolidated act no. 982 of 6 August 2013 |
| | • 2014: Consolidated act no. 227 of 11 March 2014 |
| | • 2014: Consolidated act no. 831 of 12 June 2014 |

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| | |
|---|---|
| Applicable in the Relevant Period | The Danish Companies Act (consolidated act no. 610 of 28 April 2015 (until 30 June 2015) and consolidated act no. 1089 of 14 September 2015 (from 1 July 2015). |
| 1 June 2015 | Act no. 739 of 1 June 2015 on amendment of among other the Danish Companies Act. |
| 15 May 2014 | Regulation (EU) no. 600/2014 of the European Parliament and of the Council (MiFIR) . |
| 15 May 2014 | Directive 2014/65/EU of the European Parliament and of the Council (MiFID II). |
| 11 December 2013 | Executive Order no. 1476 on filing for registration, registrations, fees and announcements etc. with the Danish Business Authority. |
| 22 October 2013 | Directive 2013/50/EU of the European Parliament and of the Council (the Transparency Directive Amending Directive). |
| 26 June 2013 | Executive Order no. 819 on registration of dematerialised securities with a central securities depository. |
| 5 July 2012 | Commission Delegated Regulation (EU) no. 918/2012 of 5 July 2012 supplementing the Short Selling Regulation with regard to definitions, the calculation of net short positions, covered sovereign credit default swaps, notification thresholds, liquidity thresholds for suspending restrictions, significant falls in the value of financial instruments and adverse events. |
| 4 July 2012 | Regulation (EU) no. 648/2012 of the European Parliament and of the Council (EMIR). |
| 29 June 2012 | Commision Implementing Regulation (EU) no. 827/2012. |
| 25 June 2012 | Executive Order no. 668 on major shareholders. |
| 14 March 2012 | Regulation (EU) no. 236/2012 of the European Parliament and of the Council (the Short Selling Regulation). |
| 14 March 2012 | Regulation (EU) no. 236/2012 of the European Parliament and of the Council (the Short Selling Regulation). |
| 7 December 2010 | The Danish Withholding Taxes Act (Consolidated Act no. 1403 of 7 December 2010). |
| 4 September 2007 | Executive Order no. 1069 on the conditions for official listing of securities. |
| 10 August 2006 | Commission Directive 2006/73/EC (Implementing Directive MiFID). |
| 2 May 2006 | Convention between the Government of the Kingdom of Denmark and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income. |

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| | |
|---|---|
| 21 April 2004 | Directive 2004/39/EC of the European Parliament and of the Council (MiFID). |
| 28 March 2003 | Extract of The Danish Sale of Goods Act. (Da. *Købelovens § 19*) |
| 19 May 1998 | Directive 98/26/EC of the European Parliament and of the Council (the Settlement Finality Directive as amended). |
| 17 August 1993 | Executive Order no. 1993 of 17 August 1993 on the Copenhagen Stock Exchange. |
| 27 April 1983 | The Convention between the Government of the United States of Ameri-ca and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Estates, Inheritances, Gifts and certain other Transfers. |
| 1 July 1938 | The Danish Debentures Act, sections 27. (Da. *Gældsbrevslovens § 27*) |
| Repealed | Danish Act on Central Securities Depositories. |

**Case Law**

| Date | Material |
|---|---|
| 28 April 2022 | Eastern High Court Ruling of 28 April 2022. Reference: BS-26436/2020-OLR. |
| 12 March 2020 | Ugeskrift for Retsvæsen.2020.1923H. |
| 16 July 2020 | Decision of the Danish Tax Tribunal, Skatteforvaltningen v. The FWC Capital LLC Pension Plan (case no. 18-0004312). |
| 22 August 2006 | Ugeskrift for Retsvæsen.2006.3050H. |
| 7 October 2005 | Ugeskrift for Retsvæsen.2006.145H. |
| 3 December 2001 | SKM2001.88.HR. |
| 31 January 2001 | Ugeskrift for Retsvæsen.2001.893H. |
| 3 March 2000 | Ugeskrift for Retsvæsen.2000.1413V. |
| 3 March 2000 | TfS.1998.408 LR. |
| 20 March 1997 | Ugeskrift for Retsvæsen.1997.762H. |
| 30 January 1997 | Ugeskrift for Retsvæsen.1997.444H. |
| 9 May 1994 | Ugeskrift for Retsvæsen.1994.719Ø. |
| 11 January 1982 | Ugeskrift for Retsvæsen.1982.152H. |
| 12 March 1980 | Ugeskrift for Retsvæsen.1980.383H. |
| 4 October 1978 | Ugeskrift for Retsvæsen.1978.880H. |
| 28 June 1977 | Ugeskrift for Retsvæsen.1977.686H. |
| 1964 | Ugeskrift for Retsvæsen.1964.307V. |
| 8 December 1960 | Ugeskrift for Retsvæsen.1961.101H. |
| 28 May 1954 | Ugeskrift for Retsvæsen.1954.673H. |

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

## Preparatory Works and Reports

| Date | Material |
|---|---|
| 25 February 2015 | Proposal no. 154 of 25 February 2015 on amongst other amendment of the Danish Securities Trading Act. |
| 2010 | *"Legislation on legal certainty of securities holding and disposition"* cited in footnote 9 of the DWF Defendants Defence. |
| 2008 | Preparatory works no. 1498/2008 for the Danish Companies Act (*Da.* Betænkning over modernisering af selskabsretten). |
| 21 December 2005 | Preparatory works to amendment of the Danish Tax Assessment Act Section 16A (act no. 1414 of 21 December 2005). |
| 3 February 2012 | Report from the Commission – Commission Staff Working Paper – Impact Assessment (SEC(2011) 1279 final/2) (TDAD Impact Assessment) |
| 1999 | Regnskabsrådets rapport om Revision af Årsregnskabsloven |
| 29 January 1986 | Proposal for the Danish Stock Exchange Act with remarks. |
| 1985-1986 | Proposal to amend the Danish Companies Act. |
| 29 February 1980 | Proposal for the Danish Securities Trading Act with remarks. |
| 24 February 1905 | Proposal to the Danish Sales of Goods Act with remarks. |

## Guidance

| Date | Material |
|---|---|
| Applicable in the Relevant Period | SKAT's Legal Guide. |
| 2014 | Statement by the Danish Business Authority. |

## Private Rules and Standards

| Date | Material |
|---|---|
| 4 August 2022 | International Securities Lending Association's Global Master Securities Lending Agreement, then applicable version, section 4.2. |
| 3 September 2020 | VP Securities Rule Book parts 1-5. |
| June 2012 and July 2015 | Nasdaq Nordic Market Model. |

| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| 2 March 2020 | Nasdaq Nordic Member Rules, version 3.9. |
| Applicable in the Relevant Period | Nasdaq Nordic Member Rules, versions 1.6 – 2.7. |
| Applicable in the Relevant Period | All articles of association of companies listed in Schedule 1A to the Particulars of Claim. |
| May 2019 | The ISSA Financial Crime Compliance Principles for Securities Custody and Settlement, second revision. |
| May 2019 | Background & Overview to ISSA Financial Crime Compliance Principles for Securities Custody and Settlement, first revision. |
| 14 December 2015 | Nasdaq Reporting Guideline, version 1.9, Members' On Exchange trade and Members' and Non-Members' OTC trade Reporting. |
| 27 August 2015 | The ISSA Financial Crime Compliance Principles for Securities Custody and Settlement, first revision. |
| 27 August 2015 | Background & Overview to ISSA Financial Crime Compliance Principles for Securities Custody and Settlement, first revision. |
| 2015 | Chartered Financial Analyst Society Denmark, Recommendations and Ratios. |
| 23 June 2013 | VP Securities' Clearing Rules, applicable as of 23 June 2013. |
| 17 June 2013 | VP Securities' Rules A- D, applicable as of 17 June 2013. |
| 2012 | Market Standards for Corporate Actions Processing, by Corporate Actions Joint Working Group. |
| 19 December 2011 to 10 August 2015 | VP Securities' System Guidelines. |
| 2002 | Custody Services, Controller's Handbook, by Controller of the Currency Administrator of National Banks. |
| 5 February 2002 | Standard terms and conditions for stock lending agreements prepared by the Danish Bankers' Association and the Danish Securities Dealers' Association, 5 February 2002, journal no. 613/03, doc no. 29094. |

**Literature**

| Date | Material |
|---|---|
| 2022 | Lærebog i obligationsret II, by Bo von Eyben and Peter Mortensen (En. Textbook on law of obligations part II), 5th ed., (2022). |
| 2021 | The Complex Commercial Litigation Law Review: Denmark, published in The Law Reviews on 14 January 2021, by Dan Terkildsen and Emil Hald Winstrøm. |

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| | |
|---|---|
| 2020 | Almindelig kontraktsret, by Bernhard Gomard, Hans Viggo Godsk Pedersen & Anders Ørgaard. |
| 2020 | Årsregnskabsloven med kommentarer, by Henrik Steffensen. |
| 2019 | Dansk Selskabsret 2 - Kapitalselsskaber, by Søren Friis Hansen and Jens Krenchel (En. Danish Company Law 2 - Limited Liability Companies), 2019, 5th edition. |
| 2019 | Securities and Capital Markets Law (*Da.* Børs- og Kapitalmarkedsret), 6th edition, by Peer Schaumburg-Müller and Erik Werlauff. |
| 2019 | Selskabsret, 11th edition, by Erik Werlauff. |
| 2019 | Danish Financial Business Act - with commentaries (Da. Lov om finansiel virksomhed – med kommentarer), 4th edition, by Thomas Brenøe, Marianne Simonsen, Merete Hjetting and Malene Stadil. |
| 2018 | Law of Obligations part 3 (Da. *Obligationsret 3. del*), 3rd edition, 2018, by Torsten Iversen on the basis of Bernhard Gomards Law of Obligations part 3, 2nd edition, 2009. |
| 2018 | Konkursloven med kommentarer, by Lars Lindencrone Petersen & Anders Ørgaard. |
| 2018 | The Danish Capital Markets Act with commentaries (*Da.* Kapitalmarkedsloven), 1st edition, by Dan Moalem, David Moalem, Peer Schaumburg-Müller, and Erik Werlauff. |
| 2018 | Finansieringsret, 2nd edition, by Henrik Kure. |
| 2018 | The Danish Companies Act with commentaries (Da. *Selskabsloven*) med kommentarer), 3rd edition, by Lars Bunch and Søren Corfixsen Whitt. |
| 17 August 2017 | Note by VP Securities:" Levels *of segregation offered by VP SECURITIES A/S*". |
| 15 May 2017 | European Post Trade Forum Report. |
| 15 May 2017 | Annex 3 to the European Post Trade Forum Report: Detailed analysis of the European Post Trade Landscape. |
| February 2017 | ISSA Report on the Inherent Risks within the Global Custody Chain. |
| 2017 | Limited liability companies (*Da.* Kapitalselskaber), 5th edition, by Jan Schans Christensen. |
| 2017 | The Danish Sales of Goods Act with comments (*Da.* Kø0beloven), 4th edition, Søren Theilgaard, Aqbal Amiri and Theis Jacobsen. |
| 2017 | Aftaler og Mellemmænd, 7th edition, by Lennart Lynge Andersen and Palle Bo Madsen. |

| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| 2016-2017 | Report on administration of dividend tax, by Skatteministeriet. |
| September 2016 | AFME Post Trade Division: Client Asset Protection Task Force. AFME Principles on Asset Segregation, Due Diligence and Collateral Management. |
| July 2016 | The Custody Services of Banks, by The Clearing House. |
| 2016 | Comments on selected decisions (Da. *Kommentarer til udvalgte afgørelser*), SKM2016.281.HR, RR.SM.2016.0101, by Anders Nørgaard Laursen. |
| February 2015 | Post Trade explained: The role of post-trade services in the financial sector, by Association for Financial Markets in Europe. |
| 2015 | European Banking and Financial Law, by Matthias Haentjens and Pierre de Gioia-Carabellese. |
| 2015 | Limited liability companies (Da. *Kapitalselskaber*), 8th edition, by Bern-hard Gomard and Peer Schaumburg-Müller. |
| 2015 | SKAT's early warning response in connection with stock lending (*Da.* Svar på early warning i forbindelse med aktielån), J.nr. 15-2051530. |
| 2014 | IOSCO Final report – Recommendations Regarding the Protection of Client Assets |
| 2013 | Værdipapirhandelsloven med kommentarer 2013, 9th edition, by Jesper Lau Hansen. |
| 2013 | The Danish Securities Trading Act with commentaries, part II, 9th edition, by Jesper Lau Hansen. |
| 2013 | Limited liability companies (*Da.* Aktie- og anpartsselskabsret – Kapitalselskaber), 12th edition, by Paul Krüger Andersen. |
| 2013 | Grundlæggende aftaleret, by Mads Bryde Andersen. |
| 2012 | Almindelig kontraktret, Bernhard Gomard, Hans Viggo Godsk Pedersen & Anders Ørgaard. |
| 2012 | The Danish Companies Act with commentaries (*Da.* Selskabsloven med kommentarer), 1st edition, by Jan Schans Christensen. |
| 19 March 2012 | Post Trade Settlement Committee Task Force on CSD Account Structure: CSD Account Structure: Issues and Proposals, Final Report, by Association for Financial Markets in Europe. |
| 2012 | Aftaler og Mellemmænd, 6th edition, by Lennart Lynge Andersen and Palle Bo Madsen. |
| 2011 | Panterettens deklaratoriske omfang ved pant i kapitalandele, by Henrik Kure. |
| 2011 | Årsregnskabsloven med kommentarer, by Henrik Steffensen. |
| 2011 | Contract Law in Denmark, by Ruth Nielsen. |

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| | |
|---|---|
| 2011 | Handbook of corporate equity derivatives and equity capital markets, by Juan Ramirez. |
| 2010 | The extent of the prohibition against short selling (*Da.* Rækkevidden af short selling-forbuddet), by Henrik Kure. |
| 2010 | On the rationale behind the prohibition against short selling (*Da.* Om rationalet bag forbud mod short selling), by Henrik Kure. |
| 2009 | Obligationsret 3. del, 2. edition, by Bernhard Gomard and edited by Torsten Iversen. |
| 2009 | Forvaltningsret – Almindelige emner, 5th edition, by Jens Garde et al. |
| 2009 | TfS.2009.480 by Jakob Bundgaard. |
| 2009 | Introduction to the law of property (Da. *Indledning til tingsretten – tredje-mandskonflikter vedrørende løsøre*), 2nd edition, by Peter Mortensen. |
| 2008 | The Danish Sales of Goods Act with commentaries, by Jacob Nørager-Nielsen, Søren Theilgaard, Michael Bjerg Hansen and Martin Hørmann Pallesen. |
| 2007 | The Securities Custody, Occasional Paper Series, by the European Central Bank (Diana Chan, Florence Fontan, Simonetta Rosati, and Daniela Russo). |
| 2007 | Gældsbrevsloven med kommentarer, 2nd edition, by Lennart Lynge-Andersen, Peter Møgelvang-Hansen og Anders Ørgaard. |
| 2006 | The Danish Securities Trading Act with commentaries (*Da.* Værdipapirhan-delsloven med kommentarer), 1st edition, by Dan Moalem, David Moalem and Erik Werlauff. |
| 2006 | Tax law and civil law (*Da.* Skatteret og civilret), 1st edition, by Jakob Bund-gaard. |
| 2006 | Participation in limited liability companies – The shareholder concept in the light of company and tax law (Da. *Deltagelse i kapitalselskaber – aktionær-begrebet i selskabsretlig og skatteretlig belysning*), SPO.2006.17, by Jakob Bundgaard. |
| 2006 | Law of obligations (*Da.* Obligationsret), 4th edition, 1st part, by Bernhard Gomard. |
| 2004 | Legal methodology (*Da.* Juridisk Metodelære), 3rd edition, by Peter Blume. |
| 2004 | Securites' rights (*Da.* Rettigheder over værdipapirer. Individualisering og sik-ringsakt) in Juristen no. 4, by Ulrik Rammeskov Bang Pedersen. |
| 2003 | Sikkerhed i fordringer, 4th edition, by Nis Jul Clausen. |
| 2002 | Law & Methodology (*Da.* Ret & Metode), 1st edition, by Mads Bryde Ander-sen. |

| Report of | : | Mr. Henning Aasmul-Olsen |
|---|---|---|
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| | |
|---|---|
| 1999 | The sources of law (*Da.* Rettens kilder), 1st edition, by Henrik Zahle. |
| 1999 | The law of Property 1 (*Da.* Ejendomsretten 1), 4th edition, by Michael Elmer and Lise Skovby. |
| 1997 | Actio Pauliana og pro forma (1997, published in Ugeskrift for Retsvæsen.1997B.369), by Torben Jensen. |
| 1992 | Juridisk grundbog 1 – Retskilderne, W.E. von Eyben. |
| 1978 | Aftaler, by Henry Ussing. |
| 1972 | Formuerettigheder: Indhold, beskyttelse, overdragelse, by W.E. von Eyben. |
| 1971 | Kontraktsret I, by Stig Jørgensen. |
| 1967 | Obligationsretten – Almindelig del, by Henry Ussing. |
| 1908 | Haandbog i Obligationsretten, almindelig del, by Julius Lassen. |

**Other materials**

| Date | Materials |
|---|---|
| 27 March 2024 | Investor Bulletin of the Securities and Exchange Commission on the New "T+1" Settlement Cycle – What Investors Need To Know, dated March 27, 2024. |
| 25 Janurary 2024 | Reuters news report "EU to copy US in speeding stocks settlement to cut risk", dated January 25, 2024. |
| 2022 | CVR – Central Business Register – Database by The Danish Business Authority (Da. CVR – Det Centrale Virksomhedsregister - Erhvervsstyrelsen) https://datacvr.virk.dk/data/. |
| 27 April 2022 | Novo Nordisk A/S' articles of association. |
| February 2021 | Novo Nordisk' notice for annual general meeting 2021 |
| 4 December 2020 | Data extract from VP Securities. |
| 20 October 2020 | Indicator summary from VP Securities. |
| 3 September 2020 | Ringkjøbing Landbobank Custody Account Terms. |
| September 2020 | Jyske Bank Custody Account Terms. |
| 2020 | Annual Report – Novo Nordisk. |
| 2020 | Annual Report – Carlsberg. |
| 2020 | Annual Report – Danske Bank. |
| 1 June 2019 | Spar Nord Custody Account Terms. |
| 25 May 2018 | Nordea Custody Account Terms. |
| 1 March 2018 | Danske Bank Custody Account Terms. |
| 3 January 2018 | Saxo Bank Custody Account Terms. |

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

| | |
|---|---|
| 3 January 2018 | Arbejdernes Landsbank Custody Account Terms. |
| 3 January 2018 | Den Jyske Sparekasse Custody Account Terms |
| 3 January 2017 | Skandinaviska Enskilda Banken (SEB) Custody Account Terms. |
| 13 December 2017 | Nykredit Custody Account Terms. |
| 12 December 2017 | Vestjysk Bank Custody Account Terms. |
| 30 September 2013 | Danske Bank Custody Account Terms. |
| 24 September 2007 | Sydbank Custody Account Terms. |

**Submissions in the Dispute provided by Plaintiff**

| Date | Material |
|---|---|
| 29 April 2022 | Plaintiff Skatteforvaltningen's Memorandum of Law in Support of its Motion for Partial Summary Judgment. |
| 29 April 2022 | Defendants' and Third-Party Defendants' Memorandum in Support of Motion for Summary Judgment. |
| 28 April 2022 | Eastern High Court Ruling: Skatteforvaltningen v. Bech Bruun Advokatpartnerselskab P/S (case no. BS-26436/2020-OLR), including a certified English translation. Only the High Court's ruling and holdings have been made available to me. |
| 27 April 2022 | Declaration of Foreign Law of Kasper Bech Pilgaard in the Dispute. |
| 31 December 2021 | Expert Report of Bruce G. Dubinsky. |
| 7 December 2021 | Remote VTC videotaped deposition under oral examination of Helen Sorensen, Volume II. |
| 21 September 2021 | Remote VTC videotaped deposition under oral examination of Helen Sorensen. |
| 8 June 2021 | Remote VTC videotaped deposition under oral examination of Gunnar Volkers in the Dispute dated June 8, 2021. |
| 16 September 2019 | Rosenblatt Investigation into Danish trading activity of ED&F Man Professional Trading (Dubai) Ltd ("MPT Dubai") with no annexes or ancillary documents except for Annex E. |
| 2 October 2020 | Decision by Danish Tax Tribunal which involved the Riverside Associates Defined Benefit Plan. |
| 16 July 2020 | Decision by Danish Tax Tribunal which involved the FWC Capital LLC Pension Plan. |
| 16 July 2020 | Decision by Danish Tax Tribunal which involved the Roadcraft Technologies LLC Roth 401(K) Plan. |

| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

7 July 2020 — Decision by Danish Tax Tribunal which involved the American Investment Group of New York, L.P. Pension Plan.

26 June 2020 — Decision by Danish Tax Tribunal which involved the Proper Pacific LLC 401(K) Plan.

19 December 2019 — Pleading of Defendants (The Proper Pacific LLC 401(K) Plan) in Danish tax cases before the Danish Tax Tribunal (Bellwether) prepared by TVC Advokatfirma, lawyers Kasper Bech Pilgaard and Torben Bagge.

18 December 2019 — Pleading of Defendants (The FWC Capital LLC Plan) in Danish tax cases before the Danish Tax Tribunal (Bellwether) prepared by TVC Advokatfirma, lawyers Kasper Bech Pilgaard and Torben Bagge.

9 December 2019 — Pleading of Defendants (Roadcraft Technologies LLC Roth 401(K) Plan) in Danish tax cases before the Danish Tax Tribunal (Bellwether) prepared by TVC Advokatfirma, lawyer Kasper Bech Pilgaard.

27 August 2019 — Pleading of Defendants (Roadcraft Technologies LLC Roth 401(K) Plan) in Danish tax cases before the Danish Tax Tribunal (Bellwether) prepared by TVC Advokatfirma, lawyer Kasper Bech Pilgaard.

12 August 2019 — Pleading of Plaintiff (Skatteforvaltningen) in Danish tax cases before the Danish Tax Tribunal (the FWC Capital LLC Plan case).

14 May 2019 — Pleading of Defendants (The FWC Capital LLC Plan) in Danish tax cases before the Danish Tax Tribunal (Bellwether) prepared by TVC Advokatfirma, lawyers Kasper Bech Pilgaard and Torben Bagge.

7 May 2019 — Pleading of Defendants (Roadcraft Technologies LLC Roth 401(K) Plan) in Danish tax cases before the Danish Tax Tribunal (Bellwether) prepared by TVC Advokatfirma, lawyer Kasper Bech Pilgaard.

20 November 2018 — Pleading of Defendants (The FWC Capital LLC Plan) in Danish tax cases before the Danish Tax Tribunal (Bellwether) prepared by TVC Advokatfirma, lawyers Kasper Bech Pilgaard and Torben Bagge.

| | | |
|---|---|---|
| Report of | : | Mr. Henning Aasmul-Olsen |
| Specialist field | : | Danish Law |
| Retained by | : | Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) |
| Prepared for | : | United States District Court, Southern District of New York |

## Appendix 3 – Collection of statements by legal commentators on the *Nemo Dat* Doctrine

**Lennart Lynge Andersen, Peter Møgelvang-Hansen, and Anders Ørgaard** (1997)[28] has stated:

> "If the conditions in Section 14[29] [of the Danish Debenture Act] are not satisfied, *the conflict on rights will be governed by customary rules*. Without any other reference points, the starting point for solving a conflict on rights pursuant to the customary rules is that *the purchaser does not obtain better rights than the transferor*, *i.e.,* that the conflict on ownership shall be solved to the benefit of the original owner […] *The customary principle is among others codified in Section 27* [of the Danish Debenture Act]" (my translation, emphasis, and insertion).[30]

**Bo von Eyben and Peter Mortensen** (2022)[31] has stated:

> "If the conditions in for extinguishment by the purchaser in accordance with Section 15 of the Danish Debenture Act are not satisfied, the *customary starting point will apply for negotiable debentures*: *the purchaser – without any other reference points – does not obtain better rights than the transferor. This corresponds to the general rule for non-negotiable claims in Section 27 of the Danish Debenture Act*." (my translation and emphasis).

---

[28] Lennart Lynge Andersen, Peter Møgelvang-Hansen, and Anders Ørgaard: *Gældsbrevsloven med kommentarer* (*En. Danish Debenture Act with commentaries*), 2ed., (1997), page 101.

[29] As reiterated in relation to Section 15 of the Danish Debenture Act in Lennart Lynge Andersen, Peter Møgelvang-Hansen, and Anders Ørgaard: *Gældsbrevsloven med kommentarer* (*En. Danish Debenture Act with commentaries*), 2ed., (1997), page 117.

[30] An objection of theft where (B) has stolen the debenture from (A) can be extinguished by (C), provided that (C) satisfies the conditions for extinguishment set out in Section 14 of the Danish Debenture Act, see the comments in the draft Danish Debenture Act of 1935.

[31] Bo von Eyben and Peter Mortensen: *Lærebog i obligationsret II* (*En. Textbook on law of obligations part II*), 5th ed., (2022), page 97

## Appendix 4 – Timeline for the mechanics in a distribution of dividends by a Danish Nasdaq Copenhagen listed company (T+2)



Sources: Danske Bank Corporate Actions Wholesale Banking Services, VP Rules A-D 2013, VP Rule Book 1 October 2019, Nasdaq Nordic Nordic Member Rules V 4, and Henning Aasmul-Olsen.

[1] Provided that account holding institution has not put the dividend payment on hold due to insufficient cash funds on the Issuer's bank account.

[2] All trades past T (17:00) are ex-dividend, assuming customary T+2 settlement.

**Appendix 4 – Timeline for dividend distribution based on T+2 and T+3 settlement**

Report of : Mr. Henning Aasmul-Olsen

Specialist field : Danish Law

Retained by : Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen)

Prepared for : United States District Court, Southern District of New York

## Appendix 4 – Timeline for the mechanics in a distribution of dividends by a Danish Nasdaq Copenhagen listed company (T+3)



Sources: Danske Bank Corporate Actions Wholesale Banking Services, VP Rules A-D 2013, VP Rule Book 1 October 2019, Nasdaq Nordic Nordic Member Rules V 4, and Henning Aasmul-Olsen.

[1] Provided that account holding institution has not put the dividend payment on hold due to insufficient cash funds on the Issuer's bank account.

[2] All trades past T (17:00) are ex-dividend, assuming customary T+3 settlement.

Report of                                      : Mr. Henning Aasmul-Olsen

Specialist field                               : Danish Law

Retained by                                    : Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen)

Prepared for                                   : United States District Court, Southern District of New York