# Exhibit 50

# COMMISSION IMPLEMENTING REGULATION (EU) No 827/2012

## of 29 June 2012

**laying down implementing technical standards with regard to the means for public disclosure of net position in shares, the format of the information to be provided to the European Securities and Markets Authority in relation to net short positions, the types of agreements, arrangements and measures to adequately ensure that shares or sovereign debt instruments are available for settlement and the dates and period for the determination of the principal venue for a share according to Regulation (EU) No 236/2012 of the European Parliament and of the Council on short selling and certain aspects of credit default swaps**

(Text with EEA relevance)

THE EUROPEAN COMMISSION,

Having regard to the Treaty on the Functioning of the European Union,

Having regard to Regulation (EU) No 236/2012 of 14 March 2012 of the European Parliament and of the Council on short selling and certain aspect of credit default swaps ([1]) and in particular Articles 9(6), 11(4), 12(2), 13(5) and 16(4) thereof,

After consulting the European Data Protection Supervisor,

Whereas:

(1) This Regulation aims to determine the list of exempted shares as a necessary step for the disclosure to the public of short positions in all non-exempted shares and the conditions under which that information should be sent to the European Securities and Markets Authority (hereinafter "ESMA"). It is therefore essential that rules also be laid down regarding arrangements and measures to be adopted with respect to those non-exempted shares. To ensure coherence between those provisions on short selling which should enter into force at the same time, and to facilitate a comprehensive view and compact access to them by persons subject to those obligations, it is appropriate to include all the implementing technical standards required by Regulation (EU) No 236/2012 in a single Regulation.

(2) To ensure the uniform application of Regulation (EU) No 236/2012 in relation to the information to be provided to ESMA by competent authorities and to achieve the efficient processing of that information, it should be exchanged electronically in a secure way using a standard template.

(3) It is important to allow easy access to and re-use of the data on net short positions that is disclosed to the market through central websites operated or supervised by a competent authority. To this end, these data should be provided in a format that allows for flexible use of data and that does not offer only the possibility of static, facsimile documents. Wherever technically possible, machine-readable formats should be used to enable users to process the information in a structured and cost-efficient way.

(4) In order to ensure the publicity of this information to the market, in addition to disclosure on the central website operated or supervised by a competent authority, it should be possible to make available the details of a net short position to the public in other ways.

(5) It is essential for users to have two basic outputs when making public individual net short positions in shares above the relevant publication threshold. These should comprise a compact list or table of the net short positions above the publication threshold that are outstanding at the time of consultation of the central website and a list or table with historical data on all individual net short positions published.

(6) When a net short position in shares falls below a relevant disclosure threshold, the details, including the actual size of the position, should be published. In order to avoid confusion for users consulting the central websites, disclosures of positions that have fallen below 0,5 % of the issued share capital of the company concerned should not remain indefinitely alongside the live positions but should be available as historical data after being displayed for 24 hours.

(7) In order to provide for a consistent and clear framework which is nevertheless flexible, it is important to specify the types of agreement to borrow and other enforceable claims having similar effect and the types of arrangement with a third party that adequately ensure that shares or sovereign debt instruments will be available for settlement, and specify the criteria such agreements and arrangements must fulfil.

(8) The use of rights to subscribe for new shares in relation to a short sale may adequately ensure availability for settlement only where the arrangement is such that settlement of the short sale is ensured when it is due. Therefore, it is essential to specify rules to ensure that the shares resulting from the subscription rights are available on or before the settlement date and in a quantity at least equivalent to the number of shares intended to be sold short.

---
([1]) OJ L 86, 24.3.2012, p. 1.

(9) In defining time limited confirmation arrangements, it is important to specify the timeframe for covering a short sale through purchases in a way compatible with different settlement cycles in different jurisdictions.

(10) In order to adequately ensure that instruments are available for settlement where a natural or legal person entering into a short sale has an arrangement with a third party under which that third party has confirmed that the instrument has been located, it is essential that there be confidence that the third party is, when established in a third country, subject to appropriate supervision and that there are appropriate arrangements for exchange of information between supervisors. Such appropriate arrangements could include being a signatory of a memorandum of understanding established by the International Organisation of Securities Commissions (IOSCO).

(11) To ensure proper implementation of the requirement to determine whether the principal trading venue of a share is located outside the Union, transitional arrangements should be put in place for determining for the first time the list of exempted shares under Article 16 of Regulation (EU) No 236/2012. In addition, although the list of exempted shares is effective for a two year period, it is necessary to provide some flexibility as there are cases where a review of that list might be necessary during the two-year period.

(12) In order to ensure consistency, the date of application of this Regulation should be the same as that of Regulation (EU) No 236/2012. However, in order to allow sufficient time for natural and legal persons to process the list of shares exempted pursuant to Regulation (EU) No 236/2012, the preparation of that list and its subsequent publication on the ESMA website should take place sufficiently in advance before the application date of Regulation (EU) No 236/2012. Therefore, the provisions concerning the date and period for principal trading venue calculations, the date of notification to ESMA of shares with a principal trading venue outside the Union and the effectiveness of the list of exempted shares should apply from the date of entry into force of this Regulation.

(13) Since Regulation (EU) No 236/2012 recognised that binding technical standards should be adopted before that Regulation can be usefully applied, and as it is essential to specify before 1 November 2012 the required non-essential elements to facilitate compliance by market participants with that Regulation and enforcement by competent authorities, it is necessary that this Regulation enter into force on the day following its publication.

(14) This Regulation is based on the draft implementing technical standards submitted by ESMA to the Commission.

(15) ESMA has conducted open public consultations on the draft implementing technical standards on which this Regulation is based, analysed the potential related costs and benefits and requested the opinion of the Securities Markets Stakeholder Group established in accordance with Article 37 of Regulation (EU) No 1095/2010 of the European Parliament and of the Council of 24 November 2010 establishing a European Supervisory Authority (European Securities and Markets Authority) ([1]),

HAS ADOPTED THIS REGULATION:

CHAPTER I

GENERAL PROVISIONS

Article 1

**Subject Matter**

This Regulation lays down implementing technical standards specifying the following:

(a) the means by which information on net short positions may be disclosed to the public by natural or legal persons as well as the format of information to be provided to the European Securities and Markets Authority (hereinafter "ESMA") by competent authorities pursuant to Article 9(6) and Article 11(4) of Regulation (EU) No 236/2012;

(b) the types of agreements, arrangements and measures that adequately ensure that the shares are available for settlement and the types of agreements or arrangements that adequately ensure that the sovereign debt is available for settlement pursuant to Article 12(2) and 13(5) of Regulation (EU) No 236/2012;

(c) the date and period for principal trading venue calculations, notification to ESMA and the effectiveness of the relevant list pursuant to 16(4) of Regulation (EU) No 236/2012.

CHAPTER II

MEANS FOR PUBLIC DISCLOSURE OF SIGNIFICANT NET SHORT POSITIONS IN SHARES

[ARTICLE 9 OF REGULATION (EU) No 236/2012]

Article 2

**Means by which information may be disclosed to the public**

Information on net short positions in shares shall be disclosed to the public by posting it on a central website operated or supervised by the relevant competent authority pursuant to Article 9(4) of Regulation (EU) No 236/2012. The information shall be disclosed to the public through means which:

---
([1]) OJ L 331, 15.12.2010, p. 84.

(a) publish it in the format specified in Annex I in such a way as to allow the public consulting the website to access one or more tables offering all the relevant information on positions per share issuer;

(b) allow users to identify and filter on whether the net short positions in a share issuer at the time of accessing the website has reached or exceeded the relevant publication threshold;

(c) provide for historical data on the published net short positions in a share issuer;

(d) include, whenever technically possible, downloadable files with the published and historical net short positions in a machine-readable format, meaning that the files are sufficiently structured for software applications to identify reliably individual statements of fact and their internal structure;

(e) show for one day, together with the information specified in point (b), the net short positions that are published because they have fallen below the publication threshold of 0,5 % of the issued share capital, before removing and transferring the information to a historical data section.

CHAPTER III

FORMAT OF THE INFORMATION TO BE PROVIDED TO ESMA BY COMPETENT AUTHORITIES IN RELATION TO NET SHORT POSITIONS

[ARTICLE 11 OF REGULATION (EU) No 236/2012]

Article 3

Format of the periodic information

1. The information to be provided on a quarterly basis to ESMA on net short positions in shares, sovereign debt and credit default swaps pursuant to Article 11(1) of Regulation (EU) No 236/2012 shall be provided by relevant competent authorities in the format specified in Annex II to this Regulation.

2. The information referred to in paragraph 1 shall be sent to ESMA electronically through a system established by ESMA that ensures that the completeness, integrity and confidentiality of the information are maintained during its transmission.

Article 4

Format of the information to be provided upon request

1. A relevant competent authority shall provide the information on net short positions in shares and sovereign debt or on uncovered positions relating to sovereign credit default swaps pursuant to Article 11(2) of Regulation (EU) No 236/2012 in the format specified by ESMA in its request.

2. Where information requested relates to information contained in the notification received by the competent authority pursuant to Articles 5, 7 and 8 of Regulation (EU) No 236/2012, that information shall be provided in accordance with the requirements established in Article 2 of Commission Delegated Regulation (EU) No 826/2012 ([1]).

3. Information requested shall be sent by the competent authority in electronic format, using a system established by ESMA for exchanging information that ensures that the completeness, integrity and confidentiality of the information are maintained during its transmission.

CHAPTER IV

AGREEMENTS, ARRANGEMENTS AND MEASURES TO ADEQUATELY ENSURE AVAILABILITY FOR SETTLEMENT

[ARTICLES 12 AND 13 OF REGULATION (EU) No 236/2012]

Article 5

Agreements to borrow and other enforceable claims having similar effect

1. An agreement to borrow or other enforceable claim referred to in Article 12(1)(b) and Article 13(1)(b) of Regulation (EU) No 236/2012 shall be made by means of the following types of agreement, contract or claim which are legally binding for the duration of the short sale:

(a) futures and swaps: futures and swap contracts leading to a physical settlement of the relevant shares or sovereign debt and covering at least the number of shares or amount of sovereign debt proposed to be sold short by the natural or legal person, entered into prior to or at the same time as the short sale and specifying a delivery or expiration date that ensures settlement of the short sale can be effected when due;

(b) options: options contracts leading to a physical settlement of the relevant shares or sovereign debt and covering at least the number of shares or amount of sovereign debt proposed to be sold short by the natural or legal person, entered into prior to or at the same time as the short sale and specifying an expiration date that ensures settlement of the short sale can be effected when due;

(c) repurchase agreements: repurchase agreements covering at least the number of shares or amount of sovereign debt proposed to be sold short by the natural or legal person, entered into prior to or at the same time as the short sale and specifying a repurchase date that ensures settlement of the short sale can be effected when due;

(d) standing agreements or rolling facilities: an agreement or facility which is entered into prior to or at the same time as the short sale, of a predefined amount of specifically identified shares or sovereign debt, which for the duration

---

([1]) See page 1 of this Official Journal.

of the short sale, covers at least the number of shares or amount of sovereign debt proposed to be sold short by the natural or legal person and specifies a delivery or execution date that ensures settlement of the short sale can be effected when due;

(e) agreements relating to subscription rights: agreements relating to subscription rights where the natural or legal person is in possession of rights to subscribe for new shares of the same issuer and of the same class and covering at least the number of shares proposed to be sold short provided that the natural or legal person is entitled to receive the shares on or before settlement of the short sale;

(f) other claims or agreements leading to delivery of the shares or sovereign debt: agreements or claims which cover at least the number of shares or amount of sovereign debt proposed to be sold short by the natural or legal person, entered into prior to or at the same time as the short sale, and specifying a delivery or an execution date that ensures settlement can be effected when due.

2. The agreement, contract or claim shall be provided in a durable medium by the counterparty to the natural or legal person as evidence of the existence of the agreement to borrow or other enforceable claim.

*Article 6*

**Arrangements and measures to be taken in relation to short sales of a share admitted to trading on a trading venue**

[Article 12(1)(c) of Regulation (EU) No 236/2012]

1. Paragraphs 2, 3 and 4 shall determine the arrangements and measures to be taken in relation to short sales of a share admitted to trading on a trading venue pursuant to Article 12(1)(c) of Regulation (EU) No 236/2012.

2. Standard locate arrangements and measures shall mean arrangements, confirmations and measures that include each of the following elements:

(a) for locate confirmations: a confirmation provided by the third party, prior to the short sale being entered into by a natural or legal person, that it considers that it can make the shares available for settlement in due time taking into account the amount of the possible sale and market conditions and which indicates the period for which the share is located;

(b) for put on hold confirmations: a confirmation by the third party, provided prior to the short sale being entered into, that it has at least put on hold the requested number of shares for that person.

3. Standard same day locate arrangements and measures shall mean arrangements, confirmations and measures that include each of the following elements:

(a) for requests for confirmation: a request for confirmation from the natural or legal person to the third party which states that the short sale will be covered by purchases during the day on which the short sale takes place;

(b) for locate confirmations: a confirmation provided by the third party prior to the short sale being entered into that it considers that it can make the shares available for settlement in due time taking into account the amount of the possible sale and market conditions, and which indicates the period for which the shares are located;

(c) for easy to borrow or purchase confirmations: a confirmation by the third party, provided prior to the short sale being entered into, that the share is easy to borrow or purchase in the relevant quantity taking into account the market conditions and other information available to that third party on the supply of the shares or, in the absence of this confirmation by the third party, that it has at least put on hold the requested number of shares for the natural or legal person;

(d) for monitoring: an undertaking by the natural or legal person to monitor the amount of the short sale not covered by purchases;

(e) for instructions in the event of failure to cover: an undertaking from the natural or legal person that in the event that executed short sales are not covered by purchases in the same day, the natural or legal person will promptly send an instruction to the third party to procure the shares to cover the short sale to ensure settlement in due time.

4. Easy to borrow or purchase arrangements and measures shall mean arrangements, confirmations and measures when the natural or legal person enters into a short sale of shares that meet the liquidity requirements established in Article 22 of Commission Regulation (EC) No 1287/2006 ([1]), or other shares that are included in the main national equity index as identified by the relevant competent authority of each Member State and are the underlying financial instrument for a derivative contract admitted to trading on a trading venue, that include the following elements:

(a) for locate confirmations: a confirmation provided by the third party prior to the short sale being entered into that it considers that it can make the shares available for settlement in due time taking into account the amount of the possible sale and market conditions and indicating the period for which the share is located;

(b) for easy to borrow or purchase confirmations: a confirmation by the third party, provided prior to the short sale being entered into, that the share is easy to borrow or purchase in the relevant quantity taking into account the market conditions and other information available to that

---

([1]) OJ L 241, 2.9.2006, p. 1.

third party on the supply of the shares, or in the absence of this confirmation by the third party, that it has at least put on hold the requested number of shares for the natural or legal person; and

(c) for instructions to cover: when executed short sales will not be covered by purchases or borrowing, a undertaking that a prompt instruction will be sent by the natural or legal person instructing the third party to procure the shares to cover the short sale to ensure settlement in due time.

5.   The arrangements, confirmations and instructions referred to in paragraphs 2, 3 and 4 shall be provided in a durable medium by the third party to the natural or legal person as evidence of the existence of the arrangements, confirmations and instructions.

*Article 7*

**Arrangements with third parties to be taken in relation to sovereign debt**

[Article 13(1)(c) of Regulation (EU) No 236/2012]

1.   Paragraphs 2 to 5 shall determine the arrangements with third parties to be taken in relation to sovereign debt pursuant to Article 13(1)(c) of Regulation (EU) No 236/2012.

2.   Standard sovereign debt locate arrangement shall mean a confirmation from the third party, prior to the short sale being entered into, that it considers that it can make the sovereign debt available for settlement in due time, in the amount requested by the natural or legal person, taking into account market conditions and indicating the period for which the sovereign debt is located.

3.   Time limited confirmation arrangement shall mean an arrangement where the natural or legal person states to the third party that the short sale will be covered by purchases during the same day of the short sale and the third party confirms, prior to the short sale being entered into, that it has a reasonable expectation that the sovereign debt can be purchased in the relevant quantity taking into account market conditions and other information available to that third party on the supply of the sovereign debt instruments on the day of entering into the short sale.

4.   Unconditional repo confirmation shall mean a confirmation where the third party confirms, prior to the short sale being entered into, that it has a reasonable expectation that settlement can be effected when due as a result of its participation in a structural based arrangement, organised or operated by a central bank, a debt management office or a securities settlement system that provides unconditional access to the sovereign debt in question for a size consistent with the size of the short sale.

5.   Easy to purchase sovereign debt confirmation shall mean a confirmation by the third party, provided prior to the short sale being entered into, that it has a reasonable expectation that settlement can be effected when due on the basis that the sovereign debt in question is easy to borrow or purchase in the relevant quantity taking into account the market conditions and any other information available to that third party on the supply of the sovereign debt.

6.   The arrangements, confirmations and instructions referred to in paragraphs 2 to 5 shall be provided in a durable medium by the third party to the natural or legal person as evidence of the existence of the arrangements, confirmations and instructions.

*Article 8*

**Third parties with whom arrangements are made**

1.   Where an arrangement referred to in Articles 6 and 7 is made with a third party, the third party shall be one of the following types:

(a) in the case of an investment firm: an investment firm which meets the requirements set out in paragraph 2;

(b) in the case of a central counterparty: a central counterparty which clears the relevant shares or sovereign debt;

(c) in the case of a securities settlement system: a securities settlement system as defined under Directive 98/26/EC of the European Parliament and of the Council (¹) which settles payments in respect of the relevant shares or sovereign debt;

(d) in the case of a central bank: a central bank that accepts the relevant shares or sovereign debt as collateral or conducts open market or repo transactions in relation to the relevant shares or sovereign debt;

(e) in the case of a national debt management entity: the national debt management entity of the relevant sovereign debt issuer;

(f) any other person who is subject to authorisation or registration requirements in accordance with Union law by a member of the European System of Financial Supervision and meets the requirements set out in paragraph 2;

(g) a person established in a third country who is authorised or registered, and is subject to supervision by an authority in that third country and who meets the requirements set out in paragraph 2, provided that the third country authority is a party to an appropriate cooperation arrangement concerning exchange of information with the relevant competent authority.

---

(¹) OJ L 166, 11.6.1998, p. 45.

2. For the purposes of points (a), (f) and (g) of paragraph 1, the third party shall meet the following requirements:

(a) participate in the management of borrowing or purchasing of relevant shares or sovereign debt;

(b) provide evidence of such participation;

(c) be able, on request, to provide evidence of its ability to deliver or process the delivery of shares or sovereign debt on the dates it commits to do so to its counterparties including statistical evidence.

CHAPTER V

DETERMINATION OF THE PRINCIPAL TRADING VENUE FOR THE EXEMPTION

[ARTICLE 16 OF REGULATION (EU) No 236/2012]

Article 9

Date and period for principal trading venue calculations

1. Relevant competent authorities shall make any calculations determining the principal trading venue for a share by at least 35 calendar days before the date of application of Regulation (EU) No 236/2012 in respect of the period between 1 January 2010 and 31 December 2011.

2. Subsequent calculations shall be made before 22 February 2014 in respect of the period between 1 January 2012 and 31 December 2013, and every two years thereafter in respect of the subsequent two year period.

3. Where the share concerned was not admitted to trading during the whole two-year period on the trading venue in the Union and the third country trading venue, the period for calculation shall be the period during which the share was admitted to trading on both venues concurrently.

Article 10

Date of notification to ESMA

Relevant competent authorities shall notify ESMA of those shares for which the principal trading venue is outside the Union at least 35 calendar days before the date of application of the Regulation (EU) No 236/2012 and thereafter on the day before the first trading day in March every second year commencing from March 2014.

Article 11

Effectiveness of the list of exempted shares

The list of shares for which the principal trading venue is located outside the Union shall be effective as of 1 April following its publication by ESMA, except that the first list published by ESMA shall be effective from the date of entry into application of Regulation (EU) No 236/2012.

Article 12

Specific cases of review of exempted shares

1. A relevant competent authority which determines whether the principal trading venue for a share is located outside the Union following one of the circumstances set out in paragraph 2 shall ensure that:

(a) any calculations determining the principal trading venue are made as soon as possible after the relevant circumstances arise and in respect of the two year period preceding the date of calculation;

(b) it notifies ESMA of its determination as soon as possible and, where relevant, before the date of admission to trading on a trading venue in the Union.

Any revised list shall be effective from the day following that of its publication by ESMA.

2. The provisions of paragraph 1 apply when:

(a) the shares of a company are removed from trading on a permanent basis on the principal venue located outside the Union;

(b) the shares of a company are removed from trading on a permanent basis on a trading venue in the Union;

(c) the shares of a company that was previously admitted to trading in a trading venue outside the Union are admitted to trading on a trading venue in the Union.

CHAPTER VI

FINAL PROVISIONS

Article 13

Entry into force

This Regulation shall enter into force on the day following that of its publication in the *Official Journal of the European Union*.

It shall apply from 1 November 2012, except for Articles 9, 10 and 11 which shall apply from the date referred to in the first paragraph.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Brussels, 29 June 2012.

*For the Commission*
*The President*
José Manuel BARROSO

---

*ANNEX I*

**Public disclosure of significant net short positions (Article 2)**

| Position holder | Name of the issuer | ISIN | Net short position (%) | Date position was created, changed or ceased to be held (yyyy-mm-dd) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*ANNEX II*

**Format of the information to be provided to ESMA on quarterly basis (Article 3)**

| Information | Format |
| --- | --- |
| 1. Issuer identification | For shares: full name of the company that has shares admitted to trading on a trading venue<br>For sovereign debt: full name of the issuer<br>For uncovered sovereign credit default swaps: full name of the underlying sovereign issuer |
| 2. ISIN | For shares only: ISIN of the main class of ordinary shares of the issuer. If there are no ordinary shares admitted to trading, the ISIN of the class of preference shares (or of the main class of preference shares admitted to trading if there are several classes of such shares) |
| 3. Country code | Two letter code for the sovereign issuer country in accordance with ISO standard 3166-1 |
| 4. Position date | Date for which the position is reported. Format in accordance with ISO standard 8601:2004 (yyyy-mm-dd) |
| 5. Daily aggregated net short position on main national index shares | Percentage figure rounded to 2 decimal places |
| 6. End of quarter aggregated net short position on other shares | Percentage figure rounded to 2 decimal places |
| 7. Daily aggregated net short positions in sovereign debt | Figure of equivalent nominal amount in Euros |
| 8. Daily aggregated uncovered positions on credit default swaps of a sovereign issuer | Figure of equivalent nominal amount in Euros |