# Exhibit 51

II

*(Non-legislative acts)*

# REGULATIONS

**COMMISSION DELEGATED REGULATION (EU) No 918/2012**

**of 5 July 2012**

supplementing Regulation (EU) No 236/2012 of the European Parliament and of the Council on short selling and certain aspects of credit default swaps with regard to definitions, the calculation of net short positions, covered sovereign credit default swaps, notification thresholds, liquidity thresholds for suspending restrictions, significant falls in the value of financial instruments and adverse events

**(Text with EEA relevance)**

THE EUROPEAN COMMISSION,

Having regard to the Treaty on the Functioning of the European Union,

Having regard to Regulation (EU) No 236/2012 of the European Parliament and of the Council of 14 March 2012 on short selling and certain aspects of credit default swaps (¹), and in particular Article 2(2), Article 3(7), Article 4(2), Article 7(3), Article 13(4), Article 23(7) and Article 30 thereof,

Whereas:

(1) Regulation (EU) No 236/2012 imposes certain measures in relation to short selling and credit default swaps. Article 42 of Regulation (EU) No 236/2012 empowers the Commission to adopt delegated acts to supplement the provisions of that Regulation in accordance with Article 290 of the Treaty on the Functioning of the European Union. This delegated act supplements and amends certain non-essential elements.

(2) The provisions in this Regulation are closely linked, since the notification and publication thresholds and the determination of uncovered credit default swaps depend on the definitions and the methods of calculation of short positions while the provisions on significant falls in the value of financial instruments and falls in the liquidity of sovereign debt markets and the determination of adverse events are inextricably linked. To ensure coherence between those provisions on short selling which should enter into force at the same time, it is appropriate to include all the provisions required by Regulation (EU) No 236/2012 in a single Regulation.

(3) Regulation (EU) No 236/2012 contains certain definitions. For further clarity and legal certainty, it is appropriate to provide supplementary provisions in relation to the definitions in Article 2(1), in particular when a natural or legal person is considered to own a financial instrument for the purposes of the definition of a short sale and further specification of when a natural or legal person 'holds' a share or debt instrument for the purposes of Regulation (EU) No 236/2012 are required. The specifications are chosen to ensure that Regulation (EU) No 236/2012 has the intended effect in a consistent manner despite the divergent approach of the laws of Member States. The concepts of ownership and holding in Member States concerning securities are currently not harmonised but the provisions of Regulation (EU) No 236/2012 are only intended to apply to short selling and to be without prejudice to any future legal developments such as harmonising legislation.

(4) Regulation (EU) No 236/2012 imposes restrictions and obligations, such as notification and publication requirements, on natural or legal persons holding or entering into net short positions in shares and sovereign debt. Long and short positions in shares and sovereign debt can be held and valued in different ways. In order to ensure a consistent approach and give effect to the intention of the measures on short positions in shares and sovereign debt it is therefore necessary to further specify how net short positions should be calculated. Short sales may occur through single instruments or

---

(¹) OJ L 86, 24.3.2012, p. 1.

through baskets of sovereign debt and so it is necessary to specify how short sales through baskets are included in these calculations. In order to ensure a robust approach to the calculation of net short positions, it is necessary to apply a more restrictive approach to specifying long positions than short positions in shares. Because the value of some financial instruments depend on variations in the price of underlying instruments, it is necessary to specify how to account for this. The delta-adjusted methodology is specified since it is a commonly accepted practice.

(5) Net short positions are calculated by reference to the long and short positions held by a natural or legal person. However long and short positions may be held by different entities within a group or in different funds managed by a fund manager. Large net short positions may be concealed by distributing them amongst entities within a group or amongst different funds. To reduce avoidance and ensure that the notifications and reporting of short positions provide an accurate and representative picture, more detailed provisions specifying how the calculation of net short positions should be performed for entities within a group and for fund managers are required. To give effect to these provisions it is necessary to define the meaning of investment strategy in order to clarify which entities' short positions in a group and which funds' short positions should be aggregated. It is also necessary to define management activities to clarify which funds' short positions should be aggregated. In order to ensure that the notifications are made, it is necessary to specify which entities within a group or in different funds are required to perform the calculations and make the notifications.

(6) Regulation (EU) No 236/2012 imposes restrictions on entering into uncovered sovereign credit default swap transactions but permits sovereign covered credit default swaps entered into for legitimate hedging purposes. A wide variety of assets and liabilities may be hedged using sovereign credit default swaps but distinguishing between legitimate hedging and speculation may be difficult in many cases. Detailed and additional specification of the cases in which a sovereign credit default swap can be considered to be covered is therefore required. Where a quantitative measure of correlation needs to be specified on a consistent basis, a simple, widely accepted and understood measure such as the Pearson's correlation coefficient should be used, calculated as the covariance of two variables divided by the product of their standard deviations. Matching assets and liabilities to create a perfect hedge is in practice difficult due to the diverse characteristics of different assets and liabilities as well as volatility in their values. Regulation (EU) No 236/2012 requires a proportionate approach to measures and when defining an uncovered credit default swap, it is therefore necessary to specify how a proportionate approach should be applied to assets and liabilities hedged by a covered credit default swap. Whereas Regulation (EU) No 236/2012 does not prescribe a specific degree of correlation necessary for a covered position in a sovereign credit default swap, it is necessary to specify that correlation should be meaningful.

(7) Regulation (EU) No 236/2012 requires that a natural or legal person holding a net short position in sovereign debt in excess of a threshold should notify the relevant competent authority of these positions. An appropriate specification of this threshold is therefore required. Minimal values that would not have any significant impact on the relevant sovereign debt market should not require notification and the threshold should take into account, inter alia, the liquidity of each individual bond market and the stock of outstanding sovereign debt as well as the objectives of this measure.

(8) The data required for the calculation of notification thresholds for net short positions relating to issued sovereign debt will not be available at the date of entry into force of this Regulation. Therefore the two criteria used to set the initial notification thresholds at the date of publication should be firstly the total amount of outstanding issued sovereign debt of the sovereign issuer and secondly the existence of a liquid futures market for that sovereign debt. Revised thresholds should be adopted when the relevant data on all the criteria is available.

(9) Where the liquidity in a sovereign debt market falls below a certain threshold, the restrictions on investors entering into uncovered short sales of sovereign debt may be lifted temporarily for the purpose of stimulating liquidity in that market. Where there is a significant fall in the value of a financial instrument on a trading venue, competent authorities may prohibit, restrict short selling or otherwise limit transactions in that instrument. There are a wide variety of instruments and it is necessary to specify the threshold for each of the different classes of financial instruments taking into account, differences such as those between the instruments and the different volatilities of their respective markets.

(10) No threshold for a significant fall in the value of the unit price of a listed UCITS, except for exchange-traded funds that are UCITS, is specified in this Regulation as although the price may vary freely in the trading venue, it is subject to a rule in Directive 2009/65/EC of the European Parliament and of the Council of 13 July 2009 on the coordination of laws, regulations and administrative provisions relating to undertakings for collective investment in transferable securities (UCITS) ([1]) which keeps the prices close to the net asset value of the UCITS. No threshold for a significant fall in the value of derivatives is specified other than those specified in this Regulation.

---

([1]) OJ L 302, 17.11.2009, p. 32.

(11) This Regulation clarifies the intervention powers of both the relevant competent authorities and the European Securities Markets Authority (ESMA) established and exercising its powers in accordance with Regulation (EU) No 1095/2010 of the European Parliament and of the Council (¹) as regards adverse events or developments. A list of these events is required to ensure a consistent approach while permitting appropriate action to be taken where unforeseen adverse events or developments occur.

(12) For reasons of legal certainty it is necessary that this Regulation enter into force on the same day as Commission Delegated Regulation (EU) No 919/2012 (²),

HAS ADOPTED THIS REGULATION:

## CHAPTER I
## GENERAL

### Article 1
### Subject matter

This Regulation lays down detailed rules supplementing the following Articles of Regulation (EU) No 236/2012 with regard to:

— Article 2(2) of Regulation (EU) No 236/2012 further specifying the definitions of ownership and short sale,

— Article 3(7) of Regulation (EU) No 236/2012 further specifying cases of and the method for calculating a net short position and the definition of holding,

— Article 4(2) of Regulation (EU) No 236/2012 further specifying uncovered positions in sovereign credit default swaps and the calculation methods for groups and fund management activities,

— Article 7(3) of Regulation (EU) No 236/2012 further specifying the notification threshold for significant short positions in sovereign debt,

— Article 13(4) of Regulation (EU) No 236/2012 further specifying the liquidity threshold for suspending restrictions on short sales of sovereign debt,

— Article 23(7) of Regulation (EU) No 236/2012 further specifying the meaning of significant falls in value of financial instruments other than liquid shares,

— Article 30 of Regulation (EU) No 236/2012 further specifying criteria and factors to be taken into account in determining in which cases the adverse events or developments referred to in Articles 18 to 21 and Article 27 and the threats referred to in point (a) of Article 28(2) of Regulation (EU) No 236/2012 arise.

### Article 2
### Definitions

For the purposes of this Regulation, the following definitions shall apply:

(a) 'group' means those legal entities which are controlled undertakings within the meaning of Article 2(1)(f) of Directive 2004/109/EC of the European Parliament and of the Council (³) and the single natural or legal person that controls such undertaking;

(b) 'supra-national issuer' means an issuer within the meaning of Article 2(1)(d)(i), (iv), (v) and (vi) of Regulation (EU) No 236/2012.

## CHAPTER II
## SUPPLEMENTARY SPECIFICATION OF DEFINITIONS PURSUANT TO ARTICLE 2(2) AND ARTICLE 3(7)(a)

### Article 3
### Specification of the term 'ownership' and defining a short sale

1. For the purposes of defining a short sale, the determination, where applicable, of whether a natural or legal person is considered to own a financial instrument when there are legal or beneficial ownerships thereof shall be made in accordance with the law applicable to the relevant short sale of that share or debt instrument. Where natural or legal persons are the beneficial owners of a share or debt instrument, that share or debt instrument shall be deemed to be owned by the ultimate beneficial owner, including where the share or debt instrument is held by a nominee. For the purposes of this Article, the beneficial owner shall be the investor who assumes the economic risk of acquiring a financial instrument.

2. For the purposes of points (i), (ii) and (iii) of Article 2(1)(b) of Regulation (EU) No 236/2012, and a 'short sale' within the meaning of Article 2(1)(b) of Regulation (EU) No 236/2012, does not include:

(a) the sale of financial instruments that have been transferred under a securities lending or repo agreement, provided that the securities will either be returned or the transferor recalls the securities so that settlement can be effected when it is due;

---
(¹) OJ L 331, 15.12.2010, p. 84.
(²) See page 16 of this Official Journal.

(³) OJ L 390, 31.12.2004, p. 38.

(b) the sale of a financial instrument by a natural or legal person who has purchased the financial instrument prior to the sale but has not taken delivery of that financial instrument at the time of the sale provided that the financial instrument will be delivered at such time that the settlement may be effected when due;

(c) the sale of a financial instrument by a natural or legal person who has exercised an option or a similar claim on that financial instrument, provided that the financial instrument will be delivered at such a time that the settlement may be effected when due.

*Article 4*

**Holding**

A natural or legal person is considered to hold a share or debt instrument for the purposes of Article 3(2)(a) of Regulation (EU) No 236/2012 in the following circumstances:

(a) the natural or legal person owns the share or debt instrument in accordance with Article 3(1);

(b) an enforceable claim to be transferred ownership of the share or debt instrument to the natural or legal person in accordance with the law applicable to the relevant sale.

CHAPTER III

NET SHORT POSITIONS PURSUANT TO ARTICLE 3(7)(b)

*Article 5*

**Net short positions in shares — long positions**

1.   The holding of a share through a long position in a basket of shares shall, in relation to that share, also be taken into account to the extent that that share is represented in that basket.

2.   Any exposure through a financial instrument other than the share which confers a financial advantage in the event of an increase in the price of the share as set out in Article 3(2)(b) of Regulation (EU) No 236/2012 means any exposure to share capital through any one or more of the instruments listed in Annex I, Part 1.

The exposure referred to in the first subparagraph depends on the value of the share in respect of which a net short position has to be calculated, and which confers a financial advantage in the event of an increase in the price or value of the share.

*Article 6*

**Net short positions in shares — short positions**

1.   A short sale of a share through the short sale of a basket of shares shall, in relation to that share, also be taken into account to the extent that that share is represented in the basket.

2.   For the purposes of Article 3(1)(a) and 3(3) of Regulation (EU) No 236/2012 where a position in a financial instrument, including those listed in Annex I, Part 1, confers a financial advantage in the event of a decrease in the price or value of the share, this position shall be taken into account in calculating the short position.

*Article 7*

**Net short positions in shares — general**

The following criteria shall be taken into account for the purposes of net short positions referred to in Articles 5 and 6:

(a) it is irrelevant whether a cash settlement or physical delivery of underlying assets has been agreed;

(b) short positions on financial instruments that give rise to a claim to unissued shares, and subscription rights, convertible bonds and other comparable instruments shall not be considered as short positions when calculating a net short position.

*Article 8*

**Net short position in sovereign debt — long positions**

1.   For the purposes of this Article and Annex II, pricing shall mean the yield, or where there is no yield for one of the relevant assets or liabilities or the yield is an inappropriate comparator between the relevant assets or liabilities, it shall mean the price. The holding of a sovereign debt instrument through a long position in a basket of sovereign debt instruments of different sovereign issuers shall in relation to that sovereign debt, also be taken into account to the extent that that sovereign debt is represented in that basket.

2.   For the purpose of Article 3(2)(b) of Regulation (EU) No 236/2012, any exposure through an instrument other than the sovereign debt which confers a financial advantage in the event of an increase in the price of the sovereign debt means any exposure through any one or more of the instruments listed in Annex I, Part 2 provided always that their value depends on the value of the sovereign debt in respect of which a net short position has to be calculated, and which confers a financial advantage in the event of an increase in the price or value of the sovereign debt.

3.   Provided always that they are highly correlated in accordance with Article 3(5) of Regulation (EU) No 236/2012 and with paragraphs 4 and 5, all net holdings of sovereign debt of a sovereign issuer which is highly correlated with the pricing of the sovereign debt in any short position shall be included in the calculation of the long position. Sovereign debt instruments from issuers located outside the Union shall not be included.

4. For assets with a liquid market price, a high correlation between the pricing of a debt instrument of another sovereign issuer and the pricing of the debt of the given sovereign issuer shall be measured on a historical basis using daily accumulated weighted data for the 12-month period preceding the position in the sovereign debt. For assets for which there is no liquid market or where the price history is less than 12 months, an appropriate proxy of similar duration shall be used.

5. For the purposes of Article 3(5) of Regulation (EU) No 236/2012, a debt instrument and a issued sovereign debt shall be considered to be highly correlated where the Pearson's correlation coefficient is at least 80 % between the pricing of the debt instrument of another sovereign issuer and the pricing of the given sovereign debt for the relevant period.

6. If the position subsequently ceases to be highly correlated based on a rolling 12-month time-frame, then the sovereign debt of the previously highly correlated sovereign issuer shall no longer be taken into account when calculating a long position. However, positions shall not be deemed to cease to be highly correlated where there is a temporary fall in the level of correlation of the sovereign debt for no more than three months below the level set out in paragraph 4, provided that the correlation coefficient is at least of 60 % throughout this three-month period.

7. In calculating net short positions, it shall be irrelevant whether a cash settlement or physical delivery of underlying assets has been agreed.

*Article 9*

**Net short positions in sovereign debt — short positions**

1. A short sale of sovereign debt through the sale of a basket of sovereign debt shall in relation to that sovereign debt also be taken into account to the extent that that sovereign debt is represented in the basket.

2. For the purposes of Article 3(1)(a) and 3(3) of Regulation (EU) No 236/2012 where a position in an instrument, including those listed in Article 8(2), confers a financial advantage in the event of a decrease in the price or value of the sovereign debt, this position shall be taken into account in calculating the short position.

3. Any sovereign credit default swap referenced to a sovereign issuer shall be included in the calculation of net short positions in that sovereign debt. Sales of sovereign credit default swaps shall be considered to be long positions and purchases of sovereign credit default swaps shall be considered to be short positions.

4. If a sovereign credit default swap position is hedging a risk other than the referenced sovereign debt, the value of the hedged risk cannot be treated as a long position for the purposes of calculating whether a natural or legal person has a net short position in the issued sovereign debt of a sovereign issuer.

5. In calculating net short positions, it is irrelevant whether cash settlement or physical delivery of underlying assets has been agreed.

*Article 10*

**Method of calculation of net short positions in relation to shares**

1. For the purposes of calculating the net short position in shares pursuant to Article 3(4) of Regulation (EU) No 236/2012, the delta-adjusted model for shares set out in Annex II shall be used.

2. Any calculations by a natural or legal person of a long and short position in relation to the same shares shall use the same methods.

3. The calculation of net short positions shall take into account transactions in all financial instruments, whether on or outside a trading venue, that confer a financial advantage in the event of a change in price or value of the share.

*Article 11*

**Calculation of net short positions for sovereign debt**

1. For the purposes of Article 3(5) of Regulation (EU) No 236/2012, net short positions in sovereign debt shall be calculated by taking into account transactions in all financial instruments that confer a financial advantage in the event of a change in the price or yield of the sovereign debt. The delta-adjusted model for sovereign debt set out in Annex II shall be used.

2. In accordance with Article 3(6) of Regulation (EU) No 236/2012 positions shall be calculated for every sovereign issuer in which a natural or legal person holds a short position.

CHAPTER IV

**NET SHORT POSITIONS IN FUNDS OR GROUPS PURSUANT TO ARTICLE 3(7)(c)**

*Article 12*

**Method of calculating positions for management activities related to several funds or managed portfolios**

1. The calculation of the net short position in a particular issuer shall be made in accordance with Article 3(7)(a) and (b) of Regulation (EU) No 236/2012 for each individual fund, irrespective of its legal form and for each managed portfolio.

2. For the purposes of Article 12 and Article 13, the following definitions shall apply:

(a) 'investment strategy' means a strategy that is pursued by a management entity, regarding a particular issuer, that aims to have either a net short or a net long position taken through transactions in various financial instruments issued by or that relate to that issuer;

(b) 'management activities' means management of funds irrespective of their legal form and portfolio management in accordance with mandates given by clients on a discretionary client-by-client basis where such portfolios include one or more financial instruments;

(c) 'management entity' means a legal person or entity, including a division, unit or department that manages, on a discretionary basis, funds or portfolios pursuant to a mandate.

3. The management entity shall aggregate the net short positions of the funds and portfolios under its management for which the same investment strategy is pursued in relation to a particular issuer.

4. When applying the method described above, the management entity shall:

(a) take into account the positions of the funds and portfolios the management of which has been delegated by a third party;

(b) exclude the positions of the funds and portfolios the management of which it has delegated to a third party.

The management entity shall report, and disclose where required, the net short position that results from paragraphs 3 and 4 when it reaches or exceeds a relevant notification or disclosure threshold in accordance with Articles 5 to 11 of Regulation (EU) No 236/2012.

5. Where a single legal entity is performing management activities together with other non-management activities, it shall apply the method described set out in paragraphs 1 to 3 to its management activities only and report, and disclose the resulting net short positions.

6. For its non-management activities that give rise to the holding of short positions by the entity for its own account, that single legal entity shall perform the calculation of the net short position in a particular issuer in accordance with Article 3(7)(a) and (b) of Regulation (EU) No 236/2012 and report, and disclose the resulting net short positions.

### Article 13

**Method of calculating positions for legal entities within a group that have long or short positions in relation to a particular issuer**

1. The calculation of the net short position shall be made in accordance with Article 3(7)(a) and (b) of Regulation (EU) No 236/2012 for each legal entity constituting the group. The relevant legal entity, or on its behalf, the group it belongs to, shall report, and disclose, the net short position in a particular issuer when it reaches or exceeds a notification or disclosure threshold. Where one or more of the legal entities constituting the group are management entities, they shall apply the method described in Article 12(1) to 12(4) for fund and portfolio management activities.

2. The net short and long positions of all the legal entities constituting the group shall be aggregated and netted, with the exception of the positions of the management entities that perform management activities. The group shall report, and disclose where relevant, the net short position in a particular issuer when it reaches or exceeds a relevant notification or disclosure threshold.

3. When a net short position reaches or crosses the notification threshold in accordance with Article 5 or disclosure threshold in accordance with Article 6 of Regulation (EU) No 236/2012 then a legal entity within the group shall report, and disclose in accordance with Articles 5 to 11 of Regulation (EU) No 236/2012 the net short position in a particular issuer calculated according to paragraph 1 provided that no net short position at group level calculated according to paragraph 2 reaches or crosses a notification or disclosure threshold. A legal entity designated for this purpose shall report, and disclose where relevant, the net short position at group level in a particular issuer calculated according to paragraph 2 when:

(i) no notification or disclosure threshold is reached or crossed by any legal entity within the group;

(ii) a notification or disclosure threshold is reached or crossed simultaneously both by the group itself and any legal entity within that group.

### CHAPTER V

**COVERED SOVEREIGN CREDIT DEFAULT SWAPS PURSUANT TO ARTICLE 4(2)**

### Article 14

**Cases which are not uncovered sovereign credit default swap positions**

1. In the following cases a sovereign credit default swap position shall not be considered an uncovered position in accordance with Article 4(1) of Regulation (EU) No 236/2012.

(a) In respect of hedges for the purpose of Article 4(1)(b) of Regulation (EU) No 236/2012, the sovereign credit default swap shall not be considered an uncovered position in accordance with Article 4(1) of Regulation (EU) No 236/2012 and shall serve to hedge against the risk of decline in the value of assets or liabilities correlated with the risk of the decline of the value of the sovereign debt which the credit default swap references and where those assets or liabilities refer to public or private sector entities in the same Member State.

(b) A sovereign credit default swap position, in which assets or liabilities refer to public or private sector entities in the same Member State as the reference sovereign for the credit default swap, shall not be considered an uncovered position in accordance with Article 4(1) of Regulation (EU) No 236/2012 where it:

   (i) references a Member State, including any ministry, agency or special purpose vehicle of the Member State, or in the case of a Member State that is a federal state, one of the members making up the federation;

   (ii) is used to hedge any assets or liabilities meeting the correlation test set out in Article 18.

(c) A sovereign credit default swap position, where the assets or liabilities refer to a sovereign issuer in which the reference sovereign for the credit default swap is a guarantor or shareholder, shall not be considered an uncovered position in accordance with Article 4(1) of Regulation (EU) No 236/2012 where it:

   (i) references a Member State;

   (ii) is used to hedge any assets or liabilities meeting the correlation test set out in Article 18.

2. For the purposes of point (a) of paragraph 1, a correlation shall exist between the value of the asset or liability being hedged and the value of the referenced sovereign debt as set out in Article 18.

*Article 15*

**Cases which are not uncovered sovereign credit default swap positions where the obligor is established or the asset or liability is located in more than one Member State**

1. Where the obligor of, or counterparty to, an asset or liability is established in more than one Member State a sovereign credit default swap position shall not be considered an uncovered position in the following cases, in accordance with Article 4(1) of Regulation (EU) No 236/2012, and provided that the correlation test in Article 18 of this Regulation is met in each case:

(a) where there is a parent company in one Member State and a subsidiary in another Member State and a loan has been made to the subsidiary. Where there is either explicit or implicit credit support to the subsidiary by the parent, it shall be permissible to purchase sovereign credit default swaps in the Member State of the parent rather than the subsidiary;

(b) where there is a parent holding company which own or controls a subsidiary operating company in a different Member States. If the parent company is the issuer of the bond but the assets and revenues that are hedged are owned by the subsidiary, it shall be permissible to buy sovereign credit default swaps referenced to the Member State of the subsidiary;

(c) to hedge an exposure to a company in one Member State which has invested in the sovereign debt of a second Member State to the extent that that company would be significantly impacted in the event of a significant fall in the value of the sovereign debt of the second Member State, provided that the company is established in both Member States. Where the correlation between this risk and the debt of the second Member State is greater than the correlation between this risk and the debt of the Member State in which the company is established it shall be permissible to buy sovereign credit default swaps referenced to the second Member State.

2. A sovereign credit default swap position shall not be considered an uncovered position in the following cases, in accordance with Article 4(1) of Regulation (EU) No 236/2012, and provided that the correlation test in Article 18 of this Regulation is met in each case:

(a) where the obligor of, or counterparty to, an asset or liability being hedged is a company which has operations across the Union or where the exposure being hedged relates to the Union or the Member States which have the euro as their currency, it shall be permissible to hedge it with an appropriate European or euro area index of sovereign bond credit default swaps;

(b) where the counterparty to an asset or liability being hedged is a supra-national issuer, it shall be permissible to hedge the counterparty risk with an appropriately chosen basket of sovereign credit default swaps referencing that entity's guarantors or shareholders.

*Article 16*

**Justification of uncovered sovereign credit default swap positions**

Any natural or legal person entering into a sovereign credit default swap position shall, on the request of the competent authority:

(a) justify to that competent authority which of the cases set out in Article 15 were fulfilled at the time the position was entered into;

(b) demonstrate to that competent authority compliance with the correlation test in Article 18 and the proportionality requirements in Article 19 in respect of that sovereign credit default swap position at any time that they hold that sovereign credit default swap.

*Article 17*

**Hedged assets and liabilities**

The following are cases where assets and liabilities may be hedged through a sovereign credit default swap position, provided the conditions set out in Articles 15 and 18 and in Regulation (EU) No 236/2012 are met:

(a) a long position in the sovereign debt of the relevant issuer;

(b) any position or portfolio used in the context of hedging exposures to the sovereign issuer referenced in the credit default swaps;

(c) any assets or liabilities which refer to public sector entities in the Member State whose sovereign debt is referenced in the credit default swap. This includes exposures to central, regional and local administration, public sector entities or any exposure guaranteed by the referred entity and may include financial contracts, a portfolio of assets or financial obligations, interest rate or currency swap transactions where the sovereign credit default swap is used as a counterparty risk management tool for hedging exposure on financial or foreign trade contracts;

(d) exposures to private sector entities established in the Member State which is referenced in the sovereign credit default swap. The exposures in question include but are not limited to loans, counterparty credit risk (including potential exposure when regulatory capital is required for such exposure), receivables and guarantees. The assets and liabilities include but are not limited to financial contracts, a portfolio of assets or financial obligations, interest rate or currency swap transactions where the sovereign credit default swap is used as a counterparty risk management tool for hedging exposure on financial contracts or trade finance exposures;

(e) any indirect exposures to any of the above entities obtained through exposure to indices, funds or special purpose vehicles.

*Article 18*

**Correlation tests**

1. The correlation test referred to in this Chapter shall be met in either of the following cases:

(a) the quantitative correlation test shall be met by showing a Pearson's correlation coefficient of at least 70 % between the price of the assets or liabilities and the price of the sovereign debt calculated on a historical basis using data for at least a period of 12 months of trading days immediately preceding the date when the sovereign credit default swap position is taken out;

(b) the qualitative correlation shall be met by showing meaningful correlation, which means a correlation that is based on appropriate data and is not evidence of a merely temporary dependence. The correlation shall be calculated on a historical basis using data for the 12 months of trading days before the sovereign credit default swap position is taken out, weighted to the most recent time. A different time-frame shall be used if it is demonstrated that the conditions prevailing in that period were similar to those at the time that the sovereign credit default swap position is to be taken out or which would occur in the period of the exposure being hedged. For assets for which there is not a liquid market price or where there is not a sufficiently long price history, an appropriate proxy shall be used.

2. The correlation test in paragraph 1 shall be deemed to have been met if it can be demonstrated that:

(a) the exposure being hedged relates to an enterprise which is owned by the sovereign issuer or where the sovereign issuer owns a majority of its voting share capital or whose debts are guaranteed by the sovereign issuer;

(b) the exposure being hedged relates to a regional, local or municipal government of the Member State;

(c) the exposure being hedged relates to an enterprise whose cash flows are significantly dependent on contracts from a sovereign issuer or a project which is funded or significantly funded or underwritten by a sovereign issuer, such as an infrastructure project.

3. The relevant party shall justify that the correlation test was met at the time that the sovereign credit default swap position was entered into upon request by the relevant competent authority.

*Article 19*

**Proportionality**

1. In determining whether the size of the sovereign credit default swap position is proportionate to the size of the exposures hedged, where a perfect hedge is not possible, an exact match is not required and limited over-provision shall be permitted in accordance with paragraph 2. The relevant party shall justify upon request to the competent authority why an exact match was not possible.

2. Where justified by the nature of the assets and liabilities being hedged and their relationship to the value of the obligations of the sovereign which are within the scope of the credit default swap, a greater value of sovereign credit default swap shall be held to hedge a given value of exposures. However, this shall only be permitted where it is demonstrated

that a larger value of sovereign credit default swap is necessary to match a relevant measure of risk associated with the reference portfolio, taking into account as the following factors:

(a) the size of the nominal position;

(b) the sensitivity ratio of the exposures to the obligations of the sovereign which are within the scope of the credit default swap;

(c) whether the hedging strategy involved is dynamic or static.

3. It is the responsibility of the position holder to ensure that its sovereign credit default swap position remains proportionate at all times and that the duration of the sovereign credit default swap position is aligned as closely as practicable given prevailing market conventions and liquidity with the duration of the exposures being hedged or the period during which the person intends to hold the exposure. If the exposures being hedged by the credit default swap position are liquidated or redeemed, they must either be replaced by equivalent exposures or the credit default swap position must be reduced or otherwise disposed of.

4. Provided that a sovereign credit default swap position was covered at the time it was entered into, it shall not be treated as becoming uncovered where the sole reason for the position becoming uncovered is a fluctuation in the market value of the hedged exposures or the value of the sovereign credit default swap.

5. In all circumstances, where parties accept a sovereign credit default swap position as a consequence of their obligations as members of a central counterparty which clears sovereign credit default swap transactions and as a result of the operation of the rules of that central counterparty, such a position shall be treated as involuntary and not as a position that the party has entered into and so shall not be considered uncovered pursuant to Article 4(1) of Regulation (EU) No 236/2012.

*Article 20*

**Method of calculation of an uncovered sovereign credit default swap position**

1. The calculation of a natural or legal person's sovereign credit default swap position shall be its net position.

2. When calculating the value of the eligible risks hedged or to be hedged by a sovereign credit default swap position a distinction shall be made between static and dynamic hedging strategies. For static hedging, such as direct exposures to sovereign or public sector bodies in the sovereign, the metric used shall be the jump to default measure of the loss if the entity to which the position holder is exposed defaults. The resulting value shall then be compared against the net notional value of the credit default swap position.

3. When calculating the value of market value adjusted risks for which a dynamic hedging strategy is required, the calculations must be undertaken on a risk-adjusted rather than notional basis, taking into account the extent to which an exposure might increase or decrease during its duration and the relative volatilities of the assets and liabilities being hedged and of the referenced sovereign debt. A beta adjustment shall be used if the asset or liability for which the credit default swap position is being used as a hedge is different from the reference asset of the credit default swap.

4. Indirect exposures to risks, such as through indices, funds, special purpose vehicles, and to credit default swap positions shall be taken into account in proportion to the extent the reference asset, liability or credit default swap is represented in the index, fund or other mechanism.

5. The value of the eligible portfolio of assets or liabilities to be hedged shall be deducted from the value of the net credit default swaps position held. If the resulting number is positive the position shall be considered to be an uncovered credit default swaps position in accordance with Article 4(1) of Regulation (EU) No 236/2012.

CHAPTER VI

**NOTIFICATION THRESHOLDS FOR NET SHORT POSITIONS IN SOVEREIGN DEBT PURSUANT TO ARTICLE 7(3)**

*Article 21*

**Notification thresholds for net short positions relating to the issued sovereign debt**

1. The relevant measure for the threshold that triggers notification to the relevant competent authority of net short positions in the issued sovereign debt of a sovereign issuer shall be a percentage of the total amount of outstanding issued sovereign debt for each sovereign issuer.

2. The reporting threshold shall be a monetary amount. This monetary amount shall be fixed by applying the percentage threshold to the outstanding sovereign debt of the sovereign issuer and rounding up to the nearest million euro.

3. The monetary amount implied by the percentage threshold shall be revised and updated quarterly in order to reflect changes in the total amount of outstanding issued sovereign debt of each sovereign issuer.

4. The monetary amount implied by the percentage threshold and the total amount of outstanding issued sovereign debt shall be calculated in accordance with the method of calculation for net short positions in sovereign debt.

5. The initial amounts and additional incremental levels for sovereign issuers shall be determined on the basis of the following factors:

(a) the thresholds shall not require notifications of net short positions of minimal value in any sovereign issuers;

(b) the total amount of outstanding sovereign debt for a sovereign issuer and average size of positions held by market participants relating to the sovereign debt of that sovereign issuer;

(c) the liquidity of the sovereign debt market of each sovereign issuer, including, where appropriate, the liquidity of the futures market for that sovereign debt.

6. Taking into account the factors in paragraph 5, the relevant notification thresholds for the initial amount to be considered for each sovereign issuer is a percentage that equals 0,1 % or 0,5 % of the total amount of outstanding issued sovereign debt. The relevant percentage to be applied for each issuer shall be determined in application of the criteria described in paragraph 5, so that each sovereign issuer is assigned one of the two percentage thresholds used to calculate the monetary amounts that will be relevant for notification.

7. The two initial threshold categories at the date of entry into force of this Regulation shall be:

(a) an initial threshold of 0,1 % applicable where the total amount of the outstanding issued sovereign debt is between 0 and 500 billion euro;

(b) a threshold of 0,5 % applicable where the total amount of the outstanding issued sovereign debt is above 500 billion euro or where there is a liquid futures market for the particular sovereign debt.

8. The additional incremental levels shall be set at 50 % of the initial thresholds and shall be:

(a) each 0,05 % above the initial notification threshold of 0,1 % starting at 0,15 %;

(b) each 0,25 % above the initial threshold of 0,5 % starting at 0,75 %.

9. The sovereign issuer shall move to the appropriate threshold group where there has been a change in the sovereign debt market of the sovereign issuer and, applying the factors specified in paragraph 5, that change has subsisted for at least one calendar year.

CHAPTER VII

PARAMETERS AND METHODS FOR CALCULATING LIQUIDITY THRESHOLD FOR SUSPENDING RESTRICTIONS ON SHORT SALES OF SOVEREIGN DEBT PURSUANT TO ARTICLE 13(4)

*Article 22*

**Methods for calculating and determining the threshold of liquidity for suspending restrictions on short sales in sovereign debt**

1. The measure of liquidity of the issued sovereign debt to be used by each competent authority is the turnover, defined as the total nominal value of debt instruments traded, in relation to a basket of benchmarks with different maturities.

2. The temporary suspension of restrictions on uncovered short sales in sovereign debt may be triggered when the turnover of a month falls below the fifth percentile of the monthly volume traded in the previous 12 months.

3. To perform these calculations each competent authority shall use the representative data readily available, from one or more trading venues, from over the counter (OTC) trading or from both, and inform ESMA of the data used thereafter.

4. Before the competent authorities exercise the power to lift the restrictions on short selling related to sovereign debt, they shall ensure that the significant drop in liquidity is not the result of seasonal effects on liquidity.

CHAPTER VIII

SIGNIFICANT FALL IN VALUE FOR FINANCIAL INSTRUMENTS OTHER THAN LIQUID SHARES PURSUANT TO ARTICLE 23

*Article 23*

**Significant fall in value for financial instruments other than liquid shares**

1. In respect of a share other than a liquid share, a significant fall in value during a single trading day compared to the closing price of the previous trading day means:

(a) a decrease in the price of the share of 10 % or more where the share is included in the main national equity index and is the underlying financial instrument for a derivative contract admitted to trading on a trading venue;

(b) a decrease in the price of the share of 20 % or more where the share price is EUR 0,50 or higher, or the equivalent in the local currency;

(c) a decrease in the price of the share of 40 % or more in all other cases.

2. An increase of 7 % or more in the yield across the yield curve during a single trading day for the relevant sovereign issuer shall be considered a significant fall in value for a sovereign bond.

3.   An increase of 10 % or more in the yield of a corporate bond during a single trading day shall be considered a significant fall in value for a corporate bond.

4.   A decrease of 1,5 % or more in the price of a money-market instrument during a single trading day shall be considered a significant fall in value for a money-market instrument.

5.   A decrease of 10 % or more in the price of an exchange-traded fund during a single trading day shall be considered a significant fall in value for an exchange-traded fund, including exchange-traded funds that are UCITS. A leveraged exchange-traded fund shall be adjusted by the relevant leverage ratio to reflect a 10 % fall in the price of an equivalent unleveraged direct exchange-traded fund. A reverse exchange-traded fund shall be adjusted by a factor of -1 to reflect a 10 % fall in the price of an equivalent unleveraged direct exchange-traded fund.

6.   Where a derivative, including financial contracts for difference, is traded on a trading venue and has as its only underlying financial instrument, a financial instrument for which a significant fall in value is specified in this Article and Article 23(5) of Regulation (EU) No 236/2012, a significant fall in value in that derivative instrument shall be considered to have occurred when there has been a significant fall in that underlying financial instrument.

CHAPTER IX

ADVERSE EVENTS OR DEVELOPMENTS PURSUANT TO ARTICLE 30

*Article 24*

**Criteria and factors to be taken into account in determining when adverse events or developments and threats arise**

1.   For the purposes of Articles 18 to 21 of Regulation (EU) No 236/2012 adverse events or developments that may constitute a serious threat to the financial stability or market confidence in the Member State concerned or in one or more other Member States pursuant to Article 30 of Regulation (EU) No 236/2012 include any act, result, fact, or event that is or could reasonably be expected to lead to the following:

(a) serious financial, monetary or budgetary problems which may lead to financial instability concerning a Member State or a bank and other financial institutions deemed important to the global financial system such as insurance companies, market infrastructure providers and asset management companies operating within the Union when this may threaten the orderly functioning and integrity of financial markets or the stability of the financial system in the Union;

(b) a rating action or a default by any Member State or banks and other financial institutions deemed important to the global financial system such as insurance companies, market infrastructure providers and asset management companies operating within the Union that causes or could reasonably be expected to cause severe uncertainty about their solvency;

(c) substantial selling pressures or unusual volatility causing significant downward spirals in any financial instrument related to any banks and other financial institutions deemed important to the global financial system such as insurance companies, market infrastructure providers and asset management companies operating within the Union and sovereign issuers as the case may be;

(d) any relevant damage to the physical structures of important financial issuers, market infrastructures, clearing and settlement systems, and supervisors which may adversely affect markets in particular where such damage results from a natural disaster or terrorist attack;

(e) any relevant disruption in any payment system or settlement process, in particular when it is related to interbank operations, that causes or may cause significant payments or settlement failures or delays within the Union payment systems, especially when these may lead to the propagation of financial or economic stress in a bank and other financial institutions deemed important to the global financial system such as insurance companies, market infrastructure providers and asset management companies or in a Member State.

2.   For the purposes of Article 27, ESMA shall take into account the possibility of any spillovers or contagion to other systems or issuers and, especially, the existence of any type of self-fulfilling phenomena when considering the criteria in paragraph 1.

3.   For the purposes of Article 28(2)(a), a threat to the orderly functioning and integrity of financial markets or to the stability of the whole or part of the financial system in the Union shall mean:

(a) any threat of serious financial, monetary or budgetary instability concerning a Member State or the financial system within a Member State when this may seriously threaten the orderly functioning and integrity of financial markets or the stability of the whole or part of the financial system in the Union;

(b) the possibility of a default by any Member State or supra-national issuer;

(c) any serious damage to the physical structures of important financial issuers, market infrastructures, clearing and settlement systems, and supervisors which may seriously affect cross-border markets in particular where such damage results from a natural disaster or terrorist attack when this may seriously threaten the orderly functioning and integrity of financial markets or the stability of the whole or part of the financial system in the Union;

(d) any serious disruption in any payment system or settlement process, in particular when it is related to interbank operations, that causes or may cause significant payments or settlement failures or delays within the Union cross-border payment systems, especially when these may lead to the propagation of financial or economic stress in the whole or part of the financial system in the Union.

*Article 25*

**Entry into force**

This Regulation shall enter into force on the third day following that of its publication in the *Official Journal of the European Union*.

It shall apply from 1 November 2012.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Brussels, 5 July 2012.

*For the Commission*
*The President*
José Manuel BARROSO

# ANNEX I

## PART 1

*Article 5 and 6*

— Options,

— Covered warrants,

— Futures,

— Index-related instruments,

— Contracts for difference,

— Shares/units of exchange-traded funds,

— Swaps,

— Spread bets,

— Packaged retail or professional investment products,

— Complex derivatives,

— Certificates linked to shares,

— Global depositary receipts.

## PART 2

*Article 7*

— Options,

— Futures,

— Index-related instruments,

— Contracts for difference,

— Swaps,

— Spread bets,

— Complex derivatives,

— Certificates linked to sovereign debt.

ANNEX II

PART 1

**The delta-adjusted model for shares**

*Article 10*

1. Any derivative and cash position shall be accounted for on a delta-adjusted basis, with cash position having delta 1. In order to calculate the delta of a derivative, investors shall take into account the current implied volatility of the derivative and the closing price or last price of the underlying instrument. In order to calculate a net short position including equity or cash investments and derivatives, natural or legal persons shall calculate the individual delta-adjusted position of every derivative that is held in the portfolio, adding or subtracting all cash positions as appropriate.

2. A nominal cash short position may not be offset by an equivalent nominal long position taken in derivatives. Delta-adjusted long positions in derivatives may not compensate identical nominal short positions taken in other financial instruments due to the delta adjustment. Natural or legal persons entering into derivatives contracts giving rise to net short positions that must be notified or published pursuant to Articles 5 to 11 of Regulation (EU) No 236/2012 shall calculate net short position changes in their portfolio arising from changes in the delta.

3. Any transaction that confers a financial advantage in the event of a change in price or value of the share held as part of a basket, index or exchange-traded fund shall be included when calculating the position in each individual share. Positions on these financial instruments shall be calculated taking into account the weight of that share in the underlying basket, index or fund. Natural or legal persons shall perform calculations in these financial instruments in accordance with Article 3(3) of Regulation (EU) No 236/2012.

4. The net short position shall be calculated by netting long and short delta-adjusted positions in a given issuer.

5. For the issued share capital, when issuers have several share classes, the total number of shares issued in each class and shall be taken into account and added up.

6. The calculation of net short positions shall take into account changes in the share capital of the issuer that may trigger or eliminate notification obligations in accordance with Article 5 of Regulation (EU) No 236/2012.

7. New shares issued from a capital increase shall be accounted for in the calculation of the total issued share capital from the day they are admitted to trading on a trading venue.

8. The net short position expressed as a percentage of the company's issued share capital shall be calculated by dividing the net short position in equivalent shares by the total issued share capital of the company.

PART 2

**The delta-adjusted model for sovereign debt**

*Article 11*

1. Any cash positions shall be taken into account using their nominal value duration adjusted. Options and other derivative instruments shall be adjusted by their delta which shall be calculated in accordance with Part 1. Calculations of net short positions containing both cash investments and derivatives shall be the individual delta-adjusted position of every derivative that is held in the portfolio, adding or subtracting all cash positions and cash positions shall have a delta equal to 1.

2. Nominal positions in bonds issued in currencies other than the euro shall be converted to euro using the last reliable updated spot currency price available. The same principle shall apply to other financial instruments.

3. Other derivatives, such as forward bonds, shall be also adjusted in accordance with paragraphs 1, 2 and 3.

4. Any economic interest or position that creates a financial advantage in sovereign debt held as part of a basket, index or exchange-traded fund shall be included when calculating the position in each individual sovereign debt. Positions on these financial instruments shall be calculated taking into account the weight of that sovereign exposure in the underlying basket, index or fund. Investors shall perform calculations in these financial instruments in accordance with Article 3(3) of Regulation (EU) No 236/2012.

9.10.2012 EN Official Journal of the European Union L 274/15

5. Calculations for sovereign debt instruments with high correlation shall follow the same methods of calculation of long positions in debt instruments of a sovereign issuer. Long positions in debt instruments of a sovereign issuer the pricing of which is highly correlated to the pricing of the given sovereign debt shall be taken into account for calculation purposes. When these positions no longer meet the test of high correlation then they shall not be taken into account to offset short positions.

6. Nominal long positions of credit default swaps shall be included in the calculation as short positions. In calculating an investor sovereign credit default swaps position its net positions shall be used. Positions intended to be covered or hedged through the purchase of a credit default swap that are not sovereign bonds will not be taken into account as long positions. Credit default swaps shall be considered to have delta 1.

7. The net short position shall be calculated by netting nominal delta-adjusted equivalent long and short positions in the issued sovereign debt of a sovereign issuer.

8. The net short position shall be expressed as a monetary amount in euro.

9. Calculation of positions shall take into account changes in correlations and in the total sovereign debt of a sovereign issuer.

10. Only long positions in debt instruments of a sovereign issuer the pricing of which is highly correlated to the pricing of sovereign debt of a sovereign issuer shall be taken into account to offset short positions in the said sovereign debt. A given long position of a highly correlated debt shall only be used once to offset a short position in cases where the investor maintains several short positions of different sovereign issuers. The same long position cannot be applied several times to net off different short positions taken in highly correlated sovereign debt.

11. Natural or legal persons with multiple allocations of long positions of highly correlated debt across several different sovereign issuers shall have records that show their allocation methods.

_____