# Exhibit 55, Part 1

Bo Von Eyben, Peter Mortensen

COMPUTER TRANSLATION

# TEXTBOOK OF LAW OF OBLIGATIONS II

Change of person in debt relationship
Termination of claims
Forms of rescission

*I* KAMMERADVO K

Bo von Eyben and Peter Mortensen
*Larebog* in *Law of Obligations II*
5th edition 1st print run
Karnov Group Denmark *NS,* Copenhagen 2022

ISBN 978-87-619-4362-0


Cover: Axel Surland, Ljungbyhed
Batch: Integra India
Printing: Drukarnia WDS Sandomierz, Poland

This book is protected under applicable
Danish copyright law. Copying may only
be done in accordance with the law. This means,
for example, that copying for educational purposes
only must be done in agreement with Copydan
Tekst og Node.
All rights reserved

*In older literature, change of person was also called "subjective change" of a debt relationship, as a new subject (a new person) is added on the duty or rights side. On the even older literature, which claimed that one cannot speak of a change of person in debt relationships, as the change in the subjects implies that a new debt relationship is created, see in particular Carl Goos.[5] Today, this view must rightly be considered abandoned, and it is also not particularly suitable for describing the legal position when a claim is transferred.*

A change of person does not have to include the full rights or obligations of a contracting party. Like other property rights, a creditor's claim rights can be assigned in *full or in part* (assignment of creditors). A complete transfer is referred to as a *transfer of ownership. ownership.* However, there can also be a partial assignment, which occurs, for example, by pledging a claim right - i.e. *assignment by way of security*.[6]

To the extent that a change of debtor can take place at all - see section 2 below - there may be either a full or partial assignment of the debtor's obligations. If a debtor appoints another in his place in every respect, there is a complete assignment. However, it can also be agreed that a new debtor only assumes certain obligations of the original debtor. An example may be a contract where the seller (debtor in rem) agrees with the creditor (creditor in rem) to let a subcontractor perform part of the delivery.

Furthermore, a new debtor may enter into a debt relationship as *co-debtor* with the original debtor.[7]

## 2.   The main rule of debtor switching

### 2.1.  Debtor change requires creditor consent

The creditor of a claim has a clear primary interest in the satisfaction of the claim by the debtor. This is particularly true in the case of contracts for mutual performance where the creditor *has* performed, but it must also be regarded as a general interest worthy of protection based on The basic principle that valid contracts must be kept - i.e. the debtor must fulfill his obligation under the claim. The creditor's

---

5. C. Goos: *Lectures on general jurisprudence I. de! (1885) p. 184 ff* and in addition Ussing: *The ordinary part, p. 209 f* and 283 and Lassen: *Handbog p. 538 f.*
6. About transfer to ownership and limited transfer, respectively see P. Mortensen: *Introduction to the law of property, p. 61 ff.*
7. This is sometimes referred to as cumulative debt assumption! This is sometimes referred to as cumulative assumption of debt, while the complete debtor shift is referred to as privative assumption of debt. See Ussing: *Ordinary part. p. 293 f* and below ch. 14 on forms of liability, including joint and several liability between several debtors.

19

*Chapter 11, 2.1.*

The chances of obtaining satisfaction depend on a number of factors, of which the debtor's willingness and ability to perform is central. Entering into a contract usually involves some (financial) risks that each contracting party must decide whether he is willing to take. An essential part of the risk assessment is the assessment of how likely it is that the other party can and will fulfill its obligations. A creditor's acceptance of an agreement will often be due to the creditor's confidence that the debtor can and will fulfill it. Therefore, it is usually not indifferent to the creditor who is obligated as a debtor. Therefore, Danish law has a *general rule* according to which the debtor cannot substitute someone else without the creditor's consent. In other words, a *change of debtor* is *generally not permitted without the creditor's consent.* This rule is - to put it in a nutshell - to prevent someone who, for example, lends DKK 50,000 to a person who owns a car and real estate and who has an annual income of DKK 1 million, suddenly has to accept that his claim for repayment of the loan cannot be asserted against this original debtor, but only against another person who is unemployed, lives in rented accommodation and only receives transfer income. Such a change of debtor significantly impairs the creditor's prospects of satisfaction, which is why he should not be forced to accept this against his will.

Nor by offering adequate *security* for the fulfillment of the contract. the creditor's claim, the debtor can unilaterally substitute another debtor in his place. On the one hand, the security may turn out to be inferior to what was promised when it is realized, and on the other hand, the creditor's enforcement may be made more difficult and costly by, for example, having to take legal action against a guarantor who will not pay.[9]

The rule that a change of debtor requires the creditor's consent is a *general rule of contract law* that is not expressly stated in the legislation. However, the rule is expressly formulated for a few special contractual relationships. See, for example, AB 18 § 7(3) on construction contracts, according to which neither the client nor the contractor can transfer their obligations to others without the consent of the other party. In addition, a number of *exceptions* to the rule are explicitly stated in the legislation, cf. section 4 below. In addition, the rule is supported by the legal literature and case law.

---

8. The fact that the example is not unrealistic is evident from UfR 1992.858 H. See also UfR 1974.129 H.
9. Cf. *P. Augdahl:* Den norske obligationsretts almindelige del (4th ed. 1972) p. 366, which - less convincingly - rejects the provision of security solely "... for legal technical reasons."
10. See e.g. *Iversen 3* p. 195 *N. J. Clausen* in Dansk privatret, p. 397, *Ussing:* Alm. del p. 210, *Lassen:* Håndbog p. 608 f and as regards Norwegian law: *P. Augdahl.* Den norske obli- gationsretts almindelige del (4th ed. 1972) p. 365 f and U Hagstram: Obligasjonsrett (2nd ed. 2011) p. 869.

20

*Case law* includes *UfR 1978.177 H,* where a developer had entered into a price contract under which two master masons (the contractors) were to build a single-family house on a plot owned by the developer. When the contractors had excavated the house's basement, the developer sold the land with the rights and obligations under the contract to the builder. the construction contract to! to a buyer. When the contractors then stopped construction, the buyer had the house built by someone else and claimed his loss from the contractors. However, the contractors were acquitted of the claim, as the High Court (whose judgment the Supreme Court upheld) in the circumstances, where the contractors had undertaken to carry out a building project for a private person they knew, and where the construction - apart from excavation of the ca! The court found that the transfer of the developer's rights and obligations to the buyer of the land had required the transfer of the rights and obligations to the buyer of the land. The transfer of the developer's rights and obligations to the buyer of the land had required the cooperation of the purchasers in order for the transfer to be binding on them. It should be noted that there is normally nothing to prevent the assignment of *rights* under a construction contract. a construction contract, compare AB 18 § 7, section 1, 1.1 and see more in chapter 12, section I.1.The fact that the transfer of the rights was not accepted by the High Court in UfR 1978.I77 H was possibly due to the fact that the High Court found that the transfer would entail a significant risk that the developer would lose its incentive to perform, cf. The High Court presumably only addressed the debtor shift in its confirmation of the judgment "... in this respect ...", which presumably refers to the statements from the Commercial Council on *debtor shift* stated in the judgment.

The main rule, that debtor change requires consent, is also stated in *advance* UfR 1985.220 V and UfR 1994.243 H. *UfR 1985.220* V concerned the transfer of the leasehold pursuant to a deed of gift issued by the owner of a real estate (debtor) to a landowners' association (creditor). a homeowners' association (creditor). The landowner sold his property and forwarded to the the homeowners' association a deed of transfer of title, according to which the buyer of the property took over the title according to the deed of transfer. the deed of gift. The landowners' association did not react to this, but subsequently claimed the lease payments from the buyer. The landowners' association was then found to have tacitly accepted that the buyer had joined the association in the seller's place. The landowners' association could therefore not make a claim against the seller. With the case concerning the tacit acceptance, the District Court thus indirectly indicated that consent including tacit consent - is a prerequisite for debtor substitution.

See similarly in UfR 1994.243 H, where it was not proven that A A/S in connection with the conclusion of an agreement with B A/S for the supply of panels for a sound wall to be installed in a building. had not clearly indicated that the agreement was to be entered into or had been entered into with another party of B A/S completely independent company (C A/S). The fact that invoices were subsequently issued to C A/S was not C AJS was not sufficient evidence that A A/S had accepted an invoice from B A/S.

---

1 l. This provision in AB 72 was not upheld in UfR 1978.177 H. AB 18 § 7 distinguishes between transfer of rights (paragraph 1)-i.e. change of creditors-and non-transfer of obligations (paragraph 3)-i.e. a prohibition against change of debtor.

21

*Chapter 12*

# Change of creditor

## 1. The main rule: Free excess and exceptions

### 1.1. Free overconfidence

As stated in chapter 11, section 2.1, the starting point is that the *obligation side of* a debt relationship cannot be transferred (debtor shift). As far as the *rights side is* concerned, however, the opposite is true: A creditor can, without the debtor's consent, transfer his claim to a third party (assignee) for ownership (conveyance) or for security (pledge). The creditor's claim against the debtor to receive, for example, a payment in kind or a monetary amount can thus – like other property rights – be transferred.[1] The transfer can be made by *agreement* (also called assignment or transfer), by *creditor settlement* (e.g. liquidation, cf. rpl. § 508, or bankruptcy, cf. KL § 32), *unilaterally by gift* or *by inheritance.* For terminology, see further chapter 11, section 1.

> See for illustration *UJR 1985.694* where a municipality (debtor) had to pay DKK 876.64 in subsidies for a patient's (creditor's) treatment by a physiotherapist (transferee) under the current Public Health Insurance Act. The municipality did not want to pay the physiotherapist, who was not covered by a collective agreement, and instead paid the patient directly. The patient refused to receive the payment, stating that he had transported the claim on the municipality to the physiotherapist, which he had informed the municipality. The court,r found that payment in accordance with section 29[2] could only be made to the physiotherapist. the physiotherapist. As the transportation was neither excluded by agreement nor by the Act on public health insurance, the municipality was ordered to pay the physiotherapist. See also *UfR 1971.337 V*, where the High Court ruled that the new owner of a hotel could make

---

1. Cf. *Iversen* 3 p. 109, *Ussing:* Alm. del p. 210 and *Lassen:* Handbog p. 540 and as far as Norwegian law is concerned *V. Hagstrom:* Obligasjonsrett (2nd ed. 2011) p. 883.
2. See section 5.2 below for more details.

41

*Ch. 12, I.I.*

A guarantee obligation was valid even though the guarantor had assumed the obligation to the previous owner as security for claims in the event of a lessee's default. The lessee defaulted against the new owner. However, a dissenting judge held that the surety bond had to be interpreted as only entitling the expressly named original owner. This is related to the question of whether the transferability of claims can be limited by agreement. See section 1.2.3.2.2.[3] below on the requirements for a valid assignment of a claim, see e.g. UfR 2020.2943 0.

The difference between the main rules for debtor and creditor substitution is that the creditor runs a significant risk of not obtaining satisfaction if a new debtor is introduced, *while it generally makes no difference to the debtor whether he has to satisfy one or the other creditor. fulfillment towards one or the other creditor* – he must fulfill in all circumstances. However, in some cases there may be a need to protect the debtor by limiting the liability of certain types of claims (see below section 1.2.). Furthermore, the creditor's interest in being able to exploit his claims economically, like the creditor's other assets by sale or pledge, argues for the free transferability of the claims. This applies in particular to negotiable claims (see section 6 below), which are issued for the purpose of being easily negotiable. By transferring or pledging the claim, the creditor thus receives a purchase price or a loan from the transferee/pledgee, which improves the creditor's liquidity during the period until the debtor redeems the claim. Furthermore, access to a change of creditor is usually also in the debtor's interest, as the creditor's willingness to grant Ian and credit usually depends on his ability to finance the credit.[4] Financing can, among other things, take place through pledging/ pledging of the claim against the debtor.[5]

The considerations for the debtor and creditor were feared differently, according to depending on whether they are simple or negotiable claims. Whereas the main purpose of the rules on *unsecured claims is* to protect the debtor against the burden of his obligation being increased by the assignment, the main purpose of the rules on *negotiable claims is* to facilitate
creditor's turnover of the claims, so that the debtor's possible

---

3. When the principal claim is transferred, the claim against the guarantor is generally also transferred to the assignee, cf. the assignee of the principal claim, cf. *Ussing:* Kaution p. 248.
4. About the different interests see *V. Hagstrom:* Obligasjonsrett (2nd ed. 2011) p. 884 ff.
5. See e.g. on factoring, *Pant* p. 355 ff, *L. H. Kristensen:* Studier i erhvervsfinansieringsret (2003) p. 141 ff and *Panteret* p. 551 ff. See also on receivables pledge, TL§ 47 d, paragraph I, and *Panteret* p. 578 f.

42

weak objections are set aside in favor of a gullible assignee of the claim.[6]

The rules on change of creditor are - like the rules on change of debtor - an expression of *general principles of contract law* that follow from the legal literature and case law. However, unlike debtor subrogation, creditor subrogation is to a large extent also governed by the rules in the Danish Bills of Exchange Act and other statutory rules. *The Bills of Exchange Act* only applies directly to bills of exchange, but the *rules in chapter 3 of the Act on unsecured bills of exchange apply by analogy to other unsecured claims,* including claims for other than money.[7]

Creditor subrogation - i.e. cases where a claim is transferred from the original creditor to the transferee - must be distinguished from the situation where a *new claim* is *created* between the original debtor and a new creditor that replaces the claim between the debtor and the original creditor.

> Subrogation must also be distinguished from *subrogation* (i.e. the acquisition of a claim against the debtor by a third party by satisfying the original creditor).[8] The rules on the *assignment* of *a* claim or the assignment of *a claim to several assignees* are not discussed here as the presentation is focused on the main principles.[9]

## 1.2. Limitations in portability

Although it is generally irrelevant to the debtor whether he has to pay one or the other creditor, *there may* be situations where a change of creditor could cause significant *disadvantage to the debtor.* In the most significant of these cases, legislation has therefore been enacted to exclude or restrict the right to subrogation. These situations are discussed below in section 1.2.2.

It may also be in the *creditor's* own interest that the creditor's right to assign certain claims is limited. Here, too, legislation intervenes to a certain extent. These situations are discussed in section 1.2.1. Finally, it may occur that the right to subrogation is severely limited *by private law provisions* in the form of an agreement or will. See below, section 1.2.3. on exceptions and agreed limitations.

---

6. Compare *Iversen* 3 p. 11 and 160 and further below section 2.
7. Cf. *Iversen 3* p. 117 f. and in more detail below section 2.
8. See e.g. *Ussing:* Alm. del p. 210 and *Lassen:* Handbook p. 312 ff. and chapter 14, section 3.4.1.
9. See e.g. *Ussing:* Alm. del p. 235 f, *Lassen:* Handbog p. 583 f and *V. Hagstrom:* Obligasjonsrett (2nd ed. 2011) p. 888 f.