# Exhibit 56

# Danish company law 2

COMPUTER TRANSLATION

Capital companies

**Authors:**     <u>Søren Friis Hansen</u>, <u>Jens Valdemar Krenchel</u>

ISBN: 978-87-619-3985-2

5th edition/1st printing

Typesetting and printing: AKAPRINT a/s, Aarhus

Edition: 5

Cover: Sabine Brandt Studio, Copenhagen

Mechanical, photographic or other reproduction of this book or parts thereof is not permitted under applicable Danish copyright law.

2019 Karnov Group Denmark A/S, Copenhagen

All rights reserved.

# Part 2. Creditor protection

## Chapter 6. Dividend

**6.1 General about dividend**
**6.1.3 Distribution of dividends**

### 6.1.3.2. Contractual profit sharing is not legal

In some cases, the shareholders may wish to split the dividends distributed by the company so that the dividends are distributed according to criteria other than the size of the individual shareholders' capital holdings. In this respect, it is for tax reasons an absolute necessity that the actual dividend distribution is made directly from the company, so that the dividend does not pass through the individual shareholders who wish to transfer their dividend in whole or in part in favor of other shareholders. Furthermore, it is often not possible to introduce a division of the share capital into capital classes with different dividend rights, as such a division of existing shares will, under certain circumstances, mean that the shares are considered to be disposed of for tax purposes.[Note 9]

The case SKM2007.524VLR concerned the tax qualification of a company that was registered as a limited liability company ~~under the~~ Danish Public <u>Limited Companies Act,</u> but whose owners had entered into an ownership agreement under which the dividends distributed from the company were not distributed in proportion to the individual "shareholders'" shares, but rather according to the size of the individual "shareholders'" trade with the company. The company law problems associated with such an arrangement were not considered during the case. The problem in this respect was that the company in question did not meet the criteria set out in the Danish <u>Companies Act</u> for a company to be considered a limited liability company, cf. section <u>1(4) of the Danish Companies Act</u>. The company in question had to be qualified as a *cooperative with limited liability*, which should have been registered under the <u>Act on Certain Commercial Enterprises,</u> cf. section <u>4 of LEV</u>.[Note 10]

Section <u>1(4) of the Danish Public Limited Liability Companies Act</u> defined the limited liability company negatively, so that the law did not include cooperatives. The provision in <u>KSL § 1</u> now defines capital companies positively, so that it is a condition for a company to qualify as a capital company that the dividends distributed from the company must be distributed according to the size of the shares of individual shareholders, except in cases where the capital is divided into classes of capital. Despite the

the provision in KSL §1, some authors have, even after March 1, 2010, maintained that the scheme applied in SKM2007 524VLR regarding a contract-based skewed distribution of dividends can still be applied.(Note 11) However, such a scheme is not compatible with the rule in KSL §1(2). The preparatory works to this provision explicitly state that dividends in a capital company must be distributed among the shareholders in proportion to the size of the individual shareholdings, unless the articles of association provide for a division of the share capital into capital classes. In this connection, it is completely irrelevant whether, prior to the entry into force of the Danish Capital Companies Act, there may have existed a tax law practice according to which such a division was accepted in terms of tax law.(Note 12)

It is also irrelevant whether the distributions made to shareholders are classified as *"bonus" or "discount"*, *"ejervederlag"* or similar, cf. UfR 1944.826H.(Note 13)   In this case, a limited liability company was founded by a purchasing association. All members of the purchasing association were shareholders, as there were also a small number of outside shareholders. It was agreed that 60% of the limited liability company's profit for the year would be repaid as a "discount" to the shareholders who traded with the company. The company was of the opinion that the discount granted should be considered a deductible operating expense for tax purposes. The National Tax Tribunal, on the other hand, considered the discount to be a *"Form of Share Dividend"*. The High Court, whose decision was upheld by the Supreme Court, found that the fact that individual shareholders did not share in the discount "*could* not *change its character as a dividend"*.

*383*

On this basis, the court ruled that the discount should be included in the company's taxable income. The case only concerned the tax qualification of the *"discount"* as a dividend, but there can be no doubt that a company law classification of the distributed "bonus" would have led to the same result.

At the latest with the entry into force of the Danish Capital Companies Act, it can therefore be established that, under current Danish law, section 1(2) of KSL, in conjunction with the principle of equality in section 45 and section 82 of KSL, precludes an unequal distribution of dividends whose legal basis is not the articles of association, but rather a (secret) shareholders' agreement.(Note 14) If the company's management pays out dividends in a manner contrary to the rules in sections 1, 45 or 82 of the Danish Capital Companies Act, it is a distribution in violation of the provisions of the Danish Capital Companies Act on dividends, and the rules on repayment of illegal dividends in section 194 of the Danish Capital Companies Act apply (below section 6.4).(Note 15)

In practice, it is hardly likely that a repayment claim based on KSL § 194 against the shareholders will be raised by the company itself. On the other hand, it must be assumed that in the event of the company's bankruptcy, there is a legal duty for a trustee to investigate whether, in the event of the company's bankruptcy, a claim for repayment can be raised against shareholders who have received dividends distributed in violation of KSL sections 1, 45 and 82, or against members of the company's management who have contributed to making or implementing the decision on the unequal distribution of dividends based on an owner agreement. Similarly, the person advising the company and its management should make the management aware of the risk that exists in relation to to KSL § 194. if the management intends to participate in an agreement-based profit sharing.

*384*

*Transportation of undue dividends as a simple claim*

A shareholder may, subject to the rule in section 19(1) of the Danish Sale of Goods Act'(Note 16)  transport his right to both past due dividends and future dividends, and that such a transport is generally covered by the general rules regarding transport of unsecured claims. Similarly, it is undoubtedly possible for a shareholder to waive the right to receive dividends which, according to the articles of association, accrue to the shareholder. The question is, however, what legal effect such a transfer has in relation to the debtor (i.e. the company) on the one hand and the transferee on the other hand in cases where the transfer is part of a shareholders' agreement or is based on a shareholders' agreement. Where the articles of association do not contain provisions on the unequal distribution of dividends, the general statutory rule on the distribution of dividends in proportion to the size of each shareholder's

capital shares, cf. KSL §1(2) and § 45. If a shareholder transports dividends that have not yet fallen due to another shareholder as a simple claim, both the transferor and the transferee are shareholders, and they are therefore bound by the rule on mutual distribution of dividends, cf. section 1(2) of KSL. In this situation, it therefore follows directly from the rule in section 27 of the Danish Debt Instruments Act that the transport holder does not have a better right than the transporter. Since the shareholder who is the transferor does not have the right to distribute the proceeds without a legal basis in the articles of association, the shareholder who is the transferee in this case cannot rely on the transfer, which must not be respected by the creditors of the transferor either, cf. GBL § 27.

*Transportation of overdue dividends*

When the general meeting has resolved on the payment of dividends and the shareholder's right to dividends has matured (see section 6 1 3 3 below), the shareholder may of course transfer his share of the dividends after deduction of dividend withholding tax to whomever he wishes. If a shareholder transports his (due or undue) dividend right to a person who is not a shareholder, the transferee is of course not covered by the Danish Companies Act or the articles of association regarding the mutual distribution of dividends between the shareholders. Such transportation is (unless it concerns dividend coupons, cf. section 24(1) of the Danish Companies Act) covered by the general rules regarding transportation of unsecured claims.

*385*

*The legal effect of the transport on the company*

Initially, it must be stated that questions about the shareholders' right to dividends undoubtedly concern *"ownership in the company"*, cf. KSL § 5 no. 6. Against this background, it can be stated that the provision in KSL § 82 is undoubtedly relevant to an agreement concluded between shareholders on dividend splitting or waiver of dividends, cf. section 3.9. On ownership agreements, see section 3.9 above. When clarifying the significance of any transfer in relation to the company's right to pay the dividend claim with discharging effect, the rules in the Danish Debt Instruments Act regarding transfer of claims, especially GBL sections 29 and of importance. These provisions read as follows:

> **GBL § 29**
> *However, where a simple debt instrument has been transferred in possession or pledge, the debtor may, unless otherwise provided by the special nature of the instrument, pay the transferor with discharging effect, unless he knew that the transferor was no longer entitled to receive the payment or he has not exercised the due diligence required by the circumstances.*
> GBL § 30
> *When the debtor pays to a person to whom a simple debt instrument has been assigned in writing as owner or pledge, the fact that the assignment was invalid does not prevent his release. However, the debtor is not discharged if he knew or had reason to suspect that the assignment was invalid for one of the reasons mentioned in § 17.*

It has been stated in the literature that the rule in GBL § 29 should take precedence over the provision in KSL § 82, so that a denunciation of a transfer regarding a future dividend right to the company implies an obligation for the company's management to pay the dividend to the transferee, regardless of the fact that the transfer may be authorized in an ownership agreement and therefore in

pursuant to KSL § 82 is invalid in relation to the company.(Note 17)

*386*

Firstly, it should be noted that the rule in section 29 of the GBL is not at all relevant to the question at hand. This provision concerns the question of the debtor's (in this case the company's) right to pay with discharging effect to the carrier, as it is assumed that the transportation is *valid*. The provision in section 29 of the Danish Debt Instruments Act thus does not apply at all where the assignment of the claim is invalid.(Note 18)

For this reason alone, the provision cannot imply an obligation for the company's management to execute a transfer of dividends based on a shareholders' agreement that is invalid in relation to the company. The question of the significance of the possible invalidity of the underlying transfer is, however, regulated by section 30 of the Danish Debt Instruments Act.

The first sentence of the provision states that the company's payment of the dividend claim to a transferee to whom the claim has been transferred has a discharging effect, even if the transfer turns out to be invalid. However, if you read the second sentence of the provision, it becomes clear that if the management of the limited liability company knew or had reason to suspect that the transfer of dividends was invalid (for example because it was based on an agreement between shareholders regulating the ownership or management of the company), the payment to the transferee does not have a discharging effect for the company. If the management of a limited liability company receives a transport of dividends where one shareholder transports dividends to another shareholder, it will in most cases be difficult for the management to claim that they had no reason to suspect that the transport was based on an ownership agreement. If, on the other hand, the management has no reason for such suspicion, for example because the transfer is from a shareholder to a third party, the dividend payment will be deemed to have a discharging effect on the company pursuant to section 30 of the GBL, regardless of whether the transfer turns out to be based on a shareholders' agreement.

Secondly, it is noted that the provision in KSL § 82 is both lex posterior and lex specialis in relation to the rules in GBL §§ 29 and 30. Section 82 of the KSL only applies to a transportation of dividends if the transportation is part of an ownership agreement. In cases where a shareholder transports his right to dividends to a third party, the provision in KSL § 82 is thus irrelevant, except for the presumably rare cases where the transport is made as a gift to a third party on the basis of a secret agreement with another shareholder. Thirdly, it has been overlooked in the debate,

*387*

that the rule on validity under company law, cf. section 14(3) of the KSL (here Volume 1, section 8 2 , implies that a third party who acquires a share or attaches a share may rely on the company's articles of association, whereas the third party is not bound by a shareholders' agreement (above, section 3 9. A dividend distribution based on a *secret* shareholders' agreement *cannot* be given precedence over the information on dividend distribution that appears in the *published articles of association.* An attachment holder who attaches a shareholding is subrogated to the shareholder's right to dividends. If it were accepted that the provisions of section 29 or 30 of the GBL should prevail over section 82 of the KSL, the inevitable consequence would be that the attachment holder could not rely on the information on the distribution of dividends among the shareholders that appears from the duly published articles of association.

*The transport operator's obligation to respect the dividend rules under company law*

In relation to the question of the relationship between the Debt Instruments Act's rules on the transportation of claims relating to dividend rights and the rules on dividends in the Companies Act, it seems that the authors who assume that the Debt Instruments Act's rules take precedence have overlooked the provision in section 24(2) of the Debt Instruments Act. Section 24(1) of the Danish Debt Instruments Act provides that where dividend coupons are attached to a share certificate, these have the status of bearer debt instruments. Section 24(2)(1) of the Danish Debt Instruments Act states: *"The articles of association of companies* are *binding on the person who acquires* a *coupon."*

*"The articles of association of Selskaber are binding on the person acquiring a voucher."*

The provision means that a person who has acquired a claim to future dividends secured by a dividend coupon must tolerate objections based on both company law and the provisions on dividends laid down in the company's articles of association.[(Note 19)] The Debt Instruments Act has thus explicitly addressed the question of to what extent

*388*

Act's rules on the transfer of claims shall apply to the transfer of claims for dividends in a limited liability company. Thus, it is expressly stated in section 24(2) of the GBL that the rules of company law on the distribution of dividends take *precedence over the rules of the Danish Debt Instruments Act on the transfer of claims* in cases where a dividend claim is based on a bearer debt instrument. This precedence over the rules of company law must by its very nature, cf. the principle in GBL §27, apply all the more where the dividend claim appears as a simple claim! Both the shareholder who transports the dividend and the management members who make the payment are of course bound by the provisions on distribution of dividends in both the Danish Act on Public and Private Limited Companies and the articles of association. It follows that the carrier is naturally also bound by these rules.

Already due to the provision in section 24(2) of the GBL, it can thus be stated that the rules in sections 1, 45 and 82 of the Danish Capital Companies Act and the rules in the articles of association on the distribution of dividends under applicable Danish law take precedence over the rules on the conveyance of claims in sections 29 and 30 of the Danish Debt Instruments Act, and this applies regardless of whether the claim for dividends appears as a bearer debt instrument or as a simple claim. Creditors of the carrier may thus demand that any dividends paid to the carrier in violation of the rules on the distribution of dividends in the articles of association or the Capital Companies Act be returned from the carrier to the shareholder entitled to the dividends under the articles of association. A rule to the effect that where a shareholder's claim to dividends was transferred to another shareholder by a (secret) shareholders' agreement, the rules on dividend distribution in the Capital Companies Act and the company's articles of association were set aside, is not only incompatible with the rules in the Debt Instruments Act. but also with the considerations underlying the company law rules on the publication of the articles of association and the consideration of third parties' insight into the company's essential characteristics. Due to the First and Second Company Law Directives, these considerations must be given decisive weight in the interpretation of the rules applicable in Danish law (see Volume 1, sections 5.2.2.2, 5.3.1 and 5.3.2).

*Repayment obligation (KSL § 94)*

The repayment obligation regarding unlawful payments prescribed in KSL § 194 (below section 6 4) is generally incumbent on the shareholder who, according to the articles of association, is entitled to dividends. To the extent that the shareholder's claim for dividends is transported, it follows from section 24(2) or section 27 of the Danish Companies Act that the transferee, who must comply with the company law rules on dividends, is subject to the repayment obligation. Where the dividend cannot be recovered from the transferor or transferee, those who have made or contributed to the decision are liable

*389*

for the company's losses according to the general rules on compensation, cf. KSL § 194(2). However, the management is not liable in cases where there was no reason to suspect that the transportation of the claim for dividends was based on an ownership agreement, cf. GBL § 30.2. pkt.

Footnotes

9. See Erik Werlauff, UfR 2012B, p 2-9.

10. See Søren Friis Hansen, Tax Policy (Skattepolitisk Oversigt) 2008 p 1-23, with references.

11. See Trine Bonde Jensen, Audit & Accounting (Revision & Regnskabsvæsen) 2009/12 p 54, who states that KSL § 82 *"cannot in itself* [be] *assumed to prevent the unequal distribution of dividends being regulated in the owner agreement without inclusion in the articles of association".* See also Martin Kristian Kruhl, *shareholder agreements (Ejeraftaler) (2011), p. 323.*

12. *See Peer Schaumburg-Müller & Erik Werlauff, Vedtægter og ejeraftaler (2010), p. 99, which states: "In our opinion, this practice of accepting a redistribution of dividends between shareholders on an objective basis can be continued after March 1, 2010."*

13. *Distributions to shareholders camouflaged as "bonus" or "discount" are thus undoubtedly considered a distribution of dividends when applying the rules of the Danish Capital Companies Act, cf. in particular section 179 of the Danish Companies Act. See already H.B. Krenchel, Handbook in Danish share law (Håndbog i dansk aktieret) (2nd ed. 1954), p. 191f, and Lars Bunch & Søren Corfixsen Whitt, The Companies Act with comments (3rd ed. 2018), re § 179, note 2.*

14. *See Erik Werlauff, UfR 2012B, pp. 2-9 (p. 6, with note 21). Werlauff states (our emphasis): "It was previously assumed that if there was a factual justification for the imbalance, this must also be accepted under tax law. After intervening amendments to both the tax law concept of dividends and to the company law regulations on*

*However, due to the lack of corporate law effect for the company, it must today be stated that a skewed distribution of dividends i n relation to the actual distribution of the share capital will only be possible through a provision in the articles of association, i.e. through a division into share or unit classes."* See also Søren Friis Hansen, <u>Audit & Accounting 2009/6, p 36-44,</u> and Lars Bunch & Søren Corfixsen Whitt, The Companies Act with comments (3rd ed. 2018), re § 1, note 5.

15. . See Lars Bunch & Søren Corfixsen Whitt, The Companies Act with comments(3rd ed. 2018), re § 194, note 2, which states. "However, it is important to add that the rules on repayment do not only apply if a distribution violates the rules on capital reduction in Chapter 11 of the Companies Act. The repayment requirement thus also applies to distributions that violate other provisions of the Companies Act."

16. . Section <u>19(1) of the Danish Sale of Goods Act</u> reads: "The *purchase of shares includes dividends that were not due at the time when the purchase was concluded."* The provision is declaratory, which means that it can be deviated from by agreement between the seller and the buyer. If the seller has not made a reservation, the buyer and his creditors are entitled to the full undue proceeds. In this case, the person who has the right to transport undue dividends as a simple claim has no better right than the transferor, cf. <u>GBL</u> §27, which is why the transport holder's right in this case lapses. Advisors are urged to exercise caution when transporting future dividends.

17. . See Erik Werlauff, UfR 2010B, pp. 130-133 (p. 132). Werlauff states: "On the *contrary, the company in its capacity as debtor, when the redistribution is denounced to the company, has a duty to comply with such an order, cf. the <u>Debt Instruments Act</u> § <u>29</u> and <u>UfR 1990 630H</u>".* See also Peer Schaumburg-Müller & Erik Werlauff, Bylaws and shareholder agreements (Vedtægter og ejeraftaler) (2010), p. 92f, and similarly Martin Christian Kruhl, Ejeraftaler (2011), p. 324, but differently Søren Friis Hansen, NTS 2012:1, pp. 48-53.

18. . See Lynge Andersen, Møgelvang-Hansen & Ørgaard, The Debt Instruments Act with comments (<u>Gældsbrevsloven</u> med kommentarer) (3rd ed. 2017), re section 29, note 2.

19 See H.B. Krenchel, Håndbog i dansk aktieret (2nd ed. 1954), p. 122, who states: *"The acquirer must accept both the limitation of the size of the dividend laid down by law, e.g. section 44* [concerning the size of the dividend] as well as in *the articles of association, the rules laid down therein concerning the due date of the coupon, the cancellation of the share right due to non-payment of the remaining contribution etc.".* See also Ussing & Dybdal, Gældsbrevslovene (1938), p. 69, which states that provisions in the company's articles of association can probably also be invoked against a bona fide purchaser of a loose dividend coupon. See finally the Draft Act on Debt Instruments with accompanying Remarks (1935), p. 45: *"It is assumed in current law that provisions in the articles of association of a public limited company may be relied upon against a bona fide purchaser of a negotiable share certificate, even if they are not included therein. the same must apply to coupons, which is why it is proposed in the second paragraph, first bullet point that the articles of association of the company shall be binding on the purchaser of coupons. On the other hand, a provision that is not found in the Articles of Association cannot be enforced against the bona fide purchaser of a coupon, even if the provision is included in the shares."*

ISBN 978-87-619-3985-2

# Dansk selskabsret 2

ORIGINAL

## Kapitalselskaber

**Forfattere:**  Søren Friis Hansen, Jens Valdemar Krenchel

**ISBN:** 978-87-619-3985-2

5. udgave/1. oplag

Sats og tryk: AKAPRINT a/s, Aarhus

Alle rettigheder forbeholdes.

**Udgave:** 5

Omslag: Sabine Brandt Studio, København

Mekanisk, fotografisk eller anden gengivelse af denne bog eller dele af den er ikke tilladt ifølge gældende dansk lov om ophavsret.

2019 Karnov Group Denmark A/S, København

# Del 2. Kreditorbeskyttelse

## Kapitel 6. Udbytte

### 6.1. Generelt om udbytte

### 6.1.3. Udlodning af udbytte

#### 6.1.3.2. Aftalebaseret udbytteskævdeling er ikke lovlig

I visse tilfælde ønsker kapitalejerne at skævdele det udbytte, der udloddes fra selskabet, således at udbyttet fordeles efter andre kriterier end størrelsen af de enkelte kapitalejeres kapitalbesiddelser. Det er i så henseende af skattemæssige årsager en absolut nødvendighed, at selve udbytteudlodningen sker direkte fra selskabet, således at udbyttet ikke passerer de enkelte kapitalejere, der ønsker at afstå deres udbytte helt eller delvist til fordel for andre kapitalejere. Det er endvidere ofte ikke muligt at indføre en opdeling af selskabskapitalen i kapitalklasser med forskellig udbytteret, da en sådan opdeling af eksisterende kapitalandele efter omstændighederne vil indebære, at kapitalandelene anses for afstået i skattemæssig henseende.[Note 9.]

Sagen SKM2007.524VLR angik den skattemæssige kvalifikation af et selskab, der ganske vist var registreret i henhold til aktieselskabsloven som aktieselskab, men hvis ejere havde indgået en ejeraftale, hvorefter det udbytte, der blev udloddet fra selskabet, ikke blev fordelt i forhold til de enkelte »kapitalejeres« kapitalandele, men derimod efter størrelsen af de enkelte »kapitalejeres« samhandel med selskabet. Der blev ikke under sagen taget stilling til de selskabsretlige problemer, som er forbundet med en sådan ordning. Problemet i så henseende var, at det i sagen omhandlede selskab ikke opfyldte de kriterier, som aktieselskabsloven opstillede for at anse et selskab for et aktieselskab, jf. således ASL § 1, stk. 4. Det i sagen omhandlede selskab måtte derimod kvalificeres som *andelsselskab med begrænset ansvar*, der skulle have været registreret i henhold til lov om visse erhvervsdrivende virksomheder, jf. LEV § 4 [Note 10.]

Aktieselskabslovens § 1, stk. 4, definerede aktieselskabet negativt, således at loven ikke omfattede andelsselskaber. Bestemmelsen i KSL § 1 definerer nu kapitalselskaber positivt, således at det er en betingelse for, at et selskab kan kvalificeres som et kapitalselskab, at det udbytte, der udloddes fra selskabet, skal fordeles efter størrelsen af de

enkelte kapitalejeres kapitalandele, bortset fra de tilfælde, hvor kapitalen er opdelt i kapitalklasser. På trods af

bestemmelsen i KSL § 1 har nogle forfattere, også efter 1. marts 2010, fastholdt, at den i SKM2007.524VLR anvendte ordning vedrørende en aftalebaseret skævdeling af udbytte fortsat kan anvendes.[Note 11.] En sådan ordning er imidlertid ikke forenelig med reglen i KSL § 1, stk. 2. Det fremgår således udtrykkeligt af forarbejderne til denne bestemmelse, at udbyttet i et kapitalselskab **skal** fordeles mellem kapitalejerne i forhold til størrelsen af de enkeltes kapitalandele, medmindre der i vedtægterne er truffet bestemmelse om opceling af selskabskapitalen i kapitalklasser. Det er i denne forbindelse ganske uden betydning, om der før kapitalselskabslovens ikrafttræden måtte have eksisteret en skatteretlig praksis, hvorefter en sådan skævdeling har været accepteret i skatteretlig henseende.[Note 12.]

Det er tillige uden betydning, om de foretagne udlodninger til kapitalejerne klassificeres som »bonus«, »rabat«, »ejervederlag« eller lignende, jf. hertil allerede UfR 1944.826H.[Note 13.] I denne sag var et aktieselskab stiftet af en indkøbsforening. Alle medlemmer af indkøbsforeningen var aktionærer, idet der herudover var et mindre antal udenforstående aktionærer. Det var aftalt, at 60 % af årets overskud i aktieselskabet skulle tilbagebetales som »rabat« til de aktionærer, der handlede med selskabet. Selskabet var af den opfattelse, at den ydede rabat i skattemæssig henseende måtte betragtes som en fradragsberettiget driftsudgift. Landsskatteretten anså derimod den nævnte rabat som en »*Form for Aktieudbytte*«. Landsretten, hvis afgørelse blev tiltrådt af Højesteret, fandt, at det forhold, at enkelte aktionærer ikke fik andel i den omtalte rabat, »*ikke kunne ændre dets Karakter af Selskabsudbytte*«.

383

På denne baggrund slog retten fast, at rabatten skulle henregnes til selskabets skattepligtige indkomst. Sagen angik alene den skattemæssige kvalifikation af den ydede »*rabat*« som udbytte, men der kan ikke være tvivl om, at man ved en selskabsretlig klassifikation af den udloddede »bonus« måtte nå til samme resultat.

Senest med ikrafttrædelsen af kapitalselskabsloven kan det derfor slås fast, at efter gældende dansk ret er KSL § 1, stk. 2, sammenholdt med lighedsgrundsætningen i KSL § 45, og KSL § 82, til hinder for en skævdeling af udbytte, hvis retlige grundlag ikke er vedtægterne, men derimod en (hemmelig) ejeraftale.[Note 14.] Såfremt selskabets ledelse udbetaler udbytte på en måde, der er i strid med reglerne i KSL §§ 1, 45 eller 82, er der tale om udlodning i strid med kapitalselskabslovens bestemmelser om udbytte, hvorfor reglerne vedrørende tilbagebetaling af ulovligt udbytte i KSL § 194 finder anvendelse (nedenfor afsnit 6.4).[Note 15.]

Det er næppe sandsynligt i praksis, at et tilbagebetalingskrav baseret på KSL § 194 mod kapitalejerne vil blive rejst af selskabet selv. Derimod må det må antages, at der i tilfælde af selskabets konkurs består en retlig pligt for en kurator til at undersøge, om der i tilfælde af selskabets konkurs kan rejses krav om tilbagebetaling mod kapitalejere, der har modtaget udbytte udloddet i strid med KSL §§ 1, 45 og 82, eller mod medlemmer af selskabets ledelse, der har medvirket til at træffe eller gennemføre beslutningen om skævdeling af udbytte baseret på en ejeraftale. Tilsvarende bør den, der rådgiver selskabet og dets ledelse, gøre ledelsen opmærksom på den risiko, der består i relation

384

til KSL § 194, såfremt ledelsen påtænker at medvirke ved en aftalebaseret udbytteskævdeling.

*Transport af uforfaldent udbytte som en simpel fordring*

En kapitalejer kan, med respekt af reglen i købelovens § 19, stk. 1,[Note 16.] transportere sin ret til såvel forfaldent udbytte som fremtidigt udbytte, og at en sådan transport som udgangspunkt er omfattet af de almindelige regler vedrørende transport af simple fordringer. Det er tilsvarende utvivlsomt, at en kapitalejer kan give afkald på at modtage udbytte, der i henhold til vedtægterne tilfalder den pågældende. Spørgsmålet er imidlertid, hvilken retsvirkning en sådan transport har i forhold til på den ene side debitor (dvs. selskabet) og på den anden side transporthaver i de tilfælde, hvor transporten er en del af en ejeraftale eller er baseret på en ejeraftale. Hvor vedtægterne ikke indeholder bestemmelser om skævdeling af udbytte, gælder den almindelige lovfæstede regel om udbyttets fordeling i forhold til størrelsen af den enkelte kapitalejers

kapitalandele, jf. KSL § 1, stk. 2, samt § 45. Såfremt en kapitalejer transporterer udbytte, der endnu ikke er forfaldent, til en anden kapitalejer som en simpel fordring, er såvel transportgiver som transporthaver kapitalejere, og de er derfor bundet af reglen om indbyrdes fordeling af udbyttet, jf. KSL § 1, stk. 2. I denne situation følger det derfor umiddelbart af reglen i gældsbrevslovens § 27, at transporthaver ikke får bedre ret end transportgiveren. Da den kapitalejer, der er transportgiver, ikke uden hjemmel i vedtægterne har ret til at skævdele udbyttet (jf. ovenfor), kan den kapitalejer, der er transporthaver, i det nævnte tilfælde ikke støtte ret på transporten, der heller ikke skal respekteres af transportgivers kreditorer, jf. herved GBL § 27.

### Transport af forfaldent udbytte

Når generalforsamlingen har truffet beslutning om udbetaling af udbytte, og kapitalejerens ret til udbytte er forfalden (nedenfor afsnit 6.1.3.3), kan kapitalejeren naturligvis transportere sin andel af udbyttet efter fradrag af udbyttekildeskat til hvem, han vil. Såfremt en kapitalejer transporterer sin (forfaldne eller uforfaldne) udbytteret til en person, der ikke er kapitalejer, er transporthaver naturligvis ikke omfattet

*385*

af kapitalselskabslovens eller vedtægternes regler om den indbyrdes fordeling af udbyttet mellem kapitalejerne. En sådan transport er, (medmindre der er tale om udbyttekuponer, jf. GBL § 24, stk. 1) omfattet af de almindelige regler vedrørende transport af simple fordringer.

### Transportens retsvirkning for selskabet

Indledningsvis må det slås fast, at spørgsmål om kapitalejernes ret til udbytte utvivlsomt angår »ejerforhold i selskabet«, jf. KSL § 5, nr. 6. På denne baggrund kan det konstateres, at bestemmelsen i KSL § 82 utvivlsomt er relevant for en aftale indgået mellem kapitalejere om udbytteskævdeling eller afkald på udbytte, jf. om ejeaftaler ovenfor afsnit 3.9. Ved afklaring af, hvilken betydning en eventuel transport måtte have i forhold til selskabets adgang til at betale fordringen på udbytte med frigørende virkning, er reglerne i gældsbrevsloven vedrørende transport af fordringer, særligt GBL §§ 29 og 30, af betydning. Disse bestemmelser lyder som følger:

#### GBL § 29

*Er et simpelt gældsbrev overdraget til eje eller pant, kan skyldneren dog, når andet ikke følger af gældsbrevets særlige beskaffenhed, med frigørende virkning betale til overdrageren, medmindre han vidste, at denne ikke længere havde ret til at modtage betalingen, eller han ikke har udvist den agtpågivenhed, som forholdene krævede.*

#### GBL § 30

*Når skyldneren betaler til den, til hvem et simpelt gældsbrev skriftlig er overdraget til eje eller pant, hindrer det ikke hans frigørelse, at overdragelsen var ugyldig. Skyldneren frigøres dog ikke, hvis han vidste dette eller havde grund til mistanke derom, og heller ikke, hvis overdragelsen var ugyldig af en af de grunde, § 17 nævner.*

Det har været anført i litteraturen, at reglen i GBL § 29 skulle have forrang for bestemmelsen i KSL § 82, således at en denuntiation af en transport vedrørende en fremtidig udbytteret afgivet til selskabet indebærer en pligt for selskabets ledelse til at udbetale udbyttet til transporthaver, uanset at transporten måtte være hjemlet i en ejeraftale og derfor i medfør af KSL § 82 er ugyldig i forhold til selskabet.[Note 17.]

*386*

Hertil bemærkes for det første, at reglen i GBL § 29 slet ikke er relevant for det foreliggende spørgsmål. Denne bestemmelse angår således spørgsmålet om skyldnerens (i dette tilfælde selskabets) adgang til at betale med frigørende virkning til transporthaver, idet det herved forudsættes, at den foretagne transport er gyldig. Bestemmelsen i gældsbrevslovens § 29 finder således slet ikke anvendelse, hvor den foretagne overdragelse af fordringen er ugyldig.[Note 18.] Allerede af denne grund kan bestemmelsen ikke indebære en pligt for selskabets ledelse til at effektuere en transport af udbytte, der er baseret på en i forhold til selskabet ugyldig ejeraftale. Spørgsmålet om betydningen af den bagved liggende transports eventuelle ugyldighed er derimod reguleret af gældsbrevslovens § 30. Det fremgår af denne

bestemmelses 1. pkt., at selskabets betaling af fordringen på udbytte til en transporthaver, til hvem fordringen er overdraget, har frigørende virkning, uanset at overdragelsen måtte vise sig at være ugyldig. Læser man imidlertid bestemmelsens 2. pkt., bliver det klart, at såfremt kapitalselskabets ledelse vidste eller havde grund til mistanke om, at transporten af udbytte var ugyldig (eksempelvis fordi den var baseret på en aftale mellem kapitalejere, der regulerer ejer- eller ledelsesforhold i selskabet), så sker betalingen til transporthaver derimod **ikke** med frigørende virkning for selskabet. Såfremt et kapitalselskabs ledelse modtager en transport af udbytte, hvor en kapitalejer transporterer udbytte til en anden kapitalejer, vil det i de fleste tilfælde være vanskeligt for ledelsen at hævde, at man ikke havde grund til mistanke om, at transporten var baseret på en ejeraftale. Såfremt ledelsen derimod ikke har grund til en sådan mistanke, eksempelvis fordi transporten sker fra en kapitalejer til en tredjemand, vil udbyttebetalingen blive tillagt frigørende virkning for selskabet i henhold til GBL § 30, uanset at transporten måtte vise sig at være baseret på en ejeraftale.

For det andet bemærkes, at bestemmelsen i KSL § 82 er både lex posterior og lex specialis i forhold til reglerne i GBL §§ 29 og 30. KSL § 82 har kun betydning for en transport af udbytte, såfremt transporten er en del af en ejeraftale. I tilfælde, hvor en kapitalejer transporterer sin ret til udbytte til en tredjemand, er bestemmelsen i KSL § 82 således uden betydning, bortset fra de formentlig sjældne tilfælde, hvor transporten sker som en gave til tredjemand på grundlag af en hemmelig aftale med en anden kapitalejer. For det tredje er det overset i debatten,

at reglen om selskabsretlig gyldighed, jf. KSL § 14, stk. 3 (herom Bind 1, afsnit 8.2), indebærer, at den tredjemand, der erhverver en kapitalandel eller foretager udlæg i en kapitalandel, kan støtte ret på selskabets vedtægter, hvorimod tredjemand ikke er bundet af en ejeraftale (ovenfor afsnit 3.9). En skævdeling af udbytte, der er baseret på en *hemmelig* ejeraftale, kan således *ikke* tillægges forrang frem for de oplysninger om udbytteudlodning, som fremgår af de *offentliggjorte vedtægter.* En udlægshaver, der foretager udlæg i en kapitalandel, indtræder i kapitalejerens ret til udbytte. Hvis man accepterede, at bestemmelserne i GBL § 29 eller G3L § 30 skulle have forrang i forhold til KSL § 82, ville konsekvensen heraf uafvendeligt blive, at udlægshaver ikke kunne støtte ret på de oplysninger om udbyttets fordeling blandt kapitalejerne, som fremgår af de behørigt offentliggjorte vedtægter.

*Transporthavers pligt til at respektere de selskabsretlige udbytteregler*

I relation til spørgsmålet om forholdet mellem gældsbrevslovens regler om transport af fordringer vedrørende udbytteret og selskabslovgivningens regler om udbytte synes det, som om de forfattere, der antager, at gældsbrevslovens regler har forrang, har overset bestemmelsen i gældsbrevslovens § 24, stk. 2. Det bestemmes i gældsbrevslovens § 24, stk. 1, at hvor der til et aktiebrev er knyttet udbyttekuponer, så har disse status som ihændehavergældsbreve. Hertil bestemmes det i GBL § 24, stk. 2, 1. pkt.: *»Selskabers vedtægter er bindende for den, der erhverver en kupon.«*

*»Selskabers vedtægter er bindende for den, der erhverver en kupon.«*

Bestemmelsen indebærer, at den, der har erhvervet en fordring på fremtidigt udbytte sikret ved en udbyttekupon, må tåle indsigelser, der går på såvel den selskabsretlige lovgivning som de i selskabets vedtægter fastsatte bestemmelser om udbytte.[Note 19.] Gældsbrevsloven har således taget udtrykkeligt stilling til spørgsmålet om, i hvilket omfang

lovens regler vedrørende overdragelser af fordringer skal finde anvendelse på overdragelser af fordringer på udbytte i et kapitalselskab. Det fremgår således udtrykkeligt af GBL § 24, stk. 2, at selskabsrettens regler om udlodning af udbytte har *forrang for gældsbrevslovens regler om transport af fordringer* i de tilfælde, hvor en fordring på udbytte er baseret på et ihændehavergældsbrev. Denne forrang for de selskabsretlige regler må i sagens natur, jf. princippet i GBL § 27, gælde så meget mere, hvor fordringen på udbytte fremtræder som en simpel fordring! Såvel den kapitalejer, der transporterer udbyttet, som de ledelsesmedlemmer, der effektuerer udbetalingen, er naturligvis bundet af bestemmelserne om

udbytteudlodning i såvel lov om aktie- og anpartsselskaber som i vedtægterne. Heraf følger, at transporthaver naturligvis også er bundet af disse regler.

Allerede på grund af bestemmelsen i GBL § 24, stk. 2, kan de således slås fast, at reglerne i KSL §§ 1, 45 og 82 samt vedtægternes regler om udbyttets fordeling efter gældende dansk ret har forrang for reglerne om transport af fordringer i gældsbrevslovens §§ 29 og 30, og dette gælder, uanset om fordringen på udbytte fremstår som et ihændehavergældsbrev eller som en simpel fordring. Transportgivers kreditorer kan således kræve, at udbytte, der måtte være udbetalt til transporthaver i strid med reglerne om udbyttets fordeling i vedtægterne eller kapitalselskabsloven, tilbageføres fra transporthaver til den kapitalejer, der i henhold til vedtægterne har ret til udbyttet. En regel som gik på, at hvor en kapitalejers fordring på udbytte blev overdraget til en anden kapitalejer ved en (hemmelig) ejeraftale, så blev reglerne om udbytteudbetaling i kapitalselskabsloven og selskabets vedtægter sat ud af kraft, er ikke blot uforenelig med reglerne i gældsbrevsloven, men også med de hensyn, der er bærende for de selskabsretlige regler om vedtægternes offentliggørelse og hensynet til tredjemands indsigt i selskabets væsentligste karakteristiske træk. Disse hensyn skal på grund af det første og andet selskabsretlige direktiv tillægges afgørende vægt ved fortolkningen af de i dansk ret gældende regler (Se Bind 1, afsnit 5.2.2.2, 5.3.1, og 5.3.2).

## Tilbagebetalingspligt (KSL § 194)

Tilbagebetalingspligten vedrørende ulovlige udbetalinger foreskrevet i KSL § 194 (nedenfor afsnt 6.4) påhviler som udgangspunkt den kapitalejer, der i henhold til vedtægterne har retten til udbytte. I det omfang kapitalejerens fordring på udbytte er transporteret, følger det af GBL § 24, stk. 2, hhv. GBL § 27, at transporthaver, der skal respektere de selskabsretlige regler om udbytte, er omfattet af tilbagebetalingspligten. Hvor udbyttet ikke kan inddrives fra overdrageren eller erhververen, hæfter de, der har truffet eller medvirket til beslutningen

389

om skævdeling, for selskabets tab efter de almindelige erstatningsregler, jf. KSL § 194, stk. 2. Ledelsen ifalder dog ikke ansvar i tilfælde, hvor man ikke havde grund til mistanke om, at transporten af fordringen på udbytte var baseret på en ejeraftale, jf. GBL § 30, 2. pkt.

## Fodnoter

9. Se Erik Werlauff, UfR 2012B, s. 2-9.

10. Se hertil nærmere Søren Friis Hansen, Skattepolitisk Oversigt 2008, s. 1-23, med henvisninger.

11. Se hertil Trine Bonde Jensen, Revision & Regnskabsvæsen 2009/12, s. 54, der anfører, at KSL § 82 »ikke i sig selv [kan] antages at hindre, at skævdeling af udbytte reguleres i ejeraftalen uden indføjelse i vedtægterne«. Se tillige Martin Kristian Kruhl, Ejeraftaler (2011), s. 323.

12. Se Peer Schaumburg-Müller & Erik Werlauff, Vedtægter og ejeraftaler (2010), s. 99, der anfører: »Denne skatteretlige praksis med accept af en mellem kapitalejerne på sagligt grundlag aftalt omfordeling af udbytte kan efter vor opfattelse videreføres også efter den 1. marts 2010.«

13. Udlodninger til kapitalejere, der camoufleres som »bonus« eller »rabat«, anses således utvivlsomt som udlodning af udbytte ved anvendelse af kapitalselskabslovens regler, jf. i særdeleshed KSL § 179. Se hertil allerede H.B. Krenchel, Håndbog i dansk aktieret (2. udg. 1954), s. 191f, samt Lars Bunch & Søren Corfixsen Whitt, Selskabsloven med kommentarer (3. udg. 2018), ad § 179, note 2.

14. Se hertil Erik Werlauff, UfR 2012B, s. 2-9 (s. 6, med note 21). Werlauff anfører (vores fremhævelse): »Det blev tidligere antaget, at hvis der var en saglig begrundelse for skævdelingen, måtte denne også accepteres skatteretligt. Efter mellemkommende ændringer af både skattelovgivningens udbyttebegreb og af selskabslovgivningens forskrifter om

ejeraftalers manglende selskabsretlige virkning for selskabet, må det imidlertid i dag antages, at skævdeling af udbyttet i forhold til den faktiske fordeling af selskabskapitalen alene vil kunne ske gennem en vedtægtsbestemmelse, dvs. gennem en opdeling i aktie- hhv. anpartsklasser.« Se tillige Søren Friis Hansen, Revision & Regnskabsvæsen 2009/6, s. 36-44, samt Lars Bunch & Søren Corfixsen Whitt, Selskabsloven med kommentarer (3. udg. 2018), ad § 1, note 5.

15.. Se Lars Bunch & Søren Corfixsen Whitt, Selskabsloven med kommentarer (3. udg. 2018), ad § 194, note 2, der anfører. »Det er dog i den forbindelse vigtigt at tilføje, at reglerne cm tilbagebetaling ikke kun gælder, hvis en udbetaling strider mod reglerne om kapitalafgang i selskabslovens kapitel 11. Tilbagebetalingskravet gælder således også ved udlodninger, der krænker andre bestemmelser i selskabslovgivningen«.

16.. Købelovens § 19, stk. 1, lyder: »Køb af aktie omfatter det udbytte, som ikke var forfalden på den tid, da købet sluttedes.« Bestemmelsen er deklaratorisk, hvilket indebærer, at den kan fraviges ved aftale mellem sælger og køber. Hvis sælger ikke har taget forbehold, har køberen og dennes kreditorer retten til det fulde ikke-forfaldne udbytte. I givet fald har den, der har transport i ikke forfaldent udbytte som en simpel fordring, ikke bedre ret end overdrageren, jf. GBL § 27, hvorfor transporthavers ret i dette tilfælde bortfalder. Rådgivere opfordres til forsigtighed ved transport af fremtidigt udbytte.

17.. Jf. Erik Werlauff, UfR 2010B, s. 130-133 (s. 132). Werlauff anfører således: »Tværtimod har selskabet i sin egenskab af debitor, når omfordelingen denuntieres over for selskabet, pligt til at efterkomme et sådant påbud, jf. gældsbrevslovens § 29 og UfR 1990.630H«. Se tillige Peer Schaumburg-Müller & Erik Werlauff, Vedtægter og ejeraftaler (2010), s. 92f, og tilsvarende Martin Christian Kruhl, Ejeraftaler (2011), s. 324, men anderledes Søren Friis Hansen, NTS 2012:1, s. 48-53.

18.. Jf. Lynge Andersen, Møgelvang-Hansen & Ørgaard, Gældsbrevsloven med kommentarer (3. udg. 2017), ad § 29, note 2.

19.. Se hertil H.B. Krenchel, Håndbog i dansk aktieret (2. udg. 1954), s. 122, der anfører: »Erhververen må finde sig i såvel den ved lovgivningen, f.eks. al. § 44 [vedrørende udbyttets størrelse] som i vedtægterne fastsatte begrænsning af udbyttets størrelse, deri givne regler om kuponens forfaldsdag, om aktierettens fortrydelse på grund af manglende indbetaling af restindskud mv.«. Se tillige Ussing & Dybdal, Gældsbrevslovene (1938), s. 69, cer anfører, at bestemmelser i selskabets vedtægter formentlig kan påberåbes også over for en godtroende erhverver af en løs udbyttekupon. Se endelig Udkast til Lov om Gældsbreve med tilhørende Bemærkninger (1935), s. 45: »Det antages i nugældende Ret, at Bestemmelser i et Aktieselskabs Vedtægter kan paaberaabes overfor en godtroende Erhverver af et negotiabelt Aktiebrev, selv om de ikke er optaget i dette. Det samme maa gælde for Kuponer, hvorfor det i 2det Stykke, 1ste Punktum foreslaas, at Selskabets Vedtægter skal være bindende for den, der erhverver Kuponer. Derimod kan en Bestemmelse, der ikke genfindes i Vedtægterne, ikke gøres gældende overfor den godtroende Erhverver af en Kupon, selv om Bestemmelsen er optaget i Aktierne.«