# Exhibit 58

CHAPTER 18  COMPUTER TRANSLATION

# Assignment of claims

1. The main rule: free transferability

Most claims can be transferred from one creditor to another. The transfer of claims is of particular practical importance when it comes to monetary claims. The transfer of a claim does not require the consent of the debtor, see U 1985.694 Ø. Instead of transferring a claim from one creditor to another, a new claim can be created by agreement with the debtor, which replaces the previous claim. Such a novation is not a transfer. The priority of such a new claim depends on the new agreement, not on the old one. Any security provided for the fulfillment of the old claim must be provided anew if it is to cover the new claim, cf. U 1990.247 H, but cf. U 1997.1376 H.

See also VLT 1941.36, U 1952.590 V, U 1986.501 H and U 1996.1615 H (omitted) and 4. del p. 40, *Godsk Pedersen:* Kaution p. 86 f. and p. 90 with note 68 and *Beck Thomsen and Rohde:* Kaution og tredjemandspant p. 89 ff, p. 142 f. and p. 158 and p. 162 f.

In general, the freedom to change creditors includes all forms of transfer of claims, in particular assignment, creditor proceedings, succession and subrogation. In the case of an assignment by agreement, the assignor is often called *the assignor*, the assignee the *assignee* and the debtor of the claim the *(debtor) cessus*. The transaction is called an *assignment* and the claim is said to be *assigned* from the assignor to the assignee.[1]

    The assignment of a receivable - a transport - can be for ownership or for security. Companies have a special option to assign receivables as security, namely in the form of a *company pledge* according to TL § 47 c or a *receivables pledge* according to TL § 47 d.

---

1. Cf. *Hagstrøm:* Obligasjonsrett p. 884.

Torsten Iversen - 9788771981902
Download from Jurabibliotek.dk, 07/22/2024
09:18:03AM
via Kammeradvokaten

Company and receivables pledges were introduced by Act 560 of June 24, 2005, which entered into force on January 1, 2006. The rules, which are based on bet. 1459/2005, are most appropriately dealt with in the lien law and will not be discussed further in the following. Reference is made to *Bent Iversen et al:* Panteret p. 397 ff, *Lasse Højlund Christensen* in ET 2006 p. 27 ff, *the same and Christian Jul Madsen* in ET 2006 p. 202 ff, *Bang-Pedersen* in U 2006 B p. 101 ff, the *same et al:* Virksomhedspant, *Peter Mortensen:* Virksomhedspant og fordringspant, *Michael Flindhardt:* Virksomhedspant and *Astrid Millung-Christoffersen:* Virksomhedspant. See the relationship between the seller's retention of title and the buyer's mortgage *Gam Mad- sen* in ET 2013 p. 325 ff.

An assignable claim can generally also be transferred to a new creditor by other forms of transfer. Claims that are assignable can be attached, cf. section 514(3) and (4) RPL and U 1967.411 Ø and U 1988.226 Ø. Ownership of assets other than claims, such as real estate, movable property, shares and money can, unless otherwise specifically authorized, be transferred to others, be subject to creditor proceedings and be inherited by the owner. It is natural that a claim to a benefit - whether it is determined by its kind (genus) or individually (species) - can be transferred when the benefit as such is transferable. The rule of free transferability is recognized in all countries we normally compare ourselves with.

The rule is also stated in the *Principles of European Contract Law (PECL)* and the *Draft Common Frame of Reference (DCFR)*, cf. PECL Art. 11:102 and DCFR Art. III-5:105, but cf. Uni- form Principles of Commercial Contracts (UPICC) art. 9.1.3, which states that non-monetary claims are only assignable if the claim does not become significantly more onerous for the debtor. The rule of free transferability is not without exceptions in Danish law either, see below in section 4.

The presentation here in chapter 18 deals mainly with creditor substitution by assignment of unsecured monetary claims. Negotiable claims are discussed in chapter 19.

It increases the value of a claim for the creditor that he not only has the right to collect the claim from the debtor when due, but that he can also monetize the claim before maturity by - possibly with deduction of interest and risk - transferring the claim for ownership or as security if he can find a buyer or lender and thus improve his liquidity. The value of the claim for the creditor as an object of sale or mortgage is increased because the preferential right under Chapter 10 of the Danish Bankruptcy Act and generally also security in the form of mortgages and sureties follow the claim upon assignment or other transfer, cf. section 99 of the Danish Bankruptcy Act and U 1986.377 V, U 1987.14/2 H and U 1998.1728/2 V. It is generally assumed that the assignment of claims can be made *in part* (either so that several new creditors take the place of the previous creditor, or so that the new creditor

Torsten Iversen - 9788771981902
Download from Jurabibliotek.dk, 07/22/2024
09:18:03AM
via Kammeradvokaten

This is an exception to the general rule that claims cannot be partially assigned (e.g. the creditor keeps part of the claim but assigns the rest). However, there must be limits to the possibility of partial assignment, especially in the case of non-monetary claims.[2]

According to PECL art. 11:103, DCFR art. III-5:107 and UPICC art. 9.1.4, partial assignment can usually also take place, but the assignor must reimburse the debtor for the additional expenses incurred.

Assignment for ownership or security is important in many cases. A contractor can, for example, transfer his receivable from the client to his bank, or a lessor of movable property can, for example, give a creditor a lien on the rental income.[3] The free transferability is not generally to the detriment of the debtor. In a commercial debt relationship, it is usually irrelevant to the debtor whether he has to pay one or the other. He has to pay under all circumstances. On the contrary, free transferability is often in the debtor's interest because the creditor's willingness and ability to grant loans and credit may depend on the fact that he can finance the credit he grants by, for example, mortgaging his accounts receivable before maturity, by discounting purchase contracts or by selling vendor mortgages. A supplier of goods can not only achieve faster payment, but also reduce the effort and cost of collecting accounts receivable by transferring the receivables to a company that can achieve economies of scale by organizing debt collection and carrying out the collection process both cheaper and more efficiently (invoice financing/fac- toring). Such a company can either take ownership of the transport and thus assume the risk of losses on unsound debtors (forfaiting) or take the transport as security. The collateralizer often secures itself against losses by retaining an appropriate amount, e.g. 20% of the face value of the receivables, which is sometimes deposited in a special security account.[4]

Agreements on assignment of claims are not subject to special formalities. claims. Assignments of unsecured claims are generally treated according to the rules in the Debt Instruments Act on unsecured debt instruments, even if the debtor has not issued a debt instrument for the claim. A transfer of ownership for consideration is a purchase for value, which is covered by the Sale of Goods Act, whether the object of sale is a claim for money or for something other than money or a right that is not a claim.

---

2. Cf. *Hagstrøm:* Obligasjonsrett p. 888 f.
3. Cf. *Søren Thor Jensen* in U 1998 B p. 6 ff.
4. See *Lars Hedegaard Kristensen:* Erhvervsfinansieringsret p. 172 ff.

111

Torsten Iversen - 9788771981902
Download from Jurabibliotek.dk, 07/22/2024
09:18:03AM
via Kammeradvokaten

but e.g. a share or unit. This is provided for in KBL sections 19 and 20 on interest and dividends with regard to monetary claims and shares and the like.[5]

The scope of the Credit Agreements Act is narrower. Like the Sale of Goods Act, this Act does not apply to "all purchases other than the purchase of immovable property" (section 1a(1)), but only to credit agreements for the purchase of movable property, cf. KAL section 5. This means that oral claims are not covered by the Act, and securities are exempted from the Credit Agreements Act by section 1 of Bkg. no. 497 of June 13, 1994, cf. KAL section 53. However, the Executive Order cannot exempt securities from the part of the Credit Agreements Act that repeats the Consumer Credit Directives of 1987 and 1990, including Article 5.

The act of security is the same whether the conveyance is for ownership or for security (pledge), cf. GBL § 31. The character of the conveyance as a sale or pledge is, however, important in other relations, e.g. for the right to rescind the conveyance. Transport as security for older debts is voidable to a greater extent than a transport of a claim due for payment, cf. KL §§ 67 and 70.[6]

Under Norwegian law, assignment of claims is also not subject to formal requirements, cf. *Hagstrøm:* Obligasjonsrett p. 857, but as under Danish law, compliance with a security deed is required to obtain creditor and turnover protection. According to PECL art. 11:104, DCFR art. III. 5:110 and UPICC art. 9.1.7, no special formal requirements apply to agreements on assignment of claims.

## 2. Simple claims

The rules on the assignment of unsecured claims and the assignment of negotiable claims and securities are based on different rationales. The aim of the rules on unsecured claims is to avoid increasing the debtor's burden in the event of assignment. The objective of the rules on negotiable instruments, on the other hand, is to ensure that bona fide merchants have the right which the content of the debt document confers on the creditor. As stated, unsecured claims are dealt with in this chapter, while negotiable claims are dealt with below in chapter 19.

A debtor under an unsecured claim is discharged by paying in good faith to his previous creditor, cf. section 29 of the GBL. An unsecured claim may be oral or written. However, if the debtor has issued a negotiable debt document for the claim, he is only discharged by payment to the holder of the document, cf.

---

5. See *Ussing:* Køb p. 2 and *Theilgaard et al:* Købeloven p. 49.
6. See *Lindencrone Petersen and Ørgaard:* Konkursloven p. 611 f. with references to case law.

Torsten Iversen - 9788771981902
Download from Jurabibliotek.dk, 07/22/2024
09:18:03AM
via Kammeradvokaten

The same applies if another special document of title has been issued for the claim, cf. the words "the special nature of the debt instrument" in GBL § 29. The objections which the debtor may have against being wholly or partly obligated to the creditor may also be raised against a subsequent acquirer of the claim, cf. GBL § 27.

An unsecured claim cannot be pledged even if the claim is mentioned in a written statement of debt, e.g. a registered debt instrument, cf. GBL § 26. Transfer of possession of an unsecured debt instrument or other written statement of an unsecured claim to the transferee does not limit the creditor's ability to dispose of the claim and therefore does not generally secure the transferee's right, cf. GBL §§ 29-31. However, both an assignment for possession and as security of an unsecured claim can generally be secured against prosecuting creditors and against bona fide transferees by a notice - a so-called de-nunciation - to the debtor about the assignment, cf. GBL § 31.

The sale of a business usually also includes its outstanding receivables, and the GBL contains the labor-saving rule on business sales in section 31(3) that the buyer of a bookkeeping company including its outstanding receivables receives turnover protection of its right to these receivables without denunciation. However, in case of transfer by way of security, denunciation is required, cf. U 1969.267 SH.

While simple claims cannot be pledged, so-called legitimation documents (like many negotiable documents) can be pledged, cf. GBL § 31(4).[7] Neither simple claims nor negotiable claims can be sub- pledged by registration of a mortgage deed, cf. TL § 47(4), but simple claims can now be pledged *en masse* by company pledge or receivables pledge, cf. TL §§ 47 c and 47 d.

### 3. Factors affecting the value of the receivable

The rules on preservation or extinction of rights and objections etc. have an impact on the value of a claim. However, other factors often play a more important role in determining whether it is possible to assign or pledge a receivable and the amount that can be obtained. Unless otherwise agreed, the buyer bears the risk of loss due to the debtor's inability to pay (credit risk) when transferring receivables. Receivables from debtors who are generally known and are obviously able and willing to pay their debts, or

---

7. See about credentials below in sections 8.2.2 and 10 and in chapter 19, sections 1 and 5.

Torsten Iversen - 9788771981902
Download from Jurabibliotek.dk, 07/22/2024
09:18:03AM
via Kammeradvokaten

KAPITEL 18

ORIGINAL

# Overdragelse af fordringer

## 1. Hovedreglen: fri overførlighed

De fleste fordringer kan overføres fra den hidtidige kreditor til en anden. Overførelse af fordringer har især praktisk betydning, når det gælder pengefordringer. Overførelsen af en fordring kræver ikke samtykke fra debitor, jf. U 1985.694 Ø. I stedet for at overføre en fordring fra en kreditor til en anden kan der ved en aftale med debitor stiftes en ny fordring, som træder i stedet for den tidligere fordring. En sådan novation er ikke en overførelse. Forældelsen af en sådan ny fordring afhænger af den nye aftale, ikke af den gamle. Sikkerheder, som måtte være stillet for opfyldelsen af den gamle fordring, skal stilles på ny, hvis de nu skal dække den nye fordring, jf. U 1990.247 H, men sml. U 1997.1376 H.

Se også VLT 1941.36, U 1952.590 V, U 1986.501 H og U 1996.1615 H (udeladt) samt 4. del s. 40, *Godsk Pedersen:* Kaution s. 86 f. og s. 90 med note 68 og *Beck Thomsen og Rohde:* Kaution og tredjemandspant s. 89 ff., s. 142 f. og s. 158 og s. 162 f.

Den frie adgang til kreditorskifte omfatter i almindelighed alle former for overførelse af fordringer, navnlig overdragelse, kreditorforfølgning, arv og subrogation. Hvor der er tale om en overdragelse ved aftale, kaldes overdrageren ofte for *cedenten*, erhververen for *cessionaren*, og fordringens debitor for *(debitor) cessus*. Transaktionen kaldes for *cession*, og fordringen siges at blive *cederet* fra overdrageren til erhververen.[1]

Overdragelse af en fordring – en transport – kan ske til eje eller til sikkerhed. Virksomheder har en særlig mulighed for at overdrage fordringer til sikkerhed, nemlig i form af *virksomhedspant* ifølge TL § 47 c eller *fordringspant* ifølge TL § 47 d.

---

1.  Jf. *Hagstrøm:* Obligasjonsrett s. 884.

Torsten Iversen - 9788771981902
Download fra Jurabibliotek.dk, 07/22/2024 09:18:03AM
via Kammeradvokaten

Virksomheds- og fordringspant blev indført ved lov 560 af 24. juni 2005, der trådte i kraft den 1. januar 2006. Reglerne, der bygger på bet. 1459/2005, behandles mest hensigtsmæssigt i panteretten og vil ikke blive omtalt nærmere i det følgende. Der henvises til *Bent Iversen m.fl.:* Panteret s. 397 ff., *Lasse Højlund Christensen* i ET 2006 s. 27 ff., *samme og Christian Jul Madsen* i ET 2006 s. 202 ff., *Bang-Pedersen* i U 2006 B s. 101 ff., *samme m.fl.:* Virksomhedspant, *Peter Mortensen:* Virksomhedspant og fordringspant, *Michael Flindhardt:* Virksomhedspant og *Astrid Millung-Christoffersen:* Virksomhedspant. Se om forholdet mellem sælgerens ejendomsforbehold og køberens virksomhedspant *Gam Madsen* i ET 2013 s. 325 ff.

En fordring, der er overdragelig, kan i almindelighed også overgå til en ny kreditor ved andre former for overførelse. Der kan gøres udlæg i fordringer, som er overdragelige, jf. RPL § 514, stk. 3 og 4, samt U 1967.411 Ø og U 1988.226 Ø. Også ejendomsretten til andre aktiver end fordringer, såsom fast ejendom, løsøre, aktier, anparter og penge kan, hvor ikke andet har særlig hjemmel, både overdrages til andre, være genstand for kreditorforfølgning og falde i arv efter ejeren. Det er naturligt, at krav på en ydelse – uanset om den er bestemt ved sin art (genus) eller individuelt (species) – kan overdrages, når ydelsen som sådan kan overdrages. Reglen om fri overførlighed er anerkendt i alle lande, vi normalt sammenligner os med.

Reglen er også fastslået i *Principles of European Contract Law (PECL)* og *Draft Common Frame of Reference (DCFR)*, jf. PECL art. 11:102 og DCFR art. III-5:105, men sml. Uniform Principles of Commercial Contracts (UPICC) art. 9.1.3, som fastslår, at fordringer på andet end penge kun er overdragelige, såfremt fordringen ikke bliver væsentligt mere byrdefuld for debitor. Reglen om fri overførlighed er heller ikke i dansk ret uden undtagelser, jf. nedenfor i afsnit 4.

Fremstillingen her i kapitel 18 omhandler navnlig kreditorskifte ved overdragelse af simple fordringer på penge. Negotiable fordringer er omtalt i kapitel 19.

Det øger værdien af en fordring for kreditor, at han ikke blot har ret til at inkassere fordringen hos debitor, når forfaldstid er kommet, men at han også kan gøre fordringen i penge før forfaldstid ved – eventuelt med fradrag for rente og risiko – at overdrage fordringen til eje eller til sikkerhed, såfremt han kan finde en køber eller långiver og således forbedre sin likviditet. Værdien af fordringen for kreditor som salgs- eller belåningsobjekt øges, fordi fortrinsret efter KL kap. 10 om konkursordenen og i almindelighed også sikkerheder i form af pant og kaution følger fordringen ved overdragelse eller anden overførelse, jf. KL § 99 samt U 1986.377 V, U 1987.14/2 H og U 1998.1728/2 V.

Det antages almindeligvis, at overdragelse af krav kan ske *delvis* (enten således at flere nye kreditorer træder i den hidtidige kreditors sted, eller såle-

Torsten Iversen - 9788771981902
Download fra Jurabibliotek.dk, 07/22/2024 09:18:03AM
via Kammeradvokaten

des at kreditor beholder en del af kravet, men overdrager resten), hvilket for så vidt er en undtagelse til hovedreglen om, at krav ikke kan udstykkes. Der må dog være grænser for adgangen til delvis overdragelse, især når det gælder fordringer på andet end penge.[2]

Efter PECL art. 11:103, DCFR art. III-5:107 og UPICC art. 9.1.4 kan delvis overdragelse som regel også finde sted, men overdrageren skal godtgøre skyldneren de yderligere udgifter, han herved påføres.

Overdragelse til eje eller sikkerhed har betydning i mangfoldige tilfælde. En entreprenør kan f.eks. transportere sit tilgodehavende hos bygherren til sit pengeinstitut, eller en udlejer af løsøre kan f.eks. give en kreditor pant i lejeindtægterne.[3] Den fri overdragelighed er ikke i almindelighed til skade for debitor. I et kommercielt skyldforhold er det som oftest uden betydning for debitor, om han skal betale til den ene eller den anden. Betale skal han jo under alle omstændigheder. Den frie overførlighed er tværtimod ofte også i debitors interesse, fordi kreditors vilje og evne til at yde lån og kredit kan være afhængig af, at han kan finansiere den kredit, han yder, ved før forfaldstid f.eks. at belåne sine kundefordringer, ved at diskontere købekontrakter eller ved at sælge sælgerpantebreve. En vareleverandør kan ikke blot opnå hurtigere betaling, men også begrænse sit besvær og sine omkostninger med at inddrive kundefordringer ved at overdrage fordringerne til et selskab, som kan opnå en stordriftsfordel ved at sætte inkasso af fordringer i system og foretage inddrivelsen både billigere og mere effektivt (fakturabelåning/factoring). Et sådant selskab kan enten tage transport til eje og således overtage risikoen for tab på usolide debitorer (forfaitering) eller tage transport til sikkerhed. Den, der har transport til sikkerhed, sikrer sig ofte mod at lide tab ved at tilbageholde et passende beløb, f.eks. 20 % af fordringernes pålydende, som undertiden indsættes på en særlig sikringskonto.[4]

Aftaler om overdragelse af fordringer er ikke undergivet specielle formkrav. Overdragelse af simple fordringer behandles i almindelighed efter reglerne i gældsbrevsloven om simple gældsbreve, også selv om debitor ikke har udstedt gældsbrev for fordringen. Overdragelse til eje mod vederlag er et løsørekøb, som er omfattet af købeloven, hvad enten salgsgenstanden er en fordring på penge eller på andet end penge eller en rettighed, som ikke er en for-

---

2. Jf. *Hagstrøm:* Obligasjonsrett s. 888 f.
3. Jf. *Søren Thor Jensen* i U 1998 B s. 6 ff.
4. Jf. *Lars Hedegaard Kristensen:* Erhvervsfinansieringsret s. 172 ff.

111

Torsten Iversen - 9788771981902
Download fra Jurabibliotek.dk, 07/22/2024 09:18:03AM
via Kammeradvokaten

dring, men f.eks. en aktie eller anpart. Dette er for så vidt angår pengefordringer og aktier og lign. forudsat i KBL §§ 19 og 20 om renter og udbytte.[5]

Området for kreditaftaleloven er snævrere. Denne lov angår ikke som købeloven »alle køb, bortset fra køb af fast ejendom« (§ 1 a, stk. 1), men kun kreditaftaler med henblik på køb af løsøre, jf. KAL § 5. Heri ligger, at mundtlige fordringer ikke er omfattet af loven, og værdipapirer er ved bkg. nr. 497 af 13. juni 1994 § 1 undtaget fra kreditaftaleloven, jf. KAL § 53. Bekendtgørelsen kan imidlertid ikke undtage værdipapirer fra den del af kreditaftaleloven, der er en gentagelse af direktiverne om forbrugerkredit af 1987 og 1990, herunder art. 5.

Sikringsakten er den samme, hvad enten der er tale om transport til eje eller til sikkerhed (pantsætning), jf. GBL § 31. Transportens karakter af salg eller pantsætning har derimod betydning i andre relationer, bl.a. for adgangen til at omstøde transporten. Transport til sikkerhed for ældre gæld er omstødelig i videre omfang end en transport af en forfalden fordring til betaling, jf. KL §§ 67 og 70.[6]

Efter norsk ret er overdragelse af fordringer heller ikke undergivet formkrav, jf. *Hagstrøm:* Obligasjonsrett s. 857, men ligesom efter dansk ret kræves iagttagelse af en sikringsakt for at opnå kreditor- og omsætningsbeskyttelse. Efter PECL art. 11:104, DCFR art. III. 5:110 og UPICC art. 9.1.7 gælder der heller ikke særlige formkrav for aftaler om overdragelse af fordringer.

## 2. Simple fordringer

Reglerne om overdragelse af simple fordringer og af negotiable fordringer og værdipapirer bygger på forskellige grundsynspunkter. Målet for reglerne om simple fordringer er at undgå, at debitors byrde øges ved overdragelse. Målet for reglerne om negotiable fordringer er derimod at sikre omsætningserhververe i god tro den ret, som skylddokumentet efter sit indhold hjemler kreditor. Som anført behandles simple fordringer i dette kapitel, mens negotiable fordringer behandles nedenfor i kapitel 19.

Debitor efter en simpel fordring bliver frigjort ved i god tro at betale til sin hidtidige kreditor, jf. GBL § 29. En simpel fordring kan være mundtlig eller skriftlig. Har debitor udstedt et negotiabelt skylddokument for fordringen, frigøres han derimod kun ved betaling til ihændehaveren af dokumentet, jf.

---

5. Jf. *Ussing:* Køb s. 2 og *Theilgaard m.fl.:* Købeloven s. 49.
6. Jf. *Lindencrone Petersen og Ørgaard:* Konkursloven s. 611 f. med henvisninger til retspraksis.

112

Torsten Iversen - 9788771981902
Download fra Jurabibliotek.dk, 07/22/2024 09:18:03AM
via Kammeradvokaten

nærmere GBL § 19. Det samme gælder, såfremt der er udstedt et andet særligt legitimationsdokument for fordringen, jf. ordene »gældsbrevets særlige beskaffenhed« i GBL § 29. De indsigelser, som debitor måtte have mod at være helt eller delvis forpligtet over for kreditor, kan han også gøre gældende over for en senere erhverver af fordringen, jf. GBL § 27.

En simpel fordring kan ikke håndpantsættes, selv om fordringen er omtalt i en skriftlig skylderklæring, f.eks. et navnegældsbrev, jf. GBL § 26. Overgang af besiddelsen af et simpelt gældsbrev eller anden skriftlig erklæring om en simpel fordring til erhververen begrænser ikke kreditors mulighed for at råde over fordringen og sikrer derfor ikke i almindelighed erhververens ret, jf. GBL §§ 29-31. Både en overdragelse til eje og til sikkerhed af en simpel fordring kan derimod i almindelighed sikres mod retsforfølgende kreditorer og mod godtroende omsætningserhververe ved en meddelelse – en såkaldt denuntiation – til debitor om overdragelsen, jf. GBL § 31.

Salg af en virksomhed omfatter som oftest også dennes udestående fordringer, og GBL indeholder den arbejdsbesparende regel om virksomhedssalg i § 31, stk. 3, at køberen af en bogføringspligtig virksomhed inklusive dennes udestående fordringer får omsætningsbeskyttelse af sin ret til disse fordringer uden denuntiation. Ved overdragelse til sikkerhed kræves dog denuntiation, jf. U 1969.267 SH.

Mens simple fordringer ikke kan håndpantsættes, kan såkaldte legitimationspapirer (i lighed med mange negotiable dokumenter) gives i håndpant, jf. GBL § 31, stk. 4.[7] Hverken simple fordringer eller negotiable fordringer kan underpantsættes ved tinglysning af et pantebrev, jf. TL § 47, stk. 4, men simple fordringer kan nu pantsættes *en masse* ved virksomhedspant eller fordringspant, jf. TL §§ 47 c og 47 d.

### 3. Faktorer af betydning for fordringens værdi

Reglerne om bevaring eller ekstinktion af rettigheder og indsigelser m.m. har betydning for værdien af en fordring. Andre faktorer spiller dog ofte en væsentlig(ere) rolle for, om det overhovedet er muligt at omsætte eller belåne en fordring, og for det beløb, der kan opnås herved. Ved overdragelse af fordringer bærer køberen, hvis ikke andet er aftalt, risikoen for at lide tab på grund af manglende betalingsevne hos debitor (kreditrisiko). Fordringer på debitorer, som er almenkendte og åbenbart kan og vil betale deres gæld, eller

---

7. Se om legitimationspapirer nedenfor i afsnit 8.2.2 og 10 samt i kapitel 19, afsnit 1 og 5.

Torsten Iversen - 9788771981902
Download fra Jurabibliotek.dk, 07/22/2024 09:18:03AM
via Kammeradvokaten