# Exhibit 1

| | |
|---|---|
| **Message** | |
| pious: | [Erna Christensen /O=CUSTOMS TAX/OU=CUSTOMS TAX/CN=RECIPIENTS/CN=W11520 ] |
| late: | 18-01-2007 10:15:14 |
| two: | Leif Normann Jeppesen [leif.jeppesen@skat.dk] |
| Cc: | Lisbeth Rømer [lisbeth.roemer@skat.dk]; Susanne Reinholdt Andersen [susanne.reinholdt@skat.dk]; Keld Borup [keld.borup@skat.dk]; Jette Zester [jette.zester@skat.dk]; 2014 [niels.andersen@skat.dk]; Henrik Møller Nielsen [henrik.moeller.nielsen@skat.dk]; Michael Bjørn Hansen [michael.bjoern.hansen@skat.dk]; Lisbeth Rasmussen [lisbeth.rasmussen@skat.dk]; Anders Holten Lutzhøft [anders.lutzhoeft@skat.dk]; Mogens Rasmussen [mogens.rasmussen@skat.dk] |
| **Subject:** | Sv: Re |
| **Attachments:** | EW.doc |

I would like to make the following comments:
Lisbeth Rømer stated at the joint meeting that the quantity of shares in question does not relate to the shares owner. They have been received tax-free under the rule laid down in Paragraph 13(1) of the SEL. 1.

Lisbeth Rømer must provide the information on the proportion of the total proceeds of the case.

I have serious doubts about the description of the tax implications of share lending. The area is subject to freedom of contract, so who is entitled to receive the "dividend" and who receives any benefits is not entitled to the benefit. compensatory amounts may not be clearly defined (this is stated without knowledge of the February 2004 working paper). Henrik Møller Nielsen must be able to answer this more precisely. Please note that section 16C(1) of the Danish Tax Assessment Act states that the tax on the use of the tax on the use of the product in the field of health and Rule 3(3) states:

  *Pcs. 3*. The calculation of the minimum distribution shall include the following revenue:
1) Accrued interest and current benefits, both spread over the period covered by the income, as well as remuneration for the lending of securities.
2) Dividends earned under Section 16A less withholding dividend tax and tax refunded **in so far as the said income is not covered by paragraph 16B and the borrower's payment to the lender of his non-dividend dividend on share lending, in so far as those income is not covered by paragraph 10. 9.**

9) **Dividends earned under Section 16A less dividend tax deducted and tax on dividends refunded and relinquished in accordance with Section 16b and the borrower's payment to the lender of his non-dividend dividend on share lending, in so far as the said income for taxable persons would be covered by Section 4a(1) of the Act. 1, No. 1 or 2, without being covered by Paragraph 4a(2). 2**.

Changes to the profit statements are the responsibility of the ESC and the work is on the agenda.

Yours sincerely

Erna Christensen


**from: Leif Normann Jeppesen Sent:** 18. January 2007 09:19
**towards:** Lisbeth Rømer; Susanne Reinholdt Andersen; Keld Borup; Erna Christensen; **Jette Zester**
**Cc:** Niels Andersen; Henrik Møller Nielsen; Michael Bjorn Hansen; **Lisbeth Rasmussen Subject:**
Sv: Re|

At great risk that there are things I have misunderstood, I have made the attached draft early warning in the case.

I have wondered whether we cannot ask the private equity fund for a statement on the ownership of the shares in 2006 and whether they have been lent - possibly in 2006 - or whether they have been lent. obtain copies of agreements to that effect. I do not know whether we have the legal basis for this - but I suppose that is information that we will have at a later date when we have to go through the tax return - and I suppose we should!

Otherwise, we must ask ^^^^^^for documentation of purchase and sale or of loans, etc.

- or we should do both at the same time!

Confidential Pursuant to Protective Order                               TAX MDL 001 00603756

Confidential Pursuant to Protective Order                               SKAT_MDL_001_00603756_T

I would very much like to hear your comments on my draft and on my proposal very quickly!!! Yours sincerely

# Leif Normann Jeppesen SKAT

Jarlic Napkin

east railway street 123, 2100 Copenhagen O

E-raaO: Laif.Jappesani20Skai.dk Phone: (-M3) 72 37 88 42

**from: Lisbeth Rømer Sent:** 16. January 12, 2007 12:51 PM
**towards:** Susanne Reinholdt Andersen; Keld Borup; Erna Christensen; Leif Normann Jeppesen; **Jette Zester**
**Subject:** Vs:

Dear all,
With this statement in hand, all we can do is release the money. We are working to avoid similar situations in the future.
If I haven't been counter-ordered tomorrow Wednesday at noon, I'll release.
I have just received the original document.
Yours sincerely Lisbeth Rømer

**from:**
**sent:** 12. **January 2007 10:44 To:** Lisbeth Rømer **Cc:** Laurits Cramer; Sven Nielsen; **| subject:** Rel

```
Lisbeth
Please see the attached file for a copy of the documentation you requested for

ve been sending the original documents today by international courier for your attention to
the following address:
```

Dividend tax Post office box 59 GB 2750 Ballerup

```
Please acknowledge the safe receipt of the documents.

Thank you,
2015- 2
```

Tax Reclaims London


Phone 00 44| Fax 00 44

Confidential Pursuant to Protective Order

SKAT_MDL_001_00603756_T

Dividend tax in SKAT Ballerup has received a refund request for a refund of (Can I have you - Lisbeth to transfer and customize the text from your original note?) tax to persons and companies, etc. resident in France.

The background is, notare 88,2 % of the shares in TDC A/S. ^^^^^| wishes TDC to be delisted, but this has not yet been ac<u>hieved</u> as it does not own a sufficient share of the share of the company. Against this background, it is doubtful whether some of the institutional shareholders in 2006 wished to divest any part of their shareholding. We do not have any concrete knowledge of share transactions to this extent.

In spite of this, it claims ^^^^^^^^^^^^| to be the beneficial owner of more than half of the activity at the time of the declaration of dividends in 2006.

This gives rise to further examination of whether these are any share transactions that, according to current Danish tax practice, can be overridden as non-real share transactions or whether they are share lending.

The tax rules on share lending can be summarised as follows:

The conclusion of a share loan agreement under current international agreements entitles the borrower to dispose of the borrowed shares. Nevertheless, the lender is not considered to have disposed of the shares for tax purposes (no disposal tax) - despite the fact that the loan is recorded as a buy/sell in VP.

Under the loan agreement, dividends on the shares lent must be returned to the lender - whether it is the borrower who receives the dividends or he has disposed of the shares, and the dividend is therefore paid to that buyer (or a subsequent borrower/buyer, etc.). *The National Tax Court has ruled that only the owner can be taxed on dividends, and since th*e lender is not considered to have disposed of the shares for tax purposes, it is he - and only him - who should be taxed for dividends.

However, there is a major control problem herein, as the borrower has the shares in question (listed as the owner in VP) and therefore immediately also registers as a dividend recipient and receives the dividend as such. The problem is even greater if the borrower has resold the shares to a buyer - and this buyer may again have lent the shares to a borrower who has in turn resold the shares, etc.

I assume that share lending is made solely in agreement with the owner of the shares (possibly in agreement with the owner of the shares). by another by proxy - but so that the agreement can legally be traced back to the owner). However, I have heard rumours that in some cases share lending can be done without the owner's knowledge through the account-holding institution. It's for me at the moment. whether these matters are covered by the rules of the Securities Trading Act, etc. - See. to this end:

**§ 55.** Where a clearing house or clearing house participant grants loans to a clearing participant in connection with the settlement of securities transactions or payments at the clearing house, it may be agreed beforehand with the borrower that the fund assets of the borrower held in one or more of the borrower's designated deposits in a CSD may serve as a mortgage for the repayment of the loan.

—and subsequent paragraphs.

With the current tax rules in Denmark, this means that the same shareholding can legally be legally included simultaneously in the holding of several owners - but only the actual (original) owner can receive dividends from it in a tax sense.

In the present case, this would mean that the declaration of ownership of the shares may be correct in so far as it may well be correct - but it is not enough to justify reimbursement of dividend tax, since the dividend is not considered a profit for tax under the Danish rules (the borrower must, according to the standard agreements, hand

over (refund) the dividend to the lender).

In general, the case gives rise to a debate as to whether the current practice in Denmark should be changed. This could only be done by a change in the law or by a change in practice in the Danish Tax Council. This assessment must include, on the one hand, the need for industry to have this instrument available to the same extent as in other countries and the tax rules for share lending by other countries. In February 2004, a working group with participants from Customs Tax and the Ministry of Taxation produced a working paper with a review of the Danish rules on share loans and a comparison with other countries' rules. This work has not been continued.

At the same time, consideration should be given to whether there are grounds for a change in the the Double Taxation Convention with France (here too!) - and whether such a change is possible.

In any case, our dividend declaration forms should be carefully reviewed to make it clear what our requirements are for ownership, etc. and proof of this in order to obtain a refund of dividend tax. This may have to be the case. in cooperation with the French authorities.

Finally, the problem of share loans must be assessed in relation to the action plan - I believe that there is a basis for carrying out immediate investigations in selected areas of how share loans are in practice treated in accounts and tax returns, etc. - in the context of the accounting rules. This can be done in cooperation with the Danish Financial Council and the Danish FSA. As part of this investigation, checks may be made on dividend tax refunds made in 2005 and 2006 to shareholders in France.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00603759_T