# Exhibit 9, Part 3

# 8. General assessment of SKAT's level of control in the section 38 area

Based on the generally recognized model for a description of internal control, "The three lines of defense" (DK: De tre forsvarslinjer), Internal Audit has generally described and assessed the internal control measures in SKAT's revenue management (section 38); see Figure 8.1 below.



Figure 8.1.

**General comments on first line of defense**
The Executive Board lays down the guidelines for operational management in the first line of defense through a number of policies, procedures, and instructions as well as the framework for organization of the tasks.

The first line of defense also includes the internal controls built into the individual procedures. The internal control must be designed and implemented in such a way that the risks regarded as material by the management, including

- that the financial statements are not presented correctly
- that the legal framework is not complied with, and
- that the management is not financially sound,

are reduced to the greatest possible extent. The organization must also include the probability of the occurrence of an adverse event.

Elements in the internal control may, for example, be:

- Design and implementation of evaluation programs
- Management reporting on key targets and objectives
- Identification of risks that may prevent SKAT from meeting its targets and objectives
- Organizational and system-related segregation of duties between management and disbursement
- Control that the prerequisite for a given disbursement is present

It is important that the controls deal with the risks which the management has regarded as material and that the controls are performed in an integrated manner in the procedure for the individual areas. The management in SKAT thus achieves that SKAT is managed in a controlled manner as a whole for the individual areas and for the individual transactions.

Automated and preventive controls should have first priority. Subsequent controls performed after the occurrence of events should be given lower priority and preferably be opted out of unless another choice is not possible or expedient.

*Management controls in SKAT*
The management controls in SKAT are performed under the internal quality management system and are characterized by being subsequent controls aimed at individual activities in the procedures.

No process-oriented management controls have been implemented for checking that the tasks are performed in accordance with the adopted procedures. One of the reasons for the lack of process-oriented management controls is that ownership and responsibility for a process are not placed with one single officer responsible. The responsibility for a process is instead placed with several officers who are each responsible for a number of sub-processes, without an officer with overall process responsibility being designated.

As concerns the accounting process, the management controls are reported under the continuous approvals of the financial statements. The approvals of the financial statements do not form part of the management information to the Executive Board.

The accounting process is characterized by being rooted at head of office level. Internal Audit has pointed out several times that the centrally established provisions in the accounting instructions do not cover the whole accounting process. Furthermore, they are described in vague terms, making it impossible immediately to determine which tasks are accounting tasks. This has meant that the accounting process has become an appendix to the other processes which, in effect, create the financial reporting information.

*Internal controls in SKAT*
A general rule for internal controls in SKAT is that there are a number of centrally established routines and controls which must be implemented in the individual procedures in SKAT's core areas. For example, there are concepts for internal control in connection with decision-making in certain situations.

Internal controls which are not centrally established must be implemented for each activity. Most of SKAT's processes are not documented so that an overview is created of the procedures, activities, and data flows in the processes.

The internal control that the reported data basis (vouching) is correct is primarily performed by control via compliance projects on the basis of SKAT's activity plan. The areas of the data basis which are to be selected for control are assessed through a risk assessment of the legislation on taxes and duties and of the individuals and businesses that the legislation concerns.

> Our assessment is that the control measures in the first line of defense are generally weak.
>
> The internal control in the first line of defense is affected by the absence of "end-to-end" process responsibility and by responsibility for cross-organizational processes not having been implemented. This means that the management controls performed do not check the processes across the organization in accordance with uniform concepts and standards. The management control only comprises isolated individual activities in the respective business areas.
>
> In addition, identification and handling of risks are hampered by the procedures and inherent IT systems not being documented. Well-documented procedures provide an overview of data flow and activities between units as well as knowledge about risks and internal control.

**General comments on second line of defense**
The purpose of the functions in the second line of defense is to monitor and analyze the controls in the first line of defense as well as preparing risk management tools and providing guidance and training related to risk management and internal control. The work also includes escalation of critical events so that the necessary adjustments to the process are made.

*Monitoring, controlling, and quality assurance in SKAT*
SKAT has not implemented comprehensive continuous monitoring of the controls performed in the first line of defense, including the management controls performed.

Formally, controller functions have been established which are responsible for the overall risk overview, measurement, and analysis as well as consultancy. The controller functions are responsible for monitoring the performance of management controls in the first line of defense and reporting to the Executive Board.

The deputy director general of the individual business area in SKAT has the final and overall responsibility for the internal quality assurance for the whole business area. This means that quality assurance is performed and that quality problems identified through the quality assurance are remedied.

The implemented and reported internal quality assurance forms part of the monthly management briefing.

> Our assessment is that the control measures in the second line of defense are generally weak.
>
> The primary reason for our assessment is that the management controls performed do not check the processes across the organization in accordance with uniform concepts and standards, nor do they check the process as a whole, but only isolated individual activities in the individual business areas.
>
> Likewise, there is no established structured, systematic, and overall monitoring function for performing the above functions and the accompanying activities. The monitoring that the controller functions perform only comprises the management controls established under the internal quality management system, and the monitoring is not process-oriented.

**General comments on third line of defense**
The purpose of the Ministry of Taxation's independent internal audit is to contribute with objective assessments and advice on the effectiveness and reliability of the internal management and control, thereby creating value and contributing to improving the internal control of the organization.

Independently of SKAT, Internal Audit performs continuous separate and independent assessments and tests of SKAT's internal control and reports on whether the guidelines laid down by the management are effective and whether they are complied with.

## 8.1 Interim conclusion

> Internal Audit's assessment is that the first and second lines of defense overall do not constitute an effective safeguard against unintended financial events in SKAT. This means that, in a large number of areas, Internal Audit cannot conduct a control-based audit which is based on a continuous assessment of SKAT's control activities and the follow-up on these activities. The overall effect of the three lines of defense is thus reduced.

# 9. The general procedure applying to dividend tax and refunds

This chapter contains an analysis and an assessment of the procedure established for the purpose of administering dividend tax, including the refund of dividend tax. The chapter also contains an account of the weaknesses of the IT systems and any compensating manual actions.

## 9.1 Overview of the procedure

The entire procedure for the administration of dividend tax and refunds consists of a number of sub-procedures, see figure 9.1.



Figure 9.1

The procedure "Angivelse" (*declaration*) includes the declaration by the dividend-distributing companies of adopted dividend and withheld dividend tax as well as the payment of withheld dividend tax to SKAT. (The dividend-distributing companies are hereinafter referred to as the distributing companies). The procedure "Indberetning" (*reporting*) includes the distributing companies' reporting of the recipients of dividend. The procedure "Refusion" (*refund*) includes the registration and the refund of dividend tax to the recipients of dividend not liable to Danish tax.

## 9.2 Declaration

The distributing company must declare the dividend and pay dividend tax the month after the adoption of the distribution of dividend. The declaration to SKAT must be in total amounts and contain the following information, but see section 9.2.2 "Unlisted companies".

*Declaration of dividend tax*

|  | Dividend before tax | Dividend tax |
|---|---|---|
| 27% dividend tax |  |  |
| 25% dividend tax |  |  |
| Dividend tax under double taxation treaties (subject to SKAT's approval) |  |  |
| 15% dividend tax, investment companies |  |  |
| Treasury shares |  | 0 |
| An exemption applies to distributed dividend with a tax deduction of 0 under section 16A(2) and (3) or section 16B(2) |  | 0 |
| Other dividend without dividend tax (including parent |  | 0 |
| Distributed dividend and dividend tax in total |  |  |

Table 9.2

Figure 9.3 below shows the procedure applying to the _declaration_ of dividend and dividend tax.



Figure 9.3

In practice, dividend and withheld dividend tax are declared by entering the data in NyTastSelv Erhverv (NTSE) which transfers the data to 3S. The procedure varies, depending on whether the company is a listed or an unlisted company, see figure 9.3 above.

### 9.2.1. Listed companies

The information about the shareholders in listed companies is registered in VP Securities (SP). The listed companies declare the dividend and the dividend tax based on information received from VP. The declarations are entered into NTSE which transfers the data to 3S. VP has received the information about the recipients of dividend from the custodians' registrations of the owners of the custody accounts. The dividend tax is calculated based on the current Danish dividend tax rates.

### 9.2.2. Unlisted companies

The unlisted companies declare dividend and withheld dividend tax by registering the declarations in NTSE. The company reports the "distributed dividend" and the "withheld dividend tax" for each recipient of dividend in NTSE. In NTSE the declaration is the total of all declarations. The information is transferred to 3S.

## 9.3 Reporting

Information about the distributed dividend and the withheld dividend tax is reported to SKAT in respect of each recipient of dividend. This duty to report includes both the shareholders liable to Danish tax and the shareholders liable to foreign tax.

Since 2013, both listed and unlisted companies have been under an obligation to report the information about the recipients of dividend the month after the adoption of the distribution.

Figure 9.4 below contains a schematic overview of the reporting of distributed dividend and withheld dividend tax for each shareholder. The figure shows that the reporting procedures vary, depending on whether the company is a listed or unlisted company.



*Figure 9.4*

### 9.3.1 Listed companies' reporting of dividend to shareholders

VP reports the information about the companies and the investment funds registered with VP. VP reports the information about the recipients of dividend based on the custodians' registrations of the owners of the custody accounts. The custodians or VP may make subsequent corrections. VP uploads a reporting file directly to SKAT's system called eKapital. VP is to carry out the reporting no later than the month after the adoption of the distribution of dividend.

The information about the distributed dividend, the withheld dividend tax and the information to identify the recipient of the dividend and the reporting agent, etc is submitted to eKapital.

Information about the recipients of dividend, both individuals and companies, is to be submitted irrespective of whether they are resident in Denmark or abroad. The information about the foreign recipients of dividend tax is to include the civil registration no/CVR no/VAT no.

*Reporting of foreign recipients*

The recipient of dividend's full name and address must be submitted. If possible, both the Danish and the foreign identification numbers (civil registration no/Tax Identification Number (TIN) or the date of birth) are to be reported.

In the case of foreign shareholders, there can be a chain of foreign banks between VP and the actual shareholder, see figure 9.5 below.



Figure 9.5

That is the case of the so-called omnibus accounts where a foreign bank has opened a collective custody account with a Danish bank, but where the Danish companies' shares are kept in the foreign bank's custody account (see figure 9.5, option 1).

It is also possible that a foreign bank has a collective custody account directly with VP just as a foreign securities centre may register a shareholding directly with VP (see figure 9.5, options 2 and 3).

The registrations of the shareholdings in these omnibus accounts that VP receives will generally be total amounts if there is no information about the individual foreign shareholders. The reason is that VP registers the owner of the account as a recipient of the dividend, see chapter 14.

Finally, a Danish pension fund/pension company may decide to make investments through a foreign bank. It means that the Danish pension fund's/pension company's investments are registered in a foreign collective custody account and the consequence is that VP does not have any information about the individual shareholder.

### 9.3.2 Unlisted companies' reporting of dividend to shareholders

The unlisted companies report the distributed dividend and the withheld dividend tax in respect of the individual recipients of dividend through NTSE.

The information is registered in the system 3S and is transferred to eKapital. The procedure is illustrated in figure 4.

The information about the distributed dividend, the withheld dividend tax and the information to identify the recipient of the dividend, etc is reported to eKapital.

The information about the recipients of dividend, both in respect of individuals and companies, is to be submitted irrespective of whether the recipients are resident in Denmark or abroad. The information about the foreign recipients of dividend tax is to include the civil registration no/CVR no/VAT no.

When submitting the information about the foreign recipients, the foreign recipients' full name and address as well as a Danish and a foreign identification number (civil registration no/TIN) are to be registered if possible.

It is possible in NTSE to register foreign recipients of dividend without any clear identification of the individual shareholder.

### 9.3.3 Net settlement of dividend tax through the VP programme

The VP programme is an agreement entered into between VP and SKAT. The programme is that based on the current double taxation treaties VP withholds the correct dividend tax (net settlement).

The prerequisite for participating in the programme is that the shareholder is a natural person and both the shareholder and the custodian must have decided to participate in the programme. It is also a prerequisite that the dividend-distributing shares are kept in a custody account with a Danish bank in the holder's own name and that the holder submits documentation to the bank about its address and taxation.



Figure 9.6

VP reports the withheld dividend tax based on the custodians' registrations of the owners of the custody accounts. VP uploads a reporting file directly to SKAT's system called eKapital. The advantage of the programme is that it is possible to fully and finally settle the recipient of dividend's dividend tax in connection with the distribution of dividend.

### 9.3.4 Net settlement - special permission for unlisted companies

It is also possible for principal shareholders in unlisted companies to get a special permission from SKAT to apply a reduced rate in connection with the withholding of dividend tax. The permission is given to persons liable to pay tax who are covered by a double taxation treaty. The consequence is that the relevant dividend tax (net settlement) will be withheld in respect of these shareholders under the double taxation treaty. The distributing company registers the recipient of dividend with the reduced rate in NTSE by referring to the special permission from SKAT.

## 9.4 Refund of dividend tax

A recipient of dividend whose dividend tax has been withheld in connection with the distribution of dividend from a Danish company may apply for a refund if the recipient is not fully liable to pay tax in Denmark and is subject to a double taxation treaty or is liable to pay tax in a EU Member State. The refund is a payment back of excess amounts of dividend tax. The refund is the difference between the withheld dividend tax and the rate agreed in the double taxation treaty.

It is possible for the recipient of dividend tax to request a refund by submitting a refund form to SKAT or by requesting a refund through the bank programme.

### 9.4.1 Refund of dividend tax through the manual programme (the form programme)

In connection with the distribution from a Danish company a recipient of dividend that fulfils the conditions, see section 9.4, may request a refund of any excess amount of dividend tax. The recipient of dividend may ask for a refund itself or through an agent.



Figure 9.7

When requesting a refund, the applicant is to submit a filled-in refund form to SKAT. The form is available on SKAT's website or by contacting SKAT.

In addition to filling in the form, the applicant is also to enclose the following material/information:

- Documentation for the receipt of the dividend from the custodian.
- Confirmation of the address/liability to pay tax from the local tax authority.
- Information about the account number.
- A power of attorney, if the request has been submitted by an agent for the beneficial owner.

SKAT checks that the refund amount claimed back has been calculated correctly under the double taxation treaty and that the required documentation has been submitted.

SKAT pays out the refund amount claimed back into the specified account if the application has been filled in and the required documentation has been submitted. If the required material is incomplete, SKAT sends back the application to the applicant, informing the applicant of what information that is missing.

*SKAT does not check* whether the recipient of dividend held the shares when the distribution was made and whether the distribution and the withheld tax have been reported to eKapital.

*9.4.2   Refund of dividend tax through the bank programme*

Figure 9.8 below shows the procedure for a refund of dividend tax through the bank programme.



*Figure 9.8*

SKAT has entered into an agreement with three banks. These three banks submit the request for a refund on behalf of the foreign banks (the bank programme). The foreign banks submit the requests for a refund in a spreadsheet specifying the amounts that are claimed back. Each application contains information about the applicant's name, the share, the number of shares, the adoption date, the distributed dividend as well as the requested reduction in dividend tax.

The shares in respect of which a refund is claimed back are kept in separate custody accounts or collective custody accounts with the foreign bank. The spreadsheets that SKAT receives contain the same information regardless of whether the shares are kept in a separate custody account or a collective custody account.

*It is not a requirement* that the foreign bank is to submit a certificate from the foreign tax authorities to the bank participating in the bank programme.

The three banks participating in the bank programme carry out the following checks:
- Check the shareholdings in separate custody accounts
- Establish the credibility of the request considering the collective custody accounts.

The three banks participating in the bank programme check that the dividend has been distributed to the bank in question and that the dividend tax has been withheld. The foreign bank keeps the necessary documentation up to five years after the year of the distribution.

When SKAT receives the request for a refund from a bank participating in the bank programme, SKAT goes through the documentation if documentation has been submitted, but documentation is not submitted in every case. Contrary to the refunds made by using the form, the refunds through the bank programme are not registered in 3S but are booked directly in SAP38 as a total sum. Several requests from the same bank may be added together and this total amount provides the basis for a total payment transfer.

SKAT transfers the payment to one of the three banks participating in the bank programme. The bank passes on the refund amount to the foreign bank that subsequently makes the final payment to the recipients of dividend.

### 9.5 Effective control of the basis

Intern Revision finds that a control of the basis in connection with the payment of the refund of withheld dividend tax is to ensure that the correct/valid basis for paying out the refund exists.

It means that the payment control should not just include an analysis and an assessment of the received material but also checking that the dividend tax was withheld before paying the refund.

Since 2013, VP has submitted the information about the recipients of dividend with eKapital no later than the month after distribution has been adopted at the general meeting. In the case of foreign recipients of dividend, there can be a chain of foreign banks between VP and the actual shareholder. The consequence is that the information that VP has and submits to eKapital about foreign recipients of dividend is often total amounts and not a clear identification of the final recipient of dividend.

It means that in connection with the processing of a request for a refund by a foreigner it will often not be possible for SKAT to identify the individual recipient of dividend. Correspondingly, it is not possible to check whether the dividend tax for which the recipient of dividend seeks a refund has been withheld. SKAT has not worked on including the information about the recipients of dividend in eKapital in connection with the processing of a request for a refund.