# Exhibit 9, Part 4

### 9.6 Sub-conclusion

> SKAT checks whether the request for a refund is accompanied by the required documentation.
>
> SKAT does not check whether the recipient of dividend held the shares when the distribution was made and whether dividend tax has been withheld before the payment of the refund.
>
> In order for SKAT to be able to carry out an effective control in connection with the request for a refund SKAT must have information about the withheld dividend tax in respect of the individual recipients of dividend.
>
> Since 2013, SKAT has received reporting about the recipients of dividend the month after the adoption of the distribution, which means that SKAT has the information when it processes the application.
>
> SKAT has not worked on including the submitted information about the recipients of dividend from eKapital in connection with the processing of a request for a refund.
>
> However, SKAT did not have sufficiently detailed information about the foreign recipients of dividend in order for each distribution to be traced back to one specific shareholder.

Confidential Pursuant to Protective Order                                      SKAT_MDL_001_0075835_T

# 10. Organizational rooting of tasks concerning dividend tax

The current organizational rooting of the tasks concerning dividend tax was implemented in connection with the reorganization as at April 1, 2013.

In connection with the reorganization as at April 1, 2013, the work tasks concerning dividend tax and dividend tax refund were rooted in the following deputy director general areas:

- Customer Service
- Collection
- Compliance
- IT

The overall dividend tax administration process is thus divided into a number of sub-processes rooted in the deputy director general areas involved.

## 10.1 Assessment of controls and level of control

In connection with the reorganization as at April 1, 2013, the overall work tasks were distributed on the individual deputy director general areas. The controls used in the dividend administration were not assessed in connection with the reorganization as at April 1, 2013. No active decision was thus made on the level of control in the dividend tax area, including a division of the controls in the individual procedures as well as controls of a monitoring nature. As a result, any distribution of controls on the deputy director general areas involved was not considered. The purpose of the reorganization did not include active decision-making on these areas.

## 10.2 Responsibility for day-to-day operations (operational responsibility)

**The Customer Service deputy director general area** is the process owner and is responsible for the ongoing administration of the systems for declaration of dividend, reporting of dividend, and refunding of dividend tax. Customer Service is responsible for reconciliation between declaration and reporting as well as for reconciliation between dividend tax withheld and the subsequent bookkeeping.

**The Collection deputy director general area** is responsible for the ongoing disbursement of dividend tax refunds. The process comprises the disbursement of dividend tax refunds applied for by stockholders with foreign tax liability. The process includes the following principal elements:

- Receiving a claim for dividend tax refund, with the required documents enclosed
- Checking that the relevant documents are enclosed with the claim
- Checking the claimed dividend tax refund amount
- Disbursement of dividend tax refund.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

TRANSLATION

Page [ PAGE \* MERGEFORMAT ] of 91

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**The Compliance deputy director general area** implements ongoing projects aimed at reducing the "tax gap." Regarding dividend tax, the Compliance deputy director general area has not implemented compliance projects aimed at dividend tax refunds (see Chapter 11, reference to the section on first line of defense).

**The IT deputy director general area** initiates ongoing changes of IT support in accordance with requests for changes from the individual process owners.

## 10.3 Monitoring of the overall dividend taxation process, including assessment of the established level of control

SKAT has not implemented overall continuous monitoring of the dividend area across the deputy director general areas involved.

The non-consolidation of process owner responsibility for the whole dividend process has also meant that no consolidated risk assessment has been performed which could have constituted a platform for ongoing well-founded changes to the dividend tax process.

It should be noted that the non-establishment of overall process owner responsibility does not mean that a continuous assessment of the overall dividend process is not required. The individual deputy director general areas involved will also be responsible for an overall and effective dividend process in addition to being responsible for continuous assessment and subsequent improvement of that part of the process which is rooted in the relevant deputy director general area.

## 10.4 Controls actually implemented in the dividend tax area
In connection with the reorganization as at April 1, 2013, the following controls were presupposed to be implemented in the dividend tax area:

- Reconciliation between declaration and reporting
- Reconciliation between registration of dividend tax and subsequent bookkeeping
- Control of enclosed documents and vouchers in connection with the disbursement of refund amounts
- Continuous approvals of financial statements.

Confidential Pursuant to Protective Order                        SKAT_MDL_001_0075835_T

## 10.5 Interim conclusion

In connection with the reorganization as at April 1, 2013, the work tasks concerning dividend tax and dividend tax refund were rooted in the following deputy director general areas in SKAT:

- Customer Service
- Collection
- Compliance
- IT

SKAT has not implemented overall continuous monitoring of the dividend area across the deputy director general areas involved.

The non-consolidation of process owner responsibility for the whole dividend process has also meant that no consolidated risk assessment has been performed which could have constituted a platform for ongoing well-founded changes to the dividend tax process.

It should be noted that the non-establishment of overall process owner responsibility does not mean that a continuous assessment of the overall dividend process is not required. The individual deputy director general areas involved will also be responsible for an overall and effective dividend process in addition to being responsible for continuous assessment and subsequent improvement of that part of the process which is rooted in the relevant deputy director general area.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

# 11. First line of defense – controls

In connection with declaration and reporting of dividend tax and refunds, we have assessed the controls implemented in the first line of defense for the area below.



**Figure 11.1.**

In the chapter, we review the controls implemented and assess whether the controls (the control environment) are effective for the following areas.

1. Declaration/reporting
2. Reconciliation between declaration and reporting
3. Refund – manual claims
4. Refund – bank scheme
5. Refund – VP scheme
6. Continuous approvals of financial statements.

In addition, we assess whether the continuous approvals of the financial statements constitute effective controls in the first line of defense.

## 11.1 Declaration/reporting

In connection with the companies' declaration of dividend and withheld dividend tax as well as reporting of dividend recipients, the companies use a central system in SKAT called New E-tax for Businesses (Ny TastSelvErhverv (NTSE)).

Until January 1, 2014, non-listed companies entered the amounts in the form of a declaration of dividend and dividend tax in NTSE. Likewise, non-listed companies made entries in the form of reporting of the individual dividend recipient in NTSE.

After January 1, 2014, non-listed companies are only required to report dividend and dividend tax for the individual dividend recipients in NTSE, after which, based on the reporting, NTSE calculates the total "declaration" of dividend and dividend tax for the company. The information reported is transferred to the 3S system.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

The process for listed companies is that they must use NTSE when entering their declaration of dividend and dividend tax.

VP Securities (VP) handles the reporting of dividend recipients for listed companies in the form of an electronic reporting file to eKapital. SKAT does not check whether the information from VP is correct. Information about dividend recipients is not transferred to 3S.

However, in connection with receipt of the input file for eKapital, there is an automated control which means that the files and data fields that do not have a correct format, and thus cannot be loaded in eKapital, are entered on an error list for manual follow-up. For loaded files, eKapital performs various cross-validations to ensure that the data is complete.

Internal Audit has performed an assessment of the input data controls in NTSE and can ascertain that, to a limited extent, there is use of mandatory fields which must be filled in before reporting can be completed. However, Internal Audit has ascertained extensive use of cross-validations/dependencies between the fields which the companies can fill in. For example, if a company states "DK" as the ISO country code, the company cannot concurrently state TIN no. (Tax Identification Number); instead, the company is required to fill in the fields for name and address details of the recipient. This means that some of the fields will indirectly become mandatory, depending on what the companies report, and there will consequently be a requirement for entering more information.

In relation to the amount fields, it has been ascertained that NTSE only accepts positive figures in connection with declarations of dividend amounts, and that the individual fields are validated when leaving the field and any error texts are displayed. Likewise, when VAT registration number and civil registration number are entered, there is a modulus check of the data entered.

Internal Audit's assessment is that the input data controls in NTSE contribute to ensuring complete and uniform data in specific fields.

## 11.2 Reconciliation between declaration and reporting

For several years, SKAT has worked on harmonizing the deadlines for declaration of dividend and dividend tax and reporting of dividend recipients. It has not previously been possible to make a real-time reconciliation, as the reporting of dividend recipients was made up to one year after the declaration.

With the current solution for non-listed companies, the declaration of dividend and dividend tax is stated as a sum of the reporting made, which eliminates the need for reconciliation. The listed companies enter a declaration of dividend and dividend tax in NTSE concurrently with VP delivering an electronic reporting file to eKapital about the dividend recipients.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

For listed companies, there will thus still be a need for reconciliation between the declaration and the amount for the stated dividend recipients. SKAT has stated that it currently does not make a reconciliation of listed companies, but that SKAT is in the process of finding a solution.

Prior to 2014, there was internal automated dividend control, in which information from the companies' tax return was compared with the declarations in 3S. If the companies had reported a distribution of dividend in their tax returns, but had not submitted declarations to SKAT, they were printed out on a reminder list for manual follow-up.

Internal Audit has ascertained that this functionality has not been continued in connection with a change of 3S in early 2014.

## 11.3 Refunds – claims via form scheme

On physical receipt of a refund claim from dividend recipients or their agents via the form scheme, relevant fields from the form are entered manually in 3S by a case officer in SKAT.

The overall process is described in Figure 11.2 below.



Figure 11.2.

Confidential Pursuant to Protective Order                                       SKAT_MDL_001_0075835_T

### 11.3.1 Manual controls in connection with registration in 3S

Prior to the entry of relevant fields, the case officer checks manually that the claim (form 06.003) has been filled in correctly and that the required documentation is there, including (see Figure 11.2):

- That it has been certified correctly by the tax authority in the country in which the stockholder is tax liable.
- That documentation for dividend received and dividend tax withheld is enclosed.
- That the required power of attorney has been provided if the claim is made by an individual (representative) other than the beneficial owner.
- That the account number for the disbursement of refund has the correct format, and that the name, address, etc. match the enclosed documentation. If an IBAN number has been provided, its format is only checked upon reporting in 3S.

Internal Audit has been informed that, in several cases, it may be difficult for the case officer to assess whether the submitted documents and certifications from foreign tax authorities are valid. The reason for this is that the case officer does not have a basis of comparison, in the form of advisory lists of documents from the different countries, which allows for a comparison and validation of the documents received. The case officer can therefore only reject the submitted documents in those cases in which the documents are manifestly inadequate.

Internal Audit's assessment is that the manual control in connection with the examination of the forms submitted is therefore not effective.

The case officer also manually checks the amount applied for. In this connection, the following is checked:

- That the refund amount is correctly calculated in relation to the relevant double taxation agreement (the DTA). The case officer has a spreadsheet overview of all DTAs and rates, which is used to check that the correct rate has been used.

- That the amount is correctly calculated in relation to the enclosed documentation. There will often be several different dividend notifications for the same claim. The amount claimed is verified as follows:

    - A calculation is performed in a spreadsheet (not filed, however).

    - The amount is converted into and disbursed in Danish kroner. According to the documentation, the amount is stated as dividend tax per stock in Danish kroner times the number of stocks and is compared with the amount claimed.

If the amount claimed has not been correctly calculated, the amount is corrected. If information is missing, the application is returned to the applicant's agent with a specification of the items in the application for which further information is required.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

If the forms and information are found to be complete and correct, the case officer enters the relevant information in 3S. The amount claimed is also entered in an internal spreadsheet for use for:

- Subsequent checking of the reporting in 3S.
- Compilation of combined statistics on the number of cases and amounts disbursed.
- Any subsequent retrieval of the case/claim.

When the case officer enters the information in 3S, the dividend-paying company's dividend declaration is first retrieved. When the company has been found, the function "Report relief from Danish dividend tax" ("Indberet fritagelse for dansk udbytteskat") is selected, and relevant refund data is entered and saved.

In connection with the review, Internal Audit has obtained a copy of the latest user guide. The guide is dated December 18, 2002, in a version 1.4, and it describes how users should use 3S. Internal Audit is aware that the 3S system has undergone subsequent changes, which should have resulted in an update of the user guide.

In connection with the review, we have asked SKAT about procedure descriptions for identification of interfaces and segregation of duties. Available procedure descriptions were not updated at the time of the review, but they have subsequently been updated and sent to Internal Audit.

The lack of updated user guides and procedure descriptions means that the case officers are unable to find "help" in cases in which there is doubt about the handling of the individual actions, which increases the risk of incorrect processing of refund claims submitted.

### 11.3.2 System-supported controls after registration in 3S

#### 11.3.2.1 Input data controls
Internal Audit has been informed that, in connection with the reporting of a dividend tax refund application in 3S, a number of mandatory fields must be filled in before an application can be accepted in 3S. In the most recent guide from 2002, we have seen that the fields "Name" ("Navn"), "Address" ("Adresse"), "Dividend" ("Udbytte"), "Date of receipt" ("Modtagelsesdato"), and "Batch no." ("Bundt nr.") are mandatory fields which must be filled in. 3S does not have requirements for the actual contents of the fields except that the "Dividend" field must contain figures, the date in the "Date of receipt" field must be later than the current date, and the date must be later than the adoption date and be stated in a specific date format. As regards the "Name" and "Address" fields, there are no requirements for the contents of the entries. Input data controls have thus been used to a limited extent to ensure unique, complete, valid, and consistent data in specific fields.

In connection with the review of 3S, it has been ascertained that the case officer only enters relevant fields for identification and retention of the dividend recipient to a limited extent, and that the statement of the dividend recipient's country is entered in the address field with the possibility that inaccurate and non-uniform country denominations may be stated.

### 11.3.2.2 Control of duplicates

Internal Audit has ascertained that automated control has been established in 3S which can identify duplicates. The system notifies the case officer if several refund claims have been entered for the same dividend recipient for the same dividend distribution. Internal Audit has seen documentation showing that a duplicate has been entered and found, which has been cancelled before transfer to the finance component. The control has thus worked and prevented a double disbursement.

In the guide from 2002, it is noted that the duplicate control is set up in such a way that 3S makes a comparison of the data stated in the "Name" field. This means that if the case officer enters a refund claim for a dividend recipient who has previously applied for a refund for the same dividend-paying company, 3S will notify the case officer thereof if the case officer has entered exactly the same name. If the case officer enters a character incorrectly, or if the applicant has changed a character in relation to the previously submitted refund claim, this will be regarded as a new refund claim and will not be identified by the control.

During the review, it was ascertained that it is not possible in the 3S system to state any civil registration number, central business registration number (CVR no.), or TIN no. for the dividend recipient in connection with the refund claim.

The lack of complete entry of "Name" and "Address" in conjunction with the lack of statement of any civil registration number, CVR no., or TIN no. of the dividend recipient means that SKAT cannot use these fields to search for duplicates.

### 11.3.2.3 Control of total dividend refund per company

Internal Audit has found that a system control has been established in 3S which notifies the case officer if a total refund has been claimed for a company which is higher than the dividend tax declared by the company.

In connection with Internal Audit's review, information has been received that it was not possible to perform this control in relation to some listed companies in 2013 and 2014 because an error in 3S meant that it was not possible to "enter" refund claims received in the dividend-paying company's declaration. Instead, the case officer created a 0 declaration for the dividend-paying company in which the refund claims submitted were registered. In connection with the entry, 3S notified the case officer that "The total amounts reported exceed the distribution in the declaration," which is due to the amount on the entered refund claim being higher than the 0 declaration.

This procedure has meant that the control has, in effect, been disabled and has thus not contributed to ensuring that no refunds are disbursed which exceed the amounts declared by the companies in the dividend tax refund claims processed via 3S.

Internal Audit also finds that the design of the control is not expedient because the control does not take into consideration the refund claims which SKAT receives via the bank scheme and dividend tax withheld for Danish dividend recipients.

Confidential Pursuant to Protective Order                                   SKAT_MDL_001_0075835_T

Refund claims via the bank scheme are not entered in 3S, and they are thus not included in the control of whether the company is refunded a higher amount than it has withheld in dividend tax. In addition, 3S uses the total dividend tax (27%) as a basis of comparison even though refunds can only be made for dividend tax withheld from foreigners.

We have seen records showing that SKAT has reported in 2013, 2014, and 2015 that 3S has displayed a "green screen" in some cases in connection with the reporting of refund claims, which has prevented the reporting of the company's declaration.

Our review of records received show that the "green screen" error occurs in those cases in which two declarations have been registered for the same dividend distribution in 3S. 3S has not been able to handle multiple declarations in connection with the subsequent reporting of refund claims.

At the beginning of July 2015, the system was changed, after which it has again been possible for 3S to compare refund claims in 3S with the declaration of dividend tax. SKAT states that no compensating checks were made for the listed companies in the period in which the automated control was not working.

### 11.3.2.4 Notifications from 3S to the case officer

In those cases in which the controls in 3S discover an "error" in connection with data entries, the case officer is notified via the screen in 3S. The notification to the case officer does not mean that the reporting is rejected, it is merely a notification to the effect that there are matters to which the case officer must pay particular attention. After the notification, the case officer must make an assessment of whether there is, in fact, an error that needs to be corrected or whether the refund claim is to be met.

The case officer may also choose not to take any action, and thus disregard the controls, which will affect the data quality. The procedure descriptions submitted do not contain information about how the case officer is to act in cases in which the case officer receives a notification.

Internal Audit has received records showing that, for one of the listed companies for which there is a suspicion of fraud, the dividend tax refund disbursed exceeds the amount of dividend tax withheld.

### 11.3.2.5 Comparison between claim and reporting

Internal Audit is aware that the "non-listed companies" report the individual dividend recipients in NTSE with subsequent electronic transfer to 3S. This transfer makes it possible to check the individual dividend recipient against the recipient's refund claim in connection with the processing of the refund claims received via the form scheme. In connection with a demonstration of the system, Internal Audit has not been able to ascertain that such a check is made, nor does it appear from the procedure descriptions that such a check must be made.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

SKAT has also stated that "Processing of dividend tax refund claims is an administrative task in which it is solely checked that the required documentation has been submitted with the claim and that the claim has been certified by the foreign tax authority." Internal Audit therefore finds that such a check is not done.

For listed companies, VP reports the dividend recipients to the eKapital system in SKAT. This information is not transferred to 3S, and a check of the listed companies is therefore not possible.

## 11.4 Refunds – the bank scheme

SKAT also receives refund claims directly from three banks, which send the claims in a "spreadsheet" to SKAT on behalf of their customers.

The overall process is outlined in **Figure 11.3** below.



**Figure 11.3.**

The claims submitted can be itemized on dividend recipients, but there may also be several dividend recipients in the individual claim/spreadsheet.
There is no agreed requirement for concurrent submission of documentation of place of residence and tax liability, but, in some cases, the banks also submit documentation in conformity with the documentation received when the individual dividend recipient independently submits a claim for dividend tax refund. In these cases, the case officer performs a manual check of the material submitted in conformity with the "form scheme"; see section 11.3. above.

Refund claims from the three banks are not entered in 3S, but transcripts of the entries in the spreadsheets are added up to one overall amount per bank and form the basis for the booking in SAP38 and the subsequent disbursement of the refund; see Figure 11.3.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

The lack of entry in the 3S system means that there is no possibility of a comparison with any dividend recipients reported by the companies in connection with their declaration of dividend tax withheld. Furthermore, it cannot be ruled out that the dividend recipient who receives a refund via the bank scheme may also apply for a refund via the form scheme.

After the request has been processed, the claim/spreadsheet with any documentation is printed out and archived for five years. The individual claim/spreadsheet can then be retrieved by means of the document number.

SKAT states that it has been agreed with the banks that they will perform a validation check of the entries in the spreadsheet. It has been agreed that the banks will check the following:

- The correctness of the amounts regarding stockholdings in separate custody accounts
- Probability in relation to omnibus custody accounts/pooled custody accounts

The control consists in the bank checking the correctness of the amounts, i.e. that the dividend has been settled with the bank in question and that dividend tax has been withheld.

Internal Audit has been informed that the foreign bank stores the necessary documentation, which can be produced on request, for up to five years after the year of disbursement. SKAT does not follow up on whether these controls are effective.

When SKAT has transferred payment corresponding to the amounts applied for to the bank, the bank forwards the refund amount received to the foreign bank, which will handle the final settlement with the dividend recipient.

## 11.5 Refunds – the VP scheme

The "VP scheme" is an agreement entered into between VP and SKAT. The scheme entails that VP withholds the correct dividend tax (net settlement) based on the current double taxation agreements.

The overall process is outlined in **Figure 11.4 below.**

TRANSLATION



Figure 11.4.

The agreement concerns the following countries:
Sweden, Norway, Germany, Greece, the Netherlands, Belgium, Luxembourg, the UK, Ireland, Switzerland, the US, and Canada.

For a dividend recipient to be entitled to use the VP scheme, the dividend recipient must be a natural person and the stocks must be registered in a custody account with a Danish bank. Furthermore, the dividend recipient must have documented his or her residence and tax liability to the custodian bank via a tax form (form 02.009), which must be certified by the foreign tax authorities.

The custodian banks are thus responsible for assessing and approving the documents submitted by the dividend recipient. SKAT does not follow up on whether these controls are effective.

SKAT has been informed that the dividend recipients covered by the scheme will receive dividend notes showing that the correct dividend tax has been withheld in accordance with the DTA. The individual dividend recipients therefore do not need to independently claim a dividend tax refund from SKAT.

Confidential Pursuant to Protective Order                                   SKAT_MDL_001_0075835_T