# Exhibit 9, Part 8

Below, a summary is provided of the description in the analysis report of the purpose of the individual proposal and the expected gains from each proposal:

**Re 1 Establishment of a basic governance structure for the accounting process**

The purpose of the proposal is to define and clarify the basic division of responsibilities and roles for the preparation of the section 38 financial statements. It should be structured in accordance with the model for the three lines of defense.

An additional purpose is to strengthen monitoring and advice and to evaluate the reporting of risks with a view to providing guidance on the adequacy of risk analyses and control activities.

Expected gains:
- Establishment of an essential basis for the implementation of the necessary control environment and the necessary risk management, which will strengthen task performance quality in the payments and accounts area and thus the central primary recipients of the accompanying data.

- In line with controls and risk management reducing the number of errors in financial statements and transactions, the proposal will be a prerequisite for reaping efficiency improvement gains.

- It is assessed as being of separate value to clarify the content of the payments and accounts task with associated powers in a role as group CFO, and that the overall responsibility for solving these tasks is anchored formally at director level.

**Re 2 Definition and location of process, system, and data ownership as well as cooperation with data owners**

The purpose of the proposal is to operationalize the governance structure and thus ensure that all the processes and data flows which are important to the payments and accounts task are defined and placed regardless of whether they belong inside or outside the payments area. An additional purpose is to ensure that the group CFO, as the owner of the accounting process, can lay down requirements for the relevant data, process, and system owners regarding the quality of data to be included in the accounting process.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Strengthening of data usability.
- Improvement of task performance efficiency.
- Contribution to creating clarity in the governance structure regarding the interaction between process ownership and data ownership in relation to the accounting process.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**Re 3 Payment and Accounts must perform ongoing risk analyses**

The purpose of the proposal is to perform an interdisciplinary analysis of the accounting processes to assess the error occurrence risk. The analysis is to pinpoint where errors may occur, document the nature of these potential errors, and quantify the probability and consequences of these errors.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Strengthening of data usability and reduction of possible sources of deviations from the expected level.
- Improvement of task performance efficiency.

**Re 4 Monitoring and reporting structure**

The purpose of the proposal is to establish monitoring of internal controls to ensure that they are performed as planned. Furthermore, the analysis points out the need to consider moving current control activities from the first to the second line of defense.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Strengthening of data usability and reduction of possible sources of deviations from the expected level.
- Improvement of task performance efficiency.

**Re 5 Error analysis function and incident management system**

The purpose of the proposal is to ensure that any errors or irregularities affecting the financial statements are detected, analyzed, corrected, and prevented, so that the overall error prevention work becomes as proactive as possible.

Expected gains:
- Strengthening of the quality of the payments and accounts task.
- Streamlining of task performance by eliminating errors and thus the need for error correction resources.

**Re 6 Optimization of accounting processes**

The purpose of the proposal is to ensure the same quality level of the accounting processes across tax types, to avoid overlapping controls by focusing on tax type rather than on system application and to expedite the financial reporting for the benefit of the users of the financial statements.

Expected gains:
- Ensure compliance with a (probably tighter) schedule for the closing process.
- Ensure that all significant accounts are reconciled in accordance with a reconciliation plan.
- Ensure a foundation for continuous optimization of processes.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

## 17.2 Good process control in SKAT

In connection with the establishment of a new integrated governance model for SKAT, the Department has identified a need for clarification and specification of process management in SKAT. With a view to implementation of this, an analysis was performed in 2014. The recommendations of the analysis are being implemented by SKAT through the following end-to-end initiatives across the deputy director general areas in SKAT:

- A process owner role has been established for all SKAT's processes, and the process owners' responsibilities and powers have been clearly defined.
- Roles have been established for coordination across SKAT's processes and the coordinator role's responsibilities and powers have been clearly defined.
- It has been specified in concrete terms in the process owner role and the coordination role what must be observed in order to ensure their legal validity, their financially responsible governance, and the preparation of correct financial statements.
- A joint catalog of terms and concepts has been established which is used in all communication.
- An unambiguous correlation has been established between SKAT's processes and SKAT's overall targets and objectives, and there is continuous target performance follow-up for significant processes through timely, relevant, and current management reporting.

## 17.3 Interim conclusion

Internal Audit's assessment is that the initiatives launched by the Department in the payments and accounts area and in the process area will significantly improve the quality of SKAT's accounting processes via a systematic structure for the accounting process and via continuous monitoring which is much more analytically based than is currently the case.

Confidential Pursuant to Protective Order

# 18. Overview of cases in the Ministry of Taxation

In connection with Internal Audit's investigation of SKAT's dividend tax administration, the Minister for Taxation has informed the Fiscal Affairs Committee that Internal Audit's report will also contain a report on cases in the Ministry of Taxation (MoT) concerning dividend tax refunds, including specific bills and submissions to the Minister and Permanent Secretary.

In this connection, MoT has prepared Appendix 2A, "Overview of cases in the Ministry of Taxation," and Appendix 2B, "Process Paper regarding searches on cases and documents in the Ministry of Taxation concerning refund of withholding taxes."

Internal Audit has reviewed Appendices 2A and 2B and does not have any comments on these.

It must be stated separately that there have been no submissions to the Minister of matters regarding refund of dividends since 2005, including after the warnings following the internal audits in SKAT in 2010 and 2013.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# 19. SKAT's implementation of amendments to acts

Up to January 1, 2012, dividends were declared and dividend recipients were reported at different times. Declaration of dividend had to be made in immediate connection with the company's dividend announcement. Reporting of dividend recipients had to be made by January 20 of the year following the declaration of dividend.

This had two inexpedient effects:

- The reconciliation between declared dividend and reported dividend recipients could only be made on a complete and exact basis with a delay of up to one year.

- The stockholders could apply for a dividend tax refund immediately after the company's declaration of dividend. At this time, SKAT did not have any information about the dividend recipients. In accordance with the Danish Interest on Overdue Payments Act (Renteloven), interest is only payable 30 days after the day on which the debtor was able to obtain the information which must be regarded as necessary to assess the legitimacy and size of the claim. However, in SKAT's administration of dividend tax refunds, SKAT has found that refunds should, as a general rule, be paid within 30 days after SKAT has received the refund claim.

To strengthen SKAT's access to controlling dividend tax, an amendment was made to the Danish Tax Control Act (Skattekontrolloven) in 2009. The amendment made it possible to amend the Executive Order on Reporting Obligations, etc. under the Danish Tax Control Act (the Reporting Order (Indberetningsbekendtgørelsen)), including ensuring that the declaration and reporting of dividend took place concurrently. Amendments to the Reporting Order were made with effect for distribution of dividend on unlisted stocks as from January 1, 2012 and for distribution of dividends on listed stocks as from January 1, 2013.

In addition, by an act of June 18, 2012, a provision was introduced in the Danish Withholding Tax Act (Kildeskatteloven) that no interest accrues on the amount until, at the earliest, six months after the basis for the disbursement has been sufficiently clarified.

**Implementation of the amendments in SKAT**
In connection with the amendments to the Reporting Order, SKAT has adjusted its system setup.

As regards unlisted companies, the process has been changed so that the declaration and reporting must be done at the same time. In connection with the declaration and reporting, the amounts are added up and reconciled in the system.

Declaration and reporting for listed companies still take place as two separate processes. However, the two processes take place at the same time.

Confidential Pursuant to Protective Order                                                          SKAT_MDL_001_0075835_T

As at mid-2015, SKAT has not yet established a reconciliation procedure for the declaration of dividend and reporting of dividend recipients for listed companies.

The amendments to the Reporting Order means that SKAT has access to knowledge about the dividend-receiving stockholders immediately after the companies' declaration of dividend. However, it has not been possible to use this data fully for control purposes in connection with subsequent claims for refunds of dividend tax, as part of the data is at sum total level. In the period after the amendments to the Reporting Order, SKAT has not worked on making changes to its data structure, etc.

The most important initiatives and pieces of legislation in the period 2007-2015 are shown in Appendix 1.

Figure 18.1 Correlations between declaration and reporting of dividend before and after amendments to the Reporting Order.

| Declaration and reporting of dividend before amendments to the Reporting Order | | | | | | |
|---|---|---|---|---|---|---|
| Declaration of dividend and statement thereof, | | | | | Reporting of the | |
| | | | | | individual dividend recipients for | |
| e.g. DKK 10 million, | | | | | a total of DKK 10 million takes place on | |
| on 03/01 20x1 | | | | | 01/20 20x2, i.e. the year after | |
| without distribution on | | | | | the dividend was distributed | |
| dividend recipients | | | | | | |
| 03/01 20x1 | 03/15 20x1 | | | | 01/20 20x2 | |
| | | | | | | ▷ |
| | | | | | | ▷ |
| | 03/15 20x1-01/20 20x2 | | | | | |
| | SKAT receives claims for refund of dividend tax. | | | | | |
| | SKAT cannot reconcile claims with | | | | | |
| | dividend recipients. | | | | | |
| | 1 | | | | | |
| | The case processing time is under pressure from provisions | | | | | |
| | in the Danish Interest on Overdue Payments Act on 30 days'/6 months' deadline. | | | | | ▷ |
| | | | | | From 01/20 20x2, it has become possible to reconcile claims for refund of dividend tax with dividend recipients | |
| Declaration and reporting of dividend after amendments to the Reporting Order | | | | | | |
| Declaration of dividend and statement thereof, | | | | | | |
| e.g. DKK 10 million, and | | | | | | |
| reporting of the | | | | | | |
| individual dividend recipients | | | | | | |
| of the DKK 10 million | | | | | | |
| on 03/01 20x1 | | | | | | |
| 03/01 20x1 | 03/15 20x1 | | | | | |
| | | | | | | ▷ |
| | | | | | | ▷ |

Confidential Pursuant to Protective Order

TRANSLATION

| | 03/15 20x1- | | | | |
|---|---|---|---|---|---|
| | SKAT receives claims for refund of dividend tax. | | | | |
| | | | | | |
| | SKAT can reconcile the claims with dividend recipients. | | | | |
| | | | | | |
| | The case processing time is still under pressure due to provisions | | | | |
| | in the Danish Interest on Overdue Payments Act on 30 days'/6 months' deadline. | | | | |

**Figure 19.1**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

## 19.1 Interim conclusion

In the period 2007-2015, SKAT's administration has regularly pointed out to the Department of the Ministry of Taxation a number of irregularities in the administrative processes as well as the need for amendments to executive orders and acts relating to dividend tax – especially so that it is ensured that declaration and reporting of dividend take place concurrently. The Department has prepared a draft bill and draft executive orders as a follow-up on this. In 2009, the Danish Parliament (Folketinget) passed an amendment to the Danish Tax Control Act which provided statutory authority for ensuring that the declaration and reporting of dividend take place concurrently, thus allowing for better control of dividend tax refunds.

This statutory authority was exercised in Reporting Orders in 2011 and 2012 for unlisted and listed stocks, respectively. The amendments to the Reporting Orders had effect for the distribution of dividend for unlisted stocks as from January 1, 2012 and for listed stocks as from January 1, 2013. A draft bill and draft executive orders were submitted to the Minister for Taxation. In these submissions, an account was given of the problems with non-concurrence between declaration and reporting of dividend. In the period after the amendments to the Reporting Order, SKAT has not worked on making changes to its data structure, nor has SKAT established reconciliation between declaration of dividend and reporting of dividend recipients for listed companies.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# 20. Proposal for future administration

**Current basis**

This reports highlights that the built-in internal controls in the disbursement routines have been weak. The disbursement control has primarily included an assessment and checking of documents received from the refund-applying stockholders or their representatives. The disbursement control has not included an assessment of whether the prerequisite for disbursement of dividend refund has been met:

- Is the refund applicant a stockholder in the company for which a refund of withheld dividend tax is applied?

- Do various refund-applying "agents" represent actual stockholders?

- Has dividend tax been withheld and paid prior to the refund application?

**Effective controls in future procedures**

It is a prerequisite that the future procedures and the built-in controls for these procedures must be designed so that the risk of making incorrect disbursements is reduced to the greatest possible extent. Internal controls must therefore be designed which can effectively reduce the following risk:

> The risk of accepting and approving refund claims which are not related to a specific stockholder relationship and to prior dividend withholding and dividend distribution.

Effective internal controls can only be implemented if it is possible to use information about the dividend-receiving stockholders effectively. Earlier in this report, it has been described that the dividend-paying company must both declare the dividend distributed to SKAT and report the dividend recipients to SKAT. On the face of it, it should thus be relatively simple to verify in the processing of the refund claim whether there has been a prior dividend distribution. The relevant data to be used to perform this control should be in SKAT's possession.

In many cases, however, SKAT will not be in possession of data concerning the individual dividend recipients (stockholders). If stockholders subject to a foreign tax liability have placed the stocks in a so-called omnibus custody account, SKAT's systems will only contain information about the custodian in question as well as information about the stocks managed in the omnibus custody account. Furthermore, in accordance with the established bank schemes, dividend distributed is not registered in the dividend systems. Instead, a direct disbursement is made to the refund applicant.

Confidential Pursuant to Protective Order                                   SKAT_MDL_001_0075835_T

**Establishment of a complete data basis**

A complete data basis should be established in SKAT's dividend systems (3S, eKapital). Data should, moreover, be available in a form that facilitates the disbursement control. There must be accordance between the dividend recipient in SKAT's systems (eKapital) and the refund claims received. The eKapital system does not necessarily contain information about the individual stockholder, but the refund claims received (at stockholder level or custody account level) must represent the custodians/stockholders registered in eKapital.

**Preparation of disbursement basis**

In accordance with the current practice, the dividend recipient prepares a refund claim with the relevant documents enclosed. A change of practice may be considered, so that SKAT calculates the refund for the individual dividend recipients based on its own registrations. This will enable SKAT to control the disbursement process to a higher degree.

## 20.1 Interim conclusion

In connection with the establishment of a future system for effective administration of dividend tax refunds, registrations of the individual dividend recipients should constitute the key element in the design of an effective control system. The internal control must be supported by the IT solution. It should only be possible to register dividend refunds in SKAT's dividend systems if the refund applicant in question is already registered as dividend recipient.

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

# 21.   List of appendices

## Appendix 1 Timeline for initiatives and legislation

**Timeline for initiatives and legislation**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

Confidential Pursuant to Protective Order          SKAT_MDL_001_0075835_T

**TRANSLATION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Confidential Pursuant to Protective Order                                SKAT_MDL_001_0075835_T

**TRANSLATION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

## Appendix 2A Overview of cases in the Ministry of Taxation

Reference no.: 15-2486327

At the end of August 2015, Internal Audit requested an investigation of SKAT's dividend tax administration. As shown in the Minister for Taxation's reply of September 15, 2015 to the Fiscal Affairs Committee regarding the general part of question 56, the investigation would also include a review of cases in the Ministry of Taxation (MoT) regarding refunds of dividend tax, including specific bills and submissions to the Minister for Taxation and the Permanent Secretary.

It should be noted in this connection that the reason for Internal Audit's investigation was a suspicion that large-scale economic crime had been committed against SKAT. It appears from the briefing from the Fiscal Affairs Committee (The Fiscal Affairs Committee 2014-15 (Second Session) SAU, General Part, Appendix 23) that there was seemingly a large network of companies which, based on fictitious stockholdings, had applied for refunds of withheld Danish dividend tax on the basis of falsified documentation submitted.

For use in this review, MoT conducted a search on cases and documents from mid-2007 to August 25, 2015. The search was not targeted specifically at the present case of fraud, but comprised a wide range of cases concerning administration of dividend tax refunds.

The search in the archive systems in MoT dates back to cases and documents from mid-2007, when SKAT contacted MoT based on a report prepared by SKAT on the administration of dividend tax refunds. The matters highlighted in the report include a potentially unfortunate interaction in the rules which may be of importance to the administration of dividend tax refunds. The search on cases and documents covers the period up to August 25, 2015, at which time the Fiscal Affairs Committee received information about the presumed fraud involving refund of dividend tax.

In specific terms, a number of keywords were chosen which were used to identify relevant cases and documents. A search was conducted in the various file systems covering the search period. The search criteria used to identify relevant cases and documents are stated in Appendix 1.

In the overview of cases and documents from MoT, a chronological account is given of the contents of the cases and documents identified. The overview thus does not show what has subsequently happened in SKAT regarding SKAT's responsibility for follow-up on legislation and executive orders.

Internal Audit's report from 2013 on refund of dividend and royalty tax for 2012 is not included in the overview as no case on this was found in the archiving systems in the period. The reason for this is that the relevant office in MoT only received the report from Internal Audit in a copy (Cc) in an email addressed to Rigsrevisionen (the Office of the Auditor General) and that the contents of the email gave the impression that it was forwarded for Rigsrevisionen's information and that the management had been informed directly by Internal Audit. However, this was not the case. A submission of the report would not have

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

changed the fact that the responsibility for follow-up on the recommendations in the report lies with SKAT's management, which is responsible for following up on the reports from Internal Audit on SKAT's administration.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

As part of the follow-up on the case in MoT, it was, however, specified how the Ministry follows up on reports from Internal Audit.

In the overview of cases and documents, it is stated whether there were submissions to the Minister for Taxation and/or the Permanent Secretary in the case. It should be noted that MoT has contacted SKAT for a clarification of whether there have been submissions to the Minister for Taxation or the Permanent Secretary regarding refund of dividend tax in connection with the parallel search in the period. SKAT has stated that this does not appear to be the case.

Considering the short period of time that has been available to perform a search for cases and documents, including the subsequent handling, MoT must make a reservation that there may be cases or documents which have not been identified.

| Case | Comments |
|---|---|
| **1.**<br>Case no.:<br>*2007-351-0006*<br><br>Refund of Danish dividend tax in relation to taxpayers with limited tax liability. | This is a case which was created on the basis of a request from SKAT on administration of dividend tax refunds.<br><br>SKAT pointed out to MoT that there was an unfortunate interaction between the various deadlines in the rules on refund of Danish dividend tax withheld to natural and legal persons with limited tax liability in Denmark. The problem was raised in a report from May 2007, prepared by SKAT's "Group Task Force on Expedited Assessment." The problem was also mentioned in a memo of September 5, 2007, prepared by SKAT's dividend administration.<br><br>It should be noted that SKAT's report from May 2007 does not form part of the records in the case. However, the sub-conclusion of the report was described in a 13-page memo prepared by MoT, dated September 17, 2007.<br><br>The memo of September 17, 2007 does not appear to have been sent to SKAT. The conclusions of the memo of September 17, 2007 were, however, summarized in a three-page memo dated November 14, 2007. This memo was sent to SKAT, which is shown by an email dated August 26, 2008, at which time the memo was resent to SKAT in another context. The case also contains a number of memos prepared by SKAT on the above problem, all presumably dating from 2008.<br><br>SKAT points out in its letter to MoT that <u>declaration</u> of distributed dividend and payment of withheld dividend tax normally take place in the month following the adoption of dividend in the company with a statement of the size of the dividend, the amount of dividend tax, and identification of the stock, etc. The deadline for <u>reporting</u> of the dividend recipient's identity, the amount of dividend, and specification of the stock, etc. is January 20 of the year after the distribution. SKAT notes that as the refund claim must be dealt with within 30 days to avoid accrual of interest, SKAT may have to refund dividend tax without having information about the dividend recipient. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

| | |
|---|---|
| | It is therefore proposed that the deadlines for declaring and reporting be harmonized. SKAT thus proposes that the legislation be amended on this point.

In a memo dated November 14, 2007, MoT answered SKAT that a harmonization of the deadlines for declaration and reporting raised the question of administrative burdens for individuals and businesses, which meant that further analysis of the proposals was required. Instead, MoT suggested that the dividend administration should adjust the workflow in the area by applying (and changing) the current administrative rules.

MoT stated that SKAT should first and foremost not refund dividend tax before the tax had been paid. SKAT would thus be able to request that the applicant provide documentation of the original payment of dividend tax for which a refund application was submitted. Furthermore, the party claiming a refund of withheld Danish dividend tax had to be able to prove the claim. SKAT would be able to require that a claim for refund of dividend tax be accompanied by documentation and information showing that the recipient of the Danish dividend tax withheld was entitled to such a refund. Finally, SKAT could tighten its practice on accrual of interest, so that interest would not accrue until from the date on which SKAT has received certification showing that the applicant is the beneficial owner of the dividend in both civil law and tax law.

However, MoT stated that it was aware that the wish to harmonize the deadlines for declaration and reporting might in itself contribute to improving the dividend tax administration, and MoT subsequently drafted a bill on this; see case no. 2.

There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **2.**<br>*Case no.:*<br>*2009-711-0030*<br><br>Bill no. L 201 – bill to amend the Danish Capital Gains Tax Act (Avancebeskatningsloven), the Danish Tax Control Act, the Danish Withholding Tax Act, the Danish Tax Assessment Act (Ligningsloven), and various other acts (simple | This is a case concerning the drafting of bill no. L 201 (parliamentary year 2008-2009). The bill was introduced on April 22, 2009 by the then Minister for Taxation. The bill was passed on May 28, 2009 (Danish Act no. 462 of June 12, 2009).

The bill passed contains a number of elements concerning withholding tax on dividends:

1. The Minister for Taxation is provided with statutory authority to lay down reporting deadlines deviating from the normal deadlines (section 9 A(5) of the Danish Tax Control Act).

2. In those cases in which the reporting entity (the dividend-paying company) has no knowledge of the identity of the dividend-receiving stockholder, the |

Confidential Pursuant to Protective Order                          SKAT_MDL_001_0075835_T

| | |
|---|---|
| and effective control and less tax planning). | identity of the party receiving the disbursement must be reported (section 9 B(5), third sentence, of the Danish Tax Control Act). |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

3.  The reporting obligation for custodians is changed so that the reporting obligation not only comprises listed stocks, but also unlisted stocks registered in a central securities depository.

Regarding the statutory authority to lay down different deadlines (see no. 1), it is stated in the explanatory notes to the bill that the idea is that the deadline for reporting of dividends from both the custodian and the dividend-paying company must be harmonized with the deadline for declaration and payment of the dividend tax. It is stated in the explanatory notes to the bill that the current different deadlines for declaration and reporting, respectively, prevent a reconciliation between the declarations and the reporting. Amendment no. 1 is thus a follow-up on the legislative wishes previously presented by SKAT; see case no. 1.

Regarding amendment no. 2, it is stated in the explanatory notes to the bill that the reporting must contribute to ensuring that the dividends are taxed and to improving SKAT's dividend tax administration.

The following also appears from the general explanatory notes to the bill:

"The reason for the January 20 reporting deadline is that the amounts are to be used for the tax assessment notice. However, SKAT refunds withheld dividend taxes of approximately DKK 1-2 billion each year to non-resident recipients as a result of dividend tax reductions under double taxation agreements (in 2008, however, the amount was only approx. DKK 750 million). In order to avoid accrual of interest on the refund amounts, the refund is generally disbursed within 30 days after SKAT has received a refund claim. The amendment will ensure that a reconciliation of the claim can be made with the declarations and reporting, respectively, in these refund cases.

Having the same deadline for declaration and reporting will also result in fewer errors in dividend taxes withheld, reporting, and declarations, as, in accordance with the bill, the dividend-paying company must handle the distribution, withholding, declaration, settlement, and reporting concurrently. Reporting in the month after the dividend distribution will also make it easier to correct errors in the registration of the company, errors in the classification of dividend-paying investment funds, and errors in withholding of dividend tax before the generation of the recipient's tax assessment notice and service letter for the taxpayers who do not receive a preprinted tax assessment notice."

Confidential Pursuant to Protective Order                                                    SKAT_MDL_001_0075835_T

Amendments nos. 2 and 3 were incorporated into the draft bill submitted to the Minister for Taxation. The elements were included in the consultation round. The proposals reportedly come from SKAT, but there is no further information about this in the case.

Amendment no. 1 was submitted after the bill had been for external consultation, but before the introduction to the Danish Parliament. As mentioned above, this proposal originated from SKAT (see case no. 1) and the amendment was submitted separately to the Minister for Taxation, who approved, on March 30, 2009, that the amendment could be included in the bill.

According to the submission, the reason for including this amendment was that it would enable SKAT to further improve its dividend administration and that the deadlines applicable at the time prevented a reconciliation between declarations and reporting. In addition, it was mentioned that harmonization of the deadlines could reduce the number of errors.

In connection with the hearing of the bill in the Danish Parliament, amendment no. 1 was mentioned in a comment on an inquiry from the Danish Bankers Association (bill no. L 201 – Appendix 18). In the comments, the Minister mentions, among other observations, that the proposal will improve SKAT's dividend administration and result in fewer errors in the withholding of dividend tax, reporting, and declarations, as the dividend-paying company must handle this concurrently.

The answer to the Danish Parliament was submitted to the Minister for Taxation. It is mentioned that the Danish Bankers Association has stated that the proposal on harmonization of the deadlines for reporting of dividends with the deadlines for declaration would be onerous on the business sector and entail a risk of errors. It is stated in response to this that the proposal must be expected to entail some costs for the financial sector. However, the current costs are estimated to be limited. Furthermore, it is noted in the submission that MoT does not agree that the proposal will entail a greater risk of error, but that, on the contrary, the proposal will increase the possibility of discovering and correcting errors at an early stage and thus before the dividend recipients' tax assessment notices are to be generated. The Minister for Taxation approved the comment to the Danish Bankers Association on May 19, 2009.

It appears from the act that the Minister for Taxation sets the date of entry into force of amendments nos. 2 and 3. Amendments nos. 2 and 3 were subsequently put into force by Executive Order no. 1182 of December 9, 2009. The amendments are thus applicable to dividends reported for the 2010 calendar year and subsequent years.

Confidential Pursuant to Protective Order

**TRANSLATION**

Confidential Pursuant to Protective Order                                                  SKAT_MDL_001_0075835_T

| | |
|---|---|
| | Amendment no. 1, giving the Minister statutory authority to set other reporting deadlines, entered into force on June 14, 2009. The statutory authority was, however, only exercised later on; see case nos. 14 and 17. |
| **3.** Case no.: *2009-351-0023* Proceeds from withholding tax on dividends. | This is a case in MoT which commenced in September 2009. The background of the case is that there was general focus on withholding taxes on dividends, including, in particular, on the calculation of the proceeds from the withholding taxes. In connection with the case, MoT prepared a memo, in cooperation with SKAT, which includes a description of the proceeds from withholding taxes levied on non-residents. The memo shows that the net proceeds from withholding taxes are directly negative in some years. It is stressed that it cannot be ruled out that excess withholding tax is refunded from both the refund scheme and the VP scheme, in which the proceeds appear to be very low. The analysis covers the period 2006-2008. In response to this, the dividend administration stated that they had, in effect, been unable to check that taxpayers applying for refund had not already received a refund. The case was submitted to the Permanent Secretary in a submission of October 5, 2009. It appears from the submission that SKAT's IT system Business Objects should be included as a more active instrument in the action strategy, which, however, would require that SKAT prioritizes control and reconciliation of data in Business Objects. It was also recommended that a number of issues concerning the refund scheme be examined further by Internal Audit. The Permanent Secretary approved the recommendations on October 9, 2009. The case does not seem to have been submitted to the Minister for Taxation. On October 21, 2009, Internal Audit was approached by the Permanent Secretary, who requested an audit of the refund scheme. The request was the basis for Internal Audit's report from 2010, which was submitted to Finance and discussed in Production Forum, which, as follow-up on the report, decided to appoint a working group to submit concrete proposals for the handling of withholding tax. The report was also discussed in Legal Forum. Reference is made to case no. 7. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

| 4.<br><br>Case no.:<br>2009-351-0026<br>2009-352-0027<br><br>The capital funds complex – two early warnings regarding withholding tax in group affiliations and collection thereof. | This is a case in MoT which was set up based on receipt of two early warnings from SKAT. The two early warnings concern withholding tax on interest and collection thereof.<br><br>In the so-called capital funds complex, SKAT had become aware of a problem regarding liability for withholding taxes, which triggered two early warnings received in MoT on October 16 and 29, 2009.<br><br>Both these cases concern specific issues in which the problem is as follows:<br><br>• The management company in a Danish group pays interest to its parent company in a "tax haven" through two Swedish companies. They do not withhold tax on the interest payment even though the parent company in the tax haven is, in SKAT's view, the beneficial owner.<br>• Loss resulting from a deduction of interest in the paying Danish company has been fully or partly utilized by other Danish companies in the group through joint taxation.<br>• After a few years, the management company sells the stocks in the Danish subsidiaries internally in the group, after which the payment received is distributed/used to repay the loan.<br>• The company has subsequently been completely stripped of assets and "sidelined" in the group, but it still forms part of the joint taxation with the group's other Danish companies. This means that the company's remaining losses can be used by the other companies.<br>• The company probably cannot pay the interest withholding tax which should have been withheld.<br><br>In the case, there is a memo of December 1, 2009 from MoT regarding the two early warnings. The memo was submitted to the Permanent Secretary, who approved on December 3, 2009 that the memo could be sent to the Group Task Force on Law and Process in accordance with the guidelines applicable at the time on handling of early warnings.<br><br>In the memo, MoT assessed that the most effective solution was to reintroduce general joint and several liability in joint taxation relations and to extend the joint and several liability to comprise withholding taxes on dividends and interest. But it was found that it was difficult to justify such a far-reaching measure when it was possible to implement more targeted, albeit not quite as effective, changes.<br><br>In the submission, it is assessed that a decision-making basis should be prepared – in collaboration with SKAT Large Businesses – for the introduction of legislation under which deductions of interest, etc. can be rejected if withholding tax has mistakenly not been withheld. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T