# Exhibit 9, Part 9

| | |
|---|---|
| | It is also proposed that experience from the capital funds complex concerning withholding tax on interest and dividends be included in the considerations. |
| | Joint and several liability in companies with joint taxation was introduced later on; see case no. 15. |
| | There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **5.**<br>*Case no.:*<br>*2010- 351-0030/*<br>*14-2117449* – TRACE<br><br>and<br><br>2011- 620-0026/<br>13-5775296 – FATCA. | The cases concern the TRACE and FATCA projects. The TRACE (Treaty Relief and Compliance Enhancement) project is an initiative anchored internationally in OECD. |
| | The cases originate from the period in which MoT and SKAT's headquarters were merged into one unit (the Group Center). The Group Center was managed by an Executive Board. |
| | It appears from a submission to the Permanent Secretary/Executive Board dated February 5, 2010 that the project concerns the establishment of the design of a system in which recipients of dividends from other countries may have net withholding tax withheld on dividends on receipt thereof and can thus avoid having to apply for a withholding tax refund under the double taxation agreements in return for their bank undertaking to provide automated information, once a year, about the taxpayer and the amounts received to both the country of source and the country of residence. The memo also states that Denmark had a particularly strong interest in the project, as the Danish scheme for refund of withholding tax, including the special scheme for withholding of net withholding tax in relation to certain selected countries, did not appear to function satisfactorily. Net withholding tax means that the dividend-paying company withholds only the amount to be taxed in accordance with the relevant double taxation agreement. |
| | The submission was presented to the Executive Board at a board meeting held on February 11, 2010. |
| | The project was completed and approved by CFA (OECD's Committee on Fiscal Affairs) in 2013, but it was overtaken by FATCA and thus never brought into use. |
| | FATCA (Foreign Account Tax Compliance) is a bilateral agreement drawn up on the initiative of the US, under which new provisions on the obligations of foreign financial operators were adopted in March 2010. FATCA took effect from January 1, 2012. |

Confidential Pursuant to Protective Order
SKAT_MDL_001_0075835_T

| | |
|---|---|
| | FATCA entails that all non-US-based banks and other financial operators which receive interest, dividends, or other financial income from the US are covered by a comprehensive agreement with the IRS (the US Inland Revenue Service) on reporting of capital and return on capital for all customers which are US taxpayers or which are companies or other entities in which US taxpayers own more than 10%. If the agreement is entered into, the banks must be made subject to an obligation on external due diligence. If the agreement is not entered into, 30% withholding tax must be deducted at source on all capital gains from sources in the US to non-US operators. This arrangement will force all operators to enter into agreements or cease their US activities.<br><br>There do not seem to have been submissions to the Minister in the case. |
| **6.**<br>*Case no.:*<br>*2010-080-0051*<br><br>Service to the Minister, SAU, general part, questions 541-546 on reporting of dividend tax. | This is a case in MoT regarding a number of parliamentary questions on reporting of dividend tax.<br><br>In 2010, SKAT had problems with the implementation of a new version of E-tax for businesses. On June 7, 2010, a number of SAU questions regarding reporting of dividend tax (SAU, general part, 541-546) were submitted. The questions were answered on June 30, 2010.<br><br>In SAU, general part, question 546, a question was raised about how many full-time equivalents SKAT needed to use for manual processing of the reporting of dividends and dividend tax via submission of returns on paper in 2010 as a result of the failure of SKAT's E-tax dividend tax system to work in the first half of 2010.<br><br>The answer was that the absence of an E-tax solution for dividend tax returns in the first half of 2010 meant additional work corresponding to approximately two full-time equivalents. This should be compared with the assessment that 60% of the total number of dividend declarations were received in the first half of 2010.<br><br>The answers to SAU were submitted to the then Minister for Taxation. In accordance with the submission, information was provided that there had been problems with the electronic reporting of dividends, but that reporting had not been prevented outright. The Minister for Taxation signed the submission on June 29, 2010. |
| **7.**<br>Case no.:<br>2010-009-0036<br><br>Legal Forum. | This is a case in MoT on the handling of certain cases in Legal Forum.<br><br>Legal Forum existed in the period 2010-2012, in which MoT and SKAT's headquarters were merged into one unit (the Group |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

|  | Center). A number of cases concerning SKAT's administration were dealt with in Legal Forum in this period. |
|---|---|

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

At Legal Forum's meeting on March 2, 2010, Legal Forum was briefed on the TRACE project. It was agreed that the project was to be manned with relevant persons.

Legal Forum held a meeting on September 7, 2010. It appears from item 10 on the agenda that Internal Audit's report on the withholding of dividend tax for non-residents from 2010 was discussed. The annotated agenda shows that Internal Audit's report had previously been discussed in Production Forum. In the period in question, it was Production Forum's task to discuss, plan, and organize the day-to-day operations and production in SKAT. It appears from the annotated agenda that Production Forum had decided to appoint a working group in SKAT tasked with presenting specific proposals on how dividend withholding tax was to be handled going forward. Legal Forum was requested to comment on Internal Audit's report.

In a submission of September 15, 2010 to the Deputy Director General of Legal Affairs, who was the Chairman of Legal Forum, it was recommended that Legal Forum report back to Finance, which, among other responsibilities, handles the coordination in relation to Rigsrevisionen and Internal Audit, that Legal Forum support Internal Audit's recommendations in the audit report concerning withholding tax for non-residents, and that Legal Forum find that the situation is critical and that the task should be given the highest possible priority. The submission was approved by the Deputy Director General of Legal Affairs on September 15, 2010.

The minutes of decisions from the meeting held on September 28, 2010 in Legal Forum show that it was decided to support Internal Audit's recommendations and that the task should be prioritized. It appears from the minutes that Production Forum had decided to appoint a steering committee/working group to follow up on the report, in which also Law & Economics was invited to participate.

At Legal Forum's meeting on August 30, 2011, Legal Forum was briefed on the follow-up on the audit report on the handling of dividend tax. At the meeting, Legal Forum was briefed on the report by the working group appointed based on the report from Internal Audit from 2010.

Overall, the working group recommended that work be continued on a proposal to amend section 66 of the Danish Withholding Tax Act and the resulting process descriptions and any locking of fields.

The working group proposed that, instead of declaration and payment in the month after the distribution and reporting of dividend recipients by January 20 of the following year, the

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

**TRANSLATION**

| | |
|---|---|
| | reporting of dividend recipients take place at the time of declaration. |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

The working group also proposed that section 66 of the Danish Withholding Tax Act be amended so that the dividend declarations would be abolished. Instead, the dividend tax payable by the company was to be stated by adding up the amounts reported. In addition, it was proposed to create statutory authority for requiring that companies which do not distribute dividends submit a 0 in the reporting/declaration, as it would otherwise not be possible to have an overview of companies, etc. which can distribute dividends.

It was also stated that there is no statutory authority for holding the reporting party liable for failure to report or incorrect reporting of dividend recipients. It was stated that such statutory authority should be introduced.

Finally, it was proposed to introduce compulsory electronic reporting.

It appears from the minutes of decisions from the meeting in Legal Forum held on August 30, 2011 that Legal Forum, just like Production Forum, supported the proposal in the memo and would monitor the work on implementing the proposals.

The proposals from the working group were specifically implemented by way of the following initiatives:

The statutory authority, introduced by Danish Act no. 462 of June 12, 2009, to introduce reporting of dividends in the month after the distribution (see case no. 2) was exercised in an amendment to the Reporting Order on two occasions; see case no. 14 regarding unlisted stocks and case no. 17 regarding listed stocks. The two executive orders took effect as from January 1, 2012 and January 1, 2013.

Dividend declaration for unlisted stocks was abolished by Danish Act no. 1354 of December 21, 2012; see case no. 16. However, it was maintained for listed stocks, as listed companies would otherwise not be able to influence the calculation of the dividend tax payable by them in connection with, for example, incorrect reporting from the custodians.

Regarding the proposal for 0 reporting, there is a duty to provide information, at SKAT's request, about whether the company has distributed dividend. It was thus found that there was less need for 0 reporting in the event of no dividend distribution.

Confidential Pursuant to Protective Order                                        SKAT_MDL_001_0075835_T

| | |
|---|---|
| | Regarding the statutory authority to hold the reporting party liable for non-reporting or incorrect reporting, the view was that such authority already existed under section 14 of the Danish Tax Control Act.<br><br>Compulsory electronic reporting has been introduced; see case no. 18.<br><br>There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **8.**<br>*Case no.:*<br>*2010-701-0058*<br><br>Meeting of the External Liaison Committee on December 1, 2010. | This is a case in MoT concerning preparation of material for a meeting in MoT's External Liaison Committee on December 1, 2010. The External Liaison Committee served as a liaison body between the Ministry and a number of its stakeholders. The committee discussed, among other items, the need for future legislative initiatives and evaluated the effects of legislation introduced.<br><br>The case includes minutes of the meeting held on December 1, 2010. It appears from item 8.a. of the minutes under topics raised by the Danish Bankers Association that the Danish Bankers Association wanted a status on the work regarding dividends, etc.<br><br>The Danish Bankers Association requested a status on and schedule for the OECD work as they would like to see the scheme with net withholding of withholding taxes on dividends extended to omnibus custody accounts.<br><br>At the meeting, MoT explained that the cooperation between SKAT and the banks had been discontinued, as it had been overtaken by OECD's TRACE project; see case no. 5. It was expected that there would be preliminary reporting to CFA (OECD's Committee on Fiscal Affairs) in mid-2011.<br><br>It was also stated that a working group in SKAT was looking at how to optimize the processes in connection with the withholding of withholding taxes.<br><br>The minutes were submitted to the Permanent Secretary, who approved the minutes on December 8, 2010.<br>The case also includes a memo on this matter, prepared by the relevant office in MoT. This memo is included in the general briefing of the Permanent Secretary regarding the meeting on December 1, 2010. The memo, and thus the briefing, includes an account of the schedule in the TRACE project. |
| **9.**<br>*Case no.:*<br>*2012-462-0189* | This is a case in MoT concerning the preparation of a control signal which further describes the administration of the special scheme for permission for net settlement of withholding tax for certain principal stockholders. |

Confidential Pursuant to Protective Order                                                 SKAT_MDL_001_0075835_T

| | |
|---|---|

Confidential Pursuant to Protective Order

| | |
|---|---|
| Control signal for permission for net withholding of withholding tax on dividends. | SKAT contacted MoT (the Group Center) in September 2010 because SKAT wanted confirmation that there was statutory authority in Executive Order no. 1442 of December 20, 2005 on the Withholding of Dividend Tax and Royalty Tax (Bekendtgørelse om indeholdelse af udbytteskat og royaltyskat) to grant individual permissions to companies which do not distribute dividends through VP to withhold tax at the rate applicable under a double taxation agreement (net settlement). |
| | At a meeting with SKAT held on September 22, 2010, MoT informed SKAT that the executive order provided such statutory authority. SKAT accounted for the previous handling of these permissions, among other things. It was stated that, at the time in question, approximately 150 permissions had been granted. No electronic system had been established for the handling of these cases, and it was highly uncertain whether the permissions had been granted in accordance with uniform guidelines. |
| | On September 28, 2010, MoT wrote to SKAT that it was essential that a permission be linked to a number of conditions (e.g. time limit and documentation requirements) in order to avoid abuse. Moreover, the conditions for granting a permission for net settlement had to be uniform to create clarity for both SKAT and the taxpayer. Finally, it was crucial that the permissions be registered in a system which could handle the relevant data, so that it could be identified at any given time who had received a permission, etc. |
| | It was further noted that, because of the need to create complete clarity about the future handling of the permission scheme, MoT was of the opinion that SKAT had to shelve all future permissions for the time being, including requests for renewals of permissions already granted. Finally, the need to find an operational solution to the above was recognized, and MoT would therefore examine further on which basis any future permissions were to be granted. |
| | On June 8, 2011, the Institute of State Authorized Public Accountants in Denmark (FSR) raised the question of permissions for net withholding at a meeting in the External Liaison Committee; see case no. 12. |
| | On October 4, 2011, an employee in SKAT's dividend administration contacted MoT and described a number of problems regarding refund of dividends, including the question of permission for net withholding. |
| | On November 1, 2011, MoT answered that it had discussed the scheme under which personal principal stockholders had had the option of net withholding by agreement with the company. According to information from the officers with system |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

| | responsibility in SKAT, it was possible to create a sensible electronic registration solution. |
|---|---|

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

| | |
|---|---|
| | MoT would therefore shortly prepare a set of terms for granting such permissions.<br><br>A draft for the permission scheme for net withholding of dividend tax was submitted for external consultation via the Special External Liaison Committee on January 23, 2012. The new permission scheme for net withholding was published on February 23, 2012 as an MoT announcement – SKM2012.117SKAT.<br><br>There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **10.**<br>Case no. 2011-038-0077<br><br>Audit Committee meeting on March 31, 2011. | This concerns a case in MoT regarding a meeting in the Audit Committee held on March 31, 2011. The Audit Committee existed in the period 2010-2012, in which MoT and SKAT's headquarters were merged into one unit (the Group Center).<br><br>One of the items on the agenda at the meeting is follow-up on critical reports. This includes discussion of a status report on the working group in SKAT, which was to present proposals on how to handle the question of withholding tax.<br><br>The status report shows that Internal Audit submitted a critical report on dividend tax in 2010. It also appears that SKAT subsequently enjoined on the Danish Bankers Association the rules applicable to tax exemption card marking and that SKAT was participating in an OECD IT project aimed at establishing a system with administration of the withholding of dividend tax for non-residents by the banks. In addition, a working group had been appointed which was to present proposals before June 30, 2011 on administrative and system changes that could solve the unresolved issues raised in the report. Production Forum adopted the status report submitted.<br><br>It appears from an email dated March 23, 2011 that the item on the agenda concerning the status report was approved by the Permanent Secretary.<br><br>In the case, there is a submission to the Permanent Secretary regarding a brief to be used at the meeting. The brief includes the status report. The submission does not appear to have been signed by the Permanent Secretary.<br><br>The minutes from the meeting, dated April 1, 2011, show that the Permanent Secretary participated in the meeting and that a status on the working group was given. |
| **11.**<br>Case no. 2010-038-059 | In this case, a submission is made to the Permanent Secretary with a status on the follow-up on Internal Audit's reports for the 2010 fiscal year, including Internal Audit's report on dividend tax from 2010. |

Confidential Pursuant to Protective Order                                   SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

| | |
|---|---|
| Follow-up on Internal Audit's reports for the 2010 fiscal year | The material was also to be used for an Audit Committee meeting on June 23, 2011.<br><br>It appears from the submission that it was recommended that the follow-up on the item on dividend tax be concluded after the status given at the meeting held on March 31, 2011; see case no. 10.<br><br>The submission was signed by the Permanent Secretary. |
| **12.**<br>Case no. 2011-701-0070<br><br>Meeting in the External Liaison Committee on June 8, 2011. | This is a case in MoT concerning preparation of material for a meeting in MoT's External Liaison Committee on June 8, 2011.<br><br>The case includes a memo which is presumably a briefing of the Permanent Secretary regarding a meeting.<br><br>It appears from item 3.c. of the minutes of the meeting held on June 8, 2011, under topics raised by the Institute of State Authorized Public Accountants in Denmark (FSR), that FSR wanted a clarification of why SKAT no longer complied with Executive Order no. 1442 of December 20, 2005. The executive order includes the statutory authority for the VP scheme, i.e. Danish stocks held in custody in Denmark which are owned by natural persons with limited tax liability in 12 foreign states (the US, Canada, and ten European states), under which net withholding can take place and individual permissions can be granted for net withholding for foreign principal stockholders.<br><br>MoT replied that the executive order obviously had to be complied with. The scheme with VP Securities (the VP scheme) was unchanged. In relation to the scheme with individual permissions for net withholdings, which was shelved temporarily, work was being done to arrive at a future solution for the administration of this. This was subsequently done via the preparation of a control signal on administration of the scheme for net settlement; see case no. 9.<br><br>The Permanent Secretary did not participate in the meeting in question. |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

| | |
|---|---|
| **13.**<br><br>*Case no.:*<br>*2010-490-0016/*<br>*10-0214448*<br><br>Omnibus case on inquiries from SKAT and external consultants to MoT/the Group Center concerning withholding tax on dividends. | This case is an "omnibus case" of inquiries from SKAT and external consultants, etc. covering the period 2010-2012, which was the period in which MoT and SKAT's headquarters were merged into one unit (the Group Center). The case does not comprise submissions to the Permanent Secretary or the Minister for Taxation.<br><br>The inquiries include matters pertaining to documentation requirements in specific cases, the interpretation of legal rules, qualification of foreign state entities, i.e. state-owned companies, and whether they have limited tax liability in Denmark, applications for refund of withholding tax from pension funds and investment institutions, omnibus custody accounts, and the flow issue, including who is the beneficial owner of dividends distributed and thus entitled to a refund.<br><br>One of the inquiries in the omnibus case is dated October 4, 2011, and comes from an employee in SKAT's dividend administration.<br><br>MoT's reply included the observation that it was not currently worthwhile to extend the VP scheme, as intensive work was being done on finding a solution in OECD regarding TRACE. Concurrently, there was cooperation with the Nordic countries aimed at finding a withholding tax model.<br><br>MoT noted in its reply that the scheme under which personal principal stockholders could agree on net withholding with the company had been discussed in MoT. According to information provided by the officers responsible for the SAP system in SKAT, it was possible to create a sensible electronic registration solution. MoT promised that it would shortly prepare a set of terms for granting such permissions. It could not be said with certainty when the permission system could be resumed, but that it should be ready soon, however, depending on the technical challenges with the system. See also case no. 9.<br><br>MoT also answered that, according to section A.A.12.3 of the process guidelines, SKAT must pay interest on tax refunds, etc. when the refund is made on behalf of the State. The interest on the refund amount was based on the Danish Interest on Overdue Payments Act as there were no special rules on accrual of interest in other legislation.<br><br>Accrual of interest on refunded taxes for taxpayers with limited tax liability did not appear to have been regulated in the Danish Withholding Tax Act or the Danish Corporation Tax Act (Selskabsskatteloven), including executive orders pertaining to the two acts. |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

| | |
|---|---|
| | This meant that the provisions of the Danish Interest on Overdue Payments Act were applicable to the handling of cases on refund of dividend tax withheld. |
| | According to the rules, interest was only payable from 30 days after SKAT had received the refund claim. The interest rate was the official lending rate of Danmarks Nationalbank, the Danish central bank, on January 1 and on July 1 in the year in question with a surcharge of 7%. |
| | In accordance with section 3(3) of the Danish Interest on Overdue Payments Act, interest was payable from 30 days after the day on which the debtor was able to obtain the information regarded as necessary to assess the legitimacy and size of the claim. |
| | Based on the above provision, MoT was of the opinion that it was possible to postpone/suspend the 30-day rule, i.e. the time at which interest had to be added, if SKAT found and documented that it was necessary to obtain further information in order to assess the legitimacy of the claim. According to the reply, this was especially relevant in situations in which there was reason to ask the applicant whether the applicant was the rightful owner. The rules on accrual of interest were subsequently amended; see case no. 15. |
| | There do not seem to have been submissions to the Minister or the Permanent Secretary in the case. |
| **14.** <br> *Case no.:* <br> *2011-712-0082 /* <br> *2011-712-0083* <br><br> Amendment of the Executive Order on Reporting Obligations, etc. | This concerns a case on amendment of the Executive Order on Reporting Obligations, etc. (the Reporting Order) under the Danish Tax Control Act. The new executive order was signed on December 15, 2011 by the then Minister for Taxation (Executive Order no. 1315 of December 15, 2011). |
| | By Danish Act no. 462 of June 12, 2009 (bill no. L 201, parliamentary year 2008-2009), the Minister for Taxation was provided with statutory authority to lay down reporting deadlines deviating from the normal deadlines. The statutory authority was inserted in section 9 A(5) of the Danish Tax Control Act and exercised in the new Reporting Order. |
| | In the executive order, the statutory authority was exercised to stipulate that reporting on dividends under section 9 B(2) of the Danish Tax Control Act (unlisted stocks which are not registered in a central securities depository) must, as a general rule, be made no later than in the month after the adoption or decision to distribute or credit the dividend. |
| | It appears from the submission in connection with the external consultation round for the executive order that, in accordance with the previous rules, companies which are not admitted to trading on a regulated market and which are not registered in a central securities depository (unlisted stocks) were to report the |

Confidential Pursuant to Protective Order              SKAT_MDL_001_0075835_T

| | dividend and the dividend tax withheld in the month following the dividend distribution. |
|---|---|

Confidential Pursuant to Protective Order

In addition, they were to report the identity of the individual dividend recipients and the dividend received by the individual recipient no later than on January 20 of the year after the dividend distribution.

If the reporting was made concurrently with the declaration, this would make it possible for SKAT to check more quickly whether the correct dividend tax has been withheld and paid. It would also make it easier for SKAT to process claims from non-residents for refund of dividend tax withheld based on the reporting of the identity of the dividend recipients. In order to ensure reporting by these unlisted companies concurrently with their declarations, reporting before the expiry of the declaration deadline was made compulsory. This means that the reporting and declaration deadlines could be harmonized in the long term.

The executive order was applicable to the reporting of distributions adopted or decided on or after January 1, 2012.

A draft executive order was submitted to the then Minister for Taxation, who, on November 29, 2011, approved that the executive order could be sent for external consultation. The element concerning reporting of dividend tax was specifically mentioned in connection with the submission. It was mentioned that the executive order was only changed for unlisted stocks, but that work was being done to find a solution for listed stocks. However, it was mentioned that there would be a need for a legislative amendment in this connection.

The executive order was also submitted to the then Minister for Taxation for signing after the external consultation. In connection with the submission, it was mentioned that the Confederation of Danish Industry (DI) had made a comment on the deadline for payment of dividend tax for listed companies. However, it was also mentioned that this comment concerned the legislation and not the executive orders, which, as mentioned, only concerned amendments to the rules for unlisted companies. However, it was noted that the matter would be examined further.

Based on an employee's memory, it must be assumed that the reason why the statutory authority was only exercised in 2011 is that the IT support in SKAT in respect of the expedited declarations was to be incorporated in a system that was only expected to be ready in 2011. However, this does not appear from documents or other annotations in the case.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

| | |
|---|---|
| | The reason why the statutory authority was only exercised for unlisted companies is that three objections from the Danish Bankers Association were being considered:<br><br>Firstly, the reporting for listed companies is handled by the custodians responsible for the account with VP Securities (VP) in which the stocks in question are entered. The custodian does not necessarily know the declaration deadline for the dividend-paying company. The declaration deadline is the same as the deadline for reporting A-tax to eIndkomst. Companies with few employees thus have the 10th of the month after the distribution as their deadline, while the deadline for companies with more employees is the last business day of the month following the month of distribution.<br><br>Secondly, the reporting deadline would be very short if distribution is made at the end of a month and reporting must take place already on the 10th of the following month. As distributions are often made in the spring, the problems with a short deadline may increase further, especially if Easter falls in the period between the distribution and the reporting deadline.<br><br>Thirdly, one of the ideas behind a harmonization of the declaration and reporting deadlines was that the declaration could be abolished, as it can be formed by adding up the amount reported. However, this would mean that the dividend-paying company will be bound by the custodians' reporting in relation to the settlement of dividend tax. The Danish Bankers Association regarded this as unreasonable for both the custodians and the companies.<br><br>There was therefore a need for further reflections in relation to listed companies.<br><br>Harmonization of the declaration and reporting deadlines for unlisted stocks was implemented by Executive Order no. 1123 of November 30, 2012; see case no. 17. |
| **15.**<br>*Case no.:*<br>2011-411-0044<br><br>Bill no. L 173 – bill to amend the Danish Corporation Tax Act, the Danish Withholding Tax Act, the Danish Tax Control Act and various other acts (strengthening of actions against zero tax companies, calculation of income in a permanent establishment, and openness about | This is a case concerning the drafting of bill no. L 173 (parliamentary year 2011-2012). The bill was introduced on April 25, 2012 by the then Minister for Taxation. The bill was adopted on June 13, 2012 (Danish Act no. 591 of June 18, 2012).<br><br>The passed bill contains several elements concerning withholding tax on dividends:<br><br>1. It appears from the explanatory notes to the bill that the joint taxation rules mean that a group is, in effect, taxed on the total group income regardless of how the taxable incomes and other values are distributed in the group. |

Confidential Pursuant to Protective Order

**TRANSLATION**

| | |
|---|---|
| companies' tax payments, etc.) | |

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

Together with the fact that the group's funds can be transferred tax-free within the group, this warrants that the group is also jointly and severally liable for taxes, etc. in order to reduce the risk of SKAT being left with an uncovered claim even though there may be cover for the claim in other parts of the group.

It is therefore proposed that the liability for dividend tax, etc., royalty tax, and interest tax as well as surcharges and interest, in addition to the company that is liable to pay in accordance with the rules in section 69(1) and (2) of the Danish Withholding Tax Act, must generally also cover companies jointly taxed with the dividend-paying company at the time of the withholding.

2.  In a proposed amendment in connection with the second reading of the bill, a change was proposed to the accrual of interest on the withholding tax claim in the situations in which a foreign dividend-receiving company or person is entitled to disbursement of withholding tax withheld if the tax authorities have lost a case on withholding of withholding tax.

In addition, it was proposed in the proposed amendment that the tax authorities be granted the possibility to suspend the payment deadline, and thus the interest accrual, if the recipient's circumstances prevented a control of whether the recipient was actually the party entitled to receive the refund.

In situations in which the recipient refuses to participate in clarifying the circumstances that form the basis of the assessment of whether the recipient is the actual beneficiary or does not provide sufficient information, the tax authorities may interrupt the deadline for a refund. With the Danish Act of June 18, 2012, a provision was introduced in the Danish Withholding Tax Act that no interest accrues on the amount until, at the earliest, six months after the basis for the disbursement has been sufficiently documented.

The proposed amendment also means that provision of security may be demanded. If, based on a specific assessment, the tax authorities find that disbursement of a withholding tax refund will entail an obvious risk of loss, the proposed amendment allows the tax authorities to demand that the recipient put up security before the disbursement is made. However, the tax authorities may only demand security if the claim is disputed and has not been finally settled by an administrative appeals body or the courts.

Confidential Pursuant to Protective Order    SKAT_MDL_001_0075835_T

Amendment no. 1 on joint and several liability in the group of jointly taxed companies dates back to two early warnings of October 16, 2009 and October 29, 2009 from SKAT; see case no. 4.

This element was included in the original draft bill, which was sent for external consultation. The proposed amendment triggered a great deal of criticism from both companies and members of the Danish Parliament, but it was passed with a few adjustments.

The changes under amendment no. 2 were presented in a proposed amendment during the second reading of the bill.

Amendment no. 1 on liability for income tax for jointly taxed companies has effect for income years starting on or after July 1, 2012. The amendment concerning liability for withholding taxes has effect for tax payments falling due for payment on or after July 1, 2012.

The amendments mentioned in no. 2 have effect for claims for refund of withholding taxes which have not been decided by June 30, 2012. This applies regardless of whether the withholding tax has been withheld before July 1, 2012.

By a submission of June 16, 2011, the then Minister for Taxation was briefed on the bill, which would be tabled in the coming parliamentary session. It is mentioned in the submission that the bill will include a change to the joint and several liability for corporation taxes and withholding taxes in joint taxation relations. The bill followed up on an agreement concluded between the then Government, the Danish People's Party (Dansk Folkeparti) and Pia Christmas-Møller on the fair taxation of multinational companies. The amendment is also included in a fact sheet from the Ministry of Finance dating May 27, 2011. The Minister for Taxation approved the submission.

On November 20, 2011, the then Government entered into an agreement with the Red-Green Alliance (Enhedslisten) on the Danish Finance and Appropriation Act for 2012. It appears from the agreement that there was agreement to implement the Minister's initiatives for, among other measures, joint and several liability in connection with joint taxation.

In a submission of January 17, 2012 regarding the draft bill, it is mentioned that the bill contains a change of the joint and several liability for corporation taxes/withholding taxes in joint taxation relations. The submission was approved by the Permanent Secretary on January 17, 2012. It does not appear from the submission whether the Minister saw the case.

Confidential Pursuant to Protective Order                                        SKAT_MDL_001_0075835_T

| | |
|---|---|
| | By a submission of January 25, 2012, the Minister was presented with a catalog of questions and answers. It appears that the catalog of questions and answers was sent to the spokespersons on January 30, 2012. The catalog of questions and answers contains a section on the introduction of joint and several liability in joint taxation relations.<br><br>In the submission of May 1, 2012, it is recommended that a proposed amendment be presented for the second reading of bill no. L 173. In the submission, reference is made to the amendment being connected with some pending legal actions. It is stated that if MoT succeeds in its claim before the courts, it will, in effect, not be possible to recover the withholding tax disbursed from the parent company abroad. It is therefore proposed to introduce a provision that the Danish company which was obliged to withhold the tax and which originally withheld the tax is to continue to be liable for the withholding tax until a final ruling or judgment has been delivered. It is stated in the submission that the existing rules on liability for withholding taxes are inadequate, and that it is essential to intervene as quickly as possible. It is recommended that this be done as a proposed amendment to bill no. L 173, which already contains an amendment regarding withholding taxes. The submission was approved by the then Minister for Taxation on May 2, 2012.<br><br>The specific proposed amendment at the second reading was presented to the Minister for Taxation in a submission of May 16, 2012. The proposed amendment sent was approved by the Minister for Taxation on May 20, 2012. |
| **16.**<br>*Case no.:*<br>*012-0173537*<br><br>Bill no. L 67 – bill to amend the Danish Tax Control Act, the Danish Withholding Tax Act and various other acts (extension of the tax assessment notice scheme, reporting of dividends, etc.) | This is a case concerning the drafting of bill no. L 67 (parliamentary year 2012-2013). The bill was introduced on November 14, 2012 by the then Minister for Taxation. The bill was adopted on December 17, 2012 (Danish Act no. 1354 of December 21, 2012).<br><br>The bill contains an element regarding withholding tax on dividends:<br>It appears from the general explanatory notes that it is proposed that the reporting of dividends on stocks, etc. to SKAT always be done no later than the month after the adoption or decision to make the distribution when this concerns stocks in Danish companies. It is also proposed to make some extensions to the requirements for the contents of the reporting.<br><br>The provisions in both sections 9 B and 10 A of the Danish Tax Control Act on the reporting of dividends mention that reporting must be done each year and at least once a year. Furthermore, under section 9 A(5) of the Danish Tax Control Act, the Minister for Taxation may lay down reporting deadlines that deviate from |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

TRANSLATION

|  | the normal deadlines (January 20 of the year following the calendar year which the reporting concerns). |
|---|---|

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T

The statutory authority was introduced by Danish Act no. 462 of June 12, 2009 (bill no. L 201 – parliamentary year 2008-2009). It followed from the explanatory notes to bill no. L 201 that the idea behind this provision was to harmonize the reporting deadline with the deadline for declaration and payment of dividend tax. This means rules on reporting of dividends in the month following the adoption of or decision on the dividend distribution.

It appears from bill no. L 67 that the idea is to exercise the statutory authority in section 9 A(5) of the Danish Tax Control Act in relation to all dividends distributed from Danish companies, etc., i.e. not as previously only in relation to dividends from unlisted stocks in Danish companies. It is stated that this can be done by an amendment to Executive Order no. 1315 of December 15, 2011 on Reporting Obligations, etc. under the Danish Tax Control Act.

It is also proposed to increase the information that must be covered by the reporting. One proposal is that information must be provided about the reason if no dividend tax has been withheld, or if dividend tax has been withheld at a reduced rate. It is stated in the bill, that, on the basis of the amendment to the act, the intention is to make an amendment to Executive Order no. 1315 of December 15, 2011 on Reporting Obligations, etc. under the Danish Tax Control Act, after which the reporting of the reason for the use of a reduced rate under a double taxation agreement must include information on the date of the documentation which has formed the basis for using the reduced rate and information about the country which has certified the documentation.

This is to provide SKAT with a better overall basis for checking whether dividend tax is withheld and settled correctly and for processing claims for refund of dividend tax withheld.

The amendment that provides statutory authority to require reporting of additional information entered into force on January 1, 2014. The statutory authority was subsequently exercised in connection with the issue of a new executive order on reporting obligations, etc. under the Danish Tax Control Act; see case no. 19.

A draft bill was submitted to the then Minister for Taxation on September 19, 2012. The amendments concerning dividend tax are not mentioned in the submission, but are included in a summary and a memo of the bill enclosed with the submission. It does not appear from the submission whether the Minister for Taxation approved the case.

In connection with the first reading of the bill, a submission was prepared on November 21, 2012.

Confidential Pursuant to Protective Order

**TRANSLATION**

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_0075835_T

| | |
|---|---|
| | Here, several documents, including a catalog of questions and answers and a draft for talking points are submitted to the Minister for Taxation. The element on reporting of dividends from stocks was included in the catalog of questions and answers. The catalog of questions and answers was sent to the tax spokespersons in the Danish Parliament on December 20, 2012. The catalog shows that the purpose is to improve SKAT's dividend tax administration, as monthly reporting will increase SKAT's possibilities for quick reconciliation, including through increased control possibilities in connection with refund cases. The submission was approved by the Permanent Secretary on November 25, 2012. It does not appear that the Minister for Taxation saw the submission, but it appears that the material was sent to the spokespersons.

The authorization granted by bill no. L 201 was used to amend the Executive Order on Reporting Obligations, etc. under the Danish Tax Control Act to include listed stocks; see case no. 17. Bill no. L 67 is thus a follow-up on bill no. L 201, including Internal Audit's report from 2010 on SKAT's dividend tax administration and SKAT's working group, which was subsequently appointed and which submitted a report on the work on dividend tax refunds on June 8, 2011. |
| **17.**<br>*Case no.:*<br>*012-0181424*<br><br>Amendment of the Executive Order on Reporting Obligations, etc. | This concerns a case on amendment of the Executive Order on Reporting Obligations, etc. (the Reporting Order) under the Danish Tax Control Act. The new executive order was signed on November 30, 2012 by the then Minister for Taxation (Executive Order no. 1123 of November 30, 2012).

In the explanatory notes to Danish Act no. 1354 of December 21, 2012 (bill no. L 67, parliamentary year 2012-2013), notice is given of an amendment to the Executive Order on Reporting Obligations, etc. under the Danish Tax Control Act, in accordance with which monthly reporting is introduced on all dividends after the adoption of or decision on the dividend distribution. Before bill no. L 67, only dividends from unlisted Danish stocks had to be reported no later than in the month after the adoption of or decision on the dividend distribution. With bill no. L 67, it is proposed to exercise the statutory authority from bill no. L 201 to comprise dividends from listed Danish stocks, etc. as well.

The amendment to the Reporting Order is thus, in effect, a follow-up on bill no. L 67; see case no. 16. The assessment was that the executive order could be issued under existing legislation without awaiting the final passing of bill no. L 67.

The executive order introducing the amendments applies to the reporting of dividends adopted or decided on or after January 1, 2013. |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_0075835_T

**TRANSLATION**

Confidential Pursuant to Protective Order

SKAT_MDL_001_0075835_T