# Exhibit 1



Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

October 22, 2020

**BY EMAIL**
Mark Allison
Caplin & Drysdale, Chartered
600 Lexington Avenue
21st Floor
New York, NY 10022-7619

   Re:  In re: Customs and Tax Administration of the Kingdom of Denmark
       (Skatteforvaltningen) Tax Refund Scheme Litigation, 18-md-2865 (LAK)

Dear Mark:

   We write on behalf of Plaintiff Skatteforvaltningen ("SKAT") in response to your letter dated October 1, 2020 concerning purported deficiencies in SKAT's productions to Defendants' Second Requests for Production of Documents (the "Second RFPs" or "Requests") in the above-captioned litigation.

   Contrary to the mischaracterizations in your letter, SKAT has produced thousands of documents responsive to Defendants' Requests — including over 12,000 documents from SKAT's case files on each of the U.S. pension plan defendants ("Plan Defendants"),[1] 660 documents extracted from SKAT's accounting systems reflecting payments made to Plan Defendants and identifying the SKAT employee who processed each payment, and over 10,200 custodial emails from SKAT employees. Unsurprisingly, a large number of documents generated or maintained by SKAT's employees are Danish-language documents. This litigation is, after all, about a fraud perpetrated by your clients on the Danish government. Nor does SKAT have any obligation to index the documents produced in response to each Request; such an undertaking is unreasonably burdensome and would require a re-review of the many

---

1. SKAT's case files contain documents related to SKAT's investigation of each Defendant's fraudulent reclaims, including documents identifying the SKAT employees involved in the investigations, SKAT's communications with Defendants concerning the reclaims, and SKAT's final decisions. Accordingly, SKAT's case files necessarily contain documents duplicative of those in the possession, custody, or control of Defendants. Nonetheless, few Defendants have in fact produced such documents in the U.S. litigation.

thousands of documents SKAT has already produced.[2] In May and November 2019, we discussed SKAT's approach to responding to Defendants' Requests over a series of detailed meet-and-confer conferences conducted for the express purpose of resolving any issues with that approach. At that time, we also made clear that SKAT would not produce attorney work-product translations of its Danish-language documents.

Your characterization of SKAT's production of documents from the Elysium database as a "document dump" is nonsensical. The Elysium database does not contain SKAT's own documents, but rather those of the third-party custodian your clients chose to engage to perpetrate the fraud. SKAT's discovery obligations do not require it to undertake the massively burdensome task of reviewing that third party's database for responsiveness. In fact, SKAT produced these documents pursuant to the Court's March 5, 2020 order [ECF No. 286] directing SKAT to produce "the Elysium Documents in its possession, custody, or control, without withholding or applying redactions to any such documents." Moreover, these are the same documents sought by your Request No. 27, which asked for "All documents maintained or owned by Solo Capital, affiliates of Solo Capital, Telesto, Old Park Lane, North Channel Bank, Indigo, West Point Derivatives, Ltd., and ED&F Man Capital Markets Ltd." in SKAT's possession, custody or control.

Because the Court's order obligates SKAT to produce this large volume of third-party documents without withholding or redacting any of them, SKAT did not undertake a pre-production review of the documents before producing them. In consideration of the privacy interests of individuals whose personal data or images may be contained therein, such as in the home videos and other video materials[3] you describe in your letter, SKAT designated, as the Court's order requires, all Elysium documents it produced as confidential under the terms of the stipulated protective order governing discovery in this litigation.

As the Court's order requires, and you have acknowledged, "consistent with the limitation on the use of Discovery Material in paragraph [21] of the Protective Order and the principle of data minimization set forth in Article 5(c)(1) of the European Union's General Data Protection Regulation, the Defendants will use the Elysium documents solely for the purpose of these actions or any Foreign Actions commenced by SKAT." Accordingly, your review and use of any of the Elysium documents will need to take Foreign Data Protection Law, as defined in paragraph 6 of the Protective Order, into consideration when handling any Foreign Confidential Personal Data, as defined in paragraph 7 of the Protective Order.

With respect to the questions regarding specific Requests and SKAT's objections to the Requests raised in your October 1, 2020 letter, we respond as follows:

---

2. SKAT has produced documents pursuant to Federal Rule 34(b)(2)(E), which permits a party to produce documents "as they are kept in the usual course of business." *See also Morgan v. City of New York*, 2002 WL 1808233, at *4 (S.D.N.Y. Aug. 6, 2002) (rejecting plaintiff's demand for indexed productions where defendants had produced documents as maintained in the course of business).

3. Following Mr. Hanamirian's August 21, 2020 letter, SKAT undertook a review of the 734 videos produced to date (other than 5 that were not viewable) and confirms that none are related to the case. Thus, we suggest that you refrain from further review of any videos in the production.

*First*, we cannot agree to your request that SKAT produce all confidential and third party information prohibited from disclosure under Danish and European Union laws. As you are aware, personal and financial information in SKAT's possession is subject to confidentiality under § 27 of the Danish Public Administration Act and § 17 of the Danish Tax Administration Act, as well as the General Data Protection Regulation of the European Union. The cases you cite — *Joy v. North*, 692 F.2d 880 (2d Cir. 1982), and *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 1997 WL 689462 (S.D.N.Y. Nov. 3, 1997) — relate to the application of a protective order over a party's own business information and have no bearing on SKAT's objection here.

Consistent with its confidentiality obligations, SKAT's response to the Second RFPs made clear that SKAT objected to Request Nos. 1-3, 21, 22, and 26, among others, insofar as those Requests sought documents or information identifying dividend withholding tax claims made by, or refunds made to, third party individuals or entities. Other than conclusory statements that these Requests "are relevant to potential defenses," Defendants have made no attempt to articulate as a factual or legal matter how personal and financial information of third-party individuals are relevant to Defendants' defenses. Please articulate the basis for your belief that sensitive and confidential information regarding third parties has any bearing on any issue in the case and the basis for your belief that those documents are subject to production in contravention of Danish and European Union laws.

*Second*, SKAT does not have legal authority to compel the production of documents from SØIK or any other Danish government agencies. As a result, "the files of any agency or instrumentality of the Kingdom [of Denmark]" other than SKAT are outside the possession, custody, or control of SKAT. We also note that although SKAT raised this objection more than 20 months ago and confirmed this approach to SKAT's production of documents in subsequent meet-and-confers, your October 1, 2020 letter constitutes the first time Defendants have articulated a disagreement with this objection to the Second RFPs. Furthermore, as we informed you during the parties' meet and confer call on October 6, 2020, SKAT is not in custody or possession of any transcript of SØIK's interview of Sanjay Shah.

*Third*, you misunderstand SKAT's objection to producing information about third parties that owned shares of Danish companies and may have received refunds of withheld dividend tax. For example, Request No. 15 seeks documents "sufficient to identify whom SKAT determined is the actual beneficial owner of the Shares, and whom SKAT determined was the actual recipient of the Dividends[,]" and Request No. 21 seeks "[d]ocuments sufficient to identify that SKAT paid withheld dividend tax refunds to individuals or entities other than the Plans with respect to the Shares." These Requests are also nonsensical. SKAT alleges that the Defendants did not own shares that the Defendants claimed to own. It is of no moment to the litigation who else in the universe might have owned shares in the same securities that Defendants purported to, but did not, own —this is akin to Defendants falsely claiming that they have $100 in the bank, and requesting documents from SKAT to show who does have $100. Request No. 15 thus asks SKAT to make a meaningless search for documents regarding the ownership of non-existent property.

Instead, as you know, SKAT has been busy working to collect information from the sub-custodians that purportedly held shares for Solo Capital Partners LLP, its affiliated custodians, and ED&F Man Capital Markets Limited. SKAT believes this evidence, along with

4

other evidence in the case, will show that the Plan Defendants did not own the shares of Danish stock or receive the Danish dividends that they claimed to have owned and received. To that end, SKAT has sought the issuance of letters rogatory to SEB, Société Générale, and BNP Paribas, and has issued a subpoena to J.P. Morgan. SKAT will produce all documents received through those efforts to you.

Nor is SKAT's payment of withholding tax refunds to any third parties relevant to whether the defendants themselves falsely claimed to own shares of Danish stock. SKAT could have paid no dividend withholding tax refunds to third parties, and this would not affect whether the Defendants' claims of ownership were false.

*Finally*, SKAT has produced relevant documents in response to the vast majority of the other Requests identified in your letter, and in response to all non-objectionable Requests. In particular, SKAT has produced relevant documents from the custodial files of employees responsible for the administration or processing of dividend withholding tax refunds and/or claims between 2012 and 2015. It has also produced the Legal Inquiry documents, which contain a variety of materials responsive to other Requests. In particular, they contain numerous memoranda and emails from SKAT employees about the administration of DWT refunds (*see, e.g.*, SKAT_MDL_001_00349334), communications between SKAT and the Ministry of Taxation about the administration of DWT refunds, and all internal audit reports related to dividend withholding tax that we are aware of dating back to 2001. *See, e.g.*, SKAT_MDL_001_00280953 (2001); SKAT_MDL_001_00281008 (2002); SKAT_MDL_001_00281025 (2006); SKAT_MDL_001_00281058 (2010); and SKAT_MDL_001_00281103 (2012, 2013); and SKAT_MDL_001_0075835 (2015). By way of example, SKAT has responded to the Second RFPs, including Requests to which it objected:

- Request No. 4 seeks "All National Audit Office reports concerning the payment of dividend withholding tax refunds and/or claims" and their supporting documents. In addition to all National Audit Office (*Rigsrevisionen*) reports being publicly available at https://rigsrevisionen.dk/, SKAT has produced the *Rigsrevisionen* report of its 2015 investigation of SKAT and the Ministry of Taxation's roles in the administration of dividend withholding tax refunds at SKAT_MDL_001_0075124; the documents underlying that report are all included in the Legal Inquiry documents. SKAT is not aware of other documents responsive to this request.

- The state income lists (*indtaegtslister*) sought by Request No. 5 are publicly available at https://www.skm.dk/skattetal/statistik/indtaegtslister. In response to Request No. 5, SKAT has produced the Legal Inquiry documents, which include the documents underlying the 2015 Internal Audit report, SKAT's monthly accounting approvals from 2012 to 2015, and a Ministry of Taxation memorandum to *Rigsrevisionen* explaining the process by which the *indtaegtslister* were prepared (SKAT_MDL_001_00276710).

- Request No. 9 seeks "[a]ll documents received by and/or relied on by SKAT to support the allegation in the complaints that it discovered the alleged fraud in July 2015." We note that SKAT alleged in its complaints that in June, not July, 2015, SKAT received an anonymous tip from a whistleblower. *See e.g.* Complaint at

¶ 6, No. 1:18-cv-04047-LAK. SKAT has produced the emails from the representative of the anonymous whistleblower that it received in June 2015 and numerous documents from the second half of 2015 that refer to this notification as the event that triggered SKAT's investigation and subsequent discovery of the fraud.

- In response to Request No. 13, SKAT has produced relevant documents from the custodial files of employees responsible for the administration or processing of dividend withholding tax refunds and/or claims between 2012 and 2015, including approximately 1,000 documents either collected from the custodial files of Hanne Villemoes Hald, or sent by her or to her. In response to Request No. 14, SKAT has also produced data extracted from SKAT's accounting systems identifying the SKAT employee who entered each bundle payment into that system (SKAT_MDL_001_00364913).

- Request No. 22 seeks "All account statements relating to SKAT-owned or controlled bank accounts that paid the dividend withholding tax refunds to the Plans between 2012 and 2015, including account statements for any third-party banks that paid dividend withholding tax refunds related to the claims on behalf of SKAT between 2012 through 2015." SKAT has produced documents evidencing its payment of reclaims to the Plan Defendants, including bank statements, for each of the applications submitted by the Plan Defendants. We do not understand what is meant by "account statements for any third-party banks that paid dividend withholding tax refunds related to the claims on behalf of SKAT between 2012 through 2015."

In sum, SKAT has more than met its burden to respond appropriately to the Defendants' document requests, and has produced an extensive collection of responsive documents. We are happy to meet and confer with you about any other concerns you have.

Sincerely,

/s/ Marc Weinstein
Marc Weinstein

cc:     All counsel of record, via email