# Exhibit 2

**CONFIDENTIAL PURSUANT TO RULE 26(C) PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**



| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**EXPERT REPORT OF GRAHAM WADE**

**December 31, 2021**

to compensate each other for a loss in these circumstances, although such compensation is relatively rare due to the small financial impact of a one-day delay in settlement.

83.  In a situation involving a buyer's purchase of shares in a normal cum-dividend purchase that subsequently fails, it is customary for the seller to make a compensation payment to the buyer via a Market Claim.  This compensation amount is typically an amount equal to the net real dividend received by the buyer (calculated after deducting any dividend withholding tax).  It is my understanding that the earliest examples of Cum-Ex transactions arose as a result of accidents due to settlement failures.

84.  It would be highly unusual for the seller to make any representations or warranties to the buyer to protect or indemnify them from potential consequences of receiving a dividend compensation payment instead of the real dividend in such circumstances and large market participants would invest considerable time and care to avoid settlement fails close to dividend Record Date.

### 4. Cum-Ex Transactions Do Not Require Dividend Compensation Payments

85.  Another point to highlight about Cum-Ex transactions is that a dividend compensation payment is not required.  This payment arises only because of a consensual choice made by the parties to the cum-ex transaction to 'mis-price' the purchase transaction in the first place.

86.  To illustrate, assume the price of shares on Ex-Dividend basis in Company C is DKK 100.  Further, assume Company C has already declared a real dividend of DKK 5 per share to be paid to holders on the Record Date.

87.  The following two transactions are economically equivalent to each other:

   i.  Party A agrees to sell 100 shares of Company C to Party B for DKK 105 each (the cum-dividend price) on the business day before the Ex-Dividend Date, with settlement occurring on the first business day after the Record Date, and makes a dividend compensation payment of DKK 5 to Party B.

   ii.  Party A agrees to sell 100 shares of Company C to Party B for DKK 100 each (the ex-dividend price) on the business day before the Ex-Dividend Date, with settlement also