*Exhibit 25*

BECH-BRUUN

Copenhagen, 4 August 2014

**Arne Riis**
Partner

T +45 72 27 33 22
ari@bechbruun.com

Our ref. 059175-0001 ari/heb
Doc. No. 11839006.1

# Danish Opinion

## 1. Introduction

This opinion (the **"Opinion"**) has been prepared at the request of Jones Day, Germany on behalf of North Channel Bank GmbH & Co. KG (**"NCB"**).

The Opinion considers the Danish liability implications for NCB of acting as a custodian bank in certain transactions over Danish listed equities entered into by a United States pension fund (**"USPF"**).

## 2. Scope

The Opinion solely considers the existence of Danish tax liability for NCB, the civil law liability for a loss suffered by the Danish state for NCB and Danish criminal liability issues for NCB as a result of the transaction on the basis of the factual background and assumptions set out in 3 and 4, below.

The Opinion does not consider:

2.1.1  the tax treatment in Denmark of other parties than NCB in the contemplated transaction;

2.1.2  the liability for NCB for claims raised by other parties than the Danish state if the assumed Danish tax treatment is not ultimately obtained;

2.1.3  the calculation of the size of a non-contractual liability potentially incurred by NCB;

2.1.4  the liability issues of other parties than NCB for claims raised by the Danish state as a result of the transaction;

2.1.5  whether Danish law is applicable to determine non-contractual liability for NCB, being a non-Danish entity, pursuant to the international rules on choice of law;

2.1.6  issues raised by the contemplated transactions under laws other than Danish law;

2.1.7  the possibilities for the Danish tax authorities to pursue a Danish or criminal claim or civil law liability against NCB in Germany for a loss suffered, if applicable.

| Copenhagen | Aarhus | Shanghai, rep. office | | |
|---|---|---|---|---|
| Langelinie Allé 35 | Frue Kirkeplads 4 | 83 Loushanguan Road | T +45 72 27 00 00 | Law firm |
| 2100 Copenhagen | 8000 Aarhus C | Suite 2635, 26/F | F +45 72 27 00 27 | CVR No. 25089944 |
| Denmark | Denmark | Shanghai, China | E info@bechbruun.com | www.bechbruun.com |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00533266

### 3. Contemplated Transactions

We understand that USPF contemplates to make the following transactions:

3.1 On the trade date ("**Trade Date**"), the USPF/Partnership purchases Danish exchange traded equities ("**Equities**") through a regulated inter-dealer broker ("**Broker**"). The purchase will take place prior to or on the date on which the general meeting of the issuer of the Equities (the "**Issuer**") resolves to use all or part of the earnings and profits to distribute a dividend ("**Dividend Approval Date**"), but no later than on the Dividend Record Date (cum dividend), i.e. prior to the ex-dividend date. The settlement date for the Equities transaction ("**Equities Settlement Date**") will be after the Dividend Record Date (ex dividend). The "**Dividend Record Date**" is the end of the stock exchange trading day that ends immediately prior to the ex-dividend date.

3.2 On the Trade Date, the seller ("**Seller**") sells the Equities through the Broker. Consequently, the sale will take place prior to the ex-dividend date, i.e. prior to or on the Dividend Approval Date, but no later than on the Dividend Record Date (cum dividend). The Equities Settlement Date will be after the Dividend Record Date (ex dividend).

3.3 Both USPF/Partnership and Seller maintain a securities account with North Channel Bank GmbH & Co. KG ("**Custodian**").

3.4 USPF/Partnership will receive the dividend (net of withholding tax) which has been declared on the Equities on the Dividend Approval Date ("**Dividend**") through the Custodian. The Custodian will provide USPF/Partnership with a certificate (credit advice) about the receipt of the net dividend. At the same time, the Custodian will provide the Seller with a debit advice on the net dividend.

3.5 On the Trade Date:

3.5.1 the Seller will agree with a third party (unrelated to the Seller) to enter into a securities lending transaction (the "**Securities Lending Transaction**") on the Equities Settlement Date, pursuant to which the third party agrees that it will lend, on the Equities Settlement Date, the Equities (plus dividend) to the Seller. As the Equities are delivered ex dividend, the third party will make a compensation payment to the Seller; and

3.5.2   USPF/Partnership will agree with a third party (unrelated to USPF/Partnership) to enter into a Securities Lending Transaction on the Equities Settlement Date, pursuant to which USPF/Partnership agrees that it will lend, on the Equities Settlement Date, the Equities (plus dividend) to the third party. As the Equities are delivered ex dividend, USPF/Partnership will make a compensation payment to the third party.

3.6   On the Trade Date:

3.6.1   the Seller will enter into an OTC forward transaction with a third party (unrelated to the Seller) (the "**Forward Transaction**"), pursuant to which the third party will, on a day after the Equities Settlement Date (the "**Forward Settlement Date**"), deliver the Equities (ex dividend) to the Seller; and

3.6.2   USPF/Partnership will enter into an OTC Forward Transaction with a third party (unrelated to USPF/Partnership), pursuant to which USPF/Partnership will, on the Forward Settlement Date, deliver the Equities (ex dividend) to the third party.

3.7   On the Equities Settlement Date:

3.7.1   the Securities Lending Transaction between the Seller and the third party will be settled, i.e. the third party will lend the Equities to the Seller and the Seller will deliver the Equities (ex dividend) to USPF/Partnership; and

3.7.2   the Securities Lending Transaction between USPF/Partnership and the third party will be settled, i.e. USPF/Partnership will lend the Equities to the third party.

3.8   On the Forward Settlement Date:

3.8.1   the Forward Transaction between the Seller and the third party will be settled, i.e. the third party will deliver the Equities to the Seller under the Forward Transaction and the Seller will return the Equities to the third party under the Securities Lending Transaction; and

3.8.2   the Forward Transaction between USPF/Partnership and the third party will be settled, i.e. USPF/Partnership will deliver the Equities to the third party under the Forward Transaction and the third party will return the Equities to USPF/Partnership under the Securities Lending Transaction.

3.9   USPF has obtained a tax opinion from Danish tax counsel confirming that USPF in the above factual scenario should be entitled to reclaim in full Danish withholding tax on dividends paid on the Equities. Contrary to the description above the

Confidential Pursuant to Protective Order
SKAT_MDL_001_00533268

BECH-BRUUN

4/14

Danish tax opinion assumes that the parties deliver the Equities under futures contracts rather than forward transactions. We have been requested to assume that there is no economic difference between the futures contracts originally contemplated and the forward transactions described above.

4.  **Assumptions**

    For the purpose of the Opinion, we have assumed that:

    1.  USPF is a tax resident of the United States;

    2.  USPF does not have a permanent establishment in Denmark;

    3.  Dividends received by USPF on the Equities are not derived from the carrying on of a business by USPF or through an associated enterprise;

    4.  USPF is comprised by Article 22(2)(e) of the Denmark – US double tax treaty currently in force (the **"Denmark – US Tax Treaty"**) entailing that USPF is:

        a.  A legal person organised under the laws of the United Stated to provide pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan; and

        b.  More than 50 percent of USPF's beneficiaries, members or participants are individuals resident in either the United States or Denmark;

    5.  On the Trade Date, USPF will obtain unconditional ownership to the Equities and will have full ownership rights over the Equities on Dividend Approval Date, including the right to receive the Dividend declared on that date;

    6.  The Equities will be held by USPF through NCB as custodian. USPF's ownership to the Equities will be recorded with NCB and, depending upon NCB's/sub-custodian's other long and short positions, the Danish Securities Centre;

    7.  NCB's records will show that USPF is the legal owner but not contain information about the beneficial ownership of the Equities on Dividend Approval Date and that the Danish Dividend represents a real dividend on the Equities which is passed on to USPF by the custodian. Further, it is assumed that upon request by USPF, NCB would issue standard ownership

Confidential Pursuant to Protective Order

BECH-BRUUN

5/14

documentation to USPF regarding the Equities in custody showing the legal title to the Equities and the dividend received.

8. NCB will not issue ownership documentation regarding the Equities comprised by the contemplated transaction to other parties than USPF during the period from the acquisition of the Equities by USPF and until dividend has been paid to USPF on the Equities or issue documentation showing other owners than USPF during said period.

9. The contemplated transaction was not structured by NCB;

10. NCB will perform the role of the securities custodian, but no other role, e.g. assisting in the reclaiming of Danish withholding tax on the Equities, and NCB carry out its role as custodian in relation to the contemplated transaction in accordance with its standard procedures which are in line with normal procedures for custodian banks in general;

11. NCB will charge a fee for the custodian services rendered in this transaction which does not deviate from the fees charged for custodian services in general;

12. NCB has been requested to perform the role of the custodian;

13. NCB has no reason to assume that – or information or knowledge about whether or not – a person or entity other than USPF will file for a tax reclaim with respect to the dividend withholding tax withheld on the Dividend paid on the Equities.

## 5.    Opinion

Based solely on our understanding of the facts outlined in Section 3 and the assumptions outlined in Section 4 above, which we have conducted no separate examination or verifications, and subject to the qualifications set out in Section 7, we find that:

5.1 NCB will not be subject to Danish tax liability as a result of the contemplated transaction.

5.2 NCB should not be subject to Danish civil law liability to compensate the Danish state for any loss suffered as a result its role in the contemplated transaction.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00533270

The following circumstances, however, prevents us from reaching a more definitive opinion on the position of NCB:

1. The fact that USPF in the Forward Transaction enters into OTC forward contracts (and not e.g. listed futures) to hedge their position could in principle allow for a "perfect hedge" of USPF's position in the Equities, which eliminates ownership risk, and could arguably also point in the direction of another identified party assuming such ownership risk, which could then be considered the beneficial owner of the dividend received on the Equities, rather than USPF. This would arguably entail the possibility of an arbitrage identifiable to NCB in which the standard documentation of ownership issued by NCB could be misleading in a manner known or suspected by NCB.

2. The fact that a tax opinion has not been obtained by USPF (or NCB) on the exact transaction carried out by USPF (the tax opinion assumes futures and not OTC forward contracts) would make it more difficult for NCB to claim that it has by definition acted in good faith (and thus not culpable) on the Danish tax treatment of the transaction, which by a professional party may reasonably be assumed to contain issues in relation to ownership of the Equities.

3. The cases concerning sale of "empty" companies outlined in 6.2.1, below, have demonstrated the willingness of the Danish tax authorities and the Danish courts to place liability for losses suffered by the tax authorities with other parties involved in the transactions triggering the loss when the transactions are deemed to have a questionable nature. In light thereof, it is not certain how the Danish tax authorities would perceive the contemplated transaction over the Equities and, if deemed questionable, how the Danish court system would respond. However, even if deemed questionable, it is our view that the role of NCB in the contemplated transaction is not comparable to the role of the parties held liable, including the banks, in the "empty" companies cases, which were more severe and instrumental in relation to the loss suffered by the tax authorities.

5.3 NCB should not be subject to Danish criminal liability as a result of its role in the contemplated transaction.

## 6. Danish tax regime and analysis

6.1 Liability for Danish withholding tax

Confidential Pursuant to Protective Order

SKAT_MDL_001_00533271

### 6.1.1 The legal regime – in brief

Generally, the legal owner of the shares on the date of the decision to distribute a dividend will also be considered as the owner of the dividend from a Danish tax and corporate law perspective, even if the buyer is not (yet) registered as owner of the shares, which constitutes the act of perfection under Danish law, at the date of the general meeting (both Dividend Approval Date and Dividend Record Date).

The standard settlement terms for a sale and purchase transaction over listed Danish Shares registered with VP Securities A/S is T+3.

Accordingly, VP Securities A/S generally settles dividend payments on day 4 after the general meeting in the Issuer. The actual dividend payment is based on the shareholders' register of Issuer as at the date of the general meeting in Issuer and as updated by end of day 3. Distribution on day 4 is therefore based on the assumption that all T+3 share trades carried out up to and including the date of the general meeting have been registered when the dividend is paid. The shareholder information required to be filed with the Danish tax authorities by (or on behalf of) Issuer will be the list of shareholders at the date of the general meeting in Issuer as updated by end of day 3.

For trades that are carried out on standard T+3 terms, reclaiming Danish dividend withholding tax by the buyer of Danish shares should thus generally not give rise to discrepancies between the recipient of dividend and the legal owner of the shares and further, the legal owner of the shares should not encounter difficulties in obtaining refund of excess withholding tax as the legal owner would also be registered with the Danish Tax Authorities as recipient of the dividend.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00533272

Under Danish domestic law, foreign shareholders which hold less than 10 per cent of the share capital in Issuer (listed or unlisted) on the will initially be subject to Danish withholding tax at a rate of 27 per cent on any dividends received, unless (in the event of listed companies) Issuer or the Danish Securities centre have specifically entered into agreement with the Danish tax authorities that a reduced tax rate will apply to dividends from the distributing company to the relevant foreign company in accordance with the tax treaty applicable to that shareholder.

In practice the dividend distributing company withholds and settles 27 per cent tax on all dividends which are not eligible for a lower tax withholding tax rate at source. If Issuer withholds insufficient dividend withholding tax, it will be held liable for the tax not withheld unless failure to withhold cannot be considered an act of negligence.

Danish withholding tax, if any, may be reclaimed from the Danish tax authorities by the shareholder (if being the beneficial owner) in accordance with the applicable tax treaty by filing a dividend reclaim form with the Danish tax authorities.

Since 2002, the Danish Tax Authorities have focused on the concept of beneficial ownership. In 2010, the Danish Tax Authorities officially changed their interpretation of the Danish rules on dividend withholding tax applicable to foreign shareholders to take the position that the Danish tax regime contains an anti-avoidance provision in the form of a beneficial ownership condition.

Thus, when a foreign dividend recipient does not pass a beneficial ownership test as applied by the Danish tax authorities, dividend withholding tax may apply. The beneficial ownership test relies on the beneficial ownership requirement set forth in article 10 of the OECD Model Tax Convention and as further explained in the OECD commentary.

In all cases where the Danish withholding tax is waived or reduced pursuant to a tax treaty, the dividend recipient must submit a request for refund of the excess withholding tax to the Danish tax administration. The Danish tax administration will then refund the excess amount of dividend tax withheld.

In order to reclaim excess withholding tax, the dividend recipient will be required to fill in ready print reclaim form 06.003 EN, which is available on the website of the Danish Tax Authorities (www.skat.dk). The dividend recipient must confirm on the reclaim form that it is the beneficial owner of the dividend and will be required to enclose a dividend advice (e.g. in the form of an authenticated swift

payment message) as evidence that tax has been withheld on dividend paid on the Danish shares.

Payment would normally be made by the Danish Tax Authorities within one month. Recent amendments to the applicable interest rules provide that if dividend withholding tax has not been repaid within 6 months from the tax authorities' receipt of the reclaim form and documentation for the reclaim, an interest of 0.5 per cent (2014) per initiated month will apply.

6.1.2 Danish Dividend Tax liability for NCB

As NCB does not at any time directly or indirectly acquire the Equities, NCB will not for Danish tax purposes be considered to be subject to Danish dividend taxation on the Equities, as this will solely apply to the owner of the Equities and – in the event of negligence in withholding and/or settling tax on dividend – the Issuer.

6.2 Civil law liability

6.2.1 The legal regime - in brief

Under Danish civil law, non-contractual liability to pay compensation generally requires that three criteria are met:

- There must be a legal basis for liability, normally negligence or misconduct
- There must be an economic loss
- There must be causality between the negligence/misconduct and the economic loss

The Danish state (the tax authorities) will generally only suffer a loss if the person or entity eligible to pay the tax (the tax payer) does not or is not able to pay the taxes owed. Further, a loss is only suffered if the tax owed would have been paid by or on behalf of the tax payer had it not been for the negligence or misconduct demonstrated.

Generally, the relevant issues in relation to liability for losses suffered by the state in tax matters would be the existence of negligence or misconduct and its connection to the loss suffered.

Legal precedence shows that members of management, board members and liquidators, etc., having a managing or controlling function in a legal person can

depending on circumstances be liable for losses suffered by the tax authorities as creditor, if the legal person becomes insolvent or enters into bankruptcy.

Further, but more rarely, auditors and legal advisors have been made subject to liability for losses suffered by the tax authorities.

To our knowledge Danish case law has never held liable a custodian bank for losses suffered by the tax authorities from meeting an incorrect reclaim of dividend withholding tax. Further, we are not aware that cases have been tried in the Danish court or administrative system where the Danish tax authorities have incorrectly paid out a reclaim amount and tried to cover a loss from such incorrect payout with other parties than the reclaiming party.

In a series of court cases ("selskabstømmersagerne") initiated by the tax authorities during the late 90's and early 00's, civil law liability claims were raised against various participants in a certain type of transaction whereby "empty" Danish companies owning an amount of cash funds and owing a corresponding amount of Danish taxes were sold to buyers who essentially withdrew the cash, used it for their own benefits and thus never paid the taxes owed. It was immediately clear that the buyers of such companies were liable for the loss suffered by the tax authorities and many were also liable to criminal sanctions. However, the tax authorities also pursued the selling shareholders of the companies as well as their advisors and the banks involved in financing or merely conducting the cash transfers in relation to the acquisitions. A number of cases against the sellers of the companies were won by the tax authorities, also in the Danish supreme court as it was determined that the sellers had failed to meet a certain obligation to ascertain that the taxes owed would ultimately be settled, even if the sellers (or their advisors/the banks) had no direct involvement in the failure by the company to settle such taxes as this occurred after the sale.

Specifically, in a supreme court case from 1999 the bank involved in the sale of the "empty" company was held liable for the loss suffered by the tax authorities on the basis that the bank was familiar with each transaction leading to the purchase, leading to the company's money on a bank account being used to finance the acquisition thereof by the buyer, which the bank had deemed to be decisive in the risk assessment made by the bank (and leading to a higher than normal fee to the bank). By its actions the bank was deemed in an irresponsible manner to assist in the financial assistance which was not compliant with Danish corporate law, and that the bank had not taken any action to prevent the risk of the interest of the tax authorities being set aside.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00533275

The above cases concerning the empty companies are generally deemed to be somewhat exceptional in nature. Further, the legal basis for the claims raised are also – at least in part – found in specific rules set out in the Danish companies Act prohibiting certain forms of financial assistance. However, the cases also demonstrate the ability and the determination of the Danish court system to place liability with other parties than the Danish tax authorities if the tax authorities are deemed to suffer a loss that is the result of questionable actions taken by several parties, even if one party has only played a limited role.

6.2.2   Civil liability for NCB in the contemplated transaction

In general, there is no current case law to substantiate that a claim can be raised against NCB for acting as custodian bank for USPF in relation to the Equities.

If other parties than USPF make a reclaim of Danish withholding tax, the part of NCB in such reclaim process, if existing at all, would in our view be so remote as having no connection to the loss suffered by the payment under the reclaim.

The existence of a claim against NCB would in our view and based on the facts and assumptions set out above, initially require that USPF have incorrectly made a reclaim of dividend withholding tax in Denmark. In order to make such reclaim, the Danish tax authorities would generally require that the reclaim form is accompanied by documentation that the tax has been suffered by reclaiming tax payer, often in the form of a dividend voucher issued by the custodian. If NCB issues such (standard) documentation to USPF and USPF is for Danish tax purposes deemed not to be entitled to reclaim Danish dividend withholding tax – after the reclaim has been effected – then the role and the actions of NCB would be relevant for the analysis of liability for NCB under Danish law.

Specific reference in this respect is drawn to our assumptions (i) that USPF will acquire Equities com dividend, which entail that USPF will become owner of the actual dividend on the Equities as per the Trade Date, (ii) that USPF will only be required to deliver ex dividend shares under the subsequent Securities Lending Transaction, (iii) that NCB will only issue standard documentation regarding the formal legal ownership of USPF which does not address beneficial ownership, (iv) that NCB will only issues such documentation to USPF, (v) that a Danish tax opinion has been obtained regarding the Danish tax position of USPF in an all but identical structure, which has been shown to NCB and (vi) that – except from potentially issuing standard documentation to USPF – NCB has had no role in or actual knowledge about the dividend withholding tax reclaim process in Denmark regarding the Equities or the information or documentation provided to the Danish tax authorities.

Confidential Pursuant to Protective Order                                                      SKAT_MDL_001_00533276

It is therefore our position that NCB should not be liable for any incorrect repayment of withholding tax to USPF made by the Danish tax authorities.

The following circumstances, however, prevents us from reaching a more definitive opinion on the position of NCB:

1. The fact that USPF enters into OTC forward contracts (and not e.g. listed futures) to hedge their position could in principle allow for a "perfect hedge" of USPF's position in the Equities and could arguably also point in the direction of another identified party, which could be considered the beneficial owner of dividend on the dividend received on the Equities, rather than USPF as the beneficial owner. This would arguably entail the possibility of an arbitrage identifiable to NCB in which the standard documentation of ownership issued by NCB could be misleading.

2. The fact that a tax opinion has not been obtained by USPF on the exact transaction carried out by USPF (the tax opinion assumes futures and not OTC forward contracts) would make it more difficult for NCB to claim that it has by definition acted in good faith (and thus not culpable) on the Danish tax treatment of the transaction.

3. The cases concerning sale of "empty" companies outlined in 6.2.1, above, have demonstrated the willingness of the Danish tax authorities and the Danish courts to place liability for losses suffered by the tax authorities with other parties involved in the transactions triggering the loss when the transactions are deemed to have a questionable nature. In light thereof, it is not certain how the Danish tax authorities would perceive the contemplated transaction over the Equities and, if deemed questionable, how the Danish court system would respond. However, even if deemed questionable, it is our view that the role of NCB in the contemplated transaction is not comparable to the role of the parties held liable, including the banks, in the "empty" companies cases, which were more severe and instrumental in relation to the loss suffered by the tax authorities.

6.3 Criminal liability assumed by NCB

6.3.1 The legal regime – in brief

According to s. 13 of the Danish Tax Control Act (*skattekontrolloven*), the provision of incorrect or misleading tax statements with the intention to evade taxation in connection with the assessment of tax liability or the amount thereof is subject to

Confidential Pursuant to Protective Order

SKAT_MDL_001_00533277

criminal sanctions in the form of a fine or imprisonment. If the taxable person is not an individual, the sanction would be a fine. This would also apply if the incorrect or misleading tax statements are made as a result of negligence. Conspiracy to such tax fraud is subject to the same sanctions.

According to s. 15 of the Danish Tax Control Act, failure to submit a tax return with the intention to evade taxation is subject to criminal sanctions in the form of a fine or imprisonment. If the taxable person is not an individual, the sanction would be a fine.

Any omission to correctly file information with the Danish tax authorities will not be subject to criminal sanctions when such omission is not a result of gross negligence or intent.

According to s. 23 of the Danish criminal act, a criminal offence is considered as done by anyone who by incitement, consultation or deed has aided or abetted in the criminal offence.

Criminal liability generally requires the existence of a criminal intent on the part of the offender but in certain circumstances negligence is sufficient. However, the criminal sanctions applicable in the event of negligence are generally considerably less severe.

Court precedence have demonstrated a high degree of hesitance in considering parties other than the tax payer as having assisted or abetted in tax evasion or tax fraud, and generally this would require a quite direct involvement in the criminal offence, e.g. assistance in completing and filing an incorrect tax return

6.3.2   Criminal liability for NCB as a result of the contemplated transaction

NCB will as a general rule not have to file any information with the Danish tax authorities as a result of the Transaction. NCB will, if at all, only be indirectly involved in the reclaim filing by issuing the dividend voucher which the Danish tax authorities would generally require.

Based on the facts and assumptions set out under 2 above, and specifically taking into account the same circumstances as outlined under 6.2.2., regarding civil law liability, there should be no basis in Danish law to consider NCB as abetting in Danish tax fraud.

7.   **Qualifications**

Confidential Pursuant to Protective Order                                                                                                    SKAT_MDL_001_00533278

7.1 This opinion is limited to matters of Danish law as presently in force and as enacted by Danish legislative authorities, and no opinion is expressed as to the laws of any other jurisdiction. In particular we do not hold ourselves out as being familiar with the laws of Germany or the laws of any jurisdiction other than Denmark and we express no opinion in respect of matters governed by or construed in accordance with any such laws.

7.2 In this opinion Danish legal concepts are described in English terms and not by their original Danish terms. The concepts concerned may not correspond to the concepts described by the same English terms as they exist under the laws of other jurisdictions. This opinion may, therefore, only be relied upon on the express condition that any issues of interpretation or liability arising hereunder will be governed by Danish law and be brought before a Danish court.

7.3 This opinion is given on the basis that it will be governed by and construed in accordance with Danish law.

7.4 This opinion is strictly limited to matters stated herein and is not to be read as extending by implication to any other matters in connection with the contemplated transaction

## 8. Benefit

This opinion is addressed to NCB for the use and benefit of the NCB and may not be relied upon by any other person or for any purpose other than in connection with the contemplated transaction and it is not to be used, circulated, quoted or otherwise referred to for any other purpose, except (i) to legal or tax counsel of NCB for purposes of the Transaction, (ii) where ordered by law, court order or by a relevant regulatory body or (iii) in connection with any dispute or legal proceeding to with NCB is a party, in which case we shall be informed of such use.

******

Copenhagen, 4 August 2014

*Arne Riis*

Confidential Pursuant to Protective Order

SKAT_MDL_001_00533279