

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

November 26, 2024

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:    *In re Customs and Tax Administration of the Kingdom of Denmark*
> *(Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

We write on behalf of Plaintiff Skatteforvaltningen ("SKAT") and the Trial One Defendants in accordance with the Court's November 19, 2024 Order (ECF No. 1234) to provide a status update on SKAT's proposed summary exhibits and the handling of trial exhibits.

**<u>SKAT's Proposed Summary Exhibits</u>**

The parties have met and conferred multiple times regarding Plaintiff's proposed summary exhibits.[1] For several of these exhibits, Defendants have proposed changes in language to which SKAT has agreed. The parties are also working to resolve any factual disagreements regarding the summarized information, such as in the exhibit summarizing the monetary proceeds received by the Defendants and associated pension plans.

Notwithstanding the progress the parties have made with respect to SKAT's summary exhibits, defendants intend to object to certain of SKAT's summary exhibits while reserving the right to object to the admission of others.

---

[1] Defendants also produced to SKAT 12 proposed summary exhibits on November 12, 2024 (a portion of which Defendants provided to the Court by letter dated November 18, 2024). The parties met and conferred regarding these documents on November 25, 2024, and will provide the Court with a similar update on those proposed exhibits on December 9, 2024, one week before the scheduled status conference.

**SKAT's "Plan Formation/First Trade" Exhibits**

Defendants' Position:

Defendants object to SKAT's exhibits entitled "Plan formation/first trade." These exhibits present charts that list pension plans, the date on which they were formed, the date on which they first purchased Danish securities, the equity purchase price, and the amount of funds in a custodial bank account at the time of the first equity purchase. The presentation of this selection of distinct and unrelated facts onto a single page is argumentative, misleading, and not a summary of voluminous records. For example, the charts convey the impression that the pension plans could not have purchased millions worth of shares because their custodial bank accounts did not have millions of dollars in them. This is misleading because as SKAT well knows, the plans were able to obtain 100% financing by engaging in securities lending transactions that provided the cash necessary to settle the trades. In short, the amount of cash in a particular bank account has nothing whatsoever to do with the plan's ability to engage in trading—but these exhibits suggest otherwise. The exhibits are therefore *not* fair summaries and violate Rule 403. *See, e.g.*, *United States v. Neumann*, 2023 WL 8700974, at *7 (S.D.N.Y. Dec. 14, 2023) (summary "must be based upon and fairly represent competent evidence already before the Court").

Nor do these exhibits comply with Rule 1006, which permits the use of summaries "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. SKAT's exhibits on their face make clear that—at most—they are summarizing just *four* documents per pension plan. This is hardly a summary of voluminous writings. But even if the presentation of a small number of facts about a large number of pension plans *does* constitute a summary of voluminous writings, the exhibit remains objectionable because of the combination of facts SKAT has chosen to highlight. SKAT could solve this problem by breaking out into separate exhibits certain of the columns contained within these charts, thus avoiding the argument embedded in its summary exhibits.

SKAT's Position:

These proposed exhibits comply with Rule 1006. As an initial point, the charts also summarize information relating to the name and formation date of the Limited Liability Companies that sponsored the pension plans. In total, these two charts summarize material information relating to the 69 different pension plans that Defendants entered into partnerships with or established. Contrary to Defendants' assertion, these charts summarize information from thousands of pages of account statements and pension plan formation documents. Without these exhibits, SKAT will have to introduce the hundreds of underlying documents summarized in the exhibits, an unnecessary waste of the jurors' and Court's time, not to mention paper. (*See United States v. Neumann*, 21-CR-439-01 (NSR), 2023 WL 8700974, cited by Defendants above, at *7, allowing the introduction of an exhibit summarizing hundreds of pages of bank account documents combined with pharmacy ledger data.)

As for Defendants' suggestion that the amount of money a customer holds in its custodial account is irrelevant to its ability to make large equity purchases (or obtain large amounts of financing) for that custodial account, SKAT simply disagrees. Notably, Defendants do not

contend that the information detailed in these exhibits is an incorrect summary of the data in the underlying documents.

**SKAT Trading Charts**

Defendants' Position:

Defendants also reserve the right to object to SKAT's exhibits purporting to summarize various "steps" of the trades. SKAT has prepared six such summary exhibits that purport to illustrate the trades as involving either four steps or six steps. As SKAT has acknowledged, this is not the full picture: the plans also engaged in hedging transactions (which SKAT concedes are "real" and therefore presumably does not wish to present to the jury)[2] and unwind transactions (in which the plans reversed their hedges, recalled the shares they loaned, and sold the shares). Given that SKAT's summaries do not fairly summarize the trading records (by illustrating only a portion of the transactions), defendants are prepared to object to their admission.

Nevertheless, defendants have prepared (and shared with chambers) their own summary exhibits that illustrate—for a sample of the trades—all of the transactions associated with any individual reclaim submission. SKAT has represented that it is continuing to work to verify the information contained within defendants' summary exhibits, but otherwise has no objection to defendants' summary exhibits. Subject to SKAT's agreement that it will not object to defendants' exhibits summarizing the trading, defendants would agree to withdraw their Rule 1006 objection to SKAT's trading summary exhibits on the grounds that they are incomplete. Defendants maintain their objection to these and all other summary exhibits that purport to summarize the inadmissible Elysium documents.

SKAT's Position:

SKAT's trading charts are not misleading nor fail to show the "full picture." A key issue in this case is whether the shares that the pension plans claimed to own even existed. The only trading data relevant to whether the shares existed are the purported stock purchases and loans summarized in SKAT's charts. The purported stock purchases and loans undeniably demonstrate that all trading of shares was simply a paper loop of shares going around in a circle. Defendants' purported hedging transactions (which, in the case of the plans' forward transactions, SKAT does not concede are "real") and unwind transactions do not address whether the shares the plans claim to have purchased existed. To the contrary, those transactions were simply additional paper trades necessary to make the whole paper scheme ultimately net to zero. As noted by Defendants, however, SKAT does not object in principle to Defendants introducing information regarding these extraneous transactions via separate summary exhibits while presenting its defense case.

---

[2]    SKAT's assertion in this filing that SKAT does not concede the hedging transactions were "real" is at odds with its own expert's reply report. There, Mr. Dubinsky wrote: "I did not address the flex futures contracts in my expert report because they were actually executed on an exchange and were real. I do not dispute that." Feb. 28, 2022 Reply Report ¶ 47.

**Handling of Trial Exhibits**

      The parties are working to prepare a joint proposal regarding the presentation of electronic copies of admitted exhibits to the jury.  The parties will be prepared to provide details on this proposal at the December 16, 2024 conference.


      Respectfully submitted,


      /s/ Marc Weinstein_____
      Marc Weinstein