**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND SCHEME
LITIGATION

This document relates to case nos.: 19-cv-01785; 19-cv-
01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-
01895; 19-cv-01904; 19-cv-01869; 19-cv-01922; 19-cv-
01870; 19-cv-01791; 19-cv-01792; 19-cv-01926; 19-cv-
01868; 19-cv-01929; 19-cv-01806; 19-cv-01906; 19-cv-
01808; 18-cv-04833; 19-cv-01898; 19-cv-01898; 19-cv-
01812; 19-cv-01896; 19-cv-01815; 19-cv-01924; 19-cv-
10713; 19-cv-01866; 19-cv-01794; 19-cv-01865; 19-cv-
01798; 19-cv-01800; 19-cv-01788; 19-cv-01928; 19-cv-
01803; 19-cv-01801; 19-cv-01894; 19-cv-01810; 19-cv-
01809; 19-cv-01871; 19-cv-01813; 19-cv-01930; 19-cv-
01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 18-cv-
07828; 18-cv-07827; 18-cv-07824; 18-cv-07829; 18-cv-
04434; 21-cv-05339

MASTER DOCKET

18-md-2865 (LAK)

## [PROPOSED] JOINT PRETRIAL ORDER

The parties having conferred among themselves and with the Court pursuant to Fed. R.

Civ. P. 16, the following statements, directions, and agreements are adopted as the Pretrial Order

herein.

## I.    GENERAL PROVISIONS GOVERNING CONDUCT OF TRIAL

Having conferred, the parties have agreed to the following procedures governing trial:

1.      A party's failure to introduce any exhibit, witness, or deposition designations

appearing in its pretrial disclosures shall not be commented on to the jury during trial on the basis

that the exhibit, witness or deposition designation was included in its pretrial disclosure, unless the

opposing party opens the door. For the avoidance of doubt, the Parties reserve the right to comment to the Jury during the trial on a party's failure to introduce any exhibit, witness, or deposition designations generally without making reference to the party's pretrial disclosures.

2.      Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. Each party may also use an exhibit that is a backup for any party's summary exhibits, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. Any exhibit, once admitted, may be used equally by each party. The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

3.      The parties agree to meet-and-confer in good faith regarding the authenticity and admissibility of the documents each party has produced and to documents produced by third parties.

4.      Except as the Court may order, the calling party may not call a live witness at trial unless identified as such on its witness list.

5.      Before they testify, fact witnesses shall be barred from hearing the testimony of other witnesses. However, in accordance with Fed. R. Evid. 615, this exclusion rule will not apply to the individual trial defendants or to the individual designated by SKAT as its representative. Expert witnesses are not excluded from the courtroom for either fact or expert testimony.

6.      To the extent multiple parties intend to call the same witness, in the interest of efficiency, that witness shall testify only once. For example, if SKAT calls any defendant adversely (as part of SKAT's case-in-chief), the defendants will have the ability to conduct an examination of the witness (on "cross") that exceeds the scope of SKAT's examination. To the

extent any subsequent examination exceeds the scope of the initial testimony, such subsequent examination of the witness will not be considered a "cross examination" under Fed. R. Evidence 611 and will instead be considered a direct examination and subject to the applicable Fed. R. Evidence for direct examinations.

7.      Any party may use testimony that is designated by another party to the same effect as if it had initially designated the testimony as its own, subject to all objections.

8.      Any prior testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

9.      To the extent there are any objections pending with respect to a particular witness whose testimony is being offered by deposition, a party intending to read or play that testimony during trial must provide the Court and the other party with a transcript of the designated and counter-designated testimony it intends to read or play, along with any objections thereto, by **8:30 a.m. ET** the day before the party intends to offer the designated testimony.

10.     The parties agree that for any deposition testimony played or read during either party's case-in-chief, all deposition designations, counter-designations, and counter-counter-designations for that witness will be played or read together in chronological order (meaning, for avoidance of doubt, the order in which the testimony appears within the transcript).  If multiple parties designate testimony from the same witness, the deposition designations, counter-designations, and counter-counter designations will be played during the original designating party's case-in-chief and played or read together in chronological order. The parties reserve the right to select fewer designations than those disclosed in the joint pretrial order.  Notwithstanding the foregoing, the parties agree that all designated testimony related to a witness's employment

background may be played or read at the beginning of such testimony even if such testimony is not chronologically first in the applicable transcript.

11.    No objections, preambles, or exchanges between counsel will be played or read as a part of deposition testimony.  The party offering the witness to be called by deposition is responsible for providing the video of the testimony to be played at trial to the other party before the designations will be played at trial.

12.    Nothing in the foregoing procedures shall preclude a party from using deposition testimony at trial for purposes of impeachment.

13.    The parties agree that notice of a party's intended use of blow-ups (enlargements) of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given (and need not be exchanged as a demonstrative), as long as the party has identified its intent to use the trial exhibit and/or deposition testimony according to the provisions of this Order.

14.    As used in this Pretrial Order, the term "demonstrative" includes PowerPoints, graphics and animation demonstratives, and physical demonstratives, but does not include scans of exhibits or deposition transcripts or underlining, highlighting, or similar emphasis on such exhibits or deposition transcripts.  The parties do not need to exchange copies of demonstratives to be used only during cross-examinations.  The parties further agree that, to the extent a party intends to use PowerPoint or slide demonstratives, the slides will be disclosed in the order the party intends to present those slides.

15.    Each party shall provide by no later than **12:00 p.m. ET the day before the opening statement** a copy of all demonstratives and a list of all trial exhibits they plan to use the following day in the opening statement.  The receiving party shall provide objections to such

demonstratives and trial exhibits by **3:00 p.m. ET** that same day, and the parties shall meet and confer on any objections at **5:00 p.m. ET** that same day.

16.    The parties will identify witnesses to be called live or by deposition, and the order of call, by **8:30 a.m. ET two calendar days** prior to the date that the party intends to call such witness (*e.g.*, by 8:30 a.m. on Sunday for any witness who will be called on Tuesday).

17.    For each witness that a party intends to call by deposition, the party shall, by **12:00 p.m. ET three calendar days** prior to the date the party intends to call such witness, provide the other side with the specific pages and lines of previously designated transcript from the witness's deposition as set forth in this Pre-Trial Order that it expects to read or play during trial as well as any trial exhibits to be offered through that witness's deposition testimony.    The receiving party shall, by **12:00 p.m. ET** the next day (i.e., two calendar days before the deposition testimony is expected to be read or played in court), identify any additional previously designated testimony to be read or played, and any objections to testimony or exhibits sought to be used with the witness.    By **7:00 p.m. ET** that day (*i.e.*, two calendar days before the deposition testimony is expected to be read or played in court), the first party shall identify its objections to the receiving party's designated testimony and any objections to the trial exhibits to be offered through that witness's designated deposition testimony.    The parties shall meet and confer by **8:30 p.m. ET** that same day to attempt to resolve any objections, with any objections that cannot be resolved to be raised with the Court the day before the deposition testimony is expected to be read or played.

18.    The party offering a witness shall identify any exhibits, by exhibit number, that it intends to use during direct examination of that witness at the same time the party identifies that witness under paragraph 16 above.    Exhibits to be used solely for impeachment purposes need not be identified in advance or included on an exhibit list.

19.     Each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the testimony of a witness called by that side by **7:00 p.m. ET** the calendar day before the witness is called (for example, by **7:00 p.m. ET** on Tuesday for a witness who will be called on Wednesday).  Graphical, illustrative, or demonstrative materials to be used during a party's examination of a witness called by the other party, or solely for impeachment purposes, need not be identified in advance.

20.     Either side may use a certified translation of any Danish-language document marked as an exhibit as if it were the original, so long as the certified translation has been disclosed five business days before the document is offered into evidence.[1]

21.     For any written discovery (interrogatory responses or responses to requests for admission) and/or stipulations that a party intends to read into the record, the party shall, by **1:30 p.m. ET** one calendar day prior to the date the party intends to read such written discovery and/or stipulations, identify to the other side the written discovery and/or stipulations, including by specific request/interrogatory number and/or pages that it expects to read during trial.

22.     The parties shall make good faith efforts to resolve any objections over the use of identified witnesses, deposition designations, exhibits, and demonstratives by participating in meet and confers scheduled at the earliest convenient time for the participating parties.

23.     The parties will share any courtroom audio-visual equipment and will provide each other electronic versions of whatever they display following the display.

---

[1] Defendants further propose that either side be allowed to use any uncertified translation of any Danish language document marked as an exhibit, provided that such translation was previously disclosed in discovery or in connection with any deposition.  Defendants propose that any party intending to offer such an uncertified translation identify it by December 23, 2024.  Any objection to such uncertified translation shall be made by January 3, 2025, and must be accompanied by a specific identification of any alleged substantive inaccuracies as well as a proposed correction.  The parties shall meet and confer in good faith with respect to any such proposed corrections.  Plaintiff objects to the use of uncertified translations at trial.

24.     The parties agree that the PTO will be interpreted to accord with Federal Rule of Civil Procedure 1, and the fair administration of justice.


## II.  NATURE OF THE CASE

### a)  Plaintiff's Proposed Statement of the Case[2]

Plaintiff claims that Defendants Richard and Jocelyn Markowitz, John and Elizabeth van Merkensteijn, and Robert Klugman participated in a fraudulent scheme to deceive plaintiff Skatteforvaltningen, or "SKAT", the Danish tax authority, into paying 3,287,582,066.37 Danish Kroner (DKK), or approximately $476,839,900, in false claims for refunds of tax.  The tax was supposedly withheld from dividends Danish companies paid to their shareholders.  Under a tax treaty between the U.S. and Denmark, tax-exempt U.S. pension plans that received a Danish dividend may apply to SKAT for a refund of the 27% tax that Danish companies are required to withhold from dividends issued to their shareholders.  From 2012 to 2015, defendants collectively submitted to SKAT 1,214 fraudulent refund claims in which they misrepresented to SKAT that sham U.S. pension plans they controlled, most of which were newly created for that purpose, owned billions of dollars of Danish stock, on which they had received DKK 8,888,647,790.63, or approximately $1,289,267,360, in dividends net of withholding tax, and that the pension plans were entitled to claim the refunds totaling 3,287,582,066.37 Danish Kroner (DKK), or approximately $476,839,900.

---

[2] The parties note that their respective statements of the case herein are not proposals for the preliminary instructions given to the jury at the start of trial contemplated in the October 17, 2024 conference (Conference Transcript at 20-21). The parties object to the use of the statements herein for that purpose and, consistent with the Court's request, will endeavor to prepare a joint statement suitable for an initial instruction.

In 2012, defendants Richard Markowitz and John van Merkensteijn, along with their two former partners in a company called Argre Management LLC, were recruited by their Dubai-based business associate Sanjay Shah to participate in the fraud on SKAT.  The Argre partners created shell companies and pension plans.  The pension plans became customers of Shah's U.K.-based financial company called Solo Capital Partners LLP, which served as the pension plans' purported custodian of Danish shares.  Based on pre-arranged, circular, fictitious share purchases, Solo issued fraudulent statements called dividend credit advices to the plans purporting to evidence that the plans owned Danish shares on which they had been paid dividends, net of the 27-percent withholding tax.  The plans, including ones established by defendants Jocelyn Markowitz and Elizabeth van Merkensteijn, then submitted the false dividend credit advices in tax refund claims to SKAT as proof of the plans' entitlement to the claimed refunds, and shared the proceeds of the fraud with Shah.

Solo never held any Danish shares or received any Danish dividends on behalf of the plans.  Thus, the plans never owed or paid any Danish tax for which they could claim a refund. Despite this, the plans applied to SKAT for refunds of tax that they had never paid.  The plans' purported share purchases were part of pre-arranged, circular transactions in which the plans supposedly purchased the shares from a seller that had no shares to sell.  The seller purported to borrow the shares from the plans that were supposedly buying the shares in the first place. Neither the seller nor the plans ever owned any actual Danish shares.  The plans' purchases were fictitious paper transactions.  Likewise, the plans had no money to pay for the shares they pretended to own.  Rather, the plans supposedly paid for the purported share purchases by borrowing the millions of dollars needed for the purchase price from newly formed companies in

the Cayman and British Virgin Islands.  But nobody in the circular transactions had any real money to lend.  The plans' purported loans were also fictitious paper transactions.

In 2014, Richard Markowitz and John van Merkensteijn split from the other Argre partners and recruited defendant Robert Klugman and other friends and family to establish new sham pension plans to continue the fraud.  Defendants set up 39 new pension plans to become customers of Solo and participate in the fraud.  Meanwhile, the other two former Argre partners continued to submit fraudulent refund claims to SKAT based on similar schemes at entities called North Channel Bank and Indigo Securities Limited.  Richard Markowitz and John van Merkensteijn participated in the fraudulent trading at North Channel Bank and Indigo in 2014 as well, and submitted to SKAT additional fraudulent refund claims.

SKAT asserts fraud, aiding and abetting fraud, and negligent misrepresentation claims against all defendants, seeking in damages the losses the defendants caused, and punitive damages for the fraud claims.  SKAT also asserts claims for unjust enrichment, money had and received or payment by mistake against all defendants, seeking as damages against each the amount of the proceeds of false refund claims that he or she received.

### b)  Defendants' Proposed Statement of the Case

The Plaintiff in this case is Skatteforvaltningen, which is the tax authority of the Kingdom of Denmark, and which is called "SKAT" for short.  The defendants in this case are American investors—Richard Markowitz, Jocelyn Markowitz, John van Merkensteijn, Elizabeth van Merkensteijn, and Robert Klugman, and a number of pension plans associated with those individuals.  Under a tax treaty between the U.S. and Denmark, U.S. pension plans that beneficially own dividends on Danish equities may apply to SKAT for a refund of the tax that Danish companies are required to withhold from dividends issued to their shareholders.

The Defendants are the trustees of certain U.S. pension plans that participated in a trading strategy involving Danish securities. The pension plans at issue in this case placed orders to purchase Danish securities and received trade confirmations reflecting their purchases and various documents, including account statements, in which their custodian informed the plans that their accounts had been credited with dividends net of withholding tax based on their purchases of Danish securities. The Defendants assert that they relied on that documentation in good faith and caused requests for refunds of withheld dividend tax to be filed with SKAT which they believed were truthful in all respects. All defendants assert they acted in good faith at all times and participated in the disputed trading only after thorough due diligence, which included extensive consultation with counsel.

Defendants deny SKAT's allegations in their entirety. First, Defendants deny that they intended to defraud SKAT, assert that they believed at all times that the trading was legitimate, and maintain that they relied in good faith on account statements showing the receipt of net dividends and on advice from lawyers. Second, Defendants dispute that SKAT did or could have justifiably relied on any of the alleged misrepresentations in the reclaim applications. SKAT alleges that the Plans misrepresented their status as tax-exempt, qualified pension plans within the meaning of the U.S. Internal Revenue Code, so as to be entitled to the claimed refunds of withheld tax under the U.S.-Denmark Tax Treaty. While the Plans were, in fact, tax-exempt, qualified pension plans under U.S. law, that is not a requirement of the Treaty, which sets forth its own requirements for entitlement to refunds of withheld tax. Further, SKAT made no effort to determine whether any given reclaim application met the requirements for a refund of dividend withholding tax. Instead, SKAT simply paid any reclaim application that was complete in form, without even attempting to confirm any of the information contained in that application.

Finally, Defendants assert that SKAT's claims are barred as a matter of law because SKAT filed suit too late. The Markowitz and van Merkensteijn Defendants assert that (1) SKAT knew or should have known of its claims against the Defendants before December 31, 2014; and (2) SKAT agreed in writing to file any claims against the Markowitz / van Merkensteijn Defendants by March 2019, but filed suit raising significant claims against them in November 2019. SKAT concedes that Klugman's participation in the disputed trading did not begin until late 2014. Defendant Klugman asserts that (1) SKAT's failure to bring its claims against Klugman within three (3) years after it knew or should have known of its claims against him requires that such claims be dismissed and (2) the undisputed fact that Klugman was not a party to any tolling agreement precludes tolling of claims against him. All Defendants assert that SKAT is also contributorily negligent based on its administration of its tax reclaim program.

### III. JURY/NON-JURY

This case is to be tried by a jury. The parties estimate that the trial will last approximately 5 weeks, including jury selection.

### IV. STIPULATED FACTS

#### a) The Plaintiff

1. The plaintiff, SKAT, is the agency of the government of the Kingdom of Denmark charged with the assessment and collection of Danish taxes.

2. SKAT is a part of the government of the Kingdom of Denmark.

3. SKAT is part of the Danish Ministry of Taxation.

### b) The Defendants

#### i.  The Individual Defendants

4.     Richard Markowitz ("Markowitz") is a citizen of the State of New York. Markowitz was the sole participant in the following six pension plans that submitted refund claims to SKAT: Batavia Capital Pension Plan, RJM Capital Pension Plan, Avanix Management LLC Roth 401K Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, and Routt Capital Pension Plan.

5.     Markowitz, along with John van Merkensteijn and two other individuals, was a joint participant in three plans that submitted refund claims: Michelle Investments Pension Plan, Xiphias LLC Pension Plan, and Remece Investments LLC Pension Plan.

6.     Markowitz was the trustee of Routt Capital Trust and RJM Capital Pension Plan Trust, and owned Avanix Management LLC, Cavus Systems LLC, Hadron Industries LLC, and RJM Capital LLC.

7.     Markowitz owned 25% of Quartet Investment Partners LLC.

8.     Jocelyn Markowitz is a citizen of the State of New York.  Jocelyn Markowitz was the sole participant of the Calypso Investments Pension Plan.

9.     John van Merkensteijn ("van Merkensteijn") is a citizen of the State of New York. Van Merkensteijn was the sole participant in the following six pension plans that submitted refund claims to SKAT: Bernina Pension Plan, Tarvos Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Omineca Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, and the Voojo Productions LLC Roth 401(K) Plan.

10.     Van Merkensteijn, along with Markowitz and two other individuals, was a joint participant in three plans that submitted refund claims: Michelle Investments Pension Plan, Xiphias LLC Pension Plan, and Remece Investments LLC Pension Plan.

11.     John van Merkensteijn was the trustee of Omineca Trust and Bernina Pension Plan Trust.

12.     John van Merkensteijn owned 25% of Quartet Investment Partners LLC.

13.     Elizabeth van Merkensteijn is a citizen of the State of New York.  Elizabeth van Merkensteijn was the sole participant of the Azalea Pension Plan.

14.     Robert Klugman ("Klugman") was a citizen of the States of New York and Connecticut during the relevant time period and is currently a citizen of the State of California. Klugman was the sole participant of the Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, Random Holdings 401K Plan, and The Stor Capital Consulting LLC 401K Plan.

15.     A bates number is a number affixed to the bottom of each page of a document by the party who produced the document in the litigation.  Documents starting with "WH" in the bates number were produced on behalf of Richard Markowitz.  Documents starting with "JHVM" or "KF" in the bates number were produced on behalf of John van Merkensteijn. Documents starting with "KLUGMAN," "AEROVN," "HEADSAIL," or "RANDHOLD" in the bates number were produced on behalf of Robert Klugman.  Documents starting with "ELYSIUM" in the bates number were produced from an Elysium database.  Documents starting with "SKAT_MDL" or "SKSK" in the bates number were produced on behalf of SKAT. Documents starting with "MPSKAT" in the bates number were produced on behalf of Maple Point LLC.  Documents starting with "MBJ" or "MBJ_STOR" in the bates number were

produced on behalf of Michael Ben-Jacob.  Documents starting with "GUNDERSON" in the

bates number were produced on behalf of Stephanie Gunderson.  Documents starting with

"WELLSFARGO," "JPM," and "FR_" in the bates number were produced on behalf of Wells

Fargo, JPMorgan, and First Republic Bank, respectively.  Documents starting with "BVI" or

"CAYMAN" in the bates number were produced pursuant to Hague request letters.  Documents

starting with "BROAD" and "VCS" in the bates number were produced on behalf of Broad

Financial and Vcorp Services, respectively.  Documents starting with

"SCPADMINISTRATORS" in the bates number were produced on behalf of Solo Capital

Partners Administrators.  Documents starting with "FGC_SKAT" in the bates number are FGC

third-party productions.  Documents starting with "DZ," "BR," or "VL" in the bates number

were produced on behalf of David Zelman.  Documents starting with "PL" or "EC" in the bates

number were produced on behalf of Perry Lerner.  Documents starting with "JH," "BL," "FR,"

or "AB" in the bates number were produced on behalf of Joseph Herman.  Documents starting

with "RA," "CB," "LL," "PR," "RC," or "TW" in the bates number were produced on behalf of

Ronald Altbach.  Documents starting with "MN," "PX," or "ST" in the bates number were

produced on behalf of Robin Jones.

### c)  SKAT's Administration of Dividend Withholding Tax Refunds

16.    The United States and Denmark are parties to the Convention and Protocol

between the United States and Denmark for the Avoidance of Double Taxation and the

Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., May 6, 1948, S.

Treaty Doc. No. 106-12 (effective date Jan. 1, 2001), as amended by the May 2, 2006 Protocol

(the "US-Denmark Taxation Treaty").

17.     Under the US-Denmark Taxation Treaty, Denmark and the U.S. agreed that dividends paid by Danish companies to U.S. residents who otherwise meet the requirements set forth in the US-Denmark Taxation Treaty are subject to taxation by Denmark at a rate less than 27% or are not subject to taxation by Denmark at all, depending on the status of the U.S. resident.

18.     At all times relevant to this case, a shareholder resident in the United States who had tax withheld from a distribution of dividends from a Danish company could apply for a refund if such shareholder was subject to the US-Denmark Taxation Treaty, met the requirements of the treaty and was otherwise not fully liable to pay tax in Denmark.

19.     In such circumstances, the amount of refund is equal to the gross dividend times the difference between the withheld dividend tax rate (typically 27%) and the rate applicable to the shareholder based on US-Denmark Taxation Treaty and applicable Danish law (0%, in the case of pension plans that satisfy the applicable criteria in the treaty).

### d) Custodians and Trading

20.     The Pension Plans used Solo Capital Partners LLP ("Solo Capital"), Old Park Lane Capital PLC ("Old Park Lane"), West Point Derivatives ("West Point"), or Telesto Markets LLP ("Telesto") (each a "Solo Custodian" and collectively, the "Solo Custodians") to provide custodial services.

21.     Solo Capital was incorporated in September 2011 and was based in the United Kingdom.

22.     The Solo Custodians were registered with the U.K. regulator, the Financial Conduct Authority ("FCA"), and were subject to FCA regulation.

### e) Danish Issuers and Dividends

23.    Issuers of Danish securities approve dividends on the date of their Annual General Meeting.

24.    The companies named in the tax refund applications submitted to SKAT by the Pension Plans were all public issuers of securities in Denmark.

### f) Tolling Agreements

25.    On April 13, 2018, SKAT entered into a tolling agreement (the "April 13, 2018 Tolling Agreement") with 118 pension plans, the pension plans' trustees, predecessor plans, successor plans, and partners (the "Covered Parties").

26.    The Covered Parties included defendants, Richard Markowitz, Jocelyn Markowitz, John van Merkensteijn, Elizabeth van Merkensteijn, Bernina Pension Plan Trust, RJM Capital Pension Plan Trust, 2321 Capital Pension Plan, Bowline Management Pension Plan, California Catalog Company Pension Plan, Davin Investments Pension Plan, Delvian LLC Pension Plan, DFL Investments Pension Plan, Laegeler Asset Management Pension Plan, Lion Advisory Inc. Pension Plan, Mill River Capital Management Pension Plan, Next Level Pension Plan, Rajan Investments LLC Pension Plan, Spirit on the Water Pension Plan, and Traden Investments Pension Plan.

27.    On July 11, 2018, September 28, 2018, and October 30, 2018, SKAT and the Covered Parties entered into subsequent tolling agreements extending the duration of the April 13, 2018 Tolling Agreement.  The April 13, 2018 Tolling Agreement, and the three extensions of that Agreement, together are Exhibit [  ].

28.    The Tolling Agreement expired on December 31, 2018.

g) **Availability of Witnesses to Testify**

30.     To the extent not physically present in the courtroom, the following witnesses are unavailable as contemplated by Fed. R. Civ. P. 32(a)(4):[3]

      a.   Gry Ahlefeld-Engel

      b.   Jens Brochner

      c.   Bo Daugaard

      d.   Lill Drost

      e.   Leif Norman Jeppesen

      f.   Dorthe Pannerup Madsen

      g.   Anne Munksgaard

      h.   Jens Sorensen

      i.   Helen Sorensen

      j.   Lisbeth Romer

      k.   Jette Zester

      l.   Sanjay Shah

      m.   Ronald Altbach

      n.   Jospeh Herman

      o.   Robin Jones

      p.   Perry Lerner

      q.   Nigel Rackham

      r.   Gunnar Volkers

---

[3] SKAT has not yet been able to determine if Matthew Cooper and Ira Reibeisen are available to testify at trial.

s.  Peter Wells

t.  Isabelle Salomone

u.  Mathew Totman

v.  David Zelman

## V. DEPOSITION DESIGNATIONS

### h) Plaintiff's Deposition Designations

*[Plaintiff's Deposition designations are contained in an excel spreadsheet for the purposes of its October 22 production to Defendants pursuant to Pretrial Order No. 36 (ECF No. 978). Plaintiff intends to attach a PDF of the spreadsheet as Appendix A in the final Order.]*

1. Ronald Altbach

2. Matthew Cooper (to the extent he is not within the subpoena power of the Court or otherwise not available to testify at trial)

3. Joseph Herman (to the extent he is not within the subpoena power of the Court or otherwise not available to testify at trial)

4. Robin Jones (to the extent she is not within the subpoena power of the Court or otherwise not available to testify at trial)

5. Perry Lerner (to the extent he is not within the subpoena power of the Court or otherwise not available to testify at trial)

6. Nigel Rackham

7. Ira Reibeisen (to the extent he is not within the subpoena power of the Court or otherwise not available to testify at trial)

8. Lisbeth Romer

9. Isabelle Salomone

10. Matthew Totman

11. Gunnar Volkers

12. Peter Wells (to the extent he is not within the subpoena power of the Court or otherwise not available to testify at trial)

13. David Zelman (to the extent he is not within the subpoena power of the Court or otherwise not available to testify at trial)

### i) Defendants' Deposition Designations

*[Defendants' deposition designations are contained in an excel spreadsheet for the purposes of its November 12 production to Plaintiffs pursuant to Pretrial Order No. 36 (ECF No. 978). Defendants intend to attach a PDF of the spreadsheet as Appendix B in the final Order. Defendants reserve the right to play affirmatively any of its deposition designations (including counter-designations), without regard to whether Plaintiff plays any designations from the same deposition. Defendants also reserve the right to designate testimony from additional witnesses who testified in the UK action, including witnesses whose testimony SKAT has not yet produced in this case.]*

1. Gry Ahlefeld-Engel

2. Jens Brochner (to the extent he is not within the subpoena power of the Court or otherwise not available to testify at trial)

3. Bo Daugaard

4. Lill Drost

5. Leif Norman Jeppesen

6. Dorthe Pannerup Madsen

7. Anne Munksgard

8. Jens Sorensen

9. Helen Sorensen

10. Lisbeth Romer

11. Jette Zester

12. Sanjay Shah[4]

## VI. EXHIBIT LIST

A chart showing Plaintiff's Exhibits, Defendants' Exhibits, and any objections thereto is attached as Appendix C.  The parties reserve the right to seek to introduce documents that any other party has not yet produced as of the date of this order, and all parties reserve the right to object to the introduction of such documents.

## VII.    WITNESS LIST

### a)  Plaintiff's Witness List

1.  Christian Ekstrand

2.  Bruce Dubinsky

3.  Graham Wade

4.  Richard Markowitz

5.  John van Merkensteijn

6.  Robert Klugman

7.  Michael Ben-Jacob

8.  Jocelyn Markowitz

9.  Elizabeth van Merkensteijn

10. Joseph Herman

11. Robin Jones

12. Perry Lerner

13. David Zelman

14. Matthew Cooper

---

[4] Robert Klugman is not designating the testimony of Sanjay Shah.

15. Ira Reibeisen

16. Kathleen Wechter

17. Peter Wells

18. Arthur Woodard

19. Jeffrey London

20. Rana Shashaa

### b)  Defendants' Witness List

*[Defendants reserve the right to designate testimony from additional witnesses who testified in the UK action, including witnesses whose testimony SKAT has not yet produced in this case.]*

1.    Richard Markowitz

2.    Jocelyn Markowitz

3.    John van Merkensteijn

4.    Elizabeth van Merkensteijn

5.    Robert Klugman

6.    Thomas Bøgelund Norvold

7.    Michael Ben-Jacob

8.    Robin Jones

9.    Joseph Herman

10.   Peter Wells (in person if available, or else via deposition)

11.   Kathleen Wechter (in person if available, or else via deposition)

12.   Emre Carr

13.   Gry Ahlefeld-Engel (in person if available, or else via deposition and or designations from UK trial testimony)

14.    Anne Munksgaard (in person if available, or else via deposition and or designations from UK trial testimony)

15.    Jens Brochner (in person if available, or else via deposition and or designations from UK trial testimony)

16.    Bo Daugaard (in person if available, or else via deposition and or designations from UK trial testimony)

17.    Dorthe Pannerup Madsen (in person if available, or else via deposition and or designations from UK trial testimony)

18.    Jens Sorensen (in person if available, or else via deposition and or designations from UK trial testimony)

19.    Leif Jeppesen (in person if available, or else via deposition and or designations from UK trial testimony)

20.    Lisbeth Romer (in person if available, or else via deposition and or designations from UK trial testimony)

21.    Helen Sorensen (in person if available, or else via deposition and or designations from UK trial testimony)

22.    Lill Drost (in person if available, or else via deposition and or designations from UK trial testimony)

23.    Jette Zester (in person if available, or else via deposition and or designations from UK trial testimony)

24.    Sanjay Shah (via designations from his UK trial testimony)[5]

---

[5] Robert Klugman is not offering the testimony of Sanjay Shah.

## VIII.   RELIEF SOUGHT

### a)  Plaintiff's Request for Relief

| Defendant | Fraud / Aiding and Abetting / Negligent Misrepresentation | Unjust Enrichment / Money had and Received / Payment by Mistake |
|---|---|---|
| Richard Markowitz | $289,243,000.00 | $39,278,832.84 |
| Jocelyn Markowitz | $5,050,000.00 | $1,802,403.92 |
| John van Merkensteijn | $284,727,000.00 | $37,653,310.22 |
| Elizabeth van Merkensteijn | $5,186,000.00 | $1,879,444.16 |
| Robert Klugman | $202,578,000.00 | $17,120,370.80 |
| Avanix Management LLC | $10,426,000.00 | $1,484,385.00 |
| Cavus Systems LLC | $4,279,000.00 | $726,853.00 |
| Hadron Industries LLC | $4,395,000.00 | $579,885.00 |
| Routt Capital Trust | $66,035,000.00 | $11,111,600.00 |
| RJM Capital Pension Plan Trust | $120,615,000.00 | $7,971,362.04 |
| Omineca Trust | $84,425,000.00 | $12,852,585.00 |
| Bernina Pension Plan Trust | $120,615,000.00 | $7,945,574.76 |
| RAK Investment Trust | $169,560,000.00 | $9,952,524.00 |
| Aerovane Logistics LLC Roth 401K Plan | $7,988,000.00 | $1,869,230.04 |
| Avanix Management LLC Roth 401K Plan | $10,432,000.00 | $2,454,185.27 |
| Azalea Pension Plan | $5,186,000.00 | $1,879,444.16 |
| Basalt Ventures LLC Roth 401(K) Plan | $4,214,000.00 | $926,850.13 |
| Batavia Capital Pension Plan | $4,921,000.00 | $1,773,252.70 |
| Bernina Pension Plan | $8,757,000.00 | $3,204,027.90 |
| Calypso Investments Pension Plan | $5,050,000.00 | $1,802,403.92 |
| Cavus Systems LLC Roth 401(K) Plan | $4,591,000.00 | $1,006,010.29 |
| Edgepoint Capital LLC Roth 401K Plan | $4,922,000.00 | $993,350.82 |
| Hadron Industries LLC Roth 401(K) Plan | $4,618,000.00 | $1,020,968.37 |
| Headsail Manufacturing LLC Roth 401K Plan | $11,061,000.00 | $2,501,831.85 |
| Michelle Investments Pension Plan | $11,166,000.00 | $3,966,901.74 |
| Omineca Pension Plan | $13,698,000.00 | $3,537,124.36 |
| Remece Investments LLC Pension Plan | $8,750,000.00 | $3,163,985.15 |

| | | |
|---|---|---|
| RJM Capital Pension Plan | $9,001,000.00 | $3,184,912.75 |
| Routt Capital Pension Plan | $9,924,000.00 | $2,399,436.84 |
| Starfish Capital Management LLC Roth 401(K) Plan | $217,000.00 | $161.52 |
| Tarvos Pension Plan | $5,453,000.00 | $1,956,353.71 |
| The Random Holdings 401K Plan | $4,728,000.00 | $941,429.20 |
| The Stor Capital Consulting LLC 401K Plan | $4,319,000.00 | $862,004.89 |
| Voojo Productions LLC Roth 401(K) Plan | $7,342,000.00 | $1,664,651.26 |
| Xiphias LLC Pension Plan | $10,782,000.00 | $3,827,022.17 |

### b) Defendants' Request for Relief

Defendants ask the Court to deny Plaintiff's claims in their entirety and enter judgment for
Defendants on all counts.

Dated: New York, New York
December 9, 2024

By: Marc A. Weinstein
       Marc A. Weinstein
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York  10004-1482
Telephone: (212) 837-6000
marc.weinstein@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen*

By: Peter Neiman
     Peter Neiman
WILMER CUTLER PICKERING HALE AND
DORR
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
Telephone: (212) 295-6487
peter.neiman@wilmerhale.com

*Counsel for Defendants Richard
Markowitz, Jocelyn Markowitz, Avanix
Management LLC Roth 401(K) Plan,
Batavia Capital Pension Plan, Calypso
Investments Pension Plan, Cavus Systems
LLC Roth 401(K) Plan, Hadron Industries
LLC Roth 401(K) Plan, RJM Capital
Pension Plan, RJM Capital Pension Plan
Trust, Routt Capital Pension Plan, Routt
Capital Trust*

By: <u>Sharon L. McCarthy</u>
    Sharon L. McCarthy
Kostelanetz LLP
7 World Trade Center, 34th Floor
New York, New York 10007
Telephone: (212) 840-6866
smccarthy@kostelanetz.com

*Counsel for Defendants John van
Merkensteijn,III, Elizabeth van
Merkensteijn, Azalea Pension Plan, Basalt
Ventures LLC Roth 401(K) Plan, Bernina
Pension Plan, Bernina Pension Plan Trust,
Michelle Investments Pension Plan,
Omineca Pension Plan, Omineca Trust,
Remece Investments LLC Pension Plan,
Starfish Capital Management LLC Roth
401(K) Plan, Tarvos Pension Plan, Voojo
Productions LLC Roth 401(K) Plan, Xiphias
LLC Pension Plan*

By: <u>David L. Goldberg</u>
    David L. Goldberg
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-6787
david.goldberg@katten.com

*Counsel for Defendants Robert Klugman,
RAK Investment Trust, Aerovane Logistics
LLC Roth 401K Plan, Edgepoint Capital
LLC Roth 401K Plan, Headsail
Manufacturing LLC Roth 401K Plan, The
Random Holdings 401K Plan, The Stor
Capital Consulting LLC 401K Plan*

IT IS SO ORDERED this _____ day of _____, 2024.


_____
Hon. Lewis A Kaplan
United States District Judge