**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos.: 19-cv-01785;
19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-
01783; 19-cv-01895; 19-cv-01904; 19-cv-01869;
19-cv-01922; 19-cv-01870; 19-cv-01791; 19-cv-
01792; 19-cv-01926; 19-cv-01868; 19-cv-01929;
19-cv-01806; 19-cv-01906; 19-cv-01808; 18-cv-
04833; 19-cv-01898; 19-cv-01898; 19-cv-01812;
19-cv-01896; 19-cv-01815; 19-cv-01924; 19-cv-
10713; 19-cv-01866; 19-cv-01794; 19-cv-01865;
19-cv-01798; 19-cv-01800; 19-cv-01788; 19-cv-
01928; 19-cv-01803; 19-cv-01801; 19-cv-01894;
19-cv-01810; 19-cv-01809; 19-cv-01871; 19-cv-
01813; 19-cv-01930; 19-cv-01818; 19-cv-01931;
19-cv-01918; 19-cv-01873; 18-cv-07828; 18-cv-
07827; 18-cv-07824; 18-cv-07829; 18-cv-04434;
21-cv-05339

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF AND DEFENDANTS' JOINT**
**PROPOSED JURY INSTRUCTIONS**

# TABLE OF CONTENTS

I.     GENERAL INSTRUCTIONS .................................................................................1

    1.     Role of the Court and Jury .....................................................................1

    2.     Consideration of Evidence .....................................................................3

    3.     Direct and Circumstantial Evidence ......................................................4

    4.     Witness Credibility ................................................................................5

    5.     Expert Witnesses ...................................................................................7

    6.     Depositions ............................................................................................9

    7.     No Inferences Concerning Non-Party Defendants ...............................10

    8.     Burdens of Proof ..................................................................................11

II.    LIABILITY INSTRUCTIONS ..........................................................................14

    9.     Verdict Form ........................................................................................14

    10.    Fraud Claims ........................................................................................17

    *11.*    *Good Faith* ...........................................................................................24

    12.    Alter Ego .............................................................................................25

    13.    Proximate Cause ..................................................................................27

    14.    Agency .................................................................................................28

    15.    Aiding and Abetting Fraud Claims ......................................................30

    16.    Negligent Misrepresentation Claims....................................................32

    17.    Unjust Enrichment/Money Had & Received/Payment by Mistake Claims..........34

    18.    Partnership ...........................................................................................36

    19.    Compensatory Damages .......................................................................38

    20.    Unjust Enrichment Damages ................................................................39

    21.    Punitive Damages .................................................................................40

    22.    Danish Dividend Withholding Tax .......................................................42

    23.    U.S.-Denmark Tax Treaty.....................................................................43

    24.    Danish Law on Share Ownership .........................................................45

    25.    Danish Law on Transfers of Ownership of Shares ...............................48

    26.    Receipt of Dividends............................................................................50

               *Beneficial Ownership of Dividends* ...................................................51

    27.    IRC – Exclusive Benefit Rule ..............................................................53

               *Pension Plan Representation* ............................................................55

               *IRC – Exclusive Benefit Rule* ...........................................................55

    28.    IRC – Permanency Requirement ..........................................................57

i

29.    IRC – Plan Funding Requirements ...................................................59

30.    IRC – Unrelated Business Taxable Income .......................................61

*31.    A Pension Plan's Investments* .........................................................63

*32.    SKAT's Duty to Collect Tax* ............................................................64

*33.    IRS Form 6166* ...............................................................................65

*34.    Short Selling* ..................................................................................66

35.    Statute of Limitations ......................................................................67

36.    Comparative Negligence ..................................................................72

*37.    Assumption of Risk* .........................................................................74

*38.    Failure to Mitigate* .........................................................................75

*39.    Laches* ............................................................................................76

*40.    Revenue Rule* ..................................................................................77

41.    New York General Obligations Law § 15-108 ..................................79

III.    Closing Instructions ..................................................................................81

42.    Duty to Deliberate ...........................................................................81

43.    Notes ...............................................................................................82

44.    Copy of Instructions ........................................................................83

45.    Quorum Requirement .......................................................................84

46.    Foreperson .......................................................................................85

47.    Reaching a Verdict ...........................................................................86

48.    Questions on Instructions .................................................................87

49.    Right to See Exhibits and Hear Testimony .......................................88

50.    Juror Oath .......................................................................................89

**\*\*\* A NOTE ON REVIEWING THESE PROPOSED INSTRUCTIONS:**

- Text that is jointly proposed by both parties is neither underlined nor italicized.

- Text that is proposed by Plaintiff, only, and to which Defendants object, is underlined.

- *Text that is proposed by Defendants, only, and to which Plaintiff objects, is in italics.*

## I.    GENERAL INSTRUCTIONS

### 1.    Role of the Court and Jury

Ladies and gentlemen, thank you for your attention thus far.  Now that you have heard the evidence, it is my duty to instruct you on the law.  It is your duty to listen carefully to these instructions, accept them, and apply them to the facts as you determine them based on the evidence presented.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  Do not be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law.

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Nor is what I may have said—or what I may say in these instructions—about a fact, issue, or evidence.  In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not a party has proven his or her case. I also ask you to draw no inference from the fact that on occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more or less credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

You are to decide the case fairly and impartially, based solely on the evidence and these instructions.

**Authority**:  4 Modern Fed. Jury Inst.—Civil, ¶ 71.01 Inst. 71-1, 71-2.

### 2.    Consideration of Evidence

The evidence in this case consists of the sworn testimony of the witnesses, the exhibits received in evidence, and all facts and events that may have been admitted or stipulated to.

By contrast, the questions of the lawyers are not to be considered by you as evidence – it is the witnesses' answers that are evidence, not the questions.  Similarly, what the lawyers have said in their opening statements, closing arguments, and at other times is intended to help you understand the evidence, but is not evidence itself.  Moreover, testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  If certain testimony was received for a limited purpose, you must follow the limiting instruction I have given.

To constitute evidence which may be considered by you, exhibits must have been received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

The parties have presented exhibits in the form of charts and summaries.  These charts and summaries were admitted in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

__Authority__:  4 Modern Fed. Jury Inst.—Civil, ¶ 74.01 Inst. 74-1.

### 3.    Direct and Circumstantial Evidence

There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence. An example of direct evidence is when a witness testifies about something he or she knows by virtue of his or her own senses—something he or she has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit which has been admitted into evidence.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. Assume further that, as you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact. Circumstantial evidence is as valuable as direct evidence. The law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on all the evidence presented.

**Authority**:  4 Modern Fed. Jury Inst.—Civil, ¶ 74.01 Inst. 74-2.

### 4.    Witness Credibility

You have had the opportunity to observe all of the witnesses.  As I explained at the outset of trial, as part of assessing the evidence, it is your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You are being called on to resolve various factual issues raised by the parties in the face of different pictures painted by both sides.  It must be obvious to you that both sides cannot be correct, and this is where you play your role as jurors.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify. Everything a witness said or did on the witness stand or by video counts in your determination. How did the witness impress you?  Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider that the witness may have an interest in the outcome of the case, and that he or she may have been motivated to testify in a way to advance his or her own self-interest.  If you believe any witness has been impeached and thus discredited, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.   If you find that

5

any witness has testified falsely with respect to a material fact in the case, you may, but you are not required to, disregard his or her entire testimony. Or, in your discretion, you may choose to follow that which you believe is true and reject the balance. It is entirely within your discretion to weigh it, to determine the weight to be given to the testimony and to judge the credibility of the witness.

Said differently, you should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of the witness's memory, the witness's candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony. In other words, use your common sense, good judgment, and own life experience.

**Authority:** 4 Modern Fed. Jury Inst.—Civil, ¶ 76.01 Inst. 76-1, 76-3, 76-5.

### 5.    Expert Witnesses

In this case, I have permitted three witnesses to express their opinion about matters that are in issue.   Specifically, Mr. Dubinsky and Mr. Wade, who were called by plaintiff, and Dr. Carr, who was called by the defendants.  A witness may be permitted to testify to an opinion on those matters about which he has special knowledge, skill, experience and training.   Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in a particular field can assist you in understanding the evidence and in coming to your own independent decision on the facts.

In deciding on the credibility and persuasiveness of opinion testimony, you should consider the witness's qualifications, his opinions, the bases for the witness's opinions, as well as all of the other considerations I described to you previously about witness credibility generally. You should not accept the testimony just because I allowed the witness to testify concerning his opinion.  Even with opinion testimony, you should use your common sense, your good judgment, and your own life experience when evaluating it.

The testimony of the opinion witnesses called by the parties may have conflicted in some respects.  Where you have heard conflicting testimony from opinion witnesses, it is your job to resolve the disagreement the same way you would decide other fact questions and evaluate the credibility of non-opinion witnesses.  You may give opinion testimony as much weight, if any, as you think it deserves in light of all of the evidence.  You also may reject the testimony of any opinion witness in whole or in part if you conclude that the reasons given in support of an opinion are unsound or if you for other reasons don't believe or credit the opinion witness.  The determination of the facts in this case rests solely with you.

<u>**Authority**</u>:  4 Modern Fed. Jury Inst.—Civil, ¶ 76.01 Inst. 76-9, 76-10 (modified); based on this Court's instructions in *Carroll v. Trump*, 22 Civ. 10016 (LAK) (S.D.N.Y.) and *Cerveceria*

*Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, No. 21 Civ. 01317 (LAK) (S.D.N.Y.).

### 6.  Depositions

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adversary party under oath before a court stenographer. This is part of the pretrial discovery.  Each side is entitled to take depositions, and each party is entitled to ask questions at each deposition. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial. The fact that the testimony of certain witnesses has been presented by deposition as opposed to live testimony should not impact your consideration of their testimony or their credibility.

**Authority**: 4 Modern Fed. Jury Inst.—Civil, ¶ 74.07, Inst. 74-14.

### 7.      No Inferences Concerning Non-Party Defendants

You have heard testimony from individuals whom SKAT sued but who are not

defendants in this trial, namely Sanjay Shah, Michael Ben-Jacob, Ronald Altbach, Joseph

Herman, Perry Lerner, and David Zelman.  The reasons why these individuals are not parties to

this trial do not concern you.  Do not speculate why or draw any inference or conclusion from

the fact that these individuals are not parties to this trial.

**Authority**:  *See* N.Y. Pattern Jury Instr.--Civil Principles (Elements of the Charge); N.Y. Pattern
Jury Instr.—Civil 2:275B (modified).

### 8.    Burdens of Proof

I will now talk to you about burdens of proof.  The party with the burden of proof on any given issue has the burden of proving every disputed element of his or her claim to you by a certain standard.  As I will discuss in a moment, SKAT has asserted claims for fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, money had and received, and payment by mistake.  SKAT has the burden of proving ~~all of its claims~~ *its negligent misrepresentation, unjust enrichment, money had and received, and payment by mistake claims* by a preponderance of the evidence.[1] *SKAT's fraud and aiding and abetting fraud claims are different.  SKAT has the burden of proving its fraud and aiding and abetting fraud claims by clear and convincing evidence.*  Defendants have also asserted affirmative defenses, including the statute of limitations and comparative fault, which I also will discuss later.  If you are called upon to answer the questions on the verdict form with respect to the defendants' affirmative defenses, I instruct you that the defendants have the burden of proof only on those particular questions and their burden of proof is by a preponderance of the evidence.  <u>Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That standard does not apply to a civil case such as this and you should put it out of your mind</u>.

---

1.  Defendants assert that the proper standard for a fraud claim under New York law is "clear and convincing." *See, e.g., Elof Hansson USA Inc. v. Santiago*, 2022 WL 2208266, at *2 (2d Cir. June 21, 2022) (citing *Ferreyra v. Arroyo*, 35 N.Y.3d 127, 128 (2020)); *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 558 (S.D.N.Y. 2009).  Per its Memorandum of Law on Issues of Disputed Foreign Law and Choice of Law (ECF No. 1071), SKAT contends that, under the relevant Danish law, the standard of proof that should be applied to SKAT's fraud and aiding and abetting fraud claims is a preponderance of the evidence.  Defendants disagree that SKAT is correctly articulating the standard under Danish law and assert that the standard of proof in Denmark "is more stringent than the 'preponderance of evidence' standard propounded by SKAT. . . .[T]o impose liability under the fault rule outside contractual relationships, 'a fairly high degree of probability that the tortfeasor has acted culpably is generally required.'" (ECF No. 1114) (citing Decl. of Foreign Law of Kasper Bech Pilgaard dated July 24, 2024 at ¶ 14).  Defendants therefore maintain that the Court should apply New York law.

The burden of "preponderance of evidence" simply means to prove that a fact is more likely true than not true. In other words, a "preponderance" of the evidence means that the party with the burden of proof on a particular question by a preponderance of the evidence has persuaded you that the odds that that person is right on that question is more than 50/50, even if just by the tiniest amount. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim or issue has been proved by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of which side may have called them, and all the relevant exhibits received in evidence, regardless of which side produced them.

If, after considering all the evidence, you find that the evidence of both parties with respect to a question I have put to you is equally balanced—in other words, that the chance that the plaintiff's contention or the defendants' contention is correct with respect to a particular question is exactly equal—then the party with the burden of proof on that question has failed to sustain its burden of proof on the particular question, and you must find for the other party on that issue. On the other hand, if the party with the burden of proof on a particular question by a preponderance of the evidence has persuaded you that its contention is more likely correct than the chances that the other side is correct, as I said, <u>even if by only a little</u>, then you must find for the party with the burden of proof by a preponderance on that question.

*As I previously instructed you, on its claims of fraud and aiding and abetting fraud, the plaintiff has the burden of proving every element of its claims by "clear and convincing evidence." If you conclude that the plaintiff has failed to establish its claims of fraud and aiding and abetting fraud by clear and convincing evidence, you must find against plaintiff on those issues. What does "clear and convincing evidence" mean? "Clear and convincing evidence" is*

*a more exacting standard than proof by a preponderance of the evidence, where you need*

*believe only that a party's claim is more likely true than not true.  On the other hand, "clear and*

*convincing" proof is not as high a standard as the burden of proof applied in criminal cases,*

*which is proof beyond a reasonable doubt.  Clear and convincing proof leaves no substantial*

*doubt in your mind.  It is proof that establishes in your mind not only that the proposition at*

*issue is probable, but also that it is highly probable.  <u>It is enough if the party with the burden of</u>*

*<u>proof establishes his claim beyond any "substantial doubt;" he does not have to dispel every</u>*

*<u>"reasonable doubt."</u>*

**Authority:**  4 Modern Fed. Jury Inst.—Civil, ¶ 73.01 Inst. 73-1, 73-2, 73-3 (modified); based on this Court's instructions in *Carroll v. Trump*, 22 Civ. 10016 (LAK) (S.D.N.Y.); *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, No. 21 Civ. 01317 (LAK) (S.D.N.Y.); and *Rapp v. Fowler*, No. 20 Civ. 9586 (LAK) (S.D.N.Y.).

## II.    LIABILITY INSTRUCTIONS

### 9.    Verdict Form

I will now explain to you the verdict form and the law that applies to it.  I have prepared a special verdict form for you to use in recording your decision.  The special verdict form is made up of questions concerning the important issues in this case.  These questions are to be answered "yes" or "no," or with specific dollar amounts or percentages.  Your answers must be unanimous and must reflect the conscientious judgment of each juror.  You should answer every question except where the verdict form indicates otherwise.  It's important to follow the instructions on the verdict form and the instructions about how to come to a verdict, which I will explain later.  Please don't add anything on the verdict form that it doesn't call for.

As you have heard, the plaintiff, SKAT, is suing the defendants for money damages based on their participation in what SKAT alleges was a fraudulent tax refund scheme.  SKAT alleges that the pension plans at issue submitted to it false claims for tax refunds to which the pension plans were not entitled, which SKAT paid based on alleged misrepresentations in the tax refund claims.  In support of its claims, SKAT alleges that the pension plans' refund claims contained two misrepresentations.

One, SKAT alleges that the pension plans' refund claims misrepresented that the plans owned the Danish shares, received the dividends, and suffered the claimed dividend withholding tax identified therein.  And, two, SKAT alleges that the refund claims misrepresented that the plans were tax-exempt, qualified pension plans within the meaning of the U.S. Internal Revenue Code, so as to be entitled to the claimed refunds of withheld tax under the U.S.-Denmark Tax Treaty.

14

*In particular, SKAT alleges that the pension plans' refund claims misrepresented that the plans were the beneficial owners of Danish dividends.*[2]

SKAT asserts claims against each defendant for fraud, aiding and abetting fraud, and negligent misrepresentation, seeking as damages the losses it claims it suffered, and punitive damages for the fraud claims. SKAT also asserts claims against each defendant for unjust enrichment money had and received, or payment by mistake, seeking as damages the amount of the proceeds of the allegedly false refund claims that each defendant received.

Defendants deny SKAT's allegations in their entirety and assert that they acted in good faith in participating in what they thought was a legitimate trading strategy. Defendants also assert as affirmative defenses that SKAT filed its claims too late under the applicable statute of

---

2     SKAT's second alleged false statement should not go to the jury because it cannot support their claims for relief. First, for the reasons explained in footnote 30 below, SKAT is simply wrong that a representation about being a "tax exempt, qualified" plan could be materially false, since the treaty explicitly does not require that a pension plan be tax exempt in order to qualify for full refund of withholding. Any pension plan – as that term is used in the treaty – is entitled to a full refund, regardless of whether it is tax exempt. SKAT invites legal error by citing to language in the Technical Explanation to the 2000 Convention that it suggests compels tax exemption when that language was plainly superseded by the 2006 Protocol and the Technical Explanation thereto. Nor could SKAT obtain relief by showing that a representation that the plans were "pension plans" within the meaning of the treaty was false. At most, that would mean the plans were not entitled to full refund of withholding. But if that were the only misrepresentation found, the plans would still be entitled to a partial refund of withholding, since there is no dispute the plans were US residents, which is all that is required to be entitled to claim a partial refund of withholding under the treaty. Any dispute over whether the plans were a particular kind of US resident – a pension plan – would go only to the size of refund to which defendants were entitled, not to the fact of entitlement to a refund. And a dispute over the size of any Danish tax refund due is outside this Court's jurisdiction under the revenue rule, for the reasons explained in footnote 30.

SKAT disputes defendants' assertion that SKAT's allegation that the refund claims misrepresented that the plans were tax-exempt, qualified pension plans should not go to the jury. As explained in its Memorandum of Law in Opposition to Defendants' and Third-Party Defendants' Motion for Summary Judgment, the U.S. Department of Treasury's Technical Explanation to the treaty makes clear that, for the purpose of the treaty, U.S. "pension funds" "are the tax-exempt organizations described in subparagraph 1(b)(ii) of Article 4 (Residence)." (*See* ECF No. 831 at 44 n.40.) SKAT further disputes defendants' assertion that the revenue rule precludes SKAT's claims based on the alleged misrepresentations that the plans were tax-exempt. If no shares existed, as SKAT alleges, the defendants' pension plans never suffered any tax and therefore were not entitled to any reclaim, rendering the revenue rule inapplicable to this case. *See In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308 (S.D.N.Y. 2019) (if "the defendants never in fact owned the relevant Danish stocks," then "the revenue rule would not apply because the substance of the claims would be for garden variety commercial fraud").

limitation,  and, with respect to SKAT's negligent misrepresentation claims only, that SKAT *assumed the risk of paying out erroneous reclaims* and was contributorily negligent.

The special verdict form starts with three questions that are common to all of SKAT's <u>fraud, aiding and abetting fraud, and negligent misrepresentation</u>[3] claims against all the defendants.  Those three questions are whether the refund claims contained material misrepresentations, whether SKAT justifiably relied on any misrepresentations in paying the plans' refund claims, and whether SKAT sustained damages as a result of its alleged reliance on the alleged misrepresentations.  The verdict form then includes five sections, one for each of Richard Markowitz, Jocelyn Markowitz, John van Merkensteijn, Elizabeth van Merkensteijn, and Robert Klugman, that cover the remaining questions for SKAT's claims.  Next, the verdict form includes a section that covers the remaining questions for SKAT's claims against the pension plan defendants.  The last section of the verdict form covers the defendants' affirmative defenses.

**Authority**:  4 Modern Federal Jury Instructions-Civil P 78.01 (2022) (Instruction 78-9) (modified)

---

3.  Defendants assert that in the circumstances of this case, the three initial questions in the verdict form (that reclaim applications included a material false statement, that SKAT reasonably relied on the material false statement, and that SKAT suffered injury therefrom) must apply to the unjust enrichment/payment by mistake/money had and received claims.  Otherwise, the instructions would permit the jury to rule for SKAT on those claims with little more than a showing that defendants were not entitled to the tax refund SKAT alleges they received, even if SKAT had not been defrauded by defendants and/or others.  The revenue rule bars such a claim, which would be an improper attempt to enforce Danish tax law.  *See, e.g.*, *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *6 (S.D.N.Y. Nov. 20, 2023).

SKAT disagrees that the first three questions must apply to SKAT's unjust enrichment, payment by mistake, and money had and received claims.  The second question asks whether SKAT justifiably relied on a material, false statement in the plan's refund claims.  If the jury were to answer "no" to that question, *i.e.*, that SKAT did not justifiably rely on the refund claims, that would not transform SKAT's unjust enrichment, payment by mistake, and money had and received claims into ones for unpaid taxes precluded by the revenue rule.

### 10.    Fraud Claims

SKAT's first claim against each defendant is for fraud.  In order to recover for fraud against a defendant, it is SKAT's burden to prove by ~~a preponderance of the evidence~~ *clear and convincing evidence* that (1) the defendant made, or caused to be made, a material misrepresentation of a fact; (2) the defendant either knew that the statement was false or made the statement recklessly without regard to whether it was true or false; (3) the defendant made the misrepresentation to induce SKAT's reliance; (4) SKAT justifiably relied upon the defendant's misrepresentation; and (5) SKAT sustained damages because of its reliance on the defendant's misrepresentation.  I will now explain to you the questions on the verdict form concerning the elements of SKAT's fraud claims.

The first question on the verdict form asks you to decide for each of the pension plans at issue, whether SKAT proved that the plan submitted tax refund claims containing a material, false statement.  It's a "yes" or "no" question for each pension plan listed.  <u>As I've mentioned, SKAT alleges that each of the refund claims included two material, false statements</u>.  <u>One, that the pension plan owned the Danish shares, received the dividends, and suffered the withholding tax identified in the refund claim.  And, two, that the pension plan was a tax-exempt, qualified pension plan under the Internal Revenue Code.</u>  *As I've mentioned, SKAT alleges that each of the refund claims falsely represented that the pension plan was the beneficial owner of the dividends.*  If you answer "yes" to question 1 on the verdict form for any of the pension plans, you may subsequently be required to decide whether any of the defendants made or caused the false statement to be made.  This first question requires you to decide only whether each plan's refund claims contained <u>either of</u> the false statement<u>s</u> SKAT alleges and whether any such statement was material.  It does not require you to find that both statements were false.

17

A statement is false if, taken as a whole, it communicates something that is untrue when considered from the viewpoint of an ordinary person.  I will instruct you on the U.S.-Denmark Tax Treaty, *and* Danish law, and the Internal Revenue Code relevant to your determination of whether the statements *was* were false after I finish explaining the elements of SKAT's claims. If you decide that *SKAT has not met its burden of proving the alleged* neither of the statements in the plan's refund claims was false, then you will answer question 1 "no" with respect to that plan.  If you find that *SKAT met its burden of proving* either or both of the *alleged* statements in the plan's refund claims was false, you must next decide whether such statement was material.

A statement of fact is material if a reasonable person would consider it important in determining whether to pay the plan's refund claim.  If you decide that *SKAT has not met its burden of proving* the statement or statements in the plan's refund claims that SKAT alleges to be false were not material, you will answer question 1 "no" with respect to that plan.  If you decide that *SKAT has met its burden of proving* the statement or statements in a plan's refund claims that SKAT alleges to be false were material, you will answer "yes" to question 1 for that plan.

The second question on the verdict form asks you to decide for any plan for which you answered "yes" to question 1, whether SKAT proved that it justifiably relied on a material, false statement contained in the plan's refund claims.  First, you must decide whether SKAT *met its burden of proving it* relied on the false statements in deciding to pay the plan's refund claims.  If you decide that SKAT did not *meet its burden of proving it relied* rely on any false statement in paying the plan's refund claims, you will answer "no" to question 2 with respect to that plan.

If you decide that SKAT did rely on a false statement in paying the plan's refund claims, you must next decide whether SKAT was justified in relying on the statement. Whether a person

is justified in relying on a statement depends on whether a reasonable person would rely on it without further effort to determine the truth or accuracy of the statement. *A sophisticated plaintiff, like SKAT, cannot establish that it justifiably relied on alleged misrepresentations if it was under a duty to investigate but failed to do so, or was on notice that the documents submitted with a reclaim application were insufficient to confirm an applicant's entitlement to a refund, but failed to make use of the means of verification that were available to it.*[4] If you decide that SKAT *did not meet its burden of proving it was* <u>was not</u> justified in relying on any false statement in the refund claims, you will answer "no" to question 2 with respect to that plan. If you decide that SKAT *did meet its burden of proving it* was justified in relying on a false statement in the refund claims, you will answer "yes" to question 2 with respect to that plan.

The third question on the verdict form asks you to decide for any plan for which you answered "yes" to question 2, whether SKAT proved that it sustained damages because it justifiably relied on a material, false statement in the plan's refund claims. If you decide that SKAT *did not meet its burden of proving that it* <u>did not</u> sustain*ed* any damages as a result of its justifiable reliance on a false statement in the plan's refund claims, you will answer "no" to

---

4. SKAT objects to defendants' proposed instruction. The cases defendants rely on in support of this instruction concern an entity's ability to conduct due diligence before entering into an arm's length business transaction and therefore are inapt in the circumstances of this case. SKAT further objects to this instruction as contrary to the Court's holding that "Danish law does not impose on SKAT a duty to make active investigations (like police investigations in criminal matters) of all facially sufficient tax refund applications it receives on a presumption that facts of relevance to the case may be hidden somewhere." *In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at *15 (S.D.N.Y. Nov. 20, 2023) (quotation omitted).

Defendants disagree with SKAT's characterization of the applicability of the cases cited. SKAT offers no explanation of why the salient feature of each case – namely, the plaintiff's failure to conduct the level of diligence warranted under particular circumstances, should not have general applicability, or applicability to the specific facts of this case. SKAT is also wrong to suggest any conflict with this Court's prior rulings. Nothing in the proposed language speaks to the specific level of SKAT's duty to investigate. Instead, the instruction properly reserves for the jury the role of determining whether, under all the evidence, SKAT acted reasonably and justifiably.

question 3 with respect to that plan.  If you decide that SKAT did *meet its burden of proving that it* sustain*ed* damages as a result of its justifiable reliance on a false statement in the plan's refund claims, then you will answer "yes" to question 3 with respect to that plan. *It is not enough for SKAT to prove that someone else suffered a loss as a result of the alleged scheme. To prevail on this question, SKAT needs to show that it suffered a loss.*[5]

For each plan for which you answered "yes" to questions 1, 2, and 3, you must decide whether SKAT proved that each defendant made or caused to be made to SKAT the false statement or statements in the refund claims.  That is the first question in the sections for each of the individual defendants and the pension plan defendants under the heading "Fraud Claims." You may have heard evidence that the pension plans' refund claims were submitted to SKAT by payment agents.  That the pension plans' refund claims may have been submitted to SKAT by the plans' agents does not mean that the pension plans or individual defendants did not make the statements or cause them to be made *third parties*.  When a defendant *did not communicate the allegedly false statement directly to the plaintiff,* uses a third-party as a conduit to relay a false statement, the plaintiff *must show that the defendant intentionally caused the particular allegedly false statement to be delivered to the plaintiff* need only show that the defendant intended that the information be communicated to the plaintiff in order to show that the defendant made the statement or caused it to be made.

SKAT has asserted different legal theories as to how certain of the individual defendants made or caused to be made the false statement or statements in certain of the plans' refund

---

5.  SKAT objects to this portion of defendants' proposed instruction because it would confuse the jury given that it is duplicative of the instruction above that the "third question on the verdict form asks you to decide for any plan for which you answered 'yes' to question 2, whether SKAT proved that it sustained damages because it justifiably relied on a material, false statement in the plan's refund claims."  Further, this instruction is presumably premised on defendants' meritless Danish law argument that SKAT is a separate legal entity from the rest of the Danish state and is therefore inappropriate to provide to the jury.

claims. Specifically, SKAT has asserted *alter ego* and agency theories of liability. I will instruct you on each of these theories after I finish explaining the elements of SKAT's fraud claims. If you decide that *SKAT did not meet its burden of proving that a defendant made or caused to be made* <u>a defendant did not make or cause to be made</u> a false statement in any plan's refund claims, you will answer "no" to that question for that defendant and need proceed no further on the fraud claim with respect to that defendant. If you decide that *SKAT did meet its burden of proving that* a defendant did make or cause to be made a false statement in one or more plans' refund claims, you will answer "yes" for that defendant.

For each defendant that you answered "yes" as to whether the defendant made or caused to be made a false statement or statements, you must next answer the second question under the "Fraud Claims" heading, which asks whether SKAT proved that the defendant made or caused the statement to be made in order to induce SKAT to rely upon it. If you decide that *SKAT did not meet its burden of proving that* the defendant <u>did not make or cause to be</u> made the statement or statements in any plan's refund claims in order to convince SKAT to pay the claimed refunds, you will answer "no" and need proceed no further on SKAT's fraud claim against that defendant. If you decide that *SKAT met its burden of proving* the defendant did make or caused to be made the statement or statements in one or more plans' refund claims in order to convince SKAT to pay the claimed refunds, you will answer "yes" to that question and proceed to the next question.

The third question under the "Fraud Claims" heading asks whether SKAT proved that the defendant knew that the statement was false or that he or she acted recklessly without regard to whether it was true or false. A statement is made recklessly if it is made when the person making it does not have an honest and reasonable belief in its truth. *In other words, the person making the statement is highly aware that it is probably false. It is not enough that the person*

*making the statement acts negligently or does not know whether something is true or false.*

*Recklessness requires "conscious misbehavior or conduct which is highly unreasonable."* [6] If you decide that *SKAT did not meet its burden of proving that* the defendant did not know that the statement was false and that the defendant did not make the statement recklessly, you will answer "no" to the question for that defendant.  If you decide that *SKAT did meet its burden of proving that* the defendant did know that the statement was false or that the defendant acted recklessly in making the statement, you will answer "yes" to the question for that defendant <u>and you will need to decide the amount of the damages SKAT sustained in the compensatory damages sections of the verdict form when you come to them.</u>

**Authority:** N.Y. Pattern Jury Instr.—Civil 3:20 (modified); *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009); *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827-29 (2016); <u>*Peach Parking Corp. v. 346 West 40th Street LLC*</u>, 42 A.D.3d 82, 87 (N.Y. App. Div. 1st Dep't 2007); <u>*ACA Galleries, Inc. v. Kinney*</u>, 928 F. Supp. 2d 699, 703 (S.D.N.Y. 2013); <u>*Stuart Silver Assoc. v. Baco Dev. Corp.*</u>, 665 N.Y.S.2d 415, 417 (1st Dep't 1997); <u>*UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney*</u>, 288 A.D.2d 87, 88 (N.Y. App. Div. 1ˢᵗ Dep't, 2001); <u>*Siemens Solar Indus. v. Atl. Richfield Co.*</u>, 673 N.Y.S.2d 674, 674 (1998); <u>*Abrahami v. UPC Const. Co., Inc.*</u>, 224 A.D.2d 231, 234 (N.Y. App. Div. 1st Dep't 1996); Orgaard Decl. ¶¶ 15-19; SKAT Legal Guide at Section A.A.7.4.3; *Foraeldelse*, 2d ed., 2019 p. 601; <u>*Liberman v. Gelstein*</u>, 80 N.Y.2d 429, 428 (1992); <u>*Ambassador Factors v. Kandel & Co.*</u>, 215 A.D.2d 305, 308, 626 N.Y.S.2d 803, 806 (1995); <u>*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank*</u>, N.A., 261 F.R.D. 13, 22 (S.D.N.Y. 2009); <u>*Sweringen v. N.Y. State*</u>

---

6. SKAT objects to the proposed instruction, "In other words, the person making the statement is highly aware that it is probably false."  Defendants appear to draw this proposition from *Liberman v. Gelstein¸* 80 N.Y.2d 429, 439 (1992), which concerned the definition of actual malice in the context of a defamation claim and therefore is inapposite.  SKAT also objects to an instruction that recklessness requires "conscious misbehavior."  Defendants appear to draw this instruction from cases discussing the pleading standards for a fraud claim.  *See, e.g.*, *Sweringen v. N.Y. State Dispute Resolution Ass'n*, 2007 WL 2403197, at *5 (N.D.N.Y. Aug. 17, 2007) (internal quotation omitted; emphasis added) ("A plaintiff in a fraud action may also plead scienter by alleging facts that constitute strong circumstantial evidence of conscious misbehavior *or* recklessness.").

Defendants disagree with SKAT's objection and note that there is no suggestion that either statement misrepresents the applicable meaning of recklessness in this context.  New York law is clear that recklessness and negligence are distinct, and that the latter is insufficient. *Ultramares Corporation v. Touche*, 255 N.Y. 170, 185-86 (1931) (Cardozo, C.J.); *see also Chill v. General Elec. Co.*, 101 F.3d 263, 269 ("[R]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (cleaned up). Absent Defendants' proposed addition, the instructions are not sufficiently clear on the distinction between recklessness and negligence and risk an erroneous consideration of the latter as sufficient to support a finding of the requisite scienter for fraud.

_Dispute Resolution Ass'n_, 2007 WL 2403197, at *5 (N.D.N.Y. Aug. 17, 2007); _LaSalle Bank v. Ernst & Young_, 285 AD 2d 101 - NY: Appellate Div., 1st Dept. 2001; _People v. Haney_, 30 NY2d 328 (1972).

### 11.    *Good Faith*

As I just instructed you, the third question under the *"Fraud Claims"* heading asks whether SKAT proved that the defendant knew that the statement was false or that he or she acted recklessly without regard to whether it was true or false.  SKAT bears the burden of proving the absence of good faith.  If you decide that SKAT has not met its burden of proving that the defendant did not act in good faith when making the statement, you will answer *"no"* to the question for that defendant.  Evidence that a defendant relied on the advice of their counsel is relevant to your consideration of whether that defendant acted in good faith.  Further, the presence or involvement of a lawyer, or advice known to a defendant at the time of his alleged misconduct might have a bearing on whether he acted with or without fraudulent intent.[7]

**Authority:** Restatement (Third) of Torts: Liab. for Econ. Harm § 10 (2020); *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2024 WL 4696085, at *4 (S.D.N.Y. Nov. 6, 2024); *United States v. Bankman-Fried*, 2023 WL 6392718 (S.D.N.Y.  Oct. 1 2023) at *3.

---

7.    SKAT objects to this proposed instruction as unnecessary and confusing.  SKAT does not have the burden to prove the defendants did not act in good faith separate from its burden to prove that defendants made the misrepresentations with the requisite scienter, which is addressed in the previous instruction.  SKAT further objects to this proposed instruction given the language "[e]vidence that a defendant relied on the advice of their counsel is relevant to your consideration of whether that defendant acted in good faith."  This proposed instruction is at least in part contrary to the Court's *in limine* ruling concerning the advice of counsel defense. *See In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2024 WL 4696085, at *4 (S.D.N.Y. Nov. 6, 2024).  Indeed, in opposing SKAT's motion *in limine*, defendants disclaimed that they were relying on an advice of counsel defense with respect to the representations of share ownership and dividend receipt.  SKAT disputes that there is a sufficient evidentiary predicate for any advice of counsel instruction.

12.    **Alter Ego**

As I mentioned, SKAT asserts that certain of the pension plans were the *alter egos* of certain of the individual defendants and the individual defendants caused their *alter ego* plan's refund claims to be submitted to SKAT. Defendants deny that any of the pension plans were the *alter egos* of any of the individual defendants.

Ordinarily, a participant in a pension plan is not responsible for what the pension plan does. In most situations, a pension plan is treated as separate from its participants and only the plan itself is responsible for what it does. But under certain circumstances, you can disregard the separate legal status of the pension plan and its participant, and the plan participant will be held responsible for the pension plan's actions as its *alter ego*. To establish *alter ego* liability, a plaintiff must prove by a preponderance of the evidence, *and, in the case of SKAT's fraud claim, by clear and convincing evidence,* that (1) the defendant exercised dominion and control with respect to the transaction at issue such that the *alter ego* had no separate will of its own; and (2) the defendant used its domination to commit a fraud or wrong against the plaintiff, which proximately caused the plaintiff's injuries.

Accordingly, to prove its *alter ego* liability theory with respect to any individual defendant, SKAT has the burden to prove that (1) the defendant exercised dominion and control over the pension plan with respect to the plan's refund claims such that the pension plan had no separate will of its own; and (2) the defendant used his or her domination of the pension plan to commit a fraud or wrong against SKAT, which proximately caused SKAT's injuries. SKAT must prove both of those elements for its *alter ego* liability theory to apply. If you decide that SKAT has met its burden on these elements with respect to an individual defendant and pension plan, you may decide that the individual defendant made or caused to

be made to SKAT any false statements you found the plan made or caused to be made when you answer the first question on the verdict form in the fraud claims section for that defendant.

In deciding whether SKAT has met its burden of proof, you may consider (1) whether the individual defendant established the pension plan; (2) whether the individual defendant was a trustee of the pension plan; (3) whether the individual defendant was the sole participant in the pension plan; (4) any absence of formalities in the administration of the pension plan; (5) whether the individual defendant established the limited liability company associated with the pension plan; (6) whether the individual defendant was the sole member of the limited liability company associated with the pension plan; (7) whether the individual defendant created the pension plan or limited liability company for the purpose of submitting refund claims to SKAT; (8) how many, if any, other pension plans and limited liability companies the defendant created for the purpose of submitting refund claims to SKAT; (9) whether the individual defendant controlled the existence of the pension plan; and (10) whether the individual defendant's home or business address was the same as the plan's address.  This list is not exhaustive and SKAT need not prove all of these factors.[8]

**Authority**: N.Y. Pattern Jury Instr.—Civil 2:266 (modified); *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 322–23 & n.117 (S.D.N.Y. 2019) (citing *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908 (S.D.N.Y. June 30, 2021); *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020).

---

8.  Defendants object to this list because it is unnecessary, incomplete, and misleading, and includes entirely innocent factors.  However, if a list of factors to consider is to be provided to the jury, Defendants assert that the list should include: (11) whether corporate formalities were observed in administration of the plan; (12) whether the individual defendant had business interests distinct from the limited liability company associated with the plan; and (13) whether the limited liability company associated with the plan had multiple members.

### 13.    Proximate Cause

I used the phrase "proximate cause" a minute ago.  An act or omission is regarded as a proximate cause of a harm if it was a substantial factor in bringing about the harm, that is, if it had such an effect in producing the harm that reasonable people would regard it as a cause of the harm.  There may be more than one cause of a harm, but to be substantial, it cannot be slight or trivial.  You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

**Authority**: N.Y. Pattern Jury Instr.—Civil 2:70.

14.    **Agency**

SKAT also asserts that the individual defendants made or caused to be made to SKAT any false representations in the plans' refund claims based on an agency theory. Specifically, SKAT asserts that the pension plans that submitted the refund claims did so as the agents of the individual defendants. Defendants deny that the pension plans acted as agents of the individual defendants in submitting the refund claims to SKAT.

An actionable misrepresentation need not have been made directly by the defendant. A principal may be liable for the fraudulent acts of an agent committed within the scope of the agent's authority. The agent is a party who acts on behalf of the principal with the latter's actual authority, *subject to the principal's control. There is no agency relationship where the alleged principal has no right of control over the alleged agent.*

Under agency principles, a principal-agent relationship may be established by evidence of the consent of one person (the principal) to allow another (the agent) to act on his or her behalf and subject to his or her control, and consent by the agent so to act. The agent's authority may be either express or implied. Express authority is conferred by a principal to an agent by distinct and plain words, which may be communicated orally or in a written document. Implied authority exists when verbal or other acts by a principal reasonably give the appearance of authority to the agent. Whether such an implied agency exists depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship.

If you decide that *SKAT has met its burden of proving that* an individual defendant and pension plan agreed that the plan would act on behalf of and subject to the control of an individual defendant in submitting a pension plan's refund claims to SKAT, then you may

28

decide that the individual defendant made or caused to be made to SKAT any false representations *you found the plan made or caused to be made when you answered the first question on the verdict form in the fraud claims section for that defendant* <u>that the plan made or caused to be made in the plan's refund claims in answering the first question on the verdict form in the fraud claims section for that defendant</u>.

**<u>Authority</u>**: N.Y. Pattern Jury Instr.—Civil 3:20 (modified); *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 321–22 (S.D.N.Y. 2019); *Time Warner City Cable v. Adelphi Univ.*, 813 N.Y.S.2d 114, 116 (App. Div. 2006); *Precedo Cap. Grp. Inc. v. Twitter Inc* 33 F. Supp. 3d 245, 253-54 (S.D.N.Y. 2014).

### 15.    Aiding and Abetting Fraud Claims

SKAT's second claim against each defendant is for aiding and abetting fraud.  For each plan for which you answered "yes" to question 1-3 on the verdict form, you must answer the first question under the "Aiding and Abetting Fraud Claims" heading for each defendant.

The first question on the verdict form under the "Aiding and Abetting Fraud Claims" heading asks whether SKAT proved that the pension plan's refund payments were procured by fraud perpetrated by someone else.  I previously instructed you on the elements of fraud.  If you decide that no fraud occurred, you will answer this question "no" and need not proceed further on SKAT's aiding and abetting fraud claims.  If you decide that a fraud occurred, the next question you must decide is whether each defendant had knowledge of the fraud.

In assessing a defendant's knowledge of the fraud, you must determine whether the defendant had actual knowledge of the fraud.  Actual knowledge may be discerned from the surrounding circumstances of the fraud.  Actual knowledge may also be found based on a showing of conscious avoidance.  Conscious avoidance exists where it can almost be said that the defendant actually knew because he or she ~~suspected a fact and realized its probability~~ *was aware of a high probability of a relevant fact*,[9] but refrained from confirming it in order later to be able to deny knowledge.  If you find that *SKAT has not met its burden of proving that* the defendant *had* ~~did not have~~ knowledge of the fraud—~~and did not~~ *or* consciously avoid*ed* confirming knowledge of the fraud— you will answer the question "no" and need not proceed further on SKAT's aiding and abetting fraud claim against that defendant.  If you find that *SKAT*

---

9.   SKAT objects to this proposed instruction.  The authority defendants cite in support is either from the criminal law context, *see United States v. Ebbers*, 458 F.3d 110, 124 (2d Cir. 2006), or dicta describing conscious avoidance in the criminal law context, *see Renner v. Townsend Fin. Servs. Corp.*, No. 98-cv-926, 2002 WL 1013234, at *7 (S.D.N.Y. May 20, 2002), and thus inapplicable here.

30

*has met its burden of proving that* the defendant did have knowledge of the fraud—or consciously avoided confirming knowledge of the fraud—you will answer the question "yes" and proceed to the next question of whether the defendant provided substantial assistance in achieving the fraud.

Substantial assistance exists where (1) the aiding and abetting party affirmatively assists, helps conceal, or, by virtue of failing to act when required to do so, enables the fraud to proceed, and (2) the actions of the aiding and abetting party proximately cause the harm on which the primary liability is based.  As I mentioned, an act or omission is regarded as a proximate cause of a harm if it was a substantial factor in bringing about the harm, that is, if it had such an effect in producing the harm that reasonable people would regard it as a cause of the harm.  If you decide that the defendant provided substantial assistance in achieving the fraud, you will answer the question "yes" for that defendant and you will be asked to decide later in the verdict form the amount of the damages SKAT sustained.  If you decide that the defendant did not provide substantial assistance in achieving the fraud, you will answer the question "no" for that defendant.

**Authority:** N.Y. Pattern Jury Instr.—Civil 3:20; *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367-68 (S.D.N.Y. 2007); *United States v. Ebbers*, 458 F.3d 110, 124 (2d Cir. 2006); *Renner v. Townsend Fin. Servs. Corp.*, No. 98-cv-926, 2002 WL 1013234, at *7 (S.D.N.Y. May 20, 2002).

### 16.    Negligent Misrepresentation Claims

SKAT's third claim against each defendant is for negligent misrepresentation.  Where a person makes, or causes to be made, a statement that he or she knows or should know will be relied upon by another, that person is under a duty to the other person to take reasonable care that the statement is *true* correct.  *Reasonable care means that degree of care that a reasonably prudent person would use under the same circumstances.*  When a person takes an action or makes a decision in reliance on a *false* incorrect statement *made without reasonable care,* and the reliance was reasonable, that person is entitled to recover the damages it sustained as a result.

To recover against each defendant, SKAT has the burden of proving that (1) the defendant made, or caused to be made, the statements in the pension plan's refund claims; (2) the statements were incorrect *false*; (3) the defendant failed to use reasonable care to ensure that the statements were *true* correct; (4) the defendant knew or a reasonable person in the defendant's position would have known that SKAT would rely on the statements in determining whether to pay the refund claims; (5) SKAT relied on the defendant's statements in paying the refund claims; (6) SKAT's reliance on the defendant's statements was reasonable; and (7) as a result of its reliance, SKAT suffered damages.

For each pension plan for which you answered "yes" to questions 1-3 and the first question in the "Fraud Claims" section for a defendant, you already have decided that the defendant made or caused to be made at least one material, false statement in the plan's reclaim applications, SKAT reasonably *justifiably* relied on the statement or the statements, and SKAT sustained damages as a result of its *justifiable* reliance on the statement or statements.  For any such defendant, you must next answer the first question under the "Negligent Misrepresentation Claims" heading.

That question asks whether SKAT proved that the defendant failed to use reasonable care to ensure that the statements in the plan's reclaim applications were <u>correct</u> *true*.  Reasonable care means that degree of care that a reasonably prudent person would use under the same circumstances.  If you decide that *SKAT has not met its burden of proving that* the defendant *failed to use* <u>used</u> reasonable care to ensure that the statements in the plan's refund claims were *true* <u>correct</u>, you will answer "no" to the question and need proceed no further on SKAT's negligent misrepresentation claim against that defendant.  If you decide that *SKAT has met its burden of proving that* the defendant did not use reasonable care to ensure the statements in the plan's refund claims were correct, you <u>will</u> *may* answer "yes" and proceed to the next question.

The next question under the "Negligent Misrepresentation Claims" heading asks whether SKAT proved that the defendant knew, or reasonably should have known, that a person in SKAT's position would rely on the false statement or statements in the plan's refund claims.  If you decide that *SKAT has not met its burden of proving that* the defendant did <u>not</u> know <u>and</u> *or* reasonably should <u>not</u> have known that a person in SKAT's position would rely on the false statement or statements, you will answer the question "no."  If you decide that *SKAT has met its burden of proving that* the defendant did know, or reasonably should have known, that a person in SKAT's position would rely on the false statement or statements, you *may* <u>will</u> answer the question "yes" and you will be asked to decide later in the verdict form the amount of the damages SKAT sustained.

<u>**Authority**</u>: N.Y. Pattern Jury Instr.—Civil 3:21 (modified).

**17.    Unjust Enrichment/Money Had & Received/Payment by Mistake Claims**

SKAT's fourth claim against each defendant is for unjust enrichment, or money had and received or payment by mistake.  Unjust enrichment occurs when one person has obtained money, property or a benefit from another person under such circumstances that, in fairness and good conscience, the money, property or benefit should not be retained.  In those circumstances, the law requires that person to repay or compensate the other person.

The first question under the "Unjust Enrichment" headings in the verdict form asks whether SKAT proved that the defendant received money belonging to SKAT?  If you decide that *SKAT has not met its burden of proving that* the defendant <u>did not</u> receiv*e* any money belonging to SKAT, you will answer "no" to the question and need proceed no further on SKAT's unjust enrichment claim against that defendant.  If you decide that *SKAT has met its burden of proving that* the defendant did receive money belonging to SKAT, you will answer "yes" to the question and proceed to the next question.

The next question under the "Unjust Enrichment" section asks whether SKAT proved that equity and good conscience do not permit the defendant to retain that money?  <u>In deciding whether equity and good conscience do not permit the defendant to retain SKAT's money, you may consider whether SKAT paid the refund claims under a mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent.</u>[10]  If you *find that SKAT did not meet its burden of proof on that* <u>answer "no" to the</u> question, you need proceed no

---

10.  Defendants object to this list because it is unnecessary, incomplete, and misleading, and, among other things, fails to instruct the jury to consider SKAT's conduct.  SKAT cites no authority which supports instructing the jury on particular considerations it may make in this context, and such an approach would be contrary to New York law governing unjust enrichment claims, which "depends upon broad considerations of equity and justice[.]"  *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (2022) (*quoting Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972)).

further on SKAT's unjust enrichment claims. If you *find that SKAT did meet its burden of proof*

*on that* answer "yes" to the question, you will need to decide later in the verdict form the amount

of SKAT's money the defendant obtained *should be required to return*.

**Authority**: N.Y. Pattern Jury Instr.—Civil 4:2 (modified); *Columbia Memorial Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (2022).

18.    **Partnership**

SKAT asserts that certain trusts and companies were the alter egos of Mr. Markowitz, Mr. van Merkensteijn and Mr. Klugman, and were controlled by these individuals.  SKAT further asserts that these individual defendants, via their *alter ego* trusts or companies that they controlled, entered partnerships with certain of the pension plans.  SKAT contends that in submitting the refund claims, those pension plans were acting on behalf of the partnerships and within the scope of the partnership business.  Defendants deny that the trusts and controlled companies were the alter egos of Mr. Markowitz, Mr. van Merkensteijn and Mr. Klugman, and defendants deny that any partnership existed between these entities and the pension plans.

A "partnership" is an association of two or more persons to carry on a business as co-owners of a business for profit.  The members of a partnership are called "partners."  A partner is acting within the scope of the partnership business when doing anything either expressly or impliedly authorized by the partnership or which is in furtherance of the partnership business. Partners are liable for the actions of their other partners when those actions are made on behalf of the partnership and within the scope of the partnership business.  An act or omission of a partner within the scope of the partnership business is the act or omission of all partners.

If you find that *SKAT has met its burden of proving* that (i) an individual defendant's trust or company entered into a partnership with a pension plan; (ii) the trust or company which entered into a partnership with a pension plan was the individual defendant's *alter ego*; (iii) the pension plan was authorized by the partnership to submit the refund claims to SKAT or acting in furtherance of the partnership business in doing so; and (iv) the pension plan is liable to SKAT for fraud, aiding and abetting fraud, negligent misrepresentation, or unjust enrichment, then you should find the individual defendant liable to the same extent as the pension plan.

36

**Authority**: 3 Fed. Jury Prac. & Instr. § 108:07 (6th ed.) (modified).

### 19.    Compensatory Damages

For any defendant you found liable for fraud, aiding and abetting fraud, or negligent misrepresentation, you must next decide the actual monetary loss SKAT sustained.  In determining the amount of damages SKAT sustained, you should consider only the actual amounts that SKAT paid in reliance on the defendant's false statement or false statements in the plans' refund claims.

For each defendant whom you found liable for fraud, aiding and abetting fraud or negligent misrepresentation, the compensatory damages question in the verdict form asks you what is the dollar amount of the damages SKAT sustained as a result of the plans' refund claims?  It is a plan-by-plan question.  In answering it, you should identify in the space provided next to each plan the amount <u>of damages SKAT sustained as a result of</u> that plan's refund claims only *SKAT met its burden of proving that it paid for that plan's refund claims in reliance on defendant's false statement or false statements in the plan's refund claim*.  In determining the amount of damages SKAT sustained as a result of a plan's refund claims, you should not apportion or otherwise reduce that amount based on any perceived level or percentage of fault of any particular defendant.  <u>You should also determine the amount of damages without regard for whether you believe that SKAT had any fault in paying the refund claims.</u>

<u>**Authority:**</u>  N.Y. Pattern Jury Instr.—Civil 3:20 (modified); N.Y. Pattern Jury Instr.—Civil 3:21 (modified).

20.    **Unjust Enrichment Damages**

For each defendant you found liable for unjust enrichment, you must decide the amount by which the defendant was unjustly enriched.  <u>If an individual defendant was the sole participant in a pension plan, the individual defendant was enriched at least to the same extent as the pension plan.</u>  The unjust enrichment damages question on the special verdict form asks you to decide, for each defendant, what is the dollar amount of damages, *if any*, SKAT is entitled to receive from the defendant?  It is a plan-by-plan question.  In answering it, you should identify in the space provided next to each plan the amount by which *SKAT proved* the defendant was unjustly enriched from that plan's refund claims only.

**Authority:** N.Y. Pattern Jury Instr.—Civil 4:2 (modified); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908 (S.D.N.Y. June 30, 2021).

21.    **Punitive Damages**

In addition to compensatory damages, SKAT seeks punitive damages against each defendant for its fraud and aiding abetting fraud claims.  If you do not find any defendant liable for fraud or aiding and abetting fraud, you do not need to consider imposing punitive damages.  However, for any defendant whom you find liable for fraud or aiding and abetting fraud, you may, but you are not required to, award SKAT punitive damages if you find that *SKAT proved that* the fraudulent acts of the defendant that caused SKAT's injury were <u>gross</u> *malicious* and involved a high moral culpability, or if *SKAT proved that* the fraudulent acts complained of rise to such a level of wanton dishonesty as to imply a criminal indifference to civil obligations.  The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant for <u>gross, wanton, or willful</u> *malicious or wanton* fraud or other morally culpable conduct, and thereby to discourage the defendant and others from acting in a similar way in the future.

It's SKAT's burden to prove that punitive damages are warranted by a preponderance of the evidence.  The punitive damages section of the verdict form asks you to decide two questions.  Whether you find that SKAT is entitled to punitive damages from the defendant, and if so, in what amount?  *An act is malicious when it is done deliberately with knowledge of the plaintiff's rights, and with the intent to interfere with those rights.* An act is wanton when it demonstrates conscious indifference and utter disregard of its effect upon the rights of others.  If you find that *SKAT did not meet its burden of proving that*  the defendant's actions were <u>not</u> <u>gross</u> *malicious* or <u>did not</u> involved a high moral culpability, or *that the* <u>if the</u> fraudulent acts complained of do not rise to such a level of wanton dishonesty as to imply a criminal indifference to civil obligations, you will answer the first question "no" and need proceed no further in your deliberations on this issue.  On the other hand, if you find that *SKAT met its burden of proving that* the defendant's actions were <u>gross</u> *malicious* and involved a high moral

40

culpability, or *that the* <u>if the</u> fraudulent acts complained of rise to such a level of wanton dishonesty as to imply a criminal indifference to civil obligations, you will answer "yes" and may award SKAT punitive damages.

If you decide to award SKAT punitive damages, you will have to decide the amount of punitive damages to award. In arriving at your decision as to the amount of punitive damages, you should consider the nature and reprehensibility of what the defendant did. That would include the character of the wrongdoing, such as whether the defendant's conduct demonstrated an indifference to, or a reckless disregard of, the rights of others, whether the acts were done with an improper motive or vindictiveness, whether the act or acts constituted outrageous intentional misconduct, how long the conduct went on, defendant's awareness of what harm the conduct caused or was likely to cause, any concealment or covering up of the wrongdoing, how often the defendant had committed similar acts of this type in the past and the actual and potential harm created by the defendant's conduct.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by SKAT, and to the compensatory damages you awarded SKAT. The reprehensibility of the defendant's conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by SKAT and the compensatory damages you have awarded SKAT.

**<u>Authority</u>**: N.Y. Pattern Jury Instr.—Civil 2:278, 3:20 (modified).

## 22.    Danish Dividend Withholding Tax

During the period relevant to this case, Danish law *in certain circumstances* required Danish companies to withhold as tax 27 percent of any dividend paid to <u>foreign</u> shareholders and pay the withheld tax to SKAT.

**Authority**:  Danish Withholding Tax Act § 65.[11]

---

11. Defendants object to the language SKAT proposes, which cannot be found in the cited statute.  In relevant part, that law provides:  "In connection with any adoption or resolution of payment or crediting of dividends on shares or units in companies or associations, etc. covered by § 1, para. 1, no. 1, 2, 2e, 2h, 4 and 5a of the Danish Corporation Tax Act, the relevant company or association, etc. shall withhold 27% of the total dividend, unless otherwise provided for in para. 3 or according to the paras. 4-6."

23.     **U.S.-Denmark Tax Treaty**

Under a treaty between the United States and Denmark, Denmark may tax dividends paid by Danish companies to U.S. residents, generally at the rate of 15 percent.  However, the treaty provides that such dividends paid by a Danish company to a U.S. resident shall not be taxed by Denmark if the beneficial owner of the dividends is, as relevant here, a qualified U.S. pension fund, provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise.[12]  I will instruct you shortly on what it means for dividends to be derived from the carrying on of a business by a pension fund or through an associated enterprise.

Under a treaty between the United States and Denmark, Denmark may tax dividends paid by Danish companies to U.S. residents, generally at the rate of 15 percent.  However, the treaty provides that such dividends paid by a Danish company to a U.S. resident shall not be taxed by Denmark if the beneficial owner of the dividends is, as relevant here, a U.S. pension fund, whether or not exempt from tax, organized under the laws of the U.S. to provide a pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan, provided that more than 50 percent of the person's beneficiaries, members or participants are individuals resident in

---

12  Defendants object to the characterization of the Treaty, which is incompatible with the actual language of the Treaty.  As amended in 2006, the Treaty provides that dividends "shall not be taxed . . . if the beneficial owner is . . . **a pension fund**, which is described in subparagraph e) of paragraph 2 of Article 22 (Limitation of Benefits), that is a resident of the other Contracting State, provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise."  Art 10(3)(c).  Article 22, paragraph 2(e) defines a pension fund as follows:  "a legal person, **whether or not exempt from tax**, organized under the laws of a Contracting State to provide a pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan, provided that more than 50 percent of the person's beneficiaries, members or participants  are individuals resident in either Contracting State."  *See, e.g.*, https://www.irs.gov/pub/irs-trty/denmarkprot06.pdf.

Accordingly, the only question for the jury is whether the pension funds were "organized under the laws of" the United States and meet the other criteria set forth in Article 22(2)(e), none of which require the plan to be "qualified" as a matter of U.S. law.

43

*either the U.S. or Denmark, and further provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise.[13]  The business of making or managing investments for the resident's (or resident entity's) own account will be considered to be a trade or business only when part of banking, insurance or securities activities conducted by a bank, an insurance company, or a registered securities dealer.   Such activities conducted by a person or entity other than a bank, insurance company or registered securities dealer will not be considered to be the conduct of an active trade or business.[14]*

**Authority**: United States Tax Convention with Denmark, Art. 10*, Art. 22 (both as amended by 2006 Protocol); Technical Explanation of the 2006 Protocol Amending the US Denmark Treaty.*

---

13. For the same reasons as stated in its objection to the defendants' proposed language in instruction no. 9, as stated in footnote 2 above, and in SKAT's Memorandum of Law in Opposition to Defendants' and Third-Party Defendants' Motion for Summary Judgment (ECF No. 831 at 8 n.6 & 44 n.40), SKAT objects to this instruction, which mischaracterizes the requirements under the Treaty by misstating that a U.S. "pension fund" does not need to be tax-exempt under U.S. law to be entitled to a refund of tax withheld on Danish dividend income.

   Defendants note that SKAT's objection invites legal error.  SKAT's position that the Treaty requires a U.S. pension fund to be tax-exempt relies on language that was **deleted** from the Technical Explanation of the Treaty in 2006.  Thus, SKAT cites to the Technical Explanation of the Treaty that was effective January 2001 (Pilgaard Decl. Ex. 41 (cited by SKAT in ECF No. 831 at 44 n.40).  That Technical Explanation stated with respect to Article 22 of the Treaty that the reference to "pension plans" was indeed a reference to "tax-exempt organizations."  But in 2006, the United States and Denmark amended the Treaty, and the Treasury Department released a revised Technical Explanation, stating that the revised protocol "**replaces Article 22**." https://home.treasury.gov/system/files/131/Treaty-Denmark-Protocol-TE-5-2-2006.pdf.  The 2006 Technical Explanation goes on to state that with respect to the "pensions" discussed in Article 22 of the Treaty, "a legal person, **whether tax exempt or not,** that is organized under the laws of either Contracting State . . . will qualify for benefits." *Id.*  The language SKAT invokes from the 2000 Technical Explanation does not appear in the 2006 Technical Explanation, and the Treaty as amended in 2006 is the governing law.

14. SKAT objects to the instruction in this sentence and the prior sentence, which are irrelevant to the issues to be determined by the jury, unsupported by authority for the meaning used by defendants, and is likely to confuse and mislead the jury in its inconsistency with SKAT's proposed instruction regarding unrelated business taxable income at instruction no. 30.

   Defendants note that SKAT's objection conflates the concept of "unrelated business taxable income" with a phrase from the US-Denmark Treaty in the absence of any authority to suggest that the language in the Treaty was referring to UBTI.  Neither of the Technical Explanations to the Treaty (from 2001 or 2006) refer to "unrelated business taxable income," so there is no basis in the law to instruct jurors that a violation of the UBTI provisions of the US Tax Code has anything to do with the requirements of the Treaty.

24.    **Danish Law on Share Ownership**

I am now going to instruct you on Danish law on share ownership and dividends.  As I've mentioned, SKAT alleges that the refund claims represented falsely that the pension plans were entitled to tax refunds.  SKAT asserts these representations were false because the pension plans didn't own the shares or receive the dividends identified in the refund claims, and as a result did not have tax withheld on any such dividends.[15]

Under Danish law, a "share" is a notional relative stake in the capital of a company.  A "share" in a Danish company is the asset owned by a shareholder.  The shares of all publicly traded Danish companies are dematerialized.  That means the shares do not exist in physical form.  In other words, there are no physical share certificates.  Rather, the shares of all publicly traded Danish companies are issued as book-entries in accounts at VP Securities, which is the Danish central securities depository.[16]  As such, ownership of a share in a Danish company means ownership of the share as a book-entry in the systems of VP Securities.  The owner of a share, however, is not necessarily the account holder at VP Securities in whose account the shares are booked.  Rather, the account holder at VP Securities may hold shares as a custodian on behalf of its customers, who may in turn also be holding the shares on behalf of their customers.  In those circumstances, in order to own shares, the shares must be traceable to the owner through the records of each financial institution in the chain of custodians between the owner and VP Securities.  If you find that the pension plans' custodians were not holding Danish

---

15  Defendants object to this instruction because it is not an accurate summary of the actual representations on the reclaim submissions.  SKAT asserts that the defendants misrepresented that they were the beneficial owners of the dividends.  Defendants further object because the introduction to the instruction only presents SKAT's position but does not acknowledge that Defendants assert that they were the beneficial owners of the dividends.

16  Defendants object to the references to VP Securities and the remainder of the instruction.  First, there is no requirement that an owner of a dividend also be an owner of a share.  Nor is there any requirement that "in order to own shares, the shares must be traceable to" an owner of shares registered with VP Securities.

shares traceable to an account at VP Securities on behalf of the pension plans, then you should find that the pension plans did not own the shares.[17]

**Authority:**   *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at \*8; Declaration of Foreign Law of Henning Aasmul-Olsen dated June 24, 2024, § III(E); Declaration of Foreign Law of Henning Aasmul-Olsen dated July 24, 2024, § (III); Danish Securities Trading Act, section 71, subsection 1; Jesper Lau Hansen: Værdipapirhandelsloven med kommentarer (En. The Danish Securities Trading Act with Comments), 2013, 9th ed., page 567; Note by VP Securities "Levels of segregation offered by VP SECURITIES A/S", dated as of 17 August 2017.

I am now going to instruct you on Danish law on share ownership and dividends.  As I've mentioned, SKAT alleges that the refund claims represented falsely that the pension plans were entitled to tax refunds.  SKAT asserts these representations were false because SKAT says the pension plans were not the beneficial owners of the dividends identified in the refund claims. The pension plans say they were the beneficial owners of the dividends.

Under Danish law, a "share" is a notional relative stake in the capital of a company.  A "share" in a Danish company is the asset owned by a shareholder.  The shares of all publicly traded Danish companies are dematerialized.  That means the shares do not exist in physical form. In other words, there are no physical share certificates.

The consequence of dematerialization of Danish shares is that the book entry reflecting the purchase of a security constitutes the evidence of the ownership position.  Ownership under Danish law is acquired by virtue of entering into a legally binding contract to purchase the share.[18]

---

17  This last instruction is not supported by Danish law, and is directly contradicted by the sworn testimony of Helen Sorensen, a senior employee of VP Securities, who testified that as a result of netting and internal settlement, a buyer can be the owner of shares of securities even if the custodian does not hold a single share. Sorensen Sept. 21, 2021 Tr. 77:3-7 ("Q So as a result of netting, a broker might not need to obtain any shares of a given security on any given day, correct?  A.  That is correct."); Sorensen Dec. 7, 2021 Tr. 62:8-63:17 (custodian does not need to purchase shares to settle equal and offsetting trades placed by its customers).

18.  SKAT objects to the proposed instruction in this sentence and the prior sentence on the basis that it is inconsistent with Danish law regarding the ownership of shares, for the reasons set forth in SKAT's memoranda of law on issues of disputed foreign law and choice of law, dated June 24, 2024 and July 24, 2024, and the

**_Authority:_**  *Declaration of Foreign Law of Kasper Pilgaard dated April 27, 2022, § V(A)(B); Danish Companies Act, section 47; Danish Capital Markets Act, section 66; SKAT Legal Guide C.B.2.1.6.1; SKAT Legal Guide C.B.2.1.7.2.*

---

supporting expert declarations of Mads Bryde Andersen and Henning Aasmul-Olsen (ECF Nos. 1071-73, 1111-13), and contradicts this Court's prior ruling that "[n]othing in Danish tax law supplants th[e] basic [*namo dat*] concept of Danish civil law, and therefore if a seller does not have ownership rights under Danish civil law, there is no construct in Danish tax laws that could convey or create an ownership right in a buyer." *In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at *8 (S.D.N.Y. Nov. 20, 2023) (quotation omitted).

Defendants note that Defendants' legal experts dispute SKAT's assertion, and maintain their position that the concept of *nemo dat* does not apply to transactions involving securities as a matter of Danish law (for example, as Defendants' experts have explained, short selling would be impossible if *nemo dat* applied).

### 25.    Danish Law on Transfers of Ownership of Shares

You've heard evidence that the pension plans purchased the Danish shares through executing brokers.  Under Danish law, a contract to purchase a dematerialized share is not effective to transfer ownership of the share from the seller to the buyer until the delivery of the share or the completion of other means of segregation of the share from other similar shares for the benefit of the buyer.[19]  In other words, when a buyer agrees to buy shares from a seller, ownership of the shares does not transfer from the seller to the buyer unless and until the trade is settled by delivery of the shares to the buyer or other means of segregation of the shares for the buyer.[20]

A seller who doesn't own shares and never delivers shares to the buyer cannot convey ownership of shares to a buyer.  Danish law follows the doctrine *nemo dat quod non habet*, which means "no one gives what they do not have."  Under this principle, a seller cannot convey ownership rights greater than it itself possesses.  If a seller does not have any ownership rights in a share, the seller cannot convey any ownership rights to a purported buyer.[21]  For any transfer of

---

19   While Defendants recognize that the Court has ruled that *nemo dat* does apply to the sale of securities under Danish law, Defendants preserve their objection to that ruling and note that SKAT's Legal Guide stated:  "A share has been purchased or sold on the date on which a final and binding agreement on purchase or sale is in place."  SKAT Legal Guide C.B.2.1.6.1.  SKAT's Legal Guide cited numerous decisions of the Danish courts in support of that basic proposition, which it now argues against.  *See* Kasper Pilgaard Decl. of April 27, 2022 ¶¶ 158-170.

20   *See supra* n.7.  *See also* Kasper Pilgaard Decl. of June 27, 2022, ¶¶ 97-106 (explaining that "settlement is not a prerequisite for ownership").

21   Defendants object to this instruction, which, if true, would mean that short selling would be impossible in Denmark.  In a short sale, the seller may transfer to the buyer securities the seller does not own but instead borrows from a third party.  If the buyer did not become the owner in that circumstance, then short selling would be impossible.

Moreover, the Ministry of Taxation's Reply to Early Warning confirms that a borrower of shares may sell them.  SKAT's own website has stated that a purchaser of borrowed shares is the beneficial owner of the shares.  Accordingly, whatever "nemo dat" means, it cannot mean that a purchaser of borrowed shares does not own them (or if it does, SKAT's guidance on its own website is incorrect).  Quite obviously a seller of borrowed shares does not own them, at least as of the trade date.  *See* Kasper Pilgaard Decl. of June 27, 2022, § II(B).

ownership in a Danish share to be effective, the seller must own the Danish share and ultimately deliver that share to the buyer.  If you find that the sellers from whom the defendants contend the pension plans purchased Danish shares did not own or deliver the shares to the pension plan, then I instruct you that such transactions were not effective to convey ownership of the shares to the pension plan.

**Authority**:   *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at \*8; Declaration of Foreign Law of Henning Aasmul-Olsen dated June 24, 2024, § III(E); Declaration of Foreign Law of Henning Aasmul-Olsen dated July 24, 2024, § (III); Danish Securities Trading Act, section 71, subsection 1; Jesper Lau Hansen: Værdipapirhandelsloven med kommentarer (En. The Danish Securities Trading Act with Comments), 2013, 9th ed., page 567; Note by VP Securities "Levels of segregation offered by VP SECURITIES A/S", dated as of 17 August 2017.

　　　*You've heard evidence that the pension plans purchased the Danish shares through executing brokers.  Under Danish law, a share has been purchased or sold on the date on which a final and binding agreement on purchase or sale is in place.  Ownership of shares is therefore transferred on the date on which the parties enter into a legally binding agreement, which is generally called the "trade date."  Delivery of the share as part of the transaction settlement process is not required for the transfer of ownership.[22]*

**Authority:**  Declaration of Foreign Law of Kasper Pilgaard dated April 27, 2022, § V(A)(B); SKAT Legal Guide C.B.2.1.6.1 (including cases cited); SKAT Legal Guide C.B.2.1.7.2.

---

22.  SKAT objects to the entirety of defendants' proposed instruction on the basis that it is inconsistent with Danish law regarding the ownership of shares, for the reasons set forth in SKAT's memoranda of law on issues of disputed foreign law and choice of law, dated June 24, 2024 and July 24, 2024, and the supporting expert declarations of Mads Bryde Andersen and Henning Aasmul-Olsen (ECF Nos. 1071-73, 1111-13), and contradicts this Court's prior ruling that "[n]othing in Danish tax law supplants th[e] basic [*namo dat*] concept of Danish civil law, and therefore if a seller does not have ownership rights under Danish civil law, there is no construct in Danish tax laws that could convey or create an ownership right in a buyer." *In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at \*8 (S.D.N.Y. Nov. 20, 2023) (quotation omitted).

26.    **Receipt of Dividends**

Under Danish law, a dividend is a distribution, typically in the form of cash, paid by a company to the owners of its shares.[23]  A person must be an owner of a company's shares in order to receive a dividend paid by that company.  When a Danish company issues a dividend, the payment of the dividend is made through VP Securities to the VP Securities account holders in whose accounts the company's shares are booked.[24]  If the VP Securities account holder is holding the shares on behalf of another custodian or investor, the account holder will then further distribute the dividend accordingly and so on.[25]  For a payment to qualify as a dividend, it must originate from a payment by the company that issued the shares to VP Securities.[26]  If you find that the pension plans did not own the shares, then you should find that the pension plan did not receive the associated dividend either.[27]

**Authority**:  *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *8; Declaration of Foreign Law of Henning Aasmul-Olsen dated June 24, 2024, § III(E); Declaration of Foreign Law of Henning Aasmul-Olsen dated July 24, 2024, § (III); Danish Securities Trading Act, section 71, subsection 1; Jesper Lau Hansen:

---

23  Defendants object to this instruction, which is not supported by any authority.  A dividend is not a distribution of equity; rather, dividends include "all distributions by the company to shareholders," including cash. *Danish WHT Act Sec. 65.*

24  Defendants object to this instruction, which attempts to establish facts rather than providing an instruction of law.

25  Defendants object to this instruction, which attempts to establish facts rather than providing an instruction of law.

26  Defendants object to this instruction, including because SKAT has not provided  authority supporting the proposition that a dividend compensation payment does not "qualify" as a dividend, nor is it clear what SKAT intends by the word "qualify."

27  Defendants also object to this instruction on multiple grounds.  First, it is irrelevant and misleading.  At no time is the jury going to be asked whether the pension plans "received the associated dividend."  The question for the jury is whether the defendants were the beneficial owners of dividends; not whether they received a dividend.  Second, the proposed instruction is inconsistent with the Treaty itself.  The Official Commentary to the OECD Model Convention of 2014 (which Danish courts have invoked when analyzing the law of beneficial ownership) recognizes that the beneficial owner of a dividend may not be the owner of the underlying share.  It explains that "Article 10 refers to the beneficial owner of a dividend as opposed to the owner of the shares, which may be different in some cases."

Værdipapirhandelsloven med kommentarer (En. The Danish Securities Trading Act with Comments), 2013, 9th ed., page 567; Note by VP Securities "Levels of segregation offered by VP SECURITIES A/S", dated as of 17 August 2017.

### Beneficial Ownership of Dividends

The US Denmark Tax Treaty defines the term "dividends" as "income from shares or other rights, not being debt-claims, participating in profits, as well as income that is subject to the same taxation as income from shares by the laws of the State of which the payor is a resident." This definition includes both ordinary dividends – that is, distributions paid by a company (the "issuer") to the owner of its shares—as well as dividend compensation payments—by which I mean payments that are calculated by reference to any dividend paid by an issuer.[28]

Under the US-Denmark Tax Treaty, the beneficial owner of the dividend is the person to which the dividend (including dividend compensation payment) is attributable for tax purposes under the laws of the source State.  Under Danish tax law, dividend income is attributable for tax purposes to a party who enters into a binding agreement to purchase borrowed shares before the "ex-dividend" date, and is thereafter credited with a dividend compensation payment.

A buyer who buys a share on or before the date of the Annual General Meeting at which shareholders resolve to distribute dividends is entitled to the dividends authorized at that meeting.  The "ex-dividend date" in such circumstances, i.e., the date upon which the buyer will not be entitled to a dividend, is the day after the date of the Annual General Meeting.  The buyer's entitlement to the dividend is determined on the trade date.  At the time of the book entry

---

28.  SKAT objects to this proposed instruction, which inaccurately describes Danish law regarding dividends. Under Danish law, dividends must be traceable to the dividend paid by the issuing company and do not encompass every payment that is merely "calculated by reference" to actual dividends. *See, e.g.*, Declaration of Henning Aasmul-Olsen, dated July 24, 2024, ECF No. 1113, §§ III(A)-(B).

reflecting the purchase of shares, for purposes of Danish tax law, the buyer is the beneficial owner of any dividends or dividend compensation payments associated with those shares. One need not be registered on the records of the issuer or with the central securities depository as the owner of the share to be entitled to the dividend or dividend compensation payment.

If a borrower of shares enters into an agreement to resell the shares to a third party before the ex-dividend date, the third party becomes the beneficial owner of dividends. Thus, the third party is taxed on the dividends and the third party is also entitled to receive a possible refund of dividend tax if too much dividend tax has been withheld.[29]

**_Authority_**:  *Declaration of Foreign Law of Kasper Pilgaard of April 27, 2022, § VI; SKAT website (Ex. 84 to Apr. 27, 2022 Pilgaard declaration); Danish Companies Act, ch. 11, §§ 49(a), 179(1), 180; Danish Sale of Goods Act, § 19; US Denmark Tax Treaty, Art. 10; Technical Explanation of the 2006 Protocol.*

---

29.  SKAT objects to the proposed instruction in this paragraph and the prior paragraph in its entirety on the basis that it misstates Danish law regarding dividends and is not supported by authority. The proposed instruction is misleading and risks confusing the jury into the false belief that share ownership and receipt of dividends does not require traceability to the records of the issuer or the central securities depository VP Securities, which is contrary to Danish law. *See, e.g.*, Declaration of Henning Aasmul-Olsen, dated July 24, 2024, ECF No. 1113, §§ III(A)-(B). The proposed instruction also incorrectly suggests that a contract for the purchase of shares can create by itself ownership in shares or dividends that the seller never owned. Declaration of Henning Aasmul-Olsen, dated July 24, 2024, ECF No. 1113, at § III(B) (explaining irrelevance of Section 19 of Sale of Goods Act). For the same reason, the proposed instruction is also inconsistent with this Court's prior holding regarding the *nemo dat* principle under Danish law. *See In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at *8 (S.D.N.Y. Nov. 20, 2023) (quotation omitted).

27.    **IRC – Exclusive Benefit Rule**[30]

SKAT contends that the alleged representations in the refund claims that the pension

plans were qualified plans under the Internal Revenue Code were false in four ways.[31]  In order

---

30  Defendants object to the set of instructions purportedly about the Internal Revenue Code for multiple reasons.

*First*, Defendants' compliance with the IRC is irrelevant under the Treaty, which explicitly does **not** require the pension plans to be tax exempt or to maintain at all times strict compliance with every facet of the US tax code. As amended in 2006, the Treaty provides that dividends "shall not be taxed . . . if the beneficial owner is . . . **a pension fund**, which is described in subparagraph e) of paragraph 2 of Article 22 (Limitation of Benefits), that is a resident of the other Contracting State, provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise."  Art 10(3)(c).  Article 22, paragraph 2(e) defines a pension fund as follows:  "a legal person, **whether or not exempt from tax**, organized under the laws of a Contracting State to provide a pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan, provided that more than 50 percent of the person's beneficiaries, members or participants  are individuals resident in either Contracting State."  *See, e.g.*, https://www.irs.gov/pub/irs-trty/denmarkprot06.pdf.  Accordingly, the only question for the jury is whether the pension funds were "organized under the laws of" the United States and meet the other criteria set forth in Article 22(2)(e), none of which require the plan to be "qualified" as a matter of U.S. law.

*Second*, even if the pension plans were not qualified (which they were), if they were nonetheless the beneficial owner of the dividends, then the only consequence would be that SKAT paid their refunds at too high a rate (27% versus 15%).  In that scenario, because the Plans would unquestionably be entitled to *some* refund, SKAT's claims would reduce to the argument that the refunds paid were too high, which is a claim seeking to directly enforce Denmark's tax laws, thus violating the revenue rule and presenting a nonjusticiable dispute in this forum.  *See, e.g.*, *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *6 (S.D.N.Y. Nov. 20, 2023).

*Third*, it is fundamentally unfair for SKAT to argue that the Defendant plans violated the Internal Revenue Code in the face of the fact that the IRS conducted a multi-year audit of several of the Defendant pension plans in this case, had full knowledge of the facts that SKAT now asserts constitute violations of the IRC, and issued the RJM Capital Pension Plan a "no change" letter, meaning that it had not identified any violation.  To the extent the Court is inclined to give the instructions SKAT desires, Defendants submit that opens the door to their introduction of evidence related to the IRS audit of the Defendant pension plans, and urge the Court to revisit its *in limine* ruling on that subject.

As set forth above, *see supra* n.2, SKAT objects to defendants' characterization of the treaty.  As explained in its Memorandum of Law in Opposition to Defendants' and Third-Party Defendants' Motion for Summary Judgment, the U.S. Department of Treasury's Technical Explanation to the treaty makes clear that, for the purpose of the treaty, U.S. "pension funds" "are the tax-exempt organizations described in subparagraph 1(b)(ii) of Article 4 (Residence)."  (*See* ECF No. 831 at 44 n.40.)  Further, because no shares existed, the defendant pension plans never suffered any tax and therefore were not entitled to any reclaim, rendering the revenue rule inapplicable.  *See In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308 (S.D.N.Y. 2019) (if "the defendants never in fact owned the relevant Danish stocks," then "the revenue rule would not apply because the substance of the claims would be for garden variety commercial fraud").  Finally, SKAT disagrees that SKAT's allegations that defendants violated the Internal Revenue Code, which are not new, somehow open the door to their introduction of the IRS audit evidence.  The Court should decline defendants' invitation to revisit its *in limine* ruling on the issue.

to find that this statement was false, you need only find that SKAT has established at least one of the four ways SKAT contends the statement to be false.  The first is because the plans violated the exclusive benefit rule as they did not operate for the exclusive benefit of the sponsoring entity's employees and their beneficiaries, and that they were instead maintained principally for the benefit of the various custodians and others that participated in the alleged fraud.  Defendants contend that the defendant pension plans did not violate the exclusive benefit rule and were therefore qualified plans.

Under the exclusive benefit rule, it must be impossible under the plan or trust instrument, prior to the satisfaction of all liabilities to employees, for any part of the corpus or income of the trust that funds the plan to be used for or diverted to purposes other than for the exclusive benefit of employees or their beneficiaries.  The plan must also be operated in accordance with the plan or trust instrument, such that prior to the satisfaction of all liabilities to employees, no part of the corpus or income of the trust that funds the plan may be used for or diverted to purposes other than for the exclusive benefit of employees or their beneficiaries.  The exclusive benefit rule requires that plan investments be in the best interest of growing the plan's assets and meeting the

---

As set forth above, *see supra* page 44, n.13, Defendants note that SKAT invokes language from a Technical Explanation of the Treaty that has been superseded.

31  Defendants object to this instruction because it is not relevant to any material issue and is likely to lead to significant juror confusion. A pension plan's tax-exempt status is not required under the express terms of the Treaty; accordingly, any representation about tax exempt status, whether true or false, is not material to SKAT's reliance, nor could SKAT claim to have justifiably relied on any alleged misrepresentation of this fact.

As set forth above, *see supra* page 15 n.2, SKAT objects to defendants' characterization of the treaty.  As explained in its Memorandum of Law in Opposition to Defendants' and Third-Party Defendants' Motion for Summary Judgment, the U.S. Department of Treasury's Technical Explanation to the treaty makes clear that, for the purpose of the treaty, U.S. "pension funds" "are the tax-exempt organizations described in subparagraph 1(b)(ii) of Article 4 (Residence)."  (*See* ECF No. 831 at 44 n.40.)

As set forth above, *see supra* page 15, n.2, Defendants object to SKAT's characterization of the Treaty, which relies on a Technical Explanation of the Treaty that has been superseded.

retirement benefit needs of participants.  Whether a plan has been operated for the exclusive benefit of employees and their beneficiaries is determined on the basis of all the facts and circumstances.

**Authority**: 26 U.S.C. § 401(a)(2); 26 CFR § 1.401-2; *Westchester Plastic Surgical Assocs., P.C. v. Comm'r*, 78 T.C.M. 756 (Nov. 5, 1999).

### *Pension Plan Representation[32]*

SKAT contends that the alleged representations in the refund claims that the pension plans were entitled to the benefits of the US Denmark Treaty were false.  In order to find this statement false, you need to consider whether SKAT has proven by a preponderance of the evidence that the pension plans did not constitute pension plans under the US Denmark Tax Treaty.  Again, that definition is:  a U.S. pension fund, whether or not exempt from tax, organized under the laws of the U.S. to provide a pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan, provided that more than 50 percent of the person's beneficiaries, members or participants are individuals resident in either the U.S. or Denmark, and further provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise.

**Authority**: United States Tax Convention with Denmark, Art. 10.

### *IRC – Exclusive Benefit Rule[33]*

---

32 Defendants object to any instruction about the Pension Plan representation for the reasons explained in footnotes 2 and 30.  However, if the court overrules this objection, the court should provide this instruction rather than SKAT's.

SKAT disagrees and asserts that its proposed instruction is appropriate.

33 Defendants object to any instruction about the Exclusive Benefit Rule.  However, if the court overrules this objection, the court should provide this instruction rather than SKAT's.

SKAT disagrees and asserts that its proposed instruction is appropriate.

SKAT contends that the plans were not qualified under the Internal Revenue Code because they did not operate for the exclusive benefit of the sponsoring entity's employees and their beneficiaries, and that they were instead maintained principally for the benefit of the various custodians and others that participated in the alleged fraud.  Defendants contend that the defendant pension plans were qualified and complied with all applicable law, and that plans qualified when formed do not automatically lose their qualification by virtue of arguable non-compliance with some applicable law.  Rather, disqualification requires an affirmative determination by the IRS.

Under the exclusive benefit rule, it must be impossible under the plan or trust instrument, prior to the satisfaction of all liabilities to employees, for any part of the corpus or income to be used for, or diverted to, purposes other than for the exclusive benefit of employees or their beneficiaries.  Payments to third parties do not violate the exclusive benefit rule even if arguably excessive.  Nor would a violation of the excessive benefit rule result in plan disqualification.[34]

**_Authority_**: 26 U.S.C. § 401(a)(2); Reish Reply Report § II(A).

---

34.  SKAT objects to this proposed instruction to the extent it relies on the precluded proposed testimony of Mr. Reish.  Specifically, SKAT objects to the instruction insofar as it states that "disqualification requires an affirmative determination by the IRS," "[p]ayments to third parties do not violate the exclusive benefit rule even if arguably excessive," and "[n]or would a violation of the excessive benefit rule result in plan disqualification."

### 28.    IRC – Permanency Requirement[35]

The second way that SKAT contends that the alleged representations in the refund claims that the pension plans were qualified plans under the Internal Revenue Code were false is because the plans violated the pension plan permanency requirement because their sole purpose was to serve as a vehicle for making fraudulent refund claims to SKAT and were only intended to operate for as long as the fraudulent scheme was undiscovered and ongoing.[36]  Defendants contend that the defendant pensions plans were intended to operate indefinitely and therefore did not violate the permanency requirement.

A condition that all qualified pension plans must satisfy is that the plan is intended to be a permanent rather than temporary program.  An employer may reserve the right to change or terminate a plan and to discontinue contributions thereunder.  But the abandonment of a plan for any reason other than business necessity within a few years after it has taken effect is evidence that the plan from its inception was not a bona fide program.  The permanency of the plan is determined based on all of the surrounding facts and circumstances.

**Authority**: 26 CFR 1.401-1(b)(2); IRS Revenue Ruling Rev. Rul. 69-25, 1969-1 C.B. 113.

---

35  Defendants object to the set of instructions purportedly about the Internal Revenue Code for the reasons set forth in footnotes 2 and 30.  Defendants object specifically to any instruction about the Permanency Requirement because "qualification" is not a requirement under the Treaty.  However, if the court overrules this objection, the court should provide Defendants' instruction rather than SKAT's.

SKAT disagrees and asserts that its proposed instruction is appropriate.

36  Even as a characterization of SKAT's claims, this goes too far.  There is no factual predicate to support this instruction.

SKAT asserts that evidence proffered at trial will establish the factual predicate that defendants claim does not exist.

SKAT contends that the plans were not qualified under the Internal Revenue Code because they were not intended to operate indefinitely. Defendants contend that the defendant pension plans were qualified and complied with all applicable law, and that plans qualified when formed do not automatically lose their qualification by virtue of arguable non-compliance with some applicable law. Rather, disqualification requires an affirmative determination by the IRS.

To qualify as a tax-exempt pension plan under the Internal Revenue Code, a plan must be intended to be permanent as distinguished from a temporary program. An employer may reserve the right to change or terminate a plan and to discontinue contributions thereunder. But the abandonment of a plan for any reason other than business necessity within a few years after it has taken effect is evidence that the plan from its inception was not a bona fide program. However, if a plan terminates within a few years of its initial adoption, the plan sponsor can give a valid reason for the termination to overcome the presumption that the plan was not intended to be permanent from its inception. A sponsor may also terminate a plan as a result of adverse business conditions. The permanency of the plan is determined based on all of the surrounding facts and circumstances.

**_Authority_**: 26 CFR 1.401-1(b)(2); IRM Sec. 7.12.1.3; IRS Form 5310.

### 29.    IRC – Plan Funding Requirements[37]

The third way that SKAT contends that the alleged representations in the refund claims that the pension plans were qualified plans under the Internal Revenue Code were false is because the plans violated pension plan funding requirements given that the sponsoring entities owner-employees did not conduct any trade or business, had no employees, and did not make contributions based on earned income derived from any trade or business with respect to which the pension plans were established.  Defendants contend that the defendant pension plans were properly funded and therefore were qualified plans.

Under the Internal Revenue Code, contributions are limited to a percentage of net earnings from self-employment, meaning, as a general matter, the gross income derived by an individual from any trade or business carried on by such individual.  A trust forming part of a pension plan which provides contributions or benefits for employees, some or all of whom are owner employees, are considered qualified only if, among other things, the plan provides that contributions on behalf of any owner-employee are made only with respect to the earned income of such owner-employee which is derived from the trade or business with respect to which such plan is established.

**Authority**:     26 U.S.C. §§ 401(a)(1); 401(c)(2)(a); 401(d); 1402(a).

*SKAT contends that the plans were not qualified under the Internal Revenue Code because they violated certain pension plan funding requirements.  Defendants contend that the*

---

37  Defendants object to the set of instructions purportedly about the Internal Revenue Code for the reasons set forth in footnotes 2 and 30.  Defendants object specifically to any instruction about Plan Funding Requirements. However, if the court overrules this objection, the court should provide Defendants' proposed instruction rather than SKAT's.

SKAT disagrees and asserts that its proposed instruction is appropriate.

*defendant pension plans were qualified and complied with all applicable law, and that plans qualified when formed do not automatically lose their qualification by virtue of arguable non-compliance with some applicable law.  Rather, disqualification requires an affirmative determination by the IRS.*

*Under the Internal Revenue Code, contributions are limited to a percentage of net earnings from self-employment, meaning, as a general matter, the gross income derived by an individual from any trade or business carried on by such individual.  A trust forming part of a pension plan which provides contributions or benefits for employees, some or all of whom are owner employees, are considered qualified only if, among other things, the plan provides that contributions on behalf of any owner-employee are made only with respect to the earned income of such owner-employee which is derived from the trade or business with respect to which such plan is established.  These references to "trade or business" do not require contributions to pension plans to come from profits of the trade or business.  Moreover, tax-exempt charities and governments can maintain pension plans (even though they may not be what you think of when you hear the phrase "trade or business").  Moreover, qualified plan contributions can be sourced from transfers and rollovers from other accounts.*

***Authority****:     26 U.S.C. §§ 401(a)(1); 401(c)(2)(a); 401(d); 401(a)(27); 1402(a); www.irs.gov/pub/irs-tege/rollover_chart.pdf.*

### 30.    IRC – Unrelated Business Taxable Income[38]

The fourth way that SKAT contends that the alleged representations in the refund claims that the plans were entitled to the claimed refunds were false is because any dividends the plans received derived from the carrying on of a business by the pension plan.  Defendants deny SKAT's contention.

In order to have been entitled to the claimed refunds under the U.S.-Denmark treaty, any income the pension plans received must not have been derived from the carrying on of a business by the pension plan or through an associated enterprise, which includes unrelated business taxable income.[39]  Income that is otherwise tax-exempt is treated as unrelated business taxable income if it is derived from debt-financed property.  If the defendant pension plans purchased shares using money borrowed through a stock lending transaction, any dividend income the plans received on such shares would be treated as unrelated business taxable income.

**Authority**: United States Tax Convention with Denmark, Art. 10(3); 26 U.S.C. § 512(b)(4); 26 CFR § 1.514(b)-1.

*SKAT contends that the plans were not qualified because any dividends they received were derived from the carrying on of a business by the pension plan.  Defendants contend that the defendant pension plans were qualified and complied with all applicable law, and that plans*

---

38   Defendants object to the set of instructions purportedly about the Internal Revenue Code for reasons set forth in footnotes 2 and 30. Defendants specifically object to any instruction about the Unrelated Business Taxable Income.  However, if the court overrules this objection, the court should provide Defendants' proposed instruction rather than SKAT's.

SKAT disagrees and asserts that its proposed instruction is appropriate.

39   Defendants object to this instruction, which combines the Treaty with a provision from the Internal Revenue Code.  Nothing in the Treaty or the OECD Model Tax Convention uses the language "unrelated business taxable income."  SKAT is improperly conflating unrelated concepts.

SKAT disagrees and asserts that its proposed instruction is appropriate.

*qualified when formed do not automatically lose their qualification by virtue of arguable non-compliance with some applicable law.  Rather, disqualification requires an affirmative determination by the IRS.*

*The term "unrelated business taxable income" means income from a trade or business regularly conducted by an exempt organization and not substantially related to the performance by the plan of its exempt purpose or function.  In this context, the phrase "trade or business" generally includes any activity conducted for the production of income from selling goods or performing services.  Dividends, interest, payments with respect to securities loans, and other income from investments are typically excluded in computing unrelated business taxable income.*

**Authority**: *26 U.S.C. § 512(b)(4); IRS Pub. 598*

### 31.    A Pension Plan's Investments

The Internal Revenue Code contains no specific limitations with respect to investments which may be made by the trustees of a trust, including a pension plan.  Generally, contributions may be used by the trustees to purchase any investments permitted by the trust agreement to the extent allowed by law.[40]

**Authority**:  *Treas. Reg §1.401-1(b)(5).*

---

[40]. SKAT objects to this instruction as irrelevant and confusing for the jury.

### 32. SKAT's Duty to Collect Tax[41]

SKAT is part of the Danish Ministry of Taxation, which is the government agency authorized to collect taxes on behalf of the Danish government. SKAT is obligated to pay the tax revenues and other funds that it collects to the Ministry of Finance.

With respect to dividend withholding tax, the withholding and payment of correct withholding tax to SKAT is the obligation of the company paying the dividend (the "issuer"). If SKAT determines that an issuer has under-withheld the tax due on dividends, SKAT has the power and the obligation to collect from the issuer whatever additional withholding amounts SKAT determines are due based on the information available to it. Conversely, if SKAT has collected more withholding than was due, it has an obligation to refund the over-withholding.

**Authorities**: Constitution of Denmark, § 46(2); Danish Withholding Tax Act, § 69.

---

41. SKAT objects to the inclusion of this proposed instruction in its entirety on the basis that it is irrelevant to any factual determination to be made by the jury and is likely to mislead and create confusion. There is no issue in this case concerning whether Danish companies paid too much or too little dividend withholding tax to SKAT. Nor, even if they had, would that have any relevance to SKAT's claims that defendants defrauded SKAT into paying refunds to which the pension plans were not entitled.

### 33.    IRS Form 6166

You have heard testimony about something called IRS Forms 6166.  Many U.S. treaty partners require the IRS to certify that the person claiming treaty benefits is a resident of the United States for federal tax purposes.  The IRS provides this residency certification on Form 6166, a letter of U.S. residency certification.  Form 6166 is a letter printed on U.S. Department of Treasury stationery certifying that, <u>to the best of the IRS's knowledge</u>, the individuals or entities listed are residents of the United States for purposes of the income tax laws of the United States.  The form can be used to claim income tax treaty benefits and certain other tax benefits in foreign countries.[42]

**Authorities:**    https://www.irs.gov/individuals/international-taxpayers/form-6166-certification-of-us-tax-residency

---

42.  SKAT objects to the inclusion of this proposed instruction as inappropriate for a jury instruction, namely because it is not a legal instruction.

### 34.     *Short Selling*

*You may have heard testimony about short selling.  Short selling is the sale of a security the seller does not own.  A 'short sale' in relation to a share or debt instrument means any sale of the share or debt instrument which the seller does not own at the time of entering into the agreement to sell including such a sale where at the time of entering into the agreement to sell the seller has borrowed or agreed to borrow the share or debt instrument for delivery at settlement or has another enforceable claim to be transferred the required shares, such as a futures or swaps contract.[43]*

**Authorities:**  *Regulation EU No 236/2012 Article 2, paragraph 1(b), Article 12, paragraph 1(b); Regulation EU No 827/2012, Article 5, paragraph 1(a).*

---

43. SKAT objects to this proposed instruction as inappropriate for a jury instruction.  Assuming the definition of short seller is even relevant, it is more appropriately explained to the jury through expert testimony.

**35.      Statute of Limitations**

If you found any of the defendants liable on any of SKAT's claims, you will next need to decide whether any of the defendants have established the affirmative defense that SKAT's claims are barred by the applicable statute of limitations.  In deciding whether SKAT's claims are barred by the applicable statute of limitations, you need not consider any of SKAT's claims against a particular defendant for which you did not find that defendant liable.  If you did not find any defendant liable on any of SKAT's claims, you need not consider any of the defendants' statute of limitations defenses.

The defendants assert as an affirmative defense that certain of SKAT's claims are barred by the statute of limitations.  In essence, defendants contend that SKAT filed some of its claims too late.  To establish this defense, each defendant has the burden of proving to you by a preponderance of evidence that SKAT did not bring its claims against that defendant within the time period prescribed by the applicable statute of limitations.  SKAT contends that all of its claims are timely because it sued the defendants within the applicable statute of limitations.

The applicable statute of limitations period for all of SKAT's claims is three years.  In general, the statute of limitations starts to run on the date when the plaintiff suffered the claimed injury.  However, the running of the limitations period is suspended on claims against a specific defendant if the plaintiff is unaware of its claim <u>or the defendant's role in the wrongful conduct alleged</u> *against the specific defendant*.  In such circumstances, the limitations period does not begin to run until the plaintiff knew or should have known of its claim against the defendant.  A plaintiff should have known of its claim against a defendant when the plaintiff had <u>knowledge of</u> sufficient information for a prudent person acting in its shoes to assess <u>that it had a</u> *the basis for its* claim against the specific defendant.

In this case, SKAT filed different claims against different defendants at different times and you must consider separately whether SKAT filed these claims on time. If you find that SKAT did not file a claim against a specific defendant within the statute of limitations period, it does not necessarily mean that SKAT's other claims against that defendant were not filed on time or that SKAT's claims against any other defendant were not filed on time.

The limitations period for each of SKAT's claims against each defendant begins when SKAT was first aware of its claim or should have become aware of its claim against that defendant in connection with the specific pension plan you are considering. <u>That means</u> *SKAT is considered to be aware of a claim* when SKAT had knowledge of sufficient information for a prudent person acting in its shoes to assess <u>that it had a</u> *the basis for its* claim against the specific defendant in connection with that pension plan's refund claims. *SKAT should have become aware of a claim when SKAT was in possession of sufficient information such that a prudent person acting in its shoes could have assessed the basis for its claim against the specific defendant in connection with that pension plan's refund claims. As a public authority, SKAT has a duty to investigate when it receives some information suggesting it might have a claim against a particular taxpayer. Thus, SKAT should have known of a claim when it received information indicating it should further investigate a specific defendant in connection with a particular pension plan's refund claim, even if SKAT could not have known the basis for its claim without such further investigation.*[44]

---

44. SKAT objects to the defendants' proposed language in this instruction on the basis that it misstates Danish law regarding the statute of limitations and the administrative law inquisitorial procedure, as explained in SKAT's memoranda of law on issues of disputed foreign law and choice of law, dated June 24, 2024 (ECF No. 1071, § I) and July 24, 2024 (ECF No. 1111, § II), and the supporting expert declarations of Mads Bryde Andersen (ECF Nos. 1072, 1112). The defendants' proposed language is also inconsistent with the Court's prior holding that "Danish law does not impose on SKAT a duty to make active investigations (like police investigations in criminal matters) of all facially sufficient tax refund applications it receives on a presumption that facts of relevance to the case may be hidden somewhere." *In re Customs & Tax Admin. Of the Kingdom of Denmark*

SKAT's awareness or knowledge of information that certain defendants or individuals participated in the alleged fraud against SKAT does not necessarily mean that SKAT had awareness or knowledge of information that other defendants participated in the same or similar alleged fraud.  If you find that SKAT knew or should have known only of a general fraudulent scheme at a specific time, and not of a particular defendant's involvement with the particular pension plan you are considering, the statute of limitations period did not begin to run on SKAT's claims against that defendant with respect to that particular pension plan at that time.  Similarly, if you find that SKAT knew or should have known of a particular defendant's involvement with certain pension plans' refund claims by a certain point in time, that does not necessarily mean that SKAT knew or should have known of that defendant's involvement in other plans' refund claims by that time.

Question 102 on the verdict form asks you to decide whether each defendant proved that SKAT knew or should have known before January 1, 2015, of <u>all of</u> *its basis for* its then-available claims against that defendant.  As you've heard, certain of SKAT's claims are based on refund claims it paid after January 1, 2015.  You should not consider refund claims paid after January 1, 2015 in answering this question, because those claims were not "then-available" as of January 1, 2015.  If you decide that SKAT knew or should have known of <u>all</u> *the basis for* its then-available claims against a defendant before January 1, 2015, you will answer "yes" to question 102 for that defendant.  If you decide that SKAT did not know and should not have

---

*(SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at *15 (S.D.N.Y. Nov. 20, 2023) (quotation omitted).

Defendants disagree that Defendants' proposed language misstates Danish law or imputes an obligation on SKAT to "make active investigations (like police investigations in criminal matters) of all facially sufficient tax refund applications it receives" in violation of this Court's prior holding. Rather, this instruction properly informs the jury of SKAT's duty to investigate when it receives information suggesting it might have a claim against a particular taxpayer.

known of <u>all of</u> *the basis for* its then-available claims against a defendant before January 1, 2015, you will answer "no" to question 102 for that defendant.

*Question 103 on the verdict form asks whether the defendants proved by a preponderance of the evidence that the parties to the tolling agreement agreed to a term that required SKAT to file all claims against Covered Parties on or before March 1, 2019. If you find the parties agreed to such a term, you will answer "yes" on the line provided.  If you find the parties did not agree to such a term, you will answer "no" on the line provided.  Where the parties enter into a written contract, the scope of the parties' agreement is determined by the plain language of the agreement, and by considering their relationship, what they said, what they did, and all of the surrounding circumstances. A party's secret intent has no bearing; only the intent indicated by their words and conduct may be considered.*[45]

Question 104 on the verdict form asks whether Mr. Klugman proved that SKAT knew or should have known of <u>all</u> *the basis for* its then-available claims against him before May 3, 2015. If you decide that SKAT knew or should have known of <u>all</u> *the basis for* its then-available claims against Mr. Klugman before May 3, 2015, you will answer "yes" to question 104.  If you decide that SKAT did not know and should not have known of <u>all of</u> *the basis for* its then-available claims against Mr. Klugman before May 3, 2015, you will answer "no" to question 104.

---

[45]  SKAT objects to the defendants' proposed instruction regarding Question 103 on the verdict form and asserts that interpretation of the tolling agreement is a matter of law for the Court's, not the jury's, determination. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439 (2d Cir. 1995) (finding district court erred in submitting meaning of unambiguous contract to jury); *Szafran v. Sandata Techs., Inc.*, 2010 WL 11530516, at *3 (E.D.N.Y. Feb. 3, 2010) ("Thus, the Court finds that the term 'revenues received' in the Consulting Agreement is unambiguous as a matter of law and the jury should not have been permitted to interpret this language."); *see also Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) (explaining that meaning of ambiguous contract  is decided by court if there is no extrinsic evidence as to agreement's meaning).

To the extent that the Court finds that the interpretation of the tolling agreement is appropriate for jury determination, SKAT further objects to the defendants' proposed instruction as incomplete as to the law regarding contract interpretation.

Question 105 on the verdict form asks whether Mr. Klugman proved that SKAT knew or should have known of all its then-available claims against him before February 18, 2016. If you decide that SKAT knew or should have known of all its then-available claims against Mr. Klugman before February 18, 2016, you will answer "yes" to question 105. If you decide that SKAT did not know and should not have known of all of its then-available claims against Mr. Klugman before February 18, 2016, you will answer "no" to question 105.

Question 106 on the verdict form asks whether Mr. Klugman proved that SKAT knew or should have known of all *the basis for* its then-available claims against him before April 26, 2017. If you decide that SKAT knew or should have known of all *the basis for* its then-available claims against Mr. Klugman before April 26, 2017, you will answer "yes" to question 106. If you decide that SKAT did not know and should not have known of all of *the basis for* its then-available claims against Mr. Klugman before April 26, 2017, you will answer "no" to question 106.

**Authority:** 3 Fed. Jury Prac. & Instr. § 107:01 (modified); N.Y. CPLR § 202; Declaration of Professor Andersen, dated June 24, 2024; Declaration of Professor Andersen, dated July 24, 2024; Danish Limitations Act ("Forældelsesloven"), no. 552 of 6 June 2007, § 3(2); *In re Skat Tax Refund Scheme Litig.*, 18-md-2865 (LAK), 2023 WL 8039623, at *14-15 (S.D.N.Y. Nov. 20, 2023) *Declaration of Anders Ørgaard, dated November 22, 2021 (Case No. 1:18-md-02865, Dkt. No. 1100-8); Declaration of Anders Ørgaard, dated June 24, 2022 (Case No. 1:18-md-02865, Dkt. No. 1100-16); Authority: N.Y. Pattern Jury Instructions—Civil 4:1.1 (modified).*

36.    **Comparative Negligence**

If you found any defendant liable on SKAT's negligent misrepresentation claim, you must next consider whether SKAT was also negligent and whether SKAT's negligence was a substantial factor in bringing about its injury. The burden is on the defendant to prove by a preponderance of the evidence that SKAT was negligent and that its negligence was a substantial factor in bringing about its injury. If you find that SKAT was not negligent, or if negligent, that its negligence was not a substantial factor in bringing about its injury, you must find that SKAT was not at fault. If, however, you find that SKAT was negligent and that its negligence was a substantial factor in bringing about its injury, you must then apportion fault between SKAT, the defendants, and the non-party, Sanjay Shah, listed in the verdict form. You are to apportion fault only in connection with SKAT's negligent misrepresentation claims. Apportionment of fault does not apply to SKAT's other claims for fraud, aiding and abetting fraud, and unjust enrichment.

Weighing all the facts and circumstances, you must consider the total fault, that is, the fault of both SKAT, the defendants, and Sanjay Shah, and determine what percentage of fault is chargeable to each. In your verdict, you will state the percentages you find. The total of those percentages must equal one hundred percent. For example, if you should find that all parties were equally at fault you would assign each party the same percentage of fault. If you should find that one party was more at fault, you would assign a higher percentage to that party and a lower percentage to the others, with the total of the percentages equaling one hundred percent. I remind you that this exercise of apportionment of fault applies only to SKAT's negligent misrepresentation claims.

Question 113 on the verdict form asks you to decide whether defendants proved that SKAT was negligent in making payments to the defendants' pension plans. If you find that

SKAT was negligent, Question 114 asked you to decide whether defendants proved that SKAT's negligence was a substantial factor in bringing about its own injuries.  If you answer "yes" to question 114, question 115 asks you to assign a percentage of fault to SKAT, each defendant, and Sanjay Shah.

**Authority:** N.Y. Pattern Jury Instr.—Civil  2:36, 2:55.

### 37.    Assumption of Risk

If you found any defendant liable on SKAT's negligent misrepresentation claim, you must also consider whether SKAT assumed the risk causing its injury.  The law provides that where the defendant owes a duty of reasonable care to the plaintiff, but the plaintiff voluntarily engages in conduct involving a risk of harm and the plaintiff knows and fully understands, or should have known and fully understood, the risk of harm, the plaintiff's damages must be reduced by the extent to which those damages were caused by the plaintiff's own conduct.

The defendants in this trial contend that SKAT knew and fully understood, or should have known and fully understood, that it might be injured by granting the refunds at issue due to warning signs that SKAT was improperly paying refunds and that, therefore, SKAT assumed the risk of injury.  SKAT contends that it did not know and should not have known the risk of injury because defendants misrepresented facts to it in making their applications for refunds.

If you find that SKAT knew and fully understood, or should have known and fully understood, the risk of injury, then you will find that SKAT assumed the risk of injury, and you must consider to what degree that assumption of risk contributed to the injury.  You must then apportion fault between SKAT, the defendants, and the non-party, Sanjay Shah, listed in the verdict form.  You are to apportion fault only in connection with SKAT's negligent misrepresentation claims.  Apportionment of fault does not apply to SKAT's other claims for fraud, aiding and abetting fraud, and unjust enrichment.  It is the defendants' burden to prove by a preponderance of the evidence that SKAT assumed the risk of injury.[46]

**_Authority:_** _N.Y. Pattern Jury Instr.—Civil  2:55 (modified)._

---

46.  SKAT objects to this proposed instruction given that there is no evidentiary basis supporting the defense.

### 38.    *Failure to Mitigate*

*A plaintiff is not permitted to recover damages that could have been avoided by using means which a reasonably prudent person would have used to cure or reduce the injury.  That is, a party that has been damaged has a duty to use reasonable means under all the circumstances to lessen or avoid its damages.  The defendants contend that SKAT failed to minimize damages by continuing to pay refunds despite being on notice that it might be paying duplicative or otherwise improper refunds.  SKAT contends that this defense is inapplicable because its damages were caused by defendants' misconduct and it was not on notice to discontinue paying refunds to the defendants prior to when it stopped paying those refunds.*

*While the plaintiff has the obligation to mitigate its damages, the defendants bear the burden to demonstrate that the plaintiff could, with reasonable effort, have so mitigated its damages.  If you find that SKAT failed to do so, you must then find what percentage of the damages you would award to SKAT should be deducted based on SKAT's failure to mitigate.*[47]

**Authority**: *N.Y. Pattern Jury Instr.—Civil  2:325 (modified); 13 Bus. & Com. Litig. Fed. Cts. § 139:62 (5th ed.) (modified); Leo v. Long Island R.R. Co., 307 F.R.D. 314, 333 (S.D.N.Y. 2015).*

---

47.  SKAT objects to this proposed instruction given that there is no evidentiary basis supporting the defense.

### 39.    *Laches*

The defendants assert as an affirmative defense that certain of SKAT's claims are barred by the doctrine of laches.  In certain circumstances, the law prevents a plaintiff from recovering damages where the plaintiff inexcusably and unreasonably delayed in bringing its claims and the defendant was prejudiced by the plaintiff's unreasonable delay.  You may find in favor of defendants on the laches defense even if you found that SKAT brought its claims within the period of the statute of limitations.  If you find that SKAT brought its claims within the statute of limitations, the burden is on the defendant to show that the doctrine of laches applies.  If you find that SKAT brought its claims after the statutory time period expired, the burden is on SKAT to prove that the circumstances make it inequitable to apply laches. [48]

**<u>Authority</u>**: *Connecticut Gen. Life Ins. Co. v. Biohealth Labs., Inc.*, 988 F.3d 127, 135 (2d Cir. 2021); *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019); *Backyard Brine, Inc. v. Backyard Food Co., LLC*, 2024 WL 815249, at *4 (S.D.N.Y. Feb. 26, 2024) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996))

---

48.  SKAT objects to this proposed instruction given that latches is not applicable to SKAT's claims because SKAT does not seek any equitable relief.  *See Reeps v. BMW of N. Am., LLC*, 94 A.D.3d 475, 476 (1st Dept. 2012) ("the defense of laches is unavailable . . . since this is an action at law, in which no form of equitable relief is sought"). SKAT further objects to this proposed instruction given there is no factual predicate supporting the defense.

Defendants disagree that the defense of laches is not applicable to SKAT's claims. *See Bennigson v. Solomon R. Guggenheim Found*., 214 N.Y.S.3d 628, 642 (N.Y. Sup. Ct. 2024) (applying the doctrines of laches to a claim of unjust enrichment); *Connecticut Gen. Life Ins. Co. v. Biohealth Labs., Inc*., 988 F.3d 127 (2d Cir. 2021) (construing CT law) (confirming the availability of laches defenses to unjust enrichment claims). Defendants further disagree that there is insufficient evidentiary basis to charge the jury on a laches defense.

### 40.    *Revenue Rule*

The Revenue Rule prevents courts in the United States from enforcing the tax judgments or claims of another country.  Whether a plaintiff's claims implicate the Revenue Rule depends on not the form but the substance of the claims and whether they are, either directly or indirectly, seeking to recover tax revenues.

The defendants contend that SKAT's claims are barred by the Revenue Rule because SKAT is an entity of the Danish government trying to collect damages based on alleged violation of Danish tax laws.  Specifically, defendants contend that Danish tax law determines whether defendants had "beneficial ownership" of shares in Danish companies entitling defendants to tax refunds from SKAT.  The defendants contend that SKAT's claims are for tax fraud or otherwise seek to recover for injuries relating to lost tax revenue.

SKAT contends that the Revenue Rule is inapplicable.  SKAT contends that the question of beneficial ownership is irrelevant because the defendants and their custodians never owned the shares at issue at all.  SKAT also contends that determining that the defendants did not own the shares would merely involve recognizing, rather than enforcing, Danish tax law.  SKAT contends that its claims relate not to tax fraud but a general fraud (or other misconduct) in which it, the alleged victim, happens to be a tax authority.

Question 116 on the verdict form asks you whether SKAT's claims seek to recover taxes that any defendant owed to Denmark.  If you determine that the facts establish that the losses SKAT claims to have suffered represent taxes that any defendant owed to Denmark, you should answer Question 116 "yes."  Otherwise, you should answer Question 116 "no."[49]

---

49.  SKAT objects to this proposed instruction given that the legal question of whether the revenue rule applies is not an appropriate question for the jury.

**_Authority_**: *Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 130–31 (2d Cir. 2001); *In re Skat Tax Refund Scheme Litig.*, 18-md-2865 (LAK), 2023 WL 8039623, at *16–27 (S.D.N.Y. Nov. 20, 2023).

**41.    New York General Obligations Law § 15-108**

Question 117 asks you to decide—for only the plans listed in that question on the verdict form and for only the trading that took place for those plans between 2012 and 2014—the percentage of fault for SKAT's injury of six individuals: Sanjay Shah/Solo Capital, Richard Markowitz, John van Merkensteijn, Jerome Lhote, Matthew Stein, and Michael Ben-Jacob. During the trial, evidence may have been presented to show that Sanjay Shah, Jerome Lhote, Matthew Stein, and/or Michael Ben-Jacob, who are not parties to this trial, was responsible to some degree for SKAT's injury. Do not speculate why or draw any conclusion from the fact that those individuals are not parties to this trial.

In deciding the total fault each of these six individuals bears, you will weigh the degree of the fault of each of them. Once you have considered all the facts and circumstances, you will decide what is a fair share of the fault for each individual for bringing about SKAT's injury. On the verdict form, you will state the percentage of fault for each of them. The total of those percentages must equal one hundred percent.

Question 117A asks you to decide—for all the plans listed in that question on the verdict form—the percentage of fault for SKAT's injury of five individuals: Sanjay Shah/Solo Capital, Richard Markowitz, John van Merkensteijn, Robert Klugman and Michael Ben-Jacob. During the trial, evidence may have been presented to show that Sanjay Shah, and/or Michael Ben-Jacob, who are not parties to this trial, were responsible to some degree for SKAT's injury. Do not speculate why or draw any conclusion from the fact that those individuals are not parties to this trial.

In deciding the total fault each of these five individuals bears, you will weigh the degree of the fault of each of them. Once you have considered all the facts and circumstances, you will decide what is a fair share of the fault for each individual for bringing about SKAT's injury. On

the verdict form, you will state the percentage of fault for each of them.  The total of those percentages must equal one hundred percent.

**Authority:** N.Y. Gen. Oblig. Law § 15-108; N.Y. Pattern Jury Instr.—Civil  2:275 (modified); N.Y. Pattern Jury Instr.—Civil  2:275A (modified); N.Y. Pattern Jury Instr.—Civil  2:275C (modified).

### III.    Closing Instructions

#### 42.    Duty to Deliberate

You are about to retire to deliberate on your verdict.  It is your job as jurors to consult with one another and to deliberate with the goal of reaching an agreement.  Each of you must decide for yourself the questions I have posed, but you should do so only after considering the case with your fellow jurors, all of you, and you should not hesitate to change an opinion when convinced that it was mistaken.

Your answers to each question that you are called upon to answer must be unanimous, but you are not required to give up your honest convictions concerning the effect or weight of the evidence simply for returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and come to the conclusion which, in your good conscience, appears to be in accordance with the truth.

**Authority:** 4 Modern Fed. Jury Inst.—Civil, ¶ 78.01 Inst. 78-3; *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023)

### 43.    Notes

Some of you have been taking notes during the trial.  A word on notes.  Each of you, of course, may use them for your individual purposes.  You may consult your own notes during deliberations.  But any notes that you may have taken are not to be relied upon as a substitute for the collective memory of the entire jury.  Your notes should be used as memory aids, but should not be given precedence over your independent recollections of the evidence.  If you didn't take notes, you should not be influenced by other people's notes.  I emphasize that notes are not entitled to any greater weight than the recollection or impression of each juror as to what the testimony or the evidence may have been.  Again, each of you are obliged to make your own decision about the proper answer to each question based on your consideration of the evidence and your collective discussions.  Nobody should surrender conscientious beliefs simply to reach a unanimous verdict.

**Authority:** *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023)

### 44.    Copy of Instructions

As I have told you, you're going to have copies of these instructions in writing.  You're going to find that the instructions contain some legal citations here and there.  They are included to aid the lawyers trying this case and me.  They are my way of noting where the principles of law I'm charging you come from, and letting the lawyers know what I'm relying upon.  You need to ignore the legal citations.

**Authority:** *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023).

**45.    Quorum Requirement**

You're not to discuss the case unless you're all present.  Four or five of you together is not a jury.  It's simply a gathering of people who, by this time I hope, are fond of each other and friendly, at least.  Only when you're all present are you a jury and only then may you deliberate.

**Authority:** *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023).

**46.    Foreperson**

When you retire, you should elect one member of the jury as the foreperson.  That individual will preside over the deliberations and speak for you here in open court.  The foreperson's views on the evidence or the verdict should not be given any greater or lesser weight than those of all the jurors.  The foreperson will send out any notes, and when there is a verdict, that individual will tell the officer there is a verdict.  Don't tell the officer what the verdict is.  I'll come to that in a minute.

**Authority:** 4 Modern Fed. Jury Inst.—Civil, ¶ 78.01 Inst. 78-5; *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023).

47.    **Reaching a Verdict**

As I've mentioned, it's important to follow the instructions on the verdict form and the instructions about how to come to a verdict. Please don't add anything on the verdict form that it doesn't call for. The only marks that should be on the verdict form, apart from your signatures, are where the spaces provide for a mark. If you provide additional comments on the verdict form, I will just have to send you back to deliberate further and do it without them. That is the practical effect of providing additional comments.

Once you've reached a unanimous verdict, you'll record your answers on one copy of the verdict form. The foreperson should fill it out, each of you will sign it at the bottom, and as I've indicated, the foreperson will tell the officer a verdict has been reached. Don't give the verdict form to the officer. Put it in an envelope. The foreperson will bring it into court, and you will hold it until I ask for it.

You must all be in agreement with the verdict when it is announced in open court. Once it is announced in open court by the foreperson and officially recorded, it ordinarily can't be revoked or changed.

**Authority:** *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023).

### 48.    Questions on Instructions

If, in the course of your deliberations, you have questions about any of these instructions, the foreperson should formulate a note.  The text of the note must be acceptable to all of you, and the foreperson will then send the note out in a sealed envelope through the officer.

The pages and line numbers on the written copies of the instructions that you will receive in the jury room are so that you can indicate the pages and line numbers of the passage you're asking questions about.  It's important, if possible, that you indicate what pages and line numbers you're asking about.  The procedure when I get a note is that I share the note with the lawyers, and the lawyers have an opportunity to be heard on the question of how the note ought to be answered.  If everybody agrees, then that's the answer.  If everybody disagrees, I decide what the answer is.  And the more precisely we all understand what the question is about and what you're asking, the better able we are to answer responsively and the more quickly we're going to be able to do it, because we would have eliminated the stage of an argument about what it means.

**Authority:** *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023).

### 49.    Right to See Exhibits and Hear Testimony

You will be given a laptop containing all exhibits entered into evidence.  The laptop should have nothing on it except the exhibits.  It should have no ability to communicate in or out.  If it's not in that condition, you need to let me know right away.

If there is any testimony you want to hear again, the procedure about that is to send out a note in the same way I just instructed.  Tell us the subject, the witness or witnesses, whether it's direct examination or cross examination, and so on.  In other words, be as specific as you possibly can because we have to come to a view on what should be read back or provided in writing to you.  The faster we can do that, the better for everybody.

**Authority:** 4 Modern Fed. Jury Inst.—Civil, ¶ 78.01 Inst. 78-1; *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023).

**50.    Juror Oath**

I remind you all that you took an oath to render judgment fairly and impartially, without prejudice or sympathy and without fear, based solely on the evidence in the case and the law I've given to you, and I know you're going to do that.

**Authority:** *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, 21-cv-01317 (LAK), ECF No. 622 (S.D.N.Y. Mar. 15, 2023).