WILMERHALE

December 11, 2024

Peter G. Neiman
+1 212 295 6487 (t)
+1 212 230 8888 (f)
peter.neiman@wilmerhale.com

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re: *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

  We write on behalf of Plaintiff Skatteforvaltningen ("SKAT") and the Trial One Defendants to provide a status update on Defendants' proposed summary exhibits.

### Trial One Defendants' Proposed Summary Exhibits

  The parties met and conferred on November 25 regarding Defendants' proposed summary exhibits. As with SKAT's proposed exhibits, on which the parties provided an update to the Court on November 25 (ECF #1242), the parties believe that disputed issues with respect to many of these exhibits can potentially be resolved via continued discussion and proposed language changes, and therefore do not need to be raised to the Court's attention at this time. SKAT does have objections to certain proposed exhibits, however, that it does not anticipate can be resolved absent the Court's intervention.

### Defendants' Proposed "Summary of Fees Related to Div-Arb Trading Paid to Arnold Porter Kaye Scholer LLP" Exhibit

  SKAT's Position:

  SKAT objects to Defendants' exhibit titled "Summary of Fees Related to Div-Arb Trading Paid to Arnold Porter Kaye Scholer LLP," which defendants included in their November 21, 2024 letter to the Court. This exhibit purports to be a tally of hours and fees invoiced by Kaye Scholer for any and all legal work relating to dividend arbitrage investments. Thus, it "attempt[s] to introduce a raft of evidence and argument" about Kaye Scholer's involvement, despite the fact that the Court determined "that Kaye Scholer's advice to defendants regarding U.S. law has minimal, if any, probative value" and "risks suggesting to the jury that, because

December 11, 2024
Page 2

lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspect of events." *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2024 WL 4696085, at *8 (S.D.N.Y. Nov. 6, 2024) (ECF #1233) (quotation omitted). The information in the proposed exhibit is therefore largely irrelevant and its admission would be unduly prejudicial pursuant to Federal Rule of Evidence 403.

Defendants intend to argue that the exhibit is more than minimally relevant because it demonstrates Defendants' good faith in seeking U.S. law advice regarding plan qualification. In fact, however, the exhibit seeks to bring into evidence advice relating to non-Danish dividend arbitrage transactions, such as "Attention to matters needed for Irish/German dividend deal," "review of material re: German investment," "Call with John re: German Ex-Dividend transactions and structuring with charity," and "conferences with M. Ben-Jacob regarding German 'ex-Dividend' structure,"[1] which the Court has already deemed to be inadmissible. (*Id.* at *19.) From this proposed exhibit, a jury could not determine what, if any, portion of the hours and fees invoiced to Defendants actually relates to Defendants' supposed good faith efforts to ensure the accuracy of their representations regarding the plans' qualified status. Accordingly, the exhibit is misleading and should be excluded "because it raises an inference unsupported by the underlying data." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2018 WL 8996333, at *1 (S.D.N.Y. Mar. 5, 2018).

None of Defendants arguments address the crucial point that the exhibit seeks to summarize material that the Court has already excluded from evidence. Indeed, Defendants' attempts to justify the relevance of the exhibit – that it demonstrates that Defendants spent a lot of money on lawyers, including on non-Danish advice, and that those expenditures somehow reflect their belief that actual trading in Danish shares occurred – run directly counter to the Court's ruling that Defendants may not suggest that advice relating to German and Belgian strategies is "probative of their belief that the Danish trading strategy was legal."[2] *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2024 WL 4696085, at *20 (S.D.N.Y. Nov. 6, 2024) (ECF #1233). Even assuming certain pieces of information in the proposed exhibit might be admissible, the exhibit indisputably includes

---

[1] WH_MDL_00355007 at WH_MDL_00355017, 37.

[2] SKAT disagrees with Defendants' interpretation of the Court's November 6, 2024 Memorandum Opinion and their suggestion that they can introduce the fact they received legal advice regarding German and Belgian transactions while simultaneously being barred from discussing the content of that advice. Such a reading seems specifically designed to confuse the jury.

WILMERHALE

December 11, 2024
Page 3

evidence that has already been barred by the Court. The introduction of the exhibit will therefore mislead and confuse the jury, rather than assist it.[3]

SKAT also objects to the proposed exhibit because each underlying invoice is hearsay and because there is no foundation for the accuracy of the billing entries, much less that each entry relates to a specific topic relevant to this trial. Defendants seek to offer the exhibit for the truth of the purported fact that all of the entries are related to dividend arbitrage transactions, apparently on the basis of how Kaye Scholer initially titled a billing matter for its client. But that is an insufficient basis to establish such an inference, particularly because many of the billing entries lack sufficient detail to link them to any subject matter at all (*see, e.g.*, "Telephone conferences with M. Stein and J. van Merkensteijn," "Received background information from Louis Tuchman," "Conference call client; office conference L. Tuchman and review of material," "Review of material," "Telcon with Matt Stein," and "Call with Matt and Jerome regarding potential planning.").[4]

Defendants' Position:

Defendants disagree with SKAT's objections and believe that the proposed exhibit (attached as Exhibit A) presents relevant information that will help the factfinder and streamline the presentation of evidence. The exhibit is a summary of invoices received by (and paid by) Defendants for legal services provided by Kaye Scholer and related to the transactions at issue in this litigation, including the formation, management, and compliance of the pension plans at issue in the trial. Rather than presenting "a raft of evidence and argument," this distills years of

---

[3] Defendants also suggest that the proposed exhibit is relevant to SKAT's damages arising from its unjust enrichment claims. SKAT disputes that the Defendants' payment of legal fees – including fees incurred before any purported Danish trading occurred or any relevant reclaim applications were submitted to SKAT – should be offset against their proceeds in calculating the Defendants' unjust enrichment. *See* Restatement (Third) of Restitution § 49 cmt. c ("Unjust enrichment resulting from a direct payment by the claimant to the recipient ordinarily leads to a *prima facie* liability in the amount of the payment."). The Restatement's explanation that the amount of unjust enrichment from a money payment may be measured by "the resulting increase in the defendant's net assets" accounts for cases where, for instance, "the claimant's payment of $100 to a third party reduces the amount of the defendant's enforceable obligations by $90." *Id*. In arguing that the measure of unjust enrichment is their net "gain," as opposed to the amount of money they received from SKAT's refund payments, Defendants confuse the measure of enrichment for a money payment with the measure of enrichment for "[w]hen restitution is intended to strip the defendant of a wrongful gain," in which case "the standard of liability is not the value of the benefit conferred but the amount of the profit wrongfully obtained." Restatement (Third) of Restitution § 49 (4). Where such a disgorgement remedy is sought, "credits or deductions" may be recognized, "as reason and fairness dictate," "[i]n determining net profit." Restatement (Third) of Restitution § 51. But, here, SKAT is not seeking disgorgement of Defendants' net profits from their use of SKAT's money wrongfully obtained, but rather simply the amount by which they were unjustly enriched by SKAT's payments in the first place.

[4] WH_MDL_00355007 at WH_MDL_00355022, 032, 038, 051, 054, 116.

WilmerHale

December 11, 2024
Page 4

Kaye Scholer invoices into a single document and provides a straightforward means of offering testimony relating to the volume and timing of legal advice Defendants received. The exhibit contains no information about the substance of legal advice provided. Rather, it shows how much money Defendants spent obtaining advice from Kaye Scholer. The exhibit is therefore proper under Rule 1006—it will summarize voluminous records that cannot be examined easily in court; the underlying records were all produced during discovery; and the underlying records are themselves admissible. *See United States Securities and Exchange Commission v. Qin*, 2024 WL 1342803, at *7 (S.D.N.Y. Mar. 29, 2024). SKAT's arguments to the contrary—based on relevance and hearsay concerns—are unpersuasive.

The information summarized in the exhibit is relevant for multiple reasons. First, a central theme of SKAT's case is the claim that Defendants obtained something for nothing and should have known that was too good to be true. The exhibit helps rebut that thesis, by summarizing some of the very substantial expenses Defendants actually incurred over the years in pursuing dividend arbitrage opportunities. *See In re Aratana Terapeutics Inc. Securities Litigation*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018) (defendants' incurring millions of dollars in costs hiring a sales team and developing inventory suggested absence of fraudulent intent).

Second, another important theme of SKAT's case is that Solo was not really engaged in trading, and that Defendants knew or should have known it. That Defendants spent substantial sums obtaining legal advice about multiple aspects of the trading helps to rebut that claim about Defendants' mental state. *See In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 179 (S.D.N.Y. 2023) (voluntarily hiring counsel to assure compliance with the law is in tension with knowledge that activity is unlawful). A jury could appropriately conclude that someone who knew transactions were not real would not bother getting expensive legal advice about multiple issues related to that trading. And a jury could also find that someone who spent millions of dollars getting legal advice about multiple aspects of the transaction was careful, not negligent.

Third, many of the specific issues on which Kaye Scholer advised are highly relevant to SKAT's claim that Defendants made knowingly false statements. SKAT asserts that advice on U.S. law would have only "minimal" probative value, citing the Court's ruling on SKAT's motion to preclude evidence of advice on the issue of beneficial ownership. But SKAT has now proposed jury instructions that contain pages of guidance about *U.S.* law relating to a separate issue, the qualification of pension plans and the applicable U.S. statutes and regulations. Kaye Scholer advised Defendants on the precise U.S. law issues SKAT now says compel the conclusion that the plans lied to SKAT when they told SKAT that they were entitled to the benefits of the U.S.-Denmark Tax Treaty. Defendants are entitled to supplement direct evidence of the specific advice received on these topics—introduced via witness testimony and other documents —with evidence of how much money they were paying Kaye Scholer for their advice and how much legal time was spent on that advice. Had Defendants paid Kaye Scholer only a few thousand dollars for a few hours of legal time, SKAT would surely argue that this was not a

WILMERHALE

December 11, 2024
Page 5

real effort to get legal advice, but rather a veneer to hide wrongful conduct. Defendants are entitled to show that the opposite is true.

Fourth, the sums Defendants paid to Kaye Scholer are also relevant to damages, particularly on unjust enrichment. SKAT's calculation of how much Defendants "netted" from the dividend arbitrage trading gives Defendants no credit for the millions of dollars in legal fees incurred. A jury assessing unjust enrichment could appropriately decline to order Defendants to repay money they no longer have, because it went to pay necessary transaction expenses like legal fees. Defendants are therefore entitled to prove up their legal expenses.[5]

SKAT claims that some of the legal expenses reflected on the exhibit are irrelevant because they relate to non-Danish transactions. Legal advice related to Belgium and Germany is included in the exhibit. The legal advice Kaye Scholer provided related to Belgium is *directly* relevant to the Danish transactions; Kaye Scholer advised regarding various agreements involving the pension plans, Solo, certain brokers, and certain stock loan counterparties.[6] The Danish transactions (which began a few months after the Belgian transactions) involved many of the same agreements and counterparties, and Kaye Scholer's advice, originally provided in connection with the Belgian transactions, also applied to and was therefore relied on in connection with the Danish transactions. And the amounts spent on Kaye Scholer's advice related to the German transactions is also relevant for multiple reasons. For example, in connection with unjust enrichment, the jury could appropriately view the Danish transactions as the result of many years of work and expense by Defendants in understanding and implementing dividend arbitrage transactions. In deciding where the equities lie, and how much, if any, of

---

[5] SKAT's objection to consideration of legal fees in calculating unjust enrichment is not well taken. SKAT does not cite a single case, relying instead on its interpretation of general principles from the restatement. But section 49(2) of the Restatement (Third) of Restitution, which SKAT says applies, states in full, "Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets, whichever is less." As discussed above, the legal fees are one part of assessing the amount of Defendants' gain and the extent to which, if any, that gain was, in fact, unjust. Nothing in the restatement requires a jury to ignore a defendant's expenses in deciding how much the defendant has been "unjustly" enriched. The jury's job in assessing unjust enrichment is, as the New York cases explain, to consider all the facts and circumstances, not an artificially truncated version of events that overstates the benefit obtained. *See e.g.*, *Paramount Film Distrib., Corp. v. State of N.Y.*, 30 N.Y.2d 415, 421 (1972).

[6] SKAT's assertion that admitting summaries of payments to Kaye Scholer about Belgian and German transactions would conflict with the Court's prior ruling is wrong. The Court's prior ruling precluded admission of the *substance* of advice provided by two foreign law firms about German and Belgian law, but permitted evidence of the *fact* that Solo worked with these law firms, because such evidence was relevant to defendants' mental state. *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2024 WL 4696085, at *20 (S.D.N.Y. Nov. 6, 2024) (ECF #1233). The Court also recognized that evidence of Kaye Scholer's role was relevant to show defendants "did not act alone." *Id.* at 23. The exhibit SKAT now challenges aligns perfectly with that ruling. It does not reflect the substance of any advice Kaye Scholer provided, but properly shows the extent of its work.

WilmerHale

December 11, 2024
Page 6

Defendants' enrichment was "unjust," the jury is entitled to consider the amount of time and money Defendants spent developing their knowledge base, which would include the amount spent on legal advice from Kaye Scholer not just in connection with their Danish transactions, but in connection with earlier transactions in Germany and Belgium as well.

Finally, SKAT complains that the underlying billing records are hearsay. But legal bills are a clear example of a business record, *Gucci America, Inc. v. Rebecca Gold Enterprises*, 798 F. Supp. 177, 180 (S.D.N.Y. 1992), and if necessary, Defendants will obtain appropriate certifications under Federal Rule of Evidence 902(11) confirming that.

**Defendants' Proposed Exhibits Regarding Statute of Limitations Arguments**

SKAT's Position:

Defendants have also produced to SKAT multiple proposed Rule 1006 exhibits relating to their statute of limitations arguments. Defendants have indicated that these exhibits, which were not included in Defendants' November 21, 2024 letter to the Court, are intended to provide jurors with the means to calculate SKAT's damages with respect to various claims if Defendants prevail on their statute of limitations arguments. It is SKAT's position that, to the extent any factual questions related to statute of limitations defenses are considered by the jury, it is then for the Court to apply the law to the jury's findings and determine the claims for which SKAT can recover damages.[7]

Defendants' Position:

Defendants did not supply those exhibits to the Court because they are derivative of SKAT's exhibits, which remain subject to the parties' negotiation. SKAT is suggesting that the jury will benefit from its own summary exhibits in order to award damages if it prevails on its claims, but that only the Court (and not the jury) should engage in a mathematical exercise if Defendants prevail on their affirmative defenses. That is illogical. If the jury determines that certain of SKAT's claims are untimely, it is well within the province of the jury to decide the extent of damages to impose based on its own factual findings. Defendants' summary exhibits are designed to make this task less cumbersome for the jury by starting with SKAT's own damages summary exhibits and subtracting from them any claims that would be untimely under the Defendants' theories. In other words, if the jury finds SKAT's claims untimely, they would

---

[7] Defendant Robert Klugman has produced a related exhibit which categorizes and color codes proceeds he received according to the year the relevant Complaint against him was filed by SKAT. In addition to this exhibit improperly intruding on matters properly reserved for the Court, it is SKAT's position that this document contains argument and is more properly categorized as a demonstrative exhibit.

WilmerHale

December 11, 2024
Page 7

be armed with a summary exhibit showing precisely the extent to which SKAT's claims (and the damages they are seeking) would be unaffected by that finding.[8]

### Defendants' Proposed "Defense Sample Trades (Grayed Out)" Exhibit

SKAT's Position:

SKAT also objects to certain proposed exhibits relating to purported trading, each of which was included in Defendants' November 21, 2024 letter to the Court. One of these is the "Defense Sample Trades (Grayed Out)" exhibit, which, as the title indicates, grays out trades the Defendants intend to argue they were not privy to and therefore did not have knowledge of. It is SKAT's position that this presentation is argumentative and not appropriate for a summary exhibit. *See, e.g., UPS Store, Inc. v. Hagan*, No. 14-cv-1210 (WHP), 2017 WL 3309721, at *5 (S.D.N.Y. Aug. 2, 2017) ("[G]reat care must be taken to ensure that the proposed summary contains no annotation or suggestion, even inferential, that may be considered argumentative.").

Defendants' Position:

Defendants do not believe SKAT's objection is well-founded. The exhibits at issue present each and every transaction associated with any of the trades at issue (unlike SKAT's summary exhibits, which reflect only portions of the transactions). The grayed out columns will help the jury understand which transactions Defendants actually participated in, as opposed to transactions that Solo conducted or facilitated and involved only non-parties to this trial. Whether Defendants participated in those transactions is a fact, not an argument. The gray highlighting is therefore not argumentative (indeed, it is perhaps the most boring of colors defendants could have selected), and certainly no more argumentative than SKAT's own summary exhibits of the trading which, as discussed above, illustrate only selected portions of the transactions. Defendants could do the same thing, creating "summary exhibits" that show only the transactions they actually participated in. But again, Defendants have chosen to show the complete picture, while at the same time indicating a difference between the transactions to which they were parties and transactions that did not involve the plans. SKAT's objection should be overruled.

---

[8] The summary exhibit proposed by Mr. Klugman meets the standards of Rule 1006(a) as it conveniently summarizes for the jury undisputed dates (by year) contained in roughly 30 separate voluminous court pleadings which would otherwise be used to establish the year in which SKAT filed various of its complaints against Mr. Klugman. If SKAT has an objection to the typography or colors used in the proposed exhibit, Mr. Klugman suggests that any such objection may be addressed through a meet-and-confer process.

WilmerHale

December 11, 2024
Page 8

### Defendants' Proposed Exhibits of Purported RJM Capital Pension Plan Trades

SKAT's Position:

Finally, SKAT also objects to the two proposed exhibits that contain information regarding purported trades by the RJM Capital Pension Plan in 2013 and 2014. One of these two documents was included in substantially the same form as a chart in the December 31, 2021 Report of Defendant expert Emre Carr, and one of SKAT's experts challenged the presentation and accuracy of the calculations contained in the chart in his rebuttal report. (*See* Rebuttal Report of Graham Wade at ¶¶ 76 to 94.) The other proposed exhibit follows the same format and has the same flaws related to its presentation and accuracy. Both of these proposed exhibits represent expert analyses rather than non-argumentative summaries of voluminous records.

Neither of these documents are "summaries of voluminous materials" as contemplated by Rule 1006. Instead, each presents conclusions by describing what the defendants claim to be the "Net Profit After Expenses" that the defendants' expert calculated for a single plan in connection with a specific purported trade and citations to the handful of documents supporting Carr's calculations. The defendants' suggestion that SKAT should simply cross-examine Carr and present other calculations through its own expert misses the point—regardless of whether an expert may be permitted to present certain calculations, the defendants' proposed summary exhibits do not meet the requirements under Rule 1006 and should not be treated as evidence pursuant to that rule. *Cf. U.S. v. Dolney*, 2005 WL 2129169, at *4 (E.D.N.Y. Sept. 1, 2005) ("The reason that pedagogical devices are not admitted as evidence is that, unlike exhibits admitted under Fed. R. Evid. 1006, they do not summarize evidence too voluminous to be effectively presented to the jury. . .").

Defendants' Position:

Defendants fundamentally disagree. These slides show the profit and costs associated with specific trades based on the review of numerous documents related to the underlying transactions. These are basic numbers that are not argumentative, and the fact that Defendants' expert would lay the proper foundation to support their admission is not a basis to exclude them from the record. Nor did SKAT's expert actually quarrel with the numbers presented in the Carr report; instead, he presented a competing calculation based upon a single account statement from Solo. Mr. Wade is welcome to present his own calculations during his testimony, and SKAT is free to cross-examine Dr. Carr about why his calculations are different from Solo's. But that debate does not transform a document that recounts gains, losses, fees, and costs readily ascertainable from the review of contemporaneous records into something that is argumentative or otherwise inadmissible. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 830 F. App'x 669, 670 (2d Cir. 2020) (summary order) (no error in admitting summary exhibits prepared by the Trustee's expert). SKAT's reliance on the *Dolney* case is totally misplaced—in that case, a party

WILMERHALE

December 11, 2024
Page 9

wished to introduce a "glossary of securities terms," which were a "pedagogical device[] … governed *not by* Rule 1006 but by Rule 611(a)." 2005 WL 2129169, at *4.

Respectfully Submitted,

*/s/ Peter G. Neiman*

Peter G. Neiman