# Exhibit 2

# OPUS2

Skatteforvaltningen v Solo Capital Partners LLP & Others

Day 9MT

April 30, 2024

Opus 2 - Official Court Reporters

Phone: 020 3008 6619
Email: transcripts@opus2.com
Website: https://www.opus2.com

#### Page 9

1      that.
2  MS BOMPAS: Thank you, my Lord.
3  MR JUSTICE ANDREW BAKER: Yes.
4  MS BOMPAS: With that, I would like to call Mr Ekstrand as
5      SKAT's first witness. As your Lordship will recall
6      pursuant to paragraph 15 and 16 of the December PTR
7      order, which is at {C/347/1} for the transcript. I'm
8      not sure we need to bring it up. We have permission to
9      call an interpreter for Mr Ekstrand insofar as
10     translation assistance may be necessary, so with the
11     court's assistance I would also like to ask our
12     translator, Ms Abildager, to confirm the translations
13     when ——
14 MR JUSTICE ANDREW BAKER: In the normal way we will swear or
15     affirm our interpreter first, but can I just clarify
16     with you first, Ms Bompas, in the case of Mr Ekstrand,
17     is the intention that he will do his best giving
18     evidence in English but may call on translation from
19     time to time or is he preferring that we have
20     a traditionally fully interpreted examination?
21 MS BOMPAS: My understanding is Mr Ekstrand is content to do
22     his best in English but obviously he has already
23     explained that longer answers or more technical answers
24     he will require a translation on because ——
25 MR JUSTICE ANDREW BAKER: Thank you very much. So if we can

#### Page 10

1      swear or affirm Madam Interpreter and then Mr Ekstrand.
2      Thank you very much.
3            THE INTERPRETER (affirmed)
4            MR CHRISTIAN BADEN EKSTRAND (affirmed)
5  MR JUSTICE ANDREW BAKER: Thank you very much.
6          Do have a seat, both. Thank you very much. May
7      I just give this explanation to you, Mr Ekstrand.
8      Ms Bompas has said that you feel content to try to give
9      your evidence in English mostly; is that right?
10 A. (In English). Yes, I will try to do so.
11 MR JUSTICE ANDREW BAKER: Very good. Please do not try if
12     it becomes hard. You have the use of the interpreter if
13     you need her, all right?
14 A. Yes.
15 MR JUSTICE ANDREW BAKER: What I will say, though, is that
16     if you feel a need for interpretation, please indicate
17     that and what we will then do is ask Madam Interpreter
18     to translate for you the whole question. You can then
19     give your answer fully in Danish and she can translate
20     it back to us. Do you understand?
21 A. Yes.
22 MR JUSTICE ANDREW BAKER: That is an easier process than
23     from time to time getting part of your answer in
24     English, part of it in Danish. That potentially becomes
25     more confusing, all right. So if you need

#### Page 11

1      interpretation, either for the question or just for your
2      answer to make sure it is precise, just indicate and
3      then we will have the question translated fully, if you
4      need it, or you can give your full answer in Danish and
5      we will have that translated, okay?
6  A. Yes, my Lord. Do you want me to state from time to time
7      when I need to answer in Danish, I have to say I need to
8      answer in Danish?
9  MR JUSTICE ANDREW BAKER: Exactly so. Just indicate that
10     you would like to answer in Danish and we will then take
11     your answer in Danish and Madam Interpreter will
12     interpret it for us. If it is at the stage of the
13     question and you would like that to be translated, again
14     just say, "May I have that translated please", and
15     Madam Interpreter will give you the translation. Thank
16     you very much.
17         Yes, Ms Bompas.
18            Examination—in—chief by MS BOMPAS
19 MS BOMPAS: Thank you.
20         Mr Ekstrand, you should have a folder on the desk in
21     front of you and if I could ask you to turn —— there
22     should be a tab 6 in that folder. For those of us using
23     Opus, Mr EPE has beaten me on that {U/6/1}. On the
24     first page of the tab, do you have U/6/1 on the bottom
25     right—hand corner? Just to make sure we are all on the

#### Page 12

1      same document.
2  A. Yes.
3  Q. Thank you. Can I ask you to page {U/6/3} of this
4      document. Is this your first witness statement in the
5      case?
6  A. Yes.
7  Q. And can I —— is your name and business address
8      accurately recorded?
9  A. Yes.
10 Q. If we go on to page {U/6/4}, paragraph 6, and which, on
11     the EPE screen if we can have page 6 on the left and
12     page {U/6/35} on the right, which is the English and
13     Danish. Thank you. I believe there is a small
14     correction you wanted to make to paragraph 6?
15 A. Yes, that's correct.
16 Q. Can you explain to the court what that correction is?
17 A. Yes. I just need to add that I also have testified for
18     the Danish court in the Bech—Bruun case.
19 Q. Thank you. Subject to that, that correction, is your
20     witness statement correct?
21 A. Yes.
22 Q. And so if we can go to page {U/6/23} of the document,
23     can you confirm that that is your signature?
24 A. I can confirm that, yes.
25 Q. Thank you very much. And then if we can turn to tab

## Page 53

1  that any of those overpayments went to HOOPP?
2  A. I'm not aware if HOOPP is present in this exercise,
3  because we of course —— we know we have payout to HOOPP,
4  so I will assume, but I don't know, that HOOPP are not
5  present in this figure. But as I say before, this is
6  a SØIK document. It is their investigation. They have
7  typed the numbers, I have not. So it is difficult for
8  me to say whether HOOPP is in the numbers or out, but
9  I assume that they won't be, because this is concerning
10 the case and HOOPP is not in this case.
11 Q. Mr Ekstrand, how do SKAT's supposed assertions of fraud
12 and unjust enrichment align with the reality that SØIK
13 would ultimately identify overpayments related to only
14 seven shares?
15 A. Could you please translate?
16 MR JUSTICE ANDREW BAKER: Mr Jain, I'm not sure I'm going to
17 require the witness to answer that question, because it
18 presently seems to me that you have answered your own
19 question by explaining what column 7 shows.
20    If I have understood correctly, column 7 is an
21 analysis of the amount by which ultimately totals paid
22 out exceeded totals collected in, but simply a different
23 comparison to the question whether all or it may be some
24 much bigger proportion of the amount paid out in refunds
25 was refunds that people were not entitled to.

## Page 54

1  MR JAIN: So, my Lord, the point I was going to —— was
2  trying to make, which I can move to, was if the claim is
3  that SKAT was defrauded of 12 billion Danish krone, if
4  that holds, shouldn't that amount be reflected in this
5  chart detailing overpayments?
6  A. Just to be clear, I don't think that you can put it that
7  way because we have stated that we have paid out
8  12.7 billion to fraudsters. That is not what this table
9  is showing. This shows from my point of view something
10 completely different. This table is showing where we
11 have paid out more than we have collected. That doesn't
12 mean that every —— all the numbers are correct, so
13 I don't think you can make that comparison.
14 Q. Thank you, Mr Ekstrand.
15    In the event that the trading of the US pension
16 plans is deemed insufficient to warrant a refund, does
17 the unjust enrichment allegation against those US
18 pension plans then pertain to shareholders who may have
19 been legitimately eligible for refund but failed to
20 submit a claim, rather than a claim SKAT would have the
21 right to assert?
22 MR JUSTICE ANDREW BAKER: Mr Jain, that is a question of
23 law. It may be in the first instance a question of
24 Danish law rather than English law, but I'm not sure it
25 is a question for this witness.

## Page 55

1  MR JAIN: I understand, my Lord.
2     Mr Ekstrand, does SKAT possess information regarding
3  the number of shareholders who failed to submit refund
4  applications despite being eligible for refunds?
5  A. No, I don't think so.
6  Q. Thank you. My next question relates to the content of
7  the emails received by SKAT in 2015 from
8  Mr Michael Amstrup. The first mail, on June 16th,
9  alerted SKAT in reference to withholding tax for the
10 pretence of ownership evolving from the circulation of
11 shares via stock lending. Did you have knowledge about
12 withholding tax at that time?
13 A. No.
14 Q. Did you have knowledge about stock lending at that time?
15 A. No.
16 Q. I read in paragraph 37.1 of your witness statement
17 {U/6/14} in English and {U/6/44} in English,
18 paragraph 37.1, there is a translation, "Refund
19 guidelines". I will not attempt to say it in Danish.
20 Is that correct?
21 A. Yes.
22 Q. You also state that you have referred to these
23 guidelines earlier, but I have no such earlier statement
24 in your witness statement. You don't need to explain
25 this, but can you explain to the court what these refund

## Page 56

1  guidelines are?
2  A. The refund guidelines are the way that you are
3  processing an application for a refund. At that point
4  of time there were no written guidelines. The
5  guidelines were, so to speak, in the mind of Sven
6  because he was the one who was processing and handling
7  all the applications. I think that Jeanette was present
8  at the meeting because she has been working with these
9  guidelines because according to SIR you need to have
10 written guidelines, we would only have, so to speak,
11 practical guidelines because the people who was working
12 in that area knew how to proceed and handle the
13 applications.
14    So that is what this is about. And because she has
15 been working together with Sven and the others before
16 this meeting attended, that is why she was present,
17 because we had to talk about —— especially for me,
18 I need to learn about the process because at that point
19 in time I have no knowledge about this, as I also stated
20 before. So that is why.
21 Q. Thank you. Could you remind the court when these
22 guidelines were written down?
23 A. Yes. I guess the guidelines are written down some time
24 in 2015.
25 Q. Thank you.