UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to case nos.: 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01895; 19-cv-01904; 19-cv-01869; 19-cv-01922; 19-cv-01870; 19-cv-01791; 19-cv-01792; 19-cv-01926; 19-cv-01868; 19-cv-01929; 19-cv-01806; 19-cv-01906; 19-cv-01808; 18-cv-04833; 19-cv-01898; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01815; 19-cv-01924; 19-cv-10713; 19-cv-01866; 19-cv-01794; 19-cv-01865; 19-cv-01798; 19-cv-01800; 19-cv-01788; 19-cv-01928; 19-cv-01803; 19-cv-01801; 19-cv-01894; 19-cv-01810; 19-cv-01809; 19-cv-01871; 19-cv-01813; 19-cv-01930; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 18-cv-07828; 18-cv-07827; 18-cv-07824; 18-cv-07829; 18-cv-04434 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANTS' MEMORANDUM OF LAW TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING ALLEGED PENSION PLAN MISREPRESENTATIONS**

## TABLE OF CONTENTS

LEGAL STANDARD ................................................................................................................ 3
ARGUMENT .............................................................................................................................. 3
      A.      Rule 403 Bars Admission Of The Alleged "Tax-Exempt" Misrepresentation ....... 3
CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Park W. Radiology v. CareCore Nat'l LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009).......................................................................................9

*Tirado v. Shutt*,
   2015 WL 6866265 (S.D.N.Y. Nov. 9, 2015)...........................................................................10

*United States Football League v. National Football League*,
   842 F.2d 1335 (2d Cir. 1988)...................................................................................................10

**Rules**

Fed. R. Evid. 402 ............................................................................................................................3

Fed. R. Evid. 403 ..............................................................................................................3, 8, 9, 10

Fed. R. Evid. 404 ..........................................................................................................................10

**Other Authorities**

*Skatteforvaltningen v. Loggerhead Services LLC Roth 401(K) Plan et al.*,
   No. 09-cv-1806-LAK (S.D.N.Y.) .........................................................................................2, 6

At the final pretrial conference on December 16, 2024, the Court invited the parties to submit briefs on whether the jury should be charged on SKAT's theory that Defendants misrepresented the tax-exempt status of their pension plans and, if not, whether evidence of that alleged misrepresentation should be excluded. On December 22, 2024, SKAT informed Defendants that it had decided not to pursue the allegations that the Defendants falsely stated that the plans were qualified under Section 401(a) of the Internal Revenue Code (the "Code"). SKAT reported its decision to the Court on December 23, 2024.

SKAT's decision was sensible, as any misrepresentation theory based on plan qualification fails as a matter of law because it conflicts with the plain language of the relevant treaty and, in any event, is barred by the revenue rule. *See* Letter from P. Neiman to Judge L. Kaplan, December 23, 2024. The result is that SKAT's case contracted from two distinct theories of falsity to a single-issue case: all that remains is SKAT's theory that the plans never owned Danish dividends because of Solo Capital's conduct.

When this Court asked SKAT to provide an updated estimate of the duration of this trial, on January 3, 2025, SKAT maintained that its case-in-chief would last exactly as long as it had before SKAT dropped one of its two theories. As SKAT put it, while it would no longer be seeking to have the jury instructed on its theory relating to the qualified status of the pension plans, in its view, the evidence and testimony related to plan qualification would still be relevant because it was "part and parcel" of the Defendants' purported scheme. SKAT has already indicated that as one of its first witnesses, it will call third-party plan trustee Perry Lerner, and seek to play dozens of pages of excerpts from his deposition, introducing more than 50 exhibits along the way, apparently to prove that Lerner's company and pension plan were set up for purposes of engaging in the trading, that he knew little of the details of the trading, and that most of the profits of the

trading went to others. These facts might be relevant to exploring the qualifications of Lerner's pension plan under the Code. But they have nothing at all to do with whether the plans owned dividends or any other relevant issue.

SKAT's approach makes no sense. Before abandoning its theory that the pension plans were not qualified under U.S. law, SKAT intended to offer evidence that the plans did not operate for the exclusive benefit of the sponsoring entity's employees and their beneficiaries; that the plans violated the permanency requirement; that the plans violated certain funding requirements; and that any dividends the plans received were not derived from the plans' carrying on of a business. *See, e.g.*, ECF No. 1246 at 53-62 (proposed jury instructions). For example, SKAT alleged in its Complaint that Lerner's pension plan misrepresented its status as "a qualified pension plan" because "it did not operate for the exclusive benefit of the sponsoring entity's employees and their beneficiaries" on the grounds that the plan "was maintained principally for the benefit of its custodians . . . [and] the Partner Defendants" because "the plan . . . directed or permitted the transfer of the large majority of the illicit proceeds of the scheme to these other individuals and entities." *Skatteforvaltningen v. Loggerhead Services LLC Roth 401(K) Plan et al.*, No. 09-cv-1806-LAK, ECF No. 60 ¶ 46 (Apr. 20, 2020) (Amended Complaint). Now, even though SKAT has abandoned this argument, SKAT apparently still intends to offer all the same evidence even though none of this has any relevance as a matter of law to the issue of ownership. Having abandoned the legal theory that made this evidence relevant, SKAT must necessarily leave the evidence and argument it previously intended to offer on the cutting room floor.

SKAT's position is also egregiously unfair. SKAT is attempting to have its cake—by rightly abandoning an argument that is legally deficient—and eat it too—by nonetheless presenting all evidence and argument that supported the abandoned argument based on its assertion that it's

2

nonetheless probative of fraud. This approach is not only wasteful of the Court's and the jury's time and attention, but prejudicial to the Defendants because the alleged conduct implies wrongdoing under U.S. tax law, and the jury will lack the benefit of any legal framework for how to evaluate this set of evidence, given SKAT's withdrawal of the corresponding jury instructions. Because SKAT's legal theory was improper and has been abandoned, the evidence SKAT developed to support that theory is irrelevant, distracting, and prejudicial, and the Court should exclude it.

## LEGAL STANDARD

Rule 402 of the Federal Rules of Evidence provides that "[r]elevant evidence is admissible" unless prohibited by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Evidence which is not relevant is not admissible. *Id*. Under Rule 403 of the Federal Rules of Evidence, a court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury…." Fed. R. Evid. 403.

## ARGUMENT

### A.   Rule 403 Bars Admission Of The Alleged "Tax-Exempt" Misrepresentation

SKAT appears to believe that even though it is not entitled to seek a verdict based on alleged misrepresentations about tax-exempt status, it is entitled nonetheless to attempt to introduce all the evidence and argument it previously intended to offer to prove the misrepresentations because, the argument goes, all of this somehow would be relevant to something else, perhaps including the Defendants' *mens rea*. That cannot be correct.

There is no legitimate reason for the jury to consider evidence and argument that would have been relevant to the now irrelevant representations as to the plans' qualified status. Among other things:

- Defendants did not make the statements about tax-exempt status in question, the U.S. Internal Revenue Service did.

- The IRS's statements were caveated, and undeniably true.

- The IRS provided the caveated, true statements based on its own review of each relevant plan's tax returns and/or foundational documents.

- Defendants had no reason to question the accuracy of the IRS's statements, having hired professionals to form their pension plans and having received specific advice from expert U.S. counsel at Kaye Scholer, who identified, addressed, and resolved many complex pension law issues and advised from beginning to end that Defendants "by definition" had qualified plans and that the transactions "worked."

And with the question of whether the plans were truly qualified no longer at issue, there is no relevance to the facts relating to plan qualification. Critically, the reclaim application itself—a one page form—does not ask for any information about the tax status of the applicant. The applicant is required to provide evidence of residence in the United States, and the typical way that is done is by attaching a one-page letter from the IRS known as an IRS Form 6166. *See* Ex. PX306 at SKAT_MDL_001_59519 (IRS letter dated Mar. 18, 2013). Until December 22, 2024, SKAT

claimed that this IRS form—accompanied by each reclaim request—falsely stated that the plan submitting the request was tax-exempt.[1]

To obtain a Form 6166, the applicant must submit to the IRS a Form 8802 Application For United States Residence Certification.  *See* Ex. DX3720.  That form requires the applicant to check a box indicating the kind of entity it is.  One of the options is "Employee benefit plan/trust."  Where that box was checked, the IRS could review the pension plan's most recent tax return (IRS Form 5500) or if none had yet been filed, would typically request the pension plan's foundational documents.

If those materials passed muster, the IRS would then provide the Form 6166, which, when provided for a pension plan, recites on the IRS's letterhead and above the signature of an IRS employee: "I certify that, to the best of our knowledge, the above named entity is a trust forming part of a pension … plan … which is exempt from U.S. taxation … and is a resident of the United States of America for purposes of U.S. taxation."  There can be no serious dispute that this was a true statement of the IRS's belief at the time.  Defendants had no control over the content of the IRS's statement.  And the materials that the IRS relied upon—tax returns filed by the plans, and/or the plans' foundational documents—were straightforward.  To this day, the IRS has never wavered from the position set forth in its Form 6166s: it has not revoked the tax exempt status of any of the plans at issue, nor has it required any of the Defendants to pay any taxes on the proceeds received by those plans.

---

[1]    At the final pretrial conference, SKAT argued that the reclaim application's request that Denmark apply a 0% withholding rate in calculating the refund due was itself a representation that the Plans were tax-exempt under U.S. law.  But that assumes (wrongly, for all the reasons set forth above), that only a tax-exempt pension plan is entitled to the zero withholding rate.  Because a pension plan is entitled to that rate "whether or not exempt from tax," requesting that Danish withholding rate is *not* a representation of exemption from U.S. tax.

SKAT previously offered various convoluted factual and legal theories for why the plans should not have been entitled to exemption from U.S. tax.  Litigating the facts relevant to those theories would require many days of testimony from ten witnesses (in addition to the Defendants) and involve intricate factual questions that will differ across the more than sixty plans at issue.  For example, one theory SKAT offered was that each plan was not tax-exempt because the business entity that sponsored it was not intended to be permanent.  But the plans in question relate to more than sixty separate entities, owned by more than a dozen different people.  Some of those entities have long business histories, while others do not.  SKAT has designated lengthy excerpts from deposition testimony from five different witnesses (Jones, Herman, Zelman, Lerner and Altbach), apparently to try to show that certain sponsoring entities were not sufficiently "real."[2]  The notion that this evidence remains relevant even though SKAT is no longer trying to prove that the plans were not qualified under the Internal Revenue Code is difficult to countenance.  There is no reason to subject jurors to hours of testimony about the business activities of the sponsoring LLCs and the intentions of the sponsors of the pension plans.  None of this evidence has anything to do with the actual issues in the case: whether the beneficial ownership representation was false, and if so, whether Defendants knew it or were negligent, or were unjustly enriched as a result.

Another theory SKAT offered was that certain plans violated the exclusive benefit rule by paying away what SKAT deemed "too much" of their profits from the dividend arbitrage trading.  But how much is "too much" is a legal question under U.S. pension law that SKAT has abandoned.  *See, e.g.*, *Skatteforvaltningen v. Loggerhead Services LLC Roth 401(K) Plan et al.*, No. 09-cv-

---

[2]  In the case of Lerner, SKAT has already informed Defendants it intends to play the following testimony, which may have been relevant to SKAT's *former* misrepresentation theory, but has zero relevance anymore.  Lerner Tr. 86:8-16 (Q.  Did you conduct any business through the Loggerhead Services LLC company?  A.  No.  Q.  At the time it was set up, did you intend to conduct any business through that LLC?  A.  No.").

6

1806-LAK, ECF No. 60 ¶ 46 (Apr. 20, 2020) (Amended Complaint).  And even if SKAT could cobble together facts sufficient to show—with hindsight—that a particular plan failed to meet an obligation imposed by U.S. pension law of sufficient seriousness as to jeopardize its tax exemption, that would only barely begin to address *mens rea*.  SKAT still would need to try to present adequate proof that each Defendant *believed* that each of the plans was not tax-exempt, despite the IRS's statement, and despite receiving extensive advice from counsel on these precise questions of pension plan qualification.

Were SKAT permitted to introduce the evidence it previously intended to introduce in support of its argument that the pension plans were not qualified, Defendants may need to respond by introducing many days of testimony from the five lawyers from Kaye Scholer on SKAT's witness list (Ben Jacob, Wechter, Wells, Woodard and London) who played various roles in advising the Defendants at length and over many years on plan qualification, and whose testimony should be eliminated entirely or greatly reduced because the plan qualification issue has been removed from the case.[3]

This advice included, but is not limited to:

- In April 2012, as Defendants were opening their accounts at Solo for the purpose of dividend arbitrage trading, Arthur Woodard, a senior lawyer at Kaye Scholer, sent an email to Richard Markowitz and John van Merkensteijn, among others, explaining that under IRS rules, the defendants "by definition, *would have a qualified plan*" and therefore could expect to receive appropriate Forms 6166.  Ex. DX3243 (emphasis added).

---

[3]   Defendants sought extensive advice on plan qualification not to address Denmark, but because it was relevant to their U.S. tax situation, and because Belgium (unlike Denmark) permitted full reclaims only from entities fully exempt from U.S. tax.

7

- On October 18, 2012, Markowitz and van Merkensteijn received an email from Michael Ben-Jacob stating that lawyers at Kaye Scholer had reviewed a payment due to Ganymede and concluded that "there are no issues from a pension standpoint." Ex. DX3329.

- On July 31, 2013, Markowitz and van Merkensteijn received from Kaye Scholer attorney Peter Wells a memo identifying *eleven* different tax and pension related topics on which Kaye Scholer had advised. Ex. PX59.

- Referring back a few weeks later to those eleven issues, and others, Kaye Scholer partner Michael Ben Jacob expressed doubt on whether it would be "of real value" to reduce all of Kaye Scholer's advice to a formal opinion, and reassured Markowitz, in writing, that "we still think the transactions work." Ex. PX62.

- On June 20, 2014, Kaye Scholer produced two formal legal memoranda squarely and favorably addressing the "disqualified persons" issue under the Code. Ex. DX3952.

If SKAT is permitted to put at issue the plans' tax exempt status on the basis of its dubious connection to defendants' *mens rea*, all of this evidence, and much more, will be necessary to rebut it.[4] Rule 403 precludes a mini-trial on marginal issues; here, it would require a maxi-trial to litigate SKAT's allegation that each and every time, over three years, that the IRS stated that to the best

---

[4] In its recent ruling on Defendants' summary exhibits, this Court seemed to share Defendants' understanding that the abandonment of SKAT's claim that the plans lied about their qualification status would render legal advice on that topic irrelevant. ECF No. 1357 (resolving objections on Defendants' summary exhibit regarding legal fees). But SKAT's newly-disclosed position that it still intends to present all of the evidence about pension plan qualification it originally intended to present only heightens the importance of Defendants' ability to invoke advice of counsel on that subject. This is just another example of the ways in which SKAT's attempt to introduce evidence supporting an abandoned legal theory would senselessly prolong the trial and distract the jury.

8

of its knowledge, sixty different pension plans were tax-exempt, the Defendants knew it was untrue. As much as half the evidence at trial—ten witnesses and hundreds of documents—relate mainly or entirely to this issue.

All of this unnecessary distraction was bad enough when SKAT was proposing that the jury be given legal instructions about the significance of various pension law issues, which would at least provide the jury with the tools necessary to evaluate the evidence against a defined standard in deciding whether it somehow reflected on the Defendants' *mens rea*. Now SKAT is proposing something even worse: asking the jury to infer that there is something "bad" about having pension plans related to companies that did little business, without giving them any legal standard against which to judge whether the plans' set-up was prohibited (and simultaneously seeking to preclude the Defendants from offering the extensive legal advice they received that it was not). That is a recipe for profound jury confusion, and a deeply unfair trial. *See, e.g.*, ECF No. 1357 (excluding under Rule 403 Defendants' summary exhibit because it included evidence "related to the qualification of pension plans under the Internal Revenue Code . . . that [is] not at issue in this case and . . . of limited if any relevance here," and "would present a highly distorted picture that would far outweigh any probative value"). Rule 403 precludes turning this trial into a deep dive into the factual and legal intricacies of pension law applied to sixty different plans in order to second guess whether Defendants believed the statements of the IRS and their own lawyers on an issue that did not matter one whit to whether they were entitled to the reclaims they sought from the Danish government. *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding evidence when it risked "sideshow of mini-trials on collateral issues ... that may have only tangential bearing, if at all, to the issues and claims disputed in this case"); *see also*

9

*United States Football League v. Nat. Football League*, 842 F.2d 1335, 1373 (2d Cir. 1988) (affirming trial judge's exclusion of evidence that would have created a "mini-trial").

This evidence therefore should be excluded under Rule 403 both because it is wasteful and distracting, but also because it is unfairly prejudicial to the Defendants. SKAT is essentially (and wrongly) accusing the defendants of serious U.S. tax crimes. *See* Fed. R. Evid. 404. The improper prejudice resulting from injecting such inflammatory allegations into the case easily overwhelms any limited probative value this attenuated evidence might have. *See, e.g.*, *Tirado v. Shutt*, 2015 WL 6866265, at *5 (S.D.N.Y. Nov. 9, 2015) (concluding that "any extended exploration of the nature and circumstances of the witnesses criminal conduct presents significant potential for unfair prejudice to the Plaintiff and confusion to the jury"). The evidence must be excluded.

## CONCLUSION

Defendants respectfully request this Court bar SKAT from submitting to the jury argument or evidence related to the Defendants' alleged misrepresentation that the pension plans at issue in this trial were tax exempt under the Internal Revenue Code.

Dated: New York, New York
January 6, 2025

                                                         Respectfully submitted,

                                                         /s/ *Peter G. Neiman*
                                                         Boyd M. Johnson
                                                         Peter G. Neiman
                                                         Alan E. Schoenfeld
                                                         WILMER CUTLER PICKERING
                                                            HALE AND DORR LLP
                                                         7 World Trade Center
                                                         250 Greenwich Street
                                                         New York, NY 10007
                                                         (212) 230-8800
                                                         Boyd.Johnson@wilmerhale.com
                                                         Peter.Neiman@wilmerhale.com

Alan.Schoenfeld@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352
Andrew.Dulberg@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

/s/ *Sharon L. McCarthy*
Sharon L. McCarthy
KOSTELANETZ LLP
7 World Trade Center
250 Greenwich Street
34th Floor
New York, NY 10007
(212) 808-8100
smccarthy@kostelanetz.com

Nicholas S. Bahnsen
Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
nbahnsen@kostelanetz.com
ddavidson@kostelanetz.com

*Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pensión Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC*

11

*Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

<u>/s/ *David L. Goldberg*</u>
David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2025, the foregoing document was served electronically to all parties of record by the CM/ECF system.

January 6, 2025

*/s/ Peter G. Neiman*
Peter G. Neiman

13