# Exhibit 1

```
P17VSKA1
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE CUSTOMS AND TAX
ADMINISTRATION OF THE KINGDOM
OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION
                    18 MD 2865 (LAK)
------------------------------x

                                        Trial

                                 New York, N.Y.
                     January 7, 2025
                     9:30 a.m.

Before:

                HON. LEWIS A. KAPLAN,

                 District Judge
                                      -and a Jury-

                    APPEARANCES

HUGHES HUBBARD & REED LLP
     Attorneys for Plaintiff SKAT
BY: MARC A. WEINSTEIN
        WILLIAM MAGUIRE
        NEIL OXFORD
        JOHN McGOEY

KOSTELANETZ & FINK, LLP
     Attorneys for Defendants Azalea Pension Plan, *et al*
BY: SHARON McCARTHY
        DANIEL C. DAVIDSON
        MAXWELL BROWN

WILMER CUTLER PICKERING HALE AND DORR LLP
     Attorneys for Defendants Avanix Management LLC, *et al*
BY: PETER NEIMAN
     ANDREW S. DULBERG
        BRITTANY R. WARREN

Also Present:  David Goldberg
               Camilla Laursen
               Kelby Ballena - tech
               John Christopher - tech

1  slide 19 from the plaintiffs.
2          Okay.  So this is a slide that is showing they want to
3  show sort of transfers between different LLCs, your Honor.  And
4  their theory is these transfers don't have substance; this
5  stuff is all fake.  This is what we got from the
6  meet-and-confer process.
7          And it's important that these LLCs, they don't
8  interact with SKAT in any way; they don't interact with Solo.
9  These are not the account holders; they are not the investors.
10 The LLCs are the sponsors of the pension plans, which are the
11 investors and the people who submit the reclaims.
12         There's no relevance to their fraud theory of whether
13 these LLCs have a little business, a lot of business, no
14 business, are made specifically for this transaction or do lots
15 of other things.  For the fraud theory that they're going with
16 in this case, which is not the pension plan theory, but the
17 there-were-no-shares theory, whether these LLCs are real or
18 have lots of business or were just done for this transaction
19 doesn't matter at all, right.  You can set up a company to do a
20 transaction, that doesn't make it fake.
21         What they want to do by saying these LLCs is fake is
22 leave the jury with the impression that the pension plans, that
23 there's something wrong with them; that you can't have a
24 tax-exempt pension plan for a fake company.  That's the
25 inference that they are going to suggest to the jury and that's

1    going to be highly prejudicial.

2              THE COURT:  Look, as I understand their case, it is
3    that this whole structure was created for no valid economic
4    purpose apart from generating tax refunds.

5              Do I have that wrong?

6              MR. WEINSTEIN:  You do not, your Honor.

7              THE COURT:  You know, I've been down a very closely
8    analogous path before, maybe even with some of you, in *United
9    States v. Stein*, where there were these very elaborate tax
10   shelters.  And the government's position was, Look, each and
11   every little piece of the transaction was, in some sense, real.
12   But the whole thing was pointless except that it generated on
13   paper a tax deduction, or so they thought.  They were mistaken
14   in the end.

15             But I take it that this case is, in part, analogous to
16   that.  Am I mistaken?

17             MR. NEIMAN:  So let me address that, your Honor.

18             I mean, I think the theory, as I understand it, of the
19   plaintiffs in this case, as described in their interrogatory
20   responses, as described in their jury instruction proposals, as
21   described in the statement of the case, is that this doesn't
22   work, not because you have too many structures and these
23   entities aren't right and things like that, but because there
24   were no shares.  Because somebody we had no control over,
25   Sanjay Shah, didn't do what he said he would do.

1     that, at the end of the day, you will come back with a just
2     verdict.  Thank you.
3              THE COURT:  Thank you, Mr. Weinstein.  Breaking time.
4     See you all at 9:30.  Do try to be on time, and we'll hear the
5     opening statements for the defense tomorrow and start
6     testimony.  Counsel remain.  We'll see if there's anything else
7     I need to do.
8              THE DEPUTY CLERK:  Could the jury please come this
9     way.  Make sure you bring all your possessions with you.
10             (Jury not present)
11             THE COURT:  Please be seated, everyone.  Anything else
12    we need to do this evening?
13             MR. NEIMAN:  I just want to be heard very briefly,
14    your Honor.
15             THE COURT:  I can't hear you.
16             MR. NEIMAN:  Let me go to the podium.  I understand
17    that your Honor ruled earlier today on our application with
18    regard to the opening slides, but I do want to just point out
19    that it's exactly as we feared.  Mr. Weinstein said these were
20    not for retirement planning.  It's the exact same argument that
21    they abandoned, and they just repackaged it.  And so, I
22    appreciate that your Honor ruled.  I just want to state for the
23    record, it's our view that that was entirely improper, and we
24    object to it.
25             THE COURT:  Well, it's my view that it is relevant to

1    the views in this case and it is not foreclosed by the dropping
2    of the claim.  I think it is relevant evidence as to
3    essentially whether this was all a house of cards or a paper
4    construction that had no real substance except to generate
5    these reclaim applications.  That I understand to be their
6    argument; it's relevant to that argument, and I think it was
7    appropriate.
8             MS. McCARTHY:  Your Honor, two quick things.
9             THE COURT:  Yes, ma'am.
10            MS. McCARTHY:  So the record is clear, we clearly join
11   in Mr. Neiman's arguments and complaints about the opening.
12   There were two issues.  One we had asked the Court to give the
13   jury an instruction just about the absence of people in the
14   courtroom.  We filed that ECF.  If the Court doesn't have it, I
15   can hand it up to you.  It's just something that we would ask.
16   There are going to be days when Mr. van Merkensteijn is not
17   well enough to be here when certain lawyers are absent.  It's
18   just to make a statement so they are not curious.
19            THE COURT:  Not a problem.  If give it to my law
20   clerk, I'll do it.
21            MS. McCARTHY:  And then, the final thing, your Honor,
22   is we submitted a request this morning to permit one paralegal
23   from each team to have a cell phone so that we can keep all the
24   electronic documents up to date in our jury rooms.
25            THE COURT:  You mean a paralegal in a courtroom?