# Exhibit 1

P1ARSKA1

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE CUSTOMS AND TAX
     ADMINISTRATION OF THE KINGDOM
4    OF DENMARK
     (SKATTEFORVALTNINGEN) TAX
5    REFUND SCHEME LITIGATION
                                       18 MD 2865 (LAK)
6    ------------------------------x
                                       Trial
7
                                       New York, N.Y.
8                                      January 9, 2025
                                       9:30 a.m.
9    Before:

10                   HON. LEWIS A. KAPLAN,

11                                     District Judge
                                        -and a Jury-
12
                        APPEARANCES
13
     HUGHES HUBBARD & REED LLP
14        Attorneys for Plaintiff SKAT
     BY:  MARC A. WEINSTEIN
15        DEBBIE PLACID
          NEIL OXFORD
16        JOHN McGOEY

17   KOSTELANETZ & FINK, LLP
          Attorneys for Defendants Azalea Pension Plan, et al
18   BY:  SHARON McCARTHY
          DANIEL C. DAVIDSON
19
     WILMER CUTLER PICKERING HALE AND DORR LLP
20        Attorneys for Defendants Avanix Management LLC, et al
     BY:  PETER NEIMAN
21        NELSON CASTAÑO
          ANDREW DULBERG
22        BRITTANY R. WARREN

23   Also Present:  Camilla Laursen
                    Kelby Ballena - tech
24                  John Christopher - tech

25
```

P1ARSKA1

1    cross.  I'm happy to address it.

2         THE COURT:  Well, look, at the moment, I don't think

3    you have a foundation for it.  I don't know what you think SKAT

4    knew and how you are going to establish it at relevant points

5    in time.  The fact that years after this whole thing was done

6    the man got convicted of what he got convicted of doesn't

7    follow.

8         MR. NEIMAN:  Let me explain what the foundation that I

9    think we can establish is, your Honor.  In 2011 before these

10   events, before Mr. Nielsen was the one person who reviewed all

11   of the reclaim applications, SKAT discovered unexplained income

12   in Mr. Nielsen's bank account.  They suspected at the time that

13   might be the result of having taken bribes to approve reclaim

14   applications.

15        THE COURT:  How do you know that they suspected that?

16        MR. NEIMAN:  Because we have the notes of SKAT

17   executives saying that.

18        THE COURT:  And where are the notes?  I didn't see

19   them in the materials you submitted.

20        MR. NEIMAN:  They were actually in one of the exhibits

21   that SKAT submitted in the motion to preclude.  I think one of

22   the exhibits to the motion are those notes.

23        THE COURT:  I looked at those exhibits in their

24   motion, so maybe you can be very clear --

25        MR. NEIMAN:  Yes, your Honor.  I will just get you

1    from the list of the 184 companies that we received from the

2    HMRC on 6th of August.

3           But I think I need to say that it is also written in

4    the email that the professional agents were not suspected for

5    anything.  And the way we stored data in our system is on the

6    applicant, and the payouts are referring not to any applicant,

7    not to any custodian, but only to the agent.  So you had to

8    know that there were actually pending claims from custodians

9    related to Sanjay Shah.  That you did not know at that point in

10   time even though you had been looking at the payouts to the

11   agents.  The agents maybe used other custodians than Sanjay

12   Shah, just to clarify what I've written here.

13   Q.  Sir, between June and August of 2015, you did not rule out

14   the possibility that those payment agents were involved, right?

15   A.  No, we did not.

16   Q.  OK.  And you paid out 1.8 billion to them in that time

17   period?

18   A.  Yes.

19   Q.  And then later in January of 2016, you wrote about whether

20   the professional agents were, according to the report, not

21   suspected of anything.  Do you see that?

22   A.  Yes.

23   Q.  What report are you referring to there, sir?

24   A.  The report —— both reports, I don't recall Amstrup said

25   anything about it, and I recall that the HMRC tip say something

P1AHSka2                          Ekstrand - Cross

1    about that we didn't suspect the agents to be involved.

2    Q.   Let's take a look, sir, and see if you can point me to the

3    place where anybody told you that the reclaim agents were not

4    suspected of anything.

5           If you want to look at 661 in the slender binder that

6    you have there, sir, that would be the first UK tip; 662 is the

7    second UK tip.  Just tell me if you can find anywhere in there

8    where the UK government said:  Oh, by the way, don't worry

9    about these reclaim agents.  We've already determined they're

10   not involved.

11   A.   Sorry to say I got that wrong because it's not stated.

12   It's stated there are three Danish agents.  That is not correct

13   at all.  I can't remember when we determined that, that the

14   agents were not suspected.

15   Q.   In fact, you determined that one of them was suspected,

16   didn't you, sir?

17   A.   Yes.

18   Q.   OK.  So what you wrote here was wrong?

19   A.   No, not on — not on January '16, because this fraud was

20   reported to the police at the 24th of August.  So we didn't

21   determine that Syntax was connected to Sanjay Shah.  The police

22   determined that once in — later in their investigation, and

23   then we were informed.

24   Q.   All right.

25   A.   So I can't say exact, but it was not in — I was not aware

P1ARSKA5                          Ekstrand - Cross

1   Q.  Let me show you exhibit 5978.

2             MR. NEIMAN:  5978, I'll offer at this time.

3             MR. WEINSTEIN:  No objection.

4             THE COURT:  It's received.

5             (Defense Exhibit 5978 received in evidence)

6   Q.  5978 is an email from your boss, Ms. Munksgaard, correct?

7   A.  Yes.

8   Q.  And that email is copied to somebody named Kim Tolstrup,

9   Lill Drost, and to you?

10  A.  Yes.

11  Q.  And Lill Drost and Kim Tolstrup are colleagues of yours?

12  A.  Yes.

13  Q.  Ms. Munksgaard is the boss of all three of you?

14  A.  Yes.  No, not to Kim.  She was the boss to Lill and Lill

15  was my boss.

16  Q.  Okay.  Got it.  What Ms. Munksgaard writes is, Hi, Lill and

17  I have just looked at Christian's note, and we have corrected

18  the wording and deleted a single sentence and added commas.

19  And you can see that there's an attachment to Ms. Munksgaard's

20  email.  And, sir, if you look at DX 5962-T, I'll represent to

21  you that that is the attachment.

22  A.  Sorry DX what?

23  Q.  5962-T?

24            THE COURT:  59 or 69?

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1           MR. NEIMAN:  5962-T.

2           THE COURT:  Is that in evidence?

3           MR. NEIMAN:  I'm about to offer it, your Honor.

4           MR. WEINSTEIN:  No objection.

5           THE COURT:  All right.  5962-T is received.

6           (Defendant's Exhibit 5962-T received in evidence)

7           MR. NEIMAN:  And if we could put up on the screen,

8   Mr. Christopher, page 2 of DX 5978-T and page 1 of DX 5962-T.

9   5978 page 2 and 5962 page 1.  I'm sorry.  That's the wrong doc.

10  5603.  If you could put up 5603 instead of 5978, there we go,

11  and the second page of the exhibit in English, sir, T.  I'm

12  sorry, Mr. Christopher.  Only take a minute.  We'll have it up

13  for you.  Can you put up the second page?  Next page.

14          THE WITNESS:  Yes, got it.

15          MR. NEIMAN:  Okay.  Hold on a second.  Hold on.  I

16  don't think that's -- no, that's not the right thing, sir.

17          It's 5962 and 5603.  5603-T, please.  Okay.  If you

18  could go to the prior page of 5962, and we'll finally have

19  arrived at our destination.  Okay.  And if you could highlight,

20  Mr. Christopher, the full paragraph at the bottom of the page

21  of 5962?  And if you could compare that to the second

22  paragraph -- the first two paragraphs of 5603.

23  BY MR. NEIMAN:

24  Q.  5603, sir, is the document that you wrote.  That's on the

25  top, and 5962 is the document after it had been edited by your

P1ARSKA5                        Ekstrand - Cross

1    boss, right?

2    A.  Yes.  Yes.

3    Q.  And if you look at the last sentence, what you can see is

4    that your boss deleted the passage, and if the information had

5    been available at the time, action should have been taken?

6    A.  Yes.

7    Q.  That was an effort to conceal that SKAT should have done

8    more?

9              MR. WEINSTEIN:  Objection.

10             THE COURT:  Sustained.

11   Q.  Mr. Ekstrand --

12             THE COURT:  Pardon me?

13             MR. NEIMAN:  No, I was beginning a question, your

14   Honor.

15   Q.  Mr. Ekstrand, how many people were assigned to the team

16   that you led at SKAT that was conducting the investigation that

17   you've described?

18   A.  We were around ten or 12 people during the period.

19   Q.  Okay.  And that investigation concerned a lot, lot more

20   than just Rich and Jocelyn Markowitz and John and Elizabeth van

21   Merkensteijn, right?

22   A.  Yes.  We were on a list of getting all the reclaims.

23   Q.  Not just in regards to these four people, right?

24   A.  No.

25   Q.  Okay.  And was that the largest team that you had ever led,