# EXHIBIT "B"

IBK8CUSC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    In Re:

4    CUSTOMS AND TAX ADMINISTRATION
     OF THE KINGDOM OF DENMARK (SKAT)          18 MD 2865 (LAK)
5    TAX REFUND LITIGATION

6
     ------------------------------x
7
                                       November 20, 2018
8                                      9:30 a.m.

9    Before:

10                  HON. LEWIS A. KAPLAN,

11                                       District Judge

12                        APPEARANCES

13   HUGHES HUBBARD & REED LLP
          Attorneys for Plaintiff SKAT
14   BY:  MARC A. WEINSTEIN
          WILLIAM R. MAGUIRE
15        SARAH L. CAVE
          NEIL J. OXFORD
16
     CAPLIN & DRYSDALE, CHARTERED
17        Attorneys for The Bradley London Pension Plan
           and Doston Bradley
18   BY:  MARK D. ALLISON
          ZHANNA A. ZIERING
19
     WILLIAMS & CONNOLLY
20        Attorneys for Sander Gerber Pension Plan
     BY:  AMY McKINLAY
21

22

23

24

25

IBK8CUSC

1                        APPEARANCES (Cont'd)

2    MORVILLO, ABRAMOWITZ, GRAND, IASON & ANELLO P.C.
          Attorneys for Adam LaRosa
3    BY:  EDWARD M. SPIRO

4    GUSRAE, KAPLAN, NUSBAUM, PLLC
          Attorneys for Goldstein Defendants
5    BY:  MARTIN H. KAPLAN

6    DEWEY PEGNO & KRAMARSKY
          Attorneys for Defendant Ben-Jacob
7    BY:  THOMAS E.L. DEWEY

8    KATTEN MUCHIN ROSENMAN LLP
          Attorneys for Defendant Klugman
9    BY:  DAVID L. GOLDBERG

10   KOSTELANETZ & FINK, LLP
          Attorneys for John Doscas, David Freelow and
11         Sterling Alpha Plan and Delmar Plan
     BY:  ERIC SMITH
12        JULIET L. FINK

13   JOHN M. HANAMIRIAN
          Attorneys for Acorn Summer, Greggory Summers,
14         Acron Nowell and Shree Shaw

15   K&L GATES LLP
          Attorneys for DW Construction, Inc. Retirement Plan
16   BY:  JOHN C. BLESSINGTON

17

18

19

20

21

22

23

24

25

IBK8CUSC

1              (Case called)

2              THE DEPUTY CLERK:  Counsel for plaintiff SKAT, are you

3    ready?

4              MR. WEINSTEIN:  Yes.  Good morning, your Honor.  Marc

5    Weinstein, Bill Maguire, Sarah Cave, and Neil Oxford from

6    Hughes Hubbard & Reed.

7              THE COURT:  Good morning.

8              THE DEPUTY CLERK:  For Defendants Bradley London

9    Pension Plan and Doston Bradley, are you ready?

10             MR. ALLISON:  Yes.  Good morning, your Honor.  Mark

11   Allison, Caplin & Drysdale, on behalf of the plan and dozens

12   others as you know.

13             THE COURT:  Yes.

14             THE DEPUTY CLERK:  Defendant Sander Gerber Pension

15   Plan, are you ready?

16             MS. McKINLAY:  Yes.  Good morning, your Honor.  Amy

17   McKinlay from Williams & Connolly.

18             THE DEPUTY CLERK:  Defendant Adam LaRosa, are you

19   ready?

20             MR. SPIRO:  Edward Spiro of Morvillo, Abramowitz,

21   Grand, Iason & Anello.  Good morning, your Honor.

22             THE COURT:  Good morning.

23             THE DEPUTY CLERK:  Defendant Goldstein Law Group

24   401(k) Profit Sharing Plan and Sheldon Goldstein, are you

25   ready?

IBK8CUSC

1          MR. KAPLAN:  Ready.  Martin H. Kaplan, Gusrae Kaplan,

2    Nusbaum, PLCC, for the Goldstein defendants.

3          Good morning, your Honor.

4          THE COURT:  Good morning.

5          THE DEPUTY CLERK:  Defendant Michael Ben-Jacob, are

6    you ready?

7          MR. DEWEY:  Yes.  Tom Dewey for Mr. Ben-Jacob.

8          THE COURT:  Good morning.

9          THE DEPUTY CLERK:  Defendant Robert Klugman, are you

10   ready?

11         MR. GOLDBERG:  Good morning, your Honor.  David

12   Goldberg from Katten Muchin.

13         THE COURT:  Good morning.

14         THE DEPUTY CLERK:  Defendant John Doscas, David

15   Freelow, and the Sterling Alpha Plan and Delmar Plan, are you

16   ready?

17         MR. SMITH:  Yes, your Honor.  Eric Smith, Kostelanetz

18   & Fink, and Juliet Fink.

19         THE COURT:  Good morning.

20         THE DEPUTY CLERK:  Defendant Acorn Summers, Greggory

21   Summers, Acron Nowell, and Shree Shaw, are you ready?

22         MR. HANAMIRIAN:  I am, your Honor.  John Hanamirian.

23         THE COURT:  Good morning.

24         THE DEPUTY CLERK:  Defendant DW Construction, Inc.

25   Retirement Plan, are you ready?

IBK8CUSC

1          MR. BLESSINGTON:  I am.  Good morning, your Honor.

2    John Blessington, on behalf of that plan, six others from Utah,

3    and one from Pennsylvania.

4          THE COURT:  Geographical distribution.

5          OK.  Well, I think it probably makes sense to hear

6    from Mr. Hanamirian first.  And, in particular, Mr. Hanamirian,

7    why do we need more than one lead counsel in this case?

8          MR. HANAMIRIAN:  You want me at the podium, your

9    Honor?

10          THE COURT:  Yes.

11          MR. HANAMIRIAN:  I think, your Honor, without getting

12    into the entirety of the specifics down the road, I have been

13    dealing with similar claims on behalf of different nations

14    since 2012.  So this type of investment, this cum-ex trade type

15    of investments has been the subject of inquiry, both civil and

16    criminal, in other jurisdictions.

17          THE COURT:  This type of investments, is that what you

18    said?

19          MR. HANAMIRIAN:  I did.

20          THE COURT:  What do you mean by that?

21          MR. HANAMIRIAN:  This type of investment structure,

22    this cum-ex trading structure that underlies the allegations of

23    fraud in this matter.

24          THE COURT:  Maybe you can explain that to me.

25          MR. HANAMIRIAN:  That's been a challenge for a lot of

IBK8CUSC

1    people, your Honor.  But the type of investment itself and the

2    trading structure itself has been the subject of, as I said,

3    inquiry in a number of jurisdictions over the past six or so

4    years.  So I have been dealing with --

5        THE COURT:  What is the trading structure?  What are

6    you talking about?  I don't have any idea what you're talking

7    about.

8        MR. HANAMIRIAN:  That's why I say I think that the

9    analysis and the discussion of that might be premature given

10   the plaintiff's burden in the case.  So if I go through and

11   provide testimony in this context, I think it might not be

12   appropriate.  I know you're looking at me askance, but the

13   underlying structure, the investment structure, how it came

14   about and the components to it are probably a piece of the

15   assertion with respect to fraud.  And so my articulation of it

16   probably is relatively meaningless.  It more depends upon the

17   actual structure as articulated potentially by any of the

18   defendants.

19       So my understanding of the investment vehicle itself,

20   or of cum-ex trading, is one thing.  The assertions in this

21   case with respect to fraud or with respect to other wrongful

22   conduct are another thing.

23       THE COURT:  Well, if the objective of your remarks was

24   to explain to me why we should have more than one lead counsel,

25   swung out and missed.  If you don't want to explain to me what

IBK8CUSC

1    the facts are that in your view make it appropriate to have

2    more than one lead counsel I don't see a need for it.

3              MR. HANAMIRIAN:  I think there are certain persons

4    within the defendant group who might have different issues with

5    respect to the defense of the claims.  So going down a path on

6    a singular defense theory, this situation is unlike a class

7    action where you have multiple pharmaceutical companies and you

8    say, OK, we are all in, and it's just a factor of allocation of

9    responsibility and anybody can really do that.  I have

10   international Fifth Amendment-type concerns that I have to

11   address with respect to one or more of my clients.  I have the

12   effect of an international Fifth Amendment or a domestic United

13   States proceeding that I have to address.

14             THE COURT:  What is an international Fifth Amendment

15   claim?

16             MR. HANAMIRIAN:  If you have a Fifth Amendment or an

17   equivalent right in another jurisdiction, is it enforceable

18   with respect to your right to or the assertion of a privilege

19   or a right here within the United States relative to being

20   compelled to testify or provide any kind of testimonial aspect

21   in this proceeding?

22             So if you have -- and I don't know the answer to that.

23   I have looked pretty hard.  But certainly domestically

24   asserting a Fifth Amendment because there is a potential

25   domestic criminal proceeding is a nonevent, that's a loser.

IBK8CUSC

1   But if you have an equivalent right within another

2   jurisdiction, can you then present that claim here and have it

3   enforced?  And that's an issue for us that I think needs to be

4   decided.  These matters, most of this is public record, but --

5           THE COURT:  What is public record?

6           MR. HANAMIRIAN:  Most of what I am seeking to protect

7   as against with respect to some other clients that I represent

8   is a matter of -- the fact of investigations in other

9   jurisdictions, foreign jurisdictions, is a public record.  But

10  I have to be sensitive to disclosure in the context of this

11  environment, but at the same time I have to protect my client.

12  So I can follow Mr. Allison and his defendants to a certain

13  extent, and certain other certain areas I already know I can't.

14          THE COURT:  For example?

15          MR. HANAMIRIAN:  For example, just even proceeding

16  with respect to testimony, in deposition testimony, will my

17  people be produced or will any of my persons be produced for a

18  deposition?  Well, I have some issues with some of that, and so

19  I am going to present some reasons why not in the form of a

20  motion or otherwise.  So I have to deal with that.

21          When you have parallel civil and criminal proceedings,

22  we have parallel civil and criminal proceedings in this case,

23  let alone in the other jurisdictions that I --

24          THE COURT:  What criminal proceedings are you talking

25  about?

IBK8CUSC

1          MR. HANAMIRIAN:  In the motion to seal where there is

2     an assertion with respect to the existence of the criminal

3     proceeding in Denmark and a criminal investigation.  So I have

4     got to deal with that.

5          Certainly, Mr. Allison's clients have similar concerns

6     with respect to the existence of a criminal investigation, but

7     I have potentially further concerns with respect to maybe one

8     or more of those clients with respect to the impact of this

9     proceeding on other criminal investigations.

10          THE COURT:  What do you conceive the effect of

11     designating a lead counsel here would be?

12          MR. HANAMIRIAN:  I don't necessarily know the answer,

13     your Honor.

14          THE COURT:  Neither do I.  We are going to talk about

15     that.

16          MR. HANAMIRIAN:  I wanted to be heard with respect to

17     it because I just don't think that this is the kind of case

18     where you can go forward and say like the analogy I gave as far

19     as a civil claim with respect to an MDL.

20          THE COURT:  What do you think we should do, have 140

21     different motions for a protective order, 140 different sets of

22     interrogatories?  I don't think we are going to do that.

23          MR. HANAMIRIAN:  No.  If I have to be an outlier, your

24     Honor, or if I end up being an outlier on it, I just want to

25     assure that that status is available.  So we don't know

IBK8CUSC

1    necessarily what it means to be lead counsel in this case, and

2    I can't really find out.

3        THE COURT:  Perfectly fair comment.  And of course you

4    can't because we haven't fleshed it out yet.

5        MR. HANAMIRIAN:  So before it gets to that stage, I

6    wanted to be heard.  Again, it's not about Mr. Allison.  I like

7    Mr. Allison; competent firm, competent people.  It's not that.

8    It's a factor that -- I'm a defense attorney.  I can't sit

9    still and watch the case go by my people.

10       THE COURT:  Of course.  But there is a question of how

11   the case gets organized, what gets done first, what gets done

12   later, how we manage discovery where you have 140 different

13   defendants, all of whom probably want to do different things if

14   left to their own devices.  That's not practical.

15       MR. HANAMIRIAN:  I think that there are some who will

16   need to follow suit with respect to what either I or someone

17   else in this role would present and others who need to become

18   outliers.  The difficulty from my perspective in identifying

19   particular defendants or particular counsel as outliers is that

20   I think it creates a magnifying glass on those persons for

21   purposes of the plaintiff's focus, right?  And so then my fear

22   or my concern with respect to --

23       THE COURT:  You want to have it both ways.  You want

24   to hide in the weeds, except when you don't want to hide in the

25   weeds.

IBK8CUSC

1      MR. HANAMIRIAN:  But isn't that a good defense

2   attorney?  My concern with respect to even the case proceeding

3   forward beyond the motion to dismiss stage is just this.  We

4   are now in a posture where essentially you're forcing the

5   defendants to kind of come out of those weeds.  And that's fine

6   for the purpose of the civil case, but I don't think that you

7   can conduct a criminal investigation in Denmark through this

8   civil case and say, OK, we will sue everyone, and just kind of

9   see who is left standing when the music stops, right?

10      So that's really what is kind of happening.  I

11   anticipated not suggesting that I have some superior skill, but

12   I anticipated it might happen.  So now, if we are in it, we are

13   in it, and now I have to deal with it.  So ultimately, if it's

14   not today, it's going to be during the course of this discovery

15   process that certain persons that I represent, and their roles

16   with respect to this, both domestically and otherwise in this

17   case, will be identified, and I have to deal with it.  I don't

18   want it to be the first time that you hear it at that time.  I

19   wanted the first time that you heard it to be today.

20      THE COURT:  Thank you.

21      Mr. Allison.

22      MR. WEINSTEIN:  Your Honor, can I just raise one

23   procedural issue?

24      THE COURT:  Sure.

25      MR. WEINSTEIN:  I think when the case was called

IBK8CUSC

| 1 | today, it was called with respect to the defendants who |
| 2 | originally had been sued in the Southern District.  My |
| 3 | understanding is we are here on all the cases.  I just want to |
| 4 | make sure that all defendants, because I think there are some |
| 5 | other defendants who may have different attorneys, I just want |
| 6 | to make sure everyone on that side is represented and is or can |
| 7 | participate in this lead counsel decision. |
| 8 | THE COURT:  Of course. |
| 9 | Has everyone had notice? |
| 10 | MR. WEINSTEIN:  I believe the court's -- |
| 11 | THE COURT:  I don't have it in front of me.  I have |
| 12 | just come off close to two months of trial. |
| 13 | MR. WEINSTEIN:  I believe that is the case, your |
| 14 | Honor. |
| 15 | THE COURT:  Fine. |
| 16 | Mr. Allison. |
| 17 | MR. ALLISON:  Thank you, your Honor. |
| 18 | I don't have a grand speech here.  The proposal I |
| 19 | think for lead counsel, and I think the reason why I was |
| 20 | suggested by among the other defense counsel to have this role |
| 21 | is obviously we have the largest group of cases that we are |
| 22 | representing, and I can say I hope, without misrepresenting |
| 23 | anything, that we have a good working relationship with all the |
| 24 | defense counsel.  We have worked and coordinated together in |
| 25 | the almost six months that these proceedings have been ongoing. |

IBK8CUSC

1    We have coordinated on common defense positions, and I respect

2    Mr. Hanamirian's concerns.  There are, obviously, differing

3    views about different positions, and there will come different

4    points in time where we will differ, and there may be a need

5    for a different position to be taken for a specific group of

6    defendants.

7            The way I understood the lead counsel role to work,

8    even though there is not any particular precedent that I am

9    aware of, is really as a coordinator, sort of a quarterback, to

10   make sure that we have common singular filings that are made to

11   the extent possible, and where that is not possible to flag

12   that for the court.  That has been the role that we have

13   envisioned.  We have managed it so far in the first six months,

14   and again, without going out on a limb here, I have had I think

15   a good working relationship with plaintiff's counsel, and I

16   hope and expect that that would continue, again, on behalf of

17   all defendants where possible.  And I would just hope to

18   continue sort of playing that role.

19           THE COURT:  This, of course, is very unlike any of the

20   other MDLs I have done because the plethora of parties is on

21   the defense side, not on the plaintiff's side, and it is not a

22   representative action.  And that, of course, necessarily means

23   that there is a possibility, probably quite significant, that

24   there will be some variation of positions among the defense

25   group.  And my conception for the role of lead counsel is very

IBK8CUSC

1  tentative and very general at this moment, but it's going to

2  need to become more specific.

3         Now, I went forward in the way I did, without trying

4  to firm up what the role is exactly, because I wanted to see if

5  there was a consensus on an individual or a group that would

6  function.

7         Now, it is, of course, very important that the lead

8  counsel communicate with all defense counsel and that there be

9  an attempt to reach common positions to the extent that's

10 possible.  I wanted to see really, when I put out the notice,

11 whether we had one person or some small representative group,

12 and basically what I got back is that everybody is content

13 with, at least at this point, you performing that role on your

14 own, obviously talking to everybody all along.  And then there

15 is Mr. Hanamirian's position, which although I understand the

16 sensitivity he has, I don't have enough information to

17 understand.  It's not his fault.  He has obligations to his

18 clients and feels he can't tell me more today without letting

19 some cat, in a very prejudicial way, out of the bag.  I don't

20 know if that's true or not.  I accept his judgment.  So we will

21 go forward on the basis of one, at least for now, and it's you.

22        The next thing is I think we have to put some flesh on

23 the bones.  We need to develop a form of an order that says

24 what it is you are supposed to do and not do, and I think it

25 needs also to address the question of who is paying for it, to

IBK8CUSC

1    the extent that it is not your clients.

2            Now, I don't remember any longer how many of these

3    cases you have.

4            MR. ALLISON:  It's roughly 104 or so, give or take.

5            THE COURT:  So this may not be an issue.  I remember

6    when I was a far younger lawyer, we were counsel in an

7    antitrust case with 63 defendants, and my firm represented

8    General Motors, back in the day when there were no Japanese

9    companies that were significant or German companies significant

10   in the US automobile industry, and General Motors just paid for

11   whatever coordination and that kind of work that there was.

12   And if your clients are happy to do that, that's fine, and if

13   not, we have to address it.  And maybe they are.  I am not

14   asking right now, but maybe they are.

15           So I think the next step here is that we need to

16   develop a form of order that will specify the role of lead

17   counsel.  Obviously, coordination of discovery is high on the

18   list.  I do not foresee, at least at the present time, having

19   each of 140 defendants in the position of starting its own

20   discovery program against the plaintiffs or anybody else.

21   There will be, in my conception, at least a proposal on behalf

22   of a substantial majority of the defendants in the case for

23   what they think should be a common staging of discovery and who

24   is going to take responsibility for that.

25           Now, that's not to say that any defendant would be

1    foreclosed from asking non-repetitive questions at a

2    deposition, but the conception is there will be one deposition

3    of a witness, just to take that as an example, and you can play

4    that out across documents and admissions and interrogatories

5    and everything else.  I can see an analogue to that to motion

6    practice.

7            So I am looking to counsel to propose a structure now

8    to how we manage this case.  And that will take, I imagine, a

9    fair amount of consultation among counsel to come up with

10   something that at least most, and hopefully everybody, can sign

11   on to that will protect the court's interest in an economic or

12   an efficient way of addressing the litigation, and an

13   expeditious way, if I didn't say that, while respecting the

14   rights of people with divergent interests.

15           So do you have a suggestion for how we go about that?

16           MR. ALLISON:  Well, your Honor, yesterday, I believe

17   it was, I had a sort of preliminary conversation with

18   plaintiff's counsel, not specifically anticipating your ruling

19   on the lead counsel role, but just to start the conversation

20   about how we are going to make this process more efficient in

21   both directions, because likewise I understand 140 depositions

22   of the same witness for the plaintiff makes no sense.

23   Likewise, we would have concern of 140 individual separate

24   depositions in the other direction.  That may or may not make

25   sense given that there is probably some overlap in information

IBK8CUSC

1      and knowledge and testimony.

2             THE COURT:  Forgive me for interrupting.  It would not

3      surprise me, although I don't know, if these 140 defendants

4      don't fall into some finite group of categories that have a

5      good deal in common with one another and are differently

6      situated from other groups of defendants, and maybe there is a

7      way of approaching that that would be cost-effective.

8             MR. ALLISON:  That's exactly what we were thinking,

9      your Honor.  At the same time, and to be transparent about it,

10     obviously defendants have an equal concern about the fact that

11     we have a potential duplicative process ongoing in Denmark, and

12     we want to figure out a way to -- not take advantage, but to

13     recognize that information is being provided now potentially in

14     two different jurisdictions that may itself overlap, and there

15     may be a way to make that process more efficient in utilizing

16     the information that is going in both jurisdictions.

17            So, again, just very tentatively, we have talked about

18     having a meeting next week after the holidays to try to start

19     contemplating a little bit more about that and how to bring

20     this into reality.

21            THE COURT:  So what sort of a timetable seems to you

22     to make sense to expect defendants, in collaboration with the

23     plaintiffs, to have a proposal about an order regulating the

24     lead counsel role and how we are going to manage this case?

25            MR. ALLISON:  I am completely speculating, your Honor,

IBK8CUSC

1    but given the holidays, this week we are talking really

2    about --

3                THE COURT:  Tough time of the year.

4                MR. ALLISON:  I am going to guess a good goal would be

5    before the Christmas holiday to have a sort of more concrete

6    plan that encompasses both the lead counsel role and sort of a

7    game plan for general approach with the plaintiff.

8                THE COURT:  All right.  That makes sense to everybody?

9    Does anybody else want to be heard on this?

10               OK.  So let's set the target date for proposal for

11   December 18.  How's that?

12               If anybody wants to respond to whatever that proposal

13   may be, maybe Mr. Hanamirian is going to want to respond, just

14   maybe -- just guessing, Mr. Hanamirian -- let's look at a date.

15               How about January 11, taking account of the holidays,

16   for any response?

17               And then let's put down a conference for 9:30 on

18   January 24 in all the cases, but this is the subject:  How

19   would we be organizing this case going forward and whatever the

20   views are about the various proposals.  OK?

21               Sir.

22               MR. WEINSTEIN:  Thank you, your Honor.

23               So we will obviously work with defendants to try to

24   come up with a reasonable proposal to manage the case.  In the

25   meantime, one, because we are talking about a conference two

IBK8CUSC

1    months out, let me just revisit what had happened at the

2    initial conference about at least document production in the

3    case.

4            We had served, with your Honor's permission, document

5    requests, at least on the Southern District defendants as they

6    then existed.  The defendants, consistent with your Honor's

7    order, responded with respect to objections and those types of

8    responses, but did not produce documents because your Honor had

9    said they should not until your Honor had decided it was time

10   to move that forward.  In our view it's time to move that

11   forward, at least, and not have another two months go by

12   without that process going.  So we would propose that for those

13   who have already responded and said they will produce

14   documents, notwithstanding their objections, that should now

15   happen.  We will serve the remaining defendants with document

16   requests, let them respond and ultimately produce.  So that's

17   with respect to documents.

18           I think the only other issue raised by what has been

19   discussed here today is there was a prior case management order

20   on some of the issues, it's pretrial order number 1, which has

21   certain dates in it that I think should be at least put off for

22   now, or ultimately decided what to do with those.  For example,

23   there is a discovery cutoff date.  More pressing for us, there

24   is a date on which no additional parties may be joined, and

25   that's January 20.  So I think it would make sense for us to,

IBK8CUSC

1    one, work with defendants on how the case will be managed.

2              THE COURT:  Those two dates are adjourned sine die.

3              Anybody want to be heard on whether the defendants

4    should not begin to produce documents?

5              MR. WEINSTEIN:  Let me just add, there was a third

6    date.  In the prior order, there are dates such as March 31 for

7    the amendment of pleadings.  Perhaps we can just be on the

8    working assumption that there will be in the future, perhaps

9    after the January 24 conference, a new scheduling order with

10   all dates.

11             THE COURT:  That's adjourned too.

12             Mr. Allison.

13             MR. ALLISON:  In terms of discovery, I certainly

14   understand plaintiff's request.  We would prefer, however, to

15   wait until we have had an opportunity to confer with plaintiff

16   about the overall case management, including as it relates to

17   discovery, before we begin that process, because the effort

18   involved in this kind of a production is not easy, and if there

19   is a way to make it more efficient, I'd rather figure that out

20   first than start engaging in that difficult task.

21             THE COURT:  Well, the plaintiff has a universe of

22   documents that it wants from every defendant, and I imagine

23   they are the same.

24             Are they the same, requests the same?

25             MR. WEINSTEIN:  Yes.

IBK8CUSC

1          THE COURT:  OK.  The defendants, I imagine, are going

2     to wind up negotiating those requests.  You have made some

3     objections.  But to the extent you haven't objected, I see no

4     reason why the documents shouldn't now be produced.  And to the

5     extent you work it out, no reason why they shouldn't be

6     produced.  And if there is some subset as to which there are

7     objections, no reason why we shouldn't get the objections

8     brought before the court.

9          MR. ALLISON:  Your Honor, there were objections that

10     were served on plaintiff on behalf of all of the Southern

11     District defendants.  They were extensive, as you would expect.

12          THE COURT:  I haven't spent almost 50 years doing this

13     in New York without knowing that.

14          MR. ALLISON:  Of course, your Honor.

15          It does require some negotiation or resolution with

16     plaintiff, both because of the volume and because of the nature

17     of the information to produce.  That's why it's got to be

18     worked out first.

19          THE COURT:  So get to work on it.  To the extent there

20     is material that's been requested as to which there is no

21     objection, it's to be produced.  And as you work out the

22     objections, and I hope I don't have to work out the objections,

23     but I will if I have to, and what usually happens then is

24     nobody is happy.  That's all there is to it.  There is no

25     discovery stay with respect to plaintiff's document discovery.

IBK8CUSC

1          MR. ALLISON:  OK, your Honor.

2          THE COURT:  Anything else this morning?

3          MR. WEINSTEIN:  Not from plaintiff, your Honor.

4          THE COURT:  Sir, you are?

5          MR. BLESSINGTON:  John Blessington.

6          I should say long-time listener, first-time caller.

7          THE COURT:  Mike and the Mad Dog.

8          MR. BLESSINGTON:  There you go.

9          Your Honor, it doesn't just concern me, but this is

10    our first time before you.  As I said, we represent plans and

11    defendants from Utah as well as from Pennsylvania.  I

12    understand there are also plans in Massachusetts, Illinois,

13    Florida.  We are all now before you.  There are motions to

14    dismiss in those other states, in those other jurisdictions.  I

15    guess my question is something that may ultimately get ironed

16    out, but I didn't know how the Court was going to handle those

17    non-SDNY motions to dismiss.

18          THE COURT:  My intention is that when I issue a

19    decision, I will probably issue an order to show cause why that

20    shouldn't control in all the other cases, and everybody will

21    have an opportunity to tell me at that point that they are

22    unique and different and should take another bite at the apple,

23    and the plaintiff will probably have a different view, and I

24    will sort them out.

25          MR. BLESSINGTON:  I appreciate that, your Honor.

IBK8CUSC

1        We served yesterday just a letter.  We are sort of in

2   a unique situation.  The one plan in Pennsylvania, we have yet

3   to file, for reasons I explained in the letter, we have yet to

4   file a motion to dismiss, in part because of negotiations with

5   SKAT over what would be the scope of that motion, but also

6   because of the procedural posture of the case at the time we

7   were due to file it.  At that point, the MDL was granted, and

8   then the case was closed and you had issued your stay.  So I

9   would just simply ask that at some point we be allowed to file

10  that motion in the MDL docket and have it considered with all

11  the other non-SDNY plans, or motions I should say, your Honor.

12       THE COURT:  How is it different from the motion that I

13  have before me?

14       MR. BLESSINGTON:  Other than Pennsylvania law applies

15  when we are dealing with the 9(b).

16       THE COURT:  How does Pennsylvania law apply when you

17  deal with the 9(b)?

18       MR. BLESSINGTON:  Let me back up, your Honor.  The

19  reason that we didn't file initially is that Pennsylvania,

20  believe it or not, has a two-year statute of limitations

21  dealing with fraud claims.  And under Third Circuit law, if

22  there is a date in the complaint, as there is in the complaint

23  in Pennsylvania, as there is in all of the complaints, in which

24  they identify when they first learned of the alleged fraud and

25  it's outside the statute of limitations, then it can be raised

IBK8CUSC

1    in a 12(b)(6) context.

2            THE COURT:  That's not Pennsylvania law.  That's

3    federal law.

4            MR. BLESSINGTON:  Of course.  But it's a two-year

5    statute of limitations, which, to be completely candid, I

6    didn't know there was a state that had such a short trigger on

7    a fraud claim.

8            We brought that to SKAT's attention, and there were

9    negotiations back and forth.  We asked them, frankly, to

10    voluntarily withdraw those claims, and we just learned

11    yesterday that they have agreed to do so.

12            I am not challenging, your Honor, nor would I ever,

13    your approach with the show cause.  We simply just haven't

14    filed it, and I just want to make sure we get it on file

15    because it hasn't been filed.  Because it would have been filed

16    in the Eastern District of Pennsylvania, but then the MDL got

17    granted.  Actually, Ms. Cave requested that all dates be

18    suspended.  You endorsed that.  And then you issued a pretrial

19    order form, which you formally stayed all motions to dismiss.

20            THE COURT:  Look, if you want to file it, go ahead and

21    file, and I will probably stay it.

22            MR. BLESSINGTON:  That's what I am addressing, your

23    Honor.

24            THE COURT:  What is the need to file it now if it's

25    stayed?  How are you prejudiced by not putting it on file?

IBK8CUSC

1            MR. BLESSINGTON:  I am not saying I am prejudiced.  I

2    just want to get it on file so whatever order you issue will

3    apply to that motion as well.  I didn't do a very good job in

4    explaining.

5            THE COURT:  That's fine.

6            MR. BLESSINGTON:  Thank you, your Honor.  That was the

7    only issue.

8            THE COURT:  Anything else?

9            All right.  Thank you, all.

10            (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25