# WilmerHale

January 22, 2025

**Peter G. Neiman**

+1 212 295 6487 (t)
+1 212 230 8888 (f)
peter.neiman@wilmerhale.com

**VIA EMAIL, HAND, AND ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

   Re: In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation, No. 18-md-02865-LAK (S.D.N.Y.)

Dear Judge Kaplan:

Defendants respectfully request that the Court permit them to question Mr. Markowitz regarding a May through June 2014 email chain between Mr. Markowitz and his partners at Argre Management LLC regarding their responses to inquiries from the Federal Reserve concerning the pension plans' holdings in Danish securities. Ex 1 (DX 3961).

The exhibit will show that the Argre partners, including Defendants Richard Markowitz and John van Merkensteijn, did not shy away from providing information that would reveal to the United States government the pension plans' holdings of Danish shares, the custodians who held the shares, the value of shares each plan owned, and their predictions and explanations relating to the trading strategy. This is directly relevant to Defendants' belief that the pension plans owned Danish shares, and that they had nothing to hide. *See Nottenberg v. Walber 985 Co.*, 160 A.D.2d 574, 575 (N.Y. App. Div. 1st Dep't 1990) (scienter is an element of a fraud claim); *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 234 (N.Y. App. Div. 1st Dep't 1996) (discussing requisite intent in a fraud claim).

On May 1, 2014, counsel for Argre relayed questions from the Federal Reserve relating to recently filed TIC Forms S, requesting an "estimate of anticipated activity for the pension plans in the upcoming months" and an explanation "if/how the pension funds rebalance their portfolio." Ex. 1 at 9-10. On May 8, Mr. Markowitz provided draft answers, explaining that the plans were "likely to have smaller, aggregate purchases or securities in the coming months" and "enter into various hedging agreements" and "sell their long, equity positions." *Id.* at 8-9. There were a series of follow up questions over the next several weeks, each of which was answered, with the answers including the identification of each of the custodians through which any of the plans was trading, including Solo Capital. In the last sequence in the email chain, the Federal Reserve had asked for disclosure of "samples" of the specific securities purchased. *Id.* at 7-8. When Adam La Rosa

WILMERHALE

proposed "to send all names we've traded," rather than a sample, Mr. Markowitz replied, "[o]k with me." *Id.*[1]

This email exchange goes squarely to Mr. Markowitz's state of mind and scienter in May-June of 2014, which falls within the period during which SKAT alleges the fraud took place. A reasonable juror could find that Mr. Markowitz's willingness to provide more information than the government had requested is evidence of an honest and good faith belief that he was in fact trading substantial volumes of shares through Solo Capital and had no reason to hide that from anyone. Given the centrality of bad intent to any fraud case, this evidence is relevant and should be admitted. *See, e.g., Weiss v. La Suisse,* 161 F. Supp. 2d 305, 313 (S.D.N.Y. 2001) (dismissing a fraud counterclaim where "there is no evidence that [the opposing party was] involved in or aware of frauds"); *Speciality Minerals, Inc. v. Pluess-Staufer AG*, 220 F.R.D. 41, 43 (S.D.N.Y. 2004) (concluding that the case "require[d] a greater showing of fraudulent intent than reflected by the evidence presented"); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 521 (S.D.N.Y. 2001) (finding that the party alleging fraud had "not offered evidence to rebut [the opposing party's] argument that it did not have knowledge of the ... fraud").

We thank the Court for its attention to this matter.

Respectfully submitted,

*Peter G. Neiman*

Peter G. Neiman

---

[1] Kaye Scholer's Peter Wells and Michael Ben-Jacob are copied on the email chain, and Mr. Wells relayed the questions from the Federal Reserve. We see no prospect of unfair prejudice from this but would not object to a tailored redaction upon SKAT's request.