**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | MASTER DOCKET |
| CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | |
| | 18-md-2865 (LAK) |
| This document relates to case nos.: | |
| 19-cv-01785; 19-cv-01867; 19-cv-01893; | |
| 19-cv-01781; 19-cv-01783; 19-cv-01866; | |
| 19-cv-01895; 19-cv-01794; 19-cv-01865; | |
| 19-cv-01904; 19-cv-01798; 19-cv-01869; | |
| 19-cv-01922; 19-cv-01800; 19-cv-01788; | |
| 19-cv-01870; 19-cv-01791; 19-cv-01792; | |
| 19-cv-01928; 19-cv-01926; 19-cv-01868; | |
| 19-cv-01929; 19-cv-01803; 19-cv-01806; | |
| 19-cv-01906; 19-cv-01801; 19-cv-01894; | |
| 19-cv-01808; 19-cv-01810; 19-cv-01809; | |
| 18-cv-04833; 19-cv-01911; 19-cv-01898; | |
| 19-cv-01812; 19-cv-01896; 19-cv-01871; | |
| 19-cv-01813; 19-cv-01930; 19-cv-01815; | |
| 19-cv-01818; 19-cv-01931; 19-cv-01918; | |
| 19-cv-01873; 19-cv-01924; 19-cv-10713. | |

**Declaration on the questions presented in**
**Judge Kaplan's 14 January 2025 order**
**(rules of evidence in Danish law)**


**By**
**Mads Bryde Andersen,**
Professor of Law
Center for Business and Public Regulation Law
University of Copenhagen


Copenhagen, Denmark
January 24, 2025

# Contents

I.    Background ........................................................................................................ 3

II.   Points of the Danish law of evidence on which the experts seem to agree ............................ 5

III.  Possible areas of disagreement ........................................................................... 5

IV.   General characteristics of the Danish law of evidence ....................................... 6

    A.    The role of Danish state court judges in deciding disputes of evidence ......................... 6

    B.    Hørlyck (2020) ............................................................................................ 7

    C.    U 2000.298 H (the dismissed employee) ................................................ 11

    D.    U 2003.2425 V (the manor house with the Norwegian painting) ................ 12

    E.    Preliminary conclusion ............................................................................. 14

V.    Danish legal literature on preponderance of evidence .......................................... 14

    A.    Lindencrone & Werlauff (2023) ............................................................. 14

    B.    Erik Hørlyck (2020) ................................................................................. 16

    C.    Von Eyben & Isager (2024) .................................................................... 16

    D.    Preliminary conclusion ............................................................................. 17

VI.   Danish court practice on the evidentiary requirements of fraud claims ........................... 18

    A.    U 1997.88 H (no proof for intentionally caused injury) ................................ 19

    B.    U 1995.143 V (car found at the foot of a cliff) ........................................... 21

VII.  Conclusion .................................................................................................... 22

I, Mads Bryde Andersen, professor of law, declare the following:

## I.      Background

1.      On *14 January 2025*, Judge Kaplan, presiding in the U.S. District Court for the Southern District of New York, issued an Order (the **Order**) in which he observed that

> "*Plaintiff's expert has provided no statutory, precedential or academic support for his assertion that the general standard of proof under Danish law in civil cases is the greater weight, or the preponderance, of the evidence with unspecified exceptions in individual cases*",

and that there is

> "*no basis in contemporary Danish legal literature for assuming that, in civil cases, Danish courts require a higher standard of proof*".

2.      With a view to the fact that Defendants' expert has brought this view into question because it "does not capture the nuances that exist in Danish law regarding the standard of proof", the Order invites the parties to present more detailed expert submissions on this issue.

3.      At the request of Plaintiff, Customs and Tax Administration of The Kingdom of Denmark, I have been invited to answer the questions raised in the Order, thereby supplementing my "Declaration on certain aspects of Danish law" of 24 June 2024 (**my Declaration**, ECF No. 1072). The questions to which the Order makes reference are included in paras. 24-25 of my Declaration, which read as follows:

*24. As a general rule, Danish law imposes on the claimant the burden of proving its claims. The standard of proof is the greater weight of the evidence or the preponderance of the evidence. Being a general rule, Danish courts impose this burden on all civil claimants for all civil claims, however subject to reservations in individual cases not relevant here.*

*25. There is no basis in contemporary Danish legal literature for assuming that in civil law cases, Danish courts require a higher standard of proof for fraud claims than for other tort claims. As a general rule, Danish courts impose the same standard of proof for fraud claims as for any other claim, including negligence.*

4.      The expert Declaration submitted by Defendants, to which reference is also made in the Order, has been executed by Mr. Kasper Bech Pilgaard in his "Declaration of foreign law of Kasper Bech Pilgaard" of 24 July 2024 (the **Pilgaard Declaration**, ECF No. 1115).

5.      As to my qualifications and impartiality, I refer to my earlier declarations in this litigation.

6.      In the following, I will first (in Section II) give a short overview of the many points where Mr. Pilgaard and I *agree* – including the important point that in deciding disputes of evidence, a Danish court is left with a wide degree of discretion – and (in Section III) those where we might disagree. I will then explain and document how this discretion of Danish courts is exercised in practice (Section IV). On this basis, I will provide the requested references to selected legal literature and court practice (Sections V-VI).

**II.     Points of the Danish law of evidence on which the experts seem to agree**

7.     Before providing the requested nuances to the two paragraphs cited above in para.

3, I can state that *I agree* to the observations made in paras. 7–13 of the Pilgaard Declaration.

8.     It is thus my opinion (as it seems to be Mr. Pilgaard's), that

    a.     except for sec. 344(1) of the Danish Administration of Justice Act

       ("Retsplejeloven", **DAJA**) (attached as <u>Exhibit 1</u>), there are *no specific statutory*

       *provisions* in Danish law that regulate the requirements for the standard of proof

       (see paras. 7-9 of the Pilgaard Declaration);

    b.     DAJA sec. 344(1) establishes a fundamental principle of *free assessment of*

       *evidence* in Danish civil proceedings (see para. 10 of the Pilgaard Declaration),

       that

    c.     it is up to the parties in a Danish state court ligation to *present evidence* to support

       their claims, whereas it is up to the court to *assess the probability* of the

       correctness of one or the other party's opinion after the presentation of evidence

       (para. 11 of the Pilgaard Declaration), and that therefore

    d.     it is up to the state court itself to *assess the credibility* of parties and witnesses and

       the weight of the evidence presented by the parties in the case (para. 12 of the

       Pilgaard Declaration).

**III.     Possible areas of disagreement**

9.     Having said that, it is also my opinion that these points are *not inconsistent* with

the conclusion I tried to convey by paras. 24-25 in my Declaration (cited above in para. 3), which

can be rephrased to express that as a general rule of thumb to be applied under DAJA sec.

344(1), Danish courts would apply a "preponderance of the evidence" rule of evidence "*subject to reservations in individual cases".*

10.    Although Mr. Pilgaard in para. 7 of his Declaration does not dispute this main conclusion (albeit not with the "preponderance of the evidence" wording), he mentions that it does not "capture the nuances that exist in Danish law regarding the standard of proof".

11.    I agree to this shortcoming and will provide the requested nuances in the following paragraphs.

12.    It is also my opinion (as stated in para. 25 of my Declaration) that Danish courts will *not in general* apply a higher standard of proof for fraud claims than for other tort claims.

13.    I do not see that Mr Pilgaard has rejected this conclusion.

14.    Therefore, it is still my opinion that Danish law of evidence does not require "clear and convincing evidence" as understood under the law of evidence applicable in the State of New York, meaning more exacting requirements rather than the belief that a party's claim is more likely true than not true.

### IV.    General characteristics of the Danish law of evidence

**A.    The role of Danish state court judges in deciding disputes of evidence**

15.    Before I turn to the Danish scholarly literature and the Danish court practice that in my opinion *confirm* the above understanding, I would like to explain a fundamental difference in how evidentiary points of dispute are handled in Danish courts, compared to what I understand is the case in the U.S. courts.

16.    Private law claims in Danish state courts are *never* heard by juries. For that reason, *all* evidentiary points in dispute are decided by state court judges as an *integral part* of their decisions on the substantial merits of the case.

6

17.     When a Danish state court judge shall decide whether an event has occurred, the
factual details of which are in dispute, the court will therefore have to decide as a matter of *fact*
how the disputed line of events that led to the alleged damage occurred, and how each of the
relevant points in this line of events should be judged as a matter of *law*.

18.     This mental process will often lead to different requirements of evidence in
relation to the many different points in the line of events presented to the court. Whereas it may
be "beyond reasonable doubt" that the defendant did "X" at an early stage, it may be more
doubtful and requiring different kinds of evidence if the defendant did "Y" at a later stage – or
vice versa. If, for example, a party at an *early* point in a line of event has failed to take steps that
might afterwards had made it easier for it to prove the disputed fact, that party may therefore
under the circumstances be met with a higher standard of proof at that *later* point.

**B.     <u>Hørlyck (2020)</u>**

19.     This understanding of the Danish law on evidence is implied by Dr. *Erik Hørlyck*
on page 51 of his book "The burden of proof in civil cases" (in Danish: *Bevisbyrden i civile
sager*, 2020) (excerpts attached as <u>Exhibit 2</u>) to which the Pilgaard Declaration makes reference
in para. 17.

20.     However, in other parts of his book, Dr *Hørlyck* makes this point more explicitly:

21.     First, on page 26 of this book, Dr Hørlyck makes the following general
observation:

> *The consequence of factual and legal presumptions can be a shared (reversed) burden of*
> *proof, which, from a practical perspective, amounts to the same thing, as a reversed*
> *burden of proof is also a shared burden of proof. In cases of liability based on a rule of*

*presumption, it is only the absence of a basis for liability that must be proven by the tortfeasor.*

*Furthermore, in practice it is often so that the opposing party is not entirely passive but attempts to present evidence, even if they do not bear the burden of proof. The presentation of evidence develops dynamically and can shift from one party to the other.*

*For example, consider a case initiated with a claim for payment based on a contract. The claimant naturally bears the burden of proof for establishing that an agreement was made and that maturity had entered, the contract has been breached, or another event creating an obligation to pay has occurred.*

*The defendant can simply make this the subject of the litigation and, accordingly, simply deny that an agreement was made, etc., and on that basis submit a plea for dismissal.*

*However, the defendant may choose to go on the offensive—typically if the contract indeed exists and has been presented—and, for example, invoke Sec. 30(1) of the Danish Contracts Act regarding fraud as grounds for invalidity, or claim that payment has already been made. This does not place a burden of proof on the defendant but rather constitutes a counterproof, as the defendant may (also) base their plea for dismissal on factual circumstances demonstrating that the claimant deceived the defendant into signing. The defendant may also present a receipt for payment and thereby provide evidence of payment.*

*This revives the claimant's burden of proof. It is still the claimant who seeks a change in the legal position, namely the fulfillment of a monetary claim. The claimant must therefore consider whether it is sufficient to deny the existence of fraud or payment, or whether the claimant must now meet the burden of proof that the fraud did not influence the signing of the agreement, cf. Sec. 30(2) of the Danish Contracts Act, that the payment was made to the wrong recipient, or that the receipt is falsified.*

22.   On page 174, Dr. Hørlyck also states the following:

*The burden of proof requirement in Danish law is that there must be sufficient evidence (in the opinion of the court).*

*If there is sufficient information about the relevant facts, there is no need to consider the burden of proof, but if this is not the case, the case must be decided on the basis of an assessment of which party should bear the burden of proof* [citations omitted, MBA]*.*

*The Administration of Justice Act contains nothing about the necessary or sufficient strength of evidence.*

23.   Also, on page 166, Dr. Hørlyck states the following:

*In Danish law, it is hardly possible to get any closer than what was said at the beginning: The strength of evidence required is that which the court finds sufficient, and it can range from certainty or almost certainty to slightly more likely than unlikely. This must be the consequence of the fact that the only requirement for strength of evidence that Danish law has is section 344(1) of the Danish Administration of Justice Act on the free assessment of evidence.*

24.     In my opinion this observation together with Dr Hørlyck's associated conclusions are also reflected in the citation from *Gomard & Kistrup* on page 560, under the headline: "The requirement of proof" (in Danish: *beviskravet*), made in para. 14 of the Pilgaard Declaration.

25.     It is worth mentioning, however, that on page 569 of *Gomard & Kistrup*'s book (excerpts attached as <u>Exhibit 3</u>), under the headline: "General views on the rules on the burden of proof (distribution of the burden of proof)" (in Danish: *Almene synspunkter på reglerne om beviskravet (bevisbyrdefordelingen)*) the authors also make the following statement.

*It is sometimes said that the* principle of preponderance [emphasis in the source, MBA]*, i.e. the most likely alternative, should apply where there are no special reasons for following a rule with a higher or lower standard of proof than about 50% probability. A rule based on the most likely alternative gives practitioners a firm guideline to fall back on and has the advantage of minimizing the number of substantively incorrect decisions. Cases where there are no special circumstances to justify a deviation from the preponderance principle do occur, but are hardly numerous [citation omitted, MBA].*

**C.**    **U 2000.298 H (the dismissed employee)**

26.    Illustrative of the thinking reflected by *Hørlyck* and *Gomard & Kistrup*, respectively, is the Danish Supreme Court decision referred to in para. 24 of the Pilgaard declaration, reported in *U 2000.298 H* (attached as Exhibit 4)*.* Contrary to the present litigation, this case did not involve a tort claim, but I agree with Mr. Pilgaard that it is still illustrative of the relevant points:

27.    An employee had been dismissed on grounds that she had sold goods in cash to a customer without producing an invoice of the sold goods. The employee claimed compensation for unjust dismissal. A major point in dispute was now whether the claimed event (i.e. the sale of goods without invoicing) had taken place or not.

28.    As rightfully stated in para. 24 of the Pilgaard Declaration, the Danish Supreme Court (in agreement with the majority of the High Court) held that the employer bore a "very heavy" burden of proof for the allegation that the employee had acted as alleged. However – and important for the understanding of the case – this *isolated* statement of the Supreme Court took into account the fact that the employee, regardless of her express request for documentation of the accusation, had neither been informed of the particular *amounts* that she was alleged to have misappropriated, nor of the identity of the *customer* who had provided the accusations to her employer (this information was later on presented during trial).

29.    It was under "these circumstances" that the Supreme Court reached its conclusion that the general preponderance of the evidence standard did not apply, and the employer had a "very heavy" burden to prove the alleged wrongdoing. By making reference to "these circumstances", the Supreme Court seems to indicate that the result might have been otherwise, had the employer presented all the documentation to the employee when she was dismissed. In other words: The "very heavy" burden of proof applied by the Supreme Court was thus

11

influenced by the defendant's specific behavior in the case and did not reflect a general rule applicable to all cases.

**D.    U 2003.2425 V (the manor house with the Norwegian painting)**

30.    The principle that different requirements of evidence may be applied in relation to different points in the line of events presented to the court is also illustrated by the High Court decision reported in *U 2003.2425 V* (attached as <u>Exhibit 5</u>) and referred to in para. 27 in the Pilgaard Declaration. Again, this decision did not involve a tort claim, but I agree with Mr. Pilgaard that the reasoning of the court in relation to the burden of proof issue is still illustrative:

31.    The Danish State had filed litigation in June 2002 claiming ownership of a painting which it asserted had been subject to a confiscation order rendered 56 years before (in 1946) towards the German owner of a large Danish manor house, Baron von Jenisch. The painting had subsequently proved to be valuable because of its provenance (being painted by a famous Norwegian artist). It now belonged to a daughter of the former manager of the manor house (Mr. Thygesen).

32.    The evidence of the case displayed a complicated line of events, of which some points (including the fact that the painting had indeed belonged to Baron von Jenisch back in 1933) were agreed between the parties, whereas others (including whether Baron von Jenisch had given the painting as a wedding gift to Mr. Thygesen) were in dispute.

33.    The High Court held that the Danish state could *not* vindicate the painting from Mr. Thygesen's daughter. In the reasoning for this conclusion, the court made the following observations that illustrate the interplay between the various events – and associated evidentiary requirements – that it took into account:

*Based on the evidence presented, it is unclear how the painting came into Oluf Thygesen's possession. However, based on the available information about Oluf Thygesen, there is no basis to assume that he acquired the painting with the intent of enrichment. It cannot be proven, based solely on the testimony of the witness Inge Kirstine Mørk Møller and without other supporting evidence, that the painting was a wedding gift to Esther and Oluf Thygesen from the von Jenisch family. Nevertheless, it remains a possibility that the painting, whose creator and value at the time are assumed to have been unknown, was left hanging in the fireplace room with the express or tacit approval of the von Jenisch family after Oluf Thygesen moved into the estate manager's residence, and that the reason it ended up there has been forgotten over the years.*

*It also cannot be entirely ruled out that the von Jenisch family acted in a way that gave Oluf Thygesen reason to believe that the painting now belonged to him. In any case, according to the testimony of the witness Holger B. Dybdahl, no evidence was found during the random inspections of the registered furnishings at Kalø Jagtgård* [the manor house, MBA] *that Oluf Thygesen had improperly removed anything.*

34.     The cited text shows the complexities in the court's decision of the many different evidentiary points in dispute. On one hand each point was judged in isolation, based on the particular facts of the case. On the other hand, the end result was based on an overall line of reasoning that concluded that the Danish state had not proven its ownership.

13

E.     **Preliminary conclusion**

35.     Based upon the observations stated above, I stand by the statement in para. 24 of my Declaration that Danish courts apply a "preponderance of the evidence" rule of evidence "subject to reservations in individual cases" – in other words a pragmatic approach. My reference here to the "preponderance of the evidence" standard is intended to mean that in order to consider a disputed fact as proven, it should be more likely than not that it had taken place.

36.     Furthermore, I stand with my statement in para. 25 of my Declaration that Danish courts will impose the same standard of proof for fraud claims as for any other claim, including negligence.

## V.     Danish legal literature on preponderance of evidence

37.     In the following I will make reference to some examples from Danish legal literature that confirm the statements that I have made in the paras. 24-25 of my Declaration.

A.     **Lindencrone & Werlauff (2023)**

38.     In their handbook "Danish Court Procedure" (*Dansk Retspleje*), 9th edition (2023) (excerpts attached as Exhibit 6), former high court justice Lars Lindencrone Petersen and Professor Erik Werlauff discuss the requirements of proof in Danish civil cases under DAJA sec. 344. The discussion is presented on pages 307-322 of their book. It touches upon a number of different questions in different cases (including e.g. civil claims, criminal cases, injunctions, and civil claims raised under public law statutory rules) and under different circumstances (including e.g. the evidentiary consequences of not abiding by an order for document production).

39.     The diversity of issues and observations thus presented by the two authors reflects the point made above in Section IV.E, that evidentiary points in dispute are affected by the different kind of *legal* rules and of the particular *facts* relevant to the particular case.

40.     At one point, however (namely on page 311), the authors make some overall observations that serve to explain my statement of preponderance of evidence. On this page, the authors state the following:

*For those with a more mathematical mindset, these various requirements for the strength of evidence can be placed on a scale from 0 to 100%, as follows:*

*1. When a civil lawsuit requires "documentation," "proof," or "evidence," (i.e., different terms for the same standard of evidence strength), it demands a* preponderance of the evidence*, which should be understood as requiring more than 50% certainty.*

*2. When a case concerning a temporary injunction or restraining order requires* plausibility [emphasis in the original, MBA]*, less than 50% certainty is sufficient. However, it cannot be precisely determined in advance how low on the scale this can go.*

*3. In a criminal case (perhaps except for minor fine cases), when "proof beyond a reasonable doubt" is required, the standard must exceed 90% on the scale of evidence strength. This means there should be less than 10% uncertainty regarding the correctness of a conviction in a criminal case. The phrase "reasonable doubt" also indicates that not every doubt should prevent conviction. Hence the threshold is set below 10%; it is not necessary to reach the very top of the scale for a conviction to occur.*

41.    It is clear from their wording ("*For those with a more mathematical mindset*") that the two authors do not intend to say that a Danish state court will necessarily make a precise calculation of an exact "49" or "51" percent probability in its assessment of the evidence of the case. It is, however, important to note that *number 1* of the above citation confirms that the quantum of evidence required for civil law claims is subject to a (flexible) standard of *preponderance* of the evidence.

**B.    Erik Hørlyck (2020)**

42.    The second example of Danish legal literature has already been presented by the citations to Dr. Hørlyck's book on "The burden of proof in civil cases" above in Section IV.B.

43.    In my opinion these overall reflections are more illustrative of Dr. Hørlyck's viewpoints on these issues, than the citations from Dr. Hørlyck made in the para. 17 of the Pilgaard Declaration.

**C.    Von Eyben & Isager (2024)**

44.    In para. 17 of the Pilgaard Declaration reference is also made to Dr. Hørlyck's comments to the observations of Professors *Bo* von *Eyben and Helle Isager* in their Textbook on Tort Law (*Lærebog i erstatningsret*) (excerpts attached as Exhibit 7), the 10th edition of which was published after the Pilgaard Declaration (in the fall of 2024).

45.    Before I go into the citation relied on by Mr. Pilgaard, I find it useful to cite the two authors for their general observation on the Danish law of evidence on page 142 of their book:

> As evident from the above, the assessment of negligence/culpa is a holistic evaluation.
> Therefore, it is not entirely accurate to state generally that the injured party bears the
> burden of proof for establishing culpa. If the tortfeasor wishes to assert that there were

*specific circumstances in the given situation that "justify" his behavior—which,*

*otherwise, deviates from accepted norms of proper conduct in the relevant field—he*

*bears the burden of proof in that regard, see, for example, the decisions ...* [citations

omitted, MBA]*. Moreover, it follows from general principles of evidence that it may be*

*taken into consideration which party had the closest access and opportunity to secure*

*evidence supporting their claim that the facts align with their assertion of liability or*

*exemption from liability ...* [citations omitted, MBA].

46.     In my view, this statement is in full accordance with the conclusions I have made
above in Section IV.

47.     Mr. Pilgaard does not offer the exact citation from the book (he relies on in Dr.
Hørlyck's restatement). The relevant passage seems to be page 329 of the 2024 edition of the
book.

48.     Those pages of von Eyben & Isager's book deal with the evidentiary problems
related to the *test of causality* under the *culpa rule.* Compared to other areas of the law of
evidence, the causality test under the *culpa rule* may often give basis for technical evidence, e.g.
in the form of medical expert opinions on the probability that this or that personal injury was
caused by the harmful act. Regardless of these differences, the baseline standard of
preponderance of evidence is the same.

### D.     Preliminary conclusion

49.     The references to the legal literature cited above confirm my conclusion in para.
24 of my Declaration that the standard of proof applied by a Danish court in exercising its

discretion under DAJA sec. 344(1) is generally the greater weight of the evidence or the preponderance of the evidence.

50.    The examination above shows that predominant Danish legal authors confirm that Danish law of evidence gives wide discretion to a Danish state court judge to determine the persuasive value of the evidence in the context of the case presented, and that the particular circumstances of individual cases may lead the court to require more persuasive proof from a party to prove a particular point of contention.

51.    This is also documented with the reference to the two cases above in Section IV.C and IV.D.

52.    None of the authors that I have examined (including other pieces of legal literature than cited above) have suggested that a lower degree of probability than the "preponderance" rule should apply under DAJA sec. 344(1).

53.    Furthermore, none of the authors that I have examined have claimed that the "preponderance" rule should be applied in a strict sense to the effect that the Danish state court judge should assign a mathematical probability value, with exactly 51% being decisive. It is therefore well-established in Danish legal literature that a Danish state court judge will simply decide whether the party with the burden of proof on a particular point has persuaded the court that it is more probable than not that it is right.

54.    I should also add, that none of the authors that I have examined have suggested that a specific rule of evidence should be applied for claims based on allegations of fraud.

**VI.    Danish court practice on the evidentiary requirements of fraud claims**

55.    As indicated in the foregoing paragraph, the Danish legal literature that I have investigated in order to answer the questions put forward in the Order has *not* suggested that

18

there is a specific rule of evidence in Danish law according to which civil claims based on accusations of fraud should be judged under different rules of evidence than those presented in the above Sections.

56.     In the absence of such a specific deviating rule of evidence, the general "preponderance of evidence" principle must apply.

57.     In the following I will show that this conclusion may be confirmed in Danish court practices.

58.     Since – for the reasons stated above – none of the authors that I have examined have presented any case law to illustrate this point, I have made an investigation myself by studying the case law in the index of "Evidence" in The Weekly Law Report for the last half century.

59.     This examination identified a number of cases where claims were based on fraud allegations. None of these cases put forward a higher standard of proof for such claims than for other claims. The cases identified thus applied exactly the same standard of proof as would have been applied for any other cases.

60.     In the following I will mention two such examples:

## A.     <u>U 1997.88 H (no proof for intentionally caused injury)</u>

61.     In the Supreme Court decision reported in *U 1997.88 H* (attached as <u>Exhibit 8</u>), a dentist had claimed a 30 DKK million[1] coverage under an accident insurance and an occupational disability insurance, after having suffered a personal injury using a chainsaw in his garden. Because of the injury, the outer joint of his left thumb had to be amputated. The two insurance companies now claimed that the dentist had intentionally caused the injury. They

---

[1] Equivalent to circa 7 million USD, after indexing towards today's prices and present USD-DKK currency rates.

based this assertion on the fact that the dentist, shortly before the accident, had agreed with the insurance company to raise the coverage under the policy.

62.    The Supreme Court, however, disagreed with the following reasoning, in which the Supreme Court applied the preponderance of the evidence standard to the insurance companies' allegations of insurance fraud:

> The Supreme Court agrees that [the dentist's] injury by its external objective character appears to be an accident and is therefore covered by the insurances, unless the insurers prove that he has caused the injury intentionally. The purpose of an accident insurance policy means that the fact that the policy's description of an accident includes the requirement that there must be an effect on the body independent of the insured's will does not relieve the insurers of this burden of proof.

> There is a presumption against a person intentionally sawing off fingers with a chainsaw. The available information about the actual event that caused the injury does not contradict this presumption. On the contrary, taking into account the information about the saw used, the workplace, the time of the injury and the available statements regarding the saw and the injury, it is entirely plausible that the injury could have occurred as explained by [the dentist].

> The restructuring and renewal of [the dentist's] insurance policies occurred after a representative from [the insurance company] approached him and reviewed his insurance needs. The most significant changes to coverage and premium costs involve the

*insurance policies issued by [the insurance company]. Based on the information*

*available, there is no basis to reject that [the dentist] planned for and had a realistic*

*opportunity to secure future employment that could generate income which, at least*

*according to the needs analysis model used by [the insurance company], was not*

*disproportionate to the total premium and coverage.*

*It is noted in this context that [the insurance company] did not request information about*

*future employment and income prospects in the insurance application forms.*

*On this basis, the Supreme Court finds that the insurance companies have not, through*

*the circumstances they have highlighted—some of which were unusual—proven that [the*

*dentist] intentionally caused the accident.* [all brackets above inserted by MBA]

**B.    <u>U 1995.143 V (car found at the foot of a cliff)</u>**

63.    The second case that I have chosen as an illustration of the lack of any higher

standard of proof rule in Danish law in cases based on fraud allegations is the High Court

decision reported in *U 1995.143 V* (attached as <u>Exhibit 9</u>).

64.    In this case, a car owned by F was found totally damaged at the foot of a cliff. F

claimed coverage for the damage on the car from his insurance company S. However, S refused

to compensate F for the damage on grounds that a technical lock investigation initiated by S had

shown that the car had been driven with his key when it was damaged.

65.    The High Court ruled in favor of F by pointing to the fact that no police report

had been filed by S, and the circumstances of the insurance event and any suspicion against F

had therefore not been subject to the usual police investigation. With a view to this fact, and

regardless of S's own investigations, the High Court found that S should bear the evidentiary

consequences of the resulting uncertainty of evidence, since S had not proven that it was more

probable than not that the damage was not covered by S's obligation to provide coverage.


### VII.    Conclusion

66.    For the reasons stated above in Sections II to VI, it is my opinion that the Jury in

the present litigation should be instructed on the Danish law burden of proof based on the

following considerations:

- *that* as a general rule, Danish state courts under DAJA sec. 344(1) are left with a wide discretion in determining questions of evidence;
- *that* Danish courts when complex facts and many different evidentiary points are in dispute, will generally apply this discretion by considering each point on balance compared with other points, and with a view to the relevant legal rules;
- *that,* nevertheless, there is a general agreement in Danish legal literature that *unless* specific circumstances justify more exacting proof in order to persuade the court on a disputed point of fact, Danish courts will apply a preponderance of the evidence rule under which specific facts are considered to be "proven" if there is more than a 50% certainty that they have occurred, than the opposite;
- *that* it is not possible to state any exact percentage of preponderance that would generally satisfy a Danish court deciding a dispute of evidence under the discretion of DAJA sec. 344(1); and
- *that* no legal scholars have taken the position that civil law claims – outside specific circumstances – may be expected to be proven, if it is less than 50% likely that they have occurred.


67.    Furthermore, my examination of Danish court practice over the last 50 years have

shown that even civil law claims based on allegations of fraud will follow the same principles as

stated in the foregoing paragraph.


-----oo0oo-----

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 24, 2025

_____
Mads Bryde Andersen