# Exhibit 7

CERTIFIED TRANSLATION

Bo von Eyben and Helle Isager

# Textbook on tort law

### 10th edition



Djøf Publishing
2024

Bo von Eyben and Helle Isager – 9788757458237
Download from Jurabibliotek.dk, 01/16/2025 03:22:13PM
via Kammeradvokaten

CHAPTER 4

# Culpa

*Literature*: *A. Vinding Kruse I* p. 52-135; *Bryde Andersen* p. 163-236; *Ehlers III* p. 70-120; *Hagstrøm*: "Offentligrettslig erstatningsansvar" (1987) p. 243-425; *Hellner and Radetzki* p. 121-144; *Håkan Andersson III* p. 61-219; *Lødrup* pp. 127-182; *Nygaard* pp. 172-219; *Hagstrøm and Stenvik* pp. 77-173; *Kjønstad* in TfE 2005 pp. 87-121; *Saxén I* pp. 7-52; *Saxén II* pp. 387- 391; *Ussing* pp. 8-85.

## 1.    Introduction

As stated in the previous chapters, under Danish law - as under most other legal systems - the general rule is that a person is only liable for non-contractual damages if he has acted culpably. *The basis of liability is culpa*, which is therefore referred to as the 'ordinary' rule of damages - and thus the one that applies if there is no basis for anything else.

The previous chapters have also shown that Danish law recognises other bases of liability than culpa, primarily strict liability. As will be discussed below in chapters 8-11, strict liability has imposed by law in an increasing number of areas, and as will be shown in chapter 7, section 3, the courts are less reluctant than before to establish strict liability without a statutory basis - but so far this has only happened in (narrowly) limited areas. Culpa is therefore still the general basis of liability in Danish law, so that the other bases of liability must be characterised as exceptions - albeit very significant exceptions. However, particularly in the case of personal injury, there is no doubt that strict liability under the Road Traffic Act is the most important liability rule *in practice*, and in the case of industrial injuries, the industrial injury insurance - which also works on an objective basis - is *the primary* compensation system, so that liability (based on the fault rule) only has a secondary (supplementary) function.

Chapters 4-11 discuss the different bases of liability. Chapter 4 deals with culpa, and chapter 5 deals with the basis of liability for injuries caused by children - a variant of the culpa rule. Chapter 6 discusses the special

93

Bo von Eyben and Helle Isager – 9788757458237
Download from Jurabibliotek.dk, 01/16/2025 03:21:41PM
via Kammeradvokaten

*Chapter 4. Culpa*

## 5.    Burden of proof when applying the fault rule

When applying the general culpa liability, it is *the injured party who has the burden of* proving that the tortfeasor has acted negligently - in the sense that the injured party must make it probable that the way in which the tortfeasor acted was not the right way, cf. above in section 3.3.2 with mention of - among others - the decision U 1989.1098 H.[49]

As in the case U 1989.1098 H, damage may occur under such circumstances that the occurrence of the damage itself indicates that negligence was/must have been committed, which is why it is the defendant's task to prove that this has not occurred; in English/American law this evidential principle is referred to as res ipsa loquitur. This view has been promoted in cases concerning the liability of doctors/hospitals, cf. the cases U 1968.448 H (commented by *le Maire* in U 1968 B p. 348 ff.), U 1985.416 V, U 1985.925 H (dissent) and NRT 1989.674 (NDs 1989.342, Norway's Supreme Court), and cf. *Talevski* in J 1990.1 ff (and *Jan Rasmussen* in J 1990.268 f.).

In the case U 1991.774 Ø concerning manipulation treatments by a chiropractor, the High Court took the - untraditional - view that since the chiropractor had failed to inform the patient of the risk of the treatments in question - which in very rare cases *could* cause serious injury - it was up to the chiropractor to prove *that* the treatments were sufficiently indicated *and that* they had been "performed so that the injury could not have been avoided". See about the judgement *von Eyben V* p. 207 ff. Since - also - chiropractors are today covered by the patient compensation, the patient in this case would automatically be entitled to compensation regardless of whether information about the risk should have been - or actually was - provided, see below chapter 14, section 3.2.2.1.

As evident from the above, the assessment of negligence/culpa is a holistic evaluation. Therefore, it is not entirely accurate to state generally that the injured party bears the burden of proof for establishing culpa. If the tortfeasor wishes to assert that there were specific circumstances in the given situation that "justify" his behavior— which, otherwise, deviates from accepted norms of proper conduct in the relevant field— he bears the burden of proof in that regard, see, for example, the decisions U 1959.753 Ø and U 1966.285 H. Moreover, it follows from general principles of evidence that it may be taken into consideration which party had the closest access and opportunity to secure evidence supporting their claim that the facts align with their assertion of liability or exemption from liability , cf. example the decision in U 2015.248 V mentioned in section 3.3.3, point E above, where the defending municipality suffered in terms of evidence,

49. See in this respect *W.E. von Eyben*: "Proof" (1986) p. 97 ff. and *Henrik Zahle*: "Law of proof" (1994) p. 53 ff.

142

Bo von Eyben and Helle Isager – 9788757458237
Download from Jurabibliotek.dk, 01/16/2025 03:21:41PM
via Kammeradvokaten

*5. Burden of proof when applying the fault rule*

that the difference in level of the pavement tiles could not be determined because the municipality had repaired the condition without documenting the difference in level or giving the injured party the opportunity to do so; see also the decision FED 2020.36 Ø on a work-related injury where the employer suffered because he had not secured evidence regarding the installation that caused the injury.

As will be discussed in more detail below in chapter 7, section 2.2, one of the ways to increase liability in a given area is to *shift the burden of proof* so that it is *the tortfeasor* who must prove that he has *not* acted negligently (so-called *presumptive liability*). Presumption of liability can be imposed by the courts, see for example the decisions U 1982.1111 H on liability for the destruction of a building in a major explosion accident (which caused the death of 12 craftsmen), U 1995.550 Ø on a building owner's liability for the security system in an elevator and U 2009.1652 V, where an amusement park had the burden of proof that a water slide was correctly designed, and liability was therefore imposed as this burden of proof had not been lifted, so that it was to the detriment of the amusement park that it could not be clarified how the accident had occurred - but this can of course also be determined by the legislature, see, example, below in chapter 11, section 4, on liability under section 12 of the Electrical Safety Act.

Bo von Eyben and Helle Isager - 9788757458237
Download from Jurabibliotek.dk, 01/16/2025 03:21:41PM
via Kammeradvokaten

Bo von Eyben og Helle Isager

# Lærebog i erstatningsret

## 10. udgave



Djøf Forlag
2024

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/16/2025 03:22:13PM
via Kammeradvokaten

KAPITEL 4

# Culpa

*Litteratur*: *A. Vinding Kruse I* s. 52-135; *Bryde Andersen* s. 163-236; *Ehlers III* s. 70-120; *Hagstrøm*: »Offentligrettslig erstatningsansvar« (1987) s. 243-425; *Hellner og Radetzki* s. 121-144; *Håkan Andersson III* s. 61-219; *Lødrup* s. 127-182; *Nygaard* s. 172-219; *Hagstrøm og Stenvik* s. 77-173; *Kjønstad* i TfE 2005 s. 87-121; *Saxén I* s. 7-52; *Saxén II* s. 387-391; *Ussing* s. 8-85.

## 1.    Indledning

Som det er fremgået af de foregående kapitler, er det efter dansk ret – som efter de fleste andre retssystemer – hovedreglen, at en person kun pålægges erstatningsansvar uden for kontraktsforhold, hvis han har handlet culpøst. *Ansvarsgrundlaget er culpa*, som derfor betegnes som den »almindelige« erstatningsregel – og dermed den, der finder anvendelse, hvis der ikke er grundlag for noget andet.

Det er også fremgået af de foregående kapitler, at dansk ret kender andre ansvarsgrundlag end culpa, først og fremmest objektivt ansvar. Som det vil blive omtalt nedenfor i kapitlerne 8-11, er der på stadig flere områder blevet pålagt objektivt ansvar ved lov, og som det vil fremgå af kapitel 7, afsnit 3, er domstolene knap så tilbageholdende som tidligere med at statuere objektivt ansvar uden lovhjemmel – men foreløbig er dette kun sket på (snævert) afgrænsede områder. Culpa er derfor stadig det almindelige ansvarsgrundlag i dansk ret, således at de andre ansvarsgrundlag må betegnes som undtagelser herfra – om end særdeles betydningsfulde undtagelser. Særligt ved personskader er der dog ikke tvivl om, at det objektive ansvar i henhold til færdselsloven er den *praktisk* vigtigste ansvarsregel, og ved arbejdsskader er arbejdsskadesikringen – der ligeledes virker på objektivt grundlag – det *primære* erstatningssystem, således at erstatningsansvaret (baseret på culpareglen) kun har en sekundær (supplerende) funktion.

I kapitlerne 4-11 behandles de forskellige ansvarsgrundlag. Fremstillingen her i kapitel 4 vedrører culpa, og i kapitel 5 behandles ansvarsgrundlaget ved skader forvoldt af børn – en variant af culpareglen. I kapitel 6 omtales de sær-

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/16/2025 03:21:41PM
via Kammeradvokaten

*Kapitel 4. Culpa*

## 5.    Bevisbyrden ved anvendelse af culpareglen

Det er ved anvendelse af det almindelige culpaansvar *skadelidte, som har bevisbyrden* for, at skadevolderen har handlet uagtsomt – i den forstand, at skadelidte må sandsynliggøre, at den måde, hvorpå skadevolderen handlede, ikke var den rette, jf. ovenfor i afsnit 3.3.2 med omtale af – bl.a. – afgørelsen U 1989.1098 H.[49]

En skade kan – som i sagen U 1989.1098 H – indtræde under sådanne omstændigheder, at selve skadens indtræden taler for, at der er/må være handlet uagtsomt, hvorfor det bliver den som skadevolder sagsøgte persons opgave at sandsynliggøre, at dette dog ikke er tilfældet; i engelsk/amerikansk ret betegnes dette bevismæssige princip som res ipsa loquitur. Synspunktet har været fremme i sager vedrørende lægers/hospitalers erstatningsansvar, jf. sagerne U 1968.448 H (kommenteret af *le Maire* i U 1968 B s. 348 ff.), U 1985.416 V, U 1985.925 H (dissensen) og NRT 1989.674 (NDs 1989.342, Norges Høyesterett), og jf. *Talevski* i J 1990.1 ff. (samt *Jan Rasmussen* i J 1990.268 f.).

   I sagen U 1991.774 Ø vedrørende manipulationsbehandlinger hos en kiropraktor anlagde landsretten den – utraditionelle – synsvinkel, at eftersom kiropraktoren havde undladt at orientere patienten om risikoen ved de pågældende behandlinger – der i meget sjældne tilfælde *kunne* forårsage alvorlige skader – så påhvilede det kiropraktoren at bevise, *at* behandlingerne var tilstrækkeligt indiceret, *og at* de var blevet »udført, således at skaden ikke kunne være undgået«. Se om dommen *von Eyben V* s. 207 ff. Da – også – kiropraktorer i dag omfattes af patienterstatninген, ville patienten i denne sag uden videre være berettiget til erstatning uden hensyn til, om der skulle være – eller faktisk blev – givet orientering om risikoen, jf. nedenfor kapitel 14, afsnit 3.2.2.1.

Som det vil være fremgået af det foregående, er uagtsomhedsbedømmelsen/culpabedømmelsen en helhedsvurdering, og det er derfor ikke ganske dækkende generelt at udtale, at skadelidte har bevisbyrden for, at der foreligger culpa. Vil skadevolderen gøre gældende, at der i den konkrete situation har foreligget særlige omstændigheder, der »retfærdiggør« hans optræden – som i øvrigt er i strid med normer for rigtig adfærd på vedkommende område – har han bevisbyrden i så henseende, jf. eksempelvis afgørelserne U 1959.753 Ø og U 1966.285 H. Det følger endvidere af almindelige principper om bevis, at der kan lægges vægt på, hvem af parterne der havde den nærmeste adgang og anledning til at sikre sig bevis for, at det forholdt sig på den måde, som parten hævder til støtte for sin påstand om ansvar eller ansvarsfrihed, jf. f.eks. den ovenfor afsnit 3.3.3, pkt. E, nævnte afgørelse i U 2015.248 V, hvor det bevismæssigt kom den sagsøgte kommune til skade,

49.  Se herved *W.E. von Eyben*: »Bevis« (1986) s. 97 ff. og *Henrik Zahle*: »Bevisret« (1994) s. 53 ff.

142

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/16/2025 03:21:41PM
via Kammeradvokaten

*5. Bevisbyrden ved anvendelse af culpareglen*

at niveauforskellen på fortovsfliserne ikke kunne fastlægges, fordi kommunen havde udbedret forholdet uden at dokumentere niveauforskellen eller at give den skadelidte mulighed for det; se tilsvarende afgørelsen FED 2020.36 Ø om en arbejdsskade, hvor det kom arbejdsgiveren til skade, at han ikke havde sikret sig bevis vedrørende det anlæg, som forårsagede skaden.

Som det vil blive nærmere omtalt nedenfor i kapitel 7, afsnit 2.2, er en af de veje, man kan gå, når man vil skærpe erstatningsansvaret på et givet område, at *omlægge bevisbyrden*, således at det bliver *skadevolderen*, der skal bevise, at han *ikke* har handlet uagtsomt (såkaldt *præsumptionsansvar*). Præsumptionsansvar kan pålægges af domstolene, jf. eksempelvis afgørelserne U 1982.1111 H om erstatningsansvar for ødelæggelse af en bygning ved en omfattende eksplosionsulykke (der forvoldte 12 håndværkeres død), U 1995.550 Ø om en bygningsejers ansvar for sikkerhedssystemet i en elevator og U 2009.1652 V, hvor en forlystelsespark havde bevisbyrden for, at en vandrutsjebane var korrekt indrettet, hvorfor ansvar blev pålagt, da denne bevisbyrde ikke var løftet, således at det kom forlystelsesparken til skade, at det ikke kunne klarlægges, hvordan uheldet var sket – men det kan naturligvis også fastsættes af lovgivningsmagten, jf. f.eks. nedenfor i kapitel 11, afsnit 4, om erstatningsansvaret ifølge elsikkerhedslovens § 12.

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/16/2025 03:21:41PM
via Kammeradvokaten

I, the undersigned, Hossam Farooq Khawaja, certify that I am fluent in both the English and Danish languages and that the preceding text in the English language is to the best of my knowledge and belief a true and faithful translation of "Textbook on Tort Law" (Lærebog i Erstatningsret, 10th edition (2024) by Bo Von Eyben and Helle Isager in the Danish language.

Copenhagen, 21 January 2025

*Hossamfk*

Hossam Farooq Khawaja
Assistant Attorney

CHAPTER 12

# Causation and adequacy

*Literature*: *A. Vinding Kruse I* p. 136-166; *Hellner and Radetzki* p. 185-211; *Stig Jørgensen* p. 82-133; *Ehlers I* and *II* and *III* p. 182-297; *Torsten Iversen* p. 84-112 and 804-840; *Lødrup* p. 325-387; *Nygaard* p. 322-382; *Hagstrøm and Stenvik* p. 384-483; *Nygaard*, *Hagen and Nome*: "Årsak og bevis ved ansvar for skade" (1986): *Peczenik*: "Causes and Damages" (1979); *Håkan Andersson I* and *IV* and the same in Festskrift till Anders Agell (1994) pp. 19-49; *Marcus Radetzki*: "Orsak och Skada" (1998); *Trine Lise Wilhelmsen*: "Årsagsproblemer i erstatningsretten" (2011); *Morten Kjelland*: "Særlig sårbarhed i personskadeerstatningsret- ten" (2008); *Saxén I* p. 53-58 and 133-155; *Saxén II* p. 392-399 and 408-411; *Ussing* p. 142-153.

## 1.    Causal link

### 1.1.    Introduction
As mentioned in the introduction to chapter 1, section 1.2, the basic conditions for liability are *that* there must be a basis for liability (in the form of culpa or strict liability), *that* the conduct that constitutes the basis for liability (i.e. the culpable act or the conduct covered by a stricter liability standard) is the cause of an occurrence of injury, and *that* this must result in a relevant loss under tort law. The basis of liability is dealt with in chapters 4-11 (supplemented by the possibility of exemption from liability for reasons discussed in chapter 3), and the content of the loss condition - in relation to property damage and personal damage - is discussed below in chapter 13. This chapter deals with the causation condition - corresponding to the order in which the three defense conditions naturally arise in any tort case: Is there a cause of action? If yes: Is this the cause of the damage that has occurred? If yes: Has it resulted in a compensable loss? If the answer to one of the first two questions is no, there is no need to proceed to the next one. The annual case condition naturally applies to both the damage and the loss, but there is no need to investigate possible losses once it has been established that the damage itself was not caused by the event giving rise to liability. However, if this condition is met, the question then becomes,

319

Bo von Eyben and Helle Isager - 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

and C each independently contribute 100 "units of pollution" to an environmental damage that would occur with an impact of 200 "units of pollution". Neither contribution is a sufficient cause, but neither is it a necessary cause, because if one of them were ignored, the damage would have occurred anyway. This objection to the traditional doctrine of causation is logically unassailable, but again, it is not necessary to reject the doctrine in order to conclude that A, B and C can all be held liable in this situation, which has no practical significance. The example illustrates that it is hardly possible to design one causality criterion that can be applied without exception, as it will probably always be possible to construct examples where the criterion leads to results that must be experienced as unsatisfactory.

If the liable circumstances are *a necessary but not a sufficient condition for the occurrence of the damage*, there is *an adequacy problem*. In this case, the tortfeasor cannot be said to have had (full) "positive" control over the course of events: The damage only occurs because other factors than the cause of liability also affect the course of events, and these are out of control for the tortfeasor. The problem of adequacy thus consists of the fact that even if the tortious conduct was a necessary condition for the occurrence of the damage, the damage would not have occurred under "normal" circumstances. In the personal injury example mentioned above, the injury would not have occurred if it had affected a "normal" person and not someone who was particularly predisposed to it. These cases are thus characterized by *an atypical causal sequence*, where the connection between the cause of liability and the occurrence of the injury is weak - and the weaker the more "dominant" the other factors are in the sequence. The problem of adequacy thus consists of determining when the (causal) "chain breaks", i.e. when the connection between the cause of liability and a consequence thereof becomes *so* weak that liability does not extend to *this* consequence. This issue is discussed in more detail in section 2.

### 1.3 Proof requirements and burden of proof
In practice, the question of the causation condition will often appear as - first and foremost - *a problem of proof*. A judge's assessment of whether the causation condition is met must necessarily be based on an assessment of the information about the actual course of events provided by the parties to the case. It follows from the principle of the free assessment of evidence, cf. section 344 of the Danish Administration of Justice Act, that the judge is free to assess the value of the evidence provided and thus which facts should be used as a basis for the decision in the case. Evidence can therefore be provided in any way, including by "indirect" evidence, which may, for example, aim to eliminate factors other than the cause of liability as possible causes ("res ipsa loquitur"). A typical example of this type of evidence is often found in cable breakage cases and

327

Bo von Eyben and Helle Isager - 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*Chapter 12. Causation and adequacy*

similar in connection with excavation work, see e.g. the decisions FED 2004.1337 Ø and FED 1999.2172 V (where an essential part of the evidence was that no other excavation work had been carried out in the area that could have caused the injury, cf. the decision in FED 2001.2691 S on damage to a submarine cable and generally on the issue *von Eyben IV* p. 58 f.). An example of personal injury is the decision FED 2003.1806 V, where the question was whether a traffic accident was the cause of the injured party being hit by a blood vessel in the brain. According to the Forensic Medical Council, the probability of a causal connection was "low", but this did not take into account that the first symptoms of the conditions that led to the blood clot occurred a few days after the accident; as a result of this temporal connection and the fact that no other causes of the blood clot had been proven, the judgment ruled that there was a causal connection.

Thus, it is the judge who determines the requirements for the s*trength of the evidence* and who bears the *burden of proof*, i.e. which of the parties should be penalized for not providing sufficient evidence of a disputed fact.

As with the fault condition, cf. chapter 4, section 5 above, the starting point is that the *burden of proof* regarding the causation condition rests with the *injured party*. If the injured party cannot provide evidence that can convince the judge that the causation condition is fulfilled, the injured party's claim will not be upheld. However, the importance of the burden of proof depends on the *strength of the evidence*. As a minimum, the injured party must prove that the offending factor *could* have caused the injury, i.e. that it is a *possible* cause. However, it is a given that such proof - at least as a general rule, see below - is not sufficient. As long as there is no certainty, the possibility of a causal connection can be expressed as a degree of probability, which in principle can range from 1 % to 99 %. One could then imagine that the standard of proof would be a requirement of o*verwhelming probability*, i.e. a probability level of at least 51% (based on the "mathematical" assumption that this will *on average* lead to more right decisions than wrong decisions). This is also how the standard of proof is formulated in a number of countries (including Norway, cf. *Lødrup* p. 275, *Nygaard* p. 340 f. and *Hagstrøm and Stenvik* p. 430), but not in Denmark, where the standard of proof is higher than this.

Indirectly, this was clearly expressed in the decision in U 2002.1496 H, where a person was punched in the face, causing him to fall over and hit his head against a freezer and a shelf arrangement; shortly afterwards he suffered a blood clot in the brain. The question was thus whether this *intentional* violence could be considered to be the cause of the blood clot. The majority of the Supreme Court stated: "In such a compensation case, it must be considered sufficient to establish a causal connection that it is considered more likely that the

328

Bo von Eyben and Helle Isager – 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*1. Causal link*

the brain injury would not have occurred without A's violence than that the brain injury would have occurred even without A's violence." In *this* case, a requirement of overwhelming probability was thus accepted, but at the same time it was expressed that this *is not the general principle*, but a relaxation of the standard of proof in relation to this. Similar decisions are U 2017.2307 V (which also deals with an act of violence where the two perpetrators claimed that the violence was the cause of the injured party's loss of earning capacity. With direct reference to the Supreme Court judgment, the judgment stated that it was more likely that the injuries would not have occurred without the violence than that they would have occurred even without the violence), U 2019.1337 V (which also with reference to the Supreme Court judgment established a causal link between an episode of violence and the victim's development of post-traumatic stress disorder) and U 2022.2493 (similar decision).

The same conclusion can be drawn from the decision U 2005.2151 H on claims for compensation under the now repealed Act on compensation for injuries caused by vaccinations. This law required that there was a "reasonable probability" of a causal link between the vaccination and the injury. This was - as stated in the judgment - a "relaxation of the usual requirements for proof of causation in a compensation case", but a "predominant probability (more than 50%) that the injury was caused by the vaccination" was required (which was not found to be the case). Thus, it was made clear that a requirement of "a preponderance of probability (just more than ) *is* a relaxation of the general evidentiary requirements in compensation cases.

The same thought process is behind the rule in section 20(1) of KEL, according to which compensation is awarded if the damage is more likely than not caused in one of the ways specified in the provision, see chapter 14, section 3.2.1.1 below. This also emphasized that in these cases, the same requirements for proof of causality should not be imposed as the courts generally impose in tort cases. The similar principle in KEL § 44 on medical damages, cf. chapter 14, section 4, for example, means that it is easier to establish a causal link between the use of contraceptive pills and blood clots than was the case in case law prior to the Act, cf. The decision in U 1989.135 H, where it was ruled that the identification of contraceptive pills as a "risk factor" did not mean that such a degree of probability had been demonstrated that it met the general requirements for proof of causality in the individual case.

Apart from the fact that it can thus be inferred that more than a "preponderance of probability" is required, the courts have never specified *how much* more is needed[2] - cf. on Swedish law, *Hellner and Radetzki* p. 189 ff. and *Håkan Andersson IV* p. 61 ff. where case law has formulated a requirement of "clear preponderance of probability". This is probably due to the fact that in the real world it is rarely possible to determine a specific degree of probability. This will normally only be possible in cases where you have to weigh two known, possible causal factors against each other, but most often there are several possibilities where one or more are completely or partially unknown (at least in the sense that there is no information that makes a probability assessment possible). It will

2.    Cf. similarly *Ehlers II* p. 389 ff.

329

Bo von Eyben and Helle Isager - 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

therefore, often be necessary to consider several factors when assessing which facts to base the decision on.

In the decision in FED 2001.292 V, the question was whether the use of fly ash in a road work was the cause of the illness and death of some horses in fields around the work area. According to the expert statements in the case, it was not possible to say anything about the probability of causation. However, the court found this proven considering the temporal connection between the use of fly ash and the horses' illness, that no other possible causes were proven (see above), that the horses were already healthy and that the illness only occurred in horses grazing in the fields affected by the fly ash.

In recent years, the causation condition has given rise to many decisions on compensation for so-called whiplash injuries, where the problem has not been whether the traffic accident was the cause of the "injury", but whether it could be considered to be the cause not only of (temporary) problems in the neck etc, but also to a number of permanent discomfort (partly of a psychological nature) for which the injured parties also claimed compensation.[3] In the most fundamental decision in this area, U 2011.128 H, this was rejected by the majority of the Supreme Court, which thereby set aside an opinion from AES on the degree of injury and the loss of earning capacity, which was based on the assumption that the permanent discomfort was also caused by the accident. The majority emphasized that the driving accident had occurred at low speed and was thus - generally speaking - unlikely to cause permanent injury, and that the persistent discomfort in the form of chronic pain was common and thus also in people who had not been exposed to whiplash. The minority, on the other hand, found that the accident was likely to cause a chronic pain condition and that no other factors had been demonstrated as possible causes (the injured party was healthy and able to work before the accident and had to give up work afterwards). Other Supreme Court rulings that have similarly disregarded AES' opinion on permanent consequences of a whiplash injury can be found in U 2009.1172 H, U 2009.689 H and U 2015.533 H (but contrary to U 2011.2046 H); the rulings illustrate that the courts will normally follow the Forensic Medical Council's assessment when the doubt about causality mainly concerns issues of a purely medical nature, cf. See decision U 2011.1985 H. Among similar High Court decisions are FED 2016.2 V, FED 2015.29 Ø, FED 2014.2 Ø, FED 2013.15 Ø, FED 2011.65 V, FED 2010.40 V, FED 2009.61 Ø, U 2008.768 Ø and FED 2008.126 V (but contrary to FED 2011.85 Ø). In the decisions FED 2009.2 Ø, FED 2008.57 V and FED 2007.255 On the other hand, AES and the Board of Forensic Medicine agreed that not all permanent problems were caused by the accident.

The assessment includes not only the objective circumstances, but also an assessment of the extent to which each of the parties had the *opportunity and duty to secure evidence* of the circumstances alleged in the case in support of their claims. If, for example, in a medical liability case, it has importance what information was given to the patient and this should have been entered in the patient's medical record but has not been done, the doctor runs the risk that it will be assumed that this information was not given, even if this

---

3.    On this practice, see *von Eyben VII* p. 329 ff.

330

Bo von Eyben and Helle Isager – 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*7. Causal link*

otherwise be considered unlikely (unless, of course, evidence can be provided in another way, e.g. by means of witness statements). The burden of proof also varies according to the nature of the evidence. For example, if the injured party proves that the tort was a sufficient condition the occurrence of the damage, but the tortfeasor claims that it was not a necessary condition due to a hypothetical concurrence of causes (e.g. the damage is a death, which - if claimed by the injured party a death which - the tortfeasor claims - would have occurred anyway due to a serious disease the injured party suffered from), the burden of proof for this lies with the tortfeasor - and the standard of proof on this point is set (very) high, so a very high degree of probability is required that the death would have occurred anyway due to the disease.4

As mentioned above in connection with the decision in U 2002.1496 H, *the requirements for proof of causal connection are relaxed* in some cases. The decision is an example of this happening in cases where there is *gross or clear fault* on the part of the tortfeasor.5 In this example, the infliction of injury was intentional, but the principle is not limited to such cases, and it applies regardless of the area of life and the type of injury question, see e.g. the decisions in FED 2003.1580 Ø. For example, the decisions in FED 2003.1580 Ø (discussed in chapter 4, section 3.3.3.3.B, on damage from participation in a diving course where the organizer had made "two clear and gross errors"), U 2011.380 Ø (on liability for an energy consultant), U 2000.521 H and U 2017.753 V (on auditor liability), FED 2021.4 Ø and FED 2022.53 Ø (on lawyer liability), U 2017.204 V (on real estate agent liability), U 1989.353 Ø (on environmental damage) and FED 2014.41 V (discussed in chapter 7, section 3.2, about damage to a neighboring property by piloting, where the problem was that this property already had cracks; however, the owner of this property had not had the opportunity to secure evidence of the condition of the house before the piloting, see above, in addition to which "significant" negligence had been shown, so the uncertainty about the extent of the damage should not harm (the injured party). However, the *degree* of relief from proof may vary according to the circumstances. In the decision in U 2002.2000 H about a (clear) legal error, the Supreme Court stated that the lawyer could only avoid liability if it could be proven with a "significant degree of probability" had to be assumed that there was *no* causal link between the fault and the loss - i.e. a reversed burden of proof with a relatively "high" standard of proof (for the tortfeasor), cf. the corresponding decisions

---

4.  Cf. *Ehlers II* p. 375 f., cf. *Torsten Iversen* p. 826 f., which would require "certainty", which, however, is too far-reaching, already because a hypothetical course can probably never be determined with certainty (but at most with a probability bordering on certainty).

5.  Cf. *Ehlers II* p. 393 ff and 461 ff, *W.E. von Eyben*: "Bevis" (1986) p. 102 ff and *H. Zahle*: "Bevisret" (1994) p. 61.

Bo von Eyben and Helle Isager - 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

FED 2003.1491 Ø and FED 2022.53 Ø (where "considerable probability" of lack of causality was found); cf. the decision in FED 2000.2329 V, where the error was not found to be so serious that there was a basis for presuming causation, and the decision FED 2003.1097 Ø, where expert statements supported that the alleged error could not have had any influence on the occurrence of the injury. It may seem surprising that the decision in U 2002.2000 H went further than the decision in U 2002.1496 H - all things considered, one would expect the highest degree of relief from proof for the injured party in cases of negligently caused personal injury (cf. also the decision U 2006.356 V), but the difference may be due to the fact that *the proof of* causal connection may present greater difficulties for injured parties in the legal field and similar areas.

Secondly, there is a tendency towards relief of evidence in cases *where the tortfeasor has violated regulations that are relevant to the assessment of guilt*, cf. chapter 4, section 3.3.2.C above and the decisions in U 1974.1014 H, U 1982.50 H, U 1992.199 H, FED 2001.2386 V and FED 2013.19 Ø, all of which state that concerns work-related injuries, but where case law shows that - also - this principle applies generally, cf. the decisions in U 1997.648 Ø and U 2003.208 V cited in the same place. As a further example can be mentioned the decision in U 2001.72 H concerning damage to a submarine cable, where a cutter's erroneous navigation led to a relaxation of the requirement for proof that the damage was caused by it. However, these cases are in reality only a subset of the first-mentioned principle of relief by "clear" fault, but they emphasize that the clarity condition is usually easily met in the case of regulatory violations that *may* be the cause of the damage. However, this was not the case in the above-mentioned decision U 2011.354 Ø concerning a ship capsizing, and the judgment therefore refused to relax the burden of proof regarding causal connection.

On the other hand, there is *no general* tendency to relax the standard of proof for *work-related injuries*, see for example the decisions in U 2009.239 Ø, U 2007.2468 V, FED 2004.334 V, U 2002.1953 Ø and U 2002.2458 H and *Haug and Schwarz* p. 453 ff. Nor does the fact that liability is subject to a *strict* culpa assessment in itself lead to a relaxation of the proof requirements regarding causal connection, cf. the decision in U 2002.2443 H.

In one area, however, there is a clear tendency towards a relief from proof that extends beyond the case groups mentioned above. This concerns damages in connection with *medical treatment* and the like, especially in cases where the fault lies in the fact that a certain treatment was not initiated (e.g. due to failure to observe symptoms or misinterpret them) and where the issue is whether the initiation of treatment would have prevented the damage. In these cases, there are several examples of liability being imposed - even though the error was not gross or clear, and even though specific instructions were not

332

Bo von Eyben and Helle Isager - 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

was violated - on the grounds *that the possibility that initiation of treatment could have prevented the injury could not be disregarded*, cf. the decisions in U 1993.908 H, U 1996.215 H, U 1997.1628 H and FED 2001.1236 Ø.  These decisions concern injuries that preceded the Patient Compensation Act, which, as mentioned above, only requires a predominantly probable causal relationship. This condition was *not* met in the cases mentioned, but it follows from the reasons for the Act that - naturally - no deterioration of the patients' legal position was intended. To the extent that case law prior to the Act had weakened the standard of proof also in relation to a requirement for a preponderance of probability, this should also apply under the patient compensation scheme. However, the decision in U 2002.1690 H goes further than this, as the line from the above-mentioned decisions was continued in a case where there was probably no culpa at all, but only a basis for liability according to the stricter standard in section 20(1)(1) of the Access to Complain and Tort in the Health Care System Act, cf. chapter 14, section 3 below.2.2.2.2 However, it has hardly been the opinion of the Supreme Court to set aside the law's requirement for a preponderance of probability in cases where there is no culpa[6] (cf. above on the - lack of - relief from proof solely as a result of a strict assessment of culpability). This seems to be confirmed by the decision U 2006.1717 H, which upholds the requirement for proof of "overwhelming likelihood" in a case where no "liability" had been committed. incurable error", i.e. where there was no fault; see also the decisions U 2007.1591 H, U 2019.3916 H, U 2020.118 H ("erroneous assessment" by a doctor, but not such a clear error that there was a basis for relief from proof) and the High Court judgment in U 2006.1114 H.

## 2.    Adequacy issues

The problem of adequacy arises when a person is found to have acted culpably[7] and it *is* assumed that there is a causal link between action and

---

6.    See criticism of the decision, *Bo von Eyben* in "Patientforsikringen - De første ti år" (2002)
       p. 23 ff, Patient Insurance Annual Report 2002 p. 72 ff and Patient Injury Appeal Board Annual Report 2002 p. 112 ff.
7.    When assessing culpability, it is - as explained above in chapter 4, section 3.3.6 - one of several factors whether the act is dangerous and whether this is knowable (sometimes formulated as foreseeable) for the actor, see for example the decisions U 1939.547 H and U 1956.1085 V. In practice, it can therefore sometimes be difficult to separate the assessment of fault and adequacy, cf. example the decision in FED 2001.785 S about a fast ferry causing a strong wave: After establishing the causal connection, the judgment goes on to state that the sailing  not reckless and that

Bo von Eyben and Helle Isager - 9788757458237
Download from Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

KAPITEL 12

# Årsagsforbindelse og adækvans

*Litteratur*: *A. Vinding Kruse I* s. 136-166; *Hellner og Radetzki* s. 185-211; *Stig Jørgensen* s. 82-133; *Ehlers I* og *II* samt *III* s. 182-297; *Torsten Iversen* s. 84-112 og 804-840; *Lødrup* s. 325-387; *Nygaard* s. 322-382; *Hagstrøm og Stenvik* s. 384-483; *Nygaard, Hagen og Nome*: »Årsak og bevis ved ansvar for skade« (1986); *Peczenik*: »Causes and Damages« (1979); *Håkan Andersson I* og *IV* og samme i Festskrift till Anders Agell (1994) s. 19-49; *Marcus Radetzki*: »Orsak och Skada« (1998); *Trine Lise Wilhelmsen*: »Årsagsproblemer i erstatningsretten« (2011); *Morten Kjelland*: »Særlig sårbarhed i personskadeerstatningsretten« (2008); *Saxén I* s. 53-58 og 133-155; *Saxén II* s. 392-399 og 408-411; *Ussing* s. 142-153.

## 1.     Årsagsforbindelse

### 1.1.   Indledning

Som nævnt indledningsvis i kapitel 1, afsnit 1.2, er de grundlæggende betingelser for erstatningsansvar, *at* der skal foreligge et ansvarsgrundlag (i form af culpa eller strengere ansvar), *at* den adfærd, som konstituerer ansvarsgrundlaget (dvs. det culpøse forhold eller den adfærd, som omfattes af en strengere ansvarsnorm), er årsag til en indtrådt skade, og *at* denne skal resultere i et erstatningsretligt relevant tab. Ansvarsgrundlaget er der gjort op med i kapitel 4-11 (suppleret med muligheden for ansvarsfrihed af de grunde, som omtaltes i kapitel 3), og indholdet af tabsbetingelsen – i relation til tings- og personskade – gennemgås nedenfor i kapitel 13. I nærværende kapitel behandles årsagsbetingelsen – svarende til den rækkefølge, hvori de tre ansvarsbetingelser naturligt melder sig i enhver erstatningssag: Er der et ansvarsgrundlag? Hvis ja: Er dette årsag til den indtrådte skade? Hvis ja: Har denne medført et tab, som kan kræves erstattet? Er svaret på et af de to første spørgsmål benægtende, er der ingen grund til at gå videre til det næste. Årsagsbetingelsen gælder naturligvis både i forhold til skaden og til tabet, men det er således principielt overflødigt at undersøge mulige tabsposter, hvis det først er fastslået, at selve skaden ikke var forårsaget af det ansvarsbegrundende forhold. Er denne betingelse derimod opfyldt, bliver spørgsmålet dernæst,

319

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*1. Årsagsforbindelse*

og C bidrager uafhængigt af hinanden hver med 100 »forureningsenheder« til en miljøska-
de, som ville indtræde ved en påvirkning på 200 »forureningsenheder«. Ingen af bidragene
er tilstrækkelig årsag, men de er heller ikke nødvendig årsag, for hvis én af dem tænkes
bort, ville skaden alligevel være indtrådt. Denne indvending mod den traditionelle årsags-
lære er logisk uangribelig, men også her gælder, at det ikke er nødvendigt at forkaste læren
for at nå frem til, at A, B og C alle kan pålægges ansvar i denne situation, der er uden prak-
tisk betydning. Eksemplet illustrerer, at det næppe er muligt at udforme ét kausalitetskrite-
rium, som kan anvendes undtagelsesfrit, idet der formentlig altid vil kunne konstrueres ek-
sempler, hvor kriteriet fører til resultater, der må opleves som utilfredsstillende.

Hvis det ansvarsbegrundende forhold er *en nødvendig, men ikke en tilstræk-
kelig betingelse for skadens indtræden*, foreligger der et *adækvansproblem*.
Skadevolderen kan i dette tilfælde siges ikke at have haft (fuld) »positiv«
kontrol over hændelsesforløbet: Skaden indtræder kun, fordi også andre fak-
torer end det ansvarsbegrundende forhold indvirker på forløbet, og disse er
uden for skadevolderens kontrol. Adækvansproblemet består således i, at selv
om den skadevoldende adfærd var en nødvendig betingelse for skadens ind-
træden, så ville skaden under »normale« omstændigheder ikke være indtrådt.
I det nævnte personskadeeksempel ville skaden således ikke være indtrådt,
hvis den havde ramt en »normal« person og ikke én, der var særligt dispone-
ret herfor. Karakteristisk for disse tilfælde er således, at der opstår et *atypisk
årsagsforløb*, hvor forbindelsen mellem det ansvarsbegrundende forhold og
skadens indtræden er svag – og desto svagere, jo mere »dominerende« de an-
dre faktorer er i forløbet. Adækvansproblemet består således i at afgøre,
hvornår (årsags)»kæden hopper af«, dvs. hvornår forbindelsen mellem det
ansvarsbegrundende forhold og en følge heraf bliver *så* svag, at ansvaret ikke
kommer til at omfatte *denne* følge. Denne problemstilling behandles nærmere
i afsnit 2.

### 1.3.  Beviskrav og bevisbyrde

I praksis vil spørgsmålet om årsagsbetingelsen ofte fremstå som – først og
fremmest – et *bevisproblem*. En dommers bedømmelse af, om årsagsbetingel-
sen er opfyldt, må nødvendigvis bygge på en vurdering af de oplysninger om
det faktiske hændelsesforløb, som sagens parter tilvejebringer. Det følger af
princippet om den frie bevisbedømmelse, jf. retsplejelovens § 344, at dom-
meren frit vurderer værdien af de tilvejebragte beviser og dermed, hvilket
faktum der skal lægges til grund ved sagens afgørelse. Bevis kan derfor føres
på en hvilken som helst måde, herunder også ved »indirekte« bevisførelse,
der f.eks. kan tage sigte på at eliminere andre faktorer end det ansvarsbegrun-
dende forhold som mulige årsager (»res ipse loquitur«). Et typisk eksempel
på denne form for bevisførelse forekommer ofte i sager om kabelbrud og

327

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*Kapitel 12. Årsagsforbindelse og adækvans*

lign. i forbindelse med udgravningsarbejder, se f.eks. afgørelserne FED 2004. 1337 Ø og FED 1999.2172 V (hvor et væsentligt led i bevisførelsen var, at der ikke var udført andre gravearbejder i området, som kunne have forvoldt skaden, sml. afgørelsen i FED 2001.2691 S om skade på et søkabel og generelt om problemstillingen *von Eyben IV* s. 58 f.). Som eksempel på en personskade kan nævnes afgørelsen FED 2003.1806 V, hvor spørgsmålet var, om et trafikuheld var årsag til, at den skadelidte ca. ½ år efter blev ramt af en blodprop i hjernen; ifølge Retslægerådet var sandsynligheden for årsagsforbindelse »ringe«, men man havde herved ikke taget højde for, at de første symptomer på de forhold, som førte til blodproppen, indtraf få dage efter uheldet; som følge af denne tidsmæssige sammenhæng og det forhold, at der ikke var påvist andre årsager til blodproppen, statuerede dommen, at der var årsagsforbindelse.

Det er således dommeren, som fastlægger, hvilke krav der skal stilles til *bevisets styrke*, og hvem *bevisbyrden* påhviler, dvs. hvilken af parterne det skal gå ud over, at der ikke er blevet ført tilstrækkeligt bevis for et omtvistet, faktisk forhold.

Ligesom vedrørende culpabetingelsen, jf. ovenfor kapitel 4, afsnit 5, er udgangspunktet, at *bevisbyrden* vedrørende årsagsbetingelsen påhviler den *skadelidte*. Kan skadelidte ikke tilvejebringe beviser, som kan overbevise dommeren om, at årsagsbetingelsen er opfyldt, får skadelidte således ikke medhold i sit krav. Betydningen af bevisbyrden afhænger imidlertid af kravene til *bevisets styrke*. Skadelidte må som et minimum føre bevis for, at det ansvarsbegrundende forhold *kunne* have forvoldt skaden, dvs. at det er en *mulig* årsag. Det er imidlertid givet, at et sådant bevis – i hvert fald som altovervejende hovedregel, jf. nedenfor – ikke er tilstrækkeligt. Så længe der ikke foreligger vished, kan muligheden for årsagsforbindelse udtrykkes i en sandsynlighedsgrad, der principielt kan række fra 1 % til 99 %. Man kunne da forestille sig, at beviskravet måtte være et krav om *overvejende sandsynlighed*, dvs. en sandsynlighedsgrad på mindst 51 % (ud fra den »matematiske« betragtning, at dette *gennemsnitligt* vil føre til flere rigtige end forkerte afgørelser). Sådan er beviskravet da også udformet i en række lande (herunder Norge, jf. *Lødrup* s. 275, *Nygaard* s. 340 f. og *Hagstrøm og Stenvik* s. 430), men ikke i Danmark, hvor kravet til bevis er større end dette.

Indirekte er dette kommet klart til udtryk i afgørelsen i U 2002.1496 H, hvor en person var blevet tildelt et knytnæveslag i ansigtet, hvorved han faldt om og slog hovedet mod en fryser og et hyldearrangement; kort efter blev han ramt af en blodprop i hjernen. Spørgsmålet var således, om denne *forsætlige* voldsudøvelse kunne anses for at være årsag til blodproppen. Herom udtalte flertallet i Højesteret: »I en sådan erstatningssag må det anses for tilstrækkeligt til at statuere årsagsforbindelse, at det bedømmes som mere sandsynligt, at

328

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*1. Årsagsforbindelse*

hjerneskaden ikke ville være indtrådt uden A's vold, end at hjerneskaden ville være indtrådt også uden A's vold.« I *dette* tilfælde accepterede man således et krav om overvejende sandsynlighed, men dermed blev der samtidig givet udtryk for, at dette netop *ikke er det generelle princip*, men en slækkelse af beviskravet i forhold hertil. Tilsvarende afgørelser er U 2017.2307 V (der også omhandler en voldsudøvelse, hvor de to gerningsmænd bestred, at den udøvede vold var årsag til skadelidtes erhvervsevnetab. Under direkte henvisning til højesteretsdommen fastslog dommen, at det var mere sandsynligt, at skaderne ikke ville være indtrådt uden den udøvede vold, end at de ville være indtrådt også uden volden), U 2019.1337 V (der også under henvisning til højesteretsdommen statuerede årsagsforbindelse mellem en voldsepisode og ofrets udvikling af posttraumatisk belastningssyndrom) og U 2022.2493 (tilsvarende afgørelse).

Samme slutning kan drages fra afgørelsen U 2005.2151 H om krav om erstatning i henhold til den nu ophævede lov om erstatning for skader ved vaccinationer. Denne lov krævede, at der var »rimelig sandsynlighed« for årsagsforbindelse mellem vaccinationen og skaden. Heri lå – som anført i dommen – en »lempelse af de sædvanlige krav til beviset for årsagssammenhæng i en erstatningssag«, men der måtte kræves »en overvejende sandsynlighed (mere end 50 %) for, at skaden er forvoldt af vaccinationen« (hvilket ikke fandtes at være tilfældet). Hermed blev det således gjort klart, at et krav om »overvejende sandsynlighed (blot mere end 50 %) *er* en lempelse i forhold til de almindelige beviskrav i erstatningssager.

Samme tankegang ligger bag reglen i KEL § 20, stk. 1, hvorefter erstatning ydes, hvis skaden med overvejende sandsynlighed er forvoldt på en af de i bestemmelsen angivne måder, jf. herom nedenfor kapitel 14, afsnit 3.2.1.1. Hermed betonedes ligeledes, at der i disse sager ikke skulle stilles samme krav til bevis for årsagssammenhæng, som domstolene i almindelighed stiller i erstatningssager. Det tilsvarende princip i KEL § 44 om lægemiddelskader, jf. herom i kapitel 14, afsnit 4, fører f.eks. til, at der lettere kan statueres årsagsforbindelse mellem brug af p-piller og blodpropper, end tilfældet var i retspraksis forud for loven, jf. afgørelsen i U 1989.135 H, hvor det blev statueret, at påvisningen af p-piller som »risikofaktor« ikke var ensbetydende med, at der var påvist en sådan grad af sandsynlighed, at det opfyldte almindelige krav til bevis for årsagssammenhæng i det enkelte tilfælde.

Bortset fra, at det således kan udledes, at der kræves mere end »sandsynlighedsovervægt«, har domstolene aldrig præciseret, *hvor meget* mere der kræves[2] – sml. om svensk ret, *Hellner og Radetzki* s. 189 ff. og *Håkan Andersson IV* s. 61 ff., hvor retspraksis har formuleret et krav om »klar sandsynlighedsovervægt«. Det hænger formentlig sammen med, at man i virkelighedens verden kun sjældent kan fastsætte en bestemt sandsynlighedsgrad. Det vil normalt højst være muligt i tilfælde, hvor man skal afveje to kendte, mulige årsagsfaktorer over for hinanden, men oftest er der flere muligheder, hvor en eller flere er helt eller delvist ukendte (i hvert fald i den forstand, at der ikke foreligger oplysninger, der muliggør en sandsynlighedsvurdering). Det vil

2.   Jf. tilsvarende *Ehlers II* s. 389 ff.

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*Kapitel 12. Årsagsforbindelse og adækvans*

derfor oftest være nødvendigt at inddrage flere faktorer ved bedømmelsen af, hvilket faktum der skal lægges til grund for afgørelsen.

I afgørelsen i FED 2001.292 V var spørgsmålet, om anvendelse af flyveaske ved et vejarbejde var årsag til, at nogle heste på marker omkring arbejdsområdet blev syge og døde. Ifølge de sagkyndige erklæringer i sagen var det ikke muligt at sige noget om sandsynligheden for årsagssammenhæng. Retten fandt imidlertid denne bevist under hensyn til den tidsmæssige sammenhæng mellem brugen af flyveaske og hestenes sygdom, at der ikke var påvist andre mulige årsager (jf. ovenfor), at hestene i forvejen var sunde, og at sygdommen kun opstod hos heste, der græssede på de marker, der blev ramt af flyveasken.

   I de senere år har årsagsbetingelsen særligt givet anledning til mange afgørelser om erstatning for såkaldte piskesmældsskader (whiplash), hvor problemet ikke har været, om trafikuheldet var årsag til »skaden«, men derimod, om det kunne anses for at være årsag ikke kun til (forbigående) gener i nakke mv., men også til en række varige gener (til dels af psykisk karakter), som de skadelidte også krævede erstatning for.[3] I den mest principielle afgørelse på området, U 2011.128 H, blev dette afvist af Højesterets flertal, der dermed tilsidesatte en udtalelse fra AES om méngrad og erhvervsevnetab, som byggede på en forudsætning om, at også de vedvarende gener var forårsaget af uheldet. Flertallet lagde vægt på, at kørselsuheldet var sket med lav fart og dermed – generelt set – var uegnet til at medføre varig skade, og at den vedvarende gene i form af kronisk smertetilstand var hyppigt forekommende og dermed også hos personer, der ikke har været udsat for piskesmæld. Mindretallet fandt derimod, at uheldet var egnet til at fremkalde en kronisk smertetilstand, og at der ikke var påvist andre faktorer som mulige årsager hertil (den skadelidte var rask og arbejdsdygtig inden uheldet og måtte efter dette opgive arbejdet). Andre højesteretsdomme, der på tilsvarende måde har tilsidesat AES' udtalelse om varige følger af en whiplash-skade, foreligger i U 2009.1172 H, U 2009.689 H og U 2015.533 H (men modsat U 2011.2046 H); dommene illustrerer, at domstolene normalt vil følge Retslægerådets vurdering, når tvivlen om årsagssammenhæng hovedsagelig vedrører spørgsmål af rent lægefaglig karakter, jf. herved afgørelsen U 2011.1985 H. Blandt tilsvarende landsretsafgørelser kan nævnes FED 2016.2 V, FED 2015.29 Ø, FED 2014.2 Ø, FED 2013.15 Ø, FED 2011.65 V, FED 2010.40 V, FED 2009.61 Ø, U 2008.768 Ø og FED 2008.126 V (men modsat FED 2011.85 Ø). I afgørelserne FED 2009.2 Ø, FED 2008.57 V og FED 2007.255 Ø var der derimod enighed mellem AES og Retslægerådet om, at ikke alle varige gener skyldtes uheldet.

I bedømmelsen indgår ikke kun de objektive omstændigheder, men også en vurdering af, i hvilket omfang hver af parterne havde haft *anledning og opfordring til at sikre sig bevis* for de omstændigheder, som under sagen påberåbes til støtte for deres påstande. Hvis det f.eks. i en sag om lægeansvar har betydning, hvilke oplysninger patienten blev givet, og disse skulle være indført i patientens journal, men ikke er blevet det, risikerer lægen, at det af den grund lægges til grund, at disse oplysninger ikke blev givet, selv om dette i

---

3.    Om denne praksis, se *von Eyben VII* s. 329 ff.

330

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*1. Årsagsforbindelse*

øvrigt måtte anses for lidet sandsynligt (medmindre naturligvis bevis kan føres på anden måde, f.eks. ved hjælp af vidneforklaringer). Også bevisbyrdens placering varierer efter bevistemaets karakter. Er der f.eks. af skadelidte ført bevis for, at det ansvarspådragende forhold var en tilstrækkelig betingelse for skadens indtræden, men gør skadevolderen gældende, at den ikke var en nødvendig betingelse på grund af hypotetisk årsagskonkurrence (skaden er f.eks. et dødsfald, som – hævder skadevolderen – alligevel ville være indtrådt på grund af en alvorlig sygdom, skadelidte led af), påhviler bevisbyrden herfor skadevolderen – og beviskravet sættes på dette punkt (meget) højt, således at der kræves en meget høj grad af sandsynlighed for, at dødsfaldet alligevel ville være indtruffet på grund af sygdommen.[4]

Som nævnt ovenfor i forbindelse med afgørelsen i U 2002.1496 H *lempes kravene til bevis for årsagsforbindelse* i nogle tilfælde. Afgørelsen er et eksempel på, at dette sker i tilfælde, hvor der foreligger *grov eller dog klar culpa* hos skadevolderen.[5] I det nævnte eksempel var skadetilføjelsen sket forsætligt, men princippet er således ikke begrænset til sådanne tilfælde, og det gælder, uanset hvilket livsområde og hvilken skadestype sagen drejer sig om, se f.eks. afgørelserne i FED 2003.1580 Ø (omtalt i kapitel 4, afsnit 3.3.3.B, om skade ved deltagelse i et dykkerkursus, hvor arrangøren havde begået »to klare og grove fejl«), U 2011.380 Ø (om ansvar for en energikonsulent), U 2000.521 H og U 2017.753 V (om revisoransvar), FED 2021.4 Ø og FED 2022.53 Ø (om advokatansvar), U 2017.204 V (om ejendomsmægleransvar), U 1989.353 Ø (om en miljøskade) og FED 2014.41 V (omtalt i kapitel 7, afsnit 3.2, om en skade på naboejendommen ved pilotering, hvor problemet var, at denne ejendom i forvejen havde revnedannelser; ejeren af denne ejendom havde imidlertid ikke haft anledning til at sikre sig bevis for husets tilstand inden piloteringen, jf. ovenfor, hvortil kom, at der var udvist »betydelig« uagtsomhed, hvorfor usikkerheden om omfanget af skaden ikke burde komme den skadelidte til skade). *Graden* af bevislettelse kan dog variere efter omstændighederne. I afgørelsen i U 2002.2000 H om en (klar) advokatfejl udtalte Højesteret, at advokaten kun kunne undgå ansvar, hvis det med en »betydelig grad af sandsynlighed« måtte antages, at der *ikke* var årsagssammenhæng mellem fejlen og tabet – altså en omvendt bevisbyrde med et forholdsvis »højt« beviskrav (til skadevolderen), jf. tilsvarende afgørelserne

---

4.  Jf. *Ehlers II* s. 375 f., sml. *Torsten Iversen* s. 826 f., der vil kræve »vished«, hvilket dog er for vidtgående, allerede fordi et hypotetisk forløb formentlig aldrig kan fastlægges med vished (men højst med en til vished grænsende sandsynlighed).
5.  Jf. *Ehlers II* s. 393 ff., og 461 ff, *W.E. von Eyben*: »Bevis« (1986) s. 102 ff. og *H. Zahle*: »Bevisret« (1994) s. 61.

331

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

*Kapitel 12. Årsagsforbindelse og adækvans*

FED 2003.1491 Ø og FED 2022.53 Ø (hvor der fandtes »betydelig sandsynlighed« for manglende kausalitet); sml. afgørelsen i FED 2000.2329 V, hvor fejlen ikke fandtes at være så grov, at der var grundlag for at præsumere årsagsforbindelse, og afgørelsen FED 2003.1097 Ø, hvor sagkyndige erklæringer dog understøttede, at den påståede fejl ikke kunne have haft nogen betydning for skadens indtræden. Det kan umiddelbart undre, at afgørelsen i U 2002.2000 H gik videre end afgørelsen i U 2002.1496 H – alt andet lige kunne man forvente den højeste grad af bevislettelse for skadelidte ved forsætligt forvoldte personskader (jf. herved også afgørelsen U 2006.356 V), men forskellen kan bero på, at *bevisførelsen* for årsagsforbindelse kan frembyde større vanskeligheder for skadelidte på advokatområdet og lign. områder.

Dernæst er der en tendens til bevislettelse i tilfælde, *hvor skadevolderen har overtrådt forskrifter, som har betydning for culpabedømmelsen*, jf. ovenfor kapitel 4, afsnit 3.3.2.C, og de dér anførte afgørelser i U 1974.1014 H, U 1982.50 H, U 1992.199 H, FED 2001.2386 V og FED 2013.19 Ø, der alle vedrører arbejdsskader, men hvor retspraksis viser, at – også – dette princip gælder generelt, jf. de samme sted anførte afgørelser i U 1997.648 Ø og U 2003. 208 V. Som et yderligere eksempel kan nævnes afgørelsen i U 2001.72 H om beskadigelse af et søkabel, hvor en kutters fejlagtige navigation medførte en slækkelse af kravet til bevis for, at skaden var forvoldt af den. Disse tilfælde er dog i virkeligheden blot en undergruppe af det førstnævnte princip om bevislettelse ved »klar« culpa, men de understreger, at klarhedsbetingelsen normalt uden videre er opfyldt ved forskriftsovertrædelser, som *kan* være årsag til skaden. Det kunne den derimod ikke i den ovenfor nævnte afgørelse U 2011.354 Ø om en skibskapring, og dommen afviste derfor at lempe (vende) bevisbyrden vedrørende årsagsforbindelse.

Derimod er der *ikke* en *generel* tendens til at slække på beviskravet ved *arbejdsskader*, jf. f.eks. afgørelserne i U 2009.239 Ø, U 2007.2468 V, FED 2004.334 V, U 2002.1953 Ø og U 2002.2458 H og *Haug og Schwarz* s. 453 ff. Heller ikke den omstændighed, at ansvaret er undergivet en *streng* culpabedømmelse, fører i sig selv til, at beviskravene vedrørende årsagsforbindelse lempes, jf. afgørelsen i U 2002.2443 H.

På ét område er der imidlertid en klar tendens til en bevislettelse, der rækker videre end i de ovenfor nævnte tilfældegrupper. Det drejer sig om skader i forbindelse med *lægebehandling* og lign., specielt i tilfælde, hvor fejlen består i, at der ikke blev iværksat en vis behandling (f.eks. på grund af manglende iagttagelse af symptomer eller forkert fortolkning af dem), og hvor problemet er, om iværksættelse af behandling ville have forhindret skaden. I disse tilfælde foreligger der flere eksempler på, at ansvar er blevet pålagt – selv om fejlen ikke var grov eller klar, og selv om specifikke forskrifter ikke var

332

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

blevet overtrådt – med den begrundelse, *at der ikke kunne bortses fra mulig-heden for, at iværksættelse af behandling kunne have hindret skaden*, jf. afgørelserne i U 1993.908 H, U 1996.215 H, U 1997.1628 H og FED 2001.1236 Ø. Disse afgørelser vedrører skader, som lå forud for patienterstatningsordningen, hvor der som nævnt ovenfor kun stilles krav om en overvejende sandsynlig årsagssammenhæng. Denne betingelse var *ikke* opfyldt i de nævnte sager, men det følger af motiverne til loven, at der – naturligvis – ikke tilsigtedes nogen forringelse af patienternes retsstilling. I det omfang retspraksis forud for loven havde afsvækket beviskravet også set i forhold til et krav om sandsynlighedsovervægt, skulle dette således også gælde efter patienterstatningsordningen. Afgørelsen i U 2002.1690 H går imidlertid videre end dette, idet linjen fra de ovenfor nævnte afgørelser blev fortsat i et tilfælde, hvor der formentlig ikke forelå culpa overhovedet, men alene et ansvarsgrundlag efter den skærpede norm i KEL § 20, stk. 1, nr. 1, jf. herom nedenfor kapitel 14, afsnit 3.2.2.2. Det har dog næppe været Højesterets mening at tilsidesætte lovens krav om sandsynlighedsovervægt for så vidt angår tilfælde, hvor der ikke foreligger culpa[6] (jf. ovenfor om den – manglende – bevislettelse alene som følge af en streng culpabedømmelse). Dette synes da også at være bekræftet ved afgørelsen U 2006.1717 H, der fastholder kravet om bevis for »overvejende sandsynlighed« i et tilfælde, hvor der ikke var begået »ansvarspådragende fejl«, dvs. hvor der ikke forelå culpa; se også afgørelserne U 2007.1591 H, U 2019.3916 H, U 2020.118 H (»fejlskøn« fra en læge, men ikke en sådan klar fejl, at der var grundlag for bevislettelse) og landsrettens dom i U 2006.1114 H.

## 2.    Adækvansproblemer

Adækvansproblemet opstår, når det *er* konstateret, at en person har handlet culpøst,[7] og det *er* antaget, at der er årsagssammenhæng mellem handling og

---

6.    Se kritik af afgørelsen, *Bo von Eyben* i »Patientforsikringen – De første ti år« (2002) s. 23 ff., Patientforsikringens Årsberetning 2002 s. 72 ff. og Patientskadeankenævnets Årsberetning 2002 s. 112 ff.

7.    Ved culpabedømmelsen er det – som uddybet ovenfor i kapitel 4, afsnit 3.3.6 – ét moment blandt flere, om handlingen er farlig, og om dette er kendeligt (undertiden formuleret som påregneligt) for den handlende, jf. eksempelvis afgørelserne U 1939.547 H og U 1956.1085 V. I praksis kan det derfor undertiden være vanskeligt at holde culpa- og adækvansvurderingen adskilt, jf. f.eks. afgørelsen i FED 2001.785 S om en hurtigfærges forårsagelse af en kraftig bølge: Efter at have fastslået årsagsforbindelsen fortsætter dommen med at fastslå, at sejladsen ikke var uforsvarlig, og at

Bo von Eyben og Helle Isager - 9788757458237
Download fra Jurabibliotek.dk, 01/20/2025 09:46:56AM
via Kammeradvokaten

I, the undersigned, Hossam Farooq Khawaja, certify that I am fluent in both the English and Danish languages and that the preceding text in the English language is to the best of my knowledge and belief a true and faithful translation of "Textbook on Tort Law" (Lærebog i erstatningsret), 10th edition (2024) by Bo Von Eyben and Helle Isager in the Danish language.

Copenhagen, 22 January 2025

*Hossamfk*

Hossam Farooq Khawaja
Assistant Attorney