# Exhibit 9

# CERTIFIED TRANSLATION

**U.1995.143V**

**V.L.D. 24 November 1994 in appeal 6th dept. B-1949-93**
(Ole Unmack Larsen, Deleuran, Hans Henrik Vagner (deputy))

*F (adv. Mogens Bertelsen, Aalborg, n.d.)*
mod
*Assurance-Compagniet Baltica, Ballerup (adv. Claus Madsen, Viborg)*

*General topics 3 Insurance 3.2*
**Not proven that the policyholder had caused the insurance event, which had not been investigated by the police.**

- After the policyholder F's car was found totally damaged at the foot of a cliff, the comprehensive insurance company S refused to compensate for the damage, as a technical lock investigation initiated by S had shown that the car had been driven with the correct key. - No police report had been filed by S in the case, and the circumstances of the insurance event and any suspicion against F had therefore not been subject to the usual police investigation. The resulting uncertainty of evidence had to be detrimental to S. Regardless of the investigations carried out by S, which were corroborated by an expert opinion, it was not proven with the necessary certainty that the insured event had not been covered by S's obligation to provide coverage. [1]

Of appeal 6th inst. B-1949-93 - F (Mogens Bertelsen, Aalborg, above) v *Assurance-Compagniet Baltica*, Ballerup ( Claus Madsen, Viborg) - it appeared that the appellant had claimed that the respondent should be ordered to recognise the liability to pay compensation for the damage caused to his car by a theft committed on 21 October 1991. The defendant had claimed acquittal.

During the case, it was stated that on 21 October 1991, the car was found totally damaged at the foot of a 30-metre high cliff by the North Sea about 2 km south of Lønstrup. No breakage marks were found on the doors or the ignition lock. The respondent, who was the comprehensive insurer for the car, had had the locks examined by Mejlshede A/S, Copenhagen, and the company's statement of 22 November 1991 contains the following summary: "None of this Peugeot's locks have been opened by force. Nor have they been picked. Manipulation with another car key is considered less likely; but it cannot be excluded. As with most other cars, there are so many ways to open the car door that it is difficult to make a definitive statement about whether the doors have been opened unauthorised." In a letter dated 16 January 1992, the respondent had refused to compensate the damage and had later explained to the appellant's lawyer that the technical lock examination had shown that the vehicle had been driven with the correct key. It was also stated that the appellant had been in arrears with payment of the insurance premium, which had however been paid on 21 October 1991.

## City Courts

### *In Aalborg Court's 6th department's judgement of 24 August 1993*, it is stated, among other things:

The plaintiff has argued in support of their claim that the event in question is covered, and that the defendant bears the burden of proof when the company asserts that the car was driven using its own key.

---

[1] See U.1986.125 H, U.1986.449 H and U.1989.509.

As the offence is punishable as attempted insurance fraud, this burden of proof must be strict, and circumstantial evidence and presumptions are not enough to exempt the defendant from liability. The defendant has not met this burden of proof. Although the vehicle shows no signs of violence, it is not certain that the locks have not been manipulated with a foreign key, as 3 out of 25 different keys for this model fit in the locks, and the vehicle has always been driven by someone other than the plaintiff, so that it cannot be ruled out that there are more keys than the two that the plaintiff has. There is no evidence that the plaintiff himself or any of his acquaintances have tried to dispose of the vehicle, and there is no economic motive.

The defendant has agreed that it is the company that has the burden of proof that the damage is not covered. The question is, however, how much is required to fulfill this burden of proof. The decisive factor must be the circumstances under which  car disappeared and any motive on the part of the policyholders. The circumstances in this case are sufficient. For example, both the damage consultant and the expert assessor say that the car was driven with a usable key, the locking system is twice as secure as normal, only just over 10% of the tested keys fit in the ignition lock, and it seems unlikely that a thief would carry so many keys or a copy key. It is therefore unlikely that the vehicle has been stolen. In addition, the dangerous location where the vehicle was pushed over a 35 meter high cliff suggests that they wanted to make sure that the car was totally damaged. No one other than the policyholder (the plaintiff) had a financial interest in the total loss, and the plaintiff, who was also in arrears with premium payment, had made unsuccessful

**144**

attempts to sell the vehicle at a sufficiently high price to cover the outstanding debt secured by the lie

### The court must pronounce:

Based on the evidence, the court *finds that* the plaintiff's car when discovered on the beach, had intact door and ignition locks, that the locking system, at least in the ignition, was fairly secure, that there is no information indicating that duplicates of the car's original keys had been made, and *that* the vehicle was pushed sideways over a high cliff. Furthermore, the court finds that the plaintiff had unsuccessfully tried to sell the car at a price high enough to cover mortgage debt, and that the policyholder was in such a serious premium payment arrears that the insurance would have lapsed if it had not been paid on the day of the crash. Under these circumstances, the court finds it sufficiently proven that the insurance event in question  in question is not covered, and therefore the defendant's claim for acquittal is granted.

## Western High Court

**V.L.D. 24 November 1994 (Ole Unmack Larsen, Deleuran, Hans Henrik Vagner (deputy)).**

- Before the High Court, the appellant, F, has reiterated their claim from the first instance.

The defendant, Assurance-Compagniet Baltica, claimed that the judgement should be upheld.

In both instances, the appellant has free legal aid and legal aid coverage. The appellant has further explained that he has now paid the remaining debt on the damaged car. He has bought another car -a Mazda passenger car - for DKK 63,000 in cash. His financial situation at the time of the incident was satisfactory.

Copyright© 2023 Karnov Group Denmark A/S                                   1

Among other things, he bought another shop, which he paid for with DKK 130,000 in cash. The premium payment arrears were due to the fact that he was struggling to cope with his office work. The car had been inspected 2-3 months before the damage, which had cost approx DKK 11,000. He had bought the car for DKK 87,000. On 21 October 1991, he received a call from Hjørring police, who informed him of the discovery of the car and urged him to report the incident to Aalborg police, which he did.

- - - - was employed by him until around July/August 1991, and he used the car in that connection and a few times thereafter. In the time leading up to the accident, the car was also used by a colleague--------------------------who occasionally picked up goods in it.

The expert assessor, Jan Helbo, has also explained that this is a relatively secure type of key. For his investigation, he was given the two door locks, the steering wheel lock and the 25 keys that Mejlshede A/S had used in their . His investigations confirmed Mejlshede A/S' results. He cannot deny that a copy key was used, even though he has found no traces such a key. The damaged car is not among the top 10 best-selling vans in Denmark.

### The High Court states:

The respondent has not filed a police report in the case, and the detailed circumstances in connection with the insurance event and possibly the background for a suspicion against the policyholder have therefore not been subject to the usual police investigation. The resulting uncertainty of evidence must be detrimental to the respondent.

Notwithstanding the investigations made by the respondent and what is stated in the statement of the expert assessor, it is therefore not proven with the necessary certainty that the insurance event has not been covered by the respondent's obligation to provide cover. The High Court therefore upholds the appellant's claim.

The costs of the case for both courts shall be paid by the respondent to the State in the amount of DKK 2,500 and to the appellant in the amount of DKK 37,000.

Copyright© 2023 Karnov Group Denmark A/S

**U.1995.143V**

**V.L.D. 24. november 1994 i anke 6. afd. B-1949-93**
(Ole Unmack Larsen, Deleuran, Hans Henrik Vagner (kst.))

*F (adv. Mogens Bertelsen, Aalborg, e.o.)*
mod
*Assurance-Compagniet Baltica, Ballerup (adv. Claus Madsen, Viborg)*

*Almindelige emner 3 Forsikring 3.2*
***Ikke bevist, at forsikringstager havde fremkaldt forsikringsbegivenheden, der ikke var blevet efterforsket af politiet.***

♦ Efter at forsikringstageren F's bil var fundet totalskadet ved foden af en skrænt, nægtede kaskoforsikringsselskabet S at erstatte skaden, idet en af S iværksat låseteknisk undersøgelse havde vist, at bilen havde været kørt med rette nøgle. - Der var ikke af S indgivet politianmeldelse i sagen, og de nærmere omstændigheder i forbindelse med forsikringsbegivenheden og evt. baggrunden for en mistanke mod F havde derfor ikke været genstand for sædvanlig politimæssig efterforskning. Den heraf følgende bevisusikkerhed måtte komme S til skade. Uanset de af S foretagne undersøgelser, som var bestyrket ved et syn og skøn, var det herefter ikke med den fornødne sikkerhed bevist, at forsikringsbegivenheden ikke havde været omfattet af S's dækningspligt. [1]

Af anke 6. afd. B-1949-93 - F (adv. Mogens Bertelsen, Aalborg, e.o.) mod *Assurance-Compagniet Baltica*, Ballerup (adv. Claus Madsen, Viborg) - fremgik, at appellanten havde påstået indstævnte dømt til at anerkende erstatningspligten for de skader, som hans bil var blevet påført ved et tyveri begået den 21. oktober 1991. Indstævnte havde påstået frifindelse.

Det var under sagen oplyst, at bilen den 21. oktober 1991 var fundet totalskadet ved foden af en ca. 30 meter høj skrænt ud til Vesterhavet ca. 2 km syd for Lønstrup. Der var ikke fundet opbrydningsmærker på dørene eller tændingslåsen. Indstævnte, der var kaskoforsikrer for bilen, havde hos firma Mejlshede A/S, København, fået foretaget en undersøgelse af låsene, og firmaets erklæring af 22. november 1991 herom indeholder følgende resumé: »Ingen af denne Peugeot's låse har været åbnet med vold. Ej heller har de været opdirket. Manipulation med en anden autonøgle anses som mindre sandsynligt; men det kan ikke udelukkes. Som ved de fleste andre biler, er der så mange måder bildøren kan åbnes på, at det er vanskeligt at udtale sig definitivt om dørene har været uretmæssigt åbnet.« Herefter havde indstævnte i skrivelse af 16. januar 1992 afslået at erstatte skaden og havde senere over for appellantens advokat begrundet afslaget med, at den låsetekniske undersøgelse havde vist, at køretøjet havde været kørt med rette nøgle. Det var endvidere oplyst, at appellanten havde været i restance med betaling af forsikringspræmien, som imidlertid var blevet betalt den 21. oktober 1991.

## Byretten

### *I Aalborg Rets 6. afdelings dom 24. august 1993* siges bl.a.:

Sagsøgeren har til støtte for sin påstand gjort gældende, at der er tale om en dækningsberettiget begivenhed, og at sagsøgte har bevisbyrden herfor, når selskabet hævder, at bilen er blevet kørt med egen nøgle. Da forholdet i givet fald er strafbart som forsøg på forsikringssvig, skal denne bevisbyrde være streng, og indicier og formodninger er ikke nok til at fritage sagsøgte for erstatningspligten. Sagsøgte har ikke løftet denne bevisbyrde. Ganske vist viser vognen ingen tegn på vold, men det er ikke sikkert, at låsene ikke har været manipuleret med en fremmed nøgle, idet 3 ud af 25 forskellige nøgler til denne model passer i låsene, ligesom vognen hele tiden har været kørt af andre end sagsøgeren, således at man ikke kan udelukke, at der findes flere nøgler end de to, som sagsøgeren har. Der er ikke bevis for at sagsøgeren selv eller nogle af hans bekendte har forsøgt at bortskaffe vognen, og noget økonomisk motiv foreligger ikke.

Sagsøgte har erklæret sig enig i, at det er selskabet, der har bevisbyrden for, at skaden ikke er dækningsberettiget. Spørgsmålet er imidlertid, hvor meget der forlanges for at løfte denne bevisbyrde. Afgørende herfor må være, under hvilke omstændigheder bilen er forsvundet og et eventuelt motiv hertil hos forsikringstagerne. De omstændigheder, der foreligger i denne sag er tilstrækkelige. Således siger såvel skadeskonsulenten som skønsmanden, at bilen er kørt med en brugbar nøgle, låsesystemet er dobbelt så sikkert som normalt, kun lidt over 10% af de afprøvede nøgler passede i tændingslåsen, og det forekommer usandsynligt, at en brugstyv går rundt med så mange nøgler eller med en kopinøgle. Det er derfor usandsynligt, at vognen er brugsstjålet. Dertil kommer det farlige sted, hvor vognen er skubbet ud over en 35 m høj skrænt, hvilket tyder på, at man har villet være sikker på, at bilen blev totalskadet. Ingen andre end forsikringstageren (sagsøgeren) har haft økonomisk interesse i totalskaden, og denne, der tilmed var i præmierestance, har gjort forgæves

144

forsøg på at sælge vognen til en tilstrækkelig høj pris til at dække pantgælden.

### Retten skal udtale:

Efter den skete bevisførelse lægger retten til grund, *at* sagsøgerens bil ved fundet på stranden havde ubeskadigede dør- og tændingslåse, at låsesystemet i hvert fald i tændingslåsen var ret sikkert, at der ikke foreligger oplysninger om, at der skulle være fremstillet kopier af bilens originalnøgler, og *at* vognen er skubbet sideløns ud over en høj skrænt. Endvidere lægger retten til grund, at sagsøgeren forgæves havde forsøgt at sælge bilen til en pris, der var høj nok til at dække pantegælden i denne, samt at forsikringstageren var i en så alvorlig præmierestance, at forsikringen ville være bortfaldet, hvis den ikke var blevet betalt på selve dagen for nedstyrtningen.

Under disse omstændigheder finder retten det tilstrækkeligt godtgjort, at den omhandlede forsikringsbegivenhed ikke er dækningsberettiget, hvorfor sagsøgtes påstand om frifindelse tages til følge. - - -

## Vestre Landsret

**V.L.D. 24. november 1994 (Ole Unmack Larsen, Deleuran, Hans Henrik Vagner (kst.)).**

- - - For landsretten har appellanten, F, gentaget sin påstand i 1. instans.

Indstævnte, Assurance-Compagniet Baltica, har påstået dommen stadfæstet.

Appellanten har i begge instanser fri proces og retshjælpsdækning.

Appellanten har supplerende forklaret, at han nu har betalt restgælden på den beskadigede bil. Han har købt en anden bil - en Mazda personbil - for 63.000 kr. kontant. Hans økonomi var på

---

[1] Jf. U.1986.125 H, U.1986.449 H samt U.1989.509.

skadestidspunktet udmærket. Bl.a. købte han yderligere en butik, som han betalte med 130.000 kr. kontant. Præmierestancen skyldtes, at han har lidt svært ved at klare sit kontorarbejde. Bilen var blevet synet 2-3 måneder inden beskadigelsen, hvilket havde kostet ca. 11.000 kr. Han havde købt bilen for 87.000 kr. Den 21. oktober 1991 blev han ringet op af Hjørring politi, der oplyste ham om fundet af bilen og opfordrede ham til at anmelde forholdet til Aalborg politi, hvilket han så gjorde. - - - var ansat hos ham i perioden til omkring juli/august 1991, og han benyttede bilen i den forbindelse og også enkelte gange derefter. I tiden op til uheldet blev bilen endvidere benyttet af en kollega - - - - - der af og til hentede varer i den.

Skønsmanden Jan Helbo har supplerende forklaret, at der er tale om en forholdsvis sikker nøgletype. Han fik til brug for sin undersøgelse udleveret de to dørlåse, ratlåsen og de 25 nøgler, som Mejlshede A/S havde brugt i deres undersøgelser. Hans undersøgelser bekræftede Mejlshede A/S' resultat. Han kan ikke afvise, at der er anvendt en kopinøgle, selv om han ikke har fundet spor efter en sådan. Den beskadigede bil hører ikke til blandt de 10 mest solgte varebiler i Danmark.

**Landsretten udtaler:**

Der er ikke af indstævnte indgivet politianmeldelse i sagen, og de nærmere omstændigheder i forbindelse med forsikringsbegivenheden og eventuelt baggrunden for en mistanke mod forsikringstageren har derfor ikke været genstand for sædvanlig politimæssig efterforskning. Den heraf følgende bevisusikkerhed må komme indstævnte til skade.

Uanset de af indstævnte foretagne undersøgelser og det, som er anført i skønserklæringen, findes det herefter ikke med den fornødne sikkerhed bevist, at forsikringsbegivenheden ikke har været omfattet af indstævntes dækningspligt. Landsretten tager derfor appellantens påstand til følge. - - -

Sagens omkostninger for begge retter skal indstævnte - - - betale til statskassen med 2.500 kr. og til appellanten med 37.000 kr.

Copyright © 2023 Karnov Group Denmark A/S                               side 2

I, the undersigned, Hossam Farooq Khawaja, certify that I am fluent in both the English and Danish languages and that the preceding text in the English language is to the best of my knowledge and belief a true and faithful translation of the high court judgment published as "U 1995.143 V" in the Danish language.

Copenhagen, 17 January 2025

*Hossamfk*

Hossam Farooq Khawaja

Assistant Attorney
