# Exhibit 3



London

This is to certify that the attached document is, to the best of my knowledge and belief a true, accurate and complete translation from Danish into English of the attached extract from "Textbook on Tort law", by Bo von Eyben and Helle Isager, pages 257-258.

Yours sincerely,

Andrzej Orville

Senior Project Manager

Wednesday, January 22, 2025

Consortra Translations Ltd
Rex House,
4-12 Regent Street
London
SW1Y 4RG
UK

# Textbook on Tort law

6th edition

*Bo von Eyhen*
*Helle Isager*

Publishers of the Norwegian Association of Lawyers and Economists

Bo von Eyben and Helle Isager

# Textbook on Tort Law
6th edition



Publishers of the Norwegian Association of Lawyers and Economists
2007

*Textbook in tort law*
6th edition, 1st print run

© 2007 by the Publishers of the Norwegian Association of Lawyers and Economists

All rights reserved.
Any mechanical, electronic, photographic or other reproduction of or copying from this book or parts thereof is not permitted under applicable Danish copyright law without the publisher's written consent or agreement with Copy-Dan.

Cover: Morten Højmark
Printing: Narayana Press, Gylling
Binding: Damm's Publishing Bookbinding, Randers

Printed in Denmark 2007
ISBN 978-87-574-1674-9

Publishers of the Norwegian Association of Lawyers and Economists
Lyngbyvej 17
PO Box 2702
2100 Copenhagen 0

Phone: 39 13 55 55 00
Fax: 39 13 55 55 55
email forlag@djoef.dk
www.djoef-forlag.dk

*1.3 Evidentiary requirements and burden of proof*

[…] this may, for example, aim to eliminate factors other than the cause of liability as possible causes. A typical example of this type of evidence is often found in cases of cable breakage and damage in connection with excavation work, see, for example, decisions FED 2004.1337 0 and FED 1999.2172 V (where an essential part of the evidence was that no other excavation work had been carried out in the area that could have caused the damage, cf. the decision in FED 2001.2691 S on damage to a submarine cable and generally on the issue *von Eyben IV* p. 58 et seq.). An example of personal injury is the decision FED 2003.1806 V, where the issue was whether a traffic accident was the cause of the injured party's death approx. $\frac{1}{2}$ year later. The victim suffered a blood clot in the brain; according to the Forensic Medical Council, the probability of a causal connection was "low", but this did not take into account that the first symptoms of the conditions that led to the blood clot occurred a few days after the accident. As a result of this temporal connection and the fact that no other causes of the blood clot had been proven, the judgment ruled that there was a causal connection.

Thus, it is the judge who determines the requirements for *the strength of the evidence* and who bears *the burden of proof*, i.e. which of the parties should be penalized for not providing sufficient evidence of a disputed fact.

As with the fault condition, cf. chapter 3, section 5 above, the starting point is that the burden of proof regarding the causation condition rests with the injured party. If the injured party cannot provide evidence that can convince the judge that the causation condition is fulfilled, the injured party's claim will not be upheld. However, the significance of the burden of proof depends on the requirements for the strength of the evidence. As a minimum, the injured party must prove that the cause of liability *could* have caused the damage, i.e. that it is a *possible* cause. However, it is generally accepted that such proof - at least as a general rule, see below - is not sufficient. As long as there is no certainty, the possibility of a causal connection can be expressed as a degree of probability, which in principle can range from 1% to 99%. One could then imagine that the standard of proof would be a requirement of *overwhelming probability*, i.e. a probability level of at least 51% (based on the "mathematical" consideration that this will, *on average,* lead to more correct decisions than wrong ones). This is how the standard of proof is formulated in a number of countries (including Norway, cf. *Lødrup* p. 275 and *Nygaard* p. 340 f), but not in Denmark, where the standard of proof is higher than this.

Indirectly, this was clearly expressed in the decision in U 2002.1496 H, where a person had been punched in the face, causing him to fall over and hit his head against a radiator and a shelf arrangement; shortly afterwards he suffered a blood clot in the brain. The question was thus whether this *deliberate* act of violence could be considered to be the

257

*Chapter 12*

cause of the blood clot. The majority of the Supreme Court stated: "In such a compensation case, it must be considered sufficient to establish a causal link that it is considered more likely that the brain injury would not have occurred without A's violence than that the brain injury would have occurred even without A's violence." In *this* case, a requirement of overwhelming probability was thus accepted, but at the same time it was expressed that this is not the general principle, but a relaxation of the standard of proof in relation to this.

The same conclusion can be drawn from decision U 2005.2151 H on claims for compensation under the now repealed Act on compensation for injuries caused by vaccinations. This law required that there was a "reasonable" probability" of a causal connection between the vaccination and the injury. This was - as stated in the judgment - a "relaxation of the usual requirements for proof of causation in a compensation case", but it had to require "an overwhelming probability (more than 50%) that the injury was caused by the vaccination" (which was not found to be the case). Thus, it was made clear that a requirement of "more than 50 % probability" is a relaxation of the general evidentiary requirements in compensation cases.

The same thinking is behind the rule in KEL Article 20(1), according to which compensation is awarded if the injury is more likely than not caused in one of the ways specified in the provision; see chapter 14, section 3.2.1.1 below. This also emphasized that, in these cases, the same requirements for proof of causality should not be imposed as the courts generally impose in tort cases. The corresponding principle in KEL Article 44 on pharmaceutical injuries, cf. chapter 14, section 4 for example, means that it is easier to establish a causal link between the use of contraceptive pills and blood clots than it was in case law prior to the Act; cf. the decision in U 1989.135 H where it was held that the identification of pills as a "risk factor" did not mean that such a degree of probability had been demonstrated that it met the general requirements for proof of causation in the individual case.

Apart from the fact that it can be inferred that more than a "preponderance of probability" is required, the courts have never specified *how much* more is required - cf. Swedish law, *Hellner and Radetzki* p. 200 et seqq., where case law has formulated a requirement for a "clear preponderance of probability". This is usually only possible in cases where two known possible causal factors must be weighed against each other, but most often there are several possibilities where one or more are completely unknown (at least in the sense that there is no information that allows for a probability assessment). It will, therefore, often be necessary to consider several factors when deciding which fact to base the decision upon.

In the decision in FED 2001.292 V, the question was whether the use of fly ash during roadworks caused the illness and death of some horses in fields around the work area. According to the expert statements in the case, it was not possible to say anything about the probability of causation. However, the court found this proven, taking into account the temporal connection between the use of fly ash and the horses' illness, that there was no […]

258

# Lærebog i erstatningsret

## 6. udgave

*Bo von Eyben*
*Helle Isager*

Jurist- og Økonomforbundets Forlag

Bo von Eyben og Helle Isager

# Lærebog i erstatningsret
## 6. udgave



Jurist- og Økonomforbundets Forlag
2007

*Lærebog i erstatningsret*

6. udgave, 1. oplag

© 2007 by Jurist- og Økonomforbundets Forlag

Alle rettigheder forbeholdes.
Mekanisk, elektronisk, fotografisk eller anden gengivelse af
eller kopiering fra denne bog eller dele heraf
er ifølge gældende dansk lov om ophavsret ikke tilladt
uden forlagets skriftlige samtykke eller aftale med Copy-Dan.

Omslag: Morten Højmark
Tryk: Narayana Press, Gylling
Indbinding: Damm's Forlagsbogbinderi, Randers

Printed in Denmark 2007
ISBN 978-87-574-1674-9


Jurist- og Økonomforbundets Forlag
Lyngbyvej 17
Postboks 2702
2100 København Ø

Telefon: 39 13 55 00
Telefax: 39 13 55 55
e-mail: forlag@djoef.dk
www.djoef-forlag.dk


*1.3. Beviskrav og bevisbyrde*

relse, der f.eks. kan tage sigte på at eliminere andre faktorer end det ansvarsbegrundende forhold som mulige årsager. Et typisk eksempel på denne form for bevisførelse forekommer ofte i sager om kabelbrud og lign. i forbindelse med udgravningsarbejder, se f.eks. afgørelserne FED 2004.1337 Ø og FED 1999.2172 V (hvor et væsentligt led i bevisførelsen var, at der ikke var udført andre gravearbejder i området, som kunne have forvoldt skaden, sml. afgørelsen i FED 2001.2691 S om skade på et søkabel og generelt om problemstillingen *von Eyben IV* s. 58 f). Som eksempel på en personskade kan nævnes afgørelsen FED 2003.1806 V, hvor spørgsmålet var, om et trafikuheld var årsag til, at den skadelidte ca. ½ år efter blev ramt af en blodprop i hjernen; ifølge Retslægerådet var sandsynligheden for årsagsforbindelse "ringe", men man havde herved ikke taget højde for, at de første symptomer på de forhold, som førte til blodproppen, indtraf få dage efter uheldet; som følge af denne tidsmæssige sammenhæng, og det forhold, at der ikke var påvist andre årsager til blodproppen, statuerede dommen, at der var årsagsforbindelse.

Det er således dommeren, som fastlægger, hvilke krav der skal stilles til *bevisets styrke*, og hvem *bevisbyrden* påhviler, dvs. hvilken af parterne det skal gå ud over, at der ikke er blevet ført tilstrækkeligt bevis for et omtvistet, faktisk forhold.

Ligesom vedrørende culpabetingelsen, jf. ovenfor kapitel 3, afsnit 5, er udgangspunktet, at bevisbyrden vedrørende årsagsbetingelsen påhviler den skadelidte. Kan skadelidte ikke tilvejebringe beviser, som kan overbevise dommeren om, at årsagsbetingelsen er opfyldt, får skadelidte således ikke medhold i sit krav. Betydningen af bevisbyrden afhænger imidlertid af kravene til bevisets styrke. Skadelidte må som et minimum føre bevis for, at det ansvarsbegrundende forhold *kunne* have forvoldt skaden, dvs. at det er en *mulig* årsag. Det er imidlertid givet, at et sådant bevis – i hvert fald som altovervejende hovedregel, jf. nedenfor – ikke er tilstrækkeligt. Så længe der ikke foreligger vished, kan muligheden for årsagsforbindelse udtrykkes i en sandsynlighedsgrad, der principielt kan række fra 1 % til 99 %. Man kunne da forestille sig, at beviskravet måtte være et krav om *overvejende sandsynlighed*, dvs. en sandsynlighedsgrad på mindst 51 % (ud fra den "matematiske" betragtning, at dette *gennemsnitligt* vil føre til flere rigtige end forkerte afgørelser). Sådan er beviskravet da også udformet i en række lande (herunder Norge, jf. *Lødrup* s. 275 og *Nygaard* s. 340 f), men ikke i Danmark, hvor kravet til bevis er større end dette.

Indirekte er dette kommet klart til udtryk i afgørelsen i U 2002.1496 H, hvor en person var blevet tildelt et knytnæveslag i ansigtet, hvorved han faldt om og slog hovedet mod en fryser og et hyldearrangement; kort efter blev han ramt af en blodprop i hjernen. Spørgsmålet var således, om denne *forsætlige* voldsudøvelse kunne anses for at være årsag til

257

blodproppen. Herom udtalte flertallet i Højesteret: »I en sådan erstatningssag må det anses for tilstrækkeligt til at statuere årsagsforbindelse, at det bedømmes som mere sandsynligt, at hjerneskaden ikke ville være indtrådt uden A's vold, end at hjerneskaden ville være indtrådt også uden A's vold.« I *dette* tilfælde accepterede man således et krav om overvejende sandsynlighed, men dermed blev der samtidig givet udtryk for, at dette netop ikke er det generelle princip, men en slækkelse af beviskravet i forhold hertil.

Samme slutning kan drages fra afgørelsen U 2005.2151 H om krav om erstatning i henhold til den nu ophævede lov om erstatning for skader ved vaccinationer. Denne lov krævede, at der var "rimelig" sandsynlighed" for årsagsforbindelse mellem vaccinationen og skaden. Heri lå – som anført i dommen – en "lempelse af de sædvanlige krav til beviset for årsagssammenhæng i en erstatningssag", men der måtte kræves "en overvejende sandsynlighed (mere end 50 %) for, at skaden er forvoldt af vaccinationen" (hvilket ikke fandtes at være tilfældet). Hermed blev det således gjort klart, at et krav om "overvejende sandsynlighed (mere end 50 %) *er* en lempelse i forhold til de almindelige beviskrav i erstatningssager.

Samme tankegang ligger bag reglen i KEL § 20, stk. 1, hvorefter erstatning ydes, hvis skaden med overvejende sandsynlighed er forvoldt på en af de i bestemmelsen angivne måder, jf. herom nedenfor kapitel 14, afsnit 3.2.1.1. Hermed betonedes ligeledes, at der i disse sager ikke skulle stilles samme krav til bevis for årsagssammenhæng, som domstolene i almindelighed stiller i erstatningssager. Det tilsvarende princip i KEL § 44 om lægemiddelskader, jf. herom i kapitel 14, afsnit 4, fører f.eks. til, at der lettere kan statueres årsagsforbindelse mellem brug af p-piller og blodpropper, end tilfældet var i retspraksis forud for loven, jf. afgørelsen i U 1989.135 H, hvor det blev statueret, at påvisningen af p-piller som "risikofaktor" ikke var ensbetydende med, at der var påvist en sådan grad af sandsynlighed, at det opfyldte almindelige krav til bevis for årsagssammenhæng i det enkelte tilfælde.

Bortset fra, at det således kan udledes, at der kræves mere end "sandsynlighedsovervægt", har domstolene aldrig præciseret, *hvor meget* mere der kræves – sml. om svensk ret, *Hellner og Radetzki* s. 200 ff, hvor retspraksis har formuleret et krav om "klar sandsynlighedsovervægt". Det hænger formentlig sammen med, at man i virkelighedens verden kun sjældent kan fastsætte en bestemt sandsynlighedsgrad. Det vil normalt højst være muligt i tilfælde, hvor man skal afveje to kendte, mulige årsagsfaktorer over for hinanden, men oftest er der flere muligheder, hvor en eller flere er helt eller delvist ukendte (i hvert fald i den forstand, at der ikke foreligger oplysninger, der muliggør en sandsynlighedsvurdering). Det vil derfor oftest være nødvendigt at inddrage flere faktorer ved bedømmelsen af, hvilket faktum der skal lægges til grund for afgørelsen.

I afgørelsen i FED 2001.292 V var spørgsmålet, om anvendelse af flyveaske ved et vejarbejde var årsag til, at nogle heste på marker omkring arbejdsområdet blev syge og døde. Ifølge de sagkyndige erklæringer i sagen var det ikke muligt at sige noget om sandsynligheden for årsagssammenhæng. Retten fandt imidlertid denne bevist under hensyn til den tidsmæssige sammenhæng mellem brugen af flyveaske og hestenes sygdom, at der ikke