# Exhibit 11



London

This is to certify that the attached document is, to the best of my knowledge and belief a true, accurate and complete translation from Danish into English of the attached extract from U.2003.2425V regarding "Not proven by the state that a painting that had once hung on an estate and belonged to its owner was covered by the confiscation of the estate in 1946".

Yours sincerely,

*[signature]*

Andrzej Orville

Senior Project Manager

Thursday, January 23, 2025

Consortra Translations Ltd
Rex House,
4-12 Regent Street
London
SW1Y 4RG
UK

U.2003.2425V

***Not proven by the state that a painting that had once hung on an estate and belonged to its owner was covered by the confiscation of the estate in 1946.***

*General topics 21.3 - Administration of justice 14.6 and 14.7 - Criminal law 3.4.*

♦ A painting of Frederiksborg Castle which, according to an inventory from 1933, belonged to the Kalø estate which was owned by a German noble family, has been hanging in the estate manager G's residence in the estate's main building since 1936-1943. In 1946, the estate was confiscated under the Act on Confiscation of German and Japanese Property. When G retired in 1980, he moved to a house in a nearby town and took his belongings from the official residence, including the painting. In 1999, G moved into a nursing home and gave some of his belongings to his three daughters D, including the painting. D put the painting up for sale at auction house C, which valued the painting at DKK 60,000, and it was sold for DKK 52,000. After the sale, the painting was restored, and it could now be confirmed that it bore the signature of the famous Norwegian Golden Age painter

J.C. Dahl. G had passed away shortly before this became known. The painting was later sold by the auction house E for DKK 6,500,000. In 2001, D, who believed that C had made an error in the valuation of the painting, brought an action for damages against C. Before this case was heard, the state intervened in the case in 2002 claiming, among other things, that the painting was owned by the state, as it had belonged to the estate when it was confiscated in 1946. The question of the state's ownership was separated for separate negotiation and decision. The State referred, among other things, to the inventory from 1933 and claimed that D had the burden of proof that the painting belonged to them. For their part, D claimed that when the State, after many years, challenged their ownership of the painting, the burden of proof of ownership must rest with the State. Alternatively, D claimed that D were the bona fide contract purchasers who had enforced the state's right of ownership, or alternatively that they had acquired title to the painting, or alternatively that the state's right had ceased as a result of inaction. The state was not considered to be precluded from having it established in an action for recognition whether D had had ownership rights to the painting. The High Court placed the burden of proof of ownership on the state and agreed with D that the state had not proven that the painting had been covered by the confiscation in 1946. The High Court emphasized, among other things, that there could be different explanations for how G had come into possession of the painting. In addition, the state had not been able to obtain the lists of the inventory at Kalø that had been available in connection with the resignation of a former estate manager in 1948, and that no records of the movable property had been obtained during the confiscation, similar to what was available about another estate, Fussingø, which was also confiscated in 1946. The High Court also emphasized that a now retired civil servant, who had been a supervisor at Kalø after the state took over the estate, testified as a witness that, during the random checks that were continuously carried out of the inventory etc. at Kalø, it had never been established that G had illegitimately removed anything from the estate.

**V.L.D. August 14, 2003 in case 8. dept. B-1381-02**
(Helle Bertung, Eskild Jensen, Mette Søgaard Vammen (deputy)).

*The Danish State through the Ministry of the Environment, Forest and Nature Agency (State Attorney via Attorney Marianne Søgaard)*
versus
*Elsebil Kjærulf-Møller, Kirsten Gørner and Birgit Kristiansen (attorney Hans Erik Steffensen, Aarhus, for all).*

## Western High Court

This case concerns whether the Danish State acquired ownership of the painting " Frederiksborg Slot i måneskin" [Frederiksborg Castle in Moonlight] as part of the estate's inventory when it confiscated the Kalø Estate in accordance with Act no. 132 of March 30, 1946 on the Confiscation of German and Japanese Property (the Confiscation Act), or whether Elsebil Kjærulf-Møller, Kirsten Gørner and Birgit Kristiansen had ownership rights to the painting, which they received in 1999 from their late father, former estate manager Oluf Thygesen. The painting was later resold. Elsebil Kjærulf-Møller, Kirsten Gørner and Birgit Kristiansen originally brought an action against the auction house Crafoord - Nellemann og Thomsen ApS for damages, claiming that the auction house had committed liability-incurring errors in connection with the valuation and sale of the painting for them. The Danish State, represented by the Ministry of the Environment, the Danish Forest and Nature Agency, has joined as the main intervener and,

2426

on October 10, 2002, the High Court decided that the case between the main intervener, referred to in this judgment as the plaintiff, and Elsebil Kjærulf-Møller, Kirsten Gørner and Birgit Kristiansen, referred to as the defendants, shall be heard separately and before the case against the auction house.

The plaintiff requests that the Court should

1. Order the defendants to acknowledge that the defendants have no ownership rights to the painting "Frederiksborg Castle in Moonlight" painted by J.C. Dahl in 1817.

2. Order the defendants jointly and severally to pay the plaintiff DKK 52,000 plus interest from the initiation of proceedings on June 10, 2002. The defendants have requested acquittal.

The defendants have been granted legal aid. It is also stated that Elsebil Kjærulf-Møller and Birgit Kristiansen have legal aid insurance.

The circumstances of the case include the following: It appears from Oluf Thygesen's memoir: "Herregaardsliv på Kalø i et halvt Aarhundrede" [Manor life on Kalø for half a century], published in 1983, that on November 1, 1926, Oluf Thygesen took up the position of sub-manager at Kalø Estate. The estate had been purchased in 1824 by the German senator Martin Johan von Jenisch and had then passed on to his son, Senator Martin Johan von Jenisch, and to his son, Baron Martin Johan Rücker von Jenisch. He died in 1924, after which the estate was run by the executors of the estate and the widow, Baroness Thyra von Jenisch. The von Jenisch family used the estate as a vacation home and lived at Schloss Blumendorf near Hamburg. They owned several estates in Germany and Denmark. Oluf Thygesen moved into the so-called cavalier wing, which was located in a side wing of the main building. Other younger employees of the estate also lived in the cavalry wing. The von Jenisch family lived in the hunting lodge during the periods when they stayed on the estate. The hunting lodge was separate from the estate's other buildings. On November 1, 1928, Oluf Thygesen was promoted to foreman of the estate and moved to another room in the cavalry wing.

On April 1, 1929, he became the estate manager and moved into the main building in a room connected to the estate office, which he took over at the same time. In the main building was also the estate manager's residence. In 1936, Oluf Thygesen married Esther Herskind, who was employed on the estate to run the household. They moved into the estate manager's residence as the then estate manager, Folmer Lüttichau, lived with his family on the Rohden estate near Vejle.

In 1933, the Kalø Estate was transferred to the eldest son of the von Jenisch family, Wilhelm Ernst-Ludwig von Jenisch. Oluf Thygesen visited the von Jenisch family several times during the 1930s at Schloss Blumendorf, and when the family stayed at the Kalø Estate, Baroness Thyra von Jenisch occasionally invited Oluf and Esther Thygesen to dinner in the hunting lodge. During World War II, the von Jenisch family remained in Germany and did not visit the Kalø Estate. On July 13, 1943, Baron Wilhelm Ernst-Ludwig von Jenisch died in a plane crash on his way home from leave. As his younger brother, Baron Martin von Jenisch, had been killed in the war earlier that year, the estate was taken over by the youngest brother, Baron Johan-Christian von Jenisch.

The "Inventory list for Kalø Hovedgaard - I - 9 - 1933" specifies, among other things:

"...

GARDEN ROOM - LIVING ROOM - SEWING ROOM

...

1 Painting (Frederiksborg Castle)

..."

A handwritten inventory of April 15, 1945 of household effects specifies, among other things:

"...

List of Things at Kalø Hovedgaard on April 15, 1945 belonging to the Thygesen Family (name difficult to read):

| | |
|---|---|
| The garden room | 2 paintings |
| | 2 Malm candle holders |
| | 3 wicker chairs with cushions |
| | 1 wicker table with glass top |
| | 1 Gaming table |
| | 1 Oak folding table |
| | 1 Sconce - 1 Fireplace set - Wrought iron |
| | 1 Chandelier - 4 arms - Wrought iron |
| Living room | 9 Paintings |
| | 4 images |
| | 1 6-Armed Wrought Iron Chandelier |
| | 1 do. Lamp |
| | 1 Carved Renaissance oak cabinet |
| | 1 Ottoman with Pillow 2 Cushions, |
| | 2 Travel blankets |
| | 1 round polished table with 1 bronze lamp |
| | 3 leather chairs with cushions |
| | 1 Oak flap - Tilting table |
| | 1 Floor lamp - Oak - |
| | 1 Mahogany sofa + 2 Cushions |
| | 1 Bookcase with 100 Books |
| | 1 B&O Radio - 4 lamps |
| | 3 Renaissance chairs - Embroidery chair." |

Act no. 132 of March 30, 1946 on the confiscation of German and Japanese property confiscated all German enemy property in Denmark. The law states, among other things:

"...

### Chapter I.

#### § 1.

This law applies to all German enemy property located in the Kingdom, except such

**2427**

property taken by the Allied Armed Forces as spoils of war here in the Kingdom.

#### § 2.

German enemy property shall be deemed to be property which, at the time of the Act's coming into force, belongs to

1) The German State, German Municipalities and other German Public Authorities, Institutions etc.,

2) Persons with German citizenship,

...

#### § 3.

The term "Property" includes:

1) Real Estate,

2) Movable property of any kind, except for the walking clothes, linen, beds and bedclothes necessary for the claimant and his household, as well as household items which are necessary under the circumstances to maintain a decent home for the claimant and his household, and finally - up to a total value of DKK 2000 - items which otherwise are the most important necessities of life or are necessary for the exercise of the claimant's livelihood, including cash,

...

#### § 4.

Property covered by this Act is hereby confiscated for the benefit of the Danish State.

...

#### § 5.

On the recommendation of a committee consisting of seven members, … the Minister for Trade, Industry and Shipping may, when special circumstances are found to justify it, exempt property belonging to such Legal Subjects referred to in § 2, No. 2-3, which are found to be considered non-hostile, from confiscation.

...

§ 6.

For the implementation of the provisions of this Act a temporary position of Commissioner has been created.

...

§ 7.

It is incumbent upon the Commissioner to search for and, as soon as possible, take possession of all property covered by the Act and, to the extent that the State itself does not need the property in question, to realize it in accordance with the provisions of this Act ...

§ 8.

Real property covered by this Act shall be assumed by the Commissioner as soon as possible. The Commissioner shall, with reference to this Act, draw up a deed to the State ...

§ 23.

All other movable property not exempted from confiscation pursuant to § 5, is taken over by the Commissioner for Realization.

...

§ 37

This Act shall enter into force immediately.

..."

As Kalø Estate was owned by Baron Johan Christian von Jenisch, a German citizen at the time the law came into force, the estate was transferred to the state.

On June 13, 1946, Baron Johan-Christian von Jenisch applied to the Dispensation Board for Kalø Estate to be exempted from confiscation with reference to section 5 of the Act. He claimed compensation if the estate could not be exempted from confiscation.

On the recommendation of the Dispensation Board, the Ministry of Trade rejected the application for exemption from confiscation by letter dated January 20, 1947. The letter states, among other things, that Kalø contained ordinary household effects worth DKK 137,000. Under the Confiscation Act, several other estates in Denmark were confiscated, including Fussingø Estate.

The High Court has been presented with a detailed registration as of January 1, 1947 of movable and immovable property in the main building at Fussingø Estate and a transcript of a registration and valuation meeting held in the probate court in Viborg on February 14, 1948, regarding movable and immovable property at Fussingø Estate.

There are no similar registrations of household goods and chattels from Kalø Estate.

In connection with his resignation as estate manager, Folmer Lüttichau specified in a letter dated September 29, 1948 to the State Land Law Committee what written material regarding the estate he submitted to the committee. Among other things, the letter states

"...

Inventory list from 1941 for the Hunting Lodge, 1932 - Copy submitted to the Commissioner and the State Land Law Committee. Inventory lists for the Estate and Hovedgaard are held by Forester Wellendorf & Chief Forester Thygesen.

..."

After confiscation, Kalø Estate was taken over by the State Land Law Committee in 1948. The State Land Law Committee then leased the estate to the Hunting Council for a period of 16 years, and the estate changed its name to Kalø Hunting Lodge. At the end of September 1948, Folmer Lüttichau resigned from his position at the estate, and Oluf Thygesen was appointed as the new estate manager.

Act no. 146 of May 13, 1959 on amendments to the Confiscation Act exempted property covered by this Act - and which the commissioner had not taken over or made arrangements to take over before July 31, 1959 - from confiscation. The Act abolished the position of commissioner, and the Dispensation Board was abolished.

A letter dated November 16, 1974 from an unknown sender to master huntsman Folmer Lüttichau about "the case concerning Baron von Jenisch" states, among other things, that all old insurance policies for

**2428**

movable property at Kalø Estate are gone, and it was therefore not possible to find any figures for, among other things, the sum insured for the contents of the main building.

In 1980, Oluf Thygesen retired and moved with his wife from the estate manager's house to a house in Rønde. They brought the painting with them along with the rest of their belongings. When Oluf Thygesen moved into a nursing home in 1999, he transferred various belongings to the defendants, including the painting. The defendants sold this and some of the furniture through the auction house Nellemann og Thomsen ApS. The painting was not cleaned before the sale, and the auction house did not discover who had painted it. The auction house valued the painting at approximately DKK 60,000 and sold it at auction under the description "Danish Golden Age artist". The painting fetched DKK 52,000.

After the sale, the painting was cleaned, revealing that it was painted by the famous Norwegian Golden Age painter J.C. Dahl. Oluf Thygesen had passed away shortly beforehand. The painting was then sold at auction on June 7, 2000 by Ellekilde Auktionshus A/S for DKK 6,500,000.

On July 10, 2000, following an application from Ellekilde Auktionshus A/S, the Cultural Value Committee issued an export license for the painting valid until July 11, 2005. It has not been possible to find out where the painting is now located.

On May 22, 2001, the defendants brought an action against the auction house Nellemann og Thomsen ApS, now Crafoord - Nellemann & Thomsen ApS, claiming damages (B-1206-01). In connection with the case, the defendants' lawyer wrote to the plaintiff on September 11, 2001, asking whether the plaintiff would claim the painting. In a letter dated November 8, 2001, the Attorney General replied in the affirmative, and the Danish State subsequently sent a summons, received on June 10, 2002, and entered as main intervener in the action for damages.

During the court hearing, a photograph taken in the fireplace room in the estate manager's residence at Kalø Estate in 1943 was presented, which shows that the painting "Frederiksborg Castle in moonlight" hung above the fireplace. There are also photos from 1954 of the furnishings in the Thygesen family's home at Kalø as well as drawing material regarding the main building at Kalø.

Birgit Kristiansen has explained that she was born on September 26, 1937. Her paternal grandfather was a doctor, and her maternal grandfather was the principal of a folk high school. In 1945 and 1947, her parents inherited property and money from her paternal grandmother and maternal grandmother respectively. Her parents also inherited an unmarried aunt. Her parents and the von Jenisch family were not real friends, but the relationship was characterized by mutual respect. She remembers visiting the von Jenisch family in Germany with her sister Kirsten. It was just after the war. After her father's death, she found several greeting cards for him from members of the von Jenisch family. In the period after her mother's death in 1990, her father was visited several times by members of the von Jenisch family. Her father was not materialistic; only a few things meant something special to him. He was in charge of the overall management of Kalø Estate after the war, which meant responsibility for day-to-day operations and personnel. In 1944, he bought a farm in Skødstrup, which he ran as manager. He sold the farm in 1984. When the estate became a research station, it was often visited by various officials. His father was responsible for organizing many lunches and receptions at the estate. As there was no catering utensils for so many people on the estate, the parents used their own porcelain, silverware and tablecloths for these gatherings. The father had an excellent relationship with Folmer Lüttichau. After his father retired in 1980, they also kept in touch. When shown a floor plan of the main building at Kalø Estate, she explained that they lived in the estate manager's residence throughout her childhood. To the right of the front room was an estate office with stairs leading up to "Højenloft", which contained an office. The fireplace room, living room and dining room were adjacent to each other. The drawing shows the appearance of the fireplace room after a remodeling around 1950, when it became twice as large as before. They called the fireplace room the garden room, and it was the most often used room. When shown pictures of the living rooms taken in 1943 and 1954 respectively, she explained that the furniture in

the living rooms was partly inherited from family members and partly bought at auction. In this connection, she has explained in more detail where the individual pieces of furniture etc. in the photos of the furniture presented originate from. She found a handwritten inventory list, dated April 15, 1945, among her father's belongings after his death. She recognizes her father's handwriting on the list. The two paintings he lists as being in the garden room are the painting of Frederiksborg Castle and a painting of a naval battle. When the house was rebuilt, more furniture and paintings were added to the garden room. She never doubted that all the furniture in the private rooms belonged to her parents. Her mother had a great interest in furniture and told her about its origins. She doesn't remember ever talking to her parents about the painting and therefore has no knowledge of where it came from. In her memory, the painting has always hung above the fireplace in the garden room. When her parents moved from the estate in 1980, they enlisted the help of professional movers. She and her sisters helped with the packing. All the furniture in the private rooms was moved. However, she remembers that there was an old, fringed table in the kitchen that she wanted to take with her, but her father said she couldn't because it belonged to the estate. There was no room for all her parents' furniture in the house in

2429

Rønde, so some things were sold at auction. The painting of Frederiksborg Castle was placed above a low bookcase. As it was a dark picture, the parents placed a small lamp above it. The father lived in the house for 20 years, staying for a few years after the mother's death. During those 20 years, he was occasionally visited by government officials. He moved to a nursing home in 1999. Initially, it was just a respite stay, but it soon became clear that he couldn't cope with living in his own house anymore. He therefore stayed in the nursing home and the house was sold. The defendants had to share the contents, as the father only had room for two chairs and a table at the nursing home. They sold most of it at auction. They have not found any inventory lists from Kalø Estate among the father's papers other than the handwritten one from 1945.

Elsebil Kjærulf-Møller has explained that she was born on July 5, 1947. She has not visited the von Jenisch family in Germany. Immediately after her mother's death in 1990, her father was visited by some members of the von Jenisch family. She does not know who they were. Her father didn't care much for material things, only if they had sentimental value for him. She is certain that the furniture in the estate manager's house belonged to her parents. The painting, "Frederiksborg Castle in moonlight" has always been there. Her parents never told her where the picture came from. She helped move her parents' furniture to Rønde in 1980. Everything was moved with the exception of an old table that her father said belonged to the estate. She remembers that her father - when he moved to Rønde - said that he liked the painting. It came into its own there because of its placement above a low bookcase with a lamp above it. When his father moved into a nursing home, he gave them most of his belongings to the estate. At the time he was physically weak, but "his head worked well enough."

Flemming Lüttichau explained that he was born in 1935. His father was the estate manager at Kalø Estate until 1949. The relationship between the von Jenisch family and his parents was friendly. Wilhelm Ernst-Ludwig von Jenisch was his godfather. His father regularly received gifts from the von Jenisch family for anniversaries and other celebrations. These were often gifts of silver. During the period when his father was the estate manager, he regularly stayed at the estate. On these occasions, he stayed in one of the rooms above the estate manager's residence and used the office in the "Højenloft". The furniture in "Højenloft" belonged to the estate. The witness remembers the painting from Oluf Thygesen's home. The von Jenisch family visited Queen Alexandrine at Marselisborg Castle from time to time.

Inge Kirstine Mørk Møller has explained that she is Elsebil Kjærulf Møller's mother-in-law. She has known the Thygesen family since 1944, when she opened a hair salon in Rønde. She became friends with Esther Thygesen, who came to the salon. She and her husband often visited the Thygesen family on the estate. She had the impression that Oluf Thygesen had a good relationship with the von Jenisch family. When the Thygesen family moved to Rønde, they came to live very close to the witness and her husband. Esther Thygesen took care of decorating the house. Oluf Thygesen didn't care about material things. Esther Thygesen often called the witness when she was in doubt about something related to the decoration of the house. On one of these visits, they talked about the painting because a small lamp had been put up above it. Esther Thygesen said she was happy with that solution. The light gave the painting a completely different glow, and Esther said that it was a wedding gift after all. She didn't say who had given them the painting. They didn't talk about the painting after that. She didn't think about the incident until the problem with the painting arose, and she then told Elsebil what she could remember. She has no knowledge of what other wedding gifts Oluf and Esther Thygesen received.

Holger B. Dybdahl has explained that he was an administrator for the Ministry of Agriculture's Wildlife Management. This included supervision of Kalø Hunting Lodge. He was in contact with Oluf Thygesen during the period when he was estate manager at Kalø. They talked a lot about the running of the estate. Their relationship was friendly. He visited the Thygesen family with his wife and remembers that they saw the painting. His wife and Oluf Thygesen talked about the painting. She later told him that the painting apparently meant nothing special to Oluf Thygesen. Registrations were made of, among other things, the contents of Kalø Hunting Lodge in accordance with an accounting instruction. Random checks were carried out on the basis of these registrations. He has not found that Oluf Thygesen had removed anything from Kalø Hunting Lodge. Oluf Thygesen was honest. The witness remembers from the time of his appointment that there were some lists of furniture and chattels at Kalø Hunting Lodge, but does not remember the exact content thereof.

The defendants firstly argue that an action for damages such as the present one must be brought against the current owner of the painting and not against them and, as a result, the defendants must be acquitted.

Secondly, the defendants claim that the plaintiff is not the owner of the painting and was not the owner when their father, Oluf Thygesen, transferred it to them. Alternatively, they have claimed that they, as bona fide contract purchasers, have enforced the plaintiff's right of ownership to the painting. The defendants have further stated that the plaintiff has the burden of proving its ownership of the painting. Act no. 146 of May 13, 1959 amending the Confiscation Act stipulates that concrete physical measures must be taken by the commissioner, e.g. in the form of a registration, before the confiscation takes effect. The applicant has not been able to present any registration of the confiscated

2430

movable property - in contrast to what exists, for example, regarding the confiscated Fussingø Estate - and the painting can therefore not be considered covered by the confiscation. In any case, it must be to the plaintiff's detriment that it has not been possible to prove that the painting is covered by the confiscation. Even if it is established that the painting is covered by the confiscation, the plaintiff's property right is, as stated, enforced by the defendants. In this connection, it is disputed that Oluf Thygesen acquired the painting with the intention of enrichment, so that the forfeiture provision in Danish Act 6-17-5 applies. The defendants have further stated that after so many years it cannot be established with certainty when and how the painting came into Oluf Thygesen's possession - a wedding gift is a possibility - but it is clear that at least since 1943 and probably for a number of years before that, the painting has hung above the fireplace in the estate manager's fireplace room, and that the plaintiff did not take any action to enforce its ownership rights to the painting when the Kalø Estate was confiscated in 1946, when Oluf Thygesen resigned in 1980 or at any other time before this case arose. The defendants, who were entrusted with the painting by their father, have acted in good faith with regard to his rights and have therefore, as contract assignees, enforced the plaintiff's right to the painting.

If the defendants are not successful, it is claimed that the plaintiff's title to the painting has been extinguished by claim or by inaction on the part of the plaintiff.

With regard to the plaintiff's second claim, the defendants have stated that there is no basis for any enrichment claim against the defendants, who have not obtained any unjust enrichment. If the plaintiff succeeds in reclaiming the painting, no further claim can be made under any circumstances.

In support of its first claim, the plaintiff submits that the fact that the defendants have sold the painting cannot preclude the applicant from obtaining a declaration in an action for recognition that the defendants never held title to the painting.

Furthermore, the plaintiff has claimed that the painting belongs to the state and never belonged to Oluf Thygesen. It appears from the inventory list from 1933 from the Kalø Estate that the painting was inventory on the estate and thus belonged to the von Jenisch family. Upon confiscation in 1946, the ownership of the Kalø Estate, including the movable property on the estate, was transferred to the plaintiff, and the defendants have not proven that Oluf Thygesen was transferred the ownership of the painting by the von Jenisch family prior to the confiscation. It is disputed that it has been proven solely by the testimony of the witness Inge Kirstine Mørk Møller that Esther and Oluf Thygesen received the painting as a wedding gift. On the contrary, there is a presumption that it is not a wedding gift from the von Jenisch family. At the time of the wedding, Oluf Thygesen had only been employed as a manager for 7½ years, and he did not mention a gift of this kind in his memoirs. In addition, there was no tradition for von Jenisch to give employees such gifts on anniversaries, but, as Flemming Lüttichau explained, he gave silverware. Nor does the inventory of April 15, 1945, which does not specifically mention the silverware, provide any evidence that it belonged to Oluf Thygesen at the time. The ownership of the property etc. was transferred to the plaintiff when the Confiscation Act came into force on March 30, 1946. The Act did not require the implementation of special measures, e.g. registration, before the confiscation came into force. The plaintiff is therefore the owner of the painting.

It is disputed that the defendants have enforced the plaintiff's ownership of the painting. The plaintiff was deprived of the painting by Oluf Thygesen's unauthorized disposal of it when he took it to his home in Rønde and later gave it to the defendants. It is then vindication according to the principle in Danish Law 6-17-5, even if it is not claimed that Oluf Thygesen acted with the intention of enrichment. Otherwise, the matter must be considered covered by Danish Act 5-8-12 on loans, and this provision also leads to vindication. It is disputed that the plaintiff's conduct can be considered as carelessness and passivity and can justify the defendants infringing the plaintiff's right. In deciding this question, it should also be taken into account that Oluf Thygesen knew or should have known that the painting did not belong to him when he transferred it to the defendants, and that the defendants cannot obtain a better legal position than him.

Finally, it is disputed that the plaintiff's right has been extinguished by assertion, as it is not possible to assert the right to an asset over which the state has acquired ownership by public law. Nor has there been any disenfranchising passivity on the part of the plaintiff. When Oluf Thygesen moved from Kalø, there was no reason to investigate whether he had ownership rights to the objects he took with him.

In support of the second claim, the plaintiff argues that the defendants must disclaim their enrichment from the sale of the painting, regardless of whether the plaintiff succeeds in recovering it from its current owner.

**The High Court's reasoning and result.**

The High Court does not find that the plaintiff is precluded from having it established in an action for acknowledgment whether the defendants had ownership rights to the painting.

The parties agree that, in accordance with the inventory list for Kalø Hovedgaard of 1933, it must be assumed that the painting "Frederiksborg Castle in Moonlight" belonged to the von Jenisch family as owners of Kalø Manor.

**2431**

After his wedding in 1936, Oluf Thygesen and his spouse moved into the estate manager's residence in the main building of Kalø, where they lived until his resignation in 1980. According to Birgit Kristiansen's explanation, combined with the photos from the home, it must be assumed that, in her time, the home was furnished and equipped with her parents' own furniture, and that at least since the early 1940s the painting hung in the fireplace room (garden room) until Oluf Thygesen brought it to his house in Rønde when he retired.

According to the evidence, it is unclear how the painting came into Oluf Thygesen's possession, but according to the available information about Oluf Thygesen, there is no basis for assuming that he acquired the painting for the purpose of enrichment. The witness Inge Kirstine Mørk Møller's testimony alone, and without other evidence, cannot be considered proven that the painting was a wedding gift to Esther and Oluf Thygesen from the von Jenisch family. However, it remains a possibility that the painting, whose author and value must be assumed not to have been known at the time, with the express or tacit approval of the von Jenisch family, was hung in the fireplace room after Oluf Thygesen moved into the estate manager's house, and that the reason why it was hung there has been forgotten over the years. Nor can it be ruled out that the von Jenisch family acted in such a way that Oluf Thygesen was justified in assuming that the painting now belonged to him. In any case, it appears from witness Holger B. Dybdahl's statement that the random checks of the registered contents at Kalø Hunting Lodge did not reveal that Oluf Thygesen had removed anything unauthorized.

It appears from the wording of and the preparatory works to the Confiscation Act § 4(1) (RT 1945-46, Debates in Parliament 97th ordinary session, II, sp. 2179), that the confiscation came into force upon the entry into force of the Act. Therefore, there is no basis for assuming - as claimed by the defendants - that confiscation under the Act requires the implementation of further measures before it becomes legally effective in relation to the owner of the confiscated property. However, it is a prerequisite that it is possible to identify with certainty what has been confiscated. The compiled "inventory lists" for estates and farms which, according to the then estate manager Folmer Lüttichau's letter of September 29, 1948 to the head of administration of the State Land Law Committee, were in the possession of the forester and the chief administrator, have not been presented to the High Court. At least in a case like this one, where the State claims, more than 55 years after the confiscation, that the confiscation included a painting that has remained unnoticed for a number of years in the private residence of a trusted employee both on and off the estate, it must be detrimental to the plaintiff in terms of evidence that these lists could not be obtained. As the plaintiff has not been able to prove in any other way that the painting is covered by the confiscation, for example by presenting a registration of the inventory similar to that of the Fussingø Estate, it cannot be considered proven that the painting was covered by the confiscation. Consequently, the defendants are acquitted of the first claim and - as a consequence - also of the second claim.

**U.2003.2425V**

*Ikke bevist af staten, at maleri, der engang havde hængt på et gods og tilhørt dettes ejer, var omfattet af konfiskationen af godset i 1946.*

*Almindelige emner 21.3 - Retspleje 14.6 og 14.7 - Strafferet 3.4.*

♦ Et maleri af Frederiksborg Slot, der ifølge en inventarfortegnelse fra 1933 tilhørte godset Kalø, som ejedes af en tysk adelsslægt, hang siden engang i årene 1936-1943 i godsinspektøren G's bolig i godsets hovedbygning. Godset blev i 1946 konfiskeret i medfør af loven om konfiskation af tysk og japansk ejendom. Da G blev pensioneret i 1980, flyttede han til et hus i en nærliggende by og medbragte sit indbo fra tjenesteboligen, herunder maleriet. G flyttede i 1999 på plejehjem og forærede i den forbindelse en del af indboet til sine tre døtre D, deriblandt maleriet. D satte maleriet til salg hos auktionshuset C, der vurderede maleriet til 60.000 kr., og det blev solgt for 52.000 kr. Efter salget blev maleriet restaureret, og det kunne nu konstateres, at det bar signatur af den kendte norske guldaldermaler J.C. Dahl. G var afgået ved døden, kort før dette blev kendt. Maleriet blev senere solgt af auktionshuset E for 6.500.000 kr. D, der mente, at C havde begået fejl ved vurderingen af maleriet, anlagde i 2001 erstatningssag mod C. Inden denne sag blev domsforhandlet, hovedintervenerede staten i 2002 i sagen med påstand om bl.a., at maleriet ejedes af staten, idet det havde tilhørt godset ved konfiskationen i 1946. Spørgsmålet om statens ejendomsret blev udskilt til selvstændig forhandling og afgørelse. Staten henviste bl.a. til inventarfortegnelsen fra 1933 og gjorde gældende, at D havde bevisbyrden for, at maleriet tilhørte dem. D hævdede på deres side, at når staten efter en lang årrække anfægtede deres ejendomsret til maleriet, måtte bevisbyrden for ejendomsretten påhvile staten. Subsidiært gjorde D gældende, at D var godtroende aftaleerhververe, der havde ekstingveret statens ejendomsret, mere subsidiært at de havde vundet hævd på maleriet, mest subsidiært at statens ret var ophørt som følge af passivitet. Staten ansås ikke for afskåret fra under et anerkendelsessøgsmål at få fastslået, om D havde haft ejendomsret til maleriet. Landsretten lagde bevisbyrden for ejerforholdet på staten og gav D medhold i, at staten ikke havde bevist, at maleriet havde været omfattet af konfiskationen i 1946. Landsretten lagde bl.a. vægt på, at der kunne være forskellige forklaringer på, hvordan G var kommet i besiddelse af maleriet. Hertil kom, at staten ikke havde været i stand til at fremskaffe de lister over inventaret på Kalø, der havde foreligget i forbindelse med en tidligere godsinspektørs fratræden i 1948, og at der heller ikke var tilvejebragt registreringer af løsøret ved konfiskationen, i lighed med hvad der forelå om et andet gods, Fussingø, der også blev konfiskeret i 1946. Landsretten lagde også vægt på, at en nu pensioneret embedsmand, der havde været tilsynsførende på Kalø efter statens overtagelse af godset, som vidne forklarede, at der ved de stikprøvevise kontroller, der løbende blev foretaget af inventar m.v. på Kalø, aldrig var konstateret, at G uberettiget havde fjernet noget fra godset.

**V.L.D. 14. august 2003 i sag 8. afd. B-1381-02**
(Helle Bertung, Eskild Jensen, Mette Søgaard Vammen (kst.)).

*Den Danske Stat ved Miljøministeriet, Skov- og Naturstyrelsen (Km.adv. v/adv. Marianne Søgaard)*
mod
*Elsebil Kjærulf-Møller, Kirsten Gørner og Birgit Kristiansen (adv. Hans Erik Steffensen, Århus, for alle).*

## Vestre Landsret

Denne sag drejer sig om, hvorvidt Den Danske Stat ved konfiskationen af Kalø Gods i henhold til lov nr. 132 af 30. marts 1946 om konfiskation af tysk og japansk ejendom (konfiskationsloven) har erhvervet ejendomsretten til maleriet »Frederiksborg Slot i måneskin« som en del af godsets inventar, eller om Elsebil Kjærulf-Møller, Kirsten Gørner og Birgit Kristiansen har haft ejendomsret til maleriet, som de i 1999 fik overdraget af deres nu afdøde far, fhv. godsinspektør Oluf Thygesen. Maleriet er senere videresolgt.

Elsebil Kjærulf-Møller, Kirsten Gørner og Birgit Kristiansen har oprindelig anlagt sag mod Auktionshuset Crafoord - Nellemann og Thomsen ApS med påstand om erstatning, under anbringende af at auktionshuset i forbindelse med vurdering og bortsalg af maleriet for dem har begået ansvarspådragende fejl. Under sagen er Den Danske Stat ved Miljøministeriet, Skov- og Naturstyrelsen, indtrådt som hovedintervenient, og

**2426**

landsretten har den 10. oktober 2002 besluttet, at sagen mellem hovedintervenienten, der i denne dom benævnes sagsøgeren, og Elsebil Kjærulf-Møller, Kirsten Gørner og Birgit Kristiansen, der benævnes de sagsøgte, skal domsforhandles særskilt og forud for sagen mod auktionshuset.

Sagsøgeren har nedlagt følgende påstande:

1. De sagsøgte tilpligtes at anerkende, at de sagsøgte ikke har haft ejendomsret til maleriet »Frederiksborg Slot i måneskin« malet af J.C. Dahl i 1817.

2. De sagsøgte tilpligtes in solidum at betale til sagsøgeren 52.000 kr. med tillæg af procesrente fra sagens anlæg den 10. juni 2002.

De sagsøgte har påstået frifindelse.

Der er meddelt de sagsøgte fri proces. Det er endvidere oplyst, at Elsebil Kjærulf-Møller og Birgit Kristiansen har retshjælpsforsikring.

Om sagens omstændigheder er der blandt andet oplyst følgende:

Det fremgår af Oluf Thygesens erindringsbog: »Herregaardsliv på Kalø i et halvt Aarhundrede«, udgivet i 1983, at Oluf Thygesen den 1. november 1926 tiltrådte som underforvalter på Kalø Gods. Godset var i 1824 blevet købt af den tyske senator Martin Johan von Jenisch og gik derefter i arv til hans søn, senator Martin Johan von Jenisch, og videre til dennes søn, baron Martin Johan Rücker von Jenisch. Denne døde i 1924, hvorefter godset blev drevet af eksekutorerne i boet og enken, baronesse Thyra von Jenisch. Familien von Jenisch anvendte godset som feriebolig og boede til daglig på Schloss Blumendorf ved Hamborg. De ejede flere godser i Tyskland og Danmark. Oluf Thygesen flyttede ved sin tiltræden ind i den såkaldte kavalerfløj, der lå i en sidefløj til hovedbygningen. I kavalerfløjen boede også andre af godsets yngre ansatte. Familien von Jenisch boede i Jagthuset i de perioder, hvor de opholdt sig på godset. Jagthuset lå adskilt fra godsets øvrige bygninger. Den 1. november 1928 blev Oluf Thygesen forfremmet til forvalter på godset og flyttede til et andet værelse i kavalerfløjen. Den 1. april 1929 blev han overforvalter og flyttede ind i hovedbygningen i et værelse, der lå i forbindelse med godskontoret, som han samtidig overtog. I hovedbygningen var tillige godsforvalterboligen. I 1936 blev Oluf Thygesen gift med Esther Herskind, der blev ansat på godset til at forestå husholdningen. De flyttede ind i godsforvalterboligen, idet den daværende godsinspektør, Folmer Lüttichau, boede med sin familie på godset Rohden ved Vejle. Kalø Gods var

i 1933 blevet overdraget til den ældste søn i familien von Jenisch, Wilhelm Ernst-Ludwig von Jenisch. Oluf Thygesen besøgte flere gange i løbet af 1930'erne familien von Jenisch på Schloss Blumendorf, og når familien opholdt sig på Kalø Gods, inviterede baronesse Thyra von Jenisch lejlighedsvis Oluf og Esther Thygesen til middag i Jagthuset. Under 2. verdenskrig opholdt familien von Jenisch sig i Tyskland og besøgte ikke Kalø Gods. Den 13. juli 1943 omkom baron Wilhelm Ernst-Ludwig von Jenisch ved et flystyrt på vej hjem fra orlov. Da hans lillebror, baron Martin von Jenisch, tidligere samme år var faldet i krigen, blev godset overtaget af den yngste bror, baron Johan-Christian von Jenisch.

Af »Inventarliste for Kalø Hovedgaard - I - 9 - 1933« fremgår blandt andet:

». . .

*HAVESTUEN - DAGLIGSTUEN - SYSTUEN*

. . .

1 Maleri (Frederiksborg Slot)

. . .«

Af håndskreven fortegnelse af 15. april 1945 over indbo fremgår bl.a.:

». . .

Fortegnelse over Ting på Kalø Hovedgaard d. 15/4-45-tilhørende Familien Thygesen (navnet svært læseligt):

| | |
|---|---|
| Havestuen | 2 Malerier |
| | 2 Malmlysestager |
| | 3 Kurvestole med hynder |
| | 1 Kurvebord med glasplade |
| | 1 Spillebord |
| | 1 Ege-Klapbord |
| | 1 Lampet - 1 Kaminsæt - Smedejern |
| | 1 Lysekrone - 4 armet - Smedejern |
| Dagligstue | 9 Malerier |
| | 4 Billeder |
| | 1-6-Armet Smedejerns Lysekrone |
| | 1 do. Lampet |
| | 1 Udskåret Renæssanceskab af Eg |
| | 1 Ottoman med Pølle 2 Puder, |
| | 2 Rejsetæpper |
| | 1 rundt poleret Bord med 1 Bronze-Lampe |
| | 3 Læderstole med Hynder |
| | 1 Egeklap - Kakkelbord |
| | 1 Standerlampe - Eg - |
| | 1 Mahognisofa + 2 Puder |
| | 1 Bogreol med 100 Bøger |
| | 1 B&O Radio - 4 lamper |
| | 3 Renæssancestole- Broderistol.« |

Ved lov nr. 132 af 30. marts 1946 om konfiskation af tysk og japansk ejendom skete der konfiskation af bl.a. al tysk, fjendtlig ejendom i Danmark.

Af loven fremgår blandt andet:

». . .

Kapitel I.

§ 1.

Denne Lov kommer til Anvendelse paa al tysk, fjendtlig Ejendom, der befinder sig her i Riget, undtagen saadan

**2427**

Ejendom, som af de allierede væbnede Styrker er taget som Krigsbytte her i Riget.

§ 2.

Som tysk, fjendtlig Ejendom anses Ejendom, der ved Lovens Ikrafttræden tilhører

1) Den tyske Stat, tyske Kommuner og andre tyske offentlige Myndigheder, Institutioner m.v.,

2) Personer, der har tysk Statsborgerret,

. . .

§ 3.

Udtrykket »Ejendom« omfatter:

1) Fast Ejendom,

2) Løsøre af enhver Art, undtagen de for den paagældende og hans Husstand fornødne Gangklæder, Linned, Senge og Sengeklæder samt Indbogenstande, der efter Forholdene er nødvendige til Opretholdelse af et tarveligt Hjem for den paagældende og hans Husstand, og endelig - inden for en samlet Værdi af 2000 Kr. - Genstande, som i øvrigt hører til de vigtigste Livsfornødenheder eller er nødvendige for Udøvelsen af den paagældendes Næringsvej, herunder kontante Midler,

. . .

§ 4.

Ejendom, der omfattes af denne Lov, konfiskeres herved til Fordel for den danske Stat.

. . .

§ 5.

Efter Indstilling af et Nævn, der bestaar af 7 Medlemmer, . . . kan Ministeren for Handel, Industri og Søfart, naar særlige Omstændigheder findes at begrunde det, fritage Ejendom, der tilhører saadanne

Copyright © 2023 Karnov Group Denmark A/S

i § 2, Nr. 2-3, omhandlede Retssubjekter, som findes ikke at kunne betragtes som fjendtlige, fra Konfiskation.
. . .
§ 6.
Til Gennemførelse af denne Lovs Bestemmelser oprettes en midlertidig Stilling som Kommissarius.
. . .
§ 7.
Det paahviler Kommissarius at eftersøge og hurtigst muligt overtage al af Loven omfattet Ejendom samt i det Omfang, Staten ikke selv har Behov for den paagældende Ejendom, at realisere denne i Overensstemmelse med denne Lovs Bestemmelser . . .
§ 8.
Fast Ejendom, der omfattes af denne Lov, overtages saa hurtigt som muligt af Kommissarius. Kommissarius udfærdiger med Henvisning til nærværende Lov Skøde til Staten . . .
§ 23.
Alt andet Løsøre, som ikke fritages fra Konfiskation i Medfør af § 5, overtages af Kommissarius til Realisation.
. . .
§ 37
Denne Lov træder i Kraft straks.
. . .«

Da Kalø Gods ved lovens ikrafttræden var ejet af baron Johan-Christian von Jenisch, der var tysk statsborger, blev godset konfiskeret til fordel for staten.

Den 13. juni 1946 ansøgte baron Johan-Christian von Jenisch Dispensationsnævnet om, at Kalø Gods blev fritaget for konfiskation under henvisning til lovens § 5. Han påstod erstatning, såfremt godset ikke kunne fritages for konfiskation.

Handelsministeriet meddelte efter indstilling fra Dispensationsnævnet ved skrivelse af 20. januar 1947 afslag på ansøgningen om fritagelse for konfiskation. Af skrivelsen fremgår bl.a., at der på Kalø var almindeligt indbo til en værdi af 137.000 kr. I medfør af konfiskationsloven blev flere andre godser i Danmark konfiskeret, heriblandt Fussingø Gods.

Der er for landsretten fremlagt en udførlig registrering pr. 1. januar 1947 af indbo og løsøre i hovedbygningen på Fussingø Gods og en udskrift af en registrerings- og vurderingsforretning, der blev afholdt i skifteretten i Viborg den 14. februar 1948, vedrørende indbo og løsøre på Fussingø Gods.

Der er ikke tilvejebragt tilsvarende registreringer af indbo og løsøre fra Kalø Gods.

I forbindelse med sin fratræden som godsinspektør redegjorde Folmer Lüttichau i en skrivelse af 29. september 1948 til Statens Jordlovsudvalg for, hvilket skriftligt materiale vedrørende godset han afleverede til udvalget. Det hedder i skrivelsen bl.a.:

». . .
Inventarieliste fra 1941 for Jagthuset 1932 - Copi afgivet til Kommissarius og Statens Jordlovsudvalg. Inventarielister for Gods og Hovedgaard beror hos Skovrider Wellendorf & Overforvalter Thygesen.
. . .«

Kalø Gods blev efter konfiskationen overtaget af Statens Jordlovsudvalg i 1948. Statens Jordlovsudvalg bortforpagtede herefter godset til Jagtrådet for en periode på 16 år, og godset skiftede navn til Kalø Jagtgård. Ved udgangen af september måned 1948 fratrådte Folmer Lüttichau sin stilling på godset, og Oluf Thygesen blev udnævnt som ny godsinspektør.

Ved lov nr. 146 af 13. maj 1959 om ændringer i konfiskationsloven blev ejendom, der omfattedes af denne lov - og som kommissarius ikke inden 31. juli 1959 havde overtaget eller truffet foranstaltninger til at overtage - fritaget for konfiskation. Ved loven blev stillingen som kommissarius ophævet, og Dispensationsnævnet blev nedlagt.

Af skrivelse af 16. november 1974 fra en ukendt afsender til hofjægermester Folmer Lüttichau om »sagen vedrørende baron von Jenisch« fremgår bl.a., at alle

**2428**

gamle forsikringspolicer vedrørende løsøre på Kalø Gods er borte, og at det derfor ikke var muligt at finde noget tal for bl.a. løsøreforsikringssummen for indboet i hovedbygningen.

I 1980 blev Oluf Thygesen pensioneret og flyttede med sin hustru fra godsforvalterboligen til et hus i Rønde. De medbragte maleriet sammen med det øvrige indbo. Da Oluf Thygesen i 1999 flyttede på plejehjem, overdrog han forskellige ejendele til de sagsøgte, herunder maleriet. Dette og en del af indboet bortsolgte de sagsøgte gennem auktionshuset Nellemann og Thomsen ApS. Maleriet blev ikke renset inden salget, og auktionshuset opdagede ikke, hvem der havde malet det. Maleriet var af auktionshuset vurderet til ca. 60.000 kr. og blev på auktionen bortsolgt under betegnelsen »dansk guldalderkunstner«. Maleriet indbragte 52.000 kr.

Efter salget blev maleriet renset, og herved blev det synligt, at det var malet af den kendte norske guldaldermaler J.C. Dahl. Oluf Thygesen var afgået ved døden kort tid forinden. Herefter bortsolgtes maleriet på auktion den 7. juni 2000 af Ellekilde Auktionshus A/S for 6.500.000 kr.

Kulturværdiudvalget udstedte den 10. juli 2000 efter ansøgning herom fra Ellekilde Auktionshus A/S eksporttilladelse vedrørende maleriet med gyldighed til 11. juli 2005. Det har ikke kunnet oplyses, hvor maleriet nu befinder sig.

De sagsøgte har den 22. maj 2001 anlagt sag mod auktionshuset Nellemann og Thomsen ApS, nu Crafoord - Nellemann & Thomsen ApS med påstand om erstatning (B-1206-01). I forbindelse med sagen rettede de sagsøgtes advokat i skrivelse af 11. september 2001 henvendelse til sagsøgeren og forespurgte, om sagsøgeren ville gøre krav på maleriet. Dette svarede Kammeradvokaten i en skrivelse af 8. november 2001 bekræftende på, og Den Danske Stat er herefter ved stævning, modtaget den 10. juni 2002, indtrådt som hovedintervenient i erstatningssagen.

Der er under domsforhandlingen forevist et fotografi taget i pejsestuen i godsforvalterboligen på Kalø Gods i 1943, hvoraf fremgår, at maleriet »Frederiksborg Slot i måneskin« hang over pejsen. Der er endvidere forevist fotos fra 1954 af møblementet i familien Thygesens bolig på Kalø samt tegningsmateriale vedrørende hovedbygningen på Kalø.

Birgit Kristiansen har forklaret, at hun er født den 26. september 1937. Hendes farfar var læge og hendes morfar var forstander på en højskole. Hendes forældre arvede i 1945 og 1947 indbo og penge efter henholdsvis hendes farmor og mormor. Forældrene arvede også en ugift faster. Hendes forældre og von Jenisch-familien var ikke egentlige venner, men forholdet var præget af gensidig respekt. Hun husker, at hun sammen med sin søster Kirsten besøgte familien von Jenisch i Tyskland. Det var lige efter krigen. Efter faderens død har hun fundet flere lykønskningskort til ham fra medlemmer af familien von Jenisch. I perioden efter hendes mors død i 1990 fik faderen flere gange besøg af medlemmer af familien von Jenisch. Faderen var ikke materialistisk indstillet; kun enkelte ting betød noget særligt for ham. Han varetog den overordnede ledelse af Kalø Gods efter krigen, hvilket indebar ansvar for den daglige drift og personalemæssigt ansvar. Han havde i 1944 købt en gård i Skødstrup, som han drev ved bestyrer. Han solgte gården 1984. Da godset overgik til at være forsøgsstation, var der ofte besøg af forskellige embedsmænd. Faderen forestod afholdelsen af mange frokoster og receptioner på godset. Da der ikke var service

til så mange mennesker på godset, anvendte forældrene deres eget porcelæn, sølvtøj og duge til disse sammenkomster. Faderen havde et udmærket forhold til Folmer Lüttichau. Efter at faderen blev pensioneret i 1980, havde de også fortsat kontakt. Forevist plantegning over hovedbygningen på Kalø Gods har hun forklaret, at de boede i godsforvalterboligen hele hendes barndom. Til højre for forstuen lå et godskontor med trappe op til »Højenloft«, der indeholdt et kontor. Pejsestuen, dagligstuen og spisestuen lå i forlængelse af hinanden. Tegningen viser, hvordan pejsestuen så ud efter en ombygning omkring 1950, hvor den blev dobbelt så stor som hidtil. De kaldte pejsestuen for havestuen, og det var den mest anvendte stue. Forevist billeder fra stuerne taget i henholdsvis 1943 og 1954 har hun forklaret, at inventaret i stuerne dels var arvet fra familiemedlemmer, dels købt på auktion. Hun har i den forbindelse nærmere redegjort for, hvorfra de enkelte møbler m.v. på de foreviste fotos af inventaret stammer. En håndskreven inventarliste, dateret 15. april 1945, har hun fundet blandt faderens ting efter dennes død. Hun kan genkende faderens håndskrift på listen. De to malerier, han har angivet som værende i havestuen, er henholdsvis maleriet af Frederiksborg Slot og et maleri af et søslag. Da der blev bygget om, kom der flere møbler og malerier ind i havestuen. Hun har aldrig været i tvivl om, at alt inventar i de private stuer tilhørte hendes forældre. Hendes mor havde stor interesse for møbler og har fortalt hende om møblernes oprindelse. Hun husker ikke nogensinde at have talt med forældrene om maleriet og har derfor ingen viden om, hvor det stammede fra. I hendes erindring har maleriet altid hængt over pejsen i havestuen. Da forældrene flyttede fra godset i 1980, fik de hjælp af professionelle flyttefolk. Hun og hendes søstre hjalp med at pakke. Alt inventaret i de private rum blev flyttet. Dog husker hun, at der i køkkenet stod et gammelt frønnet bord, som hun ville have taget med, men hendes far sagde, at det gik ikke, for det tilhørte godset. Der var ikke plads til alle forældrenes møbler i huset i

**2429**

Rønde, så noget blev solgt på auktion. Maleriet af Frederiksborg Slot blev placeret over en lav reol. Da det var et mørkt billede, anbragte forældrene en lille lampe ovenover. Faderen boede i huset i 20 år, idet han blev boende i nogle år efter moderens død. I løbet af de 20 år fik han af og til besøg af statslige embedsmænd. Han flyttede på plejehjem i 1999. I begyndelsen var der kun tale om et aflastningsophold, men det blev hurtigt klart, at han ikke kunne klare at bo i eget hus mere. Han blev derfor boende på plejehjemmet, og huset blev solgt. De sagsøgte skulle dele indboet, idet faderen kun havde plads til to stole og et bord på plejehjemmet. De solgte det meste på auktion. De har ikke blandt faderens papirer fundet andre inventarlister fra Kalø Gods end den håndskrevne fra 1945.

Elsebil Kjærulf-Møller har forklaret, at hun er født den 5. juli 1947. Hun har ikke besøgt familien von Jenisch i Tyskland. Umiddelbart efter hendes moders død i 1990 fik faderen besøg af nogle medlemmer af von Jenisch-familien. Hun er ikke klar over, hvem det var. Faderen hæftede sig ikke meget ved materielle ting, kun hvis de havde affektionsværdi for ham. Hun er sikker på, at inventaret i godsforvalterboligen tilhørte forældrene. Maleriet »Frederiksborg Slot i måneskin« har altid været der. Hendes forældre har aldrig fortalt, hvor billedet stammede fra. Hun hjalp med at flytte forældrenes møbler til Rønde i 1980. Alt blev flyttet med undtagelse af et gammelt bord, som faderen sagde tilhørte godset. Hun husker, at faderen - da han var flyttet til Rønde - gav udtryk for, at han var glad for maleriet. Det kom mere til sin ret dér på grund af placeringen over en lav reol med en lampe ovenover. Da faderen flyttede på plejehjem, forærede han dem det meste af indboet. På det tidspunkt var han fysisk svækket, men »hovedet fungerede godt nok.«

Flemming Lüttichau har forklaret, at han blev født i 1935. Hans far var godsinspektør på Kalø Gods indtil 1949. Forholdet mellem familien von Jenisch og hans forældre var venskabeligt. Wilhelm Ernst-Ludwig von Jenisch var hans gudfar. Faderen fik jævnligt gaver af familien von Jenisch til jubilæer og ved andre mærkedage. Det var ofte gaver af sølv. I den periode, hvor faderen var godsinspektør, opholdt han sig jævnligt på godset. Ved disse lejligheder overnattede han i et af værelserne over godsforvalterboligen og brugte kontoret på »Højenloft«. Møblerne på »Højenloft« tilhørte godset. Vidnet husker maleriet fra Oluf Thygesens bolig. Von Jenisch-familien kom fra tid til anden på Marselisborg Slot hos dronning Alexandrine.

Inge Kirstine Mørk Møller har forklaret, at hun er Elsebil Kjærulf-Møllers svigermor. Hun har kendt familien Thygesen siden 1944, da hun åbnede en frisørsalon i Rønde. Hun blev veninde med Esther Thygesen, der kom i salonen. Hun besøgte sammen med sin mand ofte familien Thygesen på godset. Hun havde indtryk af, at Oluf Thygesen havde et godt forhold til von Jenisch-familien. Da familien Thygesen flyttede til Rønde, kom de til at bo meget tæt på vidnet og hendes mand. Esther Thygesen tog sig af indretningen af huset. Oluf Thygesen var ligeglad med materielle ting. Esther Thygesen ringede ofte til vidnet, når hun var i tvivl om noget vedrørende indretningen af huset. Ved et af disse besøg talte de om maleriet, fordi der var blevet sat en lille lampe op oven over det. Esther Thygesen sagde, at hun var glad for den løsning. Lyset gav maleriet et helt andet skær, og Esther sagde, at det jo trods alt var en bryllupsgave. Hun sagde ikke, hvem de havde fået maleriet af. Siden talte de ikke om maleriet. Hun har ikke tænkt på episoden, før problemet med maleriet opstod, og hun fortalte så Elsebil, hvad hun kunne huske. Hun har ikke kendskab til, hvilke andre bryllupsgaver Oluf og Esther Thygesen fik.

Holger B. Dybdahl har forklaret, at han har været administrator for Landbrugsministeriets Vildtforvaltning. Dette indebar tilsyn med Kalø Jagtgård. Han havde kontakt med Oluf Thygesen i den periode, hvor denne var godsinspektør på Kalø. De talte meget om driften af godset. Deres indbyrdes forhold var venskabeligt. Han har besøgt familien Thygesen sammen med sin kone og husker, at de så maleriet. Hans kone og Oluf Thygesen talte om maleriet. Hun fortalte senere, at maleriet tilsyneladende ikke betød noget særligt for Oluf Thygesen. Der blev foretaget registreringer af blandt andet indbo på Kalø Jagtgård i henhold til en regnskabsinstruks. Der blev foretaget stikprøvevis kontrol på baggrund af disse registreringer. Han har ikke konstateret, at Oluf Thygesen skulle have fjernet noget fra Kalø Jagtgård. Oluf Thygesen var bundhæderlig. Vidnet husker fra tidspunktet for sin tiltræden, at der forelå nogle lister over indbo og løsøre på Kalø Jagtgård, men husker ikke det nærmere indhold af disse.

De sagsøgte har i første række gjort gældende, at et vindikationssøgsmål som det foreliggende skal anlægges mod den nuværende ejer af maleriet og ikke mod dem, og allerede som følge heraf skal de sagsøgte frifindes.

I anden række har de sagsøgte gjort gældende, at sagsøgeren ikke er ejer af maleriet og heller ikke var det, da deres far, Oluf Thygesen, overdrog det til dem. Subsidiært har de gjort gældende, at de som godtroende aftaleerhververe har ekstingveret sagsøgerens ejendomsret til maleriet. De sagsøgte har herom nærmere anført, at sagsøgeren har bevisbyrden for sin ejendomsret til maleriet. Lov nr. 146 af 13. maj 1959 om ændring af konfiskationsloven forudsætter, at der skal være foretaget konkrete fysiske foranstaltninger af kommissarius, f.eks. i form af en registrering, før konfiskationen træder i kraft. Sagsøgeren har ikke været i stand til at

**2430**

fremlægge nogen registrering over det konfiskerede løsøre - i modsætning til hvad der f.eks. foreligger vedrørende det konfiskerede Fussingø Gods - og maleriet kan derfor ikke anses for omfattet af konfiskationen. Under alle omstændigheder må det komme sagsøgeren til skade, at det fornødne bevis ikke har kunnet føres for, at maleriet er omfattet af konfiskationen. Selv om det statueres, at maleriet er omfattet af konfiskationen, er sagsøgerens ejendomsret som anført ekstingveret af de sagsøgte. Det bestrides i den forbindelse, at Oluf Thygesen har tilegnet sig maleriet i berigelseshensigt, således at vindikationsbestemmelsen i Danske Lov 6-17-5 finder anvendelse. De sagsøgte har videre anført, at det efter så mange år ikke med sikkerhed kan fastslås, hvornår og på hvilken måde maleriet er kommet i Oluf Thygesens besiddelse - en bryllupsgave er en mulighed - men det ligger fast, at maleriet i hvert fald siden 1943 og antagelig i en årrække forud herfor har hængt over kaminen i godsforvalterboligens pejsestue, og at sagsøgeren hverken ved konfiskationen af Kalø Gods i 1946, ved Oluf Thygesens fratræden i 1980 eller på noget andet tidspunkt inden denne sags opståen har foretaget sig noget med henblik på at håndhæve sin ejendomsret til maleriet. De sagsøgte, der fik overdraget maleriet af deres far, har været i begrundet god tro om hans adkomst og har derfor som aftaleerhververe ekstingveret sagsøgerens ret til maleriet.

Såfremt der ikke kan gives de sagsøgte medhold heri, gøres det gældende, at sagsøgerens ejendomsret til maleriet er ophørt ved hævd eller ved passivitet fra sagsøgerens side.

Over for sagsøgerens påstand 2 har de sagsøgte anført, at der ikke er grundlag for at rette noget berigelseskrav mod de sagsøgte, der ikke har opnået nogen ugrundet berigelse. Hvis det lykkes sagsøgeren at vindicere maleriet, kan der under ingen omstændigheder gøres noget krav gældende herudover.

Sagsøgeren har til støtte for sin påstand 1 gjort gældende, at den omstændighed, at de sagsøgte har solgt maleriet, ikke kan afskære sagsøgeren fra under et anerkendelsessøgsmål at få fastslået, at de sagsøgte aldrig har haft ejendomsret til maleriet.

Endvidere har sagsøgeren gjort gældende, at maleriet tilhører staten og aldrig har tilhørt Oluf Thygesen. Det fremgår af inventarlisten fra 1933 fra Kalø Gods, at maleriet var inventar på godset og dermed tilhørte slægten von Jenisch. Ved konfiskationen i 1946 overgik ejendomsretten til Kalø Gods, herunder til løsøret på godset, til sagsøgeren, og de sagsøgte har ikke bevist, at Oluf Thygesen af von Jenisch-familien fik overdraget ejendomsretten til maleriet forud for konfiskationen. Det bestrides, at det alene ved vidnet Inge Kirstine Mørk Møllers forklaring er bevist, at Esther og Oluf Thygesen fik maleriet i bryllupsgave. Der er tværtimod en formodning for, at det ikke er en bryllupsgave fra von Jenisch-familien. På tidspunktet for brylluppet havde Oluf Thygesen kun været ansat som forvalter i 7½ år, og han har i sin erindringsbog ikke omtalt en gave af denne art. Hertil kommer, at der ikke var tradition for, at von Jenisch på mærkedage gav de ansatte sådanne gaver, men, som Flemming Lüttichau har forklaret, gav sølvtøj. Heller ikke inventarfortegnelsen af 15. april 1945, der ikke specielt omtaler maleriet, er noget bevis for, at dette dengang tilhørte Oluf Thygesen. Ejendomsretten til godset m.v. overgik til sagsøgeren ved konfiskationslovens ikrafttræden den 30. marts 1946. Der var i loven ikke krav om iværksættelse af særlige foranstaltninger, f.eks. registrering, før konfiskationen trådte i kraft. Sagsøgeren er derfor ejer af maleriet.

Det bestrides, at de sagsøgte har ekstingveret sagsøgerens ejendomsret til maleriet. Sagsøgeren blev frataget maleriet ved Oluf Thygesens uberettigede råden over det, da han medtog det til boligen i Rønde og senere forærede det til de sagsøgte, og udgangspunktet er herefter vindikation efter princippet i Danske Lov 6-17-5, selv om det ikke gøres gældende, at Oluf Thygesen har handlet i berigelseshensigt. Ellers må forholdet anses for omfattet af Danske Lov 5-8-12 om lån, og denne bestemmelse fører også til vindikation. Det bestrides, at der foreligger en adfærd fra sagsøgerens side i form af uforsigtighed og passivitet, der kan begrunde, at de sagsøgte ekstingverer sagsøgerens ret. Ved afgørelsen af dette spørgsmål bør det også tillægges betydning, at Oluf Thygesen ved maleriets overdragelse til de sagsøgte vidste eller burde vide, at maleriet ikke tilhørte ham, og at de sagsøgte ikke kan opnå en bedre retsstilling end ham.

Det bestrides endelig, at sagsøgerens ret er ophørt ved hævd, da der ikke kan vindes hævd på retten til et formuegode, hvorover staten har erhvervet ejendomsret ved offentligretlig foranstaltning. Der er heller ikke udvist rettighedsfortabende passivitet fra sagsøgerens side. Der var ved Oluf Thygesens flytning fra Kalø ikke anledning til at undersøge, om han havde ejendomsretten til de genstande, han tog med.

Til støtte for påstand 2 har sagsøgeren gjort gældende, at de sagsøgte må fralægge sig deres berigelse ved salget af maleriet, uanset om det lykkes sagsøgeren at vindicere dette fra dets nuværende ejer.

**Landsrettens begrundelse og resultat.**

Landsretten finder ikke, at sagsøgeren er afskåret fra under et anerkendelsessøgsmål at få fastslået, om de sagsøgte har haft ejendomsret til maleriet.

Der er mellem parterne enighed om, at det i overensstemmelse med inventarlisten for Kalø Hovedgaard af 1933 må lægges til grund, at maleriet »Frederiksborg Slot i måneskin« da tilhørte slægten von Jenisch som ejere af Kalø Gods.

**2431**

Oluf Thygesen flyttede efter sit bryllup i 1936 sammen med sin ægtefælle ind i godsforvalterboligen i hovedbygningen på Kalø, hvor de boede indtil hans fratræden i 1980. Det må efter Birgit Kristiansens forklaring, sammenholdt med de foreviste fotos fra boligen, lægges til grund, at boligen i hendes tid var møbleret og udstyret med forældrenes eget inventar, og at maleriet i hvert fald siden begyndelsen af 1940'erne hang i pejsestuen (havestuen), indtil Oluf Thygesen ved sin pensionering medbragte det til sit hus i Rønde.

Det er efter bevisførelsen uvist, hvordan maleriet er kommet i Oluf Thygesens besiddelse, men der er efter de foreliggende oplysninger om Oluf Thygesen intet grundlag for at antage, at han har tilegnet sig maleriet i berigelseshensigt. Det kan ikke alene ved vidnet Inge Kirstine Mørk Møllers forklaring og uden andre holdepunkter herfor anses for bevist, at maleriet var en bryllupsgave til Esther og Oluf Thygesen fra familien von Jenisch. Det henstår imidlertid som en mulighed, at maleriet, hvis ophavsmand og værdi må antages dengang ikke at have været kendt, med von Jenisch' udtrykkelige eller stiltiende godkendelse er blevet hængende i pejsestuen efter Oluf Thygesens indflytning i godsforvalterboligen, og at baggrunden for, at det kom til at hænge der, med årene er gået i glemmebogen. Det kan heller ikke ganske udelukkes, at familien von Jenisch har forholdt sig således, at Oluf Thygesen havde føje til at gå ud fra, at maleriet nu tilhørte ham. I hvert fald fremgår det af vidnet Holger B. Dybdahls forklaring, at det ved de stikprøvevise kontroller af det registrerede indbo på Kalø Jagtgård ikke er konstateret, at Oluf Thygesen uberettiget skulle have fjernet noget.

Det fremgår af ordlyden af og forarbejderne til konfiskationslovens § 4, stk. 1, (RT 1945-46, Forhandlinger i Folketinget 97de ordentlige samling, II, sp. 2179), at konfiskationen træder i kraft ved

lovens ikrafttræden. Der er derfor intet grundlag for - som hævdet af de sagsøgte - at antage, at konfiskation i medfør af loven kræver iværksættelse af yderligere foranstaltninger, inden den bliver retligt virksom i forhold til ejeren af det konfiskerede. Det er dog en forudsætning, at det er muligt med sikkerhed at identificere, hvad der er konfiskeret. De udarbejdede »inventarielister« for gods og hovedgård, som efter daværende godsinspektør Folmer Lüttichaus brev af 29. september 1948 til administrationschefen for Statens Jordlovsudvalg beroede hos skovrideren og overforvalteren, har ikke foreligget for landsretten. I hvert fald i en sag som den foreliggende, hvor staten mere end 55 år efter konfiskationen vil hævde, at denne omfattede et maleri, der upåtalt i en længere årrække har beroet i en betroet medarbejders private beboelse såvel på som uden for godset, må det komme sagsøgeren bevismæssigt til skade, at disse lister ikke har kunnet tilvejebringes. Da sagsøgeren heller ikke på anden måde har kunnet føre det fornødne bevis for, at maleriet er omfattet af konfiskationen, f.eks. ved fremlæggelse af en registrering af inventaret i lighed med den, der foreligger for Fussingø Gods, kan det ikke anses for bevist, at maleriet var omfattet af konfiskationen. Som følge heraf frifindes de sagsøgte for påstand 1 og - som en konsekvens heraf - tillige for påstand 2. - - -

Copyright © 2023 Karnov Group Denmark A/S                                          side 6