

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

January 28, 2025

**VIA ECF, EMAIL, & HAND DELIVERY**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
KaplanNYSDChambers@nysd.uscourts.gov

   Re: *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)[1]

Dear Judge Kaplan:

  We write on behalf of plaintiff Skatteforvaltningen ("SKAT") with respect to defendants' proffer of excerpts of Sanjay Shah's previous testimony in SKAT's action against him pending before the English High Court. Defendants argue that the testimony is admissible under the Federal Rule of Evidence 804(b)(1) and (3) exceptions to the rule against hearsay for former testimony or statements against interest where the witness is unavailable. Neither exception applies and even if one did, the proffered testimony still should be excluded under Federal Rule of Evidence 403.

  *First*, Shah's English testimony is not admissible former testimony under Federal Rule of Evidence 804(b)(1) because SKAT did not have a "similar motive to develop it" in the English action "by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). Defendants' argument that this "predicate is plainly met" "because the testimony . . . came in cross-examination conducted by SKAT" is too simplistic. (Tr. 1815:15-21.) It is not even sufficient

---

1. This letter relates to the trial one cases: 18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713.

"simply" that "at the two proceedings the questioner takes the same side of the same issue." *U.S. v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993). Instead, the inquiry "turn[s]" "on whether the questioner had a substantially similar interest in asserting that side of the issue." *Id*. "The proper approach, therefore, in assessing similarity of motive under Rule 804(b)(1) must consider whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *Id*. at 914-15; *see also O'Brien v. City of Yonkers*, 2013 WL 1234966, at *8 (S.D.N.Y. Mar. 22, 2013) (explaining lack of similar motive where prosecutor in prior action "had little reason to focus on this issue" central to plaintiff's false arrest claim).

That is plainly not the case here. SKAT did not even take the same side of the issue, *i.e.*, defendants' knowledge of Shah's fraud, in the English case against Shah that it is pressing against defendants in this trial, let alone have "an interest of substantially similar intensity to prove (or disprove)" it. Rather, as the Court noted, "the answer Shah gave concerning concealment of aspects of what he was doing from the Argre partners was . . . quite helpful to SKAT's case in London" and "it had no motive to try to elicit from Shah testimony to the effect that he shared all aspects of what he was up to with the Argre partners." (Tr. 1825:5-24.) Further, defendants' knowledge of Shah's fraud is "critical" in this trial, but "was only peripherally related" to SKAT's English action. *DiNapoli*, 8 F.3d at 912. Defendants' focus on a 3-page snippet among the roughly 1500 pages of transcript reflecting Shah's testimony elicited over 10 days in the English proceedings only further reflects that SKAT had no incentive to undermine Shah on this issue on which none of SKAT's claims relied. Thus, "no one" (except defendants) "would claim that" SKAT "had a similar motive at both proceedings to show that the fact had been established (or disproved)." *Id*. And what is more, "the inquiry as to similar motives must be fact specific," *id*. at 914, but defendants have not provided the Court with sufficient context to conclude contrary to a plain reading of the testimony, that SKAT had a "similar motive" to develop Shah's testimony in England as it would here.

*Second*, neither is Shah's testimony admissible under Federal Rule of Evidence 804(b)(3) as a statement against interest. As an initial matter, Shah is not "unavailable" within the meaning of the rule because defendants did not timely seek "to procure" his testimony "by process or other reasonable means." Fed. R. Evid. 804(a)(5)(B); *see also U.S. v. Abreu*, 342 F.3d 183, 190 (2d Cir. 2003) (witness in the Dominican Republic was not "unavailable" when no evidence showed appellant made efforts or took steps to procure witness' attendance or testimony); *Six West Retail Acquisition, Inc. v. Loews Cineplex Entertainment Corp.*, 286 B.R. 239, 250 (S.D.N.Y. 2002) (statement that "witness is located in Japan" insufficient to show witness' unavailability). As the Court concluded previously, defendants' excuse that Shah "was inaccessible to them during the discovery phase of this litigation because he resided in the United Arab Emirates" "is unpersuasive." *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2024 WL 3184978, at *4 (S.D.N.Y. June 26, 2024). Further, "defendants could have sought Shah's voluntary testimony," but made no "effort to do so." *Id*. Even setting all that aside, defendants were still "responsible for an unwarranted delay in seeking [a] letter rogatory" to Denmark because "Shah was extradited to Denmark, a Hague Convention signatory, in December 2023, several months before defendants sought his testimony in this case." *Id*.

And even assuming *arguendo* that Shah were unavailable within the meaning of the rule, nothing in his proffered testimony "had so great a tendency . . . to expose [Shah] to civil . . .

liability" that "a reasonable person in [his] position would have" said it "only if the person believed it be true." Fed. R. Evid. 804(b)(3). Shah's testimony that he did not disclose "the loop" to the Argre partners was part and parcel of his defense that he believed he had discovered a loophole in Danish law and that he considered Solo's circular trading strategy proprietary information to be guarded closely from competitors. (Ex. 1 (May 21, 2024 Tr.) at 118:22-120:22; Ex. 3 (May 23, 2024 Tr.) at 52:2-54:9.) Thus, Shah's self-serving testimony in *defense* against SKAT's claims was not against his interest, such that a reasonable person in Shah's position would have said it only if it were true. *See Silverstein v. Chase*, 260 F.3d 142, 148 (2d Cir. 2001) ("[E]ach particular assertion in a narrative should be interpreted within the context of the circumstances under which it was made to determine if that assertion is in fact sufficiently against interest.").

*Finally*, even if Shah's testimony were admissible under either hearsay exception, the Court still should exclude it under Federal Rule of Evidence 403. "The fact that prior testimony meets the criteria set by [Rule 804(b)(1)] . . . does not make it admissible." *Li v. Canarozzi*, 142 F.3d 83, 88 (2d Cir. 1998). "The court retains its normal discretion to exclude the evidence on other grounds," including Rule 403. *Id.* The proffered testimony does not add much to what Mr. Markowitz and Mr. van Merkensteijn have testified already as whether Shah told them there were no shares and it would be in that sense cumulative and of little probative value. *See id.* at 89 ("we see no basis for overturning [the] assessment that Monk's testimony would have added little to that of Tang, for the responses of both men ran along quite parallel lines").[2]

The admission of Shah's testimony would also require SKAT to further prolong and complicate the trial by offering substantial evidence to demonstrate the unreliability of Shah's statements, including its inconsistency with the evidence previously presented in the trial. For example, Shah testified that he did not "instruct[] the pension plans" on "what day to trade, which stocks to trade, . . . how to get the Danish interest rates from public sources and so on." (Ex. 2 (May 22, 2024 Tr.) at 120:1-122:18.) Shah also insisted in his English testimony that he was not aware that the dividend credit advice documents that Solo prepared were being submitted to SKAT and other tax authorities. (Ex. 4 (June 7, 2024 Tr.) at 120:19-141:7.) And the admission of defendants' proffered testimony would force SKAT to undermine Shah's entire defense in the English action, of which his testimony concerning what he told the Argre partners was just one piece, that he believed he was taking advantage of a legal loophole that he wanted to keep secret. Indeed, Shah offered a similar defense in his Danish criminal case at the end of which he was convicted of fraud.

Respectfully submitted,

/s/ Marc A. Weinstein\_\_\_\_
Marc A. Weinstein

cc: all counsel of record (via ECF & email)

---

2. *See also In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2024 WL 3184978, at *3 ("it is likely that defendants themselves could testify as to what Shah told them").