# Exhibit 1

# OPUS2

Skatteforvaltningen v Solo Capital Partners LLP & Others

Day 17MT

May 21, 2024

Opus 2 - Official Court Reporters

Phone: 020 3008 6619

Email: transcripts@opus2.com

Website: https://www.opus2.com

1        affirm Mr Shah before we do anything.
2    MR JONES:  Your Lordship reminds me that that might be
3        appropriate.  He needs to be affirmed, thank you.  I had
4        that firmly in my mind at 9.30 but I'm afraid it slipped
5        my mind in the ensuing 30 minutes.
6    MR JUSTICE ANDREW BAKER:  Thank you.
7                MR SANJAY SHAH (affirmed)
8                Examination—in—chief by MR JONES
9    MR JUSTICE ANDREW BAKER:  Yes, Mr Jones, thank you.
10   MR JONES:  My Lord, thank you.  Can we have {V/27/1},
11       please.  Thank you very much.
12           Mr Shah, I'm going to ask you to look at this on
13       screen because I understand that is easier for you.
14       This document is headed:
15           "First witness statement of Sanjay Shah."
16           For the main trial, and in the top right—hand corner
17       you will see it has the date of 19 January 2024.  My
18       first question is do you recall making and signing that
19       statement?
20   A.  Yes, that's correct.
21   Q.  Now, please will we go over to {V/27/130}.  You see
22       there in the last paragraph, under 719, you will see
23       a certificate headed:
24           "Confirmation of compliance and statement of truth."
25   A.  Yes, I can see that.

                                13

1    Q.  If you go over to the next page {V/27/131}, please,
2        under that certificate , is that your signature, above
3        the date of 19 January 2024?
4    A.  Yes, that's my signature.
5    Q.  I will come back to ask you more about this statement
6        when we have looked at the remainder of the statements,
7        Mr Shah.  Can we now go to {V/28/1}.  This, as you can
8        see, is headed:
9            "Second witness statement of Sanjay Shah."
10           Can you see the date of this?  I can't see it on
11       screen, but the date is 1 February 2024.  Can we go
12       over, please, to page {V/28/2}.  Just read to yourself
13       paragraph 4, please, on this page.
14   A.  Okay, I've read that now.
15   Q.  Thank you.  Do you recall making this statement for the
16       purpose set out in paragraph 4?
17   A.  Yes, I do.
18   Q.  Please could we go now in the same document to
19       {V/28/13}.  Here we see a confirmation of compliance and
20       statement of truth in the same form as the one we looked
21       at earlier and below it is your signature.  Could you
22       confirm, please, that that is your signature?
23   A.  Yes, it is .
24   Q.  Thank you.  I will come back to ask you more about this
25       when we have looked at the next two documents.  Could we

                                14

1        now look at {V/34/1}.  This one is headed in the top ——
2        in the tramlines:
3            "Third main trial witness statement ..."
4            And in the top right—hand corner it is dated
5        22 April 2024.  If we go over to page {V/34/2}, please.
6        Will you simply read paragraphs 3 and 4 to yourself,
7        just to remind yourself of what is there.
8    A.  Okay, I've read those.
9    Q.  Thank you.  Do you recall making this statement in order
10       to provide the updated version of your PowerPoint
11       presentation?
12   A.  Yes, I do remember.
13   Q.  Thank you.  You will see at the foot of the page the
14       text for the confirmation of compliance and statement of
15       truth.  Can we now go over, please, to page {V/34/3} in
16       this document.  Thank you.  Is that your signature?
17   A.  Yes, it is .
18   Q.  Have you been able to review this statement and the
19       updated PowerPoint presentation before starting your
20       evidence here this morning?
21   A.  Yes, I have.
22   Q.  And to the best of your knowledge and belief, are the
23       contents true and accurate?
24   A.  Yes, they are.
25   Q.  Thank you.  Could we now please go to {V/38/1}.  This is

                                15

1        headed:
2            "Fourth witness statement of Sanjay Shah."
3            And in the top right—hand corner you will see the
4        date of 13 May.  Will you read the first line of
5        paragraph 1 at the foot of this page, please, and then
6        tell me when you have read it.
7    A.  Yes, I have read that now.
8    Q.  If we go to page {V/38/2}, please.  Thank you.  Just
9        read the first line at the top.
10   A.  Yes, I have done that.
11   Q.  Do you recall making this fourth statement last week?
12   A.  Yes, I do.
13   Q.  Would you now please, operator, go to page {V/38/26} in
14       this same document.  Do we see there, is that your
15       signature above the date of 13 May 2024, Mr Shah?
16   A.  Yes, that is my signature.
17   Q.  Just for the sake of completeness, have you given your
18       approval this morning to a revised version of this
19       statement, which includes the certificate of compliance
20       with PD57?
21   A.  Yes, that's correct.
22   Q.  Thank you.  Now ——
23   MR JUSTICE ANDREW BAKER:  Mr Jones, just before you now move
24       to I imagine the next stage of the formality of
25       verifying , including in relation to earlier statements,

                                16

1    a lend in to one set of borrowers and a lend out. So
2    each of those pairs of black arrows has to have the same
3    total volume of shares ——
4  A. Yes, that's correct.
5  MR JUSTICE ANDREW BAKER:  —— as an integral part of the
6    model that you were structuring; is that right?
7  A. Yes, yes. But I just want to try and make clear that
8    netting may suggest that trades are cancelling each
9    other out, but that's not the case.
10 MR JUSTICE ANDREW BAKER:  Don't worry, Mr Shah, I'm well
11    aware that that is likely to be why you then wanted to
12    qualify the use of terminology.
13 A. Yes.
14 MR JUSTICE ANDREW BAKER:  And there may be further questions
15    for you from others about understandings of what in
16    terms of the transaction analysis is happening. But the
17    simple factual question, I think, is that the model
18    required, as you intended it, that each black arrow
19    coming into a party or a group of parties would be for
20    a certain volume of shares that equaled the volume of
21    shares going out from that same group of parties on the
22    other black arrow; correct?
23 A. Yes, that's correct, my Lord.
24 MR JUSTICE ANDREW BAKER:  And similarly, that the volume of
25    what will be booked as cash movements on the red circuit

                            117

1    has to be equal sum in, equal sum out, or the model is
2    not doing what it is intended to do?
3  A. Yes, that is correct too.
4  MR JUSTICE ANDREW BAKER:  Thank you.
5  MR RABINOWITZ:  I'm grateful, my Lord.
6        You viewed the model net settling, however you want
7    to describe it, as potentially game changing for you and
8    Solo, yes?
9  A. Yes.
10 Q. And you considered that it provided the answer to all of
11    Solo's problems with accessing funds, correct?
12 A. Yes. Yes, funds were not needed for this model,
13    correct.
14 Q. It would be fair to describe Solo, if it adopted this
15    approach, as operating in its own ecosystem with nothing
16    to go in or come out of Solo, correct?
17 A. Yes. I think those are the words that I used, yes.
18 Q. You also say in your evidence that the trades were
19    designed to work without external movement of cash or
20    shares, yes?
21 A. Yes, that's correct.
22 Q. Just whilst this trading model by which you sought to
23    achieve this objective is sometimes referred to in the
24    documents for the court as the Solo Model, for the sake
25    of clarity I'm going to try and refer to it consistently

                            118

1    as the GSS Trading Model, okay. So if that's the
2    expression I use, you will know that is what I mean.
3  A. Okay, thank you.
4  Q. Forgive me when I am inconsistent. Can we go, please,
5    to {V/34.1/1}, which I think is what we have except
6    a different page. Thank you. This is, as you will
7    recognise, the PowerPoint presentation that you produced
8    in the last few months for your criminal proceedings;
9    correct?
10 A. Yes, that's correct.
11 Q. If we can then go to page {V/34.1/30} of this, this is
12    your explanation of what I'm referring to as the
13    GSS Model. You have called it the Solo Custody Model.
14    It doesn't matter. You will obviously be very familiar
15    with this, yes?
16 A. Yes, that's correct.
17 Q. You say in the fourth bullet point that:
18        "The (mandatory) use of netting ... [means that] ...
19    all depot positions and cash balances [will be] zero at
20    the start and at the end of trading –..."
21        Do you see that?
22 A. Yes.
23 Q. And that is why, as you say, the accounts held by Solo
24    therefore showed no balances; correct?
25 A. Yes, the accounts with its subcustodians such as

                            119

1    JP Morgan, yes.
2  Q. So the accounts held by Solo showed no balances, yes?
3  A. Yes.
4  Q. In other words, Solo does not hold, on this model, any
5    aggregate positive balance of shares at the beginning or
6    end of trading; correct?
7  A. Yes, with its subcustodians, correct.
8  Q. And it did not hold any aggregate positive cash balance
9    at the beginning or end of trading, correct?
10 A. Yes, that's correct.
11 Q. You have previously called this Solo's trade secret,
12    yes?
13 A. Yes.
14 Q. And you have said that because of this you didn't want
15    to share it with anybody, correct?
16 A. Yes, that's correct.
17 Q. And implicit in this being a secret, Mr Shah, not to be
18    shared with anybody, is obviously it was not something
19    any of your competitors were doing, otherwise it would
20    not have been your secret; correct?
21 A. Yes, it was my understanding that my competitors were
22    not operating a model like this.
23 Q. Yes. They were all still using leverage for their
24    trades, yes?
25 A. Yes. But I do need to make a distinction between what

                            120