WILMERHALE

January 28, 2025

Peter G. Neiman

+1 212 295 6487 (t)
+1 212 230 8888 (f)
peter.neiman@wilmerhale.com

**VIA EMAIL, HAND, AND ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation, No. 18-md-02865-LAK (S.D.N.Y.)

Dear Judge Kaplan:

Defendants respectfully request that the Court permit the defense to introduce an excerpt from the prior sworn testimony of Sanjay Shah in Skatteforvaltningen (The Danish Customs and Tax Administration) v. Solo Capital Partners LLP, CL-2018-000297, in the Commercial Court, King's Bench Division of the High Court of Justice of England and Wales (the "UK trial"). The testimony is highly relevant. It goes directly to the core issue in the case—whether Defendants knew that Shah failed to obtain shares in the market. Shah squarely testified, under oath, that he did not tell the Argre partners—i.e., defendants John van Merkensteijn and Richard Markowitz—that there were no shares, and that the trading was instead a closed loop.

The testimony is not barred by the rule against hearsay for at least two reasons. *First*, SKAT had a prior opportunity and similar motive to cross examine Shah about what he told the Defendants. SKAT's motive was not just similar—it was essentially identical. The UK testimony took place *after* Defendants moved this Court for an order permitting the taking of Shah's deposition, but before this Court denied that motion. SKAT no doubt hoped to use the UK proceeding to develop and lock in favorable testimony from Shah that could then be used in this case if the Court ordered the deposition. And consistent with that motive, SKAT's cross examination suggested reasons why Shah would have told the Argre partners the truth about his trading strategy. When Shah denied doing so, SKAT vigorously challenged the denial and attempted, repeatedly and unsuccessfully, to discredit it. *See generally* Ex. 1 (DX 5782 at 5, Tr. at 13:16-15:19). The testimony is therefore admissible under Federal Rule of Evidence 804(b)(1), as prior sworn testimony under oath. *Second*, at the time of the testimony, Shah had a powerful incentive to agree with SKAT's mistaken suggestion that he had told the Argre partners that there were no

WILMERHALE

Honorable Lewis A. Kaplan
January 28, 2025
Page 2

shares. Shah was being cross-examined in a civil trial at which he and Solo Capital were the lead defendants. And he was also in the midst of his criminal fraud trial in Denmark. Shah had conceded the absence of shares but was maintaining that no shares were required. Ex. 1 (DX 5782 at 5, Tr. 14:13-20; at 14-15, Tr. 52:25-53:23). In that context, Shah had every reason to fear that denying telling the Argre partners about the absence of shares would have suggested that he had something to hide, which would have increased his exposure to both civil and criminal liability. Yet despite SKAT's express invitation, Shah repeatedly denied sharing this information with the defendants. Those denials are therefore admissible under Federal Rule of Evidence 804(b)(3), as statements against both pecuniary and penal interest.

In opposing admissibility, SKAT also suggested that attacking Shah's credibility would require putting in other evidence and would become a sideshow. Tr. 1818. But SKAT had a full and timely opportunity to designate any evidence it wished to introduce, under Rule 106 or otherwise, to attack Shah's credibility. It has chosen not to designate anything. On that record, SKAT may not rely on vague claims that challenging Shah's credibility would require putting in additional, unidentified, evidence. And in any event, Shah's credibility is hardly a "sideshow." His testimony is powerful direct evidence on the central question in the case, making his credibility an important question for the jury.

For all these reasons, as explained further below, the Court should permit the defense to introduce the designated portion of Shah's UK trial testimony.

## Background

1. **Nature Of the UK Trial**

In Skatteforvaltningen (The Danish Customs and Tax Administration) v. Solo Capital Partners LLP, CL-2018-000297, in the Commercial Court, King's Bench Division of the High Court of Justice of England and Wales (the "UK trial"), SKAT alleged that it was the victim of fraud between 2012 and 2014 that led to a loss of roughly 12.09 billion Kroner. SKAT brought a lawsuit alleging fraud against 114 different defendants, which generally fell into the following groups: (1) the Sanjay Shah defendants, including Shah and many companies he owned or controlled; (2) DWF Defendants, including Graham Horn, Anupe Dhorajiwala, and Rajen Shah; (3) several companies that acted as custodians, including Lindisfarne LLP and Indigo; (4) assorted pension plans; and (5) a number of individual defendants, including former Solo employees and individuals associated with various counterparties in the transactions. Counsel for SKAT announced to the UK Court that though there were three schemes at issue he would "be spending most of [his] time on the Solo Scheme, and that is perhaps not surprising given that ... the Solo Scheme accounts for around three-quarters of the value of SKAT's claim, being 9.025 billion Danish krone[r] out of the total[.]" Ex. 2 (SKAT_MDL_001_00834759 (Day 1 Transcript, page 31)).

**WilmerHale**

Honorable Lewis A. Kaplan
January 28, 2025
Page 3

### 2. Defendants Seek to Depose Shah

On March 28, 2024, this Court held a discovery conference at which it set the initial trial date of January 7, 2025. Dkt. 987. Defendants informed the Court at that scheduling conference that Defendants might try to seek Shah's deposition. On April 19, 2024, Defendants moved for a letter rogatory that would permit them to obtain testimony from Shah in Denmark pursuant to the Hague Convention, a motion which SKAT joined conditionally, so long as the trial date did not move and SKAT was permitted to cross-examine Shah.[1] Dkt. 979, 980, 981. On May 1, 2024, Defendants moved to amend the motion to address concerns raised by the Court during an April 26, 2024 conference about the impact Defendants' request could have on the trial date. Dkt. 983. This time, SKAT opposed on the ground that the amended motion did not sufficiently address the Court's concerns and filed a separate motion for a letter rogatory to take the deposition of Anthony Mark Patterson, a former Solo employee who had pled guilty to fraud, in the event the Court permitted the Shah deposition. Dkt. 990, 992.

### 3. With Defendants' Motion Pending, SKAT Cross Examines Shah In The UK Trial

On May 23, 2024, while the above motion was pending, SKAT's counsel cross examined Sanjay Shah in the UK trial. See generally Ex. 1 (DX 5782). Although no Argre partner was a defendant in the UK trial, SKAT's counsel elected to directly, forcefully and repeatedly question Shah about whether he had disclosed to the Argre partners the truth about his trading system. During the course of the cross, SKAT's counsel first set the groundwork to argue that if Shah believed his system was legitimate, he should have disclosed it to the Argre partners, with whom he claimed to have a "relationship of trust." Ex. 1 (DX 5782, at 5, Tr. 13:21-22). SKAT's counsel then made seven successive, escalating efforts to get Shah to admit that he had done so. *Id*. at Tr. 13-15. But Shah repeatedly denied that. He specifically maintained that he didn't tell the Argre partners that the trading "didn't involve any external movement of shares" or that it "would all be internally settled to zero," and insisted that he "didn't explain to them the loop." When asked whether this meant he had told the Argre partners only "half the story," Shah replied "I wouldn't say half the story. I would say even less than that, probably an eighth of the story." Ex. 1 (DX 5782, at 5, Tr. 15:22-23).

### 4. Motions in Limine

Per this Court's pretrial orders, initial motions in limine were due on August 15, 2024, with responses due September 3, 2024. Because this deadline preceded the deadline for designating

---

[1] SKAT joined "in Defendants' motion, provided that the first trial in this multidistrict litigation commences as scheduled on January 7, 2025, irrespective of whether the Danish judicial authorities have executed any letter of request issued by the Court or the requested testimony has been taken in Denmark, and that SKAT is permitted to cross-examine Sanjay Shah." Dkt. 980 at 1.

WilmerHale

Honorable Lewis A. Kaplan
January 28, 2025
Page 4

prior testimony to be played at trial, neither side filed any motions related to such testimony. Defendants did preserve the possibility that they might seek to offer Shah's testimony. Thus, defendants timely moved in limine to preclude certain evidence related to foreign proceedings, but specifically noted that proceedings related to Shah were not subject to that motion, on the grounds that SKAT had alleged Shah to be the "mastermind" of the alleged fraud, and therefore both Shah and Solo were uniquely relevant to the facts of the instant case. Dkt. 1127 at 2 n.1. SKAT did not move in limine to preclude the use of Shah's UK testimony, nor did it indicate in its opposition to Defendants' motion regarding foreign proceedings that it believed Shah's UK testimony would be inadmissible. *See generally* Dkt. 1153.

   5. **The Pretrial Order Process**

Under the schedule agreed to by the parties, Defendants deadline to disclose testimonial designations to SKAT was November 12, 2024. *See* Ex. 7 (November 12, 2024 through December 4, 2024 email thread). On that date, Defendants provided timely notice of their intent to introduce Shah's testimony at trial, identifying the same passage that Defendants offer now. On November 27, 2024, SKAT responded by providing objections and counter-designations to Shah's testimony, which counters included other portions of Shah's testimony as well as testimony from an unrelated witness, and a paragraph from a filing in the UK trial entitled Consolidated List of Common Ground as of 5 April 2024. *Id.* On December 4, 2024, Defendants responded with their objections to SKAT's counter-designations. The Joint Pretrial Order was subsequently finalized and filed with the Court on December 10, 2024. Dkt. 1245. Defendants listed Sanjay Shah on their witness list, and noted his testimony would be offered via designation from his UK trial testimony. Dkt. 1245 at 22. Defendants' affirmative designations of Shah's UK testimony were listed on page 29 of 30, in Appendix B of that filing. Dkt. 1245-2. And Defendants marked the relevant transcript as an exhibit and included it on their exhibit list. Dkt. 1245-3.

In the final Pretrial Order entered by the Court, both SKAT and Defendants agreed that Shah was unavailable for trial. Dkt. 1245, at 17. The final Pretrial Order also set out a procedure for the timing and exchange of designated testimony prior to trial. Per that procedure, parties "shall, by 12:00pm ET three calendar days prior to the date the party intends to call such witness, provide the other side with the specific pages and lines of previously designated transcript from the witness's deposition as set forth in this Pre-Trial Order that it expects to read or play during trial as well as any trial exhibits to be offered through that witness's deposition testimony." Dkt. 1245, at paragraph 17. Objections and counter-designations would be due 24 hours later, with a meet and confer that evening at 8:30 pm. *Id.*

**WILMERHALE**

### 6. Defendants Timely Disclose Intent To Present Shah Designations; SKAT Fails To Timely Respond

On Saturday, January 25, 2025, in accordance with the deadline set by the Joint PTO, Defendants disclosed to SKAT their intent to offer Shah's UK trial testimony, as well as other deposition testimony, as early as Tuesday, January 28.  Ex. 3 (January 25, 2025 email from Nicholas Bahnsen).  SKAT's objections and counter-designations were therefore due on Sunday, January 26.  SKAT provided objections and counter-designations to all the other witnesses Defendants disclosed.  Ex. 4 (January 26, 2025 email from Debbie Placid); Ex. 5 (January 27, 2025 email from Debbie Placid); Ex. 6 (January 27, 2025 email from Debbie Placid).  But SKAT said nothing about Shah's testimony on January 26th, and did not raise any objections to the Shah testimony during an extensive meet-and-confer about Defendants' designations on the evening of January 27.  The first time that Defendants learned that SKAT intended to stand on the objections asserted months earlier as to Shah was in Court on January 28, 2025.

### Argument

### 1. Shah's Testimony Is Admissible Under Rule 804(b)(1)

Federal Rule of Evidence 804(b)(1) renders admissible testimony by an unavailable witness that "was given as a witness at a trial … and is now offered against a party who had … an opportunity and similar motive to develop it by direct, cross- or redirect examination."  Here, there is no dispute that Shah is unavailable (the PTO contains SKAT's stipulation to that effect). Dkt. 1245, at 17.  And the prior testimony was given at trial, and SKAT had an opportunity to develop it then.  Indeed, the testimony was given in response to questioning by SKAT, and SKAT's questioning of Shah continued for multiple days thereafter.  The only question, then, is whether SKAT had a similar "motive" to develop the testimony.  As to this issue, the Second Circuit has resisted bright line rules, instead stressing that the "inquiry as to similar motive must be fact specific."  *United States v. DiNapoli*, 8 F.3d 909 (2d Cir. 1993).  The "similar" motive requirement serves to insure an adequate opportunity for adversarial testing of the testimony. *United States v. Wingate*, 520 F.2d 309, 316 (2d Cir. 1975) (noting "the issues in the two proceedings [must be] sufficiently similar to assure that the opposing party had a meaningful opportunity to cross-examine when the testimony was first offered").

A fact-specific analysis confirms that SKAT had ample motive in the UK trial to develop the testimony during cross examination.

*First*, SKAT had a strong motive to develop testimony in the UK on this point precisely for use in this case.  Consider the chronology.  At the time of the UK questioning, both sides had, months earlier, moved this Court to permit a deposition of Shah in this case.  And in initially joining Defendants' motion to do so, SKAT specifically noted its desire to cross-examine Shah.

WILMERHALE

Honorable Lewis A. Kaplan
January 28, 2025
Page 6

But by May 23, 2024, the Court had not yet ruled. SKAT thus had every reason to believe that Shah might eventually be deposed in this case, and every reason to want to lock in favorable testimony from Shah before that deposition began. SKAT's theory, stated multiple times over the course of this trial, is that Shah and the Defendants in this case were working together to defraud SKAT. Given that theory, testimony from Shah on Defendants' knowledge of Shah's fraudulent scheme would be incredibly important for SKAT to procure in the UK. Such testimony could then be used as a control in Shah's anticipated deposition in this litigation.

*Second*, SKAT also had reasons for purposes of the UK trial itself to resist any suggestion by Shah that he had not told the Argre partners about how his trading truly worked. Other, smaller pension plan clients were defendants in that proceeding, [2021] EWHC 974 (Comm) at paras. 2 & 3 (Apr. 27, 2021), and SKAT could anticipate that if this testimony stood, these defendants (who denied culpable knowledge)[2] would be expected to argue that if Shah did not tell the Argre partners with whom he claimed to have had a long, trusting relationship, he also would not have told them. SKAT also had strong reasons in the UK trial to test any factual assertion made by Shah, since his credibility was obviously central in a case accusing him of orchestrating a massive fraud.

SKAT's handling of Shah's examination in the UK trial confirms that it believed it had strong reasons to challenge his testimony that he had not told the Argre partners the truth.

SKAT began this portion of the questioning by asking Shah to confirm that he "had been engaged in cum-ex trading with Argre for a number of years including in relation to the Broadgate transaction." Ex. 1 (DX 5782 at 5, Tr. 13:16-18). When Shah agreed, counsel confirmed that he had "obviously built a relationship of trust with them." Ex. 1 (DX 5782 at 5, Tr. 13:21-22). When Shah agreed with that as well, counsel for SKAT then directly suggested that Shah "must have" explained to the Argre partners that "it would not be necessary for them to invest capital." Ex. 1 (DX 5782 at 5, Tr. 14:5-7). Shah confirmed that his explanation "would have been … that the pension plans would have lent their shares out in order to raise the cash needed to pay for the shares." Ex. 1 (DX 5782 at 5, Tr. 14:8-11). All of this questioning was intended to lay the predicate for asserting to Shah that logically, if he believed what he was doing was legitimate, he surely would have described the details to the Argre partners, given the "relationship of trust."

But Shah denied doing so. Ex. 1 (DX 5782 at 5, Tr. 14:18) ("I don't recall explaining that to them."). SKAT did not accept that answer. Instead, it attempted six more times to get Shah to confirm that he had told the Argre partners the truth. During the course of these repeated

---

[2] B. Eslinger, *Pension Plans Slam Scant Evidence in $2B Danish Tax Suit*, Law360 (Feb. 5, 2020), available at https://www.law360.com/tax-authority/articles/1239582/pension-plans-slam-scant-evidence-in-2b-danish-tax-suit.

WILMERHALE

Honorable Lewis A. Kaplan
January 28, 2025
Page 7

inquiries, SKAT applied various strategies.  Counsel first upped the ante.  Ex. 1 (DX 5782 at 5, Tr. 15:5-11) ("Mr. Shah, I'm trying, I really am, I'm not just being difficult about this – why would they have been willing to participate in a scheme where they couldn't possibly have understood why it was that they didn't need to obtain any funding unless you explained to them that effectively there was going to be a loop which meant that ultimately everything would be zero settled?"), moved to directly pressing the assertion that a failure to tell the Argre partners the truth would mean that Shah himself has something to hide, *e.g., id.* at 16:10-13 ("Mr. Shah, these people, you told me, were people you trusted.  You had done other transactions with them.  But you were still not willing to tell them the truth about exactly what your scheme involved, correct?"), and culminated with repeated suggestions that the only alternative was that Mr. Shah had deliberately lied, *id.* at 16:15-21 ("You didn't tell them the truth about what your scheme involved.  You withheld key aspects of that scheme from them … . So you gave them half the story because you were not willing to give them the whole story?").

But Shah remained steadfast that he had not revealed the truth to the Argre partners.

SKAT's steadily escalating assault on Shah's denial confirms that SKAT perceived a strong motive to cross examine Shah on the point in the UK trial, both for use in that proceeding and as a predicate for a deposition of Shah in this one.

SKAT's transparent effort to use the UK trial to develop evidence for this case did not succeed.  But having tried hard and failed, SKAT cannot now be heard to argue that it lacked the motive even to try.

For all these reasons, Shah's testimony is admissible in this proceeding under Rule 804(b)(1).

   2.  **Shah's Testimony Is Also Admissible Under Rule 804(b)(3)**

Under Fed. R. Evid. 804(b)(3), a statement is admissible as a statement against interest if a "reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to … expose the declarant to civil or criminal liability."  This Rule "is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true."  *Williamson v. United States*, 512 U.S. 594, 599 (1994).  In evaluating evidence under this Rule, a court must conduct "an adequately particularized analysis," *United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) (quoting *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004)), to determine "whether 'a reasonable person in the declarant's shoes would [have] perceive[d] the statement as detrimental to his or her own penal interest' ... 'in light of all the surrounding circumstances,'" *id.* at 128.

WilmerHale

Here, the "surrounding circumstances" are that Shah made the statements in a civil trial in which he was a defendant accused of fraud,[3] at the same time that he was in jail in Denmark facing a criminal trial for that same fraud. And Shah's defense in both cases was not to deny the loop or absence of shares. It was instead to assert that his shareless system was lawful—not a fraud but an ingenious financial innovation that successfully and properly exploited a loophole in Danish (and Belgian) law. *See, e.g.*, ECF No. 1250-1 at 8 (Danish judgment stating that Shah claimed he had exploited a legal loophole and did not violate the law). Given those circumstances, Shah had enormous incentives to admit that he had shared the truth with trusted clients, for that would have been consistent with his claimed belief in his system's legitimacy. His denial, by contrast, suggested that he had something to hide, and thus increased his exposure to both civil and criminal liability. Nonetheless, Shah steadfastly and repeatedly resisted SKAT's every effort to get him to confirm that he had told the Argre partners the truth. A reasonable jury could easily find that these statements were self-inculpatory and that Shah would not have made them unless they were true. *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*, 627 F. Supp. 3d 408, 419 (S.D.N.Y. 2022) (declarant's admission that he had "received the payment in cash of 39 invoices from [Sanchez]" was sufficiently damaging to be subject to this exception). The statements are therefore admissible under Rule 804(b)(3).

For these reasons, we respectfully request that the Court permit the Defendants to read into the record the indicated portions of Shah's UK trial testimony.

We thank the Court for its attention to this matter.


Respectfully submitted,


*/s/ Peter G. Neiman*
Peter G. Neiman

---

[3] J. Faulkner, *Denmark's £1.4B Tax Fraud Trial Heads for 'Uncharted Waters'*, Law360 (Apr. 12, 2024), available at https://www.law360.com/articles/1824682.