UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br>18-cv-10088; 18-cv-10090 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S
MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO REMAND TO THE TRANSFEROR COURT**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

**TABLE OF CONTENTS**

                                                          **Page**

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD....................................................................................................................2

ARGUMENT .................................................................................................................................3

    I.       Defendants mischaracterize the Court's prior statements.....................................................3

    II.      Defendants' motions mischaracterize their own cases and other cases in the MDL. ..........4

    III.     Remand would risk inconsistent pretrial rulings and waste the parties' and judicial resources. ..............................................................................................................................6

CONCLUSION...............................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litigation*, 338 F. Supp. 3d 1347 (J.P.M.L. 2018) ............................................. 5

*In re Heritage Bonds Litig.*, 217 F. Supp.2d 1369 (J.P.M.L. 2002) ............................................. 2, 6

*In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.*,
   851 F. Supp. 556 (S.D.N.Y. 1994) ......................................................................................... 2

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   2010 WL 2541227 (S.D.N.Y. June 11, 2010) ....................................................................... 2, 6

*In re Patenaude*, 210 F.3d 135 (3d Cir. 2000) ................................................................................. 2

*S.E.C. v. Pignatiello*, 1998 WL 293988 (S.D.N.Y. 1998) ................................................................. 5

*In re State & Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
   2011 WL 1046162 (S.D.N.Y. Mar. 22, 2011) ....................................................................... 2

**Statutes and Rules**

28 U.S.C. § 1407(a) ........................................................................................................................... 2

Plaintiff Skatteforvaltningen ("SKAT") submits this memorandum of law in opposition to the respective Motions to Remand to the Transferor Court filed by defendants Gregory Summers, Acorn Capital Corporation Employee Profit Sharing Plan ("Acorn Plan"), and Acorn Capital Strategies LLC Employee Profit Sharing Plan & Trust ("Acorn Strategies Plan," together, the "Acorn Defendants") (ECF Nos. 1384-1386) and defendants Shreepal Shah and Cambridge Way LLC 401K Profit Sharing Plan (together with the Acorn Defendants, the "Defendants") (ECF Nos. 1387-1389).[1]

**PRELIMINARY STATEMENT**

Defendants' motions should be denied. As the Court explained at the January 10, 2024 conference, the cases should not be remanded to the transferor court until, "figuratively speaking," they are ready for "jury selection," *i.e.*, after the Court has made any pretrial rulings that apply in these and other similar cases. That makes good sense because, notwithstanding Defendants' arguments to the contrary, these cases are not unique. Defendants Summers and Shah, and their pension plans, are among a group of similarly situated MDL defendants who participated in the fraudulent scheme via an "investment manager" called Zeta Financial Partners.

Summers and his two plans used Solo Capital as their custodian for refund claims to SKAT in 2012. And in subsequent years, one of Summers' plans, along with Shah's Cambridge plan, used ED&F Man Capital Markets Ltd. as custodian. Summers participated in the scheme with MDL defendant John Doscas, with whom he had a previous business relationship. Thus,

---

1. Based on the reference in each of the Hanamirian Declarations to satisfaction of Rule 10.3(a)(1) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, SKAT understands Defendants intended to move pursuant to that rule. However, based on its plain language, a Motion to Remand under Rule 10.3 is made "to the transferor court" and available "[i]f the Clerk of the Panel does not enter a CRO." Fed. R. Jud. Panel 10.3. Accordingly, SKAT responds to Defendants' motions as requests to the Court for a suggestion of remand.

Defendants' cases share numerous issues of law and fact with other cases consolidated in this MDL. And there is no doubt Defendants' cases would benefit from continued consolidation.

## LEGAL STANDARD

The authority to remand an action transferred for multidistrict litigation lies with the Panel itself. *See* 28 U.S.C. § 1407(a); *see also* Fed. R. Jud. Panel 10.1, 10.2. "In determining whether to issue a suggestion of remand to the Panel, the Court is guided by the standards for remand employed by the Panel." *In re State & Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2011 WL 1046162, at *3-4 (S.D.N.Y. Mar. 22, 2011) (internal quotations omitted).

Once a matter is transferred and consolidated or coordinated by order of the Panel, an action can be remanded to its court of origin prior to the completion of pretrial proceedings "only upon a showing of good cause." *In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994) (quotation omitted). Even when "everything that remains to be done is case-specific," that does not necessarily mean that "consolidated proceedings have concluded." *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000). "The Court's discretion to suggest remand generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Merrill Lynch Auction Rate Sec. Litig.*, 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010). Remand should not occur when continued consolidation will "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Heritage Bonds Litig.*, 217 F. Supp.2d 1369, 1370 (J.P.M.L. 2002). The party seeking remand bears the burden of establishing that remand is warranted. *See In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.*, 851 F. Supp. at 562.

**ARGUMENT**

I.      **Defendants mischaracterize the Court's prior statements.**

As an initial matter, the Court has not, as Defendants assert, even once "advised that a remand would be available and ordered at or near the time of jury selection in Trial One," let alone "on a number of occasions."[2]  (Defs. Brs. at 2, 5 (citing Declaration of John M. Hanamirian ("Hanamirian Decl."), ECF Nos. 1386 & 1389, Exs. B, C, D).)[3]  Just the opposite is true.  At the January 10, 2024 conference, the Court explained that "there's plenty of consolidated work left to do" and that the Court's "general view" "is that when the case, figuratively speaking, is ready for jury selection, that's when I send them back."  (Hanamirian Decl. Ex. D at 33:19-20, 34:1-4.)  The Court plainly did not mean, as Defendants contend, that all the cases commenced in other courts would be remanded when the Trial One cases were ready for jury selection.  And Defendants' cases themselves are by no means ready for jury selection.

Nothing the Court said at the other conferences to which Defendants point is of any more help to them.  At the November 20, 2018 conference, Defendants' counsel just discussed his concern regarding the selection of a lead counsel for the MDL defendants based on certain of his clients' ability to protect their unexplained "international Fifth Amendment" rights.  (Hanamirian Decl. Ex. B at 7:3-9:13.)  During the January 24, 2019 conference on the role of lead counsel for the MDL defendants, the Court noted that the Defendants' "exceptionally long and repetitious

---

2. Defendants appear at times to confuse the consolidated MDL proceedings with the subset of those cases currently on trial as part of Trial One.  (See, e.g., Defs. Br. at 3-4 ("[T]he actions have been consolidated for pretrial purposes: this MDL proceeding that is currently tried before Your Honor named 'Trial One.'").)

3. Defendants filed word-for-word identical briefs and declarations in support of their two motions to remand, with the only difference being the defendants' names in the respective motions.  A cite herein to one brief or declaration should be taken as a cite to both.

3

letters" were incomprehensible. (Hanamirian Decl. Ex. C at 10:6-11 ("I just essentially couldn't figure out what you were talking about, to be perfectly blunt.").) In response, counsel for the Defendants stated, "In that context, I think that I am obviously, for lack of a better phrase, the problem. Would the Court entertain or would it be helpful to the Court if we sever?" (*Id*. at 10:12-15.) The Court rejected that suggestion as a matter previously decided by the Panel. (*See id.* at 10:16-20.)

## II. Defendants' motions mischaracterize their own cases and other cases in the MDL.

There is likewise nothing to Defendants' argument that remand is warranted because their cases are "individual in nature and distinct from the other" MDL cases, thus requiring "different testimony from different witnesses and different documentary proof." (Defs. Br. at 6.)

For instance, the Acorn Defendants argue that their cases are distinguishable from those of the Trial One defendants because "[t]he crux of the issues regarding the Trial One Defendants and Defendants from the Consolidated Cases relate to Sanjay Shah and his corporate entity(ies) including Solo Capital Partners LLP." (Defs. Br. at 2.) But that makes no sense because the Acorn Defendants used Solo as a custodian and submitted multiple refund claims to SKAT in 2012 enclosing dividend credit advices issued by Solo. (*See, e.g.*, Weinstein Decl. Ex. 1 (sample reclaim application).)[4] Further, defendant Summers participated in the fraudulent scheme together with Sander Gerber[5] and MDL defendant John Doscas, whom SKAT sued in this district.[6] Thus, the Acorn Defendants' cases share common issues of fact with the Trial One

---

4. The Acorn Strategies Plan also used ED&F Man Capital Markets Ltd. as a custodian in subsequent years.

5. In March 2024, SKAT voluntarily dismissed its claims against defendants Sander Gerber and the Sander Gerber Pension Plan ("Gerber Plan"), but its claims against John Doscas in that action remain for his role as the authorized representative of the Gerber Plan. (*See* ECF No. 975.)

6. *See, e.g.*, Weinstein Decl. Ex. 2 (Summers Dep. Tr. Vol. 1) at 45:2-10, 60:18-61:25; Ex. 3 (SGPP-MDL-000193) (Summers as witness signatory to Gerber Plan Acupay Power of Attorney signed by Doscas); Ex. 4

4

Defendants and the other consolidated cases in which the defendants used Solo Capital as their custodian, including at least facts regarding the fraudulent documentation submitted to SKAT and the structure of the purported underlying transactions.

Nor is the result any different because one of the Acorn plans and defendant Shah and his Cambridge plan used ED&F Man Capital Markets Ltd. as custodian. (Defs. Br. 2, 6.) Nothing about that makes these cases unique in this MDL—at least 13 other current defendant pension plans in the MDL also used ED&F as custodian for their refund claims to SKAT.[7] Indeed, the Acorn Strategies Plan and Cambridge plan are two of five pension plans at issue in this MDL that used Zeta Financial Partners as the plan's "investment manager," including three of which that used ED&F for their purported trading. Thus, these cases continue to share numerous commonalities of fact with the other consolidated cases in which the defendants also "falsely represented that the plans owned shares in Danish companies, [and] that taxes had been withheld on the dividends." *In re Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litigation*, 338 F. Supp. 3d 1347, 1348 (J.P.M.L. 2018).[8]

Defendants fail to explain how the other supposed differences they note—*e.g.*, that Summers and Shah were trustee to one or two pension plans that preexisted the purported trading

---

(ELYSIUM-00585191) (trading instructions to Solo on behalf of Acorn plans, Gerber Plan, and Sterling Alpha Plan); Ex. 5 (Summers000030) (ED&F onboarding email to Summers and Doscas).

7. These include the American Investment Group of New York, L.P. Pension Plan, Del Mar Asset Management Saving & Retirement Plan, DW Construction, Inc. Retirement Plan, Federated Logistics LLC 401(K) Plan, Goldstein Law Group PC 401(K) Profit Sharing Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, KK Law Firm Retirement Plan Trust, Linden Associates LLC 401(K) Plan, Moira Associates LLC 401(K) Plan, Newsong Fellowship Church 401(K) Plan, Riverside Associates Defined Benefit Plan, and the Sterling Alpha LLC 401(k) Profit Sharing Plan.

8. Defendants' reliance on *S.E.C. v. Pignatiello*, 1998 WL 293988 (S.D.N.Y. 1998), is misplaced. (Defs. Br. at 6.) In that case, the court considered under Federal Rule of Civil Procedure 21 whether to sever claims involving two unrelated schemes with "few factual similarities" and no "witnesses or documentary proof that are common to both matters" other than potential testimony of three of the defendants. *Pignatiello*, 1998 WL 293988, at *3-4.

at issue (Defs. Br. at 6)—make their case unique or justify remand. Other cases consolidated in this MDL involve defendants with just a few plans or even just one. And as the Panel has previously explained, "transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Heritage Bonds Litig.*, 217 F. Supp.2d at 1370; *see also In re Merrill Lynch Auction Rate Secs. Litig.*, 2010 WL 2541227, at *3 (denying remand based on "unique issues of fact" where "core issues of fact still remain the same, and thus those cases will benefit from coordinated proceedings").

**III.   Remand would risk inconsistent pretrial rulings and waste the parties' and judicial resources.**

Defendants' argument that remand would conserve the resources of the parties and the Court focuses entirely on the amount of time their counsel has spent reviewing documents supposedly unrelated to their specific cases. (Defs. Br. at 7.) But putting that aside, remand of these cases would not disentangle the common issues in Defendants' cases from those of other MDL defendants—for example, Summers' testimony and documents remain relevant to the two cases against defendant Doscas originally filed in this district. And documents produced by other parties in the MDL, such as Doscas and ED&F, remain relevant to SKAT's cases against Defendants.

The Defendants' requested remand would result in two separate actions proceeding in the District of New Jersey, under separate pretrial schedules and subject to potentially conflicting pretrial rulings with respect to overlapping evidence and issues, while at least three other Zeta-related cases, as well as the other consolidated cases involving the Defendants' same custodians, would continue in this Court. Remand of these cases would thus more than double the time and resources needed to resolve them and increase the risk of inconsistent pretrial rulings by requiring SKAT to brief and the courts to adjudicate duplicative evidentiary issues common

between Defendants and other MDL defendants. *See In re Heritage Bonds Litig.*, 217 F. Supp.2d at 1370 ("Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

Defendants further argue that they have "obtained minimal relevant discovery for any possible trial preparation or settlement negotiation resulting from the coordinated pretrial discovery of the MDL proceedings to date." (Defs. Br. 6-7.) But Defendants made no separate discovery requests to SKAT during the over three years of discovery in this MDL that ended on December 3, 2021 (or at any time prior to these motions) to seek whatever documents or information they now claim they need. Nor do their motions provide any explanation of what discovery supposedly is outstanding, from whom they need to obtain that discovery, or why those requests could not have been made in these consolidated proceedings. Defendants now essentially suggest that they should be permitted to ignore the purpose of pretrial consolidation by sitting on their hands for years in this MDL only to start discovery over in their transferor courts.

The Court has explained previously to Defendants that discovery on their individual cases was available. (*See* Hanamirian Decl. Ex. C (Jan. 24, 2019 Tr.) at 8:7-9:6 (suggesting defendants supplement common discovery responses as necessary to address unique defenses); *see also id.* at 10:22-11:2 ("I don't mean to suggest, Mr. Hanamirian, that the individual rights or positions of your clients won't be respected. They will. But you're going to have to work to avoid repetitious, needless divergence, and piles of unnecessary papers.").) Defendants provide no reason why they did not avail themselves of supplemental discovery requests—as other

7

defendants in the MDL have done—to address any unique aspects of SKAT's claims against them.

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court deny Defendants' motions to remand to the transferor court.

| | |
|---|---|
| Dated: New York, New York<br>January 30, 2025 | HUGHES HUBBARD & REED LLP<br><br>By: /s/ Marc A. Weinstein<br>　　William R. Maguire<br>　　Marc A. Weinstein<br>　　Neil J. Oxford<br>　　Dustin P. Smith<br>　　Gregory C. Farrell<br>　　One Battery Park Plaza<br>　　New York, New York 10004-1482<br>　　Telephone: (212) 837-6000<br>　　Fax: (212) 422-4726<br>　　bill.maguire@hugheshubbard.com<br>　　marc.weinstein@hugheshubbard.com<br>　　neil.oxford@hugheshubbard.com<br>　　dustin.smith@hugheshubbard.com com<br>　　gregory.farrell@hugheshubbard.com<br><br>　　*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)* |

282401346