IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION, OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to Case No: 18-cv-10088 | MASTER DOCKET<br><br>18-md-02865-LAK |

**<u>DEFENDANTS ACORN CAPITAL CORPORATION EMPLOYEE PROFIT SHARING PLAN, ACORN CAPITAL STRATEGIES LLC EMPLOYEE PROFIT SHARING PLAN AND GREGORY SUMMERS'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO REMAND TO THE TRANSFEROR COURT</u>**

John M. Hanamirian
HANAMIRIAN LAW FIRM, P.C.
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – o
(856) 793-9121 – f
jmh@hanamirian.com
*Counsel for Defendants Acorn Capital Corporation Employee Profit Sharing Plan, Acorn Capital Strategies LLC Employee Profit Sharing Plan and Gregory Summers*

i

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................................ 1

Argument ................................................................................................................................... 3

    I.    The Acorn Defendants Have Maintained the Same Position since the Inception of this Mult-District Litigation. ................................................................................................ 3

    II.    The Acorn Defendants Cases Are Not Related to the Referenced Cases ........................... 4

    III.    Remand is warranted. ................................................................................................ 5

Conclusion ................................................................................................................................. 6

Acorn Capital Corporation Employee Profit Sharing Plan and Acorn Capital Strategies LLC Employee Profit Sharing Plan & Trust (the "Acorn Plans") and Gregory Summers ("Summers") (together, the "Acorn Defendants") respectfully submit this Reply Memorandum of Law in Further Support of their Motion to Remand the Acorn Defendants cases back to the transferor court, the United States District Court for the District of New Jersey.

## **PRELIMINARY STATEMENT**

From the inception of this Multi-District Litigation ("MDL"), the Acorn Defendants have objected to the MDL consolidation. It was understood that the purpose of the MDL was to consolidate the discovery process given the number of Defendants and the potential overlap of discovery efforts; it was, however, the only purpose. The Acorn Defendants objected, but participated. The Acorn Defendants did not, however, concede to the ongoing Trial One litigation and maintain the position that further litigation within this MDL will cause irreparable harm if not remanded to the transferor court. Counsel for the Acorn Defendants has offered the following objections to the Court:

(1)   October 22, 2018, letter addressed to Judge Kaplan at ECF No. 4, Memo Endorsed at ECF No. 5;

(2)   October 25, 2018, letter to Judge Kaplan at ECF No. 7;

(3)   November 7, 2018, letter to Judge Kaplan at ECF No. 16:

   a.   During the November 20, 2018, Status Conference before Your Honor that followed the filing of that letter, counsel for the Acorn Defendants argued to not consolidate their matter with the other named defendants within this MDL. The underlying facts and issues concerning the Acorn Defendants are individual in nature and concern different interests. The

1

issues concerning the cases that were consolidated for this MDL compared to the Acorn Defendants are significantly different from one another (ECF No. 1389-2);

(4)   January 11, 2019, letter to Judge Kaplan at ECF No. 65;

(5)   January 23, 2019, letter to Judge Kaplan at ECF No. 69:

   a.   On January 24, 2019, there was a Case Management Conference before Your Honor to discuss ECF Nos. 65 and 69 and other pretrial matters. Counsel for the Acorn Defendants asked Judge Kaplan if the Acorn Defendants could sever their claims from the MDL, and that request was denied (ECF No. 1389-3; pp 10:12-11:2).

(6)   On February 25, 2019, a Proposed Order Governing the Role of Lead Counsel was filed with the Court at ECF No. 84. Counsel for the Acorn Defendants wrote to the Court at ECF No. 85 to strike the following Paragraph from that Proposed Order:

> *4. Lead Counsel shall endeavor to enter into appropriate agreements with counsel for the Consolidated Defendants governing the confidentiality and privileged nature of communications between and among defense counsel.*

There was no subsequent Order filed with or by the Court.

(7)   July 8, 2021, letter to Judge Kaplan at ECF No. 638;

   a.   Counsel for the Acorn Defendants wrote to the Court asking for guidance on further discovery proceedings as the Acorn Defendants have received inquiries from various international government agencies, both civil and criminal, over the past thirteen (13) years. At that time, the Acorn Defendants stated that participating in this MDL would irreparably harm the Acorn Defendants as it may relate to those various international governmental agencies.

   b.   Plaintiff responded on July 12, 2021, at ECF No. 639 asking for the Court to compel the requested discovery proceedings;

   c. On July 13, 2021, the Court denied the Acorn Defendants' July 8, 2021, letter motion at ECF No. 640 then issued a subsequent Order at ECF No. 641 permitting the Acorn Defendants to respond to SKAT's letter at ECF No. 639.

   d. On July 13, 2021, Judge Kaplan issued Pretrial Order No. 25 at ECF No. 640 ordering the Acorn Defendants to produce the requested discovery demands propounded by Plaintiff;

   e. On that same day, Judge Kaplan issued a subsequent Pretrial Order No. 26 at ECF No. 641 permitting the Acorn Defendants to respond to Plaintiff's July 12, 2021, letter at ECF No. 639;

   f. On July 15, 2021, counsel for the Acorn Defendants filed a letter with the Court at ECF No. 646 outlining Summers' concern with the requested discovery production. Nevertheless, the Acorn Defendants agreed to comply with the propounded discovery requests.

The Acorn Defendants continue to object to their participation in this MDL.

## ARGUMENT

**I. The Acorn Defendants Have Maintained the Same Position since the Inception of this Mult-District Litigation.**

During the January 10, 2024, Case Management Conference, the Court stated:

> *THE COURT: My general view -- and I can't give you a definitive application in this case -- is that when the case, figuratively speaking, is ready for jury selection, that's when I send them back.*

(ECF No. 1386-4; pp 34:1-4)

Plaintiff is incorrect in asserting that what transpired during the November 20, 2018, and January 24, 2019 Case Management Conferences would not be helpful herein. On the contrary, the arguments to not consolidate the Acorn Defendants cases with this MDL are the same arguments asserted within the Acorn Defendants' Motion to Remand. The Acorn Defendants have

3

maintained the same position since the inception of this MDL and relied upon the Court's assertion in crafting a defense strategy.

## II.   The Acorn Defendants Cases Are Not Related to the Referenced Cases

Plaintiff argument mischaracterizes Summers's involvement with Solo Capital Partners LLP ("Solo Capital") as somehow Summers engaging in the Trial One Defendants behaviors. To the contrary, Summers and the Acorn Defendants are not at all similarly situated to the Trial One Defendants. The Trial One Defendants engaged in thousands of transactions with Solo Capital whereas Summers came to know not to transact with Solo Capital:

> *"Yeah. I mean, the plans did the trades, except for in Denmark. It happened in this period when people were refusing to deal with American funds, and so we – I don't know how exactly it happened, but we got approached by this group called Zeta Financial Partners.*
>
> *And so they agreed, at first, to do some trades from Solo. They had a -- well, since they had -- you know, they knew the people that are -- it seemed like a reasonable way to approach it.*
>
> *But after doing only several trades through Solo, it became obvious to me that they were not following within our framework the framework being that we had to have risk and they had to be on swing trades.*
>
> *So I pulled the business from Solo And I'm sure, very soon thereafter, John [Doscas] and Sander [Gerber] did the same thing."*
>
> (Hanamirian Decl.; Exhibit "A", Summers Deposition Vol. I., September 9, 2021; pp 43:2-21).

The Acorn Defendants concluded that Sanjay Shah and Solo Capital were perhaps not appropriate parties with whom to conduct trades. Instead, the Acorn Defendants discovered that one of the oldest brokerage houses in the World was performing cum-ex trading in Denmark and reasonably relied on that institution's history and regulatory bodies for the validity of the underlying transactions. This was not a multi-plan, single trustee plan created for the purpose of

engaging in Denmark cum-ex transactions. Rather, this was a well-established single participant pension plan(s) that had a 20-year history and was invested in many markets.

Plaintiff next asserts the Acorn Defendants should remain within this MDL because "at least 13 other current defendant pension plans in the MDL also used ED&F as custodian for their refund claims to SKAT". That commonality only matters if the claims relative to reliance on a third party are identical. These are fraud cases. The Plaintiff brought the claims in that manner to allow this Court to entertain jurisdiction, so now, they own it. Fraud claims, by their very nature, are unique and the Acorn Defendants cannot rely upon other defendants to carry their water in that environment. That is the very reason that characterizing these claims in the context of an MDL was a square peg in a round hole. The MDL designation was useful for purposes of discovery and addressing these claims was monumental at the outset, but fundamental fairness dictates that each defendant with claims against them sounding in fraud in this manner must be able to present their own defense.

### III.   Remand is warranted.

The Acorn Defendants will agree to forgo any additional discovery on remand and just try the case.

**CONCLUSION**

The claims against the Acorn Defendants should be remanded from this MDL to the transferor court for all the foregoing reasons.

Dated: February  5 , 2025

/s/ John M. Hanamirian

John M. Hanamirian
HANAMIRIAN LAW FIRM, P.C.
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – o
(856) 793-9121 – f
jmh@hanamirian.com
*Counsel for Defendants Acorn Capital Corporation Employee Profit Sharing Plan, Acorn Capital Strategies LLC Employee Profit Sharing Plan and Gregory Summers*

# CERTIFICATE OF SERVICE

I, John M. Hanamirian, Esq., hereby certify that on this, the 5th day of February 2025, copies of (a) Reply Memorandum of Law in Further Support of the Motion To Remand To The Transferor Court; (b) Declaration of John M. Hanamirian with accompanying Exhibit(s); and (c) this Certificate of Service, were electronically served upon all parties of record through the Court's CM/ECF filing system.

/s/ John M. Hanamirian
John M. Hanamirian

Dated: February 5, 2025