EXHIBIT A

P35RSKAc

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    IN RE CUSTOMS AND TAX
      ADMINISTRATION OF THE KINGDOM
 4    OF DENMARK
      (SKATTEFORVALTNINGEN) TAX
 5    REFUND SCHEME LITIGATION
                                            18 MD 2865 (LAK)
 6    ------------------------------x
                                            Conference
 7
                                            New York, N.Y.
 8                                          March 5, 2025
                                            2:15 p.m.
 9    Before:

10                        HON. LEWIS A. KAPLAN,

11                                          District Judge

12                             APPEARANCES

13    HUGHES HUBBARD & REED LLP
           Attorneys for Plaintiff SKAT
14    BY:  MARC A. WEINSTEIN
           WILLIAM MAGUIRE
15         NEIL OXFORD

16    KAPLAN RICE LLP
           Attorneys for David Zelman, Ed Miller Ron Altbach, Perry
17    Lerner, Robin Jones, Joe Herman and the associated plans
      BY:  MICHELLE A. RICE
18
      POULOS LOPICCOLO PC
19         Attorneys for Doston Bradley, Roger Lehman, Bradley
      Crescenzo and the associated plans
20    BY:  JOSEPH LOPICCOLO

21    HANAMIRIAN LAW FIRM, PA
           Attorneys for the Acorn plans, Gregory Summers and
22    associated plans
      BY:  JOHN N. HANAMIRIAN
23
      KOSTELANETZ LLP
24         Attorneys for John Doscas, David Freelove and associated
      plans
25    BY:  ERIC SMITH
```

P35RSKAc

1                          APPEARANCES (Continued)

2    BINDER & SCHWARTZ LLP
          Attorneys for MCML Limited f/k/a ED&F Man Capital Markets,
3    Limited
     BY:  NEIL STEPHEN BINDER

4

5    K&L GATES LLP
          Attorneys for Acer Investment Group, LLC and SDNY
6    Defendants
     BY:  JOHN C. BLESSINGTON

7

8    GUSRAE KAPLAN
          Attorneys for Sheldon Goldstein and associated plans
9    BY:  MARTIN H. KAPLAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P35RSKAc

1          THE DEPUTY CLERK:  Please be seated.  Mr. Toll

2   represents George Hofmeister and related entities, JSH Farms

3   LLC and a few other pension plans.

4          THE COURT:  Okay.  I had given Mr. Toll permission to

5   attend by electronic media.  Unfortunately, he's not getting

6   the sound transmission from the courtroom, and I'm afraid we're

7   going to have to proceed without him in that regard.  I guess

8   it's just one of the risks of not showing up.

9          Okay.  So the question is where are we going from

10  here, folks, and I had indicated some tentative thoughts in the

11  order.  I don't want Mr. Lehman and the Crescenzo brothers to

12  feel left out.  They are on my radar.  So I welcome any

13  comments from all of you about where we should go next.  But

14  I'm eager to wrap up at least all the Southern District cases

15  in a relatively swift but appropriate period of time.

16         Who wants to take a whack at it first?

17         Mr. Weinstein?

18         MR. WEINSTEIN:  Judge, I can just note for plaintiff

19  that we don't object to the groupings as your Honor has laid

20  out, or suggested at least, in the order.

21         THE COURT:  And where would you put the Lehman and

22  Crescenzo cases?  Would you put them in the second trial or in

23  the EDF slot?

24         MR. WEINSTEIN:  No, in the second trial with

25  Solo-related pension plans.

P35RSKAc

1          THE COURT:  Does anybody wish to be heard on that

2     issue on the defense side?

3          MR. LOPICCOLO:  Your Honor, Joseph LoPiccolo, Poulos

4     LoPiccolo PC.  I am here for Roger Lehman and Bradley

5     Crescenzo.

6          THE COURT:  I'm sorry.  I can't make out what you're

7     saying.  Maybe go over to the lectern.

8          MR. LOPICCOLO:  Joseph LoPiccolo, Poulos LoPiccolo.

9          THE COURT:  This must be generational.  It happens

10    when my daughter speaks.  I can't listen as fast as she can

11    talk.

12         MR. LOPICCOLO:  Joseph LoPiccolo, Poulos LoPiccolo PC,

13    for Roger Lehman --

14         THE DEPUTY CLERK:  Try again, please.

15         MR. LOPICCOLO:  Joseph LoPiccolo --

16         THE COURT:  I know who you are.  Your fame precedes

17    you.

18         MR. LOPICCOLO:  -- for Roger Lehman --

19         THE COURT:  I'm sorry.  You represent Roger Lehman?

20    So you represent Mr. Lehman and Mr. Bradley Crescenzo.

21         MR. LOPICCOLO:  -- and Bradley Crescenzo and the

22    associated plans, and I understand from your Honor's suggestion

23    that you envision trial two being those defendants that were

24    part of the trial one group but didn't end up being tried in

25    the first trial plus the Roger Lehman group.

P35RSKAc

1          THE COURT:  Yes.  It would wrap up, I believe,

2     everybody for whom Solo acted as a custodian.  Is that right,

3     not right, Mr. Weinstein?

4          MR. WEINSTEIN:  It wouldn't quite do that.  There

5     would still be another one of Mr. LoPiccolo's clients, Doston

6     Bradley.

7          THE COURT:  Doston Bradley.

8          MR. WEINSTEIN:  Although, I'm sorry --

9          THE COURT:  Why would it leave that?  Isn't he one of

10    the Lehman folks?  It's very hard to keep everybody straight

11    with all these parties.

12         MR. WEINSTEIN:  Well, without getting into too much

13    detail, for each of those folks, and I think specifically with

14    respect to Mr. Bradley, we've had some extended discussions

15    with Mr. LoPiccolo and optimistic that we wouldn't get to a

16    trial for Mr. Bradley.

17         THE COURT:  What about the others of his clients?

18         MR. WEINSTEIN:  We have had some discussions.  We're

19    not quite as far along.  I would say, your Honor, with respect

20    to all of the Solo-related defendants, we're in that posture.

21    Ultimately, I don't know that we're going to be at a trial for

22    any of them.

23         THE COURT:  Okay.  Let me get back to Mr. LoPiccolo.

24    Thank you.

25         MR. LOPICCOLO:  Your Honor, I was going off of what

P35RSKAc

1    Mr. Weinstein just represented to you.  That was part of my

2    presentation today would be, you know, we would just ask that

3    before proceeding into trial two and everything that comes with

4    it, based on some discussions that we've had and with

5    Mr. Weinstein and his team regarding resolving the cases.  And

6    we've worked --

7              THE COURT:  Resolving the what?

8              MR. LOPICCOLO:  Resolving the cases of Mr. Bradley and

9    the others.  We've actually worked extensively over the past

10   year.  Although, there was a pause because of trial one——to

11   come up with a structure that would not only work with some of

12   Mr. Bradley's cases, but I believe the other cases.  And based

13   on settlements that we've entered into for my other clients,

14   which I'll categorize as not as complicated because the numbers

15   aren't as big and there aren't as many cases.  We have various

16   structures that we've used and that we plan to use going

17   forward that I think, if SKAT is willing, would really

18   facilitate a settlement of many of the cases.

19             And there is varying degrees of my clients' financial

20   abilities that are left.  You have Mr. Lehman who, despite the

21   numbers that he is being sued for, can't withstand -- finance a

22   trial and have money left over for potentially any sort of

23   judgment against him.  So based on that, we've come up with

24   structures for different situations.  And I think we're at a

25   point where if we're just given a little bit of time, and based

P35RSKAc

1    on my client's financial situation, it would help if we had

2    just a pause where SKAT and I could really concentrate on

3    working on resolving these cases.  Because we have done quite a

4    bit of work over the past year in coming up, like I said, with

5    a structure or parameter that would work with the different

6    situations.

7           THE COURT:  Well, of course, we've had a very long

8    time.  We're in year six or seven of this MDL.  Now, I realize

9    obviously that in light of the verdict in the last case, and

10   indeed even independent of the verdict, in light of the work

11   and the understanding that everybody now has of the intricacies

12   of what went on, we're a lot closer to being able to get arms

13   around it and bring it to a resolution.  And I'm mindful that

14   the numbers here initially look very large and there are

15   possibly ability-to-pay issues.

16          That was true in the case where, notwithstanding some

17   efforts to try to resolve it, that went to trial.  And

18   notwithstanding all the impetus to resolve that, it just didn't

19   happen.  Even with the jury out, it didn't happen.  So I'm a

20   little bit reluctant to give kind of an open end, but I

21   certainly take into account what you've said.  And I certainly,

22   from all points of view, would regard a settlement that

23   everybody was equally unhappy with for different reasons as

24   better than trying what I'll call the Solo scheme for a second

25   time, even from my own narrow point of view.

P35RSKAc

1          Okay.  I understand where you're coming from,

2   Mr. LoPiccolo, and I'm not unsympathetic.  Have you said what

3   you wanted to tell me?

4          MR. LOPICCOLO:  I think that's it.  Just with respect

5   to, you know, Bradley Crescenzo, he's in no position whatsoever

6   to withstand any sort of financial burden of a trial.  Even

7   with respect to paying for my time today.  I don't represent

8   Gavin Crescenzo anymore, but he is in the same position.  If we

9   were to go forward, or if SKAT was to push forward with the

10  trial of the Lehman and Crescenzo group, based on their

11  financial position, I just don't know what would happen.

12         THE COURT:  Well, you know, there are always default

13  judgments.

14         Okay.  Thank you.  Mr. Weinstein?

15         MR. WEINSTEIN:  May I propose this, your Honor:

16  Mindful of the fact that the case has been pending for quite

17  some time --

18         THE COURT:  I'm sorry.

19         MR. WEINSTEIN:  Mindful of the fact that the case has

20  been pending for a long time, and we would all like to move

21  forward.  However, both in light of what Mr. LoPiccolo has said

22  and what I've heard at least from some others, I would propose

23  the following, which is to give all parties three months to

24  work on settlement, to the extent settlement can happen.  Of

25  course, it could always happen after that, but at least to

P35RSKAc

1    focus on getting settlements done, if they are settlements

2    available to be done, and coming back in three months, which

3    three months is a long period of time.  On the other hand,

4    relatively it gives us time because there's a lot of

5    information to go through with respect to different defendants

6    with respect to financial information that they have to collect

7    that we have to review.

8            Typically I would say let's push forward with a

9    schedule at the same time, but it will cause various parties to

10   start having to prepare briefs and other pretrial things.

11   Perhaps their time and their money is better spent not doing

12   that and seeing if they can resolve the case.  Then we could

13   come back, you know, mid-June.  We would inform the Court ahead

14   of time who we think would still go to trial, and offer the

15   Court proposals with respect to how to proceed with those and

16   when.

17           THE COURT:  Well, I understand where you're coming

18   from.  Let me go to some related questions that seem to me

19   likely to inform what I ought to do about it.

20           There is one case that was for most purposes already

21   tried.  I think it's 19-Civ.-10713, where there were a whole

22   bunch of pension plans—13, I think—that were excluded from

23   the group that were tried.  I believe that's accurate, right?

24           MR. WEINSTEIN:  It should be 26.

25           THE COURT:  Sorry?

P35RSKAc

1      MR. WEINSTEIN:  It should be 26 plans.

2      THE COURT:  I'll tell you exactly which case it was

3   and not try to do it from memory.  I gave you the correct

4   number, and the plans were 2321 Capital Pension Plan and then

5   there's a list.  I haven't tried to count the list, but I

6   thought it was 13.  Maybe I miscounted.  It's 13.  It's in ECF,

7   document 954 on page 16.

8      MS. RICE:  Your Honor, Michelle Rice.  I have 26

9   plans, and I'm at docket No. 954, pages 9 through 16.  I've

10  been referred to as "the friends and family plans," and I

11  believe that's what you're referring to.

12     THE COURT:  I'm not referring to the friends and

13  family plans because that's in a different bucket on my list.

14     MS. RICE:  Okay.

15     THE COURT:  Those I understand because most of the

16  friends and family actually made appearances at the trial, and

17  they figured in the proof.  But what's this group of 13 in that

18  one case, Mr. Weinstein?

19     MR. WEINSTEIN:  I apologize.  I don't have that docket

20  list in front of me, but if 2321 is one of those...

21     THE COURT:  That's the first named one on that list.

22     MR. WEINSTEIN:  Yes.  I think those are what we called

23  the Argre-era plans that were in that group, friends and

24  family.  So a different group that Ms. Rice's clients that were

25  carved out of a settlement with that group.

P35RSKAc

1          THE COURT:  Got it.  Okay.  That explains what they

2     are.

3          Now, in light of trial number one and the outcome in

4     trial number one, would I be wrong in thinking that these are

5     the most likely to be resolved quickly?

6          MR. WEINSTEIN:  That makes logical sense.  To be

7     honest, I can't recall who represents the plans themselves.

8     You would think after trial, I would remember who was the

9     beneficiary of each.  I have to look back at that.

10          THE COURT:  Well, it was probably Messrs. Markowitz

11     and van Merkensteijn, no?

12          MR. WEINSTEIN:  No.  I think my recollection is that

13     if they were the beneficiaries, then the plans would have

14     been -- we would have had a verdict on the plans.  So it would

15     be plans with which they were in partnership but they were not

16     the beneficiary of the plans back in the Argre-era group.

17          THE COURT:  Well, we did try Bernina and RJM Capital

18     Pension Plan Trust in the consolidated case.

19          MR. WEINSTEIN:  Correct, because they were the

20     partners with the plans.

21          THE COURT:  Okay.

22          MR. WEINSTEIN:  Well, I go back to what your Honor

23     said makes sense because we, in effect, had jury findings with

24     respect to those plans.  I just don't recall at the moment.

25          THE COURT:  All right.  What about the rest of the

P35RSKAc

1    friends and family, not the Argre group but the rest?  I would

2    have thought that there's nothing terribly complicated about

3    resolving those, right?

4        MR. WEINSTEIN:  I don't think on the merits, although

5    I'll let Ms. Rice speak on behalf of those folks.  And we have

6    already had some discussions.  So, again, I think the timing --

7    the reason when your Honor says it could happen expeditiously,

8    it should, although most of the issues on these settlements are

9    ability to pay and then coming up with both, you know, back and

10   forth on the transparency on that, and then coming up with some

11   structure that works.  So it does take some time.

12       I know Ms. Rice, she represents the 26 plans, and I

13   think it's five or six individuals.  So we've already talked

14   since trial.  I think she's putting together information, and

15   it will just take a bit of time to work through that.

16       THE COURT:  All right.  Then let me go on.

17       I am going to hand over orders referring, for

18   settlement purposes, groups of cases to Magistrate Judge

19   Lehrburger.  What's left to do with respect to what we're now

20   looking at as the trial two bundle?  We don't have a pretrial

21   order as to any of that.  Does anybody foresee any substantial

22   *in limine* or *Daubert* practice to try what I'm now thinking of

23   as trial number two?

24       MR. WEINSTEIN:  I think from SKAT's perspective, most

25   issues were raised in trial one, and so we would expect similar

P35RSKAc

1    results with respect to motions.  So I think it's more a matter

2    of whether any defendants have or believe they have something

3    different to say on some of those issues.

4            THE COURT:  And what about defendants?

5            MR. LOPICCOLO:  Joseph LoPiccolo, your Honor.  Based

6    on my review of the docket——I wasn't there in trial one, but my

7    review of the docket——I would think the results on the *Daubert*

8    motions, to the extent my clients wanted to put up an expert on

9    the same exact issue to opine the same thing, I would admit

10   that the decision of trial one would probably apply to trial

11   two and vice versa to the extent -- you know, any sort of issue

12   related to *Daubert* experts or particular specific evidence,

13   documents.

14           I know there were some rulings on contributory

15   negligence, and some documents were allowed to be used and

16   others weren't.  So I would think that -- the rulings on those

17   particular documents to be used for the exact same reason, I

18   would think that I would be able to come to an agreement and

19   stip to a lot of those issues.

20           THE COURT:  Do any of the defendants in a trial two

21   anticipate new experts?  Putting aside the question of whether

22   there's still time under the scheduling orders to date, but

23   just putting it aside for the moment.

24           MR. LOPICCOLO:  At this time, no, for my defendants.

25           THE COURT:  Okay.  I do anticipate issuing an order to

P35RSKAc

1    show cause in all cases as to why specific, identifiable

2    rulings, that were made in the run-up to trial, one should not

3    be accepted as binding in all the cases.  I haven't come to a

4    final view as to what those will be, but obviously the revenue

5    ruling -- revenue rule is one.  There are some issues relating

6    to statute of limitations and unjust enrichment in one

7    circumstance.  I will put that out, and we'll see what anybody

8    has to say about it.  I've done this in other MDLs, as have

9    other MDL judges, and it's usually not controversial but I'm

10    going to give everybody a chance to pitch in on it.

11          I'm not going to bind you now, but I just want to get

12    a heads up.  Does anybody intend to contest the falsity of the

13    representations made to SKAT as to whether there were actual

14    share ownership situations and whether the statements about

15    having had tax withheld and being entitled to reclaim them were

16    true or not?  Anybody going to contest that?  It was conceded

17    in trial one, but I'd like to have a head's up if you are going

18    to make that argument here.  Was I not clear enough?

19          MR. KAPLAN:  I'm sorry, your Honor, I didn't follow

20    you.

21          THE COURT:  That's okay.  In trial number one, I can

22    say to my own surprise, but I'm not going to speak for anybody

23    else, the defense conceded on opening that none of their

24    clients ever, in fact, bought or sold any shares; that the

25    representations that were made to SKAT, that they had owned the

P35RSKAc

1   shares on the X dividend dates, were inaccurate and that they

2   never had had any withholding tax held back, and therefore the

3   statement to the contrary were inaccurate.  Anybody going to

4   contest those positions?

5           MR. BLESSINGTON:  I'll walk over to the podium, your

6   Honor.

7           THE COURT:  Yes.  Thank you.

8           MR. BLESSINGTON:  Good afternoon, your Honor.  John

9   Blessington on behalf of Acer group or Acer Investment Group

10  Limited.  Your Honor, we're in the ED&F tranche, if you will,

11  the third, and we will be contesting that.

12          THE COURT:  As I remember, about half of the vouchers

13  provided by ED&F have been conceded to have been inaccurate.

14          MR. BLESSINGTON:  Correct.  I'll let Mr. Binder

15  address that, but yes, that is our position.  Just to be clear,

16  that came to light in the course of a trial in the UK after

17  this case was commenced.

18          THE COURT:  I understand, but you are not going to try

19  and relitigate that here, are you?

20          MR. BLESSINGTON:  The only issue is whether or not our

21  client knew.  That's a different issue.  Whether the plans, in

22  our case Acer, was the investment adviser for those plans.  And

23  just to be clear, I'm only talking about the Goldstein Acer

24  case.

25          THE COURT:  Yes.

P35RSKAc

1    MR. BLESSINGTON:  Because there's another case

2  involving --

3    THE COURT:  That would be trial three.

4    MR. BLESSINGTON:  Correct.  But there's Mr. Freelove

5  and Mr. Doscas, who also traded through ED&F.  No relation.

6  That's one of the issues we have.  And we don't have to do this

7  now, but we'd like to be heard on that issue as to whether or

8  not the ED&F cases should all be consolidated and tried as one.

9  But I don't want to go down that rabbit hole.

10    THE COURT:  I'm not going to put the ED&F cases in

11  with the second trial.

12    MR. BLESSINGTON:  Understood.

13    THE COURT:  There are only four or maybe five that

14  originated in the Southern District.  That's all I can try.

15  Because of the numbers alone, it's the lowest priority on my

16  list, but I appreciate your bringing it to my attention.

17    Okay.  Is SKAT going to raise, in any of these cases,

18  the assertion that was originally made that the representations

19  that they were qualified plans were not true?

20    MR. WEINSTEIN:  No.

21    THE COURT:  Okay.  Any idea from SKAT about how much

22  money is involved in trial number two—putting aside ability to

23  pay—and in trial number three?

24    MR. WEINSTEIN:  The answer is yes.

25    THE COURT:  You've got your roadmap almost ready.  I

P35RSKAc

1    can tell.

2          MR. WEINSTEIN:  So with respect to trial number two,

3    the cases that Roger Lehman is a defendant in, which covers him

4    and essentially Mr. Crescenzo and his brother, the damages

5    there are approximately $250 million in total.  And then with

6    respect to the friends and family that were associated with the

7    trial one defendants, I have them individually.  Let me just

8    add them up.  I'm estimating in the neighborhood of between

9    $160 to $170 million, so combined --

10          THE COURT:  $400 and something?

11          MR. WEINSTEIN:  Correct.

12          MR. LOPICCOLO:  Your Honor?

13          THE COURT:  Yes.

14          MR. WEINSTEIN:  Did your Honor ask for both trials?  I

15    think you did.

16          THE COURT:  Yes.

17          MR. WEINSTEIN:  In the trial that was proposed for the

18    ED&F cases, it's a total of approximately $15 to $20 million.

19    I should add, your Honor, just to make sure everything is clear

20    because you've asked about the Solo cases, in the proposed

21    trial three, there are some Solo reclaims.  And where those fit

22    in are, there's two cases in that grouping where John Doscas is

23    a defendant because there are two different plans at issue.

24    For one of those, there were both ED&F Man and Solo reclaims

25    submitted by the plan, and then for the other plan, it was just

P35RSKAc

1   Solo.  But because they're both associated with Mr. Doscas, we

2   thought it still made sense to put them in that group.

3           THE COURT:  Okay.  That's fine.

4           MR. LOPICCOLO:  Your Honor?

5           THE COURT:  Yes.

6           MR. LOPICCOLO:  Joseph LoPiccolo.

7           Maybe my math is off, but with respect to just the

8   SDNY cases where Roger Lehman is involved in, I have about half

9   that amount, which is $120 million.  Marc, you can let me know

10  if I'm off.

11          MR. WEINSTEIN:  No, it's a good point.  Now that he

12  says it, I'm looking at a Roger Lehman number that is not

13  distinguishing by jurisdiction.  So I don't have the number,

14  but I'll take Mr. LoPiccolo's estimation that it was $120.

15          MS. RICE:  Your Honor, if I could put a finer point on

16  the friends and family damages, I'm assuming since the number

17  is as large as it is, that it assumes a finding of fraud, and

18  it assumes the friends and family who received in net reclaims

19  about $2 million are being held accountable for the entire

20  fraud in that calculation.

21          THE COURT:  Yeah, understood.  I wouldn't be surprised

22  if you get some level of receptivity to that point in

23  discussions.

24          Okay.  Then there are two pending remand motions.

25  Does anybody want to say anything about them?

1        MR. HANAMIRIAN:  John Hanamirian, your Honor.  I have

2   both of those motions pending, but I'm in agreement or I would

3   like to go down the path Mr. Weinstein suggests of trying to

4   resolve these motions, and hold the motions in abeyance until

5   we get further down the path, if that's okay.

6        THE COURT:  Well, I certainly hear you.  Let me just

7   tell you that I'm not going to grant your remand motions now,

8   as you probably knew before you filed them.  My view of this,

9   in light of *Lexicon*, is that once I've done everything that I

10  can do to contribute as much as can be done in this forum to

11  the task of the transferor judges, these cases will go back,

12  and I don't think we're quite there yet.  I think the response

13  to the order to show cause I referred to will get us a good

14  part of the way there, and to whatever extent we can make

15  progress in a relatively modest period on resolving some of

16  these cases, even transferred cases, then if we still have

17  cases pending, they'll go back.  I have no choice about that,

18  and I'm not troubled by that.  It's perfectly fine.  Six years

19  has been enough for me, too.

20        If you don't think I've made it by the time, given

21  those considerations, I should have made it, I know I'll hear

22  from you, Mr. Hanamirian.  I do, and that's fine.

23        MR. HANAMIRIAN:  Thank you, your Honor.

24        THE COURT:  Okay.  Now, there was one other thing on

25  my mind about this.  Oh, yes.  And this doesn't affect most of

P35RSKAc

1    you, but for entirely extraneous reasons, I was reading a

2    relatively recent Supreme Court decision that contained the

3    answer to the question of whether we need a separate judgment

4    in every one of the cases, and the answer is way better yes

5    than no.  And the case is *Hall v. Hall*, and it's about two

6    sentences and it's fairly recent.  It had to do with whether

7    multi-district consolidation rendered what would have been a

8    final order if rendered in one of the consolidated cases was

9    non-final because it was an MDL, but they spoke precisely to

10   the separate judgment question and there it is.  So that's what

11   I'm going to do.  That's what I'm hoping I will get in addition

12   to whatever else I get.

13          I'm also happy to share with you that the English

14   translation of the name of one pension plan that I think is

15   behind us now in the trial means robber barons, but there it

16   is.

17          Okay.  Anything else anybody else wants to raise?

18   Thank you, folks.

19          (Adjourned)

20                              o0o

21

22

23

24

25