**K&L GATES**

March 3, 2026

John C Blessington
john.blessington@klgates.com

T +1 617 261 3108
F +1 617 261 3175

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:    In re Customs and Tax Administration of the Kingdom of Denmark
        (Skatteforvaltningen) Tax Refund Litigation, 18-md-2865 (LAK); Response to PTO
        65 (ECF No. 1936).**

Dear Judge Kaplan:

Pursuant to Pretrial Order No. 65, Defendants and Third-Party Plaintiffs Acer Investment Group LLC ("Acer"), DW Construction Inc. Retirement Plan, Kamco Investments Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates LLC 401K Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan, Newsong Fellowship Church 401k Plan, Stacey Kaminer, Darren Wittwer, Joan Schulman, David Schulman, Elaina Crema, as Personal Representative of the Estate of Robert V. Crema, and Alexander Jamie Mitchell, III (collectively, "Defendants"), and Third-Party Defendant MCML Limited f/k/a ED&F Man Capital Markets Limited ("ED&F") submit this response to show cause as to why the Trial One evidentiary rulings identified by Plaintiff Skatteforvaltningen ("SKAT") should not apply in the below cases that were transferred to this district, to which Defendants and ED&F are parties (the "Transferred Cases"):

| Case | Transferor Court Case Number |
|---|---|
| *SKAT v. DW Construction, Inc. Retirement Plan*, (18-cv-09797) | 2:18-cv-00452 (D. Utah) |
| *SKAT v. Kamco Investments Inc. Pension Plan*, (18-cv-09836) | 2:18-cv-00454 (D. Utah) |
| *SKAT v. Kamco LP Profit Sharing Pension Plan*, (18-cv-09837) | 2:18-cv-00455 (D. Utah) |
| *SKAT v. Linden Associates Defined Benefit Plan*, (18-CV-09838) | 2:18-cv-00456 (D. Utah) |
| *SKAT v. Moira Associates LLC 401K Plan*, (18-cv-09839) | 2:18-cv-00458 (D. Utah) |
| *SKAT v. Riverside Associates Defined Benefit Plan*, (18-cv-09840) | 2:18-cv-00460 (D. Utah) |
| *SKAT v. Am. Inv. Grp. of N.Y., L.P. Pension Plan*, (18-cv-09841) | 2:18-cv-00678 (D. Utah) |

| *SKAT v. Newsong Fellowship Church 401k Plan*, (18-cv-10100) | 5:18-cv-02459 (E.D. Pa.) |

As an initial matter, Defendants and ED&F respectfully submit that the Court should not consider the application of evidentiary rulings by this Court to the Transferred Cases until the conclusion of Trial Three.  Trial One and Trial Three rest on fundamentally different factual circumstances. For example, the Trial One defendants admitted that they owned no shares; the trading at issue in Trial One was a fiction, undertaken by a series of inter-related pension plans, all set up for the purpose of engaging in Danish dividend arbitrage trading.  In Trial Three, as in the Transferred Cases, the pension plan defendants did own shares, and the trading and reclaims at issue were undertaken by long-standing pension plans that existed for purposes other than dividend arbitrage trading.  If the Court wishes to apply its evidentiary rulings to the Transferred Cases, the rulings made in the context of Trial Three are more appropriate for consideration than those made in Trial One.  The Parties should be afforded another opportunity to address these issues after the Court concludes Trial Three.

Furthermore, consistent with the Court's comments at the January 5, 2026 hearing, Defendants and ED&F maintain that the judge or judges holding trial in the Transferred Cases should "under Rule 54 ha[ve] the ability, … to do whatever he thinks is right. The fact that these cases are as factually complex as they are, involve so much expert testimony, all of which I gather I have already passed on, suggests that just conceivably it would be more efficient for any Utah trial judge to at least have the benefit of what I have to say about it, and he can do what he wants or she." January 5, 2026 Tr., 16:5-14.

SKAT agrees that certain of the rulings it identified are not applicable to the Transferred Cases, and as set forth below, Defendants and ED&F take no position on those orders:

| Date | Cite | Defendants and ED&F's Position |
|---|---|---|
| August 5, 2024 | ECF 1116 | Not requested by SKAT to apply in the Transferred Case. Defendants and ED&F take no position on this ruling. |
| August 6, 2024 | ECF 1118 | Not requested by SKAT to apply in the Transferred Case. Defendants and ED&F take no position on this ruling. |
| August 9, 2024 | ECF 1119 | Not requested by SKAT to apply in the Transferred Case. Defendants and ED&F take no position on this ruling. |
| January 13, 2025 | ECF 1607; Tr. 419-428; 485-486 | Not requested by SKAT to apply in the Transferred Case. Defendants and ED&F take no position on this ruling. |

Defendants and ED&F do not oppose applying the below ruling to the Transferred Cases, which precluded evidence of Sanjay Shah's criminal conviction and sentence:

2

| Date | Cite | Defendants and ED&F's Position |
|---|---|---|
| January 10, 2025 | ECF 1567; Tr. 401 | No objection to applying in the Transferred Cases. |

With respect to the remaining evidentiary rulings identified by SKAT, Defendants and ED&F show cause as to why they should not apply in the Transferred Cases as follows:

**ECF 1195**

SKAT seeks to apply an order granting in part its Trial One motion *in limine*, which excluded, in whole or in part, the 2007 Jeppesen Memo, the Romer Problem Catalog, the 2016 National Audit Office Report, and five SIR Reports. This evidence paints a pointed picture, showing (a) that SKAT was well aware for years that it could not verify whether refund applicants in fact were the beneficial owners of the underlying shares, leaving SKAT vulnerable to the very thing that it now alleges happened: false claims from people not entitled to recover dividend withholdings, and that SKAT chose to do nothing about it, and (b) the specific kinds of claims at issue here – claims by American pension plans – were identified back in 2014 as the cause of a dramatic surge in refund claims, which the Danish government recognized as an obvious red flag requiring scrutiny but which SKAT again did nothing about.

Specifically, the 2007 Jeppesen Memo identified a "major control problem" with SKAT's dividend program and, after laying out the issue, recommended that SKAT's "dividend declaration forms" be "carefully reviewed to make it clear what our requirements are for ownership ... and proof of this in order to obtain a refund of dividend tax." Jeppesen Memorandum at 5-6. This memorandum demonstrates that SKAT knew about the risk of wrongful refund claims as far back as 2007. The Romer Problem Catalog is evidence of one attempt a SKAT employee made to waive the red flag and inform senior management that SKAT was not receiving particularized information about the identity of the ultimate foreign beneficial owner of shares. That fact is directly relevant to why SKAT was vulnerable to the fraud alleged here: had it been able to determine the foreign owner of shares in omnibus accounts at VP Securities, it could have conducted tracing to determine whether the reclaims here related to any such shares. Finally, the SIR and audit reports each identified serious deficiencies with SKAT's administration of the dividend program.

In the context of Trial One, where no shares were owned, this evidence was excluded. In the context of the Transferred Cases, where trades actually did take place and SKAT's claims boil down to issues of beneficial ownership and the financing used to purchase shares, questions of SKAT's diligence in examining reclaim requests is of considerable importance. Put another way – the Transferred Case Defendants' entitlement or non-entitlement to reclaims could have been determined by SKAT responding to the above evidence, and requiring Defendants to submit more or different documentation to support their reclaims. This conduct by SKAT would not have made

3

a difference in the context of Trial One, where the defendants represented that they owned shares they did not actually own.

The Court should not preclude Defendants and ED&F from presenting this evidence in the Transferred Cases at this stage.

**ECF 1208**

SKAT successfully moved *in limine* in Trial One to exclude evidence of remedial measures taken to improve its previously insufficient guidelines regarding proper dividend reclaim applications. SKAT now seeks to apply that ruling in the Transferred Cases.  SKAT's motion in limine relied heavily on Federal Rule of Evidence 407, but SKAT's guideline revisions are not the type of "remedial measures" contemplated by Rule 407, which is meant to encourage defendants to enact remedial safety measures after an accident by excluding evidence of those measures from a lawsuit. Here, SKAT did not implement the type of remedial safety measures that Rule 407 precludes—it revised tax reclaim application guidelines in response to a perceived vulnerability. Such revisions do not implicate the public safety rationales underlying Rule 407. The guideline revisions also support the conclusion that Defendants' conduct – filing reclaims on taxes withheld on shares the Defendants actually owned – was lawful.  This conduct contrasts with the Trial One defendants, who did not own the shares.

Furthermore, the date when SKAT amended its reclaim application is an essential piece of evidence the jury must consider when determining when SKAT knew or should have known about the events it alleges, an evidentiary purpose fully consistent with Rule 407.

The Court should not preclude Defendants and ED&F from presenting this evidence in the Transferred Cases at this stage.

**ECF 1233**

SKAT seeks to apply an order granting in part its motion *in limine* to exclude what it characterized as "advice of counsel" materials, including certain Danish legal opinions rendered by Hannes Snellman and Bech-Bruun.  That order has little pertinence to the Transferred Cases, among other things because the defendants in the Transferred Cases relied upon different legal opinions.  The Court's fact-specific order should not be extended to preclude the defendants in the Transferred Cases from introducing evidence of other legal opinions upon which they relied.  Moreover, Defendants will not seek to introduce the evidence to show Defendants' understanding of the strategy in which they engaged.  Rather, the opinions are probative of a lack of bad faith by Defendants in engaging in the trading and reclaims at issue.  Defendants were legitimate plans of legitimate businesses engaging in legitimate trades, and their decisions to undertake these trades were based in part on the assurance provide to them by the legal opinions they reviewed.  The Trial

Three defendants' response to that motion is not due until March 9, 2026, and the ruling on that motion is more relevant to the Transferred Cases than the Court's ruling on this issue in Trial One.

The Court should not preclude Defendants and ED&F from presenting this evidence in the Transferred Cases at this stage.

**ECF 1605; Tr. 162-163**

In Trial One, the Court overruled defendants' hearsay objection to the introduction of two tips from the English authorities, including Her Majesty's Revenue and Customs ("HMRC"). Defendants' motions focused on (1) hearsay and (2) the risk that the evidence may confuse the jury into thinking defendants committed tax fraud under US law. In overruling the Trial One defendants' objections, the Court noted that "I took it from both defense openings, is of course it was a scam." No such "scam" exists with respect to the Defendants in the Transferred Cases. This alone is reason not to not preclude Defendants and ED&F from arguing to exclude this evidence in the transferred cases. This Court has yet to address this evidence in a case (such as Trial Three) where the underlying trades actually occurred. The risk of spillover prejudice from the HMRC tip implying some wrongdoing or criminality on the Defendants' part is far great in the Transferred Cases, where as "scam" has not admittedly occurred.

The Court should not preclude Defendants and ED&F from arguing to exclude this evidence in the Transferred Cases at this stage.

**ECF 1373**

SKAT seeks to apply the Court's ruling declining to grant the Trial One defendants' motion to exclude evidence related to SKAT's theory that defendants misrepresented the tax-exempt status of their pension plans. In Trial One, SKAT abandoned this argument and has made no statement that it will proceed with inclusion of it in Trial Three. SKAT nevertheless continues to seek admission of this category of evidence in the Transferred Cases. SKAT cannot have its cake and eat it too—it cannot abandon an argument while seeking to admit evidence of relevance only to that abandoned argument. This approach is not only wasteful of the Court's and the jury's time and attention, but unduly prejudicial to the Defendants because the alleged conduct implies wrongdoing under U.S. tax law, when such wrongdoing is not the basis of SKAT's claims.

The Court should not apply the ruling allowing SKAT to introduce this evidence in the Transferred Cases at this stage.

**ECF 1567; Tr. 243-244**

SKAT seeks to apply the Court's Trial One ruling declining to admit the report from the national audit office of Denmark (the "Rigs Report"), which found that the reclaim review was wholly

inadequate.  The Court's ruling was made in the specific context of cross-examination and turned on the substance of the witness's testimony, which the Court concluded had not opened the door to admission of the Rigs Report.  The Court noted, however, that "You can in the fullness of time, if you are so minded, attempt to put that other opinion into evidence, but we're not going to backdoor it this way."  The Court thus did not categorically exclude the Rigs Report, as SKAT misleadingly suggests.  To the extent SKAT seeks to exclude all evidence of the Rigs Report from the Transferred Cases, such a ruling is not supported by this cited trial transcript.  Admission of the Rigs Report in the Transferred Cases is appropriate to show the lack of care with which SKAT handled reclaim applications, which goes directly to comparative fault

The Court should not preclude Defendants and ED&F from presenting this evidence in the Transferred Cases – which was not outright precluded in Trial One – at this stage.

**EFC 1567; Tr. 306**

SKAT seeks to apply this Court's ruling sustaining an objection to defense counsel's cross examination question that "there was, eventually, an official government board of inquiry founded, right?"  Again it is difficult to determine how SKAT seeks to apply the Court's oral ruling on a single question in the context of a cross examination in Trial One to the Transferred Cases.  Evidence regarding a board of inquiry is both relevant and admissible.  Its relevance lies in the fact that SKAT's own internal audit team as well as the government flagged issues in 2015.  This evidence is probative of the timeliness of SKAT's response and of SKAT's comparative fault.

The Court should not preclude Defendants and ED&F from presenting this evidence in the Transferred Cases at this stage.

**ECF 1615; Tr. 1260**

The Court ruled at trial that discussion with respect to Mr. Markowitz's disposition of funds should be saved "for the defense case, if at all," *see* ECF 1570, Tr. 1152:4-19, and the Court subsequently declined to reconsider that ruling.  *See* ECF 1615, Tr. 1260:19-23.  It is unclear how SKAT intends such a ruling could be applied in the Transferred Cases.  The best stage in the proceedings to admit certain evidence should be left to the sound discretion of the judge conducting the trials in the Transferred Cases.  This Court should not decide as a matter of timing when certain evidence should be allowed to be presented in other courts.

Turning to the substance of the proposed evidence, change in position by way of spending the money at issue is a defense to money had and received, unjust enrichment and payment by mistake as long as the payee has "nothing to show" for the spending.  *Sec. Settlement Corp. v. Jachera*, 772 F. Supp. 770, 774 (S.D.N.Y. 1991).  In the Transferred Cases, the evidence will show that Defendants have spent the money in good faith, which includes Acer's paying the legal fees.  Three

and five years transpired from when SKAT stopped processing reclaims and SKAT sued plan Defendants in the Transferred Cases.  Further, Defendants should be permitted to introduce evidence of what they did with the money they kept from the reclaims in that three and five year period.  This is particularly true when SKAT does not have clean hands and is contributorily at fault in the processing of these reclaims and the delay in asserting claims against the Defendants.

The Court should decline to apply this ruling to the Transferred Cases.

### ECF 1615; Tr. 1264-1269

In Trial One, this Court provisionally declined to grant Defendants' request to admit federal tax and financial filings, inviting the parties to brief the question "form by form, tax treaty clause by tax treaty clause." ECF 1615, Tr. 1268:21-1269:2.  It is again unclear how such a ruling could be applied to the Transferred Cases, but SKAT apparently seeks to apply the ruling to preclude all evidence of tax filings by and related to the Defendants.  Such broad application, particularly where exhibits for the Transferred Cases have yet to be identified and their admissibility has yet to be briefed, is inappropriate.  These filings go directly to the statute of limitations argument – that SKAT should have conducted an internal investigation in 2014 when the red flags arose – as well as the state of mind of the Defendants.

The Court should not preclude Defendants and ED&F from presenting this evidence in the Transferred Cases at this stage on the basis of this ruling.

### ECF 1619; Tr. 1581:19-1588:15

In Trial One, this Court declined to admit a diagram contained in Defense Exhibit 6048, offered to illustrate a legitimate trade structure with loop-like features. *See* ECF 1619, Tr. 1581:19-1588:15.  That decision turned on the specific substance of prior trial testimony and cannot reasonably be applied to the Transferred Cases, particularly without regard to what testimony may or may not be elicited in those cases.  The Court's decision to exclude that particular exhibit in that particular context should not be extended to the Transferred Cases, much less should it be expanded so as to exclude all evidence of legitimate trade structures that evince loop-like features.

### ECF 1587; Tr. 1823-1825, 1833

SKAT seeks to apply the Court's Trial One ruling sustaining SKAT's objection to evidence and testimony that the funds received from SKAT were spent on legal fees and living expenses.  That ruling was made only on the evidence proffered in Trial One.  The Court noted "[w]ere something else offered, that could be considered, but on the proffer that's been made, that's the ruling."  Trial in the Transferred Cases will involve different evidence, and Defendants should not be preemptively foreclosed from introducing that evidence.

7

Further, as set forth above, the evidence is directly relevant to the claims of unjust enrichment. Change in position by way of spending the money at issue is a defense to money had and received, unjust enrichment and payment by mistake as long as the payee has "nothing to show" for the spending. *Sec. Settlement Corp.*, 772 F. Supp. at 774. In the Transferred Cases, the evidence will show that Defendants have spent the money in good faith, which includes Acer's paying the legal fees, over the years since the Defendants' reclaims.

The Court should not preclude Defendants and ED&F from presenting this evidence in the Transferred Cases at this stage.

**ECF 1591; Tr. 1944-1946, 1946**

In Trial One, the Court dismissed Defendants' defenses of assumption of risk, failure to mitigate, laches, and revenue rule at the conclusion of trial. SKAT seeks to apply that order in the Transferred Cases now, before the Transferred Cases have been remanded or a trial date has even been set. The premature nature of SKAT's request is reason alone to deny it – unlike the Trial One Defendants, the Defendants in the Transferred Cases have had no opportunity to present evidence in support of their defenses.

Moving beyond that threshold issue, Defendants have pleaded the defenses of laches, contributory negligence. Laches is a proper defense in the Utah trial because (1) SKAT was negligent in not investigating the red flags it was on notice of sooner and (2) that lack of diligence prejudiced Acer. *Guardian Music Corp. v. James W. Guercio Enters., Inc.*, 459 F. Supp. 2d 216, 223-24 (S.D.N.Y. 2006), *aff'd*, 271 F. App'x 119 (2d Cir. 2008).

Likewise, the revenue rule defense remains applicable under this Court's prior ruling that such defense prohibits claims where foreign sovereigns seek enforcement of their tax rules in U.S. domestic courts. *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 310 (S.D.N.Y. 2019). The Court previously opined that the revenue rule does not apply to "garden variety commercial fraud" actions that simply involve a taxing authority, *id.* at 308–09, but the factual circumstances of the Transferred Cases, and the ownership issues raised in those cases, create a significant risk of "inconsistent tax law determinations" of exactly the sort that this Court has held could implicate the revenue rule. *See id.* at 319. Moreover, if there is no fraud liability, SKAT is left with only equitable claims to which the revenue rule certainly applies and bars jurisdiction. Defendants should be allowed to maintain these defenses at least through the close of evidence, at which time the courts in the Transferred Cases can decide whether sufficient evidence has been introduced to allow the jury to be charged as to those defenses.

Finally, Sven Nielsen's testimony will be presented in the Transferred Cases and was not present in Trial One. Mr. Nielsen was an employee of SKAT tasked with "processing dividend tax reclaims alone and with minimal (and no effective) supervision," "processed personally well over

90% of the dividend tax refund claims received by SKAT … during the relevant period," and "had in truth no real notion at all about [the] requirements [for entitlement to dividend withholding tax reclaims], nor needed one to do his job." *Skatteforvaltningen v. Solo Capital Partners LLP*, [2025] EWHC 2364 (Comm), (judgment of U.K. High Court of Justice, available at https://www.judiciary.uk/judgments/skatteforvaltningen-danish-customs-and-tax-administration-v-solo-capital-partners/), at ¶¶ 551–52. Such evidence bolsters these defenses and will be presented in Trial Three. The lack of such evidence in Trial One, and its forthcoming use in Trial Three, is more reason to delay deciding on the application of this ruling in the Transferred Cases.

**ECF 1893; ECF 1615; Tr. 1581-1588**

In Trial One and Trial Three, this Court denied Defendant's motion *in limine* seeking to exclude the expert testimony, report, and documents underlying the opinions of Plaintiff's expert Graham Wade. Mr. Wade remains wholly unqualified to testify as an expert, substantively and procedurally. Substantively, Mr. Wade's cum-ex testimony is outside his area of knowledge in that he has never executed a cum-ex transaction, never overseen one, nor been involved in one. Procedurally, Mr. Wade cannot testify about his proffered topics without an understanding of foreign law, which he lacks. And Mr. Wade's opinions are replete with improper legal conclusions and opinions about state of mind.

The Court should not preclude Defendants and ED&F from presenting this argument in the Transferred Cases, or preclude the judges in the courts handling those cases from managing trial of the Transferred Cases as they see fit.

For the forgoing reasons, Defendants and ED&F respectfully request that the Court decline to apply the above-discussed Trial One Rulings to the Transferred Cases.

Respectfully submitted,

*/s/ John C. Blessington*
John C. Blessington

9

*Counsel for Acer Investment Group, LLC,
DW Construction Inc. Retirement Plan,
Kamco Investments Inc. Pension Plan,
Kamco LP Profit Sharing Pension Plan,
Linden Associates Defined Benefit Plan,
Moira Associates LLC 401K Plan, Riverside
Associates Defined Benefit Plan, American
Investment Group of New York, L.P.
Pension Plan, Newsong Fellowship Church
401k Plan, Stacey Kaminer, Darren Wittwer,
Joan Schulman, David Schulman, Elaina
Crema, as Personal Representative of the
Estate of Robert V. Crema, and Alexander
Jamie Mitchell, III*


cc:      All counsels of record (*VIA ECF*)