

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

March 10, 2026

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *In re Customs and Tax Administration of the Kingdom of Denmark
          (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865 (LAK)

Dear Judge Kaplan:

    We write on behalf of plaintiff Skatteforvaltningen ("SKAT") in response to the Acer
defendants and third-party defendant ED&F's response (ECF No. 1975) to the Court's order to
show cause in Pretrial Order No. 65 why certain evidentiary and other rulings SKAT previously
identified "should not be applied in actions originally filed in Utah and Pennsylvania."  (ECF
No. 1936.)[1]

    As an initial matter, SKAT agrees with the Acer defendants and ED&F that rulings the
Court makes in advance of and during the upcoming trial three should likewise apply to the
actions against the Acer defendants originally filed in Utah and Pennsylvania, to the extent they
are relevant.  (ECF No. 1975 at 2.)  But that is no reason to delay determining which of the
Court's previous rulings SKAT identified also should apply.

---

1.  The "Acer defendants" are Acer Investment Group LLC, DW Construction Inc. Retirement Plan, Kamco
    Investments Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan,
    Moira Associates LLC 401K Plan, Riverside Associates Defined Benefit Plan, American Investment Group of
    New York, L.P. Pension Plan, Newsong Fellowship Church 401k Plan, Stacey Kaminer, Darren Wittwer, Joan
    Schulman, David Schulman, Elaina Crema, as Personal Representative of the Estate of Robert V. Crema, and
    Alexander Jamie Mitchell, III.

**ECF No. 1195**

The evidence of SKAT's supposed negligence the Court excluded from trial one should be excluded from any trial in the remanded actions for the same reasons. All or most of the issues identified in the Jeppesen Memo, Rømer Problem Catalog, the 2016 National Audit Office Report, and five SIR (internal audit) reports have nothing to do with the Acer defendants' fraud. There is no doubt the transferee courts will benefit from the "substantial time and resources" the Court already devoted to deciding the admissibility of these in some cases voluminous documents, rather than the parties "litigating anew" these same issues. (Pretrial Order No. 65 at 2.)

The Acer defendants and ED&F argue that the Court's previous rulings should not apply because their fraud was distinct from the trial one defendants' fraud. (ECF No. 1975 at 3-4.) But that is not the case in any relevant respect. The Court's rulings did not turn on the trial one defendants' admission at the start of trial that there were never any shares in the Solo scheme— the Court issued its rulings pretrial before that admission was made. And the same as with respect to the trial one defendants, SKAT alleges that the Acer defendants' refund claims were fraudulent because they claimed to own have owned shares and received dividends that they never owned or received. Acer and ED&F have admitted that was the case for many of the refund claims because ED&F's Dubai affiliate sold the plans shares it never had or acquired, and SKAT contends the rest of the plans' cum-ex trades were the same, except the seller was a third party instead of ED&F's Dubai affiliate. And, in any event, any shares or dividends belonged to ED&F, not the plans, under the terms of ED&F's standard contracts.

Thus, the 2007 Jeppesen Memo, which "pertained to the potential for both lenders and borrowers of shares to claim withholding refunds 'based on the same underlying shares,'" is no more relevant to the Utah and Pennsylvania cases than it was to the trial one cases. (ECF No. 1195 at 2-3.) SKAT does not claim that the Acer defendants' fraud "involved refund claims based on borrowed shares, nor do the defendants claim that they obtained the shares by borrowing through a stock loan." (*Id.* at 2 (internal quotation omitted).) And "[e]ven if the 2007 Jeppesen Memo were to have some relevance, a dubious proposition, its probative value would be outweighed substantially by its potential for confusing the jury." (*Id.*)

Likewise, the 2006 SIR Report is "irrelevant" and "in any case," would "pose an unjustifiable risk of confusing the jury." (*Id.* at 3.) "The issues it identified with SKAT's processing of refund claims—which had little if anything in common with those that made SKAT vulnerable to the fraud alleged here—were resolved before the defendants started submitting fraudulent tax refund claims." (*Id.* (internal quotation omitted).)

And, with the "limited exception" the Court noted, "the 2010, 2014, and 2015 Reports and Rømer's Problem Catalog similarly would lack relevance" to the Utah and Pennsylvania actions. (*Id.*) SKAT's "difficulty verifying the validity of claims of ownership of shares held through omnibus accounts" "had nothing to do with defendants' alleged fraud." (*Id.* at 3.) Even if the Acer defendants' held shares through omnibus accounts at VP Securities, SKAT still would have had no way of knowing that ED&F falsely recorded any shares as belonging to the plans, instead of itself, or that the payments ED&F credited to the plans' accounts were not real

dividends, from which tax was withheld. And "[t]o the extent, if any, that this evidence would have any relevance," that is "substantially outweighed by the risk of confusion." (*Id.* at 3-4.)

Finally, the 2013 SIR Report "pertains only to SKAT's knowledge that it was vulnerable to fraudulent tax refund claims filed through SKAT's 'bank' or 'spreadsheet scheme.'" (*Id.* at 4.) Thus, the report has "no relevance to defendants' allegedly fraudulent claims, which were filed directly with SKAT." (*Id.*) And the 2016 National Audit Report should be excluded as irrelevant or unfairly prejudicial and confusing, except to the extent the Court allowed its use in its motion *in limine* ruling or at trial. (*Id.* at 4-5.)

## ECF No. 1208

The Court held, in the context of trial one, that evidence that in 2016, SKAT updated its guidelines for claiming refunds of dividend withholding tax is inadmissible under Federal Rule of Evidence 407. (ECF No. 1208.) The Acer defendants and ED&F offer no good reason this ruling should not apply equally to the Utah and Pennsylvania actions. Instead, they seek to relitigate the Court's decision. (ECF No. 1975 at 4.) For instance, they argue that "SKAT's guideline revisions are not the type of 'remedial measures' contemplated by Rule 407." (*Id.*) But, as the Court held already, the "admission of SKAT's revisions to the refund claim guidelines would punish it for taking corrective measures after it discovered potential deficiencies in its tax administration, a result at odds with Rule 407's primary purpose." (ECF No. 1208 at 4.) They argue that "[t]he guideline revisions . . . support the conclusion that Defendants' conduct—filing reclaims on taxes withheld on shares the Defendants actually owned—was lawful." (ECF No. 1975 at 4.) But SKAT does not dispute that is lawful. Rather, SKAT disputes that is what the defendants did. And "[i]t is unclear how guidelines promulgated subsequent to defendants' allegedly fraudulent conduct could be relevant to their states of mind when engaging in that conduct." (ECF No. 1208 at 5.) Nor does SKAT dispute "that it was aware as early as 2016 that it had been a victim of the type of fraud it alleged defendants perpetrated." (*Id.* at 6.) Thus, "the date when SKAT amended its reclaim applications is" not, as defendants and ED&F argue, "an essential piece of evidence the jury must consider when determining when SKAT knew or should have known about the events it alleges." (ECF No. 1975 at 4.)

## ECF No. 1233

While it still contends that the Court's trial one *in limine* ruling on the admissibility of evidence of attorney involvement should apply in all remanded cases, where relevant, SKAT agrees with the Acer defendants and ED&F that the Court's ruling on SKAT's motion to exclude from trial three the Hannes Snellman opinion on which Acer's principal Stacey Kaminer claims to have relied and related evidence, and any rulings during trial three on those issues, will be more pertinent to the Utah and Pennsylvania cases against the Acer defendants. (ECF No. 1975 at 4-5.)

## ECF No. 1605; Tr. 162-63

The tips that SKAT received in August 2015 from the English tax authorities alerting it to Solo's fraud are not inadmissible hearsay because, as SKAT explained at trial one, it does not offer them for the truth of any statement contained therein. (Trial One Tr. 163:1-7.) Rather, the

purpose of the evidence is to demonstrate that SKAT acted quickly after receiving the tips to halt payments of dividend withholding tax refund claims.  Further, there is much less risk of "spillover prejudice" in the Utah and Pennsylvania cases than there was at trial one, in which the Court rejected a similar Rule 403 objection.  (ECF No. 1975 at 5.)  The tips SKAT received focused on Solo's fraudulent scheme, in which the Acer defendants were not involved, not ED&F's scheme.

## ECF No. 1373

Just before trial one, the defendants moved to exclude evidence that they recruited friends and family to establish multiple pension plans for the purpose of participating in the scheme.  The Court denied that motion because such evidence was still relevant to the alleged fraud, even though SKAT is no longer pursuing its claims that the refund claims misrepresented the plans' tax-exempt status.  (ECF No. 1373.)  The same is true with respect to the Utah and Pennsylvania cases.  To the extent the Acer defendants established pension plans for the purpose of the scheme, such evidence is relevant to showing their participation in it.

## ECF No. 1567; Tr. 243-244

As set forth above, SKAT contends that the Court's *in limine* and trial rulings with respect to the admissibility of the 2016 National Audit Office Report should apply in all remanded cases, including the Utah and Pennsylvania cases, *i.e.*, only the parts of it that were admitted at trial one should be admitted in the remanded cases.  In the cited trial ruling, the Court ruled that the report was not proper impeachment of SKAT's witness Christian Ekstrand's testimony about SKAT's processing of dividend withholding tax refund claims at the time of the fraud.  (Trial One Tr. 244:3-24.)  To the extent Mr. Ekstrand offers the same testimony in any trial in the Utah and Pennsylvania cases, the same ruling should apply.

## ECF No. 1567; Tr. 306

That the Danish government established "an official government board of inquiry" is irrelevant.  Thus, the Court sustained SKAT's objection to the trial one defendants' question asking Mr. Ekstrand if that was the case.  (Trial One. Tr. 306:4-11.)  The Acer defendants and ED&F contend that "[i]ts relevance lies in the fact that SKAT's own internal audit team as well as the government flagged issues in 2015." (ECF No. 1975 at 6.)  But SKAT does not dispute that the internal auditors', *i.e.*, SIR's, 2015 report should be admitted at any trial in the remanded cases to the same extent it was at trial one.

## ECF No. 1615; Tr. 1260 and ECF No. 1587; Tr. 1823-25, 1833

At trial one, the Court first deferred to the defense case, if at all, defendants' proffered testimony that they spent SKAT's money on living expenses and the costs of defending the lawsuits and ultimately "rule[d] as a matter of law neither is appropriate evidence."  (Trial One Tr. 1260:19-23, 1833:20-1834:1.)  The result should be the same in the Utah and Pennsylvania

actions because the Acer defendants cannot establish a sufficient factual predicate for a change of position defense to SKAT's restitution claims.

Under the "mistake of fact doctrine," "money paid under a mistake of fact may be recovered back . . . unless the payment has caused such a change in position of the other party that it would be unjust to require him to refund." *Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 366-67 (1991) (internal quotation omitted).[2] But "detrimental reliance is a requisite factor" for the defense to apply. *Id.* at 366. Thus, as the case on which defendants and ED&F rely explains, "[a]lthough a payee may have spent money mistakenly delivered, she has not changed [her] position if she has used the money to pay living or business expenses, or even to make gifts, unless such expenses were incurred or gifts made because of the receipt of the mistaken payment." *Sec. Settlement Corp. v. Jachera*, 772 F. Supp. 770, 774 (S.D.N.Y. 1991) (internal quotation omitted).

Nor is evidence that Acer spent SKAT's money on "legal fees" to defend these lawsuits sufficient to support a change of position defense. (ECF No. 1975 at 6.) For one thing, Acer was on notice of SKAT's claims to the money at the latest by spring 2018, when SKAT sued Acer's principal Ms. Kaminer and others, *i.e.*, before Acer spent any money on legal fees. *See Newbro v. Freed*, 409 F. Supp. 2d 386, 399 (S.D.N.Y. 2006), *aff'd* No. 06-1722-CV, 2007 WL 642941 (2d Cir. Feb. 27, 2007) ("defendants have not demonstrated how they relied on th[e] unauthorized transfer in any way" when they had "long been aware that these funds originated from another customer's account"). And the Acer defendants may not claim detrimental reliance on SKAT's payments because they were not innocent in receiving them. The "changed position" defense is available only where the parties are "equally innocent." *Paramount Film Distrib. Corp. v. State of N.Y.*, 30 N.Y.2d 415, 422 (1972). The "defense is therefore unavailable . . . to a recipient who is primarily responsible for his own unjust enrichment." Restatement (Third) of Restitution & Unjust Enrichment § 65, cmt. a. And the Acer defendants were primarily responsible for their own unjust enrichment because its cause was their own "misrepresentation[s], whether tortious or not." *Id.*§ 52(1)(b).

## ECF No. 1615; Tr. 1264-1269

Any evidence that the Acer defendants filed "TIC forms, Form S and Form SLT, and FBAR[s]" is completely irrelevant to any supposed statute of limitations defense. (ECF No. 1975 at 7.) Those filings would just show the same information that the Acer defendants included in their refund claims to SKAT, *i.e.*, that the Acer defendants purported to own massive quantities of Danish shares in English brokerage accounts. Nor would such evidence be relevant to "the state of mind of the Defendants." (ECF No. 1975 at 7.) At issue in the Utah and Pennsylvania cases are the misrepresentations the Acer defendants made to the Danish government, not the U.S. government.

## ECF No. 1587; Tr. 1581:19-1588:15

The Acer defendants and ED&F should be precluded from cross-examining SKAT's expert Graham Wade on the supposed circular nature of the Barclays Colt transaction in any trial

---

2.  Because the Acer defendants and ED&F rely on New York law in arguing that evidence of how the Acer defendants spent SKAT's money is relevant, SKAT likewise relies on New York law and assumes that Utah and Pennsylvania law are no different in this respect. (ECF No. 1975 at 6-8.)

in the Utah and Pennsylvania cases for the same reasons the Court precluded the trial one defendants from doing so. Such questioning would have no probative value and even if it had a little, that minimal probative value would be substantially outweighed by the risks of confusing the jury and wasting time. Fed. R. Evid. 401, 403.

ED&F has admitted that the Acer plans' cum-ex trades with its Dubai affiliate were circular in that ED&F used the same shares to settle multiple trades to create the illusion that it had more shares than it actually did to support the fraudulent tax vouchers it issued, *i.e.*, that it "loop[ed] shares through the settlement system," and SKAT intends to prove that the rest of the ED&F cum-ex trades were the same. (Trial One Tr. 1585:23-1586:1.) But the mere fact that a Barclays memorandum describing the Colt transaction included a diagram with "a nice loop in it" does not "begin to" demonstrate that there is any relevant similarity between the Colt transaction and defendants and ED&F's cum-ex trades. (*Id.* at 1582:22-1583:8, 1587:1-9.)

ED&F itself has admitted that the tax vouchers it issued based on its own version of Solo's share-free, circular trades were not "legitimate," so the only purpose of suggesting otherwise would be to confuse the jury. And the Acer defendants have made clear that they intend to disclaim any knowledge of the circular nature of the cum-ex trades, so that other "legitimate transactions . . . may have some circularity to them" has no bearing on the defendants understanding at the time of whether ED&F's cum-ex trades were legitimate. (*Id.* at 1582:22-1583:8.)

## ECF No. 1591; Tr. 1944-46

The Acer defendants and ED&F fail to offer any good reason why the Court's dismissal of the trial one defendants' laches and revenue rule defenses should not apply in the Utah and Pennsylvania actions. (ECF No. 1975 at 8-9.) The case on which ED&F and defendants rely explains why the laches defense is meritless in these cases. "Laches is a defense against claims in equity, not claims at law, such as" SKAT's fraud, aiding and abetting fraud, negligent misrepresentation, and money had and received claims. *Guardian Music Corp. v. James W. Guerico Enters., Inc.*, 459 F. Supp. 2d 216, 223 (S.D.N.Y. 2006), *aff'd* 271 F. App'x 119 (2d Cir. 2008).[3]

And the Acer defendants and ED&F's argument that some supposed "factual circumstances" in the Utah and Pennsylvania cases "create a significant risk of inconsistent tax law determinations of exactly the sort that this Court held could implicate the revenue rule" fails to identify any such potentially "inconsistent tax law determinations." (ECF No. 1975 at 8.) Nor does the applicability of the revenue rule turn on whether SKAT is asserting fraud claims, as opposed to restitution claims. (*Id.*) The Court's revenue rule holding "did not rely on the premise that fraud claims were an exception to the revenue rule, nor did it create such an exception." *In re Kingdom of Belgium, Fed. Pub. Serv. Fin. Pension Plan Litig.*, 680 F. Supp. 3d 460, 471 (S.D.N.Y. 2023). And the Acer defendants and ED&F fail to explain how Sven Nielsen's potential testimony at any trial in the Utah and Pennsylvania cases supposedly "bolsters these defenses." (ECF No. 1975 at 9.)

---

3.  Again, since the Acer defendants and ED&F rely on New York law, SKAT likewise assumes that there is no relevant difference between the defense of laches under New York or Utah or Pennsylvania law.

**ECF No. 1893**

Finally, the Acer defendants and ED&F's argument that the Court's denial of their motion to exclude SKAT's expert Graham Wade's testimony from trial three should not apply in the Utah and Pennsylvania cases just seeks to relitigate the Court's decision in those cases, thus denying the transferee courts the benefit of the Court's decision.  (ECF No. 1975 at 9.)  The Court rejected already the argument that Mr. Wade is not qualified to testify "on cum-ex trading."  (ECF No. 1893 at 3.)  As the Court noted, "Mr. Wade's reasoning that the allegedly cum-ex nature of ED&F's transactions would be apparent in trading prices, volume, and practices is logical and his conclusions are well-grounded in fact."  (*Id.* at 6.)  And the argument that Mr. Wade is "procedurally" "unqualified" because he lacks "an understanding of" some unspecified "foreign law" makes no sense.  (ECF No. 1975 at 9.)  Mr. Wade does not intend to offer any opinions on foreign law, nor could he permissibly do so.  And were SKAT to elicit impermissible testimony at trial in the Utah and Pennsylvania actions, such as "legal conclusions and opinions about state of mind," (ECF No. 1975 at 9), the transferee courts "could issue a limiting instruction to cabin such testimony appropriately, which would be a more suitable remedy than . . . excluding Mr. Wade's testimony wholesale."  (ECF No. 1893 at 4.)

Respectfully submitted,

_____

Marc A. Weinstein

cc:    All counsel of record via ECF